UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

This document relates to:   World Trade Center Properties, LLC, et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7280)

Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7279)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.**

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
   *DMI Administrative Services S.A.*

W02-NY:1ESC1\120008043.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

I     PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A. .......................................................................................2

       A.    There Is No General Jurisdiction Over DMI S.A. ................................................2

       B.    There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States. ............................2

II    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A. ............................................................................................................................3

       A.    Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8. ...............................................................3

       B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries. ...............................................5

       C.    Plaintiffs Do Not State A Claim Under Any Of Their Nine Causes Of Action. .........................................................7

             1.    Plaintiffs Have Failed To Sufficiently Plead An ATA Claim (*WTCP* Count 1; *Euro Brokers* Count 2)..................................................7

             2.    Plaintiffs Have Failed To Sufficiently Plead A RICO Claim (*WTCP* Counts 2-4; *Euro Brokers* Counts 3-5). ...................................8

             3.    Plaintiffs Have Failed To Sufficiently Plead A Trespass Claim (*WTCP* Count 5; *Euro Brokers* Count 1)..................................................8

             4.    Plaintiffs Have Failed To Sufficiently Plead A Claim For Aiding And Abetting A Violation of International Law (*WTCP* Count 9 & *Euro Brokers* Count 6). ..........................................9

             5.    Plaintiffs Concede That Their Causes of Action For Conspiracy, Aiding and Abetting, Punitive Damages, and Intentional And/Or Willful Destruction of Property Are Not Independent Claims (*WTCP* Counts 6, 7 & 8; *Euro Brokers* Counts 8 & 9)..........................9

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................10

CONCLUSION..............................................................................................................................10

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its motion to dismiss the *World Trade Center Properties* ("*WTCP*") and *Euro Brokers*' Complaints against it (Docket No. 1241). For all the reasons set forth herein and in the remainder of the record, the Court should grant the motion in its entirety.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion and as DMI S.A.'s Initial Memorandum made clear, "[t]he major thrust of DMI [S.A.]'s argument" is *not* "that DMI [S.A.] cannot be held liable because DMI [S.A.] did not, itself, carry out the September 11 attacks." See Plaintiffs' Opposition (Docket No. 1557) ("Opp.") at 2. The primary point of DMI S.A.'s motion to dismiss is that the plaintiffs, as with all other plaintiffs, have failed to proffer even a single allegation of specific fact in support of their attempt to tie DMI S.A. to a global terrorist conspiracy and hold DMI S.A. liable for a terrorist mass murder, or for that matter even to establish this Court's jurisdiction over DMI S.A. See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1242) ("Init. Mem.") (Introduction).[1]

Plaintiffs here largely ignore that argument, instead choosing to recast their allegations into something other than what is actually contained in their pleadings. Plaintiffs also blithely ignore both this Court's January 18, 2005 Order and the authority set out by DMI S.A. in its Initial Memorandum. Indeed, plaintiffs pay no heed to the Court's holdings that (i) conclusory allegations are insufficient to establish jurisdiction or to state a claim; (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability; and (iii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries. Compare In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805, 809, 835 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") with Opp. at 1, 9-14, 17-18, 23-25. Moreover, plaintiffs are silent as to the Court's holding that to plead jurisdiction or state

---

[1] DMI S.A.'s Initial Memorandum moved to dismiss the *WTCP* plaintiffs' Complaint and the *Euro Brokers* plaintiffs' Complaint, as well as both plaintiffs' identical RICO Statements (Docket Nos. 897 & 899), filed on May 10, 2005. However, on September 30, 2005, in contravention of the Court's straightforward charge that "the plaintiffs shall file an amended complaint that includes all amendments made prior to that date," see CMO #2, ¶ 13, the *WTCP* and *Euro Brokers* plaintiffs each filed a "Notice of Consolidation of Pleadings" (Docket Nos. 1378 & 1379) simply listing all of the docket entries that they deemed consolidated into their Complaint (and adding no new allegations). In light of the *WTCP* and *Euro Brokers* plaintiffs' clear disregard for the Court's Orders, their September 30, 2005 "Notices of Consolidation" should be struck.

claims based upon a theory of conspiracy, they must make a *prima facie* showing of conspiracy and of DMI S.A.'s participation in it (and again, that conclusory allegations do not suffice).  Compare In re Sept. 11 Attacks I, at 805-6, with Opp. at 23-25.

