**Exhibit A**

Yassin Abdullah Kadi's
Motion to Dismiss

03 MDL 1570 (RCC)

Bundesstrafgericht

Tribunal pénal fédéral

Tribunale penale federale

Tribunal penal federal



**Criminal Federal Court**
Case numbers: BB.2005.51 to BB.2005.53 and
BB.2005.56 to BB.2005.68

**Ruling dated December 12, 2005**
**Cour des plaintes [Grievance Court]**

| | |
|---|---|
| Court makeup | Criminal Federal Judges Emanuel Hochstrasser, Presiding Judge, Andreas J. Keller and Tito Ponti, Clerk: Claude-Fabienne Husson Albertoni |
| Parties | 1. A., <br> 2. B., <br> 3. C., <br> 4. D., <br> 5. E., <br> 6. F., <br> 7. G., <br> 8. H., <br> 9. I., <br> 10. J., <br> 11. K., <br> 12. L., <br> 13. M., <br> 14. N., <br> 15. O., <br> 16. P. <br><br> all represented by Mr. Vincent Spira, Esq., Attorney-at-law, <br><br> Plaintiffs |

2

|  |  |  |
|---|---|---|
|  | vs. |  |
|  | 1. | **Ministère Public de la Confédération** [Government Prosecuting Department] |
|  | 2. | Q. |
|  |  | represented by Messrs. Marc Bonnant, Esq., Carlo Lombardini. Esq. and Maurice Turrettini, Esq. Attorneys-at-law, |

opposing parties

| Lower Court | **Office des Juges d'Instruction Fédéraux** [Federal Examining Magistrates Department] |
|---|---|
| Purpose | Civil Claim (Art. 105bis, Par. 2 PPF) |

**Facts:**

A. Following the events of September 11, 2001 (attacks on New York and Washington), the Ministère Public de la Confédération (hereinafter MPC) opened a criminal investigation against person(s) unknown on September 15, 2001. On October 25, 2001, the investigation was widened to include Q., a Saudi resident living in Jeddah, Saudi Arabia; the latter is suspected of having financed, as the President of Foundation R., the Al Qaeda terrorist organization led by Osama Bin Laden. The accusations made against Q. concern, in particular, the transfer of funds in the amount of 1.25 million US dollars in Switzerland in 1998 to a certain S., suspected of being one of the main financiers of the above-mentioned terrorist group.

B. On June 13, 2005, the MPC issued a ruling disallowing A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., P. – moreover all plaintiffs within the scope of the indictment, pending in the United States, of the families of the victims of September 11, 2001 – the status of civil parties in the proceedings involving Q.

C. On June 20, 2005, the above-mentioned persons filed a suit against this ruling. They argued for the ruling's annulment and their eligibility as civil parties, accepting costs.

D. In its response on September 16, 2005, the MPC, noting that the case had been referred to the Juge d'Instruction Fédérale [Federal Investigating Magistrate] (hereinafter JIF) rejected the suit, awarding costs.

E. On September 26, 2005, the Plaintiffs delivered to this Court a ruling issued on September 21, 2005 by a Federal Judge in New York within the scope of the suit filed by the families of the victims of September 11, 2001, requesting that it be produced as evidence in the proceedings.

|     |     |
| --- | --- |
| F.  | In his documents dated September 30, 2005, Q., as to form, is suing the Court, in particular, for the grievance's admissibility, and, as to substance, dismissed the latter, subject to costs and expenses. |

In its response, dated November 18, 2005, the JIF remanded the case.

The arguments made by each of the parties shall be considered in the legal considerations, if so required.

**In law, the Court deems that:**

1.
| | |
| --- | --- |
| 1.1. | Automatically, and with all powers, the Grievances Court examines the admissibility of all the grievances referred to it (ATF 122 IV 188, 190 Consid. 1 and above-mentioned rulings). |
| 1.2. | The grievances filed by A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., P. all focus on the same ruling. Insofar as the facts are the same for all of them, for the purposes of economical proceedings, there are grounds for combining the grievances and to rule on them in a single ruling. |
| 1.3. | The disputed ruling is dated June 13, 2005. It was delivered to plaintiff's counsel by means of a letter requiring signature, who received it the following day. Sent on June 20, 2005, the grievances were sent within the working period of five days sets forth by Article. 217 PPF, applicable by reference to Article. 105bis, Par. 2 PPF, considering that June 19, 2005 was a Sunday (Article. 32, Par. 2 OJ). |
| 2. | In this case, it should first be noted that, in their grievance, the plaintiffs indicate, very generally, that they were victims of the September 11, 2001 attacks. Before this Court, however, they did not specify, in any way, the actual damages they suffered because of this. Moreover, one should be able to expect that the parties be able to, of their own accord, offer factual elements which would establish their civil grounds for taking part in the proceedings, with the elements of proof at their disposal (Federal Court ruling 1P.620/2001, Consid. 2.1, and cited references). One can then question whether there are sufficient grounds |

