# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *IN RE* TERRORIST ATTACKS ON | ) |
| SEPTEMBER 11, 2001 | ) |
|  | ) |

**03 MDL 1570 (RCC)**

**ECF CASE**

*This document relates to:*

> *Federal Ins. Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
>
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
>
> *Estate of John P. O'Neill, Sr., on behalf John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-1923 (S.D.N.Y.)
>
> *Euro Brokers, Inc., et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
>
> *New York Marine and General Ins. Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
>
> *World Trade Ctr. Prop., LLC, et al. v. Al Baraka Inv. and Dev. Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

## DEFENDANT YASSIN ABDULLAH KADI'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

David F. Geneson (*Admitted pro hac vice*)
Bonnie K. Arthur (*Admitted pro hac vice*)
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C.  20006

Attorneys for Defendant
Yassin Abdullah Kadi

Dated:  February 3, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ....................................................................................................1

II.     THE COURT LACKS JURISDICTION OVER MR. KADI ..................................3

        A.      Allegations With Respect to Mr. Kadi Are Not Related to 9/11 ..............3
        B.      Designation By OFAC Does Not Create Personal Jurisdiction................7
        C.      Alleging Connections With HAMAS Or Muslim Charities Is
                Not Enough To Warrant the Exercise of Personal Jurisdiction ..............11
        D.      Personal Jurisdiction Cannot Be Measured By Events So Remote
                In Time ...................................................................................................13
        E.      Allegations Relating To Mr. Kadi's Role As An Officer Or Director
                Of A Corporation Are Not Enough To Warrant The Exercise Of
                Personal Jurisdiction ..............................................................................15
        F.      Plaintiffs Cannot Rely On The Antiterrorism Act ("ATA") For
                Nationwide Service Of Process ...............................................................16
        G.      Jurisdictional Discovery Is Not Warranted..............................................17

III.    PLAINTIFFS HAVE FAILED TO STATE A COGNIZABLE CLAIM
        AGAINST MR. KADI UPON WHICH RELIEF MAY BE GRANTED ........................17

        A.      Plaintiffs Have Not Alleged Facts Sufficient To Show Mr. Kadi's Actions
                Proximately Caused Plaintiffs' Injuries...................................................17
        B.      Plaintiffs Have Failed To State Claims Under The ATA Or The Alien
                Tort Claims Act........................................................................................17
        C.      Plaintiffs Fail To State Their State Law Causes Of Action .....................20
        D.      Plaintiffs Have Failed To State A RICO Claim Against Mr. Kadi...........20
        E.      Plaintiffs' Claims Are Barred To The Extent Plaintiffs Participated In
                The Victims' Compensation Fund ...........................................................21
        F.      Plaintiffs' Claims With Respect To Mr. Kadi's Volunteer Activities
                Are Barred................................................................................................22

IV.     PLAINTIFFS HAVE NOT PROPERLY SERVED MR. KADI.....................................22

        A.      The Publication Order Does Not Apply To Mr. Kadi ..............................23
        B.      The Court Should Dismiss The Complaints For Failure To Serve.........24

V.      CONCLUSION......................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Page(s)

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 ...................................................................4

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 ...........................................................16

*Burger King v. Rudzewicz*, 471 U.S. 462 ............................................................................4

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 .......................................2, 17

*Calder v. Jones*, 465 U.S. 783 ............................................................................................4

*Cullen v. BMW of North America, Inc.*, 691 F.2d 1097....................................................20

*Harisiades v. Shaughnessy*, 342 U.S. 580 ..........................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 ....................................3

*Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34 .............8

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 ..................................13

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306.........................................23

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 .........................10

*Regan v. Wald*, 468 U.S. 222 .............................................................................................8

*Schroeder v. City of New York*, 371 U.S. 208....................................................................23

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 ...................... *passim*

*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 ...................... *passim*

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286..........................................4, 11

### STATE CASES

*Fiur Co. v. Ataka & Co.*, 71 A.D.2d 370 ..........................................................................20

*Liberman v. Worden*, 701 N.Y.S.2d 419............................................................................20

*Pappas v. Passias*, 271 A.D.2d 420...................................................................................20

## FEDERAL STATUTES

42 U.S.C. § 14503 ...................................................................................22

18 U.S.C. § 2331 ...................................................................................16

18 U.S.C. § 2333(a) ...............................................................................16

49 U.S.C.A. sec. 40101 ..........................................................................21

Fed.R.Civ.P. 8, 10 ...................................................................................2

50 U.S.C. § 1801(c) ...............................................................................16

## STATE STATUTE

N.Y. C.P.L.R. § 215 ...............................................................................20

## MISCELLANEOUS

*Final Report of the 9/11 Commission* .....................................................6

Ron Suskind, The Price of Loyalty, George W. Bush, the White House, and the
Education of Paul O'Neill 192-193 (2004).................................................7

## FOREIGN

*Alice Hoglan et al v. Public Ministry of the Swiss Confederation and Yassin
Abdullah Kadi* (BB [Swiss Federal Criminal Court] 12 December 2005) ........6, 10, 11

## I.        INTRODUCTION

Yassin Abdullah Kadi's charitable work over the last 25 years has included supporting refugees and victims of violence and natural disasters by providing food, clothing and shelter; providing education for both women and men; and making significant financial investments in war-torn areas of the globe in an effort to rebuild what violence has destroyed.  Mr. Kadi is a Muslim, living in a Muslim country.  It is logical, then, that his charitable and business affiliations are also within the Muslim community.  However, reviewing the allegations in the thousands of pages of complaints filed in this litigation, one is lead to believe that being charitable as part of the Muslim community is per se the predicate for a civil wrong.

Plaintiffs' allegations are not only insufficient to state a claim and establish personal jurisdiction, but are, for the most part, patently false.  Plaintiffs' allegations do not connect Mr. Kadi to the terrorists who have claimed responsibility for the attacks on September 11, 2001 ("9/11"), nor do they demonstrate that he supported those who committed the atrocities.  The large quantity of allegations regarding various businesses and charities are followed by conclusory allegations and vague innuendo with no specific factual allegations which tie Mr. Kadi to the tortious conduct of those who attacked the United States on 9/11.  For the reasons explained below and in Mr. Kadi's previous filings,[1] none of the plaintiffs' allegations of charitable contributions, business investments, or remote associations with other individuals were the direct, indirect, or proximate cause of plaintiffs' injuries.

---

[1] Mr. Kadi previously filed motions to dismiss the complaints *in Burnett v. Al Baraka Inv. & Dev. Corp.*, 03CV9849, *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03CV5738, and *Ashton v. Al Qaeda Islamic Army*, 02CV6977.  Because the allegations and claims in the other actions are similar, and in most instances identical, to the *Burnett* and *Ashton* Complaints, Mr. Kadi hereby reaffirms his filings in *Burnett* and *Ashton*.

