UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) |
| --- | --- |
| | ECF Case |

This document relates to:        Federal Ins. Co., et al. v. Al Qaida, et al.
                                 (03 CV 6978)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.**

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant
DMI Administrative Services S.A.*

W02-NY:1ESC1\120008452.1

# TABLE OF CONTENTS

**Page**

RELIMINARY STATEMENT ...........................................................................................................1

I    PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A. ..................................................................................2

    A.    There Is No General Jurisdiction Over DMI S.A. ............................................2

    B.    There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction, And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States. ............................2

II    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A. ...............................................................................3

    A.    Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8. ..................................................................3

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries. .................................................5

    C.    Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action. .........................................................................7

        1.    Plaintiffs Have No Standing Under RICO And, Alternatively, Have Failed To Sufficiently Plead A RICO Claim. (Count 8) .......................................7

        2.    Plaintiffs Have Failed To State An ATA Claim. (Count 10) ..............................8

        3.    Plaintiffs Fail To Properly Plead Their State Law Causes. (Counts 1-5, 7, 9, and 11-12) ............................................................8

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................10

CONCLUSION ..............................................................................................................................10

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its motion to dismiss the *Federal Insurance* Complaint (Docket No. 1262). As the record reflects, the motion is meritorious and should be entirely granted.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion and as DMI S.A.'s Initial Memorandum made clear, "[t]he major thrust of DMI [S.A.]'s argument" is *not* "that DMI [S.A.] cannot be held liable because DMI [S.A.] did not, itself, carry out the September 11 attacks."[1] See Plaintiffs' Opposition (Docket No. 1557) ("Opposition" or "Opp.") at 2. The key point is that the *Burnett* plaintiffs, as all others, have failed to proffer a single factual allegation tying DMI S.A. to a global terrorist conspiracy, making it liable for mass murder, or even establishing this Court's jurisdiction over it. See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1263) ("Init. Mem.") (Introduction).[2]

Plaintiffs largely ignore that argument and instead have chosen to recast their allegations into something other than what is actually in their pleadings. Plaintiffs have also blithely ignored this Court's holdings, in its January 18, 2005 and September 21, 2005 Orders, and the authority set out by DMI S.A. in its Initial Memorandum. Indeed, plaintiffs pay no heed to the Court's holdings that (i) conclusory allegations are insufficient to establish jurisdiction or to state a claim; (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability; and (iii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries. Compare In re Terrorist Attacks on

---

[1] Despite DMI S.A.'s repeated admonitions, see, e.g., Init. Mem. at 1 n.1, plaintiffs in their Opposition continue to make various assertions regarding "DMI," without indicating which allegations are meant to apply to DMI S.A. and which are intended to pertain to DMI S.A.'s ultimate parent, Dar Al-Maal Al-Islami Trust ("DMI Trust"). As the undersigned has continually explained to plaintiffs' counsel, DMI S.A. and DMI Trust are separate companies and separate named defendants. Plaintiffs' allegations, and now the statements in their Opposition, regarding "DMI" are thus unintelligible as written. The claims against DMI S.A. should be dismissed on this ground alone. See Init. Mem. at 1 n.1 (citing cases).

[2] DMI S.A. moved to dismiss the *Federal Insurance* plaintiffs' First Amended Complaint and Amended RICO Statement (Docket No. 949), filed on May 26, 2005. However, on September 30, 2005, in contravention of the Court's direct charge that "plaintiffs shall file an amended complaint that includes all amendments made prior to that date," see CMO #2 ¶ 13, the *Federal Insurance* plaintiffs filed a so-called "First Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Paragraph 13 of [CMO #2]" ("FAC") simply attaching various RICO Statements deemed consolidated into their FAC (and adding no new allegations). In light of the *Federal Insurance* plaintiffs' clear disregard for the Court's Orders, their September 30, 2005 FAC should be struck.

Sept. 11, 2001, 349 F. Supp. 2d 765, 805, 809, 835 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") with Opp. at 1, 9-14, 17-18, 23-25.  Moreover, plaintiffs are silent as to the Court's ruling that to plead jurisdiction or state claims based upon a theory of conspiracy, they must make a *prima facie* showing of conspiracy and of DMI S.A.'s participation in it (and again, that conclusory allegations do not suffice).  Compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-6, with Opp. at 23-25.

In both in their pleadings and now their Opposition, the *Federal Insurance* plaintiffs offer *nothing* to support the grave accusation that DMI S.A. had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading might be remedied by repleading.  Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

# ARGUMENT

## I
## PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A.

**A.     There Is No General Jurisdiction Over DMI S.A.**

Plaintiffs do not dispute, and therefore concede, that neither the allegation that DMI S.A. held an ownership interest in a Boston firm, nor the allegation that DMI S.A. advertised in United States newspapers, amount to "continuous and systematic" contacts with New York or the United States.  See Init. Mem. at 4-5, 7-8; see also In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II").[3]

**B.     There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction, And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States.**

The *Federal Insurance* plaintiffs do not dispute, and therefore concede, that their wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage their assertion of personal jurisdiction over DMI S.A. See Init. Mem. at 5-7; see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" insufficient to establish personal jurisdiction on New York long-arm conspiracy theory).

