UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) |
| | ECF Case |

This document relates to:         Federal Ins. Co., et al. v. Al Qaida, et al.
                                  (03 CV 6978)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*Dar Al-Maal Al-Islami Trust*

W02-NY:1ESC1\120008330.1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

I    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI TRUST .................................................................................................................. 2

    A.    Plaintiffs' Numerous Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8 ....................................................................... 2

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries. ................................................ 4

    C.    Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action. ........................................................................... 7

        1.    Plaintiffs Have No Standing Under RICO And, Alternatively Have Failed To Sufficiently Plead A RICO Claim. (Count 8) ........................... 7

        2.    Plaintiffs Have Failed To State An ATA Claim. (Count 10) .............................. 7

        3.    Plaintiffs Fail To Sufficiently Plead Their State Law Causes Of Action. (Counts 1-5, 7, 9, and 11-12) ................................................ 8

II    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ......................... 10

CONCLUSION ................................................................................................................................ 10

Defendant Dar Al-Maal Al-Islami Trust ("DMI Trust") respectfully submits this Reply Memorandum in support of its motion to dismiss the *Federal Insurance* Complaint against it, dated September 23, 2005 (Docket No. 1402). As the record reflects, the motion is meritorious and should be granted in its entirety.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion and as DMI Trust's Initial Memorandum made clear, "[t]he major thrust of DMI [Trust]'s argument" is *not* "that DMI [Trust] cannot be held liable because DMI [Trust] did not, itself, carry out the September 11 attacks."[1] See Plaintiffs' Opposition (Docket No. 1557) ("Opposition" or "Opp.") at 2. The key point is that the *Federal Insurance* plaintiffs, like all others, have failed to proffer a single factual allegation linking DMI Trust to a global terrorist conspiracy and making it liable for mass murder. See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1403) ("Initial Memorandum" or "Init. Mem.") (Introduction).[2]

Plaintiffs here largely ignore that argument and instead endeavor to recast their allegations into something other than what is actually in their pleadings and weave a thin tissue of innuendo that assumes, rather than explains, just how DMI Trust caused their injuries. Plaintiffs also blithely ignore this Court's holdings, in its January 18, 2005 and September 21, 2005 Orders, and the authority set out by DMI Trust in its Initial Memorandum. Plaintiffs pay no heed to the Court's holdings that:

---

[1] Despite DMI Trust's repeated admonitions, see, e.g., Init. Mem. at 2 n.2, plaintiffs in their Opposition continue to make various assertions regarding "DMI," without indicating which allegations are meant to pertain to DMI Trust and which are intended to pertain to DMI Trust's indirect subsidiary, DMI Administrative Services S.A. ("DMI S.A."). As the undersigned has continually explained to plaintiffs' counsel, DMI Trust and DMI S.A. are separate companies and are of course separate named defendants. Plaintiffs' allegations, and now their statements in their Opposition, regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone. See Init. Mem. at 2 n.2 (citing cases).

[2] DMI Trust moved to dismiss the *Federal Insurance* plaintiffs' First Amended Complaint and Amended RICO Statement (Docket No. 949), filed on May 26, 2005. However, on September 30, 2005, in contravention of the Court's direct charge that "plaintiffs shall file an amended complaint that includes all amendments made prior to that date," see CMO #2 ¶ 13, the *Federal Insurance* plaintiffs filed a so-called "First Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Paragraph 13 of [CMO #2]" ("FAC") simply attaching various RICO Statements they deemed consolidated into their FAC (and adding no new allegations). In light of the *Federal Insurance* plaintiffs' clear disregard for the Court's Orders, their September 30, 2005 FAC should be struck.

- Conclusory allegations are insufficient to state a claim.  Compare In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 827, 832-33, 835, 836 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") and In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 564, 570-71 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II") with Opp. at 1, 10-12, 17-21;

- Plaintiffs must plead some facts -- not simply put forth conclusory allegations -- to support an inference that a defendant knowingly provided assistance or encouragement to a wrongdoer.  Compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 801, 835 and In re Sept. 11 Attacks II, 392 F. Supp. 2d at 568 with Opp. at 1, 10-14, 17-21.

- The provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability.  Compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 830-31, 832-33, 835 with Opp. at 1, 11-15, 17-18.

