**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC)
*Burnett v. Al Baraka Investment & Development Corp.*, 03-CV-5738 (RCC)
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970 (RCC)
*New York Marine & General Ins. Co. v. Al Qaida*, 04-CV-6105 (RCC)
*World Trade Ctr. Props. L.L.C. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280 (RCC)


**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION TO DISMISS OF JAMAL BARZINJI**

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  PLAINTIFFS STATE CLAIMS AGAINST BARZINJI
UPON WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Applicable Pleading Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.  Fed.R.Civ.P. 12(b)(6) & Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . 1

        2.  Anti-Terrorism Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        3.  Wrongful Death, Survival, & Common Law Claims . . . . . . . . . 4

        4.  Alien Tort Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  Plaintiffs State Claims Against Jamal Barzinji
Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.  Plaintiffs State An Anti-Terrorism Act Claim
Against Jamal Barzinji . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.  Plaintiffs State Wrongful Death, Survival, & Common
Law Claims Against Jamal Barzinji . . . . . . . . . . . . . . . . . . . . . 9

        3.  Plaintiffs Who Are Aliens State A Claim Against
Jamal Barzinji Under The Alien Tort Claims Act . . . . . . . . . . 10

II.  THE AMENDED PLEADINGS ARE IN COMPLIANCE
WITH THIS COURT'S CASE MANAGEMENT ORDER . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

A.  *Terzi Products v. Theatrical Protective Union, Local No. One*,
2 F.Supp.2d 485 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Allen v. New World Coffee, Inc.*, 2001 WL 293683 (S.D.N.Y. 2001) . . . . . . . . . . . . . . 11

*Boim v. Quranic Lit. Institute*, 291 F.3d 1000 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . 2

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Dempsey v. Sanders*, 132 F.Supp.2d 222 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . 11

*Foman v. Davis*, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kadic v. Karadazic,* 70 F.3d 232 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moses v. Martin*, 360 F.Supp.2d 533 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Polite v. Casella*, 901 F.Supp. 90 (N.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d
289, 311 (S.D.N.Y. 2003)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d
765 (S.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Terrorist Attacks on September 11, 2001*, 392, F.Supp.2d 539
(S.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Usery v. Marquette Cement Manufacturing Co.*, 568 F.2d 902 (2d Cir. 1977) . . . . . . . 12

*Woodford v. Community Acton Agency of Greene County, Inc.*,
239 F.3d (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL STATUTES

Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

Fed.R.Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

The Alien Tort Claims Act, 28 U.S.C. § 1350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## INTRODUCTION

Jamal Barzinji's ("Barzinji") Motion to Dismiss the claims against him by the *Ashton,*

*Burnett, Continental, New York Marine,* and *World Trade Center Property* plaintiffs is a

transparent attempt to obtain review of this Court's September 21, 2005 decision in which the

*Federal* plaintiffs' complaint against Barzinji was upheld.  *In re Terrorist Attacks on September*

*11, 2001,*392 F. Supp.2d 539 (S.D.N.Y. 2005)(*In re Terrorist Attacks II"*).  In that decision, this

Court held that the *Federal* plaintiffs' allegations gave Barzinji "sufficient notice of the claims

against him regarding his alleged provision of material support in the form of financial

transactions to al Qaeda." *Id.* at 372.  The allegations in these complaints is similar and in the case

of the *New York Marine* plaintiffs, identical, to the allegations against Barzinji in the *Federal*

action. Furthermore, the *Continental* plaintiffs expressly incorporate the other consolidated

pleadings pursuant to Fed. R. Civ. P. 10(c) in paragraph 600 of its complaint.  Based on this

Court's decision in *In re Terrorist Attacks II,* Barzinji's motion to dismiss should be denied.

## ARGUMENT

I.   **PLAINTIFFS STATE CLAIMS AGAINST BARZINJI**
     **UPON WHICH RELIEF CAN BE GRANTED**

   A.   **Applicable Pleading Standards**

      1.   **Fed.R.Civ.P. 12(b)(6) & Rule 8(a)(2)**

In reviewing a Rule 12(b)(6) motion for failure to state a claim, "the Court must accept as

true the factual allegations in the Complaint, and draw all reasonable inferences in favor of the

plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).  Such a motion must be

denied unless, after viewing plaintiffs' allegations in this favorable light, "it appears beyond

doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle

-1-

[them] to relief." *Id.*; *see also*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.")

