**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:    **Thomas E. Burnett, et al. v. Al Baraka Inv. &**
                    **Dev. Corp., et al. (03 CV 9849)**

                    **Thomas E. Burnett, et al. v. Al Baraka Inv. &**
                    **Dev. Corp., et al. (03 CV 5738)**

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST**</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*Dar Al-Maal Al-Islami Trust*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

I      PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM  AGAINST DMI TRUST....................................................................................................................2

      A.    Plaintiffs' Numerous Conclusory Allegations  Fail To Satisfy The Requirements Of Rule 8. ................................................................................2

      B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By  DMI Trust Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries. .......................................................................................4

      C.    Plaintiffs Do Not State A Claim Under Any Of Their Fourteen Causes Of Action. ...............................................................................................7

            1.    Plaintiffs Concede That Their RICO Claims Are Without Merit (Counts 11-13). .................................................................................7

            2.    Plaintiffs Have Failed To State An ATA Claim (Count 3). ..............7

            3.    Plaintiffs Fail To State Their State Law Causes Of Action (Counts 5-10, 14). .................................................................................8

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ..........................9

CONCLUSION..........................................................................................................................10

Defendant Dar Al-Maal Al-Islami Trust ("DMI Trust") respectfully submits this Reply Memorandum in further support of its motion to dismiss the *Burnett* Complaints against it, dated October 7, 2005 (Docket No. 1400).  As the record reflects, the motion is meritorious and should be granted in its entirety.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion and as DMI Trust's Initial Memorandum made clear, "[t]he major thrust of DMI [Trust]'s argument" is *not* "that DMI [Trust] cannot be held liable because DMI [Trust] did not, itself, carry out the September 11 attacks."[1]  See Plaintiffs' Opposition (Docket No. 1557) ("Opposition" or "Opp.") at 2.  The key point is that the *Burnett* plaintiffs, like all others, have failed to proffer a single factual allegation linking DMI Trust to a global terrorist conspiracy and making it liable for mass murder.  See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1401) ("Initial Memorandum" or "Init. Mem.") (Introduction).[2]

Plaintiffs here largely ignore that argument.  Instead, plaintiffs endeavor to recast their allegations into something other than what is actually contained in their pleadings, and weave a thin tissue of innuendo that assumes, rather than explains, just how DMI Trust caused their injuries.  Plaintiffs also blithely ignore this Court's holdings, in its January 18, 2005 and September 21, 2005

---

[1]  Despite DMI Trust's repeated admonitions, see, e.g., Init. Mem. at 2 n.3, plaintiffs in their Opposition persist in making various assertions regarding "DMI," without indicating which are meant to pertain to DMI Trust and which to DMI Trust's indirect subsidiary, DMI Administrative Services S.A. ("DMI S.A.").  As the undersigned has continually explained to the *Burnett* plaintiffs' counsel since March 2004, when DMI Trust's affiliate DMI Administrative Services S.A. first served the *Burnett* plaintiffs' counsel with a Rule 11 notice letter, DMI Trust and DMI S.A. are separate companies and are of course separate named defendants. Plaintiffs' allegations, and now their statements in their Opposition, regarding "DMI" are thus unintelligible as written.  The claims against DMI Trust should be dismissed on this ground alone.  See Init. Mem. at 2 n.3 (citing cases).

[2]  DMI Trust moves to dismiss the claims asserted against it in *Burnett* plaintiffs' Third Amended Complaint ("TAC"), originally filed in the District of Columbia, No. 03-CV-9849 ("*Burnett* DC"), and the substantively identical *Burnett* Complaint filed in this Court, No. 03-CV-5738 ("*Burnett* NY"), as well as the *Burnett* plaintiffs' More Definite Statement ("MDS") as to DMI Trust (Docket No. 896), filed on May 10, 2005.  On September 30, 2005, in contravention of the Court's straightforward charge that "the plaintiffs shall file an amended complaint that includes all amendments made prior to that date," see CMO #2, ¶ 13, the *Burnett* DC plaintiffs filed a "Notice of Consolidation of Pleadings" (Docket No. 1377) simply listing all of the docket entries that they deemed consolidated into their TAC (and adding no new allegations).  In light of the *Burnett* plaintiffs' disregard for the Court's Orders, their September 30, 2005 "Notice of Consolidation" should be struck.

