# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re:  **TERRORIST ATTACKS OF** **SEPTEMBER 11, 2001** | **03 MDL 1570 (RCC)** **ECF CASE** |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 CV 6977 (RCC) (S.D.N.Y.)

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03 CV 6978 (RCC) (S.D.N.Y.)

*Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al*, Case No. 03 CV 9849 (RCC) (S.D.N.Y.)

*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04 CV 5970 (RCC) (S.D.N.Y.)

*New York Marine and General Insurance Co., et al. v. Al Qaida, et al.*, Case No. 04 CV 6105 (RCC) (S.D.N.Y.)

*Cantor Fitzgerald Associates, L.P., et al.  v. Akida Investment Co., Ltd., et al.*, Case No. 04 CV 7065 (RCC) (S.D.N.Y.)

*Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04 CV 7279 (RCC) (S.D.N.Y.)

*World Trade Center Properties, L.L.C., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04 CV 7280 (RCC) (S.D.N.Y.)

*This document also relates to and supplements the motions to dismiss filed in:*

*Estate of O'Neill, et al. v. The Republic of Iraq, et al.,* Case No. 04 CV 1076 (RCC) (S.D.N.Y.)
*Estate of O'Neill, et al, v. Al Baraka, et al.,* Case No. 04 CV 1923 (RCC) (S.D.N.Y.)[1]

## MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS FILED BY DEFENDANT ASAT TRUST REG.

Defendant Asat Trust Reg. ("Asat Trust"), appearing specially for purposes of this

motion, respectfully submits this memorandum in support of its consolidated motions to dismiss

---

[1]      This document also applies to any additional cases in which Asat Trust was named as a defendant and service was purportedly made by publication.

the claims against it pursuant to Rules 12(b)(5) and 12(b)(2) of the Federal Rules of Civil Procedure.

## **INTRODUCTION AND BACKGROUND**

Asat Trust is a registered trust organized under the laws of Liechtenstein in 1951 for the purpose of performing trust activities and forming legal entities in Liechtenstein.  Asat Trust has never done any business in New York or the United States, nor does it have any assets in New York or the United States.

The complaints in the above-listed proceedings all allege, using various verbal formulas, that Asat Trust is among those liable for the attacks of September 11, 2001 because it allegedly provided financial support for terrorist activities. Although it brings this motion to dismiss on purely procedural grounds,[2] Asat Trust emphatically denies such allegations, and further emphatically denies any knowledge of or complicity in any terrorist activity whatsoever.

For the purposes of this motion, the cases listed above may be divided into two groups: the *"O'Neill"* cases (the final two cases on the list) and the *"Ashton/Federal Insurance"* cases (the first 8 on the list).  In the *O'Neill* cases, plaintiffs sued not only Asat Trust but also two Liechtenstein individuals and another Liechtenstein entity allegedly related to Asat Trust.  The *O'Neill* plaintiffs attempted to serve Asat Trust and the allegedly related defendants by international registered mail.[3]  Asat Trust and the other defendants have moved to dismiss the

---

[2]     Asat Trust respectfully reserves its rights to seek dismissal of the complaints for failure to state a claim.

[3]     The *O'Neill* plaintiffs apparently also attempt to rely on service by publication in the alternative to registered mail service with respect to Asat Trust only.  *See* O'Neill Plaintiffs' Memorandum of Law in Opposition to Martin Wachter, Erwin Wachter, Secor Treuhand Anstalt and Asat Trust Reg.'s Motion to Dismiss, at 3 n.3.  For the reasons set forth in this memorandum, service by publication on Asat Trust does not constitute good service under Rule

*O'Neill* complaints on the grounds, *inter alia*, that service by registered mail is prohibited by Liechtenstein law and, therefore, is invalid under the applicable provision of Rule 4 of the Federal Rules of Civil Procedure.

