UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MD 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 1:02-6977 (S.D.N.Y.)
> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-9849 and 03-CV-5738 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**DEFENDANT ABDULLAH BINLADIN'S
REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

I.  PLAINTIFFS' BRIEF, ON BOTH JURISDICTION AND THE MERITS, SIMPLY REARGUES ISSUES THAT THE COURT HAS ALREADY DECIDED ...................... 1

   A.  This Court's Prior Decisions Compel A Finding That It Lacks Jurisdiction Over Abdullah Binladin .......................................................................................................... 1

   B.  This Court Has Already Found That Allegations Of The Type On Which Plaintiffs Rely Are Insufficient To State A Claim ........................................................ 5

II.  PLAINTIFFS' VIOLATION OF CASE MANAGEMENT ORDER #2 WAS WILLFUL AND SUBSTANTIVELY PREJUDICES DEFENDANTS ............................................. 8

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Allojet PLC v. Vantage Assocs.*,
    No. 04 Civ. 05223, 2005 U.S. Dist. LEXIS 4006 (S.D.N.Y. Mar. 15, 2005)......................2

*Boim v. Quranic Literacy Inst.*,
    291 F.3d 1000 (7th Cir. 2002) ........................................................................................4

*Casperone v. Landmark Oil & Gas Corp.*,
    819 F.2d 112 (5th Cir. 1987) ...........................................................................................7

*Clark Constr. Group, Inc. v. Modern Mosaic Ltd.*,
    No. Civ.A. MJG-00-2331, 2000 WL 34508055 (D. Md. Dec. 1, 2000)..............................9

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) ................................................................................................6

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003)..............................................................................7

*General Accident Ins. Co. of Am. v. Fidelity & Dep. Co. of Md.*,
    598 F. Supp. 1223 (E.D.Pa. 1984) ..................................................................................9

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997)...................................................................................7

*Levitch v. Columbia Broadcasting System, Inc.*,
    94 F.R.D. 292 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983).................................9

*Lippe v. Bairnco Corp.*,
    218 B.R. 294 (S.D.N.Y. 1998).........................................................................................7

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)..............................................................................9

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983) ................................................................................................7

*131 Main Street Assocs. v. Manko*,
    897 F. Supp. 1507 (S.D.N.Y. 1995).................................................................................7

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).....................................................................................................6, 7

*State of New York v. O'Hara*,
        652 F. Supp. 1049 (W.D.N.Y. 1987) ................................................................................7

*In re: Terrorist Attacks on September 11, 2001*,
        349 F. Supp. 2d 765 (S.D.N.Y. 2005) (*"Terrorist Attacks I"*) ................................2, 3, 6, 7

*In re: Terrorist Attacks on September 11, 2001*,
        392 F. Supp. 2d 539 (S.D.N.Y. 2005) (*"Terrorist Attacks II"*) .............................4, 6, 7, 10

*United States v. Louie*,
        625 F. Supp. 1327 (S.D.N.Y. 1985) ..................................................................................7

*United States v. Roth*,
        860 F.2d 1382 (7th Cir. 1988) ..........................................................................................7

*Zola v. Gordon*,
        685 F. Supp. 354 (S.D.N.Y. 1988) ....................................................................................7

**INTRODUCTION**

Plaintiffs' opposition brief demonstrates that they have no basis for asserting jurisdiction or even stating a claim against Abdullah Binladin. Plaintiffs acknowledge that there is no general jurisdiction over Abdullah and that their jurisdictional and substantive claims against him rest on only two alleged facts: (1) that in 1991 he founded a U.S. branch of the World Assembly of Muslim Youth ("WAMY-US") and subsequently served as president, and (2) that he co-founded and was a director of the U.S. office of Taibah International Aid Association ("Taibah-US") in the early 1990s.[1] Knowing that this Court has already rejected comparable allegations as insufficient to assert either jurisdiction or a claim for relief against directors of other businesses and charities, Plaintiffs reargue legal rulings already decided against them and make up entirely new allegations that are nowhere to be found in the mass of filings that they characterize as their "Complaints." As discussed in the motion to dismiss and as described in further detail below, Plaintiffs have no conceivable basis for dragging Abdullah Binladin into this litigation, and their Complaints against him should be dismissed.

