## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977
*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

## REPLY MEMORANDUM OF LAW OF JAMAL BARZINJI
## IN FURTHER SUPPORT OF HIS MOTIONS TO DISMISS
## PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Jamal Barzinji*

Jamal Barzinji, by and through his undersigned counsel, hereby submits this Reply Memorandum of Law in Further Support of his Motions to Dismiss all of the claims asserted against him by Plaintiffs in *Ashton, Burnett, New York Marine,* and *Continental* (hereinafter the "Plaintiffs") pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In its September 21, 2005 Opinion and Order, the Court distinguished Dr. Barzinji from five other similarly situated so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza against whom the Court dismissed claims, and found that the *Federal Insurance* Plaintiffs had stated an Anti-Terrorism Act ("ATA") claim against Dr. Barzinji. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 569-72 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").[1]  Plaintiffs urge the Court to follow its September 21, 2005 ruling and deny Dr. Barzinji's Motions to Dismiss, but offer no basis for treating Dr. Barzinji differently from the other so-called "SAAR Network" Executives.

It appears that the only reason the Court sustained the *Federal Insurance* Plaintiffs' claim against Dr. Barzinji was because it was misled by those Plaintiffs' allegations stating, or at least implying, that Dr. Barzinji *works* with Specially Designated Global Terrorist ("SDGT") Youseff Nada.  But, as illuminated by Plaintiffs' "amended" pleadings and their Opposition to the Motions to Dismiss, this alleged working relationship occurred, if at all, 25 years ago.  This allegation, even if true, cannot provide the basis for a claim because it occurred well before Al Qaeda was formed and before Nada was designated as a terrorist.

---

[1]In its September 21, 2005 Opinion, the Court dismissed all of the claims against Dr. Barzinji other than the ATA claim.  The Court also dismissed all of the claims against alleged "SAAR Network" Executives Muhammad Ashraf, M. Omar Ashraf, Iqbal Unus, Yaqub Mirza and Taha Al-Alwani and Entities African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation in *Burnett*.  The Court also dismissed the claims against International Institute of Islamic Thought in *Ashton* and *Burnett*, and Mar-Jac Poultry in *Ashton, Burnett* and *Federal Insurance*.  *In re Terrorist Attacks II*, at 569-72.

The *Ashton* Plaintiffs also allege that in February 2001, well before Nada was identified as a SDGT by the U.S. government in November 2001, Mena Estates, a company of which Dr. Barzinji was allegedly President, loaned $500,000 to Nada. Assuming that loan actually occurred, the allegation falls far short of stating a claim that Dr. Barzinji knowingly and intentionally supported Al Qaeda or the September 11th attacks.

Plaintiffs have not alleged: (1) that Dr. Barzinji knew about this loan, authorized the loan or had any role in making of the loan, (2) that Nada financially supports Al Qaeda or those responsible for the September 11th Attacks, (3) that at the time of the alleged loan and *prior to* Nada's designation by the U.S. Government, Dr. Barzinji *knew*, or for that matter could have known, that Nada was involved in terrorist activities or financially supported Al Qaeda, or (4) that Dr. Barzinji either made the alleged loan for the purpose of supporting Al Qaeda or knew that Nada would use the loan proceeds to support Al Qaeda.

Because Plaintiffs have not alleged that Dr. Barzinji knowingly supported Al Qaeda or the September 11th attacks, their claims against Dr. Barzinji should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' AMENDED PLEADINGS DO NOT COMPLY WITH CMO-2

Plaintiffs' "amended" pleadings not only fail to state claims, they also do not comply with the Court's Second Case Management Order (the "CMO-2").

The CMO-2 required Plaintiffs to "file an amended complaint that includes all amendments made prior to that date."[2] The *Burnett*, *World Trade Center* and *Euro Brokers* Plaintiffs did not file an "amended complaint," but rather filed something they called a "Notice of Consolidated Pleading" referencing dozens of other pleadings. Plaintiffs argue that the

---

[2] As noted in Dr. Barzinji's Motion to Dismiss, this argument does not apply to the *Ashton* Plaintiffs who have complied with the CMO-2.

