**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-9849 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT YESLAM BINLADIN'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I. PLAINTIFFS' ALLEGATIONS AGAINST YESLAM BINLADIN CANNOT SUPPORT PERSONAL JURISDICTION UNDER ANY THEORY ................................ 1

    A. Plaintiffs Cannot Make A Case For General Jurisdiction ........................................ 1

        1. The Corporate Contacts Cited Are Legally Irrelevant ............................... 2

        2. The Few Remaining Alleged Contacts Are Also Insufficient ................... 5

    B. Plaintiffs Cannot Make A Case For Specific Jurisdiction ...................................... 7

        1. Plaintiffs Do Not Answer Yeslam's Argument On The UBS Account ...... 7

        2. Plaintiffs' Reliance On "Investigations" Establishes Nothing .................... 7

    C. There Are No Disputed Jurisdictional Facts On Which To Base Discovery .......... 8

II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST YESLAM BINLADIN ............... 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

### CASES

*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*,
   385 F.3d 1291 (10th Cir. 2004) ...................................................................................5

*Craig v. First Web Bill, Inc.*,
   No. Civ. A.04-CV-1012 DGT, 2004 WL 2700128 (E.D.N.Y. Nov. 29, 2004)...................2

*Dember Constr. Corp. v. Staten Island Mall*,
   392 N.Y.S. 2d 299 (N.Y. App. Div. 1977) .......................................................................2

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   258 N.E. 2d 202 (N.Y. 1970)............................................................................................2

*Hennigan v. Taser Int'l, Inc.*,
   No. 00Civ2981 (MBM), 2001 WL 185122 (S.D.N.Y. Feb. 26, 2001)...............................1

*Lamar v. Am. Basketball Association*,
   468 F. Supp. 1198 (S.D.N.Y. 1979).............................................................................2, 3

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996) .........................................................................................5

*Ratliff v. Cooper Laboratories, Inc.*,
   444 F.2d 745 (4th Cir. 1971) ...........................................................................................6

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).......................................................................................................10

*Sandstrom v. ChemLawn Corp.*,
   904 F.2d 83 (1st Cir. 1990).............................................................................................6

*Schenker v. Assicurazioni Generali, S.P.A., Consol.*,
   No. 98 Civ. 9186 (MBM), 2002 WL 1560788 (S.D.N.Y. July 15, 2002) ....................4, 6

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)........................................................................................................2

*Stilley v. Am. Chambers Life Ins. Co.*,
   No. 91 Civ. 7022 (RLC), 1992 WL 147906 (S.D.N.Y. June 18, 1992) ............................4

*In re Terrorist Attacks on September 11, 2001 ("Terrorist Attacks I")*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005).....................................................................3, 9, 10

*In re Terrorist Attacks on September 11, 2001 ("Terrorist Attacks II")*,
    392 F. Supp. 2d 539 (S.D.N.Y. 2005)..........................................................................3, 4, 10

*Walsh v. Maryland Bank*,
    806 F. Supp. 437 (S.D.N.Y. 1992)...........................................................................................8

Plaintiffs leave virtually unaddressed Yeslam Binladin's arguments in support of his Motion to Dismiss the Complaints against him. Instead, they spend the bulk of their brief and accompanying affidavits hurling alleged jurisdictional contacts of entities they vaguely tie to Yeslam Binladin, hoping to create the appearance of a need for jurisdictional discovery. Cutting through the chaff, one can plainly see that the central facts establishing the lack of jurisdiction over and the lack of a claim against Yeslam Binladin are undisputed.

## I. PLAINTIFFS' ALLEGATIONS AGAINST YESLAM BINLADIN CANNOT SUPPORT PERSONAL JURISDICTION UNDER ANY THEORY

### A. Plaintiffs Cannot Make A Case For General Jurisdiction

Remarkably, Plaintiffs' argument for general jurisdiction contains not a single citation to their Complaints, RICO Statements, More Definite Statements ("MDSs"), or even their faulty "Amended Complaints" of September 30, 2005.[1] Plaintiffs choose to ignore the evidence Yeslam submitted to rebut the jurisdictional allegations found in those documents and instead rely on a host of new allegations often based on nothing more than conclusory assertions, speculation, or unsubstantiated, unattributed hearsay. While we address below the "evidence" on which Plaintiffs claim to rely, Plaintiffs cannot withstand a jurisdiction-testing motion simply by offering new, unsubstantiated allegations when a Defendant rebuts the claims Plaintiffs have previously made. When ruling on a Rule 12(b)(2) motion, "affidavits premised on personal knowledge are credited over contradictory affidavits based on information and belief,"[2] much less on mere speculation.[3]

---

[1] *See* Plaintiffs' Consolidated Memorandum of Law In Opposition To Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints, Feb. 3, 2006 (MDL Docket #1664) ("Pl. Opp.") at 3-12.

