**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────x

*In re Terrorist Attacks on September 11, 2001*        **03 MDL 1570 (RCC)**
─────────────────────────────────────────x

This filing applies to:
    *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970 (RCC);
    *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279 (RCC);
    *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (RCC);
    *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (RCC);
    *World Trade Center Properties LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07280 (RCC).


REPLY MEMORANDUM OF LAW IN SUPPORT OF THE WORLD ASSEMBLY OF MUSLIM YOUTH IN SAUDI ARABIA'S AND THE WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL'S MOTION TO DISMISS AGAINST ALL PROPERTY DAMAGE PLAINTIFFS FOR FAILURE TO STATE A CLAIM


                                      Omar T. Mohammedi (OTM 7234)
                                      Law Firm of Omar T. Mohammedi, LLC
                                      200 Madison Avenue, Suite 1901
                                      New York, NY 10016
                                      (212) 725-3846

*Attorneys for defendants*
*WORLD ASSEMBLY OF MUSLIM YOUTH SAUDI ARABIA*
*WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL*

**INTRODUCTION**

Plaintiffs allege that just about every Islamic charity has contributed to September 11, 2001 terror attacks ("the 9/11 attacks"). The World Assembly of Muslim Youth ("WAMY") is one of those charities wrongfully swept up in Plaintiffs' broad litigation. Through their' "pleadings" and opposition brief ("Pl. Opp. Br."), Plaintiffs have tried, but failed, to allege that WAMY knowingly committed a criminal act, let alone one linked to al Qaeda or the 9/11 attacks.

Plaintiffs' Opp. Br. simply restates their familiar and ineffective conclusions while failing to include any relevant factual allegation in support thereof. Also many of Plaintiffs' allegations against WAMY are barred by the First Amend. Finally, Plaintiffs' causes of action under common and international law and RICO still fail to state claims upon which relief can be granted.

**LEGAL ARGUMENT**

**I.   Plaintiffs' procedural defects willfully violate Federal and Court Rules.**

This Court should note that the overwhelming majority of "factual" allegations listed throughout Pl. Opp. Br. against WAMY are taken from <u>Federal</u> Plaintiffs' RICO Stmts. Pl. Opp. Br. at 1 n. 2. Hoping to avoid the inevitable consequences of their pleading failures, Plaintiffs resort to mischaracterization of their Complaints by making up allegations not found in their Pleadings. Pl. Opp. Br. at 1-10. In addition, since this Court has forbidden all RICO Stmts., except <u>Federal</u>'s, to act as amendments to laintiffs' pleadings. Pl. Opp. Br. cannot serve as support for the claims of all other Plaintiffs. <u>See</u> Pl. Opp. Br. at 1-10; <u>see also</u> Def. Br. at 2-4. In contravention with the Rule 7 of the Court's Individual Rules, <u>N.Y. Marine</u> Plaintiffs never filed a RICO Stmt. against

1

WAMY. Instead they incorporated the <u>Federal</u> RICO Stmt into their Complaint. <u>See</u> <u>N.Y. Marine</u> Compl. at 57 n. 20.

Furthermore, by entering into a briefing schedule, Defendants did not contest Plaintiffs' right to file a RICO Stmt., as to the time of filing. Defendants, however, are perplexed by Plaintiffs' disingenuous argument that Defendants agreed with Plaintiff to allow for amendments and incorporation of their RICO Stmts. into their Pleadings. <u>See</u> Pl. Opp. Br. at 15.

Thus, this Court should strike all addendums, attachments and exhibits to the pleadings and consider only those allegations contained in the Complaints. <u>See</u> <u>Arnold v. Krause, Inc.</u>, 2004 WL 3574033, *8 (W.D.N.Y. July 23, 2004). <u>See also</u> Def. Br. at 3-4.

II. **Plaintiffs still confuse the applicable standard under Fed. R. Civ. P. 12(b)(6) and simply fail to state a claim.**

Plaintiffs have not only misconstrued the pleading requirements, but ignored this Court's previous opinions addressing such issues as well. This Court has directly addressed most of the decisive issues and arguments raised in Pl. Opp. Br., yet Plaintiffs fail to properly apply a single standard implemented by this Court. <u>See</u> Pl. Opp. Br. at 10-15. To "revisit the same legal issues . . . and general propositions over and over . . . again [does not help] the Court in trying to get all these things decided as quickly as possible." <u>See</u> Hearing Before Judge Richard C. Casey (Sept. 27, 2005) at 9, lines 6-9.

