UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-5738 and 03-CV-9849 (originally 1:02-1616 USDC (JR)) (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**PLAINTIFFS' RESPONSE TO DEFENDANT YESLAM BINLADIN'S MOTION TO STRIKE THE DECLARATION OF JEAN-CHARLES BRISARD, THE AFFIDAVIT OF CARMEN BIN LADIN, AND THE STATEMENT OF GUILLAUME DASQUIÉ**

April 21, 2006

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. LEGAL STANDARD .........................................................................................1

    A. DEFENDANT MISSTATES THE LAW ON THIS POINT .............................................1

    B. MOTIONS TO STRIKE ARE HIGHLY DISFAVORED..................................................4

    C. THE TRANSFEROR COURT PREVIOUSLY DECIDED THIS ISSUE IN THIS CASE .....................................................................................................................5

    D. THE JEAN-CHARLES BRISARD DECLARATION SHOULD NOT BE STRICKEN.....................................................................................................................6

    E. THE AFFIDAVIT OF CARMEN BIN LADIN SHOULD NOT BE STRICKEN .................9

    F. THE DASQUIÉ STATEMENT SHOULD NOT BE STRICKEN....................................11

    G. THE AFFIDAVITS OF YESLAM BINLADIN, OMAR BINLADIN AND BAKR BINLADIN ALL USE THE SAME LANGUAGE THAT DEFENDANT CLAIMS PROVIDES A BASIS FOR HIS MOTION TO STRIKE ..............................................11

III. CONCLUSION ................................................................................................14

# TABLE OF AUTHORITIES

CASES

*Abdullahi v. Pfizer, Inc.*, 2005 WL 1870811 (S.D.N.Y. Aug. 9, 2005) .......................................1, 2

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir.), cert. denied, 498
   U.S. 854 (1990) ........................................................................................................................2, 3

*Gulf Union Insurance Co. Saudi Arabia v. Bella Shipping Co. Ltd.*, 1994 WL 455117
   (S.D.N.Y. Aug. 22, 1994) ..............................................................................................................4

*In re: NBW Commercial Paper Litig., Inc.*, 826 F. Supp. 1448 (D.D.C. 1992) ...............................4

*Kieran Connell v. City of New York*, 230 F. Supp. 2d 432 (S.D.N.Y. 2002) ...................................4

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) .........................................2

*Rolls-Royce Motors, Inc. v. Charles Schmitt and co.*, 657 F. Supp. 1040 (S.D.N.Y. 1987) ............2

*Scott v. Reno*, 1998 WL 249178 at *3 (S.D.N.Y. May 18, 1998) ................................................2, 11

*Todhunter, Mandava & Assoc. v. I.C.C.I. (Holdings) Pty. Ltd.*, 1991 WL 166585 at *1
   (D.D.C. Aug. 14, 1991) .................................................................................................................5

*Walsh v. Maryland Bank, N.A.*, 806 F. Supp. 437 (S.D.N.Y. 1992) .................................................3

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir.
   1984), vacated on other grounds, 478 U.S. 1015 (1986) ..............................................................4

**RULES**

**Fed. R. Civ. P. 12** ..............................................................................................................................4

**Fed. R. Civ. P. 12(f)** ................................................................................................................4, 5, 14

**Fed. R. Civ. P. 56** .......................................................................................................................4, 14

**FEDERAL RULES OF EVIDENCE**

**Federal Rules of Evidence 607** .......................................................................................................5

**Federal Rules of Evidence 701** .......................................................................................................5

**I.      INTRODUCTION**

Defendant Yeslam Binladin (hereinafter "Defendant" or "Yeslam") has moved to strike the affidavits submitted with Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints and Memorandum in Support.  Defendant Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié (hereinafter "Motion").  Defendant argues that because the content of the affidavits is not based on personal knowledge, contain hearsay and argument, they should therefore be stricken by the Court.  For the reasons stated herein, Defendant is incorrect in his reading of both the law and the facts, and this Motion to Strike should be denied.[1]

