**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.* (02 CV 6977)

*Thomas E. Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.* (03 CV 9849)

*Thomas E. Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.* (03 CV 5738)

*Cantor Fitzgerald & Co., et al. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 7065)

*Continental Casualty Co., et al. v. Al Qaeda, et al.* (04 CV 5970)

*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 7279)

*Federal Ins. Co., et al. v. Al Qaida, et al.* (03 CV 6978)

*New York Marine and General Ins. Co. v. Al Qaida, et al.* (04 CV 6105)

*Estate of John P. O'Neill, Sr. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 1923)

*World Trade Center Prop., LLC, et al. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 7280)

**REQUEST FOR JUDICIAL NOTICE IN FURTHER SUPPORT OF MOTIONS TO
DISMISS OF DEFENDANTS DAR AL-MAAL AL-ISLAMI TRUST
AND DMI ADMINISTRATIVE SERVICES S.A.**

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendants*
  *Dar Al-Maal Al-Islami Trust and*
  *DMI Administrative Services S.A.*

## INTRODUCTION

In further support of their motions to dismiss, defendants Dar Al-Maal Al-Islami Trust ("DMI Trust") and DMI Administrative Services S.A. ("DMI S.A.") respectfully request that the Court take judicial notice of the annexed record of the March 14, 2006 Judgment Hearing before the Court of the Arrondissement of Lausanne, Switzerland ("Swiss Record").  That record makes clear that Jean-Charles Brisard, plaintiffs' own consultant and expert, has formally and publicly recanted the *sine qua non* of plaintiffs' case against DMI Trust and DMI S.A., as follows:

> Jean-Charles BRISARD wishes to specify that when he mentioned DMI, its subsidiaries or the Group's organs, he never meant that these entities could have directly or indirectly financed or participated in the financing of terrorism. He regrets that these statements may have been wrongly interpreted.[1]

See Swiss Record, a true and correct copy of which is annexed hereto as Exhibit A, with certified English translation.[2]

**A.      The Swiss Record Demonstrates That Plaintiffs'
        'Lead Investigator'  Has Formally Recanted The *Sine Qua Non*
        Of Plaintiffs' Case Against DMI Trust And DMI S.A.**

On October 22, 2003, Mr. Brisard, emphasizing his role as an "International Expert on Terrorism Financing [and] Lead Investigator, 911 Lawsuit," submitted written testimony to the Committee on Banking, Housing and Urban Affairs of the United States Senate.  Mr. Brisard therein asserted that DMI Trust, DMI S.A., and their purported subsidiaries and affiliates were complicit in the financing of international terrorism.  See Written Testimony Of Jean-Charles Brisard Before The

---

[1] Mr. Brisard, like plaintiffs' counsel, has used the acronym 'DMI' variously and inconsistently to refer to (i) each of DMI Trust and DMI S.A.; (ii) both DMI Trust and DMI S.A.; and (iii) DMI Trust and DMI S.A. together with their subsidiaries and affiliates.  See, e.g., Memorandum of Law in Support of Motion to Dismiss the *Burnett* action by Defendant Dar Al-Maal Al-Islami Trust (Docket No. 1401) ("*Burnett* Memorandum"), at 2 n.3 (noting that plaintiffs fail to make clear which claims and allegations are meant to apply to which defendant).  Nevertheless, the language of Mr. Brisard's retraction and apology, as quoted above, makes clear that his admission of error includes the parent company DMI Trust, together with "its subsidiaries or the Group's organs," including DMI Trust's subsidiary DMI S.A.

[2] Defendants DMI Trust and DMI S.A. submit this request in further support of the several motions to dismiss listed in Exhibit B hereto.

Committee On Banking, Housing And Urban Affairs, United States Senate, October 22, 2003 (a

true and correct copy of which is annexed as Exhibit C), at 13:

> Other banks, including Swiss-based DMI, as recently revealed by the
> investigation of the families[,] have funneled money to organizations
> founded or used by terrorists, such as Al-Haramain Islamic
> Foundation and Maktab ul Khedemat (Bureau of Services).

On December 15, 2003, DMI S.A. lodged a Complaint against Mr. Brisard for defamation

before the Investigating Magistrate of the Canton of Vaud in Switzerland, where Mr. Brisard resides

and does business.  By no later than March 5, 2004, Mr. Brisard was officially represented by

counsel.  On May 14, 2004, the Investigating Magistrate entered a formal charge of defamation.  On

March 9, 2005, the action was transferred to the Police Court of the Arrondissement of Lausanne,

Switzerland, for adjudication and trial.  After pre-trial procedures and a fruitless settlement hearing,

on March 14, 2006, the Court in Lausanne held a public Judgment Hearing, which provided both

sides a full opportunity to be heard.

