**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MD 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-9849 and 03-CV-5738 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)


**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT YESLAM BINLADIN'S MOTION TO STRIKE
THE DECLARATION OF JEAN-CHARLES BRISARD,
THE AFFIDAVIT OF CARMEN BIN LADIN, AND
THE STATEMENT OF GUILLAUME DASQUIÉ**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.   AFFIDAVITS AT THE RULE 12(b) STAGE MUST BE BASED ON
     PERSONAL KNOWLEDGE ............................................................................................... 1

II.  PLAINTIFFS' AFFIDAVITS, BY THEIR OWN ADMISSION, ARE NOT
     BASED ON PERSONAL KNOWLEDGE ......................................................................... 3

     A.   Jean-Charles Brisard ................................................................................................ 3

     B.   Carmen Bin Ladin .................................................................................................... 7

     C.   Guillaume Dasquié .................................................................................................. 8

III. PLAINTIFFS' ATTACKS ON THE BINLADIN AFFIDAVITS PRESENT A
     DIFFERENT ISSUE AND HAVE NO MERIT ................................................................ 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdullahi v. Pfizer, Inc.*,
    No. 01 Civ. 8118 (WHP), 2005 WL 1870811 (S.D.N.Y. Aug. 9, 2005)..........................2, 3

*Ariel Maritime Group, Inc. v. Pellerin Milnor Corp.*,
    No. 88 Civ. 6447 (PKL), 1989 U.S. Dist. LEXIS 3048
    (S.D.N.Y. March 29, 1989).............................................................................................2

*Folio Impressions, Inc. v. Byer California*,
    752 F. Supp. 583 (S.D.N.Y. 1990)................................................................................4, 9

*Granite Partners, L.P., v. Merrill Lynch*,
    No. 96 Civ. 7874 (RWS), 2002 WL 826956 (S.D.N.Y. May 1, 2002) ..........................4, 8

*Hennigan v. Taser Int'l, Inc.*,
    No. 00 Civ. 2981 (MBM), 2001 WL 185122 (S.D.N.Y. Feb. 26, 2001)..........................10

*Hollander v. Am. Cyanamid Co.*,
    172 F.3d 192 (2d Cir. 1999)...........................................................................................2, 8

*In re: Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).............................................................................5, 6

*In re Terrorist Attacks on September 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)...............................................................................1

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986).........................................................................................2, 8

*Margiotta v. Kaye*,
    283 F. Supp. 2d 857 (E.D.N.Y. 2003) ..............................................................................2

*Millgard Corp. v. White Oak Corp.*,
    224 F. Supp. 2d 425 (D. Conn 2002)............................................................................1, 10

*Radio Channel Networks, Inc. v. Broadcast.Com, Inc.*,
    No. 98 Civ. 4799 (RPP), 1998 WL 614185 (S.D.N.Y. Sept. 14, 1998) ...............................3

*Sfasciotti v. Copy-Plus, Inc.*,
    No. 85 C 6318, 1985 U.S. Dist. LEXIS 12466 (N.D. Ill. Dec. 20, 1985) ...........................3

*Tasini v. New York Times Co.*,
    184 F. Supp. 2d 350 (S.D.N.Y. 2002)..............................................................................2

*United States v. Dukagjini*,
 326 F.3d 45 (2d Cir. 2002)..................................................................................................5

*United States v. Paracha*,
 No. 03 CR 1197 (SHS), 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) ......................................5

*U.S. ex rel. Woods v. Empire Blue Cross and Blue Shield*,
 No. 99 Civ. 4968, 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002) ........................................8

*Wahad v. Federal Bureau of Investigation*,
 179 F.R.D. 429 (S.D.N.Y. 1998) ................................................................................. 4-5, 8

**FEDERAL RULES**

Fed. R. Evid. 101 .........................................................................................................................1

Fed. R. Evid. 602 .........................................................................................................................1

Fed. R. Evid. 1101 .......................................................................................................................1

