# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 | ) ) ) ) | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

EURO BROKERS, INC., *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7279;

NEW YORK MARINE AND GEN. INS. CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;

WORLD TRADE CTR. PROPS. LLC, *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7280.

## NOTICE OF ABDULLAH BIN KHALID AL-THANI'S
## MOTION TO DISMISS

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 12(b) and upon the annexed declaration of Abdullah Bin Khalid Al-Thani and the accompanying memorandum of law, defendant Abdullah Bin Khalid Al-Thani, by and through the undersigned counsel, hereby makes a limited appearance for the purpose of moving the Court, before the Honorable Richard C. Casey, United States District Judge, at the United States District Court, Southern District of New York, 500 Pearl Street, New York, New York 10007, at a date and time to be determined by the Court, for an order dismissing, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5) and12(b)(6), the plaintiffs' complaints in the above-captioned cases.

DLA PIPER RUDNICK GRAY CARY US LLP

David E. Nachman (DN-6684)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 835-6000

Sheldon Krantz*
Rachel Tausend*
1200 Nineteenth Street, NW
Washington, DC  20036
Telephone: (202) 861-3900

Attorneys for Defendant
Abdullah Bin Khalid Al-Thani

* Application for admission *pro hac vice* pending

April 7, 2006



## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 (RCC) | ) ) ) | 03 MDL No. 1570 |
| | | ECF Case |

This document relates to:

BURNETT, *et al*. v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al*., Case No. 03-CV-5738 & 03-CV-9849;

EURO BROKERS INC., *et al*. v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al*., Case No. 04-CV-7279;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al*., Case No. 04-CV-6105;

WORLD TRADE CENTER PROPERTIES LLC, *et al*. v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al*., Case No. 04-CV-7280.

## DECLARATION OF ABDULLAH BIN KHALID AL-THANI

I, Abdullah Bin Khalid Al-Thani, being duly sworn, declare and state as follows:

1.    I am over 18 years of age and competent to testify to the matters set forth below of my own personal knowledge.

2.    I have been informed by my attorneys that I am a defendant in the above-captioned actions. I am submitting this declaration in support of my Motion to Dismiss.

3.    I was born in 1956 in Qatar, am a Qatari citizen and have not lived anywhere outside of Qatar during the past ten years.

4.    I am a member of the Al-Thani ruling family of Qatar and have held official government positions since 1982.



**Khalid Al-Attiya**
Legal Consultant & Attorney

خالد العطية
للإستشارات القانونية والمحاماة

5.      In October 1983, I joined the Armoured Brigade of the Qatari Army.  I was appointed its Commander in 1984 and retired from the army in 1992.

6.      From 1992 to 1997, I served as Qatar's Minister of Awqaf and Islamic Affairs.  The Ministry of Awqaf is responsible for supervising religious affairs, the zakat fund for the poor and needy, the administrative and financial affairs of the Sharia courts, and the fatwa authority.

7.      I have served as Qatar's Minister of the Interior since 1997.  The Ministry of Interior Affairs is responsible for maintaining general security and public order, detecting, investigating and preventing crime, protecting the lives and assets of both Qataris and non-Qataris within Qatar's borders, and regulating immigration and naturalization.

8.      I have never traveled to the United States to conduct any form of business in either my official or my personal capacity. The only times I have been in the United States were as an airplane passenger in May 1992 and September 1998, when I was in transit between Qatar and Canada. Both times, I spent no more than a few hours in New York while waiting for my connection.

9.      I have never owned any property or other assets or maintained any bank account in the United States.

10.      I have not conducted any business in the United States through intermediaries or otherwise.  I have not conducted business with entities or individuals known by me to be based in the United States.



**Khalid Al-Attiya**
Legal Consultant & Attorney

خالد العطية
للإستشارات القانونية والمحاماة

11.     As far as I am aware, I have never appeared on any official list of persons under investigation for terrorist activities or been investigated in connection with such matters outside of this case.

12.     I cannot speak, read or write English.  I understand that this declaration will be translated into English for purposes of this case.

13.     I do not subscribe to or read *USA Today,* the *International Herald Tribune*, or *Al Quds Al Arabi* newspapers.  I have been told that the daily circulation figures for those newspapers in Qatar are 55, 1,500-2,000 and 300 copies respectively and that the two English newspapers are distributed primarily through hotels and Qatar Airways.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 21st day of March, 2006.

خالـــد العطيـــة
للإستشارات القانـونية والمحامـاة
**Khalid Al-Attiya**
**Legal Consultant & Attorney**

_____
Sheikh Abdullah Bin Khalid Al-Thani

# EXHIBIT 1

Khalid Al Attiya
Legal Consultant & Attorney

خـالـد العـطـيـة
للإستشارات القانونية والمحاماة

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 (RCC) | ) ) ) | 03 MDL No. 1570 |
|  |  | ECF Case |

This document relates to:
> BURNETT, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738 & 03-CV-9849;
> EURO BROKERS INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-7279;
> NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;
> WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-7280.

## DECLARATION OF Khalid Bin Mohd Al Attiya

I, **Khalid Bin Mohd Al Attiya**, being duly sworn, declare and state as follows:

1.  I am over 18 years of age and competent to testify to the matters set forth below of my own personal knowledge.

2.  I reside in **Doha** and am **managing partner and advocate**.

3.  I have been retained by counsel for Sheikh Abdullah Bin Khalid Al-Thani in the above-referenced cases for the purpose of verifying an English translation of Sheikh Abdullah's Arabic-language Declaration in support of his Motion to Dismiss.

4.  My education qualifications are as follows: **I am a holder of a Bachelors degree in Law obtained in 1993 from Beirut Arab University, Masters Degree in BOT obtained in 2000 and Doctorate degree in Law from the University of Cairo obtained in 2006.**

PCR1-247677.1

هاتف: ٤٤٦٤٤٤٧/٨ (٩٧٤+) – فاكس: ٤٤٦٤٤٤٩ (٩٧٤+) – ص.ب.: ٩٢٢٨ – الدوحة – دولة قطر
Tel. : (+974) 4364447/8 - Fax : (+974) 4364449 - P.O. Box: 9228 - Doha - State of Qatar
E-mail: info@alattiya-legal.com • website: www.alattiya-legal.com

5.    I am also chairman of the National Human Rights Committee of Qatar and a native speaker of Arabic and also very fluent in both spoken and written English.

6.    I have reviewed Sheikh Abdullah's Arabic-language Declaration and the English translation thereof to be filed in support of his Motion to Dismiss the above-referenced matters.  Based on the qualifications set forth in Paragraphs 4 and 5 above, I attest that the English translation is a true and accurate translation of Sheikh Abdullah's Arabic-language Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 22nd day of March, 2006.

Khalid Bin Mohd Al Attiya

# EXHIBIT 2

<u>في دائرة محكمة الولايات المتحدة الأمريكية _ مقاطعة ولاية نيويورك الجنوبية</u>

<u>الموضوع: الهجوم الإرهابي في ٢٠٠١/٩/١١م "آر سي سي ٠٣"</u>

<u>أم دي ال رقم ١٥٧٠ قضية أي سي اف</u>

<u>هذا المستند متعلق بـ:-</u>

-برنات وآخرين ضد شركة البركة للاستثمار والتطوير وآخرين.

القضية رقم ٥٧٣٨ _ المحكمة المدنية ٠٣ و ٩٨٤٩ _ المحكمة المدنية _ ٠٣

-مؤسسة بروكرز وآخرين ضد شركة البركة للاستثمار والتطوير وآخرين

القضية رقم ٧٢٧٩ _ المحكمة المدنية _ ٠٤

-شركة نيويورك البحرية وشركة التأمين العامة ضد القاعدة وآخرين

القضية رقم ٦١٠٥ _ المحكمة المدنية _٠٤

-شركة أملاك مركز التجارة العالمي ذات مسئولية محدودة وآخرين ضد شركة

القضية رقم ٧٢٨٠ _ المحكمة المدنية _ ٠٤

<u>إقرار من عبد الله بن خالد آل ثاني</u>

<u>أنا عبد الله بن خالد آل ثاني أحلف وأقر وأذكر الآتي:-</u>

١-بأنني أبلغ من العمر أكثر من ١٨ عام بكامل الأهلية للشهادة حسب معلوماتي في الأمور الآتية.

