UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |

This document relates to:

*Burnett, et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 03-CV-5738 (RCC)
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 03-CV-9849 (RCC)
*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 04-CV-7279 (RCC)
*World Trade Ctr. Prop., et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 04-CV-7280 (RCC)


**AHMED ZAKI YAMANI'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO VACATE DEFAULTS AND DISMISS THE CLAIMS AGAINST HIM**


Rayner M. Hamilton
Attorney-at-Law
1155 Avenue of the Americas
New York, New York 10036

June 5, 2006                                             *Attorney for Ahmed Zaki Yamani*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.  DEFAULTS WERE IMPROPERLY OBTAINED AGAINST MR. YAMANI
    AND SHOULD BE VACATED ....................................................................... 2

    A.  The Court Should Set Aside The Entries Of Default For Good Cause
        Pursuant To Rule 55(c) Based On Plaintiffs' Delay, Lack Of Prejudice To
        Plaintiffs, And Mr. Yamani's Meritorious Defenses ............................................. 2

        1.  Mr. Yamani Acted Promptly And Responded Quickly To
            Developments In This Litigation ................................................... 3

        2.  Plaintiffs, Who Improperly Obtained The Defaults, Will Not Be
            Prejudiced By Setting Aside The Defaults .................................... 6

        3.  Mr. Yamani Has Meritorious Defenses That Should Be Resolved
            By The Court On The Merits ........................................................ 6

    B.  Alternatively, Relief From The Default Judgments Is Warranted Under
        Rule 60(b) Based On The Court's Lack Of Personal Jurisdiction And
        Pursuant To Well-Established Case Law ............................................... 7

        1.  The Default Judgment Is Void Because The Court Lacks Personal
            Jurisdiction Over Mr. Yamani ..................................................... 7

        2.  The Default Judgment Can Be Vacated Under Rule 60(b)(6) .................... 8

II. PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING ANY INFERENCE
    OF WRONGDOING BY MR. YAMANI .......................................................... 8

    A.  The Court Should Disregard Allegations Made In Pleadings Filed In
        Violation Of Case Management Order #2 ............................................ 8

    B.  Operative Factual Allegations Against Mr. Yamani ................................. 9

III. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. YAMANI .............. 10

    A.  Plaintiffs Have Failed To Allege Minimum Contacts With The United
        States ...................................................................................... 11

    B.  Plaintiffs Cannot Establish Personal Jurisdiction On A Conspiracy Theory ........ 11

i

C.      Plaintiffs Fail To Allege That Mr. Yamani "Purposefully Directed" His
         Conduct At The United States ............................................................................12

IV.     THE COMPLAINTS FAIL TO STATE ANY CLAIM AGAINST MR. YAMANI
         UPON WHICH RELIEF CAN BE GRANTED ................................................................14

A.      The Allegations Against Mr. Yamani Do Not State A Claim Under The
         Anti-Terrorism Act ("ATA") ................................................................................14

B.      Plaintiffs Have Failed to State A Claim Under RICO, The Torture Victim
         Protection Act, The Alien Tort Statute, Or Any State Law Cause of Action ........15

V.      PLAINTIFFS' EFFORT TO SERVE MR. YAMANI WAS DEFECTIVE .....................16

CONCLUSION...................................................................................................................17

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                                 **PAGE(S)**

*Baade v. Price*, 175 F.R.D. 403 (D.D.C. 1997) ............................................................17

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ...............................15

*City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293 (1953) ........................................16

*Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980) .............................................7

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) ................................................................2

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A* 782 F.2d 329
      (2d Cir. 1986) ......................................................................................2-3

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ........................................................3, 7

*Grace v. Bank Leumi Trust Co. of New York*, 4433 F.3d 180 (2d Cir. 2006)................................7

*Grey v. Heckler*, 721 F.2d 41 (2d Cir. 1983) ................................................................16

*Leab v. Streit*, 584 F. Supp. 748 (S.D.N.Y. 1984) ............................................................2

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................16

*National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253 (2d Cir. 1991) .....................................17

*Pecarseky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001) .............................................2, 8

*Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508 (2d Cir. 2001)....................................................3

*SEC v. Tome*, 833 F.2d 1086 (2d Cir. 1987).................................................................16

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d. 765
      (S.D.N.Y. 2005) ................................................................................. *passim*

*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d. 539
      (S.D.N.Y. 2005) ................................................................................. *passim*

