**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                                    )
In re Terrorist Attacks on September 11, 2001       )        No. 03-MD-1570 (RCC)
_____)

*This document relates to:*

*Ashton v. Al Qaeda*, No. 02-CV-6977 (RCC)
*Federal Insurance v. Al Qaida*, No. 03-CV-6978 (RCC)
*World Trade Center v. Al Baraka*, No. 04-CV-7280 (RCC)
*Continental Casualty v. Al Qaeda*, No. 04-CV-5970 (RCC)
*Euro Brokers v. Al Baraka*, No. 04-CV-7279 (RCC)
*New York Marine v. Al Qaida*, No. 04-CV-6105 (RCC)
*Burnett v. Al Baraka*, No. 03-CV-5738 (RCC)


**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS BAKR BINLADIN, OMAR BINLADIN, TARIQ BINLADIN,**
**MOHAMMAD BINLADIN COMPANY, AND BINLADIN GROUP**
<u>**INTERNATIONAL COMPANY LTD.'S MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I. THE COURT NEED NOT AND SHOULD NOT SIMPLY ACCEPT CONCLUSORY ALLEGATIONS AND ARGUMENTATIVE INFERENCES ........ 1

II. PERSONAL JURISDICTION IS LACKING UNDER ANY THEORY .................... 3

    A. Binladin Group International Company Ltd. ...................................................... 3

    B. Mohammad Binladin Company ........................................................... 4

    C. Omar Binladin................................................................. 5

    D. Tariq Binladin ................................................................ 5

    E. Bakr Binladin ................................................................. 6

        1. *There Are No Facts Supporting General Personal Jurisdiction* ................ 6

        2. *There Are No Facts Supporting Specific Personal Jurisdiction*................. 7

III. THERE ARE NO DISPUTED FACTS ON WHICH TO BASE DISCOVERY ....... 10

IV. PLAINTIFFS FAIL TO STATE A CLAIM................................................................. 10

CONCLUSION .................................................................................................. 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
    138 F. Supp. 2d 449 (S.D.N.Y. 2000) ............................................................................. 1

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) ......................................................................................... 9

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................................................. 2

*Molozanov v. Quantum Telecomms., Ltd.*,
    No. 05 Civ. 5270 (NRB), 2006 U.S. Dist. LEXIS 16788 (S.D.N.Y. Apr. 6, 2006) ........ 10

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
    No. 05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 9159 (S.D.N.Y. Mar. 7, 2006) ........... 3

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
    No. 98 Civ. 9186 (MBM), 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002) ..... 3

*In re Ski Train Fire in Kaprun, Austria*,
    343 F. Supp. 2d 208 (S.D.N.Y. 2004) ............................................................................. 7

*In re Terrorist Attacks on September 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ("*Terrorist Attacks I*") ................................ passim

*In re Terrorist Attacks on September 11, 2001*,
    392 F. Supp. 2d 539 (S.D.N.Y. 2005) ("*Terrorist Attacks II*") ............................... 2, 4, 8

*Wahad v. FBI*,
    179 F.R.D. 429 (S.D.N.Y. 1998) .................................................................................... 9

Plaintiffs' opposition to the Motion to Dismiss of Bakr, Omar, and Tariq Binladin ("the Binladins"), the Mohammad Binladin Company ("MBC") and Binladin Group International Company Ltd. ("BGI") (collectively "Moving Defendants") itself demonstrates why dismissal is appropriate. Plaintiffs make no real attempt to establish jurisdiction over BGI, MBC, and Omar, but rest only on the vague assertion that all Defendants participated in a conspiracy with al Qaeda. As to Tariq, Plaintiffs' argument relies on *exactly the same* allegation this Court examined when it dismissed him from the *Burnett* action. Plaintiffs' argument against Bakr is slightly embellished, but it too relies on the same kinds of claims that this Court has rejected in prior rulings. Plaintiffs utterly ignore those rulings and thus never address the core legal issues raised in the Moving Defendants' Motion. Instead, they continue to rely on, and insist that this Court must accept as true, the same bad faith allegations, conclusory characterizations and unsupportable inferences. Those did not suffice before, however, and do not now provide a basis for jurisdiction over the Moving Defendants or state a claim against them.

