# EXHIBIT A

COMMONWEALTH OF THE BAHAMAS     1999

IN THE SUPREME COURT     No. 1216

Equity Side

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

Appearances: Mr. Colin E. Callender and Mrs. J. Almitra Jones for Petitioner
Mr. A. D. Hanna and Mr. Sean Hanna for the Company

---

**JUDGMENT**

---

HAYTON, J:

See Attachment

HAYTON, J.

This is a Petition dated 21/10/99 to have the company wound up based on its inability to pay its debts. This is a relevant ground on which the company is sought to be wound up, as is the further claim that it is just and equitable that the company should be wound up.

In my view, there is no evidence, other than the effect of the statutory demand, that proves that the company is insolvent and that it is just and equitable to wind up the company.

The alleged debt arose by virtue of an application made by the Petitioner to open an account with a deposit of one million US dollars on the 13th November, 1993 and then a subsequent deposit of one million US dollars on the 29th May, 1996 in an Investment Fund called a Mudaraba.

The Affidavit of Ali Ghaleb Himmat (AGH 1) exhibits the evidence to open the Mudaraba account. This type of account is unusual to the Bahamian eye.

When the Petitioner opened the Mudaraba account he was expressly required by the account opening form to read the conditions thereof and the Articles of Association of the Company.

The Articles of Association provide for the election of the Islamic Legal Control Committee, by virtue of Article 95, which further sets out the Committee's key role in the conduct of the company's business as a bank conforming to the provisions of the Sharia.

Under the Mudaraba conditions (AGH 2), the Bank has the right to group all of the Mudaraba accounts in a single portfolio invested "in accordance with Islamic Mudaraba (Qiradh) rules": See Clause 4 of the Conditions.

Clause 5 of the Conditions governing the Islamic Mudaraba with Bank Al Taqwa Limited provides that the Mudaraba is a running account, and if the owner of the funds wishes to totally or partially wind up his account he must inform the Bank of his intention in writing at least one Gregorian year prior to closing date. Notice was given by the Petitioner in June 1997 for his account to be wound up with effect on 31/12/98 pursuant to Clauses 11 and 12.

Distribution of the funds would not take place until the financial statements had been audited and approval given by both the Islamic Legal Control Committee and the General Assembly: see Clause 12.

Mr. Callender first submits that, once notice was given, the Petitioner's account was frozen and could not suffer any losses for the next 17 months i.e. until the end of December 1998 when his notice expired and his claim crystallized.

However, looking at the Islamic Mudaraba rules and the evidence, the essence of the Mudaraba is to avoid payment of interest which is contrary to the Sharia so that, instead, only profits or losses from investments would be credited or debited to the account.

The lengthy period of a minimum of one year notice is to enable the bank to meet its commitment to settle the Mudaraba account. The Mudaraba is a joint enterprise and anyone who has his money therein is locked in and must bear the benefits and burdens that run with the Mudaraba Fund. In the case of the Petitioner, his notice did not expire until the end of December 1998 and therefore his account was susceptible to any profit or losses occurring in the Fund to the 31/12/98.

If the Fund had made a profit during 1998, I suspect that the Petitioner would have been outraged if he could not share in the profits earned partly with his money. It is most significant that in the exceptional case of the Bank allowing a withdrawal from an account before expiry of the normal notice period no profits or losses are calculated in respect of the withdrawn amount, so indicating that in respect of moneys left in the account profits and losses are calculated to the end of the notice period.

By virtue of the Bank's letter to the Petitioner dated 9th June, 1997 (Exhibit GMB 3) with its enclosure (Exhibit AGH 5), the Bank confirmed that the account would be wound up on 31st December, 1998. Eighty percent of the stated balance of the account (2,303,507 US dollars) was promised to be paid in January following this date and so Mr. Callender's main point is that at the least this amount was due on 31st January, 1999.

Mr. Callender further accepts that, the remaining 20% could not be paid because the Fund incurred losses in the Southeast Asian market collapse and therefore, the Petitioner is entitled only to the 80%.

Mr. Hanna says you must read the 9th June, 1997 documents and the later correspondence and the Conditions of the Mudaraba in the light of Clause 13 which provides that, "In the event of a litigation concerning the implementation of the contract, the owner of the funds and the Bank shall have agreed herewith to refer such a dispute to the Bank's Islamic Legal Control Committee to be determined in accordance with Islamic Sharia rules within 120 days. The Body's majority decision shall be binding on both the Bank and the funds owner."

Mr. Callender says no litigation was commenced before 5th June, 1997 when the Petitioner sent his letter of notice to the bank and it took effect. Mr. Callender further says that the Petitioner was not trying to get favourable treatment over other account holders interested in the Mudaraba Fund. It was simply fortuitous that he gave his notice to withdraw from the Mudaraba in June 1997 before the Southeast Asian market collapsed and so will obtain an advantage over other account holders if his claim today is successful.

There is some dispute as to the meaning of "litigation" as provided in Clause 13 of the Mudaraba Conditions. I have refused the admission of the Affidavit of Mr. Eng Youssef

Nada sworn yesterday on this point. However, I have allowed the Articles of Association (exhibited to such Affidavit) on the basis that the Petitioner was required to have read this when he opened his account with the bank and the Court is entitled to see the Articles of a Company that it is being asked to wind up.

