UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |
| *This document relates to:* | |

*Euro Brokers, et al. v. Al Baraka, et al.,* 04 CV 7279 (RCC)
*World Trade Center Properties LLC, et al. v. Al Baraka, et al.,* 04 CV 7280 (RCC)
*New York Marine and General Insurance Co. v. Al Qaida, et al.,* 04 CV 6105 (RCC)

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF ABDULLAH BIN KHALID AL-THANI

June 12, 2006

# TABLE OF CONTENTS

*Page*

INTRODUCTION ....................................................................................... ......1

FACTUAL BACKGROUND ................................................................................ 2

ARGUMENT ...................................................................................................... 5

I.  AL-THANI IS NOT IMMUNE UNDER THE FSIA ............................................ 5

    **A.**  The FSIA Provides No Immunity for Acts Not Carried Out in Al-Thani's Official Capacity ......................................................................... 5

    **B.**  Even if Al-Thani Was Acting in His Official Capacity, He Is Not Entitled to Sovereign Immunity Because His Conduct Falls Within the "Tortious Acts" Exception to the FSIA ...................................................... 6

II.  AL-THANI WAS PROPERLY SERVED ....................................................... 9

    **A.**  Al-Thani Was Appropriately Served by Publication .......................... 9

    **B.**  Service By Publication On Al-Thani Was Demonstrably Effective.................... 9

III.  THE AMENDED PLEADINGS ARE IN COMPLIANCE WITH THE  COURT'S CASE MANAGEMENT ORDERS ..................................................................... 12

IV.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT AL-THANI .................... 13

    **A.**  Personal Jurisdiction Exists under New York's Long-Arm Statute .................. 14

    **B.**  The Exercise of Jurisdiction Comports with Due Process................................. 14

    **C.**  Al-Thani Directed His Conduct at the United States......................................... 15

    **D.**  Plaintiffs Have Sufficiently Pled the Causal Connection Between Al-Thani and The September 11 Terrorist Attacks ........................................... 16

V.  THE AMENDED PLEADINGS AND MORE DEFINITE STATEMENTS SUFFICIENTLY STATE CLAIMS AGAINST ABDULLAH AL-THANI.................................................... 17

    **A.**  Plaintiffs State Claims under the Anti-Terrorism Act ....................................... 17

    **B.**  Plaintiffs Properly State RICO Claims Against Al-Thani ................................. 18

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

*Page*

## Cases

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485 (S.D.N.Y. 1998) ............12

*Allen v. New World Coffee, Inc.*, 2001 WL 293683 (S.D.N.Y. March 27, 2001).........................................12

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) ...........................................................................................19

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002)............................................... 16, 18

*Burger King v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ..................................15

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984) ..................................................15

*Chrysler Capitol Corporation v. Sentry Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991)...........................14

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................................13

*Daliberti v. Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) .....................................................................................15

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ........................................................................................19

*Dempsey v. Sanders*, 132 F. Supp. 2d 222 (S.D.N.Y. 2001) ........................................................................12

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)...........................................19

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C.Cir.1996) ...................................................................6

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ...................................................19

*Foman v. Davis*, 371 U.S. 178 (1962).........................................................................................................13

*Friedman v. Hartmann*, 1994 WL 376058 (S.D.N.Y. July 15, 1994) ..........................................................19

*Grannis v. Ordean*, 234 U.S. 385 (1914) ....................................................................................................11

*Halberstam v. Welch*, 705 F.2d 472 (D.C.Cir. 1983).....................................................................................7

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208 .........................................................................15

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp. 2d 765 (S.D.N.Y. 2005).......................... 10, 13

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) ...................................6

*Letelier v. Republic of Chile*, 488 F.Supp. 665 (D.DC. 1980)........................................................................8

*Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) ..............................................................................8

*McLaughlin v. Anderson*, 962 F. 2d 187 (2d Cir. 1992) ...............................................................................12

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993)......................................................................................20

*Moses v. Martin*, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) ..............................................................................12

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950) ..................................................................... 10, 11

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)........................................................................................15

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002) ........................................................................................17

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D.D.C. 2003) ...................................15

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998)................................15

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir.2001).....................................................................7

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) .................................................................................... 9, 11

*Salinas v. United States*, 522 U.S. 52 (1997)..................................................................................................19

*Twombley v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005) ........................................................................17

*United States v.  Coonan*, 938 F.2d 1553 (2d Cir. 1991) ................................................................................19

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998)..........................................................................................19

*United States v. Turkette*, 452 U.S. 576 (1981)...............................................................................................19

*Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902 (2d Cir. 1977)...............................................................13

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2003).............................................7

*Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001).............................................................17

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ..........................................................................................17

## Statutes

18 U.S.C. § 2333.................................................................................................................................................17

18 U.S.C. § 2339A(b)........................................................................................................................................18

18 U.S.C. §§ 1962(c) .........................................................................................................................................18

