**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.* (02 CV 6977)
*Thomas E. Burnett, et al.  v. Al Bakara Inv. & Dev. Corp., et al.* (03 CV 9849)
*Thomas E. Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.* (03 CV 5738)
*Cantor Fitzgerald & Co. et al. v. Al Bakara Inv. & Dev. Corp., et al.* (04 CV 7065)
*Continental Casualty Co., et al.  v. Al Qaeda, et al.* (04 CV 5970)
*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 7279)
*Federal Ins. Co., et al. v. Al Qaida, et al.* (03 CV 6978)
*New York Marine & General Ins. Co. v. Al Qaida, et al.* (04 CV 6105)
*Estate of John P. O'Neill, Sr. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 1923)
*World Trade Center Prop., LLC, et al. v. Al Baraka Inv. & Dev. Corp., et al.* (04 CV 7280)

**PLAINTIFFS' MOTION TO STRIKE THE DMI DEFENDANTS' REQUEST FOR**
**JUDICIAL NOTICE OF THE "SWISS RECORD"**

## INTRODUCTION

On May 9, 2006 Dar al-Maal al-Islami Trust and DMI Administrative Services S.A. (collectively, "the DMI Defendants") filed a Request for Judicial Notice to supplement their Motions to Dismiss made in response to claims filed against them for participation in the September 11, 2001 attacks. Specifically, the DMI Defendants requested that the Court take Judicial Notice of an annexed record of the March 14, 2006 Judgment Hearing before the Court of the Arrondissement of Lausanne, Switzerland ("Swiss Record"). As used by the DMI Defendants to "supplement" their Rule 12(b)(6) & Rule 12(b)(2) arguments, the Swiss Record is an impermissible end run around the closed briefing schedule. In addition, it is both misleading and immaterial to these Motions to Dismiss. Accordingly, pursuant to Rule 12(f), the Plaintiffs now respectfully ask the Court to strike the DMI Defendants' Request for Judicial Notice.

I.     **The DMI Defendants' Request for Judicial Notice to Supplement Their Motions to Dismiss is an Impermissible End Run Around the Closed Briefing Schedule**

First, the DMI Defendants' Request for Judicial Notice to "supplement" their Motions to Dismiss represents an improper attempt to supplement the closed briefing without leave of Court, in contravention of the Case Management Order as well as the Scheduling Stipulations negotiated amongst the parties. In effect, the Request for Judicial Notice is an improper end run around the closed briefing schedule whereby the DMI Defendants' have foisted additional pages of argument upon the Court beyond those allowed in their Brief and Reply Brief in support of their Motions to Dismiss. The Court should strike such impermissible "supplemental" materials.

## II.      The DMI Defendants' Use Of The Swiss Record Is Misleading

In their Request for Judicial Notice, the DMI Defendants characterize the Swiss Record,

in which Jean-Charles Brisard issued a formal correction of his written testimony before the

Committee on Banking, Housing, and Urban Affairs of the United States Senate, as a "formal

recantation" by Plaintiffs' "lead investigator" of "the *sine qua non* of Plaintiffs' case against DMI

Trust and DMI S.A." That characterization is wrong on several grounds. First, Mr. Brisard did

not "formally recant" anything, but simply acknowledged that the inferences drawn from his

testimony by the Senate Committee were wrongly interpreted by the DMI Defendants. Indeed,

the quotation of the Swiss agreement provided by the DMI Defendants in the Request for Judicial

Notice is itself incorrect. The exact wording of the Swiss Record, after modification of a

material error in translation, is the following:

> In view of the Swiss criminal proceedings engaged against Jean-Charles Brisard
> by DMI Administrative Services S.A. following his written testimony dated
> October 22nd 2003 lodged with the Banking Committee of the U.S. Senate and
> made accessible on said authority's website, Jean-Charles Brisard wishes to
> specify that when he mentioned DMI, its subsidiaries or the Group's organs *in this
> testimony*, he never meant that these entities could have directly or indirectly
> financed or participated in the financing of terrorism. He regrets that these
> statements may have been wrongly interpreted. (emphasis added)

*See* Swiss Record; http://jcb.blogs.com/ (March 27, 2006).

Second, characterizing Mr. Brisard as "Plaintiffs' lead investigator" is a misstatement.

