**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br><br>*Ashton et al. v. Al Qaeda et al., 02-cv-6997 (RCC)* | 03 MDL 1570 (RCC)<br><br>ECF Case |

## ASHTON PLAINTIFFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT DALLAH AVCO TRANS-ARABIA CO., LTD.

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………….……………..… 1

II.     FACTUAL BACKGROUND………………………………………………………… 1

III.    PLAINTIFFS STATE CLAIMS AGAINST DALLAH AVCO UPON WHICH
        RELIEF CAN BE GRANTED…………………………………………………………... 3

        A.     Applicable Legal Standard………..…………………………………………… 3

        B.     Plaintiffs State A Claim Against Dallah Avco
               Under The Anti-Terrorism Act ………………………………………………..…… 9

        C.     Plaintiffs State Claims Against Dallah Avco
               Under The Alien Tort Claims Act ………………………………………………… 9

        D.     Plaintiffs State Common Law Claims Against Dallah Avco ……………………… 9

IV.     THE UNITED STATES HAS PERSONAL JURISDICTION
        OVER DALLAH AVCO …………………………………………..…………………………..9

        A.     Applicable Legal  Standard…………………………………………………..… 9

        B.     This Court Has Personal Jurisdiction Over Dallah Avco Who Knowingly &
               Intentionally Provided Financial Support To Al Qaeda To Attack America….... 10

        C.     This Court Has Personal Jurisdiction Over Dallah Avco Who Knew & Intended
               That The Acts Of Its Al Qaeda Co-Conspirators Would Impact America …….. 12

        D.     Plaintiffs Should Be Allowed To Conduct Jurisdictional Discovery …….….…13

V.      CONCLUSION ………………………………..……………………………..…….13

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Andre Emmerich Gallery v. Segre,*
  1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. 1997) ................................................. 12

*Ball v. Metallurgie Hoboken Overpelt, S.A.,*
  902 F.2d 194 (2d Cir. 1990), cert. denied .......................................................10

*Bello v. United States,*
  93 Fed. Appx. 288 (2d Cir. 2004) .................................................................. 3

*Boim v. Quaranic Literacy Institute,*
  291 F.3d 1000 (7th Cir. 2002) ..............................................................1, 7, 8

*Bush v. Buchman, Buchman & O'Brien Law Firm,*
  11 F.3d 1255 (5th Cir. 1994) .............................................................10, 11

*Chance v. Armstrong,*
  143 F.3d 698 (2d Cir. 1998), *aff'd on appeal after remand* ...................................... 4

*Combs v. Adkins & Adkins Coal Co.,*
  597 F.Fupp. 122 (D.D.C. 1984) ...............................................................11

*Conley v. Gibson,*
  355 U.S. 41 (1957) ........................................................................ 3, 4

*DiStefano v. Carozzi N. America,*
  286 F.3d 81 (2d Cir. 2001) ...................................................................10

*Dixon v. Mack,*
  507 F.Supp. 345 (S.D.N.Y. 1980) ..............................................................12

*Estates of Ungar ex rel. Strachman v. Palestinian Authority,*
  153 F.Supp.2d 76 (D.R.I. 2001) ..............................................................11

*Geiser v. Petrocelli,*
  616 F.2d 636 (2d Cir. 1980) ................................................................... 3

*In re Magnetic Audiotape Antitrust Litigation,*
  334 F.3d 204 (2d Cir. 2003) ................................................................. 10

*In re Terrorist Attacks on September 11, 2001,*
  349 F.Supp.2d 765 (S.D.N.Y. 2005) ....................................... 2, 7, 8, 9, 10, 11, 12

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ……………………………………………………………… 12

*Investment Properties Intl., Ltd. v. 10S Ltd.,*
    459 F.2d 705 (2d Cir. 1972) ……………………………………………….……. 13

*IUE AFL-CIO Pension Fund v. Herrmann,*
    9 F.3d 1049 (2d Cir. 1993) ……………………………………………………...… 11

*Kamen v. Am. Tel. & Tel. Co.,*
    791 F.2d 1006 (2d Cir. 1986) ……………………………………………...……… 13

*Leatherman v. Tarrant County,*
    507 U.S. 163 (1993) ………………………………………………………….....… 4

*Linde at al. v. Arab Bank, PLC,*
    2005 U.S. Dist. LEXIS 18864 (E.D.N.Y. September 2, 2005) ……………………..……….. 6

