UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br>*Ashton et al. v. al Qaida*, 02-cv-6977 (RCC) | 03 MDL 1570 (RCC)<br><br>ECF Case |

**DEFENDANT TADAMON ISLAMIC BANK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND LACK OF PERSONAL JURISDICTION**

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:           202-862-4343
Facsimile:      202-828-4130

*Attorney for Defendant Tadamon Islamic Bank*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST
     TADAMON. ...................................................................................................................... 3

     A.   Standard of Review ................................................................................................ 3

     B.   Plaintiffs' Allegations Are Conclusory And Insufficient To State a Claim ........ 3

     C.   Plaintiffs' Complaint Fails to Establish Causation .............................................. 6

     D.   Routine Banking Services Cannot Subject A Defendant To Liability ............... 8

III. PLAINTIFFS' COMPLAINT FAILS FOR WANT OF PERSONAL
     JURISDICTION OVER TADAMON. .......................................................................... 9

     A.   Standard of Review ................................................................................................ 9

     B.   Tadamon Lacks Minimum Contacts with the United States ............................ 10

IV.  CONCLUSION ............................................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. __ (2006); 126 S. Ct. 1991 (2006). ................ 2, 6, 7, 8

*Boim v. Quaranic Literacy Inst. and Holy Land Found.*, 291 F.3d 1000 (7th Cir. 2002) ............... 9

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ................................................................. 3

*Burnett v. Al Baraka Inv. & Dev. Corp*, 274 F. Supp. 2d 86 (S.D.N.Y. 2005).......................passim

*De Jesus v. Sears, Robuck & Co.*, 87 F.3d 65 (2d Cir. 1996) .......................................................... 4

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................... 2, 9, 10,11

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ............................................................................. 3

*Holmes v. Sec. Investor Prot.Corp.*, 503 U.S. 258 (1992)....................................................... 2, 6, 7

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) .......................... 3

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) ........................................ 9

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ......................................... 3

*Leema Enters. Inc. v. Wili,* 575 F. Supp. 1533 (S.D.N.Y. 1983) .................................................. *11*

*Papasan v. Allain*, 478 U.S. 265 (1986) ......................................................................................... 3

*Semi Conductor Materials v. Citibank Int'l PLC*, 969 F. Supp. 243 (S.D.N.Y. 1997) ................. 11

*Terrorist Attacks I*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ....................................................passim

*United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116 (D.D.C. 2000) .................................. 9,10

*Wagner v. Barrick Gold Corp.*, 2006 U.S. Dist. LEXIS 3854 (S.D.N.Y. 2006)...…………....2,3

*W.E. Media Inc. v. General Electric Co*, 218 F. Supp. 2d 463 (S.D.N.Y. 2002). ......................... 4

**RULES**

FRCP 12(b)(2).……………………………………………………………………….......1, 9
FRCP 12(b)(6). ....................................................................................................................passim

**OTHER AUTHORITIES**

Peter L. Bergen , *The Osama Bin Laden I Know*, 164 (2006)) ....................................................... 5

**EXHIBITS**

Aihmaidi Affidavit………………………………………………………………….....2,9, 10, 11

**I.     INTRODUCTION**

Pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"), Defendant Tadamon Islamic Bank, by and through its undersigned attorney, moves this Court to dismiss Plaintiffs' complaint as it relates to or regards Defendant Tadamon Islamic Bank (hereinafter "Tadamon").  This memorandum is in support of its motion to dismiss the Ashton et al. Plaintiffs' (hereinafter "Plaintiffs") complaint on two bases: (1) failure to state a claim under FRCP 12(b)(6); and, (2) lack of personal jurisdiction under FRCP 12(b)(2).

FRCP 12(b)(6) relief is appropriate because Plaintiffs' allegations are: (a) conclusory in nature consisting only of legal conclusions without factual support;  (b) lacking in terms of causation;  and, (c) basically amount to provision of routine banking services, which cannot be a sufficient basis to subject a defendant to liability.

