UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co. v. al Qaida*, 03-cv-6978 (RCC);


# DEFENDANT AL AQSA ISLAMIC BANK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:  202-862-4343
Facsimile:        202-828-4130

*Attorney for Defendant Al Aqsa Islamic Bank*

**TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………………………………...…1

II. PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTUAL ALLEGATIONS TO SUPPPORT THEIR CIVIL CONSPIRACY CLAIMS AND THUS FAIL TO ALLEGE A CLAIM FOR WHICH RELIEF CAN BE GRANTED………………………………………………………………2

III. PLAINTIFFS' ALLEGATIONS AGAINST AL AQSA ARE CONCLUSORY AND INSUFFICIENT TO STATE A CLAIM………………………………3

    A. Even Under Rule 8(a), Plaintiffs Cannot Present Conclusory Allegations………………………………………………3

    B. Plaintiffs' Claim That Al Aqsa Provides Extraordinary Banking Services Completely Unsupported By The Facts……………………………………………………5

IV. PLAINTIFFS' COMPLAINT FAILS TO PRESENT A DIRECT LINK BETWEEN THEIR INJURIES AND THE ALLEGED CONDUCT OF AL AQSA……………………………………………………………8

V. PLAINTIFFS FAIL TO ALLEGE A LEGALLY SUFFICIENT BASIS FOR PERSONAL JURISDICTION………………………………………11

    A. Plaintiffs Have Not Presented Sufficient Facts That Establish Minimum Contacts………………………………………………………………..…………..12

    B. Plaintiffs Have Not Presented Sufficient Facts To Establish That It Is "Reasonable" To Haul Al Aqsa Into This Court……………………………………………..…………………………...............12

VI. PLAINTIFFS' CONSPIRACY BASED JURISDICTION THEORY SHOULD BE DENIED………………………………………………………………………….13

VII. PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED………………………………………………………………….14

VIII. CONCLUSION……………………………………………………………………….16

**CASES**

Anza v. Ideal Steel Supply Corp., 547 U.S. ___ (2006); 126 S. Ct. 1991 (2006)………......…5,8,9,10

Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986 (N.D. Ill. 2003) ……......…..…5

Damiani v. Adams, 657 F. Supp. 1409 (D. Cal. 1987)……...…………………………………….11

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996)…...………………………………..10

DM Research v. College of Am. Pathologists, 170 F.3d 53 (1st Cir. 1999)….……………………….5

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991)……....……2,14

Corris v. White, 29 A.D. 2d 470 (App. Div. 4th Dept. 1968)………………………………………...15

Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988)……………………………….…………4

Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)………………………………..8

Jin v. Ministry of State Sec., 335 F. Supp. 2d 72 (D.D.C. 2004)……………………………........11

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986)…………………………………………….…..4

Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571 (E.D.N.Y. 2005)……………………………………7

Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005)………………………………………..4,9

Peyman Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998)……………………………..14

Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988)…………………………………………….........4

Singer v. Bell, 585 F. Supp. 300 (S.D.N.Y. 1984)……………………………………………….10,14

Terrorist Attacks I, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)………...…..…...........................passim

Terrorist Attacks II, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)…………………………...……13,14

Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005)……………………………………….4,5

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8(a)………………………………………………………………….…......1,4,5,10

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………......passim

**OTHER SOURCES**

J. Maas, Op. (July 28, 2006) ………………………………………………………………3, 13

Gelman, Blustein, Linzer, Bank Records Secretly Tapped, Washington Post, June 23, 2006….12

Peter Bergan, The Osama I Know, 2006………………………………………………13

9/11 Commission Report……...………………………………………………………13

I.      INTRODUCTION

Pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"), Defendant Al Aqsa Islamic Bank (hereinafter "Al Aqsa"), by and through its undersigned attorney, hereby replies to the Plaintiff Federal Insurance, Co.'s (hereinafter "Plaintiffs") opposition to Al Aqsa's motion to dismiss.  Plaintiffs' opposition makes two things abundantly clear – that Plaintiffs' have an inherent inability to link numerous defendants in this litigation to the 9/11 tragedy, and that they desire this case morph into another Hamas case focusing on the Palestine/Israeli conflict.  This Court should keep its focus on the 9/11 tragedy.

