UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Burnett, et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 03-CV-5738 (RCC)
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 03-CV-9849 (RCC)
*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 04-CV-7279 (RCC)
*World Trade Ctr. Prop., et al. v. Al Baraka Inv. & Dev. Corp, et al.*, No. 04-CV-7280 (RCC)

**AHMED ZAKI YAMANI'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION TO VACATE DEFAULTS AND DISMISS THE CLAIMS AGAINST HIM**

 

Rayner M. Hamilton
Attorney-at-Law
1155 Avenue of the Americas
New York, New York 10036

July 31, 2006                              *Attorney for Ahmed Zaki Yamani*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................6

I.  DEFAULT JUDGMENTS ARE VOID AND MUST BE VACATED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER MR. YAMANI.................6

II. ENTRIES OF DEFAULT SHOULD BE VACATED BASED ON PLAINTIFFS' CONDUCT AND DELAY, LACK OF PREJUDICE TO PLAINTIFFS, AND MR. YAMANI'S MERITORIOUS DEFENSES ............................................................7

    A.  Plaintiffs Ignore Their Own Conduct And Delay ......................................................7

    B.  Plaintiffs Fail To Articulate Prejudice They Will Suffer By Vacating Defaults ........................................................................................................................8

    C.  Plaintiffs Concede That Mr. Yamani Has Meritorious Defenses .............................9

III. PLAINTIFFS CANNOT DISTINGUISH MR. YAMANI FROM DEFENDANTS THAT THIS COURT HAS ALREADY DISMISSED .......................................................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                                      **PAGE(S)**

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) ...................................................................................8

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ..........................................................7, 8

*Grace v. Bank Leumi Trust Co. of New York*, 433 F.3d 180 (2d Cir. 2006)....................................6

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y 2005)...............4, 6

*Leab v. Streit*, 584 F. Supp. 748 (S.D.N.Y. 1984) ...........................................................................8

*Pecarseky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001) ..................................................7

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc.*, 99 F. Supp. 2d 450
    (S.D.N.Y. 2000).........................................................................................................................7

## **INTRODUCTION**

Plaintiffs' response to Mr. Yamani's motion is perhaps most revealing, not for what it says but for what it omits.

First, nowhere do Plaintiffs even address the point made at the outset of Mr. Yamani's opening brief (*see* Ahmed Zaki Yamani's Memorandum in Support of His Motion to Vacate Defaults and Dismiss the Claims Against Him (Jun. 5, 2006) (MDL Docket #1833) ("Mem.") at 2, 7) that the defaults, or default judgments if that is what they are, are void and must be vacated if the court lacks personal jurisdiction over Mr. Yamani. The reason for that rather remarkable oversight is patent—i.e., based upon the prior decision of this Court in this consolidated litigation, Plaintiffs know full well that they cannot establish personal jurisdiction over Mr. Yamani. *See* Mem. at 10-14.

Second, Plaintiffs likewise duck the inescapable reality that they have not, and cannot, allege viable causes of action against Mr. Yamani. *See* Plaintiffs' Opposition to the Motion of Defendant Ahmed Zaki Yamani to Set Aside Default Judgments and Response to Defaulted Defendant's Improperly Filed Motion to Dismiss (Jul. 17, 2006) (MDL Docket #1861) ("Opp'n") at 1 n.2. Instead, Plaintiffs go all out in an effort to defend and preserve the defaults they have taken. In doing so, Plaintiffs are quick to criticize Mr. Yamani's counsel (*see, e.g.*, Opp'n at 8), while conveniently overlooking their own service failures, untimely submissions, and pleading inadequacies.

Third, Plaintiffs make no claim that Mr. Yamani has not presented a meritorious defense. Indeed they acknowledge that he has alleged such. *See* Opp'n at 11.

Before going further, perhaps it would be instructive to review with some specificity what happened procedurally with respect to Mr. Yamani.

First, no effort whatsoever was made to serve process upon Mr. Yamani personally even though his office in London is a matter of public record and the address can easily be located through a simple Google search for "Zaki Yamani." Instead, Plaintiffs elected to rely upon service by publication via the *International Herald Tribune* and *Al Quds Al Arabi*. As Mr. Yamani argued in his Memorandum, such service is defective. *See* Mem. at 16-17.

Be that as it may, Mr. Yamani saw the published notice and retained counsel in New York who contacted Liaison Counsel to Plaintiffs' Executive Committee—which includes counsel who opposed Mr. Yamani's instant motion—in a timely manner. Counsel's letter of February 25, 2005 (*see* Mem. at Ex. A) requested that Plaintiffs dismiss Mr. Yamani as a defendant, but if not (i) demanded that Plaintiffs serve a more definite statement within 30 days in compliance with Case Management Order No. 2 and Rule 12(e) of the Federal Rules of Civil Procedure in that no specific allegations whatsoever had been asserted in the complaints against Mr. Yamani, (ii) requested RICO statements in compliance with Paragraph 14 of Case Management Order No. 2 within the same 30-day period if any Plaintiff intended to assert RICO claims, (iii) noted that Mr. Yamani's time to answer, move or otherwise respond to the complaints would run from the service of the more definite statement, and (iv) requested that Plaintiffs respond to the letter immediately but in any event within the 30-day deadline mentioned.

