**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br><br>*Ashton et al. v. Al Qaeda et. al., 02-cv-6997 (RCC)* | 03 MDL 1570 (RCC)<br><br>ECF Case |

<u>**ASHTON PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO DISMISS OF DEFENDANT TADAMON ISLAMIC BANK**</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL BACKGROUND ......................................................................................... 1

        A.      Tadamon Islamic Bank's Connections to Al Qaeda and
                International Terror ............................................................................................ 1

        B.      Connections Between Tadamon & Al Shamal Islamic Bank,
                Al Qaeda Supporter .......................................................................................... 2

        C.      Connections Between Tadamon & Faisal Islamic Bank Sudan,
                Al Qaeda Supporter .......................................................................................... 3

III.    PLAINTIFFS STATE CLAIMS AGAINST TADAMON ISLAMIC BANK
        UPON WHICH RELIEF CAN BE GRANTED .............................................................. 4

        A.      Applicable Legal Standard ................................................................................ 4

                1.      Standard for Granting Motions to Dismiss .............................................. 4

                2.      The Liberal Requirements of Notice Pleading ......................................... 4

        B.      Plaintiffs Have Properly Pled Claims Against Tadamon ...................................... 7

                1.      Plaintiffs State Claims Against Tadamon Under
                        The Anti-Terrorism Act .......................................................................... 8

                2.      Plaintiffs State Claims Against Tadamon Under
                        The Alien Tort Claims Act ..................................................................... 9

                3.      Plaintiffs State Common Law Claims Against Tadamon .......................... 9

                4.      Tadamon's Involvement With Al Qaeda Goes Beyond
                        Ordinary Banking Services ..................................................................... 9

                5.      Plaintiffs Have Sufficiently Pled Causation ........................................... 11

III.    THE UNITED STATES HAS PERSONAL JURISDICTION OVER
        TADAMON ISLAMIC BANK ..................................................................................... 13

        A.      Applicable Legal Standard .............................................................................. 13

        B.      This Court Has Personal Jurisdiction Over Tadamon Islamic Bank
                Who Knowingly & Intentionally Provided Financial Support
                To Al Qaeda To Attack America ..................................................................... 13

        C.      This Court Has Personal Jurisdiction Over Tadamon Islamic Bank
                Who Knew & Intended That The Acts Of Its Al Qaeda Co-Conspirators
                Would Impact America .................................................................................. 15

IV.     CONCLUSION .......................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Andre Emmerich Gallery v. Segre,*
   1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. 1997) ............................................. 15, 16

*Ball v. Metallurgie Hoboken Overpelt, S.A.,*
   902 F.2d 194 (2d Cir. 1990), cert. denied.............................................. 13

*Boim v. Quaranic Literacy Institute,*
   291 F.3d 1000 (7th Cir. 2002) ........................................................... 1, 8, 9

*Bush v. Buchman, Buchman & O'Brien Law Firm,*
   11 F.3d 1255 (5th Cir. 1994) ........................................................... 14

*Chance v. Armstrong,*
   143 F.3d 698 (2d Cir. 1998), *aff'd on appeal after remand* .......................... 4

*Combs v. Adkins & Adkins Coal Co.,*
   597 F.Fupp. 122 (D.D.C. 1984) ........................................................ 13

*Conley v. Gibson,*
   355 U.S. 41 (1957) ...................................................................... 4, 5

*DiStefano v. Carozzi N. America,*
   286 F.3d 81 (2d Cir. 2001) ............................................................. 13

*Dixon v. Mack,*
   507 F.Supp. 345 (S.D.N.Y. 1980) ..................................................... 15, 16

*Estates of Ungar ex rel. Strachman v. Palestinian Authority,*
   153 F.Supp.2d 76 (D.R.I. 2001) ....................................................... 14

*Geiser v. Petrocelli,*
   616 F.2d 636 (2d Cir. 1980) ............................................................. 4

