**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br>*Federal Insurance Co. v. al Qaida*, 03-cv-6978 (RCC) | 03 MDL 1570 (RCC)<br><br>ECF Case |

<u>**DEFENDANT SANABEL AL-KHEER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**</u>

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:          202-862-4343
Facsimile:      202-828-4130

*Attorney for Defendant Sanabel Al-Kheer*

## TABLE OF CONTENTS

I.   INTRODUCTION…………………………………………………………..... 1

II.  PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTUAL ALLEGATIONS
     TO SUPPORT THEIR CIVIL CONSPIRACY CLAIMS AND THUS FAIL TO
     ALLEGE A CLAIM FOR WHICH RELIEF CAN BE GRANTED…………………2

III. PLAINTIFFS' ALLEGATIONS AGAINST SANABEL ARE CONCLUSORY
     AND INSUFFICIENT TO STATE A CLAIM…………………………………………3

     A.  To Substantiate Their Conclusory Allegations Plaintiffs Cite Rule 8(a)
         And Distinguishable Case Law……………………………………………….4

     B.  Plaintiffs' Conclusions Are Not Reasonable Inferences Drawn From
         Their Complaints………………………………………………………………7

IV.  PLAINTIFFS' FAIL TO RECOGNIZE THE IMPORTANCE OF
     CAUSATION…………………………………………………………………….....9

V.   CONCLUSION………………………………………………………………………11

## TABLE OF AUTHORITIES

**CASES**

**Anza v. Ideal Steel Supply Corp.**, 126 S. Ct. 1991 (2006) ………..…………………..….9,10

**Asahi Glass Co., Ltd. v. Pentech Pharms., Inc.**, 289 F. Supp. 2d 986 (N.D. Ill. 2003)……….6

**Browning v. Clinton**, 292 F.3d 235 (D.C. Cir. 2002)……………………………………………..7

**Burnett v. Al Baraka Inv.**, 274 F. Supp. 2d 86 (D.D.C. 2003)……………………………..…….4,7

**Chrysler Capital Corp. v. Century Power Corp.**, 778 F. Supp. 1260 (S.D.N.Y. 1991))……...2

**DM Research v. College of Am. Pathologists**, 170 F.3d 53 (1st Cir. 1999)…..……………….6

**Gooley v. Mobil Oil Corp.**, 851 F.2d 513 (1st Cir. 1988)……………………………………….6

**Holmes v. Securities Investor Prot. Corp.**, 503 U.S. 258 (1992)…………………….……..10

**Kelly v. Schmidberger**, 806 F.2d 44 (2d Cir. 1986)……………………………..…………...5

**Kittay v. Kornstein**, 230 F.3d 531 (2d Cir. 2000)……………………………………………5

**Kowal v. MCI Communications Corp.**, 16 F.3d 1271 (D.C. Cir. 1994)………….................7

**Migdal v. Rowe Price-Fleming Int'l**, 248 F.3d 321, 326 (4th Cir. 2001)………………………6

**N.X. v. Cabrini Med. Ctr.**, 97 N.Y.2d 247 (2002)……………………………………………7

**Pelman v. McDonald's Corp.**, 396 F.3d 508 (2d Cir. 2005)…………………………………5

**Salahuddin v. Cuomo**, 861 F.2d 40 (2d Cir. 1988)……..…………………………………...5

**Swierkiewicz v. Sorema**, 534 U.S. 506 (2002)……………………………………………..4

**Terrorist Attacks I**, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)...……………………………passim

**Twombley v. Bell Atlantic Corp.**, 425 F.3d 99 (2d Cir. 2005)…………………………….5,6

**United States v. Arnaout**, 2003 U.S. Dist. LEXIS 1635 (D. Ill. 2003)…………….………..9

**WE Media Inc. v. General Electric Co.**, 218 F. Supp. 2d 463 (S.D.N.Y. 2002)………………7

**RULES**

**Fed. R. Civ. P. 12(b)(6)**...………………………………………………………**passim**

**Fed. R. Civ. P. 9**………………………………………………………………..**7**

**Fed. R. Civ. P.  8(a)**...……………………………………………….......**passim**

**OTHER AUTHORITIES**

**Peter L. Bergen** , *The Osama Bin Laden I Know*, **164 (2006))**………………………………..**14**

# I.     INTRODUCTION.

Defendant Sanabel Al-Kheer (hereinafter "Sanabel") hereby files its Reply Memorandum in support of its Motion to Dismiss the First Amended Federal Insurance Complaint as supplemented by Plaintiffs' RICO (hereinafter referred to collectively as "Complaint").

