**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Ashton et al v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO THE MOTION TO DISMISS SANABEL AL KHEER, INC. AND SANA-BELL, INC.

KREINDLER & KREINDLER LLP
James P. Kreindler (JK7084)
Marc S. Moller (MM0143)
Justin T. Green (JG0318)
Andrew J. Maloney, III (AM8684)
100 Park Avenue
New York, New York 10017-5590
Tel:  (212) 687-8181
Fax: (212) 972-9432

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc.  . . . . . . . . . . . . . . . 1

      B.    Sana-Bell, Inc.'s Motion to Dismiss  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc.
            Funding of Al Qaeda  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   PLAINTIFFS STATE CLAIM AGAINST SANABIL AL KHAIR,
      SANA-BELL, INC. AND SANABEL AL KHEER, INC. UPON WHICH
      RELIEF CAN BE GRANTED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Applicable Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Plaintiffs State a Claim and Properly Allege Causation  . . . . . . . . . . . . . . . . . . 11

      C.    The Complaint is Sufficient to Aprise Sanabil al Khair, Sana-Bell, Inc.
            And Sanabel al Kheer of the Claim Against Them  . . . . . . . . . . . . . . . . . . . . . . 14

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

*Page*

## CASES

*Boim v. Quranic Lit. Institute*, 291 F.3d 1000 (7th Cir. 2002) . . . . . . . . . . . . . . . 1, 12,15

*Conley v. Gibson*, 355 U.S. 31 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10,11

*Desiderio v. National Association of Sec. Dealers, Inc.*,
191 F.3d 198 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Geisler v. Petrocelli*, 616 F.2d 636 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Terrorist Attacks on September 11, 2001*,
349 F. Supp.2d 765 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13,14,15

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 11

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11,12

*United States v. Bogart et. al.* CR2-01-164, SDOH . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Hirshfeld*, 964 F. 2d 318, 322 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . 8

*Warren v. District of* Columbia, 353 F.3d 36 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . 12

*Woodford  v. Community Action Agency*, 239 F.3d 517
(2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wynder v. McMahon*, 360 F.3d 73 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq* . . . . . . . . . . . . . . . . . 1, 12, 13, 15

## FEDERAL RULES

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

ii

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**MISCELLANEOUS**

5 Charles Alan Wright & Arthur R. Miller,
FEDERAL PRACTICE AND PROCEDURE § 1218, at 276 (3d ed. 2004) . . . . . . . . . . . . . . 12

U.S. Government Evidentiary Proffer Supporting Admissibility Of Co-Conspirator
Statements in *United States v. Enaam Arnaout*, No. CR-892 (N.D. Ill. Jan. 6, 2003) . . . 7

iii

**I.    INTRODUCTION**

Plaintiffs state valid claims against defendants Sanabel Al Khair, Sana-Bell, Inc. and Sanabil Al Kheer, Inc. and all three are subject to civil liability in this United States Court for knowingly providing financial support to al Qaeda's global conspiracy to launch terror attacks against the United States on September 11, 2001. *Boim v. Quranic Lit. Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts."). The United States Congress expressed its clear intent that by imposing "liability at any point along the casual chain of terrorism, it would interrupt, or at least imperil, the flow of money" for terror attacks on America. S.Rep. 102-342 at 22(Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*).

The American subsidiaries of Sanabel al Khair; Sanabel al Kheer, Inc. and Sana-Bell, Inc. have filed separate motions to dismiss the *Ashton* complaint. Sanabel al Kheer, Inc. argues that the allegations against them are insufficient to sustain a cause of action and lack causation. Sana-Bell, Inc. argues that it no longer exists and submits two unauthenticated documents as evidence of this proposition to the Court. Neither movant has met its burden and both motions should be denied. While Sanabel al Khair makes no motion at this time.

## A.  Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer

At the outset, the *Ashton* plaintiffs[1] maintain, as stated in the complaint, that Sanabil Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc. are separate and distinct entities that are key and intertwined financial parts of co-defendant's International Islamic Relief Organization

---

[1] *Ashton* 6AC ¶¶ 200, 235, 236, 239, 380 ("6AC = Sixth Amended Complaint).

