**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br>*Ashton et al. v. al Qaida*, 02-cv-6977 (RCC) | 03 MDL 1570 (RCC)<br><br>ECF Case |

**DEFENDANT TADAMON ISLAMIC BANK'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND FOR WANT OF JURISDICTION.**

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:          202-862-4343
Facsimile:     202-828-4130

*Attorney for Defendant Tadamon*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFFS HAVE NOT PLED CIVIL CONSPIRACY
        OR ANY OTHER BASIS FOR IMPUTED LIABILITY AND
        THUS FAIL TO ALLEGE A CLAIM FOR WHICH RELIEF
        CAN BE GRANTED ............................................................................................1

III.    PLAINTIFFS' COMMON LAW CLAIMS AGAINST
        TADAMON CONSIST OF CONCLUSORY ALLEGATIONS
        AND LACK CAUSATION ...................................................................................2

        A.  Neither Rule 8(a) Nor The Distinguishable Case Law

            Plaintiffs Cite Can  Salvage Their Complaint. ..........................................3

        B.  Plaintiffs Fail to Recognize The Importance of Causation,

            Which Must Be Presented Even At The Pleading Stage. .........................8

        C.  Tadamon's Banking Services Are Not Extraordinary. ........................10

IV.     PLAINTIFFS HAVE NOT PROPERLY PLED THEIR
        FEDERAL CLAIMS AGAINST TADAMON. ..................................................11

        A.  Plaintiffs' ATA Claim Is Improperly Pled As To Tadamon. .............11

        B.  Plaintiffs' ATCA/TVPA Claims Are Improperly Pled As To Tadamon. ..........12

V.      JURISDICTION DOES NOT EXIST OVER TADAMON
        IN ANY CASE. ....................................................................................................15

        A. Minimum Contacts ...................................................................................15

        B. Reasonableness ........................................................................................16

VI.     THIS COURT LACKS SUBJECT MATTER JURISDICTION
        OVER TADAMON. .............................................................................................17

VII.    CONCLUSION ...................................................................................................18

## CASES

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) .................................................... 8,11,12

Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ........................................................ 14

Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986 (N.D. Ill. 2003) ............... 5,6

Atuahene v. City of Hartford, 10 Fed. Appx 33 (2d Cir. 2001)................................................... 11

Beanal v. Freeport-McMoran, Inc., 197 F.3d 161 (5th Cir. 1999) ............................................. 14

Benjamins v. British European Airways, 572 F.2d 913 (2d Cir. 1978)........................................ 13

Boim v. Quaranic Literacy,  291 F.3d 1000 (7th Cir. 2002)................................................... 11,12

Burnett I, 274 F. Supp. 2d 86 (D.D.C. 2003)..........................................................................passim

DiPonzio v. Riordan, 679 N.E.2d 616 (N.Y. 1977) ................................................................... 18

DM Research v. College of Am. Pathologists, 170 F.3d 53 (1st Cir. 1999)................................6

Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20 (D.D.C. 2005)..........................................12,14

Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980))...................................................12,13

First Nationwide Bank, 27 F.3d  763 (2d Cir. 1994) ................................................................. 9

Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988) ........................................................ 5

Hanoch Tel-Oren v. Libyan Arab Republic, 517 F. Supp 542 (D.D.C. 1981) ............................ 13

Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408 (1984) ................................ 16

Holmes v. Securities Investor Prot. Corp., 503 U.S. 258 (1992) ................................................. 8

In re: S. African Apartheid Litg., 346 F. Supp. 2d 538  (S.D.N.Y. 2004) ................................... 14

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)............................................................ 15,17

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995).................................................................12,13

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) ................................................................... 4

Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000) ..................................................................... 4

Linde et al. v. Arab Bank, PLC, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) ...............................passim

Mendonca v. Tidewater, Inc., 159 F. Supp. 2d 299 (E.D.La. 2001)........................................... 14

Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321 (4th Cir. 2001)...................................6

Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005)....................................................4,5

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002).............................................................4,6,7

Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988)...............................................................4

Swierkiewicz v. Sorema, 534 U.S. 506 (2002)...................................................................3

Tel-Oren v. Libyan Arab Republic, 517 F. Supp. 542 (D.C. Cir. 1981)...........................12

Terrorist Attacks I, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)……………………………………passim

Terrorist Attacks II, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)………………………………...passim

Timberlane Lumber Co. v. Bank of America, 749 F.2d 1378 (9th Cir. 1984)………………17,18

Twombly v. Bell Atl. Corp., 425 F.3d 99 (2d Cir. 2005)……………………………………...passim

United States v. Philip Morris Inc., 116 F. Supp. 2d 116 (D.D.C.2000)………………………...16

WE Media Inc. v. General Electric Co., 218 F. Supp. 2d 463 (S.D.N.Y. 2002)……...…………...9

## STATUTES

18 U.S.C. § 2333……………………………………………………………………......11,12

28 U.S.C. § 1350……………………………………………………………………...…12,13,14

## FEDERAL RULES

Fed. R. Civ. P.  8(a)...…………………………………………………………….......passim

Fed. R. Civ. P.  12(b)(6)…………………………………………………………….......passim

Fed. R. Civ. P.  9……...…………………………………………………………….........3,4,5

## COURT ORDERS

Discovery Order, U. S. Magistrate Judge Maas, June 28, 2006…………………………………2

## OTHER AUTHORITIES

Peter L. Bergen , The Osama Bin Laden I Know, 164 (2006))………………………………...…9,14

Office of Foreign Assets Control Specially Designated Nationals and Blocked Persons ............ 16

Washington Post, June 23, 2006…………………………………………………………………16

## I.     INTRODUCTION.

Defendant Tadamon Islamic Bank (hereinafter "Tadamon") hereby files its Reply Memorandum in support of its Motion to Dismiss Plaintiffs' Sixth Amended Complaint (hereinafter "Complaint").

