REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

---

**DEFENDANT JAMAL BARZINJI'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO STAY**

---

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC 20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Dr. Jamal Barzinji*

Dated: September 15, 2006

On June 20, 2006 -- *nine months* after the Court denied, in part, Dr. Barzinji's motion to dismiss Plaintiffs' claims -- Plaintiffs served Dr. Barzinji with a set of *72* exceedingly overbroad document requests seeking not only the production of virtually every document Dr. Barzinji may have possessed, controlled or touched *going as far back as 1980*, but also documents concerning other so-called "SAAR Network" entities and individuals, many of whom have had motions to dismiss this complaint granted in full by the Court's September 21, 2005 Order and Opinion. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp .2d 539 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").

In light of Plaintiffs' overly broad requests, and the matter discussed below, a stay of this action is warranted to promote judicial economy and in the interests of justice. Following the Court's September 21 Opinion, Dr. Barzinji moved to dismiss the remaining claims asserted against him by the *Ashton, Burnett, New York Marine* and *Continental* Plaintiffs in this MDL. Those motions are currently pending before the Court and, until they are resolved it is unclear which, if any, of the other Plaintiffs in the MDL will be entitled to participate in discovery against Dr. Barzinji. Because it is not clear which claims may survive, it is equally unclear which, if any, of the requests would be relevant to the claims that do survive, if any.

Further, as the Court previously found in its January 13, 2006 Order concerning the *Burnett* Plaintiffs' subpoena to Wachovia Bank, it is improper for Plaintiffs to seek discovery concerning previously dismissed so-called "SAAR Network" Defendants from others, such as Dr. Barzinji. Plaintiffs' document requests improperly seek information concerning other "SAAR Network" Defendants, some of whom already have had claims against them dismissed and others of whom have motions to dismiss pending. It would be a waste of judicial resources

to litigate the proper scope of Plaintiffs' document requests until after the motions to dismiss are resolved.

Even more importantly -- a stay is necessary to protect Dr. Barzinji's Fifth Amendment rights. As Plaintiffs repeatedly have asserted, the Government is, and has been, investigating Dr. Barzinji for his alleged involvement in the so-called and alleged "SAAR Network" since at least March 2002. The Government's investigation apparently concerns the same acts and occurrences as the allegedly wrongful conduct that forms the basis of Plaintiffs' claims. In fact, Plaintiffs' complaint is based almost entirely on information they have obtained from the Government.

**REDACTED**

Given the overlap between the civil and criminal actions, and what appears to be cooperation and coordination between the Government and the Plaintiffs' attorneys in this MDL, a stay is warranted to protect Dr. Barzinji's Fifth Amendment rights.

**FACTUAL BACKGROUND**

A.  **The Government's March 2002 Searches of the Homes and Offices of the So-Called "SAAR Network"**

On March 20 and 21, 2002, in the wake of the September 11, 2001 attacks, the Government searched Dr. Barzinji's home, along with the homes and offices of numerous individuals and entities (several of which have had claims against them dismissed by this Court) allegedly associated with Dr. Barzinji -- the so-called "SAAR Network" -- in the apparent hope of obtaining evidence of alleged terrorism financing.

The warrants obtained by the Government authorizing the searches were based upon an affidavit of Special Agent David Kane of the United States Customs Service containing false

information. Among other things and apparently to establish the necessary "probable cause" to justify the searches, Kane concocted the phrase "SAAR Network," which he used as a shorthand description of an alleged conspiracy to finance terrorism overseas between and among a group of Muslim individuals, including Dr. Barzinji, and numerous not-for-profit and for profit entities located in Northern Virginia.

The warrants authorizing the searches were exceedingly broad and emboldened federal agents to seize virtually every document and piece of computer hardware and equipment at each of the homes and offices searched, including any and all documents referencing Al-Qaeda and Osama Bin Laden. Pursuant to those warrants, the federal agents confiscated hundreds of boxes of documents and dozens of computers and related hardware, including documents that never should have been seized such as students' academic records, student loan information, manuscripts, personal items and religious materials.

