# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**
**DIRECTED TO DEFENDANT JAMAL BARZINJI**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
June 20, 2006

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANT JAMAL BARZINJI**

Plaintiffs in Federal Insurance Co. v. al Qaida, Case No. 03-CV-6978 (RCC), propound and serve on Jamal Barzinji (hereinafter "Defendant"), the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

**INSTRUCTIONS**

1.    In producing documents and other things, Defendant is requested to furnish all documents or things in his possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.    Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.    In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.    Documents shall be produced as they are kept in the usual course of business and the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the

2

documents are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.     Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.     Documents attached to each other should not be separated.

7.     If any documents requested herein have been lost, discarded, destroyed or otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.     Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.     Each of these requests shall be continuing. If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

3

4

A.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

B.    The date of the document or transaction involving the information;

C.    The names of each author and any and all participants with respect to the information;

D.    The names of any and all signatories of the document, if any;

E.    The name of the document's current custodian;

F.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

G.    A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.    For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary, Second College Edition* by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.    If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1.    The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope in the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.    The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.    The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipient(s).

4.    The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each

5

9

communication and state the contents of the communication in verbatim if possible; (iv) identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5.  The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.  The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

7.  The term "Plaintiffs" shall refer to Plaintiffs in Federal Insurance Co. v. al Qaida, Civil Action No. 03-CV-6978 (RCC).

8.  The terms "Defendant," "You," "Your," and "Barzinji" shall refer to Jamal Barzinji and any officer, director, trustee, employee, attorney, consultant, accountant, agent, or representative acting on his behalf.

9.  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

10.  The term "person" is defined as any natural person or any business, legal or government entity or association.

7

11.   The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

12.   The term "concerning" means relating to, referring to, describing, evidencing or constituting.

13.   The terms "all" and "each" shall be construed as all and each.

14.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.   The use of the singular form of any word includes the plural and vice versa.

16.   The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

17.   The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

18.   The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a

8

violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

19.     The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

20.     The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

21.     The term "SAAR Network-Related Entities" shall mean any of the following entities and any past or present subsidiaries, affiliates, and/or branches of such organizations, their directors, officers, employees, agents and representatives:  African Muslim Agency, Al-Aqsa Educational Fund, AMC Foundation, Amana Limited, Amana Mutual Funds, American Institute for Islamic Societal Studies, American Muslim Foundation, American Muslim

6

Council, Global Enterprises, LLC, Global Holdings, LLC, Grove Corporate Plaza, Grove Street Corporation, Heritage Education Trust, Inc. (a/k/a Marwa Education Trust), Heritage Holdings, Herndon Grand, Inc., Humana Charitable Trust, International Education Trust, Inc., International Institute of Islamic Thought, Inc., International Islamic Charitable Organization ("IICO"), International Islamic Relief Organization, International Graphics Printing Service, Islamic Relief Organization, Makkah Mukarramah Charity Trust, Inc., Mar-Jac Investments, Mar-Jac Farms, Inc., Mar-Jac Holdings, Inc., Mar-Jac Poultry, Inc., Mena Corporation, Mena Estates, Inc. d/b/a Mena for Development, Mena Investments, Inc., Mirza Family Limited Partnership, Muslim World League, Piedmont Poultry, Reston Investments, Inc., SAAR Foundation Canada, Inc., SAAR Foundation, Inc., SAAR International, Inc., Safa Trust, Safty, LLC, Sanabel Al Kheer, Inc., Sana-Bell, Inc., Sterling Advisors, Inc., Sterling Charitable Gift Fund, Sterling Infogain Fund, LLC, Sterling Investment Group, LLC, Sterling Lynux Works, LLC, Sterling Management Group, Inc., Sterling Packet Stream Fund, LLC, Sterling Ptech Fund, LLC, Sterling Poultry Company, Sterling Stock Investments, LLC, Sterling Technology Fund, LLC (formerly Sterling Malaysian Fund, LLC), The Success Foundation, Inc., Taibah International Aid Association, York Foundation, York International, and 500 Grove Street, LLC.

