UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-5738 and 03-CV-9849 (S.D.N.Y.)
> *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.,* Case No. 1:02-6977 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Cantor Fitzgerald & Co., et al. v. Akida Bank Private, Ltd., et al.*, Case No. 04-CV-7065 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Estate of John P. O'Neill, Sr., on behalf of John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-1923 (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPLEMENT
MOTIONS TO DISMISS OF DEFENDANT KHALID BIN MAHFOUZ**

Plaintiffs' claims that Defendant Khalid Bin Mahfouz engaged in terrorist financing are based upon the work of their "lead investigator," Jean-Charles Brisard, including Mr. Brisard's construction of key documents allegedly supporting those claims. But yesterday, October 4, 2006, Mr. Brisard provided a Witness Statement in settlement of English and Swiss defamation actions which explains in detail how his prior assertions regarding Mr. Bin Mahfouz's alleged involvement in terrorist financing are "entirely and manifestly false." October 4, 2006 Witness Statement of Jean-Charles Brisard ("Witness Statement") ¶ 9 (attached as Exhibit A).

For example, while Plaintiffs repeatedly cite an NCB "audit report" supposedly showing that Mr. Bin Mahfouz provided material support to al Qaeda and causing Mr. Bin Mahfouz to be placed under arrest (*see* Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Khalid Bin Mahfouz (Docket #1146) ("Consolidated Opp.") at 3-4), Mr. Brisard now confirms that he has no evidence to support either of these claims. Witness Statement ¶¶ 25.1-25.4. Similarly, while Plaintiffs assert, based in part on Mr. Brisard's affidavit, that the so-called "Golden Chain" document showed that Mr. Bin Mahfouz had supported al Qaeda (Consolidated Opp. at 7), Mr. Brisard now confirms that he does not believe that this document should be construed as evidence that Mr. Bin Mahfouz funded al Qaeda. Witness Statement ¶¶ 12-13. And while Plaintiffs claim that Mr. Bin Mahfouz used the Muwafaq Foundation as a front to fund al Qaeda (Consolidated Opp. at 2-3), Mr. Brisard now confirms that he has no evidence to indicate that Mr. Bin Mahfouz's donations to Muwafaq were "for anything other than humanitarian and charitable purposes." Witness Statement ¶ 27.

In light of Plaintiffs' prior reliance on Mr. Brisard in their Complaints and briefing, Mr. Bin Mahfouz hereby respectfully requests leave to supplement his Motions to Dismiss in the above-captioned cases with Mr. Brisard's new Witness Statement, which shows the allegations on which Plaintiffs rely for their claim of jurisdiction over Mr. Bin Mahfouz to be baseless.[1]

## I.   PROCEDURAL BACKGROUND

In 2003, Mr. Bin Mahfouz and his son, Abdulrahman Bin Mahfouz, brought two defamation actions in England against Mr. Brisard to challenge allegations that they were

---

[1] Though these motions are based on the inadequacy of the factual allegations contained in the pleadings, "matters outside the pleadings . . . may also be considered in resolving a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) without converting it into one for summary judgment." *See Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996) *aff'd*, 126 F.3d 25 (2d Cir. 1997)  Consideration of Mr. Brisard's Witness Statement is particularly appropriate in light of Plaintiffs' reliance upon Mr. Brisard's declarations and affidavits in this litigation, as well as the so-called "audit report" that was obtained by Plaintiffs from Mr. Brisard.

involved in financing terrorism.  Mr. Brisard made those allegations in his book, *Forbidden Truth - U.S.-Taliban Secret Oil Diplomacy And The Failed Hunt For Bin Laden*, and in a report entitled *"Terrorism Financing:  Roots and trends of Saudi terrorism financing"* dated December 19, 2002 ("the Report"), which Mr. Brisard published on his website, www.jcbconsulting.com and a number of other websites, and which he also sent to the United Nations and other bodies with an interest in terrorism funding.  Both of these cases ended in judgments against Mr. Brisard for damages, costs and injunctive relief.  An additional defamation action regarding the Report was filed in Switzerland and expected to come to trial next year.

