**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001<br><br>*This document relates to:*<br>*Ashton et al v. al Qaeda et al,* 02-cv-6977 (RCC) | 03 MDL 1570 (RCC)<br><br>ECF Case |

## DEFENDANT SANABEL AL-KHEER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION.

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:        202-862-4343
Facsimile:     202-828-4130

*Attorney for Defendant Sanabel Al-Kheer*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFFS NINE PAGES OF ALLEGED FACTS, WHICH
       ARE NON RESPONSIVE TO THE UNDERLYING MOTION
       TO DISMISS, ARE FLAWED, CANNOT SUPPLEMENT PLAINTIFFS'
       FACTUALLY SPARSE COMPLAINT, AND SHOULD NOT BE
       ENTERTAINED BY THIS COURT ................................................................... 1

III.   BOTH THE AFFIDAVIT AND FOURTEEN EXHIBITS ATTACHED
       TO PLAINTIFFS' OPPOSITION, WHICH ARE NON RESPONSIVE
       TO THE UNDERLYING MOTION TO DISMISS, SHOULD NOT BE
       ENTERTAINED BY THIS COURT ................................................................... 2

IV.    PLAINTIFF'S COMMON LAW TORT CLAIMS FAIL BECAUSE
       PLAINTIFFS HAVE NOT PLED CIVIL CONSPIRACY OR ANY
       OTHER BASIS FOR IMPUTED LIABILITY THAT TIES SANABEL
       TO 9/11 AND THEIR INJURIES ...................................................................... 4

V.     PLAINTIFFS' COMMON LAW CLAIMS AGAINST SANABEL
       CONSIST OF CONCLUSORY ALLEGATIONS AND LACK CAUSATION. ............. 5

       A.  Neither Rule 8(a) Nor The Distinguishable Case Law
           Plaintiffs Cite Can  Salvage Their Complaint ............................................. 5

       B.  Plaintiffs Fail to Recognize The Importance of Causation,
           Which Must Be Presented Even At The Pleading Stage .............................. 9

VI.    PLAINTIFFS HAVE NOT PROPERLY PLED THEIR FEDERAL CLAIMS
       AGAINST SANABEL ................................................................................... 12

       A.  Plaintiffs' ATA Claim Is Improperly Pled As To Sanabel ......................... 12

       B.  Plaintiffs' TVPA Claim Is Improperly Pled As To Sanabel ...................... 13

VII.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER SANABEL... 15

VIII.  CONCLUSION ............................................................................................. 16

i

# TABLE OF AUTHORITIES

CASES

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) ........................................................... 10

Arndt v. UBS AG, 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ........................................................ 15

Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986 (N.D. Ill. 2003) ............... 7,8

Beanal v. Freeport-McMoran, Inc., 197 F.3d 161 (5th Cir. 1999) ................................................. 15

Benjamins v. British European Airways, 572 F2d 913 (2d Cir. 1978) ........................................ 14

Boim v. Quaranic Literacy, 291 F.3d 1000 (7th Cir. 2002) ..................................................... 12,13

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86 (D.D.C. 2003) ................................ 6

Desiderio v. Nat'l Assn. of Securities Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) ........................ 6

DiPonzio v. Riordan, 679 N.E.2d 616 (N.Y. 1977) .................................................................. 16

Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20 (D.D.C. 2005) ............................................ 13,15

DM Research v. College of Am. Pathologists, 170 F.3d 53 (1st Cir. 1999) ................................... 8

Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980) ........................................................... 13,14

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d  763 (2d Cir. 1994) ................................ 11

Gatti v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001) .......... 6

Geisler v. Petrocelli and Pinnacle Books, Inc., 616 F.2d 636 (2d Cir. 1980) ................................ 6

Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988) ........................................................... 8

Hanoch Tel-Oren v. Libyan Arab Republic, 517 F. Supp 542 (D.D.C. 1981),
Affd. 726 F.2d 774 (D.C. App. 1984) ...................................................................................... 14

Holmes v. Securities Investor Prot. Corp., 503 U.S. 258 (1992) ................................................. 10

In re: S. African Apartheid Litg., 346 F. Supp. 2d 538 (S.D.N.Y. 2004) ..................................... 15

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) .................................................................... 13,14

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) .................................................................... 6

Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000) ....................................................................... 6

Mendonca v. Tidewater, Inc., 159 F. Supp. 2d 299 (E.D.La. 2001) ........................................... 14

Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321 (4th Cir. 2001) .............................................. 8

Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) ..................................................... 6,7

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) .................................................................. 6,8,9

Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988) .................................................................. 6,9

_Swierkiewicz v. Sorema_, 534 U.S. 506 (2002) ............................................................ 5

_Tel-Oren v. Libyan Arab Republic_, 517 F. Supp. 542 (D.C. Cir. 1981) ...................... 14

_Terrorist Attacks I_, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................... 5,6,10-12,14

_Terrorist Attacks II_, 392 F. Supp. 2d 539 (D.N.Y. 2005) ........................................... 15

