UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
| | ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978

**FEDERAL INSURANCE PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT JAMAL BARZINJI'S MOTION TO STAY**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Phone:  (215) 665-2000
October 25, 2006

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I.  INTRODUCTION ............................................................................................................ 1

II.  FACTUAL BACKGROUND ........................................................................................... 2

III.  ARGUMENT .................................................................................................................... 5

    A.  A Stay In A Civil Case Is An Extraordinary Writ ............................................... 5

    B.  Dr. Barzinji Fails To Meet The Legal Standards For A Stay .............................. 6

    C.  Dr. Barzinji Does Not Meet The Burden Of A Stay As To The Plaintiffs' Document Requests ............................................................................................ 8

    D.  Judicial Economy Does Not Warrant An Indefinite Stay To These Proceedings ....................................................................................................... 13

    E.  Pursuant To This Court's Standing Rules And The Case Management Orders In This Case, A Motion To Stay Is Not The Appropriate Vehicle To Object To Discovery .......................................................................................... 14

IV.  CONCLUSION ............................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Arden Way Assoc. v. Boesky*,
　660 F. Supp. 1494 (S.D.N.Y. 1987) ...............................................................................10

*Braswell v. United States*,
　487 U.S. 99 (1988) .............................................................................................................8

*Brock v. Tolkow*,
　109 F.R.D. 116 (E.D.N.Y. 1985)...............................................................................10, 12, 13

*Citibank, N.A. v. Hakim*,
　1993 U.S. Dist. LEXIS 16299 (S.D.N.Y. 1993) ........................................................6, 9, 10, 12

*Fisher v. United States*,
　425 U.S. 391 (1975)...........................................................................................................8

*In re Par Pharmaceutical Sec. Litig.*,
　133 F.R.D. 12 (S.D.N.Y. 1990) ........................................................................................5, 9

*In Re: Grand Jury Subpoena Duces Tecum Dated October 29*,
　1 F.3d 87 (2d Cir. 1993) ....................................................................................................8

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
　2005 U.S. Dist. LEXIS 14687 (S.D.N.Y. 2005)............................................................5, 9, 11

*John's Insulation, Inc. v. Siska Constr.*,
　671 F. Supp. 289 (S.D.N.Y. 1987) ...................................................................................10

*Karimona Investments, LLC v. Weinrab*,
　2003 U.S. Dist. LEXIS 3324 (S.D.N.Y. 2003)..............................................................6, 9, 11

*Kashi v. Gratsos*,
　790 F.2d 1050 (2d Cir. 1986)............................................................................................10

*Kudo v. Simels*,
　1992 U.S. Dist. LEXIS 4590 (S.D.N.Y. 1992).........................................................................9

*Nosik v. Singe*,
　40 F.3d 592 (2d Cir. 1993) .................................................................................................5

*Paine, Webber, Jackson & Curtis Inc. v. Andrus, Inc.*,
　486 F. Supp. 1118 (S.D.N.Y. 1980) .............................................................................11, 12

*Panaro v. U.S. Securities and Exchange Comm.*,
    1987 U.S. Dist. LEXIS 16810 (E.D.N.Y. 1987) ....................................................................8

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
    175 F. Supp. 2d 573 (S.D.N.Y. 2001)..................................................................5, 6, 9, 11, 12

*Travelers Casualty & Surety Co. v. Vanderbilt Group, LLC*,
    2002 U.S. Dist. LEXIS 7939 (S.D.N.Y. 2002).......................................................................9

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995) ....................................................................................10

*United States v. District Council of New York City*,
    782 F. Supp. 920 (S.D.N.Y. 1992).........................................................................................9

*United States v. Private Sanitation Indus. Assoc.*,
    811 F. Supp. 802 (E.D.N.Y. 1992) ........................................................................................9

