**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (RCC) ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

---

**DEFENDANT JAMAL BARZINJI'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO STAY**

---

REDACTED

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
**DLA PIPER LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Dr. Jamal Barzinji*

Dated: November 28, 2006

In their Opposition to Dr. Barzinji's motion to stay, Plaintiffs misrepresent the factual record,[1] mischaracterize the law governing pre-indictment stays and misperceive the applicability, and the importance, of protecting Dr. Barzinji's Fifth Amendment privilege in this action. Decisions whether to stay a case are always left to the sound discretion of the Court and made on the particular facts of a given case. Given the Government's continuing criminal investigation of Dr. Barzinji, the prejudice he would face absent a stay, as well as the fact that a stay is necessary to promote judicial economy, it is difficult to imagine more compelling facts warranting a stay.

## ARGUMENT

## I. THE GOVERNMENT'S INVESTIGATION OF DR. BARZINJI IS NOT ONLY CONTINUING, BUT INTENSIFYING

Plaintiffs' primary argument is that a stay of this action is inappropriate because the criminal investigation that Dr. Barzinji describes in his motion seeking a stay has "died with a whimper." (Plaintiffs' Opp. at 1.) But Plaintiffs' support for this argument, a *New York Times* article from October 18, 2003 and statements made by Dr. Barzinji's counsel at oral argument before the Court on October 14, 2004, from over three and two years ago respectively, is outdated and irrelevant. That investigation, dubbed "Operation Greenquest" by the Government, concerned Dr. Barzinji's alleged involvement in terrorism financing and has died with a whimper.[2]

---

[1] For example, Plaintiffs argue that several Defendants allegedly associated with Dr. Barzinji have "employed questionable tactics to avoid answering plaintiffs' discovery requests in this case." (Plaintiffs' Opp. at 5.) But, as explained in detail in the January 18, 2006, Reply Memorandum in Support of Defendants' Motions to Dismiss (MDL Docket # 1606), those Defendants properly declined to produce documents in response to jurisdictional discovery requests because they withdrew their jurisdictional defenses and Plaintiffs' document requests were thus moot.

[2] Plaintiffs also cite to Dr. Barzinji's motion to dismiss dated March 8, 2006, (MDL Docket # 1717), where Dr. Barzinji's asserted that the Government's investigation had not "lead to a single charge, indictment, conviction,

(footnote continued on next page)

REDACTED

REDACTED

REDACTED

---

designation or the freezing of a single asset or account." That statement was not only true when made but remains true to this date.





Plaintiffs complain that the stay Dr. Barzinji seeks would be "indefinite." (Plaintiffs' Opp. at 1, 3.) But, Dr. Barzinji simply seeks to stay this matter until after the resolution of the grand jury criminal investigation and any subsequent criminal case against him. To address Plaintiffs' concerns, the Court could fashion a stay of a finite duration -- six months or year -- and following the expiration of that that period, depending on the status of the criminal investigation, the parties could revisit the necessity for continuing the stay.

## II.  A STAY IS WARRANTED EVEN THOUGH DR. BARZINJI HAS NOT BEEN INDICTED

Plaintiffs also argue that a stay is not proper because Dr. Barzinji has not been indicted. (Plaintiffs' Opp. at 5-6; 9-11.) Plaintiffs assert that "the weight of authority in this Circuit

---

[3] The Court dismissed the *Ashton* Plaintiffs' claims against IIIT based on its alleged connections to Mr. Al-Arian. Those Plaintiffs alleged that IIIT "financed two charitable organizations in Florida accused of being Islamic Jihad cells." The Court dismissed the claims because Plaintiffs did "not allege that IIIT knew these charities were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 571 (S.D.N.Y. 2005).

indicates that the district courts will not grant a stay in a civil proceeding when the criminal investigation has not yet ripened into an indictment of the defendant." (*Id.* at 9.)[4]

But Plaintiffs overemphasize the necessity of an indictment to stay a parallel civil proceeding.[5] It is well settled that courts have inherent authority to control the disposition of cases on its docket. *See e.g. Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). While it is beyond dispute that the existence of an indictment would weigh very strongly in favor of a stay, as the Second Circuit has made clear, an indictment is not a prerequisite to obtaining a stay in a related civil proceeding. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986).

Plaintiffs claim that the district court's authority to issue a pre-indictment stay was not at issue on appeal in *Kashi*. But Plaintiffs are wrong. The Second Circuit explicitly upheld the district court's exercise of discretion in staying a civil action against the target of federal grand jury investigation "until the U.S. Attorney's office announced that it had declined prosecution." *Id.* Although the Second Circuit refused to extend the stay even further as the Defendant requested -- to the end of the statute of limitations period for the purported crime – that decision impacted only the length of the stay, not whether it was properly granted.

