**MEMO ENDORSED**

*U.S. DISTRICT COURT FILED NOV 30 2006 S.D. OF N.Y.*

**MotleyRice**

Robert T. Haefele
Licensed in SC, NJ & PA
DIRECT DIAL 843.216.9184
DIRECT FAX 843.216.9450
RHaefele@motleyrice.com

October 13, 2006

*Via Hand Delivery*
Honorable Richard Conway Casey
United States District Court
500 Pearl Street, Room 1350
New York, New York 10007

Re: In re Terrorist Attacks on September 11, 2001, MDL 1570

Dear Judge Casey:

> *[Handwritten endorsement:]* These issues have been referred to me by Judge Casey. I will hold a PTC on 12/13 at 10AM in Courtroom 20A. If this date and time are not suitable, counsel should place a conference call to my Chambers promptly to reschedule. FMaas, USMJ, 11/29/06

We write on behalf of the plaintiffs in the *Burnett* action, and with the approval of the Plaintiffs' Executive Committee, seeking the Court's assistance in resolving discovery disputes between plaintiffs and defendant Saudi Binladen Group (SBG) regarding the jurisdictional discovery permitted by the Court's January 18, 2005 Order. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005). In that decision, the Court denied without prejudice SBG's motion to dismiss for lack of personal jurisdiction, and granted plaintiffs' request for jurisdictional discovery.[1] In the course of that discovery, two disputes have arisen, which we now submit to the Court for resolution.

### I. SBG Should Produce Information about Direct & Indirect Holdings & Activities in the U.S.

SBG has arbitrarily limited its responses to plaintiffs' discovery requests and refuses to produce documents that plaintiffs believe bear on the extent to which SBG, directly or through its agents, directed its conduct at the United States and/or is or was sufficiently present in the U.S. to support the exercise of jurisdiction. Plaintiffs have sought information about SBG's interests, direct and indirect, in U.S. property, in American companies, in non-American companies doing business in the United States; or in U.S. investments and interests held in financial accounts with U.S. financial institutions or control of foreign financial institutions that conduct business in the U.S., including information about travel to the U.S., engagement of professional services in the U.S., and involvement in U.S. litigation.[2] Though SBG has selectively responded to these requests, it has not provided complete responses – e.g., SBG produced no business correspondence (no letterhead), notes, electronic communications (e-mails) or other "electronic documents" (leaving the unlikely impression that SBG, USA never used computers), or facsimiles (though phone records show fax communications between SBG, USA and SBG). SBG has also refused to produce information about U.S.-based SBG employees and their activities, as well as U.S.-based SBG-affiliated entities, such as SBG's business association with Techmaster, USA and joint ventures with York International and General Electric, among many other omissions that plaintiffs have pieced together from information obtained through public sources. SBG claims that, because these U.S.-based entities are not SBG's subsidiaries, their activities cannot provide a basis for jurisdiction over SBG and thus that SBG need not provide plaintiffs with information

---

[1] Although the Court indicated it was granting jurisdictional discovery "to determine if SBG purposefully directed its activities at the United States," the Court also acknowledged other facts regarding SBG's minimum contacts may affect the due process issue – noting, for example, evidence of SBG's earlier presence in Maryland.

[2] Plaintiffs summarize the areas for the sake of brevity. However, plaintiffs will provide the Court with a more complete listing of the requests at issue, if the Court wishes to make a request-by-request determination.

