UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-14-06

ECF

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03 MDL 1570 (RCC)

**MEMORANDUM
& ORDER**

*This document relates to*: Federal Insurance Co. et al. v. Al Qaida, et al., 03 Civ. 6978

**RICHARD CONWAY CASEY, United States District Judge:**

The Court presumes familiarity with the factual background giving rise to this multi-district litigation. See In re: Terrorist Attacks of September 11, 2001, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ("Terrorist Attacks I"). Defendants Saleh Abdullah Kamel and Al Baraka Investment and Development Corp. (collectively "Defendants") move to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all claims against them in Federal Insurance v. al Qaida, 03 Civ. 6978, a class action brought on behalf of insurance companies ("Federal Insurance Plaintiffs" or simply "Plaintiffs") that insured individual and corporate victims of the September 11, 2001 terrorist attacks. For the following reasons, Defendants' motions to dismiss are **GRANTED** in their entirety.

**I.   ALLEGATIONS AND CLAIMS FOR RELIEF**

Al Baraka Investment and Development Corporation ("Al Baraka") is a wholly owned subsidiary of Dallah al Baraka Group, LLC. (Id. ¶ 298.) Plaintiffs allege that Al Baraka maintained accounts for certain charitable organizations and that those charities were operating within al Qaeda's infrastructure, using their accounts at Al Baraka to transfer money to al Qaeda cells around the world. (Id. ¶¶ 299-301.) Specifically, Plaintiffs allege that the charity Al Haramain used accounts there "as a principal vehicle for funding al Qaida's operations in Bosnia . . . ." (Id. ¶ 301.) In addition,

Plaintiffs allege that Al Baraka advertised the existence and numerical designations of these accounts to facilitate direct donations to the charities. (Id. ¶¶ 299-300.) Plaintiffs claim that Al Baraka knew the charities were using its financial services in support of al Qaeda. (Id. ¶¶ 302-03.) Finally, Plaintiffs allege that Al Baraka provided support to al Qaeda through Al Baraka's "subsidiaries and affiliates," including Al Shamal Islamic Bank, Tadamon Islamic Bank, and al Aqsa Bank. (Id. ¶ 304.)

Saleh Abdullah Kamel, a Saudi businessman, is Chairman of Al Baraka. (Compl. ¶ 501.) Plaintiffs allege that Kamel also is a shareholder in Al Shamal Islamic Bank and Tadamon Islamic Bank, and that both institutions, along with Al Baraka, "are deeply involved in providing financial services and other forms of material support to al Qaida." (Id.) In addition, Plaintiffs allege that Kamel co-founded a branch of Sana-Bell, Inc. in the United States, which, according to Plaintiffs, was established to sustain the United States operations of the International Islamic Relief Organization ("IIRO").[1] (Id.) Finally, Plaintiffs allege that Kamel is identified in the "Golden Chain," which Plaintiffs assert is "a list of people referred to within al Qaida as wealthy donors to the al Qaida movement." (Id.; see also Pl.'s Opp. at 3.) Plaintiffs allege that through these activities, Kamel knowingly provided material support and resources to al Qaeda. (Compl. ¶¶ 501-02.)

Based on these allegations, Plaintiffs' First Amended Complaint ("FAC" or "Complaint") lists three federal and nine common law causes of action against Defendants. Plaintiffs' federal claims are brought under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Racketeer Influenced

---

[1] Plaintiffs allege that IIRO provided material support to al Qaida for many years preceding September 11, 2001. (Compl. ¶¶ 130-49.) The Court previously denied IIRO's motions to dismiss this action and others. In re Terrorist Attacks on September 11, 2001, 392 F. Supp. 2d 539, 564-66 (S.D.N.Y. 2005) ("Terrorist Attacks II") (denying IIRO's motions to dismiss in Federal Insurance v. al Qaida, 03 Civ. 6977, Ashton v. al Qaeda Islamic Army, 02 Civ. 6977, and Burnett v. Al Baraka Inv. & Dev. Corp., 03 Civ. 9849).

2

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c) (d), and the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, respectively. Plaintiffs' common law claims are delineated as trespass, wrongful death, survival, assault and battery, intentional and/or negligent infliction of emotional distress, conspiracy, aiding and abetting, negligence, and punitive damages.

