UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
In re Terrorist Attacks on September 11, 2001 : 03 MD 1570 (RCC)
: ECF Case
:
------------------------------------x

This document relates to: *Federal Insurance Company, et al. v. Al Qaida*, *et al.*, 03 CV 6978 (RCC)

# MEMORANDUM OF LAW OF
# DEFENDANT SAUDI AMERICAN BANK IN OPPOSITION TO
# FEDERAL INSURANCE PLAINTIFFS' MOTION FOR RECONSIDERATION

Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

Defendant Saudi American Bank respectfully submits this memorandum in opposition to plaintiffs' motion for reconsideration [Docket No. 680] of the Court's November 20, 2006 Memorandum and Order granting Saudi American Bank's motion to dismiss and denying plaintiffs' request for leave to amend their complaint again [Docket No. 675].

## PRELIMINARY STATEMENT

Plaintiffs' notice of motion states that they seek reconsideration of both the Court's determination to (i) grant Saudi American Bank's motion to dismiss and (ii) deny plaintiffs' request for leave to amend further their complaint. Plaintiffs' memorandum, however, states that they seek reconsideration only of the Court's decision to deny plaintiffs leave to amend further. It is telling that plaintiffs do not even attempt to argue in their memorandum that the Court erred in determining that their current amended pleading fails to state a claim against Saudi American Bank.

Plaintiffs' motion for reconsideration should be denied because it does not even suggest that the Court overlooked any controlling decisions or factual matters. The Court dismissed what was effectively plaintiffs' fourth pleading and denied them leave to file yet another amended complaint. Plaintiffs ask the Court to reconsider its decision denying leave to amend on the grounds that a new complaint would contain additional (conclusory) allegations that were *not* before the Court when it ruled. But the Court's deadline for filing a further amended complaint has long passed, and plaintiffs "were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *In re Eaton Vance Mutual Funds Fee Litig.*, 403 F. Supp. 2d 310, 318-319 (S.D.N.Y. 2005). Plaintiffs stood on their current amended pleading after the Court dismissed virtually identical allegations against Saudi American Bank brought by the *Burnett*

and *Ashton* plaintiffs.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 833-34 (S.D.N.Y. 2005).  There is no basis for plaintiffs to ask this Court to reconsider its decision denying plaintiffs leave to amend their complaint yet again.

## PROCEDURAL HISTORY

On September 8, 2003, Saudi American Bank moved to dismiss the virtually identical claims asserted against it in the *Burnett* action.  With the benefit of having reviewed Saudi American Bank's motion to dismiss that action, the *Federal Insurance* plaintiffs filed a First Amended Complaint against Saudi American Bank on March 10, 2004.  Plaintiffs then filed a RICO Statement applicable to Saudi American Bank on August 19, 2004.

On August 27, 2004, Saudi American Bank moved to dismiss the *Federal Insurance* case.  On October 26, 2004, the *Federal Insurance* plaintiffs filed their opposition to Saudi American Bank's motion to dismiss.  Plaintiffs' opposition brief contended (without citation) that "[t]o the extent that this Court finds the Federal Plaintiffs' allegations to be insufficient, the Federal Plaintiffs should be granted leave to amend." (Opp. at 16.)  Plaintiffs' opposition included an affidavit of one of plaintiffs' lawyers attaching 98 pages of exhibits that were not referenced in plaintiffs' Complaint, First Amended Complaint, or RICO Statement.  Plaintiffs did not in any way suggest that a further amended complaint would contain any allegations other than those in their First Amended Complaint, RICO Statement, and the exhibits to their lawyer's affidavit.  Saudi American Bank filed its reply brief in support of its motion to dismiss the *Federal Insurance* case on December 15, 2004.

On January 18, 2005, the Court issued an opinion and order dismissing the claims against Saudi American Bank in the *Burnett* and *Ashton* cases.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. at 833-34.  The *Burnett* and *Ashton* plaintiffs did not move for

reconsideration of the Court's order. Notwithstanding that the Court held that the virtually identical allegations in those lawsuits failed to state a claim against Saudi American Bank, the *Federal Insurance* plaintiffs did not amend their complaint further.

In Case Management Order No. 2, the Court set July 31, 2005 as the deadline to file any further amended pleadings. [03 MD 1570 Docket No. 247 at ¶ 13.] On July 15, 2005, plaintiffs requested an adjournment of that deadline until after the Court issued a decision on each pending motion to dismiss (which included Saudi American Bank's motion to dismiss the *Federal Insurance* action). The Court rejected this request, and instead extended the deadline to September 30, 2005 to accommodate the vacation schedules of plaintiffs' lawyers. [03 MD 1570 Docket No. 1073.]

