UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*        Federal Insurance Co. v. al Qaida
                                   03 CV 06978 (RCC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL INSURANCE
PLAINTIFFS' MOTION FOR RECONSIDERATION**

                                                    COZEN O'CONNOR
                                                    1900 Market Street
                                                    Philadelphia, PA 19103
                                                    (215) 665-2000

Plaintiffs in *Federal Insurance Co., et al. v. al Qaida, et al.*, 03 CV 6978 (RCC) (plaintiffs) submit this Memorandum of Law in Reply to Defendant Saudi American Bank's (SAMBA) Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration.

**I.      INTRODUCTION**

On December 5, 2006, plaintiffs filed a Motion for Reconsideration of the Court's November 20, 2006 Memorandum and Order denying plaintiffs leave to amend their allegations against SAMBA. In support of that Motion, plaintiffs have argued that the Court's decision to deny plaintiffs leave to amend their allegations against SAMBA was predicated upon the Court's incorrect "assumption" that plaintiffs would merely restate the substance of the exhibits submitted in connection with their opposition to SAMBA's Motion to Dismiss, if afforded leave to amend. Plaintiffs' Motion for Reconsideration presents twenty-two detailed allegations plaintiffs seek to advance in support of their claims against SAMBA, which are distinct from the substance of the exhibits submitted in connection with their Opposition to SAMBA's Motion to Dismiss, and none of which were considered by the Court in denying plaintiffs leave to amend as to SAMBA.

SAMBA does not contest that the allegations presented in Plaintiffs' Motion for Reconsideration present information that was not contained in the exhibits to Plaintiffs' Opposition to SAMBA's Motion to Dismiss. Rather, SAMBA argues that Plaintiffs' Motion for Reconsideration should be denied, because in its view: (1) plaintiffs "stood on their current amended pleading after the Court dismissed virtually identical allegations against" SAMBA in the *Burnett* and *Ashton* cases; (2) "the Motion for Reconsideration does not suggest that the Court overlooked any controlling decisions or factual matters;" and (3) "plaintiffs' proposed amendment would in any event be futile." For the reasons set forth below, each of the arguments advanced by SAMBA is without merit.

## II. ARGUMENT

### A. Plaintiffs Could Not Have Amended Their Allegations Against SAMBA at Any Point After the Court's Dismissal of SAMBA From the *Burnett* and *Ashton* Cases

SAMBA's assertion that plaintiffs' Motion for Reconsideration should be denied because "plaintiffs stood on their current amended pleading" after the Court's January 18, 2005 dismissal of SAMBA from the *Burnett* and *Ashton* cases implies that plaintiffs readily could have amended their allegations against SAMBA after that decision. That argument conveniently ignores the procedural status of proceedings against SAMBA in the *Federal Insurance* action at the time of the Court's January 18, 2005 decision, and practicalities of this complex litigation.

Plaintiffs filed their First Amended Complaint (FAC) on March 10, 2004, well before this Court issued any substantive decisions in these consolidated proceedings. Pursuant to a Stipulation between the plaintiffs and SAMBA, and a subsequent agreement to extend the deadline for SAMBA's reply brief thereunder, SAMBA filed its Motion to Dismiss on August 27, 2004; Plaintiffs filed their Opposition to SAMBA's Motion to Dismiss on October 26, 2004; and SAMBA filed its Reply on December 5, 2004. Thus, briefing on SAMBA's Motion to Dismiss commenced on August 27, 2004 and concluded more than a month before this Court issued its January 18, 2005 Opinion and Order dismissing SAMBA from the *Burnett* and *Ashton* cases.

Although Case Management Order No. 2 set an outside deadline of September 30, 2005 for all amended pleadings, the sequence of briefing on SAMBA's Motion to Dismiss effectively precluded plaintiffs from amending their pleadings as to SAMBA as a matter of course at any point after the Court dismissed SAMBA from the companion cases. Given the number of parties involved in this complex litigation, and the number of motions to dismiss filed by the defendants,

it is absurd to suggest that this Court would have permitted plaintiffs to unilaterally amend their pleadings as to SAMBA after briefing on SAMBA's Motion to Dismiss had been completed, in order to address the standards enunciated in the Court's January 18, 2005 decision.  Indeed, if plaintiffs had sought to do so, the defendants most certainly would have complained about the impossibility of dealing with a "moving target," and initial briefing on motions to dismiss would have been endless.

Thus, in view of the practical dynamics of this complex litigation, it is disingenuous for SAMBA to suggest that plaintiffs should have unilaterally amended their pleadings against it after briefing on its Motion to Dismiss concluded, in order to address the alleged pleading deficiencies which prompted this Court to dismiss SAMBA from the *Ashton* and *Burnett* actions. Plaintiffs did, however, pursue the only reasonable procedural course available to them, by specifically requesting leave to amend their allegations against SAMBA in their Opposition to SAMBA's Motion to Dismiss.  This Court did not address that request until November 20, 2006, when it dismissed plaintiffs' claims against SAMBA based on the pleadings presented before this Court issued its January 18, 2005 decision.[1]  Thus, SAMBA's suggestion that plaintiffs

