# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001* | 03 MDL No. 1570 (RCC) ECF CASE |

This document relates to:

> *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

## MEMORANDUM OF LAW IN SUPPORT OF SAMIR SALAH'S
## MOTION TO VACATE DEFAULT JUDGMENTS

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
**DLA PIPER US LLP**
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

*Attorneys for Defendant Samir Salah*

February 21, 2007

## <u>TABLE OF CONTENTS</u>

**Page**

I.     PRELIMINARY STATEMENT……………………………………………………1

II.    FACTUAL AND PROCEDURAL BACKGROUND…………………………………2

III.   ARGUMENT…………………………………………………………………………..5

IV.   CONCLUSION……………………………………………………….................14

## TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004 WL
912916 (W.D.N.Y. Apr. 1, 2004) …………………...……………………………..13

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) …...……………………………11

*Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950
(DAB), 2002 WL 31545845 (S.D.N.Y. Nov. 13, 2002) …………………………………...11

*The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486
RWS, 2004 WL 2650906 (S.D.N.Y. Nov. 22, 2004)…..………………………………12

*Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90 (2d Cir. 1993)……………..……5-7, 11, 13

*Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*,
408 F. Supp. 1251 (S.D.N.Y. 1976) …..……………………………………………...10

*Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL
1205762 (E.D.N.Y. Apr. 29, 2004) ………………………………………………………8

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)…..……1, 9

*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)……2, 9-10

*L.A. Gear v. Kobacker Co.*, No. 93 Civ. 8651 (RWS), 1994 WL 455573
(S.D.N.Y. Aug. 23 1994)…..………………………………………………………...…6

*Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL 22113
(S.D.N.Y. Jan. 25, 1993)…………………………………………………………………8

*Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981)……………………………………………5

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) ……………………………….....…5-6, 13

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001)…………………………5

*Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573 (N.D. Ill. Oct. 24, 2002)………………...11-12

*S.E.C. v. McNilty*, 137 F.3d 732 (2d Cir. 1998)……………………………………………6

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) ……………………………………………7

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158
2d Cir. 2004)…………………………………………………………………………………7

**STATUTES AND RULES**

Federal Rule of Civil Procedure 55…………………………………………………… 1, 5, 13

Federal Rule of Civil Procedure 60(b) …...…………………………………………....1, 5

Local Civil Rule 55.2…………………………………………………………………13

**OTHER AUTHORITY**

James Wm. Moore et al., *Moore's Fed. Prac.* § 55.12[1] (3d ed. 2001)…………………………8

Samir Salah respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), to vacate the defaults and default judgments entered against him in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-9849 (RCC) ("*Burnett*") (03-MDL-1570, Docket # 1756) and *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-CV-6978 (RCC) ("*Federal Insurance*") (03-MDL-1570, Docket #1754-1755).

## PRELIMINARY STATEMENT

The default judgments the Court granted Plaintiffs against Mr. Salah should be vacated because Mr. Salah's default was not willful. Though he is a United States citizen living in Virginia, and his address is readily discernable with a modicum of effort, Mr. Salah was not personally served with a complaint or summons in either of these actions. Instead, Plaintiffs purported to serve him by publication. Mr. Salah failed to appear in this action because service by publication failed to provide him with actual notice that he was a defendant in these actions and he did not learn that he was named as a defendant in each of these actions until *after* the default judgments were entered against him.

Mr. Salah has meritorious defenses to the claims in these actions. Plaintiffs' allegations against Mr. Salah are nothing more than conclusory allegations that he is liable for the September 11th attacks because he is a member of the so-called "SAAR Network," despite that the Court already has found that Plaintiffs' complaints provide "scant basis" for inferring the existence of a "SAAR Network." *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) (hereinafter *In re Terrorist Attacks I*). Further, the Court dismissed claims against other alleged members of the so-called "SAAR Network" facing allegations very similar to those asserted against Mr. Salah here. *See In re Terrorist Attacks on*

*September 11, 2001*, 392 F. Supp. 2d 539, 571-573 (S.D.N.Y. 2005) (hereinafter *In re Terrorist Attacks II*).

