**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| *IN RE TERRORIST ATTACKS ON* | ) | 03 MDL No. 1570 (RCC) |
| *SEPTEMBER 11, 2001* | ) | ECF CASE |
|  | ) |  |

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Euro Brokers, Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*World Trade Ctr. Prop., LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

**MEMORANDUM OF LAW IN SUPPORT OF ABDUL HAMID ABU SULAYMAN'S**
**MOTION TO VACATE DEFAULT JUDGMENTS**

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
**DLA PIPER US LLP**
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

*Attorneys for Defendant*
*Abdul Hamid Abu Sulayman*

February 21, 2007

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT………………………………………………..1

II.    FACTUAL AND PROCEDURAL BACKGROUND………………………….2

III.   ARGUMENT……………………………………………………………………4

IV.    CONCLUSION……………………………………………………..................13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004
WL 912916 (W.D.N.Y. Apr. 1, 2004)..................................................................12

*Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) ...............................................10

*Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950
(DAB), 2002 WL 31545845 (S.D.N.Y. Nov. 13, 2002) ......................................10

*The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486
RWS, 2004 WL 2650906 (S.D.N.Y. Nov. 22, 2004)...........................................11

*Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90 (2d Cir. 1993).............5-7, 10-12

*Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL
1205762 (E.D.N.Y. Apr. 29, 2004).......................................................................8

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)............1,9

*In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)............2,9

*L.A. Gear v. Kobacker Co.*, No. 93 Civ. 8651 (RWS), 1994 WL 455573
(S.D.N.Y. Aug. 23 1994) ................................................................................5-6

*Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL 22113
(S.D.N.Y. Jan. 25, 1993)....................................................................................8

*Meehan v. Snow*, 652 F.2d 274 (2d Cir. 1981)........................................................5

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) ...............................................5-6, 12

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001)................................5

*Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573 (N.D. Ill. Oct. 24, 2002)...................10

*S.E.C. v. McNilty*, 137 F.3d 732 (2d Cir. 1998).......................................................6

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) ........................................................7

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158
(2d Cir. 2004).....................................................................................................7

**STATUTES AND RULES**

Federal Rule of Civil Procedure 8...............................................................................8
Federal Rule of Civil Procedure 55....................................................................1, 4, 12
Federal Rule of Civil Procedure 60(b) ............................................................…....1, 4
Local Civil Rule 55.2...........................................................................................12

**OTHER AUTHORITY**

James Wm. Moore et al., *Moore's Fed. Prac.* § 55.12[1] (3d ed. 2001)..............................8

Abdul Hamid Abu Sulayman respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), to vacate the defaults and default judgments entered against him in *Burnett, et al. v. Al Baraka Investment & Development Corp.*, *et al.*, Case No. 03-CV-9849 (RCC) ("*Burnett*") (03-MDL-1570, Docket #1756), *Euro Brokers, Inc. et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 04-CV-7279 ("*Euro Brokers*") (03-MDL-1570, Docket #1795), and *World Trade Center Properties LLC, et al, v. Al Baraka Investment & Development Corp., et al.*, Case No. 04-CV-7280 ("*WTC Properties*") (03-MDL-1570, Docket #1796).

## PRELIMINARY STATEMENT

The default judgments that the Court entered against Mr. Sulayman should be vacated because his default was not willful. Mr. Sulayman was not personally served with a complaint or summons in any of these actions; instead, Plaintiffs purported to serve him by publication under the name "Abu Sulayman." Mr. Sulayman failed to appear in this action because service by publication failed to provide him with actual notice that he was a defendant in these actions and he did not learn that he was named as a defendant in each of these actions until *after* the default judgments were entered against him.

