# EXHIBIT A

# MAGGS & McDERMOTT, LLC

ATTORNEYS AT LAW
910 17TH STREET N.W., SUITE 800
WASHINGTON, D.C. 20006

TIMOTHY B. MILLS
PARTNER
TimothyBMills@aol.com
+1 202 457 8090 (US Office)
+357 99 446 718 (Int'l Mobile)

1 January 2007

## COUNSEL FOR FEDERAL INSURANCE PLAINTIFFS:
**BY E-MAIL: abonin@cozen.com,
mmullen@cozen.com,jgalligan@cozen.com,msommi@cozen.com**

Adam C. Bonin, Esq.
Mark T. Mullen, Esq.
Cozen O'Connor (Philadelphia)
1900 Market Street
The Atrium
Philadelphia, PA 19103

John Brian Galligan, Esq.
Michael J. Sommi, Esq.
Cozen O'Connor, LLP (NYC)
45 Broadway Atrium, 16th Floor
New York, NY 10006

## COUNSEL FOR NEW YORK MARINE AND INSURANCE COMPANY PLAINTIFFS:
**BY FAX: +1 212 983 5946**

David H. Fromm, Esq.
Frank J. Rubino, Esq.
Robert J. Brown, Esq.
Brown, Gavalas & Fromm, LLP
355 Lexington Avenue, 9th Floor
New York, NY 10017

## COUNSEL FOR O'NEILL PLAINTIFFS:
**BY E-MAIL: joshua@ambushlaw.com**

Joshua M. Ambush
Law Offices of Joshua M. Ambush
600 Reistertown Road, Suite 200A
Baltimore, Maryland 21208

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 2


**COUNSEL FOR PLAINTIFFS EXECUTIVE COMMITTEE:**
**BY E-MAIL: scarter@cozen.com**

Sean Carter, Esq.
Cozen O'Connor (Philadelphia)
1900 Market Street
The Atrium
Philadelphia, PA 19103

**SUBJECT:**    **In re Terrorist Attacks on September 11, 2001:**
         ***Republic of Iraq Identification of Areas Relative to Request for***
         ***Supplemental Pleading Pursuant to Stipulated Scheduling Order***
         ***Entered on 30 November 2006*** **(Docket No. 1922)**

CASES:      *Federal Insurance, et al v. Al Qaida, et al.,*
         United States District Court for the Southern District of New York
         Civil Action No. 1:03-cv-06978-RCC (Docket No. 679); and

         *New York Marine and General Insurance Company v. Al Qaida, et al.,*
         United States District Court for the Southern District of New York
         Civil Action No. 1:04-cv-06105-RCC (Docket No. 396)

         *O'Neill v. The Republic of Iraq*
         United States District Court for the Southern District of New York
         Civil Action No. 04-cv-01076-RCC (Docket No. 396)

Dear Counsel:

Pursuant to Paragraph 1 of the Stipulated Scheduling Order in the above-referenced
matters entered by the Court on 30 November 2006, Defendant Republic of Iraq hereby
identifies those areas of the amended in each of the above-referenced cases for which
supplemental pleading is required. *Please see* Attachment 1 hereto (Identification by
Republic of Iraq of Areas for Which More Definite Statement is Sought: *Federal
Insurance, et al. v. Al Qaida, et al.; New York Marine and General Insurance Company
v. Al Qaida, et al.;* and *O'Neill v. The Republic of Iraq*).[1]

---

[1] Pursuant to Federal Rules of Civil Procedure and local court practices, if the due date for a submission
required by Court order falls on a weekend or holiday, the due date is extended to the first business
day thereafter. Thus, this submission is due as of 2 January 2007.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 3

The identified areas in each of the complaints (as amended) are sufficiently vague and
ambiguous that the Republic of Iraq cannot respond to each of the referenced complaints
(as amended). If not corrected by supplemental pleading, each referenced complaint is
subject to a Rule 12(e) motion for more definite statement. *See* 5C Charles Alan Wright
& Arthur R. Miller, Federal Practice & Procedure § 1376 at 311 (3d ed. 2004) (footnote
omitted); *Humpherys v. Nager*, 962 F. Supp. 347, 352-53 (E.D.N.Y. 1997) (a 12(e)
motion is proper when a complaint pleads a viable legal theory, but is so unclear that the
opposing party cannot respond to the complaint").

Pursuant to the Stipulated Scheduling Order, this identification and request for more
definite statement is made without prejudiced to the Republic of Iraq seeking summary
dismissal of each of the complaints (as amended) by way of motion to dismiss and/or
summary judgment on any available ground.

Furthermore, under Paragraph 2 of the Stipulated Scheduling Order, this request triggers
the requirement for the Plaintiff parties in each of the above-referenced actions to file
RICO statements and More Definite Statements, pursuant to the terms of such Paragraph
2, within 45 calendar days of today.

We look forward to receiving your responses.

Very truly yours,

    /s/

Timothy B. Mills
Lead Counsel for Defendant Republic of Iraq

Attachment:
1. Identification by Republic of Iraq of Areas for Which More Definite is Sought:
   *Federal Insurance, et al. v. Al Qaida, et al.; New York Marine and General Insurance
   Company v. Al Qaida, et al.; and O'Neill v. The Republic of Iraq)*

Cc: (w/Attachment):
By E-Mail: mpowers@bakerlaw.com
Marc Powers, Esq., Baker & Hostetler LLP, New York, New York

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 4

## ATTACHMENT 1

### Identification by Republic of Iraq of Areas
### for Which More Definite Statement is Sought
*Federal Insurance, et al. v. Al Qaida, et al.*
*New York Marine and General Insurance Company v. Al Qaida, et al.*
*O'Neill v. The Republic of Iraq*

Defendant Republic of Iraq hereby identifies areas in the complaints (as amended) in each of the above-referenced actions for which More Definite Statement is sought.

### I.   *FEDERAL INSURANCE, ET AL. V. ALQAIDA ET AL.*

With respect to the *Federal Insurance* complaint served on the Republic of Iraq, Defendant Republic of Iraq identifies the following areas for which the Republic of Iraq requests More Definite Statement:

### A.   EXHIBITS TO THE COMPLAINT (AS AMENDED)

According to the Complaint, as amended, each of the Plaintiff insurance companies' claims arise from subrogation to insureds' rights of recovery for losses alleged suffered in relation to the World Trade Center terrorist attacks on September 11, 2001. The Complaint (as amended) states that the insureds are corporations, companies, partnerships, affiliations, persons, trusts and other parties identified in the Exhibits to the Complaint (as amended). The Complaint (as amended) does not state the citizenship of any of the insureds.

