UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT applicable to the REPUBLIC OF IRAQ** |

*This document relates to:*          *New York Marine and General Insurance Company v. Al Qaida, et al.*
*04 CV 6105 (RCC)*

## RICO STATEMENT APPLICABLE TO THE REPUBLIC OF IRAQ

Based on information currently available, and pursuant to the Case Management Orders applicable to this litigation, plaintiff, New York Marine and General Insurance Company ("plaintiff") submits this RICO statement for defendant Republic of Iraq.

Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiff, absent discovery. Plaintiff therefore reserves the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

1. The unlawful conduct is in violation of 18 U.S.C. § 1962(a), (c) and/or (d).

2. The name of the defendant to whom this RICO statement pertains is the Republic of Iraq. The alleged misconduct is set forth in plaintiff's More Definite Statement as to the Republic of Iraq, incorporated herein by reference. The basis of liability is predicated upon 18 U.S.C. § 1962(a), (c) and/or (d).

3. Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiff, and the identities of other wrongdoers may be revealed through discovery. Plaintiff therefore reserves the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

4. The alleged victim is the plaintiff, New York Marine and General Insurance Company. Plaintiff was injured as a result of insurance payments it made for claims filed by its insureds, airline companies which owned and operated the commercial airliners which were hijacked and used as weapons in the September 11th attacks, to recover for the damage they suffered in connection with the September 11th attacks

5. (a) <u>list of predicate acts and specific statutes violated:</u>

| | |
|---|---|
| Conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal §125.25(xi) |
| Conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| Fraud with identification documents | 18 U.S.C. § 1028 |
| Travel Act | 18 U.S.C. § 1952 |
| Illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| Money laundering | 18 U.S.C. § 1957 |
| Financial institutions fraud | 18 U.S.C. § 1344 |
| Defrauding the U.S. Government | 18 U.S.C. § 371 |
| Filing false or materially false tax returns | 26 U.S.C. § 7206(1), (2) |
| Engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 72 17(a) |
| Mail fraud | 18 U.S.C. § 1341 |
| Wide fraud | 18 U.S.C. § 1343 |
| Explosive materials | 18 U.S.C. § 844 |
| Providing material support of Terrorism | 18 U.S.C. § 2332(b)(g)(5)(B) 18 U.S.C. § 2339A 18 U.S.C. § 2339B 18 U.S.C. § 2339C |
| Anti-Terrorism Act | 18 U.S.C. § 2332b |

(b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| early 1990s to 9/11/2001 | Republic of Iraq | The Republic of Iraq knowingly conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaida movement, which conspiracy culminated in the September 11th Attack. |
| early 1990s to 2003 | Republic of Iraq | The Republic of Iraq undertook the above named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, the al Qaida movement, planned to and would commit acts of deadly aggression against the United States in the near future, using the resources and support it supplied. |

| early 1990s to 2003 | Republic of Iraq | The Republic of Iraq agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts, *i.e.,* multiple acts of money laundering, murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |
|---|---|---|
| early 1990s to 2003 | Republic of Iraq | In violation of 18 U.S.C. § 844, on multiple occasions the Republic of Iraq directly and/or indirectly provided al Qaida with instruction in the development, manufacture and use of sophisticated explosive devices in furtherance of its terrorist activities. |
| early 1990s to 2003 | Republic of Iraq | In violation of 18 U.S.C. § 2332, on multiple occasions the Republic of Iraq knowingly and intentionally aided, abetted and conspired with al Qaida, in relation to that terrorist organization's campaign to commit homicide and/or cause serious bodily injury to U.S. citizens. |
| early 1990s to 2003 | Republic of Iraq | In violation of 18 U.S.C. § 2339 et seq., on multiple occasions the Republic of Iraq directly and/or indirectly provided material support or resources to al Qaida, including training in military and intelligence tactics, instruction in the manufacture of explosive devices, technological assistance in the development of weapons of mass destruction, logistical support for terrorist attacks, financial assistance, and safe haven. |

(c) not applicable

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and obfuscate their support of the al Qaida movement.

  (g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each predicate act allowed the defendants to hold and maintain a global network of terrorists organizations, including al Qaida, in order to conduct terrorist attacks throughout the world, including the September 11th Attack.

6. (a) The Enterprise ("the al Qaida movement" or "the global jihadist movement" or "Radical Muslim Terrorism") is comprised of the defendants named in the Second Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

  (b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Laden ("Bin Laden") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries; and (iii) punishing Israel, and the United States for its perceived support of Israel. The al Qaida movement does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. The Republic of Iraq fit neatly into this framework providing funds, weapons, training, intelligence, false documentation and other forms of material support for al Qaida and the members of the Enterprise who planned, coordinated and carried out the Attack.

  (c) No.

  (d) The Republic of Iraq is associated with the Enterprise.

  (e) The Republic of Iraq is a member of the Enterprise, and is separate and distinct from the Enterprise.

  (f) The Republic of Iraq intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by the Republic of Iraq is separate from the existence of the al Qaida movement, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by the Republic of Iraq furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9. The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Republic of Iraq, relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13. The al Qaida movement "employs" certain individuals, only a few of whose identities are known, including defendant Osama bin Laden.

14. The history of the conspiracy behind the al Qaida movement could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. From its inception, al Qaida has relied on well-placed financial facilitators and logistical sponsors, including the Republic of Iraq, to obtain and distribute money, weapons, physical assets, information and other resources for the Enterprise. Al Qaida also relied heavily on affiliated terrorist organizations and state sponsors, including the Republic of Iraq, to provide training and instruction to the Enterprise in paramilitary and terrorist tactics, bomb making, the development of weapons of mass destruction, intelligence gathering, and counter-intelligence techniques.

    The assets and knowledge thus gathered were used to, among other things, operate terrorist training camps in the Sudan, Afghanistan and elsewhere, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of fundraisers, recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan and the other countries where al Qaida maintained an operational presence. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds and other support supplied by participants and conspirators like the Republic of Iraq. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including the Republic of Iraq. In order to identify nineteen individuals willing, able and competent to carry out the Attack, al Qaida needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by the Republic of Iraq. These participants, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and agreed to participate in the conspiracy, either expressly or impliedly. The Republic of Iraq also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individuals and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out or for which they have reserved.

16. Plaintiff's damages --property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. Rather the plaintiff's insureds' assignees were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," *i.e.,* terrorism, the culmination of which was the Attack.

17. The Republic of Iraq is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $2,863,347.98 in damages for plaintiff's injuries.

18. <u>Federal Causes of Action</u>

| **Count III** | Civil RICO, 18 U.S.C. §1962 |
|---|---|
| **Count IV** | 18 U.S.C. §2333 |

19. <u>Pendant State Claims</u>

| **Count I** | Trespass |
|---|---|
| **Count II** | Conspiracy |
| **Count IV** | Aiding and Abetting |
| **Count VI** | Negligence |
| **Count VII** | Punitive Damages |

20. None at this time.  If any additional information is learned through discovery, it shall be provided.

Dated: March 7, 2007

                                        BROWN GAVALAS & FROMM LLP
                                        Attorneys for Plaintiff
                                        NEW YORK MARINE AND GENERAL
                                        INSURANCE COMPANY


                                BY:      /S/
                                        DAVID H. FROMM, ESQ. (DH-9334)
                                        FRANK J. RUBINO, ESQ. (FR-6202)
                                        355 Lexington Avenue
                                        New York, NY 10017
                                        212-983-8500