# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*   *Federal Insurance Co., et al v. Al Qaida, et al, 03 CV 06978 (RCC)*
*Burnett, et al., v. Al Baraka Inv. & Dev. Corp., 03 CV 9849 (RCC)*
*World Trade Center Properties LLC, et al., v. Al Baraka Inv. & Dev. Corp., et al., 03 CV 7280 (RCC)*
*Euro Brokers Inc., et al., v. Al Baraka Inv. & Dev. Corp., et al., 03 CV 7279 (RCC)*

### AFFIDAVIT IN OPPOSITION TO THE MOTIONS THE DEFENDANTS SAMIR SALAH AND ABDUL HAMID ABU SULAYMAN TO SET ASIDE DEFAULT JUDGEMENTS

STATE OF SOUTH CAROLINA   )
                                                       )
COUNTY OF CHARLESTON   )

Robert T. Haefele, being duly sworn, deposes and says:

1. I am an attorney admitted to practice *pro hac vice* in the above captioned matter, and associated with the law firm Motley Rice LLC. I am familiar with the facts and circumstances in this action as set forth in this affidavit.

2. I make this declaration in opposition of the motions the defendants Samir Salah and Abdul Hamid Abu Sulayman to set aside Default Judgments.

3. By Order of this Court, service by publication was approved and publication in English was issued in the *USA Today* newspaper in the United States on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005. Publication in English was issued in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005. Finally, publication in Arabic was issued in the London-based *Al-Quds Al-Arabi*, with its wide circulation in the Middle East, on

December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005. See Exhibit A.

4. On July 18, 2006, defendants' counsel asked the *Burnett* plaintiffs' counsel to agree to set aside the default judgments. On August 29, 2006, defendants' counsel made a similar request to counsel for the *Federal Insurance* plaintiffs concerning defendant Salah. In both instances, plaintiffs' counsel indicated a willingness to consider the defendants' requests provided the defendants could offer some reasonable explanation as to why they had waited so long to address either the Complaints or the default judgments. The first response to defendants' counsel's request from the *Burnett* plaintiffs' counsel was to ask defendants merely to explain how they had received notice, including why they had received it later rather than earlier.

5. Later, plaintiffs' counsel in *Federal Insurance* made similar inquiries, asking defendants' counsel to have the defendants explain why they had not been aware of the action earlier. In a letter dated September 28, 2006, counsel for *Federal Insurance*, writing with the consent of *Burnett* counsel, concerning both defendants Salah and Sulayman, advised defendants' counsel that plaintiffs would consider vacating the defaults if the defendants would simply address satisfactorily the following limited number of issues that would shed some light on how it was possible that they had never learned they had been sued:

(1) Defendants' places of residence between the dates the Complaints were filed and the present;

(2) Defendants' physical location when the notices of the lawsuits were published in the *International Herald Tribune, Al Quds al Arabi* and *USA Today* newspapers;

(3) Any employment positions Defendants held between the dates the Complaints were filed and the present;

(4) Any positions Defendants held as an executive or member of the board of directors of any companies between the dates the Complaints were filed and the present;

(5) Whether Defendants have been in contact with any other parties named as defendants in any of the consolidated MDL cases since the date the Complaints were filed;

(6)  Whether Defendants have been in contact with counsel for any defendant in any of the consolidated cases since the Complaints were filed;

(7)  Whether Defendants were aware that any companies or organizations with which they were at one time affiliated had been named as defendants in any of the consolidated MDL cases;

(8)  Whether Defendants received any information regarding the pendency of any of the consolidated MDL cases, regardless of whether they were aware of their status as defendants in those cases;

(9)  The date on which Defendants first became aware of their status as defendants in any of the consolidated MDL cases; and

(10) The manner in which they first became aware of their status as defendants in any of the consolidated MDL cases.

See Exhibit B.

6. Despite their burden of explaining why they had not acted earlier, counsel for defendants rejected both opportunities to explain the defendants' failure to respond in a timely manner. Rather, they waited seven months from the date they first approached plaintiffs' counsel – months during which there is no dispute that they and their counsel were aware not only of the lawsuits, but of the default judgments – and finally, on February 21, 2007, filed their motions to vacate the default judgments entered against them.

