# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

    *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
    *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## SAMIR SALAH'S MOTION TO VACATE DEFAULT JUDGMENTS

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
**DLA PIPER US LLP**
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:    202.223.2085

*Attorneys for Samir Salah*

Dated:    March 28, 2007

Samir Salah respectfully submits this reply memorandum of law in support of his motion,
pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), to vacate the default judgments
entered against him in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*,
("*Burnett*") and *Federal Insurance Co., et al. v. al Qaida, et al.*, ("*Federal Insurance*").[1]

## PRELIMINARY STATEMENT

In their opposition, Plaintiffs rely on factual misstatements, unfounded speculation,
irrelevant legal arguments and simply ignore five separate meritorious defenses that mandate that
the default judgments be vacated.

As Mr. Salah stated under oath, his default was not willful because he did not know that he
was a defendant in these two actions until *after the default judgments were entered.*  Plaintiffs
attempt to discredit Mr. Salah's statement, but other than self-serving speculation, they offer
nothing even to suggest that the publication notices provided Mr. Salah with actual notice that he
had been named as one of the hundreds of defendants in just two of the twenty cases in the MDL.
Now that he has actual notice of these actions, he has agreed to appear and defend the cases on the
merits, and he should be permitted to do so.

Plaintiffs' apparent reason for opposing Mr. Salah's motion is that it provides them with an
opportunity to obtain backdoor discovery.  Plaintiffs have argued that before the default judgments
may be vacated, Mr. Salah must first sit for a burdensome deposition during which they can ask
him a broad range of questions that have nothing whatsoever to do with whether he had notice of
these actions, such as his employment history and his alleged contacts and with relationships other

---

[1] Plaintiffs filed a joint opposition to the motions to vacate filed by Samir Salah and Abdul Hamid
Abu Sulayman in an apparent attempt to link them to each other.  However, because the issues
raised in the two motions are not identical and because Mr. Salah and Mr. Abu Sulayman filed
individual motions, they are also filing individual reply memoranda.

Defendants in this action.  There is no legal authority, none, for the wide ranging discovery

Plaintiffs seek.

Plaintiffs' opposition is without merit and the motion to vacate the default judgments

should be granted.

## ARGUMENT

## I.  THE DEFAULT JUDGMENTS SHOULD BE VACATED BECAUSE MR. SALAH'S DEFAULT WAS NOT WILLFUL

### A.    Mr. Salah's Default Was Not Willful

Plaintiffs argue that Mr. Salah's default should not be vacated because it was willful.

Specifically they argue:

> A party cannot simply ignore its obligation to file responsive
> pleadings.  Where a party ignores its obligation to file a responsive
> pleading, as the defendants have done here, the resulting defaults are
> willful.
>
> * * *
>
> the Defendants have steadfastly refused to offer any credible
> explanation for their failure to file any responsive pleadings; instead,
> they reason that the default judgments must be set aside because,
> they claim, incredibly and without support, they never knew about
> the litigation.

(Plaintiffs' Opp. at 12-13.)

But Plaintiffs' arguments side step the issue.  Mr. Salah did not "ignore" his obligation to

file responsive pleadings, rather, as he states in his sworn declaration, he could not possibly have

done so.  Had he been served and made a party, he could not have ignored the complaint.  But this

argument simply begs the question of whether he was a made a party by virtue of having been

served.  The answer is that he could not have.  He did not see the publication notice and did not

have actual notice that he was named as defendant in this lawsuit until after the default judgments

were entered.  Nor did Mr. Salah state that he "never knew about the litigation."  (Plaintiffs' Opp.

at 13.) That isn't the issue. What is relevant, and what Mr. Salah did state, is that he did not know that *he was named a defendant in the litigation* until after the default judgments were entered.

**B.    There Is No Reason To Question The**
**Credibility of Mr. Salah's Sworn Statement**

Stripped of its rhetoric, Plaintiffs' real argument is that they don't believe that Mr. Salah was unaware that he had been named as a defendant prior to issuance of the default judgments. Plaintiffs suggest that Mr. Salah's statement is not credible because (i) he has "longstanding relationships with a number of individual defendants and [is a] high ranking officer[] in certain corporate defendants in this litigation" and (ii) he is "represented by the very same law firm that represents" some of those defendants. (Plaintiffs' Opp. at 1.) But this is nothing more than rank speculation and to the extent it is an argument, it is either not (i) supported by declaration, (ii) not sufficiently specific to have any meaning, and (iii) based on the faulty assumption that DLA Piper US LLP ("DLA Piper") represented Mr. Salah at the time the complaint was filed and/or the notice appeared, and it finds no support in the law.

As an initial matter, the "facts" that Plaintiffs assert in support of this argument are vague, unsubstantiated and inaccurate. The only evidence supporting these alleged facts is a hearsay affidavit from *Burnett* Plaintiffs' counsel Robert Haefele, which does nothing to clarify the rather meaningless claims in the pleading.

