IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 ) ) ) | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Euro Brokers, Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*World Trade Ctr. Prop., LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

# REPLY MEMORANDUM OF LAW IN SUPPORT OF ABDUL HAMID ABU SULAYMAN'S MOTION TO VACATE DEFAULT JUDGMENTS

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
**DLA PIPER US LLP**
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:     202.223.2085

*Attorneys for Abdul Hamid Abu Sulayman*

Dated:    March 28, 2007

Abdul Hamid Abu Sulayman respectfully submits this reply memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), to vacate the default judgments entered against him in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*, ("*Burnett*"), *Euro Brokers, Inc. v. Al Baraka Inv. & Dev. Corp.*, ("*Euro Brokers*") and *World Trade Ctr. Prop., LLC v. Al Baraka Inv. & Dev. Corp.* ("*World Trade Center*").[1]

## PRELIMINARY STATEMENT

In their opposition, Plaintiffs rely on factual misstatements, unfounded speculation, irrelevant legal arguments and simply ignore four separate meritorious defenses that mandate that the default judgments be vacated.

As Mr. Abu Sulayman stated under oath, his default was not willful because he did not know that he was a defendant in these two actions until *after the default judgments were entered.* Plaintiffs attempt to discredit Mr. Abu Sulayman's statement, but other than self-serving speculation, they offer nothing even to suggest that the publication notices – which only identified Abu Sulayman not Abdul Hamid Abu Sulayman -- provided Mr. Abu Sulayman with even constructive notice, much less actual notice that he had been named as one of the hundreds of defendants in just three of the twenty cases in the MDL. Now that he has actual notice of these actions, he has agreed to appear and defend the cases on the merits, and he should be permitted to do so.

Plaintiffs' apparent reason for opposing Mr. Abu Sulayman's motion is that it provides them with an opportunity to obtain backdoor discovery. Plaintiffs have argued that before the default judgments may be vacated, Mr. Abu Sulayman must first sit for a burdensome deposition

---

[1] Plaintiffs filed a joint opposition to the motions to vacate filed by Samir Salah and Abdul Hamid Abu Sulayman, in an apparent attempt to link them to each other. However, because the issues raised in the two motions are not identical and because Mr. Salah and Mr. Abu Sulayman filed individual motions, they are also filing individual reply memoranda.

during which they can ask him a broad range of questions that have nothing whatsoever to do with whether he had notice of these actions, such as his employment history and his alleged contacts and relationships with other Defendants in this action. There is no legal authority, none, for the wide ranging discovery Plaintiffs seek.

Plaintiffs' opposition is without merit and the motion to vacate the default judgments should be granted.

## ARGUMENT

### I. THE DEFAULT JUDGMENTS SHOULD BE VACATED BECAUSE MR. ABU SULAYMAN'S DEFAULT WAS NOT WILLFUL

#### A. Mr. Abu Sulayman's Default Was Not Willful

Plaintiffs argue that Mr. Abu Sulayman's default should not be vacated because it was willful. Specifically they argue:

> A party cannot simply ignore its obligation to file responsive pleadings. Where a party ignores its obligation to file a responsive pleading, as the defendants have done here, the resulting defaults are willful.
> * * *
> the Defendants have steadfastly refused to offer any credible explanation for their failure to file any responsive pleadings; instead, they reason that the default judgments must be set aside because, they claim, incredibly and without support, they never knew about the litigation.

(Plaintiffs' Opp. at 12-13.)

But Plaintiffs' arguments side step the issue. Mr. Abu Sulayman did not "ignore" his obligation to file responsive pleadings, rather, as he states in his sworn declaration, he could not possibly have done so. Had he been served and made a party, he could not have ignored the complaint. But this argument simply begs the question of whether he was made a party by virtue of having been served. The answer is that he could not have filed a responsive pleading in this action because he did not see the publication notice. Had he seen it, as he was not identified

2

adequately in the notice, he did not have even constructive, much less actual, notice that he was named as defendant in this lawsuit until after the default judgments were entered. Nor did Mr. Abu Sulayman state that he "never knew about the litigation." (Plaintiffs' Opp. at 13.) That isn't the issue. What is relevant, and what Mr. Abu Sulayman did state, is that he did not know that *he was named a defendant in the litigation* until after the default judgments were entered.

