**United States District Court**
**Southern District of New York**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*
*As to Samir Salah:*

   *Burnett, et al., v. al Baraka Inv. & Dev. Co., et al., Case No. 03-CV-9849(RCC)*
   *Federal Ins. Co., et al. v. Al Qaida, et al., Case No 03-CV-6978 (RCC)*

*As to Abdul Hamid Abu Sulayman:*

   *Burnett, et al., v. al Baraka Inv. & Dev. Co., et al., Case No. 03-CV-9849(RCC)*
   *Euro Brokers, Inc., et al., v. Al Baraka Inv. & Dev. Corp., et al. 04 CV 7279 (RCC)*
   *World Trade Center Properties, LLC, et al v, Al Baraka Inv. & Dev. Corp., et al. 04 CV 7280 (RCC)*

## PLAINTIFFS' OPPOSITION TO THE MOTIONS OF DEFENDANTS SAMIR SALAH AND ABDUL HAMID ABU SULAYMAN TO SET ASIDE DEFAULT JUDGMENTS

Ronald L. Motley, Esquire
Jodi Westbrook Flowers, Esquire
Donald Migliori, Esquire
Robert T. Haefele, Esquire
Michael E. Elsner, Esquire (ME-8337)
Justin B. Kaplan, Esquire
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Telephone: (843) 216-9000
Fax (843) 216-9450


Jayne Conroy, Esquire (JC-8611)
Paul J. Hanly, Jr., Esquire (PH-5486)
Andrea Bierstein, Esquire (AB-4618)
**HANLY CONROY BIERSTEIN**
   **SHERIDAN FISHER & HAYES LLP**
112 Madison Avenue
New York, NY 10016-7416
Telephone: (212) 784-6400
Fax: (212) 784-6420205

Counsel for the *Burnett, WTCP* and *EuroBrokers* Plaintiffs

Sean Carter, Esquire
J. Scott Tarbutton, Esquire (JT-3496)
**COZEN O'CONNOR PC**
1900 Market Street
Philadelphia, PA 19103-3508
Telephone: (215) 665-2105
Fax (215) 701-2105

Counsel for the *Federal Insurance* Plaintiffs

# TABLE OF CONTENTS

Page

Introduction  ...................................................................................................................1

Statement of Facts ..........................................................................................................2

Legal Arguments.............................................................................................................10

    I.  Defendant Has Failed to Meet His Burden of Establishing He Is
       Entitled To An Order Setting Aside The Default Judgments .........................................10

      A. The default judgments entered against defendant should not be
         set aside based on Rule 60(b)...................................................................................10

      B. The default judgments entered against defendant should not be
         set aside based on Rule 55(c)....................................................................................16

           1.  Willfulness .....................................................................................................16

           2.  Prejudice .......................................................................................................16

           3.  Existence of Meritorious Defenses ................................................................18

Conclusion .....................................................................................................................22

# TABLE OF AUTHORITIES

Page

Fed. R. Civ. P. 55 ....................................................................................................Passim

Fed. R. Civ. P. 60 ....................................................................................................Passim

*Aberson v. Glassman,*
70 F.R.D. 683 (S.D.N.Y. 1976) .................................................................................11

*Armitac USA Cosmetics v. Maybelline Co.,*
906 F. Supp. 850, 854-55 (E.D.N.Y. 1995) ...............................................................10

*Atlantic Steamers Supply Co. v. Int'l Maritime Supplies Co.,*
268 F. Supp. 1009 (S.D.N.Y.) ....................................................................................10

*Bank of Montreal v. Mitsui Mfgs. Bank,*
1992 WL 79293, at *3 (S.D.N.Y. April 7, 1992)........................................................11

*Brown v. DeFilippis,*
695 F. Supp. 1528 (S.D.N.Y. 1988)............................................................................11

*Davis v. Musler,*
713 F.2d 907, 915 (2d Cir.1983) ........................................................................ 10, 15

*Enron Oil Corp. v. Diahuhara,*
10 F.3d 90, 96 (2d Cir. 1993).....................................................................................14

*Frost Belt International Recording Enterprises, Inc. v. Cold Chillin' Records,*
758 F. Supp. 131, 135-36 (S.D.N.Y. 1990) ...............................................................10

*General Contracting and Trading Co. LLC v. Interpole, Inc.,*
899 F.2d 109, 112 (1st Cir. 1990)..............................................................................12

*H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,*
432 F.2d 689, 691 (D.C.Cir.1970)..............................................................................10

*Jackson v. Beech,*
636 F.2d 831, 836 (D.C.Cir.1980)..............................................................................10

*Lavespere v. Niagara Mach. & Tool Works, Inc.,*
910 F.2d 167 (5th Cir. 1990), *reh'g denied*, 920 F.2d 259, *cert. denied*, 510 U.S. 859 ................................13

*Maine National Bank v. F/V Explorer,*
663 F. Supp. 462, 466 (D. Me. 1987) .........................................................................12

*Marziliano v. Heckler,*
728 F.2d 151 (2d Cir. 1984) ........................................................................................ 11, 13, 14

*McKenzie v. Wakulla County,*
89 F.R.D. 444 (N.D. Fla. 1981) .......................................................................................... 10

*Mullane v. Central Hanover Tr. Co.,*
339 U.S. 306, 314 (1950) .................................................................................................... 17

