UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON         MDL No. 1570
SEPTEMBER 11, 2001

**This document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al, Case No. 03 CV 9849 (GBD)*
*Ashton, et al. v Al Qaeda Islamic Army, et al., Case No. 02 CV 6977 (GBD)*

## PLAINTIFFS' OBJECTIONS TO ORDER OF MAGISTRATE JUDGE MAAS DATED JULY 26, 2007

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1)(A), for the reasons set forth herein, Plaintiffs object to the Order of Magistrate Judge Frank Maas dated July 26, 2007 and served upon all counsel via ECF on July 27, 2006 (Dkt. # 1989, attached hereto as Exhibit # 1).

### Summary of Objections

The Plaintiffs and defendant Saudi Binladen Group ("SBG") are in dispute regarding the scope of jurisdictional discovery permitted by the Court's January 28, 2005 order that denied SBG's motion to dismiss and granted the plaintiffs' request for jurisdictional discovery. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005). One theory of jurisdiction asserted over SBG is that SBG has directed its conduct at the United States by providing material support to Osama bin Laden and the al Qaeda network knowing that the U.S. was the primary target of their terrorist activities. *See, e.g., Calder v. Jones*, 465 U.S. 783 (1984) (finding personal jurisdiction appropriate over non-resident defendants who "expressly aimed" intentionally tortious conduct at residents of forum state). Among other evidence sought to show such material support, plaintiffs have sought evidence regarding the trust SBG

allegedly established in approximately late 1993, allegedly to distance itself from Osama bin Laden, a Binladen family member and holder of shares with an estimated value of $9.9 million in the family company.

On July 26, 2007, Magistrate Maas issued an Order restricting the plaintiffs' discovery regarding the trust. The order confirmed a list describing documents the Court intended for SBG to produce regarding the trust and required SBG to produce all documents that reflect any change in the structure, trustees, or beneficiaries of the trust, regardless of time period. However, the order relieved SBG from producing "records of changes in the assets of the trust unless there were transfers to Osama bin Laden."

Plaintiffs object to the July 26, 2007 order to the extent that it relieves SBG of its obligation to produce any document regarding the trust SBG established for Osama bin Laden. Under the broad discovery rules that apply even to jurisdictional issues and where SBG has demonstrated no burden resulting from its production of the information sought, plaintiffs are entitled to discover all information regarding the trust SBG created for Osama bin Laden's assets, as well as SBG's relationship with that trust. Moreoever, plaintiffs specifically object to the order inasmuch as it prevents the plaintiffs from obtaining evidence of asset transfers inuring to the benefit of Osama bin Laden and al Qaeda unless the transfers were made directly to Osama bin Laden. Though such transfers would certainly be important, terrorist financiers are much more likely to use more indirect transactions than what the Court's order suggests.

## Standard of Review

Rule 72 and Section 636(b)(1)(A) of Title 28 provide the standard for district court review of a federal magistrate judge's order. A district court reviewing a magistrate

judge's non-dispositive pretrial order, such as the discovery order under review here, may modify or set aside any part of that order if the order is clearly erroneous or contrary to the law. *In re: Veeco Instruments, Inc. Securities Litigation*, 2007 U.S. Dist. Lexis 16922, *8-9 (S.D.N.Y. 2007) (citing Fed. R. Civ. Pro. 72(a)). *See also Sheikhan v. Lenox Hill Hosp.*, 1999 U.S. Dist. Lexis 8770 (S.D.N.Y. 1999) (Rule 72(a) standard applied to discovery orders).

Rule 72(a) reads in relevant part:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings.... Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order.... The district court to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Section 636(b)(1)(A) similarly states in relevant part:

> A judge may designate a magistrate to hear and determine any pretrial matter pending before the court.... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *In re: Veeco Instruments*, 2007 U.S. Dist. Lexis 16922 at *9 (citing *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 622 (S.D.N.Y. 2001)). An order may be deemed contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (citing *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (holding that an order is "clearly erroneous" when the reviewing court is left with a definite and firm conviction that a mistake has

3

been made, and an order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or rules of procedure)).

