## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (GBD)
ECF Case

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Euro Brokers, Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*World Trade Ctr. Prop., LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

## MEMORANDUM OF LAW IN SUPPORT OF ABDUL HAMID ABU SULAYMAN'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Abdul Hamid Abu Sulayman*

Dated:  August 23, 2007

Abdul Hamid Abu Sulayman, by and through undersigned counsel, hereby submits this

Memorandum of Law in Support of his Motion to Dismiss the claims asserted against him in

*Burnett, et al. v. Al Baraka Investment & Development Corp.*, *et al.*, Case No. 03-CV-9849

(RCC) ("*Burnett*"), *Euro Brokers, Inc. et al. v. Al Baraka Investment & Development Corp., et*

*al.*, Case No. 04-CV-7279 ("*Euro Brokers*"), and *World Trade Center Properties LLC, et al. v.*

*Al Baraka Investment & Development Corp., et al.*, Case No. 04-CV-7280 ("*WTC Properties*")

pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state claims upon which relief

can be granted.

## PRELIMINARY STATEMENT

Abu Sulayman has been named as a defendant in three of the cases consolidated in this

multidistrict litigation -- *Burnett*, *Euro Brokers* and *WTC Properties*. Plaintiffs' various claims,

brought pursuant to the Antiterrorism Act, RICO, the Torture Victim Protection Act, Alien Tort

Claims Act, and various common law theories should be dismissed because each one requires

Plaintiffs to allege that that Abu Sulayman assisted or knowingly funded terrorism, and none of

the Plaintiffs have alleged that he has done so.

Plaintiffs' primary basis for claiming liability against Abu Sulayman is his alleged

involvement in the so-called "SAAR Network." [1]  But on January 18, 2005, the Court, in

considering the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called

"SAAR Network," found that the *Federal Insurance* Plaintiffs had provided "scant basis for

linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11,*

*2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*").  And in a

---

[1] The Court used the phrase "SAAR Network Defendants" solely for convenience, and not
because Plaintiffs have alleged the existence of such a network. *See In re Terrorist Attacks on
September 11, 2001*, 392 F. Supp. 2d 539, n. 15  (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").

September 21, 2005 Opinion and Order, and the Court dismissed the claims against several of the alleged "SAAR Network" defendants in the *Federal Insurance* action. Reviewing allegations similar to but more descriptive than the allegations at issue here, the Court dismissed the claims against the individuals because "the complaint [did] not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, 392 F. Supp. 2d at 572.

These rulings compel the dismissal of the claims against Abu Sulayman made in *Burnett*, *Euro Brokers*, and *WTC Properties*. Plaintiffs' allegations are nothing more than conclusory statements that he is liable for the September 11th attacks because he is a member of the so-called "SAAR Network." These allegations are no different than the vague and conclusory allegations the Court already found do not state a claim in *Federal Insurance*.

Plaintiffs have not and cannot assert that Abu Sulayman ever knowingly or intentionally supported al Qaida or any form of terrorism. Because Plaintiffs have failed to come forward with even a single factual allegation connecting Abu Sulayman with terrorism financing or the events of September 11, 2001, the complaints fail to state claims and must be dismissed.

## PROCEDURAL HISTORY

## I.    THE COURT'S JANUARY 18, 2005 DECISION

On January 18, 2005, the Court ruled on motions to dismiss made by numerous defendants, including motions filed by some of the so-called "SAAR Network Defendants," to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule 12(b)(6). The Court considered all of the *Federal Insurance* complaint's allegations concerning the existence of a so-called "SAAR Network" -- allegations nearly identical to those asserted in these actions -- and concluded that Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823.

2

Nevertheless, the Court found that its "analysis of the [defendant's] arguments in favor of 12(b)(6) dismissal depend[ed] on a predicate finding of which [defendants] are subject to this Court's personal jurisdiction and which [defendants]--and under what circumstances--transferred money to terror fronts." *Id*. at 837. Accordingly, the Court denied the defendants' Rule 12(b)(6) motion to dismiss without prejudice but noted that it could be "renewed upon completion of personal jurisdiction discovery." *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence. *Id.* at 837-38.

## II.    THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued another Opinion and Order relevant to these proceedings, dismissing the *Federal Insurance* claims against several so-called "SAAR Network Executives." The Court also dismissed the claims against eight so-called "SAAR Network Entities," African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation in the *Burnett* action, and dismissed the claims against IIIT from *Ashton* as well. *In re Terrorist Attacks II*, 392 F. Supp. 2d at 575-76.[2]

The Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the moving defendants pursuant to Rule 12(b)(6). *Id.* at 565-66. The Court

