IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD) ECF Case |

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

---

**MEMORANDUM OF LAW IN SUPPORT OF SAMIR SALAH'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Steven K. Barentzen (SB-8777)
**DLA PIPER US LLP**
1200 Nineteenth Street, N.W.
Washington, DC 20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Samir Salah*

Dated: August 23, 2007

Samir Salah, by and through undersigned counsel, hereby submits this Memorandum of Law in Support of his Motion to Dismiss the claims asserted against him in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-9849 (RCC) ("*Burnett*") (03-MDL-1570, Docket # 1756) and *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-CV-6978 (RCC) ("*Federal Insurance*") (03-MDL-1570, Docket #1754-1755) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Mr. Salah is a United States citizen who has never supported or funded terrorism and who denounces the horrific acts of those involved in the September 11, 2001 attacks. Nevertheless, Mr. Salah is named as a defendant in two of the cases consolidated in this multidistrict litigation -- *Burnett* and *Federal Insurance*. Plaintiffs' various claims, brought pursuant to the Antiterrorism Act, RICO, the Torture Victim Protection Act, Alien Tort Claims Act, and various common law theories should be dismissed because each one requires Plaintiffs to allege that that Mr. Salah assisted or knowingly funded terrorism, and none of the Plaintiffs have alleged that he has done so.

Plaintiffs' primary basis for claiming liability against Mr. Salah is his alleged involvement in the so-called undefined "SAAR Network."[1] But on January 18, 2005, the Court, in considering the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11,*

---

[1] The Court used the phrase "SAAR Network Defendants" solely for convenience, and not because Plaintiffs have alleged the existence of such a network. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, n. 15 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").

*2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*"). And in a September 21, 2005 Opinion, the Court dismissed similar claims against several of the alleged "SAAR Network" defendants in the *Federal Insurance* action because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, 392 F. Supp. 2d at 572.

These rulings compel the dismissal of Plaintiffs' Antiterrorism Act, and other claims, against Mr. Salah made in *Burnett* and *Federal Insurance*. Plaintiffs' allegations against Mr. Salah are nothing more than conclusory statements that he is liable for the September 11th attacks because he is a member of the so-called "SAAR Network." These allegations are no different than the vague and conclusory allegations the Court already has found do not state claims in *Federal Insurance*.

Plaintiffs have not and cannot assert that Mr. Salah ever knowingly or intentionally supported al Qaida or any form of terrorism. Because Plaintiffs have failed to come forward with even a single factual allegation connecting Mr. Salah with terrorism financing or the events of September 11, 2001, the complaints fail to state claims against Mr. Salah and must be dismissed.

## PROCEDURAL HISTORY

### I. THE COURT'S JANUARY 18, 2005 DECISION

On January 18, 2005, the Court ruled on motions to dismiss made by numerous defendants, including the motions filed by some of the so-called "SAAR Network Defendants" to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule 12(b)(6). The Court considered all of the *Federal Insurance* complaint's allegations concerning the existence of a so-called "SAAR Network" -- allegations identical to those asserted in these actions -- and concluded that Plaintiffs had "provided scant basis for linking these entities under

2

the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823.

Nevertheless, the Court found that its "analysis of the [defendant's] arguments in favor of 12(b)(6) dismissal depend[ed] on a predicate finding of which [defendants] are subject to this Court's personal jurisdiction and which [defendants]--and under what circumstances--transferred money to terror fronts." *Id.* at 837. Accordingly, the Court denied the defendants' Rule 12(b)(6) motion to dismiss without prejudice but noted that it could be "renewed upon completion of personal jurisdiction discovery." *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence. *Id.* at 837-38.

## II.     THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued another Opinion and Order relevant to these proceedings. This time the Court dismissed the *Federal Insurance* claims against several members of the so-called "SAAR Network Executives." The Court also dismissed the claims against eight so-called "SAAR Network Entities," African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation in the *Burnett* action, and dismissed the claims against IIIT in *Ashton* as well. *In re Terrorist Attacks II*, 392 F. Supp. 2d at 575-76.[2]

