UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IN RE TERRORIST ATTACKS ON                    Civil Action No.
SEPTEMBER 11, 2001                            03 MDL 1570 (GBD)(FM)
----------------------------------------------------------x

**This document relates to:**

*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.,* **03 CV 9849 (GBD)(FM)**
*Ashton, et al. v. Al Qaeda Islamic Army, et al.,* **02 CV 6977 (GBD)(FM)**

## DEFENDANT SAUDI BINLADIN GROUP'S
## RESPONSE TO PLAINTIFFS' OBJECTIONS TO ORDER OF MAGISTRATE JUDGE
## MAAS DATED JULY 26, 2007

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

I.    PLAINTIFFS' SUBMISSION IS PROCEDURALLY FLAWED ...................................1

II.   THE ISSUE PLAINTIFFS RAISE RESTS ON A FALSE PREMISE AND
      AN INCOMPLETE RECORD ........................................................................................3

      A.   Background on Defendant SBG ................................................................................4

      B.   Procedural Posture ....................................................................................................5

      C.   Plaintiffs' Claim Rests on False Assumptions ..........................................................8

CONCLUSION .....................................................................................................................10

## INTRODUCTION

The Court should reject Plaintiffs' Objections to the Order of Magistrate Judge Maas Dated July 26, 2007 (Dkt. # 2027) because the filing is untimely and procedurally flawed. Plaintiffs filed their objections outside the 10-day deadline set by Rule 72 and failed to give Defendant Saudi Binladin Group ("SBG") the 5-day notice of filings that this Court has required in this case.

Even if reviewed on the substance, the Court should deny Plaintiffs the relief sought because the issue they raise rests on a false premise and an incomplete record. SBG's supplemental discovery responses are not due until September 10, 2007. When submitted, they will provide a record on which Judge Maas can, in the first instance, assess Plaintiffs' speculative objections to the scope of that production. Although not yet complete, SBG's investigation indicates that it does not have within its possession, custody or control any of the additional documents Plaintiffs complain should have been ordered to be produced. Nor, as explained further below, did Plaintiffs have any grounds to claim that these documents would or should be in SBG's control. Plaintiffs had no justification for wasting the Court's time or SBG's resources with this baseless motion.

## I. PLAINTIFFS' SUBMISSION IS PROCEDURALLY FLAWED

Plaintiffs' filing should be rejected as untimely under the Federal Rules and contrary to the procedures established by the Court. First, the filing was untimely under Federal Rule 72. That rule requires objections to the findings of a Magistrate Judge to be filed "within 10 days after being served with a copy of the magistrate judge's order." Fed. R. Civ. P. 72(a). A party "may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* Here, although Judge Maas's order was not entered on the ECF system until July 27, both Plaintiffs' and SBG's counsel were served copies of the order by

facsimile on Thursday, July 26, 2007 (a fact Plaintiffs omit in their submission). Counting, as required by Rule 72(a), from the date of service, and taking into account Federal Rule 6(e), which provides three additional calendar days, and Rule 6(a), which excludes "intermediate Saturdays, Sundays, and legal holidays," Plaintiffs had 10 business days plus an additional three calendar days within which to file their objections. *See Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F. Supp. 2d 413, 415-416 (W.D.N.Y. 2005) ("The additional three days provided for under Rule 6(e) are calendar days, not business days, and are added after the calculation of the 10 days pursuant to Rule 6(a)."). Therefore, Plaintiffs' objections were due on Monday, August 13.[1] Plaintiffs, however, did not file their objections until late in the evening of Tuesday, August 14.

Accordingly, this Court should reject Plaintiffs' objections as untimely. Although the one-day deficiency may appear minor, Rule 72 does not contemplate exceptions and other courts have enforced the deadline strictly. *See, e.g.*, *Dreyer*, 367 F. Supp. 2d at 415-416 (finding a Rule 72(a) filing untimely by one day); *Berman v. Cong. Towers Ltd. P'ship*, 325 F. Supp. 2d 590, 592-93 (D. Md. 2004) (declining to review a Rule 72(a) objection that was untimely by several minutes).

