UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | | |
|---|---|---|
| In Re: | : | **REPORT AND RECOMMENDATION** |
| TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : | **TO THE HONORABLE GEORGE B. DANIELS** |
| | : | |
| | | 03 MDL 1570 (GBD)(FM) |
| | : | |

----------------------------------------------------------x

This document relates to <u>Gallop v. Riggs National Corp., et ano.</u>, 04 Civ. 7281 (GBD)(FM)

**FRANK MAAS**, United States Magistrate Judge.

   As you requested, I have reviewed the papers related to the above case, in which defendants Riggs National Corporation and Riggs National Bank, N.A. ("Riggs Bank") (together, "Riggs") have moved to dismiss the Amended Complaint of the sole remaining plaintiff, April Gallop, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I recommend that Riggs' motion (Gallop Docket No. 49) be granted.

I.  <u>Procedural Background</u>

   This case was originally brought as a putative class action on behalf of more than 2400 plaintiffs.  After an Amended Complaint dropping the class allegations was filed, plaintiffs' counsel voluntarily dismissed the action on behalf of every plaintiff other than Ms. Gallop, who was the only person to indicate that she wished to pursue her claims. Thereafter, plaintiffs' counsel was permitted to withdraw from any further representation

of Ms. Gallop, and she was given until February 17, 2006 to secure successor counsel.

(Gallop Docket Nos. 41, 47, 184).  Having failed to meet that deadline, she is proceeding

pro se.

II.    Facts

Ms. Gallop, a citizen of the State of Virginia, evidently was injured during

the attack that occurred at the Pentagon on 9/11.  (Am. Compl. ¶ 7).[1]  She states in her

papers in opposition to Riggs' motion, that, "unlike many of the previous plaintiffs," she

maintains an account at PNC Bank, N.A., the successor in interest to Riggs Bank.  (See

Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 1).[2]

The Amended Complaint filed by counsel on Ms. Gallop's behalf alleges

that, "despite numerous admonitions," Riggs failed to "comply with duties imposed . . .

pursuant to United States anti-money laundering . . . statutes and regulations, other

national and international standards, and common law."  (Am. Compl. ¶ 2).  The Amended

Complaint further alleges that, because of that failure, Riggs "did not alert the appropriate

United States authorities to suspicious financial transactions that would have provided the

authorities information to identify September 11, 2001 terrorists and their activities in their

planning stages."  (Id.).

---

[1]    Although the complaint does not state that Ms. Gallop was injured at the
Pentagon during the terrorist attack on 9/11, she apparently does not contest that fact.

[2]    Ms. Gallop's papers in opposition to Riggs' motion to dismiss are undated,
unsigned, and undocketed.  I have annexed a copy of her papers as an exhibit to this Report and
Recommendation so that they will be accessible without resort to the voluminous MDL file.

The Amended Complaint posits that had Riggs provided proper notification of suspicious money transfers to the government, the 9/11 attacks could have been averted. (Id.).  The nexus between Riggs' failure to comply with the banking oversight laws and the damage caused by the 9/11 terrorists is allegedly that Riggs permitted the Saudi ambassador to the United States, and his wife, to transfer a total of approximately $145,000 over a period of years to a woman who purportedly needed medical treatment or her husband.  (Id. ¶ 2503).  These payments began in 1998 with a single $15,000 check drawn against a Saudi embassy account.  (Id.).  Thereafter, between 1998 and 2002, an additional $130,000 in payments was made through monthly Riggs Bank cashier's checks. (Id.).

The Amended Complaint alleges that in 2000, the woman who allegedly needed the funds for medical treatment began turning the monthly cashier's checks over to another woman whose husband was a Saudi spy.  He, in turn, forwarded the proceeds of the checks to two terrorists implicated in the 9/11 attacks, thereby helping to finance such actions as their flight training activities in the United States.  (Id. ¶ 2504).

Neither the Amended Complaint nor Ms. Gallop's opposition papers allege that Riggs had any actual knowledge prior to September 11, 2001, that its facilities were being used to help fund terrorism.  Ms. Gallop also concedes in her opposition papers that the anti-money laundering laws do not entitle her to bring a private right of action against Riggs.  (Pl.'s Opp'n at 2).  Therefore, the question presented by her Amended Complaint is whether Riggs can be held liable for Ms. Gallop's alleged injuries by reason of Riggs'

negligence.

