# KREINDLER & KREINDLER LLP

Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney III
Daniel O. Rose

Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
John J. Veth*°
Counsel

100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Susan D. Bainnson
William O. Angelley
Michael R. Sherwin
Hilary B. Taylor
Elizabeth Crotty
Megan Benett

California Office
Gretchen M. Nelson*
Stuart R. Fraenkel*
Mark I. Labaton*

Gabriel Barenfeld*

Massachusetts Office
Anthony Tarricone†

Susan A. Friery, M.D.°
James D. Gotz†
Joseph P. Musacchio†

*Admitted in CA only
†Admitted in MA only
°Admitted in MA & DC only
°Resident in CA office

**MEMO ENDORSED**

9/18/07

RECEIVED AUG 2? 2007

August 16, 2007

**Federal Express**

Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, New York 10007-1312

Re: *In re Terrorist Attacks on September 11, 2001 v. NCB*

Dear Judge Maas:

> There is nothing in the materials annexed to this letter to suggest that SNCB engaged in any activities in the United States -- through agents or otherwise -- after 2001. Accordingly, whatever the plaintiffs' views of Mr. Smith's deficiencies may be, it is clear that the proposed depositions of Virginia Pense, Frederik Crawford, or Thomas Krohley would be a fishing expedition. The request to depose one of them is therefore DENIED.
>
> Maas, USMJ, 9/18/07

I am sorry to burden the Court with yet another letter in response to NCB's latest reply objecting to any more discovery, but I will be brief.

The Court, in an attempt to control and limit deposition discovery, initially declined to approve depositions of SNCB employees but granted the 3 hour Smith deposition because it was the least burdensome way to learn about NCB and SNCB's activities in New York; or so we thought.[1]

Smith provided almost no relevant information regarding NCB or SNCB's activities in the U.S. after 1992. His lack of recall, non-involvement or defendant's reluctance to disclose

---

[1] Smith was also supposed to provide some insight to the 1998 process review for which he swore out an affidavit for a British Court proceeding.

August 16, 2007
Page 2

pertinent information[2], should not prejudice plaintiffs. NCB's recent letter argues that plaintiffs are entitled to only one chance and that we should now be cut off from any further investigation.

NCB does not deny that SNCB was its wholly owned subsidiary and plaintiffs have produced documents that show SNCB conducted business in the U.S. on behalf of NCB after NCB was shut down in New York in 1992. As an initial matter, it is unclear whether NCB admits that SNCB was its alter ego or mere agent in the U.S. Plaintiffs have produced a sample of documents that suggests this is so. If NCB denies this, plaintiffs are entitled to more discovery on this alone.

The thrust of NCB's argument however, is that SNCB completely shut down in 2001 in any event. NCB supplied the sworn affidavit of Jorge Juco that said SNCB closed in February 2001. (See attached Exhibit A, ¶ 5). That sworn statement however, is belied by documents that reflect NCB-SNCB employees continued to work as "independent contractors" throughout 2001. (See attached Exhibit B, various documents, including renewable consulting contracts, generated by or sent to Virginia Pensa and Thomas Krohley on behalf of NCB and SNCB from their homes.)[3]

Not surprisingly, those consulting contracts no longer even feign to use the SNCB shell cover, rather, they are contracts between *"NCB"* and these long time employees. Plaintiffs do not know if they were renewed, but in the case of Pensa, she appears to have worked for NCB beyond the short-term contract provided by defendant.

At a minimum, these two American citizens, who were based in New York City, should be deposed by plaintiffs to determine the relationship between NCB-SNCB and how long they and others continued to conduct business for NCB or SNCB in the United States beyond 2001. This is no fishing expedition, and plaintiffs asked for these depositions even before the Smith

---

[2] Despite opening the door and waiving attorney work product privilege, NCB was able to suppress communications Smith had with Khalid Bin Mafouz and his British libel attorneys. Testimonial use of material otherwise protected by the attorney-client privilege or the work product privilege results in "subject matter waiver" of material related to the testimony and necessary to proper evaluation of it. *Alpex Computer Corp. v. Nintendo Co.*, 1994 U.S. Dist. Lexis 9393, *5 (S.D.N.Y. 1994); *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) (voluntarily revealing only some of the communications on a subject and withholding others - waives the privilege on the entire subject matter). Smith had further submitted his affidavit and met with British counsel as an expert exposing himself to full cross examination on the subject, yet plaintiffs were cut-off.

[3] SNCB did not file its surrender of authority in New York until October 17, 2001. Nor has it provided proof that it complied with other provisions of New York Business Corporation Law in its purported dissolution, including § 1008 and 1310 and the notice criteria therein. This is more than a technicality, it may serve to change the legal force and effect of the official date SNCB no longer had a legal presence in New York.

August 16, 2007
Page 3

deposition.

    Most telling is NCB's plan to "submit an affidavit of a more knowledgeable former SNCB employee to address the nature and scope of SNCB's operations." (Liebman Aug. 13, 2007 ltr., p.5). Further, the "the decision whether to authorize depositions of former SNCB employees should be made by the court when it adjudicates NCB's renewed motion to dismiss for lack of jurisdiction." *Id.*

    The proposal contradicts NCB's claim that it seeks to expedite discovery and motion practice. The above is a recipe to prolong any full and fair decision on NCB's presence in the U.S. Instead, what it really wants, is to deprive plaintiffs of full and fair discovery on jurisdictional contracts and hopes that the Court finds that there are no material issues of fact when it renews its motion to dismiss.

    The approach is not only fundamentally unfair and prejudicial to plaintiffs, but makes zero logistical sense from a scheduling and motion practice perspective. "Limited jurisdictional discovery" means discovery limited to a jurisdictional inquiry; it does not mean plaintiffs should be limited in gaining discovery from the very contracts that arguably evidence an ongoing presence in the jurisdiction. See e.g., *Intuit Inc. v. H&R Block Eastern Enterprises, Inc.*, 2006 WL 2504936 (N.D. Ca. 2006). Depositions of SNCB employees/consultants should be granted.

                               Respectfully submitted,

                                 KREINDLER & KREINDLER LLP

                                 By: _____
                                    Andrew J. Maloney III

AJM/gm
Enclosure

cc by email :   Ron Liebman, Esq.
                 Mitch Berger, Esq.