# EXHIBIT 1

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1581

CHAMBERS OF
FRANK MAAS
UNITED STATES MAGISTRATE JUDGE

TEL: (212) 805-6727
FAX: (212) 805-6724

# FACSIMILE COVER SHEET

**DATE:** September 18, 2007

**TO:** Andrew J. Maloney III, Esq.
Kreindler & Kreindler
(212) 972-9432 (fax)

Ronald S. Liebman, Esq./Mitchell R. Berger, Esq.
Patton Boggs LLP
(202) 457-6315 (fax)

**FROM:** Evan Hudson-Plush
Law Clerk, U.S.M.J. Frank Maas

**RE:** In re Terrorist Attacks on Sept. 11, 2001, 03 MDL 1570 (RCC)(FM)

**COMMENTS:** Memo endorsement attached.
If you have any questions, please call me at (212) 805-6730.

## NO. OF PAGES INCLUDING COVER SHEET  4

If you experience any problems with this transmission, please call Chambers at the above number.



Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney III
Daniel O. Rose

Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
John J. Vecth••°
Counsel

# KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Susan D. Bainnson
William O. Angelley
Michael R. Sherwin
Hilary B. Taylor
Elizabeth Crotty
Megan Benett

California Office
Gretchen M. Nelson•
Stuart R. Fraenkel•
Mark I. Labaton•

Gabriel Barenfeld•

Massachusetts Office
Anthony Tarricone†

Susan A. Friery, M.D.°
James D. Gotz†
Joseph P. Musacchio†

•Admitted in CA only
†Admitted in MA only
°Admitted in MA & DC only
°Resident in CA office

**MEMO ENDORSED**

RECEIVED
AUG 2 3 2007

August 16, 2007

**Federal Express**

Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, New York 10007-1312

Re: *In re Terrorist Attacks on September 11, 2001* v. NCB

Dear Judge Maas:

> There is nothing in the materials annexed to this letter to suggest that SNCB engaged in any activities in the United States -- through agents or otherwise -- after 2001. Accordingly, whatever the plaintiffs' views of Mr. Smith's deficiencies may be, it is clear that the proposed depositions of Virginia Pensa, Frederick Crawford, or Thomas Krohley would be a fishing expedition. The request to depose one of them is therefore DENIED. Maas, USMJ, 9/18/07

I am sorry to burden the Court with yet another letter in response to NCB's latest reply objecting to any more discovery, but I will be brief.

The Court, in an attempt to control and limit deposition discovery, initially declined to approve depositions of SNCB employees but granted the 3 hour Smith deposition because it was the least burdensome way to learn about NCB and SNCB's activities in New York; or so we thought.[1]

Smith provided almost no relevant information regarding NCB or SNCB's activities in the U.S. after 1992. His lack of recall, non-involvement or defendant's reluctance to disclose

---

[1] Smith was also supposed to provide some insight to the 1998 process review for which he swore out an affidavit for a British Court proceeding.

August 16, 2007
Page 2

pertinent information[2], should not prejudice plaintiffs. NCB's recent letter argues that plaintiffs are entitled to only one chance and that we should now be cut off from any further investigation.

NCB does not deny that SNCB was its wholly owned subsidiary and plaintiffs have produced documents that show SNCB conducted business in the U.S. on behalf of NCB after NCB was shut down in New York in 1992. As an initial matter, it is unclear whether NCB admits that SNCB was its alter ego or mere agent in the U.S. Plaintiffs have produced a sample of documents that suggests this is so. If NCB denies this, plaintiffs are entitled to more discovery on this alone.

The thrust of NCB's argument however, is that SNCB completely shut down in 2001 in any event. NCB supplied the sworn affidavit of Jorge Juco that said SNCB closed in February 2001. (See attached Exhibit A, ¶ 5). That sworn statement however, is belied by documents that reflect NCB-SNCB employees continued to work as "independent contractors" throughout 2001. (See attached Exhibit B, various documents, including renewable consulting contracts, generated by or sent to Virginia Pensa and Thomas Krohley on behalf of NCB and SNCB from their homes.)[3]

Not surprisingly, those consulting contracts no longer even feign to use the SNCB shell cover, rather, they are contracts between *"NCB"* and these long time employees. Plaintiffs do not know if they were renewed, but in the case of Pensa, she appears to have worked for NCB beyond the short-term contract provided by defendant.

