# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*
   *Ashton v. Al Qaeda Islamic Army*, 02 CV 6977 (RCC)
   *Burnett v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)

### OBJECTIONS AND RESPONSES OF THE NATIONAL COMMERCIAL BANK TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, defendant The National Commercial Bank ("NCB") hereby submits the following objections and responses to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to National Commercial Bank ("Document Requests"). NCB's objections and responses are based on information presently known to it, and NCB reserves the right to assert additional objections, and to supplement these objections, based on information that arises subsequently.

### GENERALLY APPLICABLE OBJECTIONS

1.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek discovery beyond the scope authorized in the Discovery Order entered in this action on June 28, 2006 ("Discovery Order").

2.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they otherwise go beyond the "limited jurisdictional discovery" ordered by the Court. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 792 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572-73 (S.D.N.Y. 2005) ("*Terrorist Attacks II*").

1

3.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek information protected from discovery by the attorney-client privilege or attorney work-product protection.

4.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek to impose requirements or obligations on NCB beyond those of the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, or the Standing Orders of the Hon. Richard C. Casey.

5.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that the burden and expense of the proposed discovery outweighs its likely benefit. *See Spina v. Our Lady of Mercy Medical Ctr.*, 2001 WL 630481, at *2 (S.D.N.Y. 2001) (Casey, J.) (parties are prohibited from engaging in "fishing expedition[s]" by "roam[ing] in the shadow zones of relevancy... to explore matter which does not presently appear germane on the theory that it might conceivably become so.").

6.    NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they are overly broad, unduly burdensome, or oppressive as to the volume of materials sought. *See Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the So. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."); *id.* ("Objections to 'abusive' discovery that foreign litigants advance should . . . receive the most careful attention."); *accord* MANUAL FOR COMPLEX LITIGATION § 21.494, at 116 (3d ed. 2000) ("United States courts should exercise special vigilance to protect foreign litigants from unnecessary or unduly burdensome discovery . . . .").

7.     NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek information concerning NCB's status under the Foreign Sovereign Immunities Act ("FSIA").  *See Terrorist Attacks II*, 392 F. Supp. 2d at 575 ("Further inquiry into NCB's status as a foreign sovereign is postponed until the parties have completed their personal jurisdiction discovery and this Court has determined whether it has personal jurisdiction over NCB.").  NCB preserves any additional objections that it may have to FSIA-related Document Requests if, and to the extent that, jurisdictional discovery into NCB's FSIA defense becomes necessary.

8.     NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek information that pre-dates the filing of *Burnett v Al Baraka Investment & Develop. Corp.*, 03 CV 9849 ("*Burnett*") and *Ashton v Al Qaeda Islamic Army*, 02 CV 6977 ("*Ashton*") (August 15, 2002 and September 4, 2002, respectively).  Pre-lawsuit forum-contacts can be jurisdictionally significant only if "those contacts establish the pattern of contacts that existed at the moment the complaint was filed." *Schenker v Assicurazioni Generali S.p.A., Consolidated*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002).  Subject to and without waiver of this objection, in accordance with the Discovery Order, NCB will produce documents "concerning its United States contacts for the six-year period preceding the commencement of these suits." Discovery Order at 6.

9.     NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they seek information that post-dates the filing of the *Burnett* and *Ashton* actions.  *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 342 F. Supp. 2d 207, 215 n.62 (S.D.N.Y. 2004) (forum contacts that post-date the filing of a lawsuit are legally immaterial); *Grand River Enters. Six Nations, Ltd. v Pryor*, 2004 WL 2480433, at *3 (S.D.N.Y. Nov. 3, 2004) ("[o]nly pre-litigation contacts are relevant to general personal jurisdiction analysis" (citing *Metropolitan Life Ins. Co. v United Dominion Industries, Inc.*, 84 F.3d 560, 569 (2d Cir. 1996)).

10.     NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent they seek information that NCB is prohibited from disclosing under Saudi law, including requirements set forth by the Saudi Arabian Monetary Agency ("SAMA"). International comity requires Southern District courts to determine whether "confidentiality obligations imposed by foreign law" prohibit discovery from a foreign defendant, and the Second Circuit uses a multi-factor test for that purpose. *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998); *accord Lyondell-Citgo Refining L.P. v. Petroleos de Venezuela, S.A.*, 2004 U.S. Dist. LEXIS 23581 (S.D.N.Y. Nov. 19, 2004); *see* SAMA Circular MAT/150 (Sept. 7, 2002) (issued to all banks operating in the Kingdom of Saudi Arabia, prohibiting NCB from "disclosing any financial or banking information of [NCB's] clients or [NCB's] banking dealings to any party, whether individuals, establishments, or government authorities or any other party" without SAMA approval).

