UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD) |

*This document relates to:*

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03 CV 9849 (GBD)
*Federal Ins. Co. v. Al Qaida*, 03 CV 6978 (GBD)
*Euro Brokers, et al. v. Al Baraka, et al.*, 04 CV 7279 (GBD)
*World Trade Center Properties LLC, et al. v. Al Baraka, et al.*, 04 CV 7280 (GBD)
*New York Marine and General Insurance Co. v. Al Qaida, et al.*, 04 CV 6105 (GBD)

## PLAINTIFFS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY FILED BY DEFENDANT YOUSEF JAMEEL

Plaintiffs submit this response to the "Notice of Supplemental Authority" ("Notice") submitted by defendant Yousef Jameel on January 16, 2008.[1] In his Notice, Jameel claims that the recent decision of the Seventh Circuit in *Boim v. Holy Land Foundation for Relief and Development*, 511 F.3d 707 (7th Cir. 2007) (*Boim IV*) provides support for his pending motion to dismiss the claims against him. Jameel is wrong: nothing in the recent *Boim* decision supports the motion to dismiss. On the contrary, *Boim IV* further demonstrates the sufficiency of Plaintiffs' claims against Jameel.[2]

### I. THE NEW *BOIM* DECISION DOES NOT ADDRESS THE PLEADING STANDARDS TO BE APPLIED ON A MOTION TO DISMISS

As Jameel himself recognizes, the *Boim* decision reversed a grant of summary judgment and addresses the question of what proof a plaintiff must provide in order to prevail on a motion for summary judgment. Jameel's motion is addressed to the pleadings in these cases and asks this Court to dismiss the claims against him for lack of

---

[1] In addition to the Plaintiffs in the cases listed above, to which the Notice directly pertains, the Plaintiffs' Executive Committees join in this submission.

[2] On February 8, 2008, the *Boim* plaintiffs filed a Petition for Rehearing and Rehearing *En Banc*.

1

personal jurisdiction and for failure to state a claim.  Jameel claims that this distinction is irrelevant because, he contends, "[t]he substantive law . . . does not change based on the stage of the litigation."  Notice at 6.   Although this may well be true, it is entirely beside the point.  *Boim IV* does not address any issue of substantive law that is in dispute on Jameel's motion and has nothing to say about what Plaintiffs must plead in order adequately to allege that Jameel is subject to jurisdiction in the United States or that he is liable to Plaintiffs under the Anti-Terrorism Act ("ATA").

In *Boim IV*, the Seventh Circuit re-affirmed and clarified its holding in *Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ("*Boim II*") that plaintiffs suing under the Anti-Terrorism Act need not "establish a direct link between the defendants' donations (or other conduct)" and the murder that gave rise to their claims.  *Boim IV*, 511 F.3d at 741.  Rather, the Court explained, "a factfinder reasonably could conclude that those who provide money and other general support to a terrorist organization are as essential in bringing about the organization's terrorist act as those who plan and carry out those acts."  *Id.*, *citing Boim II*, 291 F.3d at 1021.

The *Boim* case arose from the murder of David Boim.  Plaintiffs alleged that defendants had provided funding to Hamas and that Hamas had carried out the murder of plaintiffs' son, David Boim.  In discussing the requisite causal link between the defendant's conduct and the murder, the Court emphasized that "a defendant's conduct need not be the sole circumstance responsible for a terrorist act in order to qualify as a cause in fact; it is enough that it be *a* cause of the act and the resulting harm."  *Boim IV*, 511 F.3d at 742 (emphasis in original).  Indeed, the Court clarified that the plaintiff need not "show that the defendant's conduct was the predominant or primary cause of the injury."  *Id.* at 743. The Court noted the kinds of evidence that might satisfy the causation requirement of the ATA, including a scenario in which

> defendants had channeled funds into a central pool of money that was used to train terrorists, buy their weapons, and so forth-and that the terrorists who killed David Boim had been trained and armed using those funds

511 F.3d at 741. Alternatively, the Court noted:

> if an individual or organization established a funding network in the United States designed to provide ongoing financial support for Hamas's terrorist activities, a factfinder might reasonably infer that the act of establishing that network was a cause of ensuing acts of Hamas terrorism, even if no line could be drawn linking a particular dollar raised to a particular terrorist act.

