**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____


**IN RE:  TERRORIST ATTACKS ON**                    **MDL No. 1570**
**SEPTEMBER 11, 2001**
_____

**This document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al, Case No. 03 CV 9849 (GBD)*
*Ashton, et al. v Al Qaeda Islamic Army, et al., Case No. 02 CV 6977 (GBD)*

<u>**PLAINTIFFS' OBJECTIONS TO ORDER OF**</u>
<u>**MAGISTRATE JUDGE MAAS DATED May 21, 2008**</u>

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §

636(b)(1)(A), plaintiffs in the *Burnett* and *Ashton* cases ("Plaintiffs") hereby object to the May

21, 2008 Discovery Order issued by Magistrate Judge Frank Maas (served upon all counsel via

ECF on May 22, 2008 (Dkt. # 2090, attached hereto as Exhibit # 1)), relative to certain disputes

between those Plaintiffs and defendant Saudi Binladin Group ("SBG").  For the reasons

discussed in further detail below, Judge Maas' decision denies Plaintiffs discovery as to several

areas of inquiry directly relevant to their proffered theories of personal jurisdiction, as well as the

defenses SBG has raised to those theories of jurisdiction. The denial of that relevant discovery is

not grounded in any valid and properly supported objections, and the ruling therefore represents

a departure from the prescribed analytical framework for resolving discovery disputes under the

Federal Rules of Civil Procedure.   Furthermore, the decision fails entirely to address several

areas of inquiry relative to which Plaintiffs seek discovery.  A denial of discovery as to those

areas of inquiry cannot be justified absent some analysis.

<u>**Summary of Objections**</u>

On December 28, 2007 and January 15, 2008, the plaintiffs submitted letters to the Court

addressing four discovery disputes to the Court's attention.  In those letters, the plaintiffs asked

that the Court:  (1) order SBG to answer supplemental jurisdictional discovery requests served on

SBG on November 4, 2007, (2) order SBG to re-produce witness Philip Griffin to continue his

deposition beyond the two hours previously permitted, (3) order Mr. Griffin to answer questions

raised during his deposition but which were not answered based on attorney-client and work

product objections, and (4) order SBG to respond to the plaintiffs' previous discovery requests

regarding related companies, Techmaster and Iridium.  On March 14, 2008, the Court referred

these four discovery disputes to Magistrate Judge Frank Maas for resolution.  (Docket # 2071)

On May 21, 2008, Magistrate Judge Maas issued a Discovery Order concerning the four

discovery disputes referred on March 14, 2008.  Concerning the supplemental jurisdictional

discovery, the Court granted some discovery, denied some discovery, but left many of the

discovery requests unaddressed.  The Court denied the plaintiffs' request that SBG re-produce

Mr. Griffin to continue his deposition.  The Court determined that Mr. Griffin's oral

communications with SBG's counsel were protected attorney work product.  Finally, the Court

denied plaintiffs' request for discovery from SBG regarding related companies Techmaster and

Iridium, but granted plaintiffs discovery concerning Iridium Middle East.

Plaintiffs object to the May 21, 2008 order to the extent that the Court denied or failed to

address the supplemental jurisdictional discovery requests served on SBG on November 4, 2007.

Although Plaintiffs do not object to that portion of the Discovery Order that sought to have Mr.

Griffin recalled for his deposition, Plaintiffs nonetheless object to the extent that the Court

determined that Mr. Griffin's oral communications with SBG's counsel were protected attorney

work product and reserve our right to challenge the reasoning should the issue arise again in the

context of any subsequent dispute.

**Standard of Review**

Rule 72 and Section 636(b)(1)(A) of Title 28 provide the standard for district court review of a federal magistrate judge's order.  A district court reviewing a magistrate judge's non-dispositive pretrial order, such as the discovery order under review here, may modify or set aside any part of that order if the order is clearly erroneous or contrary to the law.  *In re: Veeco Instruments, Inc. Securities Litigation*, 2007 U.S. Dist. Lexis 16922, *8-9 (S.D.N.Y. 2007) (citing Fed. R. Civ. Pro. 72(a)).  *See also Sheikhan v. Lenox Hill Hosp.*, 1999 U.S. Dist. Lexis 8770 (S.D.N.Y. 1999) (Rule 72(a) standard applied to discovery orders).

