**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-------------------------------------------------------x**

| | |
|---|---|
| **IN RE TERRORIST ATTACKS ON** | **Civil Action No.** |
| **SEPTEMBER 11, 2001** | **03 MDL 1570 (GBD)(FM)** |

**-------------------------------------------------------x**

**This document relates to:**

> *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.,* **03 CV 9849 (GBD)(FM)**
> *Ashton, et al. v. Al Qaeda Islamic Army, et al.,* **02 CV 6977 (GBD)(FM)**

<u>**DEFENDANT SAUDI BINLADIN GROUP'S**</u>
<u>**RESPONSE TO PLAINTIFFS' OBJECTIONS TO ORDER OF**</u>
<u>**MAGISTRATE JUDGE MAAS DATED MAY 21, 2008**</u>

<u>**INTRODUCTION**</u>

The Court should reject Plaintiffs' objections (Dkt. # 2093) to yet another order of Judge

Maas concerning the appropriate scope of the limited jurisdictional discovery Judge Casey

ordered from defendant Saudi Binladin Group ("SBG"). While their previous objection to a

prior discovery order was pending last autumn (rejected by this Court on December 20, 2007),

Plaintiffs served 95 new document requests and interrogatories on SBG, many of which were on

topics that had already been rejected by Judge Maas and some of which were the subject of the

then-pending Rule 72 proceeding. With the benefit of extensive briefing and a two-hour hearing,

Judge Maas rejected Plaintiffs' additional requests, with very limited exceptions, in a detailed,

18-page order dated May 21, 2008. ("Order") (Dkt. # 2090). As in the case of their first

challenge – which this Court rejected on the ground that Judge Maas's order granting "extensive

discovery" to Plaintiffs "was neither clearly erroneous nor contrary to law," (Order, Dec. 20,

2007, Dkt. # 2058) – Plaintiffs have not met and cannot meet the heavy burden of showing that

Judge Maas's Order constituted an abuse of discretion under Fed. R. Civ. P. 72. As explained

below, Plaintiffs' attempt to construe Rule 26 as eviscerating Judge Maas's discretion to limit

discovery is fundamentally wrong.  Rule 26 indisputably gives Judge Maas, acting under this Court's referral, broad discretion to decide discovery disputes, tempered by a special obligation to exercise vigilance to protect foreign litigants from abusive jurisdictional discovery.  Judge Maas properly exercised that discretion to reject Plaintiffs' substantial additional requests, and his 18-page Order is fully supported by the facts and the law.

It has been clear for more than a year now that Plaintiffs are desperate to keep the discovery process open because they know that they have no basis to challenge SBG's renewed motion to dismiss and therefore seek to prevent its filing.  Moreover, Plaintiffs hope to avoid having to respond to discovery demands from SBG, which seek to determine whether Plaintiffs have any good faith evidentiary basis for the allegations – in particular, the specific-jurisdiction allegations – they have asserted as justification for the exercise of jurisdiction over SBG. Because Judge Maas has deferred SBG's discovery until the conclusion of Plaintiffs' discovery from SBG, Plaintiffs have gone to extraordinary lengths to ensure that their discovery never ends.  Plaintiffs' filing of plainly meritless objections to Judge Maas's May 21, 2008 Order is but another example of these dilatory efforts.  For the reasons set out below, the Court should deny Plaintiffs' application to vacate Judge Maas's Order.

**BACKGROUND**

A.    ***Status of Jurisdictional Discovery as to SBG***

After three years of discovery, the last 18 months of which were supervised by Judge Maas, Plaintiffs have been given ample opportunity to substantiate any bases for jurisdiction over SBG.[1]  In January 2005, Judge Casey permitted "limited" jurisdictional discovery "to determine if SBG purposefully directed its activities at the United States."  *In re Terrorist*

---

[1] In the past three years of jurisdictional discovery, Plaintiffs have submitted eleven letters to the Court regarding discovery issues, and the Court has held four conferences and issued seven substantive orders and endorsed letters.

*Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 836, 822 (S.D.N.Y. 2005) ("*Terrorist Attacks I*").  Judge Casey noted that jurisdictional discovery would proceed only where "a plaintiff has identified a genuine issue of jurisdictional fact."  *Id.* at 812 (quoting *Daventree, Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004)); *see also In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("*Terrorist Attacks II*") (Casey, J.) (denying jurisdictional discovery as to Princes Salman and Naif because "[p]laintiffs have not presented a genuine issue of jurisdictional fact").

