# Exhibit B

## REALTY SERVICES AGREEMENT

Realty Services agreement, dated as of November __1__, 1995, between SNCB Securities Inc., a Delaware corporation ("SNCB") and The National Commercial Bank, a joint liability partnership established in Saudi Arabia ("NCB Jeddah").

### PREAMBLE

NCB Jeddah has created certain investment funds in the British Virgin Islands ("BVI") to hold and invest funds of its clients who are located in Saudi Arabia in loans secured by, or other investments in, real estate located in the United States and elsewhere. The funds consist of various trusts established under the laws of the BVI which are listed on Annex One hereto (the "Established Trusts" and together with other such trusts to be established from time to time in the future in the BVI, the "Trusts") each of which owns one or more underlying BVI operating companies listed on Annex Two hereto (the "Existing Operating Companies" and together with other such companies to be formed in the BVI, the "Operating Companies") that make the investments.

NCB Real Estate Services Limited, an international business company incorporated in the BVI ("RE Services") is trustee ("Trustee") of the Trusts, with full and absolute power, control and authority over the assets of each of the Trusts.

RE Services as Trustee has, and will, appoint one or more (i) realty advisors, to coordinate the acquisition, management and, as required, disposition of the real estate investments ("Real Estate Investment") of the Operating Companies which are located in the United States and elsewhere (each, a "Realty Advisor"), and (ii) one or more investment advisors, to buy, sell, trade, reinvest and otherwise manage stock and securities owned by the Operating Companies and issued by entities holding real estate located in the United States and elsewhere (each, an "Investment Advisor" and together with the Realty Advisors, the "Advisors").

RE Services has contracted, as administrative manager, to manage the day-to-day affairs of each of the Operating Companies and pursuant to a contract with NCB Jeddah, RE Services has appointed NCB Jeddah as the administrative manager to manage the day-to-day affairs of RE Services, each of the Trusts and each of the Operating Companies (the "Realty Administrative Agreements").

NCB Jeddah wishes to retain SNCB as a consultant and advisor to assist NCB Jeddah in matters relating to NCB Jeddah's duties and obligations under the Realty Administrative Agreements.

SS_NYL4/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015283

2

1. <u>Duties and Powers of SNCB as Consultant and Advisor</u>

 (a) NCB Jeddah appoints SNCB, and SNCB accepts such appointment, as a consultant and advisor to assist and advise NCB Jeddah on matters described below and generally relating to NCB Jeddah's duties and obligations under the Realty Administrative Agreements which are specifically set forth below. Subject to the limitations set forth in Section Two hereof, in connection with this undertaking, SNCB, as consultant, shall have the following obligations and responsibilities:

 (i) Advising NCB Jeddah in identifying potential Advisors, soliciting the services of Advisors and conducting the relationship between NCB Jeddah and the Advisors;

 (ii) Furnishing NCB Jeddah with advice with respect to developing, identifying, and analyzing potential real estate investment products for offering in Saudi Arabia or elsewhere outside of the United States;

 (iii) Monitoring and evaluating the performance of the Advisors and advising NCB Jeddah on such performance;

 (iv) Assisting NCB Jeddah in identifying and evaluating legal counsel and such other professionals and advisors as NCB Jeddah deems necessary or desirable to represent and advise NCB Jeddah in connection with the duties and obligations of NCB Jeddah under the Realty Administrative Agreements;

 (v) Assisting NCB Jeddah by establishing and maintaining one or more separate bank accounts for the purpose of (A) collecting payments or other income from a Real Estate Investment, depositing such collections in such an account (a "Collection Account") and promptly forwarding such collections to NCB Jeddah for the account of the Trust or the Operating Company holding such Real Estate Investment and (B) collecting and depositing into the related account and disbursing from any such account any money on behalf of a Trust or an Operating Company held in such account under the terms and conditions as such Trust or Operating Company, as the case may be, has approved in the loan or other documentation representing the Real Estate Investment held by such Trust or Operating Company and to which such account relates (each an "Escrow Account"), provided that, SNCB shall have no discretionary authority with respect to Collection Accounts or Escrow Accounts, shall make disbursements from such accounts only upon direction by Realty Advisors or the Trust or Operating Company that owns the particular account, no money in any such account shall be commingled with SNCB's funds or with funds in another of such accounts, and that SNCB shall from time to time render appropriate accounting of such collections and payments to NCB Jeddah and provided further that

