UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

This document relates to:
    All Cases

## DECLARATION OF JORGE JUCO

    1.    My name is Jorge Juco and I am employed by The National Commercial Bank ("NCB") in Jeddah, Kingdom of Saudi Arabia as a legal advisor. I submit this declaration in support of NCB's Renewed Motion to Dismiss this lawsuit for lack of personal jurisdiction. I am advised by NCB's United States legal counsel that this declaration is not intended to waive, in any way, NCB's claim of immunity from suit or its jurisdictional defenses, and is not intended to be a general appearance by NCB in this lawsuit. I understand and believe the following matters to be true, through the date of this declaration, based both on my personal knowledge and on inquiries made of other NCB personnel who have knowledge about specific matters addressed in this declaration. I have been assisted by NCB's United States legal counsel in the phrasing of this declaration.

    2.    I understand from NCB's United States legal counsel that, for purposes of determining whether jurisdiction exists over a foreign defendant, United States courts examine the defendant's contacts with the U.S. forum at the time that lawsuits are filed. I also understand that, for purposes of limited jurisdictional discovery, the Court directed NCB to provide information concerning its United States contacts for the six-year period preceding the commencement of the lawsuits captioned above. Unless otherwise specifically noted in this declaration, my statements below pertain to the facts as they existed as of, and for a considerable period before, the dates on which these lawsuits were commenced, continuing through the date of this declaration.

3. NCB is a joint stock corporation established under the laws of Saudi Arabia. At all times, NCB's headquarters and principal place of business have been in Jeddah, Saudi Arabia.

4. NCB does not have a branch office, subsidiary, or agency in the United States. NCB closed its branch in New York City in 1992 and has not had a branch in the United States since that time. NCB's indirect (second-tier) United States subsidiary, SNCB Securities Inc. ("SNCB Securities") was dissolved in February 2001; its certificate of dissolution was filed with the Delaware Secretary of State on February 23, 2001, and was acknowledged by the Delaware Secretary of State on February 28, 2001. (A certified copy of the Certificate of Dissolution of SNCB Securities Inc. (Delaware) is attached to this Declaration as Exhibit A). NCB has not had a direct or indirect subsidiary in the United States since the dissolution of SNCB Securities.

5. In connection with its dissolution, SNCB Securities surrendered its lease of office space at 420 Lexington Avenue, Room 460, New York, New York 10170 effective January 31, 2001 pursuant to a Surrender Agreement entered into between SNCB and its landlord SLG Graybar Sublease LLC on February 16, 2001. A true and correct copy of the Surrender Agreement is attached to this supplemental declaration as Exhibit B.

6. During the entire existence of SNCB Securities, NCB did not make any loans to, or guarantee any financial obligations of, that company.

7. NCB is not, and has not been, registered or licensed to do business in the United States at any time since its New York branch was closed in July 1992. NCB has not been doing business in the United States, and has not made any loans to any entity or individual in the United States, since that time.

8. At all times, NCB has managed its business from its headquarters in Jeddah, Saudi Arabia, and its directors and principal officers have resided in Saudi Arabia. Since at least the filing date of these lawsuits, NCB has had no employees or telephone number in the United States.

9.  Shares of NCB have never been sold in the United States and NCB does not otherwise raise capital in the United States.

10. NCB does not own any real property in the United States, and has not done so since at least the filing date of these lawsuits.

11. As a commercial bank chartered under Saudi Arabia law and headquartered in Saudi Arabia, NCB has at all times been regulated by the Saudi Arabian Monetary Agency ("SAMA"), the central bank of the Kingdom of Saudi Arabia. NCB is not regulated by any agency of the United States government, and has not been subject to direction from United States bank regulators since the closure of its New York branch.

12. Under longstanding SAMA regulations, only the following may be NCB account-holders: citizens of Saudi Arabia; non-citizens who lawfully reside in Saudi Arabia; Saudi Arabia government entities; or, business and charitable entities with lawful status in Saudi Arabia. (A copy of the relevant SAMA regulations is attached to this Declaration as Exhibit C).

13. NCB does not advertise or otherwise solicit business in the United States. With the development of the internet, NCB established a website that I understand is generally accessible, including in the United States. However, only NCB account-holders are able to access and utilize the interactive services offered through the NCB website. Anyone who is not an NCB account-holder may obtain access only to the informational, non-interactive portions of the NCB websites.

14. In connection with its U.S. dollar denominated transactions, NCB maintains correspondent accounts with U.S. commercial banks to facilitate international financial transactions or money transfers for itself and its customers. Attached as Exhibit D is a true and correct copy of a document NCB produced to the plaintiffs in discovery, which accurately lists of all of the correspondent (or Nostro) accounts that NCB had with U.S. banks during the jurisdictional discovery period set by the Court (August 15, 1996 until August 15, 2002) (the "jurisdictional

discovery period"). NCB had no other U.S. bank accounts during that period. These U.S. correspondent banking accounts were employed solely to facilitate international banking transactions that were denominated in U.S. dollars.

15. NCB has never received substantially all of its income from its U.S. correspondent accounts. NCB has not used its U.S. correspondent accounts to pay its operational expenses, or for any other primary operating purpose of the bank. The bank accounts that NCB has used to pay its operational expenses and for the other primary operating purposes of the bank have been maintained in Saudi Arabia.

