UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

This document only relates to:

*Ashton v. Al Qaeda Islamic Army et al*, 02-CV-6977 (SDNY)
*Burnett v. Al Baraka Investment & Develop. Corp., 03 CV 9849* (SDNY)

### PLAINTIFFS' REVISED RESPONSES TO DEFENDANT NATIONAL COMMERCIAL BANK'S FIRST SET OF JURISDICTIONAL INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiffs in *Ashton v. Al Qaeda Islamic Army et al*, 02-CV-6977 (SDNY) and *Burnett v.*

*Al Baraka Investment & Develop. Corp., 03 CV 9849* (SDNY) hereby respond to the First Set of

Document Requests propounded by Defendant National Commercial Bank (hereinafter "NCB")

under Fed.R.Civ.P. 26, 33 and 34.

### GENERAL OBJECTIONS

Plaintiffs make the following General Objections to NCB's First Set of Interrogatories

and Document Requests:

1.      Plaintiffs object to responding to NCB's Interrogatories and Document Requests

before Plaintiffs have completed their investigation into all of the facts relating to this action.

Plaintiffs have not been provided with complete responses to discovery demands by Defendant

NCB, including production of documents, and making witnesses available for deposition. These

responses are provided before completion of Plaintiffs' investigation and before completion of

formal discovery from NCB.  Plaintiffs reserve the right to: (a) rely on any facts, documents, or

1

other evidence that may develop or subsequently come to their attention; (b) assert supplemental responses and objections and/or amend these responses.

2.      Plaintiffs object to NCB's Interrogatory and Document Requests, including NCB's accompanying Definitions and Instructions, to the extent they seek to impose discovery burdens or duties on Plaintiffs greater than the burdens and duties imposed upon Plaintiffs under the Federal Rules of Civil Procedure and the Local Civil Rules of the Southern District of New York.

3.      Plaintiffs object to any of the NCB's Definitions and Instructions that attempt to define any terms beyond the definitions as stated Local Civil Rule 26.3.   Plaintiffs further object to any of the Definitions and Instructions that attempt to define terms in a manner that is exceptionally broad, over inclusive, unreasonable, and beyond the proper scope of discovery.

4.      Plaintiffs object to NCB's Interrogatory and Document Requests to the extent they are vague, ambiguous, unduly burdensome, and do not specify the information sought with sufficient particularity.

5.      Plaintiffs object to NCB's Interrogatory and Document Requests to the extent they seek information not within the possession, custody or control of Plaintiffs.

6.      Plaintiffs object to producing any document that was drafted by or published by NCB  NCB has access to its own internal documents.  Therefore, there is no need for NCB to "discover" its own documents.

7.      Plaintiffs object to producing any document that is in the possession of NCB Plaintiffs further object to producing any document that is equally obtainable by NCB or Plaintiffs from available public sources.

8.      Plaintiffs object to NCB's Document Requests to the extent they seek the

production of materials protected by attorney-client privilege, work product privilege or any other privilege or protection.

9.      Plaintiffs object to NCB's Document Requests to the extent that they seek documents or things without a reasonable time-period limitation.

10.      Plaintiffs object to producing at this time documents that are subject to protective orders in other litigation and reserve the right to produce such documents at a later time pursuant to modifications of the respective orders.

11.      Each of the foregoing General Objections is hereby incorporated by reference in response to each Interrogatory and Document Request, whether or not a further specific objection is made with respect to a specific Request below.

Subject to each of the foregoing General Objections, and without conceding the relevancy or admissibility of the information sought or provided, Plaintiffs respond as follows:

## RESPONSES TO NCB'S REQUESTS

1)      If you contend that NCB is subject to personal jurisdiction in the above-captioned actions based on any theory of specific jurisdiction, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that NCB is subject to the jurisdiction of this Court because it purposefully directed its activities at the United States by knowingly providing material support to al Qaeda and Osama Bin Laden with knowledge that the effects of al Qaeda's terrorists campaign would be direct towards, and felt in, the United States and because plaintiffs' claims arise out of, or relate to, the activities that were so directed.

Plaintiffs contend that at least four senior NCB officials and consultants were acting within the scope of their employment with NCB when engaged in the material support activities to Osama Bin Laden and al Qaeda. These officials were Khalid Bin Mahfouz, NCB's Chairman; Abdurahman Bin Mahfouz, the Deputy Chairman of the Executive Committee and Deputy General Manager; Mohamed Al Ali al Qari Bin Eid, a member of the Shariah Control and Implementation Committee and General Manager of the National Management Consultancy Center which founded and developed Islamic banking and investment funds for NCB; and

4

Yassin al Kadi, the founder of the Islamic Banking Unit and member of the Islamic Banking Services Committee and Chairman of the National Management Consultancy Center which founded and developed Islamic banking and investment funds for NCB. All four of these NCB officials/agents were instrumental in the founding and operating of the Muwafaq Foundation. Khalid Bin Mahfouz made a direct cash donation to Osama Bin Laden. The name Bin Mahfouz is found on at least one document found within an archive relating to the history of al Qaeda and Osama Bin Laden. Names on the document were referred to within al Qaeda as the Golden Chain. The Golden Chain financed, at least in part via charities, the founding and operations of al Qaeda as well as helped re-establish al Qaeda in Afghanistan during its relocation from Sudan.

Additionally, Plaintiffs contend that an audit, review, or other such examination of NCB which took place in the general time frame of 1998-1999, demonstrated that mechanisms had been established by NCB officials within NCB to surreptitiously funnel millions of dollars to at least three different charities that were al Qaeda supporters. These charities include: the International Islamic Relief Organization ("IIRO"); Saudi Red Crescent and the Muwafaq Foundation. The charities provided material support to al Qaeda from the time of its founding until well after the September 11, 2001 terrorist attacks.

The IIRO began providing material support to Osama Bin Laden's jihad activities in Pakistan and Afghanistan prior to the formation of al Qaeda. IIRO representatives were involved with the founding of al Qaeda and sponsored training camps in Afghanistan. IIRO also supported al Qaeda from its operations in Saudi Arabia, Sudan, Pakistan, Bangladesh, Philippines, Indonesia, Russia, and the United States. Material support to al Qaeda included financial assistance (including the channel via NCB) and logistical support such as employing al

Qaeda operatives. IIRO officials at the highest levels provided support to al Qaeda leaders such as Osama Bin Laden and the 9/11 plot's architect Khalid Sheikh Mohamed.

Further, Plaintiffs contend that for several years, the IIRO, an organization which supported al Qaeda by financial channels established and operated by NCB, and IIRO's parent the Muslim World League ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB provided financial services by holding the account to which potential donors could contribute. The Saudi Joint Relief Committee, which included the following constituent members, the Saudi Red Crescent, the Muslim World League, the International Islamic Relief Organization, the World Assembly of Muslim Youth, the Makkah Charity Trust, the al Haramain & al Masjid al Aqsa Charity and the Islamic Trust Foundation, ran fund-raising advertisements in an English-language journal widely distributed in the United States during 2000 and 2001.

The Saudi Red Crescent provided material support to Osama Bin Laden's jihad activities in Pakistan and Afghanistan prior to the formation of al Qaeda. Senior members of the Saudi Red Crescent were involved with the founding of al Qaeda. The Saudi Red Crescent was a constituent member of the Saudi Joint Relief Committee, an al Qaeda supporter in Chechnya and Kosovo.

The Muwafaq Foundation has been a supporter of al Qaeda since Muwafaq was founded in 1991. It operated in support of al Qaeda in Pakistan, Sudan, Bosnia, and Somalia among other places. At least three employees of Muwafaq have been named by the United States government as Specially Designated Global Terrorists for their activities in support of al Qaeda. The Treasury Department described the activities of Muwafaq as being "typical of the financial support network of al Qa'ida."

