ΓΕΩ 1148 ΡΩ 1002

upon written demand by Mortgagee without further consent of Mortgagor, and the tenants may rely upon any written statement delivered by Mortgagee to the tenants. Any such payment to Mortgagee shall constitute payment to Mortgagor under the Leases.

## ARTICLE III

### SECURITY AGREEMENT

3.1 Security Interest. This Mortgage shall be a security agreement between Mortgagor, as the debtor, and Mortgagee, as the secured party, covering the Mortgaged Property constituting personal property or fixtures governed by the Uniform Commercial Code of the State in which such portion of the Mortgaged Property is situated (hereinafter called the "Code"), and Mortgagor grants to Mortgagee a security interest in such portion of the Mortgaged Property. In addition to Mortgagee's other rights hereunder, Mortgagee shall have all rights of a secured party under the Code. Mortgagor shall execute and deliver to Mortgagee all financing statements that may be required by Mortgagee to establish and maintain the validity and priority of Mortgagee's security interest and Mortgagor shall bear all costs thereof, including all Uniform Commercial Code searches reasonably required by Mortgagee. If Mortgagee should dispose of any of the Mortgaged Property pursuant to the Code, ten (10) days' written notice by Mortgagee to Mortgagor shall be deemed to be reasonable notice; provided, however, Mortgagee may dispose of such property in accordance with the foreclosure procedures of this Mortgage in lieu of proceeding under the Code.

3.2 Notice of Changes. Mortgagor shall give advance notice in writing to Mortgagee of any proposed change in Mortgagor's name, identity, or structure and will execute and deliver to Mortgagee, prior to or concurrently with the occurrence of any such change, all additional financing statements that Mortgagee may require to establish and maintain the validity and priority of Mortgagee's security interest with respect to any of the Mortgaged Property described or referred to herein.

3.3 Fixtures. Some of the items of the Mortgaged Property described herein are goods that are or are to become fixtures related to the Land, and it is intended that, as to those goods, to the extent permitted by the law of the State in which such portion of the Mortgaged Property is situated, this Mortgage shall be effective as a financing statement

PLEAD015316

BOOK 1148 PG 1003

filed as a fixture filing from the date of its filing for
record in the real estate records of the county in which the
Mortgaged Property is situated.  Information concerning the
security interest created by this instrument may be obtained
from Mortgagee, as secured party, at the address of Mortgagee
stated above.  The mailing address of the Mortgagor, as
debtor, is as stated above.

## ARTICLE IV

### REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS OF MORTGAGOR

Mortgagor does hereby covenant, warrant and represent to
and agree with Mortgagee as follows:

4.1  **Payment and Performance.**  Mortgagor shall make all
payments on the Indebtedness required to be paid by Mortgagor
when due and shall punctually and properly perform all of
Mortgagor's covenants, obligations and liabilities under the
Loan Instruments to which Mortgagor is a party.

4.2  **Title to Mortgaged Property and Lien of this
Mortgage.**  Mortgagor has good and marketable title to the
Land, the Improvements and the Personal Property, free and
clear of any liens, charges, encumbrances, security interests
and adverse claims whatsoever, except as otherwise provided
herein.  If the interest of Mortgagee in the Mortgaged Prop-
erty or any part thereof shall be endangered or shall be
attacked, directly or indirectly, Mortgagor hereby authorizes
Mortgagee, at Mortgagor's expense, to take all necessary and
proper steps for the defense of such interest, including the
employment of counsel, the prosecution or defense of litiga-
tion, and the compromise or discharge of claims made against
such interest.

4.3  **Organization and Power (Applicable to Corporate
Mortgagor).**  Mortgagor (a) is a corporation duly organized,
validly existing under the laws of the state of its incor-
poration and in good standing under the laws of the
Netherlands Antilles, (b) has complied with all conditions
prerequisite to its lawfully doing business in the state
where the Land is situated, and (c) has all requisite corpo-
rate power and all governmental certificates of authority,
licenses, permits, qualifications, and documentation to own,
lease and operate its properties and to carry on its business
as now being, and as proposed to be, conducted.

-9-

PLEAD015317

LIBER 1148 PG 1004

4.4  **Suits, Actions, Etc.**  There are no actions, suits, or proceedings pending or, to the best of Mortgagor's knowledge and belief, threatened in any court or before or by any governmental authority against or affecting Mortgagor or the Mortgaged Property, or involving the validity, enforceability or priority of any of the Loan Instruments, at law or in equity.  The execution, delivery and performance of the Loan Instruments to which Mortgagor is a party will not result in a breach of, or constitute a default in, any mortgage, lease, promissory note, loan agreement, credit agreement or other agreement to which Mortgagor is a party or by which Mortgagor or any of its property may be bound or affected.

4.5  **Valid and Binding Obligation.**  All of the Loan Instruments to which Mortgagor is a party have been duly authorized by all requisite action and, upon execution and delivery, will constitute valid and binding obligations of Mortgagor, enforceable in accordance with their terms except as limited by applicable debtor relief laws.

4.6  **Existence of Mortgagor.**  Mortgagor will preserve and keep in full force and effect its existence, rights, franchises and trade names.

4.7  **Insurance.**  Mortgagor will keep all insurable Mortgaged Property insured against the risks covered by policies of comprehensive general liability, fire and extended coverage insurance and rental loss insurance and such other risks as Mortgagee may require, such insurance to be written in amounts, in companies and in form acceptable to Mortgagee (including, without limitation, provisions for (i) written notice to Mortgagee at least thirty (30) days prior to the expiration or cancellation of such policy, (ii) waiver of subrogation, and (iii) a New York Standard Mortgagee Clause, without contribution), with loss made payable to Mortgagee by mortgagee clauses of standard form, and will deliver the policies of insurance to Mortgagee promptly as issued; and, in case Mortgagor fails to do so, Mortgagee, at its option, may procure such insurance or a mortgagee's interest policy at Mortgagor's expense.  Mortgagor will deliver annually to Mortgagee an agreed amount endorsement to each such policy. All renewal and substitute policies of insurance shall be delivered at the office of Mortgagee, premiums paid, at least fifteen (15) days before termination of policies theretofore delivered to Mortgagee.  In case of loss, Mortgagee, at its option, shall be entitled to receive and retain the proceeds of the insurance policies, applying the same upon the Indebtedness.  If any loss shall occur at any time when

PLEAD015318

BOOK 1148 PG 1005

Mortgagor shall be in default in the performance of this covenant, Mortgagee shall be entitled to the benefit of all insurance held by or for any Mortgagor, to the same extent as if it had been made payable to Mortgagee, and upon foreclosure hereunder Mortgagee shall become the owner thereof.  If the Mortgaged Property or any part thereof is located within an area that has been, or should such area at any time be, designated or identified as an area having special flood hazards by any governmental authority having jurisdiction, then Mortgagor will obtain flood insurance in amounts required by Mortgagee.

4.8   Impositions.  Mortgagor will pay, or cause to be paid, all taxes, assessments, sewer rents or water rates (collectively, the "Impositions") against or affecting the Mortgaged Property as the same become due and payable, and, within ten (10) days of payment thereof, will deliver to Mortgagee such evidence of the payment thereof as Mortgagee may require, and, if Mortgagor fails to do so, Mortgagee may pay them, together with all costs and penalties thereon, at Mortgagor's expense; provided, however, that Mortgagor may in good faith, in lieu of paying such Impositions as they become due and payable, by appropriate proceedings, contest the validity thereof.  Pending such contest, Mortgagor shall not be deemed in default hereunder because of such nonpayment if, prior to delinquency of the asserted Imposition, Mortgagor furnishes Mortgagee an indemnity bond secured by a deposit in cash or other security acceptable to Mortgagee, or with a surety acceptable to Mortgagee, in the amount of the Imposi- tion being contested by Mortgagor plus a reasonable additional sum to pay all costs, interest and penalties which may be imposed or incurred in connection therewith, conditioned that such Imposition, with interest, cost and penalties, be paid as herein stipulated, and if Mortgagor promptly pays any amount adjudged by a court of competent jurisdiction to be due, with all costs, penalties and interest thereon, on or before the date such judgment becomes final; and provided, further, that in any event, the Imposition, plus penalties, interest and costs, shall be paid prior to the date on which any writ or order is issued under which the Mortgaged Property may be sold in satisfaction thereof.

4.9   Tax and Insurance Escrow.  To further secure Mort- gagor's obligations under Paragraphs 4.7 and 4.8 hereof, but not in lieu thereof, Mortgagee, at its option, may require that Mortgagor create a fund or reserve for the payment of all insurance premiums and Impositions against or affecting the Mortgaged Property by paying monthly to Mortgagee a sum

-11-

equal to one-twelfth (1/12) of the annual premiums due and
payable on the insurance policies covering the Mortgaged
Property, or any part thereof, plus Impositions due and
payable with respect to the Mortgaged Property, or any part
thereof, as estimated from time to time by Mortgagee. Such
sums shall be held by Mortgagee, or Mortgagee's servicing
agent, without interest, unless interest is required by
applicable law, for the purpose of paying such insurance
premiums and Impositions. Any excess reserve shall, at the
discretion of Mortgagee, be credited by Mortgagee: (i) on
subsequent reserve payments, (ii) on subsequent payments to
be made on the Indebtedness, or (iii) to Mortgagor's account
as a refund of such escrow payments. In the event Mortgagee
discovers that there is a deficiency in the escrow account,
the amount of the deficiency shall be immediately paid to
Mortgagee. Transfer of legal title to the Mortgaged Property
shall automatically transfer the interest of Mortgagor in all
sums deposited with Mortgagee under the provisions hereof
or otherwise. If the maturity of the Indebtedness is accel-
erated under the terms of any of the Loan Instruments, Mort-
gagee may apply any funds in said account against the Indebt-
edness in such manner as Mortgagee, in its sole discretion,
shall determine. Furthermore, unless otherwise required by
applicable law, Mortgagee shall be entitled to hold such
funds in a common escrow account and shall not be required to
maintain a separate account, and Mortgagee shall not be
required to pay to Mortgagor any interest which may accrue on
said account.

