UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) ) | 03 MDL 1570 (GBD)(FM) ECF Case |

*This document relates to:*
    All Cases

## AFFIDAVIT OF MITCHELL R. BERGER

    1.    I am a member of the law firm of Patton Boggs LLP, attorneys for Defendant The National Commercial Bank ("NCB"), and am a member of the bar of this Court.  I respectfully submit this Affidavit in support of NCB's renewed motion to dismiss this action.  This Affidavit is based upon personal knowledge of the facts set forth herein and information derived from a review of the exhibits hereto.

    2.    Attached as Exhibits 1 through 7, respectively, are true and correct copies of NCB's annual reports for the years 1996 through 2002, as provided to me by NCB.  The annual reports reflect that:

> The Bank provides certain investment management services to its customers.  These services include the management of a variety of investment funds in association with professional investment managers.  The assets of these funds do not form part of the Bank's assets and, accordingly, are not included in the financial statements of the Bank.

Exh. 1 (1996) at p. 31, #19; *see also* Exh. 2 (1997) at p. 35, #23; Exh. 3 (1998) at p. 35; #22; Exh. 4 (1999) at p. 24, #20; Exh. 5 (2000) at p. 24, #21; Exh. 6 (2001) at p. 33, #31; and Exh. 7 (2002) at p. 42, #37.  As the NCB financial statements note, in accordance with International Accounting Standards: "Assets held in trust or in a fiduciary capacity are not treated as assets of the Bank and, accordingly, are not included in these [NCB] financial statements." *See* Exh. 6 (2001) at p. 12, #2(q); *see also* Exh. 7 (2002) at p. 24, #2(q).

3.  Attached as Exhibit 8 is a true and correct copy of a letter dated August 28, 2006 from the Saudi Arabian Monetary Agency ("SAMA") (the Saudi central bank), informing NCB that, among other things, SAMA is "not aware of any audit of NCB undertaken in 1998 intended to explore whether NCB played a knowing role in the financing of terrorist activities directed against the United States or one that confirmed that NCB knowingly financed terrorist acts against the United States."

4.  Attached as Exhibit 9 is a true and correct copy of a December 11, 2006 letter from Ronald Liebman to Andrew Maloney in which (at p. 4) NCB informed plaintiffs that there had been "a February 1998 report of an examination of NCB conducted by Arthur Andersen at the direction of SAMA," but that the report did not contain any reference to "any of the subjects that are within the scope of Plaintiffs' terror-financing allegations against NCB."

5.  Attached as Exhibit 10 is a true and correct copy of an April 22, 2007 letter from SAMA to Mr. Abdulkareem Abu Alnasr, the Chief Executive Officer of NCB, confirming that (1) SAMA has no knowledge of "any audit or examination of NCB in the general time frame of 1998 or later which examined alleged involvement in financing terrorist activities"; (2) SAMA had "not required any such audit"; and (3) SAMA "has taken no … adverse regulatory action" against NCB based on "alleged involvement in financing terrorist activities."

6.  Attached as Exhibit 11 is a true and correct copy of a December 27, 1993 Press Release of the U.S. Federal Reserve Board, which we retrieved on-line on Westlaw at 1993 WL 533933 (F.R.B.).

7.  Attached as Exhibit 12 is a true and correct copy of a December 22, 1993 Settlement Agreement between NCB and the U.S. Federal Reserve Board, referenced in the press release marked as Exhibit 11 hereto.

8. Attached are true and correct copies of the following documents obtained from the files of SNCB Securities Inc. that NCB previously produced to the plaintiffs (bates labels in parentheses):

    a. Exh. 13, SNCB 2000 Financial Statements (NCB016226-36);

    b. Exh. 14, T. Krohley Consultancy Agreement (NCB016264-66); and

    c. Exh. 15, V. Pensa Consultancy Agreement (NCB16257-60).

9. Attached collectively as Exhibit 16 are true and correct certified copies of records received from the Delaware Secretary of State regarding U.S. Second I.R.E. Management Corp., including a Delaware certification page, dated February 11, 2008; a Certificate of Incorporation filed January 31, 1997; and a Certificate of Dissolution filed February 28, 2000.

