Morgan Stanley Asset Management
1221 Avenue of the Americas
New York-N.Y. 10020
USA

Gentlemen:

The National Commercial Bank, a general partnership registered in Saudi Arabia and having its head office at P.O Box 3555, Jeddah 21481, Saudi Arabia, ("the Bank") hereby appoints on the following terms and conditions Morgan Stanley Asset Management Inc., a corporation incorporated in the United States and having a place of business at 1221 Avenue of the Americas  New York-N.Y. 10020-U.S.A. ("the Investment Manager") to act as portfolio manager of certain of the Bank's assets which are to be deposited with J.P Morgan  as custodial agent (the "Custodian").

1. **Recitals**

   (A) The Bank as referred to in this Agreement shall mean only the head office of the Bank, located in Jeddah, Saudi Arabia, and in no way shall refer to or include or involve any representative or branch office of the Bank, or personnel thereof, in the United States or the United Kingdom.

   (B) The Bank appoints the Investment Manager to invest and reinvest the Portfolio Assets (as that term is defined in Paragraph 3) as fully as the Bank itself could do. The Investment Manager hereby accepts this appointment. The Bank has obtained the agreement from Custodian that it will act in accordance with the instructions of the Investment Manager as permitted under clause 6 (B) of this agreement.

2. **Investment Guidelines**

   The Investment Manager is to manage the Bank's Portfolio Assets in accordance with written investment guidelines (the "Guidelines") furnished by the Bank, a copy of which is annexed as Exhibit A. The  Guidelines, _inter alia_, will set out the investment objectives and policies to be followed by the Investment Manager and the types and nature of investments which may or may not be managed by the Investment Manager. The Bank may amend, modify, alter or change the Guidelines from time to time. The Investment Manager shall act upon these amendments, modifications, alternations and/or changes immediately upon receipt of the duly signed amendments, modifications, alterations and/or changes.

3. **Portfolio Assets**

   The Portfolio Assets will initially consist of that portion of the cash of the Bank listed in a side letter from the Bank to the Investment Manager, plus all investments reinvestments and proceeds of the sale thereof, including without limitation all dividends and interest on investments, and all appreciations thereof and additions thereto less depreciations thereof and withdrawals therefrom.

4. **The Investment Manager's Conduct**

   (A) In performing its functions under this Agreement the Investment Manager shall at all times act in accordance with the highest standards of professional conduct and integrity commonly adopted by portfolio managers.

   (B) Without limiting the generality of the foregoing, the Investment Manager will take all reasonable steps to avoid conflicts of interest.

   (C) Nothing in this Agreement will limit or restrict the Investment Manager or any of its offices, affiliates or employees from acting as an investment manager to any other person, or to trade securities on behalf of any other person, including itself or its affiliates PROVIDED THAT the Investment Manager shall ensure that it shall not thereby prejudice or interfere with its due performance of its duties hereunder or prevent the Investment Manager from complying with any codes of professional conduct issued by any regulatory or supervisory body (whether statutory or not) applicable to an investment manager in the United States.

   (D) The Investment Manager may place orders with brokers or dealers or other persons to purchase, sell, deposit, exchange or liquidate the Portfolio Assets as, in its professional judgment, may be required to carry out the Investment Guidelines. The Investment Manager will not be responsible for the acts, omissions or solvency of any broker or agent selected by the Investment Manager to effect any transaction for the Bank's account except to the extent attributable to a failure by the (i) Investment Manager, its officers, employees or representatives in exercising due care and diligence in the selection of the broker of agent or (ii) to the extent such act or omission was caused by the Investment Manager's, its officers', employees or representatives' own negligence, bad faith or willful misconduct.

   (E) Subject to sub-paragraph (A) above, the Investment Manager may delegate any of its powers and discretion hereunder, provided that, notwithstanding such delegation, the Investment Manager shall remain liable to the Bank for the fulfillment of all the obligations expressed to be assumed by it under this Agreement.

M00105

PLEAD004630

## 5. Confidentiality

The Investment Manager, its officers, representatives, employees and delegees shall not during the continuance of this Agreement (except in the fulfillment of its obligations hereunder) or after its termination, disclose to any person (except with the written authority of the Bank or unless required to do so by law or by any regulatory organization, or where reasonably necessary for the performance of their professional services pursuant to this Agreement) any information relating to the business, assets, finances or other affairs of a confidential nature of the Bank, including the fact of the existence of the relationship between the Bank and the Investment Manager, except that information aggregated by the Investment Manager which includes figures from the Asset Portfolio but does not refer to the Bank by name or identify the Bank by inference shall not be deemed confidential.

## 6. Custody

(A) The Bank has entered, or is about to enter, into arrangements with the Custodian under which the Custodian will arrange for the safe custody of the Portfolio Assets, together with any documents of title relating thereto, and for the registration of all registerable securities in the name of Custodian or the Custodian's agent or nominees.

(B) The Investment Manager shall at no time have title to, custody or physical control of the cash, cash-equivalents, fixed-income securities or other assets, comprising the Portfolio Assets and the Bank will hold harmless and defend the Investment Manager against any liability or loss, including counsel fees, occasioned by acts, or failure to act, of the Bank or the Custodian.

(C) All costs and charges of the Custodian in relation to the Custody of the Portfolio Assets shall be borne by the Bank.

(D) The Investment Manager shall from time to time instruct the Custodian as to the action required from it to enable transactions in relation to the Portfolio Assets to be effected by the Investment Manager. Without limiting the generality of the foregoing, the Investment Manager:-

i) Shall instruct the Custodian as appropriate regarding the collection of dividends and interest; and

ii) Shall instruct the Custodian as appropriate regarding the delivery or collection of securities purchased, sold or otherwise transferred or negotiated.

