I

IN THE MATTER OF

YASSIN ABDULLAH KADI

and

THE OFFICE OF FOREIGN **ASSETS** CONTROL,
US DEPARTMENT OF THE TREASURY

---

### STATEMENT OF YASSIN ABDULLAH KADI

---

I, YASSIN ABDULLAH KADI of Farsi Center, West Tower, 11th Floor, Suite 1103, Waly Al-Ahd Street, Ruwais District, Jeddah 21411, Saudi Arabia, SAY AS FOLLOWS:-

))

I make this statement further to the meeting held at the Office of Foreign Assets Control (OFAC), US Department of the Treasury, in Washington DC on August 1 2002 attended by Mr R Richard Newcomb, Director of OFAC, and several of his colleagues together with my legal representatives. Although I was not personally present at that meeting, and without in any way waiving legal privilege, I am informed by my lawyers that Mr Newcomb asked additional questions about my commercial and charitable activities in various locations. I am informed by my lawyers that in this context Mr Newcomb requested details of my commercial

ASH006479

Al-Rajhi's other investors or clients. I have invested funds with Al-Rajhi for solely commercial reasons. I stress that at no time have I ever held any equity share or management role in Al-Rajhi nor have I ever had any business relationship with any of the individuals or entities behind Al-Rajhi.

18. KBM was aware of Al-Rajhi's successful introduction of Islamic banking services and knew that eventually every bank in Saudi Arabia would have to offer such services, or else lose market share to those institutions which did offer such services. He was determined to convert NCB from a bank which offered purely conventional banking services to one that could also offer Islamic banking products.

19. Due to the above, KBM turned to me to help him in realising this ambition. To do this, we established a new department within NCB called the Islamic banking department or "IBD"; and, secondly, we sought advice from an outside consultancy company on aspects of Islamic banking product development. I arranged for these consultancy services to be provided through the National Management Consultancy Center ("NMCC"), a company registered in Saudi Arabia, which had a licence from the Saudi Arabian Government to provide consultancy services in Saudi Arabia. NMCC advised and assisted NCB in developing Islamic banking products and designing and implementing training programs for NCB employees. Through this means, NCB established the Islamic Banking Department. These arrangements required a re-organisation of the NMCC, during which I took the position of chairman, a position I held from 1991 to 2001. NMCC ceased operations at the end of 2001 since when it has been dormant.

20. The introduction of Islamic banking services within NCB was extremely successful. Other banks, both inside and outside Saudi Arabia, soon approached NMC:C for consultancy services. NMCC has, since then, established consultancy relationships with many other banks both within Saudi Arabia and elsewhere, such as the Saudi British Bank (an affiliate of HSBC in Saudi Arabia) and the Saudi Hollandi Bank (an affiliate of ABN-Amro).

### Charitable and Commercial Activities

23

21. I now describe, in response to Mr Newcomb's request at the meeting on August 1, my charitable and commercial activities Of any) in the locations and countries mentioned by him. I should preface my remarks by highlighting some common threads of my activities in many of the various countries. It will be seen that in some cases I have conducted in parallel both charitable and commercial activities in those countries. The reason for this is that war-torn countries are often emerging markets that can offer good investment returns for outside foreign investors albeit at relatively high risk. This is of course in addition to the humanitarian work, which is in many cases required there.

22. In the case of Bosnia and Croatia, my first involvement in these countries was of a charitable nature in Croatia in 1992. This was motivated by my concern at the humanitarian needs that existed there. Subsequently, following the Dayton Peace Accord in late 1995, I saw the opportunity for making good investment returns, and invested in business enterprises in these countries. In other cases, namely Sudan and Albania, I was part of delegations of leading Arab and Muslim businessmen visiting these countries at the invitation of the host government. In

> The money was deposited into the accounts of Islamic charities, including Islamic Relief and Blessed Relief, that serve as fronts for bin Laden.
>
> The businessmen, who are worth more than $5 billion, are paying bin Laden "protection money" to stave off attacks on their businesses in Saudi Arabia, intelligence officials said.
>
> ... The money transfers were discovered in April after the Royal Family ordered an audit of NCB and its founder and former chairman Khalid bin **Mahfouz, US officials say."**

Insofar as these allegations concern me and/or the Foundation, they are totally untrue. As I have made clear in some detail in my December 2001 submission to OFAC, contrary to the allegations in the USA Today article, the true position is as follows:

41. The Foundation has never had any account with the National Commercial Bank (NCB). In any event, as appears from articles published in the UK and US press the Guardian dated September 26 2001 and the Chicago Tribune dated October 28 2001 pages 114 to 121) NCB management have vehemently denied the existence of any Saudi government audit and described the allegations as 'incorrect, false and frivolous".

42. At no time have either I or, to the best of my knowledge, the Foundation ever contributed any funds or otherwise supported bin Laden or Al-Qaeda. At no time

I believe I am a victim of a gross miscarriage of justice. Accordingly, I now ask that my assets be de-listed by OFAC without any further delay.

I believe that the facts stated in this statement are true.

Signed ........................................
Yassin Abdullah Kadi

Dated December 19th, 2002

ASH006581