

# KREINDLER & KREINDLER LLP

100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

August 15, 2008

**Via Hand Delivery**
Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, New York  10007-1312

> *Re:*    ***In re Terrorist Attacks on September 11, 2001 v. NCB***
> **03 MDL 1570 (GBD)(FM)**
> This document relates to:
> *Ashton, et al v. Al Qaeda Islamic Army, et al., Docket No. 02 CV 6977 (GBD)(FM)*
> *Burnett, et al v Al Baraka Inv. & Dev. Corp., et al., Docket No. 03 CV 9849 (GBD)(FM)*

Dear Judge Maas:

Pursuant to the Court's Order of July 11, 2008 (Docket Entry 2106)[1], the *Ashton* and *Burnett* Plaintiffs respectfully request that the Court extend the time to respond to the "Renewed" Motion to Dismiss filed by National Commercial Bank ("NCB") on July 22, 2008, until 60 days after the full completion of the targeted jurisdictional discovery referenced herein.  The extension requested herein is a necessary, efficient, and practical approach to this litigation inasmuch as the extension will allow for the following: (1) The *Burnett, Ashton, O'Neill, Cantor, Continental, and N.Y. Marine* Plaintiffs to complete specific jurisdictional discovery related to Plaintiffs' newly acquired evidence and newly produced evidence that NCB submitted in support of its motion.; (2) the *Burnett, Ashton, O'Neill, Cantor, Continental,  and N.Y. Marine* Plaintiffs to receive responses to outstanding discovery requests; and (3) the *Federal Insurance* Plaintiffs to commence and complete discovery so as to place the *Federal Insurance* case in the same

---

[1] In addition to granting NCB's request to file its Renewed Motion to Dismiss, the July 11, 2008 Order provides that "[t]o the extent that plaintiffs believe that additional jurisdictional discovery is necessary prior to filing aresponse, a specific discovery request and a request for a stay or extension of time in which to respond to the motion should be made to the magistrate judge."

| California Office | Massachusetts Office | New Jersey Office |
|---|---|---|
| 707 Wilshire Boulevard | 277 Dartmouth Street | 801 Franklin Avenue |
| Los Angeles, CA 90017-3613 | Boston, MA 02116-2805 | Franklin Lakes, NJ 07417 |
| Tel: (213) 622-6469 | Tel: (617) 424-9100 | Tel: (201) 343-7771 |
| Fax: (213) 622-6019 | Fax: (617) 424-9120 | Fax: (212) 972-9432 |

procedural posture as the other cases vis-à-vis NCB. Notwithstanding any argument of NCB to the contrary, NCB will suffer no prejudice to this stay, particularly given the number of motions to dismiss older than NCB's that remain unresolved in the litigation.

In addition to the reasons discussed herein, the *Ashton* and *Burnett* Plaintiffs incorporate and adopt the reasons articulated in similar applications being filed by the other plaintiffs in this litigation – namely, by the *Federal Insurance* Plaintiffs, as well as by the *O'Neill*, *New York Marine Insurance*, *Continental Insurance*, and *Cantor Fitzgerald* Plaintiffs.[2] Specifically, inasmuch as the discovery sought by the *Federal Insurance* plaintiffs is relevant to the jurisdictional theories of the remaining plaintiffs, the *Ashton* and *Burnett* Plaintiffs join in the request for that targeted jurisdictional discovery. In addition, because the theories of jurisdiction as to NCB directly implicate the conduct and knowledge of former NCB executives, themselves defendants with their own motions to dismiss pending, the *Ashton* and *Burnett* Plaintiffs join in the request that the Court order simultaneous discovery and resolution of those jurisdictional contests.

