# EXHIBIT B

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

August 20, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

**BY FEDERAL EXPRESS**

The Honorable Frank Maas
United States Magistrate Judge
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

     Re:   *In re Terrorist Attacks on September 11, 2001*, MDL 03-1570 (GBD);
           *Burnett v Al Baraka*, Case No. 03 CV 9849 (S.D.N.Y.)

Dear Judge Maas:

     This letter briefly replies, on behalf of The National Commercial Bank ("NCB"), to new arguments— raised for the first time in Mr. Maloney's August 16, 2007 letter— concerning plaintiffs' request to take depositions of former employees of SNCB Securities Inc. ("SNCB").

     Plaintiffs acknowledge that they seek evidence concerning SNCB solely to support their theory of general ("doing business") jurisdiction over NCB. (Aug. 16 Ltr., p. 2.) Plaintiffs do not assert that SNCB had anything to do with the 9/11 attacks or that SNCB's activities relate to their theories of specific (conspiracy or purposefully-directed action) jurisdiction. SNCB depositions are not relevant to the question of general jurisdiction over NCB because SNCB was dissolved in 2001 and— as confirmed by the SNCB documents that NCB has produced— was not doing business for itself or for NCB at the time that the earliest of the 9/11 lawsuits was filed in August 2002. (*See* NCB's Aug. 13 Ltr., pp. 2-5.)

     Plaintiffs' selection of documents from the SNCB document production simply confirms NCB's earlier showing (*id*) that: (i) SNCB did not ever engage in the business of banking on behalf of NCB; and (ii) SNCB ceased operations in 2001 following its formal dissolution as a Delaware corporation. Specifically, in connection with SNCB's February 2001 dissolution:

     •    On February 16, 2001 SNCB terminated its lease on office space at 420 Lexington Avenue in Manhattan. (MDL Dkt. # 170, Exh. 8 at Exh. A) (copy attached hereto as Exh.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
August 20, 2007
Page 2

1). Plaintiffs have provided the Court with an e-mail that simply discusses SNCB's earlier, December 2000 efforts to terminate that lease. (Aug. 16 Ltr., Exh. B at NCB01574.)

• NCB (as SNCB's ultimate parent) entered into short-term consulting agreements with former SNCB employees Thomas Krohley (ending June 30, 2001) and Virginia Pensa (ending February 28, 2001) to assist NCB with the "termination" and "liquidation" of SNCB's activities, including the "transfer" of its remaining activities to NCB in Saudi Arabia, and the "liquidation of the assets of Hospitality Investment Partners, an investment vehicle formed by and indirectly controlled by NCB." (*Id.*, at NCB016258-60, NCB016264-66.)

• Discharging those functions, Mr. Krohley and Ms. Pensa operated from their homes (*id.*, at NCB01574) and collected funds as part of the liquidation of the assets of Hospitality Investment Partners. (*Id.*, at NCB01558, 1560-61, and 1568.) These and related activities— including the collection of tax refunds from the IRS— allowed the calculation of SNCB's final operating gain or loss and the "sending [of the] balance of money to LDN [SNCB Securities Ltd. in London] as dividend payment." (*Id.*, at NCB01558).

• All of these activities were completed before the termination of Mr. Krohley's consulting agreement at the end of June 2001. (*Id.*) All of these documents are consistent with NCB's prior showing that SNCB was out of business not later than the October 17, 2001 filing of it Surrender of Authority in New York. (*See* NCB's Aug. 16 Ltr., p. 3 n.1.)

In sum, plaintiffs can point to no evidence that SNCB did any business— on behalf of itself, or on behalf of NCB, including the business of liquidating SNCB— beyond 2001 and at the time the 9/11 lawsuits were filed. Plaintiffs' application to take SNCB depositions should be denied.

Respectfully submitted,

Ronald S. Liebman
*Counsel for Defendant The National Commercial Bank*

cc:    All Counsel

2

# Exhibit 1

## SURRENDER AGREEMENT

SURRENDER AGREEMENT (this "Agreement") dated as of the 16th day of February, 2001 between SLG Graybar Sublease LLC, having an office c/o SL Green Realty Corp., 420 Lexington Avenue, New York, New York 10170 (hereinafter referred to as "Landlord") and SNCB Securities, Inc., a Delaware corporation, having an office at 420 Lexington, New York, New York 10170 (hereinafter referred to as "Tenant").

## WITNESSETH:

WHEREAS, Landlord, as landlord, and Tenant, as tenant, entered into that certain lease agreement (the "Lease") made as of February 29, 2000, covering certain premises consisting of Room 460 more particularly described therein (the "Premises") in the building known as 420 Lexington, New York, New York (the "Building") under the terms and conditions contained therein; and

WHEREAS, the term of the Lease is set to expire on March 31, 2005 (the "Expiration Date") unless earlier terminated in accordance with the provisions thereof; and

WHEREAS, Tenant has requested that Landlord agree to cancel the Lease prior to the Expiration Date and accept surrender of the Premises effective as of January 31, 2001 (the "Early Cancellation Date") subject to and in accordance with the terms and conditions of this Agreement;

WHEREAS, Tenant acknowledges and agrees that Landlord intends to lease the Premises to a third-party for a term commencing immediately following the Early Cancellation Date; and

WHEREAS, Landlord has agreed to cancel the Lease prior to the Expiration Date and accept surrender of the Premises under the terms and conditions contained herein;

NOW, THEREFORE, in consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Cancellation of Lease and Surrender of Premises.

