# EXHIBIT H



Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney III
Daniel O. Rose
———
Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
John J. Veth\*°
Counsel

## KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Susan D. Bainnson
William O. Angelley
Michael R. Sherwin
Hilary B. Taylor
Elizabeth Crotty
Megan Benett

**California Office**
Gretchen M. Nelson\*
Stuart R. Fraenkel\*
Mark I. Labaton\*
———
Gabriel Barenfeld\*

**Massachusetts Office**
Anthony Tarricone\*
———
Susan A. Friery, M.D.°
James D. Gotz\*
Joseph P. Musacchio°

\*Admitted in CA only
⁺Admitted in MA only
°Admitted in MA & DC only
\*Resident in CA office

August 16, 2007

**Federal Express**

Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, New York 10007-1312

Re:  *In re Terrorist Attacks on September 11, 2001 v. NCB*

Dear Judge Maas:

I am sorry to burden the Court with yet another letter in response to NCB's latest reply objecting to any more discovery, but I will be brief.

The Court, in an attempt to control and limit deposition discovery, initially declined to approve depositions of SNCB employees but granted the 3 hour Smith deposition because it was the least burdensome way to learn about NCB and SNCB's activities in New York; or so we thought.[1]

Smith provided almost no relevant information regarding NCB or SNCB's activities in the U.S. after 1992. His lack of recall, non-involvement or defendant's reluctance to disclose

---

[1] Smith was also supposed to provide some insight to the 1998 process review for which he swore out an affidavit for a British Court proceeding.

pertinent information[2], should not prejudice plaintiffs. NCB's recent letter argues that plaintiffs are entitled to only one chance and that we should now be cut off from any further investigation.

NCB does not deny that SNCB was its wholly owned subsidiary and plaintiffs have produced documents that show SNCB conducted business in the U.S. on behalf of NCB after NCB was shut down in New York in 1992. As an initial matter, it is unclear whether NCB admits that SNCB was its alter ego or mere agent in the U.S. Plaintiffs have produced a sample of documents that suggests this is so. If NCB denies this, plaintiffs are entitled to more discovery on this alone.

The thrust of NCB's argument however, is that SNCB completely shut down in 2001 in any event. NCB supplied the sworn affidavit of Jorge Juco that said SNCB closed in February 2001. (See attached Exhibit A, ¶ 5). That sworn statement however, is belied by documents that reflect NCB-SNCB employees continued to work as "independent contractors" throughout 2001. (See attached Exhibit B, various documents, including renewable consulting contracts, generated by or sent to Virginia Pensa and Thomas Krohley on behalf of NCB and SNCB from their homes.)[3]

Not surprisingly, those consulting contracts no longer even feign to use the SNCB shell cover, rather, they are contracts between *"NCB"* and these long time employees. Plaintiffs do not know if they were renewed, but in the case of Pensa, she appears to have worked for NCB beyond the short-term contract provided by defendant.

At a minimum, these two American citizens, who were based in New York City, should be deposed by plaintiffs to determine the relationship between NCB-SNCB and how long they and others continued to conduct business for NCB or SNCB in the United States beyond 2001. This is no fishing expedition, and plaintiffs asked for these depositions even before the Smith

---

[2] Despite opening the door and waiving attorney work product privilege, NCB was able to suppress communications Smith had with Khalid Bin Mafouz and his British libel attorneys. Testimonial use of material otherwise protected by the attorney-client privilege or the work product privilege results in "subject matter waiver" of material related to the testimony and necessary to proper evaluation of it. *Alpex Computer Corp. v. Nintendo Co.*, 1994 U.S. Dist. Lexis 9393, *5 (S.D.N.Y. 1994); *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) (voluntarily revealing only some of the communications on a subject and withholding others - waives the privilege on the entire subject matter). Smith had further submitted his affidavit and met with British counsel as an expert exposing himself to full cross examination on the subject, yet plaintiffs were cut-off.

[3] SNCB did not file its surrender of authority in New York until October 17, 2001. Nor has it provided proof that it complied with other provisions of New York Business Corporation Law in its purported dissolution, including § 1008 and 1310 and the notice criteria therein. This is more than a technicality, it may serve to change the legal force and effect of the official date SNCB no longer had a legal presence in New York.

