# Exhibit A

No. 08-

In The
# Supreme Court of the United States

In Re Terrorist Attacks on September 11, 2001

Federal Insurance Company et al.,

*Petitioners,*

v.

Kingdom of Saudi Arabia et al.,

*Respondents.*

On Petition for a Writ of Certiorari
to the United States Court of Appeals
for the Second Circuit

## PETITION FOR A WRIT OF CERTIORARI

| | |
|---|---|
| Stephen A. Cozen<br>Elliott R. Feldman<br>Sean P. Carter<br>Adam C. Bonin<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103<br>(215) 665-2000 | Carter G. Phillips*<br>Richard D. Klingler<br>James C. Owens<br>Robert A. Parker<br>Sidley Austin LLP<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>(202) 736-8000 |

Stephen B. Burbank
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7072

*Counsel for the Federal Insurance, Vigilant
Insurance, and Pacific Employers Petitioners*

November 12, 2008          * Counsel of Record

[Additional Counsel Listed Inside]

Wilson-Epes Printing Co., Inc.   –   (202) 789-0096   –   Washington, D. C. 20002

KENNETH L. ADAMS
CHRISTOPHER T.
  LEONARDO
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C. 20006
(202) 420-2200

*Counsel for the Cantor Fitzgerald and Port Authority Petitioners*

JAMES P. KREINDLER
ANDREW J. MALONEY, III
KREINDLER &
  KREINDLER, LLP
100 Park Avenue
New York, NY 10017
(212) 687-8181

*Counsel for the Ashton Petitioners*

ROBERT M. KAPLAN
FERBER CHAN ESSNER &
  COLLER, LLP
530 Fifth Avenue
23rd Floor
New York, NY 10036-5101
(212) 944-2200

*Counsel for the Continental Petitioners*

JERRY S. GOLDMAN
MARK E. GOTTLIEB
LINDA GERSTEL
ANDERSON KILL &
  OLICK, PC
1600 Market Street
Suite 2500
Philadelphia, PA 19103
(267) 216-2795

*Counsel for the O'Neill Petitioners*

RONALD L. MOTLEY
VINCENT I. PARRETT
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

ANDREA BIERSTEIN
HANLY CONROY BIERSTEIN
  SHERIDAN FISHER &
  HAYES LLP
112 Madison Ave., 7th Flr.
New York, NY 10016
(212) 784-6400

*Counsel for the EuroBrokers, WTC Properties, and Burnett Petitioners*

FRANK J. RUBINO, JR.
BROWN GAVALAS &
 FROMM LLP
355 Lexington Avenue
New York, NY 10017
(212) 983-8500

*Counsel for Petitioner
New York Marine and
General Insurance
Company*

## QUESTIONS PRESENTED

1. Whether, for purposes of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1603(a), a claim against an "agency or instrumentality" of a foreign state encompasses a claim against an individual foreign official;

2. Whether tort claims brought against foreign states and officials based on acts of terrorism committed in the United States must meet the conditions of the FSIA's "state sponsor of terrorism" exception, 28 U.S.C. § 1605A, and cannot be brought under the FSIA's exception for non-commercial tort claims, 28 U.S.C. § 1605(a)(5); and

3. Whether the Due Process Clause precludes U.S. courts from exercising personal jurisdiction over individuals who provide material support to terrorists outside the United States, knowing those terrorists intend to commit terrorist attacks in the United States.

## PARTIES TO THE PROCEEDINGS

There are over 6,000 petitioners in these proceedings. They are listed in the appendix at Pet. App. K (299a-489a). A separate corporate disclosure statement for the corporate petitioners is included at Pet. App. L (490a-494a).

Respondents are the Kingdom of Saudi Arabia; the Saudi High Commission for Relief of Bosnia and Herzegovina; and Crown Prince Sultan bin Abdulaziz al-Saud, Prince Naif bin Abdulaziz al-Saud, Prince Salman bin Abdulaziz al-Saud, Prince Turki al-Faisal bin Abdulaziz al-Saud, and Prince Mohamed al Faisal al Saud.

