## PLAINTIFFS' RESPONSE TO DEFENDANTS' LIST OF DEFENDANTS

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| Alfaisaliah Group (a/k/a Faisal Group Holding Co.) ("AFG")<br><br>*See*, Dkt #s 348, 350, 352, 477, 513-14, 541 | 03-9849 (*Burnett*) | Personal Jurisdiction; Failure to State a Claim | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of personal jurisdiction only.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Al Aqsa Islamic Bank<br><br>*See*, Dkt #s 1192-94, 1250, 1308 | 03-6978 (*Federal Insurance*) | Personal Jurisdiction | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of personal jurisdiction only.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Talal M. Badkook; M.M. Badkook Company<br><br>*See*, Dkt #s 1192-94, 1250, 1308 | 04-5970 (*Continental Casualty*); 03-6978 (*Federal InsuranceI*); 04-6105 (*NY Marine*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Plaintiffs have presented factual allegations demonstrating that Badkook maintained extensive and ongoing contacts with the United States, sufficient to demonstrate personal jurisdiction under general jurisdictional theories.  Among other activities in the United States, Badkook was among the founders of the U.S. branch of Muwafaq ('Blessed Relief'), a purported charity which was used to provide money to al Qaeda, and is listed on Mufawaq's certificate of incorporation in Delaware as being an original member of the board of directors.  *Federal* RICO Statement, Dkt #1319.  Through Muwafaq and its American operations, Badkook was part of a complex system through which al Qaeda's sponsors, including charities, businesses and individual businessmen, gave support to that terrorist organization, both individually and through the M.M. Badkook Company, which he owns and controls. Yassin al Kadi, a Specially Designated Global Terrorist (or "SDGT") under Executive Order 13224, was a senior officer of M.M. Badkook Company, and together with Badkook established the U.S. branch of Muwafaq.  *Id.*<br><br>Badkook's activities with Muwafaq Foundation also subject him to personal jurisdiction |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | under specific jurisdictional theories for his direct sponsorship and material support of al Qaeda.  In addition to his role with the U.S. branch of Muwafaq, Badkook served as a board member of Muwafaq's international body, a position to which he was appointed by SDGT Yassin al Kadi.  According to the U.S. government, Muwafaq formally merged with al Qaeda.  Accordingly, Badkook and the other directors of Muwafaq exercised control over one of al Qaeda's integrated financial arms – in effect, a division of al Qaeda itself.  Badkook's control over an integrated arm of al Qaeda's financial infrastructure removes him from the scope of the Second Circuit's decision relating to jurisdiction over indirect supporters of terrorism.  Furthermore, as mentioned above, Badkook sought to promote al Qaeda's global jihad from within the borders of the United States through the establishment of a U.S. branch of Muwafaq.  The fact that certain of Badkook's jihadist activities occurred within the territorial borders of the United States further removes him from the scope of the Second Circuit's decision addressing the requirements of Due Process in relation to claims against extra-territorial supporters of terrorism.  *Federal* RICO Statement, Dkt #1319. |
| Shahir A. Batterjee  *See,* Dkt #s 276, 333, 408, 1198, 1199, 1200, 1249, 1309 | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 (*O'Neill v. Al Baraka*); 02-7300 (*Tremsky*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  Batterjee's U.S. contacts include his involvement in the establishment and management of Benevolence International Foundation's (or "BIF") U.S. offices.  Batterjee incorporated the U.S. branch of BIF in Illinois in 1992, and served as a director of the organization.  *Burnett, Euro Brokers, WTC* MDS, 9/27/05, Dkt #1289.  Batterjee also served as Director of BIF's Florida branch.  Dkt #276.  BIF's U.S. offices directly sponsored al Qaeda until U.S. authorities raided its Illinois offices in 2002. Indeed, according to federal criminal prosecutors, in 1992 "the BIF Enterprise most explicitly decided to take action within the United States, by incorporating here."  Dkt #272, 276.  Batterjee's activities with BIF also subject him to jurisdiction under specific jurisdictional theories, as BIF was itself an integrated arm of al Qaeda's infrastructure. BIF provided "assistance to al Qaeda in the form of housing, travel documents and funding."  Dkt #276.  Moreover, al Qaeda members were given jobs with BIF.  Osama bin Laden specifically referred to BIF as one of the charities he relied on.  Dkt #276.  Osama bin Laden's chief operatives including SDGT Adel Batterjee and Mohamed Loay Bayazid ("Abu Rida") |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | were part of BIF during the same time period Shahir Batterjee was.  In 1994, Bayazid, who was at the founding of al Qaeda and provided them weapons, communications equipment, and even "sought to develop chemical and obtain uranium for a nuclear weapons for al Qaeda" – became President of BIF in Illinois.  Dkt #276 at p. 5-6, incorporating Dkt #272, Ex 1, p. 22.  The U.S. government formally designated BIF as a terrorist organization pursuant to Executive Order 13224 on November 19, 2002.  *Federal* RICO Statement, Dkt #1325.<br><br>Although the Defendants' efforts to mischaracterize plaintiffs' claims should be rejected wholesale as a matter of law, it should be noted that Defendant's statements about the criminally indicted head of BIF, Arnaout, misleading BIF board members are unsubstantiated (Def. Chart at 2).  In fact, the <u>donors</u> were misled according to the criminal record, not BIF officers or directors like Shahir Batterjee.  *Burnett* TAC ¶228, DC Dkt #29 in 02-CV-1616 (DC), filed 11/22/2002; *Burnett* MDS, 9/27/05. |
| Abdullah Binladin<br><br>*See*, Dkt #s 1504-05, 1653, 1705 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.<br><br>Abdullah Binladin's U.S. contacts include his role as a founding officer of an al Qaeda charity in Falls Church, VA, Taibah International Aid.  Taibah's main overseas branch in Bosnia was named as a Specially Designated Terrorist by the U.S.  Taibah in the U.S. appointed all main officers of Taibah Bosnia.  Bosnian authorities found that Taibah's finances had a "wide scope for possible illegal spending."  *Ashton* 6AC, Dkt #1463, Dkt #1653, pp. 1-5.  Taibah Bosnia provided cover for another U.S. designated al Qaeda charity, the Global Relief Foundation.  Abdullah Binladin also established and was President of the U.S. branch of The World Assembly of Muslim Youth (or "WAMY").  *Id.* WAMY is a defendant herein and has been identified as a "suspected terrorist organization" by the FBI since 1996.  The details of WAMY's role in al Qaeda are too extensive to repeat fully herein; however, they are detailed, specific and direct in nature.  *See* Dkt #1653, pp. 1-5.<br><br>Abdullah bin Laden is subject to personal jurisdiction under specific jurisdictional theories as well, based on his direct sponsorship of al Qaeda, aspects of which were conducted from within the territorial borders of the United States.  Again, Abdullah bin Laden established |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | and served as an officer of two al Qaeda charities in the United States, Taibah and WAMY. Moreover, Abdullah Binladin was investigated by FBI for al Qaeda ties. *Euro Brokers, WTC* RICO Statement, 8/15/05, Dkt #1123, 1125. In addition, "Bin Laden Brothers" is listed third on the "Golden Chain." |
| Bakr Binladin<br><br>*See*, Dkt #s 1645, 1773, 1834 | 02-6977 (*Ashton*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction. A general jurisdiction analysis is not implicated by the Second Circuit decision.<br><br>Bakr Binladin's U.S. contacts include his role as a significant sponsor for Harvard Law School, which his brother Abdullah attended donating millions to the school over the years. In addition, Bakr Binladin has significant U.S. investments and control over financial accounts in New York City. Bakr Binladin was educated in the United States. *Euro Brokers & WTC* RICO Statements, 8/15/05, Dkt #s 1123, 1125.<br><br>Bakr Binladin is subject to personal jurisdiction under specific jurisdictional theories as well, based on his direct sponsorship of al Qaeda. Plaintiffs allege that Bakr Binladin has long supported OBL's intent to attack the U.S. Bakr Binladin has done so as both head of the Binladin family and as head of the Saudi Binladin Group (or "SBG"). *Ashton* 6AC, Dkt #1463. From 1990-1996, SBG and its affiliated companies under the direction of Bakr Binladin provided financial and logistical support to Osama bin Laden (or "OBL") and al Qaeda in the Sudan. *Euro Brokers & WTC* RICO Statements, Dkt #s 1123, 1125. Bakr Binladin visited OBL in Sudan on several occasions and after Osama bin Laden had made his terrorist agenda public. *Id*. Bakr Binladin directed the process by which Osama bin Laden's shares in the family companies were put under the control of Ghaleb Binladen. *Ashton* 6AC. Bakr and Ghaleb Binladin invested in Bank al Taqwa, a bank which the U.S. Treasury Department claimed invested funds for OBL and provided other financial services to al Qaeda. Bakr Binladin protected Osama's financial interests after Osama left Saudi Arabia in 1991 and went to Sudan. This protection allowed Osama bin Laden to finance construction of Sudanese terrorist training camps from which OBL planned attacks on the U.S. *Id*.<br><br>Plaintiffs allege "an international network was developed by Tarek, Omar, Yeslam and Bakr Binladin in collaboration with their brother Osama, and served as a foundation for al Qaeda to expand its operations in the early 1990's." *Id*. "Bin Laden Brothers" is listed |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | third on the "Golden Chain."  The 9/11 Commission Report cites favorably to the "Golden Chain" document.  "[Osama bin Laden's worldwide organization] included a financial support network that came to be known as the "Golden Chain," put together mainly by financiers in Saudi Arabia and the Persian Gulf states. Donations flowed through charities or other nongovernmental organizations (NGOs)."  Final Report of the 9/11 Commission at p. 55.  "Bin Ladin eventually enjoyed a strong financial position in Afghanistan, thanks to Saudi and other financiers associated with the Golden Chain," during OBL's move and transition to Afghanistan in 1996-1998 time frame.  Final Report of the 9/11 Commission at p. 66. [1] |
| Omar Binladin  *See*, Dkt #s 1644-45, 1664, 1773, 1834 | 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  Omar Binladin's U.S. contacts include his owning a management stake in a Massachusetts company.  *Euro Brokers & WTC* RICO Statement, 8/15/05, Dkt #s 1123, 1125.  Moreover, Omar Binladin was educated in the United States and was living in the U.S. on 9/11.  *Id.*  Additionally, Omar Binladin has control of bank accounts in the U.S.  *Id.*  Furthermore, Omar Binladin is subject to personal jurisdiction under specific jurisdictional theories based on his direct sponsorship of al Qaeda.  Plaintiffs allege Omar Binladin has provided financial and other material support to al Qaeda.  *Id.*  Omar Binladin was investigated by FBI for al Qaeda involvement.  *Id.*  Omar Binladin served on the board of SBG.  *Id.*  Plaintiffs allege "an international network was developed by Tarek, Omar, Yeslam and Bakr Binladin in collaboration with their brother Osama, and served as a foundation for al Qaeda to expand its operations."  *Id.*  "Bin Laden Brothers" is listed third on the "Golden Chain."  *See* Bakr Binladin, above. |
| Tariq Binladin | 04-5970 (*Continental Casualty*); 04-7279 | Personal Jurisdiction; | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision. |

