# EXHIBIT B
# (Part 2 of 10)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

**THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL**
**REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO**
**THE NATIONAL COMMERCIAL BANK**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Phone:  (215) 665-2000
August 24, 2007

**THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO
THE NATIONAL COMMERCIAL BANK**

Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Case No. 03-CV-6978 (RCC), propound

and serve on the National Commercial Bank (hereinafter "Defendant"), the following

Jurisdictional Requests for Production of Documents to be answered fully and under oath,

pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.      In producing documents and other things, Defendant is requested to furnish all

documents or things in its possession, custody or control, regardless of whether such documents

or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys,

accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute

compliance with this request.  If any requested document or thing cannot be produced in full,

Defendant is requested to produce it to the extent possible, indicating which document or portion

of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each

document requested together with all non-identical copies and drafts of that document.  If the

original of any document cannot be located, an identical copy shall be provided in lieu thereof,

and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business and

the documents shall be organized and labeled to correspond to the categories in this request.  All

documents shall be produced in the file folder, envelope or other container in which the

documents are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing. If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

A.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

B.    The date of the document or transaction involving the information;

C.    The names of each author and any and all participants with respect to the information;

D.    The names of any and all signatories of the document, if any;

E.    The name of the document's current custodian;

F.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

G.    A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.    For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press.  In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.    If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this

action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.     The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

4.     The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv)

identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5.     The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.     The term "Plaintiffs" shall refer to Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Civil Action No. 03-CV-6978 (RCC).

7.     The terms "Defendant," "You," "Your," and "NCB" shall refer to the National Commercial Bank and any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or representative acting on the National Commercial Bank's behalf.

8.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.     The term "person" is defined as any natural person or any business, legal or government entity or association.

10.    The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

11.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12.    The terms "all" and "each" shall be construed as all and each.

13.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.   The use of the singular form of any word includes the plural and vice versa.

15.   The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16.   The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17.   The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18.   The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19.   The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20.   The term "NCB Personnel" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by National Commercial Bank and/or acting on National Commercial Bank's behalf.

21.   The term "deviant activity" shall mean and refer to any activity related to or associated with deviant ideologies, deviant thinking or deviant interpretations of Islam. The terms "deviant ideologies," "deviant thinking," and "deviant interpretations of Islam" shall have the same meanings as when used by authorities of the government of the Kingdom of Saudi Arabia and/or Saudi religious authorities. See *Interior Minister Urges Imams to Confront Deviant Ideologies*, June 21, 2007, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2007News/News/NewsDetail.asp?cIndex+7240; *Mosque Council Urges Confrontation of Deviant Thinking*, September 1, 2003, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2003News/News/IslDetail.asp?cIndex=762.

**THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE NATIONAL COMMERCIAL BANK**

1.      From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between the National Commercial Bank ("NCB") and the Muwafaq Foundation (a/k/a "Blessed Relief Foundation").

**ANSWER:**

2.      From the period beginning January 1990 through the present, please provide any and all documents relating to the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

3.      From the period beginning January 1990 through the present, please provide any and all documents relating to the role of NCB in the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including

9

without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

4.     From the period beginning January 1990 through the present, please provide any and all documents NCB sent to, and/or received from the Muwafaq Foundation, including without limitation, all documents relating to the transfer of NCB funds to the Muwafaq Foundation, and vice versa.

**ANSWER:**

5.     From the period beginning January 1990 through the present, please provide any and all documents relating to any contributions by NCB to the Muwafaq Foundation, including but not limited to, monetary donations, *zakat*, gifts, grants, and/or other charitable contributions. If the contribution was made by wire transfer, please provide records identifying the name of the individual who sent the money, the bank from which the money was sent, the wire transfer number, the recipient of the funds, the bank which received the wire transfer and the bank account numbers of the sender and receiver.

