# EXHIBIT B
# (Part 5 of 10)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GDB)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (GBD) (S.D.N.Y.)

**THE FEDERAL INSURANCE PLAINTIFFS' SECOND SET OF JURISDICTIONAL**
**REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE**
**NATIONAL COMMERCIAL BANK**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Phone:  (215) 665-2000
August 8, 2008

**THE FEDERAL INSURANCE PLAINTIFFS' SECOND SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE NATIONAL COMMERCIAL BANK**

Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Case No. 03-CV-6978 (GBD), propound and serve on the National Commercial Bank (hereinafter "Defendant"), the following Second Set of Jurisdictional Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

**INSTRUCTIONS**

1.      In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business and the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the

2

documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

A.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

B.    The date of the document or transaction involving the information;

C.    The names of each author and any and all participants with respect to the information;

D.    The names of any and all signatories of the document, if any;

E.    The name of the document's current custodian;

F.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

G.    A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.    For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press.  In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.    If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this

action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1.   The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

2.   The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.   The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

4.   The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv)

identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5.     The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.     The term "Plaintiffs" shall refer to Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Civil Action No. 03-CV-6978 (RCC).

7.     The terms "Defendant," "You," "Your," and "NCB" shall refer to the National Commercial Bank and any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or representative acting on the National Commercial Bank's behalf.

8.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.     The term "person" is defined as any natural person or any business, legal or government entity or association.

10.    The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

11.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12.    The terms "all" and "each" shall be construed as all and each.

13. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14. The use of the singular form of any word includes the plural and vice versa.

15. The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16. The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17. The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18.   The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19.   The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20.   The term "NCB Islamic Banking Division documents" shall mean any and all documents authored, drafted, published or disseminated by NCB's Islamic Banking Division, or in the possession of NCB's Islamic Banking Division, including but not limited to, any fatwas, rulings, directives, decisions, recommendations, resolutions, memoranda, reports, studies, or analyses.

21.   The term "NCB Shariah Committee documents" shall mean any and all documents authored, drafted, published or disseminated by NCB's Shariah Committee, or in the possession of NCB's Shariah Committee, including but not limited to, any fatwas, rulings, directives, decisions, recommendations, resolutions, memoranda, reports, studies, or analyses.

22.   The term "NCB funds" shall mean any and all monies, revenues, profits and assets controlled by National Commercial Bank, including any such monies held in any financial or bank accounts established in the name of, on behalf of, or for the benefit of National Commercial Bank.

23.    The term "Internal Investigator" shall mean any NCB officer, director, trustee, employee, attorney, consultant, accountant, committee member, agent, representative, or investigator acting on NCB's behalf.

24.    The term "Abdul Rahman Establishment" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by the Abdul Rahman Establishment and/or acting on the Abdul Rahman Establishment's behalf.

25.    The term "Balsam Healthcare" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by Balsam Healthcare and/or acting on Balsam Healthcare's behalf.

26.    The term "Healthcare Technologies International" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by Healthcare Technologies International and/or acting on Healthcare Technologies International's behalf.

27.    The term "Al Murjan Group" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by the Al Muran Group and/or acting on the Al Murjan Group's behalf.

28.    The term "Gulf Hygienic Products Company" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by the Gulf Hygienic Products Company and/or acting on the Gulf Hygienic Products Company's behalf.

**THE FEDERAL INSURANCE PLAINTIFFS' SECOND SET OF JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE
<u>NATIONAL COMMERCIAL BANK</u>**

1.      Please provide any and all documents relating to National Commercial Bank ("NCB") Account No. 00132820100 (Account Holder: Abdul Rahman Establishment).  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Abdul Rahman Establishment and NCB, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

2.      Please provide any and all documents relating to NCB Account No. 13626000104 (Account Holder: Balsam Healthcare).  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Balsam Healthcare and NCB, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work

papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

3.      Please provide any and all documents relating to NCB Account No. 13566000104 (Account Holder: Healthcare Technologies International).  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Healthcare Technologies International and NCB, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

4.      Please provide any and all documents relating to all NCB accounts established in the name of, on behalf of and/or for the benefit of the Al Murjan Group (including any subsidiary, affiliate and/or branch).  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Al Murjan Group and NCB, account numbers, monthly

