# EXHIBIT B
# (Part 9 of 10)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (GBD) (S.D.N.Y.)


# THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO YASSIN ABDULLAH AL KADI

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
August 8, 2008

THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO
YASSIN ABDULLAH AL KADI

Plaintiffs in Federal Insurance Co. v. al Qaida, Case No. 03-CV-6978 (GBD), propound and serve on Yassin Abdullah al Kadi (hereinafter "Defendant"), the following Jurisdictional Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.  In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.  Documents are to be produced in full; redacted documents will not constitute compliance with this request. If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.  In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.  Documents shall be produced as they are kept in the usual course of business and the documents shall be organized and labeled to correspond to the categories in this request. All documents shall be produced in the file folder, envelope or other container in which the

documents are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5. Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6. Documents attached to each other should not be separated.

7. If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8. Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9. Each of these requests shall be continuing. If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10. If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

    A.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    B.    The date of the document or transaction involving the information;

    C.    The names of each author and any and all participants with respect to the information;

    D.    The names of any and all signatories of the document, if any;

    E.    The name of the document's current custodian;

    F.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

    G.    A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11. For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary*, Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12. If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this

4

action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1. The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3. The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

4. The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv)

5

identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5. The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6. The term "Plaintiffs" shall refer to Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Civil Action No. 03-CV-6978 (RCC).

7. The terms "Defendant," "You" and "Your" shall refer to Yassin Abdullah al Kadi and any officer, director, trustee, employee, attorney, consultant, accountant, agent or representative acting on his behalf.

8. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9. The term "person" is defined as any natural person or any business, legal or government entity or association.

10. The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

11. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12. The terms "all" and "each" shall be construed as all and each.

13. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14. The use of the singular form of any word includes the plural and vice versa.

15. The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16. The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17. The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18. The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19. The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20. The term "NCB Personnel" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by National Commercial Bank and/or acting on National Commercial Bank's behalf.

21. The term "deviant activity" shall mean and refer to any activity related to or associated with deviant ideologies, deviant thinking or deviant interpretations of Islam. The terms "deviant ideologies," "deviant thinking," and "deviant interpretations of Islam" shall have the same meanings as when used by authorities of the government of the Kingdom of Saudi Arabia and/or Saudi religious authorities. See *Interior Minister Urges Imams to Confront Deviant Ideologies*, June 21, 2007, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2007News/News/NewsDetail.asp?cIndex+7240; *Mosque Council Urges Confrontation of Deviant Thinking*, September 1, 2003, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2003News/News/IslDetail.asp?cIndex=762.

22. The term "NCB funds" shall mean any and all monies, revenues, profits and assets controlled by National Commercial Bank, including any such monies held in any financial or bank accounts established in the name of, on behalf of, or for the benefit of National Commercial Bank.

## THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO
## YASSIN ABDULLAH AL KADI

1. Please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and NCB, including without limitation, any and all documents relating to all positions You held or hold within NCB.

**ANSWER:**

2. From the period beginning January 1990 through the present, please provide any and all documents relating to Your role in the organization, funding, oversight, supervision, management, and/or control over NCB's operations, including without limitation, selection of committee/board members or other officers, establishment and maintenance of correspondent banking relationships, internal and external auditing or due diligence, budgeting, credit and loan activities, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and distribution of NCB financial and non-monetary support to charitable designees.

**ANSWER:**

3. From the period beginning January 1990 through the present, please provide any and all documents relating to Your role in the oversight, supervision, management, and/or control over NCB's various committees, including without limitation, NCB's Zakat, Audit and Shariah Committees.

**ANSWER:**

10

4. From the period beginning January 1990 through the present, please provide any and all documents relating to Your supervision, management, control of, or distribution of NCB's funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from NCB and the purpose for such disbursements.

**ANSWER:**

5. From the period beginning January 1990 through the present, please provide any and all documents relating, in whole or in part, to Your involvement in the distribution of any funds through NCB to the Muwafaq Foundation, the International Islamic Relief Organization or the Saudi Joint Relief Committee for Kosovo and Chechnya.

**ANSWER:**

6. From the period beginning January 1990 through the present, please provide any and all documents regarding the transfer of funds from any account in which You held a direct or beneficial interest, or over which You held signatory authority, to the Muwafaq Foundation, the International Islamic Relief Organization or the Saudi Joint Relief Committee for Kosovo and Chechnya.

