# EXHIBIT C
# (Part 5 of 5)

# EXHIBIT I

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

August 13, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

**BY FEDERAL EXPRESS**

The Honorable Frank Maas
United States Magistrate Judge
United States District Court for the
    Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

      Re:    *In re Terrorist Attacks on September 11, 2001*, MDL 03-1570 (GBD);
              *Burnett v Al Baraka*, Case No. 03 CV 9849 (S.D.N.Y.)

Dear Judge Maas:

      On behalf of Defendant, The National Commercial Bank ("NCB"), we respectfully submit this response to the August 7, 2007 letter from plaintiffs' counsel, Andrew Maloney (the "Aug. 7 Letter"), opposing the request in our July 31, 2007 letter seeking leave to propound contention discovery concerning plaintiffs' theory of personal jurisdiction over NCB. Although Mr. Maloney's letter purports to raise "two primary reasons" in opposition to contention discovery, in substance his letter raises only one— *i.e.*, that contention discovery is "premature" because plaintiffs first wish to proceed with one or more depositions of former employees of SNCB Securities Inc. ("SNCB"), a former indirect U.S. subsidiary of NCB that was dissolved in 2001. (Aug. 7 Letter, at 1.) It does not appear that plaintiffs seriously intend to pursue their alternative argument that contention discovery is "potentially prejudicial" to them because NCB "bears the burden of proof" on personal jurisdiction once "plaintiffs have made a prima facie showing of jurisdiction." *Id.*, at 3. The premise for this alternative argument is simply wrong: "The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff." *Hoffritz for Cutlery, Inc. v Amjac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *accord Ball v Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

      Despite plaintiffs' professed uncertainty about Your Honor's authority to resolve these issues (Aug. 7 Letter at 1 n.1), there is no question that the Court's March 23, 2007 Order expressly reserved decision on "NCB's application to serve contention interrogatories." (MDL Dkt. # 1964, at ¶ 5). In the March 23, 2007 Order, moreover, Your Honor also addressed, and denied, plaintiffs' request to take the deposition of former SNCB employee Virginia Pensa. *Id.*, at ¶ 3. Accordingly—

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 2

although plaintiffs now recharacterize their prior request as one to take a deposition of "Virginia Pensa and/or Tom Krohley" (Aug. 7 Letter, at 1)— plaintiffs in substance are seeking reconsideration of that March 23, 2007 Order, and of Your Honor's May 1, 2007 endorsement order, in which the Court "decline[d] to direct any further discovery (not previously ordered) related to NCB." (MDL Dkt. # 1971).

We respectfully submit that there is no basis to reconsider those prior orders, and that the Court therefore should grant NCB leave to propound contention discovery as requested in our July 31 letter. As we previously demonstrated in connection with the disputes that led to entry of the March 23, 2007 Order, plaintiffs' request to take depositions of former SNCB employees is outside the scope of the "limited jurisdictional discovery" concerning "NCB's contacts with the United States" as originally allowed by Judge Casey. *In re Terrorist Attacks I*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005); *In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005).

Specifically, after extensive production of SNCB documents to plaintiffs, there is no dispute that SNCB was dissolved in 2001, before any of the 9/11 lawsuits was filed. Accordingly, SNCB's activities are "irrelevant for purposes of the 'doing business' inquiry." *Data-Stream AS/RS Technologies, LLC v. Accuip Ltd.*, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002) ("'[T]he defendant corporation must be 'here' and therefore subject to the state's power, at the very time of the exercise of the jurisdiction itself.' ... There is no need to resolve the dispute as to whether Zimmerman was an agent of [defendant]. Zimmerman ceased his activities on June 11, 2001, almost a year before this suit was commenced. Therefore, his activities are irrelevant for purposes of the 'doing business' inquiry.")(internal citations omitted); *accord, e.g., Schenker v. Assicurazioni Generali S.p.A.*, 2002 WL 1560788, at *3, *4 (S.D.N.Y. July 15, 2002) (refusing to exercise personal jurisdiction over a foreign corporation based on the existence of an alleged U.S. subsidiary where the corporation's parent company had "sold [the subsidiary] and all other U.S. subsidiaries in October 1998-two months before the complaint in this action was filed on December 30, 1998"; holding that "[t]he only relevant inquiry is whether [the foreign defendant or its parent] had an 'agency' or 'mere department' relationship with [the alleged subsidiary] when the complaint was filed, such that any of [the alleged subsidiary's] past or present New York contacts could be attributed to [the defendant]. Because the evidence is clear that [the defendant] had sold any interest it once had in [the alleged subsidiary] as of December 30, 1998, [the alleged subsidiary's] contacts with New York cannot form a basis for personal jurisdiction over [the defendant].").

