**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————
                                                    )
In Re TERRORIST ATTACKS on            )        03 MDL 1570 (GBD)(FM)
SEPTEMBER 11, 2001                          )        ECF Case
———————————————————)

*This document relates to:*
        All Cases


## OPPOSITION OF DEFENDANT NATIONAL COMMERCIAL BANK
## TO PLAINTIFFS' MOTION FOR DECLARATORY RELIEF


Dated:  March 9, 2009                        Mitchell R. Berger (MB-4112)
            Washington, D.C.                    Alan T. Dickey
                                                        PATTON BOGGS LLP
                                                        2550 M Street, N.W.
                                                        Washington, D.C. 20037
                                                        Phone:  202-457-6000
                                                        Fax:     202-457-6315

                                                        *Attorneys for Defendant*
                                                        *The National Commercial Bank*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................................. 2

Procedural History ........................................................................................................................ 3

I.      Improperly-Obtained Classified Information Cannot Be Used "For Any Purpose"
        in this Litigation ................................................................................................................... 8

II.     Alternatively, Consideration of the In Camera Documents Would Undermine the
        Court's Contention Discovery Orders, and therefore Should Be Precluded ..................... 10

III.    Alternatively, Plaintiffs May Not Seek Affirmative Relief Based Upon Documents
        that Have Not Been Disclosed to NCB .............................................................................. 12

IV.     Alternatively, Plaintiffs Have Not Complied with Due Process Requirements for In
        Camera and Ex Parte Review .............................................................................................. 13

Conclusion .................................................................................................................................. 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) ) | 03 MDL 1570 (GBD)(FM) ECF Case |

*This document relates to:*
    All Cases

## OPPOSITION OF DEFENDANT NATIONAL COMMERCIAL BANK TO PLAINTIFFS' MOTION FOR DECLARATORY RELIEF

Defendant National Commercial Bank ("NCB") respectfully submits this opposition to Plaintiffs' Motion for Declaratory Relief[1] (MDL Dkt. ## 2157-2159) ("Motion"). The Motion asks the Court to use—and to approve plaintiffs' use of—documents unilaterally tendered by plaintiffs for *in camera* review in August 2008 (the "*In Camera* Documents") in adjudicating both (i) plaintiffs' requests for further jurisdictional discovery from NCB, and (ii) NCB's renewed and consolidated motion to dismiss for lack of personal jurisdiction. In addition to the arguments set forth below, NCB respectfully invites the Court's attention to the March 9, 2009 letter from the United States Attorney for this District (the "DOJ Letter").[2] The DOJ Letter states the Government's position that: the *In Camera* Documents are "classified and otherwise restricted"; the plaintiffs "are not, and never were, authorized to possess" those Documents; and accordingly, "[p]laintiffs should not be allowed to use or benefit from" those Documents "for any purpose" in this litigation. DOJ Letter, pp. 1, 5.

---

[1] Plaintiffs purport to seek "declaratory relief" pursuant to Fed. R. Civ. P. 57. *See* Motion (MDL Dkt. # 2157), at p. 1. As plaintiffs must know, "[b]ecause an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for declaratory judgment." *Int'l Brotherhood of Teamsters v. Eastern Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995).

[2] Copy attached to the accompanying Declaration of Mitchell R. Berger ("Berger Dec.") as Exhibit D.

## Introduction

Plaintiffs' Motion must be denied in order to vindicate vital interests—not only those of the Government in preventing misuse of classified/restricted information, but also those of the Court and NCB in upholding the contention discovery orders that plaintiffs unapologetically have violated. Moreover, plaintiffs' Motion improperly invites the Court to ignore not only the substantive law that prohibits use of undisclosed evidence as a "sword" to achieve affirmative judicial action, but also the due process constraints on the use of *in camera* and *ex parte* document review.

