# Exhibit B

**PATTON BOGGS LLP**
**ATTORNEYS AT LAW**

2550 M Street, NW
Washington, DC 20037
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

April 29, 2008

Mitchell R. Berger
202-457-5601
mberger@pattonboggs.com

Hon. George B. Daniels
United States District Judge
United States District Court
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
Room 630
New York, NY  10007-1312

       Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)
             This document relates to: All Cases

Dear Judge Daniels:

      In three submissions exceeding 150 pages in length[1], seven groups of plaintiffs are staging what amounts to a filibuster to prevent NCB from moving forward with Judge Casey's 2005 mandate that "the Court...determine[ ] whether it has personal jurisdiction over NCB" following a period of "limited jurisdictional discovery." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572, 575 (S.D.N.Y. 2005) ("*Terrorist Attacks II*") (on reconsideration). In demanding further jurisdictional discovery from NCB, the plaintiffs ignore this Circuit's precedent that "it is not the rule" for "'federal courts to conduct substantial jurisdictional discovery over foreign corporations.'" *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 413 (S.D.N.Y. 2002) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

      Magistrate Judge Maas carefully supervised jurisdictional discovery as to NCB between 2006 and 2007. He brought that process to a close with his May 2007 order declining to order further jurisdictional discovery from NCB (MDL Dkt. # 1971) and his September 2007 order finding that requested additional depositions "would be a fishing expedition." MDL Dkt. # 2038. He also held that plaintiffs have the burden of proof on personal jurisdiction, and that this

---

[1]    Ltr. from Kreindler & Kreindler dated April 25, 2008 on behalf of the *Ashton* and *Burnett* plaintiffs ("*Ashton* Ltr."); Ltr. from Cozen O'Connor dated April 25, 2008 on behalf of the *Federal Insurance* plaintiffs ("*Fed. Ins.* Ltr."); and Ltr. from Law Offices of Jerry S. Goldman dated April 24, 2008 on behalf of the *O'Neill, Cantor-Port Authority, Continental*, and *New York Marine* plaintiffs ("*O'Neill* Ltr.").


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

April 29, 2008
Page 2

litigation had reached the "stage" where "NCB is entitled to answers to its contention interrogatories" concerning plaintiffs' theories of personal jurisdiction. MDL Dkt. # 2037. This Court affirmed Magistrate Judge Maas' September 2007 orders (MDL Dkt. # 2057), and the plaintiffs did not appeal any of his earlier discovery orders.

Despite those orders, both the *Ashton/Burnett* and the *Federal Insurance* plaintiffs propounded additional discovery requests to NCB without obtaining authorization either from this Court or from Magistrate Judge Maas. Those requests concern three subjects: (1) NCB's supposed involvement in the aviation business in the United States; (2) a trust account allegedly holding the sale proceeds of Osama Bin Laden's shares in the Saudi Binladin Group ("SBG"); and (3) NCB's alleged relationship with a defunct foreign charity called the Muwafaq Foundation. NCB served timely Rule 34 Objections to those unauthorized discovery requests, although the plaintiffs have failed to provide the Court with a copy of NCB's Objections.[2] We submitted a December 26, 2007 letter to Your Honor (copy attached as Exhibit C) when the *Ashton/Burnett* plaintiffs sought to compel discovery on the first two of these three subjects. The *Federal Insurance* plaintiffs did **not** seek to compel discovery on the third of those subjects. We informed the Court of the status of the plaintiffs' unauthorized discovery efforts when we sought leave to file NCB's consolidated post-discovery motion to dismiss for lack of personal jurisdiction.[3]

Bypassing Magistrate Judge Maas, all seven sets of plaintiffs now collectively ask this Court to require further jurisdictional discovery from NCB on the three subjects identified above. For the reasons explained more fully below, NCB respectfully submits that this Court should: either (i) sustain NCB's Rule 34 Objections to plaintiffs' discovery requests based on Magistrate Judge Maas' orders and on the other grounds set forth in those Objections, and allow NCB to proceed with its post-discovery consolidated motion to dismiss for lack of personal jurisdiction; or (ii) refer these discovery disputes to Magistrate Judge Maas for determination.

