**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) ) | **Civil Action No. 03 MDL 1570 (GBD)** |

*This document relates to:  All Actions*

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN RELATION TO ALL PENDING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND/OR LACK OF PERSONAL JURISDICTION**

March 13, 2009

**TABLE OF CONTENTS**

**BACKGROUND**……………………………………………………………………………………1

**I.      *BOIM V* HAS NO BEARING ON THE PERSONAL JURISDICTION ISSUES BEFORE THIS COURT** ........................................................................................ 2

    **A.      The Second Circuit's Decision on Personal Jurisdiction Is Controlling**......... 2

    **B.      *Boim V*'s Merits-Based Analysis Cannot Be Applied to the Distinct Requirements of Personal Jurisdiction**................................................................ 3

**II.     *BOIM V* DOES NOT SUPPORT PLAINTIFFS' CLAIMS ON THE MERITS**........ 8

    **A.      *Boim V* Addresses Distinct Facts From this Case** ............................................. 8

        **1.      *Boim V* Does Not Support Liability for Defendants Who Did Not Knowingly or Recklessly Support Terrorists**................................. 9

        **2.      *Boim V* Does Not Support Plaintiffs' Reliance on Pre-1994 Conduct** ........................................................................................... 10

    **B.      *Boim V*'s Holdings on the Merits Are Flawed** ................................................. 11

**CONCLUSION**……………………………………………………………………………………12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Afram Export Corp. v. Metallurgiki Halyps, S.A.*,
    772 F.2d 1358 (7th Cir. 1985) ...........................................................................................7

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1981)............................................................................................................5

*Boim v. Holy Land Foundation for Relief and Development*,
    549 F.3d 685 (7th Cir. 2008) ..................................................................................... *passim*

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).......................................................................................................3, 4

*Calder v. Jones*,
    465 U.S. 783 (1984)....................................................................................................3, 4, 5

*CoStar Group, Inc. v. LoopNet, Inc.*,
    106 F. Supp. 2d 780 (D. Md. 2000).....................................................................................5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................................................7

*In re Terrorist Attacks on September. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) (*"Terrorist Attacks I"*) ....................................11, 12

*In re Terrorist Attacks on September 11, 2001*,
    538 F.3d 71 (2d Cir. 2008) (*"Terrorist Attacks III"*) ......................................1, 3, 5, 6, 7, 8

*Jifry v. FAA*,
    370 F.3d 1174 (D.C. Cir. 2004) ..........................................................................................7

*LeDuc v. Kentucky Central Life Ins. Co.*,
    814 F. Supp. 820 (N.D. Cal. 1992) .....................................................................................6

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) ..............................................................................................6

*Savage v. Bioport, Inc.*,
    460 F. Supp. 2d 55 (D.D.C. 2006).......................................................................................6

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ..............................................................................................6

*Smirch v. Allied Shipyard, Inc.*,
    164 F. Supp. 2d 903 (S.D. Tex. 2001) ................................................................................5

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) ............................................................................................7

*United States v. Baboolal*,
    No. 05-CR-215, 2006 WL 1674480 (E.D. Wis. June 16, 2006).........................................7

*Veiga v. World Meteorological Org.*,
    568 F. Supp. 2d 367 (S.D.N.Y. 2008)................................................................................7

## **FEDERAL STATUTES**

18 U.S.C. § 2331(1) .....................................................................................................................10

18 U.S.C. § 2333(a) .......................................................................................................................1

18 U.S.C. § 2339A.......................................................................................................................10

**BACKGROUND**

In their Notice of Supplemental Authority in Relation to All Pending Motions to Dismiss for Failure to State a Claim and/or Lack of Personal Jurisdiction (dkt. #2156) (Feb. 4, 2009) ("Pls. Notice"), the Plaintiffs' Executive Committees call the Court's attention to *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) ("*Boim V*"), in which the en banc Seventh Circuit upheld, following a jury trial, a judgment of liability and damages under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), against two U.S.-resident organizations that the Seventh Circuit characterized as having engaged in international terrorism by providing material support to the terrorist organization Hamas knowing that its support could be used to kill a U.S. national outside the United States.[1] Plaintiffs argue that *Boim V* supports exercising personal jurisdiction in this case and "confirms that Plaintiffs have stated valid claims against all of the defendants under the ATA." Pls. Notice at 1, 10. Plaintiffs are wrong on both points.

