**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————
                                                    )
IN RE TERRORIST ATTACKS ON            )          03 MDL 1570 (GBD)(FM)
SEPTEMBER 11, 2001                          )          ECF Case
——————————————————————)


*This document relates to*:
         All Cases




**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF**
**<u>MOTION FOR DECLARATORY RELIEF</u>**




March 19, 2009

## Table of Contents

*Page*

TABLE OF AUTHORITIES..................................................................................... ii

INTRODUCTION ...................................................................................................1

FACTUAL CLARIFICATIONS ...............................................................................2

ARGUMENTS ......................................................................................................4

    A. NCB's And The Government's Argument That The Documents May Not Be Used "In Any Manner" Fails Because A Necessary Element Of That Argument – That Motley Rice Acted Wrongfully In Receiving The Documents – Is Missing ..............................................................................4

    B. Consideration Of The Documents Does Nothing To Undermine The Court's Orders Regarding Contention Discovery.......................................9

    C. NCB's Due Process Rights Have Not Been Violated...............................12

    D. Reliance On The FOIA Mechanism Is An Inefficient Replacement For The Court To Learn What It Already Has In Its Possession....................14

CONCLUSION....................................................................................................16

## Table of Authorities

**Cases**                                                                                           **Pages**

*American Alliance Ins. Co. v. Eagle Insurance Co.,*
    92 F.3d 57, 61 (2d Cir. N.Y. 1996)................................................................................5

*Blatch v. Hernandez,*
    360 F.2d 595, 613 (S.D.N.Y. 2005)..........................................................................13

*Crimmins v. American Stock Exchange, Inc.,*
    346 F. Supp. 1256, 1259 (S.D.N.Y. 1972)...............................................................13

*Deval Steel Products Division of Francosteel Corp. v. M/N Fakredine*
    951 F.2d 1357, 1367 (2d Cir. 1991)..........................................................................10

*Edmond v. United States Postal Service General Counsel*
    292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C. Cir. 1991) .................................11

*Estate of Trentadue ex rel. Aguiar v. United States of America*
    397 F. 3d 843, 865 (10th Cir. 2005) ...............................................................12,13,14

*Fashion Fragrance & Cosmetics v. Croddick,*
    2003 U.S. Dist. LEXIS 5641 (S.D.N.Y. Apr. 7, 2003)............................................5

*Fayemi v. Hambrecht & Quist, Inc.,*
    174 F.R.D. 319 (S.D.N.Y. 1997)(Francis, U.S.M.J.).........................................6,7,8

*In re Terrorist Attacks,*
    538 F.3d 71 (2d Cir. 2008)........................................................................................11

*Josephson v. Marshall,*
    2001 U.S. Dist. LEXIS 10049 ...................................................................................8

*Log on Am., Inc. v. Credit Suisse First Boston Corp.,*
    2001 U.S. Dist. LEXIS 17972 ...................................................................................7

*Madanes v. Madanes,*
    186 F.R.D. 279 (S.D.N.Y. 1999) ..............................................................................8

*Magee v. Paul Revere Life Ins. Co.,*
    172 F.R.D. 647, 649 (E.D.N.Y. 1997).......................................................................5

*Meridian International Logistics v. United States,,*
    939 F.2d 740, 745 (9th Cir. 1991) ............................................................................14

*Oceans Cuisine, Limited, v. Fishery Products International, Inc.,*
    2006 WL 1071578 U.S. Dist. LEXIS 22133 ..........................................................12

*Orbit One Communications, Inc. v. Numerex Corp.*,
   2008 U.S. Dist. LEXIS 90981 .........................................................................................7

*Parisi v. Rochester Cardiothoractic Association*,
   159 F.R.D. 406, 407 (W.D.N.Y. 1995)...........................................................................13

*Pecarsky v. Galaxiworld.com Ltd.*,
   249 F.3d 167, 172 (2d Cir.N.Y. 2001)..............................................................................5

*Pure Power Book Camp v. Warrior Fitness Boot Camp*
   587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008).......................................................................6

*Renner v. Lanard Toys Limnited.*,
   33 F.3d 277, 283 (3d Cir. 1994)......................................................................................11

