|  |  |
|---|---|
| IN RE TERRORIST ATTACKS ON<br>SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD)(FM)<br>ECF Case |

*This document relates to*:
    All Cases

### DECLARATION OF ROBERT T. HAEFELE

I, Robert T. Haefele, state the following:

1.    I am an attorney admitted to practice *pro hac vice* before this Court and an Associate at the firm of MOTLEY RICE LLC, counsel for Plaintiffs in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*, Civil Action No. 03 CV 9849. I submit this declaration in further support of the Plaintiffs' Motion for Declaratory Relief and to provide the Court with the exhibits referenced in Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Declaratory Relief, dated March 19, 2009.

2.    Motley Rice engaged in no wrongful conduct when it received the Documents, unsolicited, from an anonymous source, and offered no incentive for the receipt, either before or after receiving the Documents. Though not referenced in the government's brief, that fact was extensively reported to the government.

3.    While receipt of this kind of information may be atypical in other cases, it has been fairly commonplace for Plaintiffs' counsel here to receive unsolicited evidence from well-meaning, ordinary citizens, whose sole incentive presumably is to provide information thought to be relevant to preventing terrorists and their supporters from succeeding in their terrorist goals.

4.    At the time Motley Rice submitted the Documents for the Court's consideration and provided notice of the submission to NCB, copies of the Documents were already being sent from Charleston to New York for hand-delivery to the U.S. Attorney. Indeed, Plaintiffs' counsel

advised both NCB and the government that Plaintiffs were requesting the Court to conduct an *in camera* inspection of the Documents.

5. When the government originally directed Motley Rice to return all of the Documents, Motley Rice agreed to return whichever documents, based on the government's investigation, the government considered to be U.S. government documents that remained classified. That is, although Motley Rice did not accede to the government's excessively broad initial request to return all of the documents *regardless* of their classification status, Motley Rice agreed to keep the documents secured while the government determined which documents were classified. The government acceded to this distinction and permitted Motley Rice to keep the documents in a secured manner until such time as the government determined which documents were classified. Once the government reached a determination, Motley Rice acceded to the government's arrangements in scheduling a time for the FBI to retrieve the Documents. That happened on February 24, 2009, when the FBI agents retrieved 49 of the 55 documents and directed that the remainder of the Documents continue to be protected pending additional investigation.

6. Attached and identified below are true and accurate copies of Plaintiffs' exhibits identified in the Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Declaratory Relief, dated March 19, 2009; each of these items has previously been identified and included in previous submissions to the Court as well:

> Exhibit A – Testimony of Vincent Cannistraro, Former CIA Chief of Counterterrorism Operations and Analysis, before the House Committee on International Relations, October 3, 2001, at 4, where Mr. Cannistraro testified:
>
>> How does the al-Qaeda organization fund its worldwide network of cells and affiliated groups? Several businessmen in Saudi Arabia and in the Gulf contribute monies. ... There is little doubt that a financial conduit to Bin Laden was handled through the National Commercial Bank, until the Saudi government finally arrested a number of persons and closed down

the channel. It was evident that several wealthy Saudis were funneling contributions to Bin Laden through this mechanism.

Exhibit B – Declaration of Jagan M. Reddy, former employee of NCB and NCB affiliate SNCB, dated March 21, 2007, wherein Mr. Reddy states:

> During my tenure with SNCB ... I became familiar with the fact that an audit of NCB's financial dealings was done during the 1998 time period. This audit was done outside routine auditing that was done of NCB and resulted in Saudi authorities taking regulatory and other action to curb further misconduct by certain directors/managers/owners of the bank.

Exhibit C – Diplomatic Cable transmissions from Ambassador Poletti, dated July 19, 1999, and a certified translation of the transmissions, wherein the Ambassador states:

> An investigation of the Central Saudi Bank (SAMA) and Saudi Intelligence Services Reveal the implication of a banker Kaleed Bin Mahfouz, Director of National Commercial Bank, in several transfers benefitting organizations linked to the terrorism of Osama Bin Laden.
>
> The Saudi Authorities have undertaken, since the end of 1998, a series of investigations targeting the principal financial establishments of the Kingdom in order to determine their possible implication in the financing of terrorist organizations, following information obtained from an American source.
>
> ...
>
> A summary of the investigation report of the Saudi Authorities concerning the National Commercial Bank was transmitted by the American Authorities. It makes reference to transfers executed for the benefit of the organization Islamic Relief Worldwide, created out of the Muslim World League, and reputedly close to the terrorist chief Osama bin Laden.

Exhibit D – Diplomatic Cable transmission from Ambassador Poletti, dated July 21, 1999, and a certified translation of the transmissions, wherein the Ambassador encloses a "summary of information from the Saudi Central Ban (SAMA) investigation on the National Commercial Bank." The enclosed summary[1] provides in part:

> - "Audit conducted with the NCB audit committee and Zakat Committee during the second half of year 1998"
>
> - "NCB Directors established over the years credit and loans facilities for several charitable organizations, along with banking facilities .... Direct donations were received through those facilities to the Red Crescent

---

[1] Included at the back of Exhibit D is an additional copy of the referenced summary from another document set. It is included here merely because the copy is easier to read.

- Saudi Committee, International Islamic Relief Organization and Muwafaq Foundation."

- "Muwafaq charity received SR 11.38 million in loans and deposit."

- "NCB established special relations with the Saudi Joint Relief Committee for Kosovo and Chechnya and maintained two shared accounts with Al Rajhi Bank for the Joint Relief Committee and International Islamic Relief Organization donations in Kosovo and Chechnya."

- "The special accounts were not authorized nor reviewed neither by the Audit Division nor by the Zakat committee in 1998. SR 179.5 million were transferred through these two accounts to the International Islamic Relief."

Exhibit E – Transcript of December 13, 2006 Discovery Conference before the Hon. Frank Maas, U.S.M.J., pages 16 and 17.

Exhibit F – Michael J. Sniffen, Associated Press, *FBI Cited for Poor Freedom of Information Work* (March 12, 2009), available at http://www.google.com/hostednews/ap/article/ALeqM5jfHh4VYKZXUp2qwlHTGegn18jmggD96SRSL80.

7. Plaintiffs' counsel are not unfamiliar with the FOIA request process and have made numerous such requests, of which dozens have remained outstanding for five years or more.

I declare under penalty of perjury that the foregoing is true and correct, based on my knowledge, information and belief.

Executed on March 19, 2009
in Mount Pleasant, South Carolina

_____
Robert T. Haefele