**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re TERRORIST ATTACKS on ) | 03 MDL 1570 (GBD)(FM) |
| SEPTEMBER 11, 2001 ) | ECF Case |

*This document relates to:*
     All Cases

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT**
**NATIONAL COMMERCIAL BANK TO STRIKE OR, ALTERNATIVELY,**
**FOR LEAVE TO RESPOND TO NEW ARGUMENTS IN PLAINTIFFS' REPLY IN**
<u>**SUPPORT OF THEIR MOTION FOR DECLARATORY RELIEF**</u>

Dated: March 30, 2009          Mitchell R. Berger (MB-4112)
          Washington, D.C.          Alan T. Dickey
                              PATTON BOGGS LLP
                              2550 M Street, N.W.
                              Washington, D.C. 20037
                              Phone: 202-457-6000
                              Fax:     202-457-6315

                              *Attorneys for Defendant*
                              *The National Commercial Bank*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   The Court Should Strike the Excess Pages and New Arguments in Plaintiffs' Reply
Papers, or Should Allow NCB to Respond to Plaintiffs' New Arguments. ........................ 1

II.  Magistrate Judge Maas Considered and Rejected Plaintiffs' Argument about a Terror-
Financing "Audit" of NCB, and Plaintiffs' Parallel Allegation that NCB is
Withholding Evidence of the Supposed "Audit." .................................................................. 3

III. Plaintiffs' Conclusory Denial of their Wrongful Conduct is Meaningless Given the
Government's Position that the Documents Cannot be Used for Any Purpose in
this Litigation, and the Uncontested Facts Concerning Plaintiffs' Misconduct.................. 7

Conclusion   ...........................................................................................................................10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re TERRORIST ATTACKS on | 03 MDL 1570 (GBD)(FM) |
| SEPTEMBER 11, 2001 | ECF Case |

*This document relates to:*
      All Cases

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT
NATIONAL COMMERCIAL BANK TO STRIKE OR, ALTERNATIVELY,
FOR LEAVE TO RESPOND TO NEW ARGUMENTS IN PLAINTIFFS' REPLY IN
SUPPORT OF THEIR MOTION FOR DECLARATORY RELIEF**

Defendant National Commercial Bank ("NCB") respectfully submits this memorandum in support of its motion to strike or, alternatively, for leave to respond to new arguments raised in plaintiffs' Reply in support of their Motion for Declaratory Relief (MDL Dkt. #2163) ("Reply") and plaintiffs' accompanying March 19, 2009 reply Declaration of Robert Haefele (MDL Dkt. #2164) ("Haefele 3/19/09 Decl.").

I.      **The Court Should Strike the Excess Pages and New Arguments in Plaintiffs' Reply
        Papers, or Should Allow NCB to Respond to Plaintiffs' New Arguments.**

Continuing their pattern of misconduct, plaintiffs' Reply exceeds the 10-page limit for reply briefs, and it uses those excess pages (along with the reply declaration) improperly to raise new arguments that could have been, but that were not, raised in their opening brief and declaration. *See* MDL Dkt. #2157 (motion), #2158 (memorandum), and #2159 (original supporting Declaration of Robert T. Haefele). In their 16-page Reply, plaintiffs use an unauthorized extension of their 10-page limit to make the following new arguments:

        i.      Dramatically shifting away from the rationale of their opening papers, plaintiffs now
        outrageously argue that the Court should undertake an *in camera* review of the classified
        documents ("Documents") in order to evaluate plaintiffs' allegation that "NCB has not been
        forthright with this Court or with the Plaintiffs throughout the discovery process." Reply at
        2-5, 5 n.2, 8; Haefele 3/19/09 Decl. ¶ 6. This allegation—while new to the Motion for
        Declaratory Relief—is a familiar refrain in the repertoire of plaintiffs' jurisdictional discovery
        arguments. At its core, this allegation hypothesizes that the Saudi government conducted,

and that NCB has withheld, an audit evaluating terror-financing allegations concerning NCB. *Id.*  It is important for this Court to know that Magistrate Judge Maas rejected this same accusation in his jurisdictional discovery rulings.

