**PATTON BOGGS**LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

*[Handwritten memo endorsement:] The Court will hold a conference on 4/9/09 at 11:30 a.m. in Courtroom 20A to discuss this application. Opposing counsel is encouraged to respond in writing prior to then. /s/ Maas, USMJ, 3/30/09*

March 27, 2009

Mitchell R. Berger
202-457-5601
mberger@pattonboggs.com

**VIA HAND DELIVERY**

The Honorable Frank Maas
United States Magistrate Judge
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

MAR 27 2009

Re:   *In re Terrorist Attacks on September 11, 2001*, MDL 03-1570 (GBD)(FM)
      This document relates to: All Cases

Dear Judge Maas:

On behalf of defendant, The National Commercial Bank ("NCB"), I respectfully submit this request that the Court quash four S.D.N.Y. Subpoenas[1] issued by the *Ashton* plaintiffs, which seek unauthorized and unjustified additional jurisdictional discovery from non-parties in connection with NCB's renewed motion to dismiss (MDL Dkt. ## 2110-2115).[2]

The Subpoenas are unauthorized because:

- They seek information that relates directly, if not exclusively, to plaintiffs' jurisdictional theory that NCB, either directly or through affiliates, engaged in the aviation business in the United States.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/09

---

[1] Copies of the Subpoenas are attached hereto as Exhibits 1-4.

[2] Pursuant to Your Honor's Order of July 31, 2007 (MDL Dkt. # 1992), NCB sent a draft of this letter to plaintiffs' counsel on March 20, 2009, and advised plaintiffs' counsel that, if plaintiffs would not withdraw the Subpoenas prior to March 27, 2009, NCB would submit this letter. As explained below, on the eve of NCB's submission of this letter, plaintiffs' counsel sought to justify the Subpoenas, but their justification does not alter the factual or legal basis of NCB's request to quash the Subpoenas. *See infra* at 8 n.12.

MEMO ENDORSED


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
March 27, 2009
Page 2

- Further jurisdictional discovery concerning NCB and NCB's renewed motion to dismiss may not proceed without this Court's advance authorization, per Judge Daniels' Order of July 11, 2008 (MDL Dkt. # 2106).

- Plaintiffs previously requested this Court's approval to conduct further jurisdictional discovery to support their aviation-business theory; NCB opposed plaintiffs' request for that (and other) additional jurisdictional discovery. *See* MDL Dkt. # 2161, Exh. C (NCB 8/21/08 Ltr.), at pp. 11-14.

- This Court took under advisement plaintiffs' requests for such (and other) additional jurisdictional discovery by Order dated September 5, 2008 (MDL Dkt. # 2126), and those requests remain pending.

Regardless, there is no legal or factual basis to authorize the additional jurisdictional discovery sought by the Subpoenas because:

- NCB's renewed motion to dismiss is supported by affidavits and documents conclusively demonstrating that: NCB did not engage in the aviation business in the United States either directly or through affiliates; and NCB has not had an ownership interest or investment in the U.S.-registered aircraft or a U.S. aviation company about which the Subpoenas now seek additional information from non-parties. MDL Dkt. # 2111, at pp. 24-26; # 2112, ¶ 3; # 2114, ¶¶ 25-26.

- Plaintiffs' contention discovery responses did not disclose any assertion that NCB engaged in the U.S. aviation business through the remaining five other (non-U.S.) companies about which the Subpoenas seek information. Plaintiffs accordingly should be precluded from relying on any evidence about those five companies, and from seeking discovery concerning them.

- In any event, NCB has not had any ownership interest or investment in any of the five non-U.S. companies mentioned for the first time in the Subpoenas.

- The Subpoenas accordingly cannot lead to the production of relevant and admissible evidence.

These Subpoenas are just the latest milestone in plaintiffs' track record of disregard for the procedures governing additional jurisdictional discovery as to NCB. This Court should quash the Subpoenas and, for the reasons explained below and in our August 21, 2008 letter, should deny all of plaintiffs' pending requests for additional jurisdictional discovery as to NCB, and should direct plaintiffs to respond promptly to NCB's renewed motion to dismiss.



