UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL 1570 (GBD)(FM) ECF Case |

*This document relates to:*
    All Cases

**REPLY OF DEFENDANT NATIONAL COMMERCIAL BANK IN SUPPORT OF MOTION TO STRIKE OR, ALTERNATIVELY, FOR LEAVE TO RESPOND TO NEW ARGUMENTS IN PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR DECLARATORY RELIEF**

Defendant National Commercial Bank ("NCB") respectfully submits this reply in further support of its Motion to Strike or, Alternatively, for Leave to Respond to New Arguments in Plaintiffs' Reply in Support of their Motion for Declaratory Relief (MDL Dkt. #2167).

**I.  The Two New Arguments Identified in NCB's Motion to Strike Were Improperly Raised for the First Time in Plaintiffs' Declaratory Relief Reply.**

The Motion to Strike (at 1-2) identified two new matters that plaintiffs improperly had raised for the first time in their reply papers supporting their Motion for Declaratory Relief: (i) plaintiffs' allegation that NCB had not been "forthright" during discovery; and (ii) affidavit testimony by plaintiffs' counsel that they had obtained classified U.S. Government documents ("Documents") from an "anonymous donor" without supplying any "incentive or benefit."  Plaintiffs cannot justify the last-minute introduction of these new matters on the theory that they were "responses to issues injected into the motion by NCB and/or the Government in their opposition to Plaintiffs' motion." *See* Opp. (MDL #2171) at 1.  To the contrary, plaintiffs' first new issue is entirely irrelevant to the analysis prescribed by the case law NCB cited, and their second new issue should obviously have been part of a full and fair opening brief and supporting affidavit.

**NCB Conduct.**  As an alternative basis for denying the motion for declaratory relief, NCB contended that, if the Court did not sustain the Government's assertion of Executive Branch

control over the Documents, then the Court had inherent authority to preclude use of the Documents because they had been improperly obtained outside the discovery process. *See* Motion to Strike at 8, citing MDL Dkt. #2160 (Declaratory Relief Opp.) at 9. That inherent authority was recognized in a line of Southern District cases headed by *Fayemi v. Hambrecht & Quist*, 174 F.R.D. (S.D.N.Y. 1997) (Francis, U.S.M.J.), which NCB's opposition cited. MDL Dkt. #2160 at 9. Plaintiffs now erroneously contend that the *Fayemi* line of cases allowed them to include in their reply allegations of "NCB's wrongful conduct" during discovery related to a supposed Saudi government "investigation into NCB." Opp. at 2. The allegations both about NCB and about the supposed Saudi government investigation are insupportable. *See* Motion to Strike at 3-7, and *infra* at 3-4. Even so, those allegations could not properly be raised for the first time in reply because they are irrelevant to the *Fayemi* analysis.

*Fayemi* itself holds that alleged "unclean hands" by the party seeking preclusion of improperly-obtained documents is irrelevant to the court's analysis unless the moving party has acted "unconscionably" <u>with respect to the improperly-obtained documents themselves</u>. *Fayemi*, 174 F.R.D. at 326 (the "unclean hands doctrine" applies to the preclusion analysis only when the moving party "has itself acted unconscionably in relation to the matter at issue to the detriment of the other party"). For that reason in *Fayemi*, Magistrate Judge Francis gave no weight to alleged misconduct by the movant/defendant that was <u>unrelated</u> to the documents improperly obtained by the plaintiff (employee bonus information), but did find inequitable conduct by the movant when it destroyed <u>precisely the same employee bonus information</u> after plaintiff obtained a copy of it. *Id.* at 326-27.

Here, of course, NCB never has had possession of or access to the classified/restricted U.S. Government Documents that are the focus of plaintiffs' motion for declaratory relief. NCB could not and did not play any role in plaintiffs' improper acquisition, litigation use, and failure to disclose contentions regarding those Documents. Alleged discovery misconduct by NCB <u>unrelated</u> to the

2

Documents accordingly is irrelevant to the *Fayemi* analysis, and therefore comprises a "new" argument that was improperly raised for the first time in the declaratory relief reply.

