**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| IN RE:  TERRORIST ATTACKS ON    ) | **Civil Action No. 03 MDL 1570 (GBD)(FM)** |
| SEPTEMBER 11, 2001                    ) | |
| ) | |
| ) | |

*This document relates to:  All Actions*

### BINLADIN DEFENDANTS' RESPONSE TO PLAINTIFFS' JULY 14, 2009 NOTICE OF SUPPLEMENTAL AUTHORITY IN RELATION TO ALL PENDING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In their latest attempt to construe the Second Circuit's decision on personal jurisdiction in their favor, *see* Notice of Supplemental Authority in Relation to All Pending Motions to Dismiss for Lack of Personal Jurisdiction (Dkt. #2178) (July 14, 2009) ("Pls. Notice"), plaintiffs concede that the position taken in their previous supplemental briefs "was incorrect" and should be disregarded. *Id.* at 6.  Now they urge the Court to "embrace" a distorted version of the Solicitor General's interpretation – an interpretation that they told the Supreme Court just a month before rested on "disingenuous and incorrect" assumptions and was "particularly troubling" and "clearly wrong."  Supplemental Brief of Petitioners in Response to Brief of the United States at 9, 11, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640 (June 8, 2009).  The Binladin Defendants[1] believe that the Second Circuit's decision is clear and stands on their previous briefs.  Nevertheless, because Plaintiffs' Notice remains on the record despite the Court's denial of plaintiffs' broader request for supplemental briefing, we offer this brief statement in response.

---

[1] This filing is made on behalf of Defendants Bakr Binladin, Omar Binladin, Tariq Binladin, Yeslam Binladin, Abdullah Binladin, Mohammad Binladin Company, and Binladin Group International Company Ltd.  In addition, Counsel for Defendant National Commercial Bank ("NCB"), Mitchell R. Berger, has authorized us to state that NCB joins in the positions expressed in this response.

**1.      The Solicitor General's Position Is Not Entitled to Deference**

As this Court has already recognized, the Solicitor General's amicus brief is not authoritative but merely a non-party's interpretation of controlling authority.  *See* July 15, 2009 Hr'g Tr. at 7.  Second Circuit law confirms this Court's view:  "The Executive Branch's interpretations of the applicable law and the allegations made in the Complaint 'merit no special deference,' as they are pure questions of law that are 'well within the province of the Judiciary.'" *In Re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 281 (S.D.N.Y. 2009) (quoting *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 376 n.17 (2d Cir. 2006)).  The issues at stake here do not, as plaintiffs suggest, relate to national security; indeed, the Solicitor General expressly rejected plaintiffs' suggestion that the Second Circuit's opinion would in any way interfere with the government's ability to combat terrorism.  Brief for the United States as Amicus Curiae at 21, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640 (May 29, 2009) ("SG's Br.").

**2.      Plaintiffs Present a Distorted View of the Solicitor General's Argument**

Plaintiffs' argument that the Solicitor General's views are supportive of their position is based on a gross distortion of those views.[2]  As defendants' Supplemental Brief made clear, what was missing from plaintiffs' now-abandoned interpretation of the Second Circuit's opinion – and

---

[2] Plaintiffs' affection for the Solicitor General's position is of recent vintage.  In the responsive brief to the Supreme Court which they now seem anxious to disavow, plaintiffs among other things took the Solicitor General to task for characterizing the Second Circuit's holding as resting on pleading deficiencies.  While plaintiffs now seek an opportunity to replead if this court grants any motions to dismiss based on the Second Circuit's standard, plaintiffs in that brief correctly recognized that "[t]he Second Circuit could not have been clearer that it . . . was *not* resting its decision on the complaint's insufficiency."  Supplemental Brief of Petitioners, *Federal Ins. Co., supra*, at 9-10 (emphasis in original).  Plaintiffs instead acknowledged that "[t]he Second Circuit held that the Due Process Clause requires dismissal of claims, as *legally insufficient*, that the Saudi princes "could and did foresee that recipients of their donations would attack targets in the United States" and "*intended* to fund al Qaeda through their donations" *knowing* of al Qaeda's "jihad against the United States."  *Id.* (emphasis supplied).  The allegations at issue in numerous pending motions to dismiss are substantively indistinguishable from those the Second Circuit held insufficient.

