## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (GBD)(FM)<br>ECF Case |

*This document relates to:*
    *All Actions*

### RESPONSE OF THE NATIONAL COMMERCIAL BANK
### TO PLAINTIFFS' OBJECTIONS TO THE MEMORANDUM DECISION
### AND ORDER OF MAGISTRATE JUDGE MAAS DATED JANUARY 13, 2010

Dated: February 18, 2010
       Washington, D.C.

Mitchell R. Berger (MB-4112)
Alan T. Dickey
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY .......................................................................................................................1

STANDARD OF REVIEW .............................................................................................3

I.      PLAINTIFFS DO NOT SATISFY THEIR BURDEN TO SHOW, THROUGH
A RULE 56(F) FACTUAL AFFIDAVIT, THAT FURTHER DISCOVERY
WOULD YIELD JURISDICTIONALLY-MATERIAL FACTS............................3

     A.      General Jurisdiction:  Aviation Companies. .................................................5

     B.      Specific Jurisdiction: Muwafaq Foundation..................................................7

II.      AS AN INSTRUMENTALITY OF THE SAUDI GOVERNMENT, NCB
IS ENTITLED BOTH TO SOVEREIGN IMMUNITY AND TO DUE PROCESS
PROTECTION AGAINST THE EXERCISE OF PERSONAL JURISDICTION........ 13

     A.      Plaintiffs Waived their *Frontera* Discovery Argument. ................................. 15

     B.      *Frontera* Does Not Apply to NCB. ............................................................. 16

CONCLUSION................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Abu-Nassar v. Elders Futures, Inc.,*
    1994 WL 445638 (S.D.N.Y. Aug. 17, 1994) ........................................................ 15

*Accessory Corp. v. Spotless Plastics Pty., Ltd.,*
    2007 WL 2584963 (S.D.N.Y. Sept. 7, 2007)......................................................... 6

*Allstate Insurance Co. v. Banco do Estado do Rio Grande do Sul,*
    2004 WL 1398437 (S.D.N.Y. Jun. 23, 2004) ........................................................ 19

*Burnett v. Al Baraka Invest. & Dev. Corp.,*
    274 F. Supp. 2d 86 (D.D.C. 2003) ....................................................................... 9

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003)............................................................................................ 14

*Emigra Group, LLC v. Fragomen, Del Rey Bernsen & Loewy, LLP,*
    612 F. Supp. 2d 330 (S.D.N.Y. 2009)................................................................... 5

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury,*
    606 F. Supp. 2d 59 (D.D.C. 2009) ....................................................................... 17

*First Nat'l City of Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"),
    462 U.S. 611 (1983)............................................................................................ 17, 18

*Flatow v. Alavi Found.,*
    2000 WL 1012956 (4th Cir. July 24, 2000) ......................................................... 18

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
    582 F.3d 393 (2d Cir. 2009) ................................................................................ *passim*

*Garb v. Republic of Poland,*
    440 F.3d 579 (2d Cir. 2006) ................................................................................ 14

*Grand River Enters. Six Nations, Ltd. v. King,*
    2009 WL 1360686 (S.D.N.Y. May 15, 2009)....................................................... 16

*Gualandi v. Adams,*
    385 F.3d 236 (2d Cir. 2004) ................................................................................ 4

*Guarneri v. Bates,*
    2008 WL 686809 (N.D.N.Y. Mar. 10, 2008)....................................................... 15

*Herskowitz v. Charney,*
    1995 WL 104007 (S.D.N.Y. Mar. 8, 1995) ......................................................... 8

*ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.p.A.,*
    775 F. Supp. 650 (S.D.N.Y. 1991) ............................................................ 7

*Jazini v. Nissan Motor Co.,*
    148 F.3d 181 (2d Cir. 1998) .................................................................... 9

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,*
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ...................................................... 7

*Just v. Landmark Temporaries, Inc.,*
    1998 WL 167328 (S.D.N.Y. Apr. 8, 1998) .............................................. 3

*Letelier v. Republic of Chile,*
    748 F.2d 790 (2d Cir. 1984) .................................................................... 17

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,*
    124 F.R.D. 75 (S.D.N.Y. 1989) ............................................................... 8

*LNC Investments, Inc. v. Republic of Nicaragua,*
    115 F. Supp. 2d 358 (S.D.N.Y. 2000) ................................................ 18, 19

*Maersk, Inc. v. Neewra, Inc.,*
    --- F. Supp. 2d ----, 2009 WL 5102754 (S.D.N.Y. Dec. 17, 2009) .......... 3

*McAllan v. Von Essen,*
    517 F. Supp. 2d 672 (S.D.N.Y. 2007) ...................................................... 3

*Melnick v. Adelson-Melnick,*
    346 F. Supp. 2d 499 (S.D.N.Y. 2004) ...................................................... 4

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,*
    425 F. Supp. 2d 402 (S.D.N.Y. 2006) ...................................................... 6

*Mitchell v. Century 21 Rustic Realty,*
    233 F. Supp. 2d 418 (E.D.N.Y. 2002) ...................................................... 3

*Nelson v. Massachusetts General Hosp.,*
    2007 WL 2781241 (S.D.N.Y. Sep. 20, 2007) .......................................... 4

*O'Connell Machinery Co. v. M.V. "Americana,"*
    734 F.2d 115 (2d Cir. 1984) .................................................................... 14

*Paddington Partners v. Bouchard,*
    34 F.3d 1132 (2d Cir. 1994) .................................................................... 4

*Penguin Group (USA) Inc. v. Steinbeck,*
    2009 WL 4588748 (S.D.N.Y. Dec. 2, 2009) ............................................ 4

*Reers v. Deutsche Bahn AG,*
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) .................................................................. 14

*Schenker v. Assicurazioni Genereali S.p.A., Consol.,*
    2002 WL 1560788 (S.D.N.Y. July 15, 2002) ......................................................... 6

*Tenen v. Winter,*
    15 F. Supp. 2d 270 (W.D.N.Y. 1998) .................................................................. 15

*In re Terrorist Attacks on Sept. 11, 2001,*
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ..................................................... 9, 13, 14, 18

*In re Terrorist Attacks on Sept. 11, 2001,*
    392 F. Supp. 2d 539 (S.D.N.Y. 2005) ......................................................... 13, 14, 15

*In re Terrorist Attacks on Sept. 11, 2001,*
    538 F.3d 71 (2d Cir. 2008), *cert. denied,* 129 S. Ct. 2859 (2009) ....................... *passim*

*Thomas E. Hoar, Inc. v. Sara Lee Corp.,*
    900 F.2d 522 (2d Cir. 1990) ................................................................................ 3

**RULES**

FED. R. CIV. P. 12(b)(2) ............................................................................................. 4

FED. R. CIV. P. 56(f) .............................................................................................. 1, 4, 9

FED. R. CIV. P. 72 ............................................................................................. 3, 5, 15, 16

**OTHER**

14 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 72.11[1][a] (3d ed. 2007) ......................... 16

## SUMMARY

Once again, plaintiffs ask this Court to second-guess jurisdictional-discovery decisions delegated to Magistrate Judge Maas while ignoring their exacting burden to demonstrate that he abused his discretion.[1]  And, once again, as it did in 2007, this Court should hold that Magistrate Judge Maas' meticulously-detailed January 13, 2010 discovery order (Dkt. #2218) ("Discovery Order"), is "neither contrary to law nor clearly erroneous" and therefore should be "affirmed."  Dkt. #2057.

