**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**IN RE:  TERRORIST ATTACKS ON**                    **Civil Action No.**
**SEPTEMBER 11, 2001**                                      **03 MDL 1570 (GBD)**
_____

*This document relates to:  All Actions*


**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF**
**THEIR OBJECTIONS TO THE JANUARY 13, 2010 MEMORANDUM**
**DECISION AND ORDER OF MAGISTRATE JUDGE FRANK MAAS**


March 2, 2010

## TABLE OF CONTENTS

I.  SUMMARY .................................................................................................................... 1

    A.  NCB Misstates the Nature of Plaintiffs' Burden In Relation to the Present Discovery Dispute ..................................................................................................... 1

    B.  NCB Deeply Misreads the Second Circuit's Holding in *Frontera* ............................... 4

    C.  The Magistrate Judge Considered and Properly Rejected NCB's Factual Arguments Concerning the NCB-Muwafaq Dispute and Those Factual Arguments Are Not Properly Before the Court ....................................................................................... 7

    D.  Plaintiffs Have Made a Threshold Showing that NCB Carried Out Ongoing Aviation Activities in the United States and are Entitled to Discovery ...................... 14

II. CONCLUSION .............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.I. Trade Fin., Inc. v. Petra Bank,*
    989 F.2d 76 (2d Cir. 1993)........................................................................9, 17

*Allojet PLC v. Vantage Assocs.,*
    *2005 U.S. Dist. LEXIS 4006 (S.D.N.Y. March 15, 2005)* ........................*3*

*Ayyash v. Bank Al-Madina,*
    2006 U.S. Dist. LEXIS 9677 (S.D.N.Y. 2006)........................................2

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks),*
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................................................17

*Filus v. Lot Polish Airlines,*
    907 F.2d 1328 (2d Cir. 1990)..........................................................14, 15

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
    582 F.3d 393 (2d Cir. 2009)............................................................ 4-7

*Hollins v. United States Tennis Ass'n.,*
    469 F. Supp. 2d 67 (E.D. N.Y. 2006) ....................................................2

*In re Magnetic Audiotape Antitrust Litig.,*
    334 F.3d 204 (2d Cir. 2003)....................................................................2

*Jazini v. Nissan Motor Co.,*
    148 F.3d 181 (2d Cir. 1998)....................................................................2

*Manhattan Life Insurance Company v. A.J. Stratton Syndicate,*
    731 F. Supp. 587 (S.D.N.Y. 1990) ..............................................2, 3, 16

*Newbro v. Freed,*
    2004 U.S. Dist. LEXIS 5358 (S.D.N.Y. March 31, 2004) ................3, 16

*PST Servs., Inc. v. Larson,*
    221 F.R.D. 33 (N.D.N.Y. 2004)..............................................................3

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,*
    31 Fed. Appx. 738, 739 (2d Cir. 2002)..................................................2

*TMR Energy, Ltd. v. State Prop. Fund of Uks.,*
    411 F.3d 296 (D.C. Cir. 2005)........................................................ 4-5

*Uebler v. Boss Media,*
    363 F. Supp. 2d 499 (E.D.N.Y. 2005) ......................................................................2

*Winston & Strawn v. Dong Won Secs. Co. Ltd.,*
    2002 U.S. Dist. LEXIS 20952 (S.D.N.Y. Nov. 1, 2002) ...........................................3

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
THEIR OBJECTIONS TO THE JANUARY 13, 2010 MEMORANDUM
DECISION AND ORDER OF MAGISTRATE JUDGE FRANK MAAS**

## I.    SUMMARY

Defendant National Commercial Bank (NCB) spends most of its response to plaintiffs'
Objections to the January 13, 2010 Memorandum Decision and Order of Judge Maas[1] (Plaintiffs'
Objections) misrepresenting the standards applicable to the present discovery dispute, arguing
issues that are beyond the scope of Plaintiffs' Objections and not properly before the Court, and
mischaracterizing plaintiffs' theories and the significance of the evidence plaintiffs seek.   At the
same time, NCB blatantly ignores its own burden to establish its standing to raise a Due Process
defense in the first instance, something the prior Orders of this Court make clear it cannot do
absent further discovery.   Accordingly, and for these reasons set forth in greater detail below,
NCB's Response fails to raise any credible challenge to Plaintiffs' well-founded Objections.

