UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (GBD)(FM)<br>ECF Case |

This document relates to:
    *All Actions*

**SURREPLY OF THE NATIONAL COMMERCIAL BANK IN RESPONSE TO PLAINTIFFS' UNAUTHORIZED REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS TO THE MEMORANDUM DECISION AND ORDER OF <u>MAGISTRATE JUDGE MAAS DATED JANUARY 13, 2010</u>**

Dated:  March 11, 2010
        Washington, D.C.

Mitchell R. Berger (MB-4112)
Alan T. Dickey
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS IGNORE, AND CANNOT SATISFY, THE REQUIREMENTS OF RULE 56(f). ..................................................................................................................1

II. MAGISTRATE JUDGE MAAS DID NOT HOLD THAT THE PLAINTIFFS HAVE MADE A PRIMA FACIE CASE OF JURISDICTION................................................3

III. PLAINTIFFS MISSTATE THE HEIGHTENED REQUIREMENTS FOR ADDITIONAL JURISDICTIONAL DISCOVERY. ...................................................4

IV. PLAINTIFFS MISREPRESENT *FRONTERA* IN AN EFFORT TO EVADE THEIR BURDEN OF PROOF ON THE DUE PROCESS ISSUE.........................................6

CONCLUSION................................................................................................................................8

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alexander v. Evans*,
   1993 WL 427409 (S.D.N.Y. Oct. 15,1993)...............................................................................1

*Allojet, Inc. v. Vantage Assocs.*,
   2005 WL 612848 (S.D.N.Y. Mar. 15, 2005) ............................................................................4

*Anchor v. Novartis Grimsby Ltd.*,
   2006 WL 3419846 (W.D.N.Y. Nov. 27, 2006), *aff'd*, 282 Fed. Appx. 872 (2d Cir. 2008) .........1

*Arriba Ltd. v. Petroleos Mexicanos*,
   962 F.2d 528 (5th Cir. 1992).....................................................................................................7

*Ayyash v. Bank al-Madina*,
   2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ..............................................................................4

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) .....................................................................................................5

*Ehrenfeld v. Bin Mahfouz*,
   2006 WL 1096816 (S.D.N.Y. Apr. 26, 2006), *aff'd*, 518 F.3d 102 (2d Cir. 2008).......................5

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
   582 F.3d 393 (2d Cir. 2009) ..........................................................................................5, 6, 7, 8

*Gregorian v. Izvestia*,
   871 F.2d 1515 (9th Cir. 1989)...................................................................................................7

*Hollins v. U.S. Tennis Ass'n*,
   469 F. Supp. 2d 67 (E.D.N.Y. 2006) ........................................................................................4

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
   342 F. Supp. 2d 207 (S.D.N.Y. 2004) ......................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
   538 F.3d 71 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 2859 (2009)...................................... 3, 5

*Ivoclar Vivadent, Inc. v. Ultident, Inc.*,
   2005 WL 1421805 (W.D.N.Y. June 15, 2005) .........................................................................1

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) .....................................................................................................5

*Maersk, Inc. v. Neewra, Inc.*,
   --- F. Supp. 2d ----, 2009 WL 5102754 (S.D.N.Y. Dec. 17, 2009) ..........................................5

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*,
    731 F. Supp. 587 (S.D.N.Y. 1990) ................................................................................... 4

*Melnick v. Adelson-Melnick*,
    346 F. Supp. 2d 499 (S.D.N.Y. 2004) ............................................................................. 1

*Nelson v. Massachusetts General Hosp.*,
    2007 WL 2781241 (S.D.N.Y. Sep. 20, 2007), *aff'd*, 299 Fed. Appx. 78 (2d Cir. 2008) .............. 5

*Newbro v. Freed*,
    2004 WL 691392 (S.D.N.Y. Mar. 31, 2004) .................................................................. 4

*Newbro v. Freed*,
    409 F. Supp. 2d 386 (S.D.N.Y. 2006) ............................................................................. 4

*PST Servs., Inc. v. Larson*,
    221 F.R.D. 33 (N.D.N.Y. 2004) ...................................................................................... 4

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................................................. 8

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*,
    411 F.3d 296 (D.C. Cir. 2005) ........................................................................................ 6

*U.S. v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ................................................................................................... 6, 7

