# PATTON BOGGS LLP
## ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

August 31, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

**VIA E-MAIL**

Sean P. Carter, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Re: *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Sean:

This letter responds to yours of August 24, 2007, which enclosed The Federal Insurance Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to The National Commercial Bank ("NCB"). Within the time provided by FED. R. CIV. P. 34, NCB will serve formal objections to those discovery requests. In the interim, I am writing to correct your erroneous assumption that the *Federal Insurance* plaintiffs are authorized to serve these discovery requests simply because NCB has not objected to the active participation of the *Federal Insurance* plaintiffs in the jurisdictional discovery that has been conducted in the *Burnett* and *Ashton* lawsuits. We regard the service of the *Federal Insurance* discovery requests as a violation of orders by Magistrate Judge Maas, which establish the scope of jurisdictional discovery as to NCB. Those orders bind the *Federal Insurance* plaintiffs just as much as they bind the *Burnett* and *Ashton* plaintiffs precisely because the *Federal Insurance* plaintiffs have participated actively in the *Burnett* and *Ashton* jurisdictional discovery.

As you know, NCB has a pending motion to dismiss the *Federal Insurance* complaint (MDL Dkt. # 416), and briefing of that motion was completed on November 29, 2004. NCB's motion raises jurisdictional defenses— both lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and lack of personal jurisdiction— and it challenges the legal sufficiency of the complaint. Accordingly, under Case Management Order No. 2, ¶ 17 (MDL Dkt. # 247), the *Federal Insurance* plaintiffs may not proceed with merits discovery as to NCB. Equally important, however, the Court has not authorized the *Federal Insurance* plaintiffs to proceed with jurisdictional discovery as to NCB. Instead, the Court authorized "limited jurisdictional discovery" as to personal jurisdiction over NCB only in the *Burnett* and *Ashton*

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
August 31, 2007
Page 2

lawsuits. *In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005); *In re Terrorist Attacks I*, 349 F. Supp. 2d 765, 792, 820 (S.D.N.Y. 2005).

Nonetheless, the *Federal Insurance* complaint is substantively identical to the *Burnett* and *Ashton* complaints, as NCB pointed out in its motion to dismiss the *Federal Insurance* complaint. Accordingly, NCB did not object when counsel for the *Federal Insurance* plaintiffs sought to participate in the jurisdictional discovery process in *Burnett* and *Ashton*. For example, at least one lawyer from your firm participated in the review of documents produced by NCB in October 2006, and other lawyers from your firm have attended NCB jurisdictional discovery hearings before Magistrate Judge Maas in May 2006 and March 2007, and the deposition of Lawrence Smith conducted before Judge Maas in July 2007.

For these reasons, the July 31, 2007 status report to Judge Daniels by the Defendants' Executive Committee suggested (at p. 4 n.6) that, "with respect to NCB's pending motion to dismiss the *Federal Insurance* complaint . . . the Court should first resolve NCB's personal jurisdiction defense (following completion of ongoing jurisdictional discovery in the *Burnett* and *Ashton* matters), and defer resolution of its FSIA defense." Similarly, in the parties' August 3, 2007 status report to Judge Daniels concerning jurisdictional discovery (at p. 5 n.4), NCB "contend[ed] that *Federal Insurance* plaintiffs' counsel have participated in the jurisdictional discovery process as to NCB, without objection by NCB, and that NCB's pending motion to dismiss the *Federal Insurance* complaint therefore does not provide a reason to prolong the jurisdictional discovery process."

Having participated in the *Burnett* and *Ashton* jurisdictional discovery process as to NCB, the *Federal Insurance* plaintiffs are bound by the Court's orders, which establish and limit the scope of permissible jurisdictional discovery. In NCB's Rule 34 objections to the *Federal Insurance* discovery requests, we will set out in detail all of the ways in which your August 24 discovery requests are improper under the Court's orders. In the interim, however, we note the following:

- On May 1, 2007 Magistrate Judge Maas entered an order (MDL Dkt. # 1971) in which he "decline[d] to direct any further discovery (not previously ordered) related to NCB." The *Federal Insurance* discovery requests violate this restriction on further jurisdictional discovery as to NCB.

