

**COZEN**
**O'CONNOR**

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Sean P. Carter**
Direct Phone   215.665.2105
Direct Fax      215.701.2105
scarter@cozen.com

August 15, 2008

**VIA FEDERAL EXPRESS**

The Honorable Frank Maas
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 740
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD)
       *Federal Insurance Co., et al. v. al Qaida, et al.,* 03 CV 6978 (GBD)

Dear Judge Maas:

    In accordance with the Court's Order of July 11, 2008, I write on behalf of the *Federal Insurance* Plaintiffs, to request an extension of time to respond to the "Renewed" Motion to Dismiss of National Commercial Bank (NCB), and for an Order compelling NCB to provide relevant and necessary discovery, including full and complete answers to the *Federal Insurance* Plaintiffs' outstanding jurisdictional discovery requests. More specifically, the *Federal Insurance* Plaintiffs request that the time for responding to NCB's Motion to Dismiss be extended to sixty days after the completion of targeted discovery relevant to the NCB jurisdictional analysis, to include discovery served upon closely related defendants Yassin al Kadi and Khalid bin Mahfouz, two former NCB executives whose conduct as agents and employees of NCB lies at the heart of Plaintiffs' theories of jurisdiction and liability as to NCB. The conduct of such discovery is necessary to create an adequate record relative to NCB's personal jurisdiction defense in the *Federal Insurance* case, where no discovery as to NCB has been conducted to date, and therefore represents a procedural prerequisite for the disposition of that defense in the *Federal Insurance* action.

August 15, 2008
Page 2

_____

In advocating this course, the *Federal Insurance* Plaintiffs by no means seek to replicate the discovery that has already been undertaken as to NCB in *Ashton* and *Burnett*. To the contrary, the *Federal Insurance* plaintiffs seek discovery as to only a few discrete issues and relationships, critical to the specific jurisdictional theories they have advanced as to NCB based on the unique allegations of their Complaint, and evidence which corroborates those detailed factual allegations.

The extension proposed by the *Federal Insurance* Plaintiffs will in no way prejudice NCB. In this regard it should be noted that the Court has already ruled that it does not intend to pass on any Motions to Dismiss for lack for personal jurisdiction until after it has resolved all of the pending Motions to Dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act. Moreover, there are at least 53 fully briefed and unresolved Motions to Dismiss for lack of personal jurisdiction already pending before the Court, several of which were filed more than 4 years ago. Thus, the *Federal Insurance* Plaintiffs respectfully submit that the targeted discovery they seek can be completed well before the Court will, in the normal course of its resolution of pending motions to dismiss in the MDL, even reach NCB's "Renewed" Motion to Dismiss.

## I.   PROCEDURAL BACKGROUND

On April 21, 2008, NCB filed a letter application with the Court, seeking leave to file a "Renewed" Motion to Dismiss in all of the pending MDL actions against it. At the time of that submission, NCB had a fully briefed Motion to Dismiss already pending in the *Federal Insurance* case, which had never been addressed by the Court, or withdrawn by NCB.

In response to NCB's April 21, 2008 application, the *Federal Insurance* Plaintiffs submitted an April 25, 2008 letter to the Court, through which they opposed NCB's request for leave to file a "Renewed" Motion to Dismiss for Lack of Personal Jurisdiction, and moved to compel NCB to provide full and complete responses to the *Federal Insurance* Plaintiffs' outstanding discovery requests.[1]  Consistent with established Supreme Court and 2nd Circuit authority, the *Federal Insurance* Plaintiffs' April 25, 2008 letter correctly argued that the MDL consolidation of the various September 11th cases did not result in a merger of those actions, and that the separate discovery proceedings in the *Ashton* and *Burnett* cases consequently could not be deemed applicable to the *Federal Insurance* case.[2]  Accordingly, the *Federal Insurance*

_____

[1] The *Federal Insurance* Plaintiffs' April 25, 2008 submission contains a thorough discussion of relevant procedural developments concerning NCB from the inception of the litigation, including the procedural disparities among the various cases, which is incorporated herein by reference.

