# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

## THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE NATIONAL COMMERCIAL BANK

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
August 24, 2007

**THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO
THE NATIONAL COMMERCIAL BANK**

Plaintiffs in Federal Insurance Co. v. al Qaida, Case No. 03-CV-6978 (RCC), propound

and serve on the National Commercial Bank (hereinafter "Defendant"), the following

Jurisdictional Requests for Production of Documents to be answered fully and under oath,

pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.      In producing documents and other things, Defendant is requested to furnish all

documents or things in its possession, custody or control, regardless of whether such documents

or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys,

accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute

compliance with this request.  If any requested document or thing cannot be produced in full,

Defendant is requested to produce it to the extent possible, indicating which document or portion

of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each

document requested together with all non-identical copies and drafts of that document.  If the

original of any document cannot be located, an identical copy shall be provided in lieu thereof,

and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business and

the documents shall be organized and labeled to correspond to the categories in this request.  All

documents shall be produced in the file folder, envelope or other container in which the

documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.    Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.    Documents attached to each other should not be separated.

7.    If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.    Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.    Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.    If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

A.     The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

B.     The date of the document or transaction involving the information;

C.     The names of each author and any and all participants with respect to the information;

D.     The names of any and all signatories of the document, if any;

E.     The name of the document's current custodian;

F.     The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

G.     A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.     For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press.  In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this

action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

## DEFINITIONS

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.     The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

4.     The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv)

identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

5.     The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.     The term "Plaintiffs" shall refer to Plaintiffs in <u>Federal Insurance Co. v. al Qaida</u>, Civil Action No. 03-CV-6978 (RCC).

7.     The terms "Defendant," "You," "Your," and "NCB" shall refer to the National Commercial Bank and any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or representative acting on the National Commercial Bank's behalf.

8.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.     The term "person" is defined as any natural person or any business, legal or government entity or association.

10.     The term "party" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

11.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

12.     The terms "all" and "each" shall be construed as all and each.

13. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14. The use of the singular form of any word includes the plural and vice versa.

15. The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16. The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17. The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18.    The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19.    The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20.    The term "NCB Personnel" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, or other representative employed by National Commercial Bank and/or acting on National Commercial Bank's behalf.

21.    The term "deviant activity" shall mean and refer to any activity related to or associated with deviant ideologies, deviant thinking or deviant interpretations of Islam.  The terms "deviant ideologies," "deviant thinking," and "deviant interpretations of Islam" shall have the same meanings as when used by authorities of the government of the Kingdom of Saudi Arabia and/or Saudi religious authorities.  See *Interior Minister Urges Imams to Confront Deviant Ideologies*, June 21, 2007, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2007News/News/NewsDetail.asp?cIndex+7240; *Mosque Council Urges Confrontation of Deviant Thinking*, September 1, 2003, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2003News/News/IslDetail.asp?cIndex=762.

**THE FEDERAL INSURANCE PLAINTIFFS' FIRST SET OF JURISDICTIONAL
REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO
THE NATIONAL COMMERCIAL BANK**

1.      From the period beginning January 1990 through the present, please provide any
and all documents governing, describing, detailing, or otherwise relating to the relationship
between the National Commercial Bank ("NCB") and the Muwafaq Foundation (a/k/a "Blessed
Relief Foundation").

**ANSWER:**

2.      From the period beginning January 1990 through the present, please provide any
and all documents relating to the establishment, organization, funding, oversight, supervision,
management, and/or control of the Muwafaq Foundation, including without limitation,
appointment and termination of personnel, accounting, banking and financial transactions,
fundraising, and actual distribution of financial and non-monetary support to charitable
designees.

**ANSWER:**

3.      From the period beginning January 1990 through the present, please provide any
and all documents relating to the role of NCB in the establishment, organization, funding,
oversight, supervision, management, and/or control of the Muwafaq Foundation, including

without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

4.      From the period beginning January 1990 through the present, please provide any and all documents NCB sent to, and/or received from the Muwafaq Foundation, including without limitation, all documents relating to the transfer of NCB funds to the Muwafaq Foundation, and vice versa.

**ANSWER:**

5.      From the period beginning January 1990 through the present, please provide any and all documents relating to any contributions by NCB to the Muwafaq Foundation, including but not limited to, monetary donations, *zakat*, gifts, grants, and/or other charitable contributions. If the contribution was made by wire transfer, please provide records identifying the name of the individual who sent the money, the bank from which the money was sent, the wire transfer number, the recipient of the funds, the bank which received the wire transfer and the bank account numbers of the sender and receiver.

**ANSWER:**

6.      From the period beginning January 1990 through the present, please provide any and all documents relating to any form of non-monetary support or contribution provided by NCB to the Muwafaq Foundation, including but not limited to, any administrative assistance, any assistance in obtaining identification and credentials to facilitate international travel, and any physical and logistical assets.

**ANSWER:**

7.      From the period beginning January 1990 through the present, please provide all documents relating to any accounts the Muwafaq Foundation holds or has held at NCB.

**ANSWER:**

8.      From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi-based regulatory body, bank, financial institution, accountant, or auditor ("Saudi Investigator"), regarding any relationship between NCB and the Muwafaq Foundation, including without

limitation, any investigation relating to financial transactions between NCB and the Muwafaq Foundation.

