UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | ) <br> ) <br> ) <br> ) 03 MDL 1570 (GBD) <br> ) ECF Case <br> ) <br> ) <br> ) |

This document relates to:
*Burnett v. Arab Bank, PLC*, 03-cv-9849
*Federal Insurance Co. v. Al Qaida*, 03-cv-6978
*O'Neill v. Al Baraka Investment & Devel. Corp.*, 04-cv-01923
*Continental Casualty Co. v. Al Qaeda*, 04-cv-05970
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-cv-06105
*Cantor Fitzgerald & Co. v. Akida Bank Private Limited*, 04-cv-07065
*Euro Brokers Inc. v. Al Baraka Investment & Devel. Corp.*, 04-cv-07279
*World Trade Center Properties LLC v. Al Baraka Investment & Devel. Corp.*, 04-cv-07280

**MEMORANDUM OF LAW IN SUPPORT OF DUBAI ISLAMIC BANK'S
MOTION FOR CERTIFICATION OF APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

Pursuant to 28 U.S.C. Section 1292(b) ("Section 1292(b)"), Dubai Islamic Bank ("DIB") submits this memorandum of law in support of its motion for certification of appeal from this Court's June 17, 2010 Order (03-md-1570, Docket #2252) ("Order") denying DIB's Motion to Dismiss (03-md-1570, Docket #955) ("Motion to Dismiss"). The reasons for granting leave to appeal are set forth below.

## INTRODUCTION

DIB respectfully moves this Court to certify for interlocutory appeal its June 17, 2010 Order denying in part DIB's motion to dismiss Plaintiffs' claims for relief pursuant to the Anti-Terrorism Act and certain common law causes of action.[1]  In that Order, this Court found in part that DIB was subject to the exercise of specific personal jurisdiction and that Plaintiffs had properly alleged causation.  These two issues are especially appropriate for an interlocutory appeal because, as Section 1292(b) requires, each involves a "controlling question of law as to which there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Indeed, this Court has wrestled with these issues for many years since the filing of these cases.

## BACKGROUND

In the wake of the September 11, 2001 attacks, Plaintiffs filed eight complaints alleging that DIB,[2] through its provision of banking services, was liable under the federal Anti-Terrorism Act or a variety of state tort laws.[3]  Plaintiffs alleged that DIB contributed to the terrorists attacks by "providing financial facilities and support to terrorists, including those involved in the September 11, 2001 attacks."  Burnett II Compl. at ¶ 115 (02-cv-1616, Docket #4), O'Neill

---

[1] These include negligence, negligent/intentional infliction of emotional distress, wrongful death, survival, trespass, willful destruction of property and contribution and indemnity.

[2] Plaintiffs include individuals or relatives of individuals killed in the September 11, 2001 attacks, property owners whose property was damaged in the attacks and insurance companies who paid out claims as a result of the attacks.

[3] The eight cases are (1) Burnett v. Arab Bank, PLC, 02-cv-1616 ("Burnett II"); (2) Federal Insurance Co. v. Al Qaida, 03-cv-6978 ("Federal Insurance"); (3) O'Neill v. Al Baraka Investment & Devel. Corp., 04-cv-01923 ("O'Neill"); (4) Continental Casualty Co. v. Al Qaeda, 04-cv-05970 ("Continental Casualty"); (5) New York Marine & Gen. Ins. Co. v. Al Qaida, 04-cv-06105 ("NY Marine"); (6) Cantor Fitzgerald & Co. v. Akida Bank Private Limited, 04-cv-07065 ("Cantor Fitzgerald"); (7) Euro Brokers Inc. v. Al Baraka Investment & Devel. Corp., 04-cv-07279 ("Euro Brokers"); and (8) World Trade Center Properties LLC v. Al Baraka Investment & Devel. Corp., 04-cv-07280 ("WTC Properties").

