

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

    *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-9849 (S.D.N.Y.)
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 1:02-6977 (S.D.N.Y.)
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
*Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
*New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
*World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

## AFFIDAVIT OF YVES BRUDERLEIN

I, Yves Bruderlein, state under penalty of perjury as follows:

1. I am a Swiss citizen, born in Geneva on 24 July 1953, Swiss domiciled and currently resident at 1 Place du lac, CH 1296 Coppet. I qualified as a lawyer in 1985. I am a member of the Geneva Bar Association and am a partner of the law firm Bruderlein and Berthoud, 14 Rue de la Corraterie, CH 1211 Geneva 11, Switzerland.

2. I am, and since its inception have been, a director of Cambridge Engineering Systems Limited ("Cambridge Engineering"), a Cayman company. I am personally familiar with its activities and the matters described below.

3. Cambridge Engineering was established in 1991 as a vehicle to make and hold investments. Cambridge Engineering's principal focus has been leveraged

FARDM1-259172.1

investments in hedge fund products offered by major financial institutions, including Deutsche Bank.

4. Cambridge Engineering is not now and never has been a subsidiary of the Saudi Binladin Group ("SBG"). It has no individual persons as shareholders and is indirectly owned by SBG and its Chairman.

5. Safron Partners is not now and never has been a shareholder of Cambridge Engineering, nor does it own any direct or indirect beneficial interest in Cambridge Engineering. Plaintiffs' characterization of Safron Partners as a "Cambridge shareholder" is false. Likewise, Cambridge Engineering owns no interest in Safron Partners and has never owned any such interest.

6. Cambridge Engineering does not now have, and never has had, a "New York branch," as alleged by plaintiffs. Its registered offices have at all times been located in the Cayman Islands and its directors are based in Geneva. It has no employees and no premises.

7. Cambridge Engineering had a banking relationship in the 1990's with Bankers Trust, which was subsequently acquired by Deutsche Bank. In April 1996 it opened an account with Bankers Trust AG, Geneva. The company's relationship with Deutsche Bank in Switzerland grew and as a consequence since the summer of 1999, its principal banking relationship has been with Deutsche Bank in Geneva, although the bank may, for its own internal purposes, book various loans and accounts in other branches.

8. Together with the directors of Cambridge Engineering, Bakr Binladin has signing powers over the Deutsche Bank bank accounts. Omar Binladin was once an authorized signatory on the Bankers Trust bank account, but is no longer an

account signatory. Tariq Binladin is not now and never has been an authorized signatory on the bank accounts.

9. There has never been any transfer from the Cambridge Engineering bank accounts of any amount to any account in Pakistan. There has never been any transfer of any amount to any account in the name of Osama Bin Laden or any person or entity whom I had any reason to believe was associated with him or with al Qaeda. Plaintiffs' allegation that $300 million (or any other amount) was transferred through the Deutsche Bank accounts in 2000 to accounts in Pakistan "belonging jointly to Osama Bin Laden and a person of Pakistani nationality" is completely false.

10. On 9 October 2001, I was summoned for an interview and provided account records to representatives of the Swiss prosecutors' office in Bern regarding the activities of Cambridge Engineering. I understood at the time that the Swiss authorities were conducting an investigation into possible sources of funding for Osama Bin Laden both on their own behalf and in response to an inquiry from the United States Department of Justice. I subsequently agreed to a request by the Swiss authorities for authorization to provide a signed copy of the minutes of the interview to the U.S. Department of Justice.

11. I have seen a copy of U.S. court filings entitled RICO Statement Applicable to Saudi Binladin Group ("SBG RICO Statement") and RICO Statement Applicable to Bakr Binladin, Tariq Binladin and Omar Binladin ("Bakr, et al RICO Statement"), both of which were filed in *World Trade Center Properties L.L.C., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.). Certain portions of the text, specifically pages 10-11 of the SBG RICO Statement and pages 21-22 of the Bakr et al RICO Statement, quote selectively and inaccurately from a poor translation of the statement I gave to the Swiss authorities in

October 2001. That statement was confidential under Swiss law, and I have never authorized its release to plaintiffs.

12. In their purported quotations from my statement, plaintiffs omit statements that undermine their claims, such as my statements that Cambridge Engineering had no dealings with Yeslam Binladin or any of his companies, had no dealings with Osama Bin Laden, and never made a payment for the benefit of al Qaeda. They also mischaracterize my testimony and misleadingly collapse my answers to multiple, distinct questions into a single quote without identifying the question being answered. For example, the WTC plaintiffs' RICO Statement states:

> Yves Bruderlerin[sic], the director of Cambridge Engineering, Ltd., a SBG subsidiary suspected of having financial connections to Osama Bin Laden and al Qaeda, notes substantial financial connections between Bakr, Omar and Tarek Bin Laden, as leaders of the Bin Laden family financial empire, and SDGT Bank al Taqwa.
>
> **Q: Do you have connections with the company known as Al - Taqwa Bank owned by [SDGT Youseff] Nada?**
>
> A. No. There are important transfers of several million dollars, but they are always transfers within the Saudi Binladin Group or its subsidiary companies or with the profits of its leaders. .

