# EXHIBIT 1

ARTICLES OF INCORPORATION
OF
CROMWELL CORPORATION

APPROVED AND RECEIVED FOR RECORD BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

OF MARYLAND   JUNE        16, 1993 AT    4:27   O'CLOCK   P. M. AS IN CONFORMITY

WITH LAW AND ORDERED RECORDED.

ORGANIZATION AND
CAPITALIZATION FEE PAID
    20.00

RECORDING
FEE PAID
$    20.00

SPECIAL
FEE PAID
$

D3678299

TO THE CLERK OF THE COURT OF        BALTIMORE CITY

IT IS HEREBY CERTIFIED, THAT THE WITHIN INSTRUMENT, TOGETHER WITH ALL INDORSEMENTS THEREON, HAS

BEEN RECEIVED, APPROVED, AND RECORDED BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION OF MARYLAND.

STATE OF MARYLAND

I hereby certify that this is a true and complete
page document on file in this office. DATE
STATE DEPARTMENT OF ASSESSMENTS AND TAXATION
BY: _____, Custodian
This stamp replaces our previous certification system. Effective: 6/95

RETURN TO:
THE PRENTICE HALL CORPORATION
SYSTEM, MARYLAND
11 E. CHASE STREET
BALTIMORE                NU 21202

244C0069915

A 425680

RECORDED IN THE RECORDS OF THE

STATE DEPARTMENT OF ASSESSMENTS

AND TAXATION OF MARYLAND IN LIBER FOLIO

SENT BY:PHCS/NYC          : 6-16-93 : 3:16PM :          2123737220→          410 932 0503:# 2

# ARTICLES OF INCORPORATION

## OF

RECEIVED

## CROMWELL CORPORATION

'93 JUN 16 PM 4 27

6/12/93

427

The undersigned, being a natural person and acting as incorporator, does hereby adopt the following Articles of Incorporation for the purpose of forming a business corporation in the State of Maryland, pursuant to the provisions of the Maryland General Corporation Law.

**FIRST:** (1) The name of the incorporator is   David O. Smith

(2) The said incorporator's address, including the street and number, if any, including the county or municipal area, and including the state or county, is

(3) The said incorporator is at least eighteen years of age.

(4) The said incorporator is forming the corporation named in these Articles of Incorporation under the general laws of the State of Maryland, to wit, the Maryland General Corporation Law.

**SECOND:** The name of the corporation (hereinafter called the "corporation") is CROMWELL CORPORATION

**THIRD:** The corporation is formed for the following purpose or purposes:

To purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use, and otherwise deal in and with real or personal property, or any interest therein, wherever situated, and to sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, all or any of its property and assets, or any interest therein, wherever situated.

To carry on a general mercantile, industrial, investing, and trading business in all its branches; to devise, invent, manufacture, fabricate, assemble, install, service, maintain, alter, buy, sell, import, export, license as licensor or licensee, lease as lessor or lessee, distribute, job, enter into, negotiate, execute, acquire, and assign contracts in respect of, acquire, receive,

-1-

31698121

31698122

SENT BY:PHCS/NYC         : 8-16-93 ; 3:11PM ;         2123737220→         410 332 0803;# 3

grant, and assign licensing arrangements, options, franchises, and other rights in respect of, and generally deal in and with, at wholesale and retail, as principal, and as sales, business, special, or general agent, representative, broker, factor, merchant, distributor, jobber, advisor, and in any other lawful capacity, goods, wares, merchandise, commodities, and unimproved, improved, finished, processed, and other real, personal, and mixed property of any and all kinds, together with the components, resultants, and by-products thereof.

To engage generally in the real estate business as principal, agent, broker, and in any lawful capacity, and generally to take, lease, purchase, or otherwise acquire, and to own, use, hold, sell, convey, exchange, lease, mortgage, work, clear, improve, develop, divide, and otherwise handle, manage, operate, deal in, and dispose of real estate, real property, lands, multiple-dwelling structures, houses, buildings, and other works and any interest or right therein; to take, lease, purchase, or otherwise acquire, and to own, use, hold, sell, convey, exchange, hire, lease, pledge, mortgage, and otherwise handle, and deal in and dispose of, as principal, agent, broker, and in any lawful capacity, such personal property, chattels, chattels real, rights, easements, privileges, choses in action, notes, bonds, mortgages, and securities as may lawfully be acquired, held, or disposed of; and to acquire, purchase, sell, assign, transfer, dispose of, and generally deal in and with, as principal, agent, broker, and in any lawful capacity, mortgages and other interests in real, personal, and mixed properties; to carry on a general construction, contracting, building, and realty management business as principal, agent, representative, contractor, subcontractor, and in any other lawful capacity.

To apply for, register, obtain, purchase, lease, take licenses in respect of, or otherwise acquire, and to hold, own, use, operate, develop, enjoy, turn to account, grant licenses and immunities in respect of, manufacture under and to introduce, sell, assign, mortgage, pledge, or otherwise dispose of, and, in any manner deal with and contract with reference to:

(a)   inventions, devices, formulae, processes, and any improvements and modifications thereof;

(b)   letters patent, patent rights, patented processes, copyrights, designs, and similar rights, trade-marks, trade symbols and other indications of origin and ownership granted by or recognized under the laws of the United States of America or of any state or subdivision thereof, or of any foreign country or subdivision thereof, and all rights connected therewith or appertaining thereunto;

-2-

SENT BY:PHCS/NYC          : 6-18-93 : 3:11PM :          2123737220→          410 332 0803:# 4

(c) franchises, licenses, grants, and concessions.

To have all of the powers conferred upon corporations organized under the provisions of the Maryland General Corporation Law.

**FOURTH:** The address, including street and number, if any, and the county or municipal area, of the principal office of the corporation within the State of Maryland is c/o The Prentice-Hall Corporation System, Maryland, 11 East Chase Street, Baltimore City, Maryland 21202.

**FIFTH:** The name and the address, including street and number, if any, and the county or municipal area, of the resident agent of the corporation within the State of Maryland, are The Prentice-Hall Corporation System, Maryland, 11 East Chase Street, Baltimore City, Maryland 21202.

**SIXTH:** (1) The total number of shares of stock which the corporation has authority to issue is one thousand, all of which are of a par value of one dollar each and are designated as Common Stock.

(2) The aggregate par value of all the authorized shares of stock is one thousand dollars.

(3) Provisions, if any, governing the restriction on the transferability of any of the shares of stock of the corporation may be set forth in the Bylaws of the corporation or in any agreement or agreements duly entered into.

(4) To the extent permitted by Section 2-104(b)(5) of the Maryland General Corporation Law, notwithstanding any provision of the Maryland General Corporation Law requiring a greater proportion than a majority of the votes entitled to be cast in order to take or authorize any action, any such action may be taken or authorized upon the concurrence of at least a majority of the aggregate number of votes entitled to be cast thereon.

