"Exhibit A"

COMMONWEALTH OF THE BAHAMAS

SUPREME COURT REGISTRY

OCT 2 1 1999

NASSAU, BAHAMAS

1999

IN THE SUPREME COURT

No: 1216

Equity Side

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

## PETITION

TO THE SUPREME COURT OF THE COMMONWEALTH OF THE BAHAMAS

The Humble Petition of Ghalib Mohammad Binladin of Saudi Binladin Group Prince Abdullah Street, Al-Rawda Dist., Post Box 15468, Jeddah 21444, Saudi Arabia SHEWETH as follows:

1.    Bank Al Taqwa Limited, (hereinafter called "the Company"), was incorporated on the 10th day of March 1988 under the Companies Act as a company limited by shares.

2.    The Registered office of the Company is situate at the Law Chambers of Messrs. Arthur D. Hanna & Co., 10 Deveaux Street, Nassau, Bahamas.

3.    The share capital of the Company is US$50,000,000.00 divided into 500,000 shares of US$100 each.  The amount of the capital paid up or credited as paid up is US$42,923,200.00.

4.    The principal objects for which the Company was established are to carry on business as bankers in all its branches; to carry on business as insurers, financiers, concessionaires, promoters, contractors, manufacturers, merchants, managers, and managing agents and other objects stated in the Memorandum of Association of the Company.

5.    The Company is duly indebted to the Petitioner in the sum of US$2,473,966.58 in respect of a deposit made by the Petitioner with the Company on 13th November 1993 together with profits earned thereon.

6.    On the 5th day of June, A.D. 1997 and again on 12th day of January, A.D. 1998 your Petitioner caused to be served on the Company letters requesting wire transfers of the total balance standing to the credit of the account of the Petitioner and thereafter to

ASH013475

close the said account. The Company informed your Petitioner by way of a letter dated the 23rd January, A.D. 1998 that the transfer could not be effected until 31st day of December, A.D. 1998. Despite the terms of the said letter the proceeds of Account No. 20326 were not and have not been credited to the account of the Petitioner.

       7.     On the 31st day of August, A.D. 1999 your Petitioner caused to be served on the Company by leaving the same at the Registered Office of the Company a demand duly signed under his hand pursuant to section 198(a) of the Companies Act 1992 requiring the Company to pay the said sum which demand was in the following terms:-

      "To:   Bank Al Taqwa Limited

           Registered Office

           10 Deveaux Street

           Nassau,

           Bahamas

<u>RE: MUDARABA ACCOUNT # MUD 20326</u>

Take notice that I the undersigned Ghalib Mohammed Binladin of Post Box 15468, Jeddah 21444, Saudi Arabia, do hereby require you to pay to me forthwith the sum of US$2,473,966.58 together with all profits earned thereon to date on the above-mentioned Mudaraba Account, owing by you to me, by wire transfer under advice to me as follows:-

| | |
|---|---|
| BENEFICIARY NAME: | GHALIB M. BINLADIN |
| US$ ACCOUNT #: | 021262-00230 |
| BANK ADDRESS: | ALBANK ALSAUDI ALFRANSI |
| | UNIVERSITY (JAMEA) BRANCH, |
| | JEDDAH, |
| | SAUDI ARABIA. |
| | FAX: 00-966-2-681 0060 |
| | TEL: 00-966-2-689 2688 |
| ATTENTION: | MR. ADNAN KALKATAWI |

As witness my hand this 31st day of August, 1999.

With best regards,

    Sgd.

GHALIB MOHAMMED BINLADIN"

8. Over three weeks have now elapsed since your Petitioner served the said demand, but the Company has failed and neglected to pay or satisfy the said sum or any part thereof or to make any offer to the Petitioner to secure or compound the same.

9. The Company is deemed to be insolvent and unable to pay its debts under the Companies Act, 1992. The audited financial statements of the Company for the year ended 1998 disclose a loss in the sum of US$8,355,954.

10. In the circumstances and in order to protect the interests of the Petitioner and other creditors it is just and equitable that the Company should be wound up.

YOUR PETITIONER THEREFORE HUMBLY PRAYS as follows: -

(1) That Bank Al Taqwa Limited may be wound up by the Court under the provisions of the Companies Act, 1992.

(2) That some fit and proper person or persons be appointed Official Liquidators to wind up the affairs of the Company

(3) That such other or further order may be made in the premises as to the Court shall be just.

AND YOUR PETITIONER will ever pray.

DATED the 21st day of October, A.D. 1999

CALLENDERS & CO.

Chambers

One Millars Court

Nassau, Bahamas

Counsel & Attorneys for the Petitioner.

NOTE:     It is intended to serve this Petition on Bank Al Taqwa at its Registered Office, 10 Deveaux Street, Nassau, Bahamas.

ASH013477

4

## INDORSEMENT

This Petition was presented to the Court on the 21st day of October A.D., 1999 at

11:00 o'clock in the FORE noon and will be heard by a Judge of the

Supreme Court in the Supreme Court, Parliament Square, Nassau, Bahamas on Monday

the 13th day of Dec A.D., 1999 beginning at 9:30 o'clock in the

FORE noon.

Time to file Affidavit in support extended to twenty-one (21) days.

