# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) ) ) 03 MDL 1570 (GBD) (FJM)  ECF Case |

This document relates to: *All Cases*

## PLAINTIFFS' FACTUAL AVERMENT SUPPORTING PLAINTIFFS' THEORIES OF GENERAL JURISDICTION AS TO THE SAUDI BINLADIN GROUP

1.  Based on the Factual Averments asserted herein with the Exhibits referenced herein and attached to accompanying Declaration of Robert T. Haefele (Haefele Declaration), SBG has systematic and continuous contacts with the United States spanning more than 17 years, coordinated through its one-person Maryland office outside of the nation's Capitol and through its employee, Fuad Rihani, who has worked for SBG in the U.S. from a home-based office established and supported by SBG.[1]

2.  From at least 1993 until as late as December 2000[2], SBG maintained an office in Maryland and coordinated its U.S. activities directly from that office.

---

[1] An Attorney Declaration of Robert T. Haefele identifying each of the exhibits referenced in this Factual Averment is appended to this Factual Averment and true and correct copies of each exhibit are attached thereto. Citations herein to exhibits are to the exhibits attached to the Haefele Declaration.

[2] Exhs. 1, 2, 3, 4, 5, and 6. Articles of Incorporation for Cromwell Corporation were filed on June 16, 1993 (SBG0002430-35) and amended on June 30, 1993 to change the name to SBG, USA (SBG0002436). SBG, USA was 100% wholly-owned by SBG (SBG0000012-30). The entity was officially dissolved December 31, 1999, but the affairs of the corporation were not concluded until at least November or December 2000. (SBG0000031; SBG0001385; SBG0002327)

3.      When SBG closed that office, SBG continued to coordinate its activities in the U.S. through its single remaining employee physically present in the U.S.[3]

4.      SBG's activities in the U.S. in the relevant time period are of three principal types: (1) business activities performed in the U.S. by an individual working for SBG physically present in the U.S., using facilities paid for and supported by SBG; (2) business activities in the U.S. performed by SBG's U.S.-based subsidiary to promote, facilitate, and track SBG business with U.S. business interests; coupled with (3) sundry additional activities of SBG employees while physically present within the U.S.

## I.      SBG Has Continuously Operated within the U.S. Through its U.S.-Based Employee.

5.      Dr. Fuad Rihani has worked continuously for SBG, and for only SBG, since its formation and for SBG's predecessor, before SBG was formed.[4] According to Dr. Rihani, since he began working for SBG, his only employment has been for SBG at the direction of his immediate "boss", SBG Chairman, Bakr Binladin.[5]

---

[3] Factual Averment, ¶¶ 5-25, and exhibits referenced therein.

[4] Exh. 7. (Rihani dep., 22:9-11 ("The only private company I worked for is the Saudi Binladin Organization, and the Mohammed Binladin Organization, and the Saudi Binladin Group."))

[5] Exh. 7. (Rihani dep., page 22:3 ("Bakr Binladin, who is my immediate boss at SBG...."); Rihani dep., page 65:3-5 ("Q: Do you do any work for the Binladin family unrelated to the SBG company business? A: No."); Rihani dep., page 81:2-5 ("Q: Do you have any work outside of SBG? A: No. Have you had any work outside of SBG? A: No."); Rihani dep., page 83:23 to 84:3 ("Q: While you have been working with SBG, have you had any other employment? ... A: No."); Rihani dep., page 93:14 to 94:5 ("Q: You work for SBG, correct? A: Yes. Q: And you work directly for Mr. Bakr Binladin? A: Bakr Binladin. Q: And you took directions [from] Mr. Binladin; in other words, he was the one that told you what to do, correct? A: Yes. Q: And when he told you what to do, you would do that, correct? A: Yes. Q: And you have indicated to us that you haven't worked for anybody other than directly for the Saudi Binladin Group, correct? A: Correct.").

