# EXHIBIT A



**MotleyRice**
ATTORNEYS AT LAW

Robert T. Haefele
*Licensed in NJ, PA, SC*

South Carolina Office
Direct Dial 843.216.9184
Direct Fax 843.216.9450
rhaefele@motleyrice.com

December 2, 2009

**VIA FEDERAL EXPRESS**
Hon. Frank Maas, U.S.M.J.
United States District Court
 For the Southern District of New York
United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re:   *In re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (GBD)(FM);
      *Burnett, et al. v. Al Baraka Investment & Development, et al.*, 03 CV 9849 (GBD)(FM)

Dear Judge Maas:

      Pursuant to Judge Daniels' direction during the July 15, 2009 case management conference wherein Judge Daniels instructed the parties to refer all discovery disputes to Your Honor's attention, we write on behalf of the *Burnett* plaintiffs to request that Your Honor enter an order, pursuant to F.R.C.P. 37(a), compelling defendant Al Haramain Islamic Foundation ("AHIF") to provide complete and non-evasive responses to plaintiffs' discovery requests. On July 25, 2003, while the *Burnett* case was still pending in the United States District Court for the District of Columbia, the Honorable James Robertson, U.S.D.J., issued an order denying AHIF's motion to dismiss (DC Docket Entry 225 in Civil Action No. 02-1616 (JR)). After Plaintiffs served discovery on AHIF, received and examined AHIF's discovery responses, and communicated identified deficiencies to counsel for AHIF, defendant AHIF has refused to correct the deficiencies. Accordingly, plaintiffs request that the Court enter an order directing AHIF to provide complete and non-evasive answers to plaintiffs' requests, as outlined herein, or risk institution of sanctions.

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000
f. 843.216.9450

321 South Main St.
Providence, RI 02903
o. 401.457.7700
f. 401.457.7708

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681
f. 860.882.1682

275 Seventh Ave., 2nd Floor
New York, NY 10001
o. 212.577.0040
f. 212.577.0054

      At issue are AHIF's responses to Plaintiffs' Requests for Production numbered 2, 3, 4, and 6–48 and 50 (attached to the Declaration of Robert T. Haefele at Exhibit 1 (requests) and 3 (responses), hereinafter "Haefele Decl."), and its responses to Plaintiffs' Interrogatories numbered 1-48 (Haefele Decl. at Exh. 2 (interrogatories) and 4 (responses)). Plaintiffs have met and conferred with counsel for AHIF on several occasions, including most recently in November 2009, when plaintiffs' counsel apprised counsel for AHIF of the issues to be addressed to the court's attention and asked whether AHIF would modify its original position.[1] Despite Plaintiffs' entreaties, AHIF has refused to respond fully to Plaintiffs' requests, making doubtful assertions that it cannot produce requested documents about other closely related entities or their overlapping and intimately involved officers and directors, because they are "separate entities," distinct from AHIF. Plaintiffs challenge this assertion, as the facts here show

320 Chestnut St.
Morgantown, WV 26505
o. 304.413.0456
f. 304.413.0458

---

[1] In addition, pursuant to Your Honor's direction to provide opposing counsel a copy of correspondence to the Court five business days before sending the correspondence to the Court (Docket Entry 1992), plaintiffs' counsel provided counsel for AHIF a copy of this letter on November 12, 2009, and thereafter delayed its submission at the request of counsel for AHIF.

www.motleyrice.com


that they are all intimately related, and the weight of the case law requires AHIF to produce all of the available requested discovery.

AHIF's other reasons for refusing discovery, which Plaintiffs dispute, include AHIF's boilerplate objections that the discovery sought is overbroad, vague, unduly burdensome, etc.; that Plaintiffs' 50 interrogatories exceeded the 50 interrogatories upon which the parties had agreed; that it will not produce certain documents until a protective order has been entered, despite an existing umbrella confidentiality order[2]; that it is not obligated to produce documents regarding contributions to or from Al Haramain "whether in [any currency], goods, services or any other action which has been defined as material support in 18 USC 2339(a), because AHIF unilaterally defines that no donation received or given was "material support;" and AHIF is not obligated to update its responses, despite recognizing that at least one response (Response to Request 30) is admittedly outdated and incomplete.

Pursuant to the Federal Rules of Civil Procedure, a party answering discovery requests must endeavor to furnish all available discoverable information that is responsive to the requests. FED. R. CIV. P. 33; *McConnell v. Costigan*, No. 00-4598, 2001 U.S. Dist. LEXIS 18736, at *9 (S.D.N.Y. Nov. 16, 2001) (party answering must make reasonable efforts to secure responsive documents); *Martin v. Brown*, 151 F.R.D. 580 (W.D. Pa. 1993) (party answering must promptly furnish responsive information available through reasonable efforts). If a party fails to respond fully to discovery requests, the discovering party can file a motion to compel. FED. R. CIV. P. 37(a). For purposes of a motion to compel, an evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond. FED. R. CIV. P. 37(a)(4).

### AHIF May Not Refuse To Answer Discovery Requests About Other Al Haramain Entities Based On Its Assertion That They Are "Separate Entities." (Document Requests 2-4, 6-45 And Interrogatories 3-26, 29-42 And 44-48)

AHIF has refused to produce documents and answer interrogatories relating to Al Haramain Saudi Arabia, Al Haramain Worldwide, and the Qur'an Foundation. AHIF objected on the grounds that they are "separate entities," asserting that AHIF "does not have possession, custody, or control of their records." (*See* Defendant AHIF's Responses to Plaintiffs' Requests for Production p. 3-28, and Defendant AHIF's Responses to Plaintiffs' Interrogatories p. 4-32, attached to Haefele Decl. at Exhs. 3 and 4, respectively).

AHIF's objections place excessive emphasis on a purported formal corporate distinction between the various al Haramain entities and their officers, differences that are not dispositive of AHIF's discovery obligations. AHIF is obliged to respond to the interrogatories by furnishing "*information available*" to AHIF; and to respond to the document requests by producing the requested items in AHIF's care, custody, *or control.*" FED. R. CIV. P. 33 (b)(1)(B); FED. R. CIV. P. 34 (a)(1); *see Jacoby v. Hartford Life*

---

[2] On November 13, 2009, AHIF withdrew the need for a confidentiality order as a ground for objecting and produced additional documents. Plaintiffs reserve any disputes regarding this additional production.

