# EXHIBIT 14

Part 2

*Exempt From Income Tax*, in October of 2001 on behalf of AHIF, Inc. AHIF, Inc.'s accountant, Thomas J. Wilcox, Certified Public Accountant (CPA), stated that he prepared AHIF, Inc.'s 2000 Form 990 in his office in Medford, Oregon. Accountant Wilcox also told me that the return bared his signature and the signature of SEDA and that SEDA signed the form in his accounting office before the returns were filed with the IRS via certified mail.

**FILING REQUIREMENTS:**

50. From my experience and from consulting with experienced exempt organization specialists within the IRS, I know that, under the Internal Revenue Code, tax-exempt public charities are required to file annual information returns with the IRS on Form 990, *Return of Organization Exempt From Income Tax*, if their gross receipts during the year exceed $100,000.

51. Similar to for-profit entities, tax exempt entities are subject to audit by the IRS. If upon review of the organization's Form 990 and backup documentation, the IRS determines the organization is not operating consistently with its tax-exempt purpose, then the IRS may revoke the tax exemption, or impose excise taxes based on the nature and severity of the violation. Once an organization loses tax-exempt status, its total revenues are subject to federal income taxation, based upon its business form (i.e. corporation, partnership, or sole proprietorship).

52. From my experience, I know that under Title 26 U.S.C. § 7206(1), any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000

Affidavit in Support of Search Warrant - Page 21

AHIF 001557

($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

53. The elements of Title 26 U.S.C. § 7206(1) are:

(a) The taxpayer made and subscribed a return, statement, or other document;

(b) The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

(c) The taxpayer did not believe the return, statement or other document to be true and correct as to every material matter; and

(d) Willfulness.

54. In AHIF, Inc.'s 2000 Form 990, I believe SEDA attempted to disguise the true disposition of the $150,000 that AHIF, Inc. received from Mahmoud El-Fiki in February of 2000, as described above, in order to prevent law enforcement and/or the IRS from scrutinizing the transaction. SEDA disguised the true disposition of the funds received from El-Fiki by causing the omission of AHIF, Inc.'s receipt of some of the funds and mischaracterizing the utilization of the remaining funds, as explained in detail below.

55. Accountant Wilcox said he first met SEDA in December of 1999 and from his first meeting with SEDA, SEDA told him that he thought the AHIF, Inc. and/or himself would be scrutinized by the U.S. government. Accountant Wilcox said SEDA believed his phones had been tapped for over ten years because the U.S. government thinks all Muslims are Bin Laden followers, but SEDA said this is far from the truth. Therefore,

Affidavit in Support of Search Warrant - Page 22

AHIF 001558

SEDA told Accountant Wilcox that the books had to be right and clean, because if they are not, AHIF, Inc. will be audited.

56. Accountant Wilcox said the original records and backup documentation for AHIF, Inc. are maintained at the organization's facility at 3800 S. Highway 99 in Ashland. Accountant Wilcox estimated that he has been to AHIF, Inc.'s Ashland facility about four times and the last time he was there was on January 13, 2003, prior to SEDA's departure from the U.S. Accountant Wilcox recalled the Ashland facility contained a downstairs office with two computers, filing cabinets, and banker boxes full of records. Accountant Wilcox told me that AHIF, Inc. used a software accounting program called Quickbooks for the organization's financial transactions and this program was contained in a computer located against the far wall in the downstairs office at 3800 S. Highway 99 in Ashland. Accountant Wilcox said he trained two women named "Laleh" and "Sumer" at 3800 S. Highway 99 in Ashland on how to use the Quickbooks software program.

57. Accountant Wilcox said these two women categorized and input the income and expense items into the AHIF Inc.'s Quickbooks program, while SEDA oversaw them, and they called Wilcox if they had any questions. Accountant Wilcox stated that SEDA told him several times to make sure these women knew the program and to ensure the records were clean. I have attempted to interview Laleh and Sumer by asking them on June 23, 2003 to telephone me to arrange an appointment. Neither of the two women ever contacted me, and I have reason to believe they no longer reside or work at 3800 S. Highway 99, Ashland, Oregon. I have been unable to contact them since June 2003.

58. Accountant Wilcox said he prepared AHIF, Inc.'s returns using information provided by SEDA, which included AHIF, Inc.'s bank statements, bank reconciliation

Affidavit in Support of Search Warrant - Page 23

AHIF 001559

statements, and summaries from their Quickbooks accounting program. Accountant Wilcox said that with a Quickbook's disk, it is possible for him to get a full detailed income and expense printout for each year. However, he said the transaction details for 1999 and 2000 are no longer available for review because SEDA told him that AHIF, Inc.'s computer crashed in October of 2001.

