# EXHIBIT

# E

Part 3

0287TERC

1       If they were separate entities, your Honor, then there
2  should have been loan documents that indicated that there were
3  separate entities that were involved, and I don't see any
4  indication of that.
5       THE COURT: OK.
6       MR. HAEFELE: So, running through the documents that
7  we submitted, your Honor, by my count there is one, two, three,
8  four, five, six, seven, eight, nine, ten of them, plus another
9  one of the overlapping identifications, 11 of 16. And, you
10 know, I'm not going to say we need to weigh and if I get over
11 half of them we're good. But, as a whole, if you look at it
12 not only do 11 of the 16 match, but out of the ones that are
13 left they just don't apply under the circumstances because they
14 can't apply. For example, there is no stock here. The parent
15 exists solely as a holding company of the subsidiary, that sort
16 of applies. It's really just a holding entity for all the
17 others, but it's that plus more.
18      The parent and subsidiary file consolidated income tax
19 returns is another factor but that doesn't apply here because
20 they don't file income tax in this country.
21      So, I think if you weigh all of the factors, your
22 Honor, what we get is a very strong indication that Al Haramain
23 U.S.A. is the alter ego of the headquarters. And that seems to
24 be exactly what the U.S. government has indicated when it has
25 identified the headquarters as being the branch office of the

0287TERC

1 headquarters.

2 THE COURT: Go on.

3 MR. HAEFELE: There are just some other problems that
4 we would ask the court to take into account as well, and some
5 of these I think were highlighted earlier in the argument that
6 we heard a few moments ago regarding Sana Bell, and it has also
7 been the subject of other discussion before your Honor, and
8 that's what I would call -- well, I think Mr. Kriendler earlier
9 referred to it as a shell game, but I would call it the
10 problems with the mystery of the disappearing corporations and
11 the mystery of corporate assets.

12 The one problem is the shell game with the corporate
13 entities being either dissolved or mysteriously disappearing,
14 and it's become a theme in the litigation. And that's one of
15 the problems that I think Mr. Kabat has indicated in his
16 response and said, well, the headquarters doesn't exist
17 anymore, so what are we to do? Well, the answer is that we are
18 to try and get -- first of all, they were supposed to get all
19 of the documents responsive to discovery from the get-go, and
20 if they didn't do that then that's a problem we need to face as
21 well.

22 The other problem is the problem of ignoring -- what I
23 will call the mystery of the corporate actions. And the
24 defendants seem to keep pointing to these corporate entities as
25 though they act mysteriously on their own. They don't. They

0287TERC

1  act through the individuals that are the corporations. And so
2  if there are individuals that are involved here, those
3  individuals are the individuals that we need to look to to get
4  the documents from. Al Haramain acts through the individuals,
5  and yet they ask the court to ignore that fact.
6         Some of the people -- in this instance represented by
7  the very same counsel -- have filed what clearly contain Al
8  Haramain documents. One of the affidavits that came back to us
9  in the reply indicates that Mr. Al Butay has a file that has at
10 least some Al Haramain documents in it. We didn't get those.
11 They came to us. We didn't get them from Al Haramain directly
12 as a result of the various requests; they came because they
13 happened to be in an OFAC file. They were provided by Al
14 Haramain to OFAC when they wanted to make their own arguments.
15        THE COURT: Mr. Al Butay submitted an affidavit
16 though, as did Mr. Nelson, both of which you say are
17 insufficiently specific, at least one of which seemed fairly
18 specific. So, I'm not sure what your gripe was there.
19        MR. HAEFELE: Well, I would have to look back, your
20 Honor, but there is a curious problem with the affidavits. The
21 affidavits that were submitted with the motion or the
22 opposition regarding the efforts employed to get responsive
23 documents came from someone who at the time that's pertinent
24 here had little to do with Al Haramain until fairly recently.
25 He was not a director at the time. He is not listed in the

