# EXHIBIT

# E

Part 4

1   others are trying to focus on undoubtedly as the precursor to
2   an exfoliation motion.
3           MR. KABAT:  Well, your Honor, I can't speak to what
4   the Saudi defendants have done with respect to its documents,
5   but I can only say for ourselves, our positions.  The case
6   originated with Judge Robertson.  In fact one of the very first
7   motions involved that we are independent, a separate corporate
8   entity from the Saudi defendant, and our position in fact
9   during the initial discovery conference we had back in August
10  of '03, almost seven years ago, was we only have possession,
11  custody and control of the Oregon Group documents.  We produced
12  those documents in '04.  So, our position has always been it's
13  a separate corporate defendant, we don't have custody and
14  control of the Saudi defendant documents.
15          I don't see where that puts an obligation on us to
16  tell another defendant, represented by another counsel, oh, by
17  the way, you need to preserve your documents just in case the
18  plaintiffs come after us in order to get your documents.
19          I mean there are numerous defendants in this case.
20  It's not my responsibility to issue document preservation
21  letters to codefendants.
22          THE COURT:  Well, but that really is the issue.
23  Mr. Haefele says going through these 15 factors that 11 weigh
24  in his favor and most of the others are simply inapplicable.
25  If you use those factors or some other factors and he's right

0287TERC

1    that I guess both as a matter of law and fact the Saudi and
2    U.S. entities should be viewed as a single organization, then
3    what you just said in terms of it not being your obligation may
4    be wrong. Right?
5            MR. KABAT: Well, that sort of begs the question of
6    why the plaintiff named the Oregon Group as a separate
7    defendant. We were served separately with a subpoena out in
8    Ashland. Plaintiff from the outset recognized that the Oregon
9    defendant was a separate one. They did not try to name it as
10   one defendant. They had a different subpoena. We were served
11   out in Oregon. They were served -- Saudi Group I believe was
12   served by publication -- I'm not sure now -- but the plaintiff
13   recognized at the outset these were different defendants, they
14   had to be sued and served separately.
15           THE COURT: OK.
16           MR. KABAT: I'd like to add to some of the other
17   points that Mr. Haefele mentioned.
18           THE COURT: Sure.
19           MR. KABAT: First of all, Mr. Haefele made reference
20   to the fact that the Oregon Group requested publication from
21   the Saudi Group. We point out, first of all, those were
22   primarily various Islamic type publications which we have
23   produced in discovery, but Islamic publications, religious
24   publications, are not the same as corporate operational
25   documents. As your Honor recognized, we did not see anything

0287TERC

1    in the document where the Oregon Group was requesting these
2    sort of corporate operational documents from the Saudi Group.
3    I would just like to mention two cases that I think are
4    dispositive of the plaintiff's discovery request. The first
5    case is the Securities and Exchange Commission --
6              THE COURT: Which one?
7              MR. KABAT: Securities and Exchange Commission v.
8    Credit Bancorp, a case from 2000, Judge Sweet of this court.
9    Judge Sweet said that the burden is on the party seeking
10   discovery to make a showing that the other party "has control
11   over the materials sought".
12             We simply do not have control over the Saudi Group
13   documents.
14             The other case I want to emphasize is the Second
15   Circuit's opinion, and it's a hard name to spell, the
16   Shcherbakovskiy case, Second Circuit 2007. It held that it was
17   reversible error to impose sanctions on the party for failing
18   to produce documents from a related overseas corporate entity,
19   since, as the Second Circuit said, a party is not obligated to
20   produce documents that it does not possess or cannot obtain.
21   The Shcherbakovskiy holding I submit applies with equal force
22   here.
23             And there is a third decision by Judge Chin of this
24   court called M'Baye v. New Jersey Sports. And Judge Chin found
25   that if the party made an effort to get documents from an

