# EXHIBIT

# E

Part 5

0287TERC

1   in this discussion, although the papers speak to it, is the

2   Quran Foundation.

3       MR. HAEFELE:  I can speak to that briefly, your Honor.

4   The Quran Foundation is basically Mr. Seda.  Mr. Seda set it

5   up.  Mr. Seda pretty much did the same thing.

6       The Al Haramain entity basically came on the scene to

7   supplement and to enlarge the size, enlarge the scope of, to

8   enlarge the financial capabilities of what the Quran Foundation

9   is doing.  The Quran Foundation was Mr. Seda.  Everything that

10  he did under the Quran Foundation he eventually did that and

11  more under Al Haramain's name.  They had the same office, they

12  were run by the same guy, they had the same staff, they shared

13  offices, phone numbers, computer networks.  Everything that was

14  the Quran Foundation was what Mr. Seda was doing with Al

15  Haramain.  There is really no distinction.

16      THE COURT:  But for purposes of the present motion,

17  what is the relief you want?  Is it a ruling that the two Al

18  Haramain foundations should be viewed as a single entity?

19  Well, clearly it's that, that they should be viewed as a single

20  entity such that the Saudi Arabian entity should be producing

21  documents or should have preserved documents at an earlier

22  time.  But beyond that what is it you are seeking presently?

23      MR. HAEFELE:  You know, our position is since they are

24  alter egos, to the extent we have requested information from Al

25  Haramain the U.S. branch, that requires them to produce

0287TERC

1    anything that the U.S. branch or that can be gotten related to

2    the greater Al Haramain knowledge of what was going on in Al

3    Haramain worldwide.

4         As to the Quran Foundation, since it really is the

5    same, and since they shared information, and since a number of

6    the documents that have been produced indicate that there was

7    really little distinction between things going on at the Quran

8    Foundation, things going on at the Al Haramain foundation the

9    U.S. branch, there is a problem that there may be substantial

10   documents in Mr. Seda's possession that relate to work that was

11   done for either or.  And since that distinction is dissolved

12   for the most part, we want to see the documents from the Quran

13   Foundation that relate to Al Haramain, and I think that's the

14   way the request was made.

15        THE COURT:  Is Mr. Seda a defendant in the suit?

16        MR. HAEFELE:  Yes, he is.  I believe the discovery is

17   open to him as well.  I think his motion to dismiss was also

18   denied.

19        THE COURT:  OK.  Well, I guess one question would be

20   has he been subpoenaed -- not subpoenaed -- has he been given a

21   request for production of documents?

22        MR. HAEFELE:  He has not, because we understood that

23   the request to the Al Haramain Foundation was sufficient.  And

24   he was the U.S. officer.  I mean we could do it, but it would

25   be redundant.

0287TERC

1          THE COURT:  Well, it might be, but it might not be.

2   Who represents him, by the way, do you know?

3          MR. HAEFELE:  The same lawyers, your Honor, Mr.

4   Kabat's office.

5          MR. KABAT:  Yes.

6          THE COURT:  I'll ask him the question:  If he were

7   served with a request for production of documents individually,

8   would it yield any more documents?

9          MR. KABAT:  I don't think so, your Honor, because what

10  happened is that when Mr. Seda was overseas, the government,

11  you know, seized all the documents that were in the Ashland

12  office, and then they turned them over to his defense attorney

13  in Portland.  He is represented by the public defender.  They

14  in turn gave us a copy, and we produced those to the

15  plaintiffs.  So, that seems to be the totality of what was in

16  the Ashland office.

17         THE COURT:  There was also a discussion in the various

18  papers I received about the extent to which various requests

19  or, more particularly, interrogatories were overbroad or the

20  objections to those interrogatories were boilerplate.  Should

21  we discuss that today, or is it more appropriate for me to

22  first decide the issue we have been talking about thus far and

23  then see where that take us?

24         MR. HAEFELE:  Your Honor, I would go whichever way

25  your Honor would prefer.

52

0287TERC

1          MR. KABAT:  Your Honor, I would agree you should

2     decide the first issue.  And I would also note that the

3     plaintiffs' reply brief, the January 5 brief, did not address

4     any of our response on the overbroad and so forth issues, so

5     they're fully submitted on the papers.

6          THE COURT:  OK.  Well, then I will focus first on the

7     issue of whether the -- well, I guess it's one and a half

8     issues -- whether the Saudi entity and the U.S. entity should

9     be viewed as one in the same, and if the Saudi entity comes

10    into the loop, whether that implicates all of the worldwide

11    activities of the Foundation, since I gather there were what

12    Mr. Haefele would call and I guess at times what the Foundation

13    called branch offices in other countries.

14         MR. HAEFELE:  Your Honor?

15         THE COURT:  Yes.

16         MR. HAEFELE:  Two points that I would like to make to

17    your Honor, fairly simplistic I hope.

18         THE COURT:  Sure.

19         MR. HAEFELE:  We didn't respond to the additional

20    issue related to the scope or the burden or the breadth of the

21    discovery requests in our later letter because we thought we

22    did cover it substantially in our December 2 letter on pages 14

23    and 15.  But the other issue is if you look at our December 2

24    letter, on the bottom of page 15 there is a really important

25    typo that I would like to correct for your Honor.

0287TERC

1      THE COURT:  Is that the one where you left out the

2  word "not"?

3      MR. HAEFELE:  Yes, it is.

4      THE COURT:  I caught that.  I read it twice because it

5  did seem to be a change in your position.

6      MR. HAEFELE:  I read it a lot over the weekend and

7  tried to figure out where that word "not" was.

8      THE COURT:  I had already taken the liberty of

9  correcting that in my copy.

10      MR. HAEFELE:  Thank you, your Honor.

11      THE COURT:  OK.  As to this issue I'm going to reserve

12  decision.

13      The next conference before Judge Daniels is scheduled

14  for April 15.  I haven't a clue whether he will hold that

15  conference or not, but I wanted to alert everyone and let

16  whoever is not here who needs to know know that I have asked

17  him if it is held on April 15 to move it to the afternoon

18  because I have a conflict in the morning.  So if it occurs, and

19  assuming it occurs on April 15, it's likely to be the

20  afternoon, not the morning.

21      Anything else anybody wants to bring up today?

22      MR. CARNER:  A minor thing we mentioned earlier.  As I

23  mentioned, we are in this difficult situation where discovery

24  is ongoing as to Al Haramain in one case but its motion remains

25  pending in the rest of the cases.  And we very much would like

54

0287TERC

1   to try to harmonize the situation.  So, to the extent that

2   we're going to make an application, would you prefer that go to

3   you or to Judge Daniels?

4          THE COURT:  No, I think that one should -- basically

5   to say that everybody ought to be involved in whatever

6   discovery is permitted as to Al Haramain U.S. and/or Saudi

7   Arabia?

8          MR. CARNER:  That's correct, your Honor.

9          THE COURT:  No, I think that should come to me.

10         MR. CARNER:  OK.  Thank you, your Honor.

11         THE COURT:  OK.  Thank you, all.

12         MR. HAEFELE:  Thank you, your Honor.

13                          - - -

14

15

16

17

18

19

20

21

22

23

24

25