## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) <br> ) No. 03 MDL 1570 (GBD/FM) <br> )         ECF Case <br> ) |

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 02-CV-6977;
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
>     Case No. 03-CV-5738;
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 04-CV-05970;
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-07279;
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
>     Case No. 03-CV-6978; and
> WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
>     DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

### Reply Brief in Support of
### Defendant Perouz Sedaghaty's Motion to Stay

Defendant Perouz Sedaghaty respectfully submits his reply brief in support of his motion to stay pending resolution of the parallel criminal prosecution in the U.S. District Court for the District of Oregon (Doc. Nos. 2403-2404) (Jan. 21, 2011).

As set forth below, and in his motion to stay, this Court should stay this case as to Mr. Sedaghaty, because he is facing an appeal of a conviction, or a new trial, in a criminal case involving the <u>same</u> events and transactions underlying the civil proceeding before this Court, so that his Fifth Amendment privilege against self-incrimination would be violated by allowing civil discovery to go forward.

I.   **The U.S. Supreme Court's *Hubbell* Decision Prohibits Discovery of Potentially Incriminating Evidence from Mr. Sedaghaty.**

As a threshold matter, plaintiffs' opposition fails to mention, let alone discuss, the key Supreme Court precedent governing the Fifth Amendment privilege against self-incrimination arising from the production of documents or information – United States v. Hubbell, 530 U.S. 27 (2000).  The Supreme Court explained that: "It has, however, long been settled that [the Fifth Amendment's] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence."  Id. at 37.  Indeed, in the underlying case, the Supreme Court expressly recognized that:  "It is abundantly clear that the testimonial aspect of respondent's act of producing subpoenaed documents was the first step in a chain of evidence that led to this prosecution."  Id. at 42.  The Supreme Court concluded that:

> In sum, we have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence.  **That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources.**

Id. at 43 (emphasis added).

Plaintiffs' reliance on Braswell is misplaced (Pls. Opp., at 8-9) is misplaced, since that case concerned the production of records by a corporate custodian.  Braswell v. United States, 487 U.S. 99 (1988).  Here, however, plaintiffs are seeking documents in Mr. Sedaghaty's own possession.  Plaintiffs have already conducted discovery of the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA"), and appear to be using discovery from Mr. Sedaghaty as a back door way to get more discovery from AHIF-USA.  The discovery sought in this case from Mr. Sedaghaty thus falls squarely within the scope of that proscribed by Hubbell.

For example, in the securities prosecution of Martha Stewart, Judge Cederbaum held that the government could not seek certain discovery of a third party (Bacanovic) because the government sought to use "the fact that the documents were produced by Bacanovic from his files.  Clearly such an act of production is testimonial and may not be compelled."  United States v. Stewart, No. 03 Cr. 717 (MGC), 2003 WL 23024461, at *3 (S.D.N.Y. Dec. 29, 2003) (citing Hubbell, 530 U.S. at 36).

Similarly, in a tax prosecution, Magistrate Judge Katz held that discovery could not be had of certain records allegedly in an individual's possession, since "the 'act of production' doctrine has been recognized as protecting individuals from incriminating themselves by being compelled to produce documents where the production could implicitly communicate incriminating facts, such as the admission that 'papers existed, were in [the producing party's] possession or control, and were authentic.'"  United States v. Cianciulli, No. M18304 (RMB/THK), 2002 WL 1484396, at *2 (S.D.N.Y. July 10, 2002) (quoting Hubbell, 530 U.S. at 36-37) (brackets in original).  Hence, Magistrate Katz concluded "that production of the documents . . . could 'furnish a link in the chain of evidence needed to prosecute' Respondent, and thus to require him to produce them to Petitioner would violate his Fifth Amendment rights."  Id. at *3 (quoting Hoffman v. United States, 341 U.S. 645, 649 (1951)).

Here, as in Hubbell, Stewart, and Cianciulli, plaintiffs' attempt to seek discovery from Mr. Sedaghaty in this civil litigation would violate his Fifth Amendment rights, since any discovery might provide information for the government to use in a re-trial, including in a superseding indictment (given that a re-trial or new indictment could be broader than the scope of the first trial).  This Court should not condone plaintiffs' attempt to force Mr. Sedaghaty to relinquish his Fifth Amendment rights in order to conduct discovery in civil litigation.

3

## II.     There Exists Substantial Overlap between the Civil and Criminal Cases.

This Court should recognize that substantial overlap exists between the civil litigation and the criminal prosecution that is pending in the U.S. District Court for the District of Oregon. Plaintiffs' Opposition is tellingly silent on the fact that not just one, but two of plaintiffs' "expert" witnesses were also involved in the criminal case – Evan Kohlmann and Jean-Charles Brisard.  See Mot. to Stay, Mem. at 6.  Plaintiffs' Opposition is even more silent on the fact that while the criminal case was nominally a tax case, the prosecution introduced (or proffered) evidence that the government alleged showed some "terrorism" connection involving Mr. Sedaghaty.  Id. at 6 (government's theory of the case is that Mr. Sedaghaty used a charitable donation to support terrorism, and that he filed a false tax return to conceal that transaction). Plaintiffs' Opposition fails to admit, as they must, that the plaintiffs are seeking discovery into the same transactions and actions that underlie the criminal prosecution.

