## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

)
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001    ) No. 03 MDL 1570 (GBD/FM)
)            ECF Case
)

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 02-CV-6977;
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
>     Case No. 03-CV-5738;
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 04-CV-05970;
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-07279;
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
>     Case No. 03-CV-6978; and
> WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
>     DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

## DECLARATION OF ALAN R. KABAT IN SUPPORT OF
## DEFENDANT PEROUZ SEDAGHATY'S REPLY BRIEF

I am an attorney licensed to practice in the District of Columbia and am admitted *pro hac vice* in this matter. I am with the law firm of Bernabei & Wachtel, PLLC, counsel to defendant Perouz Sedaghaty. I submit this declaration to transmit to the Court the following documents submitted in support of Mr. Sedaghaty's reply brief (Feb. 14, 2011):

1.    Exhibit A to Mr. Sedaghaty's reply brief is a copy of excerpts from U.S. District Judge Hogan's Order on pretrial motions in United States v. Sedaghaty, Cr. No. 05-60008-HO (Doc. No. 407) (D. Or. Aug. 11, 2010).

2.    Exhibit B to Mr. Sedaghaty's reply brief is a copy of excerpts from a pretrial brief submitted by the government in United States v. Sedaghaty, Cr. No. 05-60008-HO (Doc. No. 225) (D. Or. Sept. 25, 2009).

3.     Exhibit C to Mr. Sedaghaty's reply brief is a copy of excerpts from the witness list submitted by the government in United States v. Sedaghaty, Cr. No. 05-60008-HO (Doc. No. 293) (D. Or. Mar. 17, 2010).

4.     Exhibit D to Mr. Sedaghaty's reply brief is a copy of excerpts from the defendant's motion for a new trial, filed in United States v. Sedaghaty, Cr. No. 05-60008-HO (Doc. No. 477) (D. Or. Sept. 23, 2010).

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed on February 14, 2011.

_Alan R. Kabat_

ALAN R. KABAT

**Exhibit A to Reply Brief**

Order,
United States v. Sedaghaty, Cr. No. 05-60008-HO
(Doc. No. 407) (D. Or. Aug. 11, 2010)
(excerpts)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 05-60008-HO |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| PIROUZ SEDAGHATY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the court are several pending matters in need of resolution prior to commencing trial in this matter.

A.   Motion for Further Disclosure From the Government (#304 and #309)

In his "initial potential witness list" and his initial "potential exhibit list," defendant maintains that the government should be required to provide its anticipated rebuttal and

The government's proposed expert, Evan Kohlmann, will testify regarding history of the Chechan and Russian conflict and the role of the mujahideen in that conflict, funding practices of certain Islamic charities, the background of Al Haramain and its alleged support of terrorist financing, and the use of internet technology to support the mujahideen.  Kohlmann is qualified by education and experience to testify in these areas.  See, e.g., Resume of Evan Francis Kohlmann (attached to Government's Response to motion for a Daubert Hearing (#344) (degree in international politics with emphasis in international security studies, senior investigator with the Nine/Eleven Finding Answers Foundation, founder of globalterroralert.com, consultant for the Office of the High Representative in Bosni-Herzegovina, etc.).  Kohlman is also well-recognized as an expert in these areas.  See, e.g., United States v. Abu Jihaad (D. CN) Crim. No. 3:07-CR-57-MRK (testified in case regarding providing classified information to publication entity operating jihadist websites); United States v. Ahmed (N.D. GA) 1:06-CR-147-WSDGGB (testified in case regarding casing and videotaping monuments and other sites in Washington, D.C., as targets and sending the videos to known terrorists, who stored and distributed multiple videos of violent jihad); United States v. Amawi (N.D. OH) 3:06-CR-719 (testified in case regarding conspiracy to kill U.S. soldiers in Iraq, recruitment of persons to join jihad in Iraq, providing material support, downloading website materials

Haramain, the likelihood that defendant Sedaghaty was under surveillance, and the trustworthiness of the FSB.

