LAW OFFICES

## BERNABEI & WACHTEL, PLLC
1775 T STREET, N.W.
WASHINGTON, D.C. 20009-7124

LYNNE BERNABEI
DAVID WACHTEL +
ALAN R. KABAT ■
ANDREA LOVELESS ●
PETER M. WHELAN ♦
ELIZA BRINK DERMODY
SAMIKA BOYD o

(202) 745-1942
Fax (202) 745-2627
WWW.BERNABEIPLLC.COM

+ADMITTED IN MD ALSO
■ADMITTED IN MD & VA ALSO
● ADMITTED IN CA ONLY
♦ ADMITTED IN VA ALSO
* ADMITTED IN CA ALSO
O ADMITTED IN GA ONLY

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/11

By Overnight Mail
June 29, 2011

Hon. Frank Maas
United States Magistrate Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

JUL 0 3 2011

Re: *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD/FM)

Dear Judge Maas:

Defendant Perouz Sedaghaty (Pete Seda), through undersigned counsel, respectfully submits his response to plaintiffs' discovery letter application. As set forth below, this Court should deny plaintiffs' request for an order compelling Mr. Sedaghaty to respond to discovery, because his pending motion to stay the civil case while his parallel criminal case in Oregon is underway is grounded in his Fifth Amendment privilege against self-incrimination. Allowing discovery to go forward while his criminal case is still pending would irreversibly destroy his constitutional right against self-incrimination. In contrast, the cases relied upon by plaintiffs in which discovery was allowed notwithstanding a pending motion to stay did not involve parallel criminal proceedings.

Moreover, there has been no waiver of Mr. Sedaghaty's right to raise objections to the discovery requests, since he was not obligated to submit responses and objections in light of his pending motion to stay. Otherwise, he would have had to assert his constitutional right against self-incrimination in response to plaintiffs' discovery requests.

Finally, the U.S. District Court for the District of Oregon, in the parallel criminal case, entered a broad protective order that bars Mr. Sedaghaty from making any public use or disclosure, outside the criminal case, of any of the documents produced by the government, which includes documents seized from his residence. Hence, he cannot produce those documents to the plaintiffs in this case as long as his criminal case is still pending.

Hon. Frank Maas
June 29, 2011
Page 2

### I. Background.[1]

#### A. The Parallel Criminal Case Against Mr. Sedaghaty.

Mr. Sedaghaty and the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA") were indicted by a grand jury in the U.S. District Court for the District of Oregon in 2005. See United States v. Al Haramain Islamic Foundation, Inc., et al., No. 6:05-cr-60008-HO (D. Or.). The government dismissed the indictment as to AHIF-USA on September 8, 2005. Id., Minute Order (Doc. No. 19) (Sept. 8, 2005). Mr. Sedaghaty voluntarily surrendered to the government, and the criminal trial commenced on August 30, 2010.

Although the trial was nominally based on tax and fraud charges, the district judge allowed the government to present extensive evidence about "terrorism" issues, including that relating to AHIF-USA's alleged support of terrorism in Chechnya – the same issues underlying plaintiffs' claims against Mr. Sedaghaty in this litigation. See United States v. Sedaghaty, Cr. No. 05-60008-HO, Order (Doc. No. 407) (D. Or. Aug. 11, 2010) (excerpts attached hereto as Exhibit A). The court stated that Evan Kohlmann – who has also served as an expert to the Burnett plaintiffs in this litigation – "will testify regarding history of the Chechan and Russian conflict and the role of the mujahideen in that conflict, funding practices of certain Islamic charities, the background of Al Haramain and its alleged support of terrorist financing, and the use of internet technology to support the mujahideen." Id. at 5. The court stated that Mr. Sedaghaty's rebuttal expert witness could similarly testify "regarding how one may seek to hide terrorist funding and actions inconsistent with such deceit. . . . [and] may testify about control of funds by terrorist organizations generally." Id. at 8. The court recognized that "the government opened the door by making this case about the Chechan Mujahideen." Id. at 12.

