USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In Re:                                                     :

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001                               :

------------------------------------------------------------x

**MEMORANDUM**
**DECISION AND ORDER**

03 MDL 1570 (GBD) (FM)

This Document Relates to
<u>Ashton v. al Qaeda Islamic Army</u>,
 02 Civ. 6977 (GBD) (FM),
<u>Burnett v. al Baraka Invest. & Dev. Corp.</u>,
03 Civ. 5738 (GBD) (FM),
<u>Continental Casualty Co. v. al Qaeda Islamic Army</u>,
04 Civ. 5970 (GBD) (FM),
<u>Federal Insurance Co. v. al Qaeda</u>,
03 Civ. 6978 (GBD) (FM)
<u>Euro Brokers, Inc. v. al Baraka Invest. & Dev. Corp.</u>,
04 Civ. 7279 (GBD) (FM), and
<u>World Trade Center Prop. LLC v. al Baraka Invest. & Dev. Corp.</u>,
04 Civ. 7280 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

      Defendant Perouz Sedaghaty ("Sedaghaty") seeks to stay discovery in this multi-district civil litigation pending his appeal of his recent criminal conviction in the District of Oregon. The plaintiffs in the above cases (collectively, "Plaintiffs") oppose Sedaghaty's motion and seek to compel him to respond to document requests they served in December 2010. Sedaghaty contends that the production of those documents would infringe upon his Fifth Amendment privilege against self-incrimination. Sedaghaty further contends that he is barred from disclosing certain of the requested documents because of a protective order entered in his criminal case.

For the reasons set forth below, Sedaghaty's motion to stay discovery is denied, and the Plaintiffs' application to compel Sedaghaty to comply with their First Set of Requests for Production of Documents is granted.

I.   Factual and Procedural History

In 2005, a grand jury in the District of Oregon returned an indictment against Sedaghaty, one other individual, and the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA"). In the indictment, Sedaghaty was charged, in two counts, with conspiring to defraud the United States, in violation of Title 18, United States Code, Section 371, and having aided and abetted the filing of a false tax return, in violation of Title 26, United States Code, Section 7206(1), and Title 18, United States Code, Section 2. See United States v. Al Haramain Islamic Found., No. CR 05-60008-HO (D. Or.) (DO ECF No. 1 ("Indictment")).[1] Sedaghaty was alleged to be a founder of AHIF-USA and one of its corporate officers. (Id.).

The indictment further alleged that Sedaghaty had participated in a scheme to transport nearly $200,000 in traveler's checks from the United States to Saudi Arabia without filing the required Currency Transaction Reports ("CTRs"). The ultimate goal of the scheme allegedly was to transfer this money to mujahedeen (warriors) in Chechnya who were resisting a Russian occupying force. According to the indictment, in furtherance of that goal, Sedaghaty mischaracterized an AHIF-USA check that had been

---

[1]   Citations to "DO ECF" refer to the electronic docket in the Oregon criminal case. Citations to "SDNY ECF" refer to the electronic docket of the multidistrict case pending in this Court.

2

used to purchase the traveler's checks, falsely claiming that it had been used by AHIF-USA to purchase a building in Springfield, Missouri. This, in turn, caused AHIF-USA's accountant to understate its charitable contributions and overstate its basis in its real estate holdings on its tax-exempt organization federal tax return for calendar year 2000. (Id.).

At trial, the government introduced against Sedaghaty certain evidence that had been seized in 2004 from the offices of AHIF-USA pursuant to a search warrant. (See SDNY ECF No. 2448 (Tr. of conf. on July 13, 2011) at 14). It appears that the government returned other materials seized from AHIF-USA to Sedaghaty prior to trial. Before that material was returned, Magistrate Judge Thomas M. Coffin of the District of Oregon entered a protective order restricting Sedaghaty's use of "discovery material" furnished to him by the government. That order, dated December 18, 2007, states in relevant part:

> [I]t is hereby ORDERED that . . . defense counsel will not reproduce any <u>discovery material provided by the government</u> for dissemination to the defendant or to any third party . . . or allow the defendant to have unsupervised access to the material, except as provided below. . . .
>
> . . . Nothing in this protective order shall in any manner limit the right of counsel for defendant Sedaghaty to reproduce and disseminate <u>any document that they obtain from independent sources other than the government</u> even if it is within the material provided to the defense by the government in the discovery process.

(DO ECF No. 77 ("Protective Order") at 1-2 (emphasis added)).

