# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001    ) No. 03 MDL 1570 (GBD/FM)
)      ECF Case
_____)

This document relates to:

      ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
          Case No. 02-CV-6977;
      BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
          Case No. 03-CV-5738;
      CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
          Case No. 04-CV-05970;
      EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
          Case No. 04-CV-07279;
      FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
          Case No. 03-CV-6978;
      WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
          DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.


**Defendant Perouz Sedaghaty's**
**Rule 72 Objections to November 22, 2011 Ruling**

Defendant Perouz Sedaghaty, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72, Fed. R. Civ. P., respectfully submits his objections to the Magistrate Judge's ruling dated November 22, 2011 (Doc. No. 2491), on Mr. Sedaghaty's motion to stay discovery.  Mr. Sedaghaty sought a stay of discovery pending final judgment in the criminal case that is now on appeal, so that Mr. Sedaghaty would not have to waive or forfeit his Fifth Amendment privilege through responding to plaintiffs' discovery requests in this civil proceeding.

As set forth below, the Magistrate Judge's ruling was in error, since the courts in this jurisdiction and elsewhere have consistently held that a criminal defendant whose conviction is on direct appeal continues to have the right to assert his Fifth Amendment privilege while the appeal is pending, in response to discovery in parallel civil proceedings.  Moreover, a retrial of the criminal case is likely to lead to renewed efforts by the government to prove that Mr. Sedaghaty had moved funds in order to support terrorism – the same issue for which plaintiffs seek to hold him liable in this Court – so that Mr. Sedaghaty continues to need to assert his Fifth Amendment privilege against self-incrimination in this litigation.

I.     **Factual and Procedural Background.**[1]

A.   **The Parallel Criminal Case Against Mr. Sedaghaty.**

Mr. Sedaghaty, the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA"), and one other individual, were indicted by a grand jury in the U.S. District Court for the District of Oregon in 2005.  See United States v. Al Haramain Islamic Foundation, Inc., et al., No. 6:05-cr-60008-HO (D. Or.).  The government dismissed the indictment as to AHIF-USA on September 8, 2005.  Id., Minute Order (Doc. No. 19) (Sept. 8, 2005).  Mr. Sedaghaty voluntarily surrendered to the government, and the criminal trial commenced on August 30, 2010.

---

[1] The Background section is summarized from the procedural history set forth in the briefing on Mr. Sedaghaty's motion to stay.  See Mot. to Stay, Mem. at 2-3 (Doc. No. 2404) (Jan. 21, 2011); Mot. to Stay, Reply Br., at 4-6 (Doc. No. 2407) (Feb. 14, 2011).

Although the trial was nominally based on tax and fraud charges, the district judge allowed the government to present extensive evidence about "terrorism" issues, including that relating to AHIF-USA's alleged support of terrorism in Chechnya – the <u>same</u> issues underlying plaintiffs' claims against Mr. Sedaghaty in this litigation.  <u>See</u> <u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO, Order (Doc. No. 407) (D. Or. Aug. 11, 2010) (excerpts attached and incorporated hereto as Exhibit A).  The court stated that Evan Kohlmann – who has also served as an expert to the <u>Burnett</u> plaintiffs – "will testify regarding history of the Chechan and Russian conflict and the role of the mujahideen in that conflict, funding practices of certain Islamic charities, the background of Al Haramain and its alleged support of terrorist financing, and the use of internet technology to support the mujahideen."  <u>Id.</u> at 5.  The court stated that Mr. Sedaghaty's rebuttal expert witness could similarly testify "regarding how one may seek to hide terrorist funding and actions inconsistent with such deceit. . . . [and] may testify about control of funds by terrorist organizations generally."  <u>Id.</u> at 8.  The court recognized that "the government opened the door by making this case about the Chechan Mujahideen."  <u>Id.</u> at 12.

