# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                    )
IN RE:  TERRORIST ATTACKS ON          )          **Civil Action No. 03 MDL 1570 (GBD)**
SEPTEMBER 11, 2001                           )          **ECF Case**
_____  )

This document relates to:

*Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-cv-06978
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 03-cv-08591
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-cv-7216
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Kathleen Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia*, Case No. 04-cv-1922
*Continental Casualty Co., et al. v. al Qaeda, et al.*, Case No. 04-cv-5970

## DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF OF FINAL JUDGMENTS

Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)
*Attorneys for the Kingdom of Saudi Arabia*

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
(202) 775-4500
(202) 775-4510 (fax)
*Attorneys for the Saudi High Commission for Relief of Bosnia & Herzegovina*

January 30, 2012

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION AND SUMMARY ........................................................................................1

BACKGROUND .........................................................................................................................3

    A.    Plaintiffs' Allegations Against Saudi Arabia and the SHC .....................................3

    B.    In 2005, This Court Granted Saudi Arabia's and the SHC's
        Motions To Dismiss Based on Discretionary-Function Immunity .........................4

    C.    The Second Circuit Affirmed This Court's Judgment on Other
        Grounds ...................................................................................................................9

    D.    *Doe* ......................................................................................................................10

ARGUMENT .............................................................................................................................10

I.    The Change in Law Made by *Doe* Is Not an "Extraordinary Circumstance"
    Warranting Relief Under Rule 60(b)(6) .............................................................................11

II.    *Doe* Does Not Call into Question the Result in These Cases .............................................17

    A.    This Court's Ruling That Discretionary-Function Immunity Bars
        Plaintiffs' Claims Remains Undisturbed ..............................................................18

    B.    The Torts Exception Could Not Provide Jurisdiction Here for Two
        Additional and Independent Reasons .....................................................................20

CONCLUSION ..........................................................................................................................24

# TABLE OF AUTHORITIES

Page

## CASES

*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................................11

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) .........................20, 21

*Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517
    (D.C. Cir. 1984) .......................................................................................20, 21

*Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995) ...................................................16

*Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*,
    249 F.3d 519 (6th Cir. 2001) ..........................................................................11, 13, 16

*Burnett v. al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9 (D.D.C. 2003) .................................23

*Cabiri v. Government of Ghana*, 165 F.3d 193 (2d Cir. 1999)....................................................21

*DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994)...................................................11, 12, 13, 16

*Doe v. Bin Laden*:

    580 F. Supp. 2d 93 (D.D.C. 2008) ...............................................................................19

    663 F.3d 64 (2d Cir. 2011)...............................2, 3, 5, 10, 11, 13, 14 15, 17, 19, 21, 23

*Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982)......................................14

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ......................................................................16

*Eubanks v. United States*, No. 97-CV-3891, 2005 WL 1949474
    (S.D.N.Y. Aug. 11, 2005) ......................................................................................17

*Federal Ins. Co. v. Kingdom of Saudi Arabia*:

    555 U.S. 1168 (2009)............................................................................................2

    129 S. Ct. 2859 (2009) .......................................................................................2, 4

*First Am. Nat'l Bank of Nashville v. Bonded Elevator, Inc.*, 111 F.R.D. 74
    (W.D. Ky. 1986) ...................................................................................................16

*Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25 (1965).....................................................16

*Gonzalez v. Crosby*, 545 U.S. 524 (2005)..............................................................................10, 11

*Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011) ........................................................11

*Hirsh v. State of Israel*, 962 F. Supp. 377 (S.D.N.Y.), *aff'd*, 133 F.3d 907
    (2d Cir. 1997)............................................................................................................21

*Kline v. Kaneko*, 685 F. Supp. 386 (S.D.N.Y. 1988) ....................................................21

*Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2d Cir. 2004)....................................13, 14

*Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713 (Alaska 1988) ........................16

*O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009) ......................................................21

*Pasquino v. Lev Parkview Developers, LLC*, No. 09-CV-4255(LMM),
    2011 WL 4502205 (S.D.N.Y. Sept. 29, 2011)..............................................14, 15

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) ...................21, 22

*Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) ....................................................16

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748
    (2d Cir. 1998)............................................................................................................13

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001)..............................13

*Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86 (2d Cir. 1996) ............................15

*Schildhaus v. Moe*, 335 F.2d 529 (2d Cir. 1964) ..........................................................15

*Terrorist Attacks on September 11, 2001, In re*:

    349 F. Supp. 2d 765 (S.D.N.Y. 2005)...........................................4, 5, 6, 18, 19

    392 F. Supp. 2d 539 (S.D.N.Y. 2005)...........................................4, 6, 7, 18, 19

    538 F.3d 71 (2d Cir. 2008)..............................................2, 4, 9, 10, 19, 23

*Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754 (2d Cir. 1986).........................2, 11, 14

*United Airlines, Inc. v. Brien*, 588 F.3d 158 (2d Cir. 2009) ....................................15, 16

*United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977) .....................................................14

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig
    Airlines)*, 467 U.S. 797 (1984)............................................................6, 7, 18

*Wallace Clark & Co. v. Acheson Indus., Inc.*, 394 F. Supp. 393
    (S.D.N.Y. 1975), *aff'd*, 532 F.2d 846 (2d Cir. 1976) .......................................17

**STATUTES AND RULES**

Foreign Sovereign Immunities Act of 1976:

       28 U.S.C. § 1603(b) ..........................................................................................6

       28 U.S.C. § 1605(a)(5)...............................................................................5, 20

       28 U.S.C. § 1605(a)(5)(A) .....................................................................1, 5, 18

       28 U.S.C. § 1605(a)(7) (2000 & Supp. I 2001) .................................................5

       28 U.S.C. § 1605A ...........................................................................................5

Federal Rules of Civil Procedure:

       Rule 54(b) .........................................................................................4, 7, 8, 12

       Rule 60(b) .....................................................................................9, 10, 12, 20

       Rule 60(b)(1)...............................................................................................14, 15

       Rule 60(b)(5)......................................................................................................17

       Rule 60(b)(6)......................................................2, 10, 11, 12, 13, 14, 15, 17, 23

**OTHER MATERIALS**

Br. for United States as Amicus Curiae, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640, 2009 WL 1539068 (U.S. filed May 29, 2009) ...............................................................................2, 10, 20, 22, 23

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ........................................21

*The 9/11 Commission Report:  Final Report of the National Commission on Terrorist Attacks Upon the United States* (July 2004)................................................1, 4

11 Charles A. Wright et al., *Federal Practice and Procedure* (2d ed. 1995)................................17

Defendants the Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia & Herzegovina (the "SHC") (collectively, "Defendants") submit this consolidated memorandum of law in opposition to Plaintiffs' Motion for Relief of the Final Judgments Entered in Favor of Saudi Arabia and the SHC (ECF Nos. 2507-2509).

