IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON | CIVIL ACTION NO. |
| SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD) |

-----------------------------------------------------------------x

| | |
|---|---|
| FIONA HAVLISH, in her own right and as Executrix of the ESTATE OF DONALD G. HAVLISH, JR., Deceased, *et al.*, | |
| | CIVIL ACTION NO. 03-CV-9848 – GBD |
| v. | |
| THE ISLAMIC REPUBLIC OF IRAN *et al.* | |

**PLAINTIFFS' DAMAGES INQUEST MEMORANDUM**

# Exhibit L

# SEG

## Smith Economics Group, Ltd.
A Division of Corporate Financial Group
*Economics / Finance / Litigation Support*

*Stan V. Smith, Ph.D.*
*President*

February 14, 2012

Mr. Thomas E. Mellon, Jr.
Mellon Webster & Shelly
87 North Broad Street
Doylestown, PA 18901

    Re: Havlish v. bin Laden – Punitive Damages

Dear Mr. Mellon:

You have asked me to provide you with an assessment of punitive damages in the Havlish matter. As to my expertise on punitive damages, I have made such calculations many times over the past 28 years. I have been deposed several thousand times and I have appeared in court to testify perhaps 500 times in almost every state and in the great majority of the federal judicial circuits. I co-authored the first textbook in forensic economics ("Economic/Hedonic Damages"), and I created and taught the first course in the nation in forensic economics. I have written many hundreds of reports on punitive damages and have been deposed on the majority of these.

It is my understanding that punitive damages or exemplary damages are those damages intended to reform or deter the defendant and others from engaging in conduct similar to that which formed the basis of this lawsuit. In this instance, I consider the Islamic Republic of Iran, Hizballah, and their agencies and instrumentalities to be the defendants.

In order to arrive at an amount of punitive damages that as a consequence would reform or deter the Government of Iran and the other defendants, I have considered the Gross Domestic Product of Iran. According to the CIA World Factbook,[1] the estimated GDP of Iran is $928.9 billion for 2011. The Government of Iran projects GDP growth to average a healthy 8% between 2010 and 2015 in its 5-year economic development plan.[2] Estimates of Iran's oil production are 4.12 million barrels per day, or 1.5 billion barrels per year with a market value of approximately $150 billion dollars annually.[3]

Must economists would agree that a punitive damage award of 2 percent a corporation's gross receipts or of a governments GDP would be an appropriate amount that would serve to deter future undesirable behavior.

---

[1] https://www.cia.gov/library/publications/the-world-factbook/geos/ir.html
[2] http://www.france24.com/en/20100111-iran-five-year-plan-targets-annual-8-growth?quicktabs_1=0
[3] http://www.infoplease.com/ipa/A0922041.html

SEG
_____

In this instance, one week's GDP for Iran would be $17.8 billion. If we consider that one week's GDP, or 2 percent of annual GDP, were to be awarded, this would be equivalent to 6 weeks oil production which is certainly and distinctly affordable to Iran. It would provide punitive damages averaging $380 million for each one of the 47 decedents. I understand there are additional families for whom I have not calculated economic losses. From an economist's point of view, this $17.8 billion punitive-damage award should be apportioned among all the plaintiffs in proportion to their relative compensatory-damage awards.

In my opinion, I consider that this amount, $17.8 billion would serve as a strong deterrent and a measure that would strongly incentivize Iran to produce a reform. I also consider this amount to be affordable to the Government of Iran given that the vast majority of Iran's oil production is government owned.[4]

Economists at the annual meetings of the American Economic Association have frequently debated the issue of punitive damages from a deterrence and reform point of view. I am certain that a majority of my colleagues would agree with me regarding the affordability as well as the reform and the deterrence nature of an award of this size, that is $17.8 billion, in relationship to Iran's annual GDP and daily oil production.

In the alternative, if the court were to take all the compensatory Economic and Non-economic Damages plus interest, amounting to $3,385,776,428, and use one of the following two multipliers, 3.44 and 5.35, punitive damages would be $11,647,070,912 and $18,113,903,890 respectively. The first multiplier is based on the most recent cases against Iran regarding the awarding of punitive damages for acts of terrorism. The second multiplier is based on the recent case, Daimler Chrysler Corp. v. Flax, (272 SW 3d, 521, Tenn. 2008; cert. denied, May 2009), as fully discussed in the accompanying briefs.

Sincerely,

*[signature: Stan V. Smith]*

Stan V. Smith, Ph.D.
President

---

[4] http://en.wikipedia.org/wiki/National_Iranian_Oil_Company