# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

IN RE TERRORIST ATTACKS ON

SEPTEMBER 11, 2001

-----------------------------------------------------------x

FIONA HAVLISH, in her own right
and as Executrix of the ESTATE OF
DONALD G. HAVLISH, JR., Deceased,

RUSSA STEINER, in her own right
and as Executrix of the ESTATE OF
WILLIAM R. STEINER, Deceased,

CLARA CHIRCHIRILLO, in her own right
and as Executrix of the ESTATE OF
PETER CHIRCHIRILLO, Deceased,

TARA BANE, in her own right,

and as Executrix of the ESTATE OF
MICHAEL A. BANE, Deceased,

GRACE M. PARKINSON-GODSHALK, in her
own right and as Executrix of the ESTATE OF
WILLIAM R. GODSHALK, Deceased,

ELLEN L. SARACINI, in her own right
and as Executrix of the ESTATE OF
VICTOR J. SARACINI, Deceased,

THERESANN LOSTRANGIO, in her own right
and as Executrix of the ESTATE OF
JOSEPH LOSTRANGIO, Deceased, *et al.,*

Plaintiffs,

v.

SHEIKH USAMAH BIN-MUHAMMAD
BIN-LADEN, a.k.a. OSAMA BIN-LADEN,

AL-QAEDA/ISLAMIC ARMY,
an unincorporated association, *et al.,*

CIVIL ACTION NO.

03 MDL 1570 (GBD)

CIVIL ACTION NO.
03-CV-9848 – GBD

Case Transferred from the
United States District Court
for the District of Columbia
Case Number 1:02CV00305

**AMENDED**[1]
**PLAINTIFFS' DAMAGES**
**INQUEST MEMORANDUM**

---

[1]  This Amended Plaintiffs' Damages Inquest Memorandum, e-filed and hand-delivered February 15, 2012, supersedes and replaces Plaintiffs' original Damages Inquest Memorandum, ECF No. 2552 (filed February 14, 2012).

*FOREIGN STATE DEFENDANTS:*                          :
                                                     :
THE ISLAMIC REPUBLIC OF IRAN,                        :
                                                     :
AYATOLLAH ALI-HOSEINI  KHAMENEI,                     :
                                                     :
ALI AKBAR HASHEMI RAFSANJANI,                        :
                                                     :
IRANIAN MINISTRY OF                                  :
INFORMATION AND SECURITY,                            :
                                                     :
THE ISLAMIC REVOLUTIONARY                            :
GUARD CORPS,                                         :
                                                     :
HEZBOLLAH,                                           :
an unincorporated association,                       :
                                                     :
THE IRANIAN MINISTRY                                 :
OF PETROLEUM,                                        :
                                                     :
THE NATIONAL IRANIAN                                 :
TANKER CORPORATION,                                  :
                                                     :
THE NATIONAL IRANIAN                                 :
OIL CORPORATION,                                     :
                                                     :
THE NATIONAL IRANIAN                                 :
GAS COMPANY,                                         :
                                                     :
IRAN AIRLINES,                                       :
                                                     :
THE NATIONAL IRANIAN                                 :
PETROCHEMICAL COMPANY,                               :
                                                     :
IRANIAN MINISTRY OF                                  :
ECONOMIC AFFAIRS AND FINANCE,                        :
                                                     :
IRANIAN MINISTRY OF                                  :
COMMERCE,                                            :
                                                     :
IRANIAN MINISTRY OF DEFENSE                          :
AND ARMED FORCES LOGISTICS,                          :

THE CENTRAL BANK OF THE                    :
ISLAMIC REPUBLIC OF IRAN, *et al.*,        :
                                           :
_____Defendants._____:

## *TABLE OF CONTENTS*

|       |                                                  |     |
|-------|--------------------------------------------------|-----|
| I.    | BACKGROUND AND PROCEDURAL HISTORY                 | 1   |
| II.   | JURISDICTION                                     | 3   |
| III.  | STANDARD OF REVIEW                               | 3   |
| IV.   | DAMAGES AVAILABLE                                | 5   |
| V.    | ECONOMIC LOSSES                                  | 6   |
| VI.   | PAIN, SUFFERING AND DEATH OF DECEDENTS           | 7   |
| VII.  | SOLATIUM OF FAMILY MEMBERS                       | 11  |
| VIII. | JUSTIFICATIONS FOR UPWARD ENHANCEMENTS           | 16  |
| IX.   | PUNITIVE DAMAGES                                 | 18  |
| X.    | PREJUDGMENT INTEREST                            | 23  |
| XI.   | PLAINTIFFS' COSTS OF THIS ACTION                 | 26  |
| XII.  | CONCLUSION                                       | 26  |

## *TABLE OF EXHIBITS*

A.  LIST OF CLAIMANTS

B.  CLAIMANTS' DECLARATIONS
    *(PROVIDED ON CD[1])*

C.  EXPERT REPORT OF REAR ADMIRAL ALBERTO DIAZ, M.D. (*U.S. NAVY, RET.*)

D.  CURRICULUM VITAE OF REAR ADMIRAL ALBERTO DIAZ, M.D. (*U.S. NAVY, RET.*)

E.  COVER LETTER OF STAN SMITH, PH.D.

F.  CURRICULUM VITAE OF STAN SMITH, PH.D.

G.  SUMMARY OF CERTIFIED ECONOMIC LOSSES OF EACH PLAINTIFF-DECEDENT

H.  PERSONAL ECONOMIC DATA OF PLAINTIFF-DECEDENTS
    (CONFIDENTIAL - PRODUCED UNDER SEAL. *PROVIDED ON CD[2]*)

I.  LIST OF PLAINTIFFS' PROPOSED COMPENSATORY DAMAGE AWARDS PER CLAIMANT

J.  OPINION LETTER BY STAN SMITH, PH.D. REGARDING PREJUDGMENT INTEREST
    CALCULATIONS

K.  PROPOSED "TOTAL DAMAGES SUMMARY" BY DR. STAN SMITH

L.  SUPPLEMENTAL REPORT OF STAN SMITH REGARDING PUNITIVE DAMAGES

M.  AFFIDAVIT REGARDING PLAINTIFFS' COSTS OF THIS ACTION

---

1 *and* 2  Copies of all materials, including the CDs containing the Declarations and the individual economic reports and backup data, are being delivered to the Clerk of Courts, United States District Court, S.D.N.Y., and to the chambers of United States Magistrate Judge Frank Maas, United States Courthouse, 500 Pearl Street, New York, New York, on February 15, 2012.

*TABLE OF AUTHORITIES*

## Cases:

*Acosta v. Islamic Republic of Iran*, 574 F.Supp.2d 15 (D.D.C. 2008)...............................19

*Acree v. Republic of Iraq*, 271 F.Supp.2d 179 (D.D.C.2003)......................................6, 10, 14

*Anderson v. Islamic Republic of Iran*, 90 F.Supp.2d 107 (D.D.C. 2000).......................13, 14

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 102
    L.Ed.2d 818 (1989)...............................................................................................4

*Baker et al. v. Socialist People's Libyan Arab Jamahirya, et al.*, 775 F.Supp. 2d 48
    (D.D.C., March 30th, 2011)......................................4, ,5, 6, 7, 9, 12, 24, 25

*Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8 (D.D.C. 2009)...................................12

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)................................................23

*Campuzano v. Islamic Republic of Iran*, 281 F.Supp.2d 258 (D.D.C. 2003)............4, 5, 12, 14

*Carlson v. Islamic Republic of Iran*, 201 F.Supp.2d 78 (D.D.C. 2002)...............................16

*Cicippio v. Islamic Republic of Iran*, 18 F.Supp.2d 62 (D.D.C. 1998)..................8, 10, 11, 14

*Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C.Cir. 2004)....................6, 10

