Case 1:03-md-01570-GBD-FM Document 2564-3 Filed 03/06/12 Page 1 of 8

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 11 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                       :
In re Terrorist Attacks on September 11, 2001    :     MEMORANDUM DECISION AND
                                       :                   ORDER
                                       :
                                       :          03 MDL 1570 (GBD)(FM)
                                       :
                                       :
                                       :
                                       :
                                       :
                                       :
                                       :
------------------------------------- X

This document relates to:

*Ashton v. Al Qaeda Islamic Army*, No. 02-CV-6977 (GBD) (FM)
*Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 03-CV-9849 (GBD) (FM)
*Continental Casualty v. Al Qaeda Islamic Army*, No. 04-CV-5970 (GBD) (FM)
*Euro Brokers v. Al Baraka Inv. & Dev. Corp.*, No. 04-CV-7279 (GBD) (FM)
*Federal Insurance v. Al Qaida*, No. 03-CV-6978 (GBD) (FM)
*World Trade Center Properties, L.L.C. v. Al Baraka Inv. & Dev. Corp.*, No. 04-CV-7280
(GBD) (FM)

GEORGE B. DANIELS, District Judge:

In this multi-district litigation, Plaintiffs seek to hold multiple defendants who allegedly aided, abetted, sponsored, conspired to sponsor, financed, or otherwise provided material support to Osama Bin Laden and the terrorist organization al Qaeda, liable for the physical destruction, death, and injuries suffered as a result of the terrorist attacks of September 11, 2001 ("September 11th Attacks").[1] Plaintiffs allege that moving defendant Saudi Binladin Group ("SBG") provided material support and financing to Osama Bin Laden, and maintained a close relationship with him as his sponsor, leading up to the September 11th Attacks. In 2003 and 2004, SBG moved to dismiss the *Ashton and Burnett*

---

[1] The relevant background of this litigation was discussed at length in this Court's June 17, 2010 and September 13, 2010 opinions. The Court will only restate relevant factual background as necessary to address the pending motion.

complaints[2] pursuant to 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. On January 18, 2005, Judge Casey denied SBG's motion to dismiss the *Ashton* and *Burnett* complaints without prejudice and permitted jurisdictional discovery to determine if SBG purposefully directed its activities at the United States. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005) ("Terrorist I") *on reconsideration in part* 392 F. Supp. 2d 539 (S.D.N.Y. 2005) ("Terrorist II"), *aff'd* 538 F.3d 71 (2d Cir. 2008) ("Terrorist III"), *cert. denied sub nom.*, Federal Ins. Co. v. Kingdom of Saudi Arabia, -- U.S. --, 129 S.Ct. 2859 (2009). Plaintiffs and SBG then engaged in extensive jurisdictional discovery.

SBG now renews its motion to dismiss the complaints in all cases against it arguing that (1) this Court lacks personal jurisdiction over SBG and (2) Plaintiffs' allegations lack sufficient detail to state a plausible claim. SBG's Motion to Dismiss for lack of personal jurisdiction is GRANTED.

## PERSONAL JURISDICTION

To avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), plaintiffs have the burden of making a *prima facie* showing of personal jurisdiction over the defendants. Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006). Where, as here, jurisdictional discovery has taken place, plaintiffs have the burden to make a factually supported *prima facie* showing which includes an averment of facts that, if given credit by the ultimate trier of fact, would be sufficient to establish jurisdiction over the defendant. Overseas Media, Inc. v. Skvortsov, 277 Fed. Appx. 92, 94 (2d Cir. 1997) (quoting Ball v.

---

[2] At the time of Judge Casey's decision, SBG had only been served with the *Ashton* and *Burnett* complaints. Subsequently, SBG was served with complaints in the *Continental Casualty, Euro Brokers, Inc., Federal Insurance,* and *World Trade Center* actions. Per agreement with defense counsel and pursuant to this Court's Case Management Orders, Plaintiffs' counsel jointly conducted jurisdictional discovery on all cases in which SBG is a defendant.

