UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)<br>ECF Case |

This document applies to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-06978
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 03-CV-08591
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-CV-7216
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-CV-09849
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04-CV-7279
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-CV-06977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-CV-1922
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-CV-5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private., Ltd., et al.*, Case No. 04-CV-7065

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO STRIKE OF DEFENDANTS KINGDOM OF SAUDI ARABIA AND SAUDI HIGH <u>COMMISSION FOR RELIEF OF BOSNIA & HERZEGOVINA</u>**

March 13, 2012

## TABLE OF CONTENTS

**Page**

I.  PROCEDURAL BACKGROUND ................................................................................... 1

II. ARGUMENT ................................................................................................................. 5

    A.   Relevant Legal Standards ................................................................................. 5
    B.   The Motion to Strike is Procedurally Improper ............................................... 6
    C.   The Motion to Strike is Substantively Defective ............................................. 6
    D.   The Motion to Strike is Pretext for Unauthorized Sur-Reply Arguments ...... 12

III. CONCLUSION ............................................................................................................ 12

CERTIFICATE OF SERVICE ............................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*,
  215 F.3d 219 (2d Cir. 2000) ................................................................................................ 7

*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*,
  945 F. Supp. 693 (S.D.N.Y. 1996) ...................................................................................... 7

*Brown v. F.B.I.*,
  793 F. Supp. 2d 368 (D.D.C. 2011) ................................................................................. 5, 6

*Doe v. Bin Laden*,
  663 F.3d 64 (2d Cir. 2011) ......................................................................................... 1, 2, 12

*Great Socialist People's Libyan Arab Jamahiriya v. AhmadMiski*,
  683 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................................ 5

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008) ............................................................................................. 8, 11

*Letelier v. Republic of Chile*,
  448 F. Supp. 665 (D.D.C. 1980) ....................................................................................... 12

*Lipsky v. Commonwealth United Corporation,*
  551 F.2d 887 (2d Cir. 1976) ................................................................................................ 5

*Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*,
  767 F. Supp. 1220 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir.
  1992) .................................................................................................................................... 7

*Liu v. Republic of China*,
  892 F.2d 1419 (9th Cir. 1989) ........................................................................................... 12

*Pilgrim v. Trustees of Tufts College*,
  118 F.3d 864 (1st Cir. 1997) ................................................................................................ 5

*Ricci v. DeStefano*,
  2006 U.S. Dist. LEXIS 69306 (D. Conn. 2006) .................................................................. 5

*Roe v. City of New York*,
  151 F. Supp. 2d 495 (S.D.N.Y. 2001) ................................................................................. 5

*Travelers Ins. Co. v. Buffalo Reinsurance Co.*,
    735 F. Supp. 492 (S.D.N.Y.), *vacated in part on other grounds*, 739 F. Supp. 209
    (S.D.N.Y. 1990) ............................................................................................................. 7

*United States v. International Bus. Machs. Corp.*,
    66 F.R.D. 383 (S.D.N.Y. 1975) ................................................................................... 7

**STATUTES AND RULES**

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(5) ........................................... 2

Fed. R. Civ. P. 7 ............................................................................................................................. 5

Fed. R. Civ. P. 7(a) ........................................................................................................................ 6

Fed. R. Civ. P. 7(b) ........................................................................................................................ 6

Fed R. Civ. P. 12(f) .................................................................................................................... 5, 6

Fed. R. Civ. P. 60(b)(6) ......................................................................................................... passim

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO STRIKE OF DEFENDANTS KINGDOM OF SAUDI ARABIA AND SAUDI HIGH COMMISSION FOR RELIEF OF BOSNIA & HERZEGOVINA**

Plaintiffs submit this Memorandum of Law in opposition to the Motion of defendants Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC") to Strike the Affirmation of Sean P. Carter and Accompanying Exhibits. The Affirmation and accompanying exhibits were submitted by plaintiffs in support of their Reply to defendants' Opposition to Plaintiffs' Motion for Relief From the Final Judgments in Favor of the Kingdom and SHC.

