C3f9tera

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001,

4

5                                        03 MD 1570 (GBD)

6

    ------------------------------x
7                                        New York, N.Y.
                                         March 15, 2012
8                                        11:15 a.m.

9   Before:

10                    HON. GEORGE B. DANIELS

11                                       District Judge

12                   HON. FRANK MAAS

13                                       Magistrate Judge

14                       APPEARANCES

15
    COZEN O'CONNOR
16       Attorneys for Plaintiff Federal Insurance Co.
    BY:  STEPHEN A. COZEN
17          SEAN P. CARTER

18  KREINDLER & KREINDLER
         Attorney for Ashton Plaintiffs
19  BY:  JAMES P. KREINDLER

20

    SPEISER, KRAUSE, NOLAN & GRANITO
21       Attorney for Ashton Plaintiffs, et al.
    BY:  CHRISTINA M. FRY

22

23  ANDERSON KILL & OLICK, P.C.
         Attorneys for O'Neill Plaintiffs and Plaintiffs' Executive
24  Committee
    BY:  JERRY S. GOLDMAN
25          RENE HERTZOG

C3f9tera

APPEARANCES CONTINUED

MOTLEY RICE
        Attorneys for Plaintiff Burnett
BY:   DONALD A. MIGLIORI
            BRIAN T. FRUTIG

DICKSTEIN SHAPIRO
        Attorney for Plaintiff Cantor Fitzgerald
BY:   NIKOL GRUNING THOMPSON

DESIMONE, AVILES, SHORTER & OXAMENDI, LLP
        Attorney for Plaintiff
BY:   GARY P. DEUTSCHMEISTER


BERNABEI & WACHTEL
        Attorney for Al Haramain USA
BY:   ALAN KABAT

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
        Attorneys for Defendant Saudi Arabia
BY:   MICHAEL K. KELLOGG
            WILLIAM J. RINNER

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
        Attorney for Defendant Saudi High Commission
BY:   ROY T. ENGLERT, JR.

PATTON BOGGS
        Attorneys for Defendant National Commercial Bank
BY:   MITCHELL R. BERGER
            ALAN T. DICKEY

C3f9tera

1            (In open court; case called)

2            THE COURT:  Let me do this.  Before we go to the

3    motion for relief from the final judgment, let me address the

4    issues that were raised by letter and put those aside and then

5    see if there are other issues that we can quickly resolve and

6    then I'll hear the parties with regard to that motion.

7            First of all, Magistrate Judge Maas and I have

8    discussed the issue of entering judgment against Hezbollah

9    based on the other judgments that were entered in this case and

10   based on the inquest that Magistrate Judge Maas has done.  We

11   both agree that that is an appropriate thing to do.  I'm

12   willing to do that today.  And we will enter judgment against

13   Hezbollah in the amounts as were found by Magistrate Judge Maas

14   when he did the inquest on damages.

15           The only thing we were both uncertain about and

16   curious about and want to avoid having to do this piecemeal is

17   that why at this point, we're at this issue and whether or not

18   we should be thinking about others.  I believe that judgment

19   has not been entered against all the defaulting defendants in

20   that case.

21           Are we going to anticipate a further application, or

22   is this sufficient for your purposes at this point?

23           MR. CARTER:  Your Honor, Sean Carter for the Federal

24   Insurance Plaintiffs.

25           If I may provide a little bit of context, it will, I

C3f9tera

1    think, illuminate why we're here.

2              There is a presently ongoing a forfeiture action in

3    the Northern District of Illinois through which the Department

4    of Justice is targeting for seizure $6.6 million in al-Qaeda

5    assets.

6              At the time the window, statutory window for filing

7    verified claims in the statutory -- in the forfeiture

8    proceeding expired, we did not yet have a final monetary

9    judgment against al-Qaeda.

10             As a result, the Department of Justice has argued in

11   that forfeiture proceeding that we lack constitutional

12   standing, the 9/11 plaintiffs lack constitutional standing to

13   make claim in the forfeiture proceeding to those funds.

14             There are presently some separate forfeiture

15   proceedings recently initiated targeting assets associated with

16   Hezbollah in the Southern District of New York.  And the reason

17   there's some urgency with regard to the Hezbollah judgment is

18   because we want to avoid the scenario in which we, again, face

19   an argument about standing based on the timing of the judgment.

20             With regard to the entry of a broader number of

21   judgments, I think that would make sense in order to avoid

22   doing this piecemeal.

23             In some cases, defendants have objected principally I

24   think because they're concerned about the potential that we

25   would try to use the judgment against a terrorist organization

C3f9tera

1   to execute against their assets.

2         It may make sense for us simply to try and enter into

3   a broader stipulation with the defendants that will allow all

4   the terrorist organizations to be treated simultaneously for

5   purposes of a monetary judgment and we can deal with other of

6   the defaulting defendants separately.

7         THE COURT:  Similar to the agreement that you entered

8   into with regard to Hezbollah?

9         MR. CARTER:  Correct, your Honor.

10        THE COURT:  Well just let us know at what point, if

11  you intend to proceed that way, and we'll be prepared to move

12  forward then.  But we should have the judgment prepared and

13  ready for you today and filed.

14        MR. CARTER:  Thank you, your Honor.

15        THE COURT:  Now with regard to the -- someone raised

16  an issue -- also you raised an issue with regard to getting a

17  certificate of default from the clerk's office.  I'm not quite

18  sure I understood exactly what your communication has been with

19  the clerk's office, if any, on this issue and what if you still

20  have a problem or the nature of that problem.

21        MR. MIGLIORI:  Good morning, your Honor.

22        Don Migliori from Motley Rice on behalf of the Burnett

23  plaintiffs.

24        All of other moving parties for this particular

25  default have gotten their certificate.  This is purely

C3f9tera

1   ministerial.  It just for some reason didn't come through for

2   the Burnett plaintiffs.

3         THE COURT:  Have you had a conversation with the

4   clerk's office?

5         MR. MIGLIORI:  We wrote actually to the court I

6   believe on the 30th of last year -- December 30 end of last

7   year about it.  We've had some communication with the clerk's

8   office.

9         THE COURT:  What is their position?

10        MR. MIGLIORI:  Really don't have a clear answer from

11   them.  We're just looking for guidance.  We didn't know if it

12   was caught up in a different -- in a different process

13   because --

14        THE COURT:  They have not said to you that it is not

15   going to be issued?

16        MR. MIGLIORI:  I believe the response back has simply

17   been that they don't have -- they needed guidance.  They

18   weren't going to accept from us in an informal conversation

19   that everything had been done.

20        We've checked our filings, our pleadings, and

21   everything is there.

22        THE COURT:  What do they say is deficient?  That's

23   what I don't understand.

24        MR. MIGLIORI:  We don't understand.

25        So when we wrote to the court we were simply asking if

C3f9tera

1    the court could give us some guidance, give us some help in

2    pushing that process along because everything is there and it

3    hasn't issued out.

4            THE COURT:  I mean I could help you but I don't know

5    what the problem is so I'm not sure what -- I haven't been

6    able -- are you dealing with orders and judgments, the clerk?

7            MR. MIGLIORI:  What I propose, your Honor, because --

8    the motion is much more important.  Maybe after this hearing

9    I'll go down personally.

10           THE COURT:  Go to orders and judgments.

11           MR. MIGLIORI:  As long as I can represent that there

12   is no reason from the bench for this to not issue, maybe that

13   will be the kind of assurance.

14           THE COURT:  Not that I'm aware of.  That's the thing.

15           Unless you can articulate for me either who is telling

16   you there's a problem and what the nature of that problem is,

17   I'm not sure if it's just not getting done, they have a

18   position that it cannot be done, they have a position that

19   something is missing, and you haven't assured them that it's

20   not missing.  I'm not sure what the issue is.

21           MR. MIGLIORI:  We just know that we've inquired and

22   it's never forthcoming.

23           So as long as there is no other basis from the bench,

24   I'll go down today and make direct contact.  If there's another

25   issue --

C3f9tera

1          THE COURT:  I mean we made some inquiries down there

2     but it's hard for me to communicate with them if I don't know

3     what the problem is.

4          MR. MIGLIORI:  They didn't articulate one to us

5     either.  As long as there's no issue from the bench.

6          THE COURT:  Not that I'm aware of.  So if there's --

7     if you can get -- if you can tell me who you're speaking to and

8     it probably should be somebody in orders and judgments and they

9     can tell you that it's either going to issue or it's not going

10    to issue.

11         If it's not going to issue immediately, they have to

12    articulate for you what the problem is so you can come back to

13    me and see if we can solve that problem.  Or if they say you're

14    missing a document, they can tell you what document it is, if

15    you think you've given it to them and they can't find it --

16         MR. MIGLIORI:  We wouldn't have bothered the court if

17    that were the issue.  Let me figure that out and I appreciate

18    it.

