**EXHIBIT - 5**

Decision of March 15, 2012 (Transcript), MDL Docket Document No. 2585 (April 2, 2012), *Estate of John P. O'Neill Sr., et al. v. Kingdom of Saudi Arabia, et al.*, 04-CV-1922 (GBD)(FJM)

nydocs1-984827.6

1

```
     C3f9tera
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   IN RE TERRORIST ATTACKS ON
 3   SEPTEMBER 11, 2001,
 4
 4
 5                                    03 MD 1570 (GBD)
 5
 6
 6   ------------------------------x
 7                                    New York, N.Y.
 7                                    March 15, 2012
 8                                    11:15 a.m.
 8
 9   Before:
 9
10               HON. GEORGE B. DANIELS
10
11                                      District Judge
11
12
12               HON. FRANK MAAS
13
13                                      Magistrate Judge
14
14                    APPEARANCES
15
15   COZEN O'CONNOR
16        Attorneys for Plaintiff Federal Insurance Co.
16   BY:  STEPHEN A. COZEN
17            SEAN P. CARTER
17
18   KREINDLER & KREINDLER
18        Attorney for Ashton Plaintiffs
19   BY:  JAMES P. KREINDLER
19
20
20   SPEISER, KRAUSE, NOLAN & GRANITO
21        Attorney for Ashton Plaintiffs, et al.
21   BY:  CHRISTINA M. FRY
22
22
23   ANDERSON KILL & OLICK, P.C.
23        Attorneys for O'Neill Plaintiffs and Plaintiffs' Executive
24   Committee
24   BY:  JERRY S. GOLDMAN
25            RENE HERTZOG
```

```
     C3f9tera
1                        APPEARANCES CONTINUED
1
2    MOTLEY RICE
2         Attorneys for Plaintiff Burnett
3    BY:  DONALD A. MIGLIORI
3              BRIAN T. FRUTIG
4
4    DICKSTEIN SHAPIRO
5         Attorney for Plaintiff Cantor Fitzgerald
5    BY:  NIKOL GRUNING THOMPSON
6
6    DESIMONE, AVILES, SHORTER & OXAMENDI, LLP
7         Attorney for Plaintiff
7    BY:  GARY P. DEUTSCHMEISTER
8
8
9    BERNABEI & WACHTEL
9         Attorney for Al Haramain USA
10   BY:  ALAN KABAT
10
11   KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
11        Attorneys for Defendant Saudi Arabia
12   BY:  MICHAEL K. KELLOGG
12             WILLIAM J. RINNER
13
13   ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
14        Attorney for Defendant Saudi High Commission
14   BY:  ROY T. ENGLERT, JR.
15
15   PATTON BOGGS
16        Attorneys for Defendant National Commercial Bank
16   BY:  MITCHELL R. BERGER
17             ALAN T. DICKEY
18
19
20
21
22
22
23
24
25
```

3

C3f9tera

1              (In open court; case called)
2              THE COURT:  Let me do this.  Before we go to the
3     motion for relief from the final judgment, let me address the
4     issues that were raised by letter and put those aside and then
5     see if there are other issues that we can quickly resolve and
6     then I'll hear the parties with regard to that motion.
7              First of all, Magistrate Judge Maas and I have
8     discussed the issue of entering judgment against Hezbollah
9     based on the other judgments that were entered in this case and
10    based on the inquest that Magistrate Judge Maas has done.  We
11    both agree that that is an appropriate thing to do.  I'm
12    willing to do that today.  And we will enter judgment against
13    Hezbollah in the amounts as were found by Magistrate Judge Maas
14    when he did the inquest on damages.
15             The only thing we were both uncertain about and
16    curious about and want to avoid having to do this piecemeal is
17    that why at this point, we're at this issue and whether or not
18    we should be thinking about others.  I believe that judgment
19    has not been entered against all the defaulting defendants in
20    that case.
21             Are we going to anticipate a further application, or
22    is this sufficient for your purposes at this point?
23             MR. CARTER:  Your Honor, Sean Carter for the Federal
24    Insurance Plaintiffs.
25             If I may provide a little bit of context, it will, I
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

4

C3f9tera
1    think, illuminate why we're here.
2              There is a presently ongoing a forfeiture action in
3    the Northern District of Illinois through which the Department
4    of Justice is targeting for seizure $6.6 million in al-Qaeda
5    assets.
6              At the time the window, statutory window for filing
7    verified claims in the statutory -- in the forfeiture
8    proceeding expired, we did not yet have a final monetary
9    judgment against al-Qaeda.
10             As a result, the Department of Justice has argued in
11   that forfeiture proceeding that we lack constitutional
12   standing, the 9/11 plaintiffs lack constitutional standing to
13   make claim in the forfeiture proceeding to those funds.
14             There are presently some separate forfeiture
15   proceedings recently initiated targeting assets associated with
16   Hezbollah in the Southern District of New York.  And the reason
17   there's some urgency with regard to the Hezbollah judgment is
18   because we want to avoid the scenario in which we, again, face
19   an argument about standing based on the timing of the judgment.
20             With regard to the entry of a broader number of
21   judgments, I think that would make sense in order to avoid
22   doing this piecemeal.
23             In some cases, defendants have objected principally I
24   think because they're concerned about the potential that we
25   would try to use the judgment against a terrorist organization

5

C3f9tera
1    to execute against their assets.
2            It may make sense for us simply to try and enter into
3    a broader stipulation with the defendants that will allow all
4    the terrorist organizations to be treated simultaneously for
5    purposes of a monetary judgment and we can deal with other of
6    the defaulting defendants separately.
7            THE COURT:  Similar to the agreement that you entered
8    into with regard to Hezbollah?
9            MR. CARTER:  Correct, your Honor.
10           THE COURT:  Well just let us know at what point, if
11   you intend to proceed that way, and we'll be prepared to move
12   forward then.  But we should have the judgment prepared and
13   ready for you today and filed.
14           MR. CARTER:  Thank you, your Honor.
15           THE COURT:  Now with regard to the -- someone raised
16   an issue -- also you raised an issue with regard to getting a
17   certificate of default from the clerk's office.  I'm not quite
18   sure I understood exactly what your communication has been with
19   the clerk's office, if any, on this issue and what if you still
20   have a problem or the nature of that problem.
21           MR. MIGLIORI:  Good morning, your Honor.
22           Don Migliori from Motley Rice on behalf of the Burnett
23   plaintiffs.
24           All of other moving parties for this particular
25   default have gotten their certificate.  This is purely

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

C3f9tera
1   ministerial.  It just for some reason didn't come through for
2   the Burnett plaintiffs.
3           THE COURT:  Have you had a conversation with the
4   clerk's office?
5           MR. MIGLIORI:  We wrote actually to the court I
6   believe on the 30th of last year -- December 30 end of last
7   year about it.  We've had some communication with the clerk's
8   office.
9           THE COURT:  What is their position?
10          MR. MIGLIORI:  Really don't have a clear answer from
11  them.  We're just looking for guidance.  We didn't know if it
12  was caught up in a different -- in a different process
13  because --
14          THE COURT:  They have not said to you that it is not
15  going to be issued?
16          MR. MIGLIORI:  I believe the response back has simply
17  been that they don't have -- they needed guidance.  They
18  weren't going to accept from us in an informal conversation
19  that everything had been done.
20          We've checked our filings, our pleadings, and
21  everything is there.
22          THE COURT:  What do they say is deficient?  That's
23  what I don't understand.
24          MR. MIGLIORI:  We don't understand.
25          So when we wrote to the court we were simply asking if

