UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

03 MD 1570 (GBD)

------------------------------x

New York, N.Y.
April 12, 2012
2:15 p.m.

Before:

HON. FRANK MAAS

Magistrate Judge

APPEARANCES

COZEN O'CONNOR
Attorneys for Plaintiff Federal Insurance Co.
BY: SEAN P. CARTER
J. SCOTT TARBUTTON

SPEISER, KRAUSE, NOLAN & GRANITO
Attorneys for Ashton Plaintiffs, et al.
BY: CHRISTINA M. FRY

KREINDLER & KREINDLER (Via Telephone)
Attorneys for Ashton Plaintiffs
BY: JAMES P. KREINDLER

ANDREW MALONEY (Via Telephone)
Attorney for Ashton Plaintiffs

ANDERSON KILL & OLICK, P.C.
Attorneys for O'Neill Plaintiffs and Plaintiffs' Executive Committee
BY: JERRY S. GOLDMAN
RENE HERTZOG

APPEARANCES (Continued)

MOTLEY RICE
Attorneys for Burnett, Euro Broker Plaintiffs
BY: ROBERT T. HAEFELE

TOM MELLON (Via Telephone)
Attorney for Havlish Plaintiffs

JAMES P. McCOREY (Via Telephone)
Attorney for Havlish Plaintiffs

CLIFFORD CHANCE US LLP (Via Telephone)
Attorneys for Dubai Islamic Bank
BY: RONI E. BERGOFFEN

GOETZ & ECKLAND P.A. (Via Telephone)
Attorneys for WAMY
BY: FREDERICK J. GOETZ

BERNABEI & WACHTEL (Via Telephone)
Attorney for Al Haramain USA
BY: ALAN KABAT

MARTIN McMAHON (Via Telephone)
Attorney for Islamic Relief Organization, Muslim World League

(Case called)

THE COURT: I have the joint letter raising topics.

The first one that the plaintiffs propose is to talk about the status of document productions. The defendants oppose that as premature because there are a couple of weeks left for document production, but I don't think that there is any harm in being brought up-to-date on whatever is happening or isn't happening.

MR. CARTER: Your Honor, I think that we will begin with the production on the plaintiffs' side and then allow the defendants to speak where they stand with regard to their respective productions.

The different plaintiffs groups have been independently producing documents within their evidence databases and that process has been ongoing for quite a while. I think we would probably say that, as to what we would call the primary level of evidence, we are all probably 90 percent done. There are secondary and tertiary levels of evidence that we are still in the process of moving through.

One of the complications has been that there is a fair amount of information in the possession of each of the plaintiffs that is in foreign languages and it is simply taking us time to get through them; it is not only Arabic, some of it is in Serbo-Croatian. So it is going a little slower than we would like, although we are getting through it.

THE COURT: When you mention primary, secondary and tertiary productions, is there something thematically that distinguishes them or is it just because of rolling requests?

MR. CARTER: No, your Honor. I think, thematically, the way we would probably explain it is, if there is a request, for instance, for any information or evidence you may use as to a certain defendant, it is not merely an exercise of finding everything relating or naming that defendant but, also, parties to which we believe it has ties and connections.

MR. McMAHON: Your Honor, I am having a problem hearing Sean.

THE COURT: Move the microphone closer, and it may be even better if you sit so that you are closer to it.

MR. CARTER: I don't object to being comfortable at all, your Honor.

THE COURT: Is that better?

MR. McMAHON: Yes. That sounds a lot better, your Honor. Thank you.

MR. CARTER: So we are going through that process, your Honor. I think, although we will be substantially complete our productions by April 30th, we may need a bit of a window after that to wrap up the process.

An additional factor that we would like to have the Court to consider is, when we approached this discovery schedule and created the window following the productions for

the parties to do follow-up and motion practice, I don't think we fully appreciated that that was going to coincide exactly with all of our reply briefing in the Second Circuit and the 44 appeals that are pending.

The defendants are filing their briefs on April 20th. The structure of the briefing is, at this point, a little unclear to us. There is going to be a brief that is jointly filed on behalf of a large group, but they have reserved the right of every defendant to file a brief as well. In theory there could be as many as 45 briefs. I think it will be substantially fewer, but within the month after that we are going to be sort of besieged with appeal briefing, and we prefer to avoid a situation where that deprives from the opportunity to deal with the follow-up discovery and the motion practice.

I think what we had in mind was just a brief extension of the production period so that the productions would complete around the same time as the Second Circuit briefing which is early June.

THE COURT: On the defense side is there any objection to that?

(Pause)

Well, the silence is deafening.

MR. GOETZ: Frederick Goetz on behalf of WAMY International.

