# **EXHIBIT A**

**OBJECTIONS TO PRE-SENTENCE REPORT
DATED APRIL 13, 2012**

# ANDERSON KILL & OLICK, P.C.

Attorneys and Counsellors at Law

1600 MARKET STREET ■ SUITE 2500 ■ PHILADELPHIA, PA 19103
TELEPHONE: 267-216-2700 ■ FAX: 215-568-4573
www.andersonkill.com

Jerry S. Goldman, Esq.
Jgoldman@andersonkill.com
(267) 216-2795

*Via FEDEX – Copy Via Email*
*richard_kasarda@paep.uscourts.gov*

April 13, 2012

US Probation Officer Ricardo Kasardo
US Probation & Parole Office
600 Arch St # 2400
Philadelphia, PA 19106

    Re: U.S.A. v. Maria Teresa Chica
       ED PA Criminal No. 11-668-JKG

Dear Mr. Kasardo:

  We represent the defendant, Maria Chica, and acknowledge receipt of the draft pre-sentence report pertaining to Maria Chica prepared on March 28, 2012 (the "draft PSR"). The defendant's objections are as follows:

  A. **Objections as to Draft PSR paras 60 to 63- Ability to Pay**

    1. There are certain factual errors with regards to Ms. Chica's net worth and cash flow analysis.

    2. *First*, the draft PSR assumes absolutely no expenses for housing, which is a factual impossibility.

    3. Presently, Ms. Chica owns her home with is 'under water'- that is, the amount due on the mortgage is in excess of the equity in the home. As is unfortunately quite common, a poor person such as Ms. Chica was encouraged to purchase a home, essentially all on credit, with a high long term interest rate risk. At this time,

New York, NY ■ Newark, NJ ■ Philadelphia, PA ■ Ventura, CA ■ Washington, DC ■ Greenwich, CT
phidocs-65236.2

**Anderson Kill & Olick, P.C.**

US Probation Officer Ricardo Kasardo
April 13, 2012
Page 2

       Ms. Chica cannot afford the mortgage payments on a current basis and the house is scheduled for a sheriff's sale on April 27, 2012.[1]

4. Even if she cannot refinance the mortgage, Ms. Chica will incur housing costs in securing a replacement property. It is reasonably believed that her rental housing costs will be at least as expensive as what she was paying previously, namely $650-700/month.

5. *Second*, the draft PSR states that Ms. Chica has no transportation expenses. That, too, is incorrect. Ms. Chica provides $20/week in gas money to a friend who drives her to work.

6. As a result, Ms. Chica will not have a positive cash flow and should reflect that she is insolvent.

7. Accordingly, the report must be corrected in those two respects.

B. **Objections as to Draft PSR para. 80- Departures**

8. The draft PSR suggests that there are no grounds for a departure from the guidelines except for a potential Section 5K1.1 downward departure. Defendant submits that this is incorrect.[2] To the contrary, Defendant submits that there are two (2) additional grounds for downward departures.

Aberrant Behavior

9. *Applicable Law*: The Guidelines permit a downward departure when a criminal transaction: "(1) was committed without any significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b); United States v. Hancock, 95 F. Supp. 2d 280, 288 (E.D. Pa. 2000) (downward departure warranted in part

---

[1] She is presently seeking a mortgage modification which may save her home. It is unknown what the final monthly payment would be but it is reasonable to assume that it will be somewhat more than she was paying in rent prior to the purchase of the home.

[2] Defendant assumes that in light of her substantial long term cooperation, including not only multiple proffers, the providing of any additional information sought by the Government through the present time, and her testimony before a Grand Jury, the Government, in good faith, will file a 5K1.1 downward departure motion for such substantial assistance in the investigation *or* prosecution of another individual.

**Anderson Kill & Olick, P.C.**

US Probation Officer Ricardo Kasardo
April 13, 2012
Page 3

      due to "aberrational nature" of defendant's crime). A "[d]efendant's apparent willingness to suffer his punishment and move on with his life" suggests that the criminal transaction was a marked deviation from an otherwise law-abiding life. United States v. Rowan, 2007 WL 127739, at *8 (E.D. Pa. Jan. 10, 2007). Importantly, a downward departure can be warranted based on a combination of minor factors, including aberrant behavior, even if no factor on its own would necessarily warrant the departure. Hancock, 95 F. Supp. 2d at 288 (finding that aberrant nature of crime, employment history, and defendant's remorse and desire to atone combined to warrant a departure). In fact, it is not the sentencing judge's choice whether or not to consider the aberrant behavior provision. Rather, failure to consider whether a criminal transaction represents aberrant behavior under U.S.S.G. § 5K2.20 can result in the district judge's sentence being vacated. United States v. Watson, 257 Fed. Appx. 556, 559 (3d Cir. 2007).

