```
CAMVTERC                      Conference
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:   TERRORIST ATTACKS ON
     SEPTEMBER 11, 2001,
 4                                              03 MDL 1570 (GBD)(FM)
     ------------------------------x
 5
                                                New York, N.Y.
 6                                              October 22, 2012
 7                                              10:20 a.m.

 8   Before:

 9                      HON. FRANK MAAS,

10                                          Magistrate Judge

11                        APPEARANCES

12   KREINDLER & KREINDLER
          Attorneys for Ashton Plaintiffs
13   BY:  JAMES KREINDLER

14   MOTLEY RICE
          Attorneys for Burnett Plaintiffs
15   BY:  ROBERT T. HAEFELE

16   ANDERSON KILL & OLICK
          Attorneys for O'Neil Plaintiffs
17        and Plaintiff's Executive Committee
     BY:  JERRY S. GOLDMAN
18
     COZEN O'CONNOR
19        Attorneys for Plaintiff's Executive Committee
          and Federal Insurance Brokers
20   BY:  SEAN P. CARTER
          SCOTT TARBUTTON
21
     MARTIN F. McMAHON & ASSOCIATES
22        Attorneys for Defendant IIRO, Muslim World League,
          Wael Jelaidan
23   BY:  MARTIN F. McMAHON

24   BERNABIE & KATZ
          Attorneys for Defendant AHIF
25   BY:  ALAN R. KABAT
```

```
 1                      APPEARANCES (continued)

 2   STEVE COTTREAU
     RONIE BERGHOFFEN
 3        Attorneys for Defendant Dubai Bank

 4   OMAR MOHAMMEDI
          Attorney for Defendant WAMY
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (In chambers)
2              THE LAW CLERK:  Good morning.
3              This is Skylar, the judge's law clerk.
4              This is a conference in the matter of In Re:
5     Terrorist Attacks on September 11th, 2001.
6              This conference is being tape-recorded.
7              Will counsel please state their name for the record.
8              MR. HAEFELE:  Good morning.
9              It's Robert T. Haefele from Motley Rice for the
10    Burnett plaintiffs on the PEC.
11             MR. KREINDLER:  James Kriendler for the Ashton
12    plaintiffs.
13             MR. GOLDMAN:  Jerry Goldman for the O'Neil plaintiffs
14    and the Plaintiff's Executive Committee.
15             MR. CARTER:  Sean Carter for the Federal Insurance
16    plaintiffs and the Plaintiff's Executive Committee.
17             MR. TARBUTTON:  Scott Tarbutton for the Federal
18    Insurance plaintiffs.
19             MR. COTTREAU:  Hi.  It's Steve Cottreau and Ronie
20    Berghoffen for Dubai Islamic Bank.
21             MR. MOHAMMEDI:  Omar Mohammedi, WAMY International.
22             THE COURT:  Two people were talking over each other.
23    We got Mr. Mohammedi's appearance.  Whoever else was talking
24    we didn't get.
25             UNIDENTIFIED SPEAKER:  I'm not sure you heard, but

1    that's Mr. Kabat, Alan Kabat that spoke.
2               THE COURT:  Oh, okay.
3               Is there anyone else on the line?
4               MR. McMAHON:  Yeah.  My name is Martin McMahon.
5               I represent the International Islamic Relief
6    Organization, the Muslim World League defendants, Wael
7    Jelaidan, and Rabbitoh Trust.
8               THE COURT:  Anyone else?
9               Okay.  I guess that's it.
10              I've read and reviewed the -- received and read, let
11   me say, the letters from the Plaintiff's Executive Committee
12   and from Clifford Chance, and the joint letter.
13              I guess the first issue is motions, where I understand
14   the objection that plaintiffs had set forth argument, but it
15   was helpful in terms of having some sense of the number of
16   motions that might be filed and what they might relate to.  And
17   I guess the pitch certainly from plaintiffs is that given the
18   need to translate documents, that the schedule ought to be
19   modified from that which was originally proposed.  So why don't
20   we talk about that first.
21              Whoever is speaking for the plaintiff, just identify
22   yourself.
23              MR. HAEFELE:  Thank you, your Honor.
24              It's Robert Haefele from Motley Rice.
25              I think our position would be consistent with what we

1  had asked your Honor before.  We think that the six-month time
2  period would work well.  And during that time period, I think
3  what we'd like to do, also consistent with, I think, what your
4  Honor's thoughts were at the February conference, was to do
5  staggered motions and start getting some of the motions to you
6  within the next month.
7        THE COURT:  So you're proposing a deadline for motions
8  of what?
