IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001    ) No. 03 MDL 1570 (GBD/FM)
)      ECF Case
_____)

This document relates to:

      ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
         Case No. 02-CV-6977;
      BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
         Case No. 03-CV-5738;
      CANTOR FITZGERALD ASSOCIATES, LP, *et al.* v. AKIDA INVESTMENT CO., LTD., *et al.*,
         Case No. 04-CV-7065;
      CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
         Case No. 04-CV-05970;
      EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
         Case No. 04-CV-07279;
      FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
         Case No. 03-CV-6978; and
      ESTATE OF O'NEILL, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
         Case No. 04-CV-1923.


**Defendant Al Haramain Islamic Foundation, Inc. (USA)'s**
**<u>Opposition to Plaintiffs' Motion for Sanctions</u>**

**Table of Contents**

I.  Introduction . . . . . . . . 1

II.  Preliminary Statement . . . . . . . 2

III.  The Status of AHIF-USA Discovery . . . . . . 5

IV.  Standard of Review . . . . . . . . 10

V.  Summary of Argument . . . . . . . 12

VI.  Due Process Precludes Sanctions against AHIF-USA because Its Inability to Comply with the Discovery Order was Due to Factors Beyond Its Control . 12

VII.  Spoliation Sanctions are not Warranted Since Thousands of Emails and Numerous Computer Files were Recovered . . . . . 16

VIII.  Conclusion . . . . . . . . . 18

## Table of Authorities

**Cases:**

*ACLU v. Department of State*,
    878 F. Supp. 2d 215 (D.D.C. 2012)  .     .     .     .     .     .     2-3

*Agiwal v. Mid Island Mortgage Corp.*,
    555 F.3d 298 (2d Cir. 2009) (*per curiam*)    .     .     .     .     .     15

*Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of the Treasury*,
    686 F.3d 965 (9th Cir. 2012)  .     .     .     .     .     .     3

*Anderson v. Rochester-Genesee Regional Transp. Authority*,
    337 F.3d 201 (2d Cir. 2003)  .     .     .     .     .     .     4

*B.T. Produce Co., Inc. v. Robert A. Johnson Sales, Inc.*,
    354 F. Supp. 2d 284 (S.D.N.Y. 2004)    .     .     .     .     4

*Cacace v. Meyer Marketing (Macau Commercial Offshore) Co.*,
    No. 06 Civ. 2938 (KMK)(GAY), 2011 WL 1833338 (S.D.N.Y. May 12, 2011)  17

*Chin v. Port Authority of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012)  .     .     .     .     .     .     10, 16

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979) .     .     .     .     .     .     10, 14-15

*Daval Steel Products v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991) .     .     .     .     .     .     15

*Genon Mid-Atlantic, LLC v. Stone & Webster, Inc.*,
    282 F.R.D. 346 (S.D.N.Y. 2012),
    *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012)  .     .     .     .     11, 16-17

*In re Sept. 11th Liability Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007)    .     .     .     .     .     12, 17-18

*In re Sept. 11 Litigation*,
    621 F. Supp. 2d 131 (S.D.N.Y. 2009)    .     .     .     .     .     2

*In re Terrorist Attacks on Sept. 11, 2001*,
    740 F. Supp. 2d 494 (S.D.N.Y. 2010)    .     .     .     .     6

*M'Baye v. N.J. Sports Production, Inc.*,
    No. 06 Civ. 3439 (DC), 2008 WL 1849777 (S.D.N.Y. Apr. 21, 2008)    .     13

*Orbit One Communications, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010) . . . . . . . 16-17

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
    306 F.3d 99 (2d Cir. 2002) . . . . . . . 11, 14, 17

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007) . . . . . . . 10, 13

*Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*,
    357 U.S. 197 (1958) . . . . . . . . 10, 13

*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005) . . . . . . . 2

*Zervos v. S.S. Sam Houston*,
    79 F.R.D. 593 (S.D.N.Y. 1978) . . . . . . . 13


**Statutes:**

Speedy Trial Act, 18 U.S.C. § 3161 . . . . . . . 3


**Court Proceedings:**

*United States v. Al Haramain Islamic Foundation, Inc., et al.*,
    No. 6:05-cr-60008 (D. Or.), Gov't Resp. (ECF No. 18) (Aug. 29, 2005) 5

*United States v. Al Haramain Islamic Foundation, Inc., et al.*,
    No. 6:05-cr-60008 (D. Or.), Minutes of Proc. (ECF No. 19) (Sept. 8, 2005) 3

*United States v. Sedaghaty*,
    No. 6:05-cr-60008 (D. Or.), Protective Order (ECF No. 77) (Dec. 18, 2007) 7

*United States v. Sedaghaty*,
    No. 6: 05-cr-60008 (D. Or.), Transcript (Sept. 2, 2010) . . . 7

*United States v. Sedaghaty*,
    No. 6:05-cr-60008 (D. Or.), Transcript (Sept. 27, 2011) . . . 4

I.    **Introduction.**

Defendant Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA") respectfully

submits its opposition to Plaintiffs' Motion for Sanctions (ECF Nos. 2665/2666) (Jan. 15,

2013).[1]  Neither a default judgment nor adverse inference jury instructions are warranted against

AHIF-USA, for the following reasons:

- Plaintiffs' motion is based on inadmissible evidence and mischaracterizes AHIF-USA's position in discovery.

