# Exhibit C

LAW OFFICES

# BERNABEI & KATZ, PLLC

1773 T STREET, N.W.
WASHINGTON, D.C. 20009-7139

LYNNE BERNABEI
DEBRA S. KATZ °
LISA J. BANKS
ARI M. WILKENFELD +
ALAN R. KABAT +
GENA E. WILTSEK °
AVI L. KUMIN *
RASHIDA A. ADAMS

(202) 745-1942
TELECOPIER: (202) 745-2627
E-MAIL: BERKATZLAW@AOL.COM
WEBSITE: WWW.BERNABEIANDKATZ.COM

OF COUNSEL:

DAVID J. MARSHALL
ELAINE D. KAPLAN

+ ADMITTED IN MD ALSO
° ADMITTED IN NY ALSO
* ADMITTED IN CA ALSO

By Hand Delivery
August 4, 2004

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
Licensing Division
1500 Pennsylvania Avenue, N.W., Annex
Washington, D.C. 20220

      Re:   Al Haramain Islamic Foundation, Inc., License No. SDGT # 343
             (Designation Pending)

Dear Mr. Newcomb:

     I am writing in response to OFAC's supplementation of the Administrative Record that is being considered as part of the pending designation of the Al Haramain Islamic Foundation, Inc. (U.S.A.) ("AHIF"). This is a preliminary response, given the time constraints in dealing with numerous documents from foreign sources, and the need to consult with our clients, translators, and experts. We anticipate providing additional information by early next week.

**I.**    **AHIF's Response To OFAC's Supplemental Administrative Record.**

**A.**    **OFAC Should Not Consider Documents That Do Not Refer To AHIF.**

     As a threshold issue, AHIF restates its objection to OFAC's reliance on newspaper articles and related news media items as constituting inadmissible hearsay. See Letter from L. Bernabei to R. Newcomb (May 14, 2004), at 3-4. Nonetheless, AHIF respectfully submits its response to these articles – which comprise nearly the entirety of the supplementation to the Administrative Record. It is obvious that the vast majority of these articles refer solely to the alleged activities of the al-Haramain Islamic Foundation (Saudi Arabia) ("al-Haramain (SA)"), and not to the activities of AHIF. As you may know, AHIF is separately incorporated in Oregon, and al-Haramain (SA) has had little involvement with, let alone control of, AHIF.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
August 4, 2004
Page 2

Even more important for OFAC's purposes is that AHIF had no control over al-Haramain (SA), or any ability to control the Saudi organization's relationships with other affiliates of al-Haramain (SA), including those designated as terrorist entities. Moreover, there is no question but that AHIF had no relationship with those offices or affiliates of al-Haramain (SA) that the U.S. government designated as terrorist entities. Critically, shortly after the time that Treasury designated several overseas affiliates of al-Haramain (SA), Perouz Sedaghaty, the director of AHIF went to Saudi Arabia to obtain the resignations of the two outside board members of AHIF – Aqeel al-Aqeel and Mansour al-Kadi – who were also officers of al-Haramain (SA). Mr. Sedaghaty requested these resignations on the grounds that the allegations about these affiliates had the potential for harming the ability of AHIF to conduct its charitable operations in this country, and because Messrs. Aqeel and al-Kadi had had little involvement with AHIF. See M. Al-Kadi, Letter of Resignation (effective Feb. 22, 2003); A. Al-Aqeel, Letter of Resignation (effective Mar. 27, 2003) (attached and incorporated herein as Exhibits 1-2). That Mr. Sedaghaty was able to obtain their resignations so readily indicates that AHIF was not controlled by al-Haramain (SA).

