**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**


**Attorneys for Defendant**


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **No. 6:05-cr-60008-AA** |
| **Plaintiff,** | |
| **v.** | **MOTION FOR ORDER TO** |
| | **MODIFY PROTECTIVE ORDER** |
| **PIROUZ SEDAGHATY,** | **OF DECEMBER 18, 2007** |
| **Defendant.** | |

Defendant, Pirouz Sedaghaty, by and through his attorneys, Lawrence

Matasar and Federal Public Defender Steven T. Wax, hereby moves this Court for

modification of the Protective Order entered on December 18, 2007.  This motion

**Page 1   MOTION FOR ORDER TO MODIFY PROTECTIVE ORDER OF DECEMBER 18, 2007**

is necessary to clarify the limits on Mr. Sedaghaty's criminal defense attorneys' provision of material to civil attorneys representing AHIF-Ashland in civil proceeding United States District Court Southern District of New York *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (*see* attached correspondence and order).

The government agrees with the requested modification.

RESPECTFULLY SUBMITTED this 14th day of February, 2013.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence H. Matasar
Lawrence H. Matasar



Chambers of
**THOMAS M. COFFIN**
United States Magistrate Judge

**United States District Court**
DISTRICT OF OREGON
Wayne L. Morse Courthouse
405 East Eighth Avenue, Ste. 5300
Eugene, Oregon 97401

Phone: 541-431-4130

February 5, 2013

Steven T. Wax
Federal Public Defender for the District of Oregon
101 SW Main Street, Suite 1700
Portland, OR 97204

      Re:    *USA v. Sedaghaty*
            6:05-cr-60008-AA

Dear Steve:

    Chief Judge Aiken has forwarded your letter to my attention and asked that I respond.

    It is our position that the order of the District Court in the Southern District of New York regarding the discovery issues in the Al Haramain USA case you reference is controlling and that the court in the District of Oregon has no authority or jurisdiction to review or in any way modify such order.

Sincerely,

Thomas M. Coffin
United States Magistrate Judge

cc:    Hon. Ann Aiken
       Lawrence Matasar
       AUSA Kelly Zusman
       AUSA Charles Gorder
       AUSA Christopher Cardani
       AUSA Frank Papagni
       Alan Kabat
       Lynne Bernabei

# BERNABEI & WACHTEL, PLLC

### ATTORNEYS AT LAW

**1775 T STREET, N.W.**
WASHINGTON, D.C. 20009

**202.745.1942**
FAX: 202.745.2627
WWW.BERNABEIPLLC.COM

LYNNE BERNABEI                                                      PETER M. WHELAN
DAVID WACHTEL                                                       ELIZA BRINK DERMODY
ALAN R. KABAT                                                       LAUREN R. S. MENDONSA ▲
                                                                   NADIA E. SAID ■

                                                                   ▲ ADMITTED IN VA ONLY
                                                                   ■ ADMITTED IN IL ONLY

By Electronic Mail
January 28, 2013

Steve Wax, Esquire
William Teesdale, Esquire
Michelle Sweet, Esquire
Federal Public Defenders Office
101 S.W. Main Street
Suite 1700
Portland, OR 97204-3225

       Re:    Al Haramain Islamic Foundation, Inc. (USA).

Dear Counsel:

       I am writing to you in your capacity as defense counsel for Perouz Sedaghaty in *United
States v. Perouz Sedaghaty*, No. 6:05-cr-60008 (D. Oregon), a tax and customs prosecution
initiated on February 17, 2005, and currently on appeal. The Al Haramain Islamic Foundation,
Inc. (USA) was also named as a co-defendant in that proceeding, but was voluntarily dismissed
by the government on September 8, 2005.

