IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) <br> ) No. 03 MDL 1570 (GBD/FM) <br> ) ECF Case <br> ) |

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>    Case No. 02-CV-6977;
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
>    Case No. 03-CV-9849;
> CANTOR FITZGERALD ASSOCIATES, LP, *et al.* v. AKIDA INVESTMENT CO., LTD., *et al.*,
>    Case No. 04-CV-7065;
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>    Case No. 04-CV-5970;
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>    Case No. 04-CV-7279;
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
>    Case No. 03-CV-6978;
> ESTATE OF O'NEILL, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>    Case No. 04-CV-1923;

### PLAINTIFFS' RESPONSE TO AL HARAMAIN'S NOTICE OF FILING

Plaintiffs in the above-referenced multidistrict litigation respectfully submit this Response to the Notice of Filing (D.E. 2683) and Second Notice of Filing (D.E. 2691) made by Al Haramain, both purporting to be related to Plaintiffs' motion for sanctions (D.E. 2654 and 2679) and Al Haramain's opposition to the motion for sanctions (D.E. 2676). Al Haramain offered two points purportedly related to Plaintiffs' sanction motion, and Plaintiffs offer these two responses:

- **Al Haramain's First Point**: Sedaghaty's Oregon Public Defender has (finally) asked the Oregon Court to adjust the Protective Order entered into in Sedaghaty's Criminal Litigation, and on February 14, 2013, the federal court in Oregon entered an order amending the protective order to permit the referenced documents to be shared and used in the *In re Terrorist Attacks*, 03 MDL 1570 litigation.

    **Plaintiffs' Response to the First Point:** Although the Oregon federal court's amended order, which accords with the order entered in this case directing that the referenced Al Haramain documents are to be produced for use in this litigation (D.E. 2491 at 13), resolves the red herring issue Al Haramain created and interposed as one of its defenses, the amended order does not resolve the overarching issue of Al Haramain's discovery abuses. Indeed, the entire issue represents yet another example of Al Haramain's efforts to erect false barriers to the normal operation of the discovery process, and refusal to fulfill its most basic discovery

obligations until and unless it becomes apparent that Plaintiffs have made an affirmative showing to the Court of misconduct.

Beyond the fact that there is no excuse for Al Haramain's failure to undertake any effort for more than a year to comply with this Court's order,[1] the fact of the matter is that the Oregon Protective Order is a complete non-issue and did not provide any basis for Al Haramain to avoid compliance with its discovery obligations.  As Oregon federal court Magistrate Judge Coffin candidly stated in his February 5, 2013 letter to Federal Public Defender Steven T. Wax (included at page 3 of D.E. 2683-1 in 03 MDL 1570, and as D.E. 628-1 of the docket in *USA v Sedaghaty*, Dkt. 6:05-cr-60008-AA), "It is our position that the order of the District Court in the Southern District of New York regarding the discovery issues in the Al Haramain USA case you referenced is controlling and that the court in the District of Oregon has no authority or jurisdiction to review or in any way modify such order."

In short, at the very least since this Court's November 22, 2011 order (D.E. 2491), there has been no question, either to this Court or the federal court in Oregon, that Al Haramain's documents at issue in the Oregon criminal proceedings were subject to production.  *See also* D.E. 2491 at 13 n.3 (the magistrate judge who entered the protective order in the Oregon federal criminal proceedings confirmed that this Court's interpretation of the protective order is correct).  Al Haramain's approach of delaying any efforts at production until after Plaintiffs have asked on multiple occasions for this Court's intervention is yet additional evidence of Al Haramain's improper approach to its discovery obligations.

- **Al Haramain's Second Point**:  The United Nations has delisted Al-Buthe.

    **Plaintiffs' Response to the Second Point:**  Although Al Haramain states that its Notice of Filing is "to apprise the Court and the parties of . . . subsequent developments relating to its Opposition to Plaintiffs' Motion for Sanctions (D.E. 2676) (Jan. 31, 2013)," the fact that the U.N. has delisted Soliman Al-Buthe has no bearing on the circumstances presented for the Court's consideration in Plaintiffs' motion for sanctions.

    **First**, Al-Buthe's delisting by the U.N. in February 2013 plays no bearing on Al Haramain's discovery misconduct from the filing of the complaint until Plaintiffs' motion for sanctions was filed, which is the focus of Plaintiffs' sanctions motion.

    **Second**, for the issue of whether al-Buthe engaged in terrorist support, the fact that the U.N. prospectively determined (pursuant to an inherently political process) that the continued listing of al-Buthe was unnecessary to serve the purely preventative goals of the listing program is not the least bit probative or relevant on any issue in this litigation, and the determination is particularly irrelevant to the issue addressed to the Court in Plaintiffs' sanctions motion – namely, whether Al Haramain violated its discovery obligations.

