## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

### VIA HAND DELIVERY

January 30, 2012

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and the accompanying exhibits and respectfully request that the Court enter an Order, pursuant to F.R.C.P. 37(a), compelling defendant Rabita Trust, an Executive Order 13224 designee, to: (1) promptly provide detailed information concerning Rabita Trust's current organizational status and leadership given the defendant's characterization that it has been a "dormant" charity since 1994; (2) identify any individuals who presently hold, or who have held, the authority to direct the litigation on Rabita Trust's behalf and ensure the defendant's adherence to its discovery obligations; (3) identify all efforts undertaken to locate and produce documents and information responsive to plaintiffs' discovery requests, and produce documents verifying such efforts, as directed by the Court on November 16, 2011; and (4) immediately produce all documents and materials in its possession, custody, or control responsive to Plaintiffs' Supplemental Jurisdictional Requests for Production of Documents Directed to Defendant Rabita Trust.

## I.     PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS

On June 15, 2006, plaintiffs served their consolidated First Set of Jurisdictional Requests for Production of Documents Directed to Defendant Rabita Trust, attached hereto as Exhibit A.

The Honorable Frank Maas
January 30, 2012
Page 2

Plaintiffs' jurisdictional document requests were divided into Part A (comprising the first 26 requests) and Part B (the remaining 106 requests).[1]

Those requests seek *inter alia*: (i) documents relating to investigations conducted by the United States and foreign governments into Rabita Trust's terror sponsorship activities; (ii) documents relating to Rabita Trust's designations by the United States and United Nations for participating in the financing, planning, facilitating, or otherwise supporting the acts and activities of al Qaeda and Osama bin Laden, including all sanctions leveled against the defendant; (iii) relevant banking and financial records, including all accounts, assets, and/or monies seized and frozen in conjunction with the designations; (iv) documents relating to the appointment of Executive Order 13224 designee Wa'el Hamza Jelaidan as Secretary General of Rabita Trust; (v) Rabita Trust's relationship with other purported charitable organizations that operated within the al Qaeda financial support infrastructure, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Saudi Joint Relief Committee ("SJRC"), Saudi Red Crescent Society ("SRC"), and Benevolence International Foundation ("BIF"); and (vi) documents relating to Rabita Trust's relationship with the Kingdom of Saudi Arabia, including the Islamic Affairs Division of any Saudi embassy or consulate.

On August 16, 2006, Rabita Trust provided its responses to plaintiffs' Part A requests, and on September 13, 2006, the defendant provided its responses to plaintiffs' Part B requests. *See* Rabita Trust's Responses to the Plaintiffs' First Set of Requests for Production of Documents "Part A," and Rabita Trust's Responses to the Plaintiffs' First Set of Requests for Production of Documents "Part B," attached collectively hereto as Exhibit B.

To date, Rabita Trust has produced a mere twenty-two (22) documents since the commencement of jurisdictional discovery, most of which are not even remotely relevant to the specific issues articulated in plaintiffs' discovery requests.[2] Notably, seventeen (17) of the documents produced by Rabita Trust are identical to documents produced by defendant Jelaidan earlier in these proceedings, suggesting that the bulk of Rabita Trust's production is a mere replication of documents provided by Jelaidan. More fundamentally, Rabita Trust has to date failed to produce a single responsive document in response to a vast majority of plaintiffs' Part A and B discovery requests, and also has failed to document any good faith efforts on its part to locate and produce responsive documents, in contravention of this Court's clear directive during the November 16, 2011 conference.

During discussions with plaintiffs' counsel, Rabita Trust's counsel has attempted to excuse Rabita Trust's obvious non-compliance with its discovery obligations based on undocumented representations that Rabita Trust has been a "dormant" charity since the first

---

[1] Plaintiffs staggered their discovery requests in this manner, as well as the response times, so as to provide the defendant with sufficient time to search for and gather responsive materials and fully respond to the plaintiffs' requests.

[2] Defendant Rabita Trust served plaintiffs with its sole document production on or about August 16, 2006.

The Honorable Frank Maas
January 30, 2012
Page 3

quarter of 1994, and therefore has no documents to produce.[3]  But that position does not comport with certain affidavit testimony and other documents produced in this litigation which suggest that: (i) Rabita Trust and its officials were in fact engaged in various operational, administrative, and financial activities during this alleged period of dormancy; and (ii) responsive documents do in fact exist but continue to be withheld by the defendant.  For instance, Wa'el Jelaidan's admission that he was appointed as Rabita Trust's Secretary General in February 1999 to oversee the defendant's purported charitable activities in Pakistan belies this notion that Rabita Trust had "ceased operations"[4] several years earlier.  *See* Declaration of Wael Hamzah Jelaidan, Secretary General of the Rabita Trust, attached hereto as Exhibit C.  Indeed, Jelaidan confirms in a separate Declaration endorsed by him in 2004 that "Rabita Trust has maintained and continues to maintain its own operations, payroll records and budgets … and remains responsible for its own capitalization and management of assets." *See* Declaration of Wael Hamzah Jelaidan Secretary-General of the Rabita Trust in Support of Defendant Rabita trust's Motion to Dismiss the Ashton Third Amended Consolidated Master Complaint at Exhibit D.

In addition, the limited discovery documents produced by the defendant reveal that Rabita Trust's Board of Directors were holding formal meetings until at least 1999,[5] and that the defendant had a fully operational office in Lahore, Pakistan as late as the fall of 2001, until Jelaidan ordered the office closed and its assets and documents collected following the September 11th attacks.  *See* Exhibit E.  The documents also disclose that in October 2001, Rabita Trust representatives were responding to inquiries from the Pakistan Cabinet Secretary and providing him with detailed reporting regarding Rabita's receipts, expenditures, and bank accounts since the charity's inception.  *See id.*  During this same time period, Jelaidan, in his capacity as Secretary-General, was actively issuing press releases on behalf of Rabita Trust in the months after the attacks, criticizing media reports connecting Rabita Trust with al Qaeda and Osama bin Laden.  *See* Exhibit F.  Documentation further demonstrates that representatives of the alleged inactive Rabita Trust, including the Secretary General of the MWL, Dr. Abdullah bin Abdul Mohsin al Turki, were actively seeking legal advice in 2002 and 2003 to determine how to successfully remove the defendant from the U.S. Treasury's Executive Order 13224 designation list.  *See* Exhibit G.  Moreover, post September 11 audits of Rabita Trust's bank accounts included an examination of the defendant's financial statements from July 1988 to October 2001, suggesting a continuous stream of financial activity from the allegedly "dormant" charity.  *See* Exhibit H.

---

[3] *See* Rabita Trust's Responses to Plaintiffs' First Set of Requests for Production of Documents Part B, Specific Objection No. 3, at Exhibit B. *See also* Transcript of the June 14, 2005 Hearing before Judge Richard C. Casey (defense counsel states that "Rabita Trust was essentially rendered shut down or frozen as far back as 1994 to the present date.").

[4] Memorandum of Law of Rabita Trust in Support of its Motion to Dismiss the *Federal Insurance* First Amended Complaint, p. 2 (MDL Docket No. 356, July 30, 2004).

[5] From the very limited documentation produced by the defendant, it appears the Board of Directors were still active in the oversight of the charity and were taking on new members in 2000. *See* Exhibit I. Members of the Rabita Trust board include defendants Dr. Abdullah bin Saleh al Obaid, former Secretary General of the Muslim World League ("MWL"), and Dr. Adnan Basha, Secretary General of the International Islamic Relief Organization ("IIRO").

The Honorable Frank Maas
January 30, 2012
Page 4

Beyond its apparent inconsistencies with the evidence outlined above, the representation that Rabita Trust has been a dormant entity since 1994 and related details conveyed by counsel raised a more fundamental question concerning the source of authority for Rabita Trust's appearance and defenses in this litigation, and whether there was someone with the present authority (and duty) to ensure Rabita Trust's compliance with its discovery obligations.

Plaintiffs wrote to counsel for Rabita Trust on September 29, 2011 in relation to these issues, and for purposes of setting a date for a formal meet and confer concerning the deficiencies in Rabita Trust's discovery responses.[6] In particular, plaintiffs sought relevant information from the defendant regarding its current organizational status and leadership, the identification of potential custodians of documents responsive to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents, and an accounting of the defendant's efforts to secure and produce those discovery materials.  Specifically:

- Plaintiffs requested clarification as to the defendant's representation that it has been a "dormant" charity, including whether the defendant has maintained any offices, employees, or administrative functions since that time;

- Plaintiffs requested clarification as to the present location of Rabita Trust's documents, including the identification of any foreign state, organization, or individual that may have taken possession of the defendant's operations and financial documents in or around the time it allegedly became "dormant;" and

- Plaintiffs further requested an update as to the efforts of a Pakistani lawyer who was allegedly hired by the defendant in or about 2006 to assist in the search and collection of documents responsive to plaintiffs' document requests.

*See* September 29, 2011 letter from Sean P. Carter to Martin F. McMahon, attached hereto as <u>Exhibit J</u>.

---

[6] Additionally, when responding to plaintiffs' discovery requests, defendant Rabita Trust has in boilerplate fashion asserted conclusory and unsubstantiated objections regarding alleged burdens associated with producing responsive documentation and materials.  Although the Federal discovery rules require a party to provide credible evidence to substantiate its objections, the defendant has failed to provide a single affidavit, declaration, or other document in support of those burden objections.  *See Arias-Zeballos v. Tan*, 2007 U.S. Dist. Lexis 40245, *4 (S.D.N.Y. 2007) ("In order to satisfy its burden, the resisting party must do more than simply inton[e the] familiar litany that the [discovery requests] are burdensome, oppressive or overly broad, and must clarify and explain its objections and provide support thereof.").  Further, Rabita Trust has blatantly ignored its continuing obligation under Federal Rule 26(e) to supplement its responses to plaintiffs' discovery requests.  As Your Honor will recall, Judge Daniels issued a discovery Order in 2007 holding that "the appropriate temporal scope of discovery should reasonably begin in 1992."  *See* Order, MDL Docket No. 2059, December 21, 2007.  Despite the Court's directive to the defendants that they supplement their discovery responses in accordance with its decision, Rabita Trust has simply ignored that Order and continues to rely upon its objection to plaintiffs' discovery requests that documents prior to 1996 will not be produced.  *See* Exhibit B, Specific Objection #1.  Rabita Trust's willful disregard for Judge Daniels' discovery Order and its failure to supplement its responses even once since the commencement of discovery has significantly prejudiced the plaintiffs' ability to obtain relevant and discoverable information.

The Honorable Frank Maas
January 30, 2012
Page 5

The parties thereafter held a formal meet and confer by telephone on November 11, 2011. Although the defendant had over a month in advance of the meet and confer to obtain the requested information and prepare substantive responses to those inquiries, plaintiffs' requests for information went largely unanswered during the telephone conference. Importantly, when plaintiffs asked whether there was presently a representative of Rabita Trust who holds the authority to retain counsel and direct the litigation efforts on behalf of the defendant, defense counsel conceded that he did not know who that individual was. According to Mr. McMahon, Jelaidan was responsible for hiring him at the outset of the litigation to represent Rabita Trust, but Mr. McMahon added that he did not believe Jelaidan had held any position with Rabita Trust in years. Plaintiffs further requested that the defendant provide documentary evidence verifying its efforts to locate and obtain documents responsive to plaintiffs' discovery requests, and to also provide information regarding the circumstances under which any responsive documents were lost, destroyed, discarded, seized, or transferred to any third party.

At the conclusion of the meeting, counsel agreed that he would immediately seek answers to plaintiffs' inquiries and promptly report back with his findings. *See* November 4, 2011 email correspondence from Martin F. McMahon to Sean P. Carter, attached hereto as Exhibit K[7] ("Based on our phone conference today concerning Rabita Trust discovery, I will attempt to discern who is presently answerable for the actions of the Trust. Specifically, I will attempt to find out who Mr. Jelaidan's successor was, if anyone, and who the current Director is, if anyone, at the Trust. If there is no Director or Successor to Mr. Jelaidan, I will try to discover if there is anyone currently with authority to direct the Trust. Ultimately, I will attempt to figure out the current organizational status of the entity and the officers, if any, that occupy positions in the entity.").

Notwithstanding counsel's repeated assurances, months elapsed without a response from the defendant and plaintiffs transmitted another letter to defense counsel reminding him of his promise to obtain the requested information. *See* July 30, 2012 letter from Sean P. Carter to Martin F. McMahon at Exhibit L (advising that plaintiffs still have not heard back from the defendant since the meet-and-confer eight (8) months earlier and further requesting prompt responses to the specific issues raised by plaintiffs).[8] No response was provided and the August 30, 2012 discovery deadline passed without any production of documents or information from the defendant.[9] In addition, Rabita Trust failed to produce any information that it has undertaken

---

[7] Counsel states that he had previously attempted to contact certain persons associated with Rabita Trust – including a former accountant, a former lawyer, and a former employee with Pakistan's Office of the Cabinet Secretary – and had further sent letters to the last known address for Rabita Trust. Plaintiffs have seen no evidence to substantiate these claims.

[8] Plaintiffs' July 2012 letter also asks Rabita Trust to: (i) clarify whether it has submitted any documents to, and/or received any documents from, any U.S. government agency and any arm of the United Nations concerning Rabita Trust's designations by the U.S. and U.N.; (ii) produce any and all communications with the U.S. government or United Nations; and (iii) advise whether the defendant is in possession of any account statements for any of its bank or financial accounts, including statements from time period following its designations.

[9] Rabita Trust's failure to produce any documents in accordance with the August 30 deadline directed by this Court should not serve to benefit the defendant in these proceedings. In the event that Rabita Trust eventually complies with this Court's orders and produces responsive documentation and information, plaintiffs reserve the right to seek extensions of the existing discovery schedule to allow for translation, follow-up discovery, and motion practice.

The Honorable Frank Maas
January 30, 2012
Page 6

diligent and good faith efforts to locate and produce responsive documents, in violation of this Court's directive during the November 16, 2011 discovery conference.

The defendant had yet another occasion to respond to plaintiffs' inquiries when the parties submitted the proposed agenda for the October 22, 2012 discovery hearing to Your Honor. In that agenda letter, plaintiffs again specifically raised the question of who presently retains the authority to direct the litigation on behalf of Rabita Trust and ensure the defendant's adherence to its discovery obligations. *See* October 18, 2012 letter submission at Exhibit M. Once again, the defendant remained silent.

Rabita Trust's failure to provide responsive documentation in response to an overwhelming majority of plaintiffs' discovery requests, and the defendant's inability to provide substantive responses to these very reasonable inquiries, collectively raises a legitimate question as to whether Rabita Trust is actively participating in this litigation. Indeed, the mere fact that defense counsel indicated that he was unaware of his client's current organizational status, the identification of its officers, and the identity of the individual who is responsible for directing his representation in these proceedings, suggests that Rabita Trust has withdrawn from any active participation in these proceedings. If that is the case, it is difficult to discern how Rabita Trust can continue to purport to maintain any defense to plaintiffs' claims.[10]

Plaintiffs have attempted in good faith to obtain the requested discovery without burdening the Court, but as the record clearly indicates, intervention by this Court is necessary. Plaintiffs respectfully request that the Court enter an Order compelling the defendant to within twenty (20) days provide detailed responses to plaintiffs' requests for information set forth above, and to further produce any and all responsive documents within its possession, custody, or control.

In the event that the defendant will not comply with this Court's directives, plaintiffs respectfully submit that appropriate sanctions are warranted as Your Honor noted during the November 16, 2011 discovery hearing, including attorney's fees and/or default judgment. *See American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521 (S.D.N.Y. 1999) (granting sanctions and entering default judgment for repeated failures to comply with discovery orders); *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) (granting motion for default judgment where defendants willfully refused to participate in the litigation); *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106 (S.D.N.Y. 2011) (imposing sanctions of attorney's fees in response to the defendant's failure to fully respond to discovery requests and multiple orders and directives of the court).

---

[10] *See* New York Rules of Professional Conduct, Rules 1.2(a), 1.4.

The Honorable Frank Maas
January 30, 2012
Page 7

## II.     DEFENDANT RABITA TRUST HAS ADDITIONALLY FAILED TO RESPOND TO PLAINTIFFS' SUPPLEMENTAL JURISDICTIONAL DOCUMENT REQUESTS

On August 1, 2012, plaintiffs served their consolidated Supplemental Requests for Production of Documents Directed to Rabita Trust, attached hereto as Exhibit N. Those 13 requests seek *inter alia*: (i) bank account records for six specific numbered accounts held by Rabita Trust at Habib Bank Ltd.; (ii) documents relating to an audit of Rabita Trust conducted following the defendant's designation by the United States in October 2001; (iii) documents submitted to and/or received from any U.S. government agency concerning the designations by the U.S. and U.N.; (iv) documents relating to the decision to remove Sameer Radhi from his position with Rabita Trust on or about February 1999 and appoint Jelaidan as the head of Rabita Trust; and (iv) documents relating to the proposal to remove Jelaidan from his position at Rabita Trust in 2003.

To date, Rabita Trust has failed to serve responses to plaintiffs' supplemental jurisdictional discovery requests, a fact that further suggests that it has withdrawn from this litigation. Accordingly, and because defendant has waived any objection to those requests, plaintiffs respectfully request that the Court order Rabita Trust to immediately produce all responsive materials in accordance with Rule 34(b)(2)(E).

Respectfully submitted,

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:   The Honorable George B. Daniels, U.S.D.J. (Via Hand Delivery)
      Plaintiffs' Executive Committee Members (Via Email)
      Martin F. McMahon, Esq. (Via Email)
      Alan Kabat, Esq. (Via Email)

PHILADELPHIA\6814933\4 117430.000

# Exhibit A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In Re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |
|---|---|

*This document relates to:*

*Kathleen Ashton v. Al Qaeda Islamic Army, 02 CV 6977 (RCC)*
*Thomas Burnett, Sr.  v. Al Baraka Investment & Develop. Corp., 03 CV 9849 (RCC)*
*Federal Insurance Co. v. al Qaida, 03 CV 6978 (RCC)*


## PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTEDTO DEFENDANT RABITA TRUST


## PARTS A and B


MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Phone:  (843) 216-9000
June 15, 2006

## Parts A and B

Plaintiffs in the above-referenced actions ("Plaintiffs"), propound on Rabita Trust ("Rabita" or "Defendant") the following Parts A and B Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, with Part A Requests to be answered within 30 days of their receipt, and Part B Requests to be answered within 60 days of their receipt.

## INSTRUCTIONS

1.      In producing documents and other things, Defendant is requested to furnish all documents or things in Defendant's possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request. If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business and the documents shall be organized and labeled to correspond to the categories in this request. All documents shall be produced in the file folder, envelope or other container in which the documents

are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify to which request(s) they are responsive.

9.      Each of these requests shall be continuing. If at any time after production any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when they become available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

      a.   The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

      b.   The date of the document or transaction involving the information;

      c.   The names of each author and all participants with respect to the information;

      d.   The names of all signatories of the document, if any;

      e.   The name of the document's current custodian;

f. The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

g. A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.     For the purpose of this discovery request, except to the extent specifically indicated in the "Definitions" section of this Request, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.     Except as where specifically stated otherwise, the time period covered by the documents to be produced is from January 1988 until the present.

## DEFINITIONS

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

3.      The term "identify" when used with reference to a document or written communication shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) general description of the document; (v) author(s), addressee(s), recipients(s), and the person(s) who signed the document; (vi) the number of pages, if the document contains more than one page; (vii) a description of any attachments or supplemental items incorporated within the document; and (viii) the transactions, acts, or occurrence to which each document related and the substance of the document.  If the document was, but is no longer in the possession of the Defendant or subject to the Defendant's control, state what disposition was made of it..

4.      The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and the person(s) to whom the communication was directed; (ii) state the date, time, and place of the communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iV) identify any other person(s) present when the communication was made; and (v) identify any document relating to the communication.

5.      The term "identify" when used in reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is

known; (ii) statethe specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

6.     The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party mean the party and, where applicable, its officers, directors, executives, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

7.     The term "Plaintiffs" shall refer to the plaintiffs in <u>Kathleen Ashton v. Al Qaeda Islamic Army</u>, 02 CV 6977 (RCC); <u>Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.</u>, 03 CV 9849 (RCC), and <u>Federal Insurance Co. v. al Qaida</u>, 03 CV 6978 (RCC).

