# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                     )
*In Re* Terrorist Attacks on September 11, 2001      ) No. 03 MDL 1570 (GBD/FM)
                                                     )        ECF Case
_____     )

## <u>WAEL JELAIDAN'S OPPOSITION TO THE PLAINTIFFS' MOTION TO COMPEL/MOTION FOR SANCTIONS</u>

## I.     Introduction

Wael Jelaidan hereby files through undersigned counsel this opposition to the Plaintiffs' January 30, 2013, motion to compel and/or motion for sanctions. Mr. Jelaidan encloses with this opposition various document request letters recently sent to banking institutions (Exhibit 1), the United Nations (Exhibit 2, which also includes a response from the United Nations), the U.S. Treasury Department's Office of Foreign Assets Control (Exhibit 3), and the Saudi Arabian Monetary Authority. (Exhibit 4). Also enclosed is an affidavit (with corresponding letters and responses) authored by Mr. Bassim Alim and Mr. Aftab Altaf—Mr. Jelaidan's legal team in Saudi Arabia—outlining, in part, Mr. Jelaidan's efforts in requesting documents (Exhibit 5), and the attorney-client privileged letter (Exhibit 6) that Mr. Jelaidan has agreed to provide the Plaintiffs in response to their request outlined in their motion. Pls' Motion to Compel, p. 4.

Undersigned counsel has engaged in many electronic communications with Mr. Jelaidan's Saudi Arabian counsel regarding document collection, and certainly would be willing to provide those communications to the Court for an *in camera* inspection—if the Court deems it necessary. Pertaining to responsive documents to Plaintiffs' supplemental requests, which are mostly redundant of past requests, Mr. Jelaidan has made it clear that he either has not been able to collect the relevant documents, or that the requested documents do not exist. (*See* Mr. Jelaidan's most recent affidavit at Exhibit 7 and Mr. Jelaidan's previous opposition to the Plaintiffs' October 17, 2011, motion to compel at Exhibit 8).

## II.    Mr. Jelaidan Has Attempted in Good Faith to Collect Responsive Documents But Many of the Banking and Governmental Institutions Have Not Been Compliant

Mr. Jelaidan has in good faith attempted to collect responsive banking documents, and documents relating to his mistaken designations by various entities. (*See* Exhibits 5, 6, 7, and 8).

In response to Plaintiffs' motion to compel, undersigned counsel has sent document requests to various banking institutions that Mr. Jelaidan has or at one time had a banking relationship with. Such requests are currently outstanding to: Bank Austria, Faisal Finance, Habib Bank, Al Rajhi Banking and Investment Corporation, and the State Bank of Pakistan. (Exhibit 1). These letter document requests should not be viewed as admissions that such documents exist, but just as a best attempt to collect documents if any are available (*e.g.*, some of the bank accounts that the plaintiffs rely on may have been closed decades ago).[1]

### III.   Mr. Jelaidan Does Not Doubt The Accuracy of Professor Gurule's Declaration, But That Declaration Does Not Address The Specific Issues of Mr. Jelaidan's Case

The Plaintiffs' motion to compel touts Professor Jimmy Gurule's declaration that financial institutions are permitted to release information to designated individuals. (Professor Gurule's declaration at Exhibit 9). As the Plaintiffs iterate Professor Gurule's opinions in their January 30, 2013, motion, nothing in the applicable United States executive orders or the United Nations Security Council resolutions preclude financial institutions from releasing banking statements on frozen bank accounts to designated individuals:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.  (Exhibit 9, ¶ 12).
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.  (Exhibit 9, ¶ 13).
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial

---

[1] Habib Bank account number FC-CD-xx 051-1 may have been opened in the mid-1980's, and may have been closed for many years now.

3

institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. (Exhibit 9, ¶ 14).

Mr. Jelaidan does not oppose the accuracy of Professor Gurule's findings. The findings are, however, irrelevant to the precise issue here. It is not whether the financial institutions have the right to provide documents to designated individuals, but rather whether financial institutions are mandated to provide documents to designated individuals. As Mr. Jelaidan, Mr. Bassim Alim, and Mr. Aftab Altaf have stated, the banks have either been non-responsive to requests, or reluctant to release any documents. As a matter of law, the financial institutions are permitted to provide the banking statements to designated individuals, but as a matter of practice, the banks may or may not release the documents for any number of reservations they may have. And as is clear here, the banks have chosen not to be compliant with Mr. Jelaidan's requests.

As discussed above, undersigned counsel has recently sent letters to Mr. Jelaidan's apparent current and past banks in an effort to collect those documents. In the event that those banks previously had any trepidation in dealing with Mr. Jelaidan, hopefully the inclusion of Mr. Gurule's declaration with each letter will assuage any outstanding concerns they may have.

## IV.   Plaintiffs' Supplemental Document Requests are largely duplicative of previous requests

Mr. Jelaidan has reviewed the Plaintiffs' July 31, 2012, supplemental requests for documents, and has no documents responsive to any of the requests, save any responses that may be received from the outstanding letter requests sent by undersigned counsel. As the Plaintiffs' supplemental requests are largely duplicative of their initial requests, any responsive documents have already been provided to the Plaintiffs, or have been submitted in this opposition. Mr. Jelaidan maintains that many of the document requests are wholly irrelevant to him—and so he simply does not have possession of or access to the documents requested.

It is worth noting here that the Plaintiffs' supplemental document requests submitted on July 31, 2012, were untimely—the due date for Defendants' responses was September 4, 2012, five days after the close of discovery on August 30, 2012. Although Mr. Jelaidan was confident that he had no documents to submit in response to the supplemental request, undersigned counsel had asked Plaintiffs' counsel for a short ten day extension of time to file a formal response. (*See* Exhibit 10). Granted, the request for time was on the due date, but Plaintiffs still failed to respond to Mr. Jelaidan's request.

### V.    The Court Should Not Enter a Default Judgment or Sanctions Against Mr. Jelaidan or Counsel

Default judgment is a sanction that should only be used as a "last resort" in extreme situations. *Pennachio v.Powers*, 2010 U.S. Dist. LEXIS 99067, 16-17 (E.D.N.Y. Aug. 9, 2010) ("[T]he Second Circuit regards this sanction as a 'last resort,' preferring litigation on the merits.") (citing *Marfia v. T.C. Ziraat Bankasi*, 100 F.3d 243, 249 (2d. Cir. 1996)); *see also Sec. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (noting that default judgment is "the most severe sanction which the court may apply').

Default Judgment is appropriate "only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Hochberg v. Howlett*, 1994 U.S. Dist. LEXIS 5617, No. 92 Civ. 1822, 1994 WL 174337, *3 (S.D.N.Y. May 3, 1994) (citing *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009); *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002). And courts are "loath to award a default judgment where the damages demanded are high." *Pennachio*, 2010 U.S. Dist. LEXIS 99067, 16-17 (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d

90, 97 (2d Cir. 1993)). The Court of Appeals has determined that "the sanction of dismissal

should not be imposed under Rule 37 unless the failure to comply with a pretrial production

order is due to 'willfulness, bad faith, or any fault'…" *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*

490 F.3d 130, 135 (2d Cir. 2007) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.

1986)).

