## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**Via Facsimile**

March 29, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312



Re: *In Re: September 11, 2001 World Trade Center Attack*, 03 MDL 1570 (GBD)

Dear Judge Maas:

    On behalf of all plaintiffs ("Plaintiffs), the Plaintiffs' Executive Committees respond to the undated letter application of the Moving Defendants ("Defendants") complaining about the privilege log that Plaintiffs served on the Defendants on February 1, 2013.[1] Defendants raise three issues: (1) that Plaintiffs are obligated to produce the entirety of the exchanges and substantive documents relating to Freedom of Information Act (FOIA) and other similar requests ("FOIA requests") that Plaintiffs' counsel prepared as part of counsels' investigations in this litigation; (2) that, notwithstanding a protective order in other litigation prohibiting disclosure of certain documents produced in other litigation wherein counsel for the *Burnett* plaintiffs represent other plaintiffs, counsel for the *Burnett* plaintiffs must produce those documents to Defendants in this litigation, and (3) that, notwithstanding the fact that Plaintiffs' privilege log complies fully with the explicit requirements of this Court's order concerning privilege logs by providing all of the

---

[1] Defendants served their draft letter on Plaintiffs before the parties met and conferred. After the parties met and conferred on March 15, 2013 and March 19, 2013, Defendants rejected Plaintiffs' suggestion that Defendants revise their letter to omit certain incorrect statements in the draft letter. Rather than responding at length to each statement, Plaintiffs simply state the following corrections to several of Defendants' misstatements and offer to clarify Plaintiffs' position at a hearing, if needed: (1) Defendants' application is pursuant to the Court's order dated January 4, 2013 (DE 2649), which displaced the January 20, 2011 order (DE 2401) cited by Defendants and changed the procedures for filing discovery motions (that point was clarified with Defendants, who conceded the change); (2) Defendants' statements indicating that Plaintiffs refused to engage Defendants on this issue are untrue; Plaintiffs expressed on multiple occasions a preference to meet and confer on the issue (*see, e.g.*, Transcript of Feb. 21, 2013 at 9-10), but Defendants opted to begin the motion process before meeting and conferring. In fact, Plaintiffs were the first to offer dates to meet and confer with Defendants regarding their dispute.

information required by that order (requirements that were based largely on the Defendants' proposal), Defendants nonetheless insist that Plaintiffs did not provide adequate information and want more. The Court should deny Defendants' application because all three of Defendants' arguments fail.

1. **_FOIA Requests, Responses, and Underlying Documents_**: **Plaintiffs Are Not Opposed to Confirming Production of the Underlying Substantive Documents Received in the FOIA Process, But Do Oppose Production of the FOIA Correspondence Because Production of the FOIA Correspondence Intrudes on Plaintiffs' Counsels' Core Work-Product (_e.g._, Counsels' Thought Processes and Priorities) And Has No Relevance; Nonetheless, To the Extent that The Court Grants Defendants' Request, Plaintiffs Request that the Order Be Reciprocal.**

As a primary matter, Defendants overstate the scope of the dispute between the parties by suggesting that Plaintiffs have withheld substantive evidence obtained through FOIA or similar processes. To the contrary, in response to the various Defendants' document requests, Plaintiffs have produced all of the responsive evidentiary documents received from governmental agencies in response to Plaintiffs' counsels' FOIA requests, even where those evidentiary materials had little relevance to the claims against these Defendants. Thus, Plaintiffs have made an expansive and broad production of all FOIA materials with any evidentiary value. Accordingly, the dispute concerning the FOIA process concerns only whether Plaintiffs should be compelled to disclose to Defendants the correspondence Plaintiffs engaged in with representatives of the responding agencies, which in many cases involved negotiations to narrow the scope of the agencies' searches and to focus the agencies' attention toward the issues of greatest priority.

Plaintiffs have offered to confirm that all responsive substantive documents that Plaintiffs' counsel have received in response to their various FOIA requests are produced to Defendants. But Plaintiffs have rejected Defendants' insistence that Plaintiffs _also_ produce Plaintiffs' counsels' written FOIA requests and the written responses to those requests (essentially, the non-evidentiary procedural exchanges between Plaintiffs' counsel and the agencies to whom the requests were directed) because that information has no relevance beyond its tendency to lead to the information that Plaintiffs already have produced _and_ production of the communications would tend to reveal Plaintiffs' counsels' protected attorney thought processes.

