**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

MAY 01 2013

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**Via Hand Delivery**

April 30, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312



**Re:**   *In Re: September 11, 2001 World Trade Center Attack*, 03 MDL 1570 (GBD)

Dear Judge Maas:

Pursuant to the Court's April 22, 2013 order (ECF 2715), we write for the Plaintiffs' Executive Committees, for all Plaintiffs, in further support of Plaintiffs' assertion that the set of documents concerning FOIA requests[1], identified on plaintiffs' privilege log, should *not* be ordered produced in discovery. We focus on the following three issues:

(1) whether Plaintiffs' requests and correspondence to government agencies to negotiate the focus and scope of Plaintiffs' FOIA investigations, which correspondence contain plaintiffs' counsels' mental impressions, opinions, and legal theories concerning specific litigation (*i.e.*, core work product), is protected work product under Federal Rule of Civil Procedure 26(b)(3) or the common law work product doctrine originally set out in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947);

(2) whether government agency correspondence that, while responding to FOIA requests and negotiating the agencies' production in response to the requests, contain plaintiffs' counsels' mental impressions, opinions, or legal theories concerning specific litigation (*i.e.*, core work product) is protected work product under Rule 26(b)(3) or the common law work product doctrine originally; and

(3) whether, under the circumstances present, Plaintiffs' have waived any work product privilege.

---

[1] For ease of reference, Plaintiffs use the term FOIA requests throughout this letter, consistent with the parties' preceding submissions, to refer to Plaintiffs' investigations in contexts other than just FOIA.

The Honorable Frank Maas                                                                                          Page 2
April 30, 2013

      For the reasons discussed on the record during the April 16, 2013 hearing, in Plaintiffs'
March 29, 2013 letter submitted in opposition to the defendants' application, and herein, all of the
documents at issue are protected under Rule 26(b)(3) and the common law work product doctrine.
Moreover, no privilege has been waived. Finally, this Court has discretion in controlling discovery
to prevent tangential discovery of the nature that Defendants are herein seeking – discovery simply
meant to waste Plaintiffs' time and resources, but with no value concerning the substantive issues.

1. **Defendants' Ignore The Common Law Work Product Doctrine and Assess the
   Issue Under Only the More Narrow Federal Rule of Civil Procedure 26(b)(3).**

      Throughout Defendants' argument, they fail to recognize the broader application of the
common law work product protection by analyzing the issue under only Rule 26(b)(3).[2] "[T]here
is more to the work product doctrine than is encompassed by the Rule. To the extent that the
doctrine, as originally articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), is broader than the
Rule, it nevertheless remains good law." *United States Info. Sys. v. IBEW Local Union No. 3*, No.
00 Civ. 4763 (RMB) (JFC), 2002 U.S. Dist. LEXIS 19363, at *17-18 (S.D.N.Y. Oct. 10, 2002)
(citations omitted); *see also Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), *cert. denied*, 474
U.S. 903 (1985); (characterizing Rule 26(b)(3) as only "partially codifying" the *Hickman* work
product privilege) and *In re Student Finance Corporation*, 2006 U.S. Dist. LEXIS 86603, at *31
(same). Under *Hickman*, as this Court has previously recognized, work product protection extends
to "all trial preparation activities and all communications made principally for the purpose of
preparing for litigation or trial." *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570
(GBD)(FM), 2008 U.S. Dist. LEXIS 45751, *17-19 (S.D.N.Y. May 21, 2008) (citing an array of
cases upholding work product protection where questioning of third-parties may reveal a party's
legal opinions, theories, thought processes, or strategy).

      "[T]he broader common law work product doctrine . . . extends to nonparties to the degree
necessary to achieve the three underlying purposes of the doctrine.  Work product protection is
appropriate where disclosure would '(1) alter attorney behavior, (2) reward sloth, **or** (3) interfere
with ongoing litigation.'" *Tankleff v. County of Suffolk*, No. 09-CV-1207(JS)(WDW), 2011 U.S.