In both in their pleadings and, now, their Opposition, the *WTCP* and *Euro Brokers* plaintiffs offer *nothing* to support the grave accusation that DMI S.A. had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading might be remedied by repleading.  Accordingly, the *WTCP* and *Euro Brokers* plaintiffs' claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

### I

### PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A.

**A.** **There Is No General Jurisdiction Over DMI S.A.**

Plaintiffs do not dispute, and therefore concede, that neither the allegation that DMI S.A. held an ownership interest in a Boston firm, nor the allegation that DMI S.A. advertised in United States newspapers, amount to "continuous and systematic" contacts with New York or the United States.  See Init. Mem. at 5-6, 8-9; see also In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II").[2]

**B.** **There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States.**

The *WTCP* and *Euro Brokers* plaintiffs do not dispute, and therefore concede, that their wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage their assertion of personal jurisdiction over DMI S.A.  See Init. Mem. at 6-8; see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" insufficient to establish personal jurisdiction on New York long-arm conspiracy theory).

---

[2] Plaintiffs' failure to respond to a defense raised by defendant DMI S.A. in a dispositive motion concedes that defense.  See, e.g., Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

Instead, plaintiffs seek to invoke specific personal jurisdiction over DMI S.A. based on its purported purposeful direction of some "conduct" here -- but do not point the Court to any allegations of such conduct. See Opp. at 23. It is no accident that plaintiffs fail to cite to any factual support for such an assertion, because plaintiffs allege no wrongful conduct by DMI S.A. at all. See Init. Mem. at 10 n.6. Nowhere in the Opposition -- *or* in the allegations from their Complaints or RICO Statements -- do plaintiffs point to *any* "specific facts from which the Court could infer that [DMI S.A.] directed, controlled, or requested al Qaeda to undertake its terrorist activities," see In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806; nor do they "allege personal acts by [the defendant] by which [it] purposefully directed [its] activities at the United States," see id. at 816; nor do they sufficiently aver that DMI S.A. "expressly aimed" any (unalleged) tortious act at the forum, see id. at 809; Init. Mem. at 9-11. Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by specific allegations of fact. This Court has already held, however, that plaintiffs may not "circumvent the jurisdictional hurdle… by inserting vague and conclusory allegations of tortious conduct in their complaints -- and… rely[ing] on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations…." Id. at 801. Thus, the Court has no specific jurisdiction, and the Complaint must be dismissed.[3]

## II

## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.

### A. Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.

Plaintiffs do not contest that the Complaints improperly lump hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI S.A. See Init.

---

[3] Plaintiffs also make the unprecedented argument that, for purposes of invoking personal jurisdiction, they need not satisfy the Due Process requirements of the Fifth Amendment because DMI S.A. is a foreign defendant. See Opp. at 22-23. However, none of plaintiffs' case authority concerns issues of personal jurisdiction, see id., so that purported authority is inapposite. Moreover, in their very next breath, plaintiffs' Opposition favorably cites to a long-standing Supreme Court precedent affording a foreign corporation Due Process protections for purposes of personal jurisdiction. See Opp. at 23-24, citing Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102 (1987). Plaintiffs' Opposition also cites a recent *slip opinion* from the District Court for the District of Columbia, entitled Baker v. Great Socialist People's Libyan Arab Jamahiriya. Plaintiffs there sought personal jurisdiction over defendants under the FSIA, however, see Baker at 1-2, and "the FSIA is not the basis for personal jurisdiction here." See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 809.

Mem. at 1 n.2, 11-12 (citing cases). Instead, plaintiffs contend that <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), <u>Pelman v. McDonalds Corp.</u>, 396 F.3d 508 (2d Cir. 2005), <u>Phelps v. Kapnolas</u>, 308 F.3d 180 (2d Cir. 2002), and <u>Twombly v. Bell Atlantic Corp.</u>, 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI S.A. <u>See</u> Opp. 7-11. In <u>Phelps</u>, however, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury. <u>Phelps</u>, 308 F.3d at 187 & n.6. Similarly, <u>Pelman</u> is inapposite because the Court in <u>Pelman</u> held only that plaintiffs did not have to plead facts to show their own contributory negligence. <u>See</u> <u>Pelman</u>, 396 F.3d at 511-12. Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI S.A. committed any wrongful acts or that it proximately caused plaintiffs' injuries. Plaintiffs' reliance on <u>Twombly</u> also is misplaced; the <u>Twombly</u> Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred. <u>See</u> <u>Twombly</u>, 425 F.3d at 114-15. Plaintiffs here, however, neither allege any analogue to price-fixing "parallel conduct" by DMI S.A. and any other defendant, nor allege any specific facts, such as communications of assent, showing that DMI S.A. participated in any conspiracy. <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 805 (plaintiffs must make *prima facie* showing of conspiracy and allege specific facts warranting inference defendant member of conspiracy); <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210-11 (2d Cir. 2004).

      In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide any factual allegations showing when, where, how, or to whom *DMI S.A.* supposedly provided *any* support to al Qaeda, knowingly or unknowingly.[4] Simply put, plaintiffs' wholly conclusory allegations fail to provide DMI S.A. with meaningful notice of the bases of the claims against it. Plaintiffs' claims therefore must be dismissed in their entirety.