3.     The plaintiffs state that Q. had a special relationship with the Al Qaeda executive leadership and with the terrorist group, and, as a result, it is very likely that the payments which he made between February and August 1998 to S. were made for the purpose of financing this organization's activities. The MPC, on the other hand, noted that as the defendant's supposed support of Organization U. is based on the sole fact that some of the latter's leaders were his business partners, this was not enough to allow one to firmly state that the accused was personally in a position to be aware of the details of the planning for the September 11, 2001 attacks. On the other hand, Q, states that the payments in question were made in 1998, and nothing in the file would lead one to note or to believe that, either directly or indirectly, he effectively gave financial support to Al Qaeda within the scope of the September 11, 2001 events.

3.1.     According to Art. 34 PPF. the following are considered to be civil parties: the accused, the procureur général [District Attorney] and any injured party constituting itself as a civil party. In general, a civil party is defined as the person whose legal rights were directly infringed by a criminal act and which requires that the author be sentenced to pay damages to repair the harm caused by the infraction (PIQUEREZ, Procédure Pénale Suisse [Swiss Criminal Proceedings], Zurich 2000, P. 295, No. 1327). In case law, only the victim whose legally protected interests have been directly infringed upon by the commission of an infraction may file a claim for damages and demand compensation for the latter. The harm is only direct if the injured party or his assignees suffered the damages directly and personally, which would eliminate third parties who were not directly affected (by consequence or ricochet; indirect damage) by a criminal act from claiming damages. Indirect attacks are not enough (Federal Court ruling 1P.620/2001 dated December 21, Consid. 2, ATF 117 Ia 135; 137, Consid. 2a; PIQUEREZ, op. cit, P. 291, No. 1306 and P. 293, No. 1315; SCHMID, Strafprozessrecht, 4th Edition, Zurich – Bâle – Geneva 2004, P. 165, No. 502). The intervening party must also show, I n particular, a probable link of direct causality between the criminal act and the damages suffered (above-mentioned Federal Court ruling, 1P.620/2001 ibid). Moreover, the injured party must be a physical person or a legal entity and the latter's rights must be criminally protected. These conditions are

cumulative (PIQUEREZ, op. cit, P. 292, Nos. 1312 and 1315, as well as P. 294, No. 1318).

There is a natural causal link between an event and guilty behavior, if the latter constitutes the "conditio sine qua non" (ATF 128 III 180, 184 Consid 2d and the above-mentioned rulings; ATF 121 IV 207, 21, Consid. 2a); on the other hand, it is not required that it appear as the sole cause of the event (ATF 115 IV 199, 206 Consid. 5b and above-mentioned references). The causal relationship delimited in this manner cannot be proved with any certainty; great likelihood is sufficient (Federal Court ruling 6S.426/2002, dated February 18, 2003, Consid. 4.2. and above-mentioned references). When natural causality is accepted, one must sill ask oneself whether the causality link may be qualified as adequate, that is to say, whether the behavior was likely, in the normal course of events and life experience, to give rise to a result such as the one which was produced (ATF 121 IV 10, 15 Consid. 3; 121 IV 207, 213 Consid. 2a; 120 IV 300, 312 Consid. 3e; 118 IV 130, 134 Consid 3c; 115 IV 199, 207 Consid. 5c and the above-mentioned rulings). Adequate causality may, however, be excluded, the concatenation of events losing its legal application, if another concomitant cause, for example- a natural force, the behavior of the victim or that of a third party, constitutes a completely exceptional circumstance, or seems so extraordinary that it could not have been expected; the unpredictability of a concurrent act is not, in and of itself, enough to interrupt the adequate causality link; this act must, in addition, be significant enough to impose itself as the most probable and most immediate cause of the event in question, relegating all other contributing factors to the background, including, in particular, the perpetrator's behavior (ATF 122 IV 17, 23 Consid. 2c/aa; 121 IV 10, 14 and following Consid 3; 121 IV 207, 213 Consid. 2a, 120 IV 300, 312 Consid. 3e and the above-mentioned rulings).