Plaintiffs have not followed the Rules of Civil Procedure or complied with this Court's Case Management Order #2 ("CMO2").[2]  Plaintiffs have filed confusing and superfluous pleadings, placing a burden on both the Court and defense counsel to ascertain what cause of actions and what allegations are asserted against Mr. Kadi.  The *Euro Brokers* and *WTC* "consolidated" pleadings do not serve to provide notice to Mr. Kadi of the causes of action brought against him.  Plaintiffs' "More Definite Statements" ("MDS") contain only scattered allegations about businesses, charities, individuals, and countries that were in no way related to the cause of plaintiffs' injuries.  The *O'Neill* plaintiffs do not specify their causes of action against Mr. Kadi in their complaint, but include them in an MDS.

Judge Robertson held that "given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests."[3]  This makes the plaintiffs' use of "incorporation by reference," "addendums" and "More Definite Statements," where otherwise there are little to no clear or substantive allegations against Mr. Kadi in the actual complaints themselves, even more egregious.  They should not be permitted.[4]  The Court should dismiss the complaints, or in the alternative, strike the various papers the plaintiffs have filed in an effort to create putative additions to their complaints.

---

[2]Although the parties could not reach agreement regarding the terms of a briefing schedule, Mr. Kadi is complying with the Court's request for consolidated briefing and is responding 90 days after one of the complaints was mailed to him.  No apparent effort has been made to serve Mr. Kadi in a number of these cases.  Notwithstanding, we submit this Consolidated Motion to Dismiss in the remaining MDL cases in which our research has revealed he has been named.

[3]*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104 (D.D.C. 2003) ("*Burnett I*").

[4]Fed.R.Civ.P. 8, 10(b).

## II.     THE COURT LACKS JURISDICTION OVER MR. KADI

Personal jurisdiction over a non-resident defendant, like Mr. Kadi, can be found either under a general jurisdiction theory or a specific jurisdiction theory, depending on the nature of the potential defendant's contacts with the forum.  Plaintiffs have not, nor could they, assert that Mr. Kadi has the sufficient minimum contacts with either New York or the United States to justify an exercise of general jurisdiction.[5]  The plaintiffs simply do not allege the "continuous and systematic" contacts required for general jurisdiction.[6]

### A.     Allegations With Respect to Mr. Kadi Are Not Related to 9/11

Plaintiffs have not met their burden of proving that this Court can exercise specific jurisdiction over Mr. Kadi.  Specific jurisdiction only exists "when the forum exercises jurisdiction over the defendant in a suit *arising out of the defendant's contacts with that forum*."[7]  None of the allegations plaintiffs have asserted against Mr. Kadi can be said to be the cause of the events of 9/11.  "Conclusory allegations that he donated money to and volunteered his time on behalf of charities, without specific factual allegations that he knew they were funneling his money to terrorists, do not suffice."[8]  "*Arising out of*" does not mean that attenuated conclusory allegations requiring the leaps of faith as alleged here are sufficient.  As this Court held, "as existed in *Burger King, Calder,* and the three terrorism cases, plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their

---

[5]A defendant is only subject to a Court's general jurisdiction, when he has contacts with the forum that are substantial, continuous, and systematic, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416 (1984).

[6]As of this filing, we are unaware of any other More Definite Statements as to Mr. Kadi.  Therefore, there are no specific allegations contained in the *Salvo* or *Vadhan* Complaints to which Mr. Kadi can respond.

[7]*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y. 2005) (emphasis added), "*Terrorist Attacks I.*"

[8]*Id.* at 813-814, citing cases.

claims."[9]  Plaintiffs have alleged no personal or direct involvement by Mr. Kadi in the planning

or support of the events of 9/11, nor even in supporting those who carried out the plot.  Each

charitable or business-related allegation plaintiffs allege as to Mr. Kadi has no relation – other

than a common religion and native country – to those who planned and carried out the crimes.

Allegations that various groups are somehow connected because of similar culture, agenda,

membership, or even locale, is not enough to sign a pleading in good faith, much less exercise

personal jurisdiction over a non-resident defendant.

Even if plaintiffs had alleged that Mr. Kadi "should have known" or that the events of

9/11 were foreseeable, foreseeability is not enough to establish specific jurisdiction.[10]  A

defendant's actions must have been intentionally directed towards the forum for a non-resident

defendant to reasonably anticipate he would be haled into court.[11]

The Court may only exercise specific jurisdiction over a non-resident defendant if he was

a "primary participant" in tortious acts that were "expressly aimed" or "purposefully directed" at

the forum.[12]  Even viewing the allegations as true, they fail to make a prima facie case of Mr.

Kadi's "personal or direct participation in the conduct giving rise to plaintiffs' injuries."  This

Court has concluded that a defendant's "actions must be personal or direct so that the defendant

has fair warning that his activities could subject him to personal jurisdiction in the United

---

[9]*Id.* at 809.

[10]*Calder v. Jones*, 465 U.S. 783, 789 (1984).

[11]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 1000 (2d Cir. 1975) (holding the connection between defendant's contacts with the forum and the alleged injuries was "too tenuous to permit those torts to be considered as 'arising from'" defendant's actions within the forum).

[12]*Burger King v. Rudzewicz*, 471 U.S. 462, 474, 487 (1985); *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

4

States."[13]  Although "[t]he Court does not require direct participation in the attacks themselves," Plaintiffs must allege "at least participation in al Qaeda's terrorist agenda."[14]  To the contrary, the *O'Neill* MDS states that the "activity conducted by Al-Qadi [Mr. Kadi] is separate from . . . Al Qaida."[15]

Simply labeling humanitarian efforts in Muslim communities as the alleged equivalent of support for a terrorist agenda is not adequate.  Plaintiffs spend pages in their MDS's listing their version of Mr. Kadi's business ventures and charitable efforts.  The transparent suggestion is: Mr. Kadi's charitable and business activities are with Muslim organizations in Muslim regions of the world.  The 9/11 terrorists were all Muslim and most came from the same country as Mr. Kadi.  Ergo, they all must be tied together somehow as terrorists in common.  Following the plaintiffs' approach, logic need not intrude.  The only path that leads to a causal connection between Mr. Kadi's alleged activities and the events of 9/11 is one of prejudice and bigotry.