---

[3] Plaintiffs' failure to respond to a defense raised by a defendant in a dispositive motion concedes that defense.  See, e.g., Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

Instead, plaintiffs seek to found specific personal jurisdiction over DMI S.A. upon its purported purposeful direction of some "conduct" here -- but do not point the Court to any allegations of such conduct. See Opp. at 23. It is no accident that plaintiffs fail to cite to any factual support for such an assertion, because plaintiffs allege no wrongful conduct by DMI S.A. at all. See Init. Mem. at 8-10, 9 n.3. Nowhere in the Opposition -- *or* in the allegations of the FAC and RICO Statement -- do plaintiffs point to *any* "specific facts from which the Court could infer that [DMI S.A.] directed, controlled, or requested al Qaeda to undertake its terrorist activities," see In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806; nor do they "allege personal acts by [the defendant] by which [it] purposefully directed [its] activities at the United States," see id. at 816; nor do they sufficiently aver that DMI S.A. "expressly aimed" any (unalleged) tortious act at the forum. See id. at 809. Plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by specific allegations of fact. Yet, the Court has already held that plaintiffs may not "circumvent the jurisdictional hurdle… by inserting vague and conclusory allegations of tortious conduct in their complaints -- and… rely[ing] on the federal courts to conclude that some conceivable… tortious act falls within the purview of these generic allegations…." In re Sept. 11 Attacks I, 349 F. Supp 2d at 801.[4]

## II

## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.

### A.   Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.

Plaintiffs do not contest that the FAC improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI S.A. See Init. Mem. at 1 n.1, 10-12 (citing cases). Instead, plaintiffs contend that Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), Phelps v. Kapnolas, 308 F.3d

---

[4] Plaintiffs also make the unprecedented argument that, for purposes of invoking personal jurisdiction, they need not satisfy the Due Process requirements of the Fifth Amendment because DMI S.A. is a foreign defendant. See Opp. at 22-23. However, none of plaintiffs' case authority concerns issues of personal jurisdiction, see id., so that purported authority is inapposite. Moreover, in their very next breath, plaintiffs' Opposition favorably cites to a long-standing Supreme Court precedent affording a foreign corporation Due Process protections for purposes of personal jurisdiction. See Opp. at 23-24, citing Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102 (1987). Plaintiffs' Opposition also cites a recent *slip opinion* from the District Court for the District of Columbia, entitled Baker v. Great Socialist People's Libyan Arab Jamahiriya. Plaintiffs there sought personal jurisdiction over defendants under the FSIA, however, see Baker at 1-2, and "the FSIA is not the basis for personal jurisdiction here." See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 809.

180 (2d Cir. 2002), and Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI S.A.  See Opp. 7-11.  In Phelps, however, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury.  Phelps, 308 F.3d at 187 & n.6.  Similarly, Pelman is inapposite because the Court there held only that plaintiffs did not have to plead facts to show their own contributory negligence.  See Pelman, 396 F.3d at 511-12.  Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI S.A. committed any wrongful acts or that it proximately caused plaintiffs' injuries.  Plaintiffs' reliance on Twombly also is misplaced; the Twombly Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred.  See Twombly, 425 F.3d at 114-15.  Plaintiffs here, however, allege neither any analogue to price-fixing "parallel conduct" by DMI S.A. and any other defendant, nor any specific facts, such as communications of assent, showing that DMI S.A. participated in any conspiracy.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805 (plaintiffs must make *prima facie* showing of conspiracy and allege specific facts warranting inference defendant member of conspiracy); Gmurzynska v. Hutton, 355 F.3d 206, 210-11 (2d Cir. 2004).

In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide any factual allegations showing when, where, how, or to whom *DMI S.A.* supposedly provided *any* support to al Qaeda, knowingly or unknowingly.[5]  Simply put, plaintiffs' numerous conclusory allegations -- upon which plaintiffs explicitly continue to rely in their Opposition, see, e.g., Opp. at 3, 11-12, even after this Court's clear and repeated rejection of such allegations -- fail to provide DMI S.A. with meaningful notice of the factual basis of the claims against it, Plaintiffs' claims therefore must be dismissed in their entirety.

---

[5] For example, plaintiffs assert that "DMI [S.A.]'s misconduct includes laundering money for al Qaida."  See Opp. at 10.  Such a conclusory and unsupported assertion is plainly insufficient.  See Init. Mem. at 14 n.9.  Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent are utterly irrelevant.  See Init. Mem. at 13 n.6.