In both in their pleadings and now their Opposition, the *Federal Insurance* plaintiffs offer *nothing* to support the grave accusation that DMI Trust had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading might be remedied by an opportunity to replead.  Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

# ARGUMENT

## I

## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI TRUST

**A.  Plaintiffs' Numerous Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.**

Plaintiffs do not deny that the FAC improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI Trust.[3]  See Init. Mem. at 2 n.2, 4-6, 6 n.3 (citing cases).  Instead, plaintiffs contend that Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002), and Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs'

---

[3] Plaintiffs' failure to respond to a defense raised by a defendant in a dispositive motion, concedes such defense.  See Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

immense and serious claims against DMI Trust.  See Opp. 7-11.  As this Court recently stated, however, "[w]hile Swierkiewicz made clear that pleading a *McDonnell Douglas* prima facie case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."  In re Sept. 11 Attacks II, 392 F. Supp. 2d at 564, citing Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270-71 (11th Cir. 2004).  Moreover, in Phelps, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury.  Phelps, 308 F.3d at 187 & n.6.  Similarly, Pelman is inapposite because the Court there held only that plaintiffs did not have to plead facts to show their own contributory negligence.  See Pelman, 396 F.3d at 511-12.  Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI Trust committed any wrongful acts or that it proximately caused plaintiffs' injuries.

Plaintiffs' reliance on Twombly also is misplaced; the Twombly Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred.  See Twombly, 425 F.3d at 114-15.  Plaintiffs here, however, allege neither any analogue to price-fixing "parallel conduct" by DMI Trust and any other defendant, nor any specific facts, such as communications of assent, showing that DMI Trust participated in any conspiracy.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805 (plaintiffs must make *prima facie* showing of conspiracy and allege specific facts warranting inference defendant member of conspiracy).  Swierkiewicz, Pelman, Phelps, and Twombly also do not change the Second Circuit's requirement that a plaintiff plead sufficient facts to make out each element of a claim against a defendant.  See e.g., Gmurzynska v. Hutton, 355 F.3d 206, 210-11 (2d Cir. 2004).

In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide any allegations of fact showing when, where, why, or how *DMI Trust* supposedly provided *any*

support to al Qaeda, knowingly or unknowingly.[4] Simply put, plaintiffs' numerous conclusory allegations -- upon which plaintiffs explicitly continue to rely in their Opposition, see, e.g., Opp. at 3, 11-12, even after this Court's clear and repeated rejection of such allegations -- fail to provide DMI Trust with meaningful notice of the factual basis of the claims against it. Plaintiffs' claims therefore must be dismissed in their entirety.

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[5] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801, 805-06, 825-26.

Plaintiffs' assertion of concerted action by DMI Trust satisfies none of these elements, whether invoked for purposes of jurisdiction, proximate causation, or otherwise to state a claim. See Opp. at 11-15. Instead, they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional

---

[4] For example, plaintiffs again rely upon the conclusory allegation that "DMI [Trust]'s misconduct includes laundering money for al Qaida," see Opp. at 10, simply ignoring the authority cited by DMI Trust establishing that such a conclusory and unsupported allegation of "money laundering" is insufficient. See Init. Mem. at 8 n.6. Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI Trust are utterly irrelevant. See Init. Mem. at 9 n.7.

[5] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." See Pittman, 149 F.3d at 122 (citations omitted). As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI Trust. See Init. Mem. at 10-13.

financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI Trust]," see Opp. at 13; see also Opp. at 3 (relying upon *Federal Insurance*'s conclusory allegations in asserting that "plaintiffs allege that DMI [Trust] *conspired* with bin Laden and *knowingly* laundered money and provided financial services for al Qaeda"). Clearly, as the Court has repeatedly and unequivocally held, these conclusory allegations are inadequate to invoke jurisdiction or to state a claim.

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition half-heartedly attempts to put forth "more specific allegations of causation." See Opp. at 12. Plaintiffs' Opposition asserts that "that DMI [Trust], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank and that Al Shamal [supported al Qaeda in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [Trust] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14. However, *no such allegations* appear among the actual allegations of the FAC and RICO Statement.