A Rule 12(b)(6) motion is analyzed in the context of the liberal pleading requirements of Fed.R.Civ. P. 8(a)(2). *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs are not required to prove their case at the pleading stage. *Woodford v. Community Acton Agency of Greene County, Inc.*, 239 F.3d (2d Cir. 2001) ('[t]he pleading of evidence should be avoided"). Furthermore, plaintiffs are not required to set forth every wrongful act of Dr. Barzinji at this stage in the proceedings.

## 2.    Anti-Terrorism Act Claim

Jamal Barzinji is liable under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*, because he provided material support to al Qaeda with knowledge of its terrorist agenda to attack America. *Boim v. Quranic Lit. Inst.*, 291 F.3d 1000, 1014-16 (7th Cir. 2002).[1]

---

[1]    *Boim* explained that ATA sections 2339B ["knowingly provid[ing] material support or resources to foreign terrorist organizations"] and 2339A ["material support or resources" includes "currency"] "elucidate" and "amplify what Congress meant by 'international terrorism'" subject to civil liability under ATA section 2333:

> If the plaintiffs could show that [defendants] violated either section 2339A or section 2339B, that conduct would certainly be sufficient to meet the definition of 'international terrorism' under section 2333. . . . The Boims may thus show that [defendants] committed an act of international terrorism subject to civil liability under section 2333 by proving that [defendants] provided material support to terrorist organizations.

*Boim*, 291 F.3d at 1015-16.

Like *Boim*, this Court holds that under the ATA, "Defendants may be responsible for the September 11 attacks if they knowingly and intentionally provided material support to al Qaeda." *In re Terrorist Attacks II*, 392 F. Supp.2d at 564 (citing *In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005)("*In re Terrorist Attacks I*")). Providing "material support" under the ATA includes providing money or financial services. *In re Terrorist Attacks I*, 349 F. Supp.2d at 825 (citing ATA, 18 U.S.C. § 2339A).

To state an ATA claim, this Court "require[s] that Plaintiffs plead that Defendant knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'" *In re Terrorist Attacks II*, 392 F. Supp.2d at 564 (citing *Boim*, 291 F.3d at 1023-24).

In evaluating similar claims relating to this very defendant, this Court held that an ATA claim was properly stated against Barzinji where it was alleged that Barzinji:  (1) "controlled several bank accounts"; (2) "allegedly transmitted money internationally for terrorist purposes"; and (3) "allegedly made these transfers to support al Qaeda." *In re Terrorist Attacks II*, 392 F. Supp.2d at 572.  Denying Barzinji's Rule 12(b)(6) motion, the Court found that these allegations gave Barzinji "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *Id.*  That was enough to state an ATA claim for the *Federated* plaintiffs and is likewise sufficient here.

Regarding causation, this Court has ruled that "[i]n light of al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda." *In re Terrorist Attacks I,* 349 F. Supp. 2d at 826.

In sum, plaintiffs state an ATA claim if it may be reasonably inferred from the Complaint's allegations that defendant intentionally provided money or financial services to al Qaeda, knowing that al Qaeda was at war with America.  *In re Terrorist Attacks II*, 392 F. Supp.2d at 564; *In re Terrorist Attacks I*, 349 F. Supp.2d at 826.   Such is the case here.

### 3.       Wrongful Death, Survival, & Common Law Claims

The Court has ruled that "[i]f Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival . . . and the *Ashton* and *Burnett* plaintiffs will have stated claims for intentional infliction of emotional distress."  *In re Terrorist Attacks II*, 392 F. Supp.2d at 566; *see also In re Terrorist Attacks I*, 349 F. Supp.2d at 829-830 (if *Ashton* plaintiffs' "allegations sufficiently allege that Defendants supported, aided and abetted, or conspired with the September 11 terrorists, they will have also stated claims for wrongful death and survival [and] they will have also stated a claim for intentional infliction of emotional distress.")