Orders, and the authority set out by DMI Trust in its Initial Memorandum.  Specifically, plaintiffs pay no heed to the Court's holdings that:

- Conclusory allegations are insufficient to state a claim.  Compare In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 827, 832-33, 835, 836 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") and In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 564, 570-71 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II") with Opp. at 1, 10-12, 17-21;

- Plaintiffs must plead some facts -- not simply put forth conclusory allegations -- to support an inference that a defendant knowingly provided assistance or encouragement to a wrongdoer.  Compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 801, 835 and In re Sept. 11 Attacks II, 392 F. Supp. 2d at 568 with Opp. at 1, 10-14, 17-21.

- The provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability.  Compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 830-31, 832-33, 835 with Opp. at 1, 11-15, 17-18.

In both in their pleadings and now their Opposition, the *Burnett* plaintiffs offer *nothing* to support the grave accusation that DMI Trust had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading might be remedied by an opportunity to replead.  Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

## I

## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI TRUST.

### A.    Plaintiffs' Numerous Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.

Plaintiffs do not deny that the TAC improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI Trust.[3]  See Init. Mem. at 2 n.3, 4-6, 6 n.5 (citing cases).  Instead, plaintiffs contend that Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), Phelps v. Kapnolas, 308

---

[3]  Plaintiffs' failure to respond to a defense raised by a defendant in a dispositive motion concedes such defense.  See Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

F.3d 180 (2d Cir. 2002), and <u>Twombly v. Bell Atlantic Corp.</u>, 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI Trust. <u>See</u> Opp. 7-11. As this Court recently stated, however, "[w]hile <u>Swierkiewicz</u> made clear that pleading a *McDonnell Douglas* prima facie case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." <u>In re Sept. 11 Attacks II</u>, 392 F. Supp. 2d at 564, <u>citing</u> Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270-71 (11th Cir. 2004). Moreover, in <u>Phelps</u>, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury. <u>Phelps</u>, 308 F.3d at 187 & n.6. Similarly, <u>Pelman</u> is of no moment, because the Court there held only that plaintiffs did not have to plead facts to show their own contributory negligence. <u>See</u> <u>Pelman</u>, 396 F.3d at 511-12. Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI Trust committed any wrongful acts or proximately caused plaintiffs' injuries.

Plaintiffs' reliance on <u>Twombly</u> also is misplaced; the <u>Twombly</u> Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which such a conspiracy could be inferred. <u>See</u> <u>Twombly</u>, 425 F.3d at 114-15. Plaintiffs here, however, allege neither any analogue to price-fixing "parallel conduct" by DMI Trust and any other defendant, nor any specific facts, such as communications of assent, showing that DMI Trust participated in any conspiracy. <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 805 (plaintiffs must make *prima facie* showing of conspiracy and allege specific facts warranting inference defendant member of conspiracy). <u>Swierkiewicz</u>, <u>Pelman</u>, <u>Phelps</u>, and <u>Twombly</u> also do not change the Second Circuit's requirement that a plaintiff plead sufficient facts to make out each element of a claim against a defendant. <u>See</u> <u>e.g.</u>, <u>Dura Pharm., Inc. v. Broudo</u>, -- U.S. --, 125 S.Ct. 1627, 1634 (2005) (discussing <u>Swierkiewicz</u> and remanding for dismissal); <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210-11 (2d Cir. 2004).

In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide any allegations of fact showing when, where, why, or how *DMI Trust* supposedly provided *any* support to al Qaeda, knowingly or unknowingly.[4]  Simply put, plaintiffs' numerous conclusory allegations -- upon which plaintiffs explicitly continue to rely in their Opposition, see, e.g., Opp. at 3, 11-12, even after this Court's clear and repeated rejection of such allegations -- fail to provide DMI Trust with meaningful notice of the factual basis of the claims against it.  Plaintiffs' claims therefore must be dismissed in their entirety.

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI Trust Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted).  Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[5] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  See id. at 132; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801, 805-06, 825-26.

Plaintiffs' assertion of concerted action by DMI Trust satisfies none of these requirements, whether invoked for purposes of jurisdiction, proximate causation, or otherwise to state a claim.  See

---

4  For example, plaintiffs again rely upon the conclusory allegation that "DMI [Trust]'s misconduct includes laundering money for al Qaida," see Opp. at 10, simply ignoring the authority cited by DMI Trust establishing that such a conclusory and unsupported allegation of "money laundering" is insufficient.  See Init. Mem. at 8 n.8.  Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI Trust are thoroughly irrelevant.  See Init. Mem. at 9 n.9.