The complaints in the *Ashton/Federal Insurance* cases include among their many defendants only Asat Trust, and not the allegedly related individuals and entity named in the *O'Neill* cases.   The plaintiffs in the *Ashton/Federal Insurance* cases apparently rely solely on service by publication to bring Asat Trust into court.  Asat Trust is not aware of any attempts by these plaintiffs to serve it by any other method.   Counsel for Asat Trust now understands that this Court issued an Order dated September 15, 2004, permitting service by publication on certain defendants under certain circumstances (the "Publication Order") (copy attached as Exhibit 1), and that the Publication Order was extended to apply to additional cases.  However, as will be demonstrated below, service by publication on Asat Trust is not permitted by the terms of the Publication Order itself, and would not comply with the requirements of due process in any event.   Accordingly, the complaints against Asat Trust must be dismissed for failure of service of process.

The *Ashton/Federal Insurance* complaints against Asat Trust should also be dismissed for lack of personal jurisdiction.  The plaintiffs have not alleged sufficient contacts by Asat Trust with either New York or the United States to satisfy even the minimum requirements of due process.

---

4.  Asat Trust respectfully submits this memorandum as a supplement to its motion papers in the *O'Neill* cases on the issue of service by publication.

## ARGUMENT

I.   **ASAT TRUST HAS NEVER BEEN PROPERLY SERVED.**

A.   **Due Process Imposes Limits on the Validity of Service by Publication.**

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure.  Rule 4(h) addresses service on corporations and associations such as Asat Trust.  It permits service to be made outside of the United States by any method allowed for service on individuals under Rule 4(f), with the exception of personal service.  Rule 4(f), in turn, identifies a number of specific means of effectuating service on persons in a foreign country.  It also provides a "catchall" alternative:  service may be made "by other means not prohibited by international agreement as may be directed by the court." Fed.R.Civ.Pro. Rule 4(f)(3).

Any method of service, including any method directed by a court under Rule 4(f)(3) must, of course, comply with the requirements of due process.  *See generally Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  Service is not a mere formality, nor is actual notice alone enough to bring a party before the court.  Due process requires that:

> before a court may exercise personal jurisdiction over a defendant, there must be *more than* notice to the defendant . . . [t]here also must be a *basis* for the defendant's amenability to service of summons.  Absent consent, this means there must be *authorization* for service of summons on the defendant.

*Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) (emphasis added).  *See also Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916, 924-25 (11th Cir. 2003), *cert. denied*, 543 U.S. 814 (2004).

Service by publication is inherently less reliable than other more direct methods.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 315 ("[i]t would be idle to pretend

that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts").  Thus, service by publication is generally authorized *only* "where it is not reasonably possible or practicable to give more adequate warning." *Id.* at 317.  For this reason, in *Mullane*, a case concerning settlement of accounts of a trust fund, the court permitted service by publication on beneficiaries "whose interests or whereabouts could not with due diligence be ascertained," and on beneficiaries with conjectural or future interests, but *rejected* service by publication for present beneficiaries with known addresses. *Id.* at 318.

As stated by the Second Circuit, "Certainly, if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication *will not satisfy* the requirements of due process." *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (emphasis added). *See also Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, *4 (S.D.N.Y. Dec. 26, 2001) (rejecting service by publication on defendants who could be located).

**B.     Service by Publication on Asat Trust Does Not Comply With the Terms of the Publication Order Itself.**

The Publication Order states that the relief granted is authorization for service by publication

> on defendants specified in Attachment A *for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means* or *was attempted and rejected or otherwise not responded to at an address that was discovered . . . .*

Exhibit 1 (emphasis added).  These requirements were apparently designed to comply with the due process limitations on service by publication outlined in the cases discussed above.  Any attempt at service by publication on a defendant that does not meet these criteria would, therefore, be in violation of due process and ineffective.