**I.   PLAINTIFFS' BRIEF, ON BOTH JURISDICTION AND THE MERITS, SIMPLY REARGUES ISSUES THAT THE COURT HAS ALREADY DECIDED**

Ignoring the Court's admonitions,[2] Plaintiffs devote most of their opposition to rearguing prior rulings by this Court that compel the dismissal of all claims against Abdullah Binladin.

**A.   This Court's Prior Decisions Compel A Finding That It Lacks Jurisdiction Over Abdullah Binladin**

Plaintiffs concede that this Court does not have general jurisdiction over Abdullah because he "was no longer residing in Virginia at the time plaintiffs filed their claims against

---

[1] *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Abdullah Binladin, January 30, 2006 (MDL Docket #1653) ("Pl. Opp.") at 1-2, 4.

[2] *See* Hearing Before Judge Richard C. Casey (Sept. 27, 2005) at 9:6-9 (Statement by the Court: "to revisit the same legal issues, the general propositions over and over and over and over again I don't think helps the court in trying to get all these things decided as quickly as possible").

1

him."[3]  Instead, they focus on theories of specific jurisdiction.  To support the theory that Abdullah "purposefully directed" his conduct at the United States, however, this Court has made clear that Plaintiffs must "allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims."  *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 809 (S.D.N.Y. 2005) ("*Terrorist Attacks I*").

Plaintiffs admit that the only reason they have sued Abdullah is because he was a founder and director of WAMY-US and Taibah-US.[4]  But their summary of supposedly "relevant" allegations about WAMY and Taibah does not contain a single mention of any conduct involving Abdullah, nor does it even contain any actionable allegations against the U.S. entities with which he was associated.[5]  Instead, Plaintiffs cite to allegations about the conduct of employees at a few of the dozens of foreign offices of WAMY – an entity Plaintiffs allege was controlled from Saudi Arabia[6] – without claiming that WAMY-US, much less Abdullah, had any knowledge of or involvement in the operations of any of these foreign affiliates.  Similarly, Plaintiffs cite to alleged activities of a Bosnian office of Taibah in the late 1990s, but do not allege that Abdullah knew about or was involved in such activities, nor do they contest Abdullah's sworn affidavit that Taibah did not even have a Bosnian office at the time he ceased to be a director in 1994.[7]

---

[3] Pl. Opp. at 17 n. 8.  In addition, Plaintiffs do not and cannot contend that personal jurisdiction over Abdullah exists on the basis of a New York long-arm conspiracy theory.  *See* Memorandum in Support of Defendant Abdullah Binladin's Motion to Dismiss Plaintiffs' Complaints, November 22, 2005 (MDL Docket #1505) ("Abdullah MTD") at 10-11.

[4] *See* Pl. Opp. at 1-2.

[5] *See* Pl. Opp. at 2-4.

[6] *See, e.g.*, *Fed. Ins.* 1AC ¶¶ 150-151 (WAMY has "more than 60 offices throughout the world" and is "stringently control[led]" by the Kingdom of Saudi Arabia).

[7] *See* Abdullah A. Binladin Affidavit ("Abdullah Aff.") ¶ 10.  Indeed, Plaintiffs offer no factual allegation, much less evidence, to refute Abdullah's sworn testimony that he has never in any way knowingly or intentionally supported terrorism, through WAMY-US, Taibah-US, or otherwise.  Abdullah Aff. ¶¶ 6-11.  Such unrefuted evidence should be credited on a motion challenging jurisdiction.  *See Allojet PLC v. Vantage Assocs.*, No. 04 Civ. 05223, 2005 U.S. Dist. LEXIS 4006, at *11-*12 (S.D.N.Y. Mar. 15, 2005).