"'Notice of Consolidated Pleading permits each Defendant to find in a single place all of plaintiffs' allegations." (Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Jamal Barzinji, MDL Docket # 1674 ("Plaintiffs' Opp.") at 12.) But this is not the case. To determine what is pled against them, a Defendant would have to locate and wade through dozens of documents and speculate about what relates to each Defendant. The "amended" pleadings in *New York Marine* and *Continental*, which incorporate by reference numerous documents including some *from other cases*, also fail to comply with the CMO-2.

Nor did Plaintiffs comply with the spirit of the CMO-2. Plaintiffs each filed pleadings that impose a burden on Defendants and the Court to determine exactly what is being alleged and against whom. For example, the "addendum" to the complaint filed by the *Continental* Plaintiffs fails to comply with the CMO-2 and Federal Rules because it is confusing, duplicative and would be impossible to answer because its paragraphs are unnumbered.[3] This is precisely what the CMO-2 was designed to prevent.

Parties have an "unflagging duty to comply with clearly communicated case-management orders," *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998), and parties that fail "to comply with case management orders entered by the court . . . are subject to . . . sanctions." *Arnold v. Krause, Inc.*, 2004 WL 3574033, *8 (W.D.N.Y. July 23, 2004) (citing Fed. R. Civ. P. 16(f); other citations omitted). At a minimum, the Court should strike all of the addendums, attachments and exhibits to any of the "amended" pleadings, and any document that is

---

[3] The *Continental* Plaintiffs argue that their "amended" complaint was filed timely on September 30, 2005. (Plaintiffs' Opp., at 13.) But, according to the Clerk of Court there is no record of the complaint having been filed on September 30, 2005, and it *was not served on Defendants until October 6, 2005*. Obtaining a September 30, 2005 date-stamp on the cover page of a complaint – presumably by abusing the Court's after-hours drop box – does not comply with the CMO-2.

incorporated into the complaint by reference, and consider only those allegations contained in the actual complaint in determining the motions to dismiss.[4]

## II.      PLAINTIFFS' "AMENDED" PLEADINGS SHOULD BE DISMISSED FOR FAILURE TO STATE CLAIMS

Even if the Court were to consider all of the allegations asserted against Dr. Barzinji, the claims against him must be dismissed because taken together these allegations fail to state claims.  Plaintiffs concede that (1) "Defendants may be responsible for the September 11 attacks if they knowingly and intentionally provided material support to al Qaeda"; and (2) "Plaintiffs [must] plead that Defendant knew of al Qaeda's illegal activities, 'that [he] desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'"  (Plaintiffs' Opp., at 3.)  As discussed below, Plaintiffs have failed to satisfy these pleading requirements.

### A.      Dr. Barzinji's Alleged Role in the So-Called "SAAR Network" Does Not State Claims

The bulk of the allegations against Dr. Barzinji concern his purported role in the alleged "SAAR Network."  (Plaintiffs' Opp., at 7.)  These allegations are not materially different than those asserted by the *Federal Insurance* Plaintiffs, allegations that the Court previously found do not state claims against Yaqub Mirza, Muhammad Ashraf, M. Omar Ashraf, Iqbal Unus and Taha Al-Alwani.

Plaintiffs have not alleged either what the so-called "SAAR Network" or Dr. Barzinji did knowingly to aid Al Qaeda or to cause the September 11th attacks.  Plaintiffs' allegations

---

[4] In addition, the Court has the full arsenal of sanctions available, up to and including dismissal. *See Mulholland v. County of Orange*, 108 F.3d 329 (2d Cir. 1997) (affirming dismissal of complaint for failure to comply with CMO); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (court should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document").

concerning Dr. Barzinji's alleged involvement in the "SAAR Network" do not state claims. *In re Terrorist Attacks II*, at 572.[5]

**B.   Mena Estate's Alleged Loan to Nada Does Not State Claims**

The *Ashton* Plaintiffs, and only the *Ashton* Plaintiffs, allege that Dr. Barzinji was the President of a company called Mena Estates[6] that, in February 2001, allegedly loaned $500,000 to Nada. (Plaintiffs' Opp., at 6-7.) But this allegation fails to state a claim because Plaintiffs have not alleged -- as they must -- that this loan was knowingly and intentionally made to provide material support to Al Qaeda or those responsible for the September 11th attacks.