[2] *Hennigan v. Taser Int'l, Inc.*, No. 00Civ2981 (MBM), 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001).

[3] The legal deficiencies in Plaintiffs' proffered affidavits are addressed in Defendant Yeslam Binladin's concurrently filed Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié and accompanying Memorandum in Support, March 10, 2006 (MDL Docket #1720-1721) ("Motion to Strike").

1.      **The Corporate Contacts Cited Are Legally Irrelevant**

Plaintiffs point to an array of corporations with which Yeslam allegedly has been involved, and which they assert have U.S. contacts. *See* Pl. Opp. at 3-10. They detail these asserted corporate contacts and rely on *International Shoe* for the proposition that jurisdiction is appropriate over "a corporation" that "conduct[s] activities within a state." *See id.* at 11 (internal quotations omitted). Then, without asserting any U.S. conduct by Yeslam in his individual capacity, Plaintiffs argue for jurisdiction, not over the corporations, but over Yeslam personally. *See id.* at 11-12. They cite no authority for this argument, and in fact it is contrary to well-established law regarding respect for corporate separateness in a jurisdictional analysis.

"[T]he mere fact that a non-resident defendant is a shareholder, or even controlling shareholder, of a corporation which is amenable to personal jurisdiction in New York does not, without more, subject him or her *individually* to [general] personal jurisdiction . . . ." *Craig v. First Web Bill, Inc.*, No. Civ. A.04-CV-1012 DGT, 2004 WL 2700128, at *4 (E.D.N.Y. Nov. 29, 2004) (granting motion to dismiss for lack of personal jurisdiction).[4] Similarly, the mere fact that defendants are officers or directors of a corporation in the forum state "does not demonstrate that [they] have purposefully availed themselves of the privilege of conducting activities within the forum State, in a way that would justify bringing them before a [forum State] tribunal." *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (internal quotation omitted); *see also Craig*, 2004 WL 2700128, at *3 (holding that "an officer of a corporation does not subject himself to [general] personal jurisdiction under § 301 unless the officer was doing business in the state in his or her

---

[4] Indeed, even the "fact that [the defendant] is the sole . . . shareholder is insufficient reason to disregard the [corporation's] separate corporate entity." *Lamar v. Am. Basketball Ass'n*, 468 F. Supp. 1198, 1204 (S.D.N.Y. 1979) (citing *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 258 N.E. 2d 202 (N.Y. 1970); *Dember Constr. Corp. v. Staten Island Mall*, 392 N.Y.S. 2d 299 (N.Y. App. Div. 1977)).

2

individual capacity").[5]

Indeed, this Court has repeatedly held that holding officer or director positions or owning shares and other passive investments in the United States does not establish jurisdiction. *See In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks I*"), 349 F. Supp. 2d 765, 812 (S.D.N.Y. 2005) (rejecting general jurisdiction over Prince Sultan who "is the ex-officio Chairman of the Board of Saudi Arabia Airlines, 'which does business in the United States and internationally'"); *id.* at 820-21 (dismissing Abdulrahman bin Mahfouz because being an officer and director of "entities that are alleged to have U.S. contacts" and "a shareholder in a United States company [are] not sufficient to establish general personal jurisdiction"); *In re Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks II*"), 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("Prince Salman's ownership of shares in Texas corporations, on its own, cannot be considered sufficiently systematic and continuous to establish general jurisdiction.").