Instead, Plaintiffs base their entire lawsuit on the illogical and disconcerting assumption that merely inserting buzz words such as "knowingly" and "material support" into their pleadings will compel this Court to deny WAMY's Motion to Dismiss. <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d 765, 835 (S.D.N.Y. 2005) ("<u>Terrorist Attacks</u>"). <u>See also</u> Pl. Opp. Br. at 17-19. WAMY's motion to dismiss, on the

2

other hand, applies the standard adopted by this Court. Plaintiffs must plead that Defendants 1) knew of al Qaeda's illegal activities, 2) desired to help those activities succeed, and 3) engaged in some act of helping the illegal activities. See In re Terrorist Attacks on September 11, 2001, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("Terrorist Attacks II").

Plaintiffs' attempts to liken their allegations of mental state to those in Phelps v. Kapnolas, 308 F.3d 180 (2d. Cir. 2002), and Warren v. District of Columbia, 353 F.3d 36 (D.C. Cir. 2004), are futile. In both cases, Defendants committed acts 1) against Plaintiffs directly, and 2) that were wrong in and of themselves. In both cases Plaintiffs were able to "state[] who allegedly violated that right, when, by what means, and how the violation harmed [them]." Phelps, 308 F. 3d at 185-87.

Property Damage Plaintiffs' claims in this case are not against those who directly caused Plaintiffs' injuries, i.e. al Qaeda. Plaintiffs instead sued those who were conducting their normal business, but whom Plaintiffs conclude were helping al Qaeda. Simply put, Plaintiffs cannot allege that WAMY "had to know" it was helping al Qaeda by merely donating to humanitarian causes, as was its normal and legal course of business. Terrorist Attacks, 349 F. Supp. at 835; see also Terrorist Attacks II, 392 F. Supp. 2d at 571 (dismissing Ashton Compl. for failing to allege "knowledge and intent to further payee's violent criminal acts").

III. **Plaintiffs still fail to state a claim**.

    *a. Plaintiffs have disregarded the standard for pleading "fair notice."*

Plaintiffs' selective citations of cases such as Pelman ex rel. Pelman v. McDonald's Corp. 396 F.3d 508 (2d Cir. 2005), Linde v. Arab Bank, PLC, 384 F. Supp.

3

2d 571 (E.D.N.Y. 2005), and Twombly v. Bell Atlantic Corporation, 425 F.3d 99 (2d Cir. 2005) serve only to confuse the correct standard and mislead this Court. In reality the holdings of all three are consistent with this Court's previous Opinions.

Unlike the lower court in Pelman, WAMY and this Court are not asking that Plaintiffs specify details relevant to whether or not they brought about their own injuries, 396 F.3d at 511-12, nor are they asking that Plaintiffs "prove their case at the pleading stage," Pl. Opp. Br. at 10-11. Rather WAMY is challenging Plaintiffs to plead an act of wrongdoing that will give it "fair notice of . . . the grounds upon which [Plaintiffs' claims] rest[]." Terrorist Attacks, 349 F. Supp. 2d at 833.

Linde and Twombly both properly conducted analyses of Plaintiffs' factual allegations before holding that the Plaintiffs, respectively, succeeded in stating claims. Unlike Plaintiffs in Linde and Twombly, Plaintiffs here fail to allege in their Complaint a single factual act demonstrating WAMY's knowledge and desire to aid al Qaeda, let alone "provide some 'detail of time and place and the alleged effect of the conspiracy,'" a standard established by Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). A Complaint without "'factual assertions fails even on the liberal standard.'" Terrorist Attacks, 349 F. Supp. at 833.

To properly state a claim for conspiracy liability under the Anti Terrorism Act ("ATA"), Plaintiffs are obliged to make "factual assertions," Terrorist Attacks, 349 F. Supp. at 833 (emphasis added), that if true support the inference that WAMY knowingly and materially supported al Qaeda. Terrorist Attacks II, 392 F. Supp. 2d at 564. Plaintiffs have failed to do so.In particular, Pl. Opp. Br. at 4-7 cites to media articles from around the world. Such articles, however, are completely disconnected from al Qaeda and 9/11.