**II.     LEGAL STANDARD**

    **A.      Defendant Misstates the Law on this Point**

Defendant claims that under "clear Second Circuit law" the affidavits at issue should be stricken in their entirety (Memo at 1) without ever identifying any Second Circuit cases that provides such clarity.  However, the case law relied upon by the Defendant abides by the well established standard:  "Although on a motion to dismiss a court is generally limited to examining the sufficiency of the pleadings, where, as here, a challenge is directed at the Court's . . . jurisdiction, the court may examine <u>materials</u> outside the complaint to resolve jurisdictional issues."  *Abdullahi v. Pfizer, Inc.*, 2005 WL 1870811 (S.D.N.Y. Aug. 9, 2005) at *6, emphasis added.  As a threshold matter, *Abdullahi* is a case interpreting the Alien Tort Statute and *forum non conveniens*, not a case analyzing the standard for a motion to strike.  *See Abdullahi*, *6-*15,

---

[1] In the alternative, should the Court take the extraordinary step of striking the affidavits proffered by Plaintiffs, it should strike all matters outside the pleadings, including the affidavits of Yeslam Bin Ladin, Abdullah Bin Ladin, Omar Bin Ladin and Bakr Bin Ladin and all exhibits thereto.  To allow one side to proffer affidavits – but not the other – would be both grossly unfair and manifestly in error.  *See* Section III *infra.*

1

*16-*18.  Moreover, in *Abdullahi*, while the Court properly decided what weight to give to portions of certain affidavits, there is simply no holding that supports Defendant's Motion to Strike plaintiffs' affidavits wholesale.  *Abdullahi* at *16.  What the case says, *inter alia,* is that in the context of a summary judgment motion – which this is not – the Court may decline to consider portions of an affidavit it deems based on hearsay.  *Abdullahi* at *16; *Scott v. Reno*, 1998 WL 249178 at *3 (S.D.N.Y. May 18, 1998).  The weight to be given any piece of proffered evidence is an entirely different matter than striking it from the record prior to any hearing or any discovery.  Defendant neglects to note that a motion to strike is an extreme measure and one which is highly disfavored.  *See* Section I.B.*, infra*.

A plaintiff has the burden of establishing *in personam* jurisdiction over a defendant.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *see also Rolls-Royce Motors, Inc. v. Charles Schmitt and co.*, 657 F. Supp. 1040, 1043 (S.D.N.Y. 1987).  To overcome a jurisdiction-testing motion where the district court relies solely on the pleadings and supporting affidavits, however, a plaintiff need only make a *prima facie* showing of jurisdiction.  *Robinson*, 21 F.3d at 507.

If a defendant moves to dismiss for lack of personal jurisdiction pursuant to 12(b)(2) prior to discovery, "a plaintiff may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990).  After discovery, "the plaintiffs' *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant . . . . At that point, the *prima facie* showing must be factually supported."  *Id.* (citations omitted).  Simply stated, this case is not at that stage of proceedings.  A *prima facie* showing or jurisdiction

2

pursuant to Rule 12 is not the same as a Rule 56 summary judgment showing, if it were, there would be no reason to have two separate rules.[2] The relevant law is this: when a defendant claims that a court lacks personal jurisdiction over it, the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, the plaintiff may defeat a jurisdiction challenge by asserting legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). At this preliminary stage, 'the plaintiff's *prima facie* showing may be established solely by allegations.' *Id.* After discovery, 'the plaintiff's *prima facie* showing ... must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.' *Id.* At this later stage, '[b]are allegations of jurisdiction will not suffice....' Although the parties in the case at bar have submitted affidavits, they have not conducted discovery. Plaintiff therefore defeats defendant's motion upon a *prima facie* showing of jurisdiction through his pleadings and affidavits. All pleadings and affidavits are construed in the light most favorable to plaintiff and where doubts exist, they are resolved in his favor. *See Walsh v. Maryland Bank, N.A.*, 806 F. Supp. 437 (S.D.N.Y. 1992), citations omitted.