At the March 14, 2006 Judgment Hearing, the parties submitted both written and testimonial

evidence regarding their claims and defenses, as the Swiss Record reflects.  See Swiss Record, at 2-3

(noting various submissions by the parties and the sworn testimony of two witnesses).  At the

conclusion of the hearing, in open court and upon the record, Mr. Brisard agreed to and did

formally withdraw the central proposition of his (and the plaintiffs') allegations against DMI Trust

and DMI S.A.:

> Jean-Charles BRISARD wishes to specify that when he mentioned
> DMI, its subsidiaries or the Group's organs, he never meant that
> these entities could have directly or indirectly financed or participated
> in the financing of terrorism. He regrets that these statements may
> have been wrongly interpreted.

See id. at 3.  Mr. Brisard also committed himself to distribute the foregoing retraction and apology

to the Senate Committee On Banking, Housing And Urban Affairs and several journalists, and to

post the withdrawal and apology on his website and maintain it there until March 15, 2009.  A true

and correct copy of the posting, located at http://jcb.blogs.com/ (March 27, 2006), is annexed as

Exhibit D.[3]  Mr. Brisard then endorsed the Swiss Record, together with counsel to DMI Trust and

DMI S.A. and the presiding Judge.  See Swiss Record at 4.  Because Mr. Brisard's retraction

conditionally resolved the dispute between the parties, the Judgment Hearing was adjourned

pending Brisard's compliance with the terms set forth in the record.  See id.

**B.**     **The Swiss Record Is Entitled To Judicial Notice.**

Federal Rule of Evidence 201 permits judicial notice of adjudicative facts that are "not

subject to reasonable dispute" and are "capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Rule 201 also

provides that a Court shall take judicial notice of an adjudicative fact that is not reasonably subject to

dispute when requested to do so by a party who supplies the Court with the necessary information.

See Fed. R. Evid. 201(d).  The judgments, pleadings, and other public records of proceedings in

foreign Courts are adjudicative facts that are not subject to reasonable dispute and are capable of

ready determination by reference to the issuing Court, and thus are entitled to judicial notice.  See

Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Cafe, 566 F.2d 861, 862 (2d Cir.

1977) (remanding for consideration of foreign judgment that District Court had failed to notice);

Republic of Ecuador v. ChevronTexaco Corp., 376 F.Supp.2d 334, 375-76 (S.D.N.Y. 2005) (on

motion to dismiss, taking judicial notice of filings in foreign litigation); Jordan (Bermuda) Inv. Co.,

Ltd. v. Hunter Green Invs. Ltd., 154 F. Supp. 2d 682, 689 (S.D.N.Y. 2001) (on motion to dismiss,

taking judicial notice of foreign judgment); A.I. Trade Finance, Inc., v. Centro Internationale

Handelsbank AG, 926 F. Supp. 378, 387 (S.D.N.Y. 1996) (Court shall take judicial notice of official

statement of foreign Court as *prima facie* evidence of adjudicative fact, although not as proof of truth

of matters asserted therein); see also United States v. Garland, 991 328, 332 (6th Cir. 1996) (same);

---

[3] In addition to taking judicial notice of the Swiss Record, see infra, the Court may also take judicial notice of
this posting itself, (and may do so without converting the pending motions to dismiss into motions for
summary judgment).  See Hotel Employees and Rest. Employees Union, Local 100 v. New York Dep't of
Parks and Recreation, 311 F.3d 534, 549 (2d Cir. 2002) (taking judicial notice of website information);
Doron Precision Sys., Inc. v. FAAC, Inc., -- F. Supp. 2d --, --, 2006 WL 760280, at *3 n.8 (S.D.N.Y. 2006)
(dismissing complaint; noting Court may take judicial notice of information publicly announced on party's
website, as long as website's authenticity not in dispute and posting capable of accurate and ready
determination); Wang v. Pataki, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005) (same).