**I.    AFFIDAVITS AT THE RULE 12(b) STAGE MUST BE BASED ON PERSONAL KNOWLEDGE**

Plaintiffs seek to obscure the issue in Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié[1] ("Motion to Strike") by arguing about whether a court may consider materials outside the pleadings on a Rule 12(b)(2) motion.[2] Obviously, this Court can and has done so. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005). The issue here, however, is whether the Court can and should consider affidavits based on hearsay and speculation rather than personal knowledge.[3] The answer to that question is equally clear.[4] The Federal Rules of Evidence provide, *inter alia*: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. These rules apply to all stages of this litigation, *see* Fed. R. Evid. 101, 1101, including on a motion to dismiss under Rule 12(b)(2). *See Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d 425, 429 n.7 (D. Conn. 2002) ("The rules of evidence . . . apply to affidavits submitted to the court on motions to dismiss") (internal quotation and citation omitted).

Plaintiffs do not cite a single case to support their claim that incompetent hearsay testimony can be submitted in connection with a Rule 12(b) motion, likely because there is none.

---

[1] Short-form citations will mirror those used in the opening Motion. *See* Memorandum in Support of Defendant Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié (Mar. 10, 2006) (MDL Docket #1721) ("Mem.") at n.1.

[2] *See* Plaintiffs' Response to Defendant Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié (Apr. 21, 2006) (MDL Docket #1779) ("Opp.") at 1-3.

[3] Plaintiffs' assertion that Judge Robertson "previously decided this issue in this case," and decided it differently, is incorrect. Opp. at 5. In their earlier motion to strike, Plaintiffs claimed that the disputed exhibits – none of which were affidavits – should be excluded because they were irrelevant. *See* Plaintiffs' Motion to Strike Al Haramain Islamic Foundation Inc.'s Exhibits to its Reply Brief (May 2, 2003) (*Burnett* D.C. Docket # 140). And as Plaintiffs now note, "[t]he Court determined that it would decide the relevance of the documents to the pending motion when deciding that motion." Opp. at 5. Thus, Judge Robertson's ruling had nothing to do with the issue raised by this motion – the propriety of hearsay affidavits by incompetent witnesses.

[4] *See* Mem. at 1-2.

To the contrary, even though "the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question," any "[h]earsay statements contained in the affidavits may *not* be considered."  *Margiotta v. Kaye*, 283 F. Supp. 2d 857, 861 (E.D.N.Y. 2003) (emphasis added); *see also Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 357 n.8 (S.D.N.Y. 2002) (evidence extrinsic to the pleadings on a motion to dismiss for lack of subject matter jurisdiction "must be competent").  Such incompetent evidence is appropriately stricken from the record.  *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (striking affidavit "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge").

Plaintiffs make no attempt to argue that their affidavits are based on personal knowledge or otherwise satisfy the standards set forth in the Federal Rules of Evidence.  Instead, they assert (without any authority) that their evidence need not be competent prior to summary judgment because "[a] *prima facie* showing pursuant to 12(b)(2) is clearly not the same thing as the summary judgment showing pursuant to Rule 56."  Opp. at 4.  The Second Circuit requires, however, that on a jurisdictional challenge "evidence submitted outside the pleadings be 'competent'" and has found that "Rule 56 offers guidelines in considering" such evidence.  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Ariel Maritime Group, Inc. v. Pellerin Milnor Corp.*, No. 88 Civ. 6447 (PKL), 1989 U.S. Dist. LEXIS 3048, *7 n.4 (S.D.N.Y. Mar. 29, 1989).  Therefore, at the Rule 12(b) stage it is "improper" to consider "conclusory and hearsay statements contained in . . . affidavits" because they "contain[] no information to indicate a basis in personal knowledge."  *Kamen*, 791 F.2d at 1011; *see also Abdullahi v. Pfizer, Inc.*, No. 01 Civ. 8118 (WHP), 2005 WL 1870811, at *16 (S.D.N.Y. Aug. 9, 2005) ("Because [the affiant's] information is hearsay and not based on his personal knowledge,

the Court rejects it.").[5] Thus, district courts routinely "decline[] to accept hearsay statements on important facts relating to personal jurisdiction." *Sfasciotti v. Copy-Plus, Inc.*, No. 85 C 6318, 1985 U.S. Dist. LEXIS 12466, at *2 (N.D. Ill. Dec. 20, 1985); *see also Radio Channel Networks, Inc. v. Broadcast.Com, Inc.*, No. 98 Civ. 4799 (RPP), 1998 WL 614185, at *1 (S.D.N.Y. Sept. 14, 1998).