٢-أحطرت من خلال محامي بأنني مدعى عليّ في القضايا المذكورة أعلاه، وأقدم إقراري هذا لدعم موقفي لشطب القضايا المذكورة.

٣-أنا من مواليد ١٩٥٦م في قطر قطري الجنسية و لم أقم خارج دولة قطر خـــلال العشـــر سنوات الماضية.

٤-أنا عضو في عائلة آل ثاني العائلة الحاكمة في قطر ومتقلد مناصب حكومية منـــذ عـــام ١٩٨٢م.

٥-في أكتوبر ١٩٨٣م انضممت إلى سلاح الدروع في الجيش القطري وعيّـــت قائـــداً في ١٩٨٤م وتقاعدت من الجيش في عام ١٩٩٢م.

٦-من عام ١٩٩٢م إلى ١٩٩٧م خدمت كوزيراً للأوقاف والشئون الإسلامية وزير الأوقاف مسئولاً عن الأشراف الخاص للشئون الإسلامية، أمـــوال الزكـــاة للفقـــراء والمحتاجين، الشئون الادارية والمالية للمحاكم الشرعية و سلطة الفتوى.

٧-خدمت كوزيراً للداخلية منذ عام ١٩٩٧م وزير الداخلية مسئولاً عن الأمن العام والنظام العام والتحقيق ومنع الجريمة، حماية الأرواح والممتلكات للقطريين وغير القطريين ضـــمن الإقليم القطري وتنظيم الهجرة والتجنيس.

٨-لم أتنقل إلى الولايات المتحدة للقيام بأية أعمال تجارية سواء بصفتي الرسميـــة أو بصـــفتي الشخصية .

المرات التي تواجدت فيها في الولايات المتحدة كانت كمسافر في مـــايو ١٩٩٢م وسبتمبر ١٩٩٨م عندما كنت عابراً بين قطر وكندا وفي المرتين لم اقضي أكثر من بضع ســـاعات في نيويورك بانتظار الربط بين الرحلات.

٩-لم اتملك أية عقارات أو املاك ولا يوجد لي حساب بنكي في الولايات المتحدة.

١٠-لم ارتبط بأعمال تجارية في الولايات المتحدة من خلال وسيط أو أي جهة أخـــرى لم أرتبط بأية أعمال تجارية مع أي مؤسسات أو أشخاص تبين لي أنهم مقـــيمين في الولايـــات المتحدة.

١١-على حد علمي لم أظهر في أي قائمة رسمية تبحث في عمليات إرهابية أو تحقيق في هذا الشان خارج هذه القضية.

١٢-لا اتحدث، أقرأ أو اكتب الإنجليزية، أعلم بأن هذا الإقرار سوف يترجم إلى الإنجليزية لأغراض هذه القضية.

١٣-لست مشتركاً لقراءة جريدة اليوإس آي اليوم، انترناشيونال، هرلدتربيون وجريــدة القدس العربية.

لقد قيل لي بأن توزيع هذه الجرائد في قطر هو ٥٥ ، ١٥٠٠ ــ ٢٠٠٠ و ٣٠٠ نسخة لكل منها وأن الجريدتين الناطقتين بالانجليزية توزع خصيصاً للفنادق والخطوط القطرية.

**أقر بموجب قانون الولايات المتحدة الخاص بالعقوبة للحنث بأن جميع ما سبق ذكره حقيقي وصحيح.**

الإقراريوم الثلاثاء   بتاريخ   ٢١ / ٣ /٢٠٠٦م

الشيخ/عبد الله بن خالد آل ثاني

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2006, I caused an electronic copy of the foregoing Notice of Motion, annexed Declaration of Abdullah Bin Khalid Al-Thani and Memorandum of Law in Support of Abdullah Bin Khalid Al-Thani's Motion to Dismiss to be served by the Court's electronic filing system.

David E. Nachman

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 | 03 MDL No. 1570 (RCC) ECF Case |

This document relates to:

EURO BROKERS, INC., *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7279;

NEW YORK MARINE AND GEN. INS. CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;

WORLD TRADE CTR. PROPS. LLC, *et al.* v. AL BARAKA INV. AND DEV. CORP., *et al.*, Case No. 04-CV-7280.

## MEMORANDUM OF LAW IN SUPPORT OF
## ABDULLAH BIN KHALID AL-THANI'S MOTION TO DISMISS

**DLA PIPER RUDNICK GRAY CARY US LLP**

David E. Nachman (DN-6684)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 835-6000

Sheldon Krantz*
Rachel Tausend*
1200 Nineteenth Street, NW
Washington, DC 20036
Telephone: (202) 861-3900

Attorneys for Defendant
Abdullah Bin Khalid Al-Thani

\* Application for admission *pro hac vice* pending

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

III.   THE PLAINTIFFS' ALLEGATIONS .................................................................3

IV.    ARGUMENT .......................................................................................................5

    A. The Complaints Should Be Dismissed Because They Contain No Factual
       Allegations Against Sheikh Abdullah. ..........................................................5

    B. The Court Should Disregard Allegations Made In The MDS............................6

    C. Even If The MDS May Be Considered, It Fails To Cure The Deficiencies In
       The Complaints And The Claims Should Be Dismissed. .................................7

       1.  Sheikh Abdullah Is Immune From Suit Under The FSIA.........................8

          a)  Standard of Review .........................................................................8

          b)  Sheikh Abdullah Is Immune From Suit Because He Is A Government
             Official And Acted in His Official Capacity.........................................9

          c)  The Exceptions to FSIA Immunity Do Not Apply. ...........................10

       2.  This Court Lacks Personal Jurisdiction Over Sheikh Abdullah Pursuant to
          Either The New York Long-Arm Statute Or Fed. R. Civ. P. 4(k). .........................14

          a)  Legal Standard.................................................................................14

          b)  The New York Long-Arm Statute Does Not Provide The Basis For
             Personal Jurisdiction Over Sheikh Abdullah. ....................................14

          c)  Fed. R. Civ. P. 4(k) Does Not Provide The Basis For Personal
             Jurisdiction Over Sheikh Abdullah. .................................................16

          d)  The Plaintiffs Cannot Satisfy The Due Process Requirement of
             Minimum Contacts...........................................................................16

       3.  The Plaintiffs' Improper Service of Sheikh Abdullah Warrants Quashing
          Service Of Process And Dismissing The Complaints.............................19

       4.  The Plaintiffs Have Failed To State A RICO, ATA Or Any Other Claim. ............21

V.     CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Arnold v. Krause, Inc.,
   232 F.R.D. 58, 2004 WL 3574033 (W.D.N.Y. July 23, 2004) .................................. 7

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   171 F.3d 779 (2d Cir. 1999) ................................................................................ 14

Burnett v. Al Baraka Inv. & Dev. Corp.,
   292 F. Supp. 2d 9 (D.D.C. 2003) ................................................................ 8, 10, 11

Calder v. Jones,
   465 U.S. 783 (1984) ............................................................................................ 18

Chaiken v. VV Publ. Corp.,
   119 F.3d 1018 (2d Cir. 1997) .............................................................................. 16

Chrysler Capital Corp. v. Century Power Corp.,
   778 F. Supp. 1260 (S.D.N.Y. 1991) ............................................................... 15, 24

Daventree Ltd. v. Republic of Azer.,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004) ................................................................... 9

Filetech S.A. v. Fr. Telecom S.A.,
   157 F.3d 922 (2d Cir. 1998) ................................................................................. 9

Gordon v. Green,
   602 F.2d 743 (5th Cir. 1979) ................................................................................ 6