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc.*, 99 F. Supp. 2d 450
      (S.D.N.Y. 2000) ....................................................................................7

## **FEDERAL RULES**

Fed. R. Civ. P. 8 .................................................................................................................9

Fed. R. Civ. P. 10(b) .........................................................................................................9

Fed. R. Civ. P. 55(c) ......................................................................................................3, 7

Fed. R. Civ. P. 60(b) ..........................................................................................................7

## **OTHER MATERIALS**

1 *Oppenheim's International Law* 16 (R. Jennings & A. Watts eds., 9th ed. 1996) ....................15

**<u>INTRODUCTION</u>**

Ahmed Zaki Yamani unequivocally condemns the horrendous attack upon the United States on September 11, 2001, and extends his deepest sympathies to the victims and their families.  Mr. Yamani fully understands and endorses Plaintiffs' efforts to bring to justice the terrorists responsible for the attack and those who knowingly supported them.

Notwithstanding his sympathy and support for the victims and their families, Mr. Yamani is outraged by any suggestion that he has supported Osama Bin Laden, Al Qaeda, or the September 11 hijackers.  Mr. Yamani categorically denies any role in the abhorrent acts of these terrorists.  Notably, Mr. Yamani is not among the hundreds of individuals, entities and organizations designated by the U.S. Government as supporters of terrorism.

The Complaints in these action, despite being amended multiple times and supplemented by More Definite Statements, contain only the barest of allegations against Mr. Yamani.  Indeed in the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* complaints there is no allegation mentioning Mr. Yamani and the improperly filed More Definite Statements contain only a single paragraph even mentioning Mr. Yamani.

The Complaints are devoid of any factual allegation that Mr. Yamani knowingly supported any terrorist activity.  Nor do the Complaints contain any factual allegations from which one could reasonably infer that Mr. Yamani knowingly supported any terrorist activity.  Instead, on the basis of nothing more than allegations regarding his employment history and that he is allegedly listed on the so-called "Golden Chain," the Complaints leap to the conclusion that Mr. Yamani supports terrorism.  This Court has already held in its previous decisions that such an unsupported conclusion is not entitled to any presumption of truth and cannot support personal jurisdiction over Mr. Yamani or the assertion of any valid claim against him.

There is no basis in law to extend jurisdiction or liability in this fashion.  In the absence of factual allegations that Mr. Yamani knowingly supported the September 11 hijackers, the claims against Mr. Yamani fail to establish personal jurisdiction or state any valid claim.  On this basis, and others set forth below, the complaints against Mr. Yamani must be dismissed.

Furthermore, as a threshold matter the defaults entered against Mr. Yamani must be vacated because, as shown below, those defaults were obtained in violation of this Court's Case Management Order and without adequate notice to Mr. Yamani or his counsel.

## ARGUMENT

## I.   DEFAULTS WERE IMPROPERLY OBTAINED AGAINST MR. YAMANI AND SHOULD BE VACATED

"It is well established that default judgments are disfavored.  A clear preference exists for cases to be adjudicated on the merits."  *Pecarseky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) (citing cases).  Moreover, "[m]otions to vacate default judgments . . . are to be granted liberally, so that a trial on the merits may be had and justice done."  *Leab v. Streit*, 584 F. Supp. 748, 754 (S.D.N.Y. 1984) (citing *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) ("all doubts should be resolved in favor of those seeking relief")).  Here the defaults certainly should be vacated as they were improperly obtained.

### A.   The Court Should Set Aside The Entries Of Default For Good Cause Pursuant To Rule 55(c) Based On Plaintiffs' Delay, Lack Of Prejudice To Plaintiffs, And Mr. Yamani's Meritorious Defenses

The Second Circuit has held that an order, such as the Court's "Default Judgments" entered in *Burnett* (03-CV-9849), *Euro Brokers*, and *World Trade Center Properties* (*see* MDL Docket #1756, 1795, and 1796), that purports to enter a default judgment but that leaves the amount of damages unresolved until a later hearing is not, in fact, a default judgment.  *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 335-36 (2d Cir. 1986) (holding

that an order entitled Default Judgment "was in fact no more than another interlocutory entry of default" because "that document expressly ordered that there be an inquest as to damages and indicated that only thereafter would a final judgment be entered").  Thus, this Court's orders are simply entries of default and under Rule 55(c) the Court is authorized to set aside an entry of default for "good cause shown."  Fed. R. Civ. P. 55(c).  No such order has been issued in the *Burnett* (03-CV-5738) action, therefore no default has been entered in that action.