**I.     THE COURT NEED NOT AND SHOULD NOT SIMPLY ACCEPT CONCLUSORY ALLEGATIONS AND ARGUMENTATIVE INFERENCES**

Plaintiffs are wrong in asserting that this Court must look only to their pleadings, to the exclusion even of the documents cited therein, and that the mere submission of evidence by Defendants shows that discovery is required. *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Bakr Bin Ladin, *et al.* (Apr. 18, 2006) (MDL Docket #1773) ("Opp.") at 1, 7 n.6. Rule 12(b)(2) motions obviously may be supported by extrinsic evidence. *See, e.g.*, *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000). It is also common sense that "a court may consider . . . any documents that are integral to, *or explicitly referenced in*, the pleading. If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss."

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (emphasis added). Finally, as this Court previously held, while Complaints and affidavits are construed in the light most favorable to Plaintiffs, on a Rule 12(b)(2) motion the Court need not accept conclusory allegations and argumentative inferences. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) ("*Terrorist Attacks II*").

Even Plaintiffs seem to accept that this Court need not credit their now-abandoned allegation about Omar Binladin's supposed residence in the United States when the undisputed evidence shows that they have "the wrong 'Omar.'" Memorandum in Support of Defendants Bakr Binladin, *et al.*'s Motion to Dismiss (Jan. 27, 2006) (MDL Docket #1645) ("Mem.") at 12; Affidavit of Omar Binladin (Jan. 25, 2006) (Mem., Ex. B), ¶ 5.[1]  Yet throughout their opposition, Plaintiffs continue to rest on conclusions and inferences that are no less demonstrably unsupported and illogical when viewed in light of their own evidence or the context that they frequently omit.  Nowhere is this more apparent than in Plaintiffs' persistent assertion that Bakr Binladin is named "in the Golden Chain as one of al Qaeda's principal sponsors." Opp. at 7. Not only is Bakr's name absent from Plaintiffs' *own* translation of that document, but the Court has already rejected Plaintiffs' characterization of the document as a whole. *See* Mem. at 16; *Terrorist Attacks I*, 349 F. Supp. 2d at 817.

The Moving Defendants' submissions thus do not create factual disputes on specific, well-pled allegations of fact, but rather show that the documents Plaintiffs purport to quote in their pleadings do not say what they claim they say and that the inferences Plaintiffs seek to draw

---

[1] Plaintiffs have also abandoned other indefensible allegations.  For example, they do not even mention their prior assertion that certain UBS accounts, opened in August 1990 on behalf of Osama Bin Laden and his 50-odd siblings, had something to do with support for Osama's as-yet-unannounced terrorist agenda.  Plaintiffs' own RICO Statements concede that Osama's account was virtually emptied by 1991, long before he became known as a terrorist, much less began targeting the United States.  *See* Mem. at 6 n.19.

2

from selectively pleaded facts become illogical when the omitted facts are revealed.[2]  For example, as shown in the opening brief, Plaintiffs' RICO Statements extensively quote from a witness statement given to Swiss authorities in 2001 in order to imply suspect connections between the Binladins, Cambridge Engineering, Bank Al Taqwa, and al Qaeda, *see* Mem. at 6-7, but Plaintiffs manipulate those quotations to make it appear (falsely) that the witness admitted connections that he in fact expressly *denied*.  *See id.*[3]  Although Plaintiffs urge the Court to ignore the Moving Defendants' submission of the statement's full text, they do not deny that they materially misrepresented its substance.  Nor do they deny that nearly five years after the U.S. and Swiss governments investigated Cambridge's bank accounts, no charges have been brought against anyone.  *See id.* at 7.  On these facts – none of which is disputed or warrants discovery – the Court cannot accept as true, even on a motion to dismiss, Plaintiffs' unsupportable inferences about the Binladins and Cambridge.  *See* Opp. at 8-9.  Nor should it accept Plaintiffs' other argumentative inferences which, when understood in context, run directly contrary to the facts Plaintiffs allege.