As already mentioned, Article 95 provides for the key role of the Islamic Legal Control Committee, while under Clause 12 of the Conditions, "The distribution of the profit will not take place before auditing the Balance Sheet and the Consolidated Financial Statements at the end of the year, and its approval by both the Islamic Legal Control Committee and the General Assembly." "Its approval" as a matter of grammar must relate to "the distribution of the profit".

From the 3rd July, 1999 Report of the Islamic Legal Control Committee (Exhibit AGH 6) it is clear that the Committee has adjudicated upon the Mudaraba problems occasioned by the dramatic South-East Asian losses in 1998, whether pursuant to its key role under Article 95 and Clause 12 or under Clause 13. There is the maxim "Omnia praesumuntur rite esse acta" ("everything is presumed to have been duly done" in the absence of evidence to the contrary) to support the view that the Islamic Legal Control Committee would not have done what it did except under duly invoked powers unless there is contrary evidence -- and no such contrary evidence is forthcoming.

Furthermore, the 5th July, 1999 report of the Board of Directors (Exhibit AGH 7) states, "The General Assembly of Bank Al Taqwa Ltd. Bahamas in its extra-ordinary meeting held on 28th June, 1999 after consulting with the Islamic Legal Control Committee resolved that (1) payments from all Mudaraba accounts opened with the Bank prior to 31st December, 1998 should be suspended (out of fairness to all parties and legal consideration) until all liabilities, external debts and final actual liquidation of Mudaraba assets have been completely achieved."

Both reports make it clear that nothing is due to pre 31st December, 1998 account holders, like the Petitioner, until the exact amount of the losses has been determined by an actual liquidation of the Mudaraba assets, so that a pro rata distribution can then be made to the account holders. Thus, the prima facie rights of the Petitioner have been overridden by Clauses 12 and 13 of the Mudaraba Conditions.

I find that the Petitioner's claim is premature, having to abide the outcome of the realisation of the Mudaraba assets. The Petition is dismissed, the Petitioner having to pay the costs of the Company.

29th March, 2000

Bank Al Taqwa Limited   -   Case No. 1216 of 1999
Re: Hearing of Petition Before Justice Hayton, Supreme Court

Colin E. Callender and J. Almitra Jones for the Petitioner; Sean Hanna and Arthur D. Hanna appearing for Bank Al Taqwa Ltd.

"List of Parties" of those opposing handed up to Judge

Submissions

Bank Petition filed on 21st October. Supported by Affidavit of Mr. Binladin with Exhibits

Exhibit E paragraph no. 5 of Mr. Binladin's Affidavit 21/1/98

The company appeared and filed an Affidavit through Ali C. Hizmmar filed on
Judge acknowledged that he had read the Affidavit and attached Exhibits
Reply of Mr. Binladdin with Affidavit and Exhibits

Mr. Callender received an Affidavit on 28/3/00. Told Counsel he would object unless he could get leave for time to get a response from the Prime Minister in Saudi Arabia
Exhibit Y says that P accepted this position and we say that is not so.

Mr. Hanna
Diff exp with distance. We took a month to answer to them
Affidavit of B filed on 9/3/

They did not think that they raised any new issues. Attorneys for Petitioner filed M of A but not the Articles

The main part in the last Affidavit was the meaning of litigation – dispute

Acknowledged that he should have given him three days notice but client flew over and they tried to get the Affidavit in as early as they could.

No objection if Counsel for Petitioner wants leave

Mr. Callender
Sub. Would be that litigation is I relation to the Agreement and not the Articles

Hayton J – has enough information to exclude Affidavit of Eng. Youssef Nada

Submissions of Colin Callender

4

COMMONWEALTH OF THE BAHAMAS      1999

IN THE SUPREME COURT

Equity Side

SUPREME COURT REGISTRY
APR 1 4 2000
NASSAU, BAHAMAS

No. 1216

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

O R D E R

BEFORE MR. ACTING JUSTICE DAVID HAYTON

The 29th day of March, A. D. 2000

UPON THE PETITION of Ghaleb Mohammad Binladin of Saudi Binladin Group, Prince Abdullah Street, Al-Rawda Dist., Post Box 15468, Jeddah 21444, Saudi Arabia who claimed to be a creditor of the above named company on 21st October, A. D. 1999 preferred unto this Court;

AND UPON HEARING Colin Callender, Esq. of Callenders & Co. of counsel for the petitioner Ghaleb Mohammad Binladin AND Hon. Arthur D. Hanna of Arthur D. Hanna & Co. of counsel for Bank Al Taqwa Limited ("the Company");

AND UPON READING the affidavits of the petitioner dated the 3rd day of November, A. D. 1999 and the 5th day of March, A. D. 2000 and the affidavit of Ali Ghaleb Himmat dated the 10th day of January, A. D. 2000;

THIS COURT DOTH ORDER that the said petition do stand dismissed out of this Court;

AND IT IS FURTHER ORDERED that the petitioner the said Ghaleb Mohammad Binladin do pay to the said Bank Al Taqwa Limited its costs of and occasioned by that action such costs to be taxed if not agreed.

BY ORDER OF THE COURT

R E G I S T R A R

**COMMONWEALTH OF THE BAHAMAS**

**IN THE SUPREME COURT**

Equity Side

IN THE MATTER OF
BANK AL TAQWA LIMITED

AND

IN THE MATTER OF
THE COMPANIES ACT, 1992

---

**O R D E R**

---

1999

No: 1216

Filed on the          day of April, A. D. 2000

*[signature]*

ARTHUR D. HANNA & Co.
No. 10 Deveaux Street
Nassau, Bahamas
Attorneys for Bank Al Taqwa Limited