18 U.S.C. §§ 1962(d) .........................................................................................................................................18

28 U.S.C. § 1605(a)(5)....................................................................................................................................6, 7

28 U.S.C. § 1608................................................................................................................................................9

## Other Authorities

Restatement (Second) of Torts §§ 876................................................................................................................17

Restatement (Second) of Torts §§ 877................................................................................................................17

## Rules

Fed. R. Civ. P. 10(c)..........................................................................................................................................13

Fed. R. Civ. P. 12 ...............................................................................................................................................1

Fed. R. Civ. P. 12(e)..........................................................................................................................................12

Fed. R. Civ. P. 8.................................................................................................................................................17

## INTRODUCTION

In his motion to dismiss for failure to state a claim, Defendant Abdullah bin Khalid Al-Thani (or "Al-Thani" or "Defendant" or "Defendant Al-Thani") argues that the complaints in these cases do not contain allegations against him and then asks this Court to disregard Plaintiffs' More Definite Statement, in which, in accordance with the procedures established by this Court, the allegations against him are indeed set forth.  In the alternative, Al-Thani asks this Court to find the allegations in the More Definite Statement insufficient because they are "erroneous," *see* Memorandum of Law in Support of Abdullah bin Khalid Al-Thani's Motion to Dismiss (hereinafter "Al-Thani Memo") at 7, or "unfounded," *see* Al-Thani Mem. at 23.  Putting aside purely procedural or technical arguments, then, what the Defendant apparently seeks to argue are the *merits* of this lawsuit.  This is simply not a proper determination at this juncture.  A motion to dismiss is designed to test the legal sufficiency of the allegations, not to determine the ultimate issues of fact that underlie the pleadings. As described below, the allegations against Al-Thani, set out by Plaintiffs in the Complaints and the Rule 12(e) More Definite Statement extensively detail the material support he provided to al Qaeda operatives and Osama bin Laden. These allegations are more than sufficient to satisfy the pleading standards of Fed. R. Civ. P. 12.[1]

Al-Thani also raises a host of procedural and jurisdictional defenses, arguing that he is protected by sovereign immunity, that he was not properly served, and that he is not subject to personal jurisdiction.  None of these defenses has merit.  The Court should deny Defendant Al-Thani's Motion to Dismiss because: 1) Al-Thani is not immune from this suit under the FSIA; 2) service of process was demonstrably effective in this matter; 3) Plaintiffs have stated claims against

---

[1] See *WTC* Complaint (Filed on 9/10/04); *Euro Brokers* Complaint (Filed on 9/10/04); *NYMAGIC* Complaint (Filed on 8/6/04 ) *Euro Brokers and WTC* Plaintiffs' More Definite Statement as to Defendant Abdullah bin Khalid bin Al-Thani (Filed on 9/27/05)

Al-Thani for which relief can be granted; and 4) the Court has personal jurisdiction over Defendant Al-Thani.

## FACTUAL BACKGROUND

As set forth in the More Definite Statement (incorporated into complaints) in these cases, Al-Thani knowingly and intentionally provided material support to Osama bin Laden and al Qaeda and their terrorist campaign against the United States. Al-Thani provided his assistance primarily to Khalid Sheikh Mohammed, the architect of the September 11 attacks. Plaintiffs here summarize the allegations against Al-Thani, as set forth in the pleadings.

**Al-Thani and Khalid Sheikh Mohammed**

Osama bin Laden and the 9/11 hijackers could not have planned and carried out the September 11 attacks without financial and logistical assistance, and at the forefront of this task was senior al Qaeda operative Khalid Sheik Mohammed (or "KSM"), the man who has publicly taken "credit" for the atrocities of September 11, 2001. *WTC* Complaint ¶ 81. In fact, the funds 9/11 hijacker Mohammed Atta withdrew from an ATM in South Portland, Maine, on September 10, 2001, were transferred from accounts run by KSM in the United Arab Emirates. *WTC* Complaint ¶ 8.

The tragedy is that when KSM was on the brink of being captured by U.S. authorities in January 1996, following a grand jury indictment against him in the Southern District of New York, he managed to elude FBI agents who arrived in Qatar, where KSM was being hosted by Al-Thani at his farm outside Doha, to escort him back to the U.S. MDS ¶ 3. Not only did Al-Thani provide a safe-haven for the future mastermind of the September 11 attacks while he plotted the attacks, but Al-Thani is also reported to have tipped off KSM in time to allow him to escape. MDS ¶ 4. By the time that FBI agents arrived to escort KSM back to the U.S., well-aware that U.S. authorities were chasing him after being "warned" by "an official in the government of Qatar," KSM had fled Qatar

2

for good and managed to evade capture.[2]  According to several U.S. officials quoted by the *Los Angeles Times* —including Richard Clarke—it was Abdullah Al-Thani who slipped word to KSM about the imminent raid by the FBI and helped whisk him out of the country.[3] Retired CIA officer Robert Baer said that once the agents arrived, the Head of Qatar's National Security indicated that a member of the ruling family (most likely Al-Thani) ordered him to issue blank passports to four individuals.  These included KSM, as well as top bin Laden aides Mohammed Atef and Ayman Zawahiri. MDS ¶ 4. As the 9/11 Commission final report explained, KSM's miraculous escape from Qatar engineered by Al-Thani allowed him to "stay[] at large to play a central part in the 9/11 attacks."[4] Saudi intelligence has indicated that KSM may have returned to Qatar in late 2001, around the time of the September 11 attacks, to spend two weeks there "with the help of prominent patrons" that most likely included Al-Thani, amongst others. MDS ¶ 5.