His work is neither referenced nor cited in the *Ashton, Federal* and most other Complaints, and

his work was cited in *only one* of the approximately ten actions filed against the DMI

Defendants. In considering a Rule 12(b)(6) Motion to Dismiss, the Court is limited to the

materials that are within the four corners of the complaint. *Carter v. Stanton*, 405 U.S. 669, 671

(1972). Mr. Brisard's work does not fall within the four corners of any (but one) of the Complaints.

Moreover, the DMI Defendants have asked the Court to take notice of not only the existence of the Swiss Record, but also the settlement issued in the case, the meaning of which is sharply disputed. The DMI Defendants insist the settlement was a full retraction of and apology for Brisard's statements in front of the U.S. Senate. Yet the agreement itself makes it clear that the Swiss litigation and the subsequent correction were limited to Brisard's testimony before the Banking Committee of the U.S. Senate *as it was interpreted* by the DMI Defendants. So even if the existence per se of the Swiss Record may be judicially noticeable, the DMI Defendants' skewed interpretation of that Swiss Record remains "subject to reasonable dispute" and thus not judicially noticeable under Fed. R. Evid. 201.

## III.   The Swiss Record Is Immaterial To The DMI Defendants' Motions to Dismiss

By waiving around the Swiss Record, the DMI Defendants hope to deflect the Court's attention from Plaintiffs' well-pleaded allegations in the Complaints that the DMI Defendants knowingly supported terror attacks on America. The DMI Defendants insist that all claims against them and their subsidiaries should be dismissed because of the "retraction" by a witness sued in Switzerland of the what Defendants say is "the *sine qua non* of Plaintiffs' case against DMI Trust and DMI S.A." This is nonsense, and has nothing to do with the Rule 12(b)(6) and Rule 12(b)(2) issues now before the Court.

Resolution of whether Plaintiffs well stated claims and made a *prima facie* case of jurisdiction against the DMI Defendants hinges upon the allegations in Plaintiffs' Complaints and Affidavits, *not* upon the Swiss Record. With all due respect, the *sine qua non* of Plaintiffs'

3

allegations against the DMI Defendants are not statements or even so-called retractions of one

expert in European judicial proceedings, but rather the well-pleaded facts supporting the

Plaintiffs' allegations such as:

1.   DMI Trust and DMI S.A. were founders and/or maintained substantial investment

in three Sudanese banks (Al Shamal Islamic Bank, Faisal Islamic Bank, and

Tadamon Islamic Bank) that handled numerous al Qaeda accounts. *Ashton* 6AC

¶¶38-65, 205, 296, 436, 448, 456; *Federal* Amended Rico Statement Applicable

To Dar Al Maal Al Islami Trust And DMI Administrative Services, S.A.; *O'Neill*

First Consolidated Complaint, More Definite Statement, Rico Statement of

September 30, 2005; *Burnett* 3AC ¶¶74, 98, 100, 365 *WTC*¶121, 235, 237, 701;

*Burnett* More Definite Statement of May 10, 2005; *WTC & EuroBrokers* RICO

Statement Exhibit A of May 10, 2005;

2.   DMI had long-established relationships with at least six persons or entities (Adel

Abdul Jalil Batterjee, Benevolence International Foundation, Yousef Nada, Bank

al Taqwa, Wa'el Julaidan, and Yasin al Kadi) that were named as Specially

Designated Global Terrorists by the United States Government for providing

support to al Qaeda. *Ashton* 6AC ¶¶42-3, 255, 296, 437-440; *Federal* Amended

Rico Statement Applicable To Dar Al Maal Al Islami Trust And DMI

Administrative Services, S.A; *O'Neill* First Consolidated Complaint, More

Definite Statement, Rico Statement of September 30, 2005; *Burnett* 3AC ¶365,

*WTC*¶701; *Burnett* More Definite Statement of May 10, 2005; *WTC &*

*EuroBrokers* RICO Statement Exhibit A of May 10, 2005; and

4

3.     DMI's Swiss subsidiary knowingly maintained accounts for al Qaeda financiers Wa'el Julaidan and Yasin al Qadi.  By 1998 and 1999 respectively, Julaidan and al Qadi were known supporters of al Qaeda and terror, yet DMI continued to provide them with extensive banking services until forced to freeze the accounts by Swiss authorities after September 11, 2001.  *Ashton* 6AC ¶¶439-440; *Federal* Amended Rico Statement Applicable To Dar Al Maal Al Islami Trust And DMI Administrative Services, S.A.; *O'Neill* First Consolidated Complaint, More Definite Statement of September 30, 2005, Rico Statement of September 30, 2005; *Burnett* More Definite Statement of May 10, 2005; *WTC & EuroBrokers* RICO Statement Exhibit A of May 10, 2005.