*Marine Midland Bank, N.A. v. Miller,*
    664 F.2d 899 (2d Cir. 1981) …………………………………………………...…….. 13

*Mwani v. Bin Laden,*
    2005 WL 1844423 (D.C. Cir. Aug. 5, 2005) ……………………………………...…… 11

*Pelman v. McDonald's Corporation,*
    396 F.3d 508 (2d Cir. 2005) ………………………………………………………....4, 5, 6

*Phelps v. Kapnolas,*
    308 F.3d 180 (2d Cir. 2002) (per curiam) …………………………………………….. 3

*SEC v. Carrillo,*
    115 F.3d 1540 (11th Cir. 1997) ……………………………………………………….11

*Sparrow v. United Airlines,*
    216 F.3d 1111 (D.C. Cir. 2000), *appeal dismissed after remand* …………………..…. 4

*Swierkiewicz v. Sorema,*
    534 U.S. 506 (2002) ……………………………………………………………... 4, 5

*Twombley v. Bell Atlantic Corporation,*
    425 F.3d 99 (2d Cir. 2005) ……………………………………………….…………… 5

*Warren v. District of Columbia,*
    353 F.3d 36 (D.C. Cir. 2004) ……………………………………………………….7

*Woodford v. Community Action Agency,*
239 F.3d 517 (2d Cir. 2001) ……………………………………………..………… 4

*Wynder v. McMahon,*
360 F.3d 73 (2d Cir. 2004) …………………………………………………………… 3

## STATE CASES

*Judith M. v. Sisters of Charity Hospital,*
93 N.Y.2d 932 (N.Y. 1999) …………………………………..……………………… 3

*Riviello v. Waldron,*
47 N.Y.2d 297 (N.Y. 1979) …………………………………..……………………… 3

## FEDERAL STATUTES

Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 ………………………………….....  1, 9

Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq* ……………………………….……..1, 6, 10

## FEDERAL RULES

Fed. R. Civ. P. 8(a)(2) ……………………………………………………..……….. 3, 4, 5, 6

Fed. R. Civ. P. 9(b) ………………………………………………………………...….. 4

Fed. R. Civ. P. 12(b)(2) ………………………………………………………….....  9,10

Fed. R. Civ. P. 12(b)(6) …………………………………………………..………..3, 4, 5

## MISCELLANEOUS

Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1218 (3d ed. 2004) …………………………………... 7

MOORE'S FEDERAL PRACTICE § 12.31[7] (3d ed. 2003) …………………………………..…….13

**I.    INTRODUCTION**

Plaintiffs allege that defendant Dallah Avco Trans-Arabia Co. Ltd. ("Dallah Avco") knowingly provided financial support to Al Qaeda's global conspiracy to launch terror attacks on the United States, of which the September 11, 2001 Attacks were a natural, intended and foreseeable result. By these allegations, Plaintiffs state claims against Dallah Avco under the Anti-Terrorism Act ("ATA"), the Alien Tort Claims Act ("ACTA"), and various common law tort theories. *Boim v. Quranic Lit. Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002)("The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts."). Hence, Dallah Avco is subject to civil liability in this United States Court for knowingly providing financial support to Al Qaeda for a decade leading up to the September 11 Attacks.

**II.    FACTUAL BACKGROUND**

Defendant Dallah Avco is a wholly owned subsidiary of defendant Dallah al Bakara Group LLC that specializes in aviation services. *Ashton* Sixth Amended Complaint ("6AC") ¶451. Plaintiffs allege that Dallah Avco, via its United States based employee, provided logistical and financial support to two of Al Qaeda's September 11 hijackers in San Diego, California. *Ashton* 6AC ¶¶ 452-5.

Specifically, plaintiffs allege that Dallah Avco's Assistant Director of Finance, defendant Omar al Bayoumi, met with the future hijackers in early 2000, invited them to San Diego, housed them, found them an apartment, paid for that apartment, organized a welcoming party for them, introduced them to his local mosque, and arranged for them to obtain drivers' licenses, credit cards, car insurance and social security cards. *Ashton* 6AC ¶ 454.

1

Moreover, throughout his stay in the United States, Al Bayoumi received a monthly salary and living allowance from Dallah Avco. *Ashton* 6AC ¶ 452. During the period of time in which Al Bayoumi was allegedly aiding the hijackers in San Diego, Dallah Avco increased his living allowance by 800% in order to provide assistance to the September 11 plotters. *Ashton* 6AC ¶454.