As to the first point, Plaintiffs allege that because Tadamon is a shareholder of Al Shamal Islamic Bank and is affiliated with other Islamic Banks allegedly involved with international terrorism, that Tadamon is somehow linked to the 9/11 attacks.  Pls. Compl. ¶ 58.  Plaintiffs' far-fetched allegations cannot withstand the instant FRCP 12(b)(6) motion to dismiss as they are conclusory in nature and factually remote.[1]

As to the second point, Plaintiffs fail to establish any kind of connection or causal link between their injuries and the alleged conduct of Tadamon (i.e., providing banking services in

---

[1] Furthermore, as explained more fully on page 5 herein, the timeframe of Plaintiffs' theory implicating Tadamon simply does not work.  Osama Bin Laden (OBL) did not issue his "fatwa" until late 1996, when he was in Afghanistan (not Sudan).  Assuming it was at this point that Tadamon was effectively put on notice of OBL's terrorist intentions, its alleged rendering of banking services in the early 1990s to OBL's bodyguard is not only factually remote, but irrelevant.

the Sudan). Failure to adequately allege a causal link between Tadamon's alleged conduct and Plaintiffs' injuries alone warrants dismissal of their complaint.[2]

As to the third point, Plaintiffs allege that Tadamon is liable for the 9/11 tragedy because it provided classic banking services and had shareholders that were alleged supporters of terrorism. This Court has already rejected the proposition that the provision of ordinary banking services provides a basis for liability.[3] Moreover, this Court upheld Judge Roberston's earlier ruling that rejected an expansive know your customer rule, which Plaintiffs' attenuated allegations now rely on.[4] Finally, any "shareholder" relationships Tadamon may have had with other Defendants named in this lawsuit are too attenuated and insufficient to state a claim. For any or all of the foregoing reasons, Plaintiffs' allegations against Tadamon fail to make a claim for which relief can be granted.

Tadamon also hereby requests dismissal for lack of personal jurisdiction. As evidenced by the attached affidavit, (Aihmaidi Aff.) ("Ex. A."), Tadamon has never conducted business of any sort in the United States. Because Tadamon has never availed itself of the jurisdiction of the United States, the minimum contacts necessary to sustain this action are lacking and Tadamon should be dismissed.[5]

---

[2] *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. ___ (2006); 126 S. Ct. 1991, 1999 (2006) (citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992); *see also Wagner v. Barrick Gold Corp.,* 2006 U.S. Dist. LEXIS 3854, at *14-15 (S.D.N.Y. 2006) (granting defendants' Motion to Dismiss for Plaintiffs' failure to adequately allege a causal link between defendants' alleged conduct and plaintiffs' securities fraud claim); *see infra.* Pt. II(C) and accompanying text.

[3] *Terrorist Attacks I*, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005) (citing *Burnett,* 274 F. Supp. 2d at 109).

[4] *Terrorist Attacks* I, 349 F. Supp. 2d at 833; *Burnett,* 274 F. Supp. 2d at 109 (quoting, "Plaintiffs offer no support and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking services").

[5] *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

2

For any and all of the foregoing, reasons Tadamon's Rule 12(b)(6) motion should be granted.

## II. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST TADAMON.

Plaintiffs' complaint can and should be dismissed for failure to state a claim under FRCP 12(b)(6). Plaintiffs' "factual" allegations are conclusory in nature, lacking in terms of causation and show nothing more than the fact that Tadamon provided routine banking services, in the Sudan.

### A. Standard of Review

A court may dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In reviewing such a motion, the court must accept as true all factual allegations and draw all *reasonable* inferences in favor of the Plaintiff. *See Wagner v. Barrick Gold Corp.*, 2006 U.S. Dist. LEXIS 3854, at *4-5 (S.D.N.Y. Jan. 31, 2006) (emphasis added).

However, the court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court must reject legally conclusory allegations, treating only specific factual allegations as true. *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

### B. Plaintiffs' Allegations Are Conclusory And Insufficient To State a Claim

In their 243 page Complaint, Plaintiffs make two primary points: (1) that Tadamon operated as a retail bank in the Sudan and allegedly provided banking services to alleged

3

supporters of terror; and (2) that by providing financial services and maintaining accounts for certain alleged "shareholders," Tadamon supported international terrorism and/or the 9/11 terrorist attacks. *See* Pls.' Am. Compl. ¶¶ 55-58, September 30, 2005. This Court should not entertain any more attenuated and "six degrees of separation"[6] links between Tadamon and Plaintiffs' injuries. In fact, this Court has previously noted:

> "...there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity. There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. Here, there are no such factual bases presented, there are only conclusions."

*Terrorist Attacks I*, 349 F. Supp. 2d 765, 801 (S.D.N.Y. 2005). Because Plaintiffs' few allegations against Tadamon are conclusory and insufficient to state a claim, this Court should grant Tadamon's Rule 12(b)(6) motion.