Plaintiffs fail to present sufficient factual allegations of conspiracy, which ultimately negates their ability to allege any claims against Al Aqsa.  Notwithstanding the liberal requirements of Rule 8(a), Plaintiffs must still present non-conclusory allegations in their First Amended Complaint and RICO Statement (hereinafter referred to as "Complaint").  Despite Plaintiffs' nine pages of alleged facts cited in their opposition, they fail to establish proximate cause or a direct link between Al Aqsa's alleged banking relationship with Hamas and the 9/11 tragedy.  For these reasons alone, Al Aqsa's Rule 12(b)(6) motion should be granted.

Plaintiffs' personal jurisdiction arguments are inherently flawed because jurisdiction depends on their claims of conspiracy.  As noted infra., Plaintiffs have alleged no facts that could connect Al Aqsa with the forum since Al Aqsa has never availed itself of the jurisdiction of the United States in any manner and since Al Aqsa has never had direct contacts with the United States either in the past or currently.  Plaintiffs' general jurisdiction and purposeful direction arguments also fail respectively for want of systematic and continuous contacts and for the obvious lack of minimum contacts.  In short, it is simply unreasonable to haul Al Aqsa into the Southern District of New York.

Plaintiffs' conspiracy jurisdiction analysis also fails as it is unreasonable for this Court to infer that Al Aqsa is a member of this vast al Qaida conspiracy based upon the sensational arguments

made in their opposition or from the factual allegations presented their Complaint. Finally, Plaintiffs' jurisdictional discovery request should not be granted for numerous reasons set forth in Part VII of this reply.

In sum, Al Aqsa's motion to dismiss should be granted.

## II. PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTUAL ALLEGATIONS TO SUPPPORT THEIR CIVIL CONSPIRACY CLAIMS AND THUS FAIL TO ALLEGE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

In order to present factual allegations sufficient to support their civil tort claims, Plaintiffs had an obligation to frame non-conclusory factual allegations in their Complaint from which this Court could reasonably infer that Al Aqsa was a part of a vast conspiracy that funded and supported the terrorist attacks of 9/11. Any reading of their Complaint at paragraph 304 or even of their recently filed RICO statement will not support said inference that Al Aqsa was part of a vast conspiracy, with al Qaida, and intended to support and further the 9/11 attacks. In failing to establish that Al Aqsa was part of an alleged conspiracy that led to or assisted the hijackers in attacking America, Plaintiffs also fail to present any factual allegations that tie, link, or otherwise suggest that Al Aqsa is liable to Plaintiffs for injuries incurred on 9/11.[1]

Both this Court and well established case law have ruled that "to recover Tort damages on a conspiracy theory, a Plaintiff must establish the commission of a tort and the following four elements: '(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties intentional participation in furtherance of a plan or purpose, and (d) the resulting damage or injury.'" J. Maas, Op. at 7 (July 28, 2006) (citing Terrorist Attacks I, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (citing Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991)).

---

[1] No where in Plaintiffs' counts against the defendants do they allege that Al Aqsa was directly involved in 9/11. For example, Plaintiffs' Complaint at ¶ 611 alleges Assault and Battery counts against the defendants "as a result of the September 11, 2001 highjackings and attacks." But, without establishing a connection between the "September 11, 2001 highjackings" and Al Aqsa, the Plaintiffs' have made no meritorious allegations directed at Al Aqsa. The failure to establish conspiracy is crucial to the Plaintiffs' ability to survive the instant motion.

2

Even if, at this stage of litigation, it is not necessary for Plaintiffs to prove the elements of conspiracy, it *is* necessary, under Rule 12(b)(6), that they present factual allegations that suggest Al Aqsa had a "corrupt agreement" with al Qaida, that Al Aqsa intentionally participated in said agreement through an "overt act in furtherance of" said agreement, and that Al Aqsa's actions resulted in Plaintiffs injuries. Even under the most liberal reading of paragraph 304 of Plaintiffs' Complaint, these necessary factual allegations as to Al Aqsa are not there. Because Plaintiffs fail to present legally sufficient allegations of conspiracy, their claims against Al Aqsa must be dismissed.

### III.    PLAINTIFFS' ALLEGATIONS AGAINST AL AQSA ARE CONCLUSORY AND INSUFFICIENT TO STATE A CLAIM.

Even if Plaintiffs established a prima facie case of conspiracy, Rule 12(b)(6) relief is still warranted because Plaintiffs' Complaint allegations are no more than legal conclusions. As recently as June 28, 2006, United States Magistrate Judge Frank Maas, presided over a discovery dispute concerning the <u>Burnett</u> Plaintiffs' attorney's discovery requests and specifically the production of customer bank records from the NCB defendants. Judge Maas concluded that the allegations were "[o]nce again … 'conclusory'". J. Maas, Op. at 10. To illustrate the conclusory nature of a particular allegation Judge Maas provided an example.[2] This example is precisely the type of allegations Plaintiffs have made against Al Aqsa. As such, Plaintiffs' allegations are conclusory and are not sufficient to withstand Al Aqsa's Rule 12(b)(6) motion.