Plaintiffs did not serve the required more definite statement within the 30 days specified in Case Management Order No. 2. Indeed, they did not respond to counsel's letter at all. They simply defaulted.

On September 30, 2005, more than six months after expiration of the 30 day deadline but apparently taking the position that the July 27, 2005 endorsement (*see* Opp'n at 2 n.3) excused

2

all prior defaults, these particular Plaintiffs filed what purported to be "more definite statements" as to dozens of defendants. Buried in the *Burnett* Plaintiffs' 139 paragraph "more definite statement" applicable to 57 defendants was one paragraph applicable to Mr. Yamani. The *Euro Brokers* and *World Trade Center Properties* Plaintiffs' 58 paragraph "more definite statement" applicable to 20 defendants contained the same one paragraph allegation applicable to Mr. Yamani.

None of these "more definite statements" was served upon Mr. Yamani's counsel. Instead, the "more definite statements" were simply mixed in with some 64 other filings made by Plaintiffs that same day on this massive docket. Indeed, Plaintiffs' still had never responded to Mr. Yamani's counsel's February 25 letter or communicated with counsel in any manner.

In light of this Court's previous decisions, it is impossible for counsel for these Plaintiffs to reasonably have believed on September 30, 2005 or at any other time that they had pleaded viable causes of action against Mr. Yamani. Counsel for the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* Plaintiffs had decided to persist based upon a single, identical paragraph relating to Mr. Yamani asserting the following:

> Ahmed Zaki Yamani's name was among those included in the Golden Chain. Yamani was the longtime Oil Minister for the Kingdom of Saudi Arabia. After serving loyally for many years, Yamani was suddenly dismissed from his position in the late-l980's when King Fahd apparently held him responsible for a price war with the non-OPEC countries that pushed petroleum prices below $10/barrel.

*Burnett* More Definite Statement as to Various Defendants (MDL Docket #1368) at ¶ 62; *Euro Brokers* and *World Trade Center Properties* More Definite Statement as to Various Defendants (MDL Docket #1369) at ¶ 44.

None of that, even if true (which much of it is not), provides any support for a cause of action against Mr. Yamani. *See* Mem. at 8-16. The "Golden Chain" document mentions

3

"Ahmad Turki Yamani." Whether that purports to be defendant, Ahmed Zaki Yamani, is anyone's guess, but in any event this Court has made quite clear that inclusion of a name on this list, without more, cannot establish the person's "involvement in a terrorist conspiracy culminating in the September 11 attacks and does not demonstrate that he purposefully directed his activities at the United States." *Terrorist Attacks I*, 349 F. Supp. 2d 765, 818 (S.D.N.Y. 2005). Mr. Yamani indeed was the longtime Oil Minister for Saudi Arabia. So what? He likewise served loyally for many years, and was replaced in 1986 for whatever reasons the King may have had (as many cabinet ministers in the United States, the United Kingdom, and elsewhere often are as well, for whatever reasons the President, Prime Minister, or whomever has). None of this in any way supports Plaintiffs' purported causes of action. Indeed, if Mr. Yamani was in fact "discharged" for the reason Plaintiffs allege, one might think that his well known pro-West stance would be viewed positively by Plaintiffs rather than somehow evidencing an affiliation or sympathy with Islamic extremists which could not be further from the truth.

Indeed, the impossibility of sustaining a cause of action against Mr. Yamani with those allegations is no doubt why the other plaintiffs voluntarily dismissed their complaints as to him. *See Federal Insurance* Notice of Voluntary Dismissal (MDL Docket #703) at Ex. A. The *NYMAGIC* Plaintiff removed Mr. Yamani's name from its Amended Complaint, thereby accomplishing the same end result. *Compare NYMAGIC* Compl. at ¶ 45 *with NYMAGIC* 2d Am. Compl. at ¶ 45.

Even though counsel for the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* Plaintiffs could not possibly believe that the above particulars as to Mr. Yamani fulfilled the standards established in the previous decisions of this Court for pleading causes of action against

4

him, by letter dated April 4, 2006 Plaintiffs nonetheless sought to take a default against Mr. Yamani.  Once again, no notice of this application was served upon Mr. Yamani's counsel, let alone sent to his office in London.