*In re Magnetic Audiotape Antitrust Litigation,*
   334 F.3d 204 (2d Cir. 2003) ........................................................... 13

*In re Terrorist Attacks on September 11, 2001,*
   349 F.Supp.2d 765 (S.D.N.Y. 2005) ......................................... 8, 9, 11, 12, 14, 15

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ………………………….................….............……………......... 15

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993) ………………………………………………….................. 14

*Leatherman v. Tarrant County*,
    507 U.S. 163 (1993) …………………………………………………...........…………... 5

*Linde at al. v. Arab Bank, PLC*,
    2005 U.S. Dist. LEXIS 18864 (E.D.N.Y. September 2, 2005) ….......…..... 6, 7, 9, 10, 11

*Mwani v. Bin Laden*,
    2005 WL 1844423 (D.C. Cir. Aug. 5, 2005) ………………………….............……... 14, 15

*Pelman v. McDonald's Corporation*,
    396 F.3d 508 (2d Cir. 2005) …………………………………………….................. 5, 12

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002) (per curiam) ……………………………….......…... 4, 5, 6

*SEC v. Carrillo*,
    115 F.3d 1540 (11th Cir. 1997) …………………………………………......……….. 14

*Sparrow v. United Airlines*,
    216 F.3d 1111 (D.C. Cir. 2000), *appeal dismissed after remand* …………...........….… 5

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002) …………………………………………………...........………... 5, 12

*Twombley v. Bell Atlantic Corporation*,
    425 F.3d 99 (2d Cir. 2005) ………………………………………...........….…………… 6

*Warren v. District of Columbia*,
    353 F.3d 36 (D.C. Cir. 2004) ……………………………………...........…………… 7

*Woodford v. Community Action Agency*,
    239 F.3d 517 (2d Cir. 2001) ……………………….……………………......…..……… 4

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) …………………………………………...........……....…… 4

**FEDERAL STATUTES**

Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 ……..…………........…………………...1, 8, 9

Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq* ...……………..…..…………… 1, 7, 8, 9, 14

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2) ……………………………...………..............…………..…….…..... 5, 12

Fed. R. Civ. P. 9(b) ……………………………………………….......………………….…... 5

Fed. R. Civ. P. 12(b)(2) …………………………………………...............…………….…... 13

Fed. R. Civ. P. 12(b)(6) ……………………………...………..........…………….......…… 4, 5, 12

**MISCELLANEOUS**

*Ashton* Sixth Amended Complaint ……………….....……………….....…….... 1, 2, 3, 8, 10, 11

Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1218 (3d ed. 2004) ……………….............…..…... 7

I.     **INTRODUCTION**

Plaintiffs state valid claims against defendant Tadamon Islamic Bank ("Tadamon") for

knowingly providing financial support to Al Qaeda's global conspiracy to launch terror attacks

on the United States, of which the September 11, 2001 Attacks were a natural, intended and

foreseeable result.  By these allegations, Plaintiffs state claims against Tadamon under the Anti-

Terrorism Act ("ATA"), the Alien Tort Claims Act ("ATCA"), and various common law tort

theories.  *Boim v. Quranic Lit. Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("The only way to

imperil the flow of money and discourage the financing of terrorist acts is to impose liability on

those who knowingly and intentionally supply the funds to the persons who commit the violent

acts.").  Hence, Tadamon is subject to civil liability in this United States Court for knowingly

providing financial support to Al Qaeda and its motion to dismiss should be denied.

II.    **FACTUAL BACKGROUND**

A.     **Tadamon Islamic Bank's Connections to Al Qaeda and
       International Terror**

Tadamon is a Sudanese banking corporation that has been active throughout the Sudan

since it began operations in 1983.  *Ashton* Sixth Amended Complaint ("6AC") ¶ 55.  Plaintiffs

allege that Tadamon knowingly and intentionally provided material support in the form of

financial services to Al Qaeda and its army of international terrorists, including maintaining and

servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda.  *Ashton* 6AC

¶ 57.