On page 15 of their opposition, Plaintiffs accuse Sanabel of "woefully miss[ing] the mark" in its underlying motion and not discussing the additional allegations presented in their RICO statement.  (Pls.' Opp'n 15, July 18, 2006.)  Plaintiffs' RICO Statement allegations, however, are just as deficient as their First Amended Complaint allegations because: (1) they fail to support a conspiracy claim; (2) are conclusory; and (3) fail to establish causation.

In their Opposition, Plaintiffs' nine pages of allegations drawn from their Complaint and RICO Statement fail to show any links which suggest a basis for imputing liability to Sanabel, to wit, if Plaintiffs' conspiracy theory fails, all their claims should fail accordingly.  However, assuming arguendo that Plaintiffs' conspiracy argument is embraced by this Court, Rule 12(b)(6) relief is still warranted because Plaintiffs' allegations are no more than legal conclusions and they fail to allege, much less establish, proximate causation.  Sanabel asserts that the deficiency of the Plaintiffs' allegations is not in their quantity, but in their failure to establish any plausible links between Sanabel and 9/11.  Plaintiffs ignore the fundamental requirement that proximate causation need be plausible, and argue that a series of tenuous connections between co-defendants establishes liability for 9/11.  Consequently, the fairness-based protections of Rule 8(a) and Rule 12(b)(6) require dismissal of the Complaint on the basis of these tenuous, conclusory allegations and the aforementioned ground of Plaintiffs' failure to establish the basic elements of a conspiracy claim.

For any or all of the foregoing reasons Defendant's Motion to Dismiss should be granted.

II.    **PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTUAL ALLEGATIONS TO SUPPORT THEIR CIVIL CONSPIRACY CLAIM AND THUS FAIL TO ALLEGE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

In order to present factual allegations sufficient to support their civil tort claims, Plaintiffs had an obligation to frame non-conclusory factual allegations in their Complaint from which this Court could reasonably infer that Sanabel was a part of a vast conspiracy that funded and supported the terrorist attacks of 9/11. Any reading of their Complaint will not support said inference that Sanabel was part of a vast conspiracy with al Qaida, and intended to support and further the 9/11 attacks. In failing to establish that Sanabel was part of an alleged conspiracy that led to or assisted the hijackers in attacking America, Plaintiffs also fail to present any factual allegations that tie, link, or otherwise suggest that Sanabel is liable to Plaintiffs for injuries incurred on 9/11.[1]

Both this Court and well established case law have ruled that "to recover Tort damages on a conspiracy theory, a Plaintiff must establish the commission of a tort and the following four elements: '(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in furtherance of a plan or purpose, and (d) the resulting damage or injury.'" Terrorist Attacks I, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) (citing Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)).

Even if, at this stage of litigation, it is not necessary for Plaintiffs to prove the elements of conspiracy, it *is* necessary, under Rule 12(b)(6), that they present factual allegations that suggest

---

[1] Nowhere in Plaintiffs' counts against the defendants do they allege that Sanabel was directly involved in 9/11. For example, Plaintiffs' Complaint at ¶¶ 611-612 alleges Assault and Battery counts against "all defendants" "as a result of the September 11th Attack." But, without establishing a connection between the "September 11, 2001 highjackings" and Sanabel, the Plaintiffs have made no meritorious allegations directed at Sanabel. The failure to establish conspiracy is crucial to the Plaintiffs' ability to survive the instant motion.

Sanabel had a "corrupt agreement" with al Qaida, that Sanabel intentionally participated in said agreement through an "overt act in furtherance of" said agreement, and that Sanabel's actions resulted in Plaintiffs' injuries.  Even under the most liberal reading of Plaintiffs' Complaint, including their RICO Statement, these necessary factual allegations as to Sanabel are not there. Because Plaintiffs fail to present legally sufficient allegations of conspiracy, their claims against Sanabel must be dismissed.