("IIRO"),[2] whose motion to dismiss has already been denied by this Court based on the strength of the substantive allegations against it. This charity, IIRO, is and continues to be involved in the financing of international terrorism and fundraising for al Qaeda.[3]  Plaintiffs specifically allege that these three entities, Sanabil al Khair, and it's United States subsidiaries, Sana-Bell, Inc. and Sanabel al Kheer, Inc. are used for fundraising and as an investment company in which money is generated for the IIRO.[4]  These three entities together with the IIRO have knowingly used these funds not solely for legitimate purposes but instead to provide support for al Qaeda and global terrorism.[5]

Plaintiff's allege that in 1987, the IIRO established the endowment fund called Sanabil al Khair aka Sanabel al-Khair.  This fund was intended to generate a steady income by holding annual high profile fund raising drives in Saudi Arabia to finance activities of the IIRO in Saudi Arabia and the Islamic Relief Organization "(IRO)", the IIRO's branch in the United States.[6] The defendant's argument that Sanabil al Khair does not exist and reduces it to a spelling error, fully disregards the facts as alleged in the complaint.

---

[2]*Ashton* 6AC ¶ 235 ("6AC = Sixth Amended Complaint).

[3]U.S. Department of Treasury on August 3, 2006, named as Specially Designated Global Terrorists, the Philippine and Indonesian branch offices of the Saudi based IIRO, as well as a senior, Saudi-based, IIRO official, for facilitating fundraising for al Qaida and affiliated terrorist groups.  See Fawcett Affidavit Ex 1.

[4]*Ashton* 6AC ¶ 235 ("6AC = Sixth Amended Complaint).

[5]*Ashton* 6AC ¶ 236 ("6AC = Sixth Amended Complaint).

[6]See Fawcett Affidavit Ex. 2 & Ex. 8.  Counsel for Sanabel al Kheer professes ignorance of the existence of Sanabil al Khair, despite the complaint stating that Sanabil al Khair is the endowment fund of the IIRO, which counsel also represents.

Plaintiffs further allege, in 1989, the IIRO in Saudi Arabia dispatched its chief fund-raiser Sulaiman al Ali,  to the United States.[7]  That same year, Sana-Bell, Inc. was incorporated and established in Washington DC.  In its articles of incorporation, the original board of directors of the Sana-Bell, Inc. included three people, Dr. Mohammed Abdu Yamani, Ibrahim Afandi and Salih Kamel who listed their address as Box 14843, Andalus Street, Jeddah, Kingdom of Saudi Arabia.  According to the Kingdom of Saudi Arabia's Ministry of Islamic Affairs, this is an address of the IIRO in Jeddah, Saudi Arabia.[8]  This address was used again in November of 1993, when Sana-Bell, Inc. applied to the Internal Revenue Service ("IRS") for a charitable tax exemption under Section 501(c)(3), including for Dr. Yamani who is named as Chairman of the Board.[9]

Other names submitted to the IRS by Sana-Bell, Inc. include Doctor Farid Yasin Qurashi, who at the same time was the Secretary-General of the IIRO worldwide.  According to Doctor Qurashi's successor, Sanabil al Khair was Quarishi's 'brainchild.'[10]  The remaining three trustees listed in the IRS document, M. Yaqub Mirza, Doctor Abdulrahim al Saati and Solayman Alsalih Alraghi are also affiliated with the IIRO. M. Yaqub Mirza is also an officer and director of the United States offices of the MWL.[11]

In response to inquiries from the IRS, M. Yaqub Mirza, the treasurer of Sana-Bell, Inc. provided the IRS with Sana-Bell's 1993 and 1994 financial statements.  These statements

---

[7]See Fawcett Affidavit Ex 3.

[8]See Fawcett Affidavit Ex 4.

[9]See Fawcett Affidavit Ex 5.

[10] See Fawcett Affidavit Ex 6.

[11] See Fawcett Affidavit Ex 7.

-3-

declared that the activities of Sana-Bell, Inc. had been to invest funds in real estate development, rental activities and lease financing.  The funds had been provided to Sana-Bell, Inc., with a promise of more by the IIRO.  In February of 1996, the IRS ultimately turned down Sana-Bell, Inc.'s application for a charitable tax exemption under 501(c)(3).[12]

In 1998, Sana-Bell, Inc. stated in the US District Court of Maryland that it  "is a District of Columbia nonprofit corporation with its principal place of business in Jeddah, Kingdom of Saudi Arabia."[13]  In March of 2000, Sana-Bell, Inc. also registered as a corporation in Virginia. The corporate document lists M. Yaqub Mirza as a director for both the Washington, D.C. and Virginia offices.  The other Virginia Officers and Directors listed were  Hassan A. Bafhzallah, Saleh al Obad and Abdullah M al Noshan.[14]  All hold positions with IIRO or its parent the Muslim World League.[15]

Plaintiff's further alleges, in August of 2000, the third entity, Sanabel al Kheer, Inc. was incorporated in Virginia.[16]  The corporate documents again list three directors, M. Yaqub Mirza, Bahzallah and al Obaid.  Al Obaid, at the time, was the Secretary-General of MWL worldwide.[17]

## B.  **Sana-Bell, Inc.'s Motion to Dismiss**

---

[12] See Fawcett Affidavit Ex 8.