Simply stated, the Plaintiffs have failed to allege any grounds that could impute liability to Tadamon.  And, even if a conspiracy-based theory could be inferred in support of their civil tort claims, Plaintiffs have failed to present factual allegations sufficient to support their claims. In addition to failing to allege grounds for imputing liability as to Tadamon, this Court can and should grant its motion to dismiss for any or all of the following reasons:  (1) Plaintiffs' common law claims consist of conclusory allegations and lack causation, (2) Plaintiffs' federal claims are improperly pled as to Tadamon, and (3) because this Court has neither personal nor subject matter jurisdiction over Tadamon.

## II.    PLAINTIFFS HAVE NOT PLED CIVIL CONSPIRACY OR ANY OTHER BASIS FOR IMPUTED LIABILITY AND THUS FAIL TO ALLEGE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Plaintiffs allege that Defendant Tadamon committed "intentional willful and malicious acts of terrorism on September 11, 2001".  Despite these "argumentative inferences"[1] no grounds for imputed liability exist that could hold Tadamon responsible for the Terrorist Attacks of 9/11.  Thus, all three intentional tort claims that Plaintiffs have presented herein (Counts 1-3) fail to state a cause of action because there is no plausible[2] link between Tadamon (a bank in the Sudan) and the Terrorist Attacks of 9/11.

---

[1]  This Court has held that "argumentative inferences" are not allowed herein.  Terrorist Attacks II, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005).

[2]  See infra Part III (A) for analysis of Twombly's requirement that allegations of causation under Rule 8(a) be "plausible".

Even assuming *arguendo* that the Plaintiffs had pled conspiracy, their factual allegations do not constitute a *well pled* allegation of conspiracy – which is crucial to Plaintiffs ability to withstand the instant motion.[3]  To support their civil tort claims, (Counts 1-3) Plaintiffs had an obligation to frame non-conclusory factual allegations from which this Court could reasonably infer that Tadamon was a part of a vast amorphous conspiracy that funded and supported the terrorist attacks of 9/11.  Any reading of their Complaint or their opposition will not support that argumentative inference.

In failing to establish that Tadamon was part of an alleged conspiracy that led to or assisted the hijackers in attacking America, Plaintiffs cannot present any factual allegations that tie, link, or otherwise suggest that Tadamon is liable to Plaintiffs for injuries incurred on 9/11.[4]  Accordingly, their civil tort claims (Counts 1-3) against Tadamon should be dismissed.

## III.    PLAINTIFFS' COMMON LAW CLAIMS AGAINST TADAMON CONSIST OF CONCLUSORY ALLEGATIONS AND LACK CAUSATION.

Even if Plaintiffs had pled a conspiracy-based theory as to Tadamon, Fed. R. Civ. P. 12(b)(6) relief is still warranted because Plaintiffs' factual allegations are no more than legal conclusions.[5]

---

[3]  See infra Part III (A) for Rule 8 analysis and the necessity of well pleaded facts.

[4]  Nowhere in Plaintiffs' counts do they allege that Tadamon was directly involved in 9/11.  For example, Plaintiffs' Complaint at ¶ 473 alleges Assault and Battery counts (presumably against all named defendants) for placing apprehension of harmful and/or offensive bodily contact "as a result of the September 11, 2001 hijackings and attacks."  But, without establishing a connection between the "September 11, 2001 highjackings" and Tadamon, the Plaintiffs have made no meritorious allegations directed at Tadamon.

[5]  Both this Court and United States Magistrate Judge Frank Maas have opined on this issue, to wit, in his recent discovery Order concerning another Plaintiffs' discovery requests Judge Maas held that the allegations  were "[o]nce again … 'conclusory'".  J. Maas, Op. at 10.  To illustrate the conclusory nature of a particular allegation Judge Maas provided an example:  "in addition to the sort of boilerplate that the plaintiffs recited in their discussion of the other banks, the Burnett complaint referred to a '1999 United States Senate Report on the [Bank of Credit and Commerce International] scheme [which] detailed the role of [NCB] in hiding assets, money laundering, the cover-up and obstruction of a Senate investigation, and sponsoring international terrorism.'"  Id.  This example is precisely the type of allegations Plaintiffs have made against Tadamon.  Similarly, in Terrorist Attacks I, this Court noted the conclusory allegations brought against Al Rajhi "do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities… were supporting terrorism."  349 F. Supp. 2d at 833.  This was the case even though the complaint contained allegations that "Al Rajhi knew or had to know that its depositors … were material