Since the searches -- now well over four and a half years ago -- the Government has returned most of the hundreds of boxes of documents and dozens of computers it confiscated. REDACTED the Government's investigation of the so-called "SAAR Network" lay dormant for more than four years.                                          it is now over four years later and still none of the entities or individuals searched by the Government on March 21 and 22, 2002, including Dr. Barzinji, have been arrested, indicted, designated as terrorists or had their assets seized or frozen.

**B.    The Multi-District Litigation**

Following the search, Dr. Barzinji, along with many of the individuals and entities allegedly comprising what David Kane has coined the "SAAR Network," were named as

3

Defendants in this and other actions that have been consolidated in this multi-district litigation. Based upon the Kane Affidavit, Plaintiffs' allegations against Dr. Barzinji are premised on the unsubstantiated existence of the so-called "SAAR Network." Most of the allegations concerning Dr. Barzinji's alleged wrongdoing, and the existence of a so-called "SAAR Network," are culled directly from the affidavit of Special Agent Kane that was under seal until October 2003 and used by the Government to obtain the warrants to search described above.

Since filing the complaint, Plaintiffs have continued to rely upon information and documents obtained from the Government. For example, Plaintiffs attached as Exhibit A to their Opposition to the Motion to Dismiss of Sulaiman Al-Rajhi, the alleged "founder" of the so-called "SAAR Network," unauthenticated and inadmissible hearsay notes of an interview allegedly conducted by David Kane of Youseff Nada. (*See* MDL Docket # 1029.) Plaintiffs have not explained how they obtained a copy of this document that was purportedly created by the Government during its confidential investigation of the so-called "SAAR Network."

## C. The Court's January and September 2005 Opinions

On January 18, 2005, in ruling on the motions made by numerous so-called "SAAR Network" defendants to dismiss the *Federal Insurance* complaint, the Court concluded that Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*").[1]

---

[1] Nevertheless, the Court found that some of the defendants "may be subject to personal jurisdiction in light of Plaintiffs' allegation that they purposefully directing [sic] its activities at the United States by transferring money to designated terrorists Youssef Nada and Ahmed Idris Nasreddin, particularly if they intended the money to support terrorism." *Id.* Therefore, the Court ordered the parties "to engage in jurisdictional discovery to determine which of the Network's entities have a presence in Virginia and which entities transferred money to Nada and (footnote continued on next page)

4

In its September 21, 2005 Opinion and Order, the Court dismissed the *Federal Insurance* Plaintiffs' claims against five so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza, all of whom who had claims against them dismissed because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, 392 F. Supp. 2d at 572. The Court however, distinguished the claims against Dr. Barzinji, and permitted Plaintiffs' Anti-Terrorism Act claim to survive. Even though the allegations against Dr. Barzinji concerning his alleged involvement with the so-called "SAAR Network" were very similar to those asserted against the dismissed Defendants, the Court found that the allegations provided Dr. Barzinji with "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *Id.*

The Court also dismissed the so-called "SAAR Network Entities" African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based."[2]

---

Nasreddin." *Id.* After these defendants voluntarily agreed to subject themselves to the jurisdiction of the Court and agreed to withdraw their objections based on lack of personal jurisdiction, they subsequently renewed their motions to dismiss which are currently pending before the Court.

[2] The Court also dismissed IIIT from *Ashton*, and Mar-Jac Poultry from *Ashton*, *Burnett* and *Federal Insurance*. *Id.* at 570-71.

D.  **The So-Called "SAAR Network" Defendants' Motions to Dismiss**

Shortly after the issuance of the September 21 Opinion, and after Plaintiffs had an opportunity to amend their complaints, each of the so-called "SAAR Network" defendants moved to dismiss all of the claims asserted against each of them in each of the remaining actions in the MDL pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. All of these motions are currently *sub judice*. A chart illustrating the status of each of the outstanding motions to dismiss of each so-called "SAAR Network" defendant is attached as Exhibit A.