22.    The term "SAAR Network-Related Individuals" shall mean any of the following individuals: Abdulrahman Alamoudi, Taha Jaber Al Alwani, Abdullah M. Al Mahdi, Abdullah Bin Saleh Al Obaid, Abdullah Sulaiman Al Rajhi, Sulaiman Abdul Aziz Al Rajhi, Hisham Altalib, M. Omar Ashraf, Muhammad Ashraf, Hassan A.A. Bahafzallah, Jamal Barzinji, Ibrahim Hassaballah, Mohammad Jaghlit, M. Yaqub Mirza, Khaled Nouri, Mohamed S. Omeish, Samir I. Salah, Cherif Sedky, Ahmad Totonji, Iqbal J. Unus, and Tarik Hamdi.

23. The term "Golden Chain-Related Individuals" shall mean the following individuals: Suleiman al-Rashid, Abdel Qader Bakri, Youssef Jameel, Ibrahim Muhammad Afandi, Saleh Abdullah Kamel, Suleiman Abdulaziz Al-Rajhi, Mohammed Bin Abdullah al-Jomaih, Abdulrahman Hassan Al-Sharbatly, Ahmed Mohamed al-Naghi, Khalid Bin Mahfouz, Abdel Qader Faqeeh, Salah Al-Din Abdel Jawad (a/k/a Salahuddin Abduljawad), Ahmad Turki Yamani (a/k/a Ahmad Zaki Yamani), Abdel Hadi Taher, Ahmad Al-Harbi, Mohammed Al-Issai (a/k/a Mohammed Al-Issaei), Hamad Al-Husaini, Salem Taher, Adel Abdul Jalil Batterjee, Usama Bin Laden, Wael Hamza Julaidan, and Abu Mazin (a/k/a Mazin M. Bahareth).

24. The term "Nada-Nasreddin Entities" shall mean any and all businesses, companies, trusts, organizations, charities, foundations, and/or organizations which are or have been owned, operated, or controlled by Youssef Nada and/or Ahmed Idris Nasreddin, and/or in which Youssef Nada and/or Ahmed Idris Nasreddin serve or have served as a director, officer, trustee, incorporator, employee, or holds or held more than ten percent (10%) of the outstanding stock, including but not limited to, Bank Al Taqwa, Al Taqwa Management Organization, Nada Management Organization, Al Taqwa Trade, Property and Industry Co. Ltd., Akida Bank Private Limited, Akida Investment Co. Ltd., Nasreddin Group International Holding Limited, Nasco Nasreddin Holding A.S., Nascotex S.A., Nasreddin Foundation, BA Taqwa for Commerce and Real Estate Company Limited, Miga-Malaysian Swiss, Gulf and African Chamber, Gulf Center S.R.L., Nascoservice S.R.L., NASCO Business Residence Center SAS Di Nasreddin Ahmed Idris EC, Nasreddin Company Nasco SAS Di Ahmed Idris Nasreddin EC, Nada International Anstalt, and Nasreddin International Group Limited Holding.

10

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO DEFENDANT JAMAL BARZINJI**

1.      Please provide any and all documents governing, describing, detailing, or otherwise relating to Your employment history from 1980 to the present, including without limitation, any and all resumes, curriculum vitaes, biographies, abstracts, media reports, digests, summaries, employment contracts, and/or outlines.

**ANSWER:**

2.      From the period beginning January 1990 through the present, please provide any and all documents relating to all accounts in United States banking institutions ("U.S. Bank Accounts") held by You, and/or any U.S. Bank Accounts over which You hold or have held signatory authority.   Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You and the U.S. banking institution, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

3.      From the period beginning January 1990 through the present, provide any and all documents relating to all accounts in foreign banking institutions ("Foreign Bank Accounts")

held by You, and/or any Foreign Bank Accounts over which You hold or have held signatory authority. Such documents shall include, but are not limited to, those specified in Request #2.

**ANSWER:**

4.     From the period beginning January 1990 through the present, please provide any and all documents relating to any of the SAAR Network-Related Entities or Saar Network-Related Individuals.

**ANSWER:**

5.     Please provide any and all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and any of the SAAR Network-Related Entities, including without limitation, any and all documents relating to any positions You held or hold within those entities.

**ANSWER:**

6.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from any of the Saar Network-Related Entities, including without limitation, all documents relating to the transfer of funds between You and those entities.

**ANSWER:**

7.      From the period beginning January 1990 through the present, please provide any and all documents relating to Your role in the organization, funding, oversight, supervision, management, and/or control over any of the Saar Network-Related Entities' operations, including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

8.      From the period beginning January 1990 through the present, please provide any and all documents relating to Your supervision, management, control of, or distribution of any of the Saar Network-Related Entities' funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support and the purpose for such disbursements.