On October 4, 2006, Mr. Brisard entered into a settlement of the claims and judgments arising from his publications.  In this settlement, Mr. Brisard agreed to provide a letter of apology to both Mr. Bin Mahfouz and Abdulrahman Bin Mahfouz and agreed to publish an apology in several prominent publications and on his website.  He also agreed to pay damages of £15,000 to be donated by Mr. Bin Mahfouz and Abdulrahman Bin Mahfouz to UNICEF, and to use his best efforts to arrange for every edition and version of *Forbidden Truth* to be withdrawn from sale in every jurisdiction in which it remains available for sale.  Finally, Mr. Brisard agreed to provide to the Bin Mahfouz parties a Witness Statement for submission in any relevant judicial proceedings in order to "set the record straight" by explaining why he made his defamatory claims, and why, in light of his current understanding of the facts, he no longer believes them.  Witness Statement ¶ 10.

## II.     THE RELEVANCE OF THIS STATEMENT

The claims Plaintiffs have made against Mr. Bin Mahfouz restate, and appear to be based upon, the allegations made in Mr. Brisard's publications.  Plaintiffs have also relied upon evidence submitted by Mr. Brisard in their opposition to the motions to dismiss of

Mr. Bin Mahfouz and other defendants.[2]  The *Burnett* Plaintiffs have represented to the Court that their investigative team is "headed by Jean-Charles Brisard, an expert on corporate and diplomatic intelligence,"[3] and their counsel's website continues to hold Mr. Brisard out as an "expert" member of their "Legal and Investigative Team."[4]  As discussed below, Mr. Brisard's Witness Statement is relevant to all of the major factual allegations stated by Plaintiffs against Mr. Bin Mahfouz, on which their claim for personal jurisdiction is based.

### 1.  The NCB "Audit"

Plaintiffs' Consolidated Opposition to the motions to dismiss filed by Mr. Bin Mahfouz focuses primarily on their contention that an alleged "audit report" of the National Commercial Bank ("NCB") revealed in 1999 the transfer of $77 million during Mr. Bin Mahfouz's tenure at NCB to charities serving as fronts for Osama Bin Laden ("OBL") and al Qaeda to provide financial support for terrorism.  *See* Consolidated Opp. at 2-6, 15, 23-24.  Further, Plaintiffs claim that "[a]n audit . . . reveals the transfer of $3 million for Osama bin Laden that was moved from the accounts of wealthy Saudi businessmen to Blessed Relief."  *Burnett* Third Amended Complaint ("*Burnett* 3AC") ¶ 332; *see also id.*, ¶ 96.  Plaintiffs also contend that this audit report led to the arrest of Mr. Bin Mahfouz by Saudi authorities.  *See* Consolidated Opp. at 3.

---

[2] *See, e.g.*, Affidavit of Jean-Charles Brisard ("Brisard Golden Chain Affidavit"), Exhibit D to Declaration of Draper Affidavit in Support of Plaintiffs' Supplemental Memorandum in Opposition to Motions to Dismiss of Wa'el Hamza Jelaidan, Khalid Bin Mahfouz and Yousef Jameel ("Plaintiffs' Supplemental Opposition"), submitted in *Burnett*, Civ. Action No. 02-1616 (JR) (D.D.C.) (Docket No. 977); Declaration of Jean-Charles Brisard, attached as Exhibit B to Declaration of Jodi Westbrook Flowers in Opposition to Motion to Dismiss of Yeslam Binladin (Docket No. 1665) (filed by plaintiffs in *Burnett*, *Federal Insurance*, *Continental Casualty*, *Euro Brokers*, *New York Marine*, and *World Trade Center Properties* actions); Declaration of Jean-Charles Brisard, attached to Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Bakr Bin Ladin, Omar Bin Ladin, Tariq Bin Ladin, Mohammed Bin Ladin Company, and Bin Ladin Group International Company, Ltd. (Docket No. 1773).

[3] *See* Letter from Ronald L. Motley to the Honorable Richard Conway Casey (December 23, 2003) at 3.

[4] Motley Rice, LLC website, http://www.motleyrice.com/terrorism/saudi_case.asp, last visited October 5, 2006.