_Timberlane Lumber Co. v. Bank of America_, 749 F.2d 1378 (9th Cir. 1984),

_cert. den._, 472 U.S. 1032 (1985) ........................................................................... 15,16

_Twombly v. Bell Atl. Corp._, 425 F.3d 99 (2d Cir. 2005) ............................................ 7,8

_United States v. Arnaout_, 2003 U.S. Dist. LEXIS 1635 (D. Ill. 2003) .......................... 2

_WE Media Inc. v. General Electric Co._, 218 F. Supp. 2d 463 (S.D.N.Y. 2002) .......... 11

_Wynder v. McMahon_, 360 F.3d 73 (2d Cir. 2004) ...................................................... 6,9

## FEDERAL RULES

Fed. R. Civ. P. 8(a) ..................................................................................................... 5-9

Fed. R. Civ. P. 9(b) ..................................................................................................... 5,6,7

Fed. R. Civ. P. 11(b) ...................................................................................................... 2

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1,15

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1,5,7,9-10

## FEDERAL LAWS

28 U.S.C. § 1350 ...................................................................................................... 13-15

## OTHER AUTHORITIES

Peter L. Bergen, _The Osama Bin Laden I Know_, (2006) ......................................... 10,11

## I.      INTRODUCTION.

Plaintiffs' opposition is simply non-responsive to Sanabel Al-Kheer's (Sanabel) underlying Motion to Dismiss.  The first nine pages of Plaintiffs' alleged facts, which are improperly sponsored by the affidavit of a non-expert "liaison counsel" as well as 14 inadmissible exhibits, only serve to supplement their factually sparse Sixth Amended Complaint ("Complaint").  Plaintiffs have again failed to allege any grounds for imputed liability such that their common law tort claims could withstand the instant Motion to Dismiss.  Even if Plaintiffs had raised conspiracy as a way to link Sanabel to 9/11 (as other Plaintiffs in other cases have done) the instant Plaintiffs would still likely ignore the fundamental requirement that proximate causation need be plausible,[1] and still present tenuous conclusory allegations that can hardly withstand the fairness-based protections of Rule 8(a).  Plaintiffs' federal claims brought under the Torture Victim Protection Act (TVPA) and the Anti-Terrorism Act (ATA), are also insufficiently pled as to Sanabel and cannot withstand the instant Motion to Dismiss.

Given the foregoing, Fed. R. Civ. P. 12(b)(6) relief is appropriate as to Sanabel.  Fed. R. Civ. P. 12(b)(1) relief is also appropriate due to a fundamental lack of connection between the Plaintiffs' injuries and the alleged conduct of Sanabel.  Accordingly, Sanabel's Motion to Dismiss can and should be granted.

## II.     PLAINTIFFS NINE PAGES OF ALLEGED FACTS, WHICH ARE NON RESPONSIVE TO THE UNDERLYING MOTION TO DISMISS, ARE FLAWED, CANNOT SUPPLEMENT PLAINTIFFS' FACTUALLY SPARSE COMPLAINT, AND SHOULD NOT BE ENTERTAINED BY THIS COURT.

First, any and all alleged facts that relate to or regard the former American entity Sana-Bell, Inc. will be rebutted in the separately filed Reply Memorandum on behalf of the former entity.  The instant Sanabel inherited Sana-Bell, Inc. in 2001, long after any of the alleged facts

---

[1] See infra for discussion on "plausibility" and as it relates to proximate causation.

concerning Sana-Bell, Inc. and Soliman Biheiri are said to have occurred.  As such, no response is necessary here.

Second, as to Plaintiffs last ditch reference to the "Golden Chain" – an untitled, undated, and unsigned document that allegedly provides the name of al Qaeda supporters, (Pls.' Opp'n 7.) they again ignore the fact that this document was discredited and ultimately rejected by this Court in open court (see Oral Argument Trial Tr. 54-56 (Oct 12, 2004)) and in Terrorist Attacks I, 349 F. Supp. 2d 765, 817 (rejecting the "Golden Chain documents due to "serious foundational flaws.")  This Court should not condone Plaintiffs' attempt to re-argue this discredited document, which Plaintiffs know was ultimately rejected in the very case they cite.  United States v. Arnaout, 2003 U.S. Dist. LEXIS 1635 at *4 (D. Ill. 2003) (holding that the Santiago Proffer, which contained the "Golden Chain," was insufficient because it was too speculative to link the hearsay documents to the alleged conspiracies.)

## III.  BOTH THE AFFIDAVIT AND FOURTEEN EXHIBITS ATTACHED TO PLAINTIFFS' OPPOSITION, WHICH ARE NON RESPONSIVE TO THE UNDERLYING MOTION TO DISMISS, SHOULD NOT BE ENTERTAINED BY THIS COURT.