**I.       INTRODUCTION**

In an effort to avoid his discovery obligations in these consolidated proceedings, defendant Jamal Barzinji ("Dr. Barzinji") has moved this Court for an Order staying the *Federal Insurance* action indefinitely.  In support of his Motion to Stay, Dr. Barzinji now embraces as active and on-going a federal criminal investigation he and other SAAR Network defendants have previously represented to this Court had "died with a whimper."  Despite the fact that he did not obtain the consent of the plaintiffs or approval of this Court to do so, Dr. Barzinji filed a "redacted" Memorandum of Law in support of his Motion to Stay.  Allegedly, the redacted sections of the Memorandum of Law detail the status, nature, and extent of the criminal investigation.  Dr. Barzinji acknowledges that the redacted brief he filed of record is incompetent to sustain his burden in this context, and therefore, has separately moved for leave to file an "unredacted" brief with this Court for *in camera* review.

For the reasons set forth below, Dr. Barzinji's Motion to Stay the *Federal Insurance* action indefinitely should be denied in its entirety.  To begin with, by Dr. Barzinji's own admission, the redacted brief he filed in support of the Motion to Stay is inadequate to sustain his burden as the party seeking a stay.  Having failed to file a brief competent to sustain his burden of proof within the deadline negotiated with plaintiffs, Dr. Barzinji's Motion to Stay must be denied.  Furthermore, although most of the factual details relating to the criminal investigation have been redacted from Dr. Barzinji's Motion to Stay and are therefore unknown to the plaintiffs, the limited information available reveals that Dr. Barzinji cannot meet the legal standards for a stay.  Accordingly, and for the reasons discussed in further detail below, the *Federal Insurance* plaintiffs respectfully request that this Court deny Dr. Barzinji's "redacted"

Motion to Stay in its entirety. Plaintiffs further request that this Court direct Dr. Barzinji to provide formal answers to plaintiffs' long-outstanding discovery requests.[1]

## II.   FACTUAL BACKGROUND

The circumstances prompting this lawsuit against Dr. Barzinji are undoubtedly familiar to this Court. The *Federal Insurance* plaintiffs sued Dr. Barzinji based on his integral role as an officer and director of more than fourteen organizations functioning under the umbrella of the "SAAR Network," a group of interrelated purported charities, think tanks, and for-profit businesses used to generate and surreptitiously transfer funds to al Qaida and other international terrorist groups. The vast majority of these SAAR Network entities were located at a single address in Herndon, Virginia, and have common officers, directors, and management. In his executive and director roles, Dr. Barzinji maintained authority over eighteen bank accounts for SAAR Network entities which he used to aid and abet, conspire with, and support al Qaida.

In particular, Dr. Barzinji and the SAAR Network defendants are alleged to have fostered business and financial relationships with Executive Order 13224 designees Youssef Nada and Ahmed Idris Nasreddin, both of whom are reported to have provided financial assistance to Osama Bin Laden. Furthermore, it is alleged that SAAR Network entities' funds were transferred to Nada and Nasreddin through Bank al Taqwa and Akida Bank Private Ltd., both of which have been designated as terrorist entities pursuant to Executive Order 13224. According to the U.S. Treasury Department, these entities provided investment advice and cash transfer mechanisms for al Qaida and other radical Islamic groups.

In March 2002, federal authorities raided the offices of the SAAR Network entities in Herndon, Virginia, as well as the residences of several prominent SAAR Network officials,

---

[1] Plaintiffs note that this Court has previously refused to grant a stay to these proceedings pending the resolution of a criminal investigation. Specifically, defendants Al Haramain Islamic Foundation and Aqeel al Aqeel sought a stay of the *Burnett* action pending an on-going criminal investigation in Oregon. *See* MDL Docket No. 266.

2

including Dr. Barzinji. Known as "Operation Green Quest," the raids were conducted as part of a federal investigation into financial support for international terrorism and resulted in the seizure of dozens of computers and hundreds of documents, including bank statements, tax returns, corporate records, and other documents.