Other courts have ruled, consistent with *Kashi*, that the absence of an indictment, especially when -- as is the case here -- an indictment appears to be inevitable and imminent,

---

[4] Plaintiffs argue that "this Court has previously refused to grant a stay to these proceedings pending resolution of a criminal investigation." (Plaintiffs' Opp. at n. 1) But this statement appears to be false. In actuality, the motions to stay of Al Haramain Islamic Foundation and Aqel al Aqeel remain pending before the Court.

[5] For example, Plaintiffs argue that "several courts have ruled that [the absence of an indictment], standing alone, is enough to deny the defendant's request for a stay." (Government Opp. at 9.) But, the cases actually stand for the lesser proposition that "[p]re-indictment requests for a stay of civil proceedings are generally denied." *U.S. v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 806 (E.D.N.Y. 1992). In that case, the court refused to issue a pre-indictment stay *at the summary judgment stage* because, among other things, (1) there was a very strong public interest in a speedy resolution of the RICO action against a reputed organized crime figure and the court apparently believed that the motion for a stay was nothing more than a delay tactic; and (2) because the court found that Defendant would not suffer prejudice absent a stay because he had already "continually invoked the Fifth Amendment privilege" in response to discovery requests. *Id.* at 807.

does not preclude the issuance of a stay. *See e.g. Brock v. Tolkow*, 109 F.R.D. 116, n. 2 (E.D.N.Y. 1985) ("The fact that an indictment has not yet been returned – while it may be a factor counseling against a stay of civil proceedings – does not make consideration of the stay motion any less appropriate")[6]; *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, n. 5 (E.D. Pa. 2004) ("there is no *per se* rule against pre-indictment stays of parallel civil proceedings"); *U.S. v. Hugo Key and Son, Inc.*, 672 F. Supp. 656, 659 (D.R.I. 1987) (staying civil case six months and "if a criminal indictment results from the present criminal investigation during this period, until the conclusion of such criminal proceedings.")

Plaintiffs assert that Dr. Barzinji mis-cited three cases, *Arden Way Assoc. v. Boesky*, 660 F. Supp. 1494 (S.D.N.Y. 1987), *John's Insulation, Inc. v. Siska Constr.*, 671 F. Supp. 289 (S.D.N.Y. 1987), and *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). (Plaintiffs' Opp. at 10.)  Dr. Barzinji did not rely on these cases as authority for the Court to issue a pre-indictment stay.  Rather, Plaintiffs merely relied on these cases for the broader and undisputed propositions that court's have inherent power to stay cases (*St. John's Insulation*) and may do so to protect a litigant's Fifth Amendment rights (*Arden Way*), and for a list of the factors courts rely in issuing stays (*Trustees of the Plumbers and Pipefitters*).

---

[6] Plaintiffs argue that the Court in *Brock* limited pre-indictment stays to situations where the Government is prosecuting both the criminal and civil case. (Plaintiffs' Opp. at 11.)  But *Brock* makes no such limitation and instead simply found that a stay "is even more appropriate when both actions are brought by the Government." *Brock*, 109 F.R.D. at 119.

### III.   A STAY IS NECESSARY TO PROTECT
### DR. BARZINJI'S FIFTH AMENDMENT RIGHTS

Plaintiffs also argue that a stay is not necessary to protect Dr. Barzinji's Fifth

Amendment privilege because the Fifth Amendment is not applicable to Plaintiffs' document

requests. (Plaintiffs' Opp. at 7-9.) But Plaintiffs are incorrect.

The Fifth Amendment may be asserted in any proceeding, criminal or civil, when a

"witness reasonably believes that his testimony could 'furnish a link in the chain of evidence

needed to prosecute' him for a crime." *Estate of Fisher v. Comm'r of Internal Revenue*, 905 F.2d

645, 648 (2d Cir. 1990). The "act of production" doctrine protects individuals from

incriminating themselves by being compelled to produce documents where the production could

implicitly communicate incriminating facts, such as the admission that "papers existed, were in

[the producing party's] possession or control, and were authentic." *U.S. v. Hubbell*, 530 U.S. 27,

36-37 (2000); *In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191

F.3d 173, 178 (2d Cir. 1999) ("an individual may claim an act of production privilege to decline

to produce documents . . . where the act of production is, itself, (1) compelled, (2) testimonial,

and (3) incriminating."); *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F. 3d

87, 93 (2d Cir. 1993).[7]

Plaintiffs claim that the Fifth Amendment does not apply because they are seeking only

"corporate records over which Dr. Barzinji has had some authority and/or control," and that

corporate records are not protected by the Fifth Amendment. (Plaintiffs' Opp. at 9.) But even a

cursory review of Plaintiffs' document requests shows that they seek primarily personal records,

including but not limited to Dr. Barzinji's employment records (Request #1), foreign and