www.motleyrice.com

| MT. PLEASANT | BARNWELL | PROVIDENCE | HARTFORD | ATLANTA |
|---|---|---|---|---|
| Motley Rice LLC Attorneys at Law | | | | |
| 28 BRIDGESIDE BLVD. | 1750 JACKSON ST. | 321 SOUTH MAIN ST. | ONE CORPORATE CENTER | 600 WEST PEACHTREE ST. |
| P.O. BOX 1792 | P.O. BOX 365 | P.O. BOX 6067 | 20 CHURCH ST., 17TH FLOOR | SUITE 800 |
| MT. PLEASANT, SC 29465 | BARNWELL, SC 29812 | PROVIDENCE, RI 02940 | HARTFORD, CT 06103 | ATLANTA, GEORGIA 30308 |
| 843-216-9000 | 803-224-8800 | 401-457-7700 | 860-882-1681 | 404-201-6900 |
| 843-216-9450 FAX | 803-259-7048 FAX | 401-457-7708 FAX | 860-882-1682 FAX | 404-201-6959 FAX |

about them. SBG ignores, however, that plaintiffs are not required to take SBG's word when it comes to the nature of its relationships to these U.S.-based entities and that the purpose of jurisdictional discovery in this instance is precisely to provide plaintiffs with evidence they can present to the Court so that the Court can make its own determination about the nature of these relationships and activities and whether they give rise to jurisdiction over SBG. Particularly given SBG's business structure as an umbrella entity that controls the assets and actions of a vast number of business organizations within its umbrella, and particularly given that much or all of the information concerning SBG's control over those entities would be in SBG's exclusive control, plaintiffs are entitled to investigate the various business entities and their transactions within the United States to determine the degree of intermingling with and control by SBG.

Where complex corporate structures; interlocking, worldwide interactions; organizational domination and control are all at issue, as they are here, discovery is essential to a more open and fruitful examination of the true character of the business dealings among the various corporations and affiliates, allowing the parties to place in context the facts relevant to the Court's jurisdiction and aiding the Court in making its jurisdictional determination. Such discovery is particularly appropriate where, as here, the facts at issue lie within the defendant's exclusive knowledge. *See Gerpham, Inc. v. Pliva-Lachema a.s.*, 361 F. Supp. 2d 49 (E.D.N.Y. 2005); *Uebler v. Boss Media, AB*, 363 F. Supp.2d 499 (E.D.N.Y. 2005). Accordingly, SBG should be required to provide plaintiffs with information about these activities.

This is especially true here because plaintiffs' investigation of public source materials suggests that SBG's relationships with these U.S.-based entities, about which SBG has refused to provide discovery, are not as remote as SBG claims. For example, SBG has had substantial ties to U.S.-based Techmaster, which counts among its board members both SBG/SBG, USA directors Henry and Souren Sarkissian. The executive director of SBG's IIP division has also been identified as Techmaster's executive director. One SBG company report lists an SBG U.S. support office with a New Jersey address that corresponds with an address for Techmaster. In other business news articles, Techmaster has been referred to as SBG's engineering and procurement affiliate. *See* "Saudi Binladin -- Looking Further Afield," Middle East Economic Digest, July 24, 1995. Other electronic communications from Techmaster to SBG evidence Techmaster partnering with SBG on U.S. government contract work. SBG and SBG's Al Salem group division, which is interlinked with many international companies and engages in diverse activities coordinated by a network of support offices in the U.S. and other countries, have also actively sought U.S. partners for joint business ventures, including ventures with General Electric; York International (later bought by Johnson Controls); H.C. Price Company, Vector Ventures, and Juniper Networks. Plaintiffs are entitled to discovery to probe the relationship between SBG and these entities. Plaintiffs similarly are entitled to discovery on the question of whether SBG's U.S. subsidiary, SBG, USA was operated as a separate company, or as an arm of SBG. Plaintiffs have learned (through public sources) that SBG, USA had three directors (SBG, USA's only employees), who were each either directors and/or officers of SBG or SBG-controlled business organizations[3] and SBG, USA received from SBG no less than $365,000, or roughly $91,250 annually, from January 1997 through November 2000 – at a time when SBG, USA's total 1999 income was reported as $156,965 with $173,209 deductions. Certainly, these figures suggest that some of the money to pay SBG, USA directors may have come from the parent company, rather than from the subsidiary; if corporate formalities were disregarded, the activities of SBG, USA may subject SBG to jurisdiction, but SBG refuses to provide information from SBG, USA that would enable plaintiffs, and the Court, to make this determination. *See Uebler*, 363 F.Supp.2d at 506 (relationship between corporations necessary to support jurisdiction "a less onerous standard than that necessary to pierce the corporate veil for liability purposes"); *Gerpham*, 361 F.Supp.2d at 49 (same).