## II.    ANALYSIS

The Court previously dismissed similar claims against Defendants in the Ashton and Burnett actions. See Terrorist Attacks I, 349 F. Supp. 2d at 835-36. The Court dismissed those claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the plaintiffs' allegations failed to state claims for relief and otherwise failed to meet the minimum pleading requirements of Rule 8(a); that is, the allegations failed to provide Defendants with adequate notice of the claims against them and the grounds upon which those claims rested. Id. Here, the Federal Insurance Plaintiffs' allegations prove inadequate for the same reasons.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept all of Plaintiffs' factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the Plaintiffs." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)). Despite this requirement that the Court liberally construe the complaint, however, "it does not follow that conclusory allegations and speculation . . . will defeat such a motion." Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003). "[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003). Yet dismissal remains inappropriate under Rule 12(b)(6) unless it appears beyond doubt that "the plaintiff can prove no set of facts which would entitle him to relief." Desiderio, 191 F.3d at 202.

3

A Rule 12(b)(6) motion is reviewed in the context of the requirements of Rule 8 of the Federal Rules of Civil Procedure. See Terrorist Attacks I, 349 F. Supp. 2d at 825. Rule 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court recently reinforced this liberal pleading standard, observing that the "short and plain statement" required by Rule 8 "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). This Court is mindful, however, that in light of "the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he—or it—does indeed have fair notice of [the claims]." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003).

In earlier opinions, the Court has outlined the relevant legal standards that apply to each of Plaintiffs' claims.[2] See Terrorist Attacks I, 349 F. Supp. 2d at 825-30; see also Terrorist Attacks II, 392 F. Supp. 2d at 564-66. Briefly, then, Plaintiffs in this case claim that Kamel and Al Baraka provided material support to, and conspired with, the al Qaeda terrorists who perpetrated the attacks on September 11, 2001. Under the ATA, material support for terrorism includes the provision of money, financial services, lodging, training, safehouses, and false documentation or identification. 18 U.S.C. §§ 2339(A)(b), 2339B(g). Assuming such support is alleged, Plaintiffs will have to present a sufficient causal connection between that support and the injuries suffered by Plaintiffs. See Burnett, 274 F. Supp. 2d at 104. Proximate cause will support this connection, as will theories of

---

[2] Given the similarity of the present allegations to allegations against these Defendants that were previously dismissed, see Terrorist Attacks I, 349 F. Supp. 2d at 835-36, the Court finds it unnecessary to provide a full explication of each applicable legal standard here.

concerted action liability—conspiracy and aiding and abetting. See Terrorist Attacks I, 349 F. Supp. 2d at 826. Liability for conspiracy or aiding and abetting requires that the defendant, among other things, "know the wrongful nature of the primary actor's conduct," Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998), and that the conduct be tied to a substantive cause of action, Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991).

Plaintiffs have not offered any factual allegations against Al Baraka or Mr. Kamel that state a cause of action under the foregoing standards. Indeed, Plaintiffs' allegations against Al Baraka boil down to claims that Al Baraka provided bank accounts to Islamic charities, which in turn funded al Qaeda operations around the world, and that Al Baraka maintains investments in other Islamic banks. (Compl. ¶¶ 298-304.) As the Court has previously explained, however, "a bank is not liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routing banking service." Terrorist Attacks I, 349 F. Supp. 2d at 830 (quoting Burnett, 274 F. Supp. 2d at 109). Likewise, alleging that Al Baraka invested in various Islamic banks, without additional allegations, does not state a claim for relief. See id. at 836. And though Plaintiffs also claim that Al Baraka provided banking services to Islamic charities and invested in other Islamic banks with knowledge of the downstream support these activities provided al Qaeda, Plaintiffs' assertions in this regard are conclusory and purely speculative. "[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Thus, Plaintiffs' claims against Al Baraka are dismissed.

The complaint also fails to state a claim against Defendant Kamel for essentially the same reasons. The allegations against Kamel, offered to support Plaintiffs' central assertion that he

participated in the terrorist conspiracy leading to the September 11 attacks, are that Kamel is the Director of Al Baraka, is a shareholder in the Islamic banking system, and is a member of the Golden Chain. (Compl. ¶¶ 501-02.) But Plaintiffs offer mere speculation, rather than factual allegations, in support of their assertion that Kamel knew or should have known that his investment activity was supporting terrorism. See De Jesus, 87 F.3d at 70. And, as the Court has previously explained, the presence of Kamel's name in the so-called Golden Chain documents does not, on its own, provide grounds to sustain the claims in this case. See Terrorist Attacks I, 349 F. Supp. 2d at 818 ("The 'Golden Chain' does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office. It does not establish [the defendant's] involvement in a terrorist conspiracy culminating in the September 11 attacks . . . ."). Accordingly, Plaintiffs' claims against Kamel are dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant Al Baraka's and Defendant Saleh Abdullah Kamel's motions to dismiss the claims against them in Federal Ins. Co. v. Al Qaida, 03 Civ. 6978, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, are **GRANTED** in their entirety.

**So Ordered:**   New York, New York
December 14, 2006

*Richard Conway [signature]*
_____
**Richard Conway Casey, U.S.D.J.**