On September 30, 2005, the *Federal Insurance* plaintiffs filed their First Amended Complaint with Incorporated More Definite Statements, RICO Statements, and 15(d) Supplemental Pleadings. This "incorporated" pleading did not contain any new allegations against Saudi American Bank.

On November 20, 2006, the Court issued its Memorandum and Order granting Saudi American Bank's motion to dismiss and denying plaintiffs' motion for leave to amend their complaint yet again. The Court logically presumed that any new allegations in a further amended complaint would be drawn from the mass of exhibits plaintiffs submitted with their opposition brief. [Docket No. 675 at 5.] Finding that nothing in those exhibits changed its analysis, the Court denied plaintiffs' request for leave to amend.

Plaintiffs' motion for reconsideration contains 22 numbered allegations that plaintiffs state would have been in a further amended complaint if the Court had permitted them leave to amend further. Only three of these paragraphs mention Saudi American Bank.

3

Plaintiffs do not contend that they learned of these conclusory allegations after the time within which they were permitted to amend their pleading or suggest how these conclusory allegations would alter the Court's analysis.

## ARGUMENT

### PLAINTIFFS' MOTION FOR RECONSIDERATION SHOULD BE DENIED

Plaintiffs' motion is improper because it asks the Court to reconsider its decision based on facts that plaintiffs concede were not before the Court when it ruled. Local Civil Rule 6.3 requires that a party seeking reconsideration file a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." These matters or decisions must have been brought to the Court's attention on the underlying motion. *Montanile v. National Broadcasting Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 351 (S.D.N.Y. 2003). On a motion for reconsideration, a party may not "advance new facts, issues or arguments not previously presented to the Court." *Primavera Familienstifung v. Askin*, 137 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court"); *Jackson v. City of New York*, 2006 WL 3208512, at *2 (S.D.N.Y. Nov. 3, 2006) (collecting cases). Here, plaintiffs' motion for reconsideration acknowledges that the allegations they wish the Court to consider now were not before the Court when it considered their request for leave to amend. Motion at 1 ("had leave been granted, plaintiffs would not have simply restated the content of the exhibits in question, but would have presented specific allegations"). Because plaintiffs' motion is not based on anything the Court is alleged to have overlooked, it should be denied.

Put another way, plaintiffs were not entitled to an "advisory opinion" as to the deficiencies in their amended complaint that they could then try to cure. *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim") (internal quotation marks and citation omitted). In *Eaton Vance,* 403 F. Supp. 2d 310, plaintiffs' opposition to defendants' motion to dismiss requested leave to replead if defendants' motion was granted (as is the case here):

> At that time, the plaintiffs did not propose any amendments nor indicate how amending would cure any alleged deficiencies. The Court then granted the defendants' motion to dismiss without leave to amend. The Court denied leave to amend because of the plaintiffs' failure to cure deficiencies, despite notice and an opportunity to do so, as well as the plaintiffs' failure to show how any amended complaint could cure the deficiencies.

*Id.* at 318. The plaintiffs in *Eaton Vance* thereafter filed a motion for leave to file a third amended complaint, which the Court denied. The Court held that the plaintiffs "'were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" *Id*. (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) and citing *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 637 (2d Cir. 1967)). Here, just like in *Eaton Vance*, the plaintiffs "had ample notice of defects in their complaint and opportunity to cure them before the Court ruled on the motion to dismiss." 403 F. Supp. 2d at 318. The plaintiffs here had the benefit of the Court's opinion dismissing virtually identical claims brought against Saudi American Bank in *Burnett* and *Ashton*, and the Court granted them until September 30, 2005 to file a further amended complaint. Plaintiffs were still unable to state a claim against Saudi American Bank, including only conclusory allegations of wrongdoing on the part of Saudi American Bank.

5

Even if this Court were to reconsider its decision, there is no doubt that the Court was correct in denying leave to amend further. The rule allowing reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court," and there is no real suggestion that the Court's analysis was flawed. *Eaton Vance*, 403 F. Supp. 2d at 313. Under settled law, undue delay, futility of the amendment, and bad faith "are reasons to deny leave" to amend. *John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). Just as in *Eaton Vance*, leave to amend was properly denied here due to the plaintiffs' inability to plead sufficient allegations after notice and opportunity. Leave would also be properly denied based on the plaintiffs' undue delay and the futility of plaintiffs' proposed amendment.

As noted above, plaintiffs have had numerous opportunities in the three years since they filed this lawsuit to revise their allegations against Saudi American Bank. It is telling that plaintiffs do not argue that their new allegations result from newly discovered information. Instead, plaintiffs evidently chose to wait to put forth these allegations until more than three years after filing their Complaint, after filing amended pleadings, a RICO statement, and a factual affidavit, and after Saudi American Bank's motion to dismiss has been granted.