---

[1] Failing to afford plaintiffs an opportunity to amend their pleadings against SAMBA to address the legal standards set forth in this Court's January 18, 2005 decision would be particularly inappropriate, given the dearth of prior decisional law addressing the pleading standards applicable to plaintiffs' Anti-Terrorism Act and other tort claims against SAMBA and the other defendants.  Prior to January 18, 2005, only a few courts had occasion to consider civil damage claims under the ATA against alleged sponsors or supporters of a terrorist organization responsible for carrying out an attack against American citizens. None of those cases addressed in any detail the pleading standards applicable to the scienter element of a plaintiff's ATA claim against the terrorist organization's alleged sponsor or supporter.  Thus, this Court's January 18, 2005 decision effectively represented the first decision to articulate the substantive pleading standards for the knowledge or intent elements of a conspiracy or aiding and abetting claim under the ATA, which standards formed the predicate for this Court's dismissals of the claims against SAMBA. Moreover, over the last two years, other district courts have rejected the notion that plaintiffs in ATA cases are required to plead facts in support of their allegations of the defendant's knowledge and intent, reasoning that Rule 9(b) specifically provides that "malice, intent, knowledge and other condition of mind of a person may be overhead generally.  *See Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 585 (E.D.N.Y. 2005).  Thus, plaintiffs respectfully submit that the state of the law on this point remains unclear *to this day*.  Under such circumstances, plaintiffs should be afforded an opportunity to amend their pleadings against SAMBA to cure any failure to plead their claims in accordance with the standards adopted by this Court in its January 18, 2005 decision.

could readily have amended their allegations against it following this Court's dismissal of SAMBA from the *Burnett* and *Ashton* cases is fundamentally inaccurate.

### B. Reconsideration of the Court's Order Denying Plaintiffs' Leave to Amend is Necessary to Correct a Clear Error and Prevent Manifest Injustice

Contrary to the assertion in SAMBA's Opposition, reconsideration of the Court's decision denying plaintiffs leave to amend their allegations against SAMBA is appropriate under the relevant standards. As this Court has previously observed in these proceedings, a Motion for Reconsideration should be granted to "correct a clear error or prevent manifest injustice." *In Re: Terrorist Attacks on September 11, 2001*, 2006 U.S. Dist. LEXIS 11741, at *6 (S.D.N.Y. 2006) (citing *Dove v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d. Cir. 1983). That standard applies here, as the Court's denial of plaintiffs' application for leave to amend their allegations against SAMBA was predicated on an incorrect "assumption" regarding the substance of the allegations plaintiffs would present if afforded leave to amend. Indeed, by virtue of the incorrect assumption underlying that decision, this Court affectively overlooked plaintiffs' request for leave to amend their pleadings against SAMBA, and reconsideration of its decision on that point is entirely appropriate.

### C. Plaintiffs' Proposed Amendments Set Forth Particularized Facts Supportive of Plaintiffs' Allegations That SAMBA Knowingly Sponsored Osama bin Laden and al Qaida

The twenty-two detailed allegations set forth in Plaintiffs' Motion For Reconsideration demonstrate that Osama bin Laden's status as a terrorist financier and organizer were well known within Saudi Arabia and the Arab world as early as 1991, when he was expelled from Saudi Arabia due to his extremist activities. In addition, those allegations make clear that bin Laden's terrorist activities and relationship with the government of Sudan were the subject of extensive media reporting and public discourse in Saudi Arabia and the Arab world between 1991 and 1996, the period during which SAMBA partnered with bin Laden on several

4

commercial activities within Sudan.  Fairly read, these particularized factual allegations give rise to logical inferences that SAMBA, a sophisticated bank headquartered in Saudi Arabia:  (1) must have known that bin Laden was a terrorist when it partnered with him on projects within the Sudan; and (2) that its partnership with bin Laden would serve to advance bin Laden's terrorist ambitions.

Rather than addressing each of the allegations set forth in Plaintiffs' Motion for Reconsideration, SAMBA focuses on only three (3) of those allegations, reasoning that its name does not specifically appear in the other allegations.  SAMBA's failure to address the import of the vast majority of the allegations set forth in Plaintiffs' Motion for Reconsideration is telling but hardly surprising, as those allegations leave little room to dispute that Osama bin Laden's terrorist activities were well known to SAMBA at the time it partnered with bin Laden on projects in the Sudan.  The fact that SAMBA is not specifically named in certain of those allegations does not render them irrelevant, as all of the allegations presented must be read together and SAMBA's state of mind evaluated in light of the totality of the circumstantial evidence.  *See Halberstam v. Welch*, 705 F.2d 472, 481 (D. D.C. 1983) ("absent a confession, an agreement between conspirators must generally be inferred from circumstantial evidence revealing a common intent").

## III.    CONCLUSION

In sum, reconsideration of the Court's Order denying Plaintiffs' Leave to Amend their allegations against SAMBA is necessary in order to correct a clear error and avoid a manifest injustice.  The allegations plaintiffs would present if afforded leave to amend amply demonstrate that SAMBA knew that its partnerships with Osama bin Laden would serve to advance the interests of the al Qaida organization, including that organization's efforts to attack America, and are competent to satisfy any pleading standard applicable to the scienter element of their ATA

5

and tort claims against SAMBA. Thus, those additional allegations would eliminate the pleading deficiency which prompted this Court to dismiss plaintiffs' claims against SAMBA.

        Respectfully submitted,

        COZEN O'CONNOR

BY: _____
     ELLIOTT R. FELDMAN, ESQUIRE
     SEAN P. CARTER, ESQUIRE
     ADAM C. BONIN, ESQUIRE
     1900 Market Street
     Philadelphia, PA 19103

     (215) 665-2000