Given the dismissals of claims against what plaintiffs have referred to as so-called "SAAR Network" defendants, vacating the default judgments is necessary to avoid what will be inconsistent rulings if the judgments are allowed to stand. Additionally, given the early stage of these proceedings, Plaintiffs will suffer no prejudice if the judgments are vacated. For these reasons, and others discussed below, the Court should vacate the default judgments entered against Mr. Salah.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Salah is a United States citizen who resides in Virginia. (Declaration of Samir Salah, dated January 18, 2007, ¶ 2.) He has never supported al Qaeda nor has he knowingly provided financial support to any terrorist organizations. (Salah Decl., ¶ 3.) Nevertheless, Mr. Salah has been named as a defendant in two of the cases consolidated in the MDL— *Burnett* and *Federal Insurance*.

The *Burnett* Plaintiffs filed their Third Amended Complaint on November 22, 2002, in federal district court in the District of Columbia prior to the case's transfer to this Court. Mr. Salah is not named as a defendant in the complaint although he is mentioned in three paragraphs (¶¶ 265, 306, and 308) of the 723 paragraph complaint.[1]

---

[1] The *Burnett* Plaintiffs purported to serve Mr. Salah by publication on December 22, 2004, December 23, 2004, December 27, 2004, December 30, 2004, January 6, 2005, January 5, 2005, January 10, 2005, and January 13, 2005 in accordance with the Court's September 16, 2004 Publication Order (MDL Pub. Order, 03-MDL-1570, Docket # 136). However, it was not until January 3, 2005 – *nearly two weeks after* Plaintiffs began to purportedly serve Mr. Salah by publication – that Plaintiffs attempted to add Mr. Salah as a defendant to the case by filing "Plaintiffs' December 30, 2004, Addition/Removal of Parties Pursuant to Case Management Order No. 2 and Federal Rule of Procedure 15(d)" (Plaintiffs' Removal of Parties, 03-MDL-1570, Docket # 602). Because Mr. Salah was not added as a defendant until after Plaintiffs

The *Federal Insurance* Plaintiffs filed their First Amendment Complaint on March 10, 2004. Mr. Salah is named as a defendant in that action, but again he is mentioned in only three paragraphs (¶¶ 66, 492, and 493) of the 646 paragraph complaint.

The claims in both the *Burnett* and *Federal Insurance* complaints are based on the allegations that Mr. Salah is an executive in the so-called "SAAR Network," and is associated with the Bank of al-Taqwa and the Taibah International Aid Association ("Taibah"), two organizations that allegedly finance terrorism.[2]

Pursuant to the Court's September 16, 2004 Order ("MDL Publication Order"), (MDL Pub. Order, 03-MDL-1570, Docket # 445), Plaintiffs published legal notices of this litigation in the *International Herald Tribune*, *USA Today*, and *Al-Quds Al-Arabi* between December 2004 and January 2005. Plaintiffs did not attempt to serve Mr. Salah by any other means. Mr. Salah did not see the notices contained in these publications. (Salah Decl., ¶ 4.)

---

began service by publication, such service could not possibly be valid as to him and the default judgment must be dismissed. *See infra*, Section III, A.

[2] Specially, the *Burnett* Plaintiffs alleges that: (1) "Two SAAR Network executives, Samir Salah and Ibrahim Hassabella, were former executives at bank al-Taqwa;" (2) "Two officers from Taibah International's United States branch, Samir Salah and Abdulrahman al-Amoudi (or "al-Amoudi"), play a large role with United States organizations that have come under scrutiny for their ties to al Qaeda;" (3) "Samir Salah, Taibah's Secretary, serves as a director at many SAAR Network organizations, including CFO at Piedmont Poultry;" and (4) "Samir Salah also managed the Caribbean branch of the Bank al-Taqwa." *Burnett* Compl. ¶¶ 265, 307-308.

The *Federal Insurance* Plaintiffs alleges that Mr. Salah: (1) "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associates, organizations or persons;" (2) "was a founder of the Safa Trust, and an officer of several other companies within the SAAR Network;" (3) "helped establish Bank al Taqwa in the mid 1980s;" (4) "was also deeply involved with the operations of Taibah International;" (5) "made substantial contributions to many of the charities operating with al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's operations and terrorist attacks;" and (6) "Through his various for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, Samir Salah has long provided material support and resources to al Qaida." *Federal Insurance* Compl. ¶¶ 66, 492-493.