Mr. Sulayman has meritorious defenses to the claims in these actions. Plaintiffs' allegations against Mr. Sulayman are nothing more than conclusory allegations that he is liable for the September 11th attacks because he is a member of that which they call the "SAAR Network," despite that the Court already has found that Plaintiffs' complaints provide "scant basis" for inferring the existence of a "SAAR Network." *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) (hereinafter *In re Terrorist*

*Attacks I*).   Further, the Court dismissed claims against other alleged members of the so-called

"SAAR Network" facing allegations that are far more detailed than those asserted against Mr.

Sulayman here.  *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 571-

573 (S.D.N.Y. 2005) (hereinafter *In re Terrorist Attacks II*).

Given the dismissals of these other so-called "SAAR Network" defendants, vacating the

default judgments are necessary to avoid what will be inconsistent rulings if the judgments are

allowed to stand.  Additionally, given the early stage of these proceedings, Plaintiffs will suffer

no prejudice if the judgments are vacated.  For these reasons, and others discussed below, the

Court should vacate the default judgments entered against Mr. Sulayman.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Sulayman has never supported al Qaeda nor has he knowingly provided financial

support to any terrorist organizations.  (Declaration of Abdul Hamid Abu Sulayman, dated

Janaury 23, 2007, ¶ 2.)  Nevertheless, Mr. Sulayman has been named as a defendant in three of

the cases consolidated in the MDL— *Burnett*, *Euro Brokers* and *WTC Properties*.

The *Burnett* Plaintiffs filed their Third Amended Complaint on November 22, 2002, in

federal district court in the District of Columbia prior to the case's transfer to this Court.  Mr.

Sulayman is named as a defendant in the complaint and is mentioned in one paragraph (¶ 267) of

the 723 paragraph complaint.

The *WTC Properties*  Plaintiffs filed their Complaint on September 10, 2004.  Mr.

Sulayman is named as a defendant in that action, but again he is mentioned in only one

paragraph (¶ 441) in the 1192 paragraph complaint.

The *Euro Brokers* Plaintiffs filed their Complaint on September 10, 2004.  Mr. Sulayman

is named as a defendant in the caption of the case; however, no allegations are made against him.

The claims in both the *Burnett* and *WTC Properties* complaints are based solely on unsubstantiated conclusory allegations that Mr. Sulayman is a co-conspirator, material sponsor, aider, abetter, and participant in the so called "SAAR Network."[1]  There are no allegations against Mr. Sulayman in the *Euro Brokers* complaint.

Pursuant to the Court's September 16, 2004 Order ("MDL Publication Order"), (MDL Pub. Order, 03-MDL-1570, Docket # 136), Plaintiffs published legal notices of this litigation in the *International Herald Tribune*, *USA Today*, and *Al-Quds Al-Arabi* between December 2004 and January 2005.  The legal notices did not adequately identify Abdul Hamid Abu Sulayman. They failed to include his full name and instead merely identified "Abu Sulayman."[2]  Plaintiffs did not attempt to serve Mr. Sulayman by any other means.  Mr. Sulayman did not see the notices contained in these publications.  (Sulayman Decl., ¶ 3.)

On April 4, 2006, the *Burnett* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Sulayman.  On May 3, 2006, the *Euro Brokers* and *WTC Properties* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Sulayman.

The Court *sua sponte* entered default judgments against Mr. Sulayman in *Burnett* on April 7, 2006, and in *WTC Properties* and *Euro Brokers* on May 12, 2006.  On April 14, 2006, after the default judgments were issued, the Clerk of the Court issued a certificate of default in *Burnett*.  There is no indication on the docket that certificates of default were issued by the Clerk of the Court in either *Euro Brokers* or *WTC Properties*.  Mr. Sulayman did not discover that he

---

[1] Specially, the *Burnett* Plaintiffs alleges that, "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network include . . .Abu Sulayman." *Burnett* Compl. ¶ 267. Similarly, the *WTC Properties* Plaintiffs allege that, "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network include . . . Abu Sulayman." *WTC Properties* Compl. ¶ 441.

was a defendant in these actions until after the default judgments were entered.  (Sulayman Decl., ¶ 4.)