The Exhibits to the Complaint (as amended) (the "Exhibits") are material to a sufficient understanding of the allegations and claims made against the Republic of Iraq so as to allow the Republic of Iraq to form a response to the claims made. However, the Exhibits have been filed under seal, and have not been released yet to the Republic of Iraq.

As part of its request for More Definite Statement, Defendant Republic of Iraq requests that Plaintiffs provide the Republic of Iraq with each of the Exhibits, without restriction, so that the Republic of Iraq can conduct adequate investigation to be able to respond to the allegations of the Complaint (as amended).

### B.   CITIZENSHIP OF THE INSUREDS

The citizenship of the insureds is material to the jurisdiction of the Court. To the extent that any of the insureds are not United States citizens, the Court is without jurisdiction

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 5

under the Foreign Sovereign Immunities Act to entertain claims against the Republic of
Iraq.

Accordingly, as part of its request for More Definite Statement, Defendant Republic of
Iraq requests that each of Plaintiffs identify the citizenship of each of the insured to
which each of Plaintiffs is subrogated.

## C.   JURISDICTIONAL ALLEGATIONS

1.   Paragraph 67 of the Complaint (as amended) alleges that the Court has
jurisdiction over the claims pursuant to 28 U.S.C. 1331 (federal question); 28 U.S.C.
1332(a)(2) (diversity) and 28 U.S.C. 1350 (Alien Tort Claim Act).

Defendant Republic of Iraq requests that Plaintiffs state whether Plaintiffs contend that
such allegations apply to the Republic of Iraq, particularly the allegation that 28 U.S.C.
1350 (Alien Tort Claim Act) accords the Court jurisdiction over the Republic of Iraq.

2.   Paragraph 68 of the Complaint (as amended) alleges that the Court
possesses jurisdiction over Defendant Republic of Iraq pursuant to the commercial
activities exception to foreign sovereign immunities, 28 U.S.C. 1605(a)(2). However, the
Complaint fails to identify any particular commercial activity of the Republic of Iraq to
which this allegation pertains.

Defendant Republic of Iraq therefore requests More Definite Statement as to this
allegation.

3.   Paragraph 68 of the Complaint (as amended) alleges that the Court
possesses jurisdiction over Defendant Republic of Iraq pursuant to the provision of 28
U.S.C. 1605(a)(5), which states in pertinent part that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the
> United States or of the States in any case –
> (5) not otherwise encompassed in paragraph (2) above, in which money damages
> are sought against a foreign state for personal injury or death, or damage to or loss
> of property, occurring in the United States and caused by the tortious act or
> omission of that foreign state or of any official or employee of that foreign state
> while acting within the scope of his office or employment; except this paragraph
> shall not apply to –
>       (A) any claim based upon the exercise or performance or the failure to
> exercise or perform a discretionary function regardless of whether the discretion
> be abused, or

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 6

> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

(Emphasis added.)

However, the Complaint (as amended) does not identify with the required specificity either the "tortious act or omission" of the Republic of Iraq" or "of any official or employee of that foreign state [Republic of Iraq] while acting within the scope of his office or employment."

Accordingly, the Republic of Iraq requests More Definite Statement of the specific "tortious act or omission" of the Republic of Iraq or "of any official or employee of that foreign state [Republic of Iraq] while acting within the scope of his office or employment" upon which Plaintiffs premise this jurisdictional allegation.

    4.    Paragraph 68 of the Complaint (as amended) alleges that the Court possesses jurisdiction over Defendant Republic of Iraq pursuant to the so-called "State Sponsor of Terrorism" exception to foreign sovereign immunities, 28 U.S.C. 1605(a)(7). This provision states:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
>
> (7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph –
>     (A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; and
>     (B) even if the foreign state is or was so designated, if –
>     (i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 7

> opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or
>
> (ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

Plaintiffs have not stated whether the alleged jurisdiction of the Court is premised upon claimed personal injury or death arising from either: (i) torture, (ii) extrajudicial killing, (iii) aircraft sabotage, (iv) hostage taking, or (v) the provision of material support or resources (as defined in section 2339A of title 18). Furthermore, Plaintiffs have not stated with sufficient particularity: (a) how such alleged act or provision of material support was engaged in by any particular official, employee, or agent of the Republic of Iraq; or (b) how such particular official(s), employee(s) or agent(s) of the Republic of Iraq did so while acting within the scope of his or her office, employment, or agency.

Accordingly, the Republic of Iraq requires More Definite Statement as to each of the foregoing.

## D.   PARTICULAR CLAIMS

The Complaint (as amended) purports to state generally the following claims. More Definite Statement is sought as to each, as identified below.

### 1.   Trespass (Paras 598-603).

a.   The Complaint (as amended) does not identify the source of law for this claim.

As to particular paragraphs, the following defects are identified:

b.   <u>Para 599</u>: The Complaint (as amended) does not state any acts of the Republic of Iraq that constituted "an intentional and unlawful trespass upon the real and personal property of plaintiffs' insureds to which plaintiffs' insureds did not consent."

c.   <u>Para 600</u>: The Complaint (as amended) does not state sufficient facts to inform the Republic of Iraq of what persons and/or organizations the Republic of Iraq allegedly agreed to conspire with, nor any agreement itself, nor any affirmative act in furtherance of the conspiracy. Nor does the Complaint (as amended) define the term "acts of international terrorism against the United States" as used in the Complaint (as amended).

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 8

    d.    <u>Para 601</u>: The defects described as to Paras 599 and 600 are present in this paragraph also. Further, the Complaint (as amended) does not inform the Republic of Iraq of either: (a) to whom the "material support and resources" allegedly was provided by the Republic of Iraq. The omnibus summary listing of "Al Qaeda, and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties" is insufficient to inform the Republic of Iraq of the nature of these allegations.

    e.    <u>Para 602</u>: The defects described as to Paras 699, 600 and 601 are present in this paragraph also. Further, the Complaint (as amended) does not sufficiently inform the Republic of Iraq of the factual basis for the allegation that the Republic of Iraq, as a "co-defendant", "knew or should have known, that their provision of material support and resources to Al Qaeda Al Qaeda, and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties would result in unlawful trespass upon the real and personal property of plaintiffs' insureds."

### 2.    Wrongful Death (paras 604-606).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly as to the source of law and the Exhibits.

### 3.    Survival Action (paras 607-609).

Each of the previously-described requests for More Definite Statement are applicable to this claim – particularly as to the source of law and the Exhibits.