7. Both Salah and Sulayman hold official positions with several of the other defendants in this litigation, several who are represented by the same lawyers now representing Salah and Sulaymen. More specifically, both Salah and Defendant Abdul Hamid Abu Sulayman are officers of the SAAR Foundation, whose Virginia offices were among those that the FBI and U.S. Custom's officials raided in March 2002 and from which seized records are reported to have revealed a pattern of multi-layered transactions that were designed to confuse law-enforcement authorities and keep them off the money trail. Of $54 million dollars raised by the SAAR Foundation ostensibly for "charity," $26 million went to the Isle of Man in the Irish Sea, a notorious location for drug runners and money laundering. Only $20 million made its way to SAFA Group charities. According

to David Kane, the federal agent who led the raid, SAAR/SAFA's intent was "to route money through hidden paths to terrorists, and to defraud the United States by impeding, importing, obstructing, and defeating the lawful functions of the IRS." *See* Exhibit C and D.

8. In addition, Salah is a founder and board member of, and Sulayman is also an officer of, Safa Trust (another client of defendants' counsel), another one of the Herndon, Virginia entities that the FBI raided in March 2002. Other co-officers of Safa Trust along with both defendants are defendants Jamal Barzinji, Yaqub Mirza, Ahmed Totonji, and Hisham al Talib, which are all also represented by the same counsel. Safa Trust shares the same address as the following entities that are or have been defendants in this litigation, African Muslim Agency, Grove Corporate, Mar-Jac Investments, Mena Corporation, Muslim World League, Reston Investments, Saar Foundation, Sanabel al Kheer, Sana-Bell, Inc., Sterling Management Group, and York Foundation. *See* Exhibits D, E, and F.

9. Defendant Salah has also been an officer for two entities that have been designated as terrorist organizations. Salah has been the treasurer for Taibah International, whose Bosnia branch has been designated by the U.S. Office of Foreign Asset Control ("OFAC") as a Specially Designated Global Terrorist ("SDGT") based on evidence that Taibah funneled money to al Qaida. *See* Exhibit C. Salah has also managed, been the treasurer for, and is reported to have helped establish Bank al Taqwa in the Bahamas, which is among those entities designated by OFAC as an SDGT. *See* Exhibits D and G. Furthermore, according to White House statements, "Bank al Taqwa has provided advice and cash transfer mechanisms for al-Qaida and other radical Islamic groups." *See* Exhibits D and F.

10. Salah is also an officer of Mar-Jac Investments, another defendant represented by the same counsel as defendants. Other co-officers of Mar-Jac Investments along with defendant Salah are defendants Yaqub Mirza and M. Omar Ashraf, who are also represented by the same counsel. Mar-Jac Investments shares the same address as the following entities that have been defendants in this litigation, African Muslim Agency, Grove Corporate, Mena Corporation, Muslim World League, Reston Investments, Saar Foundation, Safa Trust, Sanabel al Kheer, Sana-Bell, Inc., Sterling Management Group, and York Foundation. *See* Exhibit D.

11. Salah has also been a board member of Amana Mutual Funds with, among others, Iqbal Unus, Jamal Barzinji, and Yaqub Mirza, other defendants who have appeared in this litigation through the same counsel and have moved to dismiss, rather than having default judgments entered against them. According to the Amana Mutual 2004 and 2005 Prospectuses (filed with the SEC on August 18, 2004 and August 10, 2005), the audit committee, on which both Salah and Unus sat, held at least three meetings during those fiscal years. *See* Exhibit D

12. Defendant Sulayman is or was recently chairman of the board, president, trustee, and was a founding member of the Herndon, Virginia-based Defendant, International Institute of Islamic Thought ("IIIT"), which is also a DLA Piper client and one of the offices that the FBI and U.S. Customs officials raided in March 2002 and from which seized records are reported to have revealed a pattern of multi-layered transactions that were designed to confuse law-enforcement authorities and keep them off the money trail. *See* Exhibit D.

13. Defendant Sulayman is also an agent for York Foundation, another defendant in the litigation that is represented the same counsel as defendants Salah and Sulayman. York Foundation is yet other of the Herndon, Virginia entities that the FBI raided in March

2002 and which shares the same address as many of the other entities that have been defendants in this litigation. <u>See</u> Exhibits C and D.