Moreover, many of these "facts" are demonstrably false. For example, Mr. Haefele testifies that Mr. Salah *is* an *officer* of the Saar Foundation. (Haefele Affidavit at ¶ 7.) However, as is made clear in Exhibit C to his affidavit, the Saar Foundation "dissolved on December 20, 2000." (*Id.*, Exhibit C at 57.) Mr. Salah cannot possibly be an officer of a dissolved corporation. Moreover, Exhibit C lists three individuals who were the "officers and trustees" of the Saar Foundation, none of whom are Mr. Salah. (*Id.*) Moreover, Mr. Haefele states that Mr. Salah's

3

counsel, DLA Piper, represents Defendants Sanabel al Kheer and Sana-Bell, Inc.  (Haefele Aff. at

¶ 14.)  However, these Defendants are represented by Martin F. McMahon & Assocs., not DLA

Piper.  (*See* MDL Docket ## 1906, 1907.)

Even if Mr. Haefele's claims were true, they do not make it surprising that Mr. Salah --

who admittedly was not personally served with the complaint -- did not know that he had been

named as a defendant in this action.  As he stated, Mr. Salah has done nothing that could

conceivably make him liable to Plaintiffs.  Therefore, even if he generally had notice of the

lawsuit, it is as unreasonable as it is unlikely for him to have expected to be named as a defendant.

Nor is it reasonable to expect Mr. Salah to have waded through the mass of filings in this

case to determine his status.  This MDL is comprised of 20 separate actions, brought by thousands

of Plaintiffs against hundreds of Defendants, and each case contains numerous amended

complaints, each hundreds of pages long, not to mention the hundreds of supplemental filings,

More Definite Statements and RICO Statements filed by the various Plaintiffs. Mr. Salah is only

named as a defendant in two of twenty cases, and in one of those cases, *Burnett*, Plaintiffs did not

even name Mr. Salah as a Defendant in the complaint.  Rather, he was only added as a Defendant

through a January 3, 2005 notice filed on the ECF system.  (MDL Docket # 602.)   At times, it has

been difficult for the attorneys following the case on a daily basis to keep track of the proceedings.

It would be impossible for Mr. Salah to do so.

For these same reasons, it is unreasonable to expect one of Mr. Salah's co-defendants to

have known that Mr. Salah had been named as a defendant and advised him as such.  It is

immaterial that Mr. Salah's attorneys also represent other Defendants in this lawsuit; DLA Piper

did not represent Mr. Salah until after the default judgments were entered.  Plaintiffs have failed to

cite to a single authority even suggesting that DLA Piper's notice of the lawsuit prior to

representing Mr. Salah could constitute notice to Mr. Salah.

**C.      Plaintiffs Are Not Entitled To Mr. Salah's Deposition**

As previously noted, Plaintiffs argue that they should be permitted to take Mr. Salah's deposition before the Court vacates the default judgments.  (Plaintiffs' Opp. at 4-5; Haefele Affidavit at ¶ 5, Exhibit B.)  This is nothing more than Plaintiffs' improper attempt to parlay the defaults into a fishing expedition to obtain discovery from Mr. Salah concerning, among other things, his employment history and alleged relationship and contacts with other defendants in this action, that they would otherwise not be able to obtain.  None of the cases cited by Plaintiffs suggest, let alone hold, that any discovery -- much less the extensive and burdensome deposition proposed by Plaintiffs -- is appropriate.

For example, in *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995), the Court denied a defendant's motion to vacate a default judgment, but only because the defaulting party failed "to provide any explanation or any affidavits concerning the default." In *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986), the Court denied a motion to vacate, but only because the defaulting party "failed to demonstrate that it possessed a meritorious defense." In *Frost Belt Int'l Recording Enterprises, Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 135 (S.D.N.Y. 1990), the defaulting party not only failed to provide a meritorious defenses, but the evidence also showed that it had been served with a complaint via hand delivery and still failed to answer. In *Atlantic Steamers Supply Co. v. Int'l Maritime Supplies, Co.*, 268 F. Supp. 1009 (S.D.N.Y. 1967), the court found that the conclusory affidavit submitted by the defaulting party's attorney failed to establish a meritorious defense.

Mr. Salah's case stands in stark contrast to each of the cases relied upon by Plaintiffs.  He not only has met his burden of establishing that his default was not willful, but also, as detailed below, he presents five meritorious defenses.  None of Plaintiffs' cited cases stands for the

remarkable proposition that he may not have his default vacated until after he has sat for a deposition.

### D.    Mr. Salah's Default Was Not a Litigation Tactic

Plaintiffs also argue, without foundation, that Mr. Salah willfully went into default as a litigation tactic to delay resolution of this action.  (Plaintiffs' Opp. at 14-15.)  But this argument is as illogical as it is without factual support.  If Mr. Salah knew that he had been named as a defendant, as Plaintiffs suggest, what rationale would he have had for waiting until *after the defaults* were entered to appear in the actions?  It would have been in his best interest to move to dismiss the cases as soon as possible -- just as the 13 so-called "SAAR Network" defendants with whom Plaintiffs allege Mr. Salah is associated have done -- and the claims against him would have been dismissed as theirs have been.  He clearly would have benefited from earlier notice of this complaint. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572 (S.D.N.Y. 2005).