### B. There Is No Reason To Question The Credibility of Mr. Abu Sulayman's Sworn Statement

Stripped of its rhetoric, Plaintiffs' real argument is that they don't believe that Mr. Abu Sulayman was unaware that he had been named as a defendant prior to issuance of the default judgments. Plaintiffs suggest that Mr. Abu Sulayman's statement is not credible because (i) he has "longstanding relationships with a number of individual defendants and [is a] high ranking officer[] in certain corporate defendants in this litigation" and (ii) he is "represented by the very same law firm that represents" some of those defendants. (Plaintiffs' Opp. at 1.) But this is nothing more than rank speculation and to the extent it is an argument, it is either (i) not supported by declaration, (ii) not sufficiently specific to have any meaning, and (iii) based on the faulty assumption that DLA Piper US LLP ("DLA Piper") represented Mr. Abu Sulayman at the time the complaint was filed and/or the notice appeared, and it finds no support in the law.

As an initial matter, the "facts" that Plaintiffs assert in support of this argument are vague, unsubstantiated and inaccurate. The only evidence supporting these alleged facts is a hearsay affidavit from *Burnett* Plaintiffs' counsel Robert Haefele, which does not clarify the rather meaningless claims in the pleading.

Moreover, many of these "facts" are demonstrably false. For example, Mr. Haefele testifies that Mr. Abu Sulayman *is* an *officer* of the Saar Foundation. (Haefele Affidavit at ¶ 7.) However, as is made clear in Exhibit C to his affidavit, the Saar Foundation "dissolved on

3

December 20, 2000." (*Id.*, Exhibit C at 57.) Mr. Abu Sulayman cannot possibly be an officer of a dissolved corporation. Moreover, Exhibit C lists three individuals who were the "officers and trustees" of the Saar Foundation, none of whom are Mr. Abu Sulayman. (*Id.*) Further, Mr. Haefele states that Mr. Abu Sulayman's counsel, DLA Piper, represents Defendants Sanabel al Kheer and Sana-Bell, Inc. (Haefele Aff. at ¶ 14.) However, these Defendants are represented by Martin F. McMahon & Assocs., not DLA Piper. (*See* MDL Docket ## 1906, 1907.)

Even if Mr. Haefele's claims were true, they do not make it surprising that Mr. Abu Sulayman -- who admittedly was not personally served with the complaint -- did not know that he had been named as a defendant in this action. As he stated, Mr. Abu Sulayman has done nothing that could conceivably make him liable to Plaintiffs. Therefore, even if he generally had notice of the lawsuit, it is as unreasonable as it is unlikely for him to have expected to be named as a defendant.

Nor is it reasonable to expect Mr. Abu Sulayman to have waded through the mass of filings in this case to determine his status. This MDL is comprised of 20 separate actions, brought by thousands of Plaintiffs against hundreds of Defendants, and each case contains numerous amended complaints, each hundreds of pages long, not to mention the hundreds of supplemental filings, More Definite Statements and RICO Statements filed by the various Plaintiffs. Mr. Abu Sulayman is only named as a defendant in three of those twenty cases. At times, it has been difficult for the attorneys following the case on a daily basis to keep track of the proceedings. It would be impossible for Mr. Abu Sulayman to do so -- especially considering that the publication notice inadequately identifies him only as "Abu Sulayman."[2]

For these same reasons, it is unreasonable to expect one of Mr. Abu Sulayman's co-defendants to have known that Mr. Abu Sulayman had been named as a defendant and advised

---

[2] "Abu" translates roughly to father.

him as such. It is immaterial that Mr. Abu Sulayman's attorneys also represent other Defendants in this lawsuit; DLA Piper did not represent Mr. Abu Sulayman until after the default judgments were entered. Plaintiffs have failed to cite to a single authority even suggesting that DLA Piper's notice of the lawsuit prior to representing Mr. Abu Sulayman could constitute notice to Abu Mr. Abu Sulayman.

### C.   Plaintiffs Are Not Entitled To Mr. Abu Sulayman's Deposition

As previously noted, Plaintiffs argue that they should be permitted to take Mr. Abu Sulayman's deposition before the Court vacates the default judgments. (Plaintiffs' Opp. at 4-5; Haefele Affidavit at ¶ 5, Exhibit B.) This is nothing more than Plaintiffs' improper attempt to parlay the defaults into a fishing expedition to obtain discovery from Mr. Abu Sulayman concerning, among other things, his employment history and alleged relationship and contacts with other defendants in this action, that they would otherwise not be able to obtain. None of the cases cited by Plaintiffs suggest, let alone hold, that any discovery -- much less the extensive and burdensome deposition proposed by Plaintiffs -- is appropriate.