*New York v. Green,*
420 F.3d 99 (2d Cir. 2005) ................................................................................................. 14

*Sears, Sucsy & Co. v. Insurance Co. of North America,*
392 F.Supp. 398, 411 (N.D. Ill. 1974) .................................................................................. 9

*S.E.C. v. McNulty,*
137 F.3d 732 (2d Cir. 1998) ................................................................................................. 9

*S.E.C. v. Tome,* 833 F.2d 1086, 1089 (2d Cir. 1987) ............................................................ 17

*Sony Corp. v. Elm State Electronics,*
800 F.2d 317, 319 (2d Cir. 1986) ....................................................................................... 10

*Sony Corp. v. S.W.I. Trading, Inc.,*
104 F.R.D. 535 (S.D.N.Y. 1985) .................................................................................... 10, 12

*In re Suprema Specialties,*
330 B.R. 40, 52-53 ............................................................................................................. 14

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
374 F.3d 158, 177 (2d Cir. 2004) ................................................................................... 9, 13

*In re Terrorist Attacks on September 11, 2001,*
349 F.Supp.2d 765, 824-825 (S.D.N.Y. 2005) ................................................................... 16

*United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.,*
755 F. Supp. 1195, 1205 (S.D.N.Y. 1989) .......................................................................... 11

*U. S. v. 1,550.44 Acres of Land, More or Less, in McLean County,*
*State of N. D.,* 369 F.Supp. 1078 (N.D. 1974) ................................................................... 14

*U.S. v. Bank of New York,*
14 F.3d 756, 759 (2d Cir. 1994) ........................................................................................... 9

*U. S. v. Cirami,*
563 F.2d 26 (2d Cir. 1977) ................................................................................................... 9

*Waifersong, Ltd. Inc. v. Classic Music Vending,*

976 F.2d 290, 292 (6th Cir. 1992) ................................................................................................ 11

*In re Wright*, 247 F.Supp.
648 (E.D. Mo. 1965) ..................................................................................................................... 13

*Zuelzke Tool & Engineering Co. v. Anderson Die Castings Inc.*,
129 F.R.D. 532, 534 (E.D. Wis. 1990) ......................................................................................... 13

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 55(c) and/or 60(b), defendants Samir Salah and Abdul Hamid Abu Sulayman ("defendants"), move to reopen default judgments entered against them by the Court on April 7, 2006.[1]  In support of their motion, the defendants have relied solely upon unsupported and self-serving claims that, because they were served by publication in accord with both the Federal Rules of Civil Procedure in addition to Orders issued by this Court, they were never made aware of this pending litigation against them until after the entry of the Court's default judgment.

Defendants' unsupported claims are particularly suspect in light of other facts that the defendants fail to mention – specifically, that both of the defendants have longstanding relationships with a number of individual defendants and are, themselves, high-ranking officers in certain corporate defendants in this litigation, and many of those individuals and corporations are represented by the very same law firm that represents the moving defendants and appeared in this litigation as early and January 2005.  Those facts, coupled with the fact that, when this litigation was filed and throughout its pendency, it has received widespread national and international news coverage above and beyond the service publication, cast grave and unaddressed doubt on the defendants' claim that they knew nothing of this case.

Moreover, the defendants have never offered any explanation for why, even after default judgments were entered against them, they failed to act in any meaningful manner until many months later, or why the issue of lifting the default judgments was only recently brought before this Court's attention in this motion, nearly a year after the default judgments were entered.

Under the facts presented, the defendants have failed – through the issuance of unsupported and self-serving statements – to satisfy their burden of setting forth facts that would warrant setting

---

[1] Defendant Salah has moved in the *Burnett* and *Federal Insurance* cases.  Defendant Sulayman has moved in the *Burnett*, *EuroBrokers* and *WTCP* cases.  Because the arguments of both defendants are essentially identical for both defendants in each of the cases plaintiffs are submitting a single consolidated brief to address both defendants' requests in each of the cases in which they have moved.

aside the default judgments at issue  Accordingly, defendants' motions to life these default

judgments should be denied.

## STATEMENT OF FACTS

The defaults challenged in this motion pertain to four cases currently consolidated under

MDL proceedings in this Court.  On August 15, 2002, the original Complaint was filed in *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-CV-9849 (RCC) and on November 22, 2002 the

Third Amended Complaint was filed.[2]  On September 10, 2003, the original Complaint was filed in

*Federal Ins. Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (RCC) and an Amended Complaint was

filed on March 10, 2004.  Furthermore, on September 10, 2004, the Complaints were filed in *Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 04-CV-7279 (RCC), and *World Trade Center Properties, LLC, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 04-CV-7280 (RCC).

By Orders of this Court, service by publication was approved and publication in English was

issued in the *USA Today* newspaper in the United States on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005.  Publication in English was issued in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005.