## Procedural History

On January 18, 2005, this Court denied without prejudice SBG's motion to dismiss the *Burnett* and *Ashton* Plaintiffs' complaints and granted those Plaintiffs' request to conduct discovery limited to the issue of the Court's authority to exercise jurisdiction over SBG.[1] *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005). More specifically, the Court held that plaintiffs were entitled to conduct discovery to determine whether SBG purposefully directed its conduct at the United States, by maintaining ties and providing support to Osama bin Laden, after SBG knew of his terrorist ambitions. On April 6, 2006, Plaintiffs served personal jurisdiction discovery requests on SBG, which responded on July 11, 2005 and August 12, 2005.

On November 1, 2006, after a long meet and confer process, the parties submitted to Judge Casey four letters dated and exchanged between the parties on October 13, 2006 and October 27, 2006, summarizing the parties' respective positions to Judge Casey. The letters addressed two threshold issues – namely, whether discovery of SBG was limited to the several examples of discovery topics specifically referenced in the Court's January 18, 2006 decision, and whether SBG was entitled to serve reciprocal jurisdictional discovery requests on Plaintiffs. On November 28, 2006, Judge Casey issued an Order of

---

[1] SBG has argued that, by using the term "limited jurisdictional discovery," Judge Casey necessarily intended to the term "limited" to limit plaintiffs' jurisdictional discovery to the several examples referenced in his decision. However, Magistrate Judge Maas did not limit plaintiffs' discovery to those examples. *See also Intuit Inc. v. H & R Block Eastern Enterprises, Inc.*, 2006 WL 2504936 (N.D.Cal. 2006) (the term "limited jurisdictional discovery" was not intended to restrict discovery to only certain alleged jurisdictional theories but was intended to limit discovery to the subject of personal jurisdiction)

4

Reference, that referred to Magistrate Judge Maas the "[d]ispute outlined in the four letters attached, two each from October 13, 2006 and October 27, 2006."

After a hearing on December 13, 2006, Judge Maas ruled on January 23, 2007, that Plaintiffs were not limited to the topics specifically referenced in Judge Casey's opinion, but proscribed plaintiffs' discovery regarding eleven topics. *See* Order (Dkt. # 1941) (Jan. 23, 2007). Judge Maas also found that SBG was entitled to jurisdictional discovery after Plaintiffs completed theirs. *Id.*

After SBG served supplemental responses in March 2007, Plaintiffs alleged that SBG's supplemental responses failed to comply with Judge Maas's January 23, 2007 order and the parties began another meet and confer period to address the alleged deficiencies. After the meet and confer period, the parties submitted letters to Judge Maas on the residual disputes and Judge Maas convened a discovery conference on June 29, 2007. During the conference and in a further order, Judge Maas ordered SBG to produce by August 3, 2007, additional discovery related to Osama Bin Laden's alleged separation from SBG and SBG's relationship with defendant Yassin al-Kadi. *See* Order (Dkt. # 1985) (July 6, 2007).[2] Notably, both the existence of the trust and the purported purpose underlying its creation were interjected into the case by SBG. In particular, in support of its Motion to Dismiss, SBG submitted an affidavit from Bakr bin Laden, Osama bin Laden's brother and the head of SBG. In that affidavit, Bakr bin Laden asserted that the trust was created in 1993, to hold funds resulting from the sale of Osama

---

[2] SBG has requested, with plaintiffs consent, an extension until September 10, to comply with his order, which Judge Maas granted on July 30.

5

bin Laden's shares in SBG. Bakr bin Laden and SBG offered the trust's creation as evidence that SBG had severed ties with Osama bin Laden.[3]

During the June 29 conference, when the issue of the additional discovery related to Osama bin Laden's alleged separation from SBG was addressed, plaintiffs' counsel specifically identified the need for discovery concerning the trust that was created allegedly to distance SBG from Osama bin Laden. More specifically, given SBG's contention that the creation of the trust confirmed that it had severed its ties with Osama, plaintiffs sought discovery regarding the creation and management of the trust, trust activity following its creation, and disposition of trust assets. In support of their efforts to compel SBG to produce relevant documentation regarding the trust, plaintiffs noted that Bakr bin Laden's affidavit merely stated that the trust assets were held "outside Osama's control." Plaintiffs pointed out that trusts are by definition maintained for the benefit of parties who do not control the management of the trust assets, and that Bakr bin Laden's affirmation that the trust assets were outside of Osama bin Laden's control (even if accepted at face value) therefore provided little insight as to whether SBG had severed ties with Osama bin Laden. In order to assess the veracity of SBG's contention that the trust evidenced the termination of Osama bin Laden's ties to SBG, again an issue which SBG itself interjected into the case, plaintiffs requested that Judge Maas Order SBG to produce all documentation regarding the trust. Providing what was intended as a non-exhaustive list of items the plaintiffs sought, plaintiffs' counsel identified the need for documents that created the trust, that transferred interests into the trust, that demonstrate