---

[2] The Court dismissed the claims against another purported "SAAR Network Entity" Mar-Jac Poultry ("Mar-Jac"), from *Ashton, Burnett* and *Federal Insurance*. *Id.* After reviewing the allegations against Mar-Jac, including those allegations in the *Federal Insurance* RICO Statement applicable to SAAR Network Entities that alleged Mar-Jac Poultry donated money to African Muslim Agency which the Plaintiffs claim was later "laundered," and that it donated money to unnamed SAAR Network Entities that was later forwarded to al Qaeda, the Court dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* The Court dismissed the remainder of the claims because the complaints did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

3

also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and

intentional infliction of emotional distress. *Id.* at 566. The Court noted that it would review each

complaint individually to determine whether each stated a claim for relief under the

Antiterrorism Act ("ATA") and RICO. The Court noted that if "Plaintiffs state a claim for relief

under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal*

Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have

stated claims for intentional infliction of emotional distress. Plaintiffs who are aliens will have

also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*[3]

The Court analyzed the allegations against the "SAAR Network Defendants," noting that

Plaintiffs' claims against the "SAAR Network Entities" "rely primarily on their allegations

against the 'SAAR Foundation and network.'" *Id.* at 569. Plaintiffs alleged that the "SAAR

Network" was formed "by a group of Muslim scholars and scientists" and that its "largest donor

is the al Rajhi family of Saudi Arabia." *Id.* The complaints further alleged that many of the

"SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of

Operation Greenquest to investigate "potential money laundering and tax evasion activities and

their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including)

Osama bin Laden."[4] *Id.* at 570. These general and conclusory allegations are similar, if not

---

[3] In short, regardless of the type of claim asserted, the Court found that to survive a motion to dismiss, Plaintiffs must allege that a defendant "knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'" *Id.* at 564.

[4] Plaintiffs seek to infer liability against Abu Sulayman from the existence of this highly publicized mass raid. That raid, however, occurred well over five years ago and during that time the government has not handed down one indictment, made one arrest, designated any defendant as a sponsor of terrorism or frozen or seized a single account or asset. The only reasonable inference that can be drawn from the government's investigation and raid is that it has failed to yield even a single iota of evidence showing that Abu Sulayman has had anything to do with funding or supporting terrorism.

4

identical, to the allegations that Abu Sulayman faces in *Burnett*, *Euro Brokers*, and *WTC Properties*.

The Court dismissed the *Federal Insurance* claims against the defendants because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *Id.* at 572.

The Court dismissed the *Burnett* Plaintiffs' claims against the "SAAR Network Entities" because these allegations were only a "legal conclusion that the SAAR Network entities conspired with the SAAR Network" and Plaintiffs failed to provide defendants with "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *Id.* at 570. The *Ashton* complaint against IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.* at 571.

### III.    ABU SULAYMAN'S DEFAULT JUDGMENT IS VACATED

On April 4, 2006, the *Burnett* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Abu Sulayman, and on May 3, 2006, the *Euro Brokers* and *WTC Properties* Plaintiffs sought the issuance of certificates of default against numerous defendants including Abu Sulayman. The Court *sua sponte* entered default judgments against Abu Sulayman in *Burnett* on April 7,  2006, and in *WTC Properties* and *Euro Brokers* on May 12, 2006. On April 14, 2006, after the default judgments were issued, the Clerk of the Court issued a certificate of default in *Burnett*. There is no indication on the docket that certificates of default were issued by the Clerk in either *Euro Brokers* or *WTC Properties*.

On February 21, 2007, Abu Sulayman filed a Motion to Vacate Default Judgments entered against him in *Burnett, Euro Brokers* and *WTC Properties* because his defaults were not willful. On August 3, 2007, the Court vacated the defaults and default judgments.

Abu Sulayman now moves the Court to dismiss the claims in the complaints against him pursuant to Rule 12(b)(6).

**ARGUMENT**

## I.    LEGAL STANDARD FOR MOTION TO DISMISS

On May 21, 2007, the Supreme Court clarified the pleading standard for dismissing a claim under Federal Rule of Civil Procedure 12(b)(6). *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Rejecting the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),[5] the Supreme Court announced that the definitive test to be applied when considering a motion to dismiss is whether the complaint alleges "enough facts to state a claim that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Although the Court still must assume that all of the allegations in the complaint are true and draw reasonable inferences in the plaintiff's favor, *Twombly* confirmed that "conclusory statements [cannot] substitute for minimally sufficient factual allegations.'" *Eon Labs Mfg., Inc. v. Watson Pharm., Inc.*, 164 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (citation omitted).

---

[5] *Conley* held that dismissal for failure to state a claim is permitted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley*, 355 U.S. at 45-46.

## II.     THE COMPLAINTS FAIL TO STATE CLAIMS

### A.     Plaintiffs' Allegations

The *Burnett* Plaintiffs filed their Third Amended Complaint on November 22, 2002, in federal district court in the District of Columbia prior to the case's transfer to this Court. Abu Sulayman is named as a defendant in the complaint and is mentioned in one paragraph of the 723 paragraph complaint. Specifically, the *Burnett* Plaintiffs allege that, "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network include . . .Abu Sulayman." *Burnett* Compl. ¶ 267.