---

[2] The Court dismissed the claims against another purported "SAAR Network Entity" Mar-Jac Poultry ("Mar-Jac"), from *Ashton, Burnett* and *Federal Insurance*. *Id.* After reviewing the allegations against Mar-Jac, including those allegations in the *Federal Insurance* RICO Statement applicable to SAAR Network Entities that alleged Mar-Jac Poultry donated money to African Muslim Agency which the Plaintiffs claim was later "laundered," and that it donated money to unnamed SAAR Network Entities that was later forwarded to al Qaeda, the Court dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* The Court dismissed the remainder of the claims because the complaints did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

3

As an initial matter, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the defendants moving for dismissal under Rule 12(b)(6). *Id.* at 565-66. The Court also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and intentional infliction of emotional distress. *Id.* at 566. The Court noted that it would review each complaint individually to determine whether each stated a claim for relief under the Antiterrorism Act ("ATA") and RICO, and that if "Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal* Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have stated claims for intentional infliction of emotional distress. Plaintiffs who are aliens will have also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*[3]

The Court analyzed the allegations against the "SAAR Network Defendants," noting that Plaintiffs' claims "rely primarily on their allegations against the 'SAAR Foundation and network.'" *Id.* at 569. Plaintiffs alleged that the "SAAR Network" was formed "by a group of Muslim scholars and scientists" and that its "largest donor is the al Rajhi family of Saudi Arabia." *Id.* The complaints further alleged that many of the "SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of Operation Greenquest to investigate "potential money laundering and tax evasion activities and their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including) Osama bin Laden."[4] *Id.* at 570. These

---

[3] In short, regardless of the type of claim asserted, the Court found that to survive a motion to dismiss, Plaintiffs must allege that a defendant "knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'" *Id.* at 564.

[4] Plaintiffs seek to infer liability against Mr. Salah from the existence of this highly publicized mass raid. That raid, however, occurred well over five years ago and during that time the government has not handed down one indictment, made one arrest, designated any defendant as a sponsor of terrorism or frozen or seized a single account or asset. The only reasonable inferences that can be drawn from the government's investigation and raid is that it has failed to

4

general and conclusory allegations are similar, if not identical, to the allegations that Mr. Salah faces in *Burnett* and *Federal Insurance*.

The Court dismissed the *Federal Insurance* claims against the defendants because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *Id.* at 572. Simply put, the complaint alleged no conduct – it merely labeled the "Saar Network" defendants.

The Court dismissed the *Burnett* Plaintiffs' claims against the "SAAR Network Entities" because they rested only on a "legal conclusion that the SAAR Network entities conspired with the SAAR Network" and that Plaintiffs had failed to provide defendants with "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *Id.* at 570. The *Ashton* complaint against "SAAR Network Entity" IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.* at 571.

### III. MR. SALAH'S DEFAULT JUDGMENT IS VACATED

On September 29, 2005, the *Federal Insurance* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Salah. On April 4, 2006, the *Burnett* Plaintiffs sought the issuance of certificates of default from the Clerk of Court against numerous defendants including Mr. Salah, and on April 7, the Court *sua sponte* entered default judgments against Mr. Salah in *Burnett* and *Federal Insurance*. On April

---

yield even a single iota of evidence showing that Mr. Salah has anything to do with funding or supporting terrorism.

14, 2006, after the default judgments were issued, the Clerk of the Court issued certificates of default.

On February 21, 2007, Mr. Salah filed a Motion to Vacate Default Judgments entered against him in *Burnett* and *Federal Insurance* because his defaults were not willful. On August 3, 2007, the Court vacated the defaults and default judgments.

Mr. Salah now moves the Court to dismiss the claims in the complaints against him pursuant to Rule 12(b)(6).

## ARGUMENT

### I.  LEGAL STANDARD FOR MOTION TO DISMISS

On May 21, 2007, the Supreme Court clarified the pleading standard for dismissing an action under Federal Rule of Civil Procedure 12(b)(6). *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Rejecting the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),[5] the Supreme Court announced that the definitive test to be applied when considering a motion to dismiss is whether the complaint alleges "enough facts to state a claim that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Although the Court still must assume that all of the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor, *Twombly* confirmed that "conclusory statements [cannot] substitute for minimally sufficient factual allegations.'" *Eon Labs Mfg., Inc. v. Watson Pharm., Inc.*, 164 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (citation omitted).

---

[5] *Conley* states that dismissal for failure to state a claim is permitted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley*, 355 U.S. at 45-46.