In addition to Rule 72's time limit, Plaintiffs also disregard the Court's procedures in this case, which require a party to provide submissions to the other side five business days prior to filing. Plaintiffs offer no reason for disregarding this requirement. The Court's notice requirement is designed to ensure that disputes are presented to the Court in an efficient and

---

[1] Thirteen days from the service date of July 26 would fall on August 12, a Sunday. The deadline, therefore, was the following Monday. Were the days counted from the date the order was entered on the ECF system (which they should not be), the required response date would be no different.

orderly matter.  Had Plaintiffs complied here, the Court could have been spared from having to address their misguided objection at this juncture.[2]

## II.     THE ISSUE PLAINTIFFS RAISE RESTS ON A FALSE PREMISE AND AN INCOMPLETE RECORD

Even if the Court were to consider Plaintiffs' untimely submission, the Court should reject it because Judge Maas's order was fully justified by the facts and the law, particularly when considered in the context of the overall discovery disputes that he has overseen for the past ten months.  Rule 72 specifies that "[t]he district judge to whom the case is assigned shall . . . modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  Importantly, and as at least one of Plaintiffs' own citations demonstrates, "a party seeking to overturn a ruling under the clearly erroneous standard generally bears a "'heavy burden.'"  *Sheikhan v. Lenox Hill Hosp.*, No. 98 Civ. 6468, 1999 U.S. Dist. LEXIS 8770, at *5 (S.D.N.Y. June 11, 1999) (cited by Plaintiffs' Objections at 3).  Here, Plaintiffs cannot meet that heavy burden.  Through his role in the discovery process over the past ten months, which has included nearly a dozen submissions and three hearings, Judge Maas has become familiar with both the substance of these issues and Plaintiffs' tactics.  He is conscious of the need to bring the "limited" discovery that Judge Casey ordered to a conclusion, and his determinations regarding what discovery goes to genuine issues of jurisdictional fact, *see In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 812 (S.D.N.Y. 2005) (ruling that jurisdictional discovery is appropriate only where "'a plaintiff has identified a genuine issue of jurisdictional fact'") (internal citation omitted) ("*Terrorist Attacks I*"), are well supported by law and fact.  Plaintiffs' claims of entitlement to additional documents are premised on baseless

---

[2] If Plaintiffs' concern was compliance with the 10 days allotted by Rule 72 (which they failed to meet in any event), the parties could have stipulated, with the Court's consent, to an extension of the filing deadline until after SBG's September 10 production, at which time it would have been more readily ascertainable whether there were any issues that warrant this Court's attention.

-3-

assumptions about what documents are or should be within SBG's possession, custody or control, and on a recitation of the facts that is misleadingly selective, if not entirely false.

### A. Background on Defendant SBG

Plaintiffs' filing arises out of the "limited" jurisdictional discovery Judge Casey permitted when he denied without prejudice SBG's motion to dismiss in January 2005. Plaintiffs asserted jurisdiction over SBG based both on general jurisdiction and on the theory that SBG had "purposefully directed" its conduct at the United States, primarily through alleged vague ties to Osama Bin Laden ("OBL") or his associates.

SBG, which was founded in 1989, is one of the largest engineering and construction companies in the Arab world. SBG has completed a significant number of high-profile public works projects in the Middle East, including construction of the King Abdul Aziz Air Base from which U.S. forces operated during the first Gulf War. OBL held a small stake (approximately 2%) in SBG from its inception in 1989 until 1993, when he was involuntarily removed as a shareholder from SBG and another family-owned company, the Mohammad Binladin Company ("MBC").[3] The remaining shareholders of SBG initiated that process in or about June 1993, many years before OBL was designated as a terrorist or publicly threatened the United States.[4] In February 1994, Bakr Binladin, the senior member of the family and Chairman of SBG,

---

[3] MBC was also established in 1989 as the restructured surviving entity of the construction company founded by Mohammad Binladin, Osama Bin Laden's father, in the 1930s. Following Mohammad Binladin's death in 1967, ownership of MBC's predecessor and eventually MBC passed to Mohammad Binladin's children, including OBL. MBC currently has its own motion to dismiss pending before the Court (Dkt. # 1644). MBC is mentioned here only to provide the Court with contextual background; it is not subject to jurisdictional discovery, was expressly excluded from Judge Maas's order, and is not an issue in Plaintiffs' motion.