III.    Discussion

   A.    Standard of Review

        In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim,

the Court must "limit itself to facts stated in the complaint or in documents attached to the

complaint as exhibits or incorporated in the complaint by reference." Newman &

Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996) (quoting Kramer

v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)).  Furthermore, the Court must

accept as true all factual allegations made in the complaint and draw all reasonable

inferences in favor of the plaintiff.  Leatherman v. Tarrant County Narcotics Intelligence

& Coordination Unit, 507 U.S. 163, 164 (1993); Bolt Elec., Inc. v. City of New York, 53

F.3d 465, 469 (2d Cir. 1995).  However, it is no longer the law, as Riggs has suggested in

its memorandum of law, that the standard of review applicable to a Rule 12(b)(6) motion

is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support

of [her] claim which would entitle [her] to relief."  (Defs.' Mem. at 10) (quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)).  Indeed, while the briefing of Riggs' motion was

underway, the Supreme Court expressly disavowed that formulation in Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955 (2007).  Although the full import of Twombly remains unclear,

the decision has at a minimum imposed a flexible "'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-

4

58 (2d Cir. 2007) (emphasis in original).

      B.     <u>Negligence Claims</u>

        Riggs contends that Virginia law is applicable to this case.  Section

408(b)(2) of the Air Transportation Safety and Systems Stabilization Act of 2001 (codified

at 49 U.S.C. § 40101), provides that actions brought pursuant to the Act are governed by

"the law, including choice of law principles, of the State in which the crash occurred

unless such law is inconsistent with or preempted by Federal law."  (<u>See</u> Defs.' Mem. at 4

n.4).  In this case, the result would be no different even if the law of the forum state were

to be applied.  Under both Virginia and New York law, to prevail on a negligence claim, a

plaintiff must establish the existence of a legal duty, a breach of that duty, and that the

breach was the proximate cause of the plaintiff's injury.  <u>See, e.g.</u>, <u>In re Terrorist Attacks

on Sept. 11, 2001</u>, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005); <u>Demshick v. Cmty. Hous.

Mgmt. Corp.</u>, 34 A.D.3d 518, 519 (2d Dep't 2006); <u>Delk v. Columbia/HCA Healthcare

Corp.</u>, 523 S.E.2d 826, 830 (Va. 2000).  For the third element to be met, the plaintiff must

show that the injury was a probable consequence of the negligent act or omission <u>and</u> that

the injury should reasonably have been foreseen.  <u>Interim Pers. of Cent. Va., Inc. v.

Messer</u>, 559 S.E.2d 704, 708 (Va. 2000); <u>Egan v. A.J. Constr. Corp.</u>, 94 N.Y.2d 839, 841

(1999); <u>Laidlaw v. Sage</u>, 158 N.Y. 73, 99 (1899); <u>N. X. v. Cabrini Med. Ctr.</u>, 280 A.D.2d

34, 41 (1st Dep't 2001).

        Riggs contends that Ms. Gallop cannot establish any of the three required

elements of her negligence claims.  However, even if this Court were to assume, <u>arguendo,</u>

that Riggs owed Ms. Gallop a duty to keep close tabs on her fellow bank customers and violated that duty – leaps of faith that do not appear to be warranted here –  her negligence-based claims nevertheless would fail because she has not alleged any facts which make it plausible that tighter oversight of the financial transactions conducted by the Saudi ambassador and his wife at Riggs Bank would have averted the 9/11 tragedy. Moreover, even if that were the case, the prospect that monies paid to third parties for a legitimate purpose might <u>eventually</u> find their way to terrorists through a series of unrelated transfers was, as a matter of law, not reasonably foreseeable.

Riggs therefore is entitled to the dismissal of Ms. Gallop's negligence claims.