At a minimum, these two American citizens, who were based in New York City, should be deposed by plaintiffs to determine the relationship between NCB-SNCB and how long they and others continued to conduct business for NCB or SNCB in the United States beyond 2001. This is no fishing expedition, and plaintiffs asked for these depositions even before the Smith

---

[2] Despite opening the door and waiving attorney work product privilege, NCB was able to suppress communications Smith had with Khalid Bin Mafouz and his British libel attorneys. Testimonial use of material otherwise protected by the attorney-client privilege or the work product privilege results in "subject matter waiver" of material related to the testimony and necessary to proper evaluation of it. *Alpex Computer Corp. v. Nintendo Co.*, 1994 U.S. Dist. Lexis 9393, *5 (S.D.N.Y. 1994); *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) (voluntarily revealing only some of the communications on a subject and withholding others - waives the privilege on the entire subject matter). Smith had further submitted his affidavit and met with British counsel as an expert exposing himself to full cross examination on the subject, yet plaintiffs were cut-off.

[3] SNCB did not file its surrender of authority in New York until October 17, 2001. Nor has it provided proof that it complied with other provisions of New York Business Corporation Law in its purported dissolution, including § 1008 and 1310 and the notice criteria therein. This is more than a technicality, it may serve to change the legal force and effect of the official date SNCB no longer had a legal presence in New York.

August 16, 2007
Page 3

deposition.

Most telling is NCB's plan to "submit an affidavit of a more knowledgeable former SNCB employee to address the nature and scope of SNCB's operations." (Liebman Aug. 13, 2007 ltr., p.5). Further, the "the decision whether to authorize depositions of former SNCB employees should be made by the court when it adjudicates NCB's renewed motion to dismiss for lack of jurisdiction." Id.

The proposal contradicts NCB's claim that it seeks to expedite discovery and motion practice. The above is a recipe to prolong any full and fair decision on NCB's presence in the U.S. Instead, what it really wants, is to deprive plaintiffs of full and fair discovery on jurisdictional contracts and hopes that the Court finds that there are no material issues of fact when it renews its motion to dismiss.

The approach is not only fundamentally unfair and prejudicial to plaintiffs, but makes zero logistical sense from a scheduling and motion practice perspective. "Limited jurisdictional discovery" means discovery limited to a jurisdictional inquiry; it does not mean plaintiffs should be limited in gaining discovery from the very contracts that arguably evidence an ongoing presence in the jurisdiction. See e.g., *Intuit Inc. v. H&R Block Eastern Enterprises, Inc.*, 2006 WL 2504936 (N.D. Ca. 2006). Depositions of SNCB employees/consultants should be granted.

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: Andrew J. Maloney III

AJM/gm
Enclosure

cc by email :  Ron Liebman, Esq.
Mitch Berger, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1581

CHAMBERS OF
FRANK MAAS
UNITED STATES MAGISTRATE JUDGE

TEL: (212) 805-6727
FAX: (212) 805-6724

# FACSIMILE COVER SHEET

**DATE:**  September 18, 2007

**TO:**  Andrew J. Maloney III, Esq.
Kreindler & Kreindler
(212) 972-9432 (fax)

Ronald S. Liebman, Esq./Mitchell R. Berger, Esq.
Patton Boggs LLP
(202) 457-6315 (fax)

**FROM:**  Evan Hudson-Plush
Law Clerk, U.S.M.J. Frank Maas

**RE:**  <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 03 MDL 1570 (GBD)(FM)

**COMMENTS:**  Memo endorsement attached.
If you have any questions, please call me at (212) 805-6730.

## NO. OF PAGES INCLUDING COVER SHEET  7

If you experience any problems with this transmission, please call Chambers at the above number.