11.     NCB objects to the Document Requests, including the definitions and instructions therein, to the extent that they require the production of documents containing non-public financial information, or information that is otherwise private, confidential or proprietary, pertaining to, or in the possession of, NCB, and/or its former New York branch and/or former subsidiary, SNCB Securities, Inc.  NCB will produce such documents only upon entry of an appropriate protective order limiting the use of such documents for the purposes of this litigation only, as both U.S. law and SAMA directions require.

12.     NCB objects to Definition O to the extent that it requires NCB to produce documents in *Burnett v. Al Baraka Investment & Develop. Corp.*, 03 CV 5738 (RCC) because NCB has not been served with a summons and complaint, has not made an appearance, and has not moved to dismiss that action.

13.     NCB objects to the Document Requests, including the definitions and instructions included therein, to the extent that they require the inspection and/or production of documents in

any location other than Jeddah, Saudi Arabia. *See Gluck v Ansett Australia Ltd*, 204 F.R.D. 217, 221 (D.D.C. 2001) ("[W]hen the volume of material sought would make copying and transporting burdensome and oppressive to the producing party, or where the distance between the parties is great, the court may decline to order production and may instead order that the requesting party inspect the documents at the convenience of the party in possession of the documents.'" (quoting *Caruso v Coleman Co*, 157 F.R.D. 344, 349 (E.D. Pa. 1994))). Subject to and without waiver of this objection, NCB will produce non-privileged documents responsive to the Discovery Order in the United States as soon as practicable.

Based on the foregoing, and for additional reasons, NCB objects and responds to the specific numbered requests of the Document Requests, as set forth below:

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

**REQUEST NO. 1:**  From the period beginning January 1990 through the present, provide all documents relating to the purchase and acquisition of NCB shares by Public Investment Fund ("PIF"), including, but not limited to, all documents showing *when* PIF paid for NCB shares.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 2:**  From the period beginning January 1990 through the present, provide all documents showing the percentage of NCB shares owned by PIF, including, but not limited to, documents showing when PIF owned a majority of NCB shares.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 3:**  From the period beginning January 1990 through the present, provide all documents related to the sale of NCB shares by PIF, including, but not limited to, all documents related to the sale of NCB shares by PIF to the General Organization for Social Insurance.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 4:**  From the period beginning January 1990 through the present, provide all documents related to the purchase or sale of NCB shares by any person *other* than PIF, including, but not limited to, Naila Kaki (the wife of Khalid bin Mahfouz), Abdulrahman bin Mahfouz, Sultan bin Mahfouz, Abdullah Kamel, Khalid Salim bin Mahfouz, Abdul Qader al-Fadl, and the General Organization for Social Insurance.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 5:**  All documents related to the creation and establishment of the PIF, including, but not limited to, the Charter of the PIF and all amendments to the Charter of the PIF.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 6:**  From the period beginning January 1990 through the present, provide all PIF annual reports submitted to the Saudi Ministry of Finance.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 7:**  From the period beginning January 1990 through the present, provide all documents showing PIF's ownership of securities, assets, and investments.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 8:**  From the period beginning January 1990 through the present, provide all documents related to PIF's financing of commercial projects.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 9:**  From the period beginning January 1990 through the present, provide all documents related to PIF's investments in commercial projects.
**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 10:** From the period beginning January 1990 through the present, provide all documents related to PIF's "financing . . . investments in productive projects of a commercial nature" as declared in the PIF Charter.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 11:** From the period beginning January 1990 through the present, provide all documents related to PIF's provision of loans to any company, corporation, or private institution.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 12:** From the period beginning January 1990 through the present, provide all contracts entered into by PIF with any company, corporation, or private institution.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 13:** From the period beginning January 1990 through the present, provide all pleadings (i.e., Complaints, Answers, and Replies) filed by or against PIF in the United States.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 14:** From the period beginning January 1990 through the present, provide all pleadings (i.e., Complaints, Answers, and Replies) filed by or against NCB in the United States, including, but not limited to, pleadings in the following cases: <u>Logan Feed, Inc. v. National Commercial Bank et al.</u>, 92 CV 7653 (S.D.N.Y., Apr. 12, 1996); and <u>National Commercial Bank v. Morgan Stanley Asset Management, Inc.</u>, 1997 WL 634292 (S.D.N.Y. Oct. 15, 1997).
**OBJECTIONS:**         Supplementing its General Objections, NCB makes the following additional objections:

        (1) The Request ignores the Court's instruction that Plaintiffs engage in "limited jurisdictional discovery" as to, <u>inter alia</u>, "taking advantage of the privilege of its presence in New York by <u>instigating</u> a lawsuit in this forum." *Terrorist Attacks I*, 349 F. Supp. 2d at 820 (emphasis added). Plaintiffs' request for pleadings in litigation "filed . . . <u>against</u> NCB in the United States" goes beyond the Court's Order and, in any event, goes beyond the scope of discovery, *see* FED. R. CIV. P. 26(b)(1), because it does not show that <u>NCB</u> "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus <u>invoking the benefits and protections of its laws</u>." *Id.* at 810 (emphasis added).

        (2) The Request seeks documents or information that are publicly available. NCB should not be required to produce materials that Plaintiffs' can just as easily obtain themselves, as "[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *S.E.C. v Samuel H. Sloan & Co*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973).
**RESPONSE:**         Subject to and without waiver of the foregoing objections, NCB has already produced the documents in its possession, custody, or control responsive to this Request.

**REQUEST NO. 15:** From the period beginning January 1990 through the present, provide all documents related to PIF's organizational structure, including, but not limited to, all documents related to the identity and duties of PIF's directors and employees.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 16:** From the period beginning 1990 through the present, provide all documents related to the function and duties of the PIF within the Saudi Ministry of Finance.
**OBJECTIONS:**         This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 17:**  From the period beginning January 1990 through the present, provide all documents related to NCB's subsidiary SNCB Securities, Inc. ("SNCB"), including, but not limited to, all documents related to SNCB's incorporation, banking business, operations, organization, business addresses, tax liability, or dissolution, in the United States.
**OBJECTIONS:**     Supplementing its General Objections, NCB makes the following additional objections:

(1) The Request seeks documents or information that are beyond the scope of discovery as to personal jurisdiction.  It is undisputed that SNCB Securities, Ltd. (London) is SNCB Securities, Inc.'s ("SNCB") direct parent and that SNCB is an indirect, second-tier subsidiary of NCB.  *See* Decl. of Jorge Juco (Sept. 22, 2003), ¶ 5 (MDL Dkt. # 46, Exh. 5); Decl. of Jorge Juco (June 8, 2004), ¶ 5 (MDL Dkt. # 415, Exh. 2).  A second-tier subsidiary's forum-contact is not the ultimate parent's forum contact absent a showing that the subsidiary was a "mere department" or an "agent" of the parent.  *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F. Supp. 2d 403, 409-10 (S.D.N.Y. 2002) ("While the presence of [a] subsidiary alone does not establish the parent's presence in the state, [citations], personal jurisdiction over a foreign parent exists where its New York subsidiary is either a 'mere department,' or an 'agent,' of the parent.").  The Request thus does not seek information showing that NCB "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus <u>invoking the benefits and protections of its laws</u>."  *Terrorist Attacks I*, 349 F. Supp. 2d at 810 (emphasis added).

(2) The undisputed record evidence confirms that SNCB was dissolved as of February 28, 2001, approximately 18 months before the *Burnett* and *Ashton* actions were filed.  *See* Decl. of Jorge Juco (Sept. 22, 2003), ¶ 5 & Exh. A thereto.  As such, the Request seeks documents or information that are immaterial as a matter of law.  *See Schenker v. Assicurazioni Generali S.p.A.*, 2002 WL 1560788, at *4 (S.D.N.Y. July 15, 2002) ("The only relevant inquiry is whether [the foreign parent corporation] had an 'agency' or 'mere department' relationship with [the subsidiary] when the complaint was filed, such that any of [the alleged subsidiary's] past or present New York contacts could be attributed to [the foreign parent corporation].  Because the evidence is clear that [the defendant] had sold any interest it once had in [the subsidiary] as of December 30, 1998, [the subsidiary's] contacts with New York cannot form a basis for personal jurisdiction over [the foreign parent corporation].").
**RESPONSE:**     Subject to and without waiver of the foregoing objections, and following the entry of a protective order (*see* General Objection 11), NCB will produce non-privileged, non-customer specific SNCB records in its possession, custody, or control for the "six-year period preceding the commencement of these suits." Discovery Order at 6.