*Id.* Thus, the Court explained:

> A plaintiff might well be unable to show that a terrorist organization such as Hamas depended on a particular donor to support its terrorism, for example, or that one act of terrorism owed its existence to a specific donation. But a careful showing that many small donations collectively resulted in a cache of funds that in turn enabled a series of terrorist acts would permit a factfinder reasonably to infer a causal connection between the contribution made by a single donor and one of the terrorist acts made possible by that donor and others like him, even if a single donation would not by itself have been enough to cause that terrorist act.

511 F.3d at 743.  Ultimately, the Court concluded:

> The viability of any of the potential theories of causation in fact we have discussed would of course turn on the evidence presented. . . .A more definitive assessment of what evidence will suffice to support a finding of cause in fact must await the presentation of that evidence. *It is enough for us now to reiterate that Congress meant for liability to extend the full length of the causal chain of terrorism*.

*Id.* (emphasis added).

Thus, while *Boim IV* reiterates the legal standard, set forth in *Boim II*, for pleading causation under the ATA, the decision makes quite clear that the Court cannot assess the sufficiency of plaintiff's causation evidence at the pleading stage. Rather, at the pleading stage, the court assesses only a plaintiff's *theory* of causation.[3]  Thus, what defendant Jameel refers to as the "[t]he *Boim* court's insistence that plaintiffs proffer

---

[3] The *Boim IV* court did correct the district court's erroneous interpretation of *Boim II* as not requiring any factual causal connection between the defendant's conduct and the plaintiff's injury, *see Boim IV*, 511 F.3d at 740-41, but Plaintiffs have never argued that they need not allege – and eventually, at trial, prove – any causal connection between Jameel and the terrorist attacks of September 11.  Rather, as described below, *see* Point II, in opposing Jameel's motion, Plaintiffs have demonstrated that the causal connection is sufficiently alleged.

3

evidence of specific knowledge and intent," *see* Notice at 5, refers (assuming without conceding that it accurately describes any aspect of the *Boim IV* decision) to a plaintiff's obligation at trial or in support of a summary judgment motion. It has no bearing whatsoever on the sufficiency of a *pleading* under the ATA.

Moreover, under Fed.R.Civ.P Rules 8 and 9, and case law construing them, Plaintiffs need not plead detailed evidence to support their allegations in these cases. Rather, as set forth in the Plaintiffs' Executive Committees' letter to the Court dated January 14, 2008, concerning *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) and *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), even under the Supreme Court's most recent precedents, "'[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]'; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Iqbal*, 490 F.3d at 157, *quoting Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (omission in original). Indeed, as the Second Circuit noted in *Iqbal*, the Supreme Court has continued to cite with approval Fed.R.Civ.P. Appendix Form 9, a sample Complaint for Negligence, which contains generalized allegations and legal conclusions, but nonetheless includes sufficient information to provide the defendant with notice of the basis of the claim. *See Iqbal*, 490 F.3d at 156, *citing Bell Atlantic*, 127 S.Ct. at 1970 n. 10. Similarly, Fed.R.Civ.P. 9 – which was not addressed by the Supreme Court in *Bell Atlantic* -- expressly provides that "[m]alice, intent, knowledge, and any other condition of a person's mind may be alleged generally."

*Boim IV* does nothing to alter these pleading requirements, not could it, as they are governed by Rule 8 as construed by the United States Supreme Court and the Second Circuit, and by Rule 9.[4]  The *Boim IV* decision thus does not require Plaintiffs to

---

[4] *Boim IV* is also inapplicable to that portion of Jameel's motion that challenges this Court's personal jurisdiction over him because the requisite causal connection between a defendant's conduct and a plaintiff's claims is governed not by the ATA, but rather by the requirements of due process. In *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985), the Supreme Court held that the requirements of due process for the assertion of jurisdiction are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum *and the litigation results from alleged injuries that 'arise out of or relate*

4

plead causation – or indeed any element of their claims – with any greater level of specificity than before.  Moreover, as shown below, to the extent that *Boim IV* has anything to say about what Plaintiffs must allege under the ATA, Plaintiffs' allegations here fall squarely within the theories of causation approved in that case.