Rule 72(a) reads in relevant part:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings…. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order…. The district court to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Section 636(b)(1)(A) similarly states in relevant part:

> A judge may designate a magistrate to hear and determine any pretrial matter pending before the court….  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error.  *In re: Veeco Instruments*, 2007 U.S. Dist. Lexis 16922 at *9 (citing *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 622 (S.D.N.Y. 2001)).  An order may be deemed contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id*. (citing *Tompkins v. R.J. Reynolds Tobacco Co*., 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (holding that an order is "clearly erroneous" when the reviewing court is left with a

definite and firm conviction that a mistake has been made, and an order is "contrary to law"
when it fails to apply or misapplies relevant statutes, case law, or rules of procedure)).

**Argument**

**I.    The Court Did Not Apply Properly the Comprehensive Analytical Framework for Resolving All Discovery Disputes Prescribed by the Federal Rules of Civil Procedure**

The Federal Rules of Civil Procedure provide a comprehensive analytical framework for
resolving discovery disputes.  Under the Rules, a court's analysis of any discovery contest must
begin with Rule 26(b)(1), which as a threshold matter provides that litigants are *entitled* to obtain
discovery regarding any matter "*relevant to the claim or defense of any party*." Fed. R.Civ. P.
26(b) (emphasis supplied).  "This obviously broad rule is liberally construed." *Deval Steel
Products Div. of Francosteel Corp. v . M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991),
*citing  Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule
26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could lead
to other matter that could bear on, any issue that is or may be in the case").  In order to conclude
that requested discovery is legally irrelevant under Rule 26(b)(1), a judge must find that the
requested discovery could not, as a matter of law, lead to the discovery of admissible evidence.
In other words, the judge must find that "even assuming the discovery yields the information
Plaintiff suggests, that information could not be admitted at trial under Fed. R. Evid. 401 because
– as a matter of law - a jury may not draw from that information the inference that Plaintiff seeks
to elicit." *Pisacane v. Enichem Am.*, 1996 U.S. Dist. LEXIS 9755, *8 (S.D. N.Y. 1996).

In determining whether requested discovery is relevant under Rule 26(b)(1), it is not the
Court's function to assess the credibility of plaintiffs' theories, or to weigh the evidence
presently available to the Court, as such determinations are the exclusive province of the ultimate

finder of fact.  Indeed, the denial of discovery based on an assessment of the credibility of a

proffered theory, or resolution of some factual dispute, may represent an unconstitutional

deprivation of a plaintiff's right to a jury trial.

Rule 26(b)(1) establishes the appropriate scope of discovery not only as to the merits, but

as to jurisdiction as well.  *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d. Cir. 1994); *Edmond*

*v. United States Postal Serv. Gen. Counsel*, 292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C.

Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be

freely permitted, and this is no less true when discovery is directed to personal jurisdiction.").

Thus, the starting point for a court's analysis of a jurisdictional discovery dispute is simply

whether the discovery sought bears on, or reasonably could lead to other matter that could bear

on, the plaintiffs' theories of jurisdiction, or any defenses raised by the defendant as to those

theories of jurisdiction.  Where jurisdictional facts are in dispute, a refusal to grant discovery as

to matters bearing on the factual dispute constitutes an abuse of discretion.  *Filus v. Lot Polish*

*Airlines*, 907 F.2d 1328, 1332, (2d. Cir. 1990).  Consistent with the foregoing standards, a

decision granting plaintiff's leave to conduct "limited jurisdictional discovery" is only properly

read to authorize discovery as to all issues relevant to the question of jurisdiction. See *Intuit Inc.*

*v. H & R Block Eastern Enterprises, Inc*., 2006 WL 2504936 (N.D.Cal. 2006) (the term "limited

jurisdictional discovery" was not intended to restrict discovery to only certain alleged

jurisdictional theories but was intended to limit discovery to the subject of personal jurisdiction).