Judge Casey identified only a handful of jurisdictional allegations that warranted "some discovery," *id.* at 822, all of which were fully addressed long ago.[2]  Notwithstanding the narrow scope of the discovery ordered by Judge Casey, Judge Maas has allowed Plaintiffs to conduct discovery on numerous additional factual theories not alleged in the Amended Complaints or any other pleadings.[3]  These additional theories frequently have been raised by Plaintiffs' counsel for the first time at discovery conferences, so that SBG is deprived of any meaningful opportunity to respond on the merits.  Throughout, Plaintiffs have insisted that they have no obligation to disclose the basis for, much less submit any evidence to support, any of their ever-evolving and speculative factual theories,[4] none of which rises to the level of a "well-pleaded factual allegation[] in the complaint."[5]  Despite this broad-ranging discovery, not a shred of evidence

---

[2]  Judge Casey identified five topics justifying jurisdictional discovery: (1) SBG's alleged "construction support to Osama bin Laden" in the Sudan; (2) SBG's connection to Mohammad Jamal Khalifa; (3) SBG's alleged introduction of Yassin al-Kadi to a U.S. company; (4) whether OBL's name remains on SBG's corporate records; and (5) "SBG's presence in Maryland." *Terrorist Attacks I*, 349 F. Supp. 2d at 821-22.  SBG has provided discovery responses as to each of these topics, among others.

[3]  That additional discovery included two depositions, one of which was conducted before the Court. *See* Jan. 23, 2007 Order (Dkt. # 1941); July 6, 2007 Order (Dkt. # 1985); July 26, 2007 Endorsed Letters (Dkt. # 1988 & # 1989); Griffin Dep. Tr., Nov. 15, 2007; Rihani Dep. Tr., Apr. 22, 2008 (before Maas, J.).

[4]  *See, e.g.*, Plaintiffs' Oct. 27, 2006 Letter at 1; Dec. 13, 2006 Hr'g Tr. at 3:21-6:11.

[5]  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The allegation that SBG provided material support to OBL's terrorist activities is not a factual allegation, but merely a legal conclusion that cribs the language of the statutory claim.  A plaintiff cannot premise personal jurisdiction – or a claim for relief – on a "conclusory statement [that] is but a restatement, with slight changes, of the legal standard for determining" the issue at hand, and which

has been uncovered either (1) suggesting under a general-jurisdiction theory that SBG was "doing business" in the United States; or (2) substantiating Plaintiffs' specific-jurisdiction theory that SBG supported terrorist activities directed against the United States by Osama Bin Laden ("OBL").

On November 7, 2007, Plaintiffs served the 95 additional document requests and interrogatories that are the subject of the current dispute.  SBG objected to the abusive discovery requests in their entirety on the grounds, *inter alia*, that Plaintiffs' demands violated prior discovery orders, sought information on topics that the Court had already foreclosed, sought information that was irrelevant and/or could not be expected to be within SBG's possession, custody or control, were untimely, and were interposed for the improper purpose of delaying the resolution of SBG's jurisdictional defenses.  Plaintiffs in turn sought an order requiring SBG to respond to all of their new discovery demands and, in addition, sought to re-open the deposition of Philip Griffin, the 76-year-old former officer of SBG's defunct U.S. subsidiary, who had testified previously pursuant to Judge Maas's order.  After an exchange of two sets of letter briefs totaling nearly 50 single-spaced pages, this Court referred these disputes to Judge Maas in an Order issued March 14, 2008.  (Dkt. # 2071).  Judge Maas held a hearing to consider the parties' arguments on April 11, 2008, and on May 21 issued the 18-page Order that is the subject of Plaintiffs' Objections.

---

(continued…)

"states no facts supporting that conclusion and does not constitute a prima facie showing."  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998); *accord Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1965 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing *Papasan*, 478 U.S. at 286).  As noted, discovery was long ago completed on the only specific facts alleged in the Complaint which Judge Casey found to justify jurisdictional discovery.

**B.      Judge Maas's May 21, 2008 Order**

After reviewing Plaintiffs' requests for "substantial additional discovery," Judge Maas effectively quashed the new discovery demands in their entirety, but ordered SBG to provide supplemental responses on two topics, described further below.  In so doing, Judge Maas found that, by issuing the new discovery demands on topics he had already addressed, Plaintiffs were "simply ignoring [his] prior orders," Order at 5, one of which this Court had specifically upheld.[6] He further concluded that the alleged "inconsistencies" in SBG's discovery responses, upon which Plaintiffs' additional discovery requests were supposedly grounded, did not warrant additional jurisdictional discovery.  Order at 4-6.  Instead, Judge Maas found these purported inconsistencies to be "innocuous," "lack[ing] a solid foundation," or "of no jurisdictional significance whatsoever."  Order at 5-6.  Plaintiffs' recitation of purported inconsistencies, Judge Maas noted, "does not mean that the plaintiffs should be granted a continuing license to engage in open-ended jurisdictional discovery."  Order at 4.