SS_NYLA/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015284

3

disbursing payments of dividends, legal fees and officers' and directors' salaries for the Trusts and the Operating Companies shall be carried out from or at offices of the Trusts and the Operating Companies in Saudi Arabia and SNCB shall make no disbursements of such items from the United States;

(vi) Maintaining duplicate copies of the principal official corporate books and documents for RE Services, the Trusts and the Operating Companies (except for records relating to the Trusts' investors or the Trusts' books of account) and limited transactional documents for such Trusts and Operating Companies, it being agreed that the originals of such books, documents and records shall be maintained outside the United States;

(vii) Identifying potential purchasers and sellers of the assets which secure investments of the Trusts and Operating Companies or in which the Trusts and Operating Companies invest;

(viii) Reviewing potential investments proposed by the Advisors and submitting such reviews and proposals to NCB Jeddah for their approval, rejection, analysis or other action;

(ix) Inspecting on an annual basis the real estate properties which secure investments of the Trusts and Operating Companies or in which the Trusts and Operating Companies have invested;

(x) At the request of NCB Jeddah, discuss the performance, investment structure, prospects and other matters pertaining to the Trusts with members of NCB Jeddah's staff; and

(xi) Preparing or causing to be prepared, the organizational documents for new Trusts and new Operating Companies at the request of NCB Jeddah.

(b) Except as provided in this Section One, SNCB shall have no duty or responsibility to act for either NCB Jeddah, RE Services or one or more of the Trusts.

2. Limitations

Notwithstanding anything to the contrary set forth in Section One or otherwise in this Agreement, unless specifically granted such authority in writing by the party to be bound after the date of this Agreement, SNCB shall have no power or authority to bind or contract for NCB Jeddah, RE Services, the Trusts or the Operating Companies.

SS_NYLA/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015285

4

The parties hereto agree that none of the directors, employees or officers of SNCB shall be directors, officers or employees of NCB Jeddah, RE Services, the Trusts and/or the Operating Companies, except that one individual may be both a director of SNCB as well as an officer and/or a director of NCB Jeddah, RE Services and one or more of the Trusts or the Operating Companies provided such individual is not resident in the United States and such individual performs outside the United States substantially all of his services performed in the capacity as an officer or director, as the case may be, of NCB Jeddah, Investment Services and one or more of the Operating Companies.

Additionally, the parties hereto agree that the administration and day-to-day operation of RE Services, and all of the Trusts and the Operating Companies shall continue to be performed by NCB Jeddah at their principal business offices in Saudi Arabia, that NCB Jeddah and RE Services as Trustee shall continue to manage and direct the investments of the Trusts and the Operating Companies from outside the U.S. and that SNCB shall have no power, authority or duty hereunder to manage or otherwise direct the investments of one or more of the Trusts and the Operating Companies. By way of illustration, but not limitation, of the absence of such authority, SNCB shall have no power, authority, or obligation to (X) retain, terminate or manage one or more of the Advisors, or (Y) establish or modify guidelines, allocations, strategies or policies for investments for the Trusts and the Operating Companies or (Z) approve, disapprove or modify the acquisition, retention or disposition of investments by the Trusts and the Operating Companies.

NCB Jeddah and SNCB are not partners or joint venturers with each other with respect to the matters subject to this Agreement and nothing herein shall be construed so as to make them such partners or joint venturers or to impose any liability as such on either of them. SNCB shall not be subject to the supervision of either NCB Jeddah, RE Services or any of the Trusts or Operating Companies in respect of the manner in which SNCB accomplishes the performance of its obligations under this Agreement.

3.   Right to Engage in Other Activities

Nothing in this Agreement shall limit or restrict the right of NCB Jeddah or SNCB, or of any officer, director, or employee of NCB Jeddah or SNCB, to engage in any other business or to render services of any kind to any third parties (it being understood that this Agreement restricts the activities of SNCB and NCB Jeddah as between themselves and as among RE Services, the Trusts and the Operating Companies).