16. NCB does not have a general agent for service of legal process in the United States. As required by 31 U.S.C. §5318(k), in connection with its U.S. correspondent bank accounts, NCB has an agent for service of process of U.S. government information requests of the type specified in the statute.

17. NCB does not act as a broker or dealer in securities sold in the United States, and is not licensed as a U.S. securities broker dealer. NCB occasionally offers its customers the opportunity to open their own accounts directly with licensed U.S. securities broker dealers, through which those customers can trade in securities offered or sold in the United States. NCB also occasionally offers non-U.S. persons the opportunity to purchase interests in NCB proprietary mutual funds. Those proprietary funds have always been separate non-U.S. legal entities.

18. NCB owns investment securities, including securities issued by U.S. entities and interests in funds that invest in such securities. Attached as Exhibit E is a true and correct copy of a spreadsheet NCB produced to the plaintiffs in discovery, which accurately identifies the U.S. investment securities NCB held during the jurisdictional discovery period from 1997 until the end of 2003. Exhibit E also accurately identifies the percentage of these U.S. securities investments as a proportion of the total of all investment securities worldwide held by NCB during the same period.

19. The documents collectively attached as Exhibit F are true and correct copies of certificates of dissolution obtained from BVI authorities for twenty BVI Limited Companies previously owned by indirect subsidiaries of NCB.

20. I understand that the plaintiffs have produced documents to NCB's counsel that are copies of advertisements and appeals for charitable contributions by or for several organizations, specifically: the Khair Funds of the Muslim World League ("MWL"); the Islamic Solidarity Fund of the Organization of Islamic Countries ("OIC"); the Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"); and, the International Islamic Relief Organization ("IIRO"). I also understand that those advertisements and appeals, some of which supposedly appeared in the Muslim World League Journal ("the MWL Journal"), listed numbers of accounts that these organizations supposedly had both with Al Rajhi Bank (several numbers) and with NCB, to which contributions and donations were invited. The advertisements listed the following numbers for accounts supposedly held at NCB: 22222000104/139 (MWL); 34542000107 (OIC, "for Zakat only"); 48 and 49 (SJRC); and 10477702000102 (IIRO).

21. NCB was not consulted about, was not asked to authorize, and did not authorize, any of these advertisements and appeals for charitable contributions, or the listing of supposed NCB account numbers in these advertisements and appeals. Further, NCB has no knowledge of whether any of these organizations (MWL, OIC, SJRC, or the IIRO) engaged in fundraising in the United States. NCB also has no knowledge that, as I understand Plaintiffs assert: (a) the MWL Journal was circulated in the United States; (b) the MWL Journal was "widely distributed" in mosques within the United States and "targeted" Muslims in the United States (*Burnett* Dkt. (DC) #435, pp. 49, 50); or, (c) the MWL Journal was "available by subscription from Amazon.com priced in dollars ($29.02 for twelve issues) for shipment anywhere in the United States" (*Burnett* Dkt. (DC) #435, p. 50).

22. NCB does not require its customers to keep secret their NCB account numbers. That decision is entirely in the customers' hands. NCB does not participate in, or exercise any control over, any decision by a charity account-holder to advertise its NCB account number.

23. NCB has not done any advertising or public relations in the United States at least since the time of the closure of its New York branch.

24. NCB does not attempt to promote its interests through agents or other individuals permanently located in the state.

25. I understand that the plaintiffs have produced documents to NCB's counsel that purport to identify an "Aviation Department" under the logo of The National Commercial Bank or "NCB Aviation" located at 3rd Floor, NCB Khalidiyah Branch Building, Prince Abdullah Street, District Khalidiyah, P.O. Box 9935, Jeddah 21423, Saudi Arabia, with telephone numbers 682-4203 and 682-4426, a fax number of 682-4827, and a telex number of 607426 NCBAV SJ. The P.O. Box, telephone, fax and telex numbers supposedly associated with the "Aviation Department" that appear in the plaintiffs' documents are not P.O. Box, telephone, fax or telex numbers that belong to NCB. NCB does not occupy the third floor space in the "NCB Khalidiyah Branch Bldg." on Prince Abdullah Street, District Khalidiyah, in Jeddah, although there is a branch of NCB (the Khalidiyah branch) at street level and first floor in that building. NCB does not occupy other space in that building.

26. I understand further that the plaintiffs have produced documents identifying airline pilots and other "airmen" whom the plaintiffs assert are or were employed by an "Aviation Department" of NCB, specifically: Ashraf Jawaid Ghoari Khan (aka Jawaid K. Ghoari); Mohamed Mustafa al Hanno; Shams Hassan Khan; Mark Thomas Ramsey; Salman Rasheedi; Muhammad Tahsin; T.W. "Buddy" Rogers; Johnny Antoon; David Thomas; Robert Murphy; Imtiaz Khan; Fahad Bakalka; Gustavo Torres; Jose Roche; Francisco Lombardi; and, Javed Latif. NCB has

6

searched its personnel records for these names and, based on that search, I understand that there is no record that any of these individuals is or ever was employed by NCB.

27.   NCB has searched its personnel records for the name of Yassin al Kadi and, based on that search, I understand that there is no record that Yassin al Kadi is or ever was employed by NCB.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my knowledge, information, and belief.

Executed in this 5TH day of April 2008 (A.D.) in Jeddah, Kingdom of Saudi Arabia.

_____
JORGE JUCO