6

The financial services provided by NCB assisted in the growth of al Qaeda. If al Qaeda's infrastructure had not grown, then it would not have been capable of planning and executing the September 11th attacks.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH000001-160 | ASH000161-181 | ASH000182-182 | ASH000183-188 |
| ASH000189-190 | ASH000191-191 | ASH000192-192 | ASH000193-194 |
| ASH000195-268 | ASH000269-273 | ASH000274-287 | ASH000288-290 |
| ASH000291-291 | ASH000292-322 | ASH000323-325 | ASH000326-335 |
| ASH000338-342 | ASH000343-367 | ASH000368-388 | ASH000389-404 |
| ASH000405-406 | ASH000407-410 | ASH000411-419 | ASH000420-427 |
| ASH000428-463 | ASH000464-465 | ASH000466-495 | ASH000496-500 |
| ASH000501-504 | ASH000505-508 | ASH000509-509 | ASH000510-513 |
| ASH000514-579 | ASH000580-581 | ASH000582-591 | ASH000592-593 |
| ASH000594-598 | ASH000599-599 | ASH000600-604 | ASH000605-656 |
| ASH000657-740 | ASH000741-863 | ASH000864-864 | ASH000866-866 |
| ASH000867-874 | ASH000875-890 | ASH000891-896 | ASH000897-897 |
| ASH000898-898 | ASH000899-899 | ASH000900-901 | ASH000902-902 |
| ASH000903-903 | ASH000904-1013 | ASH001014-1016 | ASH001017-1023 |

| | | | |
|---|---|---|---|
| ASH001024-1046 | ASH001047-1066 | ASH001067-1072 | ASH001073-1082 |
| ASH001083-1165 | ASH001166-1168 | ASH001169-1180 | ASH001181-1248 |
| ASH001249-1250 | ASH001251-1255 | ASH001256-1260 | ASH001261-1261 |
| ASH001262-1262 | ASH001263-1267 | ASH001268-1375 | ASH001376-1412 |
| ASH001413-1997 | ASH001998-2855 | ASH002856-2859 | ASH002860-2865 |
| ASH002866-2874 | ASH002875-2881 | ASH002882-2883 | ASH002884-2898 |
| ASH002899-2922 | ASH002923-2923 | ASH002924-3012 | ASH003013-3125 |
| ASH003126-3198 | ASH003199-3200 | ASH003201-3426 | ASH003427-3427 |
| ASH003428-3433 | ASH003434-3441 | ASH003442-3444 | ASH003445-3469 |
| ASH003470-3493 | ASH003494-3495 | ASH003496-3499 | ASH003500-3617 |
| ASH003618-3620 | ASH003621-3623 | ASH003624-3624 | ASH003625-3627 |
| ASH003628-3628 | ASH003629-3635 | ASH003636-3636 | ASH003637-3681 |
| ASH003682-3690 | ASH003691-3712 | ASH003713-3714 | ASH003715-3717 |
| ASH003718-3724 | ASH003725-3726 | ASH003727-3727 | ASH003728-3731 |
| ASH003732-3739 | ASH003740-3740 | ASH003741-3744 | ASH003745-3754 |
| ASH003755-3757 | ASH003758-3759 | ASH003760-3761 | ASH003762-3771 |
| ASH003772-3775 | ASH003776-3803 | ASH003804-3805 | ASH003806-3836 |
| ASH003837-3844 | ASH003845-3851 | ASH003852-3862 | ASH003863-3865 |
| ASH003869-3870 | ASH003871-3906 | ASH003907-3908 | ASH003909-3911 |
| ASH003912-3931 | ASH003932-3933 | ASH003943-3944 | ASH003945-3945 |
| ASH003946-3951 | ASH003952-3955 | ASH003956-4105 | ASH004106-4282 |
| ASH004283-4371 | ASH004372-4373 | ASH004374-4378 | ASH004379 |
| ASH004380-4391 | ASH004392-4392 | ASH004393-4393 | ASH004394-4394 |

8

ASH004395-4395    ASH004396-4396    ASH004397-4397    ASH004398-4399

ASH004400-4412    ASH004413-4413    ASH004414-4430    ASH004431-4446

ASH004447-4454    ASH004455-4455    ASH004456-4456    ASH004457-4457

ASH004458-4458    ASH004459-4459    ASH004460-4460    ASH004461-4461

ASH004462-4462    ASH004463-4463    ASH004464-4464    ASH004465-4465

ASH004466-4466    ASH004467-4468    ASH004469-4469    ASH004470-4541

ASH004542-4563    ASH004564-4575    ASH004576-4578    ASH004579-4600

ASH004601-4608    ASH004609-4625    ASH004626-4626    ASH004627-4648

ASH004649-4652    ASH004653-4653    ASH004654-4654    ASH004655-4655

ASH004656-4656    ASH004657-4664    ASH004665-4667    ASH004668-4669

ASH004670-4741    ASH004743-4743    ASH004744-4750    ASH004752-4753

ASH004754-4755    ASH004756-4756    ASH004757-4782    ASH004783-4786

ASH004787-4790    ASH004792-4792    ASH005793-5796    ASH005797-5802

ASH006240-6241    ASH006242-6245    ASH006246-6339    ASH006340-6357

ASH006358-6381    ASH006382-6385    ASH006386-6389    ASH006390-6393

ASH006394-6403    ASH006404-6415    ASH006416-6474    ASH006475-6581

ASH006582-6590    ASH006591-6592    ASH006593-6594    ASH006595-6599

ASH010275-10316    ASH010317    ASH010318-10327    ASH010419-10511

ASH010512-10599    ASH010600    ASH010601    ASH010602-10625

ASH010626-10635    ASH010636-11335

MR_NCB000001 - 004 MR_NCB000355 - 394 MR_NCB000622- 623  MR_NCB000624- 625

MR_NCB000626- 626  MR_NCB000627- 627  MR_NCB000628- 655  MR_NCB000656- 664

MR_NCB000665- 672  MR_NCB000713- 714  MR_NCB000715- 722  MR_NCB000723- 726

MR_NCB000728- 728  MR_NCB000729- 730  MR_NCB000731- 732  MR_NCB000734- 734

MR_NCB000737- 737  MR_NCB000738- 738  MR_NCB000739- 742  MR_NCB000743- 744

MR_NCB000747- 747  MR_NCB000825- 827  MR_NCB001127-1128

MR_NCB001129 - 1170 MR_NCB001228 - 1229 MR_NCB001230 - 1232

MR_NCB001237-1238

   2)  If you contend that NCB is subject to personal jurisdiction in the above-captioned

actions based on any theory of general jurisdiction, identify the basis for that contention, and: (a)

identify all persons on whose knowledge you rely to support that contention; (b) for each such

person, identify the substance of the information within such person's knowledge or possession

on which you rely to support that contention; (c) identify all documents on which you rely to

support that contention, including any written statement or testimony of persons identified in

response to this Interrogatory; and (d) produce all documents identified in response to this

Interrogatory.

**RESPONSE:**

   Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the

extent that it seeks legal conclusions or opinions.  Plaintiffs also object to this contention

Interrogatory as premature at this stage of the proceedings and reserve their right to amend the

Response to this Interrogatory at the completion of discovery.  Plaintiffs also object to this

Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege

or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information

within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it

seeks information within NCB's own documents and/or documents NCB created or published,

and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that NCB is subject to the personal jurisdiction of this court due to NCB's continuous and systematic presence in this forum. NCB has been doing business in New York and other U.S. jurisdictions continuously for over twenty years. Immediately following the closure of NCB's branch in New York City in 1992 due to its activities in the BCCI scandal, NCB opened SNCB, which was wholly owned by NCB. SNCB was created to perform services which were previously done by NCB's branch in New York. SNCB was registered in two states, Delaware and New York. SNCB remained in business in Delaware until February of 2001 and in New York until October of 2001. SNCB managed and or supervised the contractual management of an investment portfolio on behalf of NCB. This investment activity took place in New York, Florida, Arizona, Nebraska, California, New Jersey, Michigan, Colorado, Texas, Indiana, Pennsylvania and Missouri. The investments included those managed by NCB prior to its expulsion from the U.S. in 1992 and new investments generated by both SNCB and NCB and marketed to investors in both the U.S. and abroad.

SNCB made extensive use of U.S. banks, managing its own accounts, accounts of investment companies established by NCB and SNCB and NCB's correspondent accounts in the U.S. SNCB paid federal, state and local taxes and even claimed to be 'harrassed' by the City of New York regarding a tax matter. SNCB's major investment fund, Hospitality Investment Partners was established to take advantage of the U.S. Government owned Resolution Trust Corporation's sale of properties acquired via bankruptcies in the Savings and Loan scandal.

Plaintiffs have identified at least seventeen correspondent accounts held by NCB in the United States. NCB used these corresponding accounts as part of its strategy to continue its

11

banking activities after its New York branch was closed in 1992.  After 1992, NCB internally targeted for growth its correspondent banking systems. With the very limited records available, Plaintiffs note that tens of millions of dollars worth of business went through these accounts. The accounts were not only used for the convenience of NCB's customers but to perform transactions related to NCB's own business and investments.  Extensive use was made of a correspondent account by NCB's subsidiary SNCB, in order to transfer profits generated by NCB investments in the United States to NCB itself in Saudi Arabia.  Plaintiffs intend to rely, inter alia, upon NCB's correspondent banking activity as a basis for the exercise of personal jurisdiction over NCB based on a theory of general jurisdiction.

Further, NCB and/or its subsidiary SNCB did business in the United States and abroad via other controlled subsidiaries registered in the U.S.  These subsidiaries included Euram Group Ltd., Sedco Services, Inc., MBKS Inc., MBKS II Inc., MBKS III Inc., U.S. Second I.R.E. Management Corp., Medical Equipment Leasing Partners, U.S. Tampa Management II Corp., Eidetics International, Inc., Southwest Airport Services Inc., Global FBO Holdings Inc., Ellington MTA, Inc., and Mid-East Jet, Inc.

NCB's Saudi Arabia based aviation department has six aircraft and seven airmen registered in the United States.  The planes used U.S. airspace on a regular basis.  One of these airmen was under investigation by the U.S. Customs Department for financial links to a 9/11 hijacker.