    4.10  Condemnation. All judgments, decrees and awards
for injury or damage to the Mortgaged Property, and all
awards pursuant to proceedings for condemnation thereof, are
hereby assigned in their entirety to Mortgagee, who may apply
the same to the Indebtedness in such manner as it may elect;
and Mortgagee is hereby authorized, in the name of Mortgagor,
to execute and deliver valid acquittances for, and to appeal
from, any such award, judgment or decree. Immediately upon
its obtaining knowledge of the institution or the threatened
institution of any proceedings for the condemnation of the
Mortgaged Property, Mortgagor shall notify Mortgagee of such
fact. Mortgagor shall then, if requested by Mortgagee, file
or defend its claim thereunder and prosecute same with due
diligence to its final disposition and shall cause any awards
or settlements to be paid over to Mortgagee for disposition
pursuant to the terms of this Mortgage. Mortgagee shall be
entitled to participate in and to control same and to be
represented therein by counsel of its own choice, and Mort-
gagor will deliver, or cause to be delivered, to Mortgagee

-12-

PLEAD015320

such instruments as may be requested by it from time to time
to permit such participation.  In the event Mortgagee, as a
result of any such judgment, decree or award, reasonably
believes that the payment or performance of any obligation
secured by this Mortgage is impaired, Mortgagee may, without
notice, declare all of the Indebtedness immediately due and
payable.

4.11  Taxes on Indebtedness or Mortgage.  Mortgagor shall
pay any and all taxes upon this Mortgage, or upon any rights,
titles, liens or security interests created hereby, or upon
the Indebtedness, or any part thereof.

4.12  Statements by Mortgagor.  At the request of Mort-
gagee, Mortgagor shall furnish promptly a written statement
or affidavit, in such form as may be required by Mortgagee,
stating that there are no offsets or defenses against full
payment of the Indebtedness and performance of the terms of
the Loan Instruments to which Mortgagor is a party, or if
there are any such offsets or defenses, specifying them.

4.13  Repair, Waste, Alterations, Etc.  Mortgagor will
keep every part of the Mortgaged Property in first class
operating order, repair, condition and appearance and shall
not commit or permit any waste thereof.  Mortgagor will make
promptly all repairs, renewals and replacements necessary to
such end, but if any work required under this paragraph shall
involve an estimated expenditure exceeding $25,000.00, no
such work shall be performed except pursuant to plans and
specifications approved in writing by Mortgagee.  Mortgagor
will discharge all claims for labor performed and material
furnished therefor, and will not suffer any lien of mechanics
or materialmen to attach to any part of the Mortgaged Property.
Mortgagor shall have the right to contest in good faith the
validity of any such mechanics' or materialmen's lien, pro-
vided Mortgagor shall first deposit with Mortgagee a bond or
other security satisfactory to Mortgagee in such amount as
Mortgagee shall reasonably require, but not more than one
hundred fifty percent (150%) of the amount of the claim, and
provided further that Mortgagor shall thereafter diligently
proceed to cause such lien to be removed and discharged.  If
Mortgagor shall fail to discharge any such lien, then, in
addition to any other right or remedy of Mortgagee, Mortgagee
may, but shall not be obligated to, discharge the same,
either by paying the amount claimed to be due, or by pro-
curing the discharge of such lien by depositing in court a
bond for the amount claimed, or otherwise giving security for
such claim, or by taking such action as may be prescribed by

-13-

PLEAD015321

BOOK 1148 PG 1008

law.  Mortgagor will guard every part of the Mortgaged Prop-
erty from removal, destruction and damage, and will not do or
suffer to be done any act whereby the value of any part of
the Mortgaged Property may be lessened, normal wear and tear
excepted.  Mortgagor will not materially alter the Mortgaged
Property without the prior written consent of Mortgagee.
Mortgagee may determine, in its discretion, whether the
foregoing portions of this paragraph are being complied with
and, for this purpose, Mortgagee shall have the right to
inspect the Mortgaged Property at any reasonable hour of the
day.  In the event Mortgagee determines in its inspection
that Mortgagor is violating the provisions of this paragraph
by deferring maintenance on the Mortgaged Property, Mortgagee
shall have the right to require Mortgagor to escrow with
Mortgagee such funds as are necessary to correct said deferred
maintenance.

4.14  No Pledge or Change of Stock or Partnership Inter-
est.  If Mortgagor is a corporation, the shareholders of
Mortgagor shall not pledge or assign any shares of the stock
of Mortgagor without the prior written consent of Mortgagee.
If Mortgagor is a partnership or joint venture, the partners
or joint venturers of Mortgagor shall not pledge or assign
any of their partnership or joint venture interests in Mort-
gagor and no general partners or joint venturers shall with-
draw from or be admitted into Mortgagor without the prior
written consent of Mortgagee.

4.15  Compliance with Laws.  Mortgagor, the Mortgaged Prop-
erty, and the use thereof by Mortgagor shall comply with all
laws, rules, ordinances, building codes, regulations, cove-
nants, conditions, restrictions, orders and decrees of any
governmental authority or court or of any other entity ap-
plicable to Mortgagor, and the Mortgaged Property and its
use, and Mortgagor shall pay all fees or charges of any kind
in connection therewith.  Mortgagor will not use or occupy or
allow the use or occupancy of the Mortgaged Property in any
manner which violates any applicable law, rule, regulation or
order or which constitutes a public or private nuisance or
which makes void, voidable or cancellable any insurance then
in force with respect thereto.

4.16  Rent Roll and Income and Expense Statements.
Mortgagor shall maintain full and correct books and records
showing in detail the income, expenses and earnings relating
to the Mortgaged Property, and shall provide Mortgagee the
following:

PLEAD015322

BOOK 1148 PG 1009

(a)  Within 90 days from the end of each
fiscal year of Mortgagor, or as requested from
time to time by Mortgagee, annual operating
statements concerning the Mortgaged Property,
together with complete itemized statements of
income and operating expenses and annual finan-
cial statements of Mortgagor.  The above-described
annual operating statements and annual financial
statements shall be in scope and detail satis-
factory to Mortgagee, and shall be prepared
and certified by the chief financial officer of
Mortgagor and/or reviewed and certified by a
reputable certified public accountant satis-
factory to Mortgagee; and

(b)  Within 90 days from the end of each
fiscal year of Mortgagor, a rent roll of the
Mortgaged Property, certified by the chief
financial officer of Mortgagor.  The rent roll
shall contain the name and address of each
tenant, square footage of leased premises,
annual rent, amount of security deposit, lease
commencement date, lease expiration date, date
through which rent is paid, and the nature and
extent of any defaults by tenant.

4.17  Hold Harmless.  Mortgagor will defend, at its own
cost and expense, and hold Mortgagee harmless from, any
proceeding or claim affecting the Mortgaged Property or the
Loan Instruments.  All costs and expenses incurred by Mortga-
gee in protecting its interests hereunder, including all
court costs and reasonable attorneys' fees, shall be borne by
Mortgagor.

4.18  Trade Names.  At the request of Mortgagee, Mortgagor
shall execute a certificate in form satisfactory to Mortgagee
listing the trade names under which Mortgagor intends to
operate the Mortgaged Property, and representing and warrant-
ing that Mortgagor does business under no other trade names
with respect to the Mortgaged Property.  Mortgagor shall
immediately notify Mortgagee in writing of any change in said
trade names, and will, upon request of Mortgagee, execute
any additional financing statements and other certificates
required to reflect the change in trade names and will exe-
cute and file any assumed name certificate required by
applicable laws.

4.19  Further Assurances.  Mortgagor, upon the request of
Mortgagee, will execute, acknowledge, deliver, and record

-15-

PLEAD015323

1148 PG 1010

such further instruments and do such further acts as may be
necessary, desirable or proper to carry out the purposes of
the Loan Instruments and to subject to the liens and security
interests created thereby any property intended by the terms
thereof to be covered thereby, including specifically, but
without limitation, any renewals, additions, substitutions,
replacements, improvements or appurtenances to the Mortgaged
Property.

4.20  Recording and Filing.  Mortgagor will cause the
Loan Instruments and all amendments, supplements and exten-
sions thereto and substitutions therefor to be recorded,
filed, re-recorded and refiled in such manner and in such
places as Mortgagee shall reasonably request, and will pay
all such recording, filing, re-recording and refiling fees,
title insurance premiums and other charges.

4.21  No Casualty.  On the date hereof, the Mortgaged
Property is free from damage caused by fire or other casualty.

4.22  No Violation.  The execution and delivery of the Loan
Instruments to which Mortgagor is a party do not contravene,
result in a breach of or constitute a default under any
contract or agreement to which Mortgagor is a party or by
which Mortgagor or any of its properties may be bound and do
not violate or contravene any law, order, decree, rule or
regulation to which Mortgagor or the Mortgaged Property is
subject.

4.23  Utilities, Access, Etc.  The Mortgaged Property is
adequately served by telephone, electric, gas, storm and
sanitary sewer, water and other utilities required for the
present use of the Mortgaged Property as represented by
Mortgagor.  All easements, streets and alleys necessary to
serve the Mortgaged Property for such use have been completed
and are serviceable and, if applicable, have been dedicated
and accepted by applicable governmental entities.

4.24  Reports.  All reports, statements and other data
furnished by Mortgagor to Mortgagee in connection with the
Indebtedness are true and correct in all material respects
and do not omit to state any fact or circumstance necessary
to make the statements contained therein not misleading.  No
material adverse change has occurred in the financial condi-
tion of Mortgagor or of any Tenant under the Leases since the
dates of such reports, statements and other data.

PLEAD015324

ᴵᴵᴸ 1148 ᴾᴳ 1011

4.25 <u>No Financing Statements</u>. There is no financing statement covering the Mortgaged Property or its proceeds on file in any public office, except in favor of Mortgagee as secured party.

4.26 <u>Payment of Fees</u>. Mortgagor will pay all appraisal fees, inspection fees, recording and filing fees, mortgage or other taxes, brokerage fees and commissions, abstract fees, title policy fees, survey fees, uniform commercial code search fees, escrow fees, reasonable attorney's fees, and all other costs and expenses of every character incurred by Mortgagor or Mortgagee in connection with the closing of the loan contemplated by the Loan Agreement or otherwise attributable to Mortgagor as owner of the Mortgaged Property, and will reimburse, indemnify and hold harmless Mortgagee for all such costs and expenses incurred by it.