10. Attached collectively as Exhibit 17 are true and correct certified copies of records received from the Delaware Secretary of State regarding U.S. Tampa Management II Corp., including a Delaware certification page, dated February 11, 2008; a Certificate of Incorporation filed March 11, 1997; and a Certificate of Dissolution filed May 27, 1998.

11. Attached collectively as Exhibit 18 are true and correct certified copies of records received from the Delaware Secretary of State regarding Medical Equipment Leasing Partners 1, L.P., including a Delaware certification page, dated February 11, 2008; a Certificate of Limited Partnership filed on December 11, 1992; and a Certificate of Cancellation filed on June 10, 1999.

12. Attached are true and correct copies of the following documents that were produced by the plaintiffs to NCB (bates labels in parentheses):

    a. Exh. 19, SNCB's Certificate of Surrender of Authority (ASH006626-38);

    b. Exh. 20, alleged audit excerpts (ASH000505-508);

    c. Exh. 21, Oct. 28, 2001 *Chicago Tribune* article (ASH006242-45);

    d. Exh. 22, Sept. 29, 2001 *Ottawa Citizen* article (MR_NCB000331-34);

    e. Exh. 23, Dec. 10, 2001 *Boston Herald* article (MR_NCB000435-36);

    f. Exh. 24, Jan. 12, 2004 *WorldNetDaily* article (MR_NCB000783-85);

    g. Exh. 25, Oct. 28, 1999 *USA Today* article by Jack Kelley (MR_NCB000005-6);

    h. Exh. 26, Mar. 8, 2002 *National Post* article (ASH006356-57);

    i. Exh. 27, Oct. 14, 2001 *Boston Herald* article (MR_NCB000313-18); and

    j. Exh. 28, Alleged "Golden Chain" document and translation (ASH000904-6).

13. Attached as Exhibit 29 is a true and correct copy of "corrections and clarifications" that *USA Today* published on April 12, 2004, concerning its October 29, 1999 article titled "Saudi money aiding bin Laden." The retraction is accessible on *USA Today*'s website at http://www.usatoday.com/news/2004-04-12-correction_x.htm.

14. Attached as Exhibit 30 is a true and correct copy of a July 1, 2004 Order by the English High Court of Justice, Queen's Bench Division, entered in the matter titled *Khalid Salim a Bin Mahfouz v. Jean-Charles Brisard, JCB Consulting, and JCB Consulting International SARL* retrieved online at http://www.binmahfouz.info/pdf/faq_4_court_order.pdf.

15. Attached as Exhibit 31 is a true and correct copy of a May 3, 2005 Judgment by the English High Court of Justice, Queen's Bench Division, entered in the matter titled *Khalid Salim Bin Mahfouz v. Dr. Rachel Ehrenfeld*, 2005 WL 1586238 (QBD May 3, 2005).

16. Attached as Exhibit 32 is a true and correct copy of a July 30, 2007 letter from Kevin Taylor, Press Intellectual Property Director, Cambridge University Press, to Sheik Khalid Bin Mahfouz retrieved online at http://www.binmahfouz.info/pdf/20070730CUPletter.pdf.

17. Attached as Exhibit 33 is a true and correct copy of the text of a speech by William L. Rutledge, the Executive Vice President in charge of the Bank Supervision Group at the Federal Reserve Bank of New York and a member of the Bank's Management Committee, made on April 19, 2005, to the 2005 Arab Bankers Association of North America (ABANA) Conference on Islamic Finance: Players, Products & Innovations in New York City.  The text of Mr. Rutledge's speech is accessible on the Federal Reserve Bank of New York website at http://www.newyorkfed.org/newsevents/speeches/2005/rut050422.html.

18. Attached as Exhibit 34 is a true and correct copy of Plaintiffs' Original Petition in *Bath v. National Commercial Bank*, Case No. 94 CV 729 (S.D. Tex.) (produced by NCB to plaintiffs as bates number PLEAD00982-1014).

19. Attached as Exhibit 35 is a true and correct copy of a June 26, 1996 letter from Ebrahim Shehabi, Senior Vice President, NCB Bahrain, and Saleh Hussain, General Manager, NCB Bahrain, to James Bath relating to *Bath v. National Commercial Bank*, Case No. 94 CV 729 (S.D. Tex.).