M00106

PLEAD004631

7. <u>Liability</u>

The Investment Manager will not be liable to the Bank for any act or omission in relation to its duties under this Agreement except to the extent that such act or omission arises from the Investment Manager's negligence or willful misconduct of the Investment Manager, its officers, employees, or delegees.

8. **Withdrawals**

(A) The Bank from time to time may give to the Investment Manager written instructions as to the payment of income and other monies arising from the Portfolio Assets. Unless and until otherwise provided in any such instructions, income and other monies so arising shall form part of the Portfolio Assets.

(B) The Bank also may at any time and from time to time notify the Investment Manager that it wishes to withdraw any of the Portfolio Assets from the terms of this Agreement and, upon receipt of such notification, the Investment Manager shall as soon as practicable, subject to compliance with existing trading commitments, comply with the Bank's directions.

9. **Reports**

(A) The Investment Manager will provide to the Custodian, (and to the Bank if the Bank shall so request) in respect of each calendar month, detailed accounting statements, prepared at the end of each calendar month, showing actual portfolio income, total return statistics, holdings and transactions.

(B) These reports shall be in sufficient detail to enable the Custodian to prepare monthly consolidated reports of the actual income, value and transactions of the Portfolio Assets.

(C) The Investment Manager will provide to the Bank a periodic statement, at least quarterly, of the market outlook and investment strategy and shall meet with the Bank as and when reasonably requested.

(D) The Investment Manager shall maintain all records related to this Agreement and shall deliver and/or make available copies of the same to the Bank and/or its duly authorised representatives as and when required by the Bank.

10 **Fees**

(A) For services rendered hereunder, the Bank will pay the Investment Manager quarterly in arrears, as specified in the fee schedule attached hereto as Exhibit B. The fee schedule may be amended from time to time, provided it is amended (i) in agreement with the Bank and (ii) in writing.

(B) Neither the Investment Manager nor any of its officers, affiliates, or employees will act as principal or receive any compensation from the Bank in connection with the purchase or sale of investments for the Bank, other than the fee referred to in Exhibit B hereof.

11. **Representation by the Bank and the Investment Manager**

(A) The Bank and Investment Manager each hereby represents that it has the power to enter into and perform this Agreement and that this Agreement constitutes a legal, valid and binding obligation of the Bank and Investment Manager as the case may be.

(B) The Bank hereby represents that none of the Portfolio Assets are encumbered and undertakes that, unless it has the prior consent of the Investment Manager, it will not dispose of, encumber or otherwise deal with any of the Portfolio Assets before it has given an effective notice of withdrawal in respect thereof pursuant to paragraph 8 above.

12. **Voting and Other Rights**

The Investment Manager may (subject to contrary instructions from the Bank) exercise (or leave unexercised) voting and other rights of whatever nature attaching to or in any way arising in connection with any of the Portfolio Assets and it may make payment on behalf of the Bank in respect of any such rights, in each case without prior reference to the Bank.

13. **Effective Date and Termination**

(A) This Agreement shall commence on the date specified below as the "Effective Date" and shall continue in force until terminated by the Investment Manager on 30 days notice or until terminated by the Bank on immediate notification to the Investment Manager.

(B) Notwithstanding the termination of the Investment Manager's appointment, the Investment Manager is authorized to settle any dealings made prior to each such termination and shall immediately notify the Bank of settlement of the said dealings.

M00108



PLEAD004633

(C) To the extent the Investment Manager may have any title to any Portfolio Assets or any other property of the Bank at the time of termination, the Investment Manager immediately shall transfer title to the Custodian or to such other person as the Bank may direct.

(D) No fees outstanding at the time of termination shall be payable by the Bank until after the Investment Manager has fulfilled all its obligations pursuant to this Agreement.

14. **Notice and Instructions**

(A) Any notice or other documents to be given or served hereunder may be delivered or sent by courier or tested telex to the party to be served at its address mentioned below or at such other address as that party shall have notified the other in accordance with this Agreement.

(B) The addresses of the parties hereto are:-

| | |
|---|---|
| The Investment Manager: | Morgan Stanley Asset Management<br>1221 Avenue of the Americas<br>New York, N.Y. 10020-USA |
| Fax No: | 212-921-5477 |
| Attention: | Mark Van Valkenburg |
| The Bank: | The National Commercial Bank<br>Asset Management Department<br>P.O Box 3555<br>Jeddah-21481<br>Saudi Arabia |
| Fax No. | 6449474 |
| Attention: | Omar Bajunaid-Asset Manager |

(C) any such notice or document shall be deemed to have been served upon actual receipt by either party.

15. **Authorized Signatories**

The Bank shall, at the Investment Manager's request, provide the Investment Manager with a list of authorised persons from whom the Investment Manager may accept instructions.

16. **Assignability**

The Agreement is personal to the parties hereto and neither party shall be entitled to assign or transfer any of its rights or obligations hereunder.

6

M00109



17. **Governing Law**

This Agreement shall be governed and construed in accordance with the laws of the State of New York and the federal laws of the United States of America.

18. **Jurisdiction**

The parties irrevocably agree that the New York courts shall have exclusive jurisdiction to hear and determine any suit, action or proceeding, and to settle any disputes, which may arise out of or in connection with this Agreement and for such purposes irrevocably submit to the jurisdiction of such courts.


For The National Commercial Bank

*[signature]*

Dr. Abdulraouf Banaja


*[signature]*

Omar Bajunaid



Agreed and Accepted to:

*[signature]*

Morgan Stanley Asset Management Inc.



Effective Date.. October 26, 1992