**(1) The *Burnett, Ashton, O'Neill, Cantor, Continental, and N.Y. Marine* Plaintiffs should be permitted to complete specific jurisdictional discovery related to Plaintiffs' newly acquired evidence and newly produced evidence that NCB submitted in support of its motion.**

**(a)     New Documents Acquired by the Plaintiffs.**

The Plaintiffs recently acquired copies of two French government diplomatic cables, dated July 19 and 21, 1999. Haefele Affidavit, Exhibits 1 and 2. These cables make clear that U.S. and French intelligence authorities were aware at that time that an investigation of the National Commercial Bank and its CEO, Khaleed Bin Mahfouz, undertaken by the Saudi government implicated the bank in several transfers benefiting organizations supporting Osama bin Laden's terrorist activities. The first cable explains that "Saudi authorities have undertaken, since the end of 1998, a series of investigations targeting the principal financial establishments of the Kingdom in order to determine their possible implication in the financing of terrorist organizations…." The cable further indicates that "A summary of the Saudi government investigative report concerning the National Commercial Bank has been transmitted by the American services. It makes reference to transfers executed for the benefit of [IIRO], created out of the Muslim World League, and reputedly close to the terrorist chief Osama Bin Laden." The cable also comments that, "[a]ccording to [American] sources, [Bin Mafouz] still has personal and family contacts with Osama Bin Laden." Haefele Affidavit, Exhibit 1 (diplomatic cable transmission from Ambassador Poletti, dated July 19, 1999, MR-FRE003225).

---

[2] *Federal Insurance Co. v. Al Qaida*, 04-cv-7280 (GBD) ; *Estate of John P. O'Neill, Sr., et al., v. Al Baraka Inv. & Dev. Corp., et al.*, 1:04-cv-1923 (GBD); *New York Marine and Gen. Ins. Co. v. Al Qaida, et al.*, 1:04-cv-6105 (GBD); *Continental Cas. Co., et al., v. Al Qaeda Islamic Army, et al.*, 1:04-cv-5970 (GBD); *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, 1:04-cv-7065 (GBD).

The second cable simply makes reference to and attaches the summary information about the investigation that was referenced in the earlier cable.   Haefele Affidavit, Exhibits 2 (diplomatic cable transmission from Poletti, dated July 21, 1999, MR-FRE003226).

A copy of the document attached to the second cable was contained in Request #46 of Plainitffs First Set of Jurisdictional Requests for Production of Documents, dated February 18, 2005.  The document prompted the Court to direct NCB, fairly narrowly, to produce an audit of NCB conducted by SAMA.  Given the new context presented by the two newly obtained French diplomatic cables, Plaintiffs ask that the Court direct NCB to produce any information in its control that concerns any investigation of NCB, Khaleed Bin Mahfouz, or other officers or directors of NCB, performed by Saudi authorities – including but not limited to SAMA, the Saudi Ministry of Interior, the General Directorate for Investigations, the Mabahith, or any other Saudi authority – during the time period from 1990 until 2003.  The documents should include not only internal documents concerning any such investigations, but should also include documents that were provided to or received from any such investigating authority.

**(b) NCB New Affidavits and Documents in Support of Its Motion.**

As part of NCB's Renewed Motion to Dismiss (filed July 22, 2008), NCB attached over one thousand pages of exhibits, including previously unproduced documents, as well as affidavits and declarations of NCB employees that were not previously disclosed and have not been subject to cross-examination.  Included are affidavits from NCB employees whom the Plaintiffs had previously requested to depose.  Specifically, the Plaintiffs wrote directly to Patton Boggs on November 7, 2006, requesting the deposition of Thomas Krohley or a person most knowledgeable of NCB's presence in the United States.  As a result of that request, Lawrence Smith was eventually put forward by NCB as the person knowledgeable of "how NCB and potentially SNCB operated in New York."  Haefele Affidavit, Exhibit 3 (Transcript of March 23, 2007, at p. 37).

However Mr. Smith was less than informative about SNCB, stating at his deposition: "I never did any work for SNCB. (Transcript of Smith Deposition at 38:14)  I had nothing to do with SNCB, so I don't know (Transcript of Smith Deposition at 46:2-3). . . I didn't have any understanding what SNCB did. (Transcript of Smith Deposition at 47:25-48:1)."  Instead of providing testimony from the witness NCB put forward on the subject, NCB has instead provided three affidavits from other current or former NCB employees, who were never offered for deposition.