Tenant hereby surrenders to Landlord effective as of January 31, 2001 (the "Early Cancellation Date") the Lease and the term and estate thereby granted (including all renewal and/or extension rights), together with the Premises thereby demised, with the intent and purposes that the estate of Tenant in and to the Premises shall be extinguished in its entirety and the term of the Lease shall expire on the Early Cancellation Date with the same force and effect as if the Early Cancellation Date were the original Expiration Date of the term of the Lease subject, however, to the provisions of this Agreement.  On or prior to the Early Cancellation

Date, Tenant shall deliver to Landlord possession of the Premises (i) vacant and broom clean, (ii) free of all rights in any other party, as tenant, subtenant or other occupant ("Occupancies") and all encumbrances and (iii) otherwise in accordance with the terms, covenants and conditions of the Lease as if the Early Cancellation Date were the Expiration Date.  On or before the Early Cancellation Date, Tenant shall pay to Landlord the sum of $23,327.50 (the "Surrender Consideration") as consideration for Landlord's Agreement to accept Tenant's surrender of the Premises in accordance with the provisions hereof; provided, however, that if Tenant surrenders the Premises to Landlord in accordance with the provisions of this Agreement on or before the Early Cancellation Date, time being of the essence, and is not in default of the Lease, Landlord shall apply the security deposit held by Landlord under the Lease (which Tenant acknowledges and agrees is in the amount of $23,327.50) towards the payment of the Surrender Consideration.

2.      Tenant's Representations and Warranties.

Tenant hereby represents and warrants to Landlord, its successors and assigns, that: (i) the Lease has not been assigned, pledged or encumbered, (ii) except for Tenant, the Premises are free of all Occupancies, (iii) Tenant has not created or suffered any Occupancies in and/or to the Premises through and including the date of this Agreement and (iv) no materials, personality, furnishings, personal property, fixtures, trade fixtures and equipment ("Property") presently in the Premises are subject to any lien, encumbrance, chattel mortgage, title retention or security agreement and no action has been taken or suffered by Tenant as a result of which either the Premises or any Property shall or might be subject thereto.  Tenant covenants and agrees that it shall not at any time hereafter create, suffer or permit the creation of any such rights or encumbrances in or to the Premises or the Property contained therein.  Any Property left in the Premises by Tenant after the Early Cancellation Date shall be deemed to have been abandoned by Tenant, and Landlord shall have the right to retain or dispose of such Property in any manner at the expense of Tenant without any obligation to account to Tenant therefor.

3.      Survival of Obligations.

Neither the cancellation of the Lease hereunder nor the surrender of the Premises pursuant hereto shall release Tenant from its liability for any of its obligations accruing: (a) under this Agreement, or (b) under the Lease through and including the Early Cancellation Date.  Tenant acknowledges and agrees that (i) the Lease is in full force and effect, that Landlord is not in default in performance of any covenant, agreement or condition contained in the Lease and that there are no offsets or defenses which Tenant may have against Landlord and (ii) no consideration has been paid or is payable by Landlord in connection with the transaction which is the subject of this Agreement.

4.      Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

2

5.    Entire Agreement.

The Lease, as modified by this Agreement, represents the entire understanding between the parties with regard to the matters addressed herein and may only be modified by written agreement executed by all parties hereto. All prior understandings or representations between the parties hereto, oral or written, with regard to the matters addressed herein, other than the Lease, are hereby merged herein. Tenant acknowledges that neither Landlord nor any representative or agent of Landlord has made any representation or warranty, express or implied, except as specifically set forth in this Agreement. Tenant has not been induced by and has not relied upon any statement, representation or agreement, whether express or implied, not specifically set forth in this Agreement. Tenant shall not be liable or bound in any manner by any oral or written statement, broker's "set-up"," representation, agreement or information pertaining to this Agreement furnished by any real estate broker, agent, servant, employee or other person, unless specifically set forth herein, and no rights are or shall be acquired by Tenant by implication or otherwise unless expressly set forth herein.

6.    Effectiveness.

This agreement shall not be binding upon Landlord and Tenant until executed and delivered by both Landlord and Tenant.

7.    Ratification.

Except as specifically modified herein, all other terms, covenants and conditions of the Lease are and shall remain in full force and effect and are hereby ratified and confirmed. Tenant acknowledges that Landlord has not waived any requirement of the Lease, Landlord is not in breach of the Lease and Tenant has no claim for any failure of Landlord to perform it obligations under the Lease.

8.    No Brokers/Indemnification.

Tenant covenants, represents and warrants that Tenant has had no dealings or negotiations with any broker or agent in connection with the consummation of this agreement other than SL Green Leasing LLC with whom Tenant has dealt in connection with this Agreement solely as a consultant to Tenant, and Tenant covenants and agrees to defend, hold harmless and indemnify Landlord from and against any and all cost, expense (including reasonable attorneys' fees) or liability for any compensation, commissions or charges claimed by any broker or agent with respect to this Agreement or the negotiation thereof.

9.    Miscellaneous.

(a)    The captions in this Agreement are for convenience only are not to be considered in construing this agreement.

(b)    This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this agreement to be drafted.

3

(c)     Terms used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed thereto in the Lease.

(d)     If any provision of this Agreement or its application to any person or circumstances is invalid or unenforceable to any extent, the remainder of this agreement, or the applicability of such provision to other persons or circumstances, shall be valid and enforceable to the fullest extent permitted by law and shall be deemed to be separate from such invalid or unenforceable provisions and shall continue in full force and effect.

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Agreement as of the day and year first above written.

SLG GRAYBAR SUBLEASE LLC, a New York limited liability company

BY:  SLG GRAYBAR SUBLEASE CORP., a New York corporation, its Managing Member

By: _____

Name:    Andrew S. Levine
Title:      Executive Vice President

Witness:

Name:
Title:

SNCB Securities, Inc.

By: _____

Name:  THOMAS M. KROHLEY
Title:  President

Witness:

Name: ESPERANZA QUINTERO
Title:

4