August 16, 2007
Page 3

deposition.

Most telling is NCB's plan to "submit an affidavit of a more knowledgeable former SNCB employee to address the nature and scope of SNCB's operations." (Liebman Aug. 13, 2007 ltr., p.5).  Further, the "decision whether to authorize depositions of former SNCB employees should be made by the court when it adjudicates NCB's renewed motion to dismiss for lack of jurisdiction." *Id.*

The proposal contradicts NCB's claim that it seeks to expedite discovery and motion practice.  The above is a recipe to prolong any full and fair decision on NCB's presence in the U.S.  Instead, what it really wants, is to deprive plaintiffs of full and fair discovery on jurisdictional contracts and hopes that the Court finds that there are no material issues of fact when it renews its motion to dismiss.

The approach is not only fundamentally unfair and prejudicial to plaintiffs, but makes zero logistical sense from a scheduling and motion practice perspective.  "Limited jurisdictional discovery" means discovery limited to a jurisdictional inquiry; it does not mean plaintiffs should be limited in gaining discovery from the very contracts that arguably evidence an ongoing presence in the jurisdiction.  See *e.g.*, *Intuit Inc. v. H&R Block Eastern Enterprises, Inc.*, 2006 WL 2504936 (N.D. Ca. 2006).  Depositions of SNCB employees/consultants should be granted.

Respectfully submitted,

KREINDLER & KREINDLER LLP

By: Andrew J. Maloney III

AJM/gm
Enclosure

cc by email :   Ron Liebman, Esq.
                Mitch Berger, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS BURNETT, SR., et al.,                    )
                                                )
                    Plaintiffs,                 )
                                                )
        v.                                      )       Case No. 02-CV-01616 (JR)
                                                )
AL BARAKA INVESTMENT AND                        )
DEVELOPMENT CORPORATION, et al.,                )
                                                )
                    Defendants.                 )
_____ )

## DECLARATION OF JORGE JUCO

1.      My name is Jorge Juco and I am employed by The National Commercial Bank
("NCB") in Jeddah, Kingdom of Saudi Arabia ("Saudi Arabia") as a legal advisor.  I submit this
Declaration in support of NCB's Motion to Dismiss the Third Amended Complaint.  I am advised
by NCB's United States legal counsel that this Declaration is not intended to waive, in any way,
NCB's claims of immunity from suit or its jurisdictional defenses, and is not intended to be a general
appearance by NCB in this lawsuit.  I understand and believe the following matters to be true,
through the date of this Declaration, based both on my personal knowledge and on inquiries made
of other NCB personnel who have knowledge about specific matters addressed in this Declaration.
I have been assisted by NCB's United States legal counsel in the phrasing of this Declaration.

2.      The purpose of this Declaration is to explain that NCB is not "doing business" in or
from the United States of America in light of the factors that I understand U.S. courts apply in
determining jurisdiction over a foreign defendant.

3.      NCB is a joint stock corporation established under the laws of Saudi Arabia.  Its
headquarters and principal place of business are in Jeddah, Saudi Arabia.

4.      NCB is not registered or licensed to do business in the United States.

5.     NCB does not currently have a branch office, subsidiary, or agency in the United States. NCB closed its branch in New York City in 1992 and has not had a branch in the United States since that time. NCB dissolved its indirect (second-tier) United States subsidiary, SNCB Securities Inc. (Delaware) in February 2001, with its certificate of dissolution having been filed with the Delaware Secretary of State on February 23, 2001, and acknowledged by the Delaware Secretary of State on February 28, 2001. (A certified copy of the Certificate of Dissolution of SNCB Securities Inc. (Delaware) is attached to this Declaration as Exhibit A.) NCB has not had a direct or indirect subsidiary in the United States since that time.

6.     NCB manages its business from its headquarters in Jeddah, Saudi Arabia. Its officers and directors reside in Saudi Arabia. NCB has no employees or telephone number in the United States.

7.     Although NCB is organized as a joint stock company, shares of NCB are not sold in the United States and NCB does not otherwise raise capital in the United States.