# TABLE OF CONTENTS

| | Page |
|---|---|
| QUESTIONS PRESENTED | i |
| PARTIES TO THE PROCEEDINGS | ii |
| TABLE OF AUTHORITIES | v |
| OPINIONS BELOW | 1 |
| JURISDICTION | 1 |
| STATUTORY PROVISIONS INVOLVED | 1 |
| STATEMENT OF THE CASE | 1 |
|     A. The September 11th Victims' Claims | 3 |
|     B. The District Court's Decisions | 9 |
|     C. The Court of Appeals' Opinion | 10 |
| REASONS FOR GRANTING THE PETITION | 14 |
|   I. THE SECOND CIRCUIT'S DECISION EXTENDING FSIA IMMUNITY TO FOREIGN OFFICIALS SUED FOR THEIR OFFICIAL ACTS DEEPENS A CONFLICT AMONG THE COURTS OF APPEALS AND ADOPTS A POSITION OPPOSED BY THE UNITED STATES AS CONTRARY TO NATIONAL INTERESTS OF "CRITICAL IMPORTANCE" | 14 |
|   II. THE SECOND CIRCUIT'S NARROW CONSTRUCTION OF THE FSIA'S "NON-COMMERCIAL TORT EXCEPTION" CONFLICTS WITH DECISIONS OF OTHER CIRCUITS AND DRAMATICALLY LIMITS VICTIMS' ABILITY TO RECOVER FOR ACTS OF TERRORISM COMMITTED IN THE UNITED STATES | 20 |

iv

TABLE OF CONTENTS—continued
Page
III. THE SECOND CIRCUIT'S HOLDING THAT THE DUE PROCESS CLAUSE BARS PERSONAL JURISDICTION OVER MATERIAL SUPPORTERS OF TERRORISM IS INCONSISTENT WITH THIS COURT'S PRECEDENTS, CONFLICTS WITH THE HOLDINGS OF OTHER COURTS, AND IMPERILS NUMEROUS U.S. COUNTERTERRORISM MEASURES .................. 26

CONCLUSION .................................................. 33

6

Petitioners' claims against Saudi Arabia in this case concern the attributable actions of charities under the Saudi government's control and actions of Saudi officials who used their offices to support al Qaeda's global jihad. The victims have alleged that "[o]stensible charitable organizations, and in particular, Islamic charities under the control of the Kingdom of Saudi Arabia ... are fully integrated components of al Qaida's organizational structure, and are actively involved at every level of al Qaida's operations, from recruitment and training of new members, to the planning and conduct of terrorist attacks." See First Amended Compl. of Plaintiffs Federal Ins. Co. *et al.* ¶ 79, No. 1:03-md-1570 (S.D.N.Y., filed Mar. 10, 2004) (hereinafter "Compl."). These "charities" have "served as the primary vehicle for raising, laundering and distributing funds on behalf of al Qaida from its inception," and "have provided arms, false travel documentation, physical assets and logistical support to al Qaida." *Id.*; see also *id.* ¶ 80. As the court of appeals acknowledged, the victims' allegations "include a wealth of detail (conscientiously cited to published and unpublished sources) that, if true, reflect close working arrangements between ostensible charities and terrorist networks, including al Qaeda." Pet. App. 5a.

---

U.S. "continue[s] to stress in our discussions with the Saudis the need for full implementation" of those efforts); *Money Laundering and Terror Financing Issues in the Middle East: Hearing Before the Sen. Comm. on Banking, Housing & Urban Affairs*, 109th Cong. 43-44 (July 13, 2005) (testimony of Stuart Levey, Under Sec'y of Terrorism & Financial Intelligence, Treasury Dep't) (Saudi charities remain "a significant source of terrorist financing" and "continue to cause us concern," and the Saudi Government must continue to address "vulnerabilities" in its control of these groups); *see generally* Cong. Research Serv., Report to Congress, *Saudi Arabia: Terrorist Financing Issues* (Dec. 8, 2004).

428, 439 (1989) (§ 1605(a)(5) applies only to "*non-commercial* torts") (emphasis added).