[1] Plaintiffs dispute and deny Defendants' attempted characterizations of Plaintiffs' "choices" or motives regarding any appeal of Judge Casey's decision as to Bakr Binladin.  *See* Defendants Chart at 2, fn 2.

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| *See,* Dkt #s 1644-45, 1664, 1773, 1834 | (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Failure to State a Claim | Tariq Binladin is further subject to personal jurisdiction under specific jurisdictional theories as well, based on his direct sponsorship and material support of al Qaeda. Plaintiffs allege "an international network was developed by Tarek, Omar, Yeslam and Bakr Binladin in collaboration with their brother Osama, and served as a foundation for al Qaeda to expand its operations in the early 1990's." *Euro Brokers & WTC* RICO Statements, 8/15/05, Dkt #s 1123, 1125.  Tarek Binladin was the global director of the IIRO charity while Osama bin Laden was in the Sudan building his base.  *Id.*  "Bin Laden Brothers" is listed third on the "Golden Chain."  *See* Bakr Binladin, above. |
| Yeslam Binladin  *See,* Dkt #s 13, 1451-52, 1664-65, 1722 | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  Yeslam Binladin's contacts with the United States include ownership of California property, appearances in U.S. media outlets and regularly doing business here.  *Burnett* MDS 3/21/05, *Euro Brokers & WTC* RICO Statements 5/10/05, Dkt #s 756, 900, 898.  Yeslam Binladin founded SICO (Saudi Investment Co.), the investment arm of Defendant SBG.  *Id.*  SICO manages SBG's partnership with U.S. companies.  In early 2001, Yeslam Binladin paid for flight school training for individuals in Venice, FL and Tucson, AZ.  *Id.*  Yeslam Binladin is further subject to personal jurisdiction under specific jurisdictional theories based on his direct sponsorship and material support of al Qaeda.  Yeslam Binladin is a former financial officer and board member of Mohammed Bin Laden Organization, SBG's predecessor.  Yeslam Binladin was the authorized person on a Swiss bank account along with his brother Osama.  This bank account's named beneficiary was Osama bin Laden.  *Id.*  Defendant's statement that "essentially all of the funds in Osama's sub-account were withdrawn in 1991…" is an admission that supports Plaintiffs' theories involving the participation of Sudan in fostering, empowering, and setting loose Osama bin Laden to wage war on the U.S.  Plaintiffs dispute Defendants' continued attempt to recast Plaintiffs' theories as well as ignore or explain away Plaintiffs' allegations.  Def. Chart at 3.  Plaintiffs allege Yeslam Binladin was account manager for Swiss bank accounts that transferred millions to Osama bin Laden over time through SBG and Cambridge Engineering.  *Id.*  "Bin Laden Brothers" is listed third on the "Golden Chain."  *See* Bakr Binladin, above. |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| Binladin Group International ("BGI") | 04-5970 (*Continental Casualty*) | Personal Jurisdiction; Failure to State a Claim | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss. Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Dallah Avco Trans-Arabia Co. Ltd.<br><br>*See,* Dkt #s 1711-12, 1809-21, 1840-41, 1863-65 | 02-6977 (*Ashton*); 03-6978 (*Federal Insurance*) | Personal Jurisdiction | Dallah Avco is subject to personal jurisdiction under general jurisdictional theories.  In this regard, Plaintiffs allege that Dallah Avco maintained a presence in the United States for many years, to include a U.S. based employee.<br><br>Dallah Avco is subject to personal jurisdiction under specific jurisdictional theories based on its alleged role in supporting the September 11th Attack itself, from within the United States.  A long-term employee of Dallah Avco Trans-Arabia provided financial and logistical support to at least two of the 9/11 hijackers.  *Ashton* 6AC, Dkt #1463, *Federal* RICO Statement 2/21/06, Dkt #1699.  This material support was provided immediately following the arrival of the hijackers in the United States in early 2000.  The employee's living allowance was increased eight-fold by Dallah Avco during the same period in which he was providing the support to the 9/11 hijackers.  *Id.*  The employee performed no traditional duties for Dallah Avco in the U.S. and only showed up for work once.  When his immediate supervisor attempted to fire him, the supervisor was over-ruled by superiors at Dallah Avco.  *Id.* Dallah Avco is subject to specific jurisdiction as the direct support to the 9/11 hijackers took place, at least in part, in the United States.  *Ashton* 6AC ¶¶452-453, Dkt #1463, *Federal* RICO Statement Dallah Avco, Dkt #1699. |
| DMI Administrative Services S.A. ("DMI S.A.")<br><br>*See,* Dkt #s 93, 95, 100, 218, 254, 499, 500, 574, 617, 888-89, | 03-9849 (*Burnett*); 04-7065 (*Cantor Fitzgerald*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 | Personal Jurisdiction | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  *Burnett* MDS, and *Euro Brokers* & *WTC* RICO Statements, 5/10/05, Dkt #896, 899, 897.<br><br>DMI S.A. is further subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al Qaeda.  Contrary to Defendants' attempts to recast Plaintiffs' allegations, not all of the financial institutions |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| 1109, 1050, 1151, 1213-16, 1239-42, 1262-63, 1472-73, 1557, 1626-27, 1649-50, 1657, 1661 | (*O'Neill v. Al* Baraka); 04-7280 (*WTC*) | | named in this case were innocent conduits engaged in "routine banking activities" or mere "charitable donations." Def. Chart at 4.  Plaintiffs allege that "DMI has involved itself in al Qaeda financing" using its subsidiaries in Sudan, Faisal Islamic Bank, Tadamon Islamic Bank and Al Shamal Islamic Bank.  *Burnett* TAC ¶98, DC Dkt #29 in 02-CV-1616 (DC); 11/22/2002.  Plaintiffs allege DMI was founded for the purpose of "financial jihad." *Burnett* MDS & *Euro Brokers* & *WTC* RICO Statements, 5/10/05, Dkt #896, 899, 897.  Plaintiffs allege that DMI has purposefully directed its material support of Islamic extremists at the U.S. for decades.  *Id*.  DMI is alleged to be a "willing collaborator" not a mere conduit.  *Id*.  Plaintiffs allege that DMI ignored "know your customer" rules and did not engage in typical "arms-length" transactions.  *Id*.  DMI's supervisory board included Osama bin Laden's partner in the designated terrorist state of Sudan, the radical Hassan Abdullah Al Turabi.  *Id*.  Plaintiffs allege DMI and its related companies were purposefully structured in part to conceal the means by which they promote Osama bin Laden.  *Id*.  Shareholder and leader of SDGT al-Taqwa Ltd.  Youssef Al-Qaradawi is former member of DMI Board.  *Id*.  DMI sought investments and funding to promote Islam and jihadist ideals, facilitating transfer of funds to al Qaeda.  *Id*.  DMI is alleged to have engaged in "direct funding" of al Qaeda network.  *Id*.  Given these allegations, which must be credited as true at this stage, Defendants' attempts to recast DMI S.A. and other financial institutions as innocent conduits engaged in "routine banking activities" or mere "charitable donations" cannot be credited.  Def. Chart at 4. |
| Dubai Islamic Bank ("DIB")  *See*, Dkt #s 954-58, 1064-65, 1150 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-7065 (*Cantor Fitzgerald*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 (*O'Neill v. Al* Baraka); 04-7280 | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Dubai Islamic Bank is subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al Qaeda.  Defendants' characterization of the allegations against Dubai Islamic Bank as contained in the chart submitted to the Court is blatantly misleading.[2]  DIB is alleged to have a history of money laundering for illegal purposes.  *Burnett* TAC ¶112, DC Dkt #112 in 02-CV-1616 (DC); 11/22/2002.  Specifically, as to al Qaeda and its financial support network, in 1999, the U.S. government announced that DIB "had laundered money for Osama bin Laden."  *Id*. at ¶113.  This is not about charitable donations, the Dubai Islamic Bank is alleged to have provided direct financial services and support for the 9/11 attacks.  *Id*. at ¶115.  Thousands of dollars in money transfers for Dubai Islamic Bank went to the 9/11 hijackers to pay for training and expenses.  *Federal, O'Neill, NY Marine, WTC & Euro Brokers* RICO |