**ANSWER:**

6.      From the period beginning January 1990 through the present, please provide any and all documents relating to any form of non-monetary support or contribution provided by NCB to the Muwafaq Foundation, including but not limited to, any administrative assistance, any assistance in obtaining identification and credentials to facilitate international travel, and any physical and logistical assets.

**ANSWER:**

7.      From the period beginning January 1990 through the present, please provide all documents relating to any accounts the Muwafaq Foundation holds or has held at NCB.

**ANSWER:**

8.      From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi-based regulatory body, bank, financial institution, accountant, or auditor ("Saudi Investigator"), regarding any relationship between NCB and the Muwafaq Foundation, including without

limitation, any investigation relating to financial transactions between NCB and the Muwafaq Foundation.

**ANSWER:**

9.      From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States Investigator, any Foreign Investigator, or any Saudi Investigator, regarding any of the Muwafaq Foundation's accounts held at NCB.

**ANSWER:**

10.     Please provide any and all documents relating to any audit, analysis, examination, survey, or review of the Muwafaq Foundation's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by NCB or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.   Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

11.     Please provide all documents relating to any and all information or notification NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal, corrupt or deviant activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

12.     Please provide all documents relating to any and all information or notification NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) providing funds, services, assets, medical assistance or any other form of support to mujihadeen in any part of the World; or (ii) providing financial, logistical, religious, political or any other form of assistance in relation to any armed jihad, regardless of whether such jihad was declared legitimate by competent religious authorities.

**ANSWER:**

13.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that the Muwafaq Foundation, including any individual or entity employed by and/or affiliated with the Muwafaq Foundation, was associated with or involved in any criminal,

corrupt, deviant, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

14.     Please provide all documents relating to the disposition of all of Muwafaq Foundation's accounts and assets held at NCB, following the Muwafaq Foundation's closure in 1996 or later.

**ANSWER:**

15.     From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between any NCB Personnel and the Muwafaq Foundation.

**ANSWER:**

16.     From the period beginning January 1990 through the present, please provide any and all documents relating to the role of any NCB Personnel in the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including without limitation, appointment and termination of personnel, accounting, banking and

financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

17.   From the period beginning January 1990 through the present, please provide any and all documents relating to any contributions by any NCB Personnel to the Muwafaq Foundation, including but not limited to, monetary donations, *zakat*, gifts, grants, and/or other charitable contributions.  If the contribution was made by wire transfer, please provide records identifying the name of the individual who sent the money, the bank from which the money was sent, the wire transfer number, the recipient of the funds, the bank which received the wire transfer and the bank account numbers of the sender and receiver.

**ANSWER:**

18.   From the period beginning January 1990 through the present, please provide any and all documents relating to any form of non-monetary support or contribution provided by any NCB Personnel to the Muwafaq Foundation, including but not limited to, any administrative assistance, any assistance in obtaining identification and credentials to facilitate international travel, and any physical and logistical assets.

**ANSWER:**

19.    From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any U.S. Investigator, any Foreign Investigator, and/or any Saudi Investigator regarding any relationship between any NCB Personnel and the Muwafaq Foundation, including without limitation, any investigation relating to financial transactions between NCB Personnel and the Muwafaq Foundation.

**ANSWER:**

20.    From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Khalid Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**

21.    From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Yassin Abdullah Al Kadi, a Specially Designated Global Terrorist pursuant to Executive Order 13224, and the Muwafaq Foundation.

**ANSWER:**

16

22.     From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Abdulrahman Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**

23.     From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between and among Khalid Bin Mahfouz, Yassin Abdullah Al Kadi, Abdulrahman Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**

24.     From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Khalid Bin Mahfouz account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Bin Mahfouz holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Bin Mahfouz holds or has held a beneficial interest, and/or any NCB accounts over which Bin Mahfouz holds or has held signatory authority.