11

account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

5.      Please provide any and all documents relating to all NCB accounts established in the name of, on behalf of and/or for the benefit of the Gulf Hygienic Products Company.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among the Gulf Hygienic Products Company and NCB, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

6.      Please provide any and all documents relating to all NCB accounts established in the name of, on behalf of and/or for the benefit of Mohammed Hussain al Amoudi. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among al Amoudi and NCB, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**



7.      Please provide any and all documents relating to all NCB accounts established in the name of, on behalf of and/or for the benefit of Salah Idriss. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Idriss and NCB, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

8.      From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi-based regulatory body, bank, financial institution, accountant, or auditor ("Saudi Investigator"), which references or addresses any of the NCB accounts identified in Requests #1-7 above.

**ANSWER:**

9.      Please provide any and all documents relating to any audit, analysis, examination, survey, or review of the NCB accounts identified in Requests #1-7 above, conducted either by NCB and/or NCB's Audit, Zakat or Shariah Committees, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

10.     Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between NCB and Khalid bin Mahfouz, including without limitation, any and all documents relating to all positions Khalid bin Mahfouz held or holds within NCB.

**ANSWER:**


11.     From the period beginning January 1990 through the present, please provide any and all documents relating to Khalid bin Mahfouz's role in the establishment, organization, funding, oversight, supervision, management, and/or control over NCB's operations, including without limitation, selection of committee/board members or other officers, establishment and maintenance of correspondent banking relationships, internal and external auditing or due diligence, budgeting, credit and loan activities, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of NCB financial and non-monetary support to charitable designees.

**ANSWER:**


12.     From the period beginning January 1990 through the present, please provide any and all documents relating to Khalid bin Mahfouz's role in the oversight, supervision, management, and/or control over NCB's various committees, including without limitation, NCB's Zakat, Audit and Shariah Committees.

**ANSWER:**

13.     From the period beginning January 1990 through the present, please provide any and all documents relating, in whole or in part, to Khalid bin Mahfouz's involvement in the distribution of any funds through NCB to the Muwafaq Foundation, the International Islamic Relief Organization or the Saudi Joint Relief Committee for Kosovo and Chechnya.

**ANSWER:**


14.     From the period beginning January 1990 through the present, please provide any and all documents regarding the transfer of funds from any account in which Khalid bin Mahfouz held a direct or beneficial interest, or over which he held signatory authority, to the Muwafaq Foundation, the International Islamic Relief Organization or the Saudi Joint Relief Committee for Kosovo and Chechnya.

**ANSWER:**


15.     From the period beginning January 1990 through the present, please provide any and all documents relating to Khalid bin Mahfouz's involvement in determining and/or recommending which charities, humanitarian organizations, or dawah organizations should receive financial and/or non-monetary support from NCB and the purpose for such disbursements.

**ANSWER:**

16.     From the period beginning January 1990 through the present, please provide any and all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of NCB's Audit, Zakat and Shariah Committees.

**ANSWER:**

17.     From the period beginning January 1990 through the present, please provide any and all documents relating, in whole or in part, to any review, inquiry, investigation, audit, or due diligence which references or addresses NCB's relationship with any charitable or dawah organizations.

**ANSWER:**

18.     From the period beginning January 1990 through the present, please provide any and all documents relating, in whole or in part, to any review, inquiry, investigation, audit, or due diligence which references or addresses the relationship between NCB's Islamic Banking Division and any charitable or dawah organizations.

**ANSWER:**

19.     From the period beginning January 1990 through the present, please provide any and all documents relating, in whole or in part, to any review, inquiry, investigation, audit, or due diligence which references or addresses relationship between NCB's board members, NCB's

Islamic Banking Division members, or NCB's Shariah Committee members and any charitable or dawah organizations.

**ANSWER:**


20.    From the period beginning January 1990 through the present, please provide any and all NCB Islamic Banking Division and/or NCB Shariah Committee documents relating to the conflicts, crises or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, and Turkey.

**ANSWER:**


21.    From the period beginning January 1990 through the present, please provide any and all interviews, statements or speeches by members of NCB's Islamic Banking Division and/or NCB's Shariah Committee regarding the conflicts, crises or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, and Turkey.

**ANSWER:**