**ANSWER:**

7. From the period beginning January 1990 through the present, please provide any and all documents relating to Your involvement in determining and/or recommending which charities, humanitarian organizations, or dawah organizations should receive financial and/or non-monetary support from NCB and the purpose for such disbursements.

**ANSWER:**


8. Please provide any and all documents relating, in whole or in part, to any audit, due diligence, analysis, examination, or review of any of NCB's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by the employees of NCB and/or NCB's Audit, Zakat and Shariah Committees, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor. Such documents shall include any audit, due diligence, analysis, examination, or review ordered, conducted, supervised, or overseen by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**


9. From the period beginning January 1990 through the present, please provide all documents relating to all accounts You hold or have held at NCB, and/or all NCB accounts over which You hold or have held signatory authority.

**ANSWER:**

10. Please provide all documents relating to any and all information or notification You and/or NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with NCB was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

11. Please provide all documents relating to any and all information or notification You and/or NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with NCB may have been or was diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

12. Please provide all documents relating to any and all information or notification You and/or NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with NCB was associated with or involved in: (i) providing funds, services, assets, medical assistance or any other form of support to mujihadeen in any part of the World; or (ii) providing financial, logistical, religious, political or any other form of assistance in

13

relation to any armed jihad, regardless of whether such jihad was declared legitimate by competent religious authorities.

**ANSWER:**

13. Please provide all documents relating to any investigations or inquiries conducted by any United States Investigator, any Foreign Investigator, and/or any Saudi Investigator into financial transactions linked to accounts held by NCB.

**ANSWER:**

14. From the period beginning January 1990 through the present, please provide any and all documents relating to any internal investigation conducted by You and/or NCB, relating to any accusation that NCB, including any individual or entity employed by and/or affiliated with NCB, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

15. From the period beginning January 1990 through the present, please provide any and all documents You and/or NCB sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that NCB, or any individual or entity employed by and/or affiliated with NCB, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

16. Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any individual or entity employed by and/or affiliated with NCB, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad, including without limitation, any such individuals or entities identified in response to Requests # 10-15.

**ANSWER:**

17. From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Muwafaq Foundation (a/k/a "Blessed Relief Foundation" or "Blessed Relief"), including without limitation, any and all documents relating to all positions You held or hold within the Muwafaq Foundation.

**ANSWER:**

18. Please provide all documents illustrating, describing or otherwise relating to the Muwafaq Foundation's formation and organizational structure, the date of incorporation, the state of incorporation, the duration of its existence, any documents relating to its initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office).

**ANSWER:**

19. From the period beginning January 1990 through the present, please provide any and all documents relating to Your role in the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

20. From the period beginning January 1990 through the present, please provide any and all documents relating to Your supervision, management, control of, or distribution of the Muwafaq Foundation's funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from the Muwafaq Foundation and the purpose for such disbursements.

**ANSWER:**

21. Please provide all documents relating to the administration, governance, and long-term strategic decision-making of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office), including but not limited to, articles of incorporation, by-laws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

**ANSWER:**


22. From the period beginning January 1990 through the present, please provide any and all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of the Muwafaq Foundation.

**ANSWER:**


23. From the period beginning January 1990 through the present, please provide all documents identifying each officer, director, trustee, shareholder, board member, and/or committee member of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office).

**ANSWER:**

24. From the period beginning January 1990 through the present, please provide all documents relating to any meetings of officers, directors, trustees, shareholders, managers, boards, committees, and/or internal bodies of the Muwafaq Foundation, including without limitation, any agendas or meeting minutes.

ANSWER:

25. From the period beginning January 1990 through the present, please provide statements for any and all banking and financial accounts held by the Muwafaq Foundation.

ANSWER:

26. From the period beginning January 1990 through the present, please provide all documents relating to any and all accounts the Muwafaq Foundation holds or has held at NCB.

ANSWER:

27. From the period beginning January 1990 through the present, please provide all documents relating to any and all transfers from NCB accounts to the Muwafaq Foundation.

ANSWER:

28. From the period beginning January 1990 through the present, please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of the Muwafaq Foundation, and/or any Muwafaq Foundation accounts over which You hold or have held signatory authority.

**ANSWER:**

29. Please provide any and all documents relating, in whole or in part, to any audit, due diligence, analysis, examination, survey, or review of the Muwafaq Foundation's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by the employees of the Muwafaq Foundation, NCB and/or NCB's Audit, Zakat and Shariah Committees, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor. Such documents shall include any audit, due diligence, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

30. From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, due diligence or analysis conducted by any United States state or federal governmental entity or any United States-based