In connection with its motion to dismiss the *Burnett* and *Ashton* complaints, NCB provided the Court with authenticated copies of the Certificate of Dissolution of SNCB Securities Inc., filed with the Delaware Secretary of State on February 28, 2001. (MDL Dkt. # 416, Exh. 5, Attachment A) (copy attached hereto as Exhibit A). Since that time, NCB has produced over 60,000 pages of documents as part of "limited jurisdictional discovery," and most of those documents comprised the

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 3

operational files of SNCB. Plaintiffs' August 7 Letter does not identify any fact to dispute NCB's showing that SNCB was dissolved in 2001.[1]

Accordingly, the Court should not authorize depositions of former SNCB employees because their testimony cannot possibly lead to evidence relevant to personal jurisdiction over NCB. *See Melnick v Adelson-Melnick*, 346 F. Supp. 2d 499, 504-05 (S.D.N.Y. 2004) (in connection with a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "summary judgment practice offers guidance in the handling of such motions when they involve evidence outside the pleadings" and a plaintiff seeking jurisdictional discovery "must file a Rule 56(f) affidavit" that "must show," *inter alia*, "what facts are sought to resist the motion ... [and] why they might reasonably be expected to create a genuine issue of material fact" concerning personal jurisdiction) (emphasis added). Your Honor applied essentially this same analytic framework in denying a recent request for further jurisdictional discovery regarding an alleged U.S.-affiliate of another 9/11 litigation defendant, the Saudi Binladin Group ("SBG"). *See* Order (endorsement) of July 26, 2007 (MDL Dkt. # 1988). There, Your Honor held that, even if plaintiffs' allegations concerning the activities of the U.S. company were credited, "they do not suggest a basis for jurisdiction over SBG" and therefore denied "the request for discovery concerning Techmaster/PCM." *Id.* Likewise, here, even if plaintiffs' allegations concerning SNCB's activities were credited, they would not suggest a basis for jurisdiction over NCB because SNCB was dissolved in 2001, before the 9/11 lawsuits were filed.

Alternatively, even if SNCB's 2001 dissolution did not, by itself, dispose of the request for additional discovery, plaintiffs' assertions regarding the nature of SNCB's activities still would not suggest a basis for jurisdiction over NCB. Plaintiffs' claims against NCB allege that NCB provided banking services to help terrorist groups raise or transfer funds, or made direct donations to charities that were Al Qaeda fronts. *Burnett* 3rd Am. Complt, ¶¶ 45-46, 94-96; *Ashton* 6th Am. Complt., ¶¶ 429-433. Your Honor's June 28, 2006 Discovery Order held that the allegations of the *Burnett* complaint (which the *Ashton* complaint repeats) had "failed to make a prima facie showing of conspiracy" because they "establish neither that NCB or its customers contributed funds to organizations serving as Al Qaeda fronts with 'an awareness of the effects in New York' of such monetary contributions, nor that the co-conspirators in New York-namely, the Al Qaeda terrorists who executed the September 11 attacks-'acted at the direction or under the control or at the request

---

[1]    We are aware that SNCB filed a Surrender of Authority with the New York Department of Taxation and Finance on October 12, 2001, to which the Commissioner of Taxation and Finance consented on October 17, 2001. As a matter of New York law, these actions do not appear to mean that SNCB remained in existence through October 17, 2001, because "[w]hen a foreign corporation is dissolved ... in the jurisdiction of its incorporation," the certificate of dissolution is supposed to be delivered to the N.Y. Department of State, and thereupon has "the same effect as the filing of a certificate of a surrender of authority under section 1310." N.Y. BUS. CORP. LAW § 1305. We cannot confirm whether the Delaware Certificate of Dissolution of SNCB was filed with the New York Department of State before the Surrender of Authority was filed. Under any set of circumstances, however, the dissolution of SNCB was effective not later than the acceptance of the Surrender of Authority on October 17, 2001, nearly a year before any of the 9/11 lawsuits was filed.