The DOJ Letter makes clear that the plaintiffs "should not be allowed to use or benefit from" the *In Camera* Documents "for any purpose" in this litigation because: (a) they are classified or otherwise restricted; and (b) plaintiffs' possession of those Documents was improper and the result of an "unauthorized and potentially criminal disclosure of information to [plaintiffs' counsel] Motley Rice." DOJ Letter pp. 1, 5, 7. In private litigation (*i.e.*, in which the U.S. Government is not a party), the Government's decision to suppress the use of classified and restricted government information must be upheld under the law of this Circuit. Astonishingly, despite plaintiffs' improper possession—and subsequent surrender to the Government—of the *In Camera* Documents, plaintiffs now seek to compound their offense by using the *In Camera* Documents to advance their requests for jurisdictional discovery (which are pending before Magistrate Judge Maas), and their request that the Court exercise jurisdiction over NCB. Both requests are unquestionably efforts to "use" the *In Camera* Documents in this litigation in violation of the restrictions imposed by the Government.

Vindication of the Government's position will moot any need for the Court to address the other—but equally important—objections that NCB has to plaintiffs' use of the *In Camera* Documents. As explained below, NCB independently objects to any use of the *In Camera* Documents because: (i) any such use would violate the Court's contention discovery orders; (ii) apart from those orders, a party may not obtain affirmative judicial relief—like jurisdictional

discovery, or the exercise of the Court's jurisdiction—based on documents that are not disclosed to the opposing party; and (iii) plaintiffs persistently seek to evade the due process-mandated safeguards for requesting *in camera* and *ex parte* review of documents.

## Procedural History

Following several years of jurisdictional discovery, this Court (MDL Dkt. # 2106) on July 11, 2008 granted NCB leave to file a renewed and consolidated motion to dismiss for lack of jurisdiction all of the pending MDL 1570 lawsuits in which it has appeared. NCB's original motion to dismiss was denied without prejudice to renewal following "limited jurisdictional discovery" on issues concerning "NCB's contacts with the United States" so that the Court could determine whether the exercise of personal jurisdiction over NCB would "satisfy due process requirements." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) (*"Terrorist Attacks I"*). Judge Casey held that, once "the parties have completed their personal jurisdiction discovery…this Court [would] determine[ ] whether it has personal jurisdiction over NCB," which he found was a "straightforward" issue.[3] *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572, 575 (S.D.N.Y. 2005) (*"Terrorist Attacks II"*) (on reconsideration).

Jurisdictional discovery issues as to NCB were referred to Magistrate Judge Maas for supervision in April 2006. Pursuant to several discovery orders entered by Judge Maas: (i) NCB produced documents concerning its U.S. contacts; (ii) plaintiffs took the deposition of a former NCB officer; (iii) NCB obtained confirmation from its regulator, the Saudi Arabian Monetary Agency ("SAMA") that—contrary to plaintiffs' allegations—NCB had not been audited, examined or investigated for alleged involvement in the financing of terrorism; and (iv) Judge Maas conducted

---

[3] NCB's original motion also challenged (i) subject matter jurisdiction, because NCB is entitled to immunity from suit under the Foreign Sovereign Immunities Act, and (ii) the legal sufficiency of plaintiffs' claims. Judge Casey denied without prejudice those other aspects of NCB's original motion to dismiss. *Terrorist Attacks I*, 349 F. Supp. 2d at 792, 836. On reconsideration, Judge Casey postponed "[f]urther inquiry into NCB's status as a foreign sovereign," if necessary, until after resolution of the personal jurisdiction issue. *Terrorist Attacks II*, 392 F. Supp. 2d at 575.

an *in camera* review of a SAMA audit report on NCB and found "nothing...which relates to the issues presently pending before the Court concerning NCB." MDL Dkt. # 1971.

In May 2007, Magistrate Judge Maas expressly "decline[d] to direct any further discovery (not previously ordered) related to NCB." MDL Dkt. # 1971. In September 2007, Magistrate Judge Maas rejected another request by plaintiffs for further jurisdictional discovery, finding that requested additional depositions "would be a fishing expedition." MDL Dkt. # 2038. Simultaneously, he required plaintiffs to provide contention discovery, which sought disclosure of all of plaintiffs' bases for asserting personal jurisdiction over NCB. MDL Dkt. # 2037. In December 2007, this Court affirmed those two orders, bringing jurisdictional discovery as to NCB to a close. MDL Dkt. # 2057. Thereafter, due to deficiencies in plaintiffs' contention discovery responses, Magistrate Judge Maas held that "NCB is entitled to meaningful answers to its contention interrogatories" and required plaintiffs to serve revised answers (MDL Dkt. # 2060), which they did on February 1, 2008.