Jurisdictional "discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional basis." *(888) Justice, Inc. v. Just Enters., Inc.*, 2007 WL 2398504, at *3 n.4 (S.D.N.Y. Aug. 22, 2007) (Daniels, J.) (denying application for additional jurisdictional discovery). Further jurisdictional discovery from NCB would be a fishing expedition for the following reasons, and on the grounds that are more fully stated both in NCB's Rule 34 Objections to plaintiffs' discovery requests (Exhibits A-B), and in our letter of December 26, 2007 (Exhibit C):

---

[2]   Accordingly, attached hereto are a copy of: Objections of the National Commercial Bank to [*Federal Insurance*] Plaintiffs' First Set of Jurisdictional Requests for Production of Documents (September 24, 2007) (Exhibit A hereto); and Objections of the National Commercial Bank to [*Ashton* and *Burnett*] Plaintiffs' Supplemental Requests for Production of Documents (November 13, 2007) (Exhibit B hereto) (confidential information redacted).

[3]   *See* Ltr. from Patton Boggs dated April 21, 2008 on behalf of NCB ("NCB 4/21 Ltr."), at pp. 3-4 & nn. 3-4.



April 29, 2008
Page 3

- **Coordination/Delay of Discovery.** The *Ashton*, *Burnett*, and *Federal Insurance* complaints make allegations against NCB that are substantively identical on all issues for which those plaintiffs have sought personal jurisdiction discovery. *See* Chart attached as Exhibit D.[4]

  - Case Management Orders Nos. 2 and 3 require the parties to coordinate discovery on issues that are "common" to their cases. *See* NCB 4/21 Ltr. at p. 4 n.4, citing MDL Dkt. # 247, ¶ 20 and MDL Dkt. # 248, ¶ 9. The *Federal Insurance* plaintiffs did not ask to be excused from that obligation.

  - Instead, counsel for the *Federal Insurance* plaintiffs attended all hearings on *Ashton/Burnett* jurisdictional discovery from NCB, and they participated in the review of all jurisdictional discovery documents produced by NCB.

  - The *Federal Insurance* plaintiffs sought to proceed with independent jurisdictional discovery only after Magistrate Judge Maas had rejected the *Ashton/Burnett* plaintiffs' requests for further jurisdictional discovery.

  - After NCB served Rule 34 Objections to their unauthorized discovery requests, the *Federal Insurance* plaintiffs took no action for <u>seven months</u>. Unlike the *Ashton/Burnett* plaintiffs, who wrote to this Court concerning their discovery dispute with NCB in December 2007, the *Federal Insurance* plaintiffs did not bring their discovery requests to the attention either of this Court or Magistrate Judge Maas until <u>after</u> NCB sought leave to file its post-discovery motion to dismiss. Either the *Federal Insurance* plaintiffs do not care about their discovery requests, or their delay was "tactically inspired," but in either scenario the Court is empowered to reject their belated discovery requests.[5]

- **Aviation Business.** Although plaintiffs have tendered documents describing multiple companies and individuals supposedly involved in the aviation business (some in the United States), plaintiffs have not shown that NCB controlled those companies or employed those individuals, or that any of those companies acted as an agent or mere department of NCB. *Compare* Fawcett Aff. (submitted with *Ashton* Ltr.) *with The Accessory Corp. v. Spotless Plastics Pty. Ltd.*, 2007 WL 2584963, at *5 & n. 17 (S.D.N.Y. Sept. 7, 2007) (denying jurisdictional

---

[4] Recognizing that their complaints also are substantively the same, the *O'Neill*, *Cantor-Port Authority*, *Continental*, and *New York Marine* plaintiffs formally stipulated, with Judge Casey's approval, that NCB would move to dismiss their complaints once the *Ashton/Burnett* jurisdictional discovery process had concluded. *See* MDL Dkt. # 718. NCB sought a similar stipulation with the *Federal Insurance* plaintiffs, which we proposed on October 19, 2005 (*see* Exhibit E). Although counsel for the *Federal Insurance* plaintiffs promised to respond promptly, he never did. It therefore is incorrect for the *Federal Insurance* plaintiffs to claim that they "rejected" NCB's proposal. *Fed. Ins.* Ltr., at p. 3 n.1.