First, *Boim V* did not even address personal jurisdiction. As plaintiffs earlier recognized—when the panel had issued a ruling not to their liking—the Seventh Circuit's analysis of the merits in *Boim* "has nothing to say" about personal jurisdiction. Pls. Response to Notice of Supp. Authority Filed by Def. Yousef Jameel at 4-5 n.4 (dkt. #2069) (Feb. 15, 2008) ("Pls. Response to Jameel"). That issue is instead dispositively controlled by the Second Circuit's recent decision rejecting personal jurisdiction over defendants in this litigation. *See In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ("*Terrorist Attacks III*"). As explained in defendants' earlier supplemental briefs, the Court can resolve motions

---

[1] The plaintiffs and defendant Holy Land Foundation in *Boim* filed applications to extend until May 2, 2009, the time in which to file a petition for a writ of certiorari challenging the *Boim V* decision. The Supreme Court granted the requested extensions. *See* Order, *Holy Land Foundation for Relief & Development v. Boim*, No. 08A712 (U.S., Feb. 17, 2009); Order, *Boim v. Salah*, No. 08A726 (U.S., Feb. 19, 2009).

presenting that issue based on the controlling authority provided by the Second Circuit. *See* Defendants' Supplemental Brief on Second Circuit Decision (dkt. #2140) (Oct. 17, 2008) ("Defs. Supp. Br."); Defendants' Reply to Plaintiffs' Supplemental Brief on Second Circuit Decision (dkt. #2146) (Nov. 25, 2008) ("Defs. Supp. Reply Br.").

Second, on the merits—to which this Court has suggested it will turn only after resolving jurisdictional and other threshold issues, *see* Transcript of Status Conference (June 26, 2007) at 12—*Boim V* addresses facts that, as set forth in the Seventh Circuit's opinion, differ markedly from the allegations in this case. In addition, even as to the facts it considers, *Boim V* stretches to uphold liability on questionable assumptions and a strained reading of the governing statutes. The Seventh Circuit's decision thus raises a host of complex legal issues that may be most appropriately addressed when the Court reaches individual motions to dismiss for failure to state a claim.

## I. *BOIM V* HAS NO BEARING ON THE PERSONAL JURISDICTION ISSUES BEFORE THIS COURT

### A. The Second Circuit's Decision on Personal Jurisdiction Is Controlling

First and foremost, *Boim V* is irrelevant because the Second Circuit's recent decision in this very litigation provides controlling—indeed, dispositive—guidance on the personal jurisdiction issues pending before this Court. *See* Defs. Supp. Br. at 13-34. As defendants explained in their Supplemental Brief:

> The Second Circuit's decision establishes . . . that allegations of generalized material support at any time to anyone affiliated with al Qaeda or other terrorist organizations cannot establish personal jurisdiction in U.S. courts. Moreover, personal jurisdiction cannot exist in American courts based simply on allegations that a foreign defendant provided financial support for al Qaeda—through donations to foreign charities, banking services, or otherwise—at a time when al Qaeda was known to be targeting U.S. interests. Indeed, the Second Circuit held that, absent the required link to the September 11 attacks, even allegations of knowing and intentional

> support to al Qaeda are insufficient to establish personal jurisdiction.

Defs. Supp. Br. at 3; *see also* Defs. Supp. Reply Br. at 1-2, 7-18; Chart of Defs. to be Dismissed on the Basis of Second Circuit Decision, Ex. 1 to Notice of Filing of List of Defs. (dkt. #2141) (Oct. 17, 2008).