*Schlaifer Nance & Co. Estate of Andy Warhol*,
   742 F. Supp. 165, 166 (S.D.N.Y. 1990).........................................................................8,9

*Shanahan v. Vallat*,
   2006 U.S. Dist. LEXIS 83221 ..........................................................................................7

*Strauss v. Credit Lyonnais*,
   242 F.R.D. 199, (E.D.N.Y. 2007) ..................................................................................12

*Tabbaa v. Chertoff*,
   509 F.3d 89, 93 n. 1 (2d Cir. 2007)..................................................................................5

*Weiss v. National Westminster Bank, PLC*,
   242 F.R.D. 33, 68 (E.D.N.Y. 2007) ...............................................................................12

*Zubulake v. UBS Warburg LLC*,
   217 F.R.D. 309, 318 (S.D.N.Y.) 2003 ..............................................................................5

I.       **Introduction**

Plaintiffs in the above-referenced matters ("Plaintiffs") respectfully submit this reply in further support of their motion for declaratory relief, wherein Plaintiffs request a determination that the Court will keep and examine in a protected manner documents the *Burnett* Plaintiffs submitted to the Court on August 25 ("the Documents") for the Court's consideration in regard to Plaintiffs' requests for additional discovery.

Inasmuch as the government concedes that the Court may retain the Documents in its protected possession and that the Court has the authority and discretion to examine the classified material, the only question remaining for the Court is whether any compelling factors weigh against the Court's use of the Documents to achieve the public policy goal that favors resolution of disputes based on a complete factual record.  Issues raised by the government and by NCB – such as the fact that the Documents were somehow leaked from their government secrecy[1], or that Plaintiffs should not have access to classified information (that is not being requested), or that Plaintiffs may someday have alternative means of accessing the documents – none of them are the issue here.  The issue presented here is not whether Plaintiffs should have access to the classified information (again, that is not being requested), but whether the Court should consider readily available relevant information as part of a more complete record in determining whether the requested additional targeted jurisdictional discovery should be permitted.  None of the arguments presented in opposition

---

[1] Despite what might be read as ambiguous implications by the government, followed up by broad, false accusations by NCB, Motley Rice engaged in no wrongful conduct in receiving the Documents, which were received from an anonymous source.  Though not referenced in the government's brief, that fact was extensively reported to the government.  Declaration of Robert T. Haefele, dated March 19, 2009, at paragraph 2 (hereinafter, "Haefele 3/19 Decl.").  Presumably, neither the government nor NCB were particularly clear on this point because it becomes fatal to much of their argument.

to Plaintiffs' request articulate any compelling reason for the Court not to consider the
Documents.

We also emphasize disappointment that the Court must be called upon to examine
this or any other evidence to approve the jurisdictional discovery Plaintiffs have sought. The
Court should not need to review and Plaintiffs should not need to rely upon evidence to
support Plaintiffs' discovery requests.  The rules that apply to discovery are broad and
Plaintiffs should not be obliged to prove the underlying evidence they anticipate receiving
before engaging in relevant discovery.  But if they are called upon for such a proffer, the
Court should consider the facts readily available for its consideration.

## II.      Factual Clarifications

Without re-asserting the factual circumstances set out in Plaintiffs' original moving
papers at pages 2-4, and without adopting the factual assertions of either the government or
NCB, Plaintiffs clarify here certain factual assertions in the government's letter and NCB's
opposition.  For example, the government's and NCB's factual representations are not
accurate in the following ways.

First, Motley Rice engaged in no wrongful conduct when it received the Documents,
unsolicited, from an anonymous source, and offered no incentive for the receipt, either before
or after receiving the Documents.  While receipt of this kind of information may be atypical
in other cases, it has been fairly commonplace for Plaintiffs' counsel here to receive
unsolicited evidence from well-meaning, ordinary citizens, whose sole incentive presumably
is to provide information thought to be relevant to preventing terrorists and their supporters
from succeeding in their terrorist goals.  Though, admittedly, the information offered does
not always come from anonymous sources, is not always especially useful, and not typically

2

as directly on point to show a defendant's direct ties to Al Qaeda support.  Haefele 3/19 Decl., at ¶¶ 3-4.