ii.      Plaintiffs separately make the new—but entirely conclusory—assertion that plaintiffs' counsel "engaged in no wrongful conduct when it received the [classified] Documents."  Although their opening papers studiously avoided the circumstances under which plaintiffs acquired those Documents, plaintiffs' reply affidavit for the first time claims that the Documents were supplied by an "anonymous donor" without any "incentive or benefit" from plaintiffs' counsel.  Haefele 3/19/09 Decl. ¶¶ 2-3.  These improperly-raised new and conclusory assertions are utterly insufficient to overcome the U.S. Government's decision that the Documents cannot be used for any purpose in this litigation because they comprise classified or otherwise restricted national security information.   In any event, plaintiffs' conduct clearly was wrongful given the facts set out by the Justice Department and by NCB in their oppositions to plaintiff's Motion for Declaratory Relief.

In order to ensure fairness to the non-moving party, courts properly strike new arguments made (and accompanying evidence tendered) for the first time in reply papers:[1]

> [P]laintiffs will not be heard to advance for the first time in reply papers new arguments that could and should have been made in their opening papers.  To countenance such action would promote litigation by ambush and, in any case, deprive defendant of a fair opportunity to respond.

*White v. First American Registry*, 592 F. Supp. 2d 681, 683 (S.D.N.Y. 2009); *accord DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) ("[D]efendant was not precluded from making a substantive due process argument in its moving papers and cannot now raise it for the first time in its reply papers."); *In re Adelphia Comms. Corp. Sec. & Deriv. Litig.*, 398 F. Supp. 2d 244, 250 n.6 (S.D.N.Y. 2005) (declining to consider argument raised for the first time in a reply brief); *Carbonell v. Acrish*, 154 F. Supp. 2d 552, 561 & n.10 (S.D.N.Y. 2001) (declining to consider new arguments submitted on reply and collecting 19 cases confirming that proposition).

---

[1] This rule applies to reply affidavits with the same force that it applies to reply briefs.  *See Mapinfo Corp. v. Spatial Re-Engineering Consultants*, 2007 WL 28411, at *1 n.1 (N.D.N.Y. Jan. 3, 2007) (holding that, where a party "submitted [an] affidavit as part of it reply papers on [a] motion, not as part of its original motion," the affidavit "may not be considered because it constitutes new factual matters not presented to the Court on the original motion."); *Silverman v. Local 78, Asbestos, Lead & Hazardous Waste Laborers*, 958 F. Supp. 129, 131 n.1 (S.D.N.Y. 1996) (declining to consider evidence submitted for the first time in a reply; because "it would be inequitable . . . for the Court to consider this new evidence submitted in reply, the Court makes its findings of fact based solely upon the evidence submitted initially by Petitioner").

Also to ensure fairness, courts properly strike reply briefs that exceed established page limits, particularly when the oversized brief raises new arguments.  *See, e.g., MCI LLC v. Rutgers Cas. Ins. Co.*, 2007 WL 2325867, at *18 n.18 (S.D.N.Y. Aug. 13, 2007) ("[T]here is a ten-page limit on reply memoranda …  Moreover, to the extent Defendant seeks to raise new legal arguments in its Reply Affirmation, such arguments need not be addressed."); *DeFazio v. Wallis*, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006) (striking a memorandum of law that violated the court's rules, including the court's page limit; requiring re-filing of the memorandum in compliance with the rules).

Because these rules seek to afford the non-moving party a "fair opportunity to respond" to the movant's arguments, *White*, 592 F. Supp. 2d at 683, courts alternatively will accept further briefing by the non-movant that is targeted to the new reply arguments.  *See Duttle v. Bandler & Kass*, 1990 WL 52147, at *1 n.5 (S.D.N.Y. Apr. 17, 1990) ("Rather than striking the memorandum," which "raised new arguments," the court "permitted further briefing on the issues raised therein."). Accordingly, if the Court does not strike plaintiffs' reply papers, then NCB requests that the Court consider its responses below to plaintiffs' new reply arguments and documents.