Honorable Frank Maas
March 27, 2009
Page 3

## Background

Following several years of jurisdictional discovery supervised by this Court, Judge Daniels on July 11, 2008 (MDL Dkt. # 2106) granted NCB leave to file a renewed and consolidated motion to dismiss for lack of jurisdiction all of the pending MDL 1570 lawsuits in which it has appeared.[3] As this Court is well aware, pursuant to several discovery orders that this Court entered between 2006 and 2007: (i) NCB produced documents concerning its U.S. contacts; (ii) plaintiffs took a court-supervised deposition of a former NCB officer; (iii) NCB obtained confirmation from its regulator, the Saudi Arabian Monetary Agency ("SAMA") that—contrary to plaintiffs' allegations—NCB had not been audited, examined or investigated for alleged involvement in the financing of terrorism; and (iv) this Court conducted an *in camera* review of a SAMA audit report on NCB and found "nothing…which relates to the issues presently pending before the Court concerning NCB." MDL Dkt. # 1971.

In May 2007, Your Honor expressly "decline[d] to direct any further discovery (not previously ordered) related to NCB." MDL Dkt. # 1971. In September 2007, Your Honor rejected another request by plaintiffs for further jurisdictional discovery, finding that requested additional depositions "would be a fishing expedition." MDL Dkt. # 2038. Simultaneously, Your Honor required plaintiffs to provide contention discovery, which sought disclosure of all of plaintiffs' bases for asserting personal jurisdiction over NCB. MDL Dkt. # 2037. In December 2007, Judge Daniels affirmed those two orders, bringing jurisdictional discovery as to NCB to a close. MDL Dkt. # 2057. Thereafter, due to deficiencies in plaintiffs' contention discovery responses, Your Honor held that "NCB is entitled to meaningful answers to its contention interrogatories" and required plaintiffs to serve revised answers (MDL Dkt. # 2060), which they did on February 1, 2008.

In their response to one of NCB's contention interrogatories concerning plaintiffs' theories of general jurisdiction over NCB, plaintiffs contended that NCB had engaged in the aviation business in the United States:

> NCB and/or its subsidiary SNCB did business in the United States and abroad via other controlled subsidiaries registered in the U.S. These subsidiaries included … Mid-East Jet, Inc. … NCB's Saudi Arabia based aviation department has six

---

[3] NCB's original motion to dismiss was denied without prejudice to renewal following "limited jurisdictional discovery" on issues concerning "NCB's contacts with the United States" so that the Court could determine whether the exercise of personal jurisdiction over NCB would "satisfy due process requirements." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) (*"Terrorist Attacks I"*). Judge Casey held that, once "the parties have completed their personal jurisdiction discovery…this Court [would] determine[ ] whether it has personal jurisdiction over NCB," which he found was a "straightforward" issue. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 572, 575 (S.D.N.Y. 2005) (*"Terrorist Attacks II"*) (on reconsideration).


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
March 27, 2009
Page 4

>   aircraft and seven airmen registered in the United States. The planes used U.S. airspace on a regular basis. One of these airmen was under investigation by the U.S. Customs Department for financial links to a 9/11 hijacker.

MDL Dkt. # 2115, Exh. 36 at pp. 12. The document production accompanying plaintiffs' contention interrogatory responses provide the FAA ("N-registration") numbers for the referenced aircraft, and also identified several other U.S. aviation companies beyond Mid-East Jet.

Following receipt of plaintiffs' contention discovery responses, NCB informed Judge Daniels that "NCB is ready to renew its motion to dismiss focusing upon plaintiffs' jurisdictional theories as fully stated in their contention discovery responses."[4] NCB accordingly sought leave to file a renewed and consolidated motion to dismiss for lack of personal jurisdiction all of the *Terrorist Attacks* lawsuits in which NCB had appeared. *Id.* All plaintiffs opposed NCB's application for leave to renew its motion to dismiss, contending that they required additional jurisdictional discovery, including on their theory that NCB had engaged in the aviation business in the U.S.[5] However, NCB submitted two affidavits to Judge Daniels—one from its Head of Finance and Accounting, and the other from its legal department—negating all of plaintiffs' disclosed contentions concerning alleged NCB involvement in the U.S. aviation business.[6]

Judge Daniels thereafter granted NCB's application for leave to file its renewed and consolidated motion to dismiss for lack of personal jurisdiction, and further provided: "To the extent that plaintiffs believe that additional jurisdictional discovery is necessary prior to filing a response, a specific discovery request and a request for a stay or extension of time in which to respond to the motion should be made to the magistrate judge." MDL Dkt. # 2106 (Order).