In any event, plaintiffs' allegations about discovery misconduct concerning the supposed Saudi government "investigation" of NCB are insupportable for the reasons that are summarized in our motion to strike. MDL Dkt. # 21670 at 3-7.[1] Although plaintiffs now prefer to use the term "investigation," all discovery concerning that claim emanated from plaintiffs' original premise that there had been "an <u>audit</u> of NCB" conducted by the Saudi Central Bank (SAMA) in 1998. *See* MDL Dkt. #2167 at 5, quoting MDL Dkt. #1849 (Discovery Order) at 3 (emphasis added). To maintain some consistency, we will continue to refer to plaintiffs' "audit" allegation.

In opposing NCB's motion to strike, plaintiffs allude to "multiple independent evidentiary items to support the existence" of the supposed audit (MDL Dkt. #2171 at 5), but those "items" in fact all recycle the same hearsay rumor about a SAMA audit. *See* Motion to Strike (MDL Dkt. #2167) at 3-7. Plaintiffs presented their audit allegation to Magistrate Judge Maas, who in turn ordered NCB "to confirm with SAMA whether the Saudi government conducted an 1998 audit of NCB." *Id.*, citing MDL Dkt. #1849 (Discovery Order). Discovery on that issue proceeded over the ensuing two years, as NCB has explained in its renewed motion to dismiss, in its opposition to additional jurisdictional discovery, and again in its motion to strike. *Id.* That discovery eviscerated the "audit" allegation: (i) SAMA twice confirmed that it does not have any knowledge of any Saudi government audit or examination of NCB concerning alleged involvement in financing terrorist activities during the 1998 (and forward) time frame alleged by plaintiffs; (ii) Magistrate Judge Maas reviewed the only 1998 SAMA examination report of NCB and found "nothing" relating to

---

[1] NCB did not "raise[ ]" the "audit" issue in its opposition to plaintiffs' motion for declaratory relief, as plaintiffs erroneously contend. Opp. at 2. Rather, NCB's opposition included a "Procedural History" section that discussed the course of jurisdictional discovery, including discovery requests and rulings concerning the "audit" issue. As Magistrate Judge Maas' rulings on that issue (which we cited) make clear, the "audit" issue has been closed out. *See* MDL Dkt. #2160 at 3-4. Discussion of the procedural history of this litigation, to provide context for NCB's opposition to plaintiffs' motion for declaratory relief, did not invite plaintiffs' attempt to exhume and relitigate that issue.

3

plaintiffs' allegations; and (iii) plaintiffs' investigator/source for the "audit" allegations has retracted them. *Id.* In short, no one beyond the plaintiffs themselves believes that there is still a live "dispute" over their "audit" allegations. Opp. at 5.

**"Anonymous Donor" Testimony.** Equally, plaintiffs could not properly reserve for reply their belated testimonial assertions about how and from whom they acquired the Documents. Plaintiffs concede that, from the time they received and began using the Documents in this litigation, they recognized that the Documents likely "were classified." *See* Motion for Declaratory Relief (MDL Dkt. #2158) at 2. Thereafter, by surrendering the Documents to Government agents (*id.* at 4), plaintiffs' actions confirmed that plaintiffs were not entitled to possess or to use the Documents. Despite their obvious recognition of the legal framework giving the Government control over the acquisition, possession, and use of classified Government documents, plaintiffs' motion for declaratory relief was mum about the circumstances under which plaintiffs had acquired the Documents.

In saving for reply their testimonial assertions about how and from whom they acquired the Documents, plaintiffs violated their obligation to submit a full and fair opening brief. *E.g.*, *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 525 F. Supp. 2d 448, 474-75 (S.D.N.Y. 2007) (rejecting the "procedurally improper gamesmanship" by which movant's reply provided evidence that should have been "provided in some form with the initial motion") (citing *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 2007 WL 1098714 (S.D.N.Y. April 12, 2007), *aff'd in relevant part*, 2009 WL 1048990 (2d Cir. Apr. 21, 2009); *RMS Intern. Shipping GmbH v. Stemcor USA, Inc.* 1991 WL 136035 at *4 n.7 (S.D.N.Y. July 18, 1991) (rejecting the "pernicious procedure" by which "an especially crafty movant might save all of its substantive arguments for its reply briefs").[2]