from every alternative formulation they have proposed – is the critical element of conduct "expressly aimed" at the United States that gives rise to plaintiffs' injuries.  Plaintiffs' continued insistence that jurisdiction can be imposed based on allegations of support for terrorism *anywhere in the world* finds no support in the Solicitor General's brief.  Indeed, the Solicitor General argued that plaintiffs must allege facts showing that defendants engaged in intentional tortious actions and "'knew that the brunt of th[e] injury would be felt' in the foreign forum."  *Id.* at 19 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).  The Solicitor General also recognized that the Supreme Court's recent opinion in *Ashcroft v. Iqbal* did not permit conclusory pleading of such knowledge and intent, and that plaintiffs' allegations had properly been viewed by Judge Casey as deficient under that standard.  *Id*. at 19-20 (citing *Ashcroft v. Iqbal*, No. 07-1015, slip op. at 16-19 (May 18, 2009)).  Thus, the Solicitor General's brief should be cold comfort to plaintiffs.

> **3.    There is No Inconsistency Between the Second Circuit's Opinion and Supreme Court Precedent**

Originally, in petitioning the Supreme Court, Plaintiffs acknowledged that "[s]pecifically, the Second Circuit held that . . . the Due Process Clause bars U.S. courts' jurisdiction over persons who provide material support abroad to terrorist organizations – even those who know the organizations they are funding intend to attack the United States – unless those persons also directly carry out or command the specific terrorist attack at issue."  Appellants' Petition for a Writ of Certiorari, p. 2.  However, plaintiffs' ever-evolving interpretations of the Second Circuit's opinion since then have ignored the crux of the ruling and its basis in long-standing Supreme Court precedents.  The distorted jurisdictional test that plaintiffs now try to derive from the Solicitor General's brief and insert into the Second Circuit's opinion would in fact reinstate the erroneous "foreseeability" standard that the Second Circuit expressly rejected.  Plaintiffs

cannot establish jurisdiction merely by alleging that a defendant "could and did foresee that recipients of their donations would attack targets in the United States. . . . [F]orseeability is not the standard for recognizing personal jurisdiction." *In re: Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 94-95 (2d Cir. 2008). As the Court held, plaintiffs must instead show that defendants "'expressly aimed' intentional tortious acts at residents of the United States," *id.* at 95 (2d Cir. 2008) (quoting *Calder*, 465 U.S. at 789), and that their injuries "'arise out of or relate to' those activities," *id.* at 93 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

To the extent that the Solicitor General suggested a more limited understanding of *Calder*'s requirements, her view is inconsistent with both *Calder* and the Second Circuit. The Solicitor General quotes *Calder* for the proposition that the defendant must *know* that the *brunt* of the injury would be suffered in the forum, but need not specifically *intend* to cause injury in the forum; she further suggests that if the Second Circuit's opinion is interpreted to require intent, it is inconsistent with Supreme Court precedent. SG's Br. at 19. This view, however, cannot be reconciled with the language in *Calder*, where the Supreme Court expressly held that jurisdiction existed in California because "petitioners are primary participants in an alleged wrongdoing *intentionally* directed at a California resident." 465 U.S. at 790 (emphasis supplied). In *Calder*, the Supreme Court did not dispense with the "intent" requirement but rather inferred intent from defendants' knowledge that their allegedly libelous National Enquirer article was focused on a California entertainer who lived, worked and would necessarily suffer significant injury to reputation in California.[3] Intent could not, however, be inferred from knowledge that

---

[3] Thus, for example, *Calder* would not have permitted the California entertainer to sue in New York because, although the defendants doubtless knew that the National Enquirer circulated in New York and that an entertainer would suffer professional injury there, it could not be said that the defendants "expressly aimed" their conduct at New York, since the entertainer did not live in New York. Likewise, plaintiffs' allegations in this case that

untargeted wrongdoing had foreseeable effects in a wide range of geographies. The Second Circuit's opinion, as interpreted by defendants, is thus entirely consistent with Supreme Court precedent.