Magistrate Judge Maas has been "refereeing the parties' disputes concerning the proper scope of jurisdictional discovery as to NCB since April 2006" and, during that time, "the Court has afforded [plaintiffs] considerable jurisdictional discovery regarding NCB's activities and related matters."  Discovery Order at 6, 35.  Repaying this careful judicial oversight with a thesaurus of impertinent critiques,[2] plaintiffs hope to obscure the following factors that compel affirmance of the Discovery Order:

- Because "considerable jurisdictional discovery" has occurred in the "more than five years since NCB filed its first motion to dismiss," and because NCB renewed its motion to dismiss for lack of personal jurisdiction in July 2008 based on the post-discovery record, plaintiffs cannot rely on mere allegations and speculation as a basis for further discovery.  Discovery Order at 29-30; *id.* at 13, 35.  Instead, they must convince the Court, through a fact-based Rule 56(f) affidavit, that specific further discovery would lead to specific, jurisdictionally-material facts.  *Id.*  They have failed to do so, either procedurally or substantively.

- Although under no obligation to do so, NCB has come forward with affidavits and other evidence expressly negating the speculation underlying plaintiffs' core theories of general and specific jurisdiction:

  - NCB has demonstrated that it did not own or control any of the aviation companies whose aircraft apparently made flights into the United States.[3]  And, plaintiffs have

---

[1]     Plaintiffs' Objections to the January 13, 2010 Memorandum Decision and Order of Magistrate Judge Frank Maas, Dkt. #2220 ("Objections").

[2]     *E.g*, Objections at 6-7, 14-15, 18.

[3]     *E.g*, Dkt. #2111, at 24-26; Dkt. #2112; Dkt. #2114, ¶¶ 25-26.

not shown any error—let alone the requisite "clear error"—in Magistrate Judge Maas' fact-finding that "Plaintiffs simply have not made a prima facie showing that NCB Aviation was affiliated with NCB in any way that is jurisdictionally meaningful."  Discovery Order at 27-28 (footnote omitted).

○    NCB now has negated plaintiffs' core specific-jurisdiction allegation—as summarized by Magistrate Judge Maas—that "NCB had contributed its own funds to the Muwafaq Foundation." Discovery Order at 21.[4]  NCB previously demonstrated that it did not provide financial services to the Muwafaq Foundation, and did not employ Yassin Kadi, the man who allegedly operated the Foundation from inception.  Moreover, Magistrate Judge Maas reaffirmed his longstanding earlier holding that "Plaintiffs have not made a prima facie showing" that NCB conspired in any way with the September 11 terrorists.  Discovery Order at 30 n.9.

●    The Second Circuit made clear that "jurisdictional discovery" is improper when the plaintiffs cannot first "establish a prima facie case that the district court has jurisdiction" under the standards announced in *Terrorist Attacks III*.[5]  Because of the extensive jurisdictional discovery already held as to NCB, mere allegations cannot be used to try to build such a prima facie case against NCB.  Even so, plaintiffs' allegations against NCB embody a theory of personal jurisdiction that the Second Circuit expressly rejected in *Terrorist Attacks III*.

●    Plaintiffs seek discovery of NCB's relationship with the Saudi Arabian government based on a misreading of the Second Circuit's *Frontera* decision[6] that they never argued to Magistrate Judge Maas, and therefore have waived as a basis for discovery.  Moreover, to the extent that *Frontera* applies, it compels the Court to adjudicate NCB's immunity from suit under the Foreign Sovereign Immunities Act ("FSIA") before reaching the Due Process personal jurisdiction issue.  We respectfully submit that this Court would have to dismiss plaintiffs' claims against NCB under the FSIA based on (i) our prior showing that NCB is an "instrumentality" of the Kingdom of Saudi Arabia, and (ii) *Terrorist Attacks III*, which held that the FSIA precluded plaintiffs' material-support-of-terrorism claims against the Kingdom of Saudi Arabia, numerous Saudi government officials, and a Saudi government organ.  Indeed, if NCB were an "agent" of the Saudi government—as plaintiffs' Rule 72 Objections appear to suggest—then agency law would permit NCB to share in the FSIA immunity of its notional "principal" (the Kingdom).   In any event, the discovery plaintiffs seek is unwarranted for these reasons, and improperly intrusive as Magistrate Judge Maas held.

---

[4]    *See* Declaration of Dr. Abubaker Al Bagabir, FCCA (dated February 13, 2010) (attached hereto as Exh. A).

[5]    *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 2859 (2009) ("*Terrorist Attacks III*").

[6]    *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009).

## STANDARD OF REVIEW

"[I]t is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (citations omitted). Accordingly, "once the Magistrate Judge has ruled on a discovery issue,[7] the party seeking to overturn that ruling has the heavy burden of establishing that it is clearly erroneous." *Just v. Landmark Temporaries, Inc.*, 1998 WL 167328, at *2 (S.D.N.Y. Apr. 8, 1998); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 439 (E.D.N.Y.) (plaintiffs "did not satisfy their heavy burden of showing that [the magistrate judge's] decision to deny them that discovery was clearly erroneous or contrary to law."), *aff'd*, 45 Fed. Appx. 59 (2d Cir. 2002).