### A.    NCB Misstates the Nature of Plaintiffs' Burden In Relation
    to the Present Discovery Dispute

Under the mistaken theory that "'considerable jurisdictional discovery' has occurred in
the 'more than five (5) years since NCB filed its first Motion to Dismiss,'" NCB advances the
novel argument that this Court should apply the burdens applicable in a *post-discovery*
jurisdictional evidentiary hearing, in deciding whether plaintiffs are entitled to obtain discovery
in the first place.  Of course, the Court is not presently conducting a hearing to determine the
availability of jurisdiction at the conclusion of all appropriate discovery, but rather evaluating
whether the Magistrate Judge improperly denied plaintiffs discovery that should previously have
been afforded in support of their jurisdictional theories.  Given the actual procedural status of the
case, it is hardly surprising that the articulation of the burden NCB has proffered directly

---

[1] The January 13, 2010 Decision and Order is Docket Entry #2218.  Plaintiffs' Objections are Docket Entry #2220.

contradicts the standard announced by the Magistrate Judge, who found in his Decision and

Order that plaintiffs' burden in establishing their entitlement to discovery at this stage in the

proceedings requires merely that plaintiffs make a "prima facie showing of jurisdiction."[2]

Discovery Order at p. 25.

Although plaintiffs have made a prima facie showing of jurisdiction in relation to each of

the theories at issue here, it should be noted that the prima facie standard announced in the

Magistrate Judge's Decision and Order is itself an inaccurate statement of plaintiffs' burden in

this context.  In support of that standard, the Magistrate Judge cited to the Second Circuit's

ruling in *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998), presumably under the

notion that *Jazini* established a baseline prima facie standard for obtaining jurisdictional

discovery.  However, as numerous district courts and the Second Circuit itself have observed,

*Jazini* did nothing of the sort.  As another court in this district correctly explained:

> Jazini did not purport to lay down a categorical rule, a fact that has
> since been recognized by a Second Circuit panel.  *See Texas Int'l
> Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. Appx. 738,
> 739 (2d Cir. 2002) (unpublished); *see also In re Magnetic
> Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003).

*Ayyash v. Bank Al-Madina*, 2006 U.S. Dist. LEXIS 9677 at *18, fn. 7 (S.D. N.Y. 2006).

For this reason, the courts of this district have consistently held that a plaintiff need only

make a non-frivolous threshold showing of jurisdiction in order to obtain discovery.  *Hollins v.

United States Tennis Ass'n.*, 469 F. Supp. 2d 67, 70 (E.D. N.Y. 2006) (jurisdictional discovery

should be granted where plaintiff made less than a prima facie showing but "made a sufficient

start toward establishing personal jurisdiction"); *Uebler v. Boss Media*, 363 F. Supp. 2d 499,

---

[2] Central to plaintiffs' objections is their contention that the Magistrate Judge failed even to faithfully apply the standard he announced in the Decision (itself incorrect) in resolving the discovery disputes at issue.  It is this departure from governing law, as well as other points of error, that render the Magistrate Judge's Decision and Order "contrary to law."

506-07 (E.D.N.Y. 2005) (same); *Manhattan Life Insurance Company v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (plaintiff need not make a prima facie showing for jurisdictional discovery, but must make "a sufficient start toward establishing jurisdiction, and have shown that their position is not frivolous."); *Allojet PLC v. Vantage Assocs.*, 2005 U.S. Dist. LEXIS 4006, No. 04 Civ. 5223, 2005 WL 612848, at *7 (S.D.N.Y. March 15, 2005); *Newbro v. Freed*, 2004 U.S. Dist. LEXIS 5358, No. 03 Civ. 10308, 2004 WL 691392, at *3 (S.D.N.Y. March 31, 2004); *PST Servs., Inc. v. Larson*, 221 F.R.D. 33, 37 (N.D.N.Y. 2004). Discovery is particularly appropriate and necessary where the facts needed to establish jurisdiction lie exclusively in the possession of the defendant, as is the case here. *Winston & Strawn v. Dong Won Secs. Co. Ltd.*, 2002 U.S. Dist. LEXIS 20952, 02 Civ. 0183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (denying motion to dismiss and permitting discovery "where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge").

Consistent with the foregoing authorities, the standard this Court should apply in resolving plaintiffs' Objections is whether *plaintiffs have made a threshold showing of jurisdiction sufficient to demonstrate that their jurisdictional position is not frivolous.* If plaintiffs have done so, they should be afforded the discovery they seek.

In the end, NCB's desperate attempt to seek refuge in a blatantly incorrect standard, and evasion of the clear authorities cited above, reveals the weakness of its arguments.[3] In simple terms, when the allegations and extrinsic evidence plaintiffs offered in support of their requests for the discovery at issue are accepted as true, as they must be in this setting, there can be no credible dispute that plaintiffs have met (and exceeded) their threshold burden. By virtue of that

---

[3] NCB's deliberate evasion of the standard plainly announced in the Magistrate Judge's Order is rather ironic, given NCB's description of the Magistrate Judge's Decision and Order as "meticulously-detailed."

showing, plaintiffs are *entitled* to the discovery they seek under the Federal Rules of Civil Procedure.[4]

### B.     NCB Deeply Misreads the Second Circuit's Holding in *Frontera*

NCB's proffered interpretation of the Second Circuit's recent Due Process ruling in *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009) is an exercise in dissemblance.  In apparent recognition of the blow *Frontera* strikes to its personal jurisdiction defense, NCB contends that *Frontera* did not call into question the availability of Due Process protections to agencies of foreign governments, disingenuously (and incorrectly) arguing that "after *Frontera*, a foreign-state instrumentality like NCB that is distinct and independent from the sovereign state still must be given Due Process protections against personal jurisdiction."  NCB Response at p. 17.