*Uebler v. Boss Media, AB*,
    363 F. Supp. 2d 499 (E.D.N.Y.  2005) ........................................................................... 4

*Winston & Strawn v. Dong Won Sec. Co.*,
    2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002) ................................................................ 4

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247, 252 (2d Cir. 2000) ................................................................................... 7

**STATUTES**

28 U.S.C. § 1603 .......................................................................................................................... 7

Plaintiffs' Reply either studiously ignores or blithely misstates the findings made and legal conclusions reached by Magistrate Judge Maas in his January 13, 2010 discovery order ("Discovery Order"). Because plaintiffs were not entitled to a reply in support of their Rule 72 Objections,[1] NCB submits this limited surreply to correct plaintiffs' misstatements and to address new material that plaintiffs raised for the first time in their Reply.

I. **PLAINTIFFS IGNORE, AND CANNOT SATISFY, THE REQUIREMENTS OF RULE 56(f).**

Magistrate Judge Maas held that, because NCB has filed a renewed Rule 12(b)(2) motion and because plaintiffs already have had substantial jurisdictional discovery, plaintiffs must follow Rule 56(f) procedures and submit a non-speculative, fact-based affidavit showing how any further requested jurisdictional discovery would lead to specific, jurisdictionally-material facts. *See* NCB Opp. at 4; Discovery Order at 29-30 & n.8 (quoting *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499 (S.D.N.Y. 2004)). Plaintiffs' Reply fails to acknowledge this prescribed procedure. Substantively, moreover, plaintiffs could not submit the requisite Rule 56(f) affidavit because NCB's own affidavits and other factual showings negate the speculation underlying plaintiffs' core theories of general and specific jurisdiction. *See* NCB Opp. at 5-10; *see also Anchor v. Novartis Grimsby Ltd.*, 2006 WL 3419846, at *6, *9 (W.D.N.Y. Nov. 27, 2006) (denying jurisdictional discovery where "the declarations submitted by Defendants are unequivocal and deny any jurisdictionally meaningful contact with New York."), *aff'd*, 282 Fed. Appx. 872, 875 (2d Cir. 2008); *Ivoclar Vivadent, Inc. v. Ultident, Inc.*, 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005) (denying jurisdictional discovery where "plaintiff's allegations that defendant sold and marketed products in New York are refuted by defendant's affidavit…").

---

[1] *See Alexander v. Evans*, 1993 WL 427409, at *4 (S.D.N.Y. Oct. 15,1993) (denying motion for leave to file Rule 72 reply and noting that the filing of a reply in support of objections to a magistrate judge's report and recommendation "is permissive rather than mandatory" and left to a judge's discretion). Moreover, plaintiffs' 17-page Reply substantially exceeded the 10-page limit that this Court applies even to authorized reply briefs in support of dispositive motions.

The disparity between plaintiffs' mere allegations and NCB's fully-refuting affidavits appears starkly with respect to the claims concerning Yassin Kadi and the Muwafaq Foundation. Although plaintiffs made a centerpiece of their allegation that NCB contributed its own funds to the Muwafaq Foundation (*see* Discovery Order at 21), plaintiffs' Reply runs away from the significance of NCB's affidavit showing that it made no such contributions. *Compare* NCB Opp. at 2, 8-10, *with* Reply at 13. Magistrate Judge Maas certainly understood the centrality of the now-refuted allegation that NCB had "contributed its own funds" to Muwafaq when his document-preservation order focused on the discovery requests (##2-6) addressing that question. *See* Discovery Order at 34-35. Precisely because of Magistrate Judge Maas' focus on that question, NCB submitted an affidavit to confirm that there are no such documents because NCB made no such contributions. *See* Bagabir Decl. ¶¶ 3-5 (Dkt. #2226-2) (NCB has "no record or other information that NCB ever made any payment from its own funds to Muwafaq Foundation, to Yassin al Kadi, or to the National Management Consultancy Center."; Kadi never "had any authority concerning, or participation in, donations made by the Bank to charitable institutions or causes."). These sworn statements also refute plaintiffs' latest suggestion that Kadi could have been NCB's "agent" with respect to Muwafaq—just as it already is clear, as plaintiffs now seem to concede, that Kadi was not an employee of NCB. *See* Reply at 12; *see also* NCB Opp. at 8 & n.16.