- Judge Maas entered his May 1 order after reviewing, *inter alia*, allegations in Mr. Maloney's April 30, 2007 letter concerning supposed connections between NCB, Khalid Bin Mahfouz, Muwafaq/Blessed Relief Foundation, the IIRO and other "'customers' specifically identified as terrorist organizations." (*See id.* at pp 2-3 & n.2, and p. 5.) Those same allegations appear in the *Federal Insurance* First Amended Complaint, ¶¶ 290-297. Moreover, those same allegations apparently underlie all 28

4907099

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
August 31, 2007
Page 3

of the *Federal Insurance* plaintiffs' discovery requests. Those discovery requests therefore transparently seek to evade Judge Maas' conclusion that these allegations do not justify further jurisdictional discovery as to NCB.

- In his earlier June 28, 2006 Discovery Order (MDL Dkt. # 1849), Judge Maas held that the *Burnett* and *Ashton* complaints "have failed to make a prima facie showing of [a 9/11] conspiracy" involving NCB, and were "conclusory." *In re Terrorist Attacks [III]*, 440 F. Supp. 2d 281, 287 (S.D.N.Y. 2006). Specifically, "they establish neither that NCB or its customers contributed funds to organizations serving as Al Qaeda fronts with 'an awareness of the effects in New York' of such monetary contributions, nor that the co-conspirators in New York–namely, the Al Qaeda terrorists who executed the September 11 attacks–'acted at the direction or under the control or at the request of' NCB." *Id.*, quoting *In re Terrorist Attacks I*, 349 F. Supp. 2d at 805. That holding applies equally to the substantively identical allegations against NCB in the *Federal Insurance* complaint. Because the *Federal Insurance* complaint does not make a prima facie showing of conspiracy involving NCB, the *Federal Insurance* plaintiffs have not satisfied the prerequisite for discovery concerning their "conspiracy" theory of jurisdiction. *In re Terrorist Attacks [III]*, 440 F. Supp. 2d at 285 ("To establish personal jurisdiction on a conspiracy theory, [p]laintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of a conspiracy, and show that the defendant's co-conspirator committed a tort in New York."), quoting *In re Terrorist Attacks I*, 349 F. Supp. 2d at 805. Equally, under Case Management Order No. 2, the *Federal Insurance* plaintiffs cannot pursue these requests as merits discovery.

Accordingly, if the *Federal Insurance* plaintiffs do not withdraw their August 24, 2007 discovery requests, then NCB will submit its objections to those requests pursuant to Rule 34 and will seek other appropriate remedies from the Court.

Very truly yours,

Ronald S. Liebman

cc:    All Counsel

4907099

**EXHIBIT 4**



**COZEN
O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Sean P. Carter**
Direct Phone   215.665.2105
Direct Fax      215.701.2105
scarter@cozen.com

September 14, 2007

**VIA E-MAIL**

Ronald S. Liebman, Esquire
Patton Boggs
2550 M Street, NW
Washington, DC 20057

      **Re:**      **In Re: September 11, 2001 World Trade Center Attack**

Dear Ron:

     I write in response to your letter of August 31, 2007, which was received while I was away on vacation.

     For the reasons set forth below, the *Federal* plaintiffs believe that the arguments you raise in support of your contention that National Commercial Bank (NCB) is not required to respond to discovery in the *Federal* action are misplaced. In fact, conducting limited discovery as to NCB in the *Federal* matter at this time is procedurally proper, and will promote efficiency and conserve judicial resources. Moreover, the completion of such discovery is a procedural pre-requisite to resolving NCB's Motion to Dismiss the *Federal* plaintiffs' claims against it for lack of personal jurisdiction.

     Your contention that the *Federal* plaintiffs are bound by the discovery conducted as to NCB in the *Ashton* and *Burnett* actions misapprehends the fundamental nature of the consolidated proceedings. As the Supreme Court and 2nd Circuit have explained, consolidation is merely a procedural device designed to promote judicial economy, and cannot affect a merger of the actions or the claims of the separate parties. Accordingly, consolidation does not change the rights of the parties in the separate suits. As a result, the district court is required to consider the jurisdictional basis of each suit in a consolidated proceeding separately. Johnson v. Manhattan RY, 289 U.S. 479, 496-97, 77 L. Ed. 1331, 53 S. Ct. 721 (1933); Cole, et al. v. Schenley Industries, Inc. et al., 563 F.2d 35, 38 (2nd Cir. 1977).