[2] In its "Renewed" Motion to Dismiss, NCB argues that the *Federal Insurance* Plaintiffs are also bound by the *Ashton* and *Burnett* Plaintiffs' responses to NCB's contention discovery requests to those separate parties. The absurdity of that argument is demonstrated by the fact that NCB labeled those discovery requests as applicable only to *Ashton* and *Burnett*, rather than to all actions, a designation which necessarily means that those requests only applied to the *Ashton* and *Burnett* cases. See CMO 2 at ¶ 8. Moreover, NCB's Motion to Compel more complete responses to those discovery requests was directed only to the *Ashton* and *Burnett* Plaintiffs. Further, as the *Ashton* and *Burnett* Plaintiffs responded separately, it is impossible even to know which responses NCB believes to be binding upon the other cases.

August 15, 2008
Page 3

---

Plaintiffs asserted that the conduct of targeted jurisdictional discovery was necessary to create an adequate record in the *Federal Insurance* case relative to NCB's personal jurisdiction defense, and represented the only valid means to harmonize the procedural status of the claims against NCB in all of the MDL cases.

The *Federal Insurance* Plaintiffs' April 25 letter went on to describe the factual and legal predicates for the *Federal Insurance* Plaintiffs' theories of specific jurisdiction as to NCB, and the diligent efforts the *Federal Insurance* Plaintiffs had previously undertaken to obtain discovery from NCB in support of those theories. As discussed in greater detail in that letter, the *Federal Insurance* Plaintiffs' theories of specific jurisdiction rest in part on the well supported contention that NCB knowingly provided financial and other forms of support to al Qaida. NCB's sponsorship of al Qaida flowed largely, although not exclusively, through the Muwafaq Foundation, an al Qaida front conceived, established and run by former NCB executives Khalid bin Mahfouz and Yassin al Kadi. Under well settled standards, the *Federal Insurance* Plaintiffs asserted that they had satisfied their burden to make a prima facie showing of jurisdiction as to NCB under their purposeful direction and conspiracy theories of jurisdiction, through the detailed allegations of their operative Complaint and the extrinsic evidence submitted in connection with their Opposition to NCB's then pending Motion to Dismiss in the *Federal Insurance* case.

Although under no obligation to provide additional evidentiary support in order to obtain discovery of facts relevant to those theories of personal jurisdiction, the *Federal Insurance* Plaintiffs submitted a United States Treasury Department evidentiary memo concerning Yassin al Kadi as an exhibit to their April 25 letter, in order to shed additional light on the relevance and importance of the requested discovery. The submitted evidentiary memorandum contains extensive information concerning the character of the relationships among NCB, Khalid bin Mahfouz, Yassin al Kadi, Muwafaq Foundation, and al Qaida, and describes in detail Muwafaq Foundation's pervasive involvement in the sponsorship of al Qaida and other terrorist organizations throughout the World.

On the basis of the complete record in their case, the *Federal Insurance* Plaintiffs asserted that they were entitled to full and complete responses to the jurisdictional discovery requests they served on NCB on August 24, 2007, which sought targeted discovery concerning the relationships among NCB, al Kadi, bin Mahfouz and Muwafaq Foundation.

On July 11, 2008, the Court entered an Order authorizing NCB to file a "Renewed" Motion to Dismiss in all of the pending MDL cases, but explicitly preserving the right of all plaintiffs to make application to Your Honor for a stay or extension of time for responding to NCB's Motion to Dismiss, and to compel NCB to respond to any discovery relevant to the personal jurisdiction analysis. Thus, the Court's July 11, 2008 Order did not address the substantive issues raised in the *Federal Insurance* Plaintiffs' April 25, 2008 letter concerning discovery in their case.

On July 22, NCB filed its "Renewed" Motion to Dismiss for Lack of Personal Jurisdiction in all of the pending MDL cases. Pursuant to paragraph 26 of Case Management

August 15, 2008
Page 4

Order 2 and paragraph 5 of Case Management Order 4, the present deadline for responding to that Motion is September 23, 2008.

Through the instant letter application, the *Federal Insurance* Plaintiffs request that the Court direct NCB to respond to discovery directly relevant to the NCB jurisdictional analysis, and extend the period of time for the *Federal Insurance* Plaintiffs to file their Opposition to NCB's "Renewed' Motion to Dismiss, to sixty days after the completion of all discovery relevant to the jurisdictional dispute raised in NCB's "Renewed" Motion to Dismiss.