**ANSWER:**

9.      From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States Investigator, any Foreign Investigator, or any Saudi Investigator, regarding any of the Muwafaq Foundation's accounts held at NCB.

**ANSWER:**

10.     Please provide any and all documents relating to any audit, analysis, examination, survey, or review of the Muwafaq Foundation's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by NCB or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

11.     Please provide all documents relating to any and all information or notification NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal, corrupt or deviant activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

12.     Please provide all documents relating to any and all information or notification NCB received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) providing funds, services, assets, medical assistance or any other form of support to mujihadeen in any part of the World; or (ii) providing financial, logistical, religious, political or any other form of assistance in relation to any armed jihad, regardless of whether such jihad was declared legitimate by competent religious authorities.

**ANSWER:**

13.     From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that the Muwafaq Foundation, including any individual or entity employed by and/or affiliated with the Muwafaq Foundation, was associated with or involved in any criminal,

corrupt, deviant, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

14.    Please provide all documents relating to the disposition of all of Muwafaq Foundation's accounts and assets held at NCB, following the Muwafaq Foundation's closure in 1996 or later.

**ANSWER:**

15.    From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between any NCB Personnel and the Muwafaq Foundation.

**ANSWER:**

16.    From the period beginning January 1990 through the present, please provide any and all documents relating to the role of any NCB Personnel in the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including without limitation, appointment and termination of personnel, accounting, banking and

financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

17.     From the period beginning January 1990 through the present, please provide any and all documents relating to any contributions by any NCB Personnel to the Muwafaq Foundation, including but not limited to, monetary donations, *zakat*, gifts, grants, and/or other charitable contributions.  If the contribution was made by wire transfer, please provide records identifying the name of the individual who sent the money, the bank from which the money was sent, the wire transfer number, the recipient of the funds, the bank which received the wire transfer and the bank account numbers of the sender and receiver.

**ANSWER:**

18.     From the period beginning January 1990 through the present, please provide any and all documents relating to any form of non-monetary support or contribution provided by any NCB Personnel to the Muwafaq Foundation, including but not limited to, any administrative assistance, any assistance in obtaining identification and credentials to facilitate international travel, and any physical and logistical assets.

**ANSWER:**

19.     From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any U.S. Investigator, any Foreign Investigator, and/or any Saudi Investigator regarding any relationship between any NCB Personnel and the Muwafaq Foundation, including without limitation, any investigation relating to financial transactions between NCB Personnel and the Muwafaq Foundation.

**ANSWER:**


20.     From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Khalid Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**


21.     From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Yassin Abdullah Al Kadi, a Specially Designated Global Terrorist pursuant to Executive Order 13224, and the Muwafaq Foundation.

**ANSWER:**

22.     From the period beginning January 1990 through the present, please provide all documents relating to any transactions, financial or otherwise, between Abdulrahman Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**

23.     From the period beginning January 1990 through the present, please provide any and all documents governing, describing, detailing, or otherwise relating to the relationship between and among Khalid Bin Mahfouz, Yassin Abdullah Al Kadi, Abdulrahman Bin Mahfouz and the Muwafaq Foundation.

**ANSWER:**

24.     From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Khalid Bin Mahfouz account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Bin Mahfouz holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Bin Mahfouz holds or has held a beneficial interest, and/or any NCB accounts over which Bin Mahfouz holds or has held signatory authority.

**ANSWER:**

25.    From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Yassin Abdullah Al Kadi account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Al Kadi holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Al Kadi holds or has held a beneficial interest, and/or any NCB accounts over which Al Kadi holds or has held signatory authority.

**ANSWER:**

26.    From the period beginning January 1990 through the present, please provide all documents relating to the transfer of funds from any Abdulrahman Bin Mahfouz account to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any accounts Bin Mahfouz holds or has held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which Bin Mahfouz holds or has held a beneficial interest, and/or any NCB accounts over which Bin Mahfouz holds or has held signatory authority.

**ANSWER:**

27.    From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any U.S. Investigator, and Foreign Investigator, and/or any Saudi Investigator regarding any alleged

improprieties relating to the transfer of funds from any NCB account identified in Requests # 24-26.

**ANSWER:**

28.     From the period beginning January 1990 through the present, please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States Investigator, any Foreign Investigator, and/or any Saudi Investigator relating to Khalid Bin Mahfouz, Yassin Abdullah Al Kadi, and Abdulrahman Bin Mahfouz.

**ANSWER:**

Respectfully submitted,

COZEN O'CONNOR

Dated: August 24, 2007                     By: _____
Stephen A. Cozen, Esq.
Elliott R. Feldman, Esq.
Sean P. Carter, Esq.
Adam C. Bonin, Esq.
J. Scott Tarbutton, Esq.
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2000
Fax: (215) 665-2013

Attorneys for *Federal Insurance* Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the *Federal Insurance* Plaintiffs' First Set of

Jurisdictional Requests for Production of Documents Directed to the National Commercial Bank

were served via electronic mail and U.S. first-class mail, postage prepaid, this 24th day of

August 2007, upon:

Ronald S. Liebman, Esq.
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C. 20037-1350

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(Defendants' Executive Committee's appointed representative to receive discovery
requests and responses in 03-MDL-1570)

J. Scott Tarbutton, Esq.

PHILADELPHIA\3318102\1 117430.000