Compl. at ¶ 56 (04-cv-01923, Docket #1570), Federal Insurance Compl. at ¶ 344 (03-cv-6978, Docket #111), Cantor Fitzgerald Compl. at ¶ 137 (04-cv-07065, Docket #5).  Specifically, Plaintiffs claim that DIB allowed Mustafa Ahmed al-Hisawi[4] to transfer money "to hijackers Marwan al-Shehhi[5] and Mohammed Atta[6] since at least June 2000," WTC Properties Compl. at ¶ 255 (04-cv-07280, Docket #1), and that DIB had been warned that it was financing terrorism by the U.S. State Department and the U.S. Central Intelligence Agency.  Burnett II Compl. at ¶ 114, Cantor Fitzgerald Compl. at ¶ 138.  Plaintiffs seek monetary damages as compensation for their harm.

DIB moved to dismiss Plaintiffs' claims on May 27, 2005, including on the basis that the Court lacked jurisdiction over DIB and that Plaintiffs failed to state a claim upon which relief could be granted.  Memorandum in Support of Motion to Dismiss (03-md-1570, Docket #956) ("Memorandum" or "Mem.").  In particular, DIB sought dismissal because it was not amenable to personal jurisdiction in the United States, Memorandum at 20-25, and because Plaintiffs failed to adequately allege that DIB proximately caused their injuries.  Memorandum at 11-12.[7]

In response to the challenge to personal jurisdiction, this Court found that Plaintiffs' allegations could be read to allege that DIB knowingly provided material support to al Qaeda with the "knowledge that the United States and its residents would likely bear the brunt of the

---

[4]  Alleged to be a member of al Qaeda and to have organized and financed the September 11, 2001 attacks.

[5]  The hijacker-pilot who crashed United Airlines Flight 175 into the second World Trade Center tower on September 11, 2001.

[6]  The alleged ringleader of the hijackers in the September 11 attacks.

[7]  In addition, DIB asserted that it lacked the requisite knowledge to be liable, Memorandum at 5, 12-13; and that Plaintiffs failed to allege one or more elements of each of the remaining causes of action or that the relevant statute of limitations had elapsed.  Memorandum at 13-19.  The Court concluded that Plaintiffs had sufficiently alleged DIB's knowledge, but dismissed certain other claims as time-barred, or for failure to state a claim.  Order at 56-60.

resulting injuries." Order at 50. The Court then found that "[s]ince plaintiffs' claimed injuries are related to DIB's alleged tortious conduct, the requirements for the exercising of specific jurisdiction are satisfied." *Id.*

The Court also found that Plaintiffs had adequately alleged causation. The Court noted that "traditional tort causation requires a sufficient showing that the alleged wrongdoing was a substantial factor in leading to the injury, that the injury was directly related to the wrongdoing, and [that] the injury was reasonably foreseeable." Order at 55. This Court, however, found that "in actions arising from a terrorist attack, the proximate cause element is relaxed." Order at 55. This Court then held that Plaintiffs had sufficiently alleged proximate causation because "an articulable nexus exists between the wire transfer services allegedly provided by DIB to al Qaeda and the specific terrorist attacks that give rise to plaintiffs' claims against DIB." Order at 56.

## ARGUMENT

DIB seeks certification of at least two challenging issues for interlocutory appeal:

1. Whether this Court can exercise personal jurisdiction over DIB; and
2. Whether Plaintiffs properly have alleged causation.

Section 1292(b) sets forth a three-part test for the certification of an interlocutory appeal:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). In short, an interlocutory appeal may be certified if the issue involves (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion and; (3) that an immediate appeal may materially advance the ultimate termination of the litigation.

Although piecemeal litigation is generally disfavored, district courts have repeatedly certified denials of motions to dismiss where Section 1292(b)'s criteria have been met. *See, e.g.*, *In re Ambac Financial Group, Inc. Securities Litigation*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (noting appeal proper when a case "present[s] difficult questions of substantive law"); *Mullins v. City of New York*, No. 04 Civ. 2979 (SAS), 2008 WL 118369, *3 (S.D.N.Y. Jan. 10, 2008); *Republic of Colombia v. Diageo North America Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (noting that interlocutory appeal was "most efficient means of advancing or disposing of the litigation"); *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 314 (S.D.N.Y. 2007); *Klein v. Vision Lab Telecommunications, Inc.*, 399 F. Supp. 2d 528, 537 (S.D.N.Y. 2005). This case likewise presents a compelling case for an interlocutory appeal because the two legal issues go to the core of the proceedings against DIB and present legal issues that are subject to a difference of opinion. As set forth more fully below, the three-part test of Section 1292(b) is satisfied and DIB should be permitted to pursue an immediate appeal.