WTC RICO Statement (Bakr, et al) at 21-22. In fact, my statement to the Swiss authorities states as follows:

> **Do you have or have you ever had any dealings with a company based in Lugano known as Al - Taqwa, renamed Nada?**
>
> No.
>
> **Have any of the transactions which the Saudi Bin Laden Group has asked you to perform ever seemed strange to you?**
>
> No. There are often large transfers of funds amounting to several million dollars, but these are always transfers

within the Saudi Bin Laden Group or its subsidiaries or for the benefit of its bosses. *I have not witnessed any suspicious transactions.* (Emphasis added).

Plaintiffs' claims that I acknowledged any dealings between Omar, Tariq or Bakr Binladin and Al - Taqwa Bank is thus a complete fabrication. An English translation of my statement to the Swiss authorities is attached as Exhibit 1.

13. I am informed and believe that the Swiss authorities closed their investigation of Cambridge Engineering several years ago. Although my interview statement was provided to the U.S. Department of Justice approximately four years ago, I have been asked no follow-up questions, and I have not seen any evidence that the U.S. government has any continuing interest in that company.

14. Cambridge Engineering has never been charged by any government with having engaged in any wrongdoing of any kind. The assets of its accounts have never been frozen or seized, nor has the company been designated by any government on any list of organizations associated with terrorism. I would never remain associated as a director with any entity that I suspected or believed had any connection whatsoever to terrorism, and I can state categorically that Cambridge Engineering has never been involved in any transaction that was intended to support terrorism of any kind.

_____
YVES BRUDERLEIN

Sworn to before me this
24th day of January 2006

Me Jacques WICHT
Notary Public
My Commission Expires Is Unlimited

FARDM1-269172.1

- 5 -

# Exhibit 1

THE OFFICE OF THE SWISS FEDERAL PUBLIC PROSECUTOR
Taubenstrasse, 3003 Bern, Switzerland

BA/032/01BTE

Bern, 9 October 2001

## MINUTES OF A WITNESS STATEMENT

In response to a written subpoena dated 5 October 2001, the following person appeared at the office of the Swiss Federal Public Prosecutor:

### Yves BRÜDERLEIN
Date of birth: 24/07/1959
Place of origin: Geneva, Switzerland and Coppet/VD, Switzerland
Occupation: lawyer and member of the Bar of Geneva, Switzerland
Domicile: 1, place du Lac, 1296 Coppet

### The following persons attended the hearing
Claude Nicati, interim Federal Prosecutor
Susanne Pälmke, deputy Federal Prosecutor
Charles A. de Pierre, OFP
Vincent Baumann, LL.B, a trainee with the office of the Swiss Federal Public Prosecutor
Marthe N'Goi, in charge of taking minutes

### The hearing began at 9:10am

I inform you that you are being questioned as a witness for information purposes in connection with an investigation being conducted by the judiciary police on behalf of the office of the Swiss Federal Public Prosecutor (SFPP) into the terrorist attacks of 11 September 2001, and in connection with a request for international judicial assistance submitted by the US criminal justice authorities.

Your attention is drawn to art. 7 LTEJUS in relation to art. 101b PPF in relation to art. 74 et seq. PPF.

We inform you that in principle, in accordance with art. 101b PPF, you have the right to refuse to answer any question, and that, in accordance with art. 75 PPF, you have the right to refuse to provide a statement. You can also refuse to answer any questions which might cause you to incriminate yourself or any one of your close relatives.

**Do you have anything to add?**

No.

### What is the role of Cambridge Engineering?

Cambridge Engineering is an investment company which has opened bank accounts and holds assets on behalf of the Saudi Bin Laden Group. It engages in no other activities.

### Are there any other companies in the Saudi Bin Laden Group which have the same purpose as Cambridge Engineering?

There are many such companies, for the bosses of the Saudi Bin Laden Group create an ad hoc management company whenever they open an account, acquire a stake or make an investment.

### When was Cambridge Engineering formed?

In July 1991.

### What is your role within this company?

I am a director of the company, together with Antoine Berthoud, who took over from Noël Maréchal, a former partner in my firm who is now retired.

### Why is this company domiciled in the Cayman Islands?

As a result of a decision of the Saudi Bin Laden Group based on the advice of their attorneys.

### Are there other companies based in other countries?

Yes.

### Has Cambridge Engineering opened accounts with any banks other than Deutsche Bank?

Cambridge Engineering has opened accounts with Deutsche Bank in Geneva and London, as well as with Bankers Trust in New York, which belongs to Deutsche Bank.