(5) Each share of stock of the corporation shall entitle the holder thereof to a preemptive right, for a period of thirty days, to subscribe for, purchase, or otherwise acquire any shares of stock of the same class of the corporation or any equity and/or voting shares of stock of any class of the corporation which the corporation proposes to issue or any rights or options which the corporation proposes to grant for the purchase of shares of stock of the same class of the corporation or of equity and/or voting shares of any class of stock of the corporation or for the purchase of any shares of stock, bonds, securities, or obligations of the corporation which are convertible into or exchangeable for, or which carry any rights, to subscribe for, purchase, or otherwise acquire shares of stock of the same class

-3-

of the corporation or equity and/or voting shares of stock of any class of the corporation, whether now or hereafter authorized or created, whether having unissued or treasury status, and whether the proposed issue, reissue, transfer, or grant is for cash, property, services, or any other lawful consideration; and after the expiration of said thirty days, any and all of such shares of stock, rights, options, bonds, securities, or obligations of the corporation may be issued, reissued, transferred, or granted by the Board of Directors, as the case may be, to such persons, firms, corporations, and associations, and for such lawful consideration, and on such terms, as the Board of Directors in its discretion may determine. As used herein, the terms "equity shares" and "voting shares" shall mean, respectively, shares of stock which confer unlimited dividend rights and shares of stock which confer unlimited voting rights in the election of one or more directors. No presumptive right shall attach, however, to any such shares issued or issuable pursuant to articles of merger.

SEVENTH: (1) The number of directors of the corporation, until such number shall be changed by the Bylaws of the corporation, is three.

(2) The names of the persons who will serve as directors of the corporation until the first annual meeting of stockholders and until their successors are elected and qualify are as follows:

> H.M. Sarkissian
> K.M. Sarkissian
> Robert L. McBride

(3) The initial Bylaws of the corporation shall be adopted by the initial directors. Thereafter, the power to adopt, alter, and repeal the Bylaws of the corporation shall be vested in the Board of Directors of the corporation.

(4) The liability of the directors and officers of the corporation is limited to the fullest extent permitted by the provisions of Section 2-405.2 of the Maryland General Corporation Law, as the same may be amended and supplemented.

(5) The corporation shall, to the fullest extent permitted by the Maryland General Corporation Law, as the same may be amended and supplemented, and, without limiting the generality of the foregoing, in accordance with Section 2-418 of said Maryland General Corporation Law, indemnify any and all persons whom it shall have power to indemnify under said law from and against any and all of the expenses, liabilities or other matters referred to in or covered by said Maryland General Corporation Law.

EIGHTH: From time to time any of the provisions of these Articles of Incorporation may be amended, altered or repealed, and other provisions authorized by the Maryland General Corporation Law at the time in force may be added or inserted in the

-4-

SENT BY:PHCS/NYC          : 6-16-93 ; 3:12PM ;          2123737220→          #10 332 0603;# 6

manner and at the time prescribed by said laws, and any contract rights at any time conferred upon the stockholders of the corporation by these Articles of Incorporation are granted subject to the provisions of this Article.

IN WITNESS WHEREOF, I have adopted and signed these Articles of Incorporation and do hereby acknowledge that the adoption and signing are my act.

Dated: June, 16          , 1993

, Incorporator

-5-

# EXHIBIT 2

AMENDED ARTICLES OF INCORPORATION
OF
CROMWELL CORPORATION
CHANGING ITS NAME TO:
SBG (USA), INC.

APPROVED AND RECEIVED FOR RECORD BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

OF MARYLAND   JUNE      30,  1993 AT      10:21   O'CLOCK      A. M. AS IN CONFORMITY

WITH LAW AND ORDERED RECORDED.

| ORGANIZATION AND CAPITALIZATION FEE PAID | RECORDING FEE PAID | SPECIAL FEE PAID |
|---|---|---|
| $ _____ | $    20.00 | $ _____ |

D3678299

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

IT IS HEREBY CERTIFIED, THAT THE WITHIN INSTRUMENT, TOGETHER WITH ALL INDORSEMENTS THEREON, HAS

BEEN RECEIVED, APPROVED AND RECORDED BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION OF MARYLAND.

STATE OF MARYLAND

I hereby certify that this is a true and complete copy of the
document on file in this office. Dated        10-6-09

STATE DEPARTMENT OF ASSESSMENTS            THE PRENTICE-HALL CORPORATION
AND TAXATION                               SYSTEM, MARYLAND
                                           11 E. CHASE ST.
                                           BALTIMORE              MD 21202  , Custodian

This stamp replaces our previous certification system.  Effective: 6/85

005C3071327

A 426947

RECORDED IN THE RECORDS OF THE

STATE DEPARTMENT OF ASSESSMENTS

AND TAXATION OF MARYLAND IN LIBER FOLIO

# AMENDED ARTICLES OF INCORPORATION

## OF

## CROMWELL CORPORATION

———

The undersigned, being a natural person and acting as incorporator, does hereby adopt the following Amended Articles of Incorporation for the purpose of amending the Articles of Incorporation, pursuant to the provisions of the Maryland General Corporation Law. There is no stock outstanding or subscribed for entitled to be voted on the amendments herein provided for, and there has been no organization meeting of the Board of Directors.

FIRST: (1) The name of the incorporator is Dave Smith.

(2) The said incorporator's address, including the street and number, if any, including the county or municipal area, and including the state or country, is 11 East Chase Street, Baltimore, Maryland 21202.

(3) The said incorporator is at least eighteen years of age.

(4) The said incorporator is forming the corporation named in these Articles of Incorporation under the general laws of the State of Maryland, to wit, the Maryland General Corporation Law.

SECOND: The name of the corporation (hereinafter called the "corporation") is SBG (USA), INC.

THIRD: The corporation is formed for the following purpose or purposes:

To purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use, and otherwise deal in and with real or personal property, or any interest therein, wherever situated, and to sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, all or any of its property and assets, or any interest therein, wherever situated.

To carry on a general mercantile, industrial, investing, and trading business in all its branches; to devise, invent, manufacture, fabricate, assemble, install, service, maintain, alter, buy, sell, import, export, license as

I.D. NO# D3678299
ACKN. NO. - 005C3071327
SBG (USA), INC.

3182

licensor or licensee, lease as lessor or lessee, distribute, job, enter into, negotiate, execute, acquire, and assign contracts in respect of, acquire, receive, grant, and assign licensing arrangements, options, franchises, and other rights in respect of, and generally deal in and with, at wholesale and retail, as principal, and as sales, business, special, or general agent, representative, broker, factor, merchant, distributor, jobber, advisor, and in any other lawful capacity, goods, wares, merchandise, commodities, and unimproved, improved, finished, processed, and other real, personal, and mixed property of any and all kinds, together with the components, resultants, and by-products thereof.