DATED the 21st day of October A.D., 1999

REGISTRAR. (Acting),

ASH013478

COMMONWEALTH OF THE BAHAMAS

IN THE SUPREME COURT

Equity Side

BETWEEN

IN THE MATTER OF BANK AL TAQWA
LIMITED

AND

IN THE MATTER OF THE COMPANIES
ACT, 1992

---

## PETITION

---

1999
No. 1216

*Callenders & Co.*

CALLENDERS & CO.,
Chambers,
One Millars Court,
Nassau, The Bahamas

Attorneys for the Petitioner



**COMMONWEALTH OF THE BAHAMAS**

**IN THE SUPREME COURT**

Equity Side

**IN THE MATTER OF**

**BANK AL TAQWA LIMITED**

**AND**

**IN THE MATTER OF**

**THE COMPANIES ACT, 1992**

---

**A F F I D A V I T**

---

1999

No.  1216

**ARTHUR D. HANNA & Co.**
**Chambers**
**No. 10 Deveaux Street**
**Nassau, Bahamas**

Attorneys for Bank Al Taqwa Limited

ASH013480

COMMONWEALTH OF THE BAHAMAS

IN THE SUPREME COURT

Equity Side

1999

No. 1216

SUPREME COURT REGISTRY

JAN 13 2000

NASSAU, BAHAMAS

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

## A F F I D A V I T

I, ALI GHALEB HIMMAT, of Campione d'Italia of Italy make Oath and say as follows:

1.       I am the vice-chairman of the board of directors of the above named company (hereinafter called "the company") and I am familiar with the affairs of the company and am duly authorised to make this affidavit;

2.       The company is not indebted to the petitioner in the sum of USD2,473,966.58 or for any amount at all;

3.       The petitioner never made any deposit whatsoever with the company as alleged in the petition herein and the petitioner has misled the Court in alleging or implying that a deposit of moneys was made by him to the company in its capacity as a bank.

4.       In fact, the petitioner's dealing with the company is to the contrary.  By letter dated 13th November 1993 from the petitioner's agent, one Fayez F. Rabaa, a copy of which letter is now produced to me and exhibited hereto and marked "AGH1", the petitioner on or about that date invested the sum of USD1,000,000.00 and again subsequently on 29th May 1996 invested the further sum of USD1,000,000.00 in an investment fund called "a Mudaraba" (hereinafter called "the Mudaraba") and signed his agreement to all of the terms and conditions governing the same.  The Mudaraba agreement (hereinafter called "the agreement") and a correct English translation thereof is now produced to me and exhibited hereto and marked "AGH2";

5.       Funds invested in a Mudaraba do not constitute a debt due from the company to the person investing the same unless and until the assets are completely liquidated and converted to cash and the company, as manager of the Mudaraba account, fails to distribute the same to the persons entitled thereto in accordance with the level of their investment.  Neither can such funds be considered a bank deposit.  Rather, such funds, when added to other funds received from other participants in the Mudaraba account, constitute a joint venture investment

ASH013481

account called a Mudaraba account;

6.      The company is the "Mudarib", that is the manager of the fund, and all moneys received for participation in a Mudaraba are combined in one or more general portfolios. Under the terms and conditions of the agreement and also Islamic Rules which it was agreed would govern the same the Mudarib has no obligation to pay any moneys out of its own assets to any participant in the Mudaraba.  A proper definition of an Islamic Mudaraba and an accurate description of accounting principles customarily employed for the purpose of auditing mudarabas is set out in the memorandum that is exhibited hereto and marked "AGH3". The principles as defined have been and are being followed by all the Islamic Mudaraba participants as the petitioner well knows for he signed and acknowledged and agreed to be bound by the same;

7.      There are in existence several mudarabas, among them one for the shareholders of the company, one for the company and one for other persons of which the petitioner is a participant;

8.      The Mudaraba has been operated and profits and/or losses were made mainly in international trading and the buying and selling of goods or other property.  Further, good profits were made in each and every one of the Ten (10) years of the operation of the Mudaraba except in 1998;

9.      It is illegal and/or improper under the terms and conditions of the agreement and the Islamic Rules which govern the agreement for any profit to be guaranteed to a participant;

10.      In consequence of the 1998 losses to the Mudaraba in which the petitioner was a participant and the subsequent determination of the Islamic Legal Panel   it was determined to liquidate the same.  The Mudaraba is a running investment and therefore before any loss accruing to any participant in the Mudaraba could be calculated the in hand transactions contracted before the termination date of the Mudaraba by the petitioner had to be completed, which the company is expeditiously and correctly doing now.  Because of the losses, in which the petitioner must share, he is entitled to receive from the liquidated Mudaraba account a sum, when finally determined, less than what he now claims but which sum cannot be ascertained at this time because the said liquidation process of the Mudaraba account has not been completed and completion of the same is likely to take years;

ASH013482

- 3 -

11.    The petitioner is aware of and accepted the risk referred to in paragraphs 9 and 10 herein and all other risks of an investment of this nature;

12.    Among the company's Mudaraba procedures, when remitting funds for investment in the Mudaraba a participant is required to and does appoint Al Taqwa Management Organization to perform all internal auditing of the Mudaraba operations.  Further, all external auditing of the same is conducted by independent Bahamian auditors, as required by Bahamian law;

13.    The petitioner has from time to time been kept abreast of the state of the losses to the Mudaraba account.  A copy of a provisional statement dated 30th June 1999 issued by the internal auditor, Al Taqwa Management Organization (hereinafter called "the provisional statement"), which was sent to the petitioner on or about that date is now produced to me and exhibited hereto and marked "AGH4";

14.    If the petitioner were to be paid the sum claimed in the petition or even the interim value of his participation as is stated in the provisional statement which is made up to 30th June 1999 such payment prior to completion of the liquidation process would be in breach of the terms of the Mudaraba agreement and the Islamic Rules and therefore illegal and/or improper.  Moreover, it would also be unfair to the other participants in the Mudaraba who had not given termination notices as they might be made to suffer loss which the petitioner would have succeeded in avoiding, and which he is required to bear pro rata to the level of his investment, such other participants being made to bear, in addition to their own losses, those of the petitioner especially in the event that nothing is due to the petitioner and he may be obligated to contribute from his own funds pro rata for his share of any losses.  The petitioner is well aware of the circumstances described herein and is obviously seeking preference over the other participants in the Mudaraba account and also the company as he knows or is deemed to know that the company has no obligation whatsoever to pay him any moneys out of its own assets but only out of assets, when liquidated as aforesaid, belonging to the Mudaraba account;