6.      Although SBG may quibble with Dr. Rihani's role as an employee of SBG, Dr. Rihani himself acknowledged the employment relationship variously throughout his deposition.[6]

7.      The available facts evidence an employment relationship between SBG and Dr. Rihani. Throughout his deposition, Dr. Rihani indicated that SBG and Rihani's "boss," SBG Chairman Bakr Binladin, maintained substantial control over the scope, manner, and means of Dr. Rihani's work[7]; SBG provided for whatever tools Dr. Rihani needed to perform his job[8]; the exclusive employment relationship between the parties lasted for decades without a written agreement[9]; and throughout that entire period Dr. Rihani steadily received monthly compensation and employment benefits.[10]

---

[6] Exh. 7. (Rihani dep., page 29:4-6 ("Q: While you were on the board of the IREF, you were also *employed* by SBG, too, correct? A: Correct"; Rihani dep., page 39:24 to 40:2 "Q: While you were on the Middle East Policy Council, were you *employed* by SBG, as well? A: Yes"); Rihani dep., page 63:4-12 (Q: Sir, do you have healthcare benefits? A: Only in the United States. And reimbursable costs; that's part of the understanding under the labor law in Saudi Arabia, that the *employer* is responsible for health benefits, health coverage. Q: And SBG provides them, sir? A: It reimburses me for any costs incurred for my healthcare"); Rihani dep., page 63:18-24 ("I reside in a villa that is provided by my *employer*. I use a car provided to me by the *employer*") (emphasis added)).

[7] Exh. 7. (Rihani dep., page 93:14 to 94:5 ("You work for SBG, correct? A: Yes. Q: And you work directly for Mr. Bakr Binladin? A: Bakr Binladin. Q: And you took directions from Mr. Binladin; in other words, he was the one that told you what to do, correct? A: Yes. Q: And when he told you what to do, you would do that, correct? A: Yes.")).

[8] Exhs.7, 8, 9 and 10. (Rihani dep 77:14-25 (SBG provided for Rihani's tools such as dedicated voice and fax lines for his home office in the U.S., fax and photocopier machines, and "[a]nything related to [Dr. Rihani's] work…."); MEPC000004, MEPC000041; MEPC004224 (evidencing that Dr. Rihani used an SBG email address).)

[9] Exh. 7. (Rihani dep., page 95:13-16 ("is there any written contract that you have with SBG? A: No, I don't.").)

[10] Exh. 7. (Rihani dep., page 68:9 to 69:13 (SBG has compensated Dr. Rihani monthly ranging from $150,000 to $250,000 per month); Rihani dep., page 63:4 to 24 (SBG has provided Dr. Rihani with healthcare and other employee benefits).)

3

8. Additionally, Dr. Rihani has regularly corresponded using SBG letterhead[11] and on websites and letterhead of organizations with which he has been affiliated Dr. Rihani has been identified as the Director of Research and Development at SBG.[12]

9. For at least half of each year Dr. Rihani's employment for SBG is performed in the U.S.[13]

10. Although SBG argues that Dr. Rihani's U.S. presence is merely for Dr. Rihani's convenience, not only has Dr. Rihani himself indicated that his presence here benefits SBG,[14] but he has identified and used the U.S. address as an SBG address both to send and receive business correspondence for SBG.[15]

11. The evidence supports the conclusion that Dr. Rihani's work in the U.S. served SBG business purposes. For example, his presence in the U.S. has afforded SBG with significant U.S. business contacts.[16]

---

[11] *See, e.g.,* Exh. 11. (MEPC004712; Correspondence produced by IRF, Rihani letter of July 22, 1993 to IRF on SBG letterhead and signed by Dr. Rihani as Director, SBG-Research & Development.)

[12] *See, e.g.,* Exhs. 12, 13, 14 and 15. (MEPC000003, Rihani Deposition Exhibits 3, 4, and 5.)

[13] Exh. 7. (Rihani dep., page 61:24 to 62:3.)

[14] *See, e.g.,* Exh. 7. Rihani dep., page 24:20-25; 31:20 to 32:4 (Rihani attended meetings in the U.S. for SBG's Bakr Binladin because it was more convenient for SBG for Rihani to do so)

[15] *See, e.g.,* Exhs. 16, 17, 18, 19, 20, 21 and 22. Correspondence Produced by IRF, Rihani letters of August 4, 1995, August 29, 1995, May 6, 1996 to IRF on SBG letterhead using return address in Hickory, NC; IRF letters of August 7, 1995 and May 20, 1996, Addressed to "Mr. Fuad Rihani, Saudi Binladin Group, ... Hickory, NC 28601; and Correspondence Produced by IREF, IREF letters of August 7, 1995 and November 30, 1995, Addressed to "Saudi Binladin Group, c/o Dr. Fuad Rihani, ... Hickory, NC 28601").