*& Accident Ins. Co.*, 254 F.R.D. 477, 479 (S.D.N.Y. 2009) ("Defendant is obliged to produce requested materials that are within its possession, custody or control, not merely those within its possession"); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) (ordering defendant to furnish information in the hands of its former corporate officer). Instead, AHIF has limited its responses to information and items only within its immediate possession, steadfastly refusing to fulfill its discovery obligation to obtain information otherwise within its control – for example, information and documents in the custody of the other Al Haramain branch offices or officers.

Al Haramain Saudi Arabia, Al Haramain Worldwide, and the Qur'an Foundation are all part of the same worldwide network of one Al Haramain organization, and even if they are technically separate entities as Defendant claims, well-settled law deems documents that are in the possession of one entity to be under the control of another entity in the circumstances present here. *See Am. Rock Salt Co., v. Norfolk S. Corp.*, 228 F.R.D. 426 (W.D.N.Y. 2004); *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75 (W.D.N.Y. 1996); *Cooper Indus., Inc. v. British Aerospace, Inc.* 102 F.R.D. 918 (S.D.N.Y. 1984). When determining whether one entity has control over documents in the physical possession of another, "the focus is on the nature of the relationship between the two corporations." *Alcan Int'l Ltd.* 176 F.R.D. at 78. The term "control" is broadly construed, with consideration given to several factors to determine when documents in the possession of one entity are deemed under the control of another. *Securities & Exch. Comm'n v. Credit Bancorp, Ltd.*, 194 F.R.D. 469 (S.D.N.Y. 2000); *Am. Rock Salt Co.* 228 F.R.D. at 457 (*citing Uniden Am. Corp. v. Ericsson Inc.* 181 F.R.D. 302 (M.D.N.C. 1998)). These factors include whether the entities' "history, association, assignments, and transactions together show sufficient mutuality," commonality of ownership, an exchange or intermingling of directors, officers, or employees of the two entities, an exchange of documents between the entities in the ordinary course of business, and involvement of the non-party in the litigation. *See id.*

The term "control" includes "the legal right of the producing party to obtain documents from another source upon demand." *See M.L.C., Inc. v. N. Am. Philips Corp*, 109 F.R.D. 134 (S.D.N.Y. 1986) (*citing Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)). In fact, this Court has held that "a party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court." *M.L.C.* at 136 (*citing Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D.N.Y. 1978)); *see also Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595-596 (S.D.N.Y. 1978) (although plaintiff attested to having none of the requested documents in his "possession," there was no showing that the banking records were not within his "control," and plaintiff was ordered to request Swiss banks to furnish him with the documents he had been directed to produce).

The Second Circuit has emphasized that "the fact that the documents are situated in a foreign country does not bar their discovery. *Marc Rich & Co. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983) (grand jury investigation), *cert. denied*, 463 U.S.

1215; *United States v. First Nat'l City Bank*, 396 F.2d 897, 900-01 (2d Cir. 1968) (grand jury investigation). As this Court has noted,

> Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad. If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents. Defendant has improperly resisted the orders of this court.

*Cooper Indus.*, 102 F.R.D. at 920.

In *Cooper Industries*, the court ordered a litigating subsidiary to produce documents of its British parent corporation even though the parent was not a party to the litigation. *Id.* The parent was the manufacturer of planes that were the subject of the lawsuit. *Id.* The defendant subsidiary was wholly-owned by the British parent at the time the lawsuit was filed, and was the distributor and servicer of the parent's aircraft in the United States. *Id.* at 919. In granting the plaintiff's motion to compel, the court noted, "it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." *Id.* at 919-920. The court concluded, "Defendant must produce the documents demanded if the documents are found either in defendant's possession or in the possession of the British affiliate." *Id.*

The court reached a similar result in *Alcan International Ltd. v. S.A. Day Manufacturing Co.*, 176 F.R.D. 75 (W.D.N.Y. 1996). In *Alcan*, the defendant moved to compel the plaintiff, Solvay Performance Chemicals ("SPC") to produce documents in the possession of Solvay Fluor, a non-party foreign corporate affiliate of SPC. *Id.* The court noted that both SPC and Solvay Fluor were "corporate members of a unified worldwide business entity" under the common control of another company. *Id.* at 79. The court also found that SPC and Solvay Fluor used the same corporate logo in promotional materials and that SPC's president and manager had regular contact with Solvay Fluor. *Id.* The court held that, due to the intertwined relationship between SPC and Solvay Fluor, it was "inconceivable" that SPC would not have access to Solvay Fluor's documents and the ability to obtain them. *Id.*

AHIF, Al Haramain Saudi Arabia, Al Haramain Worldwide, and the Qur'an Foundation are all intertwined as parts of the same worldwide Al Haramain organization, with its worldwide headquarters located in Riyadh, Saudi Arabia. In fact, in the Alphabetical Listing of Specially Designated Nationals and Blocked Persons published by the United States Office of Treasury's Office of Foreign Asset Control ("OFAC"), the United States Government lists as one of the alternate names of AHIF, "Al-Haramain: United States Branch.."[3] When the U.S. Treasury Department

---

[3] Haefele Decl., Exh. 5 (Alphabetical Listing of Specially Designated Nationals and Blocked Persons published by the United States Office of Treasury's Office of Foreign Asset Control, excerpt

announced the designation of AHIF on September 9, 2004, the Treasury press release identified AHIF as the "U.S. branch of the Saudi Arabia-based Al Haramain Islamic Foundation."[4] The U.S. Treasury Department further commented on the degree of interaction between the Al Haramain headquarters in Riyadh and its various branches, including the U.S. branch, in a previously Classified June 2004 memorandum. Commenting on the designation and the reason for the eventual removal of Al Haramain leader, Aqeel Abdul Aziz Al-Aqil, the memo states:

> Among the reasons for AL-AQIL's removal was his "absolute centralization" of AHF, according to a Saudi news report ... Mansour Al-Kadi, [redaction] cited AL-AQIL's "autocratic and centralist governance" of AHF as the main reason for his resignation, according to an Arabic language posting on an Internet forum. [redaction] Al-Kadi's purported posting on the Internet identifies AL-AQIL as the "only individual with final decision making on spending ... and the one with the authority to hire employees, even if it is just a janitor.[5]

The U.S. Department of the Treasury also stated, "the AHF headquarters, under Al-Aqil's leadership, provided funding and instructions that governed the activities of AHF throughout the world, including in Bosnia, Albania, Iraq, *the United States*, and elsewhere."[6]

The facts about AHIF's founding start to show the degree of intertwining between the U.S. branch office and the Riyadh headquarters. In October 1997, Aqeel Abdul Aziz Al-Aqil (a/k/a Ageel Al-Ageel, Aqeel Al-Aqeel, Aqeel al-Aqil), the founder and long-time leader of Al Haramain in Saudi Arabia and the president of AHIF, granted Soliman Al-Buthe of Saudi Arabia power of attorney to further the "goals and objectives of Alharamain Foundation activities in the United States of America."[7] Both Al-Aqil and al-Buthe have been designated by the United States and the UN 1267 Sanctions Committee as supporters of terrorism because of Al Haramain's

---

regarding Al Haramain, available at http://www.treas.gov/offices/enforcement/ofac/sdn/sdnlist.txt).

[4] Haefele Decl., Exh. 6 (U.S. Dep't of Treasury Press Release JS-1895, "U.S.-Based Branch of Al Haramain Foundation Linked to Terror; Treasury Designates U.S. Branch, Director," released September 9, 2004, at p. 2, available at http://www.treas.gov/press/releases/js1895.htm).

[5] Haefele Decl., Exh. 7, 0006469 to 0006483, at 0006473 (U.S. Dep't of the Treasury, Memorandum for R. Richard Newcomb, Director of Office of Foreign Assets Control); *see also* Haefele Decl., Exh. 8, PUBLIC-AR0254 – PUBLIC-AR0255 (FBIS, "Al-Hayah Reports 'Dismissal' of Saudi Al-Haramayn Charity Director General," stating that one of the reasons for Al-Aqil's eventual removal was his "absolute centralization"); Haefele Decl., Exh. 9, PUBLIC-AR0258 – PUBLIC-AR0269 (U.S. Dep't of Treasury translation of Statement from Mansour al-Qadi Deputy Manager of Al Haramain Foundation posted on the Arabic language website of The Arab Forum located at http://alsaha.fares.net/, where al-Qadi characterizes the "centralist governance" of al Haramain).

[6] Haefele Decl., Exh. 7, 0006469 to 0006483, at 0006473 (U.S. Dep't of the Treasury, Memorandum for R. Richard Newcomb, Director of Office of Foreign Assets Control) (emphasis added).

[7] *See* Haefele Decl. at Exh. 10, AHIF000914 (Power of Attorney).

support for al Qaida.[8] In October 1997, Al-Buthe and Pete Seda (a/k/a Pirouz Sedaghaty, Abu Yunus Sedaghaty) registered AHIF with the Oregon Secretary of State.[9] In December 1997, Al-Buthe purchased property located at 3800 S. Highway 99 in Ashland Oregon using travelers checks brought into the United States from Saudi Arabia.[10] This property became the physical address for AHIF, a U.S. branch office of the greater Al Haramain organization.[11]

AHIF's assertion that the U.S. branch office of Al Haramain is independent and distinct from the Al Haramain headquarters in Riyadh and Al Haramain Worldwide is belied by their intermingling of officers, day-to-day operations, and finances. The president of the U.S. branch office of Al Haramain, Aqeel Al-Aqil, was the general manager/director for Al-Haramain, Saudi Arabia, and lived in Saudi Arabia.[12] The vice president of the U.S. branch office, Mansour al-Kadi, served as the deputy director for Al Haramain headquarters in Riyadh.[13] Soliman al-Buthe, the treasurer of the U.S. branch office, conducted his duties from Riyadh office[14] and served as the Chairman of the United States Committee of Al Haramain in Riyadh. The communications and interactions of these individuals evidence that AHIF was

---

[8] Haefele Decl. at Exh. 11, at 8 (U.S. Dep't of Treasury, "Additional Background Information on Charities Designated Under Executive Order 13224," available at http://www.treas.gov/offices/enforcement/ key-issues/protecting/charities_execorder_13224-a.shtml); Haefele Decl. at Exh. 12 (U.S. Dep't of Treasury Press Release JS-1703, "Additional Al-Haramain Branches, Former Leader Designated by Treasury as Al Qaeda Supporters – Treasury Marks Latest Action in Joint Designation with Saudi Arabia," released June 2, 2004, available at http://www.treas.gov/press/releases/ js1703.htm); and Haefele Decl., Exh. 6 (U.S. Dep't of Treasury Press Release JS-1895, "U.S.-Based Branch of Al Haramain Foundation Linked to Terror; Treasury Designates U.S. Branch, Director," released September 9, 2004, available at http://www.treas.gov/press/releases/js1895.htm).

[9] Haefele Decl. at Exh. 13 (Oregon Secretary of State Business Entity Data for Al Haramain Foundation, Registry No. 600623-88).

[10] *See* Haefele Decl. at Exh. 14, AHIF001537 – AHIF001573, at AHIF001540 (Affidavit in Support of an Application for Search Warrant).

[11] *See id.*

[12] *See* Haefele Decl. at Exh. 15, AHIF000007 – AHIF000018, at AHIF000009 (Al-Haramain Islamic Foundation, Inc. I.R.S. Form 1023 (1999)); Haefele Decl. at Exh. 16, AHIF001503-AHIF001517 at AHIF001506 (Al-Haramain Islamic Foundation, Inc., I.R.S. Form 990 (2001)); Haefele Decl. at Exh. 14, AHIF001537 – AHIF001573, at AHIF001543 (Affidavit in Support of an Application for Search Warrant); Haefele Decl. at Exh. 17 ("Foundation Administration" section from Al Haramain website, archival version available at http://web.archive.org/web/ 20030623052712/http://alharamain.org /alharamain/eng/inner.asp?order=1&num=1).