59. In an interview with Accountant Wilcox, I showed him several documents pertaining to the apparent disposition of the $150,000 AHIF, Inc. received from El-Fiki in February of 2000, as described in this affidavit. These records included bank documents pertaining to the purchase of the $130,000 in traveler's checks by ALBUTHE, bank documents pertaining to the purchase of the $21,000 cashier's check by SEDA, copies of the two agreements provided by AHIF, Inc. between ALBUTHE and SEDA stating monies were being turned over to ALBUTHE for the Brothers and Sisters in Chechnya, and a copy of the check provided by AHIF, Inc. with the notation, "Donations for Chichania Refugees". After reviewing this documentation, Accountant Wilcox said SEDA did not provide him any records indicating these funds were being sent to Chechnya. He said if he had known about the disposition of the funds in Chechnya, he would have prepared the 2000 Form 990 differently.

60. Accountant Wilcox stated the information he received from SEDA pertaining to the disposition by AHIF, Inc. of the $131,300 showed the funds were used to purchase the Springfield, Missouri prayer house, described earlier in this affidavit. I have reviewed AHIF, Inc.'s Quickbooks Springfield, Missouri building schedule, which was provided to Accountant Wilcox for preparation of the organization's 2000 Form 990. The schedule shows SEDA, or one of his associates, improperly listed the $131,300 disbursement to

Affidavit in Support of Search Warrant - Page 24

AHIF 001560

ALBUTHE as funds used to purchase the Springfield prayer house, showing a total purchase price of $461,541.74.

61. I have obtained the closing records from the purchase of the Springfield, Missouri prayer house and I reviewed those records with Accountant Wilcox. The closing documents show that AHIF, Inc. purchased the property for $378,291.74, not for the $461,541.74 SEDA reported to AHIF, Inc.'s accountant. Thus, SEDA or his associates appear to have deceived AHIF, Inc.'s accountant by providing the accountant with information which overstated the purchase price of the Springfield, Missouri property by over $80,000. In addition, Accountant Wilcox stated that based on conversations he had with SEDA, it was his understanding that the $21,000 issued to ALBUTHE were funds going back to the original contributor. I have reviewed AHIF, Inc. Quickbook's detail schedule for reimbursed expenses provided to Accountant Wilcox for the preparation of the organization's 2000 Form 990. The detail schedule for reimbursed expenses shows SEDA, or someone assisting him and AHIF, incorrectly listed the $21,000 as a reimbursed expense, rather than as funds being distributed to Chechnya.

62. After reviewing the aforementioned documents with Accountant Wilcox, he stated the contribution income on AHIF, Inc.'s 2000 Form 990 appears to be understated due to the $21,000 that was disbursed to ALBUTHE and backed out of contribution income. In addition, Accountant Wilcox stated that grants and allocations on AHIF, Inc.'s 2000 Form 990 appears to be understated by over $150,000, due to the disbursement of the funds to ALBUTHE for apparent distribution in Chechnya. Lastly, Accountant Wilcox stated that the cost basis in the Springfield, Missouri prayer house may be overstated due to the fact that the $131,300 disbursed to ALBUTHE for distribution in Chechnya should

Affidavit in Support of Search Warrant - Page 25

AHIF 001561

not have been added to the cost basis of the asset.

63. In summary, I believe there is probable cause to believe that the 2000 Form 990 filed by SEDA on behalf of AHIF, Inc. is materially false. Based on various documents described above and information provided by AHIF, Inc.'s accountant, I believe that the following line items on AHIF, Inc.'s 2000 Form 990 are materially false:

   a) Line 1a is false, in that AHIF, Inc.'s contribution income is understated by at least $21,000;

   b) Line 22 is false, in that grants and allocations are understated by at least $150,000;

   c) Line 57a is false, in that the organizations basis in land, buildings, and equipment is overstated by the incorrect addition of the $131,300, which appears to have been disbursed to ALBUTHE for distribution in Chechnya.

64. Based on the evidence described above, I believe SEDA deliberately attempted to mislead the IRS about the true disposition of the funds received from El-Fiki and given to ALBUTHE. SEDA attempted to disguise the disposition of these funds by causing AHIF, Inc.'s accountant to omit $21,000 from the organization's contribution income, thus allowing the distribution of these funds to ALBUTHE without having to account for the funds on the Form 990. In addition, SEDA mischaracterized the disposition of the $131,300 to ALBUTHE by falsely claiming that the funds were used to purchase the Springfield, Missouri prayer house.

65. I have consulted with IRS tax exempt experts regarding the false reporting of

Affidavit in Support of Search Warrant - Page 25

AHIF 001562

the disposition of funds by a tax exempt charitable organization, in the manner shown above. A tax exempt expert has informed me that if a tax exempt charitable organization's Form 990 was false in this regard, then AHIF, Inc.'s tax exempt status may be questioned and/or revoked. If AHIF, Inc.'s status was revoked, AHIF, Inc. would be responsible for paying U.S. taxes and would more likely be scrutinized by the IRS, including IRS Criminal Investigation and other law enforcement agencies.