0287TERC

1  document as being a director until fairly recently.
2          THE COURT: That's Mr. Nelson.
3          MR. HAEFELE: That's Mr. Nelson, yes, your Honor. And
4  we get nothing about those efforts on the three or four primary
5  actors for Al Haramain at the time, at least two who are also
6  represented by the same counsel. And those people, I think
7  Mr. Seda and Mr. Al Butay, are both I believe represented by
8  the same counsel as Al Haramain U.S.A. branch. And I don't
9  recall as to Mr. Al Akil. But it raises the issue of Al
10 Haramain's efforts to actively collect responsive documents in
11 a timely and complete manner, when none of the documents that
12 were submitted back to us -- including the one that came from
13 Mr. Al Butay himself -- indicates what efforts were actually
14 done to try and collect documents in a timely manner and in a
15 complete manner. We don't know. We know very little, if
16 anything, on the efforts that have been made by Al Haramain to
17 get documents from Mr. Al Akil, from Mr. Seragati or from
18 Mr. Al Butay. You know, he could have said something in his
19 declaration, but he didn't.
20         And none of these players at Al Haramain ever say
21 anything about any efforts to obtain documents, despite the
22 fact that they have been in Saudi Arabia for years following
23 9/11. And instead we get a single affidavit from a relative
24 outsider to Al Haramain, saying very little about any of the
25 efforts made to get the information.

0287TERC

1        And on that issue, your Honor, that is pretty much
2   what I had to say. I think there is several other issues that
3   were raised, including the counting interrogatories or whether
4   we should use interrogatories more or less. And in that
5   instance I think your Honor I would rely on what we wrote in
6   our letters.
7        And the other issue, your Honor, the problem is the
8   definition of material support for requests 15 and 16, and we
9   just have a problem where we were specific in terms of what we
10  were requesting, and they come back and they try to define it
11  as saying, well, because the word "material support" showed up
12  in the request we take the liberty of saying unilaterally our
13  stuff wasn't material support. That not what the request was,
14  your Honor.
15       THE COURT: Well, at so that one it seemed to me the
16  problem may be where the comma is or isn't placed. But we will
17  get to that as we go forward.
18       Mr. Kabat? Is that the way you pronounce it?
19       MR. KABAT: Yes.
20       THE COURT: OK.
21       MR. KABAT: Good morning, your Honor. Let me just say
22  we're here more than five years after producing more than
23  50,000 pages of documents and publications and the CD-ROMs with
24  all the financial records from the Oregon group. Now, we
25  exchanged a lot correspondence with plaintiffs counsel way back

0287TERC

1     in '03, '04 and '05.  Plaintiffs did not then respond to most
2     of the issues we raised in our correspondence, and plaintiff
3     waited over five years to really raise the discovery issue with
4     the court.
5          Now, the fundamental problem that I have with their
6     motion to compel, is it's not a motion to compel about the
7     activities and operations of the Oregon Group.  Instead,
8     plaintiff, they are trying to use the Oregon Group as a method
9     for obtaining information about the activities and operations
10    of the Saudi Group, which is another defendant.
11         And I submit that you should deny the Burnett
12    plaintiff's motion to compel because essentially the plaintiffs
13    are seeking discovery from the Oregon defendant of documents
14    and information that's in the possession, custody and control
15    of other defendants, principally the Saudi defendants, Saudi Al
16    Haramain Group.
17         THE COURT:  I thought your position is -- maybe I
18    misunderstood it -- that the Saudi Foundation at least couldn't
19    produce documents because the Saudi government shut it down.
20    Are you talking about documents in the possession of the
21    individuals who were the officers, or in the possession of the
22    Saudi Foundation, or both?
23         MR. KABAT:  Well, plaintiff is trying to seek both
24    through --
25         THE COURT:  No, I understand plaintiffs want

0287TERC

1  everything.  But what you were saying was, well, don't give
2  them the documents held by the -- I think you used the phrase
3  Saudi defendants, one of whom is the Foundation itself, and in
4  your papers there were representations that the Saudi
5  Foundation was shut down by the Saudi government, which sounded
6  like, you know, put a padlock on the front door.
7           Is that what you're saying?  Or does the Saudi
8  Foundation in fact have access to documents?
9           MR. KABAT:  It is my understanding they do not.  Since
10 the government closed it down both Mr. Albans and Mr. Nelson
11 have made repeated attempts while in Saudi Arabia to obtain any
12 documents, because, after all, they could be exculpatory
13 documents for us as well.  We would like to get that
14 information too, but we can't.
15          THE COURT:  Well, one of the things -- and I
16 understand the points you have made about delay, and certainly
17 I don't disagree with you there were long gaps between when you
18 write back to the plaintiffs and when they respond at times --
19 but one thing they want to focus on, which the affidavits that
20 you submitted don't seem to address, is what happened in the
21 period after either it was apparent that litigation was
22 imminent or certainly when the earliest of these lawsuits was
23 filed between then and when the Saudi government shut down the
24 Saudi Foundation, in terms of preserving documents?  I mean
25 that, it seems to me, is one of the issues that Mr. Haefele and