0287TERC

1   overseas agent but was unsuccessful in getting those documents,
2   that showed that the party lacked the requisite control over
3   the documents.
4           THE COURT: Well, that's why I was asking Mr. Haefele
5   those questions. He being a good lawyer wouldn't concede that
6   that was not a theory that the plaintiffs could prevail on, and
7   he pointed, when I asked about the U.S. entity's ability to
8   compel the Saudi entity to do something, he pointed to
9   requesting literature and getting it, which frankly it seems to
10  me isn't the most persuasive evidence that the U.S. entity
11  might have practical control such that it could in effect at
12  the stage when both of these foundations were going concerns so
13  that it could say we don't care what you think, Saudi Arabia,
14  send us money or send us literature, I suppose.
15          And I think that the evidence that the U.S. entity
16  could compel anything from the other entity is slim at best and
17  perhaps nonexistent. I haven't studied, as I think I said
18  before, all of the exhibits, although I have looked at them
19  all. But as I read the case law, they don't have to make that
20  showing if they can show that as a matter of law and fact the
21  two entities should be treated as one entity. And certainly
22  they were separately sued, but I'm not sure that's dispositive.
23          If the interrelationship between the two is so great
24  that they should be viewed as one, then it seems to me it's
25  appropriate to say that discovery addressed to the U.S. entity

0287TERC

1   calls for documents in the possession, custody or control of
2   the Saudi entity as well. And I think the operative time
3   period, I think we're dealing with a window period here which
4   is: What was the case that the date that the suit was filed or
5   reasonably anticipated, up until the point that the discovery
6   requests first were served?
7        So, you know, if I had to take a snapshot, I guess it
8   would be that I need to focus on that period of I guess two
9   years or so.
10       MR. HAEFELE: Your Honor, can I make two additional
11  points?
12       THE COURT: Well, why don't you let Mr. Kabat finish.
13       MR. HAEFELE: Absolutely. I thought he was done. My
14  apologies.
15       THE COURT: You couldn't see he was working down at
16  his papers for his next point.
17       MR. KABAT: Yeah. During that brief time period in
18  which the lawsuit was filed, which I believe was in August 2002
19  roughly, when the discovery requests were served, which I
20  believe was in October or November of '03, during that time
21  period in fact when the two groups were moving apart, the
22  Oregon Group got the resignation of two of the directors. Two
23  of the three Saudi directors resigned from the board of the
24  Oregon Group. What was also happening during that time period
25  is back in February of '04, while we were still discussing the

0287TERC

1  discovery issues, the Department of Treasury initiated an
2  investigation of the Oregon Group, which consequently limited
3  the ability of the Oregon Group to do anything other than
4  retain counsel and litigate. So, we were not then in a
5  position to escalate our -- the Oregon Group was not in a
6  position to escalate its involvement with the Saudi Group
7  because the director of the Saudi Group was himself also under
8  investigation by Treasury at that same time period. So, during
9  that period that your Honor identified, the two groups were
10. moving apart partly because of the ongoing Treasury
11 investigation.
12         So, as a practical matter, thinking back to that time
13 period I don't see how we could have easily gotten the Saudi
14 Group documents given that the Saudi government was starting
15 his own move against Al Haramain, Saudi Arabia.
16         And I will defer to Mr. Haefele.
17         THE COURT: Your turn, Mr. Haefele.
18         MR. HAEFELE: Thank you. I'm having trouble hearing
19 Mr. Kabat.
20         Well, the one point I would like to make to your
21 Honor -- and I think it goes to something that your Honor was
22 saying, as well as the overall picture -- is that there is this
23 fiction that there is no connection.
24         In addition to everything that I have already said,
25 your Honor, something that's very important to keep in mind

0287TERC

1  here is that the head of the Saudi office and the vice head of
2  the Saudi office, numbers one and two in the Saudi
3  headquarters, were also numbers one and two in the U.S. branch
4  office. So, to say that there was no control, no ability, no
5  say, is a fiction.
6      And, in addition to that, since three of the officers,
7  those two plus Mr. Al Butay, are also at the Saudi office, much
8  of the information about the Saudi office or that's available
9  in the Saudi office goes very importantly to what was known or
10 knowable to the Oregon office. So, what's known or knowable at
11 headquarters, what's known or knowable throughout the Al
12 Haramain network is all pertinent.
13     One important issue in the case is what the Oregon
14 Group's activities were with the main office, so information
15 about the communications between the offices is important, but
16 it also includes the knowledge in the main office about the
17 activities of Al Haramain overall. They were a part of that
18 network, and to the extent that Al Haramain was doing things
19 that were inappropriate, improper under the law, that go to
20 terrorist support, terrorist financing, and the Oregon office
21 continued in that network with that knowledge, that's all very
22 important with regard to the plaintiffs' claims.
23     So, what the U.S. branch office knew about Al Haramain
24 worldwide is important, and that's discoverable, your Honor.
25     THE COURT: One thing I haven't heard any mention of