If there remained any doubt as to the overlap between the criminal case and the civil case, U.S. District Judge Hogan made clear that "terrorism" issues would be presented at trial, in his order on the pretrial motions. See United States v. Sedaghaty, Cr. No. 05-60008-HO, Order (Doc. No. 407) (D. Or. Aug. 11, 2010) (excerpts attached hereto as Exhibit A).  For example, Judge Hogan explained that Mr. Kohlmann – who has also served as an expert to the Burnett plaintiffs in this litigation – "will testify regarding history of the Chechan and Russian conflict and the role of the mujahideen in that conflict, funding practices of certain Islamic charities, the background of Al Haramain and its alleged support of terrorist financing, and the use of internet technology to support the mujahideen."  Id. at 5.  Judge Hogan held that defendant's expert witness could similarly testify "regarding how one may seek to hide terrorist funding and actions inconsistent with such deceit. . . . [and] may testify about control of funds by terrorist

4

organizations generally." Id. at 8.  Judge Hogan recognized that "the government opened the door by making this case about the Chechan Mujahideen." Id. at 12.  These are, of course, the <u>exact same issues</u> for which plaintiffs seek to hold Mr. Sedaghaty liable in this civil proceeding.

Moreover, the government's own filings in the criminal case make clear that – contrary to plaintiffs' attempts to mis-characterize the criminal case – the government viewed "terrorism" as underlying the criminal case.  On the very first page of one of its pretrial briefs, the government made clear that "the financing of terrorist activity and . . . stopping the provision of material support to terrorist organizations in all parts of the world" was an important governmental interest.  See <u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO, Govt's Resp., at 1 (Doc. No. 225) (D. Or. Sept. 25, 2009) (excerpts attached hereto as Exhibit B).  The rest of that brief discusses the government's allegations regarding the operations of AHIF-USA with respect to supposed support of terrorism in Chechnya.  Id. at 2, 8-10.

The government's pretrial witness list includes both Mr. Kohlmann (plaintiffs' expert witness in this Court) and a Russian agent (Sergey Ignatchenko) who were to testify about "the funding of the mujahideen in Chechnya" (Kohlmann) and "Al-Haramain Islamic Foundation's role in supporting the mujahideen in Chechnya" (Ignatchenko).  See <u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO, Govt's Am. Witness List, at 2, 4 (Doc. No. 293) (D. Or. Mar. 17, 2010) (attached hereto as Exhibit C).  Again, these are the <u>exact same issues</u> for which plaintiffs seek to hold Mr. Sedaghaty liable in this Court.

Finally, the government's conduct at trial makes clear that although the prosecutor initially attempted to disclaim any "terrorism" connection in the opening statement, the government did, in fact, present "evidence" (over Mr. Sedaghaty's objection) that attempted to link him directly to terrorism.  This included, *e.g.*, an oversized photo montage that consisted of

a photograph of Mr. Sedaghaty and an entirely separate, unrelated photograph of several members of the Chechen mujahideen. See United States v. Sedaghaty, Cr. No. 05-60008-HO, Def. Mot. for New Trial, at 16 (Doc. No. 477) (D. Or. Sept. 23, 2010) (excerpts attached hereto as Exhibit D). Mr. Kohlmann – who also serves as plaintiffs' expert witness in this Court – testified in a way to convince the jury that "Islamic charities were believed to have funded terrorism and mujahideen." Id. at 16-17. During the trial and at closing argument, the prosecutor made repeated references to the head of the Saudi Joint Relief Commission as an "old friend," "good friend," or "best friend" of Osama Bin Laden. Id. at 17 & n.3. More generally, there were repeated references to terrorism and the Chechen mujahideen throughout the trial. Id. at 18-19. The prosecutor also made ad hominem remarks about Islam, and even threw the Qur'an down on the table during the closing argument. Id. at 19-20. Again, the government's conduct of the criminal trial demonstrates the substantial overlap between the criminal case and the civil case in this Court.

### III. Plaintiffs Have Not Satisfied Their Burden of Showing that Mr. Sedaghaty's Fifth Amendment Rights are Outweighed by the Need for Civil Discovery.

This Court should find that plaintiffs have failed to satisfy their burden of showing that Mr. Sedaghaty's Fifth Amendment rights against self-incrimination – a clearly established constitutional right – are outweighed by a claimed need for civil discovery. As a threshold matter, plaintiffs have already conducted written discovery of AHIF-USA, and plaintiffs do not need to conduct separate discovery of Mr. Sedaghaty, since plaintiffs' theory of liability as to him is based *solely* on the alleged activities of AHIF-USA.