Lang is a retired intelligence officer with prior experience in the Middle East. Accordingly, he has experience in understanding Muslim culture, Russian intelligence gathering techniques, Al-Haramain, and surveillance techniques. Much of the proposed testimony is relevant to negating the government's theory in this case. However, any testimony regarding defendant Sedaghaty's specific willfulness with respect to the distribution of funds at issue will not be allowed. Lang can, nonetheless, testify generally regarding how one may seek to hide terrorist funding and actions inconsistent with such deceit. Additionally, Lang may testify about control of funds by terrorist organizations generally.

Lang's expertise is sufficient to allow him to testify regarding Muslim hostility toward Russia and to the extent he is aware that Muslims would thus have pro-Chechan material, he may so testify. Lang may also testify as to the general tenants of Muslim obligations, but not defendant's adherence specifically.

Lang's testimony regarding surveillance is relevant to Sedaghaty's belief that he was aware of alleged surveillance, but Lang may not offer an opinion as to defendant's knowledge of such surveillance. So limited, the government's motion is otherwise denied.

time it took to bring this case forward.  Defendant agrees that so long as the government does not offer evidence of flight, then he will not need to raise this issue or the issue of his voluntary return.  The motion is granted on this issue.

### 5.   References to Defendant's Attempts to Condemn Osama bin Laden, the Bombings of the U.S. Embassies in East Africa, and the Terrorist Attacks of September 11, 2001

The government seeks to exclude exhibits offered to show defendant sought to condemn acts of terrorism.  The defense theory will apparently be that Sedaghaty was a peaceful man and that such rebuts the willfulness element.  The government opened the door by making this case about the Chechan Mujahideen.  Defendant, nonetheless, has a difficult task in arguing that the statements are offered merely for the fact that they were made rather than the truth of the matter asserted.  A strong jury instruction may be necessary if defendant wants to go with peaceful nature theory and use the condemnations not for the truth but to show that they were said.  The motion is denied.

### 6.   Classified Evidence

The court does not, at this stage, intend to allow any classified evidence to be presented to the jury.  The motion is granted without prejudice.

**Exhibit B to Reply Brief**

Government's Response,
<u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO
(Doc. No. 225) (D. Or. Sept. 25, 2009)
(excerpts)

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
701 High Street
Eugene, OR 97401
Email:  chris.cardani@usdoj.gov
Telephone:  (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #912874
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
Email:  charles.gorder@usdoj.gov
Telephone:  (503) 727-1000
        Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CR 05-60008-02-HO** |
| v. | |
| **PIROUZ SEDAGHATY,** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BASIS  FOR SUPPRESSION OF** |
| Defendant. | **SEIZED COMPUTER INFORMATION** |

## I.   STATEMENT OF FACTS

Both the United States of America and the Russian Federation have an interest in

preventing the financing of terrorist activity and in stopping the provision of material support to

terrorist organizations in all parts of the world, including in that part of the Russian Federation

called Chechnya. That mutual interest has been long-term. Conflict in the Caucasus region of the Russian Federation has waxed and waned since at least the mid-1990s. Indeed, as recently as last month, a suicide bombers killed eight policemen in two separate incidents in Chechnya.[1] The president of Russian Republic of Ingushetia which neighbors Chechnya was seriously injured in a bomb attack in June 2009. An Islamic terrorist group with roots in Chechnya claimed responsibility for that attack.[2]

As alleged in the indictment, in the year 2000 the Al Haramain organization which was headquartered in Saudi Arabia, and whose U.S. branch (Al Haramain USA) was then operated by defendant Sedaghaty in Ashland, Oregon, was involved in encouraging donations to support the so-called "mujahideen" fighting Russian forces in Chechnya. The conspiracy alleged in the indictment was formed for the purpose of covering up Al Haramain's provision of "charitable" funds to the Chechen mujahideen.