Similarly, the government's pre-trial brief made extensive reference to alleged funding of terrorism, the same theory underlying plaintiffs' claims against Mr. Sedaghaty in this Court. On the very first page of a pretrial brief, the government made clear that "the financing of terrorist activity and . . . stopping the provision of material support to terrorist organizations in all parts of the world" was an important governmental interest. See United States v. Sedaghaty, Cr. No. 05-60008-HO, Govt's Resp., at 1 (Doc. No. 225) (D. Or. Sept. 25, 2009) (excerpts attached hereto as Exhibit B). The rest of that brief discusses the government's allegations regarding the operations of AHIF-USA with respect to alleged support of terrorism in Chechnya. Id. at 2, 8-10. The government's pretrial witness list included both Mr. Kohlmann (plaintiffs' expert witness in this Court) and a Russian agent (Sergey Ignatchenko), who were to testify about "the funding of the mujahideen in Chechnya" (Kohlmann) and "Al-Haramain Islamic Foundation's role in supporting the mujahideen in Chechnya" (Ignatchenko). See United States v. Sedaghaty,

---

[1] The Background section is summarized from the procedural history set forth in the briefing on Mr. Sedaghaty's motion to stay. See Mot. to Stay, Mem. at 2-3 (Doc. No. 2404) (Jan. 21, 2011); Mot. to Stay, Reply Br., at 4-6 (Doc. No. 2407) (Feb. 14, 2011).

Cr. No. 05-60008-HO, Govt's Am. Witness List, at 2, 4 (Doc. No. 293) (D. Or. Mar. 17, 2010) (attached hereto as Exhibit C). Again, these are the exact same issues for which plaintiffs seek to hold Mr. Sedaghaty liable in this Court.

Although plaintiffs claimed that Mr. Sedaghaty already "exposed" his "theory to the prosecution in advance of trial," see Pls. Opp. to Mot. to Stay, at 2 (Doc. No. 2405) (Feb. 4, 2011), Mr. Sedaghaty did not testify at trial, so he did not disclose or otherwise "expose" information unique to himself. The jury verdict was in the government's favor. See United States v. Sedaghaty, Cr. No. 05-60008-HO, Jury Verdict (Doc. No. 466) (Sept. 9, 2010).

In advance of sentencing, Mr. Sedaghaty moved for a new trial, and filed a supplemental motion for a new trial based on the government's failure to disclose that the government's key fact witness was to be paid a substantial incentive fee for her testimony, and that her husband received a sizable payment before the trial. Id., Def. Supp. to Mot. for New Trial (Doc. No. 517) (Jan. 12, 2011). Mr. Sedaghaty also filed a motion for immediate release, which was granted. Id., Order (Doc. No. 525) (Jan. 19, 2011). The motion for a new trial was heard on June 7, 2011. If the motion for a new trial is denied, Mr. Sedaghaty's counsel in the criminal case intend to appeal to the U.S. Court of Appeals for the Ninth Circuit, and will seek an expedited briefing schedule.[2] Alternatively, if the motion for a new trial is granted, his counsel will proceed promptly with the new trial, unless the government dismisses the indictment.

### B. The Plaintiffs' Discovery Requests and Mr. Sedaghaty's Motion to Stay.

The plaintiffs in this Court made the same kinds of allegations against Mr. Sedaghaty and AHIF-USA – of terrorism financing in Chechnya that somehow caused the 9/11 attacks – that the government made in the parallel criminal case. See, e.g., Ashton Sixth Am. Compl., at ¶¶ 363-365; Burnett Third Am. Compl., at ¶¶ 172-174; Continental Casualty Second Am. Compl., at ¶¶ 511-513 & More Def. St., § U; Euro Brokers Compl., at ¶¶ 65, 69; Fed. Ins. First Am. Compl., at ¶ 177; World Trade Center Compl., at ¶¶ 294, 309-311.

The plaintiffs in this case have sought extensive discovery from Mr. Sedaghaty into the same acts and transactions underlying the pending criminal case: (1) the charitable donation to AHIF-USA, which AHIF-USA and Mr. Sedaghaty stated was to be used for humanitarian relief in Chechnya, and the government and plaintiffs both allege was to be used for supporting terrorists, see Pls. Doc. Req. Nos. 33-41 (Dec. 10, 2010) (attached and incorporated hereto as Exhibit D); (2) the management, control and distribution of AHIF-USA's funds, including those intended for Chechnya, id., Nos. 9-10; (3) AHIF-USA's bank accounts and financial transactions, id., Nos. 11-18, 20-22; (4) AHIF-USA's financial records, tax filings, and audits, id., Nos. 49-51; (5) AHIF-USA's funding of projects, id., Nos. 52-58, 60; and (6) the property in

---

[2] Mr. Sedaghaty is represented by court-appointed counsel in the criminal case. Undersigned counsel do not represent him in that case.