On September 9, 2010, the jury returned a guilty verdict against Sedaghaty on both counts. (DO ECF No. 466).[2] After denying Sedaghaty's post-trial motions, see United States v. Sedaghaty, No. CR 05–60008–HO, 2011 WL 3563145 (D. Or. Aug. 10, 2011), District Judge Michael Hogan, before whom the case had been tried, sentenced Sedaghaty to a thirty-three month prison term. (DO ECF No. 583). Judge Hogan nevertheless permitted Sedaghaty to remain enlarged on bail pending the outcome of his appeal. (Id.). Although Sedaghaty has declared his intention to file such an appeal, (see SDNY ECF No. 2404 ("Def.'s Mem."), at 3), judgment has yet to be entered because an issue concerning the compensation of his appointed counsel remains pending before the Oregon district court. (See DO ECF No. 593).

In December 2010, the Plaintiffs served Sedaghaty with their First Set of Requests for the Production of Documents ("Document Demands"). (See SDNY ECF No. 2404-1 ("Kabat Decl."), Ex. 1). The subject matter of some of the documents that the Plaintiffs sought overlaps with what was at issue in the Oregon case. Those documents include all documents in Sedaghaty's care, custody, or control relating to:

- Sedaghaty's involvement with the Quran Foundation, a charity located at the same address as AHIF-USA (id. ¶¶ 1-5);

- Sedaghaty's interactions with AHIF-USA and its related entities (id. ¶¶ 6-10, 59-67);

---

[2] At the government's request, the charges against AHIF-USA were dismissed prior to trial. (DO ECF Nos. 1, 19). The third defendant, Soliman Hamd Al- Buthe, was outside the United States when the charges were returned and remains a fugitive. (DO ECF No. 5; Mark Freeman, Pete Seda Sentenced to Nearly Three Years, Mail Tribune (Medford, Or.), Sept. 28, 2011).

- The financial activities of Sedaghaty, AHIF-USA, and other individuals and entities (id. ¶¶ 11-23);

- United States and foreign government investigations of AHIF-USA and related entities (id. ¶¶ 24-33);

- Communications between Sedaghaty and certain individuals associated with AHIF-USA (id. ¶¶ 34-40, 43);

- Sedaghaty's criminal prosecution, including information concerning his international travel after September 11, 2001 (id. ¶¶ 41-42);

- The structure, organization, activities, and financing of AHIF-USA and any related entities (id. ¶¶ 44-58, 68-69); and

- The ownership of the Missouri property (id. ¶¶ 70-76).

Pursuant to Court order, Sedaghaty's responses to the Document Demands were due on January 21, 2011. (SDNY ECF Nos. 2381, 2487). That day, Sedaghaty filed a motion to stay discovery as against him pending the disposition of the post-trial motions in his criminal case. (SDNY ECF No. 2403). Although his post-trial motions have since been denied, Sedaghaty still seeks a stay pending his appeal. (Def.'s Mem. at 2).

On June 17, 2011, while Sedaghaty's motion to stay was pending, the Plaintiffs submitted a letter application for an order, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure, compelling Sedaghaty to produce the information responsive to their Document Demands. (SDNY ECF No. 2486). After Sedaghaty responded by letter dated June 29, 2011 (SDNY ECF No. 2488), the Plaintiffs submitted a reply letter dated July 6, 2011 (SDNY ECF No. 2489). The Court then heard oral

argument concerning the Plaintiffs' motion on July 13, 2011. (See SDNY ECF No. 2448).

II. <u>Applicable Law</u>

    A. <u>Fifth Amendment</u>

The Fifth Amendment privilege against self-incrimination "applies only when the accused is compelled to make a testimonial communication that is incriminating." <u>Fisher v. United States</u>, 425 U.S. 391, 408 (1975). Documents prepared "wholly voluntarily . . . cannot be said to contain compelled testimonial evidence." <u>Id.</u> at 409-10. Therefore, "[s]elf-incrimination analysis . . . focuses on whether the creation of the thing demanded was compelled and, if not, whether the act of producing it would constitute compelled testimonial communication." <u>In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992</u>, 1 F.3d 87, 93 (2d Cir. 1993).

The production of voluntarily prepared documents in response to a subpoena may require incriminating testimony in two situations: "(1) 'if the existence and location of the subpoenaed papers are unknown to the government'; or (2) where production would 'implicitly authenticate' the documents." <u>Id.</u> (quoting <u>United States v. Fox</u>, 721 F.2d 32, 36 (2d Cir. 1983)). Additionally, as Sedaghaty correctly observes, the Fifth Amendment protects a criminal defendant against compelled disclosure of non-testimonial documents if those documents are "the first step in a chain of evidence that [leads] to . . . prosecution." (SDNY ECF No. 2407 (Sedaghaty Reply Mem.) at 2 (quoting <u>United States v. Hubbell</u>, 530 U.S. 27, 42 (2000)).