Similarly, the government's pre-trial briefing made extensive reference to alleged funding of terrorism, the <u>same</u> theory underlying plaintiffs' claims against Mr. Sedaghaty in this Court.  On the very first page of a pretrial brief, the government made clear that "the financing of terrorist activity and . . . stopping the provision of material support to terrorist organizations in all parts of the world" was an important governmental interest.  <u>See</u> <u>United States v. Sedaghaty</u>, Cr. No. 05-60008-HO, Govt's Resp., at 1 (Doc. No. 225) (D. Or. Sept. 25, 2009) (excerpts attached and incorporated hereto as Exhibit B).  The rest of that brief discussed the government's allegations regarding the operations of AHIF-USA with respect to alleged support of terrorism in Chechnya.  <u>Id.</u> at 2, 8-10.  The government's pretrial witness list included both Mr. Kohlmann

(plaintiffs' expert witness in this Court) and a Russian agent (Sergey Ignatchenko), who were to testify about "the funding of the mujahideen in Chechnya" (Kohlmann) and "Al-Haramain Islamic Foundation's role in supporting the mujahideen in Chechnya" (Ignatchenko).  See United States v. Sedaghaty, Cr. No. 05-60008-HO, Govt's Am. Witness List, at 2, 4 (Doc. No. 293) (D. Or. Mar. 17, 2010) (attached and incorporated hereto as Exhibit C).  Again, these are the exact same issues for which plaintiffs seek to hold Mr. Sedaghaty liable in this Court.

Although plaintiffs previously claimed that Mr. Sedaghaty already "exposed" his "theory to the prosecution in advance of trial," see Pls. Opp. to Mot. to Stay, at 2 (Doc. No. 2405) (Feb. 4, 2011), Mr. Sedaghaty did not testify at trial, so he did not disclose or otherwise "expose" information unique to himself.  The jury verdict was in the government's favor.  See United States v. Sedaghaty, Cr. No. 05-60008-HO, Jury Verdict (Doc. No. 466) (Sept. 9, 2010).

The district court ruled on the post-trial motions in 2011, and denied the government's request for a terrorism enhancement in the sentencing:  "The jury convicted on the conspiracy charge because of the tax fraud and was silent on the issue of the failure to disclose the money leaving the country to U.S. Customs."  See United States v. Sedaghaty, 2011 WL 3563145, at *8 n.7 (D. Or. Aug. 10, 2011).  At the sentencing hearing, Judge Hogan made clear that the government had not proven that any of the funds went to support terrorism or the mujahideen:

> I believe the remaining [sentencing] increase sought by the government is for application of a terrorism enhancement.  And there is little doubt in my mind that this money went to Chechnya, and that it went to the mujahideen, **but I find that there has been a failure to prove the terrorist [sentencing] enhancement . . . by clear and convincing evidence . . . because of the failure to prove a link between the defendant and the money being used for terrorist activities.**  There is no doubt the Chechen mujahideen were involved in terrorist activities, **but there hasn't been that link proved for this defendant.**

See Transcript of Sentencing Proceedings, at 6:14—7:1 (No. 05-60008-2-HO) (D. Or. Sept. 27, 2011) (emphasis added) (excerpts attached and incorporated hereto as Exhibit D).

The judgment was issued on November 22, 2011, and a corrected judgment was issued on November 30, 2011.  See United States v. Sedaghaty, Cr. No. 05-60008-HO, Judgment (Doc. No. 599) (Nov. 12, 2011); Amended Judgment (Doc. No. 603) (Nov. 30, 2011).[2]  Mr. Sedaghaty filed a notice of appeal to the U.S. Court of Appeals for the Ninth Circuit.  See United States v. Sedaghaty, Cr. No. 05-60008-HO, Notice of Appeal (Doc. No. 604) (Dec. 1, 2011) (docketed as C.A. No. 11-30342 in the Court of Appeals).

### B.  The Plaintiffs' Discovery Requests and Mr. Sedaghaty's Motion to Stay.

The plaintiffs in this Court made the same kinds of allegations against Mr. Sedaghaty and AHIF-USA – of terrorism financing in Chechnya that somehow caused the 9/11 attacks – that the government made in the parallel criminal case.  See, e.g., Ashton Sixth Am. Compl., at ¶¶ 363-365; Burnett Third Am. Compl., at ¶¶ 172-174; Continental Casualty Second Am. Compl., at ¶¶ 511-513 & More Def. St., § U; Euro Brokers Compl., at ¶¶ 65, 69; Fed. Ins. First Am. Compl., at ¶ 177; World Trade Center Compl., at ¶¶ 294, 309-311.