## INTRODUCTION AND SUMMARY

Following an exhaustive and authoritative investigation, the National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission") concluded that the government of Saudi Arabia had no role in the attacks of September 11, 2001, declaring:  "[W]e have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" al Qaeda.  *The 9/11 Commission Report:  Final Report of the National Commission on Terrorist Attacks Upon the United States* 171 (July 2004) (the "9/11 Report").  More than seven years later, Plaintiffs in these consolidated cases continue to press conclusory and unsupported allegations that Saudi Arabia – along with the SHC, which is a Saudi agency that conducts humanitarian relief efforts abroad – was complicit in the September 11 attacks, along with more than 200 other individuals, non-profits, financial institutions, foreign officials, and sovereign states.

In 2005, this Court granted Saudi Arabia's and the SHC's motions to dismiss the claims against them as barred by sovereign immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA").  This Court's ruling rested solely on the basis that, taking all of their allegations as true, Plaintiffs' claims were "based upon the exercise or performance or the failure to exercise or perform a discretionary function," and so were barred by 28 U.S.C. § 1605(a)(5)(A).  Without addressing this Court's reliance on discretionary-function immunity, the Second Circuit affirmed this Court's dismissals based on different reasoning, holding that the FSIA's exception for claims involving terrorism (which all agreed had not been satisfied) provided the sole possible basis for

jurisdiction in these cases.  *See In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71,

87-90 (2d Cir. 2008).

      Plaintiffs then petitioned for certiorari.  The Supreme Court gave the case unusually

thorough consideration.  In particular, the Court invited the Solicitor General to state the views

of the United States.  *See Federal Ins. Co. v. Kingdom of Saudi Arabia*, 555 U.S. 1168 (2009).

The Solicitor General's brief, filed May 29, 2009, expressed the view of the Department of State

and the Department of Justice that "[t]he lower courts correctly concluded that Saudi Arabia and

its officials are immune from suit for governmental acts outside the United States."  Br. for

United States as Amicus Curiae at 3, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640,

2009 WL 1539068 (U.S. filed May 29, 2009) ("U.S. Amicus Br.").  The brief made clear that,

even if some details of the Second Circuit's analysis might be questioned, it would be a waste of

judicial resources to spend more time adjudicating a different legal basis for the same result.  The

Supreme Court denied certiorari.  *See Federal Ins. Co. v. Kingdom of Saudi Arabia*, 129 S. Ct.

2859 (2009).

      In its recent decision in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) (per curiam), the

Second Circuit abrogated its holding in *In re Terrorist Attacks* that the torts exception is

categorically inapplicable to claims involving terrorism.  Relying on *Doe*, Plaintiffs now seek to

vacate the final judgments against them under Federal Rule of Civil Procedure 60(b)(6).  But "it

is well settled that a change in decisional law is *not* grounds for relief under Rule 60(b)(6)."

*Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir. 1986) (emphasis added).

Accordingly, Plaintiffs' motion fails at the threshold because they have not given any acceptable

reason for reopening a long-closed case.

In any event, *Doe* casts no doubt on the correctness of this Court's judgments in these cases. In granting Saudi Arabia's and the SHC's motions to dismiss, this Court in fact agreed with the conclusion that the Second Circuit would ultimately reach in *Doe*. Even so, it held that the FSIA's immunity for discretionary functions barred Plaintiffs' claims. Plaintiffs provide no reason to question the correctness of that conclusion. Indeed, they fail even to mention it. Moreover, the torts exception could not provide jurisdiction over Plaintiffs' claims for two additional and independent reasons. Plaintiffs' motion should be denied.

## BACKGROUND

### A.      Plaintiffs' Allegations Against Saudi Arabia and the SHC

When they brought these cases in 2002 and 2003, Plaintiffs alleged that the Saudi government, acting through senior officials and various entities supposedly acting on Saudi Arabia's behalf, provided financial and material assistance to al Qaeda and thereby assisted that organization's "growth and development into a sophisticated global terrorist network" capable of perpetrating the attacks of September 11, 2001. First Am. Compl. ¶ 398, *Federal Ins. Co. v. al Qaida*, No. 03-CV-6978 (filed Mar. 10, 2004) (ECF No. 111) ("Compl."). Plaintiffs did not allege any direct involvement by Saudi Arabia in the September 11 attacks, but rather asserted without elaboration that those attacks were a "direct, intended and foreseeable product" of Saudi Arabia's purported support of al Qaeda. *Id.* ¶ 425. Plaintiffs also named as defendants the SHC and several other Saudi agencies that conduct humanitarian relief efforts in various parts of the world. They alleged that each of those agencies provided funding and logistical support for al Qaeda. *See id.* ¶¶ 180-207.[1]

---

[1] Plaintiffs also sued more than a half-dozen independent charities, including some organized and based in Saudi Arabia. *See* Compl. ¶¶ 84-179, 208-216. In contrast to the SHC and other agencies of the Saudi government named as defendants, those charities – which

Even before this Court dismissed them, Plaintiffs' claims against Saudi Arabia had been directly rebutted by facts found by the United States government.  The 9/11 Commission concluded that Saudi Arabia did not assist the September 11 terrorists.  Although it did not rule out the possibility that some independent (non-sovereign) charities might have diverted funds to al Qaeda, the 9/11 Commission "found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" al Qaeda.  9/11 Report at 171.  The 9/11 Report further concluded that "we have seen no evidence that any foreign government – or foreign government official – supplied any funding" to the September 11 hijackers.  *Id*. at 172.

### B. In 2005, This Court Granted Saudi Arabia's and the SHC's Motions To Dismiss Based on Discretionary-Function Immunity

Saudi Arabia and the SHC each filed motions to dismiss asserting sovereign immunity under the FSIA.  On January 18, 2005, the Court granted Saudi Arabia's motion, *see* 349 F. Supp. 2d 765, 802-04 (S.D.N.Y. 2005), and, on September 21, 2005, it granted the SHC's motion, *see* 392 F. Supp. 2d 539, 555 (S.D.N.Y. 2005).  The Court subsequently issued a final judgment under Federal Rule of Civil Procedure 54(b) dismissing Saudi Arabia and the SHC, among other defendants.  The Second Circuit affirmed that judgment, *see* 538 F.3d 71 (2d Cir. 2008), and the Supreme Court denied review, *see* 129 S. Ct. 2859 (2009).