*Cielito Valencia, et al. v. Islamic Republic of Iran, et al.*, 774 F.Supp. 2d 1.......................20

*Cronin v. Islamic Republic of Iran*, 238 F.Supp.2d 222 (D.D.C. 2002).........................10, 20

*DaimlerChrysler Corp. v. Flax*, 272 S.W. 3d 521 (Tenn. 2008) *cert denied*,
    May 26, 2009, 129 S.Ct. 2433, 174 L.Ed. 2d 277 ...............................21, 22

*Daliberti v. Republic of Iraq*, 146 F.Supp.2d 19 (D.D.C. 2001).......................................10

*Dammarell v. Islamic Republic of Iran*, 281 F.Supp.2d 105 (D.D.C. 2003).........................12

*Eisenfeld v. Islamic Republic of Iran*, 172 F.Supp.2d 1 (D.D.C. 2000).........................14, 16

*Elahi v. Islamic Republic of Iran*, 124 F.Supp.2d 97 (D.D.C. 2000)...........................5, 9, 12

*Estate of Bland v. Islamic Republic of Iran*, -- F.Supp.2d ---, 2011 WL 6396527
    (D.D.C., December 21, 2011) (Lamberth, C.J.).................13, 14, 15, 20, 21

*Estate of Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229
    (D.D.C. 2006) ("*Heiser I*").........................................................................7, 13

*Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1 (D.D.C. 1998)................. 12, 14, 15, 16, 19

*Gates v. Syrian Arab Republic*, 580 F.Supp.2d 53 (D.D.C. 2008)......................................8

*Greenbaum v. Islamic Republic of Iran*, 451 F.Supp.2d 90 (D.D.C. 2006)......................14, 15

*Haim v. Islamic Republic of Iran*, 425 F.Supp.2d 56 (D.D.C. 2006).............................11, 13

*Haim v. Islamic Republic of Iran*, 784 F.Supp.2d 1 (D.D.C., May 19, 2011).........................5

*Higgins v. The Islamic Republic of Iran*, Not Reported in F.Supp.2d, 2000 WL
    33674311 (D.D.C. 2000).........................................................................15

*Hill v. Republic of Iraq*, 175 F.Supp.2d 36 (D.D.C. 2001)...........................................10

*Hill v. Republic of Iraq*, 328 F.3d 680 (D.C.Cir. 2003)..................................................2

*Hysell v. Iowa Public Service Co.*, 559 F.2d 468 (8th Cir. 1977)......................................8

*In Re Terrorist Attacks on September 11, 2001*, 2001 WL 4903584 (S.D.N.Y. 2011)..............1

*In Re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005)..............1

*Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27 (D.D.C. 2001)..............................10, 14

*Mousa v. Islamic Republic of Iran*, 238 F.Supp.2d 1 (D.D.C. 2001).....................................6

*Murphy v. Islamic Republic of Iran*, 740 F.Supp.2d 51 (D.D.C. 2010)...................6, 7, 14, 21

*Oveissi v. Islamic Republic of Iran*, 768 F.Supp.2d 16 (D.D.C., March 8, 2011)...................14

*Peterson v. Islamic Republic of Iran*, 515 F.Supp.2d 25 (D.D.C. 2007)..............................13

*Phillip Morris USA v. Williams*, 549 U.S. 346 (2007)................................................21
*Polhill v. Islamic Republic of Iran*, Not Reported in F.Supp.2d, 2001, WL 34157508
    (D.D.C. 2001)...................................................................................5, 8, 11
*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.D.C. 2002)...................4
*Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F.Supp.2d 120
    (D.D.C. 2005)...........................................................................................10
*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F.Supp.2d 216
    (D.D.C. 2008)...................................................................5, 7, 8, 11, 17, 24
*Rimkus v. Islamic Republic of Iran*, 750 F.Supp.2d at 163, 184 (D.D.C. 2010)....................21
*Regier v. Islamic Republic of Iran*, 281 F.Supp.2d 87 (D.D.C. 2003)..........................5, 8, 11
*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C.Cir. 2003).................................2, 5
*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)..................23
*Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 301 (D.D.C. 2003)...........................13
*Steen v. Islamic Republic of Iran*, Not Reported in F.Supp.2d, 2003 WL 21672820
    (D.D.C. 2003)............................................................................4, 8, 11
*Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78 (D.D.C. 2002)..........................9, 11
*Surette v. Islamic Republic of Iran*, 231 F.Supp.2d 260 (D.D.C. 2002)..........................10, 13
*Sutherland v. Islamic Republic of Iran*, 151 F.Supp.2d 27 (D.D.C. 2001).......................8, 11
*Taylor v. Washington Terminal Co.*, 409 F.2d 145 (D.C.Cir. 1969)..................................8
*Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52
    (D.D.C. 2010) ("*Valore II*")..................................................4, 5, 13, 15, 20
*Wagner v. Islamic Republic of Iran*, 172 F.Supp.2d 128 (D.D.C. 2001)..............................13
*Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13 (D.D.C. 2002)..................5, 8, 9, 16

**Other Sources:**

§1605A(c)...........................................................................................4, 6
28 U.S.C. §1608(e), *et seq*...........................................................................4, 5
28 U.S.C. §1602, *et seq*................................................................................4

RESTATEMENT (SECOND) OF TORTS § 908(1)-(2)...................................................19, 20

Federal Rule of Civil Procedure 55(e).................................................................2
Federal Rule of Civil Procedure 4....................................................................2

*CIA World Fact Book* (2011)...........................................................................20

PLAINTIFFS NOW COME and seek an award of compensatory and punitive damages for the most outrageous tortious act ever committed on American soil and the most horrific premeditated crime against American citizens in our country's history.  Plaintiffs in this action are family members and legal representatives of the murder victims of the September 11, 2001 attacks.  Plaintiffs have proven the liability of defendants to the satisfaction of this Court.

This Court must now award damages commensurate with the singularly heinous and resonating nature of the 9/11 attacks.  As demonstrated herein, the actions of the defendants caused the Decedents to suffer horrible deaths and inflicted enduring agony upon Plaintiff family members.  In addition to providing reparation for economic loss and the horrific pain and suffering of the victims, damages awarded by the Court must also attempt to compensate family members for individual emotional and mental trauma that will never be fully assuaged.

Based on established precedential case law and this particularly malicious and spectacularly devastating crime against humanity committed by defendants, Plaintiffs deserve the highest possible justifiable compensatory and punitive damage awards.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2001, nineteen members of the al Qaeda terrorist network hijacked four United States passenger airplanes and flew them into the Twin Towers of the World Trade Center in New York City, the Pentagon in Arlington, Virginia, and, due to passengers' efforts to foil the hijackers, an open field near Shanksville, Pennsylvania.  Thousands of people on the planes and in the buildings, including first responders at the New York crash site, were killed in these attacks.  Countless others were injured, and property worth many billions of dollars was destroyed.  See, e.g., *In Re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 779 (S.D.N.Y. 2005, Casey, J.); *In Re Terrorist Attacks on September 11, 2001*, 2001 WL 4903584

(S.D.N.Y. 2011, Maas, J.).

Plaintiffs in this action are one hundred, eleven (111) family members and forty-seven (47) legal representatives of murder victims of the 9/11 attacks. *See List of Plaintiffs attached hereto as **Exhibit** A.* These Plaintiffs sought entry of judgment under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A (the "FSIA"), against the Islamic Republic of Iran, two of its top leaders, Ayatollah Ali Hoseini Khamenei and Ali Akbar Hashemi Rafsanjani, as well as the Iranian Ministry of Information and Security ("MOIS"), the Islamic Revolutionary Guard Corps ("IRGC"), the Iranian Ministry of Petroleum, the Iranian Ministry of Economic Affairs and Finance, the Iranian Ministry of Commerce, the Iranian Ministry of Defense and Armed Forces Logistics, the National Iranian Tanker Corporation, the National Iranian Oil Corporation, the National Iranian Gas Company, Iran Airlines, the National Iranian Petrochemical Company, and the Central Bank of the Islamic Republic of Iran. Plaintiffs also asserted claims against non-sovereign defendants Usama (or Osama) bin Laden, the Taliban, Muhammad Omar, the al Qaeda/Islamic Army, and Hizballah for wrongful death, survival, intentional infliction of emotional distress, and conspiracy.