2

Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); see also Schultz v. Safra Nat'l Bank of New York, 377 Fed. Appx. 101, 102 (2d Cir. 2010) (citations omitted). "The plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be 'factually supported.'" Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 501 (S.D.N.Y. 2004) (citations omitted).

Personal jurisdiction cannot be exercised unless it comports with due process under the Fifth Amendment. See In re Terrorist Attacks on September 11, 2011, 718 F. Supp. 456, 469 (S.D.N.Y. 2010) ("Terrorist IV"). Thus, the Court must engage in a two part analysis: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010)). Under the minimum contacts inquiry, the Court "must determine whether a defendant has certain minimum contacts with the forum [] to justify the court's exercise of personal jurisdiction." Id. If the Court determines that the requisite minimum contacts exist, the Court must then determine "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." Id.

With respect to the initial minimum contacts inquiry, jurisdiction can be exercised under a general or specific theory. Id. Under the general theory, a court may exercise jurisdiction if the defendant has continuous and systematic contacts with the forum at the time the initial complaint was filed, even where the cause of action does not relate to or arise out of the foreign defendant's activities. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). To determine whether a defendant's general contacts can be characterized as having been continuous and systematic, the Court

3

"examine[s] a defendant's contact with the forum [ ] over a period that is reasonable under the circumstances—up to and including the date the suit was filed.'" Porina v. Marward Shipping Co., 521 F.3d 122, 128 (2d Cir. 2008) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996). For the exercise of general jurisdiction, it is essential that there minimally be some act by which the defendant purposefully avails himself of the privilege of conducting activities in the forum. Hanson v. Denckla, 357 U.S. 235, 253 (1958). The minimum contacts test for general jurisdiction is more stringent than that applicable for the exercise of specific jurisdiction. Metro Life, 84 F.3d at 568.

Under the specific theory, the cause of action is related to or arises out of the defendant's forum-related activities. Helicopteros, 466 U.S. at 414 n.8. For the exercise of specific jurisdiction, due process requires that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation resulted from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations omitted). Specific jurisdiction over a foreign defendant may be exercised "based on his alleged: (1) intentional, tortious actions; (2) which were expressly aimed at the United States; (3) that causes harm, the brunt of which is suffered- and which the defendant knows is likely to be suffered-in the United States; and (4) the injuries that are the subject of the litigation arise from or relate to defendant's subject conduct." Terrorist IV, 718 F. Supp. 2d at 478-79 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)); see also Terrorist III, 538 F.3d at 95.

If the Court determines that a defendant lacks the requisite minimum contacts for either general or specific jurisdiction, it need not consider the second prong of the due

4

process test to determine whether the exercise of jurisdiction would be reasonable under the particular circumstances of the case. See Metro. Life, 84 F.3d at 568.

## INSUFFICIENT CONTACTS FOR GENERAL JURISDICTION

Plaintiffs allege that (1) business activities by SBG's now defunct United States subsidiary, (2) business activities of Dr. Rihani, an SBG employee who has lived and worked from his North Carolina residence for up to half of each year since SBG's inception, and (3) over a dozen instances of SBG representatives traveling to the United States for SBG-related activities, represent systematic and continuous contacts to meet the minimum contacts threshold of the Fifth Amendment. Pl.'s Memo of Law in Opp. To Def.'s Renewed Mot. to Dismiss ("Pl.'s Opp.") at 20. These activities are insufficient to confer general jurisdiction.

As this Court has already held, Plaintiffs cannot rely upon the activities of a subsidiary which did not exist at the time Plaintiffs commenced their action as a basis to demonstrate SBG's presence for the purpose of general jurisdiction. Terrorist IV, 718 F. Supp. at 476-77. Thus, business activities by SBG's now defunct United States subsidiary, which Plaintiffs concede closed at the latest in 2000, are irrelevant to this Court's jurisdiction analysis.