For the reasons discussed in greater detail below, the Motion to Strike should be denied in its entirety and disregarded on the grounds that: (1) a motion to strike is an improper procedural vehicle for challenging the propriety or relevance of the Affirmation and accompanying exhibits to the Rule 60(b)(6) dispute; (2) the Affirmation and accompanying exhibits directly address issues interjected into the Rule 60(b)(6) dispute by the defendants themselves, and they cannot reasonably argue that plaintiffs should be deprived of an opportunity to respond to those arguments; (3) the facts and information set forth in the Affirmation and accompanying exhibits have long been of record in these proceedings; and (4) the Motion to Strike was presented as a pretext for filing an improper and unauthorized sur-reply in support of the alternative theories of dismissal advanced by the defendants, all of which are without merit.

**I.     PROCEDURAL BACKGROUND**

On December 22, 2011, plaintiffs filed their Motion for Relief From the Final Judgments in Favor of the Kingdom and SHC ("Motion for Relief") pursuant to Rule 60(b)(6), based on the Second Circuit Court of Appeals' recent decision in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011). In *Doe*, the Second Circuit held that the non-commercial tort exception of the Foreign

Sovereign Immunities Act (FSIA), set forth at 28 U.S.C. §1605(a)(5), can be a basis for a suit arising from the terrorist attacks of September 11, 2001, directly overturning the earlier panel decision which formed the sole basis for the judgments in favor of Saudi Arabia and the SHC. Given the ruling in *Doe*, relief from the final judgments in favor of the Kingdom and SHC is appropriate under Rule 60(b)(6), as the failure to vacate those judgments would produce directly conflicting results as to two identically situated foreign sovereigns (Afghanistan and Saudi Arabia) in the same ongoing litigation, and because the case presents additional equitable factors favoring plaintiffs.

Recognizing that there has never been any discovery in relation to the claims against the Kingdom or SHC, and that the allegations of plaintiffs' pleadings must therefore be accepted as true for the Rule 60(b)(6) analysis (and all other purposes), plaintiffs made no effort in their Memorandum of Law in Support of the Motion for Relief to argue the strength of their evidence, or to attack the credibility of the defendants' conclusory denials of those allegations. Instead, plaintiffs focused exclusively on the relevant standards for relief under Rule 60(b)(6), the import of the Second Circuit's holding in *Doe* to the Rule 60(b)(6) analysis, and the substantive identity between the allegations asserted against Saudi Arabia and Afghanistan in the related cases. *See* Memorandum of Law in Support of Motion for Relief, Docket No. 2509.

In response to plaintiffs' Motion for Relief, the Kingdom and SHC opened their opposition brief by arguing that "[f]ollowing an exhaustive and authoritative investigation, the National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission"), concluded that the government of Saudi Arabia had no role in the attacks of September 11, 2001…" Opposition Brief ("Opp."), Docket No. 2542, at p.1. The defendants repeated this line of argument again later in their brief, asserting that "[e]ven before this Court dismissed them, Plaintiffs' claims against Saudi Arabia had been directly rebutted by facts found by the United

2

States government.  The 9/11 Commission concluded that Saudi Arabia did not assist the September 11th terrorists.  Although it did not rule out the possibility that some *independent (non-sovereign)* charities might have diverted funds to al Qaeda, the 9/11 Commission 'found no evidence that the Saudi government as an institution or senior Saudi officials individually funded' al Qaeda.  9/11 Report at 171.  The 9/11 Report further concluded that 'we have seen no evidence that any foreign government – or foreign government official – supplied any funding to the September 11th hijackers.'"  Opp. at 4 (emphasis supplied).  Continuing in their effort to mischaracterize the record and ignoring the pre-discovery procedural context in which the claims against the Kingdom and SHC were addressed, the defendants asserted that the SHC had submitted "uncontradicted evidence that the SHC is a legitimate humanitarian organization, and that contrary to Plaintiffs' wholly unsupported allegation that SHC funds were diverted to al Qaeda, Bosnian authorities audited the disbursement of funds by the SHC in 1998, 1999, 2000 and 2001, and found nothing amiss."  *Id.* at pp. 6 -7.