19         THE COURT:  Sure.  Just contact my chambers or

20    Magistrate Judge Maas' chambers, either one, we'll follow up if

21    necessary.  But I'm not quite sure what the problem is that's

22    holding this up.

23         Are there any other issues that we need to address

24    before I go to the motion?  I know you're moving forward with

25    discovery.

C3f9tera

1        Did I see a hand?

2        No.  All right.  Then let me hear you with regard to

3   the motion.  Let's address that.  I've reviewed the papers and

4   reviewed all of the decisions.  So why don't you tell me

5   exactly what your position is.

6        MR. COZEN:  If Your Honor please, Steve Cozen from

7   Cozen O'Connor on behalf of the plaintiffs.

8        The motion before the court seeks, under Rule

9   60(b)(6), to vacate judgments entered in this MDL against the

10   Kingdom of Saudi Arabia and the Saudi High Commission, which

11   after dismissal and appeal, became final when the Supreme Court

12   denied certiorari in June of 2009.

13        However, on November 7, 2011 the Second Circuit in Doe

14   v. Bin Laden and Afghanistan overruled the previous panel's

15   decision in this case, held that 1605(a)(5), the noncommercial

16   tort exclusion to the Foreign Sovereign Immunities Act, is a

17   basis for a suit arising out of the terrorist attacks of 9/11,

18   validated the cause of action against a nondesignated foreign

19   sovereign for providing material support to al-Qaeda, and

20   ordered that the case should proceed.

21        THE COURT:  When you say validated the cause of

22   action, I'm not sure that they made that kind of determination.

23        MR. COZEN:  When I say validated the cause of action,

24   what I meant was they say there is a basis, based upon

25   allegations with respect to the provision of material aid and

C3f9tera

1  support to sustain jurisdiction under 1605(a)(5) as a tort

2  claim.

3  THE COURT:  Wouldn't it be more accurate to say they

4  said it could be a basis and they sent it back in that case for

5  discovery to determine if, in fact, there was a basis.

6  MR. COZEN:  Well, technically I would not defer or

7  disagree with your Honor in this respect.

8  They sent it back for two things.  One was to

9  determine whether or not the, quote, whether the

10  Taliban-was-the-government defense was an adequate defense.

11  And the second was whether or not discretionary function was

12  actually at play.

13  THE COURT:  And that's the critical issue.

14  MR. COZEN:  But the allegations of the complaint and

15  the adoption of the -- the adoption of the district court

16  opinion, together with the articulation of their reasons for

17  their holding, to me validates the cause of action which is --

18  which was stated in the complaint that Afghanistan, through the

19  Taliban, provided a safe haven for and provided material aid

20  and support to al-Qaeda which enabled them to attack the United

21  States.

22  THE COURT:  Well, again, I don't think that that's

23  completely accurate.  It validated a possible cause of action.

24  But the court specifically said -- as a matter of fact I'll

25  quote from the opinion:  "Let us be clear.  We make no judgment

C3f9tera

1    as to whether the allegations in the complaint are sufficient

2    to state a claim or even to provide jurisdiction."

3         MR. COZEN:  I'm not disagreeing, and perhaps I'm using

4    the word in a general sense, your Honor.

5         The point is that the Second Circuit, of course, had

6    previously, in August of '08, held in this case that the sole

7    and exclusive basis for upholding the dismissal of our claims

8    against the Kingdom and the Commission was the inapplicability

9    of 1605(a)(5) and the presumed exclusivity of 1605A, the

10   terrorist exception, to the acts complained of in our first

11   amended complaint and in our RICO statements, although they

12   credited our allegations as having been well detailed and well

13   documented, that sole and exclusive basis, your Honor, has now

14   been abrogated.  And the law is as stated in Doe.

15        We are left then, if you will, with an anomalous

16   situation.  In the absence of a Rule 60(b)(6) relief in the

17   same MDL, in which similar claims are made, against similarly

18   situated sovereigns arising out of similar wrongful acts

19   resulting from identical harm, that litigation may proceed

20   against Afghanistan but not against Saudi Arabia or the Saudi

21   High Commission.

22        THE COURT:  But that's not -- again, that's not

23   necessarily true.

24        If, as the Court said -- the Court said, indeed, the

25   district court had ordered further discovery to provide for

C3f9tera

1    fact-finding with regard to whether the alleged acts were

2    attributable to Afghanistan and whether they were

3    discretionary.

4           If that discovery determined that those acts aren't

5    attributable to Afghanistan or that discovery establishes that

6    they were discretionary acts, there is no cause of action in

7    Afghanistan -- against Afghanistan.

8           MR. COZEN:  Your Honor, I am not prejudging what final

9    determination this court will make once that jurisdictional

10   discovery is taken with respect to the existence of the cause

11   of action by Afghan -- by the Doe plaintiffs against

12   Afghanistan.

13          What I am saying is that the sole and exclusive basis

14   for the dismissal of our claims against the Kingdom and the

15   Commission were the applicability of 1605(a)(5), the tort

16   exception on the theory -- never reaching the other issues --

17   simply on the theory that the terrorist exclusion or the

18   terrorist exception trumped the tort exception.  That has now

19   been disposed of in the Second Circuit.

20          THE COURT:  But, again, I went back and read all of

21   the opinions very carefully.  That's not accurate.

22          What's accurate that you said was that that may have

23   been the sole and exclusive basis on which the Second Circuit

24   affirmed the dismissal.  But in reading Judge Casey's opinion,

25   it was not the sole and exclusive basis on which Judge Casey

C3f9tera

1    determined that there was no cause of action against Saudi

2    Arabia.

3            MR. COZEN:  That is correct, your Honor.

4            However, if you undoubtedly read again the Second

5    Circuit opinion you'll note footnote fifteen where the court

6    says since we have decided -- on page 49 of their opinion --

7    since we have decided that 1605(a)(5), the noncommercial tort

8    exception, doesn't apply, it is trumped by 1605A, we don't

9    reach any of the other assertions that -- as to whether or not

10   there is or is not jurisdiction under it.

11           THE COURT:  But I understand -- then I understand your

12   argument.  Your argument is that it should -- the judgment

13   should be vacated simply because the Second Circuit didn't

14   reach that issue on appeal as opposed -- you're not arguing

15   that Judge Casey didn't address that issue in his decision.

16           MR. COZEN:  I'm not arguing that Judge Casey didn't

17   address that issue in his decision.

18           We argued the contrary in front of the Second Circuit.

19           The Second Circuit never reached that because the

20   Second Circuit made the determination that 1605(a)(5), which

21   Judge Casey said was applicable, they said wasn't applicable.

22   So they never had to reach the subsequent issue of the

23   alternative grounds for dismissal.

24           THE COURT:  Okay.  So that --

25           MR. COZEN:  So now what we are left with, your Honor,

C3f9tera

1   if you please, is that we have a rather perverse situation in

2   which the plaintiffs in Afghanistan are entitled to proceed

3   with their case.

4         I don't want to conflate -- and I would like this

5   Court not to conflate -- the issue of whether or not we are

6   entitled to 16 -- to Rule 60(b)(6) relief with the issue of

7   whether or not the defendants, the Kingdom and the Commission,

8   have a right to assert, once those judgments are open and

9   they're back in the case, whether they have a right to assert

10  that they have some legal basis for getting out of the case.

11        THE COURT:  But that was all argued and litigated

12  before Judge Casey.  Why do you --

13        MR. COZEN:  But it was never determined on appeal.

14        THE COURT:  But that's appeal.

15        I'm trying to figure out -- you're saying that even if

16  it's decided by this court that because it wasn't addressed on

17  appeal that you get a do-over?

18        MR. COZEN:  Yes.

19        In fact, not only do we get a do-over.  I'm saying I

20  never had the right to have the Second Circuit determine

21  whether or not my arguments as to why Judge Casey was wrong

22  when he said I'm going to let them out on discretionary

23  function, when the body of law that was developing was clear

24  that discretionary function didn't apply when you violated

25  international law and acts -- and laws of humanity.  I never

C3f9tera

1   got an opportunity to have that issue determined by the Court

2   of Appeals.

3           THE COURT:  Okay.

4           MR. COZEN:  Because they first decided that the

5   tort -- the noncommercial tort exception simply didn't apply.

6           Judge Casey, in fact, had said it did apply.  So we're

7   not here -- we're not here, your Honor, because of what Judge

8   Casey held or what Judge Casey didn't hold.

9           We are here because in Doe v. Afghanistan they

10  reversed the opinion in our case.

11          THE COURT:  Right.

12          MR. COZEN:  And said you are entitled to go further

13  and have your claims determined and heard.

14          THE COURT:  No.  They said you were entitled to a

15  similar consideration that you received by Judge Casey.  Isn't

16  that really what they said?