7

C3f9tera

1  the court could give us some guidance, give us some help in
2  pushing that process along because everything is there and it
3  hasn't issued out.
4        THE COURT:  I mean I could help you but I don't know
5  what the problem is so I'm not sure what -- I haven't been
6  able -- are you dealing with orders and judgments, the clerk?
7        MR. MIGLIORI:  What I propose, your Honor, because --
8  the motion is much more important.  Maybe after this hearing
9  I'll go down personally.
10       THE COURT:  Go to orders and judgments.
11       MR. MIGLIORI:  As long as I can represent that there
12 is no reason from the bench for this to not issue, maybe that
13 will be the kind of assurance.
14       THE COURT:  Not that I'm aware of.  That's the thing.
15       Unless you can articulate for me either who is telling
16 you there's a problem and what the nature of that problem is,
17 I'm not sure if it's just not getting done, they have a
18 position that it cannot be done, they have a position that
19 something is missing, and you haven't assured them that it's
20 not missing.  I'm not sure what the issue is.
21       MR. MIGLIORI:  We just know that we've inquired and
22 it's never forthcoming.
23       So as long as there is no other basis from the bench,
24 I'll go down today and make direct contact.  If there's another
25 issue --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

C3f9tera

1        THE COURT:  I mean we made some inquiries down there
2   but it's hard for me to communicate with them if I don't know
3   what the problem is.
4        MR. MIGLIORI:  They didn't articulate one to us
5   either.  As long as there's no issue from the bench.
6        THE COURT:  Not that I'm aware of.  So if there's --
7   if you can get -- if you can tell me who you're speaking to and
8   it probably should be somebody in orders and judgments and they
9   can tell you that it's either going to issue or it's not going
10  to issue.
11        If it's not going to issue immediately, they have to
12  articulate for you what the problem is so you can come back to
13  me and see if we can solve that problem.  Or if they say you're
14  missing a document, they can tell you what document it is, if
15  you think you've given it to them and they can't find it --
16        MR. MIGLIORI:  We wouldn't have bothered the court if
17  that were the issue.  Let me figure that out and I appreciate
18  it.
19        THE COURT:  Sure.  Just contact my chambers or
20  Magistrate Judge Maas' chambers, either one, we'll follow up if
21  necessary.  But I'm not quite sure what the problem is that's
22  holding this up.
23        Are there any other issues that we need to address
24  before I go to the motion?  I know you're moving forward with
25  discovery.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

C3f9tera
1              Did I see a hand?
2              No.  All right.  Then let me hear you with regard to
3      the motion.  Let's address that.  I've reviewed the papers and
4      reviewed all of the decisions.  So why don't you tell me
5      exactly what your position is.
6              MR. COZEN:  If Your Honor please, Steve Cozen from
7      Cozen O'Connor on behalf of the plaintiffs.
8              The motion before the court seeks, under Rule
9      60(b)(6), to vacate judgments entered in this MDL against the
10     Kingdom of Saudi Arabia and the Saudi High Commission, which
11     after dismissal and appeal, became final when the Supreme Court
12     denied certiorari in June of 2009.
13             However, on November 7, 2011 the Second Circuit in Doe
14     v. Bin Laden and Afghanistan overruled the previous panel's
15     decision in this case, held that 1605(a)(5), the noncommercial
16     tort exclusion to the Foreign Sovereign Immunities Act, is a
17     basis for a suit arising out of the terrorist attacks of 9/11,
18     validated the cause of action against a nondesignated foreign
19     sovereign for providing material support to al-Qaeda, and
20     ordered that the case should proceed.
21             THE COURT:  When you say validated the cause of
22     action, I'm not sure that they made that kind of determination.
23             MR. COZEN:  When I say validated the cause of action,
24     what I meant was they say there is a basis, based upon
25     allegations with respect to the provision of material aid and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

C3f9tera
1   support to sustain jurisdiction under 1605(a)(5) as a tort
2   claim.
3           THE COURT:  Wouldn't it be more accurate to say they
4   said it could be a basis and they sent it back in that case for
5   discovery to determine if, in fact, there was a basis.
6           MR. COZEN:  Well, technically I would not defer or
7   disagree with your Honor in this respect.
8           They sent it back for two things.  One was to
9   determine whether or not the, quote, whether the
10  Taliban-was-the-government defense was an adequate defense.
11  And the second was whether or not discretionary function was
12  actually at play.
13          THE COURT:  And that's the critical issue.
14          MR. COZEN:  But the allegations of the complaint and
15  the adoption of the -- the adoption of the district court
16  opinion, together with the articulation of their reasons for
17  their holding, to me validates the cause of action which is --
18  which was stated in the complaint that Afghanistan, through the
19  Taliban, provided a safe haven for and provided material aid
20  and support to al-Qaeda which enabled them to attack the United
21  States.
22          THE COURT:  Well, again, I don't think that that's
23  completely accurate.  It validated a possible cause of action.
24  But the court specifically said -- as a matter of fact I'll
25  quote from the opinion: "Let us be clear.  We make no judgment
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

C3f9tera

1   as to whether the allegations in the complaint are sufficient
2   to state a claim or even to provide jurisdiction."
3              MR. COZEN:  I'm not disagreeing, and perhaps I'm using
4   the word in a general sense, your Honor.
5              The point is that the Second Circuit, of course, had
6   previously, in August of '08, held in this case that the sole
7   and exclusive basis for upholding the dismissal of our claims
8   against the Kingdom and the Commission was the inapplicability
9   of 1605(a)(5) and the presumed exclusivity of 1605A, the
10  terrorist exception, to the acts complained of in our first
11  amended complaint and in our RICO statements, although they
12  credited our allegations as having been well detailed and well
13  documented, that sole and exclusive basis, your Honor, has now
14  been abrogated.  And the law is as stated in Doe.
15             We are left then, if you will, with an anomalous
16  situation.  In the absence of a Rule 60(b)(6) relief in the
17  same MDL, in which similar claims are made, against similarly
18  situated sovereigns arising out of similar wrongful acts
19  resulting from identical harm, that litigation may proceed
20  against Afghanistan but not against Saudi Arabia or the Saudi
21  High Commission.
22             THE COURT:  But that's not -- again, that's not
23  necessarily true.
24             If, as the Court said -- the Court said, indeed, the
25  district court had ordered further discovery to provide for

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C3f9tera
1   fact-finding with regard to whether the alleged acts were
2   attributable to Afghanistan and whether they were
3   discretionary.
4        If that discovery determined that those acts aren't
5   attributable to Afghanistan or that discovery establishes that
6   they were discretionary acts, there is no cause of action in
7   Afghanistan -- against Afghanistan.
8        MR. COZEN:  Your Honor, I am not prejudging what final
9   determination this court will make once that jurisdictional
10  discovery is taken with respect to the existence of the cause
11  of action by Afghan -- by the Doe plaintiffs against
12  Afghanistan.
13       What I am saying is that the sole and exclusive basis
14  for the dismissal of our claims against the Kingdom and the
15  Commission were the applicability of 1605(a)(5), the tort
16  exception on the theory -- never reaching the other issues --
17  simply on the theory that the terrorist exclusion or the
18  terrorist exception trumped the tort exception.  That has now
19  been disposed of in the Second Circuit.
20       THE COURT:  But, again, I went back and read all of
21  the opinions very carefully.  That's not accurate.
22       What's accurate that you said was that that may have
23  been the sole and exclusive basis on which the Second Circuit
24  affirmed the dismissal.  But in reading Judge Casey's opinion,
25  it was not the sole and exclusive basis on which Judge Casey