No objection on behalf of WAMY, your Honor.

THE COURT: Rather than going through everybody that is on the phone, if I don't hear anything in the next few seconds, I will assume that is unobjectionable and I will so order that.

(Pause)

THE COURT: It is so ordered.

MR. CARTER: Thank you, your Honor.

THE COURT: On the defense side, is there anything -- defendants indicated that they didn't much want to talk about the status of discovery in general, in any event, but if there is anything that anybody wants to share with the group, feel free.

MR. GOETZ: Your Honor, Frederick Goetz for WAMY, if I might.

THE COURT: Keep your voice up.

MR. GOETZ: Certainly, your Honor.

Unfortunately, Mr. Mohammedi is detained on another matter today, but he just returned recently from Saudi Arabia where he apprised the plaintiffs, I guess, of the number of documents --

THE COURT: You need to keep your voice up again because the reporter is having difficulty, as am I.

MR. GOETZ: I apologize, your Honor. The challenges of doing it the teleconference way -- I apologize.

Mr. Mohammedi estimates about 120,000 pages of documents he reviewed in his last -- or was there in his last trip to Saudi Arabia. I think he came back about a week or so ago.

We believe we have supplied most of the documents to the plaintiffs. We have about another 15 pages of indexes yet to be produced. Similar to the plaintiffs' preparation of those indices which are in Arabic, will require some time for translation as well. So while we certainly join in the request for an extension of the time to complete the written discovery, Mr. Mohammedi and I discussed a period of 90 days, actually, if that would be appropriate with everybody.

So, in other words, rather than April 30th, that would push that out to August 30th -- I'm sorry -- July 30th.

THE COURT: I am time challenged, but August 30 didn't seem right.

And your proposal was to put it out until when, Mr. Carter?

MR. CARTER: We had suggested just essentially a month, to May 30th.

THE COURT: I am going to say June 29th.

Anything else before we turn to the letters rogatory?

MR. McMAHON: Yes, your Honor.

This is Mr. McMahon again for IRO and WL.

I am assuming that you got my letter dated, I guess,

yesterday?

THE COURT: I did.

Is there anything further to report about the time schedule for the substitution?

MR. McMAHON: No, your Honor.

I just wanted to opine that I believe we have complied with all the discovery requests. There were some documents in my office that I have shared with Mr. Carter in terms of some documents -- some documents have spindles. Other than those -- and we just received a new box in, your Honor. And I made a specific inquiry which has not been responded yet about whether or not we are going to get some more documents.

If your Honor is not aware, we have been served with a third document production from the 9/11 plaintiff and I have corresponded with Mr. Carter about that.

Basically, your Honor, I think the law firm is waiting, obviously, to be retained and may ask me to remain in the case for some capacity, I don't know. But it is my understanding, your Honor, we are in pretty good shape with respect to document production. But I felt it might be better, though, if you heard representations from new counsel about where we are in document production rather than representations from me. So that was my only concern.

And as soon as the retainer gets signed, I guess I will be moving to withdraw and they will enter their

appearance.

THE COURT: Unless you are sort of riding along with them for awhile as you indicated you might --

MR. McMAHON: That might happen.

THE COURT: -- failing that, you probably not only want me to substitute counsel but you also probably want me to get you -- and it requires a specific order -- off the ECF mailing list or you will continue to get notices for the rest of your life every time somebody hiccups in this case.

MR. McMAHON: Can you also get me paid, your Honor?

THE COURT: Would that I could.

MR. McMAHON: So I think I will report to your Honor as soon as I hear something from new counsel about the fact that they have actually been retained and we will certainly let Mr. Carter know as soon as that happens as well.

By the way, your Honor, I forgot to mention the new law firm is called Lewis Baach.

THE COURT: Where are they located?

MR. McMAHON: All over the globe, your Honor. They do a lot of work in the kingdom. They have an office address here in Washington, D.C. I think it is 601 F Street, but they are kind of all over the globe.

THE COURT: Thanks for letting us know that.

MR. HAEFELE: Just one quick note on that.

THE COURT: Yes.

MR. HAEFELE: If we could please have Mr. McMahon, the correspondence that he is having with Mr. Carter is nice, except it ends up resulting in Mr. Carter having to forward it to us, including the letter that went to the Court yesterday, he didn't circulate to all counsel. And I would appreciate the direction that he would continue -- or start including the rest of the lawyers in it.

THE COURT: Yes. All correspondence, certainly with the Court, should be circulated to all counsel by the sender. Frankly, I didn't look at the fax so I didn't notice that that hadn't been done.