10.   *Law Applied.* Based on Ms. Chica's complete lack of relevant criminal history,[3] her criminal conduct clearly represents a marked deviation from an otherwise law-abiding life. Her illegal conduct consisted of appearing at a tax preparer's office and following the tax preparer's directions. The criminal transaction itself was simple, brief, and executed with little advance planning. She knew it was wrong; she recognized the wrong.

---

[3]   Here, the only prior unlawful act in Ms. Chica's 57 years was a minor shoplifting which occurred in 1986. She has stated that the theft was actually committed by her child and that she accepted responsibility for it such reason. A past non-felony conviction is typically not considered at sentencing if the conviction occurred more than ten years prior to the underlying offense. U.S.S.G. § 4A1.2(e)(3). Such a conviction may be considered only if it "is evidence of similar, or serious dissimilar, criminal conduct." U.S.S.G. § 4A1.2, Application Note 8. For example, where a court relied in part on a minor theft conviction from 20 years prior to the underlying conviction, the sentence was vacated as unreasonable. United States v. Calderon-Minchola, 351 Fed. Appx. 610, 612 (3d Cir. 2009). Where a sentencing judge believed a series of misdemeanor theft convictions "over-represented the seriousness" of the defendant's criminal history, the judge sua sponte reduced her offense level. United States v. Lozano, 514 F.3d 1130, 1132-33 (10th Cir. 2008) (citing U.S.S.G. § 4A1.3(b)(1)).

In the 26 years since this event, the defendant has compiled no criminal record whatsoever.

phidocs-65236.2

**Anderson Kill & Olick, P.C.**

US Probation Officer Ricardo Kasardo
April 13, 2012
Page 4

11. Ms. Chica is 57 years old, has been married and has two children. According to the draft PSR, she has held at least three jobs in the past eight years, and has been a hard working woman her entire life. She remains employed at one of them and was not terminated for cause at either of the other two. She is a mature woman of strong character with an extensive network of loving family and friends.

12. In addition to her lack of official criminal activity, neither the government nor probation has presented any formal evidence of violent, dishonest, or fraudulent tendencies or prior actions.

13. Viewed together, these circumstances clearly militate in favor of a downward departure pursuant to U.S.S.G. § 3E1.1.

14. Ms. Chica seeks only a small downward departure based on (i) the fact that her offense represented aberrant behavior and a marked deviation from the rest of her law-abiding life; and (ii) her personal history and characteristics as an individual. Failing to consider at least a small downward departure in light of these circumstances would be manifestly improper.

Exceptional Acceptance of Responsibility

15. *Applicable Law.* When taking the relevant Guidelines sentence into consideration, as required by Booker, the district judge must consider a downward departure for acceptance of responsibility. U.S.S.G. § 3E1.1. To merit the default reduction under § 3E1.1, all that is required is for the defendant to plead guilty. United States v. Milne, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005); Frank Bowman, III and Michael Heise, Quiet Rebellion? Explaining Nearly a Decade of Declining Federal Drug Sentences, 86 Iowa L. Rev. 1043, 1124, 1106 (2001) ("[V]irtually all defendants who plead guilty receive a two-or three-level reduction for 'acceptance of responsibility' under U.S.S.G. § 3E1.1.").

16. Ms. Chica pleaded guilty at an early stage of these proceedings, pursuant to an information, saving the government extensive resources that it would have expended prosecuting her. The Guidelines and post-Booker case law therefore counsel strongly in favor of a reduction in her sentence on these grounds.