9        MR. HAEFELE:  I think a deadline to complete the
10 motions within the six-month time period.
11       Again, our goal would be, I think, within the next
12 month we can probably get a good number of those out to you,
13 and then we would stagger the motions after that.
14       THE COURT:  So you're talking about six months from
15 today?
16       MR. HAEFELE:  Sure.
17       THE COURT:  April 20th?  Did I do that right?
18       MR. HAEFELE:  Yes.  I guess that's -- that sounds
19 right.
20       THE COURT:  And I suppose then for each motion we
21 should agree on a time period for a response.  And then for
22 reply papers, from the defendants' perspective, is three weeks
23 okay?
24       MR. McMAHON:  Your Honor, this is Mr. McMahon.
25       I think that's okay.  I just want to go on record on

1    something regarding the staggering concept, your Honor.

2              Since I have four players, I just hope I can be

3    accommodated by the plaintiffs' lawyers that I'm not jammed up

4    responding simultaneously to two motions.

5              MR. HAEFELE:  Your Honor, I think while I'm somewhat

6    sympathetic to Mr. McMahon's request I think we would note that

7    to the extent we do that, we would surely be jammed up in

8    responding to them.  I'm not sure how that makes too much of a

9    change for the schedule.

10             THE COURT:  Let me assume that you folks can work it

11   out.  If you can't, certainly, Mr. McMahon, I'll entertain

12   requests to modify the time for some of the motions, assuming

13   you get hit with four all at once.  Even if the motions are

14   staggered, in all likelihood I'm going to wait until I have a

15   few of them before I start issuing decisions for the same

16   reason, namely, it will be easier for me to deal with them as a

17   group.

18             MR. McMAHON:  Thank you, your Honor.  I think that

19   should work then.

20             THE COURT:  That was Mr. McMahon; correct?

21             MR. McMAHON:  Yes, your Honor.

22             THE COURT:  Be sure to state your name so the reporter

23   can take it down.

24             MR. McMAHON:  All right.

25             THE COURT:  I think the only other issue for today is

1    the privilege log; correct?
2            MR. HAEFELE:  That is the only other issue that was
3    raised, other than the scheduling issue, your Honor.
4            I think our position generally was though that we
5    thought it really hadn't gone its course in terms of the meet
6    and confer.  And to the extent that your Honor was interested
7    in addressing it, we thought it would be helpful to be able to
8    brief it for your Honor.
9            THE COURT:  And that's Mr. McMahon?
10           MR. HAEFELE:  I'm sorry, that's Robert Haefele.
11           THE COURT:  Oh, okay.
12           Well, the last thing I want is briefing on how to do
13   the privilege log.  So let me hear from the defendants, and
14   then I'll hear from you again, Mr. Haefele.
15           MR. HAEFELE:  Thank you, your Honor.
16           MR. COTTREAU:  Judge, Steve Cottreau for Dubai Islamic
17   Bank.
18           I'd like to speak to the issue of whether or not the
19   defendants' counsels' communications need to be logged on a
20   privilege log.
21           Plaintiffs have proposed -- and we completely agree --
22   that they need not log their communications between the various
23   counsels for the various plaintiffs on the theory that it's all
24   work product protected, and most likely all joint defense
25   privilege.

1             We just want the same theory to apply to us.

2             We shouldn't have to go through thousands of attorney

3    emails coordinating different hearings or coordinating strategy

4    or other kinds of communications that are related to the

5    litigation.

6             What the plaintiffs have proposed is that we keep

7    those communications that don't have to be on the log within

8    some narrow category that stem from the creation of the

9    defendants' executive committee.  But in order to do that, we

10   still have to go through the thousands and thousands of emails

11   that we all have in this case to see if they fit within the

12   four narrow categories that the plaintiffs have proposed, and

13   we don't think we should do that.  That doesn't make any sense

14   in terms of time or resources in this case.

15            THE COURT:  Mr. Haefele.

16            MR. HAEFELE:  Your Honor, yes, thank you.  It's Robert

17   Haefele.

18            I think they're jumping the gun a little bit when they

19   say that they are entitled to it.  I understand their argument

20   that if they are entitled to that privilege because of their

21   relationship among the counsel, then there may be some

22   privilege that attaches similarly to the way the plaintiffs

23   have communicated.

24            But the problem is that they are just assuming that

25   they are entitled to the privilege, and I don't know that they

1  have met the requirements for the joint defense privilege.  And
2  that's probably the one area that we thought most likely to be
3  an area where we should be briefing it.