- Due process precludes the imposition of default judgment sanctions against AHIF-USA, since AHIF-USA was unable to comply with the discovery order due to factors entirely beyond its control, *i.e.*, its well-documented inability to obtain documents from Al Haramain (Saudi Arabia).

- AHIF-USA has renewed its efforts to obtain its documents that were seized by the government, which have remained inaccessible to AHIF-USA in the ensuing nine years, due to factors entirely beyond its control, *i.e.*, documents over which another defendant has properly asserted his Fifth Amendment rights and that are or were subject to a protective order precluding disclosure to AHIF-USA.

- There has been no showing of destruction of relevant evidence, since the U.S. government was able to retrieve numerous documents and over 20,000 emails from the computers that were seized in 2004, and AHIF-USA has renewed its efforts to obtain those seized documents.  Plaintiffs have failed to make the showing required under Second Circuit precedent that they were prejudiced from the destruction of relevant evidence.

Since the parties are still engaged in paper discovery, this Court should allow AHIF-USA

the opportunity to obtain the seized documents, and should exercise its discretion by declining to

impose sanctions or adverse inference jury instructions against AHIF-USA.

---

[1]  This opposition is submitted solely on behalf of AHIF-USA.  Undersigned counsel have a license from the Office of Foreign Assets Control (OFAC) to represent AHIF-USA, but do not have a license to represent any other "Al Haramain" entity, including Al Haramain (Saudi Arabia).  Nor do undersigned counsel have any retainer agreement or other representation agreement with Al Haramain (Saudi Arabia).

## II.   **Preliminary Statement.**

This Court should not condone plaintiffs' attempt to frame its motion by relying on allegations that the U.S. government found that AHIF-USA supported terrorism.  As a threshold matter, plaintiffs' allegations are based primarily on inadmissible evidence – the "Staff Monograph" of the 9/11 Commission and "WikiLeaks" documents (*i.e.*, a cable purporting to be from the U.S. Department of State).  *See* Pls. Mot. at 2 & Ex. E-F.  However, plaintiffs' counsel themselves strenuously argued in other 9/11 litigation that the 9/11 Commission's staff reports and monographs were *not* admissible evidence – an argument that U.S. District Judge Hellerstein expressly adopted.  *In re Sept. 11 Litigation*, 621 F. Supp. 2d 131, 152, 155 (S.D.N.Y. 2009) (holding that "the Staff Monographs and the Staff Statements are not admissible.").[2]

It is improper for plaintiffs to rely upon the Staff Monograph (Pls. Mot., Ex. E) in this Court, when they successfully argued to Judge Hellerstein, in related litigation, that the Staff Monograph was inadmissible evidence.  Judicial estoppel bars plaintiffs from arguing to the contrary to this Court.  *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (judicial estoppel applies to "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced") (quoting *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005)).

Further, "WikiLeaks" documents are inadmissible, absent any confirmation from the agency that the documents are, in fact, official agency records.  *ACLU v. Department of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) ("No matter how extensive, the WikiLeaks disclosure is no substitute for an official acknowledgment . . . . there is no evidence that the Executive has

---

[2]  Plaintiffs' 50-page brief on this point, *In re Sept. 11 Litigation*, No. 21-MC-101 (AKH), Pls. Mem. (ECF No. 489) (June 17, 2008), is already in the docket of this case.  *See* Saudi Binladin Group's Reply Br., Mot. to Dismiss, Ex. 3 (ECF No. 2396) (Dec. 20, 2010).

ever officially acknowledged that the specific information at issue in this case was part of the

WikiLeaks disclosure (or any other public disclosure).").  There has been no such showing as to

the document cited by plaintiffs.  *See* Pls. Mot., Ex. F.

All that is left of plaintiffs' factual allegations – when the inadmissible documents are

stripped away – are court decisions arising from AHIF-USA's challenge to its designation, where

the court found that the Office of Foreign Assets Control (OFAC) had sufficient evidence to find

links between AHIF-USA and the activities of other Al Haramain entities.  *See* Pls. Mot. at 2.

Significantly, plaintiffs failed to advise this Court that the "evidence" of these links included

classified evidence to which AHIF-USA had no access, not even an unclassified summary.  *Al

Haramain Islamic Foundation, Inc. v. U.S. Dept. of the Treasury*, 686 F.3d 965, 980-81, 990 (9th

Cir. 2012).  Hence, plaintiffs, in turn, will also be unable to rely upon the court's findings based

upon classified evidence, since plaintiffs do not have access to classified information,[3] so that

those court findings cannot be used for this purpose in this litigation.