Moreover, under Supreme Court precedent, that AHIF and al-Haramain (SA) formerly had partially overlapping directorates is not a basis for imposing liability on one entity for the acts of the other entity:

> In imposing direct liability on these grounds, the District Court failed to recognize that **"it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."**

> This recognition that the corporate personalities remain distinct has its corollary in the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." Since courts generally presume "that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," **it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.**

United States v. Bestfoods, 524 U.S. 51, 69-70 (1998) (internal citations omitted) (emphasis added). In Bestfoods, the two entities were a parent corporation and its wholly-owned subsidiary, an even tighter relationship than that between AHIF and al-Haramain (SA), which does not have that degree of ownership or control.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
August 4, 2004
Page 3

The separate corporate identities of AHIF and al-Haramain (SA) are discussed at greater length in the briefs that AHIF filed in 2003 with the U.S. District Court for the District of Columbia in the civil case, Burnett v. Al Baraka Inv. & Devel. Corp., No. 02-CV-1616 (JR) (D.D.C.). See Defendant Al Haramain Islamic Foundation, Inc.'s Motion to Dismiss the Third Amended Complaint, at 2-5 & Ex. 1-3 (Feb. 7, 2003); Defendant Al Haramain Islamic Foundation, Inc.'s Reply Brief in Support of Its Motion to Dismiss the Third Amended Complaint, at 5, 7-8, 10 (Apr. 25, 2003); Defendant Al Haramain Islamic Foundation, Inc.'s Notice of Status, at 1-2 (June 23, 2003) (attached and incorporated hereto as Exhibits 3-5).

We expect that we will have an expert submit an affidavit concerning the veracity and reliability of the press articles and intelligence reports submitted as part of the supplemental Administrative Record within the next ten days.

**B.     The Few Documents In OFAC's Supplemental Administrative Record That Refer To AHIF Do Not Support Any Designation of AHIF.**

The relatively few articles in OFAC's supplemental administrative record that actually do refer to AHIF, see OFAC Administrative Record, Exhibits 39A to 42A, primarily relate to the recent prosecution, United States v. Sami Al-Hussayen, No. 03-CR-0048 (D. Idaho). OFAC's reliance on these articles is fundamentally misplaced, for several reasons.[1]

First, the operative indictment in that prosecution makes no allegations regarding AHIF. See Second Superseding Indictment (Mar. 4, 2004) (attached hereto as Exhibit 6). All citations in that indictment to the alleged activities of "Al-Haramain," or to Mr. Al-Hussayen's alleged involvement with "Al-Haramain," are solely to al-Haramain (SA). The AHIF office in Ashland, Oregon is mentioned in passing, but nothing is alleged about AHIF specifically. Id. at ¶¶ 4.b, 9, 11, 15.

Second, any reference to "Al-Haramain" that may have been brought out at trial obviously had no effect, for the jury acquitted Mr. Al-Hussayen of the material support counts and two of the immigration counts, and deadlocked on the remaining immigration charges, upon which the government dismissed the latter charges. See Jury Verdict (June 10, 2004); Order of Dismissal (July 2, 2004) (attached hereto as Exhibits 7-8). This verdict and ensuing dismissal clearly demonstrates that any testimony in that trial about "Al-Haramain" failed to prove anything about Mr. Al-Hussayen's alleged terrorist activities.

---

[1] One other article, OFAC Exhibit 10A, at 3 ¶ 4, mentions AHIF and gives its address, but makes no allegations about AHIF, as opposed to al-Haramain (SA).

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
August 4, 2004
Page 4

Third, the articles themselves fail to support any allegation that AHIF itself engaged in any illegal conduct. The first article cites the designation of the Somalia and Bosnia affiliates of al-Haramain (SA), but does not identify any acts by AHIF. See OFAC Ex. 39A. The second article only mentions a link from another charity's website to the website of al-Haramain (SA), and makes no mention of AHIF. See OFAC Ex. 40A. Moreover, the second article is actually an opinion piece written by two investigators for the plaintiffs in the Burnett civil lawsuit brought against AHIF and numerous other individuals and entities, and can hardly be considered an unbiased, or reliable, source. Id. at 3. The third article makes the conclusory statement, without any support, that al-Haramain (SA) "operates U.S. branch in Ashland, Ore., under investigation for money laundering." See OFAC Ex. 41A, at 1. As discussed supra, AHIF operated independently from al-Haramain (SA). The fourth article describes generally the allegations raised in the Burnett civil lawsuit, and that AHIF was placed on an FBI "watch list," but does not state anything new about AHIF's operations or activities. See OFAC Ex. 42A. The fifth and sixth articles mention al-Haramain (SA), but not AHIF. See OFAC Ex. 43A, at 8, 10-11; OFAC Ex. 44A, at 1.