       On or around February 18, 2004, the U.S. government used a search warrant to seize
documents and computer hard drives at the corporate office of the Al Haramain Islamic
Foundation, Inc. (USA), located in Ashland, Oregon. It is my understanding that several years
later, after your office entered an appearance on behalf of Mr. Sedaghaty, the government
provided your office with access to those materials for purposes of defending Mr. Sedaghaty.
According to the court's docket, U.S. Magistrate Judge Coffin entered a protective order that
precluded your office from sharing those materials, or other discovery subsequently provided by
the government, with anyone not in the case, which included our office. U.S. District Judge
Hogan maintained that protective order during the pendency of the litigation. As a result, the Al
Haramain Islamic Foundation, Inc. (USA) was unable to access these documents during the
course of this trial or subsequently.

Steve Wax, Esquire
William Teesdale, Esquire
Michelle Sweet, Esquire
Federal Public Defenders Office
January 28, 2013
Page 2 of 3

As you know, our firm represents the Al Haramain Islamic Foundation, Inc. (USA) in civil litigation pending in the U.S. District Court for the Southern District of New York. In that litigation, the plaintiffs have sought, through discovery, the documents that the U.S. government seized in February of 2004 and other records. On November 22, 2011, U.S. Magistrate Judge Maas (S.D.N.Y.) entered an order regarding plaintiffs' request for documents. *See* Order, No. 03-MD-1570, at 12-13 (ECF No. 2491) (Nov. 22, 2011) (enclosed). Magistrate Judge Maas recognized that a "literal reading" of the Order precluded any dissemination of those documents, but concluded that the "intent" of the Order did not require that interpretation. *Id.* In that Order, Magistrate Judge Maas stated that he had conferred with Magistrate Judge Coffin, who advised him that the protective order in the *Sedaghaty* prosecution did not apply (or no longer applied) to documents that the U.S. government had obtained through the search warrant. *Id.* at 13 & n.3.

Since the Al Haramain Islamic Foundation, Inc. (USA) does not have custody or control of the documents that were seized in February 2004, I am requesting that your office obtain confirmation from both the U.S. District Court and the government that the following categories of documents may be made available to our law firm:

1.  Documents provided by Lawrence Matasar, Esquire, to the U.S. government;

2.  The "3800 single pages of itemized discovery, including investigative reports" and the "43,000 pages of bank and Al Haramain corporate records" as identified by the government in a post-trial filing (ECF No. 536) (Feb. 18, 2011).

3.  The government's exhibits and the defendant's exhibits from the criminal case;

4.  The video prepared by your office as a potential trial exhibit, which was made part of the public record through the sentencing litigation;

5.  The CD-ROMs and videos in the possession of the government, which came from the search of the office of the Al Haramain Islamic Foundation, Inc. (USA); and

6.  Access to the seized hard drives that were examined by the government and determined to have files or emails relevant to the operations and activities of the Al Haramain Islamic Foundation.

With respect to the CD-ROMs and the hard drives, we will review them to identify the relevant and responsive, non-privileged documents for production in the New York case that have not already been produced, or are not already encompassed by the first, second and third categories listed herein.

Steve Wax, Esquire
William Teesdale, Esquire
Michelle Sweet, Esquire
Federal Public Defenders Office
January 28, 2013
Page 3 of 3


   To the extent that some of the trial exhibits and potential exhibits are already in the public record, either through post-trial filings, or filings with the U.S. Court of Appeals for the Ninth Circuit, we also request access to those trial exhibits.

   Also, any confidential documents can be designated as confidential and subject to the discovery protective order that governs the civil case. *See In re Terrorist Attacks*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006).

   Thank you for your assistance with this request.

        Sincerely,

        */s/ Alan R. Kabat*

        Alan R. Kabat


Enc.

Case 1:03-md-01570-GBD-FM   Document 2491   Filed 11/22/11   Page 1 of 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In Re:

        TERRORIST ATTACKS ON
        SEPTEMBER 11, 2001

-----------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/22/11
```

**MEMORANDUM**
**DECISION AND ORDER**

03 MDL 1570 (GBD) (FM)

This Document Relates to
Ashton v. al Qaeda Islamic Army,
02 Civ. 6977 (GBD) (FM),
Burnett v. al Baraka Invest. & Dev. Corp.,
03 Civ. 5738 (GBD) (FM),
Continental Casualty Co. v. al Qaeda Islamic Army,
04 Civ. 5970 (GBD) (FM),
Federal Insurance Co. v. al Qaeda,
03 Civ. 6978 (GBD) (FM)
Euro Brokers, Inc. v. al Baraka Invest. & Dev. Corp.,
04 Civ. 7279 (GBD) (FM), and
World Trade Center Prop. LLC v. al Baraka Invest. & Dev. Corp.,
04 Civ. 7280 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

        Defendant Perouz Sedaghaty ("Sedaghaty") seeks to stay discovery in this

multi-district civil litigation pending his appeal of his recent criminal conviction in the

District of Oregon. The plaintiffs in the above cases (collectively, "Plaintiffs") oppose

Sedaghaty's motion and seek to compel him to respond to document requests they served

in December 2010. Sedaghaty contends that the production of those documents would

infringe upon his Fifth Amendment privilege against self-incrimination. Sedaghaty

further contends that he is barred from disclosing certain of the requested documents

because of a protective order entered in his criminal case.

For the reasons set forth below, Sedaghaty's motion to stay discovery is denied, and the Plaintiffs' application to compel Sedaghaty to comply with their First Set of Requests for Production of Documents is granted.

I.      Factual and Procedural History

In 2005, a grand jury in the District of Oregon returned an indictment against Sedaghaty, one other individual, and the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF-USA"). In the indictment, Sedaghaty was charged, in two counts, with conspiring to defraud the United States, in violation of Title 18, United States Code, Section 371, and having aided and abetted the filing of a false tax return, in violation of Title 26, United States Code, Section 7206(1), and Title 18, United States Code, Section 2. See United States v. Al Haramain Islamic Found., No. CR 05-60008-HO (D. Or.) (DO ECF No. 1 ("Indictment")).[1] Sedaghaty was alleged to be a founder of AHIF-USA and one of its corporate officers. (Id.).

The indictment further alleged that Sedaghaty had participated in a scheme to transport nearly $200,000 in traveler's checks from the United States to Saudi Arabia without filing the required Currency Transaction Reports ("CTRs"). The ultimate goal of the scheme allegedly was to transfer this money to mujahedeen (warriors) in Chechnya who were resisting a Russian occupying force. According to the indictment, in furtherance of that goal, Sedaghaty mischaracterized an AHIF-USA check that had been

---

[1]      Citations to "DO ECF" refer to the electronic docket in the Oregon criminal case. Citations to "SDNY ECF" refer to the electronic docket of the multidistrict case pending in this Court.

used to purchase the traveler's checks, falsely claiming that it had been used by AHIF-USA to purchase a building in Springfield, Missouri. This, in turn, caused AHIF-USA's accountant to understate its charitable contributions and overstate its basis in its real estate holdings on its tax-exempt organization federal tax return for calendar year 2000. (Id.).

At trial, the government introduced against Sedaghaty certain evidence that had been seized in 2004 from the offices of AHIF-USA pursuant to a search warrant. (See SDNY ECF No. 2448 (Tr. of conf. on July 13, 2011) at 14). It appears that the government returned other materials seized from AHIF-USA to Sedaghaty prior to trial. Before that material was returned, Magistrate Judge Thomas M. Coffin of the District of Oregon entered a protective order restricting Sedaghaty's use of "discovery material" furnished to him by the government. That order, dated December 18, 2007, states in relevant part:

> [I]t is hereby ORDERED that . . . defense counsel will not reproduce any discovery material provided by the government for dissemination to the defendant or to any third party . . . or allow the defendant to have unsupervised access to the material, except as provided below. . . .

> . . . Nothing in this protective order shall in any manner limit the right of counsel for defendant Sedaghaty to reproduce and disseminate any document that they obtain from independent sources other than the government even if it is within the material provided to the defense by the government in the discovery process.