    A summary of the delisting process offers background to explain the issue.  Pursuant initially to U.N. resolution 1267 (1999), the U.N. Security Council Al-Qaida Sanctions Committee (the "Committee") maintains the Al-Qaida Sanctions List, a list of individuals and entities

---

[1] The length of time (27 months) between this Court's order requiring disclosure of Al Haramain's responsive documents (October 28, 2010) and Al Haramain's letter to the public defender in Oregon requesting that he take action to make Al Haramain's seized documents available (January 28, 2013) is further evidence of Al Haramain's inexcusably dilatory approach to its discovery obligations.

subject to sanctions measures, obligating member states to impose various measures on parties included on the list. Once listed, a listed party may be "delisted" only by following the Committee's "delisting" procedures – *i.e.*, by submitting a delisting request either directly to the Office of the Ombudsperson or through the listed party's State of residence or citizenship. In the instance of al-Buthe, the delisting request was made through the Ombudsperson. The Ombudsperson then gathers relevant information and circulates a confidential Report to the Committee members, who then consider the delisting request. Where the Ombudsperson recommends delisting in the confidential Report and no Committee Member objects to the delisting within a set 10-day period, the delisting takes effect. If a Committee Member objects, the delisting may *still* take effect (60 days after the initial submission of the Report) unless *all* Committee Members object in writing to the delisting proposal or at least one Committee Member requests the Committee Chair to submit the request to the Security Council for decision.

The fact that the Committee delisted al-Buthe has no value because the entire delisting process is *prospective only* -- *i.e.*, it does not consider whether the listed party met the listing criteria when originally listed, but only whether the party meets the listing criteria at the time of review for delisting. *See* U.N. Al-Qaida Sanctions Committee, "Fact Sheet on De-Listing," § 2 ("The delisting submission should explain why the individual … *no longer meets the criteria*" for listing)[2]; Standard form to request delisting, § V. "Justification" (Requiring parties requesting delisting to "explain why the individual … *no longer meets the criteria*" for being listed) (emphasis added)[3]. Accordingly, in considering whether to delist al-Buthe, neither the Ombudsperson nor the Committee was ever required to consider the propriety of the reasons for al-Buthe's initial listing[4] – *e.g.*, in the Narrative Summary of the Reasons for Listing al-Buthe,[5] the Committee indicated that, among other reasons, al-Buthe was listed because he "provided financial, material, and/or logistical support to Al-Qaida and Usama bin Laden." In considering the delisting request, the Committee considered only whether the information presented for their consideration of the delisting request indicated that he *continued* to meet the requirements for listing.

In addition to being prospective only, the delisting process is subject to the same political influences that necessarily affect the U.N. as a political entity and delisting may result for any number of reasons. Because the members of the Committee consists of all members of the U.N. Security Council,[6] any political influence that might affect the member states on the

---

[2] Available at http://www.un.org/sc/committees/1267/fact_sheet_delisting.shtml.

[3] Available at http://www.un.org/sc/committees/1267/pdf/De-listing%20form%20-%20English.pdf

[4] As Ombudsperson Judge Kimberly Prost has herself explained: "[A]ccepting that these are preventative, as opposed to punitive measures, I am not going to focus my attention on whether the original decision to list was reasonable or justifiable. Instead, I will provide my analysis and observations on this question - is there a sufficient basis today for this individual or entity to be on the list?" Remarks of Kimberly Prost, Ombudsperson, 1267 Al Qaida/Taliban Sanctions Committee delivered to the informal meeting of Legal Advisors 25 October 2010, available at http://www.un.org/en/sc/ombudsperson/pdfs/2010.10.25_E.pdf.

[5] Available at http://www.un.org/sc/committees/1267/NSQIA17904E.shtml.

[6] The current membership of the U.N. Security Council consists of the five permanent members (China, France, Russian Federation, the United Kingdom, and the United States) and ten non-permanent members (Argentina, Azerbaijan, Australia, Guatemala, Luxembourg, Morocco, Pakistan, Republic of Korea, Rwanda, and Togo). Of note, in considering a de-listing request, the Committee must give due consideration to the views of the listed party's

Security Council may manifest itself in the Committee's determination – particularly inasmuch as unanimous action by the member states may be needed to prevent a party's delisting.  *See* Committee Guidelines.  Accordingly, Al-Buthe's delisting may be the result of any number of factors, and the fact of delisting, alone, has no bearing on whether he previously provided material support to terrorists.

**Third**, the fact remains that Al-Buthe continues to be designated by the U.S. authorities and under indictment and subject to criminal prosecution by federal authorities.  *See, e.g.*, Jeff Barnard, *UN Takes Charity off Al Qaida List*, ASSOCIATED PRESS, February 12, 2013, *available at* http://abcnews.go.com/US/wireStory/takes-charity-founder-off-al-qaida-list-18471009.  So, although the sanctions assets freeze, travel ban, and arms embargo set out in paragraph 1 of U.N. Securities Council resolution 2083 (2012) may no longer apply to him, all of the prohibitions imposed by his U.S. designation *and* the risks of U.S. criminal prosecution remain in place.

                                                Respectfully submitted,

                                                Robert T. Haefele
MOTLEY RICE LLC
28 BRIDGESIDE BOULEVARD
P.O. BOX 1792
MOUNT PLEASANT, SC  29465
TEL:  (843) 216-9000
FAX:  (843) 216-9450

For PLAINTIFFS' EXECUTIVE COMMITTEES in *In Re Terrorist Attacks*, 03 MDL 1570

February 27, 2013

---

state of residence, in the case of al-Buthe, Saudi Arabia.  *See* U.N. Al-Qaida Sanctions Committee, Guidelines of the Committee for the Conduct of its Work ("Committee Guidelines") *available at* http://www.un.org/sc/committees/1267/pdf/1267_guidelines.pdf.