8.     The terms "Defendant," "You," "Your," and "Rabita," shall refer to Rabita Trust, including any subsidiary, affiliate, and/or branch office anywhere in the world, and any officer, director, trustee, employee, attorney, consultant, accountant, agent, or representative acting on Rabita Trust's behalf.

9.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

10.     The term "person" is defined as any natural person or any business, legal or government entity or association, sovereign state or juridical entity.

11.     The terms "concerning," "related to" and "relating to" are interchangeable and mean constituting, comprising, containing, describing, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, or referring to, directly or indirectly.

12.     The terms "all" and "each" shall be construed as all and each.

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.    The use of the singular form of any word includes the plural and vice versa.

15.    The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, transferring, and/or providing of money, checks, services, logistical or administrative support, assets, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat.".

16.    The term "Charity" or "Charities" shall mean and refer to ostensibly charitable, benevolent, and/or non-profit associations, organizations or other such entities, including subsidiaries or branch offices thereof.

17.    The term "material support or resources," as defined by 18 U.S.C. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets or support, except medicine or religious materials.

18.    The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial  jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

19.     The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

20.     The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

21.     The terms "Muslim World League" or "MWL" shall mean the Muslim World League, Rabita al Alam Al-Islami, and Islamic World League, including any subsidiary, affiliate, and/or branch thereof anywhere in the world.

22.     The terms "International Islamic Relief Organization" or "IIRO" shall mean the International Islamic Relief Organization, Islamic Relief Organization, Sanabel Al-Kheer and/or Success Foundation, including any subsidiary, affiliate, and/or branch thereof anywhere in the world.

### PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS TO RABITA TRUST

#### Part A

A. 1.   Provide all documents relating to all financial accounts in the Habib Bank held by Rabita or any Habib Bank accounts over which Rabita holds or has held signatory authority, including but not limited to, monthly or annual reports, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, and investments including the source or destination of funds deposited into or withdrawn from any such account.  This request includes, but is not limited to, Account No. 9707-1 and Account No. 9536-3, at Habib Bank, Islamabad.

**ANSWER:**


A. 2.   Provide all documents relating to all financial accounts held by, or over which Rabita or their employees, officers, or directors held signatory authority, jointly with or on behalf of Osama Bin Laden or any member of the Bin Laden family, including but not limited to monthly or annual accounts statements, correspondence, deposits, withdrawals, cleared or cancelled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER**


A. 3.   Provide all documents relating to any internal or external audit, analysis, examination, or review of Rabita's financial accounts, investments, assets, capital, and/or financial affairs conducted either by employees of Habib Bank or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**

A. 4.    Provide all documents relating to the financial accounts and books, and a list of employees with dates of hire and termination, title, job responsibilities and place of employment, of Rabita.

**ANSWER:**


A. 5.    Provide all documents relating to any meetings of officers, directors, trustees, managers, boards, committees, and/or internal bodies of Rabita, including without limitation, any agendas or meeting minutes.

**ANSWER:**


A. 6.    Provide all documents relating to any investments made within the United States ("American Investments") on Rabita's behalf, including but not limited to those made on Your behalf by its directors, executives, officers, trustees, advisors, employees and/or members related corporations, partnerships, organizations, or trusts, or for Your benefit through a holding company, corporation, partnership, organization, trust or other entity, including, but not limited to, those investments made by or between You and the Carlyle Group.  Such American Investments shall include, but are not limited to, real estate ventures, stocks, bonds, treasury bills, mutual funds and/or municipal debt instruments.

**ANSWER:**


A. 7.    Provide all documents relating to any fundraising events and/or conferences that were held for the benefit of Rabita, including but not limited to those that were held in the United States, and/or those that were promoted, sponsored, organized, funded,

managed, supervised, or attended by the Kingdom of Saudi Arabia ("KSA") and/or

members of the Saudi family.

**ANSWER:**


A. 8.   Provide all documents relating to the relationship between You and the Muslim World

League ("MWL"), including but not limited to, any documents regarding the MWL's

involvement in the founding and organization of Rabita;  the oversight, supervision,

management, and/or control over Rabita's operations, including the nomination,

appointment, and termination of employees, officers and directors of Rabita;  the

funding or financing of Rabita;  the determination of which charitable designees should

receive support;  the actual distribution of financial and/or non-monetary support to

charitable designees, and any Rabita accounting, banking, financial transactions, and/or

fundraising.  Such documents shall also include, but are not limited to, correspondence,

meeting minutes, notes, conference materials, educational materials, organizational

diagrams and charts, manuals, emails, and web-based messages.

**ANSWER:**


A. 9.   Provide all documents identifying, describing, or otherwise relating to the transfer of

funds between You and the MWL.

**ANSWER:**


A. 10.   Provide all documents identifying, describing, or otherwise relating to the transfer of

funds between You and the International Islamic Relief Organization ("IIRO").

**ANSWER:**

A. 11.   Provide all documents governing, describing, detailing, or otherwise relating to the
relationship between You and the Taliban. This should include but not be limited to
documents regarding the provision of material support and the facilitating of the
movement of recruits for the Taliban from the refugee camps in Bangladesh.

**ANSWER:**

A. 12.   Provide all documents relating to the involvement of the MWL or the International
IIRO with the Taliban on Your behalf.

**ANSWER:**

A. 13.   Provide all documents relating to any joint activities undertaken among and between
You, the MWL and/or the IIRO in Bangladesh, Pakistan and Afghanistan, including
without limitation, any business, charitable, financial, and/or religious activities or
otherwise.

**ANSWER:**

A. 14.   Provide all documents relating to United States Treasury Department's investigation and
October 12, 2001 designation of Rabita as a Specially Designated Global Terrorist
Entity, including without limitation, any and all documents identifying all of Rabita's
accounts, assets, and monies that were frozen per the October 12, 2001 designation.

**ANSWER:**

A. 15.   Provide any and all documents relating to the United Kingdom's investigation and October 2001 determination to freeze Rabita's assets due to ties to terrorism, including without limitation, any and all documents identifying all of Rabita's accounts, assets, and monies that were frozen per the October 2001 designation.

**ANSWER:**

A. 16.   Provide all documents relating to investigations or inquiries conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), including investigations or inquiries into financial accounts and/or transactions linked to accounts held solely or jointly by Rabita or where Rabita has or has had signatory authority.

**ANSWER:**

A. 17.   Provide any and all documents relating to the United Nations' investigation and July 8, 2002 determination, pursuant to United Nations Resolution 1390, to ban Rabita and freeze its funds due to ties to terrorism, including without limitation, any and all documents identifying all of Rabita's accounts, assets, and monies that were frozen per the July 8, 2002 designation.

**ANSWER:**

A. 18.   Provide all documents relating to any sanction or designation imposed upon You by any agency, department or other instrumentality of the United States, the United Nations, or any other nation or international body.

**ANSWER:**


A. 19.   Provide all copies of all documents and things that have been seized by, or produced by Rabita to, any investigators, auditors, governmental officials or agencies, and/or international bodies concerning Your alleged financial improprieties or support for, or connections with, alleged terrorist organizations, groups, individuals, or activities.

**ANSWER:**


A. 20.   From the date of the founding of Rabita, provide all documents, including but not limited to employee or office records, communications with, or material support provided to any person or entity listed at any time as a Specially Designated Global Terrorist, by the United States Department of Treasury.

**ANSWER:**


A. 21.   Provide all documents relating to any investigations or inquiries of Rabita undertaken by the People's Republic of Bangladesh, relating to allegations of Your support or ties to terrorism including, without limitation, all documents relating to the closure of Rabita's office in Bangladesh.

**ANSWER:**

A. 22.  Provide all documents relating to the Islamic Republic of Pakistan's investigation and subsequent determination to freeze any and all accounts in the name of Rabita, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Islamic Republic of Pakistan, including the following: (a) Rabita Trust (A/C 9254.0) Rs 15,789.53 HBL-Super Market Br. Lahore; (b) Rabita Trust, (A/C 925.7) Rs 352.20 HBL-Super Market Br. Lahore; (c) Rabita Trust (for stranded Pakistanis) (A/C No. 9536-2 and 10206-4 TDR) Rs 807.921.46 HBL Sectt "A" Block Islamabad.

**ANSWER:**


A. 23.  Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any Rabita subsidiary, affiliate, branch office, officer, director, trustee, board member, committee member, manager, agent, employee, and/or other representative as a result of financial irregularities, suspicious activities, investigations into possible links to the financing or other material support of terrorist organizations, and/or the support of violence or violent jihad.

**ANSWER:**


A. 24.  Provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted by Rabita concerning the acceptance and/or distribution of monetary donations, which are currently being used or were used to prevent or deter financial crimes such as money laundering or the facilitation of terrorism financing.

**ANSWER:**

A. 25.   From the date of Your formation to the present, provide all documents relating to Your employment and/or other relationship with Osama Bin Laden, Ayman al Zawahiri, Mohamed al Zawahiri, Wa'el Hamza Jelaidan, Enaam Arnaout, Mohamed Jamal Khalifa, Ihab Mahammad Ali, Sulaiman Al Ali, Syed Abu Nasr, Wali Khan Amin Shah, Sheikh Abdel Majid Zindani, Wadih el Hage, Abdullah Azzam, Osman Ahmed, Abu Mohamed al Maqdisi, and Amin Aqeel Attas.

**ANSWER:**


A. 26.   Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that You, or any employee or person associated with You, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR
PRODUCTION OF DOCUMENTS TO RABITA TRUST**

**Part B**

B. 1.    Provide all documents illustrating, describing or otherwise relating to Your formation

and organizational structure, the date of incorporation, the state of incorporation, the

duration of Your existence, any documents relating to Your initial capitalization and

subsequent funding, and/or any other writing relating to the creation or purpose of

Rabita.

**ANSWER:**

B. 2.    Provide all documents relating to the administration, governance, and long-term strategic

decision-making of Rabita, including but not limited to, articles of incorporation, by-

laws, corporate charters, mission statements, constitutions, documents relating to the

duties and powers of any boards and/or committees, statements of purpose, and/or any

other related writing.

**ANSWER:**

B. 3.    Provide all documents relating to the establishment, duties, obligations, objectives,

membership, composition and/or authority of any committees, boards and/or internal

bodies of Rabita.

**ANSWER:**

B. 4.    Provide all documents identifying each officer, director, trustee, board member, and/or committee member of Rabita, including without limitation, any and all documents relating to their appointment, resignation, and/or termination.

**ANSWER:**

B. 5.    Provide all documents relating to Your ownership or business interest, whether direct or indirect, in any corporations, partnerships, organizations, businesses or other entities domiciled in the United States ("American Entity"), and/or records relating to Your position as a director, executive, officer, trustee, advisor, investor, shareholder and/or member of any American Entity.

**ANSWER:**

B. 6.    Provide all documents relating to commercial, residential property or other property You purchased, rented, leased, occupied, resided in, conducted business in, conducted business, charitable, and/or religious affairs in, or otherwise used in the United States or its territories, whether directly or indirectly, including but not limited to, businesses, homes, apartments, offices, schools, mosques, prayer centers, social centers and/or community centers.

**ANSWER:**

B. 7.    Provide all documents relating to all accounts in United States banking institutions ("U.S. Bank Accounts") held by You, and/or any U.S. Bank Accounts over which You hold or have held signatory authority.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or

reflect communications between or among You and the U.S. banking institution; monthly account statements; annual account statements; account notices; deposits; withdrawals; deposit slips; check stubs; cleared or canceled checks; cashier checks; money orders; debit/credit memos; financial ledgers; journals; investment records; real estate records; records of assets; loan records; audit work papers; audit reports; wire transfers; and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.  Please provide an authorization for production of the identified records directly from each institution for the period beginning January 1990 through the present.

**ANSWER:**

B. 8.   Provide all documents relating to all accounts in foreign banking institutions ("Foreign Bank Accounts") held by You, and/or any Foreign Bank Accounts over which You hold or have held signatory authority.  Such documents shall include, but are not limited to, those specified in Request #7.  Please provide an authorization for production of the identified records directly from each institution for the period beginning January 1990 through the present.

**ANSWER:**

B. 9.   Provide all documents relating to those individuals whom You hired to provide You with professional services at a time when those individuals were located in the United States ("Professional Service Providers") including, but not limited to, lawyers, accountants, auditors, financial investment advisors, public relations advisors, lobbyists, marketing advisors, and/or charitable advisors.

**ANSWER:**

B. 10.   Provide all documents relating to advertising, marketing, or promotional activities conducted by You in the United States.  Such documents shall include, but are not limited to, books, newsletters, newspapers, magazines, pamphlets, brochures, press releases, websites, and speeches, including the texts, broadcasts, audiotapes, and/or videotapes of such speeches.

**ANSWER:**

B. 11.   From the period beginning January 1, 1990 through September 11, 2002, please provide any and all statements for bank accounts held by Rabita.

**ANSWER:**

B. 12.   Provide any and all financial statements, balance sheets, income statements and annual reports for Rabita.

**ANSWER:**

B. 13.   Provide all documents relating to any filing submitted by Rabita to any local, state, and/or federal agency, including without limitation, the U.S. Internal Revenue Service or the U.S. Securities Exchange Commission.  Such documents shall include, but are not limited to, tax returns, tax records, Form 990's, Form 1023's, CMIR's, UCC filings, liens, judgments, and any correspondence concerning Rabita.

**ANSWER:**

B. 14.   Provide all documents relating to any audit, analysis, examination, or review of Rabita's investments, assets, capital, and/or financial affairs conducted either by employees of Rabita or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**

B. 15.   From the period beginning January 1, 1990 through September 11, 2001, provide all documents identifying projects undertaken or financed by Rabita, including without limitation, any and all documents summarizing the funds allocated by Rabita to such projects.

**ANSWER:**

B. 16.   Provide all documents relating to any fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by Rabita, including but not limited to any such events held in the United States. Such documents shall include, but are not limited to, advertisements, promotional materials, invitations to the event, press releases issued in connection with the event, lists of sponsors and attendees, documents identifying the purpose of the fundraiser or conference, materials distributed at the event, written receipts and/or records of the monies collected, written receipts and/or records of how those monies were used and/or distributed, lists of donors, lists of speakers, videos or slides shown at the event, and transcripts, broadcasts, audiotape and/or videotapes of the event.

**ANSWER:**


B. 17.  Provide all pleadings, motions, correspondence (other than attorney-client communications), discovery materials, experts' reports, orders, opinions, verdict sheets, and trial exhibits relating to any legal proceeding in which Rabita has instituted a civil action or been named as a defendant in any action, in the United States, either in State court or Federal court, within the past ten years. For each action, such documents shall include, but are not limited to, the title, case number, name of the court in which the action was instituted, the nature of the claim(s) sued upon, and whether the court determined that the court had jurisdiction over You.

**ANSWER:**


B. 18.  Provide all documents relating to any understanding or agreement with any defendant named in the consolidated civil action, 03 MD 1570, whereby You have agreed to pay, indemnify, or reimburse any of their costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against such defendant. Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**


B. 19.  Provide all documents relating to any understanding or agreement between Rabita and any other individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse Rabita for any costs associated with defending this lawsuit,

including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against Rabita.  Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**


B. 20.   Provide all documents relating to the role of any official, committee, or board of the MWL in the fundraising efforts of Rabita worldwide.

**ANSWER:**


B. 21.   Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the IIRO.

**ANSWER:**


B. 22.   Provide all documents relating to the role of any official, committee, or board of the IIRO in the fundraising efforts of Rabita worldwide, or vice versa.

**ANSWER:**


B. 23.   Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the KSA, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs; the Ministry for Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura Council), and the Ministry of Education.

**ANSWER:**

B. 24.   Provide all documents sent to and/or received from the KSA, including without

limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs;

the Ministry for Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of

Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and

Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura

Council), and the Ministry of Education.

**ANSWER:**

B. 25.   Provide all documents governing, describing, detailing or otherwise relating to the

relationship between Rabita and any embassy or consulate of the KSA, including without

limitation, the Islamic Affairs Division of the embassy or consulate.

**ANSWER:**

B. 26.   Provide all documents sent to and/or received from any embassy or consulate of the

KSA, including without limitation, the Islamic Affairs Division of the embassy or

consulate.

**ANSWER:**

B. 27.   Provide all documents governing, describing, detailing or otherwise relating to Rabita's

role in spreading, propagating, or proselytizing Islam outside of the KSA, including

without limitation any long term strategy, studies or papers.

**ANSWER:**

B. 28.   Provide all documents governing, describing, detailing or otherwise relating to Rabita's

role in advancing the foreign policy objectives of the KSA.

**ANSWER:**


B. 29.   Provide all documents relating to all accounts in any United States, Pakistani, Saudi

Arabian, or foreign banking institution You hold or have held jointly with the KSA, any

members of the Saudi royal family, and/or any Saudi official acting on behalf of the

KSA ("KSA Joint Bank Accounts"), and/or any KSA Joint Bank Accounts over which

You hold or have held signatory authority.

**ANSWER:**


B. 30.   Provide all documents relating to the role of the KSA and/or members of the Saudi

royal family, in the creation, organization, funding, oversight, supervision, operation,

and/or management of Rabita, including any subsidiary, affiliate, and/or branch office.

**ANSWER:**


B. 31.   Provide all documents relating to Rabita's initial capitalization and any subsequent

funding provided by the KSA, members of the Saudi royal family, and/or any other

individuals or entities, including without limitation, any funding provided by the KSA to

Rabita through the MWL.

**ANSWER:**

B. 32.   Provide all documents defining, establishing, or relating to Rabita's privileges,

obligations, activities, and/or rights under the laws of the KSA.

**ANSWER:**


B. 33.   Provide all documents relating to any and all laws, statutes, regulations, ordinances, royal

decrees, or directives issued by the KSA relating to Rabita, including but not limited to,

documents relating to the organization, funding, oversight, supervision, management,

and/or control over Rabita's operations, appointment and termination of personnel,

accounting, banking and financial transactions, fundraising, determination of which

charitable designees should receive support, and/or actual distribution of financial and

non-monetary support to charitable designees.

**ANSWER:**


B. 34.   Provide all documents relating to any meeting between officers or representatives of

Rabita and any official or agency of the KSA.

**ANSWER:**


B. 35.   From the period beginning January 1988 through the present, provide all documents

governing, describing, detailing, or otherwise relating to the relationship between Rabita

and the Islamic Republic of Pakistan, including without limitation, any and all documents

relating to Rabita's initial capitalization and any subsequent funding provided by the

Islamic Republic of Pakistan, and the appointment of Pakistani government officials as

Rabita officers, directors, board or committee members, benefactors, or otherwise.

**ANSWER:**

B. 36.   Provide all documents relating to President Pervez Musharraf's relationship with Rabita, including without limitation, any and all documents relating to President Musharraf's decision to terminate his relationship with Rabita after September 11, 2001.

**ANSWER:**


B. 37.   From the period beginning September 12, 2001 through the present, provide all documents relating to any audit, analysis, examination, or review of Rabita's accounts, financial statements, assets, investments, capital, and/or financial affairs, conducted either by employees of Rabita, the Pakistani government, or any third party, including but not limited to, any private firm, bank, financial institution, accountant, or auditor.

**ANSWER:**


B. 38.   Provide all documents relating to any meeting between officers or representatives of Rabita and any official or agency of the Islamic Republic of Pakistan.

**ANSWER:**


B. 39.   From the period beginning January 1990 through 2002, provide all documents relating to the transfer of funds between You and the Taliban.

**ANSWER:**


B. 40.   Provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and Wael Julaidan, including without limitation, all documents

relating to any positions Julaidan has held within Rabita, Julaidan's appointment as Rabita's Director General and as a member of Rabita's Board of Directors.

**ANSWER:**

B. 41.   Provide all documents relating to Julaidan's supervision, management, control of, or distribution of Rabita funds, including without limitation, all documents relating to Julaidan's duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from Rabita and the purpose for such disbursements.

**ANSWER:**

B. 42.   Provide all documents relating to Julaidan's relationship with the Saudi Embassy in Pakistan, including all documents exchanged between Julaidan and the Saudi Embassy.

**ANSWER:**

B. 43.   Provide all documents relating to any investigation conducted by Rabita into any alleged criminal, improper, unauthorized, or terrorist activities of Julaidan.

**ANSWER:**

B. 44.   Provide all documents relating to any investigation conducted by Rabita into Julaidan's alleged ties to terrorism.

**ANSWER:**

B. 45.  Provide all documents relating to the United States Treasury Department's September 6, 2002 determination to designate Julaidan a terrorist, freeze his assets, and name him "one of the founders of al Qaida."