 The three primary factors that impact the exercise of the court's discretion when

determining whether the most extreme sanction of default judgment is warranted are: (a) fault or

willfulness; (b) the adequacy of notice; and (c) the efficacy of lesser sanctions. *Microsoft Corp.*

*v. Computer Care Ctr., Inc.*, 2008 U.S. Dist. LEXIS 112080, 10 (E.D.N.Y. Apr. 8, 2008) (citing

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 852 (2d Cir. 1995); *see also Dayco Corp.*

*v. Foreign Transactions Corp.*, 1984 U.S. Dist. LEXIS 15031, 6-7 (S.D.N.Y. July 11, 1984)

("[The Court] recognize[s] that even repeated instances of non-compliance with discovery orders

will not justify imposition of the most drastic sanction, *i.e.*, entry of a default judgment, where

the defendant's 'failure to comply has been due to inability, and not to willfulness, bad faith, or

any fault' of the defendant.") (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S.

639, 640 (1976)).

 Because Mr. Jelaidan has not acted in bad faith, a default judgment should not be entered

against him. Mr. Jelaidan himself, his Saudi counsel, and undersigned counsel here, have

requested banking documents on his behalf, and at least until now, those institutions have largely

been unwilling to provide Mr. Jelaidan with any responsive documents. (Exhibits 1, 4, 5, 6, and

7). And as mentioned, many of the documents requested by the Plaintiffs' July 31, 2012

supplemental document request are duplicative of previous requests; but in any event, Mr.

Jelaidan simply does not have in his possession or under his control any documents responsive to

those requests.

The Plaintiffs' case law discussed in footnote 3 of their January 30, 2013, motion to compel, p. 4, is not analogous to this case. *Am. Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521 (S.D.N.Y. 1999) does not help the plaintiffs' because in that case the litigant's disobedience was willful—that litigant intentionally violated five discovery orders. *Id*. at 522. Here, neither Mr. Jelaidan nor his counsels have acted in bad faith, and neither has willfully disregarded discovery orders. As mentioned, in most discovery items requested by the Plaintiffs, Mr. Jelaidan simply does not have any responsive documents.

Similarly, *Montblanc-Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) is not analogous to this case—in Montblanc the litigant had acted willfully and intentionally—Mr. Jelaidan has been engaged in the discovery process, along with his representatives, and the fact remains that Mr. Jelaidan does not have most of the documents requested. Mr. Jelaidan has provided the Plaintiffs with some discovery, and has provided his own sworn testimony—Mr. Jelaidan has every intention to litigate this matter to clear his name; most perceived shortfalls in his document production are due to inability, not willfulness. *Contra Montblanc*, 692 F. Supp. 2d at 252 (explaining that default judgment was warranted because the litigant refused to litigate the matter and provide discovery, which demonstrated his willfulness).

Lastly and likewise, *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106 (S.D.N.Y. 2011) is not helpful. In *Owen*, the litigant had been deposed twice, and also had intentionally misled— and frequently misled—the Plaintiff as to the nature of the search it had conducted. *Id*. at 111. Plaintiffs have not yet deposed Mr. Jelaidan, and as discussed above, neither Mr. Jelaidan nor his representatives have intentionally misled the Plaintiffs.

## VI.    Conclusion

If the Court would like an *in camera* inspection of any privileged materials, *i.e.*, communications between counsel for Mr. Jelaidan, undersigned counsel is more than willing to provide the Court with such opportunity. Undersigned counsel, in response to the Plaintiffs' motion and the November 16, 2011, discovery hearing, has sent letters to potentially relevant financial institutions and government agencies in an attempt to find responsive documents. (Exhibits 1, 2, 3, and 4). But it remains that most of the Plaintiffs' supplemental and previous requests are wholly irrelevant to Mr. Jelaidan, and he simply does not have such documents. Mr. Jelaidan and his counsel have been actively engaged in the discovery process, and have prosecuted discovery in this matter with good faith. We are hopeful that when the Plaintiffs depose Mr. Jelaidan they will find that they have mistakenly accused him—Mr. Jelaidan has been a life-long humanitarian.

Respectfully submitted,

_____/s/_____
Martin F. McMahon, Esq.
Counsel for Defendant Wael Jelaidan

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2013, I caused the foregoing Opposition to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to § 2:9(a). Electronic case filing, 1 Civil Practice in the Southern District of New York § 2:9 (2d ed.).

/s/ Martin McMahon

_____
Martin McMahon, Esq.

# Exhibit 1

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 21, 2013

Bank Austria
1010 Wien, Schottengasse 6-8

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years.  We believe that Mr. Jelaidan has held, or has been a signatory of, one or more bank accounts at <u>Bank Austria. One such account is: xxxxx1587.</u>

Mr. Jelaidan has on many occasions requested his banking documents from Bank Austria but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records—of course, you are *not* permitted to release any funds.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

1

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files you have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the records, please send a letter affirming that either Mr. Jelaidan has never held or been a signatory of an account at your bank, or that Mr. Jeladian's bank account[s] have not experienced any activity since being frozen.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 21, 2013

Faisal Finance (Switzerland) S.A.
3, Quai du Mont-Blanc
P.O. Box 1494-1211
Geneva, Switzerland

**Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File**

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years.  Mr. Jelaidan has held a bank account ending in x0409 at Faisal Finance.

Mr. Jelaidan has on many occasions requested his banking documents from Faisal Finance but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records—of course, you are _not_ permitted to release any funds.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of

1

Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files you have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the records, please send a letter affirming that Mr. Jeladian's bank account[s] have not experienced any activity since being frozen.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
  Managing Partner
  Admitted in District of Columbia, New York
  and U.S. District Court of Maryland

OLIVER TWADDELL
  Associate
  Admitted in New York
  U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
  Associate
  Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
  Of Counsel
  Admitted in Virginia and the District of
  Columbia

JASON A. DZUBOW
  Of Counsel
  Admitted in District of Columbia and
  Maryland

ROBERT MANCE
  Of Counsel
  Admitted in District of Columbia and
  Maryland

February 21, 2013

Habib Bank
Habib Bank Plaza
I.I.Chundrigar Road
Karachi-75650, Pakistan

Re: **URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File**

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years. We believe that Mr. Jelaidan has held, or has been a signatory of, one or more bank accounts at Habib Bank. One account may be: FC-CD xx 051-1.

Mr. Jelaidan has on many occasions requested his banking documents from Habib Bank but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records—of course, you are *not* permitted to release any funds.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of

1

Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files you have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the records, please send a letter affirming either that Mr. Jelaidan has never held accounts, or been a signatory of any account[s] at Habib Bank, or that Mr. Jelaidan's bank account[s] have not experienced any activity since being frozen.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

# MARTIN F. McMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. McMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 21, 2013

Habib Bank
4th Floor, Habib Bank Tower
Jinnah Avenue
Islamabad, Pakistan

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years. We believe that Mr. Jelaidan has held, or has been a signatory of, one or more bank accounts at Habib Bank. One account may be: FC-CD xx 051-1.