Defendants' deep interest in these procedural exchanges and unwillingness to compromise on the issue is particularly troubling given the history of discovery in these proceedings. As this Court has observed, certain defendants have consistently resisted production until and unless Plaintiffs identify (on the basis of their independent investigations) a specific document or category of documents that has not been produced, and only then "somebody attempts to find it." Transcript of July 13, 2011 Hearing, at 28-29 (attached hereto as Exhibit "A"). Against that backdrop, it is impossible to discount the potential that Defendants want the procedural exchanges with the responding agencies principally to obtain a window into Plaintiffs' universe of knowledge, or to identify the limits on disclosure those agencies have imposed relative to documents bearing on Defendants' conduct, potentially for the improper purpose of circumscribing their own discovery responses. Despite two meet and confer sessions, Defendants have identified no appropriate need for the documents.

### A. Defendants Seek Protected Attorney Core/Opinion Work-Product.

Defendants seek communications between Plaintiffs' counsel and various government agencies concerning Plaintiffs' counsels' FOIA requests, communications which Plaintiffs claim are protected under the work-product doctrine. Fed. R. Civ. P. 26 (b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947).[2] The work-product doctrine, partially embodied in Fed. R. Civ. P. 26(b)(3), "offers qualified immunity from discovery for documents 'prepared in anticipation of litigation or for trial.'" *Gruss v. Zwin*, 276 F.R.D. 115, 127 (S.D.N.Y. 2011) (citations and quotation marks omitted). "The attorney work product privilege protects 'the files and the mental impressions of an attorney . . . reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146 (2d Cir. 1994) (quoting *Hickman*, 329 U.S. at 510-11).[3] "The doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye towards litigation, free from unnecessary intrusion by his adversaries." *Gruss*, 276 F.R.D. at 127 (citations and quotation marks omitted).

A party claiming work-product protection demonstrates entitlement to the protection upon proving that the material in question is "(1) . . . a document or a tangible thing, (2) . . . prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Go v. Rockefeller University*, 280 F.R.D. 165, 174 (S.D.N.Y. 2012) (citations and quotation marks omitted). The FOIA communications at issue here meet each of these requirements. Each of the communications by and between Plaintiffs' counsel and the various government agencies are (1) documents (2) created in connection with this litigation (3) both by and for counsel on behalf of the Plaintiffs. *See, e.g., Plew v. Ltd. Brands, Inc.*, No. 08 Civ. 3741, 2009 U.S. Dist. Lexis 39715, at *4-6 (S.D.N.Y. Apr. 23, 2009) (emails, at the direction of an attorney, exchanged between the defendant and a non-party, requesting and providing information pertinent to the lawsuit, are protected work-product that fit squarely within the protective ambit of Rule 26(b)(3) because they are documents that are prepared "by" a party and "for" a party); *In re: Student Finance Corporation*, Misc. Dkt. No. 06-MC-69, 2006 U.S. Dist. Lexis 86603, at *46-47 (E.D. Pa. 2006) (protecting documents within attorneys investigatory file, *including FOIA requests and results*, reasoning that "the choice of selecting which subjects to research and which documents to collect represents the attorney's or the agent's mental impressions and legal opinions about the important issues in the actual or anticipated litigation").

---

[2] *See also Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010), explaining that "the work-product doctrine articulated in *Hickman* and its progeny . . . is broader than the protection supplied by Rule 26(b)(3)." Courts have extended work-product protection when doing so "vindicate[s] the purposes underlying the [*Hickman*] doctrine." *Id.* (citations omitted). Among the purposes for extending the protection recognized in *Hickman* are "[to] protect[] an attorney's ability to formulate legal theories and prepare cases, [to] prevent[] opponents from 'free-loading' off their adversaries' work, and [to] prevent[] interference with ongoing litigation." *Id.* (citations and footnotes omitted).

[3] The doctrine extends to correspondence and statements that would reveal an attorney's mental impressions. *National Immigration Project of Nat'l Lawyers Guild v. U.S. Dept. of Homeland Sec.*, 868 F.Supp.2d 284, 295 (S.D.N.Y. 2012) (citing *Hickman*, 329 U.S. at 511).

The Honorable Frank Maas  Page 4
March 29, 2013

---

Once those three elements are established, the burden shifts to the party seeking discovery of work-product to address the requirement of showing a substantial need for the material and an inability to obtain its substantial equivalent from another source without undue hardship. *Go*, at 174 (citations omitted). But the "substantial need" standard applies only to *fact* work-product, not *Opinion* (or *Core*) work-product. *Gruss*, 276 F.R.D. at 130 (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 190–191 (2d Cir. 2000)). *Opinion* (or *Core*) work-product – *e.g.*, the mental impressions, conclusions, opinions, or legal theories of an attorney, like those at issue here – "is entitled to more stringent protection, protection described by some courts as 'absolute' or 'near absolute.'" *Crosby v. City of New York*, 269 F.R.D. 267 (S.D.N.Y. 2010).[4] "In the Second Circuit, 'at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.'" *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d at 190-91. And even when a court orders production of *factual* work-product, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Gruss*, 276 F.R.D. at 127 (citing Fed. R. Civ. Pro. 26(b)(3)(B)).