---

    [2] The cases Defendants cite in opposition consider the work product privilege under *only* Rule 26(b)(3).
*See, e.g., Egiazaryan v. Zalmayev*, 11 Civ. 2670 (PKC) (GWG), 2013 U.S. Dist. LEXIS 33351 (S.D.N.Y. Mar. 8,
2013); *Bodega Inves. LLC v. United States*, 8 Civ. 4065, 2009 U.S. Dist. LEXIS 48513 (S.D.N.Y. May 14,
2009), *Plew v. Ltd. Brands, Inc.*, No. 8 Civ. 3741, 2009 U.S. Dist LEXIS 39715 (S.D.N.Y. Apr. 23, 2009); and
*Underpinning & Foundation Skanska, Inc. v. Berkley Reg'l Ins. Co.*, No. 7 Civ. 2758, 2009 U.S. Dist LEXIS 15515
(E.D.N.Y. Feb. 27, 2009).

    The two cases Defendants cite to assert that non-parties' documents cannot be protected under the work
product doctrine, *Egiazaryan* and *Skanska* (Reply at 1-2), are additionally distinguishable from this case.  In
*Egiazaryan*, where only two third party documents were claimed protected as work product, the court held the
protection did not apply because "there is no suggestion that [they] were prepared at the direction of [the defendant's
attorney] in its capacity as [defendant's attorney]. 2013 U.S. Dist. LEXIS 33351, at *45. *Skanska* concerned
documents of a third party that were not created by or for a party concerning the litigation and were not indicative of
the attorney's core work product. 2009 U.S. Dist LEXIS 15515, at *2-3.

    Notably, Defendants do not confront, for example, *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS
86603, or *any* other case that discusses application of the common law work product privilege.  *In re Student
Finance*, cited in Plaintiffs' March 29, 2013 Letter Brief, at 3, 6, addressed whether work product protection applied
to third party documents where disclosure implicated the purposes for the common law doctrine.  Finding that it did,
the court held that the third party documents (including FOIA requests and responses and other public records
collected by the attorney while investigating claims in litigation) were protected work product. *Id.* at *46-47.

Dist. LEXIS 135691, at *4-5 (E.D.N.Y. Nov. 22, 2011) (citing *Haus v. City of New York*, No. 03-CV-4915, 2006 U.S. Dist. LEXIS 85225 (S.D.N.Y. Nov. 17, 2006) (internal citations omitted; emphasis added); *see also In re Student Finance Corporation*, 2006 U.S. Dist. LEXIS 86603, at *31 ("[The work product doctrine] may be extended beyond the strict terms of [Rule 26(b)(3) to protect non-parties' work product when doing so accords with the purposes of the privilege set out in *Hickman v. Taylor*.") (internal citations omitted). Even *Egiazaryan*, a case Defendants cite, admits that the common law work product doctrine is broader and can incorporate non-party documents. 2013 U.S. Dist. LEXIS 33351, at *45 ("Inasmuch as BGR has not argued that the common law work product doctrine shields these documents from disclosure, they must be produced.")

"The need for protection is further heightened if the information disclosed would reveal the mental processes of the attorney." *In re Terrorist Attacks*, 2008 U.S. Dist. LEXIS 45751, at *18-19. Thus, for example, in appropriate circumstances (absent here), where discovery of *non*-core work product may be ordered on a showing of substantial need and an inability to obtain the substantial equivalent without undue hardship, *core* work product receives greater protection and a party seeking discovery of such protected material must demonstrate "extraordinary justification." *In re Circle K Corp.*, No. 96 Civ. 5801 (JFK), 1997 U.S. Dist. LEXIS 713, at *20 (S.D.N.Y. Jan. 27, 1997). Here, where Plaintiffs have already produced the substantive, factual documents received in the FOIA investigations, defendants can demonstrate neither a substantial need nor an extraordinary justification for the core work product.

## 2. Plaintiffs' Counsels' Correspondence, Authored In Anticipation of Litigation And Containing Core Work Product, Is Protected Work Product Under Federal Rule of Civil Procedure 26(b)(3) And The Common Law Work Product Doctrine.

Plaintiffs' correspondence to the agencies fits squarely within the requirements of Rule 26(b)(3) and the common law work product doctrine. To be protected under Rule 26(b)(3) the material in question must be "(1) . . . a document or tangible thing, (2) . . . prepared in anticipation of litigation, and (3) . . . prepared by or for a party, or by or for his representative." *Go v. Rockefeller University*, 280 F.R.D. 165, 174 (S.D.N.Y. 2012). There can be no dispute that each of the letters from Plaintiffs' counsel to the government agencies meets each of these three requirements. Each letter is a document, prepared as part of the Plaintiffs' investigation, by plaintiffs' counsel. And, if these documents are protected under the codified portion of the work product doctrine under Rule 26, then they are also protected by the broader common law work product doctrine.