---

[4] For example, plaintiffs assert that "DMI [S.A.]'s misconduct includes laundering money for al Qaida." <u>See</u> Opp. at 10. Such a conclusory and unsupported assertion is plainly insufficient. <u>See</u> Init. Mem. at 14 n.10. Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent are utterly irrelevant. <u>See</u> Init. Mem. at 14 n.11.

B. **Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[5] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id.

However, plaintiffs' assertion of proximate causation, based on theories of concerted action liability, satisfies none of these elements. See Opp. at 11-15. Instead, they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI S.A.]," see Opp. at 13. Clearly, these conclusory allegations of 'but-for' causation are inadequate to state that DMI S.A. proximately caused *anything*. See Init. Mem. at 15-16 (inadequacy of 'but-for' causation).

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition attempts to put forth "more specific allegations of causation." See Opp. at 12. Plaintiffs' Opposition asserts that "that DMI [S.A.], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank, and that Al Shamal [supported al Qaeda

---

[5] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." See Pittman, 149 F.3d at 122 (citations omitted). As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI S.A. See Init. Mem. at 20-22.

in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [S.A.] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14. However, *no such allegations* appear among the actual allegations of the Complaints or RICO Statements.

For example, as to DMI S.A.'s putative support for terrorist training camps, plaintiffs allege merely that al Qaeda members "got account" at the Sudanese banks Faisal Islamic Bank (Sudan) ("FIB-Sudan"), Tadamon Islamic Bank ("TIB"), and al Shamal Bank, see RICO Statements, Ex. A at 19, 20-21, 22 and *WTCP* Complaint ¶¶ 126, 238, 246, and that DMI S.A.'s ultimate parent is a shareholder or associated with such Sudanese banks, see RICO Statements, Ex. A at 7, 18, 22. Plaintiffs have alleged *no facts whatsoever* indicating that DMI S.A. somehow knowingly supported terrorist training camps, in the Sudan or Afghanistan or anywhere else; no facts showing that DMI S.A. "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI S.A. has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI S.A. ever knowingly provided banking services to anyone associated with al Qaeda.[6] See Init. Mem. at 12-16, 17-18. Thus, plaintiffs' endeavor to recast their allegations, by their Opposition Memorandum, into something other than what they have in fact pleaded, should be rejected out of hand.[7]

In sum, even with their attempt to recast their allegations into something other than what is in fact pleaded, plaintiffs' Opposition simply does not remedy plaintiffs' failure to specifically allege that DMI S.A. did anything more than provide routine banking services, and make innocuous charitable donations, that according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so. See Init. Mem. at 12-16; In re Sept. 11 Attacks I, 349

---

[6] Plaintiffs also have alleged no facts showing that DMI S.A. could be held liable for the supposed acts of the Sudanese banks. Plaintiffs allege, at best, that DMI S.A.'s ultimate parent is a "major shareholder" of Al Shamal, is "associated" with FIB-Sudan, and its subsidiary (not DMI S.A.) is a main shareholder of TIB. See RICO Statements, Ex. A at 7, 18, 22. Such conclusory and unsupported allegations wholly fail to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity. See Init. Mem. at 1 n.1.

[7] It is improper to attempt to amend a Complaint through an opposition brief. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . . Here, there are no such factual bases presented, there are only conclusions."). Plaintiffs also have entirely failed to allege facts sufficient to show that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting. See Init. Mem. at 20-22. Thus, plaintiffs have failed to allege concerted action liability and, a *fortiori*, proximate cause as to any of the pending claims. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.

C.   **Plaintiffs Do Not State A Claim Under Any Of Their Nine Causes Of Action.**

   1.   **Plaintiffs Have Failed To Sufficiently Plead An ATA Claim (*WTCP* Count 1; *Euro Brokers* Count 2).**

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 with Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. Compare id. at 835 with Opp. at 11-14. Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their Complaints, such as the non-existent allegation that DMI S.A. provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere." Cf. Opp. at 13. In short, plaintiffs simply make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."). Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any recipients of donations or banking services] were supporting terrorism." See id. at 832-33. Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed.