3.2.   In this case, nothing in the file would lead one to conclude, with sufficient likelihood, that Q. knew or could have known that the payments he made, and because of which he is implicated in the Swiss proceedings, would be specifically used to finance the September 11, 2001 attacks.

There were five litigious transfers; they were made between February 24 and August 3, 1998 (Q.'s interrogatory of July 1, 2003, P. 3 and following, MPC documents 13 01 0003 to 13 01 0005), or three years before the September 11, 2001 attacks. Thus, from a time frame point of view, it is already difficult to accept that this money is the "condition sine qua non", without which the September 11, 2001 terrorist attacks could not have taken place. Moreover, none of the documents in the file would allow one to state with enough likelihood that the accused was informed of Al Qaeda's goals and plans for the events of September 11, 2001. On the contrary, as far as is known, it would seem that a small group of people was given detailed information on what was going to happen (Act 1.20, P. 19). Moreover, even if there were persistent rumors about an attack on American interests, these only surfaced during the summer of 2001, and without there being any specific mention of the

selected targets (Act 1.20, P. 19). As such, stating, as the plaintiffs did that Osama Bin Laden had conceived this plan 20 years earlier does not, in any way, mean that the accused was aware of the details of the above-mentioned attacks. In addition, it would seem that Osama Bin Laden had approved the suicide attack plans using aircraft in the beginning of 1999 (Act. 1.20. P. 2). As such, it would seem unlikely that the litigious payments could have been mainly used for these attacks. The fact that some of Q.'s business partners were close to Osama Bin Laden is also not grounds enough to provide probative proof that the accused had privileged knowledge of the perpetration of these crimes and, thus, of their planning. Moreover, the plaintiffs do not dispute the fact that the litigious payments were made to S. and were allocated to the development project of the T University in Z. (Q.'s interrogatory of July 1, 2003, P. 9-11, MPC documents 13 01 0009 to 13 01 00011; Act 1, P. 18 and Act 16, P. 4 as, Points 47-79), so that it is difficult to see the direct link between the litigious payments and the attacks in question. Even if the accused had links with people, such as S., or organizations which were suspected of having ties with Al Qaeda – such as the U. – none of the elements provided by the plaintiffs provide the grounds for considering it likely that the accused gave money to the above-mentioned people and organizations for the express purpose of training terrorists to hijack aircraft in order to crash them on civilian or military targets in September 2001.

Insofar as the direct causal link between the criminal act and the damages suffered has not been established, there are no grounds for checking whether the other conditions for accepting the injured party's admissibility have been met.

4.
4.1.  With the enactment of the LAVI [Lyon Victim Aid], the legislature created a new category of injured party, the victim. As defined by Art. 2, Par. 1 of the LAVI, a victim is any person who has suffered, because of an infraction, a direct bodily, sexual or psychological harm. A psychological attack, mental or moral, is defined as the act of endangering the psychological balance or mental health of another person (PIQUEREZ, op. cit, P. 300, No. 1353). It is not enough for the person to have suffered inconveniences or lost time or money, their physical or psychological state must have been affected. Moreover, and also in this context, the damage must be the direct result of the infraction. There

must, therefore be a natural, causal link between the damage and the infraction; the latter must be a direct consequence of the former (CORBOZ, Les Droits Procéduraux découlant de la LAVI, SJ 1996, 53, 57). However, a person who only suffers financial damages does not have the benefit of the special protection afforded by the LAVI (KOLLY, Le Pourvoi en nullité à la Cour de cassation pénal du Tribunal Fédéral, Bern 2004, P. 29 and above-mentioned reference).

As developed above, the direct link between the infraction which was committed and the damages suffered by the plaintiffs has not been shown. For this reason alone, the plaintiffs cannot be considered to be victims, as defined by the LAVI, which, moreover, they are not disputing (Act. 1, P. 28).