To link Kadi International's charitable contribution to the Quranic Literary Institute ("QLI") in 1991 to the tragic events in 2001 because of an alleged Hamas connection to QLI is patently absurd.  First, Osama bin Laden and al Qaeda have claimed responsibility for 9/11.  Second, this Court has already stated that "Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11."[16]  Here, plaintiffs allege no facts that permit an inference that Mr. Kadi contributed to charities or individuals with the knowledge that they funded terrorism, much less with the knowledge they could have any connection to

---

[13]*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 558 n.5 (S.D.N.Y. 2005), "*Terrorist Attacks II;*" *Terrorist Attacks I*, 349 F. Supp. 2d at 810-811.

[14]*Terrorist Attacks II*, 392 F. Supp. 2d at 558.

[15]*O'Neill* MDS at 6, ¶ 7.

[16]*Terrorist Attacks I*, 349 F. Supp. 2d at 833, 835.

9/11.  Even if a portion of a QLI contribution reached Hamas, the donation vis-à-vis Mr. Kadi was not made with the required intent to direct the effects of his actions at the United States.  Moreover, this Court has stated that "[d]onating money to established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States."[17]  Even the findings of the 9/11 Commission, upon which plaintiffs rely, contradict their assertion that all contributors are knowing terrorist participants.[18]

This Court has specifically stated that it will not "accept legally conclusory assertions or draw 'argumentative inferences.'"[19]  Yet plaintiffs list numerous completely irrelevant assertions and few allegations specific to Mr. Kadi.  For instance, plaintiffs attempt to implicate Mr. Kadi with the horrendous events of 9/11 because a charitable associate of his from the early 1990's was allegedly associated with an al Qaeda member.[20]  As the highest court in Switzerland recently held in a case brought by many of the same plaintiffs in this case:

> The fact that some of Q.'s [Mr. Kadi's] business partners were close to Osama Bin Laden is also not grounds enough to provide probative proof that the accused had privileged knowledge of the perpetration of these crimes and, thus, of their planning.[21]

---

[17]*Terrorist Attacks II*, 392 F. Supp. 2d at 559 (citations omitted).

[18]*See Final Report of the 9/11 Commission* at 170 (2004) ("Some individual donors surely knew, **and others did not**, the ultimate destination of their donations.") (emphasis added).  Notably, Mr. Kadi's name is not even mentioned in the 9/11 Report.

[19]*Terrorist Attacks I*, 349 F. Supp. 2d at 804 (citations omitted).

[20]*See O'Neill MDS* at 15, ¶¶ 54-56; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop. MDS*, ¶¶ 31-33.

[21]*Alice Hoglan et al v. Public Ministry of the Swiss Confederation and  Yassin Abdullah Kadi* (BB [Swiss Federal Criminal Court] 12 December 2005), ("2005 Swiss Decision"), Certified English Translation at 7.  Attached as Exhibit A.

**B.      Designation By OFAC Does Not Create Personal Jurisdiction**

Plaintiffs rely on the fact that Mr. Kadi's name appears on the U.S. Treasury, Office of

Foreign Asset Control's ("OFAC's") list of  Specially Designated Global Terrorists ("SDGT") in

support of their allegation that Mr. Kadi was involved in the attacks on 9/11.  Listing by OFAC

proves nothing.  It is an administrative step with no real due process or judicial review available.

After 9/11, the political pressure to get immediate results in the new "War on Terror" was

immense.  Former Treasury Secretary Paul O'Neill discussed the process of listing individuals

with David Aufhauser, OFAC's General Counsel at the time of the attacks:

> Everyone wanted results, two days ago, O'Neill told him.  . . .
> Because the funds would be frozen, not seized, the threshold of
> evidence could be lower and the net wider. . . . In any event, the
> call to action at this moment – a week after the attack – meant that
> **conventional barriers vanished**.  An executive order was quickly
> signed, attaching the **lowered legal standard** to a broadened
> mandate, and then a parallel UN resolution gave it force
> worldwide.
>
>                          . . .
>
> "It was almost **comical**," Aufhauser said.  "We just listed out as
> many of the usual suspects as we could and said, Let's go freeze
> some of their assets."[22]

What is "comical" to the executive branch while making political designations of individuals is

surely no basis for dragging a foreign national into a New York court with no other jurisdictional

hook.

The United Nations also recognized the lack of proof needed for an individual to be

designated on the similar list maintained by the Security Council:

> The way entities or individuals are added to the terrorist list
> maintained by the Council and the absence of review or appeal for

---

[22]Ron Suskind, The Price of Loyalty, George W. Bush, the White House, and the Education of Paul
O'Neill 192-193 (2004) (emphasis added).

7

> those listed raise serious accountability issues and possibly **violate**
> **fundamental human rights norms** and conventions.[23]

Courts have recognized such designations as political actions rather than judicial.[24]
OFAC's designations of thousands of individuals is virtually immune from challenge.  Those
who have tried to challenge designations have consistently failed; courts rely on the well-settled
principle that "matters related to the conduct of foreign relations are so exclusively entrusted to
the political branches of government as to be largely immune from judicial inquiry or
inference."[25]  A cursory review of the media coverage since 9/11 makes clear that there is
significant political pressure to designate wealthy Saudi Arabian Muslims as terrorists.

Despite having been on OFAC's list for over four years, no criminal charges have been
brought against Mr. Kadi.  In fact, QLI, one of the charities to which the plaintiffs allege Mr.
Kadi donated in 1992, was the subject of a criminal investigation and subsequent indictment of
one of QLI's employees.  Notably, Mr. Kadi was not named as a defendant or even named in that
indictment, despite an investigation by the FBI since at least 1998.[26]  Additionally, while
plaintiffs allege that in 2002 the FBI "raided" the offices of Ptech, a company in which plaintiffs
allege Mr. Kadi was an investor, no criminal charges have been brought against that company,
nor is that company designated by OFAC, nor is there any allegation that the company has any
ties to 9/11.

---

[23] "UN Secretary-General Kofi Annan's High-level Panel on Threats, Challenges and Change, A ore secure world:  Our shared responsibility," at ¶152 (emphasis added).  Located at www.un.org/secureworld/.

[24] *E.g.*, *Regan v. Wald,* 468 U.S. 222, 242 (1984); *Harisiades v. Shaughnessy,* 342 U.S. 580, 589 (1952).

[25] *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 44 (D.D.C. 2005) (citing cases, ellipses omitted).

[26] Indictment can be found at:  http://www.usdoj.gov/usao/iln/indict/2004/marzook_et_al.pdf (visited January 23, 2006).

There simply is *no basis* for the presumption plaintiffs seek to have this Court apply to OFAC's political designation of Mr. Kadi as an SDGT.  Such presumption – that he was involved in a plot to support the 9/11 terrorists – cannot stand in light of the fact that after four years and various investigations of numerous Muslim entities, there have been no indictments against Mr. Kadi or any entity he owned or controlled.  Remarkably, the government can point and say, "J'Accuse," and then avoid the challenge of proving its bald accusation, while unilaterally destroying the reputation of and freezing the assets of anyone it chooses.