**B.     Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[6] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801, 805-06, 825-26.

Plaintiffs' assertion of concerted action by DMI S.A. satisfies none of these elements, whether invoked for purposes of jurisdiction, proximate causation, or otherwise to state a claim. See Opp. at 11-15. Instead they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI S.A.]," see Opp. at 13; see also Opp. at 3 (relying upon *Federal Insurance*'s conclusory allegations in asserting that "plaintiffs allege that DMI [S.A.] *conspired* with bin Laden and *knowingly* laundered money and provided financial services for al Qaeda"). Clearly, as the Court has repeatedly and unequivocally held, these conclusory allegations are inadequate to invoke jurisdiction or to state a claim.

---

[6] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." See Pittman, 149 F.3d at 122 (citations omitted). As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI S.A. See Init. Mem. at 19-21.

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition half-heartedly attempts to put forth "more specific allegations of causation." See Opp. at 12. Plaintiffs' Opposition asserts that "that DMI [S.A.], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank and that Al Shamal [supported al Qaeda in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [S.A.] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14. However, *no such allegations* appear among the actual allegations of the FAC and RICO Statement.

For example, as to DMI S.A.'s putative support for terrorist training camps, plaintiffs allege only that al Qaeda members maintained accounts at the Sudanese banks Faisal Islamic Bank (Sudan) ("FIB-Sudan"), Tadamon Islamic Bank ("TIB"), and al Shamal Bank, see FAC ¶¶ 315, 329, 337 and RICO Stmt., Exh. A at 11-13, and that DMI S.A.'s ultimate parent has been associated with those entities. See RICO Stmt., Exh. A at 9, 12. Plaintiffs have alleged *no facts whatsoever* indicating that DMI S.A. somehow knowingly supported terrorist training camps, in the Sudan or Afghanistan or anywhere else; no facts showing that DMI S.A. (or any of its affiliates) "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI S.A. has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI S.A. ever knowingly provided banking services to anyone associated with al Qaeda.[7] See Init. Mem. at 12-15, 23-24. Thus, plaintiffs' endeavor to recast their allegations into something other than what they have in fact pleaded, should be rejected out of hand.[8]

In sum, and as the Initial Memorandum detailed, the overwhelming majority of the *Federal Insurance* plaintiffs' allegations regarding DMI S.A. are wholly conclusory. Even with their attempt to

---

[7] Plaintiffs also have alleged no facts showing that DMI S.A. could be held liable for the supposed acts of the Sudanese banks. Plaintiffs allege at most that DMI S.A.'s ultimate parent is a "major investor" of Al Shamal, is "associated" with FIB-Sudan, and that FIB-Sudan is a shareholder of TIB. See RICO Stmt., Exh. A at 9, 12. Such allegations wholly fail to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity. See Init. Mem. at 1 n.1.

[8] It is improper to attempt to amend a Complaint through an opposition brief. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

recast their allegations, plaintiffs' Opposition simply does not remedy their failure to allege facts showing that DMI S.A. did anything more than provide routine banking services, and make innocuous charitable donations, that according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init. Mem. at 12-15; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  Plaintiffs also have entirely failed to allege facts sufficient to show that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting.  See Init. Mem. at 19-21.  Thus, plaintiffs have alleged neither concerted action nor proximate causation as to any of the pending claims.  See, e.g., Dura Pharm., Inc. v. Broudo, -- U.S. --, 125 S.Ct. 1627, 1634 (2005) (dismissing for failure to elucidate plaintiff's theory of causation).

C. **Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action.**

    1. **Plaintiffs Have No Standing Under RICO And, Alternatively, Have Failed To Sufficiently Plead A RICO Claim. (Count 8)**

The *Federal Insurance* plaintiffs do not dispute that because they assert RICO claims as third-party subrogees of their insureds' and seek pecuniary losses injury arising from personal injuries, see FAC ¶¶ 532-88, those claims must be dismissed for lack of standing.  See Init. Mem. at 21.

Furthermore, although plaintiffs purport to assert a claim under Section 1962(a), plaintiffs' Opposition effectively concedes that claim has no merit.  As to their remaining RICO claims under Sections 1962(c) and (d), plaintiffs' conclusory, boilerplate RICO allegations regarding DMI S.A. do not state *any* of the requisite elements of a civil RICO claim against DMI S.A., and those claims must be dismissed.  See Init. Mem. at 21-23 (citing cases).  In addition, although plaintiffs admit that "a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise," and that "[t]o sustain a claim under § 1962(d), the plaintiff must allege that the defendant was a 'central figure' in the underlying scheme," see Opp. at 16-17, plaintiffs do not allege that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise.  See Init. Mem. at 21-23.  Instead of defending the sufficiency of their conclusory RICO

allegations regarding DMI S.A., plaintiffs merely re-state their well-worn boilerplate allegations. Compare Opp. 17-19 with In re Sept. 11 Attacks II, 392 F. Supp. 2d at 571-72; and Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements.  These elements . . . must be tightly particularized . . . . Parroting statutory language . . . is inadequate."). For all of these reasons, plaintiffs' RICO claims must be dismissed.