For example, as to DMI Trust's putative support for terrorist training camps, plaintiffs allege only that al Qaeda members maintained accounts at the Sudanese banks Faisal Islamic Bank (Sudan) ("FIB-Sudan"), Tadamon Islamic Bank ("TIB"), and al Shamal Bank, see FAC ¶¶ 315, 329, 337 and RICO Stmt., Exh. A at 11-13, and that DMI Trust has been an indirect investor in those Sudanese entities. See RICO Stmt., Exh. A at 9, 12. Plaintiffs have alleged *no facts whatsoever* indicating that DMI Trust somehow knowingly supported terrorist training camps, in the Sudan or Afghanistan or anywhere else; no facts showing that DMI Trust (or any of its affiliates) "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI Trust has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI Trust ever knowingly provided banking services to anyone associated with

al Qaeda.[6]  See Init. Mem. at 6-10, 13-15, 22-23.  Thus, plaintiffs' attempt to reinvent their allegations, by their Opposition brief, into something other than what they have in fact pleaded should be rejected out of hand.[7]  Similarly, the Court should note the numerous occasions on which plaintiffs assume, rather than explain, DMI Trust's supposed wrongdoing.  See, e.g., Opp. at 14 ("This was not a summer camp that DMI was helping bin Laden set up"), 20 (discussing IIED claim).

In sum, and as the Initial Memorandum detailed, the overwhelming majority of the *Federal Insurance* plaintiffs' allegations regarding DMI Trust are wholly conclusory.  Even with their attempt to recast their allegations, plaintiffs' Opposition simply does not remedy their failure to allege facts showing that DMI Trust did anything more than provide routine banking services, and make innocuous charitable donations, that according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init. Mem. at 6-10, 13-15; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  Plaintiffs also have entirely failed to allege facts sufficient to show that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See Init. Mem. at 10-13.  Thus, plaintiffs have neither alleged concerted action nor proximate causation as to any of the pending claims.  See, e.g., Dura Pharm., Inc. v. Broudo, -- U.S. --, 125 S.Ct. 1627, 1634 (2005) (discussing Swierkiewicz and remanding for dismissal for failure to elucidate plaintiff's theory of causation).

---

[6] Plaintiffs also have alleged no facts showing that DMI Trust could be held liable for the supposed acts of the Sudanese banks.  Plaintiffs allege, at best, that DMI Trust is a "major investor" of Al Shamal, is "associated" with FIB-Sudan, and that FIB-Sudan is a shareholder of TIB.  See RICO Stmt., Exh. A at 9, 12.  Such conclusory and unsupported allegations wholly fail to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See Init. Mem. at 2 n.2.

[7] It is improper to attempt to amend a Complaint through an opposition brief.  See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

### C.     Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action.

#### 1.     Plaintiffs Have No Standing Under RICO And, Alternatively Have Failed To Sufficiently Plead A RICO Claim. (Count 8)

The *Federal Insurance* plaintiffs do not dispute that because they assert RICO claims as third-party subrogees of their insureds' and seek pecuniary losses injury arising from personal injuries, see FAC ¶¶ 532-88, those claims must be dismissed for lack of standing. See Init. Mem. at 19-20.

Furthermore, although plaintiffs purport to assert claims under Section 1962(a), see Count 8, plaintiffs' Opposition effectively concedes that such claim has no merit. As to their remaining RICO claims under Sections 1962(c) and (d), plaintiffs' conclusory, boilerplate RICO allegations regarding DMI Trust do not state *any* of the requisite elements of a civil RICO claim against DMI Trust, and those claims must be dismissed. See Init. Mem. at 20-23 (citing cases). In addition, although plaintiffs admit that "a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise," and that "[t]o sustain a claim under § 1962(d), the plaintiff must allege that the defendant was a 'central figure' in the underlying scheme," see Opp. at 16-17, plaintiffs do not allege that DMI Trust was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise. See Init. Mem. at 20-23. Rather than defending the sufficiency of their conclusory RICO allegations regarding DMI Trust, plaintiffs merely re-state their well-worn boilerplate alegations. Compare Opp. 17-19 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language . . . is inadequate."), and In re Sept. 11 Attacks II, 392 F. Supp. 2d at 571-72. For all of these reasons, plaintiffs' RICO claims must be dismissed.