### 4.       Alien Tort Claims Act

The Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"), "provides a basis for relief when an alien sues for a tort committed in violation of the law of nations."  *In re Terrorist Attacks II*, 392 F. Supp.2d at 565 (citing *Kadic v. Karadazic*, 70 F.3d 232, 238 (2d Cir. 1985). Aircraft hijacking violates international law, and this Court permits ATCA actions "premised on a theory of aiding and abetting and conspiracy."  *In re Terrorist Attacks II*, 392 F. Supp.2d at 565 (citing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 311 (S.D.N.Y. 2003)).  Hence, the alien-plaintiffs may state concerted-action claims for relief under

the ATCA by alleging that defendants knowingly and intentionally provided financial support to al Qaeda, bringing death and destruction through hijacked aircraft on September 11th. *In re Terrorist Attacks II*, 392 F. Supp.2d at 566 ("If Plaintiffs state a claim for relief under the ATA . . . [p]laintiffs who are aliens will have also stated a claim for relief under the ATCA").

### B.   Plaintiffs State Claims Against Jamal Barzinji Upon Which Relief Can Be Granted

#### 1.   Plaintiffs State An Anti-Terrorism Act Claim Against Jamal Barzinji

Plaintiffs provide Jamal Barzinji adequate notice of the ATA claim against him regarding his provision of financial support to al Qaeda, knowing that al Qaeda intended to commit international acts of terrorism against the United States. Barzinji was not only an active participant in the SAAR Network terrorist activities, but was also directly involved in the transfer of funds from Mena Estates, a SAAR Network entity, to Yousef Nada, a known terrorist financier, and a specifically Designated Global Terrorist. Barzinji was a long-time associate of Nada's, having worked for him prior to coming to the United States to secretly found the SAAR Foundation and Network. *Ashton*, 6AC ¶ 254; *Burnett,* 3AC ¶265; *WTCP,* ¶439; *Continental,* ¶378. [2]

---

[2]      Documents supporting and evidencing this relationship have been provided to the Court in support of other motions. *See,* Declaration of Justin B. Kaplan in Support of Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Sulaiman Al Rajhi ("Kaplan Dec."), Exhibit 1, December 6, 2000 Interview with Youssef Nada ("Nada Interview"), by David Kane, et al.

More specifically, the plaintiffs allege that "[i]n February 2001, Mena Estates,[3] a SAAR Network entity, loaned $500,000 to Yousef Nada" and "[a]t that time, there were only three people affiliated with Mena Estates," one of which, and the president of the organization, was Jamal Barzinji. *Ashton*, 6AC ¶ 256. Plaintiffs further allege that "Yousef Nada [is] a Specially Designated Global Terrorist, who, according to the United States Department of the Treasury, provided financial assistance to Osama Bin Laden and al Qaeda, prior to and even after September 11, 2001." *Ashton*, 6AC ¶ 253. Plaintiffs further allege that a "document which describes the [$500,000] loan and believed by US Customs to be written by Nada, was recovered by US Officials in a March 2002 raid of the SAAR network premises. The document begins by saying 'The eggs are in several baskets' and later says; 'to avoid crimes we have to perfect information (terrorism, money-laundering).'" *Ashton*, 6AC ¶ 256. It is reasonable to infer from these allegations that Barzinji knowingly and intentionally provided al Qaeda financial support through the $500,000 transfer by Mena Estates, an organization Barzinji controlled, to a well known terrorist – Nada, with whom he had a long-running business relationship.

Plaintiffs further allege that this February, 2001, $500,000 transfer to al Qaeda financier Nada occurred long after al Qaeda's well-publicized declarations of war against the United States. *See Ashton,* 6AC ¶ 119 ("In 1992 and 1993 . . . Bin Laden issued a fatwa urging Muslims to attack the U.S. . . ."); *Ashton,* 6AC ¶ 125 at p. 136 ("On August 23, 1996, a strengthened Bin Laden issued a fatwa declaring a jihad against Americans. . . ."); *Ashton*, 6AC ¶ 125 at p. 137 ("On February 22, 1998, Bin Laden . . . issued a fatwa published in the Arabic newspaper Al-

---

[3] Barzinji argues that Mena Estates is "not even a defendant" in this litigation. Whether or not Mena Estates has been sued here is irrelevant. First, plaintiffs have not necessarily sued every single related terrorist entity and second, as the investigation of this case continues, additional terrorist entities, like Mena Estates will be identified.