5  "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort."  See Pittman, 149 F.3d at 122 (citations omitted).  As shown in DMI Trust's Initial Memorandum, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI Trust.  See Init. Mem. at 10-13.

Opp. at 11-15.  Instead, they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that said attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI Trust]," see Opp. at 13; see also Opp. at 3 (relying upon conclusory allegations in asserting "plaintiffs allege that DMI [Trust] conspired with bin Laden and knowingly laundered money and provided financial services for al Qaeda").  Clearly, as the Court has repeatedly and unequivocally held, these conclusory allegations are inadequate to invoke jurisdiction or state a claim.

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition half-heartedly attempts to put forth "more specific allegations of causation."  See Opp. at 12.  Plaintiffs' Opposition asserts that "that DMI [Trust], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank and that Al Shamal [supported al Qaeda in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [Trust] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14.  However, no such allegations appear among the actual allegations of the TAC or MDS.

For example, as to DMI Trust's putative support for terrorist training camps, plaintiffs allege merely that al Qaeda "got account" at the Sudanese banks Faisal Islamic Bank (Sudan), Tadamon Islamic Bank, and al Shamal Bank, see MDS ¶¶ 71, 78, 83 and TAC ¶¶ 79, 101, and that DMI Trust has been an indirect investor of those Sudanese entities.  See MDS ¶¶ 23, 64, 84.  Plaintiffs have alleged no facts whatsoever indicating that DMI Trust somehow knowingly supported terrorist training camps, in the Sudan, Afghanistan, or anywhere else; no facts showing that DMI Trust (or any of its affiliates) "founded" or "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI Trust has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts showing that DMI Trust ever

knowingly provided banking services to anyone associated with al Qaeda.[6]  See Init. Mem. at 6-10, 13-15, 17-18.  Thus, plaintiffs' attempt to reinvent their allegations, by their Opposition brief, into something other than what they have in fact pleaded should be rejected out of hand.[7]  Similarly, the Court should note the numerous occasions on which plaintiffs assume, rather than explain, DMI Trust's supposed wrongdoing.  See, e.g., Opp. at 14 ("This was not a summer camp that DMI was helping bin Laden set up . . . "), 20 (discussing IIED claim).

Additionally, while plaintiffs' Opposition finds room for assertions that no plaintiff has actually alleged against DMI Trust, the Opposition does not deny, and therefore effectively concedes, that plaintiffs' conclusory allegations concerning DMI Trust's alleged donation of *zakat* funds to supposed al Qaeda front charities in the early 1990s are insufficent.  See MDS ¶ 108.  As DMI Trust's Initial Memorandum set forth in detail, plaintiffs' pleadings do not include any allegations of fact showing that DMI Trust provided donations to any charity with the knowledge that that charity was a terrorist 'front,' or allegations of any "facts to support an inference that [DMI Trust was] sufficiently close to the terrorists' illegal activities" to infer such knowledge.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 813-14 ("Conclusory allegations that [defendant] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice."); see also Init. Mem. at 6-7, 17 n.16.

In sum, and as the Initial Memorandum detailed, the overwhelming majority of the *Burnett* plaintiffs' allegations regarding DMI Trust are wholly conclusory.  Even with their attempt to reinvent their allegations, plaintiffs' Opposition simply does not remedy their failure to allege facts showing that DMI Trust did anything more than provide routine banking services and make

---

[6]  Plaintiffs also have alleged no facts showing that DMI Trust could be held liable for the supposed acts of the Sudanese banks.  Plaintiffs allege, at best, that DMI Trust is a "major shareholder" of Al Shamal, is "associated" with FIB-Sudan, and that its subsidiary is a main shareholder of TIB.  See MDS ¶¶ 23, 64, 84.  Such conclusory and unsupported allegations wholly fail to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See Init. Mem. at 2 n.3.

[7]  It is improper to attempt to amend a Complaint through an opposition brief.  See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

innocuous charitable donations that, according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init. Mem. at 6-10, 13-15; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  Plaintiffs also have entirely failed to allege facts sufficient to show that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See Init. Mem. at 10-13.  Thus, plaintiffs have neither alleged concerted action nor proximate causation as to any of the pending claims.  See, e.g., Dura Pharm., -- U.S. at --, 125 S.Ct. at 1634 (discussing Swierkiewicz and remanding for dismissal for failure to elucidate plaintiff's theory of causation).