5

Such is the case here.  Although Asat Trust is listed in Attachment A to the Publication Order, it does not meet the Order's other express requirements.  First, the address and location of Asat Trust are not unknown; indeed, the plaintiffs in the *O'Neill* cases discovered Asat Trust's address for purposes of their attempted service by registered mail.  *See* Declaration of Dr. Friedrich Wohlmacher, ¶ 3 (submitted with Reply Memorandum in Support of Motion to Dismiss Filed by Defendants Martin Wachter, Erwin Wachter, Secor Treuhand Anstalt and Asat Trust Reg.;  copy attached hereto as Exhibit 2).  Second, it does not appear that any plaintiffs (other than the *O'Neill* plaintiffs) attempted to serve Asat Trust by mail or by any means other than publication.  There was, therefore, no service in the *Ashton/Federal* Insurance cases that "was accepted and rejected or otherwise not responded to at an address that was discovered." Accordingly, the Publication Order by its terms does not permit service by publication on Asat Trust, nor could the Order be construed to permit such service and still comport with the requirements of due process.[4]  Asat Trust has, therefore, never been properly served and is not properly before this Court.

### C.    Service by Publication on Asat Trust Could Not Properly Be Authorized In Any Event Because It Is Prohibited by Liechtenstein Law.

If the terms of the Publication Order were deemed to permit service by publication on Asat Trust, then the Order as applied to Asat Trust fails to comply with Rule 4(f)(3) because the attempt to use service by publication contravenes the laws of Liechtenstein.

Although Rule 4(f)(3) gives a court considerable discretion in fashioning alternative means of service, that discretion is not unbounded.  The Advisory Committee Notes to Rule 4

---

[4]    While this Court addressed service by publication to some extent in its previous opinion, that discussion dealt with a previous publication order and did not address Liechtenstein defendants.  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d 765, 824-25 (S.D.N.Y. 2005).

make it plain that, among other things, a court faced with a request under subsection (f)(3) must consider foreign law before approving any method of service:

> Inasmuch as the Constitution requires that reasonable notice be given, as earnest effort should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*.

Fed.R.Civ.Pro. Rule 4, Advisory Committee Notes to 1993 Amendments, Subdivision (f) (emphasis added).

Accordingly, an attempt to authorize service under Rule 4(f)(3) by a method prohibited under the law of the foreign country involved may constitute an impermissible abuse of the district court's discretion.  *See Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d at 927-28 and n.21 (finding that, under the facts and circumstances before it, directing service by a method prohibited by the law of Austria would be a clear abuse of discretion);  *see also In re Ski Train Fire*, 2003 WL 21659368 (S.D.N.Y. July 15, 2003) ("[w]hile Rule 4(f)(3) provides for substitute service 'as may be directed by the court,' any such service must comport with the laws of the foreign country").[5]

Here, the applicable law is that of Liechtenstein, which prohibits service of process in foreign actions by any means without the mutual legal assistance of the Liechtenstein courts.  *See* Declaration of Dr. Frederich Wohlmacher (Exhibit 2 hereto); *see also* Declaration of Guntram Wolf (submitted in support of Motion to Dismiss of Schreiber & Zindel Treuhand Anstalt, Frank K. Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., in the *O'Neill* cases) (copy attached

---

[5]      *But see Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (asserting, without any discussion of the Advisory Committee Note dealing with Rule 4(f)(3), that service may be accomplished by a method that contravenes the laws of the foreign country involved).

hereto as Exhibit 3).[6]  "Liechtenstein law requires that service of an international summons and complaint be made by letters rogatory."  Wolf Decl., ¶ 10.  Under this procedure, the foreign court must make a request to a Liechtenstein court for service to be carried out in the manner authorized by Liechtenstein law. This is the *exclusive* method for obtaining proper service in a foreign proceeding on defendants in Liechtenstein.  *See* Wolf Decl., ¶¶ 12-13.  As set forth by Dr. Wohlmacher, sanctions may attach to attempts at service in violation of the mandatory procedures established under Liechtenstein law.  *See* Wohlmacher Decl., ¶¶ 6-7.

The invalidity under Liechtenstein law of service of process by any means other than letters rogatory was recently addressed in *Jung v. Neschis*, 2003 WL 1807202 (S.D.N.Y. April 7, 2003).  In *Jung*, plaintiffs attempted service by international registered mail.  After considering Liechtenstein law, Judge Berman of this Court held that "[h]aving the Clerk of the Court for the Southern District mail service to defendants is not sufficient, i.e., it is in these circumstances 'prohibited by the laws' of Liechtenstein and was, therefore, improper under Rule 4(f)(2)(C)(ii)." *Id.* at *2.  The only proper method of service in Liechtenstein is to proceed through the Liechtenstein courts.  *Id.* at *3.