This Court has repeatedly held that individuals who are alleged to serve in supervisory roles in suspect charities are not subject to specific jurisdiction unless Plaintiffs allege specific facts showing that the individuals participated in the charity's alleged wrongful conduct. *See Terrorist Attacks I*, 349 F. Supp. 2d at 820-21 (dismissing claims against Abdulrahman bin Mahfouz, an alleged director of the Blessed Relief Society); *id.* at 821-22 (dismissing claims against Tariq Binladin, who allegedly "had a prominent role at IIRO"). That result is even more compelling here because Plaintiffs have not even alleged that the entities with which Abdullah held a supervisory role – WAMY-US and Taibah-US – were engaged in any actionable wrongdoing during the periods in which he was associated with them.[8]

Plaintiffs attempt to distinguish Abdullah from Abdulrahman bin Mahfouz by stressing that "Mr. [Bin] Mahfouz was alleged to have directed his conduct *at* the United States from abroad; Mr. Binladin is alleged to have lived *in* the United States and to have provided his support to al Qaeda while living here."[9] This distinction is meaningless since: (1) Plaintiffs have disavowed any claim of general jurisdiction based on Abdullah's former presence in the United States; and (2) specific jurisdiction turns on whether Abdullah had "personal or direct involvement . . . in the conduct giving rise to [Plaintiffs'] claims," *id.* at 809, not on where he was when such conduct did (or in Abdullah's case, did not) occur.

Nor can Plaintiffs' (erroneous) allegation of an affiliation between WAMY-US and the "SAAR Network" supply any basis for asserting jurisdiction or even stating a claim against

---

[8] *See* Pl. Opp. at 2-4. Some Plaintiffs continue to assert that WAMY (it is unclear whether they are referring to WAMY-US or one of the dozens of other WAMY offices) had its assets frozen by the U.S. government. *See* Pl. Opp. at 2 (citing *Contin. Cas.* 2AC ¶ 376). As discussed in Abdullah's motion to dismiss, this allegation is patently false. *See* Abdullah MTD at 6-7; *see also* http://www.treas.gov/offices/enforcement/ofac/sdn/sdnlist.txt (last visited Feb. 28, 2006); 70 Fed. Reg. 38,256 (July 1, 2005)). Neither WAMY nor WAMY-US has had any financial assets frozen, been designated as an SDGT, or been indicted, much less convicted, of any terrorism-related offense.

[9] Pl. Opp. at 18 (emphasis in original).

3

Abdullah.[10]  This Court has already held that Plaintiffs failed to state claims against five executives of entities supposedly included within the "SAAR Network" because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists."  *In re: Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 571-72 (S.D.N.Y. 2005) ("*Terrorist Attacks II*") (citing to *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1023 (7th Cir. 2002)) (a claim under the ATA must include allegations that the defendant knew about the terrorists' illegal activities, wanted to help those activities succeed, and engaged in an act of helping).  The same reasoning applies with even greater force here, where Abdullah is only alleged to have been an officer of an organization "affiliated" in some undefined way with the "SAAR Network."[11]  Certainly, allegations that are insufficient to state a claim cannot meet the higher standard required to establish a *prima facie* case for the existence of specific personal jurisdiction.  *See Terrorist Attacks II*, 392 F. Supp. 2d at 556.

Hoping to avoid the inevitable consequences of their pleading failures, Plaintiffs resort to mischaracterizing their Complaints by making up allegations that are nowhere to be found in their pleadings.  They argue that, because they have alleged that WAMY-US was in some undefined way "affiliated" with the "SAAR Network,"[12] and because they have conclusorily alleged that the "SAAR Network" was "created to provide funding, money laundering and other material support to terrorist organizations, including al Qaida,"[13] the Court should interpret their

---

[10] *See* Pl. Opp. at 3, 12 (citing *Fed. Ins.* 1AC ¶ 160).

[11] Pl. Opp. at 12.