First, although Plaintiffs have alleged that Dr. Barzinji was the President of Mena Estates, they have not alleged that *at the time* of this loan Dr. Barzinji participated in the decision to make the loan, had the authority to make the loan or even that he knew about the loan. Rather Dr. Barzinji's alleged liability is based solely on his status as President and that is insufficient to state a claim. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office. He may become liable if he knowingly participates in such actions.")

Second, even if the allegation concerning the loan to Nada was true, as the Court must assume for purposes of this motion, Plaintiffs have not alleged that the loan provided material support to Al Qaeda or those responsible for the September 11th attacks. Plaintiffs pretend that

---

[5] The Court did not dismiss the *Federal Insurance* Plaintiffs' ATA claim against Dr. Barzinji, despite the similarity between the allegations asserted against him and the other so-called "SAAR Network Executives" that had claims dismissed, largely on the basis of an alleged working relationship between Dr. Barzinji and purported terrorism financier Yousseff Nada. However, a closer look at this allegation, as illuminated in Plaintiffs' "amended" pleadings, reveals that this allegation does not provide a basis for sustaining Plaintiffs' claims. (*See infra*. at 8.)

[6] As noted in the Motion to Dismiss, none of the Plaintiffs have brought claims against Mena Estates. Contrary to Plaintiffs' assertion (Plaintiffs' Opp., at n. 3.), Mena Estates can not be added as a Defendant because the time for Plaintiffs to amend, September 30, 2005, has passed, and Plaintiffs knew of the allegations against Mena Estates by that time, could have named it as Defendant and chose not to.

the alleged loan to Nada is the same as if it were a loan to Al Qaeda. It is not. The only allegation in the Complaint that provides any support for Plaintiffs' claim that Nada financially supported Al Qaeda is the conclusory allegation that "according to the United States Department of the Treasury, [Nada] provided financial assistance to OSAMA BIN LADEN and AL QAEDA, prior to and even after September 11, 2001." (**Ashton**, ¶ 253.)[7] Plaintiffs must allege the knowing provision of support to Al Qaeda, and a loan to Nada -- even if he was subsequently identified as a SDGT -- does not satisfy this requirement.

In fact, following his designation, the government in Switzerland where Nada lives began its own investigation into the terrorism charges against him. In June 2005, following a three and a half year investigation, the Swiss authorities concluded their investigation without bringing any charges against him. (Declaration of Steven K. Barentzen, dated March 8, 2006, (the "Barentzen Decl.") at Exhibit A.) This strongly suggests, contrary to Plaintiffs' assertion, that there is little evidence, if any, connecting Nada to Al Qaeda.

Third, Plaintiffs have not alleged that at the time of the loan, Dr. Barzinj knew that Nada was purportedly a financier of any terrorist organization, much less Al Qaeda. In fact, there is nothing in the Complaint even suggesting that Dr. Barzinji conceivably could have known that Nada was a financier of terrorism at the time of the purported loan in February 2001, nine months prior to his designation. Based upon the allegations in the Complaint, the earliest that Dr. Barzinji was put on notice of Nada's designation was November 2001, after the September 11th Attacks, and even this designation did nothing to put Dr. Barzinji on notice of Nada's

---

[7] Plaintiffs do not cite the source or the date of this alleged statement by the U.S. Treasury Department. It is not found in Nada's designation, which does not claim that Nada supported At Qaeda. This Treasury Department statement, by itself, not only would be insufficient to state a claim against Nada, it fails to put Dr. Barzinji on notice to Nada's alleged ties to Al Qaeda absent an allegation that Dr. Barzinji knew of its existence.

alleged ties to Al Qaeda.  Plaintiffs offer nothing to support the inference that Dr. Barzinji knew of Nada's purported financing of terrorism before the U.S. Government.

Further, even if Plaintiffs had alleged that Dr. Barzinji intended to loan money to Nada and knew that Nada was supporting Al Qaeda – and Plaintiffs clearly have not – there is still no allegation that Dr. Barzinji intended for the alleged loan to support Al Qaeda or that he knew Nada would use the funds to support Al Qaeda.  Nor are there any facts alleged that would support a reasonable inference to this effect.