With few exceptions, Plaintiffs' new claims involve Yeslam's alleged involvement as a minority shareholder, officer, or director of companies with ties (directly or indirectly) to the United States. While Plaintiffs make broad assertions about these alleged ties in their brief (Pl. Opp. at 4-9), such assertions, not found in their Complaints, cannot be considered unless

---

[5] Plaintiffs have not argued that this Court can or should "pierce the veil" of any of the corporations they discuss, likely because they recognize that it is "an undertaking that the New York courts are noticeably reluctant to engage in." *Lamar*, 468 F. Supp. at 1204. Nor do they put forth any evidence that would support such an extraordinary move, particularly where, as here, the corporate entities that Plaintiffs claim had U.S. contacts have no alleged involvement in the events giving rise to their claims. To justify veil-piercing, "[t]here must be sufficiently particularized statements from which it can be inferred that the corporation is a *mere 'dummy'* for its individual stockholders who are in reality carrying on the business in their personal capacities for *purely personal* rather than corporate ends." *Id.* (emphasis added). Although Plaintiffs' witnesses speculate or offer "opinions" that Yeslam uses SICO for his own personal interests, Declaration of Jean-Charles Brisard, Feb. 1, 2006 ("Brisard Decl.") ¶ 15 (Ex. B. to Declaration of Jodi Westbrook Flowers (MDL Docket #1665) ("Flowers Decl.")); Affidavit of Carmen Binladin, Feb. 1, 2006 ("Carmen Aff.") ¶ 26 (Ex. A to Flowers Decl.), they contradict that speculation with claims that Yeslam holds only an indirect 25% interest in SICO, that SICO "is the international investment arm of the Saudi Binladin Group" with "numerous subsidiaries," and that it has engaged in business dealings with third-party companies to provide new opportunities to its "customers," *see* Brisard Decl. ¶¶ 11, 14, 17, Ex. 1; Carmen Aff. ¶ 17, Ex. A(2) (part 1), just as a corporation "carrying on the business . . . for . . . corporate ends" would. *See Lamar*, 468 F. Supp. at 1204.

3

supported by admissible evidence.[6]  To the limited extent Plaintiffs provide any admissible evidence in support of their claims, it illustrates corporate (not personal) contacts too remote in time to support jurisdiction,[7] since none of the relevant evidence pertains to a time later than 1998.  *See, e.g.*, Flowers Decl., Ex. A(2) (1984 SICO brochure), Ex. A(4) (1983 Saudi Investors Inc. memo), Ex. C (1988 real estate transactions), Exs. D, E, and F (1993-98 corporate records).[8]  Moreover, while Plaintiffs rely primarily on allegations regarding a Swiss company called Saudi Investment Company ("SICO")[9] and its alleged "numerous subsidiaries," Pl. Opp. at 6; *see id*. at 5-9, they concede that SICO, as well as several other companies Plaintiffs discuss in their brief, is owned by Falken Limited, a Cayman corporation in which Yeslam Binladin owns only a 25% interest.[10]

On the opposite extreme, Plaintiffs also rely on a possible future contact:  a 2005

---

[6] *See Stilley v. Am. Chambers Life Ins. Co.*, No. 91 Civ. 7022 (RLC), 1992 WL 147906, at *2 (S.D.N.Y. June 18, 1992) ("briefs do not constitute evidence that the court can consider on a motion to dismiss" for lack of personal jurisdiction).  The hearsay affidavits of Plaintiffs' "witnesses" are not admissible evidence.  *See supra* n.3.

[7] *See Terrorist Attacks II*, 392 F. Supp. 2d at 559 (holding Prince Salman's contacts with the U.S. in the late 1980s "too far removed in time" to support general jurisdiction); *see also Schenker v. Assicurazioni Generali, S.P.A., Consol.*, No. 98 Civ. 9186 (MBM), 2002 WL 1560788, *4 (S.D.N.Y. July 15, 2002) (holding that pre-filing contacts are examined *only* to establish the *pattern* of contacts existing at the time of filing).

[8] Plaintiffs claim that Yeslam served as director of two Delaware corporations that, according to Plaintiffs' evidence, ceased to exist by 1998:  Knutstorp, which Plaintiffs' exhibits show ceased to exist on December 31, 1996 when it merged with Kinnekulle, Inc., *see* Flowers Decl., Ex. F (Agreement and Plan of Merger of Knutstorp, Inc., With and Into Kinnekulle, Inc. ¶¶ 1.1, 1.3); and Kinnekulle, which ceased to exist on December 15, 1998.  *See id.* (Agreement and Plan of Merger of Kinnekulle, Inc. With and Into Falken Limited ¶¶ 1.1, 1.3).  In addition, Plaintiffs claim in their brief that Daniel Realty Company was active in the U.S. until 2002 (Pl. Opp. at 7), but they do not submit any evidence that Yeslam ever had an ownership or management role in that company, and to the extent they claim, on "information and belief," that companies with which Yeslam was associated entered into partnerships with Daniel, they present no evidence in support of such partnerships past the early 1980s.  Brisard Decl. ¶¶ 21, 24.