4

Plaintiffs, however, cannot go beyond these unverifiable news articles to at least allege facts connecting WAMY to any criminal activity let alone 9/11. See Def. Reply to Personal Injury Pl. Opp. Br. at 4; see also Def. Br. at 10.

### b. *Plaintiffs still have failed to plead a conspiracy claim against WAMY.*

#### i. Allegations of international conflicts fail to state a claim.

Pl. Opp. Br. attempts to pin liability on WAMY by tying it to certain international conflicts. Id. at 5-9. Through these allegations, Plaintiffs still fail to show that WAMY committed or conspired to commit any wrongful act let alone 9/11. Plaintiffs themselves recognize that WAMY "organize[d] relief operations. . . and provide[d] free medical care. . . ." Id. at 4. However, Plaintiffs cannot allege how WAMY's humanitarian efforts in these ravaged areas somehow resulted in 9/11 attacks. Plaintiffs' allegations only trivialize the efforts of those who struggled against genocide of Muslims in Bosnia and Kosovo, or those who provided relief to the victims of wars in Chechnya and Kashmir.

Plaintiffs' oversimplified attempts to paint any and all conflicts concerning Muslims as an "al Qaeda conflict" are utterly irrelevant to the issues before this Court. At best all that Plaintiffs can muster is that al Qaeda may have been present in the same region of conflict where humanitarian organizations like WAMY, the Red Crescent and even Red Cross provided humanitarian relief. Such statements do not support their conclusory allegations. These allegations are mere samples of the type of ineffective allegations contained all throughout Plaintiffs' "pleadings." See Def. Br. at 6-11.

#### ii. Alleged statements and acts by foreign governments and officials still fail to state a claim.

Plaintiffs claim that "[s]tatements by government officials . . . reveal WAMY's extensive role in supporting al Qaida activities. . . ." Pl. Opp. Br. at 6-7. They also assert

5

that WAMY Australia aided the Moro Islamic Liberation Front in the Philippines, see id., and that "Pakistani authorities deported 89 employees of ostensible NGOs in October 2001."[1] Id. at 7-8.

Plaintiffs never state what kind of "aid" WAMY allegedly provided, or how the aforementioned allegations constitute material support of al Qaeda, Plaintiffs also fail to identify or quote a single foreign government official in support of their claims. Plaintiffs' allegations are all undercut by the fact that none of the aforementioned countries have charged or indicted WAMY with any criminal or civil wrongdoings, let alone 9/11, nor have they expelled WAMY.

Plaintiffs themselves recognize that WAMY affiliates maintain operations all over the world, even under "increased scrutiny." Pl. Opp. Br. at 8. WAMY affiliates still have offices in Australia, Pakistan, Khasmir, Bosnia as well as a representative in the Philippines. WAMY still maintains friendly relationships with these governments.

Plaintiffs persist in alleging that some "employee of WAMY hand-delivered a recorded message from Osama bin Laden to an Arab television network." Pl. Opp. Br. at 7. For arguments refuting Plaintiffs' assertions on this issue, see Def. Br. at 13.

### iii. The claims against WAMY U.S.A. are frivolous and without merit.

The Federal "raid[] [on] WAMY U.S.[A.'s] offices in 2002" was not part of a SAAR Network investigation as Plaintiffs claim. Furthermore, Plaintiffs omit the fact that the Department of Justice returned all of the confiscated materials and found no wrongdoing by WAMY U.S.A., which is still doing business under the Virginia Corporations law.

---

[1] It is interesting to note that Plaintiffs never allege that WAMY-Pakistan employees were of the 89 employees actually deported.

6

Plaintiffs baldly allege that WAMY was "involved in [SAAR] terrorist activities." In typical fashion however, they allege no facts as to the nature of the alleged involvement. Pl. Opp. Br. at 8. As this Court has already held, such allegations do not provide adequate notice to Defendants. See Terrorist Attacks II, 392 F. Supp. 2d 539, 571-72 (S.D.N.Y. 2005). See also Def. Reply to Personal Injury Pl. Opp. Br. at 7.