In spite of this well-established law, Defendant argues "the Second Circuit forbids the Court to Consider" the affidavits at issue. Motion at 12. Not only is this ridiculous, but also it is not the law. Indeed, the primary case Defendants rely upon, *Hollander*, deals with the summary judgment standard for affidavits under Rule 56(e). Motion at 2, 9, 11 and 12. Once again, Defendant ignores both the procedural posture and the case law on a motion to dismiss, preferring instead to urge the Court proceed directly to a summary judgment. The Court must

---

[2] Where a defendant challenges jurisdiction after discovery by way of a motion brought under Rule 12(b)(2), "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Id.* Where a defendant contends in a motion under Rule 56 that undisputed facts demonstrate that jurisdiction is

decline this procedurally improper invitation, and instead apply the appropriate standards of Fed. R. Civ. P. 12, and weigh the evidence as the Court deems appropriate. *Walsh v. Maryland Bank, NA*, 806 F. Supp. 437 (S.D.N.Y. 1992).

A *prima facie* showing pursuant to 12(b)(2) is clearly not the same thing as the summary judgment showing pursuant to Rule 56. *See Gulf Union Insurance Co. Saudi Arabia v. Bella Shipping Co. Ltd.*, 1994 WL 455117 (S.D.N.Y. Aug. 22, 1994). Defendant either confuses or intentionally overlooks the law on this point. *Cf.* Fed. R. Civ. P. 12; Fed. R. Civ. P. 56. Defendant's arguments on the ultimate admissibility of evidence are baseless, improper and must be rejected as premature. *See* Motion at 1, 2, 5.

### B. Motions to Strike are Highly Disfavored

Assuming *arguendo* Defendant was operating under the correct rule in bringing this motion, the Federal Rules of Civil Procedure state:

> Upon motion made by a party . . . or upon the Court's own initiative at any time, the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

Fed. R. Civ. P. 12(f). Courts highly disfavor motions to strike and they routinely are denied. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015 (1986); *Kieran Connell v. City of New York*, 230 F. Supp. 2d 432 (S.D.N.Y. 2002); *See also In re: NBW Commercial Paper Litig., Inc.*, 826 F. Supp. 1448, 1474 (D.D.C. 1992) (recognizing the "high hurdle engendered by a motion to strike").

Given the "wide latitude of a pleading" under the federal rules and the strict standard for prevailing on a motion to strike, Defendant's motion must be denied. *Todhunter, Mandava &*

---

lacking, "the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought." *Id.*

*Assoc. v. I.C.C.I. (Holdings) Pty. Ltd.*, 1991 WL166585 at *1 (D.D.C. Aug. 14, 1991).  In addition, Defendant has failed to demonstrate, nor does he even allege, that the materials in question are "redundant, immaterial, impertinent or scandalous" as required by Rule 12(f).  Fed. R. Civ. P. 12(f).  Instead, Defendant refers the Court to the Federal Rules of Evidence 701 and 607.  Memo at 1, 2, 5.  The affidavits in question rebut facts placed in issue by the Defendant's own affidavit and the additional affidavits he submits as well as providing the *prima facie* showing necessary to confer jurisdiction.  The affidavits contain facts which are material to this case, are not cumulative, and the relevancy and weight of which can be properly considered by this Court when deciding the motion to dismiss.

        **C.**       **The Transferor Court Previously Decided this Issue in this Case**

The Court dealt with this issue previously in the context of Plaintiffs' Motion to Strike Exhibits from the Reply Brief of Defendant Al Haramain Islamic Foundation, Inc., *Burnett* D.C. Docket No. 140, 144.  In that instance, the Plaintiffs sought to strike certain exhibits outside the pleadings that the Defendant placed before the Court in the context of a Motion to Dismiss.  The Court determined that it would decide the relevance of the documents to the pending motion when deciding the motion.  Docket #144.  Given that the circumstances are similar, the same logic and outcome should govern the inclusion in the record of the affidavits in support of Plaintiffs' Memorandum in Response.