Giaguara S.p.A. v. Amiglio, 257 F. Supp. 2d 529, 531 n.1 (E.D.N.Y. 2003) (same; "[t]his court may take judicial notice of the Canadian Complaint, Italian Complaint and Canadian Decision.") (citing Brass v. Am. Film Techs., 949 F.2d 42, 47-48 (2d Cir. 1991)); Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) (applying same rubric to filings in litigation in other District Courts).[4]

        Additionally, the Court may consider matters of which judicial notice may be taken pursuant to Rule 201 without converting a motion to dismiss into a motion for summary judgment.  "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including judgments, pleadings, and other public records of judicial proceedings.  See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) (affirming dismissal and denying assertion that judicial notice of public records required conversion of motion); see also Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 776 (2d Cir. 2002) (affirming dismissal in part in reliance upon judicially-noticeable state court decree); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) (affirming dismissal; upon motion to dismiss, district court may "of course" consider public filings that are judicially noticeable under Rule 201); Bradford v. Amsterdam, 424 F.2d 282, 282-83 (2d Cir. 1970) (dismissing complaint in reliance upon judicially-noticed record of proceedings in state court); Republic of Ecuador, 376 F. Supp. 2d at 375-76 (denying motion to dismiss in reliance upon judicially-noticed filings in foreign litigation); Jordan (Bermuda), 154 F.Supp.2d at 689 ("the Court may take judicial notice of [the foreign judgment] and consider it in deciding the motion" to dismiss; "trial court should not transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has been filed in lieu of an answer, and the parties have neither completed discovery nor formally requested that the motion be converted"); see also Cortec

---

[4] Defendants DMI Trust and DMI S.A. submit the Swiss Record not to prove the truth of any substantive assertion by any party therein -- an inquiry that is inappropriate upon a motion to dismiss in any case -- but merely to show that the proceeding was concluded by Mr. Brisard's formal retraction and apology, as recorded therein.  In short, the Swiss Record is not offered to prove any of the defenses that DMI Trust and DMI S.A. might assert in these actions, but merely to show that the retraction and apology were made upon the record of the Lausanne Court.  See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 220 F. Supp. 2d 289, 293 n.4 (S.D.N.Y. 2002) (in taking judicial notice of filings in separate action, the Court "merely recognizes the existence of those public filings"); A.I. Trade Finance, 926 F. Supp. at 387 (judicial notice appropriate for the purpose of recognizing official statement of foreign Court).

Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

Plaintiffs here conclusorily allege that DMI Trust, DMI S.A., and related entities donated funds and/or provided banking services to Al Qaeda members and 'fronts' -- without, however, any specific allegations of fact showing that DMI Trust, DMI S.A., or any of their subsidiaries or affiliates ever engaged in any transactions involving terrorism, or any allegations of fact indicating that any such company knowingly provided banking services or any other material support to anyone connected with al Qaeda.  See, e.g., Burnett Memorandum, at 6-9 (noting absence of factual allegations showing complicity).  Moreover, Mr. Brisard's admission, as recorded in the Swiss Record, that DMI Trust, DMI S.A., and their subsidiaries and affiliates, "never . . . could have directly or indirectly financed or participated in the financing of terrorism," stands as a judicially-noticeable public statement that directly contradicts the gravamen of plaintiffs' case.  See, e.g., Harris v. New York State Dept. of Health, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002) (dismissing; Court "may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action"); Simpson v. Putnam Cty. Nat'l. Bank of Carmel, 20 F. Supp. 2d 630, 634-35 n.4 (S.D.N.Y. 1998) (dismissing in partial reliance upon judicially-noticed filings of record in separate action, which filings contradicted allegations made by plaintiff to Court).

Thus, plaintiffs' conclusory allegations of wrongdoing by DMI Trust and DMI S.A. are contradicted, not only by other allegations in their Complaints, see, e.g., Burnett Memorandum at 6-7, but now also by their own expert's formal, public retraction and apology, of which the Court should take judicial notice.  See Fed. R. Evid. 201(d).  Accordingly, for that reason and for all the reasons previously set forth, the Court should dismiss all claims against DMI Trust and DMI S.A.  See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of Complaint where "attenuated allegations" supporting claim "are contradicted both by more specific

allegations in the complaint and by facts of which [the Court] may take judicial notice"); In re

Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need

not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render

a claim incoherent, or that are contradicted either by statements in the complaint itself or by

documents upon which its pleadings rely, or by facts of which the court may take judicial notice.");

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 at 120-21 (3d ed.

2004) ("[T]he district court will not accept as true pleading allegations that are contradicted by facts

that can be judicially noticed. . . .").

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, defendants DMI Trust and DMI S.A. respectfully request that

this Court take judicial notice of the Swiss Record and issue such other relief as may be just and

proper.


Dated:  New York, New York          Respectfully submitted,
        May 9, 2006

                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP



                                    By:_____/s/_____
                                        James J. McGuire (JM-5390)

                                        30 Rockefeller Plaza, 24th Floor
                                        New York, New York 10112
                                        (212) 332-3800

                                        *Attorneys for Defendants*
                                        *DMI Administrative Services S.A. and*
                                        *Dar Al-Maal Al-Islami Trust*

Tim McCarthy
Eric O'Connor
Of Counsel