## II.  PLAINTIFFS' AFFIDAVITS, BY THEIR OWN ADMISSION, ARE NOT BASED ON PERSONAL KNOWLEDGE

As explained in the Motion to Strike, each of Plaintiffs' affidavits should be stricken because they are based on hearsay, secondary sources, and speculation, rather than personal knowledge of any relevant matter. Plaintiffs do not attempt to refute this point as to Jean-Charles Brisard or Guillaume Dasquié, and while they do assert that Carmen Bin Ladin "has first-hand knowledge," Carmen's own testimony, including the new affidavit she submits to shore up her position, contradicts that claim. *See* Opp. at 7, 10, 11; *id.*, Ex. A (Affidavit of Carmen Bin Ladin (April 19, 2006) ("Second Carmen Aff.")), ¶ 10.

### A.  Jean-Charles Brisard

Plaintiffs respond to Yeslam's "chief complaint . . . that Mr. Brisard lacks personal knowledge of the matters he attests to" by freely admitting that "Mr. Brisard is an investigator, not an al Qaeda member, so it would be very curious indeed should he have been found to be present at all of the meetings or events he has uncovered in the course of his study." Opp. at 7. They further admit that Brisard's sworn testimony repeatedly "uses the terms 'upon information and belief,'" as a means of "being cautious with his sources," *id.*, although they make no attempt to respond to the showing in the Motion to Strike that Brisard's testimony in fact misrepresents,

---

[5] Contrary to Plaintiffs' claims, Opp. at 2, in *Abdullahi* the motion before the Court was filed under Rule 12(b) for "failure to state a claim and lack of subject matter jurisdiction," 2005 WL 1870811, at *6, and the Court never once indicated that it was converting the motion to one for summary judgment.

mischaracterizes, and distorts those sources. *See* Mem. at 5-9. Plaintiffs do not even pretend to lay any foundation that Brisard has personal knowledge of any matter relevant to jurisdiction,[6] and while they complain that Yeslam has failed to address the possibility that hearsay exceptions might apply, Opp. at 7, they themselves do not identify a single exception that would render anything in his Declaration admissible.

     Because they cannot demonstrate that Brisard is a competent witness, Plaintiffs try to cloud the issue by raising several meritless collateral points. For example, they argue that the Motion to Strike "chooses to ignore" Brisard's "qualifications," which are "the foundation for his Declaration." Opp. at 6. Plaintiffs ignore, however, that Brisard does not offer any purported *expert opinions*, but instead expressly purports to limit his testimony "to areas of [his] personal knowledge," as a lay witness would. Brisard Decl. ¶ 4. Actual knowledge, not "qualifications," must be the foundation of such fact testimony. *See, e.g., Folio Impressions, Inc. v. Byer California*, 752 F. Supp. 583, 587 (S.D.N.Y. 1990) ("The foundation requirement of personal knowledge" set forth in "Fed. R. Evid. 602 requires a showing that a laywitness has personal knowledge of the matter concerning which the witness gives testimony."). The claim that Brisard reviewed often-unspecified materials in the course of his "investigation" does not supply that personal knowledge. *See, e.g.*, *Granite Partners, L.P., v. Merrill Lynch*, No. 96 Civ. 7874 (RWS), 2002 WL 826956, at *8 (S.D.N.Y. May 1, 2002) (forbidding a lay witness to testify about factual findings of his investigation since he had no personal knowledge of the underlying events); *Wahad v. Federal Bureau of Investigation*, 179 F.R.D. 429, 437 (S.D.N.Y. 1998)

---

[6] In his Declaration, Brisard does testify about litigation filed against him in Switzerland. *See* Brisard Decl. ¶¶ 69-78. While it may be true that he has personal knowledge of those matters, nothing about them is relevant to personal jurisdiction over Yeslam Binladin in this proceeding.