H.J. Inc. v. Northwestern Bell Tel. Co.,
   492 U.S. 229 (1989) ............................................................................................ 23

Helicopteros Nacionales de Colombia, S.A. v. Hall,
   466 U.S. 408 (1984) ............................................................................................ 17

Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,
   160 F. Supp. 2d 722 (S.D.N.Y. 2001) .................................................................. 17

Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah,
   184 F. Supp. 2d 277 (S.D.N.Y. 2001) .................................................................... 9

Mayes v. UVI Holdings, Inc.,
   280 A.D.2d 153, 723 N.Y.S. 2d 151 (1st Dep't 2001) ......................................... 24

Mullane v. Central Hanover Bank & Trust Co.,
   339 U.S. 306 (1950) ............................................................................................ 20

## TABLE OF AUTHORITIES

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,
   526 U.S. 344 (1999) .......................................................................................... 19

New York v. New York, N.H. & H.R. Co.,
   344 U.S. 293 (1953) .......................................................................................... 21

Rosario-Diaz v. Gonzalez,
   140 F.3d 312 (1st Cir. 1998) ............................................................................... 6

Seramur v. Saudi Arabian Airlines,
   934 F. Supp. 48 (E.D.N.Y. 1996) ....................................................................... 19

In re Terrorist Attacks I,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) ......................................................... *passim*

In re Terrorist Attacks on Sept. 11, 2001 II,
   392 F. Supp. 2d 539 (S.D.N.Y. 2005) ......................................................... *passim*

Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria,
   647 F.2d 300 (2d Cir. 1981) ............................................................................... 10

Time, Inc. v. Simpson,
   No. 02 Civ. 4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ............... 18

**Statute and Rules**

18 U.S.C. § 1961 *et seq.* .......................................................................................... 3, 21

18 U.S.C. § 2331 *et seq.* .............................................................................................. 3

28 U.S.C. § 1602 *et seq.* ..................................................................................... *passim*

Fed. R. Civ. P. 4 ............................................................................... 14, 16, 17, 19

Fed. R. Civ. P. 8 ...................................................................................................... 6

Fed. R. Civ. P. 10(b) ............................................................................................... 6

Fed. R. Civ. P. 12(b) ........................................................................................... 2, 21

N.Y. C.P.L.R. § 302(a)(2) ................................................................................. 14, 15

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 ................................................. 7

## I.    INTRODUCTION

Sheikh Abdullah Bin Khalid Al-Thani is a member of the ruling family of Qatar who has held various governmental positions including Minister of Awqaf and Islamic Affairs and Minister of the Interior.  He has no connection to the September 11 attacks, and does not know why he is a defendant in this multi-district litigation.  Although Sheikh Abdullah has been named as a defendant in three of the complaints before this Court, there are no substantive allegations against him in any of those pleadings.[1]  The More Definite Statement ("MDS") filed by the Euro Brokers and WTCP plaintiffs on September 27, 2005[2] is similarly defective and cannot sustain the claims against Sheikh Abdullah.  Not only was it filed in violation of the Court's Case Management Order ("CMO") #2, but the purported key "facts" it asserts are totally deficient in showing that Sheikh Abdullah had any connection to the September 11 attacks, that his alleged actions were aimed at the U.S., or that he knew that the actions of anyone else with whom at some time he allegedly may have been associated were directed against the U.S.

Given his high-level positions within the government of Qatar, and because any alleged actions he took were in his official capacities, Sheikh Abdullah is entitled to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA").  This Court therefore lacks subject matter jurisdiction.  This Court also lacks personal jurisdiction as

---

[1]   Those pleadings consist of the Complaint filed Sept. 10, 2004 by the plaintiffs in Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al. (Case No. 04-CV-7279, hereafter "Euro Brokers"), the Second Amended Complaint ("2AC") filed Sept. 30, 2005 by the plaintiffs in New York Marine and General Insurance Company v. Al Qaida et al. (Case No. 04-CV-6105, Docket #234, hereafter "NY Marine") and the Complaint filed Sept. 10, 2004 by the plaintiffs in World Trade Center Properties LLC et al. v. Al Baraka Investment and Development Corp. et al. (Case No. 04-CV-7280, hereafter "WTCP").

[2]   See 03 MDL 1570, Docket #1275.  The pleading title identifies the defendant as "Abdulla Bin Khalid Al Thani," while the attached Exhibit 1 identifies the defendant as "Abdullah bin Khalid bin al-Thani."  Burnett, et al. v. Al Baraka Investment and Development Corp., et al, (Case No. 03-CV-9849, hereafter "Burnett") appears in the caption of the MDS.  However, Sheikh Abdullah is not named as a defendant in the Third Amended Complaint filed Nov. 22, 2002 by the Burnett plaintiffs or in any other pleading in Burnett, and therefore there is no claim against him in that action.

Sheikh Abdullah does not have the requisite minimum contacts with the U.S.  Further, the plaintiffs' attempt to serve him by publication was improper and ineffective.  Finally, each of the counts against Sheikh Abdullah fails to state a claim.

Accordingly, Sheikh Abdullah respectfully moves, pursuant to Fed. R. Civ. P. 12(b), for dismissal on each of these grounds.

## II.  FACTUAL BACKGROUND

Sheikh Abdullah was born in Qatar in 1956, is a Qatari citizen and has not lived anywhere outside of Qatar during the past ten years.  (Declaration of Sheikh Abdullah (Mar. 21, 2006) ("Abdullah Decl.")[3] at ¶ 3.)  He is a member of the al-Thani ruling family of Qatar and has held official government positions since 1982.  (Id. at ¶ 4.)  In 1983, he joined the Armoured Brigade of the Qatari Army; he was appointed its Commander in 1984 and retired from the Army in 1992.  (Id. at ¶ 5.)  From 1992 to 1997, he was Qatar's Minister of Awqaf and Islamic Affairs.  (Id. at ¶ 6.)  The Ministry of Awqaf is responsible for supervising religious affairs, the "zakat" fund for the poor and needy, the administrative and financial affairs of the Sharia courts, and the "fatwa" authority.  (Id.)  Since 1997, Sheikh Abdullah has served as Qatar's Minister of the Interior.  (Id. at ¶ 7.)  The Ministry of Interior Affairs is responsible for maintaining general security and public order, detecting, investigating and preventing crime, protecting the lives and assets of both Qataris and non-Qataris within Qatar's borders, and regulating immigration and naturalization.  (Id. at ¶ 7; see also Qatar Ministry of Interior website at <http://www.moi.gov.qa/English /index.htm> (last visited Mar. 31, 2006).)

---

[3] As Sheikh Abdullah does not read, write or speak English, his original declaration is in Arabic.  The English translation of Sheikh Abdullah's declaration is annexed to the Notice of Motion.  Exhibit 1 to his declaration is the Declaration of Khalid Bin Mohd Al Attiya, who authenticated the translation of Sheikh Abdullah's original Arabic declaration.  Exhibit 2 is Sheikh Abdullah's original declaration.

Sheikh Abdullah has never traveled to the U.S. to conduct any form of business in either his official or his personal capacity. (Abdullah Decl. at ¶ 8.) The only times he has been in the U.S. were as an airplane passenger in May 1992 and September 1998, when he was in transit between Qatar and Canada. (Id.) Both times he spent no more than a few hours in New York while waiting for his connection. (Id.)

Sheikh Abdullah has never owned any property or other assets or maintained any bank account in the U.S. (Id. at ¶ 9.) He has not conducted any business in the U.S. through intermediaries or otherwise, nor has he conducted business with entities or individuals known by him to be based in the U.S. (Id. at ¶ 10.)

To his knowledge, he has never appeared on any official list of persons under investigation for terrorist activities or been investigated in connection with such matters outside of the present litigation. (Id. at ¶ 11.)

Sheikh Abdullah cannot speak, read or write English. (Id. at ¶ 12.) He does not subscribe to or read the *USA Today, International Herald Tribune* or *Al Quds Al Arabi* newspapers. (Id. at ¶ 13.)