In determining whether good cause has been shown, the Court should "consider principally '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'"  *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).  Because there is a "preference for resolving disputes on the merits," doubts "should be resolved in favor of the defaulting party."  *Enron Oil*, 239 F.3d at 95, 96.

### 1.      Mr. Yamani Acted Promptly And Responded Quickly To Developments In This Litigation

Mr. Yamani's actions are far from those of a defendant who willfully defaulted.  On February 25, 2005, Mr. Yamani, through counsel, wrote to Plaintiffs' liaison counsel contesting service by publication and stating that based on this Court's January 18, 2005 decision Plaintiffs cannot establish personal jurisdiction or plead a viable cause of action against him.  *See* Letter from Rayner M. Hamilton to Paul J. Hanly, Justin T. Green, and J. Scott Tarbutton, Feb. 25, 2005, at 1 (attached hereto as Exhibit A).  Accordingly, counsel requested that plaintiffs "immediately dismiss Sheikh Yamani as a defendant in all cases."  *Id.* at 2.

The February 25, 2005 letter also stated,

> If plaintiffs are not prepared to dismiss Sheikh Yamani at this time, please consider this letter to be a request "by motion or otherwise" pursuant to Paragraph 12 of Case Management Order #2 for a more definite statement pursuant to F.R.C.P. 12(e), to be served

> within 30 days as provided in Case Management Order #2, in that
> no allegations have been asserted as to Sheikh Yamani.

*Id.* (quoting Case Management Order #2 at ¶ 12). The letter also requested RICO statements be filed within the same 30-day period if Plaintiffs intended to assert RICO claims against Mr. Yamani. *Id.* (citing Case Management Order #2 at ¶ 14). The letter explicitly requested a response from Plaintiffs "at your earliest convenience . . . and in any event within 30 days of this letter. *Id.*

Plaintiffs failed to provide any response to the February 25, 2005 letter. Plaintiffs also failed to dismiss Mr. Yamani or, in the alternative, to serve more definite statements and/or RICO statements as to Mr. Yamani within the 30-day timeframe required by Paragraph 12 of Case Management Order #2.

On April 17, 2006, immediately after learning of the application for and entry of default in the *Burnett* (03-CV-9849) action, Mr. Yamani's counsel contacted the *Burnett* Plaintiffs' counsel challenging default and requesting Mr. Yamani's removal from the list of defendants in default. *See* Letter from Rayner M. Hamilton to Ronald L. Motley and Robert T. Haefele, Apr. 17, 2006, at 1 (attached hereto as Exhibit B). This letter renewed Mr. Yamani's request to be dismissed from "all actions and complaints purporting to name him as a defendant" or, in the alternative, to be provided with the previously requested "more definite statement, RICO statement, and jurisdictional particulars." *Id.* at 2. Having not received any response by the end of the week, Mr. Yamani's counsel followed up by email in a further attempt to resolve Mr. Yamani's status without burdening the Court. *See* Email from Rayner M. Hamilton to Robert T. Haefele, April 21, 2006 (attached hereto as Exhibit C).

Plaintiffs responded on April 21, 2006 and refused to vacate the default order and/or dismiss Mr. Yamani. *See* Letter from Robert T. Haefele to Rayner M. Hamilton, Apr. 21, 2006

(attached hereto as Exhibit D).  Plaintiffs' only justification for this refusal was the filing of a more definite statement on September 30, 2005.  *Id.*

Until Plaintiffs' April 21, 2006 letter, Mr. Yamani's counsel was in fact unaware that Plaintiffs had filed any more definite statements with regard to Mr. Yamani.  Until the instant motion, Mr. Yamani's counsel had not entered an appearance and was not counsel of record in this case—a fact readily available to Plaintiffs.  Yet, despite the February 25 letter requesting more definite statements, counsel was not served with or otherwise notified of Plaintiffs' September 30 filings as to Mr. Yamani.