## II.  PERSONAL JURISDICTION IS LACKING UNDER ANY THEORY

### A.  Binladin Group International Company Ltd.

Plaintiffs do not defend any distinct claims against BGI.  Instead, they merely describe it

---

[2] Although Plaintiffs are entitled to have pleadings and affidavits construed in their favor, this Court is not required to accept Plaintiffs' unsupported inferences in the face of undisputed evidence.  As several district courts have held in applying the Second Circuit's settled Rule 12(b)(2) standards, "[w]here a defendant has contested a plaintiff's allegations with 'highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted.'"  *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, No. 05 Civ. 9016 (SAS), 2006 U.S. Dist. LEXIS 9159, at *10 (S.D.N.Y. Mar. 7, 2006) (quoting *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186 (MBM), 2002 U.S. Dist. LEXIS 12845, at *12 (S.D.N.Y. July 15, 2002)).

[3] The opening brief also explained that Plaintiffs' RICO Statements and other extraneous filings failed to comply with the Court's Case Management Order #2 and the Federal Rules of Civil Procedure.  *See* Mem. at 4-9.  Plaintiffs' arguments that their filings fall within Rule 10(c), *see* Opp. at 2, are contrary to established precedent.  *See* Defendant Abdullah Binladin's Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Complaints (Mar. 1, 2006) (MDL Docket #1705) at 8-10 (citing cases).

3

as "a/k/a Saudi Bin Ladin Group," Opp. at 1, and refer to it throughout their brief as "SBG." SBG is, of course, a distinct Defendant that is not a party to this motion.[4] Plaintiffs themselves named both entities as separate Defendants in their Complaints[5] and agreed to different briefing schedules for each. *See* Stipulation at 1 & ¶¶ 5, 9, 12, 13. For reasons to which Plaintiffs do not even respond, much less dispute, *see* Mem. at 11, 19, there is no basis for jurisdiction over BGI.

### B.     Mohammad Binladin Company

Plaintiffs do not even mention MBC in their jurisdictional discussion and thus effectively concede that it is not subject to personal jurisdiction.[6] *See* Opp. at 12-15. Their only argument that theoretically encompasses MBC is the vague conspiracy-based claim that all Defendants "intentionally nurtured and developed al Qaeda and Bin Laden's terrorist network, which directly furthered their terrorist operations." *See id.* at 14. The Court has held that this type of generalized conspiracy allegation cannot support jurisdiction. *See, e.g.*, *Terrorist Attacks I*, 349 F. Supp. 2d at 805, 822. Rather, Plaintiffs must allege specific facts showing, *inter alia*, that a defendant entered "a corrupt agreement[,] . . . intentional[ly] participat[ed] in the furtherance of a plan . . . . [and that] the co-conspirators acting in New York acted at the direction or under the control of or at the request of or on behalf of" him. *Terrorist Attacks II*, 392 F. Supp. 2d at 557

---

[4] SBG's motions to dismiss the *Burnett* and *Ashton* Complaints were denied without prejudice pending jurisdictional discovery. *See Terrorist Attacks I*, 349 F. Supp. 2d at 822. Motions on the other Complaints were deferred until after completion of that discovery. *See* Stipulation as to Service of Process and Extension of Time to Respond to Complaints Consolidated under MDL 1570 (Sept. 15, 2005) (MDL Docket #1237) ("Stipulation").

[5] *See Ashton* 6AC (naming SBG and Saudi Binladin International Company ("SBIC") as separate defendants); *Federal Insurance* (same); *Continental Casualty* (same). As explained in the opening brief, there is no entity named "SBIC." *See* Mem. at 1 n.2. We stated and Plaintiffs did not dispute our assumption that SBIC was meant to refer to BGI. The *Ashton* and *Federal Insurance* plaintiffs voluntarily dismissed the company, s*ee id*. at 11 n.42, which leaves BGI as a named defendant only in *Continental Casualty*.