According to the final report of the Congressional 9/11 Commission—apparently at the behest of Sheikh Al-Thani—KSM was appointed to "a position… as project engineer with the Qatari Ministry of Electricity and Water… he engaged in extensive international travel during his tenure at the ministry—much of it in furtherance of terrorist activity."[5]  Indeed, KSM has admitted that while living in the safety of Defendant Al-Thani's estate in Qatar in February 1995, he and Ramzi Yousef "consulted by telephone" regarding their plans to launch catastrophic terrorist attacks on American targets in East Asia.[6] According to co-conspirator Abdel Hakim Murad who was

---

[2] <u>The 9/11 Commission Report</u>.  Final Report of the National Commission on Terrorist Attacks Upon the United Stats.  July 22, 2004.  Pages 73.

[3] Meyer, Josh and John Goetz.  "Qatar's Security chief Suspected Of Having Ties to Al Qaeda." <u>Los Angeles Times</u>.  March 28, 2003.

[4] <u>The 9/11 Commission Report</u>.  Final Report of the National Commission on Terrorist Attacks Upon the United Stats.  July 22, 2004.  Page 73.

[5] *Id.* at 147.

[6] *Id.* at 489.

arrested and questioned by Philippine police, Ramzi Yousef and KSM also were conceiving a joint plot at this time to suicide crash commercial aircraft into the CIA Headquarters in Langley, Virginia.[7]

**Al-Thani and Other Al Qaeda Operatives**

Beginning in approximately 1995, U.S. government officials became aware that Al-Thani (then serving as head of Islamic Affairs) was involved in supporting "radical Muslim fundamentalists, including moujahedeen who fought for jihad, or holy war, against the Soviet occupation of Afghanistan and in other conflicts."[8] As part of his support, Al-Thani allegedly "sheltered terrorists… in and around his farm compound near the [Qatari] capital of Doha."[9]

Other than KSM, Al-Thani has also reportedly assisted additional al Qaeda leaders, including Mohammed Atef and Anyman Zawahiri, by "providing them with a place to stay, false documents and other services."[10] MDS ¶ 2. Intelligence reports have indicated that Al-Thani operated a safe house for another high-ranking al Qaeda official, Abu Musab Al-Zarqawi. MDS ¶ 6. Zarqawi is believed to have provided chemical and explosives training the Specially Designated Global Terrorist Ansar al-Islam, an al Qaeda affiliated organization. *Id.* Zarqawi, according to Colin Powell's February 6, 2003, address to the UN Security Council, created the environment for which "nearly two dozen extremists converged on Baghdad and established a base of operations there." Officials have also indicated that Al-Thani "provided Qatari passports and more than $1 million in a special bank account to finance the network" in Baghdad. *Id.*

---

[7] The 9/11 Commission Report. Final Report of the National Commission on Terrorist Attacks Upon the United Stats. July 22, 2004. Page 345, page 33 fn 33 and 1995 Phillipine Police Report cited herein.

[8] Meyer, Josh and John Goetz. "Qatar's Security chief Suspected Of Having Ties to Al Qaeda." Los Angeles Times. March 28, 2003.

[9] *Id.*

[10] *Id.*

According to former Central Intelligence Agency (CIA) agent Robert Baer, Al-Thani is "a sympathizer, a fellow traveler" to al Qaeda operatives and he is "definitely a danger… a threat" to U.S. interests in the Middle East.[11] Former White House counterterrorism czar Richard Clarke added that Al-Thani "had great sympathy for Osama bin Laden, great sympathy for terrorist groups, [and] was using his personal money and ministry money to transfer to Al Qaeda front groups that were allegedly charities."[12] When told by journalists in 2003 that Al-Thani had been appointed as Qatar's Interior Minister, Clarke responded, "I'm shocked to hear [that]… You're telling me that [Al-Thani] is today in charge of security inside Qatar?  I hope that's not true."[13]