Regardless of whether Swiss Record states that Brisard retracted his findings or not is irrelevant to resolution of the Rule 12(b)(6) Motions.  The DMI Defendants ignore that the Court's role here is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  And in evaluating whether plaintiffs ultimately could prevail, the Court must "accept all of Plaintiffs' factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the Plaintiffs." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999).  The DMI Defendants' skewed interpretation of the Swiss Record is immaterial to the Court's task of construing the pleadings and affidavits to resolve whether Plaintiffs have well stated claims against the DMI Defendants.

5

Likewise, the Swiss Record has nothing to do with the Rule 12(b)(2) Motions for lack of jurisdiction made by the DMI Defendants.  To resolve these Rule 12(b)(2) Motions, the Court must construe all pleadings and affidavits in the light most favorable to Plaintiffs, draw all inferences in the Plaintiffs' favor, and resolve all doubts in Plaintiffs' favor. *PDK Labs v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir. 1993).  The DMI Defendants' skewed interpretation of the Swiss Record is immaterial to the Court's task of construing the pleadings and affidavits to resolve whether Plaintiffs have made a *prima facie* case of jurisdiction against the DMI Defendants.

Accordingly, as the Swiss Record is immaterial and irrelevant to DMI Defendants' Rule 12(b)(2) and Rule 12(b)(6) Motions to Dismiss, the DMI Defendants' Request for Judicial Notice to supplement their Motions to Dismiss with the Swiss Record should be struck.

### CONCLUSION

For the above reasons, Plaintiffs' Motion to Strike the DMI Defendants' Request for Judicial Notice should be granted.

Dated: June 14, 2006
New York, New York

Respectfully submitted,

_____/S/_____
James P. Kreindler, Esq. (JK7084)
Justin T. Green, Esq.  (JG0318)
Andrew J. Maloney, III, Esq. (AM8684)
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017-5590
Phone: (212) 687-8181
*Attorneys for the Ashton Plaintiffs*

6

/S/
_____

Ronald L. Motley, Esq. (RM2730)
Jodi Westbrook Flowers, Esq.
Michael Elsner, Esq. (ME8337)
Justin B. Kaplan, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Phone: (843) 216-9000

and

/S/
_____

Paul J. Hanly, Jr., Esq. (PH5486)
Jayne Conroy, Esq. (JC8611)
Andrea Bierstein, Esq. (AB4618)
Hanly Conroy Bierstein Sheridan
    Fisher & Hayes LLP
112 Madison Avenue, 7th Floor
New York, NY 10016
Phone: (212) 784-6400
*Attorneys for the Burnett, Euro Brokers Inc. and*
*World Trade Ctr. Props. Plaintiffs*

/S/
_____

Elliott R. Feldman, Esq. (admitted *pro hac vice*)
Sean P. Carter, Esq. (admitted *pro hac vice)*
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
*Attorneys for the Federal Ins. Plaintiffs*

_____/S/_____

Jerry S. Goldman, Esq. (JG8445)
Law Offices of Jerry S. Goldman
    & Associates, P.C.
The Trinity Building
111 Broadway, 13th Floor
New York, NY 10060
Phone: (212) 242-2232
*Attorneys for Plaintiff Estate of O'Neill*


_____/S/_____

Kenneth L. Adams, Esq. (admitted *pro hac vice*)
Richard W. Fields, Esq. (admitted *pro hac vice*)
Christopher T. Leonardo, Esq. (CL3043)
Stacey Saiontz, Esq. (SS1705)
Dickstein Shapiro Morin & Oshinsky
1177 Avenue of the Americas
New York, NY 10036-2714
Phone: (212) 835-1400
*Attorneys for Cantor Fitzgerald & Co. Plaintiffs*


_____/S/_____

Robert M. Kaplan, Esq. (RK1428)
Ferber Chan Essner & Coller, LLP
530 Fifth Avenue
New York, NY 10036
Phone: (212) 944-200
*Attorneys for Plaintiff Continental Cas. Co.*


_____/S/_____

Frank J. Rubino, Esq. (FR6202)
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, NY 10017
Phone: (212) 983-8500
*Attorney for Plaintiff NY Marine & General Ins. Co.*

8