In light of the above fact allegations against Dallah Avco, the Court should infer that Dallah Avco knowingly and intentionally provided support to Al Qaeda to launch terror attacks on America, including the September 11 Attacks.

Moreover, as the Court has already recognized: "In light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to Al Qaeda." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d 765, 826 (S.D.N.Y. 2005); *accord, Ashton* 6AC ¶ 478 ("Defendants provision of material support and assistance to BIN LADEN and AL QAIDA in Afghanistan, IRAQ and other places as well as their provision of a safe haven and base of operations to BIN LADEN and AL QAIDA in Afghanistan and other countries from which they carried out terrorist attacks on the United States, including the September 11, 2001 terrorist attacks . . . caused substantial injuries to the persons, property, and business of plaintiffs and plaintiffs' decedents.")

Hence, Plaintiffs have well pleaded that Dallah Avco's provision of financial support to Al Qaeda's operatives was a proximate cause of the September 11 Attacks.

Accordingly, Dallah Avco's motion to dismiss should be denied, and plaintiffs should be permitted to prove their case against Dallah Avco at trial by jury.

## III.   PLAINTIFFS STATE CLAIMS AGAINST DALLAH AVCO UPON WHICH RELIEF CAN BE GRANTED

### A.   Applicable Legal Standard

Dallah Avco moves to dismiss the *Ashton* Sixth Amended Complaint ("6AC") pursuant

to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted.  Such a

motion merely tests the legal sufficiency of the Complaint, and must be denied unless "it appears

beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Wynder v. McMahon*, 360

F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per

curiam).  The Court's role is "not to assay the weight of the evidence which might be offered in

support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geiser*

*v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true

the facts alleged in the 6AC and draw all reasonable inferences in favor of them.[1]  *Wynder*, 360

F.3d at 78; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading

stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be

---

[1]Dallah Avco attempts to obscure the allegations stated in Plaintiffs' complaint by denying responsibility for the actions of its Assistant Director of Finance, Omar al Bayoumi.  *See* Dallah Avco's Memorandum of Points and Authorities in Support of Motion to Dismiss.  This is clearly at odds with the doctrine of vicarious liability adopted by both federal and New York state courts.

Under the governing standard, employers are responsible for actions of their employees that fall within the scope of employment.  *Bello v. United States*, 93 Fed. Appx. 288, 290 (2d Cir. 2004).  The key factor in making such a determination is whether the act is one that the employer could reasonably have anticipated.  *Id.* at 303; *accord, Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (N.Y. 1999).  Additionally, "under New York law, an employee's actions need only be generally, not specifically, foreseeable to the employer to fall within the scope of employment.  *Bello*, 93 Fed. Appx. at 290; *Riviello v. Waldron*, 47 N.Y.2d 297, 304 (N.Y. 1979).

Al Bayoumi's actions in San Diego fall within the scope of his employment with Dallah Avco under the established rule of New York.  At the very least, Dallah Avco could reasonably anticipate that Al Bayoumi would provide aid to the hijackers, as evidenced by the dramatic increase in his living allowance that coincided with the arrival of the terrorists.

avoided." *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001). The issue

on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether

the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d

698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A motion pursuant to Fed. R. Civ. P. 12(b)(6) is analyzed in the context of the

requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive. *Swierkiewicz v. Sorema*,

534 U.S. 506, 512-3 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a

short and plain statement of the claim showing that the pleader is entitled to relief" and that such

a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Id.* at 512. (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360

F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000),

*appeal dismissed after remand*, 2000 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was

turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6)

motion). Further, in the absence of averments of fraud or mistake, which must be pled with

particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more

demanding requirements than those proscribed under Rule 8(a). *See e.g., Leatherman v. Tarrant

County*, 507 U.S. 163, 168-9 (1993); *see also Pelman v. McDonald's Corp.*, 396 F.3d 508, 512-3

(2d Cir. 2005) (plaintiff need not draw causal connection between allegations and injuries in the

complaint, but rather may rely on discovery to flesh out claim).

Recent cases underscore and reaffirm these principles. In *Phelps*, the plaintiff alleged

that the employees of the prison where he was incarcerated had violated his Eighth and

Fourteenth Amendment rights by inflicting cruel and unusual punishment. 308 F.3d at 182.

Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet defendants

had placed him on was inadequate and would cause pain and suffering. *Id.* The District Court dismissed the complaint, finding that it failed to state a claim, in part because the court found plaintiff's allegations of the requisite *scienter*, (deliberate indifference) too conclusory. *Id.* at 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference." *Id.* at 186-7. Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Id.* at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste [in dismissing a case] in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it then often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (internal citations omitted).