It is well established that general and conclusory allegations are an insufficient basis of liability as "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even under the liberal standard of Rule 12(b)(6)." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)). Such conclusive allegations are always insufficient, as a matter of law, to maintain a lawsuit, even if they contain all the requisite elements of a cause of action. *See id.* at 833. For example, when examining the claims made against Al Rajhi Bank, this Court noted that the plaintiffs "do not offer facts to support their conclusions that Al Rajhi Bank *had to know* that Defendant

---

[6] The term "six degrees of separation" comes from Judge Marrero's analysis in *W.E. Media Inc. v. General Electric Co.*, 218 F. Supp. 2d 463, 475 (S.D.N.Y. 2002) ("[Plaintiff] also invokes a six-degrees-of-separation argument that because [plaintiff] dealt with corporate entites owned in part by certain Defendants [that] Defendants knew of [plaintiff]. Given the legal divide between the day-to-day operations of a corporation and its shareholders or between a parent and subsidiary [citation omitted], [plaintiffs'] factual arguments are too attenuated to support its point".).

Charities … were supporting terrorism." *Id.* (emphasis added). This was the case even though the complaint contained allegations that "Al Rajhi knew or had to know that its depositors … were material supporters of terrorism." *Id.* at 831.

Likewise, Plaintiffs' complaint alleges that Tadamon has "facilitated, materially sponsored, aided and abetted, and/or conspired with al Qaida and its international terrorists and financial operations." Pls.' Am Compl. ¶ 57. Outside of this conclusory allegation, Plaintiffs fail to present facts detailing the specific banking services and/or the "other forms of material support" that Tadamon allegedly provided which led directly to the support of international terrorism and/or the 9/11 tragedy. Paragraph 57 of Plaintiffs' complaint provides their only attempt to present a factual allegation as they cite to the testimony of Jamal Ahmed Mohamed al-Fadi. The Fadi testimony should not be given any credence by this Court as it is irrelevant and as noted below, does not salvage Plaintiffs' insufficient factual allegations.

First, the timeframe that the Plaintiffs rely upon herein simply does not work. "OBL's first declaration that he was at war with the United States was issued [o]n August 23, 1996, three months after his return to Afghanistan" (Peter L. Bergen, *The Osama Bin Laden I Know*, 164 (2006)). Thus, any such banking relationship Tadamon may have had with OBL's alleged bodyguard is irrelevant because (1) during the early 1990s, Tadamon could not have known nor had any reason to believe that by providing banking services to OBL's alleged bodyguard it was supporting terrorism and/or the 9/11 tragedy; (2) even "the Agency (CIA) simply had no idea of [OBL's] possible significance until the bin Laden unit was set up within the CIA in January 1996." (*Id.* at 61); and (3) the outlines of what would become the 9/11 plot were not even discussed until 1996 when Khaled Sheikh Mohammed met with OBL in Tora Bora. *Id.* at XVI.

5

Second, Al Fadl's testimony provides no "factual allegation" that Tadamon had knowledge that by providing banking services to Osama Bin Laden's body guard (Abdouh al Mukhlafi) that Tadamon was supporting terrorism and/or the 9/11 tragedy. See *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (discussing the necessity of presenting factual allegations in order to withstand a Rule 12(b)(6) motion). Assuming *arguendo*, Tadamon knew it was providing banking services indirectly to OBL, the threshold question remains as to how this "knowledge" directly and specifically links Tadamon to the Plaintiffs' injuries. Tadamon submits it does not and as discussed below, is also lacking in causation.

Based upon the foregoing, Plaintiffs' conclusive allegations in paragraphs 56-58 of their Complaint are factually insufficient and flawed. Thus, Plaintiffs' Rule 12(b)(6) should be granted.

C.   Plaintiffs' Complaint Fails to Establish Causation

Since Tadamon filed its motion to dismiss, the United States Supreme Court handed down an opinion, stating *inter alia*, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. ___ (2006); 126 S. Ct. 1991, 1999 (2006) (citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992)).[7] In *Anza*, the Court held that the central question a district court must ask in evaluating the sufficiency of proximate

---

[7] In citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258 (1992), *Anza* holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Anza*, 126 S. Ct. at 2000. In applying this principle, e.g., *Anza* held that even though the *Holmes* and *Anza* plaintiffs alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied. *Id.* at 1997.