#### A.    Even Under Rule 8(a), Plaintiffs Cannot Present Conclusory Allegations.[3]

Although the Plaintiffs repeatedly note that the requirements of notice-pleading are "liberal", and that "conclusory allegations are perfectly proper" their complaint must still provide enough

---

[2] "in addition to the sort of boilerplate that the plaintiffs recited in their discussion of the other banks, the Burnett complaint referred to a '1999 United States Senate Report on the [Bank of Credit and Commerce International] scheme [which] detailed the role of [NCB] in hiding assets, money laundering, the cover-up and obstruction of a Senate investigation, and sponsoring international terrorism.'" J. Maas, Op. at 10.

[3] "While applying the liberal notice pleading requirements of Rule 8, the Court notes that in light of 'the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of [the claims].'" *See Terrorist Attacks I*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005).

information and detail to enable defendants to respond and defend. Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). Fairness is the rationale behind these requirements (i.e. information and detail) such that defendants like Al Aqsa may have a *fair* understanding of what the plaintiffs are complaining about and whether there is even a legal basis for recovery. Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (emphasis added). As to the "short and plain statement" requirement of Rule 8(a), the principal purpose of the statement is to give *fair* notice to enable an adverse party to answer and prepare for trial. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988.

To support their contention that conclusory allegations are sufficient under the "liberal" requirements of Rule 8(a), Plaintiffs cite Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) and Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005).

Regarding Pelman, Pt. IV of this Reply addresses Plaintiffs "wait until discovery" argument which Plaintiffs cite to Pelman for support. In said section, Al Aqsa discusses Anza v. Ideal Steel Supply Corp., wherein the Supreme Court recently held that "a RICO plaintiff cannot circumvent the proximate-cause requirement." 547 U.S. ___ (2006); 126 S. Ct. 1991, 1998 (2006). Al Aqsa submits that Plaintiffs' Pelman analysis serves to do exactly that – circumvent the proximate cause requirement under the guise of Rule 8(a).

As to Twombly, the Second Circuit specifically opined that, "*a barebones statement of conspiracy or of injury under antitrust laws without any supporting facts permits dismissal.*" Id. at 109 (emphasis added). Twombly also articulated the common sense approach that this Court should adopt: "[m]inimal requirements are not tantamount to nonexistent requirements," (Id. at 109 (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)), and require that "some threshold of plausibility must be crossed at the outset before a [ ] case should be permitted to go into its inevitably costly and protracted discovery phase." Id. at 111 (quoting J. Posner in Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)). Since the Twombly court stated

4

that this "plausibility" requirement is no different for anti-trust claims than it is for other claims subject to Rule 8(a) notice pleading requirements, (Id. at 107), Al Aqsa submits that Plaintiffs should also meet this plausibility standard before both parties are forced into what will be an "inevitably costly and protracted discovery phase."[4]  Id. at 111.

When held to the "plausibility" standard referenced in Twombly, Plaintiffs' conclusory allegations are insufficient because they fail to provide "a short and plain statement of the claim *showing that the pleader is entitled to relief*." Rule 8(a) (emphasis added).

In sum, the few facts presented herein are so unrelated to the counts charged as to suggest a fishing expedition and thus, makes it impossible for the defendant to properly respond.[5]  Merely alleging that Al Aqsa is an Islamic bank that allegedly provided routine banking services to alleged terrorists, and that some of its shareholders are subject to the same specious allegations, can hardly be considered sufficient "information and detail" to give Al Aqsa a reasonable opportunity to respond to the serious claims with which it is faced. Effectively there is no notice of the basis upon which Plaintiffs have founded their claims.

### B. Plaintiffs' Claim That Al Aqsa Provides Extraordinary Banking Services Is Completely Unsupported By The Facts.

Al Aqsa cannot be held liable as a co-conspirator for providing routine banking services.[6] First, and as noted above, without alleging facts that establish Al Aqsa was part of a vast conspiracy that includes Hamas and Al Qaida, Plaintiffs' claim that Al Aqsa provided "extraordinary" banking

---

[4] This Court should know and can take judicial notice that counsel for Al Aqsa also represents the International Islamic Relief Organization (IIRO), which has been served with extremely burdensome discovery requests. In responding to said requests, counsel has already received preliminary estimates for simply scanning the documents requested by the Plaintiffs in IIRO's general warehouse in Jeddah that are in the $500,000-$1,000,000 range.