Mr. Yamani's counsel first learned of this via a representative of the Saudi embassy in Washington on April 14, 2006 (*see* Affirmation of Rayner M. Hamilton, attached hereto as Exhibit A) and an immediate request was again made to dismiss the complaints against Mr. Yamani, to remove his name from the list of defendants against whom a default judgment was being sought, or to provide a proper more definite statement.  *See* Mem. at Exs. B and C.  When counsel for these Plaintiffs declined (*see* Mem. at Ex. D), and defaults were entered against Sheikh Yamani, this motion followed.

Since that time, Mr. Yamani has requested several times that the defaults be vacated and that the complaints be dismissed as to him or that his motion to dismiss be addressed on the merits.  *See* Email from Rayner M. Hamilton to Robert T. Haefele (Jun. 16, 2006) (attached hereto as Exhibit B); Email from Rayner M. Hamilton to Robert T. Haefele (Jun. 27, 2006) (attached hereto as Exhibit C); Email from Rayner M. Hamilton to Robert T. Haefele (Jul. 10, 2006) (attached hereto as Exhibit D) (service list from Notice of Electronic Filing omitted).  Although agreeing with other similarly situated defendants to do just exactly that (*see, e.g.*, Stipulation and Order Vacating the Default Entered Against Abdullah Bin Khalid Al-Thani (Jul. 7, 2006) (MDL Docket #1852); Stipulation and Order to Vacate Default Judgment Against Sheikh Yusef al Qaradawi (Jul. 10, 2006) (MDL Docket #1853)), Plaintiffs have refused to treat Mr. Yamani in a similar manner.  Indeed, yet again Plaintiffs' counsel has failed even to respond to Mr. Yamani's requests, thereby burdening this Court with a motion addressing

defaults that are void for this Court's lack of personal jurisdiction and taken on claims which Plaintiffs' counsel know are not viable.

Based upon the authorities set forth below and in Mr. Yamani's original Memorandum in support of this motion, Mr. Yamani requests that the defaults entered against him in the *Burnett*, *Euro Brokers*, and *World Trade Center Properties* actions be set aside, and that the complaints in those actions be dismissed in their entirety as to him.

## ARGUMENT

### I. DEFAULT JUDGMENTS ARE VOID AND MUST BE VACATED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER MR. YAMANI

Plaintiffs devote nearly all of their Opposition to a discussion of the Rule 60(b) standard to set aside a default judgment. Yet, Plaintiffs discussion is misplaced. Plaintiffs entirely ignore and fail to address Mr. Yamani's argument that the defaults should not just simply be set aside. Indeed, the defaults are void and *must* be vacated because of this Court's lack of personal jurisdiction over him. *See* Mem. at 7.

No doubt Plaintiffs fail to address Mr. Yamani's argument because, in light of this Court's previous rulings, Plaintiffs know they cannot make a *prima facie* factual showing that personal jurisdiction exists on the single paragraph of allegations they have made against Mr. Yamani. *See* Mem. at 10-14. Plaintiffs have failed to allege that Mr. Yamani had *any* U.S. contacts (*see id.* at 11) and this Court has already found that purported inclusion on the so-called "Golden Chain" cannot establish personal jurisdiction on either a conspiracy (*see id.* at 11-12) or a "purposefully directed" conduct (*see id.* at 12-13) theory. *See also Terrorist Attacks I*, 349 F. Supp. 2d at 818. Plaintiffs make no attempt whatsoever to refute these points in their Opposition.

6

Where, as here, a court lacks jurisdiction over a party, any judgment rendered against that party is void and the court has no discretion and must vacate the judgment. *See Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 193 (2d Cir. 2006) ("A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."); *see also Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub., Inc.*, 99 F. Supp. 2d 450, 455 (S.D.N.Y. 2000) ("[I]f void, the court must vacate the judgment."). Having failed to establish this Court's personal jurisdiction over Mr. Yamani, Plaintiffs do not—indeed cannot— challenge the reality that any default judgment against Mr. Yamani is void and must be vacated.

## II. ENTRIES OF DEFAULT SHOULD BE VACATED BASED ON PLAINTIFFS' CONDUCT AND DELAY, LACK OF PREJUDICE TO PLAINTIFFS, AND MR. YAMANI'S MERITORIOUS DEFENSES

Plaintiffs' concede that the Second Circuit applies the same three criteria—whether the default was willful, whether setting aside the default would prejudice the adversary, and whether a meritorious defense is presented—with regard to setting aside entry of default under Rule 55(c), except those factors are applied less rigorously in setting aside entry of default. Opp'n at 9-10 (*citing Enron Oil Corp. v. Diahuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Notably, the Second Circuit also observed in *Enron Oil* that because there is a "preference for resolving disputes on the merits," doubts "should be resolved in favor of the defaulting party." 239 F.3d at 95, 96; *see also Pecarseky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 175 (2d Cir. 2001) ("It is well established that default judgments are disfavored. A *clear preference* exists for cases to be adjudicated on the merits." (emphasis added)) (citing cases).