Specifically, testimony from former Al Qaeda financier and expert government witness

Jamal Ahmed Mohamed-al-Fadl confirms that Tadamon knowingly maintained bank accounts

for Al Qaeda operatives.  *Ashton* 6AC ¶ 57.  During the 2001 trial regarding the 1998 Embassy

1

bombings in Africa, al-Fadl testified that Abdouh al Mukhlafi, then Osama Bin Laden's bodyguard, held a bank account at Tadamon, using the bank at Bin Laden's request. *Ashton* 6AC ¶ 57.

### B. Connections Between Tadamon & Al Shamal Islamic Bank, Al Qaeda Supporter

Because Al Shamal Islamic Bank ("Al Shamal") has been closely linked to Tadamon, as well as other terrorist entities, its activities must be considered along with those of Tadamon in determining this motion to dismiss. Al Shamal is a financial institution used extensively for Al Qaeda operations in Sudan. *Ashton* 6AC ¶ 58. Tadamon itself joined the Board of Directors of Al Shamal in July of 1988, and has been a major shareholder since March of 1986. *Ashton* 6AC ¶ 58.

Osama Bin Laden and wealthy National Islamic Front ("NIF") members capitalized Al Shamal, along with other businesses in Sudan, to provide the perception of legitimacy in order to mask their preparations for terror. *Ashton* 6AC ¶ 38. As stated in a 2002 Congressional Research Service Report:

> [In Sudan], in concert with NIF leaders, Bin Laden built a network of businesses, including an Islamic Bank (Al Shamal) ... The business in Sudan ... enabled him to offer safe haven and employment in Sudan to Al Qaeda members, promoting their involvement in radical Islamic movements in their countries of origin as well as anti-US terrorism.

*Ashton* 6AC ¶ 39.

The chairman of Al Shamal, Adel Abdul Jalil Batterjee ("Batterjee"), is also the Chairman of Al Bir Al Dawalia, whose United States branch, Benevolence International Foundation ("BIF"), is another front for Al Qaeda sponsorship. Both Batterjee and BIF have been listed as Specially Designated Global Terrorists by the US Department of the Treasury.

2

*Ashton* 6AC ¶ 43.  BIF accounts at Al Shamal were used for the benefit of Al Qaeda from 1991 until 2002.  *Ashton* 6AC ¶ 48.

Mohammad S. Mohammad, General Manager of Al Shamal, acknowledged in a November 2001 report to the United Nations that Osama Bin Laden held two accounts at Al Shamal in the name of Al Hijrah Construction and Development Ltd.  This company, according to the United States Department of State, worked directly with Sudanese military officials to transport and provide provisions to terrorists training in Osama Bin Laden's terrorist training camps in northern Sudan.  *Ashton* 6AC ¶ 44.

Jamal Ahmed al-Fadl also testified that Al Qaeda operatives received monthly checks of several hundred dollars from Al Shamal bank accounts and that while working as an Al Qaeda financier, he transferred $100,000.00 from Al Shamal to an Al Qaeda representative in Jordan. *Ashton* 6AC ¶ 47.

C.    **Connections Between Tadamon & Faisal Islamic Bank Sudan, Al Qaeda Supporter**

Faisal Islamic Bank Sudan ('Faisal") is a central shareholder of Tadamon.  *Ashton* 6AC ¶ 42, 56.

Faisal was instrumental in founding Al Shamal in April of 1984, and remains a major shareholder in Al Shamal.  *Ashton* 6AC ¶ 41.  Faisal was also implicated as an Al Qaeda sponsor during the 2001 trial regarding the 1998 embassy bombing in Africa.  Al Fadl testified:

> Q: Where were the accounts [of Al Qaeda] held? In what countries?
> A: We [have] got an account in Bank Faisal Islami [Faisal Islamic Bank].
> Q: Is that also in Khartoum?
> A: Yes.

*Ashton* 6AC ¶ 50.