## III.    PLAINTIFFS' ALLEGATIONS AGAINST SANABEL ARE CONCLUSORY AND INSUFFICIENT TO STATE A CLAIM.

Even if Plaintiffs established a prima facie case of conspiracy, Rule 12(b)(6) relief is still warranted because Plaintiffs' Complaint allegations are no more than legal conclusions.  For example, on the first page of their opposition, Plaintiffs begin their first of numerous conclusions: "Sanabel al Kheer, like IIRO itself, has long knowingly used these funds not for legitimate relief purposes but instead to provide massive support for al Qaida and global terrorism."  (Pls. Opp'n 1-2.)  Undoubtedly, Plaintiffs formed this conclusion from the similar conclusion noted in their First Amended Complaint, i.e., that the Princes[2] "knew and intended that the contributions…made to…Sanabel al-Kheer…would be used to fund al Qaida's global operations and acts of international terrorism." (Pls.' Am. Compl. ¶ 443, Mar. 10, 2004)  In both documents, Plaintiffs fail to follow up these obvious conclusions with specific factual allegations.

In Terrorist Attacks I, this Court specifically noted the conclusory allegations brought against Al Rajhi "do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities… were supporting terrorism."  349 F. Supp. 2d at 833.  This was the case even though the complaint contained allegations that "Al Rajhi knew or had to know that its

---

[2]  Sultan, Naif, Turki, Salman, Abdullah, and Mohamed

depositors … were material supporters of terrorism." <u>Id.</u> at 831.  Here, Plaintiffs allege that

Sanabel "knowingly and intentionally provided al Qaida financial support."  (Pls.' Opp'n 6.)  As

is evident, Plaintiffs' allegations are "once again conclusory" and so disconnected and attenuated

that Sanabel cannot be held liability for the 9/11 tragedy.[3]

Because Plaintiffs' allegations are conclusory they are not sufficient to withstand

Sanabel's Rule 12(b)(6) motion.

**A.  <u>To Substantiate Their Conclusory Allegations Plaintiffs Cite Rule 8(a) And Distinguishable Case Law.</u>**

Plaintiffs have repeatedly referred to <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002) to

support their contention that the requirements of notice pleading are "liberal".  However,

Plaintiffs fail to acknowledge two points:  (1) that <u>Swierkiewicz</u> discusses an exception to Rule 8

vis-à-vis Rule 9 (<u>Id.</u> at 513); and (2) that the "extreme nature" of the instant terrorism conspiracy

case may in fact require a heightened pleading standard.

Both this Court and Judge Robertson have noted that the instant mass tort case is exactly

that – *a mass tort case* that involves hundreds of defendants.  This Court recognized this

distinction during oral arguments and when Plaintiffs' <u>Swierkiewicz</u> argument was then

presented.  (<u>See</u> Oral Argument Trial Tr. 68:1-5, 17, Oct. 14, 2004.)  The Court again noted this

distinction in <u>Terrorist Attacks I</u> when it held that "[w]hile applying the liberal notice pleading

requirements of Rule 8, the Court notes that in light of the 'extreme nature of the charge of

terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular

---

[3]  This language comes from Magistrate Judge Maas's Discovery Order issued on July 28, 2006, wherein he found that the <u>Burnett</u> Plaintiffs' discovery requests presented were "[o]nce again … 'conclusory'". (Disc. Order 10, June 28, 2006.)  To illustrate the conclusory nature of a particular allegation Judge Maas provided the following example  "in addition to the sort of boilerplate that the plaintiffs recited in their discussion of the other banks, the <u>Burnett</u> complaint referred to a '1999 United States Senate Report on the [Bank of Credit and Commerce International] scheme [which] detailed the role of [NCB] in hiding assets, money laundering, the cover-up and obstruction of a Senate investigation, and sponsoring international terrorism.'"  (Disc. Order 10.)

defendant, to ensure that he-or it-does indeed have fair notice of [the claims].'" 349 F. Supp. 2d at 831 (citing Burnett I, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003).

Furthermore, even if the requirements of notice-pleading are "liberal", a complaint must still provide enough information and detail to enable defendants to respond and defend. Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). Fairness is the rationale behind these requirements (i.e. information and detail) such that defendants like Sanabel may have a *fair* understanding of what the plaintiffs are complaining about and whether there is even a legal basis for recovery. Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (emphasis added). As to the "short and plain statement" requirement of Rule 8(a), the principal purpose of the statement is to give *fair* notice to enable an adverse party to answer and prepare for trial. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

Despite the foregoing, Plaintiffs cite Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) as support for their contention that causal connections between their allegations and their injuries need not be drawn until after discovery, *and*, Twombley v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005) as further support for their contention that a district court may not add [or] create higher pleading standards than those set forth in the Federal Rules. (See Pls.' Opp'n 13.) These repetitive arguments, which have been presented to this Court for the past two years, are readily distinguishable.