[13] See Fawcett Affidavit Ex 9.

[14] See Fawcett Affidavit Ex 4.

[15] See Fawcett Affidavit Ex 10.

[16] *Ashton* 6AC ¶ 235 ("6AC = Sixth Amended Complaint).

[17] See Fawcett Affidavit Ex 11.

-4-

Sana-Bell, Inc. submits to the Court papers which state that it no longer exists and was merged with Sanabel Al Kheer, Inc.  The defense submits Exhibit A, which is an unauthenticated Assignment of Judgement.  In its motion to dismiss, Sana-Bell, Inc. claims that the document demonstrates that Sana-Bell, Inc. has "assigned all rights, title and interest to Sanabel al Kheer." However the documents actually state that Sana-Bell, Inc. assigns to Sanabel al Kheer, Inc. the former's right to collect on the judgement in a Maryland court case. The defense also submits, Exhibit B, which is a revocation of Sana-Bell's articles of incorporation in Washington DC, but the defendant ignores that Sana-Bell, Inc. was also registered in Virginia.  Defendant does not address that Sana-Bell, Inc. had specific dissolution requirements.  Sana-Bell, Inc.'s 1989 Articles of Incorporation were unchanged as of Sana-Bell, Inc.'s registration with the state of Virginia in March 2000.  They are very specific as to the dissolution of Sana-Bell, Inc., and discuss the distribution of the assets and name three organizations as potential recipients.[18] Sanabel al Kheer, Inc. is not one of the three.    Only in the absence of these three organizations can the board of trustees designate another recipient of its assets.  The articles provide for amendments by two thirds vote of the board.  There is no indication in Sana-Bell, Inc.'s motion to dismiss that its articles of incorporation were amended and Sanabel al Kheer, Inc. was designated as the inheritor of Sana-Bell, Inc.'s assets.  Thus, Sana-Bell, Inc. motion to dismiss should be denied in it's entirety.

**C.    Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc.'s  Funding of Al Qaeda**

---

[18] See Fawcett Affidavit Ex 4.

Plaintiffs allege that the role of the Sanabil Al Khair, Sana-Bell, Inc. and Sanbel Al Kheer, Inc. in the support of terrorism are intertwined with that of the IIRO and the MWL.[19] Sanabel El-Khair, is the financial fund for the IIRO, which had been directly involved in the knowing financing of terrorism.[20]  In order to achieve this, the IIRO aimed to collect 100 million Saudi riyals annually for 10 years to create a capitol investment of 1 billion Saudi riyals ($267 million) for Sanabil al Khair.  As alleged in the complaint, Prince Sultan, who provided material support to Osama bin Laden and al Qaeda, since 1994 has personally donated over $6,000,000 to various 'charities', of which over $2,000,000 went directly to the IIRO.[21]

As discussed above and alleged in the complaint, Sana-Bell, Inc. and Sanabel al Kheer, Inc. were incorporated in the United States as part of the financial arm of the IIRO, this included the financing of the IRO in the United States.  The 1992 tax return of the IRO is indicative of the funds generated by Sanabel al Kahir and Sana-Bell's investments and how these funds were used.  The bulk of the funds distributed by IRO were sent back to its parent, the IIRO in Saudi Arabia.  A $10,000 donation was also given to the Islamic African Relief Agency, a charity later named as a Specially Designated Global Terrorist for its activities in Sudan in support of al Qaeda in the 1990's.[22]

Corporate money from Sana-Bell, Inc was not the only money used to donate to 'terrorist' charities.  An examination of the individuals who donated to these charities reveals that they are also Sanabil al Khair, Sana-Bell, Inc. and Sanabel Al Kheer, Inc.'s officers and

---

[19]See 6AC ¶¶s 200, 235, 236, 239 and 380.

[20] See 6AC ¶200.

[21]See 6AC ¶200.