On the first page of their opposition, Plaintiffs present the first of numerous conclusory allegations: "Tadamon [ ] knowingly provided financial support to Al Qaeda's global conspiracy to launch terror attacks on the United States, of which the September 11, 2001 Attacks were a natural, intended and foreseeable result." Pls.' Opp'n at 1. Undoubtedly, Plaintiffs formed this conclusion from the similar conclusion alleged in their Complaint: "Tadamon [ ] [ ] facilitated, materially sponsored, aided and abetted, and/or conspired with Al Qaeda and its international terrorists and financial operations." Pls.' Am. Compl. ¶ 57 (Sept. 30, 2005). In each of these documents, Plaintiffs fail to follow up these obvious legal conclusions with specific factual allegations in support. To justify their omitted facts Plaintiffs cite to Rule 8(a). For reasons set forth below, Plaintiffs' conclusory allegations are insufficient to withstand the instant motion.

### A.   **Neither Rule 8(a) Nor The Distinguishable Case Law Plaintiffs Cite Can Salvage Their Complaint.**

Working on the erroneous premise that Tadamon invoked Rule 9 in its motion to dismiss, Plaintiffs repeatedly refer to Swierkiewicz v. Sorema, 534 U.S. 506 (2002) to support *their* contention that the requirements of notice pleading are "liberal". Plaintiffs fail, however, to acknowledge a distinction that both this Court and Judge Robertson have made in that the instant mass tort case is exactly that – *a mass tort case* that involves hundreds of defendants. This Court recognized this *distinction* during oral arguments and when Plaintiffs' Swierkiewicz argument was then presented. (See Oral Argument Trial Tr. 68:1-5, 17, Oct. 14, 2004.) The Court again noted this distinction in Terrorist Attacks I when it held that "[w]hile applying the liberal notice

---

supporters of terrorism." Id. at 831. In their opposition, Plaintiffs present an example of an allegation that overcame a Rule 12(b)(6) motion. Pls.' Opp'n at 5 ("I was turned down for a job because of my race"). This example hardly mimics the allegations presented in Plaintiffs' Complaint. First, the plaintiff had first hand "knowledge" as he/she states "I was turned down … because". Here, the Plaintiffs cannot allege "knowledge" without adding facts that support their allegations because they, unlike their example, do not have first hand knowledge. Second, Plaintiffs' example supports Tadamon's proximate cause analysis (infra Pt. III(B)) because unlike their example, no direct link between the Plaintiffs' injuries and the Defendant's conduct is presented in any of their Complaint allegations.

pleading requirements of Rule 8, the Court notes that in light of the 'extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of [the claims].'" 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) (citing Burnett I, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003). Without citing Rule 9, Tadamon submits that when "extra scrutiny" is applied herein 12(b)(6) relief should be afforded to Tadamon as the fairness requirements of Rule 8(a) have *in this case* been offended. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (emphasis added) (a defendant must have a *fair* understanding of what the plaintiffs are complaining about and whether there is even a legal basis for recovery) (emphasis added); see Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (a complaint must still provide enough information and detail to enable defendants to respond and defend); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (the "short and plain statement" requirement is to give *fair* notice to enable an adverse party to answer and prepare for trial) (emphasis added).

In addition, Plaintiffs cite Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) as support for their contention that causal connections between their allegations and their injuries need not be drawn until after discovery. Plaintiffs also cite Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005); Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002); and Linde et al. v. Arab Bank, PLC, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) as further support for their contention that a district court may not add [or] create higher pleading standards than those set forth in the Federal Rules. Pls.' Opp'n 13. These arguments, which have been presented to this Court repeatedly, are all readily distinguishable.

First, Plaintiffs' 'wait until discovery' argument derived from Pelman, serves to circumvent the requirement of proximate causation in an effort to conduct a costly fishing

expedition in the name of discovery.[6]  This Court is likely aware and can take judicial notice, that counsel for Tadamon also represents the International Islamic Relief Organization (IIRO), which has been served with extremely burdensome discovery requests and has received preliminary scanning and copying estimates in the $3,000,000 range.  Thus, the rationale behind 'wait until discovery' as applied in Pelman is simply not appropriate in the instant mass tort case. While the Court in Pelman vacated the district court's 12(b)(6) dismissal because "an action under the [deceptive trade practices provision of the New York Consumer Protection Act] is not subject to the pleading-with-particularity requirements of Rule 9(b)" (Id. at 511), the decision focused on the issue of unfair surprise and the role of liberal discovery to avoid surprise. However, unfair surprise is not the only type of unfairness which Rule 8(a) protects against. Costly, protracted discovery can be an equally unfair burden on a defendant if a plausible basis for proximate cause is not properly pled.  See Twombly v. Bell Atl. Corp., 425 F.3d 99, 111 (2d Cir. 2005) ("Some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase.") (citing Judge Posner in Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)) Defendant Tadamon is not asking this Court to apply Rule 9 here because Plaintiffs have not alleged fraud.  However, Defendant is arguing that extra-scrutiny is required under Rule 8(a) and Plaintiffs' claims necessarily fail under this standard.