On December 7, 2005, Dr. Barzinji moved to dismiss the claims asserted against him in the remaining actions in the MDL: *Ashton, Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center*. That motion has been fully briefed and was presented to the Court on March 8, 2006.

**REDACTED**

---

**REDACTED**

REDACTED

REDACTED

**F.     Plaintiffs' Document Requests to Dr. Barzinji**

On June 20, 2006, nine months after the Court's September 21, 2005 Opinion denying Dr. Barzinji's motion to dismiss –

· Plaintiffs served their first set of document requests on Dr. Barzinji.  A copy of the document requests is attached hereto as Exhibit B.

-------------------

REDACTED

8

The requests are 34 pages long and contain over 70 requests. They seek the production of virtually every document that may have been in Dr. Barzinji's possession custody or control for nearly 25 years. For example, the requests seek the production of all documents concerning Dr. Barzinji's work and employment *since 1980* and all documents concerning any foreign or U.S. accounts Dr. Barzinji holds, or has held, signatory authority over *since 1990*. The requests also seek the production of all documents seized by the Government during the March 2002 search, **REDACTED**

They also seek the production of "any and all documents relating to any of the 'SAAR Network-Related Individuals' or 'SAAR Network-Related Entities.'" The "SAAR Network" individuals are defined to include over 20 individuals including Taha Al-Alwani, M. Omar Ashraf, Muhammad Ashraf, Yaqub Mirza and Iqbal J. Unus who have had the claims asserted against them in this action dismissed pursuant to the Court's September 21, 2005 Opinion. The "SAAR Network" entities are defined to include dozens of entities, including African Muslim Agency, Heritage Education Trust, International Institute of Islamic Thought IIIT, Mar-Jac Investments, Inc., Mar-Jac Poultry, Reston Investments, Inc., Safa Trust, Inc., Sterling Charitable Gift Fund, Inc., Sterling Investment Group, LLC, Sterling Management Group, Inc., and York Foundation, Inc. all of whom have had claims against them dismissed in the *Burnett* action.

The "SAAR Network" entities are also defined to include: Amtrax Holding Ltd.; Amtrax Ltd.; Humana Charitable Trust; Censor, S.A.; Clover Management, Ltd.; Horizons Charitable Trust; Horizons Education Foundation; Key Overseas, Inc.; Nobel Finance Ltd; SAAR Foundation Canada, Inc.; SAAR International Trust; Sterling Packet Stream Fund, LLC; Sterling Ptech Fund, LLC; and York International Trust.

**REDACTED**

REDACTED

The inclusion of these entities in the document requests strongly evidences collaboration between the Government and counsel for the Plaintiffs.

The requests also seek the production of all documents concerning IIIT.

REDACTED, again evidencing collaboration between the government and counsel for the Plaintiffs.

## ARGUMENT

### I.  A STAY IS APPROPRIATE FOR PURPOSES OF JUDICIAL ECONOMY

MDL proceedings such as this one are "designed to promote judicial economy and avoid conflict and duplication in discovery by consolidating related actions for pretrial purposes." *In re Agent Orange Product Liability Litig.*, 597 F. Supp. 740, 751 (E.D.N.Y. 1984); *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.")

A stay of this action against Dr. Barzinji is necessary to promote these objectives by eliminating duplicative discovery and conserving the resources of the parties, their counsel and the judiciary. As noted above, Dr. Barzinji has fully briefed motions to dismiss in *Ashton*, *Burnett*, *New York Marine*, *Continental* and *World Trade Center*. Until these motions are resolved it is unclear which, if any, of the other Plaintiffs in the MDL will also be entitled to participate in discovery against Dr. Barzinji. Moreover, because it is not clear which claims may survive, it is equally unclear which, if any, of the requests would be relevant. Accordingly, a

10

stay of this action will avoid the duplication of discovery that will occur if the Court permits discovery against Dr. Barzinji to proceed at this time.

Further, as the Court recognized in its January 13, 2006 Order partially quashing the *Burnett* Plaintiffs' subpoena to Wachovia Bank, "dismissed actions ordinarily would give would-be litigants no authority to conduct discovery of their targeted defendants." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 377 (S.D.N.Y. 2004) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not . . . to salvage a lawsuit that has already been dismissed for failure to state a claim."); *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (Discovery is precluded "in instances where the Court has already ruled that the complaint is defective.").