**ANSWER:**

9.      Please provide any and all documents governing, describing, detailing or otherwise relating to the relationships among and between the Saar Network-Related Entities.  In the event that any of the Saar Network-Related Entities currently share or shared office space, or are/were located in the same building, please provide such documents.

**ANSWER:**

10.     From the period beginning January 1990 through the present, please provide any and all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of any of the Saar Network-Related Entities, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

11.     From the period beginning January 1990 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and any of the SAAR Network-Related Individuals.

**ANSWER:**

12.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from any of the SAAR Network-Related Individuals, including without limitation, all documents relating to the transfer of funds between You and those individuals.

**ANSWER:**

13.     Please provide any and all documents governing, describing, detailing or otherwise relating to the relationships among and between the Saar Network-Related Entities and any of the Saar Network-Related Individuals, including without limitation, any and all

documents relating to any positions such individuals held or hold within the Saar Network-Related Entities.

**ANSWER:**


14.     From the period beginning January 1990 through the present, please provide any and all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of any of the Saar Network-Related Individuals, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**


15.     From the period beginning January 1990 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.  Such documents shall include but are not limited to, any and all documents relating to any positions You held or hold within those entities.

**ANSWER:**


16.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from any individuals, businesses, charities, financial

institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.  Such documents shall include but are not limited to, all documents relating to the transfer of funds between You and those persons and/or entities.

**ANSWER:**


17.   From the period beginning January 1990 through the present, please provide any and all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between any of the Saar Network-Related Entities and any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.

**ANSWER:**


18.   From the period beginning January 1990 through the present, please provide any and all documents any of the Saar Network-Related Entities sent to, and/or received from any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.  Such documents shall include but are not limited to, all documents relating to the transfer of funds between the Saar Network-Related Entities and those persons and/or entities.

**ANSWER:**

19.     From the period beginning January 1990 through the present, please provide any and all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

20.     Please provide all documents relating to any relationship between any of the Saar Network-Related Entities and Sulaiman Abdul Aziz Al Rajhi, or any member of the Al Rajhi family.

**ANSWER:**

21.     Please provide all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and Sulaiman Abdul Aziz Al Rajhi, or any member of the Al Rajhi family.

**ANSWER:**

22.    Please provide any and all documents relating to Sulaiman Abdul Aziz Al Rajhi's role, or the role of any member of the Al Rajhi family, in the creation, organization, funding, oversight, supervision, operation, and/or management of any of the Saar Network-Related Entities.

**ANSWER:**

23.    From the period beginning January 1990 through the present, please provide any and all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of Sulaiman Abdul Aziz Al Rajhi or any member of the Al Rajhi family, including without limitation, any accounts over which You hold or have held signatory authority.

**ANSWER:**

24.    Please provide all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

25.    From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from any of the Golden Chain-Related Individuals,

and/or any individual or entity associated therewith, including without limitation, all documents relating to the transfer of funds between You and those persons and/or entities.

**ANSWER:**


26.     Please provide all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between any of the Saar Network-Related Entities and any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith.

**ANSWER:**


27.     From the period beginning January 1990 through the present, please provide any and all documents any of the Saar Network-Related Entities sent to, and/or received from any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith, including without limitation, all documents relating to the transfer of funds between those entities and individuals.

**ANSWER:**


28.     Please provide any and all documents relating to the role of any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith, in the creation, organization, funding, oversight, supervision, operation, and/or management of any of the Saar Network-Related Entities.

**ANSWER:**

19

29.     From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of any of the Golden Chain-Related Individuals, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

30.     Please provide all documents relating to any investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by any of the Golden Chain-Related Individuals, and/or any individual or entity associated therewith.

**ANSWER:**

31.     Please provide all documents relating to any decision to terminate any relationship with any of the Golden Chain-Related-Individuals, and/or any individual or entity associated therewith, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

32.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the World Assembly of Muslim Youth ("WAMY"), including without limitation, any and all documents relating to any positions You held or hold within WAMY.

**ANSWER:**

33.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from WAMY, including without limitation, all documents relating to the transfer of funds between You and WAMY.

**ANSWER:**

34.     From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of WAMY, and/or any accounts over which You hold or have held signatory authority.

**ANSWER:**

35.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and any Saar Network-Related Entity and/or any Saar Network-Related Individual, including without limitation, any and all documents relating to any positions such individuals held or hold within WAMY.