- 4 -

This alleged "audit report," which is cited in Plaintiffs' Complaints as the predicate for many of the allegations against KBM and NCB, *see, e.g.*, *Burnett* 3AC ¶¶ 94-96, 332, was disclosed by Mr. Brisard in an English defamation action filed by Mr. Bin Mahfouz against *The Mail on Sunday* (an English newspaper),[5] and attached as Tab B to Mr. Bin Mahfouz's *Burnett* motion to dismiss.[6]  Mr. Brisard is apparently Plaintiffs' source for this document, since he states that he received it, already translated into English, from "French intelligence services."  Witness Statement ¶ 23.

As explained in Mr. Bin Mahfouz's previous briefs, this document – whether or not it is authentic – provides no indication that funds were transferred for purposes of supporting terrorism.  Mr. Brisard now agrees.  Mr. Brisard states that the document "appears to be a summary of a regular audit of the NCB that all banks carry out on a yearly basis" which refers to payments to charities but "in no way links those payments and charities to Osama Bin Laden." Witness Statement ¶ 23.  Mr. Brisard further states that he has (1) "no evidence to suggest that the Saudi Arabian Government ordered a special audit of the NCB;" (2) "no evidence to support the allegation that Sheikh Khalid Bin Mahfouz was placed under house arrest in a military

---

[5] *See* Witness Statement of Jean-Charles Brisard of 5/21/03 and Attached Ex. JCB 14 ("Extracts from Saudi government audit of National Commercial Bank"), *Mahfouz v. Beaton,* Case No. HQ03X00518 (High Court, Queen's Bench Division) (hereinafter "*Mail on Sunday* Statement") ¶ 1 (attached as Tab B to Mr. Bin Mahfouz's motion to dismiss *Burnett v. Al Baraka Invest. And Dev. Corp.*, Civ. Action No. 02-1616 (JR) (D.D.C.) (Docket No. 319)).  In this Statement, Mr. Brisard says:
> I confirm that I have obtained from Intelligence sources extracts from the Saudi Government's audit of NCB. . . .  A copy of the extracts (which have been translated) are attached at "JCB14".  The audit points out that $3 million was transferred to the Muwafaq Foundation, which is suspected of supporting Osama Bin Ladin's activities . . . .

*Mail on Sunday* Statement ¶ 18.

[6] Because the alleged NCB "audit report" is cited in the Complaint and is integral to Plaintiffs' claims with respect to KBM, it is properly considered on a motion to dismiss.  "In deciding a 12(b)(6) motion to dismiss, the Court will consider the facts alleged in the pleadings, documents attached as exhibits to or incorporated by reference in the pleadings, and matters about which the Court may take judicial notice." *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 77 (D.D.C. July 22, 2003); *see United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 5 (D.D.C. Aug. 5, 2003).

hospital in Taif as a result of the Saudi audit;" (3) "no evidence to suggest that Sheikh Khalid Bin Mahfouz authorised or had any knowledge of any transfers from the NCB to charities linked with Osama Bin Laden;" and (4) "no evidence to support the allegation that the American authorities discovered that tens of millions of dollars had been transferred from the NCB to charity organisations associated with Osama Bin Laden after April 1999." Witness Statement ¶¶ 25.1-25.4.

### 2. The "Golden Chain"

Mr. Brisard has also reversed his position on the so-called "Golden Chain" document as it relates to Mr. Bin Mahfouz. Witness Statement ¶¶ 11-13. Contrary to Plaintiffs' claims that "Khalid Bin Mahfouz is identified on the Golden Chain as one of al Qaeda's principal financiers,"[7] Mr. Brisard makes clear that the original translation used in the *Arnaout* case included only the surname "Bin Mahfoodh" (noting that he personally added the name "Khalid" in an amended translations of the Golden Chain that he submitted to an English Court). *See* Witness Statement ¶¶ 12-13. Although Plaintiffs submitted Mr. Brisard's Golden Chain Affidavit in an effort to establish that "the 'Golden Chain' list and related documents demonstrate the role of . . . Khalid Bin Mahfouz (and others) in founding and funding al Qaeda,"[8] Mr. Brisard now confirms that, in light of other information he has learned, he does not believe that the "Golden Chain" document should be construed as evidence that Mr. Bin Mahfouz supported Al Qaeda.