As is obvious, John Fawcett, a liaison attorney for the Plaintiffs, is not an expert on terrorism or Islamic charities much less an expert on Sanabel.  As such, his opinion on this case is irrelevant and premature at this stage of litigation.  To accept Mr. Fawcett's affidavit would only encourage other attorneys in this mass-tort case to attach affidavits in support of conclusory oppositions in their latest effort to overcome a motion to dismiss.

Fed. R. Civ. P. 11(b) provides four sub-sections, all of which advise a court that when an attorney presents a pleading, written motion, or other paper, that he is certifying to the best of his knowledge, information and belief that said paper is not being presented for any improper purpose, that the claims or defenses contained therein are warranted by existing law or by a

nonfrivolous argument, and that the allegations and other factual contentions have evidentiary

support.

When Plaintiffs signed their opposition, they asserted that their allegations – conclusory

or otherwise – were not being presented for an improper purpose. Therefore, their opposition

need not be supplemented by a non-expert liaison attorney's affidavit or the fourteen irrelevant

exhibits.[2] This Court should therefore disregard the extraneous attachments to Plaintiffs'

Opposition.

---

[2] In the unlikely event that the Court does entertain Plaintiffs' exhibits, Sanabel briefly responds:

Ex. 1 regards IIRO's designation by the Treasury Department. Nowhere is Sanabel mentioned and because Defendants have not alleged that any kind of conspiracy relationship exists between Sanabel and IIRO, this exhibit is irrelevant.

Ex. 2 contains articles from various Saudi and Arab news sources from 1992-1998 detailing IIRO's alleged fundraising and alleged relationship with Sanabel. This Exhibit is also irrelevant not to mention, unauthenticated.

Ex. 3 again regards IIRO (an organization that has not been alleged by Plaintiffs' to be in a conspiracy relationship with Sanabel such that its mention is relevant) and an investigation report about one Soliman Biheiri, another person the Plaintiffs' allege has a conspiracy relationship with Sanabel such that a three year old investigation that resulted in no U.S. indictment is relevant.

Ex. 4 regards Sana-Bell, a former American entity, no longer in existence.

Ex. 5 also regards Sana-Bell, a former American entity, no longer in existence having merged into Sanabel.

Ex. 6 contains articles from the Muslim World League and an obituary of an IIRO former Chief. Nowhere is Sanabel mentioned and because Defendants have not alleged that any kind of conspiracy relationship exists between Sanabel and IIRO or MWL, this exhibit is irrelevant.

Ex. 7 also regards Sana-Bell, a former American entity, no longer in existence having merged into Sanabel.

Ex. 8 is an illegible exhibit that also regards Sana-Bell, a former American entity, no longer in existence having merged into Sanabel.

Ex. 9 is a Complaint regarding Sana-Bell, a former American entity, no longer in existence and its lawsuit filed in a sister Court regarding facts completely irrelevant to the underlying motion.

Ex. 10 is another news article regarding a MWL director and an Annual Return from the UK regarding IIRO. Nowhere is Sanabel mentioned and because Defendants have not alleged that any kind of conspiracy relationship exists between Sanabel and IIRO or MWL, this exhibit is irrelevant.

Ex. 11 finally relates to and regards Sanabel. This certificate of incorporation and 2001 annual report are not relevant to the underlying motion and serve to accomplish no purpose as an attachment to Pls.' Opp'n.

Ex. 12 is a 1992 tax return for IIRO showing a grant of $10,000 to Islamic African Relief Agency (IARA) and a press release for the 2004 designation of IARA. Aside from the overreaching inference that because IIRO gave money to an organization in 1992 that it supports terrorism in 2001 (when Plaintiffs were harmed) because in 2004 the donee organization was designated; Nowhere is Sanabel mentioned and because Defendants have not alleged that any kind of conspiracy relationship exists between Sanabel and IIRO or MWL, this exhibit is irrelevant.

Ex. 13 is analogous to the infamous "Golden Chain" document in that it is another undated and unauthored list of names, none of which is Sanabel.

Ex. 14 is the primary document Plaintiffs' and specifically their liaison counsel Mr. Fawcett hang their hat upon as to Sanabel. This affidavit, which relates to and regards Soliman Biheiri, served only as a basis to hold Mr. Biheiri in criminal detention. Mr. Biheiri used to have a business venture with Sana-Bell, a former American entity, no longer in existence as it merged into Sanabel. Mr. Biheiri was never indicted and the allegations made against him are not imputed to Sanabel. Thus, this exhibit, like all the exhibits, is highly irrelevant and should be disregarded.

IV.  **PLAINTIFF'S COMMON LAW TORT CLAIMS FAIL BECAUSE PLAINTIFFS HAVE NOT PLED CIVIL CONSPIRACY OR ANY OTHER BASIS FOR IMPUTED LIABILITY THAT TIES SANABEL TO 9/11 AND THEIR INJURIES.**

Nowhere in Plaintiffs' counts against Defendants do they allege that Sanabel was directly involved in 9/11 or intentionally harmed the Plaintiffs.  For example, Plaintiffs' Complaint, at ¶ 473, alleges Assault and Battery counts against Defendants "as a result of the September 11, 2001 hijackings."  But, without establishing a connection between the "September 11, 2001 hijackings" and Sanabel, the Plaintiffs have made no meritorious allegations directed at Sanabel. The failure to establish conspiracy or imputed liability of any kind is crucial to Plaintiffs ability to survive the instant motion.