On May 10, 2004, Dr. Barzinji filed his Motion to Dismiss the claims asserted against him in the *Federal Insurance* action. Thereafter, on September 21, 2005, this Court's Opinion and Order denied Dr. Barzinji's Motion to Dismiss, thereby permitting the plaintiffs to proceed with discovery. On June 20, 2006, the *Federal Insurance* plaintiffs served their First Set of Requests for Production of Documents on Dr. Barzinji.[2]

In an effort to avoid his discovery obligations in this case, Dr. Barzinji has moved this Court for an Order staying the *Federal Insurance* action indefinitely. In support of his Motion to Stay, Dr. Barzinji has chosen to embrace a federal criminal investigation he now declares is active and on-going. That position is troubling, considering that it is completely contrary to the numerous representations he and other SAAR Network defendants have asserted to this Court about the status of that very same federal investigation.

Since the March 2002 raids, the SAAR Network defendants, including Dr. Barzinji, have taken advantage of numerous opportunities to publicly disclaim and minimize the significance of the federal government's on-going criminal investigation into their alleged support of al Qaida and other international terrorist groups. In particular, these defendants have consistently and repeatedly asserted that the federal government's investigation has stalled and the March 2002 raids have produced no evidence of any terror financing.[3] Indeed, a number of the SAAR

---

[2] Plaintiffs have only served Dr. Barzinji with document requests to this point.

[3] *See* Eric Lichtblau, *Court Papers Show Charges That Group Aided Terrorists*, N.Y. Times, October 18, 2003, at Section A, p. 8 (counsel for the Saar defendants asserting that the government's investigation had reached a dead end after the much-publicized March 2002 raids: *"If after 20 months they haven't arrested or detained these people or tried to freeze their assets or shut them down, I think the case is over…. There's no evidence of any terrorist financing."*).

3

defendants, including Dr. Barzinji, in support of their dismissal from these proceedings, have made numerous representations to this Court that the government's criminal investigation was going no where.

Specifically, counsel for Dr. Barzinji and other SAAR defendants asserted the following to this Court at oral argument in support of his clients' dismissal from these proceedings:

> *"And then the raids were accompanied with great fanfare and publicity, vilifying these Americans and their companies in the media…. So now, if we could fast-forward two and half years later, to today. What has happened to this great investigation that is sprinkled throughout this complaint? Have assets been seized? No way. Have there been arrests? No. Indictments? Your Honor, you would have heard if there had been any indictments, you would have heard from the plaintiffs on that subject. Has anybody been placed on a terror list? No way. In fact, the government has even handed back the original documents that were seized during those searches two and a half years ago, they handed them back to the searchees… So, your Honor, this investigation started with a roar and died with a whimper."* (emphasis added).

*See Transcripts of Oral Argument Before Judge Richard C. Casey*, dated October 14, 2004, at pp. 43-44.

Since that hearing, other SAAR Network defendants have made similar representations to this Court in favor of their dismissal from these proceedings.[4]  In fact, as recently as March 2006, Dr. Barzinji asserted the following:

> As noted in the Motion to Dismiss, that investigation has lasted nearly four years, but has not lead to a single charge, indictment, conviction, designation or the freezing of a single asset or account.

---

[4] *See Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State A Claim Filed By SAAR Defendants African Muslim Agency, et al.*, October 19, 2005, Docket No. 1428, at p. 5, n. 9; *Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State A Claim Filed By SAAR Defendants Taha Al-Awani, et al.*, October 28, 2005, Docket No. 1450, at p. 5, n. 8; *Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State A Claim Filed By SAAR Defendants Muhammad Ashraf, et al.*, December 7, 2005, Docket No. 1540, at p. 5, n. 6; *Memorandum of Law in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State A Claim Filed By Jamal Barzinji*, December 7, 2005, Docket No. 1542, at pp. 13-14.

4

*See Reply Memorandum of Law of Jamal Barzinji In Further Support of His Motion to Dismiss Pursuant To Rule 12(b)(6) For Failure To State A Claim*, March 8, 2006, Docket No. 1717, at p. 7, n. 8.