---

[7] The Second Circuit has held that one need not be charged with a crime to raise the protections afforded by the Fifth Amendment. *U.S. v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984). Indeed, the Fifth Amendment protects the innocent. *Ohio v. Reiner*, 532 U.S. 17 (2001)

domestic bank account records (Requests #2 and #3), documents concerning his personal, charitable and religious relationships with various individuals and entities (Requests ## 5, 11, 15, 21, 24, 46) and any analysis or audits of Dr. Barzinji's financial accounts and assets (Request # 44). A copy of Plaintiffs' document requests are attached as Exhibit B to Dr. Barzinji's motion to stay. (MDL Docket # 1896.)

Moreover, the Fifth Amendment act of production privilege may apply to business records: "(1) if the existence and location of the subpoenaed papers are unknown to the government; and (2) where production would implicitly authenticate the documents." *AAOT Foreign Econ. Ass'n (VO) Technostroyexport, v. Int'l Dev. & Trade Servs., Inc.*, 1999 WL 970402, at *6 (S.D.N.Y. October 25, 1999) (*quoting In re Grand Jury Subpoena*, 1 F. 3d at 93). Many, if not all of Plaintiffs' extremely broad document requests implicate the act of production privilege as there is no evidence that Plaintiffs are aware of the existence and location of any of the requested documents, and production of the requested could implicitly authenticate the documents.

It is entirely improper for Plaintiffs to seek the production of corporate records through Dr. Barzinji. Plaintiffs argue that Dr. Barzinji should be required to produce corporate records because he has "served in an official capacity to" IIIT, Safa Trust, Mar-Jac Poultry or the SAAR Foundation. (Plaintiffs' Opp. at 9.) However, Plaintiffs cite to no evidence that Dr. Barzinji has any possession, custody or control of the documents of any of these entities.[8]

---

[8] IIIT, Safa Trust and Mar-Jac Poultry already have had the claims against them dismissed by the Court. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005). Defendants are not entitled to seek discovery from these dismissed parties. *See* January 13, 2006 Order, MDL Docket # 1623(partially quashing the *Burnett* Plaintiffs' subpoena to Wachovia Bank); *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 377 (S.D.N.Y. 2004) ("dismissed actions ordinarily would give would-be litigants no authority to conduct discovery of their targeted defendants."); *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (discovery is precluded "in instances where the Court has already ruled that the complaint is defective."). The SAAR Foundation dissolved prior to the September 11, 2001 attacks and is therefore not a proper defendant in any of the actions in the MDL.

Plaintiffs also argue that their requests for "the documents . . . confiscated during the March 2002 raids" do not implicate the Fifth Amendment privilege because Dr. Barzinji allegedly "concedes that the documents requested by plaintiffs exist." (Plaintiffs' Opp. at 8-9.) But the documents confiscated from Dr. Barzinji's home in March 2002 were later returned by the Government to Dr. Barzinji's counsel.  Dr. Barzijni does not know what documents were taken by the Government, has not been in custody of those documents for well over four years and could not possibly concede what documents exist.  Moreover, those documents are personal documents, many if not all of which are entirely irrelevant to this action.  The act of production doctrine would apply to any documents from that search that were responsive because the production of those documents could implicitly authenticate the documents.

Protection of Dr. Barzinji's Fifth Amendment rights is particularly important here given REDACTED and, as described in detail in Dr. Barzinji's moving papers, a history or collaboration between Plaintiffs' attorneys in this MDL and the attorneys for the Government responsible for the criminal investigation.  It is a near certainty that any documents produced by Dr. Barzinji in this action will be provided immediately to the Government.

## IV.    THE REMAINING FACTORS ALL WEIGH IN FAVOR OF A STAY

All of the other relevant factors also weigh in favor of a stay.[9]  For example, the requested stay would promote judicial economy because evidence obtained in any criminal proceeding brought against Dr. Barzinji could reduce the scope of discovery in the civil

---

[9] Plaintiffs argue that the "Court has permitted discovery to proceed against defendants who have pending motions to dismiss other of the consolidated case." (Plaintiffs' Opp. at 13.)  But the National Commercial Bank and Saudi Binladen Group cases only concern jurisdictional discovery.  The Al Haramain Islamic Foundation case is unique in that discovery in that case began in August 2003 prior to being transferred to this Court by the MDL panel on December 9, 2003.  There has been no discovery conducted in the Al Haramain matter for the past two and a half years.

proceeding and later be used in that proceeding. *See Brock v. Tolkow*, 109 F.R.D. at 119 (finding no harm from staying civil discovery because the evidence from the criminal trial will reduce discovery during the civil proceeding).