---

[3] SBG, USA Director Henry Sarkissian has been an executive board member of SBG, Al Salem Group, and head of SBG-IPP, as well as an officer of U.S.-based SBG affiliate, Techmaster. SBG, USA Director Kourken Sarkissian has been an officer to U.S.-based SBG affiliate, Techmaster. SBG, USA Director Robert McBride has been the general manager of U.S.-based SBG affiliate, Techmaster.

Plaintiffs have also learned that SBG has direct contacts with the U.S. about which it has failed to provide any discovery. For example, SBG has failed to produce any information concerning SBG representatives' activities in, travels to, and SBG business functions in, the United States. SBG has engaged in a pattern of activity in the U.S. to develop American business ties, including advertising for business in at least two U.S. publications targeting U.S. business audiences[4] and sponsoring and attending business functions within the U.S. to encourage business ties between SBG and American businesses. SBG has refused to provide information about such activities, contending either that they took place long ago or referenced work outside the U.S. SBG's answer is unconvincing: why would SBG purchase prominent full page and half-page advertising space in two of the most widely read business publications in the U.S. to address business issues outside the U.S.? Moreover, when these advertisements are placed in context with SBG's other activities within the U.S. to encourage American business ties, a pattern of activities develops that extends at least from 1992 until some time after the terrorist attacks on September 11, 2001. Plaintiffs are entitled to discovery about these activities.

## II. Plaintiffs Should Not Be Required to Provide SBG with "Jurisdictional Discovery."

The proper time for SBG to receive plaintiffs proof of a prima facie showing of jurisdiction is after jurisdictional discovery has been completed and SBG has filed a motion; but SBG's assertion that plaintiffs must respond to SBG's purportedly "jurisdictional discovery" requests is flawed in several respects. SBG's discovery improperly employs contention-styled interrogatories (improper at this stage of litigation, see F.R.C.P. 33(c); see also Local Rule 33.3(c)) for the improper purposes of either eliciting what evidence plaintiffs may eventually rely upon in the event that SBG files another motion to dismiss or learning what evidence plaintiffs already have so as to limit what SBG may otherwise produce in discovery. SBG ignores that the issue upon which jurisdictional discovery is to focus is SBG's conduct directed toward or its minimum contacts with the U.S. – information that by its very nature is in the exclusive original control of SBG. Accordingly, SBG needs no discovery from the plaintiffs to determine SBG's own conduct or contacts with the U.S. Likewise, inasmuch as SBG's requests focused on what information the plaintiffs possess, as opposed to what facts demonstrate SBG's conduct or minimum contacts, the requests run far afield from the purpose of jurisdictional discovery. *See Crane v Carr*, 814 F.2d 785, 760 n.2 (D.C. Cir. 1987)(Judge Ruth Bader Ginsberg writing, acknowledges, "[p]laintiff must be given the opportunity to develop facts sufficient to support a determination on the issue of jurisdiction.") To the extent that SBG's requests sought all the information plaintiffs have collected or all the information upon which plaintiffs may rely once SBG files a motion to dismiss, the requests are both premature and seek information that is protected by the attorney work product.

Respectfully submitted,

Motley Rice LLC

By: /s/ ROBERT T. HAEFLE

---

[4] *See, e.g.*, "General Electric and Binladin Target Major Projects in the Middle East," New York Times, June 19, 1992, page D7 and "Saudi Binladin Group is the construction leader in the Middle East," Forbes, July 4, 1994.