In any event, plaintiffs' motion is improper because the Court has already rejected plaintiffs' request that they be permitted to wait until after the Court ruled on pending motions to dismiss before amending their complaints further. [03 MD 1570 Docket No. 1073.] The Court ruled instead that any further amendments were to be filed by September 30, 2005. (*Id.*) This deadline was set after plaintiffs made their one-sentence request for leave to amend in their opposition to Saudi American Bank's motion to dismiss. When this deadline came, plaintiffs stood on their allegations against Saudi American Bank notwithstanding that the Court had held

6

that the virtually identical allegations in *Burnett* and *Ashton* failed to state a claim against Saudi American Bank. Plaintiffs cannot now claim that the Court erred in its November 20, 2006 Order by similarly holding that plaintiffs cannot amend their complaint further.

Plaintiffs' proposed amendment would in any event be futile. Plaintiffs argue that if allowed to amend, their new "particularized allegations" would "support their claim that [Saudi American Bank] knew its financial partnerships with Osama Bin Laden would materially benefit and substantially assist al Qaida." (Mot. at 2-3.) This is incredible bluster given the actual substance of the 22 paragraphs plaintiffs propose to include in a further amended complaint. Those paragraphs, at pages three through six of their Motion, are nothing more than revised versions of the same conclusory allegations that the Court has already rejected. Of the 22 paragraphs, only three even mention Saudi American Bank. Those three paragraphs, in their entirety, read as follows:

> 8. Because the safe haven and sponsorship provided by Sudan to al Qaida were dependent upon the construction services and other support Bin Laden provided to the Sudanese regime, as described above, that safe haven and support would not have been possible without the financing and other support [Saudi American Bank] provided for those projects.
>
> 9. At the time [Saudi American Bank] entered into its financial partnerships with Osama Bin Laden relative to the aforementioned construction projects in the Sudan, Bin Laden's terrorist ambitions and status as the world's foremost terrorist financier and organizer were the subject of countless governmental and media reports, and widely known within Saudi Arabia and the Arab world.
>
> 22. Given the widespread media and governmental reporting of Osama bin Laden's terrorist activities and ambitions between 1989 and 1996, [Saudi American Bank], as a Saudi domiciled bank, must have known that its financial partnership with Bin Laden would substantially and materially assist Bin Laden in sustaining al Qaida and maintaining al Qaida's symbiotic relationship with the NIF.

(Motion at 4-6.) These allegations, on their own, are not sufficient to state a claim against Saudi American Bank. *Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir. 2003) ("[l]egal

7

conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness"). Indeed, absent from plaintiffs' motion is any suggestion as to how these additional conclusory allegations state a claim against Saudi American Bank.

Moreover, these are the very same allegations plaintiffs have already made against Saudi American Bank. In plaintiffs' First Amended Complaint and RICO Statement, they alleged that "Saudi American Bank financed many of the projects undertaken by Osama bin Laden and al Qaida in the Sudan during the years that the al Qaida leadership structure operated from that country." (Complaint ¶ 367; RICO Statement, 03 MD 1570 Docket # 393 Exhibit A.) The Complaint also alleged that "[t]hrough its participation in the projects undertaken by Osama bin Laden in Sudan, Saudi American Bank knowingly provided material support and resources to al Qaida." (Complaint ¶ 368.) These conclusory allegations concerning Sudan have been a part of plaintiffs' case since its inception.

The reworded conclusory allegations plaintiffs now wish to offer suffer the same fatal flaw as the plaintiffs' past allegations regarding Sudan. As the Court held in its November 20, 2006 Memorandum and Order, plaintiffs do not "alleg[e] any facts to support an inference that Saudi American Bank provided funds to Osama bin Ladin or to al Qaeda directly" or "to support an inference that Saudi American Bank knew or should have known that funds they purportedly provided for construction projects in Sudan would aid al Qaeda. Plaintiffs' allegations in this regard are nothing more than legal conclusions couched as fact." [Docket No. 675 at 4.] In short, because plaintiffs' proposed allegations fail to state a claim against Saudi American Bank, amendment would be futile. *John Hancock Mut. Life Ins. Co.*, 22 F.3d at 462.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration should be denied.

8

Dated: New York, New York
December 18, 2006

    Respectfully submitted,

    SHEARMAN & STERLING LLP

    By:       /s/
        Henry Weisburg (HW 9820)
        Brian H. Polovoy (BP 4723)
        Daniel M. Segal (DS 2106)

    599 Lexington Avenue
    New York, New York 10022-6069
    Telephone: (212) 848-4000

    Attorneys for Defendant Saudi American Bank