On September 29, 2005, the *Federal Insurance* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Salah. On April 4, 2006, the *Burnett* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Salah.

On April 7, 2006, the Court *sua sponte* entered default judgments against Mr. Salah in *Burnett* and *Federal Insurance*.  On April 14, 2006, after the default judgments were issued, the Clerk of the Court issued certificates of default.  Mr. Salah did not discover that he was a defendant in these actions until after the default judgments were entered.  (Salah Decl., ¶ 5.)

On July 18, 2006, counsel for Mr. Salah contacted the attorneys for the *Burnett* Plaintiffs, advised them that Mr. Salah was willing to appear in these actions and requested that Plaintiffs agree to vacate the default judgments.  On August 3, 2006, counsel for the *Burnett* Plaintiffs informed Mr. Salah's counsel that Plaintiffs would not agree to vacate the default judgment.  On August 29, 2006, counsel for Mr. Salah contacted the attorneys for the *Federal Insurance* Plaintiffs and advised them that Mr. Salah was willing to appear in these actions if Plaintiffs agreed to vacate the default judgments.

On September 28, 2006, both the *Burnett* and *Federal Insurance* Plaintiffs stated that they would be willing to consider a "dialogue" on the issue of whether the default judgments should be vacated against Mr. Salah.  However, as a condition of their "consideration" of the issue, Plaintiffs demanded that Mr. Salah submit an affirmation "addressing issues bearing on his knowledge of his status as a defendant and service of the Complaints on him *and* submit to a brief deposition limited to those same issues."  Letter from Sean P. Carter, Esq. to Steven K. Barentzen, Esq. (Sept. 28, 2006) (emphasis added).  (Copy attached as Exhibit A.)  Among other things, Plaintiffs sought to question Mr. Salah about his "physical location when the notices of

the lawsuits were published," his employment (including any positions on the board of directors), and his contact with other named defendants in this MDL. *Id.*

Given the overreaching nature of this request, counsel for Mr. Salah declined Plaintiffs' offer and instead brought this motion. *Id.*

## ARGUMENT

### I.     THE LEGAL STANDARD FOR VACATING A DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(c) permits a court to set aside, for good cause, an entry of default or a default judgment in accordance with Federal Rule of Civil Procedure 60(b). A default judgment may be vacated under Rule 60(b) for: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

When determining whether good cause exists to relieve a party from default or default judgment, a court should consider: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). "'[G]ood cause' and the criteria of the Rule 60(b) set aside should be construed generously." *Id.* A court may also consider whether entry of default would bring about a harsh or unfair result. *Id.* (citing *Sony Corp. v. Elm State Elecs. Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)).

The Second Circuit has articulated a preference that disputes be resolved on the merits. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored.  A clear preference exists for cases to be adjudicated on the merits."). Accordingly, "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). "[B]ecause

5

defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.  Default judgments are especially disfavored in cases such as this where a substantial sum of money is demanded.  *See id.* at 97.

## II.   THE DEFAULT JUDGMENTS SHOULD BE VACATED BECAUSE THE DEFAULT WAS NOT WILLFUL

"[W]illfulness in the context of default judgment requires something more than mere negligence, such as egregious or deliberate conduct . . . ." *Green*, 429 F.3d at 108 (citation and internal quotation omitted).  "Imprudent, inattentive, careless, or even negligent handling of a case, although not condoned, does not demonstrate willfulness." *L.A. Gear v. Kobacker Co.*, No. 93 Civ. 8651 (RWS), 1994 WL 455573, *3 (S.D.N.Y. Aug. 23 1994) (citations omitted). Conduct is willful when the party intends to ignore the action and authority of the court.  *Id.* (citing *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984)).  This is because the purpose of default judgment is to prevent "undue delay-harassment." *Green*, 429 F.3d at 108.

Mr. Salah did not willfully default in the *Burnett* and *Federal Insurance* actions, nor did he intend to disregard the actions and authority of this Court.  Mr. Salah was "served" by publication pursuant to the MDL Publication Order, but because he did not see the publication, he had no actual notice of the lawsuits.  (Salah Decl., ¶ 4.)  He did not become aware that he was a defendant until *after* the default judgments were entered by the Court and upon learning of the entries of the judgments, Mr. Salah promptly sought Defendants' consent to vacate the default judgments.