On July 18, 2006, counsel for Mr. Sulayman contacted the attorneys for the Plaintiffs, advised them that Mr. Sulayman was willing to appear in these actions and requested that Plaintiffs agree to vacate the default judgments.  On August 3, 2006, counsel for the Plaintiffs informed Mr. Sulayman's counsel that Plaintiffs would not agree to vacate the default judgment.

On September 28, 2006, Plaintiffs stated that they would be willing to consider a "dialogue" on the issue of whether the default judgments should be vacated against Mr. Sulayman.  However, as a condition of their "consideration" of the issue, Plaintiffs demanded that Mr. Sulayman submit an affirmation "addressing issues bearing on his knowledge of his status as a defendant and service of the Complaints on him *and* submit to a brief deposition limited to those same issues."  Letter from Sean P. Carter, Esq. to Steven K. Barentzen, Esq. (Sept. 28, 2006) (emphasis added) (Copy attached as Exhibit A).  Among other things, Plaintiffs sought to question Mr. Sulayman about his "physical location when the notices of the lawsuits were published," his employment, and his contact with other named defendants in this MDL.  *Id.*

Given the overreaching nature of this request, counsel for Mr. Sulayman declined Plaintiffs' offer and instead brought this motion.

## **ARGUMENT**

### I.    THE LEGAL STANDARD FOR VACATING A DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(c) permits a court to set aside, for good cause, an entry of default or a default judgment in accordance with Federal Rule of Civil Procedure 60(b).  A default judgment may be vacated under Rule 60(b) for: "(1) mistake, inadvertence, surprise, or

---

[2] "Abu" is an Arabic term meaning head of a household or father.

excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

When determining whether good cause exists to relieve a party from default or default judgment, a court should consider: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). "'[G]ood cause' and the criteria of the Rule 60(b) set aside should be construed generously." *Id.* A court may also consider whether entry of default would bring about a harsh or unfair result. *Id.* (citing *Sony Corp. v. Elm State Elecs. Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)).

The Second Circuit has articulated a preference that disputes be resolved on the merits. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits."). Accordingly, "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. Default judgments are especially disfavored in cases such as this where a substantial sum of money is demanded. *See id.* at 97.

## II.    THE DEFAULT JUDGMENTS SHOULD BE VACATED BECAUSE THE 'DEFAULTS' WERE NOT WILLFUL

"[W]illfulness in the context of default judgment requires something more than mere negligence, such as egregious or deliberate conduct . . . ." *Green*, 429 F.3d at 108 (citation and internal quotation omitted). "Imprudent, inattentive, careless, or even negligent handling of a case, although not condoned, does not demonstrate willfulness." *L.A. Gear v. Kobacker Co.*, No.

93 Civ. 8651 (RWS), 1994 WL 455573, *3 (S.D.N.Y. Aug. 23 1994) (citations omitted). Conduct is willful when the party intends to ignore the action and authority of the court. *Id.* (citing *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984)). This is because the purpose of default judgment is to prevent "undue delay-harassment." *Green*, 429 F.3d at 108.

Mr. Sulayman did not willfully default in the *Burnett*, *Euro Brokers*, and *WTC Properties* actions, nor did he intend to disregard the actions and authority of this Court. Mr. Sulayman was "served" by publication pursuant to the MDL Publication Order, but because he did not see the publications, he had no actual notice of the lawsuits. (Sulayman Decl., ¶ 3.)

Moreover, even if Mr. Sulayman had seen the notices, they would have failed to give him adequate notice as only "Abu Sulayman" was identified in the publications. The publication notice failed to include Mr. Sulayman's first name and could have been referring to one of thousands of "Abu Sulaymans."