### 4.    Assault and Battery (paras 610-613).

Each of the previously-described requests for More Definite Statement are applicable to this claim – particularly as to the source of law and the Exhibits.

### 5.    Intentional and/or Negligent Infliction of Emotional Distress (paras 614-617).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly as to the source of law and the Exhibits.

Further, the Complaint (as amended) does not sufficiently inform the Republic of Iraq of the basis for the following allegations:

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 9

a.  <u>Para 615</u>:  That the Republic of Iraq, as a defendant, knew or should have known, that their actions in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11th Attack, would result in murder and serious injury of innocent persons, leaving the victims and their family members with severe and permanent physical, psychological and emotional injuries."

b.  <u>Para 616</u>:  The particular acts of the Republic of Iraq that constitute the following:  "actions in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11th Attack, were intentional, malicious, willful, unconscionable, reckless and/or negligent."

### 6.  Torture Victim Protection Act (paras 618-622).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly as to the source of law and the Exhibits.

Further, the following defects in the allegations related to this Claim also appear in the Complaint (as amended), for which the Republic of Iraq seeks More Definite Statement:

a.  The Torture Victim Protection Act of 1991 (Pub. L. 102-256) (TVPA) provides as follows:

SEC. 2. ESTABLISHMENT OF CIVIL ACTION.

(a) Liability.—An individual who, under actual or apparent authority, or color of law, of any foreign nation—
(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

(b) Exhaustion of Remedies.—A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.

(c) Statute of Limitations.—No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.

SEC. 3. DEFINITIONS.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 10

(a) Extrajudicial Killing.—For the purposes of this Act, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation.

(b) Torture.—For the purposes of this Act—
(1) the term 'torture' means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind; and
(2) mental pain or suffering refers to prolonged mental harm caused by or resulting from—
(A) the intentional infliction or threatened infliction of severe physical pain or suffering;
(B) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
(C) the threat of imminent death; or
(D) the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

The Complaint (as amended) fails to identify with any particularity any "individual who, under actual or apparent authority, or color of law, of the Republic of Iraq: (1) subjected an individual to torture as defined in the TVPA; or (2) subjected an individual to extrajudicial killing.

Furthermore, the Complaint (as amended) fails to state whether the TVPA claim is meant to apply to the Republic of Iraq as a Foreign Sovereign. As Plaintiffs may very well know, TVPA does not waive the sovereign immunity of a Foreign Sovereign, but only permits a cause of action against <u>individuals</u> (but not the Foreign Sovereign State).

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 11

### 7.    Conspiracy (paras 623-626).

Each of the previously-described requests for More Definite Statement is applicable to this claim -- particularly as to the source of law and the Exhibits.

### 8.    RICO (paras 627-629)

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly the Exhibits.

Further, the Complaint (as amended) does not sufficiently inform the Republic of Iraq of the basis for the following allegations:

    a.    Para 628:  The Complaint (as amended) fails to identify with sufficient particularity, as to the Republic of Iraq, any "pattern of racketeering activity which included, without limitation, murder, kidnapping, arson, robbery and extortion; dealings in controlled substances and listed chemicals; the falsification of identification documents; the unlawful procurement, reproduction, sale and use of naturalization and citizenship papers, passports and visas; the obstruction of federal and state criminal investigations; and financial institution and mail fraud", particularly as related to the September 11th Attacks claims.

    b.    Para 629:  The Complaint (as amended) fails to identify, with sufficient particularity, how any of the damages allegedly suffered by plaintiffs and plaintiffs' assignors "were the direct and proximate result of aforesaid pattern of racketeering activity by the [Republic of Iraq], acting individually and in concert with one another [the other Defendants].

### 9.    Aiding and Abetting (paras 630-633).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly the source of law and the Exhibits.

### 10.    18 U.S.C. 2333 (International Terrorism) (paras 634-638).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly the Exhibits.

Further, the Complaint, as amended, is defective, and More Definite Statement is sought, as to each of the following:

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 12

a.    In pertinent part, 18 U.S.C. 2331 and 2333 provide as follows:

**Section 2331. Definitions**

As used in this chapter –

(1) the term "international terrorism" means activities that –

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended –

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

**18 U.S.C. 2333 (a) Action and Jurisdiction. –**

Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

The Complaint (as amended) fails to sufficiently advise the Republic of Iraq of what activities the Republic of Iraq allegedly engaged, with respect to the September 11 Attacks, that:

A.    "[I]nvolve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State.

Particularly, there is no identification of any such violation by the Republic of Iraq of any particular criminal laws of the United States or of any State.

B.    Appear to be intended –

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 13

> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping.

There is no statement in the Complaint (as amended) of any intent on the part of the Republic of Iraq, with respect to the September 11 Attacks:

> (i) to intimidate or coerce a civilian population;
> (ii) to influence the policy of a government by intimidation or coercion; or
> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping.

### 11.    Negligence (paras 639-643).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly the Exhibits.

### 12.    Punitive Damages (paras 644-646).

Each of the previously-described requests for More Definite Statement is applicable to this claim – particularly the Exhibits.

## E.    SPECIFIC ALLEGATIONS RELATING TO REPUBLIC OF IRAQ

Each of the following specific allegations relating to the Republic of Iraq is identified as deficient for the reasons stated. Accordingly, More Definite Statement is sought as to each.

1.    Paragraph 58: "Defendant Iraq has long provided material support and resources to Al Qaeda, including training in document forgery, bomb making and poison gas production, as further described herein."

The Complaint (as amended) is devoid of any allegations sufficient to inform the Republic of Iraq of:

a.    To whom the Republic of Iraq allegedly provided "material support and resources to Al Qaeda, including training in document forgery, bomb making and poison gas production"; or

b.    When or what "material support and resources to Al Qaeda, including training in document forgery, bomb making and poison gas production" the Republic of Iraq is alleged to have provided in furtherance of Al Qaeda's September 11 Attacks.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 14

     2.     Paragraph 72: "The September 11[th] Attack was a direct, intended and foreseeable product of a larger conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies."

The Complaint (as amended) is devoid of any allegations sufficient to inform the Republic of Iraq of (a) what specific other defendants (*e.g.*, individuals, persons, organizations) the Republic of Iraq allegedly conspired with; (b) when and with whom the Republic of Iraq entered into any such alleged conspiracy "to commit acts of international terrorism against the United States, its nationals and allies" pertaining to the September 11 Attacks; and/or (c) what alleged act in furtherance of the conspiracy that the Republic of Iraq took.

     3.     Paragraph 73. "The conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies, including the provision of material support and resources to defendant Al Qaeda and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties, as discussed herein."