14. Both of the defendants are represented by DLA Piper U.S. LLP – the same firm that represents the SAAR Foundation, Safa Trust, IIIT, Mar-Jac Investments, York Foundation, M. Omar Ashraf, Jamal Barzinji, M. Yaqub Mirza, Ahmed Totonji, and Iqbal Unus, as well as African Muslim Agency, Grove Corporate, Mena Corporation, Muslim World League, Reston Investments, Sanabel al Kheer, Sana-Bell, Inc., and Sterling Management Group – the very groups and individuals with which defendants are affiliated and/or with whom they hold executive or director positions. Attorneys from DLA Piper have represented this multitude of other defendants in this litigation since at least March 12, 2004, when they appeared for, *inter alia*, at least four entities on which these two defendant have held various official positions – including ITTT, Mar-Jac Investments, Safa Trust, and York Foundation – and at least five of both defendants' colleagues, M. Omar Ashraf, Jamal Barzinji, M. Yaqub Mirza, Ahmed Totonji, and Iqbal Unus.[1] <u>See</u> Exhibit D.

15. After the transfer and consolidation of these cases before this Court, the Plaintiffs requested, and this Court granted, an Order authorizing Plaintiffs to effectuate service by publication on defendants specified in the accompanying attachment "for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted or rejected or otherwise not responded to at an address that was discovered," MDL 1570 Docket No. 445. The Order required publication in three newspapers calculated to provide adequate notice to each of the defendants – namely, *USA Today*, the *International Herald Tribune*, and *Al-Quds Al-*

---

[1] On March 12, 2004, attorneys now with DLA Piper filed motions requesting *pro hac* admissions to represent these and other defendants, though at the time they were with the firm of Gray, Cary, Ware & Freidenrich LLP

*Arabi*. In addition to the *USA Today* being widely available in the United States, the story of this lawsuit being filed was picked up by many other media outlets in the United States. *Al-Quds Al-Arabi* has published several fatwas by Osama bin Laden and is therefore reasonably calculated to reach his supporters, regardless of where they live. Similarly, the *International Herald Tribune* is distributed in the world community, of which the defendants and their wide business interests are a part. Defendants Salim and Sulayman were among those listed to be served by publication and thus were among those whom the Court found could be properly served by this method. *See* MDL 1570 Docket No.445. Plaintiffs served both defendants Salah and Sulayman by publication in compliance with the Court's Order of September 15, 2004. *See* Exhibit A.

16. Defendant Salah's contention that he was amenable to ordinary service is belied by the fact that MDL plaintiffs counsel all had difficulty serving Mr. Salah, first because counsel had no address for him and then later because when service was attempted it was returned. Indeed, in a letter to the Court, dated April 15, 2004, plaintiffs' counsel in the *Ashton* case, provided a status report of service efforts by the MDL plaintiffs and explained that service packages were being sent to a number of defendants, including Salah (all MDL counsel of record were copied on that letter). *See* Exhibit H. That service package was eventually returned unopened, as well as a similar service package to defendant Taibah International Aid Association at the same address.

17. Attached hereto are true copies of the following referenced Exhibits:

   **A** – Order granting service via publication; proof of English publications, proof of Arabic publication;

   **B** – Letter dated September 28, 2006 from Sean Carter;

   **C** – Wall Street Journal Article: Report Links Charity to an Al Qaeda Front, September 20, 2002 (http://www.siteinstitute.org/bin/printerfriendly/pf.cgi) (accessed 3/1/2007);

**D** – Affidavit of David Kane, Senior Special Agent with the United Stares Customs Service ("USCS");

**E** – United States Treasury Department Press Release: Treasury Designates Bosnian Charities Funneling Dollars to Al Qaida, (http://treas.gov/press/releases/js1527.htm) (accessed 3/16/2007);

**F** – White House Press Release: Terrorist Financial Network Fact Sheet – Shutting Down the Terrorist Financial Network, (http://www.whitehouse.gov/news/releases/2001/11/print/20011107-6.html) (acced on 3/16/07);

**G** – OFAC, Notice of Recent OFAC Actions, November 11, 2001 (http://www.treas.gov/offices/enforcement/ofac/actions/20011107.shtml) (accessed 3/16/2007), and

**H** - Letter dated April 15, 2004 from Kriendler & Kriendler.

Dated: Charleston, South Carolina
March 16, 2007

_____
Robert T. Haefele, Esq.
NJ Bar No. 58293;  PA Bar No. 57937;
SC Bar No. 75266

Sworn to before me this 16th day of March, 2007

_____
Notary Public

My Commission Expires
October 13, 2009