Plaintiffs also complain of the "seven month delay between the time they first approached Plaintiffs' counsel . . . and when they ultimately filed the motions."  (Plaintiffs' Opp. at 14.) [2]  But this argument sidesteps the fact that during that time, Mr. Salah's counsel was attempting to resolve this dispute consensually without need for the Court's intervention. (*See* Haefele Aff. at ¶¶ 4-5.)  Indeed, he offered to appear and to defend the cases on the merits.  It was Plaintiffs who refused this offer and demanded to take Mr. Salah's deposition; had they agreed to accept his offer months ago, his motion to dismiss already would have been fully briefed. [3]

---

[2] Ironically, although Plaintiffs accuse Mr. Salah of delay, it is Plaintiff that failed to comply with the briefing schedule negotiated by the parties.  Plaintiffs' opposition to the motion to vacate was due by Friday March 16, 2007.  However, it was not filed on the Court's ECF system until March 17, 2007.

[3] For this same reason, Plaintiffs' claim of prejudice is unfounded.  (Plaintiffs' Opp. at 16.)

## II.   PLAINTIFFS' CONCEDE THAT MR. SALAH HAS MERITORIOUS DEFENSES

The default judgments should be vacated for the additional reason that Mr. Salah has no less than five defenses on the merits of the cases, all of which Plaintiffs either concede or fail to address adequately in their Opposition.

### A.   Service By Publication Was Improper

Service by publication is only appropriate "where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible." *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987)  But service by publication is improper where, as is the case here, a defendant's address can be obtained with reasonable diligence. *Id.* at 1094.

Plaintiffs have submitted no evidence that they made any effort, much less a reasonable effort, to obtain Mr. Salah's address and personally serve him prior to seeking to serve him by publication.  Rather, Plaintiffs rely on efforts made by the Plaintiffs in *Ashton, who are not parties to this motion*, who tried to serve Mr. Salah.[4]  But even that letter does not show diligent efforts to serve Mr. Salah.  Rather, it simply shows that in April 2004, a copy of the *Ashton* complaint was "sent" through some unspecified means, not to Mr. Salah's home,  but instead to the Taibah International Aid Association.[5]

Plaintiffs admit that the copy was not received by Mr. Salah, and they have failed to offer any evidence that a complaint sent to the Taibah International Aid Association was reasonably calculated to provide Mr. Salah notice of this action.  Plaintiffs have offered no evidence of any efforts they took to obtain Mr. Salah's home address here in the United States or to serve him at that address – leading to the inescapable conclusion that there were none.

---

[4] That letter, referenced as Exhibit H to the Affidavit of Robert Haefele, was not attached to the copy of the affidavit filed on the ECF system.  For the Court's convenience a copy is attached hereto as Exhibit A.

[5] Notably, in that same letter, the *Ashton* Plaintiffs agreed to voluntarily dismiss Mr. Salah.

As Plaintiffs failed to make any effort whatsoever to serve Mr. Salah, much less a diligent effort, prior to service by publication, the Court should not have authorized the service by publication and the default judgment should be vacated.[6]

**B.      The *Burnett* Plaintiffs Failed to Comply with the Publication Order**

The *Burnett* default judgment also should be vacated because the *Burnett* Plaintiffs failed to comply with the Court's publication Order.  Pursuant to that Order, Plaintiffs were required to publish "*once per week for four consecutive weeks* in the *International Herald Tribune, USA Today*, and at least one Arabic language newspaper circulated widely in the Middle East." (emphasis added) (MDL Pub. Order, 03-MDL-1570, Docket # 445.)

Publication of the notices began on December 22, 2004.  However, the *Burnett* Plaintiffs did not even add Mr. Salah as a defendant in that action until January 3, 2005 – *after the first two publications occurred*.  Because the *Burnett* Plaintiffs did not add Mr. Salah as Defendant until the middle of the publication period, Plaintiffs failed to comply with the publication order that required four consecutive weeks of publication.

Plaintiffs concede that they failed to comply with the publication order as it is not even addressed in their Opposition.

**C.      The Default Judgments May Lead To Inconsistent
           Judgments Between Similarly Situated Defendants**

The default judgments against Mr. Salah also should be vacated because they may result in inconsistent judgments between similarly situated parties in this multi-defendant case.  *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB), 2002 WL 31545845, *4 (S.D.N.Y. Nov. 13, 2002); *Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573, *1 (N.D. Ill. Oct. 24,

---

[6] Plaintiffs also raise the irrelevant argument that service by publication was reasonably calculated to give Mr. Salah constructive notice of the case.  (Plaintiffs' Opp. at 18-19.)  But, now that Mr. Salah has *actual notice* of the case and has agreed to appear, the issue of constructive notice is irrelevant.

2002) ("[D]efault judgment is not appropriate if it would result in inconsistency among judgments of multiple defendants.").

Again, Plaintiffs appear to concede this point.

### D.    Entry Of The Default Judgments Was Premature

The default judgments also should be vacated because Federal Rule of Civil Procedure 55 requires a party seeking a default judgment to follow a two-step process.  "The first step is to obtain a default" from the clerk of the court in accordance with Rule 55(a).  *Green*, 420 F.3d at 104.  *After* the clerk of the court enters default, a plaintiff can take the second step and move for default judgment under Rule 55(b).  *See Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004 WL 912916, * 1 (W.D.N.Y. Apr. 1, 2004) ("First, a party moving for default judgment must obtain an Entry of Default from the Clerk of the Court pursuant to FRCvP 55(a), and second, the moving party must seek a default judgment . . . as set forth in FRCvP 55(b).")