For example, in *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995), the Court denied a defendant's motion to vacate a default judgment, but only because the defaulting party failed "to provide any explanation or any affidavits concerning the default." In *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986), the Court denied a motion to vacate, but only because the defaulting party "failed to demonstrate that it possessed a meritorious defense." In *Frost Belt Int'l Recording Enterprises, Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 135 (S.D.N.Y. 1990), the defaulting party not only failed to provide a meritorious defenses, but the evidence also showed that it had been served with a complaint via hand delivery and still failed to answer. In *Atlantic Steamers Supply Co. v. Int'l Maritime*

*Supplies, Co.*, 268 F. Supp. 1009 (S.D.N.Y. 1967), the court found that the conclusory affidavit submitted by the defaulting party's attorney failed to establish a meritorious defense.

Mr. Abu Sulayman's case stands in stark contrast to each of the cases relied upon by Plaintiffs. He not only has met his burden of establishing that his default was not willful, but also, as detailed below, he presents four meritorious defenses. None of Plaintiffs' cited cases stands for the remarkable proposition that he may not have his default vacated until after he has sat for a deposition.

### D. Mr. Abu Sulayman's Default Was Not a Litigation Tactic

Plaintiffs also argue, without foundation, that Mr. Abu Sulayman willfully went into default as a litigation tactic to delay resolution of this action. (Plaintiffs' Opp. at 14-15.) But this argument is as illogical as it is without factual support. If Mr. Abu Sulayman knew that he had been named as a defendant, as Plaintiffs suggest, what rationale would he have had for waiting until *after the defaults* were entered to appear in the actions? It would have been in his best interest to move to dismiss the cases as soon as possible -- just as the 13 so-called "SAAR Network" defendants with whom Plaintiffs allege Mr. Abu Sulayman is associated have done – and the claims against him would have been dismissed as theirs have been. He clearly would have benefited from earlier notice of this complaint. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572 (S.D.N.Y. 2005).

Plaintiffs also complain of the "seven month delay between the time they first approached Plaintiffs' counsel . . . and when they ultimately filed the motions." (Plaintiffs' Opp. at 14.)[3] But this argument sidesteps the fact that during that time, Mr. Abu Sulayman's counsel was attempting

---

[3] Ironically, although Plaintiffs accuse Mr. Abu Sulayman of delay, it is Plaintiff that failed to comply with the briefing schedule negotiated by the parties. Plaintiffs' opposition to the motion to vacate was due by Friday March 16, 2007. However, it was not filed on the Court's ECF system until March 17, 2007.

6

to resolve this dispute consensually without need for the Court's intervention. (*See* Haefele Aff. at ¶¶ 4-5.) Indeed, he offered to appear and to defend the cases on the merits. It was Plaintiffs who refused this offer and demanded to take Mr. Abu Sulayman's deposition; had they agreed to accept his offer months ago, his motion to dismiss already would have been fully briefed.[4]

## II. PLAINTIFFS' CONCEDE THAT MR. SULAYMAN HAS MERITORIOUS DEFENSES

The default judgments should be vacated for the additional reason that Mr. Abu Sulayman has no less than four defenses on the merits of the cases, all of which Plaintiffs either concede or fail to address adequately in their Opposition.

### A. Service By Publication Was Improper

Service by publication is appropriate only "where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible." *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987). There is no indication that Plaintiffs attempted to serve Mr. Abu Sulayman in any manner whatsoever prior to resorting to publication, nor is there evidence that Mr. Abu Sulayman has acted in a manner to obstruct or avoid service. Therefore, service by publication was improper.

Moreover, service by publication failed to provide Mr. Abu Sulayman with even constructive notice of the suits as he was not properly identified in the publication notices that listed only an "Abu Sulayman," *not* Abdul Hamid Abu Sulayman. The reference to an "Abu Sulayman" in the publications is tantamount to notifying "Mr. Smith" and cannot support a finding that Mr. Abu Sulayman was served via publication, much less that he had actual notice of the suits.

Plaintiffs apparently concede these two points as they are not addressed in their opposition.

---

[4] For this same reason, Plaintiffs' claim of prejudice is unfounded. (Plaintiffs' Opp. at 16.)