Finally, publication in Arabic was issued in the London-based *Al-Quds Al-Arabi*, with its wide

circulation in the Middle East, on December 23, 2004, December 30, 2004, January 6, 2005, and

January 13, 2005.  *See* Declaration of Robert T. Haefele at ¶ 3.  Accordingly, the defendants were

obligated to file responsive pleadings within 120 days after service.  Defendants claim, however, that

---

[2] The *Burnett* case was originally filed in the United States District Court for the District of Columbia as *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 02-CV-1616 (JR).  In an order dated December 9, 2003, the Judicial Panel on Multi-District Litigation transferred the case to the United States District Court for the Southern District of New York for multidistrict litigation coordination.  Upon its transfer to the Southern District of New York, the case assigned to Judge Richard Conway Casey and re-assigned docket number 03-CV-9849 (RCC).  In addition to the referenced Third Amended Complaint, the Burnett plaintiffs have filed various other amendments, including the amendment that added defendant Samir Salah, which plaintiffs sought to file on December 31, 2004, but due to problems encountered with the Court's ECF system had to be re-filed on January 3, 2005.

they were not aware of the complaints filed against them because they never read the notice that was published, pursuant to this Court's order, in the three national and international publications.

The defendants failed to appear and/or file timely responsive pleadings to plaintiffs' complaints. After giving the defendants more than a year to appear, on September 29, 2005, the *Federal Insurance* plaintiffs sought orders entering default judgments, followed by similar requests by the *Burnett* plaintiffs on April 7, 2006 and the *EuroBrokers* and *WTCP* plaintiffs on May 12, 2006, which this Court granted and entered onto the Court's docket on April 7, 2006 (*Burnett* and *Federal Insurance*) and May 12, 2006 (*EuroBrokers* and *WTCP*). It is from these Orders that defendants now, tardily, seek relief.

On July 18, 2006, defendants' counsel asked the *Burnett* plaintiffs' counsel to agree to set aside the default judgments. On August 29, 2006, defendants' counsel made a similar request to counsel for the *Federal Insurance* plaintiffs concerning defendant Salah. In both instances, plaintiffs' counsel indicated a willingness to consider the defendants' requests provided the defendants could offer some reasonable explanation as to why they had waited so long to address either the Complaints or the default judgments. The first response to defendants' counsel's request from the *Burnett* plaintiffs' counsel was to ask defendants merely to explain how they had received notice, including why they had received it later rather than earlier. Later, plaintiffs' counsel in *Federal Insurance* made similar inquiries, asking defendants' counsel to have the defendants explain why they had not been aware of the action earlier. In a letter dated September 28, 2006, counsel for *Federal Insurance*, writing with the consent of *Burnett* counsel, concerning both defendants Salah and Sulayman, advised defendants' counsel that plaintiffs would consider vacating the defaults if the defendants would simply address satisfactorily the following limited number of issues that would shed some light on how it was possible that they had never learned they had been sued:

(1) Defendants' places of residence between the dates the Complaints were filed and the present;

(2)  Defendants' physical location when the notices of the lawsuits were published in the *International Herald Tribune, Al Quds al Arabi* and *USA Today* newspapers;

(3)  Any employment positions Defendants held between the dates the Complaints were filed and the present;

(4)  Any positions Defendants held as an executive or member of the board of directors of any companies between the dates the Complaints were filed and the present;

(5)  Whether Defendants have been in contact with any other parties named as defendants in any of the consolidated MDL cases since the date the Complaints were filed;

(6)  Whether Defendants have been in contact with counsel for any defendant in any of the consolidated cases since the Complaints were filed;

(7)  Whether Defendants were aware that any companies or organizations with which they were at one time affiliated had been named as defendants in any of the consolidated MDL cases;

(8)  Whether Defendants received any information regarding the pendency of any of the consolidated MDL cases, regardless of whether they were aware of their status as defendants in those cases;

(9)  The date on which Defendants first became aware of their status as defendants in any of the consolidated MDL cases; and

(10)  The manner in which they first became aware of their status as defendants in any of the consolidated MDL cases.

*See* Haefele Dec. at ¶¶ 4-5.

Despite their burden of explaining why they had not acted earlier, counsel for defendants rejected both opportunities to explain the defendants' failure to respond in a timely manner.  Rather, they waited seven months from the date they first approached plaintiffs' counsel – months during which there is no dispute that they and their counsel were aware not only of the lawsuits, but of the default judgments – and finally, on February 21, 2007, filed their motions to vacate the default judgments entered against them.  *See* Haefele Dec. at ¶ 6.

The defendants' submissions in support of their motions to vacate the default judgments against them are barren of any substantive evidence to support their contentions that they did not know of this lawsuit.  The only "evidence" submitted are near-boilerplate declarations which, particularly under the circumstances of this case and these defendants, lack any value.

As noted above, defendants' motions ignore substantial facts that lead squarely to the conclusion that both of these defendants, contrary to their bald statements, were aware of the existence of this litigation which was the subject of national and international press accounts not only in the three publications that were the vehicle for the formal notice pursuant to the Court's Orders, but also through other substantial national and international press accounts that would likely have called this litigation to the attention of the defendants

Both Salah and Sulayman hold official positions with several of the other defendants in this litigation, several who are represented by the same lawyers now representing Salah and Sulaymen. More specifically, both Salah and Defendant Abdul Hamid Abu Sulayman are officers of the SAAR Foundation, whose Virginia offices were among those that the FBI and U.S. Custom's officials raided in March 2002 and from which seized records are reported to have revealed a pattern of multi-layered transactions that were designed to confuse law-enforcement authorities and keep them off the money trail. Of $54 million dollars raised by the SAAR Foundation ostensibly for "charity," $26 million went to the Isle of Man in the Irish Sea, a notorious location for drug runners and money laundering. Only $20 million made its way to SAFA Group charities. According to David Kane, the federal agent who led the raid, SAAR/SAFA's intent was "to route money through hidden paths to terrorists, and to defraud the United States by impeding, importing, obstructing, and defeating the lawful functions of the IRS.*" *See* Haefele Dec. at ¶ 7.