---

[3] In opposition to SBG's Motion to Dismiss, plaintiffs argued that their pleadings specifically alleged that SBG did not sever all ties with Osama bin Laden in 1993, as SBG asserted in its Motion. As stated previously, the Court denied SBG's Motion, finding that plaintiffs were entitled to jurisdictional discovery, to include discovery in support of plaintiffs' contention that SBG maintained ties to Osama bin Laden well after the date SBG suggested it had severed such ties.

6

what happened to any assets that have been held in the trust, that were provided to and received from the sharia court that needed to approve SBG's use of the trust, and that address the purpose of the trust. *See* Transcript of June 29, 2007, Discovery Conference, at 42-44 (attached hereto as Exhibit # 2). In response, Magistrate Judge Maas advised SBG's counsel that "to the extent that there are the additional documents that [plaintiffs' counsel] just described, I will direct that they be turned over." *Id.*

On July 26, 2007, addressing letters dated July 16, 2007 and July 20, 2007, from the parties seeking clarification of the Court's July 6 Order, Magistrate Judge Maas issued a Memorandum Order (Dkt. # 1989). In that order, although Judge Maas recognized that he "clearly intended to include in the scope of [his] order the additional documents recited in the transcript of the conference," he nonetheless significantly restricted the set of documents SBG must produce pursuant to his order. Namely, the order relieved SBG from producing "records of changes in the assets of the trust, unless they were transfers to Osama bin Laden." Accordingly, where one of the central issues in dispute regarding the Court's jurisdictional authority over SBG is whether SBG directed conduct at the United States by providing material support to Osama bin Laden and the Al Qaeda network, the Court's July 26, 2007 order would prevent discovery of any support SBG provided through the trust it created for Osama bin Laden unless the trust passed assets directly to Osama bin Laden. Though such a transaction would be of great significance, plaintiffs respectfully submit that the Court's restriction is inconsistent with Fed. R. Civ. P. 26, and could serve to functionally deprive plaintiffs of any meaningful discovery regarding SBG's alleged severance of ties to Osama bin Laden. In this regard, plaintiffs submit that the restriction imposed by Judge Maas fails to recognize (1) that

7

terrorist financiers ordinarily employ non-direct routes of financing, specifically designed to conceal their support for the terrorist organization and (2) that discovery is particularly appropriate here because trusts are a tool often abused by terrorist financiers due to their ability to hide true ownership of trust assets, conceal the identity of parties benefiting from the trust, and otherwise mask financial details.

### Argument

Pursuant to Federal Rule of Civil Procedure 26, this Court should afford plaintiffs full discovery regarding the trust established by SBG to hold assets belonging to Osama bin Laden. The scope of discovery under Rule 26 is very broad, "encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). *See also National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 91 (S.D.N.Y. 2000) ("In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be discoverable.") (quoting *Morrissey v. City of New York*, 171 F.R.D. 85, 88 (S.D.N.Y. 1997)); *Fountain v. City of New York*, 2004 U.S. Dist. Lexis 7539, *3 (S.D.N.Y. 2004).

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *During v. City Univ. of New York*, 2006 U.S. Dist.

Lexis 53684, *8 (S.D.N.Y. 2006) (citing Fed. R. Civ. Pro. 26(b)(1)). The Second Circuit has recognized that Rule 26 relevance is an "obviously broad rule" that is "liberally construed." *Id.* at *8-9 (citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)).