The *WTC Properties* Plaintiffs filed their complaint on September 10, 2004. Abu Sulayman is named as a defendant in that action, but again he is mentioned in only one paragraph in the 1192 paragraph complaint. Similar to the allegations in *Burnett*, the *WTC Properties* Plaintiffs allege that, "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network include . . . Abu Sulayman." *WTC Properties* Compl. ¶ 441.

The *Euro Brokers* Plaintiffs filed their complaint on September 10, 2004. Mr. Sulayman is named as a defendant in the caption of the case; however, not a single allegation is made against him in the complaint.

Plaintiffs assert various different causes of action against Abu Sulayman including claims brought pursuant to the Antiterrorism Act, RICO, the Torture Victim Protection Act, Alien Tort Claims Act, and various common law theories. As the Court has found, regardless of the type of claim asserted, to survive a motion to dismiss, Plaintiffs must allege that a defendant "knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in

some act of helping the illegal activities.'" *In re Terrorist Attacks II*, at 564. Plaintiffs' claims should be dismissed because they have failed to make any such factual allegations.

### B.    Plaintiffs' Allegations Fail To State Claims

In *Burnett and WTC Properties*, the Plaintiffs merely allege that Abu Sulayman is a co-conspirator, material sponsor, aider, abettor, and participant of the so-called "SAAR Network." (*Burnett* Compl. ¶ 267; *WTC Properties* Compl. ¶ 441.) This conclusory allegation/label does not come close to stating a claim. In its January 18, 2005 Opinion regarding the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," the Court found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823. Because Plaintiffs have failed to state facts that establish the existence of an alleged "SAAR Network" or facts that illuminate what the alleged "SAAR Network" did, if anything, their conclusory allegations that Abu Sulayman is involved with the "SAAR Network" does not state a claim even if it were factually supported such that it could be deemed true.

The *Euro Brokers* Complaint does not contain *any* allegations against Abu Sulayman; it merely lists – or labels – him as a defendant in its caption. The Complaint fails utterly to provide Abu Sulayman adequate notice of any claims or any grounds upon which Plaintiffs allege they are entitled to relief. *See* Fed. R. Civ. P. 8 (complaint must allege a short and plain statement setting forth the grounds of relief). Thus, the *Euro Broker* Complaint fails to allege a cognizable or plausible claim against Abu Sulayman and must be dismissed. *See, e.g., In re Tamoxifen Nitrate Antitrust Litig.*, 429 F.3d 370, 385 (2d Cir. 2005) ("[B]ald assertions and conclusions of law are not adequate [to state a claim] and a complaint consisting only of naked assertions, and

setting forth no facts upon which a court could find a violation of the [law], fails to state a claim under Rule 12(b)(6).")

In its September 21, 2005 Opinion and Order, the Court dismissed the claims against five of the so-called "SAAR Network" executives in the *Federal Insurance* action based upon allegations that are far more detailed than the conclusory allegation against Abu Sulayman.  The Court dismissed these claims because "the complaint [did] not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists."  *In re Terrorist Attacks II,* 392 F. Supp. 2d at 572.  The allegations against Abu Sulayman are far weaker than the factual allegations in *Federal Insurance* that the Court found did not state a claim in its September 21, 2005 Opinion and Order.

Moreover, Plaintiffs have failed to allege that Abu Sulayman knowingly and intentionally provided material support to al Qaeda.  In its January 18, 2005 Order, the Court held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda.  See Terrorist Attacks I*, 349 F. Supp. 2d at 826 (emphasis added).  Plaintiffs have not made, nor could they make, such an allegation.

Accordingly, the claims against Mr. Sulayman in *Burnett, Euro Brokers*, and *WTC Properties* should be dismissed because "reading the complaint[s] as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide [him] with notice as to how [he] provided material support to al Qaeda terrorists."  *In re Terrorist Attacks II,* 392 F. Supp. 2d at 572.

## CONCLUSION

For the reasons articulated above, Abdul Hamid Abu Sulayman respectfully requests that

the Court grant his Motion to Dismiss and dismiss the claims asserted against him in *Burnett*,

*Euro Brokers*, and *WTC Properties* with prejudice.

Dated:  August 23, 2007                    Respectfully submitted,

                                           DLA PIPER US LLP

                                           By:  /s/  Nancy Luque
                                                Nancy Luque (NL-1012)
                                                Steven K. Barentzen (SB-8777)
                                                1200 Nineteenth Street, NW
                                                Washington, DC  20036-2430
                                                Telephone: (202) 861-3900
                                                Facsimile:   (202) 223-2085

                                           *Attorneys for Abdul Hamid Abu*
                                           *Sulayman*

## Certificate of Service

I hereby certify that on this 23rd day of August, 2007, I caused an electronic copy of Abdul Hamid Abu Sulayman's Motion To Dismiss and Supporting Memorandum of Law to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)