## II. THE COMPLAINTS FAIL TO STATE CLAIMS

### A. Plaintiffs' Allegations

On November 22, 2002, the *Burnett* Plaintiffs filed their Third Amended Complaint, in federal district court in the District of Columbia prior to the case's transfer to this Court. Although Mr. Salah is not named as a defendant in the complaint, he is mentioned in three paragraphs of the 723 paragraph complaint. The only factual allegations in the complaint are that: (1) "Two SAAR Network executives, Samir Salah and Ibrahim Hassabella, were former executives at bank al-Taqwa;" (2) "Two officers from Taibah International's United States branch, Samir Salah and Abdulrahman al-Amoudi (or "al-Amoudi"), play a large role with United States organizations that have come under scrutiny for their ties to al Qaeda;" (3) "Samir Salah, Taibah's Secretary, serves as a director at many SAAR Network organizations, including CFO at Piedmont Poultry;" and (4) "Samir Salah also managed the Caribbean branch of the Bank al-Taqwa." *Burnett* Compl. ¶¶ 265, 307-308.

On March 10, 2004, the *Federal Insurance* Plaintiffs filed their First Amendment Complaint. Mr. Salah is named as a defendant in that action, but he is mentioned in only three paragraphs of the 646 paragraph complaint. The only factual allegations in the complaint are that Mr. Salah: (1) "was a founder of the Safa Trust, and an officer of several other companies within the SAAR Network;" (2) "helped establish Bank al Taqwa in the mid 1980s;" and (3) "was also deeply involved with the operations of Taibah International." *Federal Insurance* Compl. ¶¶ 66, 492-493.

Plaintiffs assert various different causes of action against Mr. Salah including claims brought pursuant to the Antiterrorism Act, RICO, the Torture Victim Protection Act, Alien Tort Claims Act, and various common law theories. As the Court has found, regardless of the type of

7

claim asserted, to survive a motion to dismiss, Plaintiffs must allege that a defendant "knew of al Qaeda's illegal activities, 'that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.'" *In re Terrorist Attacks II*, at 564. Plaintiffs' claims should be dismissed because they have failed to make any such factual allegations.

### B. The Allegations Are Vague, Conclusory, And Fail To State Claims

Plaintiffs allege that Mr. Salah is a so-called "SAAR Network" executive. *Burnett* Compl. ¶¶ 289, 307-308; *Federal Insurance* Compl. ¶¶ 66, 492-493. This allegation does not state claims. In its January 18, 2005 Opinion, in considering the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," the Court found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 823. Because Plaintiffs have failed to establish the existence of the alleged "SAAR Network" or that the alleged "SAAR Network" did anything wrong – their conclusory allegation that Mr. Salah is a "SAAR Network" executive would not state a claim even if it were true.

In its September 21, 2005 Opinion and Order, the Court dismissed the claims against five of the so-called "SAAR Network" executives in the *Federal Insurance* action based upon allegations similar to the conclusory allegations against Mr. Salah. The Court dismissed these claims because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* 392 F. Supp. 2d at 572. The allegations against Mr. Salah concerning his so-called involvement in the "SAAR Network" are no different than the vague and conclusory allegations that the Court already found do not state claims in *Federal Insurance*.

8

Plaintiffs also allege that Mr. Salah was a former executive of Bank al-Taqwa in the mid 80's and a former officer of Taibah International during some unspecified time period. (*Burnett* Compl. ¶¶ 265, 307-308; *Federal Insurance* Compl. ¶¶ 66, 492-493.) These two organizations allegedly sponsor terrorism and were designated by the Department of the Treasury as "Specially Designated Global Terrorists" on November 7, 2001 and May 11, 2004 respectively, both *after* the September 11th attacks.

The Court has held that a defendant may be responsible for the September 11 attacks *only if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda.* See *Terrorist Attacks I*, 349 F. Supp. 2d at 826 (emphasis added). Thus, even if Mr. Salah had served as an executive of Bank al-Taqwa in the mid 80's as Plaintiffs allege, this allegation could not possibly state claims against Mr. Salah because Plaintiffs have not alleged that, *at that time*: 1) Bank al-Taqwa was engaged in terrorist activities or financing terrorism; or 2) that Mr. Salah *knew* that Bank Al Taqwa was engaged in terrorist activities. Bank al-Taqwa was not designated as a financier of terrorism until November 2001, *after* the September 11, 2001 attacks, and thus a claim would have to be premised on Mr. Salah's involvement with the bank after that time.