[4] The United States first placed OBL on its list of designated terrorist individuals and organizations on August 20, 1998. *See* Exec. Order No. 13099, 63 Fed. Reg. 45,167 (Aug. 25, 1998). Even the *Burnett* Complaint notes that OBL announced his intention to launch terrorist attacks against the United States in 1996. *See Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03 CV 9849, Third Amended Complaint ("*Burnett* 3AC") ¶ 453 (Dkt. # 29); *see also, e.g.*, *Federal Insurance v. Al Qaida*, No. 03-CV-6978 ("*Federal Insurance*"), First Amended Complaint (Dkt. # 104) ¶ 42 (alleging that al Qaeda issued a fatwa in February 1998 saying it was the duty of Muslims to kill United States citizens, including civilians).

publicly renounced OBL in a statement released to the media. Shortly thereafter, in April 1994, the Saudi government revoked OBL's citizenship and froze his assets.

Although Plaintiffs never sought any documents relating to the subject, in the course of briefing on other defendants' motions to dismiss, Plaintiffs received copies of the shareholder resolutions that effectuated the removal of OBL as a shareholder in SBG and MBC. These documents, on their face, indicate that the process was initiated on 26/12/1413 A.H. (approximately June 16, 1993), and that the resolutions were formally approved by the Ministry of Commerce on 20/11/1414 A.H. (approximately May 1, 1994). Summaries were published in Saudi publications shortly thereafter. There is no basis on which Plaintiffs could conceivably challenge the authenticity or timing of these documents, some of which have been in the public domain since 1994. These documents, and related affidavits also provided in connection with motions to dismiss on behalf of other defendants, directly address the allegation made in the Complaint, and on which Judge Casey permitted jurisdictional discovery, that "Osama bin Laden's name is still listed in the Saudi Binladen Group's corporate records."[5] *See Terrorist Attacks I*, 349 F. Supp. 2d at 822 (citing *Ashton* 3AC Compl. ¶ 558; *Burnett* Comp. ¶ 329).

B.     **Procedural Posture**

The instant dispute relates to the disposition and current status of the proceeds attributable to the shares previously owned by OBL in SBG.[6] As reflected in interrogatory

---

[5] It has become increasingly apparent that this allegation, like many others in the Complaint, was carefully worded so as to be literally true but intentionally misleading to the Court. Because corporations do not typically destroy their historical organizational documents, and because the resolution removing OBL as a shareholder obviously remains in existence, it is literally true that OBL's name can be found in historical (and long-ago superseded) corporate records. Because that historical fact could have no possible relevance to a claim that SBG knowingly supported al Qaeda, Plaintiffs could only have alleged it in order to create the misleading inference that OBL was *still* a shareholder. That they succeeded in misleading Judge Casey on that score is evidenced by his order permitting jurisdictional discovery on the issue.

[6] Although Plaintiffs had never made a document request that encompassed records on this subject, Judge Maas ordered SBG to produce additional documents created in connection with OBL's removal as a shareholder and certain documents relating to the creation of the trust and changes in its structure, trustees or beneficiaries. To the

responses and affidavits submitted in the course of this litigation, OBL never received any buy-out payment and has never had access to these funds. Instead, after consultation with and at the direction of the appropriate Saudi authorities, the money was placed in trust outside OBL's control. *See* SBG Response to Interrogatory No. 18 (Aug. 12, 2005); Affidavit of Bakr Binladin ¶ 8 (Jan. 25, 2006) (Dkt. # 1645) (Ex. C). The 9/11 Commission, whose findings Plaintiffs frequently cite, confirmed that OBL's assets were divested by the Binladin family and frozen by the Saudi government in 1994. *See* The 9/11 Commission Report (July 22, 2004) at 170.