C.    <u>Remaining Claims</u>

The Amended Complaint contains three additional substantive claims for relief that do not sound in negligence.  In Count Two, Ms. Gallop seeks to recover damages under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, <u>et</u> <u>seq</u>.  As Judge Casey previously has held, "[t]o adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." <u>In re Terrorist Attacks</u>, 349 F. Supp. 2d at 828 (citing <u>Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.</u>, 291 F.3d 1000, 1023 (7th Cir. 2002), and <u>Boim v. Quranic Literacy Inst.</u>, 340 F. Supp. 2d 885, 906-13 (N.D. Ill. 2004)).  Here, as noted, Ms. Gallop does not contend that Riggs violated

6

any banking rules with the intention of aiding terrorists.  Furthermore, even if that were

her belief, she has not cited any facts which would make that claim plausible.

Accordingly, her ATA claim must be dismissed.

        In Count Seven of the Amended Complaint, Ms. Gallop alleges that Riggs

"knowingly and/or recklessly aided, abetted or otherwise assisted in the material support

of the actions of Osama bin Laden, al Qaeda, militant Islamic extremism, and/or

international terrorism that led to the September 11, 2001, terrorist attacks that . . . injured

[her]."  (Am. Compl. ¶ 2563).  In the absence of any showing of intentional conduct or an

actionable tort, Ms. Gallop's aiding and abetting allegations, even if set forth in a separate

count, do not entitle her to any relief.  See In re Terrorist Attacks, 349 F. Supp. 2d at 826;

Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57 (1999); Buck v. Oliff, At Law No.

10978 , 1990 WL 751239, at *1 (Va. Cir. Ct. July 27, 1990).

        Finally, in Count Ten of her Amended Complaint, Ms. Gallop alleges that

Riggs' conduct constitutes negligent and/or intentional infliction of emotional distress.

Both of those torts require a showing of conduct "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."  Walsh v. Nat'l Westminster

Bancorp., Inc., 921 F. Supp. 168, 174 (S.D.N.Y. 1995), Russo v. White, 400 S.E.2d 160,

162 (Va. 1991).  While the 9/11 attacks fit the bill, Riggs is not accused of having engaged

in terrorism.  Rather, the Amended Complaint alleges that Riggs failed to comply with the

anti-money laundering laws and, therefore, good banking practices.  Whatever one may

think of such failings, they do not meet the substantial threshold necessary to state an intentional or negligent infliction of emotional distress claim.  Count Ten of the Amended Complaint therefore must be dismissed.

IV.     Conclusion

          For the foregoing reasons, Riggs' motion to dismiss the Amended Complaint of plaintiff April Gallop (Gallop Docket No. 49) should be granted.

V.      Notice of Procedure for Filing of
        Objections to this Report and Recommendation

          The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable George B. Daniels, United States District Judge, and the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  The failure to file timely

of time for filing objections must be directed to Judge Daniels.  The failure to file timely

objections will result in a waiver of those objections for purposes of appeal.  See Thomas v.

Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:     New York, New York
           September 17, 2007


                                             FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Hon. George B. Daniels
United States District Judge

Christopher T. Lutz, Esq.
Steptoe & Johnson
1330 Connecticut Avenue, NW
Washington, D.C. 20036-1795
(202) 429-3902 (fax)

April D. Gallop, Pro Se
6042 Walking Path Lane
Midlothian, Virginia 23112

9

**ATTACHMENT**

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Gallop, | ) Case No.: No. 1:04-cv-7281 |
| | ) |
| | ) OPPOSITION TO MOTION TO DISMISS |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Riggs National Corporation et. al, | ) |
| | ) |
| Defendant | ) |

**DUTY**

I, April D. Gallop, unlike many of the previous plaintiffs maintain an
account at PNC Bank. That is PNC Bank, formerly known as Riggs Bank, with the
branch location in Woodbridge Virginia 22191. This meets what Attorney Lutz,
mentioned as, "an actionable duty requires a pre-existing relation between
the plaintiff and the defendant." Also, as previously mentioned in the
complaint, the Embassy of Saudi Arabia accounts maintained at Riggs were used
to make payments to the American Muslim Council of Alexandria Virgina, whose
former president Abdurrahman Alamoudi, is still believed to be jailed for
violating terrorism sanctions. Nonetheless, as previously outlined, Riggs
National Corporation has a responsibility to maintain all standards of it's
industry. This is to include ethical standards, rules, laws, policies and
regulations. As it applies to bank's services. As previously stated," Banks'
management should ensure that business is conducted in conformity with high