**PATTON BOGGS LLP**
ATTORNEYS AT LAW

MEMO ENDORSED

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

[Handwritten memo endorsement:]
Plaintiffs have opposed this request solely on 2 grounds. The first, that it is premature, is mooted by my memo endorsement on Mr. Maloney's 8/16/07 letter. The second, asserted without any recitation of authority, is that NCB has the burden of proof because it raised personal jurisdiction as an affirmative defense. In the absence of a full-blown evidentiary hearing, the plaintiffs need only make a prima facie showing of personal jurisdiction. Ultimately, however, plaintiffs must establish jurisdiction at a hearing or trial by a preponderance of the evidence. See Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). At this stage, NCB is entitled to answers to its contention interrogatories. Accordingly, the plaintiffs are directed to respond to the letter of [illegible], Esq. by October 16, 2007.

F. Maas, USMJ, 9/18/07

August 13, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

BY FEDERAL EXPRESS

The Honorable Frank Maas
United States Magistrate Judge
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re:   *In re Terrorist Attacks on September 11, 2001*, MDL 03-1570 (GBD);
      *Burnett v. Al Baraka*, Case No. 03 CV 9849 (S.D.N.Y.)

Dear Judge Maas:

On behalf of Defendant, The National Commercial Bank ("NCB"), we respectfully submit this response to the August 7, 2007 letter from plaintiffs' counsel, Andrew Maloney (the "Aug. 7 Letter"), opposing the request in our July 31, 2007 letter seeking leave to propound contention discovery concerning plaintiffs' theory of personal jurisdiction over NCB. Although Mr. Maloney's letter purports to raise "two primary reasons" in opposition to contention discovery, in substance his letter raises only one— *i.e*, that contention discovery is "premature" because plaintiffs first wish to proceed with one or more depositions of former employees of SNCB Securities Inc. ("SNCB"), a former indirect U.S. subsidiary of NCB that was dissolved in 2001. (Aug. 7 Letter, at 1.) It does not appear that plaintiffs seriously intend to pursue their alternative argument that contention discovery is "potentially prejudicial" to them because NCB "bears the burden of proof" on personal jurisdiction once "plaintiffs have made a prima facie showing of jurisdiction." *Id*, at 3. The premise for this alternative argument is simply wrong: "The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff." *Hoffritz for Cutlery, Inc. v Amjac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *accord Ball v Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

Despite plaintiffs' professed uncertainty about Your Honor's authority to resolve these issues (Aug. 7 Letter at 1 n.1), there is no question that the Court's March 23, 2007 Order expressly reserved decision on "NCB's application to serve contention interrogatories." (MDL Dkt. # 1964, at ¶ 5). In the March 23, 2007 Order, moreover, Your Honor also addressed, and denied, plaintiffs' request to take the deposition of former SNCB employee Virginia Pensa. *Id*, at ¶ 3. Accordingly—

**PATTON BOGGS LLP**
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 2

although plaintiffs now recharacterize their prior request as one to take a deposition of "Virginia Pensa and/or Tom Krohley" (Aug. 7 Letter, at 1)— plaintiffs in substance are seeking reconsideration of that March 23, 2007 Order, and of Your Honor's May 1, 2007 endorsement order, in which the Court "decline[d] to direct any further discovery (not previously ordered) related to NCB." (MDL Dkt. # 1971).

We respectfully submit that there is no basis to reconsider those prior orders, and that the Court therefore should grant NCB leave to propound contention discovery as requested in our July 31 letter. As we previously demonstrated in connection with the disputes that led to entry of the March 23, 2007 Order, plaintiffs' request to take depositions of former SNCB employees is outside the scope of the "limited jurisdictional discovery" concerning "NCB's contacts with the United States" as originally allowed by Judge Casey. *In re Terrorist Attacks I*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005); *In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005).