**REQUEST NO. 18:**  From the period beginning January 1990 through the present, provide all documents relating to the SNCB's lease for its office at 420 Lexington Ave., Suite 460, New York, NY 10170.
**OBJECTIONS:**     Supplementing its General Objections, NCB objects that the Request seeks information previously provided to Plaintiffs.  *See* Supplemental Decl. of Jorge Juco (May 25, 2004), ¶¶ 2-4 & Exh. A (MDL Dkt. # 415, Exh. 5 thereto) (Surrender Agreement dated February 16, 2001).
**RESPONSE:**     Subject to and without waiver of the foregoing objections, and following the entry of a protective order (*see* General Objection 11), NCB will produce non-privileged, non-customer specific SNCB records in its possession, custody, or control for the "six-year period preceding the commencement of these suits." Discovery Order at 6.

**REQUEST NO. 19:** From the period beginning January 1990 through the present, provide all documents relating to the SNCB's maintenance of any office in the United States.

**OBJECTIONS:**       Supplementing its General Objections, NCB incorporates its objections to Requests 17 and 18.

**RESPONSE:** Subject to and without waiver of the foregoing objections, and following the entry of a protective order (*see* General Objection 11), NCB will produce non-privileged, non-customer specific SNCB records in its possession, custody, or control for the "six-year period preceding the commencement of these suits." Discovery Order at 6.

**REQUEST NO. 20:** From the period beginning January 1990 through the present, provide all documents relating to any office that NCB or any NCB subsidiary maintained in the United States.

**OBJECTIONS:**       Supplementing its General Objections, NCB incorporates its objections to Requests 17-19.

**RESPONSE:**        Subject to and without waiver of the foregoing objections, and following the entry of a protective order (*see* General Objection 11), NCB will produce non-privileged, non-customer specific SNCB records in its possession, custody, or control for the "six-year period preceding the commencement of these suits." Discovery Order at 6. NCB did not maintain any office or branch in the United States during the six-year period preceding commencement of these suits, and does not have any non-customer specific records from that six-year period pertaining to its former New York branch.

**REQUEST NO. 21:** For the period beginning January 1990 through the present, provide all documents relating to bank accounts held by NCB for any of following organizations that solicited funds in publications that circulated in the United States: (1) Saudi Red Crescent Society; (2) Muslim World League; (3) International Islamic Relief Organization ("IIRO"); (4) World Assembly of Muslim Youth; (5) Makkah Charity Trust Est.; (6) al-Haramain & al-Masjid al-Aqsa Charity; (7) Islamic Trust Foundation; and (8) Islamic Solidarity Fund & Waqf for the Organization of the Islamic Conference.

**OBJECTIONS:**       Supplementing its General Objections, NCB makes the following additional objections:

(1)       Pursuant to the Discovery Order (at 10-11) NCB is not required to produce documents, if any, in its possession, custody or control that are responsive to this request.

(2)       Assuming the entities listed in the Request are or were customers of NCB, customer financial activity within the United States is not NCB financial activity within the United States. *See Hanson v Denckla*, 357 U.S. 235, 253 (1958) ("unilateral activity" of another insufficient); *accord Burger King Corp. v Rudzewicz*, 471 U.S. 462, 474-75 (1985); *Helicopteros Nacionales v Hall*, 466 U.S. 408, 416-17 (1984) (same); *Stauffacher v Bennett*, 969 F.2d 455, 458 (7th Cir. 1992) ("We would not expect anyone to argue that if the First National Bank of Chicago accepts a deposit from a man in Saudi Arabia, this thrusts the bank into the banking business in Saudi Arabia, thus exposing it to suit there by any resident of the kingdom for anything at all, whether or not the plaintiff is the depositor or his claim is related to the deposit."). The Request therefore seeks documents or information that is beyond the scope of discovery because the requested information would not show that NCB "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Terrorist Attacks I*, 349 F. Supp. 2d at 810 (emphasis added).