## II. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CAUSAL CONNECTION BETWEEN JAMEEL'S CONDUCT AND THE TERRORIST ATTACKS THAT CAUSED PLAINTIFFS' INJURIES

As demonstrated in Plaintiffs' memorandum of law in opposition to Jameel's motion to dismiss, Plaintiffs have sufficiently alleged a causal connection between Jameel's conduct and the terrorist attacks that caused Plaintiffs' injuries.  *See* Plaintiffs' Memorandum Of Law In Opposition To Motion To Dismiss Of Yousef Abdul Latif Jameel ("Plaintiffs' Opp.").  Nothing in *Boim IV* alters that conclusion.  Rather, the analysis in *Boim IV* further confirms that Plaintiffs have sufficiently alleged their claims against Jameel.

Plaintiffs have provided detailed allegations concerning Jameel's contributions to al Qaeda; these allegations include Jameel's role as one of the founding contributors to al Qaeda, listed on the "Golden Chain" document;[5] Jameel's donations, of both money

---

*to' those activities*." (Citations omitted; emphasis supplied).  Thus, *Burger King* and cases decided after it determine what a plaintiff must plead in order sufficiently to allege personal jurisdiction over a defendant.  *Boim IV* has nothing to say about this issue.

[5] As described by the United States Department of Treasury in its decision to designate defendant Adel Batterjee as a Specially Designated Global Terrorist pursuant to Executive Order 13224, the "Golden Chain" document is "a 1988 handwritten draft listing wealthy financiers of UBL's mujahideen operations in Afghanistan, referred to within al Qaida as the "Golden Chain. This list contains 20 names with a parenthetical after each name, likely indicating the person who received funds from the specified donor."  *See* Declaration of Jodi Flowers, submitted in opposition to the motion to dismiss filed by Jameel, Exhibit 1 [Draper Aff.] at Attachment U.  Other sources have described it as a list of ""wealthy individuals from the Gulf region who provided Bin Laden and al Qaeda with money on a regular basis." *See* Flowers Aff., Exhibit 1 [Draper AFf.] at Attachment F [FBI 302 Statement] at 23.  The 9/11 Commission cited the "Golden Chain" in its report, *see* The 9/11 Commission Final Report, July 2004, Flowers Aff., Exhibit 1 [Draper Aff.] at Attachment S, p. 55.  Plaintiffs respectfully refer this Court to their memorandum of law in opposition to defendant Jameel's motion to dismiss for a complete discussion of the "Golden Chain" document and its significance.

5

and equipment, to numerous al-Qaeda front charities, including WAMY, al Haramain, and the Saudi High Commission; Jameel's purchase of a satellite telephone for Osama bin Laden; and a specific conversation with the treasurer of al Qaeda stating that Jameel donated funds to al Qaeda. *See* Plaintiffs' Opp. at 1-3. Plaintiffs allege that Jameel did so with knowledge of al Qaeda's terrorist agenda. *See id.* at 20. Plaintiffs further allege that Jameel helped provide the financing that allowed bin Laden to train terrorists and to set up a vast terrorist infrastructure, *see Federal Ins.* First Amended Complaint with Incorporated More Definite Statements, Rico Statements and Rule 15(d) Supplemental Pleadings at ¶¶ 494; *Burnett* Plaintiffs' More Definite Statement as to Defendant Yousef Abdul Latif Jameel at ¶¶ 10-15, 31-32, which in turn enabled multiple acts of international terrorism, including the September 11 attacks. Plaintiffs also allege that the infrastructure used to train the terrorists was necessary to al Qaeda's ability to carry out the attacks. *See Burnett* 3AC at p. 199-200, ¶¶ 22-39. Indeed, Plaintiffs allege not only that the September 11 attacks were carried out by the very group to whom Jameel provided his support, *see Burnett* 3AC at ¶ 6 ("Osama bin Laden and al Qaeda have admitted responsibility for the September 11, 2001 terrorist attacks"), but further allege that at least three of the actual September 11 hijackers were trained in the terrorist training camps that bin Laden set up with the donations he received. *See e.g. Burnett* 3AC at ¶¶ 18-23. Moreover, Plaintiffs allege that "All nineteen (19) hijackers were members of Osama bin Laden's al Qaeda terrorist group. . . . All received sponsorship, training, support and funding through Osama bin Laden and his al Qaeda terrorist network." *Id.* at ¶ 11.