Under the Rules, the party seeking to avoid discovery, here SBG, has the burden of

showing the Court specifically how, despite the broad and liberal construction afforded the

federal discovery rules, each discovery request is not relevant, or how each request is overly

broad, burdensome or oppressive.  *Compagnie Francaise D'Assurance Pour Le Commerce*

*Exterieur v. Philips Petroleum Co*., 105 F.R.D. 16, 42 (S.D. N.Y. 1984).  In order to satisfy that burden, the resisting party must do more than "simply intone the familiar litany that the discovery is [irrelevant], burdensome, oppressive or overly broad."  *Arias-Zeballos v. Tan*, 2007 U.S. Dist. LEXIS 40245, *4 (S.D. N.Y. 2007).  Rather, the defendant must clarify and substantiate its objections by explaining, through competent evidence submitted to the court, why the discovery is not relevant, or should be denied based on the alleged burden or oppressiveness of responding.  *Id*. at *4-8.  Because arguments of counsel within a Memorandum of Law do not constitute evidence, such arguments are insufficient as a matter of law to sustain the objecting party's burden, and should not be considered at all in the absence of a supporting affidavit.  *Id*. at *7.  ("Although the Memorandum of Law the defendants' submitted in opposition to the Plaintiffs' Motion to Compel attempts to explain the defendant's objections to Interrogatory Nos. 2-5, 8 and 9, a Memorandum of Law is not evidence.  Therefore, it cannot be relied upon solely by the defendant to support the allegation she had made in objecting to answer the plaintiffs' interrogatories").  Similarly, the arguments and factual assertions of SBG's counsel before the Court during oral argument do not constitute legally sufficient evidence.

As outlined above, the Federal Rules of Civil Procedure establish a simple and comprehensive framework for resolving all discovery disputes in this matter, to include disputes relating to jurisdictional discovery.  *William B. Tabler Architects v. Nordheimer*, 1978 U.S. Dist. Lexis 19145, *14-15 (S.D.N.Y. 1978) (rejecting defendants' petition to limit the scope of jurisdictional discovery where the facts at issue were exclusively within the knowledge of the defendants and "plaintiff should be afforded an opportunity to fully explore those areas as well.").   In keeping with the requirements of the Rules, the Court must begin by assessing whether the requested discovery is relevant to any claim or defense raised by the parties,

pursuant to the liberal construction of the concept of relevance established by the Rules.  Where

the discovery sought bears on a claim or defense, or could lead to matters bearing on a claim or

defense, there is a strong presumption that it should be afforded.  In accordance with the mandate

of Rule 26(b)(2)(C), such relevant discovery should be denied only upon a specific finding,

based on an affidavit or other evidentiary proffer by the party seeking to avoid the discovery,

that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, *considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action,  and the importance of the discovery in resolving the issues*.

Fed. R. Civ. P. 26(b)(2)(C).

Faithful application of the prescribed analytical framework for resolving discovery

disputes is particularly critical in a case of this nature, not only to protect the rights of the parties,

but also to conserve judicial resources and promote the efficient management of the litigation.

For the reasons set forth below, Plaintiffs respectfully submit that Judge Maas' May 21,

2008 Order departed in material respects from the prescribed approach for resolving discovery

disputes outlined above.  As a preliminary matter, on many important areas of inquiry, the

decision is devoid of any analysis of the "relevance" of the requested discovery to Plaintiffs'

jurisdictional theories, or SBG's factual and legal defenses to those theories, the required starting

point for resolving the disputes at issue.  In lieu of the required analysis of the relevance of the

discovery, the Court improperly substitutes its judgment as to the credibility of the arguments

raised by the parties as to disputed jurisdictional facts and adopts SBG's and its counsels factual representations before discovery is completed, thus overstepping its role in the present context. Moreover, the decision contains no analysis which would justify the denial of relevant discovery on other grounds, such as the alleged burden or oppressiveness of responding.  The absence of any discussion on those issues is hardly surprising, as SBG has never made any competent proffer to suggest that it would incur any significant burden in responding to the discovery at issue.