Judge Maas also considered and rejected Plaintiffs' arguments concerning additional deposition time with Mr. Griffin on the ground that Plaintiffs had not objected to his earlier order limiting the duration of Mr. Griffin's deposition and "have cited nothing in Mr. Griffin's testimony that leads me to conclude that my initial fear that his deposition would prove fruitless was wrong."  Order at 11 (footnote omitted).  In addition, Judge Maas rejected Plaintiffs' request for additional time to depose Mr. Griffin as to his communications with counsel, noting that such communications "clearly are protected by the work-product doctrine."  Order at 13.  Judge Maas also denied Plaintiffs' requests for discovery regarding two other companies that were covered

---

[6] Judge Maas noted, for example, that despite his July 26, 2007 Order (Dkt. # 1989) setting the parameters for the required production related to the trust account holding the value of OBL's former shares, and this Court's affirmation of that Order (Dkt. # 2058), "plaintiffs have now interposed discovery requests which again seek substantially the same information."  Order at 5 n.1.

by his prior orders, Techmaster and Iridium.  Plaintiffs do not challenge Judge Maas's holdings on these issues.[7]

While denying Plaintiffs' request that SBG respond to Plaintiffs' 95 new discovery requests, Judge Maas did order SBG to respond to specific follow-up questions crafted by the Court relating to two topics:   First, Judge Maas ordered that SBG produce any documents in its possession, custody, or control for the period 1993-2000 related to "[t]he receipt and subsequent disposition of any dividends, distributions, or similar payments arising out of the custody, control, or ownership of" OBL's former shares, "[a]ny transfer, assignment, or pledge" of the former OBL shares, "as well as any income derived thereby," and "any increase in the value" of the former OBL shares.  Order at 10.  Second, Judge Maas ordered that SBG produce documents "sufficient to" answer certain specific questions regarding Iridium Middle East Corporation ("IME"), a non-U.S. entity in which SBG had an indirect non-controlling interest.[8]  Order at 18. Pursuant to Judge Maas's Order, SBG provided Plaintiffs with written responses and responsive documents on June 18, 2008.

---

[7] Plaintiffs purport to "object to the extent that the Court determined that Mr. Griffin's oral communications with SBG's counsel were protected attorney work product and reserve [their] right to challenge the reasoning should the issue arise again in the context of any subsequent dispute."  Objections at 2.  Plaintiffs' failure to raise the objection now, or to articulate any reason why Judge Maas's holding is in error, waives any objection.  Rule 72 specifically provides that "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).  That 10-day limit having passed, *see id.*, Judge Maas's ruling should not be disturbed.

[8] Judge Maas denied Plaintiffs discovery regarding Iridium because they knew it was an issue yet failed to raise it in response to an earlier order requiring Plaintiffs to identify any companies allegedly affiliated with SBG as to which they required further discovery.   As to IME, Judge Maas bent over backwards to give Plaintiffs the benefit of the doubt, noting that "[i]t is unclear whether the plaintiffs knew or should have known in July 2007 that SBG played some role in IME."  Order at 16-17.   In fact, the same SEC filings which put Plaintiffs on notice of SBG's interest in Iridium, LLC make clear that SBG's investment was made indirectly through IME.  Moreover, Plaintiffs initiated the discussion of IME at Philip Griffin's deposition in November 2007, thus demonstrating that they were on notice of SBG's relationship to IME and should have raised it in response to the Court's earlier order.

## ARGUMENT

### A.      Judge Maas's Order is Entitled to Significant Deference

Plaintiffs' submission fails to meet the high standard for objections to a magistrate's discovery decisions.  Both 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure allow reversal of a magistrate's orders only when they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A) (West 2008); Fed. R. Civ. P. 72(a).  A magistrate's resolution of discovery issues is entitled to "great deference," *Lowrance v. Achtyl*, 20 F.3d 529, 534 (2d Cir. 1994), and "[p]ursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes."  *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs.*, 499 F. Supp. 2d 475, 477 (S.D.N.Y. 2007) (internal quotation marks omitted). Reversal is appropriate only where the magistrate's resolution of the discovery dispute is "found to be an abuse of discretion."  *Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 189 (S.D.N.Y. 1988).  Consequently, as Plaintiffs' own citation demonstrates, "[a] party seeking to overturn a ruling under the clearly erroneous standard generally bears a 'heavy burden.'" *Sheikhan v. Lenox Hill Hosp.*, No. 98 Civ. 6468 (WHP), 1999 U.S. Dist. LEXIS 8770, at *5 (S.D.N.Y. June 11, 1999) (citation omitted) (cited by Plaintiffs' Objections at 3); *see also Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 46 (S.D.N.Y. 1980) (same); 12 Charles Alan Wright et al., Federal Practice and Procedure § 3069, at 350-51 (2d ed. 1997) ("[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

**B.      Discovery Rules Grant Substantial Discretion to Judge Maas**

Plaintiffs seek to dodge the admittedly deferential standard of review by misconstruing Rule 26 to mandate the discovery they seek.[9]  In fact, however, the Supreme Court has held that "Rule 26 vests the trial judge with *broad discretion to tailor discovery narrowly* and to dictate the sequence of discovery."  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (emphasis added).  *Accord* Fed. R. Civ. P. 26(b)(1) (providing that discovery permitted by the Rule may be "limited by court order").[10]  *See also* Manual for Complex Litigation, Fourth, § 11.4 (2004) ("The Federal Rules of Civil Procedure, along with the court's inherent power, provide ample authority for early and ongoing control of discovery in complex litigation.").  This discretion is even greater in the context of jurisdictional discovery.  The Second Circuit has embraced the common principle that "[a] 'district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'"  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  Again, the Supreme Court has cautioned that in using that discretion the court must "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."  *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 546 (1987).[11]