4.   Fees and Expenses

(a)   As consideration for services rendered under this Agreement, SNCB shall be entitled to receive fees and expenses as set forth below:

SS_NYL4/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015286

5

(i) <u>Annual Fee</u>: Subject to adjustments as provided herein, NCB Jeddah agrees to pay SNCB an annual fee (the "Annual Fee") equal to U.S.$600,000, except that for any year, the amount of the Annual Fee shall not be less than the Minimum Fee (as defined below). The Minimum Fee for each year shall not be less than an amount equal to (X) the aggregate of the costs incurred by SNCB for such year in performing the services and otherwise fulfilling the obligations required to be performed and fulfilled by SNCB under this Agreement for or on account of NCB Jeddah, the Trusts, the Operating Companies and RE Services, <u>plus</u>, (Y) 10% of the aggregate of the costs described in clause (X). The Annual Fee shall be paid in quarterly installments on each March 31, June 30, September 30, and December 31 (each, a "Payment Date"), in an amount equal to one quarter of the Annual Fee. At the request of SNCB, NCB Jeddah shall advance a quarterly installment of the Annual Fee at any time during the quarter prior to the Payment Date for such installment. In the event this Agreement is not terminated on a Payment Date, the Annual Fee then due (exclusive of any delinquent payments) shall be prorated on a daily basis to such termination date. The Annual Fee may be adjusted (but not below the Minimum Fee) from time to time by agreement of the parties to reflect increases or decreases in the number of Trusts or Operating Companies in existence after the date of this agreement.

(ii) <u>Acquisition Fee</u>: NCB Jeddah agrees to pay to SNCB an acquisition fee (the "Acquisition Fee") with respect to each acquisition of an investment made by an Operating Company or a Trust, or any financial product otherwise offered by NCB Jeddah (an "Investment") for which SNCB renders consulting and advisory services to NCB Jeddah. The Acquisition Fee shall be an arm's length fee mutually agreed upon on or about the time of the acquisition of the Investment and shall be paid to SNCB at the end of the year in which the initial closing with respect to the acquisition of such Investment occurs. When determining the Acquisition Fee, the factors to be taken into account shall include the potential return to investors, the amount and complexity of the Investment, the exclusivity of the Investment and such other factors as are customary in computing arm's length consideration for the services provided by SNCB. The amount of the Acquisition Fees due SNCB for any year shall be reduced on a dollar for dollar basis by an amount equal to one half of the Annual Fee due SNCB for such year.

(iii) <u>Third-Party Expenses</u>: Subject to Section 4(b) below, SNCB shall be reimbursed for all of its reasonable out of pocket or third-party expenses incurred in performance of the services and duties set forth herein plus a 10% handling charge. Such expenses shall be billed by SNCB to NCB Jeddah monthly and, subject to verification, are payable within 30 days after delivery of said bill.

SS_NYL4/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015287

(b) <u>Expenses of SNCB</u>: Without regard to the amount of compensation received hereunder by SNCB, SNCB shall bear the following expenses:

(i) Employment expenses of SNCB's personnel, including, but not limited to, fees, salaries, wages, bonuses, payroll taxes, and the cost of employee benefit plans and temporary help expense; and

(ii) Rent, telephone, utilities and office furnishings and other office expenses of SNCB, and such other items generally falling under the category of SNCB's overhead.

5. <u>Indemnification</u>

NCB Jeddah shall indemnify and hold harmless SNCB and the directors, officers and employees of SNCB (each an "indemnified party") from and against any and all liabilities, claims, demands, losses, damages, causes of actions, costs or expenses (other than those specified in Section 4(b) hereof, but including, without being limited to, attorneys' fees and disbursements) of any nature whatsoever arising out of or incidental to (i) a breach by NCB Jeddah of its obligations under, or a failure by NCB Jeddah to comply with any of the terms and provisions of, this Agreement, or (ii) SNCB's performance of the activities covered herein, except in cases of gross negligence or wilful misconduct by the indemnified party seeking indemnification. This right of indemnification shall survive termination of this Agreement.