The investment portfolio of stocks owned by NCB included up to $281 million of investments acquired in U.S. financial markets.  NCB manages 8 investment funds on behalf of investors.  These funds maintain investments of up to $400 million in U.S. equities and bonds. NCB used the services of at least 12 contracted service providers to do its business in the U.S.

NCB made loans and issued letters of credit in the U.S. and to U.S. corporations for business activities in the U.S. NCB paid over $4 million in New Jersey and New York City property taxes. NCB sent managers for training to the U.S.

Additionally, NCB funded the study of Islamic Banking at Harvard University and recruited staff at Harvard University. NCB maintained membership in the Arab Bankers Association of North America.

Plaintiffs contend that the activities of SNCB can be imputed to its parent NCB due to the following. SNCB is 100% owned by NCB. All of its income came from NCB. NCB developed, approved and sent to SNCB, SNCB's annual budget. NCB advised SNCB regarding SNCB's U.S. tax liability. NCB directed SNCB's use of office premises in New York City. SNCB requested NCB's approval for major and minor decisions, including such decisions as whether to make a swimming pool improvement on one of their hotel properties in Marion, Indiana and whether they should renew a Standard & Poor's weekly report subscription. NCB's auditor considered SNCB to be an integral part of NCB. SNCB registered with the City of New York as the representative office of NCB.

All SNCB personnel were either NCB employees prior to the founding of SNCB in 1992 or were directed to be hired by NCB. During the period SNCB was in New York, Frederik Crawford was the head of NCB Investment Services Division, a vice-president of and Director of NCB and simultaneously the chairman of SNCB. NCB's Investment Services Division, during Crawford's tenure as head, hired Yasin al Kadi and his consulting group, the National Management Consultancy Center to develop Islamic Investment funds. Crawford was reportedly 'wildly enthusiastic' about these funds. Crawford held signatory authority over 26 NCB bank accounts and/or NCB's subsidiaries accounts at Chase Manhattan Bank in New York.

Crawford appointed SNCB's board. Crawford's salary was paid by SNCB. John Bouckley was the Vice-President of NCB NY and became President of SNCB upon its founding. His employment contract was written by NCB. He served as a member of the NCB Investment Committee. His job description as written by NCB, involves activities only on behalf of NCB and he reported to two positions, the Chairman of SNCB and the Director of the NCB Investment Services Division. Both positions were held by Frederik Crawford. According to Bouckley's job description his impact upon the image and success of the NCB Investment Services Division was broad. Thomas Krohley was an NCB employee who succeeded Bouckley as SNCB President. He had the same reporting structure and job description. SNCB was directed by NCB to terminate its activities and was referred to within NCB as its "NY Office." Krohley who was an employee of SNCB in 2000 when the directive from NCB was given to close the office, later had a renewable consultancy contract with NCB to continue winding-up SNCB. He was based from his U.S. home and simultaneously was the chair of the NCB Investment Committee in Saudi Arabia. Ginger Pensa was an NCB employee who carried on working for SNCB upon its founding. In 2000-2001 at the winding up of SNCB, Pensa and Krohley were paid severance pay based upon their years of service for both SNCB and NCB. Pensa also continued to work for NCB and based from her U.S. home under a renewable consultancy contract during the winding-up of SNCB.

Plaintiffs contend that NCB was a party to over twenty different lawsuits. Additionally, Plaintiffs intend to rely upon NCB's advertising and litigation activity as contributing to providing a basis for the exercise of personal jurisdiction over NCB based on a theory of general jurisdiction. Plaintiffs contend that for several years, the IIRO, an organization which supported al Qaeda by financial channels established and operated by NCB, and IIRO's

14

parent the Muslim World League ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB provided financial services by holding the account to which potential donors could contribute. The Saudi Joint Relief Committee, which included the following constituent members, the Saudi Red Crescent, the Muslim World League, the International Islamic Relief Organization, the World Assembly of Muslim Youth, the Makkah Charity Trust, the al Haramain & al Masjid al Aqsa Charity and the Islamic Trust Foundation, ran fund-raising advertisements in an English-language journal widely distributed in the United States during 2000 and 2001. NCB provided the financial services by holding the account to which potential donors could contribute. Between 1995 and 1998, the Organization of Islamic Countries' Islamic Solidarity Fund ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB held the account to which potential donors could contribute.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH006240-6241 | ASH006600-6603 | ASH006604-6614 | ASH006615-6621 |
| ASH006622-6625 | ASH006626-6638 | ASH006639-6649 | ASH006650-6651 |
| ASH006652-6657 | ASH006658-6714 | ASH006715-6721 | ASH006722-6728 |
| ASH006729-6736 | ASH006737-6757 | ASH006758-6783 | ASH006784-6795 |
| ASI1006796-6814 | | | |

ASH006815-6816     ASH006817-6827     ASH006828-6837     ASH006838-6922

ASH006923-6964     ASH006965-7176     ASH007177-7185     ASH007186-7248

ASH007249-7251     ASH007252-7253     ASH007254-7254     ASH007255-7358

ASH007359-7893     ASH007895-7981     ASH007982-8003     ASH008004-8029

ASH008030-8993     ASH008994-9004     ASH009005-9023     ASH009024-9265

ASH009266-9268     ASH009269-9316     ASH009317-9321     ASH009322-9367

ASH009368-9579     ASH009580-9596     ASH009597-9598     ASH009599-9599

ASH009600-9606     ASH009607-9951     ASH009952-10005    ASH010006-10037

ASH010038-10047    ASH010048-10051    ASH010052-10100    ASH010101-10140

ASH010141-10274    ASH010318-10327    ASH010328-10335    ASH010336-10360

ASH010361-10371    ASH010372-10418    ASH010626-10635

MR_NCB000001 - 004 MR_NCB000343 - 354 MR_NCB000355 - 394 MR_NCB000439-492

MR_NCB000525 - 545 MR_NCB000622- 623  MR_NCB000624- 625  MR_NCB000626-626

MR_NCB000627- 627  MR_NCB000628- 655  MR_NCB000656- 664  MR_NCB000665-672

MR_NCB000673- 680  MR_NCB000681- 712  MR_NCB000713- 714  MR_NCB000715- 722

MR_NCB000723- 726  MR_NCB000727- 727  MR_NCB000728- 728  MR_NCB000729- 730

MR_NCB000731- 732  MR_NCB000733- 733  MR_NCB000734- 734  MR_NCB000735- 735

MR_NCB000736- 736  MR_NCB000737- 737  MR_NCB000738- 738  MR_NCB000739- 742

MR_NCB000743- 744  MR_NCB000745- 746  MR_NCB000747- 747  MR_NCB000748- 781

MR_NCB000786- 809  MR_NCB000823- 824  MR_NCB000825- 827  MR_NCB000828- 833

MR_NCB000841- 844  MR_NCB000845- 847  MR_NCB000848- 848  MR_NCB000849- 849

MR_NCB000850- 850  MR_NCB000861- 865  MR_NCB000866- 871  MR_NCB000872- 873

MR_NCB000874- 882 MR_NCB000883- 887 MR_NCB000888- 890 MR_NCB000891- 897

MR_NCB000898- 898 MR_NCB000899- 899 MR_NCB000900- 900 MR_NCB000901- 901

MR_NCB000902- 902 MR_NCB000903- 915 MR_NCB000916- 916 MR_NCB000917- 921

MR_NCB000922- 938 MR_NCB000939- 979 MR_NCB000980- 996 MR_NCB001014 - 1030

MR_NCB001031 - 1040 MR_NCB001045 - 1048 MR_NCB001049 - 1065

MR_NCB001072 - 1113 MR_NCB001127 - 1128 MR_NCB001235 - 1236

MR_NCB001237 - 1238 MR_NCB001239 - 1239 MR_NCB001240 - 1241

3)      If you contend that NCB knowingly provided material support to Al Qaeda and or Osama bin Laden to aid the 9/11 Attacks, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it

17

seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs incorporate their response to Request 1. Plaintiffs contend that NCB provided support to al Qaeda and/or Osama Bin Laden knowing that al Qaeda and/or Osama Bin Laden intended to attack America or Americans, and therefore contributed to the 9/11 Terrorist Attacks. The financial services provided by NCB assisted in the growth of al Qaeda. If al Qaeda's infrastructure had not grown, then it would not have been capable of planning and executing the September 11th attacks.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH000496-500 | ASH000501-504 | ASH000904-1013 | ASH001413-1997 |
| ASH001998-2855 | ASH003727 | ASH006009-6012 | ASH006382-6385 |
| ASH006386-6389 | ASH006390-6393 | ASH006394-6403 | ASH006404-6415 |
| ASH006416-6475 | ASH006475-6581 | ASH006582-6590 | ASH006591-6592 |
| ASH006593-6594 | ASH006595-6599 | ASH010512-10599 | ASH010600 |
| ASH010601 | ASH010602-10625 | ASH010626-10635 | ASH010636-11335 |