4.27 <u>Inspection of Books and Records</u>. Mortgagor shall permit Mortgagee, at all reasonable times, to examine and copy the books and records of Mortgagor pertaining to the Loan Instruments and the Mortgaged Property, and all contracts, statements, invoices, bills, and claims for labor, materials and services supplied for the construction and operation of the Improvements.

4.28 <u>Notices by Governmental Authority, Fire and Casualty Losses, Etc</u>. Mortgagor shall timely comply with and promptly furnish to Mortgagee true and complete copies of any official notice or claim by any governmental authority pertaining to the Mortgaged Property. Mortgagor shall promptly notify Mortgagor of any fire or other casualty or any notice or taking of eminent domain action or proceeding affecting the Mortgaged Property.

4.29 <u>Construction</u>. All Improvements and all grading and landscaping have been made and completed with first-class materials and in a good, substantial and workmanlike manner, substantially in accordance with the plans and specifications for such Improvements.

4.30 <u>Condominium Covenants and Agreements</u>. With respect to those portions of the Mortgaged Property constituting condominium units and appurtenant common elements (collectively, the "Condominiums"), Mortgagor covenants and agrees as follows:

    (a) Mortgagor shall duly and punctually perform all of Mortgagor's obligations under any document relating to such Condominiums, including,

PLEAD015325

ได 1148 ตา 1012

without limitation, condominium declarations, by-laws, rules and regulations (collectively, the "Condominium Documents");

(b)  Mortgagor shall promptly pay when due all dues and assessments imposed against the Condominiums pursuant to the Condominium Documents;

(c)  Mortgagor shall not, without Mortgagee's prior written consent, either partition or subdivide the Mortgaged Property, or bring about or consent to:

(i)  the abandonment or termination of the project of which each Condominium is a part (the "Project"); or

(ii)  any material amendment to any provision of the Condominium Documents.

(d)  Mortgagor shall deliver to Mortgagee any official notice or claim received by it from any entity managing the Project to which the Condominium is a part relating to the ownership by Mortgagor of such Condominium.

4.31 Documentary Stamps.  If, at any time, the United States of America, any State thereof or any governmental subdivision of any such State, shall require revenue or other stamps to be affixed to this Mortgage, Mortgagor will pay for the same, with interest and penalties thereon, if any.

ARTICLE V

SUBORDINATE MORTGAGES

Mortgagor will not, without the prior written consent of Mortgagee, grant or permit to be created any lien, security interest or other encumbrance other than a Permitted Exception (hereinafter called a "Subordinate Mortgage") covering any of the Mortgaged Property.  If Mortgagee consents to a Subordinate Mortgage or if the foregoing prohibition is determined by a court of competent jurisdiction to be unenforceable, any such Subordinate Mortgage shall contain express covenants to the effect that:

PLEAD015326

BEEL 1148 PG 1013

(a)  The Subordinate Mortgage is uncondi-
tionally subordinate to this Mortgage;

(b)  If any action (whether judicial or
pursuant to a power of sale) shall be instituted
to foreclose or otherwise enforce the Subordinate
Mortgage, no tenant of any of the Leases will be
named as a party defendant, and no action will
be taken which would terminate any occupancy or
tenancy without the prior written consent of
Mortgagee;

(c)  Rents, if collected by or for the
holder of the Subordinate Mortgage, shall be
applied first to the payment of the Indebtedness
then due and expenses incurred in the ownership,
operation and maintenance of the Mortgaged Prop-
erty in such order as Mortgagee may determine,
prior to being applied to any indebtedness
secured by the Subordinate Mortgage; and

(d)  A copy of any notice of default under
the Subordinate Mortgage and written notice of
the commencement of any action (whether judicial
or pursuant to a power of sale) to foreclose or
otherwise enforce the Subordinate Mortgage will
be contemporaneously given to Mortgagee.

## ARTICLE VI

### MISCELLANEOUS

6.1  Collection.  If the Indebtedness shall be collected
by legal proceedings, whether through a probate or bankruptcy
court or otherwise, or shall be placed in the hands of an
attorney for collection after default or maturity, Mortgagor
agrees to pay reasonable attorneys' and collection fees, and
such fees shall be a part of the Indebtedness.

6.2  Change in Ownership.  If the ownership of the
Mortgaged Property or any part thereof becomes vested in a
person other than Mortgagor, or in the event of a change of
ownership of Mortgagor, Mortgagee may, without notice to
Mortgagor, deal with such successor or successors in interest
with reference to this Mortgage and to the Indebtedness in
the same manner as with Mortgagor without in any way vitiat-
ing or discharging Mortgagor's liability hereunder or upon

PLEAD015327

the Indebtedness. No sale of the Mortgaged Property, and no forbearance on the part of Mortgagee, and no extension of the time for the payment of the Indebtedness, shall operate to release or affect the original liability of Mortgagor except as otherwise agreed in writing by Mortgagee in its sole discretion.

6.3  Release of Lien. If Mortgagor shall fully and irrevocably perform each of the covenants and agreements contained herein and in the Loan Instruments, then this conveyance shall become null and void and shall be released at Mortgagor's expense; otherwise, it shall remain in full force and effect. No release of this conveyance, or of the lien, security interest or assignment created and evidenced hereby, shall be valid unless executed by Mortgagee.

6.4  Partial Release of Lien, Extension, Etc. Any part of the Mortgaged Property may be released by Mortgagee without affecting the lien, security interest and assignment hereof against the remainder. The lien, security interest and other rights granted hereby shall not affect or be affected by any other security taken for the Indebtedness. The taking of additional security, or the modification, extension or renewal of the Indebtedness or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby, or affect the liability of any endorser or guarantor or improve the right of any permitted junior lienholder; and this Mortgage, as well as any instrument given to secure any modification, renewal or extension of the Indebtedness, or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Mortgaged Property not expressly released until the Indebtedness is paid.

6.5  Waiver of Marshalling and Certain Rights. To the extent that Mortgagor may lawfully do so, Mortgagor hereby expressly waives any right pertaining to the marshalling of assets, the exemption of homestead, the administration of estates of decedents, or other matter to defeat, reduce or affect the right of Mortgagee to sell the Mortgaged Property for the collection of the Indebtedness (without any prior or different resort for collection), or the right of Mortgagee to the payment of the Indebtedness out of the proceeds of sale of the Mortgaged Property in preference to every other person and claimant. Mortgagor expressly waives and relinquishes any right or remedy which it may have or be able to assert by reason of the provisions of any applicable statute or law pertaining to the rights and remedies of sureties.

-20-

PLEAD015328

BOOK 1148 PG 1015

Mortgagor expressly waives its right to a trial by jury in
any action brought by Mortgagee to foreclose the liens of
this Mortgage.  Mortgagor expressly waives any equity or
statutory right of redemption or, in the alternative, agrees
that any redemption period shall be limited to the shortest
period by applicable law.

6.6  Subrogation.  To the extent that proceeds of the
Indebtedness are used to pay any outstanding lien, charge or
encumbrance affecting the Mortgaged Property, such proceeds
have been advanced by Mortgagee at Mortgagor's request, and
Mortgagee shall be subrogated to all rights, interests and
liens owned or held by any owner or holder of such outstand-
ing liens, charges and encumbrances, irrespective of whether
such liens, charges or encumbrances are released of record;
provided, however, that the terms and provisions hereof shall
govern the rights and remedies of Mortgagee and shall super-
sede the terms, provisions, rights, and remedies under the
lien or liens to which Mortgagee is subrogated hereunder.

6.7  No Waiver.  No waiver of any default on the part of
Mortgagor or breach of any of the provisions of this Mortgage
or of any other instrument executed in connection with the
Indebtedness shall be considered a waiver of any other or
subsequent default or breach, and no delay or omission in
exercising or enforcing the rights and powers herein granted
shall be construed as a waiver of such rights and powers, and
likewise no exercise or enforcement of any rights or powers
hereunder shall be held to exhaust such rights and powers,
and every such right and power may be exercised from time to
time.  Acceptance by Mortgagee of partial payments shall not
constitute a waiver of the default by failure to make full
payments.

6.8  Limitation on Interest.  All agreements between
Mortgagor and Mortgagee, whether now existing or hereafter
arising and whether written or oral, are hereby limited so
that in no contingency or event whatsoever, whether by reason
of demand or acceleration of the maturity of any of the
Indebtedness or otherwise, shall the amount contracted for,
charged, received, paid or agreed to be paid to Mortgagee for
the use, forbearance, or detention of the funds evidenced by
the Indebtedness or otherwise, or for the performance or
payment of any covenant or obligation contained in the Loan
Instruments, exceed the maximum amount permissible under
applicable law.  If, from any circumstance whatsoever,
interest would otherwise be payable to Mortgagee in excess of
the maximum lawful amount, the interest payable to Mortgagee

-21-

PLEAD015329

shall be reduced to the maximum amount permitted under appli-
cable law; and if from any circumstance Mortgagee shall ever
receive anything of value deemed interest by applicable law
in excess of the maximum lawful amount, an amount equal to
any excessive interest shall be applied to the reduction of
the principal balance of the Indebtedness and not to the
payment of interest, or if such excessive interest exceeds
the unpaid balance of principal of the Indebtedness, such
excess shall be refunded to Mortgagor. All interest paid or
agreed to be paid to Mortgagee shall, to the extent permitted
by applicable law, be amortized, prorated, allocated, and
spread throughout the full period until payment in full of
the principal of the Indebtedness (including the period of
any renewal or extension thereof) so that the interest on
account of the Indebtedness for such full period shall not
exceed the maximum amount permitted by applicable law.  This
paragraph shall control all agreements between Mortgagor and
Mortgagee.