20. In Plaintiffs' Revised Responses to Defendant National Commercial Bank's First Set of Jurisdictional Interrogatories and Requests for Production of Documents (a copy of which is attached hereto as Exhibit 36), plaintiffs contend that NCB's participation in other U.S. litigation provides a basis for the exercise of personal jurisdiction over NCB in the above-captioned actions. *See* Exh. 36, Response to Interrogatory No. 10, pp. 36-38.  Plaintiffs contend that NCB was a party in the U.S. litigation matters identified on Attachment 1 hereto.  *Id.*

21. Between April 5, 2001 and the date on which the earliest of these MDL lawsuits was commenced (August 15, 2002), NCB was not a party to any litigation in the United States.

22. During the six-year period preceding commencement of the lawsuits consolidated into *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD)(FM), NCB was a party to eight

5

lawsuits in the United States (the "prior lawsuits").[1] Attachment 2 hereto contains a chart reflecting the case title and docket number, the court in which the action was pending, the duration of the litigation, and the final disposition of each of these lawsuits. None of the courts in which these eight cases were filed determined that NCB was subject to the general jurisdiction of the court.

23. In four of the prior lawsuits, substantively identical complaints were filed against NCB in connection with its alleged business activities in Saudi Arabia in the late 1980s. *See* Exh. 37, Compl., *Global Resource Mgmt., Inc. v. NCB*, No. 96-cv-08444 (S.D.N.Y.) ("First New York Compl."); Exh. 38, Compl., *Global Resource Mgmt., Inc. v. NCB*, No. 96-cv-08446 (S.D.N.Y.) ("Second New York Compl."); Exh. 39, Amend. Compl., *Global Resource Mgmt., Inc. v. NCB*, No. 96-cv-5570 (Ct. Comm. Pleas, Franklin Cty., Ohio) ("Ohio Compl."); Exh. 40, Compl., *Niemeyer v. NCB*, No. 96-cv-6432 (D.C. Super. Ct.) ("D.C. Compl.") (collectively, the "*Global Resource* suits").[2] The plaintiff in each of these suits was an alleged successor to two Swedish firms that had formed a joint venture to construct an underground oil storage facility for the Kingdom of Saudi Arabia. *See* Exh. 37, First New York Compl. ¶¶ 1-2, 13; Exh. 38, Second New York Compl. ¶¶ 1-2, 11; Exh. 39, Ohio Compl. ¶¶ 1-2, 11; Exh. 40, D.C. Compl. ¶¶ 1-2, 10. The plaintiff alleged that NCB provided credit to the Swedish joint venture—with two unnamed "off-shore businesses" holding unspecified collateral—and conspired with others at some point during or before 1988 to obtain profits from the

---

[1] Magistrate Judge Maas directed NCB "to provide information concerning its United States contacts for the six-year period preceding the commencement of these suits." Discovery Order entered in this action on June 28, 2006, *In re Terrorist Attacks*, 440 F. Supp. 2d 281, 285 (S.D.N.Y. 2006) (MDL Dkt. #1849). Magistrate Judge Maas specified that his "ruling should, of course, not be taken as any indication that it ultimately will be appropriate to consider this entire period in determining whether the Court should assert personal jurisdiction over NCB." *Id.* at 285 n.1. *See also* NCB's Renewed Motion to Dismiss, at Section V (Time of Assessment). The earliest actions in which NCB is a party are *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03 CV 9849 (GBD), and *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03 CV 5738 (GBD), which were filed on August 15, 2002, and therefore the authorized period for jurisdictional discovery extends back to August 15, 1996.

[2] The two *Global Resources* cases in the Southern District of New York were removed from the Supreme Court of the State of New York, County of New York. Jeff Niemeyer, the named plaintiff in the D.C. Superior Court case, is identified as the representative of Global Resource Management, Inc., in the New York actions. Exh. 37, First New York Compl. at 6; Exh. 4, Second New York Compl. at 6.

construction project by acquiring the joint venture. Exh. 37, First New York Compl. ¶¶ 3-12; Exh. 38, Second New York Compl. ¶¶ 3-10; Exh. 39, Ohio Compl. ¶¶ 3-10; Exh. 40, D.C. Compl. ¶¶ 3-9.