After it became clear from Mr. Smith's deposition that either he knew little or was less than candid about NCB's banking operations after 1992, the Plaintiffs renewed their request to depose Thomas Krohley, in a letter to Judge Maas on August 7, 2007.  However, in its letter opposing Plaintiffs' request, NCB responded that "the Court should not authorize depositions of former SNCB employees *because their testimony cannot possibly lead to evidence relevant to personal jurisdiction over NCB*."  Haefele Affidavit, Exhibit 4 (August 13, 2007 letter from Ron Liebman to Judge Maas, at page 3)(emphasis added).  Judge Maas denied the Plaintiffs' request;

3

Plaintiffs objected to the September 19, 2007 Order to Judge Daniels on October 1, 2007, again requesting Thomas Krohley's deposition.  This appeal was denied by Judge Daniels.

Mr. Krohley's affidavit is an egregious example not only because of NCB's previous representation that any testimony from him would be irrelevant, but also because at the time that NCB's lawyers were arguing that his testimony was irrelevant, they already had Mr. Krohley's affidavit in hand and were planning on using it as part of NCB's renewed motion to dismiss.  Mr. Krohley's affidavit was notarized on June 22, 2007, during the same time period that NCB was arguing whether his deposition should be taken and several months before NCB argued in its August 13 letter that his testimony would be irrelevant.  In his affidavit, Mr. Krohley comments that NCB's counsel assisted him in phrasing the affidavit and had advised him that it would be used in support of NCB's renewed motion to dismiss.  Krohley Affidavit at ¶¶ 1, 2.  Accordingly, both Mr. Krohley and NCB counsel were aware at the time that they were arguing against Mr. Krohley's deposition that they intended to submit sworn statements from him in support of NCB's renewed motion to dismiss.

NCB has now submitted the affidavits of Thomas Krohley, Jorge Juco[3], and Abubaker Ali Bagabir, all previously undeposed individuals, in support of its renewed motion to dismiss.  Through those affidavits, NCB makes various factual assertions that Plaintiffs have not been permitted either to challenge or test, resulting in a fundamental denial of due process.  *Gersten v. Senkowski*, 426 F.3d 588, 612 (2nd Cir. 2005), *cert.* denied by *Artus v. Gersten*, 547 U.S. 1191 (2006), *citing Hollis v. Smith*, 571 F.2d 685, 694 (2d Cir.1978).  Accordingly, an extension of time should either include time for the Plaintiffs to depose Thomas Krohley, Jorge Juco, and Abubaker Ali Bagabir, or at the very least strike their affidavits and their attachments from NCB's motion papers.

**(2) The *Burnett, Ashton, O'Neill, Cantor, Continental and N.Y. Marine* Plaintiffs have outstanding discovery requests and the Plaintiffs' obligation to respond to NCB's motion to dismiss should be extended until after NCB has fully complied with those outstanding discovery requests.**

The extension requested would allow for the Plaintiffs to receive responses to outstanding jurisdictional discovery requests.  In the Court's July 11, 2008 Order, the Court clearly envisioned the possibility that *additional* jurisdictional discovery may be necessary once NCB filed its renewed motion to dismiss; but in so recognizing that possibility, the Court apparently inadvertently overlooked the fact that certain jurisdictional discovery requests are presently outstanding and, because NCB has refused to respond to those requests, they are the subject of motions to compel pending before the Court.  Specifically, on October 13, 2007, the *Ashton* and

---

[3] Mr. Juco states that his declaration in based, in part, on statements of "other [unidentified] NCB personnel who have knowledge about specific matters addressed in [his] declaration." Juco Declaration, at ¶ 1.  Without knowing the other individuals' identities or the extent of Mr. Juco's own knowledge versus his reliance on others, Plaintiffs cannot properly assess the appropriate approach to the information for which Mr. Juco relied upon others, includng the need to engage in discovery concerning the other individuals or striking those portions of Mr. Juco's testimony, and accordingly reserve that issue.

*Burnett* Plaintiffs served on NCB discovery requests targeted to obtain information regarding NCB's involvement in the aviation business in the United States and regarding a trust account that NCB held for the benefit of Osama Bin Laden. NCB responded on November 13, 2007 and objected to this request and provided no information. Plaintiffs filed a Motion to Compel on December 20, 2007, which remains pending.