8.     NCB does not own real property in the United States.

9.     As a commercial bank chartered under Saudi Arabia law and headquartered in Saudi Arabia, NCB is regulated by the Saudi Arabian Monetary Agency ("SAMA"), the central bank of the Kingdom of Saudi Arabia. NCB is not regulated by any agency of the United States government.

10.     Under SAMA regulations, only the following may be NCB account-holders: citizens of Saudi Arabia; non-citizens who lawfully reside in Saudi Arabia; Saudi Arabia government entities; or, business and charitable entities with lawful status in Saudi Arabia. (A copy of the relevant SAMA regulations, as in effect when the Complaint was filed, is attached to this Declaration as Exhibit B.)

11.     NCB does not advertise or otherwise solicit business in the United States. NCB has several web-sites that I understand are accessible from the United States. Only NCB account-

**EXHIBIT B**

## Thomas M. Krohley

From:       Thomas M. Krohley <krohley@ix.netcom.com>
To:         Nassif Aoun <n.aoun@alahli.com>
Sent:       Thursday, December 14, 2000 4:57 PM
Subject:    Update

Nassif,

A mix of good and bad news:

- TV Scan decided against our space after all, surprising the leasing agent and of course me.

- The agent will "seriously consider" us forfeiting 4 months security deposit rather than 5 months, in effect using part of the deposit to pay January's rent. There are still some live prospects interested and more prospects to contact. The holidays, unfortunately, will hurt progress in the last 2 weeks of December. This remains my top priority.

- Our final sales of furniture/equipment is now $7,300 (reducing the writeoff from $20m to $13m), with our phone system (maybe a thousand or two) and some small items remaining. This is far better than I would have dreamed

- Our office will be vacant, with all sold furniture/eqipment picked up, by 12/20 and Ginger and I will be operating out of our homes from then on.

- Ginger's and my email addresses remain unchanged. My home phone is 203-259-7006 with an answering machine and a fax hooked up on the same number. For sending faxes, send them as normal except using this number; the answering machine can detect fax noise from human speech. I only ask that you phone or fax no earlier than 3 pm your time (7am my time); I don't want to disconnect the phone at night in case there are any emergencies, business or personal. Ginger's phone number is 212-692-0670 and she has the same fax/answering machine setup as me. Lastly, for some interim period, if anyone calls Ginger's or my old office numbers, they will be directed to our home numbers. We will be both carrying on with all unfinished business from our homes.

Natually, I am thoroughly pissed about TV Scan. By vacating the offices and by words to the agent, I have strongly suggested to him that we might simply walk away. I'll keep you informed.
Best regards, Tom

ONFIDENTIAL:  This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01574

## FACSIMILE TRANSMISSION

| To | Thomas Krohley | From | Ginger Pensa |
|---|---|---|---|
| Company | | Company | SNCB-NY |
| Phone | 203-259-7006 | Phone | 212-692-0670 |
| Fax | 203-259-7006 | Fax | 212-692-0670 |

In case of a problem with transmission, please call
Ginger Pensa 212-692-0670

**Date**     6 March, 2001

**No. of Pages**
(including cover page)     Number 02

---

*Message*

Hi Tom, please sign the attached wire transfer request for Huck Finn Inn.

Please fax directly to Amy Koch at Chase Bank her fax no. is 212-949-1398 (phone no. is 212-661-0607) and fax a copy to me for my records.

The actual debt service amount wired by Westmont was $9,425.76. Unfortunately since we do not maintain a balance in the account , it is charged a monthly $10 service fee and there is a $25 wire transfer fee. Last month the account was overdrawn $59.49, so I will only be able to transfer $9,331.00. I will account for the difference when advising Faisal Sajini of debt service amount.

Best Regards,

ONFIDENTIAL: This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01561

713 782 9600    P.01

APR-12-2001  14:46

# WENTZVILLE HOSPITALITY, INC.
5847 San Felipe, Suite 4650
Houston, Texas 77057
(713) 782-9100 (Telephone)
(713) 782-9600 (Facsimile)

<u>Via U. S. Mail & Facsimile: (203) 259-7006</u>

April 12, 2001

Mr. Thomas M. Krohley
President
SNCB Securities, Inc.
139 Oldfield Road
Fairfield, CT 06430

Dear Mr. Krohley:

Enclosed is a copy of Check No. 100001 confirming payment of the regularly scheduled monthly payment for April 2001 on the Wentzville Hospitality, Inc. Senior Loan. Wentzville Hospitality, Inc., to its knowledge, is not in default on the payment of this Senior Loan.