## III. THE SECOND CIRCUIT'S HOLDING THAT THE DUE PROCESS CLAUSE BARS PERSONAL JURISDICTION OVER MATERIAL SUPPORTERS OF TERRORISM IS INCONSISTENT WITH THIS COURT'S PRECEDENTS, CONFLICTS WITH THE HOLDINGS OF OTHER COURTS, AND IMPERILS NUMEROUS U.S. COUNTERTERRORISM MEASURES.

The Second Circuit held that the Constitution permits federal courts to assert personal jurisdiction over only those who "directed" terrorist attacks or "commanded an agent ... to commit them," but bars jurisdiction over persons who "could and did foresee that recipients of their donations would attack targets in the United States." Pet. App. 42a-43a. Even a showing that a defendant "intended to fund al Qaeda" and did so with full knowledge of "Osama bin Laden's public announcements of jihad against the United States and al Qaeda's attacks on [U.S. interests]" would be "far too attenuated to establish personal jurisdiction in American courts." *Id.* at 43a-44a. In holding that U.S. courts cannot adjudicate claims against persons who provide material support abroad to terrorists known to target the United States, the Second Circuit distorted the Due Process decisions of this Court, created a conflict with the Seventh, Ninth, and D.C. Circuits, and adopted a rule with the potential to undermine some of this country's most important counterterrorism measures directed against those who provide material support to terrorist organizations.

A. The Second Circuit's analysis departs markedly from this Court's precedents. The Due

Process Clause permits an assertion of jurisdiction where the defendant's conduct is "such that he should reasonably anticipate being haled into court" in the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Where actions involving the defendant "were expressly aimed" at the forum, and the defendant knew "that the brunt of that injury would be felt" in the forum, a court has jurisdiction over claims against the defendant arising from that conduct. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (a defendant need only have "'fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign'").

The Second Circuit's bar on jurisdiction based on a defendant's provision of material support to terrorism directed at the forum establishes a rule at odds with this Court's precedents. Although it is true that merely foreseeing a possible injury is not alone sufficient to establish jurisdiction, "[t]his is not to say ... that foreseeability is wholly irrelevant" to the inquiry. *World-Wide Volkswagen*, 444 U.S. at 297. Instead, the relevant question is whether the defendant could reasonably foresee that his purposeful actions might give rise to liability in the forum. *Id.*; *Burger King*, 471 U.S. at 472; *Calder*, 465 U.S. at 789-90. That standard is certainly met here.

This is not a case where a third party's "unilateral act" is the only connection to the forum. See *Asahi Metal Indus. Co. v. Super. Court*, 480 U.S. 102, 109-10 (1987) (citing *World-Wide Volkswagen*, 444 U.S. at 295-98). Rather, as petitioners have alleged (and as the Second Circuit assumed), the defendants *knowingly* funneled money to al Qaeda *knowing* al Qaeda intended to use those funds to attack U.S. civilians in the United States. See, *e.g.*, Pet. App.

43a-44a; Compl. ¶¶ 430-431, 442-443, 451-452, 461-463. It is thus hardly unfair or unforeseeable that the princes would face court proceedings in this country when al Qaeda did precisely what it committed to do with the princes' money. The provision of material support to terrorists whose express aim is to kill the citizens of another country surely gives a person "'fair warning that [that activity] may subject [him] to the jurisdiction of a foreign sovereign.'" *Burger King*, 471 U.S. at 472.

B. The Second Circuit's decision also conflicts with decisions of the Seventh, Ninth, and D.C. Circuits, and other federal courts. In *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), for example, the Seventh Circuit, per Judge Easterbrook, held that when suing in tort "the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders." *Id.* at 1202. "[T]here can be no serious doubt after *Calder* v. *Jones*," the court continued, "that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Id.*

The Ninth Circuit held to like effect in *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998): under *Calder*'s "'effects test,'" "jurisdiction may attach if the defendant's conduct is aimed at *or has an effect in* the forum state." *Id.* at 1321 (emphasis added); see *id.* at 1321-22 (defendant knew his website infringed the plaintiff's trademark, and he "knew Panavision would likely suffer harm" in California, thus establishing personal jurisdiction). The Second Circuit (without citing these cases) held the opposite: the princes are accused of tortious conduct knowingly directed against the United States

29

and causing injury here, and yet jurisdiction is lacking.