---

[2] That may explain why Defendants fail to even identify what Rico Statement they are referring to.

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | *(WTC)* | | Statements, 4/29/05, Dkt #'s 856-860.  Plaintiffs' allegations are clear:  "Dubai Islamic Bank was directly involved in the 9/11 attacks." *Id.*  Financial services and transactions were carried out to aid the hijackers and this was done in violation of accepted international banking standards adopted to prevent illicit movements of funds to terrorists. *Id.*  Despite warnings about past support for Osama bin Laden and his terrorist aims, Dubai Islamic Bank continued its material support of Osama bin Laden and al Qaeda in providing "financial services" under 18 USC 2333 and directly facilitating the training of the 9/11 hijackers and thus the 9/11 attacks. *Id.*  Plaintiffs' allege:  "Dubai Islamic Bank has knowingly and repeatedly lent material support to several known al Qaeda operatives.  So pervasive and apparent was DIB's money laundering on behalf of the [al Qaeda] Enterprise that in 1999 American officials visited Dubai to demand that the government take steps to end its lax supervision of the Bank."  According to a July 8, 1999 U.S. State Department Press Conference, the Dubai Islamic Bank's "involvement with terrorist money laundering" was the problem.  Despite these clear warnings, Plaintiffs allege "United States authorities have identified at least $500,000.00" that was transferred between known Osama bin Laden operatives and the 9/11 hijackers from June 2000 up until the 9/11attacks to the Florida accounts of 9/11 hijackers Mohammed Atta and Marwan al-Shehhi.  *Burnett* TAC ¶¶117-123, DC Dkt #29.  After 9/11, Dubai Islamic Bank accounts were frozen and regulatory alerts out of Luxemburg were issued naming Dubai Islamic Bank as again linked with Osama bin Laden.  *Id.* at ¶122-123. |
| Faisal Islamic Bank-Sudan ("FIBS")  *See,* Dkt #s 833-45, 847-49, 1005, 1008-10, 1012, 1014-15, 1061-63 | 02-6977 *(Ashton)*; 03-9849 *(Burnett)*; 04-7065 *(Cantor Fitzgerald)*; 04-5970 *(Continental Casualty)*; 04-7279 *(Euro Brokers)*; 03-6978 *(Federal Insurance)*; 04-1923 *(O'Neill v. Al Baraka)*; 04-7280 *(WTC)* | Personal Jurisdiction | Plaintiffs' allegations are sufficient to meet the Second Circuit's standard for personal jurisdiction based on its alleged direct sponsorship and material support of al Qaeda.  Plaintiffs' theories of liability are not based upon allegations that al Qaeda "supporters had depository accounts" at banks as Defendants argue.  Defendants' Chart at 5.  To the contrary, Plaintiffs' allege Faisal Islamic Bank was purposefully structured to conceal the means by which it has promoted OBL and al Qaeda.  *Burnett* MDS as to DMI, Dkt #896.  Faisal Islamic Bank-Sudan was identified in the 2001 U.S. Embassies bombing trial as place where account or accounts were maintained for al Qaeda operatives.  *Burnett* TAC ¶245, DC Dkt #29, *Burnett* MDS & *Euro Brokers* and *WTC* RICO Statements (5/10/05), Dkt #896, Dkt #897, Dkt #899 and *O'Neill* MDS as to FIBS, Dkt #1358.  Plaintiffs allege Faisal Islamic Bank was founded by DMI and SDGT Youssef Nada.  *Euro Brokers & WTC* RICO Statements, 3/18/05, Dkt #742 & 743.  A director of DMI, Hassan |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | al Turabi invited OBL and al Qaeda to Sudan and hosted them there for over five years. Turabi maintained his office in the penthouse of the Faisal Islamic Bank building. Turabi's political party, the NIF which ruled Sudan, in turn provided special privileges to Faisal Islamic Bank. Youssef Nada was designated as a terrorist in part, for his financial management of OBL and al Qaeda funds during the time they were in Sudan. Another director of Faisal Islamic Bank, founded the Rabita Trust, also a designated terrorist for its actions in support of al Qaeda. Faisal Islamic Bank was a founder and director of al Shamal Bank in which Osama Bin Laden subsequently invested $50 million, and which provided extensive financial services to al Qaeda including the use of transfers to the United States on behalf of al Qaeda. See *Ashton* 6AC, Dkt #1463; *Federal* Plaintiffs Opposition to FIBS Motion to Dismiss, Dkt #1014, Plaintiffs Consolidated Opposition to FIBS Motion to Dismiss, Dkt #1005, and *O'Neill* MDS as to FIBS, Dkt #1358. <br><br>Plaintiffs maintain the al Qaeda conspiracy began in the late 1980's, and that period, 1991-1996, the years in the Osama bin Laden spent in the Sudan, were crucial in preparations and planning for 9/11. For example, al Qaeda's Plan Bojinka to blow up 12 U.S. airlines at once was uncovered and thwarted in 1995. As the Final Report of the 9/11 Commission put it: "Plans to attack the United States were developed with unwaivering single-mindedness throughout the 1990's." The Final Report of the 9/11 Commission at 48, *see also*, "The Rise of Bin Ladin and al Qaeda 1988-1992." *Id.*, p. 55, *et seq*. |
| Safer Al-Hawali <br><br> *See,* Dkt #s 81, 282, 334, 405, 1186-88, 1252, 1310 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Safer Al-Hawali is subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al Qaeda. Sheik Safar Al-Hawali is a leader of the al Qaeda movement. In September 1990, Sheikh Al-Hawali released a tape which established an early vision for Osama bin Laden's war against the United States and the West: <br><br> We have asked the help of our real enemies in defending us. The point is that we need an internal change. The first war should be against the infidels inside and then we will be strong enough to face our external enemy. Brothers, you have a duty to perform. The war will be long. The confrontation is coming. <br><br> *Burnett* MDS at 19, Sami Omar Al-Hussayen, 5/14/04, Dkt #149; *see also, Federal* RICO |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | Statement, 4/13/05, Dkt #815.  The Sheik used websites to spread violent message of jihad against the United States.  *Id.* at 25-27.  A member of Mohammed Atta's September 11 hijacker cell in Hamburg, Germany made several calls to Sheik Al Hawali and Sheik Al-Oadah.  The Sheik provided ideological justifications and support for suicide attacks.  *Id.* at 26.<br><br>The conduct alleged by Plaintiffs goes far beyond "making public statements about religious issues" as Defendants try to suggest.<br><br>After the 1995 bombing of the Khobar Towers in Saudi Arabia, al Qaeda claimed responsibility for the attack and stated that the attack was in retaliation for the imprisonment of Sheik Al-Hawali and Sheik Al-Oadah.  *Id.* at 20.  In 1996, when Osama bin Laden issued his fatwa entitled, "Declaration of War against the Americans Occupying the Land of the Two Holy Places"  Osama bin Laden specifically called for the release of these two Sheiks from imprisonment:<br><br>By orders from the USA they also arrested a large number of scholars, Da'ees and young people - in the land of the two Holy Places- among them the prominent Sheikh Salman Al-Oud'a and Sheikh Safar Al-Hawali and their brothers; (We bemoan this and can only say: "No power and power acquiring except through Allah")...The imprisoned Sheikh Safar Al-Hawali, may Allah hasten his release... *Id.* at 21.<br><br>Immediately after the 1998 attacks against the United States Embassies in Africa, Osama bin Laden issued statements supporting the bombings and stating that attacks against the United States will continue until certain demands are met.  One demand called for release of Sheik Salman Al-Oadah and Sheik Safar Al-Hawali.  *Id.* at 22.  These Sheiks were outspoken in their proclamations of jihad, terrorism and violence against the West.  They promoted suicide operations as a legitimate means of jihad.  In an October 19, 2001 open letter to President George W. Bush, Sheikh Al Hawali wrote: "In the midst of this continuous confusion and frustration, the events of the 11th of September occurred.  I will not conceal from you that a tremendous wave of joy…was felt by the Muslim in the street."  *Id.* at 24. |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| Hamad Al-Husaini<br><br>*See,* Dkt #s 82, 272, 331, 407, 1189-91, 1253, 1268-69 | 04-7279 (*Euro Brokers*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Saleh Al-Hussayen<br><br>*See,* Dkt #s 83, 281, 335, 403, 1178-79, 1248, 1299 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | FSIA; Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Sheik al-Hussayen is subject to personal jurisdiction under theories of general jurisdiction, based on his continuous contacts with the United States.  