**ANSWER:**

25.     From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Yassin Abdullah Al Kadi account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Al Kadi holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Al Kadi holds or has held a beneficial interest, and/or any NCB accounts over which Al Kadi holds or has held signatory authority.

**ANSWER:**



26.     From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Abdulrahman Bin Mahfouz account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Bin Mahfouz holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Bin Mahfouz holds or has held a beneficial interest, and/or any NCB accounts over which Bin Mahfouz holds or has held signatory authority.

**ANSWER:**



27.     From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any U.S. Investigator, and Foreign Investigator, and/or any Saudi Investigator regarding any alleged

improprieties relating to the transfer of funds from any NCB account identified in Requests # 24-26.

**ANSWER:**

28.     From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States Investigator, any Foreign Investigator, and/or any Saudi Investigator relating to Khalid Bin Mahfouz, Yassin Abdullah Al Kadi, and Abdulrahman Bin Mahfouz.

**ANSWER:**

Respectfully submitted,

COZEN O'CONNOR

Dated: August 24, 2007                    By:_____
                                          Stephen A. Cozen, Esq.
                                          Elliott R. Feldman, Esq.
                                          Sean P. Carter, Esq.
                                          Adam C. Bonin, Esq.
                                          J. Scott Tarbutton, Esq.
                                          1900 Market Street
                                          Philadelphia, PA 19103
                                          Tel: (215) 665-2000
                                          Fax: (215) 665-2013

                                          Attorneys for *Federal Insurance* Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the *Federal Insurance* Plaintiffs' First Set of

Jurisdictional Requests for Production of Documents Directed to the National Commercial Bank

were served via electronic mail and U.S. first-class mail, postage prepaid, this 24th day of

August 2007, upon:

Ronald S. Liebman, Esq.
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C. 20037-1350

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7124
(Defendants' Executive Committee's appointed representative to receive discovery
requests and responses in 03-MDL-1570)

J. Scott Tarbutton, Esq.

PHILADELPHIA\3318102\1  117430.000

# **EXHIBIT 3**

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

August 31, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

VIA E-MAIL

Sean P. Carter, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Sean:

This letter responds to yours of August 24, 2007, which enclosed The Federal Insurance Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to The National Commercial Bank ("NCB"). Within the time provided by FED. R. CIV. P. 34, NCB will serve formal objections to those discovery requests. In the interim, I am writing to correct your erroneous assumption that the *Federal Insurance* plaintiffs are authorized to serve these discovery requests simply because NCB has not objected to the active participation of the *Federal Insurance* plaintiffs in the jurisdictional discovery that has been conducted in the *Burnett* and *Ashton* lawsuits. We regard the service of the *Federal Insurance* discovery requests as a violation of orders by Magistrate Judge Maas, which establish the scope of jurisdictional discovery as to NCB. Those orders bind the *Federal Insurance* plaintiffs just as much as they bind the *Burnett* and *Ashton* plaintiffs precisely because the *Federal Insurance* plaintiffs have participated actively in the *Burnett* and *Ashton* jurisdictional discovery.

As you know, NCB has a pending motion to dismiss the *Federal Insurance* complaint (MDL Dkt. # 416), and briefing of that motion was completed on November 29, 2004. NCB's motion raises jurisdictional defenses— both lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and lack of personal jurisdiction— and it challenges the legal sufficiency of the complaint. Accordingly, under Case Management Order No. 2, ¶ 17 (MDL Dkt. # 247), the *Federal Insurance* plaintiffs may not proceed with merits discovery as to NCB. Equally important, however, the Court has not authorized the *Federal Insurance* plaintiffs to proceed with jurisdictional discovery as to NCB. Instead, the Court authorized "limited jurisdictional discovery" as to personal jurisdiction over NCB only in the *Burnett* and *Ashton*

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
August 31, 2007
Page 2

lawsuits. *In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005); *In re Terrorist Attacks I*, 349 F. Supp. 2d 765, 792, 820 (S.D.N.Y. 2005).