Honorable Frank Maas
August 13, 2007
Page 4

of' NCB." *In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 287 (S.D.N.Y. 2006)(internal citations omitted). After extensive jurisdictional discovery, plaintiffs cannot point to any evidence to link SNCB to those already deficient allegations, or to show that SNCB was ever involved in any alleged NCB banking services or charitable donations.

"The term 'doing business' is used in reference to foreign corporations to relate to 'the ordinary business which the corporation was organized to do ... It is not the occasional contact or simple collateral activity which is included.'" *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 WL 1807148, at *4 (S.D.N.Y. Apr. 4, 2003) (internal citations omitted). After extensive jurisdictional discovery, plaintiffs can offer no evidence that SNCB was involved in the business of banking— the "ordinary business" that NCB was organized to do. Indeed, NCB was prohibited from engaging in "any new banking business or holding itself out as available to conduct new banking business; including accepting any new deposits or granting any new loans" in the United States after its New York branch closed in 1992. *See* 1992 OCC Enf. Dec. LEXIS 225 at *4 (July 2, 1992) (Enforcement Action of the Office of the Comptroller of the Currency re National Commercial Bank New York Federal Branch).[2] Consistent with the prohibition on U.S. banking business, the purpose of SNCB— as set out in the audited financial statements of SNCB[3] that plaintiffs have attached to the August 7 Letter— was to "conduct[ ] limited activities in the U.S. for or on behalf of NCB with respect to the management services performed by NCB for certain off-shore investment funds which services were previously performed by the Investment Management Division of the New York branch office of NCB." In particular, as explained in the SNCB audit, SNCB activities included: "... identifying and developing investment products for NCB to market outside the U.S., assisting NCB in evaluating fund advisors and performing some limited administrative and clerical support services for NCB on behalf of the investment funds." (Aug. 7 Letter, attachment.) Those investment-advisory activities have nothing to do with "banking business" as prohibited by the OCC orders, or the type alleged NCB banking services on which plaintiffs' claims against NCB are based. SNCB's activities therefore could not serve as a basis to assert jurisdiction over NCB, even if SNCB had not been dissolved before these lawsuits were commenced.

---

[2]     Plaintiffs questioned Mr. Smith about the OCC orders concerning NCB at his deposition. Mr. Smith also testified that, to his knowledge, NCB did not engage in the business of banking in the United States following the 1992 closure of the New York branch, and that SNCB did not engage in the business of banking on behalf of NCB. Smith Dep. Tr., at 133:11-134:9. Although we understand that credibility determinations are beyond the scope of the issues before Your Honor, there is no basis for plaintiffs' gratuitous assertion that Mr. Smith's testimony "was less than candid about the bank being forced to close under a cloud of criminal conduct and banking fraud and other irregularities." The Comptroller of the Currency Enforcement Action (cited above and marked as an exhibit to Mr. Smith's deposition) refers to the "voluntary liquidation" of NCB's NY branch, which Mr. Smith described, and describes the prohibition that the OCC thereafter imposed on NCB's ability to conduct "any new banking business" in the United States.

[3]     It is worth noting that, consistent with SNCB's corporate separation from NCB, there was an annual outside financial audit of SNCB Securities Inc. that was separate from the annual outside financial audit of NCB. The annual SNCB audit reports were produced to plaintiffs as part of jurisdictional discovery.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 5