Following receipt of plaintiffs' contention discovery responses, NCB informed the Court that "NCB is ready to renew its motion to dismiss focusing upon plaintiffs' jurisdictional theories as fully stated in their contention discovery responses."[4] NCB accordingly sought leave to file a renewed and consolidated motion to dismiss for lack of personal jurisdiction all of the *Terrorist Attacks* lawsuits in which NCB had appeared. *Id.* All plaintiffs opposed NCB's application for leave to renew its motion to dismiss, contending that they required additional jurisdictional discovery. In reply, NCB contended that there was no factual or legal basis for further jurisdictional discovery.[5] This Court thereafter granted NCB's application for leave to file its renewed and consolidated motion to dismiss for lack of personal jurisdiction, and further provided: "To the extent that plaintiffs believe that additional jurisdictional discovery is necessary prior to filing a response, a

---

[4] NCB Ltr. to Judge Daniels (April 21, 2008) (Berger Dec. Exh. A).

[5] NCB Ltr. to Judge Daniels (April 29, 2008) (Berger Dec. Exh. B).

specific discovery request and a request for a stay or extension of time in which to respond to the motion should be made to the magistrate judge." MDL Dkt. #2106 (Order).

On July 22, 2008, NCB filed its renewed and consolidated motion to dismiss for lack of personal jurisdiction. MDL Dkt. ##2110-2115. NCB explained that its renewed motion focused on "plaintiffs' jurisdictional theories as to NCB [that] have now been fully stated in their contention interrogatory answers." MDL Dkt. #2111, at p. 3. By applications dated August 15, 2008, plaintiffs sought what they characterized as "targeted" further jurisdictional discovery, but which in fact comprised: 92 additional document requests to NCB; another 128 document requests to two other, separately represented defendants; and requests to take eight depositions of NCB, other defendants and non-parties.[6] NCB submitted a detailed opposition to plaintiffs' requests for further jurisdictional discovery by letter to Magistrate Judge Maas dated August 21, 2008.[7]

Thereafter—without advance court approval, but supposedly "in further support" of their jurisdictional discovery requests—plaintiffs' counsel on August 25, 2008[8] submitted the *In Camera* Documents to Magistrate Judge Maas. Plaintiffs' counsel argued that those Documents "provide ample support for why the requested additional discovery is proper and essential." *Id.* Plaintiffs' counsel did not provide a copy of the *In Camera* Documents to NCB, claiming that the Documents were "sensitive...and could bear information that is in some manner classified or otherwise inappropriate for dissemination to the public or to potential targets of governmental investigations." *Id.*

NCB immediately objected to plaintiffs' submission of these Documents for several reasons: (i) the Documents had not previously been disclosed to NCB, even though plaintiffs contended that

---

[6] *See* Declaration of Robert T. Haefle (MDL Dkt. #2159) ("Haefele Dec."), Exhs. A-C.

[7] Berger Dec. Exh. C.

[8] Haefele Dec., Exh. D.

5

they were material to jurisdictional issues, which made them subject to the disclosure requirements of the Court's contention discovery orders; (ii) substantive law in any event prohibits plaintiffs from seeking affirmative judicial relief based on undisclosed documents; (iii) plaintiffs' had not complied with due process requirements for obtaining advance court approval to conduct an *in camera* and *ex parte* document review; and (iv) plaintiffs had not explained "why they might be in possession of classified information."[9]

Plaintiffs conceded that they had obtained possession of the *In Camera* Documents before providing their contention discovery responses, and that they had not disclosed those Documents (or information about their existence) in their responses.[10]  *See infra* at 11.  Responding to NCB's point that private parties should not be in possession of classified information, plaintiffs' counsel also submitted a set of the *In Camera* Documents to the U.S. Attorney for this District.[11]  The U.S. Attorney that same day notified Magistrate Judge Maas that "a preliminary review of the submitted materials indicates that many of the documents are government documents that bear classification markings, and accordingly they should be treated as classified national security information."[12]

Thereafter, Magistrate Judge Maas entered an Order dated September 5, 2008, which stayed plaintiffs' date for responding to NCB's renewed motion to dismiss for lack of personal jurisdiction in order "[t]o afford the Court additional time to consider the plaintiffs' discovery motions... ."  MDL Dkt. #2126.  Plaintiffs' requests to take additional jurisdictional discovery from NCB remain pending before Magistrate Judge Maas.