[5] *In re Enron Corp.*, 349 B.R. 115, 121 (Bankr. S.D.N.Y. Aug. 25, 2006) (quoting 7 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE-CIVIL, § 37.05[2] (Lexis 2006)).



April 29, 2008
Page 4

> discovery requests concerning a New York corporation that had not been shown to be "controlled by or…a department of" a foreign corporation).
>
> - By contrast, NCB has proffered an affidavit of its Head of Finance and Accounting, which affirms that NCB has not conducted business in the United States relating to the ownership or operation of aircraft, did not own an interest in 6 of the 7 aviation companies listed in plaintiffs' discovery requests, and did not own any of the aircraft listed in plaintiffs' discovery requests. *See* Decl. of Dr. Abubaker Ali Bagabir, FCCA, attached to NCB 4/21 Ltr.
>
> - As to the one remaining company listed in its discovery requests (Southwest Airport Services Inc. or "SWAPS"), plaintiffs point to a February 2, 1994 letter in which NCB describes a perfected security interest in SWAPS shares. Fawcett Aff. ¶ 13. However, plaintiffs have not provided the Court with the complete story. Shares of SWAPS had been pledged to secure a $1.4 million loan by NCB's former New York branch in 1990, and the loan went into default. Exh. F at ¶ VI. NCB did not conduct business through SWAPS, but rather held the pledged shares until it released the pledge on June 26, 1996, as part of a settlement agreement. Exh. G. As a matter of law, NCB's temporary, long-ago and fortuitous interest in SWAPS cannot provide a basis on which to exercise personal jurisdiction over NCB. *See Insight Data Corp. v. First Bank Sys., Inc.*, 1998 WL 146689, at *5 (S.D.N.Y. Mar. 25, 1998) (foreclosing on assets securing a loan is not proof of "doing business" for general jurisdiction). Because NCB long ago ceased to have any interest in SWAPS, it is irrelevant whether Global FBO Holdings, Inc. is a parent of SWAPS or that the Department of Defense awarded a contract to SWAPS. *See* Fawcett Aff. ¶ 14-15.
>
> - The circumstances here, as to the aviation companies identified by the plaintiffs, are therefore just like those in *Spotless Plastics*, 2007 WL 2584963, at *5 & n. 17, where the court held: "Plaintiff has offered no basis for suggesting that Spotless New York is controlled by or is a department of Spotless Australia, and <u>Spotless Australia affirms to the contrary</u>. … Accordingly, there is no reasonable basis for ordering discovery, as requested by plaintiff, into the business relationship between Spotless Australia and Spotless New York." (emphasis added) (citations omitted).
>
> - Plaintiffs also point to a handful of unauthenticated letterheads and a business card referencing "NCB Aviation" at an address in Saudi Arabia, but these unauthenticated hearsay documents have no evidentiary value. *See Shaoulian-Tehrani v. Khatami*, 2008 WL 1790386, at *2 (S.D.N.Y. Apr. 21, 2008) (hearsay cannot be used to establish a prima facie case of personal jurisdiction). Anyone can claim to operate as "NCB Aviation." *See, e.g.* http://www.ncb-aviation.com/home.htm (last visited April 29, 2008), but that does not mean that the National Commercial Bank owns or controls that entity. In fact, the Saudi Arabia address listed in plaintiffs' documents for someone claiming to be "NCB



**PATTON BOGGS** LLP
ATTORNEYS AT LAW

April 29, 2008
Page 5

Aviation" is not one occupied by NCB, and the airmen listed in those documents have never been employed by NCB. *See* Juco. Decl. ¶¶ 2, 3 (submitted herewith as Exhibit H); *see* Fawcett Aff. ¶ 4, 6, 8, 10.