Plaintiffs erroneously seek to import the Seventh Circuit's merits analysis into the jurisdictional inquiry to support a "restrained reading" of the Second Circuit's decision, but the Second Circuit left no room for such creativity. Applying settled jurisdictional principles that *Boim V* had no cause to address, the Second Circuit rejected personal jurisdiction based merely on allegations of generalized material support to anyone affiliated with al Qaeda or other terrorist groups—whether through donations to foreign charities, banking services, or otherwise—at a time when al Qaeda was known to be targeting U.S. interests. Rather, the Second Circuit held, without addressing the merits of plaintiffs' claims, that personal jurisdiction requires allegations showing that the defendants "'expressly aimed' intentional tortious acts at residents of the United States," *Terrorist Attacks III*, 538 F.3d at 93, 95 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)), and allegations establishing "injuries that 'arise out of or relate to' those activities," *id.* at 93 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). Nothing in *Boim V*, which did not cite *Calder* or *Burger King* and did not even address these issues, has any bearing on the Second Circuit's conclusions regarding personal jurisdiction in this case.

    **B.**    ***Boim V*'s Merits-Based Analysis Cannot Be Applied to the Distinct Requirements of Personal Jurisdiction**

Even apart from the Second Circuit's decision, the *Boim V* analysis of the substantive elements of an ATA claim has no bearing on the separate analysis required to evaluate constitutional limits on personal jurisdiction. Plaintiffs themselves once correctly recognized this dispositive fact. Before the Second Circuit provided controlling guidance in this case,

-3-

defendant Yousef Jameel filed a notice of supplemental authority directing the court's attention to the Seventh Circuit's earlier *Boim* decision rejecting liability. *See* Jameel Notice of Supplemental Authority (dkt. #2066) (Jan. 16, 2008). In response, although Jameel had in no way suggested that *Boim* was relevant to personal jurisdiction, plaintiffs took pains to emphasize the commonsense point that rulings on the merits in *Boim* are:

> inapplicable to that portion of [a defendant's] motion that challenges this Court's personal jurisdiction over him because the requisite causal connection between a defendant's conduct and a plaintiff's claims is governed not by the ATA, but rather by the requirements of due process. . . . Thus, *Burger King* and cases decided after it determine what a plaintiff must plead in order sufficiently to allege personal jurisdiction over a defendant. [*Boim*] *has nothing to say about this issue*.

Pls. Response to Jameel at 4-5 n.4 (emphasis added). Plaintiffs were correct then and are wrong now. Because personal jurisdiction is a distinct inquiry from the merits and because *Boim V* deals only with the merits of an ATA claim, the decision has no bearing on the personal jurisdiction motions pending before this Court.

First, while the Seventh Circuit held that mere "deliberate indifference" is sufficient to support liability under the ATA on the merits, this showing is unrelated to the separate jurisdictional determination that must be made before exercising personal jurisdiction over a defendant in a particular forum. "Deliberate indifference" fails to establish the "purposeful availment" of the forum required to support personal jurisdiction. *See, e.g.*, *Calder*, 465 U.S. at 789. Even where a reckless or negligent act has entirely foreseeable effects in a forum, the act nonetheless is insufficient for personal jurisdiction unless it is "purposefully directed" at the forum. *See, e.g.*, *Burger King*, 471 U.S. at 474 (holding that "foreseeabilty of causing *injury* in another State" is insufficient for personal jurisdiction); *Calder*, 465 U.S. at 789 (requiring intentional actions "expressly aimed at" the forum for personal jurisdiction and distinguishing

such acts from "untargeted negligence"); *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 909 (S.D. Tex. 2001) (finding no personal jurisdiction based on alleged negligent repair of ship even though ship was owned by Texans and intended for use in Texas); *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 785 (D. Md. 2000) ("courts have carefully limited the application of [personal jurisdiction under *Calder*] to cases where the nonresident defendant commits an intentional tort knowing the conduct will cause harm to the defendant in the forum state"); *cf. Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1981) ("a defendant's awareness that the stream of commerce may or will sweep a product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State"). Accordingly, even assuming that the Seventh Circuit correctly construed the ATA's intent requirement—a proposition that no doubt will continue to be litigated—*Boim V* is irrelevant to personal jurisdiction. Under the Second Circuit's holding, even if defendants were "reckless in monitoring how their donations were spent, or could and did foresee that recipients of their donations would attack targets in the United States, that would be insufficient to ground the exercise of personal jurisdiction." *Terrorist Attacks III*, 538 F.3d at 94-95.