Second, at the time Motley Rice submitted the Documents for the Court's consideration and provided notice of the submission to NCB, copies of the Documents were already being sent from Charleston to New York for hand-delivery to the U.S. Attorney. Indeed, Plaintiffs' counsel advised both NCB and the government that Plaintiffs were requesting the Court to conduct an *in camera* inspection of the Documents.  Haefele 3/19 Decl., at ¶ 4.

Third, when the government originally directed Motley Rice to return all of the Documents, Motley Rice agreed to return whichever documents, based on the government's investigation, the government considered to be U.S. government documents that remained classified.  That is, although Motley Rice did not accede to the government's excessively broad initial request to return all of the documents *regardless* of their classification status, Motley Rice agreed to keep the documents secured while the government determined which documents were classified.  The government acceded to this distinction and permitted Motley Rice to keep the documents in a secured manner until such time as the government determined which documents were classified.  Once the government reached a determination, Motley Rice acceded to the government's arrangements in scheduling a time for the FBI to retrieve the Documents.  That happened on February 24, 2009, when the FBI agents retrieved 49 of the 55 documents and directed that the remainder of the Documents continue to be protected pending additional investigation.  Haefele 3/19 Decl., at ¶ 5.

## II. Arguments

### A.     NCB's And The Government's Argument That The Documents May Not Be Used "In Any Manner" Fails Because A Necessary Element Of That Argument – That Motley Rice Acted Wrongfully In Receiving The Documents – Is Missing.

Notwithstanding the pages of opposition, neither NCB nor the government identify any compelling factor weighing against the Court's use of the Documents to achieve the public policy goal that favors resolution of disputes based on a complete factual record. Indeed, the government concedes that an Article III judge has adequate clearance to review such documents.  The only factor argued in both NCB's and the government's oppositions is that allowing Plaintiffs to "use or benefit" from the Documents would encourage wrong-doing.  But that unsubstantiated allegation has no reasonable or logical basis.  Moreover, under the existing circumstances, the case law weighs against their argument.  Inasmuch as Motley Rice did not act wrongfully in receiving the Documents and neither offered nor provided any incentive or benefit to the anonymous donor, the Court's use of the Documents as suggested by Plaintiffs does absolutely nothing either to incentivize wrongful conduct or to create a risk to national security.

If any party has engaged in wrongful conduct that can be either incentivized or discouraged by an outcome regarding Plaintiffs' request, it is NCB.  Examination of the Documents will provide at least some indication that NCB has not been forthright with this Court or with the Plaintiffs throughout the discovery process.[2]  If the Court examines the

---

[2] One example of NCB's lack of candor that continues in its opposition concerns the parties' discovery dispute about the existence of an audit or investigation performed by Saudi Arabian authorities which, evidence demonstrates, revealed millions of dollars worth of NCB financing and banking support to al Qaeda.  But in its discussion at pp. 15-16, NCB implies falsely that the audit it produced for *in camera* inspection was the document Plaintiffs sought in discovery.  Plaintiffs request, however, focused on a distinctly different audit/investigation that is well-documented in multiple independent sources, including Congressional testimony of a top U.S. counterterrorism official, a declaration of a former NCB employee, and diplomatic traffic of the French government.  *See* Haefele 3/19 Decl., at ¶ 6 and Exhibits A, B, C, and D.  At first, NCB refused to produce the document described.  Then NCB recast Plaintiffs' request and produced a distinctly different

Documents and agrees with Plaintiffs either that NCB has not been forthright or that the facts are unclear and deserving of discovery, the Court can grant discovery. In either case, discovery is proper and NCB will be discouraged from being not candid. On the other hand, if the Court refuses to examine the Documents, and does not examine information that indicates NCB's lack of candor, the Court rewards and incentivizes that conduct.