## II. Magistrate Judge Maas Considered and Rejected Plaintiffs' Argument about a Terror-Financing "Audit" of NCB, and Plaintiffs' Parallel Allegation that NCB is Withholding Evidence of the Supposed "Audit."[2]

From mid-2006 to mid-2007, Magistrate Judge Maas directed discovery into plaintiffs' contention that circa 1998 the Saudi Central Bank (SAMA) investigated whether NCB had donated its own funds or transferred third-party funds to Islamic charities that, in turn, diverted those funds to Al Qaeda.  *See* MDL Dkt. #1849 (directing NCB to "confirm with SAMA whether the Saudi government conducted an 1998 audit of NCB"); MDL Dkt. #1964 (directing NCB to produce the

---

[2] The history of plaintiffs' allegations concerning the supposed audit and the related jurisdictional discovery requests and rulings is more fully set forth in NCB's July 2008 renewed motion to dismiss for lack of personal jurisdiction (MDL Dkt. #2111) at 27-29, and in NCB's August 2008 opposition to plaintiffs' renewed requests for additional jurisdictional discovery (filed as MDL Dkt. #2161, Exh. 3) at 18-21.

SAMA "1998 audit report (for *in camera* review by the Court")); MDL Dkt #1971 (reporting that, following *in camera* review of the SAMA 1998 audit report, the Court found "nothing … which relates to the issues presently pending before the Court concerning NCB" and "declin[ing] to direct any further discovery (not previously ordered) related to NCB.").

At the same time (as explained in NCB's renewed motion to dismiss), NCB twice obtained confirmation from SAMA that:

- SAMA is "not aware of any audit of NCB undertaken in 1998 intended to explore whether NCB played a knowing role in the financing of terrorist activities directed against the United States or one that confirmed that NCB knowingly financed terrorist acts against the United States."  MDL Dkt. #2115, Exh. 8; *see also* MDL Dkt. #2111, at 28.

- SAMA (i) has no knowledge of "any audit or examination of NCB in the general time frame of 1998 or later which examined alleged involvement in financing terrorist activities"; (ii) SAMA had "not required any such audit"; and, (iii) SAMA "has taken no … adverse regulatory action" against NCB based on "alleged involvement in financing terrorist activities."  MDL Dkt. #2115, Exh. 10; *see also* MDL Dkt. #2111, at 28-29.

Disappointed with the results of this intensive discovery inquiry, plaintiffs previously accused NCB of "wordsmithing" in its proof that there had not been a terror-financing audit of NCB.  Magistrate Judge Maas expressly rejected plaintiffs' "wordsmithing" allegation in the same order in which he found that the 1998 SAMA audit report on NCB contained "nothing … which relates to the issues presently pending before the Court concerning NCB."  MDL Dkt. #1971 (finding that "[t]he 'wordsmithing' allegation … is not new" and that the "parameters" of what NCB was required to produce were clearly established at the discovery hearing before Magistrate Judge Maas).

Importantly, Magistrate Judge Maas and the Saudi Central Bank (SAMA) did not stand alone in rejecting plaintiffs' allegations about a terror-financing audit of NCB.[3]  Plaintiffs' original source

---

[3] Additionally, as Judge Casey noted, "the presidentially-appointed September 11 commission found no evidence of the Kingdom's funding or support for the September 11 terrorists."  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 803 (S.D.N.Y. 2005) (citing *The 9/11 Commission Report:  Final Report of the National Commission on Terrorist Attacks Upon the United States*, 48, 171 (July 2004) ("[W]e have found no evidence that the Saudi government as an institution or

for the discredited "audit" allegation has disavowed the authenticity of the document on which the allegation relied. The entire "audit" discovery effort was set in motion by plaintiffs' request for "a copy of an audit of NCB that the Saudi government allegedly undertook in 1998, together with all underlying documents referenced therein." MDL Dkt. #1849 (Discovery Order), at 3 (describing plaintiffs' discovery requests). In that original discovery request, plaintiffs referred to (and attached as an exhibit) a multi-page English-language supposed "Summary of the Saudi National Commercial Bank Audit Report SAMA Source/AS." This exact same document now reappears in the March 19, 2009 reply declaration of Robert Haefele (attached thereto as Exhibit D, and referenced in Exhibit C thereto).