On July 22, 2008, NCB filed its renewed and consolidated motion to dismiss for lack of personal jurisdiction. MDL Dkt. ## 2110-2115. NCB explained that its renewed motion focused on "plaintiffs' jurisdictional theories as to NCB [that] have now been fully stated in their contention interrogatory answers." MDL Dkt. # 2111, at p. 3. NCB supported its motion to dismiss with several affidavits, including the declaration of its Head of Finance and Accounting (Dr. Bagabir) described above. Dr. Bagabir's declaration specifically countered all of plaintiffs'

---

[4] *See* NCB 4/21/08 Ltr. (filed as MDL Dkt. # 2161, Exh. A).

[5] *See* Kreindler & Kreindler 4/25/08 Ltr. to Judge Daniels, pp.3-4.

[6] *See* Declaration of Dr. Abubaker Ali Bagabir (dated April 5, 2008) (MDL Dkt. # 2112), originally submitted with NCB 4/21/08 Ltr. (filed as MDL Dkt. # 2161, Exh. A), and Declaration of Jorge Juco (dated April 29, 2008), submitted with NCB 4/29/08 Ltr. (filed as MDL Dkt. # 2161, Exh. B); *see also* Declaration of Jorge Juco (dated April 5, 2008) (MDL Dkt. # 2114), at ¶¶ 25-26.





Honorable Frank Maas
March 27, 2009
Page 5

disclosed contentions regarding the U.S. aviation business, stating in relevant part that, from at least 1996 and continuing until the present: "Neither NCB itself, nor any subsidiary or affiliate of NCB, has conducted business in the United States relating to the ownership or operation of aircraft; NCB has had no ownership interest or investment in… Mid East Jet, Inc. [or] Mid-East Jet, Inc.; NCB has not derived any revenue from the ownership or operation of aircraft in the United States or from any business that owned or operated aircraft in the United States; [and] NCB has had no ownership interest or investment in any N-registered aircraft, including those identified by the registration numbers N371BC, N737CC, N737GG, N757MA, N767KS, N777AS, N1779B, N1786B, or N60436." *See* MDL Dkt. #2112 (Bagabir Declaration), ¶ 3.

By applications dated August 15, 2008, plaintiffs sought what they characterized as "targeted" further jurisdictional discovery before responding to NCB's renewed motion to dismiss. In fact, plaintiffs broadly requested authority to proceed with: 92 additional document requests to NCB; another 128 document requests to two other, separately represented defendants; and eight depositions of NCB, other defendants and non-parties.[7] Among a host of other topics, the *Ashton* and *Burnett* plaintiffs sought additional jurisdictional discovery concerning their contention that "NCB has owned or operated an aviation division in the United States" and has owned or operated "N-registered" aircraft in the United States.[8] NCB submitted a detailed opposition to all of plaintiffs' requests for additional jurisdictional discovery, and explained (in relevant part) that the affidavits (including the Bagabir Declaration), the documents, and the relevant principles of general jurisdiction all precluded further jurisdictional discovery to pursue plaintiffs' theory concerning the U.S. aviation business. *See* MDL Dkt. # 2161, Exh. C, at pp. 11-14.

Thereafter—without advance court approval, but supposedly "in further support" of their jurisdictional discovery requests—plaintiffs' counsel on August 25, 2008[9] submitted certain unidentified documents to the Court for *in camera* and *ex parte* review. Plaintiffs' counsel argued that those documents "provide ample support for why the requested additional discovery is proper and essential." *Id.* Plaintiffs' counsel did not provide a copy of those documents to NCB, claiming that the documents were "sensitive…and could bear information that is in some manner classified or otherwise inappropriate for dissemination to the public or to potential targets of governmental investigations." *Id.*

---

[7] MDL Dkt. # 2159, Exhs. A-C.