---

[2] Other courts expressly require that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *Student Fin. Corp. v. Royal Indem. Co. (In re Student Fin. Corp.)*, 2004 WL 609329, at *3 n.4 (D. Del. Mar. 23, 2005) (discussing local rule). In any event, "[t]he practice of

4

Accordingly, the two reply assertions at issue in NCB's motion to strike were improperly raised for the first time in plaintiffs' declaratory relief reply.[3] To the extent that the Court does not strike those new assertions, the Court should consider NCB's response to those two new assertions in adjudicating plaintiffs' motion for declaratory relief.

## II. Plaintiffs Cannot Second-Guess the Government's Determination that *In Camera* Review of the Documents Would Be Improper and Harmful.

The power to "control access to information bearing on national security" rests with "the President as head of the Executive Branch and as Commander in Chief," *Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988), and "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 530. Further, "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp v. U.S.*, 444 U.S. 507, 509 n.3 (1980).

Given that allocation of authority, the plaintiffs lack a legal basis to second-guess (Opp. at 6-7) the Government's determination that use of the Documents in this litigation for any purpose (i) would be improper, (ii) would incentivize harmful conduct, and (iii) would "circumvent…well-established procedures" for safeguarding classified documents. *See* DOJ Letter dated April 3, 2009

---

reserving arguments reply briefs 'amounts to impermissible sandbagging.'" *Id.* (quoting *Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.* 2002 WL 531555 (D. Del. Mar. 26, 2002) (internal quotation marks omitted)).

[3] In familiar blame-shifting fashion, plaintiffs acknowledge that their declaratory-relief reply brief exceeded the Court's 10-page limit, but plead as an "extenuating circumstance[ ]" that NCB has made its own lengthy submissions. Opp. at 4 & n.1. Of course, as plaintiffs grudgingly concede (*id.*), NCB always has sought the Court's advance permission when it believed it was necessary to exceed standard page limits, as was the case with its renewed motion to dismiss, for which the Court granted NCB permission—over plaintiffs' objection—to file a consolidated 35-page supporting memorandum. *See* Order of July 11, 2008 (MDL Dkt. #2106). Equally off-point is plaintiffs' discussion of the parties' letter applications, for which plaintiffs have not identified any prescribed page limitations. Opp. at 4 & n.1 (referencing NCB's "28-page, single spaced letter brief in opposition to Plaintiffs' request for additional [jurisdictional] discovery" (*see* MDL Dkt. #2161, Exh. C)—while neglecting to mention that NCB's letter was a consolidated response to plaintiffs' 28 pages of single-spaced letter applications for such discovery (*see* MDL Dkt. # 2159, Exhs. A-C).

5

(Berger Decl. Exh. A) at 1, 2, 3; DOJ Letter dated March 9, 2009 (MDL Dkt #2161, Exh. D) at 1, 5, 7.

Ignoring the outrageous circumstances by which the Government's Documents have been purloined and placed before the Court, plaintiffs insist that the Government now must make some further showing "based on affidavits from the head of various government departments that the Court *cannot* consider state secrets." Opp. at 7 (underline emphasis added). To the contrary, as the Government's submissions explain, there is not yet any pending issue of a "state secrets" privilege as to the Documents. Instead, the Government has invoked its authority under Executive Orders and federal regulations to control access to classified national security information. *See* DOJ Letter 3/9/09 at 3, 5-7. That authority alone is sufficient, for example, for the Government to deny FOIA requests seeking classified information (*see* 5 U.S.C. § 552(b)(1)) or to reject non-party discovery requests directed to the Government. *See, e.g.*, 28 C.F.R. §§ 16.22 (cited in DOJ 3/9/09 Letter at 3); *see also* DOJ Letter 4/3/09 at 3. The plaintiffs have improperly leapfrogged these legally mandated procedures governing private party requests for access to classified national security information.