    **4.    Plaintiffs Misstate the Implications of the Seventh Circuit's *Boim V* Decision**

Plaintiffs also misleadingly cite a second brief of the United States – an amicus submitted to the Seventh Circuit in *Boim* – in support of their latest interpretation. Reliance on the *Boim V* brief is fundamentally misplaced, however, because *Boim V* dealt with the substantive elements of an Anti-Terrorism Act claim, not with personal jurisdiction.[4] Neither the Solicitor General nor any court has ever claimed that "the framework for analyzing personal jurisdiction . . . is essentially synonymous with the standards to be applied in determining whether plaintiffs have stated a claim under the Anti-Terrorism Act." Pls. Notice at 5. On the contrary, as plaintiffs themselves argued when an earlier opinion in *Boim* hurt their position, "the requisite causal connection between a defendant's conduct and a plaintiff's claims is governed not by the ATA, but rather by the requirements of due process" and therefore the Seventh Circuit's analysis of the merits in *Boim* has "nothing to say" about personal jurisdiction. Pls. Response to Notice of Supp. Authority Filed by Def. Yousef Jameel at 4-5 n.4 (Dkt. #2069) (Feb. 15, 2008).

In any event, there is neither "symmetry" nor "harmony" between the Solicitor General's positions or the Second Circuit's decision and that issued by the Seventh Circuit.[5] Indeed, the

---

defendants knew al Qaeda to be a worldwide terrorist organization targeting governments throughout Asia, Europe, Africa and the Middle East does not permit an inference that any and all alleged support for al Qaeda is "expressly aimed" at residents of the United States.

[4] *See* Defendants' Response to Plaintiffs' Notice of Supplemental Authority in Relation to All Pending Motions to Dismiss for Failure to State a Claim and/or Lack of Personal Jurisdiction at 2-8 (Dkt. # 2162) (Mar. 13, 2009) ("Defts. Response to Notice of Suppl. Authority").

[5] If the jurisdictional and merits analysis were identical, as plaintiffs claim, then the Second Circuit's opinion would conflict with the Seventh Circuit's, and this Court would be bound to follow the Second Circuit's ruling, which

Seventh Circuit expressly rejected the Solicitor General's interpretation of the ATA and instead crafted novel standards for liability that, as the dissent in *Boim* pointed out, are fundamentally flawed.  *See* Defts. Response to Notice of Suppl. Authority; *Boim v. Holy Land Foundation for Relief and Dev.*, 549 F.3d 685, 709 (7th Cir. 2008) (Rovner, J., dissenting); *id.* at 719 (Wood, J., dissenting).  Plaintiffs ask this Court to follow the approaches of both the Solicitor General and the Seventh Circuit in *Boim* but do not explain how that is possible when the frameworks adopted by each of them are irreconcilable.[6]

Although the Defendants' Executive Committee highlighted several of the deficiencies in the Seventh Circuit's opinion in its earlier briefing on the *Boim V* decision, *see* Defts. Response to Notice of Suppl. Authority at 11-12, we did not address them in depth on the assumption that this Court would first tackle threshold questions of immunity and personal jurisdiction that *Boim V* did not address.  To the extent this Court now intends to address arguments regarding failure to state a claim in its next rounds of decisions, the defendants, either individually or through their executive committee, stand ready to provide whatever additional briefing would aid the Court on these important issues.

---

requires dismissal under Rule 12(b)(6) because plaintiffs failed to allege intentional conduct expressly directed at the United States that caused plaintiffs' injuries.

[6] The Solicitor General's views differed from the Seventh Circuit in several significant ways:  (1) The Solicitor General argued, consistent with Judge Casey's holding, that implied aiding and abetting liability exists under the ATA, but the Seventh Circuit rejected that view.  *Compare* Brief for the United States as Amicus Curiae at 13-22, *Boim*, No. 05-1815 (7th Cir. Aug. 21, 2008) ("Boim Amicus"), *with Boim*, 549 F.3d at 689-90.  (2) The Seventh Circuit held that giving money to Hamas constitutes an act "dangerous to human life" and therefore a primary violation of the ATA, while the Solicitor General rejected that view.  *Compare Boim,* 549 F.3d at 690, *with* Boim Amicus at 27-28.  (3) The Seventh Circuit found that there is no ATA liability for acts committed before September 13, 1994, the effective date of 18 U.S.C. § 2339A, while the Solicitor General's interpretation would not impose that date limitation.  Many of the allegations against moving defendants involve conduct that pre-dates September 13, 1994, and thus under *Boim*, would need to be dismissed for failure to state a claim.

Respectfully submitted,


/s/_____
Stephen J. Brogan
Mary Ellen Powers
James E. Gauch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
*On Behalf of Defendants Bakr Binladin, Omar*
*Binladin, Tariq Binladin, Yeslam Binladin,*
*Abdullah Binladin, Mohammad Binladin Company,*
*and Binladin Group International Company Ltd.*

September 2, 2009