I.   **PLAINTIFFS DO NOT SATISFY THEIR BURDEN TO SHOW, THROUGH A RULE 56(F) FACTUAL AFFIDAVIT, THAT FURTHER DISCOVERY WOULD YIELD JURISDICTIONALLY-MATERIAL FACTS.**

Based on the "considerable jurisdictional discovery regarding NCB's activities and related matters" (Discovery Order at 35), NCB renewed its motion to dismiss for lack of personal jurisdiction in July 2008 and submitted supporting affidavits that supplemented the discovery record. Dkt. ##2110-2115. "When the court is presented with evidence—for example, exhibits and deposition testimony—in support of and opposition to a Rule 12(b)(2) motion, the plaintiff must establish jurisdiction by a preponderance of the evidence. This is what the Court refer[s] to as the 'post-discovery' standard." *Maersk, Inc. v. Neewra, Inc.*, --- F. Supp. 2d ----, 2009 WL 5102754, at *28 (S.D.N.Y. Dec. 17, 2009) (emphasis added). As this Court has held, "where, as here, the parties have conducted several months of jurisdictional discovery, plaintiffs bear the burden of proving that

---

7       "Matters concerning discovery generally are considered 'nondispositive' of the litigation" and thus "are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *see also* FED. R. CIV. P. 72(a).

personal jurisdiction exists by a preponderance of the evidence." *Nelson v. Massachusetts General Hosp.*, 2007 WL 2781241, at *13 (S.D.N.Y. Sep. 20, 2007).

This post-discovery preponderance burden imposes a parallel obligation on plaintiffs seeking further jurisdictional discovery to oppose a Rule 12(b)(2) motion like NCB's renewed motion to dismiss. Magistrate Judge Maas correctly adopted the Southern District authority that requires plaintiffs opposing a Rule 12(b)(2) motion to follow Rule 56(f) procedures and submit a fact-based affidavit showing how specific further discovery would lead to specific, and jurisdictionally-material, facts. Discovery Order at 29-30 & n.8 (quoting *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499 (S.D.N.Y. 2004) ("Summary judgment practice offers guidance in the handling of [Rule 12(b)(2)] motions when they involve evidence outside the pleadings. Where a party against whom summary judgment is sought contends that discovery is necessary in order to raise a genuine issue of material fact, that party must file a Rule 56(f) affidavit. … Here, plaintiff has submitted no such affidavit. … Accordingly, there is no occasion to deny the motion in the vague hope that the plaintiff might turn something up if given another chance.")); *see also Gualandi v. Adams*, 385 F.3d 236, 244-45 (2d Cir. 2004) ("Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56 motion, a court may nonetheless look to Rule 56(f) for guidance in considering the need for discovery on jurisdictional facts."); *Penguin Group (USA) Inc. v. Steinbeck*, 2009 WL 4588748, at *3 (S.D.N.Y. Dec. 2, 2009) (Daniels, J.) (applying Rule 56(f) and noting that "a court can reject a request for discovery, 'if it deems the request to be based on speculation as to what potentially could be discovered'" (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994))).

Ignoring their Rule 56(f) obligations, plaintiffs have not provided a fact-based affidavit laying out the clear path that would link further discovery to jurisdictionally-material facts. Instead, plaintiffs simply regurgitate—and bombard the Court with copies of—the letter requests for discovery that Magistrate Judge Maas considered and rejected as insufficient to warrant further

discovery.  *Compare* Objections at 2 n.1 (referencing plaintiffs' letter requests), 12-13 (discussing plaintiffs' "Muwafaq Foundation" allegations), and 21-28 (discussing plaintiffs' aviation company allegations), *with* Discovery Order at 14-22 (discussing letter requests), 26-28 (denying aviation company discovery), and 30-34 (denying Muwafaq Foundation discovery).  Plaintiffs' "do-over" approach in their Objections is contrary to Rule 72, which defers to a Magistrate Judge's discovery ruling absent a demonstrated abuse of discretion.

Although NCB has no obligation to "prove … the negative" of plaintiffs' jurisdictional allegations,[8] NCB nonetheless demonstrated to Magistrate Judge Maas that there is no good faith factual basis for the allegations and speculation underlying plaintiffs' core theories of general and specific jurisdiction.

## A.    General Jurisdiction:  Aviation Companies.

Plaintiffs' core theory for general-jurisdiction discovery is, as described by Magistrate Judge Maas, that aircraft of an entity holding itself out as "NCB Aviation had entered United States airspace on more than 130 occasions between 2000 and 2002."  Discovery Order at 16.[9]  However, through affidavits and an analysis of the same meaningless documents on which plaintiffs rely in their Objections, NCB's renewed motion to dismiss established that NCB did not engage in the aviation business in the United States either directly or through controlled companies (whether called "NCB Aviation" or any other name).  *See* Dkt. #2111, at 24-26; Dkt. #2112 (Bagabir Decl.); Dkt. #2114, ¶¶ 25-26 (Juco Decl.).  Among other facts, NCB demonstrated:

- Neither NCB itself, nor any subsidiary or affiliate, conducted business in the United States relating to the ownership or operation of aircraft.

---

[8]    *Emigra Group, LLC v. Fragomen, Del Rey Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 337 (S.D.N.Y. 2009).

[9]    It bears emphasis that Magistrate Judge Maas found:  "There is no suggestion that NCB Aviation played any role in the terrorist attacks on United States soil."  Discovery Order at 26.

- NCB had no ownership interest or investment in any of the aviation companies—including Mid-East Jet, Skyways International, or any company holding itself out as "NCB Aviation"—whose documents plaintiffs proffer.

- NCB has not derived any revenue from ownership or operation of aircraft in the United States, or from any business that owned or operated such aircraft.

- NCB had no ownership interest in any aircraft identified by plaintiffs.

- NCB did not employ any of the "airmen" whom plaintiffs seek to link to NCB.

*See* Dkt. #2111, at 24-26; Dkt. #2112 (Bagabir Decl.); Dkt. #2114, ¶¶ 25-26 (Juco Decl.).[10]

"[O]n a motion to dismiss for lack of jurisdiction, where 'defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted.'" *Accessory Corp. v. Spotless Plastics Pty., Ltd.*, 2007 WL 2584963, at *2 (S.D.N.Y. Sept. 7, 2007) (quoting *Schenker v. Assicurazioni Generali S.p.A., Consol.*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002)); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006) (same). As particularly relevant here, *Accessory Corp.* prohibited further jurisdictional discovery concerning a foreign defendant's relationship with an alleged U.S. affiliate because, as here, plaintiff "offered no basis for suggesting" that the U.S. company "is controlled by or is a department of" the foreign defendant, which had "affirm[ed] to the contrary" through affidavits. 2007 WL 1732435, at *5 n.17.

Based on NCB's affidavit-supported factual showing, and the utter lack of probative value in plaintiffs' "aviation" documents, it is frivolous for plaintiffs to suggest that Magistrate Judge Maas abused his discretion, or committed clear error, in holding: "Plaintiffs simply have not made a prima facie showing that NCB Aviation was affiliated with NCB in any way that is jurisdictionally meaningful." Discovery Order at 27-28 (footnote omitted); *see also* Discovery Order at 16 n.5

---

[10]     NCB's April 24, 2009 letter to Magistrate Judge Maas reviewed these issues in further detail, and we respectfully refer the Court to that letter, a copy of which was contemporaneously submitted to Your Honor.  We will supply an additional courtesy copy of that letter, as plaintiffs have done with their discovery letters.  Objections at 2 n.1.