Contrary to NCB's representation, the Second Circuit in *Frontera* directly called into question the availability of Due Process protections to agencies and instrumentalities of foreign governments, calling the question "far from obvious."  *Frontera*, 582 F.3d at 401.  The Second Circuit went on to note that the D.C. Circuit has held that "aliens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country."  *Id.* (*quoting TMR Energy, Ltd. v. State Prop. Fund of*

---

[4] In addition to misrepresenting the governing standard, NCB grossly exaggerates the amount of jurisdictional discovery that has been conducted to date.  In connection with this effort, NCB focuses largely on the duration of the proceedings concerning NCB, arguing that it has been "more than five (5) years since NCB filed is first Motion to Dismiss."  However, the vast majority of the time that has passed since the Court authorized jurisdictional discovery as to NCB has been spent awaiting decisions on discovery disputes necessitated by NCB's practice of objecting to virtually every discovery request served by plaintiffs.  The discovery disputes addressed in the Magistrate Judge's Decision and Order compellingly illustrate this point.  Plaintiffs served the discovery at issue not later than 2007, and initially moved to compel the discovery at issue via letters submitted to the Court in April of 2008, nearly two full years before the Magistrate Judge issued his Decision and Order.  During that time period, plaintiffs were paralyzed from obtaining any discovery from NCB, and the discovery process was essentially stayed.  Moreover, even during "active" discovery periods, considerable time was lost due to extensions requested by NCB.  For these reasons, the amount of time that has passed since jurisdictional discovery as to NCB commenced is an inaccurate benchmark for the actual scope of discovery proceedings and irrelevant.

*Uks.,* 411 F.3d 296, 301 (D.C. Cir. 2005).[5]  In light of that authority, as well as its own finding

that foreign states are not persons within the meaning of the Due Process Clause, the *Frontera*

Court expressed doubt as to the entitlement of a foreign government agency to raise a personal

jurisdiction defense based on the Due Process Clause.  *Frontera,* 582 F.3d at 401.  Thus, NCB's

suggestion that *Frontera* somehow confirms the entitlement of foreign government agencies to

Due Process is dead wrong.

Perhaps more significantly, NCB's arguments concerning *Frontera* disregard the fact that

plaintiffs have specifically alleged that NCB is a controlled agent of the government of Saudi

Arabia.  Plaintiffs offered extrinsic evidence in support of this allegation, and it was on the basis

of this showing that plaintiffs sought further discovery concerning the character of that

relationship.  *See* Discovery Opinion at p. 28.  In the event NCB is an agent of the Saudi

government, as plaintiffs have asserted on the basis of particularized facts and evidence,

*Frontera* makes clear that NCB cannot claim Due Process protections.  *Frontera,* 582 F3d at

401.  Because the determination as to whether NCB is an agent or agency of Saudi Arabia, or an

entity lacking sufficient ties to the government to meet either test, cannot be resolved on the

present record, discovery on that issue is an absolute pre-condition to consideration of NCB's

proffered Due Process defense.  *Id.*

In an effort to evade this result, NCB seeks to circumvent its own burden in establishing

its entitlement to claim a jurisdictional defense, falsely arguing that "if plaintiffs now wish to

adjudicate NCB's 'relationship to the government of Saudi Arabia,' then the mechanism for

---

[5] Relying on this line of cases, the United States has recently argued as a categorical matter that aliens who have not established a presence in the United States, whether governmental agencies or private parties, are not entitled to Due Process protections.  On this point, plaintiffs respectfully refer the Court to the brief of the United States attached as Exhibit A to the supporting Affirmation of Sean P. Carter, at pp. 26-29.  Consistent with the position of the United States, plaintiffs maintain that neither NCB nor any of the other alien defendants in this litigation may validly claim Due Process protections.  *See* Plaintiffs' Notice of Supplemental Authority in Relation to All Motions to Dismiss for Failure to State a Claim and/or Lack of Personal Jurisdiction, Docket Entry #2156, at p. 11, fn. 3.