Hoping to salvage some vestige of their Muwafaq theory, plaintiffs for the first time cite to a U.S. government brief filed in a lawsuit brought by Kadi. Reply at 11-12 and Exh. A. Tellingly, however, that U.S. government brief never mentions NCB, and does not make any suggestion that NCB had anything to do with Kadi's or Muwafaq's alleged terror-support activities. Moreover, the government's brief makes clear that Muwafaq's activities took place in other regions of the world and were not directed at the United States. For example, the government's brief asserted that Muwafaq was a "charitable organization that OFAC reasonably believed was also being used as a

cover for funding terrorism in Africa, Eastern Europe, the Middle East, and Central Asia." Reply Exh. A at 1-2 (emphasis added). Similarly, "OFAC's specific findings regarding the Muwafaq Foundation's ties to terrorism" involve actions in Pakistan, Bosnia, the Balkans, and Albania. *Id.* at 16-17.[2] Muwafaq's activities, as identified by the U.S. government, accordingly were not "expressly aimed" or "purposefully directed" at the United States. *See* Discovery Order at 4-5 (acknowledging that, under *Terrorist Attacks III*, jurisdiction in this litigation requires a finding that a foreign defendant "expressly aimed intentional tortious acts at residents of the United States" (internal quotations and citations omitted)). Plaintiffs accordingly have not provided a Rule 56(f)-sufficient basis for further discovery on their Muwafaq contentions.

## II. MAGISTRATE JUDGE MAAS DID NOT HOLD THAT THE PLAINTIFFS HAVE MADE A PRIMA FACIE CASE OF JURISDICTION.

Magistrate Judge Maas could not have been clearer in holding that plaintiffs had: failed to establish a "prima facie case" of general jurisdiction based on their "NCB Aviation" allegations; failed to establish a "prima facie case" of "conspiracy jurisdiction"; and had not "proved" the "allegations" underlying their remaining "purposefully directed" theory of specific jurisdiction tied to Kadi and Muwafaq. Discovery Order at 27-28, 30 n.9, 32-33; *see* NCB Opp. at 6-7, 8-11. It accordingly is a prize-worthy example of fiction for plaintiffs to contend that the Discovery Order somehow held that "plaintiffs had met their prima facie factual burden." Reply at 9. To the

---

[2] Equally unavailing is plaintiffs' recycling of stale congressional testimony by Vincent Cannistraro. Reply at 11 n.8. Although plaintiffs cited this same testimony to Magistrate Judge Maas, his Discovery Order ascribes no significance to it—and for good reason. As early as October 2004, Judge Casey refused to put any stock in Cannistraro's testimony. *See* MDL Dkt. #509, Tr. of 10/12/04 Hearing, at 78-79 ("THE COURT: Do you have any facts to back ... up [Mr. Cannistraro's claims]? MR CARTER: Your Honor, we do not have evidence which would necessarily be admissible of record in a trial at this point. ..." (emphasis added)). As a matter of law, moreover, Cannistraro's assertions are jurisdictionally immaterial because they suggest only that NCB customers used their own accounts to "channel" money to Bin Laden. *See* http://www.au.af.mil/au/awc/awcgate/congress/75562.pdf at 20. The Second Circuit held in *Terrorist Attacks III* that jurisdiction in these cases cannot be based even on a defendant's alleged direct "provision of financial services to an entity that carries out a terrorist attack on United States citizens" (*In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 2859 (2009))—let alone on alleged financial services to customers who, in turn and for their own reasons, channel money to such an entity. Magistrate Judge Maas' Discovery Order (at 20) acknowledged and adopted this holding.