Ronald S. Liebman, Esquire
September 14, 2007
Page 2

In view of the foregoing principles, your suggestion that the separate discovery proceedings in the *Burnett* and *Ashton* actions are binding on the *Federal* plaintiffs is procedurally incorrect.[1]

For the same reasons, your contention that the *Federal* plaintiffs have "actively participated" in the discovery in the *Burnett* and *Ashton* cases is similarly misplaced. Because of the distinct and separate nature of the individual actions, the *Federal* plaintiffs have no standing to conduct discovery via the *Ashton* or *Burnett* cases, direct the discovery conducted as to NCB in those cases, define the arguments raised to the Court in relation to discovery disputes in those separate actions, or otherwise protect their interests via discovery in those cases. As the *Federal* plaintiffs have absolutely no procedural rights in relation to the discovery as to NCB in the *Ashton* and *Burnett* cases, it is simply illogical to suggest that the *Federal* plaintiffs are bound by such discovery. The fact that counsel for the *Federal* plaintiffs have attended a few hearings relating to the NCB discovery without presenting argument, and the deposition of Lawrence Smith without asking any questions, as anyone is free to do in our open court system, does not change that fact.

As a corollary, because the discovery conducted in the separate *Burnett* and *Ashton* cases is not binding in the *Federal* action, the conduct of limited jurisdictional discovery in the *Federal* case is a procedural pre-requisite for the disposition of NCB's Motion to Dismiss the *Federal* action for lack of personal jurisdiction. As you point out in your letter, the *Federal* pleadings contain all of the allegations which prompted the district court to grant jurisdictional discovery in the *Ashton* and *Burnett* cases.[2] It logically follows that the *Federal* plaintiffs are entitled to jurisdictional discovery as to NCB. For this reason, the technical arguments you raise regarding the propriety of conducting discovery as to NCB while its Motion to Dismiss the *Federal* action remains pending are disingenuous, and in any event procedurally inaccurate. Indeed, insofar as NCB has made it clear that it desires to renew its Motion to Dismiss for lack of personal jurisdiction in the *Ashton* and *Burnett* cases as soon as possible, it only makes sense to complete jurisdictional discovery as to NCB in the remaining cases at this time, so that further proceedings as to NCB can be conducted on a consolidated basis. We therefore urge NCB to respond (and not merely object) to the *Federal* plaintiffs' limited discovery as soon as possible.

Importantly, the fact that jurisdictional discovery must now proceed separately in the *Federal* action is a circumstance of NCB's own choosing. As NCB acknowledges that the *Federal* pleadings contain all of the allegations which prompted the Court to grant jurisdictional discovery in the *Ashton* and *Burnett* cases, the appropriate step following the denial of NCB's Motion to Dismiss for lack of jurisdiction in *Ashton* and *Burnett* would have been for NCB to withdraw its pending motion to dismiss in the *Federal* action, and thereby relieve the Court of the burden of deciding a Motion that had already been rendered moot. This approach would have allowed discovery to proceed on a consolidated basis in all of the cases and conserved judicial resources.

---

[1] In this regard, we note that the referral by the district court of certain disputes relating to NCB to Judge Maas was specifically limited to the *Ashton* and *Burnett* cases.

[2] The *Federal* plaintiffs disagree with your contention that the *Federal* pleadings are "substantively identical" to the *Ashton* and *Burnett* Complaints. In particular, while the *Federal* pleadings do contain all of the allegations set forth in the *Burnett* and *Ashton* Complaints that were deemed relevant by the district court in reaching its decision as to jurisdiction, the *Federal* plaintiffs' pleadings contain additional allegations, not found in either the *Burnett* and *Ashton* Complaints.

Ronald S. Liebman, Esquire
September 14, 2007
Page 3

Rather than embracing that efficient course, NCB has curiously requested that the court hold in abeyance any decision on NCB's pending Motion to Dismiss for lack of jurisdiction in *Federal*, until the completion of jurisdictional discovery in *Ashton* and *Burnett*.[3] Your August 31, 2007 letter suggests that NCB did so in an effort to avoid jurisdictional discovery in the other actions altogether, and thereby prevent the plaintiffs in the other actions from pursuing jurisdictional theories or arguments not advanced by the *Burnett* and *Ashton* plaintiffs. However, for the reasons stated above, the *Burnett* and *Ashton* cases are separate actions, and the consolidation of those cases with *Federal* cannot serve to limit the procedural rights of the *Federal* plaintiffs.