## II.    ARGUMENT

### A.    Standard of Review

Rule 6 of the Federal Rules of Civil Procedure provides a district court with broad discretion to grant a request for an extension of time made prior to the expiration of the period prescribed. See Fed. R. Civ. P. 6(b). Indeed, courts will normally grant such applications in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party. Don King Prods. v. Hopkins, 2004 U.S. Dist. LEXIS 25917, *8 (S.D.N.Y. Dec. 23, 2004); See 4B Wright & Miller, Federal Practice and Procedure, § 1165 (updated by 2004 Pocket Part).

The Federal Rules also provide a comprehensive framework for resolving discovery disputes. Under the Rules, a court's analysis of any discovery contest must begin with Rule 26(b)(1), which as a threshold matter provides that litigants are *entitled* to obtain discovery regarding any matter "*relevant to the claim or defense of any party.*" Fed. R.Civ. P. 26(b) (emphasis supplied). "This obviously broad rule is liberally construed." Deval Steel Products Div. of Francosteel Corp. v . M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991), *citing* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). In order to conclude that requested discovery is legally irrelevant under Rule 26(b)(1), a judge must find that the requested discovery could not, as a matter of law, lead to the discovery of admissible evidence. In other words, the judge must find that "even assuming the discovery yields the information Plaintiff suggests, that information could not be admitted at trial under Fed. R. Evid. 401 because – as a matter of law - a jury may not draw from that information the inference that Plaintiff seeks to elicit." Pisacane v. Enichem Am., 1996 U.S. Dist. LEXIS 9755, *8 (S.D. N.Y. 1996).

Rule 26(b)(1) establishes the appropriate scope of discovery not only as to the merits, but as to jurisdiction as well. Renner v. Lanard Toys Ltd., 33 F.3d 277, 283 (3d. Cir. 1994); Edmond v. United States Postal Serv. Gen. Counsel, 292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction."). Thus, the starting point for a court's analysis of a jurisdictional discovery dispute is simply whether the discovery sought bears on, or reasonably could lead to other matter that could bear on, the plaintiffs' theories of jurisdiction, or any defenses raised by the defendant as to those theories of jurisdiction. Where jurisdictional facts are in dispute, a refusal to grant discovery as

August 15, 2008
Page 5

_____

to matters bearing on the factual dispute constitutes an abuse of discretion.  Filus v. Lot Polish
Airlines, 907 F.2d 1328, 1332, (2d. Cir. 1990).

**B.      The *Federal Insurance* Plaintiffs Are Entitled to the Discovery They Seek
Concerning NCB's Sponsorship of Al Qaida Through Muwafaq Foundation**

As discussed above, the *Federal Insurance* Plaintiffs presented detailed factual and legal
arguments in their April 25, 2008 letter to the Court, in support of their request that the Court
direct NCB to provide responses to the *Federal Insurance* Plaintiffs' long outstanding discovery
requests relating to NCB's sponsorship of al Qaida via Muwafaq Foundation.[3]  In lieu of
restating the arguments contained in that letter herein, the *Federal Insurance* Plaintiffs
incorporate that letter in its entirety.  For the Court's convenience, a copy of that submission is
attached as Exhibit "A" hereto.

As a supplement to the facts and arguments presented in that letter and the broader record
in their case,[4] the *Federal Insurance* Plaintiffs offer the following additional evidence in support
of the present application, the essential significance of which is noted parenthetically below:

    1.      *German Intelligence Service Summary of Findings - Investigation of
Yassin Qadi and Muwafaq*, Exhibit "B" hereto.  Describes terrorism
sponsorship activities of Yassin al Kadi, Khalid bin Mahfouz and
Muwafaq, and NCB's role in facilitating transfers to al Qaida, via
Muwafaq and IIRO.

    2.      *Statement of Yassin Abdullah Kadi to the Office of Foreign Assets Control*,
Exhibit "C" hereto.  Confirms that al Kadi was engaged by Khalid bin
Mahfouz to establish NCB's Islamic Banking Division.  Indicates that bin
Mahfouz and al Kadi jointly established Muwafaq in approximately 1991,
while al Kadi was, in his own words, "working with [Khalid bin Mahfouz]
*for NCB.*"   (emphasis supplied).