**I.      THE ISSUES BOTH INVOLVE CONTROLLING QUESTIONS OF LAW.**

The issues DIB seeks to raise on appeal are plainly controlling issues of law. "[T]he 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F.Supp.2d 305, 309 (S.D.N.Y. 2007). A legal issue is controlling where a contrary decision by the court of appeals would "result in dismissal of the action … [or] significantly affect the conduct of the action." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000); *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 54-55 (S.D.N.Y. 1998).

Here, both the jurisdiction and causation issues satisfy the above criteria. Both issues are legal issues that can be determined after a review of a discrete set of allegations in the complaints.

Moreover, a contrary result on either issue would lead to dismissal of all eight cases against DIB. If the Court of Appeals were to find a lack of specific personal jurisdiction, the case would be dismissed under Rule 12(b)(2). Likewise, because all of Plaintiffs' remaining causes of action against DIB require a showing of proximate causation, a contrary holding on that issue would result in the dismissal of the remaining causes of action against DIB under Rule 12(b)(6).

## II. THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION REGARDING THIS COURT'S FINDINGS OF JURISDICTION AND CAUSATION.

To establish a "substantial ground for difference of opinion," there must be "substantial doubt that the district court's order was correct." *Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008) (internal quotations omitted); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005). Evidence of a substantial ground for difference of opinion includes contrary decisions of other courts and other persuasive authority. *See e.g., Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F.Supp.2d 305, 309 (S.D.N.Y. 2007) (finding "substantial ground for a difference of opinion" "because there are conflicting Second Circuit statements on this very issue"). Furthermore, "this element is satisfied where the issues are difficult and of first impression." *Republic of Colombia v. Diageo North America Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007). The issues of personal jurisdiction and causation meet this test.

### A. There Is Substantial Ground For Difference Of Opinion Regarding Whether DIB Is Subject To Personal Jurisdiction.

In its Memorandum, DIB argued that it is not subject to personal jurisdiction because DIB is not amenable to jurisdiction under any rule or statutory provision and, even if it were, the

exercise of personal jurisdiction over DIB would violate due process.[8]  Mem. at 19-23.  In particular, DIB explained why its role as a correspondent bank in wire transfers did not comport with the minimum contacts requirement of the federal Due Process Clause.  Mem. at 19, 21-23.

This Court held that DIB was susceptible to personal jurisdiction because "the allegations indicate that DIB was an intentional, knowing and direct participant in providing money laundering services to al Qaeda, which allowed for direct funding of terrorist attacks."  Order at 49.  The Court cited allegations that (1) in 1999, DIB provided banking services for al Qaeda; and (2) U.S. government officials visited the United Arab Emirates "to put a halt to such a relationship."  Order at 48.  Based on these allegations in the Complaint, the Court ruled that DIB had the requisite minimum contacts:

> It can be reasonably inferred, from the allegations pled, that DIB personally and intentionally provided material support to al Qaeda in aid of al Qaeda's plan to commit an aggressive terrorist strike against the United States, with knowledge that the United States and its residents would likely bear the brunt of the resulting injuries.  Since plaintiffs' claimed injuries are related to DIB's alleged tortious conduct, the requirements for the exercising of specific jurisdiction are satisfied.

Order at 50.

DIB respectfully submits that substantial grounds exist for a difference of opinion on whether a foreign-owned and foreign-operated bank is subject to *in personam* jurisdiction when the actions of wire-transfer recipients cause an injury within a State.  The resolution of this issue involves, among other questions, an important question of purposeful availment.  The requirement of "minimum contacts must have a basis in some act by which the defendant

---

[8] In its Order, the Court does not address whether personal jurisdiction over DIB rests upon the New York long arm statute, the Federal long arm statute, or Fed. R. Civ. P. 4(k)(2).  However, as set forth in DIB's motion to dismiss, the allegations against DIB do not satisfy Federal or New York long-arm requirements.

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted) (emphasis added).