### Why Deutsche Bank?

The accounts were originally opened with Bankers Trust, which was subsequently acquired by Deutsche Bank.

### What is the link between Cambridge Engineering and the Safron companies?

Safron was formed for the purpose of creating an investment fund with the aim of bringing together 100 million dollars to be invested in various countries in the Middle East. To answer your question precisely, there is no direct link

between Cambridge Engineering and Safron. The Saudi Bin Laden Group contributed to the Safron fund through another entity known as Wicklow Securities Limited.

**What kind of accounts do you hold with Deutsche Bank?**

Named accounts held in the name of Cambridge Engineering.

**What kinds of documents could you let us have in order to clarify the nature of the Cambridge Engineering Group?**

I have brought a number of documents. I hand over to you:

- a copy of the passport of Mr. Bakr Bin Laden, the CEO of the Bin Laden Group,

- a copy of the accounts of Deutsche Bank in Geneva from 2 July 1999 to date,

- a statement dated 30th August concerning the consolidated account with Bankers Trust in New York, which comprises the Geneva, London and New York accounts, bearing in mind that there is nothing much in the London accounts. I should point out that page 1 of the consolidated accounts statements shows a "closing balance" of 117 million dollars. This figure includes a loan of 85 million dollars. This can be seen from the entry on page 1 showing interest of 298,999.31 dollars, the actual assets in fact amount to around 32 million dollars.

**Does your company have any dealings with Yeslam Bin Laden or with any of the companies he owns?**

No.

**The same question regarding Osama Bin Laden?**

No.

**In the past, i.e. prior to 1994, did your company have any dealings with Osama Bin Laden?**

Cambridge never had any contact with Osama Bin Laden. However, I should mention that prior to his fall from grace, Osama Bin Laden was part of the Saudi Bin Laden Group.

**Have any companies belonging to or dependent upon Osama Bin Laden attempted to use your company?**

No, we receive our instructions solely from the Saudi Bin Laden Group.

**According to your observations as a director of Cambridge Engineering Group, has it appeared that the Bin Laden family in the wider meaning of the term has had any dealings with Osama Bin Laden?**

As part of my duties in connection with the Due Diligence process, I travelled to Jeddah in May 1999 to meet the bosses of the Saudi Bin Laden Group, who repeatedly emphasised that since his fall from grace, they had not had any dealings, and especially no financial dealings, with Osama Bin Laden.

**Do you have any links with the Al-Shamal Islamic Bank?**

No.

**Do you have or have you ever had any dealings with a company based in Lugano known as Al-Taqwa, renamed Nada?**

No.

**Have any of the transactions which the Saudi Bin Laden Group has asked you to perform ever seemed strange to you?**

No. There are often large transfers of funds amounting to several million dollars, but these are always transfers within the Saudi Bin Laden Group or its subsidiaries or for the benefit of its bosses. I have not witnessed any suspicious transactions.

**Has your company made a payment for the benefit of Al-Qaida?**

No.

**Were you aware, other than through media sources, of the amount of money which was paid out to Osama Bin Laden by his family when he fell from grace?**

No.

**As part of the US criminal investigation, it may be necessary to take a witness statement from you before a US court. Would you be prepared to co-operate with such proceedings if necessary?**

I would rather be heard by a representative of the US judiciary in Switzerland, though we intend to co-operate fully with all judicial authorities.

**Would you consent to the minutes of this hearing being forwarded to the US criminal investigation authorities by way of the simplified process covered by art. 12a LTEJUS?**

I cannot presently provide my consent. In my capacity as a company director, I must first seek the consent of my principals i.e. the bosses of the Saudi Bin Laden Group. I will give you my answer once I have done so.

Please note: we are providing you with a copy of the request for judicial assistance submitted by the US Department of Justice on 20th September as well as a copy of the ruling of the OFJ on 21 September 2001.

Do you have any comments to make?

Yes, concerning an article which appeared in Der Spiegel's issue no. 40/2001, I had a meeting with Deutsche Bank Geneva and a representative of the Bin Laden family with a view to finding out why there had been a leak. My principals are thus already aware of the fact that I am being questioned by the Public Prosecutor today. Art. 292 CPS, which is mentioned in the ruling of 21st September, cannot possibly apply since I have only now been told that I am not allowed to divulge my involvement in these proceedings to the account holders. I would like to add that I will provide you with my final answer as to the forwarding of the documents and of the minutes of this statement by 30 October 2001.

### End of the hearing

The minutes having been read out, the witness acknowledged that they were accurate and signed them.

[signature]

Yves BRÜDERLEIN

### The interim Federal Prosecutor

[stamp: Swiss Confederation – the Swiss Federal Public Prosecutor]

Claude Nicati

### The deputy Federal Prosecutor

[signature]

Susanne Pälmke

[signature]

Charles A. de Pierre, OFP

[signature]

Vincent Baumann, SFPP

For the minutes

[signature]

Marthe N'Goi