To engage generally in the real estate business as principal, agent, broker, and in any lawful capacity, and generally to take, lease, purchase, or otherwise acquire, and to own, use, hold, sell, convey, exchange, lease, mortgage, work, clear, improve, develop, divide, and otherwise handle, manage, operate, deal in, and dispose of real estate, real property, lands, multiple-dwelling structures, houses, buildings, and other works and any interest or right therein; to take, lease, purchase, or otherwise acquire, and to own, use, hold, sell, convey, exchange, hire, lease, pledge, mortgage, and otherwise handle, and deal in and dispose of, as principal, agent, broker, and in any lawful capacity, such personal property, chattels, chattels real, rights, easements, privileges, choses in action, notes, bonds, mortgages, and securities as may lawfully be acquired, held, or disposed of; and to acquire, purchase, sell, assign, transfer, dispose of, and generally deal in and with, as principal, agent, broker, and in any lawful capacity, mortgages and other interests in real, personal, and mixed properties; to carry on a general construction, contracting, building, and realty management business as principal, agent, representative, contractor, subcontractor, and in any other lawful capacity.

To apply for, register, obtain, purchase, lease, take licenses in respect of, or otherwise acquire, and to hold, own, use, operate, develop, enjoy, turn to account, grant licenses and immunities in respect of, manufacture under and to introduce, sell, assign, mortgage, pledge, or otherwise dispose of, and, in any manner deal with and contract with reference to:

(a)   inventions, devices, formulae, processes, and any improvements and modifications thereof;

(b)   letters patent, patent rights, patented processes, copyrights, designs, and similar rights, trade-marks, trade symbols and other indications of origin and ownership granted by or recognized under the laws of the United States of America or of any state or subdivision thereof, or of any foreign

-2-

country or subdivision thereof, and all rights connected therewith or appertaining thereunto;

(c) franchises, licenses, grants, and concessions.

To have all of the powers conferred upon corporations organized under the provisions of the Maryland General Corporation Law.

FOURTH: The address, including street and number, if any, and the county or municipal area, of the principal office of the corporation within the State of Maryland, is 51 Monroe Street, Suite 1700, Rockville, Maryland 30850, Attention: Robert L. McBride.

FIFTH: The name and the address, including street and number, if any, and the county or municipal area, of the resident agent of the corporation within the State of Maryland, are Robert L. McBride, 51 Monroe Street, Suite 1700, Rockville, Maryland 30850.

SIXTH: (1) The total number of shares of stock which the corporation has authority to issue is one thousand, all of which are of a par value of one dollar each and are designated as Common Stock.

(2) The aggregate par value of all the authorized shares of stock is one thousand dollars.

(3) Provisions, if any, governing the restriction on the transferability of any of the shares of stock of the corporation may be set forth in the Bylaws of the corporation or in any agreement or agreements duly entered into.

(4) To the extent permitted by Section 2-104(b)(5) of the Maryland General Corporation Law, notwithstanding any provision of the Maryland General Corporation Law requiring a greater proportion than a majority of the votes entitled to be cast in order to take or authorize any action, any such action may be taken or authorized upon the concurrence of at least a majority of the aggregate number of votes entitled to be cast thereon.

(5) Each share of stock of the corporation shall entitle the holder thereof to a preemptive right, for a period of thirty days, to subscribe for, purchase, or otherwise acquire any shares of stock of the same class of the corporation or any equity and/or voting shares of stock of any class of the corporation which the corporation proposes to issue or any rights or options which the corporation proposes to grant for the purchase of shares of stock of the same class of the corporation or of equity and/or voting shares of any class of stock of the corporation or for the purchase of any shares of stock, bonds, securities, or

-3-

obligations of the corporation which are convertible into or exchangeable for, or which carry any rights, to subscribe for, purchase, or otherwise acquire shares of stock of the same class of the corporation or equity and/or voting shares of stock of any class of the corporation, whether now or hereafter authorized or created, whether having unissued or treasury status, and whether the proposed issue, reissue, transfer, or grant is for cash, property, services, or any other lawful consideration; and after the expiration of said thirty days, any and all of such shares of stock, rights, options, bonds, securities, or obligations of the corporation may be issued, reissued, transferred, or granted by the Board of Directors, as the case may be, to such persons, firms, corporations, and associations, and for such lawful consideration, and on such terms, as the Board of Directors in its discretion may determine. As used herein, the terms "equity shares" and "voting shares" shall mean, respectively, shares of stock which confer unlimited dividend rights and shares of stock which confer unlimited voting rights in the election of one or more directors. No preemptive right shall attach, however, to any such shares issued or issuable pursuant to articles of merger.

SEVENTH: (1) The number of directors of the corporation, until such number shall be changed by the Bylaws of the corporation, is three.

(2) The names of the persons who will serve as directors of the corporation until the first annual meeting of stockholders and until their successors are elected and qualify are as follows:

H.M. Sarkissian
K.M. Sarkissian
Robert L. McBride

(3) The initial Bylaws of the corporation shall be adopted by the initial directors. Thereafter, the power to adopt, alter, and repeal the Bylaws of the corporation shall be vested in the Board of Directors of the corporation.

(4) The liability of the directors and officers of the corporation is limited to the fullest extent permitted by the provisions of Section 2-405.2 of the Maryland General Corporation Law, as the same may be amended and supplemented.

(5) The corporation shall, to the fullest extent permitted by the Maryland General Corporation Law, as the same may be amended and supplemented, and, without limiting the generality of the foregoing, in accordance with Section 2-418 of said Maryland General Corporation Law, indemnify any and all persons whom it shall have power to indemnify under said law from and against any and all of the expenses, liabilities or other matters referred to in or covered by said Maryland General Corporation Law.

-4-

EIGHTH:  From time to time any of the provisions of these Articles of Incorporation may be amended, altered or repealed, and other provisions authorized by the Maryland General Corporation Law at the time in force may be added or inserted in the manner and at the time prescribed by said laws, and any contract rights at any time conferred upon the stockholders of the corporation by these Articles of Incorporation are granted subject to the provisions of this Article.

IN WITNESS WHEREOF, I have adopted and signed these Amended Articles of Incorporation and do hereby acknowledge that the adoption and signing are my act.

Dated:  June 17, 1993

Dave Smith, Incorporator

-5-

# EXHIBIT 3



**SOURCE OFFICE SUITES**
I N C O R P O R A T E D

December 16, 1998

Mr. Philip Griffin
SBG-USA

                    RE:    1700 Rockville Pike
                                 Suite 400
                                 Rockville, MD 20852
                                 Office #14

Dear Mr. Griffin:

Enclosed for your file you will find a fully executed Service/Agreement for the above
reference office.

If you have any questions regarding the enclosure please feel free to contact me at (301)
881-7266. We look forward to working with you.

Sincerely,

*Kathleen Adams*

Kathleen Adams
Operations Manager

Enclosure

WASHINGTON, DC • 1050 17TH ST, NW • SUITE 600 • WASHINGTON, DC 20036 • TEL 202-331-8861 • FAX 202-466-3228
BETHESDA • 7272 WISCONSIN AVENUE • SUITE 300 • BETHESDA, MARYLAND 20814 • TEL 301-941-1900 • FAX 301-656-0183
ROCKVILLE • 1700 ROCKVILLE PIKE • SUITE 400 • ROCKVILLE, MARYLAND 20852 • TEL 301-881-7266 • FAX 301-881-6898
ARLINGTON • 2111 WILSON BOULEVARD • SUITE 700 • ARLINGTON, VIRGINIA 22201 • TEL 703-351-5000 • FAX 703-351-9292
TYSONS CORNER • 1420 SPRING HILL ROAD • SUITE 600 • McLEAN, VIRGINIA 22102 • TEL 703-827-5600 • FAX 703-442-0848

SBG0000629

# SOURCE OFFICE SUITES
## OF
## ROCKVILLE

## SERVICE/USER AGREEMENT

THIS AGREEMENT is made and entered into this _15_ day of _December_ 1991, by and between SOURCE OFFICE SUITES of ROCKVILLE, INC. ("Source"), operator of the Suite (as hereinafter defined), and SBG-USA, INC. ("Client").