15.    Under the provisions and principles governing Islamic Mudaraba and the petitioner's participation in the same as was agreed, there is a difference between terminating and liquidating the Mudaraba.  Under those provisions and principles the termination of the Mudaraba account means that its funds may not be used in any new transaction contracted after

- 4 -

the termination date but the transactions and investments and obligations contracted prior to the same may continue to be managed.  Under the same provisions and principles a liquidation of a Mudaraba means to convert all assets in hand into actual cash.  In the case of actual profit the calculation of the value of a Mudaraba participant's entitlement to same in an ongoing Mudaraba is by means of a valuation of all of the assets in hand and such valuation is conducted using the best international valuation mechanism possible during the course of an audit thereby determining each participant's entitlement to receive the benefit of any such profit.  However, in the case of losses exceeding Twenty per cent. (20%) of the value of a general portfolio any payment to any participant prior to completion of the liquidation would be illegal and/or improper and also unfair to the participants who had not terminated their participations because the value of the assets remaining in the Mudaraba would still be subject to change arising as a result of any new unexpected events occurring between the valuation performed at the date of termination and the actual date of the liquidation of the Mudaraba assets.  At any given moment it is possible to assign a value to the assets in hand in a Mudaraba but such valuation is provisional until the actual conversion of such assets to cash at which time each participant's entitlement or obligation can be precisely defined.  The financial statement exhibited in the petitioner's affidavit gives only a provisional valuation of the assets in hand but does not take into consideration any new unexpected events which might occur prior to actual liquidation of the portfolio and which might affect the final cash value of the same upon liquidation;

16.     In or about 9th June 1997 a circular letter was sent by the company to all participants in the Mudaraba account who had requested a termination of their participations wherein they were informed that at the end of the termination notice they would receive out of the Mudaraba account funds (but in no event from the company's own funds) Eighty per cent (80%) of their entitlement after a proper valuation thereof as aforesaid and the remaining Twenty per cent. (20%) plus or minus any profit or loss respectively.  A copy of the said letter and a correct English translation thereof is now produced to me and exhibited hereto and marked "AGH5";

17.     Because of the implications of the losses, which were incurred as a result of the collapse of the south-east Asian market and which adversely affected the value and sales of the assets in the Mudaraba account, losses to which exceeded Twenty per cent. (20%), and

ASH013484

- 5 -

because also of the likely unfairness, the propriety of making such interim payments to Mudaraba account participants was referred to the Islamic Legal Panel in order to ensure that the company acted correctly in accordance with its obligations as Mudarib and with the terms and/or practice of the Mudaraba account and pursuant to Clause 13 of the Mudaraba agreement. The reference by the company to the Panel was quite proper and prudent;

18.     The Islamic Legal Panel is made up of three (3) of the most famous, knowledgeable and highly respected Islamic legal scholars who have also sat and are sitting on other Islamic Legal Panels for other companies and/or organisations and it was agreed by all parties to the Mudaraba account that their determination of any dispute or matter referred to them would be the sole recourse and would be final and wholly binding on all parties thereto. The Islamic Legal Panel is independent of both the company and the participants in the Mudaraba account;

19.     The Islamic Legal Panel made a report on 3rd July 1999 (hereinafter called "the Report"). A copy of the Report is now produced to me and exhibited hereto and marked "AGH6". The Report, which the company was bound to obey, required, inter alia, the freezing of the Mudaraba and the liquidation of the assets in it;

20.     The board of directors of the company, of which I am a member, then met under the chairmanship of Eng. Youssef Nada, the chairman of the board of directors, and made its own report on the subject, which report (hereinafter called "the Board Report") was sent to all participants in the Mudaraba including the petitioner. The Board Report together with an English translation thereof is now produced to me and exhibited hereto and marked "AGH7". The particulars contained in the Board Report are correct and true and I adopt them as part of this affidavit;

21.     The company, as mudarib, certainly has the responsibility not to pay the petitioner moneys belonging to others which he is not entitled to receive. Neither does the company, as mudarib, have any obligation to pay any moneys to the petitioner out of its own funds;

22.     Further, and contrary to the petitioner's allegations, the company is not insolvent and is quite able to pay its debts and the loss referred to in the petition is a loss to all of the Mudaraba participants, including the petitioner, which is due to no intentional negligence of

ASH013485

- 6 -

the company as mudarib.  The latest audited consolidated financial statements of the company are now produced to me and exhibited hereto and marked "AGH8";

23.    The petitioner is well aware of the circumstances described above and has taken no step to either prove his claim or determine what amount is now due to or from him which benefit or obligation cannot be finally determined at this time and, under the terms of the Mudaraba agreement and Islamic Rules, neither would it be legal or appropriate to attempt to do so;

24.    I verily and truly believe that the petitioner is attempting to improperly use the means of the winding up process to obtain the sum he now claims, to which sum he knows or is deemed to know not to be entitled and to claim the same from the company instead of against the Mudaraba fund that has suffered losses, all of which he has been informed of by the company and which are therefore known to him.  Moreover, the company has been informed by other participants in the Mudaraba account that the petitioner has been attempting to induce them or some of them to act in breach of the terms of the Mudaraba agreement and to improperly claim from the company moneys to which they are or may not be entitled;

25.    I truly believe that filing of the petition for winding up is motivated otherwise than by legal or moral entitlement of the petitioner and the filing of the same has caused and is causing great harm to the company in the conduct of its business as a bank especially if the hearing of the winding up petition should be delayed or become protracted;

26.    The statements contained herein are correct and true.

SWORN at Lugano, Switzerland        )

this 10th day of January, A. D. 2000 )_____

Before me



BRITISH PRO-CONSUL

CONSULAR OFFICER



ASH013486

COMMONWEALTH OF THE BAHAMAS                                    1399

IN THE SUPREME COURT                                          No. 1216

Equity Side

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

C E R T I F I C A T E

These are the exhibits marked "AGH1" to "AGH8" inclusive referred to in the affidavit of

Ali Ghaleb Himmat of even date herein.