[16] *See, e.g.,* Exh. 23. (MEPC003643 ("Fuad Rihani reports that [SBG representatives] Shk Yahia and Shk Bakr [Binladin] will be out of town while you're [former Ambassador Chas Freeman] in Jeddah, but [SBG representative] Shk Hassan [Binladin] will meet with you. After talking about the council he would like to talk a little business with you.").)

12. Former SBG employee, Philip Griffin, who previously managed SBG's U.S.-based office, testified as late as November 2007, that Dr. Rihani "follows up on business relationships that need some nurturing ... and assistance from time to time."[17]

13. His presence in the U.S. has also facilitated SBG's active participation in a variety of U.S.-based organizations that have ties to SBG's overall business activities, allowing SBG to make substantial individual and organizational business contacts.

14. **SBG's Contacts Through Middle East Policy Council**: Dr. Rihani has long been actively involved with the Middle East Policy Council, a Washington, DC-based organization.

15. Communications produced by MEPC indicate that, notwithstanding SBG's and Dr. Rihani's denials, SBG not only financial supported the MEPC,[18] but Dr. Rihani was an intermediary through which SBG officials provided guidance for Council decisions.[19] Contacts made and supported through the MEPC provide SBG with significant U.S. business and political connections relevant to SBG's business interests.

16. **SBG's IRF/IREF Activities in the U.S.:** Benefiting from Dr. Rihani's presence in the U.S., SBG has long been actively involved in both the International Road Federation and

---

[17] Exhs. 24 and 25. Philip Griffin dep., page 110:23 to 111:5; see also, *e.g.*, SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 7 (indicating that Dr. Rihani met in the US with various SBG existing or potential business associates).

[18] *See, e.g.*, Exhs. 10 and 26. (MEPC004224 and MEPC004494; Rihani dep., page 44:17 to 45:7.)

[19] *See, e.g.*, Exhs. 9, 27, and 7. (MEPC000041 (Email from SBG's Rihani to MEPC's Roth, "Received your email ... and will discuss it with Sheikh Bakr. Will provide a joint opinion soon." And "Received your email .... Will discuss the subject with Sheikh Yahia and advise of the result."); MEPC003829 (Email from SBG's Rihani to MEPC's Roth "Sheikh Bakr [Binladin] does not see anything wrong with MEPC accepting contributions from Malaysia. Please convey this message to Amb. Freeman."). Dr. Rihani denied such exchanges with SBG regarding positions to be advocated or espoused by MEPC. Rihani dep., page 44:10-16.)

5

the International Road Education Foundation, related entities based in Virginia, just outside of Washington, D.C.[20]

17.    In addition to being longstanding financial supporters of the IRF and IREF organizations, SBG's Chairman, Bakr Binladin is a longstanding board member of IRF, but is active in the organization primarily through Dr. Rihani because of Dr. Rihani's presence in the U.S.[21]

18.    Dr. Rihani is on the board of the IREF, identified by the organization as Director of R&D at the Saudi Binladin Group.[22]

19.    Rihani regularly attends the functions of the organizations in the U.S. and SBG reimburses him the business expenses for such activity.[23]

20.    SBG's U.S.-Saudi Arabian Business Council Activities in the U.S.: Benefiting from Dr. Rihani's presence in the U.S., SBG has been active in U.S. functions of the U.S.-Saudi Arabian Business Council. For example, on behalf of SBG, Dr. Rihani participated in annual meetings of the Council, including in Washington, DC in September and October 1999.[24]

21.    He also facilitated, on behalf of SBG, additional functions for the Council, such as the USA-KSA Companies Conference, held in Washington, D.C., in June 1999.

---

[20] Exh. 28. (Correspondence Produced by IRF, IRF letter of March 30, 2004, Addressed to "Dr. Fuad Rihani, Director, Saudi Binladin Group," indicating that SBG joined IRF in 1984 and SBG Chairman Bakr Binladin was elected to the IRF board initially in 1988.)

[21] See, e.g., Exh. 7. (Rihani dep., page 24:20-25; 31:20 to 32:4 (Rihani attended meetings in the U.S. for SBG's Bakr Binladin because it was more convenient for SBG for Rihani to do so).)

[22] Exh. 15, (Rihani Dep., Exhibit 5, page 2.)

[23] Exh. 7. (Rihani Dep., page 30:23 to 31:14; 66:21 to 67:5.)

[24] Exh. 7. (Rihani Dep., page 85:23 to 86:3.)