[13] *Id; see* Haefele Decl. at Exh. 18 (Mansour A. Al-Kadi's business card, Government Exhibit 307, United States v. Osama Bin Laden).

[14] Haefele Decl. at Exh. 15, AHIF000007 – AHIF000018, at AHIF000009 (Al-Haramain Islamic Foundation, Inc. I.R.S. Form 1023 (1999)); Haefele Decl. at Exh. 16, AHIF001503-AHIF001517 at AHIF001506 (Al-Haramain Islamic Foundation, Inc., I.R.S. Form 990 (2001)); Haefele Decl. at Exh. 19, AHIF000178-180 (Seda writes to "Brother Soliman [al-Buthe] and all of our dear Brothers in Saudi Arabia"); Haefele Decl. at Exh. 20, AHIF000196 – AHIF000199 (Seda again writes to al-Buthe in Saudi Arabia).

merely a U.S. branch office of the greater Al Haramain organization with its headquarters centered in Riyadh.

The Al Haramain organization – both the Riyadh headquarters and the U.S. branch – have regularly recognized the interrelationship between the Riyadh headquarters and its U.S. branch office. In response to questions from the IRS regarding its 501(c)(3) application, AHIF represents that "[t]he United States foundation is a part of the world wide foundation."[15] References to AHIF on websites for the Al Haramain organization further evidence the intertwining of the Al Haramain branch with the Riyadh headquarters. After opening the U.S. branch office, Al Haramain reported the accomplishment in the "Our Activities" section of its website, under a subtitle labeled "American Branch," commenting "Opened and activated US office" and listed the various activities of the US branch office as Al Haramain activities.[16] The "Contact Us" section of the website lists the Riyadh office as the "Head Office" and lists the Ashland address of the U.S. Branch office as the "Alharamain Educational Center."[17] In addition, from October 4, 1999 through February 16, 2004, when Al Haramain's Kosovo Branch in Albania was publicly soliciting contributions, funds, donations and zakat via Al Haramain's separate "Kosovo Relief Fund" webpage,[18] the contact and bank account and routing information for the U.S. branch office was included on the webpage.[19] Even when AHIF used letterhead identifying its address in Ashland, Oregon, it still listed the website for the entire Al Haramain organization as its own website address, without distinction.[20]

Other day-to-day operations of Al Haramain also show that AHIF was part of the larger organization. The various Al Haramain entities routinely issued communications using the same Al Haramain letterhead, with "AL-HARAMAIN ISLAMIC FDN. Head Office - Riyadh" in English on one side, Arabic on the other side, and the Al Haramain logo in between[21] Many of the communications from the

---

[15] Haefele Decl. at Exh. 21, AHIF001424—AHIF001425, at AHIF001424 (August 17, 2000 Letter from Thomas J. Wilcox, CPA to the Internal Revenue Service).

[16] *See* Haefele Decl. at Exh. 22, at 4-5 ("Our Activities" section from Al Haramain website, archived version available at http://web.archive.org/web/20020603123651/www.alharamain.org/english/ouractivities.htm).

[17] Haefele Decl. at Exh. 23, available at http://web.archive.org/web/20010628011405/www.alharamain.org/english/index.htm.

[18] Haefele Decl. at Exh. 24, available at http://web.archive.org/web/20040216162727/http://kosova.hypermart.net/harameen.html.

[19] *Id.* at 2.

[20] *See, e.g.,* Haefele Decl. at Exh. 25, AHIF000805 (Communication from Bilal Abdul-Kareem as AHIF office manager), Haefele Decl. at Exh. 26, AHIF000825 (AHIF correspondence to Riyadh headquarters); Haefele Decl. at Exh. 27, AHIF001667 – AHIF1669 (AHIF correspondence to Riyadh headquarters).

[21] *See, e.g.,* Haefele Decl. at Exh. 28, AHIF000615 (Communication from AHIF on al Haramain letterhead); Haefele Decl. at Exh. 29, AHIF000807-000809 (Communication from AHIF on same al Haramain letterhead); Haefele Decl. at Exh. 30, AHIF000914 (Power of Attorney from Al Haramain,

U.S. branch office to the Riyadh headquarters include reports or "proposals" wherein Seda asks the Riyadh headquarters for permission, funding, or information;[22] and make clear that Seda considered AHIF to be merely a branch office of the Riyadh organization, and that without Riyadh's permission or funding the project under consideration was considered terminated.[23] For example, in a November 23, 1998 letter from Seda at AHIF to Al Haramain Riyadh headquarters, entitled "Proposal Regarding Permanent Establishment of the *Dawah* Tent at the Ashland Office," Seda thanks the Riyadh headquarters for a tent that the Riyadh headquarters had sent to the U.S. branch office, and acknowledges that "the wonderful authentic wool Arabian tent has arrived at *the Ashland office*."[24] The closing language of Seda's November 23, 1998 letter, like other correspondence between the two Al Haramain offices, reinforces Seda's view that AHIF was merely a branch office extension of the Riyadh organization which regularly relied on Riyadh. Seda writes:

> Dear brothers in Islam, thank you for studying and considering this proposal. Thank you for the assistance and support you provide the Ashland Office of *Alharamain Islamic Foundation*. . . . Sincerely, Ashland Office staff. Abu Yunus-Director, Ashland Office, *Alharamain Islamic Foundation, U.S.A.*[25]

---

Riyadh headquarters on same al Haramain letterhead); Haefele Decl. at Exh. 31, AHIF001624 (Affidavit of Al-Aqeel, as General Manager of Al Haramain, Riyadh headquarters on same al Haramain letterhead); Haefele Decl. at Exh. 32, AHIF001650-001652 (Communication from AHIF on same al Haramain letterhead); Haefele Decl. at Exh. 33, AHIF001653-001655 (Communication from AHIF on same al Haramain letterhead); Haefele Decl. at Exh. 34, AHIF001833 (Communication from AHIF on same al Haramain letterhead); Haefele Decl. at Exh. 35, PUBLIC-AR0408-0410 (Affidavit of al Haramain, Riyadh headquarters on same al Haramain letterhead).