**LIKELIHOOD OF RECORDS BEING FOUND AT LOCATION**

66. The investigation has established SEDA left the U.S. for Saudi Arabia in February of 2003. SEDA told an FBI special agent that he planned on returning to the U.S. on March 11, 2003 or March 12, 2003. Flight records retrieved and analyzed by agents involved in the investigation show SEDA has not returned to the U.S. Currently, there does not appear to be any business or religious activities at 3800 S. Highway 99. The front gate has often been padlocked since SEDA's departure. I know that Pete SEDA's son, Jonah Seda, left the United States in December 2003, but has recently returned and appears to be residing at 3800 S. Highway 99, Ashland, Oregon. Property records reflect that AHIF, Inc. still owns the property. Information received from Pacific Power indicates that the utilities at 3800 S. Highway 99, Ashland, Oregon are still in the name of Al-Haramain and that the last payment was received on January 21, 2004.

67. Although SEDA presently remains abroad, I have reviewed evidence that shows AHIF, Inc. is still operating in Oregon. First, according to a representative of The Mail Stop, a private mail service in Ashland, Oregon, AHIF, Inc. is still actively using its private mail box and the organization's mail is being retrieved regularly by, among others,

Affidavit in Support of Search Warrant - Page 27

AHIF 001563

Jonah Seda. This representative also stated that Pete SEDA, by way of e-mail, renewed AHIF's private mail box at the Mail Stop for another six months on February 6, 2004. Secondly, AHIF, Inc.'s bank records show that, even though SEDA left the U.S. in February of 2003, the organization is still conducting limited, but continuous bank activity. Bank records show deposits and disbursements from AHIF, Inc.'s main account in Ashland, Oregon continued until June 2003, which indicates AHIF, Inc. was active after SEDA left the U.S. Third, according to Unicom, an internet service provider, Unicom provided internet service to 3800 S. Highway 99, Ashland, Oregon until February 10, 2004, at which time service was canceled. Fourth, according to a representative of Qwest, as of February 10, 2004, there were four active telephone numbers associated with Pete SEDA at 3800 S. Highway 99, Ashland, Oregon.

68. An attorney representing AHIF, Inc. in Oregon has provided me with a great deal of records in response to a Grand Jury subpoena issued to the organization, and has invited the IRS to review additional records. However, I believe there may be additional items at 3800 S. Highway 99, Ashland, Oregon which neither SEDA nor anyone else at AHIF, Inc. in Ashland, Oregon have disclosed to investigators or to AHIF, Inc.'s attorney.

69. Specifically, AHIF, Inc.'s accountant could not provide investigators with transaction details from the organization's Quickbooks program for the 1999 and 2000 tax years. The accountant stated that he did not have these transaction details because SEDA told him they were no longer available for review because AHIF, Inc.'s computer crashed in October of 2001. If SEDA has attempted to disguise financial transactions in a manner described in this affidavit, then I believe there may not have been a computer

Affidavit in Support of Search Warrant - Page 28

AHIF 001564

crash and there may still be computer and paper records relevant to this investigation at the location. In addition, based on the e-mails described earlier in this affidavit, there appears to be e-mails referred to involving Mahmoud El-Fiki, Pete SEDA and Soliman ALBUTHE which I have not been provided.

70. FBI Special Agent Dave Carroll advised me that during the course of an interview of Pete SEDA on September 15, 2001, he was provided a tour of the upper floor of 3800 S. Highway 99, Ashland, Oregon. He advised me that during this tour, SEDA brought him to a room located above the garage which contained a computer and numerous pamphlets and boxes, as well as a back storage area containing religious reading materials.

71. Therefore, I believe there may still be records relating to the false Form 990 and the CMIR violation still at 3800 S. Highway 99 in Ashland, Oregon. These records may consist of the following financial records and computer data.

**FINANCIAL RECORDS:**

72. From my experience and from consulting with other experienced IRS-CI special agents, I know that individuals normally maintain records of their financial activity, such as receipts for expenditures made with cash and checks, bank records, and other financial documents, in their personal residences and in their businesses. Persons engaged in tax and/or money laundering violations frequently retain records of their transactions for long periods of time within their residence, place of business, rented storage units, vehicles, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts,

Affidavit in Support of Search Warrant - Page 29

AHIF 001565

bank statements, and other records. Records of this kind are also often stored on computer media.

73. As a criminal investigator with the IRS, I know that to adequately investigate the accuracy of a tax return, especially a business tax return, it is necessary to examine most of the business' records for that year, including all financial documentation concerning income, expenses, asset purchases, communications with tax preparers and other officers.