(1) As set forth in Part II, *supra*, there exists substantial overlap between the civil and criminal cases – which is the threshold and most important element in determining whether to stay civil litigation pending resolution of a criminal case. See also Mot. to Stay, Mem. at 4-6

(collecting cases).  Plaintiffs' citation to Transworld, see Pls. Opp. at 4, actually supports Mr. Sedaghaty's motion, since in that case, as here, there existed substantial overlap between the two cases, as both defendants faced civil and criminal liability for the same conduct.  Trustees of the Plumbers & Pipefitters Natl. Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995).

(2)     The status of Mr. Sedaghaty's criminal prosecution also warrants a stay, given the likelihood of a new trial, and the potential that the government may seek to expand the conduct for which liability is to be imposed.  Plaintiffs' extensive reliance on an unpublished case from Kentucky, see Pls. Opp. at 5-6, is misplaced for several reasons.  First, that case is not even from the Second Circuit, and its legal analysis is remarkably cursory.  See Sparkman v. Thompson, Civil No. 08-01-KKC, 2009 WL 1941907 (E.D. Ky. July 6, 2009).  The court did not cite Hubbell, and while it cited the aforementioned Transworld decision for the general legal standard, it did not note that Judge Chin of this Court specifically found that a stay was warranted due to the overlap between the civil and criminal cases.  In contrast, in Sparkman, there was no such overlap.  Id. at *2 ("However, the specific conduct for which Defendant was convicted relates exclusively to the illegal bridge and road work, not his allegedly discriminatory and retaliatory firing practices.").  Thus, in Sparkman, there was no overlap in the conduct between the two cases (other than that the same defendant did both acts), while here there is substantial overlap in the conduct alleged against Mr. Sedaghaty in both the criminal prosecution and the civil case.

(3)     Finally, plaintiffs fail to address the fact that other courts in this district have repeatedly held, in weighing the private and public interests, that the defendants' constitutional rights against self-incrimination outweigh any private interests of plaintiffs of seeking discovery

7

in civil litigation. Mr. Sedaghaty's motion to stay cited numerous cases for this proposition. See Mot. to Stay, Mem. at 7-8 (citing Trustees, 886 F. Supp. at 1140-41; Sterling Natl. Bank v. A-1 Hotels Intl., Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) ("When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, **the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest**.") (emphasis added); Volmar Distributors, Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("Proceeding with discovery would force these defendants into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit."); id. at 40 ("The Court appreciates that this stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration") (collecting cases); Dienstag v. Bronsen, 49 F.R.D. 327, 329 (S.D.N.Y. 1970) ("protection of defendants' constitutional rights against self-incrimination is the more important consideration") (collecting cases)).

Moreover, the public interest is best served through a criminal prosecution, where the prosecutor represents the public interest, unlike private plaintiffs. See Def. Mot., Mem. at 9 (citing Trustees, 886 F. Supp. at 1140 ("the criminal prosecution will serve to advance the public interests at stake"); Volmar, 152 F.R.D. at 40 ("However, the pending criminal prosecution serves to advance those same interests."); Brock, 109 F.R.D. at 121 ("a criminal prosecution serves to enforce these same interests")).

Therefore, this Court should find that plaintiffs have failed to satisfy their burden of showing that any interest in discovery in this civil case outweighs Mr. Sedaghaty's constitutional interest in ensuring that his Fifth Amendment rights against self-incrimination are not violated.

## IV. CONCLUSION.

For the foregoing reasons, and those set forth in Mr. Sedaghaty's motion to stay, this Court should stay this case as to Mr. Sedaghaty – including any attempt by plaintiffs to obtain discovery about AHIF-USA from him – since (1) there is almost complete overlap between the issues in the pending criminal prosecution and the civil cases in this Court; (2) the criminal prosecution is at an advanced stage, with the prospect of a new trial; and (3) the interests of the public and Mr. Sedaghaty in preserving a defendant's right to avoid self-incrimination through discovery in a civil proceeding substantially outweigh the plaintiffs' interests in obtaining civil discovery.

Respectfully submitted,

/s/ Lynne Bernabei
_____

Lynne Bernabei   D.C. Bar No. 938936
Alan R. Kabat    D.C. Bar No. 464258
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
tel. (202) 745-1942
fax (202) 745-2627
Attorneys for Perouz Sedaghaty

DATED:  February 14, 2011

## CERTIFICATE OF SERVICE

    I hereby certify that on February 14, 2011, I caused the foregoing Reply Brief in Support of Defendant's Motion to Stay to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

                                                      /s/ Alan R. Kabat
                                                      _____
                                                      Alan R. Kabat