In December 2008, representatives of the United States, including the prosecution team in this matter, met in Moscow with representatives of the Russian Federation, including the Russian Security Service often referred to as the "FSB," to exchange information and evidence concerning the activities of Al Haramain in the Caucasus region of the Russian Federation. In defendant's pleading entitled "Post-Hearing Additional Specification of Basis for Suppression Based on Dissemination of Information to Russian FSB and Request for Discovery"(CR 205),

---

[1] "Police killed by Chechen suicide bomber," August 25, 2009, accessed at cnn.com on September 24, 2009.

[2] "Chechen militants claim responsibility for Siberia Dam Disaster," August 21, 2009, accessed at www.france 24.com on August 24, 2009.

**Page 2 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL
BASIS  FOR SUPPRESSION OF SEIZED COMPUTER INFORMATION**

> (B) information, whether or not concerning a United States person, with respect to a foreign power or foreign territory that relates to –
>> (i) the national defense or security of the United States; or
>> (ii) the conduct of the foreign affairs of the United States.

It requires little imagination to see how information in Al Haramain USA's computers concerning (1) killed and captured Russian soldiers, (2) how persons in the United States were encouraging and supporting so-called "mujahideen soldiers fighting jihad in Chechnya," and (3) the translation of such material into Russian was information with respect to a foreign power and territory that related to the conduct of foreign affairs of the United States and was relevant to the ability of the United States to prevent the threat of future international terrorism.

Defense counsel attempts to minimize the significance of this information because of its age. The computers were seized and imaged in 2004, only five years ago. As noted earlier, the Russian government to this very day is struggling with extremist activity in the Caucasus. Just as the United States would have an interest in five to ten-year old information concerning the recruitment of individuals by Al Qaida, certainly the Russian government would be interested in the recruitment and support of jihadists in Chechnya just five to ten years ago.

The defendant's citation to the rules of grand jury secrecy do not compel a contrary conclusion. First, the computer material seized pursuant to a Rule 41 criminal search warrant does not even implicate the rules of grand jury secrecy since the seizure was not "a matter occurring before the grand jury" for which an obligation of secrecy is imposed under Federal Rule of Criminal Procedure 6(e)(2)(B). But even if the rule of grand jury secrecy did apply,

/ / /

**Page 8 -**   **GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BASIS FOR SUPPRESSION OF SEIZED COMPUTER INFORMATION**

Rule 6(e) has been amended to allow for disclosure to a foreign government official along the same lines as discussed above. See Fed. R. Crim. P. 6(e)(3)(A)(ii) and (D).

Far from being "outrageous," cooperation between the United States and foreign government partners should be encouraged as a matter of public policy. Indeed, reliance upon the reports of the computer forensic officials of foreign government has been found to be the basis for establishing probable cause in an application for a search warrant. *United States v. Cartier*, 543 F.3d 442, 446-447 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 1390 (2008). And the United States is a party to the Council of Europe's Convention on Cybercrime.[6] Article 23 of the Convention commits the parties to the Convention to cooperate:

> to the widest extent possible for the purposes of investigations or proceedings concerning criminal offenses related to computer systems and data, or for the collection of evidence in electronic form of a criminal offence.

Although the Russian Federation is a not a party to this Convention, one can hardly argue that similar cooperation with a non-party state is the kind of "outrageous conduct" that would justify suppression of otherwise lawfully obtained evidence.

Furthermore, it was reasonable to provide the Russian government with copies of all of the Al Haramain USA hard drives rather than attempt to segregate out only portions of the drives for dissemination to the FSB. As the courts have noted "[g]iven the numerous ways information is stored on a computer . . . a search can be as much an art as a science." *United States v. Brooks,* 427 F.3d 1246, 1252 (10th Cir. 2005). Indeed, in computer forensic analysis it is

---

[6] Council of Europe, Convention on Cybercrime, ETS No. 185, Budapest, 23 November. 2001.