Hon. Frank Maas
June 29, 2011
Page 4

Springfield, Missouri. Id., Nos. 70-76. Thus, the majority of plaintiffs' document requests relate to the exact same events underlying the pending criminal case. Most of the remaining document requests relate to the general operations of AHIF-USA, which also directly implicate the pending criminal case.

Mr. Sedaghaty filed a motion to stay with this Court, since responding to discovery in civil litigation would violate his Fifth Amendment privilege against self-incrimination through the production of documents: "It has, however, long been settled that [the Fifth Amendment's] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." United States v. Hubbell, 530 U.S. 27, 37 (2000).

There has been no waiver of Mr. Sedaghaty's right to raise objections to the discovery requests, since he was not obligated to submit responses and objections in light of his pending motion to stay, as he would otherwise have repeatedly had to assert his constitutional right against self-incrimination in response to plaintiffs' discovery requests. In Hubbell, the Supreme Court expressly stated that: "It is abundantly clear that the testimonial aspect of respondent's act of producing subpoenaed documents was the first step in a chain of evidence that led to this prosecution." Id. at 42. The Supreme Court concluded that:

> In sum, we have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence. **That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources.**

Id. at 43 (emphasis added).

Other judges in this district have applied Hubbell to find that discovery could not be sought where it would violate the subject's Fifth Amendment rights. See, e.g., United States v. Stewart, No. 03 Cr. 717 (MGC), 2003 WL 23024461, at *3 (S.D.N.Y. Dec. 29, 2003) (holding that the government could not seek certain discovery of a third party (Bacanovic) because the government sought to use "the fact that the documents were produced by Bacanovic from his files. Clearly such an act of production is testimonial and may not be compelled.") (citing Hubbell, 530 U.S. at 36); United States v. Cianciulli, No. M18304 (RMB) (THK), 2002 WL 1484396, at *2 (S.D.N.Y. July 10, 2002) (holding that discovery could not be had of certain records allegedly in an individual's possession, since "the 'act of production' doctrine has been recognized as protecting individuals from incriminating themselves by being compelled to produce documents where the production could implicitly communicate incriminating facts, such as the admission that 'papers existed, were in [the producing party's] possession or control, and were authentic'") (quoting Hubbell, 530 U.S. at 36-37) (brackets in original). Hence, Magistrate

Hon. Frank Maas
June 29, 2011
Page 5

Katz concluded "that production of the documents . . . could 'furnish a link in the chain of evidence needed to prosecute' Respondent, and thus to require him to produce them to Petitioner would violate his Fifth Amendment rights." Cianciulli, 2002 WL 1484396, at *3 (quoting Hoffman v. United States, 341 U.S. 645, 649 (1951)).

Mr. Sedaghaty's motion to stay argued that, under Hubbell, Stewart, and Cianciulli, discovery had to be stayed in this litigation, since forcing him to respond to plaintiffs' discovery requests would violate his Fifth Amendment rights.

### II. Mr. Sedaghaty's Pending Motion to Stay Does Not Require Him to Waive His Fifth Amendment Privilege Against Self-Incrimination by Responding to Plaintiffs' Discovery Requests While His Motion to Stay is *Sub Judice*.

This Court should deny plaintiffs' motion to compel, since it is based on the illogical and legally incorrect premise that a defendant must respond to discovery even though he has filed a motion to stay based on a parallel, ongoing criminal case. See Pl. Letter, at 2-3 (June 17, 2011). Critically, none of the cases cited by plaintiffs involved a parallel criminal case, so that in none of the cases had the party seeking a stay done so based on the need to preserve his Fifth Amendment privilege, as has Mr. Sedaghaty. Instead, the four cases cited by plaintiffs all arose in completely unrelated procedural contexts:

(1) The Creative Solutions decision, from a district court in the First Circuit, addressed a request to stay discovery while the defendant sought reconsideration of an order denying a motion to compel arbitration. Creative Solutions Group, Inc. v. Pentzer Corp., 199 F.R.D. 443, 443-44 (D. Mass. 2001). Moreover, the court previously granted the plaintiffs' motion to compel, and the defendants had not sought reconsideration of that order, but instead only sought "an order 'staying proceedings pending reconsideration'" of the arbitration order. Id. at 443. Thus, there was no parallel criminal case in Creative Solutions, merely a motion to compel arbitration.