B.  Stay

In a criminal case, the defendant's assertion of his Fifth Amendment privilege against self-incrimination may not be used against him. See 18 U.S.C. § 3481; Baxter v. Palmigiano, 425 U.S. 308, 317 (1976). On the other hand, an adverse inference may be drawn "against parties to civil actions when they refuse to testify in response to probative evidence against them." Baxter, 425 U.S. at 318. A defendant engaged in parallel civil and criminal litigation simultaneously faces numerous difficult choices, not the least of which is whether to assert his Fifth Amendment privilege against self-incrimination in the civil action, thereby compromising his "interest in testifying and obtaining whatever benefits such testimony might provide." United States v. 4003–4005 5th Ave., 55 F.3d 78, 83 (2d Cir. 1995); see also In re 650 Fifth Ave., No. 08 Civ. 10934 (RJH), 2011 WL 3586169, at *2 (S.D.N.Y. Aug. 12, 2011) ("There is no question that parties who face both civil litigation and criminal investigation face difficult choices.") (quoting Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) (Lynch, D.J.)). Nevertheless, "[t]his Hobson's choice is not so acute that the Constitution prevents the courts from forcing a litigant to make it." In re 650 Fifth Ave., 2011 WL 3586169, at *2.

While a defendant may be required to make this decision, courts also have the "discretion to stay civil proceedings . . . when the interests of justice seem to require such action." Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks and ellipses omitted). "Courts are afforded this discretion because the denial of a

stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995) (Chin, D.J.). "In other words, the [c]ourt in a civil case may exercise its discretion so that a defendant need not find himself in the position in which the [Supreme Court] ha[s] said he may constitutionally be put." Brock v. Tolkow, 109 F.R.D. 116, 119 (E.D.N.Y. 1985).

There is consensus within the Second Circuit as to the principles that district judges should apply "in determining motions to stay civil actions while criminal litigation is conducted." Sterling Nat'l Bank, 175 F. Supp. 2d at 575. Thus, "courts in this Circuit assessing requests to stay civil proceedings consider '1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.'" In re 650 Fifth Ave., 2011 WL 3586169, at *3 (quoting Trustees, 886 F. Supp. at 1139). In weighing these factors, however, a court must recognize that "[a] stay of the civil case . . . is an extraordinary remedy." Id. (internal quotation marks omitted).

III.   Application of Law to Facts

   A.   Need for a Stay

Sedaghaty relies on cases holding that "the existence of an indictment generally favors the granting of a stay in a related civil proceeding." (See Def.'s Mem. at 7 (quoting Johnson v. N.Y. City Police Dep't, No. 01 Civ. 6570 (RCC) (JCF), 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003)); see also Volmar Distribs., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."). The rationale behind granting a stay in these post-indictment, pre-conviction cases is that the plaintiff in the civil action is protected against undue delay because resolution of the criminal matter is imminent. Here, however, Sedaghaty has already been tried, convicted and sentenced, and his post-trial motions have been denied. Moreover, although Sedaghaty has indicated that he plans to file an appeal, it is far from certain that the Ninth Circuit will reverse his conviction; if so, that the government will decide to retry him; and, should that occur, when the retrial will take place.

Tellingly, Sedaghaty has not cited any cases — nor have I found any — in which a stay of civil discovery was granted after the related criminal trial had concluded, based on the mere possibility that a successful appeal might lead to a new trial. At least one district judge has held, to the contrary, that "the status of [a d]efendant's criminal case weighs strongly against granting a stay [when the d]efendant has already been tried,

convicted, and sentenced." <u>Sparkman v. Thompson</u>, No. 08-01-KKC, 2009 WL 1941907, at *2 (E.D. Ky., July 6, 2009) (emphasis added). As that judge explained,

> because [the d]efendant has already challenged the government's case in trial, he knows exactly how the government intends to prove his guilt and he is exceedingly able to avoid making incriminating statements that might be used against him if retried. Also, absent a waiver of his Fifth Amendment privilege, he has only a minimal concern that civil discovery will aid the criminal prosecution because the government has already assembled all the evidence needed for a conviction.