The plaintiffs in this case have sought extensive discovery from Mr. Sedaghaty into the same acts and transactions underlying the pending criminal case:  (1) the charitable donation to AHIF-USA, which AHIF-USA and Mr. Sedaghaty stated was to be used for humanitarian relief in Chechnya, and the government and plaintiffs both allege was to be used for supporting terrorists, see Pls. Doc. Req. Nos. 33-41 (Dec. 10, 2010) (attached and incorporated hereto as Exhibit E); (2) the management, control and distribution of AHIF-USA's funds, including those intended for Chechnya, id., Nos. 9-10; (3) AHIF-USA's bank accounts and financial transactions, id., Nos. 11-18, 20-22; (4) AHIF-USA's financial records, tax filings, and audits,

---

[2] The magistrate judge's decision incorrectly stated that Mr. Sedaghaty "was convicted of conspiring … by evading the filing of CTRs . . ."  See Mem. Decision & Order., at 10 (Doc. No. 2491) (Nov. 22, 2011).  In fact, the jury's verdict was silent as to the Customs forms (CTRs), so there was no conviction on that issue.  See United States v. Sedaghaty, Cr. No. 05-60008-HO, Verdict (Doc. No. 466) (Sept. 9, 2010).

id., Nos. 49-51; (5) AHIF-USA's funding of projects, id., Nos. 52-58, 60; and (6) the property in

Springfield, Missouri.  Id., Nos. 70-76.

Thus, the majority of plaintiffs' document requests relate to the exact same events

underlying the pending criminal case.  Most of the remaining document requests relate to the

general operations of AHIF-USA, which also directly implicate the pending criminal case.

## C.  The Magistrate Judge's Ruling on Mr. Sedaghaty's Motion to Stay.

Mr. Sedaghaty submitted his motion to stay, which argued that a stay of discovery was

warranted pending a final judgment in the criminal case, given the significant overlap in the

allegations against him in both the criminal prosecution and the civil cases in this Court.  See

Mot. to Stay, Mem. (Doc. No. 2404) (Jan. 21, 2011); Mot. to Stay, Reply Br. (Doc. No. 2407)

(Feb. 14, 2011).  Subsequently, plaintiffs submitted a letter application to the magistrate judge,

which overlapped with the arguments they made in their opposition to the motion to stay.  See

Pls. Letter Application (Doc. No. 2486) (June 17, 2011); Sedaghaty Response (Doc. No. 2488)

(June 29, 2011); Pls. Reply (Doc. No. 2489) (July 6, 2011).

On November 22, 2011, Magistrate Judge Maas issued a ruling on the motion to stay and

the plaintiffs' letter application.  See Mem. Decision & Order (Doc. No. 2491) (Nov. 22, 2011).

Magistrate Judge Maas summarized the case law for the proposition that a "defendant engaged in

parallel civil and criminal litigation simultaneously faces numerous difficult choices, not the

least of which is whether to assert his Fifth Amendment privilege against self-incrimination in

the civil action, thereby compromising his 'interest in testifying and obtaining whatever benefits

such testimony might provide.'"  Id. at 7 (quoting United States v. 4003-4005 5th Ave., 55 F.3d

78, 83 (2d Cir. 1995)).  Magistrate Judge Maas also discussed the case law under which the

courts in this jurisdiction and elsewhere have allowed a stay of discovery in a civil case while the

parallel criminal case was still pending, and set forth the six factors to be considered in this determination.  Id. at 7-9.

However, Magistrate Judge Maas concluded that there were no cases "in which a stay of civil discovery was granted after the related criminal trial had concluded, based on the mere possibility that a successful appeal might lead to a new trial."  Id. at 9.  Instead, the Magistrate Judge cited an unpublished district court decision from Kentucky that denied a defendant's motion to stay discovery while an appeal was pending.  Id. at 9-10 (citing Sparkman v. Thompson, No. 08-01-KKC, 2009 WL 1941907, at *2 (E.D. Ky. July 6, 2009)).  The Magistrate Judge also concluded that any discovery in the civil case "is unlikely to implicate Sedaghaty's Fifth Amendment rights."  Id. at 11.