1.      With respect to Saudi Arabia's motion to dismiss, this Court began by explaining that, "[u]nder the FSIA, a foreign state and its instrumentalities are presumed immune from United States courts' jurisdiction" and that "[t]he FSIA's exceptions to immunity provide the sole basis for obtaining subject matter jurisdiction over a foreign state and its instrumentalities." 349 F. Supp. 2d at 782.  Because there was "no dispute that the Kingdom of Saudi Arabia is a

_____

included, for example, the International Islamic Relief Organization and the Muslim World League – are not agencies or instrumentalities of Saudi Arabia.

foreign state within the meaning of the FSIA," *id.* at 802, the Court addressed the relevant FSIA exceptions to determine whether it could exercise jurisdiction.

The Court first addressed the FSIA's state-sponsor-of-terrorism exception, which provides for jurisdiction in terrorism cases against foreign states that the State Department has designated as "state sponsor[s] of terrorism." 28 U.S.C. § 1605A.[2] The Court determined that this exception did not apply because Saudi Arabia "has not been designated a state sponsor of terrorism." 349 F. Supp. 2d at 794.

The Court also addressed the FSIA's "non-commercial torts" exception. *See* 28 U.S.C. § 1605(a)(5). Saudi Arabia contended that the torts exception could not apply to claims based on alleged support for terrorism. This Court rejected that argument, reasoning that, in § 1605A, Congress "did not include mutually exclusive language that would preclude the application of the torts exception here." 349 F. Supp. 2d at 796; *cf. Doe*, 663 F.3d at 70 (reaching the same conclusion).

Even so, the Court held that Plaintiffs' claims did not satisfy the torts exception to FSIA immunity. The torts exception, by its terms, does not confer jurisdiction over "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 1605(a)(5)(A). The Court explained that Plaintiffs' allegations with respect to Saudi Arabia "ar[o]se predominantly" from claims that the Saudi government "aided and abetted the terrorists" by supporting charities purportedly "under the Kingdom's control." 349 F. Supp. 2d at 802-03 (internal quotation marks omitted). The Court concluded that Saudi Arabia's alleged "treatment of and decisions to support Islamic charities are purely planning level 'decisions

---

[2] At the time this case was initiated, the state-sponsor-of-terrorism exception was codified at 28 U.S.C. § 1605(a)(7) (2000 & Supp. I 2001). Former § 1605(a)(7) has since been repealed and replaced with 28 U.S.C. § 1605A.

grounded in social, economic, and political policy' " and were therefore outside the scope of the

torts exception.  *Id.* at 804 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio*

*Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).[3]  Having determined that Plaintiffs could

not satisfy the torts exception (or any other FSIA exception), the Court granted Saudi Arabia's

motion to dismiss.  *See id.*

    This Court reached the same result with respect to the SHC.  The Court first determined

that the SHC is an "organ, agency, or instrumentality" of Saudi Arabia and is therefore entitled to

assert sovereign immunity under the FSIA.  *See* 392 F. Supp. 2d at 551-53; 28 U.S.C. § 1603(b).

    Turning to the FSIA's exceptions, the Court concluded that Plaintiffs' allegations were

insufficient to overcome discretionary-function immunity.  *See* 392 F. Supp. 2d at 554-55.

Relying on "undisputed evidence" submitted by the SHC, the Court held that the SHC's

decisions regarding the distribution of humanitarian funds were discretionary and that the SHC

was guided by the Kingdom's policies regarding foreign aid in making funding determinations.

*Id.* at 555.  The undisputed evidence on which the Court relied included the declaration of Saud

bin Mohammad Al-Roshood, the Director of the Executive Office of the SHC.  *See* Decl. of Max

Huffman in Supp. of Def. SHC's Mot. To Dismiss, Ex. A, No. 03-MDL-1570 (filed June 25,

2004) (ECF No. 262).  Mr. Al-Roshood submitted uncontradicted evidence that the SHC is a

legitimate humanitarian organization and that, contrary to Plaintiffs' wholly unsupported

allegation that SHC funds were diverted to al Qaeda, Bosnian authorities audited the

---

[3] Plaintiffs' opposition to Saudi Arabia's motion to dismiss did not identify any disputed issue of fact material to the applicability of the FSIA's torts exception.  *See* Fed. Pls.' Mem. of Law in Opp. to Mot. To Dismiss of Saudi Arabia at 21, No. 03-MDL-1570 (filed Oct. 1, 2004) (ECF No. 471).  In addition, this Court concluded that "no jurisdictional discovery [was] necessary" because "there were no factual disputes raised in the Court's resolution of" Saudi Arabia's motion to dismiss.  349 F. Supp. 2d at 804.

disbursements of funds by the SHC in 1998, 1999, 2000, and 2001, and found nothing amiss. *See id.*[4]  As with its earlier ruling in favor of Saudi Arabia, the Court held that "SHC's alleged misuse of funds and/or inadequate record-keeping – even if it resulted in the funds going to terrorists – was the result of a discretionary function and cannot be the basis for overcoming SHC's immunity."  392 F. Supp. 2d at 555 (citing *Varig Airlines*, 467 U.S. at 814).

     **2.**     Following the Court's decision granting motions to dismiss filed by Saudi Arabia and other defendants, the parties agreed that the Court's ruling as to the defendants that had been dismissed would apply to all actions naming those defendants, on the ground that the allegations and evidence presented against those defendants in the cases still pending did not materially differ from the allegations and evidence presented in the cases already dismissed.  The parties prepared a stipulated order to that effect, which the Court signed on May 5, 2005.  *See* Order of Dismissal, No. 03-MDL-1570 (May 5, 2005) (ECF No. 883) ("5/5/05 Order of Dismissal"). That order applied to all pending cases against Saudi Arabia, including each of the four actions against Saudi Arabia that Plaintiffs seek to reopen.  *Compare id.* at 1-4, *with* Pls.' Mem. at 1 n.1.

     On December 16, 2005, the Court entered an order directing the Clerk of Court to enter a final judgment in favor of Saudi Arabia and the SHC, among others, pursuant to Federal Rule of Civil Procedure 54(b).  *See* Order, No. 03-MDL-1570 (Dec. 16, 2005) (ECF No. 1554) ("12/16/05 Order").  That order applied to all pending cases against Saudi Arabia, as well as the claims against the SHC in *Federal Insurance Co. v. al Qaida*, No. 03-CV-6978; *Burnett v. al Baraka Investment & Development Corp.*, No. 03-CV-9849; and *Ashton v. al Qaeda Islamic*

---

[4] In opposing the SHC's motion to dismiss, Plaintiffs did not argue that there was any dispute regarding a fact material to the applicability of the torts exception that would require jurisdictional discovery.  *See* Pls.' Consol. Mem. of Law in Opp. to Mot. To Dismiss of Def. SHC at 12-22, No. 03-MDL-1570 (filed Aug. 24, 2004) (ECF No. 397).