Plaintiffs' liability evidence was submitted to the Court via written filings on May 19, 2011, July 13, 2001, and August 19, 2011. The Court held an evidentiary hearing on December 15, 2011. On December 22, 2011, Judge George B. Daniels granted the Plaintiffs' motion for a default judgment against all defendants. *Havlish, et al. v. bin Laden, et al.,* No. 03 Civ. 9448 (ECF No. 2516). Judge Daniels further ordered that the case be referred to United States Magistrate Judge Frank Maas "to resolve any remaining issues, including but not limited to damages both compensatory and punitive." Judge Daniels also entered Findings of Fact and Conclusions of Law detailing the basis for his liability rulings. *Id.*

On January 13, 2012, Judge Maas issued a Scheduling Order directing Plaintiffs to file this Inquest Memorandum, accompanied by supporting affidavits and exhibits, setting forth Plaintiffs' proof of damages, including the costs of this action and, if applicable, Plaintiffs' reasonable attorney's fees, together with proposed findings of fact and conclusions of law. *In Re Terrorist Attacks on September 11, 2001*, No 03-MDL- 1570 (ECF No. 2534).

## II.   JURISDICTION

In its Findings of Fact and Conclusions of Law as to liability in this matter, this Court has already determined that it has subject matter and personal jurisdiction over all defendants.  See Plaintiffs' CONCLUSIONS OF LAW, **Section A., ¶¶ 2-16.**[1]

## III.   STANDARD OF REVIEW

This Court has already determined that Plaintiffs have established their *liability* claims "by evidence satisfactory to the court," pursuant to 28 U.S.C. § 1608(e).  Through the supporting Declarations, economic evidence and expert reports attached hereto, Plaintiffs establish the amount of the appropriate compensatory and punitive damage awards under that same evidentiary standard.[2]   In evaluating the Plaintiffs' proof of economic damages, the Court may "accept as true the plaintiffs' uncontroverted evidence."[3]  Further, Plaintiffs may establish proof of damages by affidavit.[4]  Additionally, "FSIA courts may 'take judicial notice of related

---

[1]  See also, *Baker, supra,* 775 F.Supp.2d at 78-84; *Steen v. Islamic Republic of Iran,* Not Reported in F.Supp.2d, 2003 WL 21672820 (D.D.C. 2003); *Campuzano v. Islamic Republic of Iran,* 281 F.Supp.2d 258 (D.D.C. 2003).

[2]  *See Roeder v. Islamic Republic of Iran,* 333 F.3d 228 (D.C.Cir. 2003).

[3]  *Elahi v. Islamic Republic of Iran,* 124 F.Supp.2d 97, 100 (D.D.C. 2000); *Campuzano v. Islamic Republic of Iran,* 281 F.Supp.2d 258, 268 (D.D.C. 2003).

[4]  *Weinstein v. Islamic Republic of Iran,* 184 F.Supp.2d 13, 19 (D.D.C. 2002); *Polhill v. Islamic Republic*

proceedings and records'" *Haim v. Islamic Republic of Iran*, 784 F.Supp.2d 1, 6, quoting *Valore II, supra*, 700 F.Supp.2d at 59. Also, in evaluating the Plaintiffs' request for pain and suffering, solatium damages, and punitive damages, this Court must consider the particular circumstances of this horrific event, as well as similar recent cases which awarded compensatory and punitive damages to victims of terrorist attacks.[5]

In support of this request for awards of compensatory and punitive damages, Plaintiffs submit to the Court Declarations which detail the suffering endured by the victims and surviving family members. See *Exhibit B* attached hereto.[6] These Plaintiff Declarations detail, *inter alia*, the nature (*i.e.*, closeness) of the relationship between the claimants and the decedents, as well as the extreme mental anguish still experienced by the Declarants which is far in excess of that which would have been experienced following the Decedents' natural deaths.

Plaintiffs also hereby submit the expert report of Rear Admiral Alberto Diaz, M.D. Jr., RADM MC USN (*Ret.*). See *Exhibit C,* attached hereto. Dr. Diaz's report details the horrific last hours and minutes of the terrorist victims on September 11, 2001 and the excruciating pain and suffering they endured. Dr. Diaz has served as Commander-in-Chief, Pacific Fleet Surgeon and was the Senior Navy Medical Department Representative in the investigation conducted by the U.S. Navy after the *USS Vincennes* shot down an Iranian Airbus on July 3, 1988. See Report of Alberto Diaz, M.D., § *PRIOR EXPERT TESTIMONY*. Additionally, Dr. Diaz has served as Executive Officer, Medical Director, or Commander of various United States Navy Medical Centers throughout the world. See *Curriculum Vitae* of Alberto Diaz, Jr., RADM MC USN (Ret.), attached hereto as *Exhibit D.*

---

*of Iran*, 2001 WL 34157508 (D.D.C. 2001); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F.Supp.2d 216 (D.D.C. 2008); *Regier v. Islamic Republic of Iran*, 281 F.Supp.2d 87 (D.D.C. 2003).
[5] *Baker, supra*, 775 F.Supp.2d at 83.
[6] Plaintiffs' declarations of damages are numbered in the same order that Plaintiffs appear in *Exhibit A*.

Plaintiffs also hereby submit an expert report (and *curriculum vitae*) from Stan V. Smith, Ph.D., detailing the economic losses suffered by the Decedent Estates, as well as calculations of prejudgment interest.  See **Exhibits E**, **F**, and **J**, attached hereto, *discussed in* **Section V.**, *infra*. Dr. Smith's expert report states that, as a result of the Plaintiff Decedents' untimely deaths, significant economic losses were incurred by their Estates.  See **Exhibit E**, attached hereto. Additionally, Dr. Smith has calculated the appropriate amount of prejudgment interest to be awarded.  See **Section X.**, *infra*, and **Exhibit J**, attached hereto.

## IV.  Damages Available

Damages available under the FSIA-created cause of action include "economic damages, solatium, pain and suffering, and punitive damages."  Many courts have previously assessed these same types of damages against both sovereign and non-sovereign defendants where liability has been established based on the FSIA or common law tort claims.[7]  Accordingly, Decedent Estates can recover economic losses stemming from wrongful death of the Decedent. Estates of Plaintiff Decedents can also recover damages for the intense pain and suffering endured by the Decedents during their survival while trapped in the hijacked airlines or in the burning Twin Towers, as well as for pain and suffering specifically related to the Plaintiff Decedents' horrific deaths.[8]

---

[7]  §1605A(c).  *See, e.g., Baker, supra,* 775 F.Supp.2d at 78-86; *Murphy v. Islamic Republic of Iran,* 740 F.Supp.2d 51 (D.D.C. 2010); *Acree v. Republic of Iraq,* 271 F.Supp.2d 179, 219-220 (D.D.C. 2003) (Roberts, J.), *vacated on other grounds,* 370 F.3d 41 (D.C.Cir. 2004); *Cronin v. Islamic Republic of Iran,* 238 F.Supp.2d 222, 235 (D.D.C. 2002)(Lamberth, J.), *abrogated on other grounds by Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024 (D.C.Cir. 2004); *Mousa v. Islamic Republic of Iran,* 238 F.Supp.2d 1 (D.D.C. 2001)(Bryant, J.).