Plaintiffs' evidence of Dr. Rihani's work for SBG in the United States is also insufficient to confer general jurisdiction over SBG. A foreign corporation must be doing business in the forum with a fair measure of permanence and continuity, as opposed to occasionally or casually, in order to be deemed to have a presence in the forum. See, Li v. Hock, 371 Fed. Appx. 171, 174-75 (2d Cir. 2010) (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)). SBG, at the time of the relevant

5

complaints, had no operations of any kind in the United States, had not undertaken any construction or engineering projects in the United States, and had no office in the United States. Memo in Supp. of Def. SBG's Renewed Mot. To Dismiss ("Def.'s Memo in Supp.") at 20-21. SBG also had no direct sales or distributors in the United States. Id. Plaintiffs do not offer evidence to dispute any of these facts but instead allege that Dr. Rihani's work in the United States served SBG's business purposes, afforded significant business contacts, and that he participated in a number of trade associations. Pl.'s Opp. at 20-27. However, Plaintiffs offer no evidence of the type of work they claim Dr. Rihani did on behalf of SBG, business contacts he made, nor how his participation in trade associations affected SBG's business. Plaintiffs offer no facts to support how Dr. Rihani's presence and activities in the United States constitute continuous or substantial activity sufficient to subject SBG to general jurisdiction. See Saudi v. Marine Atl. Ltd., 306 Fed. Appx. 653, 655 (2d Cir. 2009) (dismissing defendant for lack of personal jurisdiction where defendant's agent resided in forum but did not conduct continuous and substantial activity on behalf of defendant within the forum).

Plaintiffs' evidence of 13 trips to the United States by SBG employees is also insufficient to establish general jurisdiction over SBG. Plaintiffs have presented no evidence that SBG's employees' travel occured "in connection with generating, or otherwise conducting business in the forum" on behalf of SBG, as required to confer general jurisdiction. Kiobel v. Royal Dutch Petroleum Co., No. 02 Civ. 7618, 2010 WL 2507025 (S.D.N.Y. June 21, 2010). Further, even if the Court were to construe the 13 employee trips to the United States over 37 months as conducting business, such activity was too sporadic and occasional to constitute continuous and systematic business contacts

6

with the forum. See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1045-46 (2d Cir. 1990) (holding that thirteen employee business trips by different employees that "occurred sporadically over a period of eighteen months" was insufficient to establish continuous and systematic contact with the forum).

### INSUFFICIENT CONTACTS FOR SPECIFIC JURISDICTION

In support of specific jurisdiction, Plaintiffs allege that SBG provided significant support to Bin Laden before he was removed as a shareholder in 1993 with knowledge that he was targeting the United States, and that given "the strong direct familial ties between SBG's principals and their half brother Osama, they were put on notice as early as 1988 and absolutely no later than 1990 that any funds going to Osama were supporting a growing anti-American terrorist organization." Pl.'s Opp. at 9. Plaintiffs also allege that SBG maintained a "financial lifeline" to Osama Bin Laden after his removal as shareholder. Id. at 15. Plaintiffs allege that "discrepancies in SBG's accounting for what happened to Osama's shares [of SBG stock] suggest that Ghaleb Binladin . . . provided Osama with direct material support via the funds." See Pl.'s Opp. at 15. These allegations are insufficient to establish specific jurisdiction.

SBG's alleged support of Osama Bin Ladin before 1993 is too temporally remote to establish specific jurisdiction. See Terrorist IV, 718 F. Supp. 2d at 483, 486. ("Defendants' alleged provision of financial and other material support to al Qaeda in the early 1990's, enabling it to expand its base of operations in the Sudan, is too remote to the terrorist attacks of September 11, 2001, to confer specific jurisdiction.") Plaintiffs' only other factual allegations of potentially tortious actions after 1993—that SBG maintained a financial lifeline to Bin Ladin and that certain discrepancies in SBG's accounting suggest

7

that a third party provided Bin Ladin with direct material support via SBG funds—have no evidentiary support, which is required at this stage.

## CONCLUSION

Defendant SBG's 12(b)(2) motion to dismiss for lack of personal jurisdiction is GRANTED.

Dated: January 10, 2012
      New York, New York

SO ORDERED:

_____
GEORGE B. DANIELS
United States District Judge

8