Given the arguments interjected into the Rule 60(b)(6) dispute by the defendants concerning the alleged findings of the 9/11 Commission and relative merits of plaintiffs' factual allegations and evidence, plaintiffs were compelled to address those issues in their Reply and make clear that those arguments did not provide any valid basis for declining relief under Rule 60(b)(6).  At the outset, plaintiffs called into question the relevance of the defendants' "factual" arguments to the dispute presently before the Court, noting that "[e]ven if [the defendants' argument based on the 9/11 Report] were somehow relevant to the Rule 60(b)(6) motion, it is clearly wrong."  *See* Plaintiffs' Reply in Support of Their Motion for Relief ("Reply"), Docket No. 2557, at p. 1.  Plaintiffs then noted that the defendants' "factual" arguments were directly rebutted by plaintiffs' pleadings, the evidence previously submitted of record, and many authoritative sources "that have implicated the Kingdom and its officials in supporting the

3

attacks." *Id.* at pp. 1-2. Further, given the defendants' suggestion that materials beyond the pleadings might in some way be relevant to the Rule 60(b)(6) analysis, plaintiffs proffered a selection of evidentiary materials that directly rebutted the defendants' characterizations of the 9/11 Commission's investigation and findings, as well as their arguments concerning the credibility of plaintiffs' factual allegations.

The submitted materials included Affirmations authored by Senator Bob Graham, the Co-Chair of the Joint Congressional Inquiry Into the September 11th Attacks, and Senator Bob Kerrey, a Member of the 9/11 Commission. On the basis of their experiences as members of the two most significant U.S. governmental inquiries into the September 11th Attacks, both Senators stepped forward to rebut the Kingdom's representation that it was exonerated of any culpability for the sponsorship of al Qaeda by the U.S. government, a claim that is fundamentally inaccurate. The remaining materials demonstrated the extensive evidentiary basis for plaintiffs' detailed factual allegations concerning the SHC's pervasive terrorist activities, and included the testimony of a confessed former al Qaeda member who was employed by the SHC, as well as several intelligence reports and governmental documents concerning the SHC's support for al Qaeda. All of the materials are directly responsive to the factual arguments the defendants raised in opposing relief under Rule 60(b)(6). In substance, the exhibits merely synthesize facts and arguments long of record in these proceedings, which the defendants have persistently ignored in making representations to the Court.

Despite having themselves raised as relevant to the Rule 60(b)(6) analysis the scope and findings of the 9/11 Commission's investigation and credibility of plaintiffs' factual allegations, the defendants moved to strike the materials proffered by plaintiffs that are directly responsive to the defendants' arguments on those points. As discussed in further detail below, the defendants' Motion to Strike is procedurally and substantively defective, and appears to have been presented

4

to afford the defendants an opportunity to present an unauthorized sur-reply in support of their alternative theories of dismissal.  Accordingly, the Motion to Strike should be denied, and the Court should decline to consider any of the arguments advanced therein for purposes of deciding the Motion for Relief under Rule 60(b)(6).

II.     ARGUMENT

   A.     <u>**Relevant Legal Standards**</u>

Although the defendants style their Motion to Strike as seeking relief under Fed. R. Civ. P. 7, such applications are in fact governed by the provisions of Rule 12(f).  *See* Fed. R. Civ. P. 12(f) (captioned "Motion to Strike").  That Rule authorizes parties to move the Court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  *Id.* (emphasis supplied).  Motions to strike are strongly disfavored, and should be granted only in extreme circumstances.  *See Lipsky v. Commonwealth United Corporation,* 551 F.2d 887, 893 (2d Cir. 1976); *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

Consistent with the plain language of Rule 12(f), numerous courts have held that a motion to strike is an appropriate vehicle for attacking pleadings only, and may not be employed in an effort to challenge the content of a motion, brief, or affirmation.  *See Ricci v. DeStefano*, 2006 U.S. Dist. LEXIS 69306, at *3 (D. Conn. 2006); *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864 (1st Cir. 1997); *Brown v. F.B.I.*, 793 F. Supp. 2d 368, 382 (D.D.C. 2011); *Great Socialist People's Libyan Arab Jamahiriya v. AhmadMiski*, 683 F. Supp. 2d 1, 15 (D.D.C. 2010). Instead, parties seeking to challenge the propriety or relevance of a motion or affidavit should do so by arguing the propriety or relevance question within their briefs.  *Ricci*, 2006 U.S. Dist. LEXIS 69306 at *6.  When the material in question is raised in a reply brief, the appropriate course is for the opposing party to seek leave to file a sur-reply.