17          MR. COZEN:  No.  Because then your Honor if that's the

18  case, then are you telling me that I have a right now to file a

19  new appeal from Judge Casey's original decision and ask the

20  Court of Appeals to rehear the case years later?

21          That's not the procedure.

22          THE COURT:  No.  You would have the right, if I were

23  to deny your motion, to appeal that denial of your motion on

24  the basis in which you're arguing that the Second Circuit

25  didn't have the opportunity to decide this issue and should now

C3f9tera

1    decide this issue in the context of the ruling that's already

2    been made in this case.

3            MR. COZEN:  Well I understand, your Honor.  But I

4    don't think that's how it works.

5            THE COURT:  You want a do-over though.

6            MR. COZEN:  No --

7            THE COURT:  Judge Casey has already ruled.

8            Are you asking for a different ruling from me than

9    Judge Casey already gave you on this issue?

10           MR. COZEN:  Well, if Your Honor please, what I'm

11   asking first is that you rule on a 60(b)(6) motion.

12           THE COURT:  To vacate and to do what?

13           MR. COZEN:  To vacate the judgment.

14           THE COURT:  And do what?

15           MR. COZEN:  To allow the defendants back in the case,

16   let them assert the same legal defenses.  Let us argue them.

17           THE COURT:  But you already did that.

18           MR. COZEN:  No, but, your Honor --

19           THE COURT:  You did that before Judge Casey and Judge

20   Casey said the record is undisputed that these are

21   discretionary acts.  Isn't that what he ruled?

22           MR. COZEN:  Excuse me, your Honor.  No.

23           The fact of the matter is there was no -- there was no

24   evidentiary record in that regard.  Judge Casey made the

25   determination that this was -- that this was subject to the

C3f9tera

1   discretionary function defense because of what he perceived the

2   law to be.

3          And what I'm suggesting, that's not the law of this

4   case at this juncture.

5          THE COURT:  But Judge Casey's determination was after

6   you had a full opportunity to make the argument.

7          MR. COZEN:  Absolutely.

8          THE COURT:  And you made the argument.

9          And if you thought at the time there was some disputed

10  evidence to offer, you had the obligation to present it at that

11  time because Judge Casey had not yet made a ruling.

12         MR. COZEN:  Excuse me.

13         THE COURT:  And so Judge Casey -- you made the

14  complete argument that you had at the time.  And Judge Casey --

15  didn't he reject that argument?

16         MR. COZEN:  Yes.  But that is not the way it happened.

17         THE COURT:  Okay.

18         MR. COZEN:  The way it happened, your Honor, was that

19  motions to dismiss were filed.

20         THE COURT:  Right.

21         MR. COZEN:  Our allegations -- and if you look at our

22  allegations in our first amended complaint, they go from

23  paragraph three -- as to the Kingdom of Saudi Arabia, from 398

24  to 505; including direct allegations of Saudi government

25  officials in the United States aiding the terrorists by union,

C3f9tera

1    aiding the terrorists in the United States.

2           They go to the whole issue of the Kingdom through its

3    dominated and controlled charities and other nongovernmental

4    organizations.

5           THE COURT:  Okay.

6           MR. COZEN:  Using them as fronts to fund international

7    terrorism.

8           Those allegations were not disputed factually.  They

9    were argued legally.

10          We believe Judge Casey made the wrong legal decision.

11   We would think on the basis of --

12          THE COURT:  Which part of the decision do you say is

13   wrong that you should be able to argue again?

14          MR. COZEN:  He only decided on -- as to the Kingdom on

15   the basis of the discretionary function exclusion.

16          THE COURT:  Right.

17          MR. COZEN:  And the fact of the matter is that when

18   you look at the Doe case, Doe cites -- Doe cites, with

19   approval, Liu and Letelier.

20          And Liu and Letelier stand for the proposition that

21   any such activity as we have alleged where sovereign nations

22   set about to kill other people, to assassinate them, to impose

23   acts of terror upon them, are in and of themselves by their

24   nature nondiscretionary.

25          So my position is that --

C3f9tera

1          THE COURT:  Well but that's not the allegation you

2    made against the Kingdom of Saudi Arabia.

3          MR. COZEN:  It certainly is.

4          THE COURT:  That the Kingdom of Saudi Arabia

5    specifically planned the torts that you're --

6          MR. COZEN:  No.  That wasn't the allegation.

7          THE COURT:  Right.  That's not the allegation.

8          MR. COZEN:  But the allegation was the same allegation

9    as in Afghanistan.

10          The allegation was that the Kingdom of Saudi Arabia --

11          THE COURT:  Supported terrorists.

12          MR. COZEN:  Supported international terrorism through

13    their dominated and controlled agents, servants, alter egos,

14    etc., knowingly did so, fully foreseeing that they would attack

15    western interests including the United States.

16          THE COURT:  And the circuit said if it turns out that

17    their investments and their contributions to charities were --

18    are discretionary functions, then you can't sue them.

19          Isn't that --

20          MR. COZEN:  That is not what the circuit said at all.

21          THE COURT:  Then what would be the purpose --

22          MR. COZEN:  That is not what the circuit said at all.

23    They never reached the issue.

24          THE COURT:  What would be the purpose of -- they said

25    that the district court -- they said the district court ordered

C3f9tera

1    further discovery to provide for fact finding with regard to

2    whether the alleged acts were attributable to Afghanistan and

3    whether they were discretionary.

4            MR. COZEN:  No.  You're talking about Doe.  You're

5    talking about Doe.

6            And what happened in Doe was that the Second Circuit

7    panel then approved, in a mini en banc procedure, said the

8    allegations in the pleadings allege nondiscretionary acts.

9    We're sending this back for jurisdictional discovery with

10   regard to whether or not there were -- there was a

11   discretionary function involved.  So they have to litigate

12   that.

13           THE COURT:  Right.  And that's already been litigated

14   here.

15           MR. COZEN:  No.  It has not been litigated here.

16           THE COURT:  But you argued that in front of Judge

17   Casey.

18           MR. COZEN:  But the fact is it has not been litigated

19   here because we took that up on appeal.  That was one of our

20   main arguments --

21           THE COURT:  I'm not talking about appeal.  I'm talking

22   about what was litigated here.

23           MR. COZEN:  How can I be foreclosed --

24           THE COURT:  You fully litigated that here, didn't you?

25           MR. COZEN:  How can I be foreclosed --

C3f9tera

1          THE COURT:  That's not the question.

2          MR. COZEN:  -- from having my day in court and my

3    right to prove that these were nondiscretionary acts and have

4    that argument in front of the Court of Appeals.

5          The only way that that can happen, your Honor, the

6    only way that that can happen is if --

7          THE COURT:  For me to do what?

8          MR. COZEN:  Is if you do what 60(b)(6) gives you the

9    inherent authority to do.

10          THE COURT:  And what would that --

11          MR. COZEN:  And that would be to vacate the judgments,

12    bring them back into the case, let them assert whatever

13    defenses they want to assert, both legal and factual.  If

14    discovery is necessary, we'll form and frame that discovery and

15    take that discovery.  And then you have to make a determination

16    based upon that discovery as to whether or not discretionary

17    function is really involved in this case.

18          Now, as to the other two alternatives -- and that's

19    why you should never reach the alternative bases.

20          But as to the other two alternatives, that was

21    disposed of in Doe.  The caused by, and entire tort

22    alternatives were disposed of by Doe specifically holding that

23    on the exact same kind of set of facts, the damage occurred in

24    the United States, the tort occurred in the United States, and,

25    in fact, the caused by means general proximate cause.

C3f9tera

1    They adopted.  They said there is no question, no

2    question that on the basis of the pleadings they meet all of

3    the first five requirements in the litany of requirements under

4    1605(a)(5).

5        So, what I'm suggesting to the court is Rule 60(b)(6)

6    has, as the Supreme Court says, gives this court the inherent

7    power, in simple English, for any other reason to vacate

8    judgments whenever such action is appropriate to accomplish

9    justice.

10        I think it would be a perversion of justice not to

11   bring them back into the case.  And the jurisprudence of -- let

12   me suggest to your Honor -- the jurisprudence of this circuit

13   and other circuits is very helpful in this regard.

14        First, where a change in the law goes to the very

15   basis of a claim or defense, that meets the exception or

16   extraordinary circumstance that is required under the Rule

17   60(b)(6) test.

18        THE COURT:  Well in what way does a change in the law

19   with regard to whether or not the noncommercial tort exclusion

20   could have applicability, how does a change in that law affect

21   a determination that even if it does have applicability these

22   are discretionary functions that take it outside?

23        MR. COZEN:  It has applicability, your Honor, because

24   you've got -- you have to then decide a factual -- a fact

25   intensive question that Judge Casey didn't ever address.