13

C3f9tera
1   determined that there was no cause of action against Saudi
2   Arabia.
3           MR. COZEN:  That is correct, your Honor.
4           However, if you undoubtedly read again the Second
5   Circuit opinion you'll note footnote fifteen where the court
6   says since we have decided -- on page 49 of their opinion --
7   since we have decided that 1605(a)(5), the noncommercial tort
8   exception, doesn't apply, it is trumped by 1605A, we don't
9   reach any of the other assertions that -- as to whether or not
10  there is or is not jurisdiction under it.
11          THE COURT:  But I understand -- then I understand your
12  argument.  Your argument is that it should -- the judgment
13  should be vacated simply because the Second Circuit didn't
14  reach that issue on appeal as opposed -- you're not arguing
15  that Judge Casey didn't address that issue in his decision.
16          MR. COZEN:  I'm not arguing that Judge Casey didn't
17  address that issue in his decision.
18          We argued the contrary in front of the Second Circuit.
19          The Second Circuit never reached that because the
20  Second Circuit made the determination that 1605(a)(5), which
21  Judge Casey said was applicable, they said wasn't applicable.
22  So they never had to reach the subsequent issue of the
23  alternative grounds for dismissal.
24          THE COURT:  Okay.  So that --
25          MR. COZEN:  So now what we are left with, your Honor,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

C3f9tera

1    if you please, is that we have a rather perverse situation in
2    which the plaintiffs in Afghanistan are entitled to proceed
3    with their case.
4          I don't want to conflate -- and I would like this
5    Court not to conflate -- the issue of whether or not we are
6    entitled to 16 -- to Rule 60(b)(6) relief with the issue of
7    whether or not the defendants, the Kingdom and the Commission,
8    have a right to assert, once those judgments are open and
9    they're back in the case, whether they have a right to assert
10   that they have some legal basis for getting out of the case.
11         THE COURT:  But that was all argued and litigated
12   before Judge Casey.  Why do you --
13         MR. COZEN:  But it was never determined on appeal.
14         THE COURT:  But that's appeal.
15         I'm trying to figure out -- you're saying that even if
16   it's decided by this court that because it wasn't addressed on
17   appeal that you get a do-over?
18         MR. COZEN:  Yes.
19         In fact, not only do we get a do-over.  I'm saying I
20   never had the right to have the Second Circuit determine
21   whether or not my arguments as to why Judge Casey was wrong
22   when he said I'm going to let them out on discretionary
23   function, when the body of law that was developing was clear
24   that discretionary function didn't apply when you violated
25   international law and acts -- and laws of humanity.  I never

15

C3f9tera
1   got an opportunity to have that issue determined by the Court
2   of Appeals.
3                THE COURT:  Okay.
4                MR. COZEN:  Because they first decided that the
5   tort -- the noncommercial tort exception simply didn't apply.
6                Judge Casey, in fact, had said it did apply.  So we're
7   not here -- we're not here, your Honor, because of what Judge
8   Casey held or what Judge Casey didn't hold.
9                We are here because in Doe v. Afghanistan they
10  reversed the opinion in our case.
11               THE COURT:  Right.
12               MR. COZEN:  And said you are entitled to go further
13  and have your claims determined and heard.
14               THE COURT:  No.  They said you were entitled to a
15  similar consideration that you received by Judge Casey.  Isn't
16  that really what they said?
17               MR. COZEN:  No.  Because then your Honor if that's the
18  case, then are you telling me that I have a right now to file a
19  new appeal from Judge Casey's original decision and ask the
20  Court of Appeals to rehear the case years later?
21               That's not the procedure.
22               THE COURT:  No.  You would have the right, if I were
23  to deny your motion, to appeal that denial of your motion on
24  the basis in which you're arguing that the Second Circuit
25  didn't have the opportunity to decide this issue and should now
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

16

C3f9tera
1   decide this issue in the context of the ruling that's already
2   been made in this case.
3           MR. COZEN:  Well I understand, your Honor.  But I
4   don't think that's how it works.
5           THE COURT:  You want a do-over though.
6           MR. COZEN:  No --
7           THE COURT:  Judge Casey has already ruled.
8           Are you asking for a different ruling from me than
9   Judge Casey already gave you on this issue?
10          MR. COZEN:  Well, if Your Honor please, what I'm
11  asking first is that you rule on a 60(b)(6) motion.
12          THE COURT:  To vacate and to do what?
13          MR. COZEN:  To vacate the judgment.
14          THE COURT:  And do what?
15          MR. COZEN:  To allow the defendants back in the case,
16  let them assert the same legal defenses.  Let us argue them.
17          THE COURT:  But you already did that.
18          MR. COZEN:  No, but, your Honor --
19          THE COURT:  You did that before Judge Casey and Judge
20  Casey said the record is undisputed that these are
21  discretionary acts.  Isn't that what he ruled?
22          MR. COZEN:  Excuse me, your Honor.  No.
23          The fact of the matter is there was no -- there was no
24  evidentiary record in that regard.  Judge Casey made the
25  determination that this was -- that this was subject to the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

17

C3f9tera
1  discretionary function defense because of what he perceived the
2  law to be.
3          And what I'm suggesting, that's not the law of this
4  case at this juncture.
5          THE COURT:  But Judge Casey's determination was after
6  you had a full opportunity to make the argument.
7          MR. COZEN:  Absolutely.
8          THE COURT:  And you made the argument.
9          And if you thought at the time there was some disputed
10  evidence to offer, you had the obligation to present it at that
11  time because Judge Casey had not yet made a ruling.
12         MR. COZEN:  Excuse me.
13         THE COURT:  And so Judge Casey -- you made the
14  complete argument that you had at the time.  And Judge Casey --
15  didn't he reject that argument?
16         MR. COZEN:  Yes.  But that is not the way it happened.
17         THE COURT:  Okay.
18         MR. COZEN:  The way it happened, your Honor, was that
19  motions to dismiss were filed.
20         THE COURT:  Right.
21         MR. COZEN:  Our allegations -- and if you look at our
22  allegations in our first amended complaint, they go from
23  paragraph three -- as to the Kingdom of Saudi Arabia, from 398
24  to 505; including direct allegations of Saudi government
25  officials in the United States aiding the terrorists by union,
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C3f9tera

1  aiding the terrorists in the United States.
2          They go to the whole issue of the Kingdom through its
3  dominated and controlled charities and other nongovernmental
4  organizations.
5          THE COURT:  Okay.
6          MR. COZEN:  Using them as fronts to fund international
7  terrorism.
8          Those allegations were not disputed factually.  They
9  were argued legally.
10         We believe Judge Casey made the wrong legal decision.
11  We would think on the basis of --
12         THE COURT:  Which part of the decision do you say is
13  wrong that you should be able to argue again?
14         MR. COZEN:  He only decided on -- as to the Kingdom on
15  the basis of the discretionary function exclusion.
16         THE COURT:  Right.
17         MR. COZEN:  And the fact of the matter is that when
18  you look at the Doe case, Doe cites -- Doe cites, with
19  approval, Liu and Letelier.
20         And Liu and Letelier stand for the proposition that
21  any such activity as we have alleged where sovereign nations
22  set about to kill other people, to assassinate them, to impose
23  acts of terror upon them, are in and of themselves by their
24  nature nondiscretionary.
25         So my position is that --