MR. HAEFELE: Just to be fair to Mr. Kabat, he circulated it to me.

THE COURT: OK. Until you bail out of the case, if you do, Mr. McMahon, you need to copy everybody on your communications with the Court.

MR. McMAHON: Got you. Thank you, your Honor.

THE COURT: Why don't we turn to the letters rogatory, which I reviewed both in draft and in proposed revised form. And I guess you can tell me what your concerns are, or Mr. Mohammedi's.

MR. McMAHON: Your Honor, this is Mr. McMahon again.

I have tickets to the opening game today in Washington D.C. and I was wondering, do I have to sit through this, I have no dog in the fight?

THE COURT: Enjoy the game.

MR. GOETZ: I think that the issue is really quite narrow and is simply one of language rather than substance.

THE COURT: Except for some of the language you proposed -- no, I guess the last letter said you are not or Mr. Mohammedi is not objecting to the time period, is that right?

MR. GOETZ: That is correct, your Honor.

THE COURT: In which case I have gone through the proposed changes, and maybe it would be quicker if I just tell you my tentative thinking with respect to the proposed wording changes and then if anybody wants to argue about any of them, I will certainly entertain that.

Bear with me while I find the modifications that were suggested.

The first two related to whether WAMY's counsel was going to be one of the attorneys to whom the executed request is to be returned. And based on the case management orders which provide that materials must be turned over by the requesting party to all other parties in the case, I think that just overly complicates questions, so I am inclined not to require those modifications.

As to who the materials are to be delivered to, I was curious why you put Judge Daniels in there rather than me.

That is addressed to the plaintiffs, obviously.

MR. CARTER: Your Honor, I know that it has been the

practice throughout the course of the litigation that the letters rogatory typically issue from Judge Daniels. I don't know if that is a requirement. I think we just followed the traditional practice.

THE COURT: I, frankly, had never really focused on that before. I don't much care. I was just curious.

Then there is the sentence, "All documents and materials deposited with the Court will be available to all parties."

Plaintiffs have any objection to that?

MR. CARTER: No, your Honor.

THE COURT: So that change will be made.

On page 5 where the defendants were crossing out time periods, it seems to me that is consistent with the plaintiffs' position.

MR. CARTER: Your Honor, the time periods on page 5 were taken directly out of the letter that Canadian Review Agency sent to the WAMY office in Canada. We just copied their date periods.

THE COURT: I don't know that you need it. I'm not sure it matters one way or the other.

MR. CARTER: I don't think so.

THE COURT: So I am inclined to take it out if it really is surplusage. What you are looking for is the kitchen sink if they will give it to you in terms of the investigation.

In the next paragraph, as to the report's conclusion, the CRA investigative conclusions, number 2, the defendants propose to take out the notion that their shared office space and substitute contact information, it seems to me both are potentially accurate and that it should be "office space, contact information and bank accounts."

MR. GOETZ: WAMY would have no objection to that, your Honor.

THE COURT: In paragraph 3 or clause 4, I don't think it much matters other than for atmospherics to add "the CRA's views appears to," so I am inclined to put that in.

I think it is accurate to say that the notice indicated that the Canadian government intended to revoke rather than was revoking, but I also think it is accurate to add a sentence saying that the letter provided that the revocation would take effect after 30 days, and 30 days has come and gone and, therefore, I assume, by operation of that clause, in fact, WAMY's designation as a Canadian tax-exempt registered charity has been revoked.

And then the modifications that were proposed under 3, I gather the defendants are no longer seeking those insertions of narrow time periods.

Is that correct?

MR. GOETZ: That is correct, your Honor, but I would state that Mr. Mohammedi's letter of April 10, 2012, there is a

copy to counsel, there is a slight additional modification or clarification that we are requesting as to the specific request of the letter rogatory.

THE COURT: Let me get through my rendition of this.

So all of those time period changes or narrowings drop out. And then the only other changes that I see in paragraphs 9 and 10, you are proposing to take out the letters SDGT before the Netherlands International Fund, and I'm not sure I understand why that is or what difference it makes.

Mr. Carter, what is your view on that?

MR. CARTER: I think it is an accurate description of the entity.

THE COURT: What does this SDGT mean?

MR. CARTER: Specially designated global terrorist.

THE COURT: It seems to me it is not necessary so, again, we will take that out.

Shared office space, and probably you should add the change that conforms to the earlier one about contact information in paragraph 9.

And I think except to the extent that Mr. Goetz is drawing my attention to the April 10th letter again, that's all I had.

What else was it that you thought should be done, Mr. Goetz?