**Anderson Kill & Olick, P.C.**

US Probation Officer Ricardo Kasardo
April 13, 2012
Page 5

17. Beyond basic acceptance of responsibility for pleading guilty, however, a sentencing judge also must assess whether there has been "'a degree of acceptance of responsibility that is substantially in excess of that ordinarily present.'" United States v. Evans, 49 F.3d 109, 114 (3d Cir. 1995) (quoting United States v. Lieberman, 971 F.2d 989, 996 (3d Cir. 1992)). After Booker, the Third Circuit recognized that "'courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a . . . reduction under § 3E1.1' because 'such conduct bears directly on their character . . . and on how severe a sentence is necessary to provide deterrence and punishment.'" United States v. Severino, 454 F.3d 206, 211 (3d Cir. 2006) (quoting Milne, 384 F. Supp. 2d at 1312). Indeed, it is reversible error for a sentencing judge to fail to "consider extraordinary acceptance of responsibility" as a potential grounds for downward departure. Id. at 211.

18. "The touchstone of any downward departure based upon extraordinary restitution is voluntariness, that is, the taking of certain actions by the defendant in the absence of any legal duty to take those actions." United States v. Leon, 2 F. Supp. 2d 592, 595 (D.N.J. 1998). A defendant's voluntary offer of information to the government to aid in investigation of similar offenses is regularly treated as evidence of "exceptional acceptance." See, e.g., Lieberman, 971 F.3d at 996; United States v. Bennett, 9 F. Supp. 2d 513, 525-26 (E.D. Pa. 1998); United States v. Cruz, 2008 WL 4501951, at *3 (E.D. Wis. Sept. 30, 2008) (defendant's assistance to authorities in further investigations "warranted . . . consideration."); United States v. Ochoa-Ramos, 2008 WL 2062341, at *3 (E.D. Wis. May 13, 2008).

19. Specifically, where members of a conspiracy describe "the nature of the scam as well as the identities of the various participants," reduction based on exceptional acceptance is warranted. United States v. Rodriguez, 975 F.2d 999, 1008 (3d Cir. 1992). Correspondingly, individuals who refuse to identify co-conspirators cannot receive decreases for exceptional acceptance. United States v. McNeill, 709 F. Supp. 2d 360, 366 (E.D. Pa. 2010); In re Sealed Case, 350 F.3d 113, 121-22 (D.C. Cir. 2003).

20. *Law Applied.* Here, immediately after her arrest Ms. Chica acknowledged her actions and ceased all criminal conduct. Shortly thereafter, she explained to the Government how the scheme operated, who was involved and their roles. Such provision of

**Anderson Kill & Olick, P.C.**

US Probation Officer Ricardo Kasardo
April 13, 2012
Page 6

information has continued through the current period. In addition to providing this information, she testified before a federal grand jury. This voluntarily provision of information to the government to aid its investigation of other members of the conspiracy warrants a departure for extraordinary acceptance of responsibility.

21. Ms. Chica seeks only a minor downward adjustment in her sentence. To ignore her extensive voluntary assistance to the government would be to subvert the policy that defendants who accept responsibility for their actions are to be rewarded, a fundamental aspect of the modern sentencing system.

Accordingly, the report needs to be corrected.

Very truly yours,

Jerry S. Goldman

JSG:kr

cc: Michael Vasiliadis, Tax Processor – via email
Ashley Lunkenheimer, Esq. – via email
Nicholas Maxwell, Esq.
Maria Chica

phidocs-65236.2

 

*package id*
0030533
*ship date*
Fri, Apr 13 2012
*to*
US Probation Officer
  Ricardo Kasardo
US Probation & Parole
  Office
600 Arch St Ste 2400
Philadelphia, PA  19106-1614  US
212-278-1783
*residential address*
No
*return label*
No

*notification type*
Label Creation
Delivery
*notification recipients*
lcoca@andersonkill.com

*from*
Jerry S. Goldman (05141)
Anderson Kill & Olick, P.C.
1600 Market Street
Philadelphia, PA  19103
  US

*billing*
CHICA, MARIA.USA V.
  MARIA CHICA
(101872.chi02)
*operator*
Lori  Coca
212-278-1783
lcoca@andersonkill.com
*create time*
04/13/12, 1:11PM

*vendor*
FedEx
*tracking number*
798282812797
*service*
FedEx Priority Overnight®
*packaging*
FedEx® Envelope
*signature*
Adult signature - at address
*courtesy quote*
13.65
The courtesy quote does not reflect fuel surcharge and does not necessarily reflect all accessorial charges.

*Legal Terms and Conditions*
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of 100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is 500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including, without limitation, improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).