4           I understand your Honor's reluctance to have briefing
5  on the entire idea of a privilege log, but the issue of whether
6  the defendants are entitled to that sort of protection is an
7  area that we think is one that's ripe for being briefed.
8           We have asked them repeatedly why they think they are
9  entitled to that, and they can't come up with any explanation
10 other than to say, Well, we are, because we've been working on
11 this together.
12          I don't think that just because they've been working
13 on it together suffices to meet the standard, particularly when
14 throughout the course of the litigation there have been
15 multiple instances where they have stressed that they can't
16 work together because they have differing interests.  I mean
17 there's several circumstances where we've relied upon them
18 working together, thinking that they were, only to find out
19 that some of the defendants claim that they took a different
20 position because they had different interests.
21          THE COURT:  Although that certainly can be said as to
22 certain issues of the plaintiffs, as well.
23          MR. HAEFELE:  To a much different degree and in a much
24 different way, your Honor.
25          First off, I think the differing interests that were

1   pointed out to your Honor were with the Havlish (ph) plaintiffs
2   who aren't in this case anymore.  And that's the only instance
3   they've been able to come up with.
4           But what we were looking at was at the inception of
5   this entire litigation, as put in the letters to your Honor, so
6   I'm sure you're familiar with it, but at the inception of the
7   litigation, we wanted them to be on the same page together, and
8   they refused to.  They said they can't do it because of
9   differing interests.  They took to making us their own rules
10  that applied to themselves.  And that's what was put into the
11  CMO that applied to the defendants.
12          So when they were asking for a common interest, we
13  went back and said, What are the interests that they at the
14  inception of this litigation recognized to be common among
15  themselves, and they were very limited.
16          We're willing to go with that.  But really, to say
17  that they are entitled to across-the-board privilege sort of
18  goes beyond what they've been saying all along, unless they can
19  come up with an explanation that's better than what they've
20  given, which is what we think the briefing would do.  At least
21  give them that opportunity.
22          MR. COTTREAU:  Your Honor, Steve Cottreau again.
23          Just to start with, let me just say that we're not
24  proposing in any way, although we would want it to be parallel,
25  that if the plaintiffs are taking the position that we don't

1  have common interests because we're all codefendants in this
2  case and coordinating on strategy and on other procedural
3  matters, then we would take the same position with respect to
4  plaintiffs and the Havlish plaintiffs.  But we're not
5  suggesting they go through that burden, because really it's of
6  little utility in this case.  And similarly, for us to go
7  through, again, what is thousands of emails is of little
8  utility, because putting even aside common interests, which
9  I'll address in a minute, it's all work product.  All of these
10 emails were prepared in anticipation and in relationship to
11 this litigation.  And it's all work product privilege for that
12 reason.
13         But even beyond that, it's also common interest
14 privilege, because all of us share an interest in coordinating
15 on the matters that we've been coordinating on with respect to
16 procedural matters, whether there's any overlap in the parties'
17 defenses, and so forth.  I don't really think it's any less
18 straightforward than the plaintiffs' case is, quite frankly.
19         MR. HAEFELE:  Your Honor, this is Robert Haefele
20 again.
21         May I?
22         THE COURT:  Yes, please.
23         MR. HAEFELE:  This is the problem:  This is the sort
24 of thing that should have been briefed and brought to your
25 Honor in a briefing process where we're unable really to test

1  what the defendants -- what the merits of the defendants'

2  claims are.  And, you know, we were hit with this at the last

3  minute.  They haven't briefed it; they haven't put it before

4  the Court in a fully -- in a manner that articulates why they

5  are entitled to it other than just saying because we are.

6          And we've asked them repeatedly, and they haven't been

7  able to explain it.  I'm a little concerned that what we're

8  getting is an eleventh-hour submission to the Court that

9  doesn't fully brief it, and we're being asked to respond to

10 something that hasn't been fully flushed out yet.

11         THE COURT:  I've written a number of decisions,

12 admittedly several years ago, as to both common interest

13 privilege and work product.

14         And, frankly, when I was reading the letters and the

15 proposed stip, one thing that occurred to me was even if in

16 particular areas plaintiffs were able to show that common

17 interest privilege should not apply, it seemed to me that work

18 product was likely to, and there, if I recall the law

19 correctly, the issue is whether sharing the information amongst

20 counsel increases the likelihood that somebody on the other

21 side will learn it.  And I think even if there was some

22 divisions amongst defense counsel, that would be a difficult

23 showing to make.

24         I'm not going to entertain briefing on this issue, but

25 I will consider it.  I have at least in fax form the proposed

1    stipulation and order with some redlining, but I don't have it
2    in electronic form; so I'd ask that somebody undertake to send
3    it to my chambers in electronic form at the end of this call.