Plaintiffs fail to advise this Court that AHIF-USA was *never* charged criminally for

material support of terrorism (or other terrorism-related statutes), and that the only criminal

charges brought were for tax and customs reporting violations.  And, the government quickly

dismissed those low-level charges as to AHIF-USA, after it asserted its rights under the Speedy

Trial Act, 18 U.S.C. § 3161.  *See United States v. Al Haramain Islamic Foundation, Inc., et al.*,

No. 6:05-cr-60008 (D. Or.), Minutes of Proceedings (ECF No. 19) (Sept. 8, 2005).

Plaintiffs further failed to advise this Court that in the tax and conspiracy prosecution of

---

[3] In 2008, plaintiffs provided this Court with classified documents, purportedly about the
National Commercial Bank.  The U.S. Attorney intervened to demand return of the classified
documents that were improperly in the possession of plaintiffs' counsel.  *See* S. Normand letters
to J. Daniels and M.J. Maas (Aug. 27, 2008; Mar. 9, 2009; Apr. 3, 2009; Apr. 29, 2009).  The
plaintiffs returned the documents to the government, and Judge Daniels denied plaintiffs' request
for *in camera* review of those documents.  *See* Order (ECF No. 2812) (July 14, 2009).

Mr. Sedaghaty, a former director of AHIF-USA, based on the same charges dismissed as to AHIF-USA, that U.S. District Judge Hogan expressly found that the government failed to prove any support of terrorism, let alone support of terrorists in Chechnya – the *same* allegation that plaintiffs brought against AHIF-USA in this case.  Instead, Judge Hogan stated that:

> I find there has been a failure to prove the terrorist [sentencing] enhancement . . . by clear and convincing evidence . . . because of the failure to prove a link between the defendant and the money being used for terrorist activities.

*United States v. Sedaghaty*, No. 6:05-cr-60008 (D. Or.), Transcript, at 6-7 (Sept. 27, 2011) (excerpts attached as Exhibit 1).[4]  Thus, as to AHIF-USA, plaintiffs' key allegation – one also recycled in the inadmissible "Staff Monograph" – is directly contradicted by judicial findings.

Since the U.S. government – which has greater prosecutorial resources and has access to classified information that plaintiffs do not have – did not bring any terrorism charges against AHIF-USA, instead dismissing the tax and customs charges against AHIF-USA, and was unable to prove any link with terrorism as to Mr. Sedaghaty, despite having over seven years to investigate him, plaintiffs' allegations as to AHIF-USA must be seen as unsupportable.

In short, since plaintiffs have no admissible evidence linking AHIF-USA to the September 11 attacks, the only way that plaintiffs can get a judgment against AHIF-USA is through a factually and legally unsupported motion for sanctions.

Thus, this Court should give little credence to plaintiffs' allegations in their motion as to AHIF-USA, since their allegations are contrary to judicial findings, and rest on inadmissible evidence and on classified evidence that is inaccessible to plaintiffs, AHIF-USA, or this court.

---

[4]  This Court can take judicial notice of the judicial findings in the Oregon prosecution, which involved the same underlying allegations as to AHIF-USA.  *Anderson v. Rochester-Genesee Regional Transp. Authority*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (court can take judicial notice of other proceedings involving related parties) (collecting cases); *B.T. Produce Co., Inc. v. Robert A. Johnson Sales, Inc.*, 354 F. Supp. 2d 284, 286 n.3 (S.D.N.Y. 2004) (same).

### III.    The Status of AHIF-USA Discovery.

On January 1, 2003, undersigned counsel entered their appearance in the *Burnett* case, while it was in the U.S. District Court for the District of Columbia.  Judge Robertson gave AHIF-USA an extension of time to respond to the complaint, and AHIF-USA timely filed its motion to dismiss on January 24, 2003.  Shortly thereafter, in February 2003, Mr. Sedaghaty moved to the United Arab Emirates to pursue job opportunities after his work as a self-employed arborist in Ashland had dried up, and he closed AHIF-USA's operations later that year.[5]

On October 29, 2003, after AHIF-USA's motion to dismiss was granted in part and denied in part, plaintiffs served discovery requests on AHIF-USA.  Plaintiffs did not serve discovery on Al Haramain (Saudi Arabia), as it did not enter an appearance and file a motion to dismiss until April 2004.  On November 26, 2003, counsel for AHIF-USA, and plaintiffs' counsel (Harry Huge), agreed that AHIF-USA would have until February 13, 2004, to respond to the discovery.  On December 9, 2003, the Judicial Panel on Multidistrict Litigation consolidated all proceedings in this Court.  On February 9, 2004, after Judge Casey scheduled a status conference for March 1, 2004, AHIF-USA requested a further extension of time, on the grounds that the status conference may address discovery issues that would affect AHIF-USA's responses, including production and confidentiality issues.  Judge Casey granted the requested extension of time, to April 26, 2004.  *See* Order (ECF No. 69) (Mar. 22, 2004).