AHIF respectfully submits that OFAC's reliance on several one-sided articles published before the Al-Hussayen trial commenced, but its failure to include the operative indictment, or to take into consideration the jury verdict and dismissal, has impermissibly resulted in a biased administrative record. An agency "may not skew the record in its favor by excluding pertinent but unfavorable information." Fund for Animals v. Williams, 245 F. Supp. 2d 49, 55 (D.D.C. 2003). The U.S. Court of Appeals for the D.C. Circuit has recognized that an agency cannot "exclude[] from the record evidence adverse to its position," which warrants supplementing the administrative record with such documents. Kent County, Delaware Levy Court v. EPA, 963 F.2d 391, 396 (D.C. Cir. 1992); see also Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (supplementation of the administrative record proper when "the agency failed to consider factors which are relevant to its final decision"). Where, as here, additional documents about the Al-Hussayen trial were "publicly available" at the time OFAC compiled its Administrative Record, and "were official records from court proceedings, they should have been considered by the agency." Carlton v. Babbitt, 26 F. Supp. 2d 102, 107 (D.D.C. 1998) (ordering agency to include relevant public documents and court records that undermine the agency's administrative record); see also Public Citizen v. Heckler, 653 F. Supp. 1229, 1237 (D.D.C. 1986) (documents improperly excluded from administrative record "are indicative of a lack of rationality on the part of HHS in the decisionmaking process" and "indicates that the Secretary's stated reason may very well be pretextual"). Thus, OFAC is under an obligation to supplement the administrative record with the aforementioned "pertinent but unfavorable information," readily available to OFAC at the time, which undercuts any basis for designating AHIF based on allegations raised in connection with the unsuccessful prosecution of Sami Al-Hussayen.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
August 4, 2004
Page 5

## II.    Additional Information Relevant to AHIF.

AHIF has previously provided OFAC with documents relating to the Chechnya project, which showed that this project was expressly approved by the governments of Saudi Arabia and Russia. See Letter from L. Bernabei to R. Newcomb (May 14, 2004), at 5-7 & Ex. 1-9; Letter from L. Bernabei to R. Newcomb (May 27, 2004), at 1 & Ex. 1-3 (translations of three Arabic documents). AHIF hereby provides additional information relating to that project. AHIF has obtained unofficial translations of the two Russian-language documents, by a Russian translator, and is in the process of obtaining official translations. In the meantime, we can inform you that a translator has confirmed, regarding the bi-lingual Russian / Arabic document from December 1999, that her translation of the Russian portion of the document is consistent with the English translation of the Arabic portion of the document, which we previously provided you. See "Memorandum of Accord" signed by the Russian Ministry for Civil Defense Affairs and the Saudi Joint Relief Committee for Kosovo and Chechnya (Dec. 1999) (attached as Exhibit 5 to Letter from L. Bernabei to R. Newcomb (May 14, 2004), at 6).

This translator has also informed us that a second Russian document (attached hereto as Exhibit 9) was issued by the State Registration Office of the Russian Federation's Ministry of Justice. It certifies that the Saudi humanitarian society "Saudi Red Crescent" (= Saudi Arabian Red Crescent Society) has been registered in the Consolidated State Register of Foreign Companies Accredited to Operate Within the Territories of the Russian Federation. It is dated October 30, 2000, and signed by the President of the State Registration Office, V.P. Seryogin.

Thus, this document confirms that the Saudi charitable operations in Chechnya, including the distribution of monies which originated with AHIF, were spent in legitimate charitable activities, approved by the Russian government in Chechnya. This document further corroborates the documents discussed in AHIF's May 14, 2004 letter to OFAC. This document is also contrary to the allegations in the Russian newspaper articles (OFAC Administrative Record, Exhibits 1A-26A, *passim*), that the acts of al-Haramain (SA) in Chechnya were somehow unauthorized.

Thank you for your consideration of the foregoing response to OFAC's supplementation of the Administrative Record. We will attempt to provide further information by early next week, and request that it be considered by OFAC.

Mr. R. Richard Newcomb
Office of Foreign Assets Control
U.S. Department of Treasury
August 4, 2004
Page 6

Sincerely,

Lynne Bernabei

Enc.

cc: Cari Stinebower, Esquire
    Mary M. Rowland, Esquire