(DO ECF No. 77 ("Protective Order") at 1-2 (emphasis added)).

3

On September 9, 2010, the jury returned a guilty verdict against Sedaghaty on both counts. (DO ECF No. 466).[2] After denying Sedaghaty's post-trial motions, see United States v. Sedaghaty, No. CR 05–60008–HO, 2011 WL 3563145 (D. Or. Aug. 10, 2011), District Judge Michael Hogan, before whom the case had been tried, sentenced Sedaghaty to a thirty-three month prison term. (DO ECF No. 583).   Judge Hogan nevertheless permitted Sedaghaty to remain enlarged on bail pending the outcome of his appeal. (Id.). Although Sedaghaty has declared his intention to file such an appeal, (see SDNY ECF No. 2404 ("Def.'s Mem."), at 3), judgment has yet to be entered because an issue concerning the compensation of his appointed counsel remains pending before the Oregon district court. (See DO ECF No. 593).

In December 2010, the Plaintiffs served Sedaghaty with their First Set of Requests for the Production of Documents ("Document Demands"). (See SDNY ECF No. 2404-1 ("Kabat Decl."), Ex. 1). The subject matter of some of the documents that the Plaintiffs sought overlaps with what was at issue in the Oregon case. Those documents include all documents in Sedaghaty's care, custody, or control relating to:

- Sedaghaty's involvement with the Quran Foundation, a charity located at the same address as AHIF-USA (id. ¶¶ 1-5);

- Sedaghaty's interactions with AHIF-USA and its related entities (id. ¶¶ 6-10, 59-67);

---

[2]   At the government's request, the charges against AHIF-USA were dismissed prior to trial. (DO ECF Nos. 1, 19). The third defendant, Soliman Hamd Al- Buthe, was outside the United States when the charges were returned and remains a fugitive. (DO ECF No. 5; Mark Freeman, Pete Seda Sentenced to Nearly Three Years, Mail Tribune (Medford, Or.), Sept. 28, 2011).

- The financial activities of Sedaghaty, AHIF-USA, and other individuals and entities (id. ¶¶ 11-23);

- United States and foreign government investigations of AHIF-USA and related entities (id. ¶¶ 24-33);

- Communications between Sedaghaty and certain individuals associated with AHIF-USA (id. ¶¶ 34-40, 43);

- Sedaghaty's criminal prosecution, including information concerning his international travel after September 11, 2001 (id. ¶¶ 41-42);

- The structure, organization, activities, and financing of AHIF-USA and any related entities (id. ¶¶ 44-58, 68-69); and

- The ownership of the Missouri property (id. ¶¶ 70-76).

Pursuant to Court order, Sedaghaty's responses to the Document Demands were due on January 21, 2011. (SDNY ECF Nos. 2381, 2487). That day, Sedaghaty filed a motion to stay discovery as against him pending the disposition of the post-trial motions in his criminal case. (SDNY ECF No. 2403). Although his post-trial motions have since been denied, Sedaghaty still seeks a stay pending his appeal. (Def.'s Mem. at 2).

On June 17, 2011, while Sedaghaty's motion to stay was pending, the Plaintiffs submitted a letter application for an order, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure, compelling Sedaghaty to produce the information responsive to their Document Demands. (SDNY ECF No. 2486). After Sedaghaty responded by letter dated June 29, 2011 (SDNY ECF No. 2488), the Plaintiffs submitted a reply letter dated July 6, 2011 (SDNY ECF No. 2489). The Court then heard oral

Case 1:03-md-01570-GBD-FM   Document 2491   Filed 11/22/11   Page 6 of 14

argument concerning the Plaintiffs' motion on July 13, 2011. (See SDNY ECF No. 2448).

II.    Applicable Law

    A.    Fifth Amendment

        The Fifth Amendment privilege against self-incrimination "applies only when the accused is compelled to make a testimonial communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1975). Documents prepared "wholly voluntarily . . . cannot be said to contain compelled testimonial evidence." Id. at 409-10. Therefore, "[s]elf-incrimination analysis . . . focuses on whether the creation of the thing demanded was compelled and, if not, whether the act of producing it would constitute compelled testimonial communication." In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d 87, 93 (2d Cir. 1993).