ANSWER:

B. 46.  Provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and the persons identified in Exhibit A.

ANSWER:

B. 47.  Provide all documents sent to, and/or received from the persons identified in Exhibit A, including without limitation, all documents relating to the transfer of funds between You and those persons.

ANSWER:

B. 48.  Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the entities identified in Exhibit B. In the event that any Rabita subsidiary, affiliate, and/or branch office shared office space with any of the entities identified in Exhibit B, please provide such documents.

ANSWER:

B. 49.  From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from the entities identified in Exhibit B, including without limitation, all documents relating to the transfer of funds between You and those entities.

**ANSWER:**

B. 50.   From the date of Rabita's formation to the present, provide all documents relating to any business, financial, charitable, religious or other relationship between Osama Bin Laden (including any member of the Bin Laden family) and Rabita.

**ANSWER:**

B. 51.   Provide all documents sent to and/or received from Osama Bin Laden or any member of the Bin Laden family, including without limitation, all documents relating to the transfer of funds between Rabita, Osama Bin Laden, and/or any member of the Bin Laden family.

**ANSWER:**

B. 52.   Provide all documents relating to any Rabita accounts held jointly with Osama Bin Laden (including any member of the Bin Laden family) or on his behalf, including without limitation, any Rabita accounts over which Osama Bin Laden and/or any member of the Bin Laden family held or holds signatory authority.

**ANSWER:**

B. 53.   Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and Mohammed Jamal Khalifa.

**ANSWER:**

B. 54.   Provide all documents sent to, and/or received from Mohammed Jamal Khalifa,

including without limitation, all documents relating to the transfer of Rabita funds.

**ANSWER:**


B. 55.   Provide all documents relating to the involvement of Rabita in the struggle against the

Soviet occupation of Afghanistan during the 1980s.

**ANSWER:**


B. 56.   Provide all documents relating to Rabita's role in providing material support or

resources, directly or indirectly, to the mujihadeen forces in Afghanistan in their struggle

against Soviet occupation during the 1980s.

**ANSWER:**


B. 57.   From the period beginning January 1984 through 2002, provide all documents relating to

Rabita's role in providing material support or resources, directly or indirectly, to any

camps, sites, or facilities in Afghanistan, Pakistan, Kashmir, or elsewhere, where any

form of training was provided relative to combat, military tactics or operations, weapons,

reconnaissance, explosives, self-defense, or related activities.

**ANSWER:**


B. 58.   Provide all documents governing, describing, detailing or otherwise relating to any

relationship between Rabita and the World Council of Jihad, including without

limitation, all documents relating to Rabita's involvement in the formation, organization,

initial capitalization and subsequent funding of the World Council of Jihad.

**ANSWER:**

B. 59.  Provide all documents governing, describing, detailing or otherwise relating to any

relationship between Rabita and Maktab al Khidmat (a/k/a the Office of Services).

**ANSWER:**

B. 60.  Provide all documents sent to, and/or received from the Maktab al Khidmat, including

without limitation, all documents relating to the transfer of funds between Rabita and

Maktab al Khidmat.

**ANSWER:**

B. 61.  Provide all documents governing, describing, detailing or otherwise relating to any

relationship between Rabita and Pakistani nuclear scientists Sultan Bashiruddin

Mehmood and Abul Majid, including without limitation, all documents relating to the

transfer of funds between Rabita and the scientists.

**ANSWER:**

B. 62.  Provide all documents relating to any Rabita accounts held jointly with Sultan

Bashiruddin Mehmood and/or Abul Majid, or on their behalf, including any Rabita

accounts over which Mehmood and/or Majid held or hold signatory authority.

**ANSWER:**

B. 63.  Provide all documents authored, published, or disseminated by Rabita relating to the

conflicts, crises or conditions facing Muslim communities in Kosovo, Albania, Algeria,

Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine,
Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan,
Bangladesh, United States, and Egypt.

**ANSWER:**

B. 64.   Provide all documents relating to fundraising activities conducted by Rabita in relation to
relief or humanitarian efforts, or other operations, in Kosovo, Albania, Algeria, Bosnia &
Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine, Turkey,
Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan, Bangladesh,
United States and Egypt.

**ANSWER:**

B. 65.   Provide all interviews, statements or speeches by representatives of Rabita regarding the
conflicts, crises or conditions facing Muslim communities in Kosovo, Albania, Algeria,
Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine,
Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan,
Bangladesh, United States and Egypt.

**ANSWER:**

B. 66.   Provide all documents discussing the legitimacy of any armed jihad or resistance by
Muslims in Kosovo, Albania, Algeria, Bosnia & Herzegovina, Kashmir, Chechnya,
Sudan, Somalia, Afghanistan, Palestine, Turkey, Indonesia, Malaysia, the Philippines,
Yemen, Kenya, Tanzania, Pakistan, Bangladesh, United States and Egypt.

**ANSWER:**

B. 67.  Provide all documents relating to Rabita's relationship with, sponsorship, funding, and construction of mosques and madrasas in Pakistan and Afghanistan, including without limitation, all documents relating to documents sent to and/or received from shari'a boards from any such mosque or madrasas.

**ANSWER:**

B. 68.  Provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted and followed by Rabita by which charitable contributions are either made to and/or raised by You, how those contributions are collected and accounted for, how it is determined to which charitable designees financial or other forms of support should be distributed, the means by which financial or other forms of support are subsequently disbursed to charitable designees, and the means to ensure that such distributions are being used for charitable purposes.

**ANSWER:**

B. 69.  Provide all documents relating to the involvement of any official, trustee, committee, or board of the MWL in determining how funds collected by Rabita should be allocated and/or in the distribution of funds collected by Rabita.

**ANSWER:**

B. 70.  From the period beginning January 1990 through September 11, 2001, please provide any and all summaries of contributions received and/or disbursements made by Rabita.

**ANSWER:**

B. 71.   Provide all information contained in any database maintained by Rabita identifying or relating to the sources of funds contributed to Rabita, and/or the destination of funds distributed by Rabita.

**ANSWER:**


B. 72.   Provide all documents relating to all relationships Rabita has with banks or financial institutions located in the United States, United Kingdom, Saudi Arabia, Pakistan, Afghanistan, Bangladesh, including without limitation, all documents relating to the transfer of funds.

**ANSWER:**


B. 73.   Provide all documents sent to and/or received from shari'a boards of any entity including businesses, banks, mosques, and/or charities.

**ANSWER:**


B. 74.   Provide all documents sent to and/or received from the Saudi Department of Zakat and Income Tax and the Saudi Arabian Monetary Authority.

**ANSWER:**


B. 75.   Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in the sponsorship of any radical, extremist or terrorist activities or organizations.

**ANSWER:**

B. 76.   Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal or corrupt activities.

**ANSWER:**

B. 77.   Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any military, radical or terrorist activity, plot or attack.

**ANSWER:**

B. 78.   Provide all documents sent to and/or received from any third party relating to the alleged involvement of Rabita, or any employee or person associated with Rabita, in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

B. 79.   Provide all documents relating to the alleged involvement of any Islamic charity or charities in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

B. 80.  Provide all documents in Your possession or control relating in any way to Your meetings, correspondence, statements, or other communications concerning terrorism or terrorist financing.

**ANSWER:**

B. 81.  Provide all documents relating to any internal investigation by Rabita into any alleged criminal, corrupt, or extremist activities of any employee or person associated with Rabita, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

B. 82.  Provide all documents sent to, and/or received from the MWL, relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

B. 83.  Provide all documents sent to, and/or received from, the KSA, relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

B. 84.   Provide all documents sent to, and/or received from, the KSA, relating to any accusation that any Islamic charity or charities, or employee or person associated with any Islamic charity or charities, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**


B. 85.   Provide all copies of any documents and things that have been seized by, or produced by Rabita to, any investigators, auditors, and/or government agencies concerning Rabita's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities.

**ANSWER:**


B. 86.   Provide all documents relating to any action taken by Rabita to prevent criminal activities, including the sponsorship of terrorist or radicals, by persons employed by, or affiliated with Rabita or any of its branch offices.

**ANSWER:**


B. 87.   Provide all documents relating to any action undertaken by Rabita to remove or purge radical or corrupt elements or individuals from Rabita's branch offices.

**ANSWER:**


B. 88.   Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any individual as a result of financial irregularities,

suspicious activities, investigations into possible links to the financing of terrorist

organizations, and/or the support of violence or jihad.

**ANSWER:**


B. 89.   Provide all documents relating to any disciplinary action taken, or any decision to

terminate any relationship with any Islamic charity, benevolent association, Rabita

supporter, donor, supplier, contributor, facilitator, speakers, foreign government

supporters, business supporters, or banks as a result of financial irregularities, suspicious

activities, investigations into possible links to the financing of terrorist organizations,

and/or the support of violence or jihad.

**ANSWER:**


B. 90.   Provide copies of any and all laws, statutes, regulations, ordinances, or royal decrees

which Rabita understands or interprets as prohibiting or having prohibited Rabita from:

(i) engaging in conduct unrelated to their ostensible charitable or humanitarian purposes,

including without limitation, diverting funds or otherwise providing material support or

resources to Islamic radicals, fundamentalists, extremists or persons or organizations

associated with international terrorism or domestic terrorism; and/or (ii) providing

material support or resources to al Qaida, other terrorist organizations and/or

individuals sympathetic to al Qaida or other terrorist organizations.

**ANSWER:**


B. 91.   Provide all documents relating to all information or notification You received prior to

September 11, 2001, that any subsidiary, affiliate, or branch office of Rabita, including

any officer, director, trustee, board member, committee member, manager, agent,

employee, or representative of Rabita, may have been or was engaging in conduct

unrelated to Rabita's ostensible charitable or humanitarian purposes, including without

limitation, diverting funds or otherwise providing material support or resources to: (i)

Islamic radicals, fundamentalists, extremists or persons or organizations associated with

international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist

organizations and/or individuals sympathetic to al Qaida or other terrorist organizations,

regardless of whether you believe such person(s) was acting within the scope of his

employment in relation to any such activities.

**ANSWER:**

B. 92.   Provide all documents relating to all information or notification You received prior to

September 11, 2001, that any persons identified Exhibit A may have been or were

engaging in conduct unrelated to their ostensible charitable or humanitarian purposes,

including without limitation, diverting funds or otherwise providing material support or

resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations

associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other

terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist

organizations, regardless of whether you believe such person(s) was acting within the

scope of his employment in relation to any such activities.

**ANSWER:**

B. 93.   Provide all documents relating to any and information or notification You received prior

to September 11, 2001, that al Qaida aspired to conduct terrorist attacks: (i) against the

United States and its interests abroad, (ii) against the United States within its borders,

and/or (iii) against New York City and the World Trade Center complex, Washington

D.C. or other U.S. landmarks.

**ANSWER:**


B. 94.   Provide an electronic or paper copy of all websites and/or web-pages that were ever

operated by Rabita and/or its worldwide subsidiaries, affiliates, or branch offices, but

not limited to, copies of all documents or electronic information related to all e-mail

servers, webmasters, website designers, service providers, registrars, chat rooms, data

centers, web servers, web hosts, IP addresses, domain name service, domain names, and

registration of domain names.

**ANSWER:**


B. 95.   Provide all documents relating to any "web links" that any Rabita website(s) have to

other internet websites, web-pages and/or chat rooms.  Such documents shall include,

but are not limited to, the reason or purpose for the link, how the decision was made to

add such a link to the website, whether Rabita received any compensation for

maintaining the link, and the content of the linked internet website, web page or chat

room.

**ANSWER:**


B. 96.   Provide any internal regulations, rules, or protocols relating to web-links, e-mail, and

website uses.

**ANSWER:**

B. 97.   Provide all electronically-stored materials which relate to the subject matter of the
documents and things described herein including: (i) data files created by a word
processor, spreadsheet or other application software; (ii) databases and structural
information about the databases, including network activity logs and audit trails; (iii)
electronic calendars and telephone logs; whether this information exists on a network file
server, main frame computer, mini-computer, stand-alone personal computer, network
workstation, off-line data-storage media, including back-ups and archives, floppy
diskettes, tapes and other removable electronic media.

**ANSWER:**

B. 98.   Provide all literature, publications, newspapers, newsletters, books, reports, pamphlets,
video recordings, audio recordings, websites, public relations materials, educational
materials, religious materials, charitable materials, fundraising materials, political
materials, or any other documents authored, published, financed, or otherwise
disseminated, in whole or in part by Rabita, an agent of Rabita, or any entity formed by,
funded by, or on the behalf of, or in the name of, Rabita.

**ANSWER:**

B. 99.   Provide a copy of all Rabita "document retention" policies, plans, or programs.

**ANSWER:**

B. 100. Provide all records or documents relating to the destruction of documents, including
descriptions of all documents destroyed by Rabita.

**ANSWER:**

B. 101.  Provide all indexes, electronic databases or other documents that detail, describe, or

catalog, either individually or generally, the documents and materials stored in any Rabita

office, branch, subsidiary, and/or third-party facility used by Rabita for storage.

**ANSWER:**


B. 102.  Provide all indices, electronic databases or other documents that detail or describe, in

whole or in part, any system(s) or methodologies pursuant to which documents or other

materials in any Rabita office, branch, subsidiary, and/or third-party facility used by

Rabita  for storage, are organized.

**ANSWER:**


B. 103.  Provide all documents relating to travel by Rabita to the United States for any purpose,

including but not limited to, investment purposes, business affairs, meetings with

banking and financial institutions, speeches, conferences, charitable events, fundraisers,

educational events, religious events, legal matters, sporting events or personal affairs.

**ANSWER:**


B. 104.  Provide all documents relating to Your support or sponsorship of U.S. educational

institutions.

**ANSWER:**

B. 105. Provide copies of all reports, correspondence and records from any expert expected to
testify at trial which relate to the subject matter of this case.  Such documents shall
include, but are not limited to, all expert reports and all documents reviewed and relied
upon by any expert expected to testify at trial.

**ANSWER:**

B. 106. Provide each exhibit that You intend to rely upon at trial.

**ANSWER:**

Dated:  Charleston, South Carolina

June 15, 2006

MOTLEY RICE LLC

By: _____/s/_____
       Ronald L. Motley, Esq.
       Jodi Westbrook Flowers, Esq.
       Donald A. Migliori, Esq.
       Michael E. Elsner, Esq
       Robert T. Haefele, Esq.
       Justin B. Kaplan, Esq
       28 Bridgeside Boulevard
       P.O. Box 1792
       Mount Pleasant, SC 29465
       Telephone:  (843) 216-9000

HANLY CONROY BIERSTEIN
& SHERIDAN LLP

By: _____/s/_____
       Paul J. Hanly, Jr., Esq.
       Jayne Conroy, Esq.
       Andrea Bierstein, Esq.
       112 Madison Avenue

New York, NY 10016-7416
Telephone:  (212) 784-6400

KREINDLER & KREINDLER, LLP

By: _____/s/_____
     Marc S. Moller, Esq.
     James P. Kreindler, Esq.
     Justin T. Green, Esq.
     Andrew J. Maloney, Esq.
     100 Park Avenue
     New York, New York 10017
     Telephone: (212) 973-3486
     Facsimile: (212) 972-9432

COZEN O'CONNOR

By: _____/s/_____
     Steven  A. Cozen, Esq.
     Elliott R. Feldman, Esq.
     Sean P. Carter, Esq.
     J. Scott Tarbutton, Esq.
     1900 Market Street
     Philadelphia, Pennsylvania 19103
     Phone: (215) 655-2000

## EXHIBIT A

Abdel Hadi Taher
Abdel Qadir Bakri
Abdul Rahman Abdul Aziz Al Suwailim
Abdullah Ahmed Abdullah (a/k/a Abu Mohmaed al Masry)
Abdullah al Obaid
Abdullah Omar Naseef
Abu Hudhaifa
Abu Hajer al Iraqi (a/k/a Mandouh Salim)
Abu Mohamed al Maqdisi (a/k/a/ Mohamed Taher al Barqawi)
Abu Rida al Suri (a/k/a Mohammed Loay Bayazid)
Abu Ubaidah al Banshiri
Abu Zubaydah
Adel Abdul Jalil Batterjee
Ahmed Hussain Shameet
Ahmed Totonji
Ali Mohamed
Amin Aqeel Attas
Arafat El Asahi
Bashiruddin Mohmoud
Chafiq Ayadi
Dr. Ayman Al Zawahiri
Enaam Aranout
Hasan Cengic
Hassan Bahafzallah
Ihab Mahammad Ali
Izzat Yasin
Jamal Barzinji
M. Yaqub Mirza
Mamdouth Mahmud Salim (a/k/a Abu Hajer)
Mohamed al Zawahiri
Mohammed Jamal Khalifa
Mohammed Atef
Mohammed Suleiman al Nalfi
Mohamed Atta
Muhsin Musa Matwalli Atwah (a/k/a Abdel Rahman al Muhajer)
Mustapha Hamza
Osama Bin Laden
Saif al Adel
Salehuddin Abdel Jawad
Seik Ajadi
Sheikh Abdel Majid Zindani
Sheikh Abdullah Azzam
Suleiman al Rashid
Syed Abu Nasr
Talat Fouad Qasim
Wadih el Hage
Yassin Abdullah al Qadi

# EXHIBIT B

Advice and Reformation Committee
Afghan Support Committee
African Muslim Agency
Akida Bank Private Limited
Akida Investment Co. Ltd.
Al Aqsa Mosque Foundation
Al-Baraka Bancorp, Inc.
Al Baraka Investment & Development Corporation
Al Barakaat Exchange LLC
Al Bir Saudi Organization
Al Faisaliah Group
Al Gama'a al Islamiyya (a/k/a "The Islamic Group")
Al Haramain
Al Haramain Islamic Foundation
Al Kifah Refugee Center
Al Masadah (a/k/a the "Lion's Den")
Al Masjed Al Aqsa Charity Foundation
Al Qaeda
Al Rajhi Banking & Investment
Al Rashid Trust
Al Shamal Islamic Bank
Al Taqwa Trade, Property and Industry Company Limited
Al Watania Poultry
American Muslim Foundation
Arab Bank
Arab Bank PLC
Aradi, Inc.
ASAT Trust
ASAT Trust Reg.
BA Taqwa for Commerce and Real Estate Company Limited
Bait-ul-Ansar (a/k/a the "Mujahadeen Services Bureau" or "House of Helpers")
Bank Al-Taqwa Limited
Barakaat International Foundation
Benevolence International Foundation
Blessed Relief Foundation
Bosanka Idealna Futura
Egyptian Islamic Jihad
Dar Al Maal Al Islami Trust
DMI Administrative Services S.A.
Dubai Islamic Bank
Global Relief Foundation a/k/a Muwafaq
Global Services International a/k/a Foundation Secours Mondial
Grove Corporate, Inc.
Heritage Education Trust

Hizb-ul Mujahidin
Ibrahim Bin Abdulaziz Al Ibrahim Foundation
International Institute of Islamic Thought
International Islamic Relief Organization
Islamic Development Bank
Islamic African Relief Agency
Islamic Assembly of North America
Islamic Investment Company
Jam'Yah Ta'Awun Al Islamia
Makkah al-Mukarramah Charity Trust, Inc.
Maktab al Khidmat (a/k/a the "Office of Services")
Mar-Jac Investments, Inc.
Mar-Jac Poultry, Inc.
Mena Investment Inc.
Mercy International Relief Agency
Muslim Brotherhood
Muslim Student's Association
Muslim World League
National Commercial Bank
North American Islamic Trust
Reston Investments, Inc.
Rohinhgya Solidarity Organization
Saar Foundation
Saar International
Safa Trust
Sanabel Al-Kheer, Inc.
Sanabil Al-Khair
Sana-Bell, Inc.
Saudi American Bank
Saudi High Commission for Aid to Bosnia
Saudi Joint Relief Committee
Saudi Red Crescent
Saudi Red Crescent Committee
Somalia International Relief Organization
Sterling Charitable Gift Fund
Sterling Management Group, Inc.
Success Foundation
Tadamon Islamic Bank
Taibah International Aid Association
The Aid Organization of the Ulema
The Committee for the Defense of Legitimate Rights
Umma Reconstruction
University of Arizona
Wafa Humanitarian Organization
World Assembly of Muslim Youth
York Foundation

# Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) |
|---|---|
| | ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)
*Kathleen Ashton v. Al Qaeda Islamic Army*, Case No. 02-CV-6977 (RCC) (S.D.N.Y.)
*Thomas E. Burnett, Sr. v. Al Baraka Investment & Development Corp.*, Case No. 03-CV-9849 (RCC) (S.D.N.Y.)
*Estate of John P. O'Neill, Sr., et al v. International Islamic Relief Organization. et al.*, 04 CV 01923 (RCC)

## RABITA TRUST'S RESPONSES TO THE PLAINTIFFS' FIRST SET OF REQUESTS "PART A" FOR PRODUCTION OF DOCUMENTS

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:       202-862-4343
Facsimile:   202-828-4130

*Attorney for Rabita Trust*

Pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"), Defendant Rabita

Trust (hereinafter "RT"), by and through its undersigned attorneys, respond to Plaintiffs' First

Request for Production of Documents Part A (hereinafter "Production Requests").