Mr. Jelaidan has on many occasions requested his banking documents from Habib Bank but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records—of course, you are *not* permitted to release any funds.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of

Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files you have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the records, please send a letter affirming either that Mr. Jelaidan has never held accounts, or been a signatory of any account[s] at Habib Bank, or that Mr. Jeladian's bank account[s] have not experienced any activity since being frozen.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

# MARTIN F. McMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. McMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 21, 2013

State Bank of Pakistan
Central Directorate
I.I. Chundrigar Road
Karachi, Pakistan

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years. We believe that Mr. Jelaidan has held, or has been a signatory of, one or more bank accounts at Al Rajhi Banking & Investment Corporation, Habib Bank, Bank Austria, and Faisal Finance

Mr. Jelaidan has on many occasions requested his banking documents from the abovementioned banks but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking**

1

statements and related records—of course, you are *not* permitted to release any funds.
Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of
Notre Dame, and former Under Secretary of Enforcement at the United States Department of
Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated
  thereunder, nor the text of UN Security Resolution 1267, nor any related
  Security Council resolutions, preclude a financial institution from providing a
  designated or listed party with account statements concerning an account that
  has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever
  interpreted either E.O. 13224 or UN Security Resolution 1267, or any related
  regulations or security resolutions, to preclude a financial institution from
  providing a designated or listed party with account statements concerning an
  account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have
  ever prohibited or banned or taken action otherwise to preclude a financial
  institution from providing a designated or listed party with account statements
  concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law
by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule
explains in his affidavit, the release of records help to confirm that frozen assets and funds are
indeed frozen consistent with the rules and regulations that attach to designated or listed
individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any and all banking statements and/or files you
have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the
records, please send a letter affirming that Mr. Jeladian's bank account[s] have not
experienced any activity since being frozen.** If you wish to learn more about the release of
documents to designated individuals before releasing Mr. Jelaidan's documents, please call or
write us immediately at the contact information listed above. Finally, if you need proof of our
right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the
execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from
you shortly.

Respectfully,

Martin F. McMahon, Esq.

# ARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 21, 2013

Al Rajhi Banking & Investment Corporation (Malaysia) Berhard
Ground Floor, East Block
Wisma Selangor Dredging
142-B Jalan Ampang
50450 Kuala Lumpur
Malaysia

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any related documents from each bank that he has had an affiliation with over the past many years. We believe that Mr. Jelaidan has held, or has been a signatory of, one or more bank accounts at <u>Al Rajhi Banking & Investment Corporation</u>.

Mr. Jelaidan has on many occasions requested his banking documents from Al Rajhi B and I Corp but has either been met with no response or a rejection. As your institution may know, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

1

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records—of course, you are *not* permitted to release any funds.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files you have for Mr. Jelaidan to my law firm address listed above. If you choose not to release the records, please send a letter affirming that either Mr. Jelaidan has never held or been a signatory of an account at your bank, or that Mr. Jeladian's bank account[s] have not experienced any activity since being frozen.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

2

# Exhibit 2

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

February 21, 2013

Office of the Ombudsperson
Room TB-08041D
United Nations
New York, NY  10017

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any documents relating to his designations from each institution he has banked with and other entities such as the United Nations.

As your institution knows, Mr. Jelaidan has been designated by the United Nation's 1267 committee. We fear that this designation may have been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

**At your earliest convenience, please release any files and records relating to Mr. Jelaidan's designation to my law firm address listed above.** We understand that you may only release certain documents that are not determined to be classified. If you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

1

Thank you for your attention to this very important matter and we look forward to hearing from you shortly. If you require any additional information, please advise.

Respectfully,

Martin F. McMahon, Esq.



**Martin McMahon< mm@martinmcmahonlaw.com>**

## Rabita Trust and Wael Jelaiden

**Ombudsperson** < ombudsperson@un.org>                    Wed, Feb 27, 2013 at 12:13 PM
To: mm@martinmcmahonlaw.com

Dear Mr. McMahon,

I acknowledge receipt of your letters regarding Rabita Trust and Mr. Wael Jelaiden. The role of the Ombudsperson is to consider any requests for de-listing from the Al-Qaida Sanctions List. After a period of information gathering and dialogue with the Petitioner and any relevant State(s), I prepare and submit a Comprehensive Report to the Committee which contains a recommendation for de-listing. Unfortunately, the request submitted in your letters falls outside of my mandate with the Security Council. More information on my role can be found on my website at the following address: http://www.un.org/en/sc/ombudsperson/

In these circumstances, I have passed on your letters to the Secretary of the Al-Qaida Sanctions Committee, Mr. Kiho Cha (cha@un.org), who in turn will notify the Chair of the Committee as to your request.

If you have any questions or require further clarification please do not hesitate to contact me.

Kimberly Prost
Ombudsperson

# Exhibit 3

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

OLIVER TWADDELL
Associate
Admitted in New York
U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
Associate
Admitted in Massachusetts

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of
Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

19 February 2013

VIA FIRST CLASS MAIL

Office of Foreign Assets Control
U.S. Department of Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, DC  20220

### Re: Rabita Trust and Wael Jelaidan

To Whom It Concerns,

We are counsel to Rabita Trust (RT) and Wael Jelaidan (WJ), and have the requisite licenses to legally represent them. As you may be aware, both RT and WJ are defendants in the multi-district litigation currently being adjudicated in the U.S. District Court for the Southern District of New York.

**We are writing to request a copy of the unclassified administrative record for both RT and WJ. If you are unable to provide us with a hard copy of the record, please inform us whether the record contains any banking statements or other financial documents concerning any banking institutions that either WJ or RT had relationships with**.

This information is important because both WJ and RT have not been able to secure from their respective banks directly, any of those banking records after exhaustive attempts to do so. The many banks they have relationships with (and have frozen their accounts) seem unwilling to accommodate any requests for banking statements, despite RT and WJ's right to the information. Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a

1

designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.

- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As soon as possible, please provide us with any information pertinent to the above request. My firm will follow up with your office shortly. Thank you in advance for your attention to this important matter.

Very truly yours,

*/s/ Martin F. McMahon*

Martin McMahon, Esq.
Managing Partner

Exhibit 4

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
  Managing Partner
  Admitted in District of Columbia, New York
  and U.S. District Court of Maryland

OLIVER TWADDELL
  Associate
  Admitted in New York
  U.S. Court of Appeals for Veterans Claims

JOHN ZEVITAS
  Associate
  Admitted in Massachusetts

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

CHRISTINE M. HILGEMAN
  Of Counsel
  Admitted in Virginia and the District of
  Columbia

JASON A. DZUBOW
  Of Counsel
  Admitted in District of Columbia and
  Maryland

ROBERT MANCE
  Of Counsel
  Admitted in District of Columbia and
  Maryland

February 21, 2013

Saudi Arabian Monetary Agency (SAMA)
Attn: Anti-Money Laundering Committee
Head Office – Riyadh
P.O. Box 2992
Riyadh 11169

### Re: URGENT: Request for Mr. Wael Hamza Jelaidan's Bank Records and/or File

Dear Sir or Madame,

This letter serves to inform you that my law firm, Martin McMahon and Associates represents Mr. Wael Jelaidan in connection with multi-district civil litigation in the United States District Court for the Southern District of New York.

Mr. Jelaidan is a defendant in that litigation and has been the subject of multiple document requests and a motion to compel, requesting that Mr. Jelaidan obtain all his bank statements and any documents relating to his designations from each institution he has banked with and other entities such as the United Nations and SAMA.

As your institution knows, Mr. Jelaidan has been designated by the United Nation's 1267 committee. This designation has been misunderstood by many of his banks, resulting in a hindrance to Mr. Jelaidan's ability to request, receive, and produce any documents in response to numerous document requests filed in the civil litigation in New York. And as a result, the non-production of documents has adversely affected Mr. Jelaidan's ability to fairly and successfully adjudicate the civil case against him.

In order to assuage any concerns you may have in releasing documents to my firm on behalf of Mr. Jelaidan, **I want to assure your institution that it is permitted to release banking statements and related records.** Please find attached an affidavit by Mr. Jimmy Gurule, a Professor of Law at the University of Notre Dame, and former Under Secretary of Enforcement at the United States Department of Treasury. Professor Gurule declares:

1

- Neither the text of E[xecutive] O[rder] 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 12.
- Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 13.
- And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked. *See* Affidavit, ¶ 14.