The communications at issue here constitute highly protected *Opinion* (or *Core*) work-product because they include details about what Plaintiffs' counsels' mental impressions, legal theories, and priorities concerning important issues in the litigation and how those impressions, theories, and priorities evolved over time based on the agencies' willingness to cooperate. Moreover, Defendants cannot even show a "substantial need" for the protected communications (the *factual* work-product standard), because Plaintiffs have already produced the relevant responsive evidentiary documents obtained from the various government agencies in the FOIA process and thus the only "need" for these communications would be to cherry-pick the Plaintiffs' legal theories, strategy, and priorities. This should not be permitted. *See Crosby*, 269 F.R.D. at 277 (S.D.N.Y. 2010) (opponents should not be able to "free-load" off their adversaries' work).[5]

To support their position, Defendants first cite a single opinion for the proposition that "voluntary disclosure of confidential materials to a third party waives any applicable *attorney-client privilege*." *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43 (S.D.N.Y. 2009) (emphasis added). However, Plaintiffs have withheld the communications with the various government agencies based on the work-product doctrine, not the attorney-client privilege. Thus, the opinion is inapposite. *See Bodega Investments, LLC ex rel. Kreisberg v. United States*, 08 Civ. 4065 (RMB)(MHD), 2009 U.S. Dist. LEXIS 48513, at *10 (S.D.N.Y. May 14, 2009) ("Waiver of work-product immunity is less readily recognized than waiver of the attorney-client privilege."). Moreover, the case would be nonetheless inapposite if applied in the work-product context because Defendants have not shown that Plaintiffs disclosed the communications at issue

---

[4] Opinion (or Core) work-product "is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

[5] "An attorney who has access to the results of his adversary's research and investigation has less incentive to be diligent in his own trial preparation, and [d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Crosby*, 269 F.R.D. at 277 n.46 (S.D.N.Y. 2010) (citations and quotation marks omitted).

to third-parties – *i.e.*, there has been no claim that the communications in question, which were prepared in anticipation of litigation by or for the Plaintiffs, were disclosed to parties other than parties to the communications themselves.

Defendants assert that Plaintiffs' counsels' communications with the various government entities constitute a voluntary disclosure of confidential material to the government, thereby waiving the work-product privilege. But the cases Defendants cite are distinguishable and irrelevant in that they relate to circumstances where there is a distinctly *adversarial relationship* between the disclosing party and the government entity. *See In re Initial Public Offering Sec. Litig.*, 249 F.R.D. 457 (S.D.N.Y. 2002) (where a disclosing party has an adversarial relationship with a government agency, disclosure to that agency constitutes a waiver of the attorney work-product privilege); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D 166, (S.D.N.Y. 2002) (voluntary disclosure of work-product to a government agency that stands in an *adversarial position* is a waiver of the privilege); *see also Bodega Investments, LLC*, 2009 U.S. Dist. LEXIS 48513, at *10 ("Work-product waiver will generally be found if the party has disclosed the work product *to its adversary*, although disclosure to certain adversaries will not always require waiver vis-a-vis others."). Here, where Plaintiffs and the government agencies were corresponding about Plaintiffs' FOIA requests, waiver is not an issue because the parties to the communications were not in an adversarial position.

Additionally, the work-product doctrine protects communications back and forth between a party's counsel and a non-party that are prepared in anticipation or because of litigation. *See Plew*, 2009 U.S. Dist. Lexis 39715, at *4-6 (emails, at the direction of an attorney, exchanged between the defendant and a non-party, requesting and providing information pertinent to the lawsuit, are protected work-product that fit squarely within the protective ambit of Rule 26(b)(3) because they are documents that are prepared "by" a party and "for" a party); *see also Bodega Investments, LLC*, 2009 U.S. Dist. Lexis 48513, at *10.[6] Accordingly, there was no waiver.