The only argument that Defendants make that this information is not protected is based on their false analogy to formal discovery under Rules 34 and 45; their analogy fails in a number of regards. First, one distinction, already recognized by Defendants (Reply at 3), is that, whereas discovery requests and subpoenas under Rules 34 and 45 must be served on adversaries in the litigation, none of the documents in FOIA investigations need to be served on adversaries. Because work product protection is not waived unless voluntarily disclosed *to adversaries*, that distinction is particularly important. Second, none of the contexts (whether in the context of Rule 34, Rule 45, or the FOIA context) would require the parties to produce, along with the substantive productions, the negotiation letters exchanged in the process of determining which substantive documents are to be produced. Imagine the disorder and quagmire that would threaten litigation if Defendants' analogy were applied to each party's efforts to resolve discovery disputes and every

communication were obligated to be produced in discovery. Third, even under Rules 34 and 45, work product need not be produced. For example,

> "[Rule] 45 expressly provides that the court from which a subpoena has issued shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies. FED. R. CIV. P. 45(c)(3)(A)(iii). Rule 45 does not define what privileges and protections are to be enforced under its terms, but the language is broad enough to include protection against discovery of third-party work product in appropriate cases."

*In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, at *32-33. In short, Defendants' analogy to the Rules 34 and 45 contexts is inapposite; Plaintiffs correspondence in the FOIA context is distinct and deserves protection as work product.

### 3. The Agency's Responses, Which Were Authored For Plaintiffs' Counsel in Connection with This Specific Litigation and Incorporate Plaintiffs' Counsels' Core Work Product, Are Protected Work Product Under Both Federal Rule of Civil Procedure 26(b)(3) And The Common Law Work Product Doctrine.

The agencies' written responses to Plaintiffs' counsels' thoughts and opinions likewise fit squarely within the requirements of Rule 26(b)(3) and the common law work product doctrine. Just as Rule 26(b)(3) protects documents "prepared by" a party or its representative, the rule also protects documents prepared "for" a party or its representative. The agency correspondence, which was created in direct response to plaintiffs' counsels' investigations specifically *for* this litigation – particularly where the requests themselves were specific that they were for this litigation – fall directly within the scope of Rule 26(b)(3) and thus fall under the scope of the protection of the rule. Specific evidence that the agency correspondence was created for Plaintiffs is most reflected by the fact that the agency correspondence often re-states or paraphrases Plaintiffs' core work product. And again, if they are protected under the codified portion of the work product doctrine under Rule 26, they are also protected by the broader common law work product doctrine.

Defendants' assertion that "[c]ourts have routinely held that documents prepared by non-parties are not protected work product," Defendants' April 9, 2013 Reply Letter, at 1-2 (hereinafter "Reply"), is not accurate and stems from their failure to recognize the distinction between Rule 26(b)(3)'s partial codification of the work product doctrine and the broader common law work product doctrine. In fact, courts in this circuit and others clearly embrace documents prepared by non-parties within the common law work product doctrine.

This is an appropriate case to apply the common-law work product doctrine because it implicates all three 'purposes' of the privilege – *i.e.*, to avoid (1) altering attorney behavior, (2) rewarding sloth, and (3) interfering with ongoing litigation. *Tankleef*, 2011 U.S. Dist. LEXIS 135691, at *4-5. For example, failing to protect the negotiation exchanges between Plaintiffs and the agencies threatens to alter parties' behavior in the FOIA process, stifling parties' ability to engage in useful dialogue to advance the FOIA process expeditiously. Moreover, production of the negotiation exchanges would reward Defendants' lack of effort here, particularly where Plaintiffs' have engaged in substantial FOIA investigative work, paid substantial sums for the substantive documents produced in that process, produced all of the substantive documents to the Defendants, and the only real value to the Defendants of the negotiation exchanges between the Plaintiffs' counsel and the agencies is Defendants' improper access to Plaintiffs' counsels' core work product. Furthermore, because the agencies' correspondence contains information about a

party's theories and strategies of active and long-standing litigation, it undoubtedly "interferes with ongoing litigation."