## 2. Plaintiffs Have Failed To Sufficiently Plead A RICO Claim (*WTCP* Counts 2-4; *Euro Brokers* Counts 3-5).

Plaintiffs do not dispute, and therefore concede, that the untimely filing of their RICO Statements precludes consideration thereof. See Init. Mem. at 1 n.1. Moreover, although plaintiffs purport to assert claims under Section 1962(a), see *WTCP* Count 1 and *Euro Brokers* Count 3, plaintiffs' Opposition effectively concedes that such claims have no merit. Nevertheless, as to their remaining RICO claims under Sections 1962(c) and (d), plaintiffs' conclusory, boilerplate RICO allegations regarding DMI S.A. do not state *any* of the requisite elements of a civil RICO claim against DMI S.A., and those claims must be dismissed. See Init. Mem. at 18-19 (citing cases). In addition, although plaintiffs admit that "a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise," and that "[t]o sustain a claim under § 1962(d), the plaintiff must allege that the defendant was a 'central figure' in the underlying scheme," see Opp. at 16-17, plaintiffs do not allege that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise. See Init. Mem. at 18-19. Instead of defending the sufficiency of their conclusory RICO allegations regarding DMI S.A., plaintiffs merely re-state their well-worn boilerplate allegations. Compare Opp. 17-19 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language . . . is inadequate."), and In re Sept. 11 Attacks II, 392 F. Supp. 2d at 571-72. For all of these reasons, plaintiffs' RICO claims must be dismissed.

## 3. Plaintiffs Have Failed To Sufficiently Plead A Trespass Claim (*WTCP* Count 5; *Euro Brokers* Count 1).

Contrary to plaintiffs' assertion, see Opp. at 20, DMI S.A. has never "argue[d] that it cannot be liable for Trespass [] because it did not directly carry out [the September 11, 2001 attacks]." DMI S.A. obviously did not directly carry out the attacks and even the assertions invented in plaintiffs' Opposition do not attempt so to state. However, plaintiffs proffer no factual allegations sufficient to show that DMI S.A. gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, intended any trespass, assisted in any "breach of duty," or allegations sufficient to plead

proximate causation.  See Wantanabe Realty Corp. v. City of N.Y., 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003) (setting forth pleading requirements for aiding and abetting trespass claim).  Accordingly, plaintiffs' trespass claim against DMI S.A. should be dismissed.

       **4.**    **Plaintiffs Have Failed To Sufficiently Plead A Claim For Aiding And Abetting A Violation of International Law (*WTCP* Count 9 & *Euro Brokers* Count 6).**

Plaintiffs do not dispute, and therefore concede, that as described in the Initial Memorandum, plaintiffs' nebulous claim for violation of international law is without merit.  See Init. Mem. at 22-24 & n.15.  As DMI S.A. previously explained, "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute."  Hayden v. Pataki, 2004 WL 1335921, at *7 (S.D.N.Y. June, 14, 2004), citing Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir. 1995); see also Sosa v. Alvarez-Machain, 542 U.S. 692, 728-29, 124 S. Ct. 2739 (2004) (declining to recognize private cause for arbitrary arrest under customary international law); Friedman v. Bayer Corp., 1999 WL 33457825, *3 (E.D.N.Y. Dec. 15, 1999) ("customary international law . . . does not create private rights of action for individuals. . . .  Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").  In sum, plaintiffs have no standing to assert their claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("private rights of action to enforce federal law must be created by Congress.").  Moreover, no claim for aiding and abetting a violation of international law is available.  See In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (aiding and abetting violation of international law not actionable after Supreme Court's holding in Sosa).

       **5.**    **Plaintiffs Concede That Their Causes of Action For Conspiracy, Aiding and Abetting, Punitive Damages, and Intentional And/Or Willful Destruction of Property Are Not Independent Claims (*WTCP* Counts 6, 7 & 8; E*uro Brokers* Counts 8 & 9).[8]**

Plaintiffs acknowledge that conspiracy, aiding and abetting, punitive damages, and intentional and/or willful destruction of property are not independent claims under New York law.

---

[8] The *Euro Brokers* plaintiffs do not assert their conspiracy cause (Count 7) against DMI S.A., see Init. Mem. at 20 n.14, and do not assert a claim for intentional and/or willful destruction of property.  The *WTCP* plaintiffs do not assert a claim for punitive damages.

See Opp. at 19-22. The fact that no such claims exist is not a technicality, however. The Court therefore should dismiss such claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Moreover, plaintiffs' meager and conclusory allegations against DMI S.A. fail to allege any wrongful conduct, and plaintiffs fail to allege facts that could give rise to any inference of intent as to DMI S.A., or to a finding of proximate causation. See Init. Mem. at 20-22, 24-25.

### III

### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' Opposition pays no heed whatsoever to both this Court's Opinions and Orders, dated January 18, 2005 and September 21, 2005, and the authority cited in DMI S.A.'s Initial Memorandum. Instead, and in a desperate attempt to avoid dismissal, plaintiffs float assertions not borne out by the actual allegations of their Complaints. Yet, "[e]ven with the opportunity to clarify their claims" and the filing of (untimely) RICO Statements, plaintiffs' failure to state any of their claims against DMI S.A. remains as complete as one could imagine. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33. There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear. Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue swiftly and with prejudice. See id. at 835; Init. Mem. at 25 (citing cases).

### CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
      January 27, 2006

Respectfully submitted,
SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _____/x/_____
  James J. McGuire (JM-5390)

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant DMI Administrative Services S.A.*