**4.2.** In addition, there is no complete list of the infractions falling under the LAVI's field of application; according to the legislature, (FF 1990 II 925), Article 2, Par. 1 of the LAVI has to do with, in general, those infractions against life and the causing of bodily harm, banditry, crimes against freedom, immoral offences such as incest if there is a violation of the psychological well-being, as well as several other infractions such as rioting. On the other hand, the infractions of endangering are excluded from the law's field of application as, by definition, they do not involve damage to a legal asset (ATF 122 IV 71, 77 Consid. 3a; Federal Court ruling 6S.549/2000, dated October 4, 2000, Consid. 2a). Crimes against honor shall also not be taken into consideration (FF 1990 II 925; ATF 123 IV 184, 187 Consid. 1b; ATF 123 IV 190, 191, Consid. 1; Federal Court ruling 6P.22/2004 6S.67/2004, dated March 31, 2004, Consid. 1.1.). The same applies to crimes against an estate, in particular, theft and fraud, the damages suffered by the person only constituting an indirect consequence (Federal Court ruling 8G.38/2001, dated October 24, 2001, Consid. 1c and above-mentioned references).

Q. is implicated in the Swiss criminal proceedings mainly on the basis of suspicion of support of a criminal organization, as defined by Article 260ter CP. However, the latter article must also be viewed as a standard for abstract endangerment (FF 1993 III 269, 296; CASSANI, , Le train de mesures contre le financement du terrorisme: une loi nécessaire? in SZW 2003 293, 304; Baumgartner, Basler Kommentar, Bâle 2003 No. 3, ad 260ter CP). It could thus not apply in this case (CÉDRIC MIZEL, La qualité de victime LAVI et la mesure actuelle des droits qui en découlent in JdT 2003 IV 38, 45). Consequently, from this point of view as well, one could acknowledge the plaintiffs' status as that of a victim, as defined by the LAVI.

5. In view of the forgoing, the plaintiffs cannot be heard as civil parties in the Swiss criminal proceedings instituted against Q.. The disputed ruling is thus not arbitrary (Federal Criminal Court's ruling BB.2005.4, dated April 27, 2003, Consid. 2), and the grievances must thus be dismissed. Given the latter's' results, there is no need to rule on the fate of the document supplied on September 26, 2005 by the plaintiffs (Act. 17) and which the Court made no effort to resolve.

6. Pursuant to Article 156 OJ (applicable by reference to Article 245 PPF), the losing party is responsible for costs. Pursuant to Article 3 of the Rule setting the legal fees collected by the Tribunal Pénal Fédéral, dated February 11, 2004 (RS 173.711.32), a payment of CHF 4,000.- shall be jointly borne by the plaintiffs; any surplus of the total advance for expenses shall be restituted to them.

7. Pursuant to Article 159 OJ, the Court hereby deems, ruling on the dispute itself, if and to what extent the expenses of the winning party shall be borne by the losing party. Q. is entitled to equitable compensation for the essential expenses which were generated by the dispute. His legal representatives also did not file any fee statements. When an attorney does not inform the Court of the breakdown of his legal services before the end of the trail or within a period of time set by the Court, the latter shall set the fee, based on its own evaluation (Article 3, Par 3 of the Règlement sur les dépenses et indemnités alloués devant le Tribunal pénal fédéral; RS 173.711.31). In this case, a payment of CHF 2,000.- (VAT included), to be jointly borne by the plaintiffs seems justified.

**On these grounds, the Court rules as follows:**

1. The grievances are rejected as inadmissible.

2. A payment of CHF 4,000.- shall be jointly borne by the plaintiffs; any surplus of the total advance for expenses shall be restituted to them

3. Q. shall receive compensation for his expenses in the amount of CHF 2,000 (VAT included), to be jointly borne by the plaintiffs.


Bellinzone, December 13, 2005

In the name of the Grievance Court
of the Federal Criminal Court

The Presiding Judge:          The Clerk:

[Blank]                        [Blank]


**Distribution**

- Mr. Vincent Spira, Esq, attorney-at-law
- The Confederation's Public Prosecution Department
- Federal Examining Magistrates Department
- Messrs. Marc Bonnant Esq., Carlo Lombardini, Esq. and Maurice Turrettini, Esq., attorneys-at-law


**Indication of appeals**

**No ordinary recourse to legal proceedings is open against this judgment**



**TRANSPERFECT**

## AFFIDAVIT OF ACCURACY

I, Jessica Doss, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the accompanying document from French into English.

Jessica Doss
TransPerfect Translations
601 13th Street, NW
Suite 320 North
Washington, DC 20005

Sworn to before me this
2nd day of February, 2006

Signature, Notary Public

**Lisa Sherfinski**
Notary Public, District of Columbia
My Commission Expires 01-01-2008

Stamp, Notary Public

District of Columbia