Plaintiffs cite to a "Treasury Department Press Release," which they allege states that Mr. Kadi was designated because Muwafaq was an "al Qaeda front."  To date, the October 12, 2001, press release, which is maintained on the Treasury Department's website, says *nothing* about the reason Mr. Kadi was designated.[27]

This Court has stated that being designated is "perhaps not dispositive on its own."[28] Unlike this Court's finding with respect to Mr. Batterjee, Mr. Kadi's designation cannot be relied upon as evidence that he was the cause of plaintiffs' injuries.  This Court relied on the fact Mr. Batterjee headed up a United States charity that was designated by OFAC.[29]  None of the organizations with which plaintiffs allege Mr. Kadi was involved were designated at the time Mr. Kadi is alleged to have given them support.  In fact, to date, Muwafaq, the charity plaintiffs claim is a front for al Qaeda, has not been designated by OFAC, nor has QLI.[30]  In 1992, when Mr. Kadi is alleged to have donated to QLI, plaintiffs have not alleged Mr. Kadi could have

---

[27]Press release can be found at:  http://www.treasury.gov/press/releases/po689.htm, and is attached as Exhibit B.

[28]*Terrorist Attacks I*, 349 F. Supp. 2d at 825.

[29]*Terrorist Attacks I*, 349 F. Supp. 2d at 825.

[30]*See* http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf (searched January 20, 2006).

known that an individual later claimed to be associated with Hamas worked for the charity.  In

fact, Hamas itself was not designated as a terrorist organization until 1995.  Other individuals

Mr. Kadi is alleged to have had contact with, such as Mr. Julaidan and Mr. Ayadi, were not

designated by any government as terrorists at the time of Mr. Kadi's alleged contacts.  Plaintiffs

have not alleged any way Mr. Kadi knew or should have known these men or charities were

doing anything other than helping those in need.

Mr. Kadi has been absolved by the only two forums in which the false allegations being

made against him have been vetted.  A federal court in Switzerland determined Mr. Kadi did not,

and could not know, his charitable contributions would be used to cause the events of 9/11.[31]

Turkey's chief public prosecutor ruled that there is no evidence to suggest that Mr. Kadi had

contact with or assisted the al-Qaeda terrorist organization.[32]

In *Pugh v. Socialist People's Libyan Arab Jamahiriya*, the D.C. federal court relied on an

extensive French investigation which found the same defendants in the D.C. proceeding were

deemed to be responsible for the bombings in both the French civil and criminal proceedings.[33]

Analogously, this Court can look to the recent Swiss decision for its inquiry, analysis and ruling

that there is a lack a causal link between Mr. Kadi and 9/11.  Several of the same plaintiffs in this

case brought the same allegations against Mr. Kadi.  The highest court in Switzerland held:

> nothing in the file would lead one to note or to believe that, either
> directly or indirectly, he [Mr. Kadi] effectively gave financial
> support to Al Qaeda within the scope of the September 11, 2001
> events.
>                                    *  *  *

---

[31]*See* 2005 Swiss Decision at 7.

[32] *See* http://www.arabnews.com/?page=1&section=0&article=60698&d=20&m=3&y=2005.  This
decision also contradicts plaintiffs' allegations regarding Mr. Kadi's alleged ties to terrorism through Turkish
companies.

[33]*Pugh v. Socialist People's Libyan Arab Jamahiriya,* 290 F. Supp. 2d 54, 56 (D.D.C. 2003).

> In this case, nothing in the file would lead one to conclude, with
> sufficient likelihood, that [Mr. Kadi] knew or could have known
> that the payments he made, and because of which he is implicated
> in the Swiss proceedings, would be specifically used to finance the
> September 11, 2001 attacks.[34]

As this Court held, "Plaintiffs must make a prima facie showing of each Defendant's **_personal or direct participation_** in the conduct giving rise to Plaintiff's injuries."[35]  The Swiss Decision is instructive.  Charitable contributions do not equate to direct participation.

Even if plaintiffs could somehow demonstrate the requisite minimum contacts, jurisdiction cannot be exercised if it would offend traditional notions of "fair play and substantial justice," or if the presence of some other considerations would render jurisdiction unreasonable.[36]  The factors to be considered when making this inquiry include the burden of litigating on the defendant.  Mr. Kadi has no business contacts in the United States.  In fact, as plaintiffs have pointed out, because Mr. Kadi is on OFAC's list, he is unable to spend money in defense of this litigation, making travel to the United States for his defense impossible.

## C.   Alleging Connections With HAMAS Or Muslim Charities Is Not Enough To Warrant the Exercise of Personal Jurisdiction

This Court held that "[d]onating money to established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States."[37]  Moreover, plaintiffs still "have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11."[38]  In reviewing FSIA causation, this Court noted:

---

[34] 2005 Swiss Decision at 6.  Notably, this decision is not appealable.

[35] *Terrorist Attacks I*, 349 F. Supp. 2d at 809 (emphasis added).

[36] *See World-Wide Volkswagen*, 444 U.S. at 292.

[37] *Terrorist Attacks II*, 392 F. Supp. 2d at 559.

[38] *Terrorist Attacks I*, 349 F. Supp. 2d at 833, 835.

> Unlike Hamas in *Boim,* none of the organizations the Princes are
> alleged to have supported in an official capacity were designated a
> sponsor of terrorism ***at the time of the alleged contributions***. . . .
> Thus, pursuant to *Boim,* the Plaintiffs would have to allege specific
> facts showing that the Princes knew or should have known that the
> charities they supported were actually fronts for al Qaeda.[39]

Likewise, allegations of investments or charitable work in countries with large Muslim populations in the early 1990's are not enough to sustain a specific jurisdiction claim that those activities were purposefully directed at the United States. To the contrary, Mr. Kadi's humanitarian efforts were often side-by-side with U.S. efforts abroad. For example, the United States Agency for International Development ("USAID") has given over $372 million for building schools, roads, and other infrastructure projects in Bosnia since the mid-1990's.[40] This is the same time period plaintiffs allege Mr. Kadi transferred money to Chafiq Ayadi who headed a charity's Bosnian branch office.[41] There is no distinction between Mr. Kadi's alleged charitable activities and USAID charitable activities. It is illogical to assume Mr. Kadi was on notice that his charitable work that mirrored donations from the United States government would somehow support an attack ***against*** the United States.