### 2. Plaintiffs Have Failed To State An ATA Claim. (Count 10)

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 with Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. Compare id. at 835 with Opp. at 11-14.  Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their FAC, such as the non-existent allegation that DMI S.A. provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere." Cf. Opp. at 13.  In short, plaintiffs simply make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."). Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any recipients of donations or banking services] were supporting terrorism." See id. at 832-33.  Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed.  For much the same reasons, plaintiffs' claim under the TVPA (Count 6) also fail.

### 3. Plaintiffs Fail To Properly Plead Their State Law Causes. (Counts 1-5, 7, 9, and 11-12)

First, plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages (Counts 7, 9, and 12) are not recognized as independent claims under New York law. See Opp. at 22.  The fact that no such claims exist is not a technicality, however, and the Court therefore should

dismiss such claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41.  Second, plaintiffs "disagree[ment]" with the requirement that negligence claims (Counts 5 and 11) require an allegation of an identifiable duty, see Opp. at 19 n.7, merely and improperly seeks to litigate an issue already decided by the Court.  Third, plaintiffs wrongful death and survival claims (Counts 2 and 3) fail to allege facts sufficient to state those claims or that DMI S.A. proximately caused their injuries.  See Init. Mem. at 17.  Fourth, contrary to plaintiffs' assertion, see Opp. at 20, DMI S.A. has never "argue[d] that it cannot be liable for Trespass [] because it did not directly carry out [the September 11, 2001 attacks]."  DMI S.A. obviously did not directly carry out the attacks and even the assertions invented in plaintiffs' Opposition do not attempt so to state.  However, plaintiffs proffer no factual allegations sufficient to show that DMI S.A. gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, intended any trespass, or assisted in any "breach of duty."  See Wantanabe Realty Corp. v. City of N.Y., 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003).  Accordingly, plaintiffs' trespass claim against DMI S.A. should be dismissed.

Fifth, plaintiffs' claims for assault, battery, and intentional infliction of emotional distress ("IIED") (Counts 4 and 5) are barred by the applicable one-year statute of limitations.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 829 (citations omitted).  Plaintiffs' attempt to avoid this Court's holding by arguing that these claims are somehow "federalized" under the ATA, and that the limitations period is therefore governed by federal common law, see Opp. at 21, is without merit.  "When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim."  Corcoran v. N.Y. Power Auth., 202 F.3d 530, 542 (2d Cir. 1999) (applying New York's one year statute of limitations for battery claims because plaintiffs' federal claim based upon intentional contact without consent); Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 935 (S.D.N.Y. 2003).  In this case, that would render New York's one year statute of limitations applicable, thus barring plaintiffs' cause of action for assault, battery, and IIED.  Moreover, plaintiffs have failed to carry their burden to toll limitations because they have failed to "plead[] with *particularity*, (1) the wrongful concealment by the defendant of its actions; (2) the failure by the

plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiffs' due diligence to discover the facts." <u>Smith v. Keane</u>, 1998 WL 146225, *4-5 (S.D.N.Y. Mar. 25, 1998) (rejecting equitable tolling argument for section 1983 assault claim); <u>see</u> <u>also</u> <u>In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.</u>, 2004 WL 487222, at *3 (S.D.N.Y. Mar. 12, 2004) ("allegations of fraudulent concealment [to equitably toll the statute of limitations] are subject to the particular pleading requirements set forth in Fed. R. Civ. P. 9(b).").

### III

### **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs' Opposition pays no heed whatsoever to both this Court's Opinions and Orders, dated January 18, 2005 and September 21, 2005, and the authority cited in DMI S.A.'s Initial Memorandum. Instead, in a final attempt to avoid dismissal, plaintiffs float assertions not borne out by their actual allegations. Yet, "[e]ven with the opportunity to clarify their claims" in several Complaints and RICO Statements, plaintiffs' failure to state any of their claims against DMI S.A. remains as complete as one could imagine. See <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 832-33. There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear. Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue with prejudice. <u>See</u> <u>id</u>. at 835; Init. Mem. at 25 (citing cases).

### **CONCLUSION**

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York  
February 3, 2006

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/x/_____  
James J. McGuire (JM-5390)

30 Rockefeller Plaza, 24th Floor  
New York, New York 10112  
(212) 332-3800

*Attorneys for Defendant*  
*DMI Administrative Services S.A.*