#### 2.     Plaintiffs Have Failed To State An ATA Claim. (Count 10)

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 827, 832-33, 835, 836 with Opp. at 11-12, and (ii) the provision of routine banking

services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. Compare id. at 830-31, 832-33, 835 with Opp. at 11-14. Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their FAC, such as the non-existent allegation that DMI Trust provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere." Cf. Opp. at 13. In short, plaintiffs simply make no allegation of fact showing that DMI Trust engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."). Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [any recipients of donations or banking services] were supporting terrorism." See id. at 832-33. Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed. For much the same reasons, plaintiffs' claim under the TVPA (Count 6) also fail.

### 3. Plaintiffs Fail To Sufficiently Plead Their State Law Causes Of Action. (Counts 1-5, 7, 9, and 11-12)

First, plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages (Counts 7, 9, and 12) are not recognized as independent claims under New York law. See Opp. at 22. The fact that no such claims exist is not a technicality, however, and the Court therefore should dismiss such claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Second, plaintiffs "disagree[ment]" with the requirement that negligence claims (Counts 5 and 11) require an allegation of an identifiable duty merely and improperly seeks to litigate an issue already decided by the Court. See Opp. at 19 n.7. Moreover, even if some duty could be alleged, plaintiffs fail to allege that DMI Trust breached any such duty or proximately caused their injuries. See Init. Mem. at 18. Third, plaintiffs wrongful death and survival claims (Counts 2 and 3) fail to allege facts sufficient to satisfy the elements of the claims or that DMI Trust proximately caused their injuries. See Init. Mem. at 17. Fourth, contrary to plaintiffs'

assertion, see Opp. at 20, DMI Trust has never "argue[d] that it cannot be liable for Trespass [] because it did not directly carry out [the September 11, 2001 attacks]." DMI Trust obviously did not directly carry out the attacks and even the assertions invented in plaintiffs' Opposition do not attempt so to state. However, plaintiffs proffer no factual allegations sufficient to show that DMI Trust gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, intended any trespass, assisted in any "breach of duty," or allegations sufficient to plead proximate causation. See Wantanabe Realty Corp. v. City of N.Y., 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003) (setting forth the pleading requirements for an aiding and abetting a trespass claim). Accordingly, plaintiffs' trespass claim against DMI Trust should be dismissed.

Fifth, plaintiffs' claims for assault, battery, and intentional infliction of emotional distress ("IIED") (Counts 4 and 5) are barred by the applicable one-year statute of limitations. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 829 (citations omitted). Plaintiffs' attempt to avoid this Court's holding by arguing that these claims are somehow "federalized" under the ATA, and thereby its limitations period is governed by federal common law, see Opp. at 21, is without merit. "When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 542 (2d Cir. 1999) (applying New York's one year statute of limitations for battery claims; plaintiffs' federal claim based upon intentional contact without consent); Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 935 (S.D.N.Y. 2003) ("[A] federal claim where there is no relevant federal statute of limitations, the controlling period is generally the one provided by the most applicable state law cause of action in the forum state."). In this case, that would render New York's one year statute of limitations applicable, thus barring plaintiffs' cause of action for assault, battery, and IIED. Second, plaintiffs have failed to carry their burden to toll limitations because they have failed to "plead[] with *particularity*, (1) the wrongful concealment by the defendant of its actions; (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiffs' due diligence to discover the facts." Smith v. Keane, 1998 WL 146225, *4-5 (S.D.N.Y. Mar. 25, 1998) (rejecting

equitable tolling argument for section 1983 assault claim); see also In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig., 2004 WL 487222, at *3 (S.D.N.Y. Mar. 12, 2004).

## II

## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' Opposition pays no heed whatsoever to this Court's Opinions and Orders, dated January 18, 2005 and September 21, 2005, and the authority cited in DMI Trust's Initial Memorandum. Instead, in a final attempt to avoid dismissal, plaintiffs float assertions not borne out by their actual allegations. Yet, "[e]ven with the opportunity to clarify their claims" in several Complaints and RICO Statements, plaintiffs' failure to state any of their claims against DMI Trust remains as complete as one could imagine. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33. There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear. Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice. See id. at 835; Init. Mem. at 24-25 (citing cases).

## CONCLUSION

For the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
      February 3, 2006

Respectfully submitted,
SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _____/x/_____
   James J. McGuire (JM-5390)

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*Dar Al-Maal Al-Islami Trust*