Quds stating: 'The ruling to kill the Americans and their allies – civilians and military – is an individual duty for every Muslim who can do it in any country in which it is possible to do it. . . .'"); *see also In re Terrorist Attacks I,* 349 F. Supp. 2d at 826 ("In light of al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda."). Thus, it is reasonable to infer from these allegations that Barzinji knew of al Qaeda's intentions to harm American interests at the time the $500,000 transfer was made. Barginji's argument that any business relationship between Nada and him ended "nearly 25 years ago" is simply untrue. Likewise, that federal authorities did not designate him as a terrorist until after September 11, 2001 is irrelevant. The timing of the designation by federal authorities is not indicative of when that person began to engage in terrorist activities.

Plaintiffs further allege that Barzinji is one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR network," *Ashton*, 6AC ¶ 269, *Burnett*, 3AC ¶267, *WTCP*, ¶441 and that the "SAAR network and the more than one-hundred businesses and individuals that comprise it are fronts for, and a sponsor of, al Qaeda and international terror." *Ashton*, 6AC ¶ 267, *Burnett,* 3AC ¶ 265. Plaintiffs allege that "Barzinji has signatory rights over at least 18 SAAR Network bank accounts ..." *Ashton*, 6AC ¶ 257, and that "[b]y the early 1990s . . . Barzinji [and other SAAR Network executives] established over 100 entities including non-profits, charities, and business" that comprise the SAAR network, *Ashton*, 6AC ¶ 251, and that "[f]rom the outset, this SAAR Network was intended to be a source of funds to support terror as well as provide the mechanism by which the funding trail could be laundered and obscured." *Ashton*, 6AC ¶ 251. Plaintiffs further allege that "[o]n March 20-21, 2002, the offices of many

SAAR network organizations, along with the residences of their top executives, were raided by the Untied States Government's joint terrorism taskforce. . .", *Ashton*, 6AC ¶ 265.  Barzinji's residence was one of those searched by federal authorities.

Plaintiffs further allege that "Barzinji recommended two of their SAAR Network fellow officers to Yousef Nada as prospective officers of Bank Al Taqwa [which] is designated a Specially Designated Global Terrorist, for financially supporting al Qaeda and according to the US Treasury, 'appeared to be providing a clandestine line of credit for a close associate of Usama Bin Laden.'" *Ashton*, 6AC ¶ 255.

In addition, the plaintiffs allege that Barzinji "is personally acquainted with and maintained relationships with . . . Ahmed Idriss Nasreddin, a Specially Designated Global Terrorist [who . . .] was also a major shareholder and officer of the Specially Designated Global Terrorist Bank Al Taqwa", *Ashton*, 6AC ¶¶ 258, 260.[4] This is the same terrorist bank to which Barzinji  recommended and offered personnel from the ranks of his SAAR Network.  *Ashton*, 6AC ¶ 255.  *See* 18 U.S.C. § 2339A(b) (under ATA, the term "material support" includes "**personnel** (1 or more individuals who may be or include oneself)").

Defendant attempts to diminish Barzinji's role with regard to his activities with the World Assembly of Muslim Youth ("WAMY") and applies an improper legal standard to that involvement.[5]  Plaintiffs allege that Barzinji was not only a director of WAMY, *New York Marine,* ¶454, Continental, ¶376, but that he was a founding member of WAMY in Saudi

---

[4]    For example, Barzinji telephoned Nasdreddin about the loan to Nada.  *See*, Kaplan Dec., Exhibit 1, Nada Interview.

[5]    Plaintiffs' allegations against WAMY are more fully set forth in the January 23, 2006 Opposition to WAMY's Motion to Dismiss.