**C.      Plaintiffs Do Not State A Claim Under Any Of Their Fourteen Causes Of Action.**

**1.      Plaintiffs Concede That Their RICO Claims Are Without Merit (Counts 11-13).**

"[T]he *Burnett* plaintiffs" concede that they "are not pursuing RICO claims against [DMI S.A]."  See Opp. at 15 n.5.  Accordingly, the *Burnett* plaintiffs' RICO claims must be dismissed with prejudice.

**2.      Plaintiffs Have Failed To State An ATA Claim (Count 3).**

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 827, 832-33, 835, 836 with Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability.  Compare id. at 830-31, 832-33, 835 with Opp. at 11-14.  Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' nowhere alleged in their TAC, such as the non-existent allegation that DMI Trust provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere."  Cf. Opp. at 13.  In short, plaintiffs simply make no allegation of fact showing that DMI Trust engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support

under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."). Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [any recipients of donations or banking services] were supporting terrorism." See id. at 832-33. Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed. For much the same reasons, plaintiffs' claims under the TVPA (Count 2) and ATCA (Count 4) must also fail. [8]

### 3.   Plaintiffs Fail To State Their State Law Causes Of Action (Counts 5-10, 14).

First, plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages (Counts 9, 10, and 14) are not recognized as independent claims under New York law. See Opp. at 22. The fact that no such claims exist is not a technicality, and the Court therefore should dismiss such claims with prejudice to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Second, plaintiffs "disagree[ment]" with the requirement that negligence claims (Counts 6 and 8) require an allegation of an identifiable duty merely and improperly seeks to litigate an issue already decided by the Court. See Opp. at 19 n.7. Moreover, even if some duty could be alleged, plaintiffs fail to allege that DMI Trust breached any such duty or proximately caused their injuries. See Init. Mem. at 13-15, 20. Third, plaintiffs' wrongful death and survival claims (Counts 5 and 7) fail to allege facts sufficient to satisfy the elements of the claims or that DMI Trust proximately caused their injuries. See Init. Mem. at 13-15, 19-20. Fourth, plaintiffs' assert that they have stated a claim for intentional infliction of emotional distress ("IIED") (Count 8), because "providing support to terrorist training camps is both wrongful *and* outrageous." See Opp. at 20. However, as detailed above, *no such allegation* of support for any terrorist training camp by DMI Trust appears among the actual allegations of the TAC or MDS. See supra 4-6. Therefore, plaintiffs' meager and conclusory allegations against DMI Trust do not allege any wrongful conduct, much less any allegation of extreme and outrageous conduct, or facts that could give rise to an

---

[8] Plaintiffs, for the first time and in recognition that their ATCA claim has no merit, suggest that that claim might better be framed as a nebulous cause under international law. See Opp. at 20 n.8. However, plaintiffs recently had the opportunity to and did amend their TAC without making any such change.

inference of intent or recklessness sufficient to give rise to an IIED claim. Similarly, plaintiffs fail to sufficiently allege that DMI Trust proximately caused their injuries. See Init. Mem. at 13-15, 20-21.

II

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**.

Plaintiffs' Opposition pays no heed whatsoever to this Court's Opinions and Orders, dated January 18, 2005 and September 21, 2005, and the authority cited in DMI Trust's Initial Memorandum. Instead, in a final attempt to avoid dismissal, plaintiffs float assertions not borne out by their actual allegations. Yet, "[e]ven with the opportunity to clarify their claims" in several amended pleadings and a MDS, plaintiffs' failure to state any of their claims against DMI Trust remains as complete as one could imagine. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33. There is no indication whatsoever in the record that plaintiffs will in good faith be able to cure the numerous defects of their claims. Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice. See id. at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment"); Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same).

## **CONCLUSION**

For the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.


Dated:  New York, New York          Respectfully submitted,
        February 17, 2006

                                    SHEPPARD MULLIN RICHTER & HAMPTON LLP


By:_____/x/_____
          James J. McGuire (JM-5390)

          30 Rockefeller Plaza, 24th Floor
          New York, New York 10112
          (212) 332-3800

          *Attorneys for Defendant*
          *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
    Of Counsel