In this case, none of the plaintiffs have ever attempted to serve Asat Trust using the mandatory letters rogatory procedure.  Allowing Asat Trust to be served by publication under these circumstances would be a direct offense to the laws of Liechtenstein and, therefore, an abuse of the court's discretion under Rule 4(f)(3).  Accordingly, even assuming that the Publication Order is valid as to other defendants, the Court should find that it does not authorize service by publication on Asat Trust in Liechtenstein.

---

[6]      Rule 44.1 of the Federal Rules provides, in pertinent part, that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

**D.**     **In the Alternative, Asat Trust is Entitled to Discovery Into**
           **Plaintiffs' Compliance with the Publication Order.**

Even if service by publication pursuant to the Publication Order were deemed to be an appropriate method of service on Asat Trust, plaintiffs would actually have to publish in accordance with the terms of the Order for service to be valid.  The Publication Order requires as follows:

> . . . publication will be once per week for four consecutive weeks in the International Herald Tribune, USA Today and at least one Arabic language newspaper circulated widely in the Middle East, as well as posting the complaint on the website www.sept11terrorlitigation.com.

Exhibit 1.

Plaintiffs have filed proofs of publication detailing the dates their legal notice appeared in the International Herald Tribune, USA Today and Al-Quds Al-Arabi. Asat Trust has no knowledge of these events, and it is unclear that publication in these newspapers could constitute fair notice to a German-speaking trust administrator in Liechtenstein. Moreover,  Asat Trust is not aware of any proof filed by plaintiffs that they timely posted their complaints on the September 11 litigation website.  While the complaints are available now, there is no evidence that they were posted and available when the newspaper notices were published or within the time limit for service.[7]   Accordingly, if the Court determines that publication pursuant to the Publication Order was a valid means of service on Asat Trust, Asat Trust requests the opportunity to conduct discovery into plaintiffs' compliance with the requirements of the Order.

---

[7]     Plainly there has been no effective service by publication in any case whose complaint does not appear on the website.

## II.    ASAT TRUST DOES NOT HAVE SUFFICIENT CONTACTS WITH NEW YORK OR THE UNITED STATES TO SUPPORT THE EXERCISE OF PERSONAL JURISDICTION OVER IT. [8]

### A.    The Complaints Contain No Allegations That Could Support a Finding of General Jurisdiction over Asat Trust.

To avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), plaintiffs bear the burden of establishing personal jurisdiction over each defendant.  *See Bank Brussells Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996). While at this stage of the proceedings allegations in the complaints are construed in a light most favorable to plaintiff, *see PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997), the court will not accept conclusory allegations or draw argumentative inferences.  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y.  2005).  Rather, the complaints and any supporting affidavits must contain averments of fact that, if credited, would suffice to establish jurisdiction over each defendant.  *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

None of the plaintiffs in the *Ashton/Federal Insurance* cases has alleged – nor could they allege – that Asat Trust is or was present at any time in New York or anywhere in the United States.  None of the plaintiffs has alleged – nor could they allege – that Asat Trust is conducting or has conducted any business or other activities in New York or anywhere in the United States. None of the plaintiffs has alleged – nor could they allege – that Asat Trust has any assets,

---

[8]    Asat Trust addresses the personal jurisdiction issue here without waiving its position that it has never been properly served.  Asat Trust further notes that this portion of the Memorandum applies only to the *Ashton/Federal Insurance* cases, and not to the *O'Neill* cases.  The personal jurisdiction issues in those cases have been separately briefed in previously-filed motions.

property or interests of any kind in New York or the United States. Thus, there are no allegations of any kind that would support general jurisdiction over the Asat Trust on any basis.