[12] Plaintiffs nowhere allege any facts explaining *how* WAMY-US is supposedly affiliated with the "SAAR Network," other than the dubious allegation that WAMY-US's offices were raided in 2002 in connection with a government investigation of the "SAAR Network."  *See* Pl. Opp. at 3.  In fact, WAMY-US does not appear on the government affidavit in support of the warrant for that search, which Plaintiffs themselves submitted in connection with other motions.  *See* Abdullah MTD at 6, n.19.  Moreover, Abdullah had no association with WAMY-US following his departure from the U.S. in 2000, two years before the alleged "raid."  Abdullah Aff. ¶ 6.

[13] Pl. Opp. at 12 (emphasis omitted).  This allegation is directly contradicted by other allegations in Plaintiffs' Complaints and cannot be deemed "well-pleaded."  As this Court has already recognized, the SAAR Foundation (the basis of the so-called "network") allegedly was "formed in the 1970s," *Terrorist Attacks II*, 392 F.

4

Complaints as having also alleged that *WAMY-US* was formed for the purpose of providing funding to al Qaeda.[14] And, they continue, since Abdullah is alleged to have founded WAMY-US, the Court should pretend that the Complaints contained a specific allegation that he did so for the purpose of funding al Qaeda.[15]

This contrived allegation is not in the Complaints nor could it even be asserted consistent with the good faith pleading obligations imposed by Rule 11. Plaintiffs provide absolutely no basis to infer that Abdullah Binladin was even aware of any terrorist activities by OBL in 1991 when he formed WAMY-US, much less that he did so with the intent to support OBL's as-yet-unarticulated plans to attack the United States. Indeed, given the absence of any specific allegation that WAMY-US or Abdullah ever did anything to support al Qaeda *after* its formation, the strained and conclusory inference Plaintiffs ask the Court to draw from their manufactured allegation is unsustainable.

      **B.    This Court Has Already Found That Allegations Of The Type On Which Plaintiffs Rely Are Insufficient To State A Claim**

Implicitly acknowledging that they rely solely on conclusory allegations, Plaintiffs again argue, based on extra-circuit authority, that "while the Court need not accept conclusions of law, that the *factual* allegations of the Complaint may be deemed 'conclusory' provides no basis for dismissal at the pleading stage."[16] Both this Court and the Second Circuit, however, have

---

(continued…)

Supp. at 569, more than a decade before al Qaeda was allegedly created. Thus, the "SAAR Network" could not possibly have been created for the purpose of funding al Qaeda.

[14] *See* Pl. Opp. at 12. In making this argument, Plaintiffs cite to the *Euro Brokers* and *WTC* RICO Statements directed to WAMY (at 5), both of which state in conclusory fashion: "WAMY's U.S. office was . . . affiliated with the SAAR Network of businesses and charities *that were* created to provide funding, money laundering and other material support to terrorist organizations, including al Qaeda." (Emphasis added). They also cite to the *Federal Insurance* Complaint (1AC ¶ 160) and the *Federal Insurance* RICO Statement directed to Abdullah Binladin (at 14), which are identical but for the deletion of the italicized words ("that were").

[15] *See* Pl. Opp. at 1-2, 4, 12.

[16] Pl. Opp. at 7 (emphasis in original).

consistently held that "'[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).'"  *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)); *see also id.* at 826, 828, 835-36.

Moreover, as explained above, this Court has rejected allegations that executives of certain "SAAR Network" entities supported al Qaeda simply by holding their executive positions – the same basic allegations that Plaintiffs make against Abdullah.[17]  *See Terrorist Attacks II*, 392 F. Supp. 2d at 572 (dismissing claims against five "SAAR Network executives" pursuant to Rule 12(b)(6)).  Plaintiffs' argument that Abdullah is liable under the Anti-Terrorism Act ("ATA") for founding and serving as an officer of an entity allegedly "affiliated" with the "SAAR Network" therefore fails for the same reasons that required dismissal of the "SAAR Network executives."  *See id.*  Similarly, this Court has held that where no ATA claim has been stated against a Defendant, Plaintiffs' claims for wrongful death, survival, trespass, intentional infliction of emotional distress, and violation of the Alien Tort Claims Act ("ATCA") must also be dismissed.  *See id.* at 566.[18]

Plaintiffs attempt to salvage their one remaining claim (RICO) by ignoring clear Supreme Court precedent and prior rulings of this Court.[19]  Relying on the Supreme Court's 1993 decision in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), this Court has twice dismissed § 1962(c) RICO claims against other Defendants because, although "[t]he complaints allege the moving

---

[17] *See* Pl. Opp. at 12.