Therefore, Plaintiffs have not alleged that Nada engaged in any terrorist activities or supported Al Qaeda, much less that Dr. Barzinji knew of such illegal activities or "desired to help those activities succeed, and . . . engaged in some act of helping the illegal activities."  *In re Terrorist Attacks II*, at 564 (*citing Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)).

If anything, Plaintiffs' "evidence" of the alleged loan, purported notes of an interview with Nada conducted by Federal Agent David Kane, evidences that Dr. Barzinji did not support Al Qaeda.[8]  These notes clearly state right up front that that the U.S. government was investigating the "SAAR Network" (called the "SAFA Group") for allegedly funding "front organizations for *HAMAS and the Palestinian Islamic Jihad (PIJ)*."  (Nada Interview, at 1) (emphasis supplied.)  This admission, coupled with the Kane Affidavit referenced in Dr. Barzinji's Motion to Dismiss, confirms that any investigation of Dr. Barzinji has been for alleged support of Hamas and PIJ, not Al Qaeda.  Allegedly providing support to Hamas or the PIJ

---

[8] These unauthenticated and inadmissible hearsay "interview notes" were attached by Plaintiffs as Exhibit A to the Opposition to the Motion to Dismiss of Sulaiman Al-Rajhi (the "Nada Interview").  (Plaintiffs' Opp., at n. 2.) Plaintiffs have not explained how they obtained a copy of a document that was purportedly created by the Government during a confidential investigation.  As noted in the Motion to Dismiss, that investigation has lasted nearly four years, but has not lead to a single charge, indictment, conviction, designation or the freezing of a single asset or account.

cannot provide a basis for a claim in this action because those two organizations are not alleged to have any connection whatsoever to Al Qaeda or the September 11th Attacks. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*") ("Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11"); *In re Terrorist Attacks II*, at 571 (dismissing claims against IIIT because the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror.")[9]

### C.   Dr. Barzinji's Alleged Working Relationship With Nada Does Not State Claims

Plaintiffs also allege that Dr. Barzinji worked for Yousef Nada.  (Plaintiffs' Opp., at 5.) It appears from the Court's September 21 Opinion that this allegation was particularly persuasive, if not dispositive, in the Court's decision to deny Dr. Barzinji's Motion to Dismiss in *Federal Insurance*.  *See In re Terrorist Attacks II*, at 569-72.  But, as stated in Plaintiffs' Opposition, this alleged working relationship occurred prior to the founding of the SAAR Foundation in the late 1970's or early 1980's.  (Plaintiffs' Opp., at 5; Nada Interview, at 2.)  The Court has held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda.  See Terrorist Attacks I*, at 826 (emphasis added).

Even had Dr. Barzinji worked for one of Nada's organizations in the 1970's, he could not "knowingly and intentionally" provide material support to an organization -- Al Qaeda -- that

---

[9] Plaintiffs also cite to a document referenced in the Nada interview that was allegedly recovered on "SAAR Network premises" and written by Nada describing the loan.  (Plaintiffs' Opp., at 6.)  Assuming that such a letter actually exists and was written by Nada, it was admittedly found at 555 Grove Street.  (Nada Interview, at 4.)  Dr. Barzinji, however works at a different address, 585 Grove Street, and is not alleged to have knowledge or notice of this letter.

was not even formed until later in 1980's.  Moreover, this working relationship would have occurred well before Nada was designated as a SDGT, and there is no allegation that Dr. Barzinji knew or could have known that Nada was financier of terrorism at that time. (*See supra.* at 6-7.)

**D.    None Of Plaintiffs' Other Allegations State Claims**

Plaintiffs also argue that Dr. Barzinji "recommended" two "SAAR Network" officers to Yousef Nada as prospective officers of Bank Al Taqwa. (Plaintiffs' Opp., at 8.)  But the "recommendation" of persons for employment falls far short of the provision of personnel necessary to support an ATA claim pursuant to 18 U.S.C. § 2339A.  Moreover, there is no allegation that *at that time* of this alleged recommendation that Dr. Barzinji knew Nada or Bank Al Taqwa to be sponsors of terrorism.  (*See supra.* at 6-7.)  Nor is there any allegation that this recommendation bore fruit or, if it did, what the "recommended" employee did to provide knowing support to Al Qaeda.