[9] The only alleged U.S. contact of SICO after 1985 comes from Brisard, who claims without any support that SICO "has most recently begun managing SBG's investments in New York." Brisard Decl. ¶ 11.  A mere five paragraphs later, however, Brisard's Declaration reveals that this claim is a distortion of a French newspaper article, which states that SICO "monitor[s] and manage[s] . . . investments made for us (members of the bin Laden family) *by brokers* in New York." *Id.* ¶ 16 and n.11 (citing "Yesla[m] bin Laden:  What I know About My Half-Brother Usama," *Le Temps* (Jan. 25, 2002) (emphasis added)).  Thus, even crediting Brisard's hearsay media source, SICO was not doing business in New York.

[10] Brisard Decl., Ex. 1.

4

interview in which Yeslam allegedly expressed a desire to sell products in the United States. Pl. Opp. at 10. A subjective desire to do something in the future – with no evidence of that desire's fulfillment – cannot possibly provide a jurisdictional contact. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1298 (10th Cir. 2004) (holding that a general desire that a party will use a product in a general region is too remote to qualify as purposeful availment). Moreover, events three years after the filing of the Complaints cannot support a finding of general jurisdiction. *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300-01 (D.C. Cir. 1996) (post-filing conduct provides "no basis for personal jurisdiction").

### 2. The Few Remaining Alleged Contacts Are Also Insufficient

Beyond the legally irrelevant corporate contacts, Plaintiffs' claim of general jurisdiction rests on only two asserted contacts: the alleged ties to three residential properties in California, and the holding of a pilot's license issued by the U.S. Federal Aviation Administration ("FAA") for the European region. The California properties were addressed in Yeslam's opening brief, and Plaintiffs fail to respond to the substance of the argument. Three critical facts are undisputed: (1) Yeslam has no connection to either of two California addresses at which Plaintiffs originally claimed he was "listed" in the late 1990s;[11] (2) Yeslam was once the record owner as agent for his brother, Ibrahim, of a property in Los Angeles, but Yeslam never lived at or even visited that property;[12] and (3) Yeslam ceased to be the record owner of the property no later than 1998.[13] Plaintiffs have conceded elsewhere that owning property (and even residing)

---

[11] *See* Affidavit of Yeslam Binladin, Oct. 27, 2005 ("Yeslam Aff.") ¶ 7 (Ex. A to Memorandum in Support of Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints, Oct. 28, 2005 (MDL Docket #1452) ("Yeslam MTD")). Plaintiffs have apparently abandoned this claim, as their opposition does not address it.

[12] It is unrebutted that Yeslam last visited the United States in 1981, two years before the property was purchased in 1983 on behalf of his brother. *See* Yeslam Aff. ¶¶ 5-6; Pl. Opp. at 10.

[13] *See* Pl. Opp. at 10 (stating, in an apparent typographical error, that the property was transferred to Ibrahim "in 1988"); Carmen Aff. ¶ 24 (property transferred in 1998); *see also* Yeslam Aff. ¶ 6 and Ex. 1 (deed).

5

in the U.S. a few years prior to the filing of their Complaints does not give rise to general jurisdiction.[14] Moreover, Plaintiffs provide no admissible evidence to refute the fact – established by the records of the Los Angeles County Office of the Assessor and by the declaration of Ibrahim Binladin – that Yeslam was never the beneficial owner of the property.[15]

Equally unavailing is Plaintiffs' reliance on an FAA pilot's license, *see* Pl. Opp. at 10, 11; Brisard Decl. ¶ 8, which was issued to Yeslam as a resident of "Geneva, Switzerland" for the "European" Region by the FAA.[16] Yeslam is no different than thousands of other pilots who, by virtue of reciprocal licensing arrangements, use FAA licenses to fly in Europe. Because Plaintiffs do not submit evidence to contradict that Yeslam has not been in the United States in 25 years, *see* Yeslam Aff. ¶ 5, they cannot claim that he used the license to "do business in" the United States. In any event, such a license could not establish jurisdiction. *Cf. Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 89, n.6 (1st Cir. 1990) (holding that a mere license to do business was insufficient to confer general jurisdiction); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (holding a corporation's license to do business insufficient because the corporation did not use the license in the forum).[17]