Plaintiffs attempt to confuse this Court by citing Department of Treasury ("DOT") official Stuart Levey as having "expressed particular concern" about WAMY's financial activities. See Pl. Opp. Br. at 9. This Court should take judicial notice that not only was the subject matter of his testimony not related to the 9/11 attacks, but ironically the DOT, under which Mr. Levey himself works, has not designated WAMY as a SDGT.[2] In addition, as recently as February 26, 2006, WAMY was invited to, and attended, a seminar in Doha, Qatar on fighting against terrorism; the DOT and the FBI also attended. Afterwards they met with WAMY seeking to build a coalition against terrorism.

Plaintiffs are desperate to tie WAMY to Adel Batterjee and Benevolence International Foundation ("BIF") because of their respective SDGT statuses. Pl. Opp. Br. however ignores the exhibits and arguments put forth in Def. Br. at 7, 11, and 13.

### c. *Plaintiffs still make conclusory statements that fail to state a claim.*

Plaintiffs bring allegations that 1) fail to even identify WAMY in any way, or 2) are so generic that WAMY's name can be substituted with any other name in the world and the allegation would not lose its meaning. See, e.g., Pl. Opp. Br., at 2, 3, and 17-19;

---

[2] On p. 113 of the June 14, 2005 Oral Arguments, Plaintiffs' attorney made two misrepresentations: 1) that WAMY was an SDGT, and 2) that WAMY is the parent organization of the International Islamic Relief Organization ("IIRO"). First WAMY has never been designated as an SDGT. See http://www.treas.gov/offices/enforcement/ofac/ sdn/t11sdn.pdf. Second, WAMY has no connection at all to IIRO. See Declaraion of Saleh Al-Wohaibi, attached to Def. Br. as Exh. C.

Examples can also be found all throughout their pleadings. Defendants have already refuted these and other conclusory statements. See, e.g., Def. Br. at 8-11, see also Def. Reply to Personal Injury Pl. Opp. Br. at 7-8.

### d. *Plaintiffs' allegations are still barred by the First Amend. and must be dismissed.[3]*

Contrary to Plaintiffs' unsupported contentions, the standard for application of the First Amend. does not turn on whether Defendants "specific[ally] identif[y]. . . the statements or activities at issue." Property Damage Pl. Opp. Br. at 20. Additionally, the standard is not whether Defendants' publications and speeches "advance[d] al Qaida's conspiracy to attack America," id. at 21, or "further[ed] a conspiracy. . . in violation of [a] valid criminal statute." Id. at 17; Personal Injury Pl. Opp. Br. at 14. The test as laid down by the Supreme Court is whether or not the speech in question led to any "imminent lawless action." NAACP v. Claiborne Hardware Co., 458 U.S. 866, 907 (1982). Plaintiffs themselves cite, but fail to employ, a similar standard: i.e. whether the speech or writing at issue was "used as an integral part of [the] conduct in violation of a valid criminal statute." See Pl. Opp. Br. at 20 (citing United States v. Rowlee II, 899 F. 2d 1275, 1278 (2d Cir. 1990)).

Plaintiffs make the conclusory allegations that WAMY publications for example 1) ". . . advance[d] al Qaida's radical Islamist ideology. . .," and 2) ". . . legitimize[d] violent jihad against Christians and Jews. . . ." Property Damage and Personal Injury Pl. Opp. Brs. at 2, 6.[4] However, Plaintiffs fail to properly allege that the speech and

---

[3] This section addresses WAMY's First Amend. arguments as they apply to both Personal Injury and Property Damage Plaintiffs.
[4] See, e.g., MDS, attached to Personal Injury Plaintiffs Opp. Br. as Exh. 1, ¶¶ 42, 47, 50, 60-62, and 75.

8

publications played an "integral" or "imminent" role in al Qaeda terrorist attacks. NAACP, 458 U.S. at 907.

Plaintiffs do not allege that WAMY's alleged publications and speeches were anything other than "pure advocacy"[5] or the "zealous espousing of views,"[6] or even that they had anything at all to do with al Qaeda terror or the 9/11 attacks. In addition, by citing to O'Neill Pl. Opp. Br., Pl. Opp. Br. at 21 n. 8, Property Damage and Personal Injury Plaintiffs incorporate a plethora of cases as support for their First Amend. arguments that have nothing to do with the First Amend.[7] See Council on American Islamic Relations Reply to O'Neill Pl. Opp. at 7-8.

Moreover, this Court should not consider Plaintiffs' argument that the First Amend. does not apply to foreign citizens. Plaintiffs cannot have it both ways. Either WAMY U.S.A and WAMY S.A. are one entity, and thus a U.S. citizen; or separate and independent from one another.