Indeed, given that al Haramain was not challenging jurisdiction, the rationale for not allowing matters outside the pleadings to be considered were arguably stronger.  Yet the Court denied Plaintiff's Motion to Strike Exhibits from the Reply Brief of Defendant Al Haramain Islamic Foundation, and in so doing the Court stated:

> Plaintiffs' motion to strike exhibits from the reply memorandum of Al Haramain Islamic Foundation is denied.  The relevance *vel non* of the

>   documents to Al Haramain Islamic Foundation's pending motion to
>   dismiss will be determined when the motion is decided.

*See* Order, Burnett D.C. Docket No. 144, J. Robertson. This Court should adopt the reasoning of the transferor Court and deny this motion to strike the Plaintiffs' affidavits, and it should go no further in considering this Motion.

### D. The Jean-Charles Brisard Declaration Should Not be Stricken

Defendant has gone to great lengths to attack the veracity and reputation of Mr. Brisard, and the present motion is further evidence of a concerted campaign to discredit him. As Brisard himself stated in his affidavit: "Yeslam has engaged in a ruthless campaign to harass and intimidate me." Brisard Dec. at 76. This motion is nothing more but a continuation of that campaign. At a minimum, Mr. Brisard should be allowed to submit a declaration in defense of these personal attacks on him. It is difficult to fathom how Defendant can seriously argue that the above statement is based on anything but Brisard's personal knowledge.

Defendant devotes much of this motion to strike in an attempt to reargue disputed facts. Motion at 4-13. The bulk of Defendant's argument is an improper and redundant re-hashing of arguments previously made in his Motion to Dismiss and Reply papers. Such additional arguments as to the import, meaning or veracity of the ultimate facts are grossly improper and should be disregarded by the Court. If the current Motion shows anything, it shows that a factual dispute indeed exists, and no amount of complaining by Defendant changes that reality.

Mr. Brisard begins his declaration by stating his qualifications and his experience in the realm of investigating al Qaeda financing, yet Defendant chooses to ignore the foundation for his Declaration and instead proceeds to grossly mischaracterize its contents and engage in personal attacks on his character. Motion 2-9. Regretfully, this is nothing new to Mr. Brisard – as referenced above he has been attacked personally and professionally by not just Defendant

6

herein, but by a number of powerful Middle Eastern businessmen and Defendants herein, apparently in an effort to scare him off.

Defendant's chief complaint appears to be that Mr. Brisard lacks personal knowledge of the matters he attests to. Mr. Brisard is an investigator, not an al Qaeda member, so it would be very curious indeed should he have been found to be present at all of the meetings or events he has uncovered in the course of his study. This does not mean he has no basis for his testimony. This particular "temporal" challenge to the Brisard Declaration is simply illogical.

Where Mr. Brisard uses the terms 'upon information and belief,' Defendant would penalize Plaintiffs because their witness is being cautious with his sources. Again, as set out above, the case law is clear that any remedy for such testimony is not a motion to strike, rather that the Court weigh the evidence accordingly. However, and contrary to Defendant's assertions, the majority of Mr. Brisard's testimony is <u>not</u> limited in this fashion, indeed, he goes out of his way to provide citation and detail.