4

(striking affidavit testimony as "inadmissible hearsay and conclusory speculation" where the affiant listed his sources as "'reports,' independent investigation, and courtroom testimony").

Even if Brisard had claimed to be providing expert testimony, his Declaration would still be inadmissible. The Second Circuit has rejected testimony where, like Brisard, "the [proffered] expert was repeating hearsay evidence without applying any expertise whatsoever, thereby enabling the [proponent of the testimony] to circumvent the rules prohibiting hearsay." *United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2002); *see also United States v. Paracha*, No. 03 CR 1197 (SHS), 2006 WL 12768, at *22 (S.D.N.Y. Jan. 3, 2006) (rejecting, in part, the testimony of a purported terrorism expert after instructing that "what the government may not do is use its expert to provide a summary of factual evidence regarding the specific individuals alleged to be co-conspirators in this case"). Brisard's Declaration is a mere recitation of his version of "facts" purportedly gathered in his investigation (often virtually identical to the allegations appearing in Plaintiffs' pleadings)[7] without any pretense that he is offering any opinions arising from any supposed expertise. An "expert" cannot, any more than a fact witness, make such an end-run around the hearsay rules. *See In re: Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (precluding testimony characterized as "'nothing more than a repetition of the factual allegations in plaintiffs' complaint' combined with comments amounting to [the expert's] 'spin' on the facts") (citation omitted). Thus, where proposed testimony, like Brisard's, would "simply . . . 'provide an historical commentary of what happened'" and "is

---

[7] Brisard's Declaration includes at least eight paragraphs that were copied almost verbatim from Plaintiffs' RICO Statements. *Compare* Brisard Decl. ¶ 29, *with WTC/Euro Brokers* RICO Statement Applicable to SBG (MDL Docket #1124/1122) ("*WTC/Euro Brokers* RICO (SBG)"), Ex. A at 32; Brisard Decl. ¶ 36, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 25; Brisard Decl. ¶ 37, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 22; Brisard Decl. ¶ 38, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 25-26; Brisard Decl. ¶ 39, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 27-28; Brisard Decl. ¶ 40, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 28; Brisard Decl. ¶ 50, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 31-32; Brisard Decl. ¶ 68, *with WTC/Euro Brokers* RICO (SBG), Ex. A at 31.

merely a 'narrative of the case which a juror is equally capable of constructing,'" the information instead must be presented through "percipient witnesses and documentary evidence." *See id.* (citations omitted).[8]

Plaintiffs also claim that "Mr. Brisard should be allowed to submit a declaration in defense of [alleged] personal attacks on him" by Yeslam Binladin in these and other proceedings. Opp. at 6.[9] There is no merit to this claim since Brisard's "response" to these purported "attacks" constitutes a mere 10 of 78 paragraphs in his Declaration, none of which has any relevance to the jurisdictional issue before this Court.

Finally, Plaintiffs argue that the Motion to Strike should be denied simply because "a genuine issue of material fact exists." Opp. at 8; *see also id.* at 6. Plaintiffs are wrong, but this argument misses the point. The narrow issue presented by this motion is whether Brisard's Declaration is based on personal knowledge, not whether Yeslam's Motion to Dismiss should ultimately be granted. There is no dispute about Brisard's lack of personal knowledge; in fact, as noted above, Plaintiffs admit as much. The Brisard Declaration therefore should be stricken from the record.