## III.   THE PLAINTIFFS' ALLEGATIONS

There are no allegations whatsoever about Sheikh Abdullah in the Euro Brokers or WTCP complaints.[4] The NY Marine 2AC alleges only that he, among other defendants, "aided

---

[4]   These complaints assert violations of the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ("ATA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and claims of conspiracy, aiding and abetting, property damage, trespass, intentional and/or willful destruction of property, violation of international law, and/or punitive damages.

and abetted, conspired with, and provided material support and resources to, defendant Al Qaida and/or affiliated FTOs, associations, organizations or persons." (NY Marine 2AC at ¶ 45.)[5]

The MDS improperly filed by the Euro Brokers and WTCP plaintiffs alleges, in sum, that: (1) Sheikh Abdullah is "the Minister of Waqf (Endowments) and Islamic Affairs, who rose to prominence as the head of the army's elite Armored Regiment"; (2) his name has appeared on government lists of individuals under investigation for financing terrorism and he "was known to have aided and harbored terrorists and al Qaeda officers"; (3) in the mid-1990s, when he was the Qatari Minister of Religious Affairs, he hosted Defendant Khalid Sheikh Mohammed ("KSM") at his farm outside Doha; (4) "FBI officials have speculated that KSM may have been tipped off by al-Thani before agents were granted permission to enter Qatar and arrest him in 1996" and "[r]etired CIA officer Robert Baer said that once the agents arrived, the Head of Qatar's National Security indicated that a member of the ruling family (most likely al-Thani) ordered him to issue blank passports to four individuals," including KSM and "top bin Laden aides Mohammed Atef and Ayman Zawahiri"; (5) "in late 2001, Saudi intelligence has indicated that KSM may have spent two weeks in Qatar 'with the help of prominent patrons' that most likely included al-Thani, amongst others"; (6) "intelligence reports have indicated that al-Thani operated a safe house (possibly the same farm where KSM stayed) for another high-ranking al Qaeda official, Abu Mussab al-Zarqawi" and "[o]fficials have also indicated that al-Thani 'provided Qatari passports and more than $1 million in a special bank account to finance the network' in Baghdad"; and (7) "Al-Thani has been characterized by the Baghdad publication *al-Thawrah* as the 'standard

---

[5]    The NY Marine 2AC asserts violations of RICO and the ATA and claims of trespass, conspiracy, negligence and punitive damages.

bearer' of the Qatari fundamentalists and a strong driving force behind the 'alliance deal struck between the State of Qatar and the Emirate of Afghanistan' during the rule of the Taliban."

## IV.   ARGUMENT

### A.   The Complaints Should Be Dismissed Because They Contain No Factual Allegations Against Sheikh Abdullah.

Plaintiffs must "give [d]efendants fair and adequate notice of their claims and the grounds on which they rest." In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("Terrorist Attacks II") (citation omitted).  As the complaints filed by the Euro Brokers and WTCP plaintiffs fail to contain any allegations against Sheikh Abdullah, their claims against him must be dismissed.[6]

The NY Marine 2AC also fails to give Sheikh Abdullah fair and adequate notice of the claims against him or the grounds on which the claims rest, as it mentions him only once, in the conclusory boilerplate allegation that he, among hundreds of others, "aided and abetted, conspired with, and provided material support and resources to, defendant Al Qaida and/or affiliated FTOs, associations, organizations or persons."  (NY Marine 2AC at ¶ 45.)  "Legal conclusions done up as factual allegations are not facts and cannot substitute for facts." Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks), 349 F. Supp. 2d 765, 813 (S.D.N.Y. 2005) ("Terrorist Attacks I") (quotation and citation omitted).  A pleading cannot survive dismissal when it contains "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."  Terrorist Attacks II at 564 (quotation and citations omitted).  This Court has found that identical allegations against other defendants did not adequately provide the defendants "with notice as to how they provided material support to al

---

[6]   As explained in Section IV.B. below, the Court should reject the Euro Brokers and WTCP plaintiffs' improperly-filed MDS and view these complaints without the MDS as the operative pleadings.

Qaeda terrorists" and thus failed to state a claim for relief on a RICO theory or under the ATA and, accordingly, should be dismissed. Id. at 572.  The NY Marine plaintiffs' claims against Sheikh Abdullah should be dismissed for the same reasons.

**B.     The Court Should Disregard Allegations Made In The MDS.**

The MDS filed by the Euro Brokers and WTCP plaintiffs should be disregarded because the plaintiffs failed to comply with paragraph 13 of CMO #2, as amended, which required each of the plaintiffs to file by September 30, 2005[7] an Amended Complaint that included all amendments, including MDSs, made prior to that date.[8]  As admitted by the plaintiffs, "[t]he clear objective of including the ... deadline for filing amended complaints in CMO #2 was to ensure that any and all additional allegations contained in MDSs or other filings ultimately would be incorporated into a single pleading in each of the cases."[9]  By simply listing or attaching dozens of documents to Notices of Consolidation of Pleadings, the plaintiffs disregard and defeat this "clear objective," as the allegations are not organized in a way that would assist the defendants in understanding and responding to the claims against them.   Neither the defendants nor this Court should have to bear the burden of searching through the plaintiffs' disorganized filings for relevant allegations.[10]  See Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998) (noting that parties have an "unflagging duty to comply with clearly

---

[7]    The Order originally set a deadline of July 31, 2005.  The Court subsequently extended this deadline to September 30, 2005.  See Endorsed Letter from Sean P. Carter, July 27, 2005 (03 MDL 1570 Docket #1073) ("July 27, 2005 Endorsed Letter").

[8]    Instead these plaintiffs filed purported Notices of Consolidation of Pleadings listing numerous previously-filed documents, including the MDS as to Sheikh Abdullah, that they now deemed consolidated with their complaints,. (See 03 MDL 1570 Docket #1378-1379.)

[9]    See July 27, 2005 Endorsed Letter.

[10]   The plaintiffs' filings also violate Fed. R. Civ. P. 10(b), which requires complaints to list their allegations in sequentially numbered paragraphs and Fed. R. Civ. P. 8, which requires a "short and plain" statement of the grounds for jurisdiction and the plaintiffs' claims. See Gordon v. Green, 602 F.2d 743, 746 (5th Cir. 1979) ("the law does not require, nor does justice demand, that a judge must grope through (thousands of) pages of irrational, prolix, and redundant pleadings.") (quotation and citation omitted).

communicated case-management orders" and that "a litigant who ignores a case-management deadline does so at his peril") (citations omitted).

Because the plaintiffs have failed to comply with paragraph 13 of CMO #2, the Court should strike the new filings and any documents incorporated into those pleadings by reference, including the MDS as to Sheikh Abdullah, and instead only consider the allegations contained in the last-filed complaint in each of the matters. Alternatively, the Court should consider dismissal of the actions for failure to comply with CMO #2.[11]

### C.   Even If The MDS May Be Considered, It Fails To Cure The Deficiencies In The Complaints And The Claims Should Be Dismissed.

Even if the Court were to consider the MDS, the Euro Brokers and WTCP plaintiffs' claims against Sheikh Abdullah must be dismissed because: (1) they relate to actions undertaken in Sheikh Abdullah's official capacities, he is immune from suit under the FSIA, and the exceptions to the FSIA do not apply; (2) they are insufficient to show that his actions were aimed at the U.S. or had any connection to the September 11 attacks; (3) service of process was improper; and (4) the allegations set forth in the MDS are erroneous, speculative, conclusory and irrelevant and fail to state a claim against him.[12]

---

[11] "The Federal Rules of Civil Procedure provide that failures to comply with case management orders entered by the court pursuant to Rule 16(b) are subject to the sanctions available to courts to enforce its orders including the authority to make such orders 'as are just.' ..." Arnold v. Krause, Inc., 232 F.R.D. 58, 2004 WL 3574033, *8 (W.D.N.Y. July 23, 2004) (citing Fed. R. Civ. P. 16(f); other citations omitted); see also MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (court should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document").