Indeed, in the April 21, 2006 letter Plaintiffs still only vaguely referred to filing a statement on September 30, 2005.  The statement was not attached to the letter nor referenced by docket number.  When counsel learned of the existence of the more definite statements, counsel acted immediately to examine the voluminous docket of this case.  Plaintiffs' two more definite statements were buried among approximately 64 filings made by Plaintiffs on September 30, 2005.  Moreover, the *Burnett* Plaintiffs' more definite statement as to Mr. Yamani applies not only to Mr. Yamani, but also to 56 other defendants and the so-called allegations against Mr. Yamani are contained in only one paragraph out of 139.  Likewise, the *Euro Brokers* and *World Trade Center Properties* Plaintiffs' more definite statement is against 20 defendants and contains only one paragraph about Mr. Yamani out of 58 paragraphs.

Plaintiffs do not—indeed, cannot—explain how these more definite statements filed on September 30, 2005 meet the requirement that they be served 30 days (i.e., March 28, 2005) after Mr. Yamani's February 25, 2005 request for such statements "by motion or otherwise" pursuant to Paragraph 12 of Case Management Order #2.  Further, as explained in detail below, Plaintiffs'

September 30, 2005 filings violate Case Management Order #2's requirements for Plaintiffs to filed amended complaints.  *See infra* at Section II.A.

Quite contrary to Plaintiffs unresponsiveness, delay, and obfuscation, Mr. Yamani has acted promptly at each significant juncture.  Once counsel learned of the existence of the more definite statements and Plaintiffs' refusal to set aside improperly obtained defaults, counsel acted immediately to prepare and file this motion to vacate the defaults and dismiss the complaints against Mr. Yamani.

### 2.    Plaintiffs, Who Improperly Obtained The Defaults, Will Not Be Prejudiced By Setting Aside The Defaults

In this multi-district litigation in which there are hundreds of defendants, Plaintiffs are in no way prejudiced by their inability to obtain a default against this defendant—simply one defendant out of hundreds.  Given the number of defendants with pending motions to dismiss, it will be considerable time before the case will reach trial, judgment, and damages.  Adding but one defendant's motions to dismiss to the list that the Court must resolve will not seriously jeopardize Plaintiffs.  Indeed, by this motion Mr. Yamani is moving to dismiss the *Burnett* (03-CV-5738) action in which no default has been entered and which contains substantially similar if not identical allegations to those Plaintiffs have made in the actions in which default has been entered.

### 3.    Mr. Yamani Has Meritorious Defenses That Should Be Resolved By The Court On The Merits

As shown below, Mr. Yamani demonstrates that the complaints will not survive a motion to dismiss when the Court applies the same reasoning it has already adopted in its previous rulings.  Plaintiffs make only a one paragraph allegation against Mr. Yamani that neither establishes a *prima facie* case of personal jurisdiction nor states any claim upon which relief can be granted.  This Court should not ignore the oft-stated preference against default judgments

when Mr. Yamani demonstrates that he has meritorious defenses on which he is likely to prevail—further proof than is necessary in this context.  *See Enron Oil*, 10 F.3d at 98 ("The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.").

> **B.      Alternatively, Relief From The Default Judgments Is Warranted Under Rule 60(b) Based On The Court's Lack Of Personal Jurisdiction And Pursuant To Well-Established Case Law**

Even if the Court determines that the orders it issued are default judgments and not merely entries of default, Mr. Yamani is still entitled to relief from those default judgments under Rule 60(b).  *See* Fed. R. Civ. P. 55(c); Fed. R. Civ. P. 60(b).

> **1.      The Default Judgment Is Void Because The Court Lacks Personal Jurisdiction Over Mr. Yamani**

As shown below, Plaintiffs do not establish a *prima facie* showing of jurisdiction over Mr. Yamani to defeat his motion to dismiss for lack of personal jurisdiction.  *See infra* at Section III.  "A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity."  *Covington Indus., Inc. v. Resintex A. G.*, 629 F.2d 730, 732 (2d Cir. 1980) (affirming the district court's vacating of a default judgment because the court entering the default judgment lacked personal jurisdiction against the defendants); *see also Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 193 (2d Cir. 2006) ("A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.").  Therefore, this Court must vacate the default judgments against Mr. Yamani because it lacks personal jurisdiction over him.  *See Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc.*, 99 F. Supp. 2d 450, 455 (S.D.N.Y. 2000) ("[I]f void, the court must vacate the judgment.").