[6] Plaintiffs' infrequent references to MBC in their opposition include citations to pleadings in cases in which MBC is not named as a Defendant, *see* Opp. at 6-7 (citing allegations in the *Ashton*, *Burnett*, *Continental Casualty*, and *WTC* Complaints despite the fact that "MBLC" is named only in the *Federal Insurance* and *NY Marine* actions (Mem. at 11)), and even to pleadings that do not exist. *See id.* at 3 (citing a nonexistent "*Burnett*, RICO Statement Applicable to Bakr Bin Laden, [Tariq] Bin Laden, Omar Bin Laden, Ex. A"; no RICO Statements were filed in the *Burnett* action).

4

(internal quotations omitted). As shown in the opening brief, the allegations against MBC fail on each of these points, *see* Mem. at 11, 13, 19-20, and the opposition points to nothing more.[7]

### C. Omar Binladin[8]

Plaintiffs' jurisdictional argument never specifically mentions Omar. More remarkably, Plaintiffs never acknowledge that this Court has already dismissed Omar (and Bakr and Tariq) from the *Burnett* action, finding no "allegations . . . from which the Court could infer that they purposefully directed their activities at the United States, that they were members of a conspiracy . . . , or that they have any general business contacts with the United States." *Terrorist Attacks I*, 349 F. Supp. 2d at 822.[9] Plaintiffs' opposition identifies no specific factual allegations against Omar that would change that result.

### D. Tariq Binladin

Although Plaintiffs argue that Tariq Binladin purposefully directed his conduct at the

---

[7] Plaintiffs reject, but do not in substance refute, the Moving Defendants' evidence that the Binladin family and companies, including MBC, disowned and removed Osama as a shareholder in 1993. *See* Mem. at 2-3. Plaintiffs suggest that the shareholder resolutions dated as of June 16, 1993, which removed Osama from ownership of MBC and SBG, *see* Mem., Exs. (C)(1) & (2), should be ignored based on some minor typographical and translation errors and on what Plaintiffs' counsel judges to be a "chronological inconsistency" in the date of a power of attorney authorizing the transfer of shares. *See* Opp. at 4-5. Plaintiffs ignore the facts, evident from the face of the operative documents, that the complex process of removing Osama as a shareholder took almost 11 months to complete and that the power of attorney was granted on or about March 7, 1994 ("24/9/1414 A.H."), *before* the MBC resolution was approved by the Saudi Ministry of Commerce on or about March 31, 1994 ("18/10/1414 A.H."), and *before* the authorized signatories executed the SBG resolution on or about May 1, 1994 ("20/11/1414 A.H."). *See* Mem., Exs. (C)(1) & (2). Plaintiffs cite to nothing in Saudi corporate law or procedure that casts doubt on the authenticity or effectiveness of these resolutions, and indeed that authenticity was confirmed by approvals from the Saudi Ministry of Commerce in 1994. *See id.*

[8] Plaintiffs misleadingly refer to Omar Binladin as "OBL," Opp. at 1, an abbreviation that has been used consistently by many of the parties in this litigation as a reference to Osama Bin Laden.

[9] Plaintiffs instead continue to make frequent reference to their dismissed *Burnett* Complaint against Bakr, Omar, and Tariq. *See* Opp. at 3, 5-8. A second *Burnett* Complaint initially filed in this Court is by its own terms "materially identical," Complaint, *Burnett v. Al Baraka Inv. & Dev. Corp.*, Case No. 03-CV-5738 ("*Burnett NY*") (*Burnett* 5738 Docket #1), at 265 (Preliminary Statement), and should be dismissed for the same reasons the Court dismissed the first one. *See* Mem. at 1 n.1. In addition, because the Court certified the dismissal of the first *Burnett* action as final, *see* Order (Dec. 16, 2005) (MDL Docket #1554), and Plaintiffs allowed the period for appeal to lapse (after the instant motion was filed), the *Burnett NY* claims are also barred by the doctrine of collateral estoppel. Plaintiffs' counsel have recently informed counsel for the Moving Defendants of their willingness to stipulate to a voluntary dismissal of the *Burnett NY* Complaint as to Bakr, Omar, and Tariq.