ARGUMENT

## I.   AL-THANI IS NOT IMMUNE UNDER THE FSIA

### A.   The FSIA Provides No Immunity for Acts Not Carried Out in Al-Thani's Official Capacity

Al-Thani claims that he is entitled to sovereign immunity because he has held, and holds, a position in the government of Qatar, first as Minister of Awqaf and Islamic Affairs and then as Minister of the Interior. Plaintiffs do not dispute that Al-Thani has been an official of the Qatar government and indeed Plaintiffs' More Definite Statement specifically alleges that Al-Thani was the Minister of Religious Affairs. *But the Complaint does not allege that Al-Thani's assistance to al Qaeda took place in his official capacity.* Rather, while holding his government positions, Al-Thani personally provided support and assistance to Khalid Sheikh Mohammed, the admitted architect of the September 11 attacks. *See* Al-Thani MDS, ¶¶ 3-6. Plaintiffs also allege that Al-Thani operated a "safe house" for al Qaeda official Abu Mussab al-Zarqawi. These clandestine activities could not

---

[11] Meyer, Josh and John Goetz. "Qatar's Security chief Suspected Of Having Ties to Al Qaeda." <u>Los Angeles Times</u>.  March 28, 2003.

[12] *Id.*

[13] *Id.*

5

have been part of Al-Thani's role as Minister of Islamic Affairs nor of his role as Minister of the Interior. Certainly they were not in accordance with the official policies of Qatar's government.

This is especially true because Qatar allowed the FBI to enter the country in 1996 in order to arrest KSM; Al-Thani frustrated this objective by arranging for KSM to evade capture. *See* MDS ¶¶ 3-4. Al-Thani provides no basis for the Court to conclude that arranging for blank passports or helping an international fugitive escape capture, *see* MDS ¶¶ 3-4, was an official act for the Qatari Minister of Islamic Affairs (Al-Thani's title in 1996).

The law is quite clear that even government officials have no immunity for acts undertaken in a personal or private capacity. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997) ("Individuals acting in their official capacities are considered agencies or instrumentalities of a foreign state; these same individuals, however, are not entitled to immunity under the FSIA for acts that are not committed in an official capacity."); *accord El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.Cir.1996). To the extent that plaintiffs allege that Al-Thani provided support to al Qaeda personally, in contravention of the policies of his government, the FSIA does not shield him from liability for those private acts.

But even if Al-Thani's acts were official, he would not be entitled to immunity because this case falls within the "tortious act" exception to the FSIA.

### B.   Even if Al-Thani Was Acting in His Official Capacity, He Is Not Entitled to Sovereign Immunity Because His Conduct Falls Within the "Tortious Acts" Exception to the FSIA

Al-Thani is not entitled to immunity because his conduct falls within the tortious acts exception to the FSIA. *See* 28 U.S.C. § 1605(a)(5). Plaintiffs note that, although they have "the burden of going forward with evidence showing that . . . immunity should not be granted . . . the ultimate burden of persuasion remains with the alleged foreign sovereign" to show that the claimed

exception does not apply and that immunity should be granted. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230,241 (2d Cir. 2003). Al-Thani has not met that burden here.

The "tortious acts" exception provides that a foreign official has no immunity in any case:

> in which money damages are sought against a foreign state for personal injury or death or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .

28 U.S.C. § 1605(a)(5). Because plaintiffs' claims arise from deaths and injuries incurred in the September 11 terrorist attacks, they are seeking money damages for personal injury and/or death in the United States based on tortious conduct. Their claims fall squarely within this exception.

Relying on the prior decisions of this Court, Al-Thani contends that this exception does not apply because, he says, plaintiffs have insufficiently alleged a connection between Al-Thani's conduct and the September 11 attacks.   Al-Thani is wrong: plaintiffs sufficiently allege that Al-Thani knowingly provided material support to al Qaeda and that his support was connected to the September 11 attacks.  *See, e.g, Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983); *see also Robinson v. Government of Malaysia*, 269 F.3d 133, 143 (2d Cir.2001).  Specifically, plaintiffs have alleged that Al-Thani helped Khalid Sheikh Mohammed escape arrest by the FBI just five years before the September 11 attack.  *See* MDS ¶¶ 3-4.  KSM was wanted by the United States government, and had been indicted in this very Court, in connection with the Bojinka plot.  *Id.*  The FBI sought to arrest KSM in Qatar in 1996, but when they arrived in Qatar, KSM was gone, apparently tipped off by Al-Thani.  *Id.*  Without the intervention of a high Qatar government official – believed and alleged to be Al-Thani – it appears that the FBI would have arrested KSM and brought him to the United States to stand trial in this district.  Instead, KSM went on to mastermind the September 11 attacks. It is hardly a stretch to conclude that, had the FBI successfully arrested KSM in 1996, he would not have been in a position to do that.