Likewise, in *Twombley v. Bell Atlantic Corp.*, 425 F.3d 99, 107 (2d Cir. 2005), the Second Circuit reversed a district court decision applying higher pleading standards than those set forth in Rule 8, holding that "[a] requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." In the context of anti-trust pleading, the Court reminded that "although litigation … may place substantial financial and other burdens on the defendants, neither the Federal Rules nor the Supreme Court has placed on plaintiffs the requirement that they plead with special particularity the details of the conspiracies whose existence they allege." *Id.* at 116.

Even more recently, in *Pelman v. McDonald's Corp.*, 396 F.3d at 508, the Second Circuit vacated a Rule 12(b)(6) dismissal, and again reiterated the minimal pleading standards to be applied. The District Court had dismissed because, it ruled, plaintiffs had failed to "draw an

adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Id.* at 511. The Second Circuit rejected that approach, and held that the information the District Court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed. R. Civ. P." *Id.* at 512. Quoting the U.S. Supreme Court's unanimous decision in *Swierkiewicz*, the Second Circuit instructed:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Id.* (citing *Swierkiewicz*, 534 U.S. at 512-513).

Finally, in *Linde et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D.N.Y. September 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's request to impose a heightened pleading requirement in a case presenting claims nearly identical to those at issue here. In *Linde*, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations. *Id.* at *11-23. Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent." *Id.* at *42. The Court rejected this argument, reasoning "defendant attempts to impose a standard of pleading beyond that required by the rules. It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof." *Id.* at *50.

6

Dallah Avco's protestation that the allegations are too "conclusory" misapprehends the proper pleading standard, which require at this stage of the litigation only fair notice of the relevant allegations, to be fleshed out more fully following full and proper discovery. Indeed, the D.C. Circuit recently addressed this issue in reversing the dismissal of a complaint in which the plaintiff did not plead "facts" establishing knowledge. *Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004). Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held: "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the [defendant] was conclusory. Many well-pleaded complaints are conclusory. And while we do not have to accept conclusions of law as true, conclusions of fact are another matter." *Id*. at 39. (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1218 at 276 (3d ed. 2004)("[I]t must be remembered that the federal rules require a short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any difference whether the pleader accomplishes this by stating 'conclusions,' 'ultimate facts,' or 'evidence.'").

**B.      Plaintiffs State A Claim Against Dallah Avco Under The Anti-Terrorism Act**

Under the Anti-Terrorism Act ("ATA")[2], a defendant is liable if it provided any material support to Al Qaeda with knowledge of its terrorist agenda, or if it aided and abetted Al Qaeda or Osama bin Laden in their course of terrorist conduct. *See Boim*, 291 F.3d at 1014-1016. Like the Seventh Circuit in *Boim*, this Court has already recognized that under the ATA, "material support includes money [and] financial services[.]" *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005). As demonstrated above, Plaintiffs have alleged

---

[2] The ATA provides for a civil action for "[a]ny national of the United States injured in his person, property, or business by reason of an act of international terrorism[.]" 19 U.S.C. § 2331 *et seq*.

that Dallah Avco knowingly and intentionally provided money and financial services to Al

Qaeda by supporting two of the September 11 hijackers. *Ashton* 6AC ¶¶451-5.

Moreover, the ATA entails conspiracy and aiding and abetting liability. As put by the

*Boim* court:

> [I]f we failed to impose liability on aiders and abettors who knowingly and
> intentionally funded acts of terrorism, we would be thwarting Congress' clearly
> expressed intent to cut off the flow of money to terrorists at every point along the
> causal chain of violence. [A]iding and abetting liability is both appropriate and
> called for by the language, structure and legislative history of [ATA] section
> 2333.[3]

*Boim*, 291 F.3d at 1021. Because the pleaded facts show that Dallah Avco deliberately provided

financial assistance to Al Qaeda, with knowledge that Al Qaeda was waging war on America,

Dallah Avco is subject to aiding and abetting liability under the ATA.

Plaintiffs also properly allege that Dallah Avco's knowing provision of financial support

and assistance to Al Qaeda was a proximate cause of the September 11 attacks. This Court has

already resolved that "[i]n light of Al Qaeda's public acknowledgements of its war against the

United States, the September 11 attacks may be the natural and probable consequence of

knowingly and intentionally providing material support to Al Qaeda." *In re Terrorist Attacks on*

*September 11, 2001*, 349 F.Supp.2d at 826; *accord*, Ashton 6AC ¶ 478, *supra*.