6

causation is "whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 1998.[8] The *Anza* ruling is germane to the instant case as it affirms Tadamon's contention that proximate causation is essential to withstand a Rule 12(b)(6) motion. Although the instant case does not concern an anti-trust matter as in *Anza*, Tadamon submits that Plaintiffs' Complaint should nonetheless be held to the *Anza* "directness requirement" or at least some modified version thereof. An application of the *Anza* test will easily support Tadamon's contention that the Plaintiffs have not established proximate cause. Alternatively, even if the *Anza* test is not applied herein, Tadamon submits that the Plaintiffs have not established proximate causation under this Court's analysis set forth in *Terrorist Attacks I*, 349 F. Supp. 2d 765, 798-801 (S.D.N.Y. 2005).

Based upon this Court's previous ruling, proximate cause is an essential element "at thie stage of litigation" and to meet their causation burden, Plaintiffs must present sufficient allegations that Defendant's conduct (e.g., operating as a retail bank in the Sudan) was the proximate cause of Plaintiffs' injuries. *See Terrorist Attacks I,* 349 F. Supp. 2d at 797, n 26.

Plaintiffs' complaint, fails to even meet the "cause-in-fact" burden because it merely alleges that a relationship between Tadamon, Al Shamal, and Faisal Islamic Banks existed at least until 1995. Pls' Compl. ¶ 56. Assuming *arguendo*, a "relationship" did exist between Tadamon and various Islamic Banks, Plaintiffs have not presented any factual allegations suggesting that by virtue of these relationships, Tadamon is directly linked to Plaintiffs' injuries.[9]

---

[8] The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the *Holmes* proximate cause test which *Anza* expounds upon. *Id.* at 1998.

[9] Plaintiffs further allege that Tadamon was affiliated with Al Baraka and had shareholders which included Sheikh Saleh Kamel. Pls. Compl. ¶¶ 56, 448. These allegations should not be entertained as this Court has already dismissed Al Baraka and Mr. Kamel in

7

In sum, neither the *Anza* test nor the standard that this Court adopted in *Terrorist Attacks I* is satisfied by the bare allegations presented in Plaintiffs' Complaint. This Court needs more than attenuated and remote allegations concerning banking relationships. For any or all of these reasons, Plaintiffs' complaint fails to state a claim for which relief can be granted.

### D. Routine Banking Services Cannot Subject A Defendant To Liability

Tadamon cannot be held liable for providing banking services. All courts examining this issue have rejected the proposition that a bank can be held responsible for the way in which its alleged customers use their money. Examining the Plaintiffs' allegations in *Burnett*, this Court concluded that there is no support "for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service." *Terrorist Attacks I,* 349 F. Supp. 2d at 832 (quoting *Burnett I*, 274 F. Supp. 2d at 109). Although the act of "funneling" or transferring money to a terrorist is "unlawful and actionable," there is no basis for liability if a bank unwittingly served as a "funnel." *Burnett I,* 274 F. Supp. 2d at 109.

In deciding the motion to dismiss of Al Rajhi, Judge Robertson of the District Court for the District of Columbia dismissed all claims related to the provision of banking services, but kept Al Rajhi in the suit only because of allegations that it misused its own zakat fund, hence "directing" money to terrorists rather than simply being a "funnel." *Id.* However, after receiving the *Burnett* Plaintiffs' response to their motion for a more definite statement, Al Rajhi renewed its Motion to Dismiss before this Court. *Terrorist Attacks I,* 349 F. Supp. 2d at 832. Upholding Judge Roberston's earlier ruling, and rejecting the Plaintiffs' expansive rationale regarding a

---

*Terrorist Attacks I*, when considering a Rule 12(b)(6) motion. 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005).

8

know your customer rule, this Court ultimately dismissed the complaint against Al Rajhi "in its entirety." *Id.* at 832. Likewise, this Court should dismiss the complaint against Tadamon since Plaintiffs herein offer an even weaker basis for liability than in the Al Rajhi case (i.e., there is no allegation that Tadamon violated its zakat fund or any other internal policy or procedures). Here, Plaintiffs allege a more attenuated relationship – one between Tadamon and other Islamic Banks who allegedly have links to international terrorism. This is the classic six degrees of separation theory which should not be entertained by this Court.

Thus, Tadamon contends that like Al Rajhi, it should also be dismissed as (1) Tadamon cannot be held responsible for the way its alleged customers used their money; and (2) even if money was allegedly funneled or transferred through Tadamon to terrorists, it was done so unwittingly by Tadamon and thus, there should be no basis for liability.[10]

### III. PLAINTIFFS' COMPLAINT FAILS FOR WANT OF PERSONAL JURISDICTION OVER TADAMON.

Besides failure to state a claim, Plaintiffs' complaint can also be dismissed for lack of personal jurisdiction under FRCP 12(b)(2). Ex. A.