[5] 'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.' DM Research v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999)." Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 326 (4th Cir. 2001)

[6] Even though Plaintiffs' single allegation does not spell out that the Defendant is providing banking services, Defendant assumes for purposes of this Reply only that the Plaintiffs are alleging so.

5

services must be dismissed. Second, Al Aqsa submits that any and all of its banking services were "ordinary" and not "extraordinary" as Plaintiffs' allege.

Plaintiffs' Complaint merely states that Al Aqsa is a Bank that was a subsidiary and/or affiliate of Al Baraka – a previous Defendant that this Court has already dismissed from this case. Pls. Am. Compl. at 304. Plaintiffs further allege by inference only, that because Al Baraka "has long known that the accounts it maintained for many [ ] charities were being used to solicit and transfer funds to terrorist organizations, including al Qaida" (Id. at 302) that as an "affiliate and subsidiary Al Aqsa must have had this "knowledge" too. All Courts examining the issue have rejected the proposition that a bank can be held responsible for the way in which its alleged customers use their money. Burnett I, 274 F. Supp. 2d at 109; Terrorist Attacks I, 349 F. Supp. 2d at 832. Examining this potential liability, this Court concluded that there is no support "for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service." 349 F. Supp. 2d at 832 (quoting Burnett I, 274 F. Supp. 2d at 109). Though the act of "funneling," or transferring money to a terrorist, is "unlawful and actionable," there is no basis for the liability of the bank which unwittingly served as a "funnel." Burnett I, 274 F. Supp. 2d at 109.[7]

In deciding the motion to dismiss of Al Rajhi Banking & Investment Corporation ("Al Rajhi"), Judge Robertson dismissed all claims related to the provision of banking services, keeping

---

[7] Plaintiffs quote Condoleeza Rice on page 1 of their opposition, with the apparent intention of fleshing out their allegations, in which Ms. Rice expresses concern about money being funneled to terrorist organizations and whether Hamas should be designated as a terrorist organization. As the Plaintiffs are no doubt aware, this Court has explained the type of funneling for which legal liability may be imposed, and a bank that serves as a simple funnel for money that eventually reaches alleged terrorists is not the type of funnel that liability attaches to without "knowledge". Terrorist I, 349 F. Supp. 2d at 831-32. Plaintiffs' Rice quote also fails to have any bearing on the matter at hand because nothing can be inferred from this quote regarding Al Aqsa. This is just one more example of the sensational material that Plaintiffs rely on, irrespective of its relevance to the current Defendant or their claims against the Defendant.

Al Rajhi in the suit only because of allegations that it misused its own zakat fund, hence "funneling" money to terrorists rather than being a simple "funnel." Id.[8]

After receiving the Burnett Plaintiffs' response to their motion for a more definite statement, Al Rajhi filed for dismissal before this Court. Terrorist Attacks I, 349 F. Supp.2d at 832. Upholding Judge Robertson's earlier ruling, and rejecting the Plaintiff's expansive rational re: a "know your customer rule," this Court dismissed the complaint against Al Rajhi "in its entirety." Id. at 833. As Plaintiffs herein are alleging a similar basis for liability, i.e., that Al Aqsa acted as an Islamic Bank that was a subsidiary of Al Baraka which allegedly had the requisite "knowledge" that Plaintiffs cavalierly impute to Al Aqsa, all claims against Al Aqsa must also be dismissed.

As to Plaintiffs' RICO Statement, Plaintiffs cite to alleged conduct of Al Aqsa that may or may not have occurred before 1996. Any allegation that precedes the 1996 Bin Laden fatwa, which this court has previously acknowledged as the year Osama bin Laden declared war on Americans (Terror Attacks II, 2005 U.S. Dist. LEXIS 20841, at *65) should not be considered as it is too remote and the necessary requirement of "knowledge" can certainly not be established that any conduct by Al Aqsa was done with an eye toward the 9/11 attacks.