### A. Plaintiffs Ignore Their Own Conduct And Delay

Plaintiffs attempt to disparage Mr. Yamani and his counsel's actions without addressing how Plaintiffs' and Plaintiffs' counsel's own actions have contributed to the present situation.

7

*See* Opp'n at 9. As discussed above and in the opening brief, Plaintiffs failed even to attempt personal service on Mr. Yamani, have improperly served Mr. Yamani by publication, repeatedly refused to respond to communications from Mr. Yamani's counsel, defaulted on their own obligation under Case Management Order No. 2 to file a more definite statement within 30 days of a request from Mr. Yamani's counsel to do so, and rebuffed Mr. Yamani's requests to vacate the defaults by stipulation as has been done with other defendants. The Court should not overlook such conduct when balancing the factors to set aside defaults—particularly when this Court's previous rulings clearly establish that Plaintiffs cannot establish personal jurisdiction over Mr. Yamani or successfully state a valid claim against him. *See Leab v. Streit*, 584 F. Supp. 748, 754 (S.D.N.Y. 1984) ("Motions to vacate default judgments . . . are to be granted *liberally*, so that a trial on the merits may be had and justice done." (emphasis added)) (*citing Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) (stating "all doubts should be resolved in favor of those seeking relief")); *see also Enron Oil*, 239 F.3d at 95, 96.

### B. Plaintiffs Fail To Articulate Prejudice They Will Suffer By Vacating Defaults

The purported prejudice that Plaintiffs cite—the possible degradation of evidence over time, loss of evidence, difficulties of discovery, the potential unavailability of witnesses in the future (*see* Opp'n at 10-11)—are entirely speculative and unspecific. Such concerns could arise in any case and indeed apply equally to all defendants in this case where many motions to dismiss remain pending. Indeed, these and other Plaintiffs' willingness to vacate defaults by stipulation with other defendants (*see, e.g.*, Stipulation and Order Vacating the Default Entered Against Abdullah Bin Khalid Al-Thani (Jul. 7, 2006) (MDL Docket #1852); Stipulation and Order to Vacate Default Judgment Against Sheikh Yusef al Qaradawi (Jul. 10, 2006) (MDL Docket #1853)) demonstrates the lack of prejudice Plaintiffs will suffer if the defaults against Mr. Yamani are also vacated. None of these supposed concerns warrants this Court departing

8

from the preference of adjudicating Mr. Yamani's case on the merits, which will result in dismissal of the complaints against Mr. Yamani for the Court's lack of personal jurisdiction and Plaintiffs' failure to state any claim.

### C. Plaintiffs Concede That Mr. Yamani Has Meritorious Defenses

Even though Plaintiffs "do not concede the merits of [Mr. Yamani]'s defenses, plaintiffs recognize that defendant has alleged such claims and need not actually establish that he will prevail on them." Opp'n at 11. As fully argued in the opening brief, Mr. Yamani has not only established that he has meritorious defenses, but that he is likely to prevail on such defenses when the Court applies the same reasoning it has already adopted in its previous rulings as to identical allegations and similarly situated defendants. *See* Mem. at 6-7, 8-17.

### III. PLAINTIFFS CANNOT DISTINGUISH MR. YAMANI FROM DEFENDANTS THAT THIS COURT HAS ALREADY DISMISSED

As fully argued in the opening brief and wholly unrebutted by Plaintiffs in their Opposition, Plaintiffs' allegations against Mr. Yamani are identical to allegations against other defendants that this Court has dismissed. *See* Mem. at 10-14. Moreover, Plaintiffs' allegations consist of vague, conclusory, and/or utterly irrelevant claims, which Plaintiffs do not even mention or attempt to defend in their Opposition. *See* Mem. at 8-10, 14-16. For all the reasons set forth in the opening brief, Plaintiffs have failed to establish personal jurisdiction over Mr. Yamani and have failed to state valid claims against him.

## **CONCLUSION**

For the foregoing reasons and those set forth in Mr. Yamani's opening brief, (1) the defaults entered in the *Burnett* (03-CV-9849), *Euro Brokers*, and *World Trade Center Properties* actions should be vacated; and (2) the *Burnett* (03-CV-5738 and 03-CV-9849), *Euro Brokers*, and *World Trade Center Properties* Complaints should be dismissed, in their entirety, as to Mr. Yamani.


Dated:  July 31, 2006                                    Respectfully submitted,
        New York, New York

                                                         By: /s/ Rayner M. Hamilton
                                                             Rayner M. Hamilton (RH-7742)
                                                             Attorney-at-Law
                                                             1155 Avenue of the Americas
                                                             New York, New York  10036
                                                             Telephone: (212) 819-8822

                                                         *Attorney for Ahmed Zaki Yamani*