3

### III.   PLAINTIFFS STATE CLAIMS AGAINST TADAMON ISLAMIC BANK UPON WHICH RELIEF CAN BE GRANTED

#### A.   Applicable Legal Standard

##### 1.   Standard for Granting Motions to Dismiss

Tadamon moves to dismiss the *Ashton* Sixth Amended Complaint ("6AC"), pursuant to

Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  Such a

motion merely tests the legal sufficiency of the Complaint and must be denied unless "it appears

beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Wynder v. McMahon*, 360

F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per

curium).  The Court's role is "not to assay the weight of the evidence which might be offered in

support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geiser*

*v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the

facts alleged in the 6AC and draw all reasonable inferences in favor of them.  *Wynder*, 360 F.3d

at 78; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading

stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be

avoided." *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001).  The issue

on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether

the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d

698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir.1998).

##### 2.   The Liberal Requirements of Notice Pleading

A motion pursuant to Fed. R. Civ. P. 12(b)(6) is analyzed in the context of the

4

requirements of Fed. R. Civ. P. 8(a)(2), which allows for notice pleadings. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-3 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512. (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.2d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2000 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion). Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-9 (1993); *see also Pelman v. McDonald's Corp.*, 396 F.3d 508, 512-3 (2d Cir. 2005) (plaintiff need not draw causal connection between allegations and injuries in the complaint, but rather may rely on discovery to flesh out claim).

Recent cases underscore and reaffirm these principles. In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment. 308 F.3d at 182. Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet defendants had placed him on was inadequate and would cause pain and suffering. *Id.* The District Court dismissed the complaint, finding that it failed to state a claim, in part because the court found plaintiff's allegations of the requisite *scienter* (deliberate indifference) too conclusory. *Id.* at 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to

5

require that the plaintiff supplement his pleadings with additional facts that support his allegation

of knowledge either directly or by inference." *Id.* at 186-7. Moreover, the Court explained that

dismissal was improper because through discovery, the plaintiff might uncover direct evidence to

support his allegations. *Id.* At 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point,
> courts must take care lest judicial haste [in dismissing a case] in the long run
> makes waste. Untimely dismissal may prove wasteful of the court's limited
> resources rather than expeditious, for it then often leads to a shuttling of the
> lawsuit between the district and appellate courts.

*Id.* at 185 (internal citations omitted).

Likewise, in *Twombley v. Bell Atlantic Corp.*, 425 F.3d 99, 107 (2d Cir. 2005), the

Second Circuit reversed a district court decision applying higher pleading standards than those

set forth in Rule 8, holding that "[a] requirement of greater specificity for particular claims is a

result that must be obtained by the process of amending the Federal Rules, and not by judicial

interpretation." In the context of anti-trust pleading, the Court reminded that "although litigation

... may place substantial financial and other burdens on the defendants, neither the Federal Rules

nor the Supreme Court has placed on plaintiffs the requirement that they plead with special

particularity the details of the conspiracies whose existence they allege." *Id.* at 116.

Finally, in *Linde et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D.N.Y.

September 2, 2005), the United States District Court for the Eastern District of New York

rejected the defendant's request to impose a heightened pleading requirement in a case presenting

claims nearly identical to those at issue here. In *Linde*, the plaintiffs brought claims against Arab

Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic

Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations. *Id.*

6

at *11-23. Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act ("ATA") and common law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent." *Id.* at *42. The Court rejected this argument, reasoning "defendant attempts to impose a standard of pleading beyond that required by the rules. It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof." *Id.* at *50.

Tadamon's protestation that the allegations are too "conclusory" misapprehends the proper pleading standard, which requires at this stage of the litigation only fair notice of the relevant allegations, to be fleshed out more fully following full and proper discovery. Indeed, the D.C. Circuit recently addressed this issue in reversing the dismissal of a complaint in which the plaintiff did not plead "facts" establishing knowledge. *Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004). Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held: "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the [defendant] was conclusory. Many well-pleaded complaints are conclusory. And while we do not have to accept conclusions of law as true, conclusions of fact are another matter." *Id.* at 39. (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1218 at 276 (3d ed. 2004) ("[I]t must be remembered that the federal rules require a short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any difference whether the pleader accomplishes this by stating 'conclusions,' 'ultimate facts,' or 'evidence'")).