First, Plaintiffs' 'wait until discovery' argument derived from Pelman, serves to circumvent the requirement of proximate causation in an effort to conduct a costly fishing expedition in the name of discovery. [4] This Court should know, and can take judicial notice, that counsel for Sanabel also represents the International Islamic Relief Organization (IIRO), which has been served with extremely burdensome discovery requests and has received preliminary

---

[4] See infra. Pt. IV (B) and accompanying text for additional proximate causation analysis.

scanning and copying estimates in the $500,000-$1,000,000 range.  Thus, the rationale behind 'wait until discovery' as applied in <u>Pelman</u> is simply not an appropriate reference in the instant case.

Second, and as to their <u>Twombley</u> argument on page 13 of their Opposition, Plaintiffs fail to mention that the Second Circuit also opined that, "*a barebones statement of conspiracy or of injury under antitrust laws without any supporting facts <u>permits</u> dismissal.*"  <u>Twombley</u>, 428 F.3d at 109 (emphasis added).  <u>Twombley</u> also articulated the common sense approach that this Court should adopt: "[m]inimal requirements are not tantamount to nonexistent requirements," (<u>Id.</u> at 109) (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988)), and require that "*<u>some threshold of plausibility</u> must be crossed at the outset before a [ ] case should be permitted to go into its inevitably costly and protracted discovery phase.*"  <u>Id.</u> at 111 (emphasis added) (quoting J. Posner in <u>Asahi Glass Co., Ltd. v. Pentech Pharms., Inc.</u>, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)).  Since the <u>Twombley</u> court clearly stated that this "plausibility" requirement is no different for anti-trust claims than it is for other claims subject to Rule 8(a) notice pleading requirements, (<u>Id.</u> at 107), Sanabel submits that Plaintiffs should also meet this plausibility standard before both parties are forced into what will be an "inevitably costly and protracted discovery phase," (<u>Id.</u> at 111) based only on Plaintiffs' specious allegations.

The few facts presented herein are so unrelated to the counts charged as to suggest a fishing expedition and thus, make it impossible for the defendant to properly respond.[5]  Merely alleging that Sanabel has a relationship with IIRO (Pls.' Opp'n 2-4; 7-9) and had previously received monetary donations from defendants, some of whom have since been dismissed from this case, (<u>See</u> Pls.' Am. Compl. ¶¶ 431, 444, 452, 463, 468, 467) can hardly be considered

---

[5]  'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.' <u>DM Research v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999); <u>Migdal v. Rowe Price-Fleming Int'l</u>, 248 F.3d 321, 326 (4th Cir. 2001).

sufficient "information and detail" to give Sanabel a reasonable opportunity to respond to the serious claims with which it is faced.  Effectively there is no notice of the basis upon which Plaintiffs have founded their claims.  Although the Plaintiffs argue that their factually unsupported allegations of conspiracy are sufficient to cast their net so wide as to include Sanabel as a defendant, this is in direct contravention to the purpose of Rule 8 – *fair* notice.

**B.    Plaintiffs' Conclusions Are Not Reasonable Inferences That This Court Can Draw From Their Complaint and/ Their RICO Statement.**

As noted in the underlying motion, a court need not "accept inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint."  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

In their Opposition, Plaintiffs rely on a string of tenuous connections to support their claims against Sanabel.  In actuality, no plausible links between the normal fundraising activities of Sanabel and the tragic events of 9/11 can be drawn from the nine pages of alleged "facts" Plaintiffs present.  Plaintiffs' Opposition makes clear that their claims against Sanabel rest entirely upon links to other defendants.  (See Pls.' Opp'n 2-4; 7-9.)  For example, Plaintiffs state that Sanabel's fundraising activities were "knowingly directed" to al Qaida because Sanabel raised funds for IIRO.  (Id. at 2-4.)  Then Plaintiffs make the legal conclusion that Sanabel was linked to 9/11 by bootstrapping this argument to another conclusory argument, namely that that IIRO is (allegedly) linked to 9/11.  (Id. at 9; 15.)  However, Plaintiffs' survival of IIRO's Motion to Dismiss, without more, establishes nothing as to Sanabel.  See WE Media Inc. v. General Electric Co., 218 F. Supp. 2d 463, 475 (S.D.N.Y. 2002) (rejecting plaintiff's causation theory based on connections between General Electric and other entities partially owned by General