[22] See Fawcett Affidavit Ex 12.

directors.  Two of the initial directors of Sana-Bell, Inc. were Saleh Abdullah Kamel and Ibrahim

Afandi, both men are Saudi nationals who appear on a list of wealthy al Qaeda donors referred to

by al Qaeda as the "Golden Chain."[23]

As further alleged in the complaint, from 1992-1998 Sana-Bell, Inc. with M. Yaqub

Mirza as treasurer invested $3.7 million dollars with Soliman Biheiri, in two of Biheiri's

companies BMI Leasing and BMI Construction.[24]  The origin of the $3.7 million dollars was the

IIRO in Saudi Arabia.   Through the years, disbursements (investment gains and principal) were

made annually, some went to accounts designated by Sulaiman al Ali and others were not

accounted for beyond 1997.[25]  BMI also handled funds for Yassin al Kadi, a Specially

Designated Global Terrorist and the head of the Muwaffaq/Blessed Relief, a charity cited by the

US Department of the Treasury as being 'an al Qaeda front' involved in funneling millions of

dollars to Osama Bin Laden and al Qaeda.

Over $2 million of Sana-Bell, Inc.'s funds invested with Soliman Biheiri went missing

and have never been accounted for.[26]  According to the FBI, a former accountant at BMI, told the

FBI that some BMI funds may have gone to finance the 1998 embassy bombing in Africa.[27]

Immediately after the 1998 Embassy bombings, the MWL and the IIRO in Saudi Arabia began a

---

[23] See Fawcett Affidavit Ex 13. The Golden Chain refers to a document discovered by the FBI and Bosnian authorities in a raid of Benevolence International in Sarajevo, Bosnia.  It is a list of wealthy donors to al Qaeda.  The cache in which the Golden Chain document was found included the formation history of al Qaeda.  See Government's Evidentiary Proffer supporting the Admissibility of Co-Conspirator Statements, United States of America v. Enaam Arnaout, No. 02-CR-892 (N.D. Ill. filed Jan. 6, 2003). The 9/11 Commission considered the Golden Chain authentic and stated that the Golden Chain was still funding al Qaeda at least until the late 1990's.

[24] Co-Investors of BMI Construction were Osama Bin Laden's mother, sister and nephew.

[25] See 6AC ¶ 239.

[26] See Fawcett Affidavit Ex 14.

[27] Ibid.

flurry of activity to distance themselves from BMI and the money trail leading back to Sana-

Bell, Inc.  Sana-Bell, Inc. filed a lawsuit in federal court in Maryland, claiming that it had

uncovered accounting irregularities in BMI's records.[28]  The filing of 'bogus lawsuits' in US

Federal Courts as cover for financial fraud and money-laundering is well-documented.  *See,*

*United States v. Bogart* et. al.,  CR2-01-164, SDOH and *United States v. Hirshfeld*, 964 F. 2d

318, 322 (4th Cir. 1992).

**D.  Summary of Argument**

Plaintiffs have alleged that the IIRO is an al Qaeda 'charity' front that knowingly and

intentionally provided funds to al Qaeda for terrorist attacks against the United States.  The

people who run the MWL and the IIRO are the same people who are directors and officers of all

three of the Sanabel entities mentioned in the complaint.[29]  The IIRO, uses the three distinct

Sanabel corporations to conceal how the IIRO and the IRO raises and disburses funds around the

world including the United States on behalf of the IIRO's support of terrorism and al Qaeda. In

the tenure of the IIRO's financial affiliation with  Sanabil Al Khair, Sana-Bell, Inc. and Sanabel

al Kheer, Inc. money that has been raised by the Sanibel entities has been used to support al

Qaeda which led to the 1993 World Trade Center bombing, the 1998 U.S. Embassy bombings in

Kenya and Tanzania, and the September 11th attacks and should be considered as much by this

Court.  It's motions to dismiss must be denied.

---

[28] See Fawcett Affidavit Ex 9.

[29] See 6AC ¶¶ 200, 235, 236,237, 239, 241, 380.

## II.  PLAINTIFFS STATE CLAIM AGAINST SANABIL AL-KHAIR, SANA-BELL, INC. AND SANABEL AL KHEER, INC. UPON WHICH RELIEF CAN BE GRANTED

### A. Applicable Legal Standard

Sanabel al Kheer and Sana-Bell, Inc.  move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The defendants argue that the allegations against them as a whole are overly conclusory, fail to establish causation and liability and as a result, the Court lacks subject matter jurisdiction over this suit.  Such a motion must be denied unless "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 31, 45-46 (1957);*Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir.2002)(per curiam).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the complaint, but "merely to assess the legal feasibility" of the complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether plaintiffs ultimately could prevail, the Court must "accept all of Plaintiffs' factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the Plaintiffs."  *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999).  Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has instructed that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001).