Second, and as to their Twombly argument, Plaintiffs fail to mention that the Second Circuit also opined that, "*a barebones statement of conspiracy or of injury under antitrust laws without any supporting facts permits dismissal*."  Twombly, 428 F.3d at 109 (emphasis added). Twombly also articulated the common sense approach that this Court should adopt: "[m]inimal requirements are not tantamount to nonexistent requirements," (Id.) (quoting Gooley v. Mobil

---

[6]  See infra. Pt. IV (B) and accompanying text for additional proximate causation analysis.

Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)), and require that "*some threshold of plausibility*

must be crossed at the outset before a [ ] case should be permitted to go into its inevitably costly

and protracted discovery phase." Id. at 111 (emphasis added) (quoting J. Posner in Asahi Glass

Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)).  Since the

Twombly court clearly stated that this "plausibility" requirement is no different for anti-trust

claims than it is for other claims subject to Rule 8(a) notice pleading requirements, (Id. at 107),

Tadamon submits that Plaintiffs should also meet this plausibility standard before both parties

are forced into what will be an "inevitably costly and protracted discovery phase," (Id. at 111)

based only on Plaintiffs' conclusory and specious allegations.

 The few facts presented herein are so unrelated to the counts charged as to suggest a

fishing expedition and thus, make it impossible for Tadamon to properly respond.[7]  Merely

alleging that Tadamon has a shareholder relationship with Defendant Al Shamal (Pls.' Opp'n 2-

4; 7-9) can hardly be considered sufficient "information and detail" to give Tadamon a

reasonable opportunity to respond to the serious claims with which it is faced.  Effectively there

is no notice of the grounds upon which Plaintiffs have founded their claims.  Although the

Plaintiffs argue that their factually unsupported allegations of conspiracy are sufficient to cast

their net so wide as to include Tadamon as a defendant, this is in direct contravention to the

purpose of Rule 8 – *fair* notice.

 Another authority cited to by Plaintiffs is Phelps, which is easily distinguished from the

instant matter for any number of reasons.  First, Phelps involves a § 1983 claim which is

inapposite to the allegations of international terrorism in this case.  308 F.3d at 182.  Second, and

unlike the sole Plaintiff in Phelps, the claims herein rely on imputed liability (which as

---

[7]  'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged
in a fishing expedition.' DM Research v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999); Migdal v.
Rowe Price-Fleming Int'l, 248 F.3d 321, 326 (4th Cir. 2001).

mentioned <u>supra</u>, have not been pled as to Tadamon) where the potential for an improper extension of liability based upon conclusory allegations is magnified.  Third, the fact that a "heightened pleading standard" was rejected in <u>Phelps</u> does not preclude a heightened standard applied herein given Plaintiffs' damaging and sensational allegations which seek to impose liability on hundreds of disparate and tenuously connected defendants.  Again, this danger of unfairness and prejudice was *not* present in <u>Phelps</u>.  Actually, <u>Phelps</u> reiterates Tadamon's argument that "a court should [not] hesitate to dismiss a complaint when the plaintiff's allegation … fails as a matter of law."  <u>Id.</u> at 187.

Finally, Plaintiffs' reliance on <u>Linde</u>, is also misplaced.  The <u>Linde</u> court reached its decision because "given plaintiffs' allegations regarding the knowing and intentional nature of the Bank's activities, there is nothing 'routine' about the services the Bank is alleged to provide." <u>Id.</u> at 588.  Obviously, the <u>Linde</u> court found that the Plaintiffs' allegations therein were not conclusory and contained sufficient factual allegations (unlike the instant Plaintiffs' complaint) such that the fairness requirements of Rule 8(a) were not offended.  This is certainly not the instant case.  Alternatively, and to the extent that the <u>Linde</u> court simply disagrees with *this* Court's logical distinction that given the 'extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he or it does indeed have fair notice of [the claims],'" (<u>Terrorist Attacks I</u>, 349 F. Supp. 2d at 831) Tadamon presumes this Court would continue to rule in support of its well reasoned and aptly noted distinction and apply "extra scrutiny" when considering Plaintiffs' allegations against Tadamon with Rule 8(a) in mind.  <u>Id.</u>

**B.      Plaintiffs Fail to Recognize The Importance of Causation, Which Must Be Presented Even At The Pleading Stage.**

Since filing the underlying Motion to Dismiss, the United States Supreme Court has handed down an opinion, stating <u>inter alia</u>, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion.  <u>Anza v. Ideal Steel Supply Corp.</u>, 126 S. Ct. 1991, 2001 (2006) (citing <u>Holmes v. Securities Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992)).[8]  In <u>Anza</u>, the Court held that the central question a district court must ask in evaluating the sufficiency of proximate causation [when considering a RICO complaint in a 12(b)(6) motion] is "whether the alleged violation led directly to the plaintiff's injuries."  <u>Id.</u> at 1998.[9]  The <u>Anza</u> ruling is germane to the instant case as it affirms Tadamon's contention that alleging proximate cause is an essential element to withstand a Rule 12(b)(6) motion.