Here, just as it was improper for the *Burnett* Plaintiffs to seek discovery concerning dismissed "SAAR Network" defendants from Wachovia, it is also improper for Plaintiffs to seek discovery concerning previously dismissed "SAAR Network" defendants from Dr. Barzinji. Because Plaintiffs' inclusion of document requests seeking information concerning dismissed "SAAR Network" defendants provides Dr. Barzinji with a legitimate ground to object to the requests, it would be a waste of judicial resources to litigate the proper scope of Plaintiffs' document requests until after all of the "SAAR Network" Defendants' motions to dismiss are resolved and it is determined which, if any, of these defendants will remain parties to this MDL and be subjected to discovery.

## II. A STAY IS APPROPRIATE TO PROTECT DR. BARZINJI'S FIFTH AMENDMENT RIGHTS

A stay of this civil action also is necessary to protect Dr. Barzinji's Fifth Amendment rights. Given the Government's ongoing investigation of Dr. Barzinji, many of the document requests Plaintiffs have posed to Dr. Barzinji would require him to assert his Fifth Amendment

rights, which would give rise to an adverse inference in this litigation. Courts recognize that "[w]here invocation of the fifth amendment imposes undue sanctions or penalties on a defendant, a court may in its discretion stay civil proceedings, postpone civil discovery, or impose protective orders and conditions in the furtherance of the interests of justice." *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1498 (S.D.N.Y. 1987).

It is black letter law that a "federal district court has the inherent power, in the exercise of its discretion, to stay an action." *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 297 (S.D.N.Y. 1987) (citing *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Granting a stay of a civil proceeding to await the outcome of a pending parallel criminal investigation is appropriate " 'when the interests of justice seem ... to require such action.' " *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (*quoting United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970)).

Courts in the Southern District of New York consider six factors when deciding whether circumstances exist warranting a stay:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Tr. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (footnotes omitted); *Walsh Sec., Inc. v. Cristo Prop. Mgmt, Ltd.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998) (considering the same six factors); *Volmar Distrs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (considering five of the six factors). Each of these factors weighs in favor of staying this action.

The first factor, the overlap of the issues in the civil and criminal cases, is "the most important issue" in deciding whether to grant a stay. *Walsh*, 7 F. Supp. at 527 (citing *Milton Pollack, Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D. Fla. 1989)). Here, there is almost complete identity between the civil claims in this action and the Government's criminal investigation. The civil and criminal cases revolve around the exact same set of "facts" and circumstances, and both are dependant upon the existence of, and Dr. Barzinji's involvement in, the so-called "SAAR Network." Indeed, the complaint is based almost entirely on the affidavit of Special Agent Kane used by the Government to obtain the warrant used to search Dr. Barzinji's home and office.

## REDACTED

Further, the need for a stay is heightened due to the strong evidence of collaboration and coordination between the Government and counsel for the Plaintiffs. It is a near certainty that any information produced by Dr. Barzinji will be immediately provided to the Government by Plaintiffs.

## REDACTED

Thus, given this overlap between the issues in the criminal and civil matters,

, and the apparent collaboration and cooperation between the Government and Plaintiffs' counsel, a stay is warranted.