**ANSWER:**

36.    From the period beginning January 1990 through the present, please provide any and all documents any Saar Network-Related Entity and/or any Saar Network-Related Individual sent to, and/or received from WAMY, including without limitation, all documents relating to the transfer of funds between WAMY and such entities and/or individuals.

**ANSWER:**

37.    From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution any Saar Network-Related Entity and/or any Saar Network-Related Individual holds or held jointly with, or on behalf of WAMY, and/or any accounts over which such entities and/or individuals hold or have held signatory authority.

**ANSWER:**

38.    Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the Muslim World League ("MWL").

**ANSWER:**

39.     From the period beginning January 1990 through the present, please provide any and all documents WAMY sent to, and/or received from the MWL, including without limitation, all documents relating to the transfer of funds between WAMY and the MWL.

**ANSWER:**


40.     From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution WAMY holds or held jointly with, or on behalf of the MWL, and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**


41.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the International Islamic Relief Organization ("IIRO").

**ANSWER:**


42.     From the period beginning January 1990 through the present, please provide any and all documents WAMY sent to, and/or received from the IIRO, including without limitation, all documents relating to the transfer of funds between WAMY and the IIRO.

**ANSWER:**

43.     From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution WAMY holds or held jointly with, or on behalf of the IIRO, and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**


44.     Please provide any and all documents relating to any audit, analysis, examination, or review of Your financial accounts, investments, assets, capital, and/or financial affairs, conducted either by the Internal Revenue Service or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**


45.     Please provide any and all documents relating to any audit, analysis, examination, or review of any of the Saar Network-Related Entities' financial accounts, investments, assets, capital, and/or financial affairs, conducted either by the employees of such entities, the Internal Revenue Service, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**


46.     Please provide any and all documents relating to any business, employment, financial, charitable, religious, personal or other relationship between You and Youssef Nada,

Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any individual or entity associated therewith.

**ANSWER:**


47.      From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from Youssef Nada, Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any individual or entity associated therewith, including without limitation, all documents relating to the transfer of funds between You and those individuals and entities.

**ANSWER:**


48.      Please provide any and all documents relating to or referring to any entity owned, operated, or controlled by Youssef Nada, Ahmed Idris Nasreddin, and/or any agent acting on their behalf.

**ANSWER:**


49.      From the period beginning January 1990 through the present, please provide any and all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of Youssef Nada, Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any such accounts over which You hold or have held signatory authority.

**ANSWER:**

50.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between Youssef Nada, Ahmed Idris Nasreddin, or any Nada-Nasreddin Entity and any Saar Network-Related Entity and/or any Saar Network-Related Individual.

**ANSWER:**


51.     From the period beginning January 1990 through the present, please provide any and all documents Youssef Nada, Ahmed Idris Nasreddin, or any Nada-Nasreddin Entity sent to, and/or received from any Saar Network-Related Entity and/or any Saar Network-Related Individual, including without limitation, all documents relating to the transfer of funds.

**ANSWER:**


52.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between Youssef Nada, Ahmed Idris Nasreddin, or any Nada-Nasreddin Entity and any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.

**ANSWER:**

53.     From the period beginning January 1990 through the present, please provide any and all documents Youssef Nada, Ahmed Idris Nasreddin, or any Nada-Nasreddin Entity sent to, and/or received from any individuals, businesses, charities, financial institutions, religious organizations, and/or other entities located in, or organized under the laws of, the Isle of Man, including but not limited to, Amana Limited, Humana Charitable Trust, York International Trust, and the Happy Hearts Trust.  Such documents shall include but are not limited to, all documents relating to the transfer of funds.

**ANSWER:**


54.     Please provide all documents relating to any and all information or notification You received prior to September 11, 2001, that Youssef Nada, Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any individual or entity associated therewith, may have been or were laundering funds on behalf of, diverting funds to, or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

55.     Please provide all documents relating to any information or notification You received prior to September 11, 2001, that Youssef Nada and/or Ahmed Idris Nasreddin were associates of Osama Bin Laden, and/or were supporters, sympathizers, or financiers of al Qaida.

**ANSWER:**

56.     Please provide any and all documents relating to any investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by Youssef Nada, Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any individual or entity associated therewith.

**ANSWER:**

57.     Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with Youssef Nada, Ahmed Idris Nasreddin, any Nada-Nasreddin Entity, and/or any individual or entity associated therewith, as a result of any investigation into possible links to the financing of terrorist organizations.