---

[7] *Federal Ins.* Amended Complaint ¶ 497; *see also, e.g., id.* ¶¶ 99, 101; *Cantor Fitzgerald* Amended Complaint (Case No. 04-cv-7065) ¶ 96; *Continental Casualty* (KBM RICO Stmt.) (Docket No. 942) ¶ 2; *Euro Brokers* Complaint (Case no. 04-cv-7279) ¶ 81; *NY Marine* (KBM RICO Stmt.) (Docket No. 106) ¶ 2; O'Neill (KBM RICO Stmt.) (Docket No. 930) at 13; *World Trade Center Properties* Complaint (Case No. 04-cv-7280) ¶ 150; Consolidated Opp. at 7 n.28.

[8] Plaintiffs' Supplemental Opposition at 3.

### 3. Muwafaq Foundation

While Plaintiffs also have claimed that Mr. Bin Mahfouz has knowingly supported terrorism through his donations to the Muwafaq Foundation or other charitable entities,[9] they have failed to allege any facts indicating that Mr. Bin Mahfouz was aware of or involved in the diversion of his charitable contributions to terrorist organizations. Mr. Brisard now has confirmed that he has "no evidence to suggest that Sheikh Khalid Bin Mahfouz was involved in the running or management of Muwafaq or to indicate that Sheikh Khalid donated this money for anything other than humanitarian and charitable purposes." *See* Witness Statement ¶ 27.[10]

### 4. Bank of Credit and Commerce International ("BCCI")

Plaintiffs also allege that Mr. Bin Mahfouz somehow supported "international Islamic terrorism by channeling funds through BCCI to terror cells in London and around the world between 1986 and 1990."[11] But Mr. Brisard has concluded that there is "no evidence whatsoever" to support his prior allegations that Mr. Bin Mahfouz was the "Chief Operating Officer" of BCCI (rather than a non-executive director) and implicated in BCCI's alleged involvement with arms trafficking, drug trafficking or terrorism.[12] *See* Witness Statement ¶ 19.

### 5. Other Relevant Statements

Mr. Brisard also discusses in his Witness Statement other ways in which his prior claims concerning Mr. Bin Mahfouz – claims sometimes echoed by Plaintiffs in their Complaints and briefs – have proven unsubstantiated or demonstrably false. Following Mr. Brisard, Plaintiffs

---

[9] *See, e.g.*, *O'Neill* More Definite Statement/Additional Allegations as to Khalid Bin Mahfouz ¶¶ 31, 35, 37 (Docket No. 1357); *Burnett* More Definite Statement as to Defendant Muwafaq Foundation ¶ 40 (Docket No. 1367).

[10] *See also* Witness Statement ¶ 35 (stating that Brisard has "no evidence to suggest that Sheikh Khalid Bin Mahfouz was personally involved with the SAAR Foundation").

[11] *See* Consolidated Opp. at 6; *see also, e.g.*, *Ashton* 4AC ¶¶ 564, 567, 568; *World Trade Center* ¶¶ 228-230; *World Trade Center* RICO Statement (Khalid Bin Mahfouz), Exhibit A; *Continental Casualty* 1AC ¶ 365.

[12] *See, e.g.*, *Ashton* ¶¶ 426-28; *Burnett* 3AC ¶¶ 91-94; *Continental Casualty* ¶¶ 364-66.

have, for instance, claimed that Mr. Bin Mahfouz is the brother-in-law of Osama Bin Laden,[13] a claim that Mr. Brisard now acknowledges he cannot support and no longer maintains. Witness Statement ¶ 17.

## CONCLUSION

For all the foregoing reasons, this Court should grant this motion to permit Mr. Bin Mahfouz to supplement his pending motions to dismiss with the October 4, 2006 Witness Statement of Jean-Charles Brisard.

Dated: October 5, 2006                          Respectfully submitted,

/s/ Geoffrey S. Stewart

---

Geoffrey S. Stewart (GS-5413)                   Michael Nussbaum (MN-9981)
JONES DAY                                        BONNER, KIERNAN, TREBACH
222 East 41st Street                             & CROCIATA
New York, New York 10017-6702                    1201 I Street, N.W.
Tel: (212) 326-3939                              Washington, D.C. 20005
Fax: (212) 755-7306                              Tel.: (202) 712-7000
                                                 Fax.: (202) 712-7100

Stephen J. Brogan
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant Khalid Bin Mahfouz*

---

[13] *See, e.g.*, *Burnett* 3AC ¶ 96; *Continental Casualty* ¶ 369.