Throughout their Opposition and Complaint, Plaintiffs maintain that Sanabel has an intertwined financial part in the International Islamic Relief Organization (IIRO) and that along with other "separate and distinct entities", Sanabel "knowingly used these funds not solely for legitimate purposes but instead to provide support for al Qaeda and global terrorism."  Pls.' Opp'n at 1-2.  This connectionless and conclusory allegation does not suggest even for a minute that Sanabel was in a conspiracy with IIRO which entity in turn was in a conspiracy with the September 11, 2001 hijackers who intentionally assaulted and battered the Plaintiffs. Furthermore, even if Plaintiffs had made such a contention, Plaintiffs have not pled any conspiracy claim in their Complaint.  See Pls.' Compl. at ¶ 235-243.  Thus, all three intentional tort claims that Plaintiffs have brought against Sanabel (Counts 1-3) fail to state a cause of action because there is no plausible[3] link between Sanabel and the Terrorist Attacks of 9/11.

---

[3] See infra for discussion on "plausibility" and as it relates to proximate causation.

## V.   PLAINTIFFS' COMMON LAW CLAIMS AGAINST SANABEL CONSIST OF CONCLUSORY ALLEGATIONS AND LACK CAUSATION.

Even if Plaintiffs had pled a conspiracy-based theory as to Sanabel, Fed. R. Civ. P. 12(b)(6) relief is still warranted because Plaintiffs' factual allegations are no more than legal conclusions.[4]

### A.   Neither Rule 8(a) Nor The Distinguishable Case Law Plaintiffs Cite Can Salvage Their Complaint.

Working on the erroneous premise that Sanabel invoked Rule 9 in its Motion to Dismiss, Plaintiffs repeatedly refer to <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002) to support *their* contention that the requirements of notice pleading are "liberal". Plaintiffs fail, however, to acknowledge a distinction that both this Court and Judge Robertson have made in that the instant mass tort case is exactly that – *a mass tort case* that involves hundreds of defendants. This Court recognized this *distinction* during oral arguments when Plaintiffs' <u>Swierkiewicz</u> argument was presented. (<u>See</u> Oral Argument Trial Tr. 68:1-5, 17, Oct. 14, 2004.) The Court again noted this distinction in <u>Terrorist Attacks I</u> when it held that "[w]hile applying the liberal notice pleading requirements of Rule 8, the Court notes that in light of the 'extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he-or it-does indeed have fair notice of [the claims].'" 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) (citing <u>Burnett I</u>, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003). Without citing Rule 9, Sanabel submits that when "extra scrutiny" is applied herein, 12(b)(6) relief should

---

[4] Both this Court and United States Magistrate, Judge Frank Maas, have opined on this issue, to wit, in his recent discovery Order concerning another 9/11 Plaintiffs' discovery requests, Judge Maas held that the allegations were "[o]nce again … 'conclusory'". J. Maas, Op. at 10. To illustrate the conclusory nature of a particular allegation Judge Maas provided an example: "in addition to the sort of boilerplate that the plaintiffs recited in their discussion of the other banks, the Burnett complaint referred to a '1999 United States Senate Report on the [Bank of Credit and Commerce International] scheme [which] detailed the role of [NCB] in hiding assets, money laundering, the cover-up and obstruction of a Senate investigation, and sponsoring international terrorism.'" <u>Id.</u> This example is precisely the type of allegations Plaintiffs have made against Sanabel.

be afforded to Sanabel as the fairness requirements of Rule 8(a) have *in this case* been offended. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (emphasis added) (a defendant must have a *fair* understanding of what the plaintiffs are complaining about and whether there is even a legal basis for recovery) (emphasis added); see Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (a complaint must still provide enough information and detail to enable defendants to respond and defend); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (the "short and plain statement" requirement is to give *fair* notice to enable an adverse party to answer and prepare for trial) (emphasis added).

In addition, Plaintiffs cite Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) as support for their contention that causal connections between their allegations and their injuries need not be drawn until after discovery.  Plaintiffs also cite Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002); and Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004) as further support for their contention that a district court may not add [or] create higher pleading standards than those set forth in the Federal Rules.  Pls.' Opp'n 10.  These arguments, which have been presented to this Court repeatedly, are all readily distinguishable.[5]

First, Plaintiffs' 'wait until discovery' argument derived from Pelman, serves to circumvent the requirement of proximate causation in an effort to conduct a costly fishing expedition in the name of discovery.[6]  This Court is likely aware and can take judicial notice that counsel for Sanabel also represents the International Islamic Relief Organization (IIRO), which has been served with extremely burdensome discovery requests and has received preliminary