Surprisingly, after these repeated representations to this Court that the government's investigation was dead in the water, Dr. Barzinji has now chosen to embrace the criminal investigation and use it in support of a Motion to Stay these proceedings indefinitely. Plaintiffs submit that this is nothing more than a desperate attempt by Dr. Barzinji to evade his discovery obligations, and further mire this complex litigation in procedural disputes.[5]

### III.    ARGUMENT

#### A.    A Stay In A Civil Case Is An Extraordinary Writ

While the federal courts have the authority to stay civil proceedings, such a stay "is not constitutionally required whenever a litigant finds himself facing the dilemmas inherent in pursuing civil litigation while being the subject of a related criminal investigation." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (citing *Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir. 1993) ("Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter.")); *JHW Greentree Capital, L.P. v. Whittier Trust Co.*, 2005 U.S. Dist. LEXIS 14687, at *2 (S.D.N.Y. 2005). Indeed, the courts have held that a total stay of civil discovery pending the outcome of related criminal proceedings is an extraordinary writ. *In re Par Pharmaceutical Sec. Litig.*, 133 F.R.D. 12, 13

---

[5] Several other SAAR Network defendants have similarly employed questionable tactics to avoid answering plaintiffs' discovery requests in this case. On January 18, 2005, this Court entered its Opinion and Order denying the motions to dismiss of the "SAAR Network Entities" in the *Federal Insurance* action. The Court additionally Ordered that the parties engage in jurisdictional discovery to determine which of the defendants have a presence in Virginia and which entities transferred money to Executive Order 13224 designees, Youssef Nada and Ahmed Idris Nasreddin. Plaintiffs subsequently served jurisdictional document requests on these defendants on April 20, 2005. Rather than comply with this Court's January 18, 2005 Order and respond to the plaintiffs' discovery, defendants withdrew their personal jurisdiction defenses and refused to answer. Thereafter, plaintiffs requested that the defendants treat the document requests as merits discovery and respond accordingly. Defendants once again refused.

5

(S.D.N.Y. 1990); *Karimona Investments, LLC v. Weinrab*, 2003 U.S. Dist. LEXIS 3324 (S.D.N.Y. 2003).

Given that the relief is extraordinary, the courts in this circuit will generally grant the extraordinary remedy only after the defendant seeking a stay has been indicted. *Sterling Nat'l Bank*, 175 F. Supp. 2d at 576; *Par Pharmaceutical*, 133 F.R.D. at 13 (stating that "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"); *Citibank, N.A. v. Hakim*, 1993 U.S. Dist. LEXIS 16299, *2-3 (S.D.N.Y. 1993) ("In this Circuit, however, district courts generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted").

### B. Dr. Barzinji Fails To Meet The Legal Standards For A Stay

Even in circumstances in which the moving party has been indicted, he bears the burden of proving specific and particular facts that warrant the extraordinary relief of a stay. To determine whether such relief is appropriate, the following factors are considered by the district courts in this Circuit:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case; including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceedings expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendant; (5) the public interest; and (6) the interest of the Court in the efficient management of cases.

*Sterling Nat'l Bank*, 175 F. Supp. 2d at 576. Under these standards, Dr. Barzinji simply does not qualify for an indefinite stay to these proceedings.

By his own admission, Dr. Barzinji's "redacted" brief cannot sustain his burden of proof that he is entitled to an indefinite stay of these proceedings. Indeed, he admits that this Court must review the details of the criminal investigation, all of which have been redacted from his filing, in order to rule in his favor. Because Barzinji bears the burden of proof, but has filed no

pleading within the deadlines negotiated between the parties that is competent to carry that burden, his motion must be denied.[6]

Moreover, Dr. Barzinji cannot seek to meet his burden through the submission of an *ex parte* "unredacted" brief for review by this Court *in camera*. As set forth in further detail in the *Federal Insurance* Plaintiffs' Memorandum of Law in Opposition to Defendant Jamal Barzinji's Motion for Leave to File His Unredacted Motion For a Stay For The Court's *In Camera* Review (incorporated herein by reference), no extraordinary or compelling interests exist to support *ex parte*, *in camera* submissions in relation to this dispute. In the absence of such compelling interests, Dr. Barzinji cannot make the showing necessary to infringe on the plaintiffs' due process rights and set aside the fundamental principle of public access to court filings. For those reasons, his motion to file an "unredacted" Motion to Stay must be denied.