And specifically here -- a stay would promote efficiency because until the Court rules on all of the outstanding motions to dismiss all of the so-called "SAAR Network" Defendants, it will not be clear what evidence is relevant or reasonably calculated to lead to the discovery of admissible evidence. Given the overbreadth of Plaintiffs' document requests to Dr. Barzinji, there will be additional litigation over the proper scope of Plaintiffs' document requests in addition to the applicability of the Fifth Amendment to those requests.

Rather than resolve these inevitable discovery motions piecemeal, the Court should stay discovery until after all of those Defendants' motions to dismiss are resolved so that litigation concerning discovery issues can be consolidated between as many Plaintiffs and Defendants as possible. If not, the Court will likely find itself inundated with similar discovery disputes. Moreover, if a stay is not granted, Dr. Barzinji, an individual of limited means, will be subjected to the burdensome costs of duplicative discovery and motions practice.

Plaintiffs suggest that to promote judicial economy, rather than have the Court issue a stay, "Dr. Barzinji should voluntarily withdraw his motions to dismiss the other cases." (Plaintiffs' Opp. at 14.) But Dr. Barzinji's motions to dismiss are well-founded and should be granted. Simply because the Court has found that the *Federal Insurance* Plaintiffs stated a claim against him does not mean that any of the other Plaintiffs have done so. Rather, it appears that the Court may have erred in distinguishing Dr. Barzinji from the other so-called "SAAR Network" Defendants all of whom have had claims against them dismissed, and perhaps should have dismissed the *Federal Insurance* Plaintiffs' claims against Dr. Barzinji as well. *See* Dr.

9

Barzinji's Memorandum of Law in Support of Motion To Dismiss Pursuant To Rule 12(B)(6) For Failure To State A Claim, MDL Docket # 1717. In short, Plaintiffs cannot be serious.

Plaintiffs also argue that "it has now been five years since the September 11th Attack and the victims of that tragedy have the right to move forward with cognizable claims against defendants in this case." (Plaintiffs' Opp. at 13.) But this litigation is still in its infancy. Plaintiffs filed their "final" amended complaints only a little over a year ago on September 30, 2005. Numerous motions to dismiss remain outstanding and there has been virtually no substantive discovery in any case in this MDL. Final resolution of this action is still likely years away and Plaintiffs cannot demonstrate any prejudice from entry of the requested stay. Indeed, Plaintiffs' complaints of delay are also belied by the fact that they waited nine months after the September 2005 Opinion before finally issuing document requests to Dr. Barzinji.

Moreover, Plaintiffs assert that "the public interest in the September 11th tragedy and the prosecution of those responsible favors denying Dr. Barzinji's request for a stay." (Government Opp. at 12.) To the contrary, if anything, the severity of the allegations at issue warrant heavily in favor of a stay. This Court has previously noted "the extreme nature of the charge of terrorism." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 831. Just as "fairness requires extra-careful scrutiny of Plaintiffs' allegations" of terrorism in deciding a motion to dismiss, it would be unjust to require Dr. Barzinji to assert his Fifth Amendment privilege, and suffer the corresponding adverse inference, to the heinous charges asserted against him by Plaintiffs.

## V.   DR. BARZINJI PROPERLY SUBMITTED THE FACTUAL BASIS FOR HIS MOTION TO STAY FOR THE COURT'S IN CAMERA REVIEW

Plaintiffs also argue that Dr. Barzinji's motion for a stay should be denied because he served a redacted version of the brief on Plaintiffs but provided the Court with an unredacted version, containing the factual basis for the motion, for its *in camera* review.  For the reasons stated in Dr. Barzinji's reply memorandum of law in support of his motion for leave to file his unredacted motion for a stay for the Court's *in camera* review, filed herewith, it was entirely proper for Dr. Barzinji to provide the Court with certain materials *in camera*, and this is not a valid ground for denying Dr. Barzinji's motion.[10]

## CONCLUSION

For the foregoing reasons, Dr. Barzinji respectfully requests that the Court grant his motion for a stay of this action pending the Court's resolution of outstanding motions to dismiss and completion of the Government's criminal investigation.

Respectfully submitted,

Dated:   November 28, 2006

By: /s/ Nancy Luque
Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
DLA PIPER US LLP
1200 Nineteenth Street
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Dr. Jamal Barzinji*

---

[10] For the reasons contained in Dr. Barzinji's Motion for Leave to File His Unredacted Motion for a Stay for the Court's *In Camera* Review (MDL Docket # 1898), which Dr. Barzinji incorporates by reference, Dr. Barzinji hereby seeks leave to file an unredacted copy of this reply memorandum of law with the Court *in camera* as well.

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2006, I caused an electronic copy of the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STAY** to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen_____
Steven K. Barentzen (SB-8777)