Mr. Salah's failure to answer the *Burnett* and *Federal Insurance* complaints is solely due to Plaintiffs' inadequate service attempt, and does not amount to willful disregard of directives issued by the Court.  *See S.E.C. v. McNilty*, 137 F.3d 732, 738-40 (2d Cir. 1998) (finding that

willful conduct occurred where defendant failed to answer complaint after receiving several letters regarding failure to answer).  Because Mr. Salah's default was not willful, vacating the default judgments is appropriate.[3]

## III.    MERITORIOUS DEFENSES

Mr. Salah has meritorious defenses against the claims made by Plaintiffs.  A meritorious "defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.  A defendant need not establish his defense conclusively in order to vacate a default judgment.  *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citation omitted).  Among other defenses, Mr. Salah can establish that service was deficient and that Plaintiffs failed to state a claim upon which relief can be granted.

### A.    Service By Publication Was Improper

Service by publication is only appropriate "where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible." *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987).  However, service by publication is improper where a defendant's address can be obtained with reasonable diligence.  *Id.* at 1094 ("[I]f a defendant's name and address are known or may be obtained with reasonable diligence service by publication will not satisfy the requirements of due process.").

Mr. Salah is a United States citizen living in Virginia whose address could have been obtained with reasonable diligence by Plaintiffs. (Salah, Decl., ¶ 2.)  Because there is no indication that Plaintiffs attempted to serve Mr. Salah in any other manner, nor is there evidence

---

[3] Mr. Salah did not attempt to avoid or obstruct the directives issued by the Court.  *See Enron Oil Corp.*, 10 F.3d at 96 (noting that default judgments are a useful tool to handle an obstructionist adversary).

that Mr. Salah has acted in a manner to obstruct or avoid service in this matter, service by publication was improper. *Id.* (noting that due process requires a defendant to have actual notice of suit and that due process is violated by service by publication if defendant's name and address can be obtained with reasonable diligence).

Moreover, the default judgment against Mr. Salah in *Burnett* should be vacated because the *Burnett* Plaintiffs did not add Mr. Salah as a defendant in that action until January 3, 2005 – *nearly two weeks after* Plaintiffs purportedly began to serve Mr. Salah by publication, on December 22, 2004, December 23, 2004, December 27, 2004, December 30, 2004, January 6, 2005, January 5, 2005, January 10, 2005, and January 13, 2005 pursuant to the Court's September 16, 2004 Order. (Plaintiffs' Removal of Parties, 03-MDL-1570, Docket # 602).

Pursuant to the MDL Publication Order, however, Plaintiffs were required to place a publication "*once per week for four consecutive weeks* in the *International Herald Tribune, USA Today*, and at least one Arabic language newspaper circulated widely in the Middle East." (emphasis added) (MDL Pub. Order, 03-MDL-1570, Docket # 445.) Because Mr. Salah was not added as a defendant until January 3, 2005, such service could not possibly be effective as to him (and is in direct violation of the MDL Publication Order.) Accordingly, the default should be vacated.

### B.      The Complaints Fail to State Claims Against Mr. Salah

Default judgment should be entered only where a plaintiff has pled a sufficient basis for recovery in the complaint. James Wm. Moore, et al., *Moore's Fed. Prac.* § 55.12[1] (3d ed. 2001); *Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL 22113, at *6 (S.D.N.Y. Jan. 25 1993) (finding complaint's deficient pleadings as grounds to dismiss default judgment); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL 1205762,

at *5 (E.D.N.Y. Apr. 29, 2004) ("[A] defendant's default does not in itself warrant a court in entering default judgment [because] there must be a sufficient basis in the pleadings for the judgment entered."). The allegations in the *Burnett* and *Federal Insurance* complaints do not state cognizable claims against Mr. Salah.

Plaintiffs allege that Mr. Salah is a so-called "SAAR Network" executive. (*Burnett* Compl. ¶¶ 289, 307-308; *Federal Insurance* Compl. ¶¶ 66, 492-493.) These allegations fail to state claims. In its January 18, 2005 Opinion, the Court in considering the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823. And because Plaintiffs have failed to establish the existence of the alleged "SAAR Network" or that the alleged "SAAR Network" did anything wrong – their allegations that Mr. Salah is a "SAAR Network" executive are meaningless.