Mr. Sulayman did not become aware that he was a defendant until *after* the default judgments were entered by the Court and upon learning of the entries of the judgments, Mr. Sulayman promptly requested Defendants to vacate the defaults. Mr. Sulayman's failure to answer the *Burnett*, *Euro Brokers*, and *WTC Properties* complaints is solely due to Plaintiffs' inadequate service attempt, and does not amount to willful disregard of directives issued by the Court. *See S.E.C. v. McNilty*, 137 F.3d 732, 738-40 (2d Cir. 1998) (finding that willful conduct occurred where defendant failed to answer complaint after receiving several letters regarding failure to answer). Mr. Sulayman did not attempt to avoid or obstruct the directives issued by the Court. *See Enron Oil Corp.*, 10 F.3d at 96 (noting that default judgments are a useful tool to handle an obstructionist adversary).

Because Mr. Sulayman's default was not willful, vacating the default judgments is appropriate.

## III.   MR. SULAYMAN HAS MERITORIOUS DEFENSES

Mr. Sulayman has meritorious defenses against the claims made by Plaintiffs. A meritorious "defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. A defendant need not establish his defense conclusively in order to vacate a default judgment. *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (citation omitted). Among other defenses, Mr. Sulayman can establish that service was deficient and that Plaintiffs failed to state a claim upon which relief can be granted.

### A.   Service By Publication Was Improper

Service by publication is appropriate only "where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible." *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987). Because there is no indication that Plaintiffs attempted to serve Mr. Sulayman in any other manner, nor is there evidence that Mr. Sulayman has acted in a manner to obstruct or avoid service, such service was improper. *Id.* at 1092, 1094 (noting that due process requires a defendant to have actual notice of suit and that due process is violated by service by publication if defendant's name and address can be obtained with reasonable diligence).

Moreover, service by publication was insufficient because it failed to provide notice to Mr. Sulayman that he was subject to suit. Mr. Sulayman was not properly identified in the notices. The publication only stated "Abu Sulayman," *not* Abdul Hamid Abu Sulayman. The

reference to a "Abu Sulayman" in the publications is tantamount to notifying "Mr. Smith" and cannot support a finding that Mr. Sulayman had actual notice of that he was a defendant in these actions. Accordingly, service by publication was inappropriate.

**B.    The Complaints Fail to State Claims Against Mr. Sulayman**

Default judgment should be entered only where a plaintiff has pled a sufficient basis for recovery in the complaint. James Wm. Moore, et al., *Moore's Fed. Prac.* § 55.12[1] (3d ed. 2001); *Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL 22113, at *6 (S.D.N.Y. Jan. 25 1993) (finding complaint's deficient pleadings as grounds to dismiss default judgment); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL 1205762, at *5 (E.D.N.Y. Apr. 29, 2004) ("[A] defendant's default does not in itself warrant a court in entering default judgment [because] there must be a sufficient basis in the pleadings for the judgment entered."). The allegations in the *Burnett*, *Euro Brokers*, and *WTC Properties* complaints do not state cognizable claims against Mr. Sulayman.

Because the *Euro Brokers* Complaint does not contain *any* allegations against Mr. Sulayman, merely listing him as a defendant in its caption, the Complaint fails to provide Mr. Sulayman adequate notice of any claims or any grounds upon which Plaintiffs allege they are entitled to relief. *See* Fed. R. Civ. P. 8 (complaint must allege a short and plain statement setting forth the grounds of relief). Thus, the *Euro Broker* default judgment should be set aside because it fails to allege a cognizable claim against Mr. Sulayman. *See Levesque*, 1993 WL 22113, at *6.

The *Burnett* and *WTC Properties* Plaintiffs simply allege that Mr. Sulayman is a co-conspirator, material sponsor, aider, abettor, and participant of the so-called "SAAR Network." (*Burnett* Compl. ¶ 267; *WTC Properties* Compl. ¶ 441.) This conclusory allegation does not come close to stating a claim. In its January 18, 2005 Opinion, the Court in considering the

*Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823.  And because Plaintiffs have failed to establish the existence of the alleged "SAAR Network" or that the alleged "SAAR Network" did anything wrong– their allegations that Mr. Sulayman is involved with the "SAAR Network" are meaningless.