The Complaint (as amended) and this paragraph in particular are defective for the reasons stated with respect to Paragraph 72, immediately above. Further, as stated elsewhere above, the Complaint (as amended) and this paragraph fail to identify the material support and resources that are alleged to have been provided by the Republic of Iraq to Al Qaeda specifically related to the September 11 Attacks.

     4.     Paragraph 74. "Absent the material support and resources provided by the co-defendants, both directly and indirectly, Al Qaeda would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11[th] Attack."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraph 73, above. Furthermore, the identification of the Al Qaeda financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack" is so ambiguous as to not permit the Republic of Iraq to respond or defend.

     5.     Paragraph 520. "Between 1992 and 2003, defendant Syria continually purchased crude oil from defendant Iraq, in violation of the United Nations Security Council resolutions and sanctions programs designed to inhibit Iraq's ability to use funds derived from the sale of Iraq's natural resources to promote international terrorism and

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 15

pursue the development of weapons of mass destruction. Through its state-controlled bank, Syria assisted Iraq in laundering revenues realized by Iraq through the illegal oil sales, and through other illicit activities."

The allegations of this paragraph are vague and ambiguous, and thus insufficient, to inform Iraq of any alleged relationship between the purported Syrian purchases of crude oil and any alleged provision by the Republic of Iraq of "material support and resources" to Al Qaeda in support of the September 11 Attacks.

6.      Paragraph 521. "Syria's violations of the United Nations Security Council resolutions and sanctions programs, as described above, enabled Iraq to maintain and expand its terrorist sponsorship programs, including its provision of support and resources to Al Qaeda and affiliated FTOs, persons, organizations, commercial entities and other parties."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraphs 73 and 520, above.

7.      Paragraph 522. "Defendant Syria knew, or should have known, that Al Qaeda and affiliated FTOs, persons, organization, commercial entities and other parties would materially benefit from Syria's illegal crude oil purchases from Iraq, and from assistance Syria provided to Iraq in laundering revenues from illegal oil sales and other illicit activities."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraph 521, above.

8.      Paragraph 524. "The September 11[th] Attack was a direct, intended and foreseeable product of Syria's participation in Al Qaeda's jihadist campaign."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraph 521, above.

9.      Paragraph 536. "The Republic of Iraq has long provided material support and resources to Al Qaeda."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraphs 73, above.

10.      Paragraph 537. "According to the U.S. Government, defendant Iraq has harbored senior members of the Al Qaeda terrorist network. Iraq permitted those Al

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 16

Qaeda operatives to use the cloak of Iraq's state sovereignty to shield Al Qaeda's operations, including the recruitment of new members, training of terrorist cells, and coordination, planning, and funding of terrorist attacks throughout the world."

The Complaint (as amended) and this paragraph in particular are defective for the reasons stated with respect to Paragraph 72, above. Further, the Complaint (as amended) and this paragraph fail to identify sufficiently so that the Republic of Iraq might respond:

      a.      Any "senior members of the Al Qaeda terrorist network" that the Republic of Iraq allegedly harbored;

      b.      Any Al Qaeda operatives that the Republic of Iraq allegedly "permitted to use the cloak of Iraq's state sovereignty to shield Al Qaeda's operations" or any particular Al Qaeda "recruitment of new members, training of terrorist cells, and coordination, planning, and funding of terrorist attacks throughout the world" that the Republic of Iraq allegedly furthered by allegedly permitting Al Qaeda to "use the cloak of Iraq's state sovereignty to shield Al Qaeda operations".

      11.      Paragraph 538. "At all times material hereto, defendant Iraq operated terrorist training camps within its borders, at which defendant Iraq provided training to members of various terrorist organizations, including members of the Al Qaeda terrorist network. One such camp was equipped with a commercial airline fuselage, used by defendant Iraq to train terrorist operatives, including Al Qaeda members, in hijacking techniques and procedures."

The Complaint (as amended) and this paragraph in particular are defective by failing to identify the "members of the Al Qaeda terrorist network" that allegedly were provided training at any alleged terrorist training camps, and, most particularly, "Al Qaeda members" who allegedly were provided training by the Republic of Iraq in "hijacking techniques and procedures."

      12.      Paragraph 539. "As the foregoing demonstrates, Iraq has, for a period of many years, provided critical financial and logistical support to Al Qaeda in relation to that terrorist organization's global jihad."

The allegations of this paragraph are defective for the same reasons stated with respect to Paragraphs 73, above.

      13.      Paragraph 540. "The September 11[th] Attack was a direct, intended and foreseeable product of Iraq's participation in Al Qaeda's jihadist campaign."

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 17

The Complaint (as amended) and the allegations of this paragraph are defective for all of the reasons stated above with respect to the specific allegations made against the Republic of Iraq.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 18


## II.   *NEW YORK MARINE AND GENERAL INSURANCE COMPANY V. AL QAIDA ET AL.*

The *New York Marine and General Insurance Company* jurisdictional and subject matter claims against the Republic of Iraq mirror in all material respects, as to jurisdiction and basis of liability, those asserted in the *Federal Insurance* case, excepting that the subrogees do not appear to be individuals, but rather the insured airline companies that owned and operated the four commercial airliners that were taken over and crashed in the September 11 Attacks.

With respect to the *New York Marine and General Insurance Company* complaint served on the Republic of Iraq, Defendant Republic of Iraq identifies the same areas following areas for which the Republic of Iraq requests More Definite Statement, excepting that:

     (1) Defendant Republic of Iraq does not seek the citizenship of the subrogees, except to the extent that the citizenship of any of the subrogees are not United States citizens; and

     (2) Defendant Republic of Iraq believes that the *New York Marine* plaintiff subrogees otherwise have been adequately identified.

Thus, in sum, the same objections to the sufficiency of the Complaint (as amended) and request for More Definite Statement applies.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 19

## III.   *O'NEILL V. THE REPUBLIC OF IRAQ*

With respect to the *O'Neill* complaint (as amended) served on the Republic of Iraq,
Defendant Republic of Iraq identifies the following areas for which the Republic of Iraq
requests More Definite Statement:

### A.   JURISDICTIONAL ALLEGATIONS.

The *O'Neill* Complaint (as amended) echos the jurisdictional allegations (and, therefore,
the deficiencies) of the *Federal Insurance* and *New York Marine* complaints (as
amended), particularly those as to 28 U.S.C. 1331 (federal question); 28 U.S.C.
1332(a)(2) (diversity) and 28 U.S.C. 1350 (Alien Tort Claim Act), and 28 U.S.C.
1605(a)(2), 28 U.S.C. 1605(a)(5) and 28 U.S.C. 1605(a)(7). *See O'Neill* Complaint (as
amended) at paras. 9 through 20.