Here, the judgments should be vacated because they were granted by the Court on April 7, 2006, prior to the Clerk's entry of default on April 14, 2006.  Again, Plaintiffs concede this point as it is not addressed in their Opposition.

### E.    The Defaults Should Be Vacated Because the
### Complaints Fail to State Claims Against Mr. Salah

The default judgments also should be vacated because Plaintiffs fail to plead sufficient bases for recovery.  *See Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL 22113, at *6 (S.D.N.Y. Jan. 25 1993) (finding complaint's deficient pleadings as grounds to vacate default judgment); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL 1205762, at *5 (E.D.N.Y. Apr. 29, 2004) ("[A] defendant's default does not in itself warrant a court in entering default judgment [because] there must be a sufficient basis in the pleadings for the judgment entered.").

Plaintiffs' Opposition makes no new factual allegations and fails even to attempt to explain how the allegations in their complaints could conceivable be construed to have alleged that Mr. Salah knowingly and intentionally provided material support to al Qaeda. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005) (emphasis added).

<u>**CONCLUSION**</u>

For these reasons, Mr. Salah respectfully requests that the Court vacate the default judgments entered against him.

Respectfully submitted,

**DLA PIPER US LLP**

/s/  Nancy Luque
Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:     202.861.3900
Facsimile:      202.223.2085

March 28 2007                    *Attorneys for Samir Salah*

# EXHIBIT A

Harry E. Kreindler (1919 - 1984)
Lee S. Kreindler (1949 - 2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beckman
Blanca I. Rodriguez
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Gretchen M. Nelson*
Stuart R. Fraenkel*

Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
Andrew J. Maloney, III
    Counsel

**KREINDLER & KREINDLER** LLP
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com
writer's email:



Susan A. Friery, M.D.**
Daniel O. Rose
Jacqueline M. James
Brendan S. Maher
Susan D. Brainson
Dennis J. Nolan
Myrna Ocasio
Vincent Parrett

California Office
707 Wilshire Boulevard
Suite 5070
Los Angeles, CA 90017-3613
(213)622-6469
Fax:(213)622-6010

*Admitted in CA only
**Admitted in MA & DC only

April 15, 2004

**By Hand**
Honorable Richard C. Casey
United States District Court
Southern District of New York
500 Pearl Street - Room 1950
New York, New York 10007

Re:  **MDL 1570**
     **Ashton, et al v. Al Qaeda, et al.**
     **02 CV 6977 (RCC)**

**Status Report on Servi ce**

Dear Judge Casey:

As of today the following defendants have accepted service of process:

            Ahmad Idris Nasreddin
            Al-Mustagbal
            American Gold and Diamond Holdings
            Islamic Relief Organization
            Mar Jac Poultry
            Mountaineer Farms
            Saudi Bin Laden Group
            Yasin Al-Qadi
            Prince Mohamed
            Al Rajhi Banking & Commerce
            National Commercial Bank
            Saudi American Bank

Page 2

International Institute for Islamic Thought (IIIT)

Mar-Jac Poultry Inc.
Muslim World League
Abdullah Bin Mushan Al Turki
Rabita Trust
Adnan Basha
Wa'el Jalaidan
Islamic International Relief Organization (IIRO)
Al Baraka Investment & Development Corp.;
Dallah Al Baraka Group
Saleh Abdullah Kamel
Omar Abdullah Kamel

We were recently advised that

Prince Sultan Bin Abdulaziz Al-Saud
Prince Turki Al-Faisal Bin Abdulaziz Al-Saud
Prince Nayef Bin Abdulaziz Al Saud
Prince Salman Ibn Abdul Aziz

would accept service at the Office of Foreign Ministry in Riyadh.   Accordingly, complaints in English and Arabic were Federal Expressed on April 2, 2004.  Fed Express records show that they were delivered and accepted in Riyadh on April 6 and 7, 2004.

Last year we served an English and Arabic version of the Ashton complaint to the last known address for defendants listed below, by certified mail, (return receipt requested) and received NO responses:

Somali International Relief Organization
Rabih Haddad
Global Diamond Resources Inc.
SNCB Securities Inc.
Khalid Bin Mafouz, Prince Sultan Rehabilitation Centre
Mercy International
AlGammaah Al Islamiah
Ali Ghaleb Himmat
Ali Yusaf Ahmed
Somali Network AB
World Association of Muslim Youth
Ahmed Nur Ali Jim'Ale
Wafa Humanitarian Organization
Faisal Islama Bank of Egypt
Abdullah Al-Obaid
Al Khaleejia for Promotion
Jamal Barzingi
Prince Sultan Bin Abdulaziz

Page 3

Public Investment Fund
Somali Internet Somalinet
Taba Investments
Ibn Raz
Al-Haramian Charitable Foundation
Sterling Management Group, Inc.
National Development Bank
Mercy Corps
Mercy International - U.S.A.
Ibrahim Bin Abdul Aziz
Bahareth Organization
New Diamond Corporation
Badkook Corp.
Al-Mustaqbal Group/NMCC
Al-Watania Poultry
Advice and Reformation Committee
Norah Niland
Khalid Bin Mahfouz
International Islamic Relief Organization