7

B.  **The Default Judgments May Lead To Inconsistent Judgments Between Similarly Situated Defendants**

The default judgments against Mr. Abu Sulayman also should be vacated because they may result in inconsistent judgments between similarly situated parties in this multi-defendant case. *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB), 2002 WL 31545845, *4 (S.D.N.Y. Nov. 13, 2002); *Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573, *1 (N.D. Ill. Oct. 24, 2002) ("[D]efault judgment is not appropriate if it would result in inconsistency among judgments of multiple defendants.").

Again, Plaintiffs appear to concede this point.

C.  **Entry Of The Default Judgments Was Premature**

The default judgments also should be vacated because Federal Rule of Civil Procedure 55 requires a party seeking a default judgment to follow a two-step process. "The first step is to obtain a default" from the clerk of the court in accordance with Rule 55(a). *Green*, 420 F.3d at 104. *After* the clerk of the court enters default, a plaintiff can take the second step and move for default judgment under Rule 55(b). *See Bianco v. Seaway Industrial Services, Inc.*, No. 03-CV-0084E(F), 2004 WL 912916, * 1 (W.D.N.Y. Apr. 1, 2004) ("First, a party moving for default judgment must obtain an Entry of Default from the Clerk of the Court pursuant to FRCvP 55(a), and second, the moving party must seek a default judgment . . . as set forth in FRCvP 55(b).")

Here, the judgments should be vacated because they were granted by the Court on April 7, 2006, prior to the Clerk's entry of default on April 14, 2006. Again, Plaintiffs concede this point as it is not addressed in their Opposition.

D.  **The Defaults Should Be Vacated Because the Complaints Fail to State Claims Against Mr. Abu Sulayman**

The default judgments also should be vacated because Plaintiffs fail to plead sufficient bases for recovery. *See Levesque v. Kelly Commc'ns, Inc.*, No. 91 Civ. 7045 (CSH), 1993 WL

8

22113, at *6 (S.D.N.Y. Jan. 25 1993) (finding complaint's deficient pleadings as grounds to vacate default judgment); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB) (LB), 2004 WL 1205762, at *5 (E.D.N.Y. Apr. 29, 2004) ("[A] defendant's default does not in itself warrant a court in entering default judgment [because] there must be a sufficient basis in the pleadings for the judgment entered.").

Not one of the complaints makes a single factual allegation against Mr. Abu Sulayman. The only "new" allegations that Plaintiffs include in their *opposition* are that Mr. Abu Sulayman "is or was recently chairman of the board, president, trustee, and was a founding member of . . . International Institute of Islamic Thought" ("IIIT") and an "agent for York Foundation." (Plaintiffs' Opp. at 7, 8.) But these descriptions of his alleged titles could not conceivably be construed to have alleged that Mr. Abu Sulayman knowingly and intentionally provided material support to al Qaeda. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005) (emphasis added).

This Court already has dismissed the claims asserted against IIIT by the *Ashton* and *Burnett* Plaintiffs, and the claims asserted against York Foundation by the *Federal Insurance* Plaintiffs. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 570-71, 576 (S.D.N.Y. 2005). Moreover, the Court has found that allegations that an individual is either an officer, director or agent for one of the so-called "Saar Network" entities falls far short of stating a claim. *Id.* at 572 (dismissing claims brought by *Federal Insurance* Plaintiffs against "SAAR Network" executives, Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza).

It is black letter law that one cannot be found liable based solely on their alleged status as a former officer or executive of an entity. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or

9

director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office. He may become liable if he knowingly participates in such actions.")

## CONCLUSION

For these reasons, Mr. Abu Sulayman respectfully requests that the Court vacate the default judgments entered against him.

Respectfully submitted,

**DLA PIPER US LLP**

/s/ Nancy Luque
Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
Mitka T. Baker
1200 Nineteenth Street, NW
Washington, DC  20036-2430
Telephone:    202.861.3900
Facsimile:     202.223.2085

March 28, 2007

*Attorneys for Abdul Hamid Abu Sulayman*

## Certificate of Service

I hereby certify that on this 28th day of March, 2007, I caused an electronic copy of Abdul Hamid Abu Sulayman's Reply Memorandum of Law in Support of Motion To Vacate Default Judgments to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/ Steven K. Barentzen
Steven K. Barentzen (SB-8777)