In addition, Salah is a founder and board member of, and Sulayman is also an officer of, Safa Trust (another client of defendants' counsel), another one of the Herndon, Virginia entities that the FBI raided in March 2002.  Other co-officers of Safa Trust along with both defendants are defendants Jamal Barzinji, Yaqub Mirza, Ahmed Totonji, and Hisham al Talib, which are all also represented by the same counsel.  Safa Trust shares the same address as the following entities that are or have been defendants in this litigation, African Muslim Agency, Grove Corporate, Mar-Jac

Investments, Mena Corporation, Muslim World League, Reston Investments, Saar Foundation, Sanabel al Kheer, Sana-Bell, Inc., Sterling Management Group, and York Foundation.  *See* Haefele Dec. at ¶ 8.

Defendant Salah has also been an officer for two entities that have been designated as terrorist organizations.  Salah has been the treasurer for Taibah International, whose Bosnia branch has been designated by the U.S. Office of Foreign Asset Control ("OFAC") as a Specially Designated Global Terrorist ("SDGT") based on evidence that Taibah funneled money to al Qaida. *See* Haefele Dec. at ¶ 9.  Salah has also managed, been the treasurer for, and is reported to have helped establish Bank al Taqwa in the Bahamas, which is among those entities designated by OFAC as an SDGT.  *See* Haefele Dec. at ¶ 9.  Furthermore, according to White House statements, "Bank al Taqwa has provided advice and cash transfer mechanisms for al-Qaida and other radical Islamic groups."  *See* Haefele Dec. at ¶ 9.

Salah is also an officer of Mar-Jac Investments, another defendant represented by the same counsel as defendants.  Other co-officers of Mar-Jac Investments along with defendant Salah are defendants Yaqub Mirza and M. Omar Ashraf, who are also represented by the same counsel.  Mar-Jac Investments shares the same address as the following entities that have been defendants in this litigation, African Muslim Agency, Grove Corporate, Mena Corporation, Muslim World League, Reston Investments, Saar Foundation, Safa Trust, Sanabel al Kheer, Sana-Bell, Inc., Sterling Management Group, and York Foundation.  *See* Haefele Dec. at ¶ 10.

Salah has also been a board member of Amana Mutual Funds with, among others, Iqbal Unus, Jamal Barzinji, and Yaqub Mirza, other defendants who have appeared in this litigation through the same counsel and have moved to dismiss, rather than having default judgments entered against them.  According to the Amana Mutual 2004 and 2005 Prospectuses (filed with the SEC on

August 18, 2004 and August 10, 2005), the audit committee, on which both Salah and Unus sat, held at least three meetings during those fiscal years.  *See* Haefele Dec. at ¶ 11.

Defendant Sulayman is or was recently chairman of the board, president, trustee, and was a founding member of the Herndon, Virginia-based Defendant, International Institute of Islamic Thought ("IIIT"), which is also a DLA Piper client and one of the offices that the FBI and U.S. Customs officials raided in March 2002 and from which seized records are reported to have revealed a pattern of multi-layered transactions that were designed to confuse law-enforcement authorities and keep them off the money trail.  *See* Haefele Dec. at ¶ 12.

Defendant Sulayman is also an agent for York Foundation, another defendant in the litigation that is represented the same counsel as defendants Salah and Sulayman.  York Foundation is yet other of the Herndon, Virginia entities that the FBI raided in March 2002 and which shares the same address as many of the other entities that have been defendants in this litigation.  *See* Haefele Dec. at ¶ 13.

Both of the defendants are represented by DLA Piper U.S. LLP – the same firm that represents the SAAR Foundation, Safa Trust, IIIT, Mar-Jac Investments, York Foundation, M. Omar Ashraf, Jamal Barzinji, M. Yaqub Mirza, Ahmed Totonji, and Iqbal Unus, as well as African Muslim Agency, Grove Corporate, Mena Corporation, Muslim World League, Reston Investments, Sanabel al Kheer, Sana-Bell, Inc., and Sterling Management Group – the very groups and individuals with which defendants are affiliated and/or with whom they hold executive or director positions. Attorneys from DLA Piper have represented this multitude of other defendants in this litigation since at least March 12, 2004, when they appeared for, *inter alia*, at least four entities on which these two defendant have held various official positions – including ITTT, Mar-Jac Investments, Safa

Trust, and York Foundation – and at least five of both defendants' colleagues, M. Omar Ashraf, Jamal Barzinji, M. Yaqub Mirza, Ahmed Totonji, and Iqbal Unus.[3]  *See* Haefele Dec. at ¶ 14.