This Court has applied this broad standard equally to jurisdictional discovery. *William B. Tabler Architects v. Nordheimer*, 1978 U.S. Dist. Lexis 19145, *14-15 (S.D.N.Y. 1978) (rejecting defendants' petition to limit the scope of jurisdictional discovery where the facts at issue were exclusively within the knowledge of the defendants and "plaintiff should be afforded an opportunity to fully explore those areas as well."). *See also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (holding the district court has broad discretion to grant discovery concerning jurisdictional issues).

Consistent with the foregoing standards, plaintiffs are entitled to full discovery of documents relating to the trust, including documents pertaining to *any* transfer of trust assets. In denying SBG's Motion to Dismiss, the Court specifically found that plaintiffs were entitled to discovery regarding SBG's relationship with Osama bin Laden, in support of their purposeful direction theory of personal jurisdiction. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 822. Discovery regarding the trust SBG created for Osama bin Laden's assets is important both because it demonstrates SBG's continued relationship with Osama bin Laden after 1994 and because use of the trust to support al Qaeda after it was known that al Qaeda was targeting the U.S. is relevant to plaintiffs' jurisdictional allegations. And indeed, Judge Maas has properly

recognized that the trust represents a relevant area of inquiry regarding the relationship between SBG and Osama bin Laden.

Given the trust's acknowledged relevance to plaintiffs' jurisdictional theories, plaintiffs respectfully submit that there is no basis under the Rules, based on the record before the Court, to exclude certain categories of trust documents from the required production. Significantly, SBG has not argued that production of documents relating to transfers of trust assets, although relevant, should be excused on some other grounds. In fact, the sole objection SBG has raised in a footnote to its July 16 2007 letter related to the temporal scope of discovery that should be permitted in relation to the trust, and not to the propriety of discovery as to any particular category of trust documents. Accordingly, SBG did not present any basis under Rule 26(b)(2)-(5) to support exclusion of relevant documents relating to asset transfers to parties other than Osama bin Laden from the production.[4]

More importantly, documents pertaining to transfers of trust assets are singularly critical to the pertinent jurisdictional analysis, and the exclusion of such documents from the required production would severely prejudice plaintiffs' efforts to conduct meaningful discovery regarding SBG's contention that it severed ties to Osama bin Laden in 1993. In this regard, the fact that the documents pertain to a trust in which Osama bin Laden

---

[4] In its July 16, 2007 letter, SBG requested that discovery be limited to the period contemporaneous to the establishment of the trust in 1993, and generically asserted that production of all trust documents from subsequent periods would be unduly burdensome. SBG's conclusory assertion that production of all responsive documents would be unduly burdensome could not serve as a grounds to avoid such discovery, as a party seeking to avoid discovery on the grounds that it is overbroad or unduly burdensome "must show specifically . . . how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.'" Abu-Nassar v. Elders Futures, 1991 U.S. Dist. LEXIS 3794 (S.D.N.Y. 1991), quoting Compagnie Francaise d' Assurance v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D. N.Y. 1984). Judge Maas properly denied SBG's unsupported objection to discovery of trust documents relating to the period after 1993, but for reasons which remain unclear to plaintiffs restricted discovery of documents relating to asset transfers, a category of documents that are particularly pertinent to plaintiffs' allegations and to which no specific objection had been raised.

10

undeniably held a beneficial interest at one time is important. Though trusts have legitimate uses, trusts are an efficient tool widely abused by terror financiers because they mask financial details and easily conceal the true ownership of assets held in the trust. *See, e.g.*, 2007 National Money Laundering Strategy, at 63-64 ("...because of their ability to hide ownership and mask financial details [trusts] have become popular tools for money launderers. The use of these legal structures for money laundering is well-established."); FATF-GATI, Report on Money Laundering Typologies 2003-2004, at 20-21 (...financial operations may be concealed behind various other types of opaque legal arrangements such as trusts.").

Given the wide-use of trusts to hide financial transactions and the indications that SBG may have used the trust as part of a scheme to move assets in a manner that inured to Osama bin Laden's benefit, any documents related to the trust should be discoverable — especially documents regarding the trusts transfer or disposal of trust assets.