Similarly, even if Mr. Salah had been an officer of Taibah International, Plaintiffs fail to allege the time period during which he was allegedly an officer. Thus, Plaintiffs have failed to allege that *during the time that Mr. Salah purportedly was an officer*, that 1) Taibah International was engaged in terrorist activities or financing terrorism; or 2) that Mr. Salah *knew* that Taibah International was engaged in terrorist activities -- indeed it was not designated as a financier of terrorism until May 11, 2004, well after the September 11, 2001 attacks.

Moreover, to state a claim against Mr. Salah, Plaintiffs are required to allege that he knowingly and intentionally participated in some action on behalf of one of the entities for which

9

it could be held liable for the September 11th attacks. Plaintiffs have made no such allegation because they cannot. Instead, Mr. Salah's alleged liability is based solely on his status as a former officer or executive of each of these entities, and that is insufficient to state a claim. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions of others in the corporation merely by virtue of his position or office. He may become liable if he knowingly participates in such actions."); *see also In re Terrorist Attacks II*, 392 F. Supp. 2d at 567-68 (sustaining *Federal Insurance* complaint against Abdulrahman Alamoudi because those plaintiffs alleged that he "funneled money to al Qaeda through the charities with which he was involved," and dismissing claims of other plaintiffs who only asserted he was associated with certain entities).

The remainder of Plaintiffs' allegations against Mr. Salah are conclusions resting on no specific facts, allegations that should not be credited and that do not give Mr. Salah notice of the claims against him. For example, the *Federal Insurance* Plaintiffs allege that Mr. Salah: (1) "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associates, organizations or persons;" (2) "made substantial contributions to many of the charities operating with al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's operations and terrorist attacks;" and (3) "through his various for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, Samir Salah has long provided material support and resources to al Qaida." *Federal Insurance* Compl. ¶¶ 66, 492-493.

However, as the Supreme Court recently reaffirmed in *Twombly*, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions"

10

and "[f]actual allegations must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965. It is well-established that "conclusory statements [cannot] substitute for minimally sufficient factual allegations.'" *Eon Labs Mfg., Inc. v. Watson Pharm., Inc.*, 164 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (citation omitted).

These conclusory allegations fail to provide Mr. Salah "with notice as to *how* [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* 392 F. Supp. 2d at 572 (emphasis added). Plaintiffs do not allege to which charity purportedly "operating with al Qaida's infrastructure" Mr. Salah made "substantial contributions" or when he did so—let alone do they define that "infrastructure." Similarly they do not identify which "for-profit enterprises . . . charities and individuals operating within al Qaida's infrastructure" that Mr. Salah provided material support to or when. The failure to provide any specific facts is telling in that it confirms that Plaintiffs have no facts which connect Mr. Salah to "al Qaida's infrastructure," or that connect the alleged "infrastructure" to the events at issue here.

Plaintiffs' conclusory allegations are another way of labeling Mr. Salah as liable to Plaintiffs rather than stating facts to support the claim—similar to saying he is part of the so-called "SAAR Network." Accordingly, Plaintiffs' claims should be dismissed because "reading the complaint[s] as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide [Mr. Salah] with notice as to how [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* 392 F. Supp. 2d at 572.

11

## CONCLUSION

For the reasons articulated above, Mr. Salah respectfully requests that the Court grant his Motion to Dismiss and dismiss the claims asserted against him in *Burnett* and *Federal Insurance* with prejudice.

Dated: August 23, 2007  Respectfully submitted,

DLA PIPER US LLP

By: /s/ Nancy Luque
 Nancy Luque (NL-1012)
 Steven K. Barentzen (SB-8777)
 1200 Nineteenth Street, NW
 Washington, DC 20036-2430
 Telephone: (202) 861-3900
 Facsimile: (202) 223-2085

*Attorneys for Samir Salah*

## Certificate of Service

I hereby certify that on this 23rd day of August, 2007, I caused an electronic copy of Samir Salah's Motion To Dismiss and Supporting Memorandum of Law to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/ Steven K. Barentzen
Steven K. Barentzen (SB-8777)