Plaintiffs mischaracterize the nature of the documents sought to be produced. Plaintiffs claim they are seeking documents relating to "the trust SBG allegedly established in approximately late 1993 allegedly to distance itself from Osama Bin Laden, a Binladin family member and holder of shares with an estimated value of $9.9 million in the family company." Objections at 1-2. In fact, Plaintiffs have no basis for contending that *SBG* established or controls any trust, that it was established in 1993, or that the trust was established in order to distance the family from OBL. In fact, it is illogical to assume that a corporation would have control over the proceeds of transactions in its own shares, much less the shares of another company (MBC). Moreover, although ultimately of legal effect as of June 1993, the process by which OBL was removed as a shareholder was not completed and implemented until after all government approvals were obtained in May 1994, a fact that is reflected in the shareholder resolutions in Plaintiffs' possession. Thus, there were no proceeds to place in trust in 1993.[7] Finally, Plaintiffs invent out of whole cloth the notion that the "trust" was designed to "distance"

---

(continued…)

extent that such documents exist and are within SBG's possession, custody or control, they are expected to be produced on September 10. Plaintiffs' motion does not raise issues related to that portion of Judge Maas's order.

[7] This fact alone disposes of Plaintiffs' speculative and illogical theory that perhaps Ghaleb Binladin's account at Bank Al-Taqwa, which was created in November 1993, has some relationship to the disposition of OBL's shares. *See* discussion *infra* § II.C.

the company from OBL.[8] Objections at 1-2. In fact, SBG's separation from its former shareholder OBL, which is the point germane to the allegation on which Judge Casey ordered discovery, was effected when its shareholders adopted and obtained approval for resolutions removing him as a shareholder. The subsequent mechanisms by which the proceeds of that transaction have been held by others, under the direction of Saudi authorities, are irrelevant to when, why or how OBL was separated from SBG.

Plaintiffs also misrepresent the history of the discovery dispute before Judge Maas on this issue. Although Plaintiffs now claim that the documents they seek relate to "one of the central issues in dispute," Objections at 7, they neglect to mention that, in 2-1/2 years of jurisdictional discovery, they never found them of sufficient significance to bother making a formal discovery demand. In fact, Plaintiffs first asked Judge Maas in a letter dated June 15, 2007, to require SBG to supplement its interrogatory responses, which had been provided almost two years earlier in August 2005, to include further details on the disposition of the value of the shares. And the very first time Plaintiffs demanded documents on this supposedly "central" dispute was at the hearing on June 29, 2007, at which Judge Maas orally entered one of the orders that is the subject of this motion.[9] Indeed, Plaintiffs nowhere allege that SBG or anyone else paid OBL the value

---

[8] Plaintiffs similarly claim that SBG has contended that "the creation of the trust confirmed that it had severed its ties with Osama." Objections at 6. Plaintiffs cite no support for that claim and it is not true. SBG has consistently claimed that the shareholder resolutions are the evidence that establishes its severance from OBL.

[9] Given that Plaintiffs never made a formal request for documents regarding these issues, it is remarkable that Plaintiffs would assert that SBG somehow failed to make an evidentiary showing of burden (Objections at 10): SBG has never had the need or opportunity to do so because Plaintiffs circumvented the Federal Rules of Civil Procedure so as to deprive SBG of any mechanism for submitting a formal Rule 26(b) objection. In any event, Plaintiffs' characterization of the nature of SBG's burden objection is inaccurate and, in fact, that issue appears to be moot. SBG had raised the objection after Plaintiffs sent a letter to Judge Maas dated July 10 arguing that the Magistrate Judge should modify his order to require production of any document "relating" in any way to the separation and trust, a demand that was so vaguely and broadly worded as potentially to include documents such as press releases and customer correspondence that simply recited the historical fact of SBG's separation from OBL and his lack of financial ties to SBG. None of those documents are properly the subject of limited jurisdictional discovery, and gathering them would have presented a substantial burden. But Plaintiffs now appear to have abandoned this overly broad articulation of their demands, focusing instead on records of transactions in the account. With respect to that category of documents, no burden objection is being asserted because, based on its investigation to date, SBG does not appear to have those documents in its possession, custody or control.