1    ethical standards and that laws and regulations pertaining to financial

2    transactions are adhered to." Even moreso, as previously outlined." Banks

3    should fully cooperate with national law enforcement authorities to the

4    extent permitted by specific local regulations relating to customer

5    confidentiality. Care should be taken to avoid providing support or

6    assistance to customers seeking to deceive the law enforcement agencies

7    through the provisions of altered, incomplete or misleading information.

8    Where banks become aware of facts which lead to the reasonable assumption

9    that money held on deposit derives from criminal activity that transactions

10   entered into are themselves criminal  in purpose appropriate measures,

11   consistent with the law should be taken, for example, to deny assistance,

12   sever relations with the customer and close and freeze accounts. (Basle

13   Committee, Statement of Principles, reprinted in BSA Manual Section 1501.0

14   (September 1997) at 2-3). As a citizen of the United States we are under

15   obligation to report illegal and suspicious activities. We have the power to

16   make what is called a "citzen's arrest.  I quote the Basle Committee,

17   Statement to show that Riggs Bank has responsibility as well to report

18   suspicious activity regardless of the nature of the relationship.

19

20   **THE AML LAWS AND REGULATIONS**

21   The AML laws and regulations within itself doesn't create a private right to

22   action. The point in mentioning such items as outlined in the amended

23   complaint was to show Riggs breached it's duties as outlined in the

24   regulations, etc.  However, along with the BSA, RIGGS Bank was required to

25   implement the designated AML procedures. As previously outlined in line 2458

1  of the amended complaint" In April 1990 and updated in 1996 and 2003, the

2  FATF issued a set of Forty Recommendations that established a minimum for

3  international AML standard and that has been endorsed by more than 130

4  countries, including the United States. Among FATF's 40 Recommendations

5  regading AML laws is Recommendation 19, recommending the following: 19.

6  Financial institutions should develop programs against money laundering and

7  terrorist financing. These programs should include: (i) the development of

8  internal policies, procedures and controls, including appropriate compliance

9  management arrangements, and adequate screening procedures to ensure high

10 standards when hiring employee: (ii) an ongoing employee training program....

11 As outlined in 2460. " **KNOW YOUR CUSTOMER" standards must be met.** At all

12 releveant times, the standard within the financial institution industry has

13 been to have "Know your Customer" practices to ensure the immediate detection

14 and identification of suspicious activity. (BSA Manual Section 601.0

15 (September 1997), at 3) The basis for such a standard is to ensure the

16 business maintains sufficient data to develop a (customer profile). This

17 helps the bank to detect their customers patters so they can make notice of

18 suspicious or possible illegal activity.(BSA Manual Section 601.0 (September

19 1997) at 2.

20 As outlined in 12462 Recommendation 21 of the FATF 40: "Financial

21 institutions should give special attention to business relation and

22 transactions with persons, including companies and financial institutions,

23 from countires which do not or insufficiently apply the Recommendations.

24 Whenever these transactions have no apparent economic or visible lawful

25 purpose, their background and purpose should, as far as possible, be

1    examined, the findings established in writing, and be available to help

2    supervisors, auditors and law enforcement agencies. The Saudi Embassy

3    accounts constitute high-risk accounts warranting enhanced scrutiny. Although

4    it was not Riggs' practice to exercise such enhanced scrutiny regarding

5    embassy accounts."