Specifically, after extensive production of SNCB documents to plaintiffs, there is no dispute that SNCB was dissolved in 2001, before any of the 9/11 lawsuits was filed. Accordingly, SNCB's activities are "irrelevant for purposes of the 'doing business' inquiry." *Data-Stream AS/RS Technologies, LLC v Acequip Ltd*, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002) ("'[T]he defendant corporation must be 'here' and therefore subject to the state's power, at the very time of the exercise of the jurisdiction itself.' ... There is no need to resolve the dispute as to whether Zimmerman was an agent of [defendant]. Zimmerman ceased his activities on June 11, 2001, almost a year before this suit was commenced. Therefore, his activities are irrelevant for purposes of the 'doing business' inquiry.")(internal citations omitted); *accord, e.g., Schenker v Assicurazioni Generali S.p.A.*, 2002 WL 1560788, at *3, *4 (S.D.N.Y. July 15, 2002) (refusing to exercise personal jurisdiction over a foreign corporation based on the existence of an alleged U.S. subsidiary where the corporation's parent company had "sold [the subsidiary] and all other U.S. subsidiaries in October 1998-two months before the complaint in this action was filed on December 30, 1998"; holding that "[t]he only relevant inquiry is whether [the foreign defendant or its parent] had an 'agency' or 'mere department' relationship with [the alleged subsidiary] when the complaint was filed, such that any of [the alleged subsidiary's] past or present New York contacts could be attributed to [the defendant]. Because the evidence is clear that [the defendant] had sold any interest it once had in [the alleged subsidiary] as of December 30, 1998, [the alleged subsidiary's] contacts with New York cannot form a basis for personal jurisdiction over [the defendant].").

In connection with its motion to dismiss the *Burnett* and *Ashton* complaints, NCB provided the Court with authenticated copies of the Certificate of Dissolution of SNCB Securities Inc., filed with the Delaware Secretary of State on February 28, 2001. (MDL Dkt. # 416, Exh. 5, Attachment A) (copy attached hereto as Exhibit A). Since that time, NCB has produced over 60,000 pages of documents as part of "limited jurisdictional discovery," and most of those documents comprised the

2

**PATTON BOGGS**
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 3

operational files of SNCB. Plaintiffs' August 7 Letter does not identify any fact to dispute NCB's showing that SNCB was dissolved in 2001.[1]

Accordingly, the Court should not authorize depositions of former SNCB employees because their testimony cannot possibly lead to evidence relevant to personal jurisdiction over NCB. *See Melnick v Adelson-Melnick*, 346 F. Supp. 2d 499, 504-05 (S.D.N.Y. 2004) (in connection with a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "summary judgment practice offers guidance in the handling of such motions when they involve evidence outside the pleadings" and a plaintiff seeking jurisdictional discovery "must file a Rule 56(f) affidavit" that "must show," *inter alia*, "what facts are sought to resist the motion ... [and] why they might reasonably be expected to create a genuine issue of material fact" concerning personal jurisdiction) (emphasis added). Your Honor applied essentially this same analytic framework in denying a recent request for further jurisdictional discovery regarding an alleged U.S.-affiliate of another 9/11 litigation defendant, the Saudi Binladin Group ("SBG"). *See* Order (endorsement) of July 26, 2007 (MDL Dkt. # 1988). There, Your Honor held that, even if plaintiffs' allegations concerning the activities of the U.S. company were credited, "they do not suggest a basis for jurisdiction over SBG" and therefore denied "the request for discovery concerning Techmaster/PCM." *Id.* Likewise, here, even if plaintiffs' allegations concerning SNCB's activities were credited, they would not suggest a basis for jurisdiction over NCB because SNCB was dissolved in 2001, before the 9/11 lawsuits were filed.