(3)       The Request seeks documents or information relevant, if at all, only to the merits of the *Burnett* and *Ashton* actions, in violation of CMO-2 ¶ 17, which prohibits merits discovery "until such jurisdictional motion has been resolved." *See also In re Ski Train Fire in Kaprun, Austria on*

*November 11, 2000*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002) ("Such discovery [concerning personal jurisdiction] must . . . be limited to the essentials necessary to determining the preliminary question of jurisdiction. . . . Plaintiffs may not conduct a fishing expedition . . . but must target[ ] information pertinent to the well established factors involved in a jurisdictional inquiry.").

    (4)    Alternative, less intrusive means exist for obtaining information about the entities referenced in the Request. Plaintiffs can seek that information directly from the specified entities or individuals, not from NCB. *See In re Grand Jury Subpoena dated August 9, 2000*, 218 F. Supp. 2d 544, 563 (S.D.N.Y. 2002) (in determining whether to order disclosure in contravention of bank secrecy laws, courts balance, *inter alia*, whether the information can be obtained from alternative sources).

**REQUEST NO. 22:** Provide all documents relating to NCB's change in business organization from a Joint Liability Partnership to a Joint Stock Company in 1997.
**OBJECTIONS:** Supplementing its General Objections, NCB objects that this Request seeks production of documents beyond the scope of the Discovery Order, because this request does not relate to NCB's "presence in the United States." Discovery Order at 11.

**REQUEST NO. 23:** For the period beginning January 1990 through the present, provide all documents relating to NCB's maintenance of corresponding [sic] banking relationships with U.S. commercial banks, including, but not limited to, the use of letters of credit, U.S. Dollar clearing accounts, NOSTRO accounts, custodian banks, and transfer agents.
**OBJECTIONS:** Supplementing its General Objections, NCB makes the following additional objections:

    (1) The Request seeks production of documents beyond the scope of the Discovery Order, because this request does not relate to NCB's "presence in the United States." Discovery Order at 11. Under U.S. law, a foreign bank's U.S. correspondent bank accounts in the United States do not demonstrate the foreign bank's presence in the United States. *See Terrorist Attacks I*, 349 F. Supp. 2d at 819-20 (citing *Semi Conductor Materials, Inc. v. Citibank Int'l PLC*, 969 F. Supp. 243, 244 (S.D.N.Y. 1997) (holding foreign bank's correspondent banking relationship with New York bank is not sufficient for personal jurisdiction); *Casio Computer Co. v. Sayo*, 2000 WL 1877516, at *26 (S.D.N.Y. Oct. 13, 2000) (holding defendant bank's wire transfers to U.S. bank accounts does not create minimum contacts); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (holding correspondent banking relationships insufficient to create general personal jurisdiction)).

    (2) The Request seeks production of documents beyond the scope of the Discovery Order, alternatively, because NCB correspondent bank account records reflect the individual transactions of NCB customers that are accomplished through NCB's correspondent banking relationships. The Discovery Order (at 11) prohibits "inquiry into the accounts of specific NCB customers at this preliminary stage."

    (3) The Request is "overbroad on its face" because it seeks potentially millions of pages of documents that are irrelevant to whether there is U.S. jurisdiction over NCB. *See Catskill Dev.*, 206 F.R.D. at 95.

    (4) Summaries of the requested documents are sufficient because Plaintiffs have not demonstrated that production of the underlying documents is necessary. *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-68 (S.D.N.Y. 2004); *Shaffer v. CC Investments, LDC*, 205 F.R.D. 158, 159-60 (S.D.N.Y. 2002).
**RESPONSE:** Subject to, and without waiver of, the foregoing objections, and following the entry of a protective order (*see* General Objection 11), NCB will produce a summary chart identifying the correspondent bank accounts that it maintained with U.S. commercial banks during the six-year period preceding the commencement of these suits.

**REQUEST NO. 24:** For the period beginning January 1990 through the present, all documents relating to any securities NCB bought, sold, or traded on any securities exchange within the United States, including, but not limited to, documents reflecting NCB's use of security dealers, custodians, broker dealers, portfolio manager, or asset managers.

**OBJECTIONS:**   Supplementing its General Objections, NCB makes the following additional objections:

(1) NCB's passive investments are not material to U.S. jurisdiction. *See Terrorist Attacks II*, 392 F. Supp. 2d at 559 (finding Prince Salman's "limited contacts with the United States," including "ownership of shares in [two] Texas corporations" insufficient to establish general personal jurisdiction); *accord Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 (2d Cir. 1975) (arranging with American brokers to buy or sell securities traded on American markets not sufficient to constitute "doing business" within the United States; otherwise "every securities dealer of any significant size anywhere in the world would be 'doing business' here"); *In re Ski Train Fire in Kaprun, Austria on Nov 11, 2000*, 2003 WL 1807148, at *4 ("A long line of cases establishes that a defendant is not 'present' in New York for the purposes of jurisdiction simply because it has engaged in financing transactions here.").