These allegations fit squarely within the examples given by the court in *Boim IV* of the kind of connections that are sufficient to establish causation under the ATA. Thus, as noted above, the *Boim IV* court held that evidence that "defendants had channeled funds into a central pool of money that was used to train terrorists, buy their weapons, and so forth and that the terrorists who killed [plaintiffs' decedent] had been trained and armed using those funds" satisfies the causation requirement of the ATA. *See Boim IV*, 511 F.3d at 741. Similarly, the court noted, evidence that an individual or

6

organization established a funding network designed to provide ongoing financial support for a group's terrorist activities would be sufficient to allow a factfinder to infer that infer that the act of establishing that network was a cause of ensuing acts of the group's terrorism, "even if no line could be drawn linking a particular dollar raised to a particular terrorist act." *Id.* The *Boim IV* court further found that "a careful showing that many small donations collectively resulted in a cache of funds that in turn enabled a series of terrorist acts would permit a factfinder reasonably to infer a causal connection between the contribution made by a single donor and one of the terrorist acts made possible by that donor. . . . " 511 F.3d at 743. The court's examples are precisely what Plaintiffs here have alleged.

It is worth repeating that although the plaintiffs in *Boim IV*, seeking summary judgment, were required not merely to allege such connections, but actually to prove them, at this stage of the case, Plaintiffs here need only allege their theories of causation; only at trial, or on a motion for summary judgment, will they be required to provide sufficient evidence to prove them. In the meantime, as demonstrated above, what Plaintiffs here have alleged was found by the Seventh Circuit to be sufficient, if proven, to establish causation and liability under the ATA. And of course, in adjudicating Jameel's motion to dismiss, this Court is required to accept Plaintiffs' allegations as true, *see, e.g., Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). *Boim IV* thus provides a further basis for this Court to deny Jameel's motion to dismiss.

Dated:  February 15, 2008                    Respectfully submitted,

                                      /s/ Andrea Bierstein
                                      Paul J. Hanly, Jr., Esq. (PH-5486)
                                      phanly@hanlyconroy.com
                                      Andrea Bierstein, Esq. (AB-4618)
                                      abierstein@hanlyconroy.com
                                      HANLY CONROY BIERSTEIN SHERIDAN FISHER &
                                      HAYES, LLP
                                      112 Madison Avenue, 7th Floor
                                      New York, NY 10016-7416
                                      Tel: (212) 784-6400

Ronald L. Motley, Esq. (SC Bar #4123)
rlmotley@motleyrice.com
Jodi Westbrook Flowers, Esq. (SC Bar #66300)
jflowers@motleyrice.com
Michael Elsner, Esq. (NY & VA Bar #ME-8337)
melsner@motleyrice.com
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
rhaefele@motleyrice.com
Justin B. Kaplan, Esq. (TN-022145)
jkaplan@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Tel: (843) 216-9000

Attorneys for *Burnett*, *Euro Brokers* and *World Trade Center Properties* Plaintiffs

Sean P. Carter, Esq.
SCarter1@cozen.com
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103-3508
Tel: (215) 665-2000

Attorneys for *Federal Ins.* Plaintiffs

Frank J. Rubino, Esq. (FR-6202)
fjr@browngavalas.com
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, NY 10017
Tel: (212) 983-8500

Attorneys for *NY Marine* Plaintiffs