## II.    Plaintiffs' Have Asserted General And Specific Theories Of Jurisdiction And Discovery Is Warranted As To All Theories

Consistent with the plain language of Rule 26(b) the determination as to whether requested discovery is "relevant" within the liberal meaning of the Federal Rules must be made through reference to the nature of the "claims and defenses" at issue.  As the present dispute arises in the context of jurisdictional discovery, the pertinent inquiry in the present dispute is whether any of the information or documentation sought through the requested discovery "bears on, or ...reasonably could lead to other matters that could bear on" Plaintiffs' theories of jurisdiction as to SBG, or any of the factual and legal defenses SBG has raised in relation to those theories of jurisdiction.  Accordingly, a brief overview of Plaintiffs' theories of jurisdiction, and SBG's defenses to those theories of jurisdiction, is warranted to provide necessary context for the present analysis.

Plaintiffs have asserted jurisdiction over SBG premised on both general and specific jurisdiction theories.  General jurisdiction is premised on the totality of SBG's various contacts with the United States.  Specific jurisdiction is premised separately on conspiracy allegations as well as on SBG's conduct directed at the United States by providing material support to Osama bin Laden ("OBL") and the al Qaeda network knowing that the United State was the primary

target of their terrorist activities.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d

765 (S.D.N.Y. 2005), *citing Burger King v. Rudzewicz*, 471 U.S. 462, 472, 479 (1985)

(jurisdiction is appropriate if defendant "purposefully directed his activities at residents of the

forum and the litigation results from alleged injuries that arise out of or related to those

activities" and finding minimum contacts existed since dispute arose from a contract with

substantial contacts with the forum); *see Calder v. Jones*, 465 U.S. 783 (1984) (finding personal

jurisdiction appropriate over non-resident defendants who "expressly aimed" intentionally

tortious conduct at residents of forum state); *Daventree Ltd. V. Republic of Azerbaijan*, 349 F.

Supp.2d 736, 762-63 (S.D.N.Y. 2004) (exercise of personal jurisdiction is appropriate if

defendants "purposefully directed their activities at residents of the forum, and the litigation

results from alleged injuries that arise out of or related to those activities").

　　　As mentioned above, the "conspiracy" and "purposeful direction" theories of personal

jurisdiction advanced by Plaintiffs are distinct legal theories, governed by unique standards.

However, at the heart of both theories is Plaintiffs' basic assertion that SBG and representatives

of SBG maintained a continuing and supportive relationship with OBL and his representatives

and affiliates, subsequent to the point in time when SBG and its officers were aware of bin

Laden's terrorist ambitions.  For its part, SBG acknowledges that it was aware of OBL's terrorist

aspirations no later than 1993, and has asserted as a factual defense to Plaintiffs' specific

jurisdiction theories that it undertook comprehensive efforts to disassociate itself from OBL

when it became aware of his extremist agenda.  Plaintiffs in turn argue that SBG has

fundamentally misrepresented the character of its relationship with OBL and his representatives

during periods after SBG acknowledges that it was aware of bin Laden's terrorist plans, and that

SBG's self-serving representations regarding the steps undertaken to allegedly disassociate OBL from the corporation are factually inaccurate.

For the reasons set forth below, the discovery denied by the Court's May 21, 2008 Order is directly relevant to the jurisdictional claims and defenses outlined above, and could be denied only upon competent evidentiary showing by SBG demonstrating that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). As to the discovery at issue, SBG made absolutely no effort to satisfy that burden, and the discovery therefore must be permitted.

### III. Judge Maas' Denial of Plaintiffs' Discovery Requests for Information and Documentation Pertaining to Visits by Representatives of SBG to Osama bin Laden in the Sudan was Improper and not Grounded Upon Application of the Governing Discovery Standards.