---

[9] In attempting to rely upon Rule 26, Plaintiffs try to have it both ways:  Here, Plaintiffs claim that the broad parameters of Rule 26 discovery apply to their discovery requests, but earlier they argued that they should not have to respond to SBG's requests because jurisdictional discovery should be a one-way street, *see* Plaintiffs' Oct. 13, 2006 Letter at 3, notwithstanding that Rule 26(d)(2)(B) establishes a default rule of reciprocal discovery. Thus, Plaintiffs construe the discovery rules so as to allow themselves boundless unilateral discovery.

[10] Plaintiffs mistakenly cite the 2007 version of the Rule, in which the quoted qualifier ("unless otherwise limited by court order") was listed separately as a preface to Rule 26(b).  The current version of the Rule integrates the qualifier into Rule 26(b)(1).  *See* Notes of Advisory Committee on 2007 Amendments for Rule 26.

[11] Further, the 2000 amendments to the Federal Rules rendered the definition of relevance under Rule 26 "narrower than it was, in some meaningful way," *Surles v. Air France*, No. 00 Civ. 5004 (RMB) (FM), 2001 U.S. Dist. LEXIS 15315, at *4 n.3 (S.D.N.Y. Sept. 27, 2001) (internal citation omitted), by requiring relevance not just to the "subject matter" of the litigation but to "any party's claim or defense."  Here, however, as Plaintiffs have sought

C.     *Jurisdictional Discovery is Appropriate Only to Resolve Disputed Questions of Jurisdictional Fact Grounded on Well-Pleaded Jurisdictional Allegations*

Judge Maas properly assessed whether the additional discovery sought addressed any remaining disputed factual issue relevant to jurisdiction.  In the context of jurisdictional discovery, relevance is confined to "genuine issue[s] of jurisdictional fact," *Terrorist Attacks I*, 349 F. Supp. 2d at 812, and discovery is permitted only as to "'facts pertinent to jurisdiction.'" *Potter*, 343 F.3d at 627 (quoting *Phoenix Consulting*, 216 F.3d at 40).  Such discovery is therefore "limited to the essentials necessary to determining the preliminary question of jurisdiction," *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002) (internal citation omitted), and is allowed "solely as to the facts that relate to establishing" jurisdiction.  *Allojet PLC v. Vantage Assocs.*, No. 04 Civ. 5223 (SAS), 2005 U.S. Dist. LEXIS 4006, at *31 (S.D.N.Y. Mar. 15, 2005); *see also* Manual for Complex Litigation, Fourth, § 11.41 (2004) ("Fundamental to controlling discovery is directing it at the material issues in the controversy.").

Plaintiffs, therefore, must cite disputed facts, not conjecture, in support of their additional discovery.  "[T]he information sought by [a party] does not become relevant merely because [the party] speculates that it might reveal useful material."  *Surles*, No. 00 Civ. 5004 (RMB) (FM), 2001 U.S. Dist. LEXIS 15315, at *5.  "Discovery requests cannot be based on pure speculation or conjecture," where a party "has not offered any objective support for [its] contention." *Tottenham v. TransWorld Gaming Corp.*, No. 00 Civ. 7697 (WK), 2002 U.S. Dist. LEXIS 11313, at *5 (S.D.N.Y. June 21, 2002); *see also Melnick v. Adelson-Melnick*, 346 F. Supp. 2d

─────────────────────

(continued…)

to expand and lengthen discovery, their allegations have receded farther and farther from the claims in the Complaint, as discussed below.

499, 503 (S.D.N.Y. 2004) ("[T]he plaintiff is obliged to come forward with evidence creating a genuine issue of fact material to the existence of personal jurisdiction.").

Nor can Plaintiffs simply call their speculation an "inference":  "[A]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist]."  *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999) (internal citation omitted (brackets in original)).  As Judge Casey put it to Plaintiffs:  "Do you maintain that anybody can just make up any sort of claims and conclusions and, therefore, you're entitled to discovery?  That isn't quite what the law is, is it?" Hr'g Tr. 79:19-22 (Oct. 12, 2004) (Dkt. # 521).