Promptly after receipt by an indemnified party of notice of commencement of any action, such indemnified party shall, if a claim in respect thereof is to be made against NCB Jeddah, notify NCB Jeddah in writing of the commencement of such action. NCB Jeddah shall be entitled to participate therein and, to the extent that it wishes, to assume the defense thereof, with counsel satisfactory to NCB Jeddah (who shall not, except with the consent of the indemnified party, be counsel to NCB Jeddah), and, after notice from NCB Jeddah to such indemnified party of its election so to assume the defense of such action, NCB Jeddah shall not be liable to such indemnified party for any legal expenses of other counsel or any other expenses subsequently incurred by such indemnified party in connection with the defense of such action, other than reasonable costs of investigation.

6. <u>Term</u>

This agreement shall be effective as of January 1, 1996. This agreement shall continue in force for a period from such effective date until March 1, 2000 unless earlier terminated by either NCB Jeddah or SNCB giving not less than 60 days' prior written notice of termination.

SS_NYL4/106199.2

CONFIDENTIAL: This Document is subject to a
Protective Order regarding confidential information
in 03 MDL 1570 (RCC), United States District
Court for the Southern District of New York.

NCB015288

7

7. **Amendments**

This Agreement shall not be changed, modified, terminated, or discharged in whole or in part except by an instrument in writing signed by the parties hereto, or their respective successors or assigns.

8. **Assignment**

No party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other party.

9. **Notices**

All notices or communications required or permitted hereunder shall be in writing and sent to the address set forth below:

to NCB Jeddah:

> The National Commercial Bank
> Al Nakheel Center
> Jeddah 21481, Saudi Arabia
> Attention: Investment Services Division

to SNCB:

> SNCB Securities Inc.
> 33 East 67th Street
> New York, New York 10021
> Attention: John Bouckley

10. **Governing Law**

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SS_NY1A/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015289

8

IN WITNESS WHEREOF, SNCB SECURITIES INC. and THE NATIONAL COMMERCIAL BANK, each by an authorized officer, have caused this Agreement to be duly executed on _____December 31_____, 1995.

THE NATIONAL COMMERCIAL BANK

By: _____

SNCB SECURITIES INC.

By: _____

Agreed to and Accepted by:
NCB REAL ESTATE SERVICES LIMITED

By: _____

SS_NYLA/106199.2

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United States District Court for the Southern District of New York.

NCB015290

Annex One

**Hospitality Investment Partners**
**International Real Estate Fund I**
**International Real Estate Fund**
**International Real Estate Fund II**
**Palm Beach Real Estate Fund**
**NCB Commodity Fund**

CONFIDENTIAL: This Document is subject to a
Protective Order regarding confidential information
in 03 MDL 1570 (RCC), United States District
Court for the Southern District of New York.

NCB015291

Annex One

The Short Term Dollar Fund
The Currency Fund
The International Trade Fund
The Balanced Fund
The Global Equity Fund
U.S. Dollar Fixed Income Fund
Short Term Sterling Fund
Swiss Equity Index Fund
European Bond Fund
The National Investment Fund
Saudi Riyal Trade Fund
Global Trading Equity Fund
Japan Equity Fund
Europe Equity Fund
International Equity Fund
U.S. Equity Fund
South East Asia Equity Fund
Arab Equity Fund
Far East Development Fund
Capital Protected Fund 1

CONFIDENTIAL: This Document is subject to a
Protective Order regarding confidential information
in 03 MDL 1570 (RCC), United States District
Court for the Southern District of New York.

NCB015292

Annex Two

Emily Morgan Hotel Limited
First I.R.E. Limited
Second I.R.E Limited
Third I.R.E Limited
Phoenix Fund III Limited
Kingwood Fund III Limited
Blue Ash Fund II Limited
Omaha Fund II Limited
Tampa Fund II Limited
Palm Beach Real Estate Limited
International Portfolio Fund III Limited
Angler Limited
Bigmouth Bass Limited
DTW Hotel Limited
Huck Finn Inn Limited
Dean Country Limited
Denver Hotel Limited
CS San Francisco Limited
Castle Limited
Trevose Hotel Limited
Commodity Trading Co. Limited
Medical Equipment Leasing Partners Limited
Montecito Fund III Limited

CONFIDENTIAL:  This Document is subject to a
Protective Order regarding confidential information
in 03 MDL 1570 (RCC), United States District
Court for the Southern District of New York.

NCB015293