MR_NCB000001 - 004 MR_NCB000005 - 006 MR_NCB000007 - 008 MR_NCB000009 - 010

MR_NCB000011 - 264 MR_NCB000265 - 296 MR_NCB000313 - 318 MR_NCB000319 - 321

MR_NCB000322 - 330 MR_NCB000331 - 334 MR_NCB000335 - 336 MR_NCB000337 - 338
MR_NCB000339 - 341 MR_NCB000342 - 342 MR_NCB000394 - 434 MR_NCB000435 - 436
MR_NCB000437 - 438 MR_NCB000493- 520  MR_NCB000521- 524  MR_NCB000546- 547
MR_NCB000548- 548  MR_NCB000556- 618  MR_NCB000782- 782  MR_NCB000783- 785
MR_NCB000851- 853  MR_NCB000854- 854  MR_NCB000855- 857  MR_NCB000858- 860
MR_NCB000997- 1013  MR_NCB001940 - 2024

4)      If you contend that any audit or examination of the National Commercial Bank of
Saudi Arabia, in the general time of 1998 or later, reveals that NCB knowingly participated in
the financing of charities related to Osama bin Laden and or al Qaeda, identify the basis for that
contention, and: (a) identify all persons on whose knowledge you rely to support that contention;
(b) for each such person, identify the substance of the information within such person's
knowledge or possession on which you rely to support that contention; (c) identify all documents
on which you rely to support that contention, including any written statement or testimony of
persons identified in response to this Interrogatory; and (d) produce all documents identified in
response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the
extent that it seeks legal conclusions or opinions.  Plaintiffs also object to this contention
Interrogatory as premature at this stage of the proceedings and reserve their right to amend the
Response to this Interrogatory at the completion of discovery.  Plaintiffs also object to this
Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege
or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information
within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it

19

seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that an audit, review or other such examination of NCB which took place in the general time frame of 1998-1999, demonstrated that mechanisms had been established by NCB officials within NCB to surreptitiously funnel millions of dollars to at least three charities which were supporters of al Qaeda.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH000505-508       ASH006240-6241       ASH006242-6245       ASH006246-6339
ASH010275-10316

MR_NCB000331 - 334 MR_NCB000435 - 436 MR_NCB000783- 785
MR_NCB000837- 840 MR_NCB001171 - 1171 MR_NCB001233 - 1234
MR_NCB001266 - 1882

5)      If you contend that NCB knowingly facilitated or otherwise engaged in fund transfers to charities that supported Osama bin Laden and or al Qaeda, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents

on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that the International Islamic Relief Organization (IIRO), the Muwafaq Foundation or the Saudi Red Crescent have provided material support to al Qaeda from the time of their founding until well after the 9/11 terrorist attacks. IIRO began providing material support to Osama Bin Laden's jihad activities in Pakistan and Afghanistan prior to the formation of al Qaeda. IIRO representatives were involved with the founding of al Qaeda and sponsored training camps in Afghanistan. IIRO also supported al Qaeda from its operations in Saudi Arabia, Sudan, Pakistan, Bangladesh, Philippines, Indonesia, Russia, and the United States. Material support to al Qaeda included financial assistance (including the channel via NCB) and logistical support such as employing al Qaeda operatives. IIRO officials at the highest levels

provided support to al Qaeda leaders such as Osama Bin Laden and the 9/11 plot's architect Khalid Sheikh Mohamed.

The Saudi Red Crescent provided material support to Osama Bin Laden's jihad activities in Pakistan and Afghanistan prior to the formation of al Qaeda. Senior members of the Saudi Red Crescent were involved with the founding of al Qaeda. The Saudi Red Crescent was a constituent member of the Saudi Joint Relief Committee, an al Qaeda supporter in Chechnya and Kosovo.

The Muwafaq Foundation has been a supporter of al Qaeda since Muwafaq was founded in 1991. It operated in support of al Qaeda in Pakistan, Sudan, Bosnia, and Somalia among other places. At least three employees of Muwafaq have been named by the United States government as Specially Designated Global Terrorists for their activities in support of al Qaeda. The Treasury Department described the activities of Muwafaq as being "typical of the financial support network of al Qa'ida."

Khalid Bin Mahfouz, NCB's Chairman; Abdurahman Bin Mahfouz, the Deputy Chairman of the Executive Committee and Deputy General Manager; Mohamed Al Ali al Qari Bin Eid, a member of the Shariah Control and Implementation Committee and General Manager of the National Management Consultancy Center which founded and developed Islamic banking and investment funds for NCB; and Yassin al Kadi, the founder of the Islamic Banking Unit and member of the Islamic Banking Services Committee and Chairman of the National Management Consultancy Center which founded and developed Islamic banking and investment funds for NCB; were all acting within the scope of their employment with NCB when they engaged in the material support activities to Osama Bin Laden and al Qaeda. All four of these people were instrumental in the founding and operating of the Muwafaq Foundation.

These four officials used their position at NCB to allow financial transfers to the charity-fronts. Additionally, these charity-fronts ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB provided financial services support by holding the account to which potential donors could contribute.

Khalid Bin Mahfouz made a direct cash donation to Osama Bin Laden. The name Bin Mahfouz is found on at least one document found within an archive relating to the history of al Qaeda and Osama Bin Laden. Names on the document were referred to within al Qaeda as the Golden Chain. The Golden Chain financed, at least in part via charities, the founding and operations of al Qaeda as well as helped re-establish al Qaeda in Afghanistan during its relocation from Sudan.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH000001-160 | ASH000161-181 | ASH000182-182 | ASH000183-188 |
| ASH000189-190 | ASH000191-191 | ASH000192-192 | ASH000193-194 |
| ASH000195-268 | ASH000269-273 | ASH000274-287 | ASH000288-290 |
| ASH000291-291 | ASH000292-322 | ASH000323-325 | ASH000326-335 |
| ASH000338-342 | ASH000343-367 | ASH000368-388 | ASH000389-404 |
| ASH000405-406 | ASH000407-410 | ASH000411-419 | ASH000420-427 |
| ASH000428-463 | ASH000464-465 | ASH000466-495 | ASH000496-500 |

| | | | |
|---|---|---|---|
| ASH000501-504 | ASH000505-508 | ASH000509-509 | ASH000510-513 |
| ASH000514-579 | ASH000580-581 | ASH000582-591 | ASH000592-593 |
| ASH000594-598 | ASH000599-599 | ASH000600-604 | ASH000605-656 |
| ASH000657-740 | ASH000741-863 | ASH000864-864 | ASH000866-866 |
| ASH000867-874 | ASH000875-890 | ASH000891-896 | ASH000897-897 |
| ASH000898-898 | ASH000899-899 | ASH000900-901 | ASH000902-902 |
| ASH000903-903 | ASH000904-1013 | ASH001014-1016 | ASH001017-1023 |
| ASH001024-1046 | ASH001047-1066 | ASH001067-1072 | ASH001073-1082 |
| ASH001083-1165 | ASH001166-1168 | ASH001169-1180 | ASH001181-1248 |
| ASH001249-1250 | ASH001251-1255 | ASH001256-1260 | ASH001261-1261 |
| ASH001262-1262 | ASH001263-1267 | ASH001268-1375 | ASH001376-1412 |
| ASH001413-1997 | ASH001998-2855 | ASH002856-2859 | ASH002860-2865 |
| ASH002866-2874 | ASH002875-2881 | ASH002882-2883 | ASH002884-2898 |
| ASH002899-2922 | ASH002923-2923 | ASH002924-3012 | ASH003013-3125 |
| ASH003126-3198 | ASH003199-3200 | ASH003201-3426 | ASH003427-3427 |
| ASH003428-3433 | ASH003434-3441 | ASH003442-3444 | ASH003445-3469 |
| ASH003470-3493 | ASH003494-3495 | ASH003496-3499 | ASH003500-3617 |
| ASH003618-3620 | ASH003621-3623 | ASH003624-3624 | ASH003625-3627 |
| ASH003628-3628 | ASH003629-3635 | ASH003636-3636 | ASH003637-3681 |
| ASH003682-3690 | ASH003691-3712 | ASH003713-3714 | ASH003715-3717 |
| ASH003718-3724 | ASH003725-3726 | ASH003727-3727 | ASH003728-3731 |
| ASH003732-3739 | ASH003740-3740 | ASH003741-3744 | ASH003745-3754 |
| ASH003755-3757 | ASH003758-3759 | ASH003760-3761 | ASH003762-3771 |