    6.9  Successors and Assigns; Use of Terms.  The covenants
herein contained shall bind, and the benefits and advantages
shall inure to, the respective heirs, executors, administra-
tors, personal representatives, successors, and assigns of
the parties hereto. Whenever used, the singular number shall
include the plural and the plural the singular, and the use
of any gender shall be applicable to all genders. The term
"Mortgagor" shall include in their individual capacities and
jointly all parties hereinabove named as a Mortgagor. The
term "Mortgagee" shall include any lawful owner, holder,
pledgee, or assignee of any of the Indebtedness. The duties,
covenants, conditions, obligations, and warranties of Mortgagor
in this Mortgage shall be joint and several obligations of
Mortgagor and each Mortgagor, if more than one, and Mort-
gagor's heirs, personal representatives, successors and
assigns. Each party who executes this Mortgage and each
subsequent owner of the Mortgaged Property, or any part
thereof (other than Mortgagee), covenants and agrees that it
will perform, or cause to be performed, each term and cove-
nant of this Mortgage.

    6.10  Mortgagee's Consent.  To the extent permitted by
applicable law, unless otherwise expressly provided herein,
in any instance hereunder where Mortgagee's approval or
consent is required or the exercise of Mortgagee's judgment
is required, the granting or denial of such approval or
consent and the exercise of such judgment shall be within the
sole discretion of Mortgagee, and Mortgagee shall not, for
any reason or to any extent, be required to grant such approval

PLEAD015330

RECL 1148 PG 1017

or consent or exercise such judgment in any particular manner regardless of the reasonableness of either the request or Mortgagee's judgment.

6.11  Severability.  If any provision of this Mortgage is held to be illegal, invalid, or unenforceable under present or future laws effective while this Mortgage is in effect, the legality, validity and enforceability of the remaining provisions of this Mortgage shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision there shall be added automatically as a part of this Mortgage a provision which is legal, valid and enforceable and as similar in terms to such illegal, invalid or unenforceable provision as may be possible.  If any of the Indebtedness should be unsecured, the unsecured portion of the Indebtedness shall be completely paid prior to the payment of the secured portion of such Indebtedness, and all payments made on account of the Indebtedness shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Indebtedness.

6.12  Modification or Termination.  This Mortgage may only be modified or terminated by a written instrument or instruments executed by the party against whom enforcement of the modification or termination is asserted.  Any alleged modification or termination which is not so documented shall not be effective as to any party.

6.13  No Partnership.  Nothing contained in the Loan Instruments is intended to create any partnership, joint venture or association between Mortgagor and Mortgagee, or in any way make Mortgagee a co-principal with Mortgagor with reference to the Mortgaged Property, and any inferences to the contrary are hereby expressly negated.

6.14  No Homestead.  With respect to each Mortgagor who is an individual, no part of the Mortgaged Property constitutes any part of his business or other homestead.

6.15  Headings.  The Article, Paragraph and Subparagraph headings hereof are inserted for convenience of reference only and shall not alter, define, or be used in construing the text of such Articles, Paragraphs or Subparagraphs.

6.16  Applicable to Leasehold Mortgages.  If this Mortgage creates a lien on a Leasehold Estate, then the following provisions shall apply:

-23-

PLEAD015331

⊞ 1148 ₚᴳ 1018

(a)  Mortgagor shall fully perform and comply with all covenants, warranties, representations, and other obligations imposed upon or assumed by it as lessee, sublessee, or otherwise under any lease, sublease or similar agreement pursuant to which it has a possessory interest in the Land, and upon Mortgagor's failure or alleged failure (notwithstanding that the alleged failure may be contested by Mortgagor) so to do, Mortgagee shall have the absolute and immediate right to enter upon the Mortgaged Property and to take such other action, to such extent and as often as Mortgagee, in its opinion, deems necessary or desirable, to prevent or to cure any such failures or alleged failures by Mortgagor; and

(b)  Mortgagor hereby agrees with Mortgagee that it will not, without Mortgagee's prior written consent thereto, (i) terminate or modify the lease, sublease or similar agreement in any respect or (ii) permit the fee title to the Mortgaged Property demised by such lease, sublease or agreement (if fee title be so demised) and the Leasehold Estate so created to merge, but rather the said fee title to the said Leasehold Estate shall always be separate and distinct.

6.17  <u>No Representations</u>.  Mortgagor hereby acknowledges that, except as incorporated in writing in the Loan Instruments, there are not, and were not, and no persons are or were authorized by Mortgagee to make, any representations, understandings, stipulations, agreements or promises, whether oral or written.

6.18  <u>Joint and Several Obligations</u>.  Where two or more persons or entities have executed this Mortgage, unless the context clearly indicates otherwise, the term "Mortgagor" as used herein means the Mortgagors hereunder or either or any of them and the obligations of Mortgagor shall be joint and several.

6.19  <u>Notices</u>.  Except as otherwise provided herein, any notice, request, demand and other communication required or permitted hereunder shall be made in writing and, if by telegram or telex, shall be deemed to have been validly served, given or delivered when sent, and if by mail, shall

PLEAD015332

ᴵᴿᴱᴸ 1148 ᴾᴳ 1019

be deemed to have been validly served, given or delivered
seven (7) days after the date sent by registered or certified
airmail, postage prepared.  All such notices, requests,
demands or other communications shall be addressed to the
party to be notified at its address on the first page hereof
or at such other address as each party may designate for
itself by like notice.

6.20  Governing Law.  This Mortgage is governed by and
construed in accordance with the law of the State of New
York.

ARTICLE VII

EVENTS OF DEFAULT

The occurrence of any one of the following shall be a
default hereunder ("Event of Default"):

7.1  Failure to Pay Indebtedness.  If any of the Indebted-
ness is not paid when due, whether by acceleration or other-
wise.

7.2  Non-Performance of Covenants.  If there shall be a
default in the full and timely performance of any of the
conditions, terms, provisions or covenants in the Loan
Instruments.

7.3  False Representation.  If any statement, represen-
tation or warranty in the Loan Instruments, any financial
statement or any other writing delivered to Mortgagee in
connection with the Indebtedness is false, misleading or
erroneous in any material respect.

7.4  Transfer of the Mortgaged Property.  If title
(legal or equitable) to all or any part of the Mortgaged
Property (other than obsolete or worn Personal Property
replaced by adequate substitutes equal to or greater in value
than the replaced items when new) shall become vested in any
party other than Mortgagor, whether by operation of law or
otherwise, without the prior written consent of Mortgagee,
which may be withheld in Mortgagee's sole and unfettered
discretion, and which, if granted, may be granted conditioned
upon such conditions as Mortgagee may specify, in its sole
and unfettered discretion, including, without limitation, the
execution by the transferee of a written assumption agreement
containing such terms as Mortgagee may require, an increase

-25-

PLEAD015333

λεκ 1148 ρε 1020

in the rate of interest payable under the Note and/or the payment of a transfer fee, subject however, to the limitations on interest set forth herein.

7.5 Bankruptcy, Insolvency, Etc. If the owner of the Mortgaged Property or any person obligated to pay, or guaranteeing payment of, the Indebtedness:

(a) Files a petition or other pleading seeking reorganization or rearrangement or protection under any applicable liquidation, conservatorship, bankruptcy, rearrangement, insolvency, reorganization or similar laws affecting the rights of creditors generally, as in effect from time to time, state or federal ("Debtor Relief Laws"), or shall be unable or admit in writing its inability to pay, or shall generally fail to pay, its debts as they become due, or suffers any material, adverse change in its financial condition; or

(b) In any involuntary proceeding under any Debtor Relief Laws commenced against any of them (i) files an answer admitting that it is generally not paying its debts as such debts become due, or admitting the material allegations of a petition filed against it, (ii) fails to obtain a dismissal of such proceeding within sixty (60) days of its commencement, (iii) converts the proceeding from one chapter of any Debtor Relief Laws to another chapter of any Debtor Relief Laws, or (iv) is the subject of an order for relief in such proceeding; or

(c) Has a custodian, receiver, trustee, conservator or liquidator appointed for or take possession of substantially all of its property or has any court take jurisdiction of substantially all of its property or has any governmental authority or regulatory body condemn, seize or otherwise appropriate substantially all of its property; or

(d) Fails to have discharged within a period of thirty (30) days any attachment, sequestration, or similar writ levied upon any property of such person; or

-26-

PLEAD015334

BOOK 1148 PG 1021

(e)  Fails to pay immediately any final money judgment against such person; or

(f)  Makes a general assignment for the benefit of creditors or reschedules or restructures substantially all of its debt.

7.6  Abandonment.  If Mortgagor abandons any of the Mortgaged Property.

7.7  Dissolution.  If Mortgagor or any guarantor of any Indebtedness dies, dissolves, liquidates, or (if corporate Mortgagor or guarantor) merges with or is consolidated into any other corporation.

## ARTICLE VIII

## REMEDIES

If an Event of Default shall occur, Mortgagee may exercise any one or more the the following remedies, without notice:

8.1  Acceleration.  Mortgagee may declare the Indebtedness immediately due and payable, without notice, whereupon the same shall become immediately due and payable.  Mortgagor hereby waives notice of intent to accelerate, except as may be otherwise provided in the Loan Instruments.

8.2  Enforcement of Assignment of Rents and Leases. Mortgagee may:

(a)  Terminate the license granted to Mortgagor to collect the Rents, collect and sue for the Rents in Mortgagee's own name, give receipts and releases therefor, and after deducting all expenses of collection, including reasonable attorneys' fees, apply the net proceeds thereof to any Indebtedness as Mortgagee may elect;

(b)  Make, modify, enforce, cancel or accept surrender of any Leases, evict tenants, adjust the Rents, maintain, decorate, refurbish, repair, clean, and make space ready for renting, and otherwise do anything Mortgagee deems advisable in connection with the Mortgaged Property;

-27-

PLEAD015335

BK 1148 PG 1022

(c)  Apply the Rents so collected to the operation and management of the Mortgaged Property, including the payment of reasonable management, brokerage and attorneys' fees, or to the Indebtedness; and

(d)  Require Mortgagor to transfer all security deposits and records thereof to Mortgagee.