24.     NCB did not consent to personal jurisdiction in the *Global Resource* cases. The complaints filed in the *Global Resource* suits contained only a few perfunctory references to NCB's alleged contacts with the United States. The two New York complaints contained conclusory allegations that the actions "arose out of the transaction of business by the defendants within the State of New York"—although only NCB was named as a defendant—and that proceeds of the transactions were being held in New York by an unnamed person. Exh. 37, First New York Compl. ¶¶ 14-15; Exh. 38, Second New York Compl. ¶¶ 12-13. The Ohio complaint alleged that that the action "arose out of the transaction of business by one or more of the defendants in Washington, DC, the State of Ohio and the State of New York," and that the proceeds of the transactions were being "held in Washington, DC, the State of Ohio and/or the State of New York" by an unnamed person. Exh. 39, Ohio Compl. ¶¶ 12-13. The D.C. complaint did not allege that NCB transacted any business in or otherwise had contacts with the United States. Exh. 40, D.C. Compl.

25.     The D.C. *Global Resources* lawsuit was dismissed on November 15, 1996, by the D.C. Superior Court *sua sponte* for the plaintiff's failure to prosecute. Exh. 41, Order Dismissing Case for Want of Prosecution. NCB moved to dismiss the three remaining *Global Resource* suits for, among other reasons, lack of personal jurisdiction. Exh. 42, Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaints, at 3-6; 8-11. Before the Ohio Court of Common Pleas ruled on NCB's motion, the matter was dismissed on December 10, 1996, pursuant to the plaintiff's notice of voluntary dismissal. Exh. 43, Notice of Voluntary Dismissal. After the plaintiff failed to oppose NCB's motion to dismiss the two New York cases, this Court dismissed the cases with prejudice on December 23, 1996. Exh. 44, Order.

26. In the other four prior lawsuits, NCB brought claims in connection with contracts entered into in the late 1980s or early 1990s that either involved mortgages on property located in the United States, or contained forum selection or governing law clauses that allowed suit in the United States, or both.

27. In March 1991, NCB filed an action in New York state court to foreclose a mortgage on a property located in New York City.[3] Exh. 45, Compl. ¶¶ 11, 19, *NCB v. Akorp N.V., et al.*, No. 5447-1991 (N.Y. S.Ct.) (the "*Akorp* foreclosure action"). The defendant Akorp N.V. (a corporation organized and existing under the laws of the Netherlands Antilles) had given the mortgage to NCB in 1986 to secure a loan NCB made to a citizen of Saudi Arabia. *Id.*, Compl. ¶¶ 3, 8, 11-12. The mortgage was governed by and construed in accordance with New York law. *Id.* at Exh. 3 thereto ¶ 6.20. The associated guaranty agreement contained (i) a choice-of-law provision specifying New York law as the governing law, and (ii) a forum selection clause by which Akorp consented to jurisdiction in any state or federal court located in New York City.[4] *Id.*, Compl. ¶ 3 and Exh. 2 thereto at 7-8. The guaranty, mortgage and other loan-related documents reflect that NCB was transacting business from its principal office in Jeddah, Saudi Arabia.[5] *See id*, Compl. ¶ 1 and the following exhibits thereto: Exh. 2 at 1; Exh. 3 at 1; Exh. 4 at 1 and 7; Exh. 5 at 1; Exh. 6 at 1 and 7; Exh. 9 at 1 and 7; and Exh. 10 at 1.

---

[3] NCB also filed a related lawsuit in Madrid, Spain, to foreclose mortgages on real properties located in that country. *See* Exh. 11, Compl. ¶ 29.

[4] The loan agreement and a promissory note also contained (i) forum selection clauses consenting to jurisdiction in New York City state or federal courts, and (ii) choice-of-law clauses specifying New York law as the governing law. *See* Exh. 11, Compl. ¶¶ 8, 12 and Exh. 1 thereto at 3.

[5] Loan payments were to be made to NCB's branch office in New York (which NCB closed in 1992) "for credit and advice to the account of The National Commercial Bank, P.O. Box 3555, Jeddah, Saudi Arabia." Exh. 11, Compl. ¶ 13 & Exh. 1 thereto at 1.