Plaintiffs anticipate that NCB will adopt its pattern of citing to self-serving affidavits proffered in a manner carefully calculated to avoid any cross-examination, to avoid responding to discovery requests in a proper manner. In its initial decision regarding NCB, the Court denied NCB's motion to dismiss and granted jurisdictional discovery because the record consisted of self-serving affidavits that had never been subject to cross-examination. *In Re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 792 (S.D.N.Y. 2005); *see also In Re: Terrorist Attacks on September 11, 2001*, Discovery Order (June 28, 2006) at 2. Notwithstanding the rationale for the Court's determination, throughout the jurisdictional discovery process, NCB has produced mountains of selected documents to respond to unidentified discovery requests and avoided responding to multiple inquiries by pointing to lawyer-crafted, self-serving affidavits and interrogatory responses. Rather than being permitted to hide behind such untested, self-serving submissions – many which were never produced to the plaintiffs during discovery – NCB should be required to respond fully and completely to Plaintiffs' discovery requests without mere reliance on the same type of "evidence" previously questioned by the Court's original opinion. To do otherwise would require the parties to approach the Court in little different position than they did in the first motion to dismiss.

**(a) NCB's Aviation Division – Plaintiffs Are Entitled to Discovery Regarding NCB's Aviation Division Notwithstanding NCB's Unchallenged, Self-Serving Affidavits to the Contrary.**

Regarding NCB's aviation business – which has gone by various names including NCB Aviation, Mid-East Jet and Skyways International – Plaintiffs, in their jurisdictional discovery responses have produced to NCB substantial information clearly raising the question of fact as to whether NCB has owned or operated an aviation division in the United States; NCB should not be permitted to simply dispel the question by baldly denying its truth. Although Plaintiffs have no obligation to provide evidentiary support to obtain discovery of facts relevant to Plaintiffs theories of personal jurisdiction, Plaintiffs have provided ample support for their requests for discovery concerning NCB's aviation division.[4]

Proof demonstrates that NCB has had an Aviation Department that has operated within the United States since at least the mid-1990's and apparently as late as 2002 or 2003. One item of proof produced as to the existence of an aviation department within NCB is a business card of an employee of NCB Aviation Department – Skyways International. Haefele Affidavit, Exhibit 5 (NCB Aviation Department—Skyways International Business Card). In fact, as late as January 2008, Saudi Arabian Airlines listed NCB Aviation as being a private domestic client. Haefele

---

[4] For a summary of the Aviation business evidence see Plaintiffs Letter to Judge Daniels of April 25, 2008.

Affidavit, Exhibit 6 (Saudi Arabian Airlines archived website
(http://web.archive.org/web/20080116014739/www.saudiairlines.com/catering/airlinesserved.jsp
) (January 16, 2008).[5]  The business card not only indicates that NCB had an aviation
department, but also relates the business to the entity known as Skyways International.  Haefele
Affidavit, Exhibit 5 (NCB Aviation Department—Skyways International Business Card).
Skyways International, the aviation company with which NCB eschews any relation, once
operated as a Texas corporation, with offices registered in Austin, Texas.  Haefele Affidavit,
Exhibit 7 (Skyway International Registration, Texas Secretary of State, 2003).  At that time, the
Chairman of the company was Lawrence G. Smith, who was at the same time – as this Court is
aware from observing his deposition in this case – Executive Vice-President of NCB and advisor
to Khalid bin Mahfouz..  *Id.*; Haefele Affidavit, Exhibit 8 (Transcript of Lawrence G. Smith
7/27/07 Deposition, at 133:11-15).

        The proof also indicates that the NCB Aviation Department has also operated as Mid East
Jet, with a business address listed as NCB Building Al Khaldiah, Prince Abdullah Street, Jeddah,
Saudi Arabia, Middle East.  Defendant Khalid bin Mahfouz, former chairman of NCB who the
plaintiffs allege was ousted by the Saudi government following an investigation that concluded
he was supporting Osama bin Laden, has also been identified as the Chairman and Chief
Executive Officer of Mid East Jet.  Haefele Affidavit, Exhibits 9 and 10 (Dun & Bradstreet
WorldBase Report of Mid East Jet, October 30, 2003 and ICP Update dated October 26, 2005).
The same Dun & Bradstreet report identifies Nadeem Farouki as the General Manager of Mid
East Jet.  In addition, a June 10, 2005 Dun & Bradstreet WorldBase Report of Mid East Jet
identifies Nadim Farouki as the Operation Manager for Mid East Jet.  Haefele Affidavit, Exhibit
11 (Dun & Bradstreet WorldBase Report of Mid East Jet, June 10, 2005; *see also* Exhibit 10,
*supra*, ICP Update dated October 26, 2005).