If you have any questions, please let me know.

Very truly yours,

Jerry Burrell
Chief Financial Officer

Enclosure

WordLtr3055.doc

NCB01568

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information 03 MDL 1570 (RCC), United States District

# FACSIMILE TRANSMISSION

| To | Thomas Krohley | From | Ginger Pensa |
|---|---|---|---|
| Company | | Company | SNCB-NY |
| Phone | 203-259-7006 | Phone | 212-692-0670 |
| Fax | 203-259-7006 | Fax | 212-692-0670 |

In case of a problem with transmission, please call
Ginger Pensa 212-692-0670

Date 5 June, 2001

No. of Pages (including cover page)   Number 05

## Message

Hi Tom, please sign the attached wire transfer request for Huck Finn Inn.

Please fax directly to Amy Koch c/o Bernice or Sue at Chase Bank, their fax no. is 212-949-1398 (phone no. is 212-661-0241) and fax a copy to me for my records.

Best Regards,

*These will come to your CT. home address.*

P.S. Also Faxing copy of F-S.
After transfer of $350,000 to LDN
Waiting for refund checks from IRS,
NYS + NYC. Will then proceed to
file for carryback loss. Then we can
send balance of money to LDN as
Dividend Payment.

ONFIDENTIAL: This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01558

# FACSIMILE

June 18, 2001

<u>URGENT</u>

TO   :   Alvares Baretto
FROM:   Thomas M. Krohley

NUMBER OF PAGES INCLUDING COVER: 6

Attached is closing documentation for Wentzville;  this is for NCB-IS records and
for the auditors.

Best regards,

Tom

ONFIDENTIAL: This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01560

JAN. 7. 1999   5:41PM   CHASE MAHN BANK   **CHASE**   NO.391   P.2/2

The Chase Manhattan Bank

**Application**

| SHADED AREAS FOR BANK USE ONLY | DATE | TIME |
| --- | --- | --- |

**BRANCH NO.**   PREFIX   TEST KEY

**TRANSFER TYPE:**
☐ WIRE   ☐ CABLE   ☐ DRAFT   ☐ Mail to Customer   ☐ Mail to Payee   ☐ Send to Branch

**FOR BACK OFFICE USE:**
INPUT   VER1   VER2   MOD

**IF TRANSFERRING FOREIGN CURRENCY:**
CONTRACT NO.   VALUE DATE   CONVERSION RATE   CONVERTED BY (initial)

**TRANSFER AMOUNT:**
FOREIGN CURRENCY (TYPE AND AMOUNT)   TRADER'S NAME

U.S. DOLLARS   $10,400.66

ADDITIONAL FEES $

TOTAL AMOUNT   $

**NOTE:**
- Foreign currency amount multiplied by the exchange rate = U.S. Dollar amount.
- U.S. Dollar amount divided by the exchange rate = Foreign Currency Amount.

**METHOD OF PAYMENT:**
DEBIT ACCOUNT NO.   DEBIT BRANCH/DEPT. NO.
DW-5001244-65

NAME/ACCOUNT TITLE
HULK FINN INN LIMITED /DEBT

ADDRESS
C/O SNCB Securities Inc

CITY, STATE, ZIP CODE, COUNTRY
720 Lex AVE NY NY 10070

**TO: PAYEE/BENEFICIARY'S BANK**
BANK CODE
021000128

BANK NAME
Chase Manhattan Bank

ADDRESS
401 MADISON BANK

CITY, STATE, ZIP CODE, COUNTRY
NEW YORK, NY 10017

ORIGINATOR REFERENCE:

**INTERMEDIARY CORRESPONDENT BANK:** (if necessary)
ABA ROUTING NO./SWIFT CODE

BANK NAME

ADDRESS

CITY, STATE, ZIP CODE, COUNTRY

**FOR: PAYEE/ACCOUNT OF ULTIMATE BENEFICIARY**
ACCOUNT NO.   400-026953

NAME/ACCOUNT TITLE
The National Commercial Bank

ADDRESS   P.O. Box 3555

CITY, STATE, ZIP CODE, COUNTRY
Jeddah, Saudi Arabia

BENEFICIARY REFERENCE:

A/C 555-03196-900-310

**SPECIAL INSTRUCTIONS:** (Optional)   FOR FURTHER CREDIT TO
Debt Service Payment For HULK FINN INN

**THE UNDERSIGNED AGREES TO THE CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION.**

CUSTOMER'S   212 692-0670

DATE OF APPLICATION   6-5-01

CUSTOMER SIGNATURE (if Applicable)

CUSTOMER'S SIGNATURE
_Mon M. Killy_

**CUSTOMER'S TRANSFER REQUEST:** (Complete appropriate boxes)
☐ FAX   ☐ IN PERSON   ☐ PHONE   ☐ MAIL/MESSENGER

I.D. USED (Do not leave blank)

☐ TELEPHONE/FAX AGREEMENT ON FILE
☐ ONE TIME ONLY TRANSACTION
☐ HOLD PLACED

☐ CALL-BACK IF OVER $ LIMIT:
☐ By ___   ☐ Spoke to ___   ☐ Time ___   INITIALS

TEST KEY CALCULATED BY (if different than taken in by)   INITIALS

TAKEN IN BY (Print Name)

BRANCH AUTHORIZED SIGNER (Print Name)   BRANCH TELEPHONE NO.   BRANCH AUTHORIZED SIGNATURE

02 3901F (3-98)   **BRANCH COPY**

ONFIDENTIAL: This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01558

JUN.18'2001 17:20 212 949 1398          CHASE  BANK                    #1579 P.001/001

The Chase Manhattan Bank          ⬤ CHASE                    **Transfer**
                                                             **Application**

| (SHADED AREAS FOR BANK USE ONLY) | | | | |
|---|---|---|---|---|
| BRANCH NO. | PREFIX | TEST KEY | DATE | TIME |

**TRANSFER TYPE:**

☐ WIRE   ☐ CABLE   ☐ DRAFT   ☐ Mail to Customer   ☐ Mail to Payee   ☐ Send to Branch

**REP SIGNATURES (Complete appropriate boxes):**

| KEY | MODIFY | MODIFY | APPROVE |
|---|---|---|---|

**IF TRANSFERRING FOREIGN CURRENCY:**

| CONTRACT NO. | VALUE DATE | CONVERSION RATE | CONVERTED BY (Initials) |
|---|---|---|---|

**TRANSFER AMOUNT:**

| FOREIGN CURRENCY (TYPE AND AMOUNT) | TRADER'S NAME | U.S. DOLLARS $ 1,000,008.27 |
|---|---|---|

**NOTE:**
- Foreign currency amount multiplied by the exchange rate = U.S. Dollar Amount.
- U.S. Dollar amount divided by the exchange rate = Foreign Currency Amount.

ADDITIONAL FEES $

TOTAL AMOUNT $

**METHOD OF PAYMENT:**

DEBIT ACCOUNT NO. 064-5001244-65      DEBIT BRANCH/DEPT. NO.

**INTERMEDIARY CORRESPONDENT BANK: (if necessary)**
ABA ROUTING NO./SWIFT CODE

NAME/ACCOUNT TITLE   Huck Finn Inn Limited / Debt

BANK NAME

ADDRESS   c/o SNCB Securities Inc

CITY, STATE, ZIP CODE, COUNTRY   420 Lexington Ave., N.Y., N.Y. 10170

ADDRESS

CITY, STATE, ZIP CODE, COUNTRY

**TO: PAYEE/BENEFICIARY'S BANK**

**FOR PAYEE/ACCOUNT OF ULTIMATE BENEFICIARY**
ACCOUNT NO.   400-026953

BANK CODE   021000128

BANK NAME   CHASE MANHATTAN BANK

NAME/ACCOUNT TITLE   THE NATIONAL COMMERCIAL BANK

ADDRESS   401 MADISON AVE.