This split extends to D.C. Circuit precedent arising directly in the context of actions against terrorists who target the United States. In *Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005), the D.C. Circuit held that personal jurisdiction exists over individuals (like the princes) who participate in a "conspiracy to attack the United States, with overt acts occurring within this country's borders." *Id.* at 13. The court flatly rejected the view that the defendants must actually have committed or directed the acts; instead, it applied *International Shoe*, *Burger King* and *World-Wide Volkswagen* and found that those who "engage[] in unabashedly malignant actions directed at [and] felt in this forum" should "reasonably anticipate being haled into court" in the United States. *Mwani*, 417 F.3d at 12-13 (quotation marks omitted). Providing material support to al Qaeda readily satisfies this standard.

Other courts have followed the D.C. Circuit's rule and are in conflict with the Second Circuit's rule. In *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006), for example, the defendant (like the princes here) "provided substantial financial support and personnel assistance to help [al Qaeda] achieve its international terrorism objectives," including encouraging his sons to join. *Id.* at 1327. The court, applying *Mwani*, held that this was a "textbook example[]" of personal jurisdiction under *Calder*'s effects test. *Id.* at 1335-36 ("In terrorism cases … jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum.") (quotation marks omitted). The court held that such conduct "creates personal jurisdiction even when a defendant did *not* personally participate in the attack itself." *Id.*

at 1336 (emphasis added). "Terrorist attacks require more than a triggerman—they also require financing, planning, and coordinating before a bomb detonates or a plane flies into a building," and thus "personal 'participation in al Qaeda's terrorist agenda'" is sufficient to create jurisdiction over a defendant. *Id.*; see also *Pugh* v. *Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54, 59 (D.D.C. 2003) (individuals who "conspired" to commit acts of terrorism against foreigners in Africa could "expect they might be haled into the courts of those nations whose citizens would die"); *Daliberti* v. *Republic of Iraq*, 97 F. Supp. 2d 38, 53-54 (D.D.C. 2000) (those who "sponsor terrorism [have] been given adequate warning that terrorist acts against United States citizens, no matter where they occur, may subject them to suit in a United States court").

The Second Circuit purported to distinguish certain of these cases on the ground that they concerned "primary participants in terrorist acts," which the panel defined as someone who perpetrated or "commanded" the act. Pet. App. 41a-42a. Initially, that is simply inaccurate—*Morris*, for example, involved a financier of al Qaeda who did not participate in or "command" the attack. But more importantly, none of the cases cited by the Second Circuit says anything about such a distinction, nor does it appear in any of this Court's personal jurisdiction precedents. Indeed, the D.C. Circuit in *Mwani* (and the district courts in *Morris*, *Pugh*, and *Daliberti*) rejected the argument that only those who actually direct or carry out attacks may be sued in U.S. courts, holding instead that those who "conspire," "sponsor," or in some way "participat[e] in al Qaeda's terrorist agenda," see *supra* at 29-30, should anticipate defending themselves in U.S.

Case 1:03-md-01570-GBD-SN   Document 2146-2   Filed 11/25/08   Page 15 of 18

31

courts. This applies directly to the princes, who are alleged to have materially supported al Qaeda knowing that it would use the support to attack U.S. interests.

C. The United States does, in fact, use enforcement actions in U.S. courts as important tools for combating terrorism and ending terrorists' support, and the Second Circuit's rule limiting jurisdiction over those alleged to have provided extraterritorial support to terrorists has the potential to undermine a broad range of counterterrorism measures.