Plaintiffs' general jurisdictional theories are not implicated by the Second Circuit's decision.<br><br>The Second Circuit's decision is not dispositive as to Sheik al-Hussayen's FSIA defense.  Although Sheik al-Hussayen has held various positions within the Saudi government, the claims against Sheik al-Hussayen arise from conduct undertaken outside the scope of his governmental duties.  For instance, Plaintiffs assert claims against al-Hussayen based on support he provided to al Qaeda as a member of al Rajhi Banking & Investment Company's Sharia Board, and through the Islamic Association of North America.  The Second Circuit's decision makes clear that Sheik al-Hussayen does not enjoy FSIA protection with respect to these private capacity claims.<br><br>Of particular note, al-Hussayen traveled to the United States on an IANA fundraising mission in the weeks leading up to the September 11, 2001 attack. In August 2001, he arrived in New York City and was given a tour of the city, including the vicinity of the World Trade Center Towers. He then traveled to Chicago, Detroit and Canada, meeting with IANA officials and with officials from other charities.  On September 6, 2001, Sheik al-Hussayen arrived in Herndon, VA.  Then, just days before the September 11th attack, Sheikh al-Hussayen switched from his original hotel to the Marriott Residence Inn in Herndon, just a few miles away. The Marriott Residence Inn in Herndon is the same hotel where at least three of the American Airlines Flight 77 hijackers stayed before September 11, 2001. The following morning these men hijacked Flight 77 and crashed the airliner into the Pentagon. Following the attacks, the FBI attempted to interview Sheikh al-Hussayen in his hotel room. According to the FBI, the interview came to an abrupt end when he feigned a seizure, prompting the agents to take him to a hospital where the attending physicians |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | "found nothing wrong with him." The FBI was successful in interviewing Sheikh al-Hussayen's wife and the couple left the country shortly thereafter. *Federal* RICO Statement, Dkt #1321. |
| Abdul Aziz bin Ibrahim Al-Ibrahim  *See,* Dkt #s 1302-05, 1508-09, 1601 | 04-5970 (*Continental Casualty*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 03-5071 (*Salvo*) | Personal Jurisdiction | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  *See,* Dkt #1508; pp. 6-8, Dkt #1509.  Plaintiffs have presented factual allegations demonstrating that al-Ibrahim maintained extensive and ongoing contacts with the United States, sufficient to demonstrate personal jurisdiction under general jurisdictional theories.  Among other activities in the United States, al-Ibrahim has lived in Hollywood, California, where he was a lead investor in the Marina del Rey development beginning in 1989.  Al-Ibrahim has been continuously and actively involved in American real estate development.  Apart from being a lead investor in Marina del Rey, Abdul Aziz al Ibrahim real estate assets have included Ritz-Carlton hotels in New York, Washington and Houston and Aspen, a hotel and office complex near Chicago's O'Hare International Airport, undeveloped property in the hills high above Bel-Air and largely vacant land near Disney World in Florida.  Of particular note, Al-Ibrahim has made affirmative use of American courts on his own behalf.  According to court papers filed in 1995, as reported by the Washington Post, al Ibrahim has won large sums of money gambling in the United States for which he did not wish to pay the Internal Revenue Service.  In order to silence a former employee regarding these and other allegations, Abdul Aziz al Ibrahim hired a major Washington law firm and filed suit in federal court seeking injunctive relief.  The suit was dismissed. |
| Ibrahim bin Abdul Aziz Al-Ibrahim Foundation  *See,* Dkt #s 1302-05, | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal* | Personal Jurisdiction | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  The Al-Ibrahim Foundation is further subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| 1508-09, 1601 | *Insurance*); 04-6105 (*NY Marine*); 03-5071 (*Salvo*); 04-7280 (*WTC*) | | Qaeda.  Of note, Al-Ibrahim Foundation was directly involved in providing material support to al Qaeda in Kenya and the former Soviet Union.  In September 1998, as a result of its investigation, the Kenyan government canceled the registration of five Islamic relief agencies for allegedly supporting terrorism, including the Al-Ibrahim Foundation, a decision it did not appeal.  According to the Kenyan government's NGO coordinator, "Our investigations reveal that the operations of these organizations are inconsistent with the reasons for which they were registered . . . These organizations are supposed to work for the welfare of Kenyans, but are instead endangering Kenyan's lives . . . They had been found to be working against the interests of Kenyans in terms of security."  *Euro Brokers, WTC, Federal* and *Continental* RICO Statements, Dkt #s 1153, 1154, 1170 and 1173; Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Affirmation, Dkt #s 1508-09.<br><br>In a study paper dated October 1999, called "The New Azerbaijan Hub: How Islamist operations are targeting Russia, Armenia and Nagorno-Karabagh", Yossef Bodansky, Senior Editor of Defense and Foreign Affairs' Strategic Policy specifically referred to the Al-Ibrahim Foundation as an entity actively providing help to Osama bin Laden, noting: "The key Islamist facilities are concealed as charity and educational organizations affiliated with the web used by bin Laden's networks. Moreover, the headquarters of these organizations are stuffed with Arab 'teachers' and 'managers' from the ranks of such organizations as the International Muslim Brotherhood, the Islamic Salvation Front, several branches of Islamic Jihad, and the National Islamic Front of Sudan. The key organizations are . . . Ibrahim Foundation. Very little is known about this Baku-based charity except that its Arab principals have huge amounts of cash in hard currency. They are involved in acquisition of real estate among other "educational" projects." *Id.* |
| Yousef Jameel<br><br>*See*, Dkt #s 300, 304, 317, 588, 1057, 1059, 1244, 1455 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.  Defendant Yousef Jameel is an international businessman and founder of the Jameel Group, an international shipping, finance, and trade organization.  *Burnett* More Definite Statement or "*Burnett* MDS," (03/16/04) Dkt #26.  Jameel's U.S. contacts include the Jameel Group's real estate interests which were managed in the United States by Jaymont (formerly Jameel Inc.).  Yousef Jameel owns property in the U.S. and Jameel is a former board member and the largest shareholder of Global National Resources, a Houston, TX company.  *Id.* |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | Jameel is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege: "Defendant Jameel provided material support to al Qaeda and its sponsors with knowledge that the funds would be used to support al Qaeda and its international terrorist agenda." *Burnett* MDS.  Yousef Jameel provided material support to SDGT and al Qaeda operative and founder Adel Batterjee, SDGT Al Haramain and the Islamic Salvation Front.  *Id.* Jameel's pattern of conduct in supporting al Qaeda is specific and direct.  Moreover, "Yousef Jameel" is listed fourth on the "Golden Chain."  The 9/11 Commission Report cites favorably to the "Golden Chain" document.  "[Osama bin Laden's worldwide organization] included a financial support network that came to be known as the "Golden Chain," put together mainly by financiers in Saudi Arabia and the Persian Gulf states.  Donations flowed through charities or other nongovernmental organizations (NGOs)."  Final Report of the 9/11 Commission at p. 55.  "Bin Ladin eventually enjoyed a strong financial position in Afghanistan, thanks to Saudi and other financiers associated with the Golden Chain," during OBL's move and transition to Afghanistan in 1996-1998 time frame.  Final Report of the 9/11 Commission at p. 66. |
| Zahir Kazmi | 04-5970 (*Continental Casualty*); 03-5071 (*Salvo*); 02-7300 (*Tremsky*) | Personal Jurisdiction | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of personal jurisdiction only.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Abdulrahman Bin Mahfouz

*See,* Dkt #s 51, 150, 173, 1447-48, 1572-74, 1625 | 02-6977 (*Ashton*); 04-5970 (*Continental Casualty*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*) | Personal Jurisdiction | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.