Nonetheless, the *Federal Insurance* complaint is substantively identical to the *Burnett* and *Ashton* complaints, as NCB pointed out in its motion to dismiss the *Federal Insurance* complaint. Accordingly, NCB did not object when counsel for the *Federal Insurance* plaintiffs sought to participate in the jurisdictional discovery process in *Burnett* and *Ashton*. For example, at least one lawyer from your firm participated in the review of documents produced by NCB in October 2006, and other lawyers from your firm have attended NCB jurisdictional discovery hearings before Magistrate Judge Maas in May 2006 and March 2007, and the deposition of Lawrence Smith conducted before Judge Maas in July 2007.

For these reasons, the July 31, 2007 status report to Judge Daniels by the Defendants' Executive Committee suggested (at p. 4 n.6) that, "with respect to NCB's pending motion to dismiss the *Federal Insurance* complaint . . . the Court should first resolve NCB's personal jurisdiction defense (following completion of ongoing jurisdictional discovery in the *Burnett* and *Ashton* matters), and defer resolution of its FSIA defense." Similarly, in the parties' August 3, 2007 status report to Judge Daniels concerning jurisdictional discovery (at p. 5 n.4), NCB "contend[ed] that *Federal Insurance* plaintiffs' counsel have participated in the jurisdictional discovery process as to NCB, without objection by NCB, and that NCB's pending motion to dismiss the *Federal Insurance* complaint therefore does not provide a reason to prolong the jurisdictional discovery process."

Having participated in the *Burnett* and *Ashton* jurisdictional discovery process as to NCB, the *Federal Insurance* plaintiffs are bound by the Court's orders, which establish and limit the scope of permissible jurisdictional discovery. In NCB's Rule 34 objections to the *Federal Insurance* discovery requests, we will set out in detail all of the ways in which your August 24 discovery requests are improper under the Court's orders. In the interim, however, we note the following:

- On May 1, 2007 Magistrate Judge Maas entered an order (MDL Dkt. # 1971) in which he "decline[d] to direct any further discovery (not previously ordered) related to NCB." The *Federal Insurance* discovery requests violate this restriction on further jurisdictional discovery as to NCB.

- Judge Maas entered his May 1 order after reviewing, *inter alia*, allegations in Mr. Maloney's April 30, 2007 letter concerning supposed connections between NCB, Khalid Bin Mahfouz, Muwafaq/Blessed Relief Foundation, the IIRO and other "'customers' specifically identified as terrorist organizations." (*See id.* at pp 2-3 & n.2, and p. 5.) Those same allegations appear in the *Federal Insurance* First Amended Complaint, ¶¶ 290-297. Moreover, those same allegations apparently underlie all 28

4907099

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
August 31, 2007
Page 3

of the *Federal Insurance* plaintiffs' discovery requests. Those discovery requests therefore transparently seek to evade Judge Maas' conclusion that these allegations do not justify further jurisdictional discovery as to NCB.

- In his earlier June 28, 2006 Discovery Order (MDL Dkt. # 1849), Judge Maas held that the *Burnett* and *Ashton* complaints "have failed to make a prima facie showing of [a 9/11] conspiracy" involving NCB, and were "conclusory." *In re Terrorist Attacks [III]*, 440 F. Supp. 2d 281, 287 (S.D.N.Y. 2006). Specifically, "they establish neither that NCB or its customers contributed funds to organizations serving as Al Qaeda fronts with 'an awareness of the effects in New York' of such monetary contributions, nor that the co-conspirators in New York–namely, the Al Qaeda terrorists who executed the September 11 attacks–'acted at the direction or under the control or at the request of' NCB." *Id.*, quoting *In re Terrorist Attacks I*, 349 F. Supp. 2d at 805. That holding applies equally to the substantively identical allegations against NCB in the *Federal Insurance* complaint. Because the *Federal Insurance* complaint does not make a prima facie showing of conspiracy involving NCB, the *Federal Insurance* plaintiffs have not satisfied the prerequisite for discovery concerning their "conspiracy" theory of jurisdiction. *In re Terrorist Attacks [III]*, 440 F. Supp. 2d at 285 ("To establish personal jurisdiction on a conspiracy theory, [p]laintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of a conspiracy, and show that the defendant's co-conspirator committed a tort in New York."), quoting *In re Terrorist Attacks I*, 349 F. Supp. 2d at 805. Equally, under Case Management Order No. 2, the *Federal Insurance* plaintiffs cannot pursue these requests as merits discovery.