Notwithstanding the jurisdictional irrelevance of SNCB's activities, at the March 23, 2007 hearing plaintiffs proffered an affidavit of former SNCB employee Jagan Reddy addressing SNCB's pre-dissolution activities. Plaintiffs apparently plan to rely on the Reddy affidavit to argue for the exercise of jurisdiction over NCB, although NCB has sought leave to propound contention discovery precisely to determine, *inter alia*, whether plaintiffs do indeed plan to rely upon the Reddy affidavit for that purpose.[4] If so, or if plaintiffs' responses to contention discovery otherwise makes it advisable for NCB to do so, then NCB would submit an affidavit of a more knowledgeable former SNCB employee to address the nature and scope of SNCB's operations. However, even if both plaintiffs and NCB opt to submit affidavits concerning SNCB's operations in litigating NCB's renewed motion to dismiss for lack of jurisdiction, there is no reason to authorize depositions of former SNCB employees at this time. Second Circuit law is clear that, following jurisdictional discovery, the district court is free to resolve the jurisdictional question without an evidentiary hearing, based on the pleadings and affidavits submitted in connection with the motion to dismiss. *Hoffritz for Cutlery, Inc. v. Amjac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *E-Z Bowz, L.L.C. v. Prof. Prod. Research Co.*, 2003 WL 22064259 at *4 (S.D.N.Y. Sept. 5, 2003). Consequently, the decision whether to authorize depositions of former SNCB employees should be made by the Court when it adjudicates NCB's renewed motion to dismiss for lack of jurisdiction. At that stage, the Court will have the benefit of full legal argument and the evidentiary context that will allow it to evaluate whether the Court needs to reach and resolve any disputed factual issue concerning the activities of SNCB.

In sum, plaintiffs already have received the "'fair opportunity' to conduct jurisdictional discovery" that they seek. (Aug. 7, 2007 Letter, at 2, citing *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp.2d 392, 400 (S.D.N.Y. 2002)). Plaintiffs' letter, however, fails to provide the full context of "fair opportunity" quote from *Ski Train Fire*, where the Court held that: "Such discovery must, however, be 'limited to the essentials necessary to determining the preliminary question of jurisdiction.' Plaintiffs may not conduct a fishing expedition, but must 'target[ ] information pertinent to the well established factors involved in a jurisdictional inquiry.'" *Id* (emphasis added; internal citations omitted). As shown above, the activities of SNCB in the United States could not provide a basis for jurisdiction over NCB. Accordingly, plaintiffs' request to take depositions of former SNCB employees could not be "pertinent to the well established factors involved in a jurisdictional inquiry," *id*, and should be denied, and NCB should be allowed to propound the contention discovery requests submitted for approval with our July 31 letter.

---

[4]     The Court's March 23, 2007 Order reserved decision on "plaintiffs' application to depose Jagan Mohan Reddy." (MDL Dkt. # 1964, at ¶ 5.)

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
August 13, 2007
Page 6

Respectfully submitted,

Ronald S. Liebman
*Counsel for Defendant The National Commercial Bank*

cc:     All Counsel

6

**Exhibit A**



PAGE  1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF DISSOLUTION OF "SNCB SECURITIES INC.", FILED IN THIS OFFICE ON THE TWENTY-EIGHTH DAY OF FEBRUARY, A.D. 2001, AT 9:45 O'CLOCK A.M.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

2308697   8100

030417119

AUTHENTICATION: 2492406

DATE: 06-24-03

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:45 AM 02/28/2001
   010100793 — 2308697

MAR-01-2001 09:17 FR S&S 16FL #3        TO 08334#0644100072 P.02/02

# CERTIFICATE OF DISSOLUTION
## OF
## SNCB SECURITIES INC.

SNCB Securities Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware,

DOES HEREBY CERTIFY:

FIRST:  That dissolution was authorized on October 23, 2000.

SECOND:  That dissolution has been authorized by the Board of Directors and stockholders of the corporation in accordance with the provisions of subsections (a) and (b) of section 275 of the General Corporation Law of the State of Delaware.

THIRD:  That the names and addresses of the directors and officers of SNCB Securities Inc. are as follows:

### DIRECTORS

| NAMES | ADDRESSES |
|---|---|
| Thomas M. Krohley | 129 Oldfield Road<br>Fairfield, CT 06430 |
| Fredrick O. Crawford | Wellington House, 4th Floor<br>125 Strand<br>London WC2R 0AP<br>England |
| Mansour Kaki | NCB Investment Services<br>Al Nakeel Center<br>P.O. Box 15844<br>Jeddah 21454 Saudi Arabia |

### OFFICERS

| NAMES | OFFICES | ADDRESSES |
|---|---|---|
| Thomas M. Krohley | President, Treasurer | 129 Oldfield Road<br>Fairfield, CT 06430 |
| Virginia I. Pensa | Secretary | 45 Tuder City Place, Apt. 619<br>New York, NY 10017 |

Executed on the 23rd day of February, 2001.

By _____
   Thomas M. Krohley
   President

NYDOCS01/758989.1

** TOTAL PAGE.02 **