---

[9] *See* Haefele Dec., Exh. G; *see also id.*, Exh. I.

[10] Haefele Dec., Exh. H, at p. 1.

[11] *See* Haefele Dec., Exh. E.

[12] *See* Haefele Dec., Exh. F.

The U.S. Government subsequently conducted a detailed classification review of the *In Camera* Documents, as reported in the DOJ Letter. The Government has concluded that the *In Camera* Documents are classified, otherwise restricted, or should be treated as classified pending completion of the Government's classification review. Apparently, the Government also previously demanded that plaintiffs' counsel surrender to government agents their copies of the *In Camera* Documents, and plaintiffs' counsel apparently complied with that demand. However, seeking to avoid the consequence of surrendering physical possession of those Documents, plaintiffs[13] simultaneously made the pending Motion, which seeks to use the *In Camera* Documents as basis for obtaining further jurisdictional discovery, and for opposing NCB's renewed motion to dismiss.

Plaintiffs' Motion is of obvious interest to the Government. In the DOJ Letter opposing plaintiffs' Motion, the Government has informed the Court that: the *In Camera* Documents are "classified and otherwise restricted"; the plaintiffs "are not, and never were, authorized to possess" those Documents; plaintiffs' possession of those Documents resulted from an "unauthorized and potentially criminal disclosure of information to [plaintiffs' counsel] Motley Rice"; and accordingly, "[p]laintiffs should not be allowed to use or benefit from" those Documents "for any purpose" in this litigation. DOJ Letter, at pp. 1, 5, 7.

As we explain below, the Government's position is entitled to judicial acceptance under the law of this Circuit. If the Court vindicates the Government's position, then plaintiffs' Motion must be denied—and the *In Camera* Documents must be suppressed—without reaching NCB's independent objections. Although they are based on other grounds, NCB's objections are no less

---

[13] Improbably, plaintiffs' counsel claim that "all Plaintiffs rely upon the August 25 documents [the *In Camera* Documents] in support of their request for additional discovery" but that "counsel for the *Burnett* plaintiffs have not shared the documents with the other plaintiffs' counsel." Motion, Mem. (MDL Dkt. #2158) at 3 n.2. It is of course a mystery how any counsel can "rely" on documents whose contents they ostensibly do not know. *Burnett* plaintiffs' counsel should be clear about whether they have discussed (or characterized or summarized) the contents of the *In Camera* Documents with other plaintiffs' counsel, as any such action implicates the Government's restriction on the use of the Documents "for any purpose" in this litigation.

compelling than the Government's objection. They seek to vindicate the authority of the Court's contention discovery orders and to ensure compliance not only with substantive law prohibitions on the use of undisclosed evidence, but also with due process requirements constraining the use of *in camera* and *ex parte* document review.

## I.   Improperly-Obtained Classified Information Cannot Be Used "For Any Purpose" in this Litigation.

Plaintiffs cannot and do not challenge the Government's conclusion that the *In Camera* Documents are "classified and otherwise restricted" national security information. *See Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991) (private parties have no control over the assertion of a state secrets privilege). Despite the Government's determination that there was an "unauthorized and potentially criminal disclosure" of the Documents to Motley Rice (DOJ Letter, p. 7), plaintiffs nonetheless improperly seek to make affirmative use of the *In Camera* Documents in addressing key jurisdictional issues. Plaintiffs' Motion thus unmistakably hopes to evade the Government's decision that the "[p]laintiffs should not be allowed to use or benefit from" those Documents "for any purpose" in this litigation. DOJ Letter, pp. 1, 5. However, the decision regarding use of the *In Camera* Documents in litigation like this, in which the U.S. Government is not a party, rests solely with the Government itself.