- Plaintiffs offer nothing more than inadmissible speculation that the "NCB Aviation" shown in their handful of unauthenticated documents must be owned or controlled by National Commercial Bank, and must be in the aviation business in the United States. That speculation, however, is directly contradicted by the sworn testimony described above. *See* Bagabir and Juco Declarations. Under Rule 56(f) procedures—which apply fully to requested discovery to oppose a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 504-05 (S.D.N.Y.2004)—such speculation cannot justify further jurisdictional discovery simply because plaintiffs disbelieve NCB's sworn declarations. *See Spotless Plastics*, 2007 WL 2584963, at *5 & n. 17; *Maturine v. American Intern. Group, Inc.*, 2006 WL 2347806, at *4 (S.D.N.Y. Aug. 14, 2006) (Daniels, J.) (The required Rule 56(f) showing "cannot be satisfied by simply claiming that the declaration submitted in support of the summary judgment is not credible."); *Atlantic Mut. Ins. Co. v. Alitalia-Linee Aeree*, 2005 WL 427573, at *6 (S.D.N.Y. Feb. 22, 2005) (Daniels, J.) (Rule 56(f) does not allow further discovery based on plaintiff's speculation).

- Magistrate Judge Maas was advised of plaintiffs' discovery requests concerning the aviation business when NCB moved to compel compliance with his earlier order requiring plaintiffs to provide answers to NCB's contention interrogatories. Magistrate Judge Maas did not authorize the requested discovery, but instead simply noted that: "The plaintiffs retain the right to supplement those answers, of course, should Judge Daniels (or I) permit them to engage in further discovery concerning NCB's alleged aviation business." MDL Dkt. # 2060.

- For the reasons shown above, and in further detail both in NCB's Objections and in our December 26, 2007 letter to Your Honor (Exh. C, at pp. 5-8, 11-13), there is no reason for this Court or for Magistrate Judge Maas to authorize such discovery. *Indemnity Ins. Co. of North America v. K-Line America, Inc.*, 2007 WL 1732435, at *12 (S.D.N.Y. June 14, 2007) (denying a "second round of additional jurisdictional discovery" where "[t]he facts asserted do not support such a theory"); *Langenberg v. Sofair*, 2006 WL 2628348, at *7 (S.D.N.Y. Sept. 11, 2006) ("Plaintiff has made no factual allegations which could be proven through additional discovery and which would change the outcome of this issue. Therefore, Plaintiff will not be granted the opportunity to engage [in] further discovery in support of her allegation.").

- **Trust Account.** In December 2007, Your Honor affirmed Magistrate Judge Maas' July 2007 order "restricting the scope of discovery that SBG [Saudi Binladin Group] must produce with regard to a trust allegedly holding the sale proceeds of Osama Bin Laden's shares in SBG."


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

April 29, 2008
Page 6

MDL Dkt. # 2058. Dissatisfied with the limits on the trust discovery that they could obtain from SBG, plaintiffs thereafter sought discovery from NCB, the bank at which SBG has said the trust account was established in 2000.

- NCB objected to plaintiffs' discovery requests (Exhibit B), and further supported its objections in our December 26, 2007 letter to Your Honor. *See* Exhibit C, at pp. 8-13.

- SBG's counsel wrote separately to Your Honor on December 27, 2007 (copy attached as Exhibit I), and noted that:

  - "SBG has consistently stated that funds from the disposition of OBL's shares were placed outside his control and were never distributed to him." Exh. I, at pp. 2-3.

  - "Discovery responses [by SBG]—including confidential documents produced pursuant to the Protective Order—confirm that OBL had no access to the funds either before or after the trust account was opened." Exh. I, at pp. 3-4.

- Plaintiffs repeatedly make offensive allegations about "protecting money of the world's most notorious terrorist" (*Ashton* Ltr., at p. 4), but they have never offered a single fact contradicting SBG's sworn discovery responses showing that Osama Bin Laden never had access to the SBG share sale proceeds. Indeed, SBG stated in its letter to this Court that "the funds are and have been frozen by the authority of the Saudi government," and "Plaintiffs have absolutely no facts to suggest, and in fact have never alleged, that any of the funds were given to anybody to support terrorism." Exh. I, at p. 4.

- There simply are no facts to suggest that NCB engaged in any activity other than providing routine banking services in connection with a trust account to which Osama Bin Laden has never had access. Such routine banking services cannot provide a basis for liability, and therefore cannot provide a basis for exercising conspiracy-theory or related types of specific jurisdiction over a bank like NCB. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("As a general matter, '[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers.'") (quoting *Terrorist Attacks I*, 349 F. Supp. 2d at 830); *Terrorist Attacks I*, 349 F. Supp. 2d at 830 (quoting *Burnett v. Al Baraka Invest. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003), to conclude that "Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.").