Second, the proximate causation analysis for tort injuries that the Seventh Circuit applied in *Boim V* is distinct from the personal jurisdiction requirement that claims must "arise out of or relate to" activities by the defendant that were directed at the forum. A defendant's actions may well cause a plaintiff's injury, thus giving rise to liability on the merits, without the plaintiff's claim necessarily arising out of activities directed at the forum by the defendant, as required for personal jurisdiction. That the defendant may be liable on the merits does not answer the separate, and logically anterior, jurisdictional question as to *where* the plaintiff may seek to

impose such liability.  For example, in *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271 (4th Cir. 2005), a suit based on injuries resulting from the collapse of a crane on a ship that the defendant had refurbished in Singapore, the Fourth Circuit rejected personal jurisdiction because the plaintiff's injuries, though allegedly caused by the defendant, did not arise out of the defendant's contacts with the forum, which involved distinct business activities.  *Id.* at 274, 276.  Similarly, in *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006), the court found no basis for personal jurisdiction even though the defendant had conducted advertising in the forum, because the plaintiff's injuries arose out of different conduct (production of an allegedly hazardous vaccine) that did not occur in the forum.  *Id.* at 60-61.  *See also, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (rejecting personal jurisdiction over defective-design claim because none of the defendant's contacts with the forum "relates to [the] design" of the allegedly defective product); *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 825-26 (N.D. Cal. 1992) (rejecting personal jurisdiction based on business activities within the forum where plaintiffs' claims related to alleged fraud committed outside the forum).

     Just so here.  Even assuming that the Seventh Circuit correctly stated the ATA causation standard in *Boim V*, plaintiffs must separately show that their claims arise out of or relate to activities directed at the United States.  And as the Second Circuit has made clear, the causal connection between many of the foreign defendants' alleged activities, such as contributing to Islamic charities and providing banking services outside the United States, and the injuries plaintiffs suffered in the September 11 attacks is "far too attenuated" for plaintiffs' claims to have arisen out of defendants' actions, thus precluding exercise of personal jurisdiction over those foreign defendants.  *Terrorist Attacks III*, 538 F.3d at 95.

In an apparent attempt to stave off jurisdiction-based dismissals, plaintiffs throw out in a footnote the suggestion that many defendants may not assert any personal jurisdiction defense at all, no matter how remote their connection to the United States, because "non-resident aliens" without "ongoing contacts with the United States" cannot claim the protection of the Due Process Clauses.  Pls. Notice at 11, n.3.  This desperate argument has no merit.  Abundant case law—including not only Supreme Court decisions, but also the Second Circuit's decision in this very case—contradicts this novel assertion.  *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984) (applying due process principles to bar personal jurisdiction over foreign corporation); *Terrorist Attacks III*, 538 F.3d at 93 (applying due process analysis to foreign defendants); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir. 1985) (calling it "too solidly entrenched to be questioned" that foreign entities "have all the rights of U.S. citizens" to object to personal jurisdiction).  Plaintiffs offer no contrary authority; none of the cases they cite rejects due process limitations on personal jurisdiction over non-resident aliens.[2]  Such authority does not exist because plaintiffs' argument—that fewer ties to the United States would result in greater jurisdiction—would upend the law and logic of personal jurisdiction.  In any event, plaintiffs themselves have repeatedly acknowledged that jurisdiction here "is governed . . . by the requirements of due process."  Pls. Response to Jameel at 4-5 n.4; *see also* Plaintiffs' Supplemental Briefing Concerning Applicability of August 2008 Second Circuit Ruling at 1-2, 10-11 (dkt. #2142) (Oct. 17, 2008).

---

[2] *See United States v. Baboolal*, No. 05-CR-215, 2006 WL 1674480, at *4 (E.D. Wis. June 16, 2006) (declining to apply Fourth Amendment to foreign search by foreign government agents but indicating that "[e]vidence obtained by foreign officials in a manner that shocks the conscience may be excluded" under the Fifth Amendment (internal quotation marks omitted)); *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 302 fn (D.C. Cir. 2005) (expressing "no view" on due process rights of non-resident aliens); *Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir. 2004) (declining to define scope of non-resident aliens' rights with respect to administrative proceeding because "they have received all the process that they are due under our precedent"); *Veiga v. World Meteorological Org.*, 568 F. Supp. 2d 367, 374 (S.D.N.Y. 2008) (rejecting constitutional claims by foreign plaintiff who presented "no evidence of any connection to the United States").