Indeed, if anyone is guaranteed a benefit from the examination, the Court is the worthy beneficiary of the review. Rather than being required to consider Plaintiffs' requests for discovery based on being mislead and kept in the dark, instead, the Court should consider readily available information that elucidates. Given the strong public policy that favors resolution of disputes on their merits, *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 172 (2d Cir. N.Y. 2001); *American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. N.Y. 1996); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003); *Fashion Fragrance & Cosmetics v. Croddick*, 2003 U.S. Dist. LEXIS 5641 (S.D.N.Y. Apr. 7, 2003); *Magee v. Paul Revere Life Ins. Co*., 172 F.R.D. 647, 649 (E.D.N.Y. 1997), the Court should endeavor to resolve the dispute before it with full facts under consideration, rather than ignoring facts or accepting a parties offer of misleading facts. *See Tabbaa v. Chertoff*, 509 F.3d 89, 93 n. 1 (2d Cir. 2007), citing *Weberman v. Nat'l Sec. Agency*, 668 F.2d 676, 678 (2d Cir. 1982) (in order to "create[] a more complete record," the court may view "top secret" material *ex parte and in camera*). Here, the Court benefits greatly by being afforded the

---

document for *in camera* inspection. Now NCB claims vindication because Judge Maas found the document it produced did not contain the information Plaintiffs sought. What NCB produced was clearly not the audit/investigation Plaintiffs had requested – in fact, the time frames addressed by the two distinct documents were inconsistent.

opportunity to examine greater information rather than relying upon only NCB's self-serving statements and NCB's refusal to provide adequate or accurate discovery responses.

In support of their arguments that the Court should preclude Plaintiffs from using the Documents, although the government cites no precedent, NCB cites and misconstrues two cases, ignores the facts in this case, and omits myriad of other support for Plaintiffs' position. NCB relies on *Fayemi v. Hambrecht & Quist, Inc.* 174 F.R.D. 319 (S.D.N.Y. 1997)(Francis, U.S.M.J.), and includes a parenthetical stating that the case stands for the proposition that courts "preclud[e] use in litigation of 'wrongfully obtained' documents." But NCB completely omits that the court required that the party seeking to admit the wrongfully obtained documents acted wrongfully in obtaining the documents – a fact conspicuously missing here.[3]

The first of two distinct, but related issues the *Fayemi* Court addresses is "whether a federal court has the power to sanction a party for obtaining evidence improperly outside of the litigation process." On this issue, the Court premised imposition of sanctions on the existence of wrongdoing in obtaining the evidence on the part of the party seeking to introduce the evidence. In *Fayemi*, an employment discrimination case, the weekend after the defendant fired the plaintiff, the plaintiff entered the former employer's offices without permission or authority and obtained confidential information from his former supervisor's computer files. When the plaintiff sought to admit the information that he stole, the employer defendant moved under Rule 26 for dismissal of the complaint and for an order precluding plaintiff's use of the stolen information. 174 F.R.D. at 322, 325. The court

---

[3] NCB also cites *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008), and includes a parenthetical stating that the case stands for the proposition that courts "preclud[e] use in civil litigation of documents obtained in violation of the federal Stored Communications Act." Because the cited case says very little and certainly nothing more than *Fayemi,* Plaintiffs address *Fayemi* only.

determined that, although it had no authority under Rule 26 to limit the use of evidence obtained outside of discovery, *id* at 323, the court had inherent authority to sanction a party that sought to introduce evidence the party obtained by virtue of that party's own wrongdoing. *Id* at 324. To do otherwise, the court reasoned, would allow the court to become complicit in the party's misconduct. *Id*. So, although the Court here would have the authority to impose sanctions like those addressed in *Fayemi* had there been evidence of wrongdoing, no such authority exists because Motley Rice engaged in no wrongdoing in obtaining the Documents.

Both the government's letter and NCB's opposition omit the myriad of cases that emphasize this distinction conveniently glossed over in their submissions – namely, the necessary distinction between parties that actively secure evidence by wrongful conduct and those who passively receive evidence. *See, e.g., Orbit One Communications, Inc. v. Numerex Corp.*, 2008 U.S. Dist. LEXIS 90981, Dkt. No. 08 Civ. 0905 (LAK), *30-31 (S.D.N.Y. October 31, 2008) (distinguishing the case from *Fayemi* because the conduct in obtaining the documents was not "clearly wrongful" or "sufficiently serious to warrant a significant sanction."); *Shanahan v. Vallat*, 2006 U.S. Dist. LEXIS 83221, Dkt. No. 03 Civ. 3496 (PAC), *5-6 (S.D.N.Y. November 14, 2006) (refusing to impose sanctions in absence of evidence that party seeking to admit the documents obtained them by wrongful inducement); *Log on Am., Inc. v. Credit Suisse First Boston Corp.*, 2001 U.S. Dist. LEXIS 17972, Dkt. No. 01 Civ. 0272 (RMB)(MHD), *6 (S.D.N.Y. November 5, 2001) ("neither the Federal Rules of Civil Procedure nor courts' inherent powers support an order prohibiting use of information innocently obtained from third parties without use of judicial process.") (citing *Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 325 (S.D.N.Y. 1997)* (quoting