Plaintiffs' original source for this "audit" document was Jean-Charles Brisard, an investigator who in turn claimed to have obtained this "SAMA Source" document from French intelligence sources, but who subsequently retracted his allegations that any such audit occurred. *See* NCB's Motion to Dismiss (MDL Dkt. #2111) at 28 (quoting the Brisard retraction filed with the Court as MDL Dkt. #1904, Exh. A ¶¶ 23, 24, 25.2). Specifically, Brisard's retraction informed the Court, *inter alia*, that "I have no evidence to suggest that the Saudi Arabian Government ordered a special audit of the NCB to address concerns of the American authorities that "*uncovered massive transfers made to charity organizations with ties to Osama bin Laden, some of which were controlled by members of the bin Mahfouz family.*"[4] *Id.* (italics in original, referring to Brisard's allegations).

---

senior Saudi officials individually funded the organization.")). At least some plaintiffs acknowledge that, "[s]ince 1999, the Kingdom of Saudi Arabia has owned a controlling interest in National Commercial Bank, and operated the bank as an agency, instrumentality and organ of the Kingdom." MDL Dkt. #111 (Federal Insurance First Amended Complaint) at ¶ 287.

[4] NCB informed plaintiffs long ago that there had been "a February 1998 report of an examination of NCB conducted by Arthur Andersen at the direction of SAMA," but that the report did not contain any reference to "any of the subjects that are within the scope of Plaintiffs' terror-financing allegations against NCB." *See* MDL Dkt. #2111, at 28. It was this February 1998 audit report that Magistrate Judge Maas reviewed *in camera*. *Id.* Mr. Brisard, in explaining his retraction, stated: "I … acknowledge that the ["audit" summary] appears to be a summary of a regular audit of the NCB that all banks carry out on a yearly basis. … I had read an interview with [former NCB director Abdulrahman bin Mahfouz] in which he said that an audit was carried out at the NCB. However, I now understand this to mean that this was a standard audit of the NCB that was carried out on a yearly basis as with all banks." *Id.*

5

Undeterred, plaintiffs yet again exhume this discredited allegation to advance the outrageous accusation that NCB has not been "forthright" about this non-existent "audit."  Reply at 4-5, 5 n.2, 8.  It is hard to imagine an allegation more thoroughly investigated during the jurisdictional discovery process, or more thoroughly repudiated by Magistrate Judge Maas, the Saudi Central Bank and plaintiffs' own investigator.  This recycled allegation therefore cannot provide a basis for undertaking an *in camera* review of the classified Documents—even if the U.S. Government had not separately insisted that these Documents cannot be used for any purpose in this litigation.[5]

Fortuitously, the Second Circuit's *Terrorist Attacks* decision obviates any need for this Court to dwell on these recycled allegations.  The Second Circuit has held that these plaintiffs <u>cannot</u> obtain jurisdiction over a Saudi defendant based on a theory that:

- A defendant made donations to Islamic charities and was "reckless in monitoring how their donations were spent, or could and did foresee that recipients of their donations would attack targets in the United States" or even "intended to fund al Qaeda through their donations to Muslim charities."  *In re Terrorist Attacks*, 538 F.3d 71, 94-95 (2d Cir. 2008) (citations and internal quotations omitted).  Or,

- A defendant provided "financial services to an entity that carries out a terrorist attack on United States citizens."  *Id.* at 96.

Of course, NCB emphatically denies that it took any actions that could be characterized as providing support in any way to al Qaeda, whether by charitable donations or by providing financial services to its customers.  Indeed, in the nearly eight years since the September 11th attacks, the United States Government has aggressively utilized its broad authority under Executive Order 13224 to designate entities that have been found to assist in or provide financial support or services to

---

[5] As NCB has previously explained, the two unauthenticated "diplomatic cables" that appear once again in the 3/19/09 Haefele Declaration (Exhs. C & D) are inadmissible hearsay that, in any event, do nothing more than discuss the same supposed SAMA "audit" of NCB that SAMA has disavowed and plaintiffs' investigator Brisard has disowned.  *See* NCB opposition to additional jurisdictional discovery (MDL Dkt. #2161, Exh. C) at 18-21.

terrorist organizations—but has never subjected NCB to any such designation or any other sanction.[6]