[8] *See* MDL Dkt. # 2161, Exh. C, at p. 11 (quoting plaintiffs' discovery requests).

[9] MDL Dkt. # 2159, Exh. D.



Honorable Frank Maas
March 27, 2009
Page 6

Both the United States Government and NCB objected to plaintiffs' unauthorized possession—and any use in this litigation—of those documents. In connection with a motion subsequently filed by the plaintiffs concerning the use of those documents (MDL Dkt. # 2157), the Government explained that: those documents are "classified and otherwise restricted"; the plaintiffs "are not, and never were, authorized to possess" those documents; plaintiffs' possession of those documents resulted from an "unauthorized and potentially criminal disclosure of information to [plaintiffs' counsel] Motley Rice"; and accordingly, "[p]laintiffs should not be allowed to use or benefit from" those Documents "for any purpose" in this litigation. MDL Dkt. # 2161, Exh. D, at pp. 1, 5, 7. Although plaintiffs originally asked Your Honor to review these documents in connection with their jurisdictional discovery requests—and although NCB contends that plaintiffs' effort to use these documents violates Your Honor's contention discovery orders (*see* MDL Dkt. # 2161, at 4-7, 10-12)—plaintiffs now have asked Judge Daniels to make jurisdictional discovery rulings based on these documents. MDL Dkt. # 2158, at 4, 5, 8-9; MDL Dkt. # 2163, at 4-12.

By Order of September 5, 2008, Your Honor stayed plaintiffs' date for responding to NCB's renewed motion to dismiss for lack of personal jurisdiction in order "[t]o afford the Court additional time to consider the plaintiffs' discovery motions...." MDL Dkt. # 2126. Plaintiffs' requests to take additional jurisdictional discovery from NCB remain pending before Your Honor.

Despite the fact that Your Honor has not authorized any additional jurisdictional discovery in connection with NCB's renewed motion to dismiss, the *Ashton* plaintiffs on March 9, 2009 served the Subpoenas on four nonparties[10] seeking information on issues that unquestionably relate to their jurisdictional theory about the U.S. aviation business. Specifically, the Subpoenas (Exhs. 1-4) seek information about NCB and about the following aviation companies and aircraft:

(1) N-registered aircraft: N371BC, N737CC, N737GG, N757MA, N757MA, N767KS, and N777AS;
(2) Mid East Jet, Inc. (Delaware) (also spelled Mid-East Jet, Inc.);
(3) Alpha Sierra, Inc. (BVI);
(4) Air Alpha, Inc. (BVI);

---

[10] The Boeing Company; Wells Fargo Bank Northwest, National Association; L-3 Communications Integrated Systems; and Jarvis & Associates. Apparently, plaintiffs issued the Subpoenas to these non-parties because: Boeing manufactured the "N-registered" aircraft; public records show that Wells Fargo is the legal owner/trustee of those aircraft; L-3 Communications was (per documents contained in plaintiffs' contention disclosures) appointed as an agent of Mid East Jet, Inc. in connection with FAA certification of one or more of the N-registered aircraft; and Jarvis & Associates provided some type of legal assistance to Mid East Jet in connection with one or more of these aircraft.



Honorable Frank Maas
March 27, 2009
Page 7

        (5)    Air Gulf, Inc. (BVI);
        (6)    Executive Jets Ltd (Bermuda); and
        (7)    Seven Three Seven Company (Cayman).

As noted, NCB's renewed motion to dismiss and supporting affidavits expressly demonstrate that NCB did not have an ownership interest or investment in the N-registered aircraft identified in the Subpoenas, or in Mid East Jet, Inc. (or in any of the other aviation companies disclosed in plaintiffs' contention discovery responses). MDL Dkt. # 2111, at pp. 24-26; # 2112, ¶ 3; # 2114, ¶¶ 25-26. Notably, plaintiffs' contention discovery responses did not disclose any assertion that NCB had engaged in the aviation business in the United States through the remaining five, non-U.S. companies about which the Subpoenas seek information: Alpha Sierra, Inc. (BVI); Air Alpha, Inc. (BVI); Air Gulf, Inc. (BVI); Executive Jets Ltd (Bermuda); and Seven Three Seven Company (Cayman).