Even in the rare instance when the Government invokes a "state secrets" privilege, courts do not automatically review the challenged documents *in camera*. *N.S.N. Int'l Industry v. E.I. Dupont De Nemours & Co.*, 140 F.R.D. 275, 278-79 (S.D.N.Y. 1991). And, when it occurs, the sole purpose of such *in camera* review is simply to determine whether the Government has properly invoked the state secrets privilege. *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 548 (2d Cir. 1991) ("*In camera* review is a method by which a court can confidentially review the evidence for which a privilege is claimed and determine the propriety of the assertion of the privilege.").

By contrast here, plaintiffs do not contest the Government's decision that the Documents contain classified or restricted national security information, and they do not seek *in camera* review for that purpose. *See* Motion to Strike at 1, 5, 7. Instead, plaintiffs ask the Court review the

Documents *in camera* <u>to adjudicate issues going to the merits</u> of plaintiffs' jurisdictional theories—*i.e.*, to use the substance of the Documents to adjudicate plaintiffs' requests for additional jurisdictional discovery, and ultimately to adjudicate NCB's renewed motion to dismiss.  *See* Opp. at 2 ("[T]he core of Plaintiffs' motion [for declaratory relief] is for the Court to examine the Documents as part of Plaintiffs' request for additional discovery.")

*In camera* review, and use, of the Documents for these merits purposes would be improper for the reasons set forth in the Government's submissions and in NCB's opposition to plaintiffs' motion.  As the Second Circuit has explained, even when a court properly undertakes *in camera* review of government documents to assess the <u>applicability</u> of a state secrets privilege, "the court must not 'forc[e] a <u>disclosure</u> of the very thing the privilege is designed to protect.'"  *Zuckerbraun*, 935 F.2d at 547 (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)) (emphasis added).  If, as plaintiffs request, the Court were to derive information from an *in camera* review of the Documents in order to decide jurisdictional discovery and merits issues, then there necessarily would be a substantive non-Executive Branch use and disclosure of classified information—the "very thing that the privilege is designed to protect." *Id.*

NCB already has been prejudiced because plaintiffs improperly have obtained information from the Documents that they "would not otherwise have obtained" in discovery, and such information "could not be 'unlearned.'"  *Fayemi*, 174 F.R.D. at 326 (quoting *Lipin v. Bender*, 84 N.Y.2d 562, 572-73 (1994)).  This information is of course unknown to NCB, yet the plaintiffs tout their knowledge of the Documents, calling them "highly relevant" to their theories of jurisdiction, and leaving NCB unable to respond substantively to that assertion.  Motion to Strike (MDL Dkt. #2158) at 4, 7.  Plaintiffs also admit that they used the contents of the Documents to draft jurisdictional discovery requests directed to NCB.  *See* MDL Dkt. #2160 at 11 (quoting Motley Rice August 27, 2008 letter to Magistrate Judge Maas).  When a party, like the plaintiffs, cannot "unlearn"

information that it was never entitled to receive, courts are empowered to, and do, dismiss the plaintiffs' claim. *Fayemi*, 174 F.R.D. at 326 (citing *Lipin v. Bender*, 84 N.Y.2d 562, 572-73 (1994)). As an alternative remedy, courts at a minimum enter orders precluding any use in litigation of the information that was obtained improperly outside the discovery process. *Id.* at 326.

## Conclusion

For the foregoing reasons, and those set forth both in NCB's opposition to plaintiffs' motion for declaratory relief and in NCB's opening memorandum, NCB's motion to strike plaintiffs' reply brief or, alternatively, for leave to respond to plaintiffs' new arguments should be granted, and plaintiffs' motion for declaratory relief should be denied.

Dated:  April 23, 2009  
       Washington, D.C.

Respectfully submitted,

/s/Mitchell R. Berger  
Mitchell R. Berger (MB-4112)  
Alan T. Dickey  
PATTON BOGGS LLP  
2550 M Street, N.W.  
Washington, D.C. 20037  
Phone: 202-457-6000  
Fax:    202-457-6315

*Attorneys for Defendant*  
*The National Commercial Bank*