(finding that plaintiffs' FAA flight data related to planes operated by Skyways International and others, not "NCB Aviation"), and at 28 n.7 (finding no basis to suggest that NCB had an interest in Skyways International).[11]

### B.    Specific Jurisdiction: Muwafaq Foundation.

Plaintiffs' core theory for specific-jurisdiction discovery is, as described by Magistrate Judge Maas, that NCB allegedly was "an active participant" in the efforts of two individuals—Khalid Bin Mahfouz and Yassin al Kadi[12]—"'to build and sustain [the] Muwafaq [Foundation], for the purpose of enabling al Qa[e]da to realize its stated ambition to attack America.'"   Discovery Order at 32 (quoting letter from plaintiffs' counsel).   As Magistrate Judge Maas recognized, this conclusory mouthful of a theory must be unpacked into its two key component allegations, *i.e.*, that:   (i) "NCB contributed its own funds to the Muwafaq Foundation"; and (ii) that Muwafaq was created "within the walls of NCB while Bin Mahfouz and al Qadi were working together."   Discovery Order at 21 (citing plaintiffs' letters in support of discovery).   Magistrate Judge Maas denied plaintiffs' request for discovery tied to this "Muwafaq" theory pending this Court's "opportunity in the first instance"

---

[11]      Magistrate Judge Maas also considered plaintiffs' allegations about links between the aviation companies and Khalid Bin Mahfouz, but rejected the jurisdictional significance of any such link.   Discovery Order at 15-16, 27-28. Plaintiffs now cite to <u>1992</u> pleadings that allege that, <u>prior to that date</u>, Mahfouz claimed to run NCB with "absolute authority."   Objections at 27-28.   That ancient nugget cannot create a jurisdictionally-meaningful link between NCB and the aviation companies, or show an abuse of discretion by Magistrate Judge Maas, because Mahfouz ceased to have any ownership interest in the Bank as a result of transactions in 1999 and 2001 by which the Saudi government acquired majority ownership of the Bank (Dkt. #487, Exh. 2).   As a matter of law, before the jurisdictionally-relevant date on which this litigation was filed (*see* Discovery Order at 7), Mahfouz lost whatever ability he had to act on behalf of NCB. *See ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.p.A.*, 775 F. Supp. 650, 652 n.2, 654 (S.D.N.Y. 1991) (finding no general jurisdiction over a foreign corporation, which had hired a sales representative in the forum to solicit customers from June 1987 to September 1989, because "that relationship terminated before the filing of the complaint in December 1989").   Moreover, even in the context of parent and subsidiary companies, claims of overlapping directors and officers do not establish a jurisdictionally relevant link between companies.   *See J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("It has been established that overlapping officers and directors are 'intrinsic to the parent-subsidiary relationship,' and that they are not determinative as to whether the subsidiary is a 'mere department' of the parent.").   Finally, whatever Mahfouz may have meant in describing his NCB authority, his death means that "[h]is testimony is now forever lost," as plaintiffs themselves point out.   Objections at 15.

[12]      We refer herein to Khalid Bin Mahfouz as "Mahfouz" and we use "Kadi" to refer to Yassin al Kadi, whose name appears with various spellings, including "al Qadi" as used by Magistrate Judge Maas.

to decide "whether the conduct alleged by the Plaintiffs is sufficient to bring NCB within the Court's jurisdiction."  Discovery Order at 33.

Magistrate Judge Maas did not abuse his discretion, or err in any way, in denying discovery on plaintiffs' "Muwafaq" theory of specific jurisdiction.  Indeed, NCB looks forward to the completion of briefing on its renewed motion to dismiss,[13] where we will demonstrate that plaintiffs' "Muwafaq" theory is insufficient, both factually and legally, to authorize the exercise of specific jurisdiction over NCB under the principles of *Terrorist Attacks III*.  Among other things:

- NCB never contributed its own funds to the Muwafaq Foundation or to Kadi.[14]

- Muwafaq never maintained an account with NCB.[15]

- Kadi never was an employee of NCB—and there is no basis for plaintiffs' fanciful description of him as a "senior NCB executive."[16]

- Kadi had no role in, or authority over, NCB's donations to charitable institutions or causes.[17]

- Muwafaq has never been designated by the U.S. government as a terrorist organization.[18]

- Although the U.S. government has designated Kadi (personally) as a supporter of terrorism, our government has never linked his or Muwafaq's activities either to NCB, or to any terrorist activity aimed at the United States.[19]

---

[13]    Because plaintiffs have not obtained a stay of the Discovery Order, their Opposition to NCB's renewed motion to dismiss remains due sixty days from the date of that Order.  "In the absence of a stay, the fact that a litigant has appealed to the District Court from a Magistrate Judge's discovery order does not excuse failure to comply with that order."  *Herskowitz v. Charney*, 1995 WL 104007, at *3 (S.D.N.Y. Mar. 8, 1995).  Moreover, "allowing the automatic stay of magistrate's orders [by filing objections] would not only encourage the filing of frivolous appeals but, would grind the magistrate system to a halt."  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.R.D. 75, 78-79 (S.D.N.Y. 1989).

[14]    Bagabir Decl., *supra* n.4, ¶ 3.

[15]    *See* NCB's May 14, 2009 letter to Magistrate Judge Maas, at 6 & n.6, citing Kadi's statement to the U.S. Office of Foreign Assets Control.  A copy of NCB's May 14, 2009 letter (hereinafter, "NCB 5/14/09 Ltr.") was contemporaneously submitted to Your Honor.  We will supply an additional courtesy copy of that letter, as plaintiffs have done with their discovery letters.  Objections at 2 n.1.

[16]    Juco Decl. (Dkt. #2114, ¶ 27); *see also* NCB's 5/14/09 Ltr., at 6.

[17]    Bagabir Decl., *supra* n.4, ¶¶ 4-5.

[18]    Instead, it is plaintiffs' theory that Muwafaq somehow became part of Al Qaeda.  *See* Discovery Order at 21.

- NCB has never been designated by the U.S. government, or any other government or organization, as a terrorist supporter.[20]

- Mahfouz has never been designated by the U.S. government, or any other government or organization, as a terrorist supporter.[21]

- Although Mahfouz's connection with NCB terminated long ago, *see supra* n.11, any activities he undertook with respect to Muwafaq were not within the scope of his NCB employment as a matter of law.[22]

- Magistrate Judge Maas reaffirmed his longstanding holding that "Plaintiffs have not made a prima facie showing" to support a theory of "conspiracy jurisdiction" against NCB.  Discovery Order at 30 n.9.  In other words, there is not even a prima facie basis to suggest that NCB conspired in any way with the September 11th terrorists.