doing so is NCB's claim to FSIA immunity."[6]  NCB Response at p. 4.  The defect in this argument is patently obvious:  NCB bears the burden of first establishing its entitlement to raise a jurisdictional defense, whether based on its alleged sovereign immunity or personal jurisdiction.  In order to validly claim the protections of the FSIA, NCB must first carry its burden to establish that it is an agent or agency of the government of the Saudi Arabia, a showing this Court already has concluded that NCB is unable to make absent discovery.  On the other hand, by virtue of the Second Circuit's decision in *Frontera*, if NCB seeks the protections of the Due Process clause, it must first demonstrate that it is neither an agency nor agent of the government of Saudi Arabia.  *Frontera,* 582 F.3d at 401.  In evaluating NCB's proffered jurisdictional defenses, the Court may not presume NCB's entitlement to either of those defenses.  Quite to the contrary, a full factual record must be established to demonstrate the availability of those defenses, and it is only at that point (and after all appropriate discovery) that the Court may issue a ruling on the asserted jurisdictional defense.  *Frontera,* 582 F.3d at 401.

NCB's novel theory that plaintiffs have waived their right to seek discovery of NCB's relationship to the government of Saudi Arabia, despite the fact that plaintiffs specifically requested such discovery, is particularly absurd given the procedural status of these cases.  Once again, plaintiffs explicitly requested discovery concerning the relationship between NCB and the government of Saudi Arabia, relative to the question of personal jurisdiction.  Discovery Order at p. 28.  In ruling on that motion, the Magistrate Judge cited to *Frontera* in his Decision and Order, making clear that the Second Circuit's ruling was before the Court at the time of that ruling. Discovery Order at p. 20.

---

[6] In making this disingenuous argument, NCB fails to acknowledge that it abandoned its sovereign immunity defense for the time being, in order to avoid discovery that was ordered in response to plaintiffs' direct challenge to that defense.

More to the point, the question of NCB's entitlement to Due Process protections is an issue this Court will be required to resolve in order to rule on NCB's Renewed Motion to Dismiss, and *Frontera* will control this Court's disposition of that issue.  As *Frontera* makes clear, the district court cannot resolve that issue without first ascertaining the character of NCB's relationship to the government of Saudi Arabia.  Thus, endorsing NCB's "waiver" argument would require this Court to ignore intervening and controlling Second Circuit precedent.

For all of the foregoing reasons, plaintiffs are entitled to presently conduct discovery concerning the character of NCB's relationship to the government of Saudi Arabia, prior to responding to NCB's Renewed Motion to Dismiss.

### C.   The Magistrate Judge Considered and Properly Rejected NCB's Factual Arguments Concerning the NCB-Muwafaq Dispute and Those Factual Arguments Are Not Properly Before the Court

Plaintiffs' Objection to the Magistrate Judge's ruling concerning the NCB-Muwafaq jurisdictional dispute relates solely to the Magistrate Judge's decision to defer the final determination concerning plaintiffs' entitlement to the requested discovery until some uncertain date in the future, based on his uncertainty concerning the governing legal standard.  Plaintiffs contend that this ruling will irreparably prejudice their rights and directly undermines the goals of MDL consolidation.  Plaintiffs further contend that the Magistrate Judge's directive to NCB to collect information and evidence responsive to their NCB-Muwafaq discovery requests will not serve to protect plaintiffs' interests, as it in no way operates to preserve the testimony of knowledgeable witnesses (some of whom already have died) and deprives plaintiffs of their right in the adversarial system to employ the discovery tools available under the Federal Rules to ensure the sufficiency of NCB's search and collection for responsive documentation.  In view of these very real and significant concerns, plaintiffs assert that this Court should *presently* rule

concerning plaintiffs' entitlement to the discovery they seek concerning their NCB-Muwafaq jurisdictional theories.

Although plaintiffs' Objection concerning the Magistrate Judge's ruling on the NCB-Muwafaq discovery dispute relates solely to the decision to defer a final ruling concerning that dispute until a later date, and the irreparable prejudice that will result from such an approach, NCB's response does not address those issues at all. Instead, NCB devotes its entire response to restating "factual" arguments that were considered by the Magistrate Judge and rejected after careful consideration of extensive written submissions and argument. NCB Response at pp. 8 – 10. Because NCB failed to object to the Magistrate Judge's ruling concerning the NCB-Muwafaq discovery dispute, NCB is foreclosed from revisiting its tired and irrelevant factual arguments once again.