3

contrary, Magistrate Judge Maas held simply that "Judge Daniels should have the opportunity to consider in the first instance whether the conduct alleged by the Plaintiffs is sufficient to bring NCB within the Court's jurisdiction."  Discovery Order at 33 (emphasis added).[3]

### III. PLAINTIFFS MISSTATE THE HEIGHTENED REQUIREMENTS FOR ADDITIONAL JURISDICTIONAL DISCOVERY.

No amount of whining (Reply at 4 n.4) can dilute Magistrate Judge Maas' holding that "the Court has afforded [plaintiffs] considerable jurisdictional discovery regarding NCB's activities and related matters."  Discovery Order at 35.  Because of that finding, plaintiffs cannot reopen jurisdictional discovery here based on holdings in other cases where little, if any, jurisdictional discovery had taken place.[4]  Instead, plaintiffs now must satisfy the "post-discovery" requirement to

---

[3] Magistrate Judge Maas' document-preservation order concerning plaintiffs' discovery requests ##2-6 did not rest on any finding of the factual sufficiency of the allegations underlying those discovery requests, but instead expressly was based on the possibility that "NCB's motion [to dismiss] will remain pending for some time after it is fully briefed because Judge Daniels has expressed an intention to deal first with defense motions challenging the Court's subject matter jurisdiction."  Discovery Order at 33.

[4] *See* Reply at 2-3, relying on the following distinguishable cases: *Ayyash v. Bank al-Madina*, 2006 WL 587342, at *4 (S.D.N.Y. Mar. 9, 2006) ("Because the parties have not conducted discovery, the question is whether Ayyash's allegations and the supporting materials, taken in the light most favorable to Ayyash, make out a prima facie showing ....") (emphasis added); *Hollins v. U.S. Tennis Ass'n.*, 469 F. Supp. 2d 67, 69, 72 (E.D.N.Y. 2006) (upholding court's initial conference order for "expedited discovery regarding personal jurisdiction" and denying defendants' motion to stay plaintiffs' jurisdictional discovery where plaintiffs sought "limited discovery to oppose [defendant's] motion to dismiss"); *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 503 (E.D.N.Y. 2005) ("Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion … by making a 'prima facie showing' of jurisdiction." (internal quotations omitted) (emphasis added)); *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (permitting plaintiffs only six weeks of jurisdictional discovery where none previously had been allowed); *Allojet, Inc. v. Vantage Assocs.*, 2005 WL 612848, at *10 (S.D.N.Y. Mar. 15, 2005) ("[W]here there has been neither discovery nor an evidentiary hearing, the Court must construe all allegations in the light most favorable to Allojet …" (emphasis added)); *Winston & Strawn v. Dong Won Sec. Co.*, 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002) (allowing "[l]imited and expedited discovery proceedings … to be completed no later than thirty (30) days from the entry of this order"); *Newbro v. Freed*, 2004 WL 691392 (S.D.N.Y. Mar. 31, 2004) (order issued 90 days after the complaint was filed granting a sixty day period of jurisdictional discovery focused on New York-based relationship admitted to by defendants in their court filings (*see Newbro v. Freed*, 409 F. Supp. 2d 386, 390 (S.D.N.Y. 2006)); *PST Servs., Inc. v. Larson*, 221 F.R.D. 33, 37 (N.D.N.Y. 2004) (granting plaintiffs a 90-day period to conduct "limited" jurisdictional discovery where only merits discovery was conducted before motion to dismiss and "[p]laintiffs have not attempted any discovery of jurisdictional contacts." (*see* 03-CV-0970, Dkt. #45 at 4)).

4

prove jurisdiction by a preponderance of the evidence,[5] and the attendant Rule 56(f) standard for further jurisdictional discovery.  *See supra* at 1-3.

Reinforcing the bar to further jurisdictional discovery is the fact that NCB is a foreign defendant.  As Judge Casey noted in other proceedings: "The Second Circuit has disallowed jurisdictional discovery where a plaintiff has failed to establish a prima facie case and where there is a foreign defendant because such logic would require all foreign defendants to submit to discovery on this issue."  *Ehrenfeld v. Bin Mahfouz*, 2006 WL 1096816, at *6 (S.D.N.Y. Apr. 26, 2006), *aff'd*, 518 F.3d 102 (2d Cir. 2008).  Moreover, *Terrorist Attacks III*, 538 F.3d at 96 (requiring, as a minimum, a "prima facie case that the district court ha[s] jurisdiction" before permitting jurisdictional discovery), forecloses plaintiffs' latest, and novel, suggestion that they may proceed with jurisdictional discovery based on a mere "threshold showing of jurisdiction to demonstrate that their jurisdictional position is <u>not frivolous</u>."  Reply at 3 (emphasis added); *see also* NCB Opp. at 2, 10.  Indeed, as Magistrate Judge Maas noted, the Second Circuit recently reaffirmed that the decisions "whether to allow … jurisdictional discovery and, if so, to what extent, are matters committed to the trial judge's broad discretion."  Discovery Order at 26 (citing *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)).[6]