Finally, contrary to the assertion in your letter, the targeted discovery served by the *Federal* plaintiffs differs in important respects from that previously served in the *Ashton* and *Burnett* cases, and is directly relevant to the question of personal jurisdiction. The *Federal* plaintiffs are confident in their ability to establish their right to the limited discovery sought through the Requests served on NCB. In any case, the formal completion of the discovery process as to NCB in *Federal* is a necessary step to preserve the record, for the benefit of all parties.

In the event that NCB is willing to reconsider its position on this issue, I would welcome the opportunity to meet with you in advance of the deadline for NCB's responses, to determine whether we can streamline the scope of necessary discovery proceedings as to NCB in the *Federal* case. In the event NCB intends to adhere to the stance outlined in your August 31, 2007 letter to me, I would ask that you provide available dates after the deadline for NCB's responses, to meet and confer in accordance with the requirements of Local Rule 37.3.

Very truly yours,

COZEN O'CONNOR

BY:     SEAN P. CARTER

SPC/bdw
cc:     Jodi Flowers, Esquire
        Robert Haefele, Esquire
        Andrew Maloney, Esquire
        Jerry Goldman, Esquire
        Stephen A. Cozen, Esquire
        Elliott R. Feldman, Esquire
        Adam C. Bonin, Esquire
        J. Scott Tarbutton, Esquire

---

[3] In an effort to limit the inefficiencies resulting from NCB's refusal to withdraw its mooted Motion to Dismiss the *Federal* action for lack of personal jurisdiction, the *Federal* plaintiffs have consistently urged the court to decide NCB's pending Motion to Dismiss as soon as possible.

# EXHIBIT 5

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

September 24, 2007

Ronald S. Liebman
202-457-6310
rliebman@pattonboggs.com

**VIA E-MAIL**

Sean P. Carter, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508

Re:     *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Sean:

Enclosed please find the Objections of The National Commercial Bank ("NCB") to The Federal Insurance Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to The National Commercial Bank. Although the Objections address many statements made in your September 14, 2007 letter to me, this letter separately responds to certain points regarding your request that we meet and confer concerning these discovery requests.

The *Federal Insurance* complaint is substantively identical to the *Burnett* and *Ashton* complaints with respect to every issue within the scope of your discovery requests, as the Objections explain. Indeed, the three complaints— and all of the other 9/11 litigation complaints against NCB— are substantively identical on every issue affecting personal jurisdiction over NCB.[1]  *Compare, e.g., Federal Insurance 1st Am. Complt.* ¶¶ 288-295 *with, e.g., Burnett 3rd Am. Complt.* ¶¶ 89-96 and *Ashton 6th Am. Complt.* ¶¶ 424-434.  Given the substantive identity of all of these complaints, the *Federal Insurance, Burnett* and *Ashton* (and all other 9/11 litigation plaintiffs) were obligated under the Court's Case Management Orders to coordinate their discovery efforts as to NCB.  Moreover, discovery taken in the *Burnett* and *Ashton* cases is deemed, under those Case

───────────────

[1]     Notably, as regards subject matter jurisdiction over NCB under the FSIA (as NCB pointed out in its motion to dismiss the *Federal Insurance* complaint), the *Federal Insurance* plaintiffs do part company with the *Burnett* and *Ashton* plaintiffs by alleging (1st Am. Complt. ¶¶ 286-287) that NCB— at all times relevant to FSIA immunity— has been operated as an agency, instrumentality or organ of the Saudi government.  However, issues of FSIA jurisdiction and immunity as to NCB are not presently before the Court.  *See In re Terrorist Attacks II*, 392 F. Supp. 2d 539, 575 (S.D.N.Y. 2005).

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
September 24, 2007
Page 2

Management Orders, to be discovery taken in all of the other consolidated 9/11 lawsuits. It is therefore not surprising that the *Federal Insurance* plaintiffs in fact did actively participate in the jurisdictional discovery process as to NCB over the past two years. That participation was not elective, as you appear to think my August 31 letter implies; it was mandatory. Consequently, the *Federal Insurance* plaintiffs are fully bound by Judge Maas' discovery orders as to NCB, as my August 31 letter noted.