_____

[3] In its "Renewed" Motion to Dismiss, NCB asserts that it did not maintain any accounts for the Muwafaq
Foundation.  While Plaintiffs believe they are entitled to test the veracity of that assertion through
discovery, it should be noted Plaintiffs' theories of specific jurisdiction arising from NCB's relationship
with Muwafaq rest on specific allegations and evidence that NCB executives and officials used various
accounts at the bank to make transfers to Muwafaq Foundation, and that NCB also channeled its own
resources to Muwafaq.  Thus, the critical issue in the context of the present jurisdictional analysis is not
simply whether Muwafaq held accounts at NCB, but rather whether NCB transferred any of its own
assets, or facilitated transfers on behalf of other parties, to Muwafaq, and what NCB officials knew about
the purposes of such transfers.  Those are the precise issues the *Federal Insurance* Plaintiffs seek to
explore through discovery.
[4] Among other relevant filings, the record in the *Federal Insurance* case includes the *Federal Insurance*
Plaintiffs' Oppositions to NCB's Initial Motion to Dismiss, Khalid bin Mahfouz's Motion to Dismiss, and
Yassin al Kadi's Motion to Dismiss, including all exhibits submitted in relation to those Oppositions.  As
the *Federal Insurance* Plaintiffs' entitlement to the requested discovery must be evaluated on the basis of
a review of the complete record, they hereby incorporate by reference those Oppositions in their
entireties.  See Docket #s 515, 516, 1146, 1147-49, 1761, and 1762-63.

August 15, 2008
Page 6

_____

For the reasons stated in further detail in their April 25 letter, as supplemented by the additional facts and information submitted herewith, the *Federal Insurance* Plaintiffs respectfully request that the Court order NCB to provide full and complete responses to the *Federal Insurance* Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to the National Commercial Bank, which consist of 28 targeted discovery requests concerning the relationships among NCB, al Kadi, bin Mahfouz and Muwafaq. Those requests were served nearly a year ago, on August 24, 2007, and are attached as Exhibit 2 to the *Federal Insurance* Plaintiffs' April 25 letter.

Upon completion of that written discovery, the *Federal Insurance* Plaintiffs request that the Court direct NCB to produce a company representative knowledgeable of the relationships among NCB, al Kadi, bin Mahfouz and Muwafaq for deposition, pursuant to Fed. R. Civ. P. 30(b)(6).

### C.  The *Federal Insurance* Plaintiffs Are Entitled to the Discovery They Seek Concerning NCB's Sponsorship of Al Qaida Through IIRO and the SJRC

The *Federal Insurance* Plaintiffs have also asserted that NCB channeled funds through al Qaida via the International Islamic Relief Organization (IIRO), and the Saudi Joint Relief Committee for Kosovo and Chechnya (SJRC). These allegations are based on specific investigative facts demonstrating that those ostensible charities served as fronts for al Qaida, and that senior representatives of NCB knowingly conspired to use the Bank's infrastructure to facilitate transfers to al Qaida through those purported charities.

There is no dispute that NCB provided financial services to the SJRC and IIRO. Accordingly, under governing legal standards, NCB will be subject to both jurisdiction and liability in the event that it knew the IIRO and SJRC were al Qaida fronts at times when it was providing financial services to those organizations.[5] See In Re: Terrorist Attacks on September 11, 2001, 392 F. Supp. 2d 539 (S.D. N.Y. 2005) (in light of al Qaeda's public declaration of war against the United States, someone who is… a provider of financial and logistical support to al Qaeda, has purposely directed his activities at the United States such that the exercise of personal jurisdiction over him is reasonable.); See also In Re: Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765 (S.D. N.Y. 2005) (finding that indirect contributions to al Qaeda are

_____

[5] Although it would be impractical to attempt to overview all of the relevant allegations and record evidence underlying the *Federal Insurance* Plaintiffs' contention that NCB knew the IIRO and SJRC were al Qaida fronts in this context, it is worth noting that Yassin al Kadi, the individual Khalid bin Mahfouz chose to establish NCB's Islamic Banking Division, is himself an Executive Order 13224 terrorist designee. Moreover, al Kadi acknowledges a close personal relationship with Wa'el Jelaidan, a founding member of al Qaida and the architect of al Qaida's global financial infrastructure. Jelaidan has held senior positions in many of al Qaida's charity fronts, *including the Saudi Joint Relief Committee and IIRO*. In addition, the Treasury Department Evidentiary memorandum concerning al Kadi makes clear that Jelaidan regularly enlisted al Kadi's assistance to support terrorist causes. The *Federal Insurance* Plaintiffs respectfully submit that these discrete facts are, in and of themselves, sufficient circumstantial evidence to establish al Kadi's awareness that the IIRO and SJRC were serving as fronts for al Qaida. By virtue of al Kadi's role with NCB, that knowledge is imputable to NCB. See In re Investors Funding Corp., 523 F. Supp. 533, 540-41 (S.D.N.Y. 1980).