When applying this standard to facts similar to those at issue here, a number of courts have held that the exercise of personal jurisdiction would violate due process. For example, in *In re: Terrorist Attacks on September 11, 2001*, the court stated that plaintiffs must make a prima facie showing of defendant's "personal or direct participation in the conduct giving rise to Plaintiffs' injuries." 349 F. Supp. 2d 765, 809 (S.D.N.Y. 2005) (interpreting *Calder v. Jones*, 465 U.S. 783 (1984), to require primary participation in wrongdoing causing harm to satisfy minimum contacts requirement). Applying a minimum contacts standard of "primary participa[tion] in intentional wrongdoing," the court refused to find personal jurisdiction over a defendant that did not participate directly in the terrorist attacks that gave rise to plaintiffs' claims, despite allegations that defendant "knew and intended that the contributions he made to various charities would be used to fund al Qaeda and international terrorism" and that the record "contains many examples of Osama bin Laden's and al Qaeda's public[ly] targeting the United States." *Id*. at 784, 813; *see also Burnett v. Al Baraka Investment & Development Corp.*, 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003) (employing the same rationale to dismiss same defendant from substantially similar case pending in the U.S. District Court for the District of Columbia).

On appeal, the Second Circuit affirmed the district court's dismissal for lack of jurisdiction noting that "plaintiffs rely on a causal chain to argue a concerted action theory of liability: [defendants] supported Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks." The court held:

> Even if [defendants] were reckless in monitoring how their donations were spent, or could and did foresee that recipients of their donations would attack targets in the United States, that would be insufficient to ground the exercise of personal jurisdiction.…
>
> ....
>
> …Even assuming that [defendants] were aware of Osama bin Laden's public announcements of jihad against the United States and al Qaeda's attacks on the African embassies and U.S.S. Cole, their contacts with the United States would remain far too attenuated to establish personal jurisdiction in American courts. It may be the case that acts of violence committed against residents of the United States were a foreseeable consequence of the [defendant's] alleged indirect funding of al Qaeda, but foreseeability is not the standard for recognizing personal jurisdiction. Rather, the plaintiffs must establish that [defendants] "expressly aimed" intentional tortious acts at residents of the United States. Providing indirect funding to an organization that was openly hostile to the United States does not constitute this type of intentional conduct. In the absence of such a showing, American courts lacked personal jurisdiction over [defendants].[9]

*In re: Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 94-95 (2d Cir. 2008) (citing *Calder*, 465 U.S. at 789), *rev'd* on other grounds, --- U.S. ---, 130 S.Ct. 2278 (2010).

Similarly, in *Tamam v. Fransabank SAL*, the court refused to exert personal jurisdiction over five foreign banks accused of providing terrorist financing for conspiring with, and aiding and abetting, the terrorist acts of a known terrorist organization (Hizbullah). 677 F. Supp. 2d 720 (S.D.N.Y. 2010). Plaintiffs' claims were based on an alleged "long causal chain" linking Hizbullah missile attacks to a series of money transfers by defendants. *Id*. at 725. The court

---

[9] Moreover, another court in this District has held that personal jurisdiction cannot be asserted absent "personal involvement in the events giving rise to [plaintiff's] claims." *Time v. Simpson*, No. 02 Civ. 4917 (MBM), 2003 WL 23018890, *5 (S.D.N.Y. Dec. 22, 2003). In that case, involving claims by a magazine against defendants engaged in unauthorized solicitations of subscriptions, the court found no personal jurisdiction over the principal, despite his knowledge of the prohibited acts. Although the acts may have been foreseeable to the principal, the court ruled that "foreseeability, however, is not sufficient to establish personal jurisdiction." *Id.* at *7.

explained that "Plaintiffs here had no association with the money transferred, and they suffered no financial loss as a result of the services provided in New York. It is clear that the events giving rise to the physical injuries and deaths for which Plaintiffs seek redress are missile attacks in Israel, not funds transfers in New York." *Id*. at 728. The court held therefore that minimum contacts were not satisfied absent "<u>direct</u> United States contact other than the use of correspondent bank account[s]." *Id*. at 732 (emphasis added) (quoting *Int'l Housing Ltd. v. Rafidain Bank Iraq*, 712 F. Supp. 1112, 1119 (S.D.N.Y. 1989)), *rev'd* on other grounds, 893 F.2d 8 (2d Cir. 1989). Indeed, these cases are consistent with another case in which courts have found that merely engaging a correspondent bank to consummate wire transfers to the United States does not satisfy the minimum contacts requirement unless the dispute relates to the wire transfer itself. *Leema Enterprises, Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y 1983) (holding "mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers … is not enough to confer this court with personal jurisdiction over the defendant, especially where, as here, the accounts are unrelated to the fraud alleged").