WITNESSETH: That Source, for and in consideration of the covenants and agreements hereinafter set forth and the fees hereinafter specifically to be paid by Client, and Client, for and in consideration of the covenants and agreements hereinafter set forth and the services to be provided to Client by Source, hereby agree to the following terms and conditions.

## OFFICE LICENSE

Source hereby grants to Client a license for the sole use of the offices (collectively, the "Office") designated as private office number 14 in Suite 400 of Twinbrook Office Center, (the "Suite") located at 1700 Rockville Pike, Suite 400, Rockville, MD 20852. Client shall have scheduled, reasonable use of conference rooms, not to exceed 20 hours per month, and access to common areas of the Suite under uniform conditions specified by Source to all clients except as noted herein. It is agreed that each Office is intended for the use of one person only. Occupancy of all or part of each Office by additional persons shall be subject to Source's prior written approval, and in such event Client shall be charged such additional fees as are set forth in Exhibit "A". Source hereby reserves the right to enter the Office from time to time, without notice, to make needed repairs, to inspect the Office, and to show the Office to prospective clients. Source further reserves the right to relocate Client at any time to comparable offices within the Suite. In that event, Source agrees to pay all normal and reasonable costs involved in such relocation and further agrees that the Monthly Fees shall not increase as a result of said relocation.

## TERM AND COMMENCEMENT OF SERVICES

The duration of this Agreement will be for a period of twelve months commencing on January 1, 1999, and terminating on December 31, 1999.

If provision of services commences prior to, or continues after the aforesaid period of this

SBG0000630

Agreement, then in such event all the provisions of this Agreement shall continue to be in full force and effect except as hereinafter provided. So long as the Client requires or continues to exercise or use the Office license and/or the services provided hereunder beyond the termination date of this Agreement (or any extension thereof), then this Agreement shall be deemed to be extended for consecutive periods of thirty (30) days each, subject to a sixty (60) day notice of termination by either party as provided below.

### FEES

Client hereby covenants and agrees to pay all Monthly Fees specified herein, in advance on the first calendar day of each month for the duration of this Agreement, and to pay such Additional Fees as specified herein on the first calendar day of the month after submission of the invoice by Source for additional services rendered through the 20th day (or such other period) of the previous month. Client further agrees to make all such payments at 1700 Rockville Pike, Suite 400, Rockville, MD 20852, or at such place or places as Source may hereafter designate in writing. Payments shall be made payable to "SOURCE OFFICE SUITES OF ROCKVILLE INC." or to such other person, firm, entity or corporation as Source may designate in writing. All payments shall first be applied and credited to arrearage and late fees, if any, and then to any other balance then due.

A.    Fee Charges

    1.    Monthly Fees:

The total of Monthly Fees for the Office for the above-stated period shall be $15,300.00 Said Monthly Fee shall be payable in equal monthly installments of $1,275.00 at the time and place set forth above. The first Monthly Fee of $1,275.00 and a user deposit of $1,275.00 shall be due upon and tendered concurrent with the execution of this Agreement. Any sum held as a user deposit or paid in advance shall be held by and for the exclusive use of Source, without payment of interest to Client.

    2.    Additional Fees:

The standard fee schedule for optional services not included as part of the Monthly Fee shall be governed by the fee structure set forth in Exhibit A, Section II.

    3.    Late Payment and Default:

A late payment charge equal to the greater of ten percent (10%) of the arrearage or ten dollars ($10.00) per day shall be due and payable in the event the Fees and other charges are not received by Source within five (5) days of the date due; provided that in the event the foregoing late payment charge shall exceed the highest legally permissible late payment charge, the same shall be deemed equal to such highest legally permissible charge.

In the event Client shall default in the payment of Fees and charges as herein prescribed,

-2-

SBG0000631

or in the performance of or compliance with any other covenant, term or condition of this Agreement, then this Agreement, at the option of Source, may be terminated and forfeited in which event Client's Office license shall immediately cease and determine without notice and without further proceedings, and Source may re-enter the Office, eject all occupants and recover damages, including costs and reasonable attorney fees.  Source shall also be entitled to cure any default by Client hereunder, and Client shall indemnify and hold Source harmless from and against any and all claims, cost, damage, expenses and liability incurred by Source in curing such default by Client.  Client further agrees to reimburse Source for the reasonable attorneys' fees incurred by Source in enforcing the obligations of Client hereunder.

4.    Adjustment of Fees:

The Monthly Fees stated above shall remain in effect throughout the duration of this Agreement as set forth above, or one year from date, whichever period is shorter.  In the event that this Agreement is extended on a thirty (30) day basis as aforesaid, then the Monthly Fees shall automatically be increased by 10% upon at least thirty (30) days notice to Client; provided, however, that neither Source or Client has given the other a 60-day notice of termination as provided herein.

5.    Deposits:

The amounts of, and the terms and conditions governing (except as set forth herein), refundable deposits for "returnable items" and for "optional services" shall be as set forth on Exhibit A.  The deposits for such items are due upon Client's execution of this Agreement.  No deposit shall be considered an advance payment of the Monthly Fees.  In the event Source applies any such deposit toward the performance of Client's obligations hereunder, Client shall immediately restore such deposit to the amount held by Source before such application.  Upon the expiration of this agreement, Source reserves the right to apply any deposit monies toward the repair of any damages caused by Client, its employees, agents, servants, licensees or invitees.

## DELIVERY, ACCEPTANCE, USE AND SURRENDER

Acceptance (whether in writing or by use or occupancy) of the designated Office by Client shall be construed as recognition that the Office and the furnishings therein are in a good state of repair and in a condition to conduct business.  Source shall not be liable for any claims, costs, damages, liability or losses incurred by Client due to the failure of the heating, cooling or other utility equipment to operate or due to the necessity of repair, the denial of Client's access to the Office, or due to failure to provide services as herein provided unless such failure to operate or necessity of repair, denial of access, or failure to provide services results from Source's own willful negligence. Further, it is agreed that Source shall in no event be responsible for damage or injury to Client's (or its

-3-

SBG0000632

agent(s), servant(s)or invitee(s)) person, property or business arising from any cause whatsoever. In all events, and notwithstanding any other provision hereof to the contrary, Source's liability hereunder shall be limited to the insurance proceeds recoverable under policies of insurance maintained by Source with respect to the Suite.