Dated this *10th* day of January, A. D. 2000.



J. M. Palmesino
BRITISH PRO-CONSUL

CONSULAR OFFICER



ASH013487

# EXHIBIT AGH1

ASH013488

Cl. 80326

بسم الله الرحمن الرحيم

**30 NOV. 1993**

Date: 13.11.1993
OUR REF. FR111/11

To,
ALTAQWA MANAGEMENT ORGANIZATION S.A
VIALE STEFANO FRANSCINI 22
CH 6900 LUGANO,
SWITZERLAND.

ATTN   :   MR. ALI GHALIB HAMMAT

RE     :   ACCOUNT OPENING FORM - GHALIB M. BINLADIN.

Dear Mr. Hammat,

Please find attached herewith an account opening form duly
signed by Sh. Ghalib M. Binladin for opening Mudaraba account
with BANK ALTAQWA LTD. Bahamas, for USD.1,000.000.00 (US.DOLLARS
ONE MILLION ONLY).

The undersigned will have a limited power of attorney to manage
the account with you.

Furthermore our bankers is asking for your account particulars
with Bank Paribas Suisse specially account number to transfer the
funds. Please advise us full details by return fax at our
folloing address:-

                    POST BOX 15468
                    JEDDAH 21444,
                    SAUDI ARABIA.

                    TEL/FAX : 00 966 2 699 0015
                              00 966 2 699 0032

                    CONTACT PERSON : FAYEZ F. RABAA

Thanking you, we look forward hearing from you very soon.

Yours faithfully,

FAYEZ F. RABAA

Encl   :

ASH013489

'712 '99 20:42                                                                                        ☑003

*Translation of the filled Form in Arabic*

(∧)

## To Messers Al Taqwa Management Organization.

Viale Stefano Franscini 22, CH 6900 Lugano/Switzerland • Tel: 091 231066 • Fax: 091 237967 • Telex: 844 197 TMO CH

Peace be upon you

Since your organization is performing among its activities, verification and auditing the accounts of Bank Al Taqwa Ltd., Bahamas, such verification and auditing needs information regarding the relationship between the bank and its clients as well as remittances, withdrawals, mudaraba, and shares...etc.

We herewith inform you that we signed today the below mentioned application form on which you can rely for your performance. We also confirm our knowledge and acceptance of the fact that the banking relationship as well as the financial responsibilities, soliciting funds as well as responding to it is between us and Bank Al Taqwa LTD., Bahamas and not between us and you and this is to ensure your conformity to the Swiss law requirements.

### Information Extracted From Application Form

NOTE: Please write in CAPITAL LETTERS and as it is written on your passport or I.D. card, sign it and send it together with a copy of the transferring Bank's receipts.

Name: *Ghalib Muhammad Bin Ladin*        Family: *BINLADIN*

Date of Birth: *29. 4. 1959.*  Place of Birth: *Mecca. Al Mokarama* Nationality: *Saudi*

Current address: *Jeddah 21444   P.O.Box 15466   S. Arabia, Fayez. Rabaa*

Residence Phone: ..................  Office Phone: ..................  Telex/Fax: ..................

Permanent address: ..................

Residence Phone: *699008*  Office Phone *699 00 75*  Telex/Fax: *990214*

Occupation: ..................

I, the above mentioned, transferred by telex dated .... / .... /19 .... through Bank: ..................
City: ..................  an amount of US Dollars ..................  Amounts must be received in full. Transfer fees should be paid by transferor separately. The transfer was quoted with the following text:
TO THE ACCOUNT OF BANK AL TAQWA, Ltd.-Bahamas with:

**N.B.**
Keep the name of the bank through which the transfer was done to the account of Bank Al Taqwa, Ltd.-Bahamas and remove the others.

N.B. Fill your choice from the below mentioned cases and strike out the others.

Reason of the transfer:
1) The full value of _____ Preference Shares of BANK AL TAQWA, LTD.-Bahamas
2) The full value of _____ Preference Redeemable Shares of BANK AL TAQWA, LTD.-Bahamas.
3) Value of One third of _____ Preference Shares of BANK AL TAQWA, LTD.-Bahamas.
   And I commit myself to remit the remaining two thirds at the dates fixed by the bank.
4) For opening Mudaraba account with BANK AL TAQWA, LTD.-Bahamas.

Authorizations:
1) I neither authorized nor joined any one in the account.
2) The account is joint between me and ..................  equally, born on ..../..../19.... in (country) ..................
   and it is the right of any of us to use the account and its funds individually as
   if he is its sole owner without any responsibility to Bank Al Taqwa Ltd.-Bahamas.  Signature of the Joint Person ..................
3) I authorize *Brother, Baker Muhamed BINLADIN* born in (country) *USSRA* ..... on *10. 15. 1946.* to sign orders for all what concerns this account including remittances, withdrawals, etc. without any responsibility to BANK AL TAQWA, Ltd.-Bahamas.
   Signature of authorized person ..................  *Signature of Baker BINLADIN* ..................

Drafts and cheques
Normally bank drafts as well as personal cheques indicating: (pay to order BANK AL TAQWA, Ltd.-Bahamas) are acceptable, and should be mailed registered with the signed forms but in this case 10 US-Dollars collection fee must be added. Acceptance of drafts and cheques is subject to their collection.
City: ..................  date ..../..../19.... drawn on Bank: ..................
*I read the Bank's Articles of Association as well as the general information and its Mudaraba conditions, mentioned on the back side, and I herewith confirm my acceptance to them.

Date: ..................  *Signature of Ghalib BINLADIN* Signature: ..................

This form was endorsed at 1/1/93 and it invalidates all previous forms.

*Limited Power of Attorney to Manage the account to Mr. Fayez F. Rabaa (Signature)*

M.S.