22.     SBG was not only an active participant of the conference, but was also a primary sponsor of the event.[25]

23.     On behalf of SBG, Dr. Rihani also attended a conference arranged by the U.S.-Saudi Arabian Business Council at the Saudi Embassy in Washington, DC, in March, 2000.[26]

24.     Rihani's Additional Activities for SBG in the U.S.:  Similarly, because of his presence in the U.S., Dr. Rihani was available to facilitate SBG Chairman Bakr Binladin's attendance at the U.N. in September 2000, for which SBG reimbursed him his business expenses.[27]

25.     Dr. Rihani presence in the U.S. also permitted him, on behalf of SBG, to attend the following: a seminar on toll roads in September/October 1999; to deliver gifts to the Carter Center in Atlanta, GA in March 2000; to attend a strategic seminar for SBG in Atlanta, GA in August 2000; to attend the annual meeting of the World Future Society in Minneapolis, MN in July/August 2001; to attend a meeting with the University of Miami regarding the University's program on coastal zone management and the protection of coral reefs in Miami, FL in August 2001; and to attend a meeting with T.Y. Lin International in San Francisco, CA in November 2001.[28]

---

[25] *See, e.g.,* Exhs. 29 and 7. (Rihani Dep., Exhibit 6, page 5-6 (SBG is listed as a sponsor of the Washington, DC event and Dr. Rihani is listed as a contact for the event); Rihani dep., page 90:2-16 (Dr. Rihani acknowledges he was a contact for the event and that he was one of the leaders participating in the event).)

[26] Exh. 25. (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 6.)

[27] Exh. 7. (Rihani Dep., page 65:6 to 66:7.)

[28] Exh. 25. (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5-7.)

7

## II.     SBG, USA's Presence and Activities In the U.S. Are Attributable to SBG.

26.     From 1993 until 2000, SBG used its Maryland-based alter ego subsidiary, SBG, USA, to promote and facilitate business activities in the United States.[29]

27.     The formation documents for SBG, USA indicate that SBG, USA was created for the purpose of dispensing business services for SBG.[30] Through SBG, USA, SBG (among other things) facilitated business connections with Washington insiders helpful to promoting SBG business interests,[31] engaged a variety of business-enhancing organizations and events in the U.S.,[32] and sought and actively tracked additional U.S.-generated business opportunities and existing U.S.-based investments.[33]

28.     Common Ownership: SBG, USA shared common ownership with SBG because SBG, USA was 100% wholly-owned by SBG.[34] In fact, the sole employee of SBG, USA referred to SBG as the "mother company"[35] and recognized an SBG executive as his "boss" to whom he reported directly.[36]

29.     Financial Dependency: SBG, USA was completely reliant on SBG not only for all of its financing but also for how the revenue was spent. Since its creation, every dollar of SBG,

---

[29] Exh. 24. (Griffin Dep., page 66:5-14.)

[30] Exh. 24. (Griffin Dep., page 59:10 to 65:8.)

[31] Exh. 24. (Griffin Dep., page 27:6-18.)

[32] Exh. 24. (Griffin Dep., page 31:14, 105:23 to 107:15, 108:11 to 110:22.)

[33] Exh. 24. (Griffin Dep., page 80:6-14; 101:5 to 103:5. For example, SBG's U.S.-based employees actively tracked SBG business interests in the U.S., such as SBG's interest in an entity known as Iridium, to report back to SBG supervisors in Saudi Arabia. SBG employee Philip Griffin attended Iridium board meetings in the U.S., and otherwise communicated with Iridium representatives in the U.S. to report back to Saudi Arabia.)

[34] Exh. 30. (SBG00000026, tax filing indicating SBG owns 100% of SBG, USA.)

[35] Exh. 24. (Griffin Dep., page 56:6.)

USA's revenue came from SBG. The complete salary of SBG, USA's sole employee was paid by SBG and SBG reviewed, approved and ultimately paid for all activities of the U.S.-based office. SBG, USA generated no independent revenue and had no source of income aside from SBG.[37]

30. Interference & Control: The sole employee and primary operating officer of SBG, USA was hired by SBG to represent SBG in the U.S. and throughout his tenure on the job was paid directly by SBG, considered an SBG executive to be his boss to whom he reported directly, and required SBG's approval for every SBG, USA expense.[38] And ultimately, when SBG determined to close the office, SBG, USA was closed.[39]

### III. The Contacts Represented By Activity of Other SBG Representatives Traveling to the U.S. for SBG Business Must Be Considered As Part of the Totality of Circumstances Amounting to Minimum Contacts.