[22] *See, e.g.*, Haefele Decl. at Exh. 29, AHIF000807-000809, at AHIF000808 (requesting Riyadh's "approval, advice and immediate support on these goals and ambitions and to give them future backing"); Haefele Decl. at Exh. 28, AHIF000615 (proposal to Al Haramain Riyadh from the Ashland office requesting funds for concrete slab, metal roof, and heating for tent for use at the Ashland office); Haefele Decl. at Exh. 26, AHIF000825 (Ashland office requests funds from Riyadh headquarters to repair the electrical system in the Ashland office); Haefele Decl. at Exh. 36, AHIF0001120 (Ashland office requests funds from Riyadh headquarters for convoy to take supplies from Iran to Afghani refugees); Haefele Decl. at Exh. 27, AHIF001667 – AHIF1669 (Ashland office request to Riyadh headquarters for $500,000 to increase Da'wa and recognizing various projects of the Ashland office that Riyadh headquarters has rejected); Haefele Decl. at Exh. 37, AHIF001825 – AHIF001828 (letter from Ashland office to al-Buthe in Riyadh headquarters reporting status of projects of the Ashland office); Haefele Decl. at Exh. 38, AHIF001831 – AHIF1832 (Ashland office request to Riyadh headquarters for funding and for high-quality literature in Albanian); Haefele Decl. at Exh. 34, AHIF001833 (Ashland office request to Riyadh headquarters for funds for a shelter for the camel at Ashland office).

[23] *See, e.g.*, Haefele Decl. at Exh. 27, AHIF01667 – AHIF00669 (noting al Haramain headquarters had approved more than one and a half million dollars of projects for AHIF, and had rejected other programs that were, as a result, not employed).

[24] Haefele Decl. at Exh 28, AHIF000615 (emphasis added); *see also* Haefele Decl. at Exh. 26, AHIF000825-AHIF000826 (request for emergency funds to repair electrical system; opens with this greeting: "Your brothers in Islam at *your Ashland office*...." (emphasis added)).

[25] *Id.*

The involvement of Al Haramain Riyadh headquarters in AHIF is also evidenced by the fact that the Riyadh headquarters was involved in nearly all of the U.S. branch office financial matters. The Riyadh headquarters funded most or all of AHIF's activities and operations – from paying for the maintenance of the Ashland facility to financing the Ashland office's "charitable" activities.[26] Documents also show that the U.S. branch office submitted its accounting records to headquarters for review and direction.[27] For example, in a letter from Abdulaziz S. Al-Shoumar to Abu Yunus (Pete Seda), Al-Shoumar questions the Ashland office's accounts and provides the following accounting instructions on how the office's finances should be presented in the future:

> Any cheque drawn during 1999, but realized in year 2000, belongs to 1999... You can highlight these payments on the bank statement for year 2000. *This will enable us to reconcile the bank statement with your accounts.*[28]

Another section of the same letter discusses the U.S. branch office's miscellaneous expenses. Al-Shoumar advises: "Major repairs, You should provide cost involved, and obtain prior approval. We will provide the funds when needed."[29]

The financial intertwinement of the Al Haramain offices is further demonstrated on the Ashland office's balance sheets. In 2001, the U.S. branch office's major sources of income were Soliman Al Buthe, who provided $83,096, and Al-Shoumar, who provided $8,980.[30] In 2002, the U.S. branch office's main source of income was Al-Shoumar, who provided the office with $95,515.92.[31] In addition, on at least one occasion, funds that the U.S. branch office raised through its fundraising programs were sent to the Riyadh headquarters. A May 14, 2004 letter from attorney Lynne Bernabei stated,

> Dr. Al-Fiki of Cairo (Egypt) made a donation of $150,000 to AHIF for the Chechnya relief efforts. ... These funds were transported, along with smaller donations that AHIF had received for Chechnya humanitarian relief, from AHIF's Oregon bank account, using travelers' checks and cashiers' checks, to the al-Haramain Foundation in Riyadh.[32]

---

[26] *See, generally* Exhibits referenced in footnotes 22-24.

[27] *See, e.g.*, Haefele Decl. at Exh. 39, AHIF000420-AHIF000421 (Al-Shoumar to Abu Yunus (a/k/a Pete Seda); Haefele Decl. at Exh. 40, AHIF000417 (Abu Yunus (a/k/a Pete Seda) to Al-Shoumar).

[28] Haefele Decl. at Exh. 39, AHIF000420-AHIF000421 (Al-Shoumar to Abu Yunus (a/k/a Pete Seda)) (emphasis added).

[29] *Id.*

[30] Haefele Decl. at Exh. 41, AHIF001256 (AHIF Profit & Loss 2001).

[31] Haefele Decl. at Exh. 42, AHIF001237 (AHIF Profit & Loss 2002).

[32] Haefele Decl. at Exh. 43, AHIF001871-AHIF001878, at AHIF001877 (May 14, 2004 letter from AHIF attorney Lynne Bernabei to R. Richard Newcomb of OFAC).

Although Ms. Bernabei states that the funds were used for charitable purposes, the U.S. Department of the Treasury concluded, "funds that were donated to AHF with the intention of supporting Chechen refugees were diverted to support mujahideen, as well as Chechen leaders affiliated with the al Qaida network."[33]

The interrelationship between the Al Haramain Riyadh headquarters and the U.S. branch office was described by Abdul-Qaadir Abdul-Khaaliq, a representative from Al Haramain's headquarters after he visited the Ashland office. His report to Riyadh describing his visit to Ashland states in pertinent part:

> Al-Haramain took on a great responsibility when deciding to open an office in the U.S. They must therefore fully fulfill that responsibility by giving the brothers shouldering the upkeep and maintenance of the facility and its activities their fullest support. As praiseworthy as the mission of Al-Haramain in America is, it will be squandered and considered a loss if they do not take the necessary steps to support what they have begun.
>
> Abu Yunus Seda-Ghaty has largely shouldered the responsibility of making sure that the grounds and facility owned by Al-Haramain is well taken care of. . . . However, he should not have to justify why a filthy carpet should be replaced or a rotted kitchen fixed . . .
>
> They [the Ashland office] are now suffering because of the small community there and thus a small local pool from which to get solid assistance. Therefore employment of qualified individuals is a must and should be properly pursued i.e. announced on the Al-Haramain web site and qualifications, prerequisites, as well as salary and living information must all be provided and comparable to the local standard of such employment. Two men should not have to share the salary of one, and at least 3 full-timers are needed. . . .
>
> I cannot tell you how many times the brothers asked me to stay. Why? Because they need knowledge, assistance, leadership and cohesiveness and there are so many areas that need work that they cannot accomplish as is. It is my hope that Al-Haramain takes into consideration what I have written.[34]