74. Persons engaged in tax and/or money laundering violations often maintain such records for long periods of time, particularly when they are involved in ongoing criminal conduct over a long period of time. There are many reasons why criminal offenders maintain evidence for long periods of time. The evidence may be innocuous at first glance (e.g. financial, credit card, and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance and relevance when considered in light of other evidence.

75. The criminal offender may no longer realize he/she still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence. The criminal offender may also be under the mistaken belief that he/she has deleted, hidden, or further destroyed any computer-related evidence, but which may be retrievable by a trained forensic computer expert.

Affidavit in Support of Search Warrant - Page 30

AHIF 001566

## COMPUTER DATA:

76.  Based upon information related to me by IRS-CI Special Agent Richard Smith, and others involved in the forensic examination of computers, I know computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips. I also know during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

77.  Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

78.  Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden", erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be

Affidavit In Support of Search Warrant - Page 31

AHIF 001567

extracted.

79.     The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data, which, if printed out, would completely fill a 10'x12'x10' room to the ceiling.

80.     Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form.

81.     In addition, computer users can conceal data within another seemingly unrelated innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is

Affidavit in Support of Search Warrant - Page 32

AHIF 001568

evidence, contraband, or instrumentalities of a crime.

## CONCLUSION

Based on the foregoing, I have probable cause to believe that Soliman ALBUTHE, with the assistance of Pete SEDA has evaded reporting requirements, in violation of Title 31 U.S.C. §5324 and that Pete SEDA has committed the crime of subscribing to a false return in violation of Title 26 U.S.C. §7206(1). I believe ALBUTHE and SEDA committed these crimes while attempting to disguise the true disposition of funds, that if reported correctly, would have caused the IRS and law enforcement to scrutinize their activities and may have jeopardized the organizations tax exempt status.

Therefore, I request that the court authorize a warrant to search 3800 S. Highway 99 in Ashland, Oregon, detailed in Attachment A, for the evidence listed in Attachment B and to seize the same. I request authority to seize all records set forth in Attachment B and to physically seize all computers and related equipment for analysis.

xxxxxxxx

xxxxxxxx

xxxxxxxx

xxxxxxxx

xxxxxxxx

xxxxxxxx

xxxxxxxx

xxxxxxxx

Affidavit in Support of Search Warrant - Page 33

AHIF 001569

The evidence set forth in this affidavit is true, complete, and accurate to the best of my knowledge and belief.

This affidavit and attachments have been reviewed and approved by Assistant United States Attorney Christopher L. Cardani.

Colleen Anderson
Special Agent, IRS-CI

Subscribed and sworn to me this 13 day of February, 2004.

John P. Cooney
United States Magistrate Judge

Affidavit in Support of Search Warrant - Page 34

AHIF 001570

# United States District Court

AO93 (Rev. 6/92) Search Warrant        DISTRICT OF OREGON

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
One story residential building located at 3800 S. Highway 99 in Ashland, Oregon. Further described in Attachment A, incorporated herein.

**SEARCH WARRANT**

CASE NUMBER: 04-4009-M

To: Special Agent Colleen Anderson and any Authorized Officer of the United States

Affidavit(s) having been made before me by Special Agent Colleen Anderson who has reason to believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

See Attachment A, incorporated herein.

in the Judicial District of Oregon there is now concealed certain person or property, namely (describe the person or property)

See Attachment B, incorporated herein.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _February 23, 2004_
                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime – 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to
as required by law.

                                                                                    U.S. Magistrate Judge

_February 18, 2004_  _9:55 AM_  at _Medford, Oregon_
Date and Time Issued                    City and State

United States Magistrate Judge
Name and Title of Judicial Officer        Signature of Judicial Officer

AHIF 001571

| RETURN |||
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT LEFT WITH |
| INVENTORY MADE IN THE PRESENCE OF |||
| INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT |||

### CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

AHIF 001572

U.S. Judge or Magistrate Judge    Date

Attachment "A"

## LOCATION TO BE SEARCHED

The location to be searched is a one story residential building located at 3800 S. Highway 99 in Ashland, Oregon. The location is owned by the Al Haramain Islamic Foundation, Inc.

The residence is located on a hillside with acreage, at the end of a paved driveway that intersects S. Highway 99. There are two large white metal gates that mark the entrance of the driveway from S. Highway 99. The gate usually has a no trespassing sign attached to it along with two small American flags and is quite often chained shut.

The residence is gray in color with green trim and has a large deck across the front. According to Jackson County Assessor's records, the residence was built in 1973 and is a one story residence with a basement and garage on the bottom level and a total of 4157 livable square feet. (See attached picture.)

AHIF 001573

FEB.18.2004   9:14AM   US ATTY EUGENE OR   NO.677   P.4