**Page 9 -   GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL
                BASIS  FOR SUPPRESSION OF SEIZED COMPUTER INFORMATION**

standard practice to provide an examiner with complete copies of a drive rather than bits and pieces of it. *See generally United States v. Hill*, 459 F3d 966, 974-75 (9th Cir. 2006) (discussion of technical issues concerning searching computers). Many of the files in the Al Haramain USA drives relevant to Chechnya had been deleted, and some were fragmented and had to be reassembled by forensic analysis. Many were in foreign languages, including Russian. The forensic tools used in Russia, as well as the focus of the Russians' analysis, could well be different than the tools used by our computer forensic expert in this case. Thus, it would be difficult for us to know "what parts of the hard drives" the Russians required in order for them to obtain useful intelligence from the Al Haramain USA drives to counter terrorism in Chechnya.

Finally, even if the Court considered the dissemination of this computer media with the Russian government to be somehow improper, there are no fruits of that dissemination to be suppressed at the upcoming trial. *Wong Sun v. United States*, 371 U.S. 471 (1963). The evidence from the Al Haramain USA hard drives comes from the independent forensic search of those computers by U.S. law enforcement officials, not from any search conducted by the Russians. Similarly, the evidence obtained by the United States from the Russian government which the government intends to introduce at the trial was obtained pursuant to a Mutual Legal Assistance Treaty request from the United States to Russia, not from whatever examination the Russian government may have subsequently conducted of the Al Haramain USA hard drives. Evidence obtained independent of some unconstitutional conduct cannot be suppressed. *See United States v Heckenkamp*, 482 F.3d 1142, 1148-49 (9th Cir.), *cert. denied*, 128 S. Ct. 635 (2007) (evidence seized from computer pursuant to warrant supported by independent evidence not suppressed). Consequently, the motion to suppress should be denied.

**Page 10 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL
BASIS  FOR SUPPRESSION OF SEIZED COMPUTER INFORMATION**

**Exhibit C to Reply Brief**

Government's Amended Witness List,
<u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO
(Doc. No. 293) (D. Or. Mar. 17, 2010)

**DWIGHT C. HOLTON, OSB #09054**
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
**CHARLES F. GORDER, JR., OSB# 912874**
Assistant United states Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-CR-60008-HO |
| | ) | |
| v. | ) | **GOVERNMENT'S AMENDED** |
| | ) | **WITNESS LIST** |
| PIROUZ SEDAGHATY, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, through its undersigned counsel, herein submits

the following list of witnesses it may call in its case-in-chief.  A brief summary of

expected testimony is also provided.  The government reserves the right to call

additional witnesses as may become necessary during the course of trial.

| WITNESS NAME | TESTIMONY |
|---|---|
| Al-Haramain Islamic Foundation, Inc. Custodian of Records | Will authenticate records provided by the Al-Haramain Islamic Foundation, Inc., in response to a grand jury subpoena. |

| | |
|---|---|
| Al-Rajhi Bank, Custodian of Records | Will authenticate records provided by the bank |
| American Express Custodian of Records | Will authenticate American Express records and provide background testimony on travelers' checks. |
| Bank of America Custodian of Records | Will authenticate records provided by the Bank of America in response to a grand jury subpoena. |
| Barbara Cabral | Will testify amount observations made while attending functions at the Al-Haramain Islamic Foundation, Inc. in Ashland, Oregon. |
| Colleen Anderson, Special Agent IRS-CID | Will review bank records and evidence obtained through a search warrant served on the premises of the Al-Haramain Islamic Foundation, Inc. |
| Daveed Garenstein-Ross | A former employee of the Al-Haramain Islamic Foundation, Inc. Will testify about observations made during his employment. |
| Debra Ingram, Branch Manager Bank of America | Will testify concerning bank transactions with defendant Sedaghaty and Soliman Al-But'he. |
| Evan Kohlman | An expert on the conflict in Chechnya. He will provide background on the conflict, the role of the *mujahideen* in the conflict, and the funding of the *mujahideen* in Chechnya by the Al-Haramain Islamic Foundation. He will also introduce material promoted by the Al-Haramain Islamic Foundation on its website, and identify some of the items found on defendant Sedaghaty's computers. |
| FBI Arabic Translator | Will authenticate Arabic to English translations on government exhibits. |