(2) The unpublished decision in Security Pacific is equally far afield, since it concerned a motion to stay discovery while the defendants' motion to dismiss was pending. Security Pacific Intl. Bank v. Trend Export Funding Corp., No. 84 Civ. 4093 (CSH), 1984 U.S. Dist. LEXIS 23534, at *1 (S.D.N.Y. Sept. 18, 1984). Moreover, that decision is inconsistent with the practice of this Court, in which merits discovery was disallowed as to the MDL defendants in this case with pending motions to dismiss.

(3) The decision in Landy involved a request to stay an out-of-state deposition that was noticed on only four days' notice, and on the eve of trial. Federal Aviation Administration v. Landy, 705 F.2d 624, 634-35 (2d Cir. 1983). Not only was there no parallel criminal case, but also the defense counsel in Landy did not seek relief from the court while the deposition notice was pending. Id. at 634.

  (4) Finally, plaintiffs' reliance on <u>Gavenda</u> is also misplaced, since that addressed the plaintiff's motion to strike certain non-party depositions that plaintiff's counsel "alleged she could not attend due to scheduling concerns," and to stay further depositions. <u>Gavenda v. Orleans County</u>, 174 F.R.D. 265, 269 (W.D.N.Y. 1996). However, the plaintiff's counsel did "not certify that ... she was even unavailable on those dates," so that the plaintiff had not satisfied her burden of seeking to strike those depositions, and the parties resolved the scheduling of depositions. <u>Id.</u> at 270.

  Here, in contrast to <u>Creative Solutions</u>, <u>Security Pacific</u>, <u>Landy</u>, and <u>Gavenda</u> – none of which involved parallel criminal cases – Mr. Sedaghaty has a parallel criminal case based upon the <u>same</u> factual allegations that form the basis of plaintiffs' claims against him in this Court, and he timely sought relief from this Court. There is no basis for plaintiffs' assertion that Mr. Sedaghaty was required to waive his Fifth Amendment privilege against self-incrimination by responding to plaintiffs' discovery requests while his motion to stay was pending.

  This Court should similarly reject plaintiffs' argument that Mr. Sedaghaty somehow waived any objections to plaintiffs' discovery requests since he did not respond in January 2011 other than through filing his motion to stay. <u>See</u> Pls. Letter, at 4. His Fifth Amendment privilege against self-incrimination cannot be waived merely because his motion to stay remains *sub judice*, and plaintiffs have cited no case law for that proposition. The three unpublished cases cited by plaintiffs, <u>id.</u>, did <u>not</u> arise from a motion to stay grounded in a parallel criminal case. Instead, in two of the cases – <u>Polokoff</u> and <u>Techsearch Services</u> – the responding party did not even file a motion for protective order, let alone a motion to stay. <u>Techsearch Services, Inc. v. Gorman</u>, No. 97 Civ. 7641 (JSM) (KNF), 1999 U.S. Dist. LEXIS 518, at *3-*5 (S.D.N.Y. Jan. 21, 1999) (no motion for protective order filed; no explanation for delay in responding to discovery requests); <u>Polokoff v. International Pantyhose, Inc.</u>, No. 96 Civ. 6100 (HB) (HBP), 1997 U.S. Dist. LEXIS 4582, at *2 (S.D.N.Y. Apr. 11, 1997) (no motion for protective order filed; only explanation for delay in responding was counsel error in calculating time for response). In the third case, there was a waiver of the objections, but only because the motion for a protective order was untimely. <u>Jobe O. v. Pataki</u>, No. 03 Civ. 8331 (RCC) (KNF), 2007 U.S. Dist. LEXIS 18543, at *9-*10 (S.D.N.Y. Mar. 15, 2007).

  In contrast, the courts in this district have found that there was no waiver of objections when the responding party had a good faith basis for not responding (or delaying in responding) to the discovery requests. Magistrate Judge Francis recently held that there was no waiver of objections where the responding party "has proffered an explanation for the delay" in responding, because "waiver is generally imposed only where the party is unable to provide an explanation for its late response." <u>Callaway Golf Co. v. Corporate Trade Inc.</u>, No. 10 Civ. 1676 (GBD) (JCF), 2011 U.S. Dist. LEXIS 44756, at *6-*7 (S.D.N.Y. Apr. 26, 2011). Magistrate Judge Freeman similarly held that there was no waiver when the responding parties had a "good faith" basis for believing that they did not have to comply with a discovery deadline. <u>Melendez</u>

v. Greiner, No. 01 Civ. 07888 (SAS) (DF), 2003 U.S. Dist. LEXIS 19084, at *8 (S.D.N.Y. Oct. 23, 2003). Magistrate Judge Ellis similarly rejected a plaintiff's argument that a defendant had waived its objections to the plaintiff's document requests because it did not object at the time the requests were due. Harper v. Port Authority of N.Y. and N.J., No. 05 Civ. 5534 (BSJ) (RLE), 2006 U.S. Dist. LEXIS 46949, at *4 (S.D.N.Y. July 10, 2006).