<u>Id.</u>

Even if Sedaghaty were to assert his Fifth Amendment privilege in response to any of the Plaintiffs' document requests, it seems unlikely that he would therefore "effectively forfeit[] [his] civil case." <u>See</u> <u>Trustees</u>, 886 F. Supp. at 1140. Although there concededly is some overlap of legal and factual issues in the criminal and civil actions, the overlap is far from complete. In his criminal case, Sedaghaty was convicted of conspiring together with others to defraud the United States by evading the filing of CTRs and causing AHIF-USA to mischaracterize funds as a charitable contribution on its federal nonprofit organization tax return. Neither of these misdeeds, however, is inextricably interrelated to the events that gave rise to the terrorist attacks of September 11, 2001. (<u>See</u> joint letter to the Court, dated November 11, 2011, at 8 (Defs.' Response to Pls.' Proposal) (noting Judge Hogan's observation at sentencing that the government had failed to "prove the terrorism [sentencing] enhancement . . . by clear and convincing evidence . . . because of [its] failure to prove a link between [Sedaghaty] and the money

10

being used for terrorist activities"). Therefore, even if Sedaghaty were to assert his Fifth Amendment privilege in this case insofar as the Plaintiffs sought to inquire about his links to money laundering or AHIF-USA's filing of false tax returns, it by no means follows that the Plaintiffs would necessarily prevail on their claims that Sedaghaty provided material support to the perpetrators of the September 11th attacks. (See, e.g., SDNY ECF No. 111 (Fed. Ins. Am. Compl.) ¶¶ 776-79).

The theories on which Sedaghaty has challenged his conviction further support the Court's conclusion that discovery in this case is unlikely to implicate Sedaghaty's Fifth Amendment rights. For example, Sedaghaty argued in his motion for a new trial (and likely will argue on appeal) that the district court improperly admitted evidence of Sedaghaty's alleged ties to terrorism, leading to a "prejudicial . . . focus on Islam, terrorism, and anti-Semitism in a case that is charged as essentially a tax case." (DO ECF No. 477 (Def.'s Mot. for New Trial) at 1). If the Court of Appeals for the Ninth Circuit agrees with this proposition and reverses his conviction, any extraneous evidence of Sedaghaty's ostensible links to terrorism would presumably be barred at a new trial. Consequently, even if Sedaghaty were to authenticate documents or make admissions relevant to his alleged terrorist ties in the course of discovery in this case, that evidence could not be used to incriminate him at a second criminal trial.

Conversely, if the Ninth Circuit eventually holds that the evidence received at Sedaghaty's trial was proper, his conviction presumably would be upheld without any need for a new trial. In that circumstance as well, any additional evidence that the

Plaintiffs may be able to authenticate through civil discovery in this case could not be used to his prejudice in the criminal case, which would effectively be at an end.

Finally, the Plaintiffs have a strong interest in proceeding with this multidistrict litigation, which has been pending for over seven years, but in which merits discovery as to AHIF-USA, Sedaghaty, and other defendants has only recently begun. Any further delay on the speculative ground that proceeding with civil discovery might prejudice Sedaghaty is not warranted. Indeed, the grant of a stay as to Sedaghaty would likely impede the Plaintiffs' ability to pursue discovery relating to other defendants. For example, Sedaghaty was a principal officer of AHIF-USA, which is also a defendant in this case. If discovery against him were to be stayed, the Plaintiffs would also be stymied in their efforts to proceed against AHIF-USA since many of its documents are apparently in Sedaghaty's possession, custody, or control. (See SDNY ECF No. 2405 (Pls.' Mem.) at 7).

The Court therefore declines to issue the stay of discovery that Sedaghaty seeks in this case.

### B. Protective Order

Sedaghaty further contends that the Protective Order entered by Magistrate Judge Thomas M. Coffin in the criminal case makes it impossible for him to comply with the Plaintiffs' Document Demands. (See SDNY ECF No. 2488 at 1, 7-8). Sedaghaty bases that claim on his attorney's discussions with the Federal Public Defender in Oregon who represented Sedaghaty in connection with the criminal case. (Id.). A literal reading might, in fact, support the Federal Public Defender's alleged interpretation of the

12

Protective Order. However, it seems clear that the intent of the Protective Order was to restrict Sedaghaty's further dissemination of information that the government had provided to his counsel that was not available to Sedaghaty from another source. Any information contained in materials that the government obtained through the execution of the search warrant at AHIF-USA plainly does not fit this description. Sedaghaty therefore may produce to the Plaintiffs any documents that were in his possession, custody, or control, or that of AHIF-USA, prior to the execution of the search warrant.[3]

IV. Conclusion

For the foregoing reasons, Sedaghaty's motion to stay discovery is denied, and the Plaintiffs' application to compel Sedaghaty to respond to their Document Demands is granted.

SO ORDERED.

Dated:  New York, New York
        November 21, 2011

                                                    _____
                                                    FRANK MAAS
                                                    United States Magistrate Judge

---

[3]    In an effort to stem any further debate about the scope of the Protective Order or its applicability to this case, I have shared this section of this Memorandum Decision and Order with Magistrate Judge Coffin prior to its issuance. Magistrate Judge Coffin confirms that my interpretation of the Protective Order is correct.

Copies to:

Honorable George B. Daniels
United States District Judge

All counsel via ECF