## II.     Standard of Review.

This Court reviews a magistrate judge's ruling on a non-dispositive matter under the "clearly erroneous or contrary to law" standard.  See 28 U.S.C. § 636(b)(1)(A); Rule 72(a), Fed. R. Civ. P.  "A district court is justified in finding a magistrate judge's ruling 'clearly erroneous' where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (citations omitted).

## III.     Legal Argument.

The Magistrate Judge's ruling erred in two fundamental respects – first in concluding that no court had allowed a stay of discovery while an appeal was pending, and second in concluding that allowing discovery in the civil case would have no consequences for a retrial of the criminal case.  As set forth below, these key conclusions, which led to the ruling that granted plaintiffs' motion to compel and denied Mr. Sedaghaty's motion to stay, are legally and factually incorrect.

A.     **The Magistrate Judge's Ruling was Clearly Erroneous or Contrary to Law in Holding that a Defendant in a Civil Case Cannot Assert His Fifth Amendment Privilege Against Self-Incrimination in Discovery While the Appeal of His Parallel Criminal Case is Pending.**

This Court should find that the magistrate judge's ruling was clearly erroneous or contrary to law in holding that Mr. Sedaghaty could not assert his Fifth Amendment privilege against self-incrimination in order to seek a stay of discovery in the civil case, even though the appeal of his parallel criminal case is pending.  Numerous decisions from this jurisdiction and from appellate courts in other circuits have held or recognized that a defendant who has been sentenced in a criminal case, but has an appeal pending, can continue to assert the Fifth Amendment privilege while his appeal is pending.

Judge Lynch upheld the invocation by a witness of his Fifth Amendment privilege against self incrimination in a civil proceeding even though the witness had subsequently been sentenced in a parallel criminal proceeding:

> Even now, after sentence has been imposed, **Goldstein's privilege assertion remains reasonable, for he has appealed his conviction and thus remains in jeopardy insofar as any testimony he offers in these [civil] proceedings could potentially prejudice him either in connection with his appeal or at a possible retrial**.

Sterling Natl. Bank v. A-1 Hotels Intl., Inc., No. 00 Civ. 7352 (GEL), 2004 WL 1418201, at *1 (S.D.N.Y. June 23, 2004) (emphasis added) (collecting cases).

Judge Lynch recognized that while "neither the Supreme Court nor the Second Circuit has explicitly addressed the availability of the Fifth Amendment privilege against self-incrimination to convicted defendants with pending appeals," id. at 1 n.2, the case law from other circuits was consistent with the Supreme Court's holding "that a defendant may continue to assert his Fifth Amendment privilege against self-incrimination until his judgment of conviction becomes 'final.'"  Id. (citing Mitchell v. United States, 526 U.S. 314, 326 (1999)).  A judgment

of conviction does not become final until the direct appeals are exhausted.  Judge Lynch noted

the analogy to "petitions for post-conviction relief, [where] 'finality attaches when the [Supreme]

Court affirms a conviction on the merits on direct review, or when the time for filing a certiorari

petition expires.'"  Id. (quoting Clay v. United States, 537 U.S. 522, 527 (2003)).

Judge Lynch concluded that the same principle had to be applied to the assertion of the

Fifth Amendment by a defendant whose appeal of a criminal conviction was pending:

> Similarly, where, as here, the defendant has been convicted, but that conviction is on
> appeal, **the judgment cannot be deemed final for purposes of the privilege because
> testimony offered in related civil proceedings has the potential to prejudice him in
> connection with his appeal and at a potential retrial**.  Hence, it is not the case that "no
> adverse consequences can be visited upon the convicted person by reason of further
> testimony."

Id. (emphasis added) (quoting Mitchell, 526 U.S. at 326).

Judge Lynch revisited this issue in another civil dispute involving a defendant who had

recently been sentenced in an ongoing criminal case:

> Although Black was recently sentenced, "a defendant may continue to assert his Fifth
> Amendment privilege against self-incrimination until his judgment of conviction
> becomes 'final.'" . . . Should Black timely appeal his conviction, "the judgment cannot be
> deemed final for purposes of the privilege because testimony offered in related civil
> proceedings has the potential to prejudice him in connection with his appeal and at a
> potential retrial."