*Army*, No. 02-CV-6977.  *See id.* at 1-2.[5]  Pursuant to the 12/16/05 Order, the Clerk entered a

judgment in favor of Saudi Arabia and the SHC on January 10, 2006, *see* Judgment,

No. 03-MDL-1570 (Jan. 10, 2006) (ECF No. 1594) ("1/10/06 Judgment"), and the Court

subsequently issued an order curing a technical problem with that judgment, *see* Order,

No. 03-MDL-1570 (Jan. 18, 2006) (ECF No. 1624).

Plaintiffs are therefore incorrect in asserting that, in July 2011, the Court "dismissed the

claims against the Kingdom [of Saudi Arabia] . . . asserted by the New York [Marine] and

Continental Casualty plaintiffs groups."  Pls.' Mem. at 3.  The claims against Saudi Arabia

asserted by the *New York Marine* plaintiffs were dismissed by the 5/5/05 Order of Dismissal, the

12/16/05 Order, and the 1/10/06 Judgment.[6]  And the *Continental Casualty* plaintiffs did not

name Saudi Arabia as a defendant in their complaint, *see* First Am. Compl., *Continental Cas.

Co. v. al Qaeda*, No. 04-CV-5970 (filed Dec. 8, 2004) (ECF No. 4) – a fact Plaintiffs implicitly

---

[5] With respect to the remaining case against the SHC that is the subject of Plaintiffs'
motion – *Continental Casualty Co. v. al Qaeda*, No. 04-CV-5970 – the parties entered into a
stipulation, which the Court signed on May 19, 2005, providing that they would be bound by all
decisions of this Court and the Second Circuit on the SHC's motion to dismiss.  *See* Stip. with
Regard to Rulings on Mot. To Dismiss of Def. SHC in Related Cases, No. 03-MDL-1570 (May
19, 2005) (ECF No. 918).  In accordance with that stipulation, the Court's September 21, 2005
order granting the SHC's motion to dismiss, 392 F. Supp. 2d 539, applied to the claims of the
*Continental Casualty* plaintiffs.  The Court entered a final judgment pursuant to Rule 54(b) in the
*Continental Casualty* action on July 14, 2011.  *See* Order, No. 03-MDL-1570 (July 13, 2011)
(ECF No. 2445); Rule 54(b) Judgment, No. 03-MDL-1570 (July 14, 2011) (ECF No. 2446).  As
Plaintiffs note, *see* Pls.' Mem. at 3, the same pattern was followed in *New York Marine &
General Insurance Co. v. al Qaida*, No. 04-CV-6105 – although Plaintiffs have not moved to
reopen that case, *see id.* at 1 n.1; Stip. with Regard to Rulings on Mot. To Dismiss Def. SHC in
Related Cases, No. 03-MDL-1570 (Feb. 8, 2006) (ECF No. 1677); Order, No. 03-MDL-1570
(July 13, 2011) (ECF No. 2445); Rule 54(b) Judgment, No. 03-MDL-1570 (July 14, 2011) (ECF
No. 2446).

[6] *See* 5/5/05 Order of Dismissal at 2 (listing *New York Marine & General Insurance Co.
v. al Qaida*, No. 04-CV-6105, as among cases from which Saudi Arabia was dismissed by
stipulation); 12/16/05 Order at 3 (directing entry of final judgment on dismissals ordered in
5/5/05 Order); 1/10/06 Judgment (entering judgment pursuant to 12/16/05 Order).

acknowledge by not listing the *Continental Casualty* case as one of the cases they seek to reopen with respect to Saudi Arabia, *see* Pls.' Mem. at 1 n.1.

Accordingly, by no later than January 10, 2006 – approximately six years before the filing of Plaintiffs' Rule 60(b) motion – all of Plaintiffs' claims against Saudi Arabia were subject to a final judgment of this Court. All of Plaintiffs' claims against the SHC were similarly subject to a final judgment as of that date, except for the *Continental Casualty* case, which was subject to a binding stipulation based on this Court's rulings and awaited only the ministerial entry of a final judgment on the docket.

### C.     The Second Circuit Affirmed This Court's Judgment on Other Grounds

The Second Circuit affirmed this Court's judgment dismissing the cases against Saudi Arabia and the SHC. *See* 538 F.3d at 87-90. Although this Court had relied on discretionary-function immunity in holding that the torts exception did not provide jurisdiction over Plaintiffs' claims against Saudi Arabia and the SHC, the court of appeals held that the torts exception did not support jurisdiction in these cases for a different reason. It held the torts exception inapplicable "where the conduct alleged amounts to terrorism within the meaning of the [FSIA's] Terrorism Exception." *Id.* at 89. The Second Circuit also noted that Defendants had "raise[d] three other challenges to the application of the Torts Exception":

> since the Torts Exception is limited to torts that are both committed and felt within the United States, it does not concern a tortious act committed abroad, even if it has effects on United States soil; the "discretionary function" exclusion to the Torts Exception reinstates sovereign immunity; and, for lack of causation, the plaintiffs fail to state a claim in tort in any event.

*Id.* at 90 n.15. That court found it "unnecessary to reach these additional arguments" in light of its conclusion that "the Torts Exception does not apply to the plaintiffs' allegations." *Id.*

Plaintiffs sought certiorari from the Second Circuit's decision. The Supreme Court asked for the views of the United States, which recommended that the Court deny the petition. While

disagreeing with the Second Circuit's specific conclusion that the torts and terrorism exceptions are mutually exclusive, the United States told the Supreme Court that this Court properly upheld the dismissal of Saudi Arabia and the SHC under the FSIA:

> The lower courts correctly concluded that Saudi Arabia and its officials are immune from suit for governmental acts outside the United States.  Although the United States disagrees in certain respects with the analysis of the court of appeals, further review by this Court to determine the best legal basis for that immunity is unwarranted.

U.S. Amicus Br. at 3-4.  The Supreme Court accepted the recommendation of the United States and denied the petition.