[8]  See *footnote 7, supra.*

Immediate family members of the deceased can recover solatium for their emotional injuries.[9] Plaintiffs are also entitled to punitive damages[10], prejudgment interest[11], and the costs of bringing this litigation.[12] Plaintiffs are not requesting any attorneys fees in this action.

## V.      Economic Losses

Plaintiffs must be awarded damages for their economic losses stemming from the barbarism of the 9/11 attacks. The beneficiaries of the Estates are entitled to recover the present value of economic damages, including lost wages that the Decedents might reasonably have been expected to earn but for the wrongful death. See, e.g., *Estate of Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006)("*Heiser I*").

In support of Plaintiffs' request for an award of economic damages, Plaintiffs hereby submit extensive economic analyses by Stan V. Smith, Ph.D. that detail the significant economic losses suffered by the Plaintiff Decedent Estates. See *Exhibit E*, attached hereto. Dr. Smith is one of the preeminent authorities on the law of damages and, indeed, co-authored the first textbook in forensic economics ("ECONOMIC / HEDONIC DAMAGES"). He also created and taught the first course in the nation in forensic economics. He has appeared in Court to testify approximately five hundred (500) times in almost every state and in the great majority of the federal judicial circuits.

Dr. Smith's has submitted reports for each of the forty-seven (47) Plaintiff Decedents detailing that, as a result of that Decedents' untimely deaths, significant economic losses were

---

[9]  See, e.g., *Baker, supra,* 775 F.Supp.2d at 83.

[10]  *Baker, supra,* 775 F.Supp.2d at 84-6; *Murphy, supra,* 740 F.Supp.2d at 76-8.

[11]  *Pugh, supra,* 530 F.Supp.2d at 262-5; *Baker, supra,* 775 F.Supp.2d at 86-7.

[12]  See, e.g., *Murphy, supra,* 740 F.Supp.2d at 76-8.

incurred.[13]  Dr. Smith has calculated, using generally accepted accounting methodology, the appropriate economic damages that should be awarded to the Estate of each Plaintiff Decedent. See a summary of the economic losses of each Plaintiff Decedent at *Exhibit G.*

## VI.   Pain and Suffering of Decedents

The Estate of each Decedent must be compensated for the pain and suffering endured by the Decedents during their captivity / entrapment, torture and horrific deaths on September 11, 2001.  The Estates of each decedents, through their legally appointed personal representatives, are entitled to compensation for the pain and suffering endured by each named Decedent as they survived in extreme pain and mental anguish during the attack before their eventual horrible deaths, in addition to the senseless deaths themselves.[14]

Despite the overwhelming evidence concerning the extent of the trauma, death and devastation on September 11, 2001 and the amount of pain and suffering that the Plaintiffs endured, the appropriate amount of damages to award as compensation for this pain and suffering can be difficult to determine with precision.  Indeed, it goes without saying that no monetary judgment would truly compensate these Plaintiffs for the pain and suffering they endured - and many will continue to endure - as a result of the 9/11 terrorist attacks. Notwithstanding the inherent difficulty and subjectivity involved in awarding damages based on

---

[13]  *Curriculum vitae* and a cover letter to the confidential expert reports of Stan Smith, PH.D., are attached hereto at *Exhibits E* and *F.*  The individual financial reports and personal financial records of the Plaintiff decedent estates (which Stan Smith analyzed and from which he reached his economic conclusions) is being provided under seal contemporaneously herewith.  *See Exhibit H.*

[14]  See., e.g., *Cicippio v. Islamic Republic of Iran*, 18 F.Supp.2d 62, 69-70 (D.D.C. 1998); *Sutherland v. Islamic Republic of Iran*, 151 F.Supp.2d 27, 50-3 (D.D.C. 2001); *Polhill, supra,* 2001 WL 34157508 at * 4-6; *Pugh, supra,* 530 F.Supp.2d at 262-74; *Regier, supra,* 281 F.Supp.2d at 100-4; *Steen, supra,* 2003 WL 21672820 at *4-6.

the pain and suffering of a claimant, compensation is required once liability has been determined. *Weinstein, supra*, 184 F.Supp.2d at 22-3; *Gates v. Syrian Arab Republic*, 580 F.Supp.2d 53 (D.D.C. 2008).

Because there is no precise methodology used to calculate damages for pain and suffering, the trier of fact (which in this case is the Court) has a significant amount of discretion in determining the amount of appropriate compensation. See., e.g., *Taylor v. Washington Terminal Co.*, 409 F.2d 145 (D.C.Cir. 1969); *Hysell v. Iowa Public Service Co.*, 559 F.2d 468, 472-73 (8th Cir. 1977); *Gates, supra*, 580 F.Supp.2d at 72.

In making this determination, this Court should not simply award what it abstractly finds to be fair. Rather, in deciding the amount of damages to award in this case, the Court should look at damage awards for pain and suffering in other cases brought under the FSIA and also in personal injury lawsuits arising under a variety of circumstances. *Id.* Prior similar cases in which the court awarded compensatory damages for pain and suffering to the victims of a terrorist act typically fall into two categories: those in which the victim died, and the pain and suffering is awarded for that endured between the attack and the victim's death; and, those in which the victim was held in captivity. The Decedent victims of the September 11, 2001 terrorist attacks should be viewed as fitting into both categories, therefore their pain and suffering and survival damage awards warrant significant upward enhancements.

Several cases have awarded damages for the victim's pain and suffering that occurred between the attack and the victim's death shortly thereafter. In these cases, courts were influenced not only by the length of time that the victim endured physical suffering, but also by

the victims' mental anguish from *the knowledge that death was imminent. Baker, supra,* 775 F.Supp.2d at 81-4.

In recent cases involving kidnapping and captivity, courts have awarded pain and suffering damages to victims who were held captive and/or tortured for their pain and suffering during and after captivity.  In these cases, courts typically determine the pain and suffering award by multiplying a *per diem* amount by the number of days in captivity.[15]  Most commonly, however, in cases involving brutal acts - such as the 9/11 attacks - courts find that the *per diem* amount will not adequately compensate victims for the pain and suffering endured both during and after their captivity.  In these cases, courts often supplement the product of the *per diem* formula with a lump sum in order to reach the final damage award.[16]  An alternative manner of dealing with the inadequacy of *per diem* awards is to simply grant a lump sum award in lieu of any *per diem* damages.[17]

---

[15] See *Daliberti v. Republic of Iraq,* 146 F.Supp.2d 19, 25-26 (D.D.C. 2001)(Oberdorfer, J.)(awarding damages for pain and suffering both during and after captivity at **$10,000 per day** of captivity); *Jenco v. Islamic Republic of Iran,* 154 F.Supp.2d 27, 37 (D.D.C. 2001)(Lamberth, J.)(awarding damages for pain and suffering both during and after captivity at **$10,000 per day** of captivity).

[16] See *Price v. Socialist People's Libyan Arab Jamahiriya,* 384 F.Supp.2d 120, 135-36 (D.D.C. 2005) (Lamberth, J.)(awarding damages to victims of long-term brutal kidnapping and torture for pain and suffering both during and after captivity by adding lump sum of **$7 million** to product of **$10,000** *per diem* formula);
*Surette v. Islamic Republic of Iran,* 231 F.Supp.2d 260, 269 (D.D.C. 2002)(awarding damages to victim of kidnapping for pain and suffering by adding lump sum of **$1 million** for the time that victim faced certain death alone to product of **$10,000** *per diem* formula);
*Hill v. Republic of Iraq,* 175 F.Supp.2d 36, 47-48 (D.D.C. 2001)(Jackson, J.), *rev'd on other grounds,* 328 F.3d 680 (D.C.Cir. 2003), (awarding damages to "constructive hostages" by adding lump sum of between **$100,000** and **$500,000** to product of **$3,000 to $5,000** *per diem* formula).