### B.     The Motion to Strike is Procedurally Improper

Consistent with the plain language of Rule 12(f) and cases cited above, a motion to strike is an improper vehicle for challenging the propriety or relevance of the Affirmation or accompanying exhibits, and should be denied on that basis. Neither the Affirmation nor accompanying exhibits fall within the definition of "pleading" under Fed. R.Civ. P. 7(a), and the provisions of Rule 12(f), which provide the sole basis under the Federal Rules for moving to strike a filing, have no applicability to affidavits and evidentiary exhibits offered in support of a motion. *See Brown*, 793 F. Supp. 2d at 382. To the extent the defendants wished to challenge the propriety or relevance of the Affirmation and accompanying exhibits to the Rule 60(b)(6) analysis, the appropriate course would have been to seek leave of court to file a sur-reply, an option they chose not to pursue.[1] Accordingly, the Court should not consider the Motion to Strike for any purpose.

### C.     The Motion to Strike is Substantively Defective

Even if a motion to strike were an appropriate procedural device for challenging the propriety or relevance of the Affirmation and accompanying exhibits to the Rule 60(b)(6) question presently before the Court, the Motion to Strike is entirely without merit, as the Affirmation and accompanying exhibits are directly responsive to matters interjected into this dispute by the defendants themselves. In arguing against the relief plaintiffs seek under Rule 60(b)(6), the defendants specifically invited this Court to conclude that plaintiffs' claims were "directly rebutted by facts found by the 9/11 Commission," Opp. at p. 4, and that plaintiffs' factual allegations against the SHC were "wholly" unsupported and contrary to the findings of an alleged Bosnian audit of the SHC which purportedly "found nothing amiss." *Id.* at pp. 6-7. In

---

[1] Although they make no reference to the line of cases holding that a motion to strike is an improper vehicle for challenging the content of an affirmation or exhibit, the defendants effectively acknowledge those authorities by styling the Motion as seeking relief under Rule 7(b) of the Federal Rules of Civil Procedure, rather than Rule 12(f). As Rule 12(f) bears the title "Motion to Strike," the defendants' decision to instead label the Motion as seeking relief under Rule 7(b) must be viewed as a conscience effort to circumvent the line of authority precluding the filing of motions to strike with respect to non-pleading materials.

making these arguments, the defendants necessarily advocated that the credibility of plaintiffs' allegations, the character of the evidence available to support those allegations, and the findings of the 9/11 Commission were somehow material to the Rule 60(b)(6) analysis. Stated simply, the defendants plainly sought to persuade this Court that Rule 60(b)(6) relief should be denied because, in their view, plaintiffs would ultimately be unable to offer sufficient evidence to sustain their claims on the merits.

Because the defendants interjected those issues into the Rule 60(b)(6) dispute, plaintiffs were well within their rights to offer in their Reply materials directly responsive to the defendants' mischaracterizations of the record and findings of the 9/11 Commission. Indeed, the entire purpose of a reply brief is to afford the moving party an opportunity to respond to matters raised in the adversary's opposition papers "so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992); *see Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F. Supp. 693, 708 (S.D.N.Y. 1996); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 495 (S.D.N.Y.), *vacated in part on other grounds*, 739 F. Supp. 209 (S.D.N.Y. 1990); *United States v. International Bus. Machs. Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975). Consistent with these authorities, the defendants have no valid basis to complain about the materials offered by plaintiffs to directly rebut the factual distortions the defendants chose to interject into the Rule 60(b)(6) dispute.