C3f9tera

```
 1              THE COURT:  But he did address.

 2              MR. COZEN:  No, he addressed it, but not in a fact

 3    intensive inquiry.

 4              THE COURT:  Well I don't see on your papers what

 5    different set of facts that you claim exists now that you're

 6    relying on than the different set of facts that you were

 7    relying on in front of Judge Casey.

 8              MR. COZEN:  We have the same factual allegations.  If

 9    there is a requirement for factual discovery to determine

10    whether or not any specific laws were broken or whether the

11    nature of the acts is violative of international law and the

12    laws of humanity and, therefore, cannot be possibly

13    discretionary, as Doe adopted by adopting the language of

14    Liu -- the holdings of Liu and Letelier, then we're going --

15    we're going to have a basis for saying Judge Casey was wrong.

16              You should correct that wrong.  And you should hold

17    that the discretionary function exclusion doesn't exist.

18              But you don't reach that unless and until you

19    recognize that since the sole and exclusive basis for

20    dismissing our appeal was that 1605(a)(5) didn't apply.  Now we

21    know 1605(a)(5) does apply.  So now let's apply it.

22              THE COURT:  But Judge Casey did apply it.  He applied

23    that analysis, didn't he?

24              And he made a specific finding that because there were

25    no factual disputes raised in the Court's resolution of this
```

C3f9tera

1    motion no jurisdictional discovery is necessary.

2                He specifically made that determination.

3           MR. COZEN:  And we took that up saying that was wrong.

4    And we never got an answer to that because the Court of Appeals

5    made the determination that 1605(a)(5) didn't apply in the

6    first instance.

7                We believe Judge Casey was wrong.  We believe we will

8    be able to convince you he was wrong.

9           THE COURT:  That's what I'm asking.  I understand your

10   argument that you want an opportunity to argue to the circuit

11   that Judge Casey was wrong.

12               How does that give you a do-over for Judge Casey's

13   decision in front of me?

14          MR. COZEN:  Your Honor, it is not so much a do-over of

15   Judge Casey's decision as it is a right to bring parties back

16   into a case who were improvidently let out of the case, bring

17   them back in, and now deal with the issues that exist within

18   1605(a)(5).

19               If there is the need for jurisdictional discovery with

20   regard to discretionary function or any other issue, we will

21   engage in that.  And you'll make the determination in that,

22   whether there is a need.

23          THE COURT:  Well that's a big "if."

24               You're not arguing that to me now.

25               I have no reason to believe that discovery is

C3f9tera

1    appropriate because Judge Casey said no factual disputes have

2    been raised.  Jurisdictional discovery is not necessary or

3    appropriate.  And you've put nothing in your papers to argue

4    that it is.

5            MR. COZEN:  Well, excuse me, your Honor, but we have.

6            In fact, we have.

7            THE COURT:  You've done discovery.  So what facts

8    are --

9            MR. COZEN:  No.  We didn't do any jurisdictional

10   discovery on discretionary function because there was no

11   dispute.  The Kingdom and the Commission did not dispute our

12   factual allegations.

13           THE COURT:  So what's the dispute now?

14           MR. COZEN:  The dispute now is whether or not if you

15   take -- if you still take our factual --

16           THE COURT:  The factual dispute.

17           MR. COZEN:  I don't think there is because if you

18   take -- if you take our factual assertions --

19           THE COURT:  As Judge Casey did.

20           MR. COZEN:  -- as true.

21           THE COURT:  As Judge Casey did.

22           MR. COZEN:  -- as true.

23           THE COURT:  Right.

24           MR. COZEN:  Then on the basis of the Doe decision and

25   on the basis of Liu and Letelier I think you must come to the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C3f9tera

1    conclusion that no foreign sovereign can engage in the support

2    of killing innocent people and say that is a discretionary act.

3              Now, the fact of the matter is, your Honor, sure,

4    there are two ways to go about this.  I think that this is the

5    quintessential case for 60(b)(6) relief.  Clearly, the sole and

6    exclusive basis for throwing us out was that 1605(a)(5) didn't

7    apply.

8              THE COURT:  That wasn't the sole and exclusive basis

9    of throwing you out.

10             MR. COZEN:  It was.

11             THE COURT:  It was not.  Judge Casey went through the

12   analysis that you asked him to go through.

13             Right?

14             MR. COZEN:  No.  Judge Casey found that 1605(a)(5) did

15   apply but the discretionary function exclusion A knocked it

16   out.  We took that up to the Court of Appeals.  We argued it in

17   front of the Court of Appeals.  They never reached that

18   argument.

19             THE COURT:  I understand that.  I understand that.

20             MR. COZEN:  So what I'm saying --

21             THE COURT:  I'm trying to figure out whether you're

22   simply trying to get me to redecide Judge Casey's decision or

23   you're simply trying to find a mechanism to go back to the

24   circuit and have them review on appeal what Judge Casey did.

25   Those are two different issues.

C3f9tera

1           Are you asking me to simply get you back to the

2   circuit so you can appeal Judge Casey's ruling again or are you

3   asking me to make a different determination than Judge Casey

4   did on the exact same record that both of us have?

5           MR. COZEN:  I'm asking you to do two things.

6           I'm asking you, one, to rule on the 60(b)(6) motion

7   which is well grounded and is the quintessential type of case

8   in which it would be a perversion of justice for this court --

9           THE COURT:  Well that doesn't answer the question that

10  I just asked you.

11          MR. COZEN:  I'm trying to answer.

12          THE COURT:  That doesn't answer the question I asked

13  you.  Are you asking me --

14          MR. COZEN:  I'm telling you.

15          THE COURT:  No, you didn't tell me.  I gave you two

16  choices and you've given me a third.

17          MR. COZEN:  No.

18          THE COURT:  I asked you a specific question.  Are you

19  asking me -- you want me to give you 60(b)(6) relief so that

20  you can have an opportunity to relitigate the issue that was

21  decided by Judge Casey, or are you asking for 60(b)(6) relief

22  so you can go back to the circuit and appeal Judge Casey's

23  decision?

24          Which one of those two are you asking me to do?

25          MR. COZEN:  Both.  And I'll tell you why.  Now I'll

C3f9tera

 1   explain why.

 2              THE COURT:  Well I can't do both.

 3              MR. COZEN:  Well, you can.  Because you have two

 4   separate issues before you.

 5              The first issue you have is whether 60(b)(6) relief is

 6   justified.

 7              Forget about what the defenses may be.  Forget about

 8   what the legal arguments may be as to ultimately why the claim

 9   ought to be dismissed.  We don't agree, but leave that aside.

10              The only question before this court right now is

11   whether or not to grant or not grant 60(b)(6) relief where

12   there has been, after a full and complete appeal and a sole and

13   exclusive basis saying 1605(a)(5) doesn't apply, a total

14   reversal by the Court of Appeals.  And you have another case,

15   whatever happens to it, another case, identical situation,

16   identical for wrongful acts, identical assertions against

17   another sovereign state, identically in the same position as

18   Saudi Arabia.  That's going to go forward.  What results in

19   that, I don't know.

20              THE COURT:  It could end up being the same result as

21   in this case.  I don't know.

22              MR. COZEN:  May be.  I don't know either.  I'm not

23   prejudging that.  I'm not conflating the two.

24              If I get my 60(b)(6) relief, then I'm sure that my

25   friends on the other side will assert as defenses, legally and

C3f9tera

perhaps factually, which they didn't do before, the alleged
alternative grounds or maybe at least one of the alleged
alternative grounds that they have asserted in their papers.

     Your Honor will have to make a decision as to whether
or not those have legal validity.

     We want the opportunity to argue before you that they
do not have legal validity based upon the jurisprudence that
has grown up, particularly the adoption by Doe of Liu and
Letelier and the other case law that is developed in the
various circuits with respect to these issues.

     We want to have the opportunity to argue that to you.

     You may conclude, after we argue that, that, you know,
I don't think there is enough, just by the assertions and the
RICO statements, I don't think there is enough for me to decide
this.  I want some additional jurisdictional discovery.

     Or you may conclude I think Judge Casey got it right.
I'm going to hold the same way.

     And now we'll go up on appeal on that narrow issue.
And the Court of Appeals will hear us on that narrow issue.

     But you can't get there at all -- you can't get there
at all unless you first do what is the right and proper thing
to do and which I believe would be an abuse of discretion not
to do, which is to take a change of the law that goes right to
the heart of our right to be in court, 9/11 victims to have
their day in court and throw them out and say no, I'm not going

C3f9tera

1    to relieve the judgment.

2            Now, it may very well be -- it may very well be that

3    at the end of the day you come to the same conclusion as Judge

4    Casey did or you come to a different conclusion from what Judge

5    Casey did.  In either event, one of us will then take that

6    narrow question up on appeal to the Second Circuit and now the

7    Second Circuit will have to deal with it.

8            On the other hand, if you were to deny what I believe

9    we are so clearly entitled to, which is the 60(b)(6) relief and

10   vacate that judgment, then we will go up to the Second Circuit

11   saying that you abused your discretion.  And the Second Circuit

12   will make a determination as to whether you did or did not

13   abuse your discretion.  It will not, however, have before it,

14   nor will it have the ability to decide whether or not Judge

15   Casey was right in the first instance back in 2005.  That won't

16   be before the Second Circuit.