C3f9tera

```
 1              THE COURT:  Well but that's not the allegation you
 2    made against the Kingdom of Saudi Arabia.
 3              MR. COZEN:  It certainly is.
 4              THE COURT:  That the Kingdom of Saudi Arabia
 5    specifically planned the torts that you're --
 6              MR. COZEN:  No.  That wasn't the allegation.
 7              THE COURT:  Right.  That's not the allegation.
 8              MR. COZEN:  But the allegation was the same allegation
 9    as in Afghanistan.
10              The allegation was that the Kingdom of Saudi Arabia --
11              THE COURT:  Supported terrorists.
12              MR. COZEN:  Supported international terrorism through
13    their dominated and controlled agents, servants, alter egos,
14    etc., knowingly did so, fully foreseeing that they would attack
15    western interests including the United States.
16              THE COURT:  And the circuit said if it turns out that
17    their investments and their contributions to charities were --
18    are discretionary functions, then you can't sue them.
19              Isn't that --
20              MR. COZEN:  That is not what the circuit said at all.
21              THE COURT:  Then what would be the purpose --
22              MR. COZEN:  That is not what the circuit said at all.
23    They never reached the issue.
24              THE COURT:  What would be the purpose of -- they said
25    that the district court -- they said the district court ordered
```

C3f9tera

1  further discovery to provide for fact finding with regard to
2  whether the alleged acts were attributable to Afghanistan and
3  whether they were discretionary.
4          MR. COZEN:  No.  You're talking about Doe.  You're
5  talking about Doe.
6          And what happened in Doe was that the Second Circuit
7  panel then approved, in a mini en banc procedure, said the
8  allegations in the pleadings allege nondiscretionary acts.
9  We're sending this back for jurisdictional discovery with
10 regard to whether or not there were -- there was a
11 discretionary function involved.  So they have to litigate
12 that.
13         THE COURT:  Right.  And that's already been litigated
14 here.
15         MR. COZEN:  No.  It has not been litigated here.
16         THE COURT:  But you argued that in front of Judge
17 Casey.
18         MR. COZEN:  But the fact is it has not been litigated
19 here because we took that up on appeal.  That was one of our
20 main arguments --
21         THE COURT:  I'm not talking about appeal.  I'm talking
22 about what was litigated here.
23         MR. COZEN:  How can I be foreclosed --
24         THE COURT:  You fully litigated that here, didn't you?
25         MR. COZEN:  How can I be foreclosed --

21

C3f9tera

1            THE COURT:  That's not the question.
2            MR. COZEN:  -- from having my day in court and my
3       right to prove that these were nondiscretionary acts and have
4       that argument in front of the Court of Appeals.
5            The only way that that can happen, your Honor, the
6       only way that that can happen is if --
7            THE COURT:  For me to do what?
8            MR. COZEN:  Is if you do what 60(b)(6) gives you the
9       inherent authority to do.
10           THE COURT:  And what would that --
11           MR. COZEN:  And that would be to vacate the judgments,
12      bring them back into the case, let them assert whatever
13      defenses they want to assert, both legal and factual.  If
14      discovery is necessary, we'll form and frame that discovery and
15      take that discovery.  And then you have to make a determination
16      based upon that discovery as to whether or not discretionary
17      function is really involved in this case.
18           Now, as to the other two alternatives -- and that's
19      why you should never reach the alternative bases.
20           But as to the other two alternatives, that was
21      disposed of in Doe.  The caused by, and entire tort
22      alternatives were disposed of by Doe specifically holding that
23      on the exact same kind of set of facts, the damage occurred in
24      the United States, the tort occurred in the United States, and,
25      in fact, the caused by means general proximate cause.

22

C3f9tera
1          They adopted.  They said there is no question, no
2   question that on the basis of the pleadings they meet all of
3   the first five requirements in the litany of requirements under
4   1605(a)(5).
5          So, what I'm suggesting to the court is Rule 60(b)(6)
6   has, as the Supreme Court says, gives this court the inherent
7   power, in simple English, for any other reason to vacate
8   judgments whenever such action is appropriate to accomplish
9   justice.
10         I think it would be a perversion of justice not to
11  bring them back into the case.  And the jurisprudence of -- let
12  me suggest to your Honor -- the jurisprudence of this circuit
13  and other circuits is very helpful in this regard.
14         First, where a change in the law goes to the very
15  basis of a claim or defense, that meets the exception or
16  extraordinary circumstance that is required under the Rule
17  60(b)(6) test.
18         THE COURT:  Well in what way does a change in the law
19  with regard to whether or not the noncommercial tort exclusion
20  could have applicability, how does a change in that law affect
21  a determination that even if it does have applicability these
22  are discretionary functions that take it outside?
23         MR. COZEN:  It has applicability, your Honor, because
24  you've got -- you have to then decide a factual -- a fact
25  intensive question that Judge Casey didn't ever address.

23

C3f9tera

```
 1              THE COURT:  But he did address.
 2              MR. COZEN:  No, he addressed it, but not in a fact
 3    intensive inquiry.
 4              THE COURT:  Well I don't see on your papers what
 5    different set of facts that you claim exists now that you're
 6    relying on than the different set of facts that you were
 7    relying on in front of Judge Casey.
 8              MR. COZEN:  We have the same factual allegations.  If
 9    there is a requirement for factual discovery to determine
10    whether or not any specific laws were broken or whether the
11    nature of the acts is violative of international law and the
12    laws of humanity and, therefore, cannot be possibly
13    discretionary, as Doe adopted by adopting the language of
14    Liu -- the holdings of Liu and Letelier, then we're going --
15    we're going to have a basis for saying Judge Casey was wrong.
16              You should correct that wrong.  And you should hold
17    that the discretionary function exclusion doesn't exist.
18              But you don't reach that unless and until you
19    recognize that since the sole and exclusive basis for
20    dismissing our appeal was that 1605(a)(5) didn't apply.  Now we
21    know 1605(a)(5) does apply.  So now let's apply it.
22              THE COURT:  But Judge Casey did apply it.  He applied
23    that analysis, didn't he?
24              And he made a specific finding that because there were
25    no factual disputes raised in the Court's resolution of this
```

24

C3f9tera
1    motion no jurisdictional discovery is necessary.
2              He specifically made that determination.
3              MR. COZEN:  And we took that up saying that was wrong.
4    And we never got an answer to that because the Court of Appeals
5    made the determination that 1605(a)(5) didn't apply in the
6    first instance.
7              We believe Judge Casey was wrong.  We believe we will
8    be able to convince you he was wrong.
9              THE COURT:  That's what I'm asking.  I understand your
10   argument that you want an opportunity to argue to the circuit
11   that Judge Casey was wrong.
12             How does that give you a do-over for Judge Casey's
13   decision in front of me?
14             MR. COZEN:  Your Honor, it is not so much a do-over of
15   Judge Casey's decision as it is a right to bring parties back
16   into a case who were improvidently let out of the case, bring
17   them back in, and now deal with the issues that exist within
18   1605(a)(5).
19             If there is the need for jurisdictional discovery with
20   regard to discretionary function or any other issue, we will
21   engage in that.  And you'll make the determination in that,
22   whether there is a need.
23             THE COURT:  Well that's a big "if."
24             You're not arguing that to me now.
25             I have no reason to believe that discovery is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