MR. GOETZ: Your Honor, if I could just respond to the

Court's thoughts on the person to whom the executed requests are to be returned, the thinking there, your Honor, is basically consistent with the case management order from December 9, 2005. I guess it was our understanding that if both parties, the plaintiff and the defendant, or the defendant wanted records from a foreign government entity, that that would become a joint request and, therefore, both parties would be requesting parties.

Looking at the Court's language, "within 20 days of receipt of such notice, any other party interested in obtaining documents from the same nonparty foreign government or official should submit its proposed request to the initiating party and all parties together shall submit an agreed form of request to be sent to the foreign government or official."

So we certainly don't intend to make it any more difficult for the Canadian authorities but to the extent, I thought that the spirit of that would be that all parties would be requesting parties if they wanted documents from these foreign entities.

THE COURT: That is probably helpful, actually, to the plaintiffs.

Any objection to that?

MR. CARTER: Your Honor, the only concern we have is that in dealings with foreign governments, our experience has been that, to the extent you make it more difficult for them

and create additional layers of communication that they have to go through, it becomes a much longer process and the results tend to be less productive. And so we were just trying to create a scenario under which there was at least a clean line of communication to allow the CRA to respond.

THE COURT: Perhaps we can tweak the language to accomplish that, such that the request is by the following attorneys for plaintiff and for WAMY -- Mr. Mohammedi is on what I will call the service list, although that is not fully accurate -- "I request that all copy documents and materials be delivered to the custody and control of" -- you were not planning to have them mail it to, in your version, four or five different addresses, right?

MR. CARTER: No, your Honor.

THE COURT: So I guess, are you the designee?

MR. CARTER: I suppose, yes, I am, your Honor.

THE COURT: So there, modify it to say that it will be delivered to you to be provided to the Court, and instead of "will be available" in the underlying language, why don't you change that to "shall be made available forthwith to all parties." I am adding a "shall" and a "forthwith."

Is that sufficient, Mr. Goetz.

MR. GOETZ: Yes, it is, your Honor. Thank you.

THE COURT: So we have dealt with the letters rogatory. We have dealt with the discovery schedule.

MR. GOETZ: Your Honor, I apologize.

Fred Goetz with one last point about the interrogatory, getting back to Mr. Mohammedi, about that letter of April 10 --

THE COURT: Yes.

MR. GOETZ: This is a clarification as to, I guess, the entity that the documents in the CRA's possession pertains to it, and it is WAMY Canada. And at some point the letters rogatory that is made clear and at other points it is not, particularly, requests 1, 2, 3, 4, 7, 8, 9, 10, 11 and 12. And the only change that we are proposing there is just a clarification that it is World Assembly of Muslim, Jews or WAMY-Canada.

THE COURT: Mr. Carter.

MR. CARTER: Your Honor, that is problematic from our perspective on a number of levels.

If you look at the actual audit, it is clear that the CRA looked at the activities not only of the Canadian branch office, but also of the Saudi entity and the UK, and it is unclear whether there may have been investigations of other offices that may not be fully reflected in the report.

THE COURT: I think that draws, Mr. Goetz, too fine a line because some of the conclusions of the report certainly relate to WAMY Saudi Arabia, and I think it would be confusing, at a minimum, to restrict each paragraph to WAMY Canada,

because that might in some way be seen as limiting the scope of requests that, as I said a little while ago, are really intended to get, to the extent that the Canadians will provide it, the entire investigative file.

So that request is denied.

MR. GOETZ: Understood, your Honor.

That's all that I have.

THE COURT: Anything else from anyone for today?

Do we have another date scheduled?

MR. CARTER: We do, your Honor. Off the top of my head, I don't know it.

THE COURT: Apparently, I am not in the country the date that we have it scheduled for so I needed to move it.

Bear with me a second.

Off the record.

(Discussion off the record)

THE COURT: Do we need the session in or around May 17th, given what I have done to the discovery schedule?

MR. CARTER: Your Honor, I think early June would work. I am hesitant to push it out too far because we do have, frankly, some concerns about the transition that is happening with counsel for the MWL and the IRO, and we may need to come back to discuss that and how it impacts on what we have been doing for the last several months.

MR. GOETZ: Frederick Goetz for WAMY.

We anticipate having one issue related to these production of the documents from the SAR defendants.

THE COURT: How about June 6th at 2 p.m.? That is a Wednesday.

MR. CARTER: I think that works for us, your Honor.

THE COURT: If it doesn't, I could, at the moment, make it June 13th at 2 p.m. also.

So I will assume it is June 6 unless I hear from you folks otherwise.

MR. CARTER: That's fine, your Honor.

MR. GOETZ: Yes, your Honor.

THE COURT: Thank you all.

o 0 o