4             The related issue is when the start date should be
5    where the defendants are saying September 11, 2001, and
6    plaintiffs are arguing for a later date; correct, Mr. Haefele?
7             MR. HAEFELE:  Yeah.
8             Your Honor, I think what our position is, to fully
9    flush it out, whatever date they say is the date that their
10   obligation to preserve documents, whatever date attaches to
11   that is the date when that privilege should apply.
12            THE COURT:  And correct me if I'm wrong, does that
13   mean that for different defendants or groups of defendants the
14   date may vary?
15            MR. HAEFELE:  Well, it may, your Honor, unless the
16   date -- unless the Court implements a date that says, All
17   right, your date for protecting your documents attaches on
18   such-and-such a date.
19            But other than that, yes, I would imagine that to the
20   extent that a defendant claims they had no obligation to
21   preserve documents until, you know, they got served with the
22   complaint, then any communications before that, that, it seems
23   to me, should not be privileged either.
24            THE COURT:  And just following through, it seems to me
25   if I had a date that I could discern, the date would likely be

1  September 11th, 2001, rather than the default date in the way
2  you describe.
3          Let me hear the defendants' position.
4          Somebody want to say something on behalf of the
5  defendants as to this?
6          Did we lose defense counsel?
7          MR. COTTREAU:  Your Honor, it's Steve Cottreau.
8          I'll defer to your judgment on this issue.
9          I think this is a matter where the plaintiffs have
10 come in with a proposal on Friday evening, and the reason why
11 you're hearing a lot of silence is we didn't have an
12 opportunity to confer on our side.
13         THE COURT:  There is some attractiveness, frankly, to
14 the notion that one side or the other might be hoist on -- I
15 forget whether it's "on" or "by" its own petard in the sense
16 that if somebody says the duty to preserve arose after
17 September 11th, then at least insofar as work product is
18 claimed, it would be difficult to argue for work product
19 protection prior to that date.  I may well conclude with
20 respect to work product that the plaintiffs' alternative
21 formulation is the correct one.
22         In any event, if counsel arrange to email to my
23 chambers as an attachment the various proposed stipulations,
24 we'll try to get something out this week.
25         Any other issues we ought to take up?  I suppose

1   there's no date for further conference, and perhaps we ought to
2   talk about that.
3           MR. HAEFELE:  Your Honor, I think there are a few
4   smaller discrete issues that were raised regarding the
5   privilege log, as well.
6           THE COURT:  Okay.  Go on, Mr. Haefele.
7           MR. HAEFELE:  I think there were a number of competing
8   proposals that I'm sure your Honor doesn't necessarily need to
9   hear argument on; but if you do, that's fine.
10          But it really deals with the different things that
11  would be required to be included in the log.  And I think the
12  defendants have gone strictly with the local rules, and we had
13  gone with the local rule plus the article that your Honor had
14  recommended to us from the judge in D.C.
15          And then the last item is a bit smaller item, which is
16  whether or not the date that's included in the privilege log is
17  a western date versus a nonwestern date.  For example, the date
18  that was used in Saudi Arabia.
19          THE COURT:  Right.
20          And let me take those in reverse order.
21          The date issue is not one I've encountered previously.
22  And just in terms of organization of a privilege log, if it's a
23  nonwestern Arabic date, I'm not sure how one puts that in that
24  privilege log.  Is it a graphic image?  Is it using an Arabic
25  typeface?  Can you sort by Arabic dates?

1           MR. HAEFELE:  The problem would be, to answer that --
2    it's Robert Haefele again.
3           To answer that, it would probably be in letters that
4    you and I could read; but the title would be a different title,
5    and it would have a different year; it would say like 1410 or
6    something like that.  And it would give a month and a different
7    word that doesn't correlate with our January through December.
8    And the problem would be you would have western dates mixed in
9    with nonwestern dates.
10          I think what I was trying to do, your Honor, what the
11   recommendation was, when a privilege log comes to us or goes to
12   them or it should come to you, it would be in a format that
13   would be put in date order, and it would be easier to do that
14   if they were all in the same language, so to speak.
15          THE COURT:  Before I hear from the defense, there were
16   also several additional fields that you wanted, one of which
17   was Bates number.  And I certainly think Bates number. ought to
18   be provided for hard-copy documents and, to the extent that it
19   can be done, for electronic documents or as an alternative,
20   perhaps hashmarks.