In the meantime, however, and without advance notice to AHIF-USA, on February 18, 2004, the government executed a search warrant and seized all the documents and computers on

---

[5]  In 2005, the U.S. government stated:  "Since the individual defendants left, defendant Al Haramain Islamic Foundation, Inc. has conducted no operations in the United States.  It is a dormant shell . . . [and] the Al Haramain Islamic Foundation in Riyadh, Saudi Arabia, has been disbanded by the Kingdom of Saudi Arabia."  *United States v. Al Haramain Islamic Foundation, Inc., et al.*, No. 6:05-cr-60008 (D. Or.), Gov't Resp., at 4 (ECF No. 18) (Aug. 29, 2005).

AHIF-USA's property in Ashland, Oregon.  This seizure made it impossible for AHIF-USA to produce any of the seized documents or electronic files, since it did not have access to the seized files.  Hence, when AHIF-USA provided its discovery responses to the *Burnett* plaintiffs on April 26, 2004, it could only produce a copy of the relevant documents that Mr. Sedaghaty had provided to counsel in December 2002, before the seizure and before his departure for the Emirates.  At that time, AHIF-USA also objected to producing any documents in the possession of Al Haramain (Saudi Arabia), on the ground that it was a separate defendant, whose motion to dismiss was still pending, and AHIF-USA did not have access to, or control of, that defendant's documents.[6]  Further, AHIF-USA was a very small operation, with several employees and volunteers, while Al Haramain (Saudi Arabia) was one of the largest charities in that country, with hundreds of employees and volunteers and a much larger budget, until it was disbanded.  AHIF-USA believed that plaintiffs were satisfied with its 2004 document production, since plaintiffs did not initiate a motion to compel until November 2009, more than five years later.

In June 2004, at a joint press conference with the U.S. Department of the Treasury, the Saudi government announced that it was closing Al Haramain (Saudi Arabia), as documented in plaintiffs' motion.  *See* Pls. Mot., Ex. T, at 2-3, 19-20.  Thus, in the ensuing years, AHIF-USA was unable to obtain any documents from that dissolved entity, despite repeated attempts.  *See* Declarations of Thomas Nelson (Feb. 13, 2009; Dec. 9, 2009; Jan. 30, 2013) (attached hereto as Exhibit 2); Declarations of Soliman H.S. Al-Buthe (Feb. 15, 2009; Dec. 9, 2009) (attached hereto as Exhibit 3).  On June 19, 2008, OFAC designated Al Haramain (Saudi Arabia), previously

---

[6]  In 2010, Judge Daniels decided the motion to dismiss filed by Al Haramain (Saudi Arabia).  *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 520, 524 (S.D.N.Y. 2010).  Only then did that defendant, already dissolved in 2004, become subject to discovery.  In that same decision, Judge Daniels granted the motions to dismiss filed by Soliman Al-Buthe and Aqeel Al-Aqeel, two former directors of AHIF-USA.  *Id.* at 509-11.  Hence, those two defendants were never subject to discovery in this Court.

dissolved in 2004, together with any remaining undesignated "Al Haramain" entities elsewhere in the world.

Even after the indictment was dismissed as to AHIF-USA in September 2005, the government still would not agree to a protective order that would allow AHIF-USA to have access to its own documents.  Instead, the government insisted on and obtained a protective order under which only counsel for Mr. Sedaghaty – but <u>not</u> counsel for AHIF-USA – could have access to the seized documents.  *See United States v. Sedaghaty*, No. 6:05-cr-60008 (D. Or.), Protective Order (ECF No. 77) (Dec. 18, 2007) (attached hereto as Exhibit 4).

However, it is now obvious that plaintiffs were able to obtain some of AHIF-USA's documents on their own, either from the government, or from Thomas Wilcox, the former accountant for AHIF-USA, who became a government witness in the criminal case.  Plaintiffs' motion specifically references AHIF-USA's financial records prepared by Mr. Wilcox in April 2004 – more than one year after the search and seizure, when AHIF-USA did not have access to its records.  *See* Pls. Mot., Ex. I. (General Ledger, dated April 28, 2004).[7]  When Mr. Wilcox agreed to meet with Mr. Sedaghaty's criminal defense attorneys in May 2009, he insisted on doing so in the presence of the IRS Special Agent who was investigating AHIF-USA on behalf of the government.  *See United States v. Sedaghaty*, No. 6:05-cr-60008 (D. Or.), Transcript, at 58-59 (Sept. 2, 2010) (excerpts attached as Exhibit 5).  Thus, as a hostile witness, Mr. Wilcox and his records were not accessible to AHIF-USA, although he cooperated with the plaintiffs by providing them with the General Ledgers that he prepared in 2004.

Moreover, although the government seized AHIF-USA's computers in February 2004,

---

[7] Plaintiffs' document production shows that they obtained at least one other document directly from Mr. Wilcox, *i.e.*, a General Ledger, prepared in May 2004, with fifty-four pages of AHIF-USA transactions from 2000 to mid-2003.  *See* BUR-PEC-047102-47155 (May 6, 2004) (excerpt attached and incorporated hereto as Exhibit 6).

the government did not review and recover the hard drives until January 2008, four years after the seizure, and nearly five years after Mr. Sedaghaty closed AHIF-USA's office in 2003. *See* Pls. Mot., Ex. N, at 37 (trial testimony of government's computer examiner). Thus, the span of over four years from when the computers were last used by AHIF-USA may explain the degradation or loss that the government's computer examiner found.