        The production of voluntarily prepared documents in response to a subpoena may require incriminating testimony in two situations: "(1) 'if the existence and location of the subpoenaed papers are unknown to the government'; or (2) where production would 'implicitly authenticate' the documents." Id. (quoting United States v. Fox, 721 F.2d 32, 36 (2d Cir. 1983)). Additionally, as Sedaghaty correctly observes, the Fifth Amendment protects a criminal defendant against compelled disclosure of non-testimonial documents if those documents are "the first step in a chain of evidence that [leads] to . . . prosecution." (SDNY ECF No. 2407 (Sedaghaty Reply Mem.) at 2 (quoting United States v. Hubbell, 530 U.S. 27, 42 (2000)).

B.    Stay

In a criminal case, the defendant's assertion of his Fifth Amendment privilege against self-incrimination may not be used against him. See 18 U.S.C. § 3481; Baxter v. Palmigiano, 425 U.S. 308, 317 (1976). On the other hand, an adverse inference may be drawn "against parties to civil actions when they refuse to testify in response to probative evidence against them." Baxter, 425 U.S. at 318. A defendant engaged in parallel civil and criminal litigation simultaneously faces numerous difficult choices, not the least of which is whether to assert his Fifth Amendment privilege against self-incrimination in the civil action, thereby compromising his "interest in testifying and obtaining whatever benefits such testimony might provide." United States v. 4003–4005 5th Ave., 55 F.3d 78, 83 (2d Cir. 1995); see also In re 650 Fifth Ave., No. 08 Civ. 10934 (RJH), 2011 WL 3586169, at *2 (S.D.N.Y. Aug. 12, 2011) ("There is no question that parties who face both civil litigation and criminal investigation face difficult choices.") (quoting Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) (Lynch, D.J.)). Nevertheless, "[t]his Hobson's choice is not so acute that the Constitution prevents the courts from forcing a litigant to make it." In re 650 Fifth Ave., 2011 WL 3586169, at *2.

While a defendant may be required to make this decision, courts also have the "discretion to stay civil proceedings . . . when the interests of justice seem to require such action." Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks and ellipses omitted). "Courts are afforded this discretion because the denial of a

7

stay could impair a party's Fifth Amendment privilege against self-incrimination, extend

criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure

16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise

prejudice the criminal case." Trustees of the Plumbers and Pipefitters Nat'l Pension Fund

v. Transworld Mech., Inc., 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995) (Chin, D.J.). "In

other words, the [c]ourt in a civil case may exercise its discretion so that a defendant need

not find himself in the position in which the [Supreme Court] ha[s] said he may

constitutionally be put." Brock v. Tolkow, 109 F.R.D. 116, 119 (E.D.N.Y. 1985).

There is consensus within the Second Circuit as to the principles that

district judges should apply "in determining motions to stay civil actions while criminal

litigation is conducted." Sterling Nat'l Bank, 175 F. Supp. 2d at 575. Thus, "courts in

this Circuit assessing requests to stay civil proceedings consider '1) the extent to which

the issues in the criminal case overlap with those presented in the civil case; 2) the status

of the case, including whether the defendants have been indicted; 3) the private interests

of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs

caused by the delay; 4) the private interests of and burden on the defendants; 5) the

interests of the courts; and 6) the public interest.'" In re 650 Fifth Ave., 2011 WL

3586169, at *3 (quoting Trustees, 886 F. Supp. at 1139). In weighing these factors,

however, a court must recognize that "[a] stay of the civil case . . . is an extraordinary

remedy." Id. (internal quotation marks omitted).

8

III.    Application of Law to Facts

    A.    Need for a Stay

       Sedaghaty relies on cases holding that "the existence of an indictment generally favors the granting of a stay in a related civil proceeding." (See Def.'s Mem. at 7 (quoting Johnson v. N.Y. City Police Dep't, No. 01 Civ. 6570 (RCC) (JCF), 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003)); see also Volmar Distribs., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."). The rationale behind granting a stay in these post-indictment, pre-conviction cases is that the plaintiff in the civil action is protected against undue delay because resolution of the criminal matter is imminent. Here, however, Sedaghaty has already been tried, convicted and sentenced, and his post-trial motions have been denied. Moreover, although Sedaghaty has indicated that he plans to file an appeal, it is far from certain that the Ninth Circuit will reverse his conviction; if so, that the government will decide to retry him; and, should that occur, when the retrial will take place.