In furnishing these responses and in producing documents in connection herewith, RT

does not admit or concede the relevance, materiality, authenticity or admissibility in evidence of

any such responses or documents.  All objections to the use, at hearing or otherwise, of any of

these responses or documents produced in connection herewith are expressly reserved.

## GENERAL OBJECTIONS

RT makes the following General Objections to Plaintiffs' Production Requests:

1.      RT is providing this response and producing documents without waiver of or
prejudice to its right, at any later time, to raise objections to (a) the relevance, materiality, or
admissibility of (i) the Production Requests or any part thereof, (ii) statements made in this
response to the Production Requests or any part thereof, or (iii) any document produced pursuant
to this response, or (b) any further demand for discovery involving or relating to the matters
raised in the Production Requests.

2.      RT undertakes to produce documents in response to the Production Requests only
to the extent required by the FRCP and Case Management Orders from Judge Casey.  RT objects
to the "Instructions and Definitions" contained in the Production Requests to the extent they
exceed or conflict with those Rules.

3.      RT objects to the Production Requests to the extent that they demand production
of any document covered by the attorney-client privilege or the work product doctrine, or any
other applicable privilege.  In the event that RT produces any privileged document, its
production is inadvertent and does not constitute a waiver of any privilege.

4.      Due to the fact that Plaintiffs' have served RT with numerous document requests
and given the limited time available for RT to respond, the production set forth below is based
upon information now available to RT as to any files in its possession, custody, or control that
reasonably relate to one or more of the specific requests contained in the Production Requests.
RT objects to the Production Requests to the extent they purport to demand production of
documents not in RT's possession, custody, or control or require a search of files that do not
reasonably relate to one or more of the specific requests contained in the Production Requests.
Further, RT reserves the right at any time to revise, correct, add to, or clarify the specific
responses set forth below and the production made pursuant thereto.

2

5.     In the responses to specific Production Requests that follow, the statement that this case is still ongoing and the fact that RT reserves the right to supplement discovery in the future does <u>not</u> mean (a) that any such documents exist or (b) that they are in the possession, custody, or control of RT.

6.     RT objects to the Production Requests to the extent they purport to demand production of any documents containing confidential, proprietary, commercial, or financial information in the absence of a suitable and mutually agreeable protective order mandating that the confidentiality of such documents be preserved and maintained.

7.     RT objects to the production of any documents falling within one of the general objections set forth above or within one of the specific objections set forth below.  In the event RT produces any document falling within such an objection, its production does not constitute waiver of the objection.  The responses to the specific Production Requests are subject to the general responses and objections set forth in Paragraphs 1-7.

## SPECIFIC OBJECTION

RT makes the following Specific Objection to Plaintiffs' First Request for Production of

Documents:

1.     RT undertakes to produce documents from 1996 – present and any request that seeks documents prior to 1996 is hereby objected to and will not be produced.  RT cites rulings from both Judge Casey and Magistrate Maas as support for this objection.  Judge Casey's ruling in <u>Terrorist Attacks II</u> appears to suggest that 1996 is the year when an individual or entity would have sufficient knowledge concerning Osama Bin Laden's fatwa or evil intentions toward the U.S. and eventually the 9/11 attacks.  <u>See</u> <u>Terror Attacks II</u>, 2005 U.S. Dist. LEXIS 20841, at *65 (S.D.N.Y. Sept. 21, 2005).  Judge Maas's recent Discovery Order also appears to suggest that a "six-year look-back" period of time for discovery in this Terrorist Attacks litigation is appropriate.  J. Maas, Op. at 6 (July 28, 2006) (discussing "six-year look-back" period of time for discovery relating to National Commercial Bank).

2.     RT specifically objects to the breadth and overreaching scope of Plaintiffs' Jurisdictional Discovery Requests.  Only in the spirit of good faith RT provides responsive documents to said requests.  By producing any of the documents contained in the enclosed CD, RT in no way waives this objection.  Moreover, any written response that entertains what RT interprets as a substantive request rather than a jurisdiction related request does not waive this objection either.

3

## PRODUCTION REQUESTS

**REQUEST A1:**

Provide all documents relating to all financial accounts in the Habib Bank held by Rabita or any Habib Bank accounts over which Rabita holds or has held signatory authority, including but not limited to, monthly or annual reports, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, and investments including the source or destination of funds deposited into or withdrawn from any such account. This request includes, but is not limited to, Account No. 9707-1 and Account No. 9536-3, at Habib Bank, Islamabad.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces a responsive document at RT PTA 012.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[1]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A2:**

Provide all documents relating to all financial accounts held by, or over which Rabita or their employees, officers, or directors held signatory authority, jointly with or on behalf of Osama Bin Laden or any member of the Bin Laden family, including but not limited to monthly or annual accounts statements, correspondence, deposits, withdrawals, cleared or cancelled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

---

[1] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

4

RT reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A3:

Provide all documents relating to any internal or external audit, analysis, examination, or review of Rabita's financial accounts, investments, assets, capital, and/or financial affairs conducted either by employees of Habib Bank or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission." Contained within said CD RT produces responsive documents at RT PTA 012 and 019. To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[2] To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A4:

Provide all documents relating to the financial accounts and books, and a list of employees with dates of hire and termination, title, job responsibilities and place of employment, of Rabita.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission." Contained within said CD RT produces responsive documents at RT PTA 006, 016, and 018. To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[3] To the extent the enclosed CD

---

[2] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

[3] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co.*

5

does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A5:

Provide all documents relating to any meetings of officers, directors, trustees, managers, boards, committees, and/or internal bodies of Rabita, including without limitation, any agendas or meeting minutes.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[4]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A6:

Provide all documents relating to any investments made within the United States ("American Investments") on Rabita's behalf, including but not limited to those made on Your behalf by its directors, executives, officers, trustees, advisors, employees and/or members related corporations, partnerships, organizations, or trusts, or for Your benefit through a holding company, corporation, partnership, organization, trust or other entity, including, but not limited to, those investments made by or between You and the Carlyle Group. Such American Investments shall include, but are not limited to, real estate ventures, stocks, bonds, treasury bills, mutual funds and/or municipal debt instruments.

---

*Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

[4] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A. F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[5]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A7:**

Provide all documents relating to any fundraising events and/or conferences that were held for the benefit of Rabita, including but not limited to those that were held in the United States, and/or those that were promoted, sponsored, organized, funded, managed, supervised, or attended by the Kingdom of Saudi Arabia ("KSA") and/or members of the Saudi family.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[6]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

---

[5]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

[6]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

**REQUEST A8:**

Provide all documents relating to the relationship between You and the Muslim World League ("MWL"), including but not limited to, any documents regarding the MWL's involvement in the founding and organization of Rabita; the oversight, supervision, management, and/or control over Rabita's operations, including the nomination, appointment, and termination of employees, officers and directors of Rabita; the funding or financing of Rabita; the determination of which charitable designees should receive support; the actual distribution of financial and/or non-monetary support to charitable designees, and any Rabita accounting, banking, financial transactions, and/or fundraising. Such documents shall also include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, emails, and web-based messages.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections _supra_.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission." Contained within said CD RT produces responsive documents. To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[7] To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A9:**

Provide all documents identifying, describing, or otherwise relating to the transfer of funds between You and the MWL.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections _supra_.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission." Contained within said CD RT produces

---

[7] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [_A. F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[8]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A10:

Provide all documents identifying, describing, or otherwise relating to the transfer of funds between You and the International Islamic Relief Organization ("IIRO").

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[9]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A11:

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Taliban. This should include but not be limited to documents regarding the provision of material support and the facilitating of the movement of recruits for the Taliban from the refugee camps in Bangladesh.

## ANSWER:

No documents will be produced as RT neither has knowledge of and/or possession of any such documents.

---

[8] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [_A.F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

[9] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [_A.F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A12:**

Provide all documents relating to the involvement of the MWL or the International IIRO with the Taliban on Your behalf.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A13:**

Provide all documents relating to any joint activities undertaken among and between You, the MWL and/or the IIRO in Bangladesh, Pakistan and Afghanistan, including without limitation, any business, charitable, financial, and/or religious activities or otherwise.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[10]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

---

[10]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

10

**REQUEST A14:**

Provide all documents relating to United States Treasury Department's investigation and October 12, 2001 designation of Rabita as a Specially Designated Global Terrorist Entity, including without limitation, any and all documents identifying all of Rabita's accounts, assets, and monies that were frozen per the October 12, 2001 designation.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents at RT PTA 012 and 013.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[11]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A15:**

Provide any and all documents relating to the United Kingdom's investigation and October 2001 determination to freeze Rabita's assets due to ties to terrorism, including without limitation, any and all documents identifying all of Rabita's accounts, assets, and monies that were frozen per the October 2001 designation.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents at this time.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

---

[11]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [_A. F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

**REQUEST A16:**

Provide all documents relating to investigations or inquiries conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), or any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), including investigations or inquiries into financial accounts and/or transactions linked to accounts held solely or jointly by Rabita or where Rabita has or has had signatory authority.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD. [12]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A17:**

Provide any and all documents relating to the United Nations' investigation and July 8, 2002 determination, pursuant to United Nations Resolution 1390, to ban Rabita and freeze its funds due to ties to terrorism, including without limitation, any and all documents identifying all of Rabita's accounts, assets, and monies that were frozen per the July 8, 2002 designation.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents at this time.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

---

[12]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

**REQUEST A18:**

Provide all documents relating to any sanction or designation imposed upon You by any agency, department or other instrumentality of the United States, the United Nations, or any other nation or international body.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD. [13]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A19:**

Provide all copies of all documents and things that have been seized by, or produced by Rabita to, any investigators, auditors, governmental officials or agencies, and/or international bodies concerning Your alleged financial improprieties or support for, or connections with, alleged terrorist organizations, groups, individuals, or activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD. [14]  To the extent the enclosed CD does not answer this

---

[13]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

[14]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co.*

13

Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A20:

From the date of the founding of Rabita, provide all documents, including but not limited to employee or office records, communications with, or material support provided to any person or entity listed at any time as a Specially Designated Global Terrorist, by the United States Department of Treasury.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections _supra_.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD. [15]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A21:

Provide all documents relating to any investigations or inquiries of Rabita undertaken by the People's Republic of Bangladesh, relating to allegations of Your support or ties to terrorism including, without limitation, all documents relating to the closure of Rabita's office in Bangladesh.

## ANSWER:

No documents will be produced as RT neither has knowledge of and/or possession of any such documents at this time.

---

_Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

[15]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [_A.F.Ferguson & Co._ _Chartered Accountants – Islamabad, Pakistan_] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

14

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A22:

Provide all documents relating to the Islamic Republic of Pakistan's investigation and subsequent determination to freeze any and all accounts in the name of Rabita, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Islamic Republic of Pakistan, including the following: (a) Rabita Trust (A/C 9254.0) Rs 15,789.53 HBL-Super Market Br. Lahore; (b) Rabita Trust, (A/C 925.7) Rs 352.20 HBL-Super Market Br. Lahore; (c) Rabita Trust (for stranded Pakistanis) (A/C No. 9536-2 and 10206-4 TDR) Rs 807.921.46 HBL Sectt "A" Block Islamabad.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[16]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST A23:

Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any Rabita subsidiary, affiliate, branch office, officer, director, trustee, board member, committee member, manager, agent, employee, and/or other representative as a result of financial irregularities, suspicious activities, investigations into possible links to the financing or other material support of terrorist organizations, and/or the support of violence or violent jihad.

---

[16]  RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [A.F. Ferguson & Co. Chartered Accountants – Islamabad, Pakistan] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002.  The Audit Report covers all the accounts and financial documents of the trust.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[17]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A24:**

Provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted by Rabita concerning the acceptance and/or distribution of monetary donations, which are currently being used or were used to prevent or deter financial crimes such as money laundering or the facilitation of terrorism financing.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all our objections, RT provides Plaintiffs with a CD titled "First Document Production Submission."  Contained within said CD RT produces responsive documents.  To the extent additional documents on the enclosed CD answer this Request, please see the enclosed CD.[18]  To the extent the enclosed CD does not answer this Request, Plaintiff reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A25:**

From the date of Your formation to the present, provide all documents relating to Your

---

[17] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

[18] RT notes that RT PTA 19 is an unofficial copy of an Audit Report which was ordered by The Government of Pakistan. The Government of Pakistan hired a Chartered Accountant Firm [*A.F.Ferguson & Co. Chartered Accountants – Islamabad, Pakistan*] to conduct a detailed audit on the accounts and operation of Rabita Trust during 2002. The Audit Report covers all the accounts and financial documents of the trust.

employment and/or other relationship with Osama Bin Laden, Ayman al Zawahiri, Mohamed al Zawahiri, Wa'el Hamza Jelaidan, Enaam Arnaout, Mohamed Jamal Khalifa, Ihab Mahammad Ali, Sulaiman Al Ali, Syed Abu Nasr, Wali Khan Amin Shah, Sheikh Abdel Majid Zindani, Wadih el Hage, Abdullah Azzam, Osman Ahmed, Abu Mohamed al Maqdisi, and Amin Aqeel Attas.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents at this time.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST A26:**

Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that You, or any employee or person associated with You, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**

No documents will be produced as RT neither has knowledge of and/or possession of any such documents at this time.

In addition, RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

RT reserves the right to supplement this answer as discovery in this case is ongoing.

## DEFENDANT'S DECLARATION

I declare under penalty of perjury that the above answers to Plaintiffs' Requests for Production of Documents are true and correct to the best of my knowledge, information and belief.

Respectfully Submitted,

_____          _____
Wael Jelaidan                            Date
Secretary General for the Rabita Trust


By Counsel,

**MARTIN F. MCMAHON & ASSOCIATES**


_____/s/_____
Martin F. McMahon
1150 Connecticut Ave. N.W., Suite 900
Washington, DC 20036
Telephone: (202) 862-4343
Facsimile: (202) 828-4130

*Attorney for Rabita Trust*

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of August, 2006, a copy of the foregoing Answers to Plaintiffs' Requests for Production were mailed, postage pre-paid to:

Mr. Sean P. Carter, Esq.
Cozen O'Connor
1900 Market St.
Philadelphia, Pa. 19103-3508

Andrew J. Maloney III, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

Robert T. Haefele, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
P.O. Box 1792 (29465)
Mount Pleasant, SC 29464

_____/s/_____
Lisa D. Angelo, Esq.

19

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) |
| | ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)
*Kathleen Ashton v. Al Qaeda Islamic Army*, Case No. 02-CV-6977 (RCC) (S.D.N.Y.)
*Thomas E. Burnett, Sr. v. Al Baraka Investment & Development Corp.*, Case No. 03-CV-9849
(RCC) (S.D.N.Y.)
*Estate of John P. O'Neill, Sr., et al v. International Islamic Relief Organization. et al.*, *04 CV
01923 (RCC)*

## RABITA TRUST'S RESPONSES TO THE PLAINTIFFS' FIRST SET OF REQUESTS "PART B" FOR PRODUCTION OF DOCUMENTS

Martin F. McMahon, Esq.
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue NW
Suite 900
Washington, DC 20036
Phone:        202-862-4343
Facsimile:    202-828-4130

*Attorney for Rabita Trust*

Pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"), Rabita Trust (hereinafter "RT"), by and through his undersigned attorneys, respond to Plaintiffs' First Request for Production of Documents "Part B" (hereinafter "Requests").

In furnishing these responses and in producing documents in connection herewith, RT does not admit or concede the relevance, materiality, authenticity or admissibility in evidence of any such responses or documents. All objections to the use, at hearing or otherwise, of any of these responses or documents produced in connection herewith are expressly reserved.

Because these responses are a continuation of RT's responses to the first half or "Part A" of the Plaintiffs' requests, all the General and Specific Objections previously made are incorporated by reference here. RT does, however, submit three additional Specific Objections.

## SPECIFIC OBJECTION

1. RT specifically objects to any reading of the following answers to Plaintiffs' production requests as being responsive, corroborative of, or otherwise compared to the answers provided by Wael Jelaidan. Any response which may differ or not respond in concert with a response provided by the Wael Jelaidan should not be a point of consideration or construed as an admission, denial, waiver, or corroboration by RT as to Wael Jelaidan and vice versa.

2. Given that at best only ten (10) of the 106 document requests sought in Plaintiffs' "Part B" Requests relate to or regard alleged activity in America, RT again objects to the breadth and overreaching scope of Plaintiffs' alleged Jurisdictional Discovery Requests. Only in the spirit of good faith RT provides responsive documents to said requests. By producing any documents contained in the enclosed CD, RT does not waive this objection. Moreover, any courtesy response that entertains what RT interprets as a substantive request rather than a jurisdiction related request does not waive this objection either.

2

3.  RT specifically objects to Plaintiffs' requests for financial and/or banking records or statements on relevance grounds. Since the first quarter of 1994 (approximately) RT has been a dormant charity, i.e., no documents sought for the relevant time frame, 1996 – 2001, exist.[1]

## PRODUCTION REQUESTS

### REQUEST B1:

Provide all documents illustrating, describing or otherwise relating to Your formation and organizational structure, the date of incorporation, the state of incorporation, the duration of Your existence, any documents relating to Your initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of Rabita.

### ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

### REQUEST B2:

Provide all documents relating to the administration, governance, and long-term strategic decision-making of Rabita, including but not limited to, articles of incorporation, bylaws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

### ANSWER:

---

[1]  Undersigned counsel has recently retained a Pakistani attorney who is endeavoring to secure further information about RT's activities.  Should said attorney's efforts turn up relevant information pertinent to Plaintiffs' requests, RT will supplement its responses to Plaintiffs' requests for production.

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B3:**

Provide all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of Rabita.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B4:**

Provide all documents identifying each officer, director, trustee, board member, and/or committee member of Rabita, including without limitation, any and all documents relating to their appointment, resignation, and/or termination.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant

states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B5:

Provide all documents relating to Your ownership or business interest, whether direct or indirect, in any corporations, partnerships, organizations, businesses or other entities domiciled in the United States ("American Entity"), and/or records relating to Your position as a director, executive, officer, trustee, advisor, investor, shareholder and/or member of any American Entity.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

No such documents exist because RT has never had any ownership or business interest direct or otherwise in an American entity.

## REQUEST B6:

Provide all documents relating to commercial, residential property or other property You purchased, rented, leased, occupied, resided in, conducted business in, conducted business, charitable, and/or religious affairs in, or otherwise used in the United States or its territories, whether directly or indirectly, including but not limited to, businesses, homes, apartments, offices, schools, mosques, prayer centers, social centers and/or community centers.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

No such documents exist because RT has never engaged in any activities described in this request in the United States or its territories.

## REQUEST B7:

Provide all documents relating to all accounts in United States banking institutions ("U.S. Bank Accounts") held by You, and/or any U.S. Bank Accounts over which You hold or have held signatory authority. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or

reflect communications between or among You and the U.S. banking institution; monthly account statements; annual account statements; account notices; deposits; withdrawals; deposit slips; check stubs; cleared or canceled checks; cashier checks; money orders; debit/credit memos; financial ledgers; journals; investment records; real estate records; records of assets; loan records; audit work papers; audit reports; wire transfers; and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts. Please provide an authorization for production of the identified records directly from each institution for the period beginning January 1990 through the present.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never had bank accounts in any U.S. Banking institution and it does not hold and has never held signature authority for bank accounts in the U.S.