As informed by Professor Gurule, your institution will not be violating international banking law by only releasing Mr. Jelaidan's bank statements and related documents. In fact, as Mr. Gurule explains in his affidavit, the release of records help to confirm that frozen assets and funds are indeed frozen consistent with the rules and regulations that attach to designated or listed individuals. *See* Affidavit, ¶ 15.

**At your earliest convenience, please release any banking statements and/or files relating to any of Mr. Jelaidan's designations to my law firm address listed above.** If you wish to learn more about the release of documents to designated individuals before releasing Mr. Jelaidan's documents, please call or write us immediately at the contact information listed above. Finally, if you need proof of our right to legally make such a request on Mr. Jelaidan's behalf, please advise. If you require the execution of a power of attorney, please send us a copy of your typical power of attorney form.

Thank you for your attention to this very important matter and we look forward to hearing from you shortly.

Respectfully,

Martin F. McMahon, Esq.

2

# Exhibit 5

Law Firm of
**Bassim A. Alim & Associates**
Ministry of Justice
License No. 98/23



مكتـب
د. باسم عبدالله عالِم ومشاركيه
للإستشارات القانونية والمحاماة
ترخيص وزارة العدل رقم ٩٨/٢٣

Date: 26/02/2013G
Ref:   22668/01/01

## Affidavit

### To Whom it may concern

Subject: <u>**Evidence of attempt to contact banks for statements.**</u>

With regards of the above mentioned subject, we hereby testify that Mr. Wael Hamza Jelaidan has sent the following:

1) A letter dated 21 August 2001 to the Governor of the State Bank of Pakistan asking for removing the ban on the six accounts of Rabita Trust (attached).

2) A letter dated 28 April 2012 to Turkish Co. for Financing & Joint-stock Partnership asking for the account records in response to their electronic generated letter No. 6/2 dated 30 January 2012 (attached).

Both letters were prepared by Mr. Aftab H. Altaf in his capacity as the personal assistant to Mr. Wael Jelaidan and reviewed by Bassim A. Alim in his capacity as the lawyer of Mr. Wael Jelaidan.

We hereby undersign;

**Bassim A. Alim, Esq.**
**Advocate & Legal Consultant**
Legal Practice License (98/23)

**Aftab H. Altaf**
**Personal Assistant**
to Mr. Wael H. Jelaidan

## Turkey for Financing

Date: 30/01/2012
No.: 6/2

Turkish Co. for Financing and joint-stock partnership
Head Office
Yafagic Site, Adnan Qahwaji St. No. 139 38576 Qartal, Istanbul
Tel:. 0216 4525454

Mr. **Wael Jelaldan**
Jeddah 1436 –Kingdom of Saudi Arabia

Due not to make any of transactions effective 31/12/2001 in your account in branch No. 2-99007367, upon the acceptance of deposits and the Fund of Participation, withdraw and over-time deposits and the Fund of Participation, it is a must to turn the saving account into a fund of insurance, maximum up to 15/05/2012, based on the Article No. (8) of the principles of private assets, receivables and deposits.

Accordingly, in order not to give an opportunity for this position and to cut off the passage of time, kindly visit our branch as soon as possible.

Best regards.

Turkish Co. for Financing and joint-stock partnership

Tophane Branch

<u>**Turkey for Financing**</u>

Date: 30/01/2012
No.: 6/2

Turkish Co. for Financing and joint-stock partnership
Head Office
Yafagic Site, Adnan Qahwaji St. No. 139 38576 Qartal, Istanbul

<u>Registered Mail</u>

Wael Hamzah Jelaidan
P.O.Box 3436
Jeddah 21481
Saudi Arabia
28 April 2012

The Director Tophane Branch,
Turkish Co. for Financing and joint-stock partnership,
Head Office Yafagic Site,
Adnan Qahwaji St. No. 139 38576 Qartal, Istanbul, Turkey.
Tel: 0216 4525454

Subject: A/C 99007367-2  Mr. Wael Jelaidan

Dear Sir,

I hereby confirm the receipt of your letter with reference No. 6/2 dated 30/1/2012 concerning the status of my  Account No. 99007367-2 at your bank.

With regards to the above and any financial movements out of the account, I would like to state my position that the said account should not be transferred to any insurance fund and should either, return to my disposal or at the least be shifted to an Islamic saving account.

In addition to the above and in light of your recent communication, I hereby request that you kindly provide me with the all my account records available with you.

I would also like to inform you that this is your first letter that I have received so far. I have never received any previous letters nor statements including any bank records, notices or even the fact that the name of your bank has been changed, despite the fact that you had my permanent address available with you.

In conclusion, I hope this most recent correspondence indicates the renewed possibility for using the account personally and commercially to which I would ask for your reconfirmation of such understanding.

Best regards,

Wael Hamzah Jelaidan

Note:  A copy of the official translation of your letter dated 30.1.2012 is attached with this letter.

TÜRKİYE
FİNANS

30/01/2012

Sayın JELAİDAN WAEL H.A.

JEDDAH 1436

TÜRKİYE FİNANS KATILIM BANKASI A.Ş.
Genel Müdürlük

Turkish Post

Ptt

yurtdışı / international

Sayın JELAİDAN WAEL H.A. ,

Şubemiz nezdinde mevcut olan 99007367-2 nolu katılım fonu hesabınız 31/12/2001 tarihinden itibaren bir işlem görmediğinden, Mevduat ve Katılım Fonunun Kabulüne, Çekilmesine ve Zamanaşımına Uğrayan Mevduat ve Katılım Fonu, Emanet ve Alacaklara İlişkin Usul Ve Esaslar Hakkında Yönetmelik'in 8.maddesi gereğince en geç 15/05/2012 tarihine kadar Tasarruf Mevduatı Sigorta Fonu'na devredilmesi gerekmektedir.

Bu duruma meydan verilmemek üzere zamanaşımının kesilmesini teminen en kısa zamanda şubemize müracaat etmenizi rica ederiz.

Saygılarımızla,

TÜRKİYE FİNANS KATILIM BANKASI A.Ş.
TOPHANE ŞUBE



البريد السعودي (شركة)
Almusadla,Almusadla
28-Apr-2012 7:49:51 PM

رقم : 229678
المكتب : 125900
كونتر : 7:
المستخدم : Jedmususer5
حالة : 1190 :
رقم الصفحة : NILL :

| عملية | نوع الحركة | الأجرة | الباركود | | |
|---|---|---|---|---|---|
| TR | 0.03 | RP7093217665A | الرسم | | |
| | | Registration | نقل | | |
| | | Registered | | | |

| | | | الكمية | | |
|---|---|---|---|---|---|
| 4.00 | | | | | |
| 5.00 | | | | | |
| 1. | | | | | |
| 1 | | السعر المفرد | | | |
| SR.9.00 | | | | | |
| SR.9.00 | | | | | |
| SR.0.00 | | المبلغ المدفوع | | | |

غير شركة البريد
www.sp.com.sa
920005700

# Exhibit 6



Law Firm of
Bassim A. Alim & Associates
Ministry of Justice
License No. 98/23

مكتـب
د. باسم عبدالله عالم ومشاركيه
للإستشارات القانونية والمحاماة
ترخيص وزارة العدل رقم ٢٣/٩٨

Date: 26/11/2011G
Ref: 22565/01/201

### Client-Attorney Privileged Information and Correspondence

To:     **Mr. Martin F. McMahon**

**Transnational Business Attys. Group**

Connecticut Bldg., Ninth Floor
150 Connecticut Ave., N.W.
Washington, D.C. 20036
United States of America

Phone:    +1 (202) 8624343
Fax:      +1 (202) 8624302
E-mail:   mfm@martinmcmahonlaw.com
          lawmfm@hotmail.com

From:   **Bassim A. Alim, Esq.**

**Law Firm of Bassim A. Alim & Associates**

Jeddah, Saudi Arabia
www.alimlaw.com

*Dear Mr. McMahon;*

Thank You for your E-Mail dated 17th. Nov. 2011.