Defendants misinterpret the case law they cite when they assert that "it is generally accepted that a response to a request under FOIA is a public disclosure." First, the cases Defendants cite for the proposition all relate to the very specific issue of meeting jurisdictional requirements in False Claim Act *qui tam* actions. Second, and more importantly, in each of the cited decisions the term "response" is used to refer to the underlying substantive documents that were disclosed in the FOIA process (which is what Plaintiffs here have agreed to produce) and not the communications by and between the government agency and the party relating to the FOIA request. *See U.S. ex. rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1050-1051 (determining whether a *qui tam* claim was jurisdictionally barred under 31 U.S.C.S. § 3730(e)(4)(A) because the information at issue in the False Claim Act case was already in the public domain through disclosure in the FOIA process); *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1519-20 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997) (audit reports are not "disclosed" for purposes of *qui tam* jurisdiction until a member of

---

[6] "Work product may be shown to others 'simply because there was some good reason to show it,' without necessarily destroying the work product nature of the document." *William A. Gross Const., Assoc., Inc. v. American Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354 (S.D.N.Y. 2009) (quoting *United States v. Adlman*, 134 F.3d 1194, 1199-200 (2d Cir.1998)).

March 29, 2013

the public requests and receives the audits from the government in the FOIA process); *United States ex rel. Reagan v. East Texas Med. Ctr. Reg'l Healthcare Sys.*, 274 F.Supp.2d 824, 845 n.15 (S.D. Tex. 2003) (documents disclosed in the FOIA process are considered "public disclosures" in the context of determining whether a transaction is "public" within the context of the False Claims Act). Because the underlying documents disclosed in the FOIA process are no longer at issue here, Defendants' case citations are misplaced.

Although the underlying documents disclosed in the FOIA process, themselves, may not be work-product (which is why Plaintiffs have agreed to confirm production of all relevant responsive documents received in the FOIA process), documents that would yield information about the mental impressions and thought processes of an attorney are nonetheless protected by the work-product doctrine. *Herbert v. Lando*, 1982 U.S. Dist. Lexis 10934, at *5-6 (S.D.N.Y. 1982) (Rule 26 expressly cautions against disclosure of the mental impressions, conclusions, opinions, or legal theories' of defendants' counsel, even in connection with documents authored by third-parties);[7] *see also In re: Student Finance Corporation*, 2006 U.S. Dist. Lexis 86603, at *46-47 (protecting documents within an attorney's investigatory file, *including FOIA requests and results*, explaining that "the choice of selecting which subjects to research and which documents to collect represents the attorney's or the agent's mental impressions and legal opinions about the important issues in the actual or anticipated litigation") (citing *Sporck*, 759 F.2d at 315-16); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 1991 U.S. Dist. Lexis 14791, at *25 (E.D. Pa. 1991) ("while the documents themselves are not privileged, information regarding which documents defendant used in analyzing and preparing its case certainly would reveal information about the attorneys' mental processes in preparing the case"). The multiple communications by and between counsel for Plaintiffs and the various government agencies, which included well thought out, tailored requests, and narrowing of the documents to be produced, would yield the mental impressions, thought processes, and priorities of Plaintiffs' counsel as it relates to selecting which documents to collect based on their legal theories and goals. For example, the back and forth communications with the agencies involving a narrowing of the documents to be produced reflect counsels' priorities in the litigation by offering adversaries in the litigation insight into counsels' cost-benefit analysis of the cost of production of a volume of documents against the value of the production. If Plaintiffs are required to produce such communications, they would be providing Defendants with their legally calculated decisions about which subjects to research, which documents to collect, and which documents and issues to prioritize (*i.e.*, the opinions of counsel), and thus a roadmap to their protected

---

[7] Moreover, the court quoted the Advisory Committee notes relative to Rule 26(b)(3) in support of its decision to deny production of the requested documents:

> "The requirement of a special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." 48 F.R.D. at 501. It is precisely that automatic entitlement which the present plaintiff seeks, contrary to Rule 26, which "accords special protection to work product revealing the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *see also Hickman*, 329 U.S. at 510-11 (1947).

*Herbert*, 1982 U.S. Dist. LEXIS 10934, at *6; *see also* Fed. R. Civ. P. 26, Advisory Committee Notes on 1970 amendments for the language quoted at 48 F.R.D. at 501.

The Honorable Frank Maas                                                                    Page 7
March 29, 2013

---

thoughts and theories in this litigation. Beyond their desire to peek behind Plaintiffs' curtain, Defendants have no need for such information.

### B. Documents Defendants Seek Fall Outside the Scope of Discovery Permitted By Rule 26 of the Federal Rules of Civil Procedure and Their Production Would be More Prejudicial than Probative.