In addition to the examples of work product protection extending to third-party information that this Court has identified in *In re Terrorist Attacks on September 11, 2001*, 2008 U.S. Dist. LEXIS 45751, at *17-19, other examples include the following:

- In *In re Student Finance Corporation*, 2006 U.S. Dist. LEXIS 86603, at *46-47, the court held that an attorney's investigative file prepared for litigation was protected attorney work product, including, *inter alia*, including FOIA requests and results;

- In *Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 517 (D.N.J. 1987), the court held that correspondence exchanged in FOIA proceedings fell within work product protection;

- In *COMPTEL v. Federal Communications Commission*, Civil No. 06-1718 (RCL), 2012 U.S. Dist. LEXIS 179059, at *24-25 (D.D.C. Dec. 19, 2012), the court held that "government-prepared records may be protected if they summarize information obtained from another person;"

- In *Seven Hanover Associates, LLC v. Jones Lang LaSalle Americas, Inc.*, No. 04 Civ. 4143 (PAC)(MHD) at *3 (S.D.N.Y. Dec. 7, 2005), the court held that a cover letter and enclosures from the plaintiffs' attorney to a third-party, while investigating for the litigation, "plainly fall within the ambit of the work-product rule, constituting core attorney work-product. The choice of whom to approach with a suggestion reflected in the letter and enclosures constitutes the purely tactical choices that are at the heart of the work-product rule. Necessarily, then, the letter and enclosures are presumptively protected from disclosure;" and

- In *Ricoh Co. v. Aeroflex*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003), the court held that three emails an attorney sent to a third party seeking information to develop the client's case were protected as work product because work product is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal strategies with an eye toward litigation, free from unnecessary intrusions by his adversaries."

In light of the plain language of Rule 26(b)(3), the purposes of the common law work product doctrine implicated here, and the particular circumstances of this case, the agencies' responses require protection from production.

**4. The Work Product Privilege Has Not Been Waived.**

Defendants' remaining arguments relate to waiver. They argue (a) that "Plaintiffs have waived any purported work-product by intentionally and selectively producing some Government Correspondence to Defendants," Reply at 2; (b) "correspondence with the government cannot be protected work-product because this protection is not available where the purportedly protected work-product has been disclosed to a party without a shared interest," *Id.* at 3; and (c) "Plaintiffs sent their correspondence to the government under circumstances that make that correspondence itself discoverable pursuant to a FOIA request." *Id.*

A. **Plaintiffs Have Not Engaged in Selective Disclosure and Any Disclosure Waived Protection *Only* As to Items Actually Disclosed.**

The argument that Plaintiffs selectively disclosed work product that necessarily waived work product protection mischaracterizes what Plaintiffs produced. As plaintiffs explained during the April 16, 2013 hearing, the cover letters Plaintiffs produced to Defendants in discovery were, at the time, determined not to contain work product. Accordingly, no waiver occurred.

But even to the extent that any of the produced cover letters may have inadvertently contained some work product, Defendants are wrong in their assertion of the breadth of any waiver; disclosure of some documents does not necessarily destroy work-product protection for all other documents of the same character. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012) (quoting 8 Wright & Miller, Federal Practice & Procedure, § 2024). Particularly where core work product is concerned, as is the case here, there is no extension to other documents. *In re Circle K Corp.*, 199 B.R. 92, 101-102 (Bankr. S.D.N.Y. 1996) (citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), modified on other grounds, 30 F.3d 1347 (11th Cir. 1994), *cert. denied*, 115 S. Ct. 900 (1995); *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988), *cert. denied*, 490 U.S. 1011 (1989)).

Aside from the fact that Defendants' broad waiver argument cannot withstand the purpose of the common law work product doctrine enunciated in *Hickman*, it is also belied by cases interpreting Second Circuit precedent, including cases Defendants cite. *Chick-Fil-A v. ExxonMobil Corp.*, No. 8 Civ. 61422, 2009 U.S. Dist. LEXIS 109588 (S.D. Fla. Nov. 10, 2009), specifically states that while "[c]ourts have differed as to the proper scope of the waiver of work product protection," *i.e.*, whether the proper scope of wavier extends to "all documents related to the subject matter" or is "limited to the information actually disclosed," *Chick-Fil-A*, 2009 U.S. Dist. LEXIS 109588, at *10-11, courts within the Second Circuit have held that "[d]isclosure to an adversary waives the work product production [only] as to items actually disclosed." *Id.* at *11 (citing *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981)).

The position maintained within the Second Circuit has since been augmented by the Federal Rules of Evidence on this question. As also noted in *Chick-Fil-A*:

> Federal Rule of Evidence 502 . . . now governs the scope of any waiver of both the attorney-client privilege and work product protection. With respect to an intentional disclosure of privileged communications or information, Rule 502(a) provides that "the waiver extends to an undisclosed communication or information in a Federal or State proceeding *only if*: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject-matter; and (3) they ought in fairness to be considered together.