Other allegations, while at the same time ignoring the parallel between U.S. interests and the charitable actions claimed, are too attenuated to be part of the jurisdiction analysis. For example, plaintiffs allege a company (Karavan) with which Mr. Kadi was involved, gave money

---

[39]*Id.* at 800-801 (emphasis added).

[40]*See* USAID, "Bosnia-Herzegovina Receives Return on US Investment of $372 Million for Infrastructure Repair," found at http://www.usaid.gov/locations/europe_eurasia/press/success/bih_infrastructure_repair.html

[41]*See Continental Casualty* Second Amended Complaint ("SAC") at 364; *O'Neill MDS* at 22, ¶¶ 95-96; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop. MDS* at 13, ¶¶ 73-74.

to a charity (SJRC) in Kosovo.  The charity had as its chief, an individual (Mr. Julaidan) who, *years later*, was designated by OFAC in 2002.[42]

Similarly, plaintiffs' allegations that Mr. Kadi and his businesses were associated with the bin Laden family's businesses are irrelevant.  It is well-established that the family publicly disowned Osama.  As such, Mr. Kadi's alleged associations with the bin Laden family, if given any credence, are, in fact, evidence of Mr. Kadi's *disapproval* of Osama's terrorist agenda.

### D.    Personal Jurisdiction Cannot Be Measured By Events So Remote In Time

The most recent contact plaintiffs allege Mr. Kadi to have had with the United States is in the early 1990's.  While courts have not set a bright-line rule, activities ten years prior to the filing of a lawsuit is certainly long before Mr. Kadi would expect to be haled into a U.S. court.[43] While this Court noted that in the years immediately preceding the attacks it was clear Osama bin Laden and al Qaeda hated the United States, the only remote connections plaintiffs allege were in the early 1990's – a time when the United States and Osama bin Laden's interests were aligned.[44]  In fact, plaintiffs' allegations regarding Mr. Kadi pertain to charitable and business entities from the early 1990's.  At the time of those alleged transactions, plaintiffs have not alleged that Mr. Kadi had reason to know or even suspect "the receiving organization to be a solicitor, collector, supporter, front or launderer for" a terrorist organization.[45]  To the contrary,

---

[42]*See Continental Casualty* SAC at 357; *O'Neill MDS* at 12, ¶ 35 and at 14, ¶¶ 47-48; *Burnett, Euro Brokers,* and *World Trade Ctr. Prop. MDS* at 3, ¶ 13 and at 5, ¶¶ 24-25.

[43]*See e.g., Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) (citing cases holding three, five, and seven years as being the time-frame for contacts analysis).

[44]*See, e.g.*, U.S. Dept. of State, *Background Note; Afghanistan*, found at http://www.state.gov/r/pa/ei/bgn/5380.htm (noting Osama bin Laden fought with the resistance against the Soviets and that the United States aided the resistance movement).  Alleged meetings with Osama in the 1980's or early 1990's also cannot serve as a basis for the allegation that Mr. Kadi *knowingly* supported attacks on the United States in 2001.

[45]*Terrorist Attacks I*, 349 F. Supp. 2d at 801.

when Mr. Kadi supported Bosnian or Albanian charities – the United States was there as well, supporting the Bosnians in 1995 and the Albanians in 1999 against the cruelties against mostly Muslims whom Mr. Kadi's charitable efforts sought to support.[46]

Plaintiffs' allegations of Mr. Kadi's involvement with the charitable Muwafaq Foundation or with National Commercial Bank are not bases for personal jurisdiction in the United States.  This Court held that plaintiffs' allegations that Abdulrahman bin Mahfouz was a director of Muwafaq and on the management committee of National Commercial Bank were not enough to justify the exercise of personal jurisdiction over him.[47]  Moreover, plaintiffs allege Mr. Kadi was involved with Muwafaq from 1992 "***until approximately 1997***."  Therefore any relationship stopped years before 9/11.

Plaintiffs go to great lengths describing ties Mr. Kadi has with various companies, but the allegations themselves concede the remoteness in time.  For example, the *O'Neill* MDS/RICO document states "Until 1996, Al-Qadi was an investor in an Islamic Bank . . ."[48]  Investments Mr. Kadi may have made five or six years before 9/11 are irrelevant and not sufficient to plead he was a cause or supporter of the cause of plaintiffs' injuries.  Similarly, the *O'Neill* MDS alleges Mr. Kadi "is" an officer of a Connecticut company, but then on the same page alleges the

---

[46]*See, e.g.,* U.S. State Department, *Background Note, US-Albanian Relations*, found at http://www.state.gov/r/pa/ei/bgn/3235.htm ("Since FY 1991, the U.S. has provided more than $531 million in assistance–not counting U.S. Department of Agriculture (USDA) food aid–to Albania to facilitate its transition from the most isolated and repressive communist state in Europe to a modern democracy with a market-oriented economy, and to support long-term development."); U.S. State Department, *Background Note, US-Bosnian Relations*, found at http://www.state.gov/r/pa/ei/bgn/2868.htm, ("The 1992-95 war in Bosnia and Herzegovina was ended with the crucial participation of the United States in brokering the 1995 Dayton Accords.").

[47]*Terrorist Attacks I*, 349 F. Supp. 2d at 820-21.

[48]*O'Neill* MDS at 17, ¶ 67; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop.* MDS at 7, ¶ 44.

14

company "vacated its Connecticut office" around 1997.[49]  Plaintiffs further allege Mr. Kadi

operated Muwafaq in Delaware until 1997, although the Foundation has been void since 1994, as

indicated by the Secretary of State in Delaware.[50]  Likewise, alleging investments in domestic

companies such as Ptech is not enough to hale Mr. Kadi into court in New York.  As this Court

held, being an investor in a company is not enough to sustain personal jurisdiction.[51]

Where plaintiffs have not specified the timing of Mr. Kadi's purported meetings or

associations, they have not met their burden of establishing a *prima facie* case for asserting

personal jurisdiction over the non-resident defendant.

### E.    Allegations Relating To Mr. Kadi's Role As An Officer Or Director Of A Corporation Are Not Enough To Warrant The Exercise Of Personal Jurisdiction

As this Court noted with respect to Prince Mohamed, a non-resident defendant's position

as an officer of an entity "would not be a be a basis for jurisdiction over him even if the Court

had personal jurisdiction over these entities."[52]  Allegations pertaining to Kadi International,

Karavan Construction Company, Muwafaq, Abrar Group International, or any other entity for

which Mr. Kadi may have served as an officer are not enough to warrant an exercise of personal

jurisdiction over him.  It is not enough that plaintiffs allege that businesses or charities with

which Mr. Kadi may have been involved as an officer or investor had ties to alleged terrorism.