Arabia.  *Ashton*, ¶264. Barzinji's involvement with WAMY went beyond activities in its Virginia office. Furthermore, it is not necessary that plaintiffs' allege that Barzinji "participated in some action on behalf of [WAMY] for which he could be held liable for the September 11, 2001 attacks." Such a direct link to the September 11th attacks is not necessary.  Rather, plaintiffs must only provide a reasonable inference that defendant knowingly provided material support to al Qaeda.  *In re Terrorist Attacks I* at 564.

It is reasonable to infer from these allegations that in addition to his other terror related activities, Barzinji knowingly and intentionally provided al Qaeda financial support through his activities with the SAAR Network and Nasreddin.  *See In re Terrorist Attacks II*, 392 F. Supp.2d at 572. (finding allegations that SAAR Network executive Barzinji (1) "controlled several bank accounts"; (2) "allegedly transmitted money internationally for terrorist purposes", and (3) "allegedly made these transfers to support al Qaeda" gave "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda.").  As this Court has noted, "[i]n light of al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda."  *In re Terrorist Attacks I,* 349 F. Supp.2d at 826.  Hence, plaintiffs' ATA claim against Barzinji is well stated, and his Rule 12(b)(6) motion must fail.

### 2.     Plaintiffs State Wrongful Death, Survival, & Common Law Claims Against Jamal Barzinji

As explained above, the Court has ruled that "[i]f Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival . . . and the *Ashton* and *Burnett* plaintiffs will have stated claims for intentional infliction of emotional distress." *In re Terrorist Attacks II*, 392 F. Supp.2d at 566. Here, since plaintiffs' allegations give rise to the reasonable inference that Barzinji knowingly and intentionally supported al Qaeda for a decade leading up to the September 11 attacks, the *Ashton* and *Burnett* plaintiffs have stated claims for wrongful death, survival, and intentional infliction of emotion distress.

### 3. Plaintiffs Who Are Aliens State A Claim Against Jamal Barzinji Under The Alien Tort Claims Act

As explained above, the Court has ruled that "[i]f Plaintiffs state a claim for relief under the ATA . . . [p]laintiffs who are aliens will have also stated a claim for relief under the ATCA". *In re Terrorist Attacks II*, 392 F. Supp.2d at 566. Here, since the allegations give rise to the reasonable inference that Barzinji knowingly and intentionally supported al Qaeda for a decade leading up to the September 11 attacks, plaintiffs who are aliens state a claim for relief against Barzinji under the ATCA.

## II. THE AMENDED PLEADINGS ARE IN COMPLIANCE WITH THIS COURT'S CASE MANAGEMENT ORDER

Defendants argue simultaneously that plaintiffs have failed to apprise them of the nature of the allegations against them and also that the pleadings containing the allegations should be stricken. Plaintiffs' amended pleadings, which gather into one place all of the allegations against all of the defendants in each action comply with both the letter and spirit of this Court's second

Case Management Order ("CMO #2").  More important, defendants are not prejudiced by any technical non-compliance and indeed, they do not even contend otherwise.

As the Court will remember, Case Management Order #1 permitted plaintiffs to add defendants without pleading specific allegations against those defendants; the order then permitted any defendant as to whom the complaint contains no allegations to seek a "more definite statement," specifying the nature of the claims asserted. CMO #2 then expanded on this procedure, providing:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint.

CMO #2, ¶ 13. The order then required plaintiffs to gather all such more definite statements into a single document and to "file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise." *Id*.  The order further provided for the filing of RICO Statements in accordance with this Court's Individual Practices. As a result, the pleadings against each defendant were scattered over various documents filed on different days, in complaints, more definite statements, and RICO Statements.[6]  Plaintiffs' amended pleadings, filed on or about September 30, 2005, incorporated all of these various filings into consolidated documents.

---

[6]     The RICO Statements are without a doubt part of the pleadings. *See, McLaughlin v. Anderson*, 962 F. 2d 187, 195 (2d Cir. 1992); *Moses v. Martin*, 360 F. Supp. 2d 533,539 n. 22 (S.D.N.Y. 2004); *Allen v. New World Coffee, Inc.*, 2001 WL 293683, * 2 n. 3 (S.D.N.Y. March 27, 2001); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); *A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485,509, n. 16 (S.D.N.Y. 1998).