> **B.** **Plaintiffs Have Not Raised Any Non-Conclusory Allegations of Purposeful or Direct Involvement by Asat Trust in the Terrorist Activities at Issue and, Therefore, Cannot Establish Specific Jurisdiction.**

In these cases, the plaintiffs all essentially allege that Asat Trust aided and abetted, or conspired with, terrorists who carried out activities which resulted in injury in New York. *See Ashton* Third Amended Consolidated Master Complaint ("*Ashton* Complaint"), ¶¶ 5, 23, 530-540; *Federal Insurance Co.* First Amended Complaint ("*Federal Insurance* Complaint"), ¶ 65; *Burnett* Third Amended Complaint ("*Burnett* Complaint"), ¶ 137; *Continental Casualty Co.* First Amended Complaint ("*Continental Casualty* Complaint"), ¶¶ 26, 540-41; *New York Marine and General Insurance* First Amended Complaint ("*New York Marine* Complaint"), ¶¶ 44, 53; *Cantor Fitzgerald* First Amended Complaint ("*Cantor Fitzgerald* Complaint"), ¶¶ 120-21; *Euro Brokers* Complaint, ¶¶ 106-107; *World Trade Center Properties* Complaint, ¶¶ 35, 274.

The complaints rely either on conclusory allegations regarding Asat Trust's alleged financial relationships with certain alleged terrorist-related individuals or entities, or on the U.S. government's designation of Asat Trust as a "specially designated global terrorist" ("SDGT"). These allegations can only support a finding of personal jurisdiction if they meet the standards under an applicable jurisdictional statute. As will be demonstrated below, they do not.

> **1.** **New York's long-arm statute**

In a diversity action or a federal question case involving a statute that does not provide for nationwide service of process, the forum state's personal jurisdiction rules will apply. *See In re Terrorist Attacks*, 349 F. Supp.2d at 804. Here, New York's long-arm statute provides, in relevant part, "[a]s to a cause of action arising from any of the acts enumerated in this section, a

court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state . . . ." N.Y. C.P.L.R. § 302(a)(2).   Under this statute, "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant[s] to [personal] jurisdiction . . . ." *In re Terrorist Attacks*, 349 F. Supp.2d at 805, *quoting Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

However, "the bland assertion of conspiracy is insufficient to establish jurisdiction for purposes of section 302 (a)(2)." *In re Terrorist Attacks*, 349 F. Supp.2d at 805 (citations omitted).  Instead, "Plaintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirators committed a tort in New York." *Id.*   Further,

> To warrant the inference that a defendant was a member of the conspiracy, plaintiffs must show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant."

*Id.* at 805, quoting *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp at 1268-69.

## 2.      Jurisdiction under Rule 4(k)(2)

In addition to the New York long-arm statute, Rule 4(k)(2) of the Federal Rules may provide a basis for the exercise of personal jurisdiction.[9]  Rule 4(k)(2) provides as follows:

---

[9]      Plaintiffs may also seek to support their claim of jurisdiction by reliance on Fed. R. Civ. Proc. 4(k)(1)(D) and claims brought under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*, which provides for nationwide service of process.  However, because Asat Trust has never been properly served in the United States, this statute cannot be the basis for personal jurisdiction over Asat Trust.  Further, Asat Trust's lack of minimum contacts with the United States, as discussed below, precludes a finding of personal jurisdiction under Rule 4(k)(1)(D) in any event.

> If the exercise of personal jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.Pro. Rule 4(k)(2).  To find jurisdiction under this provision, "there must be a federal claim, personal jurisdiction must not exist over the defendant in New York or any other state, and the defendant must have sufficient contacts with the United States as a whole such that the exercise of jurisdiction does not violate Fifth Amendment due process."  *In re Terrorist Attacks*, 349 F. Supp.2d at 807.  *See also United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 617 (S.D.N.Y. 1996).

The Fifth Amendment's due process requirements may be satisfied if the plaintiff can demonstrate that the defendant "purposefully directed his activities at residents of the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985).  However, merely alleging that defendants assisted other persons who directed wrongful activities toward the United States is not enough. To rely on the purposeful activities theory, "plaintiffs must allege some personal or direct involvement by the defendants in the conduct giving rise to their claims." *In re Terrorist Attacks*, 349 F. Supp.2d at 809.