[18] Plaintiffs concede that they fail to state a Torture Victim Protection Act claim against Abdullah, Pl. Opp. at 15, n.7 (citing *Terrorist Attacks I*, 349 F. Supp. at 828), and acknowledge that this Court has already held that their negligence claims must be dismissed for failure to allege a duty.  *Id.* (citing *Terrorist Attacks I*, 349 F. Supp. 2d at 831).  Likewise, Plaintiffs recognize this Court's ruling that the intentional tort claims asserted by the *Federal Insurance* and *WTC* Plaintiffs are time-barred.  *Id.* (citing *Terrorist Attacks I*, 349 F. Supp. 2d at 829).

[19] Apparently recognizing the legal impossibility of such a claim, Plaintiffs have abandoned their § 1962(a) RICO claim against Abdullah.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 827 (investment injury must be alleged); Abdullah MTD at 17 (Plaintiffs do not allege injury resulting from Abdullah's investment of racketeering income); Pl. Opp. at 13 (arguing sufficient allegations "to sustain claims under both §§ 1962(c) and (d)").

6

Defendants may have assisted al Qaeda, . . . they do not allege anything approaching active 'management or operation'" of that alleged enterprise. *Terrorist Attacks I*, 349 F. Supp. 2d at 827-28 (internal quotation and citation omitted); *Terrorist Attacks II*, 392 F. Supp. 2d at 565, 567-572. Plaintiffs ignore these decisions and instead rely on cases decided prior to *Reves*[20] that applied a broader "participation in the enterprise" standard that *Reves* expressly rejected. 507 U.S. at 178-79; *see also Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003) (noting that the "operation and management test is a very difficult test to satisfy" and rejecting allegations of mere "participat[ion]" (internal quotation omitted)).[21] Because Plaintiffs concede that they do no more than "allege that [Abdullah] *participated* in al Qaeda's affairs through the U.S. offices of WAMY and Taibah,"[22] their § 1962(c) RICO claims must be dismissed. Plaintiffs' claims about Abdullah's attenuated ties to organizations that allegedly support al Qaeda are likewise insufficient to provide a "factual basis for a finding of a conscious agreement" between him and the members of the al Qaeda RICO enterprise to engage in a RICO conspiracy in violation of § 1962(d). *Terrorist Attacks I*, 349 F. Supp. 2d at 827 (internal quotations and citation omitted).

---

[20] *See* Pl. Opp. at 13-14 (citing *United States v. Louie*, 625 F. Supp. 1327, 1333 (S.D.N.Y. 1985); *State of New York v. O'Hara*, 652 F. Supp. 1049, 1053 (W.D.N.Y. 1987); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *United States v. Roth*, 860 F.2d 1382, 1390 (7th Cir. 1988); *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 115 (5th Cir. 1987)).

[21] Plaintiffs also seek to ease their burden by arguing that "'[c]ivil RICO liability can be predicated on aiding and abetting . . . .'" Pl. Opp. at 14 (quoting *Zola v. Gordon*, 685 F. Supp. 354, 375 (S.D.N.Y. 1988) and citing *131 Main Street Assocs. v. Manko*, 897 F. Supp. 1507, 1529 (S.D.N.Y. 1995)). More recent cases in this Circuit, however, hold that Supreme Court precedent "forecloses aiding and abetting liability for a civil RICO violation," and in any event, a defendant could not be "liable under § 1962(c) for aiding and abetting RICO violations unless it had some part in directing the affairs of the RICO enterprise" as required by *Reves*. *Lippe v. Bairnco Corp.*, 218 B.R. 294, 304 (S.D.N.Y. 1998); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 257 n.10 (S.D.N.Y. 1997) (same and noting that "[n]othing" in the *Manko* case cited by Plaintiffs "suggests that persons who *do not participate* in the *operation or management* of the enterprise are subject to civil liability merely because they aid or abet predicate acts" (second emphasis added)).