Plaintiffs also allege that Dr. Barzinji is "personally acquainted" with designated sponsor of terrorism Ahmed Nasreddin.  (Plaintiffs' Opp., at 8.)   But an allegation of an "acquaintance" does not create or state a claim.  Plaintiffs have not alleged either that Dr. Barzinji knew Nasreddin to be a financier of terrorism -- Nasreddin was not designated until 2002 -- or that he knowingly participated in any action to support Nasreddin, much less Al Qaeda or the September 11th Attacks.  Again, Plaintiffs have not alleged that Dr. Barzinji knew of al Qaeda's illegal activities, "desired to help those activities succeed, and . . . engaged in some act of helping the illegal activities." *In re Terrorist Attacks II*, at 564 (*citing Boim*, 291 F.3d at 1023-24.)

Plaintiffs also allege that Dr. Barzinji was a director of the World Assembly of Muslim Youth ("WAMY"), and a founding member of WAMY in Saudi Arabia.  (Plaintiffs' Opp., at 8.) However, the there is no allegation in any complaint alleging that Dr. Barzinji was a director of

WAMY.  Rather, he is only alleged to be "of" WAMY (*Continental*, ¶ 376) [10] or on the board of WAMY (*New York Marine*, ¶ 454).  The allegation that Dr. Barzinji was a "founding member" of WAMY in 1972, even if true, is too remote in time to support a claim since Al Qaeda would not come into existence until many years later, and fails to allege any knowing or intentional actions by Dr. Barzinji on behalf of WAMY in support of Al Qaeda.  (*Ashton*, at ¶ 203.)

To state a claim against Dr. Barzinji, Plaintiffs must allege that Dr. Barzinji knowingly and intentionally participated in some action on behalf of WAMY for which it could be held liable for the September 11th attacks.  Plaintiffs have not alleged that Dr. Barzinji did anything to support Al Qaeda or the September 11th attacks for WAMY, or knew that WAMY was supporting Al Qaeda.  Rather his alleged liability is based solely on his status as an officer or "founding member" and that is insufficient to state a claim.  *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976); *see also In re Terrorist Attacks II*, at 567-68 (dismissing claims against Abdulrahman Alamoudi based upon claims that he was associated with certain entities).

## III.   THE CLAIMS AGAINST DR. BARZINJI SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs had the opportunity to amend their complaints on September 30, 2005 with the benefit of the Court's September 21, 2005 Opinion and Order detailing precisely what they must have alleged to withstand motions to dismiss.  All of the Plaintiffs filed "amended" pleadings with this notice and it would be futile to provide Plaintiffs yet another opportunity to amend, as it

---

[10] As noted in the Motion to Dismiss, the *Continental* Plaintiffs' allegation that WAMY's and Dr. Barzinji's assets have been frozen is not correct, and the Court should take judicial notice of this fact.  *See* 70 Fed. Reg. 38,256 (July 1, 2005) or http://www.ustreas.gov.press/archive.html for the compete list of individuals and entities that have had their assets frozen.  Neither WAMY nor Dr. Barzinji is on the list.

is clear that if Plaintiffs could have stated a claim against the Moving Defendants they already would have done so.

## CONCLUSION

For all the foregoing reasons, Dr. Barzinji respectfully requests that the Court grant his Motion and dismiss all of the claims asserted against him in *Ashton, Burnett, New York Marine, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,


Dated:   March 8, 2006                    By:  /s/ Nancy Luque
                                              Nancy Luque (NL-1012)
                                              Jay Hanson (admitted *pro hac vice*)
                                              Steven K. Barentzen (SB-8777)
                                              DLA PIPER RUDNICK GRAY CARY US LLP
                                              1200 Nineteenth Street
                                              Washington, DC  20036-2247
                                              Tel: 202-861-3900
                                              Fax: 202-223-2085

                                              *Attorneys for Jamal Barzinj*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2006, I caused an electronic copy of the foregoing Memorandum Of Law Of Jamal Barzinji In Support Of Motion To Dismiss Pursuant To Rule 12(B)(6) For Failure To State A Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)