---

[14] *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Abdullah Binladin, Jan. 30, 2006 (MDL Docket # 1653), at 17 n. 8 (acknowledging the lack of general jurisdiction over Abdullah Binladin because he "was no longer residing in Virginia at the time Plaintiffs filed their claims against him."); *see also Schenker*, 2002 WL 1560788, at *4.

[15] *See* Yeslam Aff. ¶ 6 and Ex. 2; Declaration of Ibrahim Binladin, June 22, 1999, *Bin Ladin v. Bin Ladin*, No. BC212648 (L.A. Superior Ct., Central District) (Ex. A).

[16] *See* FAA Pilots Directory, *available at* www.lexis.com ("Public Records," "People, Business & Asset Locators," "License Locator," "Directories," "FAA Pilots Directory," "Yeslam w/2 Binladin") (last visited Mar. 9, 2006) (Ex. B).

[17] Also irrelevant is Plaintiffs' claim that Yeslam flies a plane registered to a Delaware corporation, Roxbury Technologies, which Plaintiffs label "an affiliate of Falken Ltd." Pl. Opp. at 11. Even if these assertions are true, Plaintiffs concede that any such plane is used "throughout Europe," rather than the United States, *see* Brisard Decl. ¶10, so the registry of the aircraft is beside the point for establishing Yeslam's contacts with the United States.

6

### B.     Plaintiffs Cannot Make A Case For Specific Jurisdiction

Plaintiffs' claim of specific jurisdiction over Yeslam Binladin (Pl. Opp. at 12-16) now rests on only two things: (1) what Plaintiffs mischaracterize as a "joint" UBS bank account with OBL; and (2) alleged government investigations of his activities. In neither case, however, do Plaintiffs address the fundamental flaws in these allegations set forth in Yeslam's opening brief.

#### 1.     Plaintiffs Do Not Answer Yeslam's Argument On The UBS Account

Regarding the UBS account, Plaintiffs concede the two key facts that defeat their claim. First, they admit the account – one of many set up for each of the Binladin siblings in 1990 after Saddam Hussein's invasion of Kuwait – was essentially emptied in October 1991, long before anyone claims OBL's terrorist intentions were known.[18] Second, Plaintiffs never claim the funds from this account were ever transferred to OBL, and in fact admit they were transferred to Haydar Binladin in Saudi Arabia.[19] There can be, therefore, no inference that this account was intended to or did in fact aid al Qaeda's attacks on the United States.[20]

#### 2.     Plaintiffs' Reliance On "Investigations" Establishes Nothing

Plaintiffs also rely on various alleged government investigations into Yeslam Binladin's affairs. There is no dispute, however, that none of those purported investigations has resulted in

---

[18] *See* Yeslam MTD at 10-11. Brisard acknowledges that the account was essentially empty by 1991, *see* Brisard Decl. ¶ 50, and agrees that "[a]s stated by Yeslam Bin Laden . . . the bank account was closed by the Swiss bank (UBS) in 1997 '*because it had been inactive for six years.*'" *Id.* ¶ 57 (emphasis added). Even Brisard does not contend that anyone had knowledge of OBL's terrorist plans in 1990-91 when the UBS account was active. He dates the earliest allegations of OBL's involvement with terrorist activities to 1993, and does not contend that he began targeting the United States until several years later. *See id.* ¶ 56.

[19] Brisard Decl. ¶ 50; *see also* Yeslam MTD at 10-11.