Finally, despite Plaintiffs' claims, WAMY's guilt by association argument is also valid. Pl. Opp. Br. at 21. By not alleging facts that 1) such associations even existed, and 2) such associations contributed to Plaintiffs' injuries, this Court is left with the reality that Plaintiffs dragged WAMY into this suit only because it is an Islamic Organization.

---

[5] Plaintiffs cite to authority that states pure advocacy alone was not included within the scope of "material support" Pl. Opp. Brief at 10 (citing Humanitarian Law Project v. Reno, 205 F.3d 1130 (9th Cir. 2000)).

[6] According to Boim v. Quranic Literacy Inst. ("Boim I"), another case cited by Plaintiffs, "Congress did not attach liability for zealously espousing [an organization's] views." 291 F. 3d 1000, 1027 (7th Cir. 2002).

[7] In these cases, the indictments and pleadings contained sufficient allegations to get past the 12(b)(6) phase. For example, in U.S. v. Sattar, 395 F. Supp. 2d 79, 84-85 (S.D.N.Y. 2005), a criminal case unrelated to the First Amend., and in Boim v. Quranic Literacy Institute ("Boim II"), 340 F. Supp. 2d 885, 913 (N.D. Ill. 2004), the Court, after a review of the evidence in the record, dispensed with issues under a summary judgment analysis. In U.S. v. Rahman, 189 F. 3d 88, 118, another criminal case, the issues before the court dealt with admissibility of certain pieces of evidence, not sufficiency of pleading.. The indictment sufficiently alleged acts of Defendants' material support to bomb the World Trade Center in 1993.

9

The Supreme Court has long held guilt by association to violate the First Amend. See Def. Br. at 12.

### IV. **Plaintiffs still have not properly alleged the elements of their individual causes of action.**[8]

#### a. *Plaintiffs still have not stated a claim under their common law theories of liability.*

For the sake of judicial economy, Plaintiffs refer to the arguments contained in WAMY's Reply to Personal Injury Pl. Opp. Br. at 8-9.

#### b. *Plaintiffs lack standing to assert their nebulous claims under international law.*

Customary international law "does not create private rights of action. . . Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law." Friedman v. Bayer Corp.,1999 WL 33457825, *3 (E.D.N.Y. Dec. 15,1999).

#### c. *Plaintiffs still have not stated a claim under conspiracy, aiding and abetting, and/or punitive damages.*

For the sake of judicial economy, Plaintiffs refer to the arguments contained in WAMY's Reply to Personal Injury Pl. Opp. Br. at 8.

### V. **Plaintiffs' RICO claims are still without merit.**

"RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized. . . . Parroting statutory language . . . is inadequate." Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004). Plaintiffs' boilerplate RICO allegations do not state any of the requisite elements of a civil RICO claim. In addition, as detailed in Def. Br. at 18-21, Plaintiffs still fail to allege facts to

---

[8] Personal Injury Plaintiffs have elected to not pursue their claims under the Torture Victims Protection act.

10

support the inference that WAMY conducted an interest in al Qaeda through a pattern of racketeering, as required by § 1962. See Terrorist Attacks, 349 F. Supp. 2d at 827.

## **CONCLUSION**

Because Plaintiffs have had an opportunity to amend their Complaints with the benefit of this Court's two opinions but failed to assert any valid allegations, this Court should not only dismiss Plaintiffs' claims, but should dismiss Plaintiffs' claims with prejudice and without further leave to amend.

Dated: March 14, 2006

                                            Respectfully Submitted,

                                            _____S.S._____
                                            Omar T. Mohammedi (OTM 7234)
                                            The Law Firm of Omar T. Mohammedi, LLC
                                            200 Madison Avenue, Suite 1901
                                            New York, New York 10016
                                            T:     (212) 725-3846
                                            F:     (212) 202-7621

## CERTIFICATE OF SERVICE

I, ALLY HACK, Esq. do hereby certify that I served the within Reply Memorandum of Law in Support of the World Assembly of Muslim Youth in Saudi Arabia's and the World Assembly of Muslim Youth International's Motion to Dismiss against all Property Damage Plaintiffs on this date, on all parties in the case via filing with the Court's Electronic Case Filing (ECF) system.

Dated: March 15, 2006

ALLY HACK, ESQ.