Defendant's other central complaint is that Mr. Brisard's Declaration contains hearsay. Without examining whether any of the exceptions to the hearsay rule apply, Defendant would have that be the end of the story. Should that become the law of the case with respect to *prima facie* showings of personal jurisdiction, and should it be applied across the board, the Defendant would be in a difficult position given the hearsay-ridden affidavits he has proffered in challenging this Court's jurisdiction. *See* Declaration of Yeslam Binladin at 9, (speculating (incorrectly) on Mr. Brisard's publisher's motives); at 12, (detailing the reasons for his designation as an authorized signatory for the Swiss bank account benefiting Osama Bin Laden (who he had no contact with), Saddam Hussein's invasion of Kuwait, and the actions of Omar and Haydar Binladin); at 13, (reading of a letter from UBS to the Swiss Dept. of Justice and his

7

'understanding' of why the bank closed the account); at 16, (claim he is 'unaware' of any involvement by the Muslim World Leaque in Geneva in supporting terrorism);  at 18, (concluding that because Al Attas is a common name in Saudi Arabia, Ahmed Al Attas is not related to Mohammed Al Attas, "to the best of his knowledge");  at 19, (misstatements regarding Mr. Brisard and the French Magistrate Renaud Van Ruymbeke's investigation of Yeslam and Yeslam's defamation action against Brisard (without mentioning that the suit was dismissed).)  If Yeslam has his way, he is allowed to attack Brisard freely, but Brisard is not allowed to respond.

Defendant's arguments over the construction in the Sudan are so convoluted they are difficult to understand, much less respond to.  Motion at 6-7.  More to the point, and in light of Defendant's apparent desire to reach summary judgment, a genuine issue of material fact exists – and Defendant's regurgitation of his version of the facts, or a misreading of Brisard's Declaration, does not end the factual inquiry.

Defendant's "explanation" of the relationship, or non-relationship, between Saudi Binladin Group and Mohammad Binladin Organization is nothing more than a self-serving shell game intended to avoid the jurisdiction of this Court.  Motion at 7-8.  As for Yeslam's version of who controlled the UBS account, again, at best – a factual dispute exists.  Motion at 8.

Defendant's charge that Mr. Brisard is not a lawyer is flatly untrue, despite the lengths they appear to have gone to so claim.  Mr. Brisard has a law degree, and he has worked as in-house counsel in France.  Defendant, while charging Mr. Brisard with being misleading – fail to point out that it is not unusual for French corporate counsel not to keep the equivalent of their bar status active.   Brisard's situation is akin to a U.S. law professor or other non-litigator that holds a law degree, but is not a practicing member of the bar.  Mr. Brisard's legal work has all been corporate and in-house.

The fact he has not kept the equivalent of his bar dues active is both irrelevant and misleading, and simply shows the lengths to which Defendant will go to try and attack and discredit him. The Defendant's citation to Defendant Khalid Bin Mahfouz's website to attack Mr. Brisard's credentials should be given zero weight by the Court considering that exalted source. Motion, FN. 5. Mr. Bin Mahfouz is another in the line of Defendants seeking to discredit Brisard at any cost. The Bin Mahfouz website cited to by Yeslam is devoted to public advocacy against Brisard and others. *Id., see* Attachment B, Affidavit excerpts of Rachel Ehrenfeld, June 10, 2005, ¶ 15; 24. As for charges about Mr. Brisard's 2002 Report on Terror Financing, Brisard was asked to prepare the Report by the assistant to Mr. Valdivieso. After the fact, Mr. Valdivieso was apparently strong-armed into striking out at Brisard. This is part and parcel of the "investigative" activities of the Kroll firm that was hired to dig up or fabricate any dirt possible on Brisard, be it through investigation, direct monitoring, pressure on former employees, consultants or third parties, filing of lawsuits, communication intercepts and even death threats. Defendants Khalid Bin Mahfouz originally led this smear campaign, which has now been joined by Yassin al Kadi, Mohammed Hussein Al Amoudi, and now apparently the Binladin family.[3]

### E. The Affidavit of Carmen Bin Ladin Should not be Stricken

It is somewhat ironic that the Defendant attempts to argue that his wife of over 20 years lacks any "personal" knowledge about him or his family. Nonetheless, that is precisely what Defendant attempts to do and tries to distance himself from his former spouse. As the attached Affidavit of Carmen Bin Ladin demonstrates, and contrary to Defendant's selective and misleading arguments, Carmen Bin Ladin continued to have direct conversations with Defendant

---

[3] Should the Court require proof of this sordid activity, Plaintiffs will of course so provide.