---

[8] While Plaintiffs have failed to comply with this rule, Yeslam Binladin has not. The Binladin affidavits are based on personal knowledge, and they have as attachments contemporaneous (and properly authenticated) documents to independently support the testimony made therein. *See, e.g.*, Affidavit of Yeslam Binladin (Oct. 27, 2005) ("Yeslam Aff.") (attached to the Memorandum in Support of Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints (Oct. 28, 2005) (MDL Docket #1452)); Affidavit of Bakr Binladin (Jan. 25, 2006) ("Bakr Aff.") and Affidavit of Omar Binladin (Jan. 25, 2006) ("Omar Aff.") (attached as Exs. E & F to the Reply Memorandum in Support of Defendant Yeslam Binladin's Motion to Dismiss Plaintiffs' Complaints (Mar. 10, 2006) (MDL Docket #1722)). Brisard, in contrast, attaches only one document (which he himself created, *see* Brisard Decl. ¶ 9) to support his entire 78 paragraph Declaration.

[9] Contrary to Brisard's Declaration (¶¶ 69-78) and Plaintiffs' claims (Opp. at 8), Yeslam's affidavit in this matter did not make any "personal attacks" on Brisard for purposes of "harass[ing] and intimidat[ing]" him. Rather, Yeslam's affidavit points out (for the legitimate purpose of defending these claims) that Brisard was the source of the allegations underlying the French investigation into Yeslam's finances – from which Plaintiffs seek to infer Yeslam's liability for the 9/11 attacks. *See* Yeslam Aff. ¶ 19. Given that Brisard's Declaration *concedes* that he provided information to the French judge who has long investigated (but never charged) Yeslam, *see* Brisard Decl. ¶¶ 70, 75, it stretches credibility to characterize Yeslam's statement as a "personal attack" on Brisard.

### B.     Carmen Bin Ladin

Unlike their treatment of Brisard, Plaintiffs argue that Carmen Bin Ladin has personal knowledge of the events about which she purports to testify simply because she claims she does. Opp. at 9-10.  They assert that the Motion to Strike is "ridiculous," since "[n]o one can tell Ms. Bin Ladin what is within the purview of her own personal knowledge." *Id.* at 10.  But it is the duty of the Court, not Ms. Bin Ladin, to determine whether testimony is within the purview of the Federal Rules of Evidence.  Carmen's Second Affidavit demonstrates that her original Affidavit is *not* based on what she herself knew from personal observation, but instead "is based on [her alleged] continuous contact . . . with certain [unidentified] Bin Ladin family members through 1998, cherished Saudi friends through 2002 and [unspecified] highly reliable Saudi sources."  Second Carmen Aff. ¶ 10.[10]  Beyond that, Carmen asserts that her "personal knowledge derived directly from . . . the twelve years of litigation surrounding [her] divorce" from Yeslam, *id.* ¶ 7, during which she "investigated and educated [herself] as much as conceivably possible as to Yeslam's business interests."  *Id*. ¶ 8.[11]  As noted above with regard to Brisard, one cannot obtain personal knowledge simply by talking to others and conducting an

---

[10] This new assertion by Carmen is directly inconsistent with her book's claim that following her effective split with Yeslam in 1988, "[n]one of the Bin Ladens, even those who seemed to enjoy my company, ever had the strength of mind to stand up to Yeslam and contact me."  Carmen Bin Ladin, "Inside the Kingdom: My Life in Saudi Arabia" (2004) at 193-94 (Mem. Ex. G).  Moreover, Carmen has admitted that she has not been in Saudi Arabia since 1985 or 1986, Carmen Aff. ¶ 9, Second Carmen Aff. ¶ 10; and that she has not even spoken to Yeslam since 1994.  Mem. at 10; Second Carmen Aff. ¶ 5.  Plaintiffs and Carmen put much stock in the fact that, following their 1988 split, she continued to have some "direct conversations with Yeslam until 1994," Opp. at 9-10; Second Carmen Aff. ¶ 5, but this point cannot save them.  The vast majority of the events about which Carmen purports to testify occurred *after* 1994.  *See, e.g.,* Mem. at 11 (identifying 20 paragraphs of testimony to be stricken on the ground that the alleged events occurred after the time period when Carmen had any personal involvement in any of Yeslam's affairs; 18 of these paragraphs discuss events purportedly occurring after 1994 and the remaining two (Carmen Aff. ¶¶ 32, 39) discuss events about which Carmen could not possibly have first-hand knowledge).