[12] The NY Marine 2AC suffers from these deficiencies as well, as further discussed below.

1.      Sheikh Abdullah Is Immune From Suit Under The FSIA.

a)      Standard of Review

"Under the FSIA, a foreign state and its instrumentalities are presumed immune from United States courts' jurisdiction." Terrorist Attacks I, 349 F. Supp. 2d at 782 (citations omitted). Immunity under the FSIA extends to agents of foreign states where such individuals were acting in their official capacities. Id. at 788-89 (finding that the third-highest ranking member of the Saudi government and the Director of Saudi Arabia's Department of General Intelligence were immune from suit for any of their alleged actions performed in their official capacities, provided no exception applied).[13] "Where there is a dispute  about whether an individual was acting in an official capacity, the relevant inquiry … focuses on the nature of the individual's alleged actions, rather than the alleged motives underlying them." Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 14 (D.D.C. 2003) ("Burnett II") (quotation and citation omitted). A "convergence between official duties and personal interest" does not render the action at issue "any less an action of [a] sovereign." Id.

The exceptions to immunity set forth in the FSIA "provide the sole basis for obtaining subject matter jurisdiction over a foreign state and its instrumentalities in federal court." Terrorist Attacks I, 349 F. Supp. 2d at 782 (citations omitted). The Court therefore "must inquire at the threshold of every action against a foreign state [and its instrumentalities] whether the exercise of its jurisdiction is appropriate." Id. "In a Rule 12(b)(1) motion to dismiss challenging subject matter jurisdiction under the FSIA, the defendant must first present a prima facie case that it is a foreign sovereign." Id. The burden then shifts to the plaintiff to present "evidence

---

[13]   See also Terrorist Attacks II, 392 F. Supp. 2d at 551, 553 (finding that the Saudi Arabian Minister of Interior was a foreign state for purposes of the FSIA and thus immune from suit to the extent allegations against him concerned official functions, unless an exception applied).

showing that, under the exceptions to the FSIA, immunity should not be granted." Terrorist Attacks II, 392 F. Supp. 2d at 547 (quotation and citation omitted).

"[O]n a challenge [to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Filetech S.A. v. Fr. Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) (quotation and citation omitted).[14]   The Court "is required to give great weight to any extrinsic submissions made by the foreign defendants regarding the scope of their official responsibilities." Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (quotation and citation omitted).

> b)  Sheikh Abdullah Is Immune From Suit Because He Is A Government Official And Acted in His Official Capacity.

The MDS erroneously alleges that Sheikh Abdullah currently is "the Minister of Waqf (Endowments) and Islamic Affairs." (MDS at ¶ 1.)  In fact, Sheikh Abdullah was Qatar's Minister of Awqaf and Islamic Affairs from 1992 to 1997; since that time he has served as Qatar's Minister of the Interior. (Abdullah Decl. at ¶¶ 6-7.)  All of the allegations made in the MDS pertain to actions that, by the plaintiffs' own admission, were taken when Sheikh Abdullah was serving in one of these governmental positions. (See MDS at ¶¶ 3-7.)[15]  For example, the MDS alleges that when Sheikh Abdullah was the Qatari Minister of Religious Affairs, he hosted KSM at his farm outside Doha. (MDS at ¶ 3.)  It also alleges that he "most likely" was involved in the issuance of passports to people allegedly associated with al Qaeda. (MDS at ¶ 4.)  Nothing

---

[14]  See also Daventree Ltd. v. Republic of Azer., 349 F. Supp. 2d 736, 748 (S.D.N.Y. 2004) ("In making a determination as to the existence of subject matter jurisdiction, a court may consider evidence contained in affidavits or public documents as well as facts alleged in the pleadings.") (citations omitted).

[15]  The allegations are also conclusory, speculative and/or irrelevant and therefore fail to state a claim, as further discussed in Section IV.C.3 below.

in the MDS suggests that any of the alleged actions were undertaken in anything other than Sheikh Abdullah's official capacity – indeed, the plaintiffs' reference to Sheikh Abdullah's official capacity and the related description of his alleged actions, as well as Sheikh Abdullah's description of his responsibilities first as Minister of Awqaf and Islamic Affairs and then as Minister of the Interior (Abdullah Decl. at ¶¶ 6-7), confirm that they were.  Accordingly, Sheikh Abdullah must be considered a foreign state for FSIA purposes and thus immune from suit unless the plaintiffs present evidence showing that one of the FSIA's exception applies –which they do not, as shown below.  See Terrorist Attacks II, 392 F. Supp. 2d at 551, 553.

       c)      The Exceptions to FSIA Immunity Do Not Apply.

The plaintiffs do not clearly plead the applicability of *any* of the FSIA's exceptions to Sheikh Abdullah and fail to meet their burden of coming forward with evidence to show that Sheikh Abdullah is not entitled to immunity under either of the two exceptions most often raised: the "commercial activities" exception, 28 U.S.C. § 1605(a)(2), and the "non-commercial tort" exception," 28 U.S.C. § 1605(a)(5).

       i.      The Commercial Activity Exception Does Not Apply.

Under 28 U.S.C. § 1605(a)(2), foreign states are not immune in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United Stated by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

"Crucial to each of the three clauses of [§] 1605(a)(2), is the phrase 'commercial activity.'" Burnett II, 292 F. Supp. 2d at 218 (quoting Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria, 647 F.2d 300, 307 (2d Cir. 1981)).  The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," where the

"commercial character" of the activity is determined "by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). "The Second Circuit has made very clear that, for purposes of the FSIA, a commercial activity must be one in which a private person can engage lawfully." Terrorist Attacks I, 349 F. Supp. 2d at 793 (citations omitted).

The NY Marine plaintiffs' allegation that Sheikh Abdullah, among hundreds of other defendants, "aided and abetted, conspired with, and provided material support and resources to, defendant Al Qaida and/or affiliated FTOs, associations, organizations or persons" (NY Marine 2AC at ¶ 45) is insufficient to show that Sheikh Abdullah engaged in a lawful commercial activity and therefore fails to establish the commercial activities exception. Similarly, because the MDS filed by the Euro Broker and WTCP plaintiffs alleges only a series of acts by Sheikh Abdullah relating to hosting or otherwise assisting alleged terrorists (MDS at ¶¶ 3-6), and being the "'standard bearer' of the Qatari 'fundamentalists'" (MDS at ¶ 7), it too is deficient. None of these alleged acts are "the type of actions by which a private party engages in trade and traffic or commerce," and the commercial activity exception therefore cannot apply. Terrorist Attacks I, 349 F. Supp. 2d at 793 (quotation and citation omitted).[16]

    ii.  The Non-Commercial Tort Exception Does Not Apply.

Pursuant to § 1603(a)(5), a foreign state is not immune from jurisdiction in any case

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of any official or employee of that foreign state while acting within the scope of his office or employment.

---

[16] See also Burnett II, 292 F. Supp. 2d at 22 (finding that it was "too much of a stretch" to find the allegations against Saudi Arabia's third-ranking government official "connected to" commercial activity).

Under Second Circuit law, for the tort exception to provide a basis for jurisdiction, the plaintiffs must show: (1) that Sheikh Abdullah's alleged acts were tortious under the laws of New York and caused the plaintiffs' injuries; and (2) that his actions were not "grounded in the social, economic or political policies" of Qatar and therefore not discretionary. Terrorist Attacks II, 392 F. Supp. 2d at 554 (citation omitted). "The law does not permit Plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints—and then ... rely on the federal court to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law." Terrorist Attacks I, 349 F. Supp. 2d at 801 (quotation and citation omitted).