**2.**    **The Default Judgment Can Be Vacated Under Rule 60(b)(6)**

The Second Circuit applies the same three prong test to vacate a default judgment under

Rule 60(b)(6) or relieve a party from entry of default under Rule 55(c).  *See Pecarsky*, 249 F.3d

at 171 ("When deciding whether to relieve a party from default or default judgment, we consider

the willfulness of the default, the existence of a meritorious defense, and the level of prejudice

that the non-defaulting party may suffer should relief be granted.") (citing cases).  Mr. Yamani

has already demonstrated that relief from entry of default under Rule 55(c) is warranted.  *See*

*supra* at Section I.A.  Therefore, vacating a default judgment under Rule 60(b) is also justified.

## II.    PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING ANY INFERENCE OF WRONGDOING BY MR. YAMANI

### A.    The Court Should Disregard Allegations Made In Pleadings Filed In Violation Of Case Management Order #2

In what cannot be excused as a minor procedural defect, Plaintiffs have attempted to

conceal the dearth of well pleaded allegations beneath a mass of disorganized, redundant, and

irrelevant allegations contained in lengthy More Definite Statements and other filings, which

they pretend are part of their Complaints.  Case Management Order #2 ("CMO #2"), as

amended, required that Plaintiffs file amended complaints by September 30, 2005.  *See* CMO #2

(MDL Docket #247) at ¶ 13.  As admitted by the Plaintiffs, "[t]he clear objective of including the

. . . deadline for filing amended complaints in CMO #2 was to ensure that any and all additional

allegations contained in More Definite Statements or other filings would be incorporated into a

single pleading in each of the cases."  Letter from Sean P. Carter to The Honorable Richard C.

Casey, July 15, 2005; *see also* Endorsed Letter, July 27, 2005 (MDL Docket #1073).

None of the Plaintiffs naming Mr. Yamani as a defendant complied with CMO #2.

Instead, the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* Plaintiffs filed "Notices

of Consolidation of Pleadings" listing all previously filed documents that they now "deem" to be

8

part of their Complaints.  *See Burnett* Notice of Consolidation of Pleadings (MDL Docket #1377); *Euro Brokers* Notice of Consolidation of Pleadings (MDL Docket #1378); *World Trade Center Properties* Notice of Consolidation of Pleadings (MDL Docket #1379).

By simply listing or attaching dozens of documents to Notices of Consolidation of Pleadings, the plaintiffs disregard and defeat this "clear objective," as the allegations are not organized in a way that would assist the defendants in understanding and responding to the claims against them.  *See* Fed. R. Civ. P. 10(b) (requiring complaints to list their allegations in sequentially number paragraphs); Fed. R. Civ. P. 8 (requiring a "short and plain" statement of the grounds for jurisdiction and the plaintiffs' claims).  Neither the defendants nor this Court should have to bear the burden of searching through Plaintiffs' disorganized filings for relevant allegations.

Since the Plaintiffs have failed to comply with CMO #2, the Court should strike the new filings and any documents incorporated into those pleadings by reference, including the More Definite Statements as to Mr. Yamani, and instead only consider the allegations contained in the last-filed complaint in each of matters.

**B.      Operative Factual Allegations Against Mr. Yamani**

Plaintiffs' willful refusal to distill their claims into a "single pleading" is plainly designed to conceal the absence of specific facts supporting their claims against Mr. Yamani.  There are no allegations whatsoever about Mr. Yamani in the *Burnett*, *Euro Brokers*, or *World Trade Center Properties* Complaints.  The original *NYMAGIC* Complaint alleged only that he, among a long list of other defendants, "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTO's, associations, organizations, or persons."  *NYMAGIC* Compl. at ¶ 45.  However, in the Second Amended Complaint, the *NYMAGIC* Plaintiff has removed Mr. Yamani's name from the Complaint's caption and from the

list of defendants that allegedly "aided and abetted, conspired with, and provided material support and resources to" al Qaida.  *Compare NYMAGIC* Compl. at ¶ 45 *with NYMAGIC* 2d Am. Compl. at ¶ 45.  Accordingly, the *NYMAGIC* Plaintiff has dismissed Mr. Yamani from that action.

Notably, the *Federal Insurance* Complaint also contains a boilerplate allegation against Mr. Yamani.  *See Fed. Ins.* Compl. ¶ 72.  Yet, unlike the other Plaintiffs, the *Federal Insurance* Plaintiffs voluntarily dismissed their complaint against Mr. Yamani.  *See* Notice of Voluntary Dismissal (MDL Docket #703) at Exhibit A.