United States and conspired to do the same, *see* Opp. at 13-14, they base that argument *solely* on their claim, cited by this Court in its opinion *dismissing* Tariq, that he "had a prominent role at IIRO in 1990." *Terrorist Attacks I*, 349 F. Supp. 2d at 821-22; *see also* Opp. at 8 (citing Complaints).[10]  Plaintiffs do not claim, nor could they, that any of their allegations against Tariq differ from the allegations which this Court has already rejected.  *See* Mem. at 9-10, 14-15, 18-19.  Tariq therefore should be dismissed from the remaining Complaints on the same grounds.

### E. Bakr Binladin

This Court has already found in the *Burnett* action that the allegations against Bakr Binladin are insufficient to establish personal jurisdiction over him, and Plaintiffs' opposition, which scrupulously avoids mentioning that ruling, offers nothing to justify a different result here. The handful of allegations against Bakr that were not in the *Burnett* Complaint are all of the type already rejected by the Court as to other Defendants.  *See* Mem. at 9-10, 14-19.  Instead of addressing those deficiencies, Plaintiffs simply rehash the same discredited arguments.

#### 1. *There Are No Facts Supporting General Personal Jurisdiction*

Although Plaintiffs never argue that general jurisdiction exists, they curiously state a "belie[f]" that discovery might uncover some basis for such jurisdiction, citing only two alleged U.S. contacts by Bakr personally, *see* Opp. at 16, both of which are legally insufficient.[11]

---

[10] Oddly, among the Complaints Plaintiffs cite against Tariq are the *Burnett* Complaint, which this Court already dismissed as to him, and the *Ashton* Complaint, from which Plaintiffs voluntarily dismissed him (along with Omar).  *See* Order of Dismissal (Mar. 3, 2005) (MDL Docket #706).

[11] In asking for discovery, Plaintiffs speculate about several additional "contacts," all of which pertain to SBG (which has been engaged in discovery with Plaintiffs for over a year), and several of which appear nowhere in their pleadings.  *See* Opp. at 16.  Plaintiffs attribute three of the seven supposed contacts to "BBL and SBG."  *Id.* Just as Plaintiffs cannot leverage corporate positions into personal claims by adding the mantra "Bakr, Omar, and Tariq Binladin" to allegations directed at SBG or the Binladin family as a whole, *see* Mem. at 14-15, neither can they justify discovery regarding Bakr simply by attaching the phrase "BBL and" to claimed SBG contacts.  This Court has already rejected attempts to impute a foreign corporation's U.S. contacts to its officers "without any showing that the individuals themselves maintained a presence or conducted business" here.  *Terrorist Attacks I*, 349 F. Supp. 2d at 816.  Rather, "Plaintiffs must either allege *personal* acts by [Defendant] . . . or demonstrate that the acts of the [entities] he chaired can be imputed to him."  *Id.* (emphasis added).  Plaintiffs have neither alleged nor

Plaintiffs note that Bakr attended college in the U.S. in the 1970s, but the same was true of Prince Mohamed and it did not establish jurisdiction in his case. *See Terrorist Attacks I*, 349 F. Supp. 2d at 814, 816.  They also allege Bakr has contributed to U.S. educational institutions, such as Harvard University, but "'provid[ing] funding to large universities' . . . without more, cannot support a finding of general jurisdiction." *In re Ski Train Fire in Kaprun, Austria*, 343 F. Supp. 2d 208, 216 (S.D.N.Y. 2004).  These two isolated facts do not even begin to approach the "continuous and systematic" presence required for general jurisdiction.

        2.  *There Are No Facts Supporting Specific Personal Jurisdiction*

    Plaintiffs' argument for specific jurisdiction over Bakr relies on the same types of allegations this Court has already rejected.  First, Plaintiffs allege a donation to the IIRO in 1992, Opp. at 13, but they admit it was intended for "Bosnian relief" rather than for terrorism. *Id.* at 7. Second, Plaintiffs vaguely assert donations to other charities "operating within al Qaeda's infrastructure." *Id.* at 7, 13.  Although none are identified in their opposition, the only other charity mentioned with respect to Bakr in *any* of Plaintiffs' pleadings is the Arab Thought Foundation, *see WTC/Euro Brokers* RICO (Binladins), Ex. A at 22, which has never been designated as a terrorist organization and which is sponsored by such well-respected U.S. companies as Starbucks and the Coca-Cola Company.  *See* Mem. at 17 n.65.