Moreover, plaintiffs allege sufficient facts from which the Court can conclude that Al-Thani intentionally provided assistance to KSM with knowledge that he was aiding al Qaeda and its terrorist agenda. The arrest that Al-Thani helped KSM evade was in connection with the Bojinka plot, a plan to attack up to a dozen American airplanes. Moreover, plaintiffs have alleged that Al-Thani had ties to other top al Qaeda leaders, including Osama bin Laden and Abu Musab al-Zarqawi and that he shared their ideas. *See* MDS ¶¶ 6-7. Under these circumstances, it would be unreasonable to conclude that Al-Thani did *not* intentionally provide assistance to an al Qaeda terrorist with knowledge that he was assisting al Qaeda's terrorist agenda.

Al-Thani also claims that the "discretionary function" exclusion to the "tortious act" exception cloaks him with immunity. In making this argument, Al-Thani relies on this Court's holding concerning Prince Naif, the Saudi Arabian Minister of Interior, *see* Al-Thani Mem. at 13, but this reliance is misplaced. Although Al-Thani and Naif held similar positions in their respective governments, the acts of which they are accused are strikingly different. Plaintiffs alleged that Prince Naif provided support to al Qaeda through various Saudi charities that he was charged with overseeing. Even if this Court was correct that these were official acts "squarely covered by the discretionary function language" – and plaintiffs respectfully disagree with this conclusion – it would not follow that knowingly assisting an international terrorist fugitive to evade capture by the United States – a capture explicitly sanctioned by the Qatari government – government similarly falls into that category.

Plaintiffs have previously argued that, under relevant case law, supporting murderous acts by international terrorists falls outside the scope of any discretion that the United States recognizes, or ought to recognize, for foreign officials. *See Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989); *Letelier v. Republic of Chile*, 488 F.Supp. 665 (D.DC. 1980). Even if the Court does not, as a general matter, agree, Al-Thani does not explain how it could be a "discretionary function" of the Qatari

Minister of Religious Affairs to procure false passports and aid an international terrorist under indictment in the United States to escape capture after the FBI had been permitted to enter Qatar for the purpose of making an arrest, even assuming that he did so under color of his official authority.  Because Al-Thani had no discretion to do this, he may not rely on the "discretionary function" exclusion to claim immunity for his support of the al Qaeda plot that resulted in the tragic events of September 11.

## II.    AL-THANI WAS PROPERLY SERVED

### A.    Al-Thani Was Appropriately Served by Publication

Al-Thani claims that service against him was improper because it did not comport with service pursuant to 28 U.S.C. § 1608 – service upon foreign sovereigns, their agencies and instrumentalities.  As argued in detail, *supra.*, plaintiffs' claims against Al-Thani do not arise pursuant to his official acts as a foreign sovereign based on his governmental office within Qatar.  Rather, plaintiffs' allegations against Al-Thani are based wholly on acts carried out by Al-Thani in his non-official and individual capacity.  Therefore, plaintiffs bear no burden to serve Al-Thani pursuant to the confines of the FSIA.  Such provisions concerning service of process pursuant to the FSIA are inapplicable in this situation.

### B.    Service By Publication On Al-Thani Was Demonstrably Effective

Al-Thani also argues that publication in the *International Herald Tribune*, *USA Today* and *Al Quds Al-Arabi* (published in Arabic) were circulated in Qatar but provided insufficient notice to him.  This misapprehends the applicable standard.  The Second Circuit stated in *S.E.C. v. Tome*, 833 F.2d 1086, 1089 (2d Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

In addition, as Justice Jackson stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).  The question before the Court is whether publication in the *International Herald Tribune*, *USA Today* and *Al-Quds Al-Arabi* was "reasonably calculated" to notify Defendant Al-Thani of the suit against him.  Moreover, in rejecting a similar argument from Defendant Adel Batterjee, this court held:

> Plaintiffs reasoned that *Al-Quds Al-Arabia* had published Osama bin Laden's fatwas in the past and could, therefore, reach his supporters regardless of their location.  Further, *the International Herald Tribune* is available to the world community.  Additionally, Plaintiffs submit that these cases have been widely reported in the Arabic media and the complaints have been available on numerous websites for over two years.  In light of these considerations and Judge Robertson's March 23, 2003, order approving service by publication for Defendants including Mr. Batterjee, the Court denies Mr. Batterjee's motion to quash service.

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 824-825 (S.D.N.Y. 2005).

Here, it is clear that notice by publication satisfied the requirements of the federal rules and of due process, because publication was pursuant to an order of this Court and because it is clear that Defendant Al-Thani received actual notice.  After the transfer and consolidation of the case before this Court, the Plaintiffs requested an Order authorizing Plaintiffs to effectuate service by publication on Defendants specified in the accompanying attachment "for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted or rejected or otherwise not responded to at an address that was discovered," MDL 1570 Docket No. 445.  By granting Plaintiffs' request on September 15, 2004, this Court in effect found that it *was* appropriate for the Plaintiffs to serve the Defendants on the accompanying attachment by publication.  Defendant Al-Thani, who lives in Qatar, was among those listed to be served by publication and thus was among those whom the Court found could be properly served by this method.  Plaintiffs served Defendant Al-Thani by publication in compliance

with the Court's Order of September 15, 2004.  *See* MDL 1570 Docket Nos. 709 and 735.  There is no doubt from his pleading that he is aware that he has been designated an al Qaeda conspirator.  It is also plain that he has in fact received notice of these lawsuits, given that he has retained counsel, appeared and filed a motion to dismiss.