Additionally, proximate cause may be supported by plaintiff's allegations that Dallah

Avco aided and abetted or conspired with the Al Qaeda terror network leading up to the

September 11 attacks: "[A]ll those who, in pursuance of a common plan or design to commit a

tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or

encouragement to the wrongdoer ... are equally liable with him." *In re Terrorist Attacks on*

*September 11, 2001*, 349 F.Supp.2d at 826.

---

[3] Reviewing the legislative history, the Seventh Circuit concluded: "All of this history indicates an intent by
Congress to allow a plaintiff to recover from anyone along the causal chain of terrorism." *Boim, 291* F.3d at 1011.

Under the legal standards articulated by the Court, plaintiffs have properly pleaded proximate cause. The September 11 Attacks were a natural and probable consequence of Dallah Avco's financial support of the Al Qaeda terror network in the months leading up to those attacks. Accordingly, Plaintiffs have properly pled a claim under the ATA.

C.     **Plaintiff State Claims Against Dallah Avco Under The Alien Tort Claims Act**

Alien-plaintiffs state a viable claim against Dallah Avco under the Alien Tort Claims ("ACTA"), 28 U.S.C. § 1350. This Court has already resolved that "aircraft hijacking is generally recognized as a violation of international law" actionable under the ATCA. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 826. Hence, because plaintiffs allege that Dallah Avco aided and abetted Al Qaeda launch the September 11 attacks using hijacked aircraft, the alien-plaintiffs may assert tort claims under the ATCA against Dallah Avco.

D.     **Plaintiffs State Common Law Claims Against Dallah Avco**

Finally, Plaintiffs' state valid common law claims for intentional infliction of emotional distress, assault and battery, wrongful death, survival, and property destruction against Dallah Avco. Dallah Avco's claim that Plaintiffs have failed to allege causation as to these claims is merely a repetition of Dallah Avco's argument with respect to the ATA and causation generally, and should be rejected for the reasons described above.

## IV.     THE UNITED STATES HAS PERSONAL JURISDICTION OVER DALLAH AVCO

A.     **Applicable Legal Standard**

Dallah Avco alternatively moves to dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).   In this Circuit, the nature of a plaintiff's obligation to allege and prove personal jurisdiction varies depending upon the procedural posture of the litigation:

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted]. At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), cert. denied, 498

U.S. 854 (1990).

Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2), a plaintiff need

only present allegations that connect the defendant with the applicable forum – here, the United

States. In deciding such a motion, the plaintiff's jurisdictional averments must be taken as true.

*Ball*, 902 F.2d at 197.; *In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d

Cir. 2003). Moreover, the court must construe the pleadings in a light most favorable to the

plaintiff, resolving all doubts in his favor. *DiStefano v. Carozzi N. America*, 286 F.3d 81 (2d Cir.

2001).

### B.   This Court Has Personal Jurisdiction Over Dallah Avco Who Knowingly & Intentionally Provided Financial Support To Al Qaeda To Attack America

By knowingly providing financial support to Al Qaeda to attack the United States, Dallah

Avco subjected itself to the personal jurisdiction of this United States Court, where Dallah Avco

is subject to civil liability under the ATA. Notably, the ATA provides that claims may be

brought in "any district where any plaintiff resides" and that process "may be served in any

district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a). Because

the statute provides for nationwide service of process, the relevant Due Process inquiry for

personal jurisdiction purposes "is whether the defendant has had minimum contacts with the

United States." *Bush v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir.

1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997);

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F.Supp.2d 76, 88 (D.R.I. 2001);

*Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. 122, 125 (D.D.C. 1984).

    As previously stated, Dallah Avco engaged in business in San Diego, California. That is
unquestionably sufficient to establish minimum contacts with the United States. Because the
court has personal jurisdiction over Dallah Avco with respect to plaintiffs' ATA claims, then it
may also assert pendent jurisdiction over the remaining claims that derive from the same events.
*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-1057 (2d Cir. 1993).