#### A. Standard of Review

Pursuant to FRCP 12(b)(2), the plaintiff bears the burden of making legally sufficient allegations of jurisdiction to establish personal jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In order to survive a motion to dismiss pursuant to Rule 12(b)(2), plaintiffs must provide facts sufficient to establish minimum contacts between the defendants and the forum. *See Int'l Shoe Co. v. Washington*, 326

---

[10] With respect to "liability" the Seventh Circuit recognized that 18 U.S.C. § 2333 cannot be construed in a matter that would attribute "almost unlimited liability to any act that had some link to a terrorist act. Congress could not have meant to attach unlimited liability to even remote acts; it must have meant something else." *Boim v. Quaranic Literacy Institute and Holy Land Foundation*, 291 F.3d 1000, 1020 (7th Cir. 2002).

9

U.S. 310, 316 (1945). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum; mere allegations of a conspiracy will not suffice." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000); *see also Terrorist Attacks I,* 349 F. Supp. 2d at 805.

### B.    Tadamon Lacks Minimum Contacts with the United States

Tadamon has never availed itself to the jurisdiction of the United States in any manner or fashion. Pursuant to well-established case law, minimum contacts are necessary to sustain this action. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Here, Plaintiffs' suit against Tadamon must be dismissed because Plaintiffs have failed to plead a sufficient nexus between Tadamon and the United States. Plaintiffs are unable to plead sufficient contacts because, as evidenced by the attached affidavit, Tadamon has had no direct contacts with the United States either in the past or currently. Ex. A.

Tadamon is a banking institution headquartered in Sudan. Tadamon is not, and has never been, domiciled, organized, or incorporated in any form in the United States. Ex. A at 5. Tadamon is not, and has never been, licensed or registered to do business in the United States. Ex. A at 6. Tadamon does not, and has never owned or leased property in the United States. Ex. A at 7. Tadamon does not have, and never had, a branch office, a representative, an employee or an agent in the United States, except for its representation by an attorney in this court. Ex. A at 8. Tadamon does not now, and has never, offered or advertised banking or any other services within the United States. Ex. A at 9. Tadamon have never received funds which originated in the United States. Ex. A at 10. Shares of Tadamon stock has never been offered or sold in the United States. Ex A at 11. Tadamon does not currently have a bank account in the United States, although it had a correspondent account in the United States with the Bank of New York

for a short period and the account was closed in or about February 1994.  Tadamon also has never, on its own initiative or at the request of any customer, transferred funds to the United States.  Ex. A at 12.  Tadamon does not now maintain any correspondent relationships with United States based Banks.  Ex. A at 13.

Although Tadamon had a correspondent relationship with the Bank of New York, it is important to note that this relationship was necessary to perform routine international monetary transfers and has never been used to perform any business within the United States.  Ex. A at ¶¶ 11-13.  Moreover, "[c]ourts have repeatedly found that a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction over a foreign bank."  *Semi Conductor Materials v. Citibank Int'l PLC,* 969 F. Supp. 243, 246 (S.D.N.Y. 1997).  This Court itself has again recognized that a correspondent relationship with a U.S. based bank, absent additional allegations does not satisfy due process requirements and requires dismissal.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 819 (citing *Leema Enters. Inc. v. Wili*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983)).

Finally, and with respect to the Al Fadi testimony cited in paragraph 57 of their Complaint, *even if* Bin Laden used his bodyguard Mukhafi's bank account at Tadamon, (a point not conceded) this does not establish *minimum contacts* with the United States.  Moreover, any such allegation does not establish "*reasonableness*" such that hauling Tadamon into the Southern District of New York would promote "fair play and substantial justice".  *Int'l Shoe Co.*, 326 U.S. at 316.  Given the foregoing, this Court should grant Tadamon's motion to dismiss for want of jurisdiction.

11

## IV.     CONCLUSION

For good cause shown in this memorandum, this Court should grant Defendant's motion to dismiss based on failure to state a claim for which relief can be granted and lack of personal jurisdiction.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Tadamon Islamic Bank*

Dated: June 29, 2006


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of Motion to Dismiss was served via electronic case filing on this 29th day of June, 2006, upon the following:

Andrew J. Maloney III, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

_____/s/_____
Lisa D. Angelo