Plaintiffs' reliance on Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571 (E.D.N.Y. 2005), is also misplaced. While the court in Linde found that the Plaintiffs' allegations were sufficient to withstand a 12(b)(6) motion, the court reached this decision because "given plaintiffs' allegations regarding the knowing and intentional nature of the Bank's activities, there is nothing 'routine' about the services the Bank is alleged to provide." Id. At 588. Here, the plaintiffs have done no more than argue in their opposition that Al Aqsa's banking services are extraordinary in nature – an obvious conclusory statement. Since this Court has held, that there is no support "for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits,

---

[8] Plaintiffs herein have not even alleged that Al Aqsa violated its zakat fund or any other internal policy or procedures. In fact, there are no facts even describing the policies and procedures of Al Aqsa.

7

withdrawals, check clearing services, or any other routine banking service." (Terror Attacks I, 349 F. Supp. 2d at 832 (quoting Burnett I, 274 F. Supp.2d at 109)) Al Aqsa submits it cannot be held liable for providing routine banking services as well.

### IV. PLAINTIFFS' COMPLAINT FAILS TO PRESENT A DIRECT LINK BETWEEN THEIR INJURIES AND THE ALLEGED CONDUCT OF AL AQSA.

Even if Plaintiffs had established a prima facie case of conspiracy, Plaintiffs still fail to establish proximate cause. Since filing the underlying motion to dismiss, the United States Supreme Court has handed down an opinion, stating *inter alia*, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion. Anza v. Ideal Steel Supply Corp, 547 U.S. ___ (2006); 126 S. Ct. 1991, 1999 (2006) (citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992)).[9] In Anza, the Court held that the central question a district court must ask in evaluating the sufficiency of proximate causation [when considering a RICO complaint in a 12(b)(6) motion] is "whether the alleged violation led directly to the plaintiff's injuries." Id. at 1998.[10] The Anza ruling is germane to the instant case as it affirms Al Aqsa's contention that alleging proximate cause is an essential element to withstand a Rule 12(b)(6) motion.

Although the instant case does not concern an anti-trust matter as in Anza, Al Aqsa submits that Plaintiffs' Complaint should nonetheless be held to the Anza "directness requirement" or at least some modified version thereof. Even if the Anza test is not applied herein, Al Aqsa submits the Plaintiffs have not established proximate cause under this Court's analysis in Terrorist Attacks I, 349 F. Supp. 2d 765, 798-801 (S.D.N.Y. 2005).

---

[9] In citing Holmes v. Securities Investor Protection Corporation, 503 U.S. 258 (1992), Anza holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." Anza, 126 S. Ct. at 2000. In applying this principle, e.g., Anza held that even though the Holmes and Anza plaintiffs alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied. Id. at 1997.

[10] The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the Holmes proximate cause test which Anza expounds upon. Id. at 1998.

8

In response to Al Aqsa's underlying motion, Plaintiffs argue that specific allegations of causation are not required and that even if they were required, they "have sufficiently explored the causal link" between Al Aqsa and plaintiffs injuries (Pls.' Opp'n at 14-16). Plaintiffs also argue that they have no obligation to furnish specific facts that establish Al Aqsa's knowledge. Pls.' Opp'n at 15. Finally, Plaintiffs contend that any information missing in their Complaints' allegations is "the sort of information that is appropriately the subject of discovery." Pls.' Opp'n at 15 (citing Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005). Each of these contentions fail to adequately rebut Al Aqsa's underlying motion.

First, with respect to the causal "links" Plaintiffs believe they have explored, at no point do the Plaintiffs allege that Al Aqsa had some kind of a direct link to the 9/11 tragedy as the Anza directness factor of proximate causation requires. The Plaintiffs' best attempt to link Al Aqsa to the Plaintiffs' injuries is presented in their conclusory allegation that "Al Aqsa's knowing and intentional sponsorship of al Qaida *through Hamas* is in and of itself sufficient to establish causation at this stage of the litigation." Pls. Opp'n at 14 (emphasis added).[11] This Court, however, must be provided with facts, *not legal conclusions*, showing how Al Aqsa could have a direct connection to the alleged conspiracy, i.e., how Al Aqsa provided extraordinary banking services to Hamas at a time *and* in such manner as to have provided a direct connection to al Qaida *and* how the provision of such services was done with an eye toward contributing to 9/11 *and* that as a result of providing such services, 9/11 was a direct and foreseeable result. This type of causal allegation is completely lacking in Plaintiffs' Complaint. Because Anza ruled that Plaintiffs must present sufficient allegations that Al Aqsa's conduct was the proximate cause of Plaintiffs' injuries, (Anza, 126 S. Ct. at 1998), Plaintiffs' above-referenced arguments, including their contention that there is no requirement of specific allegations relating to causation, (Pls.' Opp'n at 17) are flawed.