## B.    Plaintiffs Have Properly Pled Claims Against Tadamon

Tadamon claims that Plaintiffs' complaint fails to state a claim against Tadamon for

7

which relief can be granted.  This contention lacks merit, as Plaintiffs have sufficiently pled

claims against Tadamon under the Anti-Terrorism Act, the Alien Tort Claims Act, and various

common law tort theories.  Additionally, Tadamon claims that their involvement with Al Qaeda

was limited to the provision of "ordinary banking services."  Finally, Tadamon questions whether

causation has been properly pled.  We now address each contention in turn.

> 1.   Plaintiffs State Claims Against Tadamon Under
>      The Anti-Terrorism Act

Under the Anti-Terrorism Act ("ATA")[1], a defendant is liable if it provided any material

support to Al Qaeda with knowledge of its terrorist agenda, or if it aided and abetted Al Qaeda or

Osama Bin Laden in their course of terrorist conduct, resulting in harm to the plaintiff.  *See*

*Boim*, 291 F.3d at 1014-16.  Like the Seventh Circuit in *Boim*, this Court has already recognized

that under the ATA, "material support includes money [and] financial services[.]" *In re Terrorist*

*Attacks on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005).  As demonstrated

above, Plaintiffs have alleged that Tadamon knowingly and intentionally provided financial

services to Al Qaeda by allowing terrorist operatives to control significant assets of the bank.

*Ashton* 6AC ¶ 47.

Moreover, the ATA entails conspiracy and aiding and abetting liability.  Put by the *Boim*

court:

> [I]f we failed to impose liability on aiders and abettors who knowingly and
> intentionally funded the acts of terrorism, we would be thwarting Congress'
> clearly expressed intent to cut off the flow of money to terrorists at every point
> along the causal chain of violence. [A]iding and abetting liability is both
> appropriate and called for by the language, structure and legislative history of

---

[1]The ATA provides for a civil action for "[a]ny national of the United States injured in his person, property, or business by reason of an act of international terrorism[.]" 19 U.S.C. § 2331 *et seq.*

[ATA] section 2333.[2]

*Boim*, 291 F.3d at 1021. Because the pleaded facts show that Tadamon deliberately provided support to Al Qaeda, with knowledge that Al Qaeda was waging war on America, Tadamon is subject to aiding and abetting liability under the ATA.

### 2. Plaintiffs State Claims Against Tadamon Under The Alien Tort Claims Act

Alien-plaintiffs state a viable claim against Tadamon under the Alien Tort Claims Act ("ACTA"), 28 U.S.C. § 1350. This Court has already resolved that "aircraft hijacking is generally recognized as a violation of international law" actionable under the ATCA. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 826. Hence, because plaintiffs allege that Tadamon aided and abetted Al Qaeda in launching the September 11 attacks using hijacked aircraft, the alien-plaintiffs may assert tort claims under the ATCA against Tadamon.

### 3. Plaintiffs State Common Law Claims Against Tadamon

Finally, Plaintiffs' state valid common law claims for assault and battery, wrongful death, survival, and property destruction against Tadamon. Any claims Tadamon could make that Plaintiffs have failed to allege causation as to these claims would merely be a repetition of Tadamon's argument with respect to the ATA and causation generally, and should be rejected for the reasons described above.

### 4. Tadamon's Involvement With Al Qaeda Goes Beyond Ordinary Banking Services

Tadamon's knowing support of Osama bin Laden through the years, both directly and through other institutions it influenced or allowed to influence it, is far more than mere "ordinary

---

[2]Reviewing the legislative history, the Seventh Circuit concluded: "All of this history indicated an intent by Congress to allow a plaintiff to recover from anyone along the causal chain of terrorism." *Boim*, 291 F.3d at 1011.