Electric.)[6]

In attempting to support their allegation that Sanabel is affiliated with IIRO, the Plaintiffs discuss the lawsuit filed by Sanabel against BMI and Biheiri to collect $2 million dollars that were allegedly lost due to accounting irregularities under Beheiri's watch.  This lawsuit, which logically only serves to substantiate Sanabel's legitimate intentions, is however *illogically* used by the Plaintiffs to argue that the lawsuit was Sanabel's attempt to conceal funds which were misdirected to Islamic extremists.  The leap of imagination required to reach Plaintiffs' conclusion – that Sanabel filed a lawsuit in federal court in order to conceal funds – is *not* an inference that could *reasonably* be drawn from the facts provided.  As this Court knows, drug dealers and other criminals charged with money laundering hardly employ civil litigation as a means for hiding cash.

Similarly, Plaintiffs' discussion of money raised at alleged Sanabel-organized fundraisers (Pls.' Opp'n 3-4) fails to demonstrate the threshold at which Plaintiffs assert fundraising becomes international terrorism.  Instead, Plaintiffs expect to be permitted, under Rule 8(a), to make alleged fundraising activities culpable for 9/11 simply by claiming that these activities were ill-intentioned.  Allegations of this nature cannot be sufficient without undermining the fairness-based protections of Rule 8(a).  See infra Pt. III(A).

Next, Plaintiffs' back-door attempt to bolster their Complaint by adding new allegations

---

[6] Likewise is the case regarding Plaintiffs' emphasis on Dr. Sulaiman Al-Ali (Al-Ali).  Sanabel cannot be liable for any tortuous acts of its employees unless said acts were committed in furtherance of the employer's (i.e. Sanabel's) business and within the scope of employment." N.X. v. Cabrini Med. Ctr., 97 N.Y.2d 247, 251 (2002) (emphasis added).  As noted by Judge Robertson in Burnett I,  "The [plaintiffs] assert claims against members of the al-Rajhi family who are bank officers, but it makes no allegations that would support an inference that any al-Rajhi family member was acting within the scope of his bank employment when he allegedly provided support to al Qaeda, as would be necessary to impose vicarious liability on the bank for the acts of its officers and employees. 274 F. Supp. 2d 86, 109 n.18.  Here, even if Mr. Al-Ali committed a tortuous act (a point not conceded) Sanabel cannot be vicariously liable for any tortuous acts committed by him since anything he may have done while acting as a Director for Sanabel would not be in the furtherance of Sanabel's business.

is telling.  Specifically, Plaintiffs add that "several of the September 11 highjackers emerged, including plot mastermind Mohammed Atta," from an alleged al Qaida cell in Hamburg, Germany. (Pls.' Opp'n 2.)  This additional allegation is drawn from nothing previously cited in their Complaint or RICO Statement.  Moreover, this allegation is irrelevant to Sanabel since the series of connections drawn by Plaintiffs between this alleged cell and Sanabel's alleged activities is far too tenuous to meet even liberal pleading requirements.  Such an improper introduction of new alleged facts shows Plaintiffs' apparent insecurity about the strength of their previously pleaded allegations.

Finally, Plaintiffs attempt to further bolster their claims with a last ditch reference to the "Golden Chain" – an untitled, undated, and unsigned document that allegedly provides the name of al Qaida supporters. (Pls.' Opp'n 8.)   Plaintiffs ignore, however, the fact that these documents were discredited and rejected by this Court in Terrorist Attacks I, 349 F. Supp. 2d 765, 817 (rejecting the "Golden Chain documents as a basis for exercising jurisdiction over the defendant due to "serious foundational flaws.")  Additionally, these documents were rejected in the very case cited to by the Plaintiffs, United States v. Arnaout, 2003 U.S. Dist. LEXIS 1635 at *4 (D. Ill. 2003) (holding that the Santiago Proffer, which contained the "Golden Chain," was insufficient because it was too speculative to link the hearsay documents to the alleged conspiracies.)