A Rule 12(b)(6) motion is analyzed in the context of the liberal pleading requirements of Fed.R.Civ.P. 8(a)(2).  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002).  Rule 8(a)(2)

provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley*, 355 U.S. at 47); *Wynder*, 360 F.3d at 77. Further, in absence of averments of fraud or mistake, which must be pleaded with particularity pursuant to Fed.R.Civ.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those prescribed under Rule 8(a). *Leatherman v. Tarrant County*, 507 U.S. 163, 168-169 (1993).

Two recent Second Circuit cases affirm these principles. In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment. *Phelps*, 308 F.3d at 182.

Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause him pain and suffering. *Id.* The District Court dismissed that complaint, finding that it failed to state a claim, in part because the plaintiff had not sufficiently alleged that defendants acted with *scienter*. The District Court found plaintiff's allegations of *scienter* conclusory, and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge. *Id.* at 184. The Second Circuit reversed, holding that a District Court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." *Id.* at 186-87. The Second Circuit explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

-10-

*Id*. at 187 (*quoting Conley*, 355 U.S. at 45-46).  Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations.  *Phelps*, 308 F.3d at 187.  Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste [in dismissing a complaint] in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id*. at 185 (internal citations omitted).

Likewise, in *Pelman v. McDonald's Corp*., 396 F.3d 508 (2d Cir. 2005), the Second Circuit vacated a Rule 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In *Pelman*, the District Court had dismissed because, it ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Id*. at 511.  The Second Circuit rejected that approach, and held that the information the District Court found to be missing in the complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed. R. Civ. P." *Id*. at 512.  Quoting the U.S. Supreme Court's unanimous decision in *Swierkiewicz*, the Second Circuit instructed:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.  The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Id*. (citing *Swierkiewicz*, 534 U.S. at 512-13).[30]

---

[30] The D.C. Circuit recently addressed similar issues post-*Swierkiewicz* in reversing the dismissal of a complaint in which the plaintiff did not plead "facts" establishing knowledge.  *Warren v. District of* Columbia, 353 F.3d 36 (D.C. Cir. 2004).  Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court

**B.      Plaintiffs State A Claim and Properly Allege Causation**

Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc. liability comes from it's

providing money and knowing that the direction of those funds to the IIRO were in direct

support of al Qaeda.  Sanabel al Kheer's motion to dismiss characterizes the relationship

between the same people who are directors, trustees and officers of the Sanabel entities and who

are also directors, trustees and officers in the IIRO, MWL and/or  Rabita Trust as attenuated and

"six degrees of separation."  These links however, are not attenuated and are exactly how the

network is designed.  It is these direct links that makes Sanabil al Khair, Sana-Bell, Inc. and

Sanabel al Kheer liable.

Under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*, Sanabil al Khair, Sana-

Bell, Inc. and Sanabel al Kheer are liable if they provided material support to al Qaeda with

knowledge of its terrorist agenda to attack America. *See Boim*, 291 F.3d at 1014-1016.  Like

*Boim*, this Court has already recognized that under the ATA, "material support includes money

[and] financial services[.]"  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d at

825.  As demonstrated above, plaintiffs have alleged that all three Sanabel entities knowingly

and intentionally provided money and financial services to al Qaeda by providing financing to

the  IIRO for a decade leading up to the September 11th attacks.

Moreover, the ATA entails conspiracy and aiding and abetting liability.  As put by *Boim*:
[I]f we failed to impose liability on aiders and abettors who knowingly and intentionally
funded acts of terrorism, we would be thwarting Congress' clearly expressed intent to cut

---

held: "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District
was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of
law as true, conclusions of fact are another matter."  *Id.* at 39 (citing 5 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure§ 1218, at 276 (3d ed 2004)("[I]t must be remembered that the federal rules require a
short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any
difference whether the pleader accomplishes this by stating 'conclusions,' 'ultimate facts,' or 'evidence.'")

> off the flow of money to terrorists at every point along the causal chain of violence. . . .
> [A]iding and abetting liability is both appropriate and called for by the language,
> structure and legislative history of [ATA] section 2333.