Although the instant case does not concern an anti-trust matter as in <u>Anza</u>, Tadamon submits that Plaintiffs' Complaint should nonetheless be held to the <u>Anza</u> "directness requirement" or at least some modified version thereof.  Even if the <u>Anza</u> test is not applied herein, Tadamon submits the Plaintiffs have not established proximate cause under this Court's analysis in <u>Terrorist Attacks I</u>, 349 F. Supp. 2d at 798-801.

In their opposition, Plaintiffs rely on a string of tenuous connections to support their claims against Tadamon.  Pls.' Opp'n at 1-3.  In actuality, no plausible links between the routine banking services performed by Tadamon and the tragic events of 9/11 can be drawn from the

---

[8]  In citing <u>Holmes v. Securities Investor Protection Corporation</u>, 503 U.S. 258 (1992), <u>Anza</u> holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." <u>Anza</u>, 126 S. Ct. at 2009.  In applying this principle, <u>Anza</u> held that even though the <u>Holmes</u> and <u>Anza</u> plaintiffs alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied.  <u>Id.</u> at 1997.

[9]  The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the <u>Holmes</u> proximate cause test which <u>Anza</u> expounds upon.  <u>Id.</u> at 1998.

three pages of alleged "connections to Al Qaeda" Plaintiffs present.  Instead Plaintiffs'

Opposition makes clear that their claims against Tadamon rest entirely upon links to other

defendants and an outdated timeline that simply does not work.  Id.[10]  For example, Plaintiffs

state that "because Al Shamal Islamic Bank has been closely linked to Tadamon, as well as other

terrorist entities, its activities must be considered along with those of Tadamon in determining

this motion to dismiss."  Id. at 2.  Plaintiffs further state that "Tadamon itself joined the Board of

Directors of Al Shamal in July of 1988, and has been a major shareholder since March of 1986.

These arguments do not present sufficient allegations that Defendant's conduct [ … ] was the

proximate cause of their injuries.  Terrorist Attacks I, 349 F. Supp. 2d at 797 n. 26;  see First

Nationwide Bank, 27 F.3d  763, 767 (2d Cir. 1994) (holding that the Plaintiffs' complaint "must

be dismissed" because it did not adequately allege proximate cause);  see also WE Media Inc. v.

General Electric Co., 218 F. Supp. 2d 463, 475 (S.D.N.Y. 2002) (rejecting Plaintiffs' "six

degrees of separation argument" on the ground that the "legal divide" between a corporation and

its shareholder or a parent and its subsidiary was too attenuated to support an allegation of

knowledge.)

        In short, Plaintiffs fail to make allegations sufficient to meet their causation burden as to

Tadamon because Plaintiffs have not alleged actions on the part of Tadamon which actually led

to the terrorist attacks of September 11, 2001.  With respect to foreseeability, Plaintiffs have

failed to allege sufficient facts that would demonstrate that Tadamon should have been on notice

---

[10]  "OBL's first declaration that he was at war with the United States was issued [o]n August 23, 1996,
three months after his return to Afghanistan" (Peter L. Bergen, The Osama Bin Laden I Know, 164 (2006)).  Even
assuming that the entire world, including Tadamon, was put on notice of OBL's evil intentions at that time,
Tadamon's shareholder status with Al Shamal began in March of 1986, a totally relevant consideration because (1)
during the 1980s, Tadamon could not have known nor had any reason to believe that by having an alleged
"connection" with Al Shamal and/or Faisal Islamic Bank that it was supporting terrorism and/or the 9/11 tragedy;
(2) even "the Agency (CIA) simply had no idea of [OBL's] possible significance until 'the bin Laden unit' was set
up within the CIA in January 1996." (Id. at 61); and (3) the outlines of what would become the 9/11 plot were not
even discussed until 1996 when Khaled Sheikh Mohammed met with OBL in Tora Bora.  Id. at XVI.

that its investment activity in the early 1980s would eventually lead to the 9/11 attacks.  The deficiency of the Plaintiffs' allegations is not in their quantity, but in their failure to establish any plausible links between Tadamon and 9/11.  Because the Plaintiffs have not met their burden of alleging specific facts that Tadamon's conduct was the proximate cause of their injuries, Tadamon's motion to dismiss should be granted.

### C.    Tadamon's Banking Services Are Not Extraordinary.

Page 9 of Plaintiffs' opposition states, "Tadamon's knowing support of Osama bin Laden through the years, both directly and through other institutions it influenced [ … ] is far more that mere 'ordinary banking services'".  Pls.' Opp'n at 9-10[11].  This legal conclusion is followed up with a lengthy Linde v. Arab Bank analysis somehow concludes that Plaintiffs sufficiently pled that Tadamon "knew it was assisting OBL and Al Qaeda".  Id. at 11.

All Courts have rejected the proposition that a bank can be held responsible for the way in which its alleged customers use their money.  Burnett I, 274 F. Supp. 2d 86, 109 (D.D.C. 2003); Terrorist Attacks I, 349 F.Supp.2d at 832.  This Court has also concluded that there is no support "for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawls, check clearing services, or any other routine banking service."  Terrorist Attacks I, 349 F.Supp.2d at 832 (quoting Burnett I, 274 F.Supp.2d at 109).  Though the act of "funneling," or transferring money to a terrorist, is "unlawful and actionable," there is no basis for the liability of the bank which unwittingly served as a "funnel."  Burnett I, 274 F.Supp.2d at 109.  This Court agreed in Terrorist Attacks I and further rejected Plaintiffs expansive "know your customer rule,"  349 F. Supp. 2d at 833.