The second factor, the status of the case, also favors a stay. Although often granted post-indictment, courts have not hesitated to grant motions to stay related civil proceedings prior to a criminal indictment, especially if such an indictment is imminent or a criminal investigation is active. *See, e.g., Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (upholding the district court's granting a pre-indictment stay); *Volmar Distribs*, 152 F.R.D. at 38 (granting a stay of civil proceedings against multiple defendants including one not criminally charged, until the parallel criminal proceeding was resolved); *FDIC v. Chuang*, 1986 WL 3518, at *1-2 (S.D.N.Y. 1986) (noting the court's discretionary power to justify staying civil proceedings until criminal matters are resolved, even where the government had only investigated, but not indicted, the defendants); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985) (staying the discovery in a civil proceeding even where no criminal charges had been filed); *Walsh Sec.*, 7 F. Supp. 2d at 527 (staying a civil proceeding where the government had not indicted defendants, but had executed search warrants, issued subpoenas, and informed defendants that they were part of a criminal investigation); *Campbell v. Eastland*, 307 F.2d 478, 480 (5th Cir. 1962) (asserting that investigation by Special Agents of the Internal Revenue Service sufficiently placed the defendant on notice that he was suspected of tax fraud); *LaRouche Campaign v. FBI*, 106 F.R.D. 500, 501 (D. Mass. 1985) (maintaining that the rule to stay civil discovery while more restrictive criminal discovery is in process applies "whether or not the litigant is actually a defendant in the parallel criminal case").

# REDACTED

**REDACTED**

Given the state of the criminal investigation and the outstanding document requests posed to him in this action, if a stay is not granted, Dr. Barzinji will be unduly prejudiced as he will be forced to decide:

> whether to respond or to assert [his] rights under the fifth amendment. If [he] choose[s] the former, [he] risk[s] providing the government with leads or evidence that may be used against [him] in the criminal case. If [he] choose[s] the latter course, [he] greatly increase[s] the chance that [he] be fond liable in [the] civil case for substantial sums of money.

*Brock v. Tolkow*, 109 F.R.D. at 806.

**REDACTED**

Moreover, if the stay is not entered, as discussed above, Dr. Barzinji, an individual of very limited means, will be subjected to the burdensome costs of duplicative discovery once the other motions are decided.

This prejudice that Dr. Barzinji would suffer absent a stay strongly outweighs any inconvenience to Plaintiffs and any harm to the public interest if the stay is granted. Given the still early stages of this litigation, Plaintiffs cannot demonstrate any prejudice from entry of a stay. The mere inconvenience that Plaintiffs may suffer from a delay does not outweigh the necessity of protecting Dr. Barzinji from the prejudice he will suffer should a stay not be granted. *See Corbin v. Fed. Deposit Ins. Corp.*, 74 F.R.D. 147, 149-50 (E.D.N.Y. 1977) (indicating that a

stay should be granted because the defendant's constitutional rights against self-incrimination are more important than inconvenience or delay to the other parties). Indeed, Plaintiffs' complaints of delay are muted by the fact that they waited nine months after the September 2005 Opinion before finally issuing document requests to Dr. Barzinji.

Furthermore, the delay in the proceeding will not harm the public interest. *See Brock*, 109 F.R.D. at 119 ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it"); *Dresser*, 628 F.2d at 1376 (granting a stay because doing so "would not seriously injure the public interest"). Such public danger exists only where there is a "tangible threat of immediate and serious harm to the public at large." *Brock*, 109 F.R.D. at 120. This action relates to past events and does not involve a tangible threat to any individual or group.

Finally, the stay would be beneficial for purposes of judicial economy. Evidence obtained in any criminal proceeding could reduce the scope of discovery in the civil proceeding and later be used in the civil proceeding. *See id.* at 119 (finding no harm from staying civil discovery because the evidence from the criminal trial will reduce discovery during the civil proceeding).

## CONCLUSION

For all the foregoing reasons, Dr. Barzinji respectfully requests that the Court grant his motion for a stay of this action pending the Court's resolution of outstanding motions to dismiss and completion of the Government's criminal investigation of Dr. Barzinji.

Respectfully submitted,

Dated:   September 15, 2006          By:   /s/ Nancy Luque
                                            Nancy Luque (NL-1012)

16

                Steven K. Barentzen (SB-8777)
                DLA PIPER US LLP
                1200 Nineteenth Street
                Washington, DC 20036-2247
                Tel: 202-861-3900
                Fax: 202-223-2085

                *Attorneys for Jamal Barzinji*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2006, I caused an electronic copy of the foregoing Memorandum Of Law In Support Of Motion For A Stay to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/ Steven K. Barentzen
Steven K. Barentzen (SB-8777)