**ANSWER:**

58.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the persons identified in Exhibit A.

**ANSWER:**

59.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from the persons identified in Exhibit A, including without limitation, all documents relating to the transfer of funds between You and those persons.

**ANSWER:**

60.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the entities identified in Exhibit B, including without limitation, any and all documents relating to any positions You held or hold within those entities.

**ANSWER:**

61.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from the entities identified in Exhibit B, including without limitation, all documents relating to the transfer of funds between You and those entities.

**ANSWER:**

62.     Please provide all documents relating to any investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by You and/or any accounts over which you hold or held signatory authority.

**ANSWER:**

63.     Please provide copies of all documents and things that were in Your possession and which were seized by the United States Government between September 11, 2001 and the present.

**ANSWER:**

64.     Please provide all copies of any and all documents and things that have been seized by, or produced by You to, any investigators, auditors, government officials or agencies, and/or international bodies concerning Your alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities.

**ANSWER:**

65.     Please provide any and all documents relating to Operation Green Quest or any investigation by any governmental authority relating to any of the Saar Network-Related Individuals or any of the Saar Network-Related Entities.

**ANSWER:**


66.     Please provide all documents relating to any and all information or notification You received prior to September 11, 2001 that any of the Saar Network-Related Individuals or any of the Saar Network-Related Entities, including any individual or entity associated therewith, was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**


67.     Please provide all documents relating to any and all information or notification You received prior to September 11, 2001 that any of the Saar Network-Related Individuals or any of the Saar Network-Related Entities, including any individual or entity associated therewith, may have been diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

31

**ANSWER:**


68.     Please provide all documents relating to any investigations or inquiries conducted by the United States Government or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), into financial transactions linked to accounts held solely or jointly by any of the Saar Network-Related Entities and/or Saar Network-Related Individuals.

**ANSWER:**


69.     Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any of the Saar Network-Related Individuals or any of the Saar Network-Related Entities, including any individual or entity associated therewith, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad, including without limitation, any such individuals or entities identified in response to Requests #66-68.

**ANSWER:**


70.     Please provide all copies of any and all documents that have been seized by the United States Government in relation to any investigation of You, any Saar Network-Related Entity, and/or any Saar Network-Related Individual.

**ANSWER:**

71.     Please provide all documents sent to and/or received from the United States Government in relation to any investigation of You, any Saar Network-Related Entity, and/or any Saar Network-Related Individual.

**ANSWER:**

72.     Please provide all documents relating to any and all information or notification You received prior to September 11, 2001, that al Qaida aspired to conduct terrorist attacks: (i) against the United States and its interests abroad, (ii) against the United States within its borders, and/or (iii) against New York City and the World Trade Center complex, Washington D.C. or other U.S. landmarks.

**ANSWER:**

73.     Please provide all documents relating to any understanding or agreement with any defendant named in the consolidated civil action, 03 MD 1570, whereby You have agreed to pay, indemnify, or reimburse any of their costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against such defendant.  Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

74.     Please provide all documents relating to any understanding or agreement between You and any other individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse You for any costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against You.   Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

Respectfully submitted,

Dated: June 20, 2006                        BY: _____/s/_____

Stephen A. Cozen, Esq.
Elliott R. Feldman, Esq.
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
1900 Market Street
Philadelphia, PA 19103
Tele: (215) 665-2000
Fax: (215) 665-2013

Attorneys for *Federal Insurance* Plaintiffs

**EXHIBIT A**

Abdullah Bin Laden
Abdulrahman Alamoudi
Basheer Nafi
Khalid Bin Mahfouz
Khaled Saffuri
Mousa Abu Marzook
Ramadan Abdullah Shallah
Sheikh Abdel Aziz Odeh
Sheikh Omar Abdel Rahman
Soliman Bihieri
Sulaiman Al Ali
Tareq M. Al Swaidam

## EXHIBIT B

Al Baraka Investment and Development Company
American Muslim Council
Bank Islam Malaysia Berhad ("BIMB")
BIMB Holdings BHD
Center for the Study of Islam & Democracy ("CSID")
Graduate School of Islamic and Social Sciences
Hamas
Holy Land Foundation
Islamic Institute
National Commercial Bank
North Atlantic Islamic Trust

PHILADELPHIA\2398285\2 117430.000