---

[5] Plaintiffs' additional cases cited, which include, Gatti v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001);  Geisler v. Petrocelli and Pinnacle Books, Inc., 616 F.2d 636 (2d Cir. 1980) and Desiderio v. Nat'l Assn. of Securities Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) are readily distinguishable for the same reasons as the above-noted caselaw and need not be individually addressed.
[6] See infra. Pt. IV (B) and accompanying text for additional proximate causation analysis.

scanning and copying estimates in the $3,000,000 range.[7]  Thus, the rationale behind 'wait until discovery' as applied in Pelman is simply not appropriate in the instant mass tort case.  While the Court in Pelman vacated the district court's 12(b)(6) dismissal because "an action under the [deceptive trade practices provision of the New York Consumer Protection Act] is not subject to the pleading-with-particularity requirements of Rule 9(b)" (Id. at 511), the decision focused on the issue of unfair surprise and the role of liberal discovery to avoid surprise.  However, unfair surprise is not the only type of unfairness which Rule 8(a) protects against.  Costly, protracted discovery can be an equally unfair burden on a defendant if a plausible basis for proximate cause is not properly pled.  See Twombly v. Bell Atl. Corp., 425 F.3d 99, 111 (2d Cir. 2005) ("Some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase.") (citing Judge Posner in Asahi Glass Co., Ltd. v. Pentech Pharms., Inc., 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)).  Defendant Sanabel is not asking this Court to apply Rule 9 here because Plaintiffs have not alleged fraud.  Sanabel is arguing, however, that extra-scrutiny is required under Rule 8(a) and Plaintiffs' claims necessarily fail under this standard.

Regarding Twombly, this Court should know that the Second Circuit also opined that, "*a barebones statement of conspiracy or of injury under antitrust laws without any supporting facts permits dismissal*."  Twombly, 428 F.3d at 109 (emphasis added).  Twombly also articulated the common sense approach that this Court should adopt: "[m]inimal requirements are not tantamount to nonexistent requirements," (Id.) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)), and require that "*some threshold of plausibility* must be crossed at the outset before a [ ] case should be permitted to go into its inevitably costly and protracted discovery phase."  Id. at 111 (emphasis added) (quoting J. Posner in Asahi Glass Co., Ltd. v.

---

[7]  See Estimate attached hereto as Exhibit A.

<u>Pentech Pharms., Inc.</u>, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003)). Since <u>Twombley</u> clearly stated that this "plausibility" requirement is no different for anti-trust claims than it is for other claims subject to Rule 8(a) notice pleading requirements, (<u>Id.</u> at 107), Sanabel submits that Plaintiffs should also meet this plausibility standard before both parties are forced into what will be an "inevitably costly and protracted discovery phase," (<u>Id.</u> at 111) based only on Plaintiffs' conclusory and specious allegations.

The few facts presented herein are so unrelated to the counts charged as to suggest a fishing expedition and thus, make it impossible for Sanabel to properly respond.[8] Merely alleging that Sanabel has a financial relationship with IIRO (Pls.' Opp'n 2-6) can hardly be considered sufficient "information and detail" to give Sanabel a reasonable opportunity to respond to the serious claims with which it is faced. Effectively there is no notice of the grounds upon which Plaintiffs have founded their claims. Although the Plaintiffs argue that their factually unsupported allegations of conspiracy are sufficient to cast their net so wide as to include Sanabel as a defendant, this is in direct contravention to the purpose of Rule 8 – *fair* notice.

Another authority cited to by Plaintiffs is <u>Phelps</u>, which is easily distinguished from the instant matter for any number of reasons. First, <u>Phelps</u> involves a § 1983 claim which is inapposite to the allegations of international terrorism in this case. 308 F.3d at 182. Second, and unlike the sole Plaintiff in <u>Phelps</u>, the claims herein rely on imputed liability (which, as mentioned <u>supra</u>, have not been pled as to Sanabel) where the potential for an improper extension of liability based upon conclusory allegations is magnified. Third, the fact that a "heightened pleading standard" was rejected in <u>Phelps</u> does not preclude a heightened standard

---

[8] 'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.' <u>DM Research v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999); <u>Migdal v. Rowe Price-Fleming Int'l</u>, 248 F.3d 321, 326 (4th Cir. 2001).

applied herein given Plaintiffs' damaging and sensational allegations which seek to impose liability on hundreds of disparate and tenuously connected defendants.  Again, this danger of unfairness and prejudice was *not* present in <u>Phelps</u>.  Actually, <u>Phelps</u> reiterates Sanabel's argument that "a court should [not] hesitate to dismiss a complaint when the plaintiff's allegation … fails as a matter of law."  <u>Id.</u> at 187.

Finally, and as to <u>Wynder v. McMahon</u>, although this case finds that a district court may not order that plaintiffs file a complaint that goes above and beyond what Rule 8 requires (360 F.3d at 77) the court also states that "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given.  <u>Id.</u>  In fact, <u>Wynder</u> goes on to hold that "[d]isissal pursuant to the rule 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'  <u>Id.</u> at 80 (citing <u>Salahuddin v. Cuomo</u>, 861 F.2d at 42).