Even assuming that Dr. Barzinji had filed a brief competent to carry his burden on this issue, he cannot obtain an indefinite stay in this case. Dr. Barzinji relies heavily on the argument that he should be precluded from answering the plaintiffs' discovery requests because doing so would compel him to assert his Fifth Amendment privilege. However, Dr. Barzinji grossly overstates the perceived Fifth Amendment concerns and further misapplies the rules governing discovery of documents in light of that privilege. To date, the plaintiffs have only served document requests on the defendant, many of which seek information relating to corporate records over which he has had authority. These corporate records are not protected by the Fifth Amendment. Thus, Dr. Barzinji's Fifth Amendment arguments are without merit and his motion to stay should be denied as set forth below.

---

[6] Prior to the commencement of briefing on this issue, the parties agreed to a negotiated schedule to file their respective briefs. During that time period, Dr. Barzinji did not seek leave of court to submit an *ex parte* brief in advance of his deadline. At this point, any such submission is simply untimely. Obviously, Dr. Barzinji could have avoided this problem by seeking leave to submit *ex parte* briefing in advance of the deadline, and could have included a schedule for briefing that issue in the overall schedule. Instead, he chose not to mention this issue to the plaintiffs at all.

### C. Dr. Barzinji Does Not Meet The Burden Of A Stay As To The Plaintiffs' Document Requests

Dr. Barzinji argues that an indefinite stay to these proceedings is necessary because requiring him to answer the plaintiffs' discovery requests would compel him to assert the protections of the Fifth Amendment. However, the Fifth Amendment privilege "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1975). Consistent with that fundamental principle, the courts have held that the production of business records does not implicate Fifth Amendment concerns. *See In Re: Grand Jury Subpoena Duces Tecum Dated October 29*, 1 F.3d 87, 93 (2d Cir. 1993) (holding that the Fifth Amendment does not protect the contents of voluntarily prepared documents, either business or personal); *Braswell v. United States*, 487 U.S. 99, 104 (1988) (holding that the Fifth Amendment privilege may not be asserted on the basis of corporate books and records); *Panaro v. U.S. Securities and Exchange Comm.*, 1987 U.S. Dist. LEXIS 16810, *7 (E.D.N.Y. 1987) (holding that bank records are not considered to be compelled testimonial evidence because they are voluntarily prepared by the bank).

Moreover, even where the production of documents may involve some testimonial act which implicates the Fifth Amendment, the courts have held that the production may not be refused if the requesting party can demonstrate with reasonable particularity that it knows of the existence and location of the documents. *In Re: Grand Jury Subpoena*, 1 F.3d at 93. Further, a defendant's production of documents cannot be incriminating testimony if the receiving party can independently authenticate the documents. *Id.*

Pursuant to these standards, plaintiffs' outstanding discovery requests to Dr. Barzinji simply do not raise any Fifth Amendment concerns as Dr. Barzinji suggests. To date, the plaintiffs have only served document requests on the defendant. By his own admission, Dr. Barzinji concedes that the documents requested by the plaintiffs exist and the Government has

returned most of the documents and computers confiscated during the March 2002 raids to him. As a consequence, Dr. Barzinji's compliance with the plaintiffs' document requests does not rise to the level of compelled testimonial communications that are privileged under the Fifth Amendment.

Furthermore, many of the plaintiffs' document requests seek corporate records over which Dr. Barzinji has had some authority and/or control. Specifically, Dr. Barzinji has served in an official capacity to a number of the SAAR Network entities, including but not limited to, the International Institute of Islamic Thought, Safa Trust, Mar-Jac Poultry and the Saar Foundation. Dr. Barzinji's Fifth Amendment rights simply do not apply to these corporate records.