Indeed, in its September 21, 2005 Opinion and Order, the Court dismissed the claims against five of the so-called "SAAR Network" executives, Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza in the *Federal Insurance* action. Reviewing allegations similar to the conclusory allegations against Mr. Salah, the Court dismissed these claims because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, 392 F. Supp. 2d at 572.[4] These rulings provide Mr. Salah a meritorious defense because the allegations

---

[4] The Court also dismissed the so-called "SAAR Network Entities" African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." The Court also dismissed IIIT from *Ashton*,

9

against him concerning his involvement in the so-called "SAAR Network" are no different than the vague and conclusory allegations that the Court already found do not state a claim in *Federal Insurance.*

Plaintiffs also allege that Mr. Salah was a former executive of Bank al-Taqwa in the mid 80's and a former officer of Taibah International during some unspecified time period. (*Burnett* Compl. ¶¶ 265, 307-308; *Federal Insurance* Compl. ¶¶ 66, 492-493.)  These two organizations allegedly sponsor terrorism and were designated by the Department of the Treasury as "Specially Designated Global Terrorists" on November 7, 2001 and May 11, 2004 respectively, both *after* the September 11th attacks.

The Court has held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda. See Terrorist Attacks I*, 349 F. Supp. 2d at 826 (emphasis added).  Thus, even if Mr. Salah had served as an executive of Bank al-Taqwa in the mid 80's as Plaintiffs allege, this allegation could not possibly state a claim against Mr. Salah because Plaintiffs have not alleged that, *at that time*: 1) Bank al-Taqwa was engaged in terrorist activities or financing terrorism; or 2) that Mr. Salah *knew* that Bank Al Taqwa was engaged in terrorist activities -- indeed it was not designated as a financier of terrorism until November 2001, *after* the September 11, 2001 attacks.

Similarly, even if Mr. Salah had been an officer of Taibah International, Plaintiffs fail to allege any time period during which he was allegedly an officer.  Thus, Plaintiffs have failed to allege that *during the time that Mr. Salah purportedly was an officer*, that 1) Taibah International was engaged in terrorist activities or financing terrorism; or 2) that Mr. Salah *knew* that Taibah

---

and Mar-Jac Poultry from *Ashton, Burnett* and *Federal Insurance.  See In re Terrorist Attacks II*, 392 F. Supp. 2d at 570-71, 576.

International was engaged in terrorist activities -- indeed it was not designated as a financier of terrorism until May 11, 2004, well after the September 11, 2001 attacks.

Moreover, to state a claim against Mr. Salah, Plaintiffs are required to allege that he knowingly and intentionally participated in some action on behalf of one of the entities for which it could be held liable for the September 11th attacks. But Plaintiffs have not made such an allegation. Instead, Mr. Salah's alleged liability is based solely on his status as a former officer or executive of these entities, and that is insufficient to state a claim. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office. He may become liable if he knowingly participates in such actions."); *see also In re Terrorist Attacks II*, 392 F. Supp. 2d at 567-68 (sustaining *Federal Insurance* complaint against Abdulrahman Alamoudi because those plaintiffs alleged that he "funneled money to al Qaeda through the charities with which he was involved," and dismissing claims of other plaintiffs who only asserted he was associated with certain entities).

In short, the default judgments should be vacated because Plaintiffs have failed to allege that Mr. Salah "knowingly and intentionally provided material support to al Qaeda." *See id.*

## IV.   PLAINTIFFS WILL SUFFER NO PREJUDICE IF DEFAULT JUDGMENT IS VACATED

Plaintiffs will not be prejudiced if the default judgments are vacated. Prejudice may be shown where vacating a default judgment will result in the loss of evidence, complicate discovery, or create an opportunity for fraud and collusion to occur. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Plaintiffs cannot demonstrate any such prejudice: they will not suffer loss of evidence, nor will discovery become more difficult if the default judgment is

vacated. Mr. Salah plans to promptly move to dismiss the *Burnett* and *Federal Insurance* complaints if the Court vacates the default judgment. *See Enron Oil Co.*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice.").