Indeed in its September 21, 2005 Opinion and Order, the Court dismissed the claims against five of the so-called "SAAR Network" executives, Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza in the *Federal Insurance* action.  Reviewing allegations that are far more detailed than the conclusory allegations against Mr. Sulayman, the Court dismissed these claims because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, 392 F. Supp. 2d at 572.[3]  These rulings provide Mr. Sulayman a meritorious defense because the allegations against him concerning his involvement in the so-called "SAAR Network" do not state a claim against him.

The Court has also held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda.  See Terrorist Attacks I*, 349 F. Supp. 2d at 826 (emphasis added).  Nowhere in the *Burnett* or *WTC Properties* complaints do Plaintiffs make such an allegation.  Accordingly, the

---

[3] The Court also dismissed the so-called "SAAR Network Entities" African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based."  The Court also dismissed IIIT from *Ashton*, and Mar-Jac Poultry from *Ashton*, *Burnett* and *Federal Insurance*.  *See In re Terrorist Attacks II*, 392 F. Supp. 2d at 570-71, 576.

default judgments should be vacated because Plaintiffs have failed to allege that Mr. Sulayman

"knowingly and intentionally provided material support to al Qaeda." *See id.*

## IV.   PLAINTIFFS WILL SUFFER NO PREJUDICE IF DEFAULT JUDGMENT IS VACATED

Plaintiffs will not be prejudiced if the default judgments are vacated.  Prejudice may be

shown where vacating a default judgment will result in the loss of evidence, complicate

discovery, or create an opportunity for fraud and collusion to occur.  *See Davis v. Musler*, 713

F.2d 907, 916 (2d Cir. 1983).  Plaintiffs cannot demonstrate any such prejudice: they will not

suffer loss of evidence, nor will discovery become more difficult if the default judgment is

vacated.  Mr. Sulayman plans to promptly move to dismiss the *Burnett*, *Euro Brokers*, and *WTC*

*Properties* complaints if the Court vacates the default judgment.  *See Enron Oil Co.*, 10 F.3d at

98 ("[D]elay standing alone does not establish prejudice.").

## V.   ENTRY OF DEFAULT JUDGMENTS MAY LEAD TO INCONSISTENT JUDGMENTS BETWEEN SIMILARLY SITUATED DEFENDANTS

Default judgment against one defendant in a multi-defendant case where the defendants

are similarly situated is inappropriate because it may result in the entry of inconsistent

judgments. *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB),

2002 WL 31545845, *4 (S.D.N.Y. Nov. 13, 2002); *Sack v. Seid*, No. 01 C 6747, 2002 WL

31409573, *1 (N.D. Ill. Oct. 24, 2002) ("[D]efault Judgment is not appropriate if it would result

in inconsistency among judgments of multiple defendants.").[4]

---

[4]  The Southern District of New York has stated that:

[W]hen a default is entered against one defendant in a multi-defendant case, the preferred
practice is for the court to withhold granting default judgment until the [trial] of the action on the
merits against the remaining defendants.  If plaintiff loses on the merits, the complaint should be
dismissed against both defaulting and non-defaulting defendants.

Mr. Sulayman is one of over a hundred defendants in *Burnett*, *Euro Brokers* and *WTC Properties*, many of whom are similarly situated.  Mr. Sulayman's alleged liability in this matter is based on conclusory claims of conspiracy, providing material support to, and aiding and abetting, al Qaeda stemming from his purported role in the so-called "SAAR Network."  As discussed above, claims against several of the alleged "SAAR Network" defendants already have been dismissed from the *Burnett* and *Federal Insurance* cases, while most of the remaining alleged "SAAR Networks" defendants have motions to dismiss pending.