The Republic of Iraq thus identifies these deficiencies and seeks More Definite Statement
as to each.

Further, the O'Neill Complaint (as amended) states that "actions for wrongful death,
personal injury, and related torts perpetrated by foreign state sponsors of terrorism
through their officials, employees and agents – within the meaning of 28 U.S.C.
1605(a)(7) – are unique causes of action arising out of federal counter-terrorism statutes
and are controlled by federal law."

However, with respect to the Republic of Iraq, the O'Neill Complaint (as amended) fails
to identify with sufficient particularity either the acts of the officials, employees and
agents of the Republic of Iraq upon that constitute any of the purportedly alleged "actions
for wrongful death, personal injury and related torts" arising out of the September 11
Attacks. *See* O'Neill Complaint (as amended) at Para 10.

Furthermore, with respect to the Republic of Iraq, the O'Neill Complaint (as amended)
fails to identify any source of law for each of the claims, as is required under relevant
precedent holding that 28 U.S.C. 1605(a)(7) does not provide a right of action, and that
there is no applicable federal common law.

Accordingly, the Republic of Iraq seeks More Definite Statement as to each such
allegation.

The *O'Neill* Complaint (as amended) attempts to state, without particulars, that the Court
possesses jurisdiction over the Republic of Iraq because of the purported violation by the

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 20

Republic of Iraq of "the law of nations otherwise referred to as contemporary international law, including those international legal norms prohibiting torture, genocide, air piracy, terrorism, and mass murder as repeatedly affirmed by the United Nations Security Council." O'Neill Complaint (as amended) at para 23. The *O'Neill* Complaint (as amended) further alleges that"

> As a result of Defendants' sponsorship of terrorism in violation of the law of nations and contemporary principles of international law, the Plaintiffs suffered injury and damages as set forth herein. Violations of the law of nations and of international agreements include but are not limited to:
>
>      a.     The Universal Declaration of Human Rights, Dec 10, 1956 G.A. Res. 217(A)(III), U.N. Doc A/810, at 71 (1948);
>
>      b.     The International Covenant of Political and Civil Rights, art. 6 (right to life), U.N. Doc. A/6316, 999 U.N.T.S. (1992);
>
>      c.     The Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, Including Diplomatic Agents, 28 U.S.T. 1975, T.I.A.S. No. 8532 (1977), implemented in 18 U.S.C. § 112;
>
>      d.     The General Assembly Resolutions on Measures to Prevent International Terrorism, G.A. Res. 40/61 (1985) and G.A. Res. 42/158 (1987); and
>
>      e.     The Convention on the High Seas, arts. 14-22 (piracy) 13 U.S.T. 2312, T.I.A.S. No. 5200 (1962).

*O'Neill* Complaint (as amended) at para 24.

However, the O'Neill Complaint does not identify with any sufficient particularity the acts of the Republic of Iraq that constituted any such violations of the "law of nations" or any U.S. law implementing any such "law of nations".

Accordingly, the Republic of Iraq seeks More Definite Statement as to each such allegation.

### B.   ALLEGATIONS AS TO PARTIES

The O'Neill Complaint (as amended) alleges that:

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 21

> Defendants Saddam Hussein, the Estate of Qusay Hussein, the Estate of Uday
> Hussein, Husham Hussein, Tahya Yassin Ramadan a/k/a Taha Yassin Ramadan,
> Muhammed Madhi Salah a/k/a Muhhamed Mahdi Salah, Faruq Al-Hijazi, Salah
> Suleiman, Ahmed Khalil Ibrahim Samir al-Ani, Habib Faris Adullah al-Mamouri,
> Abdel Hussein, a/k/a "The Ghost," Haqi Ismail a/k/a Haqui Ismail, Taha Al
> Alwani a/k/a Dr. Taha Jabir al'Alwani, Abu Agab, and Abu Waiel a/k/a Abu
> Aw'el a/k/a Sadoun Abdul Latif <u>are</u> natural persons, subjects and citizens of Iraq
> and leaders, <u>officials, agents/or employees of Iraq and/or its Intelligence Agency,</u>
> <u>who participated in the acts and conspiracy described below while acting in the</u>
> <u>course and scope of their employment.</u>

O'Neill Complaint at para. 36.

However, the O'Neill Complaint does not provide sufficient particulars to allow the
Republic of Iraq to determine when any such person, while acting in the scope and course
of such person's alleged employment with the Republic of Iraq, either conspired or
participated in any acts, or conspiracy with Al Qaeda, with respect to the September 11
Attacks.

The allegations of paragraph 41 of the *O'Neill* Complaint, as amended, is so convoluted
and ambiguous as to make it impossible to discern which alleged officials, agent/or
employees of the Republic of Iraq agreed with and/or acted at all, with respect to any
other alleged co-conspirator.

As to paragraph 42 of the *O'Neill* Complaint, the allegation that "some of the individual
defendants" does not state whether any such referenced defendants include any person
allegedly acting in the scope and course of employment by the Republic of Iraq.

Paragraphs 50 and 51 of the *O'Neill* Complaint pertain to Abu Musab Zarqawi.  The
*O'Neill* Complaint (as amended) fails to state any relationship between Zarqawi, Iraq and
the September 11 Attacks.

## C.    COMMON FACTUAL ALLEGATIONS

The *O'Neill* Complaint "common factual allegations" are defective – and thus require
More Definite Statement – in each of the following regards:

### 1.    As to Conspiracy

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 22

The *O'Neill* Complaint (as amended) does not state sufficient facts to inform the
Republic of Iraq of what persons and/or organizations the Republic of Iraq allegedly
agreed to conspire relating or in regard to the September 11 Attacks, nor any agreement
itself, nor any affirmative act in furtherance of any such conspiracy.