Another comprehensive search of addresses was performed an additional first class
mailing was performed on April 2, 5 and 6, 2004 on the following defendants:

Sheikh Omar Bakri Muhammad
Mamoun Darkazanli
Bensayah Belkacem
Faisal Islamic Bank
Al Rashid Trust
Al-Barakaat Group of Companies Somalia Limited
Barakaat Group of Companies
Benevolence International Foundation, Inc.
Global Relief Foundation, Inc.
Islamic Cultural Institute of Milan
Mohamed Mansour
Mohammed Jamal Khalifa
Mohammed Salim Bin Mahfouz
Mufti Mohammed Rashid a/k/a Rashid
Saudi Sudanese Bank
Al Shamal Islamic Bank
Sheik Adel Galil Batterjee
Suleiman Abdel Aziz Al Rajhi
Wafa Humanitarian Organization
Saudi Dallah Al Baraka Group LLC.
Islamic Investment Company of the Gulf
Dar-Al-Maal Al Islami
Mohammad S. Mohammad
Muhammed Galeb Kalaje Zouaydi
Arafat El-Asahi

Page 4

Haydar Mohamed Bin Laden
Mohammed Bin Abdul Rahman Al Ariefy
Faisal Group Holding Co.
Alfaisaliah Group
Mushayt for Trading Establishment
Abdullah Bin Abdul Muhsen Al Turki
Saudi High Commission for Relief of Bosnia and
    Herzegovina Saudi Foreign Ministry - Tarek Ayoubi
Mercy International Relief Agency
Bakr M Bin Laden
Saleh Gazaz
Mohammed Bahareth
Abdullah Bin Said
Mohammed Nur Rahimi
Tarek M. Bin Laden
Omar M. Bin Laden
Saleh Mohamed Bin Laden
Saudi Bin Laden International Company
Yeslam M. Bin Laden
Talal Mohammed Badkook
Mohaman Ali Elgari
New Diamond Holdings
M.M. Badkook Co. For Catering & Trading
National Management Consultancy Center
Al-Rajhi Banking & Investment Corporation
Saleh Abdulaziz Al-Rajhi
Abdullah Sulaiman Al-Rajhi
Khalid Sulaiman Al-Rajhi
Sulaiman Abdul Aziz Al-Rajhi
Al-Watania Poultry
Piedmont Poultry
SNCB Corporate Finance Ltd.
SNCB Securities Ltd. In London
Saudi Economic and Development Company
Saudi Arabian Red Crescent Committee
Khaled Yusuf Abdullah
Hisham Amanout
Benevolence International Foundation - U.S.A.
Benevolence International Foundation – Canada
Benevolence International Fund
Syed Suleman Ahmer
Mazin M.H. Bahareth
Shahir Abdulraoof Batterjee
Muzaffar Khan
Soliman J. Khudeira
Jamal Nyrabeh
Success Foundation
American Muslim Foundation

Page 5

Mohammed Omeish
Mahmoud Jaballah
Mohammed Khatib
Saudi Joint Relief Committee for Bosnia
Taibah International Aid Association
Islamic African Relief Agency
Tarik Hamdi
Fazeh Ahed
Sanabil Al-Khair
Khaled Nouri
Abdullah M. Al-Mahdi
Tareq M. Al-Swaidan
Abdul Al-Moslah
Salah Badahdh
Hassan A.A. Bahfzallah
Samir Salah
Ibrahim Hassabella
Ahmed Totonji
Hisham Al-Talib
Mohammed Jaghlit
Sherif Sedky
Aradi, Inc.
Reston Investments, Inc.
Safa Trust
Sterling Charitable Gift Fund
Sterling Management Group
York Foundation
National Development Bank
Dallah Avco Trans Arabia Co. Ltd.
Omar Al Bayoumi
Al Aqsa Islamic Bank
Aqeel Al-Aqeel
Mansour Al-Kadi
Soliman H.S. Al-Buthe
Perouz Seda Ghaty
Adel Muhammad Sadiq Bin Kazem
Saudi American Bank
Khalil A. Kordi
Rashid M. Al Romaizan
Abdulaziz Bin Hamad Al Gosaibi
Saudi Cement Company
Omar Sulaiman Al-Rajhi
Arabian Cement Company
Mohammed Chehade
Hazem Ragab
Foundation Secours Mondial
International Development Foundation
Sulaiman Al-Ali