It is simply not credible that, while the entities on whose boards these defendants sat were retaining DLA Piper to represent them in this lawsuit and while their colleagues in those organizations were retaining the same lawyers to appear in this case, and while DLA Piper was actively litigating this case on behalf of those organizations and those colleagues, both Salah and Sulayman remained entirely unaware (a) that they were also named as defendants in this lawsuit; (b) that their names were included in the list of names submitted to this Court in connection with plaintiffs' application for leave to serve by publication; and (c) that their names in fact appeared in the notices published in *USA Today*, the *International Herald Tribune*, and *Al Quds al Arabi*

Moreover, even after the default judgments were entered on April 7, 2006, the defendants did not contact plaintiffs' counsel until more than three months later when their lawyer contacted *Burnett* plaintiffs' counsel in mid-July 2006 and *Federal Insurance* plaintiffs' counsel in late-August 2006 and then never brought their issue to the court's attention until February 2007, nearly a year after the default judgments had been entered.

Under the circumstances, defendant's simple, unsupported, self-serving statements fail to satisfy the defendants' burden of setting forth facts necessary to warrant setting aside the default judgments.  Accordingly, defendant's application should be denied.

---

[3] On March 12, 2004, attorneys now with DLA Piper filed motions requesting *pro hac* admissions to represent these and other defendants, though at the time they were with the firm of Gray, Cary, Ware & Freidenrich LLP

**LEGAL ARGUMENTS**

**I.      Defendant Has Failed to Meet His Burden of Establishing
         He Is Entitled To An Order Setting Aside The Default Judgments**

Pursuant to Rule 55(c), "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Because the defendants have failed to meet the standard set forth in either Rule 55(c) or 60(b), the court should reject defendant's request to set aside the court's orders granting default judgment.

**A.      The default judgments entered against defendant should not be set aside
         based on Rule 60(b).**

Rule 60(b)(1) provides the standard for setting aside a default judgment.  Rule 60(b)(1) provides: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for ... mistake, inadvertence, surprise, or excusable neglect...."  The rule applies only in proper cases – that is, only in cases involving extraordinary circumstances or extreme hardship.  *U.S. v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994); *U. S. v. Cirami*, 563 F.2d 26 (2d Cir. 1977), and not where the rule by its very terms precludes application.  *Sears, Sucsy & Co. v. Insurance Co. of North America*, 392 F.Supp. 398, 411 (N.D. Ill. 1974).  More specifically, it is not to be used where, as here, the conduct of the party seeking to employ the rule has acted without diligence, with willful misconduct, or without explanation.  *See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004) ("When a party demonstrates a lack of diligence in defending a law suit, a court need not set aside a default judgment."); *S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998) (default may have been willful where the conduct of counsel or the litigant was not satisfactorily explained).

On a motion to set aside a default judgment, the defaulting party carries the burden and must come forward with some explanation for the default; a party's failure to provide such an

9

explanation precludes a finding of excusable neglect. *Armitac USA Cosmetics v. Maybelline Co.*, 906 F.
Supp. 850, 854-55 (E.D.N.Y. 1995); *see, e.g., Sony Corp. v. Elm State Electronics*, 800 F.2d 317, 319 (2d
Cir. 1986); *Frost Belt International Recording Enterprises, Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 135-
36 (S.D.N.Y. 1990). Affidavits containing only the barest of conclusory statements, as the
defendants submitted here, do not satisfy the threshold requirement of demonstrating excusable
neglect. *See Atlantic Steamers Supply Co. v. Int'l Maritime Supplies Co.*, 268 F. Supp. 1009 (S.D.N.Y.)
(defendant's affidavit containing two or three conclusory statements was insufficient to relieve
defendant from default).

When a defendant's actions or inactions resulting in default are willful or unexplained, as
they are here, default judgment is appropriate and even necessary to ensure functioning of the
judicial process. The defendants should not be permitted to avoid or delay the plaintiffs' right to
judicial resolution of a dispute by ignoring the proceedings. *McKenzie v. Wakulla County*, 89 F.R.D.
444 (N.D. Fla. 1981). Furthermore, "when the adversary process has been halted because of an
essentially unresponsive party," default judgment is appropriate not only to protect the judicial
process, but also to protect the non-defaulting party from "interminable delay and continued
uncertainty as to his rights.'" *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535 (S.D.N.Y. 1985);
*Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft
Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)).

The Second Circuit has construed Rule 60(b)(1) to include a three-part test: "(1) whether the
default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice
that may occur to the non-defaulting party if relief is granted." *Davis v. Musler*, 713 F.2d 907, 915 (2d
Cir.1983). The threshold question in the assessment concerns the question of the defendant's
culpability; if the moving party fails to establish a right to relief on this ground, the court need not

10

even assess the remaining two factors.[4]  *Bank of Montreal v. Mitsui Mfgs. Bank*, 1992 WL 79293, at *3

(S.D.N.Y. April 7, 1992); *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.*,

755 F. Supp. 1195, 1205 (S.D.N.Y. 1989).  The Sixth Circuit has explained the relative weight of the

factors this way:

> [W]hile it may be argued that the three factors are to be "balanced" by the court in
> determining whether to set aside an entry of default, balancing is demonstrably
> inappropriate when a court initially proceeds, as in the instant case, under Rule
> 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a
> default judgment unless he can demonstrate that his default was the product of
> mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant
> can carry this burden that he will be permitted to demonstrate that he can also satisfy
> the other two factors: the existence of a meritorious defense and the absence of
> substantial prejudice to the plaintiff should relief be granted.

*Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (footnote omitted).