Based on the Court's July 27 Order, if the trust that SBG established provided material support to al Qaeda in a manner other than by transferring assets directly to Osama bin Laden, the plaintiffs will not discover that very relevant fact. Rather than providing finances directly to Osama bin Laden, if SBG used the trust to finance another entity — for example, a Sudanese bank, or members of the NIF in Sudan — which, in turn, supported al Qaeda, the fact will remain undisclosed. Inasmuch as those examples would provide strong evidence in support of plaintiffs' allegations of jurisdiction, the evidence ought to be discoverable.[5]

---

[5] In fact, even if the trust assets were transferred directly to a senior al Qaeda member other than Osama bin Laden, such as Ayman al Zawahiri, Judge Maas' ruling would deprive plaintiffs of discovery of that obviously critical transaction.

11

The omissions permitted by the Court's July 27th Order are particularly significant in light of evidence suggesting, notwithstanding their comments to the contrary, the Binladin's provided Osama bin Laden access to his inheritance. This report is supported by evidence already before the Court. In November 1993, shortly after SBG claims that it divested Osama bin Laden, SBG shareholders invested in Bank al Taqwa, subsequently named by the U.S. government as a Specially Designated Global Terrorist for its financial support to al Qaeda during this very period of time. *See* Affidavit of John Fawcett in Support of Plaintiffs' Consolidated Opposition to the Motion to Dismiss of Bakr Binladin, Omar Binladin, Tariq Binladin, Mohammad Binladin Company and Binladin Group International Company Ltd. (hereinafter, "Fawcett Aff.")(Dkt. # 1773, attached hereto as Exhibit # 3).

According to the U.S. Department of Treasury, Bank al Taqwa has been "providing indirect investment services for al Qa'ida, investing funds for bin Laden, and making cash deliveries on request to the Al Qa'ida organization." *See* Letter dated January 4, 2002, from G. B. Wolfe, Deputy Gen. counsel, U.S. Department of Treasury to M.C. Nicati, Substitut du Procureur, Switzerland, attachment # 1 to Fawcett Aff. (Dkt. # 1773, attached hereto as Exhibit # 3).

The SBG shareholders who invested in Bank al Taqwa were Ghalib and Bakr Binladin. Bakr was the oldest brother, the largest SBG shareholder and the head of the company. Ghalib is the same brother who, according to SBG corporate records took possession of Osama bin Laden's shares, at Osama's request. *See* Exhibit C to Memorandum in Support of Defendant Bakr Binladin, Omar Binladin, Tariq Binladin, Mohammad Binladin Company and Binladin Group International Company Ltd's Motion

to Dismiss. (Dkt. # 1645, attached hereto as Exhibit # 4.) Despite the evidence suggesting that the transaction may have been a means of providing Osama bin Laden access to a portion of his inheritance or the $9.9 million value of his shares in SBG, the Court's July 27th order would not permit Plaintiffs to discover any information regarding this transaction.

To the extent that SBG contends that production of the documents sought may be unduly burdensome, SBG has the obligation of demonstrating such a burden.[6] Inasmuch as SBG has made no showing of such an undue burden, it should remain obligated to produce the requested documents.

### Conclusion

For the reasons expressed herein, Plaintiffs respectfully request that the District Court vacate the Order of Magistrate Judge Frank Maas dated July 26, 2007 insofar as that order limits the plaintiffs' discovery from SBG regarding the trust SBG established for assets of Asama Binladen. Furthermore, Plaintiffs request that the District Court direct SBG to produce all documents in its control regarding the trust.

Respectfully submitted,
MOTLEY RICE LLC

By: /s/ Robert T. Haefele
    Robert T. Haefele, Esq. (NJ-58293; PA-57937 ; SC-75266)
    28 Bridgeside Boulevard
    P.O. Box 1792
    Mount Pleasant, South Carolina 29465
    Telephone: (843) 216-9000
    Plaintiffs' Counsel in *Burnett*

---

[6] Plaintiffs submit that it is reasonable to infer that SBG has previously had occasion to search its corporate files and assemble documents relating to the company's relationship with Osama bin Laden, given bin Laden's status as the world's foremost terrorist and the countless investigations that have been conducted of his activities from the early 1980s to the present.

KREINDLER & KREINDLER

By: /s/ Andrew J Maloney III
    Andrew J. Maloney III (AM8684)
    100 Park Avenue
    New York, NY  10017-5590
    Phone:  (212) 687-8181
    Plaintiffs' Counsel in *Ashton*