of his shares. To the contrary, Plaintiffs still apparently insist (albeit without a shred of support), in a determined effort to keep discovery open, that OBL is a shareholder in the company.[10]

In an attempt to bring Plaintiffs' discovery to completion, Judge Maas ordered SBG to produce records in its possession, custody or control that relate to the formation, structure or control of the trust, but he rejected Plaintiffs' demand for records relating to "changes in the assets of the trust . . . *unless there were transfers to Osama Bin Laden.*"  *See* Endorsed Letter at 2 (July 26, 2007) (Dkt. # 1989).  In doing so, Judge Maas noted that SBG had already affirmed that OBL never received any of these assets, information that had been included both in an interrogatory response and in an affidavit.

### C. Plaintiffs' Claim Rests on False Assumptions

Before receiving SBG's responses, which are due September 10, Plaintiffs now claim that they are entitled to documents relating to all transfers of assets in the account based on nothing more than wishful thinking and wild speculation that such documents *might* demonstrate an *indirect* transfer for the benefit of OBL. Plaintiffs make no allegation that OBL ever received the value of his shares after he was removed as a shareholder, whether directly or indirectly, and Plaintiffs have no grounds that would pass muster under Rule 11 to claim that he did. Not only do Plaintiffs have an affidavit stating unequivocally that OBL never received that money, but it would have been impossible for him to receive that money in light of the Saudi government's freeze on his assets, which went into effect shortly before final government approvals were obtained for OBL's removal as a shareholder in SBG.

Plaintiffs' newly concocted theory that there might be some connection between the "trust" and an account at Bank Al-Taqwa is not only illogical, but it is contradicted by the facts

---

[10] *See* Hearing Tr. 41:2-42:1 (June 29, 2007); Plaintiffs' Letter to M.J. Maas, at 1 (July 10, 2007).

which they selectively recount.  It is illogical because the account at Bank Al-Taqwa (which the U.S. government designated a terrorist entity in late 2001) was created in November 1993, several months before OBL's removal as a shareholder was finally approved by the Saudi Ministry of Commerce in May 1994.  Moreover, Plaintiffs show no correlation between the amount placed in the Al-Taqwa account in November 1993 and the value of OBL's shares.

Their theory is also directly contradicted by the facts.  First, Plaintiffs seek to insinuate a sinister connection between SBG and the Bank Al-Taqwa based merely on the coincidence that Ghaleb Binladin, the SBG shareholder to whom OBL's shares were transferred, opened an investment account at the bank in November 1993, eight years before it was designated by the US government.[11]  Notwithstanding the fact that Plaintiffs appear already to have the relevant account records, they point to no facts that suggest that Ghaleb's account had any connection to OBL's removal as a shareholder or that OBL might have received any direct or indirect transfer or other benefit from the account.  Second, Plaintiffs' submission omits the fact, which they well know from the litigation file they have, that in June 1997 Ghaleb requested the account be closed and that when the bank failed to return his funds, Ghaleb filed a lawsuit in 1999 seeking to put the bank out of business.  All of this occurred more than two years before Bank Al-Taqwa was even designated as a terrorist entity.  Plaintiffs omit these facts because Ghaleb's adverse relationship with the bank decimates their speculative claim that perhaps, with more discovery, they would find that Ghaleb was conspiring with the bank as early as 1993 to fund OBL.  Because Plaintiffs' Bank Al-Taqwa arguments were based on a purposeful distortion of the

---

[11] Ghaleb Binladin is not a defendant in any of the MDL actions.  Judge Casey dismissed claims against Bakr Binladin, who apparently had, but never exercised, signature authority over the Bank Al-Taqwa account.  The Court refused Plaintiffs' request for discovery from Bakr Binladin, and the dismissal of claims against him has become final and non-appealable.  *See Terrorist Attacks I,* 765 F. Supp. 2d at 822 (dismissing Bakr, Omar, and Tariq Binladin from the *Burnett* case).  Consequently, Plaintiffs have no basis to claim that they are entitled to discovery about the personal affairs of these individuals.  Nor can they possibly claim that SBG should have documents within its possession, custody or control relating to this personal account.

record and offered no basis to draw a connection to SBG, let alone OBL, Judge Maas was fully justified in concluding that Plaintiffs had not created a genuine issue of disputed fact regarding any hypothetical transfers of trust assets to individuals other than OBL.