6    Without financing, plans of terrorist would be halted. If Riggs would have

7    performed it's due diligence funds wouldn't have been laundered to the

8    hijackers. Therefore stifling there ability to continue with the plot. The

9    FATF outlines the following," Laundering of terrorist related funds. 15. From

10   a technical perspective, the methods used by terrorists and their associates

11   to generate funds from illegal sources do offer little from those used by

12   traditional criminal organizations… It follows then that terrorist groups

13   must similarly find ways to launder these funds in order to be able to use

14   them without drawing the attention of authorities. In examining terrorist

15   related financial activity, FATFA experts have concluded that terrorists and

16   their support organizations generally use the same methods as criminal groups

17   to launder funds. Some fo the particular methods with respect to various

18   terrorist groups include: cash smuggling (both by couries or bulk cash

19   shipments), structured deposits to  or withdrawals from bank accounts,

20   purchases of various types of monetry instruments (travellers' cheques, money

21   order), use of credit or debit and cards and wire transfers. There have also

22   been indications that some forms of underground banking (particular the hawal

23   system) have had a role in moving terrorist related funds. (FATF Guidance for

24   Financial Institutions in Detecting Terrorist Financing at 2-3).

25

1  Further Riggs exhibited a pattern of conduct as outlined in 2437 of the
2  amended complaint, that one could conclude that their negligence was
3  intentional. As outlined in line 2479 Throughout the 1990s, despite Rggs
4  knowing it had repeatedly failed to comply with various AML laws and
5  standards, it facilitated Saudi Embassy account payments to individuals
6  without proper verification and due diligence in determining destination of
7  the payments." One could conclude that Riggs turned a blind eye to the AML
8  laws. Riggs aided, abetted and assisted Princess Haifa bint Faisal. It was
9  stated she provided" Riggs with a list of beneficiaries, some of whom
10 received monthly stipends… The applicant submit requests and if they are
11 approved, Riggs sends cashier checks based on the princess' list to the named
12 recipients." (Richard A Serrano, Doyle McManus and Greg Krikorian, "Saudis
13 Call Any Aid to Terrorist Unwitting," Los Angeles Times, November 24, 2002;
14 see also Sen Bob Graham, Intellegence Mattters: The CIA, the FBI, Saudi
15 Arabia and the Failure of America's Ware on Terror, at 168 (hereinafter,
16 Graham, at _}.) While I will support Riggs statement that the AML laws don't
17 create a private right of action. IF they abided by these laws the September
18 eleventh plot wouldn't have been successful. Nwaf al-Hazmi and Khalid al-
19 Mihdhar, two of the hijackers of the Flight 77 were known by intelligence
20 here in the US as those would perform terrorist operations. Khalid al-Mihdar
21 was placed on the State Department's watch list. (Graham, at 7). Therefore,
22 it is very hard for me to that due diligence wasn't performed. And that noone
23 had any knowledge of their actions.  " Any time you have suspicious money
24 movements, and it 's not reported as needed, it hurts our overall [
25

1  counterterrorism] efforts." ( See quote from unnamed senior counterterrorism

2  official in "Terror Watch: Tangled Ties," Newsweek, April 7, 2004)

3  Riggs failed to file 30 Suspicious Activity Reports (SAR) in 2003.  As

4  previously outlined Riggs failed to make necessary suspicious transaction

5  reports. Therefore, our US intelligence and enforcement agencies didn't have

6  the opportunity to halt financial support to the terrorist and thwart their

7  plan to harm thousands of Americans. The finances provided to the terrorist

8  allowed them to obtain their flight training. Riggs kept the terrorist from

9  being detected US authorities radar which allowed them to proceed without

10  being detected.

11  The war on terror is raging.  Every American citizen has a responsibility to

12  assist the Government. Therefore, as a citizen we have the responsibility to

13  report any suspicious activity or illegal act. Riggs is not exempt because

14  they are in the banking industry. I object to their motion to dismiss because

15  all the information as outlined in detail in the amended complaint shows

16  Riggs is culpable. They willfully and intentionally failed to abide by the

17  money-laundering program. That is the same as "knowing participation",

18  aiding, abetting and assisting the September eleventh terrorists attacks. The

19  monies that funneled thru Riggs went undetected because of their failure to

20  implement and maintain the anti money-laundering program.

21  While is point regarding the claim being time-barred.  I understand there is

22  a huge exception to this general rule to protect claimants. As I understand

23  the clock starts to ticking on the date or period of discovery of the harm.

24  This is done so because it maybe years before one discovers that they have

25  been harmed. I request that the claims for relief in pages 401-422 still

1   stand as outlined in the amended complaint. Further request for a trial by

2   jury of all issues that are so triable.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25