Alternatively, even if SNCB's 2001 dissolution did not, by itself, dispose of the request for additional discovery, plaintiffs' assertions regarding the nature of SNCB's activities still would not suggest a basis for jurisdiction over NCB. Plaintiffs' claims against NCB allege that NCB provided banking services to help terrorist groups raise or transfer funds, or made direct donations to charities that were Al Qaeda fronts. *Burnett* 3rd Am. Complt, ¶¶ 45-46, 94-96; *Ashton* 6th Am. Complt., ¶¶ 429-433. Your Honor's June 28, 2006 Discovery Order held that the allegations of the *Burnett* complaint (which the *Ashton* complaint repeats) had "failed to make a prima facie showing of conspiracy" because they "establish neither that NCB or its customers contributed funds to organizations serving as Al Qaeda fronts with 'an awareness of the effects in New York' of such monetary contributions, nor that the co-conspirators in New York-namely, the Al Qaeda terrorists who executed the September 11 attacks-'acted at the direction or under the control or at the request

---

[1] We are aware that SNCB filed a Surrender of Authority with the New York Department of Taxation and Finance on October 12, 2001, to which the Commissioner of Taxation and Finance consented on October 17, 2001. As a matter of New York law, these actions do not appear to mean that SNCB remained in existence through October 17, 2001, because "[w]hen a foreign corporation is dissolved ... in the jurisdiction of its incorporation," the certificate of dissolution is supposed to be delivered to the N.Y. Department of State, and thereupon has "the same effect as the filing of a certificate of a surrender of authority under section 1310." N.Y. BUS. CORP. LAW § 1305. We cannot confirm whether the Delaware Certificate of Dissolution of SNCB was filed with the New York Department of State before the Surrender of Authority was filed. Under any set of circumstances, however, the dissolution of SNCB was effective not later than the acceptance of the Surrender of Authority on October 17, 2001, nearly a year before any of the 9/11 lawsuits was filed.

3

**PATTON BOGGS**ᴸᴸᴾ
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 4

of' NCB." *In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 287 (S.D.N.Y. 2006)(internal citations omitted). After extensive jurisdictional discovery, plaintiffs cannot point to any evidence to link SNCB to those already deficient allegations, or to show that SNCB was ever involved in any alleged NCB banking services or charitable donations.

"The term 'doing business' is used in reference to foreign corporations to relate to 'the ordinary business which the corporation was organized to do ... It is not the occasional contact or simple collateral activity which is included.'" *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 WL 1807148, at *4 (S.D.N.Y. Apr. 4, 2003) (internal citations omitted). After extensive jurisdictional discovery, plaintiffs can offer no evidence that SNCB was involved in the business of banking— the "ordinary business" that NCB was organized to do. Indeed, NCB was prohibited from engaging in "any new banking business or holding itself out as available to conduct new banking business; including accepting any new deposits or granting any new loans" in the United States after its New York branch closed in 1992. *See* 1992 OCC Enf. Dec. LEXIS 225 at *4 (July 2, 1992) (Enforcement Action of the Office of the Comptroller of the Currency re National Commercial Bank New York Federal Branch).[2] Consistent with the prohibition on U.S. banking business, the purpose of SNCB— as set out in the audited financial statements of SNCB[3] that plaintiffs have attached to the August 7 Letter— was to "conduct[ ] limited activities in the U.S. for or on behalf of NCB with respect to the management services performed by NCB for certain off-shore investment funds which services were previously performed by the Investment Management Division of the New York branch office of NCB." In particular, as explained in the SNCB audit, SNCB activities included: "... identifying and developing investment products for NCB to market outside the U.S., assisting NCB in evaluating fund advisors and performing some limited administrative and clerical support services for NCB on behalf of the investment funds." (Aug. 7 Letter, attachment.) Those investment-advisory activities have nothing to do with "banking business" as prohibited by the OCC orders, or the type alleged NCB banking services on which plaintiffs' claims against NCB are based. SNCB's activities therefore could not serve as a basis to assert jurisdiction over NCB, even if SNCB had not been dissolved before these lawsuits were commenced.