(2) Summaries of the requested documents are sufficient because Plaintiffs have not demonstrated that production of the underlying documents is necessary. *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-68 (S.D.N.Y. 2004); *Shaffer v. CC Investments, LDC*, 205 F.R.D. 158, 159-60 (S.D.N.Y. 2002).

**RESPONSE:**   Subject to, and without waiver of, the foregoing objections, and following the entry of a protective order (see General Objection 11), NCB will produce a summary chart identifying the securities that NCB acquired from a United States source during the six-year period preceding the commencement of these suits.

**REQUEST NO. 25:** For the period beginning January 1990 through the present, provide all documents relating to any securities NCB bought, sold, or traded that were issued by any U.S. corporation or entity.

**OBJECTIONS:**   Supplementing its General Objections, and its Objections to Request No. 24, NCB further objects to the Request on the ground that, to the extent that NCB acquired securities "issued by any U.S. corporation or entity" from a source outside the United States, such transactions do not relate to NCB's "presence in the United States." Discovery Order at 11.

**RESPONSE:**   Subject to, and without waiver of, the foregoing objections, and following the entry of a protective order (see General Objection 11), NCB will produce a summary chart identifying the securities that NCB acquired from a United States source during the six-year period preceding the commencement of these suits.

**REQUEST NO. 26:** For the period beginning January 1990 through the present, provide all documents relating to any commercial paper that NCB bought, sold, or negotiated within the United States.

**OBJECTIONS:**   Supplementing its General Objections, NCB incorporates its objections to Request No. 24.

**RESPONSE:**   Subject to, and without waiver of, the foregoing objections, and following the entry of a protective order (see General Objection 11), NCB will produce a summary chart identifying the securities that NCB acquired from a United States source during the six-year period preceding the commencement of these suits.

**REQUEST NO. 27:** For the period beginning January 1990 through the present, provide all documents relating to any loan made by NCB to any person in the United States, including, but not limited to, any loan made by NCB that involved an agent bank, administrative bank, funding bank, lead bank, or participating bank in the United States.

**OBJECTIONS:**   Supplementing its General Objections, NCB objects that this Request seeks customer-specific information, contrary to the Discovery Order (at 11), which prohibits "inquiry into the accounts of specific NCB customers at this preliminary stage."

**RESPONSE:**   Subject to and without waiver of the foregoing objections, NCB states that it made no loans to any person in the United States during the six-year period preceding the commencement of these suits. The only responsive documents in NCB's possession, custody, or control from that six-year period are customer-specific documents concerning the collection or resolution of loans previously made by its former New York branch, which need not be produced pursuant to the Discovery Order.

**REQUEST NO. 28:** For the period beginning January 1990 through the present, provide all Uniform Commercial Code ("U.C.C.") filings or records wherein NCB or SNCB is listed as either the secured party or debtor.

**OBJECTIONS:**   Supplementing its General Objections, NCB objects that this Request seeks documents or information that are publicly available. NCB should not be required to produce materials that Plaintiffs' can just as easily obtain themselves, as "[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *S.E.C. v Samuel H. Sloan & Co.,* 369 F. Supp. 994, 995 (S.D.N.Y. 1973).

**RESPONSE:**   Subject to and without waiver of the foregoing objections, NCB will produce UCC Financing Statements in its possession, custody, or control for the six-year period preceding the commencement of these suits.

**REQUEST NO. 29:** From the period beginning January 1990 through the present, provide all pleadings (i.e., Complaints, Answers, and Replies) filed by or against SNCB in the United States.

**OBJECTIONS:**   Supplementing its General Objections, NCB incorporates its objections to Request 17.

**RESPONSE:**   Subject to and without waiver of the foregoing objections, NCB has already produced the documents in its possession, custody, or control responsive to this Request.

**REQUEST NO. 30:** For the period beginning January 1990 through the present, provide all documents relating to advertisements made by NCB or SNCB that circulated in the United States.

**OBJECTIONS:**   Supplementing its General Objections, NCB incorporates its objections to Request 17.

**RESPONSE:**   Subject to and without waiver of the foregoing objections, NCB states that it has no responsive documents in its possession, custody, or control.