In his May 21, 2008 Order, Judge Maas denied Plaintiffs' discovery requests for information and documentation concerning several trips undertaken by representatives of SBG to visit OBL personally in the Sudan. These discovery requests were prompted by statements contained in SBG business records, released only after entry of a Court Order compelling production of relevant materials, that representatives of SBG visited OBL on several occasions. Several of those trips occurred subsequent to the date on which the corporation acknowledges that it was aware of OBL's extremist agenda, and after it alleges that it had severed all ties with bin Laden. In support of its decision to deny Plaintiffs discovery as to those visits, the Court embraced as an absolute truth a self-serving hearsay statement within the documents that the representatives of the company took those trips to "disassociate themselves from him and his conduct, and to sever their relationships with him completely." On that basis, the Court reasoned

that "such trips do not support the Plaintiffs' theory that further discovery is warranted because they show that SBG materially supported Osama bin Laden's terrorist activities," and denied Plaintiffs any opportunity to obtain discovery as to the direct contacts between representatives of SBG and OBL.

In reaching its decision denying Plaintiffs any discovery as to the trips undertaken by SBG representatives to the Sudan to meet with OBL, Plaintiffs respectfully submit that the Court departed from the mandated analytical framework governing discovery disputes, and improperly resolved an ultimate issue of fact. In this regard, Plaintiffs note that the decision is devoid of any analysis as to whether the direct contacts between SBG representatives and OBL are relevant to Plaintiffs' jurisdictional theories or SBG's defenses to those theories. Had the Court properly undertaken that analysis, it would have been compelled to conclude that such contacts are directly relevant to the jurisdictional dispute between Plaintiffs and SBG. As outlined in greater detail above, the disputed issues at the heart of Plaintiffs' specific jurisdictional theories and SBG's defense to those theories are whether SBG maintained a supportive relationship with OBL after it became aware of his terrorist intentions, and whether SBG truly severed all ties to OBL in 1993. It is difficult to imagine any area of inquiry more directly probative of those questions than the timing and subject matter of direct contacts between representatives of SBG and OBL, after the date SBG acknowledges that it was aware of OBL's evil intentions and alleges that it severed all ties with him. As SBG's direct contacts with OBL are undeniably relevant to the claims and defenses at issue within the liberal discovery standards of the Federal Rules, and SBG presented no affidavit or evidence to support a denial of the requested discovery on that issue on other grounds, there exists no competent grounds in the record to deny Plaintiffs discovery of those contacts.

Instead of focusing its inquiry on the potential relevance of the continuing direct contacts between SBG and OBL, the Court incorrectly fixated on whether Plaintiffs had proven actual inconsistencies between the single document produced by SBG relating to the visits at issue and SBG's prior representations during this litigation, and improperly resolved a central factual dispute on the basis of an incomplete record.  This approach is flawed in several respects.  To begin with, Plaintiffs are entitled to discovery as to any issues relevant to the claims and defenses at issue, and are under no obligation to demonstrate "inconsistencies" by the defendant relative to a relevant area of inquiry in order to obtain discovery.[1]  Moreover, it was improper for the Court to adopt as grounds for denying Plaintiffs' discovery the self-serving statement in one of SBG's corporate documents, itself incompetent hearsay, that SBG representatives undertook the visits to "disassociate themselves from him and his conduct, and to sever their relationships with him completely."  Indeed, the true purpose of those visits is a vigorously disputed factual issue, which can only be resolved by the responsible fact finder at the conclusion of full discovery.

Beyond the fact that the hearsay statement concerning the alleged purpose of SBG's visits with OBL in Sudan is legally incompetent to deny Plaintiffs discovery as to those contacts, a more careful reading of that document, informed by other record evidence, reveals that it is susceptible to alternative interpretations, which directly support Plaintiffs' theories and call out for the need for the requested discovery.  For example, on its face the document reveals that SBG representatives visited OBL after 1993, and certainly as late as 1996, for the purpose of severing "their relationship with him completely."   However, if SBG had in fact completely severed ties