Over the past three years, SBG has fully addressed all conceivably relevant general jurisdiction issues, and has addressed all specific-jurisdiction allegations found in the Complaint, as well as many that were nowhere pled.  Jurisdictional discovery is intended to assist in substantiation of relevant jurisdictional contacts already proffered, not to permit a plaintiff to flounder about in search of a theory on which to sustain jurisdiction.  "'The mere commencement of a lawsuit, without the support of a threshold showing of jurisdictional prerequisites, should not entitle the party to use the court processes to attempt to find support for having commenced the litigation.'"  *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (quoting *Grand Bahama Petroleum Co. v. M.V. Kriti Sky*, 1978 AMC 1238, 1240-41 (S.D.N.Y. 1977), *aff'd*, 580 F.2d 1044 (2d Cir. 1978)).  Discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially

have at least a modicum of objective support." *Cleveland-Goins v. City of New York*, No. 99 Civ.

1109 (AGS), 1999 U.S. Dist. LEXIS 13255, at *6-7 (S.D.N.Y. Aug. 30, 1999).[12]

### D.   *Judge Maas Properly Exercised His Discretion*

#### 1.   *Judge Maas Properly Evaluated Plaintiffs' Requests*

Judge Maas applied these principles – relevance based upon a "genuine issue of material

fact" and the insufficiency of speculation – to his analysis of Plaintiffs' requests.  In doing so,

Judge Maas did not, as Plaintiffs argue, either "assess the credibility of plaintiff's theories" or

"weigh the evidence."[13]  Objections at 4.  Instead, Judge Maas determined that the purported

"disputes" were not actually issues subject to genuine dispute and, more importantly, that the

bulk of the purported disputes did not go to facts material to jurisdiction.[14]  Both of the issues

highlighted by Plaintiffs in their Objections – Sudan and the removal of OBL as an SBG

shareholder – demonstrate the propriety of Judge Maas's analysis:

---

[12] *See also, e.g.*, *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42-43 (S.D.N.Y. 1984) ("The detail in the complaint specifies the necessary relevance of the interrogatories.") (citation omitted).

[13] Judge Maas's conclusion that the inferences Plaintiffs seek to draw from undisputed evidence were illogical, speculative, or irrelevant is not a credibility determination.  Plaintiffs produced no competing evidence to support any of their speculative theories so the Court did not – and was not in a position to – "weigh" evidence.  To the extent that Judge Maas evaluated the facts in the case, he did so properly, for, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings . . . ." *Potter*, 343 F.3d at 626 (citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir.1999)).

[14] Plaintiffs' arguments about the sufficiency of SBG's objections before Judge Maas, Objections at 5-8, are a red herring.  SBG was required merely "to clarify and explain precisely why its objections [we]re proper," *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) (internal citations omitted).  SBG did so – to Judge Maas's satisfaction – in detailed briefing and at the April 11, 2008 discovery conference, all grounded on years of prior briefing, jurisdictional discovery provided by SBG, affidavits, and two depositions.  *See also, e.g.*, *Phillips Petroleum Co.*, 105 F.R.D. at 42 (requiring objecting party to show only "specifically how" the discovery was improper).  SBG's objections did not rely only on a "memorandum of law." Objections at 6.  Further, SBG was not obligated to make a showing under Rule 26(b)(2)(C) because "[o]nly if a matter is relevant and potentially discoverable must a court then consider whether additional Rule 26 limitations on discovery apply." *During v. City Univ. of New York*, No. 05 Civ. 6992 (RCC), 2006 U.S. Dist. LEXIS 53684, at *7 (S.D.N.Y. Aug. 1, 2006); *see also, e.g.*, *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (burden analysis required only "[w]here the discovery is relevant") (citation and brackets omitted).  Judge Maas was entitled to deny the discovery on his own based on its irrelevance, on Plaintiffs' ample opportunity to conduct jurisdictional discovery, or in his discretion.  *See, e.g.*, *The Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 & 04 Civ. 2665 (KMW) (HBP), 2008 U.S. Dist. LEXIS 16592, *43 (S.D.N.Y. Mar. 4, 2008) (holding that "[p]laintiffs' jurisdictional allegations are too vague and conclusory to warrant additional discovery," especially where "[p]laintiffs have had ample opportunity to obtain and present evidence with respect to [the defendant's] general business contacts with the United States").

**Sudan**

After uncovering no evidence to support their original allegation that SBG provided

construction or engineering support to OBL in the Sudan – the Sudan allegation on which Judge

Casey required discovery, *Terrorist Attacks I*, 349 F. Supp. 2d at 822, and which SBG addressed

long ago – Plaintiffs now speculate that certain trips by Binladin family members to Sudan in the

early 1990s might show that SBG supported OBL.[15]  Judge Maas correctly rejected Plaintiffs'

speculation as a basis for additional discovery for two reasons.  First, Judge Maas analyzed and

rejected Plaintiffs' claim that there was an inconsistency between a statement in Bakr Binladin's

affidavit that he had not seen OBL since 1992 (Plaintiffs' Dec. 28 Letter at 4-5) and a document

produced by SBG dated January 7, 1996, which stated: "Bakr Bin Laden and some of his

brothers visited Sudan several times.  Most recently, several brothers traveled in the company of

their Uncle Abdulla bin Laden and [OBL's] mother to meet [OBL]."  As Judge Maas properly

noted, "there is no indication that Bakr was one of 'several brothers' who recently traveled to

meet with OBL."  Order at 6.  Second, Judge Maas observed that the document cited by