| | | | |
|---|---|---|---|
| ASH003772-3775 | ASH003776-3803 | ASH003804-3805 | ASH003806-3836 |
| ASH003837-3844 | ASH003845-3851 | ASH003852-3862 | ASH003863-3865 |
| ASH003869-3870 | ASH003871-3906 | ASH003907-3908 | ASH003909-3911 |
| ASH003912-3931 | ASH003932-3933 | ASH003943-3944 | ASH003945-3945 |
| ASH003946-3951 | ASH003952-3955 | ASH003956-4105 | ASH004106-4282 |
| ASH004283-4371 | ASH004372-4373 | ASH004374-4378 | ASH004379 |
| ASH004380-4391 | ASH004392-4392 | ASH004393-4393 | ASH004394-4394 |
| ASH004395-4395 | ASH004396-4396 | ASH004397-4397 | ASH004398-4399 |
| ASH004400-4412 | ASH004413-4413 | ASH004414-4430 | ASH004431-4446 |
| ASH004447-4454 | ASH004455-4455 | ASH004456-4456 | ASH004457-4457 |
| ASH004458-4458 | ASH004459-4459 | ASH004460-4460 | ASH004461-4461 |
| ASH004462-4462 | ASH004463-4463 | ASH004464-4464 | ASH004465-4465 |
| ASH004466-4466 | ASH004467-4468 | ASH004469-4469 | ASH004470-4541 |
| ASH004542-4563 | ASH004564-4575 | ASH004576-4578 | ASH004579-4600 |
| ASH004601-4608 | ASH004609-4625 | ASH004626-4626 | ASH004627-4648 |
| ASH004649-4652 | ASH004653-4653 | ASH004654-4654 | ASH004655-4655 |
| ASH004656-4656 | ASH004657-4664 | ASH004665-4667 | ASH004668-4669 |
| ASH004670-4741 | ASH004743-4743 | ASH004744-4750 | ASH004752-4753 |
| ASH004754-4755 | ASH004756-4756 | ASH004757-4782 | ASH004783-4786 |
| ASH004787-4790 | ASH004792-4792 | ASH005793-5796 | ASH005797-5802 |
| ASH006240-6241 | ASH006242-6245 | ASH006246-6339 | ASH006340-6357 |
| ASH006358-6381 | ASH006382-6385 | ASH006386-6389 | ASH006390-6393 |
| ASH006394-6403 | ASH006404-6415 | ASH006416-6474 | ASH006475-6581 |

ASH006582-6590    ASH006591-6592    ASH006593-6594    ASH006595-6599

ASH010275-10316   ASH010317    ASH010419-10511    ASH010636-11335

MR_NCB000001 - 004 MR_NCB000005 - 006 MR_NCB000007- 008

MR_NCB000009 - 010 MR_NCB000011 - 264 MR_NCB000265 - 296

MR_NCB000310 - 312 MR_NCB000313 - 318 MR_NCB000319 - 321

MR_NCB000322 - 330 MR_NCB000331 - 334 MR_NCB000335 - 336

MR_NCB000337 - 338 MR_NCB000339 - 341 MR_NCB000342 - 342

MR_NCB000394 - 434MR_NCB000435 - 436 MR_NCB000437- 438

MR_NCB000493- 520 MR_NCB000521- 524  MR_NCB000546-547

MR_NCB000548- 548 MR_NCB000549- 555 MR_NCB000556- 618

MR_NCB000619- 621 MR_NCB000782- 782 MR_NCB000783- 785

MR_NCB000810- 810 MR_NCB000811- 822 MR_NCB000834- 836

MR_NCB000837- 840 MR_NCB000841- 844 MR_NCB000851- 853

MR_NCB000854- 854 MR_NCB000855- 857 MR_NCB000858- 860

MR_NCB000997- 1013 MR_NCB001041 - 1044 MR_NCB001066 - 1071

MR_NCB001114 - 1115 MR_NCB001116 - 1126 MR_NCB001127-1128

MR_NCB001237-1238  MR_NCB001172 - 1174

MR_NCB001175 - 1227 MR_NCB001233 - 1234 MR_NCB001242 - 1242

MR_NCB001243 - 1243 MR_NCB001244 - 1246 MR_NCB001908 - 1928

MR_NCB001929 - 1931 MR_NCB001932 - 1933 MR_NCB001934 - 1936

MR_NCB001937 - 1939 MR_NCB001940 - 2024 MR_NCB002025 - 2114

6)      If you contend that NCB was used by Osama bin Laden and al Qaeda as a

financial arm, operating as a financial conduit for Osama bin Laden's operations, identify the

basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that NCB provided financial services and support and was a financial conduit to al Qaeda and Osama Bin Laden. As described above in Response 5, Plaintiffs contend that the International Islamic Relief Organization (IIRO), the Muwafaq Foundation or the Saudi Red Crescent have provided material support to al Qaeda and Osama Bin Laden through NCB from the time of its founding until well after the 9/11 terrorist attacks.

27

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH000001-160 | ASH000161-181 | ASH000182-182 | ASH000183-188 |
| ASH000189-190 | ASH000191-191 | ASH000192-192 | ASH000193-194 |
| ASH000195-268 | ASH000269-273 | ASH000274-287 | ASH000288-290 |
| ASH000291-291 | ASH000292-322 | ASH000323-325 | ASH000326-335 |
| ASH000338-342 | ASH000343-367 | ASH000368-388 | ASH000389-404 |
| ASH000405-406 | ASH000407-410 | ASH000411-419 | ASH000420-427 |
| ASH000428-463 | ASH000464-465 | ASH000466-495 | ASH000496-500 |
| ASH000501-504 | ASH000505-508 | ASH000509-509 | ASH000510-513 |
| ASH000514-579 | ASH000580-581 | ASH000582-591 | ASH000592-593 |
| ASH000594-598 | ASH000599-599 | ASH000600-604 | ASH000605-656 |
| ASH000657-740 | ASH000741-863 | ASH000864-864 | ASH000866-866 |
| ASH000867-874 | ASH000875-890 | ASH000891-896 | ASH000897-897 |
| ASH000898-898 | ASH000899-899 | ASH000900-901 | ASH000902-902 |
| ASH000903-903 | ASH000904-1013 | ASH001014-1016 | ASH001017-1023 |
| ASH001024-1046 | ASH001047-1066 | ASH001067-1072 | ASH001073-1082 |
| ASH001083-1165 | ASH001166-1168 | ASH001169-1180 | ASH001181-1248 |
| ASH001249-1250 | ASH001251-1255 | ASH001256-1260 | ASH001261-1261 |

| | | | |
|---|---|---|---|
| ASH001262-1262 | ASH001263-1267 | ASH001268-1375 | ASH001376-1412 |
| ASH001413-1997 | ASH001998-2855 | ASH002856-2859 | ASH002860-2865 |
| ASH002866-2874 | ASH002875-2881 | ASH002882-2883 | ASH002884-2898 |
| ASH002899-2922 | ASH002923-2923 | ASH002924-3012 | ASH003013-3125 |
| ASH003126-3198 | ASH003199-3200 | ASH003201-3426 | ASH003427-3427 |
| ASH003428-3433 | ASH003434-3441 | ASH003442-3444 | ASH003445-3469 |
| ASH003470-3493 | ASH003494-3495 | ASH003496-3499 | ASH003500-3617 |
| ASH003618-3620 | ASH003621-3623 | ASH003624-3624 | ASH003625-3627 |
| ASH003628-3628 | ASH003629-3635 | ASH003636-3636 | ASH003637-3681 |
| ASH003682-3690 | ASH003691-3712 | ASH003713-3714 | ASH003715-3717 |
| ASH003718-3724 | ASH003725-3726 | ASH003727-3727 | ASH003728-3731 |
| ASH003732-3739 | ASH003740-3740 | ASH003741-3744 | ASH003745-3754 |
| ASH003755-3757 | ASH003758-3759 | ASH003760-3761 | ASH003762-3771 |
| ASH003772-3775 | ASH003776-3803 | ASH003804-3805 | ASH003806-3836 |
| ASH003837-3844 | ASH003845-3851 | ASH003852-3862 | ASH003863-3865 |
| ASH003869-3870 | ASH003871-3906 | ASH003907-3908 | ASH003909-3911 |
| ASH003912-3931 | ASH003932-3933 | ASH003943-3944 | ASH003945-3945 |
| ASH003946-3951 | ASH003952-3955 | ASH003956-4105 | ASH004106-4282 |
| ASH004283-4371 | ASH004372-4373 | ASH004374-4378 | ASH004379 |
| ASH004380-4391 | ASH004392-4392 | ASH004393-4393 | ASH004394-4394 |
| ASH004395-4395 | ASH004396-4396 | ASH004397-4397 | ASH004398-4399 |
| ASH004400-4412 | ASH004413-4413 | ASH004414-4430 | ASH004431-4446 |
| ASH004447-4454 | ASH004455-4455 | ASH004456-4456 | ASH004457-4457 |

| ASH004458-4458 | ASH004459-4459 | ASH004460-4460 | ASH004461-4461 |
| ASH004462-4462 | ASH004463-4463 | ASH004464-4464 | ASH004465-4465 |
| ASH004466-4466 | ASH004467-4468 | ASH004469-4469 | ASH004470-4541 |
| ASH004542-4563 | ASH004564-4575 | ASH004576-4578 | ASH004579-4600 |
| ASH004601-4608 | ASH004609-4625 | ASH004626-4626 | ASH004627-4648 |
| ASH004649-4652 | ASH004653-4653 | ASH004654-4654 | ASH004655-4655 |
| ASH004656-4656 | ASH004657-4664 | ASH004665-4667 | ASH004668-4669 |
| ASH004670-4741 | ASH004743-4743 | ASH004744-4750 | ASH004752-4753 |
| ASH004754-4755 | ASH004756-4756 | ASH004757-4782 | ASH004783-4786 |
| ASH004787-4790 | ASH004792-4792 | ASH005793-5796 | ASH005797-5802 |
| ASH006240-6241 | ASH006242-6245 | ASH006246-6339 | ASH006340-6357 |
| ASH006358-6381 | ASH006382-6385 | ASH006386-6389 | ASH006390-6393 |
| ASH006394-6403 | ASH006404-6415 | ASH006416-6474 | ASH006475-6581 |
| ASH006582-6590 | ASH006591-6592 | ASH006593-6594 | ASH006595-6599 |