8.3  <u>Power of Enforcement</u>.  Mortgagee may, either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy (a) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Mortgage, the Guaranty or any other right, (b) to foreclose this Mortgage and to sell the Mortgaged Property as an entirety or otherwise, as Mortgagee may determine, and (c) to pursue any other remedy available to it, including any remedy available to it under the Loan Agreement or under any of the Loan Instruments, all as Mortgagee shall deem most effectual for such purposes.  Mortgagee may take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, as Mortgagee may determine.  Mortgagee may elect to pursue any one or more or all of the foregoing.

8.4  <u>Tenancy at Will</u>.  In the event of a foreclosure sale hereunder, if at the time of such sale Mortgagor occupies the portion of the Mortgaged Property so sold or any part thereof, Mortgagor shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either tenant or landlord, at a reasonable rental per day based upon the value of the portion of the Mortgaged Property so occupied, such rental to be due and payable daily to the purchaser.  An action of forcible detainer shall lie if the tenant holds over after a demand in writing for possession of such Mortgaged Property.

8.5  <u>Entry on Mortgaged Property</u>.  Upon the occurrence of an Event of Default hereunder, Mortgagee may enter into and upon and take possession of all or any part of the Mortgaged Property, and may exclude Mortgagor, and all persons claiming under Mortgagor, and its or their agents or servants, wholly or partly therefrom; and, holding the same, Mortgagee may use, administer, manage, operate, and control the Mortgaged Property and may exercise all rights and powers of Mortgagor in the name, place and stead of Mortgagor, or

-28-

PLEAD015336

𝑘𝐸𝐸 1148 𝑃𝐺 1023

otherwise, as the Mortgagee shall deem best; and in the
exercise of any of the foregoing rights and powers Mortgagee
shall not be liable to Mortgagor for any loss or damage
thereby sustained unless due solely to the willful misconduct
or gross negligence of Mortgagee.

8.6  Trustee or Receiver.  Mortgagee may make applica-
tion to a court of competent jurisdiction as a matter of
strict right and without notice to Mortgagor or regard to the
adequacy of the Mortgaged Property for the repayment of the
Indebtedness, for appointment of a receiver of the Mortgaged
Property and Mortgagor does hereby irrevocably consent to
such appointment.  Any such receiver shall have all the usual
powers and duties of receivers in similar cases, including
the full power to rent, maintain and otherwise operate the
Mortgaged Property upon such terms as may be approved by the
court, and shall apply the Rents in accordance with the
provisions of Paragraph 2.1 hereof.

8.7  Mortgagee's Rights to Perform.  Upon Mortgagor's
failure to make any payment or perform any act required by
the Loan Instruments, then at any time thereafter, and with-
out notice to or demand upon Mortgagor and without waiving or
releasing any other right, remedy or recourse, Mortgagee may
(but shall not be obligated to) make such payment or perform
such act for the account of and at the expense of Mortgagor,
and shall have the right to enter the Mortgaged Property for
such purpose and to take all such action thereon as it may
deem necessary or appropriate.

8.8  Reimbursement of Expenditure.  If Mortgagee shall
expend any money chargeable to Mortgagor or subject to reim-
bursement by Mortgagor under the terms and provisions of the
Loan Instruments, Mortgagor will, after demand therefor by
Mortgagee, immediately repay the same to Mortgagee at the
place specified herein, together with interest thereon at the
Default Rate (as defined in this Mortgage), from and after
the date of demand therefor.

8.9  Other Rights.  Mortgagee may exercise any and all
other rights, remedies and recourses granted under the Loan
Instruments or now or hereafter existing in equity or at law
for the protection and preservation of the Mortgaged Property.

8.10  Remedies Cumulative, Concurrent and Nonexclusive.
Mortgagee shall have all rights, remedies and recourses
granted in the Loan Instruments and available at law or
equity (including, without limitation, those granted by the

-29-

PLEAD015337

Code and applicable to the Mortgaged Property, or any portion
thereof) and same (a) shall be cumulative and concurrent, (b)
may be pursued separately, successively or concurrently
against Mortgagor or others obligated for the Indebtedness,
or any part thereof or against any one or more of them, or
against the Mortgaged Property, at the sole discretion of
Mortgagee, (c) may be exercised as often as occasion therefor
shall arise, it being agreed by Mortgagor that the exercise
or failure to exercise any of same shall in no event be
construed as a waiver or release thereof or of any other
right, remedy or recourse, and (d) are intended to be, and
shall be, nonexclusive.

8.11   Discontinuance of Proceedings and Restoration of the
Parties.   In case Mortgagee shall have proceeded to enforce
any right, power or remedy under this Mortgage by foreclosure,
entry or otherwise, and such proceedings shall have been
discontinued or abandoned for any reason, or shall have been
determined adversely to Mortgagee, then and in every such
case Mortgagor and Mortgagee shall be restored to their
former positions and rights hereunder, and all rights, powers
and remedies of Mortgagee shall continue as if no such proceed-
ing had been taken (except that if such proceedings shall
have been determined adversely to Mortgagee, then Mortgagee
shall not be restored to its former position hereunder to the
extent such restoration would conflict with the terms of such
adverse judgment).

8.12   Fees and Expenses.   In any suit to foreclose the
liens and security interests hereof, there shall be allowed
and included as additional Indebtedness secured hereby in the
decree for sale, to the full extent permitted by law, all
costs and expenses which may be paid or incurred by or on
behalf of Mortgagee for attorneys' fees, appraiser's fees,
receiver's costs and expenses, insurance, taxes, outlays for
documentary and expert evidence, costs for preservation of
the Mortgaged Property, stenographer's charges, publication
cost and costs of procuring all abstracts of title, title
searches and examinations, guarantee policies, Certificates
of Title issued by the Registrar of Titles (Torrens certifi-
cates), and similar data and assurances with respect to title
as Mortgagee may deem to be reasonably necessary either to
prosecute such suit or to evidence to bidders at any sale
which may be had pursuant to such decree the true condition
of the title to or value of the Mortgaged Property or for any
other reasonable purpose.   The amount of any such costs and
expenses which may be paid or incurred after the decree for
sale is entered may be estimated and the amount of such

PLEAD015338

estimate may be allowed and included as additional Indebted-
ness secured hereby in the decree for sale.

    8.13   Lien Law.   In compliance with Section 13 of the
Lien Law, Mortgagor will receive the advances secured by this
Mortgage and will hold the right to receive such advances as
a trust fund to be applied first for the purpose of paying
the cost of the improvement, and Mortgagor will apply the
same first to the payment of the cost of the improvement
before using any part of the total of the same for any other
purpose.

    8.14   Changes in Laws Regarding Taxation.   Nothwithstand-
ing anything herein to the contrary, in the event of the pass-
age after the date of this Mortgage of any law of the State
of New York deducting from the value of real property for the
purpose of taxation any lien or encumbrance thereon or changing
in any way the laws for the taxation of mortgages for debts
secured by mortgages for state or local purposes or the manner
of the collection of any such taxes, and imposing a tax, either
directly or indirectly, on this Mortgage, Mortgagee shall have
the right, at its option, to declare the Indebtedness due and
payable on a date specified in a prior notice to Mortgagor of
not less than thirty (30) days.

    EXECUTED on the date first set forth above.

                    MORTGAGOR:

                    AKORP N.V., a corporation organized
                    under the laws of the Netherlands
                    Antilles

                    By: _____
                      Name: JORDAN R. METZGER
                      Title:   Attorney-in-Fact

PLEAD015339

ᴸᴵᴮ 1148 ᴾᴳ 1028

# EXHIBIT "A"

## MORTGAGED PROPERTY

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situated, lying and being in the Borough of Manhattan, City, County and State of New York, more particularly described as follows:

Parcel I  Unit No. 46-47A in the Olympic Tower Condominium (hereinafter called the "Condominium"), together with the undivided 1.8179008 percent interest in the common elements of the Condominium appurtenant to said Unit, conveyed to the Mortgagor by Deed recorded in the office of the Register of the City of New York, New York County in Reel 371 at page 1573;

Parcel II  Unit No. 46B in the Condominium together with the undivided .1845180 percent interest in the common elements of the Condominium appurtenant to said Unit, conveyed to the Mortgagor by Deed recorded in the office of the Register of the City of New York, New York County, in Reel 371 at Page 1585;

Parcel III  Unit No. 47D in the Condominium, together with the undivided .2601641 percent interest in the common elements of the Condominium appurtenant to said Unit, conveyed to the Mortgagor by Deed recorded in the office of the Register of the City of New York, New York County in Reel 371 at page 1609;

Parcel IV  Unit No. 47E in the Condominium, together with the undivided .2093882 percent interest in the common elements of the Condominium appurtenant to said Unit, conveyed to the Mortgagor by Deed recorded in the office of the Register of the City of New York, New York County in Reel 371 at Page 1621;

Parcel V  Unit No. 47F in the Condominium, together with the undivided .1690078 percent interest in the common elements of the Condominium appurtenant to said Unit, conveyed to the Mortgagor by Deed recorded in the office of the Register of the City of New York, New York County in Reel 371 at Page 1633.

PLEAD015340

REEL 1148 PG 1027

EXHIBIT "B"

## PERMITTED EXCEPTIONS

1. Easement in Reel 388, page 108.

2. Terms, covenants and conditions of Condominium Declaration recorded in Reel 349, page 1356, and re-recorded in Reel 351, page 1, as amended by documents recorded in Reel 355, page 1512, Reel 360, page 1746, Reel 371, page 48, Reel 375, page 404, Reel 394, page 573, Reel 397, page 1846, and Reel 397, page 1838 and By-Laws of Olympic Tower Condominiums.

3. Construction Declaration recorded in Reel 306, page 647.

4. Party Wall Agreement recorded on 6/24/45 in Liber 4359, Cp. 277.

5. Declaration by Arvic Realty Corp. recorded on 7/17/72 in Reel 246, page 1346, as amended by document in Reel 271, page 1803.