28.     The *Akorp* foreclosure action was stayed from January 1996 through July 1999 because NCB filed an involuntary Chapter 7 bankruptcy proceeding against Akorp in the United States Bankruptcy Court for the Southern District of New York, entitled *In re Akorp N.V.*, Case No. 96-B-40367 (CB) (the "*Akorp* bankruptcy action"). Exh. 46, Involuntary Petition. The involuntary bankruptcy petition was withdrawn by stipulation of the parties, and the bankruptcy court dismissed the petition on July 19, 1999. Exh. 47, Stipulation and Order Dismissing Chapter 7 Case. On April 5, 2001, the parties filed a stipulation discontinuing the *Akorp* foreclosure action. Exh. 48, Stipulation Discontinuing Action.

29.     In *NCB v. Hanly, et al.*, No. F-1137-99 (N.J. Super. Ct.), NCB brought suit to foreclose upon a mortgage securing its loan in March 1991 to an employee of its New York branch office, before the New York branch closed in July 1992. Exh. 49, Compl. NCB made the loan to its employee as a benefit of, and conditioned upon, his continued employment. Exh.50, Promissory Note ¶ 6. The defendants in the *Hanly* lawsuit, including the former employee of NCB, granted the mortgage to NCB regarding property located in New Jersey, and the mortgage was governed by New Jersey law. Exh. 49, Compl. ¶ 2; Exh. 51, First Mortgage ¶ 20; Exh. 52, Answer, Affirmative Defenses, Counterclaims and Demand for Trial by Jury ("Counterclaims"), at 12 ¶ 12. In August 1992, the repayment and other terms of the mortgage and promissory note were amended due to NCB's closure of its New York branch office and termination of its employees of the branch office. Exh. 53, First Amendment to Mortgage, Recitals B and C and ¶ 2; First Amendment to Promissory Note, Recitals B and C and ¶ 2. In their counterclaims, filed July 7, 1999, the defendants alleged that "[a]t no time has [NCB] had any office(s) or place(s) of business located in the State of New Jersey," and that NCB "presently has no and since August of 1992 has had no office(s) or place(s) of business located in the State of New York." Exh. 52, Counterclaims at 11 ¶¶ 5-6. The parties settled the lawsuit, and the defendants stipulated to dismissal of their counterclaims with prejudice

9

on January 5, 2000.  Exh. 54, Stipulation of Dismissal with Prejudice as to Answer, Counterclaims & Affirmative Defenses.

30. In the sole remaining case to which NCB was a party during the jurisdictional discovery look-back period, NCB sued Morgan Stanley Asset Management, Inc., and other defendants on May 2, 1994, for fraud and gross misconduct in connection with the mismanagement of a discretionary bond account.  Exh. 55, Amend. Compl. ¶ 1, *NCB v. Morgan Stanley*, No. 94-cv-3167 (S.D.N.Y.).  NCB and Morgan Stanley entered into the asset management agreement at issue in October 1992, and the contract contained a forum selection clause that "the New York courts shall have exclusive jurisdiction to hear and determine any suit … which may arise out of or in connection with this Agreement."  Exh. 56, Asset Management Agreement ¶ 18.  The defendants recognized that in 1992, NCB liquidated all "investment accounts and withdrew virtually all assets from the U.S."  Exh. 57, Joint Memorandum of Law of Morgan Stanley Asset Management Inc. and Mark R. Van Valkenburgh in Support of Their Motion for Partial Summary Judgment, at 10.  The lawsuit was dismissed with prejudice upon stipulation of the parties on February 17, 1998.  Exh. 58, Stipulation and Order of Dismissal.

31. For all of the other litigation matters identified by plaintiffs on Attachment 1 hereto, either NCB was not a party in the litigation, or the litigation terminated prior to the six-year jurisdictional discovery period preceding commencement of the lawsuits consolidated into *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD)(FM).

32. Attached as Exhibit 59 is a true and correct copy of excerpts of a sworn statement dated December 19, 2002 made by Yassin al Kadi to the U.S. Office of Foreign Asset Control, which was produced by the plaintiffs to NCB.