        The same address used for NCB Aviation and Mid East Jet is also used for Skyways
International on a credit card receipt of a Skyways International employee in September 2002.
Haefele Affidavit, Exhibit 12 (September 1, 2002 Hotel Receipt of Muhammad Tahsin).  In a
series of documents indicating hotel stays at a Paris hotel in 2001 and 2002, Mr. Tahsin is
identified as an employee of Skyways International.  On a receipt for one of the stays in
September 2002, the same address indicated for Mid East Jet is identified for Skyways
International – namely, P.O. Box 9935, Jeddah, Saudi Arabia.

        The proof also indicates that the NCB Aviation Department – Skyways International was
operating out of the same offices as Mid East Jet.  One facsimile transmittal bearing indicia that
it came from an NCB Aviation employee in the Jeddah office of "Ndeem Farooqui," lists the
"complete address" of the NCB Aviation Department as "The National Commercial Bank,
Aviation Department, 3rd Floor, NCB Khalidiyah Branch Bldg., Prince Abdullah Street, District
Khalidiyah, P.O. Box 9935, Jeddah 21423, Saudi Arabia."  Haefele Affidavit, Exhibit 13
(December 23, 1997 facsimile transmittal of Ndeem Farooqui).  Except for transliteration

---

[5] The website has since been reconfigured and NCB Aviation has been deleted and Mid-East Jet has been added. See
the Partners link of http://www.saudiacatering.com.

differences typical in translating from Arabic to English, not only is the address identical to the address identified for Mid East Jet, but the facsimile header indicates that it was sent from Mr. Farouki, Mid East Jet's General Manager.

The proof also indicates that NCB Aviation has been operating in the United States as Mid East Jets and as Skyways International. The attached excerpts from the United States Federal Aviation Administration's database of U.S. Reduced Vertical Separation Minimum (RVSM) Approvals, as of January 2008, indicate that at least six Mid East Jet aircraft were approved or successfully monitored by the FAA in the past three years. Haefele Affidavit, Exhibit 14 (Excerpts of U.S. RVSM Approvals, January 18, 2008, pages 1, 8 and 9). Excerpts from FAA Flight Tracking Data of flights with tail numbers of the NCB aircraft shows more than 130 flights into United States airspace between 2000 and 2002. Haefele Affidavit, Exhibit 15 (excerpts of FAA Flight Tracking Data). In addition, Skyways International pilots have been U.S. residents with FAA certifications. For example, Keith Monroe, a National Commercial Bank Aviation Department flight engineer (*see* Haefele Affidavit, Exhibit. 5, NCB Aviation Department business card), resided in the United States and was registered and certified by the FAA. Haefele Affidavit, Exhibit 16 (Monroe FAA certification). Other Skyways International employees were similarly registered and/or certified by the FAA. *See, e.g.*, Haefele Affidavit, Exhibit 17 (February 18, 1998 facsimile transmittal of NCB Aviation identifying list of NCB Aviation crew, including "Buddy" Rogers and Johnny Antoon); Exhibit 18 (Rogers FAA Registration), Exhibit 19 (Antoon FAA certification). In addition, the FAA registered Skyway International employee Muhammad Tahsin at the Jeddah, Saudi Arabia address of Mid East Jets (P.O. Box 9935, Jeddah, Saudi Arabia) and certified him. Haefele Affidavit, Exhibit 20 (Tahsin FAA certification). Skyways International employee Tahsin was also identified in December 2002, by the U.S. Customs Service to French authorities as being suspected of having provided financially support to Ahmed al Ghamdi, one of the September 11, 2001 hijackers. Haefele Affidavit, Exhibit 21 (U.S. Customs December 30, 2002 correspondence).