ADDRESS   P.O. BOX 3555

CITY, STATE, ZIP CODE, COUNTRY   NEW YORK N.Y. 10017

CITY, STATE, ZIP CODE, COUNTRY   JEDDAH, SAUDI ARABIA

**ORIGINATOR REFERENCE:**

BENEFICIARY REFERENCE:

**SPECIAL INSTRUCTIONS: (Optional)**   FOR FURTHER CREDIT TO: A/C 555-03196-900-310
WENTZVILLE SETTLEMENT

**THE UNDERSIGNED AGREES TO THE CONDITIONS ON THE REVERSE SIDE OF THIS APPLICATION.**

CUSTOMER'S TELEPHONE NO.   203-259-7006

DATE OF APPLICATION   6/19/01

CUSTOMER'S SIGNATURE   Thom M. Kirtley

CUSTOMER'S SIGNATURE (if Applicable)

**CUSTOMER'S TRANSFER REQUEST: (Complete appropriate boxes)**

☐ FAX   ☐ IN PERSON   ☐ PHONE   ☐ MAIL/MESSENGER

I.D. USED (Do not leave blank)

☐ TELEPHONE/FAX AGREEMENT ON FILE
☐ ONE TIME ONLY TRANSACTION

☐ CALL-BACK IF OVER $ LIMIT:

☐ By ____   ☐ Spoke to ____   ☐ Time ____

☐ HOLD PLACED

TAKEN IN BY (Print Name)   |   INITIALS   |   TEST KEY CALCULATED BY (if different than taken in by)   |   INITIALS

BRANCH AUTHORIZED SIGNER (Print Name)   |   BRANCH TELEPHONE NO. (   )   |   BRANCH AUTHORIZED SIGNATURE

02350-1 (4-99) 4-99                    BRANCH COPY

ONFIDENTIAL: This Document is subject to a
rotective Order regarding confidential information
03 MDL 1570 (RCC), United States District

NCB01561

## CONSULTANCY AGREEMENT

Consultancy Agreement, dated as of October _____, 2000, between Virgina I. Pensa ("Pensa") and The National Commercial Bank, Jeddah, Saudi Arabia ("NCB").

1. <u>Scope of Consultancy</u>

(a) NCB appoints Pensa, and Pensa accepts such appointment, as a consultant to assist and advise NCB on matters described below subject to the limitations described in Section 2 hereof:

(i) Advising and assisting NCB in activities involved with the closure of SNCB Securities Inc., an indirectly owned subsidiary of NCB, including the termination of its activities and liquidation of its corporate entity;

(ii) Advising and assisting NCB in activities involved with the transfer and subsequent on-going administration, of administrative functions of NCB's Investment Services Division's off-shore mutual fund structure in the British Virgin Islands, formerly provided by SNCB Securities Inc., to NCB and NCB's Saudi Arabian-based legal counsel;

(iii) Advising and assisting NCB in activities involved with the liquidation of the assets of Hospitality Investment Partners, an investment vehicle formed by and indirectly controlled by NCB; and

(iv) Advising and assisting NCB in activities involved with other general matters of the NCB's Investment Services Division as may arise and be mutually agreed upon by NCB and Pensa during the term of this Agreement.

2. <u>Limitations</u>

Notwithstanding anything to the contrary set forth in Section 1 or otherwise in this Agreement, unless specifically granted such authority in writing by the party to be bound after the date of this Agreement, Pensa shall have no power or authority to bind or contract for NCB or SNCB Securities Inc. <u>except</u>, if during the term of this Agreement, Pensa remains an Officer and/or Director of SNCB Securities Inc. in which case Pensa shall have those powers as are granted to an Officer and/or Director of SNCB Securities Inc.

3. <u>Fees and Expenses</u>

(a) As consideration for services rendered under this Agreement, Pensa shall be entitled to receive fees and expenses as set forth below:

(i) <u>Monthly Fee:</u> NCB agrees to pay Pensa a monthly fee equal to US$6,520 per month, payable on the 15th day of each month.

(ii) <u>Expenses:</u> NCB agrees to reimburse Pensa for expenses incurred in the course of rendering services under this Agreement, including but not limited to expenses for telephone and fax, office supplies, courier, domestic and international travel and entertainment and miscellaneous office expenses <u>provided that</u> no travel and

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United Stated District Court for the Southern District of New York

NCB016258

entertainment expense, and no expense exceeding $300 is to be incurred without NCB's prior approval. Pensa will invoice for reimbursement of expenses each month such expenses are incurred and reimbursement is payable by NCB on the 15th of each month.