Criminal and civil prohibitions against the provision of material support for terrorism, including support provided by foreigners abroad, lie at the center of the United States' counterterrorism policies. For example, 18 U.S.C. § 2339B imposes criminal penalties upon "[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so," knowing "that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). Congress specifically provided U.S. courts with broad "extraterritorial Federal jurisdiction." *Id.* § 2339B(d). Similarly, the prohibition against financing terrorism imposes criminal penalties upon "[w]hoever … directly or indirectly, unlawfully and willfully provides or collects funds … with the knowledge that such funds are to be used … in order to carry out … any other act intended to cause death or serious bodily injury to a civilian." *Id.* § 2339C(a)(1)(B). Congress extended jurisdiction over such offenses even when the funding takes place outside the United States if the act "was directed toward or resulted in the carrying out of a predicate act" against U.S. nationals, persons or property within the United

States, or property of U.S. persons or government agencies. *Id.* § 2339C(a)-(b).

Congress also provided a civil remedy to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism," *id.* § 2333, and intended this provision to extend liability to those whose conduct would fall within the criminal provisions addressing material support to terrorism.[11] See *Boim* v. *Quranic Literacy Inst.*, 291 F.3d 1000, 1012-16 (7th Cir. 2002). Section 2333 imposes liability on those who provide financial support abroad to terrorists and who aid or abet acts of terrorism, as long as "the defendants knew about the organization's illegal activity, desired to help that activity succeed and engaged in some act of helping." *Id.* at 1028. Congress "impose[d] liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts" because "there would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence." *Id.* at 1021.

By creating a constitutional barrier to jurisdiction in U.S. courts over those who facilitate but do not directly commit or command acts of terrorism, the Second Circuit sharply limited the scope and enforceability of these and other criminal and civil statutes designed to address financial and other support provided to terrorist organizations. The Second Circuit has held that the Due Process Clause places beyond the reach of federal courts precisely the conduct—material support of terrorism and terrorist organizations—that most threatens the United States

---

[11] Petitioners have expressly pled a cause of action against the respondents under § 2333. Compl. ¶¶ 634-638.

33

and that the United States government vigorously seeks to prevent and punish.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully submitted,

STEPHEN A. COZEN
ELLIOTT R. FELDMAN
SEAN P. CARTER
ADAM C. BONIN
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

CARTER G. PHILLIPS*
RICHARD D. KLINGLER
JAMES C. OWENS
ROBERT A. PARKER
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

STEPHEN B. BURBANK
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7072

*Counsel for the Federal Insurance, Vigilant Insurance, and Pacific Employers Petitioners*

KENNETH L. ADAMS
CHRISTOPHER T.
  LEONARDO
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C. 20006
(202) 420-2200

ROBERT M. KAPLAN
FERBER CHAN ESSNER &
  COLLER, LLP
530 Fifth Avenue
23rd Floor
New York, NY 10036-5101
(212) 944-2200

*Counsel for the Cantor Fitzgerald and Port Authority Petitioners*

*Counsel for the Continental Petitioners*

34

| | |
|---|---|
| JAMES P. KREINDLER<br>ANDREW J. MALONEY, III<br>KREINDLER &<br>  KREINDLER, LLP<br>100 Park Avenue<br>New York, NY 10017<br>(212) 687-8181<br><br>*Counsel for the Ashton Petitioners* | JERRY S. GOLDMAN<br>MARK E. GOTTLIEB<br>LINDA GERSTEL<br>ANDERSON KILL &<br>  OLICK, PC<br>1600 Market Street<br>Suite 2500<br>Philadelphia, PA 19103<br>(267) 216-2795<br><br>*Counsel for the O'Neill Petitioners* |
| RONALD L. MOTLEY<br>VINCENT I. PARRETT<br>MOTLEY RICE LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, SC 29465<br>(843) 216-9000 | ANDREA BIERSTEIN<br>HANLY CONROY BIERSTEIN<br>  SHERIDAN FISHER &<br>  HAYES LLP<br>112 Madison Ave., 7th Flr.<br>New York, NY 10016<br>(212) 784-6400 |

*Counsel for the EuroBrokers, WTC Properties, and Burnett Petitioners*

FRANK J. RUBINO, JR.
BROWN GAVALAS &
  FROMM LLP
355 Lexington Avenue
New York, NY 10017
(212) 983-8500

*Counsel for Petitioner New York Marine and General Insurance Co.*

November 12, 2008                    * Counsel of Record