Abdulrahman Bin Mahfouz (or "ABM") is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege that ABM provided financial and logistical support to Osama bin Laden by setting up and running an organization for al Qaeda.  ABM has acknowledged being a trustee of the Muwafaq charity.  www.binmahfouz.info.  Muwafaq |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | was thanked by Osama bin Laden himself and was called by the U.S. Treasury Department an al Qaeda organization "that receives funding from wealthy Saudi businessmen." *Ashton* 6AC, Dkt #1463; Opp to KMB Motion to Dismiss.  ABM was deputy general manager, deputy head of the management committee, and director of the National Commercial Bank.  In these capacities he provided support to al Qaeda in the form of financial assistance to the same al Qaeda organization Muwafaq of which ABM was a trustee, as well as al Qaeda-sponsoring charity, the International Islamic Relief Organization.  *Ashton* 6AC & *Federal* RICO Statement.  Muwafaq is part of al Qaeda.  As U.S. Treasury Chief David Aufhauser's letter to the Swiss authorities makes clear, "following the dissolution of [Makhtab Al Khidamat,] and its absorption into Al Qaida, a number of NGOs formerly associated with [Makhtab Al Khidamat], including Muwafaq, also merged with Al-Qaida."  Affirmation of Sean P. Carter in Opposition to Motion to Dismiss filed by National Commercial Bank, at Exhibit 4, Dkt #516. |
| Khalid Bin Mahfouz  *See,* Dkt #s 1013, 1016, 1146-49, 1267, 1903-04, 1908-14 | 02-6977 (*Ashton*); 02-1616 (*Burnett*); 03-9849 (*Burnett*); 04-7065 (*Cantor Fitzgerald*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 (*O'Neill v. Al Baraka*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.

Khalid Bin Mahfouz (or "KBM") is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege that KBM provided financial and logistical support to al Qaeda since its founding.  Khalid Bin Mahfouz has admitted to providing funds to Osama bin Laden in the same year as the founding of al Qaeda.  www.binmahfouz.info.  KBM has admitted to founding and funding the Muwafaq charity.  *Id.* Muwafaq is part of al Qaeda.  As U.S. Treasury Chief David Aufhauser's letter to the Swiss authorities makes clear, "following the dissolution of [Makhtab Al Khidamat,] and its absorption into Al Qaida, a number of NGOs formerly associated with [Makhtab Al Khidamat], including Muwafaq, also merged with Al-Qaida." *Ashton* 6AC, Dkt #1463; Plaintiffs Opp to KBM Motion to Dismiss, Dkt #1148.  Muwafaq was thanked by Osama bin Laden himself and was called by the U.S. Treasury Department an "Al Qaeda charities that receives funding from wealthy Saudi businessmen." *Ashton* 6AC, Dkt #1463; Opp to KMB Motion to Dismiss.  KBM was the President, CEO and principal shareholder of the National Commercial Bank. *Ashton* 6AC & *Federal* RICO Statement.  The name Bin Mahfouz is found on the "Golden Chain" document.  The 9/11 Commission Report cites favorably to the "Golden Chain" document.  "[Osama bin Laden's worldwide organization] included a financial support |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | network that came to be known as the "Golden Chain," put together mainly by financiers in Saudi Arabia and the Persian Gulf states. Donations flowed through charities or other nongovernmental organizations (NGOs)."  Final Report of the 9/11 Commission at p. 55. "Bin Ladin eventually enjoyed a strong financial position in Afghanistan, thanks to Saudi and other financiers associated with the Golden Chain," during OBL's move and transition to Afghanistan in 1996-1998 time frame.  Final Report of the 9/11 Commission at p. 66. |
| Mohammed Binladin Company ("MBC")  *See,* Dkt #1834 | 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*) | Personal Jurisdiction; Failure to State a Claim | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Mohamed Al Mushayt  *See,* Dkt #s 97, 279, 361, 1201-03, 1251, 1311 | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of personal jurisdiction only.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Mushayt for Trading Establishment  *See,* Dkt #s 1201-03, 1251, 1311 | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of personal jurisdiction only.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| | | | |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| National Commercial Bank ("NCB") | 03-MDL-1570 (*All Cases*) | Personal Jurisdiction (specific) | NCB's Motion to Dismiss is not yet fully briefed, and Plaintiffs respectfully submit that it consequently falls outside the intended scope of the Court's Order as to this submission.  In 2005, Judge Casey denied NCB's motion to dismiss without prejudice and found that Plaintiffs had alleged sufficient facts to warrant jurisdictional discovery to determine both whether the court had jurisdiction and whether NCB qualified as a foreign sovereign for purposes of immunity under the FSIA.  *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 792, 820 (S.D.N.Y.2005).  On rehearing, the district court decided to address the issue of the court's jurisdiction over NCB before determining whether NCB is entitled to claim immunity as a foreign sovereign.  *In re Terrorist Attacks on September 11, 2001*, 392 F.Supp.2d 539, 579 (S.D.N.Y. 2005).  Though the parties have engaged in certain discovery, disputes continue as to whether the plaintiffs are entitled to additional discovery from NCB, much of it related to issues that would address concerns raised by the Second Circuit.  Although NCB has recently filed a renewed motion to dismiss, the plaintiffs' obligation to file a response was stayed.  *See* Dkt #2126.  Plaintiffs expressly deny that the Second Circuit's decision is dispositive as to NCB, and will present the factual and legal arguments underlying that position in their Opposition to NCB's Motion to Dismiss.  To attempt to present those arguments in this first instance in the body of this chart would be inappropriate, prejudicial, and unhelpful to the Court. |
| Salman Al-Oadah  *See,* Dkt #s 84, 275, 330, 1186-88, 1252, 1310 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | Sheik Salman Al-Oadah is alleged to be a leader of the al Qaeda movement.  The Sheik used websites to spread violent messages of jihad against the United States.  *Burnett* MDS at 25-27, Sami Omar Al-Hussayen, 5/14/04, Dkt #149; *see also, Federal* RICO Statement, 4/13/05, Dkt #815.  A member of 9/11 hijacker Mohammed Atta's cell in Hamburg, Germany made several phone calls to Sheik Al Hawali and Sheik Al-Oadah just prior to 9/11.  The Sheik provided ideological justifications and material support for suicide attacks.  *Id.* at 26.  On May 15, 2001, three and one-half months before the September 11th attacks, an article written by Sheik Al-Oadah called "Suicide Operations" was posted on the website {www.alasr.ws}.  Sheik Al-Oadah wrote:  The second part of the rule is that the Mujahid (warrior) must kill himself if he knows that this will lead to killing a great number of the enemies, and that he will not be able to kill them without killing himself first, or demolishing a center vital to the enemy or its military force, and so on.  This is not possible except by involving the human element in the operation.  In this new era, this can be |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | accomplished with the modern means of bombing or bringing down an airplane on an important location that will cause the enemy great losses. *Id.* at 28. (emphasis added.)<br><br>The conduct alleged by Plaintiffs goes far beyond "making public statements about religious issues" as Defendants suggest.<br><br>After the 1995 bombing of the Khobar Towers in Saudi Arabia, al Qaeda claimed responsibility for the attack and stated that the attack was in retaliation for the imprisonment of Sheik Al-Hawali and Sheik Al-Oadah. *Id.* at 20. In 1996, when Osama bin Laden issued his fatwa entitled, "Declaration of War against the Americans Occupying the Land of the Two Holy Places" Osama bin Laden specifically called for the release of these two Saudi sheiks from imprisonment:<br><br>By orders from the USA they also arrested a large number of scholars, Da'ees and young people - in the land of the two Holy Places- among them the prominent Sheikh Salman Al-Oud'a and Sheikh Safar Al-Hawali and their brothers; (We bemoan this and can only say: "No power and power acquiring except through Allah")...The imprisoned Sheikh Safar Al-Hawali, may Allah hasten his release... *Id.* at 21.<br><br>Immediately after the 1998 attacks against the United States Embassies in Africa, Osama bin Laden issued statements supporting the bombings and stating that attacks against the United States will continue until certain demands are met. One demand called for release of Sheik Salman Al-Oadah and Sheik Safar Al-Hawali. *Id.* at 22. These Sheiks were outspoken in their proclamations of terrorism and violence against the West. They promoted suicide operations as a legitimate means of jihad. Copies of Sheik Al-Oadah's sermons promoting violent jihad were found in one of Osama bin Laden's residences in Afghanistan. *Id.* at 23. |
| Abdullah bin Saleh Al Obaid<br><br>*See*, Dkt #s 98, 280, | 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03- | FSIA; Personal Jurisdiction; Failure to State a Claim; | Al-Obaid is subject to personal jurisdiction under theories of general jurisdiction, based on his continuous contacts with the United States. Plaintiffs' general jurisdictional theories are not implicated by the Second Circuit's decision. Among his contacts with the United States, Al-Obaid is the President of the U.S. branch of the Muslim World League (or |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| 285, 362, 1180-82, 1247, 1300, 1418 | 6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 02-7300 (Tremsky); 04-7280 (*WTC*) | Insufficient Service of Process | "MWL").  He also served as President of two Virginia corporations, Sana-Bell, Inc. and Sanabel Al Kheer, Inc. Both entities are part of the 'SAAR network' (a group of charities so named because of funding provided by Sulaiman Abdul Aziz al Rajhi, and both are alleged to have engaged in fund-raising and money-laundering for al Qaeda and bin Laden.  At the same time, he is also employed as the Deputy General Manager of Al Watania Poultry, a substantial Saudi company owned by the al Rajhi family, from 1994 to the present.  *Federal* RICO Statement, Dkt #1317. |
| | | | Moreover, the Second Circuit's decision is not dispositive as to al-Obaid's FSIA defense. The claims against al-Obaid arise not from his role as Saudi Minister of Education, but rather from his activities as a senior official of numerous al Qaeda charities, including the Muslim World League, Rabita Trust, International Islamic Relief Organization, Sanabel, Inc. and Sanabel al-Khair.  The Kingdom of Saudi Arabia has denied that the Muslim World League, Rabita Trust and International Islamic Relief Organization are "agencies" or "instrumentalities" of the Saudi government.  Accordingly, to the extent al-Obaid claims FSIA protection in relation to his roles with those organizations, discovery would be required in order to first ascertain the status of those organizations under the FSIA.  Moreover, even assuming such discovery were to establish that those organizations are "instrumentalities" of the Saudi government, the Second Circuit's decision does not establish that al-Obaid, as an official of such a non-traditional governmental instrumentality, would himself be entitled to FSIA protection.  Accordingly, discovery would also be required in order to determine whether al-Obaid was acting within the scope of his office and employment with respect to the actions underlying the claims at issue in these proceedings. |
| Abdullah Al Rajhi<br><br>*See,* Dkt #s 863-64, 867-68, 1032, 1051 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 02-7300 (Tremsky); 04-7280 | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision. |
| | | | Abdullah Al Rajhi is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege that Abdullah Sulaiman al Rajhi has long qualified for al Qaeda.  Abdullah al Rajhi was an officer of the SAAR related entities, a principal source of his United States contacts.  As such he facilitated the transfer of millions of dollars from the US-based entities via overseas shell companies.  Referring to these transactions, a U.S. government |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | *(WTC)* | | investigator declared, "There is no innocent reason which accounts for these additional financial transactions." *Burnett* Opposition to Abdullah al Rajhi's Motion to Dismiss, Dkt#1033.<br><br>His family's bank, Al Rajhi Banking and Investment, of which he is the General Manager, knowingly assisted al Qaeda through: providing financial services to the Spanish and Hamburg al Qaeda cells; allowing the SAAR network to use its correspondent account with a U.S. bank to launder money for terror; providing banking and financial services to al Qaeda directly; acting as a correspondent bank for SDGT Bank al Taqwa; providing financial services for SDGT Youssef Nada; providing financial services for SDGT Al Haramain to launder money for terrorism; and providing financial services for numerous al Qaeda charities. *Ashton* 6AC, Dkt #1463, *Burnett* MDS al Rajhi Banking and Investment, Dkt #1272.[3] The name al Rajhi was found on the Golden Chain.  Draper Affidavit in *Burnett* Opposition to Sulaiman al Rajhi Motion to Dismiss, Dkt #1047. |
| Khalid Al Rajhi | 02-7300 (Tremsky) | Personal Jurisdiction; Failure to State a Claim | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Saleh Al Rajhi<br><br>*See*, Dkt #s 865-66, 1035, 1052 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 02-7300 | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.<br><br>Saleh Abdulaziz al Rajhi is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege that Saleh Abdulaziz al Rajhi has long supported al Qaeda. *Ashton* 6AC, Dkt #1463.  Interpol noted that "He has been closely linked to Bin Laden's personal secretary."  Kaplan Declaration in *Burnett* Opposition to Sulaiman al Rajhi Motion to |