Accordingly, if the *Federal Insurance* plaintiffs do not withdraw their August 24, 2007 discovery requests, then NCB will submit its objections to those requests pursuant to Rule 34 and will seek other appropriate remedies from the Court.

Very truly yours,

Ronald S. Liebman

cc:    All Counsel

# **EXHIBIT 4**



## COZEN
## O'CONNOR
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Sean P. Carter**
Direct Phone  215.665.2105
Direct Fax     215.701.2105
scarter@cozen.com

September 14, 2007

**VIA E-MAIL**

Ronald S. Liebman, Esquire
Patton Boggs
2550 M Street, NW
Washington, DC 20057

> Re:    In Re: September 11, 2001 World Trade Center Attack

Dear Ron:

I write in response to your letter of August 31, 2007, which was received while I was away on vacation.

For the reasons set forth below, the *Federal* plaintiffs believe that the arguments you raise in support of your contention that National Commercial Bank (NCB) is not required to respond to discovery in the *Federal* action are misplaced. In fact, conducting limited discovery as to NCB in the *Federal* matter at this time is procedurally proper, and will promote efficiency and conserve judicial resources. Moreover, the completion of such discovery is a procedural pre-requisite to resolving NCB's Motion to Dismiss the *Federal* plaintiffs' claims against it for lack of personal jurisdiction.

Your contention that the *Federal* plaintiffs are bound by the discovery conducted as to NCB in the *Ashton* and *Burnett* actions misapprehends the fundamental nature of the consolidated proceedings. As the Supreme Court and 2nd Circuit have explained, consolidation is merely a procedural device designed to promote judicial economy, and cannot affect a merger of the actions or the claims of the separate parties. Accordingly, consolidation does not change the rights of the parties in the separate suits. As a result, the district court is required to consider the jurisdictional basis of each suit in a consolidated proceeding separately. Johnson v. Manhattan RY, 289 U.S. 479, 496-97, 77 L. Ed. 1331, 53 S. Ct. 721 (1933); Cole, et al. v. Schenley Industries, Inc. et al., 563 F.2d 35, 38 (2nd Cir. 1977).

Ronald S. Liebman, Esquire
September 14, 2007
Page 2

---

In view of the foregoing principles, your suggestion that the separate discovery proceedings in the *Burnett* and *Ashton* actions are binding on the *Federal* plaintiffs is procedurally incorrect.[1]

For the same reasons, your contention that the *Federal* plaintiffs have "actively participated" in the discovery in the *Burnett* and *Ashton* cases is similarly misplaced. Because of the distinct and separate nature of the individual actions, the *Federal* plaintiffs have no standing to conduct discovery via the *Ashton* or *Burnett* cases, direct the discovery conducted as to NCB in those cases, define the arguments raised to the Court in relation to discovery disputes in those separate actions, or otherwise protect their interests via discovery in those cases. As the *Federal* plaintiffs have absolutely no procedural rights in relation to the discovery as to NCB in the *Ashton* and *Burnett* cases, it is simply illogical to suggest that the *Federal* plaintiffs are bound by such discovery. The fact that counsel for the *Federal* plaintiffs have attended a few hearings relating to the NCB discovery without presenting argument, and the deposition of Lawrence Smith without asking any questions, as anyone is free to do in our open court system, does not change that fact.