For more than half a century, the Second Circuit has recognized that "we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies <u>between third persons</u>... ." *United States v. Andolschek*, 142 F.2d 503, 506 (2d Cir. 1944) (L. Hand, J.) (emphasis added). That rule applies in these MDL 1570 lawsuits because this litigation involves disputes "between third persons." The Government does not have a similar scope of authority "in a criminal prosecution" or in other litigation in which the Government is a party, and where courts accordingly play a broader role in regulating the use of government information. *Id.*

Even if the *In Camera* Documents were not classified or restricted government information, the Court still would have "inherent authority" to preclude their use in this civil litigation because the Documents were improperly obtained by the plaintiffs "outside the discovery process." *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (Francis, U.S.M.J.) (precluding use in civil litigation of "wrongfully obtained" documents); *accord Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008) (precluding use in civil litigation of documents obtained in violation of the federal Stored Communications Act).

The DOJ Letter leaves no room to doubt that disclosure of the *In Camera* Documents to plaintiffs resulted from an "unauthorized and potentially criminal" act, and that plaintiffs' counsel has no lawful right to possess, "use or benefit from" the Documents. DOJ Letter at 1, 5, 7. Plaintiffs' Motion studiously avoids any effort to explain the questionable circumstances under which plaintiffs' counsel acquired classified government documents. It is telling, moreover, that plaintiffs' counsel acquiesced in the Government's demand to surrender the Documents to government agents, abandoning any pretense that plaintiffs lawfully possessed them. The *In Camera* Documents therefore must be treated as having been "wrongfully obtained" by plaintiffs' counsel outside the discovery process. *See Fayemi*, 174 F.R.D. at 326.

Courts have "inherent authority" to prevent the use in civil litigation of "improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct." *Fayemi*, 174 F.R.D. at 324. Courts use that inherent authority to protect, above all else, "the integrity of the judicial process." *Pure Power*, 587 F. Supp. 2d at 571. Generally, an order precluding the use of improperly acquired information is a reasonable way not only to protect the integrity of the judicial process, but also to "prevent the plaintiff from benefitting from his wrongdoing and it is sufficient to ameliorate any prejudice to the defendants." *Fayemi*, 174 F.R.D. at 326. Accordingly, even if the Government had not on its own

insisted on suppression of the *In Camera* Documents for all purposes, it would be essential for the Court to exercise its inherent authority to prohibit use of the improperly-obtained *In Camera* Documents for any purpose in this litigation.

## II. Alternatively, Consideration of the *In Camera* Documents Would Undermine the Court's Contention Discovery Orders, and therefore Should Be Precluded.

If the Court vindicates the Government's position, then it need not consider NCB's independent objections, which are nonetheless weighty because they insist upon respect for this Court's contention discovery orders. Plaintiffs violated those orders by failing to disclose *In Camera* Documents (or any information about their existence) to the Court or to NCB during the contention discovery process, even though plaintiffs now claim that those Documents are "highly relevant" to plaintiffs' jurisdictional contentions. Motion (MDL Dkt. #2158), at pp. 4, 7. Independent of the Court's authority to preclude use of wrongfully obtained information, the Court is empowered to preclude plaintiffs' use of documents that were withheld in violation of discovery orders and rules. *See, e.g., Pal v. New York University*, 2008 WL 2627614, at *5-*6 (S.D.N.Y. June 30, 2008) (Maas, U.S.M.J); *accord Schiller v. City of New York*, 2008 WL 4525341 (S.D.N.Y. Oct. 9, 2008) (Francis, U.S.M.J.).

In two contention discovery orders entered in 2007, Magistrate Judge Maas authorized—and then compelled full compliance with—NCB's contention discovery requests for plaintiffs to disclose all facts and documents supporting any of their theories of general or specific jurisdiction over NCB. MDL Dkt. #2037 (order); MDL Dkt. #2060 (order); *see supra* at 4. Magistrate Judge Maas recognized that NCB was entitled to full disclosure of plaintiffs' jurisdictional theories as to NCB <u>before</u> NCB renewed its motion to dismiss for lack of personal jurisdiction. *Id.* This Court affirmed the magistrate's order requiring plaintiffs to provide full contention discovery concerning their jurisdictional theories and supporting facts and documents. MDL Dkt. #2057 (order).