- Because plaintiffs' jurisdictional theories concerning the trust account are factually unsupported and legally deficient, they cannot justify further jurisdictional discovery from NCB. *See Indemnity Ins. Co. of North America*, 2007 WL 1732435, at *12 (discussed above).





April 29, 2008
Page 7

- Plaintiffs meanwhile have continued to seek further discovery about the SBG trust from SBG itself. This Court referred those disputes to Magistrate Judge Maas, who held a hearing on April 11, 2007 and will issue a written ruling. *See* MDL Dkt. ## 2071, 2074. Plaintiffs' request for jurisdictional discovery from NCB about the trust account thus is bound up with ongoing proceedings before Magistrate Judge Maas, and should be referred to him if this Court does not itself sustain NCB's Objections to those discovery requests.

- **Muwafaq Foundation.** The allegations of the *Ashton, Burnett,* and *Federal Insurance* complaints about NCB's supposed relationship with Muwafaq are substantively identical. *Compare Federal Insurance* 1st Am. Complt. (¶¶ 292-294) *with Burnett* 3rd Am. Complt. (¶¶ 89, 95-96) and *Ashton* 6th Am. Complt. (¶¶ 424, 430-434); *see* Chart (Exhibit D).

  - Counsel for the *Federal Insurance* plaintiffs confirmed the commonality of the *Ashton/Burnett/Federal Insurance* allegations when he argued to Judge Casey (during an October 2004 hearing on NCB's personal jurisdiction motion to dismiss) that: "[T]here is an entire section of the *Federal, Ashton,* and *Burnett* complaints dedicated to setting forth allegations regarding the conduct of the Muwafaq Foundation... . <u>All of that must be read as a whole</u>." *See* 10/12/04 Tr. at 77:8-15 (excerpts attached as Exhibit J) (emphasis added).

  - Accordingly, the *Ashton/Burnett/Federal Insurance* allegations about NCB's supposed relationship with Muwafaq are "matters common to the Individual Actions," on which it was not only "possible" but also mandatory for the plaintiffs to "conduct consolidated discovery." Case Management Order No. 2, ¶ 20 (MDL Dkt. # 247); Case Management Order No. 3, ¶ 9. *See* NCB 4/21/08 Ltr. at 3-4 & n.4.

  - Magistrate Judge Maas previously considered and rejected the *Ashton* and *Burnett* plaintiffs' request for discovery concerning NCB's alleged relationship with Muwafaq.[6] In doing so, Magistrate Judge Maas found that the *Burnett* complaint "failed to make a prima facie showing of conspiracy" involving NCB and Al Qaeda. MDL Dkt. # 1849, at 11. He further held that plaintiffs had made only "conclusory" conspiracy allegations that "establish neither that NCB or its customers contributed funds to organizations serving as Al Qaeda fronts with 'an awareness of the effects in New York' of such monetary

---

[6] *Compare Burnett* and *Ashton* Document Request 33 ("For the period beginning January 1990 through the present, provide all documents relating to the transfer of money through NCB accounts to MUWAFFAQ ('Blessed Relief') Foundation"), and April 30, 2007 Ltr. to Hon. Frank Maas from Andrew J. Maloney, III at pp. 2-3 & n.2, 5 (seeking information concerning transfer of NCB or NCB customer funds or assets to Muwafaq Foundation) *with* Discovery Order (June 28, 2006) (MDL Dkt. # 1849) (denying plaintiffs' request for information about NCB customer accounts) and Order (May 1, 2007) (MDL Dkt. # 1971) ("declin[ing] to direct any further discovery (not previously ordered) related to NCB.").



April 29, 2008
Page 8

- contributions, nor that the co-conspirators in New York—namely the Al Qaeda terrorists who executed the September 11 attacks—'acted at the direction or under the control or at the request of NCB." *Id.* at 10 (quoting *Terrorist Attacks I*, 349 F. Supp. 2d at 805).