It is too late in the day to argue for the first time now, against the overwhelming weight of logic and authority, that due process considerations do not apply.

In sum, *Boim V* says nothing about personal jurisdiction and provides no reason to disregard the Second Circuit's controlling decision, which mandates dismissal of plaintiffs' remaining claims for lack of personal jurisdiction.

## II.     *BOIM V* DOES NOT SUPPORT PLAINTIFFS' CLAIMS ON THE MERITS

Plaintiffs also assert in their notice that *Boim V* "confirms that plaintiffs have stated valid claims" on the merits under the ATA. Pls. Notice at 1. This argument is premature to the extent that the Court has suggested it will first address motions to dismiss on grounds other than failure to state a claim. *See* Tr. of Status Conference (June 26, 2007) at 12. The plaintiffs' argument also rests on a contradiction. If, as plaintiffs wrongly insist, the merits and personal jurisdiction inquiries are identical, then the Second Circuit's decision on personal jurisdiction must control, and even "intend[ing] to fund al Qaeda through . . . donations to Muslim charities" is insufficient to state a claim in the United States, *Terrorist Attacks III*, 538 F.3d at 95, regardless of what defendants allegedly "should know," *Boim V*, 549 F.3d at 702. Putting aside that contradiction, however, plaintiffs' reliance on *Boim V* is nevertheless misplaced. Here, defendants offer only a brief summary of some of the problems with relying on *Boim V*, an issue that may be more appropriately addressed in briefing by individual defendants in support of motions to dismiss for failure to state a claim.

### A.     *Boim V* Addresses Distinct Facts From this Case

To begin with, *Boim V*, by its express terms, addresses markedly different factual circumstances from this case—and indeed expressly distinguishes the circumstances presented by many of the motions to dismiss before this Court.

### 1. *Boim V* Does Not Support Liability for Defendants Who Did Not Knowingly or Recklessly Support Terrorists

The plaintiffs in *Boim* brought ATA claims arising out of a Hamas murder in Israel against defendants alleged to have financially supported Hamas. *See Boim V*, 549 F.3d at 687-88. In upholding a verdict against two U.S.-based defendants, the Seventh Circuit reached three key holdings: (1) financial support for a terrorist organization may violate the ATA so long as the donor "either knows that the organization engages in [terrorist] acts or is deliberately indifferent to whether it does or not, meaning that [the donor] knows there is a substantial probability that the organization engages in terrorism but [the donor] does not care," *id.* at 693; (2) the defendants could not escape liability by claiming that, although they knew their contributions would go to Hamas, those contributions were "earmark[ed] for the organization's nonterrorist activities," because any contribution to the organization is a proximate cause of terrorism-related injuries, *id.* at 698; and (3) a defendant also cannot escape liability by contributing indirectly if the donor "either knows or is reckless in failing to discover that donations to [the intermediary] end up with [the terrorist organization]," *id.* at 701-02.

Applying those holdings here would not, as plaintiffs assert, confirm the validity of their claims. To the contrary, the Seventh Circuit, while rejecting the "earmarking" defense interposed in *Boim*, stressed that the ATA requires that the defendant know it is supporting terrorism—a point on which many, if not all, defendants here challenge the sufficiency of the plaintiffs' allegations. The court rejected liability in the hypothetical "easy case of a donation to an Islamic charity by an individual who does not know (and is not reckless, in the sense of strongly suspecting the truth but not caring about it) that the charity gives money to Hamas or some other terrorist organization." *Id.* at 699. Similarly, where the contributions allegedly flowed through intermediaries such as charities, the Seventh Circuit made clear that "the donor is

-9-

not liable" unless it "either knows or is reckless in failing to discover that donations to [intermediaries] end up with Hamas." *Id.* at 702.