*Schlaifer Nance & Co. v. Estate of Andy Warhol, 742 F. Supp. 165, 166 (S.D.N.Y. 1990)))*;

*Josephson v. Marshall*, 2001 U.S. Dist. LEXIS 10049, Dkt. No. 95 Civ. 10790 (RCC)

(S.D.N.Y. July 18, 2001) (Defendants "failed to draw the necessary distinction between a

party that actively secures evidence that she is not entitled to and one that passively receives

evidence from a questionable source"); *Madanes v. Madanes*, 186 F.R.D. 279, 292 (S.D.N.Y.

1999) (distinguishing "between a party that actively secures evidence that she is not entitled

to and one that passively receives evidence from a questionable source. … [W]here the party

receiving the evidence was not involved in any wrongful conduct in securing it,… there is no

basis for requiring the return of the information obtained or prohibiting its use) (citing

*Schlaifer Nance & Co. v. Estate of Warhol, 742 F. Supp. 165, 166 (S.D.N.Y. 1990)*.

  The second issue that the *Fayemi* Court addresses is "whether otherwise appropriate

sanctions should be withheld where the party seeking them has itself engaged in

misconduct." Id. at 321.  Although Plaintiffs' counsel has engaged in *no* misconduct in

obtaining the Documents, and the Court therefore need not address the second issue in the

same manner as addressed in *Fayemi* (whether to withhold sanctions where the party seeking

them has engaged in misconduct), *NCB's misconduct* in refusing to disclose evidence

referenced in the Documents, is nonetheless relevant to the manner in which the Court should

resolve this dispute.  Inasmuch as courts must avoid becoming complicit in a party's

misconduct, the Court should likewise eschew becoming complicit with NCB's conduct of

avoiding disclosures of information demonstrating NCB's ties to Al Qaeda financing.  This

policy, coupled with the policy to resolve disputes on their merits, weigh heavily in favor of

the Court considering the information in its possession, rather than ignoring it.

**B.**    **Consideration Of The Documents Does Nothing To Undermine The Court's Orders Regarding Contention Discovery.**

NCB's argument that Plaintiffs should be punished because they did not disclose classified documents, the production of which was properly objected to in a timely manner, and that the U.S. government agrees should not have been produced to the defendants, is nothing short of frightening.  While on the one hand, the government argues that the Documents should not be disclosed to anyone without proper clearance, on the other hand, NCB argues that Plaintiffs were obligated to have disclosed the documents to NCB in jurisdictional discovery.  Clearly, Plaintiffs were never obliged to disclose classified documents to NCB, exercised proper discretion in declining to do so, and should not now be punished for declining to disclose what the government has deemed to be classified information.  Moreover, to the extent that the documents are examined by the Court now, the only "prejudice" that NCB may suffer is being required to produce discovery that it was obligated to produce long ago.

In response to NCB's jurisdictional discovery requests, Plaintiffs complied, to the best of their ability, with their obligation to produce only those documents that Plaintiffs reasonably intended to rely upon in response to NCB's re-newed motion to dismiss, which at the time had not yet been filed.  *See* Haefele 3/19 Decl., at Exh. E, Transcript of December 13, 2006 Discovery Conference before the Hon. Frank Maas, U.S.M.J., page 16, line 1 to page 17, line 17.[4]  As Plaintiffs have previously expressed with concern, because Plaintiffs