Regardless, even direct proof that NCB made donations to charities that in turn diverted money to al Qaeda, or that the bank provided financial services to customers who themselves aided al Qaeda, would be jurisdictionally insufficient under the Second Circuit's *Terrorist Attacks* decision. Proof of any Saudi government investigation into any such donations or bank services therefore would be still more remote from the jurisdictional inquiry.   Accordingly—even putting aside SAMA's repeated confirmation that it knows of no such investigation—these discredited and recycled audit allegations cannot provide a legally sufficient rationale to undertake *in camera* review of the classified Documents.  *See, e.g.*, *United States v. Viertel*, 2008 WL 1944851, at *2 (S.D.N.Y. Apr. 30, 2008) ("It should be noted that the defendant raises new arguments in his reply brief. ...  New arguments in a reply brief are not a proper basis for a motion <u>and in any event they are a restatement of arguments the Court has already rejected</u>.") (emphasis added).   The U.S. Government in any event has ruled out use of the Documents for any purpose in this litigation because they comprise classified or restricted national security information.

**III.  Plaintiffs' Conclusory Denial of their Wrongful Conduct is Meaningless Given the Government's Position that the Documents Cannot be Used for Any Purpose in this Litigation, and the Uncontested Facts Concerning Plaintiffs' Misconduct.**

At the same time that plaintiffs insist that they "engaged in no wrongful conduct," they ignore both the Government's and NCB's showing that the Government need not prove any wrongful conduct by the plaintiffs in order to prohibit use of the classified/restricted government

---

[6]  http://www.treas.gov/press/releases/hp191.htm;  http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf. Unimpressed by what the Government has done under Executive Order 13224, plaintiffs cite (not for the first time) a hearsay statement of a former CIA officer, Vincent Cannistraro.  Haefele 3/19/09 Decl., Exh. A.  As NCB has previously explained (*see* NCB's Reply Mem. in Supp. of Mot. to Dismiss, MDL Dkt. #553 (filed Nov. 29, 2004), at 2-3), Judge Casey previously refused to put any stock in this inadmissible hearsay statement (*see* MDL Dkt. #509, Tr. of 10/12/04 Hearing, at 78-79), which in any event does not allege any knowing or intentional involvement by NCB in any wrongful financial transfers by bank customers.

Documents for any purpose in this litigation.  *See* MDL Dkt. #2161, Exh. D (3/9/09 DOJ Letter); MDL Dkt. #2160 (NCB Opposition to Motion for Declaratory Relief) at 8.  Bypassing that point entirely, plaintiffs instead focus on NCB's alternative argument that—<u>if</u> the Government had not exercised its authority to preclude use of classified government information—<u>then</u> the Court would have inherent authority to preclude the use of the Documents because they were wrongfully obtained.  *Compare* MDL Dkt. #2160, at 9 *with* Reply at 4-8 and Haefele 3/19/09 Decl. ¶¶ 2-3.

Even if the Court found it necessary to reach NCB's alternative argument, the existing record leaves no alternative but to find that the plaintiffs acted wrongfully: in receiving the Documents, which apparently indicated on their face that they contained classified information (MDL Dkt. #2160, at 6-7; MDL Dkt. #2161, Exh. D (3/9/09 DOJ Letter), at 3); in possessing and using the Documents to draft discovery requests directed to NCB (MDL Dkt. #2160, at 7; MDL Dkt. #2161, Exh. D, at 2 n.*); in hiding their existence from the Court and from NCB during the contention discovery process (MDL Dkt. #2160, at 6-7; MDL Dkt. #2161, Exh. D, at 2 n.*); and in grudgingly and belatedly surrendering the Documents to Government agents (MDL Dkt. #2161, Exh. D, at 4-5).  The Government already has informed the Court that:

- "The documents were provided to Motley Rice in violation of the Executive Order governing handling of classified national security information, and potentially in violation of federal criminal law as well as other prohibitions on the disclosure of restricted Government information."  MDL Dkt. #2161, Exh. D (3/9/09 DOJ Letter) at 5.

- "Because Motley Rice did not have authorized possession of the Documents in the first instance, and may have received them as a result of possible criminal activity, plaintiffs should not be permitted to use them in any fashion."  *Id.* at 7.