Plaintiffs should be precluded from pursuing—whether through discovery, or in opposition to NCB's motion to dismiss—any previously undisclosed jurisdictional theory relating to those five non-U.S. companies. *See infra* at 8-9. Public records show that at least some of those non-U.S. companies are the beneficial owners of one or more of the N-registered aircraft listed in the Subpoenas. NCB's renewed motion to dismiss and supporting affidavits already confirm that NCB did not have any ownership interest or investment in those aircraft. Further, and in order to simplify this latest discovery dispute, NCB has obtained a supplemental declaration of its Head of Finance and Accounting, which confirms that NCB has not had an ownership interest or investment in any of these five non-U.S. companies. *See* Supplemental Declaration of Dr. Abubaker Ali Bagabir (dated March 14, 2009) (copy attached as Exhibit 5).

For these reasons, and as explained both below and in our August 21, 2008 letter, this Court should quash the Subpoenas, deny all of plaintiffs' pending requests for additional jurisdictional discovery as to NCB, and direct plaintiffs to respond promptly to NCB's renewed motion to dismiss.

### Argument

**I.    Plaintiffs' Subpoenas Are Unauthorized.**

The record of prior jurisdictional and contention discovery (*see supra* at 3-4) leaves no room to doubt that the Subpoenas seek additional jurisdictional discovery concerning plaintiffs' theory that NCB engaged in the aviation business in the United States. Plaintiffs cannot undertake additional jurisdictional discovery as to NCB without advance authorization from this Court under the terms of Judge Daniels' July 11, 2008 Order (MDL Dkt. # 2106). The Subpoenas unilaterally issued by the plaintiffs to obtain additional jurisdictional discovery concerning NCB


**PATTON BOGGS**LLP
ATTORNEYS AT LAW

Honorable Frank Maas
March 27, 2009
Page 8

therefore violate Judge Daniels' July 11, 2008 Order, are unauthorized, and should be quashed.

The Subpoenas plainly fall within the scope of Judge Daniels' July 11, 2008 Order concerning "additional jurisdictional discovery" concerning NCB and its renewed motion to dismiss.[11] On their face, the Subpoenas seek discovery from non-parties, not trial evidence. Moreover, this Court unquestionably has authority—and previously has exercised it—to quash or modify subpoenas issued by the plaintiffs to ensure compliance with case management and discovery orders. *See* Discovery Order (July 25, 2007) (MDL Dkt. # 1987) (modifying subpoenas issued by the *Burnett* plaintiffs for information concerning, *inter alia*, NCB correspondent bank accounts, to ensure compliance with case management orders limiting merits discovery and this Court's order prohibiting correspondent-account jurisdictional discovery as to NCB). Such authority is essential to enforce the rule that subpoenas cannot be used to obtain discovery from non-parties when the Court has disallowed (or, here, has not authorized) discovery on the same subject from an adverse party. *See In re Flag Telecom Holdings, Ltd. Securities Litig.*, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006).

In *Flag Telecom*, defendants sought documents through a non-party subpoena that "are the same or similar to the documents sought in defendants' prior motion to compel," which the court "ha[d] already determined … are not likely to lead to the discovery of relevant evidence." *Id.* Thus, the court in *Flag Telecom* held that permitting a party:

> to obtain, through a subpoena to a non-party, documents that we have already determined irrelevant would permit it to circumvent our prior decision. It is unclear why [defendant] did not withdraw the subpoena served on [plaintiff] after having received this Court's prior ruling on the relevancy of these documents.