These facts alone foreclose any potential that plaintiffs in good faith could submit the Rule 56(f)

affidavit required to support a renewed request for discovery concerning their "Muwafaq" theory of

---

[19]     NCB 5/14/09 Ltr., at 7.  In response to Kadi's lawsuit challenging his designation, the U.S. government produced the agency record supporting his designation.  *See Kadi v. Geithner*, No. 1:09-CV-00108 (D.D.C.).  The publicly-available agency record, as filed with the U.S. district court in Washington, is voluminous but does not link Kadi's or Muwafaq's activities to NCB, or to any terrorist activity directed at the United States.

[20]     *Id.*  In the years following the September 11th attacks, the U.S. government has aggressively utilized its broad authority under Executive Order 13224 to designate hundreds of other entities that have been found to assist in or provide financial support or services to terrorist organizations, but has never subjected NCB to any such designation or any other sanction.

[21]     *Id.* at 8-9.  Plaintiffs also challenge Magistrate Judge Maas' decision to deny their requests to take discovery directly from Mahfouz and Kadi.  Objections at 18-21.  Other counsel represent Mahfouz and Kadi, but we note that neither Mahfouz nor Kadi was made a party to, or otherwise brought in to, the proceedings before Magistrate Judge Maas.  As we understand it, both Mahfouz and Kadi have pending motions to dismiss, which assert a lack of personal jurisdiction, as Magistrate Judge Maas noted.  Discovery Order at 34.  The Magistrate Judge also noted that plaintiffs had propounded 55 document requests to Mahfouz and 73 document requests to Kadi.  *Id.*  The longstanding provisions of Case Management Order No. 2, ¶ 14 (Dkt. #247) preclude this type of overbroad merits discovery masquerading as jurisdictional discovery.  ("As to any defendant that has filed a motion to dismiss on grounds of ... lack of personal jurisdiction, merits discovery shall not take place until such jurisdictional motion has been resolved by this Court, except upon application to the Court based on extenuating circumstances."); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998) (proper to deny jurisdictional discovery where plaintiffs fail to establish a prima facie case of jurisdiction).  Indeed, we understand that at least counsel for Mahfouz objected on this basis to the plaintiffs' discovery requests shortly after those requests were served in August 2008.  We are not aware of any motion to compel filed thereafter.

[22]     *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005) ("*Terrorist Attacks I*")("An employee's actions cannot be the basis for employer liability unless the employee was acting in furtherance of the employer's business."); *Burnett v. Al Baraka Invest. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (requiring plaintiffs to show that a bank official was "acting within the scope of his bank employment when he allegedly provided support to al Qaeda … to impose vicarious liability on the bank for acts of its officers and employees").  Applying those standards, Judge Casey refused to impute to defendant Al Rajhi Bank the alleged aiding and abetting by Al Rajhi family members of "the September 11 terrorists by donating to certain Defendant charities," because "allegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business."  *Terrorist Attacks I*, 349 F. Supp. 2d at 833.

specific jurisdiction.  These facts preclude the possibility that plaintiffs could carry their burden to establish their "Muwafaq" theory of specific jurisdiction by a preponderance of the evidence.

As the Second Circuit underscored in *Terrorist Attacks III*, "jurisdictional discovery" in support of a specific-jurisdiction theory is properly denied when plaintiffs cannot first "establish a prima facie case that the district court ha[s] jurisdiction" under the standards announced by the Court of Appeals.  *Terrorist Attacks III*, 538 F.3d at 96.  Given the "considerable jurisdictional discovery" afforded to plaintiffs, they cannot ignore the extensive facts that entirely negate any prima facie jurisdictional case as to NCB.  *See supra* at 3-4.  Even so, plaintiffs' Muwafaq-related speculation and allegations could not support a prima facie case of specific jurisdiction over NCB because those allegations seek to advance a theory of personal jurisdiction that *Terrorist Attacks III* rejected.

As Magistrate Judge Maas recognized, *Terrorist Attacks III* held that, to exercise specific jurisdiction over a foreign defendant, a U.S. court must find that the defendant "'expressly aimed intentional tortious acts at residents of the United States.'"  Discovery Order at 4-5 (quoting *Terrorist Attacks III*, 538 F.3d at 95 (internal quotations omitted)).  As particularly relevant here, the Second Circuit very broadly rejected a theory of specific jurisdiction based on contributions and other forms of financial support, provided outside the United States, to Islamic charities:

> The plaintiffs do not allege that the [defendants] directed the September 11 attacks or commanded an agent (or authorized al Qaeda) to commit them.  Rather, the plaintiffs rely on a causal chain to argue a concerted action theory of liability: the [defendants] supported Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks.  Even if the [defendants] were reckless in monitoring how their donations were spent, or could and did foresee that recipients of their donations would attack targets in the United States, that would be insufficient to ground the exercise of personal jurisdiction.  Rather, the plaintiffs have the burden of showing that the [defendants] engaged in "intentional, and allegedly tortious, actions … expressly aimed" at residents of the United States.  That burden is not satisfied by the allegation that the [defendants] intended to fund al Qaeda through their donations to Muslim charities.

*Terrorist Attacks III*, 538 F.3d at 94-95 (citations omitted).  In equally clear language, the Second

Circuit rejected a theory of specific jurisdiction based on the provision of financial services outside

the U.S., even directly to "an entity that carries out a terrorist attack on United States citizens":

> It may be that, but for access to financial institutions, al Qaeda could not have
> funded its terrorist attacks.  But that does not mean that managers of those financial
> institutions "purposefully directed" their "activities at residents of [this] forum."…
> For the same reasons explained above, we decline to read [plaintiffs' cited "primary
> participant" cases] to say that the provision of financial services to an entity that
> carries out a terrorist attack on United States citizens could make [defendant], in the
> circumstances presented here, subject to the jurisdiction of American courts.

*Id.* at 96 (citations omitted); *accord* Discovery Order at 20.

Over the years, plaintiffs have provided an ever-changing formulation of the governing

jurisdictional standard, and even now contend that their latest formulation should "supplant" what

they have argued in the past.  Objections at 12 n.5.  However, when it suited their interest in the

U.S. Supreme Court, plaintiffs had no trouble understanding that:

> [T]he Second Circuit held that … the Due Process Clause bars U.S. courts'
> jurisdiction over persons who provide material support abroad to terrorist
> organizations—even those who know the organizations they are funding intend to
> attack the United-States—unless those persons also directly carry out or command
> the specific terrorist attack at issue.