In his Decision and Order, the Magistrate Judge did not at any point call into question the adequacy of plaintiffs' factual presentation in relation to the NCB-Muwafaq theories. This is hardly surprising, given the overwhelmingly detailed factual and evidentiary submissions plaintiffs offered in support of those theories.[7] Rather, the Magistrate Judge expressed uncertainty as to whether the character of the relationship plaintiffs allege, and relative to which they provided extensive factual support, would satisfy the Due Process standard announced in the Second Circuit's decision in *Terrorist Attacks III*. Discovery Order at pp. 32 – 22. In this regard, the Magistrate Judge acknowledged that the Second Circuit's Due Process ruling was subject to varying interpretations, and that it remained unclear which interpretation of that ruling would be embraced by this Court. *Id.* Based solely on this uncertainty concerning the proper interpretation of the governing *legal* standard, the Magistrate Judge deferred the final

---

[7] On this point, plaintiffs respectfully refer the Court to the underlying submissions and hearing transcripts submitted as part of plaintiffs' objections.

determination as to plaintiffs' entitlement to discovery in relation to their NCB-Muwafaq

theories, until a point in time after the Court issues a ruling clarifying its interpretation of the

Second Circuit's Due Process holding. *Id.*  However, *recognizing that plaintiffs had met their*

*prima facie factual burden in relation to that theory*, the Magistrate Judge directed NCB to

collect and preserve all documentation and evidence responsive to plaintiffs' outstanding

discovery requests concerning that theory.  *Id.* at p. 33.

  Plaintiffs' Objection to the Magistrate Judge's ruling concerning the NCB-Muwafaq

discovery seeks review only of the aspect of the decision deferring a final determination as to the

governing legal standard of jurisdiction, and plaintiffs' entitlement to the requested discovery

under that standard, to some uncertain date in the future.  For its part, NCB did not file an

Objection asking this Court to review the Magistrate Judge's holding that plaintiffs had met their

prima facie factual burden relative to the NCB-Muwafaq theories.  Accordingly, NCB is

foreclosed from revisiting its factual arguments in this context.

  Although the factual disputes concerning plaintiffs' NCB-Muwafaq are not before the

Court in relation to plaintiffs' Objections, it should be noted that the arguments presented in the

bullet points on pages 8 – 9 of NCB's response are wholly irrelevant to the present discovery

dispute, and fail to speak meaningfully to the factual and legal underpinnings of plaintiffs' NCB-

Muwafaq jurisdictional theories (as the Magistrate Judge properly found in the underlying

proceedings).  To begin with, in establishing their entitlement to the discovery in question,

plaintiffs' submissions must be "construed in the light most favorable to the plaintiff and doubts

are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving

party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d Cir. 1993).  For this simple

reason, NCB's factual arguments and "controverting evidence" are irrelevant.

Furthermore, even if it were appropriate to consider NCB's factual arguments in the context of a jurisdictional discovery dispute - which it absolutely is not - NCB's factual arguments are baseless, misleading, and fail to address in any meaningful sense plaintiffs' theories of jurisdiction.  For example, NCB again references the failure of the United States government to formally designate NCB or Khalid bin Mahfouz as terrorist sponsors pursuant to Executive Order 13224, suggesting that their non-designation should be treated as proof of their innocence.  NCB Response at p. 9.  Nothing can be further from the truth.  Indeed, the Magistrate Judge properly and explicitly rejected NCB's non-designation theory on the record during the May 19, 2009 argument.  Because NCB and other defendants have clung obsessively to this false argument throughout these proceedings, inclusion of the full exchange between counsel and the Court on this point is warranted:

> Mr. Carter:      Thank you, your Honor.  There are a number of points I want to address, but I would like to begin with a point that has been raised repeatedly that deserves particular attention and that is the repeated arguments based on the non-designation by OFAC of NCB Khalid Bin Mahfouz and Muwafaq.  This argument that defendants have raised in this litigation that because they have not been formerly designated by the U.S. Government is tantamount to a declaration of their innocence of all these charges is probably the biggest red herring in this entire litigation.
>
> The fact of the matter is that designation by OFAC is in the Treasury Department's own words but one tool in the arsenal available to the U.S. Government in order to address terrorist-sponsorship activity abroad.  Even where there is extensive evidence to support a designation, it is often not the option chosen or deferred for many, many years for a variety of reasons.
>
> It may be deferred, frankly, Your Honor, because the CIA has expressed concerns that the designation of the party would drive that party back underground and thereby impair the CIA's ability to continue an investigation and use that party as a resource for learning more about the sources of al Qaeda's financing.  It may be deferred because of negotiation between the U.S. Government and a foreign sovereign pursuant to which the foreign sovereign take actions in order to sanction the party.

> The Court:  *Whatever the reasons, I am not sure it can be used on whatever evidentiary record will exist before Judge Daniels to prove the negative.*

Transcript of May 19, 2009 Hearing at pp. 57-58 (emphasis supplied).