---

[5] *See* NCB Opp. at 3-5 (citing *Maersk, Inc. v. Neewra, Inc.*, --- F. Supp. 2d ----, 2009 WL 5102754, at *28 (S.D.N.Y. Dec. 17, 2009) ("When the court is presented with evidence—for example, exhibits and deposition testimony—in support of and opposition to a Rule 12(b)(2) motion, the plaintiff must establish jurisdiction by a preponderance of the evidence.  This is what the Court refer[s] to as the 'post-discovery' standard."); *Nelson v. Massachusetts General Hosp.*, 2007 WL 2781241, at *13 (S.D.N.Y. Sep. 20, 2007) ("[W]here, as here, the parties have conducted several months of jurisdictional discovery, plaintiffs bear the burden of proving that personal jurisdiction exists by a preponderance of the evidence."), *aff'd*, 299 Fed. Appx. 78 (2d Cir. 2008).

[6] This is the only point for which Magistrate Judge Maas cited *Frontera* in his Discovery Order, and it is supported by substantial other precedent.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) ("We review for abuse of discretion the district court's decision not to permit jurisdictional discovery because BVL failed to establish a prima facie case of personal jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the Jazinis did not establish a prima facie case that the district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue."); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 342 F. Supp. 2d 207 (S.D.N.Y. 2004) ("Second Circuit precedent is clear that plaintiffs, having failed to demonstrate a prima facie case of jurisdiction, are not entitled to further jurisdictional discovery." (citing *Jazini*, 148 F.3d at 186)).  It is disingenuous for plaintiffs to cite this portion of the Discovery Order (Reply at 6) to suggest that Magistrate Judge Maas received any

### IV. PLAINTIFFS MISREPRESENT *FRONTERA* IN AN EFFORT TO EVADE THEIR BURDEN OF PROOF ON THE DUE PROCESS ISSUE.

*Frontera* plainly differentiated between "government instrumentalities established as juridical entities distinct and independent from their sovereign" and a "corporate entity … so extensively controlled by the sovereign" "that a relationship of principal and agent is created." *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) (internal citations and quotations omitted). In doing so, *Frontera* did not alter the presumption that separately-established instrumentalities, like NCB, are entitled to due process because they operate separately from the foreign sovereign that owns them. *Id.* at 400-01; *see also* NCB Opp. at 16-17.

The Second Circuit <u>expressly withheld decision</u> on whether there could be a basis to strip jurisdictional due process protections from a foreign government "instrumentality" that is not also a controlled "agent" of a foreign state, considering it "premature for us to address this question without hearing first from the court below." *Frontera*, 582 F.3d at 401. Plaintiffs overreach considerably in arguing that *Frontera* is "intervening and controlling Second Circuit precedent" resolving that issue. Reply at 7. Given the settlement of *Frontera* on remand (*see* Stipulation of Dismissal, *Frontera v. SOCAR*, No. 06-1125 (S.D.N.Y. Oct. 19, 2009), Dkt. #28), there will be no future ruling in that litigation concerning whether an independent instrumentality can be stripped of its right to jurisdictional due process.[7]

---

argument from plaintiffs concerning *Frontera* and their request for discovery on NCB's relationship with the Saudi government.

[7] *See also TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 300, 302 n.* (D.C. Cir. 2005) (cited in Reply at 4-5) (expressing "no view" on the due process rights of an independent foreign state instrumentality). Moreover, the *TMR Energy* analysis curiously is founded, at least in part, on a material misquotation of the Supreme Court. *Frontera* quoted the *TMR* court's observation that "'aliens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country.'" *TMR Energy*, 411 F.3d at 302 n.* (inaccurately quoting *U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)) (alteration in *TMR Energy*) (emphasis added). However, the Supreme Court never made that holding. Rather, in *Verdugo*, after citing to several cases where aliens enjoyed constitutional protection, the Court made the unsurprising statement that "[t]hese cases … establish <u>only</u> that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Verdugo*, 494 U.S. at 271 (emphasis added). Accordingly, *TMR Energy*'s alteration of the *Verdugo* language materially changed its meaning, because the Supreme Court never broadly held that