Specifically, Case Management Order No. 2 (MDL Dkt. #247), ¶20 states: "To the extent possible, the parties shall conduct consolidated discovery and all discovery notices served and all responses to all discovery requests in an Individual Action shall be deemed to be part of the Consolidated Action and each Individual Action." Further, Case Management Order No. 3 (MDL Dkt. # 248), ¶9 requires that the two Plaintiffs' Executive Committees— on which you and other *Federal Insurance* plaintiffs' counsel serve— "shall coordinate and, wherever possible, submit joint discovery demands. . . and other filings regarding all matters common to the Individual Actions." Accordingly, it is simply incorrect for you to assert (your Sept. 14 letter, at 2) that the *Federal Insurance* plaintiffs had "no standing" and "absolutely no procedural rights in relation to the discovery as to NCB in the *Ashton* and *Burnett* cases." To the contrary, the jurisdictional discovery record developed over the past two years in the *Burnett* and *Ashton* cases, under the oversight of Judge Maas, is also the jurisdictional discovery record on which the Court can and should resolve NCB's pending motion to dismiss the *Federal Insurance* complaint.

All of the document requests, moreover, concern the relationship, if any, between or among NCB, "NCB Personnel" or other defendants and the Muwaffaq Foundation. As you will recall, you participated in the October 12, 2004 motions hearing before Judge Casey and you argued in opposition to the motion of NCB to be dismissed for lack of personal jurisdiction. (10/12/04 Tr. at 77-80.) During your argument, you stated: "Now, there is an entire section of the Federal, Ashton, and Burnett complaints dedicated to setting forth allegations regarding the conduct of the Muwaffaq Foundation... . All of that must be read as a whole... ." (*Id.*, at 77:8-15.) You did not draw the Court's attention to any difference among the allegations of the *Federal Insurance*, *Burnett* and *Ashton* complaints as to the Muwaffaq Foundation because there are no material differences among them. It is far too late in the jurisdictional discovery process for the *Federal Insurance* plaintiffs to try to contend that they have any basis on which to proceed separately from the *Burnett* and *Ashton* plaintiffs. Indeed, the belated attempt by the *Federal Insurance* plaintiffs to proceed separately seems to be an obvious effort to postpone the conclusion of the jurisdictional discovery process as to NCB, following NCB's July 31, 2007 application to Judge Maas to terminate further jurisdictional discovery and for leave to propound contention discovery to the plaintiffs.

NCB has consistently taken the position that jurisdictional discovery in the *Burnett* and *Ashton* lawsuits will provide the appropriate record for the Court's resolution of NCB's motion to

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Sean P. Carter, Esq.
September 24, 2007
Page 3

dismiss all of the 9/11 lawsuits based on lack of personal jurisdiction. Accordingly, on March 8, 2005, Judge Casey approved NCB's stipulation with the *New York Marine, Cantor, O'Neill* and *Continental Casualty* plaintiffs to permit NCB to file a consolidated motion to dismiss those complaints at the same time that NCB renews its motion to dismiss the *Burnett* and *Ashton* complaints, following jurisdictional discovery. (MDL Dkt. # 718, ¶ 3.) NCB sought to enter into a similar stipulation with the *Federal Insurance* plaintiffs, which we proposed to you on October 19, 2005 (copy attached in Exhibit A). That same day you responded that you would review the proposed stipulation and would "get back to [us] no later than tomorrow." We did not hear further from you. However, you are hardly in a position to contend that the Federal Insurance plaintiffs are somehow surprised by NCB's position, or that the *Federal Insurance* plaintiffs are motivated solely by an interest in achieving the efficiencies of MDL consolidation.

In short, the Case Management Orders require and provide for consolidated discovery, all of the 9/11 complaints are substantively identical on issues affecting personal jurisdiction over NCB, and NCB consistently has sought to achieve an efficient and consolidated resolution of its motions to dismiss based on a single jurisdictional discovery record as developed pursuant to the orders of Judge Maas. For all of these reasons, there is no basis on which the *Federal Insurance* plaintiffs can belatedly opt-out of the jurisdictional discovery process as to NCB, or seek to evade the scope of that jurisdictional discovery as established by Judge Maas' orders.

Once you have reviewed the enclosed Objections, we would be available to meet and confer with you in Washington on either October 10 or 11.