August 15, 2008
Page 7

---

sufficient to establish a defendant's participation in al Qaeda's conspiracy to attack America, where the defendant knew the organization receiving those contributions to be a solicitor, collector, supporter, front or launderer for the terrorist organization).

Although the *Federal Insurance* Plaintiffs would be within their rights under the Rules to conduct complete discovery concerning NCB's relationships with the IIRO and SJRC, they have attempted to streamline that process by merely submitting discovery requests for any available lists or summaries, including lists or summaries which can be generated electronically, of accounts maintained by NCB for those organizations, and transactions carried out on behalf, or for the benefit of, those organizations. As a sophisticated international financial institution, the *Federal Insurance* plaintiffs anticipate that NCB can generate this required information with relative ease. In addition, the *Federal Insurance* Plaintiffs have submitted targeted discovery requests, concerning facts relevant to assessing NCB's knowledge of the terrorism sponsorship activities of the IIRO and SJRC. These requests are included in the *Federal Insurance* Plaintiffs' Second Set of Jurisdictional Requests for Production of Documents Directed to the National Commercial Bank, attached as Exhibit "D" hereto.

The *Federal Insurance* Plaintiffs respectfully request that the Court direct NCB to provide full and complete responses to these discovery requests. Upon completion of that written discovery, the *Federal Insurance* Plaintiffs request that the Court direct NCB to produce a company representative knowledgeable about the relationships among NCB, IIRO and SJRC for deposition, pursuant to Fed. R. Civ. P. 30(b)(6).

## D. The *Federal Insurance* Plaintiffs Are Entitled to the Discovery They Seek Concerning the Duties, Responsibilities and Activities of Yassin al Kadi and Khalid bin Mahfouz, and the Operations of NCB's Islamic Banking Division

In its "Renewed" Motion to Dismiss, NCB argues in conclusory fashion that Yassin al Kadi and Khalid bin Mahfouz were necessarily acting outside of the scope of their employment with NCB in relation to any sponsorship of al Qaida, even though the infrastructure of the bank was knowingly used by those senior officers and agents of NCB to facilitate that support. In making this argument, NCB mischaracterizes Plaintiffs' claims against NCB, which in part rest on the theory that NCB, *as an institution*, knowingly provided material support and resources to al Qaida. In addition, NCB ignores the relevant legal standards for determining whether the actions of an employee or agent are attributable to a corporation. Of greater significance to the present application, NCB's "scope of employment" and "attribution" arguments interject disputed factual issues into the jurisdictional contest, relative to which discovery must be afforded.

While a full recitation of the standards for imposing liability on a corporation under applicable theories of direct and vicarious liability is beyond the scope of the present submission, it is worth noting that the relevant inquires are inherently fact sensitive under both New York law and federal common law. For instance, under New York law, the following factors must be considered in determining whether actions of an employee are attributable to a corporation under a vicarious liability theory:

August 15, 2008
Page 8

---

> (1) the connection between the time, place and occasion for the act;
> (2) the history of the relationship between the employer and
> employee as spelled out in actual practice; (3) whether the act is
> one commonly done by such an employee; (4) the extent of
> departure from normal methods of performance; and (5) whether
> the specific act was one that the employer could reasonably have
> anticipated.