Here, DIB is not alleged to have "'expressly aimed' intentional tortious acts at residents of the United States." *In re: Terrorist Attacks on September 11, 2001*, 538 F.3d at 95. Rather, this Court has explained that Plaintiffs have alleged that DIB assisted with wire transfers knowing that those transfers involved terrorists. Based upon the reasoning of the cases discussed above, however, that knowledge does not convert the financial services DIB allegedly provided into sufficient minimum contacts such that this Court can assert specific jurisdiction. In light of this substantial ground for difference of opinion, DIB respectfully requests that this Court certify this issue for appeal.

### B. There Is Substantial Ground For Difference Of Opinion Regarding Whether Plaintiffs Properly Alleged Proximate Cause.

DIB also sought dismissal on the grounds that Plaintiffs failed to allege proximate causation. Mem. at 11-12. Plaintiffs did not dispute that each of the causes of action requires a showing of proximate cause.[10] Instead, this Court found that Plaintiffs' allegations satisfied proximate cause because "in actions arising from a terrorist attack, the proximate cause element is relaxed." Order at 55.

In complex events such as the attacks of September 11, 2001, however, another court may reasonably conclude that the demands of proximate cause should not be relaxed. In fact, in interpreting statutes analogous to the Anti-Terrorism Act, other federal courts have imposed a much more stringent test of proximate causation. For example, other federal civil causes of action that similarly employ the injury "by reason of" language of the Anti-Terrorism Act require "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *See Holmes v. SIPC*, 503 U.S. 258, 267-268 (1992) (noting the requirement in the civil liability provisions of both RICO and the Clayton Act).[11] Indeed, the

---

[10] Under the ATA, courts have held that a plaintiff must allege a sufficient causal connection (proximate cause) "between that support [for terrorists] and the injuries suffered by Plaintiffs." *In re: Terrorist Attacks on September 11, 2001*, 464 F. Supp. 2d 335, 340 (S.D.N.Y. 2006) (internal citations omitted). Moreover, courts have held that under New York law, a plaintiff alleging aiding and abetting of the commission of a tort must show both "'substantial assistance' by the aider and abettor in the achievement of the primary violation" and that "the injury was the direct or reasonably foreseeable result of the aiding and abetting conduct." *Oei v. Citibank, N.A.*, 957 F. Supp. 492, 520 (S.D.N.Y. 1997) (quoting *Morin v. Trupin*, 711 F. Supp. 97, 112 (S.D.N.Y. 1989)). Finally, claims involving negligence require Plaintiffs to allege "that the plaintiff suffered damages as a proximate result of [a] breach" of duty. *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997).

[11] The Anti-Terrorism Act provides a private right of action to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C § 2333 (emphasis added). Similarly, the Clayton Act permits "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to recover civilly. 15 U.S.C. § 15 (emphasis added). The RICO Act likewise permits civil recovery for injuries to "business or property by reason of a violation of [RICO]." 18 U.S.C. § 1964 (emphasis added).

Supreme Court has recently explained that the federal causation standard in such a statute is stringent. Specifically, in *Anza v. Ideal Steel Supply Corp.*, the Supreme Court held that "[t]he cause of [Plaintiff's] asserted harms … [was] a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)," and thus too attenuated to support proximate cause. 547 U.S. 451, 458 (2006). In emphasizing the importance of the element of proximate causation, the Court cited the "difficulty that can arise when a court attempts to ascertain the damages caused by some remote action," the possibility that the plaintiff's injuries "resulted from factors other than petitioners' alleged acts," and the "risk of duplicative recoveries." *Id.* at 458-59.

Likewise, under New York law, proximate cause is demanding: a plaintiff must allege that the "defendant's actions were a substantial factor in the sequence of responsible causation, and plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence." *McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) (internal quotations omitted). Whether a defendant's actions may be considered a "substantial factor" in causing a plaintiff's injury depends on "the aggregate number of factors involved which contribute toward the harm and the effect each had in producing it; whether the defendant had created a continuous force active up to the time of the harm, or whether the situation was affected by other forces for which the defendant was not responsible; and the lapse of time." *Baptiste v. New York City Transit Authority*, 28 A.D.3d 385, 386 (N.Y. App. Div. 2006).