Source shall keep in force policies of Property, written on a Special Form basis, and General Liability sufficient to cover the common areas of the demised premises and any permanent improvements to the client's space. Client shall at all times carry, as a minimum, sufficient insurance coverage to protect its own contents, fixtures and furnishings. Coverage shall be written on a Special Form basis and include Replacement Cost. Client shall, in addition, keep in force at all times insurance providing General Liability coverage with minimum Combined Single Limits of $1,000,000 per Occurrence and $2,000,000 as an Annual Aggregate for Bodily Injury and Property Damage. Source shall be named as an Additional Insured on Client's General Liability coverage. All coverage shall be written with an Insurance carrier rated A/XV or better by A.M. Best and Client shall furnish Source with a certificate of insurance within thirty (30) days of occupancy of its suite. It is Client's responsibility to ensure a current certificate is provided at each renewal of its policies.

Client agrees to use and occupy the Office solely for general office purposes and in accordance with the use permitted under applicable zoning regulations, and not to use the Office for any unlawful or unpermitted purpose. Client further agrees not to use the Office for any other purpose whatsoever without having obtained the prior written consent of Source (which consent may be withheld or conditioned at Source's sole discretion). Client additionally agrees not to store, manufacture, use or dispose of any hazardous or toxic chemicals, materials or substances in, on or about the Office, the Suite or the building, or any part of the same, Client also agrees to surrender the Office to Source on the expiration date of this Agreement (or any applicable renewal thereof) and to vacate the Office, leaving the Office in the same condition as at the date of this Agreement, reasonable wear and tear excepted.

## SOURCE COVENANTS

A.     Source will provide services as described in Exhibit A.

B.     Source hereby covenants to deliver the Office in good condition and furnished in the configuration set forth on the attached Exhibit B. All utilities, excepting telephones, shall be provided to the Office without additional expense to Client. Source agrees to maintain the common

-4-

SBG0000633

areas of the Suite in a clean and presentable condition at all times.

C.    Source agrees that no person furnishing services to the Client pursuant hereto shall be deemed to be an employee or servant of the Client, and that the Client shall have no liability for the wages or salary thereof, for taxes and other charges incident thereto, or for the cost of workmen's compensation or any other costs or expenses in respect to such persons, other than as may be expressly stated herein.

## CLIENTS COVENANTS

A.    Client will conduct its business, and shall cause each of its agents, employees, licensees and invitees to act, in such a manner as to be compatible with the tenants of the building and the other clients in the Suite, in such a manner so as not to detract from the appearance, cleanliness, efficiency and safety standards of a Source Office Suite, and in conformity with Building regulations (copies of which are on file in the Manager's office) and the rules of Source Office Suites, as the same may be amended from time to time.  Client further agrees to comply, at Client's sole expense, with all applicable laws, orders, regulations and rules, pertaining to the use and occupancy of the Office, and the Client's business, of each governmental and quasi-governmental entity having jurisdiction over the Suite.  Should Client, or any of its employees, agents, licensees or invitees breach any of the aforementioned covenants, Source agrees to notify Client and Source shall have the option of correcting said condition at Client's cost, or of pursuing any of the other remedies provided it for breach of this Agreement.

B.    Client also agrees to conduct its business, and to cause its agents, employees, licensees and invitees to act, in such a manner so as not to interfere with the work of Source's employees.  Client further recognizes that Source's employees are under the control of Source. Accordingly, all grievances concerning Source's employees (if any) shall be brought to the attention of Source and not to the individual employee.

C.    Client shall make no alterations, installations, additions, modifications or improvements in or to the Office without Source's prior written consent (which consent may be withheld or conditioned in Source's sole discretion).  In the event that modifications are made without the prior written consent of Source, Source may, at its option, correct or remove the same, and Client hereby does indemnify and agrees to hold Source harmless from and against any and all claims, cost, damage, expenses and liability incurred by Source in its correction, restoration or alteration of the non-approved alterations.  The foregoing indemnity shall be deemed to survive the expiration or termination of this Agreement.

D.    Client shall have the right to install normal and customary electrical equipment

-5-

SBG0000634

found in a modern office, but shall not install or operate in the Office any electrically operated equipment or other machinery that requires a separate electrical circuit or consumes higher than normal and reasonable quantities of electricity. Client may not install or operate personal computers (personal computers excepted), copy machines, word processors or telex, facsimile and postage machines or any equipment or machinery that is heat producing or may be construed as a fire hazard if not properly monitored without the prior written consent of Source (which consent may be withheld or conditioned in Source's sole discretion).

    E.    Client, its agents and employees, agrees to abide by and observe each of the terms and conditions of Source's Master lease of the Suite. Client hereby expressly understands and agrees that this Agreement shall be subject and subordinate to the terms and conditions of Source's Master lease of the Suite.

    F.    Client agrees not to employ nor offer to employ an employee of Source, directly or indirectly, and agrees that no affiliated or related company or entity of client shall employ or offer employment to any employee of Source during the term of Client's Agreement with Source, or for a period of six (6) months after the Client vacates the premises. In the event that a breach of this covenant occurs, the Client agrees to pay as liquidated damages (and not as a penalty) to Source, the exactness of damages being incapable of determination, a sum of money equal to forty percent (40%) of the employee's annual wages for each such breach.

    G.    If Montgomery County requires firms occupying commercial office space in 1700 Rockville Pike, Suite 400, Rockville, MD.,20852 to obtain a Certificate of Occupancy. It is the responsibility of the Client to obtain this certificate, at the Client's sole expense, from Montgomery County, Permitting Services Department, 250 Hungerford Drive, 2nd floor, Rockville, MD.,20850, prior to occupancy. A copy of this certificate must be presented to the manager of Source at Rockville prior to or at the time Client begins to exercise its license to use the Office.

    H.    Client hereby does indemnify and agrees to defend and hold Source harmless from and against any and all claims, actions, damages, liabilities, loss, costs and expenses (including, without limitation, reasonable attorneys' fees and court costs) arising from any occurrence or situation in, upon or at the Office, the occupancy or use of the Office, or any act or omission by or on behalf of, or breach of this Agreement by, Client or its agents, employees, contractors, licensees, invitees or other occupants of the Office or any person for whom Client is responsible at law, including, without limitation, Client's customers and any person having business with the Client. The foregoing indemnification shall survive the expiration

-6-

SBG0000635

or termination of this Agreement.

## TERMINATION

In the absence of notification by Client or Source, this Agreement will be deemed to remain in force and be automatically extended for consecutive periods of thirty (30) days each following the expiration of the original term of this Agreement subject to any increase in Monthly Fees and/or Additional Fees as required by Source in accordance with the terms hereof. In the event that either Client or Source does not desire this Agreement to be automatically extended as aforesaid, the party desiring termination shall serve notice in writing on the other of its intention to so terminate at least sixty (60) days prior to the expiration date of this Agreement (as the same may be extended). Following such a termination notice, Client shall vacate the Office on the termination date specified in such notice, leaving the same in the condition set forth above, and Source agrees to return all deposits to Client (if any), less any deductions to which Source is entitled (if any), within fifteen (15) days after the expiration of this Agreement and Client vacating the Office.