ASH013490





*Translation of Doc. (A)*



To Messers **Al Taqwa Management Organization,**
Viale Stefano Franscini 22, CH 6900 Lugano/Switzerland ▪ Tel: 091 231066 ▪ Fax: 091 237967 ▪ Telex: 844 197 TMO CH

Peace be upon you

Since your organization is performing among its activities, verification and auditing the accounts of Bank Al Taqwa Ltd., Bahamas, such verification and auditing needs information regarding the relationship between the bank and its clients as well as remittances, withdrawals, mudaraba, and shares...etc.
    We herewith inform you that we signed today the below mentioned application form on which you can rely for your performance. We also confirm our knowledge and acceptance of the fact that the banking relationship as well as the financial responsibilities, soliciting funds as well as responding to it is between us and Bank Al Taqwa LTD., Bahamas and not between us and you and this is to ensure your conformity to the Swiss law requirements.

**Information Extracted From Application Form**

NOTE: Please write in CAPITAL LETTERS and as it is written on your passport or I.D. card, sign it and send it together with a copy of the transferring Bank's receipts.

Name: ...................................................... Family: ..................................................................

Date of Birth: .................................... Place of Birth: ............................... Nationality: ..............................

Current address: .......................................................................................................................

Residence Phone: ............................ Office Phone: ............................ Telex/Fax: ............................

Permanent address: ...................................................................................................................

Residence Phone: ............................ Office Phone ............................ Telex/Fax: ............................

Occupation: .............................................................................................................................

I, the above mentioned, transferred by telex dated .... / .... /19.... through Bank: .............................
City: ........................................ an amount of US Dollars ................... Amounts must be received in full. Transfer fees should be paid by transferor separately. The transfer was quoted with the following text:
TO THE ACCOUNT OF BANK AL TAQWA, Ltd.-Bahamas with:

N.B.
Keep the name of the bank through which the transfer was done to the account of Bank Al Taqwa, Ltd.-Bahamas and remove the others.

N.B. Fill your choice from the below mentioned cases and strike out the others.

Reason of the transfer:
1) The full value of _____ Preference Shares of BANK AL TAQWA, LTD.-Bahamas
2) The full value of _____ Preference Redeemable Shares of BANK AL TAQWA, LTD.-Bahamas.
3) Value of One third of _____ Preference Shares of BANK AL TAQWA, LTD.-Bahamas.
    And I commit myself to remit the remaining two thirds at the dates fixed by the bank.
4) For opening Mudaraba account with BANK AL TAQWA, LTD.-Bahamas.

Authorizations:
1) I neither authorized nor joined any one in the account.
2) The account is joint between me and ................................. equally, born on ..../..../19.... in (country) .................
and it is the right of any of us to use the account and its funds individually as
if he is its sole owner without any responsibility to Bank Al Taqwa Ltd.-Bahamas.    Signature of the Joint Person ..............................
3) I authorize ................................. born in (country) ............ on ..../..../19.... to sign orders for all what concerns this account including remittances, withdrawals, etc. without any responsibility to BANK AL TAQWA, Ltd.-Bahamas.
    Signature of authorized person...................................................................................................

Drafts and cheques
Normally bank drafts as well as personal cheques indicating: (pay to order BANK AL TAQWA, Ltd.-Bahamas) are acceptable, and should be mailed registered with the signed forms but in this case 10 US-Dollars collection fee must be added. Acceptance of drafts and cheques is subject to their collection.
If this is your case please indicate the draft or cheque number ................. date ..../..../19.... drawn on Bank: ..................
City: ....................................................................................................................................
*I read the Bank's Articles of Association as well as the general information and its Mudaraba conditions, mentioned on the back side, and I herewith confirm my acceptance to them.

Date: ................................................. Signature: .................................................

This form was endorsed at 1/1/93 and it invalidates all previous forms.

ASH013491

# EXHIBIT AGH2

ASH013492



## Conditions governing Islamic Mudaraba with Bank Al Taqwa Ltd.

1. The Bank opens Mudaraba Accounts for those who apply for it. Each account should not be less than 1,000 (one thousand) U.S. Dollars.

2. As pre conditions to open Mudaraba account:
   A—Bank Al Taqwa Ltd. should receive the Mudaraba funds.
   B—The filled and signed application forms should be received from those who want to open accounts.

3. Investment of Mudaraba Funds starts at the beginning of the next Gregorian month following the receipt of funds and signed forms as mentioned in No. 2 A. and B.

4. The Bank shall have the right to invest funds of Mudaraba accounts in accordance with Islamic Mudaraba (Qiradh) rules, in the fields, types and places and with methods and means left to the discretion of the Bank and in accordance with the decisions of its Management without interference or conditions on the part of the funds owner. The Bank whall have the right to gather Mudaraba accounts into a single portfolio or into several portfolios subject to the discretion of the Bank.

5. The Mudaraba account is a running account, and if "The Funds Owner" wishes to totally or partially wind up his account, he must inform the Bank (The Mudareb) of his intentions in writing at least a year prior to the closing date. In contingencies, the Bank's Management could allow the fund's owner to draw sums from his account, irrespective of prior notice, when giving convincing reasons. In this case no profits or losses will be calculated for the withdrawn amounts from the beginning of the Georgian year on which the amount was withdrawn, until the date of withdrawal.

6. The Bank shall have the right to combine some of its funds to the Mudaraba portfolios to exploit them together, on the understanding that the Bank's funds added to such a portfolio will be treated as other Mudaraba funds.

7. The Mudaraba account holder's receipt of his account's balance and profits shall be considered an exoneration on his part of the Bank and the other Mudaraba funds owners from liability concerning reserve balances accruing from the investment portfolio that is based on "estimated evaluation" in a continuous Mudaraba.

8. The Mudaraba account is personal and shall not be ceded to a third party without the Bank's approval.

9. The Bank shall guarantee the Mudaraba funds only when it contravenes the conditions of Mudaraba or in cases of losses resulting from intentional negligence, but otherwise the losses which be incurred shall be borne by the owners of Mudaraba accounts.