31. A number of other SBG employees have regularly traveled to the U.S. for SBG business. SBG disclosed in discovery more than a dozen additional instances of SBG representatives – other than Dr. Rihani or Philip Griffin – traveling to the U.S. for SBG-related activities, including:

- Issam Barghooti: 5-7 day trip in or about Boston, MA Attend meeting with Bose 1999 (precise dates not available) Corporation engineers regarding sound system for Haram Grand Mosque in Mecca.[40]

- Fahd Rustom (possibly accompanied by Amr Abdel Bary): Oct. 14-22, 1999 Greensboro, NC Attend High Point furniture fair; stopover in New York.[41]

---

[36] Exh. 24. (Griffin Dep., page 27:13-14; 97:21 to 98:4.)

[37] Exh. 24. (Griffin Dep., page 69:7 to 70:13)

[38] Exh. 24. (Griffin Dep., page 17:15-18; 69:7-10; 97: 21 to 98:4; 69:11 to 70:3.)

[39] Exh. 24. (Griffin Dep., page 105:2-3.)

[40] Exh. 25. (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

9

- Issam Barghooti: 5-7 day trip in or about Boston, MA Attend meeting with Bose 2000 (precise dates not available) Corporation engineers regarding sound system for Haram Grand Mosque in Mecca.[42]

- Yasser Mohammed Saed Aldeein: March 12, 2000 SBG requests a US visa for decorating engineer Yasser Mohammed Saed Aldeein; the purpose of his trip is identified as to "finalize some works in your good country."[43]

- Fahd Rustom and Amr Abdel Bary: Apr. 6-12, 2000 Greensboro, NC Attend High Point furniture fair.[44]

- Bashar Al-Sibai: June 3-10, 2000 Chicago, IL to attend a seminar at Caterpillar S.A.R.L.[45]

- Bakr Binladin: Bakr Binladin, the Chairman of SBG, traveled to the United States in September 2000 as a member of an official Saudi delegation to the Millennium Summit of the United Nations, which was held in conjunction with the opening ceremonies for the United Nations General Assembly. Bakr Binladin was accompanied in New York by Dr. Rihani.[46]

- Yasser Mohammed Saed Aldeein: October 10, 2000 SBG again requested a US visa for decorating engineer Yasser Mohammed Saed Aldeein; the purpose of his trip is again identified as to "finalize some works in your good country."[47]

- Abdullah Awad Binladin: Approximately Feb. 24 Orlando, FL to attend InfoSec World and March 6, 2001 San Diego, CA to attend the Geospatial Information and Technology Association (GITA) conference.[48]

---

[41] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

[42] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

[43] Exh. 31.  (SBG0002529.)

[44] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 6.)

[45] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

[46] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 7.)

[47] Exh. 32.  (SBG0002526.)

[48] Exh. 25.  (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

- Abdullah Binladin stayed in San Diego between March 3, 2001 and March 7, 2001.[49]

- Yasser Bakr: Apr. 16-22, 2001 in Greensboro, NC to attend High Point furniture fair and purchase furniture.[50]

- Hesham Bendari: Aug. 2001 (precise dates not available) Los Angeles, CA to meet with JD Edwards regarding software services for SBG Public Buildings & Airports Division.[51]

- Bakr Binladin: The text of a fax indicates that the SBG Chairman was in the U.S. in October 1998. ("I spoke with Abu Bakr [Binladin] today and he is working with a potential investor for our group. He is anticipating meeting with the investor in London on November 4, 1998. He would like both of us to make tentative arrangements to be in London on November 3, 1998 to prepare for the meeting. He will confirm whether we should come by Saturday. I am preparing a package for him and will send it to his hotel before he leaves the US.)[52]

Respectfully submitted,

PLAINTIFFS' EXECUTIVE COMMITTEES

Date: November 18, 2010        BY:    /s/
                                      Robert T. Haefele

---

[49] Exh. 33. (SBG0002524.)

[50] Exh. 25. (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

[51] Exh. 25. (SBG's March 16, 2007 Supplemental Responses to Plaintiffs' First Set of Jurisdictional Interrogatories, p. 5.)

[52] Exh. 34. (SBG0002617, October 29, 1998 GDRI fax to Said Ghachem.)