AHIF and the Qur'an Foundation are similarly intertwined, particularly inasmuch as they were both operating at the same location, by the same people, doing the same work. Pete Seda, an officer, founder and the day-to-day manager of AHIF,

---

[33] Haefele Decl., Exh. 6, (U.S. Dep't of Treasury Press Release JS-1895, "U.S.-Based Branch of Al Haramain Foundation Linked to Terror; Treasury Designates U.S. Branch, Director," released September 9, 2004, available at http://www.treas.gov/press/releases/js1895.htm).

[34] Haefele Decl. at Exh. 44, AHIF001834-AHIF001838, at AHIF001837-1838 (Abdul-Qaadir Abdul-Khaaliq Report of Visit to Al-Haramain Foundation USA Office).

also heads the Qur'an Foundation[35] and regularly comingles AHIF and Qur'an Foundation resources. In addition to using a single physical location for both entities, AHIF and the Qur'an Foundation both list the same post office address, 257 Siskiyou Boulevard #224, as the address of their principal places of business.[36] And in addition to AHIF and the Qur'an Foundation sharing Seda, both entities have also shared employee Bilal Abdul-Kareem, an AHIF office manager, who was also a Qur'an Foundation representative.[37] Moreover, both AHIF and the Qur'an Foundation shared a single office telephone number,[38] electronic mail addresses, and letterhead (see examples of using Qur'an Foundation email account for Al Haramain business and on Al Haramain letterhead[39]). These facts alone are enough to satisfy the mutuality, "commonality of ownership" and "exchange or intermingling of directors, officers or employees" factors described in the opinions cited above as those which help to determine when documents in the possession of one entity may be deemed under control of another.

Another factor discussed in the authorities cited above as determinative of whether a party has control of documents in a non-party's possession is whether the party has access to or the ability to obtain the documents from the other entity, and whether the entities have exchanged documents in the ordinary course of business. *See Cooper Industries, Inc.*, 102 F.R.D. at 920. As was already evidenced, the U.S. branch office of Al Haramain and the Riyadh headquarters exchanged documents regularly. In addition, the U.S. branch office frequently requested that the Riyadh headquarters send documents to Ashland. For example, on May 21, 1998, Pete Seda wrote a letter to Al Haramain's Riyadh headquarters requesting Islamic literature and authority from the Qur'an and the Sunnah for the U.S. office to distribute to Serbian refugees for use in court to oppose the adoption of Muslim refugee children by non-Muslim families.[40] In May 1999, Seda again asked the Riyadh headquarters to airmail Islamic literature to

---

[35] Haefele Decl. at Exh. 13 (Oregon Secretary of State Business Entity Data for Al Haramain Foundation, Registry No. 600623-88) and Haefele Decl. at Exh. 45 (Oregon Secretary of State Business Entity Data for Qur'an Foundation, Registry No. 170551-87, both available from http://egov.sos.state.or.us/br/pkg_web_name_ srch_inq.login).

[36] *Id.*

[37] *See* Haefele Decl. at Exh. 46, AHIF000157 (Communication from Bilal Abdul-Kareem as representative of the Qur'an Foundation) and Haefele Decl. at Exh. 25, AHIF000805 (Communication from Bilal Abdul-Kareem as AHIF office manager).

[38] *See, e.g., id.*

[39] *See, e.g.*, Haefele Decl. at Exh. 47, AHIF000038 (E-mail from AHIF using addresses "haramain@alharamain.org" and "alharamain@qf.org"); Haefele Decl. at Exh. 48, AHIF000824 (AHIF business card using e-mail addresses "a@qf.org" and "haramain@alharamain.org"); Haefele Decl. at Exh. 49, AHIF000851 (e-mail from AHIF using e-mail addresses "alharamain@qf.org," a@qf.org, and haramain@alharamain.org").

[40] Haefele Decl. at Exh. 38, AHIF001831-AHIF001832 (May 21, 1998 Letter from Abu Yunus (a/k/a Pete Seda) to al-Buthe and Al Haramain Riyadh headquarters, titled "A Letter for Assisting the Muslim refugees in the United States").

the U.S. branch office.[41] In response, Riyadh headquarters shipped Islamic literature to the U.S. branch office.[42] This and other Islamic literature distributed by the U.S. branch office identify both the Riyadh headquarters and the U.S. branch office addresses as the contact locations for Al Haramain, often referring to the U.S. branch office in Ashland, Oregon as the Al Haramain "Education Center."[43]

AHIF has clearly demonstrated its ability to obtain documents from the Riyadh headquarters when it wants – for example, by obtaining requested documents from Riyadh in its failed effort to dispute the U.S. Department of Treasury's designation of AHIF in September 2004. Several examples of correspondence to U.S. Treasury Department's Office of Foreign Asset Control ("OFAC") from counsel for AHIF – incidentally, the same counsel representing AHIF in this litigation, clearly demonstrate AHIF's ability to obtain documents from the other Al Haramain offices and its officers when it suits AHIF. In May 27, 2004 correspondence to OFAC, AHIF counsel provides a copy of a January 4, 2004 bank deposit slip for the Riyadh office of Al Haramain for a deposit into Al Rahji bank in Saudi Arabia and a copy of a May 3, 2004 affidavit from Al Haramain's Financial & Administrative Manager, Khalid Bin Obaid Azzahri.[44] In May 28, 2004 correspondence to OFAC, AHIF counsel provides copies of ten letters that had been sent to Al-Haramain's home office in Riyadh throughout 1995 to 1997. Although the letters were letters of thanks sent to Riyadh, the context of the letter to OFAC from AHIF's counsel indicates that AHIF acknowledges doing the work that the letters to Riyadh reference.[45] And in February 14, 2005 correspondence to OFAC, AHIF counsel provides receipts purported to

---

[41] Haefele Decl. at Exh. 29, AHIF000807-AHIF000809 (May 28, 1999 Letter from Abu Yunus (a/k/a Pete Seda) to al-Buthe and Al Haramain Riyadh headquarters, titled "A Proposal to Help Albanian Refugees: Urgent Response Requested").