PAGE 2 - GOVERNMENT'S AMENDED WITNESS LIST

| | |
|---|---|
| FBI Russian Translator | Will authenticate Russian to English translations on government exhibits. |
| FinCEN Custodian of Records | Will authenticate CMIR records. |
| First Escrow, Inc., Custodian of Records | Will authenticate records concerning a real estate transaction. |
| Gregory Wooten, Internal Revenue Service | An expert witness on tax exempt organizations in the United States.  He will provide testimony concerning a return filed by defendant Sedaghaty on behalf of the Al-Haramain Islamic Foundation, Inc., as well as background testimony on the requirements of a tax exempt charity. |
| ICE Custodian of Records | Will authenticate I-94 records. |
| IRS Service Center Representative | Will authenticate returns filed with the Internal Revenue Service by defendant Sedaghaty on behalf of the Al-Haramain Islamic Foundation, Inc. |
| Jeremy Christianson, Computer Specialist | A computer forensic expert.  He will testify about the work he did in retrieving information from computer hard drives seized during a search warrant from the Al-Haramain Islamic Foundation, Inc. |
| Linda Czemerys,  Supervisory Special Agent IRS-CI | Will authenticate records and computer hard drives seized during a search warrant served on the Al-Haramain Islamic Foundation, Inc. |
| Radmila Balobina | Testimony is to be determined. |
| R.D. Kanan, Attorney at Law | Will provide testimony concerning a real estate transaction he engaged in on behalf of the Al-Haramain Islamic Foundation, Inc. |

PAGE 3 - GOVERNMENT'S AMENDED WITNESS LIST

| | |
|---|---|
| Richard Smith, Internal Revenue Service, Computer Investigative Specialist | Will provide testimony concerning computer hard drives seized during a search warrant from the Al-Haramain Islamic Foundation, Inc. |
| Sergey Ignatchenko, FSB Officer | Will testify about Al-Haramain Islamic Foundation's role in supporting the *mujahideen* in Chechnya and authenticate a conversation between the President of Al-Haramain and the commander of the *mujahideen* in Chechnya. |
| State of Oregon, Office of the Secretary of State, Corporation Division | Will authenticate records concerning the Al-Haramain Islamic Foundation, Inc. |
| Thomas Wilcox, CPA | Will testify that he was hired by defendant Sedaghaty to prepare returns to be filed by Al-Haramain with the Internal Revenue Service. He will further testify concerning information he received to prepare those returns, and conversations he had with defendant and others about financial transactions. |

DATED this 17th day of March, 2010.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney

*/s/ Christopher L. Cardani*
CHRISTOPHER L. CARDANI
Assistant United States Attorney

*/s/Charles F. Gorder, Jr.*
CHARLES F. GORDER, JR.
Assistant United States Attorney

**Exhibit D to Reply Brief**


Defendants' Motion for New Trial,
<u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO
(Doc. No. 477) (D. Or. Sept. 23, 2010)
(excerpts)

**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008** |
| **Plaintiff,** | |
| | **MOTION FOR NEW TRIAL** |
| **v.** | |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