Here, as in Callaway Golf, Melendez, and Harper, this Court should find that Mr. Sedaghaty had good cause for not serving objections to plaintiffs' document requests in January 2011, since he had a good faith basis for filing a motion to stay based on U.S. Supreme Court precedent that the disclosure of documents or information in this civil case would impermissibly violate his Fifth Amendment privilege against self-incrimination in the parallel criminal case. Forcing Mr. Sedaghaty to serve objections, in which he would merely invoke his Fifth Amendment privilege, would serve no useful purpose.

The U.S. Supreme Court and the Second Circuit have made clear that it is improper to force an individual to invoke the privilege against self-incrimination merely to score rhetorical points, or to intimidate the defendant into waiving his privilege, as plaintiffs seek to do here. See Slochower v. Board of Higher Educ. of New York City, 350 U.S. 551, 557 (1956) ("The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent to either a confession of guilt or a conclusive presumption of perjury."); Brenner v. World Boxing Council, 675 F.2d 445, 453-54 (2d Cir. 1982) ("The district court's ruling comports with the standard set forth in Hoffman v. United States, 341 U.S. 479, 486-87 (1951), that 'to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'"); accord United States v. Thornton, 733 F.2d 121, 126 (D.C. Cir. 1984) ("[W]e do not think the district judge was under an obligation to subject Cowser [witness] to a searching inquiry for the purpose of determining whether he would choose not to assert the privilege to which he was entitled. Indeed, such a procedure could be seen as an attempt to intimidate or harass the witness into waiving his constitutional rights.").

Therefore, there is no basis for this Court to grant plaintiffs' motion, or to find that Mr. Sedaghaty has waived any objections to plaintiffs' discovery requests, since he has timely filed a motion to stay based on his Fifth Amendment privilege against self-incrimination.

### III. The Protective Order in the Parallel Criminal Case Bars Mr. Sedaghaty from Turning Over Information Produced in that Case to the Plaintiffs.

Finally, the magistrate judge who handled certain pre-trial matters in the parallel criminal case entered a discovery protective order, pursuant to Rule 16(d)(1), Fed. R. Crim. P., that expressly bars Mr. Sedaghaty and his criminal defense counsel from making any public disclosure of the documents produced by the government outside the scope of the criminal case,

Hon. Frank Maas
June 29, 2011
Page 8

including a prohibition on disclosure to attorneys for AHIF-USA. See United States v. Sedaghaty, No. CR 05-60008-HO, Protective Order (Doc. No. 77) (D. Or. Dec. 18, 2007) (attached and incorporated hereto as Exhibit E).

Although the Protective Order allowed for limited disclosure to certain categories of individuals, even those individuals were prohibited from using any "such document in any way except to assist counsel for defendant Sedaghaty in the investigation or preparation of this case, and [they] shall not reproduce or disseminate any such document in any way to any other person or entity." Id. at 2.

Here, the government seized Mr. Sedaghaty's files, and AHIF-USA's files, during the February 2004 search of Mr. Sedaghaty's residence and AHIF-USA's office. The government did not turn over documents in the criminal case to Mr. Sedaghaty until after the Protective Order was entered on December 18, 2007. Therefore, Mr. Sedaghaty is unable to produce any of those documents in civil discovery in this case, or even to share them with the undersigned counsel in this civil case, given the Protective Order in the parallel criminal case. This Court cannot order Mr. Sedaghaty to produce documents in violation of the Protective Order, or impose sanctions on him for not having responded to plaintiffs' document requests while his motion to stay remains pending.

### IV. Conclusion.

For the foregoing reasons, and those set forth in Mr. Sedaghaty's motion to stay, this Court should deny plaintiffs' letter application for an order directing him to respond to plaintiffs' discovery requests while his motion to stay and the parallel criminal case remain pending. Plaintiffs' demand impermissibly violates Mr. Sedaghaty's Fifth Amendment privilege against self-incrimination and violates the Protective Order entered in the parallel criminal case.

Respectfully submitted,

Lynne Bernabei
Counsel for Perouz Sedaghaty

Enc.

cc:   Judge George B. Daniels
      MDL-1570 counsel of record