Sotheby's Intl. Realty, Inc. v. Black, No. 06 Civ. 1725 (GEL), 2007 WL 4438145, at *6 n.4

(S.D.N.Y. Dec. 17, 2007) (quoting Sterling Nat'l Bank).

Judge Mukasey similarly concluded that "Kirk [a co-conspirator] would have retained his

Fifth Amendment privilege so long as he had issues to press on appeal, as he in fact did."

Moskowitz v. United States, No. 01 Civ. 10644 (MBM), 2002 WL 31119269, at *4 (S.D.N.Y.

Sept. 24, 2002) (collecting cases).

Judge Motley held that a defendant in a civil action could assert the Fifth Amendment

while the criminal appeal was pending, so that the plaintiff's motion to compel had to be denied:

> Though Hsu has now been convicted, it does not automatically follow that the questions presented here will not incriminate him.  The issues raised are not yet moot since appeal may bring about a new trial.  The motion [to compel] is denied in its entirety.

Prentice v. Hsu, 280 F. Supp. 384, 388 (S.D.N.Y. 1968).

Therefore, under Sterling, Sotheby's, Moskowitz, and Prentice, Mr. Sedaghaty's Fifth Amendment privilege continues through his pending appeal, and the judgment in the parallel criminal case is not final until the U.S. Supreme Court has either denied certiorari or rendered a decision on any further appeal from the pending Ninth Circuit appeal.[3]

These decisions are consistent with the holdings of other appellate courts, which have similarly recognized that a defendant can continue to assert his Fifth Amendment privilege against self-incrimination while the appeal of a criminal conviction is still pending.

The U.S. Court of Appeals for the Fourth Circuit has held, twice, the defendants have the right to continue to assert their Fifth Amendment privilege during the pendency of an appeal:

> Taylor, however, had appealed his conviction at the time he was required to answer questions, a fact the state brushes aside too lightly. . . . We will not undercut Taylor's right to appeal under state law by prematurely assessing the merits of his appeal in a collateral proceeding.  **If Taylor's conviction were overturned on appeal, post-conviction evidence, if probative and otherwise admissible, might be used against him.** . . . Therefore, it is possible that post-conviction incriminating evidence could be used against an inmate who had been convicted and sentenced but whose conviction was being appealed.

Taylor v. Best, 746 F.2d 220, 222 (4th Cir. 1984) (emphasis added) (citations omitted).

---

[3] It appears that the only reported opinion from this jurisdiction that is to the contrary is a 55-year-old decision in which the district court held that since the Second Circuit had affirmed a defendant's conviction, he could not assert the Fifth Amendment privilege in a new grand jury proceeding, because it was speculative as to whether the Supreme Court would grant the defendant's petition for certiorari.  In re Bando, 20 F.R.D. 610, 615 (S.D.N.Y. 1957).  However, the Second Circuit reversed the district court's ruling, on the grounds that this defendant and a co-defendant could continue to assert their privilege against self-incrimination, since the testimony "could be used as evidence against the defendants in a [new] trial for commission of the substantive crimes."  United States v. Miranti, 253 F.2d 135, 138 (2d Cir. 1958).

More recently, the Fourth Circuit reiterated this fundamental principle:

> We have held in no uncertain terms that a defendant's right to invoke the Fifth Amendment as to events for which he has been convicted extends to the period during which the conviction is pending appeal. . . . **Because any post-conviction evidence could be used against a defendant if his conviction were to be overturned, the risk of coerced self-incrimination remains until the conviction has been affirmed on appeal**.

United States v. Kennedy, 372 F.3d 686, 691-92 (4th Cir. 2004) (emphasis added) (citations omitted).

The U.S. Court of Appeals for the Fifth Circuit similarly held that the district court properly refused to require one defendant to testify at trial on behalf of a co-defendant, where the two defendants were separately tried, since "McConnell was a co-defendant who was then in the process of appealing his conviction.  He did not waive his Fifth Amendment privilege and could not therefore be made to testify."  Holsen v. United States, 392 F.2d 292, 293 (5th Cir. 1968) (*per curiam*) (citing 8 Wigmore, Evidence, § 2268, at 410 (McNaughton rev. ed. 1961)).