**D.**   ***Doe***

In *Doe*, the Second Circuit revisited its holding in *In re Terrorist Attacks* regarding the relationship between the FSIA's torts and terrorism exceptions.  It held that "the terrorism exception, rather than limiting the jurisdiction conferred by the noncommercial tort exception, provides an additional basis for jurisdiction."  663 F.3d at 70.  The court of appeals therefore abrogated its contrary conclusion in *In re Terrorist Attacks*.  *See id.* at 70 n.10.  The *Doe* court emphasized that its holding was limited to the scope of the torts exception and did not resolve any other issue.  *See id.* at 70-71 ("Let us be clear:  we make no judgment as to whether the allegations in the complaint are sufficient to state a claim or even to provide jurisdiction.").

## ARGUMENT

Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of [its] case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence."  *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).  Rule 60(b)(6), the provision on which Plaintiffs rely in their motion, provides for relief based on "any other reason" – *i.e.*, one not listed in parts (b)(1) through (b)(5) – "that justifies relief."  Fed. R. Civ. P. 60(b)(6); *see Gonzalez*, 545 U.S. at 529 (Rule 60(b)(6) applies to requests based on reasons "other than the

more specific circumstances set out in Rules 60(b)(1)-(5)").  As the Supreme Court explained in

*Gonzalez*, "our cases have required a movant seeking relief under Rule 60(b)(6) to show

'extraordinary circumstances' justifying the reopening of a final judgment."  545 U.S. at 535; *see

id.* at 536 ("Rule 60(b)(6) . . . requires a showing of 'extraordinary circumstances.'").

**I.      The Change in Law Made by *Doe* Is Not an "Extraordinary Circumstance"
        Warranting Relief Under Rule 60(b)(6)**

      **A.**      Plaintiffs assert that the change in decisional law made by the Second Circuit in

*Doe* constitutes an "extraordinary circumstance[ ]" (*Gonzalez*, 545 U.S. at 535-36) justifying

relief from the final judgments in these cases under Rule 60(b)(6).  But "it is well settled that a

change in decisional law is *not* grounds for relief under Rule 60(b)(6)."  *Travelers Indem.*, 794

F.2d at 757 (emphasis added); *accord Agostini v. Felton*, 521 U.S. 203, 239 (1997)

("[i]ntervening developments in the law by themselves rarely constitute the extraordinary

circumstances required for relief under Rule 60(b)(6)").[7]

      *DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994), illustrates that controlling principle.

In that case, the plaintiff's suit to recover a painting she believed had been stolen from her was

dismissed as barred by the statute of limitations, based on the Second Circuit's conclusion that

New York law required a showing of "reasonable diligence" in seeking to locate the painting

(a showing she had not made).  *See id.* at 1269.  Approximately three years after the dismissal of

---

      [7] *See also Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011) (per curiam) ("[a]
change in decisional law after entry of judgment does not constitute exceptional circumstances
and is not alone grounds for relief from a final judgment under Rule 60(b)(6)") (internal
quotation marks omitted; alteration in original); *Blue Diamond Coal Co. v. Trustees of UMWA
Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) ("It is well established that a change
in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6)
relief.") (collecting cases); *cf. Gonzalez*, 545 U.S. at 536 ("It is hardly extraordinary that
subsequently, after petitioner's case was no longer pending, this Court arrived at a different
interpretation.").

her action, the New York Court of Appeals issued a decision holding that New York law does *not* require a showing of "reasonable diligence" in cases such as the plaintiff's.  *See id.* at 1270. She accordingly sought relief from the final judgment in her case under Rule 60(b)(6); the district court granted her motion, but the Second Circuit reversed.  *See id.*

Even though the intervening New York Court of Appeals decision had "expressly stated" that the legal rule on which the earlier judgment had rested was "wrong," the Second Circuit held in *DeWeerth* that this change in law did "not constitute an 'extraordinary circumstance'" that would "warrant relief under Rule 60(b)(6)."  *Id.* at 1272, 1274.  It explained that the district court's grant of Rule 60(b) relief "inappropriately disturbed a final judgment in a case that had been fully litigated and was long since closed" and that the lower court had therefore "abused its discretion" in granting the plaintiff's motion.  *Id.* at 1272, 1275.

Here, as in *DeWeerth*, the cases that Plaintiffs seek to reopen have been "fully litigated" and, as a general matter, "long since closed."  *Id.* at 1272.  As explained above, six of the seven actions that Plaintiffs seek to reopen – including all of the cases against Saudi Arabia – have been the subject of an undisturbed final judgment by this Court for nearly six years.  *See supra* pp. 7-8 & notes 5-6.  With respect to the remaining case – *Continental Casualty Co. v. al Qaeda*, No. 04-CV-5970, in which only the SHC, and not Saudi Arabia, is a defendant – the Court ordered in May 2005, pursuant to the parties' stipulation, that Plaintiffs would be bound by the subsequent decisions of this Court and the Second Circuit on the SHC's motion to dismiss.  *See supra* note 5.  The *Continental Casualty* case was therefore functionally "closed" with respect to the SHC many years before the Court memorialized that reality in a Rule 54(b) judgment in July 2011.  *See id.*

Plaintiffs are also wrong to assert that vacating the judgments in these cases will result in no "undue hardship" to Saudi Arabia or the SHC.  Pls.' Mem. at 9.  Sovereign immunity under the FSIA is immunity not just from liability, but also from "the attendant burdens of litigation." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) (internal quotation marks omitted).  The Second Circuit has therefore emphasized the "necessity of resolving th[e] issue" of sovereign immunity "early on if possible."  *Robinson v. Government of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001); *see Rein*, 162 F.3d at 755-56.  It would be contrary to those established principles of sovereign immunity to require Saudi Arabia and the SHC to again bear the "attendant burdens of litigation" with respect to cases that have been closed for many years.[8]

In sum, the change in law made in *Doe* is not "an 'extraordinary circumstance'" sufficient to "disturb[]" the final judgments in these cases.  *DeWeerth*, 38 F.3d at 1272.

**B.**     Plaintiffs cite no case reopening a final judgment in comparable circumstances. Each of the cases on which they rely, *see* Pls.' Mem. at 5-6, involved "some other special circumstance," in addition to "an applicable change in decisional law," *Blue Diamond*, 249 F.3d at 524, to justify relief under Rule 60(b)(6).  No similar "special circumstance" is present here.