[17] See *Acree, supra,* 271 F.Supp.2d at 219-220 (awarding damages for pain and suffering to victims of torture while POWs by adding lump sum of between **$10-20 million** for period of captivity to lump sum of between **$2-5 million** for the period after captivity, depending on length of confinement, brutality of treatment, and severity of remaining psychological injuries);
*Cronin v. Islamic Republic of Iran,* 238 F.Supp.2d 222, 235 (D.D.C. 2002)(Lamberth, J.), *abrogated on other grounds by Cicippio-Puleo, supra,* 353 F.3d 1024, (awarding lump sum of **$1.2 million** in damages for pain and suffering to victim of kidnapping and torture);
*Cicippio, supra,* 18 F.Supp.2d at 69-70 (awarding lump sum of approximately **$3-19 million** in damages for pain and suffering to victims of kidnapping and torture).

When the period of the victim's pain, suffering and trauma was longer, the awards have increased.[18] Courts have been influenced not only by the length of time that the victim endured physical suffering, but by the victim's mental anguish stemming from the knowledge that death was imminent.

For example, in *Pugh v. Socialist People's Libyan Arab Jamahiriya, supra,* an action was brought under the FSIA against Libya for wrongful death, intentional infliction of emotional distress, and loss of consortium by estates and survivors of American passengers killed in the bombing of a French airliner in Africa. 530 F.Supp.2d at 219-62. The District Court ruled that the estates of the seven U.S. citizens who died in the bombing were entitled to recover the present value of the economic losses resulting from their wrongful deaths and that prejudgment interest would be awarded. *Id.*, 530 F.Supp.2d at 263-4. Further, the *Pugh* court determined that the appropriate awards to passengers' estates was economic damages plus **$18 million** to each estate for the decedent's pain, suffering and death. *Id.*, 530 F.Supp.2d at 263-4. Applying this established framework, courts have consistently awarded terrorism victims who were killed after a brief captivity in excess of **$18 million**.[19]

---

[18] See, e.g., *Haim v. Islamic Republic of Iran*, 425 F.Supp.2d 56, 71–72 (D.D.C. 2006)(citing *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 91 (D.D.C. 2002) (awarding **$1.5 million** for pain and suffering endured over a 15-hour period in which the victim was repeatedly beaten before being shot).

[19] See also:
*Cicippio, supra,* 18 F.Supp.2d at 62 (three kidnap victims were awarded a combined **$45 million** in compensatory damages for their pain and suffering);
*Sutherland, supra,* 151 F.Supp.2d at 27 (hostage awarded compensatory damages of **$23,540,000**);
*Polhill, supra,* Not Reported in F.Supp.2d, 2001 WL 34157508 at *1 (In action against Iran for captivity of Robert Polhill, he was awarded **$15 million**);
*Regier, supra,* 281 F.Supp.2d at 87 (Abductee was awarded compensatory damages of **$24,540,000**);
*Steen, supra,* 2003 WL 21672820 at *1 (D.D.C. 2003)(kidnap victim awarded $27,750,000; a rate of **$10 thousand for each day plus an additional $10 million**);
*Campuzano, supra,* 281 F.Supp.2d at 272-8 (Plaintiffs who survived bombing were entitled to damages up to **$15,000,000** *each* for past and future pain and suffering.).

The attached report by Rear Admiral Alberto Diaz, M.D. details the physical and psychological damages suffered by the victims during the final hours and minutes of their lives and is attached hereto as ***Exhibit C.***  Dr. Diaz has drawn upon his extensive clinical experience and upon medical literature regarding the physiology of fear, severe pain, trauma and the enduring effects on survivors, families and friends.  He also discusses the neurophysiology and psychology of extreme fear and impending doom and their effects on victims' perceptions of time.

Based on the FSIA precedent and the extraordinary nature of the 9/11 Decedents' suffering, as discussed by Dr. Diaz, Plaintiffs propose that the estates of each decedent be awarded **$18 million** for their pain and suffering, in addition to their proven economic losses. This amount is consistent with prior awards to decedents in terror cases, especially in light of the upward enhancements justified by the brutality and scope of the 9/11 attacks.

## VII.   Solatium of Family Members

Those Plaintiffs who are family members of murder victims on September 11, 2001 are entitled to recover compensatory damages for solatium.[20]  Solatium is awarded to compensate the "the mental anguish, bereavement[,] and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent['s] society and comfort." *Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 22 (D.D.C. 2009)(citing *Dammarell v. Islamic Republic of Iran*, 281 F.Supp.2d 105, 196-7 (D.D.C. 2003); *Elahi, supra*, 124 F.Supp.2d at 110).  Damages for solatium belong to the

---

[20]  See, e.g., *Baker, supra*, 775 F.Supp.2d at 83.

individual heir personally for injury to the feelings and loss of a decedent's comfort and society. *Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1, 29 (D.D.C. 1998).

In determining the amount of compensatory damages awards to family members of a surviving victim, this Court has held that these awards are determined by the "nature of the relationship" between the family member and victim, and "the severity of the pain suffered by the family member." *Haim, supra*, 425 F.Supp.2d at 75; *Estate of Heiser* ("*Heiser I*"), *supra*, 466 F.Supp.2d at 229. "Furthermore, in determining the appropriate compensatory damages for each plaintiff's pain and suffering, courts are guided not only by prior decisions awarding damages for pain and suffering, but also by those which awarded damages for solatium.[21]

Compensatory damages awards to family members for their pain and suffering must be determined by the nature of the relationship and the severity and duration of the pain suffered by the family member.

Courts have developed a standardized approach for FSIA solatium claims. For instance, the court in *Heiser v. Islamic Republic of Iran* ("*Heiser I*"), surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F.Supp.2d 229, 269 (2006); *Estate of Bland v. Islamic Republic of Iran*, -- F.Supp.2d ---, 2011 WL 6396527 (D.D.C. 2011). Relying upon the average awards, the *Heiser I* Court articulated a framework in which spouses of deceased victims were awarded

---

[21] *Cf. Wagner v. Islamic Republic of Iran*, 172 F.Supp.2d 128, 135 n. 11 (D.D.C. 2001)(Jackson, J.) (noting that, in an intentional homicide case, "solatium appears in any event to be indistinguishable from the intentional infliction of emotional distress"); *see also Surette, supra*, 231 F.Supp.2d at 267 n. 5 ("In the context of FSIA cases, this Court has recognized the claim of solatium as... indistinguishable from the claim of intentional infliction of emotional distress."); *Haim, supra*, 425 F.Supp.2d 56.

approximately $8 million, while parents received $5 million and siblings received $2.5 million. *Id.*; See also *Valore II, supra,* 700 F.Supp.2d at 85 (observing that courts have "adopted the framework set forth in *Heiser [I]* as 'an appropriate measure of damages for the family members of victims'")(quoting *Peterson v. Islamic Republic of Iran,* 515 F.Supp.2d 25, 51 (D.D.C. 2007)); *Stern v. Islamic Republic of Iran,* 271 F.Supp.2d 286, 301 (D.D.C. 2003).  In addition to spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings;[22] there are two additional considerations discernable from the case law: a.) families of hostage or captivity victims are also typically awarded greater damages than are the families of victims of a single attack;[23] and b.) families of victims who have died are typically awarded greater damages than families of victims who remain alive.[24]

Courts have consistently held that prior pain and suffering awards should be a guide and not adhered to blindly. *"These numbers, however, are not set in stone." Greenbaum v. Islamic Republic of Iran,* 451 F.Supp.2d 90, 108 (D.D.C. 2006) (Lamberth, J.)(*emphasis added*); *Estate of Bland v. Islamic Republic of Iran,* -- F.Supp.2d ---, 2011 WL 6396527 at *8 (D.D.C., December 21, 2011)(Lamberth, C.J.); *Murphy, supra,* 740 F.Supp.2d at 79.  Deviations may be warranted when, *inter alia,* "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given

---

[22] *Compare, e.g., Anderson v. Islamic Republic of Iran,* 90 F.Supp.2d 107, 113 (D.D.C. 2000)(Jackson, J.)(awarding **$10 million** to the wife of a hostage and torture victim); *Cicippio, supra,* 18 F.Supp.2d at 70 (same), with *Eisenfeld v. Islamic Republic of Iran,* 172 F.Supp.2d 1, 8 (D.D.C. 2000)(Lamberth, J.)(awarding **$5 million** each to the parents and **$2.5 million** each to the siblings of victims of a suicide bombing on a passenger bus); see also *Flatow, supra,* 999 F.Supp. at 31 (awarding parents each **$5 million** and siblings each **$2.5 million** of victim who was killed in passenger bus bombing).