In an effort to avoid the fact that they interposed these factual issues into the Rule 60(b)(6) dispute themselves, and thereby invited a response from plaintiffs, defendants seek to rely on the fact that certain of the evidence submitted in support of plaintiffs' Reply was not filed of record earlier in the proceedings. However, the underlying judgments in favor of the

7

Kingdom and SHC were not in any way predicated upon a finding that there was any deficiency in plaintiffs' detailed factual pleadings, and did not involve any evaluation of the merits of the evidence supporting the claims that the SHC and Kingdom knowingly provided material support and sponsorship to al Qaeda.  To the contrary, the *Terrorist Attacks III* Panel predicated its holding solely on the legal finding, now abrogated, that the non-commercial tort exception could not be invoked in a case arising from an act of "terrorism."  *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 89 (2d Cir. 2008).  To the extent the *Terrorist Attacks III* Panel offered any comment on the specificity and credibility of plaintiffs' allegations, it credited them for offering a "wealth of detail (conscientiously cited to published and unpublished sources) that, if true, reflect close working arrangements between ostensible charities and terrorist networks, including al Qaeda."  *Id.* at 76.

    As the underlying judgments were in no way predicated upon an evaluation of the credibility of the allegations or evidence, it necessarily follows that the defendants are advocating that those issues have independent relevance to the Rule 60(b)(6) analysis, and that the Court should consider them for that purpose.  It is nothing short of perverse for the defendants to argue that they are entitled to distort facts in an effort to persuade this Court to deny the relief requested under Rule 60(b)(6), but that plaintiffs should be foreclosed from responding to those arguments.  To the contrary, it is all the more important to give plaintiffs the opportunity to address the defendants' factual misrepresentations and distortions in this setting, given the public interest in the facts and events in question, as underscored by the fact that two respected former U.S. Senators have come forward and filed affidavits to address the defendants' misrepresentations.

    The defendants also are incorrect in arguing that the substance of the evidence and information submitted of record in support of plaintiffs' Reply is in any meaningful sense "new."

8

For instance, Senator Graham's Affirmation focuses on the investigation conducted by the Congressional Joint Inquiry into the events of September 11, 2001, the Joint Inquiry's findings concerning the support provided by Omar Bayoumi to two of the September 11th hijackers, and Bayoumi's status as an agent of the government of Saudi Arabia. *See* Affirmation of Bob Graham at MDL Docket 2557-2. Significantly, the earliest pleadings in this litigation included detailed allegations concerning Bayoumi's support for the hijackers and status as an agent of the Saudi government,[2] and those same facts were detailed at length in a book previously authored by Senator Graham entitled *Intelligence Matters*. The relevant excerpts from that book were brought to this Court's attention in plaintiffs' Opposition to the Kingdom of Saudi Arabia's Motion to Dismiss, which stated as follows:

> Although several defendants have disputed [plaintiffs'] contention that al Bayoumi worked for the Saudi Intelligence Service in filings with this Court, Senator Bob Graham, a member for many years of the Senate Intelligence Committee and a co-chair of the Joint Congressional Inquiry into the September 11th Attacks upon the United States, has consistently asserted that intelligence materials he has viewed establish that al Bayoumi was a Saudi National "serving his nation as a spy."

*See* Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of the Kingdom of Saudi Arabia, Docket No. 471 at p. 5.

Senator Kerrey's Affirmation also focuses on facts that plaintiffs long ago proffered in response to the defendants' relentless efforts to mischaracterize the 9/11 Commission's findings. Senator Kerrey states in his Affirmation that the "Kingdom's Memorandum of Law contains several misleading statements concerning the investigation and findings of the 9/11 Commission relative to possible Saudi culpability for the sponsorship of al Qaeda and the events of September 11th 2001," and that the Kingdom and SHC "are incorrect" to the extent they argue that the 9/11

---

[2] *See Federal Insurance* Plaintiffs' First Amended Complaint, Case No. 03-cv-06978, Docket No. 104 (03/10/2004), at ¶¶ 411-420, 449.

9

Commission "fully exonerated Saudi Arabia and any Saudi government charities" for the financing and emergence of al Qaeda or events of September 11, 2001. Affirmation of Bob Kerrey at Docket No. 2557-3, ¶¶ 8-9. Senator Kerrey further states that the Kingdom and SHC quote selected language from the 9/11 Report "out of context and without reference to our finding that there was a 'likelihood that charities with significant Saudi government sponsorship diverted funds to al Qaeda.'" *Id.* at ¶ 15.