17           So the only way to get there, the only way to get

18   there for both sides, if that's the issue that has to be

19   decided -- I make it clear, once again, I personally don't

20   believe it has to be decided because I believe that the Second

21   Circuit in Doe by their articulation and adoption of Liu and

22   Letelier and the importance of Liu and Letelier in the

23   1605(a)(5) context, the fact that Congress had it in front of

24   them when they passed the terrorist exception and that Letelier

25   specifically says, and Liu also refers to the fact that you

C3f9tera

1     can't have discretion to kill people.  That's not a

2     discretionary act.

3          So let's make it clear.  The discretion we're talking

4     about is not the state's discretion to give money to charity.

5     That's a red herring.  We're talking about the state's right to

6     fund international terrorism knowing the foreseeable and

7     probable result and to be held accountable for it.

8          So the only way that we can resolve what apparently,

9     your Honor, is a dilemma that you have articulated, which is do

10    you want a do-over when Judge Casey decided against you in

11    2005, is to grant the 60(b)(6) relief.  That's a different

12    issue.

13         Are we entitled to that because a change in the law

14    where our case was gutted by the wrong law, go back and argue

15    again on the present record, or on a more fulsome record if

16    your Honor believes that there should be developed a more

17    fulsome record, together with Magistrate Judge Maas.  And then

18    have you make that determination.  Are these other alternative

19    grounds -- none of which Judge Casey accepted, by the way --

20    are these -- other discretionary function -- are these other

21    alternative grounds valid?  Do they have any substance?

22         You have to make that decision, your Honor.  And when

23    you make that decision, for me or against me, I then have an

24    ability to go to the Second Circuit and say to the Second

25    Circuit here's the specific holding.  You know that 1605(a)(5)

C3f9tera

1    is applicable.  Here is why we were thrown out.  Or here is why

2    we were kept in.  Was it right or wrong?

3          But I can't get there simply by taking you up to the

4    circuit on the abuse of discretion standard if you deny my Rule

5    60(b)(6) application.  That I can't do.  Because that will not

6    encompass that question.

7          And that's why I've asked you, please, sir, to

8    understand -- and I think the case law is pretty clear on this.

9    That's why such broad discretion is granted, why you have this

10   great reservoir to do equity here.

11         Let's not conflate the two.  60(b)(6) gives you the

12   unfettered authority to vacate the judgments.  Once those

13   judgments are vacated, we'll have plenty of time to argue all

14   of the implications of the Doe decision, all of the

15   implications of Liu and Letelier and any other legal defenses

16   that the defendants want to put forward.

17         But since we were thrown out by an -- what is now an

18   erroneous interpretation of the law, has been determined by the

19   circuit to be an erroneous interpretation of the law, that went

20   to the very heart and gut of our right to even be in the case,

21   we have a right -- I would suggest particularly in view of the

22   fact you're going to have to deal -- you've got -- let me make

23   one final point because I think you've probably heard enough

24   from me.  Let me make one final point.

25         You've got Afghanistan over here and the Doe

C3f9tera

1   plaintiffs are just like our plaintiffs.  They're proceeding

2   against Afghanistan.  You're going to have to decide that.  But

3   they're proceeding.  They have a right to proceed.

4         We, on the other hand, same case, same facts, same

5   wrongful acts, same kind of theories, don't have the right to

6   proceed.  That can't be.  We may have a right to proceed and

7   lose or we may have a right to proceed and win.  But we have a

8   right to proceed.

9         And, in fact, any decision other than the granting of

10  our 60(b)(6) motion would be in derogation of and undercut the

11  whole theory behind the Foreign Sovereign Immunities Act.

12  Because the purpose of the Foreign Sovereign Immunities Act,

13  particularly when you read the House report, when that act was

14  passed back in 1976, was to bring uniformity of treatment

15  between every sovereign state.  Uniformity of treatment.

16        You're not going to have uniformity of treatment if in

17  your same MDL some 9/11 victims have a right to go ahead and

18  sue Afghanistan and other 9/11 victims don't have a right to go

19  ahead and sue Saudi Arabia and the Saudi High Commission.

20        At the end of the day, you may decide for other

21  reasons we're right or we're wrong and somebody is going to

22  take it up on appeal.

23        But you won't have that inconsistency which undermines

24  the very thesis and the very basis of the Foreign Sovereign

25  Immunities Act in the first place, which is to bring uniformity

C3f9tera

1    to the treatment of every foreign state.

2           And of course I'm referring to those -- other than

3    those who have been designated as state sponsors of terrorism.

4    They're in a different category.

5           So, I would urge this court that when you read Doe,

6    when you see footnote fifteen and you recognize that the sole

7    and exclusive basis on which we were thrown out by the circuit

8    was one that has been overruled and abrogated, we have a right

9    to bridge the -- and we're timely.  We brought the motion

10   timely.  The instrumentalities and agencies which they control

11   and dominate are still in this case.  Some are up on appeal.

12   Some are still before you.  It's only been two years since the

13   Supreme Court denied our petition for cert.  And I won't get

14   into the arguments as to whether or not there is even a shorter

15   period of time.  But justice and equity require that the

16   60(b)(6) motion be granted, that we be given the opportunity to

17   have them back in the case.

18          And then we'll litigate those issues.  If you feel the

19   same as Judge Casey did on the basis merely of allegations and

20   you want to construe discretion the way he did, which is the

21   discretion to decide to give to charities as opposed to the

22   discretion to finance terrorism to kill people, that will be

23   your determination.  But we'll have a clean shot in the circuit

24   which we can never get simply by going up on a denial on an

25   abuse of discretion basis.

C3f9tera

1          THE COURT:  Let me hear from the other side.

2          Yes.

3          MR. KELLOGG:  Good morning, your Honor.

4          Michael Kellogg.  I represent the Kingdom of Saudi

5     Arabia.  I'll also be speaking on behalf of the Saudi High

6     Commission, which is represented by Roy Englert.

7          The plaintiffs have conceded, as your Honor has

8     pointed out, that there has been no change in the decisional

9     law on which Judge Casey based his decision back in 2005.  As a

10    consequence, the whole premise of their 60(b)(6) motion is

11    lacking.

12         Judge Casey agreed with the position ultimately

13    adopted by the Second Circuit that a tort act could proceed and

14    was not precluded by the fact that it did not fall within the

15    state sponsorship of terrorism exception.  But he held that it

16    was a discretionary function based on the allegations made by

17    the plaintiffs, based on the evidence presented by the Saudi

18    High Commission, based on the representations made by the

19    Kingdom of Saudi Arabia.  The plaintiffs made all of these

20    arguments that they want to make again at that time.

21         They argued Letelier and Liu.  They argued that

22    Bayoumi might have been an agent of Saudi Arabia.  They sought

23    jurisdictional discovery which Judge Casey properly denied

24    under the Second Circuit's precedent in Virtual Countries v.

25    Republic of South Africa that when a sovereign state comes in

C3f9tera

1    and asserts FSIA immunity it is the responsibility of the

2    plaintiffs to present evidence -- not just allegations but

3    evidence to dispute that in order to go forward and get

4    jurisdictional discovery.

5           Now, Judge Casey held you haven't made that showing.

6    He denied their request for jurisdictional discovery.

7           They did not even appeal that discretionary decision

8    to deny them jurisdictional discovery.  Instead, they went on

9    the record as it was before Judge Casey and they argued that

10   the discretionary function exception did not apply.

11          Now, of course the Second Circuit did not reach that

12   decision because it held, based on the state sponsorship of

13   terrorism exception, that they didn't even have to go there.

14          Judge Casey, of course, agreed with the position taken

15   by the Second Circuit now in the Doe case which is why he

16   reached the discretionary function exception.

17          THE COURT:  Well when you say he agreed, that wasn't

18   his ruling.

19          MR. KELLOGG:  He agreed with that -- his ruling was

20   based on the discretionary function exception.  That's correct.

21          THE COURT:  Well, no, his ruling was based on the

22   inapplicability of the exception.

23          MR. KELLOGG:  It was based on the inapplicability of

24   the tort exception because it was a discretionary function.

25          THE COURT:  Well the -- those are alternative

C3f9tera

1    determinations.  I don't remember Judge Casey saying -- making

2    a ruling that, in fact, that the noncommercial tort exception

3    did apply.

4              MR. KELLOGG:  No.  He held that it did not apply.

5              THE COURT:  Right.

6              MR. KELLOGG:  He also held that it was not precluded

7    by the state sponsorship of terrorism provision, the provision

8    about providing material support to terrorists.  So in that

9    respect he ultimately agreed with what the circuit held in Doe

10   which is why he went on to reach the discretionary function

11   exception and held in our favor.

12             The solicitor general representing the department of

13   justice and the department of state was invited by the Supreme

14   Court to file a brief on the petition for certiorari.  And

15   they -- although they disagreed in some respects, as well with

16   the Second Circuit's reasoning, they agreed with the result and

17   they said -- and I'm quoting from the amicus brief at three,

18   four.