25

C3f9tera
1    appropriate because Judge Casey said no factual disputes have
2    been raised.  Jurisdictional discovery is not necessary or
3    appropriate.  And you've put nothing in your papers to argue
4    that it is.
5              MR. COZEN:  Well, excuse me, your Honor, but we have.
6         In fact, we have.
7              THE COURT:  You've done discovery.  So what facts
8    are --
9              MR. COZEN:  No.  We didn't do any jurisdictional
10   discovery on discretionary function because there was no
11   dispute.  The Kingdom and the Commission did not dispute our
12   factual allegations.
13             THE COURT:  So what's the dispute now?
14             MR. COZEN:  The dispute now is whether or not if you
15   take -- if you still take our factual --
16             THE COURT:  The factual dispute.
17             MR. COZEN:  I don't think there is because if you
18   take -- if you take our factual assertions --
19             THE COURT:  As Judge Casey did.
20             MR. COZEN:  -- as true.
21             THE COURT:  As Judge Casey did.
22             MR. COZEN:  -- as true.
23             THE COURT:  Right.
24             MR. COZEN:  Then on the basis of the Doe decision and
25   on the basis of Liu and Letelier I think you must come to the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C3f9tera
1    conclusion that no foreign sovereign can engage in the support
2    of killing innocent people and say that is a discretionary act.
3            Now, the fact of the matter is, your Honor, sure,
4    there are two ways to go about this.  I think that this is the
5    quintessential case for 60(b)(6) relief.  Clearly, the sole and
6    exclusive basis for throwing us out was that 1605(a)(5) didn't
7    apply.
8            THE COURT:  That wasn't the sole and exclusive basis
9    of throwing you out.
10           MR. COZEN:  It was.
11           THE COURT:  It was not.  Judge Casey went through the
12   analysis that you asked him to go through.
13           Right?
14           MR. COZEN:  No.  Judge Casey found that 1605(a)(5) did
15   apply but the discretionary function exclusion A knocked it
16   out.  We took that up to the Court of Appeals.  We argued it in
17   front of the Court of Appeals.  They never reached that
18   argument.
19           THE COURT:  I understand that.  I understand that.
20           MR. COZEN:  So what I'm saying --
21           THE COURT:  I'm trying to figure out whether you're
22   simply trying to get me to redecide Judge Casey's decision or
23   you're simply trying to find a mechanism to go back to the
24   circuit and have them review on appeal what Judge Casey did.
25   Those are two different issues.

                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

27

C3f9tera
1                Are you asking me to simply get you back to the
2      circuit so you can appeal Judge Casey's ruling again or are you
3      asking me to make a different determination than Judge Casey
4      did on the exact same record that both of us have?
5                MR. COZEN:  I'm asking you to do two things.
6                I'm asking you, one, to rule on the 60(b)(6) motion
7      which is well grounded and is the quintessential type of case
8      in which it would be a perversion of justice for this court --
9                THE COURT:  Well that doesn't answer the question that
10     I just asked you.
11               MR. COZEN:  I'm trying to answer.
12               THE COURT:  That doesn't answer the question I asked
13     you.  Are you asking me --
14               MR. COZEN:  I'm telling you.
15               THE COURT:  No, you didn't tell me.  I gave you two
16     choices and you've given me a third.
17               MR. COZEN:  No.
18               THE COURT:  I asked you a specific question.  Are you
19     asking me -- you want me to give you 60(b)(6) relief so that
20     you can have an opportunity to relitigate the issue that was
21     decided by Judge Casey, or are you asking for 60(b)(6) relief
22     so you can go back to the circuit and appeal Judge Casey's
23     decision?
24               Which one of those two are you asking me to do?
25               MR. COZEN:  Both.  And I'll tell you why.  Now I'll
                         SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

```
        C3f9tera
1   explain why.
2              THE COURT:  Well I can't do both.
3              MR. COZEN:  Well, you can.  Because you have two
4   separate issues before you.
5              The first issue you have is whether 60(b)(6) relief is
6   justified.
7              Forget about what the defenses may be.  Forget about
8   what the legal arguments may be as to ultimately why the claim
9   ought to be dismissed.  We don't agree, but leave that aside.
10             The only question before this court right now is
11  whether or not to grant or not grant 60(b)(6) relief where
12  there has been, after a full and complete appeal and a sole and
13  exclusive basis saying 1605(a)(5) doesn't apply, a total
14  reversal by the Court of Appeals.  And you have another case,
15  whatever happens to it, another case, identical situation,
16  identical for wrongful acts, identical assertions against
17  another sovereign state, identically in the same position as
18  Saudi Arabia.  That's going to go forward.  What results in
19  that, I don't know.
20             THE COURT:  It could end up being the same result as
21  in this case.  I don't know.
22             MR. COZEN:  May be.  I don't know either.  I'm not
23  prejudging that.  I'm not conflating the two.
24             If I get my 60(b)(6) relief, then I'm sure that my
25  friends on the other side will assert as defenses, legally and
```

C3f9tera

1  perhaps factually, which they didn't do before, the alleged
2  alternative grounds or maybe at least one of the alleged
3  alternative grounds that they have asserted in their papers.
4        Your Honor will have to make a decision as to whether
5  or not those have legal validity.
6        We want the opportunity to argue before you that they
7  do not have legal validity based upon the jurisprudence that
8  has grown up, particularly the adoption by Doe of Liu and
9  Letelier and the other case law that is developed in the
10  various circuits with respect to these issues.
11        We want to have the opportunity to argue that to you.
12        You may conclude, after we argue that, that, you know,
13  I don't think there is enough, just by the assertions and the
14  RICO statements, I don't think there is enough for me to decide
15  this.  I want some additional jurisdictional discovery.
16        Or you may conclude I think Judge Casey got it right.
17  I'm going to hold the same way.
18        And now we'll go up on appeal on that narrow issue.
19  And the Court of Appeals will hear us on that narrow issue.
20        But you can't get there at all -- you can't get there
21  at all unless you first do what is the right and proper thing
22  to do and which I believe would be an abuse of discretion not
23  to do, which is to take a change of the law that goes right to
24  the heart of our right to be in court, 9/11 victims to have
25  their day in court and throw them out and say no, I'm not going

30

C3f9tera
1    to relieve the judgment.
2           Now, it may very well be -- it may very well be that
3    at the end of the day you come to the same conclusion as Judge
4    Casey did or you come to a different conclusion from what Judge
5    Casey did.  In either event, one of us will then take that
6    narrow question up on appeal to the Second Circuit and now the
7    Second Circuit will have to deal with it.
8           On the other hand, if you were to deny what I believe
9    we are so clearly entitled to, which is the 60(b)(6) relief and
10   vacate that judgment, then we will go up to the Second Circuit
11   saying that you abused your discretion.  And the Second Circuit
12   will make a determination as to whether you did or did not
13   abuse your discretion.  It will not, however, have before it,
14   nor will it have the ability to decide whether or not Judge
15   Casey was right in the first instance back in 2005.  That won't
16   be before the Second Circuit.
17          So the only way to get there, the only way to get
18   there for both sides, if that's the issue that has to be
19   decided -- I make it clear, once again, I personally don't
20   believe it has to be decided because I believe that the Second
21   Circuit in Doe by their articulation and adoption of Liu and
22   Letelier and the importance of Liu and Letelier in the
23   1605(a)(5) context, the fact that Congress had it in front of
24   them when they passed the terrorist exception and that Letelier
25   specifically says, and Liu also refers to the fact that you

C3f9tera

1    can't have discretion to kill people.  That's not a
2    discretionary act.
3              So let's make it clear.  The discretion we're talking
4    about is not the state's discretion to give money to charity.
5    That's a red herring.  We're talking about the state's right to
6    fund international terrorism knowing the foreseeable and
7    probable result and to be held accountable for it.
8              So the only way that we can resolve what apparently,
9    your Honor, is a dilemma that you have articulated, which is do
10   you want a do-over when Judge Casey decided against you in
11   2005, is to grant the 60(b)(6) relief.  That's a different
12   issue.
13             Are we entitled to that because a change in the law
14   where our case was gutted by the wrong law, go back and argue
15   again on the present record, or on a more fulsome record if
16   your Honor believes that there should be developed a more
17   fulsome record, together with Magistrate Judge Maas.  And then
18   have you make that determination.  Are these other alternative
19   grounds -- none of which Judge Casey accepted, by the way --
20   are these -- other discretionary function -- are these other
21   alternative grounds valid?  Do they have any substance?
22             You have to make that decision, your Honor.  And when
23   you make that decision, for me or against me, I then have an
24   ability to go to the Second Circuit and say to the Second
25   Circuit here's the specific holding.  You know that 1605(a)(5)