21          As to some of the other fields, I'm trying to put my
22   hands on the plaintiffs' version -- yeah, document length and
23   file size I'm not sure, as a general matter, is relevant.  I
24   could understand at a later stage where plaintiffs, for
25   example, might not wish to challenge a document which appears

1  to be so short as to be meaningless.  And at that stage, it
2  might be helpful; but for all of the documents, I think it's a
3  colossal waste of time.
4          So let me hear from the defendants.
5          MR. MOHAMMEDI:  This is Omar Mohammedi.
6          As far as the date, they are not written in different
7  characters, it's just the same numbers; only difference would
8  be the date, which is the Islamic date, as well as the number.
9  The difference would be like 517 years.  And I don't think the
10 plaintiff would have difficulty to just add that to be able to
11 calculate the date on the western numbers, which is what we use
12 here.
13         THE COURT:  Except to the extent that a document
14 doesn't list a year, in which case potentially it could be
15 misleading.  Although I guess if it doesn't list a year, by
16 default it would drop to a different part of the list.
17         MR. MOHAMMEDI:  Right.
18         So the document basically would be presented as how to
19 they were dated.  If they are dated in Hidri (ph), they would
20 be presented a date in Hidri (ph).  If they are dated in
21 western date, they would be presented western date.
22         THE COURT:  There was something that Mr. Haefele said
23 when he was talking about Saudi Arabia that suggested that
24 different countries might use different nomenclatures; is that
25 also true?

1           MR. HAEFELE:  No, your Honor.  I didn't mean to say
2    that.
3           THE COURT:  Okay.
4           MR. HAEFELE:  I just said that I think the injury date
5    that Mr. Mohammedi is mentioning is one that is most prominent.
6    I guess I was allowing for the fact that there is a possibility
7    that other corners of the world might use different dates.  But
8    I'll be honest and say that what he's in on is the one we were
9    focused on.
10          MR. MOHAMMEDI:  Hidri (ph) date are used by all
11   Islamic countries.
12          THE COURT:  I guess you also have the potential for
13   some of the documents to have the European nomenclature in
14   reverse month and date.
15          MR. MOHAMMEDI:  Correct, your Honor.
16          THE COURT:  Anything else that either side wishes me
17   to consider in deciding what the protocol should be?
18          Is there agreement on email strings?
19          MR. HAEFELE:  I think that the defendants wanted to
20   put all of a chain of an email in together.  And based on the
21   reading of the article that your Honor has suggested to us, it
22   seems that the more logical way to approach that is each email
23   is, in effect, a separate document.  So at some point,
24   according to that, it seems to make more sense that you treat
25   each email as a separate document.

1            So each email -- the last email of a string for each
2     item would be a separate document.  And the rationale for that,
3     your Honor, is when you're looking at, for example, an email
4     that went to six different people, five of them not being a
5     lawyer and one of them being a lawyer, and there being the
6     representation that -- and not a client, there may be -- part
7     of the chain may be privileged and part of the chain may not
8     be.
9            THE COURT:  I know that's a difficult area, and I will
10    consider that.
11           Anything else related to the proposed protocol for
12    privileged documents?
13           When should we hold our next conference?
14           MR. HAEFELE:  Your Honor, we were going to propose
15    that some time toward the end of November or perhaps the
16    beginning of December, with the following two things in mind
17    though:
18           Obviously the end of November we all know is the
19    Thanksgiving time period, and the beginning of December is, at
20    least for right now, the tentative date for the argument in the
21    Second Circuit.
22           THE COURT:  And you don't have a date, you just have a
23    week, is that --
24           MR. HAEFELE:  Well, I think the date -- and Mr. Carter
25    may know better, but I think the date is December 3rd, I

1  believe.
2           MR. CARTER:  Your Honor, this is Sean Carter.  It is,
3  in fact, tentatively set for December 3rd.  We understand that
4  that's sort of an automated date that was generated just by
5  virtue of the timing of the filing of the last reply brief.
6           THE COURT:  Right.
7           MR. CARTER:  And our expectation right now is that
8  it's likely to be pushed simply given the volume of briefing
9  and the size of the appendices.
10          THE COURT:  Right.
11          Let me look at my calendar.
12          How about December 4th at 2 p.m. by telephone?
13          And what I'd suggest is that when you have the actual
14 date and time for oral argument, you may wish to consider
15 calling chambers to see whether I can schedule you later the
16 same day so we can do it in person.
17          Does that work for everyone?
18          MR. HAEFELE:  Works okay for us, I think.  Yes, your
19 Honor.
20          UNIDENTIFIED SPEAKER:  Yes, your Honor.
21          THE COURT:  I think the reporter will take down the
22 chorus of okays.
23          Anything else from anyone?
24          Okay.  Thank you all.
25                         *   *   *