However, as plaintiffs admit in their motion, the government was able to recover on the order of 20,000 to 25,000 emails, a sizable number for such a small organization. *See* Pls. Mot. at 12 & Ex. N, at 70-71. Moreover, the government examiner testified at Mr. Sedaghaty's trial that he also obtained or recovered "many" Microsoft Word documents, *see* Pls. Mot., Ex. N, at 72; and "scores of ListServs" (*i.e.*, postings to online list serves), *id.* at 72-73, including many that had nothing to do with the criminal case, such as peace activism in Ashland, urban forestry issues, and *New York Times* postings. *Id.* at 73. The government examiner also admitted that files on a computer are routinely kept in fragments, *i.e.*, in multiple places on the hard drive, so that the existence of fragmented files is not probative of destruction, and that routine overwriting of files does not destroy files, which can still be recovered. *Id.* at 83-85.

Critically, the government examiner admitted that the prosecutor never provided him with a box found in the search that was labeled "backup discs," *id.* at 94, so he never examined AHIF-USA's backup discs to see what files were present. The government offered no explanation for this failure to examine the backup discs, an obvious source for data recovery.

On December 10, 2010, this Court entered a discovery order requiring AHIF-USA to produce both the seized documents – notwithstanding the protective order and Mr. Sedaghaty's Fifth Amendment interests – and the documents in the possession of Al Haramain (Saudi Arabia) – notwithstanding AHIF-USA's demonstrated inability to access those documents, despite

repeated attempts.  This Court's order extended to Al Haramain (Saudi Arabia), although that

entity was not represented by counsel with an OFAC license, and was dissolved by the Saudi

government.  Moreover, Mr. Sedaghaty's criminal defense counsel – the Federal Public

Defender in Oregon – specifically directed him <u>not</u> to agree to the production of any of the

seized documents or other documents obtained from the government while his criminal case was

pending, due to his Fifth Amendment concerns.  *See* S. Wax letter to Judge Aiken, at 2 (Jan. 29,

2013) ("As defense counsel for Mr. Sedaghaty, we continue to believe that Mr. Sedaghaty has a

Fifth Amendment right that needs to be protected.") (attached hereto as Exhibit 7).  As a result

AHIF-USA was unable to produce either the seized documents or the documents in Saudi

Arabia, and hence was unable to comply with this Court's discovery order, due entirely to factors

beyond its control.

In preparing this response, counsel reviewed the voluminous case files, and came across

1,775 pages of copies of documents about other "Al Haramain" entities that Asim Ghafoor,

Esquire, obtained shortly before the Saudi government closed Al Haramain (Saudi Arabia), and

that he provided to our firm sometime in 2005 or later.  AHIF-USA did not then produce those

documents as they were not responsive to the discovery requests for AHIF-USA's documents.

However, AHIF-USA is now producing them to plaintiffs' counsel.

After further discussion with Mr. Sedaghaty's defense counsel, he has now agreed to ask

U.S. District Judge Aiken (to whom the criminal case was recently transferred) as to whether the

seized materials and other government discovery can be provided to AHIF-USA, so that AHIF-

USA can produce the relevant documents to the plaintiffs in this litigation.  *Id.*  Although

Magistrate Judge Coffin informed this Court that the protective order ostensibly did not preclude

disclosure of the documents, despite its plain language, that did not address Mr. Sedaghaty's

Fifth Amendment concerns.  *Id.*  The Federal Public Defender specifically explained that:  "We understand that the protective order in the criminal case continues to preclude our providing discovery to civil counsel.  Therefore, we seek guidance and an order regarding the intent of the protective order entered in this case."  *Id.* at 2-3.  AHIF-USA will promptly notify this Court of Judge Aiken's ruling on Mr. Sedaghaty's request that AHIF-USA be allowed access to the government discovery, including the seized documents and computer files.[8]

### IV.  <u>Standard of Review.</u>

As a threshold matter, due process precludes terminal sanctions under Rule 37 where the party's "failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control."  *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958).  Thus, terminal sanctions "because of petitioner's noncompliance with a pretrial production order" are <u>not</u> authorized "when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner."  *Id.* at 212; *accord Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quoting *Societe Internationale*); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (same).

The Second Circuit recently emphasized that there are no blanket rules for imposing discovery sanctions, since "we have repeatedly held that a case-by-case approach to the failure to produce relevant evidence, at the discretion of the district court, is appropriate."  *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (district court properly declined to impose an adverse inference instruction as a sanction).

---

[8]  Mr. Sedaghaty's appeal was heard by the Ninth Circuit on December 3, 2012 (No. 11-30342).  We anticipate knowing shortly whether the tax conviction will be upheld or reversed.