       Tellingly, Sedaghaty has not cited any cases — nor have I found any — in which a stay of civil discovery was granted after the related criminal trial had concluded, based on the mere possibility that a successful appeal might lead to a new trial. At least one district judge has held, to the contrary, that "the status of [a d]efendant's criminal case weighs strongly against granting a stay [when the d]efendant has already been tried,

convicted, and sentenced." Sparkman v. Thompson, No. 08-01-KKC, 2009 WL 1941907,

at *2 (E.D. Ky., July 6, 2009) (emphasis added). As that judge explained,

> because [the d]efendant has already challenged the
> government's case in trial, he knows exactly how the
> government intends to prove his guilt and he is exceedingly
> able to avoid making incriminating statements that might be
> used against him if retried. Also, absent a waiver of his Fifth
> Amendment privilege, he has only a minimal concern that
> civil discovery will aid the criminal prosecution because the
> government has already assembled all the evidence needed for
> a conviction.

Id.

Even if Sedaghaty were to assert his Fifth Amendment privilege in response

to any of the Plaintiffs' document requests, it seems unlikely that he would therefore

"effectively forfeit[] [his] civil case." See Trustees, 886 F. Supp. at 1140. Although there

concededly is some overlap of legal and factual issues in the criminal and civil actions,

the overlap is far from complete. In his criminal case, Sedaghaty was convicted of

conspiring together with others to defraud the United States by evading the filing of CTRs

and causing AHIF-USA to mischaracterize funds as a charitable contribution on its

federal nonprofit organization tax return. Neither of these misdeeds, however, is

inextricably interrelated to the events that gave rise to the terrorist attacks of September

11, 2001. (See joint letter to the Court, dated November 11, 2011, at 8 (Defs.' Response

to Pls.' Proposal) (noting Judge Hogan's observation at sentencing that the government

had failed to "prove the terrorism [sentencing] enhancement . . . by clear and convincing

evidence . . . because of [its] failure to prove a link between [Sedaghaty] and the money

being used for terrorist activities"). Therefore, even if Sedaghaty were to assert his Fifth

Amendment privilege in this case insofar as the Plaintiffs sought to inquire about his links

to money laundering or AHIF-USA's filing of false tax returns, it by no means follows

that the Plaintiffs would necessarily prevail on their claims that Sedaghaty provided

material support to the perpetrators of the September 11th attacks. (See, e.g., SDNY ECF

No. 111 (Fed. Ins. Am. Compl.) ¶¶ 776-79).

       The theories on which Sedaghaty has challenged his conviction further

support the Court's conclusion that discovery in this case is unlikely to implicate

Sedaghaty's Fifth Amendment rights. For example, Sedaghaty argued in his motion for a

new trial (and likely will argue on appeal) that the district court improperly admitted

evidence of Sedaghaty's alleged ties to terrorism, leading to a "prejudicial . . . focus on

Islam, terrorism, and anti-Semitism in a case that is charged as essentially a tax case."

(DO ECF No. 477 (Def.'s Mot. for New Trial) at 1). If the Court of Appeals for the

Ninth Circuit agrees with this proposition and reverses his conviction, any extraneous

evidence of Sedaghaty's ostensible links to terrorism would presumably be barred at a

new trial. Consequently, even if Sedaghaty were to authenticate documents or make

admissions relevant to his alleged terrorist ties in the course of discovery in this case, that

evidence could not be used to incriminate him at a second criminal trial.

       Conversely, if the Ninth Circuit eventually holds that the evidence received

at Sedaghaty's trial was proper, his conviction presumably would be upheld without any

need for a new trial. In that circumstance as well, any additional evidence that the