**REQUEST B8:**

Provide all documents relating to all accounts in foreign banking institutions ("Foreign Bank Accounts") held by You, and/or any Foreign Bank Accounts over which You hold or have held signatory authority. Such documents shall include, but are not limited to, those specified in Request #7. Please provide an authorization for production of the identified records directly from each institution for the period beginning January 1990 through the present.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B9:**

Provide all documents relating to those individuals whom You hired to provide You with professional services at a time when those individuals were located in the United

States ("Professional Service Providers") including, but not limited to, lawyers, accountants, auditors, financial investment advisors, public relations advisors, lobbyists, marketing advisors, and/or charitable advisors.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never hired or attempted to hire individuals to render professional services who are located in the United States.  To the extent this request encompasses the retainer agreement that the undersigned lawfirm has with RT, it will not be produced in light of the obvious attorney client privilege.

**REQUEST B10:**

Provide all documents relating to advertising, marketing, or promotional activities conducted by You in the United States. Such documents shall include, but are not limited to, books, newsletters, newspapers, magazines, pamphlets, brochures, press releases, websites, and speeches, including the texts, broadcasts, audiotapes, and/or videotapes of such speeches.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never engaged in any advertisement, marketing, or promotional activities in the United States.

**REQUEST B11:**

From the period beginning January 1, 1990 through September 11, 2002, please provide any and all statements for bank accounts held by Rabita.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant

7

states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B12:

Provide any and all financial statements, balance sheets, income statements and annual reports for Rabita.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B13:

Provide all documents relating to any filing submitted by Rabita to any local, state, and/or federal agency, including without limitation, the U.S. Internal Revenue Service or the U.S. Securities Exchange Commission. Such documents shall include, but are not limited to, tax returns, tax records, Form 990's, Form 1023's, CMIR's, UCC filings, liens, judgments, and any correspondence concerning Rabita.

## ANSWER:

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

No such documents exist because RT has never made any filings with any local state and/or federal agency in the United States.

## REQUEST B14:

Provide all documents relating to any audit, analysis, examination, or review of Rabita's investments, assets, capital, and/or financial affairs conducted either by employees of Rabita or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B15:**

From the period beginning January 1, 1990 through September 11, 2001, provide all documents identifying projects undertaken or financed by Rabita, including without limitation, any and all documents summarizing the funds allocated by Rabita to such projects.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B16:**

Provide all documents relating to any fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by Rabita, including but not limited to any such events held in the United States. Such documents shall include, but are not limited to, advertisements, promotional materials, invitations to the event, press releases issued in connection with the event, lists of sponsors and attendees, documents identifying the purpose of the fundraiser or conference, materials distributed at the event, written receipts and/or records of the monies collected, written receipts and/or records of how those monies were used and/or distributed, lists of donors, lists of speakers, videos or slides shown at the event, and transcripts, broadcasts, audiotape and/or videotapes of the event.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never engaged in any such fundraising events and/or conferences in the United States.  Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B17:**

Provide all pleadings, motions, correspondence (other than attorney-client communications), discovery materials, experts' reports, orders, opinions, verdict sheets, and trial exhibits relating to any legal proceeding in which Rabita has instituted a civil action or been named as a defendant in any action, in the United States, either in State court or Federal court, within the past ten years. For each action, such documents shall include, but are not limited to, the title, case number, name of the court in which the action was instituted, the nature of the claim(s) sued upon, and whether the court determined that the court had jurisdiction over You.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never engaged in any litigation in the United States.

**REQUEST B18:**

Provide all documents relating to any understanding or agreement with any defendant named in the consolidated civil action, 03 MD 1570, whereby You have agreed to pay, indemnify, or reimburse any of their costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against such defendant. Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

No such documents exist because RT has no such understanding or agreement with any Defendant named in the consolidated civil action whether to pay, indemnify, or reimburse.

**REQUEST B19:**

Provide all documents relating to any understanding or agreement between Rabita and any other individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse Rabita for any costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against Rabita. Such documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

No such documents exist because RT has no such understanding or agreement with any Defendant named in the consolidated civil action whether to pay, indemnify, or reimburse.

**REQUEST B20:**

Provide all documents relating to the role of any official, committee, or board of the MWL in the fundraising efforts of Rabita worldwide.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B21:**

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the IIRO.

11

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B22:**

Provide all documents relating to the role of any official, committee, or board of the IIRO in the fundraising efforts of Rabita worldwide, or vice versa

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B23:**

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the KSA, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs; the Ministry for Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura Council), and the Ministry of Education.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B24:**

Provide all documents sent to and/or received from the KSA, including without limitation, the following agencies of the KSA: the Supreme Council of Islamic Affairs; the Ministry for Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura Council), and the Ministry of Education.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B25:**

Provide all documents governing, describing, detailing or otherwise relating to the relationship between Rabita and any embassy or consulate of the KSA, including without limitation, the Islamic Affairs Division of the embassy or consulate.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B26:**

Provide all documents sent to and/or received from any embassy or consulate of the KSA, including without limitation, the Islamic Affairs Division of the embassy or consulate.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B27:**

Provide all documents governing, describing, detailing or otherwise relating to Rabita's role in spreading, propagating, or proselytizing Islam outside of the KSA, including without limitation any long term strategy, studies or papers.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B28:**

Provide all documents governing, describing, detailing or otherwise relating to Rabita's role in advancing the foreign policy objectives of the KSA.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B29:**

Provide all documents relating to all accounts in any United States, Pakistani, Saudi Arabian, or foreign banking institution You hold or have held jointly with the KSA, any members of the Saudi royal family, and/or any Saudi official acting on behalf of the KSA ("KSA Joint Bank Accounts"), and/or any KSA Joint Bank Accounts over which You hold or have held signatory authority.

15

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B30:**

Provide all documents relating to the role of the KSA and/or members of the Saudi royal family, in the creation, organization, funding, oversight, supervision, operation, and/or management of Rabita, including any subsidiary, affiliate, and/or branch office.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B31:**

Provide all documents relating to Rabita's initial capitalization and any subsequent funding provided by the KSA, members of the Saudi royal family, and/or any other individuals or entities, including without limitation, any funding provided by the KSA to Rabita through the MWL.

16

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B32:**

Provide all documents defining, establishing, or relating to Rabita's privileges, obligations, activities, and/or rights under the laws of the KSA.

**ANSWER:**

RT objects to this request on relevancy grounds and renews specific objection #2 from its responses in Part A of Plaintiffs' requests.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B33:**

Provide all documents relating to any and all laws, statutes, regulations, ordinances, royal decrees, or directives issued by the KSA relating to Rabita, including but not limited to, documents relating to the organization, funding, oversight, supervision, management, and/or control over Rabita's operations, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, determination of which charitable designees should receive support, and/or actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome.  RT further renews the specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

## REQUEST B34:

Provide all documents relating to any meeting between officers or representatives of Rabita and any official or agency of the KSA.

## ANSWER:

RT objects to this request on relevancy grounds and renews specific objection #2 from its responses in Part A of Plaintiffs' requests.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

## REQUEST B35:

From the period beginning January 1988 through the present, provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the Islamic Republic of Pakistan, including without limitation, any and all documents relating to Rabita's initial capitalization and any subsequent funding provided by the Islamic Republic of Pakistan, and the appointment of Pakistani government officials as Rabita officers, directors, board or committee members, benefactors, or otherwise.

## ANSWER:

RT objects to this request on relevancy grounds and renews all specific objections.

## REQUEST B36:

Provide all documents relating to President Pervez Musharraf's relationship with Rabita, including without limitation, any and all documents relating to President Musharraf's decision to terminate his relationship with Rabita after September 11, 2001.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B37:**

From the period beginning September 12, 2001 through the present, provide all documents relating to any audit, analysis, examination, or review of Rabita's accounts, financial statements, assets, investments, capital, and/or financial affairs, conducted either by employees of Rabita, the Pakistani government, or any third party, including but not limited to, any private firm, bank, financial institution, accountant, or auditor.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews the specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B38:**

RT objects to this request on relevancy grounds and renews all specific objections.

**ANSWER:**

RT objects to this request on relevancy grounds and renews specific objection #2 from its responses in Part A of Plaintiffs' requests.

**REQUEST B39:**

From the period beginning January 1990 through 2002, provide all documents relating to

the transfer of funds between You and the Taliban.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews the specific objections <u>supra</u>.

No such documents exist because RT has never had any such relationship with the Taliban.

**REQUEST B40:**

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and Wael Julaidan, including without limitation, all documents relating to any positions Julaidan has held within Rabita, Julaidan's appointment as Rabita's Director General and as a member of Rabita's Board of Directors.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B41:**

Provide all documents relating to Julaidan's supervision, management, control of, or distribution of Rabita funds, including without limitation, all documents relating to Julaidan's duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from Rabita and the purpose for such disbursements.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B42:**

Provide all documents relating to Julaidan's relationship with the Saudi Embassy in Pakistan, including all documents exchanged between Julaidan and the Saudi Embassy.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections. To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B43:**

Provide all documents relating to any investigation conducted by Rabita into any alleged criminal, improper, unauthorized, or terrorist activities of Julaidan.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B44:**

Provide all documents relating to any investigation conducted by Rabita into Julaidan's alleged ties to terrorism.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B45:**

Provide all documents relating to the United States Treasury Department's September 6, 2002 determination to designate Julaidan a terrorist, freeze his assets, and name him "one of the founders of al Qaida."

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B46:**

Provide all documents governing, describing, detailing, or otherwise relating to the

relationship between You and the persons identified in Exhibit A.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature because you have alleged that persons identified in Exhibit A have ties to international terrorism. RT has no ties to international terrorism and further renews his specific objections supra.

RT further objects to this request on grounds that it is a multiple document request ostensibly portrayed as a single document request.

Despite the foregoing and preserving all our objections, RT states that no responsive documents will be produced because both the timeframe and breadth of this request is much too expansive and burdensome. Should Plaintiffs identify a reasonable amount of specific individuals and a reasonable and relevant timeframe, RT will endeavor to focus a search that may or may not produce documents responsive to this request.

**REQUEST B47:**

Provide all documents sent to, and/or received from the persons identified in Exhibit A, including without limitation, all documents relating to the transfer of funds between You and those persons.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature because you have alleged that persons identified in Exhibit A have ties to international terrorism. RT has no ties to international terrorism and further renews his specific objections supra.

RT further objects to this request on grounds that it is a multiple document request ostensibly portrayed as a single document request.

Despite the foregoing and preserving all our objections, RT states that no responsive documents will be produced because both the timeframe and breadth of this request is much too expansive and burdensome. Should Plaintiffs identify a reasonable amount of specific individuals and a reasonable and relevant timeframe, RT will endeavor to focus a search that may or may not produce documents responsive to this request.

**REQUEST B48:**

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and the entities identified in Exhibit B. In the event that any

Rabita subsidiary, affiliate, and/or branch office shared office space with any of the entities identified in Exhibit B, please provide such documents.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature because you have alleged that entities identified in Exhibit B have ties to international terrorism. RT has no ties to international terrorism and further renews his specific objections supra.

RT further objects to this request on grounds that it is a multiple document request ostensibly portrayed as a single document request.

Despite the foregoing and preserving all our objections, RT states that no responsive documents will be produced because both the timeframe and breadth of this request is much too expansive and burdensome. Should Plaintiffs identify a reasonable amount of specific individuals and a reasonable and relevant timeframe, RT will endeavor to focus a search that may or may not produce documents responsive to this request.

**REQUEST B49:**

From the period beginning January 1990 through the present, please provide any and all documents sent to, and/or received from the entities identified in Exhibit B, including without limitation, all documents relating to the transfer of funds between You and those entities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature because you have alleged that entities identified in Exhibit B have ties to international terrorism. RT has no ties to international terrorism and further renews his specific objections supra.

RT further objects to this request on grounds that it is a multiple document request ostensibly portrayed as a single document request.

Despite the foregoing and preserving all our objections, RT states that no responsive documents will be produced because both the timeframe and breadth of this request is much too expansive and burdensome. Should Plaintiffs identify a reasonable amount of specific individuals and a reasonable and relevant timeframe, RT will endeavor to focus a search that may or may not produce documents responsive to this request.

**REQUEST B50:**

From the date of Rabita's formation to the present, provide all documents relating to any business, financial, charitable, religious or other relationship between Osama Bin Laden (including any member of the Bin Laden family) and Rabita.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, unduly burdensome, and defamatory in nature because Osama Bin Laden sponsors international terrorism and RT neither has ties to international terrorism nor Osama Bin Laden. RT further renews all specific objections herein.

No such documents exist because RT has never had any such relationship with Osama Bin Laden.

**REQUEST B51:**

Provide all documents sent to and/or received from Osama Bin Laden or any member of the Bin Laden family, including without limitation, all documents relating to the transfer of funds between Rabita, Osama Bin Laden, and/or any member of the Bin Laden family.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, unduly burdensome, and defamatory in nature because Osama Bin Laden sponsors international terrorism and RT neither has ties to international terrorism or Osama Bin Laden. RT further renews all specific objections herein.

No such documents exist because RT has never had any such relationship with Osama Bin Laden.

**REQUEST B52:**

Provide all documents relating to any Rabita accounts held jointly with Osama Bin Laden (including any member of the Bin Laden family) or on his behalf, including without limitation, any Rabita accounts over which Osama Bin Laden and/or any member of the Bin Laden family held or holds signatory authority.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, unduly burdensome, and defamatory in nature because Osama Bin Laden sponsors international

terrorism and RT neither has ties to international terrorism nor Osama Bin Laden. RT further renews all specific objections herein.

No such documents exist because RT has never had any such relationship with Osama Bin Laden.

**REQUEST B53:**

Provide all documents governing, describing, detailing, or otherwise relating to the relationship between Rabita and Mohammed Jamal Khalifa.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections. No such documents exist because RT does not have and has never had any relationship with Mohammed Jamal Khalifa.

**REQUEST B54:**

Provide all documents sent to, and/or received from Mohammed Jamal Khalifa, including without limitation, all documents relating to the transfer of Rabita funds.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections. No such documents exist because RT does not have and has never had any relationship with Mohammed Jamal Khalifa.

**REQUEST B55:**

Provide all documents relating to the involvement of Rabita in the struggle against the Soviet occupation of Afghanistan during the 1980s.

**ANSWER:**

RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B56:**

Provide all documents relating to Rabita's role in providing material support or resources, directly or indirectly, to the mujihadeen forces in Afghanistan in their struggle

against Soviet occupation during the 1980s.

**ANSWER:**

     RT objects to this request on relevancy grounds and renews all specific objections.

**REQUEST B57:**

     From the period beginning January 1984 through 2002, provide all documents relating to Rabita's role in providing material support or resources, directly or indirectly, to any camps, sites, or facilities in Afghanistan, Pakistan, Kashmir, or elsewhere, where any form of training was provided relative to combat, military tactics or operations, weapons, reconnaissance, explosives, self-defense, or related activities.

**ANSWER:**

     RT objects to this request on grounds that it is overbroad, irrelevant, immaterial, and unduly burdensome. RT further renews all specific objections herein.

     No such documents exist because RT has never engaged in any such activities articulated in this request and does not support international terrorism.

**REQUEST B58:**

     Provide all documents governing, describing, detailing or otherwise relating to any relationship between Rabita and the World Council of Jihad, including without limitation, all documents relating to Rabita's involvement in the formation, organization, initial capitalization and subsequent funding of the World Council of Jihad.

**ANSWER:**

     RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

     Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B59:**

Provide all documents governing, describing, detailing or otherwise relating to any relationship between Rabita and Maktab al Khidmat (a/k/a the Office of Services).

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B60:**

Provide all documents sent to, and/or received from the Maktab al Khidmat, including without limitation, all documents relating to the transfer of funds between Rabita and Maktab al Khidmat.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B61:**

Provide all documents governing, describing, detailing or otherwise relating to any relationship between Rabita and Pakistani nuclear scientists Sultan Bashiruddin Mehmood and Abul Majid, including without limitation, all documents relating to the transfer of funds between Rabita and the scientists.

**ANSWER:**

27

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

No such documents exist because RT never had a relationship with the scientists referenced in this request.  Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B62:**

Provide all documents relating to any Rabita accounts held jointly with Sultan Bashiruddin Mehmood and/or Abul Majid, or on their behalf, including any Rabita accounts over which Mehmood and/or Majid held or hold signatory authority.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

No such documents exist because RT never held accounts or signatory authority with the scientists referenced in this request  Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B63:**

Provide all documents authored, published, or disseminated by Rabita relating to the conflicts, crises or conditions facing Muslim communities in Kosovo, Albania, Algeria, Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine, Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan, Bangladesh, United States, and Egypt.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B64:

Provide all documents relating to fundraising activities conducted by Rabita in relation to relief or humanitarian efforts, or other operations, in Kosovo, Albania, Algeria, Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine, Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan, Bangladesh, United States and Egypt.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST B65:

Provide all interviews, statements or speeches by representatives of Rabita regarding the conflicts, crises or conditions facing Muslim communities in Kosovo, Albania, Algeria, Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine, Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan, Bangladesh, United States and Egypt.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please

see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST B66:

Provide all documents discussing the legitimacy of any armed jihad or resistance by Muslims in Kosovo, Albania, Algeria, Bosnia & Herzegovina, Kashmir, Chechnya, Sudan, Somalia, Afghanistan, Palestine, Turkey, Indonesia, Malaysia, the Philippines, Yemen, Kenya, Tanzania, Pakistan, Bangladesh, United States and Egypt.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST B67:

Provide all documents relating to Rabita's relationship with, sponsorship, funding, and construction of mosques and madrasas in Pakistan and Afghanistan, including without limitation, all documents relating to documents sent to and/or received from shari'a boards from any such mosque or madrasas.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

## REQUEST B68:

Provide all documents relating to any standards, procedures, protocols, and/or

30

guidelines adopted and followed by Rabita by which charitable contributions are either made to and/or raised by You, how those contributions are collected and accounted for, how it is determined to which charitable designees financial or other forms of support should be distributed, the means by which financial or other forms of support are subsequently disbursed to charitable designees, and the means to ensure that such distributions are being used for charitable purposes.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST B69:**

Provide all documents relating to the involvement of any official, trustee, committee, or board of the MWL in determining how funds collected by Rabita should be allocated and/or in the distribution of funds collected by Rabita.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST B70:**

From the period beginning January 1990 through September 11, 2001, please provide any and all summaries of contributions received and/or disbursements made by Rabita.

**ANSWER:**

31

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant reserves the right to supplement this answer as discovery in this case is ongoing.

**REQUEST B71:**

Provide all information contained in any database maintained by Rabita identifying or relating to the sources of funds contributed to Rabita, and/or the destination of funds distributed by Rabita.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B72:**

Provide all documents relating to all relationships Rabita has with banks or financial institutions located in the United States, United Kingdom, Saudi Arabia, Pakistan, Afghanistan, Bangladesh, including without limitation, all documents relating to the transfer of funds.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections supra.

No documents exist pertaining to any banking or financial institution relationship that RT had in the United States.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production

Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B73:**

Provide all documents sent to and/or received from shari'a boards of any entity including businesses, banks, mosques, and/or charities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B74:**

Provide all documents sent to and/or received from the Saudi Department of Zakat and Income Tax and the Saudi Arabian Monetary Authority.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

33

**REQUEST B75:**

Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in the sponsorship of any radical, extremist or terrorist activities or organizations.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B76:**

Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal or corrupt activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B77:**

Provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any military, radical or terrorist activity, plot or attack.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B78:**

Provide all documents sent to and/or received from any third party relating to the alleged involvement of Rabita, or any employee or person associated with Rabita, in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B79:**

Provide all documents relating to the alleged involvement of any Islamic charity or charities in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B80:**

Provide all documents in Your possession or control relating in any way to Your meetings, correspondence, statements, or other communications concerning terrorism or terrorist financing.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B81:**

Provide all documents relating to any internal investigation by Rabita into any alleged criminal, corrupt, or extremist activities of any employee or person associated with Rabita, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

36

**REQUEST B82:**

Provide all documents sent to, and/or received from the MWL, relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B83:**

Provide all documents sent to, and/or received from, the KSA, relating to any accusation that Rabita, or any employee or person associated with Rabita, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B84:**

Provide all documents sent to, and/or received from, the KSA, relating to any accusation that any Islamic charity or charities, or employee or person associated with any Islamic charity or charities, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

To the extent that this request seeks information from the government of Saudi Arabia, it will not be produced due to Saudi Arabia's privileges pursuant to the immunity defense that it has successfully asserted herein

**REQUEST B85:**

Provide all copies of any documents and things that have been seized by, or produced by Rabita to, any investigators, auditors, and/or government agencies concerning Rabita's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B86:**

38

Provide all documents relating to any action taken by Rabita to prevent criminal activities, including the sponsorship of terrorist or radicals, by persons employed by, or affiliated with Rabita or any of its branch offices.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B87:**

Provide all documents relating to any action undertaken by Rabita to remove or purge radical or corrupt elements or individuals from Rabita's branch offices.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B88:**

Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any individual as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B89:**

Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any Islamic charity, benevolent association, Rabita supporter, donor, supplier, contributor, facilitator, speakers, foreign government supporters, business supporters, or banks as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B90:**

Provide copies of any and all laws, statutes, regulations, ordinances, or royal decrees which Rabita understands or interprets as prohibiting or having prohibited Rabita from: (i) engaging in conduct unrelated to their ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) providing material support or resources to al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature.  RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B91:**

Provide all documents relating to all information or notification You received prior to September 11, 2001, that any subsidiary, affiliate, or branch office of Rabita, including any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita, may have been or was engaging in conduct unrelated to Rabita's ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature because RT has not and does not support international terrorism.  RT neither has ties to both United States related international and/or domestic terrorism.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B92:**

41

Provide all documents relating to all information or notification You received prior to September 11, 2001, that any persons identified Exhibit A may have been or were engaging in conduct unrelated to their ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature because you have alleged that persons identified in Exhibit A have ties to international terrorism.  RT has no ties to international terrorism and further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B93:**

Provide all documents relating to any and information or notification You received prior to September 11, 2001, that al Qaida aspired to conduct terrorist attacks: (i) against the United States and its interests abroad, (ii) against the United States within its borders, and/or (iii) against New York City and the World Trade Center complex, Washington D.C. or other U.S. landmarks.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome, and defamatory in nature because RT has never had any relationship with Al Qaida.  RT does not support or sponsor international terrorism.  RT further renews his specific objections supra.