After a detailed discussion with Mr. Jelaidan regarding the discovery requests, I would like to reiterate what we all understand and know but sometimes forget to incorporate in the midst of all the legal jousting that is taking place.

Mr. Jelaidan, was and still is a person with limited maneuvering capabilities due to the freezing of his assets, bank accounts and a plethora of other issues locally and internationally. Mr. Jelaidan went through many hurdles trying to obtain the necessary exculpatory information, but even then as is true now, he is unable to get any satisfactory response from any of the Governmental and commercial entities he corresponded with.

201-01/22565.261111AD/OB

طريق الملك عبدالله ـ شارع عبير ـ الدور الرابع مكتب رقم ١٧ ـ ص.ب ١٠٣٦١ جدة ٢١٤٣٣ ـ المملكة العربية السعودية ـ هاتف ٦٥١٣٣٢١ (٢) ٩٦٦+ ـ فاكس ٦٥١٠٨٤٦ (٢) ٩٦٦+ ـ ت.ع.م رقم ٤٧٢٥٨
King Abdullah Road, Abeer Building Office No. 17, P.O. Box: 10361 Jeddah 21433, Saudi Arabia. Phone: +966 (2) 651-3321, Fax: +966 (2) 651-0846, J.C.C. 47258
Website: www.alimlaw.com ـ الموقع: E-mail: alim@alimlaw.com ـ البريد الإلكتروني:



As Mr. Jelaidan's Lawyer, I can assure all parties concerned that Mr. Jelaidan cannot produce nor procure any further information than what has already been received by the Plaintiffs and the court. All entities contacted by us are simply non-responsive.

Both Mr. Jelaidan and Myself are prepared to sign any requested letter for the court to initiate a document request from whichever entity the court finds is relevant. The best method is for the court to seek these document through a formal official request via the Saudi Arabian Embassy in Washington which could be more effective.

Last but not least, it is worth mentioning that most of the entities which Mr. Jelaidan is expected to contact and receive the information from, are on the case defendants list, and the plaintiffs should ask them directly instead of the round about way.

I remain available for any lending hand in order for justice to be achieved but will not be able to communicate with the given entities any further.

Best Regards,

**Bassim A. Alim, Esq.**
**Advocate & Legal Consultant**
**Legal Practice License (98/23)**

طريق الملك عبدالله ـ عمارة عبير ـ الدور الرابع مكتب رقم ١٧ ـ ص.ب ١٠٣٦١ جدة ٢١٤٣٣ ـ المملكة العربية السعودية ـ هاتف ٦٥١٣٣٢١ (٢) ٩٦٦+ فاكس ٦٥١٠٨٤٦ (٢) ٩٦٦+ ـ س.ت رقم ٤٧٣٥٨
King Abdullah Road, Abeer Building Office No. 17, P.O. Box: 10361 Jeddah 21433, Saudi Arabia, Phone: +966 (2) 651-3321, Fax: +966 (2) 651-0846, J.C.C. 47358
Website: www.alimlaw.com الموقع ـ E-mail: alim@alimlaw.com البريد الإلكتروني

# Exhibit 7

Affidavit of Wael Hamzah Jelaidan

IN THE NAME OF GOD, THE MERCIFUL, THE COMPASSIONATE

I Wael Hamzah Jelaidan, state as follows:

1. I give this affidavit in support of our memorandum in opposition to the plaintiffs' motion to compel.

2. I do not now and have never supported international terrorism of any kind, and the only relationship I had with Osama bin-Laden was in connection with my supporting humanitarian efforts in Afghanistan in the late 1980's. There was a tremendous number of Afghani refugees who fled into Pakistan during that time due to the Russian invasion and occupation. I would like to add that during my limited interaction with Osama Binladen, he was an acceptable figure locally and internationally.  Further, I would mention that I ran my Offices in complete transparency to the extent that Local and International envoys systematically visited our offices and project sites including the US Embassy officials and His Excellency President Jimmy Carter and Mrs. Carter.

3. My humanitarian career began with the Saudi Red Crescent during 1986 – 88, and then I directed the Muslim World League office in Pakistan from 1989-1994 in addition to being the Director of the Muslim World League office in Pakistan, I was also given the added responsibility of overseeing the repatriation of the Stranded Pakistanis in Bangladesh as the Manager of the said Project (AKA Rabita Trust) since 1992 onwards till 1994.  I want the court to know specifically that, in connection with Pakistani activities, there was a complete separation between the MWL and IIRO organizations—separate offices, bank accounts, etc.

4. I have been the Secretary-General of the Rabita Trust since 1999 till this date.  It is worth noting that although, I submitted my resignation, it was never ratified nor accepted.  Rabita Trust was a humanitarian organization that engaged in the construction of housing units for the repatriation and rehabilitation of Pakistanis displaced in Bangladesh by the 1970 Indo-Pakistan War.

5. On 11/09/2002, I was designated by the UN as a " individual associated with Al-Qaida".  Since then, as mentioned below, all of my bank accounts have been frozen by the respective governments of which the accounts were located.  I do not possess any documents, such as notifications, concerning these accounts being frozen. With several of these accounts, I was made aware that they were frozen via a phone call or verbal answer to my inquiries.

6. On or about 2001, the Pakistani Authorities froze all of Rabita Trust's bank accounts and confiscated any and all of its documents. The bank accounts referred

to by the Plaintiffs were mainly for the "Stranded Pakistanis in Bangladesh" Repatriation Program. I was the signatory for these accounts. Ever since the Pakistani Authorities seized these accounts, I have been unable to access them nor obtain documents. Any documents that are in my control have been handed over to the Plaintiffs.

7. I did have a personal bank account with Faisal Finance S.A. in Switzerland. However, after the said UN Designation, the account was frozen by the Swiss Authorities per the UN directive. Since then, I do not have the legal authority to access the account nor request any documentation. On several occasions, I have initiated contact with the bank but they have not been responsive. It is very important to understand that because of my designation by the UN, I have been barred from traveling abroad to contact the Banks in person, which has made the requisite effort extremely difficult and in many cases unattainable.

8. I did maintain a bank account with Al Rajhi Bank to facilitate my personal finances. However, that accounts have been frozen and is controlled by the Saudi Authorities. Since the Kingdom has confiscated my account, I neither have authority to access the account nor request any documentation. I have contacted the bank on several occasions and was informed that all relevant information in regards to the account can only be disseminated by the Saudi Authorities.

9. To the best of my recollection, the joint account with Usama bin Laden at Habib Bank was opened in 1985 during the height of the Soviet invasion and occupation of Afghanistan. The account was solely used to receive governmental aid and donations allotted to the Afghan refugees. This account has also been frozen. I have attempted to acquire responsive documents from the bank, but they are not willing to cooperate with me.

10. Over the years, I have had signatory authority over charity accounts with the MWL, Rabita Trust, SJRC, AHAMAA, and SRC. I have never had signatory authority over any account associated with IIRO. I was the principal officer for SRC in Pakistan, MWL in Pakistan, Rabita Trust in Pakistan and SJRC in Albania and Kosovo. Though I used to have signatory authority, I no longer work for these organizations and have been currently out of touch with all of them. As a result, I do not have access or control over any of these said accounts and cannot obtain documents concerning these accounts.