In addition to the privilege issue addressed above, the FIOA communications also fall outside the scope of discovery permitted by Rule 26(b)(1) of the Federal Rules of Civil Procedure because they are neither relevant nor admissible, themselves, nor is their production reasonably calculated to lead to the discovery of admissible evidence. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The FOIA communications themselves are not admissible because they are not relevant. Fed. R. Evid. 402 ("[i]rrelevant evidence is not admissible"). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Board of Trustees of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 860 F.Supp.2d 251, 254 (S.D.N.Y. 2012). Here, the FOIA communications between Plaintiffs' counsel and various government entities do not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without that information.[8] They are not relevant to any issues in this matter; they simply provide the details of the negotiations between Plaintiffs' counsel and the government agencies, which include Plaintiffs' counsels' mental impressions and legal opinions. Moreover, the discovery of the FOIA communications is not reasonably calculated to lead to any evidence aside from improperly seeking Plaintiffs' counsels' work-product; the only other evidence they could "lead to" is what Plaintiffs have already produced – namely, the relevant responsive documents received in the FOIA process.

Even if the communications with the government entities *were* relevant (a supposition that Plaintiffs do not concede), they "may be excluded if [their] probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Here, the probative value of evidence regarding the communications by and between Plaintiffs' counsel and the various government entities is substantially outweighed by the risks of unfair prejudice to Plaintiffs. As stated above, those communications provide a roadmap to Plaintiffs' counsels' protected thoughts and theories in this litigation and thus disclosure of those documents would be highly prejudicial. Defendants have no appropriate need for such information and, in any event, Plaintiffs have already agreed to ensure the production of the evidence to which they might lead, namely, the relevant responsive documents received in the FOIA process.

---

[8] During the meet and confer process, Plaintiffs offered to review the communications exchanged in the FOIA process to determine if any contained any substantive evidence, and to produce those. But Defendants rejected that compromise offer.

### C. Any Order of Production Should be Reciprocal.

To the extent that the Court is inclined to order the production of any of the FOIA documents, whether the underlying documents received in FOIA or similar processes or the parties or their counsels' communications with the various governmental agencies addressed in FOIA and other similar requests, Plaintiffs request that the order be reciprocal. At least to the extent Plaintiffs are ordered to produce, Defendants and their counsel should also be ordered to produce communications with governmental agencies concerning FOIA and other similar requests, including documents received as part of FOIA or similar processes, documents submitted to U.S. or foreign governmental agencies or officials to obtain the release of evidence, and documents submitted to U.S. or foreign governmental agencies or officials to oppose, on any grounds, the release of documents or evidence (including all documents concerning communications by defendants or their counsel concerning FOIA requests by Plaintiffs or their counsel). Plaintiffs have a concern that documents falling within the foregoing categories do exist, but that Defendants have excluded them from both their productions and privilege logs based on a narrow construction of the concept of relevance in this litigation.

2. *Arab Bank Documents*: **Plaintiffs Have Violated No Court Order; Defendants Have No Standing to Complain About the *Linde* Order Entered in the EDNY, and Plaintiffs Intend to Abide By the Terms of the *Linde* Order and Will Abide By The Court's Guidance in Doing So.**

Without reference to *any* facts, Defendants merely *speculate* that "Plaintiffs appear to have used confidential documents in violation of court orders entered in another litigation and now attempt to use the privilege log unfairly to shield those documents from production." Defendants' Brief, at 3. But Defendants' unsupported speculation, regardless of the number of times incanted, does not make it true. Contrary to Defendants' averments, neither Plaintiffs nor any of their counsel have misused Arab Bank documents. Plaintiffs have merely identified on the privilege log a third-parties' documents which documents are considered responsive to Defendants' discovery requests and are in the possession of lawyers representing the *Burnett* plaintiffs because those lawyers also represent plaintiffs in other litigation in the Eastern District of New York in which the documents were produced subject to terms of a protective order.

Before addressing the propriety of ordering the production of the Arab Bank documents, Plaintiffs first question the standing of Defendants to complain about an alleged violation of an order entered into in *other* litigation where Defendants are a party to *neither* the other litigation *nor* the protective order. The order that Defendants (wrongly) accuse Plaintiffs of having violated is an order entered in litigation against Arab Bank, PLC, in the Eastern District of New York, captioned as *Linde, et. al. v. Arab Bank, PLC*, Case No. 04-CV-2799(NG)(VVP). Although counsel for the *Burnett* plaintiffs in this litigation are also counsel for plaintiffs in the *Almog*, *Afriat-Kurtzer* and *Lev* matters, matters covered by the protective order entered in the *Linde* matter, counsel for Defendants here are not also counsel for any party in the *Linde* litigation nor for any party covered by the *Linde* order. Consequently, no defense counsel here has standing to complain about a violation of the *Linde* order, even if a violation had occurred, which one has not occurred.[9]