*Id.* at *11-12 (emphasis added). The propriety of this limited-waiver-doctrine-understanding is also supported by Wright & Miller, Federal Practice and Procedure, which explains:

> Federal Rule of Evidence 502(a) *curtails prior waiver doctrine significantly.* . . . disclosure does not work a waiver of protections for material on the same subject matter beyond that disclosed unless it was intentional, and the additional materials 'ought in fairness to be considered' together with the protected materials turned over by the privilege holder. . . . The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for

> advantage in the litigation but to invoke the privilege to deny its adversary access to
> additional materials that could provide an important understanding of the privileged
> materials.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2016.2
(3rd ed. 2009 Supp.) (emphasis added).  This is also consistent with the Advisory Committee
Notes to Federal Rule of Evidence 502(a).  A waiver "is reserved for those unusual situations in
which fairness requires a further disclosure of related, protected information, in order to prevent a
selective and misleading presentation of evidence to the disadvantage of the adversary." FED. R.
EVID. 502, Advisory Comm. Notes, Subsection (a).

Therefore, the Second Circuit traditionally interprets waiver narrowly, and in order for
"subject matter waiver" to be given effect, Defendants would be required to show that Plaintiffs
deliberately disclosed certain documents and not others to create a tactical advantage.  Any
suggestion that plaintiffs have made selective disclosures to gain advantage over the Defendants is
baseless.  Defendants have not – and cannot – make a showing that Plaintiffs intentionally and
selectively produced some government correspondence and not others in such a way that reflects
"sharp practices inimical to a healthy adversary system." *In re Sealed Case*, 676 F.2d 793, 818
(D.D.C. 1982).[3]

> B.  The Standard Applied To Assess Waiver of Work Product Protection For The
>     Letters Exchanged With The Agencies Is The Same As In Other Contexts – *i.e*,
>     Whether A Disclosure Occurred That Was Likely To Reveal Work Product *To An
>     Adversary.*

The cases Defendants rely on to argue that "correspondence with the government cannot be
protected work-product because this protection is not available where the purportedly protected
work-product has been disclosed to a party without a shared interest" are misrepresented and
easily differentiated.  Both *In re Steinhardt Partners LLP*, 9 F.3d 230 (2d Cir. 1993) and *In re
Sealed Case*, 676 F.2d 793, are cases where a plaintiff in a civil suit was also subject to a pending
criminal investigation by the SEC.  In both cases the plaintiffs decided to disclose some material
information in a memorandum to the SEC, a party in an obviously adversarial position with the
disclosing parties in each instance, in order to try and work with the SEC in the hope of avoiding
draconian criminal penalties.  In both civil cases, where plaintiffs were obviously adversarial with
the SEC in cases that related to the same subject-matter as pending SEC criminal cases against the

---

[3] Discussing selective disclosure, *In re Sealed Case* recognized that it is impermissible only where it
impedes the adversarial system.  The court explained:

> "The purposes of the work product privilege are more complex, and they are not inconsistent with
> selective disclosure – even in some circumstances to an adversary.  Yet at some point acceptable
> tactics may generate into 'sharp practices' inimical to a healthy adversary system.  When that
> occurs – when a party seeks greater advantage from its control over work product than the law
> must provide to maintain a healthy adversarial system – then the balance of interests recognized
> in Hickman…shifts, and the courts need not impede a grand jury's legitimate efforts in the name
> of protecting the adversary system."

*Id.* So, even if Plaintiffs had selectively produced some government correspondence that contained work product, it
would nonetheless be permissible provided it did not damage the adversarial system.  Nonetheless, there was no
selective disclosure of work product here and, to the extent any could be identified, it threatened no damage to the
adversarial system.

plaintiffs, the courts held that plaintiffs' transmission of documents and information to the SEC constituted a waiver of work product protection.