Parallel with this Court's ruling with respect to Prince Mohamed, plaintiffs have not alleged –

and could not allege – that Mr. Kadi had any knowledge of or involvement with al Qaeda.  "To

---

[49]*O'Neill* MDS at 21, ¶¶ 85, 88; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop.* MDS at 11-12, ¶¶ 63, 66.

[50]*See Exhibit* C.

[51]*Terrorist Attacks I*, 349 F. Supp. 2d at 820-21 (dismissing A. bin Mahfouz for lack of personal jurisdiction).

[52]*Id.* at 815-16.

make a prima facie case of personal jurisdiction, Plaintiffs must either allege personal acts by

[the defendant] by which he purposefully directed his activities at the United States by

supporting Osama bin Laden, al Qaeda, or their terrorist agenda . . . ."[53]  To the contrary,

plaintiffs even allege Mr. Kadi was involved with a company that supported U.S. troops in the

Gulf War.[54]

> **F.**   **Plaintiffs Cannot Rely On The Antiterrorism Act ("ATA") For Nationwide Service Of Process**

With due respect for this Court's prior holdings, the ATA does not apply to terrorist acts

which occur in the United States, and thus is inapplicable in this case.  The ATA, 18 U.S.C.

§ 2333(a) (2004), provides a cause of action for U.S. nationals injured "by reason of an act of

international terrorism."  "International terrorism," in turn, is defined in 18 U.S.C. § 2331(1) to

include activities that "occur primarily outside the territorial jurisdiction of the United States, or

transcend national boundaries in terms of the means by which they are accomplished, the persons

they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or

seek asylum" and is specifically distinguished from "domestic terrorism," which is defined

separately.[55]  Even if the ATA did apply, it alone would not confer personal jurisdiction over Mr.

Kadi; plaintiffs would still have had to demonstrate that the exercise of personal jurisdiction

comports with the constitutional right to due process, which it clearly does not.

---

[53]*Id.* at 816.

[54]*O'Neill* MDS at 29, ¶ 144; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop.* MDS at 19, ¶ 122.

[55]This definition of international terrorism is drawn *verbatim* from the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801(c) (2004).  *See Boim v. Quranic Literacy Inst.,* 291 F.3d 1000, 1009 (7th Cir. 2002); S. Rep. No. 102-342 at 45 (1992).

### G.    Jurisdictional Discovery Is Not Warranted

Only "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."[56]  Plaintiffs have not demonstrated what, if any, jurisdictional discovery would supplement their specious allegations.  To the contrary, plaintiffs' MDS's reveal the plaintiffs have had uncanny access to OFAC's files, and as a party in the Swiss action, they have had numerous opportunities for discovery regarding Mr. Kadi.  Even so, they have not made the requisite showing and should not be granted the opportunity to harass and burden Mr. Kadi further.

### III.    PLAINTIFFS HAVE FAILED TO STATE A COGNIZABLE CLAIM AGAINST MR. KADI UPON WHICH RELIEF MAY BE GRANTED

#### A.    Plaintiffs Have Not Alleged Facts Sufficient To Show Mr. Kadi's Actions Proximately Caused Plaintiffs' Injuries

Plaintiffs offer nothing to support the proposition that Mr. Kadi's actions proximately caused the injuries suffered by plaintiffs.  Plaintiffs must establish proximate causation between charitable donations from the early 1990's, construction projects in the mid-1990's, and plaintiffs' injuries.  This Court previously rejected plaintiffs' requests for a less stringent causation standard.[57]

#### B.    Plaintiffs Have Failed To State Claims Under The ATA Or The Alien Tort Claims Act

To state a viable claim under the ATA, plaintiffs must have alleged facts that if proven, show that Mr. Kadi knew of al Qaeda's plot and "desired to help those activities succeed, and

---

[56] *Burnett I*, 274 F. Supp. 2d at 97.

[57] *Terrorist Attacks I*, 349 F. Supp. 2d at 797, n. 26 (rejecting plaintiffs' request for less stringent causation standard and concluding "the proper inquiry at this stage of the litigation is the presence of proximate causation.")

[he] engaged in some act of helping the illegal activities."[58]  Plaintiffs have not alleged any facts

showing that Mr. Kadi knew, participated in, or approved of any conduct that facilitated the

alleged funneling of money from those charities and businesses to al Qaeda.  Plaintiffs'

allegations are nothing more than a listing of various charities, corporations, and countries, with

no connection to 9/11 without an unsupportable leap of logic.  An example of such an abstruse

leap is required to find any allegation of wrongdoing in the following:

> When SDGT Yassin Al Qadi invested in the al Shamal Bank, he
> was instructed by the bank's managers to transfer funds to the bank
> via al Shamal's correspondent account at Kamel's Al Baraka Bank.
> This fact indicates that Kamel was using Al Baraka as a vehicle for
> covertly directing funds to Al Qaeda by having major terrorist
> financiers, such as Yassin Al Qadi, funnel money through Al
> Baraka to end-point financial institutions, such as Al Shamal,
> which would then distribute funds to the Bin Laden network.
> Yassin al Qadi was also an investor in Saleh Kamel's subsidiary
> company, Al-Tawfeek Company until 1997.[59]

According to plaintiffs, in one sentence, Mr. Kadi is an investor in a bank, and the next it

is claimed that money transferred to that bank went to al Qaeda – not because Mr. Kadi directed

it to go to al Qaeda, or even because he knew it would go to al Qaeda, but merely because he is

an investor in that bank.  In effect, without even the pretext of factual support, anyone who did

business with those banks supports terrorism, and any money in the bank is terrorist money.  The

result is absurd.  Tellingly, assuming either of these banks were indeed terrorist covers, to date,

neither have been designated as such by OFAC.  Additionally, plaintiffs' allegation on its face

states Mr. Kadi's investment in the bank ended in 1997.  Even if Mr. Kadi was supporting al

Qaeda's terrorist agenda through that bank, plaintiffs have failed to allege that these transfers

made in the early 1990's were somehow used to support the attacks in 2001.

---

[58]*Terrorist Attacks II*, 392 F. Supp. 2d at 564 (citing cases).

[59] *Federal Ins*. SAC at 258.

Plaintiffs' lack of candor in their allegations is evident in their description of a decision by a European Union Court.  The decision, as plaintiffs concede, was solely based on *jurisdiction*.  The EU court determined it did not have jurisdiction to review a United Nations order, and yet the plaintiffs allege this ruling is an "acknowledgement of Al Qadi's guilt."[60]  A court issuing a ruling that it does not have jurisdiction to decide an issue clearly cannot be used as support for a "made-up" outcome of that court.