Although the plaintiffs in the various cases took different approaches to the requirements of CMO #2, all of the amended pleadings complied with the Order and none should be stricken. Plaintiffs in the *Burnett* and *World Trade Center Properties* cases each filed a "Notice of Consolidated Pleading" incorporating by reference all of the previously-filed amendments to their respective complaints. Each such document "includes all amendment made prior to" the requisite date, just as required by the Court.  More importantly, the "Notice of Consolidated Pleading" permits each defendant to find in a single place all of plaintiffs' allegations.

The approach taken by the plaintiffs in *New York Marine* and *Continental*  achieves precisely the same result. Defendants seem to object that these plaintiffs did not re-type the material they incorporated by reference and attached (some of which was originally filed by plaintiffs in other cases in these consolidated proceedings), but provide no basis for such an objection.  Defendants seem in particular bothered by variations in the fonts used by the *Continental* plaintiffs, although precisely what prejudice they have suffered from this,  they do not specify. Nonetheless, as a sanction for this unspecified offense (and for what defendants perceive to be defects in all of the amended pleadings), defendants ask this Court (a) to disregard all of the allegations contained in the amended pleadings and/or (b) to dismiss plaintiffs' claims outright.

As the Second Circuit has recognized, the Federal Rules of Civil Procedure reject this gamesmanship approach to litigation; rather, "the purpose of pleading is to facilitate a proper decision on the merits." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902,906 (2d Cir. 1977), quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil

-12-

Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities");

*Polite v. Casella*, 901 F.Supp. 90, 94 (N.D.N.Y. 1995) ("lawsuits should be determined on their

merits and according to the dictates of justice"). Changes in fonts or the method chosen to collect

and incorporate previously-filed documents provide no basis to disregard plaintiffs' allegations,

much less to dismiss their claims.

With respect to their only substantive claim, that the *Continental* plaintiffs filed their

Second Amended Complaint six days late, on October 6, 2005, instead of on September 30,

2005, defendants are simply wrong: the date- and time-stamped cover sheet of the Second

Amended Complaint shows that the document was timely filed with the Court on September 30,

2005 at 6:39 p.m.[7]  That the ECF system reflects a later date when it was added electronically

provides no basis to disregard this pleading.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny defendant's Motion to Dismiss in its

entirety.

Dated: February ____, 2006
      New York, New York

                                          Respectfully submitted,
                                            /s/
                                        James P. Kreindler, Esq. (JK7084)
                                        Justin T. Green, Esq. (JG0318)
                                        Andrew J. Maloney III, Esq. (AM8684)
                                        Kreindler & Kreindler LLP
                                        100 Park Avenue
                                        New York, NY  10017-5590
                                        Phone (212) 687-8181

---

[7]      A copy of the time-stamped complaint was provided to counsel and the Court with plaintiff's opposition to defendants Al Alwani, Ashraf, et al., filed on December 27, 2005.  *See* Bernstein Aff., Exhibits A and B.

_/s/_____

Ronald L. Motley, Esq. (RM2730)
Jodi Westbrook Flowers, Esq.
Michael Elsner, Esq. (ME8337)
Justin B. Kaplan, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Phone (843) 216-9000


_/s/_____

Paul J. Hanly, Jr., Esq. (PH5486)
Jayne Conroy, Esq. (JC8611)
Andrea Bierstein, Esq. (AB4618)
Hanly Conroy Bierstein & Sheridan LLP
112 Madison Avenue, 7th floor
New York, New York 10016
Phone (212) 784-6400


_/s/_____

Robert M. Kaplan, Esq. (RK1428)
Ferber Frost Chan & Essner, LLP
530 Fifth Avenue
New York, New York 10036
Phone: (212) 944-2200


_/s/_____

David H. Fromm, Esq. (DH-9334)
Frank J. Rubino, Jr., Esq. (FR-6202)
Kevin A. Hickman (KH-2102)
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

-14-