### 3.      Further due process considerations

As this Court has noted, "[a]ny exercise of personal jurisdiction must comport with the requirements of due process."  349 F. Supp.2d at 810.  The due process test has two components: "minimum contacts" and "reasonableness." *Id.*;  *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  If the New York long-arm statute is the alleged basis for

---

The failure of service also precludes a finding of personal jurisdiction under Rule 4(k)(2).

jurisdiction, minimum contacts with New York must be established; under Rule 4(k)(2), the minimum contacts must be with the United States as a whole.

The defendant's contacts with the forum must be sufficient to make it reasonable that it be haled into court there. *Burger King*, 471 U.S. at 474. The mere foreseeability of causing injury in the forum is not enough. *Id.* Instead, personal jurisdiction is not proper unless there is "some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added). The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, . . . or of the unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).

The "reasonableness" test determines whether the exercise of jurisdiction comports with "fair play and substantial justice," as required by *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). In this regard, the court must consider:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests in the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life*, 84 F.3d at 568, citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-16 (1987). "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activity." *Burger King*, 471 U.S. at 477-78.

14

4.      **The requirements of due process are not satisfied here.**

The fundamental question here is whether plaintiffs have pled sufficient facts to justify attributing to Asat Trust, for personal jurisdiction purposes, the actions of the September 11 terrorists in New York or the United States.  Asat Trust respectfully submits that the allegations in the complaints do not provide a basis for personal jurisdiction.

The most extensive allegations concerning Asat Trust appear in the *Ashton* Complaint, which alleges that Ben Moustafa Nada "created ASAT TRUST in 1970 in Liechtenstein to finance the MUSLIM BROTHERHOOD's objectives by opening several entities under ASAT TRUST's direction and control."  *Ashton* Complaint, ¶ 532.[10]  It further alleges that "ASAT TRUST became a global network of financial, religious, business and charitable institutions for the MUSLIM BROTHERHOOD.  This structure however, also financed extremist Islamic organizations, including OSAMA BIN LADEN and Al Qaeda and moved and laundered funds for Islamic terrorist activities."  *Id.*, ¶ 533.  The complaint further lists numerous entities and alleges that "All are participants or associated with ASAT TRUST's activities and operations, which knowingly facilitate and support Al Qaeda's financial network for terror activities."  ¶ 540.

The *Federal Insurance* complaint contains a five-page list of names, including Asat Trust, who "have been designated as supporters and associates of terrorists by the U.S. government, pursuant to Executive Order 13224, based on their material support and sponsorship of, or affiliation with, defendant al Qaida and/or affiliated FTOs, associations, organizations or

---

[10] While the court must consider the allegations on their face for purposes of this pleading, Asat Trust notes that it was actually established in 1951 by a Liechtensteinian and that the suggestion that it was created by Mr. Nada is simply incorrect.

persons." *Federal Insurance* Complaint, ¶ 65.  The *Federal Insurance* plaintiffs state that their claims "are predicated on the conduct and evidence underlying their designations by the U.S. government, and the additional grounds set forth herein."   *Id.* The complaint later refers indirectly to Asat Trust as part of the alleged "Al Taqwa Financial Network," again relying on its designation as a SDGT.  ¶ 264.

The *Burnett* and *Continental Casualty* complaints raise similar allegations based on Asat Trust's alleged relation to Bank al-Taqwa.  *Burnett* Complaint, ¶ 137; *Continental Casualty* Complaint, ¶¶ 540-41.  The *New York Marine* complaint appears to rely solely on Asat Trust's designation as a SDGT, as does the *World Trade Center Properties* complaint.  *New York Marine* Complaint, ¶ 44; *World Trade Center Properties* Complaint, ¶ 274.   The *Cantor Fitzgerald* and *Euro-Broker* complaints assert that Asat Trust is a Bank al-Taqwa affiliate designated as a terrorist organization, ¶ 120, and allege that it, along with numerous other organizations, "lent repeated material support to Al Qaeda and OBL, aided and abetted others who lent material support to Al Qaeda and OBL and otherwise engaged in racketeering activity in violation of law."  *Cantor Fitzgerald* Complaint, ¶ 121;  *Euro-Broker* Complaint, ¶¶ 106-107.