[22] Pl. Opp. at 14 (emphasis added).

7

## II. PLAINTIFFS' VIOLATION OF CASE MANAGEMENT ORDER #2 WAS WILLFUL AND SUBSTANTIVELY PREJUDICES DEFENDANTS

Plaintiffs make the absurd assertion that *Defendants* are engaged in "gamesmanship" when they object to Plaintiffs' purposeful circumvention of the requirements of Case Management Order # 2 ("CMO #2"). It is Plaintiffs, however, who are playing games. Plaintiffs knew that "[t]he obvious intent of the inclusion of a deadline for filing of 'final' amended complaints was to ensure that it would not be necessary for the Court to consult multiple pleadings in order to review the allegations against any particular defendant,"[23] and they told the Court as much.[24] They even asked the Court to relieve them, for the time being, of the burden of filing amended complaints, and instead proposed to "assemble a package for each defendant, containing all of the RICO Statements or More Definite Statements [("MDSs")] pertaining to that defendant" for purposes of resolving motions to dismiss.[25] The Court said no.[26]

Despite knowing precisely what they were required to do by CMO #2, Plaintiffs (other than the *Ashton* Plaintiffs) dumped on the Court and the parties collections of filings even more unwieldy than the Defendant-specific "packages" the Court had declined to accept. As explained in our opening brief,[27] they filed "notices" identifying the scores of documents they deemed to be part of their Complaints, or simply added footnotes that purported to incorporate by reference what Plaintiffs themselves describe as the allegations "against each defendant . . . scattered over various documents filed on different days, in complaints, more definite statements, and RICO

---

[23] Letter from Sean P. Carter to All Defendants' Counsel (July 11, 2005) (Ex. 1) at 1.

[24] *See* Letter from Sean P. Carter to Hon. Richard C. Casey (July 15, 2005) (Ex. 2) at 1; *see also* Abdullah MTD at 3.

[25] *See id.* at 1, 3.

[26] *See* Endorsed Letter of July 27, 2005 (MDL Docket #1073) (Ex. 3).

[27] *See* Abdullah MTD at 3-4.

8

Statements."[28]  These purportedly "incorporated" materials far exceed in length the already prolix Complaints,[29] and none are in the form required by Rule 10(b).

Contrary to Plaintiffs' argument, Rule 10(c) provides no justification for these pleading tactics.  In fact, case law interpreting that Rule *prohibits* exactly what Plaintiffs have attempted here.  They cannot vaguely "incorporate by reference" into their Complaints entire RICO Statements and MDSs, often directed at multiple Defendants, with no specificity about which allegations are incorporated against whom; nor can they incorporate such documents, which are plainly not "written instruments," by mere attachment:

> Instruments are documents which have some legal effect of their own.  Pleadings . . . are merely one party's allegations of fact.  While instruments . . . when appended to a pleading become "a part thereof for all purposes" . . . prior pleadings are treated quite differently.  For all or part of a prior pleading to be incorporated in a later pleading, the later pleading must specifically identify which portions of the prior pleading are adopted therein . . . with a degree of clarity which enables the responding party to ascertain the nature and extent of the incorporation.

*General Accident Ins. Co. of Am. v. Fidelity & Dep. Co. of Md.*, 598 F. Supp. 1223, 1229 (E.D.Pa. 1984) (internal quotation and citation omitted).[30]

---

[28] Pl. Opp. at 9.  The *NY Marine* Plaintiffs purported to "incorporate by reference" not only dozens of RICO Statements filed in *Federal Insurance*, but also "all other allegations pertaining to the defendants set forth in complaints, RICO Statements, More Definite Statements and motion papers by plainitffs [sic] in all related actions consolidated in MDL 1570," *NY Marine* 2AC ¶ 504 n.55, while the *Continental Casualty* Plaintiffs purport to "repeat . . . the factual allegations against defendants which are set forth in the pleadings in the other actions consolidated under 03 MDL 1570."  *Contin. Cas.* 2AC ¶ 600.