[20] Elsewhere in their brief (Pl. Opp. at 9, 21), Plaintiffs mention another bank account held by Cambridge Engineering, which we addressed in our motion. *See* Yeslam MTD at 11-12. Again, Plaintiffs submit no competent evidence to dispute the sworn testimony of both Yeslam and a director of Cambridge that Yeslam had no involvement in the management of Cambridge or its bank accounts. *See* Yeslam Aff. ¶ 11; Affidavit of Yves Bruderlein, Jan. 24, 2006 ("Bruderlein Aff.") ¶ 12 and Exhibit 1 (Ex. C). Nor do they offer evidence to contradict Bruderlein's testimony that no funds from that account were ever transferred to OBL. *See id.* ¶¶ 2, 9, 14 (Ex. C). What Brisard claims he "understand[s]" U.S. authorities "believe[d]" in 2001 (Brisard Decl. ¶ 67) is not only rank hearsay but is undermined by the lack of any government action as to those accounts in the subsequent four years.

any charges, designation, asset freeze or other adverse action against him.  Plaintiffs speculate –
with no attempt at proof – that no charges have been brought because Yeslam entered into the
"Swiss version of a non-prosecution agreement."[21]  In fact, such non-prosecution agreements are
unlawful under Swiss law.[22]  In any event, the mere existence of a government investigation –
particularly one kept alive through false claims by Plaintiffs' own consultant[23] – does not permit
an inference that Yeslam engaged in any wrongdoing, much less provided any material support
to al Qaeda's terrorist attacks on the United States.

      **C.**      **There Are No Disputed Jurisdictional Facts On Which To Base Discovery**

Although Plaintiffs' largely hearsay-based affidavits are calculated to create the
appearance of disputed facts warranting jurisdictional discovery, Plaintiffs identify no specific
issues on which further discovery might uncover sufficient facts to sustain jurisdiction.  This
failing is especially significant because Plaintiffs' consultant, Brisard, and Yeslam's estranged
wife, Carmen, both claim that they have spent years investigating Yeslam's assets and that they
have had access to the records developed in the bitterly contested 10-year divorce battle between
Carmen and Yeslam, and Brisard further claims to have had access to information developed in
various government investigations of Yeslam.[24]  Despite all of that investigation, Plaintiffs have
produced not a shred of admissible evidence supporting jurisdiction over Yeslam.  They cannot
create factual disputes warranting discovery simply by relying on media stories and hearsay
declarations.  Even on a motion to dismiss, affidavits based on personal knowledge must trump
those based only on hearsay and speculation.  *See Walsh v. Maryland Bank*, 806 F. Supp. 437,

---

[21] Pl. Opp. at 14.

[22] *See* Declaration of Gérard Piquerez and attachments, March 10, 2006 (Ex. D).

[23] *See* Yeslam MTD at 9.

[24] *See* Brisard Aff. ¶¶ 14, 47-49; Carmen ¶¶ 10, 13.

440–43 (S.D.N.Y. 1992) (holding that jurisdictional discovery was not warranted where plaintiff in his affidavits and pleadings had "failed to make even a threshold showing that discovery is likely to uncover a basis for jurisdiction. The defendants have submitted numerous affidavits, none of which is substantially challenged or contradicted. The plaintiff has offered only speculation."). Plaintiffs' request for jurisdictional discovery should therefore be denied.

## II.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST YESLAM BINLADIN

Plaintiffs' response to Yeslam Binladin's argument that they have not alleged specific facts supporting a knowing and intentional violation of the Anti-Terrorism Act is simply a boilerplate reference to their Complaints: "The complaints and RICO statements cited *supra* in footnote two demonstrate otherwise." Pl. Opp. at 22. [25] Significantly, Plaintiffs' footnote two, and thus their argument, does not cite or rely on "amended complaints" filed on September 30, 2005.[26] Yet, as argued in our opening brief, the operative complaints contain only two specific allegations against Yeslam: (1) that the Mohammed Binladin Organization ("MBO") is a wholly-owned subsidiary of SBG;[27] and (2) that Yeslam was on the Board of MBO.[28] Plaintiffs allege no personal involvement of any kind by Yeslam in any conduct of MBO,[29] and therefore

---

[25] Plaintiffs concede that they fail to state a Torture Victim Protection Act ("TVPA") claim against Yeslam, Pl. Opp. at 24, n.12 (citing *Terrorist Attacks I*, 349 F. Supp. at 828), and acknowledge this Court's holding that their negligence claims must be dismissed for failure to allege a duty. *Id.* (citing *Terrorist Attacks I*, 349 F. Supp. 2d at 831). Plaintiffs also recognize the Court's ruling that the intentional tort claims asserted by *Federal Insurance* and *WTC* are time-barred. *Id.* (citing *Terrorist Attacks I*, 349 F. Supp. 2d at 829).