9

until 1994 – as Defendant himself recently admitted to the *Wall Street Journal* – and due to her lengthy divorce proceedings had continued contacts and dealings with Yeslam until very recently:

> I reaffirm that my representations to this Court, both in my February 1, 2006 affidavit and herein, are premised on my own personal knowledge of Yeslam bin Ladin and the Bin Laden family from having been married and legally embroiled with them for the last thirty-two years of my life.

*Affidavit of Carmen Bin Ladin, 4/19/06, Attachment A hereto with exhibits (or "CBL Aff.").*

No one can tell Ms. Bin Ladin what is within the purview of her own personal knowledge. For the Defendant to attempt to do so is ridiculous. In addition to attacking her veracity, Yeslam has attacked her motives as yet another reason the Court should strike her affidavit. Even if her motives were a valid reason to strike her affidavit, which they are not, surely Yeslam's motives and the motives of his brothers are more suspect and self-serving than anything he can attempt to impugn regarding his ex-wife. Moreover, to clear the matter, Carmen Bin Ladin has made clear:

> My statements under oath are not motivated by self-interest, but are descriptive of the information that I gained over the course of my thirty-two year marriage to and divorce from Yeslam.

*CBL Aff. at 9.*

> I have first hand experience on how the bin Laden brothers transfer assets between one another in order to evade detection.

*CBL Aff. at 13*.

Both by virtue of her marriage and the divorce proceeding that prompted her investigation into Yeslam's financial dealings worldwide, Carmen Bin Ladin has first-hand knowledge of the material facts in this case, facts that are not as simple as Defendant would have the Court believe.

### F.     The Dasquié Statement Should Not be Stricken

Similarly, in looking at matters outside the pleadings that make up a *prima facie* showing prior to any formal discovery, there simply is no requirement that Mr. Dasquié's statement be in a sworn format at this stage of the proceedings.  The law is clear that the Court can determine its reliability and its relevance.  Defendants complain that Mr. Dasquié's statement is not sworn, and thus inadmissible.  Admissibility is not the litmus test for a *prima facie* showing.  "Because the Court's jurisdiction is at issue, it must, on this motion, weigh the evidence . . . ." *See Scott v. Reno*, 1998 WL 249178 (S.D.N.Y. May 18, 1998) at *3.  Indeed, if it were, the "legal opinion" of Ms. Saskia Ditisheim, Esq. appended to the Reply brief of Defendant Yeslam Binladin should also be given no weight by the Court, nor should the 'opinion letter' of Mr. Gerard Pigeurez apparently authored by Ms. Ditisheim.  *See* Reply Memorandum of Yeslam Binladin, Exhibits compiled as "D."  In addition to being hearsay the opinion letter itself is not "sworn".  The same is true of the numerous letters submitted attacking Mr. Brisard.  *See* Declaration of James E. Gauch, in support of Motion, at Exhibit B, C, D.  In bringing this Motion, Defendant would have the Court consider unsworn letters they submit while striking Dasquié's statement for being unsworn.  Defendant seeks to have it both ways.  This becomes particularly evident upon a review of the affidavits submitted by the Defendant.