[11] Although Carmen claims that her statements here "are not motivated by self-interest," Second Carmen Aff. ¶ 9, an article Plaintiffs submitted to the Court notes that Carmen "has joined forces with the Sept. 11 victims' lawyers, as she tries to improve her divorce settlement by exposing her ex-husband's finances" and that "she now hopes to go through the U.S. legal system to pressure her ex-husband to revise the settlement."  "At His Geneva Shop, Yeslam Bin Ladin Faces Family Trouble," The Wall Street Journal (April 5, 2006) at A1 (attached to Second Carmen Aff.).

"investigation." *See Granite Partners*, 2002 WL 826956, at *8; *Wahad*, 179 F.R.D. at 437; *U.S. ex rel. Woods v. Empire Blue Cross and Blue Shield,* No. 99 Civ. 4968, 2002 WL 1905899, at *6 n.3 (S.D.N.Y. Aug. 19, 2002) (rejecting a lay witness affidavit based on the affiant's review of documents obtained during his investigation). Under the rationale laid out in the Second Circuit's *Hollander* decision, such hearsay and speculation should be stricken. *See* 172 F.3d at 198.

### C. Guillaume Dasquié

Plaintiffs completely ignore Yeslam's primary argument that Guillaume Dasquié's Statement is admittedly based entirely on hearsay, not personal knowledge. *See* Mem. at 12; Opp. at 11. This is not surprising because there is no way for Plaintiffs to refute the fact that Dasquié does nothing more than recite information he obtained from three unidentified "sources": a correspondent in Geneva, a Swiss intelligence official, and a BTP engineer. *See generally* Dasquié Stmt. Rather, Plaintiffs focus exclusively on the additional argument that Dasquié's Statement was not sworn and submitted under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Mem. at 12-13. Even there, Plaintiffs effectively concede the point and instead argue that "[a]dmissibility is not the litmus test for a *prima facie* showing." Opp. at 11. This argument misses the mark since jurisdictional "evidence submitted outside the pleadings [must] be 'competent.'" *Kamen*, 791 F.2d at 1011. Accordingly, the Dasquié Statement should be stricken.

### III. PLAINTIFFS' ATTACKS ON THE BINLADIN AFFIDAVITS PRESENT A DIFFERENT ISSUE AND HAVE NO MERIT

Plaintiffs resort to diversion by claiming that Yeslam Binladin has also filed "hearsay-ridden affidavits" that purportedly "contain the identical lack of foundation" and "qualifying language" addressed in the Motion to Strike. Opp. at 7, 11. Plaintiffs' examples of supposed deficiencies in Yeslam's proof, however, belie their claim of a comparison and suggest that

8

Plaintiffs do not understand the rules of evidence. Plaintiffs point to more than a dozen instances where phrases such as "to the best of my recollection" and "to the best of my knowledge" were used, suggesting without any legal basis that such phrases render the testimony inadmissible. *See id.* at 12-13. For instance, Plaintiffs complain (*see id.* at 12) that Yeslam's Affidavit states:

> I have never owned, nor to the best of my recollection, have I ever lived at the other two addresses which Plaintiffs claim were 'listed' in the late 1990's to a 'Yeslam M. Binladin': 125 South Oakhurst Dr., Beverly Hills, CA or 11728 Folkstone Lane, Los Angeles, CA 90077. Although I do not recall all of the addresses I lived at while in school in the late 1970's, I am certain that I never owned these properties and I certainly did not live at either of these addresses in the 1990's, as I have not even been in the United States in almost 25 years.