Because Sheikh Abdullah was not alleged to have been an actual perpetrator of the September 11 attacks, the plaintiffs rely on theories of conspiracy and aiding and abetting. As explained by the Court,

> Conspiracy and aiding and abetting are varieties of concerted-action liability: conspiracy requires an agreement to commit a tortious act ..., aiding and abetting requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer .... In order to be liable for acting in concert with the primary tortfeasor under either theory, the defendant must know the wrongful nature of the primary actor's conduct.

Terrorist Attacks II, 392 F. Supp. 2d at 554 (quotation and citation omitted). Thus, to survive a motion to dismiss, the plaintiffs must "plead facts from which it reasonably can be inferred that [Sheikh Abdullah] knew or should have known that [his] tortious actions were supporting terrorists or terrorist fronts." Id. (citations omitted).[17]

---

[17] See also Terrorist Attacks I, 349 F. Supp. 2d at 801 ("There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.").

There are no facts alleged in any of the complaints -- or in the conclusory and speculative MDS -- that remotely establish that Sheikh Abdullah knowingly provided assistance or encouragement to the perpetrators of the September 11 attacks, that he knew of the wrongful nature of their conduct, or that he was in any way supporting terrorist acts in the U.S.  For example, the MDS alleges that "[o]fficials have also indicated that al-Thani 'provided Qatari passports and more than $1 million in a special bank account to finance the network' in Baghdad."  (MDS at ¶ 6.)  This allegation is insufficient because there is no assertion that there was any relationship between Sheikh Abdullah's alleged actions and the September 11 attacks.[18] The remaining allegations in the MDS are equally flawed.

Even if the Court were to find that the plaintiffs adequately pled a tort against Sheikh Abdullah, the discretionary function exception prevents the Court from exercising jurisdiction over him in his official capacity.  See Terrorist Attacks II, 392 F. Supp. 2d at 555 (finding that the Court lacked subject matter jurisdiction over the Saudi Arabian Minister of Interior and the President of the Saudi High Commission).  As Qatari Minister of the Interior, Sheikh Abdullah performs functions similar to those of Prince Naif, the Saudi Arabian Minister of Interior.[19]  This Court found that Prince Naif's role as Minister of Interior (among other duties) "makes it 'nearly self-evident' that his official acts are 'squarely covered by the discretionary function' language of [the FSIA]."  Terrorist Attacks II, 392 F. Supp. 2d at 556.  The same reasoning applies here. Accordingly, the tort exception cannot provide a basis for jurisdiction over Sheikh Abdullah and his Motion to Dismiss should be granted.

---

[18]  The plaintiffs also fail to identify, among other things, the officials, the bank account or the timing of the alleged funding to "the network."

[19]  Compare Abdullah Decl. at ¶ 7 with Terrorist Attacks II, 392 F. Supp. 2d at 556 (noting that as Minister of Interior, Prince Naif – like Sheikh Abdullah – oversees matters relating to public security, civil defense, police, passports, special security special security, and investigative forces).

2.    <u>This Court Lacks Personal Jurisdiction Over Sheikh Abdullah Pursuant to Either The New York Long-Arm Statute Or Fed. R. Civ. P. 4(k)</u>.

    a)    Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiffs bear the burden of showing that the Court has jurisdiction over the defendant.  <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999) (citation omitted).  This Court will not "accept legally conclusory assertions or draw argumentative inferences."  <u>Terrorist Attacks I</u>, 349 F. Supp. 2d at 804 (quotation and citation omitted).  Neither the New York Long-Arm Statute[20] nor Fed. R. Civ. P. 4(k) provides a basis for exercising personal jurisdiction over Sheikh Abdullah.  Moreover, exercise of personal jurisdiction under either basis fails to comport with the due process requirements of minimum contacts and reasonableness.  <u>See</u> <u>Terrorist Attacks II</u>, 392 F. Supp. 2d at 557.

    b)    The New York Long-Arm Statute Does Not Provide The Basis For Personal Jurisdiction Over Sheikh Abdullah.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process."  <u>Terrorist Attacks I</u>, 349 F. Supp. 2d at 804 (quotation and citation omitted).  In such cases, the Court first must determine whether New York law would confer jurisdiction through its long-arm statute, N.Y. C.P.L.R. § 302(a)(2), and then must decide whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment.  <u>Id.</u> (citations omitted).

---

[20]   The plaintiffs have not alleged that Sheikh Abdullah is subject to personal jurisdiction in New York.  However, Sheikh Abdullah addresses this issue in an abundance of caution as the long arm statute theoretically could apply to the plaintiffs' common-law claims if there was no jurisdiction over their federal question claims.

While "acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)," Id. at 805 (quotation and citation omitted), the "bland assertion of conspiracy or agency is insufficient to establish [personal] jurisdiction for the purposes of section 302(a)(2)." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). (quotation and citation omitted). Rather, to establish personal jurisdiction on a conspiracy theory, the plaintiffs must: (1) make a prima facie showing of conspiracy; (2) allege specific facts to warrant the inference that Sheikh Abdullah was a member of the conspiracy; and (3) show that his co-conspirator committed a tort in New York. Terrorist Attacks I, 349 F. Supp. 2d at 805 (citations omitted). To "warrant the inference" that Sheikh Abdullah was a member of the conspiracy, the plaintiffs must show that: (a) he had an awareness of the effects in New York of his activity; (b) the activity of the co-conspirators in New York was to benefit the out-of-state conspirators; and (c) the co-conspirators acting in New York acted "at the direction or under the control" or "at the request of or on behalf of" the out-of-state defendants. Id.

This Court has found that without supporting factual allegations, the claim that all defendants conspired with the al-Qaeda terrorists to perpetrate the attacks of September 11 "is insufficient to establish an agency relationship." Id. Neither the complaints nor the MDS allege any specific facts from which the Court could infer that Sheikh Abdullah "directed, controlled, or requested" al Qaeda to undertake its terrorist activities, "[n]or are there any specific allegations of [his] knowledge of, or consent to those activities." Id. at 806 (finding that personal jurisdiction over certain defendants could not be based on a New York long-arm conspiracy theory). Absent specific factual allegations that permit an inference that Sheikh Abdullah intended to assist al Qaeda in carrying out the September 11 attacks against the United States and

entered into an agreement to do so, personal jurisdiction over Sheikh Abdullah "cannot be based on a New York long-arm conspiracy theory." Id.

### c) Fed. R. Civ. P. 4(k) Does Not Provide The Basis For Personal Jurisdiction Over Sheikh Abdullah.

The plaintiffs similarly cannot show a basis for this Court's exercise of personal jurisdiction over Sheikh Abdullah under Fed. R. Civ. P. 4(k). First, because Sheikh Abdullah was not served in the U.S., Rule 4(k)(1) does not apply.[21] Id. at 806-07. Second, Rule 4(k)(2) requires the defendant to have "sufficient contacts with the United States as a whole such that the exercise of jurisdiction does not violate Fifth Amendment due process."[22] Id. at 807. Here, as further discussed below, Sheikh Abdullah does not have such contacts.

### d) The Plaintiffs Cannot Satisfy The Due Process Requirement of Minimum Contacts.

Any exercise of personal jurisdiction, whether under the New York long-arm statute or Fed. R. Civ. P. 4(k), must comport with the due process requirements of minimum contacts and reasonableness. See Terrorist Attacks, 349 F. Supp. 2d at 809. Minimum contacts may be found under one of two theories, depending on the nature of the defendant's contacts with the forum. Chaiken v. VV Publ. Corp., 119 F.3d 1018, 1027-28 (2d Cir. 1997); Terrorist Attacks I, 349 F. Supp. 2d at 811. General jurisdiction may be exercised where a defendant's contacts with the forum are substantial, continuous and systematic, whether or not the allegations against him

---

[21] Fed. R. Civ. P. 4(k)(1) provides that service is effective to establish personal jurisdiction over a defendant when authorized by a statute of the United States. While the ATA has a nationwide service of process provision, Sheikh Abdullah was not served in a judicial district within the United States, as required under that statute. See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").