The More Definite Statements improperly filed by the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* Plaintiffs contain only a single, identical paragraph related to Mr. Yamani that states:

> Ahmed Zaki Yamani's name was among those included in the Golden Chain.  Yamni was the longtime Oil Minister for the Kingdom of Saudi Arabia.  After serving loyally for many years, Yamani was suddenly dismissed from his position in the late-1980's when King Fahd apparently held him responsible for a price war with non-OPEC countries that pushed petroleum prices below $10/barrel.

*Burnett* More Definite Statement as to Various Defendants (MDL Docket #1368) at ¶ 62; *Euro Brokers* and *World Trade Center Properties* More Definite Statement as to Various Defendants (MDL Docket #1369) at ¶ 44.

## III.     THIS COURT LACKS PERSONAL JURISDICTION OVER MR. YAMANI

To survive a Rule 12(b)(2) motion to dismiss, Plaintiffs must make a *prima facie* factual showing that personal jurisdiction exists.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) ("*Terrorist Attacks II*"). Plaintiffs do not and cannot make such a showing here.

### A.    Plaintiffs Have Failed To Allege Minimum Contacts With The United States

Plaintiffs cannot establish general jurisdiction, and barely try.  As this Court has said, to support general jurisdiction, Plaintiffs must allege a "considerably higher level of contacts" with New York or the United States than would be required for specific jurisdiction.  *Terrorist Attacks I*, 349 F. Supp. 2d at 811; *Terrorist Attacks II*, 392 F. Supp. 2d at 558.  The operative Complaints, or even the improperly filed More Definite Statements, do not allege that Mr. Yamani had any U.S. contacts.  In the absence of any allegations of U.S. contacts, Plaintiffs cannot establish this Court's personal jurisdiction over Mr. Yamani on a theory of general jursidction.

### B.    Plaintiffs Cannot Establish Personal Jurisdiction On A Conspiracy Theory

Similarly, Plaintiffs' allegations cannot support the exercise of personal jurisdiction over Mr. Yamani on a conspiracy theory.  Plaintiffs allege in various forms that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11. *See, e.g.*, *World Trade Center Properties* Compl. ¶¶ 1, 35.  This Court has already held, however, that such allegations are insufficient to establish personal jurisdiction over any defendant.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 805 ("Plaintiffs claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate that attacks of September 11. Without supporting factual allegations, such a statement is insufficient to establish an agency relationship." (citations omitted)); *see also id.* at 818 (dismissing on personal jurisdiction grounds because the Golden Chain "does not establish Mr. [Al-Husani]'s involvement in a terrorist conspiracy"); *id.* at 822 (dismissing on personal jurisdiction grounds because "[t]he [] complaint does not contain any factual allegations against Tariq, Omar, or Bakr Binladin from which the Court could infer . . . that they were members of a conspiracy").  Because the Complaints (with or without the improper More Definite Statements) contain no specific factual

11

allegations permitting an inference that Mr. Yamani directed, controlled, or requested al Qaeda to undertake its attacks in the United States, the conspiracy claims must be dismissed. *See id.* at 806 (dismissing the complaints because they "do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities" and for lack of "any specific allegations of [defendants'] knowledge of, or consent to those activities").

### C.   Plaintiffs Fail To Allege That Mr. Yamani "Purposefully Directed" His Conduct At The United States

The focus of Plaintiffs' jurisdictional argument to date has been that various Defendants have "purposefully directed" their conduct at the United States. As to Mr. Yamani, such a claim must fail because Plaintiffs have not alleged the required "*personal or direct participation* by the Defendants in the conduct giving rise to their claims." *Terrorist Attacks I*, 349 F. Supp. 2d at 809 (emphasis added); *Terrorist Attacks II*, 392 F. Supp. 2d at 558 (same).

In *Terrorist Attacks I*, this Court held that Plaintiffs had not established a *prima facie* showing of jurisdiction over Messrs. Aljomaih or Al-Husani to defeat their motions to dismiss for lack of personal jurisdiction. *Terrorist Attacks I*, 349 F. Supp. 2d at 817, 818. Plaintiffs' allegations against Mr. Yamani do not differ in kind from those the Court has already rejected as against Messrs Aljomaih and Al-Husani. *See id.* at 816-18. The Court should therefore reach the same conclusion again.