    This Court has repeatedly held that such charitable giving does not establish jurisdiction. Indeed, the Court has rejected donations Prince Salman allegedly made to IIRO *in 1999* – seven years after Bakr's alleged donation – and allegedly knowing donations Prince Turki made to suspect charities, including the IIRO, as grounds for personal jurisdiction in this action.  *See*

---

(continued…)

cited any specific facts that would support imputing any of the suggested contacts of SBG to Bakr personally. *See* Mem. at 14-15.

*Terrorist Attacks II*, 392 F. Supp. 2d at 549, 558-59 (Prince Salman); *Terrorist Attacks I*, 349 F. Supp. 2d at 786, 813-14 (Prince Turki); *see also* Mem. at 16-17.  Plaintiffs ignore these rulings without any effort to explain why they do not apply with full force to Bakr.

The final allegation on which Plaintiffs rely to establish jurisdiction is their claim that Bakr was "an investor and account holder in Bank Al Taqwa, a terrorist financing organization." Opp. at 13.  This assertion cannot establish jurisdiction because Plaintiffs nowhere allege any specific facts from which to infer that Bakr had knowledge of or participated in any terrorist activity on the part of Bank Al Taqwa,[12] and their own exhibits undermine counsel's argumentative "inference" that the account was used by Bakr to support Al Qaeda.  *See id.*

First, despite their claim, *see* Opp. at 5, those exhibits demonstrate that Bakr was not a shareholder of Bank Al Taqwa, nor did he own an account there.  As Plaintiffs' own affiant concedes, Bakr was merely an authorized signatory on an investment account (a "mudaraba account") opened in the name of his brother, Ghaleb (who is not a Defendant) and actually managed not by Bakr but by a third party, Fayez F. Rabaa (who is also not a Defendant).  *See* Affidavit of John Fawcett ("Fawcett Aff."), ¶ 4; *id.*, "Document #2."  In fact, Plaintiffs do not allege that Bakr ever took *any* action as an authorized signatory on the account, much less that Bakr or anyone else used Ghaleb's account to support terrorism.  *See* Mem. at 17-18.

Second, Plaintiffs intentionally misrepresent the evidence available to them about the nature of Ghaleb Binladin's account relationship with Bank Al Taqwa.  Apparently hoping to convince the Court that the account was active until shortly before the September 11 attacks, Plaintiffs rely on an Order of the Bahamian Supreme Court dated March 29, 2000, to suggest that

---

[12] *Accord Terrorist Attacks I*, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed for lack of personal jurisdiction where Plaintiffs failed to allege he "had any knowledge or involvement in any al Qaeda accounts at any of the banks he chaired").

8

the account was still active on that date.  *See* Opp. at 5; Fawcett Aff. ¶ 4.  Plaintiffs fail to provide the Court with the accompanying Judgment, however, which states that Ghaleb requested "in June 1997 for his account to be wound up with effect on 31/12/98," and that when the bank failed to do so, he sued in 1999 "to have the [bank] wound up based on its inability to pay its debts."  *See In re: Bank al Taqwa Ltd.*, Case No. 1216 (Supreme Ct., Bahamas), Judgment and Order (Mar. 29, 2000), at 1 (Ex. A).  In other words, Plaintiffs ask this Court to infer that Bakr supported Bank Al Taqwa's alleged terrorist activities based on his brother's account there, yet they conceal from the Court that Ghaleb was actively engaged in litigation which sought to put the bank out of business.[13]

Third, Plaintiffs also fail to disclose the fact that the U.S. government did not designate Bank Al Taqwa as an SDGT until late 2001 – more than four years after Ghaleb Binladin began his efforts to close his account.  *See* Mem. at 18.  Tainting Bakr merely for having signatory authority over an investment account at a bank accused years later of supporting terrorism is akin to claims this Court has *rejected* based on donations to legitimate charities later accused of supporting terrorism.  *See* Mem. at 18 (citing *Terrorist Attacks* I, 349 F. Supp. 2d at 786, 813-14).