Defendant Al-Thani's appearance in this case demonstrates that service by publication was adequate.  Furthermore, Plaintiffs have uncovered dozens of articles that have been published in the Arabic media specifically discussing the on-going litigation before this Court, including detailed reports of Your Honor's Opinions and Orders, named defendants, and other recent developments.  Indeed, these Arabic media reports provide an additional channel for Defendant Al-Thani and others to become apprised of the lawsuit against them.

The Second Circuit stated in *Tome*: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*."  *Tome*, 833 F.2d at 1089.  Here, too, we are dealijng with actual, rather than constructive notice, because Defendant Al-Thani has appeared to defend this action.  As the Supreme Court stated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."   The record in this matter establishes that Defendant Al-Thani *did* receive notice of the suit, understood that he had to hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss.  This demonstrates the adequacy of the notice by publication.  This further satisfies Justice Jackson's concerns in *Mullane* as Defendant Al-Thani has obviously been apprised of the pendency of the action and has been afforded an opportunity to present his objections.  Without question, the notice in this case accomplished the goal of informing Defendant Al-Thani of the instant action and allowing him to appear and defend.

## III.   THE AMENDED PLEADINGS ARE IN COMPLIANCE WITH THE   COURT'S CASE MANAGEMENT ORDERS

Plaintiffs' amended pleadings – which gather into one place all of the allegations against all of the defendants in each action – comply with both the letter and spirit of Case Management Order #2.  Furthermore, Defendant Al-Thani is not prejudiced by any perceived technical non-compliance and indeed, he does not even contend otherwise.

As the Court will remember, Case Management Order #1 permitted Plaintiffs to add defendants without pleading specific allegations against those defendants; the order then permitted any defendant as to whom the complaint contains no allegations to seek a "more definite statement," specifying the nature of the claims asserted.  Case Management Order #2 ("CMO #2") then expanded on this procedure, providing:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint.

CMO #2, ¶ 13.  The order then required Plaintiffs to gather all such more definite statements into a single document and to "file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise."  *Id.*[14]  Pursuant to the Court's directive, Plaintiffs' final amended pleadings, filed on or about September 30, 2005, incorporated all of these various filings into consolidated documents.  Although Plaintiffs in the various cases took different approaches to the requirements of CMO #2, all of the amended pleadings complied with the Order and none should be stricken.[15]

---

[14] *All* of the More Definite Statements are without a doubt part of the pleadings, *See McLaughlin v. Anderson*, 962 F. 2d 187, 195 (2d Cir. 1992); *Moses v. Martin*, 360 F. Supp. 2d 533, 539 n. 22 (S.D.N.Y. 2004); *Allen v. New World Coffee, Inc.*, 2001 WL 293683, * 2 n. 3 (S.D.N.Y. March 27, 2001); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); *A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 509, n. 16 (S.D.N.Y. 1998).

[15] Plaintiffs in *EuroBrokers*, and *World Trade Center Properties* each filed a "Notice of Consolidated

Rather than gamesmanship as argued by Defendant Al-Thani, "the purpose of pleading is to facilitate a proper decision on the merits." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir. 1977), *quoting Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities").

The incorporation of the More Definite Statements into Plaintiffs' complaints, by reference or attachment as exhibits, is expressly authorized by the Federal Rules. Rule 10(c) of the Federal Rules of Civil Procedure provides:  "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading in any motion.  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." F.R.C.P. 10(c).  In view of the plain language of Rule 10(c), the Plaintiffs' incorporation of the More Definite Statements applicable to Al-Thani into their Consolidated or Amended pleadings, by reference or attachment as an exhibit complies with both the letter and spirit of the Federal Rules. The Plaintiffs' consolidated or amended pleadings and More Definite Statements contain allegations that should not be disregarded by this Court simply because Al-Thani does not like how they are organized.

## IV.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT AL-THANI

As this Court has already noted, "Because these motions are brought before discovery and decided without an evidentiary hearing, Plaintiffs need only make a *prima facie* showing that personal jurisdiction exists…and they will prevail even if Defendants make contrary arguments." *In re Terrorist Attacks on September 11, 2001,* 349 F.Supp.2d 765, 804 (S.D.N.Y. 2005).

---

Pleading" incorporating by reference all of the previously-filed amendments to their respective complaints.  Each such document "includes all amendment made prior to" the requisite date, just as required by the Court.   More important, the "Notice of Consolidated Pleading" permits each defendant to find in a single place all of plaintiffs' allegations. The approach taken by the plaintiffs in *New York Marine* achieves precisely the same result.