    Alternatively, this Court has already resolved that "plaintiffs may rely on their
'purposefully directed' theory to establish minimum contacts." *In re Terrorist Attacks on
September 11, 2001*, 349 F.Supp.2d at 806, 809. This "purposefully-directed" theory of personal
jurisdiction was recently confirmed by the D.C. Circuit in *Mwani v. Bin Laden*, 2005 WL
1844423 (D.C. Cir. Aug. 5, 2005), which arose from Al Qaeda's 1998 bombing attack on the
U.S. Embassy in Kenya. The district court had dismissed claims against Osama Bin Laden and
Al Qaeda for lack of personal jurisdiction, finding that plaintiffs did not "establish sufficient
contacts between the defendants and the [U.S.] to permit exercise of personal jurisdiction..." *Id.*
at *2. The D.C. Circuit reversed, holding that Osama Bin Laden and Al Qaeda were subject to
jurisdiction in a United States court because defendants had:

> Engaged in unabashedly malignant actions directed at and felt in this forum ...
> The defendants' decision to purposefully direct their terror at the United States,
> and the fact that the plaintiffs' injuries arose out of one of those terrorist activities,
> should suffice to cause the defendants to 'reasonably anticipate being haled into'
> an American court.

*Id.* *8-9 (internal cites omitted).

11

Dallah Avco, via a United States based employee, provided logistical and financial support to two of the September 11 hijackers in California. This activity subjects Dallah Avco to personal jurisdiction here because, in providing support to Al Qaeda, which had long publicly announced its intentions to attack the United States, it purposefully directed its conduct here. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 810. Because the pleaded facts give rise to the inference that Dallah Avco purposefully provided financial support for Al Qaeda attacks targeting the United States, Dallah Avco ought to be held to account in this United States Court.

### C. This Court Has Personal Jurisdiction Over Dallah Avco Who Knew & Intended That The Acts Of Its Al Qaeda Co-Conspirators Would Impact America

This Court has already resolved that it may exercise personal jurisdiction over foreign defendants pursuant to a conspiracy theory. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 805 ("acts committed in New York by the co-conspirator of an out of state defendant pursuant to a conspiracy theory may subject the out-of-state defendant to jurisdiction").

Imputing the forum acts of their co-conspirators to foreign defendants "supplies the necessary minimum contacts [under] *International Shoe*" to satisfy due process when asserting personal jurisdiction over their foreign defendants. *Dixon v. Mack*, 507 F.Supp. 345, 352 (S.D.N.Y. 1980) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Andre Emmerich Gallery v. Segre*, 1997 U.S. Dist. LEXIS 16899 at *17 (S.D.N.Y. 1997). Because when foreign defendants enter into a conspiracy knowing that acts of their co-conspirators would impact the forum, such foreign defendants should "reasonably anticipate being haled into court there." *Dixon* at 352; *Andre Emmerich* at *17.

12

As shown above, Plaintiffs' 6AC makes a *prima facie* case of conspiracy between Dallah Avco and Al Qaeda to injure Americans: (i) Dallah Avco's financing of September 11 hijackers supports an inference that Dallah Avco and Al Qaeda agreed to injure America through terror attacks; (ii) Dallah Avco participated in that agreement by knowingly channeling money to the hijackers via Omar al Bayoumi; (iii) the September 11 attacks carried out by Al Qaeda were acts done in furtherance of that agreement; and (iv) the September 11 attacks killed Plaintiffs' decedents. Hence, by imputing the September 11 forum acts of its Al Qaeda conspirators to Dallah Avco, this court may assert personal jurisdiction over Dallah Avco.

### D.     Plaintiffs Should Be Allowed To Conduct Jurisdictional Discovery

If the Court has any doubt about its jurisdiction, it should exercise its broad discretion to order jurisdictional discovery. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also*, MOORE'S FEDERAL PRACTICE § 12.31[7] (3d ed. 2003) ("Generally, the District Court should allow discovery if the jurisdictional claim has a reasonable basis and it appears that pertinent facts may be uncovered."). This Court has done so with regards to other defendants, and at a minimum should do so here, especially since pertinent jurisdictional facts lie within the control and knowledge of the defendant contesting jurisdiction. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010-1011 (2d Cir. 1986); *Investment Properties Intl., Ltd. v. 10S Ltd.*, 459 F.2d 705, 707-708 (2d Cir. 1972).

## V.     CONCLUSION

For the above reasons, Dallah Avco's motion to dismiss should be denied with prejudice.

13

Dated: June 21, 2006
       New York, New York

Respectfully submitted,

KREINDLER & KREINDLER LLP

By:_____/S/_____

James P. Kreindler, Esq. (JK7084)
Justin T. Green, Esq. (JG0318)
Andrew J. Maloney III, Esq. (AM8684)
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
*Attorneys for Ashton Plaintiffs*

14