---

[11] This Court can take judicial notice that not one expert, FBI, Homeland Security, not even the 9/11 commission linked Hamas to 9/11.

9

Second, with respect to Plaintiffs' argument that they need not plead knowledge under Rule 8(a), this argument is one Plaintiffs bring on themselves by repeatedly stating that Al Aqsa "knew" that by providing banking services to alleged terrorists that they knew they were supporting terrorism. Assuming *arguendo*, Al Aqsa knew it was providing banking services to alleged terrorists, the threshold question still remains as to how this "knowledge" directly and specifically links Al Aqsa to the Plaintiffs' injuries.[12] Al Aqsa submits it does not.

Third, and as to Plaintiffs' 'hold everything until discovery' argument, this request only serves to circumvent the proximate cause requirement in an effort to conduct a costly fishing expedition in the name of discovery.[13] Anza, 126 S. Ct. at 1998 (holding that "a RICO plaintiff cannot circumvent the proximate-cause requirement" and discussing the rationale for applying the proximate-cause analysis). In Singer v. Bell, Judge Weinfeld held that, "[t]he discovery rules 'are not a hunting license to conjure up a claim that does not exist.'" 585 F. Supp. 300, 304 (S.D.N.Y. 1984).[14]

In sum, Plaintiffs fail to present sufficiently detailed allegations showing that Defendant's conduct (i.e., operating as a retail bank) could have been the proximate cause of Plaintiffs' injuries. Neither the Anza test nor the standard that this Court adopted in Terrorist Attacks I is satisfied by the bare allegations presented by the Plaintiffs. This Court needs more than attenuated and remote allegations concerning banking relationships. For any or all of these reasons, Plaintiffs' complaint fail to state a claim for which relief can be granted.

---

[12] This Court has held "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (*quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

[13] See supra n. 4.

[14] See infra Pt. VII and accompanying text for additional Singer v. Bell analysis.

### IV. PLAINTIFFS FAIL TO ALLEGE A LEGALLY SUFFICIENT BASIS FOR PERSONAL JURISDICTION

Although Plaintiffs argue that their Complaint asserts a legally sufficient basis for personal jurisdiction on three separate grounds, these arguments are inherently flawed because jurisdiction depends on their insufficient claims of conspiracy, without which, the Plaintiffs have alleged no facts that could connect Al Aqsa with the forum since Al Aqsa has never availed itself of the jurisdiction of the United States in any manner and since Al Aqsa has never had direct contacts with the United States either in the past or currently. See Ex. A (filed with initial motion).

Plaintiffs argue that § 18 U.S.C. 2334 and § 18 U.S.C. 1965 establish jurisdiction over Al Aqsa. These statutes, however, provide the district court with flexibility in choosing the appropriate *venue*, but do not overcome or lessen the requirements of due process. Once Federal Judge, in addressing personal jurisdiction based on a conspiracy theory explained, "jurisdiction based on the three traditional elements of conspiracy jurisdiction alone violates due process. Personal jurisdiction, even if based on conspiracy, requires purposeful availment…Otherwise, as one commentator has noted, 'insofar as conspiracy theory becomes a device to bypass due process analysis, it is plainly unconstitutional.'" Jin v. Ministry of State Sec., 335 F. Supp. 2d 72, 80 (D.D.C. 2004) (internal citations omitted) (emphasis added); see also Damiani v. Adams, 657 F. Supp. 1409, 1416 (D. Cal. 1987) (Personal jurisdiction cannot be established under 18 U.S.C. 1965 where defendants do not reside, may not be found, do not have an agent, and do not transact their affairs in the forum state.); Terrorist Attacks II, 392 F. Supp. 2d 539, 557 (S.D.N.Y. 2005) (citing Terrorist Attacks I, 349 F. Supp. 2d at 807) ("For the Court to exercise personal jurisdiction pursuant to Rule 4(k)(2), there must be a federal claim, personal jurisdiction must not exist over the defendant in New York or any other state, and the defendant must have sufficient minimum contacts with the United States as a whole such that the exercise of jurisdiction does not violate Fifth Amendment due process.") Based upon the authority noted above, the Plaintiffs must allege a prima facie conspiracy claim *plus* additional

jurisdictional facts under that theory to comply with due process, *or* the Plaintiffs must establish that Al Aqsa has minimum contacts with the United States under Rule 4(k). The Plaintiffs' Complaint can establish neither.