9

banking services." Contrary to Tadamon's contentions, civil liability in this jurisdiction can be

premised on the knowing provision of financial services to avowed terrorists. In *Linde et al. v.*

*Arab Bank, PLC*, 384 F.Supp.2d 571 (E.D.N.Y. 2005), Arab Bank, like the instant defendant,

attempted to recast plaintiffs' allegations as evidence of merely "routine banking services."

In her September 2, 2005 order, Judge Nina Gershon properly disagreed, and held:

> [N]othing in the complaints suggests that Arab Bank is a mere unknowing
> conduit for the unlawful acts of others, about whose aims the Bank is ignorant.
> Although the Bank would like this court to find that it is engaged in routine
> banking services ... given plaintiffs' allegations regarding the knowing and
> intentional nature of the Bank's activities, there is nothing 'routine' about the
> services the Bank is alleged to provide.

*Linde*, 384 F.Supp.2d at 588. As the allegations against Arab Bank in the *Linde* case, plaintiffs

have herein pled that Tadamon knew and intended that the financial services it provided to

various organizations and individuals, including associates of Osama Bin Laden, were to be used

for conducting acts of international terrorism. *Ashton* 6AC ¶ 47.

In addition, the allegations regarding the interrelatedness of the entities involved in

assisting Al Qaeda and facilitating Al Qaeda's growth in Sudan only reinforce Tadamon's

knowledge and intent to further the conspiracy.

This factual basis determines that Tadamon fits within the existing framework for

establishing conspiracy liability against banks for terrorist support, as the *Linde* decision affirms:

> As to conspiracy, [plaintiffs] adequately allege that Arab Bank knowingly and
> intentionally agreed to provide services to organizations it knew to be terrorist
> organizations and that [plaintiffs] were injured by an overt act which was done in
> furtherance of the common scheme. It is not necessary that [plaintiffs] allege that
> Arab Bank either planned, or intended, or even knew about the particular act
> which injured a plaintiff. The factual allegations of the complaints sufficiently
> support an inference that Arab Bank and the terrorist organizations were
> participants in a common plan under which Arab Bank would supply necessary
> financial services to the organizations which would themselves perform violent

10

acts.

*Linde*, 384 F.Supp.2d at 584. Plaintiffs have sufficiently pled that Tadamon knew it was

assisting Osama Bin Laden and Al Qaeda, and knew or should have known that their actions in

furtherance of the conspiracy to commit acts of international terrorism against the United States,

its nationals and allies, including the September 11, 2001 attacks, would result in the murder of

innocent persons, leaving family members with severe and permanent physical, psychological,

and emotional injuries. Nothing more is required at the pleadings stage.

> 5.     Plaintiffs Have Sufficiently Pled Causation

Tadamon claims that Plaintiffs have not presented sufficient allegations to link

Tadamon's conduct to plaintiffs' injuries. Tadamon misinterprets what this court has held, and

what the law requires. Plaintiffs allege that Tadamon's knowing provision of financial support

and assistance to Al Qaeda was a proximate cause of the September 11 attacks. This Court has

already resolved that "[i]n light of Al Qaeda's public acknowledgments of its war against the

United States, the September 11 attacks may be the natural and probable consequence of

knowingly and intentionally providing material support to Al Qaeda." *In re Terrorist Attacks on*

*September 11, 2001*, 349 F.Supp.2d at 826; *accord, Ashton* 6AC ¶ 478 ("Defendants provision of

material support and assistance to Bin Laden and Al Qaeda ... caused substantial injuries to the

persons, property, and business of plaintiffs and plaintiffs' decedents.").

Additionally, proximate cause may be supported by plaintiff's allegations that Tadamon

aided and abetted or conspired with the Al Qaeda terror network leading up to the September 11

attacks: "[A]ll those who, in pursuance of a common plan or design to commit a tortious act,

actively take part in it, or further it by cooperation or request, or who lend aid or encouragement

to the wrongdoer ... are equally liable with him." *In re Terrorist Attacks on September 11, 2001*,
349 F.Supp.2d at 826.