In sum, the unreasonable inferences noted in Plaintiffs' Opposition, which were in part from their Complaints should not be entertained as the fairness-based protections of Rule 8(a) will be significantly undermined.

**IV.     PLAINTIFFS' FAIL TO RECOGNIZE THE IMPORTANCE OF CAUSATION.**

Even if Plaintiffs had established a prima facie case of conspiracy, Plaintiffs still fail to establish proximate cause.  Since filing the underlying Motion to Dismiss, the United States Supreme Court has handed down an opinion, stating <u>inter alia</u>, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion.  <u>Anza v. Ideal Steel Supply Corp</u>., 126 S. Ct. 1991, 1999 (2006) (citing <u>Holmes v. Securities Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992)).[7]  In <u>Anza</u>, the Court held that the central question a district court must ask in evaluating the sufficiency of proximate causation [when considering a RICO complaint in a 12(b)(6) motion] is "whether the alleged violation led directly to the plaintiff's injuries." <u>Id.</u> at 1998.[8]   The <u>Anza</u> ruling is germane to the instant case as it affirms Sanabel's contention that alleging proximate cause is an essential element to withstand a Rule 12(b)(6) motion.

Although the instant case does not concern an anti-trust matter as in <u>Anza</u>, Sanabel submits that Plaintiffs' Complaint should nonetheless be held to the <u>Anza</u> "directness requirement" or at least some modified version thereof.  Even if the <u>Anza</u> test is not applied herein, Sanabel submits the Plaintiffs have not established proximate cause under this Court's analysis in <u>Terrorist Attacks I</u>, 349 F. Supp. 2d 765, 798-801 (S.D.N.Y. 2005).

---

[7]  In citing <u>Holmes v. Securities Investor Protection Corporation</u>, 503 U.S. 258 (1992), <u>Anza</u> holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." <u>Anza</u>, 126 S. Ct. at 2000.  In applying this principle, <u>Anza</u> held that even though the <u>Holmes</u> and <u>Anza</u> plaintiffs alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied. <u>Id.</u> at 1997.

[8]  The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the <u>Holmes</u> proximate cause test which <u>Anza</u> expounds upon. <u>Id.</u> at 1998.

In short, Plaintiffs fail to make allegations sufficient to meet their causation burden as to Sanabel because Plaintiffs have not alleged actions on the part of Defendant Sanabel which actually led to the terrorist attacks of September 11, 2001.  Nor have they alleged sufficient facts to demonstrate that Sanabel should have been on notice that its investment activity in the early 1980s would eventually lead to the 9/11 attacks.[9]  As previously mentioned, the deficiency of the Plaintiffs' allegations is not in their quantity, but in their quality or their failure to establish any plausible links between Sanabel and 9/11.  Because the Plaintiffs have not met their burden of alleging specific facts that Sanabel's conduct was the proximate cause of their injuries, Sanabel's Motion to Dismiss should be granted.

## VI.    CONCLUSION

For good cause shown in this memorandum, this Court should grant Defendant's Motion to Dismiss based on failure to state a claim for which relief can be granted.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
(202) 828-4130
*Attorney for Defendant Sanabel Al-Kheer*

Dated: August 16, 2006

---

[9] For the Court's edification, in 1991, i.e., a "decade" back from 9/11 OBL was not on anybody's radar screen.  To wit:  "OBL's first declaration that he was at war with the United States was issued [o]n August 23, 1996, three months after his return to Afghanistan" (Peter L. Bergen, *The Osama Bin Laden I Know*, 164 (2006)).  Even "the Agency (CIA) simply had no idea of [OBL's] possible significance until the bin Laden unit was set up within the CIA in January 1996." Id. at 61.  The outlines of what would become the 9/11 plot were not even discussed until 1996 when Khaled Sheikh Mohammed met with OBL in Tora Bora.  Id. at XVI.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of

Motion to Dismiss was served via electronic case filing on this 16th day of August, 2006, upon

the following:

> Mr. Sean P. Carter, Esq.
> Cozen O'Connor
> 1900 Market St.
> Philadelphia, Pa. 19103-3508

> _____/s/_____
> Lisa D. Angelo, Esq.