*Boim*, 291 F.3d at 1021.  Because the pleaded facts discussed above allege that the Sanabel

entities were raising money and deliberately provided substantial financial assistance to the IIRO

and al Qaeda, with knowledge that al Qaeda was waging war on America, the Sanabel entities

are subject to aiding and abetting liability under the ATA.

And Plaintiffs properly allege that Sanabel entities knowing provision of financial

support and assistance to IIRO and al Qaeda was a proximate cause of the September 11th

attacks.  Support for these entities is support for terrorism against America.  For this Court has

already resolved that "[i]n light of al Qaeda's public acknowledgments of its war against the

United States, the September 11th attacks may be the natural and probable consequence of

knowingly and intentionally providing material support to al Qaeda."  *In re Terrorist Attacks on*

*September 11, 2001*, 349 F. Supp. 2d at 826.[31]

Contrary to Sanabel al Kheer, Inc. and Sana-Bell, Inc. insistence that proximate cause is

not well pleaded unless plaintiffs allege with specificity that any of the Sanabel entities

"participated in the September 11th attacks," this Court has already resolved that "Plaintiffs do

not have to allege that Defendants knew specifically about the September 11th  attacks or that

they committed any specific act in furtherance of that attack."  *In re Terrorist Attacks on*

*September 11, 2001*, 349 F. Supp. 2d at 829.

---

[31]*Accord, Burnett* 1AC ("The financial resources and support network [provided by] Defendants – charities, banks, fronts organizations and financiers – are what allowed the attacks of September 11, 2001 to occur.  Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and act on a massive scale without significant financial power, coordination and backing."); *see also, Ashton* 4AC ¶ 610; *Burnett* 3AC Introduction; *WTC* Introduction; *Euro Brokers* ¶5; *Cantor Fitzgerald* RICO Statement ¶¶ 6-8; *Cantor Fitzgerald* 1AC ¶¶ 33-42; *O'Neill* 2AC ¶¶ 22-24, 156-163; *O'Neill* Amended RICO Statement Question 2 Exhibit A.

Moreover, this Court has already determined that proximate cause may be supported by plaintiffs' allegations that the Sanabel entities aided and abetted or conspired with the IIRO and al Qaeda terror network for over a decade leading up to the September 11th attacks: "[A]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer . . . are equally liable with him." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 826.

Accordingly, under the standards set by this Court, plaintiffs have properly alleged proximate cause. The September 11th attacks were a natural and probable consequence of the Sanabel entities financial support of the IIRO and the al Qaeda terror network – of Sanabel's actions *in concert* with al Qaeda – for a decade leading up to those attacks. Hence, plaintiffs' ATA claim against is well pleaded.

**C.  The Complaint is Sufficient to Aprise Sanabil al Khair, Sana-Beel, Inc. and Sanabel Al Kheer, Inc.  of the Claim Against Them**

Sana-Bell, Inc. and Sanabel Al Kheer, Inc. argue a lack of connection between the Plaintiffs injuries and the conduct of the defendants that this Court should decline to exercise jurisdiction over such claims. As discussed above, Sana-Bell, Inc's and Sanabel al Kheer, Inc. intentional support of al Qaeda violates the Anti-Terrorism Act because it increased the risk that al Qaeda would commit the September 11th attacks. See *Boim*, 291 F.3d at 1021. As this Court has held, the terror attacks were the foreseeable result of financial support for terrorists. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 826.  Sanabil al Khair, Sana-Bell, Inc. and Sanabel al Kheer, Inc.'s substantial support of terror and al Qaeda dates from 1987

-14-

through September 11, 2001 and Plaintiffs clearly state why this Court has jurisdiction over these corporate entities of the IIRO.

## III.    CONCLUSION

Plaintiffs have properly pleaded their case against Sanabel al Kheer, Inc. and Sana-Bell, Inc. under the Federal Rules of Civil Procedure.  Sanabel al Kheer, Inc. motion to dismiss must be denied and Sana-Bell, Inc. motion to dismiss must be denied.


Dated: New York, New York
           August 28, 2006


                                                       KREINDLER & KREINDLER LLP
                                                       Plaintiffs Liaison Counsel


                                    By:    _____/s/_____
                                                       James P. Kreindler (JK7084)
                                                       Marc S. Moller (MM0143)
                                                       Justin T. Green (JG0318)
                                                       Andrew J. Maloney, III (AM8684)
                                                       100 Park Avenue
                                                       New York, NY  10017-5590
                                                       Phone: Phone: (212) 687-8181
                                                       Fax:  (212) 972-9432


189827
v1                                              -15-