All claims against Tadamon must be dismissed because the bank is not obligated to "know [its] customers"  (Id.) and because any alleged "funneling" that may have occurred by

---

[11] Tadamon takes this opportunity to again point out the conclusory nature of Plaintiffs' allegations.

virtue of the fact that Tadamon is a Bank, was done unwittingly.  <u>Burnett I</u>, 274 F. Supp. 2d at

109.  Even if this Court decides to overturn its previous well-reasoned ruling and hold Tadamon

responsible for what its account holders allegedly did with their money, the claims against

Tadamon must still be dismissed because contrary to Plaintiffs' conclusory allegations,

Tadamon did not have "knowledge" of its' alleged customers intent.  <u>See</u> <u>id</u>.  Moreover, and as

noted <u>supra</u>, Tadamon's shareholder relationship with Al Shamal is nothing more than

impermissible "lumping" of defendants.  <u>See</u> <u>Atuahene v. City of Hartford</u>, 10 Fed. Appx 33 (2d

Cir. 2001).

Based upon the foregoing Tadamon submits that Counts 1-3 of Plaintiffs' Complaint

should be dismissed.

## IV.    PLAINTIFFS HAVE NOT PROPERLY PLED THEIR FEDERAL CLAIMS AGAINST TADAMON.

### A.    <u>Plaintiffs' ATA Claim Is Improperly Pled As To Tadamon.</u>

The ATA allows for an action in federal district court by any national of the United

States[12] injured in his or her person, property, or business by reason of an act of international

terrorism, or his or her estate, survivors, or heirs.  18 U.S.C. § 2333 (1994).

<u>Boim v. Quaranic Literacy</u> is the primary authority on cases brought under the ATA in a

federal court.  291 F.3d 1000 (7th Cir. 2002).  <u>Boim</u> makes clear that to survive dismissal of a

Complaint for claims brought under the ATA, Plaintiffs must have alleged that Defendants had

"knowledge of and intent to further [Al Qaida's] violent criminal acts…".  <u>See</u> <u>id</u>. at 1011.

However, Plaintiffs' Complaint is devoid of facts showing knowledge or intent by Tadamon.

<u>Boim</u> also makes clear that the ATA requires a Plaintiff be injured "by reason of" an act of

---

[12]  On page nine of their Opposition, Plaintiffs refer to themselves as "alien-plaintiffs".  If Plaintiffs are in fact "aliens" and not "national[s] of the United States" as required under the ATA, Plaintiffs' invocation of this statute to extend jurisdiction over Tadamon is improper.  18 U.S.C. § 2333.

international terrorism.  Id.  Again, Plaintiffs Complaint is devoid of facts showing how

Tadamon's banking services could be acts of international terrorism.  Thus, and most

importantly, Boim emphasizes that the language "by reason of" means that a showing of

proximate cause is required in order for liability to be afforded under the ATA.  Id.  As noted

supra Part III(B), Plaintiffs have not established proximate causation under either the

aforementioned Anza test or this Court's analysis in Terrorist Attacks I, 349 F. Supp. 2d at 798-

801.

    Accordingly, this Court can and should dismiss Plaintiffs' claims brought under the ATA

just as the Boim court dismissed the Plaintiffs' first theory of liability brought under § 2333 – for

want of a required "showing of proximate cause."  See Boim, 291 F.3d at 1012.

### B.    Plaintiffs' ATCA/TVPA Claims Are Improperly Pled As To Tadamon.

    Plaintiffs' claims brought under 28 U.S.C. § 1350 (the ATCA and TVPA) are improperly

pled because the ATCA does not provide subject matter jurisdiction in cases brought by U.S.

citizens without a proper claim under the TVPA.  Plaintiffs cannot establish a proper claim

because banking services are not a violation of the law of nations (Filartiga v. Pena-Irala, 630

F.2d 876, 888 (2d Cir. 1980)) and the TVPA was not intended to apply to organizations.  Doe v.

Exxon Mobil Corp., 393 F. Supp. 2d 20, 28 (D.D.C. 2005)

    The ATCA "confers federal subject-matter jurisdiction when the following three

conditions are satisfied:  (1) an alien sues (2) for a tort (3) committed in violation of the law of

nations (i.e. international law)".  Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995).  Case law

from this Circuit has held that "a violation of the law of nations arises only when there has been

a "'violation by one or more individuals of those standards, rules, or customs (a) affecting the

relationship between states or between an individual and a foreign state and (b) used by those states for their common good and/or in dealings inter se.'" <u>Filartiga</u>, 630 F.2d at 888.