Given the foregoing, it is clear that neither rule 8(a) nor the distinguishable case law plaintiffs cite can salvage their sparse complaint and Sanabel's Motion to Dismiss should be granted.

**B.**     **<u>Plaintiffs Fail to Recognize The Importance of Causation, Which Must Be Presented Even At The Pleading Stage.</u>**

Since filing the underlying Motion to Dismiss, the United States Supreme Court has handed down an opinion, stating <u>inter alia</u>, that a "directness requirement" for proximate causation is part of the necessary standard that a Plaintiff must satisfy to withstand a 12(b)(6) motion.  <u>Anza v. Ideal Steel Supply Corp.</u>, 126 S. Ct. 1991, 2001 (2006) (citing <u>Holmes v. Securities Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992)).[9]  In <u>Anza</u>, the Court held that the

---

[9] In citing <u>Holmes v. Securities Investor Protection Corporation</u>, 503 U.S. 258 (1992), <u>Anza</u> holds that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." <u>Anza</u>, 126 S. Ct. at 2009.  In applying this principle, <u>Anza</u> held that even though the <u>Holmes</u> and <u>Anza</u> plaintiffs

central question a district court must ask in evaluating the sufficiency of proximate causation

[when considering a RICO complaint in a 12(b)(6) motion] is "whether the alleged violation led

directly to the plaintiff's injuries." Id. at 1998.[10]   The Anza ruling is germane to the instant case

as it affirms Sanabel's contention that alleging proximate cause is an essential element to

withstand a Rule 12(b)(6) motion.

Although the instant case does not concern an anti-trust matter as in Anza, Sanabel

submits that Plaintiffs' Complaint should nonetheless be held to the Anza "directness

requirement" or at least some modified version thereof.  Even if the Anza test is not applied

herein, Sanabel submits Plaintiffs have not established proximate cause under this Court's

analysis in Terrorist Attacks I, 349 F. Supp. 2d at 798-801.

In their opposition, Plaintiffs rely on a string of tenuous connections to support their

claims against Sanabel.  Pls.' Opp'n at 1-3.  In actuality, no plausible links between activities

engaged in by Sanabel and the tragic events of 9/11 can be drawn from the three pages of alleged

"connections to Al Qaeda" Plaintiffs present.  Instead Plaintiffs' Opposition makes clear that

their claims against Sanabel rest entirely upon links to other defendants and an outdated timeline

that simply does not work.  Id.[11]  For example, Plaintiffs state that "because Al Shamal Islamic

Bank has been closely linked to Sanabel, as well as other terrorist entities, its activities must be

---

alleged entirely distinct RICO violations against their respective defendants, "the absence of proximate causation is equally clear in both cases" when the directness requirement of the proximate cause analysis is applied. Id. at 1997.

[10]  The Court further stated that the notion of explaining away the lack of a direct relation to Plaintiffs' injuries as Defendant's "indirect route to accomplish their goal" does not accord with the Holmes proximate cause test which Anza expounds upon. Id. at 1998.

[11]  "Osama Bin Laden's first declaration that he was at war with the United States was issued [o]n August 23, 1996, three months after his return to Afghanistan." (Peter L. Bergen, *The Osama Bin Laden I Know*, 164 (2006)).  Even assuming that the entire world, including Sanabel, was put on notice of OBL's evil intentions at that time, Sanabel's shareholder status with Al Shamal began in March of 1986, a totally relevant consideration because (1) during the 1980s, Sanabel could not have known nor had any reason to believe that by having an alleged "connection" with Al Shamal and/or Faisal Islamic Bank that it was supporting terrorism and/or the 9/11 tragedy; (2) even "the Agency (CIA) simply had no idea of [OBL's] possible significance until 'the bin Laden unit' was set up within the CIA in January 1996." (Id. at 61); and (3) the outlines of what would become the 9/11 plot were not even discussed until 1996 when Khaled Sheikh Mohammed met with OBL in Tora Bora. Id. at XVI.

considered along with those of Sanabel in determining this Motion to Dismiss." Id. at 2.

Plaintiffs further state that "Sanabel itself joined the Board of Directors of Al Shamal in July of

1988, and has been a major shareholder since March of 1986". These arguments do not present

sufficient allegations that Defendant's conduct [...] was the proximate cause of their injuries.

Terrorist Attacks I, 349 F. Supp. 2d at 797 n. 26; see First Nationwide Bank, 27 F.3d 763, 767

(2d Cir. 1994) (holding that the Plaintiffs' Complaint "must be dismissed" because it did not

adequately allege proximate cause); see also WE Media Inc. v. General Electric Co., 218 F.

Supp. 2d 463, 475 (S.D.N.Y. 2002) (rejecting Plaintiffs' "six degrees of separation argument" on

the ground that the "legal divide" between a corporation and its shareholder or a parent and its

subsidiary was too attenuated to support an allegation of knowledge.)