Even as to other forms of discovery, the limited information available in the "redacted" brief reveals he is not entitled to a stay. The mere fact that Dr. Barzinji has not been indicted strongly favors denial of his motion to stay. Indeed, the weight of authority in this Circuit indicates that the district courts will not grant a stay in a civil proceeding when the criminal investigation has not yet ripened into an indictment of the defendant. *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 576 (stating that "district courts in this Circuit generally grant the extraordinary remedy of a stay only after the defendant seeking the stay has been indicted."); *United States v. District Council of New York City*, 782 F. Supp. 920, 925 (S.D.N.Y. 1992); *In re Par Pharmaceutical*, 133 F.R.D. at 14; *Kudo v. Simels*, 1992 U.S. Dist. LEXIS 4590, *4 (S.D.N.Y. 1992); *JHW Greentree Capital*, 2005 U.S. Dist. LEXIS 14687 at *4; *Travelers Casualty & Surety Co. v. Vanderbilt Group, LLC*, 2002 U.S. Dist. LEXIS 7939, *7 (S.D.N.Y. 2002). In fact, several courts have ruled that this factor, standing alone, is enough to deny the defendant's request for a stay. *United States v. Private Sanitation Indus. Assoc.*, 811 F. Supp.

802, 805 (E.D.N.Y. 1992); *Citibank, N.A.*, 1993 U.S. Dist. LEXIS 16299 at *3; *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324 at *8.[7]

      Dr. Barzinji cites to several cases in support of his assertion that despite not having been indicted, the extraordinary relief of a stay is necessary in his case. However, a closer review of the case law finds that the decisions he cites are not favorable to his position. *See Arden Way Assoc. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (denying a motion to stay where the defendant had been indicted, the court stated that "a policy of issuing stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration."); *John's Insulation, Inc. v. Siska Constr.*, 671 F. Supp. 289 (S.D.N.Y. 1987) (denying a motion to stay where there was no indictment and defendant was not facing possibility of simultaneous civil and criminal actions); *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (granting a motion to stay where the defendant had been indicted, but reasoning that "stays will generally not be granted before an indictment is issued.").

      The defendant further cites to *Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986), in support of his argument that the courts have not hesitated to grant motions to stay civil proceedings prior to a criminal indictment. However, the issue on appeal was whether the district court abused its discretion in refusing to grant the stay until the expiration of the statute of limitations on the underlying defense. In affirming the lower court, the Second Circuit declined to find an abuse of

---

[7] In the absence of any indictment, Dr. Barzinji's Fifth Amendment concerns are speculative at this time. The courts in this district have recognized that a defendant facing the possibility of simultaneous civil and criminal proceedings has an interest in avoiding the choice between compromising his Fifth Amendment rights and presenting a defense in the civil litigation. However, these same courts have held that such a predicament alone does not warrant a stay of discovery. *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 578 (reasoning that the nature of the threat to the defendant's Fifth Amendment rights is imprecise where no indictment has been issued and the scope of the grand jury's investigation is unknown); *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324 at *11-13 (holding that the potential harm to defendant's Fifth Amendment rights is speculative and not nearly as substantial as in the typical cases where a criminal indictment has been issued against the defendant); *Citibank, N.A.*, 1993 U.S. Dist. LEXIS 16299 at *5 (same).

discretion, but never addressed the appropriateness of a pre-indictment stay as Dr. Barzinji suggests.  Dr. Barzinji also cites to *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985), in support of that same argument.  However, the court in that case reasoned that a pre-indictment stay was appropriate only because the government was prosecuting *both* the civil and criminal proceedings.