## V.    ENTRY OF DEFAULT JUDGMENT MAY LEAD TO INCONSISTENT JUDGMENTS BETWEEN SIMILARLY SITUATED DEFENDANTS

Default judgment against one defendant in a multi-defendant case is inappropriate where the defendants are similarly situated because it may result in the entry of inconsistent judgments. *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB), 2002 WL 31545845, *4 (S.D.N.Y. Nov. 13, 2002); *Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573, *1 (N.D. Ill. Oct. 24, 2002) ("[D]efault judgment is not appropriate if it would result in inconsistency among judgments of multiple defendants.").[5]

Mr. Salah is one of over a hundred defendants in *Burnett* and *Federal Insurance*, many of whom are similarly situated. Mr. Salah's alleged liability in this matter is based on claims of conspiracy, providing material support to, and aiding and abetting al Qaeda. These allegations stem largely from Mr. Salah's purported role in the so-called "SAAR Network." As discussed above, claims against several of the alleged "SAAR Network" defendants already have been dismissed from the *Burnett* and *Federal Insurance* cases, while most of the remaining alleged "SAAR Networks" defendants have motions to dismiss pending.

---

[5] The Southern District of New York has stated that:

[W]hen a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting default judgment until the [trial] of the action on the merits against the remaining defendants. If plaintiff loses on the merits, the complaint should be dismissed against both defaulting and non-defaulting defendants.

*The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486 RWS, 2004 WL 2650906, * 3 (S.D.N.Y. Nov. 22, 2004) (citing *Exquisite For. Indus., Inc. v. Exquisite Fabrics of London*, 378 F. Supp. 403, 416 (S.D.N.Y. 1974)).

Failure to vacate the default judgments could lead to a situation where Mr. Salah is held liable by a default judgment for aiding, abetting, and conspiring with the alleged "SAAR Network" that Plaintiffs otherwise fail to prove exists or did anything wrong. *See The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486 RWS, 2004 WL 2650906, * 3 (S.D.N.Y. Nov. 22, 2004) (finding that default judgment of defendant in case where similarly situated defendant's case is heard on the merits could lead to one decree sustaining joint fraud charge and one decree finding fraud charge unfounded dismissing the complaint).

Because the entry of default judgments against Mr. Salah will lead to inconsistent judgments between similarly situated defendants in this MDL action, the default judgments should be vacated. *See Enron Oil Corp.*, 10 F.3d at 96 (noting that entry of default is inappropriate if it would bring about a harsh or unfair result).

## VI.   ENTRY OF DEFAULT JUDGMENT IS PREMATURE

Obtaining a default judgment pursuant to Rule 55 requires the movant to follow a two step process. "The first step is to obtain a default" from the clerk of the court in accordance with Rule 55(a). *Green*, 420 F.3d at 104; Fed. R. Civ. P. 55(a).  It is only *after* the clerk of the court enters default that a party can take the second step and move for default judgment under Rule 55(b). *Green*, 420 F.3d at 104;  Local Civil Rule 55.2 (requiring moving party to append copy of the clerk's certificate of default to application for default judgment); *Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004 WL 912916, * 1 (W.D.N.Y. Apr. 1, 2004) ("First, a party moving for default judgment must obtain an Entry of Default from the Clerk of the Court pursuant to FRCvP 55(a), and second, the moving party must seek a default judgment . . ., as set forth in FRCvP 55(b).")

Default judgments were granted by the Court on April 7, 2006, but the Clerk's entry of the defaults did not occur until April 14, 2006, a week *after* the default judgments were granted. *See Enron Oil Corp.*, 10 F.3d at 95 (stating that the clerk's record should contain a notation showing entry of default).   Thus, the default judgments should be vacated because they were granted prematurely.

**CONCLUSION**

For the reasons articulated above and in the accompanying declaration, the defaults and default judgments entered against Mr. Salah should be vacated.