Failure to vacate the default judgments could lead to a situation where Mr. Sulayman is found liable by a default judgment for aiding, abetting, and conspiring with the alleged "SAAR Network" that Plaintiffs otherwise failed to prove exists or did anything wrong.  *See, e.g., The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486 RWS, 2004 WL 2650906, * 3 (S.D.N.Y. Nov. 22, 2004) (finding that default judgment of defendant in case where similarly situated defendant's case is heard on the merits could lead to one decree sustaining joint fraud charge and one decree finding fraud charge unfounded dismissing the complaint).

Because the entry of default judgments against Mr. Sulayman will lead to inconsistent judgments between similarly situated defendants in this MDL action, the default judgments should be vacated.  *See Enron Oil Corp.*, 10 F.3d at 96 (noting that entry of default is inappropriate if it would bring about a harsh or unfair result).

## VI.     ENTRY OF DEFAULT JUDGMENT IS PREMATURE

Obtaining a default judgment pursuant to Rule 55 requires the movant to follow a two step process.  "The first step is to obtain a default" from the clerk of the court in accordance with

---

*The Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486 RWS, 2004 WL 2650906, * 3 (S.D.N.Y. Nov. 22, 2004) (citing *Exquisite For. Indus., Inc. v. Exquisite Fabrics of London*, 378 F. Supp. 403, 416 (S.D.N.Y. 1974)).

Rule 55(a).  *Green*, 420 F.3d at 104; Fed. R. Civ. P. 55(a).  It is only *after* the clerk of the court

enters default that a party can take the second step and move for default judgment under Rule

55(b).  *Green*, 420 F.3d at 104;  Local Civil Rule 55.2 (requiring moving party to append copy of

the clerk's certificate of default to application for default judgment); *Bianco v. Seaway Industrial*

*Services, Inc.*, No. 03-CV-0084E(F), 2004 WL 912916, * 1 (W.D.N.Y. Apr. 1, 2004) ("First, a

party moving for default judgment must obtain an Entry of Default from the Clerk of the Court

pursuant to FRCvP 55(a), and second, the moving party must seek a default judgment . . ., as set

forth in FRCvP 55(b).").

Default judgment was granted by the Court against Mr. Sulayman in *Burnett* on April 7,

2006, but the Clerk's entry of default did not occur until April 14, 2006, a week *after* default

judgment was granted.  The Court later entered default judgments in *WTC Properties* and *Euro*

*Brokers* on May 12, 2006.  The Court's docket does not show that certificates of default were

entered by the Clerk of the Court in either *Euro Brokers* or *WTC Properties*, nor is there any

other indication that defaults were entered.  *See Enron Oil Corp.*, 10 F.3d at 95 (stating that the

clerk's record should contain a notation showing entry of default).  Accordingly, the default

judgments should be vacated because they were prematurely granted.

## CONCLUSION

For the reasons articulated above and in the accompanying declaration, the defaults and default judgments entered against Mr. Sulayman should be vacated.

Respectfully submitted,

**DLA PIPER US LLP**

/s/    Nancy Luque_____
Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

*Attorneys for Defendant Abdul
Hamid Abu Sulayman*

Dated: February 21, 2007

13

# EXHIBIT A



**COZEN
O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Sean P. Carter**
Direct Phone   215.665.2105
Direct Fax      215.701.2105
scarter@cozen.com

September 28, 2006

**VIA E-MAIL**

Steven K. Barentzen, Esquire
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, NW
Washington, DC 20036-2412

      **Re:**    **In Re: Terrorist Attacks on September 11, 2001**
             **03 MDL 1570 (RCC)**
             **Our File No.: 117430**

Dear Steve:

     I write on behalf of the *Federal Insurance* and *Burnett* plaintiffs, in response to your request that those plaintiffs agree to voluntarily vacate the default judgments entered against Samir Salah. In your initial email relating to this issue, you suggested that Mr. Salah would prevail on a motion to vacate the default judgments, because: (1) Mr. Salah allegedly did not have notice that he was a party to these lawsuits until after the default judgments were entered; and (2) in your view, the Complaints do not provide an adequate basis for the entry of default judgments against him.