*See* O'Neill Complaint (as amended) at:

     a.     Para 53: (insufficiently vague and ambiguous);

     b.     Para 54: (insufficient identification of the "contracted with" or "sponsored
Islamic fundamentalists who were willing to commit terrorist acts on Iraq's behalf" or
any relationship of such alleged acts with the September 11 Attacks, or any factual basis
for conclusory allegation that "Iraqi agents tried to destroy the World Trade Center" in
1993);

     c.     Para 56: (insufficient identification of any relationship between the
Republic of Iraq and Al Qaeda, based on inferential "shared virulent hatred of the United
States");

     d.     Para 57: (insufficient identification of "Al Qaeda terrorists established
close working relations with Iraqi Intelligence agents in Iraq, the Sudan, Afghanistan and
elsewhere, or as to the remaining purported factual allegations in the relationship, or the
relationship of any such alleged relationship or acts to the September 11 Attacks).

     e.     Para 58: (insufficient identification of "Iraq . . . actively supporting Al
Qaeda operations by providing intelligence, training, weapons, supplies, passports, travel
documents, and financial support to co-conspirators"). As to the other allegations of this
paragraph that are a mirror of the *Federal Insurance* "material support" allegations, such
allegations are defective for the same reason.

     f.     Para 59: (insufficient identification of facts to support the conclusory
allegation: "Al Qaeda, backed by . . . Iraq . . . carried out the September 11th terror
attacks").

     g.     Para 72: (insufficient identification of facts to support the conclusory
allegation: "at various times from as early as 1989, Bin Laden, and others known and
unknown, ran terrorist training "camps and guesthouses" in various areas, including . . .
Iraq . . . for the use of Al Qaeda and its affiliated groups").

     h.     Para 74: (insufficient identification of facts to support the conclusory
allegation: "Al Qaeda was Iraq's favorite partner in terror").

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 23


      i.    Para 75: (insufficient identification of facts to support the conclusory "information and belief" allegation that "there have been numerous meetings between Iraqi Intelligence agents and high-ranking Al Qaeda terrorists to plan terror attacks.")

      j.    **The "World Trade Center" Allegations:**

    (1)    Para 76: (insufficient identification of facts to support the conclusory allegation "Iraqi sponsored terrorists planned, financed, executed and carried out that World Trade Center bombing" or to demonstrate any relationship between the World Trade Center bombing and the September 11 Attacks).

    (2)    Para 77: (insufficient identification of facts to support the conclusory allegation "Iraq and the terrorists wanted to maximize the number of American casualties.)

    (3)    Para 78: (insufficient identification of facts to support the conclusory allegation: Ramzi Ahmed Yousef was an Iraqi Intelligence agent and/or asset and/or associate or that the Republic of Iraq had any role or participation in the alleged forgery of travel documents used by Ramzi Youssef).

    (4)    Para 79: (insufficient identification of facts to support the inference that Ramzi Youssef traveled on a passport issued by the Republic of Iraq, as opposed to a forged Iraqi passport obtained by Ramzi Youssef without the participation or consent of the Republic of Iraq); (insufficient identification of facts to support the allegation that "Iraqi Intelligence had access to the Kuwaiti Interior Ministry files and upon information and belief, inserted Yousef's fingerprints into the file and provided him with photocopies of two older passports from Basit's file").

    (5)    Para 80: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and the bombing of the World Trade Center or the September 11 Attacks as a consequence of the alleged activities of Abdul Yahaman Yasin).

    (6)    Para 83: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and the activities of Ramzi Youssef, as alleged: "Upon information and belief, it was Iraq that supplied Yousef with the sodium cyamide and/or trained him in the use and/or manufacture of chemical weapons").

    (7)    Para 84: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda as to the September 11 Attacks, as

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 24

alleged: "Upon information and belief, Al Qaeda terrorists met and conspired in November, 1995, with Iraqi Intelligence and the Iranian Hezbollah to bomb the Khobar towers complex located in Dhahran, Saudi Arabia").

    k.    **"Bin Laden's Return to Afghanistan"**

    (1)    <u>Para 86</u>: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda as to the September 11 Attacks, as alleged: "From 1996 until 2001, Bin Laden with the financial and logistical support of Omar and others in the Taliban and <u>Iraq and Iraqi Intelligence</u>, created, supplied and operated at least five training camps in order to create an "Islamic Foreign Legion" capable of attacking their enemies throughout the world").

    l.    **"Public Merger of Iraqi and Al Qaeda Interests"**

    (1)    <u>Para 90</u>: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda, as to the September 11 Attacks, as alleged: "Upon information and belief, Iraq agreed to supply arms to Al Qaeda and provide Al Qaeda with access to and training in the use of chemical and biological weapons. Iraq also agreed to instruct Al Qaeda terror trainers at its Salman Pak camp in Baghdad that contained a Boeing 707 used to practice hijacking. Iraq also agreed to supply Al Qaeda terrorists with new identities and passports from Yemen and the United Arab Emirates.")

    (2)    <u>Para 91</u>: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda as to the September 11 Attacks, as alleged: "In exchange, Al Qaeda agreed to provide protection from political opponents to Iraq and Saddam Hussein, and to commit assassinations and other acts of violence to create instability in regions of Iraq, particularly Kurdistan, to assist the regime of Saddam Hussein. Al Qaeda further agreed to provide trained terrorists, assassins, and martyrs to carry out terror attacks in concert with Iraq against their common enemies, including the United States").

    (3)    <u>Para 95</u>: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda, as to the September 11 Attacks, as alleged: "[a]t the time Bin Laden was seeking to obtain nuclear material from Iraq and others who possessed nuclear material and was in the process of developing nuclear weapons").

    (4)    <u>Para 97</u>: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda as to the September 11 Attacks, as

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 25

alleged: "Upon information and belief, as a direct result of those meetings, Iraq again made commitments to provide training, intelligence, clandestine Saudi border crossings, financial support and weapons and explosives to Al Qaeda").

(5)     Para 98: (insufficient identification of facts to support any alleged connection between the Republic of Iraq and Al Qaeda as to the September 11 Attacks, as alleged: Iraqi Intelligence officials met with Bin Laden in Afghanistan several more times. A second group of Bin Laden and Al Qaeda operatives from Saudi Arabia were then trained by Iraqi Intelligence in Iraq to smuggle weapons and explosives into Saudi Arabia and other countries, which they later accomplished in an effort to carry out future terrorist acts of violence. A third group of Bin Laden and Al Qaeda operatives received a month of sophisticated guerilla operations training from Iraqi Intelligence officials later in the Summer of 1998").