Page 6

International Limited a/k/a Iksir International Bank Limited
Akida Commodity Limited
Akida Investment Company Limited
Akida Management and Trust a/k/a Akida
  Islamic Bankers' Trustee and Management
Al Taqwa Trade Property and Industry Company Limited,
  a/k/a Al Taqwa Trade Property and Industry Establishment,
  a/k/a Himmat Establishment
Al Taqwa Zaka Establishment
Armand Albert Friedrich Huber a/k/a Ahmed Huber
Asat Trust Registered
Ba Taqwa for Commerce and Real Estate Company Limited
  A/k/a Ba Taqwa for Commerce and Real Estate
  Establishment, a/k/a Ben M. Nada Establishment
Bank Al Taqwa Limited, a/k/a Al Taqwa Bank
Cemsteel Impex Establishment
Gulf Center S.R.L.
Iksir Limited Holding
Miga – Malaysian Swiss, Gulf and African Chamber,
  a/k/a Camera Di Commercio, Industria E Turismo per Gli
  Stati Arabi Del Golfo E La Svizzera
Nada International Anstalt, a/k/a Nada Group International Anstalt
Nada Management Organization SA, a/k/a Al Taqwa Management Organization
Nasco Business Residence Center Sas Di Nasreddin Ahmed Idris Ed
Nasco Nasreddin Holding SA
Nascoservice S.R.L.
Nascotex S.A., a/k/a Industrie Generale De Filature et Tissage,
  a/k/a Industrie Generale De Textile
Nasreddin Charitable Foundation
Nasreddin Company Nasco Sas Di Ahmed
  Idris Nassneddin EC
Nasreddin Group International Holding Limited
Nasreddin International Group Limited Holding a/k/a
  Middle East and Turkey Investment Holding Limited
Youssef Mustafa Nada
Youssef M. Nada Establishment
Youssef M. Nada & Co. Gesellschaft MBH
Zeinab Mansour a/k/a Zeinab Mansour Fattouh

To date, the following mailings were recently rejected:

        Benevolence International Foundation - U.S.A.
        Benevolence International Foundation, Inc.
        Global Relief Foundation, Inc.
        Hazem Ragab
        Ibrahim Hassabella
        Mohammed Chehade
        Mohammed Jaghlit

Page 7

Piedmont Poultry

We recently received return receipts evidencing service from the following:

> Ahmed Totonji
> Aradi, Inc.
> Hisham Al-Talib
> Islamic African Relief Agency
> Islamic Society of North America
> North American Islamic Trust
> Reston Investments, Inc.
> Safa Trust
> Sterling Charitable Gift Fund
> Sterling Management Group
> Tarik Hamdi
> York Foundation

I further spoke at length on several occasions with Nancy Dutton of Dutton & Dutton (counsel to the Saudi Embassy in Washington, D.C.) in an effort to confirm or obtain addresses for various Saudi defendants. To date she has been unable to provide or confirm any of the addresses for Saudi defendants beyond the four Saudi Princes mentioned above.

The following defendants have appeared in the Burnett action but have refused to accept service in Ashton:

> Prince Abdullah Al Faisal Bin Abdulaziz Al Saud
>   (Prince Abdullah) not employed by the Gov't
> Muslim World League
> Dr. Soliman J. Khudeira
> Al Haramain Islamic Foundation, Inc.
> Abdul Rahman Alamoundi
> Grove Corporate, Inc.;
> Heritage Education Trust;
> Mar-Jac Investments, Inc.;
> Reston Investments, Inc.;
> SAFA Trust;
> York Foundation

> African Muslim Agency; Sterling Management Group; Sterling Charitable Gift Fund; Sanabel Al-Kheer Inc.; Mena Investments; Sana-Bel Inc.; Jamal Barzinji; Iqbal Unus (Yunus); Muhammed Ashraf; M. Omar Ashraf; Taha Jaber Al-Awani; M. Yaqub Mirza

> Enaam Arnout and Benevolence
> International Foundation ("BIF")

> Zacarias Moussaoui

Page 8

### Yousef Jameel and Yassin Abdullah Al Kadi

The Ashton plaintiffs propose that these defendants who have appeared in Burnett, share a portion of the cost to serve them as contemplated in Rule 4(d)(2)(g) (albeit the rule normally applies only to domestic defendants).

At this point the Ashton plaintiffs have exhausted all good faith means to serve defendants by traditional methods and would, pursuant to the previous order of the Court, propose to move to publication against any defendant who has not appeared with or without counsel and has not otherwise challenged service.

In addition, the Ashton plaintiffs have, during the course of our continuing investigation have been working to narrow the focus of our suit and have decided to voluntarily dismiss, without prejudice (and will file a motion to dismiss next week), for the following defendants:

ESTATE OF MUHAMMAD ATEF
ABDULLAH AHMED ABDULLAH
ESTATE OF ABU HAFS a/k/a Khaled Al Shanguiti,
  a/k/a Mafuz Ould Al Walid, "THE MAURITANIAN"
ESTATE OF ABU SALAH AL-YEMENI
ESTATE OF ABU JAFFER AL-JAZIRI
  a/k/a OMAR CHEBBANI
MUHSIN MUSA MATWALLI ATWAH
ANAS AL LIBY
FAZUL ABDULLAH MOHAMMED
AHMED MOHAMED HAMED ALI
MOHAMED SULEIMAN AL NALFI
MUSTAFA MOHAMED FADHIL
AHMED KHALFAN GHAILANI
FAHID MOHAMMED ALLY MSALAM
SHEIKH AHMED SALIM SWEDAN
FATHA ADBUL RAHMAN
YASSER AL-AZZANI
JAMAL BAKHORSH
AHMAD AL-SHINNI
ABU ABDUL RAHMAN
ABU SAYEF GROUP (ASG)
JEMAAH ISLAMIYA a/k/a Jam'yah Ta'awun Al Islamia
ALGERIAN ARMED ISLAMIC GROUP (GIA)
EGYPTIAN GAMA'A AL-ISLAMIYA