A party cannot simply ignore its obligation to file responsive pleadings.  Where a party

ignores its obligation to file a responsive pleading, as the defendants have done here, the resulting

defaults are willful.  *Marziliano v. Heckler*, 728 F.2d 151 (2d Cir. 1984); *Brown v. DeFilippis*, 695 F.

Supp. 1528 (S.D.N.Y. 1988).  Lack of diligence or mere carelessness on the part of the defendants or

their counsel is not sufficient cause to set aside a default.  *Aberson v. Glassman*, 70 F.R.D. 683

(S.D.N.Y. 1976).

Here, notwithstanding plaintiffs' counsels' willingness to consider the defendants'

explanations as to why they never responded to the complaints, the defendants have steadfastly

refused to offer any credible explanation for their failure to file any responsive pleadings; instead,

they reason that the default judgments must be set aside because, they claim, incredibly and without

support, they never knew about the litigation.

---

[4] Because the willful nature of the defendants' conduct is a threshold question, plaintiffs do not address here the
remaining two considerations.  However, such assessment is provided *infra*, in regard to Rule 55(c), and a balancing of all
three considerations likewise supports upholding the default judgments.

The defendants have carefully and consistently glossed over so many important facts that, when considered both separately and together, demonstrate that the defendants have not met the burden necessary to set aside the default judgments.  Even though plaintiffs' counsel offered the opportunity to explain, the defendants have refused to explain how they could possibly be unaware of litigation filed against them despite the local, national, and international notoriety of the litigation – which, in the case of *Burnett*, was filed initially in Washington, D.C., only miles from the defendants' residences and/or businesses.  They have refused to explain how they could be unaware of the litigation despite their overlapping and intertwining connections with at least twelve other defendants sued in the lawsuit, and at least nine of whom are represented by the same law firm.  They have refused to explain how this lack of awareness could exist despite the fact that their residences and/or the multiple companies with whom they are affiliated, and the mosque where they likely worship, are all places that they were likely to have heard news of the litigation during the course of the time that the litigation has been pending.  Yet both defendants would have this court accept their simple, unsupported, statements that they did not know about the law suit.

Defendants have likewise never explained their seven month delay between the time they first approached Plaintiffs' counsel – when they unquestionably knew of the defaults – and when they ultimately filed their motion.  Even if the defendants had adequately explained why they had delayed in filing a responsive pleading before the defaults were filed (which they have not done), once they learned of the default judgments they had an obligation to file their motions to vacate promptly within a reasonable time.  Their unexplained seven month delay was not reasonable.  *See Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 541-542 (S.D.N.Y. 1985) (denying defendant's motion to vacate in its entirety, noting that "Rule 60(b) motions must be brought within a reasonable time" and finding that a one month delay was not reasonable); *see also General Contracting and Trading Co. LLC v. Interpole, Inc.*, 899 F.2d 109, 112 (1st Cir. 1990) (affirming default judgment

where appellant "waited approximately three and one-half months" between discovery of the default and asking the court for relief); *Maine National Bank v. F/V Explorer*, 663 F. Supp. 462, 466 (D. Me. 1987) (denying the defendant's motion to vacate a default judgment where the defendant's delay of six weeks in seeking relief from the judgment did not constitute "reasonably prompt" action); *Zuelzke Tool & Engineering Co. v. Anderson Die Castings Inc.*, 129 F.R.D. 532, 534 (E.D. Wis. 1990), affirmed 925 F.2d 226 (denying motion to vacate default judgment where the defendant failed to undertake prompt action to vacate the default; default judgment was entered on July 5, 1989 and defendant was aware of the judgment by at least late July 1989 but the motion to vacate was not filed until November 29, 1989, four months later).

The defendants' empty "rationales" and lack of explanation for ignoring their obligations to file either their responsive pleadings or their request for court relief hardly constitute "*excusable* neglect*," *see State Street Bank and Trust Co. v. Inversiones Errazuriz, Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted "excusable neglect"), and standing by themselves warrant upholding the default judgments. *Id.* ("when a party demonstrates lack of diligence in defending a lawsuit, a court need not set aside a default judgment.").[5]

Given these facts, plaintiffs raise concern that the defendants and their counsel are engaging in tactical maneuvering to drag out the litigation unnecessarily and cause the plaintiffs irreparable prejudice.  If each of the many defendants in default are permitted to ignore the litigation and then set aside the default judgments against them simply by baldly claiming they were unaware they had

---

[5] *See also In re Wright*, 247 F.Supp. 648 (E.D. Mo. 1965) (carelessness, negligence, or ignorance of rules of procedure do not constitute "excusable neglect" within this rule); cf. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990), *reh'g denied*, 920 F.2d 259, *cert. denied*, 510 U.S. 859 (abuse of discretion to reopen case on basis of excusable neglect where moving party failed to submit evidence because of negligence or carelessness).

been sued, then the host of defendants who have ignored this litigation could theoretically extend almost endlessly the process of filing motions to vacate defaults, motions to dismiss, and only after those had been resolved, Answers.  Such tactical maneuvering to avoid responding to plaintiffs' complaints is willful and intentional conduct and cannot be considered "excusable neglect."  *New York v. Green*, 420 F.3d 99 (2d Cir. 2005); *In re Suprema Specialties*, 330 B.R. 40, 52-53; *U. S. v. 1,550.44 Acres of Land, More or Less, in McLean County, State of N. D.*, 369 F.Supp. 1078 (N.D. 1974).