In any event, as previously stated, based on SBG's investigation to date, it does not appear to have within its possession, custody or control any of the additional documents that are the subject of this motion. This should come as no surprise: when Plaintiffs asked for the trust documents at the June 29 hearing, counsel for SBG noted that he had never seen any such documents and would have to report back to the Court on the extent to which SBG had such records, which counsel believed might be under the control of the Saudi government. While SBG expects to produce any documents responsive to Judge Maas's order that are in its possession, custody or control, it does not appear, based on its investigation to date, to have access to any of the additional account records Plaintiffs seek in this motion. Nor is there any rational basis for Plaintiffs to assert that SBG *should* have these account records, as corporations do not typically control records relating to the (current or former) assets of individual shareholders.[12]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied. Not only is it untimely under Rule 72, but Plaintiffs cannot establish that Judge Maas's order was clearly erroneous. Indeed, Judge Maas has bent over backwards to accommodate Plaintiffs' never-ending invention of new theories as those asserted in the Complaint as a basis for jurisdiction have been proven to

---

[12] Notably, these hypothetical documents can do nothing to assist Plaintiffs in meeting their jurisdictional burden as to SBG. Contrary to Plaintiffs' claim, documents related to an account over which SBG did not and could not exercise any control will not demonstrate "SBG's continued relationship with Osama bin Laden after 1994." Objections at 9. Moreover, because SBG never controlled the trust it would have been impossible for it to be engaged in the "use of the trust to support al Qaeda after it was known that al Qaeda was targeting the U.S.," *id.*, as Plaintiffs claim.

be baseless.  The fact that Plaintiffs' counsel is representing the victims of a horrific tragedy does not free them from the limitations of the Federal Rules of Civil Procedure, including Rule 11, nor does it loosen the standards for this Court to assess its jurisdiction.  As Judge Casey has already admonished Plaintiffs, a party cannot just make things up and demand entitlement to jurisdictional discovery.  *See* Hearing Tr. 79:19-22 (Oct. 12, 2004) (Dkt. #521) (Statement by the Court: "Do you maintain that anybody can just make up any sort of claims and conclusions and, therefore, you're entitled to discovery?  That isn't quite what the law is, is it?").  Ten months ago, Judge Maas took up the issues both sides had raised in, at that time, a year and a half of jurisdictional discovery.  Over the past ten months, he has deliberately resolved those issues through three hearings and numerous orders.  His decision here that Plaintiffs are not entitled to all of the sweeping, speculative discovery they demand is well grounded and should not be overturned.

DATED:      August 31, 2007

                                                            _____/s/_____
                                                            Stephen J. Brogan
                                                            Mary Ellen Powers
                                                            James E. Gauch
                                                            JONES DAY
                                                            51 Louisiana Avenue, N.W.
                                                            Washington, D.C. 20001
                                                            Tel: (202) 879-3939
                                                            Fax: (202) 626-1700

                                                            Geoffrey S. Stewart (GS-5413)
                                                            JONES DAY
                                                            222 East 41st Street
                                                            New York, New York 10017-6702
                                                            Tel: (212) 326-3939
                                                            Fax: (212) 755-7306

## **CERTIFICATE OF SERVICE**

       I hereby certify that on August 31, 2007, I caused a copy of Defendant Saudi Binladin Group, Inc.'s Response to Plaintiffs' Objections to Order of Magistrate Judge Maas Dated July 26, 2007 to be served by the Court's Electronic Case Filing System.

Date:   August 31, 2007

                                                           _____/s/_____
                                                                      James E. Gauch