---

[2] Plaintiffs questioned Mr. Smith about the OCC orders concerning NCB at his deposition. Mr. Smith also testified that, to his knowledge, NCB did not engage in the business of banking in the United States following the 1992 closure of the New York branch, and that SNCB did not engage in the business of banking on behalf of NCB. Smith Dep. Tr., at 133:11-134:9. Although we understand that credibility determinations are beyond the scope of the issues before Your Honor, there is no basis for plaintiffs' gratuitous assertion that Mr. Smith's testimony "was less than candid about the bank being forced to close under a cloud of criminal conduct and banking fraud and other irregularities." The Comptroller of the Currency Enforcement Action (cited above and marked as an exhibit to Mr. Smith's deposition) refers to the "voluntary liquidation" of NCB's NY branch, which Mr. Smith described, and describes the prohibition that the OCC thereafter imposed on NCB's ability to conduct "any new banking business" in the United States.

[3] It is worth noting that, consistent with SNCB's corporate separation from NCB, there was an annual outside financial audit of SNCB Securities Inc. that was separate from the annual outside financial audit of NCB. The annual SNCB audit reports were produced to plaintiffs as part of jurisdictional discovery.

4



Honorable Frank Maas
August 13, 2007
Page 5

Notwithstanding the jurisdictional irrelevance of SNCB's activities, at the March 23, 2007 hearing plaintiffs proffered an affidavit of former SNCB employee Jagan Reddy addressing SNCB's pre-dissolution activities. Plaintiffs apparently plan to rely on the Reddy affidavit to argue for the exercise of jurisdiction over NCB, although NCB has sought leave to propound contention discovery precisely to determine, *inter alia*, whether plaintiffs do indeed plan to rely upon the Reddy affidavit for that purpose.[4] If so, or if plaintiffs' responses to contention discovery otherwise makes it advisable for NCB to do so, then NCB would submit an affidavit of a more knowledgeable former SNCB employee to address the nature and scope of SNCB's operations. However, even if both plaintiffs and NCB opt to submit affidavits concerning SNCB's operations in litigating NCB's renewed motion to dismiss for lack of jurisdiction, there is no reason to authorize depositions of former SNCB employees at this time. Second Circuit law is clear that, following jurisdictional discovery, the district court is free to resolve the jurisdictional question without an evidentiary hearing, based on the pleadings and affidavits submitted in connection with the motion to dismiss. *Hoffritz for Cutlery, Inc. v Amjac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *E-Z Bonz, L.L.C. v Prof. Prod. Research Co.*, 2003 WL 22064259 at *4 (S.D.N.Y. Sept. 5, 2003). Consequently, the decision whether to authorize depositions of former SNCB employees should be made by the Court when it adjudicates NCB's renewed motion to dismiss for lack of jurisdiction. At that stage, the Court will have the benefit of full legal argument and the evidentiary context that will allow it to evaluate whether the Court needs to reach and resolve any disputed factual issue concerning the activities of SNCB.

In sum, plaintiffs already have received the "'fair opportunity' to conduct jurisdictional discovery" that they seek. (Aug. 7, 2007 Letter, at 2, citing *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp.2d 392, 400 (S.D.N.Y. 2002)). Plaintiffs' letter, however, fails to provide the full context of "fair opportunity" quote from *Ski Train Fire*, where the Court held that: "Such discovery must, however, be 'limited to the essentials necessary to determining the preliminary question of jurisdiction.' Plaintiffs may not conduct a fishing expedition, but must 'target[ ] information pertinent to the well established factors involved in a jurisdictional inquiry.'" *Id* (emphasis added; internal citations omitted). As shown above, the activities of SNCB in the United States could not provide a basis for jurisdiction over NCB. Accordingly, plaintiffs' request to take depositions of former SNCB employees could not be "pertinent to the well established factors involved in a jurisdictional inquiry," *id*, and should be denied, and NCB should be allowed to propound the contention discovery requests submitted for approval with our July 31 letter.

---

[4] The Court's March 23, 2007 Order reserved decision on "plaintiffs' application to depose Jagan Mohan Reddy." (MDL Dkt. # 1964, at ¶ 5.)

5



Honorable Frank Maas
August 13, 2007
Page 6

Respectfully submitted,

Ronald S. Liebman
Counsel for Defendant The National Commercial Bank

cc:   All Counsel