**REQUEST NO. 31:** For the period beginning January 1990 through the present, provide all documents relating to solicitations or advertisements in publications that circulated in the United States that provided NCB account numbers to which persons could contribute directly.

**OBJECTIONS:**   Supplementing its General Objections, NCB incorporates its objections to Request 30.

**RESPONSE:**   Subject to and without waiver of the foregoing objections, NCB states that it has no responsive documents in its possession, custody, or control.

**REQUEST NO. 32:** For the period beginning January 1990 through the present, provide all documents relating to NCB accounts held by any person residing or doing business in the United States.

**OBJECTIONS:**          Supplementing its General Objections, NCB makes the following additional objections:

(1) Pursuant to the Discovery Order (at 10-11) NCB is not required to produce documents, if any, in its possession, custody or control that are responsive to this request.

(2) The Request is vague, indefinite, undefined, or ambiguous because Plaintiffs fail to explain what they mean by persons "residing or doing business in the United States."

**REQUEST NO. 33:** For the period beginning January 1990 through the present, provide all documents relating to the transfer of money through NCB accounts to MUWAFFAQ ("Blessed Relief") Foundation.

**OBJECTIONS:**          Supplementing its General Objections, NCB objects that, pursuant to the Discovery Order (at 10-11), NCB is not required to produce documents, if any, in its possession, custody or control that are responsive to this request.

**REQUEST NO. 34:** For the period beginning January 1990 through the present, provide all documents relating to the transfer of money through NCB accounts to International Islamic Relief Organization ("IIRO").

**OBJECTIONS:**          Supplementing its General Objections, NCB objects that, pursuant to the Discovery Order (at 10-11), NCB is not required to produce documents, if any, in its possession, custody or control that are responsive to this request.

**REQUEST NO. 35:** For the period beginning January 1990 through the present, provide all documents relating to the transfer of money through NCB accounts to the Saudi Red Crescent Society.

**OBJECTIONS:**          Supplementing its General Objections, NCB objects that, pursuant to the Discovery Order (at 10-11), NCB is not required to produce documents, if any, in its possession, custody or control that are responsive to this request.

**REQUEST NO. 36:** For the period beginning January 1990 through the present, provide all documents relating to the annual budget of the PIF.

**OBJECTIONS:**          This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 37:** For the period beginning January 1990 through the present, provide all documents relating to any PIF accounts held by the Saudi Arabian Monetary Authority.

**OBJECTIONS:**          This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 38:** For the period beginning January 1990 through the present, provide all documents relating to PIF's function as a specialized credit institution in Saudi Arabia.

**OBJECTIONS:**          This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 39:** Provide all documents related to the capitalization of PIF by any person or entity *other* than the Government of the Kingdom of Saudi Arabia.

**OBJECTIONS:**          This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 40:** Provide all documents related to a source of PIF's investment capital *other* than the Government of the Kingdom of Saudi Arabia, including, but not limited to, any loans made to PIF by NCB.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 41:** For the period beginning January 1990 through the present, provide all documents related to the raising of funds through commercial markets by PIF.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 42:** For the period beginning January 1990 through the present, provide all documents relating to PIF's borrowing of money from Saudi commercial banks, including, but not limited to, NCB.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 43:** For the period beginning January 1990 through the present, provide all documents relating to PIF's procedures, criteria or rules for making investment decisions.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 44:** For the period beginning January 1990 through the present, provide all documents relating to PIF's decision to invest in NCB, including, but not limited to, provide [*sic*] all documents related to due-diligence information gathered by PIF on NCB.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 45:** For the period beginning January 1990 through the present, provide all documents relating to any feasibility study conducted by PIF on NCB prior to PIF's investment in NCB.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 46:** For the period beginning January 1990 through the present, provide all documents relating to any audit conducted by PIF on NCB, including, but not limited to, the entire document of which Exhibit 1, the excerpts previously produced by Khalid bin Mahfouz's counsel, is a part.  *See* Exhibit 1 to Plaintiffs' First Set Of Jurisdictional Requests For Production Of Documents Directed To National Commercial Bank.
**OBJECTIONS:**        Supplementing its General Objections, NCB objects that this Request may seek discovery concerning NCB's status under the FSIA.
**RESPONSE:**        Subject to and without waiver of the foregoing objections, NCB states that it has no responsive documents in its possession, custody, or control.  Pursuant to the Discovery Order (at 8-9), NCB further states that it has been advised by SAMA that it "is not aware of any audit of NCB undertaken in 1998 intended to explore whether NCB played a knowing role in the financing of terrorist activities directed against the United States or one that confirmed that NCB knowingly financed terrorist acts against the United States."