---

[1] The improper focus of its inquiry led the Court to concentrate on the fact that the SBG document relating to the visits did not conclusively establish that Bakr bin Laden traveled to Sudan during the then *most recent* visits.  Of course, the document does not foreclose that possibility, a fact which implicitly underscores the need for further discovery.  More fundamentally, Plaintiffs' discovery requests inquire as to *any* visits with OBL by SBG officials, not merely as to Bakr's visits.  For the reasons discussed above, any visit by an SBG representative is relevant to the jurisdictional claims and defenses at issue, and there is no question that such visits occurred after the date on which SBG allegedly severed ties with OBL.

with OBL in 1993, as it has argued, there would have been no reason for SBG representatives to visit OBL on several occasions over the next three years for the purpose of severing ties.  Thus, the statement at issue can fairly be interpreted to reflect the existence of a relationship between SBG and OBL after 1993.

OBL's own statements bolster this interpretation of the document, and also confirm that SBG's representations to Saudi officials regarding the visits are inherently untrustworthy. Specifically, during a 1997 interview, OBL briefly discussed the nine (9) visits by his family, stating as follows:

> They [the Saudi authorities] sent me my mother, my uncle, and my brothers in almost nine visits to Khartoum (Sudan) asking me to stop and return to Arabia to apologize to King Fahd.  I apologized to my family kindly because I know that they were driven by force to come to talk to me. This regime wants to create a problem between me and my family and in order to take some measures against them.

http://fl1.findlaw.com/news.findlaw.com/cnn/docs/binladen/binladenintvw-cnn.pdf.

Far from suggesting an antagonistic relationship with his family during the period in which the relevant visits occurred, the foregoing statement by OBL suggests that he remained on good terms with his family throughout that timeframe, implying that representatives of his family remained sympathetic to his situation and mission after 1993.  The statement also indicates that representatives of SBG were reluctant messengers acting only due to extreme pressure from Saudi authorities, a fact which both implies continuing support within SBG for OBL and demonstrates that SBG had an incentive to misrepresent the nature of its contacts with OBL to Saudi authorities.

IV.   **Judge Maas' Denial Of Plaintiffs' Discovery Requests For Information And Documentation Pertaining To The Steps And Timing Of SBG's Alleged Separation From OBL Was Improper And Not Grounded Upon Application Of The Governing Discovery Standards.**

In his May 21, 2008 Order, Judge Maas denied Plaintiffs' discovery requests for information and documentation surrounding the "transfer of shares" and the "timing of the trust." In particular, the Court denied discovery related to OBL's shares being transferred to OBL's brother, Ghaleb bin Laden ("Ghaleb"), as opposed to being distributed among the rest of the SBG shareholders, as SBG represented to the Saudi authorities. The Court also denied discovery regarding the timing of when the value of OBL's shares of SBG was placed into a trust.

In reaching its decision denying Plaintiffs discovery as to the transfer of shares to Ghaleb and "timing of the trust," Plaintiffs again submit that the Court departed from the mandatory analytical framework governing discovery disputes, and improperly resolved ultimate issues of fact. Just as the decision is devoid of analysis as to whether SBG contacts with OBL are relevant to Plaintiffs' jurisdictional theories or SBG's defenses, the decision is likewise devoid of analysis regarding the importance of SBG opting to assign the terrorist leader's shares to his close brother, perhaps facilitating support to OBL through his brother. Nor does the decision contain analysis regarding the importance of the timing of SBG's affirmative steps to segregate OBL's shares.    Although the Court recognized various discrepancies, once again it ignored huge gaps in the facts and stretched SBG's position to read the circumstances in harmony rather than permitting discovery to permit a trier of fact consider the evidence. One gaping disconnect that the Court completely overlooked is the six-year interval between the May 2, 1994 government approval and the April 2000 deposit. Rather than asking why further approval was necessary after the May 1994 approval, the Court terms the May 1994 approval "preliminary," accepting that further approval was needed. The Court's Order denies discovery as to why there was a six-

year delay between the approval and the deposit.  Once again, SBG produced no evidence to support a denial of the requested discovery, and there exist no grounds in the record for denying the requested discovery.