Plaintiffs did not suggest that whichever "brothers" went to Sudan did so to support OBL, but on

the contrary that they did so "to disassociate themselves from him and his conduct, and to sever

their relationships with him completely."  *Id.*  Moreover, that contemporary statement, the

authenticity of which Plaintiffs do not dispute, is consistent with OBL's own statement to a

reporter in 1997, in which he explained that the family members who visited him "ask[ed him] to

stop and return to Arabia to apologize to King Fahd."  Transcript of Interview, CNN

(Mar. 1997).[16]  Plaintiffs quoted from this interview in their Complaint, *Ashton* 6AC ¶ 402;

---

[15] Although Plaintiffs pleaded such isolated contacts in their Complaint, Judge Casey did not consider them worthy of jurisdictional discovery.

[16] *Available at* http://news.findlaw.com/hdocs/docs/binladen/binladenintvw-cnn.pdf (last visited June 26, 2008).

*Burnett* (03 CV 1616) 3AC ¶ 318, but omit the reference to the purpose of the visits.  Instead,

they ignored, and continue to ignore, the uniform evidence and instead insist that "the true

purpose of th[e] visits" is a "vigorously disputed factual issue."  Objections at 12.  Finding that

they point to no facts, much less evidence, creating a dispute, Judge Maas properly concluded

that the "trips do not support the Plaintiffs' theory that further discovery is warranted because

they show that SBG materially supported OBL's terrorist activities."  Order at 6.

　　　　Plaintiffs seek to undercut that conclusion by falsely describing the Sudan trips as

"undertaken by representatives of SBG," Objections at 10, and extending "certainly as late as

1996," Objections at 12, although the documents say nothing of the kind.[17]  Plaintiffs also falsely

claim – with no citation to the record – that SBG acknowledges it was aware of OBL's

"extremist agenda" at the time of the trips.  Objections at 10.  In fact, SBG has never

acknowledged any awareness of an extremist agenda beyond OBL's opposition to the Saudi

government at the time he was removed as a shareholder in 1993.  As SBG has stated previously,

OBL was removed as a shareholder in June 1993 because he "had become a strident critic of the

Saudi government and had refused to return to the Kingdom despite demands by Saudi officials

that he do so."  SBG Second Supp. Interrog. Responses & Objections at 12.  This statement is

substantiated by contemporaneous documents produced by SBG.  There is no evidence, nor any

well-pleaded allegation in the Complaint, that SBG was aware that OBL was directing terrorist

activities at the United States in 1993.

## Removal of OBL as an SBG Shareholder

　　　　Plaintiffs' arguments concerning their supposed need for more discovery on the removal

of OBL as an SBG shareholder suffer similar problems.  SBG already has produced documents

---

[17] Given that the document bearing the reference to "recent[]" trips is dated January 7, 1996, Plaintiffs'
claim that the trips took place "certainly as late as 1996," Objections at 12, is obviously exaggerated.

in its possession, custody or control demonstrating the process of OBL's removal as a shareholder in SBG, and provided a detailed narrative explaining the process.  Notwithstanding Plaintiffs' purposeful attempts to confuse the record, the facts demonstrated by SBG's prior production are straightforward and undisputed.  To summarize for the Court's benefit:

On or about June 16, 1993, SBG's shareholders adopted a resolution to remove Osama as a shareholder in SBG.  The resolution was submitted, as required by Saudi corporate law, to the Saudi Ministry of Commerce for approval and, after further revision, was approved by that Ministry in March 1994, executed by representatives of the shareholders on May 2, 1994, and published in the Saudi media on May 5, 1994.  The Ministry of Commerce subsequently confirmed that the effective date of OBL's removal as a shareholder was June 16, 1993, the date of the initial shareholder resolution.[18]

No money was paid directly or indirectly to OBL in connection with the transfer of his shares.  Requests were made to various Saudi officials in June 1993, January 1996 and December 1999 for instructions on how to handle the amounts attributable to the value of the shares.[19]  On February 18, 2000, the Ministry of the Interior authorized the establishment of an account at the National Commercial Bank ("NCB") in the names of the members of the Supervisory Board of the Mohammad Binladin Company ("MBC") and ordered that no funds be released without express approval from the Ministry.  Thereafter, the account was established and, on April 17, 2000, Ghaleb Binladin arranged for the deposit of the funds into the NCB

---

[18] Thus, Plaintiffs' claims that there is a discrepancy between whether the shares were transferred in 1993 or 1994 is manufactured.  The resolution was effective as of the date of its original adoption in June 1993.  It was not, however, approved and executed in final form until early 1994.  No further discovery is required on this point, nor is this timing of any material consequence to the jurisdictional analysis.