ASH010275-10316    ASH010317

MR_NCB000001 - 004 MR_NCB000005 - 006 MR_NCB000007 - 008

MR_NCB000009 - 010 MR_NCB000011 - 264 MR_NCB000265 - 296

MR_NCB000310 - 312 MR_NCB000313 - 318 MR_NCB000319 - 321

MR_NCB000322 - 330 MR_NCB000331 - 334 MR_NCB000335 - 336

MR_NCB000337 - 338 MR_NCB000339 - 341 MR_NCB000342 - 342

MR_NCB000394 - 434 MR_NCB000435 - 436 MR_NCB000437 - 438

MR_NCB000493- 520 MR_NCB000521- 524   MR_NCB000546- 547

MR_NCB000548- 548 MR_NCB000549- 555   MR_NCB000556- 618

MR_NCB000619- 621 MR_NCB000782- 782 MR_NCB000783- 785 MR_NCB000810- 810

MR_NCB000811- 822 MR_NCB000834- 836 MR_NCB000837- 840 MR_NCB000841- 844

MR_NCB000851- 853 MR_NCB000854- 854 MR_NCB000855- 857 MR_NCB000858- 860

MR_NCB000997- 1013 MR_NCB001041 - 1044 MR_NCB001066 - 1071

MR_NCB001114 - 1115 MR_NCB001116 - 1126 MR_NCB001172 - 1174

MR_NCB001175 - 1227 MR_NCB001233 - 1234 MR_NCB001242 - 1242

MR_NCB001243 - 1243 MR_NCB001244 - 1246 MR_NCB001908 - 1928

MR_NCB001929 - 1931 MR_NCB001932 - 1933 MR_NCB001934 - 1936

MR_NCB001937 - 1939 MR_NCB001940 - 2024 MR_NCB002025 - 2114

7)      To the extent not encompassed by Interrogatories 3 through 6, if you contend that NCB intentionally or knowingly supported terrorists whose express aim was to cause injury in the U.S., identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions.  Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery.  Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege

31

or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

MR_NCB000001 - 004 MR _NCB000005 - 006 MR_NCB000007 - 008 MR_NCB000009 - 010
MR_NCB000011 - 264 MR_NCB000265 - 296 MR_NCB000310 - 312 MR_NCB000313 - 318
MR_NCB000319 - 321 MR_NCB000322 - 330 MR_NCB000331 - 334 MR_NCB000335 - 336
MR_NCB000337 - 338 MR_NCB000339 - 341 MR_NCB000342 - 342 MR_NCB000394 - 434
MR_NCB000435 - 436 MR_NCB000437 - 438 MR_NCB000493- 520 MR_NCB000521- 524
MR_NCB000546- 547 MR_NCB000548- 548 MR_NCB000549- 555 MR_NCB000556- 618
MR_NCB000619- 621 MR_NCB000782- 782 MR_NCB000783- 785 MR_NCB000810- 810
MR_NCB000811- 822 MR_NCB000834- 836 MR_NCB000837- 840 MR_NCB000841- 844
MR_NCB000851- 853 MR_NCB000854- 854 MR_NCB000855- 857 MR_NCB000858- 860
MR_NCB000997- 1013 MR_NCB001041 - 1044 MR_NCB001066 - 1071
MR_NCB001114 - 1115 MR_NCB001116 - 1126 MR_NCB001172 - 1174
MR_NCB001175 - 1227 MR_NCB001233 - 1234 MR_NCB001242 - 1242

MR_NCB001243 - 1243 MR_NCB001244 - 1246 MR_NCB001908 - 1928

MR_NCB001929 - 1931 MR_NCB001932 - 1933 MR_NCB001934 - 1936

MR_NCB001937 - 1939 MR_NCB001940 - 2024 MR_NCB002025 - 2114

8)     If you contend that any correspondent account(s) held by NCB with any United States bank(s) provide(s) a basis for the exercise of personal jurisdiction over NCB in the above captioned actions, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs have identified at least seventeen correspondent accounts held by NCB in the United States. NCB used these corresponding accounts as part of its strategy to continue its banking activities

33

after its New York branch was expelled from the United States in 1992.   After 1992, NCB internally targeted for growth its correspondent banking systems.   Plaintiffs note that tens of millions of dollars worth of business went through these accounts.   The accounts were not only used for the convenience of NCB's customers but to perform transactions related to NCB's own business and investments.   Extensive use was made of a correspondent account by NCB's subsidiary SNCB, in order to transfer profits generated by NCB investments in the United States to NCB itself in Saudi Arabia.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH09317-9321

MR_NCB000005 - 006 MR_NCB000548- 548 MR_NCB001045 - 1048

MR_NCB001066 - 1071


9)      If you contend that any advertisement(s) placed in U.S. publications provide(s) a basis for the exercise of personal jurisdiction over NCB in the above-captioned actions, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

34

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that for several years, the IIRO, a organization which supported al Qaeda in part through financial channels established and operated by NCB and IIRO's parent the Muslim World League ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB held the account to which potential donors could contribute. The Saudi Joint Relief Committee, which included the following constituent members, the Saudi Red Crescent, the Muslim World League, the International Islamic Relief Organization, the World Assembly of Muslim Youth, the Makkah Charity Trust, the al Haramain & al Masjid al Aqsa Charity and the Islamic Trust Foundation, ran fund-raising advertisements in an English-language journal widely distributed in the United States during 2000 and 2001. NCB held the account to which potential donors could contribute. Between 1995 and 1998, the Organization of Islamic Countries' Islamic Solidarity Fund ran fund-raising advertisements in an English-language journal widely distributed in the United States. NCB held the account to which potential donors could contribute.

35

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH010318-10327

MR_NCB000786- 809 MR_NCB001127 - 1128 MR_NCB001235 - 1236

MR_NCB001237 - 1238

10)      If you contend that NCB's participation in other U.S. litigation provides a basis for the exercise of personal jurisdiction over NCB in the above-captioned actions, identify the basis for that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory. Your response to this interrogatory should include, without limitation, the caption, case number and court of each lawsuit for which you allege that NCB's participation provides a basis for the exercise of jurisdiction over NCB in the above-captioned actions.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions.  Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the

36

completion of discovery.  Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any

information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for

an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not

produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB

created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the

public domain.  Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that NCB was a party in the following U.S. litigation:

SDNY 1:92-cv-3269-LLS, National Commercial Bank v Schuster et al.;

SDNY 93-cv-0687 National Commercial Bank v Schuster et al.;

EDMI 95cv75764, SNCB v Schuster;

SDFL 95-cv-7097 SNCB Corporate Finance v. Schuster et al.;

2nd Circuit 95-7013 SNCB Corporate Finance v Schuster et al.;

SDNY 1:94-cv-3167-DC NCB v. Morgan Stanley Asset Management;

SDNY 95-cv-09758 Red Sea Tanker Fund v Chase Manhattan;

NY County 91-5447 NCB v. Akorp;

US Bankruptcy SDNY In re: AKORP, N.V. 96-B-40367(CB);

NY County 95-110444 NCB v. Javier Vial;

NY County 95-126298 EII Investments Ltd v Eidetics International;

SDNY US Bankruptcy Court 00-41010 In Re: Eidetics International, Inc.

NY County 98-6009 MBKS Inc v. Stumetal;

NJ Sup Ct 99-1137 NCB v. John Hanly;

NJ Sup Court 06-2691 MBKS et al v Reddy;

Delaware Chancery 05 1853-N MBKS et al v Reddy;

Colorado Arapahoe Cty, 99cv237  Denver Hotel v Arapahoe Hospitality;

SDNY 96-cv-8446 Global Resources v NCB;

DCDC 1:92-cv-2763-JHG BCCI Holdings (Luxembourg) v KB Mahfouz et al.;

EDMI 2:92-cv-71157-PVG Schuster, et al. v Denney et al.; and

SDTX 4:94-cv-729 Bath v. National Commercial Bank et al..