6. Easement Agreement recorded in Reel 352, page 1162.

DAS77:D

-34-

PLEAD015341

REEL 1148 PG 1028

STATE OF NEW YORK    )
                     :   ss.:
COUNTY OF NEW YORK   )


On the 21st day of November, 1986, before me personally
came JORDAN R. METZGER to me known, who, being by me duly
sworn, did depose and say that he resides at Beaver Dam
Road, Katonah, New York 10536 and that he is the attorney-
in-fact for Akorp N.V., a corporation organized under the
laws of the Netherlands Antilles and that he being authorized
to do so executed the aforesaid instrument as the act and
deed of Akorp N.V. for the uses and purposes in said instrument
set forth, pursuant to a power of attorney duly executed
by the said Akorp N.V., dated as of 1/18/82, and recorded
in the office of the Register of the County of New York
on 4/15/83 in Reel 679, page 1097.


_____
Notary Public

MAX BENDELSTEIN
Notary Public, State of New York
No. 43-8545206
Qualified in Richmond County
Term Expires

PLEAD015342

REEL 1148 PG 1023

This instrument was prepared by and
recorded counterparts should be
returned to:

RECORDING TAX
$

Mr. Donald A. Shapiro
Akin, Gump, Strauss, Hauer & Feld
4100 First City Center
Dallas, Texas  75201

Location:  New York County, New York

| | | |
|---|---|---|
| MORT | 0929 | $45. |
| MTGETX | 0930 | $202,500. |

This instrument is a Mortgage (with Security Agreement and
Assignment of Rents and Leases) of both real and personal
property, including fixtures.

MORTGAGE (WITH SECURITY AGREEMENT AND
ASSIGNMENT OF RENTS AND LEASES)

Dated:  November , 1986

AKORP N.V.,
as Mortgagor

to

THE NATIONAL COMMERCIAL BANK,
as Mortgagee

RECEIVED
RECORDING TAX OF $
Includes Special
Add'l Tax of $
SERIAL NO.

NOV 25 1986

CITY REGISTER

TICOR TITLE
39 BROADWAY
NEW YORK, N.Y.

OFFICE OF CITY REGISTER
New York County
RECORDED
Witness my hand
and official seal

CITY REGISTER

PLEAD015343



**Exhibit 4**

PLEAD015344



THE NATIONAL COMMERCIAL BANK
INTERNATIONAL DIVISION

Date: 28th July, 1986

Sheikh Adnan Mohamed Khashoggi
P.O.Box 6
Washem Street, Murabba'a District
Riyadh

Dear Sirs,

The National Commercial Bank, P.O.Box 3555, Jeddah (the "Bank") is pleased to extend to you, Mr. Adnan Mohamed Khashoggi (the "Borrower") a loan facility in the amount of U.S.Dollars Eight Million (US$8,000,000) (the "Facility") subject to the terms and conditions enumerated below and the acceptance thereof by the Borrower.

1.   **Facility**

     The Facility shall become effective immediately as of the date hereof and it is agreed and acknowledged by the Borrower that the entire amount of the Facility has already been drawndown and received by the Borrower.

2.   **Repayment**

     The loan extended to the Borrower according to the Facility shall be repaid in full to the Bank on the date (the "Maturity Date") which is the second anniversary of the date hereof.

3.   **Commission Periods**

     The period for which the Facility is outstanding shall be divided into successive commission periods (the "Commission Periods") each of which (other than the first which shall commence as of the date hereof and end on 1st October, 1986) shall start forthwith upon the expiry of the preceding such period. The duration of each Commission Period shall be three months provided that:

1

PLEAD015346

(i)    if any Commission Period would end on a day which is not a Business Day, such period shall be extended to the next Business Day unless such next Business Day falls in the next calendar month in which event such Commission Period would end on the preceding Business Day;

(ii)   the last Commission Period shall be of such duration that it will end on the Maturity Date.

4.  **Commission**

The Borrower shall pay Commission on the unpaid and outstanding amount under the Facility.  Such Commission shall accrue from day to day and shall be calculated with reference to the Facility amount on the basis of 360 days in a year and actual days elapsed.  Such Commission shall be paid in arrears on the last day of each Commission Period.  The rate at which such interest is payable for each Commission Period shall be determined by the Bank as being the aggregate of 1% and the rate at which Dollar deposits are offered by the Bank in the London Interbank Eurodollar Market in an amount equal to the amount of the Facility and for a period equal to such Commission Period.  Such rate, determined as aforesaid, shall be conclusive and binding on the Borrower.

5.  **Prepayment**

The Borrower may prepay without penalty, but with accrued Commission thereon, the whole or any part of the Facility (such part being at least U.S.Dollars 1,000,000 or an integral multiple thereof) on the last day of any Commission Period provided that the Borrower shall have given to the Bank not less than 10 days notice of its intention to make such prepayment specifying the amount to be prepaid.

6.  **Representations/Warranties**

In order to induce the Bank to enter in this Letter Agreement, the Borrower represents and warrants that:

2

PLEAD015347

(a)     Neither the Borrower's entry into this Letter
        Agreement nor its execution of any document
        mentioned or contemplated hereby will contravene
        any provision of law, regulation, judgement,
        franchise or permit applicable to it, or any
        agreement or instrument to which it is party, or
        cause any limitation, by which it is bound, to be
        infringed or exceeded.

(b)     There are no claims, actions, suits or proceedings
        pending or threatened against the Borrower which
        might adversely effect in a material way
        Borrower's ability to repay the Facility or
        adversely affect the validity or enforceability of
        this Letter Agreement.

(c)     No event has occurred and/or is continuing which
        constitutes or which, with the giving of notice or
        lapse of time or both, would constitute an Event
        of Default as defined in paragraph 7 below.

7.   Events of Default

Upon the occurrence or continuation of any of the
following Events of Default:

(a)     The Borrower shall fail to promptly pay any sums
        due hereunder; or

(b)     any representation/warranty made by the Borrower
        herein shall prove to be incorrect in any material
        respect; or

(c)     any indebtedness of the Borrower for or in respect
        of borrowed money is not paid on the due date
        therefor or any such indebtedness becomes due and
        payable prior to its specified maturity or any
        creditor of the Borrower becomes entitled to
        declare any such indebtedness due and payable
        prior to its specified maturity; or

(d)     steps are taken or legal proceedings are started
        for declaration of bankruptcy of the Borrower or
        for the appointment of a receiver, trustee or
        similar officer of all or any part of the

3

PLEAD015348

Borrower's assets and revenues; or

(e)    the Borrower shall cease or threaten to cease to carry on its usual business activities; or

(f)    the death of the Borrower; or

(g)    in the sole judgement of the Bank, a situation shall arise giving reasonable grounds for maintaining that the Borrower cannot comply with the obligations stipulated in this Letter Agreement;

then and in such event, and at any time thereafter if any such event shall then be continuing, the Bank may declare the Facility to be cancelled forthwith whereupon any amounts outstanding thereunder shall immediately become due and payable together with all accrued Commission thereon and any other amounts due hereunder without presentation, demand, protest or notice of any kind all of which are hereby expressly waived. Additionally, the Bank shall have the entitlement to realize/enforce any security/collateral held by it in or towards repayment of the Facility.

## 8.   Set-off

In the event of failure by the Borrower to make payment of any amount due hereunder or to perform any obligation hereunder, the Bank may immediately and without prior notice apply any funds in any of the Borrower's account with the Bank to the settlement of the amount owed.

## 9.   Payments

(a)    All payments to be made by the Borrower hereunder shall be made without set-off or counterclaim and free and clear of and without deduction for or on account of any present or future taxes, withhold-ings, levies, imposts, duties, charges, fees, etc. of any nature whatsoever and by whomsoever imposed. If the Borrower is compelled by law to make payment subject to any such deductions, the Borrower shall pay such additional amounts as may be necessary to ensure that the Bank receives a

4

PLEAD015349

net amount equal to the full amount which it would
have received had payment not been made subject to
such deduction.

(b)     All payments to be made by the Borrower hereunder
        shall be made to the Bank in U.S.Dollars, for
        value on the date upon which the relevant payment
        is due and in the same day funds as shall be usual
        or customary for settlement of Dollar transactions
        in New York City. All such payments shall be made
        for the account of the Bank with The National
        Commercial Bank, 245 Park Avenue, New York, New
        York 10017 or at such office or bank in New York
        City as may from time to time be designated by the
        Bank in the future.

(c)     Whenever any payment hereunder shall become due on
        a day which is not a Business Day, the due date
        thereof shall be extended to the next succeeding
        Business Day unless such Business Day falls in the
        next calendar month in which event such due date
        shall be the immediately preceding Business Day.

## 10. Illegality

If any change in or introduction of any law, regulation
or treaty, or any change in the interpretation or
application thereof, shall make it unlawful for the Bank
to fund or maintain the Facility, the Bank may by notice
to the Borrower declare its obligations to be terminated
forthwith hereunder whereupon the Borrower will prepay
the Facility with accrued commission together with other
amounts necessary to compensate the Bank for any loss
(including loss of profit) or expenses on account of
funds borrowed, contracted for or utilised to fund its
participation in the Facility.

## 11. Increased Costs

If the result of any change in or any introduction of any
law, regulation, treaty, or official directive or request
(whether or not having the force of law) or change in the
interpretation or application thereof or compliance by
the Bank with the same (including without limitation
those relating to taxation of any kind, reserve require-

5

PLEAD015350

ments or banking or monetary controls) is that the cost to the Bank of making, funding or maintaining the Facility is increased then upon demand by the Bank, the Borrower shall pay to the Bank such amount as shall compensate the Bank for such increased cost and the certificate of the Bank specifying the amount of such compensation shall be, in the absence of manifest error, conclusive and binding.

## 12. Indemnity

The Borrower shall on demand indemnify the Bank for all amounts as the Bank may specify to be necessary to compensate it for all costs, expenses, liabilities and losses sustained or incurred by it as a result of the failure on the part of the Borrower to pay sum(s) due hereunder.

## 13. Miscellaneous

(a)     No failure to exercise and no delay in exercising on the part of the Bank, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(b)     "Business Day" as referred to in this Letter Agreement shall mean any day on which banks are open for business in Jeddah, London and New York City.

## 14. Law

This Letter Agreement shall be governed by and construed in accordance with the laws of England without prejudice to the rights of the Bank under the laws and regulations of the Kingdom of Saudi Arabia.