33. Attached as Exhibit 60 is a true and correct copy of excerpts of a transcript of a July 31, 2003 Hearing before the U.S. Senate's Committee on Governmental Affairs, S. Hrg. 108-245 (July 31, 2003).

                                                        */s/ Mitchell R. Berger*
                                                        Mitchell R. Berger

Sworn to before me this 21st day of July, 2008

*/s/ Sandra L. Fricker*
Notary Public



# **Attachment 1**

In Plaintiffs' Revised Responses to Defendant National Commercial Bank's First Set of Jurisdictional Interrogatories and Requests for Production of Documents, plaintiffs in the lawsuits consolidated into *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD)(FM), contend that NCB was a party in the following U.S. litigation matters:[6]

| |
|---|
| SDNY 1 :92-cv-3269-LLS, National Commercial Bank v Schuster et al. |
| SDNY 93-cv-0687 National Commercial Bank v Schuster et al. |
| EDMI 95cv75764, SNCB v Schuster |
| SDFL 95-cv-7097 SNCB Corporate Finance v. Schuster et al. |
| 2nd Circuit 95-7013 SNCB Corporate Finance v Schuster et al. |
| SDNY 1 :94-cv-3167-DC NCB v. Morgan Stanley Asset Management |
| SDNY 95-cv-09758 Red Sea Tanker Fund v Chase Manhattan |
| NY County 91-5447 NCB v. Akorp |
| US Bankruptcy SDNY In re: AKORP, N.V. 96-B-40367(CB) |
| NY County 95-110444 NCB v. Javier Vial |
| NY County 95-126298 Ell Investments Ltd v Eidetics International |
| SDNY US Bankruptcy Court 00-41010 In Re: Eidetics International |
| NY County 98-6009 MBKS Inc v. Stumetal |
| NJ Sup Ct 99-1137 NCB v. John Hanly |
| NJ Sup Court 06-2691 MBKS et al v Reddy |
| Delaware Chancery 05 1853-N MBKS et at v Reddy |
| Colorado Arapahoe Cty, 99cv237 Denver Hotel v Arapahoe Hospitality |
| SDNY 96-cv-8446 Global Resources v NCB |
| DCDC 1:92-cv-2763-JHG BCCI Holdings (Luxembourg) v KB Mahfouz et a1. |
| EDMI 2:92-cv-71157-PVG Schuster, et a1. v Denney, NCB, et al. |
| SDTX 4:94-cv-729 Bath v. National Commercial Bank et al. |

---

[6] The chart reflects the plaintiffs' form for the case captions in their response to Interrogatory No. 10 at pages 37-38.

# Attachment 2

**Lawsuits in which The National Commercial Bank was a party during the six-year period preceding commencement of the lawsuits consolidated into *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD)(FM).**

| Case Title | Court | Duration | Final Disposition |
|---|---|---|---|
| *In re Akorp*, No. 96-B-40367 | S.D.N.Y. | 1/26/1996 – 7/19/1999 | Case dismissed by stipulation. |
| *Global Resources Management v. NCB*, Nos. 96-cv-8444, 96-cv-8446 | S.D.N.Y., after removal from Supreme Court of the State of New York, County of New York | 11/8/1996 (date of removal) – 12/23/1996 | Cases dismissed pursuant to NCB's motion to dismiss, asserting lack of personal jurisdiction. |
| *Global Resources Management v. NCB*, No. 96-cv-5570 | Court of Common Pleas, Franklin County, Ohio | 7/26/1996 – 12/10/1996 | Case dismissed pursuant to notice of voluntary dismissal. |
| *NCB v. Akorp*, No. 5447/1991 | N.Y. Supreme Court | 3/7/1991 – 4/5/2001 | Case discontinued by stipulation. |
| *NCB v. Hanly*, No. 01137-99 | New Jersey Superior Court, Hunterdon Co. | 1/21/1999 – 1/6/2000 | Case dismissed by stipulation. |
| *NCB v. Morgan Stanley*, No. 94cv3167 | S.D.N.Y. | 5/2/1994 – 2/17/1998 | Case dismissed pursuant to settlement. |
| *Niemeyer v. NCB*, No. 96-cv-6432 | D.C. Superior Court | 8/8/1996 – 11/15/1996 | Case dismissed *sua sponte* for lack of prosecution. |