Given the ample evidence Plaintiffs have produced that NCB Aviation has been operating in the United States as Mid East Jets and as Skyways International, including extensive documentation from several FAA databases, the Plaintiffs' requests cannot be dismissed with NCB's mere denials. Far too many interconnections exist among NCB, Skyways International, and Mid East Jets and their contacts with the United States, for defendant NCB's self-serving affidavits to simply dismiss the notion that NCB had any connection with the aviation business. Accordingly, NCB should be ordered to comply fully with the previous discovery requests and the plaintiffs' obligation to respond to NCB's motion to dismiss should be extended until after NCB has fully complied with those requests.

### (b) NCB Account for the benefit of Osama Bin Laden – Plaintiffs Are Entitled to Discovery Regarding NCB's Account held for the benefit of Osama Bin laden.

The other issue that was the subject to the discovery served on October 13, 2007, was the issue of the account at NCB which has been identified in certain documents as being for the benefit of Osama bin Laden. Notwithstanding the various characterizations of the account, the

documents reference that the value of Osama bin Laden's interests were to be placed into an account at NCB "to protect the aforementioned interest" until such time as Osama bin Laden returns to the Kingdom of Saudi Arabia. Haefele Affidavit, Exhibit 22 (SBG documents filed under seal). NCB has access to the documents related to that account and it could hardly be considered an undue burden on NCB to produce the documents regarding that single account. Accordingly, NCB should likewise be ordered to comply fully with the previous discovery requests concerning the NCB account holding the value of Osama bin Laden's interests and the plaintiffs' obligation to respond to NCB's motion to dismiss should be extended until after NCB has fully complied with those requests.

**(3) The *Federal Insurance* Plaintiffs should commence and complete the targeted jurisdictional discovery referenced in their applications, placing the *Federal Insurance* case in the same procedural posture as the other cases vis-à-vis NCB.**

For the reasons expressed in the Federal Insurance Plaintiffs' submission to the Court, the *Ashton* and *Burnett* Plaintiffs join in the *Federal Insurance* Plaintiffs' submission. Allowing all of the Plaintiffs to conduct and conclude the referenced jurisdictional discovery simultaneously furthers the Court's goal of moving the cases forward on a consolidated and expedient basis, without prejudicing either the Plaintiffs or NCB.

**(4) Because the theories of jurisdiction as to NCB directly implicate the conduct and knowledge of former NCB executives, themselves defendants with their own motions to dismiss pending, the Court should permit simultaneous discovery and resolution of those jurisdictional contests.**

For the reasons expressed in the *Federal Insurance* Plaintiffs' submission to the Court, the *Ashton* and *Burnett* Plaintiffs join in the *Federal Insurance* Plaintiffs' submission.

## CONCLUSION

For the foregoing reasons and the reasons expressed by the other plaintiffs in their independent submissions, the *Ashton* and *Burnett* Plaintiffs respectfully request that the Court grant an extension of time for the Plaintiffs to respond to NCB's renewed motion to dismiss until 60 days after the full completion of the targeted jurisdictional discovery referenced herein, including within the other plaintiffs' applications. The Court should order NCB to respond fully and completely to the targeted discovery and should order the production of the witnesses whose depositions have been sought. As to those witnesses whose affidavits or declarations have been offered in support of NCB's motion, to the extent that those individuals are not permitted to be deposed, their affidavits or declarations should be stricken.

Respectfully Submitted,

By: _James P. Kreindler_
James P. Kreindler, Esq. (JK7084)
Justin T. Green, Esq. (JG0318)

8

Marc S. Moller, Esq. (MM0143)
Andrew J. Maloney, Esq. (AM8684)
100 Park Avenue
New York, New York 10017
Phone:  (212) 687-8181
Facsimile:  (212) 972-9432


MOTLEY RICE LLC

By:_____

Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Michael Elsner, Esq.
Robert Haefele, Esq.
28 Bridgestone Boulevard
P.O. Box 1792
Mt. Pleasant, SC 29465
Phone: (843) 216-9000


cc:    Mitchell Berger, Esq. - Patton Boggs (Counsel for NCB)
       Plaintiffs Executive Committee

9