(iii) Payment of Monthly Fee and Expenses: Payment of monthly fee and Expenses shall be made by NCB by money transfer from NCB to:

Routing #021000089 Citibank, N.A.
For credit account #50713818 Citibank Checking
Virginia I. Pensa, 45 Grant Dr., N. Valley Stream, N.Y. 11580

4. Indemnification

NCB shall indemnify and hold harmless Pensa from and against any and all liabilities, claims, demands, losses, damages, causes of actions, attorneys' fees and disbursements, costs or expenses of any nature whatsoever arising out of or incidental to Pensa's performance of the activities covered herein, including activities Pensa may conduct in the capacity of Officer and/or Director of SNCB Securities Inc. after December 31, 2000, except in cases of gross negligence or willful misconduct by Pensa. This right of indemnification shall survive termination of this Agreement.

5. Term

This Agreement shall be effective as of January 1, 2001. This Agreement shall continue in force for a period from such effective date until February 28, 2001 unless it is extended by mutual consent of NCB and Pensa. This Agreement is non-cancelable by NCB, Pensa or NCB successors and assigns.

6. Amendments

This Agreement shall not be changed, modified, terminated, or discharged in whole or in part except by an instrument in writing signed by the parties hereto, or NCB successors or assigns.

7. Assignment

No party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other party.

8. Notices

All notices and communications required or permitted hereunder shall be in writing and sent to the address set forth below:

To NCB:

The National Commercial Bank

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United Stated District Court for the Southern District of New York

2

NCB016259

Al Nakeel Center
Jeddah 214881, Saudi Arabia
Attention: Investment Services Division

To Pensa:

Virginia I. Pensa
45 Grant Dr.
N. Valley Stream, New York 11580
USA

9. Governing Law

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

IN WITNESS WHEREOF, Virginia I. Pensa and The National Commercial Bank, the latter by an authorized officer, have caused this Agreement to be duly executed on October _____, 2000.

THE NATIONAL COMMERCIAL BANK


_____
By: Nassif L. Aoun, Investment Services
    Division Head
    The National Commercial Bank


VIRGINIA I. PENSA


_____
By: Virginia I. Pensa


CONFIDENTIAL: This Document is subject to a
Protective Order regarding confidential information in
03 MDL 1570 (RCC), United Stated District Court for
the Southern District of New York

3

NCB016260

عناصر الاستثمار
Investment Services

## CONSULTANCY AGREEMENT

Consultancy Agreement, dated as of October __14__, 2000, between Thomas M. Krohley ("Krohley") and The National Commercial Bank, Jeddah, Saudi Arabia ("NCB").

1. Scope of Consultancy

(a) NCB appoints Krohley, and Krohley accepts such appointment, as a consultant to assist and advise NCB on matters described below subject to the limitations described in Section 2 hereof:

(i) Advising and assisting NCB in activities involved with the closure of SNCB Securities Inc., an indirectly owned subsidiary of NCB, including the termination of its activities and liquidation of its corporate entity;

(ii) Advising and assisting NCB in activities involved with the transfer and subsequent on-going administration, of administrative functions of NCB's Investment Services Division's off-shore mutual fund structure in the British Virgin Islands, formerly provided by SNCB Securities Inc., to NCB and NCB's Saudi Arabian-based legal counsel;

(iii) Advising and assisting NCB in activities involved with the liquidation of the assets of Hospitality Investment Partners, an investment vehicle formed by and indirectly controlled by NCB; and

(iv) Advising and assisting NCB in activities involved with other general matters of the NCB's Investment Services Division as may arise and be mutually agreed upon by NCB and Krohley during the term of this Agreement.

2. Limitations

Notwithstanding anything to the contrary set forth in Section 1 or otherwise in this Agreement, unless specifically granted such authority in writing by the party to be bound after the date of this Agreement, Krohley shall have no power or authority to bind or contract for NCB or SNCB Securities Inc. except, if during the term of this Agreement, Krohley remains an Officer and/or Director of SNCB Securities Inc. in which case Krohley shall have those powers as are granted to an Officer and/or Director of SNCB Securities Inc.