---

[3] The plaintiffs believe that Judge Casey's decision to dismiss the al Rajhi Bank on 12(b)(2) grounds was in error and they sought and will seek to appeal Casey's misapplication of the pleading standard as to al Rajhi Bank.  The Defendants refused to stipulate that the al Rajhi Order was final under FRCP 54(b); and Judge Casey refused to certify it for appeal.

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | (Tremsky); 04-7280 (*WTC*) | | Dismiss, Dkt #1048.<br><br>His family's bank, Al Rajhi Banking and Investment, of which he is the Chairman, knowingly assisted al Qaeda through: providing financial services to the Spanish and Hamburg al Qaeda cells; allowing the SAAR network to use its correspondent account with a US bank to launder money for terror; providing financial services to al Qaeda directly; acting as a correspondent bank for SDGT Bank al Taqwa; providing banking and financial services for SDGT Youssef Nada; providing financial services for SDGT Al Haramain to launder money for terror; and providing financial services for numerous al Qaeda charities. *Ashton* 6AC, Dkt #1463, *Burnett* MDS al Rajhi Banking and Investment, Dkt #1272. Financial services meet the definition of material support.  18 U.S.C. § 2333. |
| Sulaiman Al Rajhi<br><br>*See,* Dkt #s 869-70, 1020, 1029, 1046, 1048, 1053-54 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-7065 (*Cantor Fitzgerald*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 (*O'Neill v. Al Baraka*); 02-7300 (Tremsky); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim | This defendant is subject to personal jurisdiction under theories of general jurisdiction.  A general jurisdiction analysis is not implicated by the Second Circuit decision.<br><br>Among his contacts with the United States, Sulaiman al Rajhi founded a U.S. based organization, the SAAR Foundation which spun off over one hundred other interlinked U.S. based charities and businesses.  These charities were raided by the U.S. government in 2002.  Evidence subsequently emerged that the SAAR charities had surreptitiously routed cash to designated terrorist Yousef Nada. *Ashton* 6AC, Dkt #1463.<br><br>Suleiman Al Rajhi is further subject to personal jurisdiction under specific jurisdictional theories based on his alleged direct sponsorship and material support of al Qaeda.  Plaintiffs allege that Sulaiman Abdulaziz al Rajhi (or "SAAR") has long supported al Qaeda.  *Ashton* 6AC, Dkt #1463.<br><br>According to Interpol, "al Rajhi has a history of financially supporting al Qaeda terrorists."  Kaplan Declaration in *Burnett* Opposition to Sulaiman al Rajhi Motion to Dismiss, Dkt #1048.<br><br>His family's bank, Al Rajhi Banking and Investment, of which he is the Managing Director, knowingly assisted al Qaeda through providing services to the Spanish and Hamburg al Qaeda cells; allowing the SAAR network to use its correspondent account with a U.S. bank to launder money for terror; providing bank services to al Qaeda directly; |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | acting as a correspondent bank for Bank al Taqwa; providing banking services for Youssef Nada; providing banking services for Al Haramain to launder money for terror; and providing banking services for numerous al Qaeda charities. *Ashton* 6AC, Dkt #1463, *Burnett* MDS al Rajhi Banking and Investment, Dkt #1272. <br><br> The name al Rajhi was found on the Golden Chain. Draper Affidavit in *Burnett* Opposition to Sulaiman al Rajhi Motion to Dismiss, Dkt #1047. |
| Saudi Binladin Group ("SBG") | 02-6977 (*Ashton*); 02-1616 (*Burnett*) | Personal Jurisdiction; Failure to State a Claim | Saudi Binladin Group (or "SBG") does not have a motion to dismiss pending, and Plaintiffs respectfully submit that it consequently falls outside the intended scope of this submission. In 2005, Judge Casey denied SBG's motion to dismiss without prejudice and found that Plaintiffs had alleged sufficient and specific enough facts to warrant jurisdictional discovery to determine, *inter alia*, whether SBG had purposefully directed its activities at the United States. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 822 (S.D.N.Y. 2005). Though the parties have engaged in discovery, disputes continue as to whether the plaintiffs are entitled to additional discovery from SBG, much of it related to issues that would address concerns raised by the Second Circuit. Plaintiffs expressly deny that the Second Circuit's decision is dispositive as to SBG, and will present the factual and legal arguments underlying that position in their Opposition to SBG's Motion to Dismiss once it has been filed. To attempt to present those arguments in this first instance in the body of this chart would be inappropriate, prejudicial, and unhelpful to the Court. |
| Saudi Joint Relief Committee ("SJRC") <br><br> *See,* Dkt #s 631, 819 | 03-6978 (*Federal Insurance*) | FSIA; Personal Jurisdiction | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's decision is dispositive as to this defendant's Motion to Dismiss for lack of subject matter jurisdiction under the FSIA only. Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Saudi Red Crescent Society | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04- | FSIA; Personal Jurisdiction; | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| ("SRCS") *See,* Dkt #s 99, 277, 364, 404, 1175-76, 1245, 1257, 1270, 1424 | 5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 02-7300 (Tremsky); 04-7280 (*WTC*) | Failure to State a Claim | defendant's Motion to Dismiss for lack of subject matter jurisdiction under the FSIA only. Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Schreiber & Zindel Treuhand Anstalt, Frank Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr. *See,* Dkt #s 926-31, 1040-41, 1114, 1209, 1591-92, 1638-43, 1675 | 04-1923 (*O'Neill v. Al Baraka*); 04-1076 (*O'Neill v. Iraq*) | Insufficiency of Service of Process; Personal Jurisdiction | Plaintiffs' allegations are sufficient to meet the Second Circuit's standard for personal jurisdiction. Plaintiffs asserted two (2) theories for asserting personal jurisdiction over the defendants. The first, a national effects test and NY CPLR 302(a) specific theory of jurisdiction (*See* Response to S&Z MTD, Dkt 1114, pp 11-7). The second, under a conspiracy theory of jurisdiction, while briefed before the Second Circuit (*see O'Neill* principal and reply briefs; *see Prince Mohammed* responsive brief), was never discussed in its opinion. (*See* Response to S&Z MTD, Dkt 1114, pp 17-24). As set forth at length in the pleadings (First Consolidated Complaints ("FCC") in *O'Neill-Iraq* ("*Iraq*") and *O'Neill-Al Baraka* ("*Al Baraka*"), which incorporated the allegations set forth in the Third Amended Complaint in *Iraq* and the Second Amended Complaint in *Al Baraka*, together with the previously filed RICO Statements and More Definite Statements), it was alleged that the defendants herein had direct dealings, as money launders and facilitators, working directly with Special Designated Global Terrorists, involved in assisting al Qaeda in its financial infrastructure. *See* Appendix I attached to Dkt 1114 (pp 26-36); *Al Baraka* FCC ¶¶ 22, 25, 57-62, 76-85, 127, Ex. M (sub-¶¶ 1, 5(b), 6, 13, 19-29), *Iraq* FCC ¶¶ 38, 41-48, 50, 54-5, 63, 220, Ex. D (sub¶¶ 1, 5(b), 6, 13, 19-20) (defendants' relationship to money laundering with Bank Al Taqwa and Nasreddin International Group and related entities, along with and Ahamad I. Nasreddin and Youssef Nada; relationship with Rabita Trust and SAAR Foundation). |
| Al Shamal Islamic Bank *See,* Dkt #s 1614-15, | 02-6977 (*Ashton*); 04-7065 (*Cantor Fitzgerald*); 04-5970 (*Continental Casualty*); | Personal Jurisdiction | Al Shamal Islamic Bank is subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al Qaeda. Plaintiffs' allegations state that Al Shamal supported, aided and abetted, and conspired with al Qaeda to attack and commit mass atrocities against the United States and its citizens |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| 1732, 1775-76 | 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1923 (*O'Neill v. Al* Baraka) | | through its direct provision of extraordinary, non-routine banking and financial services in support of known and intended tortious activity, and knowledge of and participation in a conspiracy to attack the United States and commit mass atrocities, including the hijacking and explosion of commercial aircraft.  OBL and Hasan al-Turabi created related business ventures to offer safe haven and employment in Sudan to al Qaeda members, promoting their involvement in radical Islamic movements in their countries of origin as well as anti-US terrorism.  *Burnett* TAC ¶235, DC Dkt #29 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.  Al Shamal was part of this business network whose purpose was material support for the conspiracy against the US and Al Shamal financially supported OBL and the al Qaeda organization in its call for holy war against the U.S. *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.<br><br>Plaintiffs' allege Al Shamal Islamic Bank is a company in the Sudan that was capitalized by Osama bin Laden in the amount of $50M.  *Burnett* TAC ¶235 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.  Al Shamal was implicated in 2001 U.S. Embassies bombing trial.  *Burnett* TAC ¶237 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.  Al Shamal maintained two accounts for al-Hijrah Construction, which was the al Qaeda company that provided transportation and provisions to OBL and terrorists in OBL's training camps in northern Sudan.  *Burnett* TAC ¶237.  Al Shamal provided material support for OBL knowing it was for criminal and terrorist activities, maintaining accounts and providing financial services for OBL and at least six other al Qaeda operatives.  *Burnett* TAC ¶237.  Al Qaeda operatives confirm that the Al Shamal Islamic Bank gave support for operational purposes, including purchasing stinger missiles and an airplane for Osama bin Laden.  *Burnett* TAC ¶¶235-237 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.  In the wake of 9/11, U.S. officials stated that Al Shamal Islamic Bank operations continue and evidence exists that Osama bin Laden "remains the leading shareholder of the bank" as of 9/11.  *Burnett* TAC ¶239 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273.  Al Shamal was chaired by SDGT and al Qaeda co-conspirator Adel Batterjee.  *Burnett* TAC ¶236 and *Burnett, Euro Brokers & WTC MDS* (9/27/05), Dkt #1273. |