As a corollary, because the discovery conducted in the separate *Burnett* and *Ashton* cases is not binding in the *Federal* action, the conduct of limited jurisdictional discovery in the *Federal* case is a procedural pre-requisite for the disposition of NCB's Motion to Dismiss the *Federal* action for lack of personal jurisdiction. As you point out in your letter, the *Federal* pleadings contain all of the allegations which prompted the district court to grant jurisdictional discovery in the *Ashton* and *Burnett* cases.[2] It logically follows that the *Federal* plaintiffs are entitled to jurisdictional discovery as to NCB. For this reason, the technical arguments you raise regarding the propriety of conducting discovery as to NCB while its Motion to Dismiss the *Federal* action remains pending are disingenuous, and in any event procedurally inaccurate. Indeed, insofar as NCB has made it clear that it desires to renew its Motion to Dismiss for lack of personal jurisdiction in the *Ashton* and *Burnett* cases as soon as possible, it only makes sense to complete jurisdictional discovery as to NCB in the remaining cases at this time, so that further proceedings as to NCB can be conducted on a consolidated basis. We therefore urge NCB to respond (and not merely object) to the *Federal* plaintiffs' limited discovery as soon as possible.

Importantly, the fact that jurisdictional discovery must now proceed separately in the *Federal* action is a circumstance of NCB's own choosing. As NCB acknowledges that the *Federal* pleadings contain all of the allegations which prompted the Court to grant jurisdictional discovery in the *Ashton* and *Burnett* cases, the appropriate step following the denial of NCB's Motion to Dismiss for lack of jurisdiction in *Ashton* and *Burnett* would have been for NCB to withdraw its pending motion to dismiss in the *Federal* action, and thereby relieve the Court of the burden of deciding a Motion that had already been rendered moot. This approach would have allowed discovery to proceed on a consolidated basis in all of the cases and conserved judicial resources.

---

[1] In this regard, we note that the referral by the district court of certain disputes relating to NCB to Judge Maas was specifically limited to the *Ashton* and *Burnett* cases.

[2] The *Federal* plaintiffs disagree with your contention that the *Federal* pleadings are "substantively identical" to the *Ashton* and *Burnett* Complaints. In particular, while the *Federal* pleadings do contain all of the allegations set forth in the *Burnett* and *Ashton* Complaints that were deemed relevant by the district court in reaching its decision as to jurisdiction, the *Federal* plaintiffs' pleadings contain additional allegations, not found in either the *Burnett* and *Ashton* Complaints.

Ronald S. Liebman, Esquire
September 14, 2007
Page 3

Rather than embracing that efficient course, NCB has curiously requested that the court hold in abeyance any decision on NCB's pending Motion to Dismiss for lack of jurisdiction in *Federal*, until the completion of jurisdictional discovery in *Ashton* and *Burnett*.[3]  Your August 31, 2007 letter suggests that NCB did so in an effort to avoid jurisdictional discovery in the other actions altogether, and thereby prevent the plaintiffs in the other actions from pursuing jurisdictional theories or arguments not advanced by the *Burnett* and *Ashton* plaintiffs.  However, for the reasons stated above, the *Burnett* and *Ashton* cases are separate actions, and the consolidation of those cases with *Federal* cannot serve to limit the procedural rights of the *Federal* plaintiffs.

Finally, contrary to the assertion in your letter, the targeted discovery served by the *Federal* plaintiffs differs in important respects from that previously served in the *Ashton* and *Burnett* cases, and is directly relevant to the question of personal jurisdiction.  The *Federal* plaintiffs are confident in their ability to establish their right to the limited discovery sought through the Requests served on NCB.  In any case, the formal completion of the discovery process as to NCB in *Federal* is a necessary step to preserve the record, for the benefit of all parties.