Plaintiffs now unabashedly tell the Court that, in their view, these undisclosed *In Camera* Documents are "highly relevant" to one or more of their theories of jurisdiction over NCB. MDL Dkt. #2158, at pp. 4, 7. Yet, plaintiffs consciously decided not to disclose to the Court or to NCB that they were in possession of the *In Camera* Documents when they provided their contention discovery document production and interrogatory responses. Plaintiffs' August 27, 2008 letter to Magistrate Judge Maas concerning the *In Camera* Documents unmistakably concedes this misconduct, and lamely attempts to excuse it, stating: "[T]hese documents represent an example where the Plaintiffs, at the time [of contention discovery], anticipated using the documents to craft discovery requests, rather than using the sensitive documents, themselves. So for the very reason the Plaintiffs have been hesitant to produce them now, the documents would not have been produced previously."[14]

In other words, plaintiffs intentionally withheld the *In Camera* Documents (and information about them) from the Court and from NCB during the contention discovery process. *See also* DOJ Letter, at p. 2 n.* (same). At no time did Plaintiffs ask Magistrate Judge Maas to excuse them from producing responsive contention discovery documents on the ground that they might contain classified information. Nor did plaintiffs' boilerplate objections to NCB's contention discovery requests disclose that Plaintiffs possessed, but refused to produce, responsive but classified documents. Instead, when NCB pointed out deficiencies in plaintiffs' original (November 2007) contention discovery responses, Magistrate Judge Maas ordered plaintiffs to provide full and "meaningful" responses by February 1, 2008. MDL Dkt. #2060 (Order). Until August 25, 2008, when plaintiffs tendered the *In Camera* Documents to the Court, NCB operated on the premise that plaintiffs had complied with the Court's contention discovery orders.

---

[14] Haefele Dec., Exh. H, at p.1 (emphasis added).

NCB was entitled to full disclosure of plaintiffs' jurisdictional theories and supporting facts before NCB renewed its motion to dismiss for lack of personal jurisdiction. Believing that plaintiffs had complied with their contention discovery obligations, NCB sought and obtained this Court's permission to renew its motion to dismiss, and NCB thereafter targeted its renewed motion on the disclosed basis for plaintiffs' jurisdictional theories. *See supra* at 4-5. Since that time, the Second Circuit's decision in *In re Terrorist Attacks*, 538 F.3d 71 (2d Cir. 2008), has only further foreclosed plaintiffs' theories of specific jurisdiction concerning NCB, as explained in the briefs filed by the Defendants' Executive Committee. *See* MDL Dkt. # 2140, at pp. 12-13, 28-30; # 2141-2, at p. 8; and # 2146, at pp. 1-2, 7-18.

It would substantially prejudice NCB—and undermine the authority of the Court's contention discovery orders—if the Court were now to allow plaintiffs to rely on the *In Camera* Documents when plaintiffs purposefully hid them during the contention discovery process. Whatever the Documents may be, by withholding them from their contention discovery responses plaintiffs simply engaged in "'sandbagging' of an opposing party with new evidence," which the discovery rules prohibit. *Pal*, 2008 WL 2627614, at *3. For this independent reason, the Court should preclude plaintiffs from using the *In Camera* Documents to support either their request for additional jurisdictional discovery, or their opposition to NCB's renewed motion to dismiss for lack of personal jurisdiction, or for any other purpose in this litigation.

## III.   Alternatively, Plaintiffs May Not Seek Affirmative Relief Based Upon Documents that Have Not Been Disclosed to NCB.

Even if plaintiffs had been forthright in their contention discovery responses, other principles of substantive law still would prohibit plaintiffs from making affirmative use of withheld documents either to seek further jurisdictional discovery, or to argue for the exercise of the Court's jurisdiction over NCB. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 68 (E.D.N.Y. 2007) ("information and documents may not be used by the plaintiffs as a sword and, to the extent they

seek protection from disclosure, as a shield"); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 237-38 (E.D.N.Y. 2007) (same).

The *Weiss* and *Strauss* decisions are particularly instructive here. There, plaintiffs suing banks under the Anti-Terrorism Act sought to withhold from the banks documents that they claimed to have obtained from "government officials and/or sources who have assisted and provided plaintiffs with information regarding terrorist networks," on which plaintiffs relied "to allege that [the bank] has a connection to the attacks that caused plaintiffs' injuries." *Weiss*, 242 F.R.D. at 68; *see also Strauss*, 242 F.R.D. at 237 (same). In both instances, the court found that the plaintiffs had not provided a sufficient justification for withholding these documents from the defendant banks. *Id.* Under the sword-and-shield rule recognized by the *Weiss* and *Strauss* courts, a bank facing claims like those made here against NCB, is "entitled to have access to the information and documents upon which plaintiffs rely to establish the chain of parties who allegedly received and used [the bank's customer's] funds to cause the plaintiffs' injuries." *Weiss*, 242 F.R.D. at 68.