- Magistrate Judge Maas' prior orders denying jurisdictional discovery concerning NCB's alleged relationship with Muwafaq bind the *Federal Insurance* plaintiffs because: (i) the allegations in the *Federal Insurance* and *Burnett* complaints about NCB's supposed relationship with Muwafaq are substantively identical; and (ii) the *Federal Insurance* plaintiffs were required to coordinate their discovery on this common issue with the *Ashton* and *Burnett* plaintiffs.

- The Office of Foreign Assets Control ("OFAC") memo proffered by the *Federal Insurance* plaintiffs (*Fed. Ins.* Ltr., Exh. 6) confirms precisely what Magistrate Judge Maas held, and certainly provides no basis for reconsidering his prior rulings. <u>The OFAC memo does not contain a single suggestion that NCB was involved in or aware of any terrorist activities</u>. Instead, the memo discusses activities of Yassin Kadi and Muwafaq, and notes that Kadi "worked as financial consultant for the National Commercial Bank of Jeddah, Islamic Development Bank, Saudi British Bank, Merrill Lynch, Bankers Leasing Corporation, Chase Manhattan" and numerous others. *Id.* at p. 0007730. The memo notes that Kadi did his consulting work for NCB from 1990-1991. *Id.* at p. 0007701.

- Kadi's activities, whatever they may be, no more bind NCB than they could bind Merrill Lynch, Chase Manhattan, or the other financial institutions to which he provided consulting services long ago. Certainly, there is nothing in the OFAC memo to support plaintiffs' attempt to call Kadi a "Senior NCB Executive," nor to justify the long chain of fanciful inferences about NCB that plaintiffs ask the Court to draw. *See Fed. Ins.* Ltr., at pp. 13-14.

- Indeed, as NCB will demonstrate in support of its post-discovery motion to dismiss, Yassin Kadi was never an officer or employee of NCB. *See* Juco Aff't ¶ 4. Accordingly, there is no legal basis to impute Kadi's knowledge to NCB. *See Fed. Ins.* Ltr., at p. 13.

- Moreover, in his statement to OFAC, Kadi confirmed that he served merely as a consultant to NCB and that the Muwafaq Foundation "has never had any account with the National Commercial Bank (NCB)." Kadi OFAC Stmt. (Dec. 19, 2002), at pp. 8, ¶ 19 and 19, ¶ 41 (excerpts attached as Exhibit K).

- The OFAC memo is far more important for what it does not say. In the nearly seven years since the September 11 attacks, neither OFAC, nor any other agency of the U.S. Government, nor the Saudi Government, nor the United Nations, nor any other governmental body has ever suggested that NCB aided, abetted, or in any way was aware of or supported terrorist activities.


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

April 29, 2008
Page 9

- After seven months of inattention to their discovery requests and NCB's Objections (Exh. A), the *Federal Insurance* plaintiffs are now desperately spinning theories by which they hope to prolong jurisdictional discovery and prevent NCB from having a post-discovery opportunity to litigate its challenge to personal jurisdiction. The Court should not countenance these tactics.

### Conclusion

The Court's March 14, 2008 Order states that it plans to address "all personal jurisdiction motions to dismiss" after it resolves pending motions that raise sovereign immunity challenges to subject matter jurisdiction. MDL Dkt. # 2072. Because there is no basis to reopen jurisdictional discovery as to NCB, it would be timely and appropriate to allow NCB to make its consolidated post-discovery motion to dismiss for lack of personal jurisdiction at this time so that the Court may consider NCB's motion as part of its comprehensive review of personal jurisdiction issues.[7] NCB respectfully requests that the Court grant its letter application dated April 21, 2008.

Respectfully submitted,

Mitchell R. Berger
*Counsel for The National Commercial Bank*

cc: Hon. Frank Maas
Plaintiffs' Counsel
Defendants' Counsel

Enclosures

---

[7] Given the extensive jurisdictional discovery materials that require discussion in NCB's consolidated post-discovery motion to dismiss, the *Ashton/Burnett* plaintiffs offer no reason for opposing NCB's sensible request that the Court grant NCB leave to file a 35-page consolidated memorandum rather than multiple, separate and cross-referenced supporting memoranda. *Compare* NCB 4/21 Ltr., at pp. 1, 3 n.2 & 4 *with Ashton* Ltr., at p. 1 n.1.