Furthermore, the Seventh Circuit characterized the record in *Boim* as having established that certain defendants (those whose liability the court upheld) were fully aware of Hamas's character as a terrorist organization and yet "deliberately funnel[ed] money to Hamas." *Id.* at 701; *see also id.* at 702 (noting that "the only factual determination" as to one defendant "that might be questioned . . . was the determination . . . that Hamas had been responsible for the murder"). Plaintiffs' allegations in this Court, in contrast, establish nothing of the kind. Numerous motions to dismiss argue, among other things, that plaintiffs have failed to allege specific facts to demonstrate the requisite knowledge here to tie defendants to al Qaeda at all, let alone to the September 11 attacks. Thus, far from confirming the validity of plaintiffs' claims, even *Boim V* will establish "easy case[s]" for the dismissal of many defendants for failure to state a claim.

### 2. *Boim V* Does Not Support Plaintiffs' Reliance on Pre-1994 Conduct

*Boim V* is further inapplicable to many of plaintiffs' allegations here because it does not reach alleged support provided before 1994. While the ATA itself defines "international terrorism" to "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States," 18 U.S.C. § 2331(1), *Boim V* included financial contributions within this definition by incorporating a separate criminal statute, 18 U.S.C. § 2339A(a), which bars the provision of "material support or resources" with knowledge or intent that they will be used in connection with a violation of yet another statute. 549 F.3d at 689-90. Section 2339A, however, was enacted only in 1994. Recognizing the temporal limitation this reasoning imposed, the Seventh Circuit overturned the jury's verdict as to one defendant (Muhammad Salah) whose only material support to Hamas pre-dated § 2339A's

-10-

enactment. *Id.* at 691. This exclusion precludes liability under *Boim V* for much of the conduct alleged here. As just one example, plaintiffs have repeatedly cited the so-called "Golden Chain" document, which they assert is a list of al Qaeda contributors dating from as early as 1988, *see In re Terrorist Attacks on September 11, 2001*, Oct. 14, 2004 Hearing Transcript at 102:23-25 (dkt. #522). Although Judge Casey already rejected that characterization of the document, *see In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"), contributions prior to 1994 could not be the basis for liability even under *Boim V*'s analysis. Numerous other examples appear in individual motions to dismiss.

**B.     *Boim V*'s Holdings on the Merits Are Flawed**

Finally, even as to the facts considered there, the Seventh Circuit's construction of the ATA is flawed on multiple grounds. Characterized as "judicial activism at its most plain," *Boim V*, 549 F.3d at 709 (Rovner, J., dissenting); *see also id.* at 719 (Wood, J., dissenting), *Boim V* raises a host of complex issues that may be adequately addressed in this case only by full briefing on the merits. At this juncture, defendants highlight two key examples: First, the Seventh Circuit's conclusion that donors may be liable under the ATA even without intending to support terrorist activities is flawed, particularly in light of Judge Casey's observation earlier in this litigation that "[t]o adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." 349 F. Supp. 2d at 828; *see also Boim V*, 549 F.3d at 709 (Rovner, J., dissenting) ("what the statute requires is the knowing or intentional support of specific terrorist acts, not the knowing support of a terrorist organization"). Second, the Seventh Circuit's causation holding, which permits liability under the ATA based even on donations ostensibly earmarked and actually used for charitable purposes (as long as the donor knows it is supporting

-11-

a terrorist organization), also is both flawed as a matter of tort law and inconsistent with prior rulings in this case by Judge Casey, who observed that "Plaintiffs will have to present a sufficient causal connection between [material support for a terrorist organization] and the injuries suffered by Plaintiffs." 349 F. Supp. 2d at 825; *see also Boim V*, 549 F.3d at 705 (Rovner, J., dissenting) (observing that the majority's approach to causation "eliminate[s]" a "basic tort requirement").

## CONCLUSION

Contrary to plaintiffs' assertions, *Boim V* does not dispose of defendants' personal jurisdiction defenses, nor does it establish that plaintiffs have stated valid claims. It has no bearing on personal jurisdiction, and therefore need not be considered in addressing motions to dismiss directed to that issue under the Second Circuit's analysis. Even on the merits, *Boim V* is factually distinguishable and adopts a controversial liability standard that may be most appropriately addressed when the Court reaches individual motions to dismiss for failure to state a claim.

Respectfully submitted,

/s/
Stephen J. Brogan
Mary Ellen Powers
James E. Gauch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

*On Behalf of Defendants' Executive Committee*

March 13, 2009