---

[4] Although the cited transcript is to a conference regarding defendant SBG's request for jurisdictional discovery, when NCB made its request for jurisdictional discovery, it explained it was for the same reason.  Plaintiffs' counsel argued that, because the purpose of jurisdictional discovery was to permit plaintiffs to discover facts to support plaintiffs' jurisdictional allegations, defendants was not generally entitled to jurisdictional discovery. Although Judge Maas granted jurisdictional discovery to SBG (and later to NCB), the discussion at the hearing indicates that the obligation did not extend beyond those items Plaintiffs "intend to use" in response to the motion to dismiss.  *Id*. at page 16, line 21-23.

were required to produce documents they would rely upon in opposition to NCB's renewed

motion to dismiss long before NCB re-filed its renewed motion, Plaintiffs could not possibly

know the universe of documents that would be needed to oppose the motion.  Although in

many regards the Plaintiffs likely overproduced in response to NCB's request, Plaintiffs were

not obliged to produce documents that Plaintiffs did not anticipate relying upon in opposing

NCB's motion.  To the extent Plaintiffs had potentially classified documents, Plaintiffs

would not have anticipated producing them to NCB as evidence in response to NCB's

motion.  Accordingly, Plaintiffs were not obliged to produce the Documents in response to

jurisdictional discovery.  Moreover, at the time of Plaintiffs' production, Plaintiffs included

timely objections that in good faith covered production of the Documents.  However,

Plaintiffs would anticipate that, in NCB's discovery responses, NCB was obligated and

would have produced any responsive information contained in the Documents that was

within NCB's control.

  NCB's arguments consistently miss the point that the reason the Documents were

brought to the Court's attention now was to demonstrate the need for additional discovery.

Consistently throughout this litigation, Plaintiffs have been required to prove their

entitlement to nearly each discovery request, notwithstanding the well-established

comprehensive discovery framework that *entitles* litigants to obtain discovery regarding any

matter "*relevant to the claim or defense of any party.*" Fed. R. Civ. P. 26(b) (emphasis

supplied). "This obviously broad rule is liberally construed." *Deval Steel Products Div. of

Francosteel Corp. v. M/N Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991), *citing

Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under Rule

26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may be in the case").  The same standard applies to both merits and jurisdictional discovery. *Renner v. Lanard Toys Ltd*., 33 F.3d 277, 283 (3d Cir. 1994); *Edmond v. United States Postal Serv. Gen. Counsel*, 292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction.").  Thus, the starting point for analysis here is simply whether the discovery sought bears on, or reasonably could lead to other matter that could bear on, the plaintiffs' theories of jurisdiction, or any defenses raised by the defendant as to those theories of jurisdiction.

Although, at the time of their jurisdictional discovery production, Plaintiffs did not intend to file potentially classified documents in opposition to NCB's renewed motion to dismiss, that does not diminish the value the Documents have now in regard to demonstrating whether the discovery sought is proper – that is, whether it bears on, or reasonably could lead to other matter that could bear on, the plaintiffs' theories of jurisdiction.  Plaintiffs anticipate that even brief examination of the Documents as they relate to NCB will demonstrate not only that NCB has failed in its previous discovery responses to disclose anything indicative of the information included in the Documents, but also the propriety of Plaintiffs' arguments for receiving the requested targeted jurisdictional discovery before responding to NCB's motion to dismiss.

Regarding NCB's contention that the Second Circuit's decision in *In re Terrorist Attacks*, 538 F.3d 71 (2d Cir. 2008), has foreclosed Plaintiffs theories of specific jurisdiction concerning NCB, we disagree and refer Your Honor to Plaintiffs' explanations in the briefs

filed by the Plaintiffs' Executive Committee.  *See* MDL Dkt. # 2142, at pp. 10-20, # 2147, at pp. 15-17, and # 2156, at pp. 10-11.