- Motley Rice's possession and attempt to make litigation use of the Documents is "tantamount" to having "stolen [them] from the United States."  *Id.*

- "Allowing civil litigants to use classified information that they have obtained through unauthorized means would confer a benefit on those litigants who improperly obtain and disclose national security information, and thereby create problematic incentives."  *Id.*

On this record, it is unimaginable that the plaintiffs could seriously maintain that their conduct was not "wrongful" and, indeed, should be exonerated and rewarded.

Not one of the cases that plaintiffs cite (Reply at 6-8) to avoid a finding of wrongful conduct has anything to do with the established circumstances here—*i.e.*, the improper receipt, retention, and use of classified Government Documents, and the improper failure to disclose plaintiffs' possession of those Documents in response to contention discovery orders and requests.  Instead, plaintiffs' cited cases generally involve the acquisition of documents that, at most, were the subject of a debatable claim of attorney-client or work product privilege, and that eventually would have been provided on an equal basis to all parties through the discovery process.  *See Shanahan v. Vallat*, 2006 WL 3317018, at *1-*2 (S.D.N.Y. Nov. 15, 2006) (finding no applicable privilege to documents left behind in the offices of a party); *Josephson v. Marshall*, 2001 WL 815517, at *2 (S.D.N.Y. July 19, 2001) ("The exhibits' admissibility…turns on whether they are privileged. …  The Court's review of the exhibits in issue … supports Defendants' contention that they should be protected by the attorney-client privilege.") (internal quotations omitted); *Madanes v. Madanes*, 186 F.R.D. 279, 292 (S.D.N.Y. 1999) (finding that evidence was not privileged, and that it would have been disclosed through the discovery process).  In those very different circumstances, courts can avoid prejudice to the party seeking preclusion by instead ordering the full disclosure of the evidence to all parties.  *See Orbit One Comms., Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109-10 (S.D.N.Y. 2008).[7]

By contrast here, plaintiffs obtained classified Documents to which they never had any colorable claim of right—as they must have known from the outset—and plaintiffs thereafter repeatedly and knowingly hid their possession and use of the Documents from the Court and from

---

[7] Another decision relied upon by the plaintiffs, *Log On America, Inc. v. Credit Suisse First Boston Corp*, 2001 WL 1360233, at 1*-*3 (S.D.N.Y. Nov. 6, 2001), turned on a finding that the litigation had concluded and that the documents in question would never be used "in this now dismissed lawsuit."  Here, of course, plaintiffs seek to have the Court make use of the classified Documents in ongoing litigation.

NCB.  The classified/restricted status of the Documents alone is sufficient to preclude their use for any purpose in this litigation, as the Government has explained, even absent a finding of wrongful conduct by the plaintiffs.  But, if the Court did not rest its ruling solely on that point, then the facts here would compel a finding of wrongful conduct, and certainly would rule out any exoneration of, and reward for, plaintiffs' conduct as they seek.  NCB had nothing to do with the improper disclosure of these Government Documents to the plaintiffs, and to this day NCB has been prevented from gaining any knowledge of their contents.  Accordingly, any use of the Documents in this litigation not only would be against the directions of the U.S. Government, but also would prejudice NCB and reward the plaintiffs for their improper receipt, retention and use of the Documents, and plaintiffs' failure to disclose their possession of, and reliance on, those Documents during contention discovery.

## Conclusion

For the foregoing reasons, and those set forth in NCB's opposition to plaintiffs' Motion for Declaratory Relief, NCB's motion to strike plaintiffs' reply brief or, alternatively, for leave to respond to plaintiffs' new arguments should be granted, and plaintiffs' Motion for Declaratory relief should be denied.


Dated:  March 30, 2009                                    Respectfully submitted,
             Washington, D.C.



                                                                   /s/ Mitchell R. Berger
                                                                  Mitchell R. Berger (MB-4112)
                                                                  Alan T. Dickey
                                                                  PATTON BOGGS LLP
                                                                  2550 M Street, N.W.
                                                                  Washington, D.C. 20037
                                                                  Phone: 202-457-6000
                                                                  Fax:     202-457-6315

                                                                  *Attorneys for Defendant*
                                                                  *The National Commercial Bank*