*Id.* Accordingly, the *Flag Telecom* court granted the requested motion to quash. *Id.* Similarly, in *Arias-Zeballos v. Tan*, 2007 WL 210112, at *2-*3 (S.D.N.Y. Jan. 25, 2007), the court held: "[T]he subpoenas are in tension with determinations made by the court, since they target information regarding matters that have been stricken from the plaintiff's complaint. … [B]ecause the matter is not relevant to the claims she has made in this action, subpoenas issued on behalf of the plaintiff seeking information concerning the transaction(s) are inappropriate. Therefore, the defendant's request is granted; the subpoenas will not be enforced by the Court."

Because the Subpoenas are unauthorized and violate Judge Daniels' July 11, 2008 Order,

---

[11] On March 24, 2009, NCB's counsel was copied on a letter from counsel for The Boeing Company to plaintiffs' counsel. The letter suggests that plaintiffs' counsel have agreed to narrow the scope of the subpoena served on Boeing to include only alleged correspondence between Boeing and NCB. This further confirms that the sole purpose for the Subpoenas is to engage in additional jurisdictional discovery concerning NCB.


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Frank Maas
March 27, 2009
Page 9

they should be quashed. Moreover, as shown next, the additional discovery sought by the plaintiffs is unjustified by the factual record and the law, and therefore any request to authorize the Subpoenas retroactively should be denied.

**II.    The Additional Jurisdictional Discovery Sought by the Subpoenas Is Unjustified.**

NCB's renewed motion to dismiss and supporting affidavits demonstrated that NCB did not engage in the aviation business in the United States at any relevant time and that, accordingly, the Court cannot exercise general personal jurisdiction over NCB on that basis. MDL Dkt. # 2111, at pp. 24-26; # 2112, ¶ 3; # 2114, ¶¶ 25-26. NCB's August 21, 2008 letter to Your Honor further explained that there is no factual or legal basis to authorize plaintiffs to pursue additional jurisdictional discovery on their aviation-business theory of general jurisdiction. *See* MDL Dkt. # 2161, Exh. 3, at pp. 11-14. Additional jurisdictional discovery on this issue remains not only unauthorized, but also unjustified, because:

- NCB already has demonstrated that it has no ownership interest in any of the N-registered aircraft and in the one U.S. company (Mid East Jet, Inc./Mid-East Jet, Inc.) mentioned in the Subpoenas. *See supra* at 4.[12]

---

[12] On the eve of NCB's submission of this letter to the Court, *Ashton* plaintiffs' counsel informed NCB's counsel in an e-mail that they had served the Subpoenas because of their position "that this matter has languished for a considerable time, and Magistrate Maas' opinion cannot be read so narrowly as to stop all discovery with respect to the jurisdictional dispute involving your client." They further stated: "We recently have been made aware of additional public documents that corroborate the fact that NCB was involved in the purchase and use of domestic US aircraft. Those documents are the predicate to the March 9, 2009 subpoenas." In response to our demand, plaintiffs produced a single document that ostensibly serves as the "predicate" for the Subpoenas. The document is an unauthenticated and redacted FBI Form 302 summary ("302") of an October 24, 2001 interview of an individual named W. Ralph Emery. The Emery 302 recycles the same hearsay speculation about NCB involvement in the aviation business that plaintiffs previously advanced in the contention interrogatory responses. NCB fully addressed and rebutted that speculation in its renewed motion to dismiss and accompanying affidavits. *See supra* at 4-5, 6-7 (summarizing motion to dismiss and affidavits). For example, the Emery 302 notes in pertinent part that, "[w]hile EMERY has no direct knowledge," he nonetheless "believed" that, at some point in the 1990s, when NCB was owned by the Mahfouz family, NCB owned Mid East Jet, Inc. As noted above, NCB rebutted this speculation in a declaration from NCB's Head of Finance and Accounting. Similarly, the Emery 302 reflects Emery's belief that Mid East Jet's CEO could be contacted through the "Aviation Department" of NCB at a telephone number and address in Saudi Arabia. To the contrary, NCB's renewed motion to dismiss and accompanying affidavits demonstrated that NCB was not engaged in the aviation business in the United States at any relevant time, and that the supposed address and telephone number of an NCB "Aviation Department" are not in fact connected with NCB. *See* MDL Dkt. # 2111 at 24-26 & n.10; # 2112 (Bagabir Aff.) ¶ 3; # 2114 (Juco Aff.) ¶ 25. As previously noted in NCB's August 2008 opposition to plaintiffs' requests for additional jurisdictional discovery, this factual record precludes additional jurisdictional discovery on plaintiffs' speculative aviation-business theories. MDL Dkt. # 2161, Exh. C at 11-14.