Plaintiffs' Pet'n for Writ of Cert., 2008 WL 4906103, at *2 (Nov. 12, 2008).  Plaintiffs further

explained to the Supreme Court that:

> The Second Circuit held that the Due Process Clause requires dismissal of claims, as
> legally insufficient, that the Saudi princes "could and did foresee that recipients of
> their donations would attack targets in the United States" and "intended to fund al
> Qaeda through their donations" knowing of al Qaeda's "jihad against the United
> States." …  The Second Circuit could not have been clearer that it rejected the
> district court's reasoning and was *not* resting its decision on the complaint's
> insufficiency.  The panel "accept[ed] [the complaint] as true at the pleading stage,"
> and, for the point most relevant here, found that "[t]hese allegations include a wealth
> of detail (conscientiously cited to published and unpublished sources) that, if true,
> reflect close working arrangements between ostensible charities and terrorist
> networks, including al Qaeda."  The panel fully accepted, for purposes of its
> decision, that the princes "caused money to be given to the Muslim charities … with
> the knowledge that the charities would transfer the funds to al Qaeda," and

11

otherwise supported the charities knowing that they were funding terrorist groups that targeted the U.S.

Plaintiffs' Suppl. Brief in Resp. to Brief of the United States, 2009 WL 1604440, at *9 (June 8, 2009) (citations omitted) (underline emphasis added).

Plaintiffs' "Muwafaq" theory of specific jurisdiction as to NCB is indistinguishable from the allegations against the Saudi Princes (as described above by plaintiffs themselves), and which *Terrorist Attacks III* rejected. *Compare id.* ("These allegations … reflect close working arrangements between ostensible charities and terrorist networks, including al Qaeda … [T]he princes 'caused money to be given to the Muslim charities … with the knowledge that the charities would transfer the funds to al Qaeda'"), *with* Objections at 12-13 ("NCB maintained a close and direct relationship with al Qaeda") and Discovery Order at 21 (noting that plaintiffs' request for further discovery is based on their theory that "the Muwafaq Foundation was created within the walls of NCB while Bin Mahfouz and al Qadi were working together, and … NCB had contributed its own funds to the Muwafaq Foundation."). Notably missing from even plaintiffs' most imaginative allegations against NCB is any suggestion that NCB engaged in any "intentional tortious act" of any kind—let alone one "expressly aimed" at residents of the United States.

Even momentarily ignoring the extensive facts that preclude plaintiffs' "Muwafaq" theory of specific jurisdiction, *Terrorist Attacks III*—both by its plain language, and as understood by plaintiffs themselves—likewise precludes plaintiffs' "Muwafaq" theory of specific jurisdiction as a matter of law. Jurisdictional discovery to support that theory was properly denied by Magistrate Judge Maas pending resolution of these issues by this Court. And, we respectfully submit, once briefing on NCB's renewed motion to dismiss is complete, this Court should conclude that plaintiffs' "Muwafaq" theory of specific jurisdiction is insufficient as both a matter of fact and a matter of law.

## II. AS AN INSTRUMENTALITY OF THE SAUDI GOVERNMENT, NCB IS ENTITLED BOTH TO SOVEREIGN IMMUNITY AND TO DUE PROCESS PROTECTION AGAINST THE EXERCISE OF PERSONAL JURISDICTION.

Without first advancing their contention to Magistrate Judge Maas, plaintiffs now assert that discovery concerning NCB's "relationship to the government of Saudi Arabia" is essential because of *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009). Objections at 9-12. Plaintiffs misread *Frontera*, at least as applied to NCB, because *Frontera* deals with entities that have no active claim to immunity under the FSIA, yet act as highly-controlled agents (in the principal-agent sense) of foreign sovereign governments (which themselves are not entitled to U.S. constitutional protections). Two factors take NCB out of the *Frontera* framework: (1) NCB has an active claim for sovereign immunity under the FSIA,[23] but adjudication of that issue was deferred pending resolution of NCB's personal jurisdiction defense;[24] and (2) NCB based its FSIA claim not on a principal-agent relationship with the Saudi government, but instead—as Judge Casey recognized—on its status as "an instrumentality of the Kingdom of Saudi Arabia."[25] Instrumentalities, unlike agents, are presumptively separate from the foreign governments that own them, and accordingly entitled to Due Process protections in the personal jurisdiction analysis. *See infra* at 16-18. Indeed, many plaintiffs here have argued at length that NCB operates on a commercial basis, at arms-length from the Saudi government. *See infra* at 18-19. While this is true, it does not diminish NCB's claim to FSIA immunity as an "instrumentality," because that claim depends solely on NCB's <u>ownership structure</u>, and whether the Saudi government directly owns the majority of NCB's shares. *See infra* at 14 n.26.

---

[23]    *Terrorist Attacks I*, 349 F. Supp. 2d at 789-92.

[24]    *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 572-75 (S.D.N.Y. 2005) ("*Terrorist Attacks II*").

[25]    *Terrorist Attacks I*, 349 F. Supp. 2d at 789.

The significance of these factors is straightforward.  If plaintiffs now wish to adjudicate NCB's "relationship to the government of Saudi Arabia," then the mechanism for doing so is NCB's claim to FSIA immunity.  As NCB noted in its renewed motion to dismiss for lack of personal jurisdiction, Second Circuit law handed down since *Terrorist Attacks I* and *II* greatly simplifies the FSIA analysis, and confirms NCB's status as an "instrumentality" of the Kingdom because NCB is directly owned by the Saudi government, through its Ministry of Finance.  *See* Dkt. #2111, at 2 n.1.[26]  Moreover, *Terrorist Attacks III* squarely applied FSIA immunity to preclude plaintiffs' claims against the Kingdom of Saudi Arabia, as well as its officials and one of its organs.  These two components establish NCB's entitlement to FSIA immunity in this litigation as an "instrumentality" of the Kingdom.  Notably, however, even if (contrary to fact) NCB were a *Frontera*-type "agent" of the Kingdom, then agency law would entitle NCB to assert the FSIA immunity of the Kingdom, its notional principal.  *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150-51 (S.D.N.Y. 2004) (FSIA immunity would extend to separately-incorporated business entities if, as plaintiffs contended, those entities were "mere departments" of an immunized "foreign sovereign"; "Essentially, plaintiffs ask this court to ignore the corporate form for purposes of the [personal] jurisdictional analysis and to defend it rigorously with respect to the FSIA analysis.  Plaintiffs cannot have it both ways. … If