Equally misleading is NCB's suggestion that "our government has never linked [al Kadi's] or Muwafaq's activities … to any terrorist activity aimed at the United States."  NCB Response at p. 8.  In point of fact, the U.S. government has repeatedly asserted that al Kadi played an instrumental role in building al Qaeda's financial support infrastructure, and channeled massive financial support to al Qaeda via that infrastructure in the years preceding the September 11th Attacks.  The United States government highlighted al Kadi's (and Muwafaq's) intimate ties to al Qaeda in a recent brief submitted to the United States District Court for the District of Columbia in support of al Kadi's continued designation, a copy of which is included as Exhibit A to the Affirmation of Sean P. Carter.  The government argued that "the wide breadth and depth of information describing Kadi's integral role in a vast network of terrorism and extremism provides more than sufficient information to uphold" his designation.  U.S. Brief at p. 2.  The government explained that Kadi used his leadership position in the Muwafaq Foundation to support a wide range of terrorist causes, noting that under al Kadi's leadership Muwafaq served as "an al Qaeda front that receives funding from wealthy Saudi businessmen."[8]  *Id.* at p. 8. Given al Qaeda's stated ambition to carry out terrorist attacks against the United States, and actual involvement in numerous terrorist attacks against the United States during al Kadi's

---

[8] This language mirrors the description counter-terrorism chief Vincent Cannistraro provided of NCB's role in sponsoring al Qaeda in testimony before Congress, when he affirmatively stated that "There is little doubt that a financial conduit to bin Laden was handled through the National Commercial Bank, until the Saudi government finally arrested a number of persons and closed down the channel.  It was evident that several wealthy Saudis were funneling contributions to bin Laden through this mechanism."  *Al Qaeda and the Global Reach of Terrorism,*  Hearing before the Committee on International Relations, House of Representatives, October 3, 2001, prepared statement of Vincent Cannistraro, former Chief of Counter-Terrorism Operations, Central Intelligence Agency, available at http://www.au.af.mil/au/awc/awcgate/congress/75562.pdf, at p. 20.  These related statements bolster plaintiffs' contention that NCB was used as a conduit for channeling donations from wealthy Saudi businessmen to al Qaeda, in part through the Muwafaq Foundation. These statements help explain the true nature of plaintiffs' NCB-Muwafaq theories, which NCB seeks to evade in the arguments presented in its brief.

sponsorship of the organization, it is absurd to suggest that the United States has not linked him to any terrorist activity directed at the United States.

NCB pushes the credibility envelope yet further in arguing that "Muwafaq has never been designated by the U.S. government as a terrorist organization."  NCB Response at p. 8.  In advancing this argument, NCB conveniently fails to mention:  (1) that the United States has repeatedly asserted that Muwafaq was a front for al Qaeda; (2) that Osama bin Laden publicly identified Muwafaq as part of "his organization" in an interview; and (3) that the United States has stated that Muwafaq formally merged into al Qaeda several months before the September 11th Attacks.  *See* U.S. Brief at pp. 1-2, 16-19.  Because Muwafaq had formally merged into al Qaeda before the Executive Order 13224 designation program was established, and no longer existed at the time of that program's creation, it simply would have been pointless to designate Muwafaq.  However, the United State's view that Muwafaq was a critical component of al Qaeda's infrastructure is absolutely clear, and NCB's deliberate attempt to mislead this Court to think otherwise is irresponsible.[9]

Similarly disingenuous is NCB's argument that Yassin al Kadi was never an employee of NCB.  Once again, this very issue was addressed in detail during the underlying proceedings before the Magistrate Judge.  In relation to this issue, plaintiffs offered evidence, including al Kadi's statements to U.S. authorities, indicating that he "worked for" NCB.  Based on this and other record evidence, plaintiffs asserted that al Kadi was *either an agent or employee* of NCB, to whom NCB delegated considerable actual authority in relation to his role in establishing NCB's Islamic Banking Division.  *See* May 19, 2009 Hearing Transcript at pp. 32-33.  Thus, the

---

[9] NCB also argues that this Court should attach significance to its claim that "Muwafaq never maintained an account with NCB."  NCB Response at p. 2.  However, as plaintiffs pointed out during argument before the Magistrate Judge, Muwafaq operated outside of Saudi Arabia, in countries where NCB did not maintain operations, and plaintiffs have never claimed that Muwafaq maintained accounts at NCB.  This does not, however, address the question of whether NCB knowingly supported Muwafaq, by transferring funds to Muwafaq on behalf of al Qaeda sympathizers or otherwise, as plaintiffs contend.

possibility that al Kadi was not technically an "employee" of NCB, itself a disputed factual point which cannot be resolved on the present record, has no impact on plaintiffs' jurisdictional theories.