6

Importantly, however, *Frontera* did reaffirm long-standing Second Circuit precedent that a plaintiff "'bears the burden of proving that the corporate entity [*i.e.*, the instrumentality] should not be presumed distinct from a sovereign or a sovereign entity.'" *Frontera*, 582 F.3d at 401 (emphasis added) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 252 (2d Cir. 2000) (upholding application of the burden in the jurisdictional context and finding that the plaintiff could not overcome "strong presumption of separateness")); *accord Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533-34 (5th Cir. 1992) ("[W]here, as here, jurisdiction depends on an allegation the particular defendant was an agent of the sovereign, the plaintiff bears the burden of proving this relationship."); *Gregorian v. Izvestia*, 871 F.2d 1515, 1530 (9th Cir. 1989) (applying "the presumption of independent status to a duly created instrumentality … in determining whether assertion of personal jurisdiction over [the foreign entity] satisfies the requirements of due process."). This abundant precedent forecloses plaintiffs' attempt to shift this burden to NCB. Reply at 6. And plaintiffs cannot carry this burden, given their earlier concessions that NCB operated at arms-length from the Saudi government, and that "no act of the Kingdom is implicated in this suit" against NCB. *See* NCB Opp. at 18-19.

Of course, "control" of an instrumentality is distinct from the legal "ownership" of it. NCB has claimed sovereign immunity under the FSIA based on majority-ownership of the bank by the Saudi government. *See* NCB Opp. at 2, 13-15, 19. The *Federal Insurance* plaintiffs' assertion that the Kingdom of Saudi Arabia "operated the bank as an agency, instrumentality and organ of the Kingdom" simply tracks the prerequisites of FSIA's immunity and reinforces NCB's entitlement to FSIA immunity. *See Fed. Ins.* Am. Compl. ¶ 287 (Dkt. #1380; *Fed. Ins.* Dkt. #104); 28 U.S.C. § 1603

---

non-resident aliens do not enjoy any constitutional rights. Moreover, *Verdugo* has no application here because it both (i) addresses the scope of the Fourth Amendment rights, as expressly distinguished by the Court from Fifth Amendment rights, of foreign citizens; and (ii) addresses alleged violations of those foreign citizens' rights by U.S. officials on foreign soil. *See* 494 U.S. at 261, 264-66 ("[W]e think it significant to note that the [Fourth Amendment] operates in a different manner than the Fifth Amendment, which is not at issue in this case.").

(extending immunity to "an agency or instrumentality of a foreign state" and to "an organ of a foreign state").

Ultimately, the *Frontera* issue is made moot (both for discovery and for merits purposes) by the common sense recognition—-evaded by the plaintiffs, but followed as a matter of law by Judge Cedarbaum's decision in *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150-51 (S.D.N.Y. 2004)—that, if NCB somehow were an "agent" of the Kingdom, then it necessarily would be entitled to immediate dismissal from this lawsuit on the strength of the FSIA immunity of its notional "principal," the Kingdom of Saudi Arabia.  NCB Opp. at 2, 14-15.

## Conclusion

For the foregoing reasons, and the reasons set out in NCB's opposition papers (Dkt. #2226), plaintiffs' Rule 72 Objections to the January 13, 2010 Memorandum Decision and Order of Magistrate Judge Maas should be overruled, and the Order of Magistrate Judge Maas should be affirmed.

Dated:  March 11, 2010                                   Respectfully submitted,
        Washington, D.C.

      /s/Mitchell R. Berger
Mitchell R. Berger (MB-4112)
Alan T. Dickey
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:     202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

8

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 11, 2010, I caused copies of the SURREPLY OF THE NATIONAL COMMERCIAL BANK TO PLAINTIFFS' UNAUTHORIZED REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS TO THE DISCOVERY ORDERS OF MAGISTRATE JUDGE MAAS DATED JANUARY 13, 2010, to be served via the Court's Electronic Case Filing System with a Courtesy Copy via Federal Express to Magistrate Judge Maas.

                                          /s/Mitchell R. Berger
                                          Mitchell R. Berger