Very truly yours,

Ronald S. Liebman

cc:    All Counsel

## **EXHIBIT 6**

TOP SECRET ███████ b1, b5

███████ b2 ███████

**(U) MEMORANDUM FOR R. RICHARD NEWCOMB**
**DIRECTOR**
**OFFICE OF FOREIGN ASSETS CONTROL**

**(U) THROUGH:**   Mark D. Roberts
                   Chief, Foreign Terrorist Programs Division

**(U) FROM:**      Foreign Terrorist Officer

**(U) SUBJECT:**   Designation Pursuant to E.O. 13224

**(U) Yasin AL-QADI**
**(U) a.k.a. Yasin Kadi**
**(U) a.k.a. Yasin Kahdi**
**(U) a.k.a. Shaykh Yassin Abdullah Kadi**

███████ b1, b5 ███████

**(U)    POB:** Cairo, Egypt
**(U)    DOB:** February 23, 1955

 b7D, b7E

**(U)** Current Address: Jeddah, Saudi Arabia

**(U) <u>INTRODUCTION</u>:**

(U) President Bush issued Executive Order 13224 (September 23, 2001) ("E.O. 13224" or "the E.O."), declaring a national emergency to address grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the September 11, 2001, terrorist attacks in New York, Pennsylvania, and at the Pentagon. E.O. 13224 authorizes the Secretary of the Treasury, in consultation with the Secretaries of State and Homeland Security and the Attorney General, to designate those persons determined to be:

TOP SECRET ███████ b1, b5 ███████

Derived by: ███████ b6, b7c
Derived from: Multiple Sources - ███████ b2
Declassify On: ███████ b1, b2, b5

**0007681**

TOP SECRET  b1, b5

- owned or controlled by, or to be acting for or on behalf of those persons listed in the Annex to the E.O., or those determined to be subject to subsection 1(b), 1(c) or 1(d)(i) of the E.O.;

- assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to E.O. 13224 or determined to be subject to the E.O.; or

- associated with those persons listed in the Annex, or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of the E.O.

(U) The following is a summary of the evidence in the files of the Office of Foreign Assets Control which supports a determination that **Yassin AL-QADI [AL-QADI]** satisfies the standards for designation under Executive Order 13224 "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," and is subject to its provisions and prohibitions.

(U) OFAC has reviewed evidence from many sources involving numerous activities taking place over a significant length of time. OFAC finds that this evidence is credible, particularly when taken as a whole. The evidence includes both publicly available material and classified evidence that is not appropriately releasable to the public for several reasons, including preventing harm to the national security of the United States. The evidence clearly supports the determination that **AL-QADI** is subject to Executive Order 13224.

(U) Summary

(S) b1 **AL-QADI**, a Saudi businessman whose companies span the Middle East, Europe, North America and South Asia, has been consistently identified as a financial supporter of Usama bin Laden and other known Islamic extremists for nearly a decade. This identification has been made by ████████████████ b1, b7D as well as by open source press reports, spanning **AL-QADI's** associations with businesses, charities and direct relations with individuals aligned with terrorism. It is also supported by federal money-laundering investigations.

(U) **AL-QADI** was initially designated as subject to E.O. 13224 on October 12, 2001. He is also on the United Nations' Consolidated List of All Entities/Individuals Whose Accounts Should be Frozen in Accordance with the United Nations Security Council Resolutions Relating to Afghanistan (Taliban & Usama Bin Laden) or Terrorism, pursuant to paragraph 8(C) of Resolution 1333. The European Union has also frozen his assets, pursuant to Council Regulation (EC) No. 467/2001 "imposing certain specific restrictive measures directed against certain persons and entities associated with Usama bin Laden, the Al-Qaida network and the Taliban," He now seeks reconsideration of his designation under E.O. 13224.

TOP SECRET  b1, b5

2

**0007682**

TOP SECRET ███████████ b1, b5 ██████████

(█ b1 █) AL-QADI established the Muwafaq Foundation ("Muwafaq" or "the Foundation") in 1992. Though established as a charitable organization, Muwafaq, according to information available to the U.S. government ████████████████ b1 ████████████████████████ b1 ████████████ According to information available to the U.S. government, ██████████████████████████████████████████ b1 ██████████ both designated as Specially Designated Global Terrorists (SDGTs) on September 23, 2001, pursuant to Executive Order 13224.