Riviello v. Waldron, 47 N.Y.2d 297, 391 N.E.2d 1278, 1281, 418 N.Y.S.2d 300, 303 (1969)
(citing Restatement (Second) of Agency § 229).[6]

      Critically, when the fact sensitive scope of employment inquiry is relevant to the question
of jurisdiction, as NCB acknowledges that it is here, a 12(b)(1) motion to dismiss cannot be
heard – and jurisdiction cannot be determined – until all relevant discovery as to the scope of
employment has been completed. Hamm v. United States, 439 F. Supp. 2d 262, 264 (W.D.N.Y.
2006); Asto v. Mirandona, 372 F. Supp. 2d 702, 706 (E.D.N.Y. 2005); Pomeroy v. Quarles, 2001
U.S. Dist. LEXIS 18138, * 9-13 (N.D.N.Y 2001); Petrousky v. United States, 1989 U.S. Dist.
LEXIS 5355, *6-9 (N.D.N.Y 1989) (requiring that an evidentiary hearing be held to determine
whether the actions complained of were undertaken within the scope of her employment, and
refusing to grant a motion to dismiss or in the alternative summary judgment).[7]

      Consistent with the foregoing authorities, the *Federal Insurance* Plaintiffs served
discovery requests upon NCB, promptly after receiving NCB's "Renewed" Motion to Dismiss,
relative to NCB's "scope of employment" and "attribution" defenses. Those requests, which are
also included in the *Federal Insurance* Plaintiffs' Second Set of Jurisdictional Requests for
Production of Documents Directed to the National Commercial Bank, Exhibit "D" hereto, seek
discovery concerning the relevant duties, responsibilities and activities of Khalid bin Mahfouz
and Yassin al Kadi. In addition, as the *Federal Insuranc*e Plaintiffs contend that NCB's
sponsorship of al Qaida was directed largely through NCB's Islamic Banking Division, in
keeping with policies established by senior officials of that Division, the supplemental discovery
requests also seek relevant information concerning the operations of NCB's Islamic Banking
Division, and that Division's ties to al Qaida's charity fronts. As these supplemental discovery
requests are all directly relevant to the fact sensitive "scope of employment" and "attribution"
questions implicated by the NCB jurisdictional dispute, the *Federal Insurance* Plaintiffs
respectfully submit that they are entitled to complete that discovery prior to responding to NCB's

---

[6] Contrary to NCB's asserted position, the cases make clear that for a tort to have been committed within
the scope of employment, an employee's primary motive need not have been to serve the master, nor need
the master have benefitted financially from the tort. See Sharkey v. Lasmo (AUL Ltd.), 992 F. Supp. 321,
329 (S.D.N.Y. 1998) (collecting cases).
[7] Although al Kadi was engaged by bin Mahfouz to establish NCB's Islamic Banking Division, NCB
disputes that al Kadi was ever an "employee" of NCB." Given his role in establishing that Division and
setting its policies, the *Federal Insurance* Plaintiffs submit that al Kadi acted at all relevant times as an
"agent" of NCB, even if not technically an "employee" of NCB. In the present context, the difference is
largely semantic, as the analysis of whether al Kadi acted as an agent of NCB in relation to the relevant
conduct is also a fact sensitive inquiry, requiring discovery. See Cabrera v. Jakabovitz, 24 F.3d 372, 386
(2d Cir. 1994)

August 15, 2008
Page 9

Renewed Motion to Dismiss. Accordingly, the *Federal Insurance* Plaintiffs request that the Court direct NCB to provide full and complete responses to that discovery. Upon completion of that written discovery, the *Federal Insurance* Plaintiffs request that the Court direct NCB to produce a company representative knowledgeable about the issues relevant to the scope of employment and attribution questions for deposition, pursuant to Fed. R. Civ. P. 30(b)(6).

For obvious reasons, Khalid bin Mahfouz and Yassin al Kadi also possess information and evidence relevant to the "scope of employment" and "attribution" disputes, and the jurisdictional contest relating to NCB more generally. As those defendants are no longer formally associated with NCB, discovery requests to NCB do not represent a viable means to develop the relevant information and evidence in possession of bin Mahfouz and al Kadi. Accordingly, the *Federal Insurance* Plaintiffs have served targeted discovery requests upon Khalid bin Mahfouz and Yassin al Kadi,[8] seeking relevant information and evidence in their possession concerning the NCB jurisdictional dispute, to include their roles in setting and implementing policies at NCB; their understanding of the nature of their duties and responsibilities at NCB; their involvement in channeling material support to al Qaida's charity fronts while employees and agents of NCB; their links to al Qaida and its charity fronts; and the relationship between NCB and al Qaida's charity fronts. Those discovery requests are attached as Exhibits "E" and "F" hereto.