Here, another court may reasonably conclude that not all of the thousands of acts committed by hundreds of defendants were the proximate cause of Plaintiffs' injuries. Indeed, other courts have found proximate cause lacking where a number of factors were alleged to have caused a plaintiff's injury. For example, in *Canyon County v. Syngenta Seeds, Inc.*, a county in

Idaho sued four companies, alleging that they hired undocumented workers in violation of RICO. The County claimed that it was injured through the additional monies that it "expended on public health care and law enforcement services for undocumented immigrants." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 971 (9th Cir. 2008). The Ninth Circuit rejected that claim, holding that the "causal chain" between the RICO violation (hiring undocumented immigrants) and the plaintiff's harm (increased use of Canyon County's public assistance and criminal justice systems) was "quite attenuated, and there are numerous other factors that could lead to higher expenditures by the County." *Id.* at 982. For example, the court found:

> [N]umerous alternative causes … might be the actual source or sources of the County's alleged harm. Increased demand for public health care and law enforcement may result from such varied factors as: demographic changes; alterations in criminal laws or policy; changes in public health practices; shifts in economic variables such as wages, insurance coverage, and unemployment; and improved community education and outreach by government.

*Id.* at 983. As a result of all of these possible causes, the Ninth Circuit refused to find that plaintiff had alleged that the defendants proximately caused the injury.

Similarly, an extended theory of causation was rejected in *Hemi Group, LLC v. City of New York, N.Y.*, --- U.S. ---, 130 S.Ct. 983, 989 (2010). In that case, New York City sought to recover under RICO against cigarette retailers and affiliates for the retailers' failure to file with New York records of tax-free cigarette purchases as required by state statute. The City claimed that it was damaged in the form of lost tax revenue from cigarette purchasers. *Id.* The Supreme Court rejected that theory of proximate causation, because the City could not plausibly claim that the defendants' "failure to file [reports] with the state led directly to its injuries." *Id.* at 992. Rather, the "taxpayers here only cause harm to the City in the first place if they decided not to pay taxes as they were legally obligated to pay. Put simply, [defendants'] obligation was to file

[reports] with the State, not the City, and the City's harm was directly caused by the customers, not [defendants]." *Id.* at 990. The Court found that although the alleged acts "made it easier for a fourth party (the taxpayer) to cause harm to the plaintiff (the City)," this did not amount to proximate cause. *Id.* at 990. The Court held that "multiple steps … separated the alleged fraud from the asserted injury," particularly given that "the City's theory of liability rest[ed] on independent actions of third and even fourth parties." *Id.* at 986. Likewise, in this case, another court may conclude that "the conduct directly causing the harm" was the act of terrorism committed by al Qaida.

Because substantial grounds for difference of opinion exist as to both whether DIB is amenable to personal jurisdiction and whether it proximately caused Plaintiffs' injuries, these issues are ripe for interlocutory appeal.

### III.     AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

The third prong, advancement of the ultimate termination of the litigation, is satisfied if the "appeal promises to advance the time for trial or to shorten the time required for trial." *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 74 (quoting *Transport Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)). An appellate ruling in favor of DIB on either personal jurisdiction or proximate cause would result in the dismissal of the case against DIB and remove the need for further inquiry, discovery, and proof regarding the actions of DIB—all of which will be time consuming and complex. To assist in simplifying this litigation, DIB respectfully requests this court certify its appeal.

## **CONCLUSION**

      For the reasons set forth above, DIB respectfully requests that the Court grant its motion for certification to appeal.

DATED:  August 16, 2010          Respectfully submitted,

                                          /s/ Robert G. Houck
                                          Robert G. Houck
                                          Juan P. Morillo (pending submission of *pro hac vice*)
                                          Steven T. Cottreau (pending submission of *pro hac vice*)
                                          CLIFFORD CHANCE U.S. LLP
                                          31 West 52nd Street
                                          New York, New York 10019-6131
                                          Telephone: (212) 878-8000

                                          *Counsel for Defendant Dubai Islamic Bank*