## INSOLVENCY/BANKRUPTCY

In the event Client makes an assignment for the benefit of creditors, or a receiver of Client's assets is appointed, or Client files a voluntary petition in bankruptcy or any bankruptcy or insolvency proceeding is filed against Client and the same is not discharged within thirty (30) days, Client shall immediately give Source notice thereof. Upon the occurrence of any of the foregoing events, Source shall, subject to applicable law, have the option of terminating this Agreement by sending written notice to Client of such termination and, upon such written notice being given by Source to Client, this Agreement shall end and Client shall immediately vacate the Office in the condition provided above, and Source shall be entitled to recover from Client the damages suffered by Source on account of such termination.

## WAIVER

A waiver by either party of a breach (or series of breaches) of any covenant or duty of the other party under this Agreement, shall not be construed to be a waiver of any other covenant or duty of such party, or of any subsequent breach of the same covenant or duty. Notwithstanding the reservation of any particular remedy hereunder to Source, Source hereby reserves each and every remedy available at law or in equity in the event of a breach by Client hereunder.

-7-

SBG0000636

## SEVERABILITY

In the event any part of this Agreement is held to be unenforceable or invalid for any reason, all other provisions of this Agreement shall not be affected by such invalidity and they shall remain in full force and effect during the term of the Agreement.

## TRANSFERS

Client shall not assign or transfer this Agreement, or permit the occupancy or use of all or any part of the Office by any persons other than Client and its agents and employees, in any manner whatsoever, without having received the prior written consent of Source (which consent may be withheld or conditioned in Source's sole discretion).

## UNAVOIDABLE DELAY

If Source or Client shall be prevented, delayed or restricted in the fulfillment of any obligation hereunder, other than the payment of Monthly Fees by Client or the vacating of the Office by Client upon the expiration or termination of this Agreement, by reason of any acts of God, strikes, lockouts or other industrial disturbances, acts of public enemies, sabotage, war, blockades, insurrections, riots, epidemics, washouts, nuclear and/or radiation activity or fallout, arrests, civil disturbances, explosions, breakage of or accident to machinery, the inability to obtain any Federal, state or local permits, or any other act, omission or event not within the control of the party responsible for fulfillment of such obligation, and such act, omission or event prevents the fulfillment of such obligation, such party shall not be deemed to be in default and any period for the performance of such obligation shall be extended by the period of such unavoidable delay and the other party to this Agreement shall not be entitled to compensation for any inconvenience, nuisance or discomfort caused thereby.

## APPLICABLE LAW

This Agreement shall be interpreted under the Laws of the State of Rockville.  CLIENT HEREBY EXPRESSLY AND KNOWINGLY WAIVES ANY AND ALL RIGHT TO A JURY TRIAL IN ANY ACTION OR SUIT ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE OR NON-PERFORMANCE HEREOF.

## INTERPRETATION

The parties hereto acknowledge and agree that this Agreement is an arms-length transaction between disinterested parties, creating only a license terminable as set forth herein and not

-8-

SBG0000637

a lease or other estate in the Office or the Suite, and shall not be deemed or construed in any way to create a relationship of landlord and tenant between the parties hereto.  In the event that a court of competent jurisdiction shall determine that, notwithstanding the foregoing, this Agreement shall constitute a lease of the Office, CLIENT HEREBY ACKNOWLEDGES THAT IT HAS WAIVED ANY AND ALL NOTICES TO CURE OR VACATE OR TO QUIT THE OFFICE REQUIRED BY LAW.

IN WITNESS WHEREOF, Source and Client have caused this Agreement to be duly signed and sealed as of the dates set forth below.

SOURCE OFFICE SUITES OF ROCKVILLE, INC.

By: _Rebecca Weiss_ VP

Date: _12/18/98_

SBG-USA, INC.

By: _Philip Griffin_

Date: _December 8, 1998_

-9-

SBG0000638

## EXHIBIT A
## FEES, SERVICES AND DEPOSITS

A signed agreement requires the following:

- $1,275.00 1st month's service/office license fee

- $1,275.00 one month's service/office license fee as a refundable security deposit

- $50.00 deposit towards services (administrative service, copies, etc.)

- $35.00 deposit for office, suite and building security keys
  (Your key deposit will be refunded when all keys have been returned. The security deposit will be refunded taking any damages into consideration. Please note that $75.00 will be deducted from the security deposit for painting the office and cleaning the carpet.)

Telephone:  $ 135.00 installation fee per telephone line.
             55.00 per month per handset for maintenance/rental/repair/voice-mail.
             37.50 per month per phone extension/person.
             32.75 per line per month for data and fax lines.
             20.00 one time lobby listing fee

Kitchen
Service:  $ 25.00 per month per person.  Appliance usage, Supplies, and Beverage Service
             Coffee, Tee, Filtered Water, Hot Chocolate

Total Amount
Due:  $2,940.25

Additional Person in Office:  $100.00 per month will include furniture and phone answering for additional person.  Without additional furniture the cost is $50.00 for additional phone answering.

Parking:  $ 60.00 per month/tag for garage parking – client secures own parking.

Source Office Suites provides Optional Services listed as the following:

1.  Word Processing/Administrative support  - $24.00 per hour.

2.  Facsimile (charges include long distance numbers)
    $1.00 per page received/$2.00 per page sent.

3.  Copies
    First 500 copies  - .15 per copy.
    After first 500 copies  - .10 per copy.

4.  Postage - Cost of postage plus an additional 20% handling charge.

5.  Audio Visual Equipment  - $15.00 per use (1 hour or 1 day)
    For TV/VCR or Overhead, LCD Panel -$300 per use

6.  LCD Projection Panel - $250.00 per day

7.  Conference Speaker Phone - $50.00 per month for unlimited, scheduled use or $20.00 per use.

8.  Call Patching: $100.00 per person per month or $10.00/day.

-10-

SBG0000639

EXHIBIT B
CONDITION AND CONFIGURATION OF OFFICE



TWINBROOK OFFICE CENTER
1700 Rockville Pike
Suite 400
Rockville, Maryland

SBG0000640

<u>ADDENDUM</u>

This Addendum shall be attached to and form a part of that certain Service/User Agreement dated the _15_ of _DECEMBER_ 1998, by and between SOURCE OFFICE SUITES OF ROCKVILLE, INC. ("Source") and SBG-USA, INC. ("Client"). The following are additional provisions and/or modifications to the foregoing and annexed Service/User Agreement, and in the event of any inconsistency between the provisions of this Addendum and the provisions of the foregoing and annexed Service/User Agreement, the provisions of this Addendum shall prevail. Except as otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the Service/User Agreement.

1.   Client may terminate this agreement after six (6) months with a sixty (60) day written notice.

IN WITNESS WHEREOF, Source and Client have caused this Addendum to be duly signed and sealed as of the dates set forth below.

SOURCE OFFICE SUITES OF ROCKVILLE, INC.

By: _____ VP

Date: _12/15/98_

SBG-USA, INC.