10. After deduction of Mudaraba expenses, the holder of the Mudaraba account shall have the right to earn three quarters of the net profits (75%); the Bank shall have the right to a quarter thereof (25%).

11. Since the closing of final accounts and balance sheets are done once yearly at 31st December accordingly profit and losses of Mudaraba accounts will be added or deducted. Mudaraba with the Capital as well as with the profit will continue on rolling except in case the bank receives instructions to direct the profit or to remit them in current account, at least 3 months prior to the end of the financial year.

12. Profits and losses shall be calculated at the end of each Gregorian year, regardless of the time of its remittance. The distribution of the profit will not take place before auditing the Balance sheet and the Consolidated Financial Statements at the end of the year, and its approval by both the Islamic Legal Congrol Committee and the General Assembly.

13. In the event of a litigation concerning the implementation of the contract, the owner of the funds and the Bank shall have agreed herewith to refer such a dispute to the Bank's Islamic Legal Control Committee to be determined in accordance with Islamic Sharia rules within 120 days. The Body's majority decision shall be binding on both the Bank and funds owner. May God grant us success.

ation
as a
991.
rds.
lee)
sory
ting
ect,
and



## 2/2 Functions of Islamic banks

Islamic banks were developed on a foundation that does not permit the separation between temporal and religious matters. That foundation requires compliance with Shari'a as a basis for all aspects of life. This covers not only religious worship but also business transactions which should comply with Shari'a precepts. For example, one of the most notable aspects of Islamic teaching is the prohibition of usury and the perception of money as a medium of exchange and a means of discharging financial obligations, but not a commodity. Indeed, money does not have a time-value aside from the value of goods that are being exchanged through the use of money, in accordance with Shari'a. Accordingly, Islamic banks are founded on the concept of sharing profits and losses consistent with the Islamic concept of "profit is for that who bears risk" . Islamic banks reject interest as a cost for the use of money and loans as an investment vehicle. **(para 8)**

In conducting their investments, Islamic banks make sure that their funds and those available to them for investment generate earnings that are both compatible with Shari'a precepts and

37

*Concepts of financial accounting*
*for Islamic banks & financial institutions*

ASH013494

☑011



# AL TAQWA MANAGEMENT ORGANIZATION

Service Company incorporated according to the Swiss Law
Viale S. Franscini 22, P.O. Box 2072, CH 6901 Lugano, SWITZERLAND
Phone: 091/9231056 • Fax: 091/9237967

## AUDIT VERIFICATION OF
## BANK AL TAQWA Ltd. BAHAMAS

Bank Al Taqwa Ltd. Bahamas

مراجعة حساب مضاربة مع

MUDARABA ACCOUNT WITH

Performed according to the assignment of:

based on information provided by them and under their responsibility.

المراجعة والتدقيق تما بناء على تكليف من :
واعتمادا على المعلومات المقدمة منهم وتحت مسؤوليتهم.

Name: BINLADIN, GHALEB MOHAMMAD
AUTHORIZING: ENG. BAKR M. BINLADIN

A/C #: MUD/20326

Address:

Date: 30/06/1999

City:                              Country:                              Page: 1

## THIS AUDIT VERIFICATION CONSIDERS ALL MOVEMENTS UP TO 30/06/1999

| DATE التاريخ | DESCRIPTION البيان | DEBITS U.S.$ مدين | CREDITS U.S.$ دائن | BALANCE U.S.$ الرصيد |
|---|---|---|---|---|
| 31/12/1997 | BALANCE BROUGHT FORWARD | | | 2,303,507.06(C) |
| 01/01/1998 | 1997 PROFIT DECLARED ON 01/03/1998 SHIFTED TO MUDARABA | | 170,459.52 | 2,473,966.58(C) |
| 31/12/1998 | CLOSING BALANCE 1998 | | | 2,473,966.58(C) |
| 30/04/1999 | 1998 LOSS OCCURRED TO MUDARABA DEBITED TO MUDARABA ACCOUNT | 610,327.56 | | 1,863,639.02(C) |

*[handwritten annotation:]* → this date after auditing 31/12/98 accounts it could not be debited before ending the auditing.

*[watermark:]* COPY

- The dates shown above are the Mudaraba starting dates and not the dates of receipt of the funds transferred. This was according to the Mudaraba conditions accepted by you.

التواريخ المذكورة أعلاه هي تواريخ بداية المضاربات وليست تواريخ إستلام المبالغ. وهي توافق ما جاء في شروط المضاربة التي واقفتم عليها.

Bank Al Taqwa Ltd. Bahama

If your payments were made by check, please note that such amounts are valid only subject to their collection by

المبالغ التي تدفع بواسطة شيكات صحيحة ومشروطة بتحصيلها.

Sent on: 30  06    99

أرسلت بتاريخ  30  06  99

ASH013495

# EXHIBIT AGH5

ASH013496



**BANK AL-TAQWA**
Limited



Date:      09/06/97
Our ref.:  20326-MUD
Your ref.:

Subject: Breaking your Mudaraba one year notice

GHALEB M. BINLADEN

[Arabic body text]

| | 20326 |
| | USD*2,303,507.06 |
| | USD*2,303,507.06 |
| | 01/12/93 |
| | 09/06/97 |
| | 01/01/98 |
| | 31/12/98 |

ASH013497

☑008

# REPORT OF THE ISLAMIC LEGAL CONTROL COMMITTEE

"In the name of Allah, The Most Gracious and Most Merciful"

July 3, 1999

All praise are due to the Almighty God who guided us onto this, for we would certainly not have found the right path unless Allah had guided us. Our prayer and blessings are upon (Prophet Muhammad) the mercy of Allah to the worlds, and His evidence of guidance to mankind, he is our leader and guide; upon his household and all his companions.

The Islamic Legal Control Committee of Bank Al Taqwa held a meeting on 3-July-1999 (20th Rabi Al Awal 1420 AH), and reviewed the management as well as the financial report for the year ended 31/12/1998, and concluded the following:

1. The Committee declares that Bank Al Taqwa transactions and operations for 1998 were executed in accordance with the Islamic Rules, and in compliance with the contracts and guidelines set by the committee. The bank suffered losses in 1998, as is shown in the annual financial report.