[42] *See* Haefele Decl. at Exh. 37, AHIF001825 (July 23, 1999 Letter from Abu Yunus (a/k/a Pete Seda) to al-Buthe).

[43] *See* the front and rear covers from the following publications made available by the Ashland office of Al Haramain: Haefele Decl. at Exh. 50 (SA'D Bin ABI WAQQAS, DAR TAIBA Press, 1999); Haefele Decl. at Exh. 51 (Prophet Muhammad A Blessing for Mankind, International Islamic Publishing House, 1998); Haefele Decl. at Exh. 52 (33 Lessons for Every Muslim, Mussat Al-Haramain Al khairyyah, 1998); Haefele Decl. at Exh. 53 (We Believe in Jesus, International Publishing House for Islamic Books, 1998, at p. 26); Haefele Decl. at Exh. 54 (This is the Truth – Newly Discovered Scientific Facts Revealed in the Qur'an & Authentic Hadeeth, Compiled by Abdullah M. Al-Rehaili, 3rd ed. 1999); Haefele Decl. at Exh. 55 (A Call to the Real Salvation, Soliman H. Albuthi, 1998); Haefele Decl. at Exh. 56 (Islam Is…Understanding Islam & It's[sic] Principles, Pete Seda, 2002, at Table of Contents); Haefele Decl. at Exh. 57 (Interpretations of the Meaning of the Noble Qur'an Summarized in One Volume, Alharamain Islamic Foundation, 1996).

[44] Haefele Decl. at Exh. 58, AHIF001907-08, AHIF001915-17, and AHIF001918-20 (May 27, 2004 correspondence from AHIF attorney Lynne Bernabei to OFAC, enclosing copies of a January 4, 2004 bank deposit slip for the Riyadh office of Al Haramain for a deposit into Al Rahji bank in Saudi Arabia and a copy of a May 3, 2004 affidavit from Al Haramain's Financial & Administrative Manager, Khalid Bin Obaid Azzahri).

[45] Haefele Decl. at Exh. 59, AHIF001921—AHIF001933 (May 28, 2004 correspondence from AHIF attorney Lynne Bernabei to OFAC, enclosing copies of ten letters sent to Al-Haramain's home office in Riyadh throughout 1995 to 1997).

evidence March 2000 deposits by AHIF officer al-Buthe at Al Rajhi Bank in Saudi Arabia. Other enclosures that AHIF's counsel obtained and enclosed with the February 14, 2005 letter were two receipts from Al Haramain's Riyadh office, dated March 12, 2000 and March 28, 2000, and another copy of Azzahri's affidavit.[46]

Clearly, the relationship between AHIF, Al Haramain Saudi Arabia, Al Haramain Worldwide, and the Qur'an Foundation is such that AHIF has "control" of the documents of the other offices as contemplated by the rules of discovery. "Rule 34(a) does not require plaintiff to demonstrate an alter ego relationship in order to show that a litigant "controls" documents or things that are possessed by a parent corporation with respect to a specific transaction involving parent and subsidiary." *Camden Iron and Metal, Inc. v. Marubeni America Corp.* 138 F.R.D. 438 (D.N.J. 1991). The specific form of the corporate relationship does not determine whether or not "control" exists. *Securities and Exch. Comm'n v. Credit Bancorp, Ltd.,* 194 F.R.D. 469 (S.D.N.Y. 2000) (citing *Afros S/P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986). Rather, control exists where one entity has the "legal right, authority, or practical ability to obtain the materials sought upon demand." *Id.*; *US v. Stein,* 488 F.Supp. 2d 350, 361 (S.D.N.Y. 2007). Here, AHIF was a branch office of the Al Haramain headquarters in Riyadh, Al Haramain Riyadh officers were also the officers of AHIF, AHIF and the Qur'an Foundation had overlapping officers *and* resources; and the operations and financing of all of the entities were entirely comingled, interconnected, and interdependent. Defendant cannot legitimately argue that AHIF is a "separate entity" with no ability to obtain the requested documents.

### AHIF May Not Refuse To Answer Discovery Requests By Asserting Unsupported Boilerplate Objections (Document Requests 2-4, 6-45 And Interrogatories 3-26, 29-42 And 44-48)

Another disputed reason AHIF offered for refusing discovery is AHIF's unsupported litany of boilerplate objections that the discovery sought is overbroad, vague, unduly burdensome, etc. AHIF cannot evade its responsibilities to respond simply by invoking this litany. Instead, AHIF has the burden to clarify and explain its objections to show specifically how, despite the broad and liberal construction afforded the federal discovery rules, its objections apply to each of the requests. *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 43 (S.D.N.Y. 1984). Having failed to meet it burden, AHIF must respond to the discovery requests.

---

[46] Haefele Decl. at Exh. 60, PUBLIC-AR0795-808 (February 14, 2005 correspondence from AHIF attorney Lynne Bernabei to OFAC, enclosing copies of receipts purported to evidence March 2000 deposits by AHIF officer al-Buthe at Al Rajhi Bank in Saudi Arabia, two receipts from Al Haramain's Riyadh office, dated March 12, 2000 and March 28, 2000, and another copy of Azzahri's May 3, 2004 affidavit).

### AHIF May Not Refuse To Answer Interrogatories 11, 12, 14, And 16-50 Based In Its Contention That Plaintiffs Exceeded The 50 Interrogatory Limit Upon Which The Parties Agreed (Interrogatories 11, 12, 14, And 16-50)

AHIF has also refused to respond to discovery claiming Plaintiffs' 50 interrogatories exceeded the 50 interrogatory list upon which the parties had agreed. Although the actual number of interrogatories served on AHIF meets the 50 interrogatory limit, AHIF argues that, because the interrogatories had subparts, it was entitled to refuse to answer various interrogatories based on its unilateral accounting of discrete interrogatory subparts. Plaintiffs contend that, although the 50 interrogatories did, indeed, have subparts, AHIF is obligated to respond because the subparts are not logically or factually independent from the basic interrogatory – that is, they are not "multiple discrete parts" as that term is understood, and to the extent that the interrogatories are found to exceed 50 in number, interrogatory discovery is particularly warranted in this circumstance.