### C.    Appeals To Prejudice.

### 1.    Guilt By Association.

The government used, throughout the trial, a photo montage that was on a large posterboard. The government claimed it was "demonstrative purposes" and used it at every opportunity to demonstrate the government's approach of guilt by association.  The persons depicted by photograph were Mr. Seda; an inflammatory photo of Soliman Al Buthe, the co-defendant; a non-photo silhouette of Mr. Al Shoumar; Abdul Quadir; and Commander Ul-Khattab, leader of the Chechen mujahideen.  There are many references to this photo montage, particularly during opening and closing.  *See, e.g.*, Tr. 8-9, 25, 29, 32 (Gov't Opening, August 30, 2010); 50-51, 56 (September 8, 2010).The government could not have relied on guilt by association any more than they did in this trial.  *See Kennedy v. Lockyer*, 379 F.3d 1041, 1055-56 (9th Cir. 2004) (evidence of gang membership cannot be introduced to prove intent or culpability; such evidence creates the impermissible and prejudicial risk of "guilt by association," as well as the risk that the jury will equate gang membership with the charged crimes).  Any jury instructions provided did not cure the prejudice that was caused by the photo montage.

The photo montage was the most visual act of guilt by association, but the testimony was replete with it.  Indeed, the entire testimony of Evan Kohlmann was designed to invite a conviction because, as a general

proposition, Islamic charities were believed to have funded terrorism and mujahideen. This testimony was offered with no link to Mr. Seda or Al Haramain Ashland.

The closing argument contains another clear example of the improper appeal to prejudice. Since September 11, 2001, the biggest bogeyman for the United States has been Osama Bin Laden. Mr. Seda abhors Bin Laden and his perversion of Islam, but the jury was not permitted to read Mr. Seda's writings on this subject. *See e.g.* Exs. 810(B), 813(A), 836(B), 836(C), 839, 840, 840(A), 840(B), and 840(C). *Compare Waters, supra.* The government was, however, permitted to inject the bogeyman into the trial through testimony that the man the Saudi government placed as head of the Saudi's Joint Relief Committee was an "old friend"[3] of Bin Laden's and had fought with him in Afghanistan at a time when the United States was funding the anti-Soviet mujahideen. TR. 169-71 (August 31, 2010).

This appeal to emotion and prejudice and a call to find Mr. Seda guilty based on the former friendship with no proof of any communication between him and Mr. Seda or any knowledge about him by Mr. Seda requires a new trial.

---

[3] This description escalated through trial. On August 31, 2010, he was described as an "old friend" of Osama Bin Laden. Tr. 169-71 (August 31, 2010). On September 3, 2010, he was described as a "good friend," and then on September 8, 2010, he was described as a "best friend" of Osama Bin Laden. Tr. 124 (September 3, 2010) and Tr. 74 (September 8, 2010).

In his opening statement, Mr. Cardani stated there are no terrorism charges in this indictment:

> The government is not accusing Mr. Sedaghaty for being a terrorist. Right. Tax count and a conspiracy count. There will be lots of evidence related to the whole atmosphere of violent events overseas but there are no terrorism charges.

Gov't Opening at 6. That is not how the case was tried. Notwithstanding the fact that support of the Chechen fighters and condemnation of Russian brutality was official United States policy in 1999-2000, that support of the fighters was lawful, and that the fighters were not terrorists, but were engaged in a war of national liberation, the government and its witnesses repeatedly spoke about terrorism. *See, e.g.*, Tr. 60 (August 31, 2010); 104-06 (August 31, 2010); 109 (August 31, 2010); 111 (August 31, 2010); 113-114 (August 31, 2010); 171 (August 31, 2010); 264 (August 31, 2010); 42 (September 1, 2010); 170 (September 2, 2010); 201 (September 2, 2010); 68-69 (September 7, 2010); 258 (September 7, 2010); 261 (September 7, 2010); 268 (September 7, 2010). And in closing, the government references to terrorism amounted to an appeal to the jurors' fears about terrorism.