The U.S. Court of Appeals for the Eighth Circuit, consistent with the aforementioned rulings, held that a defendant did not have to testify while his criminal appeal was pending:

> The better rule, however, appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal. . . .

United States v. Duchi, 944 F.2d 391 (8th Cir. 1991) (collecting cases).

The U.S. Court of Appeals for the D.C. Circuit similarly held that the "Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction."  Frank v. United States, 347 F.2d 486, 491 (D.C. Cir. 1965).

District courts in yet other circuits have similarly reached the same result.  Judge Katz of the Northern District of Ohio held that a motion to stay a civil case had to be granted because a

parallel criminal case was on appeal:

> In this case, defendant White has been convicted and sentenced in a criminal proceeding related factually to the present civil case.  His conviction, however, is still on appeal, and thus there exists a real possibility that he would be retried on the criminal charges.  Under these circumstances, it appears that he may reasonably invoke the Fifth Amendment privilege against self-incrimination in the instant case.

McCloskey v. White, No. 3:09 CV 1273, 2011 WL 780793, at *1 (N.D. Ohio Mar. 1, 2011)

(citing Prentice v. Hsu, 280 F. Supp. 384, 388 (S.D.N.Y. 1968) and Mitchell v. United States,

526 U.S. 314, 326 (1999)).

U.S. Magistrate Judge Valdez of the Northern District of Illinois similarly held that a stay

was warranted in civil litigation involving Conrad Black (the same defendant in the Sotheby's

litigation in this jurisdiction that Judge Lynch decided, *supra*) and a co-defendant:

> The Fifth Amendment privilege against self-incrimination does not end once guilt has been adjudicated.  Mitchell v. United States, 526 U.S. 314, 324 (1999). . . . Only when "no adverse consequences can be visited upon the convicted person by reason of further testimony" does the conviction become final.  Id. [at 326].
>
> The question of finality is critical because testimony offered in a related civil proceeding continues to have the potential to prejudice a defendant in connection with an appeal and a potential retrial.  See Sterling Nat'l Bank v. A-1 Hotels, Int'l, Inc., No. 00 Civ 7352, 2004 WL 1418201, at *1 (S.D.N.Y. June 23, 2004) . . .
>
> **Because Defendants Black and Boultbee have appealed their convictions to the Seventh Circuit their protection against self-incrimination should be preserved until the criminal proceedings have become final.**  As a result, this factor weighs in support of a continued stay.

Hollinger Int'l, Inc. v. Hollinger, Inc., No. 04 C 698, 2008 WL 161683, at *2-*3 (emphasis

added) (N.D. Ill. Jan. 16, 2008) (continuing stay on civil discovery).

Commentators are in accord:

> If direct appeal from a conviction is pending or remains available, a convicted defendant might, despite his conviction, harbor hope that his conviction will be reversed on appeal and that any disclosures he makes would be used to incriminate him upon any retrial that follows.  Because of this possibility, the courts have generally held that a convicted defendant retains the protection of the privilege until appeal is exhausted or until the time

for appeal expires.  The risk of a reversal and retrial is not so remote as to constitute a negligible risk under the prevailing standard.

K. S. Broun, <u>McCormick on Evidence</u>, § 121 (6th ed. Supp. 2009) (collecting cases).

The magistrate judge's reliance on a single, unpublished case from the Eastern District of Kentucky, <u>Sparkman v. Thomas</u>, 2009 WL 1941907 (E.D. Ky. July 6, 2009), is thus contrary to the weight of authority from both this jurisdiction and from other appellate and district courts in other circuits.  Indeed, <u>Sparkman</u> has only been cited by one other court.  <u>See</u> <u>United States *ex rel.* Magee v. Lockheed Martin Corp.</u>, No. 1:09-CV-324, 2010 WL 2816658, at *4 (S.D. Miss. July 16, 2010).  Even then, the Mississippi court merely cited <u>Sparkman</u> as one of numerous decisions setting forth the factors to be considered in ruling on a motion to stay, and did not address the <u>Sparkman</u> holding regarding defendants who have a pending appeal, since the movants in the Mississippi case had not even been indicted and merely thought that they were potential targets of a criminal investigation.  <u>Id.</u> at *1-*2.