**1.**     In *Marrero Pichardo v. Ashcroft*, 374 F.3d 46 (2d Cir. 2004), the plaintiff sought to reopen a habeas corpus action to seek relief from a deportation order based on a recent decision undermining the correctness of that order.  *See id.* at 49-50.  The decision announcing the change in law on which the plaintiff relied had been on the books when he filed his original habeas petition, but had not been brought to the habeas court's attention due to his counsel's

---

[8] The SHC recently held an event in Bosnia to mark the conclusion of its work there.  The SHC, having concluded its work and having been dismissed from these lawsuits years ago, has no reason to remain in operation.

negligence.  *See id.* at 50, 55.  The Second Circuit reaffirmed that, "as a general matter, a mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)."  *Id.* at 56 (citing *Travelers Indem.*, 794 F.2d at 757).  But it reasoned that denying the plaintiff's motion (which was filed only three months after the judgment dismissing his habeas petition) would result in "manifest injustice" because the "order of deportation [had been] undermined [by] dramatic changes to governing law, a fact that existed at the time [the plaintiff's original] habeas petition was pending before the district court" but that had not been brought to the district court's attention "in large part . . . due to incompetent lawyering."  *Id.* None of those special circumstances is present here.  The change in law announced in *Doe* came long after the judgment against Plaintiffs became final, and Plaintiffs' counsel were not incompetent in 2005 – they simply did not prevail then after a fair chance to litigate.[9]

In *Pasquino v. Lev Parkview Developers, LLC*, No. 09-CV-4255(LMM), 2011 WL 4502205 (S.D.N.Y. Sept. 29, 2011), the primary basis for granting relief was Rule 60(b)(1), which permits a district court to reconsider its decisions within the time for filing an appeal, and not Rule 60(b)(6).  There, the Second Circuit issued a decision that provided "new, contrary decisional law" within two months after the plaintiffs had noticed a timely appeal.  *Id.* at *2. Observing that the "exclusive basis for [its] . . . orders and judgments ha[d] since been vacated," *id.* at *4, the *Pasquino* court concluded that " 'no good purpose [would be] served by requiring

---

[9] Plaintiffs parenthetically describe *United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977), and *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982), as cases granting relief based on an "intervening change in decisional law."  Pls.' Mem. at 8.  In fact, neither of those cases involved a change in decisional law.  Instead, both involved other asserted grounds for relief under Rule 60(b)(6).  *See Cirami*, 563 F.2d at 32 (plaintiffs sought to reopen judgment based on "new evidence" concerning prior counsel's neglect); *Dunlop*, 672 F.2d at 1053 (non-parties sought to amend judgment to clarify that it did not preclude their claims against defendant).

[Plaintiffs] to appeal' " rather than permitting the court " 'to correct its decision in the light of new authority,' " *id.* (quoting *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) (Friendly, J.), which discussed Rule 60(b)(1)) (second alteration in original).  In the alternative, the court noted that, if its application of Rule 60(b)(1) were incorrect, "the circumstances . . . would warrant granting Plaintiffs' motion pursuant to Rule 60(b)(6)."  *Id.* at *5.  That dictum has no application here, where the judgments in these cases not only could have been appealed, but *had* been appealed and affirmed, when *Doe* was decided, and where *Doe* did not affect the basis on which this Court originally entered its now-final judgment.

Similarly, *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86 (2d Cir. 1996), which Plaintiffs also cite, involved not a Rule 60(b) motion, but a motion to recall the mandate in the Second Circuit.  *See id.* at 88.  The court of appeals granted that motion because the intervening decision that created the change in law in that case was issued while the movant's "petition for a writ of certiorari [seeking review of the original judgment] was pending in the Supreme Court, and the motion to recall the mandate was filed within two weeks of the denial of the petition for certiorari."  *Id.* at 90.  Here, the cases had long been closed – and certiorari had long ago been sought and denied – when the change in law was announced.

    **2.**    Plaintiffs also rely on a handful of cases from other circuits that they say have granted Rule 60(b)(6) relief where "a failure to vacate a judgment based on an intervening change of law would produce inconsistent judgments in related proceedings arising from the same incident."  Pls.' Mem. at 6.  At the outset, the Second Circuit has held that "the potential hardship resulting from inconsistent judgments" is "not, by itself, sufficiently 'extraordinary' to justify reopening [a] judgment."  *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009).  The Second Circuit reached that conclusion even though in *Brien* a district court had issued

"conflicting decisions" in related actions "with substantial overlap in parties and substantial similarity in subject matter." *Id.* at 175.  Thus, even if Plaintiffs' cases were on point, they would not be good law in this Circuit.

In any event, Plaintiffs' cases are inapposite.  In each, the decision announcing the intervening change in law not only arose from the same transaction or occurrence but also involved *the same defendant.  See Pierce v. Cook & Co.*, 518 F.2d 720, 721-22 (10th Cir. 1975) (en banc) (two actions against employer of driver involved in car accident in which plaintiffs were injured); *First Am. Nat'l Bank of Nashville v. Bonded Elevator, Inc.*, 111 F.R.D. 74, 74 (W.D. Ky. 1986) (two suits seeking to hold same company liable on note);[10] *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713 (Alaska 1988) (two cases against same defendants for breach of shareholder agreement); *see also DeWeerth*, 38 F.3d at 1274-75 ("express[ing] no opinion" on "the merits of [the *Pierce* court's] rationale" but noting that it involved "actions arising out of the same accident *and involving the same parties*") (emphasis added); *cf. Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25 (1965) (per curiam) (granting untimely petition for rehearing where petitioner was only person denied workers' compensation for injuries arising from a car accident because court of appeals misapplied existing law in denying relief).[11]

---

[10] *Pierce* and *First American National Bank* involved parallel litigation in state and federal court arising from the same facts, and the change in law was announced in a decision of the state's highest court.  The federal courts in those cases, sitting in diversity, concluded that declining to reopen their judgments would be inconsistent with the rule of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  *See Pierce*, 518 F.2d at 723; *First Am. Nat'l Bank*, 111 F.R.D. at 75.  That concern is not present here.  *See Blue Diamond*, 249 F.3d at 525-26 (distinguishing *Pierce* and *First American National Bank* on the same basis).

[11] Plaintiffs also cite *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995), but that case *denied* relief, holding that the district court "abused its discretion" in vacating the judgment because "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Id.* at 747-48 (internal quotation marks omitted; alteration in original).

Here, the decision announcing the change in law (*Doe*) involved a different defendant (Afghanistan) from the defendants here.  Accordingly, granting Plaintiffs' motion would require reopening cases against defendants that have been out of this litigation for years.  None of Plaintiffs' cases supports that result, especially because – as explained next in Part II – there are multiple independent bases for sustaining this Court's judgments dismissing Saudi Arabia and the SHC.[12]

## II.    *Doe* Does Not Call into Question the Result in These Cases

Even if Plaintiffs had identified a valid basis for a Rule 60(b)(6) motion, relief would be unwarranted in these cases because the judgments are correct – as the Departments of State and Justice have confirmed.  In fact, there are at least three independent grounds for sustaining this Court's judgments – including the ground on which this Court actually relied when it granted Defendants' motions to dismiss.