[23] *Compare, e.g., Anderson, supra,* 90 F.Supp.2d at 113 (awarding **$10 million** to the wife of a hostage and torture victim) with *Campuzano, supra,* 281 F.Supp.2d at 277 (awarding to the wife of a bombing victim compensatory damages for solatium in the amount of **$6 million**).

[24] *See, e.g., Jenco, supra,* 154 F.Supp.2d at 38 (relying on this distinction in granting awards of **$1.5 million** to siblings of a kidnapping victim who was eventually safely returned).

the familial relationship; medical proof of severe pain, grief or suffering on behalf of the

claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the

suffering particularly more acute or agonizing." *Oveissi v. Islamic Republic of Iran*, 768

F.Supp.2d 16, 26–27 (D.D.C., March 8, 2011).  Additionally, as the Court noted in *Greenbaum*,

*supra*, "larger awards are typically reserved for cases with aggravating circumstances that

appreciably worsen the surviving spouse's pain and suffering, such as cases *involving torture or*

*kidnapping of a spouse*." 451 F.Supp.2d at 108 (citing *Cicippio, supra*, 18 F.Supp.2d at 70;

*Acree, supra*, 271 F.Supp.2d at 222)(*emphasis added*).  The Court may award greater amounts in

cases "with aggravating circumstances," indicated by such things as "[t]estimony which

describes a general feeling of permanent loss or change caused by decedent's absence" or

"[m]edical treatment for depression and related affective disorders," *Flatow, supra*, 999 F.Supp.

at 31; *Greenbaum, supra*, 451 F.Supp.2d at 108.  Significant upward enhancement departures are

also warranted in cases with "circumstances that appreciably worsen" a claimant's "pain and

suffering, such as cases involving torture or kidnapping" of the party to whom extreme and

outrageous conduct was directed.[25]

 The accompanying Declarations by the surviving Claimants in this matter detail the

traumatic effects that the 9/11 attacks and their loss of a loved one continue to cause Claimants

today.  See *Exhibit B*.  Further, Dr. Diaz's accompanying report details the aggravating

circumstances – such as the mental effects of knowing death was imminent and the horrible

physical effects of the deaths themselves – that continue to appreciably worsen the surviving

---

[25] *Greenbaum, supra*, 451 F.Supp.2d at 108 (departing upward from **$8 million** to **$9 million** in a
 widower's award upon consideration of "the severity of his pain and suffering due to the loss of his
 wife and unborn first child"); *Estate of Bland, supra*, 2011 WL 6396527 at * 9 (upward departure to
 **$8 million** award warranted by severe injuries sustained by a service member in bombing to United
 States Marine barracks in Beirut, Lebanon on October 23, 1983).

family members' pain and suffering.  See *Exhibit C*.  Claimants here suffered great personal loss due to the captivity, suffering *and* death of family members dearly loved and all suffered the particularly devastating and uniquely acute suffering warranting upward enhancement departures.  *See, e.g., Valore II, supra*, 700 F.Supp.2d at 86.

In *Flatow, supra*, 999 F.Supp. at 1, the district court held that a claim for solatium includes claims for the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death.  Besides considering the nature of the relationship, the *Flatow* court held that death as a result of terrorism, with its attendant horrific surrounding circumstances, *prevents the anguish from subsiding*.  See also, *Higgins v. The Islamic Republic of Iran*, Not Reported in F.Supp.2d, 2000 WL 33674311 (D.D.C. 2000).  This is corroborated in this matter by the report of Dr. Diaz, attached as *Exhibit C*.

In calculating damages for loss of solatium in the case of a deceased family member, courts has considered a variety of factors to include: (1) whether the decedent's death was sudden and unexpected; (2) whether the death was attributable to negligence or malice; (3) whether the claimants have sought medical treatment for depression and related disorders resulting from the decedent's death; (4) the nature (*i.e.*, closeness) of the relationship between the claimant and the decedent; and (5) the duration of the claimants' mental anguish in excess of that which would have been experienced following the decedent's natural death.  *Flatow, supra*, 999 F.Supp. at 30–31.

The "sudden and unexpected" quality of a death - as, of course, occurred in this case - may also be taken into consideration in gauging the emotional impact to those left behind.  *Eisenfeld, supra*, 172 F.Supp.2d at 8-9; *Weinstein, supra*, 184 F.Supp.2d at 23.  The murder of

- 15 -

thousands of Americans was both sudden and unforeseen by their loved ones and the consequences of the terrorists' actions upon them all the more intense.[26] That defendants acted with extreme malice is unquestioned.

Therefore, based on established precedential case law and based on the malicious and spectacularly devastating crime against humanity committed by defendants, Plaintiffs propose the following family members be awarded the following amounts for solatium:

| *Relationship to Decedent* | *Proposed Pain and Suffering / Solatium Award* |
|:---:|:---:|
| Spouse | **$12,500,000** |
| Parent | **$8,500,000** |
| Child | **$8,500,000** |
| Sibling | **$4,250,000** |

These amounts proposed by Plaintiffs are consistent with amounts previously awarded in previous terrorist cases and consistent with the outrageousness of the 9/11 attacks. For example, in *Pugh, discussed supra,* the District Court ruled that the appropriate award to deceased terrorism victims' spouses included **$26 million** for pain, suffering and loss of consortium. 530 F.Supp.2d at 266-74. The *Pugh* Court further ruled that the appropriate award to deceased terrorism victims' children included **$10 million** for pain and suffering; the appropriate award to deceased terrorism victims' parents included **$5 million** for pain and suffering; and the appropriate award to deceased terrorism victims' siblings included **$8 million** for pain and suffering. *Id.*

---

26 See also, *Carlson v. Islamic Republic of Iran,* 201 F.Supp.2d 78 (D.D.C. 2002).

## VIII.  Justifications for Upward Departures

The Plaintiffs in this case should receive awards that are at least as high, or higher, as the awards in any terrorism case.  This world-changing incident deserves all possible upward enhancements to the compensatory and punitive precedents already established against Iran and other sponsors of terrorism.

This case involves United States civilians on American soil; not military personnel, members of a peace-keeping force or independent contractors on hostile foreign soil, as many of the previous cases have been.

The most fundamental aim of terrorism is to instill fear and trepidation; in this, the September 11, 2001 terrorist attack was, in significant ways, successful.  Not only was 9/11 a horrific crime, indeed the most devastating act of terrorism in world history, but it changed the way of life for every American, and almost every person in the Western world.

Never had any terrorist attack claimed more casualties; never had any terrorist attack targeted more than two locations simultaneously; never had a terrorist attack caused the degree of destruction of property and wealth that 9/11 did.  Never had any terrorist attack been so effective in creating havoc within, or causing change to, an entire society.

The Plaintiffs were among those who paid the immediate price for this terrorist effect, and it is the Plaintiffs who are, and forevermore will be reminded constantly that the cruel and terrible deaths of their loved ones affected entire populations, entire generations.