Senator Kerrey's statements are consistent with the arguments plaintiffs have offered since the inception of this litigation that the isolated and ambiguous language the Kingdom cites from the 9/11 Report does not speak in any meaningful sense to the claims advanced against the Kingdom in this litigation, and that the more relevant language from the 9/11 Report was the finding that there was a "likelihood that charities with significant Saudi sponsorship diverted funds to al Qaida." This argument was presented directly in plaintiffs' Memorandum of Law in Opposition to the Kingdom's Motion to Dismiss, *see* Docket No. 471 at p. 3, and in many other contexts thereafter. Thus, Senator Kerrey's Affirmation presents facts that plaintiffs have consistently offered during the course of these proceedings, and the core content of that Affirmation cannot be considered "new" in any meaningful sense.[3]

The remaining exhibits, which include governmental reports and the Affirmation of a former al Qaeda member who was employed by the SHC, parallel the detailed factual allegations and other evidence plaintiffs previously submitted in support of their contention that the SHC served as a primary front for the sponsorship of al Qaeda. Summarizing those allegations, the *Terrorist Attacks III* panel stated:

> The SHC acted as "a fully integrated component of al Qa[e]da's logistical and financial support infrastructure." In the early 1990s, al Qaeda fighters began infiltrating Bosnia disguised as SHC relief

---

[3] Much of the information in the Affirmations of Senators Graham and Kerrey concerns matters of public and statutory record.

> workers. The SHC has funneled millions of dollars to al Qaeda, evidenced by investigators' inability to account for "$41 million" in SHC donations. In an October 2001 raid of the SHC's Sarajevo Offices, U.S. government officials found computer hard drives containing photos of the World Trade Center, U.S. Embassies in Kenya and Tanzania, and the U.S.S Cole (all targets of terrorist attacks); documents about pesticides and crop dusters, photos and maps of Washington, D.C. (with prominent government buildings marked); and instructions for fabricating U.S. State Department badges. After the raid, the Bosnian Financial Police reported that peace keeping forces "confiscated some documentation for which it can be claimed with certainty that it does not belong in the scope of work in a humanitarian organization."

*Terrorist Attacks III*, 538 F.3d at 76.

The exhibits concerning the SHC's activities[4] simply demonstrate that these detailed factual allegations, presented in the earliest pleadings of record, are not "wholly unsupported" as defendants incorrectly and misleadingly state in their opposition. To the contrary, the exhibits demonstrate that plaintiffs' claims that the SHC channeled funds and other resources to al Qaeda, provided cover to al Qaeda operatives, directly participated in al Qaeda plots targeting U.S. interests, and assisted al Qaeda fighters in gaining entry into Bosnia are derived from reliable governmental sources and well founded.[5] As all of those factual allegations were presented at the outset of this litigation, it is hardly credible for the SHC to argue that plaintiffs have interjected "new" information into the proceedings at this juncture.[6]

---

[4] Two of these exhibits - the 1996 CIA Report concerning the involvement of Islamic charities in the sponsorship of terrorism and the "audit" of the SHC by Bosnian authorities - were themselves filed of record earlier in litigation. The 1996 CIA Report was filed by plaintiffs in opposition to the Kingdom's Motion to Dismiss, and the "audit" by Bosnian authorities was presented earlier in the case by the SHC itself. Although the SHC offered a novel and inaccurate interpretation of the audit in the Opposition to Plaintiffs' Motion for Relief, it tellingly failed to provide the Court with a copy of that "audit."

[5] The defendants seek to minimize the significance of the "Threat Matrix" document by arguing that it merely "lists the SHC as one of 68 organizations '[k]nown *or suspected* of wittingly *or unwittingly* providing support or cover to al-Qaida *or other* terrorist organizations." Opp. at p. 4, n. 5. In fact, the actual language of the document identifies the SHC in a "list of terrorist and terrorist support entities." Coupled with the other evidence confirming the SHC's pervasive ties to terrorism, the import of the Threat Matrix is clear.

[6] The SHC is of course aware of the extensive evidence implicating it in al Qaeda's terrorist activities, including the reporting by U.S. intelligence agencies. Its persistence in denying in conclusory terms the existence of such evidence reflects a fundamental lack of candor to the Court.