19             "The lower courts correctly concluded that Saudi

20   Arabia and its officials are immune from suit for governmental

21   acts outside the United States.  While the United States

22   disagrees in certain respects with the analysis of the court of

23   appeals further review by this Court to determine the best

24   legal basis for that immunity is unwarranted."

25             And the Supreme Court followed the solicitor general's

C3f9tera

1   recommendation and denied certiorari.

2          Now, nothing in Doe has cast any doubt on what the

3   solicitor general had to say or on Judge Casey's original

4   decision in this case.

5          THE COURT:  Well why is the solicitor general's

6   advocacies determinative one way or the other?

7          MR. KELLOGG:  It is not.  What is determinative is

8   Judge Casey's decision.  I simply raised that to point out that

9   the United States, the state department, etc., agreed with

10  Judge Casey's original decision to deny the case and said that

11  further proceedings were unnecessary and inappropriate

12  particularly in an FSIA context where the burdens of litigation

13  on a sovereign state are supposed to be avoided as promptly as

14  possible if a relevant exclusion applies.

15         Now as your Honor quoted, the court in Doe said let us

16  be clear.  We make no judgment as to whether the allegations in

17  that complaint are sufficient to state a claim or even to

18  provide jurisdiction.  They simply remanded for this court to

19  make its own determination as to whether the discretionary

20  function exception applied.

21         Counsel makes a great deal of the fact that they cited

22  Letelier and Liu.  They cited Letelier and Liu only for the

23  proposition that a terrorist attack within the United States

24  could fall within the tort's exception to immunity.  But they

25  did not make any determinations regarding whether the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C3f9tera

discretionary function exception applied.  And they remanded to
this court.

          Indeed, and quite remarkably, they cited Judge Casey's
earlier discretionary function exception with approval noting
that he dismissed, quote, similar claims against Saudi Arabia
and instrumentalities, quote, after finding the alleged acts
encompassed in the discretionary acts exemption.

          So it could hardly be calling into question Judge
Casey's prior decision in this case.

          Now as I noted, plaintiffs are now arguing that they
want jurisdictional discovery.  Judge Casey denied them
jurisdictional discovery and they did not even appeal that
determination.

          So, the whole premise of their 60(b)(6) motion is
simply mistaken.  There has been no change in the decisional
law on which this court's decision was based.

          Judge Casey granted the motion to dismiss over seven
years ago, in 2005.  Final judgment was entered in January of
2006.  And I would note it was entered at the behest and the
urging of the plaintiffs who wanted finality so that they could
take that appeal.

          Now, there were three cases against the Saudi High
Commission.  That were not part of that original judgment.  But
there was a stipulation entered in May of 2005 that
specifically said the parties hereto, quote, will adopt as a

C3f9tera

1    binding order in the action with regard to Saudi High

2    Commission the order of this court deciding the consolidated

3    cases.

4          So effectively this final judgment applied to the

5    Saudi High Commission as well in all of the cases.  It applied

6    to Saudi Arabia itself in all of the cases.  That is over six

7    years ago that the cases -- that final judgments were entered.

8          THE COURT:  Well, you don't argue, though, that they

9    had the basis to raise this issue prior to the Court's decision

10   in November.

11         MR. KELLOGG:  I'm sorry.  Your Honor I didn't quite

12   catch that.

13         THE COURT:  You're not arguing that it's -- that they

14   should have -- they had an opportunity to timely make this

15   motion based upon the Court's -- the Circuit's most recent

16   decision at any time prior to November when the Court issued

17   its opinion.

18         MR. KELLOGG:  Well, of course.  It's a change in

19   decisional law.  And that's the basis of their motion.

20         But the Second Circuit has made absolutely clear that

21   a change in decisional law is not a, quote unquote,

22   extraordinary circumstance sufficient to warrant vacating a

23   prior final judgment.

24         They said that quite clearly in the DeWeerth case

25   cited in our briefs; that even when a prior judgment turns out

C3f9tera

to be wrong that is not a basis for disturbing the finality of

that judgment, particularly not a seven-year-old final

judgment.

Now plaintiffs accordingly argue that there's certain

equitable factors that justify reopening it in this case.  They

say there's a risk of inconsistent judgment.

Well the Second Circuit dealt with that issue as well

in United Airlines v. Brien, which we cite in our case.

And they said specifically at page 176 of their

opinion, potential hardship resulting from inconsistent

judgment is, quote, not by itself sufficiently extraordinary to

justify reopening a judgment.

All of the cases the plaintiffs cite are not only much

fresher than the final judgments at issue here but they were

cases in which inconsistent results against the same defendant

was at issue.  The defendant was still in the case.  One

plaintiff was going to be able to proceed and one plaintiff was

not going to be able to proceed.  And the reason for that had

to do, generally when the court granted, with one case had been

removed to federal court.  And the federal court, anticipating

under Erie what the state court was going to decide, tried to

make a judgment and got it wrong.  Those are the factual

scenarios in which the courts have, in rare circumstances,

granted a 60(b)(6).

We have nothing of that sort here.  The fact that

C3f9tera

1    Afghanistan remains in the case for now is not a reason to

2    reopen the case against Saudi Arabia and the Saudi High

3    Commission who have been out of this litigation for years.

4    There's nothing perverse about that.  That's standard

5    litigation practice.

6             And, indeed, it was urged by plaintiffs themselves.

7             As I said, they sought the final judgments, the Rule

8    54(b) judgments in this case in May of 2005.  Their motion for

9    entry of final judgment against the Kingdom of Saudi Arabia and

10   they said, quote, this is at page seven of their motion, the

11   claims against each defendant can be separately enforced;

12   accordingly, the claims against the defendants are separable

13   from the surviving claims.

14            And, again, they said the judgments themselves -- the

15   judgments entered on behalf of the defendants could not be more

16   final.  That's what they said about the judgments against the

17   Kingdom and the Saudi High Commission.

18            So the finality of those judgments, which was urged by

19   the plaintiffs, has to be respected at this point.

20            Plaintiffs have cited no case under 60(b)(6) remotely

21   comparable to the circumstances at issue here.

22            Now, they argue:  Well there would be no hardship on

23   the defendants if they were brought back into the case seven

24   years later.

25            That is emphatically not the case.

C3f9tera

1        These cases have been closed for a long time.

2    Sovereign immunity under the FSIA, as the Second Circuit

3    stressed in the Robinson case, is not just from liability; it's

4    also from the burdens of litigation.  And it would be contrary

5    to establish principles of sovereign immunity to require Saudi

6    Arabia in an instrumentality to now come back into the case and

7    bear the burdens of litigation.

8        Again, this is a point the plaintiffs made seven years

9    ago in their motion for entry of final judgment.  And I'd like

10   to quote again from that at page eleven.

11       It says in cases involving dismissals based on

12   sovereign immunity grounds, considerations of fairness to the

13   dismissed parties weigh heavily in favor of early appeal and

14   swift final dismissal from protracted litigation.  In such

15   cases should this court's order of dismissal ultimately be

16   sustained -- and here's the critical part quoted from them --

17   these parties are entitled to the finality such relief promises

18   as soon as possible, not years in the future, and without the

19   substantial costs and uncertainty of being forced to submit to

20   litigation until an appeal finally ripens.  They got their

21   wish.  They got their appeal.  They lost.  They sought Supreme

22   Court review.  They lost.

23       Now, the Second Circuit has subsequently changed the

24   decisional law on which it decided this case.  But the Second

25   Circuit has always made clear that is not a basis for reopening

C3f9tera

1    the judgment.

2              Afghanistan, I should note that the allegations

3    against Afghanistan are very different from those against the

4    Saudi High Commission and the Kingdom of Saudi Arabia as

5    described by Judge Casey.

6              They argue -- and I'm quoting here from the F.Supp.

7    District court decision.  They argue that Afghanistan expressly

8    agreed to conduct illegal and unlawful terrorist attacks on the

9    United States.

10             Now, in discovery on remand Afghanistan is going to

11   have an opportunity to put in evidence on that.  There will be

12   jurisdictional discovery, to see if there's any such basis for

13   analogies like that.

14             But there was no comparable allegation against Saudi

15   Arabia.

16             The allegation against Saudi Arabia, as Mr. Cozen

17   conceded, was not that they helped plan the attacks; not that

18   they agreed to attack the United States.  The allegation was

19   that they set up certain charitable organizations in Bosnia, in

20   other locations, and provided money to those that ultimately

21   found its way into the hands of terrorists.

22             The one allegation that they harp upon concerns a

23   Mr. Bayoumi in California who they claim -- they claim it more

24   directly now, but in their complaint they said suggested that

25   he might be an agent of Saudi Arabia.  Judge Casey looked at

C3f9tera

1  those allegations, held that the discretionary function

2  applied.