32

C3f9tera

1    is applicable.  Here is why we were thrown out.  Or here is why
2    we were kept in.  Was it right or wrong?
3              But I can't get there simply by taking you up to the
4    circuit on the abuse of discretion standard if you deny my Rule
5    60(b)(6) application.  That I can't do.  Because that will not
6    encompass that question.
7              And that's why I've asked you, please, sir, to
8    understand -- and I think the case law is pretty clear on this.
9    That's why such broad discretion is granted, why you have this
10   great reservoir to do equity here.
11             Let's not conflate the two.  60(b)(6) gives you the
12   unfettered authority to vacate the judgments.  Once those
13   judgments are vacated, we'll have plenty of time to argue all
14   of the implications of the Doe decision, all of the
15   implications of Liu and Letelier and any other legal defenses
16   that the defendants want to put forward.
17             But since we were thrown out by an -- what is now an
18   erroneous interpretation of the law, has been determined by the
19   circuit to be an erroneous interpretation of the law, that went
20   to the very heart and gut of our right to even be in the case,
21   we have a right -- I would suggest particularly in view of the
22   fact you're going to have to deal -- you've got -- let me make
23   one final point because I think you've probably heard enough
24   from me.  Let me make one final point.
25             You've got Afghanistan over here and the Doe

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

C3f9tera

1   plaintiffs are just like our plaintiffs.  They're proceeding
2   against Afghanistan.  You're going to have to decide that.  But
3   they're proceeding.  They have a right to proceed.
4           We, on the other hand, same case, same facts, same
5   wrongful acts, same kind of theories, don't have the right to
6   proceed.  That can't be.  We may have a right to proceed and
7   lose or we may have a right to proceed and win.  But we have a
8   right to proceed.
9           And, in fact, any decision other than the granting of
10  our 60(b)(6) motion would be in derogation of and undercut the
11  whole theory behind the Foreign Sovereign Immunities Act.
12  Because the purpose of the Foreign Sovereign Immunities Act,
13  particularly when you read the House report, when that act was
14  passed back in 1976, was to bring uniformity of treatment
15  between every sovereign state.  Uniformity of treatment.
16          You're not going to have uniformity of treatment if in
17  your same MDL some 9/11 victims have a right to go ahead and
18  sue Afghanistan and other 9/11 victims don't have a right to go
19  ahead and sue Saudi Arabia and the Saudi High Commission.
20          At the end of the day, you may decide for other
21  reasons we're right or we're wrong and somebody is going to
22  take it up on appeal.
23          But you won't have that inconsistency which undermines
24  the very thesis and the very basis of the Foreign Sovereign
25  Immunities Act in the first place, which is to bring uniformity

C3f9tera
1    to the treatment of every foreign state.
2            And of course I'm referring to those -- other than
3    those who have been designated as state sponsors of terrorism.
4    They're in a different category.
5            So, I would urge this court that when you read Doe,
6    when you see footnote fifteen and you recognize that the sole
7    and exclusive basis on which we were thrown out by the circuit
8    was one that has been overruled and abrogated, we have a right
9    to bridge the -- and we're timely.  We brought the motion
10   timely.  The instrumentalities and agencies which they control
11   and dominate are still in this case.  Some are up on appeal.
12   Some are still before you.  It's only been two years since the
13   Supreme Court denied our petition for cert.  And I won't get
14   into the arguments as to whether or not there is even a shorter
15   period of time.  But justice and equity require that the
16   60(b)(6) motion be granted, that we be given the opportunity to
17   have them back in the case.
18           And then we'll litigate those issues.  If you feel the
19   same as Judge Casey did on the basis merely of allegations and
20   you want to construe discretion the way he did, which is the
21   discretion to decide to give to charities as opposed to the
22   discretion to finance terrorism to kill people, that will be
23   your determination.  But we'll have a clean shot in the circuit
24   which we can never get simply by going up on a denial on an
25   abuse of discretion basis.

35

C3f9tera

1              THE COURT:  Let me hear from the other side.

2              Yes.

3              MR. KELLOGG:  Good morning, your Honor.

4        Michael Kellogg.  I represent the Kingdom of Saudi

5   Arabia.  I'll also be speaking on behalf of the Saudi High

6   Commission, which is represented by Roy Englert.

7              The plaintiffs have conceded, as your Honor has

8   pointed out, that there has been no change in the decisional

9   law on which Judge Casey based his decision back in 2005.  As a

10  consequence, the whole premise of their 60(b)(6) motion is

11  lacking.

12             Judge Casey agreed with the position ultimately

13  adopted by the Second Circuit that a tort act could proceed and

14  was not precluded by the fact that it did not fall within the

15  state sponsorship of terrorism exception.  But he held that it

16  was a discretionary function based on the allegations made by

17  the plaintiffs, based on the evidence presented by the Saudi

18  High Commission, based on the representations made by the

19  Kingdom of Saudi Arabia.  The plaintiffs made all of these

20  arguments that they want to make again at that time.

21             They argued Letelier and Liu.  They argued that

22  Bayoumi might have been an agent of Saudi Arabia.  They sought

23  jurisdictional discovery which Judge Casey properly denied

24  under the Second Circuit's precedent in Virtual Countries v.

25  Republic of South Africa that when a sovereign state comes in

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

C3f9tera
1    and asserts FSIA immunity it is the responsibility of the
2    plaintiffs to present evidence -- not just allegations but
3    evidence to dispute that in order to go forward and get
4    jurisdictional discovery.
5              Now, Judge Casey held you haven't made that showing.
6    He denied their request for jurisdictional discovery.
7              They did not even appeal that discretionary decision
8    to deny them jurisdictional discovery.  Instead, they went on
9    the record as it was before Judge Casey and they argued that
10   the discretionary function exception did not apply.
11             Now, of course the Second Circuit did not reach that
12   decision because it held, based on the state sponsorship of
13   terrorism exception, that they didn't even have to go there.
14             Judge Casey, of course, agreed with the position taken
15   by the Second Circuit now in the Doe case which is why he
16   reached the discretionary function exception.
17             THE COURT:  Well when you say he agreed, that wasn't
18   his ruling.
19             MR. KELLOGG:  He agreed with that -- his ruling was
20   based on the discretionary function exception.  That's correct.
21             THE COURT:  Well, no, his ruling was based on the
22   inapplicability of the exception.
23             MR. KELLOGG:  It was based on the inapplicability of
24   the tort exception because it was a discretionary function.
25             THE COURT:  Well the -- those are alternative
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C3f9tera
1  determinations.  I don't remember Judge Casey saying -- making
2  a ruling that, in fact, that the noncommercial tort exception
3  did apply.
4            MR. KELLOGG:  No.  He held that it did not apply.
5            THE COURT:  Right.
6            MR. KELLOGG:  He also held that it was not precluded
7  by the state sponsorship of terrorism provision, the provision
8  about providing material support to terrorists.  So in that
9  respect he ultimately agreed with what the circuit held in Doe
10 which is why he went on to reach the discretionary function
11 exception and held in our favor.
12           The solicitor general representing the department of
13 justice and the department of state was invited by the Supreme
14 Court to file a brief on the petition for certiorari.  And
15 they -- although they disagreed in some respects, as well with
16 the Second Circuit's reasoning, they agreed with the result and
17 they said -- and I'm quoting from the amicus brief at three,
18 four.
19           "The lower courts correctly concluded that Saudi
20 Arabia and its officials are immune from suit for governmental
21 acts outside the United States.  While the United States
22 disagrees in certain respects with the analysis of the court of
23 appeals further review by this Court to determine the best
24 legal basis for that immunity is unwarranted."
25           And the Supreme Court followed the solicitor general's