The district court has the discretion to award sanctions under Rule 37, including an adverse inference instruction, "on the basis that the evidence was not produced in time for use at trial," or that discovery orders were violated, <u>provided</u> <u>that</u> the party seeking sanctions "must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind;' and (3) that the evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

The district court also has the discretion to award sanctions under Rule 37 for destruction or spoliation of evidence, <u>provided</u> <u>that</u> the party seeking sanctions "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

Since "not every failure to preserve electronic evidence constitutes sanctionable spoliation," this court has stated that "a court should never impose spoliation sanctions of any sort unless there has been a showing – inferential or otherwise – that the movant has suffered prejudice." *Genon Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 352-53 (S.D.N.Y. 2012) (Maas, M.J.), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (declining to impose discovery sanctions for spoliation).

Critically, where evidence was not destroyed, but was merely untimely produced, "the negligent party should sustain liability for breaching its discovery obligations where such breach causes injury, but the moving party should not obtain a windfall for uncovering evidence that

would have made little difference in the underlying case." *In re Sept. 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (Hellerstein, J.).

## V.    **Summary of Argument.**

This Court should exercise its discretion and find that plaintiffs have failed to satisfy their heightened burden under Second Circuit and Supreme Court precedent of showing that sanctions are warranted against AHIF-USA.  It is undisputed that AHIF-USA was unable to comply with the discovery order requiring it to produce documents from the headquarters of Al Haramain (Saudi Arabia), due to factors entirely beyond its control, *i.e.*, that the Saudi government had dissolved that entity in 2004.  AHIF-USA was then unable to access any of that entity's documents.  Similarly, AHIF-USA was unable to produce its own seized documents, due to factors entirely beyond its control, *i.e.* the existence of a protective order that specifically precluded AHIF-USA from access to its documents, and the Fifth Amendment privilege of Mr. Sedaghaty, although AHIF-USA has now renewed its efforts to obtain those documents.

Finally, the government was able to recover numerous documents and 20,000 to 25,000 emails from the seized hard drives, so that there has been no actual destruction of documents that might otherwise justify a spoliation sanction, and plaintiffs have failed to satisfy their burden of showing that any relevant evidence was destroyed.

## VI.    **Due Process Precludes Sanctions against AHIF-USA because Its Inability to Comply with the Discovery Order was Due to Factors Beyond Its Control.**

This Court should find that sanctions, whether a default judgment or adverse inference jury instructions, cannot be imposed on AHIF-USA, since due process precludes the imposition of such sanctions where a party's inability to comply with a discovery order was due to factors entirely beyond its control.  The Supreme Court, in *Societe Internationale*, held that due process precluded such sanctions where a party's inability to comply with a discovery order arose from

factors beyond the party's control.  *Societe Internationale*, 357 U.S. at 211-12.  The Supreme

Court concluded that:

> In view of the findings in this case, the position in which petitioner stands in this
> litigation, and the serious constitutional questions we have noted, we think that
> Rule 37 should not be construed to authorize dismissal of this complaint because
> of petitioner's noncompliance with a pretrial production order when it has been
> established that failure to comply has been due to inability, and not to willfulness,
> bad faith, or any fault of petitioner.

*Id.* at 212 (reversible error to impose terminal sanctions under Rule 37).

Hence, it is settled law that a party cannot be sanctioned for failure to produce documents

that it cannot obtain, due to factors beyond its control.  The Second Circuit held that it was

reversible error to impose sanctions on a party for failure to produce documents from a related,

overseas corporate entity, since "a party is not obliged to produce, at the risk of sanctions,

documents that it does not possess or cannot obtain."  *Shcherbakovskiy*, 490 F.3d at 138; *see also*

*Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) ("one 'cannot be required to

produce the impossible'") (quoting *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D.

Del. 1973)).  As Judge Chin held, where one party's efforts to obtain documents from his

overseas agent were unsuccessful, that party could not be compelled to produce those

documents.  *M'Baye v. N.J. Sports Production, Inc.*, No. 06 Civ. 3439 (DC), 2008 WL 1849777,

at *4 (S.D.N.Y. Apr. 21, 2008) ("M'Baye's inability to obtain more documents from Roos

[overseas agent] after these efforts shows that he does not have control over them.").

It is undisputed that AHIF-USA could not obtain documents that the government had

seized in February 2004 and that were subject to the protective order in the criminal case, given

the plain language of that order, and that Mr. Sedaghaty's counsel not only interpreted that order

consistent with its plain language but also directed their client to assert the Fifth Amendment

privilege, thereby barring disclosure of the seized documents to AHIF-USA.

It is similarly undisputed that AHIF-USA could not obtain documents from the headquarters of Al Haramain (Saudi Arabia), despite repeated attempts.  Plaintiffs have offered no evidence to rebut the declarations that AHIF-USA submitted on this point.  *See* Ex. 2-3.[9]

These were factors beyond AHIF-USA's control, and under *Societe Internationale* and *Shcherbakovskiy*, sanctions cannot be imposed.