Plaintiffs may be able to authenticate through civil discovery in this case could not be used to his prejudice in the criminal case, which would effectively be at an end.

Finally, the Plaintiffs have a strong interest in proceeding with this multidistrict litigation, which has been pending for over seven years, but in which merits discovery as to AHIF-USA, Sedaghaty, and other defendants has only recently begun. Any further delay on the speculative ground that proceeding with civil discovery might prejudice Sedaghaty is not warranted. Indeed, the grant of a stay as to Sedaghaty would likely impede the Plaintiffs' ability to pursue discovery relating to other defendants. For example, Sedaghaty was a principal officer of AHIF-USA, which is also a defendant in this case. If discovery against him were to be stayed, the Plaintiffs would also be stymied in their efforts to proceed against AHIF-USA since many of its documents are apparently in Sedaghaty's possession, custody, or control. (See SDNY ECF No. 2405 (Pls.' Mem.) at 7).

The Court therefore declines to issue the stay of discovery that Sedaghaty seeks in this case.

B.    Protective Order

Sedaghaty further contends that the Protective Order entered by Magistrate Judge Thomas M. Coffin in the criminal case makes it impossible for him to comply with the Plaintiffs' Document Demands. (See SDNY ECF No. 2488 at 1, 7-8). Sedaghaty bases that claim on his attorney's discussions with the Federal Public Defender in Oregon who represented Sedaghaty in connection with the criminal case. (Id.). A literal reading might, in fact, support the Federal Public Defender's alleged interpretation of the

12

Protective Order. However, it seems clear that the intent of the Protective Order was to restrict Sedaghaty's further dissemination of information that the government had provided to his counsel that was not available to Sedaghaty from another source. Any information contained in materials that the government obtained through the execution of the search warrant at AHIF-USA plainly does not fit this description. Sedaghaty therefore may produce to the Plaintiffs any documents that were in his possession, custody, or control, or that of AHIF-USA, prior to the execution of the search warrant.[3]

IV.    Conclusion

For the foregoing reasons, Sedaghaty's motion to stay discovery is denied, and the Plaintiffs' application to compel Sedaghaty to respond to their Document Demands is granted.

SO ORDERED.

Dated:        New York, New York
              November 21, 2011

FRANK MAAS
United States Magistrate Judge

---

[3]    In an effort to stem any further debate about the scope of the Protective Order or its applicability to this case, I have shared this section of this Memorandum Decision and Order with Magistrate Judge Coffin prior to its issuance. Magistrate Judge Coffin confirms that my interpretation of the Protective Order is correct.

Case 1:03-md-01570-GBD-FM   Document 2491   Filed 11/22/11   Page 14 of 14

Copies to:

Honorable George B. Daniels
United States District Judge

All counsel via ECF

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **No. 6:05-cr-60008-AA** |
| **Plaintiff,** | |
| **v.** | **ORDER MODIFYING** |
| | **PROTECTIVE ORDER OF** |
| **PIROUZ SEDAGHATY,** | **DECEMBER 18, 2007** |
| **Defendant.** | |

Upon consideration of the Memorandum Decision and Order of the

United States District Court Southern District of New York *In Re: Terrorist*

*Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM) (ECF No. 2491) (Nov.

22, 2011), and upon agreement of the parties in 6:05-cr-60008-AA, it is hereby

ORDERED that the protective order issued by this Court on December

18, 2007, *United States v. Sedaghaty*, No. 6:05-cr-60008-AA, (D. Or December

18, 2007) (CR 77), is modified by the following addendum:

IT IS FURTHER ORDERED that defense counsel is not
precluded from providing to the civil attorneys for AHIF-USA (Alan
Kabat and Lynne Bernabei) for use in the above referenced case,
any material provided to defense counsel through discovery that
the government obtained as a result of the execution of the search
warrant at 3800 S. Highway 99, Ashland, OR  97520, on February
18, 2004, material obtained through grand jury subpoenas served
on AHIF-Ashland, and the file provided by Tom Wilcox on June 11,
2009.

Dated this _____ day of February, 2013.

_____
Ann Aiken, Chief Judge
United States District Court Judge