No such documents exist because RT has never had any relationship with Al Qaida.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please

see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B94:**

Provide an electronic or paper copy of all websites and/or web-pages that were ever operated by Rabita and/or its worldwide subsidiaries, affiliates, or branch offices, but not limited to, copies of all documents or electronic information related to all e-mail servers, webmasters, website designers, service providers, registrars, chat rooms, data centers, web servers, web hosts, IP addresses, domain name service, domain names, and registration of domain names.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

**REQUEST B95:**

Provide all documents relating to any "web links" that any Rabita website(s) have to other internet websites, web-pages and/or chat rooms. Such documents shall include, but are not limited to, the reason or purpose for the link, how the decision was made to add such a link to the website, whether Rabita received any compensation for maintaining the link, and the content of the linked internet website, web page or chat room.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

**REQUEST B96:**

Provide any internal regulations, rules, or protocols relating to web-links, e-mail, and website uses.

**ANSWER:**

43

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

## REQUEST B97:

Provide all electronically-stored materials which relate to the subject matter of the documents and things described herein including: (i) data files created by a word processor, spreadsheet or other application software; (ii) databases and structural information about the databases, including network activity logs and audit trails; (iii) electronic calendars and telephone logs; whether this information exists on a network file server, main frame computer, mini-computer, stand-alone personal computer, network workstation, off-line data-storage media, including back-ups and archives, floppy diskettes, tapes and other removable electronic media.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission".  To the extent the documents produced on said CD respond to this Request, please see said CD.  To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B98:

Provide all literature, publications, newspapers, newsletters, books, reports, pamphlets, video recordings, audio recordings, websites, public relations materials, educational materials, religious materials, charitable materials, fundraising materials, political materials, or any other documents authored, published, financed, or otherwise disseminated, in whole or in part by Rabita, an agent of Rabita, or any entity formed by, funded by, or on the behalf of, or in the name of, Rabita.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome.  RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B99:

Provide a copy of all Rabita "document retention" policies, plans, or programs.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections supra.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B100:

Provide all records or documents relating to the destruction of documents, including descriptions of all documents destroyed by Rabita.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, unduly burdensome and defamatory in nature. RT further renews his specific objections supra.

## REQUEST B101:

Provide all indexes, electronic databases or other documents that detail, describe, or catalog, either individually or generally, the documents and materials stored in any Rabita office, branch, subsidiary, and/or third-party facility used by Rabita for storage.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B102:

Provide all indices, electronic databases or other documents that detail or describe, in whole or in part, any system(s) or methodologies pursuant to which documents or other materials in any Rabita office, branch, subsidiary, and/or third-party facility used by Rabita for storage, are organized.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, irrelevant, immaterial, and unduly burdensome. RT further renews his specific objections <u>supra</u>.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

## REQUEST B103:

Provide all documents relating to travel by Rabita to the United States for any purpose, including but not limited to, investment purposes, business affairs, meetings with banking and financial institutions, speeches, conferences, charitable events, fundraisers, educational events, religious events, legal matters, sporting events or personal affairs.

## ANSWER:

RT objects to this request on grounds that it is overbroad, vague, and unduly burdensome. RT further renews his specific objections <u>supra</u>.

No such documents exist because RT has never traveled to the United States.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B104:**

Provide all documents relating to Your support or sponsorship of U.S. educational institutions.

**ANSWER:**

RT objects to this request on grounds that it is overbroad, vague, and unduly burdensome. RT further renews his specific objections supra.

No such documents exist because RT has never sponsored any U.S. educational institution.

Despite the foregoing and preserving all objections RT states that in its responses to Plaintiffs' "Part A" document requests RT produced a CD titled "First Document Production Submission". To the extent the documents produced on said CD respond to this Request, please see said CD. To the extent the documents on said CD do not respond to this Request, Defendant states that documents other than what has already been produced are either not known to, not available to, and/or not in the possession of Rabita Trust.

**REQUEST B105:**

Provide copies of all reports, correspondence and records from any expert expected to testify at trial which relate to the subject matter of this case. Such documents shall include, but are not limited to, all expert reports and all documents reviewed and relied upon by any expert expected to testify at trial.

**ANSWER:**

RT objects to this request as it is premature and completely irrelevant to obtaining discovery for the purpose of establishing jurisdiction.

**REQUEST B106:**

Provide each exhibit that You intend to rely upon at trial.

**ANSWER:**

RT objects to this request as it is premature and completely irrelevant to obtaining discovery for the purpose of establishing jurisdiction.

48

## DEFENDANT'S DECLARATION

I declare under penalty of perjury that the above answers to Plaintiffs' Requests for

Production of Documents are true and correct to the best of my knowledge, information and

belief.

Respectfully Submitted,

_____          _____
Rabita Trust                                                      Date
Secretary General for the Rabita Trust


By Counsel,

**MARTIN F. MCMAHON & ASSOCIATES**


_____
Martin F. McMahon
1150 Connecticut Ave. N.W., Suite 900
Washington, DC  20036
Telephone:  (202) 862-4343
Facsimile:  (202) 828-4130

*Attorney for Rabita Trust*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of September, 2006, a copy of the foregoing Answers to Plaintiffs' Requests for Production were mailed, postage pre-paid to:

Mr. Sean P. Carter, Esq.
Cozen O'Connor
1900 Market St.
Philadelphia, Pa. 19103-3508

Andrew J. Maloney III, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

Robert T. Haefele, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
P.O. Box 1792 (29465)
Mount Pleasant, SC 29464

Jerry Goldman, Esq.
Two Penn Center Plaza
1500 JFK Blvd., Suite 411
Philadelphia, PA 19102

_____/s/_____

Lisa D. Angelo, Esq.

# Exhibit C

PRIVILAGED INFORMATION.
CLIENT-ATTORNEY CORRESPONDENCE

# DECLARATION OF WAEL HAMZAH JELAIDAN
# SECRETARY-GENERAL OF THE RABITA TRUST

IN THE NAME OF GOD, THE MERCIFUL, THE COMPASSIONATE, I,
Wael Hamzah Jelaidan, state as follows:

1. I am the Secretary General of Rabita Trust.
2. My appointment date in the above position is 14 February 1999G.
3. My function as Secretary-General is to oversee the repatriation and
   rehabilitation process of the stranded Pakistanis in Bangladesh.
4. Rabita Trust is a charitable organization with its headquarters located in
   Islamabad, Pakistan.
5. Rabita Trust is an Islamic charitable organization created to organize the
   repatriation and rehabilitation of Pakistani (Biharis) refugees who were
   stranded in Bangladesh during the 1971 Indo-Pak war. The objective of the
   Rabita Trust is to construct approximately 40,000 housing units, and
   transport and rehabilitate around 40,000 families.
6. Rabita Trust only operates in Pakistan and has always been strictly limited to
   its objectives (i.e. rehabilitation and repatriation of the Stranded Pakistanis in
   Bangladesh)
7. The statements made in this declaration are based on that personal
   knowledge.
8. I understand that this declaration may be submitted to an American court in
   connection with a lawsuit that has been filed against Rabita Trust.
9. To the best of my knowledge, Rabita Trust (the organization) does not solicit
   or receive any donations from, or provide any relief to any person or entity
   within the United States of America.
10. To the best of my knowledge, Rabita Trust does not engage in any business
    with any person or entity located in the United States of America.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct. Executed on this 16th day of
September 2003.

Wael Hamzah Jelaidan

1

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| This document relates to: ) | |
| KATHLEEN ASHTON, et al., ) | |
| ) | |
| Plaintiffs, ) | CONSOLIDATED CIVIL ACTION |
| ) | NO. 02 CV 6977 |
| -against- ) | Judge Richard C. Casey |
| ) | |
| AL-QAEDA ISLAMIC ARMY, et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF WAEL HAMZAH JELAIDAN SECRETARY-GENERAL OF THE RABITA TRUST IN SUPPORT OF DEFENDANT RABITA TRUST'S MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED MASTER COMPLAINT

IN THE NAME OF GOD, THE MERCIFUL, THE COMPASSIONATE, I Wael Hamzah Jelaidan, state as follows:

1.      I am the Secretary-General of the Rabita Trust and I submit this declaration in my professional capacity as Secretary-General of Rabita Trust and in connection with the motion to dismiss the complaint against Rabita Trust as a named defendant in the above-referenced action. I make this affidavit based on my personal knowledge and the documents and records in my possession.

1.      I hereby submit to the best of my knowledge that from 1992 to 1994 Rabita Trust engaged in the construction of housing units for and the repatriation and rehabilitation of Pakistanis displaced in Bangladesh by the 1970 Indo-Pak War.

2.      To the best of my knowledge, as a result of a change in government in

Pakistan in 1994, Rabita Trust was put in isolation, and all construction and repatriation activity ceased and there were no further annual board meetings.

    3.     Rabita Trust has maintained and continues to maintain its own operations, payroll records and budgets, completely separate and apart from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry.

    4.     Rabita Trust has been and remains responsible for its own capitalization and management of assets wholly separate and apart from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry.

    5.     Rabita Trust maintains all corporate formalities separate and apart from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry; the entities conduct separate board meetings and maintain separate minutes of such meetings; the entities maintain separate books, records, and financial accounts; the entities have separate headquarters, files and office space; and, any transactions between the entities are conducted on an 'arms length' basis and are recorded by appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles.

    6.     Rabita Trust is not a subsidiary of MWL.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 17th day of May, 2004.

Wael Hamzah Jelaidan

This is to certify that
This is the true Signature of the Above Signed
Without Responsibility of the Contents
Bassim A. Alim, Esq.
Law Office of Bassim A. Alim

17-5-2004

# Exhibit E

# Summary of Events

## After 11 September 2001

1. Letter from the Cabinet Secretary, Government of Pakistan asking for (1)details of receipts in the Rabita Trust Fund since its inception with an initial amount of Rs. 300 Million (2) Details of Major Expense and (3)procedures and persons authorized to sanction expenditure from the Trust Fund.  A reply was send on 1 October by the Project Director Rabita Trust giving details of all the major expenditures including the construction of 1000 flats and repatriation of 63 families, issuance of identification cards and administrative expenses.  This letter also included account numbers and persons authorized to operate these accounts. **(Reference Documents: Letter of the Cabinet Secretary No. 14/1/97 dated 25 Sept 2001 and Project Director's reply No. 465 dated 1 October 2001)**

2. Received a letter from the Project Director Rabita Trust informing us that the Information Resource Center, U.S. Embassy has asked for information material about "Rabita Trust".  Action Taken: The Project Director sent them a reply on the same date giving the details about the Trust. **(Reference Document: U.S. Information Resource Center, Letter dated 1 October, 2001)**

3. Received a letter from the Cabinet Division asking to (1) close the Lahore office, (2) terminate the services of the Deputy Project Director, (3) Joint operation of all the accounts of Rabita Trust and (4) Audit of the Rabita Trust fund since its inception.  As a response, the Secretary General issued an Office Order and directed the Project Director (1) to close the Lahore Office, take the full charge of all the assets and documents, (2) Suspend of the services of the Deputy Project Director UNTIL THE AUDIT IS COMPLETED AND SUBSEQUENT TERMINATION OF HIS SERVICES, after the audit, (3) joint operation of Rabita Trust accounts (authorizations for the second signatory were attached) (4) The Lahore office account's signatory was changed from the Deputy Project Director to Project Director, Rabita Trust and his accountant to operate jointly. **(Reference Documents: Cabinet Secretary**

1   020

Letter No. 14/1/97-ERC® dated 3 October 2001 and Secretary General's Office Order 3 October 2001). Action taken: The Project Director took charge of the Lahore Office and the Deputy Project Director was suspended and authorization letters to the concerned banks were delivered for immediate action to operate the Trust accounts jointly.

4. Received a notification from the Cabinet Secretary, in which the new composition of the Rabita Trust Board from the Pakistani side with the Cabinet Secretary as the new Chairman of the Trust. It also said that the changes from the Rabita Alam Al-Islami will be informed later. **(Reference Document: Cabinet Division Letter No. 10/1/2000, dated 11 October 2001)**

5. Received a letter from the Cabinet Division, Director General ERC, in which he informed the Project Director that the DG ERC had been nominated the new Chairman of the Rabita Trust and subsequently, authorized by the Government of Pakistan to operate the Rabita Trust accounts jointly. **(Reference Document: Cabinet Secretary Letter No. 10/1/2000 dated 20 Oct 2001)**

6. Received a letter from the Cabinet Division in which they informed that Government of Pakistan has engaged a reputed Chartered Accountants firm to **audit the Rabita Trust funds**. Action taken: The Secretary General directed the Project Director to extend full cooperation to the Audit Team to complete the audit of the Rabita Trust Fund. **(Reference Document: Cabinet Division Letter No. 10/1/2000-R&R (ERC) dated 11 October 2001 and Secretary General's Memo No. RTJ/19/22 dated 14 October). Remarks: At present, the Audit Firm is carrying out the audit of accounts at Rabita Trust Office, Islamabad.**

7. Received a letter from the Cabinet Division asking for the list of equal number of trustees from Rabita Trust. **(Reference Document: Cabinet Secretary Letter dated 13 October, 2001).**

2

# Exhibit F

**DATE**      **: 15 OCTOBER 2001**

**FROM**      **: WAEL HAMZAH JELAIDAN**
              **SECRETARY-GENERAL RABITA TRUST**

**SUBJECT**   **: *DENIAL OF ANY INVOLVEMENT OR CONNECTION***
              ***WITH AL- QAIDA GROUP OR OSAMA BIN LADEN***

WITH REFERENCE TO NEWS PUBLISHED IN WASHINGTON POST REGARDING RABITA TRUST INVOLVEMENT WITH AL-QAIDAH MOVEMENT, I WOULD LIKE TO DENY ANY CONNECTION OR CONTACT OF RABITA TRUST FOR REPATRIATION OF STRANDED PAKISTANIS OR MYSELF WITH AL-QAIDA ORGANIZATION OR OSAMA BIN LADEN. THE NEWS ITEM IS COMPLETELY BASELESS.

## *RABITA TRUST AND ITS ACTIVITIES:*

IN JULY 1988, AN AGREEMENT WAS MADE BETWEEN RABITA AL-ALAM AL-ISLAMI (MUSLIM WORLD LEAGUE) AND THE GOVERNMENT OF PAKISTAN TO REPATRIATE AND REHABILITATE SOME QUARTER MILLION PEOPLE WHO WERE STRANDED IN BANGLADESH DURING THE 1971 INDO-PAK WAR. THE OBJECTIVE OF THIS TRUST WAS TO CONSTRUCT 40,000 HOUSING UNITS, TRANSPORT AND REHABILITATE 40,000 FAMILIES. IN EARLY 90'S, 1000 UNITS WERE CONSTRUCTED BUT THE PROJECT WAS PUT IN THE COLD STORE BY THE GOVERNMENT OF PAKISTAN DUE TO POLITICAL REASONS.

THE CHAIRMAN OF THE RABITA TRUST, SINCE ITS ESTBLISHMENT AND UNTIL 1ST OF OCTOBER 2001 HAS BEEN THE HEAD OF THE GOVERNMENT OF PAKISTAN. A GROUP OF MOST PROMINENT PERSONS FROM ALL OVER THE GULF, ACTIVE IN BENEVOLENT ACTIVITIES WERE SELECTED BY RABITA AL-ALAM AL-ISLAMI AS MEMBERS OF THE RABITA TRUST BOARD. FROM THE PAKISTANI SIDE, THE MINISTER OF FINANCE, MINISTER OF INTERIOR, GOVERNOR OF PUNJAB, GOVERNOR OF SIND, SECRETARY FOREIGN AFFAIRS AND SECRETARY CABINET DIVISON WERE NOMINATED AS THE KEY MEMBERS, WHILE FROM RABITA SIDE, PRINCE TALAL BIN ABDUL AZIZ, SECRETARY-GENERAL RABITA AL-ALAM AL-ISLAMI, SECRETARY GENERAL IIRO, ADVISOR TO THE PRESEIDENT OF UAE, PRESIDENT OF SAUDI CHAMBER OF COMMERCE WERE NOMINATED AS MEMBERS.

WITH THESE EMINENT PERSONALITIES AND OFFICES BEING THE MEMBERS OF THE BOARD OF TRUSTEES, HOW COULD ANY MEMBER OR THE OFFICE COULD GET INVOLVE IN ANY OTHER ACTIVITY OTHER THAN THE REPATRIATION AND REHABILITATION OF THE STRANDED PAKISTANIS.

BEING THE SECRETARY GENERAL OF RABITA TRUST, I STRONGLY CONDEMN SUCH IRRESPONSIBLE NEWS COVERAGE, WHICH WAS RELEASED WITHOUT CONFIRMATION OR ANY INVESTIGATION. THE FUNDS RECEIVED BY RABITA TRUST ARE VERY LIMITED AND TRANSPARENT. WE, THEREFORE, INVITE ALL THE CONCERNED AUTHORITIES TO CHECK THE ACCOUNTS OF RABITA TRUST THOROGHLY AND FIND OUT THE TRUTH.

FOR FALSE ALLEGATIONS, THE WASHINGTON POST OWES US AN OPOLOGY IN WRITING AS WELL AS THROUGH MEDIA.

WAEL HAMZAH JELAIDAN
SECRETARY-GENERAL
RABITA TRUST FOR REPATRIATION OF STRANDED PAKISTANIS

O15

# Exhibit G



**THE RABITA TRUST**
for Rehabilitation of
**Stranded Pakistanis**

Ref: _____

Date: _____

وقف الرابطة
لإعادة توطين
الباكستانيين المقطوعين

الرقم ٨٩

التاريخ 5، ٢٠٠٢ م

His Excellency,
The Cabinet Secretary,
Government of Pakistan,
Islamabad,

Your Excellency,

As you already know that the events of the 11ᵗʰ September have resulted in global changes in all directions. It has also affected Rabita Trust badly. The inclusion of Rabita Trust in the U.S. Treasury Department List, followed by the freezing of its accounts which has put the Rabita Trust in an embarrassing position.

According to the developments communicated to us by your good office during the last six months, we felt that it was necessary for us to consult a law firm in the Netherlands, to guide us on how to get the name of Rabita Trust removed from the list. They studied the events in detail, which led to the black listing of Rabita Trust and freezing of its accounts and subsequently, submitted a detailed research and recommendations.

Their suggestions are as follows:

1. Request must be submitted to the Director of the office of Foreign Assets Control (OFAC). It should be a simple letter from Rabita Trust stating that Trust wants its name to be removed from the list.