11. Maram Company did maintain bank accounts in Turkey. However, Maram Co. has long ceased operations. I do not have authority to access any of these accounts and cannot request any documentation.

12. I did have an account at the Bank of Austria but cannot recall the account number. If the account number mentioned by the Plaintiffs is that of the Third World Relief Agency, then I had no privity at all to it. If the account number was that of my personal account, then I do not have any control or access to the said account at this time. That personal account was used to receive donations for the purpose of humanitarian aid as part of the international humanitarian effort for the Bosnia Herzegovina Refugee's plight during the Serbian Ethnic Cleansing.

13. I also had a personal account in Turkey, but like every other account, it has been frozen due to my UN designation. Therefore, I neither have access to nor legal authority to oversee the account and secure documentation pertaining to the account.

14. As stated previously, I have tried on several occasions to initiate contact with some of the Banks mentioned above; however, to this date, my efforts have been fruitless. Because of my designation I am barred from traveling and cannot contact the banks in person. When I attempt to contact them, they are not willing to cooperate because of my designation.

15. I do know Yassin Kadi and Chafiq Ayadi but do not possess any records documenting any money transfers nor any documents relating to any business relationship with them. I may have sat on a board with them but do not recall the exact board, date or organization.

16. The Plaintiffs refer to debt repayment transfers made by H.E. the representative and Humanitarian Envoy of the President of Bosnia Herzegovina Mr. Hasan Cengic. I do not recall wether any payment were indeed made by Mr. Cengic. However, to be precise, all debt repayment transactions were repayment of comfort loans (banking overdraft) extended to the Bosnian Government to help their relief efforts. This loan was continuously repaid via monies received by the Bosnian Government from international Governmental & Non Governmental Organizations and was subsequently utilized when necessary because the funds were in short supply and not always available when needed. In other words, these transfers were very much like a revolving credit mechanism. As to the six money transfers specifically mentioned by the Plaintiffs, I do not recall the specifics of them.

17. The Plaintiffs mentioned my relationships with Adel Batterjee and Mohamed Bayazid. I do not have any documents in my possession concerning these individuals.

_____                    _____
Wael Jelaidan                                Date

29 - 10 - 2011

The Law [Office & Associates]
No. 25.
Certifies that the above signing person was presented
before me and the signature which appears on this
document is his/her correct signature, without assuming
any responsibility for the contents of the document
Bassim A. Alim, Esq.
Attorney at Law
Ministry of Justice License No. 98/23
Kingdom [of Saudi Arabia]

# Exhibit 8

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
  Managing Partner
  Admitted in District of Columbia, New York
  and U.S. District Court of Maryland

CHRISTINE M. HILGEMAN
  Of Counsel
  Admitted in Virginia and the District of
  Columbia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

## DEFENDANT WAEL JELAIDAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

October 31, 2011

The Honorable Frank Maas
United States District for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007

    Re:   *In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD) (FM)*

    COMES NOW the Defendant, Wael Jelaidan, and hereby files, through undersigned counsel, his opposition to Plaintiffs' motion to compel. The motion should be denied because the Defendant has put forth a good faith effort and produced all documents that are within his possession and control.  As explained *infra* and as detailed in the attached affidavit of Wael Jelaidan, despite Plaintiffs' contentions that the Defendant has maintained control over the referenced accounts, the reality is that due to his designation by the United Nations, he has lost his ability to access documents concerning the referenced bank accounts. These accounts have been seized and the respective governments have frozen their funds. The Defendant has made several attempts to contact such banks, but none of them are willing to cooperate and respond to his requests.

    In 2001, the United Nations issued the United Nations Security Council Resolution 1373 which requires UN member states to prohibit their nationals from supporting designated terrorists by "making any funds, financial assets or economic resources or financial or other related services available, directly, or indirectly…" to designated individuals.[1] Exhibit 1. Since the Resolution was passed, UN member states and their respective banks have taken steps to freeze the bank accounts of UN designated terrorists. *See, e.g.,* Royal Embassy of Saudi Arabia, *Initiatives and Actions Taken by the Kingdom of Saudi Arabia to Combat Terrorism* 12 (March

---

[1] Additionally, as made abundantly clear by the Treasury Department's Office of Foreign Assets Control, anyone who wishes to conduct business with Mr. Jelaidan, even if only to transmit banking records, has to secure a specific license to do so; otherwise he is breaking the law.

1

2004) ("In the summer of 2002, in another successful joint anti-terrorism action, the Kingdom of Saudi Arabia and the United States took steps to freeze the assets of a close bin Laden aide, Wa'el Hamza Julaidan, who is believed to have funneled money to al-Qaeda."). Because of the designation, not only has he lost control over the accounts and the ability to obtain account documents, banks are also not willing to cooperate with the Defendant.

As a result, the Plaintiffs' motion to compel should be denied because: the Defendant does not have access or control over the frozen accounts referenced by the Plaintiffs as a result of his designation; the Defendant has made a good faith effort to comply with the Plaintiffs' document request and as detailed in his affidavit, has attempted to acquire documents from the banks regarding his accounts on several occasions; to this date, the Defendant has provided opposing counsel with all responsive documents within his possession and control; and nothing has precluded the Plaintiffs from subpoenaing the various bank accounts which they reference in their motion to compel if they deem that appropriate.

1.   **Mr. Jelaidan does *not* have control over his bank accounts due to his designation by the U.S. government and the United Nations, and therefore, *cannot* produce any documents associated with those accounts**

As the Plaintiffs correctly point out, "control has been defined to include the legal right to obtain the documents requested upon demand…" *See United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D 135 (S.D.N.Y 1997) (stating that, "documents are considered to be under a party's control when that party has the right, authority or practical ability to obtain the documents from a non-party to the action"); *In Re Flag Telecom Holdings*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").

As made clear in Mr. Jelaidan's affidavit, he does not have the authority, legal right, or ability to obtain documents responsive to the Plaintiffs requests from any of the following banking institutions and/or accounts: Faisal Finance Account (Switzerland); Al Rajhi Banking and Investment Corp.; Habib Bank; Rabita Trust accounts; Third World Relief Agency bank accounts (Bank Austria accounts); or bank accounts in Turkey concerning the Maram Company. *See* Wael Hamzah Jelaidan Aff., ¶ 5 – 13, Exhibit 2 (hereinafter "Jelaidan Aff."). Mr. Jelaidan's mistaken designation is essentially an absolute hindrance on his capability to obtain any banking documents. Despite Mr. Jelaidan's past signatory authority over many charity accounts, including the MWL, Rabita Trust, SJRC, AHAMAA, and SRC, he has long ceased to have any working relationship with these entities and ergo, has no authority to obtain or request any documents from these institutions. *See* Jelaidan Aff., ¶ 10. Mr. Jelaidan's connection with these entities was purely for humanitarian and/or business purposes and never for illegal, much less terrorist, endeavors.

Contrary to the Plaintiffs' assertions, Mr. Jelaidan has made a good faith effort to obtain these banking records. On many occasions, Mr. Jelaidan has attempted to obtain documents responsive to the Plaintiffs' requests, but as outlined above, the banking entities in question are not willing to cooperate with him and therefore, he has not been able to obtain any additional

documents not already provided to the Plaintiffs. Mr. Jelaidan also is unable to meet with the bank officials in person because he is barred from traveling abroad as a result of being designated by the UN. *See* Jelaidan Aff., ¶ 7. Because these banks are not willing to cooperate with the Defendant and because he is unable to meet with them in person, Mr. Jelaidan has exhausted all methods of retrieving any documents concerning his bank accounts and thus has made a good faith effort to comply with the Plaintiffs' document request. Mr. Jelaidan should not be penalized for failing to produce documents he has no control over.