---

[9] *See OfficeMax, Inc. v. Sousa*, No. 2:09-cv-00631-JAW, 2011 U.S. Dist. LEXIS 3972, at *6 (D.Me. Jan. 14, 2011) ("W.B. Mason itself is not a party to the confidentiality order and without being granted intervenor status in this

The Honorable Frank Maas    Page 9
March 29, 2013

      Notwithstanding Defendants' speculation to the contrary, no violation of the *Linde* protective order has occurred. Other than counsel from Motley Rice, who are among the counsel covered by the order in the *Linde* litigation because they represent plaintiffs in that matter, no other plaintiffs' counsel in 03 MDL 1570 has viewed any of the documents that Arab Bank produced. Defendants raise the specter that a violation of the *Linde* order has occurred because "[i]t is not clear which of Plaintiffs' counsel in these cases have seen the Arab Bank documents listed in the Privilege Log." Though, again, Defendants have no standing to complain about such matters, Plaintiffs affirmatively assert that no counsel in 03 MDL 1570 that is not covered by the *Linde* order has had access to the Arab Bank documents that are in Motley Rice's possession because Motley Rice represents plaintiffs covered by the order entered in the *Linde* litigation.

      The Documents were put on the Plaintiffs' privilege log because, using a broad approach to reviewing documents in possession of Plaintiffs (and their counsel), the Arab Bank documents were in Motley Rice's possession by virtue of their representation of plaintiffs in the Arab Bank litigation *and* the referenced Arab Bank documents were identified as being responsive to one or more of the Defendants' discovery requests. However, the documents could not be produced because they were subject to the terms of the protective order. Defendants' citation to the two cases, *In re Zyprexa Injunction* and *Hunt v. Enzo Biochem, Inc.*, support Motley Rice's determination to NOT disclose the documents and instead place them on the log. Even the Defendants' parenthetical explanations of those two cases indicate that the plaintiffs' violations in each of those cases was *disclosing* confidential discovery documents, which is exactly what Plaintiffs' counsel here have declined to do. Instead, the documents were identified on a privilege log to the extent possible without violating the order. In fact, the portion of the log that identified the Arab Bank documents was sent to counsel for Arab Bank in advance of the log being conveyed to the counsel for Arab Bank and no objection or other response was voiced in response to that notice.[10]

      Put succinctly, beyond affirming that neither Plaintiffs nor any of Plaintiffs' counsel (most notably, Motley Rice) have violated the *Linde* protective order, and affirming that they have every intention of continuing to abide by the terms of that order, Plaintiffs defer to the Court for its adjudication of the terms of that protective order. To the extent that there is to be any production, Plaintiffs prefer that it be done pursuant to an order of the Court rather than pursuant to Defendants' request for production of documents.

---

lawsuit, it would certainly have no standing to object to any order I entered at this time."); *Krumwiede v. Brighton Associates, L.L.C.*, No. 05 C 3003, 2006 U.S. Dist. LEXIS 70535, at *6-7 (N.D. Ill. Sept. 12, 2006) ("A party must show that it has standing to assert a claim of confidentiality or privilege belonging to a third party").

[10] In addition to advising counsel for Arab Bank what information about Arab Bank's documents was to be placed on Plaintiffs' privilege log, Plaintiffs have also advised counsel for Arab Bank of Defendants' letter application, provided a copy of Defendants' letter, and advised of the briefing schedule. In a telephone discussion about the matter on March 26, 2013, counsel for Arab Bank raised for the first time questions about the matter and requested that Plaintiffs make the following point in our responsive briefing: Among the Arab Bank documents identified on Plaintiffs' privilege log is at least one (and perhaps only one) document produced pursuant to a lengthy letters rogatory process whereby at least one foreign government agreed to the production of the document(s) only after receiving assurances that the terms of the protective order would be respected.

3. **_Sufficiency of Detail in Plaintiffs' Privilege Logs_**: Plaintiffs Privilege Log Provided All the Details Required By The Court's November 19, 2012 Order Governing Identification of Privileged Documents [D.E. 2644] and Clearly Provided Ample Information for Defendants To Present Their Challenges to Plaintiffs' Claims of Privilege And Protection.

Defendants are wrong in claiming that the content of Plaintiffs' nine-column spreadsheet on Plaintiffs' privilege log does not comply with the Court's November 19, 2012 Order Governing Identification of Privileged Documents [D.E. 2644] (the Order).[11] The Order (D.E. 2644) requires the parties to provide, on or before February 1, 2013, the following regarding each entry on the parties' logs: (1) the type of document (Order ¶5(i)); (2) the general subject matter of the document (Order ¶5(ii)); (3) the date of the document (Order ¶5(iii)); (4) the authors of the document, the address of the document and any other recipients, and where not apparent, the relationships of the authors, addessees, and recipients to one another (Order ¶5(iv)); (5) the document's file size, if it is an electronic document, (Order ¶5(v)); (6) the basis for the privileges or protections claimed (Order ¶6); and (7) an indication whether the document is part of a string of emails (Order ¶7(i)(b)).