Defendants' crabbed interpretation of the standard for waiver of the work product protection in Second Circuit courts needs adjustment. The real issue for whether work product protection was waived is whether there was a voluntary disclosure of work product *to an adversary*, or disclosure in such manner that it is likely to be revealed *to an adversary* – *i.e.*, whether the disclosure, under the particular circumstances, *was inconsistent with the maintenance of secrecy from the disclosing party's adversary. In re Circle K Corp.*, 1997 U.S. Dist. LEXIS 713, at *30-31; *see also United States v. American Tel. & Tel. Co*., 642 F.2d 1285, 1298-1299 (D.C. Cir. 1980) ("[The purpose of the work product doctrine] is to protect material from an opposing party in litigation, not necessarily from the rest of the world generally. In light of this purpose, the court held that disclosure to a third party does not waive the privilege 'unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.' Waiver would occur, the court elaborated, only if the disclosure "*substantially increases*" the possibility of an opposing party obtaining the information.").

In the case before this Court, unlike the cases Defendants cite, the agencies are not aligned with the adverse party, there is no adversarial relationship between the agencies and Plaintiffs, and there has been no disclosure that "substantially increases" Defendants' access or that is "inconsistent with maintenance of secrecy from Defendants." Unlike those cases, this case concerns no parallel or related criminal investigation against Plaintiffs by the agencies with whom Plaintiffs corresponded. The mere fact that the government has a statutory obligation to avoid disclosure of specific sets of protected information excluded from its disclosure obligations under the Freedom of Information Act does not make Plaintiffs and the agencies adversaries in this litigation. Defendants' argument to the contrary is a red herring.

One additional point important to emphasize about *In re Steinhardt Partners LLP* and *In re Sealed Case* is that both cases underscore the need for a case-by-case approach in determining whether work product protection applies to disclosures to the government. In *In re Steinhardt Partners*, the court affirmatively stated that, even under the clearly adversarial facts of that case, "[it] decline[d] to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection." 9 F.3d at 235. The court added, "[c]rafting rules relating to privilege in matters of governmental investigations must be done on a case-by-case basis . . . . Establishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information. . . ." *Id; see also Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 88-89 (E.D.N.Y. 1981) ("It bears emphasis, however, that the work product doctrine derives from the notion that a common law trial is and always should be an adversary proceeding. That is, the doctrine rests on the belief that such promotion of adversary preparation ultimately furthers the truth finding process. Consistent with this policy, and as suggested by the opening sentence of *Hickman* itself, courts not infrequently have extended work product protection to material prepared because of the prospect of litigation.") (internal citations and quotations omitted). So, even where there is a clear adversarial relationship – absent here – application of the work product privilege must account for appropriate cases where the government and the plaintiff share a common interest in developing and analyzing information. The very purpose of negotiations concerning production of information in the FOIA context concerns a common interest in the availability and analysis of information.

Although Defendants quote *In re Sealed Case* out of context, considered in context, the case supports Plaintiffs' argument and the purposes of the common law work product doctrine.[4]  In proper context, the quote concerns whether waiver can be implied from a party's conduct related to the document in question.  The case clearly states that deliberation of "implied waiver" requires "objective consideration" of fairness and the purpose of the work product doctrine.  *Id.*  Fairness, the court says, requires that "what constitutes a waiver with respect to work product materials depends, of course, upon the circumstances."  *Id.*  Here, rather than fairness requiring the production of the negotiations between Plaintiffs and the agencies, protecting counsels' "zone of privacy" to prepare their case takes precedent.  Plainly, it would be unfair to grant Defendants unobstructed access to core work product.

C.   Plaintiffs Have Not Waived Work Product Protection Because There Has Been No Disclosure Likely To Reveal Work Product *To An Adversary.*

Plaintiffs' negotiation correspondence was not disclosed in any manner rendering it likely to be disclosed to Defendants.  In fact, beyond the actual parties to the correspondence, no disclosure has been demonstrated.  Although Defendants contend they would undoubtedly be permitted to obtain the letter exchanges from the agencies if they were to request them, there is no indication that is accurate.  For example, if Defendants were to make FOIA requests for the communications themselves, a number of exemptions are applicable to exempt the correspondence from production in their entirety or, at the very least, exempt substantial portions, including the work product.  For instance, it is well-established that Exemption 5 under FOIA encapsulates the work product privilege.  *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-149 (1975) and progeny.  Moreover, an agency in receipt of a FOIA may claim that the documents are protected under the government's deliberative process privilege.  *ACORN v. County of Nassasu*, No. CV 05-2301 (JFB) (WDW), 2008 U.S. Dist. LEXIS 20266, at *8-9 (E.D.N.Y. Mar. 9, 2008) (the "deliberative process privilege . . . protects documents reflecting . . . deliberations comprising part of a process by which governmental decisions and policies are formulated.') (internal citations omitted).  Similarly, Exemption 4 of the FOIA exempts from disclosure confidential information that would 'cause substantial harm to the supplier of the information.  *United Technologies Corp. v. Pratt & Whitney Aircraft Group. V. Marshall*, 464 F. Supp. 845, 848 (D. Conn. 1979); *Burnside–Ott Aviation Training Ctr., Inc. v. United States*, 617 F. Supp. 279, 286 (S.D. Fl. 1985); *see Burroughs Corp. v. Schlesinger*, 403 F. Supp. 633, 637 (E.D. Va. 1975) (confidential information obtained from a person comes within Exemption 4).