Probably most outrageous in plaintiffs' litany of malicious claims is the assertion that Mr. Kadi's *1998* donation to build a school is somehow evidence of a terrorist agenda:

> Al-Qadi claims that his donation to Maram was used solely to aid in the construction of Al Iman, a religious school in Yemen.  ***Bank records confirm that Al-Qadi's claim is true*** but this in and of itself does not exonerate Al-Qadi . . . .[61]

Plaintiffs have obviously obtained bank records which contradict their own allegations, yet instead of withdrawing the reprehensible-sounding allegation, they assert it to further blur the lack of a nexus between Mr. Kadi and 9/11.  Plaintiffs go on to note that "JoIm [*sic*] Walker Lindh, the American Taliban, is a former student of Al Iman."[62]  So what?  A donation, which plaintiffs concede went to build a school in 1998, cannot be tied to the actions of students of that school years later.[63]  Plaintiffs do not allege Mr. Kadi was a teacher at the school, instructing students who are alleged to have a terrorist agenda.  Instead, Mr. Kadi paid for the brick and the mortar, that built a *school* – not a terrorist training camp – in Yemen.  During that time, USAID

---

[60]*Continental Casualty* SAC at 355, ¶¶ 4-6.

[61]*Id.* at 355-56, ¶ 11; *O'Neill* MDS at 11, ¶ 32; *Burnett*, *Euro Brokers*, and *World Trade Ctr. Prop.* MDS at 3, ¶ 12.

[62]*Id.*

[63]John Walker Lindh's indictment does not connect him to the planning or support of the 9/11 attacks.  To the contrary, the indictment charges Lindh with crimes committed *after* 9/11.  *See* indictment at http://www.usdoj.gov/ag/2ndindictment.htm (visited January 19, 2006).

was sending $8.5 million to Yemen.  According to the U.S. State Department, "[f]unds went, in large part, to support literacy projects, training for tribal councils, and providing access to the Internet in schools."[64]  It is beyond comprehension – and reprehensible – that allegations that Mr. Kadi, making contributions similar to those of the United States government, can be used to support accusations of a heinous crime on U.S. soil three years later.

### C.    Plaintiffs Fail To State Their State Law Causes Of Action

Plaintiffs have not alleged facts sufficient to demonstrate Mr. Kadi was engaged in a conspiracy.  Plaintiffs' conspiracy theory can only survive with the presumption that all Muslim charities and business were involved in the plot against the United States.  Conspiracy, aiding and abetting, and punitive damages are not independent claims under New York law.[65]  To the extent plaintiffs bring a negligence action against Mr. Kadi, they have not alleged Mr. Kadi had a duty to the plaintiffs as this Court and many others have deemed required to sustain a negligence claim.  Moreover, a negligence claim cannot be sustained where an intentional tortfeasor, as the hijackers, intervene and are the cause of plaintiffs' injuries.[66]  Additionally, plaintiffs' state law intentional tort claims are barred by the one-year statute of limitations.[67]

### D.    Plaintiffs Have Failed To State A RICO Claim Against Mr. Kadi

In order to sustain a RICO claim against Mr. Kadi, plaintiffs must have alleged facts which would support a claim that Mr. Kadi participated in the operation or management of the

---

[64]*See* http://www.state.gov/r/pa/ei/bgn/35836.htm (visited January 19, 2006).

[65]  *See, e.g., Liberman v. Worden*, 701 N.Y.S.2d 419, 420 (1st Dept. 2000) (dismissing aiding and abetting claim where plaintiffs did not allege defendant had knowledge of and substantially assisted with the misconduct); *Fiur Co. v. Ataka & Co.*, 71 A.D.2d 370, 375-376 (1st Dept. 1979) (punitive damages); *Pappas v. Passias*, 271 A.D. 2d 420 (N.Y. A.D. 2d Dept. 2000) (conspiracy).

[66]  *Cullen v. BMW of North America, Inc.,* 691 F.2d 1097, 1101 (2d Cir.1982) (holding that "an intervening act, tortious or criminal, will ordinarily insulate a negligent defendant from liability when the subsequent act could not have been reasonably anticipated by the defendant.").

[67]N.Y. C.P.L.R. § 215 (3)**.**

enterprise itself, which requires facts evidencing that Mr. Kadi had some part in directing the enterprise's affairs.[68]  Plaintiffs' allegations are that businesses and charities with which Mr. Kadi either donated or invested in, had employees or funds that had other relationships with entities or individuals associated with alleged terrorists.  This Court ruled that RICO requires "racketeering" income, rather than mere fundraising.[69]  Plaintiffs' allegations lack claims Mr. Kadi used racketeering income towards an enterprise in which he had any operational control.

### E.    Plaintiffs' Claims Are Barred To The Extent Plaintiffs Participated In The Victims' Compensation Fund

The 9/11 Victims' Compensation Fund was created by Congress to provide compensation for individuals who were injured, or individuals' families if the individual lost their life, as a result of the 9/11 attacks.  The Act provided that those who participated in the fund by filing a claim, waived

> the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001.  The preceding sentence does not apply to a civil action to recover collateral source obligations, or to a civil action against any person who is a ***knowing participant*** in any conspiracy to hijack any aircraft or commit any terrorist act.[70]

To the extent plaintiffs submitted claims to the Victims' Compensation Fund,[71] their claims against Mr. Kadi must fail as they did not allege – nor could they in good faith allege –

---

[68]*Terrorist Attacks I,* 349 F. Supp. 2d at 828.

[69]*Id.* at 827.

[70]September 11th Victim Compensation Fund of 2001, Pub. L. No. 107-42, tit. IV, sec. 405(c)(3)(B)(i), 115 Stat. 237, 240, as amended by Pub. L. No. 107-71, sec. 201(a) (2001), reprinted as note following 49 U.S.C.A. sec. 40101 at 13 (Supp. 2005) (emphasis added).

[71]According to Camille Biros, the Victims Compensation Fund spokesperson, 95 percent of the eligible families filed claims with the Fund.  *See* http://www.cnn.com/2003/US/12/23/victims.fund/index.html/ (visited January 21, 2006).

that Mr. Kadi was a "***knowing participant***" in the conspiracy to hijack the planes or commit a terrorist act.

### F.    Plaintiffs' Claims With Respect To Mr. Kadi's Volunteer Activities Are Barred

The Volunteer Protection Act ("VPA") provides a limitation on liability for volunteer activities unless the plaintiffs alleged the conduct constituted "a crime of violence or act of international terrorism ***for which the defendant has been convicted*** in any court."[72]  More than four years after 9/11, Mr. Kadi has not been charged, much less convicted, and the plaintiffs have not alleged as much.  The VPA applies where the volunteer of a nonprofit has not acted with "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."[73]  Plaintiffs have not alleged facts evidencing that  level of knowledge on the part of Mr. Kadi.  Innuendo and "degrees of separation" allegations do not suffice.  Therefore, to the extent plaintiffs' allegations relate to Mr. Kadi's charitable activities with Muwafaq, QLI, or any other charity, they must be dismissed.