A careful review of these allegations reveals that, although they superficially appear to tie Asat Trust to terrorist activity, in fact they do nothing more than repeat in various forms the entirely conclusory allegation that Asat Trust had some sort of a financial connection to other wrongdoers.  There is not a single allegation of any specific act or transaction carried out by Asat Trust.  Nor are there any facts pled that would demonstrate that Asat Trust performed any financial activities for the purpose of aiding terrorists, or that Asat Trust provided financial services for the purpose of causing terrorist attacks in New York or the United States.  There are

no non-conclusory allegations that Asat Trust directed any activities toward New York or the United States at all.

With respect to plaintiffs' reliance on the government's designation of Asat Trust as a SDGT,[11]   Asat Trust recognizes that this Court has stated that, although the government's designation of an entity as a SDGT is "not dispositive on its own, it does warrant some deference."   Opinion and Order dated September 21, 2005, at 16. *See also In re Terrorist Attacks*, 349 F. Supp.2d at 825.  In the 2005 Order, the Court declined to dismiss the complaints against another entity identified as an SDGT without further discovery on the basis for personal jurisdiction. *Id.*

However, this simply cannot be enough in the case of a defendant that is a Liechtenstein registered trust, which is an entity with its own legal existence separate from that of its settlors or clients.  Even assuming that some of the owners of assets managed by Asat Trust had terrorist ties – which Asat Trust denies – plaintiffs have alleged no facts showing that Asat Trust had knowledge of such ties, that funds managed by Asat Trust were used for terrorist purposes, or that Asat Trust otherwise purposefully acted to assist terrorist activities or to further the terrorist cause.  Nor do the complaints allege any facts with regard to the reason for the government's designation of  Asat Trust as a terrorist organization, which could have been based on the government's beliefs about its settlors rather than Asat Trust itself or the particular funds it administers.

Allowing these cases to proceed against Asat Trust on these allegations alone would mean that Asat Trust was being haled into a foreign court solely on the basis of a business relationship with persons who are now simply alleged to have been carrying out terrorist

---

[11]     Asat Trust strenuously disputes this designation, and has petitioned the Treasury Department to have the designation lifted.

activities directed at New York or the United States, when even those allegations – which are unsupported -- do not include any claim of knowledge on the part of Asat Trust and or any use of its managed assets,. This creation of jurisdiction on the basis of merely fortuitous contacts and the conduct of third parties is precisely what the purposeful activity test of *Burger King* was designed to avoid.

Moreover, the "reasonableness" prong of the due process test strongly militates against exercising personal jurisdiction over Asat Trust here. As this Court has noted, "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *In re Terrorist Attacks*, 349 F. Supp.2d at 811 (citations omitted). This is especially true where, as here, the allegations against the foreign defendant amount to nothing more than unfounded and conclusory accusations without any specific evidence of wrongful activity, intent, purpose or knowledge.

WHEREFORE, Defendant Asat Trust Reg. respectfully submits that its motions to dismiss should be granted.

Respectfully submitted,

Barry Coburn
E-mail: bcoburn@troutcacheris.com
Amy Berman Jackson
E-mail: ajackson@troutcacheris.com
TROUT CACHERIS PLLC
1350 Connecticut Avenue N.W.
Suite 300
Washington, D.C. 20035
Tel: (202) 464–3000
Fax: (202) 464–3319

_____/s/_____
David U. Gourevitch (SDNY #DG8795)
LAW OFFICE OF DAVID GOUREVITCH, P.C.
Tower 56, Second Floor
126 East 56th Street
New York, NY  10022
Tel:     (212) 355-1300
Fax:     (212) 355-1531
Email:  david@gourevitchlaw.com


Attorneys for ASAT TRUST REG.