[29] For example, the *Burnett* Plaintiffs filed a Complaint of approximately 400 pages, half of which was devoted to captions, and then purported, by mere "notice," to "consolidate" into their Complaint an additional 49 documents totaling almost 1,600 pages.  The *Euro Brokers* Plaintiffs filed a 55-page Complaint but purported to incorporate 600 additional pages of allegations.  And the *Continental Casualty* Plaintiffs filed a 174-page Complaint, but incorporated an "Addendum" which consists of almost 250 additional pages.

[30] *See also Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 229 n.4 (S.D.N.Y. 2000) (Rule 10(c) requires "'an express incorporation' and even 'references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.'" (internal quotation omitted)); *Clark Constr. Group, Inc. v. Modern Mosaic Ltd.*, No. Civ.A. MJG-00-2331, 2000 WL 34508055, at *4 (D. Md. Dec. 1, 2000) (the fact of inclusion as an exhibit "alone is not sufficient to warrant incorporation. . . .  The exhibit provision of Rule 10(c) applies to only to [sic] written instruments, documents such as contracts, leases, bonds, and letters"); *Levitch v. Columbia Broadcasting System, Inc.*, 94 F.R.D. 292, 294-95 (S.D.N.Y. 1982) (finding it "obvious that plaintiffs," who filed one new paragraph and incorporated by reference a previously dismissed complaint, "have purposely sought to file an amended pleading – in a form hitherto unknown to the Federal Rules of Civil Procedure

9

Here, Plaintiffs provide no notice of which portions of the thousands of pages of "incorporated" material purportedly relate to Abdullah Binladin or any other Defendant. Indeed, Plaintiffs' opposition brief relies almost entirely on allegations made against *other* Defendants, often found *only* in RICO Statements directed to those other Defendants, and not to Abdullah. Some of the Plaintiffs who seek to rely on RICO Statement allegations have not even brought RICO claims. And those Plaintiffs who have sought relief under RICO still may not bolster their ATA, ATCA and state law claims with RICO Statements. *See Terrorist Attacks II*, 392 F. Supp. 2d at 564 ("For purposes of *the RICO claims*, the Court also reviews the RICO statements." (emphasis added)).[31]

## CONCLUSION

For the foregoing reasons, as well as those stated in his opening brief, Plaintiffs' claims against Abdullah Binladin should be dismissed.

Dated: March 1, 2006

Respectfully submitted,

/s/ Geoffrey S. Stewart

Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

---

(continued…)

– in an effort to keep their claim as ambiguous as possible" in violation of even "[t]he liberal rules of pleading in the federal system"), *aff'd*, 697 F.2d 495 (2d. Cir. 1983).

[31] Plaintiffs' claim that Abdullah is now attempting to "side-step" an agreement with Plaintiffs that their RICO Statements would be considered by the Court despite their failure to comply with CMO #2, Pl. Opp. at 10, is ridiculous. As Plaintiffs acknowledge, the July 27, 2005 stipulation merely concerned the timing for filing Plaintiffs' RICO Statements, and had absolutely nothing to do with Plaintiffs' subsequent duty to file final amended complaints on September 30, 2005, incorporating all such allegations. Moreover, even if Abdullah had agreed as Plaintiffs now claim, such an agreement could never serve to eliminate the requirements of the Federal Rules of Civil Procedure or this Court's previous orders.

Stephen J. Brogan
Mary Ellen Powers
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Defendant Abdullah Binladin*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 1, 2006, I caused an electronic copy of Defendant Abdullah Binladin's Reply Memorandum In Support of Motion To Dismiss Plaintiffs' Complaints to be served by the Court's Electronic Case Filing System.

Date:   March 1, 2006

                                                   /s/ Stephen J. Brogan
                                                   Stephen J. Brogan