[26] *Compare* Pl. Opp. at 1, n.2, *with* Yeslam MTD at 3-5 (describing operative and defective complaints). Although Plaintiffs elsewhere in their briefs argue that those "amended complaints" and RICO statements are not improper, this Court should decline to consider them for all the reasons stated in Yeslam's opening brief, *see id.*, as well as those stated in the reply brief of Abdullah Binladin. *See* Defendant Abdullah Binladin's Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Complaints, Mar. 1, 2006 (MDL Docket #1705) at 8-10.

[27] *See Burnett* 3AC ¶ 325, *WTC* Compl. ¶ 638. This allegation is false. *See* Affidavit of Bakr Binladin, Jan. 25, 2006 ("Bakr Aff.") ¶ 5 and Exs. 1 & 2 (Ex. E); Affidavit of Omar Binladin, Jan. 25, 2006 ("Omar Aff.") ¶ 7 (Ex. F).

[28] *See WTC* Compl. ¶ 638.

[29] There is in any event no basis for alleging that MBO was engaged in any action that supported al Qaeda. *See* Motion to Dismiss of Bakr Binladin, et al. and accompanying Memorandum in Support, Jan. 27, 2006 (MDL

9

those allegations do not state an ATA claim against Yeslam. *See Terrorist Attacks I*, 349 F. Supp. 2d at 822 (dismissing Bakr, Omar, and Tariq Binladin on similar allegations). Plaintiffs make no argument to the contrary, other than to state their conclusion.[30]

Plaintiffs attempt to salvage their remaining claim (RICO) by ignoring clear, binding precedent.[31] Relying on *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), this Court has twice dismissed § 1962(c) RICO claims against other Defendants because, although "[t]he complaints allege the moving Defendants may have assisted al Qaeda, . . . they do not allege anything approaching active 'management or operation'" of that alleged enterprise. *Terrorist Attacks I*, 349 F. Supp. 2d at 827-28 (internal quotation and citation omitted); *Terrorist Attacks II*, 392 F. Supp. 2d at 565, 567-572. Plaintiffs ignore these decisions and instead rely on pre-*Reves* decisions[32] that applied a broader "participation in the enterprise" standard that the Supreme Court expressly rejected. *See Reves,* 507 U.S. at 178-79. Because Plaintiffs do not allege that Yeslam operated or managed the al Qaeda enterprise, their § 1962(c) claims must be dismissed. Their § 1962(d) RICO conspiracy claim likewise fails because the attenuated ties alleged cannot support finding "a conscious agreement" between Yeslam and the members of the al Qaeda enterprise. *See Terrorist Attacks I*, 349 F. Supp. 2d at 827.

## CONCLUSION

Plaintiffs' claims against Yeslam Binladin should be dismissed.

---

(continued…)

Docket #1644-1645) at 11, 19-20, 22.

[30] Because Plaintiffs fail to state an ATA claim, their claims for wrongful death, survival, trespass, intentional infliction of emotional distress, and violation of the Alien Tort Claims Act ("ATCA") must also be dismissed. *See Terrorist Attacks II*, 392 F. Supp. 2d at 566.

[31] Plaintiffs have apparently abandoned their § 1962(a) claim, *see* Pl. Opp. at 23 (arguing sufficient allegations "to sustain claims under both §§ 1962(c) and (d)"), likely because they have not and cannot allege the requisite investment injury. *See Terrorist Attacks I*, 349 F. Supp. 2d at 827.

[32] *See* Pl. Opp. at 23 (citing cases from the 1980s).

10

Dated:  March 10, 2006

Respectfully submitted,

/s/ Geoffrey S. Stewart

Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Stephen J. Brogan
Mary Ellen Powers
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

Lawrence Schoenbach (S.D.N.Y. #LS8497)
Law Offices of Lawrence H. Schoenbach
The Trinity Building
111 Broadway, 13th Floor
New York, New York  10006
Tel:  (212) 346-2400
Fax:  (212) 346-2400

*Attorneys for Defendant Yeslam Binladin*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2006, I caused an electronic copy of the foregoing Reply Memorandum in Support of Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints to be served by the Court's Electronic Case Filing System.

Date:   March 10, 2006

/s/ Stephen J. Brogan
Stephen J. Brogan

WAI-2205858