### G.     The Affidavits of Yeslam Binladin, Omar Binladin and Bakr Binladin All Use the Same Language That Defendant Claims Provides a Basis for His Motion to Strike

The affidavits of Yeslam, Omar, and Bakr Binladin submitted in support of Yeslam's Motion to Dismiss and this Motion to Strike, all contain the identical lack of foundation, hearsay, and qualifying language that Defendant complains of and seeks herein to strike.  As examples, from the Defendant's own affidavit:

11

> I have never owned, nor **to the best of my recollection**, have I ever lived [at the property in question] . . .
>
> **It is my understanding, based on a letter from UBS to the Swiss Department of Justice** (a copy of which was provided to my Swiss attorney and is attached, along with a translation, as Exhibit 5), that on or about October 28, 1991, $482,000, which constituted virtually the entire balance in the sub-account in the name of Osama, was transferred to an account of Haydar Binladin in Saudi Arabia. **It is my understanding based on the same letter** that there was no further activity in this sub-account other than the debit of bank fees and charges and it was subsequently closed by the bank in 1997.
>
> In the 1990-91 timeframe, I had not seen and, **to the best of my recollection**, had not even communicated with Osama.
>
> During the investigations that started after the events of September 11, 2001, I was questioned by Swiss authorities regarding the account at UBS, as well as other business activities and my relationship to certain family members. **It was my understanding at the time** . . .
>
> To this day, more than four years after the events of September 11, 2001, **and after investigation by the Swiss, French, and presumably United States authorities**, no charges have ever been filed against me by the Swiss, French, U.S., or any other government relating to alleged terrorist financing or any other alleged support to terrorist organizations.
>
> **It is my understanding** that the flight instructor at Santa Rosa Aviation was, and is, a friend of my pilot.
>
> **I am informed that** certain plaintiffs claim that Saudi Marketing and Trading Company is owned by "the family of Mohammed a1 Attas, the second husband of OBL's mother.
>
> **… to the best of my knowledge**, Ahmed A1 Attas is not related to Mohammed a1 Attas. In any event, no funds have ever been transferred from accounts of these companies to or for the benefit of Osama Bin Laden **or anyone who I understood** to be associated with a1 Qaeda or terrorism.

*YBL Affidavit attached as Exhibit A to his Motion to Dismiss filed on 10/28/05, ¶s 7, 13, 14, 15, 17 & 18.*

The affidavit of Omar Binladin contains additional examples:

12

> "**To the best of my knowledge**, Osama had no role in the performance of the Port of Sudan airport construction project.
>
> "Neither SBG nor MBC nor Binladin Overseas (Pvt. Ltd.) nor any of their subsidiaries of affiliates participated in the construction of the Tahaddi Road project in the Sudan.  **Nor, to my knowledge**, …
>
> **To the best of my recollection**, Osama was not in attendance at that ceremony.
>
> **To the best of my knowledge**, Osama has received no distributions of funds or other support from MBC, SBG, or any of their subsidiaries or affiliates since prior to the time the resolutions were adopted in June 1993.

*Affidavit of Omar Mohammed Bin Laden submitted as Exhibit 1.A to YBL's Motion to Strike - ¶s 11, 12, 13 & 16.*

Defendant's brother Bakr also comes to his brothers' defense:

> **To the best of my recollection**, …
>
> **Neither I, nor to the best of my knowledge, any other member of the Binladin family**, has provided any money, or established any fund, to protect Osama or to benefit him or his terrorist activities in any way."

*Affidavit of Bakr Binladin submitted as Exhibit 1.E to YBL's Motion to Strike - paragraphs 3 & 13.*

It is nonsensical that Yeslam complains of the Plaintiffs' lack of personal knowledge, and complains about hearsay, given the contents of the affidavits and declarations he relies upon. Not to belabor the point, but there are a myriad of examples of hearsay or conclusory statements contained in the materials proffered by Defendants[4]

Moreover, an examination of the affidavits of Omar and Bakr Binladin demonstrates a striking similarity of language.  The verbatim language contained in these affidavits lends

---

[4] ."These documents reflect . . ."  Affidavit of Omar Mohammed Binladin at ¶ 8 (explaining meaning of the account the brothers held with and for Osama Bin Laden.); "To the best of my knowledge, Osama had no role in the performance of the port Sudan airport construction project."  Omar at ¶ 11; ". . . Osama has received no distributions of funds or other support from Mohammed Binladin Company, Saudi Binladin Group or any of their subsidiaries or affiliates . . . ."  Omar at ¶ 16; *see also* Affidavit of Bakr Binladin, Exhibit E to Motion*, e.g.* "Neither I, nor to the best of my knowledge, any other member of the Binladin family, has provided any money, or established any fund, to protect Osama or to benefit him or his terrorist activities in any way."  Omar at ¶ 13.