Yeslam Aff. ¶ 7. In making the false comparison to their reliance on hearsay, Plaintiffs overlook the obvious facts that: (1) Yeslam has personal knowledge about where he has lived, and (2) the phrase "to the best of my recollection" merely accounts for the reality that he may not remember all of his addresses from the 1970s to the present. Plaintiffs cite no authority suggesting that such qualification renders testimony inadmissible, and it is hornbook law that it does not:

> While the law is exacting in demanding firsthand observation, it is not so impractical as to insist upon preciseness of attention by the witness in observing, or certainty of recollection in recounting the facts. . . . [There] will be no ground for objection if it appears that [the witness] merely speaks from an inattentive observation, or an unsure memory.

*Folio Impressions*, 752 F. Supp. at 587 (quoting McCormick, Evidence § 10 p. 24-25).

Plaintiffs also attack the affidavits of Bakr and Omar Binladin, arguing that they contain a "striking similarity of language." Opp. at 13-14. To support this claim, Plaintiffs quote only the closing paragraph from each affidavit, failing to mention that all of the other paragraphs (16 in the Omar Affidavit and 14 in the Bakr Affidavit) are substantially different and contain detailed factual statements regarding particular matters within each's personal knowledge.

9

Indeed, in contrast to the argument made here, *id.* at 13, Plaintiffs recently acknowledged elsewhere that Bakr "had personal knowledge of the matters stated" in his affidavit.[12]

A review of the testimony of Omar Binladin and Brisard regarding the inauguration of the Port Sudan airport in 1992 drives home the weakness of Plaintiffs' attempted comparison. Plaintiffs do not dispute that Omar attended the inauguration ceremony and thus has personal knowledge of the event, but they take issue with Omar's testimony that, "**To the best of my recollection**, Osama was not in attendance at that ceremony." Opp. at 13 (quoting Omar Aff. ¶ 13). Brisard, on the other hand, does not even pretend that he was present or explain how he could possibly possess personal knowledge, yet he swears under oath that Osama was in attendance and donated $2.5 million while there. Brisard Decl. ¶ 35. Brisard is not a competent witness and cannot possibly controvert the testimony of a witness who has first-hand personal knowledge, such as Omar. *See Hennigan v. Taser Int'l, Inc.*, No. 00 Civ. 2981 (MBM), 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001) (when ruling on a Rule 12(b)(2) motion, "affidavits premised on personal knowledge are credited over contradictory affidavits based on information and belief"). Unlike the improper affidavits submitted by Plaintiffs, the Binladin affidavits are grounded in personal knowledge and represent proper lay witness testimony.[13]

## CONCLUSION

For all the foregoing reasons, Defendant Yeslam Binladin respectfully requests that the Court strike the Brisard Declaration, the Carmen Affidavit, and the Dasquié Statement.

---

[12] *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Bakr Bin Ladin, Omar Bin Ladin, Tariq Bin Ladin, Mohammad Bin Ladin Company, and Bin Ladin Group International Company Ltd. (April 18, 2006) (MDL Docket #1773) at 5.

[13] Moreover, if Plaintiffs truly believed the Binladin affidavits were improper, their correct course of action would have been to file a motion to strike, *see Millgard*, 224 F. Supp. 2d at 429, or at the very least to raise objections in their oppositions to the relevant motions to dismiss – actions they tellingly chose not to take, thereby waiving the right to challenge this evidence here.

Dated:  May 10, 2006                  Respectfully submitted,

/s/ Geoffrey S. Stewart
_____

Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Stephen J. Brogan
Mary Ellen Powers
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

Lawrence Schoenbach (S.D.N.Y. #LS8497)
Law Offices of Lawrence H. Schoenbach
The Trinity Building
111 Broadway, 13th Floor
New York, New York  10006
Tel:  (212) 346-2400
Fax:  (212) 346-2400

*Attorneys for Defendant Yeslam Binladin*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2006, I caused an electronic copy of the Reply Memorandum in Support of Defendant Yeslam Binladin's Motion to Strike the Declaration of Jean-Charles Brisard, the Affidavit of Carmen Bin Ladin, and the Statement of Guillaume Dasquié to be served by the Court's Electronic Case Filing System.

Date:   May 10, 2006

                                                 /s/ Stephen J. Brogan
                                                 Stephen J. Brogan