[22] Fed. R. Civ. P. 4(k)(2) provides that service is effective to establish personal jurisdiction with respect to claims arising under federal law over a defendant who is not subject to the jurisdiction of the court of general jurisdiction of any state, where the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

relate to matters arising out of his contacts with the forum.   <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984).   Specific jurisdiction may be exercised where the cause of action arises out of the defendant's contacts with the forum.   <u>Terrorist Attacks I</u>, 349 F. Supp. 2d at 811 (citations omitted).

"Depending on the basis for jurisdiction, due process under either the Fifth or Fourteenth Amendment applies."   <u>Id.</u> at 810.   Under the New York long-arm statute, the exercise of personal jurisdiction requires Sheikh Abdullah to have minimum contacts with New York pursuant to the Fourteenth Amendment; under Rule 4(k), the exercise of personal jurisdiction requires Sheikh Abdullah to have minimum contacts with the U.S. as a whole pursuant to the Fifth Amendment. <u>Id.</u> Here, the analysis is simple: Sheikh Abdullah has not had minimum contacts with either New York state or the U.S. as a whole – indeed, he has had virtually none.

None of the plaintiffs even attempt to allege facts pertaining to Sheikh Abdullah that show general jurisdiction, nor could they.   Sheikh Abdullah has no systematic or continuous contacts with either New York or the U.S.   His two visits to the U.S., limited to a few hours while in transit to Canada in 1992 and 1998 (<u>See</u> Abdullah Decl. at ¶ 8), do not come close to meeting the requirements for general jurisdiction.   <u>See Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG</u>, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) (finding that the defendant's "occasional trips to New York," estimated at four to five visits per year, were an insufficient basis for jurisdiction).   Sheikh Abdullah's lack of any property, bank accounts, investments or conduct of either official or personal business in the U.S., or with entities or individuals known by him to be based in the U.S. (Abdullah Decl. at ¶¶ 9, 10) further undercuts any argument that the Court should exercise general jurisdiction over him.   <u>See Terrorist Attacks I</u>, 349 F. Supp. 2d at 817-818 (granting motions to dismiss for lack of personal jurisdiction over

two defendants who owned no real property, held no bank accounts or investments in the US, had not conducted any business in the US and at most, had visited the US only a few times over the past ten years).

Because Sheikh Abdullah is a non-resident defendant who is alleged to have committed a tort outside the forum that somehow caused injury within the forum, to establish specific jurisdiction, the plaintiffs must show not only that their claims against him relate to his contacts with the U.S. (or New York), but also that he "expressly aimed" his allegedly tortious conduct at the forum and that he was a "primary participant[] in an alleged wrongdoing intentionally directed" at the forum.  Calder v. Jones, 465 U.S. 783, 790 (1984).[23]  The plaintiffs cannot meet this burden.  First, none of the plaintiffs have pled any facts about Sheikh Abdullah to demonstrate that their claims against him arise out of, or relate to, his alleged contacts with the U.S.  While the MDS alleges that prior to the events of September 11, Sheikh Abdullah's name "appeared on government lists of individuals under investigation for financing terrorism" (MDS at ¶ 2), the MDS does not identify these lists or the source of its information.  Sheikh Abdullah's name does not appear on the Office of Foreign Assets Control Specially Designated Nationals and Blocked Persons List[24] and to his knowledge, he has never appeared on any official list of persons under investigation for terrorist activities.  (Abdullah Decl. at ¶ 11.)  Even if he, along with thousands of others, did or does appear on such a list, that, without more, provides no support for minimum contacts.  Second, the plaintiffs have not sufficiently alleged that Sheikh Abdullah "expressly aimed" or "purposefully directed" his activities at the U.S.  Third, the

---

[23] See also Time, Inc. v. Simpson, No. 02 Civ. 4917 (MBM), 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003) (finding that Calder turned on "personal involvement of the individual defendants in the particular conduct that gave rise to the plaintiff's claim" and granting motion to dismiss because the plaintiff had failed to demonstrate that the defendant had any personal involvement in the events giving rise to the litigation).

[24] See <http://www.ustreas.gov/offices/enforcement/ofac/sdn/> (last visited Mar. 31, 2006).

plaintiffs have not alleged that Sheikh Abdullah was a "primary participant" in the September 11 attacks. Accordingly, there is no basis for exercising specific jurisdiction over Sheikh Abdullah. See Terrorist Attacks I, 349 F. Supp. 2d at 822 (dismissing complaint against three individuals where there were no factual allegations "from which the Court could infer that they purposefully directed their activities at the United States, that they were members of a conspiracy pursuant to the New York long-arm statute, or that they have any general business contacts with the United States").

3.   The Plaintiffs' Improper Service of Sheikh Abdullah Warrants Quashing Service Of Process And Dismissing The Complaints.

The U.S. Supreme Court has held that "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." Id. (citations omitted). The plaintiffs' attempts to serve Sheikh Abdullah by publication were defective and mandate quashing of service of process and dismissal of the complaints against him for several reasons.

First, as a sovereign defendant, Sheikh Abdullah may only be served by the service of process methods set forth in the FSIA, 28 U.S.C. § 1608(b).[25] Section 1608(b) does not permit service by publication.

Second, to the extent the plaintiffs would rely on the Court's September 15, 2004 Order Granting Joint Plaintiffs' Motion for Leave to Serve Specified Defendants by Publication

---

[25] See Fed. R. Civ. P. 4(j)(1) ("Service upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608."). See also Seramur v. Saudi Arabian Airlines, 934 F. Supp. 48, 51 (E.D.N.Y. 1996) ("Section 1608(b) provides the exclusive means by which service of process may be effected upon [the defendant]").

Pursuant to Fed. R. Civ. Pro. 4(f)(3) (the "Order"), [26] their reliance is misplaced.  In moving the Court for the Order, the plaintiffs did not disclose to the Court that Sheikh Abdullah was a foreign sovereign and that Section 1608(b) therefore governs service of process upon him. Moreover, the Order limits its authorization of service by publication to "defendants specified in Attachment A *for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted and rejected or otherwise not responded to at an address that was discovered*."  (Order at 1 (emphasis added).) Sheikh Abdullah is not such a defendant.  He is the Qatar Minister of the Interior.  Contact information for the Qatar Ministry of the Interior is easily located through an Internet Google search (see, e.g., <http://www.moi.gov.qa/English/ Locations.htm> (last visited Mar. 31, 2006)), and the plaintiffs' own process server, Nelson Tucker of Process Service Network, claims on his website to have the ability to serve defendants "<u>Anywhere</u> in the World," including Qatar.  (See <http://www.processnet1.com/internat.htm> (last visited Mar. 31, 2006) (emphasis on website).) The plaintiffs have offered no credible explanation as to why Process Service Network could not have served Sheikh Abdullah by traditional means of service.

Third, service by publication does not comport with due process where, as here, the publication is in newspapers that are not widely distributed, if at all, in the defendant's community.  See <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 315 (1950).  In this case, the plaintiffs attempted to serve Sheikh Abdullah by publication in three newspapers that they knew, or should have known, were unlikely to reach him: *USA Today*, the *International Herald Tribune* and *Al Quds Al Arabi*.  In Qatar, a country with a population of nearly ¾

---

[26]   (<u>See</u> 03 MDL 1570 Docket # 445 (Sept. 15, 2004).)

million,[27] these newspapers have total circulations that range from 55 to, at most, 2,000, and *USA Today*, the *International Herald Tribune* are distributed primarily through hotels and Qatar Airways.  (Abdullah Decl. at ¶ 13.)  Moreover, Sheikh Abdullah does not speak, read or write English, rendering the publications in *USA Today* and *International Herald Tribune* a nullity, and he does not subscribe to or read *Al Quds Al Arabi*.  (Abdullah Decl. at ¶¶ 12-13.)

Finally, service by publication is a "poor and sometimes a hopeless substitute for actual service of notice," and "[i]ts justification is difficult at best."  New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953).  It should be resorted to only where the plaintiffs are unable to ascertain a defendant's address through reasonable means.  Id.  As just noted, the plaintiffs here were not justified in seeking service by publication on Sheikh Abdullah.