Plaintiffs allege that Mr. Yamani—like Messrs. Aljomaih and Al-Husani—is named in the so-called "Golden Chain" document. *See Burnett* More Definite Statement as to Various Defendants (MDL Docket #1368) at ¶ 62; *Euro Brokers* and *World Trade Center Properties* More Definite Statement as to Various Defendants (MDL Docket #1369) at ¶ 44. This allegation is, of course, false: Plaintiffs' own translation of the document does not mention Ahmed Zaki

Yamani—the defendant in these actions.  Instead, Plaintiffs' translation lists "Ahmad Turki Yamani."  *See* Affirmation of Andrea Bierstein in Opposition to Motion to Dismiss of Hamad Al-Husaini, Ex. 2 (June 30, 2004) (MDL Docket #272).  Moreover, Plaintiffs themselves have dated the document to 1988, at a time when OBL was still fighting for the U.S.-sponsored mujahideen in Afghanistan.  *See In re Terrorist Attacks on September 11, 2001*, Oct. 14, 2004 Hearing Transcript at 102:23-25 (MDL Docket #524). There can be no dispute that the United States government was supporting the Afghan rebels at that time.

In any case, this Court has recognized that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters."  *Terrorist Attacks I*, 349 F. Supp. 2d at 817. "The 'Golden Chain' does not say what the Plaintiffs argue it says.  It is only a list of names found in a charity's office."  *Id.* at 818.  Thus, as the Court found with Messers. Aljomaih and Al-Husani, the Golden Chain does not establish Mr. Yamani's "involvement in a terrorist conspiracy culminating in the September 11 attacks and does not demonstrate that he purposefully directed his activities at the United States."  *Id.*

Further, this Court has flatly rejected the sufficiency of broad conclusory allegations that Defendants were, in vague and unsubstantiated ways, financiers of terrorism who aided and abetted, conspired with, and provided material support and resources to al Qaeda.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 805, 813.  As this Court aptly held, "'[l]egal conclusions done up as factual allegations are not facts and cannot substitute for facts.'"  *Terrorist Attacks I*, 349 F. Supp. 2d at 813 (citation omitted); *see also Terrorist Attacks II*, 392 F. Supp. 2d at 564 (holding that a pleading cannot survive dismissal when it contains "only the barest of conclusory

allegations without notice of the factual grounds on which they purport to be based." (quotation and citation omitted)).

## IV.  THE COMPLAINTS FAIL TO STATE ANY CLAIM AGAINST MR. YAMANI UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs must "give Defendants fair and adequate notice of their claims and the grounds on which they rest." *Terrorist Attacks II*, 392 F. Supp. 2d at 564 (citation omitted).  Plaintiffs have failed to do so as to Mr. Yamani and therefore the Complaints must be dismissed.

### A.  The Allegations Against Mr. Yamani Do Not State A Claim Under The Anti-Terrorism Act ("ATA")

The *Burnett*, *Euro Brokers*, and *World Trade Center Properties* Plaintiffs' ATA claims are fundamentally flawed because they fail to allege any specific facts that could give rise to an inference that Mr. Yamani knowingly and intentionally provided material assistance to al Qaeda. This Court made clear that for Plaintiffs' ATA claims to survive, they must allege specific facts showing that Defendants knew of, intended to aid, and did in fact aid the terrorists' illegal activities. *See Terrorist Attacks I*, 349 F. Supp. 2d at 828.  Here, however, Plaintiffs offer absolutely no facts to support their bald assertions that Mr. Yamani supported al Qaeda, much less that he did so knowingly and intentionally.  Indeed, the only facts alleged about Mr. Yamani concern his employment history with the Saudi Arabian Ministry of Oil and Mineral Resources and those facts are contained in the improperly filed More Definite Statements.

As discussed above, the allegations against Mr. Yamani are either completely conclusory, unrelated to terrorism or al Qaeda, or demonstrably false.  For the same reasons Plaintiffs are unable to establish jurisdiction under a purposefully directed theory, their ATA claims also fail.

14

**B.      Plaintiffs Have Failed to State A Claim Under RICO, The Torture Victim Protection Act, The Alien Tort Statute, Or Any State Law Cause of Action**

Plaintiffs' remaining causes of action fail to state a claim against Mr. Yamani for reasons largely addressed in the Court's January 18, 2005 and September 21, 2005 opinions and orders. First, Plaintiffs have brought civil RICO claims against Mr. Yamani for violations of 18 U.S.C. §§ 1962(a), (c), and/or (d).  These RICO claims fail because Plaintiffs do not—and cannot—allege that Mr. Yamani was in any way involved in directing the alleged al Qaeda enterprise or consciously agreed to the relevant conspiracy, or that Plaintiffs' injuries resulted from their investment of racketeering income.  *See Terrorist Attacks II*, 392 F. Supp. 2d at 565 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)); *Terrorist Attacks I*, 349 F. Supp. 2d at 826-28; *see also Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 100-02 (D.D.C. 2003).