In sum, none of the allegations against Bakr support an inference that he supported terrorism, much less that he knowingly directed his conduct at the United States.  Neither the oft-repeated conclusions stated in Plaintiffs' opposition nor those in their inadmissible affidavits[14]

---

[13] The claim that the account was still open in 2000, Fawcett Aff. ¶ 4, also contradicts Plaintiffs' own prior statements that it closed in 1998.  *See WTC/Euro Brokers* RICO (Binladins), Ex. A at 19.  In any case, Fawcett's conclusions are inadmissible hearsay, as he concedes his testimony is not based on first-hand knowledge but is instead based on "work[] under contract . . . as a researcher" for Plaintiffs. Fawcett Aff. ¶¶ 1, 3-4.  A lay witness cannot acquire the requisite personal knowledge simply by repeating "facts" about underlying events purportedly uncovered during the course of an investigation.  *See Wahad v. FBI*, 179 F.R.D. 429, 437 (S.D.N.Y. 1998).

[14] Although barely mentioned in their opposition, Plaintiffs also attach a declaration that sets forth conclusory statements based solely upon unspecified "information" allegedly received from an unnamed "former employee of and advisor to Bakr Bin Laden."  *See* Declaration of Jean-Charles Brisard, ¶ 2.  That declaration should be disregarded as inadmissible hearsay.  *See, e.g.*, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

can make up the deficiency.

### III.  THERE ARE NO DISPUTED FACTS ON WHICH TO BASE DISCOVERY

None of the issues above present any disputes of relevant fact that would warrant jurisdictional discovery.  Plaintiffs make an express claim for discovery on seven topics, *see* Opp. at 16, six of which relate to SBG, which is not a party to this motion and which has been engaged in discovery for over a year.  None of the identified topics even concern Tariq, Omar, MBC, or BGI.  The only claims Plaintiffs raise with regard to Bakr are either legally insufficient (*e.g.*, his attendance at a U.S. university in the 1970s), or are supposed joint contacts of "BBL and SBG" containing no specific facts that could allow them to be imputed to Bakr personally.  *See supra,* n.11.  As the Court warned, Plaintiffs cannot just "make up any sort of claims" and demand jurisdictional discovery.[15]  *See Molozanov v. Quantum Telecomms., Ltd.*, No. 05 Civ. 5270 (NRB), 2006 U.S. Dist. LEXIS 16788, at *19 (S.D.N.Y. Apr. 6, 2006).

### IV.  PLAINTIFFS FAIL TO STATE A CLAIM

As fully argued in the opening brief, *see* Mem. at 21-25, and above, Plaintiffs' allegations against the Moving Defendants consist of vague, conclusory, and/or utterly irrelevant claims, many of which Plaintiffs do not even mention or attempt to defend in their opposition.  For all the reasons that Plaintiffs have failed to establish specific jurisdiction over the Moving Defendants, they also fail to state any claims against them.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Complaints should be dismissed in their entirety as to Defendants Bakr Binladin, Omar Binladin, Tariq Binladin, MBC, and BGI.

---

[15] *See In re Terrorist Attacks on September 11, 2001*, October 12, 2004 Hearing Transcript at 79:19-22.  For example, as evidenced by Plaintiffs' lack of citation, there is no allegation in any pleading that Bakr "invest[ed] in . . . Global Diamond Resources" or that he "controlled" a U.S. bank account "suspected of being used to support Bin Laden."  Opp. at 16.

10

Dated:  June 8, 2006	Respectfully submitted,

/s/ Geoffrey S. Stewart
_____
Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Stephen J. Brogan
Mary Ellen Powers
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Defendants Bakr Binladin, Omar Binladin, Tariq Binladin, Mohammad Binladin Company, and Binladin Group International Company Ltd.*

# CERTIFICATE OF SERVICE

     I hereby certify that on June 8, 2006, I caused an electronic copy of the Reply Memorandum in Support of Defendants Bakr Binladin, Omar Binladin, Tariq Binladin, Mohammad Binladin Company, and Binladin Group International Company Ltd.'s Motion to Dismiss to be served by the Court's Electronic Case Filing System.

Date:  June 8, 2006

                                                                        /s/ Stephen J. Brogan
                                                                       Stephen J. Brogan

WAI-2216689