### A.      Personal Jurisdiction Exists under New York's Long-Arm Statute

Defendant's arguments regarding the applicability of New York's Long-Arm Statute are simply wrong. As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)." *In re Terrorist Attacks*, 349 F. Supp. 2d at 805 (quoting, *Chrysler Capitol Corporation v. Sentry Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991)).

Plaintiffs have adequately alleged that Al-Thani was an active and knowing participant in al Qaeda's conspiracy to attack America. Without question, those who knowingly aid a terrorist organization do so in order to see the organization successfully carry out terrorist attacks. Indeed, in recognition of that fact, the United States Government has declared that those who support terrorists are as culpable as those who carry out the attacks. Thus, the operatives who carried out the September 11 attacks necessarily were acting for the benefit of al Qaeda's material sponsors and supporters, and the New York Long-Arm Statute consequently provides a statutory basis for exercising personal jurisdiction over al Qaeda's co-conspirators, including Defendant Al-Thani.[16]

### B.      The Exercise of Jurisdiction Comports with Due Process

Al Thani's assertion that the exercise of personal jurisdiction over him would violate due process is equally unconvincing. The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. *Calder v. Jones*, 465 U.S. 783, 788,

---

[16]   The plaintiffs have asserted claims against these defendants under the ATA and Civil RICO, both of which include nationwide service of process provisions. As such, the exercise of personal jurisdiction also is authorized under Fed. R. Civ. P. 4(k)(1)(D), provided that the exercise of jurisdiction comports with due process. For the reasons set forth in greater detail herein, the exercise of personal jurisdiction over these defendants does comport with due process.

104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984). Under these standards, due process considerations are satisfied so long as the defendant has "fair warning" that he may be haled into court in the forum to respond for his actions. *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In an action involving harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence." *Calder*, 465 U.S. at 788. Consistent with this principle, the courts have found that due process is not violated by the exercise of jurisdiction over those who deliberately target our citizens. *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D.D.C. 2003); *Daliberti v. Iraq*, 97 F. Supp. 2d 38, 54 (D.D.C. 2000); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998); *Mwani v. Bin Laden*, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaeda and its co-conspirators have "engaged in unabashedly malignant actions directed at and felt in" the United States).

## C.  Al-Thani Directed His Conduct at the United States

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction over Defendant Al-Thani, pursuant to the applicable standards set forth above. As described above, Al-Thani, for a period of many years, directly aided and harboured terrorists and al Qaeda officers. In knowingly and directly participating in al Qaeda's campaign to attack America, Al-Thani necessarily directed his conduct at the United States, as it has been publicly known, since at least the mid-1990's, that al Qaeda was engaged in a global campaign of terror directed against the United States. *In re Terrorist Attacks*, 349 F. Supp. 2d at 813 ("This Court's record … contains many examples of Osama bin Laden's and al Qaeda's public targeting of the United States"). Thus, the exercise of jurisdiction over the Defendants for claims arising from their sponsorship of al Qaeda complies with due process.[17]

---

[17]  Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208; see also *Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

**D.     Plaintiffs Have Sufficiently Pled the Causal Connection Between Al-Thani and The September 11 Terrorist Attacks**

Al-Thani argues that Plaintiffs have not sufficiently pled a causal connection between his actions and the September 11 attacks. This is not the case.  Al-Thani is alleged to have provided a safe-haven and passports for al Qaeda operatives, including Khalid Sheikh Mohammed, the mastermind of the September 11 attacks, during the time at which they would have been orchestrating their plan to attack America on September 11, 2001.  *See* MDS ¶ 2, 3. These allegations properly allege that Al-Thani's support and assistance was a proximate cause of the September 11 attacks.

Plaintiffs allege that "The financial resources and support network of . . . Defendants – charities, banks, front organizations and financiers – are what allowed the attacks of September 11, 2001 to occur. Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and act on a massive scale without significant financial power, coordination and backing." *See WTC Complaint* ¶ 1. *See also Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence."). Moreover, this Court has already held that "[i]n light of Al Qaida's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaida." See *In re Terrorist Attacks*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005). Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id.* at 829.

---

Plaintiffs have alleged that Defendant Al-Thani provided support to al Qaeda operatives, going so far as to assist KSM in evading capture, which would later enable him to carry out the September 11 attacks. Assuming those allegations are true, which the Court is required to do at this stage of the litigation, then Defendants are legally responsible for the September 11 attacks. See Restatement (Second) of Torts §§ 876, 877; see also *In re Terrorist Attacks*, 349 F. Supp. 2d at 826. At a minimum, Plaintiffs are entitled to the opportunity to take discovery and prove their allegations and establish that Defendants knowingly and intentionally participated in the sponsorship of al Qaeda.