### A. Plaintiffs Have Not Presented Sufficient Facts That Establish Minimum Contacts.

Simply stating that "Al Baraka has provided substantial support to al Qaida through its subsidiaries and affiliates, including … Al Aqsa" is not sufficient to establish minimum contacts with the United States. Pls. Compl. ¶ 304. Because Plaintiffs have repeatedly failed to present sufficient contacts between Al Aqsa and the United States, the Court should not exercise personal jurisdiction over it.

However, should the Court find that Plaintiffs have presented sufficient contacts even under the higher general jurisdiction standard, Al Aqsa submits it is not "reasonable" to haul it into this Court.

### B. Plaintiffs Have Not Presented Sufficient Facts To Establish That It Is "Reasonable" To Haul Al Aqsa Into This Court.

As this Court knows, the U.S. Treasury Department closely monitors international banks for alleged terrorist activities, for example money laundering.[15] However, Al Aqsa has not been indicted by the United States in any judicial district and has not been targeted for criminal charges by European-based banking regulatory bodies. Certainly by now, five years after 9/11, the U.S. Government or European-based law enforcement authorities would have gathered enough information to support an indictment if one was warranted.

Under a due process analysis, simply stating that "Al Aqsa knew that its support would further acts of international terrorism directed at the United States" (Pls.' Opp'n at 23) is a "conclusory allegation" and draws "argumentative inferences" that this Court has held (Terrorist

---

[15] See Gelman, Blustein, Linzer, Bank Records Secretly Tapped, Washington Post, June 23, 2006, for extensive discussion of this topic.

Attacks II, 392 F. Supp. 2d at 556) are not acceptable for establishing a prima facie case for jurisdiction and likewise does not establish "reasonableness" under the due process clause of the Fifth Amendment.[16] Allowing the Plaintiffs to haul Al Aqsa into court based purely on specious and unfounded allegations of conspiracy is a prime example of the unfair result that the reasonableness requirement is intended to prevent.

For any or all of the foregoing reasons this Court should not extend jurisdiction over Al Aqsa.

## V.  PLAINTIFFS' CONSPIRACY BASED JURISDICTION THEORY SHOULD BE DENIED.

In their Complaint, Plaintiffs present no facts whereby one could "reasonably infer" that "Al Aqsa and Al Qaeda agreed to injure America through terror attacks" as the Plaintiffs now (in their opposition) suggest. Pls.' Opp'n at 13. As discussed in prior sections, Plaintiffs have failed to establish a prima facie claim of conspiracy, and thus cannot base their jurisdictional allegations on this factually deficient theory. At no point in their Complaint do the Plaintiffs submit that Al Aqsa had a "corrupt agreement" with anyone or that Al Aqsa engaged in an "overt act" to further its "corrupt agreement" or that Al Aqsa did anything with "intentional participation" to further an alleged plan or "corrupt agreement". Merely reciting the bare prima facie conspiracy requirements and then stating "Plaintiffs have met this burden" (Pls.' Opp'n at 21) without supporting factual allegations is a classic example of Al Aqsa's repeated contention that Plaintiffs present this Court with only "conclusory allegations." As such, Plaintiffs' conspiracy-based jurisdiction theory should

---

[16] Furthermore, with respect to the crucial issue as to when specifically banks or any other entities may reasonably have been put on notice of al Qaida's intentions to attack the United States, Plaintiffs have either misconstrued this crucial timeframe or created their own timeframe in an attempt to avoid having Al Aqsa dismissed from this action. Contrary to the Plaintiffs' timeline, it has been widely publicized that bin Laden did not declare his fatwa against the United States until August 23, 1996. (Peter Bergman, *The Osama I Know*, 2006); see also, 9/11 Commission Report, pg 48; see J. Maas, Op. at 6 (restricting jurisdictional discovery to 6-year look-back period).

13

be rejected just as Judge Maas rejected Plaintiffs' similar arguments supporting their claim that they were entitled to lists of customers from NCB in his recent July 28, 2006 discovery Order.[17]

## VI. PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED.

"If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdictional discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction." Terrorist Attacks II, 392 F. Supp. 2d at 812. Courts are not obligated to subject a foreign defendant to discovery, however, where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction. Id. (citing Jazini, 148 F.3d at 183-85 (granting a motion to dismiss and *denying jurisdictional discovery where [the] complaint was described as "sparse" and "conclusory"*) (emphasis added).