The Second Circuit recently addressed the causation issue again in *Pelman v.
McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005). The District Court had dismissed the case
under Rule 12(b)(6) because, it ruled, plaintiffs had failed to "draw an adequate causal
connection between their consumption of McDonald's food and their alleged injuries." *Id.* at
511. The Second Circuit vacated the dismissal, and held that the information the District Court
found to be missing in the complaint was "the sort of information that is appropriately the subject
of discovery, rather than what is required to satisfy the limited pleading requirements of Fed. R.
Civ. P. 8(a)". *Id.* at 512. Quoting the U.S. Supreme Court's unanimous decision in
*Swierkiewicz*, the Second Circuit instructed:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery
> rules and summary judgment motions to define disputed facts and issues and to
> dispose of unmeritorious claims. The provisions for discovery are so flexible and
> the provisions for pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily, synthetic issues
> detected, and the gravamen of the dispute brought frankly into the open for the
> inspection of the court.

*Id.* (*citing Swierkiewicz*, 534 U.S. at 512-3).

Consistent with this holding and other precedent regarding the causation element of
Plaintiffs' claims, Plaintiffs' consistent and specific averments of Tadamon's knowing and
intentional sponsorship of Al Qaeda are, in and of themselves, sufficient to establish causation at
this stage of the litigation.

12

## IV.   THE UNITED STATES HAS PERSONAL JURISDICTION OVER TADAMON ISLAMIC BANK

### A.   Applicable Legal Standard

Tadamon alternatively moves to dismiss the complaint for lack of personal jurisdiction

under Fed. R. Civ. P. 12(b)(2). In this Circuit, the nature of a plaintiff's obligation to allege and

prove personal jurisdiction varies depending upon the procedural posture of the litigation:

> Prior to discovery, a plaintiff challenged by a jurisdictional testing motion may
> defeat the motion by pleading in good faith, legally sufficient allegations of
> jurisdiction. At the preliminary stage, the plaintiff's *prima facie* showing may be
> established solely by allegations. After discovery, the plaintiff's *prima facie*
> showing, necessary to defeat a jurisdiction testing motion, must include averment
> of facts that, if credited by the trier, would suffice to establish jurisdiction over the
> defendant. At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), cert. denied, 498

U.S. 854 (1990) (internal citations omitted).

Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2), a plaintiff

need only present allegations that connect the defendant with the applicable forum - here, the

United States. In deciding such a motion, the plaintiff's jurisdictional averments must be taken

as true. *Ball*, 902 F.2d at 97; *In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206

(2d Cir. 2003). Moreover, the court must construe the pleadings in a light most favorable to the

plaintiff, resolving all doubts in his favor. *DiStefano v. Carozzi N. America*, 286 F.3d 81 (2d Cir.

2001).

### B.   This Court Has Personal Jurisdiction Over Tadamon Islamic Bank Who Knowingly & Intentionally Provided Financial Support To Al Qaeda To Attack America

By knowingly providing financial support to Al Qaeda to attack the United States,

Tadamon subjected itself to the personal jurisdiction of the United States Court, where Tadamon

13

is subject to civil liability under the ATA. Notably, the ATA provides that claims may be brought in "any district where any plaintiff resides" and the process "may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a). Because the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United States." *Bush v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Stachman v. Palestinian Auth.*, 153 F.Supp.2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. 122, 125 (D.D.C. 1984). Because this Court has personal jurisdiction over Tadamon with respect to Plaintiffs' ATA claims, then it may also assert pendent jurisdiction over the remaining claims that derive from the same events. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993).