The TVPA renders liable only those individuals who have committed torture or extrajudicial killing "under actual or apparent authority, or color of law, of any foreign nation." TVPA § 2.  Most importantly, "legislative history confirms that this language was intended to 'make[ ] clear that the Plaintiff must establish some governmental involvement in the torture or killing to prove a claim,' and that the statute 'does not attempt to deal with torture or killing by *purely private groups.*'" <u>Kadic,</u> 70 F.3d at 245 (emphasis added) (citing H.R. Rep. No. 367, 102d Cong., 2d Sess., at 5 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 87.

Plaintiffs' claims under the ATCA fail because none of the Plaintiffs have been adequately identified as "aliens" – a necessary "element" for jurisdiction to vest under § 1350. <u>Hanoch Tel-Oren v. Libyan Arab Republic</u>, 517 F. Supp 542 (D.D.C. 1981), <u>Affd.</u> 726 F.2d 774 (D.C. App. 1984).  To the extent that Plaintiffs are in fact "alien-plaintiffs", as they recently allege on page nine of their opposition, their claims still fail because the allegations brought against Tadamon do not violate the "law[s] of nations".[13]  The <u>Filartiga</u> Court provided examples of cases that did not invoke international law or constitute a law of nations violation.  630 F.2d at 888 n.23 (citing <u>Benjamins v. British European Airways</u>, 572 F2d 913, 916 (2d Cir. 1978) (an air disaster, even if caused by 'willful' negligence, does not constitute a law of nations violation)).[14]  Certainly the acts of an Islamic Bank operating in the Sudan and that provided

---

[13] <u>Tel-Oren v. Libyan Arab Republic</u>, 517 F. Supp. 542, 548 (D.C. Cir. 1981) (noting a violation of law of nations is third required element under § 1350).

[14] Tadamon acknowledges this Court's holding in <u>Terrorist Attacks I</u>, "aircraft hijacking is generally recognized as a violation of international law" and that "courts, including the Second Circuit, have almost unanimously permitted actions premised on a theory of aiding and abetting and conspiracy." 349 F. Supp. 2d at 826. However, this holding should not apply to or include Tadamon because this Islamic Bank did not itself hijack any aircraft thereby violating the international law *and* as noted <u>supra</u> Part II Plaintiffs herein have not alleged any type of imputed liability or conspiracy theory against Tadamon.

ordinary banking services to various individuals cannot be deemed to have violated international law.

This Court has previously dismissed claims brought under the ATCA when a Plaintiffs' complaint failed to allege that the Defendants' actions operated "under the color of law." Terrorist Attacks I, 349 F. Supp. 2d at 828.  Again, the acts of an Islamic Bank operating in the Sudan that provided ordinary banking services to various individuals cannot be deemed to have operated "under the color of law".  See Mendonca v. Tidewater, Inc., 159 F. Supp. 2d 299, 302 (E.D.La. 2001) (holding that § 1350 "applies only to shockingly egregious violations of universally recognized principles of international law.") (quoting Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 167 (5th Cir. 1999).

Finally, and most importantly, Plaintiffs' fail to recognize that the TVPA only holds "individuals" liable and "not corporations" Terrorist Attacks I, 349 F. Supp. 2d at 828 ("Only individuals may be sued under the TVPA.") (quoting Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004); see also Terrorist Attacks II, 392 F. Supp. 2d at 565 (citing In re: S. African Apartheid Litg., 346 F. Supp. 2d 538, 550 (S.D.N.Y. 2004)); Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 28 (D.D.C. 2005).  Accordingly this Court dismissed all TVPA claims against Al Rajhi Bank, Saudi American Bank, Arab Bank, Al Baraka Investment and Development Corp, and National Commercial Bank in Terrorist Attacks I, and all claims against Rabita Trust, IIRO, Success Foundation, and the SAAR Network entities in Terrorist Attacks II because these entities are not individuals.  Likewise should be the case here – Tadamon is an Islamic bank.

For any or all of the foregoing reasons, Plaintiffs' claims brought under § 1350 must be dismissed since jurisdiction cannot be conferred under the ATCA and/or the TVPA.

## V.      JURISDICTION DOES NOT EXIST OVER TADAMON IN ANY CASE.

Merely stating that "Tadamon knowingly and intentionally provided financial support to Al Qaeda to attack America" (Pls.' Opp'n at 13) cannot be enough to establish a prima facie showing of personal jurisdiction as it is nothing more than a "conclusory allegation" which this Court has previously held is not acceptable. Terrorist Attacks II, 392 F. Supp. 2d at 556. Moreover, the Plaintiffs' "purposeful direction theory" provides only additional conclusory allegations as well as "argumentative inferences" such as "Tadamon supported Al Qaeda operatives and front organizations". Pls.' Opp'n at 15. This Court has held that "argumentative inferences" are not acceptable. Terrorist Attacks II, 392 F. Supp. 2d at 556.