In short, Plaintiffs fail to make allegations sufficient to meet their causation burden as to

Sanabel because Plaintiffs have not alleged actions on the part of Sanabel which actually led to

the terrorist attacks of September 11, 2001. With respect to foreseeability, Plaintiffs have failed

to allege sufficient facts that would demonstrate that Sanabel should have been on notice that its

investment activity in the early 1980s would eventually lead to the 9/11 attacks. The deficiency

of Plaintiffs' allegations is not in their quantity, but in their failure to establish any plausible

links between Sanabel and 9/11. Because the Plaintiffs have not met their burden of alleging

specific facts that Sanabel's conduct was the proximate cause of their injuries, Sanabel's Motion

to Dismiss should be granted.

## VI.    PLAINTIFFS HAVE NOT PROPERLY PLED THEIR FEDERAL CLAIMS AGAINST SANABEL.

Counts 4 and 5 of Plaintiffs' Complaint bring federal claims against Sanabel. Like their

first three claims, these also fail for reasons set forth below.

A.     **Plaintiffs' ATA Claim Is Improperly Pled As To Sanabel.**

The ATA allows for an action in federal district court by any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs.  18 U.S.C. § 2333 (1994).

Boim v. Quaranic Literacy is the primary authority on cases brought under the ATA in a federal court.  291 F.3d 1000 (7th Cir. 2002).  Boim makes clear that to survive dismissal of a Complaint for claims brought under the ATA, Plaintiffs must have alleged that Defendants had "knowledge of and intent to further [Al Qaeda's] violent criminal acts…" See id. at 1011. However, Plaintiffs' Complaint is devoid of facts showing knowledge or intent by Sanabel. Merely stating that 'Sanabel knew' is not the same as stating 'Sanabel knew it was furthering Al Qaeda's violent criminal acts because…'  Boim also makes clear that the ATA requires a Plaintiff be injured "by reason of" an act of international terrorism.  Id.  Again, Plaintiffs Complaint is devoid of facts showing how Sanabel's alleged financial relationship with IIRO is an act of international terrorism.  Boim further emphasizes that the language "by reason of" means that a showing of proximate cause is required in order for liability to be afforded under the ATA.  Id.  As noted supra Part III(B), Plaintiffs have not established proximate causation under either the aforementioned Anza test or this Court's analysis in Terrorist Attacks I, 349 F. Supp. 2d at 798-801.

Accordingly, this Court can and should dismiss Plaintiffs' claims brought under the ATA just as the Boim court dismissed the plaintiffs' first theory of liability brought under § 2333 – for want of a required "showing of proximate cause."  See Boim, 291 F.3d at 1012.

B.     **Plaintiffs' TVPA Claim Is Improperly Pled As To Sanabel.**

Plaintiffs' claims brought under 28 U.S.C. § 1350 (the ATCA and TVPA) are improperly pled because the ATCA does not provide subject matter jurisdiction in cases brought by U.S. citizens without a proper claim under the TVPA.  Plaintiffs cannot establish a proper claim because having an alleged financial relationship with the IIRO or any Islamic Charity is simply *not* a violation of the law of nations (Filartiga v. Pena-Irala, 630 F.2d 876, 888 (2d Cir. 1980)) and the TVPA was *not* intended to apply to organizations.  Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 28 (D.D.C. 2005)

The ATCA "confers federal subject-matter jurisdiction when the following three conditions are satisfied:  (1) an alien sues (2) for a tort (3) committed in violation of the law of nations (i.e. international law)".  Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995).  Case law from this Circuit has held that "a violation of the law of nations arises only when there has been a "'violation by one or more individuals of those standards, rules, or customs (a) affecting the relationship between states or between an individual and a foreign state and (b) used by those states for their common good and/or in dealings inter se.'"  Filartiga, 630 F.2d at 888.

The TVPA renders liable only those individuals who have committed torture or extrajudicial killing "under actual or apparent authority, or color of law, of any foreign nation." TVPA § 2.  Most importantly, "legislative history confirms that this language was intended to 'make[ ] clear that the Plaintiff must establish some governmental involvement in the torture or killing to prove a claim,' and that the statute 'does not attempt to deal with torture or killing by *purely private groups.*'"  Kadic, 70 F.3d at 245 (emphasis added) (citing H.R. Rep. No. 367, 102d Cong., 2d Sess., at 5 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 87.

Plaintiffs' claims under the ATCA fail because none of the Plaintiffs have been adequately identified as "aliens" – a necessary "element" for jurisdiction to vest under § 1350.