In addition to the significant fact that Dr. Barzinji has not been indicted, principles of equity do not support an indefinite stay to these proceedings as the plaintiffs have an economic interest in the expeditious resolution of this action.  *See Paine, Webber, Jackson & Curtis Inc. v. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.").  To date, no criminal case has been filed against Dr. Barzinji or his SAAR Network co-defendants, and it is unclear the extent and depth to which the criminal investigation by the federal government continues to proceed. Thus, plaintiffs have legitimate concerns that any delay may prejudice their ability to recover monetary damages from Dr. Barzinji should they succeed in this suit against him.  In fact, Dr. Barzinji asserts in his motion that he is an individual of very limited means.

The courts have recognized the equitable interests of a plaintiff in this situation and have concluded that the potential prejudice to the plaintiff from an indefinite delay in the civil proceedings weighs against granting a stay.  *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 579 ("It is unclear whether defendants have sufficient assets to permit any meaningful recovery, and permitting a further delay during which assets can be dispersed or hidden – or called upon for the expensive business of defending a grand jury investigation and potential criminal litigation – will increase the risks that plaintiff could succeed in the litigation, without being able to collect on any judgment."); *JHW Greentree Capital*, 2005 U.S. Dist. LEXIS 14687 at *5 (reasoning that an

11

indefinite stay would frustrate any real recovery should the plaintiffs succeed, and thus weighed against a stay); *Karimona Investments*, 2003 U.S. Dist. LEXIS 3324 at *9-11 (same).

Furthermore, when facing motions to stay proceedings indefinitely, the courts have a similar interest in resolving litigation efficiently. *See Karimona Investments*, 2003 U.S. Dist. LEXIS 3324 at *13-14; *JHW Greentree Capital*, 2005 U.S. Dist. LEXIS 14687 at *7. The courts have stated that they must be mindful that "a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration." *Paine Webber*, 486 F. Supp. at 1119. *See also Sterling Nat'l Bank*, 175 F. Supp. 2d at 580; *Citibank, N.A.*, 1993 U.S. Dist. LEXIS 16299 at *6 (stating that the convenience to the court weighs against a stay because it is unrealistic to postpone indefinitely the pending action until criminal charges are brought). Plaintiffs respectfully submit that a stay would indefinitely delay the resolution of this action without any predictability as to when the case against Dr. Barzinji would return to this Court's active docket.

Moreover, the public interest in the September 11th tragedy and the prosecution of those responsible favors denying Dr. Barzinji's request for a stay. The September 11, 2001 terrorist attack on the World Trade Center Complex in New York and the Pentagon in Arlington, Virginia resulted in the tragic loss of several thousand innocent lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center Complex. Considered to be the single worst attack on United States soil and its citizens, there can be no doubt that the public has a significant interest in the investigation and prosecution of those responsible for this horrific tragedy.

In support of his assertion that a delay in this case will not harm the public interest, Dr. Barzinji cites to *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985), a case involving simultaneous civil and criminal cases relating to ERISA violations. Plaintiffs respectfully submit

that the horrific events of the September 11th Attack are of greater significance and interest to the public than a party's alleged ERISA violations. The public's interest in the administration of justice is best served in this instance by denying Dr. Barzinji's request for a stay and preventing an indefinite stay of these proceedings.

Finally, it has now been five years since the September 11th Attack and the victims of that tragedy have the right to move forward with cognizable claims against defendants in this case. An indefinite delay to these proceedings would prejudice the plaintiffs as evidence and witnesses are likely to disappear and the memories of the parties have the potential to fade over time.

### D. Judicial Economy Does Not Warrant An Indefinite Stay To These Proceedings

In further support of his motion to stay, Dr. Barzinji argues that discovery should be held in abeyance until this Court has ruled on his pending motions to dismiss other of the consolidated cases. Moreover, Dr. Barzinji argues that discovery against him should not go forward until this Court resolves the motions to dismiss of other defendants who are alleged by the plaintiffs to be part of the SAAR Network. Both of these arguments are without merit. [8]

Dr. Barzinji's situation is not the first where this Court has decided motions to dismiss in fewer than all cases. Indeed, in several such situations, this Court has permitted discovery to proceed against defendants who have pending motions to dismiss other of the consolidated cases (i.e., National Commercial Bank, Al Haramain Islamic Foundation (USA), and Saudi Binladen Group). Those defendants have recognized their obligation to respond to discovery despite the fact that they have motions to dismiss pending in other actions, and there is no reason Dr. Barzinji should be treated differently. If anything, judicial efficiency recommends that Dr.