Respectfully submitted,

**DLA PIPER US LLP**

/s/  Nancy Luque
Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

February 21, 2007            *Attorneys for Defendant Samir Salah*

# EXHIBIT A



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

**Sean P. Carter**
Direct Phone   215.665.2105
Direct Fax   215.701.2105
scarter@cozen.com

September 28, 2006

**VIA E-MAIL**

Steven K. Barentzen, Esquire
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, NW
Washington, DC 20036-2412

> **Re:** **In Re: Terrorist Attacks on September 11, 2001**
> **03 MDL 1570 (RCC)**
> **Our File No.: 117430**

Dear Steve:

I write on behalf of the *Federal Insurance* and *Burnett* plaintiffs, in response to your request that those plaintiffs agree to voluntarily vacate the default judgments entered against Samir Salah. In your initial email relating to this issue, you suggested that Mr. Salah would prevail on a motion to vacate the default judgments, because: (1) Mr. Salah allegedly did not have notice that he was a party to these lawsuits until after the default judgments were entered; and (2) in your view, the Complaints do not provide an adequate basis for the entry of default judgments against him.

While we are willing to consider whether Mr. Salah would be entitled to have the default judgments vacated based on his alleged ignorance of his status as a defendant in these cases, we have not been provided sufficient information to engage in any meaningful analysis of that argument. To facilitate a dialogue on that question, we would request that Mr. Salah provide an affirmation addressing issues bearing on his knowledge of his status as a defendant and service of the Complaints upon him, and submit to a brief deposition limited to those same issues. While we anticipate that the specific scope of the affirmation and deposition will need to be discussed further, we believe they should at least address the following topics and circumstances:

Steven K. Barentzen, Esquire
September 28, 2006
Page 2

---

(1)   Mr. Salah's place(s) of residence between the dates the Complaints were filed and the present;

(2)   Mr. Salah's physical location when the notices of the lawsuits were published in the *International Herald Tribune, Al Quds al Arabi* and *USA Today* newspapers;

(3)   Any employment positions Mr. Salah has held between the dates the Complaints were filed and the present;

(4)   Any positions Mr. Salah has held as an executive or member of the board of directors of any companies between the dates the Complaints were filed and the present;

(5)   Whether Mr. Salah has been in contact with any other parties named as defendants in any of the consolidated MDL cases since the date the Complaints were filed;

(6)   Whether Mr. Salah has been in contact with counsel for any defendant in any of the consolidated cases since the Complaints were filed;

(7)   Whether Mr. Salah was aware that any companies or organizations with which he was at one time affiliated had been named as defendants in any of the consolidated MDL cases;

(8)   Whether Mr. Salah received any information regarding the pendency any of the consolidated MDL cases, regardless of whether he was aware of his status as defendant in those cases;

(9)   The date on which Mr. Salah first became aware of his status as a defendant in any of the consolidated MDL cases; and

(10)  The manner in which Mr. Salah first became aware of his status as a defendant in any of the consolidated MDL cases.

As Mr. Salah would bear the burden of establishing that he was unaware of the claims against him in any motion to vacate the default judgments, we do not believe that the proposed affirmation and deposition impose any additional burden on Mr. Salah. Moreover, because the exchange of this information may enable us to resolve this issue without court intervention, it seems like the sensible course to pursue. Of course, we are amenable to discussing the specific content of the affirmation and scope of the proposed deposition with you in further detail.

As to the second argument you raised in your request that plaintiffs agree to vacate the default judgments, after careful consideration of the question, we remain convinced that the default judgments entered against Mr. Salah are valid. Accordingly, we are not willing to voluntarily vacate the default judgments entered against Mr. Salah on that basis.

Steven K. Barentzen, Esquire
September 28, 2006
Page 3

_____

At your earliest convenience, please let us know if Mr. Salah is willing to provide an affirmation to support his claim that he was unaware of his status as a defendant in the suits, and to submit to a brief deposition limited to issues bearing on his notice of the claims against him.

Finally, the *Burnett, Euro Brokers and WTC Properties* plaintiffs have authorized me to advise you that the points and proposals raised above apply equally to your request that those plaintiffs agree to vacate their default judgments against Abdul Hamid Abu-Sulayman.

We look forward to hearing back from you in the near future.

Very truly yours,

COZEN O'CONNOR

BY:    SEAN P. CARTER

SPC/bdw

cc:    Stephen A. Cozen, Esquire
       Elliott R. Feldman, Esquire
       Robert Haefele, Esquire
       Jodi Westbrook Flowers, Esquire

## **Certificate of Service**

I hereby certify that on this 21st day of February, 2007, I caused an electronic copy of Samir Salah's Motion To Vacate Default Judgments and Supporting Memorandum of Law to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)