     While we are willing to consider whether Mr. Salah would be entitled to have the default judgments vacated based on his alleged ignorance of his status as a defendant in these cases, we have not been provided sufficient information to engage in any meaningful analysis of that argument. To facilitate a dialogue on that question, we would request that Mr. Salah provide an affirmation addressing issues bearing on his knowledge of his status as a defendant and service of the Complaints upon him, and submit to a brief deposition limited to those same issues. While we anticipate that the specific scope of the affirmation and deposition will need to be discussed further, we believe they should at least address the following topics and circumstances:

Steven K. Barentzen, Esquire
September 28, 2006
Page 2

(1)     Mr. Salah's place(s) of residence between the dates the Complaints were filed and the present;

(2)     Mr. Salah's physical location when the notices of the lawsuits were published in the *International Herald Tribune, Al Quds al Arabi* and *USA Today* newspapers;

(3)     Any employment positions Mr. Salah has held between the dates the Complaints were filed and the present;

(4)     Any positions Mr. Salah has held as an executive or member of the board of directors of any companies between the dates the Complaints were filed and the present;

(5)     Whether Mr. Salah has been in contact with any other parties named as defendants in any of the consolidated MDL cases since the date the Complaints were filed;

(6)     Whether Mr. Salah has been in contact with counsel for any defendant in any of the consolidated cases since the Complaints were filed;

(7)     Whether Mr. Salah was aware that any companies or organizations with which he was at one time affiliated had been named as defendants in any of the consolidated MDL cases;

(8)     Whether Mr. Salah received any information regarding the pendency any of the consolidated MDL cases, regardless of whether he was aware of his status as defendant in those cases;

(9)     The date on which Mr. Salah first became aware of his status as a defendant in any of the consolidated MDL cases; and

(10)    The manner in which Mr. Salah first became aware of his status as a defendant in any of the consolidated MDL cases.

As Mr. Salah would bear the burden of establishing that he was unaware of the claims against him in any motion to vacate the default judgments, we do not believe that the proposed affirmation and deposition impose any additional burden on Mr. Salah. Moreover, because the exchange of this information may enable us to resolve this issue without court intervention, it seems like the sensible course to pursue. Of course, we are amenable to discussing the specific content of the affirmation and scope of the proposed deposition with you in further detail.

As to the second argument you raised in your request that plaintiffs agree to vacate the default judgments, after careful consideration of the question, we remain convinced that the default judgments entered against Mr. Salah are valid. Accordingly, we are not willing to voluntarily vacate the default judgments entered against Mr. Salah on that basis.

Steven K. Barentzen, Esquire
September 28, 2006
Page 3

---

At your earliest convenience, please let us know if Mr. Salah is willing to provide an affirmation to support his claim that he was unaware of his status as a defendant in the suits, and to submit to a brief deposition limited to issues bearing on his notice of the claims against him.

Finally, the *Burnett, Euro Brokers and WTC Properties* plaintiffs have authorized me to advise you that the points and proposals raised above apply equally to your request that those plaintiffs agree to vacate their default judgments against Abdul Hamid Abu-Sulayman.

We look forward to hearing back from you in the near future.

Very truly yours,

COZEN O'CONNOR

BY:    SEAN P. CARTER

SPC/bdw
cc:    Stephen A. Cozen, Esquire
       Elliott R. Feldman, Esquire
       Robert Haefele, Esquire
       Jodi Westbrook Flowers, Esquire

## Certificate of Service

I hereby certify that on this 21st day of February, 2007, I caused an electronic copy of Abdul Hamid Abu Sulayman's Motion To Vacate Default Judgments and Supporting Memorandum of Law to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)

14