(6)     Paras 99-104: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "Upon information and belief, the purpose of this meeting was to discuss and plan a joint strategy for a terrorist campaign in the United States. Five months later, the American embassies in Kenya and Tanzania were bombed." And "upon information and belief, Iraqi Intelligence officials pledged Iraq's full support and cooperation in exchange for a promise that Bin Laden and Al Qaeda not to incite the Iraqi Muslim Brotherhood inside Iraq to oppose, undermine or attack the regime of Iraqi dictator Saddam Hussein." And "upon information and belief, Dr. Zawahiri observed training by Iraqi Intelligence officials of Al Qaeda operatives at the al-Nasiyirah military and chemical weapons facility in Iraq").

m.     **"U.S. Embassy Bombings"**

(1)     Para 105: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "To demonstrate its commitment to Iraq and its anti-U.S. policies, in the Spring of 1998, Al Qaeda planned terrorist bombing attacks on the U.S. Embassies in Nairobi, Kenya, and Dar Es Salaam, Tanzania").

n.     **"The 1998 U.S. Air Strikes on Al Qaeda"**

(1)     Paras 114, 115, 121, 122, 123, 125, 126 and 128: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "By mid-November, 1998, Saddam Hussein reportedly came to the conclusion (with the advice and prompting of his son and intelligence chief, the late Qusay Hussein), that a campaign

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 26

of terrorist attacks against the United States, under the banner of Bin Laden and Al Qaeda, was the most effective means of deflecting U.S. attempts to topple his regime"; and "shortly thereafter, Iraqi intelligence officials reportedly met with Bin Laden in Afghanistan. Bin Laden, Al Qaeda, and Iraq reportedly agreed to join efforts in a detailed, coordinated plan for a protracted terrorist war against the United States. Iraq also reportedly agreed to provide Bin Laden and Al Qaeda with the assistance of an expert in chemical weapons, and Bin Laden reportedly agreed to hunt down Iraqi opposition leaders who cooperated with the United States against Hussein. In furtherance of this agreement, Bin Laden reportedly dispatched four hundred of Al Qaeda's "Afghan" Arabs to Iraq to fight Kurdish dissidents"; and "upon information and belief, Bin Laden, Al Qaeda and Iraq agreed to join efforts in a detailed, coordinated plan for a protracted terrorist war against the United States"; and "'Unit 999' was located at Salman Pak, south of Baghdad. It was here that training would be given to Al Qaeda fighters to use chemical and biological weapons in sabotage operations in Europe and across the United States"; and "Unit 999 ran a course for a number of extremist Middle Eastern groups, including Al Qaeda. Mohhamad was recruited into Saddam Fedayeen in 1998 and had his first encounter with Bin Laden fighters that year at Salman Pak", and "Sometime during or after 1998, Iraq agreed to help Bin Laden and Al Qaeda develop a laboratory in Afghanistan designed to produce anthrax"; and "Bin Laden and Al Qaeda operatives were being trained by Iraqi Intelligence and military officers at other training camps on the outskirts of Baghdad"; "in January 1999, Iraq began reorganizing and mobilizing Iraqi Intelligence front operations throughout Europe in support of Bin Laden and Al Qaeda. Haqi Ismail, believed to be a member of Iraq's Mukhabarat Secret Service, left Iraq to train in an Afghanistan Al Qaeda camp").

    o.    **"Attack on the USS Cole"**

    (1)    Paras 129 and 130: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "In the spring of 2000, Iraqi Intelligence began planning to attack United States warship[s in the Persian Gulf in an effort to prompt a United States withdrawal. Iraq sought suicide bombers who would employ small boats packed with explosives to ram United States' warships"; and "on October 12, 2000, Iraqi Intelligence and members of Al Qaeda including Bin Laden, Jamal al-Badawi, Khalid al-Midhar, Mohammed Omar al –Harazi, Walid al Sourori, Fatha Abdul Rahman, Yasser Al-Azzani, Jamal Ba Khorsh, Ahmad Al-Shinni, Raed Hijazi, Jamil Quasim Saeed Mohammed, as well as the two suicide boat bombers Abd Al-Mushin Al-Taifi (deceased)(and a suspect in the August 1998 Embassy bombings) and Hassan Said Awadh Khemeri (deceased) carried out their plan to bomb the U.S.S. Cole by ramming a small boat loaded with explosives into the side of the ship as it was anchored in the

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 27

harbor at Aden, Yemen, resulting in the deaths of 17 American sailors and injuring an additional 39").

    p.    **"Al Qaeda Hijacking of Saudi Airline"**

    (1)    <u>Para 133</u>: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "Upon information and belief, this hijacking was a message between Bin Laden and Iraq intended to demonstrate that Al Qaeda terrorists could seize control of large commercial aircraft that could be used as a weapon in the hands of suicide terrorists, foreshadowing a coordinated attack that was less than a year away").

    q.    **"Iraqi Launch of Terror War"**

    (1)    <u>Para 135</u>: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "in May 2001, Al Qaeda operatives in Kurdistan assassinated Franso Hariri, a member of the Kurdish Democratic Party, as part of a deal with Saddam Hussein. The killing of Hariri created instability in the region by damaging relations between the co-leaders of Kurdistan. This benefited the Hussein regime in Iraq").

    r.    **"Aftermath of September 11"**

    (1)    <u>Paras 204, 206, 207, 208</u>: (insufficient identification of facts to support any alleged connection between Republic of Iraq and Al Qaeda with respect to the September 11 Attacks, as alleged, most particularly: "Iraq has offered sanctuary to Bin Laden and Taliban leaders"; "upon information and belief, several hundred Al Qaeda members, including Abu Abdul Rahman, fled Afghanistan for Kurdistan in Iraq to try to take control of towns not under the control of Saddam Hussein and Iraq, including Halabja, Tawela, and Biyarah. On September 23, 2001, Kurdish forces ousted Ansar al-Islam from Halabja, but the Islamic fundamentalist group remained in control of Tawela and Biyarah", and "Israeli intelligence sources verify that for the past two years, Iraqi Intelligence officers have been shuttling back and forth between Baghdad and Afghanistan; and "in its published dossier to show Iraq's links to Osama Bin Laden, the British government added that Iraq had allowed al-Qaeda and Bin Laden to train in Iraq"; and "In March 2002, U.S. and allied forces discovered a laboratory near Khandahar, Afghanistan that was designed to produce weapons-grade anthrax. Upon information and belief, Iraqi Intelligence were supplying technology, materials, and training to develop this facility in coordination with Al Qaeda and the Taliban").

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 28

### D.    CAUSES OF ACTION

The O'Neill Complaint alleged causes of action (as amended) are vague and ambiguous, and thus requires More Definite Statement, in the following regards

#### 1.    Wrongful Death

a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

b.      The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

c.      <u>Para 211</u>: The *O'Neill* Complaint (as amended) does not sufficiently identify the "willful, wrongful, intentional and reckless acts" of the Republic of Iraq that "directly and proximately caused" John Patrick O'Neill Sr. to be killed as part of the September 11 Attacks.

d.      <u>Para 212</u>: The *O'Neill* Complaint (as amended) does not sufficiently identify the acts of the Republic of Iraq upon which the plaintiffs base the conclusory allegation that the Republic of Iraq "funded, trained and directed the terrorist hijackers and acted in concert in sponsoring the terrorist attack on the World Trade Center."

e.      <u>Paragraph 214</u>: The *O'Neill* Complaint (as amended) does not sufficiently identify the acts of the Republic of Iraq upon which the plaintiffs base the conclusory allegation that the Republic of Iraq is "jointly and severally liable to Plaintiffs."