**Co-Conspirators**

ABD AL-MUSHIN AL-LIBI
ABDUL RAHMAN YASIN
ABDULLA AL OBAID
ADVICE AND REFORMATION COMMITTEE
AFGHAN SUPPORT COMMITTEE (ASC)
AHMED NUR ALI JUMALE a/k/a Ahmed Nur Ali Jim'ale
AL KHALEEJIA FOR EXPERT PROMOTION AND MARKETING COMPANY
AL-BARAKAAT GROUP OF COMPANIES SOMALIA LIMITED

Page 9

BARAKAAT GROUP OF COMPANIES
AL-GAMMAAH AL ISLAMIAH
ISLAMIC ARMY FOR THE LIBERATION OF HOLY PLACES
ISLAMIC CULTURAL INSTITUTE OF MILAN
ISLAMIC RESCUE ORGANIZATION
MOHAMMED SALIM BIN MAHFOUZ
MUHAMMAD SALAH,
RABIH HADDAH
SAFIQ AYADI
SAUDI SUDANESE BANK
SHEIKH ABU ABDUL AZIZ NAGI
TABA INVESTMENTS
TANZANITE KING
ULEMA UNION OF AFGHANISTAN
WADI AL AQIQ
WAFA HUMANITARIAN ORGANIZATION
WORLD ASSEMBLY OF ISLAMIC YOUTH
YOUSAF AHMED ALI
INFOCUS TECH OF MALAYSIA
YAZID SUFAAT OF KUALA LUMPUR MALAYSIA;
AL-SHAYKH AL-IRAQI
ABU HAJER AL IRAQI
SAUDI DALLAH AL BARAKA GROUP LLC.
AL BARAKA INVESTMENT AND DEVELOPMENT
ISLAMIC INVESTMENT COMPANY OF THE GULF
MOHAMMAD S. MOHAMMAD
NATIONAL ISLAMIC FRONT PARTY
MAMDOUH MAHMUD SALIM
MUSTASIM ABDEL-RAHIM
ABDEL WAHAB OSMAN
SUDANESE GOVERNMENT OF NORTHERN STATE
NATIONAL FUND FOR SOCIAL INSURANCE
RAHMAN ABDUL SIRAL-KHATIM
ABDUL-RAHIM MOHAMMED HUSSEIN
AL AMN AL-DAKHILI
AL AMN AL-KHARIJI
ABD AL SAMAD AL-TA'ISH
MOHAMED SADEEK ODEH
ABDEL BARRY
AHMED THE GERMAN
IRAQI SECRET SERVICE
MOHAMMED SARKAWI
AL TAWHID
HAJI MOHAMAD AKRAM
UMAR FARUQ
IBN SHEIK AL-LIBI
MULLAH KREKAR
ABDULAZIS BIN ABDUL RAHMAN AL SAUD
ARAFAT EL-ASAHI
MOHAMMED BIN ABDUL RAHMAN AL ARIEFY
FAISAL GROUP HOLDING CO.
BASHSH HOSPITAL

Page 10

MUSHAYT FOR TRADING ESTABLISHMENT
HELP AFRICAN PEOPLE
MERCY INTERNATIONAL RELIEF AGENCY
ISLAMIC MOVEMENT OF UZBEKISTAN (IMU)
SAUDI BIN LADEN INTERNATIONAL COMPANY
TALAL MOHAMMED BADKOOK
MOHAMAN ALI ELGARI
M.M. BADKOOK CO. FOR CATERING & TRADING
AL-MUSTAQBAL GROUP
NATIONAL MANAGEMENT CONSULTANCY CENTER (NMCC)
AL-WATANIA POULTRY
SAUDI ECONOMIC AND DEVELOPMENT COMPANY
ZAKAT COMMITTEE
ABDULKARIM KHALED UUSUF ABDULLAH
HISHAM (BROTHER OF ENAAM ARNANOUT)
SAIF AL ISLAM EL MASRY
BENEVOLENCE INTERNATIONAL FOUNDATION - U.S.A.
BENEVOLENCE INTERNATIONAL FOUNDATION - CANADA
BENEVOLENCE INTERNATIONAL FUND
SYED SULEMAN AHMER
MUZAFFAR KHAN
SOLIMAN J. KHUDEIRA
JAMAL NYRABEH
AMERICAN MUSLIM FOUNDATION (AMF)
MOHAMMED OMEISH
MAHMOUD JABALLAH
ARAFAT EL-ASHI
MORO ISLAMIC LIBERATION FRONT (MILF)
MAHMOUD JABALLAH
MOHAMMED KHATIB
ISLAMIC AFRICAN RELIEF AGENCY
FAZEH AHED
KHALED NOURI
ABDULLAH M. AL-MAHDI
TAREQ M. AL-SWAIDAN
ABDUL AL-MOSLAH
IHAB ALI
SAMIR SALAH
IBRAHIM HASSABELLA
ABU SULAYMAN
AFRICAN MUSLIM AGENCY
HERITAGE EDUCATION TRUST
MENA CORPORATION
RESTON INVESTMENTS, INC.
STERLING CHARITABLE GIFT FUND
STERLING MANAGEMENT GROUP
YORK FOUNDATION
NATIONAL DEVELOPMENT BANK
AHMED IBRAHIM AL NAJJAR
SAUDI CEMENT COMPANY IN DAMMAN
ARAB CEMENT COMPANY
MOHAMMED CHEHADE