**B.     The default judgments entered against defendant should not be set aside based on Rule 55(c).**

Rule 55(a), which provides that a default may be entered against a party against whom judgment for affirmative relief is sought who "has failed to plead or otherwise defend," also provides that the court may set aside a default "[f]or good cause shown."  Fed. R. Civ. P. 55(c).  Although Rule 55(c) does not define "good cause," the Second Circuit has established the same three criteria described above in regard to Rule 60 as the criteria to be analyzed in deciding whether to set aside entry of default – namely, whether the default was willful; whether defendant has presented a meritorious defense; and whether the non-defaulting party will be prejudiced if the default is set aside.  *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984).  Though the factors are the same, they are applied less rigorously in the case of defaults.  *Enron Oil Corp. v. Diahubara*, 10 F.3d 90, 96 (2d Cir. 1993).

1.     Willfulness

Defendants' conduct in ignoring plaintiffs' complaints resulting in the defaults being entered was willful and the analysis of defendants' willfulness is the same as the analysis provided above in regard to Rule 60.

2.     Prejudice

Defendants give short shrift to the prejudice plaintiffs may suffer from setting aside the defaults.  Prejudice from setting aside defaults results when, for example, the delay may result in loss

of evidence or create difficulties of discovery. *Davis v. Musler*, 713 F.2d 907, 916 (S.D.N.Y. 1983). In this litigation, involving many defendants, many of whom are also in default; substantial motions practice; substantial international discovery, and many novel issues, the court should consider the potential for both individual and collective delay that may prejudice plaintiffs.

Defendants' refusals to file timely responses, which resulted in their default, would cause plaintiffs prejudice if the defaults are vacated because the plaintiffs will risk being unable to obtain discovery lost or unrecoverable due to the delay. As is plainly evident to all familiar with this litigation, the precipitating events happened in September of 2001, now well over five years ago. Many of the allegations involve inquiry into defendants' conduct dating back to years preceding the September 11, 2001 terrorist attacks. The delay caused by defendants' conduct leading to their default places at risk plaintiffs' ability to collect important facts to develop the factual mosaic underlying plaintiffs' claims. At the very least, as the documents become more remote in time, they become more difficult – or impossible – for the plaintiffs to collect, either because of document retention policies or simply because of shear age.

Defendants ignore the real prejudice caused by the collective delay that would result were the court were to condone similar conduct by each defendant. In this litigation, which is already several years old and has seen substantial motion practice, including a number of outstanding motions demanding the Court's attention, and where perhaps more than any other litigation, discovery from the various defendants is crucial to piecing together the interconnections among the defendants to develop the full mosaic the individual pieces create, each additional delay caused by each defendants' dilatory conduct becomes more prejudicial to the plaintiffs' efforts both to conduct and collect discovery, and to press for a resolution of the plaintiffs' claims.

3.     Existence of Meritorious Defenses

Though plaintiffs do not concede the merits of defendants' defenses, plaintiffs recognize that defendant has alleged such claims and need not actually establish that they will prevail on them. Plaintiffs are nonetheless compelled to call the Court's attention to the fact that the Court has already rejected one defendant's similar argument that service by publication was not proper. In rejecting Defendant Adel Batterjee's argument that he had not been served because service had been by publication, this Court held:

> Plaintiffs reasoned that *Al-Quds Al-Arabia* had published Osama bin Laden's fatwas in the past and could, therefore, reach his supporters regardless of their location. Further, *the International Herald Tribune* is available to the world community. Additionally, Plaintiffs submit that these cases have been widely reported in the Arabic media and the complaints have been available on numerous websites for over two years. In light of these considerations and Judge Robertson's March 23, 2003, order approving service by publication for Defendants including Mr. Batterjee, the Court denies Mr. Batterjee's motion to quash service.

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 824-825 (S.D.N.Y. 2005).

After the transfer and consolidation of these cases before this Court, the Plaintiffs requested, and this Court granted, an Order authorizing Plaintiffs to effectuate service by publication on defendants specified in the accompanying attachment "for whom an address or location to serve the Summons and Complaint is unknown and cannot be ascertained through reasonable means or was attempted or rejected or otherwise not responded to at an address that was discovered," MDL 1570 Docket No. 445. The Order required publication in three newspapers calculated to provide adequate notice to each of the defendants – namely, *USA Today*, the *International Herald Tribune*, and *Al-Quds Al-Arabi*. In addition to the *USA Today* being widely available in the United States, the story of this lawsuit being filed was picked up by many other media outlets in the United States. *Al-Quds Al-Arabi* has published several fatwas by Osama bin Laden and is therefore reasonably calculated to reach his supporters, regardless of where they live. Similarly, the *International Herald*

*Tribune* is distributed in the world community, of which the defendants and their wide business interests are a part.  *See* Haefele Dec. at ¶ 15.

By granting Plaintiffs' request on September 15, 2004, this Court in effect found that it was appropriate for the Plaintiffs to serve the Defendants on the accompanying attachment by publication.  Defendants Salim and Sulayman were among those listed to be served by publication and thus were among those whom the Court found could be properly served by this method.  *See* MDL 1570 Docket No.445. Plaintiffs served both defendants Salah and Sulayman by publication in compliance with the Court's Order of September 15, 2004.  *See* Haefele Dec. at ¶ 15.