**REQUEST NO. 47:** For the period beginning January 1990 through the present, provide all documents listing any PIF officer, director, or employee serving on the Board of Directors of any corporation.
**OBJECTIONS:**        This Request seeks discovery concerning NCB's status under the FSIA.

4830194                                14

**REQUEST NO. 48:** For the period beginning January 1990 through the present, provide all documents relating to the sale of any assets by PIF to any person *other* than a Saudi government entity.

**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 49:** For the period beginning January 1990 through the present, provide any documents listing PIF investments in Saudi Arabia.

**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 50:** For the period beginning January 1990 through the present, provide any documents listing PIF investments worldwide.

**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 51:** For the period beginning January 1990 through the present, provide any documents relating to any audits of PIF.

**OBJECTIONS:**       This Request seeks discovery concerning NCB's status under the FSIA.

**REQUEST NO. 52:** For the period beginning January 1990 through the present, provide any documents relating to any audits of NCB.

**OBJECTIONS:**       Supplementing its General Objections, NCB objects that this Request seeks production of documents beyond the scope of the Discovery Order, because this request does not relate to NCB's "presence in the United States." Discovery Order at 11.

**RESPONSE:**       To the extent that this request is intended to duplicate Request No. 46, NCB incorporates its response to that Request.

**REQUEST NO. 53:** For the period beginning January 1990 through the present, provide any documents relating to NCB banking services that are available to non-Saudi citizens.

**OBJECTIONS:**       Supplementing its General Objections, NCB makes the following additional objections:

       (1) The Request seeks production of documents beyond the scope of the Discovery Order, because this request does not relate to NCB's "presence in the United States." Discovery Order at 11; *see also Terrorist Attacks I,* 349 F. Supp. 2d at 810.

       (2) The Request is vague, indefinite, undefined, or ambiguous because Plaintiffs fail to explain what they mean by "documents relating to NCB banking services."

       (3) The Request seeks production of documents beyond the scope of the Discovery Order because the Discovery Order (at 11) prohibits "inquiry into the accounts of specific NCB customers at this preliminary stage."

**REQUEST NO. 54:** For the period beginning January 1990 through the present, provide any documents relating to NCB accounts that were opened for residents of the United States under Rule 400 of the Saudi Arabia Monetary Authority Regulations.

**OBJECTIONS:**       Supplementing its General Objections, NCB makes the following additional objections:

       (1) The Request seeks production of documents beyond the scope of the Discovery Order, because this request does not relate to NCB's "presence in the United States." Discovery Order at 11.

4830194                                        15

(2) The Request seeks production of documents beyond the scope of the Discovery Order, alternatively, because the Discovery Order (at 11) prohibits "inquiry into the accounts of specific NCB customers at this preliminary stage."

(3) The Request is vague, indefinite, undefined, or ambiguous because Plaintiffs fail to explain what they mean by "residents of the United States."

**REQUEST NO. 55:** For the period beginning January 1990 through the present, provide any documents relating to authorization given by the Saudi Arabia Monetary Authority to NCB to open accounts for residents of the United States.

**OBJECTIONS:**     Supplementing its General Objections, NCB incorporates its objections to Request 54.  To the extent that the Request seeks non-customer specific information concerning "authorization given by the Saudi Arabia Monetary Authority [sic]," NCB refers Plaintiffs to SAMA Rule 400, previously referenced in Request No. 54.

**REQUEST NO. 56:** For the period beginning January 1990 through the present, provide any documents relating to U.S. assets, securities, or investments of NCB.

**OBJECTIONS:**     Supplementing its General Objections, and its objections to Requests 24-26, NCB makes the following additional objections:

(1) The Request is vague, indefinite, undefined, or ambiguous because Plaintiffs fail to explain what they mean by "U.S. assets, securities, or investments."

(2) The Request is cumulative of Requests 24-26.

**RESPONSE:**     NCB incorporates its response to Requests 24-26.

Dated: September 22, 2006
Washington, D.C.

Respectfully submitted,

Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315
*Attorneys for Defendant*
*The National Commercial Bank*