Just as in the previous discussion, instead of focusing its inquiry on the relevance of the facts and circumstances surrounding the steps and timing SBG employed to allegedly disassociate itself from OBL, the Court again premised its denial of discovery on its finding that Plaintiffs had not adequately set out discrepancies in SBG's documents.

One discrepancy the Court addressed is the discrepancy between whether OBL's SBG shares were transferred in 1993 or 1994.  Though the distinction may have seemed slight to Magistrate Judge Maas, the distinction became particularly important in the jurisdictional dispute when SBG submitted an affidavit swearing to the truth of such statements.  Clearly Plaintiffs are entitled to discovery to test the veracity of the very affidavit that SBG relied upon in support of its previous jurisdictional motion.

Another discrepancy the Court addressed is the discrepancy between statements indicating that OBL's shares were transferred to the "rest of the shareholders" and other statements indicating that OBL's shares were actually assigned to OBL's brother, Ghaleb, who has been reported to be sympathetic to OBL.  Instead of requiring discovery that may, for example, yield information why SBG agreed to transfer OBL's shares to one of the terror-leader's closest brothers, the Court departed from the analytical framework, never pressing SBG for evidence why discovery should not be had, and denied discovery.

In support of his decision to deny discovery concerning the timing of the alleged creation of a trust, Judge Maas fixes only on several inconsistencies in SBG's consecutive statements, but then once again adopts SBG's attempts to harmonize the statements.  In his attempt to

harmonize, however, Magistrate Judge Maas ignores a number of key issues.  First, although Magistrate Judge Maas recognizes that SBG falsely represented that OBL's shares were placed into a trust in 1993 and then later falsely represented that the money was placed into a trust in 1994, he ignores that SBG's false representations were contained in sworn statements submitted to this Court.  Second, the Court's harmonizing read of relatively modest body of disclosed information, accepts wholesale SBG's own account from its interrogatories.  But without requiring SBG to produce evidence why the discovery should not be permitted, the discovery order denies the Plaintiffs any opportunity to address gaps such as the six-year gap from the time the Saudi government allegedly approved the "trust" and the date when the money was placed into the NCB account.

The Court's error is, perhaps, most completely evident, where the Court finds that the events surrounding the creation of the "trust" is "fully supported by the relevant documents." Inasmuch as all of the relevant documents and information have not necessarily been discovered and various factual issues remain in dispute regarding the account, certainly all of the relevant documents and information have not been discovered.  One example of an as yet unaddressed question is whether, in fact, the account that has been termed repeatedly as a trust, is indeed a trust.  Though it has been termed that, no document has clearly identified either the creation of a trust or who the beneficiary of that trust is – a question that burns an answer.  Another example of an as yet unaddressed question is how the "trust" came about.  Although SBG has been ordered to produce documents concerning its submission to a Shariah court for approval of such a transaction, nothing of that kind has been produced.

If the court had applied the proper analytical framework for addressing discovery disputes, the first inquiry would have been easy, because the Court's previous discovery rulings

indicate that discovery into SBG's alleged separation from OBL is relevant.  (*See, e.g*., Docket # 1989, Memo Endorsed agreeing that SBG was to produce all documents concerning its allege separation from OBL.)  Clearly, where one of the jurisdictional issues in dispute concerns the timing and degree of SBG's separation from OBL, discovery of the nature sought here is warranted.  Here, the Court denied it without ever requiring SBG to produce evidence as to why the discovery should not be permitted.

Inasmuch as the Court denied discovery regarding facts and circumstances concerning the alleged separation from OBL, including for example when and to whom transfers were made, whether and when a trust was created, and ultimately when the disassociation (if any) ever occurred, Plaintiffs respectfully submit that the Court departed from the mandated analytical framework, and improperly resolved ultimate issues of fact.

**V.      The Court Should Have Granted Discovery As To Numerous Discovery Requests Neither Analyzed Nor Addressed In Its Decision**

The May 21, 2008 Order characterization of the plaintiffs' supplemental jurisdictional discovery requests as numbering ninety-five, though strictly correct, does not do justice to the fact that the requests included document requests with companion interrogatories.