[19] The Ministry of Commerce's review of the shareholder resolution did not address what to do with the payment for the shares.  Separate approval from a different agency, the Ministry of the Interior, was required to resolve that issue.

-14-

account.  The amount paid was the purchase price that had been determined by a valuation dated in June 1993.

Plaintiffs claim that "[o]ne gaping disconnect that the Court completely overlooked is the six-year interval between the May 2, 1994 government approval and the April 2000 deposit." Objections at 14.  In fact, Judge Maas did not overlook the issue; rather, his order reflects a recognition that SBG had already fully addressed the chronology.  Indeed, Plaintiffs' argument is based on an improper conflation of two distinct approvals by two different government agencies. The Ministry of Commerce reviewed, and in 1994 approved, the shareholder resolution which removed OBL as a shareholder.  In 2000, the Ministry of the Interior approved the establishment of the NCB account.[20]  The only disconnect is between Plaintiffs' wishful thinking and the documented facts.

Similarly, on the purported inconsistency as to SBG's statements regarding whether OBL's shares were transferred to Ghaleb Binladin or to the rest of SBG's shareholders, Judge Maas appropriately held that Plaintiffs' argument "misses the crucial jurisdictional point" of materiality – as does their current argument – because it "does not suggest that SBG failed to remove OBL as a shareholder or that he received any monetary compensation for his shares." Order at 7.  And as to the timing of the creation of the trust, Judge Maas held that any "alleged discrepancies are fully explained by SBG in their discovery responses and the documentary evidence that they have provided to the plaintiffs."  Order at 8.[21]  Plaintiffs simply refuse to

_____

[20] Notably, Plaintiffs have never alleged that OBL received any money as a result of his removal as a shareholder.  Instead, they have demanded increasingly broad discovery on tenuous theories about how such an act *might* have occurred.  That is not a genuine issue of disputed fact.

[21] Plaintiffs also claim that the "trust" has not been fully explained, Objections at 16, even though SBG's interrogatory response and accompanying responsive documents clearly explain the formation and nature of the trust account to the extent that information is in SBG's possession, as SBG does not have any control over the account. Similarly, Plaintiffs complain that "[a]lthough SBG has been ordered to produce documents concerning its submission to a Shariah court for approval of [the trust], nothing of that kind has been produced."  Objections at 16. Here, again, Plaintiffs simply ignore SBG's response that "SBG does not have and is not aware of the existence of

-15-

accept those documents as accurate, although they could cite no basis to challenge their authenticity when expressly questioned by Judge Maas on that point.  Apr. 11 Hr'g Tr. at 37:2-5.

Plaintiffs also claim that Judge Maas should have included "analysis regarding the importance of SBG opting to assign [OBL's] shares to his close brother, perhaps facilitating support to OBL through his brother."  Objections at 14.  Again, Plaintiffs' argument is founded on a false premise.  There is no evidence or even a well-pleaded allegation that Ghaleb Binladin, who was assigned OBL's shares, was OBL's "close brother."  In fact, Plaintiffs concocted this claim for the first time at the April 11 hearing, where they claimed that Ghaleb Binladin had provided funds to OBL in 1989 and has, therefore, "been shown to be very sympathetic to Osama Bin Laden."  Apr. 11, 2008 Hr'g Tr. at 19:6-7.  Because Plaintiffs did not identify a source, much less provide any evidence, SBG was deprived of a meaningful opportunity to respond to these false claims.[22]  It now appears that Plaintiffs were relying on a selective and misleading recitation of an account in a recent book about the Binladin family, and failed to inform the Court that, according to that same book, both Ghaleb and the one other person who accompanied him on his April 1989 trip to a refugee camp in Afghanistan denied that they gave any money to OBL.[23]  In any case, even if the claim were true, the timing of the purported event – during a period when the United States was supporting the mujahideen's attacks on the Afghan

---

(continued…)

any written opinion or court order addressing the [Shareholder] resolution's compliance with Islamic [Shariah] law." SBG Second Supp. Interrogatory Resp. at 16 (Sept. 13, 2007).

[22] Judge Maas relied on this misrepresentation in requiring that SBG produce any documents in its possession, custody, or control for the period 1993-2000 related to "[t]he receipt and subsequent disposition of any dividends, distributions, or similar payments arising out of the custody, control, or ownership of" OBL's former shares, "[a]ny transfer, assignment, or pledge" of the former OBL shares, "as well as any income derived thereby," and "any increase in the value" of the former OBL shares.  SBG provided Plaintiffs with its discovery response on these issues on June 18, 2008.

[23] *See* Steve Coll, *The Binladins* at 339-40 (2008).

-16-

communist government, [24] and seven years before OBL announced his war on the United States – precludes any possible inference that the event is evidence that Ghaleb was "very sympathetic" to OBL's terrorist ambitions, much less that Ghaleb supported violent attacks on the United States.  Building on this false premise, Plaintiffs then all but admit their speculation by suggesting only that "perhaps" the transfer of shares to Ghaleb "facilitat[ed] support to OBL" in some unspecified way.  Objections at 14.  As noted above, as well as by Judge Maas, speculation cannot justify jurisdictional discovery.