Plaintiffs intend to rely upon NCB's litigation activity as contributing to providing a basis for the exercise of personal jurisdiction over NCB based on a theory of general jurisdiction.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH006838-6922        ASH006923-6964        ASH007359-7893

MR_NCB000493- 520 MR_NCB000861- 865 MR_NCB000866- 871 MR_NCB000872- 873

MR_NCB000874- 882 MR_NCB000883- 887 MR_NCB000888- 890 MR_NCB000891- 897

MR_NCB000898- 898 MR_NCB000899- 899 MR_NCB000900- 900 MR_NCB000901- 901

MR_NCB000902- 902 MR_NCB000903- 915 MR_NCB000916- 916 MR_NCB000917- 921

MR_NCB000922- 938 MR_NCB001014 - 1030 MR_NCB001031 - 1040

MR_NCB001049 - 1065

11)    If you contend that the presence or activities of an NCB branch office in New York provides a basis for the exercise of personal jurisdiction over NCB in the above-captioned actions, identify each act, event, contact or other fact on which you rely to support that contention, and: (a) identify all

persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that SNCB's activities in the U.S. which contribute to exercising personal jurisdiction include the following: Immediately following the closure of NCB's New York City branch in 1992 due to its activities in the BCCI scandal, NCB opened SNCB, which was wholly owned by NCB. SNCB was created to perform services which were previously done by NCB's branch in New York. SNCB was registered in two states, Delaware and New York. SNCB remained in business in Delaware until February, 2001 and in New York until October, 2001. SNCB managed and or supervised the contractual management of an investment portfolio on behalf of NCB. This investment activity took place in New York, Florida, Arizona, Nebraska, California, New Jersey, Michigan, Colorado, Texas,

Indiana, Pennsylvania and Missouri. The investments included those managed by NCB prior to its

expulsion from the U.S. in 1992 and new investments generated by SNCB and NCB and marketed to

investors in both the U.S. and abroad. SNCB made extensive use of U.S. banks managing its own

accounts, accounts of investment companies established by NCB and SNCB and NCB's correspondent

accounts in the U.S. SNCB paid federal, state and local taxes and even claimed to be 'harrassed' by the

City of New York regarding a tax matter. SNCB's major investment fund, Hospitality Investment

Partners was established to take advantage of the U.S. Government owned Resolution Trust Corporation's

sale of properties acquired via bankruptcies in the Savings and Loan scandal.

Plaintiffs contend that the activities of SNCB can be imputed to its parent NCB due to the

following. SNCB is 100% owned by NCB. All of its income came from NCB. NCB developed,

approved and sent to SNCB, SNCB's annual budget. NCB advised SNCB regarding SNCB's U.S. tax

liability. NCB directed SNCB's use of office premises in New York City. SNCB requested NCB's

approval for major and minor decisions, including such decisions as whether to make a swimming pool

improvement on one of their hotel properties in Marion, Indiana and whether they should renew a

Standard & Poor's weekly report subscription. NCB's auditor considered SNCB to be an integral part of

NCB. SNCB registered with the City of New York as the representative office of NCB.

All SNCB personnel were either NCB employees prior to it's the founding of SNCB in 1992 or

were directed to be hired by NCB. Frederik Crawford was the head of NCB Investment Services

Division, a vice-president of and Director of NCB and simultaneously the chairman of SNCB. NCB's

Investment Services Division, during Crawford's tenure as head, hired Yasin al Kadi and his consulting

group, the National Management Consultancy Center to develop Islamic Investment funds. Crawford was

reportedly 'wildly enthusiastic' about these funds. Crawford held signatory authority over 26 NCB or its

subsidiaries bank accounts at Chase Manhattan Bank in New York. Crawford appointed SNCB's board.

40

Crawford's salary was paid by SNCB. John Bouckley was the Vice-President of NCB NY and became President of SNCB upon its founding. His employment contract was written by NCB. He served as a member of the NCB Investment Committee. His job description as written by NCB only involves activities on behalf of NCB and he reported to two positions, the Chairman of SNCB and the Director of the NCB IS Division. Both positions were held by Frederik Crawford. According to Bouckley's job description his impact upon the image and success of the NCB Investment Services Division was broad. Thomas Krohley was an NCB employee who succeeded Bouckley as SNCB President. He had the same reporting structure and job description. Krohley was an employee of SNCB until the end of 2000. In 2000, SNCB was directed by NCB to terminate its activities and was referred to within NCB as its "NY Office." Afterwards Krohley had a renewable consultancy contract with NCB to continue winding-up SNCB, based from his U.S. home and simultaneously was the chair of the NCB Investment Committee in Saudi Arabia. Ginger Pensa was an NCB employee who carried on working for SNCB upon its founding. In 2000-2001 at the winding up of SNCB, Pensa and Krohley were paid severance pay based upon their years of service for both SNCB and NCB. Pensa also continued to work for NCB and based from her U.S. home under a renewable consultancy contract during the winding-up of SNCB.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH010336-10360      ASH010361-10371      ASH010372-10418      ASH010626-10635

MR_NCB000001 - 004 MR_NCB000355 - 394 MR_NCB000439 - 492 MR_NCB000626- 626

MR_NCB000627- 627 MR_NCB000628- 655 MR_NCB000656- 664 MR_NCB000665- 672

MR_NCB000713- 714 MR_NCB000715- 722 MR_NCB000723- 726 MR_NCB000729- 730

MR_NCB000731- 732 MR_NCB000734- 734 MR_NCB000737- 737 MR_NCB000738- 738

MR_NCB000739- 742 MR_NCB000743- 744 MR_NCB000747- 747 MR_NCB000825- 827

MR_NCB000939- 979 MR_NCB001072 - 1113 MR_NCB001129 - 1170

MR_NCB001228 - 1229 MR_NCB001230 - 1232

      12)     If you contend that the presence or activities of SNCB Securities, Inc. provides a basis for the exercise of personal jurisdiction over NCB in the above-captioned actions, identify each act, event, contact or other fact on which you rely to support that contention, and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory.

**RESPONSE:**

     Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB

created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain.  Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that SNCB's activities in the U.S. which contribute to exercising personal jurisdiction include the following:  Immediately following the closure of NCB's New York City branch in 1992 due to its activities in the BCCI scandal, NCB opened SNCB, which was wholly owned by NCB SNCB was created to perform services which were previously done by NCB's branch in New York. SNCB was registered in two states, Delaware and New York.  SNCB remained in business in Delaware until February, 2001 and in New York until October, 2001.   SNCB managed and or supervised the contractual management of an investment portfolio on behalf of NCB.   This investment activity took place in New York, Florida, Arizona, Nebraska, California, New Jersey, Michigan, Colorado, Texas, Indiana, Pennsylvania and Missouri.  The investments included those managed by NCB. prior to its expulsion from the U.S. in 1992 and new investments generated by SNCB and NCB and marketed to investors in both the U.S. and abroad.  SNCB made extensive use of U.S. banks managing its own accounts, accounts of investment companies established by NCB and SNCB and NCB's correspondent accounts in the U.S.  SNCB paid federal, state and local taxes and even claimed to be 'harrassed' by the City of New York regarding a tax matter.   SNCB's major investment fund, Hospitality Investment Partners was established to take advantage of the U.S. Government owned Resolution Trust Corporation's sale of properties acquired via bankruptcies in the Savings and Loan scandal.

Plaintiffs contend that the activities of SNCB can be imputed to its parent NCB due to the following. SNCB is 100% owned by NCB.  All of its income came from NCB.  NCB developed, approved and sent to SNCB, SNCB's annual budget.  NCB advised SNCB regarding SNCB's U.S. tax liability.  NCB directed SNCB's use of office premises in New York City.  SNCB requested NCB's approval for major and minor decisions, including such decisions as whether to make a swimming pool

improvement on one of their hotel properties in Marion, Indiana and whether they should renew a Standard & Poor's weekly report subscription. NCB's auditor considered SNCB to be an integral part of NCB. SNCB registered with the City of New York as the representative office of NCB.