6

PLEAD015351

If the above is acceptable to you please confirm the
acceptance thereof by signing below on this Letter Agreement
whereupon the same will constitute a binding Agreement
between the Bank and the Borrower.

Yours faithfully,

The National Commercial Bank
Jeddah

Agreed and accepted:

FOR Adnan Mohamed Khashoggi

Witnessed:

1. _____    2. _____

7

PLEAD015352



Exhibit 5

PLEAD015353

US$ 8,000,000                                    Date: 28th July, 1986

## PROMISSORY NOTE

**FOR VALUE RECEIVED,** the undersigned hereby unconditionally and irrevocably promises to pay to The National Commercial Bank in Jeddah or to order at Jeddah, the sum of US$ 8,000,000 (United States Dollars Eight Million only) in immediately available funds on 28th July, 1988.

The undersigned hereby waives diligence, presentation, demand, protest, notice of non-payment and notice of dishonour with respect to this Promissory Note.

**RECOURSE WITHOUT PROTEST OR COSTS.**

All payments made by the undersigned hereunder shall be made free and clear of and without deduction or withholding for or on account of any set-off, counterclaim any taxes or other matters.

FOR ADNAN MOHAMED KHASHOGGI

Witnessed by:

1. _____        2. _____



EXHIBIT   6

PLEAD015355

بسم الله الرحمن الرحيم

No. : ...........................

Date: 3rd March, 1987

البنـك الأهـلي التجـاري
**THE NATIONAL COMMERCIAL BANK**
**INTERNATIONAL DIVISION**

Sheikh Adnan Mohamed Khashoggi
P.O.Box 6
Washem Street, Murabba'a District
Riyadh

Dear Sirs,

The National Commercial Bank, P.O.Box 3555, Jeddah (the
"Bank") is pleased to extend to you, Mr. Adnan Mohamed
Khashoggi (the "Borrower") a loan facility in the amount of
U.S.Dollars Nine Million (US$9,000,000) (the "Facility")
subject to the terms and conditions enumerated below and the
acceptance thereof by the Borrower.

1.   **Facility**

The Facility shall become effective immediately as of the
date hereof and it is agreed and acknowledged by the
Borrower that the entire amount of the Facility has
been drawndown and received by the Borrower.

2.   **Repayment**

The loan extended to the Borrower according to the
Facility shall be repaid in full to the Bank on the date
(the "Maturity Date") which is the second anniversary of
the date hereof.

3.   **Commission Periods**

The period for which the Facility is outstanding shall be
divided into successive commission periods (the
"Commission Periods") each of which (other than the first
which shall commence as of the date hereof and end on 2nd
April, 1987) shall start forthwith upon the expiry of the
preceding such period. The duration of each Commission
Period shall be three months provided that:

---

C. R. 1588 · General Management · Jeddah, Saudi Arabia · P. O. Box 3555 Tel. 6446644 · Cable Address: BANK SAUDI · Telex: 605571/72/73

PLEAD015356

(i)     if any Commission Period would end on a day which
        is not a Business Day, such period shall be
        extended to the next Business Day unless such next
        Business Day falls in the next calendar month in
        which event such Commission Period would end on
        the preceding Business Day;

(ii)    the last Commission Period shall be of such
        duration that it will end on the Maturity Date.

4.  Commission

The Borrower shall pay Commission on the unpaid and
outstanding amount under the Facility.   Such Commission
shall accrue from day to day and shall be calculated with
reference to the Facility amount on the basis of 360 days
in a year and actual days elapsed.   Such Commission shall
be paid in arrears on the last day of each Commission
Period.   The rate at which such interest is payable for
each Commission Period shall be determined by the Bank as
being the aggregate of 1% and the rate at which Dollar
deposits are offered by the Bank in the London Interbank
Eurodollar Market in an amount equal to the amount of the
Facility and for a period equal to such Commission
Period.   Such rate, determined as aforesaid, shall be
conclusive and binding on the Borrower.

5.  Prepayment

The Borrower may prepay without penalty, but with accrued
Commission thereon, the whole or any part of the Facility
(such part being at least U.S.Dollars 1,000,000 or an
integral multiple thereof) on the last day of any
Commission Period provided that the Borrower shall have
given to the Bank not less than 10 days notice of its
intention to make such prepayment specifying the amount
to be prepaid.

6.  Representations/Warranties

In order to induce the Bank to enter in this Letter
Agreement, the Borrower represents and warrants that:

2

PLEAD015357

(a)     Neither the Borrower's entry into this Letter
        Agreement nor its execution of any document
        mentioned or contemplated hereby will contravene
        any provision of law, regulation, judgement,
        franchise or permit applicable to it, or any
        agreement or instrument to which it is party, or
        cause any limitation, by which it is bound, to be
        infringed or exceeded.

(b)     There are no claims, actions, suits or proceedings
        pending or threatened against the Borrower which
        might adversely effect in a material way
        Borrower's ability to repay the Facility or
        adversely affect the validity or enforceability of
        this Letter Agreement.

(c)     No event has occurred and/or is continuing which
        constitutes or which, with the giving of notice or
        lapse of time or both, would constitute an Event
        of Default as defined in paragraph 7 below.

7.  Events of Default

    Upon the occurrence or continuation of any of the
    following Events of Default:

(a)     The Borrower shall fail to promptly pay any sums
        due hereunder; or

(b)     any representation/warranty made by the Borrower
        herein shall prove to be incorrect in any material
        respect; or

(c)     any indebtedness of the Borrower for or in respect
        of borrowed money is not paid on the due date
        therefor or any such indebtedness becomes due and
        payable prior to its specified maturity or any
        creditor of the Borrower becomes entitled to
        declare any such indebtedness due and payable
        prior to its specified maturity; or

(d)     steps are taken or legal proceedings are started
        for declaration of bankruptcy of the Borrower or
        for the appointment of a receiver, trustee or
        similar officer of all or any part of the

3

PLEAD015358

Borrower's assets and revenues; or

(e)   the Borrower shall cease or threaten to cease to carry on its usual business activities; or

(f)   the death of the Borrower; or

(g)   in the sole judgement of the Bank, a situation shall arise giving reasonable grounds for maintaining that the Borrower cannot comply with the obligations stipulated in this Letter Agreement;

then and in such event, and at any time thereafter if any such event shall then be continuing, the Bank may declare the Facility to be cancelled forthwith whereupon any amounts outstanding thereunder shall immediately become due and payable together with all accrued Commission thereon and any other amounts due hereunder without presentation, demand, protest or notice of any kind all of which are hereby expressly waived.  Additionally, the Bank shall have the entitlement to realize/enforce any security/collateral held by it in or towards repayment of the Facility.

8.   **Set-off**

In the event of failure by the Borrower to make payment of any amount due hereunder or to perform any obligation hereunder, the Bank may immediately and without prior notice apply any funds in any of the Borrower's account with the Bank to the settlement of the amount owed.

9.   **Payments**

(a)   All payments to be made by the Borrower hereunder shall be made without set-off or counterclaim and free and clear of and without deduction for or on account of any present or future taxes, withholdings, levies, imposts, duties, charges, fees, etc. of any nature whatsoever and by whomsoever imposed.  If the Borrower is compelled by law to make payment subject to any such deductions, the Borrower shall pay such additional amounts as may be necessary to ensure that the Bank receives a

4

PLEAD015360

net amount equal to the full amount which it would have received had payment not been made subject to such deduction.

(b)   All payments to be made by the Borrower hereunder shall be made to the Bank in U.S.Dollars, for value on the date upon which the relevant payment is due and in the same day funds as shall be usual or customary for settlement of Dollar transactions in New York City. All such payments shall be made for the account of the Bank with The National Commercial Bank, 245 Park Avenue, New York, New York 10017 or at such office or bank in New York City as may from time to time be designated by the Bank in the future.

(c)   Whenever any payment hereunder shall become due on a day which is not a Business Day, the due date thereof shall be extended to the next succeeding Business Day unless such Business Day falls in the next calendar month in which event such due date shall be the immediately preceding Business Day.

## 10. Illegality

If any change in or introduction of any law, regulation or treaty, or any change in the interpretation or application thereof, shall make it unlawful for the Bank to fund or maintain the Facility, the Bank may by notice to the Borrower declare its obligations to be terminated forthwith hereunder whereupon the Borrower will prepay the Facility with accrued commission together with other amounts necessary to compensate the Bank for any loss (including loss of profit) or expenses on account of funds borrowed, contracted for or utilised to fund its participation in the Facility.

## 11. Increased Costs

If the result of any change in or any introduction of any law, regulation, treaty, or official directive or request (whether or not having the force of law) or change in the interpretation or application thereof or compliance by the Bank with the same (including without limitation those relating to taxation of any kind, reserve require-

5

PLEAD015361

ments or banking or monetary controls) is that the cost
to the Bank of making, funding or maintaining the
Facility is increased then upon demand by the Bank, the
Borrower shall pay to the Bank such amount as shall
compensate the Bank for such increased cost and the
certificate of the Bank specifying the amount of such
compensation shall be, in the absence of manifest error,
conclusive and binding.

## 12. Indemnity

The Borrower shall on demand indemnify the Bank for all
amounts as the Bank may specify to be necessary to
compensate it for all costs, expenses, liabilities and
losses sustained or incurred by it as a result of the
failure on the part of the Borrower to pay sum(s) due
hereunder.

## 13. Miscellaneous

(a)   No failure to exercise and no delay in exercising
on the part of the Bank, any right, power or
privilege hereunder shall operate as a waiver
thereof, nor shall any single or partial exercise
of any right, power or privilege preclude any
other or further exercise thereof. The rights and
remedies herein provided are cumulative and not
exclusive of any rights or remedies provided by
law.

(b)   "Business Day" as referred to in this Letter
Agreement shall mean any day on which banks are
open for business in Jeddah, London and New York
City.

## 14. Law

This Letter Agreement shall be governed by and construed
in accordance with the laws of England without prejudice
to the rights of the Bank under the laws and regulations
of the Kingdom of Saudi Arabia.

6

PLEAD015362

If the above is acceptable to you please confirm the acceptance thereof by signing below on this Letter Agreement whereupon the same will constitute a binding Agreement between the Bank and the Borrower.