3. Fees and Expenses

(a) As consideration for services rendered under this Agreement, Krohley shall be entitled to receive fees and expenses as set forth below:

(i) Monthly Fee: NCB agrees to pay Krohley a monthly fee equal to US$12,600 per month, payable on the 15th day of each month.

(ii) Expenses: NCB agrees to reimburse Krohley for expenses incurred in the course of rendering services under this Agreement, including but not limited to expenses for telephone and fax, office supplies, courier, domestic and international travel and entertainment and miscellaneous office expenses provided that no travel and entertainment expense, and no expense exceeding $300 is to be incurred without NCB's prior approval. Krohley will invoice for reimbursement of expenses each month such expenses are incurred and reimbursement is payable by NCB on the 15th of each month.

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United Stated District Court for the Southern District of New York

NCB016264



(iii) <u>Payment of Monthly Fee and Expenses</u>: Payment of monthly fee and Expenses shall be made by NCB by money transfer from NCB to:

> Routing #021001088 HSBC Bank USA
> For credit account #000112046 Vanguard Incoming Wire Account
> In favor of #45 tax exempt money market fund
> Account #9868934270
> Thomas M. Krohley, 139 Oldfield Road, Fairfield, CT 06430

### 4. Indemnification

NCB shall indemnify and hold harmless Krohley from and against any and all liabilities, claims, demands, losses, damages, causes of actions, attorneys' fees and disbursements, costs or expenses of any nature whatsoever arising out of or incidental to Krohley's performance of the activities covered herein, including activities Krohley may conduct in the capacity of Officer and/or Director of SNCB Securities Inc. after December 31, 2000, except in cases of gross negligence or willful misconduct by Krohley. This right of indemnification shall survive termination of this Agreement.

### 5. Term

This Agreement shall be effective as of January 1, 2001. This Agreement shall continue in force for a period from such effective date until June 30, 2001 unless it is extended by mutual consent of NCB and Krohley. This Agreement is non-cancelable by NCB, Krohley or NCB successors and assigns.

### 6. Amendments

This Agreement shall not be changed, modified, terminated, or discharged in whole or in part except by an instrument in writing signed by the parties hereto, or NCB successors or assigns.

### 7. Assignment

No party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other party.

### 8. Notices

All notices and communications required or permitted hereunder shall be in writing and sent to the address set forth below:

> To NCB:
> The National Commercial Bank
> Al Nakeel Center
> Jeddah 214881, Saudi Arabia
> Attention: Investment Services Division

CONFIDENTIAL: This Document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (RCC), United Stated District Court for the Southern District of New York

NCB016265



To Krohley:

Thomas M. Krohley
139 Oldfield Road
Fairfield, CT 06430
USA

9.  Governing Law

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

IN WITNESS WHEREOF, Thomas M. Krohley and The National Commercial Bank, the latter by an authorized officer, have caused this Agreement to be duly executed on October ___14___, 2000.

THE NATIONAL COMMERCIAL BANK

By:  Nassif L. Aoun, Investment Services
Division Head
The National Commercial Bank

THOMAS M. KROHLEY

By:  Thomas M. Krohley

CONFIDENTIAL: This Document is subject to a
Protective Order regarding confidential information in
03 MDL 1570 (RCC), United Stated District Court for
the Southern District of New York

NCB016266

*N c P*

## Jerry S. Goldman

*D/ J*

*C b*

| | |
|---|---|
| **From:** | Andrew Maloney [AMaloney@kreindler.com] |
| **Sent:** | Thursday, August 16, 2007 6:18 PM |
| **To:** | zRonald S. Liebman; zMitchell Berger |
| **Cc:** | zRobert Haefele; zSean P. Carter; zScott Tarbutton; Jerry S. Goldman; zJodi W. Flowers; zAndrea Bierstein; Jim Kreindler; John Fawcett; Elizabeth Crotty |
| **Subject:** | Letter to J. Maas re NCB |



IR5570_FAX-Excha
nge-08162007-1...

The enclosed letter is being over nighted to J. Maas  regarding the latest dispute with
NCB.

1