| Abdul Rahman Al Swailem | 02-6977 (*Ashton*); 04-5970 (*Continental Casualty*); 04-7279 | FSIA; Personal Jurisdiction; Failure to State a | The Second Circuit's decision is not dispositive as to al Swailem's FSIA or personal jurisdiction defenses.  The claims against al Swailem arise predominantly from conduct undertaken in his capacity as head of the Saudi Red Crescent (SRC).  Plaintiffs allege that |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| *See,* Dkt #s 96, 99, 1174-76, 1245, 1270 | (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 02-7300 (Tremsky); 04-7280 (*WTC*) | Claim | al Swailem used his control over the SRC to intentionally support al Qaeda's operations throughout the world.  In his capacity as the head of the SRC, al Swailem is neither a "senior official" of the Saudi government, nor a member of the Kingdom's "general secretariat."  Accordingly, al Swailem does not qualify as an "agency" of the Saudi government within the Second Circuit's limited definition of that term.  Furthermore, even if al Swailem could validly claim agency status as the head of a non-traditional governmental organ like the SRC, the Second Circuit's decision makes clear that he would enjoy FSIA protection only with respect to actions undertaken "while acting within the scope of his office or employment."  Accordingly, discovery would be required in order to determine whether al Swailem was acting within the scope of his office and employment with respect to the actions underlying the claims at issue in these proceedings. |
| Tadamon Islamic Bank  *See,* Dkt #s 1737-38, 1741, 1743, 1768, 1815, 1842, 1847, 1881, 1892 | 03-6978 (*Federal Insurance*); 04-1923 (*O'Neill v. Al* Baraka) | Personal Jurisdiction | Tadamon Islamic Bank is subject to personal jurisdiction under specific jurisdictional theories based on its alleged direct sponsorship and material support of al Qaeda.  Plaintiffs' allegations state that Tadamon supported, aided and abetted, and conspired with al Qaeda to attack and commit mass atrocity against the United States and its citizens through its direct provision of extraordinary, non-routine banking and financial services in support of known and intended tortious activity, and knowledge of and participation in a conspiracy to attack the United States and commit mass atrocity, including the hijacking and explosion of commercial aircraft.  Tadamon Islamic Bank was not an unwitting or indirect actor in OBL's plot to attack the U.S. on Sept. 11th, 2001.  Plaintiffs' Consolidated Memorandum of Law in Opposition to the MTD filed by Tadamon Islamic Bank, Dkt #1815, 1.  Instead, it took active and deliberate steps to become fully integrated in the conspiracy, knowingly maintaining accounts for individuals and organizations involved in the al Qaeda plot, including OBL himself, and became significantly involved in other banks and organizations who actively supported al Qaeda, fully aware that such material support was assisting OBL and al Qaeda in their plan to attack America.  Dkt #1815, 1-2.  Tadamon is alleged to have engaged in raising, laundering, transferring, distributing and hiding funds for OBL and al Qaeda to support and finance their terrorist activities, including but not limited to, the September 11th attacks, Dkt #1815, Exhibit A, 7 citing *O'Neill* FAC ¶ 22, Dkt #1568; *Federal* FAC ¶66, Dkt #111; *Cantor* FAC ¶¶ 1, 11, 33-42, 49-50, 90-92, 122-135, 141-158, 162-176, 185-192, 2343-256, *Cantor* Dkt #5; knowingly facilitating, materially sponsoring, aiding and abetting, and/or conspiring with al Qaeda, for |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | example by managing the financial accounts of al Qaeda operatives, Dkt #1815, 4-5, Exhibit A at 7, citing *O'Neill* FAC ¶52, Dkt #1568; *see also, Burnett* TAC ¶109, DC Dkt #29, *Federal* FAC ¶¶336-342, Dkt #111; conducting or participating in the conduct of the al Qaeda's affairs and participating in the operation or management of the operation of the al Qaeda itself, Dkt #1815, Exhibit A, 8, citing *Federal* RICO Statement, 2, Dkt #1723 and *O'Neill* RICO Statement, 4, Dkt #1728; holding the account used for Osama bin Laden's personal travel expenses, *Ashton* 6AC, Dkt #1463; direct, knowing, and intentional provision of Sudanese pounds to Islamic Shariah Support Fund ("ISSF"), for the purpose that such money would be used for terrorist actions aimed at the United States, including but not limited to, mobilizing and training popular defense forces, and providing money and support for "martyr's" families, Dkt #1815, 5, Exhibit A at 11, citing *Federal* RICO Statement, 10, Dkt #1723 and *O'Neill* RICO Statement, Exhibit A at 17, Dkt #1728. |
| Sheikh Abdullah bin Khalid Al Thani<br><br>*See,* Dkt #s 1758-60, 1837, 1858 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | FSIA; Personal Jurisdiction | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss for lack of subject matter jurisdiction under the FSIA only. Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |
| Abdullah Muhsen Al Turki<br><br>*See,* Dkt #s 85, 273-74, 360, 1183-85, 1246, 1301 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-7280 (*WTC*) | FSIA; Personal Jurisdiction; Failure to State a Claim; Insufficient Service of Process | The Second Circuit's decision is not dispositive as to al Turki's FSIA or personal jurisdiction defenses.  The claims against al Turki arise, in part, from conduct undertaken in his capacity as Secretary-General of the Muslim World League (MWL).  Plaintiffs allege that al Turki used his control over the MWL to intentionally support al Qaeda's operations throughout the world.  In his capacity as the head of the MWL, al Turki is neither a "senior official" of the Saudi government, nor a member of the Kingdom's "general secretariat." Accordingly, al Turki does not qualify as an "agency" of the Saudi government within the Second Circuit's limited definition of that term.  Furthermore, even if al Turki could validly claim agency status as the head of a non-traditional governmental organ like the MWL, the Second Circuit's decision makes clear that he would enjoy FSIA protection only with respect to actions undertaken "while acting within the scope of his office or employment."  Accordingly, discovery would be required in order to determine whether al Turki was acting within the scope of his office and employment with respect to the actions |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| | | | underlying the claims at issue in these proceedings.  Moreover, because al Turki is alleged to have directly sponsored al Qaeda via his control over the MWL, the Second Circuit's decision is not dispositive as to his personal jurisdiction defense. |
| Martin Wachter, Erwin Wachter, Sercor Treuhand Anstalt and Asat Trust Reg  *See*, Dkt #s 1100-01, 1106, 1206, 1235, 1435-37 | 04-1076 (*O'Neill*); 04-1923 (*O'Neill*) | Personal Jurisdiction; Insufficient Service of Process | Plaintiffs' allegations are sufficient to meet the Second Circuit's standard for personal jurisdiction.  Plaintiffs asserted two (2) theories for asserting personal jurisdiction over the Defendants.  The first, a national effects test and NY CPLR 302(a) specific theory of jurisdiction (*See O'Neill* Response to Wachter MTD, Dkt #1235, pp 13-18; *see also* Plaintiffs Consolidated Response to Asat Trust's MTD, Dkt #1778).  The second, under a conspiracy theory of jurisdiction, while briefed before the Second Circuit (*see O'Neill* principal and reply briefs; *see Prince Mohammed* responsive brief), was never discussed in its opinion.  (*See* Response to Wachter *et al.*, MTD, Dkt #1235, pp 18-25; *see also* Plaintiffs Consolidated Response to Asat Trust's MTD, Dkt #1778).  As set forth at length in the pleadings (First Consolidated Complaints (or "FCC") in *O'Neill-Iraq* (or "*Iraq*") and *O'Neill-Al Baraka* (or "*Al Baraka*"), which incorporated the allegations set forth in the Third Amended Complaint in *Iraq* and the Second Amended Complaint in *Al Baraka*, together with the previously filed RICO Statements and More Definite Statements), it was alleged that the Defendants herein had direct dealings, as money launders and facilitators, directly with Special Designated Global Terrorists, involved in assisting al Qaeda in its financial infrastructure.  *See* Appendix I attached to Dkt #1235; *Al Baraka* FCC ¶¶ 22, 25, 57-62, 76-85, 127, Ex. E (Asat Trust) (sub-¶¶ 1, 5(b), 6, 13, 19-31), Ex. N (Sercor Treuhand Anstalt) (sub-¶¶ 1, 5(b), 6, 13, 19-24), Ex. K (Erwin Wachter) (sub-¶¶ 1, 5(b), 6, 13, 19-28), Ex. L (Marvin Wachter) (sub-¶¶ 1, 5(b), 6, 13, 19-28); *Iraq* FCC ¶¶ 38, 41-48, 50, 54-5, 63, 220, Ex. B (Erwin Wachter) (sub-¶¶ 1, 5(b), 6, 13, 19-28), Ex. C (Marvin Wachter) (sub-¶¶ 1, 5(b), 6, 13, 19-28), Ex. F  (Asat Trust) (sub-¶¶ 1, 5(b), 6, 13, 19-31), Ex. E (Sercor Treuhand Anstalt) (sub-¶¶ 1, 5(b), 6, 13, 19-24), Ex. B (Erwin Wachter) (sub¶¶ 1, 5(b), 6, 13, 19-20)  (Asat Trust is a Specially Designated Global Terrorist, so designated on November 7, 2001, of which Erwin Wachter is the manager, and also managed by Martin Wachter, involved with the Al Taqwa network, and working with Youssef M. Nada, a co-defendant herein and a Specially Designated Global Terrorist); c.f., Govt. Ex. K&K Trading Acct., US v. Holy Land Foundation, et al. (trial, 2008), pp 6-7 (sources of wire transfers to Marzook of $1,349,915.00).  *See also* Asat Trust below. |
| | | | |