In the event that NCB is willing to reconsider its position on this issue, I would welcome the opportunity to meet with you in advance of the deadline for NCB's responses, to determine whether we can streamline the scope of necessary discovery proceedings as to NCB in the *Federal* case.  In the event NCB intends to adhere to the stance outlined in your August 31, 2007 letter to me, I would ask that you provide available dates after the deadline for NCB's responses, to meet and confer in accordance with the requirements of Local Rule 37.3.

Very truly yours,

COZEN O'CONNOR

BY:    SEAN P. CARTER

SPC/bdw
cc:    Jodi Flowers, Esquire
       Robert Haefele, Esquire
       Andrew Maloney, Esquire
       Jerry Goldman, Esquire
       Stephen A. Cozen, Esquire
       Elliott R. Feldman, Esquire
       Adam C. Bonin, Esquire
       J. Scott Tarbutton, Esquire

---

[3]  In an effort to limit the inefficiencies resulting from NCB's refusal to withdraw its mooted Motion to Dismiss the *Federal* action for lack of personal jurisdiction, the *Federal* plaintiffs have consistently urged the court to decide NCB's pending Motion to Dismiss as soon as possible.

# **EXHIBIT 5**

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

September 24, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

**VIA E-MAIL**

Sean P. Carter, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Sean:

      Enclosed please find the Objections of The National Commercial Bank ("NCB") to The Federal Insurance Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to The National Commercial Bank. Although the Objections address many statements made in your September 14, 2007 letter to me, this letter separately responds to certain points regarding your request that we meet and confer concerning these discovery requests.

      The *Federal Insurance* complaint is substantively identical to the *Burnett* and *Ashton* complaints with respect to every issue within the scope of your discovery requests, as the Objections explain. Indeed, the three complaints— and all of the other 9/11 litigation complaints against NCB— are substantively identical on every issue affecting personal jurisdiction over NCB.[1] *Compare, e.g., Federal Insurance 1st Am Complt.* ¶¶ 288-295 *with, e.g., Burnett 3rd Am Complt.* ¶¶ 89-96 and *Ashton 6th Am Complt.* ¶¶ 424-434. Given the substantive identity of all of these complaints, the *Federal Insurance, Burnett* and *Ashton* (and all other 9/11 litigation plaintiffs) were obligated under the Court's Case Management Orders to coordinate their discovery efforts as to NCB. Moreover, discovery taken in the *Burnett* and *Ashton* cases is deemed, under those Case

---

[1]    Notably, as regards <u>subject matter jurisdiction</u> over NCB under the FSIA (as NCB pointed out in its motion to dismiss the *Federal Insurance* complaint), the *Federal Insurance* plaintiffs do part company with the *Burnett* and *Ashton* plaintiffs by alleging (1st Am. Complt. ¶¶ 286-287) that NCB— at all times relevant to FSIA immunity— has been operated as an agency, instrumentality or organ of the Saudi government. However, issues of FSIA jurisdiction and immunity as to NCB are not presently before the Court. *See In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005).

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
September 24, 2007
Page 2

Management Orders, to be discovery taken in all of the other consolidated 9/11 lawsuits. It is therefore not surprising that the *Federal Insurance* plaintiffs in fact did actively participate in the jurisdictional discovery process as to NCB over the past two years. That participation was not elective, as you appear to think my August 31 letter implies; it was mandatory. Consequently, the *Federal Insurance* plaintiffs are fully bound by Judge Maas' discovery orders as to NCB, as my August 31 letter noted.