When a plaintiff fails to disclose relevant documents to the defendant, it is appropriate to preclude the plaintiff from relying on those documents "in any manner." *See, e.g., Oceans Cuisine, Ltd. v. Fishery Products Intern., Inc.*, 2006 WL 1071578, at *6-*7 (E.D.N.Y. Apr. 21, 2006) (affirming magistrate judge's order providing date certain by which plaintiff must produce documents and holding that "Plaintiff may not rely in any manner on any documents" not produced by then). Because the *In Camera* Documents are classified/restricted and may not be produced or used in this litigation, the Court should not allow the plaintiffs to rely on those Documents to seek additional discovery, or the exercise of jurisdiction over NCB, or any other judicial action.

## IV.   Alternatively, Plaintiffs Have Not Complied with Due Process Requirements for *In Camera* and *Ex Parte* Review.

All of the foregoing principles prohibit use of the *In Camera* Documents for any substantive purpose in this litigation. Separately, however, plaintiffs' Motion fails to comply with the due

process requirements that must be satisfied before the Court could undertake *in camera* and *ex parte* consideration of Documents in connection with the Motion.

As noted earlier, plaintiffs unilaterally and without court authorization simply submitted the *In Camera* Documents to the Court on August 25, 2008. Due process is violated "when an attempt is made by one party to submit matters *in camera* without advance notice to the opposing party that *in camera* review will be sought." *Parisi v. Rochester Cardiothoracic Assoc.*, 159 F.R.D. 406, 407 (W.D.N.Y. 1995). As the *Parisi* court explained:

> The properly limited use of *in camera* review typically occurs during the course of litigation and *requires adversarial safeguards.* Initially, a party seeking an *in camera* review of any material must give appropriate notice of such a request to the opposing party as well as the court. Once the purpose for the *in camera* review is explained, the opposing party has an opportunity to respond, and the court may then either accept or reject the review proposal.

*Id.* (quoting *United States v. Hall*, 854 F.2d 1036, 1042 (7th Cir. 1988)) (emphasis added in *Parisi*). When, as here, a party does not follow those procedures, the Court should reject the proffered *ex parte* submission. *Id.* at 408.

Seeking to evade these due process mandates, plaintiffs rely on decisions from criminal cases that all involve Fourth Amendment requests to suppress national security electronic surveillance. *See* Motion at 7-8 (citing cases). However, a Fourth Amendment analysis of electronic surveillance involves "predominantly legal questions" that turn on the simple issue of whether the surveillance was conducted for "foreign intelligence purposes." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 166 (2d Cir. 2008) (internal quotations omitted). As the Second Circuit has noted, in the context of criminal case Fourth Amendment disputes, given "the imperatives of national security," courts need not disclose the fruits of that surveillance to the defendant in order to effectively resolve those limited questions. *Id.* That situation differs dramatically from plaintiffs' effort here to use classified government information to have the Court make substantive determinations about jurisdictional questions in private litigation.

In civil lawsuits like the MDL 1570 litigation, the overriding concern is due process, which generally limits a court's ability to adjudicate claims based upon evidence that is not disclosed to all parties. Even in FOIA cases, where the Government is a party (unlike here) and seeks to withhold classified information, the Government is required to submit affidavits and indices for the public record that provide as much information as possible, and justify the classification decision. *See Weberman v. National Security Agency*, 668 F.2d 676 (2d Cir. 1982). In *Weberman*, a FOIA case, the government submitted public affidavits explaining the national security sensitivity of requested documents and information, and offered a further affidavit for *in camera* review if the court desired. *Id.* at 678. One of the publicly-filed affidavits "explained that [the affiant] had disclosed as much as possible without violating national security." *Id.* at 678; *see also Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1210, 1212 (8th Cir. 2008) ("*[I]n camera* inspection should be limited as it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court"; a *Vaughn* index of FOIA-withheld documents provides a "detailed explanation and justification...[which] should enable a district court to conduct its review in open court, preserving the adversarial nature of the process and avoiding undesirable, *in camera* line-by-line analysis."). The Second Circuit's decision in *Andolschek* obviates the need for the Government to make such a showing here because the Government is not a party.