The cases NCB cites to argue that Plaintiffs should be completely prohibited from using the Documents are not cases about suppressing use of documents – as NCB asserts; the cases assess, and ultimately deny, claims of work-product protection.  In both *Weiss v. Nat'l Westminster Bank*, PLC, 242 F.R.D. 33, 68 (E.D.N.Y. 2007) and *Strauss v. Credit Lyonnais*, 242 F.R.D. 199, 2370238 (E.D.N.Y. 2007), the courts were analyzing whether claims of work-product protection are overcome where the parties seeking disclosure demonstrate "substantial need" for the information.  Rather than being cases where the courts suppressed evidence, as NCB urges, in *Weiss* and *Strauss* the courts denied work-product protection and required production of the documents at issue.  The issue here is not whether the Court should overcome a claim of work-product protection to require production of documents.  Unlike in Weiss and Strauss, it is the government's assertion that the Documents are classified that is preventing disclosure, not Plaintiffs' assertion of work-product protection.[5]

## C.    NCB's Due Process Rights Have Not Been Violated.

Inasmuch as NCB has had both ample notice and ample opportunity to express its opposition to the requested *in camera* review, its due process rights have not been violated by Plaintiffs' request that the Court examine the Documents *in camera*.[6]  Plaintiffs submitted the

---

[5] The only other source for NCB's argument that Plaintiffs cannot use the Documents in any manner is *Oceans Cuisine, Ltd. V. Fishery Prods. Intern., Inc.,* 2006 WL 1071578, at *6-7, 2006 U.S. Dist. LEXIS 22133, at *7-8 (E.D.N.Y. April 21, 2006).  NCB selected a portion of a quote from a magistrate judge's discovery order included in the court's factual statement of the case.  The court upheld the magistrate judge's decision, finding that he was "best qualified to 'judge the entire atmosphere of the discovery process" and his discovery-related rulings are entitled to particular deference. *Id*. at *10-11.  Clearly, the magistrate judge's order was specific to that case.

[6] Throughout the process, the parties have included the term "*ex parte*" in referring to Plaintiffs' submission of the Documents for the Court's review.  However, the submission and the requested review are more properly characterized as "*in camera*" as opposed to "*ex parte*." *Estate of Trentadue ex rel. Aguiar v. United States Of*

Documents to the Court in August 2008, on notice to NCB, and no *in camera* review has occurred yet.  To date, NCB has written to the Court on no less than three occasions complaining that its due process rights have been violated.  Although the requirements of due process vary from case to case and the procedures due one person in one situation are not automatically required for another person in a different situation, the standards generally include notice and opportunity to be heard.  *Blatch v. Hernandez*, 360 F. Supp. 2d 595, 613 (S.D.N.Y. 2005); *Crimmins v. American Stock Exchange, Inc*., 346 F. Supp. 1256, 1259 (S.D.N.Y. 1972).  Here, NCB was given notice and, considering the pages and pages that NCB has devoted to opposing the *in camera* review, its claim that its due process rights have been violated ring hollow.

NCB quotes out of context the cases it uses to argue that Plaintiffs violated its due process rights.  For example, NCB quotes *Parisi v. Rochester Cardiothoracic Assoc*., 159 F.R.D. 406, 407 (W.D.N.Y. 1995) as saying "Due process *is* violated 'when an attempt is made by one party to submit matters in camera without advance notice to the opposing party that in camera review will be sought.'" *See* Def't Brief at 14 (emphasis added).  However, the text of the decision did not state that due process was violated under the indicated circumstances.  Rather, the decision involved consideration of the *possible* due process *implications* of routine use of *in camera* proceedings and noted that those considerations "become more stark when an attempt is made by one party to submit matters in camera without advance notice to the opposing party…." Id. at 407.  Nonetheless, as indicated

---

*America*, 397 F.3d 840, 865 (10th Cir. 2005) (distinguishing between *ex parte* and *in camera* where submissions were submitted on notice and under a claim of privilege or secrecy).  Here, each document submitted for the Court's consideration was with valid claim that the documents were properly not to be disclosed to the defendants, a claim confirmed by the U.S. government.  Moreover, NCB has had adequate notice of the submission and quite adequate opportunity to argue against Plaintiffs' request.

above, here, NCB has received ample notice and substantial opportunity to voice its

opposition to the Court's *in camera* review.