Honorable Frank Maas
March 27, 2009
Page 10

- NCB also previously has demonstrated that, as a matter of law, further jurisdictional discovery concerning a defendant's relationship with other companies is improper when, as here, the plaintiff "has offered no basis for suggesting" that any of those other companies "is controlled by or is a department of" the foreign defendant, which has "affirm[ed] to the contrary." *See, e.g., Accessory Corp. v. Spotless Plastics Pty. Ltd.*, 2007 WL 2584963, at *5 & n.17 (S.D.N.Y. Sept. 7, 2007); *see also* MDL Dkt. # 2111 (NCB Renewed Motion to Dismiss, Mem.), at 24-24; MDL Dkt. # 2161, Exh. 3 (NCB opposition to additional jurisdictional discovery), at 11-14.

- Separately, plaintiffs failed to disclose any jurisdictional assertion tied to the five non-U.S. companies about which the Subpoenas seek information. The Court should preclude plaintiffs' use of, or reliance on, documents and information that were withheld from NCB in violation of discovery orders and rules. *See, e.g., Pal v. New York University*, 2008 WL 2627614, at *5-*6 (S.D.N.Y. June 30, 2008) (Maas, U.S.M.J.); *accord Schiller v. City of New York*, 2008 WL 4525341 (S.D.N.Y. Oct. 9, 2008) (Francis, U.S.M.J.). Plaintiffs cannot be authorized to pursue discovery of evidence that would ultimately be inadmissible.

- In any event, simplifying the present dispute, NCB herewith submits a supplemental declaration of its Head of Finance and Accounting, Dr. Bagabir, confirming that, at all potentially relevant times, "NCB has had no ownership interest or investment in any of the following entities: Air Gulf, Inc. (BVI); Seven Three Seven Company (Cayman); Air Alpha, Inc. (BVI); Alpha Sierra, Inc. (BVI); and Executive Jets Ltd. (Bermuda)." Supplemental Declaration of Dr. Abubaker Ali Bagabir (Exh. 5).

When, as here, "a defendant 'rebuts [the] plaintiff['s] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction…the allegation may be deemed refuted.'" *Accessory Corp.*, 2007 WL 2584963, at *2 (quoting *Schenker v. Assicurazioni Generali S.p.A.*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002)). On the factual record—and as we originally noted in our August 21, 2008 opposition to additional jurisdiction discovery—there is no legally sufficient basis to authorize jurisdictional discovery concerning plaintiffs' groundless theory that NCB was involved in the aviation business in the United States. *Indemnity Ins. Co. of North America v. K-Line America, Inc.*, 2007 WL 1732435, at *12 (S.D.N.Y. June 14, 2007) (denying a "second round of additional jurisdictional discovery" where "[t]he facts asserted do not support such a theory"); *Langenberg v. Sofair*, 2006 WL 2628348, at *7 (S.D.N.Y. Sept. 11, 2006) ("Plaintiff has made no factual allegations which could be proven through additional discovery and which would change the outcome of this issue. Therefore, Plaintiff will not be granted the opportunity to engage [in] further discovery in support of her allegation . . . .").



Honorable Frank Maas
March 27, 2009
Page 11

## Conclusion

For the foregoing reasons, and as explained further in our August 21, 2008 letter, this Court should: quash the Subpoenas; deny all of plaintiffs' pending requests for additional jurisdictional discovery as to NCB; and direct plaintiffs to respond promptly to NCB's renewed motion to dismiss, allowing NCB a period of not less than 30 days to submit its reply papers.

Respectfully submitted,

Mitchell R. Berger
*Counsel for Defendant*
*The National Commercial Bank*

cc: The Honorable George B. Daniels
All Counsel