---

[26]    Judge Casey's analysis of NCB's FSIA claim left one open question:  whether NCB is <u>directly</u> owned by the Saudi Government.  *Terrorist Attacks I*, 349 F. Supp. 2d at 792.  There is no dispute that, as Magistrate Judge Maas acknowledged, the majority of NCB's shares were acquired by "the Saudi government, acting through the Public Investment Fund of its Ministry of Finance.  Discovery Order at 28; *see also Terrorist Attacks I*, 349 F. Supp. 2d at 792.  That ownership structure means that NCB is directly owned by the Saudi government, making NCB an instrumentality of the Kingdom entitled to FSIA immunity.  *Id.*  Following Judge Casey's 2005 decision in *Terrorist Attacks I*, the Second Circuit, in *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), provided guidelines compelling the conclusion that, on the existing record, the Public Investment Fund of the Saudi Ministry of Finance is directly and inseparably part of the Saudi central government.  In *Garb*, the Second Circuit held that the FSIA precluded subject matter jurisdiction over the Ministry of the Treasury of Poland because the Ministry is an inseparable part of the Polish state.  In reaching that decision, the Second Circuit reaffirmed the FSIA direct-ownership tests on which NCB had relied, and specifically reaffirmed its earlier *O'Connell* decision, under which an entity just like the PIF—*i.e.*, "a public financial entity which coordinates the management of commercial enterprises of the … [foreign] Government"—is treated as an inseparable part of the foreign state.  *Id.* at 596 n.21 (citing *O'Connell Machinery Co. v. M.V. "Americana,"* 734 F.2d 115, 116-17 (2d Cir. 1984)).  Accordingly, the Second Circuit's decision in *Garb* enables this Court to find, without further factual inquiry, that NCB is directly owned by the Saudi government, and accordingly entitled to FSIA immunity as a Saudi government instrumentality.

AutoZug and R & T are mere departments of Deutsche Bahn, then this court lacks subject matter jurisdiction over the claims against them.  If they are separate corporate entities, then plaintiffs cannot attribute Deutsche Bahn's contacts to the subsidiaries for purposes of personal jurisdiction." (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003))).  For all of these reasons, NCB's claim to FSIA immunity can be resolved promptly and favorably, and without any need for additional discovery.  *See* Dkt. #2111, at 2 n.1.

Understanding, however, that Judge Casey had deferred adjudication of the FSIA issue, Magistrate Judge Maas did not abuse his discretion in precluding discovery concerning NCB's relationship with the Saudi government.  Judge Casey had held that such discovery improperly would "intrude on the inner workings of the Kingdom's government."  *Terrorist Attacks II*, 392 F. Supp. 2d at 575.  Magistrate Judge Maas acted well within his discretion in holding that "the inquiry would be no less intrusive" if undertaken in the personal jurisdiction context, as opposed to the FSIA context.  Discovery Order at 29.  Moreover, because plaintiffs deprived Magistrate Judge Maas of an opportunity to consider their *Frontera* argument, plaintiffs have waived *Frontera* as a basis for challenging his Discovery Order.

### A.    Plaintiffs Waived their *Frontera* Discovery Argument.

Rule 72 "[o]bjections based on arguments not raised as a matter of first impression before the Magistrate Judge are … not entitled to any review."  *Guarneri v. Bates*, 2008 WL 686809, at *1 (N.D.N.Y. Mar. 10, 2008); *accord Abu-Nassar v. Elders Futures, Inc.*, 1994 WL 445638, at *5 n.2 (S.D.N.Y. Aug. 17, 1994) ("These arguments were not raised before [the magistrate judge], and are not submitted as objections but as new arguments.  Accordingly, plaintiffs' arguments and evidence are untimely."); *Tenen v. Winter*, 15 F. Supp. 2d 270, 272 (W.D.N.Y. 1998) ("The district judge will normally not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance").  As Judge Keenan noted:

> According to *Moore's Federal Practice*, … "A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order."

*Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 1360686, at *3 (S.D.N.Y. May 15, 2009) (quoting 14 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 72.11[1][a] (3d ed. 2007)).

Plaintiffs do not contend that they made their *Frontera*-based discovery argument to Magistrate Judge Maas in the first instance—nor could they. Accordingly, that argument cannot provide a basis for a Rule 72 objection to Magistrate Judge Maas' denial of jurisdictional discovery concerning NCB's relationship with the Saudi government.

## B.  *Frontera* Does Not Apply to NCB.

In *Frontera*, the Second Circuit dealt with an arbitration award against an oil company ("SOCAR") owned by the Azerbaijan Republic, and made clear that the threshold question of FSIA immunity had been disposed of by Azerbaijan's agreement to arbitrate the dispute. *See* 582 F.3d at 398. The Court of Appeals then turned to whether SOCAR was entitled to Due Process consideration in its challenge to personal jurisdiction. *Id.* In holding against SOCAR's Due Process claim, the Second Circuit distinguished between a foreign government's highly-controlled "agents" and a foreign government's presumptively-independent "instrumentalities"—with agents (like their foreign government principal) not entitled to Due Process rights, and instrumentalities (as distinct legal entities) entitled to such rights. 582 F.3d at 400. Here, NCB has claimed FSIA immunity based on its status as an "instrumentality" of the Saudi government. Perhaps understanding that the Kingdom itself is entitled to FSIA immunity, most plaintiffs have argued emphatically against any notion that NCB is an agent of the Kingdom. *See infra* at 18.

*Frontera* emphasized the "presumption" that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such,"

16

and that this presumption can be overcome only "if the state so 'extensively control[s]' the instrumentality 'that a relationship of principal and agent is created.'"[27]   582 F.3d at 400 (quoting *First Nat'l City of Bank v. Banco Para El Comerico Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 629 (1983)) ("[I]f SOCAR is an agent of the Azerbaijani state, as recognized in *Bancec* and subsequent cases, then, like Azerbaijan, SOCAR lacks due process rights."); *Bancec*, 462 U.S. at 629 ("Thus, where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, we have held that one may be held liable for the actions of the other.").  Thus, after *Frontera*, a foreign-state instrumentality like NCB that is distinct and independent from the sovereign state still must be given Due Process protections against personal jurisdiction.  *Id.*; *Bancec*, 462 U.S. at 626-27; *see also Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 66, 76-77 (D.D.C. 2009) (relying on the same *Bancec* line of cases as did *Frontera*, and holding that "it does not appear that the Cuban government exerted 'sufficient control over [defendant] to make it an agent of the State' for Fifth Amendment purposes" where the defendant was "a state-owned <u>company</u>," that was "a government <u>instrumentality</u>" and "run as a distinct economic enterprise" that "engage[d] in commercial operations, not government functions").