Moreover, contrary to the representation in NCB's brief, plaintiffs' theories of specific jurisdiction concerning NCB's ties to Muwafaq and al Qaeda are not predicated solely on the contention that "NCB contributed its own funds to the Muwafaq Foundation," but rather on the broader theory that NCB as an institution supported the establishment, development and funding of Muwafaq through a variety of mechanisms. As but one example, plaintiffs maintain that NCB served as the mechanism through which wealthy Saudis sympathetic to al Qaeda's views, including bin Mahfouz and al Kadi themselves, transferred funds to al Qaeda and Muwafaq. *See* Footnote 5, supra. For this reason, plaintiffs' discovery requests concerning these theories, which the Magistrate Judge acknowledged would be relevant under certain interpretations of the Second Circuit's Due Process ruling, do not focus merely on NCB's contribution of its own funds to Muwafaq. *See* Discovery Requests 1 – 10. Accordingly, and because factual disputes must be resolved in favor of plaintiffs, the affidavit NCB has offered in its response, which was never presented in the lengthy contested proceedings before the Magistrate Judge where it could have been challenged on the basis of a full record, simply fails to negate plaintiffs' jurisdictional theories.

For all of the foregoing reasons, the only issue that is before the Court at this time in relation to the Magistrate Judge's NCB-Muwafaq ruling is plaintiffs' challenge to the propriety of deferring a final ruling on the *legal* sufficiency of plaintiffs' factually supported theories until an indefinite date in the future. Plaintiffs' Objections to that approach are well founded, given the irreparable prejudice which would result.

> **D.** **Plaintiffs Have Made a Threshold Showing that NCB Carried Out Ongoing Aviation Activities in the United States and are Entitled to Discovery**

In reviewing the Magistrate Judge's determination to deny plaintiffs' request for discovery about NCB's aviation activities – requests that date back to February 18, 2005 and were made more specific on Oct 12, 2007, long before NCB's re-drafted motion to dismiss – the issue is: *whether the Magistrate Judge abused discretion by denying jurisdictional discovery that bears on, or that reasonably could lead to other material that could bear on, any theory of jurisdiction plaintiffs have alleged*. Because the long-sought-after discovery about NCB's aviation activities bears on or reasonably could lead to other material that could bear on plaintiffs' well-supported allegations that NCB, through its aviation division, engaged in continuous and systematic activities in the United States sufficient to meet the minimum contact standard, the order denying any discovery about that theory was an abuse of discretion and should be reversed, allowing such discovery. *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990).

The core of plaintiffs' general jurisdiction allegations regarding NCB aviation activities – more than what NCB has summarily characterized – is that NCB, through its aviation division and until at least 2002, engaged in continuous and systematic activities in the United States sufficient to meet the minimum contacts standard. As set out in detail in plaintiffs' Objection, plaintiffs' allegations and the proofs submitted for the Court's consideration clearly identified jurisdictional facts that, although NCB may dispute them, show an identity among NCB, Skyways International, and Mid-East Jet, and that through these various entities NCB flew into and out of the United States on more than 130 occasions between 2000 and 2002, often landing, departing, and conducting business at airports throughout the United States; and that NCB submitted to U.S. aviation authorities, including relying upon U.S. licensure for its flights and air

crews.  (Docket Entry #2220, at pages 21-28, and the exhibits attached to the incorporated August 15, 2008 Haefele Affidavit, Docket Entry #2122).

Although NCB may deny plaintiffs' allegations and make rote and condescending references to the substantial evidence plaintiffs submitted in support of their allegations of NCB's contacts with the forum (calling plaintiffs' allegations unsupported and the supporting evidence utterly lacking in probative value), the fact remains that plaintiffs made the allegations and offered substantial supporting proofs.  NCB's denials do not wipe away plaintiffs' proofs; they merely demonstrate that plaintiffs' allegations remain contested.  Where jurisdictional facts are in dispute, discovery is all that much more necessary, and refusal to grant discovery concerning the issue in dispute amounts to an abuse of discretion.  *Filus*, 907 F.2d at 1332.

Despite plaintiffs' allegations about NCB's general jurisdiction contacts with the United States and the substantial corroborating documentary evidence – all essentially unaddressed either by the Magistrate Judge or NCB – NCB's sole answer in its response is essentially to apply Chico Marxist ideology, asking "who you gonna believe, me or your own eyes?"  NCB argues the Court must consider NCB's own self-serving, untested affidavits, ignore all of plaintiffs' allegations and proofs, and reject any further discovery into the disputed issues.  But NCB's cavalier, condescending, and dismissive approach toward plaintiffs' allegations and proofs does nothing to remove those proofs from the Court's consideration and does little to explain why proofs that show NCB Aviation, a division of NCB, was conducting aviation business in and throughout the United States through at least 2002 should be considered "utter[ly] lack[ing in] probative value." (NCB's Br. at 6.)  Likewise, regardless of NCB's self-serving, untested declarations, the fact remains that the plaintiffs' allegations and their proofs cannot be ignored.  To the extent that NCB's self-serving, untested submissions are considered at all, they merely demonstrate that plaintiffs' allegations are disputed.  They do not resolve the

15

dispute.  And again, to the extent that a dispute exists as to facts relevant to jurisdictional issues, discovery is essential and must be permitted – to deny it is an abuse of discretion.