(█) ████████████████████████████████████████████████████████████████
████████████████████ b1 ████████████████████████████████████████████

(█ b1 █) Chafiq Ayadi and Wa'el Hamza A. Julaidan, both designated SDGTs, by AL-QADI's own admissions worked closely with him, and received direct and indirect funding from him. ████████████████████████████████████████████████
████████████████████████ b1 ████████████████████████████████████████
████████████████████████████████████████████████████████████████████

(█) ████████████████████████████████████████████████████████████████
████████████████████████████████████████████ designated an SDGT pursuant to E.O. 13224. Further, he has admitted to directly providing funds in 1992 and 1993 to Muhammad Salah, a high-level HAMAS operative and a Specially Designated Terrorist ("SDT") under Executive Order 12947, "Prohibiting Transactions with Terrorists Who Threaten To Disrupt the Middle East Peace Process," signed in 1995.

(U) Though Muwafaq was a charitable foundation, and AL-QADI in his submissions to OFAC has provided evidence that it was involved in substantial charitable activities, this by no means undermines the determination that the charity was, in addition, used to fund terrorism. The use of an ostensible charitable foundation is a frequently used mechanism for covertly supporting terrorism. [See e.g. Exhibit YYY, at p. 6.]

## (U) PREVIOUS DESIGNATION BASIS



0007683

TOP SECRET 

(U) Following the designation of **AL-QADI**, on or about October 11, 2001, the Department of Treasury, in response to a request by the United Kingdom for additional information on **AL-QADI**, faxed a two-page document to governmental officials in the United Kingdom. [Exhibit AAA.] The two-page fax included reference only to certain unclassified material. While many of the submissions of **AL-QADI** in support of his petition to de-list make reference to the two-page fax as containing the sole or primary basis for the support of the designation under E.O. 13224, this interpretation of the fax is incorrect. The original designation and maintenance of **AL-QADI** was based upon both classified and unclassified material. Further, **AL-QADI** asserts in his submissions that some of the information in the two-page fax is incorrect, such as the fact that he does not have a brother. We accept that **AL-QADI** does not have a brother. As noted, however, **AL-QADI's** designation is based on both classified and unclassified information beyond the information contained in the two-page fax.

### (U) PROCEDURAL HISTORY

(U) **AL-QADI** has requested reconsideration of the October 12, 2001 designation of him under E.O. 13224. In support of his petition to be delisted, he has presented the following material: Witness Statement of Yassin Abdullah Kadi, dated 17 December 2001 ("12-17-2001 WS"); Supplemental Witness Statement of Yasin Abdullah Kadi, dated 23 July 2002 ("7-23-2002 WS"); Yassin Abdullah Kadi Summary Presentation for OFAC, August 1, 2002 ("8-1-2002 Meeting"); Statement of Yasin Abdullah Kadi, dated December 19, 2002 ("12-19-2002 WS"); Presentation for February 28th Meeting with OFAC, dated February 28, 2003 ("2-28-2003 Meeting"); Answers to Questions Concerning the Petition to Delist Yassin Abdullah Kadi, dated July 11, 2003 ("7-11-2003 Answers"); and the Submission of Yassin Abdullah Kadi to the Deputy Attorney General of Switzerland, Mr. Claude Nicati, Further to the Meeting at the Swiss Embassy in Riyadh on 1 July 2003, dated August 22, 2003 ("8-22-2003 WS").

(U) OFAC has now reviewed **AL-QADI's** submissions including the documents and exhibits submitted in support of the witness statements and other submissions. Based on the evidence set forth below, including the admissions and explanations and defenses of **AL-QADI** as well as the classified evidence, there continues to be a reasonable basis to maintain the designation based upon the full record contained in OFAC's files.

### (U) AL-QADI'S LINKS TO TERRORISTS, EXTREMISTS, AND TERRORISM-RELATED ACTIVITIES

(U) **AL-QADI** declares in multiple places in his submissions to OFAC, that he and his legal team have examined many documents and have interviewed a number of witnesses including former employees of Muwafaq and "have found no evidence whatsoever that any transaction benefited Osama bin Laden, Al Qaeda, or any other terrorist activity or group." **AL-QADI** claims throughout his submissions that "to the best of [his] knowledge the Foundation never provided money to any terrorist individuals or organizations, whether or not designated under E.O. 13224." **AL-QADI** asserts, "I have

TOP SECRET 

4