Because the discovery sought from bin Mahfouz and al Kadi is also directly relevant to the NCB jurisdictional inquiry, the *Federal Insurance* Plaintiffs must be afforded an opportunity to obtain the requested discovery from those closely related defendants, before discovery as to NCB can properly be deemed "complete." Indeed, given the deeply inter-related nature of the theories of jurisdiction and liability advanced as to NCB, Khalid bin Mahfouz and Yassin al Kadi, the *Federal Insurance* Plaintiffs respectfully submit that all further proceedings as to those defendants should be conducted on a coordinated basis.[9] Accordingly, the *Federal Insurance* Plaintiffs respectfully request that the time for responding to NCB's renewed Motion to Dismiss be extended to a date sixty (60) days after the completion of jurisdictional discovery as to all three defendants.

---

[8] In addition to the referenced document requests, the *Federal Insurance* Plaintiffs have served Notices of Deposition upon Khalid bin Mahfouz and Yassin al Kadi.

[9] By singling out al Kadi and bin Mahfouz, the *Federal Insurance* Plaintiffs in no way mean to suggest that they are the only separate defendants with information and evidence relevant to NCB's jurisdictional defense. To the contrary, the theories of jurisdiction advanced as to NCB directly implicate many other defendants, to include the SJRC, IIRO, Wa'el Jelaidan, Abdulrahman bin Mahfouz, Suleiman al Rajhi and others. Under governing authority, these interrelationships may render it improper for the Court to entertain NCB's "Renewed Motion to Dismiss" until the completion of all relevant discovery, an argument the *Federal Insurance* Plaintiffs specifically preserve their right to advance. However, the *Federal Insurance* Plaintiffs are hopeful that the targeted discovery they seek herein will moot any such concerns. Ideally, discovery as to all defendants in the litigation would be proceeding on a coordinated basis in logical stages, to avoid these procedural complexities.

August 15, 2008
Page 10

_____

     **E.**      **The *Federal Insurance* Plaintiffs Are Entitled to the Discovery They Seek Concerning The Specifically Identified NCB Accounts, and the Operations of the Tahlia Branch of NCB**

       Based on sensitive investigative materials,[10] Plaintiffs have identified several specific NCB accounts, which they believe were used to facilitate particularized funding of Osama bin Laden. The available information indicates that senior officials of NCB worked with managers of NCB's Tahlia Branch to facilitate the sponsorship of al Qaida through these identified accounts. In addition, the relevant investigative materials indicate that the Saudi Ministry of the Interior and/or its subdivisions, the Office of the General Investigations Directorate (Mahabith), conducted an investigation relating, in whole or in part, to the activities of Khalid bin Mahfouz. On the basis of the information available to them, Plaintiffs have served discovery requests relating to these topics as well. See Exhibit "D" hereto. As the targeted requests in question seek particularized information relating to NCB's support for al Qaida, Plaintiffs respectfully request that the Court direct NCB to provide full and complete responses to those requests. Upon completion of that written discovery, plaintiffs request that the Court direct NCB to produce for deposition witnesses with knowledge concerning the accounts, transactions and investigations at issue. Notices have already been served for the depositions of two identified NCB representatives with knowledge relevant to those areas of inquiry.

     **F.**      **The *Federal Insurance* Plaintiffs Are Entitled to the Discovery They Seek Concerning the Character of NCB's Relationship With the Government of Saudi Arabia**

       Depending on the precise nature of the relationship between NCB and the Saudi government, the jurisdictional contacts of the government of Saudi Arabia may be attributable to NCB for purposes of establishing personal jurisdiction over NCB in the present case. For this reason, the *Federal Insurance* Plaintiffs are entitled to conduct discovery as to NCB's relationship to the Kingdom of Saudi Arabia, in relation to NCB's personal jurisdiction defense.

       Throughout the course of this litigation, NCB has maintained that it is owned by the Saudi government, and therefore an "agency or instrumentality" of the Kingdom. While it is true that agencies of a foreign government are entitled to a presumption of juridical independence, the presumption of juridical independence must be disregarded: (1) where "internationally recognized equitable principals mandate attribution to avoid injustice;" or (2) where "the corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created." First National City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 632 (1983) (Bancec). Where either of these circumstances apply, attribution of the contacts of the state to the agency, and vice versa, is appropriate. See First City, Texas-Houston, N.A. v. Rafidian Bank, 150 F.3d 172, 176 (2d Cir. 1998).