By: _____

Date: _____, 199_

-12-

SBG0000641

# EXHIBIT 4



**SOURCE OFFICE SUITES**
I N C O R P O R A T E D

*Received 9/8/99*

*Action*

*Ltr. drafted 10/29/99*
*+ sent 11/1/99.*

September 8, 1999

Mr. Philip Griffin
SBG-USA
1700 Rockville Pike, Suite 400
Rockville, MD 20852

Dear Mr. Griffin:

This letter is in reference to SBG-USA's occupancy of office number 14 in Suite 400. It is my understanding from our conversation a few months ago that SBG-USA will not renew the Service/User Agreement when it expires December 31, 1999.

If I could receive written verification of this by November 1, 1999 I would appreciate it.

Please know it has been a pleasure working with you and SBG-USA, and we have enjoyed having you here.

Sincerely,

Kathleen Stone
Operations Manager

WASHINGTON, DC   ♦   1050 17TH ST., NW   ♦   SUITE 600   ♦   WASHINGTON, DC 20036   ♦   TEL 202-331-8881   ♦   FAX 202-466-3226
BETHESDA   ♦   7272 WISCONSIN AVENUE   ♦   SUITE 300   ♦   BETHESDA, MARYLAND 20814   ♦   TEL 301-941-1900   ♦   FAX 301-656-0183
ROCKVILLE   ♦   1700 ROCKVILLE PIKE   ♦   SUITE 400   ♦   ROCKVILLE, MARYLAND 20852   ♦   TEL 301-881-7266   ♦   FAX 301-881-6898
ARLINGTON   ♦   2111 WILSON BOULEVARD   ♦   SUITE 700   ♦   ARLINGTON, VIRGINIA 22201   ♦   TEL 703-351-5000   ♦   FAX 703-351-9292
TYSONS CORNER   ♦   1420 SPRING HILL ROAD   ♦   SUITE 600   ♦   McLEAN, VIRGINIA 22102   ♦   TEL 703-827-5800   ♦   FAX 703-442-0846

SBG0001261

**SBG-USA, INC.**
1700 Rockville Pike, Suite 400
Rockville, Maryland 20852

November 1, 1999

Ms. Kathleen Stone
Operations Manager
Source Office Suites, Inc.
1700 Rockville Pike, Suite 400
Rockville, Maryland 20852

Dear Kathleen,

I refer to your letter of September 8, 1999 concerning SBG-USA's future occupancy of office number 14 in Suite 400.

I wish formally to confirm your verbal understanding that SBG-USA, Inc. does not wish to renew the Service/User Agreement for this space when it expires December 31, 1999. The reason the SBG-USA, Inc. office is closing at the end of 1999 relates primarily to my own personal decision to spend more time with my family.

It remains possible, however, that for a limited period after January 1, 2000 my parent company, Saudi Binladin Group, will decide to maintain a non- resident transitional business presence at Source Office Suites, Inc. Rockville Pike location.  As soon as a decision is made in this regard, I shall inform you.

I wish to thank you and your staff for all the courtesies, assistance and thorough professionalism extended during my one year here.  It has been a truly rewarding and enjoyable work experience for which I am most appreciative.

Sincerely,

Philip J. Griffin
Vice President & CEO

cc:  Sheikh Husan M. Binladin
     Senior Vice President
     Saudi Binladin Group
     Fax # 664-3129
     DR. Fuad Riheim
     Chairman's Advisor for R+D
     Fax # 664-2987

SBG0001259

# EXHIBIT 5

## BUSINESS IDENTITY PROGRAM AGREEMENT

THIS AGREEMENT is made and entered in this _28_ day of _DECEMBER_, 1999, by and between SOURCE OFFICE SUITES OF ROCKVILLE (hereinafter referred to as ("Provider") with offices at Twinbrook Office Center located at 1700 Rockville Pike, Suite 400, Rockville, MD 20852 and SBG-USA, INC, (hereinafter referred to as ("User") with a principal address at _14530 – Woodcrest Drive, Rockville, MD. 20853._

### WITNESSETH

That Provider, for and in consideration of the covenants and agreements hereinafter set forth, does hereby provide unto User the services described in Exhibit A attached hereto, at User's cost and expense as set forth in Exhibit A.

### TERM

The term of this Agreement shall be three months, commencing on the 1st day of January, 2000, ("the Commencement Date"), and ending on the 31st day of March.

Upon the ending date, this Agreement shall be automatically extended on a month-to-month basis, but in no event beyond the term of the Prime Lease, unless either party notifies the other in writing of the termination hereof, by hand delivery, or by certified or registered mail, return receipt requested, at least thirty (30) days prior to the ending of this Agreement. In absence of said letter of intent to terminate, an increase not to exceed seven percent (7%) shall become effective for said monthly service(s).

### FEES

User hereby covenants and agrees to pay fees for said services, in advance, on the first day of each and every month during the term of this Agreement the amount of ONE HUNDRED SEVENTY FIVE DOLLARS ($175.00), at the office of SOURCE OFFICE SUITES OF ROCKVILLE, or at such place as Provider hereafter may designate in writing. All payment shall be made payable to SOURCE OFFICE SUITES OF ROCKVILLE or to such other person, firm or corporation as Provider shall designate in writing.

Due upon the execution of this Agreement shall be:

A. Monthly Fee:
The monthly fee for the first month of said services shall be ONE HUNDRED SEVENTY FIVE DOLLARS ($175.00).

B. Security Deposit:
A non-interest bearing deposit of ONE HUNDRED SEVENTY FIVE DOLLARS ($175.00), this deposit shall be considered as security for the payment and performance of client's obligations, covenants, conditions and agreements under this Agreement. In the event of any default by User hereunder, Provider shall have the right, but not the

obligation, to apply all or any portion of this deposit to cure such default. Should User not pay invoices for service in a timely manner, an additional security deposit may be requested.

C. Additional Fee(s):

A Thirty Dollar ($30.00) one time charge has been assessed for either your name of your company to be listed in the lobby directory.

A late payment of ten percent (10%) or Ten Dollars ($10.00) per day, whichever is greater, shall be due and payable if the monthly fee is not received within five (5) days of the due date.

## ADDITIONAL PROVISIONS

Under no circumstances shall User assign or transfer this Agreement in whole or part, nor sublet any part of the services or facilities. Further, User understands that they are subject to all the Rules and Regulations as they appear in the Service/User Agreement, a copy of which is available upon request.

IN WITNESS WHEREOF, the parties hereto have set their hand and seal.

PROVIDER:

SOURCE OFFICE SUITES OF ROCKVILLE

By: _Rebecca Wen_____

Date: ___12/28/99_____

USER:

SBG-USA, INC.

By: _Philip J. Griffin_____

Title: _Vice President & CEO_____

Date: _12/27/99_____

SBG0001345

## **EXHIBIT A**

Basic Plan

$175.00 per month

☒ Published Telephone Line
☒ Personable, professional and efficient handling of your telephone calls by our receptionists from 8:30 a.m. to 5:30 p.m., Monday through Friday, excluding government holidays.
☒ Voice mail box allowing 24 hour message retrieval.
☒ Use of our prestigious mailing address.
☒ Use of conference room during office hours, on availability (first come, first serve) at no cost for the first eight (8) hours per month. An additional rate of twenty five dollars ($25.00) per hour thereafter.
☒ Mail delivery and outgoing mail processing. (20% handling charge on outgoing).