2. Shareholders in Bank Al Taqwa (and in all other Islamic Banks) are aware that investment in Islamic Banks is subject to profit and loss. Therefore, in case of losses the shareholder will suffer a part of the losses according to his share in the equity.

3. Islamic 'mudaraba' rules define the relation between 'mudaraba' account owners (Rabbul Mal), and the bank as 'mudarib'. According to the Islamic rules the bank invests the mudaraba funds and divides profits according to the agreement between the two parties (and this has been the case for the last 10 years). The losses should be borne by the Mudaraba accounts owners, subject there is no transgression or misconduct by 'mudarib'.

Since the losses in 1998 were due to external factors beyond the control of the Bank's management and these factors affected as well most financial institutions who invested in southeast Asia.

'Mudaraba' account owners will have to bear an amount of losses pro rata to their portions in the investment operations.

4. The committee studied the withdrawal requests by some 'mudaraba' account owners who gave regular notice to that effect and resolved that:

   A. Such withdrawal is considered under account and subject to islamic 'mudaraba' conditions.

   B. Withdrawal is not applicable until it is made sure that all funds invested in mudaraba are safe, so that the other 'mudaraba' account owners are not harmed.

   C. The committee acknowledged that the management is proceeding with the real liquidation of all 'mudaraba' assets (including debts, property and goods inventories) up to 31/12/1998, ✓ which is separated from the 'mudaraba' contracted after 1/1/1999 with respect to operations and accounting.

   D. The committee declares that separation of the 'mudaraba' according to those two periods (before 31/12/1998 and after 1/1/1999) achieves the 'Islamic' goal to determine the rights of old and new investors, within the investment and its results.

   E. The actual liquidation of the 'mudaraba' assets of the period before 31/12/1998 is the solution.

ASH013498

@010

## BOARD OF DIRECTOR'S REPORT

July 5, 1999

For the first time in ten years the Bank has suffered losses. These losses incurred from its activity in Southeast Asia, same as it happened to most companies who were investing in the region, which has solid economy and best return before its collapse.

Such losses have to be deducted from the Mudaraba funds as stipulated by the Islamic Mudaraba rules which states that: "the profit incurred is shared by the two parties according to their specified agreement and [the funds owner assumes all the losses]" (items No. 9 and 10 of the Mudaraba contract).

It was inevitable for the Board before taking any decision, to inform the General Assembly about the losses and their possible impact.

Considering the following points:

A   Item No. 5 of the Mudaraba contract stipulate that the Mudaraba account is a *running account* with the *exception* that it can be terminated by giving regular notice.

B   In case of losses: owners of the Mudaraba accounts who have not yet given the notice to windup their Mudaraba will be subjected to bear losses of others who gave notice to windup their Mudaraba accounts, in case they receive their balances according to the notice, and before all liabilities, external debts and liquidation of mudaraba assets has been transformed to cash.

C   *The exact* amount of the losses incurred cannot be defined by closing the year consolidated accounts, but only after all liabilities, external debts and final actual liquidation of the Mudaraba assets have been completely achieved.

The General Assembly of Bank Al Taqwa Ltd. Bahamas in its extra-ordinary meeting held on June the 28th 1999 (14.03.1420H.) after consulting with the Islamic Legal control committee resolved that:

1)   Payments from all Mudaraba accounts opened with the Bank prior to 31 December, 1998 should be suspended (out of fairness to all parties and legal considerations) until all liabilities, external debts and final **actual** liquidation of Mudaraba assets have been completely achieved.

2)   All mudaraba contracted after 01/01/1999, must be separated with respect of operations and accounting.

3)   The Shareholders losses are deductible from their equities.

4)   All Mudaraba Accounts Holders and Shareholders to be informed accordingly.

We hope that these first temporary losses will not effect the Bank's prospects or its clients confidence and we pray for upcoming profitability activity as we were used

# EXHIBIT AGH8

ASH013500

**TO BE USED AT THE HEARING OF THE PETITION HEREIN
ON TUESDAY, 28TH MARCH, A. D. 2000 AT 10:00 A. M.**

COMMONWEALTH OF THE BAHAMAS     1999

IN THE SUPREME COURT     No. 1216

Equity Side

SUPREME COURT REGISTRY
B. F. U 3
MAR 27 2000
7 4 2 3 1
NASSAU, BAHAMAS

IN THE MATTER OF BANK AL TAQWA LIMITED

AND

IN THE MATTER OF THE COMPANIES ACT, 1992

**SUPPLEMENTARY AFFIDAVIT**

I, ENG. YOUSSEF NADA, of Campione d'Italia in Switzerland make

Oath and say as follows:

    1.    I am the chairman of the board of directors of the above named

company (hereinafter called "the company") and I am familiar with the affairs of the

company and am duly authorised to make this affidavit;

    2.    That this affidavit is made in opposition to the petition filed herein;

    3.    That I have seen and read the affidavit of Ali Ghaleb Himmat filed

herein on the 13th day of January, A. D. 2000 ("the Himmat Affidavit") and I concur with

the contents thereof;

    4.    That I have seen and read the affidavit of Ghaleb Mohammad

Binladin filed herein on the 9th day of March, A. D. 2000 ("the Binladin affidavit");

    5.    Referring to Clause 13 of the Mudaraba agreement conditions, an

English translation of which is exhibited in the Himmat affidavit and which agreement was

written and subsequently signed by the petitioner in Arabic, a copy of which Arabic

document is now shown to me, marked "YN1" and exhibited hereto, that the word

referred to as "litigation" is more correctly translated into English as "dispute", meaning

any dispute and not only litigation, and this the petitioner well knew.  Further, that the

petitioner has sought to avoid his obligation under the said Clause 13 to refer to the only

competent authority, the Islamic Legal Control Committee ("ILCC"), any dispute

concerning the implementation of the Mudaraba agreement for a determination and instead

ASH013501

-2-

presented to the internal auditor his intention to collect moneys from it. Further, that Mr.