A subpart is discrete and regarded as a separate interrogatory only when it is logically or factually independent of the question posed by the basic interrogatory. *Sec. Ins. Co. v. Trustmark Ins. Co.*, No. 3:01-2198, 2003 U.S. Dist. LEXIS 18196, at *2-3 (D. Conn. March 7, 2003); *see Bender v. GSA*, No. 05 Civ. 6459, 2006 U.S. Dist. LEXIS 55806, at *4-3 (S.D.N.Y. August 8, 2006). As for plaintiffs' interrogatories, many of AHIF's claims of subparts appear related to the fact that Plaintiffs sought identical information available to AHIF as to the various AHIF entities or the various corporate officers. (*see, e.g.*, Interrogatories 11, 12, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 44, 46, and 47.) For example, rather than Interrogatory 11 asking more generally about the U.S. business dealings on behalf of AHIF of AHIF's officers and directors, Plaintiffs identified the three officers and enumerated specific business activities about which they sought information. AHIF unilaterally counted the single question, without subparts, as multiple questions.

In other instances, where the interrogatories had actual subparts, the subparts each related back to the initial part of the discovery request, for example, to provide particular limitations that narrowed a broader request. (*see, e.g.*, 25, 35, 44, 45.) For example, Interrogatory 25 requests information about various activities of AHIF and the Qur'an Foundation, and the subparts offers a description of the types of information sought in the main body of the interrogatory. Interrogatory 35 requests information regarding guidelines the Al Haramain organizations employed in making and receiving donations to prevent money laundering or counter terrorist financing, and the subparts describe the types of information sought concerning any AML/CFT guidelines the Al Haramain organizations may have employed. Interrogatory 44 requests information that the Al Haramain organizations had relevant to whether the organizations had an awareness of wrongdoing within the organization, and the subparts provide examples of information that may have provided such awareness. Interrogatory 45 requests information about the Al Haramain organization's familiarity with terrorist attacks or other alleged terrorists and terrorist supporters, and the subparts provide specifics about the entities inquired of in the body of the question.

Again, although each of these subparts relate to the body of the interrogatory, AHIF unilaterally counted each non-discrete subpart separately.

In other instances, the subparts seek specific information that follows from the question posed by the main body of the interrogatory. (*see, e.g.,* 15, 17, 27, 29, 30, 34, 47) For example, in Interrogatory 15, Plaintiffs seek information about the identity of potential witnesses with whom defendant may have terminated relations, and the subparts request basic information about the individuals identified in response to the main body of the question. Interrogatory 17 seeks identification of certain documents, and the subparts indicate what information about the documents is sought. Interrogatory 27 seeks information concerning defendant's available insurance coverage (*i.e.,* information required to be disclosed in Initial Disclosures under FED. R. CIV. P. 26(a)(1)(iv), and the subparts described in more detail the information sought. Once again, AHIF unilaterally counted each non-discrete subpart separately.

Even if some subparts are not considered discrete, the Court should nonetheless exercise discretion to allow the interrogatories consistent with the principles of Rule 26(b)(2). FED. R. CIV. P. 33(a). Among other reasons, the following several factors exist in this specific circumstance to favor more extensive interrogatory discovery. Since the outset of this multidistrict litigation, the parties and the court have recognized that typical discovery limitations have not applied, including among other aspects, the fact that the parties were not required to exchange Rule 26(a)(1) Initial Disclosures, thus necessitating additional discovery covered by interrogatories. AHIF's officers' absence from the United States to avoid U.S. criminal prosecution has made deposition discovery problematic. And in other disputes in the case, the Court has thus far demonstrated a desire to restrain the parties use of the deposition tool.

**AHIF May Not Refuse To Answer Document Requests 15 And 16 By Misconstruing The Requests To Allow AHIF Unilaterally To Interpret Contributions It Received Or Gave As Not Being Responsive Because The Contributions Were Not "Material Support"**

Document Requests 15 and 16 seek documents regarding contributions to and from the various Al Haramain entities. Request 15 is for documents regarding contributors *to* the various Al Haramain entities "whether in dollars, riyals or any other currencies, goods, services or any other action which has been defined as material support in 18 USC 2339(a)." Document request 16 is similar, but asks for documents regarding such contributions *from* the entities. In response to both requests, AHIF answers for only AHIF and denies that it has any responsive documents. But in responding, AHIF includes an obvious misconstruction of the request by premising its "no responsive document" answer on AHIF's self-serving claim that AHIF has neither received nor made any contributions that constitute material support under 18 U.S.C. 2339(a).

AHIF's responses to Document Requests 15 and 16 materially misconstrue these requests. The requests were for documents about contributions of material support, allowing AH to make its own self-serving judgment. Rather, the requests related to all contributions to and from the entities. The references to "any other

action which has been defined as material support in 18 USC 2339(a)" were extensions of the descriptions of the types of actions that, if someone contributed them to the entities or if the entities contributed them elsewhere, plaintiffs sought information regarding those actions in discovery.

### AHIF Must Update Its Responses to All Discovery Requests, and in Particular, AHIF Must Update Its Response to Document Request 30

Document Request 30 requests information regarding the participation of the Qur'an Foundation or the Al Haramain entities in other criminal or civil proceedings, either in the United States or elsewhere. Despite AHIF's known involvement in additional proceedings, AHIF produced only 45 pages related to an IRS investigation of AHIF. Plaintiffs request that AHIF be ordered to fully respond and update its response to this request.

For the foregoing reasons, plaintiffs request that Your Honor enter an order pursuant to F.R.C.P. 37, compelling defendant Al Haramain Islamic Foundation to provide complete and non-evasive responses to plaintiffs' discovery requests.

Respectfully Submitted,

ROBERT T. HAEFELE

RTH/msh
cc: Hon. George B. Daniels, U.S.D.J.
All Counsel of Record