> Why are records so important? Because this kind of stuff once it's out there, it can disappear into the Never Never Land of terrorism. This is how wars are fought. The mujahideen are not sponsored by countries.
>
> It's not like Russia who pays its soldiers with rubles, government money. It's not like the American Army being paid with dollars. The mujahideen are freelance fighters that go around the global to promote their terrible version of a religion that has very peaceful

elements of it, but their version of hatred, of killing people that don't believe in their religion, they have all these crazy views about women. This is how they do their stuff. Cash. And once cash is released into the mainstream, it's gone.

Cardani closing, Tr. 157-58 (September 8, 2010).

## 2.    Anti-Islamic Statements And Actions.

This trial is not about the religion of Islam. This case will involve religious aspects to it to tell you what the defendant's mindset was when he engaged in these transactions because we will show you that al-Haramain subscribed to a very strident form of Islam that promoted acts of violence in the name of religion, jihad, violent jihad, aggressive "kill people" jihad.

Gov't Opening, Tr. 22 (August 30, 2010). While this was stated in the opening,

the focus of the trial did put Islam on trial. This was seen most clearly in the

rebuttal closing.

The prosecutor started his rebuttal with the Noble Qur'an. The

transcript shows the prosecutor saying, virtually at the outset, "The Noble

Qur'an is the defendant..." Cardani closing, Tr. 152 (September 8, 2010).   He

went on:

after he started working for Al Haramain, sending to U.S. prisons around this country, in the thousands, 10 to 15,000 prisoners, violent people serving time, getting junk like this from Al Haramain saying jihad is an obligation for Muslims. Talk about people prone to suggestion. Prisoners.

Cardani closing, Tr. 152 (September 8, 2010).

During this argument, and again later during the closing (Cardani closing, Tr. 187 (September 8, 2010)), the prosecutor was waiving the Qur'an around and then tossed it down on the table directly in front of the jury.[4]

This portion of the argument falls directly within the holding of *Bains*. There the Circuit noted that while most of the governments argument about the Sikh religion was relevant,

> A not insignificant portion of the prosecutor's closing arguments, however, highlighted the relevant testimony in a way that went beyond merely providing evidence of motive and intent...and that invited the jury to give in to their prejudices and buy into the various stereotypes that the prosecutor was promoting.

*Bains*, 204 F.3d at 974.

Particularly in the climate about Islam that exists in this country today, that is the type of statement that the courts have held appeals to prejudice and emotion. The Ninth Circuit has held that "appeals to racial, ethnic, or religious prejudice during the court of a trial violate a defendant's Fifth Amendment right to a fair trial." *United States v. Knobbier*, 574 F.3d 1065, 1073 (9th Cir. 2009), quoting *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000). Specifically, clearly established federal law provides that such prosecutorial conduct "violates a criminal defendant's due process and equal protection

---

[4] The parties agree that during these portions of the argument, the prosecutor was waiving, and then tossed down, the Noble Qur'an that had been shown to witnesses during the trial. This version contains the original Arabic and an English translation of the Qur'an and contains as Appendix 3, the Call to Jihad.

rights." *Bain v. Cambrai*, 204 F.3d 964, 974 (9th Cir. 2000). Here, the words were compounded by action.

Whatever an individual's views of the Qur'an, even one that contains the jihad appendix, it remains the holy book of one of the world's major religions. Moreover, The Noble Qur'an was the official Qur'an of the Kingdom of Saudi Arabia, one of the United States' closest allies in 2000. Whether consciously or not, throwing the holy book of Islam onto the table had the effect of allowing jurors to act based on emotion and also profoundly disrespected the defendant's religion.

The government's statements about the Noble Qur'an, anti-Semitism, and terrorism invited the jurors to give into their prejudices. *See Knobbier*, 574 F.3d at 1073; *Sandoval v. Calderon*, 241 F.3d 765, 776 (9th Cir. 2001); *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) ("Prosecutors may not make comments calculated to arouse the passions or prejudices of the jury."). *See also Viereck v. United States*, 318 U.S. 236, 247-48 (1943)

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.