Therefore, under the case law over the past four decades, both from this jurisdiction, and from other circuits, Mr. Sedaghaty's right to assert his Fifth Amendment privilege against discovery in this civil litigation continues throughout the pendency of the appeal of his criminal conviction, and the magistrate judge erred in holding that his Fifth Amendment privilege terminated once he was sentenced.  As Mr. Sedaghaty previously briefed, all six factors identified by the courts in this jurisdiction and elsewhere for granting a stay weigh substantially in his favor.  <u>See</u> Mot. to Stay, Mem. at 4-9 (Doc. No. 2404) (Jan. 21, 2011); Mot. to Stay, Reply Br., at 6-8 (Doc. No. 2407) (Feb. 14, 2011); <u>see also</u> Opp. to Letter Application, at 4-7 (Doc. No. 2488) (June 29, 2011).  This Court should reverse the magistrate judge's ruling, and enter an order granting Mr. Sedaghaty's motion to stay, and denying plaintiffs' letter application.

**B.    The Magistrate Judge Further Erred In Concluding That There Was Little or No Factual Overlap Between the Criminal and Civil Proceedings.**

This Court should also find that the magistrate judge further erred in concluding "that discovery in this case is unlikely to implicate Sedaghaty's Fifth Amendment rights."  See Mem. Decision, at 11 (Doc. No. 2491) (Nov. 22, 2011).

First, as noted previously, there exists extensive overlap between (1) the government's attempts to present evidence that Mr. Sedaghaty provided financial support of terrorism in the criminal case and (2) the plaintiffs' allegations for holding Mr. Sedaghaty liable for providing financial support of terrorism in this case.  See Part I.A and I.B, *supra*.

Second, even though the criminal case was ostensibly a tax fraud and customs violation case, the government unsuccessfully sought a "terrorism enhancement" to the sentence under U.S.S.G. § 3A1.4, which the Oregon court denied on the grounds that the government had not proven that any funds went to support terrorism.  See Part I.B & Ex. D, at 6:14—7:1, *supra*.

Thus, if there were to be a retrial, then the government could attempt to use evidence obtained by the plaintiffs in this proceeding, or information derived from that evidence, in order to prove the government's allegations that Mr. Sedaghaty supported terrorism, whether to prove the criminal charges, or to seek a terrorism enhancement at sentencing, or both.  This is not a hypothetical concern since at least one of the government's expert witnesses (Evan Kohlmann) is also an expert witness for the Burnett plaintiffs in this Court.

The magistrate judge's attempt to characterize the issues that Mr. Sedaghaty will raise on appeal, see Mem. Decision at 10-11, is incomplete and premature, since Mr. Sedaghaty's post-trial motions focused on several evidentiary issues, and did not include other issues for which civil discovery could more strongly implicate Fifth Amendment issues on a retrial.

Therefore, given the significant overlap between the government's attempts to prove

terrorism support in the criminal case and the plaintiffs' attempts to prove terrorism support in this civil case, the magistrate judge erred in concluding that discovery in this case "is unlikely to implicate Sedaghaty's Fifth Amendment rights," and this Court should set aside the magistrate's decision.

## IV.    CONCLUSION.

For the foregoing reasons, and pursuant to Rule 72(a), Fed. R. Civ. P., this Court should set aside the Magistrate Judge's ruling that Mr. Sedaghaty's Fifth Amendment privilege terminated as of his sentencing, since the courts in this jurisdiction and elsewhere have consistently held that a defendant continues to have the right to assert his Fifth Amendment privilege while the appeal of the criminal case is pending.  Further, the Magistrate Judge erred in concluding that civil discovery in this case was unlikely to implicate his Fifth Amendment privilege, given the significant overlap in the allegations in the civil and criminal cases.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei          D.C. Bar No. 938936
Alan R. Kabat            D.C. Bar No. 464258
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942

*Attorneys for Perouz Sedaghaty*

DATED:  December 6, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2011, I caused the foregoing Rule 72 Objections to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat

_____

Alan R. Kabat