---

[12] Contrary to Plaintiffs' suggestion (*see* Pls.' Mem. at 4 n.2), Rule 60(b)(5) – which provides for relief where a judgment "is based on an earlier judgment that has been reversed or vacated," Fed. R. Civ. P. 60(b)(5) – could not support reopening the judgments in these cases. Rule 60(b)(5) "has 'very little application' and is 'limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion.' "  *Eubanks v. United States*, No. 97-CV-3891, 2005 WL 1949474, at *3 (S.D.N.Y. Aug. 11, 2005) (quoting 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2863 (2d ed. 1995)); *accord Wallace Clark & Co. v. Acheson Indus., Inc.*, 394 F. Supp. 393, 395 n.4 (S.D.N.Y. 1975) ("relief from a judgment [under Rule 60(b)(5)] is restricted to situations where the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel," and the rule "does not apply where a case relied on as precedent by the court in rendering the present judgment has since been reversed"), *aff'd*, 532 F.2d 846 (2d Cir. 1976).  Because this Court's judgments dismissing the actions against Defendants were not based on any "prior judgment in the sense of claim or issue preclusion," *Eubanks*, 2005 WL 1949474, at *3 (internal quotation marks omitted), Rule 60(b)(5) does not apply here.

### A.   This Court's Ruling That Discretionary-Function Immunity Bars Plaintiffs' Claims Remains Undisturbed

As this Court correctly ruled in 2005, the FSIA's torts exception does not provide jurisdiction over Plaintiffs' claims against Saudi Arabia and the SHC because the actions that they are alleged to have taken involve the exercise of discretion. *See* 349 F. Supp. 2d at 803-04 (Saudi Arabia); 392 F. Supp. 2d at 555 (SHC). The FSIA excludes from the scope of the torts exception "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). The purpose of discretionary-function immunity is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814 (construing Federal Tort Claims Act's comparable discretionary-function limitation, on which the FSIA's provision was modeled); *see* 349 F. Supp. 2d at 794. "Generally, acts are discretionary if they are performed at the planning level of government, as opposed to the operational level." 349 F. Supp. 2d at 794.

Plaintiffs' claims against Saudi Arabia were based primarily on contributions and other support the Saudi government was alleged to have provided to Islamic charities that in turn were alleged to have funded al Qaeda. But the Saudi government's decisions to support Islamic charities, and its determination of which charities to support, are integral aspects of Saudi Arabia's leadership role in the Islamic world. As this Court held, those decisions have substantial social and political dimensions and are thus immune from challenge under the FSIA. *See id.* at 804 (Saudi Arabia's "treatment of and decisions to support Islamic charities are purely planning level 'decisions grounded in social, economic, and political policy'" and are immune from suit) (quoting *Varig Airlines*, 467 U.S. at 814).

This Court reached the same conclusion with respect to the SHC.  As this Court held, the "undisputed evidence" established that the SHC's decisions regarding the distribution of humanitarian funds were discretionary and influenced by Saudi Arabia's policies toward Bosnia-Herzegovina.  392 F. Supp. 2d at 555.  The SHC's decision-making fell squarely within the discretionary-function exclusion and could not be the basis for a tort claim.

Accordingly, even though this Court *agreed* with the conclusion that the Second Circuit ultimately would reach in *Doe*, *see* 349 F. Supp. 2d at 796, it dismissed Plaintiffs' cases against Saudi Arabia and the SHC based on discretionary-function immunity.  Plaintiffs fail even to acknowledge that ground for this Court's decisions, let alone provide any basis for questioning this Court's rulings.  No subsequent decision has called into question those rulings.  Although the Second Circuit affirmed this Court's rulings based on different reasoning, it cast no doubt on the correctness of this Court's conclusion that discretionary-function immunity bars Plaintiffs' claims.  *See* 538 F.3d at 90 n.15.

Nor is there anything in *Doe* that is inconsistent with this Court's decisions.  In *Doe*, the Second Circuit remanded for jurisdictional discovery on the applicability of the discretionary-function exclusion because the district court made a discretionary determination, based on the record before it, that there were "factual disputes" that warranted further factual development (a conclusion that the defendant did not challenge on appeal).  *See Doe*, 663 F.3d at 66; *see also id.* (noting that "Afghanistan had requested [discovery] if its motion to dismiss were denied").[13]  Here, by contrast, Plaintiffs identified no disputes of material fact on the discretionary-function

---

[13] Indeed, the district court in *Doe* specifically followed the standard this Court articulated in granting Defendants' motions to dismiss and held that, unlike these Plaintiffs, the *Doe* plaintiff had pleaded sufficient facts to warrant jurisdictional discovery on discretionary-function immunity.  *See Doe v. Bin Laden*, 580 F. Supp. 93, 98-99 (D.D.C. 2008).

issue in opposing Defendants' motions to dismiss, and this Court determined that discovery was unwarranted.  *See supra* pp. 5-7 & notes 3-4.

In sum, this Court's decisions dismissing Plaintiffs' claims against Saudi Arabia and the SHC based on discretionary-function immunity remain correct.  Plaintiffs have identified no basis for reopening those final judgments under Rule 60(b).

### B.    The Torts Exception Could Not Provide Jurisdiction Here for Two Additional and Independent Reasons

The torts exception is inapplicable here – and this Court's judgments dismissing Saudi Arabia and the SHC therefore are correct – for two additional reasons.

*First*, the actions Saudi Arabia and the SHC supposedly took to support al Qaeda all occurred outside the United States.  To fall within the torts exception, however, the "entire tort" – that is, the allegedly tortious activity itself, not just the injury that results from it – must occur in the United States.

The United States made exactly this point in recommending to the Supreme Court that it deny Plaintiffs' petition for a writ of certiorari from the Second Circuit's decisions affirming this Court's judgment dismissing Saudi Arabia and the SHC.  *See* U.S. Amicus Br. at 14 ("The domestic tort exception . . . requires . . . that 'the tortious act or omission of th[e] foreign state or of any official or employee' be committed within the United States.") (quoting 28 U.S.C. § 1605(a)(5)).  As the United States there explained,

> although the text [of the torts exception] "is susceptible of the interpretation that only the effect of the tortious action need occur" in the United States, *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524 (D.C. Cir. 1984) (Scalia, J.) . . . , this Court has clarified that the tort exception "covers only torts occurring within the territorial jurisdiction of the United States," [*Argentine Republic v.*] *Amerada Hess* [*Shipping Corp.*], 488 U.S. [428,] 441 [(1989)].