The surviving family members are reminded of this fact not only every September 11th when the event is commemorated annually, but virtually each and every day of the year: hardly a

day goes by without some reminder of the horrible deaths of their loved ones on September 11, 2001. There are so many cultural, media, commercial, and interpersonal references to 9/11 that it has become commonplace, part of the vernacular of our times. It is impossible to travel by airplane without clear reminders of 9/11 (including the "9/11 tax" imposed to assist funding of the Transportation Security Administration), and large office buildings, sports stadiums, transportation hubs, cultural centers - almost any place where people congregate - have enhanced security that derives directly from 9/11. Terrorism awareness campaigns are now ubiquitous, advertised in public places, transportation systems, and highways. The entire federal government was reorganized around "homeland security." Each of these serves as a constant painful reminder to those who lost loved ones on September 11, 2001.

Moreover, although the survivors now have a memorial in New York City, another at the Pentagon in Arlington, Virginia, and others located throughout the country, many of the family members can visit no cemetery as the final resting place of their deceased loved ones. Closure may never occur for many of the survivors of the victims of the attacks of September 11, 2001.

## IX.    Punitive Damages

According to the Restatement (Second) of Torts, the purpose of punitive damages is "to punish" a defendant for "outrageous conduct," and "to deter him and others like him from similar conduct in the future." RESTATEMENT (SECOND) OF TORTS § 908 (1) (1977); *see also Acosta v. Islamic Republic of Iran*, 574 F.Supp.2d 15, 30 (D.D.C. 2008). Courts evaluate four factors in determining a proper punitive damages award: "(1) the **character** of the defendant's act, (2) the **nature** and **extent** of harm to the plaintiffs that defendants caused or intended to cause, (3) the

need for **deterrence**, and (4) the **wealth** of the defendants." *Acosta, supra,* 574 F.Supp.2d at 30 (quoting *Flatow, supra,* 999 F.Supp. at 32).

In the instant case, the two hundred, seventy-six (276) Findings of Fact so ordered on December 22, 2011 by the Honorable George B. Daniels demonstrates by clear and convincing evidence that Iran/Hezbollah and their agents and instrumentalities supported, protected, harbored, aided, embedded, enabled, sponsored, trained, conspired with and facilitated the travel of al-Qaida for the purpose of murdering American citizens on September 11, 2001.

Accordingly, the **character, nature and extent** of these acts clearly merit punitive damages. *See, e.g., Cronin, supra,* 238 F.Supp.2d at 235. Iran continues to fund terrorist organizations including al-Qaida as noted by Dr. Patrick Clawson in his Affidavit, Exhibit 8, dated June 25, 2010 submitted May 19, 2011 to Judge Daniels. Clawson states:

> "[I]n my expert opinion a minimum estimate for Iran's spending
> on terrorism would be the amount used in the United States
> Department of State Country Reports on Terrorism for Iran's
> support to Hezbollah; *i.e.,* $200 million a year... a more likely
> estimate of the financial material support provided by Iran in
> support of terrorism is $400 million a year though given the
> imprecise evidence, I would feel more comfortable estimating a
> range of $300 million to $500 million a year rather than any one
> figure."

Thus, not only is there a need for **deterrence** but there is evidence that the defendant has substantial **wealth**. In fact, the Iranian natural gas and oil reserves are the second and third largest in the world, respectively. The Iranian gross national product is estimated to be $928.9 billion by the *CIA World Fact Book* (2011). In short, the requirements for punitive damages contained in the RESTATEMENT (SECOND) OF TORTS § 908 (1) are fully complied with this case.

According to the Congressional Research Service (August 2008) there have been over thirty (30) cases that have awarded punitive damages against Iran for acts of terrorism since 1997.  The law involving punitive damages is now reasonably well-settled,- as explained in two of the most recent opinions, *Cielito Valencia, et al. v. Islamic Republic of Iran, et al.,* 774 F.Supp.2d 1 and *Estate of Bland, supra,* 2011 WL 6396527 at *6.  On March 31, 2010, in *Valencia,* the court noted that the compensatory damage-punitive damage ratio of 3.44 was established in an earlier FSIA case, *Valore II, supra,* 700 F.Supp.2d at 87-90.

On December 21, 2011, Royce C. Lamberth, Chief Judge, ordered punitive damages applying the ratio of 3.44 to the compensatory damages.  *See Estate of Bland, supra.*  The Court noted the need to deter the actions of the Iranian defendants in planning, supporting and aiding the execution of terroristic attacks.  *See also, Rimkus v. Islamic Republic of Iran,* 750 F.Supp.2d at 163, 184 (D.D.C. 2010).  Judge Lamberth stated in *Estate of Bland, supra*:

> To accomplish this goal, this court - relying on the Supreme Court's opinion in *Phillip Morris USA v. Williams,* 549 U.S. 346 (2007) - held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy,* 740 F.Supp.2d at 76.  Thus, in *Murphy* this Court applied the ratio of $1.00:$3.44 established in *Valore [II]* - an earlier FSIA case arising out of the Beirut bombing. *Id.* at 82-83 (citing *Valore [II],* 700 F.Supp. 2d at 52).  Here, the Court will again apply this same $1.00:$3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing.

However, the attacks that occurred on September 11, 2001 on the Plaintiffs individually and our nation collectively is like no other in American history.  The savagery and suffering caused on September 11, 2001 has no parallel in American jurisprudence.  The act of terrorism imposed a sentence of death or horrific physical and psychological injury on victims.  Such injuries involve a lifetime of unimaginable grief and immeasurable sorrow.  Indeed, the whole of

humanity calls out the full measure of condemnation and punishment by this Court. Therefore, the Plaintiffs respectfully request the Court's consideration for a multiplier of 5.35 predicated on the United States Supreme Court's denial for a *writ of certiorari* to review a decision from the Supreme Court of Tennessee that upheld an award which amounted to a 5.35-to-1 ratio of punitive damages to actual damages. *See DaimlerChrysler Corp. v. Flax,* 272 S.W.3d 521 (Tenn. 2008), *cert denied, May 26, 2009, 129 S.Ct. 2433, 174 L.Ed. 2d 277.*

The *DaimlerChrysler Corp.* case arose out of a motor vehicle accident in June 2001, which resulted in the death of an eight-month-old baby. Plaintiffs, the parents of the decedent, filed suit alleging wrongful death and negligent infliction of emotional distress (NIED) against the other driver involved in the accident and against DaimlerChrysler Corp., who was the manufacture of plaintiffs' 1998 Dodge Caravan. The jury assigned fault evenly against the defendant driver (for speeding) and DaimlerChrysler Corp. (for defective design of the car seats), and awarded plaintiffs $5 million in compensatory damages for their wrongful death claim, and $2.5 million damages for their NIED claim. During the second phase of the trial, evidence was presented that DaimlerChrysler Corp. was aware of the defective design of their car seats, they failed to warn customers, they hid evidence of the defective design, and they continued to market the Caravan as a vehicle that put safety first. The jury awarded punitive damages against DaimlerChrysler Corp. in the amount of $65.5 million for the wrongful death claim and $32.5 million for the NIED claim. The trial judge remitted the punitive damages down to $13,367,345.00 for the wrongful death claim and $6,632,655.00 for NIED.

On appeal, the Tennessee Court of Appeals reversed, holding that there was insufficient evidence to award any damages pertaining to the NIED claim. Further, the court held that there

was not clear and convincing evidence that DaimlerChrysler Corp. acted recklessly or intentionally in order to warrant punitive damages, and struck the entire punitive damages award.

On further appeal, the Supreme Court of Tennessee affirmed the court of appeal's holding pertaining to the NIED. However, they reversed the portion of the decision pertaining to punitive damages. Holding that there was in fact sufficient evidence to support a finding of punitive damages, the court reviewed whether the size of the punitive damages award was excessive in violation of the due process standards set out by United States Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996) and *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408 (2003). Specifically, the court relied on the first two guideposts set out in *Gore* and *Campbell* (the reprehensibility of the defendant's conduct; and the ratio between the punitive damage award and the compensatory damages).