### D. The Motion to Strike is Pretext for Unauthorized Sur-Reply Arguments

This Court also should deny and disregard the Motion to Strike on the grounds that the defendants have improperly used it as a vehicle for presenting additional legal arguments in sur-reply to plaintiffs' Reply brief. Neither the Federal Rules of Civil Procedure nor the Local Rules of this Court permit the filing of sur-reply briefs absent leave of Court. Nonetheless, the defendants dedicate nearly half of their brief in support of the Motion to Strike to arguments intended to bolster their alternative theories of dismissal, going so far as to cite arguments presented in plaintiffs' Reply brief and then respond to those arguments at length. *See* Defendants' Memorandum of Law in Support of Motion to Strike at pp. 4-7. The inclusion of these arguments is in blatant violation of the prohibition against unauthorized sur-replies, and suggests that the defendants filed the Motion to Strike as a pretext for circumventing that prohibition.[7]

## III. CONCLUSION

For the foregoing reasons, this Court should deny the Motion to Strike and decline to consider it for any purpose.

---

[7] The defendants invest considerable effort in arguing that plaintiffs have failed to address the district court's prior discretionary function rulings. In fact, plaintiffs addressed the discretionary function issue in detail in their Reply. *See* Reply at pp. 8-9. Although the page limitations applicable to Reply briefs precluded plaintiffs from presenting a lengthy discussion of the import of *Doe* to the earlier discretionary function rulings in that Reply, plaintiffs did address that issue pointedly in their Reply in Support of Their Motion Pursuant to FRAP 27 to Vacate the Judgments in Favor of the Saudi Joint Relief Committee and Saudi Red Crescent Society, now pending before the Second Circuit Court of Appeals. As set forth in that brief, a copy of which was provided to this Court, the defendants' reliance on the earlier discretionary function rulings is unavailing as the *Terrorist Attacks III* panel chose not to affirm the dismissals on that basis, and because those holdings are inconsistent with *Doe* and contrary to precedent endorsed in *Doe* that makes clear that foreign states do not possess discretion to sponsor terrorism. *See Liu v. Republic of China*, 892 F.2d 1419, 1425 (9th Cir. 1989), *Letelier v. Republic of Chile*, 448 F. Supp. 665, 674 (D.D.C. 1980).

Dated:  March 13, 2012

/s/_____
Stephen A. Cozen, Esq.
Elliott R. Feldman, Esq.
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel: (215) 665-2000


/s/_____
Carter G. Phillips
Richard Klingler
Christian P. Huebner
Paul R. Perkins
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Tel: (202) 736-8000

On Behalf of the *Federal Insurance*, *Vigilant,* and *Pacific Employers* Plaintiffs


/s/_____
Ronald L. Motley, Esq
Jodi Westbrook Flowers, Esq.
Michael Elsner, Esq.
Robert Haefele, Esq.
Vincent I. Parrett, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina  29465
Tel: (843) 216-9000

/s/
Paul J. Hanly, Jr., Esq.
Jayne Conroy, Esq.
Andrea Bierstein, Esq.
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY  10017-1111
Tel: (212) 401-7600

On Behalf of the *Burnett* and *Euro Broker* Plaintiffs


/s/
James P. Kreindler, Esq.
Justin T. Green, Esq
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY  10017-5590
Tel: (212) 687-8181

On Behalf of the *Ashton* Plaintiffs


/s/
Jerry S. Goldman, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Tel: (212) 278-1569

On Behalf of the *O'Neill* Plaintiffs


/s/
Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
530 Fifth Avenue, 23rd Floor
New York, New York  10036-5101
Tel: (212) 944-2200

On Behalf of the *Continental Casualty* Plaintiffs

14

/s/ _____
Chris Leonardo
ADAMS HOLCOMB LLP
1875 Eye Street NW
Suite 810
Washington, D.C. 20006
Tel: (202) 580-8803

On Behalf of the *Cantor Fitzgerald* Plaintiffs

## CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the Plaintiffs' Memorandum of Law in Opposition to the Motion to Strike of Defendants Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina was filed electronically this 13th day of March 2012. Notice of this filing will be sent to all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system. Parties may access this filing through the Court's ECF system.

                                                    /s/
                                                  J. Scott Tarbutton