3       Letelier and Liu are very different cases where the

4  agents of the foreign government actually went in and committed

5  murders in the United States.  And the courts there held that

6  the discretionary function exception did not apply.

7       Judge Casey considered all of that and made a very

8  careful, considered decision that discretionary function does

9  apply.  That decision has held up for seven years now.  It's a

10  final judgment.  And it's completely inappropriate and

11  completely unjustified under the case law to now reopen it,

12  drag sovereign entities back into court to defend themselves

13  against charges that they successfully defeated and had

14  dismissed seven years ago.

15       Thank you, your Honor.

16       THE COURT:  Did you want to respond?

17       MR. COZEN:  Yes, I would like to respond, your Honor.

18  On several different bases.

19       In the first place I think it's very, very important

20  for this court to recognize that Judge Casey denied us

21  jurisdictional discovery because he viewed the discretion as

22  the right of the state to give money to charity, which was not

23  the basis or the gravamen of our complaint to begin with.

24       Number two, the Doe panel on the basis of the

25  pleadings -- and I would direct your Honor to the district

C3f9tera

1    court opinion in Doe.

2          Because in the district court opinion in Doe you will

3    see that they set forth what all of the allegations were

4    against Afghanistan; that they provided material support and

5    resources, including a safe haven of base of operations, that

6    they had meetings to plan activity -- terrorist activities such

7    as Bayoumi, which we said directly took place in the United

8    States.

9          What I'm trying to point out to you, is this, your

10   Honor, having said all of that, what did the Doe panel do?

11         The Doe panel went ahead and they said 1605(a)(5)

12   applies.  We agree with the district court that it does.  We

13   disagree with our prior brethren here in the circuit.

14         Now this is the law of the circuit.  Based upon the

15   pleadings, we are now sending this back for jurisdictional

16   discovery.

17         At the very least, that's what ought to happen here if

18   it is necessary to do so because our defendant colleagues

19   dispute or disagree with our factual assertions.

20         So, if you want to follow Doe, because our panel

21   didn't, then you've got to say, okay, let's take a look at the

22   pleadings and let's have some jurisdictional discovery on the

23   issue of discretionary function.

24         I would, again, urge this court that the terrorist

25   attacks three-panel clearly understood our claims differently

C3f9tera

1   from what Judge Casey understood them as.

2        Judge Casey cast them as the Kingdom decided to give

3   money to charities and that was a policy decision.  Even our

4   court of appeals didn't see it that way.  When you read their

5   recitation of the facts, the inferences that could be gleaned

6   from our factual recitation, they saw it entirely differently.

7   They saw it exactly what we meant.

8        That wasn't the decision we were complaining about.

9   The decision we were complaining about was their decision to

10  use charities and banks as fronts and alter egos to become part

11  and parcel of al-Qaeda and fund terrorism throughout the world

12  and with foreseeable consequences in the United States.

13       So, even our panel didn't see the facts the way Judge

14  Casey saw the facts.  So if Doe says, on the basis of the

15  pleadings go take discovery, we ought to have that same right.

16       Now, that gets to Mr. Kellogg's other notion that

17  somehow this is really good for the Foreign Sovereign

18  Immunities Act.  Somehow the balance that we ought to -- that

19  we ought to draw here is taking one foreign sovereign and

20  protecting it from having to litigate.  But taking another

21  foreign sovereign identically situated and say you have to

22  litigate.

23       I suggest to you no, your Honor.  Take a look at the

24  House discussion of the Foreign Sovereign Immunities Act and

25  the language that they use.  Their primary overriding concern

C3f9tera

1    was uniformity of treatment between foreign states.  You can't

2    have one foreign state in an identical case being treated

3    differently than another foreign state.

4           If they're entitled -- if 9/11 victims are entitled to

5    sue Afghanistan and get discovery on what kind -- what does

6    discretionary function mean?  Does it mean that they violated a

7    law, which means it couldn't be discretionary?  Or does it mean

8    that we adopt Liu an Letelier; i.e., if you violate the laws of

9    humanity and international law by setting upon helping to

10   attack innocent people and killing them, that can't be

11   discretionary, that's another whole set of issues.

12          We're happy to go and meet with them on that

13   battlefield.  We never had the opportunity to do so because

14   Judge Casey denied us the right to do so.  And the Doe panel

15   didn't deny the right to do so to Afghanistan.

16          And they continue to neglect the fact that we asserted

17   the Bayoumi role in this whole thing and, in fact, as Senator

18   Graham said he was convinced that Bayoumi acting as a Saudi

19   government official was directly involved in the 9/11 attacks.

20   Whether or not a finder of fact later determines that to be the

21   case is a different issue.  But it certainly doesn't even come

22   close to dealing with a discretionary function exclusion.

23          Now I would say -- I would say to your Honor, you

24   know, you take a look at Doe.  Don't just take a look at the

25   circuit case.  Take a look at the district court case.  See the

C3f9tera

1  allegations that they had in front of them.  See the relief

2  that the circuit gave them.  And note, note, please, that they

3  point out in Doe that in the debate surrounding the adoption of

4  the terrorism exception, the prior cases, Liu and Letelier were

5  actually, not just presumptively, but actually before them.

6  They were aware of their existence and they discussed them.

7  And it was Letelier that said those decisions make clear that a

8  foreign state has no discretion to perpetrate conduct designed

9  to result in the assassination of an individual or individuals;

10 action that is clearly contrary to the precepts of humanity as

11 recognized in both national and international law.

12       So, the point that I make here, your Honor, is if you

13 view, as Judge Casey viewed, which the Court of Appeals didn't

14 view it the same way, but if you view the decision that has to

15 be viewed -- that has to be examined for discretion as we're

16 going to give money to Islamic charities, that's not what this

17 case is all about.  Doe didn't view it that way in looking at

18 the activities of Afghanistan.  They viewed it differently.

19 And our Court of Appeals panel, headed by Chief Judge Jacobs

20 viewed it differently.  They understood exactly what the

21 gravamen of our complaint was.  And it wasn't about making a

22 decision to give money to charity.  It was about using

23 charities as a front and as an integral component of al-Qaeda

24 for the purpose of perpetuating the establishment of an

25 international structure of terrorism capable of attacking the

C3f9tera

1    United States which they did.

2           Finally, your Honor, I must say, once again, and

3    you'll forgive me if for some reason I haven't been articulate

4    enough in my discussion of this particular issue.  It is clear

5    to me, from my reading of the 60(b)(6) jurisprudence in this

6    circuit, and in the United States Supreme Court, that one

7    cannot conflate the issue of the right to 60(b)(6) relief with

8    the issue of:  What will happen afterwards?  Are there good

9    defenses?  How will the merits be decided?

10          In some limited instances, you already know how the

11   merits will be decided because the merits were decided

12   favorable to somebody.  It was then reversed.  And then later

13   on the law changed so the decision would have been differently.

14   But that's not this case.

15          Your job, with all due respect, your Honor, your job

16   is to exercise that grand reservoir of equity to say you know

17   what, I can't have two MDL cases where one set of plaintiffs is

18   entitled to go against one subset of sovereign defendants and

19   the other set of plaintiffs isn't.  Whatever the end result may

20   be, I can't do that.

21          And I would conclude by simply pointing out once

22   again, sir, that this court is not bound in any way, shape or

23   form by what Judge Casey decided in 2005 on a record in which

24   no discovery was permitted, improperly; the Court of Appeals

25   never addressed that issue but saw the case totally different,

C3f9tera

1   totally different than the way Judge Casey saw the case.  And

2   this is now your case.  And I just don't see how you can have

3   two sovereign states in the identical position, in the

4   identical occurrence, it's a common accident, same wrong, and

5   have them treated differently, which would fly in the face of

6   the whole purpose for being of the Foreign Sovereign Immunities

7   Act.

8           So I would urge you, on the basis of fairness and

9   equity, we came as quickly as we could.  The final judgment as

10  to us is only two years old.  Not four years old.  Not six

11  years old.  That's a smokescreen.  That's misleading.

12          I would urge you do what is right and fair for the

13  9/11 victims who never had their proper day in court against

14  these defendants, never.  And the only way they can do it, get

15  it, win or lose, is if you grant the Rule 60(b)(6) motion, put

16  them back in the case.  They, through their alter egos have

17  been involved in it ever since anyway, but put them back in the

18  case as parties.  Let them make any argument they want.  We'll

19  meet them on it.  And if you determine to give us the same kind

20  of discovery that the Doe panel remanded to the district court

21  for discovery, we'll meet them on those issues.  And I believe

22  we will convince you that we are correct because Judge Casey

23  viewed it through the wrong prism as the Court of Appeals

24  indicated.  And I think that's what the court should do.

25          Thank you.

C3f9tera

1          THE COURT:  I've read all of these opinions and the

2     papers thoroughly.  I'm going to go ahead and deny the

3     plaintiffs' motion at this point.  There is no basis to grant

4     relief under 60(b)(6) under these circumstances.