38

C3f9tera
 1   recommendation and denied certiorari.
 2          Now, nothing in Doe has cast any doubt on what the
 3   solicitor general had to say or on Judge Casey's original
 4   decision in this case.
 5          THE COURT:  Well why is the solicitor general's
 6   advocacies determinative one way or the other?
 7          MR. KELLOGG:  It is not.  What is determinative is
 8   Judge Casey's decision.  I simply raised that to point out that
 9   the United States, the state department, etc., agreed with
10   Judge Casey's original decision to deny the case and said that
11   further proceedings were unnecessary and inappropriate
12   particularly in an FSIA context where the burdens of litigation
13   on a sovereign state are supposed to be avoided as promptly as
14   possible if a relevant exclusion applies.
15          Now as your Honor quoted, the court in Doe said let us
16   be clear.  We make no judgment as to whether the allegations in
17   that complaint are sufficient to state a claim or even to
18   provide jurisdiction.  They simply remanded for this court to
19   make its own determination as to whether the discretionary
20   function exception applied.
21          Counsel makes a great deal of the fact that they cited
22   Letelier and Liu.  They cited Letelier and Liu only for the
23   proposition that a terrorist attack within the United States
24   could fall within the tort's exception to immunity.  But they
25   did not make any determinations regarding whether the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C3f9tera
1  discretionary function exception applied.  And they remanded to
2  this court.
3           Indeed, and quite remarkably, they cited Judge Casey's
4  earlier discretionary function exception with approval noting
5  that he dismissed, quote, similar claims against Saudi Arabia
6  and instrumentalities, quote, after finding the alleged acts
7  encompassed in the discretionary acts exemption.
8           So it could hardly be calling into question Judge
9  Casey's prior decision in this case.
10          Now as I noted, plaintiffs are now arguing that they
11 want jurisdictional discovery.  Judge Casey denied them
12 jurisdictional discovery and they did not even appeal that
13 determination.
14          So, the whole premise of their 60(b)(6) motion is
15 simply mistaken.  There has been no change in the decisional
16 law on which this court's decision was based.
17          Judge Casey granted the motion to dismiss over seven
18 years ago, in 2005.  Final judgment was entered in January of
19 2006.  And I would note it was entered at the behest and the
20 urging of the plaintiffs who wanted finality so that they could
21 take that appeal.
22          Now, there were three cases against the Saudi High
23 Commission.  That were not part of that original judgment.  But
24 there was a stipulation entered in May of 2005 that
25 specifically said the parties hereto, quote, will adopt as a

C3f9tera
1   binding order in the action with regard to Saudi High
2   Commission the order of this court deciding the consolidated
3   cases.
4            So effectively this final judgment applied to the
5   Saudi High Commission as well in all of the cases.  It applied
6   to Saudi Arabia itself in all of the cases.  That is over six
7   years ago that the cases -- that final judgments were entered.
8            THE COURT:  Well, you don't argue, though, that they
9   had the basis to raise this issue prior to the Court's decision
10  in November.
11           MR. KELLOGG:  I'm sorry.  Your Honor I didn't quite
12  catch that.
13           THE COURT:  You're not arguing that it's -- that they
14  should have -- they had an opportunity to timely make this
15  motion based upon the Court's -- the Circuit's most recent
16  decision at any time prior to November when the Court issued
17  its opinion.
18           MR. KELLOGG:  Well, of course.  It's a change in
19  decisional law.  And that's the basis of their motion.
20           But the Second Circuit has made absolutely clear that
21  a change in decisional law is not a, quote unquote,
22  extraordinary circumstance sufficient to warrant vacating a
23  prior final judgment.
24           They said that quite clearly in the DeWeerth case
25  cited in our briefs; that even when a prior judgment turns out
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C3f9tera
1   to be wrong that is not a basis for disturbing the finality of
2   that judgment, particularly not a seven-year-old final
3   judgment.
4            Now plaintiffs accordingly argue that there's certain
5   equitable factors that justify reopening it in this case.  They
6   say there's a risk of inconsistent judgment.
7            Well the Second Circuit dealt with that issue as well
8   in United Airlines v. Brien, which we cite in our case.
9            And they said specifically at page 176 of their
10   opinion, potential hardship resulting from inconsistent
11   judgment is, quote, not by itself sufficiently extraordinary to
12   justify reopening a judgment.
13            All of the cases the plaintiffs cite are not only much
14   fresher than the final judgments at issue here but they were
15   cases in which inconsistent results against the same defendant
16   was at issue.  The defendant was still in the case.  One
17   plaintiff was going to be able to proceed and one plaintiff was
18   not going to be able to proceed.  And the reason for that had
19   to do, generally when the court granted, with one case had been
20   removed to federal court.  And the federal court, anticipating
21   under Erie what the state court was going to decide, tried to
22   make a judgment and got it wrong.  Those are the factual
23   scenarios in which the courts have, in rare circumstances,
24   granted a 60(b)(6).
25            We have nothing of that sort here.  The fact that

42

C3f9tera
1   Afghanistan remains in the case for now is not a reason to
2   reopen the case against Saudi Arabia and the Saudi High
3   Commission who have been out of this litigation for years.
4   There's nothing perverse about that.  That's standard
5   litigation practice.
6            And, indeed, it was urged by plaintiffs themselves.
7            As I said, they sought the final judgments, the Rule
8   54(b) judgments in this case in May of 2005.  Their motion for
9   entry of final judgment against the Kingdom of Saudi Arabia and
10  they said, quote, this is at page seven of their motion, the
11  claims against each defendant can be separately enforced;
12  accordingly, the claims against the defendants are separable
13  from the surviving claims.
14           And, again, they said the judgments themselves -- the
15  judgments entered on behalf of the defendants could not be more
16  final.  That's what they said about the judgments against the
17  Kingdom and the Saudi High Commission.
18           So the finality of those judgments, which was urged by
19  the plaintiffs, has to be respected at this point.
20           Plaintiffs have cited no case under 60(b)(6) remotely
21  comparable to the circumstances at issue here.
22           Now, they argue:  Well there would be no hardship on
23  the defendants if they were brought back into the case seven
24  years later.
25           That is emphatically not the case.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

43

C3f9tera
```
 1              These cases have been closed for a long time.
 2    Sovereign immunity under the FSIA, as the Second Circuit
 3    stressed in the Robinson case, is not just from liability; it's
 4    also from the burdens of litigation.  And it would be contrary
 5    to establish principles of sovereign immunity to require Saudi
 6    Arabia in an instrumentality to now come back into the case and
 7    bear the burdens of litigation.
 8              Again, this is a point the plaintiffs made seven years
 9    ago in their motion for entry of final judgment.  And I'd like
10    to quote again from that at page eleven.
11              It says in cases involving dismissals based on
12    sovereign immunity grounds, considerations of fairness to the
13    dismissed parties weigh heavily in favor of early appeal and
14    swift final dismissal from protracted litigation.  In such
15    cases should this court's order of dismissal ultimately be
16    sustained -- and here's the critical part quoted from them --
17    these parties are entitled to the finality such relief promises
18    as soon as possible, not years in the future, and without the
19    substantial costs and uncertainty of being forced to submit to
20    litigation until an appeal finally ripens.  They got their
21    wish.  They got their appeal.  They lost.  They sought Supreme
22    Court review.  They lost.
23              Now, the Second Circuit has subsequently changed the
24    decisional law on which it decided this case.  But the Second
25    Circuit has always made clear that is not a basis for reopening
```