Plaintiffs' reliance on other decisions in which sanctions were imposed for failing to comply with a discovery order is misplaced, since those decisions all concerned failure to produce (or delays in producing) information that was directly within a party's control, and where there were no factors outside the party's control that precluded compliance with the discovery order.  Hence, in *Residential Funding*, sanctions were warranted because the plaintiff failed to produce its own emails, which it had access to, in time for trial.  *Residential Funding*, 306 F.3d at 111-12.  Moreover, the emails in *Residential Funding* were not produced until the trial date approached, *id.* at 112, in contrast to this case, in which the parties are still in the paper discovery stage, with no trial date set.  *Id.* at 112 ("discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court").  Plaintiffs' reliance on *Cine Forty-Second* is misplaced, since that involved the plaintiff's repeated refusal to provide sufficient interrogatory responses as

---

[9]  Plaintiffs' motion attempts to rely upon a statement by Thomas Nelson, AHIF-USA's sole officer and director, to assert that he was able to examine Al Haramain documents while in Saudi Arabia.  *See* Pls. Mot. at 14 & Ex. Q.  In fact, Mr. Nelson only examined a few travel vouchers that were in the possession of Soliman Al-Buthe; he did *not* examine documents that were in the office of Al Haramain (Saudi Arabia), and he has consistently been unable to, "despite repeated attempts since 2004."  *See* Nelson Dec., at ¶¶ 2-4 (Jan. 30, 2013) (Ex. 2 hereto).  Further, he did not take the travel vouchers out of the country at that time, and only examined them to ascertain their date, in order to pursue a potential lead.  *Id.*  Thus, Mr. Nelson's statement does not support plaintiffs' assertion regarding access to the documents in the Saudi headquarters of Al Haramain (Saudi Arabia)

to its economic damages in an antitrust action – information that was entirely within that plaintiff's control.  *Cine Forty-Second*, 602 F.2d at 1064-65.

Plaintiffs' reliance on *Daval Steel* is similarly misplaced, since in that case a corporate party failed to produce its own witness for a deposition and failed to produce its own documents in advance of that deposition, since there the party had complete access to and control over its documents and witness.  *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991).  *Agiwal* involved a *pro se* plaintiff who repeatedly refused to show up for his deposition or produce documents that he himself had.  *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) (*per curiam*).  Both *Daval Steel* and *Agiwal* stand in contrast to this case, where AHIF-USA did not have access to its own documents since February 2004, or to the documents in the Saudi office of Al Haramain (Saudi Arabia).

Finally, AHIF-USA has renewed its request that the U.S. District Court for the District of Oregon allow the seized documents and other government discovery to be released to it, so that the relevant documents can be produced to the plaintiffs in this litigation.  AHIF-USA was only able to make this request after Mr. Sedaghaty's criminal defense counsel agreed this month to request clarification from the U.S. District Court.  If Judge Aiken agrees to this release, then AHIF-USA will promptly notify this Court, and will commence review and production of the relevant and responsive documents.[10]

---

[10]  To the extent that the 25,000 emails and the other recovered documents were not printed out by the government or otherwise available in an accessible format, then the parties will discuss cost-shifting, and the use of a neutral outside vendor to review the seized hard drives to recover those emails and computer files.

**VII.   Spoliation Sanctions are not Warranted Since Thousands of Emails and Numerous Computer Files were Recovered.**

This Court should find that spoliation sanctions are not warranted, since numerous allegedly destroyed documents and thousands of emails were recovered by the government's computer examiner.  As a threshold matter, the Second Circuit has held that failure to impose a litigation hold – which plaintiffs claim was necessary – does not constitute gross negligence, and is only "one factor" to be considered.  *Chin*, 685 F.3d at 162.  In *Chin*, the Second Circuit held that an adverse inference jury instruction based on actual spoliation was not warranted, since the plaintiffs did not show that they could not prove their claims without the missing information. *Id.* at 162-63.  Hence, "a court should never impose spoliation sanctions of any sort unless there has been a showing – inferential or otherwise – that the movant has suffered prejudice." *Genon Mid-Atlantic,* 282 F.R.D. at 352-53 (denying motion for spoliation sanctions).

Here, plaintiffs have only speculated in an inchoate manner that the seized documents, including the thousands of recovered emails and other electronic files that the government was able to recover, are somehow relevant to their allegations as to AHIF-USA.  Yet, plaintiffs cannot overcome the fact that the government – with its superior resources and access to classified evidence – was unable to prove any link to terrorism with the <u>same</u> documents that the plaintiffs are now complaining were not produced to them.[11]

Moreover, spoliation sanctions are not warranted where the parties ultimately were able to recover the evidence.  Magistrate Judge Francis recently held that spoliation sanctions were not warranted where the allegedly destroyed evidence "was ultimately recovered and provided to

---

[11]   As noted earlier, plaintiffs cannot point to the classified evidence relied upon in the OFAC designation challenge, since this Court, the jury, AHIF-USA, and plaintiffs have no access to any of that classified evidence.  The government chose not to declassify that evidence for the criminal trial, which would have subjected that evidence to cross-examination.

counsel," so while the party "was careless with this information," the other party ultimately obtained access to it. *Orbit One Communications, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 443 (S.D.N.Y. 2010) (denying motion for sanctions based on alleged spoliation).