2. Consider legal action in Pakistan to get Rabita Trust removed from the list and accounts restored to normal.

In view of the above suggestions from our consultants, we request you to please let us know how we can adopt an effective and efficient strategy jointly to get the name of Rabita Trust removed from the "U.S. Treasury Department List". The audit of accounts has already been carried out and it must be quite clear by now to all the concerned that no monies were transferred or used other than what was needed or related to complete the project. If this statement is made clear to the concerned, then from our point of view, we should not wait any

009

THE RABITA TRUST
for Rehabilitation of
**Stranded Pakistanis**



وقف الرابطة
لإعادة توطين
الباكستانيين المقطوعين

الرقم _____

التاريخ _____

Ref. _____

Date _____

further and launch an effective campaign together, under the guidance of your good office and the competent legal advisors of the Government of Pakistan. We request the Government of Pakistan to take the leading role in this connection.

We are quite confident that His Excellency, President Parveez Musharraf who is clearly a patriotic Pakistani, will deal with this purely humanitarian issue in a similar way as he has dealt wisely with most sophisticated issues, on all the fronts. Once it is established that Rabita Trust has no connection with any terrorist activity, there is no justification to keep its name on the list. Therefore, we hope that the Government of Pakistan will take the necessary action to re-activate the project and allow the Trust to operate in accordance with the Rabita Deed.

Looking forward to receiving a favourable and prompt reply from your Excellency.

Truly yours,

Rahmat Ullah Nazir Khan,
Project Director

شارع بطرس بخاري سيكتراي ٨/١ إسلام آباد هاتف: ٤٣٥١١٣-٤٣٥١١٤-٤٤٩٣٤٧-٤٤٦٨٥٦ فاكس: ٤٤٩٢٤١
**Pitrus Bukhari Road Sector H-8/1 Islamabad, Tel: 435113-435114-449347-446856 Fax : 449241**

## Translation

His Excellency Admiral ® Abdul Aziz Mirza,
Ambassador of Pakistan in the Kingdom of Saudi Arabia,


Your Excellency,
Assalamu alaikum Wa rahmatullah.

Praying Allah to extend His help to you and shower His endless blessings on you, I refer to your letter No. 03/45/3 dated 31 March 2003 referring to the letter of Mr. Javed Masood, the Cabinet Secretary, dated 18/10/2001 in which he referred to the Gazzette Order No 1/2000 asking the authorities to re-constitute the Board of Trustees of the Rabita Trust for the Repatriation of the Stranded Pakistanis. In his letter, he demanded the replacement of Engineer Wael Hamzah Jelaidan, the present Director-General cum Secretary General of the Rabita Trust.

I would like to take this opportunity to thank you and the Government of Pakistan for looking after the Trust, which was established with the objective of Repatriation of the Stranded Pakistanis. At this point, I would like to inform you that this subject requires new and sincere studies to put it back on the right direction, in accordance with the essence of the Rabita Deed.

**Firstly:**
Due to the freezing of the Rabita Trust accounts in Habib Bank Limited by the Government of Pakistan, the Rabita Trust has NOT been able to pay for the electric bills of the residential colonies in Mian Channu, occupied by the already repatriated Pakistanis in the early nineties. Similarly, the salaries of the employees of the Rabita Trust still remain unpaid since the start of the year 2002 to this date. Despite the fact that an audit firm was nominated by the Government of Pakistan to conduct the audit of the Rabita Trust accounts since its inception which was carried out accordingly and it was found out that all the transaction of the Rabita Trust were according to the aims and objectives laid down by the Rabita Deed. The auditor statement was issued in this regards. Based on this, we contacted the Government of Pakistan, requesting that both the Government and Muslim World League issue a joint letter, to the United States Treasury Department with the request to drop the name of Rabita Trust from the List, according to the legal recommendation of the lawyers. Copy of this letter is attached as (1). Subsequently, a letter was sent to the Governor of the State Bank of Pakistan to re-activate Rabita Trust accounts so that the

021

salaries of the Rabita Trust employees and dues of the Mian Channu colonies could be paid.  Copy of this letter is also attached as (2).

**Secondly:**

The issue of re-constitution of the Board of Trustees of the Rabita Trust and replacement of Director General cum Secondary General should be put after all the dues as explained above, are paid. These dues have not been paid for more than a complete year despite the fact that the money is available in Rabita Trust accounts.  It is obvious that the beneficiaries are Pakistanis, the Trust's main objective is to serve the Pakistani nationals, and the Government of Pakistan is a partner to this task.

In my view, we should start with the re-activation of the Trust accounts since its legal stand is good and well justified, which proves that Trust is feasible enough to carry out its tasks and fulfill its defined duties.  At the same time, efforts should be made to remove the name of Rabita Trust and subsequently get the clearance from the false and baseless accusation, from the American Treasury Department; which would be good reasons  to discuss the re-constitution of the Board and the replacement of the Director General cum Secretary General,     in light of practical achievements.

We thank your Excellency once again for your kind attention to this humanitarian issue, hoping that you would clarify our point of view to the Government of Pakistan so that MWL can honor its commitment to this humanitarian issue. We pray Allah the almighty to grant success to all.

Wassalamu alaikum wa Rahmatullah.

_____

Dr. Abdullah bin Abdul Mohsin Al Turki,
Secretary General

<u>Exhibit H</u>

# THE RABITA TRUST

For Repatriation of Stranded
Pakistanis

## Secretariat General



وقف الرابطة

لإعادة توطين الباكستانيين المتطوعين

الأمانة العامة

**Ref: RTJ/ 11/23**

**Date:** 21/8/2002

الرقم :

التاريخ :

To,

**The Governor,**
**State Bank of Pakistan (Banking Supervision Deptt.)**
**I.I. Chundrigar Road,**
**Karachi**

Subject:-    **Freezing of accounts of Rabita Trust Projects**.

Dear Sir,

The following bank accounts are being maintained in the name of Rabita Trust
Projects in Habib Bank Ltd. at Islamabad and Lahore.

|    | **Account No.** | **Currency** | **Name of Bank** |
|----|------------|----------|--------------|
| 1. | **97073-1** | US Dollar | Habib Bank Ltd. Civic Centre, Islamabad |
| 2. | **9536** | Pak Rupees | Habib Bank Ltd. Sectt. A. Block, Islamabad |
| 3. | **10206-4** | Pak Rupees | Habib Bank Ltd. Sectt. A. Block, Islamabad |
| 4. | **9254** | Pak Rupees | Habib Bank Ltd. Liberty Market, Lahore |
| 5. | **9255** | Pak Rupees | Habib Bank Ltd. Liberty Market, Lahore |
| 6. | **9414** | Pak Rupees | Habib Bank Ltd. Liberty Market, Lahore |

The management of the above banks has verbally informed that the accounts
of the Rabita Trust Project have been frozen under orders of the State Bank of
Pakistan.

In this respect it is stated that the Rabita Trust is a philanthropic
Organization, funds having been provided by the Government of Pakistan and Rabita
Al-Alam Al-Islami, a Saudi Organization. The accounts of the project were audited by
M/s Aslam Khan & Co. a chartered accountant (copies of certificate enclosed). The
Director General, Audit Works Lahore, also audited the accounts of funds paid to
P.W.D. Government of Punjab (Copy of certificate along with copies of statements of
funds paid to P.W.D. enclosed).

Rabita_Trust@yahoo.com هاتف : 6823605 2 966 00 – فاكس 6824007 2 966 00 – ص.ب 1436 جدة 21431 – بريد الكتروني

P.O.Box 1436, Jeddah 21431, KSA - Email: Rabita_Trust@yahoo.com - Phone 00966 2 6823605, Fax: 00966 2 6824007

# THE RABITA TRUST

For Repatriation of Stranded
Pakistanis

### Secretariat General



وقف الرابطة

لإعادة توطين الباكستانيين المقطوعين

الأمانة العامة

**Ref: RTJ/**

الرقم :

**Date:**

التاريخ :

M/s A.F. Fergusons & Co. Chartered Accountants have also audited the accounts of the Rabita Trust Project for the period July 9, 1988 to October 2001. All receipts and payments were certified as in respect of the **aims and objects** specified in the Trust Deed of the Rabita Trust and **represent fairly** the funds received and **funds disbursed during the period covered by the Audit.** A photo copy of the auditors opinion is enclosed.

The certificates issued by the three different agencies of Auditors have clearly and irrevocably stated that:-

1.    Receipts are properly accounted for and payments have been made for the purpose of the project (Works Audit)

2.    Receipts and payments exhibits a true and correct view of the state of Trust affairs (Chartered Accountant)

3.    Receipts and payments reflected in the financial statements for the period July 9, 1988 to October 15, 2001 were in respect of **aims and objects** specified in the Trust Deed (A.F.Ferguson & Co.)

It is intimated that following three agencies were engaged in the implementations of the projects:-

i)    The Government of Pakistan (Cabinet Division).

ii)    The Rabita Al-Alam Al-Islami (a Saudi Organization).

iii)    The Punjab Government (P.W.D.).

Out of total capital outlay, 87% funds were released to the P.W.D. (Punjab Government) for construction of one thousand housing units at Mian Channu. These housing units are available at site and provide an ample and undeniable proof that the funds provided to P.W.D. (Government of Punjab) were utilized for the aims and objectives of the Rabita Trust Project and **not repeat not** for any other irrelevant and extraneous purpose.

**Rabita_Trust@yahoo.com** بريد الكتروني – 21431 جدة 1436 ص.ب – 00 966 2 6824007 فاكس – 00 966 2 6823605 : هاتف
P.O.Box 1436, Jeddah 21431, KSA - Email: Rabita_Trust@yahoo.com - Phone 00966 2 6823605, Fax: 00966 2 6824007

# THE RABITA TRUST
**For Repatriation of Stranded Pakistanis**
### Secretariat General



وقف الرابطة

لإعادة توطين الباكستانيين المقطوعين

الأمانة العامة

**Ref: RTJ/**

الرقم :

**Date:**

التاريخ :

The availability of funds at credit of Rabita Trust with M/s Habib Bank Ltd. also corroborates the above facts. The financial interest of the Rabita Trust was religiously safeguarded with the result that amount of T.D.R. has risen too more than Rs. 580 million (A/C-9536). We feel that this office should have been informed in-writing, the decision of freezing our accounts stating reasons therein and to provide us a chance to clarify our position. This is at least minimum basic requirement of justice and fair play. One-sided action and that too keeping us in the dark tentamounts to injustice leading to frustration and shaking confidence in the Bankers (Trustees).

It is, therefore, requested that **Ban** imposed on our accounts may kindly be removed and our banker (Habib Bank Ltd.) be directed to entertain our cheques.

Thanks,

Yours sincerely,

Wael Hamzah Jelaidan
Secretary General
Rabita Trust
Jeddah Saudi Arabia

CC:-
1. **The Chairman,**
   **Rabita Trust/Secretary, Cabinet Division,**
   **Govt. of Pakistan, Islamabad**

2. **Director General (ERC),**
   **Cabinet Division, Govt. of Pakistan,**
   **Islamabad**

3. **The Project Director,**
   **Rabita Trust, Islamabad**

هاتف : 6823605 2 966 00 – فاكس 6824007 2 966 00 – ص.ب 1436 جدة 21431 – بريد الكتروني **Rabita_Trust@yahoo.com**
P.O.Box 1436, Jeddah 21431, KSA  -  Email: Rabita_Trust@yahoo.com - Phone 00966 2 6823605, Fax: 00966 2 6824007

# Exhibit I

(CABINET DIVISION)

......

No.14/1/97-R&R                                           Islamabad, tho 14th March, 2000

### CIRCULAR

Subject:-      **COMPOSITION OF RABITA TRUST BOARD**

The revised and up-dated composition of Rabita Trust Board is circulated for

information of all concerned.

(Muhammad Riaz Malik)
Section Officer
Tele: 9201492

1   Principal Secretary to the Chief Executive of Pakistan
2.  Military Secretary to Governor Punjab, Lahore
3.  Military Secretary to Governor Sindh, Karachi
4.  P.S. to Minister for Finance, Revenue, Economic Affairs, Planning & Development and
    Statistics, Islamabad.
5.  P.S. to Minister for Interior, Narcotics Control & Capital Administration & Development,
    Islamabad.
6.  P.S. to Secretary Foreign Affairs Division, Islamabad
7.  P.S. to Secretary Cabinet Division
8   Mr. Majid Nizami, Chairman, Pak, Citizens' National Committee, Lahore
9   Mr. Moaved A. Al-Butery, Project Director, Rabita Trust Board, Islamabad.

15/3/2000

016

GOVERNMENT OF PAKISTAN
CABINET SECRETARIAT
(CABINET DIVISION)

······

## COMPOSITION OF RABITA TRUST BOARD

| S.NO. | NAME & PORTFOLIO/DESIGNATION | POSITION IN THE BOARD |
|---|---|---|
| 1. | General Pervez Musharraf, Chief Executive, Islamic Republic of Pakistan | Chairman |
| 2. | H.R.H. Prince Talal Bin Abdul Aziz Al-Saud | Co-Chairman |
| 3. | H.E. Dr. Abdullah bin Saleh Al-Obaid Secretary General, Rabita al-Alam al Islami | Vice-Chairman |
| 4. | Mr. Shaukat Aziz Minister for Finance, Revenue, Economic Affairs, Planning & Development and Statistics | Vice Chairman |
| 5. | Lt. Gen. (R) Moin-ud-Din Haider, Minister for Interior, Narcotics Control and Capital Administration & Development | Member |
| 6. | Lt. Gen. Muhammad Safdar, HI (M), S BI (Retd), Governor Punjab | Member |
| 7. | Air Marshal Azim Daud Pota, HI(M), SJ (Retd) Governor Sindh | Member |
| 8. | Mr. Wael Hamzah Jelaidan | Director General-cum-Secretary General |
| 9. | H.E. yousef Jasim Al-Hiji President, International Islamic Charity Organization, Kuwait | Member |
| 10. | H.E. Dr. Adnan Khalil Basha, Secretary General International Islamic Relief Organization, Jeddah | Member |
| 11. | H.E. Dr. Abdul Malik Al-Hamar, Advisor to the President of UAE, Abu Dubi | Member |
| 12. | H.E. Al-Sheikh Hamad Al-Zamil, President, Chamber of Commerce and Industries, Saudi Arabia | Member |
| 13. | Engineer Abdul Mohsin Al-Idris, Member, Chamber of Commerce and Industries, Riyadh, Saudi Arabia | Member |
| 14. | Mr. Majid Nizami, Chairman, Pak. Citizens' National Committee. | Member |
| 15. | Secretary Foreign Affairs | Member |
| 16. | Secretary Cabinet Division | Deputy Director General-cum-Deputy Secretary General |

Exhibit J



COZEN
O'CONNOR

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

September 29, 2011

**Sean P. Carter**
Direct Phone 215.665.2105
Direct Fax    215.701.2105
scarter@cozen.com

**VIA E-MAIL**

Martin F. McMahon, Esquire
Martin F. McMahon & Associates
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036

Re:    In Re:  Terrorist Attacks on September 11, 2001
       Our File No.:  117430

Dear Marty:

We would like to set a time in the near future to confer with you concerning deficiencies in the discovery responses provided to date by Rabita Trust. To that end, please provide a list of dates and times at which you would be available during the next two weeks.

In advance of the anticipated conference, we would request that you clarify a few basic issues concerning Rabita Trust's current status, and the location of its documents. In its responses to plaintiffs' "Part B" Requests for Production of Documents, Rabita Trust asserts that it has been a "dormant" charity since approximately the first quarter of 1994. We would ask that you clarify precisely what Rabita Trust means when it characterizes itself as a "dormant" charity. In particular, we would ask that you advise whether Rabita Trust has maintained any offices, administrative functions or employees (whether on a paid or volunteer basis) since the first quarter of 1994.

As a corollary, we would ask that you clarify the present location of Rabita Trust's documents. During one of our prior meet and confers, we believe you indicated that Rabita Trust's documents had been turned over to some third party in or around the time that it became "dormant." If that is the case, we would ask that you identify *any* states, organizations or individuals who may be in possession of documents concerning Rabita Trust's finances or operations.

Finally, your original responses restricted the scope of production to the period after 1996. As you know, the Court in 2007 globally overruled the objections of all defendants to the production of documents relating to periods prior to 1996, and established a presumption that

Martin F. McMahon, Esquire
September 29, 2011
Page 2

discovery would extend at least back to 1992. Although the Court directed the defendants to supplement their discovery responses in accordance with its decision, Rabita Trust has not to this point issued any supplemental production to plaintiffs for the period between 1992 and 1996. We would request that you advise us of the status of Rabita Trust's efforts to collect and produce materials from that timeframe. Rabita Trust's discovery responses also indicated that it hired a Pakistani lawyer in or around 2006 to assist in the location and collection of documents responsive to plaintiffs' discovery requests. The responses indicated that any documents obtained as a result of the Pakistani lawyer's efforts would be produced to plaintiffs. To this point, we have not received any materials as a result of the efforts of that lawyer. Please advise as to the status of his efforts to obtain materials responsive to plaintiffs' discovery requests.

We look forward to hearing back from you concerning a date for our meeting, and receiving your responses to the questions raised above.

Sincerely,

COZEN O'CONNOR

By:      SEAN P. CARTER

SPC/bdw

cc:    Andrew Maloney, Esquire (*via email*)
       Jodi Flowers, Esquire (*via email*)
       Robert Haefele, Esquire (*via email*)
       Jerry Goldman, Esquire (*via email*)
       James Kreindler, Esquire (*via email*)
       Stephen A. Cozen, Esquire (*via email*)
       Elliott R. Feldman, Esquire (*via email*)
       R. Scott Tarbutton, Esquire (*via email*)

# Exhibit K

**Carter, Sean**

| | |
|---|---|
| **From:** | Martin McMahon <mm@martinmcmahonlaw.com> |
| **Sent:** | Friday, November 04, 2011 5:38 PM |
| **To:** | Carter, Sean |
| **Subject:** | Rabita Trust |

Dear Sean,

   Based on our phone conference today concerning Rabita Trust discovery, I will attempt to discern who is presently answerable for the actions of the Trust. Specifically, I will attempt to find out who Mr. Jelaidan's successor was, if anyone, and who the current Director is, if anyone, at the Trust. If there is no Director or Successor to Mr. Jelaidan, I will try to discover if there is anyone currently with authority to direct the Trust. Ultimately, I will attempt to figure out the current organizational status of the entity and the officers, if any, that occupy positions in the entity.

   In addition, I will try to figure out what documents the Trust has tried to produce since its entrance into a "dormant" state. As stated, we have in the past discerned that when the Trust entered into dormancy, any documents contained in the office would likely have either been destroyed or transferred to storage, probably by Pakistan's Office of the Cabinet Secretary.

   In the past, we have been unsuccessful in trying to contact a number of people that we believed had some connection with Rabita Trust. For example, we have contacted Javid Butt—a former accountant for the Trust; Samajee Behood—apparently a former counsel to Rabita Trust; and Ijaz Rahim—a gentleman that was once an employee at the Office of the Cabinet Secretary. We have also just sent out letters to Pakistan at the last known address for the Trust, but do not have high hopes regarding its delivery.

   Regards,

   Martin

Martin F. McMahon, Esq.
Martin F. McMahon & Associates
1150 Connecticut Ave. N.W.
Suite 900
Washington, DC  20036
(202) 862-4343 office
(202) 828-4130 fax

www.martinmcmahonlaw.com

# Exhibit L



**COZEN**
**O'CONNOR**

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA. PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

July 30, 2012

**Sean P. Carter**
Direct Phone 215.665.2105
Direct Fax   215.701.2105
scarter@cozen.com

**VIA E-MAIL**

Martin F. McMahon, Esquire
Martin F. McMahon & Associates
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036

Re:    In Re:  Terrorist Attacks on September 11, 2001
       Our File No.:  117430

Dear Marty:

    In November of last year, you will recall that we held a conference call concerning plaintiffs' discovery requests to Rabita Trust.  At the outset of that call, you affirmed prior representations that Rabita Trust is a dormant entity, and then described the largely unsuccessful efforts you have made to obtain Rabita documents responsive to plaintiffs' discovery requests.

    Given your representation that Rabita Trust has been dormant for a number of years, we asked you to clarify the identity of the person or organization that is directing Rabita Trust's defense, and the source of that person's or organization's authority to do so.  In response, you explained that you were initially asked to represent Rabita's interests by Wa'el Jelaidan, who was at one time the Director of Rabita Trust.  However, you expressed doubt as to whether Jelaidan continues to hold any position within Rabita, and documents you have provided in the discovery process indicate that he resigned that post many years ago.