### 2. Mr. Jelaidan has no further documents relating to relationships that he has/had with particular individuals named in the Plaintiffs' motion to compel

Plaintiffs assert that the Defendant has failed to produce documents relating to various individuals including Yassin Kadi and Chafiq Ayadi. Even though it is possible that the Defendant served on a board with Yassan Kadi or Chafiq Ayadi, he has no access to any documents that may be responsive to the Plaintiffs' requests. *See* Jelaidan Aff., ¶ 15.

Mr. Jelaidan also does not have any documents in his possession or control concerning his relationship to Hasan Cengic. In a chart on page 17 of the Plaintiffs' motion, they point to several significant monetary transfers made to Mr. Cengic in 1993 as evidence that he has maintained a relationship with Mr. Cengic. These monetary transfers which are labeled as "debt repayment[s]" to Hasan Cengic are nothing more than "comfort loans" extended to the Bosnian Government for relief efforts. The Bosnian Government constantly repaid these loans. *See* Jelaidan Aff., ¶ 10. Mr. Jelaidan does not recall the specifics of the six (6) referenced transfers and does not possess or control documents concerning them. *See* Jelaidan Aff., ¶ 16.

The Plaintiffs also allege that Mr. Jelaidan has a relationship with Adel Batterjee and Mohamed Bayazid (a former co-owner of Maram Company), and that he has failed to produce any documents regarding his relationships with them. Though the Defendant has been acquainted with them in the past, he does not have any documents responsive to the Plaintiffs' requests in his possession or control. *See* Jelaidan Aff., ¶ 17.

### 3. Mr. Jelaidan has previously submitted to the Plaintiffs any and all documents he is aware of concerning the sanctions that have been levied against him

Plaintiffs assert that the Defendant has failed to turn over all documents relating to the sanctions imposed upon him. As mentioned in the Defendant's Production of Documents response, Mr. Jelaidan does not have any additional documents, nor does he have access to any additional documents concerning the sanctions or investigations that have been rendered or conducted against him by the United Nations, the United States Government, or the Saudi Arabian Government. As described above, Mr. Jelaidan's designation is a plenary roadblock to his ability to request or obtain any documents that may be responsive to the Plaintiffs' requests.

4. **Defendant cannot recall any documents that have been lost, discarded, or destroyed**

Plaintiffs assert that Mr. Jelaidan has failed to identify all documents that were in his possession, custody or control that have now been lost, discarded or destroyed. This assertion stems from the Plaintiffs' opinion that Mr. Jelaidan has intentionally discarded documents. This opinion is false. Mr. Jelaidan has acted in good faith and has produced all documents that are within his possession or control. The Defendant cannot readily recall any documents that may have been lost or discarded within the relevant time period.

5. **The Court need only take a cursory look at the Plaintiffs' motion to compel to decipher the flagrantly weak case that the Plaintiffs have constructed against Mr. Jelaidan—thus, Mr. Jelaidan objects to an earlier discovery date of 1988**

Defendant objects to an earlier discovery date of 1988. Judge Daniels ordered a discovery date of 1992—nine (9) years before the terrorist attacks of September 11, 2001. Plaintiffs' request for an even earlier date is unnecessary and inappropriate as being well beyond the scope of relevance in this case. It is clear that the Plaintiffs' recent recognition of the weakness of their case against Mr. Jelaidan has prompted the instant request of an earlier discovery date. Any humanitarian efforts that Mr. Jelaidan engaged in during the 1980s, or distant relationships he had then, is wholly irrelevant to whether he assisted in the financing of terrorist attacks that occurred thirteen (13) years later. Mr. Jelaidan has dedicated his life to humanitarian efforts and his name on a questionable document (i.e., the Golden Chain document—which has been rejected by a number of courts so this Court should not entertain it as a reliable document either), or his name passively mentioned in an interview in 1998, is hardly reliable evidence to base an entire case on.

6. **Conclusion**

In conclusion, the Plaintiffs have offered no evidence to prove that an entity or individual can deal with an international designated global terrorist without proceeding through regulatory agencies within the countries where the bank accounts are located. And they have not proffered any rationale as to why they cannot subpoena records from the various banks. The Plaintiffs have to concede that Mr. Jelaidan is basically under house arrest and is confined to the Kingdom—thus he cannot travel across the globe and meet with these banks to resolve issues concerning records. Banks will not go out of their way to accommodate alleged international terrorists. Thus, there is no basis for entry of an order compelling further production of documents by Defendant Jelaidan.

Respectfully Submitted,

Martin F. McMahon, Esq.

# Exhibit 9

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks on September 11, 2001

03 MDL 1570 (GBD)(FM)

DECLARATION OF PROFESSOR
JIMMY GURULÉ

I, Professor Jimmy Gurulé, under penalties as provided by law, declare that the statements set forth in this Declaration are true and correct. I am over the age of 21 and have personal knowledge of the facts as set forth herein.

## I.  Background

1.      My expertise is described more completely in paragraphs 2 – 8 below and in my *curriculum vitae*, which is attached hereto as Exhibit A.  In summary, I am a former Under Secretary (Enforcement) of the U.S. Department of Treasury, where I was the Treasury Department's official responsible for overseeing its Office of Foreign Asset Control ("OFAC") in administering and enforcing the United States' economic sanctions policies and programs.  Presently I am a full professor of law at Notre Dame Law School, where I have taught courses in Criminal Law, White Collar Crime, International Criminal Law, and the Law of Terrorism. As a law professor since 1989, I have taught courses, conducted research, published scholarly articles and books, and lectured domestically and internationally on the subjects of anti-money laundering and countering the financing of terrorism.

2.      In my capacity as Under Secretary for Enforcement, U.S. Department of the Treasury, from 2001-2003, I had oversight responsibility for several major federal law enforcement agencies, including the U.S. Secret Service; U.S. Customs Service; Bureau of Alcohol, Tobacco and

Firearms; Executive Office of Asset Forfeiture; Financial Crimes Enforcement Network (FinCEN); and the Office of Foreign Assets Control (OFAC). The U.S. Customs Service (now part of the Department of Homeland Security and known as Immigration and Customs Enforcement) conducts complex money laundering investigations. FinCEN is the federal agency responsible for enforcing the Bank Secrecy Act (31 U.S.C. § 5311 et seq), and OFAC administers and enforces the United States' economic sanctions policies and programs, including those imposed under Executive Order No. 13224 ("E.O. 13224"), blocking property and prohibiting transactions with persons who commit, threaten to commit, or support terrorism.

3.       While Under Secretary of the Treasury, I played a central role in developing and implementing the U.S. Government's anti-terrorist financing strategy. Among other things, I was responsible for drafting the 2001 and 2002 National Money Laundering Strategy (NMLS). The NMLS is intended to prioritize, focus, and coordinate the U.S. Government's resources used to combat money laundering and terrorist financing. Several federal agencies, bureaus and offices are involved in developing and implementing the NMLS, including: the U.S. Department of the Treasury; U.S. Department of Justice; U.S. Department of State; Federal Bureau of Investigation; Drug Enforcement Administration; Federal Deposit Insurance Corporation; Federal Reserve Board; FinCEN; OFAC; Internal Revenue Service; Office of the Comptroller of the Currency; Office of Thrift Supervision; Immigration and Custom Enforcement; U.S. Postal Inspection Service; U.S. Secret Service; Office of National Drug Control Policy; U.S. Securities and Exchange Commission; and Treasury Department Executive Office of Asset Forfeiture.