No defendant provided a privilege log. Either on the due date or in response to a later order of the Court, each Defendant advised that it was not withholding documents based on any claim of privilege or other protection, so no privilege log was being provided.

On February 1, 2013, Plaintiffs provided Defendants with a privilege log that fully complied with the Order (D.E. 2644) because it was timely, provided a nine-column spreadsheet that identified each document over which Plaintiffs claimed a privilege or protection, and provided the following details in each of the nine columns: the type of document (Order ¶5(i)); (2) the date of the document (Order ¶5(iii)); (3) a column labeled "Title Ref./Description" which provided a description of the general subject matter of the document (Order ¶5(ii)); (4) the name of the authors of the document (Order ¶5(iv)); (5) the name of each recipient of the document (Order ¶5(iv)), (6) an indication whether the document is part of a string of emails (Order ¶7(i)(b)); (7) an indication of whether the document had attachments to the document (see Order ¶7(ii)); (8) the file size of each electronic document (Order ¶5(v)); and (9) identification of the basis for the privilege or protection claimed for each entry (Order ¶6).

Defendants' central complaint here is that, instead of labeling one of the columns "Subject Matter" the heading was labeled "Title Ref./Description." But the information in each of the cells within that column (or in conjunction with neighboring cells about each entry) provides ample information from which Defendants are able to determine the subject matter and (more importantly) test the propriety of Plaintiffs' claims of privilege or protection.

Although Defendants are not entirely correct when they state that "Plaintiffs have failed to identify a single author or recipient for any of the Arab Bank documents listed on their log,"

---

[11] Defendants argue that Plaintiffs must abide by the requirements of both Local Rule 26.2 and the Court's November 19, 2012 Order Governing Identification of Privileged Documents [D.E. 2644]. But, here, the Court's November 19, 2012 Order governs as opposed to Local Rule 26.2, merely because Local Rule 26.2 begins with the phrase "[u]nless otherwise agreed by the parties or directed by the Court." Here, the parties have entered into a stipulated order that was entered by the Court. So, to the extent there is any difference, the terms of D.E. 2644 govern what details are to be provided.

The Honorable Frank Maas                                                                 Page 11
March 29, 2013

---

*see, e.g.*, entries 76, 115, 237 (identifying authors and recipients of various documents produce in the *Linde* litigation and subject to the protective order in that litigation), there are eminently good and obvious reasons why the authors and recipients for many of the entries are not specifically identified. By an overwhelming number, the Arab Bank-related entries included on the privilege log are wire transfer documents, account statements, and other internal bank records, which on their face do not necessarily indicate the author or the recipients. But for purposes of the privilege log, Plaintiffs' position is that the source of all of these documents was Arab Bank. To the extent that a document identified a specific author or recipient and including that information was not interpreted to be in violation of the applicable protective order, that information was provided on the privilege log. *See* entries 76, 115, 237. Any additional indication added to the privilege log would necessarily be supposition or based on counsels' interpretation of other information provided in the *Linde* litigation. Moreover, revealing additional information would necessitate Plaintiffs' counsel revealing information in violation of the terms of the protective order entered in the *Linde* Litigation. It is particularly problematic that Dubai Islamic Bank, an entity that one would expect to be eminently familiar with the appearance of a wire transfer document, would now claim that Plaintiffs must identify the "author" or "recipients."

Defendants are also wrong when they argue that the privilege log contained insufficient information to permit them to challenge Plaintiffs' privilege claims. Given the pending motion and Defendants' ability to fully litigate their objections to Plaintiffs' claims of privilege, the information provided on the log was surely sufficient to meet the log's purpose – namely, to provide adequate information for Defendants to determine the propriety of Plaintiffs' asserted privileges or protections. Defendants do not need to challenge each individual log entry to challenge the reasons for each entry's inclusion on the log. Just as Defendants have demonstrated in the within motion, their challenges to the propriety of Plaintiffs' assertions can be done categorically. No additional information about any of the entries is needed. Moreover, additional information would have allowed Defendants an incursion into Plaintiffs' work-product or would have required Motley Rice to have violated the protective order entered into in the *Linde* litigation. Neither an incursion nor a violation is required for Defendants to test Plaintiffs' claims of privilege or protection.