Additionally, as the Plaintiffs called to the Court's attention during the April 16 hearing, just as other Defendants in this litigation have reportedly objected to production of their documents pursuant to Plaintiffs' FOIA requests, Plaintiffs would be entitled to object to production of these documents in connection with a FOIA request for them, for essentially the same reasons expressed herein.  *See United Technologies*, 464 F. Supp. at 848 (a submitter of information to the government has a cause of action to challenge the threatened disclosure of that information).[5]

---

[4] Defendants quote *In re Sealed Case*, 676 F.2d at 817, for the *per se* rule that "a party waives its work product protection in civil litigation by disclosing privileged material to anyone without common interests in developing legal theories and analyses of documents."  *See* Reply at 3.

[5] For example, in one instance of this conduct, defendant Dubai Islamic Bank objected to the Department of Treasury producing in response to Plaintiffs' FOIA investigation documents relevant to its conduct in this litigation.

The Honorable Frank Maas                                                        Page 10
April 30, 2013

### 5. Defendants Have Not Even Attempted To Demonstrate An "Extraordinary Justification" For The Documents At Issue.

The last relevant question is whether the work product privilege is overcome by Defendants demonstrating an "extraordinary justification" for production of the documents at issue. *In re Circle K Corp.*, 1997 U.S. Dist. LEXIS 713, at *20. The only showing that Defendants have *attempted* to make is one of "substantial need." Reply at 4. In support of that "substantial need" showing the only support offered is that "the communications surrounding the FOIA requests *may* have significant evidentiary value" and Defendants "*may*" not be able "to make determinations about the credibility and admissibility of the FOIA Responses." *Id.* (emphasis added). This feeble proffer, wrought with tremendous uncertainty and speculation, not only fails to meet the "substantial need" threshold for fact work product, but comes nowhere near the necessary demonstration of "extraordinary justification" to require production of core work product.

In a desperate attempt to prevail, Defendants try to claim that the documents reflect only "the selection and organization of documents," which would not necessarily constitute core work product. But as Plaintiffs have explained and exemplars submitted for the Court's *in camera* consideration will confirm, the documents contain more information than the mere selection and organization of documents; rather, the documents reflect those issues and subjects that Plaintiffs have prioritized according to the development of a legal strategy. Those impressions and opinions reveal counsel's thoughts – or are substantially likely to do so – and are therefore granted a higher level of protection.

### 6. At The Very Least, If This Court Orders Production, All Core Work Product Should Be Redacted From Any Documents.

Though Plaintiffs contend that the documents are work product in their entirety and engaging in an exercise to redact the volume of documents on the log would be an exercise wasteful of time and resources, if the Court finds that any part of the documents must be produced, any production order should include the opportunity for Plaintiffs to redact all core work product reflected in the documents. *See, e.g., Abdell v. City of New York*, No. 05 Civ. 8453 (KMK) (JCF), 2006 U.S. Dist. LEXIS 66114, at *25 (S.D.N.Y. Sept. 14, 2006) ("Notwithstanding the fact that the primary information sought . . . is not work product immunized from disclosure under Rule 26(b)(3) or *Hickman*, there are some residual notions. . .that may merit protection. . . . Therefore, to the extent that [the producing party] wishes to redact specific entries from the documents that it produces, it shall propose a procedure for doing so. . . .").

#### Conclusion

For the foregoing reasons, the reasons discussed on the record during the April 16, 2013 hearing, and in Plaintiffs' March 29, 2013 letter, Plaintiffs request that the Court find that the documents at issue contain core attorney work product and deny Defendants' application to require Plaintiffs to produce the documents.

Respectfully submitted,

Robert T. Haefele
THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:    Hon. George B. Daniels (By Hand Delivery)
       MDL-1570 counsel (By electronic mail)