## IV.    PLAINTIFFS HAVE NOT PROPERLY SERVED MR. KADI

Each of the complaints against Mr. Kadi should be dismissed for insufficiency of service of process.  Plaintiffs' attempts to side-step one of the fundamental protections in our justice system, codified in Rule 4, Fed. R. Civ. P., should not be excused merely because Mr. Kadi lives in Saudi Arabia or because plaintiffs chose to file a 400-plus page complaint against hundreds of individuals and organizations worldwide.  To date, Mr. Kadi has not been served with a

---

[72] 42 U.S.C. § 14503 (f)(1)(A) (emphasis added).

[73] *Id.* at (a)(3).

summons or a complaint in the *Federal Insurance*, *Continental Casualty*, *Euro Brokers*, *NY Marine*, or *WTC* complaints, despite the fact some of these cases were filed two years ago.

### A.     The Publication Order Does Not Apply To Mr. Kadi

This Court's September 15, 2004, order regarding service by publication applied only to those defendants "for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted or rejected or otherwise not responded to at an address that was discovered."  The Supreme Court held:

> [N]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.  "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."[74]

Mr. Kadi's address has been readily and easily accessible since the *Ashton* plaintiffs in this case mailed a copy of their complaint to him in June 2003.  His address is publicly available. In fact, Mr. Kadi's address was included in the allegations of the *Burnett* complaint.[75]  The mere entry of his name and home country into an internet search engine provides Mr. Kadi's address instantaneously.[76]  The *O'Neill* plaintiffs' mailing of the complaint reached Mr. Kadi's address on November 7, 2005.  The *Federal Insurance* plaintiffs likewise waited until mid-2005 to even mail a copy of the complaint to Mr. Kadi.[77]  While such mailing does not necessarily constitute a proper method of service under Saudi law for a Saudi national living in Saudi Arabia, it does

---

[74]*Schroeder v. City of New York*, 371 U.S. 208 (1962) (citing *Mullane v. Central Hanover Bank & Trust Co.***,** 339 U.S. 306 (1950)).

[75]*See Burnet I* Complaint. ¶ 1076.

[76]*See, e.g.,* http://911review.org/Sept11Wiki/Al-Kadi,Yassin.shtml (the page notes it was last modified in November 2003, therefore minimal effort would have led plaintiffs to Mr. Kadi's address before 2005).

[77]*Federal Ins.* Docket, No. 530.  To date, it is unknown whether that mailing arrived in Saudi Arabia.

demonstrate that service by publication was not an appropriate method by which to serve Mr. Kadi as his address is known.

Assuming plaintiffs attempt to rely on the publication order with respect to Mr. Kadi, publication in the *International Herald Tribune* and *Al Quds Al-Arabi* was not reasonably calculated to notify him of the numerous suits consolidated in this MDL, as the papers have limited circulation and are banned, respectively, in Mr. Kadi's country of residence. Plaintiffs' use of service by publication is either an attempt to harass, an attempt to avoid the time and expense of mailing the documents to the defendant they chose to name, or an utter disregard for the Federal Rules of Civil Procedure. Either reason should not be rewarded, and the complaints should be dismissed without leave to comply with the rules they chose to disregard.

### B. The Court Should Dismiss The Complaints For Failure To Serve

The plaintiffs in *Burnett*, *Euro Brokers*, *World Trade Center*, *Barrera*, *Cantor Fitzgerald*, *Continental Casualty*, and *Salvo*, as far as we are aware, have not even attempted to serve Mr. Kadi. The plaintiffs in *Federal Insurance* and *O'Neill* did not mail their complaints to Mr. Kadi until September 2005 and June 2005, two years after their complaints were first filed. Rule 4(m) provides for service to be made within 120 days of filing a complaint. While that is not controlling where the defendant is foreign, it is instructive on what a reasonable period of time should be to serve an individual. More importantly, this Court's CMO2 required plaintiffs to serve all defendants named as of June 16, 2004, by October 15, 2004. Plaintiffs have no good cause for the delay. Mr. Kadi's address has been well-known since the first plaintiffs in this MDL mailed him a copy of the complaint and even put his address in their complaint. Rule 12(b)(5) anticipates that failure to serve is an adequate reason to dismiss a complaint, and dismissal is warranted here, as plaintiffs have delayed for years before mailing a copy of the complaint to a foreign defendant. Plaintiffs chose to file suit against numerous parties, many of

24

whom are not subject to personal jurisdiction in the United States.  That decision does not

exempt them from the requirements of proper service.

## V.    CONCLUSION

The complaints against Mr. Kadi are at best an attempt to find a successful Saudi from

whom to seek recovery, and at worst, the legitimizing of cultural prejudices.  As the Swiss court

recently held in vindicating Mr. Kadi:

> Even if the accused had links with people, such as S., or
> organizations which were suspected of having ties with Al Qaeda –
> such as the U. – none of the elements provided by the plaintiffs
> provide the grounds for considering it likely that the accused gave
> money to the above-mentioned people and organizations for the
> express purpose of training terrorists to hijack aircraft in order to
> crash them on civilian or military targets in September 2001.[78]

The complaints should be dismissed with prejudice in their entirety.  Leave to clarify,

supplement, or otherwise amend the complaints would be futile and a further effort to harass Mr.

Kadi.

Dated:  February 3, 2006                    Respectfully submitted,

                                            HUNTON & WILLIAMS LLP


                                       By:_/s/ Bonnie K. Arthur_____
                                            David F. Geneson
                                            Bonnie K. Arthur
                                            Hunton & Williams LLP
                                            1900 K Street, N.W.
                                            Suite 1200
                                            Washington, D.C. 20006-1109

                                            Attorneys for Defendant
                                            Yassin Abdullah Kadi

---

[78] 2005 Swiss Decision, Certified English Translation at 7.

## CERTIFICATE OF SERVICE

I certify that, on the 3rd day of February 2006 I caused copies of **DEFENDANT**

**YASSIN ABDULLAH KADI'S MEMORANDUM IN SUPPORT OF MOTION TO**

**DISMISS** to be served via the Court's ECF System to all counsel of record listed within the

Court's ECF System.

By:
 /s/ Bonnie K. Arthur
Bonnie K. Arthur
Hunton & Williams LLP
1900 K Street, NW
Washington, DC 20006