13

credence to a reading that they are the very "adversarial pieces" – as opposed to original works – that Defendant complains are improper. Compare the conclusions of Bakr and Omar:

> I have never provided or authorized anyone else to provide any money or other support to any person or organization I understood to be associated with al Qaeda or terrorism of any kind. I was appalled by the horrific events of September 11, 2001 and I reject and condemn such violence.

Bakr Binladin at ¶ 15.

> I have never provided any support to any organization that I understood to be associated with al Qaeda or with terrorism of any kind. I was appalled by the horrific events of September 11, 2001 and I reject and condemn such violence.

Omar Binladin at ¶ 17.

If any party can be accused of submitting conclusory affidavits that are more akin to an adversial memorandum than an affidavit base on personal knowledge, it is the Defendant herein. However, the Plaintiffs trust that the Court can give these statements any weight they are due, and do so without striking material from the record.[5]

## III.   CONCLUSION

This Court should deny Defendant's Motion in its entirety. Beyond being baseless, misleading and filled with unnecessary *ad hominem* attacks, the Defendant's Motion is not supported by the law they purport to rely on. Further, Defendant has failed to demonstrate, as a motion to strike requires, that the materials submitted comprise "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Applying the Fed. R. Civ. P. 56 standard is improper at this stage. The information Plaintiffs provided to the Court directly rebuts the affidavits of Yeslam, and now Omar and Bakr Binladin, in making a *prima facie* case

---

[5] In the event the Court deems the Motion to Strike has any merit, Plaintiffs move the Court to Strike all the affidavits at issue. Attentively, Plaintiffs' request that an evidentiary hearing be scheduled to address any concerns the Court may have. If the Court decides to make evidentiary rulings as to the veracity of affiants not before it, then the Court must strike all of the affidavits submitted, not just the Plaintiffs' submissions.

14

of jurisdiction.  Moreover, the affidavits are highly relevant, reliable and contrary to Defendant's contention, do contain non-hearsay material and information based upon personal knowledge.  Moreover, their inclusion does not in any way prejudice the Defendant.  Finally, the transferor Court has already determined the propriety of the inclusion of material outside the pleadings in the context of deciding Rule 12 motions, (*See* D.C. Docket No. 144.), a practice that has become the law of the case.

**WHEREFORE**, the Plaintiffs respectfully request the Court deny Defendant Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié, and decide the relevance of those materials at the appropriate juncture.

Dated: New York, NY          Respectfully submitted,
       April 21, 2006


                              /s/ _____
                              Ronald L. Motley, Esq. (RM-2730)
                              Jodi Westbrook Flowers, Esq.
                              Donald A. Migliori, Esq.
                              Michael Elsner, Esq. (ME-8337)
                              Justin B. Kaplan, Esq.
                              Robert T. Haefele, Esq.
                              John Eubanks, Esq.
                              MOTLEY RICE LLC
                              28 Bridgeside Boulevard
                              P.O. Box 1792
                              Mount Pleasant, South Carolina 29465
                              Telephone:  (843) 216-9000

                              Paul J. Hanly, Jr., Esq. (PH-5486)
                              Jayne Conroy, Esq. (JC-8611)
                              Andrea Bierstein, Esq. (AB-4618)
                              HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                              112 Madison Avenue
                              New York, NY 10016
                              Telephone:  (212) 784-6400

Plaintiffs' Executive Committee
on behalf of *Burnett*, *WTCP, Euro Brokers*, *Continental*,
*N.Y. Marine* and *Federal* Plaintiffs