Because the attempted service of process against Sheikh Abdullah was improper and inadequate, it must be quashed and the Court should dismiss each of the complaints against him pursuant to Fed. R. Civ. P. 12(b)(5).

4.       The Plaintiffs Have Failed To State A RICO, ATA Or Any Other Claim.

To state a claim under civil RICO, the plaintiffs must plead: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Terrorist Attacks I, 349 F. Supp. 2d at 826 (quotation and citation omitted).  "Because the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment."  Id. at 827.  To state a claim for liability under § 1962(c), the

---

[27]  See U.S. Department of State's "Background Note: Qatar" (Nov. 2004) (stating that as of 2004, Qatar had an estimated population of 744,000), available at <http://www.state.gov/r/pa/ei/bgn/5437.htm> (last visited Mar. 31, 2006).

plaintiffs must allege that the defendant "participated in the operation or management of the enterprise itself, which requires that [the defendant] must have had some part in directing the enterprise's affairs." Terrorist Attacks II, 392 F. Supp. 2d at 565 ("A defendant does not 'direct' and conduct enterprise's affairs under §1962(c) merely by engaging in wrongful conduct that assists the enterprise.") (quotation and citation omitted.)  In addition, "in the context of a motion to dismiss ... to state a claim under [§] 1962(d), the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." Terrorist Attacks I, 349 F. Supp. 2d at 827 ("Bare and conclusory allegations are insufficient to withstand a motion to dismiss and a plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the [RICO] conspiracy.") (quotation and citation omitted).

To state a claim under the ATA, the plaintiffs must plead that the defendant "knew of al Qaeda's illegal activities, ... desired to help those activities succeed, and ... engaged in some act of helping the illegal activities." Terrorist Attacks II, 392 F. Supp. 2d at 564 (quotation and citation omitted).  To establish liability under either conspiracy or aiding and abetting, the plaintiffs must show that the defendant knew "the wrongful nature of the primary actor's conduct." Terrorist Attacks I, 349 F. Supp. 2d at 826.

As explained in Section IV.A above, the Euro Brokers and WTCP complaints contain no allegations against Sheikh Abdullah and thus cannot state a claim under any legal theory, and the Court previously has found the conclusory allegation against Sheikh Abdullah in the NY Marine 2AC insufficient to state a claim against other defendants.  See Terrorist Attacks II, 392 F. Supp. 2d at 572 (finding this same allegation as to other defendants failed to state a claim for relief under either RICO or the ATA).

The MDS also fails to state a claim, as it consists of nothing more than conclusory and/or irrelevant allegations and unfounded speculation.[28]   For example, the MDS alleges that in the mid-1990s, when Sheikh Abdullah was Minister of Religious Affairs (i.e., at least four years before the September 11 attacks), he hosted KSM at his farm outside Doha, and then digresses into a discussion of individuals convicted in the "Bojinka plot," without any explanation how that might establish a causal link between Sheikh Abdullah and the September 11 attacks. (MDS at ¶ 3.)[29]   The MDS also alleges that Sheikh Abdullah has been characterized by a news publication as a "fundamentalist" and that he has "been known to align himself ideologically with the top Muslim cleric in Qatar." (MDS at ¶ 7.) While it is unclear what the plaintiffs mean or intend by these allegations, what is clear is that neither constitutes any claim of wrongdoing by Sheikh Abdullah at all, let alone in connection with the September 11 attacks.

Each of the allegations in the MDS fails to state a civil RICO claim under any theory because they fail to specify how and in what manner Sheikh Abdullah: engaged in a pattern constituting racketeering activity;[30] conspired to invest the proceeds of a pattern of racketeering activity in the enterprise or to participate in the operation or management of the enterprise;[31]

---

[28]   This is evidenced by the repeated use of words and phrases such as "have speculated," "may have," "most likely," "possibly," "is believed to have," and "suggest." (See, e.g., MDS at ¶ 4 (3 instances), ¶ 5 (2 instances), ¶ 6 (2 instances), ¶ 7 (1 instance).)  The plaintiffs also fail to identify the sources of most of their allegations. Instead, they rely on vague references to unnamed "officials" and "intelligence reports" or state that he "was known" to have taken certain actions, without any indication of to whom such alleged facts were known, or how. (See, e.g., MDS at ¶¶ 2, 5, 6.)

[29]   The MDS also alleges that Sheikh Abdullah, at some unspecified point in time, may have operated a "safe house" for Abu Mussab-al-Zarqawi, who is "believed" to have provided training, again at some unspecified time, to an al Qaeda affiliated organization in Kurdish Northern Iraq and, as discussed earlier, that unidentified "[o]fficials indicated" that at some unspecified point in time Sheikh Abdullah "provided Qatari passports and more than $1 million in a special bank account to finance the network" in Baghdad. (MDS at ¶ 6.)  These allegations similarly fail to state a claim as they, too, fail to establish a causal link between Sheikh Abdullah and the September 11 attacks.

[30]   See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

[31]   See, e.g., Terrorist Attacks I, 349 F. Supp. 2d at 827.

23

participated in the operation or management of a RICO enterprise;[32] and/or caused injury from his investment of the racketeering income.[33]   The plaintiffs also have failed to comply with the requirement of this Court that "[a]ll parties asserting claims pursuant to [RICO] must file and serve upon the opposing party a RICO Statement [utilizing a form prepared by the Court] within twenty days of filing the pleading asserting the RICO claim."[34]   Accordingly, the civil RICO counts in the pleadings must be dismissed.

Each of the allegations in the MDS also fails to state a claim under the ATA because they fail to show that Sheikh Abdullah knowingly and intentionally provided material support to al Qaeda and that he knew the wrongful nature of al Qaeda's conduct.  See Terrorist Attacks I, 349 F. Supp. 2d at 826.[35]

---

[32] See, e.g., Terrorist Attacks II, 392 F. Supp. 2d at 567-569.

[33] See, e.g., Terrorist Attacks I, 349 F. Supp. 2d at 827.

[34] See   Instructions   for   Filing   RICO   Statement   (available   at   <   http://www.nysd.uscourts.gov /Individual_Practices/rico.pdf > (last visited Mar. 31, 2006)) at 1.

[35] Apart from the fact that it is not itself a pleading, the MDS' effort to state a claim against Sheikh Abdullah under state law causes of action is equally deficient as the plaintiffs have not adequately alleged the requisite elements of any such claim.  Further, no independent cause of action exists for punitive damages or conspiracy.  See Mayes v. UVI Holdings, Inc., 280 A.D.2d 153, 161, 723 N.Y.S. 2d 151, 157 (1st Dep't 2001) ("there is no independent cause of action for punitive damages."); Chrysler, 778 F. Supp. at 1267 ("It is well established that civil conspiracy is not an independent tort under New York law.") (citations omitted).

V.    **CONCLUSION**

For the foregoing reasons, defendant Abdullah Bin Khalid Al-Thani respectfully requests

that this Court grant his Motion to Dismiss.

Respectfully submitted,

**DLA PIPER RUDNICK GRAY CARY US LLP**

David E. Nachman (DN-6684)
1251 Avenue of the Americas
29th Floor
New York, NY  10020-1104
Telephone:  (212) 835-6000

Sheldon Krantz*
Rachel Tausend*
1200 Nineteenth Street, NW
Washington, DC  20036
Telephone: (202) 861-3900

Attorneys for Defendant
Abdullah Bin Khalid Al-Thani

April 7, 2006                    * Application for admission pro hac vice pending

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2006, I caused an electronic copy of the foregoing Notice of Motion, annexed Declaration of Abdullah Bin Khalid Al-Thani and Memorandum of Law in Support of Abdullah Bin Khalid Al-Thani's Motion to Dismiss to be served by the Court's electronic filing system.

David E. Nachman