The *Burnett* Plaintiffs' Torture Victim Protection Act ("TVPA") claims must be dismissed because they fail to allege any facts suggesting that Mr. Yamani acted under color of law.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 828.  Likewise, the *Burnett* Alien Tort Statute ("ATS") claim also should be dismissed for failure to allege conspiracy to commit or aiding and abetting a violation of international law and because the ATS does not create secondary liability among private actors.  *See Terrorist Attacks II*, 393 F. Supp. 2d at 565 (holding that Plaintiffs' ability to state a claim under the ATS is contingent upon Plaintiffs' stating a claim for relief under the ATA).  For the same reason, the *Euro Brokers* and *World Trade Center Properties* Plaintiffs' claims for violations of international law also must fail.  *See* 1 *Oppenheim's International Law* 16 (R. Jennings & A. Watts eds., 9th ed. 1996) ("As a rule, the subjects of the rights and duties arising from the Law of Nations are States solely and exclusively.").

15

With respect to Plaintiffs' state law claims, the *Burnett* Plaintiffs' common law intentional tort claims are time-barred for reasons this Court has already addressed. *Terrorist Attacks I*, 349 F. Supp. 2d at 829-30. The *Burnett* Plaintiffs' negligence claim should be dismissed for failing to "allege or identify a duty owed to Plaintiffs" by Mr. Yamani. *Terrorist Attacks II*, 392 F. Supp. 2d at 566; *Terrorist Attacks I*, 349 F. Supp. 2d at 831. Finally, Plaintiffs' remaining state law claims for wrongful death, survival, aiding and abetting, conspiracy, and trespass should be dismissed because, as explained above, Plaintiffs fail to allege specific facts to support their conclusory claims that Mr. Yamani knowingly and intentionally supported or assisted al Qaeda. *See Terrorist Attacks II*, 393 F. Supp. 2d at 565 (holding that Plaintiffs' ability to state a claim for wrongful death, survival, trespass, and intentional infliction of emotional distress is contingent upon Plaintiffs' stating a claim for relief under the ATA).

## V.     PLAINTIFFS' EFFORT TO SERVE MR. YAMANI WAS DEFECTIVE

Service by publication is inappropriate in Mr. Yamani's case because he has taken no steps to evade service, nor is his address unascertainable. "Certainly, if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication will not satisfy the requirements of due process." *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987); *see also Grey v. Heckler*, 721 F.2d 41, 48 n.12 (2d Cir. 1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (rejecting notice by publication where "the odds that the information will never reach [the defendant] are large indeed," because defendant resides "outside the area of the newspaper's normal circulation."); *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best.")

As the Second Circuit has "reject[ed] the notion that 'actual notice' suffices to cure a void service," this Court should reconsider the *ex parte* grant of service by publication. *National*

16

*Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991); *see also Baade v. Price*, 175

F.R.D 403, 405 (D.D.C. 1997) ("the law is clear and mandates that there be strict compliance to

Rule 4(h) and it is irrelevant whether or not [the defendant] had actual notice of the lawsuit.").

Service of process by publication as to Mr. Yamani should be quashed and the claims against

him be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  *See Baade*,

175 F.R.D. at 405 (holding that "service of process must be quashed" where plaintiff failed to

serve defendant pursuant to Rule 4(h)).

## <u>CONCLUSION</u>

For the foregoing reasons, (1) the defaults entered in the *Burnett* (03-CV-9849), *Euro*

*Brokers*, and *World Trade Center Properties* actions should be vacated; and (2) the *Burnett* (03-

CV-5738 and 03-CV-9849), *Euro Brokers*, and *World Trade Center Properties* Complaints

should be dismissed, in their entirety, as to Mr. Yamani.


Dated: June 5, 2006                                         Respectfully submitted,
     New York, New York

                                                By: /s/ Rayner M. Hamilton
                                                   Rayner M. Hamilton (RH-7742)
                                                   Attorney-at-Law
                                                   1155 Avenue of the Americas
                                                   New York, New York  10036
                                                   Telephone: (212) 819-8822

                                                   *Attorney for Ahmed Zaki Yamani*

17