## V.   THE AMENDED PLEADINGS AND MORE DEFINITE STATEMENTS SUFFICIENTLY STATE CLAIMS AGAINST ABDULLAH AL-THANI

Plaintiffs respectfully incorporate all prior arguments asserted in prior briefs and also remind the Court that in October of 2005, the Second Circuit re-iterated and re-affirmed the "notice pleading" standard set forth in Fed. R. Civ. P. 8 as applied to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Twombley v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005). In evaluating whether the plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them. *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002). Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001).

### A.   Plaintiffs State Claims under the Anti-Terrorism Act

Under the ATA,[18] Defendant Al-Thani is liable if he provided material support to al Qaeda with knowledge of its terrorist agenda or if he aided and abetted al Qaeda or Osama bin Laden in

---

[18] The Anti-Terrorism Act ("ATA") provides a civil action for "[a]ny national of the United States injured in his person, property or business by reason of an act of international terrorism[.]" 18 U.S.C. § 2333.

their course of terrorist conduct. See *Boim* . Defendant Al-Thani argues that plaintiffs have failed to state claims against him because, he contends, plaintiffs fail to allege any specific facts that could give rise to an inference that he knowingly and intentionally provided material assistance to al Qaeda. Plaintiffs' amended pleading and More Definite Statements, as discussed in detail above, demonstrate otherwise. The term "material support or resources" is defined by statute within the ATA as "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials." 18 U.S.C. § 2339A(b). As plaintiffs' allegations regarding Al-Thani's support for al Qaeda include the provision of "lodging…, safehouses, false documentation or identification…, facilities…, [and/or] transportation," plaintiffs assert that Al-Thani's argument is without merit.

### B.    Plaintiffs Properly State RICO Claims Against Al-Thani

Al-Thani also contends that none of the Plaintiffs have properly pleaded their RICO claims. He is wrong.[19]

Plaintiffs' complaints and RICO Statements assert RICO claims against Defendant Al-Thani pursuant to 18 U.S.C. §§ 1962(c) and (d). The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure. *See, e.g., WTC* Complaint ¶ 1081-1085. Its well documented purpose is to perpetrate acts of terrorism. Thus, Plaintiffs have sufficiently pled that

---

[19] As a preliminary matter, defendant argues that Plaintiffs in all cases other than Federal are barred from pursuing RICO claims, because they have not filed RICO Statements applicable to the defendant. Plaintiffs have addressed this argument in Plaintiffs' Memorandum of Law in Opposition to the Consolidated Motion to Dismiss of the Saudi Red Crescent Society and Dr. Abdul Rahman Al Swailem, Docket No. 1245, at 22-23. Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs' allege sufficient involvement by Defendant Al-Thani in the enterprise to sustain claims under both §§ 1962(c) and (d). Although a plaintiff asserting a civil claim under §1962(c) must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank*, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003), such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear*." See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), citing *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D.N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962(d), the requirements "are less demanding." *Baisch*, 346 F.3d at 376. All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 376-77 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962(c), they may still

conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

Here, Plaintiffs have satisfied the pleading standards applicable to their § 1962(c) and §1962(d) claims), particularly given the fact that Plaintiffs have not been afforded the opportunity to take discovery.  The Plaintiffs allege that Defendant Al-Thani provided material support to al Qaeda operatives with the knowledge that their intention was to attack the United States.  In view of these allegations regarding Al-Thani's integral support of al Qaeda's operations, Plaintiffs have adequately alleged that he played a direct and active role in the operation of al Qaeda's scheme.

## CONCLUSION

For the foregoing reasons, this Court should deny Al-Thani's motion to dismiss in its entirety.

Dated: New York, NY
       June 12, 2006                          Respectfully submitted,


                                 _____/s/_____
                                 Ronald L. Motley, Esq. (SC Bar #4123)
                                 Jodi Westbrook Flowers, Esq. (SC Bar #66300)
                                 Donald A. Migliori, Esq. (RI Bar #4936)
                                 Michael Elsner, Esq. (NY & VA Bar #ME-8337)
                                 Robert T. Haefele, Esq. (NJ-58293; PA-57937)
                                 Justin B. Kaplan, Esq. (TN-022145)
                                 John Eubanks, Esq.
                                 MOTLEY RICE LLC
                                 28 Bridgeside Boulevard
                                 P.O. Box 1792
                                 Mount Pleasant, South Carolina 29465
                                 Tel:  (843) 216-9000

                                 Paul J. Hanly, Jr., Esq. (PH-5486)
                                 Jayne Conroy, Esq. (JC-8611)
                                 Andrea Bierstein, Esq. (AB-4618)
                                 HANLY CONROY BIERSTEIN & SHERIDAN, LLP

112 Madison Avenue, 7th Floor
New York, NY  10016-7416
Tel:  (212) 784-6400

*Attorneys for Plaintiffs*
*Euro Brokers, et al. and World Trade Center Properties*
*LLC, et al.*

Frank J. Rubino, Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, NY 10017
Tel:  (212) 983-8500

*Attorneys for Plaintiff*
*NY Marine & General Insurance Company*