Plaintiffs ask this Court to "at a minimum" order jurisdictional discovery over Al Aqsa. Pls.' Opp'n at 21. However, as repeated numerous times herein, Plaintiffs' Complaint is "conclusory" and fails to identify any genuine issue of jurisdictional fact that needs to be fleshed out via discovery.

When referring to the jurisdictional discovery requests served upon NCB, Judge Maas, noted that "these Plaintiffs have already established that they will serve "far-reaching" requests much beyond the scope of attempting to establish a factual predicate for their conclusory allegations." J. Maas, Op. at 8-9.

Furthermore, permitting jurisdictional discovery will only lead to incredible cost and further unnecessary litigation. In Singer v. Bell, Judge Weinfeld held,

---

[17] Most of Judge Maas' analysis echoes Al Aqsa's arguments including the argument that Plaintiffs have failed to make a prima facie showing of conspiracy. J. Maas, Op. at 7. In citing this Court's opinion in Terrorist Attacks I, Judge Maas affirms that to establish personal jurisdiction on a conspiracy theory, plaintiffs must make a prima facie case, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York. Id. (citing Terrorist Attacks I, 349 F. Supp. 2d at 805 (citing Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991)).

>Apparently recognizing that their showing is woefully inadequate, plaintiffs argue that they should not be required to make a prima facie showing of conspiracy until they have had an opportunity for discovery. The New York Court of Appeals has held that if plaintiffs have "made a sufficient start, and shown their position not to be frivolous" they should be afforded an opportunity for discovery before the Court decides the motion to dismiss for lack of personal jurisdiction. Here, however, as indicated previously, plaintiffs have come forward with no evidence linking [defendant] and the firm to the alleged conspiracy, other than the allegations of *guilt by association*, and therefore cannot be said to have made the "sufficient start" required to justify discovery. The discovery rules "are not a hunting license to conjure up a claim that does not exist." As Judge Griesa has stated:  To compel a defendant to remain in an action during discovery . . . is an assertion of jurisdiction to some extent -- and no trivial burden in a substantial case. Surely a plaintiff must make some specific factual showing in order to assert such jurisdiction. A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction.

585 F. Supp. 300, 304 (S.D.N.Y. 1984).

Despite the foregoing, should this Court permit the instant Plaintiffs the right to jurisdictional discovery, Al Aqsa submits that guidelines should be set by this Court as to what Plaintiffs may seek in their Rule 34 requests.  The jurisdictional discovery requests the instant Plaintiffs have served upon other defendants in this litigation, evidences that their requests seek both substantive and jurisdictional discovery.[18]  Although New York courts have allowed some overlap with substantive issues under the agency theory of personal jurisdiction, in this case there is no distinction left between jurisdictional discovery and full discovery because the substantive overlap touches all of the substantive allegations.[19]

---

[18] The Court can take judicial notice of the Rule 34 Jurisdictional Discovery Requests Served Upon Defendant Rabita Trust by Plaintiffs.

[19] Since under the relevant provision of the NY long arm statute is section 302(a)(2), a civil conspiracy is not a cause of action in and of itself (Corris v. White, 29 A.D. 2d 470, 472 (App. Div. 4th Dept. 1968)) but simply serves to link the parties for the purpose of imposing civil liability  (Id. at 473), the grant of jurisdictional discovery would, in this case, involve discovery regarding:  (1) Plaintiffs' allegations of conspiracy (to link the defendant to alleged co-conspirators);  and (2) Plaintiffs' tort allegations (to establish that the alleged co-conspirators actually committed a tort within the state).  Thus, in this case, jurisdictional discovery has the effect of becoming full blown substantive discovery.

In sum, Al Aqsa urges this Court not to grant jurisdictional discovery as it would undermine the inherent protections of notice pleading and subject Al Aqsa to full-blown discovery even though the plaintiffs' pleadings are insufficient.

## VII. CONCLUSION

Given the foregoing reasons, it is clear that Defendant Al Aqsa's motion to dismiss can and should be granted. Attenuated and remote allegations, alleged banking relationships and alleged shareholder status can hardly serve as the underpinnings for denial of a 12(b)(6) motion.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Al Aqsa Islamic Bank*

Dated: July 28, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of Motion to Dismiss was served via electronic case filing on this 28th day of July, 2006, upon the following:

Mr. Sean P. Carter, Esq.
Cozen O'Connor
1900 Market St.
Philadelphia, Pa. 19103-3508

_____/s/_____
Lisa D. Angelo, Esq.

16