This court has already resolved that "plaintiffs may rely on their 'purposefully directed' theory to establish minimum contacts." *In re Terrorist Attacks on September 11, 2001*, 395 F.Supp.2d at 806, 809. This "purposefully directed" theory of personal jurisdiction was recently confirmed by the D.C. Circuit in *Mwani v. Bin Laden*, 2005 WL 1844423 (D.C. Cir. Aug. 5, 2005), which arose from Al Qaeda's 1998 bombing attack on the U.S. Embassy in Kenya. The district court had dismissed claims against Osama Bin Laden and Al Qaeda for lack of personal jurisdiction, finding that plaintiffs did not "establish sufficient contacts between the defendants and the [U.S.] to permit exercise of personal jurisdiction ..." *Id.* at *2. The D.C. Circuit reversed, holding that Osama Bin Laden and Al Qaeda were subject to jurisdiction in a United States court because defendants had:

14

> Engaged in unabashedly malignant actions directed at and felt in this forum ... The defendants' decision to purposefully direct their terror at the United States, and the fact that the plaintiffs' injuries arose out of one of those terrorist activities, should suffice to cause the defendants to 'reasonably anticipate being haled into' an American court.

*Id.* at *8-9 (internal citations omitted).

Tadamon supported Al Qaeda operatives and front organizations. This activity subjects Tadamon to personal jurisdiction in this Court because, in providing support to Al Qaeda, which had long publicly announced its intentions to attack the United States, it purposefully directed its conduct here. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 810. Because the pleaded facts give rise to the inference that Tadamon purposefully provided financial support for Al Qaeda attacks targeting the United States, Tadamon ought to be held to account in this United States Court.

### C.    This Court Has Personal Jurisdiction Over Tadamon Islamic Bank Who Knew & Intended That The Acts Of Its Al Qaeda Co-Conspirators Would Impact America

This Court has already resolved that it may exercise personal jurisdiction over foreign defendants pursuant to a conspiracy theory. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 805 ("acts committed in New York by the co-conspirator of an out of state defendant pursuant to a conspiracy theory may subject the out-of-state defendant to jurisdiction").

Imputing the forum acts of their co-conspirators to foreign defendants "supplies the necessary minimum contacts [under] *International Shoe*" to satisfy due process when asserting personal jurisdiction over the foreign defendants. *Dixon v. Mack*, 507 F.Supp. 345, 352 (S.D.N.Y. 1980) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Andre Emmerich Gallery v. Segre*, 1997 U.S. Dist. LEXIS 16899 at *17 (S.D.N.Y. 1997). When

15

foreign defendants enter into a conspiracy knowing that acts of their co-conspirators would impact the forum, such foreign defendants should "reasonably anticipate being haled into court there." *Dixon*, 507 F.Supp. at 352; *Andre Emmerich*, 1997 U.S. Dist. LEXIS at *17.

As shown above, Plaintiffs' 6AC makes a *prima facie* case of conspiracy between Tadamon and Al Qaeda to injure Americans: (I) Tadamon's provision of financial services to Al Qaeda supports an inference that Tadamon and Al Qaeda agreed to injure America through terror attacks; (ii) Tadamon participated in that agreement by knowingly maintaining bank accounts for known terrorists; (iii) the September 11 attacks carried out by Al Qaeda were acts done in furtherance of that agreement; and (iv) the September 11 attacks killed Plaintiffs' decedents. Hence, by imputing the September 11 forum acts of its Al Qaeda conspirators to Tadamon, this court may assert personal jurisdiction over Tadamon.

## V.      CONCLUSION

For the above reasons, Tadamon's motion to dismiss should be denied with prejudice.

Dated: August 4, 2006
       New York, New York                          Respectfully submitted,

                                          KREINDLER & KREINDLER LLP


                                          By:_____/S/_____
                                              James P. Kreindler, Esq. (JK7084)
                                              Justin T. Green, Esq. (JG0318)
                                              Andrew J. Maloney III, Esq. (AM8684)
                                              100 Park Avenue
                                              New York, NY 10017-5590
                                              (212) 687-8181
                                              *Attorneys for Ashton Plaintiffs*