### A.      Minimum Contacts.

As for establishing sufficient minimum contacts with the United States such that due process under the Fifth Amendment is not violated, (Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) Plaintiffs submit that Tadamon "knew and intended that the acts of its Al Qaida co-conspirators would impact America." Pls.' Opp'n at 15. It is evident from Plaintiffs' Complaint (Counts 1 - 8) that they have not made a conspiracy allegation against Tadamon. Plaintiffs 11th hour attempt to establish a conspiracy-based jurisdiction theory has no bearing here because at no point do the Plaintiffs submit that Tadamon had a "corrupt agreement" with anyone or that Tadamon engaged in an "overt act" to further its "corrupt agreement" or that Tadamon did anything with "intentional participation" to further an alleged plan or "corrupt agreement". Merely reciting the bare prima facie conspiracy requirements without supporting factual allegations is nothing more than a classic example of how Plaintiffs only provide this Court with "conclusory allegations" (Terrorist Attacks I, 349 F. Supp. 2d at 805) and "mere allegations of a

conspiracy will not suffice." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 121

(D.D.C. 2000).

Plaintiffs further submit that Tadamon allegedly provided banking services to Osama bin

Laden and al Qaida that it "purposefully directed its conduct [toward the United States]". Pls.'

Opp'n at 15. This cannot be sufficient to establish the higher level of contacts standard. See

Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414-415 (1984). Nor is it

sufficient to demonstrate "continuous and systematic" contacts with the forum. See Terrorist

Attacks II, 392 F. Supp. 2d at 559; see also Helicopteros, 466 U.S. at 415-416. Thus, because

Plaintiffs have failed to present sufficient contacts between Tadamon and the United States, the

Court should not exercise personal jurisdiction over Tadamon. However, should the Court find

that Plaintiffs have presented sufficient contacts even under the higher general jurisdiction

standard;[15] Tadamon submits it is not "reasonable" for Plaintiffs to haul Tadamon into this

Court.

**B.      Reasonableness.**

It is important for this Court to put Plaintiffs' wild accusations in a real world

perspective, starting with the observation that Tadamon has not been designated as a "terrorist"

entity by the Treasury Department.[16] Moreover, and as this Court knows, the U.S. Treasury

Department closely monitors international banks for alleged terrorist activities, for example

money laundering.[17] In light of the sensational allegations presented by the Plaintiffs,

Tadamon's international banking activities would at the very least have been the subject of an

investigation in some manner by either United States or European law enforcement authorities.

---

[15] Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414-415 (1984)

[16] See Office of Foreign Assets Control Specially Designated Nationals and Blocked Persons
(http://www.treasury.gov/offices/enforcement/ofac/sdn/t11sdn.pdf) last updated 6/17/06.

[17] See Gelman, Blustein, Linzer, Bank Records Secretly Tapped, Washington Post, June 23, 2006, for
extensive discussion of this topic.

To date, they have not.  In addition, Tadamon has not been indicted by the United States in any judicial district and has not been targeted for criminal charges by European-based banking regulatory bodies.  Certainly by now, five years after 9/11, the U.S. Government or European-based law enforcement authorities would have gathered enough information to support an indictment if one was warranted.

With respect to the Al Fadi testimony cited in paragraph 57 of their Complaint, *even if* Bin Laden used his bodyguard Mukhafi's bank account at Tadamon, (a point not conceded) this does not establish *minimum contacts* with the United States.  Such an allegation fails to establish "*reasonableness*" such that hauling Tadamon into the Southern District of New York would promote "fair play and substantial justice".  Int'l Shoe Co., 326 U.S. at 316.  Given the foregoing, this Court should grant Tadamon's motion to dismiss for want of jurisdiction.

## VI.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER TADAMON.

Due to a fundamental lack of connection between the Plaintiffs' injuries and the alleged conduct of Tadamon, this Court can decline to exercise jurisdiction over Plaintiffs claims pursuant to Rule 12(b)(1).  See Timberlane Lumber Co. v. Bank of America, 749 F.2d 1378, 1381, 1385 (9th Cir. 1984), cert. den., 472 U.S. 1032 (1985) (holding that even if a question of jurisdiction is closely intertwined with the merits of the case, a district court can dismiss a case for want of subject matter jurisdiction rather than dismissal for failure to state a claim, "when the allegations of the complaint are frivolous" and when it is not reasonable to deduce that one must have "foreseen the consequences of its actions.").

Even if the Court makes a giant leap of logic that there is some consequential relationship between Tadamon's alleged "conduct", e.g., Tadamon's shareholder status in Al Shamal status dating back to 1983 and the occurrence of September 11th, it is the kind of "indirect

consequence...at most, a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence…". <u>DiPonzio v. Riordan</u>, 679 N.E.2d 616, 620 (N.Y. 1977); <u>see</u> <u>also</u> <u>Timberlane</u>, 749 F.2d at 1385;  (holding that an investment decision to foreclose on assets in Honduras, which later has effect on plaintiff in the United States does not meet the foreseeability requirement for subject matter jurisdiction).  Accordingly, this court can dismiss Tadamon from Plaintiffs' complaint for want of subject matter jurisdiction.

## VII.    CONCLUSION

For good cause shown in this memorandum, this Court should grant Defendant's motion to dismiss based on failure to state a claim for which relief can be granted and lack of personal as well as subject matter jurisdiction.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
(202) 828-4130
*Attorney for Defendant Tadamon*

Dated: September 1, 2006

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of

Motion to Dismiss was served via electronic case filing on this 1st day of September, 2006, upon

the following:

Andrew J. Maloney III, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

_____/s/_____
Lisa D. Angelo, Esq.