Hanoch Tel-Oren v. Libyan Arab Republic, 517 F. Supp 542 (D.D.C. 1981), Affd. 726 F.2d 774 (D.C. App. 1984). To the extent that Plaintiffs are in fact "alien-plaintiffs", their claims still fail because the allegations brought against Sanabel, maintaining a financial relationship with IIRO, does not violate the "law[s] of nations".[12] The Filartiga Court provided examples of cases that did not invoke international law or constitute a law of nations violation. 630 F.2d at 888 n.23 (citing Benjamins v. British European Airways, 572 F2d 913, 916 (2d Cir. 1978) (an air disaster, even if caused by 'willful' negligence, does not constitute a law of nations violation)).[13] Certainly the acts of an entity maintaining an alleged financial relationship with an Islamic Charity IIRO, cannot be deemed to have violated international law.

This Court has previously dismissed claims brought under the ATCA when a plaintiffs' complaint failed to allege that the defendants' actions operated "under the color of law." Terrorist Attacks I, 349 F. Supp. 2d at 828. Again, the alleged acts of Sanabel, maintaining an alleged financial relationship with IIRO cannot be deemed to have operated "under the color of law". See Mendonca v. Tidewater, Inc., 159 F. Supp. 2d 299, 302 (E.D.La. 2001) (holding that § 1350 "applies only to shockingly egregious violations of universally recognized principles of international law.") (quoting Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 167 (5th Cir. 1999).

Finally, and most importantly, Plaintiffs fail to recognize that the TVPA only holds "individuals" liable and "not corporations" Terrorist Attacks I, 349 F. Supp. 2d at 828 ("Only individuals may be sued under the TVPA.") (quoting Arndt v. UBS AG, 342 F. Supp. 2d 132, 141

---

[12] Tel-Oren v. Libyan Arab Republic, 517 F. Supp. 542, 548 (D.C. Cir. 1981) (noting a violation of law of nations is third required element under § 1350).

[13] Sanabel acknowledges this Court's holding in Terrorist Attacks I, "aircraft hijacking is generally recognized as a violation of international law" and that "courts, including the Second Circuit, have almost unanimously permitted actions premised on a theory of aiding and abetting and conspiracy." 349 F. Supp. 2d at 826. However, this holding should not apply to or include Sanabel because this entity did not itself hijack any aircraft thereby violating the international law and, as noted supra Part II, Plaintiffs herein have not alleged any type of imputed liability or conspiracy theory against Sanabel.

(E.D.N.Y. 2004); see also Terrorist Attacks II, 392 F. Supp. 2d at 565 (citing In re: S. African Apartheid Litg., 346 F. Supp. 2d 538, 550 (S.D.N.Y. 2004)); Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 28. As this Court may already be aware, Sanabel is Sanabel Al-Kheer, Inc. Accordingly just as this Court dismissed all TVPA claims against Al Rajhi Bank, Saudi American Bank, Arab Bank, Al Baraka Investment and Development Corp, and National Commercial Bank in Terrorist Attacks I, and all TVPA claims against Rabita Trust, IIRO, Success Foundation, and the SAAR Network entities in Terrorist Attacks II because these entities were not individuals, the same should be the case here – Sanabel is a corporation and not an individual.

For any or all of the foregoing reasons, Plaintiffs' claims brought under § 1350 must be dismissed since jurisdiction cannot be conferred under the ATCA and/or the TVPA.

## VII.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER SANABEL.

Due to a fundamental lack of connection between the Plaintiffs' injuries and the alleged conduct of Sanabel, this Court can decline to exercise jurisdiction over Plaintiffs' claims pursuant to Rule 12(b)(1). See Timberlane Lumber Co. v. Bank of America, 749 F.2d 1378, 1381, 1385 (9th Cir. 1984), cert. den., 472 U.S. 1032 (1985) (holding that even if a question of jurisdiction is closely intertwined with the merits of the case, a district court can dismiss a case for want of subject matter jurisdiction rather than dismissal for failure to state a claim, "when the allegations of the complaint are frivolous" and when it is not reasonable to deduce that one must have "foreseen the consequences of its actions.").

Even if the Court makes a giant leap of logic that there is some consequential relationship between Sanabel's alleged "conduct", e.g., Sanabel's alleged financial relationship with IIRO, it is the kind of "indirect consequence...at most, a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence..." DiPonzio v. Riordan, 679 N.E.2d 616, 620 (N.Y. 1977); see also Timberlane, 749 F.2d at 1385 (holding that an investment decision to

foreclose on assets in Honduras, which later has effect on plaintiff in the United States does not meet the foreseeability requirement for subject matter jurisdiction).  Accordingly, this court can dismiss Sanabel from Plaintiffs' Complaint for want of subject matter jurisdiction.

## VIII.   CONCLUSION

For good cause shown in this Reply Memorandum, this Court should grant Defendant's Motion to Dismiss based on failure to state a claim for which relief can be granted as well as lack of subject matter jurisdiction.

Respectfully Submitted,


_____/s/_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
(202) 828-4130
*Attorney for Defendant Sanabel*

Dated:  October 12, 2006

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic case filing on this 12th day of October, 2006, upon the following:

Andrew J. Maloney III, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

/s/
Lisa D. Angelo, Esq.