---

[8] Dr. Barzinji again cites to *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985), in support of his argument that a stay would be beneficial for purposes of judicial economy. Specifically, he argues that no harm would result from a stay in this case because the evidence obtained in the criminal proceedings would reduce discovery in the civil proceedings. However, the court in *Brock* agreed with that reasoning only because the government was prosecuting both the civil and criminal actions against the defendant. That is not the case here.

13

Barzinji should voluntarily withdraw his motions to dismiss the other cases, as this Court's prior decision makes clear that those plaintiffs need only amend their complaints to include the allegations advanced against Dr. Barzinji in the *Federal Insurance* action in order to state a viable claim.

Dr. Barzinji's argument that discovery should be held in abeyance until this Court resolves the motions of other SAAR Network defendants is equally misplaced. Dr. Barzinji has consistently denied being a part of any "SAAR Network" in these proceedings. As such, his attempt to link the discovery served on him to the motions of the other SAAR Network defendants simply is illogical. More importantly, the Federal Rules require that his motion must be judged on the merits of the claims asserted against him, and not the other defendants he now wishes to align himself with. Certainly, judicial efficiency would not be served in this case if the defendants could simply point to the unresolved status of other defendants' motions as grounds for avoiding discovery. Accordingly, plaintiffs submit that judicial economy would not be achieved by an indefinite delay of these proceedings.

### E.   Pursuant To This Court's Standing Rules And The Case Management Orders In This Case, A Motion To Stay Is Not The Appropriate Vehicle To Object To Discovery

Finally, Dr. Barzinji attempts to litigate the scope of the plaintiffs' discovery in his Motion to Stay by asserting various objections to the documents requests. Plaintiffs respectfully submit to this Court that a motion to stay proceedings is not the appropriate vehicle to object to discovery. Rather, in accordance with the Federal Rules of Civil Procedure, Dr. Barzinji is obligated to provide formal answers to plaintiffs' document requests, assert any general and/or specific objections therein, and produce responsive and non-privileged documents at that time. Should the parties disagree on certain aspects of the proposed discovery, consistent with this Court's standing rules and the Case Management Orders in this case, the parties are required to

"meet and confer" to work out any perceived disagreements. *See* April 4, 2006 Order, MDL Docket #1747 (Judge Casey requesting the *Ashton* plaintiffs and defendant National Commercial Bank conduct a meet and confer to work out discovery issues, and further "urges the parties to act professionally."). If after such a meeting the parties are unable to reach an agreement, it is then permissible to bring the dispute(s) to this Court's attention and request its assistance. Dr. Barzinji has obviously ignored the protocol directed by this Court and the Federal Rules. Therefore, plaintiffs respectfully request this Court direct Dr. Barzinji to provide formal answers to their discovery requests and assert any objections therein.

## IV.   CONCLUSION

For the reasons stated above, the *Federal Insurance* Plaintiffs respectfully request that this Court deny Dr. Barzinji's "Redacted" Motion to Stay in its entirety. Plaintiffs further respectfully request that this Court direct Dr. Barzinji to provide formal answers to the plaintiffs' discovery requests.

Respectfully submitted,

COZEN O'CONNOR

Dated: October 25, 2006          BY: _____

Stephen A. Cozen, Esquire
Elliott R. Feldman, Esquire
Sean P. Carter, Esquire
J. Scott Tarbutton, Esquire
1900 Market Street
Philadelphia, PA 19103
Tele: (215) 665-2000
Fax: (215) 665-2013

Attorneys for *Federal Insurance* Plaintiffs

PHILADELPHIA\2815598\3  117430.000

15