#### 2.    Survival Action

a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

b.      The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

c.      <u>Para 217</u>: The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 29

    d.     <u>Para 219</u>:  The identification of insufficient pleading and requests pertaining to paragraph 214 applies to the allegations of this paragraph.

    **3.**     **Action for Economic Damages**

    a.     The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended).  Accordingly, all defects and request for More Definite Statement identified above apply.

    b.     The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

    c.     <u>Para 221</u>: The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

    d.     <u>Para 222</u>:  The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

    e.     <u>Para 223</u>:  The identification of insufficient pleading and requests pertaining to paragraph 214 applies to the allegations of this paragraph.

    **4.**     **Intentional Infliction of Emotional Distress**

    a.     The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended).  Accordingly, all defects and request for More Definite Statement identified above apply.

    b.     The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

    c.     <u>Para 225</u>:  The *O'Neill* Complaint (as amended) does not sufficiently identify the "extreme and outrageous conduct" on the part of the Republic of Iraq pertaining to the "act of crashing two airplanes into the twin towers of the World Trade Center".

    d.     <u>Para 230</u>:  The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

    e.     <u>Para 231</u>:  The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 30

      f.      Para 232: The *O'Neill* Complaint (as amended) does not sufficiently identify the "acts" on the part of the Republic of Iraq that allegedly have caused Plaintiffs to suffer "injury and loss".

### 5.    Loss of Consortium

      a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

      b.      The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

      c.      Para 234: The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

### 6.    Loss of Solatium

      a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

      b.      The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

      c.      Para 236: The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

      d.      Para 237: The *O'Neill* Complaint (as amended) does not sufficiently identify the "reasons stated above" pertaining to the Republic of Iraq that allegedly forms the basis of this claims against the Republic of Iraq or of the allegation that 28 U.S.C. 1605 "specifically authorizes a cause of action of solatium in civil actions for money damages resulting from terrorist acts." Further, The identification of insufficient pleading and requests pertaining to paragraph 214 applies to the allegations of this paragraph.

### 7.    Conspiracy

      a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 31

b.      The *O'Neill* Complaint (as amended) does not identify the source of law for this claim.

c.      Para 239: The *O'Neill* Complaint (as amended) does not sufficiently identify the alleged specific acts by which the Republic of Iraq "unlawfully, willfully, knowingly combined, confederated, aided and abetted, tacitly and/or expressly agreed to participate in unlawful and tortious acts pursuant to a common course of conduct, resulting in the death and injury of plaintiffs" as to the September 11 Attacks.

d.      Para 240: The *O'Neill* Complaint (as amended) does not sufficiently identify the alleged specific acts by which the Republic of Iraq allegedly "conspired with and agreed to provide material support, funding, sponsorship, and/or resources to Al Qaeda, Osama bin Laden and the sponsors of terror" and does not sufficiently identify the "sponsors of terror" to whom this allegation refers, as to the September 11 Attacks.

e.      Para 241: The *O'Neill* Complaint (as amended) does not sufficiently identify the alleged specific acts by which the Republic of Iraq allegedly "engaged in common, concerted and conspiratorial acts, efforts, transactions, and activities designed and intended to cause a terrorist attack on the United States, its citizens and society, and attack those foreign citizens found within the United States, resulting in harm to Plaintiffs, which was done pursuant to a furtherance of this common scheme."

d.      Paras 242 and 243: The identification of deficiencies stated as to paragraphs 239, 240 and 240 apply to the allegations of paragraphs 242 and 243.

8.      **Treble Damages of US Nationals (18 U.S.C. 2333)**

a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

b.      The identification of deficiencies in the allegations of the *Federal Insurance* Complaint (as amended) pertaining to 18 U.S.C. 2333 apply as well to the 18 U.S.C. 2333 allegations of the O'Neill Complaint (as amended).

c.      Paras 245 and 246: The identification of insufficient pleading and requests pertaining to paragraphs 211 and 212 apply to the allegations of this paragraph.

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 32

      d.      Para 247: The *O'Neill* Complaint (as amended) does not sufficiently identify the "acts in furtherance of international terrorism" on the part of the Republic of Iraq that allegedly have caused Plaintiffs to suffer damages.

**9.**      **RICO**

      a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

      b.      It is unclear whether the *O'Neill* Complaint (as amended) is intended to assert one of more RICO claims against the Republic of Iraq. Defendant Republic of Iraq notes that the specific allegations of paragraphs 250-253 appear to pertain to the non-sovereign defendants, while the prayer for relief as to this count seeks damages from "all Defendants".

If the RICO count is intended to apply to the Republic of Iraq, the identifications and request for More Definite Statement as to the *Federal Insurance* RICO claims (above) applies to the O'Neill RICO claims.

**10.**      **Punitive Damages**

      a.      The stated cause of action incorporates by reference all preceding paragraphs of the *O'Neill* Complaint (as amended). Accordingly, all defects and request for More Definite Statement identified above apply.

      b.      Para 255: The *O'Neill* Complaint (as amended) does not sufficiently identify the actions of Defendants Republic of Iraq "acting in concert [with other defendants] to carry out their unlawful objectives, were malicious and willful, wanton and reckless in their disregard for the life of John Patrick O'Neill Sr. and other victims of the September 11" Attacks; and Defendant Republic of Iraq "intended to carry out actions that would end lives of persons at the World Trade Center, including the life of John Patrick O'Neill Sr."

      c.      Para 256: This "throw everyone into one pot" allegation is so ambiguous and vague as make indiscernible what actions the Republic of Iraq is alleged to have taken, when and with whom as to the death of John Patrick O'Neill Sr.

      d.      Para 257: The *O'Neill* Complaint (as amended) does not sufficiently identify the "acts" on the part of the Republic of Iraq that would allegedly make the

*In re Terrorist Attacks on September 11, 2001*
Counsel for New York Marine and General Insurance Company Plaintiffs
Counsel for Federal Insurance Plaintiffs
Counsel for O'Neill Plaintiffs
Counsel for Plaintiffs Executive Committee
1 January 2007
Page 33

Republic of Iraq jointly and severally liable to Plaintiff for the acts of any other
defendant.