Page 11

HAZEM RAGAB
MOHAMMED ALCHURBAJI
MUSTAFA AL-KADIR
ABU AL-MAID
THIRWAT SHIHATA
ISLAMIC ARMY OF ADEN
MOHAMMED IQBAL ABDURRAHMAN a/k/a ABNU JIBRIL
FOUNDATION SECOURS MONDIAL
ABDELKADIR MAHMOUD ES SAYED
KHALID AL FAWAZ
ABU HAMZA AL MASRI
MOHAMED BEN BELGACEM AOUADI
MOKHTAR BOUCHOUCHA
TAREK CHARAABI
SAMI BEN KHEMAIS ESSID
LASED BEN HENI
SALAFIST GROUP FOR CALL AND COMBAT
AL-HAMATI SWEETS BAKERIES
AL-HUR HONEY PRESS SHOPS a/k/a AL-NUR HONEY CENTER
AL SHIFA' HONEY PRESS FOR INDUSTRY AND COMMERCE
SAQAR AL JADAWI
AHMAD IBRAHIM AL-MUGHASSIL
AL ITIHAAD AL ISLAMIYA (AIAI)
AMIN AL HAQ a/k/a MUHAMMAD AMIN a/k/a AMIN UL HAQ
ANSAR AL ISLAM a/k/a JUND AL ISLAM
AHMAD SA'ID AL KADR
ABDUL AZIZ AL IBRAHIM (or "AL IBRAHIM")
INTERNATIONAL DEVELOPMENT FOUNDATION
AKIDA COMMODITY LIMITED
AKIDA INVESTMENT COMPANY LIMITED
AKIDA MANAGEMENT AND TRUST a/k/a/AKIDA ISLAMIC
   BANKERS' TRUSTEE AND MANAGEMENT
ALI HIMMAT
AL TAQWA TRADE PROPERTY AND INDUSTRY COMPANY LIMITED,
   a/k/a AL TAQWA TRADE PROPERTY AND INDUSTRY
ESTABLISHMENT, a/k/a HIMMAT ESTABLISHMENT
AL TAQWA ZAKA ESTABLISHMENT
BA TAQWA FOR COMMERCE AND REAL ESTATE COMPANY LIMITED,
   a/k/a BA TAQWA FOR COMMERCE AND REAL ESTATE
   ESTABLISHMENT; a/k/a BEN M. NADA ESTABLSIHMENT, a/k/a
YOUSSEF M. NADA ESTABLISHMENT
CEMSTEEL IMPEX ESTABLSIHMENT
GULF CENTER S.R.L.
IKSIR LIMITED HOLDING
MIGA – MALAYSIAN SWISS, GULF AND AFRICAN CHAMBER,
   a/k/a CAMERA DI COMMERCIO, INDUSTRIA E TURISMO PER GLI
   STATI ARABI DEL GOLFO E LA SVIZZERA
MOHAMED MANSOUR, a/k/a MOHAMED AL-MANSOUR
NADA INTERNATIONAL ANSTALT, a/k/a NADA GROUP
   INTERNATIONAL ANSTALT
NASCO BUSINESS RESIDENCE CENTER SAS
   DI NASREDDIN AHMED IDRIS ED

Page 12

NASCOSERVICE S.R.L.
NASCOTEX S.A., a/k/a INDUSTRIE GENERALE DE FILATURE ET
    TISSAGE, A/K/A INDUSTRIE GENERALE DE TEXTILE
NASREDDIN CHARITABLE FOUNDATION
NASREDDIN COMPANY NASCO SAS DI AHMED
    IDRIS NASSNEDDIN EC
NASREDDIN FOUNDATION, a/k/a NASREDDIN STIFTUNG
NASREDDIN GROUP INTERNATIONAL HOLDING LIMITED
NASREDDIN INTERNATIONAL GROUP LIMITED HOLDING a/k/a
    MIDDLE EAST AND TURKEY INVESTMENT HOLDING LIMITED
RAW MAT SERVICE AND MANAGEMENT SA
YOUSSEF M. NADA ESTABLISHMENT,
    a/k/a YOUSSEF M. NADA ANSTALT
YOUSSEF M. NADA & CO. GESELLSCHAFT MBH
AL TIKRITI, BARZAN IBRAHIM
ISLAMIC CENTER OF TUCSON
ISLAMIC SOCIETY OF NORTH AMERICA
ISMAIL, HAQI
NORTH AMERICAN ISLAMIC TRUST
SOCIETY OF ISLAMIC COOPERATION (Afghanistan)

Finally, only the International Tribune has agreed to publish the notice of our lawsuit in the Middle East and Europe. Ashton plaintiffs propose making one final attempt to obtain an agreement from other news sources who publish in the Middle East (and document our efforts for the Court) before publishing in only the Tribune and the website in order to complete all outstanding service.

Respectfully submitted,

By _____ s/ _____

James P. Kreindler
Marc S. Moller
Justin T. Green
Andrew J. Maloney III

cc:    MDL 1570 counsel

146688
vi

## **Certificate of Service**

I hereby certify that on this 28th day of March, 2007, I caused an electronic copy of Samir Salah's Reply Memorandum of Law in Support of Motion To Vacate Default Judgments to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)