The proper question is whether the publication in *USA Today*, the *International Herald Tribune*, and *Al-Quds Al-Arabi* was "reasonably calculated" to notify the defendants of the suit against them. Justice Jackson summed up this point when he wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457 (1940); *Grannis v. Ordean*, 234 U.S. 385; *Priest v. Board of Trustees of Town of Las Vegas,* 232 U.S. 604 (1914); *Roller v. Holly*, 176 U.S. 398 (1900).  The notice must be of such nature as reasonable to convey the required information, *Grannis v. Ordean*, *supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly*, *supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71 (1909).  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.  'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' *American Land Co. v. Zeiss*, 219 U.S. 47, 67 (1911); and *see Blinn v. Nelson*, 222 U.S. 1, 7 (1911).

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).

The Second Circuit stated in *S.E.C. v. Tome*, 833 F.2d 1086, 1089 (2d Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

Just as this Court found as to Mr. Batterjee, it is clear here that notice by publication satisfied the requirements of the federal rules and of due process, because publication was pursuant to the

Court's order, both defendants were among those who the notice was reasonably calculated to reach, and the news of the litigation was unquestionably widespread both generally and within the defendants' community.

Notice by publication is designed to impart information about a lawsuit; nothing requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice. Without question, the notice in this case accomplished the goal of providing ample notice of the instant action, to which there is public access. The plaintiffs' complaints have been available on numerous websites in numerous languages, including Arabic, for several years. Plaintiffs have uncovered dozens of articles that have been published both in English and in the Arabic media specifically discussing the on-going litigation before this Court, including detailed reports of this Court's Opinions and Orders, named defendants, and other recent developments. Indeed, these English and Arabic media reports provide an additional channel for the defendants and others to become apprised of the lawsuit against them.

Defendant Salah's argument that because he lives in the United State the Court's order did not permit service upon him by publication ignores much of the terms of the Court's order. The order not only applied to defendants upon whom service by publication was permitted both in the United States and elsewhere but it also specifically contained his name as one of the individuals for whom service by publication was permitted. His contention that he was amenable to ordinary service is belied by the fact that MDL plaintiffs counsel all had difficulty serving Mr. Salah, first because counsel had no address for him and then later because when service was attempted it was returned. Indeed, in a letter to the Court, dated April 15, 2004, Andrew Maloney, plaintiffs' counsel in the *Ashton* case, provided a status report of service efforts by the MDL plaintiffs and explained that service packages were being sent to a number of defendants, including Salah (all MDL counsel of record were copied on that letter). That service package was eventually returned unopened, as

well as a similar service package to defendant Taibah International Aid Association at the same address.  *See* Haefele Dec. at ¶ 16.

Finally, Plaintiffs emphasize the problem of permitting each defendant to approach the court with barren assertions that they were unaware of litigation filed against them because they never read the notice provided by court ordered publication.  If each of these defendants is permitted to question the court's authority to permit notice by publication, then every other defendant served similarly may likewise question such notice.  Under the circumstances – particularly where notice was reasonably calculated to reach these defendants – the Court should reject defendants' arguments to the contrary.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the defendants' motion to set aside the default judgments be denied.


Dated: March 16, 2007                    Respectfully Submitted,


/s/_____
Ronald L. Motley, Esquire (SC Bar No. 4123)
Jodi Westbrook Flowers, Esquire (SC Bar No. 66300)
Donald Migliori, Esquire (RI Bar No. 4936; MA Bar No. 567562;
     MN Bar No. 0245951)
Robert T. Haefele, Esquire (SC Bar No. 75266; NJ Bar No. 58293;
     PA Bar No. 57937)
Michael E. Elsner, Esquire (ME-8337)
Justin B. Kaplan, Esquire (TN Bar No. 022145)
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Telephone:  (843) 216-9000
Fax (843) 216-9450
  - and -
Jayne Conroy, Esquire (JC-8611)
Paul J. Hanly, Jr., Esquire (PH-5486)
Andrea Bierstein, Esquire (AB-4618)
**HANLY CONROY BIERSTEIN & SHERIDAN LLP**
112 Madison Avenue
New York, NY 10016-7416
Telephone: (212) 784-6400
Fax: (212) 784-6420205

Counsel for the *Burnett, WTCP* and *EuroBrokers* Plaintiffs


  - and -


/s/_____
Sean Carter, Esquire
J. Scott Tarbutton, Esq. (JT-3496)
**COZEN O'CONNOR PC**
1900 Market Street
Philadelphia, PA 19103-3508
Telephone:  (215) 665-2105
Fax (215) 701-2105

Counsel for the *Federal Insurance* Plaintiffs

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing Opposition to Defendants' Motion to Vacate Judgment By Default was served via electronic case filing on this 17th day of March, 2007, upon all parties scheduled for electronic notice, including the following:

Steven K. Barentzen, Esq.
DLA PIPER RUDNICK GRAY CARY US LLP
1200 19th Street, N.W.
7th Floor
Washington, DC 20036-2412
*Attorney for Defendants Samir Salah and*
   *Abdul Hamid Abu Sulayman*

                                   /s/ Robert T. Haefele
                                   Robert T. Haefele (SC Bar No. 75266; NJ Bar No. 58293; PA
                                   Bar No. 57937)