Although the May 21, 2008 Order purported to address the plaintiffs' supplemental jurisdictional discovery requests, the Court left a number of the requests unaddressed.  Based on the characterizations of the discovery granted and denied, the plaintiffs understand that the Order granted the discovery sought by the following requests (except to the extent that they call for information regarding Mohammed Binladin Corporation (MBC)): Document Requests 1, 2, 6, 8, 9, 10, 11, 17, 38, 40, and 42 and Interrogatories 1, 4, 5, 6, 7, 8, 14, 29, and 31.  Similarly, it appears that the order denied the discovery sought in Document Requests 3, 4, 12, 25, 28, 35, 44,

45, and 47 and Interrogatories 2, 9, 26, 21, 26, 35, 36, and 38, as well as to the extent that any request calls for information regarding MBC.  But it would also appear that the Order does not address the remaining requests, namely Document Requests 5, 7, 13, 14, 15, 16, 18, 19, 20, 22, 23, 24, 26, 27, 29, 30, 31, 32, 33, 34, 36, 37, 39, 41, 43, 46, 48, 49, 50, 51, 52, and 53, and Interrogatories 3, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 30, 32, 33, 34, 37, 39, 40, 41, and 42.

To the extent the Order fails to address Plaintiffs' discovery requests, it provides no competent grounds for denying the discovery sought through those requests, and must be set aside.  Where a discovery dispute is referred to a Magistrate Judge, Rule 72(a) provides the parties to the dispute with an absolute right to seek review of the decision by the District Judge. The district Judge must "modify or set aside" any aspect of the Order that is clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  In the absence of an analysis setting forth the Magistrate Judge's grounds for denying discovery, it is impossible for the District Judge to ascertain whether the Magistrate Judge applied the law correctly or committed error in resolving the dispute, thus rendering the review provided by Rule 72(a) impossible.  In such circumstances, the Order must be set aside.  See Piscane, 1996 U.S. Dist. LEXIS 9755 at * 17 (setting aside Magistrate's Order where it provided insufficient detail to allow District Judge to conduct the review contemplated by rule 72(a)).[2]

### Conclusion

For the reasons expressed herein, Plaintiffs respectfully request that the District Court set aside the Order of Magistrate Judge Frank Maas dated May 21, 2008 insofar as the order denied Plaintiffs' Discovery Requests for information and documentation regarding SBG

---

[2] As a corollary, because the Magistrate Judge failed to present any reasoning in support of the denial of certain of Plaintiffs' discovery requests, it is impossible for Plaintiffs to present substantive "objections" to the denial of those requests.  However, Plaintiffs stand ready

representatives' visits to OBL in the Sudan and regarding the steps and timing of SBG's alleged

separation from OBL**,** and that the Court grant full and complete discovery regarding such issues.

Plaintiffs further request that the District Court set aside the Order to the extent that it prohibits

Plaintiffs discovery requests which were not addressed or analyzed in the Court's decision and

grant full and complete discovery sought in those requests.


Dated: June 8, 2008                    Respectfully submitted,
                                       MOTLEY RICE LLC


                        By:  _/s/_Michael Elsner_____
                             Ronald L. Motley, Esq. (SC Bar #4123)
                             Jodi Westbrook Flowers, Esq. (SC Bar #66300)
                             Donald A. Migliori, Esq. (RI Bar #4936)
                             Michael Elsner, Esq. (NY & VA Bar #ME-8337)
                             Robert T. Haefele, Esq. (NJ-58293; PA-
                                 57937 ; SC-75266)
                             28 Bridgeside Boulevard
                             P.O. Box 1792
                             Mount Pleasant, South Carolina 29465
                             Telephone:  (843) 216-9000
                             Plaintiffs' Counsel in *Burnett*


                        KREINDLER & KREINDLER


                        By:  _/s/ Andrew J Maloney III_____
                             Andrew J. Maloney III (AM8684)
                             100 Park Avenue
                             New York, NY  10017-5590
                             Phone:  (212) 687-8181
                             Plaintiffs' Counsel in *Ashton*