As the examples above demonstrate, Judge Maas's determinations to limit further discovery are fully supported by the law and the facts.  Contrary to Plaintiffs' argument, Judge Maas did not make any credibility determinations.  Rather, he simply evaluated what facts were genuinely disputed and whether they had jurisdictional relevance.  His findings are entitled to deference upon review, because "[a] finding of factual relevance under Fed. R. Civ. P. 26(b)(1) would be overturned only upon a finding by the Court that the Magistrate Judge had abused [his] discretion."  *Pisacane v. Enichem America, Inc.*, No. 94 Civ. 7843 (JFK) (NRB), 1996 U.S. Dist. LEXIS 9755, at *17 (S.D.N.Y. July 12, 1996) (citation omitted).

### 2.  *Judge Maas Gave Full Consideration to Plaintiffs' Requests*

Plaintiffs' claim that Judge Maas "left a number of the requests unaddressed" is not only wrong, but also beside the point.  Objections at 17.  While the transcript of the April 11 discovery hearing reflects that Judge Maas carefully considered all of Plaintiffs' requests, there is no requirement that either Judge Maas or this Court must address, line-by-line, each of Plaintiffs' 95 discovery requests.  SBG moved for Judge Maas to quash the requests, in their entirety,

---

[24] *See, e.g.*, *United States v. Usama Bin Laden, et al.*, 98-CR-1023 (S.D.N.Y.), Trial Transcript of Feb. 14, 2001 at 539:22-23 (government stipulation that U.S. funded Afghan mujahideen "[f]rom shortly after the start of the Soviet invasion in Afghanistan in 1979, through September 1991"); Proclamation No. 5034 – Afghanistan Day, 1983 (48 Fed. Reg. 12,683) (Mar. 21, 1983) (President Reagan officially praising the mujahideen as "valiant and courageous Afghan freedom fighters" who were "an example to all the world of the invincibility of the ideals we in this country hold most dear, the ideals of freedom and independence").

because, *inter alia,* the requests violated prior discovery orders, sought information on topics that the Court had already foreclosed, sought information that was irrelevant and/or could not be expected to be within SBG's possession, custody or control, were untimely, and were interposed for the improper purpose of delaying the resolution of SBG's jurisdictional defenses. *See* Dec. 28, 2007 Letter to Judges Maas & Daniels at 2, 14; Jan. 15, 2008 Letter to Judges Maas & Daniels at 7. Judge Maas in turn quashed the supplemental discovery requests, in their entirety, which he is empowered to do under Rule 26(c)(1)(A), and specifically identified the limited discovery that he would permit.[25]

Plaintiffs' demand that Judge Maas recite an analysis of why each request must be quashed is particularly improper given that Plaintiffs' interrogatories – numbering 20 in their first requests and 42 in their second (both sets with multiple subparts) – far exceeded the 25 permitted under the Federal Rules. Fed. R. Civ. P. 33(a)(1) (allowing "no more than 25 written interrogatories, including all discrete subparts"). Judge Maas reasonably focused in his Order on specific examples that demonstrate the problems with Plaintiffs' requests, and these were the same topics Plaintiffs chose to advance at the April 11 hearing as exemplary of their cause. Order at 5-6 ("The following discussion is by no means inclusive, but serves to illustrate why many of the plaintiffs' discovery requests based on alleged discrepancies lack a solid foundation.").

---

[25] In marked disregard of Judge Maas's Order, Plaintiffs claim that the Order effectively granted a number of their discovery requests and interrogatories. *See* Objections at 17. The Order does no such thing. The Order explicitly requires SBG to produce only "any records . . . concerning" three specified topics related to the trust account holding the value of OBL's former shares and "documents . . . sufficient to show" the answers to three specific questions regarding IME. Order at 9-10, 17-18. Judge Maas flatly stated that he was ordering discovery "solely to the extent that SBG is directed to produce documents" sufficient to respond to the specified issues. Order at 17-18.

## <u>CONCLUSION</u>

For the reasons set out above, Plaintiffs fail to meet their "heavy burden" to show that

Judge Maas's order was an abuse of discretion and clearly erroneous or contrary to law.  The

Court should therefore deny Plaintiffs' application to vacate Judge Maas's Order.

DATED:        June 26, 2008

_____/s/_____
Stephen J. Brogan
Mary Ellen Powers
James E. Gauch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Tel: (212) 326-3939
Fax: (212) 755-7306

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2008, I caused a copy of Defendant Saudi Binladin Group's Response to Plaintiffs' Objections to Order of Magistrate Judge Maas Dated May 21, 2008 to be served by the Court's Electronic Case Filing System.

Date:   June 26, 2008

_____/s/_____
James E. Gauch