All SNCB personnel were either NCB employees prior to it's the founding of SNCB in 1992 or were directed to be hired by NCB. Frederik Crawford was the head of NCB Investment Services Division, a vice-president of and Director of NCB and simultaneously the chairman of SNCB. NCB's Investment Services Division, during Crawford's tenure as head, hired Yasin al Kadi and his consulting group, the National Management Consultancy Center to develop Islamic Investment funds. Crawford was reportedly 'wildly enthusiastic' about these funds. Crawford held signatory authority over 26 NCB or its subsidiaries bank accounts at Chase Manhattan Bank in New York. Crawford appointed SNCB's board. Crawford's salary was paid by SNCB. John Bouckley was the Vice-President of NCB NY and became President of SNCB upon its founding. His employment contract was written by NCB. He served as a member of the NCB Investment Committee. His job description as written by NCB only involves activities on behalf of NCB and he reported to two positions, the Chairman of SNCB and the Director of the NCB IS Division. Both positions were held by Frederik Crawford. According to Bouckley's job description his impact upon the image and success of the NCB Investment Services Division was broad. Thomas Krohley was an NCB employee who succeeded Bouckley as SNCB President. He had the same reporting structure and job description. Krohley was an employee of SNCB until the end of 2000. In 2000, SNCB was directed by NCB to terminate its activities and was referred to within NCB as its "NY Office." Afterwards Krohley had a renewable consultancy contract with NCB to continue winding-up SNCB, based from his U.S. home and simultaneously was the chair of the NCB Investment Committee in Saudi Arabia. Ginger Pensa was an NCB employee who carried on working for SNCB upon its founding. In 2000-2001 at the winding up of SNCB, Pensa and Krohley were paid severance pay based

44

upon their years of service for both SNCB and NCB. Pensa also continued to work for NCB and based from her U.S. home under a renewable consultancy contract during the winding-up of SNCB.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

ASH006240-6241      ASH006604-6614      ASH006615-6621      ASH006622-6625

ASH006626-6638      ASH006639-6649      ASH006650-6651      ASH010336-10360

ASH010361-10371     ASH010372-10418     ASH010626-10635

MR_NCB000001 - 004 MR_NCB000355 - 394 MR_NCB000439 - 492 MR_NCB000626- 626

MR_NCB000627- 627 MR_NCB000628- 655 MR_NCB000656- 664 MR_NCB000665- 672

MR_NCB000713- 714 MR_NCB000715- 722 MR_NCB000723- 726 MR_NCB000729- 730

MR_NCB000731- 732 MR_NCB000734- 734 MR_NCB000737- 737 MR_NCB000738- 738

MR_NCB000739- 742 MR_NCB000743- 744 MR_NCB000747- 747 MR_NCB000825- 827

MR_NCB000939- 979 MR_NCB001072 - 1113 MR_NCB001129 - 1170

MR_NCB001228 - 1229 MR_NCB001230 - 1232


13)      To the extent not encompassed within your responses to Interrogatories 3 through 12, identify with specificity each act, event, contact or other fact that you contend supports or otherwise provides a basis for the Court to exercise personal jurisdiction over NCB in the above-captioned actions,

and: (a) identify all persons on whose knowledge you rely to support that contention; (b) for each such person, identify the substance of the information within such person's knowledge or possession on which you rely to support that contention; (c) identify all documents on which you rely to support that contention, including any written statement or testimony of persons identified in response to this Interrogatory; and (d) produce all documents identified in response to this Interrogatory. Your response to this Interrogatory should include, without limitation, an explanation as to how each such act, event, contact or other fact relates to personal jurisdiction over NCB in this action.

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain. Subject to and without waiving the above objections, Plaintiffs respond as follows:

Plaintiffs contend that in addition to their contentions in answers #3-12 above, NCB is subject to the jurisdiction of this court as NCB and/or its subsidiary SNCB did business in the United States and abroad via other subsidiaries registered in the U.S. These subsidiaries included Euram Group Ltd., Sedco Services, Inc., MBKS Inc., MBKS II Inc., MBKS III Inc., U.S. Second I.R.E. Management Corp., Medical Equipment Leasing Partners, U.S. Tampa Management II Corp., Eidetics International, Inc., Southwest Airport Services Inc., Global FBO Holdings Inc., Ellington MTA, Inc., and Mid-East Jet, Inc.

46

NCB's Saudi Arabia based aviation department has six aircraft and seven airmen registered in the United States.  The planes used U.S airspace on a regular basis.  One of these airmen was under investigation by the U.S. Customs Department for financial links to a 9/11 hijacker.

The investment portfolio of stocks owned by NCB included up to $281 million of investments acquired in U.S. financial markets.  NCB managed 8 investment funds on behalf of investors.  These funds maintained investments of up to $400 million in U.S. equities and bonds.  NCB used the services of at least 12 contracted service providers to do its business in the U.S.

NCB made loans and issued letters of credit in the U.S. and to U.S. corporations for business activities in the U.S.   NCB paid over $4 million in New Jersey and New York City property taxes.  NCB sent mangers for training to the U.S.

Additionally, NCB funded the study of Islamic Banking at Harvard University and recruited staff at Harvard University.  NCB maintained membership in the Arab Bankers Association of North America.

Plaintiffs intend to rely upon all documents filed by the Plaintiffs or NCB regarding NCB's Motion to Dismiss, Plaintiffs' Opposition and NCB's Reply, all subsequent Letters to the Court, Deposition Transcripts and Exhibits, all documents produced by NCB during the course of jurisdictional discovery as well as the following documents contained on the accompanying disc and which identify the witnesses who drafted said document and those witnesses who the document was addressed or copied to regarding the substance contained therein:

| | | | |
|---|---|---|---|
| ASH006652-6657 | ASH006715-6721 | ASH006722-6728 | ASH006729-6736 |
| ASH006658-6714 | ASH006737-6757 | ASH006758-6783 | ASH006784-6795 |
| ASH006796-6814 | ASH006815-6816 | ASH006817-6827 | ASH006828-6837 |
| ASH006965-7176 | ASH007177-7185 | ASH007186-7248 | ASH007249-7251 |

| | | | |
|---|---|---|---|
| ASH007252-7253 | ASH007254-7254 | ASH007255-7358 | ASH007359-7893 |
| ASH007895-7981 | ASH007982-8003 | ASH008004-8029 | ASH008030-8993 |
| ASH008994-9004 | ASH009005-9023 | ASH009024-9265 | ASH009266-9268 |
| ASH009269-9316 | ASH009322-9367 | ASH009368-9579 | ASH009580-9596 |
| ASH009597-9598 | ASH009599-9599 | ASH009600-9606 | ASH009607-9951 |
| ASH009952-10005 | ASH010006-10037 | ASH010038-10047 | ASH010048-10051 |
| ASH010052-10100 | ASH010101-10140 | ASH010141-10274 | ASH010328-10335 |
| ASH010336-10360 | ASH010361-10371 | ASH010372-10418 | |

MR_NCB000343 - 354 MR_NCB000525 - 545 MR_NCB000622- 623 MR_NCB000624- 625

MR_NCB000626- 626 MR_NCB000627- 627 MR_NCB000628- 655 MR_NCB000656- 664

MR_NCB000665- 672 MR_NCB000673- 680 MR_NCB000681- 712 MR_NCB000713- 714

MR_NCB000715- 722 MR_NCB000723- 726 MR_NCB000727- 727 MR_NCB000728- 728

MR_NCB000729- 730 MR_NCB000731- 732 MR_NCB000733- 733 MR_NCB000734- 734

MR_NCB000735- 735 MR_NCB000736- 736 MR_NCB000737- 737 MR_NCB000738- 738

MR_NCB000739- 742 MR_NCB000743- 744 MR_NCB000745- 746 MR_NCB000747- 747

MR_NCB000823- 824 MR_NCB000825- 827 MR_NCB000828- 833

14)     Identify all experts, investigators, consultants, or other agents whose findings, testimony, affidavit, declaration, or other work product you intend to present to the Court in the above captioned cases in connection with the Court's consideration of the existence (or lack thereof) of personal jurisdiction over NCB. For each such expert or other agent, set forth the substance of their anticipated testimony or other submission and identify with specificity all facts or documents on which they rely in developing such testimony or other submission, including any written statement or testimony of persons identified in response to this Interrogatory.

48

**RESPONSE:**

Plaintiffs object to this Interrogatory as overly broad and unduly burdensome and to the extent that it seeks legal conclusions or opinions. Plaintiffs also object to this contention Interrogatory as premature at this stage of the proceedings and reserve their right to amend the Response to this Interrogatory at the completion of discovery. Plaintiffs also object to this Interrogatory to the extent: (a) it seeks any information protected by the attorney-client privilege or work-product doctrine; (b) it prematurely calls for an expert opinion; (c) it seeks information within the institutional knowledge of NCB, and NCB has not produced such documents; (d) it seeks information within NCB's own documents and/or documents NCB created or published, and/or; (e) it seeks information equally available to NCB and Plaintiffs from the public domain.

Dated: February 1, 2008
       New York, New York

                                    Respectfully submitted,

                                    KREINDLER & KREINDLER, LLP

               By:      _____

                                    James P. Kreindler, Esq. (JK7084)
                                    Justin T. Green, Esq. (JG0318)
                                    Marc S. Moller, Esq. (MM0143)
                                    Andrew J. Maloney, Esq. (AM8684)
                                    100 Park Avenue
                                    New York, New York 10017
                                    Phone:  (212) 687-8181
                                    Facsimile:  (212) 972-9432

                                    MOTLEY RICE LLC
                                    Ronald L. Motley, Esq.
                                    Jodi Westbrook Flowers, Esq.
                                    Michael Elsner, Esq.
                                    28 Bridgestone Boulevard
                                    P.O. Box 1792
                                    Mt. Pleasant, SC 29465

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a true copy of *PLAINTIFFS' REVISED RESPONSES TO DEFENDANT NATIONAL COMMERCIAL BANK'S FIRST SET OF JURISDICTIONAL INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS* has been served on the 1ᵗʰ day of February 1, 2008, by Federal Express delivery upon:

TO: Mitchell Berger, Esq.
Patton Boggs
2550 M Street NW
Washington DC, 20037

_____
Genie Masterson

#124031-1