Yours faithfully,

The National Commercial Bank
Jeddah

Agreed and accepted:

Adnan Mohamed Khashoggi

Witnessed:

1.

2.

7

PLEAD015363



Exhibit 7

PLEAD015364



PLEAD015365



Exhibit 8

PLEAD015366

(Translation)

## Promissory Note

In accordance with the Power of Attorney issued by the Notary Public of Riyadh No.1990 dated 23/3/1400H: Sufian Abdulfatah Yaseen

Issuer    : Adnan Mohammed Khashoggi

Guarantor: Through his agent

Maturity : 2/3/1989

Total Amount: US$9,000,000

I hereby declare to pay, according to this Promissory Note, to the order of The National Commercial Bank, the above-mentioned sum, say, US Dollars Nine Million on 2nd March, 1989.  Recourse without protest.

Jeddah:

Date                  : 2/7/1407H (corresponding to 2/3/1987G)

Issuer's Signature : _____

By                    : Sufian Abdulfatah Yaseen

Address               : P.O.Box 6, Riyadh

1

PLEAD015367



Exhibit 9

PLEAD015368

بــــم اللہ الرحمن الرحیم

THE NATIONAL COMMERCIAL BANK

INTERNATIONAL DIVISION

No. : ...................................

Date 22 May 1987

Sheikh Adnan Mohamed Khashoggi
P.O.Box 6
Washem Street, Murabba'a District
Riyadh

Dear Sirs,

The National Commercial Bank, P.O.Box 3555, Jeddah (the "Bank") is pleased to extend to you, Mr. Adnan Mohamed Khashoggi (the "Borrower") a loan facility in the amount of U.S.Dollars Nine Million (US$9,000,000) (the "Facility") subject to the terms and conditions enumerated below and the acceptance thereof by the Borrower.

1.  Facility

The Facility shall become effective immediately as of the date hereof and it is agreed and acknowledged by the Borrower that the entire amount of the Facility has been drawndown and received by the Borrower.

2.  Repayment

The loan extended to the Borrower according to the Facility shall be repaid in full to the Bank on the date (the "Maturity Date") which is the second anniversary of the date hereof.

3.  Commission Periods

The period for which the Facility is outstanding shall be divided into successive commission periods (the "Commission Periods") each of which (other than the first which shall commence as of the date hereof and end on 2nd April, 1987) shall start forthwith upon the expiry of the preceding such period. The duration of each Commission Period shall be three months provided that:

PLEAD015369

    (i)   if any Commission Period would end on a day which is not a Business Day, such period shall be extended to the next Business Day unless such next Business Day falls in the next calendar month in which event such Commission Period would end on the preceding Business Day;

    (ii)  the last Commission Period shall be of such duration that it will end on the Maturity Date.

## 4. Commission

The Borrower shall pay Commission on the unpaid and outstanding amount under the Facility. Such Commission shall accrue from day to day and shall be calculated with reference to the Facility amount on the basis of 360 days in a year and actual days elapsed. Such Commission shall be paid in arrears on the last day of each Commission Period. The rate at which such interest is payable for each Commission Period shall be determined by the Bank as being the aggregate of 1% and the rate at which Dollar deposits are offered by the Bank in the London Interbank Eurodollar Market in an amount equal to the amount of the Facility and for a period equal to such Commission Period. Such rate, determined as aforesaid, shall be conclusive and binding on the Borrower.

## 5. Prepayment

The Borrower may prepay without penalty, but with accrued Commission thereon, the whole or any part of the Facility (such part being at least U.S.Dollars 1,000,000 or an integral multiple thereof) on the last day of any Commission Period provided that the Borrower shall have given to the Bank not less than 10 days notice of its intention to make such prepayment specifying the amount to be prepaid.

## 6. Representations/Warranties

In order to induce the Bank to enter in this Letter Agreement, the Borrower represents and warrants that:

(a)   Neither the Borrower's entry into this Letter Agreement nor its execution of any document mentioned or contemplated hereby will contravene any provision of law, regulation, judgement, franchise or permit applicable to it, or any agreement or instrument to which it is party, or cause any limitation, by which it is bound, to be infringed or exceeded.

(b)   There are no claims, actions, suits or proceedings pending or threatened against the Borrower which might adversely effect in a material way Borrower's ability to repay the Facility or adversely affect the validity or enforceability of this Letter Agreement.

(c)   No event has occurred and/or is continuing which constitutes or which, with the giving of notice or lapse of time or both, would constitute an Event of Default as defined in paragraph 7 below.

7.   Events of Default

Upon the occurrence or continuation of any of the following Events of Default:

(a)   The Borrower shall fail to promptly pay any sums due hereunder; or

(b)   any representation/warranty made by the Borrower herein shall prove to be incorrect in any material respect; or

(c)   any indebtedness of the Borrower for or in respect of borrowed money is not paid on the due date therefor or any such indebtedness becomes due and payable prior to its specified maturity, or any creditor of the Borrower becomes entitled to declare any such indebtedness due and payable prior to its specified maturity; or

(d)   steps are taken or legal proceedings are started for declaration of bankruptcy of the Borrower or for the appointment of a receiver, trustee or similar officer of all or any part of the Borrower's assets and revenues; or

(e)    the Borrower shall cease or threaten to cease to carry on its usual business activities; or

(f)    the death of the Borrower; or

(g)    in the sole judgement of the Bank, a situation shall arise giving reasonable grounds for maintaining that the Borrower cannot comply with the obligations stipulated in this Letter Agreement;

then and in such event, and at any time thereafter if any such event shall then be continuing, the Bank may declare the Facility to be cancelled forthwith whereupon any amounts outstanding thereunder shall immediately become due and payable together with all accrued Commission thereon and any other amounts due hereunder without presentation, demand, protest or notice of any kind all of which are hereby expressly waived.  Additionally, the Bank shall have the entitlement to realize/enforce any security/collateral held by it in or towards repayment of the Facility.

## 8.  Setoff

In the event of failure by the Borrower to make payment of any amount due hereunder or to perform any obligation hereunder, the Bank may immediately and without prior notice apply any funds in any of the Borrower's account with the Bank to the settlement of the amount owed.

## 9.  Payments

(a)    All payments to be made by the Borrower hereunder shall be made without setoff or counterclaim and free and clear of and without deduction for or on account of any present or future taxes, withholdings, levies, imposts, duties, charges, fees, etc. of any nature whatsoever and by whomsoever imposed.  If the Borrower is compelled by law to make payment subject to any such deductions, the Borrower shall pay such additional amounts as may be necessary to ensure that the Bank receives a net amount equal to the full amount which it would

have received had payment not been made subject to such deduction.

(b)   All payments to be made by the Borrower hereunder shall be made to the Bank in U.S.Dollars, for value on the date upon which the relevant payment is due and in the same day funds as shall be usual or customary for settlement of Dollar transactions in New York City. All such payments shall be made for the account of the Bank with The National Commercial Bank, 245 Park Avenue, New York, New York 10017 or at such office or bank in New York City as may from time to time be designated by the Bank in the future.

(c)   Whenever any payment hereunder shall become due on a day which is not a Business Day, the due date thereof shall be extended to the next succeeding Business Day unless such Business Day falls in the next calendar month in which event such due date shall be the immediately preceding Business Day.

## 10. Illegality

If any change in or introduction of any law, regulation or treaty, or any change in the interpretation or application thereof, shall make it unlawful for the Bank to fund or maintain the Facility, the Bank may by notice to the Borrower declare its obligations to be terminated forthwith hereunder whereupon the Borrower will prepay the Facility with accrued commission together with other amounts necessary to compensate the Bank for any loss (including loss of profit) or expenses on account of funds borrowed, contracted for or utilised to fund its participation in the Facility.

## 11. Increased Costs

If the result of any change in or any introduction of any law, regulation, treaty, or official directive or request (whether or not having the force of law) or change in the interpretation or application thereof or compliance by the Bank with the same (including without limitation those relating to taxation of any kind, reserve requirements or banking or monetary controls) is that the cost

to the Bank of making, funding or maintaining the Facility is increased then upon demand by the Bank, the Borrower shall pay to the Bank such amount as shall compensate the Bank for such increased cost and the certificate of the Bank specifying the amount of such compensation shall be, in the absence of manifest error, conclusive and binding.

## 12. Indemnity

The Borrower shall on demand indemnify the Bank for all amounts as the Bank may specify to be necessary to compensate it for all costs, expenses, liabilities and losses sustained or incurred by it as a result of the failure on the part of the Borrower to pay sum(s) due hereunder.

## 13. Miscellaneous

(a) No failure to exercise and no delay in exercising on the part of the Bank, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(b) "Business Day" as referred to in this Letter Agreement shall mean any day on which banks are open for business in Jeddah, London and New York City.

## 14. Law

This Letter Agreement shall be governed by and construed in accordance with the laws of England without prejudice to the rights of the Bank under the laws and regulations of the Kingdom of Saudi Arabia.

If the above is acceptable to you please confirm the

acceptance thereof by signing below on this Letter Agreement whereupon the same will constitute a binding Agreement between the Bank and the Borrower.

Yours faithfully,



The National Commercial Bank
Jeddah

Agreed and accepted:

Adnan Mohamed Khashoggi

Witnessed:

1. _____     2. _____

7

PLEAD015375



Exhibit 10

PLEAD015376

US$9,000,000                          Date: 22nd May 1987

## PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned hereby unconditionally
and irrevocably promises to pay to The National Commercial
Bank in Jeddah or to order at Jeddah, the sum of US$9,000,000
(United States Dollars Nine Million only) in immediately
available funds on 22nd May 1989.

The undersigned hereby waives diligence, presentation,
demand, protest, notice of non-payment and notice of
dishonour with respect to this Promissory Note.

RECOURSE WITHOUT PROTEST OR COSTS.

All payments made by the undersigned hereunder shall be made
free and clear of and without deduction or withholding for or
on account of any set-off, counterclaim any taxes or other
matters.

ADNAN MOHAMED KHASHOGGI

Witnessed by:

1.                                    2.

PLEAD015377