| Defendant's Name and Docket Numbers | Case Name(s) in which Defendant has filed MTD | Motion to Dismiss Grounds | Explanation |
|---|---|---|---|
| Asat Trust Reg<br><br>*See,* Dkt #s 1697-98, 1778, 1778-2 thru 1778-5, 1811 | 02-6977 (*Ashton*); 03-9849 (*Burnett*); 04-7065 (*Cantor Fitzgerald*); 04-5970 (*Continental Casualty*); 04-7279 (*Euro Brokers*); 03-6978 (*Federal Insurance*); 04-6105 (*NY Marine*); 04-1076 (*O"Neill*); 04-1923 (*O'Neill*); 04-7280 (*WTC*) | Personal Jurisdiction; Insufficient Service of Process | Asat Trust Reg is a designated sponsor, or a SDGT, of al Qaeda and international terrorism by the United States government. *Burnett* TAC ¶137, Dkt #29 in 02-CV-1616 (DC); filed 11/22/2002.  WTC Complaint ¶274, *Euro Brokers*, Complaint ¶105-106.[4]<br><br>*See also* Martin Wachter, et al. above. |
| Ahmed Zaki Yamani<br><br>*See,* Dkt #s 1833, 1872, 2043 | 03-9849 (*Burnett*); 04-7279 (*Euro Brokers*); 04-7280 (*WTC*) | Personal Jurisdiction; Failure to State a Claim; Defective Service | Plaintiffs do not agree with or accept the Defendants' characterizations of their claims against this defendant, but concede that the Second Circuit's holding is dispositive as to this defendant's Motion to Dismiss.  Plaintiffs reserve their right to argue on appeal that the Second Circuit's decision misstates the governing legal standards, and that any dismissals predicated upon application of that decision should be reversed. |

---

[4] The defendants, including ASAT TRUST, filed a motion to dismiss attacking both service and personal jurisdiction relative to the O'Neill Plaintiffs on August 2, 2005.  Dkt #s 1100, 1102 and 1106.  The *O'Neill* Plaintiffs responded on September 14, 2005 (Dkt #1235) to which the defendants replied on October 4, 2005 (Dkt #1435-7).  On February 20, 2006, Defendant ASAT trust filed the instant motion to dismiss against a number of Plaintiffs, including the *O'Neill* Plaintiffs attacking another means of service utilized in this case (publication) and personal jurisdiction. Dkt #s 1697-8.  The *O'Neill* Plaintiffs moved to strike on March 7, 2006 (Dkt #s 1714-6), to which the defendant ASAT Trust replied on March 28, 2006.  Dkt #1740.  The plaintiffs filed a consolidated response on April 21, 2006 (Dkt #1778) to which the defendant replied on May 27, 2006. Dkt #1811.