Specifically, Case Management Order No. 2 (MDL Dkt. #247), ¶20 states: "To the extent possible, the parties shall conduct consolidated discovery and all discovery notices served and all responses to all discovery requests in an Individual Action shall be deemed to be part of the Consolidated Action and each Individual Action." Further, Case Management Order No. 3 (MDL Dkt. # 248), ¶9 requires that the two Plaintiffs' Executive Committees— on which you and other *Federal Insurance* plaintiffs' counsel serve— "shall coordinate and, wherever possible, submit joint discovery demands. . . and other filings regarding all matters common to the Individual Actions." Accordingly, it is simply incorrect for you to assert (your Sept. 14 letter, at 2) that the *Federal Insurance* plaintiffs had "no standing" and "absolutely no procedural rights in relation to the discovery as to NCB in the *Ashton* and *Burnett* cases." To the contrary, the jurisdictional discovery record developed over the past two years in the *Burnett* and *Ashton* cases, under the oversight of Judge Maas, is also the jurisdictional discovery record on which the Court can and should resolve NCB's pending motion to dismiss the *Federal Insurance* complaint.

All of the document requests, moreover, concern the relationship, if any, between or among NCB, "NCB Personnel" or other defendants and the Muwaffaq Foundation. As you will recall, you participated in the October 12, 2004 motions hearing before Judge Casey and you argued in opposition to the motion of NCB to be dismissed for lack of personal jurisdiction. (10/12/04 Tr. at 77-80.) During your argument, you stated: "Now, there is an entire section of the Federal, Ashton, and Burnett complaints dedicated to setting forth allegations regarding the conduct of the Muwaffaq Foundation... . All of that must be read as a whole... ." (*Id.*, at 77:8-15.) You did not draw the Court's attention to any difference among the allegations of the *Federal Insurance*, *Burnett* and *Ashton* complaints as to the Muwaffaq Foundation because there are no material differences among them. It is far too late in the jurisdictional discovery process for the *Federal Insurance* plaintiffs to try to contend that they have any basis on which to proceed separately from the *Burnett* and *Ashton* plaintiffs. Indeed, the belated attempt by the *Federal Insurance* plaintiffs to proceed separately seems to be an obvious effort to postpone the conclusion of the jurisdictional discovery process as to NCB, following NCB's July 31, 2007 application to Judge Maas to terminate further jurisdictional discovery and for leave to propound contention discovery to the plaintiffs.

NCB has consistently taken the position that jurisdictional discovery in the *Burnett* and *Ashton* lawsuits will provide the appropriate record for the Court's resolution of NCB's motion to

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
September 24, 2007
Page 3

dismiss all of the 9/11 lawsuits based on lack of personal jurisdiction. Accordingly, on March 8, 2005, Judge Casey approved NCB's stipulation with the *New York Marine, Cantor, O'Neill* and *Continental Casualty* plaintiffs to permit NCB to file a consolidated motion to dismiss those complaints at the same time that NCB renews its motion to dismiss the *Burnett* and *Ashton* complaints, following jurisdictional discovery. (MDL Dkt. # 718, ¶ 3.) NCB sought to enter into a similar stipulation with the *Federal Insurance* plaintiffs, which we proposed to you on October 19, 2005 (copy attached in Exhibit A). That same day you responded that you would review the proposed stipulation and would "get back to [us] no later than tomorrow." We did not hear further from you. However, you are hardly in a position to contend that the Federal Insurance plaintiffs are somehow surprised by NCB's position, or that the *Federal Insurance* plaintiffs are motivated solely by an interest in achieving the efficiencies of MDL consolidation.

In short, the Case Management Orders require and provide for consolidated discovery, all of the 9/11 complaints are substantively identical on issues affecting personal jurisdiction over NCB, and NCB consistently has sought to achieve an efficient and consolidated resolution of its motions to dismiss based on a single jurisdictional discovery record as developed pursuant to the orders of Judge Maas. For all of these reasons, there is no basis on which the *Federal Insurance* plaintiffs can belatedly opt-out of the jurisdictional discovery process as to NCB, or seek to evade the scope of that jurisdictional discovery as established by Judge Maas' orders.

Once you have reviewed the enclosed Objections, we would be available to meet and confer with you in Washington on either October 10 or 11.

Very truly yours,

Ronald S. Liebman

cc:    All Counsel