Plaintiffs also mischaracterize what they call the "precedent" for *in camera* review of documents in this litigation. Motion (MDL Dkt. # 2158), at pp. 7-8. The facts are that, in March 2007—in an order that plaintiffs did not appeal to this Court (MDL Dkt. # 1964)—Magistrate Judge Maas decided on his own motion to review *in camera* a single document in NCB's possession (a 1998 audit report concerning NCB). Magistrate Judge Maas subsequently found that the audit report contained "nothing ... which relates to issues presently pending before the Court concerning NCB." MDL Dkt. # 1971 (order). NCB never sought to make affirmative use in this litigation of that audit

15

report—quite unlike plaintiffs' effort to make affirmative use of the *In Camera* Documents. To the contrary, it was the plaintiffs who sought to force NCB to produce the audit report in discovery over NCB's subsequently-validated objection that the report was entirely irrelevant to plaintiffs' claims.

Even so, Magistrate Judge Maas did not undertake an *in camera* review of the audit report until after he had reviewed full briefing and conducted a hearing, during which the parties addressed the ostensible relevance of the audit report and the Saudi law provisions that required NCB to maintain the confidentiality of the audit report. *See* MDL Dkt. # 1964, ¶ 1.a.  *In camera* review may not take place without these types of advance procedural safeguards. *See Linde v. Arab Bank, PLC*, 2009 WL 485563, at *7 (E.D.N.Y. Feb. 26, 2009).  No similar procedural safeguards were followed here before plaintiffs simply delivered the *In Camera* Documents to the Court.

Just as important, the sole purpose of Magistrate Judge Maas' *in camera* review was to determine whether the audit report was sufficiently important to require its disclosure to plaintiffs— not to take affirmative judicial action based on secret evidence. *See* MDL Dkt. # 1971 (order). Courts regularly use *in camera* review for such negative (or ruling-out) purposes, *i.e.*, to determine that evidence is "utterly collateral to the central issue in th[e] case" and need not be disclosed. *Surles v. Air France*, 2001 WL 815522, at *2 (S.D.N.Y. July 19, 2001) (Maas, U.S.M.J.). By contrast, plaintiffs contend exactly the opposite here, *i.e.*, that the *In Camera* Documents are "highly relevant" to their jurisdictional claims, and should be used for the affirmative purposes of ordering further discovery and exercising the Court's jurisdiction. *In camera* review for such affirmative purposes is improper because—as the court pointed out in *Surles*—the secret adjudication of claims went out with the abolition of the Star Chamber. 2001 WL 815522, at *2 n.4.

Plaintiffs simply cannot justify any of their actions. They obtained classified and restricted U.S. Government documents as a result of an "unauthorized and potentially criminal disclosure"

and have made no effort to explain the dubious circumstances under which they acquired them They seek to defy the Government's insistence that "[p]laintiffs should not be allowed to use or benefit from" these Documents "for any purpose" in this civil litigation between third parties.  They improperly withheld the Documents and all information about their existence from the Court and from NCB during contention discovery, even though those Documents unquestionably were within the scope of the contention discovery orders.  By doing so, plaintiffs have attempted to sandbag NCB with secret and untimely new jurisdictional contentions, and thereby subvert the orderly adjudication of NCB's renewed motion to dismiss.  Plaintiffs also improperly seek to use the *In Camera* Documents both as a sword and a shield—asking for affirmative judicial relief based upon those Documents, while attempting to hide them from NCB.  And, plaintiffs have violated important due process safeguards by depositing the Documents with the Court for *in camera* and *ex parte* review without advance court authorization.  In the light of all of plaintiffs' defiance and defaults, it can only be considered highly ironic for plaintiffs to insist that their Motion strives to produce "confidence" in the adjudicatory process.  Motion (MDL Dkt. # 2158), at p. 9.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Declaratory Relief should be denied, and the Court should preclude the use of the *In Camera* Documents for any purpose in this litigation.

Respectfully submitted,

Dated: March 9, 2009
      Washington, D.C.

Mitchell R. Berger (MB-4112)
Alan T. Dickey
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*