That courts are authorized under certain circumstances to address the *merits* of a

claim using *in camera* review of government information, assuredly includes the lesser

ability to use similar tools to resolve subject matter jurisdiction and discovery disputes,

which raise even more limited due process concerns than merits evaluations. *See, e.g.*,

*Meridian Int'l Logistics v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (court properly

considered *ex parte* FBI declaration for making subject matter jurisdiction determinations

under Federal Tort Claims Act). Indeed, as the Tenth Circuit has noted, "To the extent the

submission of any matter can rightly be construed as an *ex parte* proceeding, we note that

'not all *ex parte* proceedings violate due process or even raise a serious constitutional issue.'"

*Estate of Trentadue ex rel. Aguilar*, 397 F.3d at 865 (10th Cir. 2005) (quoting *Simer v. Rios*,

661 F.2d 655, 679 (7th Cir. 1981)).

Any prejudice that NCB may claim – which Plaintiffs contend has been zero – is

entirely imaginary because Plaintiffs are requesting merely an independent review of the

Documents by an impartial judge, without substantive argument of the content from either

side, to determine whether additional jurisdictional discovery is needed. The Court's

decision here would not result in a decision against NCB on the merits, but would be merely

a discovery decision related to the Court's jurisdiction.

**D.    Reliance On The FOIA Mechanism Is An Inefficient Replacement For The Court To Learn What It Already Has In Its Possession.**

The government argues that the Plaintiffs' request for the Court to consider the

Documents *in camera* should not be granted because Plaintiffs have other discovery

mechanisms available to receive available information from the classified documents. Namely, the government argues, that Plaintiffs have access to the available information through requests pursuant to the Freedom of Information Act.  But such requests, which take many years to process, are no practical substitute for the Court's ability to review information already easily accessible for the Court's review.  Moreover, though these alternative resources are permissible, they need not be the exclusive resources used.

Although Plaintiffs may at some point receive redacted versions of the documents pursuant to FOIA requests, there is absolutely no real guarantee as to when such production may take place or the degree of redactions that will be done to the documents.  As the government commented, Plaintiffs' counsel are not unfamiliar with the FOIA request quest and have made numerous such requests, of which dozens have remained outstanding for five years or more.  Haefele 3/19 Decl., at ¶ 7.  Moreover, inasmuch as at least one of the FOIA requests is directed at the FBI, Plaintiffs note the recent commentary on the FBI's abysmal work in responding to FOIA requests.  *See* Haefele 3/19 Decl., at ¶ 6 and Exhibit F, Michael J. Sniffen, Associated Press, *FBI Cited for Poor Freedom of Information Work* (March 12, 2009), available at *http://www.google.com/hostednews/ap/article/ALeqM5jfHh4VYKZXUp2qwlHTGegn18jmggD96SRSL80*.  According to a National Security Archives recent study of the FBI's responses to FOIA requests, the FBI uses an outdated and deliberately limited search process that doesn't find relevant records and "FBI records show that over the past four years the bureau told 66 percent of requesters — 37,342 out of 56,530 requests — that it found no responsive records."  And "[i]In 2008, only 89 requesters, 0.5 percent of the year's total, got everything they asked for from the FBI; 2,276, 13 percent, got part of what they sought."  *Id*.

In short, although Plaintiffs have certainly represented a willingness to make the necessary FOIA requests, the excessive delay and the uncertainty of the results make the FOIA approach a completely unreasonable alternative suggestion to the Court's examination of documents sitting within the Courthouse available for the Court's *in camera* review.

## III.    Conclusion

For the foregoing reasons, as well as for the reasons articulated in Plaintiffs' original memorandum dated February 23, 2009, Plaintiffs' Motion for Declaratory Relief should be granted.  The Court has the authority to examine the Documents and, to the extent Plaintiffs are called upon the demonstrate the propriety of the requested additional jurisdictional discovery, the Court should exercise its authority to review the documents.

Dated: March 19, 2009
Mount Pleasant, SC

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
     Ronald L. Motley
     Jodi Westbrook Flowers
     Donald A. Migliori
     Michael E. Elsner
     Robert T. Haefele
     Elizabeth S. Smith
     John M. Eubanks
     Vincent I. Parrett
     Leah J. Donaldson

     28 Bridgeside Boulevard
     Post Office Box 1792
     Mount Pleasant, SC 29465
     Tel: (843) 216-9000
     *Counsel for Burnett Plaintiffs*