NCB's presumed separateness from the Kingdom cannot easily be overcome, and plaintiffs bear a heavy burden to defeat it.  *Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984) ("Plaintiffs had the burden of proving that [the national airline] was not entitled to separate recognition. … [B]oth *Bancec* and FSIA legislative history caution against too easily overcoming the presumption of separateness.").  For NCB to lose its separate juridical status and be deemed an agent of the Kingdom for *Frontera* purposes, plaintiffs must contradict their own prior allegations

---

[27]   Plaintiffs overtly misstate *Frontera* in claiming "the Second Circuit concluded that SOCAR's personal jurisdiction defense could not be evaluated until the district court first determined: (1) whether SOCAR was an agent <u>or instrumentality</u> of the government of Azerbaijan," Objections at 11 (emphasis added), when the Second Circuit instead specifically remanded for a determination "whether SOCAR is an <u>agent</u> of Azerbaijan," 582 F.3d at 401 (emphasis added), having already acknowledged that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such."  *Id.* at 400.

and demonstrate that the government exercised extensive control over NCB's daily operations and abused the corporate form. *LNC Investments, Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000); *see also Flatow v. Alavi Found.*, 2000 WL 1012956 (4th Cir. July 24, 2000) ("Courts interpreting [*Bancec*'s 'extensively controlled'] language have focused on whether the foreign state controlled the day-to-day operations of the entity at issue."). Plaintiffs cannot meet that burden.

Nothing in the record suggests that NCB is an "agent" of, or controlled by, the Kingdom of Saudi Arabia. NCB never contended that it was as an "agent" of the Saudi government, but rather that the Kingdom's majority ownership of NCB made it an "instrumentality" of the Saudi government under the FSIA, which entitled NCB to sovereign immunity based on its ownership structure, not because it acts under the control of the Saudi government.[28] *See Terrorist Attacks I*, 349 F. Supp. 2d at 789-90 (discussing NCB "instrumentality" status based on majority-ownership by the Kingdom).

When it suited their interests, the *Ashton* and *Burnett* plaintiffs affirmatively alleged that NCB was <u>not an agent</u> of the Saudi government. *See Ashton* Opp. to NCB Mot. Dismiss at 6, 12, 13 (Dkt. #232) ("[T]he 'Saudi Arabian Information Resource,' a Saudi Ministry of Culture and Information website, provides links to 'Commercial Banks in Saudi Arabia.' NCB is on the list – along with Riyadh Bank, Saudi American Bank, Al Rajhi Banking and Investment Corp., and other privately-owned banks. … Plaintiffs maintain that NCB is a commercial private bank not entitled to FSIA protection. … Indeed, there is no act of the Kingdom implicated in this suit."); *Burnett* Opp. to NCB Mot. Dismiss at 2, 32 (*Burnett* Dkt. #435) ("Throughout the 1990's, NCB was a privately-owned commercial bank, unaffiliated with the government of Saudi Arabia. … [P]laintiffs' attempt to hold NCB responsible for its actions in no way implicates the government of Saudi Arabia.").

---

[28]     *See* Discovery Order at 3 ("NCB's first motion to dismiss … asserted, in part, that NCB was an instrumentality of the Kingdom of Saudi Arabia and therefore immune from suit under the Foreign Sovereign Immunities Act.").

To be sure, the *Federal Insurance* plaintiffs allege in conclusory fashion that, "[s]ince 1999, the Kingdom of Saudi Arabia has owned a controlling interest in National Commercial Bank, and operated the bank as an agency, instrumentality and organ of the Kingdom." *Fed. Ins.* Am. Compl. ¶ 287 (Dkt. #1380) (emphasis added).  If that allegation is meant to portray NCB as an "agent" of the Kingdom, then NCB is entitled to immediate dismissal of the *Federal Insurance* plaintiffs' claims based on the *Terrorist Attacks III* holding that the Kingdom—NCB's notional principal—is immune from plaintiffs' claims under the FSIA.   If, instead, that allegation is meant to highlight NCB's "instrumentality" status, then it confirms NCB's presumptive separation from the Kingdom, and entitlement to Due Process protections under *Frontera*.

The publicly available evidence leaves no question that NCB is owned but not controlled by the Saudi government.[29]   And stock ownership is insufficient to show that an instrumentality is an "agent" of its foreign state owner.  *See LNC Investments*, 115 F. Supp. 2d at 365 (rejecting the claim that Nicaragua's wholly-owned central bank was the government's agent because the bank possessed most characteristics of a typical independent government instrumentality); *Allstate Insurance Co. v. Banco do Estado do Rio Grande do Sul*, 2004 WL 1398437, at *4 (S.D.N.Y. Jun. 23, 2004) ("Under the FSIA, stock ownership alone is insufficient to show that a subsidiary is an agent of its parent."). Accordingly, plaintiffs are left with a stark and unappealing choice:  either NCB is an agent of the Kingdom, immediately entitled to share in its principal's FSIA immunity; or NCB is an instrumentality of the Kingdom, entitled to adjudication of its FSIA immunity claim, and entitled as well to Due Process protections in the personal jurisdiction analysis under *Frontera*.  Under neither scenario are plaintiffs entitled to jurisdictional discovery of NCB's relationship with the Kingdom.

---

[29]   *See* NCB's 2008 Audited Consolidated Financial Statements at 5, http://www.alahli.com/en-US/About%20Us/News_Reports/FinancialReport/Documents/Financial%20Reports/FR2008/fr2008Eng.pdf  ("The National Commercial Bank is a Saudi Joint Stock Company . . . .   The objective of the Bank is to provide a full range of banking services.").

## CONCLUSION

For the foregoing reasons, plaintiffs' Rule 72 Objections to the January 13, 2010 Memorandum Decision and Order of Magistrate Judge Maas concerning jurisdictional discovery as to NCB should be overruled, and the Order of Magistrate Judge Maas should be affirmed.

Dated: February 18, 2010                          Respectfully submitted,
      Washington, D.C.

         /s/Mitchell R. Berger
        Mitchell R. Berger (MB-4112)
        Alan T. Dickey
        PATTON BOGGS LLP
        2550 M Street, N.W.
        Washington, D.C. 20037
        Phone: 202-457-6000
        Fax:    202-457-6315

        *Attorneys for Defendant*
        *The National Commercial Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2010, I caused copies of the RESPONSE OF THE NATIONAL COMMERCIAL BANK TO PLAINTIFFS' OBJECTIONS TO THE DISCOVERY ORDERS OF MAGISTRATE JUDGE MAAS DATED JANUARY 13, 2010, to be served via the Court's Electronic Case Filing System with a Courtesy Copy via Federal Express to Magistrate Judge Maas.


  /s/Mitchell R. Berger
Mitchell R. Berger