Every argument that NCB makes in opposition to allowing discovery about its aviation activities wrongly assumes that NCB's denials somehow result in converting plaintiffs' well-supported allegations and proofs into unsupported allegations.  (NCB Br. at 6.)  This assumptions is wrong.  Although NCB's legal arguments steadily cite only cases that rely on plaintiffs' allegations being wholly unsupported, plaintiffs here have offered substantial support for each of their jurisdictional allegations.

Once again, the proper standard to be applied in determining whether the discovery ought to have been permitted – and thus, whether the Magistrate Judge committed error in denying the discovery – is not whether the plaintiffs have made a prima facie showing (as applied by the Court, Discovery Order at 27) or the post-discovery standard proffered by NCB (NCB Response at p. 6), but *whether plaintiffs made a threshold showing of jurisdiction sufficient to demonstrate that their jurisdictional position is not frivolous*.  *Newbro v. Freed*, Dkt. No. 03 Civ 10308 (PKC), 2004 U.S. Dist. LEXIS 5358 (S.D.N.Y., March 31, 2004); *see Manhattan Life Ins*, 731 F. Supp. at 593 (Plaintiff need not make a prima facie showing for jurisdictional discovery, but must make "a sufficient start toward establishing jurisdiction, and have shown that their position is not frivolous."). [10]

But whether the proper "threshold showing" standard or the incorrect "prima facie" standard is applied, plaintiffs' allegations and supporting proofs meet either standard and the

---

[10] Notwithstanding that plaintiffs' discovery requests all long pre-date NCB's new motion to dismiss and that plaintiffs have been pressing for discovery since it was served, NCB consistently seeks to apply a heightened standard for plaintiffs to meet in order to be permitted to obtain discovery.  Although there is no legal premise to apply a different standard at this stage of the proceedings, the proper standard to apply is necessarily the one that ought to have been applied at the time plaintiffs requests were made.  Discovery requests that ought to have prompted NCB to produce information regarding its aviation activities in the United States were served on February 18, 2005 and made more specific on Oct 12, 2007.

jurisdictionally relevant discovery should have been permitted.  First, the Court already ruled as much when it specifically permitted plaintiffs to conduct jurisdictional discovery regarding NCB's contacts with the United States.  *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks),* 349 F. Supp. 2d 765, 820 (S.D.N.Y. 2005) (Denying NCB's motion to dismiss and finding that, properly examined as a whole, NCB's contacts with the United States may comport with due process once jurisdictional discovery on the issue has been permitted).  Second, rather than accepting NCB's evidence to the exclusion of plaintiffs' allegations and proofs, the Court must assume the truth of plaintiffs' allegations and resolve all open questions of fact in plaintiffs' favor.  *A.I. Trade*, 989 F.2d at 79-80.  At this stage of the proceedings, the Court may not accept NCB's mere contrarian statements at the expense of all of plaintiffs' proofs.  And because all of plaintiffs' allegations and proofs about NCB's aviation activities must be – at this stage – resolved in plaintiffs' favor, plaintiffs have made a prima facie showing that NCB was conducting aviation activities in the United States sufficient to meet the minimum contacts standard.

## II.    CONCLUSION

For the reasons stated above, and in Plaintiffs' Objections, this Court should order that Plaintiffs' requested discovery shall proceed forthwith.

Dated: March 2, 2010                    Respectfully Submitted,

/s/_____
Ronald L. Motley
Jodi Westbrook Flowers
Michael Elsner
Robert T. Haefele
rhaefele@motleyrice.com
Vincent I. Parrett
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Tel:  (843) 216-9000

Stephen A. Cozen
Sean P. Carter
scarter@cozen.com
Adam C. Bonin
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel:  (215) 665-2000
Fax:   (215) 665-2013

James P. Kreindler
jkreindler@kreindler.com
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, New York 10017-5590
Tel: (212) 687-8181

Paul J. Hanly, Jr.
Jayne Conroy
Andrea Bierstein
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN SHERIDAN FISHER
 & HAYES, LLP
112 Madison Avenue
New York, NY 10016
Tel:  (212) 784-6400
Fax:  (212) 213-5949

Jerry S. Goldman
jgoldman@andersonkill.com
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas, 42nd Floor
New York, N.Y. 10020-1182
Telephone:  (212) 278-1498
Fax:  (212) 278-1733

For the Plaintiffs' Executive Committees