_____

[10] Due to the sensitive nature of the underlying materials, Plaintiffs do not believe it appropriate to submit them as attachments to this public filing. Plaintiffs are examining the proper method to share these materials with the Court within the next week.

August 15, 2008
Page 11
_____

     Consistent with the foregoing authorities, discovery concerning the character of NCB's relationship with the Saudi state may warrant attribution of the government of Saudi Arabia's contacts with the United States to NCB, a result which would invariably establish the availability of personal jurisdiction over NCB in the present action.  This suggestion is by no means fanciful.  Once again, NCB itself asserts that it is owned by the Saudi government, one of the factors relevant to the jurisdictional attribution analysis.  Moreover, NCB's website presently includes a statement strongly suggesting that the ownership of NCB, which according to NCB is the Saudi government, also directed the operations of the bank until the implementation of new corporate governance policies on January 1, 2006.  In particular, the website contains the following statement:

> On October 1, 2005, Mr. Abdul Kareem Abu al Nasr was appointed as General Manager and later assumed the Bank's first Chief Executive Officer (CEO) position on January 1, 2006 *after NCB had applied the principles of corporate governance to separate between ownership and management of the Bank.*

http://www.alahli.com/content/aboutncb.asp, Exhibit "G" hereto.

     In view of this statement from NCB's website, it appears that there was no distinction between the ownership and management of the Bank between 1999, when the Saudi government reorganized and took control of the institution, and January 1, 2006, when new corporate governance procedures were implemented to create independence between the ownership and management of the Bank.

     For all of the foregoing reasons, the *Federal Insurance* Plaintiffs are entitled to conduct discovery concerning the character of the relationship between NCB and the government of Saudi Arabia, in order to assess whether Saudi Arabia's contacts with the United States are attributable to NCB for purposes of the personal jurisdiction analysis.  Accordingly, the *Federal Insurance* Plaintiffs respectfully request that the Court direct NCB to provide full and complete responses to the *Federal Insurance* Plaintiffs' discovery requests concerning NCB's relationship with the government of Saudi Arabia.  Upon completion of that written discovery, the *Federal Insurance* Plaintiffs request that the Court direct NCB to produce a company representative knowledgeable about NCB's relationship with the Saudi government for deposition, pursuant to Fed. R. Civ. P. 30(b)(6).

    **G.**    **The *Federal Insurance* Plaintiffs Are Entitled to Depose the NCB Representatives Who Have Submitted Affidavits in Support of NCB's "Renewed" Motion to Dismiss**

     In support of its "Renewed" Motion to Dismiss, NCB has submitted affidavits of several officials and employees of the bank.  For the reasons set forth in the separate submissions of their Co-Plaintiffs, the *Federal Insurance* Plaintiffs respectfully submit that they are entitled to depose those NCB representatives, before responding to a Motion which invokes their testimony in support of the claims advanced against NCB.

August 15, 2008
Page 12

---

III.   **CONCLUSION**

For all of the foregoing reasons, the *Federal Insurance* Plaintiffs respectfully request that the Court:  (1) confirm their entitlement to conduct discovery relative to the relationships, activities and issues identified above; (2) direct NCB to provide full and complete responses to all of the *Federal Insurance* Plaintiffs' written discovery; (3) direct NCB to produce a corporate designee or designees for deposition concerning the facts relevant to the jurisdictional analysis, as outlined above, pursuant to Fed. R. Civ. P. 30(b)(6); (4) direct NCB to produce the employees and representatives who submitted affidavits in support of NCB's Motion to Dismiss for deposition; and (5) extend the deadline for responding to NCB's Renewed Motion to Dismiss to sixty days after the completion of all discovery relevant to the NCB jurisdictional analysis, to include discovery served upon closely related defendants Yassin al Kadi and Khalid bin Mahfouz.

Respectfully submitted,

COZEN O'CONNOR

BY:     SEAN P. CARTER

SPC/bdw
Enclosure
cc:     The Honorable George B. Daniels (Via Federal Express w/enc.)
        All counsel of Record (Via email w/enc.)

PHILADELPHIA\3792694\1  117430.000