Additional Services

☐ Telephone call patching
☐ Telephone voice mail paging
☐ Additional voice mail boxes

$50.00 per month
20.00 per month
25.00 per month

Optional (ala carte) Services

☐ Personable, professional and efficient handling of your telephone calls by our receptionists from 8:30 a.m. to 5:30 p.m., Monday through Friday, excluding government holidays.
☐ Use of our prestigious mailing address.
☐ Use of conference facilities

$130.00 per month
50.00 per month
25.00 per hour

Business Support Services

☐ High-speed copiers with collating, reduction features capabilities (volume discount available)
☐ Word processing and secretarial support
☐ Facsimile Service:
    Incoming
    Outgoing
☐ Courier Service/Overnight Delivery

.15 per copy
24.00 per hour

1.00 per page
2.00 per page
cost + 20%

One time Charges

☐ Telephone programming
☐ Client/Company name listing in lobby directory
☒ Security Deposit

95.00
30.00 per name
$175.00

Total Due: Billed on January 1, 2000 invoice

-$655.12

SBG0001346

# EXHIBIT 6

## ARTICLES OF DISSOLUTION
## OF
## SBG (USA), INC.
### (a Maryland corporation)

SBG (USA), Inc., a Maryland Corporation (hereinafter called the "Corporation"), hereby certifies to the Department of Assessments and Taxation of Maryland:

FIRST:       The name of the corporation is SBG (USA), Inc.

SECOND:      The address of the principal office of the corporation is 1700 Rockville Pike, Suite 400, Rockville, Maryland 20852

THIRD:       The name and address of the resident agent of the corporation who shall serve for one year after dissolution and until the affairs of the corporation are wound up are: Philip J. Griffin, 14530 Woodcrest Drive, Rockville, Maryland 20853.

FOURTH:      The name and address of each of the directors is as follows:

Kourken M. Sarkissian                  Byron-Hill Corporation
                                       4211 Yonge Street, Suite 230
                                       North York, Ontario
                                       Canada, M2P2A9

Robert L. McBride                      909 Cat Hollow Club Drive
                                       Spicewood, Texas 78669

FIFTH:       The name, title, and address of each officer of the corporation is as follows:

Kourken M. Sarkissian                  Byron-Hill Corporation
President                              4211 Yonge Street, Suite 230
                                       North York, Ontario
                                       Canada, M2P2A9

Philip J. Griffin                      SBG-USA, Inc.
Vice President                         1700 Rockville Pike, Suite 400
                                       Rockville, Maryland 20852

Robert L. McBride                      909 Cat Hollow Club Drive
Secretary/Treasurer                    Spicewood, Texas 78669

SIXTH:       The dissolution of the corporation was approved in the manner and by the

S:\LAWFILES\SBG\SBGARTICLESDISSOLUTION.DOC

vote required by law and by the charter of the corporation. The dissolution of the corporation was duly authorized by the board of directors and stockholders of the corporation.

**SEVENTH:** The corporation has no known creditors.

**EIGHTH:** The corporation is dissolved.

The undersigned Vice President and Secretary certify under the penalties of perjury that to the best of my knowledge, information and belief, the matters and facts set forth in these Articles of Dissolution with respect to the approval thereof are true in all material respects.

**ATTEST:**

_____     Date: _____
Robert L. McBride, Secretary/Treasurer

_____     Date: _____
Philip J. Griffin, Vice President

I hereby consent to my designation in this document as resident agent for this corporation.

SIGNED: _____
Philip J. Griffin, Resident Agent

E:\LAWFILES\SBG\SBGARTICLES DISSOLUTION.DOC

**SBG (USA), INC.**
**(a Maryland corporation)**

AFFIDAVIT

STATE OF MARYLAND,               )
                                 ) to wit:
COUNTY OF MONTGOMERY             )

This day Philip J. Griffin personally appeared before me, Stephanie Salatus, a Notary Public for the State of Maryland as aforesaid, made oath as follows:

1.      That he is the Vice President of SBG (USA), Inc. and has personal knowledge of the facts hereinafter set forth.

2.      That to the best of his knowledge and belief, SBG (USA), INC. owned no personal property on January 1, 2000.

_____
Philip J. Griffin

Subscribed and sworn before me this 15th day of February, 2000.

_____
Notary Public

My commission expires: 01/04/03

I

DOCUMENT CODE ___19___   BUSINESS CODE _____

# D 3678299 _____ P.A. _____ Religious _____ Close _____ Stock _____ Nonstock

**Merging**
**(Transferor)** _____

_____

_____

_____

**Surviving**
**(Transferee)** _____

_____

_____

## FEES REMITTED

Base Fee: __50__
Org. & Cap. Fee: _____
Expedite Fee: _____
Penalty: _____
State Recordation Tax: _____
State Transfer Tax: _____
_____ Certified Copies: _____
Copy Fee: _____
_____ Certificates: _____
Certificate Fee: _____
Other: _____

TOTAL FEES: __50__

_____ Credit Card

_____ Check

_____ Cash

(New Name) _____

_____

_____

_____ Change of Name
__✓__ Change of Principal Office
__✓__ Change of Resident Agent
__✓__ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
         and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name

_____

_____ Other Change(s) _____

_____

_____ Documents on _____ Checks

APPROVED BY: _Jm T_

NOTE:

CODE _____

ATTENTION: _____

_____

COMMENT:

MAIL TO ADDRESS: _Law Offices of_
_Arthur F. Lafornatis_
_Suite 305_
_4300 Montgomery Avenue_
_Bethesda, Md. 20814_

# EXHIBIT 7

SUNTRUST BANK, MIDATLANTIC
P.O. BOX 3833
CENTRAL WIRE FACILITY
ORLANDO, FL 32897



# SUNTRUST

SBG USA INC OPERATING
C/O PHILIP J GRIFFIN, RESIDENT AGEN
14530 WOODCREST DR
ROCKVILLE MD 20853-2370

PAGE     1

---

ACCOUNT NUMBER     000333018                    DATE 11/16/2000

---

ADVICE OF WIRE TRANSFER DEBIT(S)

TRANSACTION NUMBER 001116-006584          AMOUNT              $913.42
SENT VIA FEDERAL RESERVE
           SENDING BANK:
B/443:0006963                             A/021000021      CREDIT PARTY:
CRESTAR BANK                              CHASE MANHATTAN BANK N A
ROCK CREEK VILLAGE                        NEW YORK, NY
CMD 6963                                          BENEFICIARY BANK:
                                          NATL COMM BANK MAIN BR JEDDAH SAUDI
                                          ARABIA
                                                  BENEFICIARY:
                                          A/101 34400000104
                                          SAUDI BINLADIN GROUP

PLEASE RETAIN THIS ADVICE.  IT IS YOUR PERMANENT RECORD OF THIS TRANSACTION.
YOU MUST SUPPLY THE TRANSACTION SEQUENCE NUMBER WHEN MAKING AN INQUIRY.

DIRECT INQUIRIES TO ABOVE ADDRESS OR CALL (800) 947-3786.

SBG0002327

# EXHIBIT 8



SBG0001438