Binladin has not referred his dispute to the ILCC and therefore his petition to this

Honourable Court is improper and premature and in the circumstances the company

humbly requests that it be dismissed;

6.      That as regards the allegations contained in paragraphs 3 and 4 of

the Binladin affidavit I deny that the company selected the Mudaraba as the investment

vehicle and aver that the moneys paid to the company by the petitioner were paid to it not

in its capacity as a bank but as a Mudarib (a Manager of a Mudaraba) with the specific

request as to how the moneys were to be used in accordance with the conditions set forth

in the Mudaraba agreement which he accepted and signed. Further, I deny that the

Current Account Verifications referred to did or were intended to verify account balances

as alleged but instead that they represent the movements of all Mudaraba related funds,

which was specifically referred to in Clause 11 of the Mudaraba agreement. The current

account referred to by the petitioner is merely an intermediate account for the Mudaraba

to be used in two (2) cases: in one case where moneys received are identified in an

account for technical accounting purposes and then shifted to the Mudaraba; in the other

case (as referred to in one of the said Account Verifications) to indicate the share of a

participant's profits shifted to the Mudaraba after identification and in default of

instruction from the participant in accordance with Clause 11 of the Mudaraba agreement.

There is now shown to me marked "YN2 (a) to (e)" and exhibited hereto copies of

acknowledgements sent to us by the petitioner indicating that he had seen the Account

Verifications and accepted the matters referred to therein.  Accordingly, it was not

possible to transfer any balances as requested by the petitioner in his affidavit for the

reasons set forth in the Himmat affidavit referred to by the petitioner;

7.      That contrary to paragraph 7 of the Binladin affidavit the company's

Consolidated Balance Sheet does not show Mudaraba accounts as liabilities of the

company but instead indicate specifically and separately the liabilities of the company and

the liabilities of the Mudaraba accounts which he did not point out in his affidavit.

-3-

Further, Mudaraba accounts are not liabilities of the company because in the case of loss

to the Mudaraba the Mudarib is not liable to return the original amount of an investment;

        8.     That as a result of the petitioner's request to terminate his

participation in the Mudaraba and for the reasons set forth in the Himmat affidavit,

reference was made by the company to the ILCC, as referred to in paragraphs 4 and 6 of

the ILCC's Report which is exhibited to the Himmat affidavit as Exhibit "AGH6".  In any

event, the ILCC is obligated by Article 95 of the Articles of Association of the company, a

true copy of which is now shown to me and marked "YN3", to, inter alia, review and

approve all of the company's acts and had they determined that any activity was conducted

in contravention of the Sharia (Islamic Law) as required by the Memorandum of

Association, to rescind or amend such acts.  The petitioner acknowledged that had read

the said Articles of Association and confirmed that he had accepted and agreed to be

bound by them;

        9.     That the contents of this affidavit are correct and true to the best of

my information, knowledge and belief.

**SWORN** at Nassau this 두앙 )

day of March, A. D. 2000    )_____

        Before me

**NOTARY PUBLIC**

ASH013503

**COMMONWEALTH OF THE BAHAMAS**                                    **1999**

**IN THE SUPREME COURT**                                          **No. 1216**

Equity Side

### IN THE MATTER OF BANK AL TAQWA LIMITED

### AND

### IN THE MATTER OF THE COMPANIES ACT, 1992

### C E R T I F I C A T E

These are the exhibits marked "YN1 to YN3" referred to in the affidavit of Eng. Youssef

Nada dated the 27th day of March, A. D. 2000.

Dated this 27th day of March, A. D. 2000.

**NOTARY PUBLIC**

ASH013504

**COMMONWEALTH OF THE BAHAMAS**

**IN THE SUPREME COURT**



1999

No. 1216

Equity Side

## IN THE MATTER OF BANK AL TAQWA LIMITED

### AND

## IN THE MATTER OF THE COMPANIES ACT, 1992

### O R D E R

**BEFORE MR. ACTING JUSTICE DAVID HAYTON**

The 29th day of March, A. D. 2000

**UPON THE PETITION** of Ghaleb Mohammad Binladin of Saudi Binladin Group, Prince

Abdullah Street, Al-Rawda Dist., Post Box 15468, Jeddah 21444, Saudi Arabia who

claimed to be a creditor of the above named company on 21st October, A. D. 1999

preferred unto this Court;

**AND UPON HEARING** Colin Callender, Esq. of Callenders & Co. of counsel for the

petitioner Ghaleb Mohammad Binladin **AND** Hon. Arthur D. Hanna of Arthur D. Hanna

& Co. of counsel for Bank Al Taqwa Limited ('the Company");

**AND UPON READING** the affidavits of the petitioner dated the 3rd day of November,

A. D. 1999 and the 5th day of March, A. D. 2000 and the affidavit of Ali Ghaleb Himmat

dated the 10th day of January, A. D. 2000;

**THIS COURT DOTH ORDER** that the said petition do stand dismissed out of this

Court;

**AND IT IS FURTHER ORDERED** that the petitioner the said Ghaleb Mohammad

Binladin do pay to the said Bank Al Taqwa Limited its costs of and occasioned by that

action such costs to be taxed if not agreed.

### BY ORDER OF THE COURT

### R E G I S T R A R

ASH013505

COMMONWEALTH OF THE BAHAMAS

IN THE SUPREME COURT

Equity Side

IN THE MATTER OF
BANK AL TAQWA LIMITED

AND

IN THE MATTER OF
THE COMPANIES ACT, 1992

O R D E R

1999

No: 1216

Filed on the          day of April, A. D. 2000

**ARTHUR D. HANNA & Co.**
No. 10 Deveaux Street
Nassau, Bahamas
Attorneys for Bank Al Taqwa Limited

ASH013506