*Id.* at 11.

The D.C. and Sixth Circuits also have adopted the "entire tort" rule, *see Asociacion de Reclamantes*, 735 F.2d at 1524-25; *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984); *O'Bryan v. Holy See*, 556 F.3d 361, 382, 385-86 (6th Cir. 2009), and the Second Circuit has recognized the principle:  "Although cast in terms that may be read to require that only the injury rather than the tortious acts occur in the United States, the Supreme Court has held that this exception 'covers only torts occurring within the territorial jurisdiction of the United States.'"  *Cabiri v. Government of Ghana*, 165 F.3d 193, 200 n.3 (2d Cir. 1999) (quoting *Amerada Hess*, 488 U.S. at 441); *accord Hirsh v. State of Israel*, 962 F. Supp. 377, 383-84 (S.D.N.Y.) ("The noncommercial tort exception applies only where both the tort and injury take place within the territorial jurisdiction of the United States."), *aff'd*, 133 F.3d 907 (2d Cir. 1997) (Table); *Kline v. Kaneko*, 685 F. Supp. 386, 391 (S.D.N.Y. 1988) ("If the non-commercial tort exception is to apply, the entire tort must be committed in the United States.").[14]

As the D.C. Circuit explained, "the briefest consideration of the purposes of the statute shows that . . . both the tort and the injury must occur in the United States."  *Persinger*, 729 F.2d at 842.  In enacting the torts exception, "Congress' principal concern was with torts committed in this country" – primarily " 'traffic accidents.' "  *Id*. at 840 (quoting H.R. Rep. No. 94-1487, at 20-21 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6619-20); *see O'Bryan*, 556 F.3d at 382.  By contrast, "[i]f Congress had meant to remove sovereign immunity for governments acting on their own territory, with all of the potential for international discord and for foreign government retaliation that that involves, it is hardly likely that Congress would have ignored those topics

---

[14] *Doe* is not to the contrary.  The defendant in that case did not raise the "entire tort" rule in the Second Circuit, and the court of appeals made clear that it was not passing on any issue other than whether the FSIA's torts and terrorism exceptions are mutually exclusive.  *See* 663 F.3d at 70-71 ("Let us be clear:  we make no judgment as to whether the allegations in the complaint are sufficient to state a claim or even to provide jurisdiction.").

and discussed instead automobile accidents in *this* country." *Persinger*, 729 F.2d at 841 (emphasis added); *see also* U.S. Amicus Br. at 15 ("The tort exception's territorial limitation protects against conflict that would arise from asserting jurisdiction over a foreign government's actions taken in its own territory, and also serves to deter foreign courts from exercising jurisdiction over the United States for actions taken in the United States.").

That reading also accords with the statutory structure.  In the commercial activities exception, Congress withheld immunity for "a foreign sovereign's commercial activities 'outside the territory of the United States' having a 'direct effect' inside the United States." *Persinger*, 729 F.2d at 843.  By contrast, "[a]ny mention of 'direct effect[s]' is noticeably lacking from the noncommercial tort exception." *Id.* (second alteration in original).  "When Congress uses explicit language in one part of a statute to cover a particular situation and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing." *Id.*

Applied here, that inference compels the conclusion that Congress did not intend the torts exception to expose foreign states to liability for allegedly tortious activity outside the United States.  *See id.*  As noted above (*supra* p. 3), Plaintiffs have not alleged that either Defendant participated in, or even knew in advance about, the events of September 11, 2001.  The allegation is rather that Saudi Arabia funneled money through certain charities to al Qaeda, thereby providing material support to the terrorists.  *See supra* pp. 3-4.  As the United States explained,

> contrary to [the Second Circuit's earlier] analysis, the tort and terrorism
> exceptions are not mutually exclusive.  But the court was correct that the tort
> exception's territorial limitation cannot be avoided by pleading the kind of
> "material support" claim that falls within the terrorism exception when brought
> against a country designated [as a state sponsor of terrorism] by the Secretary of
> State.  To satisfy the domestic tort exception, petitioners must allege that Saudi

> Arabia, its officials, or employees, committed tortious acts within the United
> States.  Petitioners' complaints do not satisfy that requirement.

U.S. Amicus Br. at 12; *see also id.* at 17-18 ("Although the court of appeals' analysis has certain flaws, the court correctly identified the danger that a complaint making this kind of allegation would evade the limitations of the domestic tort and terrorism exceptions.").  Thus, even though the United States (like this Court) agreed with the view that the Second Circuit would ultimately adopt in *Doe*, it still told the Supreme Court that the "conclusion that [Plaintiffs] had not overcome Saudi Arabia's immunity was correct" because Plaintiffs failed to allege "tortious acts in the United States."  *Id.* at 14, 18.

*Second*, Plaintiffs did not adequately allege causation for purposes of the FSIA's torts exception.  That provision was not meant "to encompass the farthest reaches of common law." *Burnett v. al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 19 (D.D.C. 2003) (internal quotation marks and emphasis omitted).  Yet, as the D.C. district court concluded in dismissing claims against several Saudi officials, Plaintiffs' claims are based on the allegation that "(i) [Defendants] funded (ii) those who funded (iii) those who carried out the September 11th attacks."  *Id.* at 20.  Accepting that theory of causation "would stretch the causation requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita."  *Id.*

Thus, in the context of this case as a whole, the Second Circuit's now-abrogated holding in *In re Terrorist Attacks* neither inflicted any injustice nor even affected the result.  Even if this Court were to reopen its judgment, Defendants would again be held immune from suit as a matter of law, after being subjected to still more of the litigation that immunity is intended to forestall.  It would disserve the purposes of the FSIA and of Rule 60(b)(6) for this Court to reopen its judgment.

## CONCLUSION

Plaintiffs' motion should be denied.

Respectfully submitted,


/s/ *Mark C. Hansen*
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*



/s/ *Lawrence S. Robbins*
Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
   ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20006
(202) 775-4500
(202) 775-4510 (fax)

*Attorneys for the Saudi High Commission for Relief of Bosnia & Herzegovina*


January 30, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of January 2012, I caused copies of Defendants'

Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Relief of Final

Judgments to be served electronically pursuant to the Court's ECF system and by United States

first-class mail on any parties not participating with the Court's ECF system as thereafter advised

by the Court.


/s/ *Michael K. Kellogg*
Michael K. Kellogg