With regard to the first guidepost, the court noted that the evidence in this case "clearly demonstrates that [DaimlerChrysler Corp.'s] conduct was reprehensible." As to the second guidepost, the court noted that the punitive-to-compensatory ratio was 5.35-to-1 and acknowledged the language of the Supreme Court decisions in *Gore* (suggesting that a ratio of greater than 4-to-1 approaches the outer limits of constitutionality) and *Campbell* (suggesting that a ratio of 1-to-1 may be all that is permissible in cases where compensatory damages are "substantial"). However, the court also noted that in *Campbell* the Supreme Court declined to adopt a fixed mathematical formula to determine the appropriateness of punitive damages and stated that "the precise award in any case, of course, must be based upon the facts and circumstances of defendant's conduct and the harm to the plaintiff." The Tennessee court held that in light of the first two guideposts, the ratio of 1 to 5.35 would be warranted in the case, noting that the evidence pertaining to the defendant's conduct demonstrated their conduct was

- 22 -

reprehensible and the harm to the plaintiffs in this case was tragic (the death of an eight-month-old baby).  Respectfully, the hideous, monstrous events of September 11, 2001 far exceeds the tragedy contained in the *DaimlerChrysler Corp* case.

The proposed compensatory award in this case is **$3,385,776,428** (including prejudgment interest, see **Section X.**, *infra*).[27]  Accordingly, applying a compensatory to punitive damage ratio of **1:3.44** totals **$11,647,070,912.**

The reasonableness of the Plaintiffs' request for a compensatory to punitive damage ratio of **1:5.35** is further demonstrated by the expert report of Stan V. Smith, PhD, attached hereto as **Exhibit L**.  Taking an entirely different economic viewpoint consistent with the American Economic Association, Dr. Smith analyzes the Gross Domestic Product of Iran which is nearly one trillion dollars.  Consistent with economist principles involving punitive sanctions against corporations, Dr. Smith suggests a two percent (2%) sanction as applied to the GDP resulting in a punitive damage award of **$17.8 billion**.  The application of the compensatory to punitive damages ratio of **1:5.35** presents a punitive damage number of **$18.1 billion**.  Dr. Smith's approach thereby demonstrates the reasonableness of the **1:5.35** ratio.  Stated otherwise, a multiplier of **5.35** renders an **$18.1 billion** result whereas the two percent of one week's GDP for Iran renders **$17.8 billion**.  Relatively speaking, the two different approaches render the same result.  Hence, the Plaintiffs pray for a **5.35** multiplier sanction or a two percent of GDP as the appropriate sanction for the atrocities of the events of September 11, 2001.

---

[27]  Also see "Total Damages Summary" prepared by Dr. Stan Smith at **Exhibit K**, attached hereto.

However, Plaintiffs pray this court to apply a compensatory to punitive damage ratio of **1:5.35** for the reasons noted above. Therefore, Plaintiffs pray the Court for a total award of **$18,113,903,889.**

## X.    Prejudgment Interest

In the case of *Baker, supra,* the Court addresses the award of prejudgment interest. The Honorable John M. Facciola, United States Magistrate Judge, notes it is within the Court's discretion to award Plaintiffs prejudgment interest **from the date of the attacks (September 11, 2001) until the date of final judgment. Not only is the decision to award prejudgment interest in the discretion of the Court but how to compute that interest also rests with the Court subject to equitable considerations**. *Baker, supra.* Such prejudgment awards compensate the victims for any delay due to litigation and prevent Iran from profiting from its long history of terrorist attacks. Federal Courts in the District of Columbia have awarded prejudgment interest in cases where the victims "were delayed in recovering compensation for their injuries-including, specifically, where such injuries result in targeted attacks perpetrated by foreign defendants." *Pugh, supra,* 530 F.Supp.2d at 263.

Plaintiffs respectfully submit the expert report from Dr. Stan Smith who analyzed the applicable interest calculations. See Dr. Smith Report on Prejudgment Interest, attached hereto as *Exhibit J*.

Plaintiffs have sustained injuries involving pain and suffering by victims in the September 11, 2001 attacks as well as the lifelong emotional distress of their immediate families as addressed by solatium claims. Accordingly, Plaintiffs urge this Court to award prejudgment interest on damages for solatium and pain and suffering computed consistent in the expert report of Dr. Stan Smith. *See Exhibit J.,* attached; *Baker, supra,* 775 F.Supp.2d at 86-7.

- 24 -

The total compensatory damage award (economic plus non-economic) plus interest, is **$3,385,776,428**. See "Total Damages Summary" prepared by Dr. Stan Smith at ***Exhibit K***, attached hereto. Accordingly, applying a compensatory to punitive damage ratio of **1:3.44** totals **$11,647,070,912**.

However, the Plaintiffs pray this Court to award full compensatory damages (economic and non-economic) plus totaling **$3,385,776,428** - plus a **1:5.35** damages ratio for a total award of **$18,113,903,889**.

## XI.   PLAINTIFFS' COSTS OF THIS ACTION

Plaintiffs are also entitled to reimbursement of the costs of bring this litigation.[28]

Plaintiffs' costs of this action thus far are **$1,977,846.49**. See Affidavit of Thomas E. Mellon, Jr., Esquire regarding Plaintiffs' costs of this action, attached hereto as ***Exhibit M***.

Plaintiffs are not requesting any statutory attorneys fees in this action in as much as Plaintiffs have executed contracts with their counsel.

## XII.   CONCLUSION

Plaintiffs should be awarded damages for the unspeakable horrors committed on September 11, 2001 attacks. Plaintiffs have proven the liability of defendants to the satisfaction of this Court. This Court must now award damages commensurate with the devastating nature of the 9/11 attacks and the pain and suffering endured by the Plaintiff Decedents that day, as well as

---

[28]  See, e.g., *Murphy, supra,* 740 F.Supp.2d at 77 (D.D.C. 2010).

by their family members on a daily basis to this day and for many years to come.[29]

Respectfully Submitted,

/s/ Thomas E. Mellon, Jr.
Thomas E. Mellon, Jr. (PA Bar No. 16767)
John A. Corr (PA Bar No. 52820)
Stephen A. Corr (PA Bar No. 65266)
Thomas E. Mellon, III (PA Bar No. 81631)
MELLON WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
(215) 348-7700

Walter S. Batty, Jr. (PA Bar No. 02530)
c/o MELLON WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
(215) 348-7700

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS QUINN
  & PANTAZIS, PLLC
1850 M Street, NW, Suite 720
Washington, DC  20009
(202) 467-4123

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB-3739-R71M)
WIGGINS CHILDS QUINN
  & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105

---

[29] Please also see Plaintiffs' proposed Findings of Fact and Conclusions of Law and proposed Order, submitted to the Court contemporaneously herewith.

Indianapolis, IN  46260
(317) 582-0000

J.D. Lee (TN Bar No. 2030)
David C. Lee (TN Bar No. 015217)
LAW OFFICE OF J.D. LEE
422 South Gay Street, 3rd Floor
Knoxville, TN  37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS YEGELWEL, P.A.
233 East Bay Street
Blackstone Building, 8th Floor
Jacksonville, FL  32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
LAMM RUBENSTONE LLC
3600 Horizon Boulevard, Suite 200
Trevose, PA  19053
(215) 638-9330

Donald J. Winder (UT Bar No. 3519)
Jerald V. Hale (UT Bar No. 8466)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. Box 2668
Salt Lake City, UT  84110-2668
(801) 322-2222

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MEYERS, MIELKE
  & FLOWERS, LLC
3 North Second Street, Suite 300
St. Charles, IL  60174
(630) 232-6333
(630) 845-8982

*Attorneys for the Havlish Plaintiffs*