5          First of all, the issues that the plaintiff wished to

6     relitigate were fully litigated in this court.  It is a

7     determination that was made in this case through previous

8     litigation.  And whether the plaintiffs argue that Judge Casey

9     was wrong in his determinations, clearly Judge Casey had the

10     authority to rule, considered the facts as stated by the

11     plaintiffs, and made rulings on the very same issues that the

12     plaintiff would like to relitigate again in this case.  There

13     is no basis for that in any case simply based on a change of

14     law on a separate issue that the circuit -- a change of law in

15     the circuit that does not affect, nor is there any indication

16     that the circuit intended it to affect the nature of the

17     analysis and opinion and determination by Judge Casey.

18          First of all, Judge Casey clearly indicated and made

19     the determination, quoting from both cases, "The court finds

20     that plaintiffs' allegations cannot overcome the discretionary

21     function exception to the tortious acts of exception."  And as

22     I've already indicated, quoting from the decision, "because

23     there are no factual disputes raised in the Court's resolution

24     of this motion, no jurisdictional discovery was necessary."

25          The Court, again, referenced in the Saudi Arabia case

C3f9tera

1   that the Court specifically ruled that the Court finds the

2   discretionary function exception independently bars claims

3   against Prince Sultan and Prince Turki.

4          In the SHC case Judge Casey similarly ruled and

5   determined in this case that even if plaintiffs allege that SHC

6   was tortiously liable for the attacks of September 11, such

7   allegations could not overcome the discretionary function

8   exception.  Accordingly, SHC's alleged misuse of the funds

9   and/or inadequate recordkeeping, even if it resulted in the

10  funds going to terrorism, was the result of a discretionary

11  function and cannot be the basis for overcoming SHC's immunity.

12         And the Court went onto rule that similarly even if

13  plaintiffs' adequately pled a tort against Prince Salman and

14  Prince Naif the discretionary function exception prevents this

15  Court from exercising jurisdiction over them in their official

16  capacity.  Prince Salman's direction of SHC is discretionary.

17  And similarly the claims against Prince Naif stem from his

18  discretionary functions.

19         Those decisions were fully litigated in front of

20  judge -- those issues were fully litigated in front of Judge

21  Casey.  Judge Casey made clear determinations with regard to

22  those issues.  And the Second Circuit's change in the -- its

23  determination of the applicability of 1605, the noncommercial

24  torts exclusion did nothing to change the analysis of the

25  determination of that issue that had been determined by Judge

C3f9tera

Casey in this case.  In fact, the Court could have and had the
opportunity to cast some doubt or to call into question that
determination given the fact that it was overruling itself with
regard to the Circuit's determination on a different issue on
appeal.  Instead, what the Court did is it specifically cited
to Judge Casey's opinion, indicating that dismissing similar
claims against Saudi Arabia was in contrast to -- based on the
record that was before Judge Casey at the time, contrasts that
with the determination to be made with regard to Afghanistan
and the jurisdictional discovery that it had alluded to and
with regard to Afghanistan and clearly -- if not clearly
implying, clearly having the opportunity to address it
otherwise but decided to indicate that the determination of
further discovery with regard to Afghanistan was a different
set of facts and a different circumstance and did not call into
question the determination -- independent determination that
was made in this case with regard to Saudi Arabia by Judge
Casey.

        The facts do not indicate that there is the
possibility of such inconsistent determinations that compel
relief under 60(b)(6).  Unlike all other cases cited, these are
different defendants with a different set of allegations made
as to the separate defendants.  Judge Casey's opinion and
analysis was based on the facts as they were alleged by the
plaintiffs.  And the plaintiffs in this case made no different

C3f9tera

1   set of factual allegations and point to no different set of

2   facts that they believe can be proffered before this court that

3   would be a different set of facts that were utilized to argue

4   this case before Judge Casey under which Judge Casey made his

5   determination at that time.

6         As I said, the Second Circuit not only was aware of

7   that determination made by Judge Casey but also clearly

8   referenced that determination made by Judge Casey without

9   calling into question Judge Casey's analysis, decisions, or

10  process in terms of determining that issue in that case when

11  they reference without calling into question that decision and

12  analysis.

13        So in this case Judge Casey clearly made the

14  determination that based on the facts as alleged by the

15  plaintiff that the -- that these acts were discretionary acts

16  that fell outside the applicability of 1605 with regard to

17  Saudi Arabia.  To reargue that, to bring back a defendant, any

18  defendant years later simply to reargue that based on the same

19  facts, the same law that applies is not appropriate simply to

20  say that it would give the plaintiff some opportunity to now

21  try to determine if there are a different set of facts that

22  they could allege after the -- all of these years in which to

23  call into question Judge Casey's determination.  That doesn't

24  take it out of the area of any standard case in which the

25  Circuit may have changed its decision with regard to the basis

C3f9tera

of reversing or affirming a determination by the Court.  And
that issue does not affect in any way the validity of or the
determination that was made; that the Circuit made very clear
that they were making no judgment with regard to allegations in
the complaint, with regard to their sufficiency, or with regard
to whether, in fact, jurisdiction applied.  It is only pure
speculation to argue that somehow there is some likelihood of
an inconsistent determination in this MDL case given the fact
that there are different defendants with different sets of
allegations regarding their activities and which must
independently be determined in this case.  And if the
plaintiffs believe that the Circuit's opinion would compel the
Circuit to indicate that the plaintiffs are entitled to some
relief from Judge Casey's determination with regard to Saudi
Arabia, then they should appeal this denial to the Circuit and
give it a further opportunity, even though it had that
opportunity to call it into question, to give it a further
opportunity to determine:  One, whether or not they have a
different determination with regard to the sufficiency of the
complaint with regard to Saudi Arabia to assert a claim or to
provide jurisdiction or if they believe that it is appropriate
to relitigate that issue and reopen -- bring back the defendant
and reopen that issue in this Court.

        The Court -- there's nothing in the Court's opinion
that would -- could be interpreted as the Court believing that

C3f9tera

1      that was the appropriate course of action.  The opinion is

2      written in such a way as to change the Circuit's opinion with

3      regard to its general applicability, to independently determine

4      whether or not -- what the facts are with regard to the

5      sufficiency of the claim and jurisdiction with regard to

6      Afghanistan, and indicated clearly in its last paragraph before

7      its conclusion that an analysis based on the appropriate

8      factual determination, the analysis, a similar analysis that

9      was done by Judge Casey should be done with regard to

10     Afghanistan without any implication that Judge Casey's analysis

11     was inappropriately done or procedurally invalid.

12          So there is no basis at this point to change Judge

13     Casey's opinion, to revisit, to relitigate the same issue twice

14     in the same case when that determination has been made by --

15     already made by the district court in this case.

16          So, considering all of the factors it is not

17     appropriate to grant the relief that the plaintiffs are

18     requesting.  If the plaintiffs' main issue is that they had not

19     had a full opportunity to litigate this further in front of the

20     circuit, then relief should be sought from the circuit with

21     regard to that issue.  But there's nothing in the opinion --

22     nothing in the circuit's most recent opinion that could be used

23     to call into question the determination that specifically

24     referenced by the circuit in its decision to overrule its own

25     opinion with regard to a specific legal issue addressed and

C3f9tera

1    determined by the circuit.

2            So for those reasons I'm going to issue an order

3    denying the motion.  I am also denying the motion by the

4    defense to strike.  I don't think that that is necessary or

5    appropriate.  I will -- this will be the record on this issue,

6    the full record on this issue.  But it's clear from reading the

7    decisions in this case by Judge Casey that his determination

8    was clear, that there was no question the circuit decided, in

9    both of those cases, what Judge Casey's determination was with

10   regard to that issue and there's nothing in those opinions that

11   one could read into the latest opinion or any opinion that

12   calls it into question or would imply that the plaintiffs would

13   be somehow entitled to further relief from the determination

14   that was made by Judge Casey which the Second Circuit has not

15   called into question in its latest decision.

16           So for all of those reasons, considering the

17   appropriate standard you use in this case, I'm going to deny

18   the plaintiffs' motion for relief from judgment as an

19   inappropriate exercise of the court's discretion in this case.

20           As I said, I will issue an order consistent with that

21   opinion.

22           I will otherwise schedule the next conference for

23   July 17.  We'll see if we need to meet at that time.  July 17

24   at 11:00.

25           I know, given the nature of the status of discovery

C3f9tera

1    with regard to Magistrate Judge Maas, before Magistrate Judge

2    Maas it may not -- unless there are specific issues that need

3    to be addressed, it may be more appropriate, and we can discuss

4    it when the time comes near, to meet him before we meet later

5    in the year.

6            So that's the determination of this court on that

7    issue.

8            Is there anything else that we need to address today

9    before we adjourn?

10            MR. COZEN:  No, sir.

11            THE COURT:  Then I'll see you in July.

12            (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25