44

C3f9tera
1    the judgment.
2              Afghanistan, I should note that the allegations
3    against Afghanistan are very different from those against the
4    Saudi High Commission and the Kingdom of Saudi Arabia as
5    described by Judge Casey.
6              They argue -- and I'm quoting here from the F.Supp.
7    District court decision.  They argue that Afghanistan expressly
8    agreed to conduct illegal and unlawful terrorist attacks on the
9    United States.
10             Now, in discovery on remand Afghanistan is going to
11   have an opportunity to put in evidence on that.  There will be
12   jurisdictional discovery, to see if there's any such basis for
13   analogies like that.
14             But there was no comparable allegation against Saudi
15   Arabia.
16             The allegation against Saudi Arabia, as Mr. Cozen
17   conceded, was not that they helped plan the attacks; not that
18   they agreed to attack the United States.  The allegation was
19   that they set up certain charitable organizations in Bosnia, in
20   other locations, and provided money to those that ultimately
21   found its way into the hands of terrorists.
22             The one allegation that they harp upon concerns a
23   Mr. Bayoumi in California who they claim -- they claim it more
24   directly now, but in their complaint they said suggested that
25   he might be an agent of Saudi Arabia.  Judge Casey looked at
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

45

C3f9tera
1   those allegations, held that the discretionary function
2   applied.
3           Letelier and Liu are very different cases where the
4   agents of the foreign government actually went in and committed
5   murders in the United States.  And the courts there held that
6   the discretionary function exception did not apply.
7           Judge Casey considered all of that and made a very
8   careful, considered decision that discretionary function does
9   apply.  That decision has held up for seven years now.  It's a
10  final judgment.  And it's completely inappropriate and
11  completely unjustified under the case law to now reopen it,
12  drag sovereign entities back into court to defend themselves
13  against charges that they successfully defeated and had
14  dismissed seven years ago.
15          Thank you, your Honor.
16          THE COURT:  Did you want to respond?
17          MR. COZEN:  Yes, I would like to respond, your Honor.
18  On several different bases.
19          In the first place I think it's very, very important
20  for this court to recognize that Judge Casey denied us
21  jurisdictional discovery because he viewed the discretion as
22  the right of the state to give money to charity, which was not
23  the basis or the gravamen of our complaint to begin with.
24          Number two, the Doe panel on the basis of the
25  pleadings -- and I would direct your Honor to the district

46

C3f9tera
1    court opinion in Doe.
2           Because in the district court opinion in Doe you will
3    see that they set forth what all of the allegations were
4    against Afghanistan; that they provided material support and
5    resources, including a safe haven of base of operations, that
6    they had meetings to plan activity -- terrorist activities such
7    as Bayoumi, which we said directly took place in the United
8    States.
9           What I'm trying to point out to you, is this, your
10   Honor, having said all of that, what did the Doe panel do?
11          The Doe panel went ahead and they said 1605(a)(5)
12   applies.  We agree with the district court that it does.  We
13   disagree with our prior brethren here in the circuit.
14          Now this is the law of the circuit.  Based upon the
15   pleadings, we are now sending this back for jurisdictional
16   discovery.
17          At the very least, that's what ought to happen here if
18   it is necessary to do so because our defendant colleagues
19   dispute or disagree with our factual assertions.
20          So, if you want to follow Doe, because our panel
21   didn't, then you've got to say, okay, let's take a look at the
22   pleadings and let's have some jurisdictional discovery on the
23   issue of discretionary function.
24          I would, again, urge this court that the terrorist
25   attacks three-panel clearly understood our claims differently

C3f9tera
1    from what Judge Casey understood them as.
2            Judge Casey cast them as the Kingdom decided to give
3    money to charities and that was a policy decision.  Even our
4    court of appeals didn't see it that way.  When you read their
5    recitation of the facts, the inferences that could be gleaned
6    from our factual recitation, they saw it entirely differently.
7    They saw it exactly what we meant.
8            That wasn't the decision we were complaining about.
9    The decision we were complaining about was their decision to
10   use charities and banks as fronts and alter egos to become part
11   and parcel of al-Qaeda and fund terrorism throughout the world
12   and with foreseeable consequences in the United States.
13           So, even our panel didn't see the facts the way Judge
14   Casey saw the facts.  So if Doe says, on the basis of the
15   pleadings go take discovery, we ought to have that same right.
16           Now, that gets to Mr. Kellogg's other notion that
17   somehow this is really good for the Foreign Sovereign
18   Immunities Act.  Somehow the balance that we ought to -- that
19   we ought to draw here is taking one foreign sovereign and
20   protecting it from having to litigate.  But taking another
21   foreign sovereign identically situated and say you have to
22   litigate.
23           I suggest to you no, your Honor.  Take a look at the
24   House discussion of the Foreign Sovereign Immunities Act and
25   the language that they use.  Their primary overriding concern

48

C3f9tera
1   was uniformity of treatment between foreign states.  You can't
2   have one foreign state in an identical case being treated
3   differently than another foreign state.
4           If they're entitled -- if 9/11 victims are entitled to
5   sue Afghanistan and get discovery on what kind -- what does
6   discretionary function mean?  Does it mean that they violated a
7   law, which means it couldn't be discretionary?  Or does it mean
8   that we adopt Liu an Letelier; i.e., if you violate the laws of
9   humanity and international law by setting upon helping to
10  attack innocent people and killing them, that can't be
11  discretionary, that's another whole set of issues.
12          We're happy to go and meet with them on that
13  battlefield.  We never had the opportunity to do so because
14  Judge Casey denied us the right to do so.  And the Doe panel
15  didn't deny the right to do so to Afghanistan.
16          And they continue to neglect the fact that we asserted
17  the Bayoumi role in this whole thing and, in fact, as Senator
18  Graham said he was convinced that Bayoumi acting as a Saudi
19  government official was directly involved in the 9/11 attacks.
20  Whether or not a finder of fact later determines that to be the
21  case is a different issue.  But it certainly doesn't even come
22  close to dealing with a discretionary function exclusion.
23          Now I would say -- I would say to your Honor, you
24  know, you take a look at Doe.  Don't just take a look at the
25  circuit case.  Take a look at the district court case.  See the

49

C3f9tera
1   allegations that they had in front of them.  See the relief
2   that the circuit gave them.  And note, note, please, that they
3   point out in Doe that in the debate surrounding the adoption of
4   the terrorism exception, the prior cases, Liu and Letelier were
5   actually, not just presumptively, but actually before them.
6   They were aware of their existence and they discussed them.
7   And it was Letelier that said those decisions make clear that a
8   foreign state has no discretion to perpetrate conduct designed
9   to result in the assassination of an individual or individuals;
10  action that is clearly contrary to the precepts of humanity as
11  recognized in both national and international law.
12          So, the point that I make here, your Honor, is if you
13  view, as Judge Casey viewed, which the Court of Appeals didn't
14  view it the same way, but if you view the decision that has to
15  be viewed -- that has to be examined for discretion as we're
16  going to give money to Islamic charities, that's not what this
17  case is all about.  Doe didn't view it that way in looking at
18  the activities of Afghanistan.  They viewed it differently.
19  And our Court of Appeals panel, headed by Chief Judge Jacobs
20  viewed it differently.  They understood exactly what the
21  gravamen of our complaint was.  And it wasn't about making a
22  decision to give money to charity.  It was about using
23  charities as a front and as an integral component of al-Qaeda
24  for the purpose of perpetuating the establishment of an
25  international structure of terrorism capable of attacking the