Plaintiffs, without even knowing what was in the thousands of recovered emails and documents, and without determining whether those documents are relevant, instead choose to speculate that any remaining unrecovered documents must be relevant to their claims. Yet, inchoate speculations do not substitute for an actual showing that a specific destroyed document was relevant and necessary to support their claims. Hence, given the numerous recovered documents, spoliation sanctions are premature absent a showing that any specific documents that may still be unrecoverable are relevant. The Second Circuit required that the party seeking sanctions "must establish . . . that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding*, 306 F.3d at 107; *accord Genon Mid-Atlantic*, 282 F.R.D. at 357 ("Even if a party's culpability is established, for sanctions to be imposed, the Court must find that relevant evidence 'actually existed and was destroyed.'") (quoting *Orbit One*, 271 F.R.D. at 441). Magistrate Judge Yanthis similarly held that since "plaintiffs have not identified any relevant documents that were lost, destroyed or significantly altered," spoliation sanctions were not warranted. *Cacace v. Meyer Marketing (Macau Commercial Offshore) Co.*, No. 06 Civ. 2938 (KMK)(GAY), 2011 WL 1833338, at *5 (S.D.N.Y. May 12, 2011).

This Court should find that plaintiffs have failed to satisfy their burden as required under *Residential Funding*, since plaintiffs only speculate as to what may no longer be recoverable, as opposed to what is in the seized documents that AHIF-USA is now able to attempt to obtain. Plaintiffs' reliance on Judge Hellerstein's decision in *In re Sept. 11th Liability Insurance*

*Coverage Cases*, is misplaced since that involved the destruction of a specific, identified document that went to the core of the insurance coverage claims.  *See* 243 F.R.D. at 130.

Thus, since AHIF-USA is now able to renew its request for the seized documents, and believes that in light of the changed circumstances it will be able to obtain those documents for review and production of the relevant, responsive documents, it is premature to impose any spoliation sanctions absent the required showing by plaintiffs that the information in any of the unrecovered documents was both relevant to their claims and could not be obtained elsewhere.

## VIII.  <u>CONCLUSION.</u>

For the foregoing reasons, this Court should deny plaintiffs' motion, which is based upon inadmissible evidence, and  should decline to impose a default judgment or adverse inference jury instructions against AHIF-USA.  Due process precludes the imposition of terminal sanctions on AHIF-USA, since its inability to comply with the discovery order arose from factors beyond its control, and AHIF-USA has renewed its efforts to obtain the seized documents.  Plaintiffs have failed to satisfy their burden of showing that any relevant evidence was destroyed.

This Court should not accede to the plaintiffs' request for draconian sanctions, when they have failed to point to a scintilla of evidence that AHIF-USA was involved in the 9/11 attacks, and the admissible evidence that has been produced by the government and AHIF-USA shows conclusively that AHIF-USA was not involved.

Respectfully submitted,

/s/ Lynne Bernabei
_____
Lynne Bernabei          D.C. Bar No. 938936
Alan R. Kabat            D.C. Bar No. 464258
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
*Attorneys for Al Haramain Islamic Foundation, Inc. (USA)*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2013, I caused the foregoing Opposition to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (ECF No. 247) (June 16, 2004), and this Court's Order (ECF No. 2652) (Jan. 10, 2013).

/s/ Alan R. Kabat

_____

Alan R. Kabat

```
╔══════════════════════════════╗
║ USDC SDNY                     ║
║ DOCUMENT                      ║
║ ELECTRONICALLY FILED          ║
║ DOC #: _____        ║
║ DATE FILED: 1 /10 /13         ║
╚══════════════════════════════╝
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In Re:                                     :

TERRORIST ATTACKS ON                                    **ORDER** (proposed)
SEPTEMBER 11, 2001                          :          03 MDL 1570 (GBD) (FM)

-------------------------------------------------------x

FRANK MAAS, United States Magistrate Judge.

    It is hereby ORDERED that:

1.    At the request of the counsel for the Plaintiffs, the Court directs that the following items be separately docketed as of record by the Clerk of the Court with the Court's ECF system: (1) the Letter Memorandum of the Plaintiffs, dated January 9, 2013, seeking imposition of sanctions against defendant Al Haramain, and (2) the attorney declaration of Robert T. Haefele, with accompanying Exhibits A-Y, in support of the Plaintiffs' request, and it is FURTHER ORDERED that

2.    Defendant Al Haramain and the plaintiffs may file their respective opposition and reply papers concerning the above-referenced motion via the Court's ECF system, and a copy of this order shall accompany those filings.

SO ORDERED.

Dated: New York, New York
      January _10_, 2013

                                 FRANK MAAS
                   United States Magistrate Judge

Copies to:

Honorable George B. Daniels
United States District Judge

All Counsel via ECF