    In response to our request that you identify the person or organization with the present authority to retain counsel and direct the litigation efforts on Rabita Trust's behalf, you indicated that you could not do so at the time of our call, and asked for two weeks to make relevant inquiries and respond to that request. To date, we have not heard back from you, and would ask that you provide a response as soon as possible.

    We would also request that you clarify whether Rabita Trust (or any attorney or person acting on its behalf) has submitted any documents to, or received any documents from, any U.S. governmental agency (including the Office of Foreign Assets Control) and any arm of the United Nations (including the 1267 Committee) concerning the designations of Rabita by the US and

Martin F. McMahon, Esquire
July 30, 2012
Page 2

_____

UN. This would include any license application submitted to OFAC. To the extent there has
been any communications with either the US government or UN, we would ask that you produce
them promptly. In a similar vein, we would ask that you advise whether Rabita Trust is in
possession of any account statements for any of its bank or financial accounts, to include any
statements from periods following its designation.

We also requested that Rabita Trust provide some written account of the efforts it has
made to obtain documents responsive to plaintiffs' document requests, and to describe the
circumstances under which any responsive documents were lost, destroyed, discarded, seized or
transferred to any third-party. As you know, the instructions for document requests require that
this information be provided, but Rabita Trust has not done so to this point.

We look forward to hearing back from you in the near future concerning the foregoing.

Sincerely,

COZEN O'CONNOR

By:    SEAN P. CARTER

SPC/bdw

cc:    Andrew Maloney, Esquire (via email)
       Jodi Flowers, Esquire (via email)
       Robert Haefele, Esquire (via email)
       Jerry Goldman, Esquire (via email)
       James Kreindler, Esquire (via email)
       J. Scott Tarbutton, Esquire (via email)

# Exhibit M

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

**VIA FACSIMILE**

October 18, 2012

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007

     Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

    The Plaintiffs' Executive Committees and the Defendants' Executive Committee, on behalf of the defendants who are subject to discovery, submit this letter concerning the proposed agenda for the discovery conference scheduled for October 22, 2012.

    *Plaintiffs' Proposed Agenda:*

    At the discovery conference on February 15, 2012, the Court set a presumptive three month window following the expiration of the document production deadline for the filing of necessary motions and service of follow-up discovery. However, the Court acknowledged that necessary translations and other obstacles may very well render that window unrealistic, and indicated that it "would view liberally requests for extension" of the period for motion practice and follow-up discovery. As plaintiffs have now received the defendants' document productions and have begun to analyze those productions, they wish to take a few minutes at the upcoming conference to discuss a realistic timetable for completing necessary follow-up discovery and motion practice. In this regard, plaintiffs note that included within the defendants' most recent productions are approximately 55,000 pages that are in need of full or partial translation from at least 12 different foreign languages. The process of translating these documents will take some time, as will the process of analyzing them to identify gaps in the production and necessary areas

The Honorable Frank Maas, U.S.M.J.
October 18, 2012
Page 2

of follow up discovery. Plaintiffs encountered modest delays at the outset of that process, due to the fact that the discovery deadline immediately preceded significant holiday periods for a number of plaintiffs' analysts, as well as the deadline for completing briefing on the appeals now pending before the Second Circuit. However, the analyses are now fully underway.

Although plaintiffs have not yet completed their analysis of the defendants' productions, they have identified a number of motions they intend to file in the immediate future, and offer the following examples to assist the Court in evaluating an appropriate timeline and structure for motion practice. Plaintiffs note that they are not seeking to argue any of these issues as a substantive matter at this time, and offer these examples solely for planning purposes.

1.      Wa'el Jelaidan

During the discovery conference on November 16, 2011, the Court indicated that defendant Jelaidan needed to engage in a "full court press" to obtain responsive documents, and that the inability of defendant Jelaidan to sufficiently "document a vigorous effort to obtain those documents" may lead to imposition of sanctions. Aside from a single December 5, 2011 email from defendant Jelaidan's counsel, expressing that defendant Jelaidan and his Saudi attorney had made unsuccessful attempts to obtain responsive documents, plaintiffs have received no correspondence or other documents from defendant Jelaidan concerning any effort to secure and produce responsive documents. Plaintiffs intend to file a motion for appropriate relief at this time.

2.      Rabita Trust

Aside from an initial production of 22 documents, 17 of which were identical to documents separately produced by defendant Jelaidan, Rabita Trust has not made any production of documents to plaintiffs. In explaining this shortfall, counsel for Rabita Trust has represented that it is a dormant entity, and that he was initially hired to represent Rabita Trust by defendant Jelaidan, who has not held any position with Rabita Trust for several years. Given those representations, plaintiffs have been waiting for nearly a year for clarification as to whether there is presently a representative of Rabita Trust with the authority to direct the litigation on Rabita Trust's behalf, (and who would be responsible for ensuring Rabita's adherence to its discovery obligations). Despite several requests for this information and assurances that a response would be forthcoming, counsel has not provided any response to date. Plaintiffs intend to move for appropriate relief.

The Honorable Frank Maas, U.S.M.J.
October 18, 2012
Page 3

_____

3.    World Assembly of Muslim Youth

Although WAMY has made a limited production of documents to plaintiffs, it has
asserted that plaintiffs are required to travel to Saudi Arabia to review the bulk of its production,
to include documents that were apparently shipped from WAMY branches throughout the world
to the Kingdom, rather than having those materials shipped to the United States.  For a variety of
reasons, plaintiffs believe that WAMY is required to produce its documents in the United States,
and intend to file a motion seeking that relief.  In addition, although WAMY previously
withdrew any objection to the production of documents based on the argument that WAMY
headquarters did not have custody and control of documents in the branch offices, and
specifically represented that it would be producing documents from its Canada branch, WAMY
has recently asserted that it no longer has control of that branch and will not be producing any of
its documents.  This change of position came only after the Canada Review Agency revoked
WAMY Canada's charitable registration.  Plaintiffs intend to file a motion to compel production
of documents in the control of WAMY's Canada office.  In addition, in response to the Letter
Rogatory Request issued by this Court, the Canada Revenue Agency has indicated that certain
documentation in its possession would be subject to production upon consent of the taxpayer.
Plaintiffs have requested that WAMY Saudi Arabia provide that consent, and will be asking the
Court to direct that it do so.

4.    Muslim World League and IIRO

Plaintiffs believe that there remain substantial gaps in the productions by the Muslim
World League and IIRO, despite the Court's numerous orders directed at those defendants.  As
but one example, the IIRO produced an "audit" of its Pakistan branch, dated just a few months
before the September 11th Attacks, a copy of which is enclosed as Exhibit A.  The audit
uncovered the apparent diversion of millions of dollars of funds by that branch, the wholesale
fabrication of invoices and projects to conceal that activity, the previously undisclosed operation
by the IIRO of for-profit businesses (generating potential off-budget income), and other issues of
manifest importance to this litigation.  Despite the Court's prior directive that the MWL and
IIRO produce all documents underlying any audit, and even though plaintiffs served follow-up
discovery for precisely that information, the IIRO did not produce numerous categories of
documentation relating to this particular audit.  The same is true for other audit reports, many of
which are themselves apparently missing from the productions.

Plaintiffs appreciate that the Court wants plaintiffs to take depositions to augment the
record before renewing any motion for default judgment against the MWL and IIRO.  Plaintiffs
intend to take those depositions as soon as possible, but do believe some motion practice will be
necessary in advance of any such depositions to ferret out some basic information necessary to
effectively question the deponents.

The Honorable Frank Maas, U.S.M.J.
October 18, 2012
Page 4

5.  Sanabell, Inc. and Sanabel al Kheir, Inc.

Although plaintiffs understood that the Sanabell defendants would be making their productions within the deadline established by the Court, they have not done so. Plaintiffs will be filing a motion for appropriate relief.

6.  Dubai Islamic Bank

DIB made an initial production of 3,000 documents, consisting almost entirely of newspaper articles and other public source documents, much of which consisted of documents that plaintiffs had already produced to DIB. On the deadline for production, DIB made a limited production of an additional 500 pages. Plaintiffs do not believe the scope of DIB's document production is consistent with its discovery obligations in this matter, and plaintiffs are working to identify specific issues for a motion to compel. More immediately, plaintiffs understand that DIB has filed objections with the Department of Treasury, in an effort to block the Treasury Department's planned release of documents in response to a FOIA request submitted by plaintiffs. The assertion of these objections has substantially delayed the third party discovery process via FOIA. Plaintiffs understand that the Treasury Department will be making a ruling on DIB's objections within the next week, at which point DIB will have the choice whether to pursue further legal remedies in an effort to block the release of the materials by filing a lawsuit against the Treasury Department. Plaintiffs will keep the Court apprised as to developments on that front, and advise whether they believe Court intervention is necessary to avoid ancillary litigation and motion practice before this Court. On a related front, plaintiffs note that they have served FOIA requests on other agencies in an effort to develop evidence concerning the meetings USA officials held with officials of the UAE concerning the DIB's support for al Qaeda. Plaintiffs are attempting to discern whether DIB has lodged objections with those other agencies, and to obtain an estimate concerning the likely response date of those agencies to plaintiffs' FOIA requests.

7.  Al Haramain

After the parties had fully briefed and argued plaintiffs' motion to compel, this Court found, at a hearing on October 28, 2010, that the Al Haramain defendants are alter egos, obligating the Al Haramain alter egos to produce responsive documents to plaintiffs' discovery requests. In a December 10, 2010 order (DE 2393), the Court clarified that that production was due by January 7, 2011. Although Al Haramain objected to the October 28 ruling (DE 2384), it did not object to the December 10 order and no stay of either order was ever entered. Although Al Haramain produced a limited production on January 21, 2011, consisting entirely of pleadings from other litigation, Al Haramain's production falls far short of the obligations imposed by the Federal Rules and this Court's October 28 and December 10 orders. In addition, plaintiffs served follow-up document requests in July 2012, addressing certain gaps in the productions; but because defendant's responses largely mirrored the earlier responses, they suffer from many of the same problems as the original responses. Accordingly, plaintiffs will be moving the Court for appropriate relief.

The Honorable Frank Maas, U.S.M.J.
October 18, 2012
Page 5

8.    Pirouz Sedaghaty

Notwithstanding the Court's November 22, 2011 and December 15, 2011 orders (DE 2491 and 2501) denying Sedaghaty's motion to stay discovery and directing him to produce documents responsive to plaintiffs' document requests, Sedaghaty has refused to do so. Although Sedaghaty objected to the Court's November 22 order (DE 2495), he did not object to the December 15 order and Judge Daniels has overruled and rejected in its entirety (DE 2529) Sedaghaty's objection to Judge Maas's November 22 order. Furthermore, although Sedaghaty petitioned the Second Circuit for a Writ of Mandamus and to stay discovery pending determination of the petition, the Second Circuit denied that request to stay discovery pending resolution of the petition. Given that Sedaghaty has failed to produce even a single document in the face of the Court's orders directing him to do so, plaintiffs will move the Court for the appropriate relief.

### Defendants' Proposed Agenda and Response to Plaintiff's Proposed Agenda:

Defendants intend to raise with the Court issues concerning the content and format of privilege logs in this case. While the parties have met and conferred regarding a proposed stipulation concerning privilege logs, the parties have not yet reached agreement on all aspects of the proposed stipulation. Defendants remain hopeful that the parties will be able to resolve these issues prior to the October 22 hearing. In the event the parties cannot fully reach agreement, Defendants would like the Court's guidance. The parties will present the Court with either an agreed upon privilege stipulation or competing versions of the stipulation by noon on Friday, October 19.

Regarding Plaintiffs' agenda proposal, while Plaintiffs have never raised with Defendants their newly-expressed desire to extend the current deadline for motions to compel and follow-up discovery, Defendants agree that the topic is appropriate for discussion during the hearing.

What is not appropriate, however, is Plaintiffs improper use of this agenda letter to impermissibly sandbag and malign Defendants with arguments regarding *potential* motions that Plaintiffs may bring in the future. Plaintiffs' actions also fly in the face of the express Court ordered procedure for filing discovery motions in this case, which requires the parties to meet and confer and then exchange motion papers before raising any issues with the Court. Plaintiffs continue to ignore these procedures. In short, none of the discovery issues raised in Plaintiffs' proposal are ripe for review.

### Plaintiffs' Response to Defendants' Proposed Agenda:

Although plaintiffs agree that the privilege log issue will need to be resolved, plaintiffs do not believe that the issue has been the subject of appropriate meet and confers, notwithstanding written exchanges and unanswered written inquiries from the plaintiffs. For nearly a year and a half, plaintiffs waited (at the defendants' request) for defendants to propose a framework for privilege logs. In the interim, at an April 2011 conference, the Court expressed views to be considered for an appropriate framework for privilege logs. But when defendants

The Honorable Frank Maas, U.S.M.J.
October 18, 2012
Page 6

_____

offered their initial proposal in March 2012, because the proposal did not include most of the considerations from the Facciola-Redgrave framework that Your Honor had suggested, plaintiffs took to re-writing the proposal. In August 2012, plaintiffs offered a proposal incorporating much of the Facciola-Redgrave framework and raised several other questions about the defendants' suggestions. In early October 2012 defendants responded and, without answering any of the specific inquiries included with plaintiffs' proposal, struck without explanation many of the provisions that were based on the Facciola-Redgrave framework. On October 16, plaintiffs responded back to the defendants pointing out once again the specific concerns and asking for explanations as to the defendants' various proposals.

So, although plaintiffs agree that the issue does need to be resolved, we express concern that the defendants have not sought to engage in an appropriate meet and confer over the long course that this issue has been pending for the parties' consideration.

Regarding the remainder of the defendants' proposal concerning the agenda, plaintiffs note the following: (1) given the dialogue during the February 15, 2012 hearing recognizing plaintiffs' anticipation that longer time would be needed to address motions after the initial document production deadline, plaintiffs position that additional time is warranted is hardly "newly-expressed;" (2) plaintiffs have certainly neither "sandbagged" nor "maligned" the defendants in any manner; rather, plaintiffs have simply sought to lay out for the Court's consideration the various motions anticipated so that the Court may account for them when addressing scheduling needs (an issue plaintiffs anticipate is something the Court had in mind to address); (3) nothing about the information that the plaintiffs offer the Court "flies in the face" of any order because plaintiffs have made clear that none of the items plaintiffs identified above are presently ripe for the Court's consideration (about that the parties agree); again, the information is offered merely to inform the Court for scheduling purposes.

Respectfully submitted,

Robert T. Haefele
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

Alan R. Kabat
THE DEFENDANTS' EXECUTIVE
COMMITTEE

cc:    Hon. George B. Daniels (By Federal Express)
       MDL-1570 counsel (By electronic mail)

# Exhibit N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, No. 04 Civ. 1923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, No. 04 Civ. 7065
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279

**PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR PRODUCTION
OF DOCUMENTS DIRECTED TO RABITA TRUST**

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
August 1, 2012

## PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR
## PRODUCTION OF DOCUMENTS DIRECTED TO RABITA TRUST

Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, and *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, propound and serve on Rabita Trust the following supplemental Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

The "Instructions" and "Definitions" set forth in the Plaintiffs' First Set of Requests for Production of Documents Parts A and B Directed to Rabita Trust are incorporated herein by reference, except the following definition shall also apply:

1.  The terms "Defendant," "You," "Your," and "Rabita" shall refer to Rabita Trust and any branch office, subsidiary, affiliate, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Rabita Trust's behalf.

## PLAINTIFFS' SUPPLEMENTAL DISCOVERY REQUESTS

1.      Please provide all documents relating to all accounts at Habib Bank Ltd. established or held in the name of, on behalf of and/or for the benefit of Rabita Trust, including but not limited to Account Nos. 9536, 9254, 9255, 9257, 9414 & 10206-4.   Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Rabita Trust and Habib Bank Ltd., documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

2.      Please provide all documents relating to all financial accounts held by Rabita or any officers, directors, trustees, board members, committee members, managers, agents, employees, or representatives on behalf of Rabita, including but not limited to monthly or annual accounts statements, correspondence, deposits, withdrawals, cleared or cancelled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

**ANSWER:**

     3.       Please provide all documents describing any relationship between Rabita and any oversight board, committee, organization, or group based or operating in the Kingdom of Saudi Arabia, including but not limited to the Muslim World League, the International Islamic Relief Organization, or any entity, agency, division or member of the Kingdom of Saudi Arabia.

**ANSWER:**

     4.       Please provide all documents describing any relationship between Rabita and any oversight board, committee, organization, or group based or operating in Pakistan, including but not limited to the Muslim World League, the International Islamic Relief Organization, or any entity, agency, division or member of the government of Pakistan.

**ANSWER:**

     5.       Please provide all documents, including correspondence, letters, memoranda, notes, reports and/or emails, related to the audit of Rabita performed by M/S Fergusson after the United States' designation of Rabita in October 2001.

**ANSWER:**

6.     Please provide all documents, including but not limited to applications, licenses, correspondence, letters, memoranda, notes, reports and/or emails, submitted to or received from any United States governmental agency (including the Office of Foreign Assets Control) and/or any arm of the United Nations (including the 1267 Committee) concerning the designations of Rabita by the United States and the United Nations.

**ANSWER:**

7.     Please provide all documents, reports, speeches, notes, press releases, correspondence, letters, memoranda or articles relating to any meetings or conferences conducted on Rabita's behalf, for the benefit of Rabita, or at which any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita spoke, attended, managed, or funded within the United States, including but not limited to the conference held at the American Islamic College Campus in Chicago, Illinois on March 15,1998.

**ANSWER:**

8.     Please provide all documents, correspondence, letters, memoranda, notes, reports, and/or emails relating to the decision to remove Sameer bin Jameel Radhi from his position within Rabita on or about February 1999 and appoint Wael Jelaidan as general secretary of Rabita.

**ANSWER:**

9.     Please provide all documents relating to the proposal to remove Wael Jelaidan from his position within Rabita on or about the year 2003, including but not limited to any documents provided by the Muslim World League, the Government of Pakistan, the Government of the Kingdom of Saudi Arabia, or any of their related entities, agencies, divisions, committees or groups.

**ANSWER:**

10.    Please provide all documents, correspondence, letters, memoranda, notes, reports, and/or emails relating to any relationship between Rabita, including any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita, and Abdullah bin Abdul Muhsin Al Turki.

**ANSWER:**

11.    Please provide all documents, correspondence, letters, memoranda, notes, reports, and/or emails relating to any relationship between Rabita, including any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita, and Mohammed Jamal Khalifa (a/k/a Abdallah Khalifahm Abu Bara, Abu al Bara, Abdul Barashid, Abi Bara, Abu Barra, Abu Barashid, Abu El Bara'a, Abu Salah, Chej Salah or Jamal Khalifa).

**ANSWER:**

12.    Please provide all documents, correspondence, letters, memoranda, notes, reports, and/or emails relating to any relationship between Rabita, including any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita, and those individuals listed on Exhibit A.

**ANSWER:**

13.    Please provide all documents, correspondence, letters, memoranda, notes, reports, and/or emails relating to any relationship between Rabita, including any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of Rabita, and those entities listed on Exhibit B.

**ANSWER:**

Dated: August 1, 2012                          Respectfully submitted,


_____

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES

## Exhibit A

Shukat Aziz
Lt. General Moin-ud-Din Haider
Lt. General Muhammad Safdar
Azim Daud Pota
Yousef Jasim Al-Hijl
Adnan Khalil Basha
Abdul Malik Al-Hamar
Al-Sheikh Hamad Al-Zamil
Abdul Mohsin Al-Idris
Majid Nizami
Moayed A. Al-Butery
Sartaj Aziz
Mian Muhammad Nawaz Sharif
Hassan Sharif
Asad Hussain
HRH Prince Talal bin Abdulaziz Al Saud

## Exhibit B

Aid Organization of the Ulema
Al Akhtar Trust
Al Haramain Foundation (a/k/a Al Hermain Foundation, Al Haramain, Al Haramain Islamic
    Foundation)
Jamaat-e-Islam

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' Supplemental Requests for Production of Documents Directed to Rabita Trust was served via electronic mail this 1st day of August 2012, upon:

Martin F. McMahon, Esquire
MARTIN F. MCMAHON & ASSOCIATES
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036

Alan R. Kabat, Esquire
BERNABEI & WACHTEL, PLLC
1775 T Street, NW
Washington, DC 20009-7124

(Defendants' Executive Committee's appointed representative to receive discovery requests and responses in 03-MDL-1570)

Robert T. Haefele, Esquire