4.       As a component of my role in developing and implementing the U.S. Government's anti-terrorist financing strategy, I had responsibility as Under Secretary for coordinating America's anti-terrorist financing programs, to include the E.O. 13224 designation program, with the complementary programs of our international partners, to include the designation and sanctions

2

programs administered by the United Nations Security Council Committee established pursuant to Resolution 1267 (the UN 1267 Committee). Among other duties, the UN 1267 Committee oversees the implementation by UN Member States of the three sanctions measures (assets freeze, travel ban and arms embargo) imposed by the Security Council on individuals and entities associated with the al Qaeda terrorist organization.

5.    While Under Secretary, I also supervised the promulgation of the Treasury Department regulations implementing the anti-money laundering and counter-terrorist financing provisions of the USA PATRIOT Act (P.L. 107-56, 115 Stat. 272 (2001)).

6.    As an expert in anti-money laundering and countering terrorist financing, I have given lectures at conferences, universities, before international bankers associations, and other venues located domestically and abroad, including: Milan, Rome, and Naples, Italy; London, England; Vienna, Austria; Brussels, Belgium; Madrid and Barcelona, Spain; Davos, Switzerland (World Economic Forum); Luxembourg, Luxembourg; Mumbai, New Delhi, Pune, and Calcutta, India; Asuncion, Paraguay; Tirana, Albania; New York City, New York (International Organization of Securities Commissioners and Institute of International Bankers); Miami, Florida (Florida International Bankers Association); and Las Vegas, Nevada (Association of Certified Anti-Money Laundering Specialists).

7.    As Under Secretary, I gave two presentations to the UN 1267 Committee on the Treasury Department designation process. In late 2001, I gave a presentation discussing the process employed by the U.S. Government for placing the names of individuals and entities on the Treasury Department list. Further, in early 2002, I explained the delisting process for removing names from the Treasury list.

8.    I am the author and co-author of numerous books, law review articles, and other publications on money laundering and terrorist financing, including: PRINCIPLES OF

3

COUNTERTERRORISM LAW (West Publ. 2011 ) (co-authored with Prof. Geoffrey Corn);
UNFUNDING TERROR: THE LEGAL RESPONSE TO THE FINANCING OF GLOBAL
TERRORISM (Edward Elgar 2008); COMPLEX CRIMINAL LITIGATION: PROSECUTING
DRUG ENTERPRISES AND ORGANIZED CRIME (LEXIS 2d ed., 2001); INTERNATIONAL
CRIMINAL LAW: CASES AND MATERIALS (Carolina Academic Press 3d ed., 2007) (co-
authored with Jordan Paust, Cherif Bassiouni, Michael Scharf, Leila Sadat and Bruce Zagaris); THE
LAW OF ASSET FORFEITURE (LexisNexis 2d ed., 2004) (coauthored with Sandra Guerra
Thompson and Michael O'Hear); How To COMBAT MONEY LAUNDERING AND
TERRORIST FINANCING (Chapter 13) (Central Banking Publ. Ltd. 2005); *The Demise of the UN.
Economic Sanctions Regime to Deprive Terrorists of Funding*, 41 CASE W.RES. J. INT'L L. 19 (2009); *Does
"Proceeds" Really Mean "Net Profits"?: The Supreme Court's Efforts to Diminish the Utility of the Federal Money
Laundering Statute*, 7 AVE MARIA L. REV. 339 (2009); *Who Is Winning the War on Terrorist Financing?*,
THE FINANCIAL REGULATOR 25 (2005); *The Global Efforts to Stop Terrorist Financing*, AM. INT'L
ELECT. 1., U.S. Dep't of State(Aug. 2003); and *The Money Laundering Control Act of 1986: Creating a
New Federal Offense or Merely Affording Federal Prosecutors an Alternative Means of Punishing Specified
Unlawful Activity?*, 32 AM.CRIM.L.REV. 823 (1996).

9.    By virtue of my experience serving as Under Secretary and academic work, as
described more fully above, I am intimately familiar with the requirements and objectives of the
E.O. 13224 sanctions program, as well as the requirements and objectives of the UN 1267 sanctions
regime.

10.    Broadly speaking, E.O. 13224 imposes economic sanctions on persons who have
been determined to have committed or pose a significant risk of committing acts of terrorism, as
well as on persons determined to be owned or controlled by such persons or to provide support to
such persons or acts of terrorism.  It prohibits any transaction or dealing *in property or interests in*

4

*property* of any person (i.e., an individual or entity) designated under its authority, including the donation of funds, goods, or services, and it blocks all property in the United States or within the possession or control of a U.S. person in which there is an interest of any designated person. The overarching objective of this program is to deprive designated parties of access to funds and resources, as a means of undermining their ability to promote acts of terrorism.

11.     The sanctions programs overseen by the UN 1267 Committee serve these same goals, by requiring UN Member States to undertake the following steps with respect to any individual or organization included on the UN 1267 Committee Consolidated List:

- freeze without delay the funds and other financial assets or economic resources of designated individuals and entities [assets **freeze**],

- prevent the entry into or transit through their territories by designated individuals [**travel ban**], and

- prevent the direct or indirect supply, sale and transfer from their territories or by their nationals outside their territories, or using their flag vessels or aircraft, of arms and related materiel of all types, spare parts, and technical advice, assistance, or training related to military activities, to designated individuals and entities [**arms embargo**].

12.     Neither the text of E.O. 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.

13.     Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.

14.     And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a

designated or listed party with account statements concerning an account that has been frozen or blocked.

15.     Stated simply, the goals of the E.O. 13224 designation process and the UN Sec. Res. 1267 designation process would not be undermined by disclosing to a designated or listed party account statements concerning an account that has been frozen or blocked. Those programs are designed to prevent designated parties from obtaining access to the *funds or property* in the blocked account, not from obtaining a simple statement for the blocked account. In fact, the provision of such statements serves the goals of the respective programs, by verifying that all account funds have in fact been frozen, and that the accounts in question are being maintained in accordance with the requirements of those programs, including requirements established for the protection of the designated party.


Jimmy Gurulé                                                11/9/11
Professor of Law University of Notre Dame                   Date
Notre Dame, Indiana


6

# Exhibit 10



**Martin McMahon< mm@martinmcmahonlaw.com>**

## Supplemental doc requests

**Martin McMahon** < mm@martinmcmahonlaw.com>                    Tue, Sep 4, 2012 at 3:14 PM
To: "Carter, Sean" <SCarter1@cozen.com>

Dear Sean,

We are waiting to hear back from our contact in Saudi regarding the Wael Jelaidan and Rabita Trust
supplemental doc requests. As far as we know, there are no other documents to be produced for any of the
supplemental requests for either defendant.  But let us know if you are unopposed to a ten day extension in
order to respond to your doc requests.

Best,
Martin

---

**Martin F. McMahon, Esq.**
**Martin McMahon & Associates**
**1150 Connecticut Ave., N.W., Suite 900**
**Washington, D.C. 20036**
**Tel: (202) 862-4343**
**Fax: (202) 828-4130**

**This electronic mail transmission may contain privileged, confidential and/or proprietary
information intended only for the person(s) named. Any use, distribution, copying or
disclosure to another person is strictly prohibited. If you are not the addressee indicated in
this message (or responsible for delivery of the message to such person), you may not copy or
deliver this message to anyone. In such case, you should destroy this message and kindly
notify the sender by reply email.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* IRS
Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we
inform you that any U.S. federal tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or
recommending to another party any transaction or matter addressed therein.**