Respectfully,

For PLAINTIFFS' EXECUTIVE COMMITTEES in
*In Re Terrorist Attacks*, 03/MDL-1570

By:       Robert T. Haefele
          MOTLEY RICE LLC
          28 Bridgeside Boulevard
          Mount Pleasant, SC 29464
          Tel: (843) 216-9000
          Fax: (843) 216-9450

cc:    Hon. George B. Daniels (By Federal Express)
       MDL-1570 counsel (By electronic mail)

EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

    ------------------------------------------X
                                               :
    IN RE:                                     : 03-MD-1570
                                               :
     TERRORIST ATTACKS ON SEPTEMBER 11, 2001   : 500 Pearl Street
                                               : New York, New York
                                               :
                                               : July 13, 2011
    ------------------------------------------X

             TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
               BEFORE THE HONORABLE FRANK MAAS
                 UNITED STATES MAGISTRATE JUDGE

    APPEARANCES:

    For Federal Insurance:    SEAN P. CARTER, ESQ.

    For Dubai Islamic Bank:   STEVEN COTTREAU, ESQ.

    For Havlish:              TIM FLEMING, ESQ.

    For Plaintiffs:           JAMES KREINDLER, ESQ.
                              ROBERT T. HAEFELE, ESQ.
                              TIM FLEMING, ESQ.

    For Defendants:           MARTIN F. McMAHON, ESQ.
                              ALAN KABAT, ESQ.




    Court Transcriber:        MARY GRECO
                              TypeWrite Word Processing Service
                              211 N. Milton Road
                              Saratoga Springs, NY 12866




    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service
```

EXHIBIT A

28

1    MR. McMAHON: Mr. Carter, did I tell you that there's
2 no way you could get a digital file? When did I do that?
3    MR. CARTER: I'm sorry, someone was whispering, I
4 didn't --
5    THE COURT: Yes. Mr. McMahon was inquiring as to
6 whether it was he or somebody else who represented that there
7 was no way to get a digital version of the banking records.
8    MR. McMAHON: In that case, Your Honor --
9    MR. CARTER: Your Honor --
10    THE COURT: Hang on. You asked the question. Let's
11 get an answer.
12    MR. CARTER: On June 28, 2011, Your Honor, I sent an
13 email to Mr. McMahon in reference to these records and it read,
14 "Martin, is it possible to simply run the print job again.
15 Thanks, Sean." And the response was, "Sean, no, these are
16 originals from the archives." That's it.
17    MR. McMAHON: I'm saying where did you say, you know,
18 check on the digital file? Who told you that there was no
19 digital file? That's what Mr. Al Radhi is checking out
20 currently in Saudi Arabia to see --
21    THE COURT: Well, I think the key point here, Mr.
22 McMahon, is there's a fairly comprehensive set of discovery
23 requests and in terms of production this is sort of death by a
24 thousand paper cuts. There's an obligation on the part of any
25 party to a lawsuit to produce documents within its possession,

29

1  custody or control and control extends to agents and every time
2  that the plaintiffs or the Court say well a particular item is
3  inadequate then somebody attempts to find that. And certainly
4  not the only defendant where we've had this issue. There's not
5  a comprehensive approach. And if, for example, there is not
6  enough money to get you to Saudi Arabia without passing the
7  collection cup, that bodes poorly for the ability to send
8  somebody, Mr. Al Radhi or somebody else, to look through the
9  records of, at a minimum, the Indonesian branch. Or even if
10 somebody doesn't go from Saudi Arabia to Indonesia for somebody
11 in Indonesia who's his counterpart to be looking for records,
12 putting aside the fact that I gather there were numerous
13 branches of these organizations.
14         So what's needed here is not chasing after particular
15 items highlighted by Mr. Carter today or on prior occasions.
16 What's needed is recognition of the fact that there are
17 language and cultural problems and perhaps financial problems,
18 but that if MWL and IIRO don't want dispositive discovery
19 sanctions against them, they need to get their act together.
20         MR. McMAHON: I understand, Your Honor. Let me
21 address the Indonesian office. I believe Mr. Carter misspoke
22 about Samir Al Radhi. My understanding was that he did visit
23 the Indonesian office. In fact, we provided counsel -- we sent
24 an auditor out there to go through all the records in the
25 Indonesian office and we produced that auditor's report to Mr.

**EXHIBIT A**

```
                                                                    43

 1      I certify that the foregoing is a court transcript from an
 2   electronic sound recording of the proceedings in the above-
 3   entitled matter.
 4                                    _[signature]_
 5                                    _____
 6                                         Mary Greco
 7   Dated:  July 19, 2011
 8
 9
10
...
25
```