



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Steven J. Young
steven.young@dlapiper.com
**T**  212.335.4929
**F**  212.884.8453

May 1, 2013

*VIA HAND DELIVERY*



The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY  10007-1312

**Re:**   ***In re Terrorist Attacks on September 11, 2001**, 03 MDL 1570 (GBD)*

Dear Judge Maas :

     We represent Arab Bank plc ("Arab Bank" or the "Bank").  Although Arab Bank is not a party to any of these consolidated multidistrict litigations (the "*In re Terrorist Attacks* Litigations"), it has come to our attention that the potential production of its documents, produced by the Bank in an unrelated proceeding under cover of a strict confidentiality order, has been the subject of discussion in these actions.  (*See* Ex. 1 (Ltr. From Robert T. Haefele, Esq. to Hon. Frank Mass, Apr. 30, 2013, cc: counsel for Arab Bank).)  We therefore write to place before this Court certain facts that we believe may prove helpful to the Court in its determination of any discovery disputes concerning these documents (hereafter, the "Arab Bank Confidential Documents").

     As explained below, the Arab Bank documents listed on a privilege log by plaintiffs' counsel are documents to which that counsel is privy <u>solely</u> by its representation of unrelated parties in an unrelated litigation.  <u>Not one of these documents presently are—or has ever been—within the possession, custody or control of any party to these proceedings</u>.  Accordingly, Arab Bank respectfully submits that any further consideration of these documents is not properly before this Court and urges that plaintiffs' counsel be directed to withdraw its improperly provided privilege log.

**The *Linde* Action Plaintiffs And Their Counsel**

     Arab Bank is the sole defendant in eleven "related" actions pending before the Honorable Nina Gershon in the Eastern District of New York.[1]  The first of these actions, *Linde v. Arab Bank, PLC*, 04 Civ. 2799 (E.D.N.Y. 2004) (NG) (VVP), was filed in 2004 and the last, *Agurenko v. Arab Bank, PLC*, 10 Civ. 626 (E.D.N.Y. 2010) (NG)

---

[1]   Although these actions have not formally been designated as consolidated actions, they have been treated as such for discovery and various other purposes.



**DLA PIPER**

The Honorable Frank Maas
May 1, 2013
Page Two

(VVP), was filed in 2010.[2]  The eleven related actions pending before Judge Gershon are generally referred to as the "*Linde* actions."

The *Linde* actions comprise claims brought by approximately 500 plaintiffs suing under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, and approximately 6,100 plaintiffs suing under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.[3]  The respective plaintiffs in the eleven actions are represented by various counsel, including Motley Rice LLC ("Motley Rice").   Specifically, Motley Rice represents most of the 6,100 ATS plaintiffs and a few of the ATA plaintiffs.  The plaintiffs represented by Motley Rice bring suit in three of the eleven actions:  *Almog v. Arab Bank, PLC*, No. CV-04-5564 (E.D.N.Y. 2004) (NG) (VVP) (the "*Almog* action"); *Afriat-Kurtzer v. Arab Bank, PLC*, No. CV-05-388 (E.D.N.Y. 2005) (NG) (VVP) (the "*Afriat-Kurtzer* action"); and *Lev, et al. v Arab Bank, PLC*, No. CV-08-3251 (E.D.N.Y. 2008) (NG) (VVP) (the "*Lev* action").  Motley Rice also represents unrelated plaintiffs in these *In re Terrorist Attacks* Litigations.

To the best of Arab Bank's knowledge, <u>none</u> of the plaintiffs in the *Almog*, *Afriat-Kurtzer* or *Lev* actions is also a plaintiff in the *In re Terrorist Attacks* Litigations.  Indeed, to the best of Arab Bank's knowledge, <u>none</u> of the plaintiffs in <u>any</u> of the *Linde* actions is also a plaintiff in the *In re Terrorist Attacks* Litigations.

## The *Linde* Actions Confidentiality Protective Order

In the course of discovery in the *Linde* actions, Arab Bank produced customer records and other documents of a sensitive and confidential nature, including documents subject to the strict bank secrecy laws of other jurisdictions.   Those documents were produced pursuant to permissions obtained by foreign regulators and customers, for production and use in the *Linde* actions only and subject to the protections of a confidentiality order entered by the Court and agreed to by the parties through their counsel.

---

[2]       A twelfth action, *Gill v. Arab Bank, PLC*, 11 Civ. 3706 (E.D.N.Y. 2011) (JBW) (VVP), was filed in 2011 and briefly assigned to Judge Gershon.  It was subsequently reassigned to the Honorable Jack B. Weinstein and was ultimately dismissed on summary judgment in favor of Arab Bank.  *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012).

[3]       A briefing schedule has been set to address the Bank's request that the ATS claims is dismissed pursuant to the recent decision of the Supreme Court in *Kiobel v. Royal Dutch Petroleum Company*, __ S. Ct. __, 2013 WL 1628935 (Apr. 17, 2013).  However, pending resolution of the Bank's motion, the ATS plaintiffs remain in the *Linde* actions.

2



**DLA PIPER**

The Honorable Frank Maas
May 1, 2013
Page Three

   The protective order expressly identifies the then-pending related *Linde* actions and further provides that:

> Any additional cases that are designated by order of the Court for cooperative or consolidated discovery with the foregoing cases shall by order therein be made subject to this Order <u>and the parties thereto may use Confidential Information or Highly Confidential Information for no purpose other than prosecuting, defending or settling such cases</u>.

*Linde* ECF No. 85 (Protective Order), ¶ 3 (emphasis supplied).  Plainly, the *In re Terrorist Attacks* Litigations have not been consolidated for discovery with the *Linde* actions.  Absent a direct violation of the *Linde* confidentiality order, which Motley Rice contends has not occurred, none of the parties to the *In re Terrorist Attacks* Litigations, including the plaintiffs, has seen or is privy to any of the Arab Bank Confidential documents.  Accordingly, no party to these proceedings is properly in a position to identify, on a privilege log or otherwise, any of the Arab Bank Confidential Documents.

**The Improper Identification of Arab Bank Confidential Documents By Plaintiffs' Counsel In The *In re Terrorist Attacks* Litigations**

   Counsel for Arab Bank was informed by a letter dated January 30, 2013, from an attorney at Motley Rice, that certain of the Arab Bank Confidential Documents "*have been identified* as potentially responsive to discovery requests in *In re Terrorist Attacks* . . . ." (Ex. 2.)  Counsel's letter went on to state that "[a]lthough the identified documents have not been produced to the defendants in the above-referenced matter, *we intend to identify them on a privilege log* [and] . . . we cannot predict whether the Court will or will not order their production."

   We next learned, shortly thereafter, that Motley Rice had indeed provided to the *In re Terrorist Attacks* defendants a privilege log comprising 17 pages of listings of Arab Bank Confidential Documents, each indicating that the document had been "Produced pursuant to [a] Protective Order dated August 1, 2005, in *Linde* . . . and related cases."[4]  Although the privilege log provided by Motley Rice indicates for each identified document that it was "[p]roduced pursuant to [a] Protective Order dated August 1, 2005, in *Linde*," it of course omits the salient fact that it was produced to the

---

[4]  It was only after repeated requests, *see, e.g.*, Exs. 3-6, that we were ultimately informed that Motley Rice had produced the privilege log on February 1, 2013—less than 24 hours after its January 30, 2013 letter to Arab Bank.



**DLA PIPER**

The Honorable Frank Maas
May 1, 2013
Page Four

<u>plaintiffs</u> in those actions—not to Motley Rice. Respectfully, then, Arab Bank does not believe that the overarching issue before this Court is one of relevance or confidentiality. Rather, and more simply, the issue is whether these documents were properly identified by the *In re Terrorist Attacks* plaintiffs in the first instance, given that these Arab Bank documents <u>are not—and have never been—within their possession, custody or control</u>.

As we advised plaintiffs' counsel, the law on "possession, custody and control" of a party's documents is clear. In *Nissei America, Inc. v. Cincinnati Milacron, Inc.*, for example, where defendants sought discovery from plaintiffs' law firm, regarding the firm's representation of an unrelated client, the court denied defendant's request, asserting that such discovery "is in the possession and control of [the unrelated client], a non-party to this action *not under plaintiffs' control,* and it is thus not available to plaintiffs within the meaning of the [FRCP]." 95 F.R.D. 471, 475 (N.D. Ill. 1982) (emphasis supplied). *See also Poppino v. Jones Store Co.*, 1 F.R.D. 215, 219 (W.D. Mo. 1940) ("<u>The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party. . . . The paper which he has in his possession may be the property of some other client. It is inconceivable that he should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it</u>.) (emphasis supplied).

Even absent a protective order restricting access to documents at issue, a party's mere ability to obtain non-party documents from a common lawyer is insufficient to bring those documents within the party's "control," and therefore subject to production. *See, e.g., Pupo-Leyvas v. Bezy,* No. 2:08CV207-RLY-WGH, 2009 WL 1810337, at *1 (S.D. Ind. June 24, 2009) ("Bezy's practical ability to obtain the documents would require that his counsel, acting on his behalf, request those items from the [non-party]. Bezy's counsel in this case also represents the [non-party]. The mere fact that Bezy's counsel could ask another separate client . . . to provide those documents does not give to Bezy the legal right to control the documents sought."); *see generally Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993) ("But the fact that a party could obtain a document if it tried hard enough . . . does not mean that the document is in its possession, custody, or control; in fact it means the opposite").

Indeed, so encompassing is this restriction regarding the proper reach of "possession, custody and control" that courts have held that a responding party cannot

4



**DLA PIPER**

The Honorable Frank Maas
May 1, 2013
Page Five

be compelled even to produce a co-party's documents, despite the fact that both parties are represented by the same attorney in the same litigation. In *Kendall State Bank v. West Point Underwriters*, for example, the court upheld plaintiff bank's refusal to produce documents of other banks in the same litigation, despite the fact that these documents were in its attorney's possession by virtue of shared representation. *Kendall State Bank v. W. Point Underwriters, LLC*, No. 10-2319-JTM/KGG, 2011 WL 5506278, at *2-3 (D. Kan. Nov. 9, 2011). As the court explained, "[a]ttorneys have numerous clients and the documents of one client do not simply come within the control of another client merely because both clients have retained the services of the same lawyer or law firm." *Id* (emphasis supplied). *See also Netbula, LLC v. Chordiant Software, Inc.*, C08-00019 JW (HRL), 2009 WL 3919495, at *2 (N.D. Cal. Nov. 18, 2009) ("Merely because counsel for said Defendant also represents co-Defendant does not mean that information within the control of co-Defendant is 'available' to said Defendant."); *Smith v. SGS N. Am., Inc.*, 2007-CV-0014, 2008 WL 4588742, at *2 (D.V.I. Oct. 10, 2008) (same).

In the course of our exchanges with Motley Rice, it has not refuted any of the authority cited by Arab Bank—nor would it be expected to do so as the law on this issue is well settled. Instead, counsel has responded that it somehow felt compelled, by orders of this Court, to identify documents to which it—but not any of the *In re Terrorist Attacks* plaintiffs—was privy, solely by virtue of its representation of unrelated clients in unrelated actions. When pressed to expressly identify, and provide evidence of, any such orders, however, counsel declined to do so. (See, *e.g.*, Exs. 3, 5.)

In conclusion, Motley Rice is not a plaintiff in the *In re Terrorist Attacks* Litigations and none of these documents is in the possession, custody or control of any *In re Terrorist Attacks* plaintiff. The plaintiffs in these actions are unable to produce, or even identify, any of these documents. Arab Bank respectfully urges that this Court direct plaintiffs' counsel, Motely Rice, to withdraw its improper provision of a privilege log listing documents produced to unrelated plaintiffs represented by it in an unrelated action.

Respectfully,

Steven J. Young



**DLA PIPER**

The Honorable Frank Maas
May 1, 2013
Page Six

cc:     Hon. George B. Daniels (By Hand Delivery)
        Robert T. Haefele, Esq. (counsel for Plaintiffs, by electronic mail)
        Counsel (By electronic mail)[5]

---

[5]     Because Arab Bank is not privy to the service lists utilized by the parties in these actions, counsel has effected service of this letter via electronic mail, directed to a list provided to counsel by Mr. Haefele and represented by plaintiffs' counsel to include parties "in active discovery to date, including counsel for plaintiffs and those defendants who participated in the motion requesting access to the Arab Bank documents." If the Court deems a broader distribution to be more appropriate, the Bank respectfully requests that the Court direct plaintiffs' counsel to assist in such manner as may be necessary to enable to Bank to effect such service.

# EXHIBIT 1



**MotleyRice**®
LLC
ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com

April 30, 2013

**Via Hand Delivery**

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

      Re:    *In Re:  September 11, 2001 World Trade Center Attack*, 03 MDL 1570 (GBD)

Dear Judge Maas:

      During the April 16, 2013 discovery conference in the above-referenced multidistrict litigation, in connection with the defendants' application concerning entries on the plaintiffs' privilege log that identified Arab Bank documents produced under a confidentiality order in the *Linde* case in the Eastern District of New York, Your Honor requested that plaintiffs provide you with a letter, by April 30, 2013, indicating whether we would agree to file a joint application (with the 03 MDL 1570 defendants) before the *Linde* court to allow the identified documents to be produced in this multidistrict litigation.  With the following explanation, we would agree to participate in such a joint application.

      Given the long tenure of this Court's management of this multidistrict litigation, we believe that Your Honor is better situated to adjudicate questions that might arise concerning the relevance of the documents to be produced.  So, although plaintiffs' view is that, particularly because the documents are identified as responsive to various defendants' document requests, there is undoubtedly a presumption that the documents are relevant, to the extent that any question may be raised as to the relevance of the documents in 03 MDL 1570, that question is better suited to be adjudicated before Your Honor, rather than by a judge in another litigation.

With that singular caveat, plaintiffs are not opposed to joining with the 03 MDL 1570 defendants in an application before the court managing the *Linde* matter in the Eastern District of New York.  The plain request to be addressed to that court's consideration would be, assuming that the documents are relevant, the parties in 03 MDL 1570 jointly ask that the *Linde* court modify the confidentiality order in that matter to allow for the parties in 03 MDL 1570 to have access and use of the Arab Bank documents identified on the plaintiffs' privilege log, to be covered by the same or a similar protective order.

Respectfully,

*[signature]*

ROBERT T. HAEFELE

cc:     Hon. George B. Daniels (By Hand Delivery)
        Kevin Walsh, Esq. (counsel for Arab Bank, by electronic mail)
        MDL-1570 counsel (By electronic mail)

# EXHIBIT 2



**MotleyRice**®
LLC
ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com

January 30, 2013

**Via Electronic Mail**
Kevin Walsh, Esq.
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020

Re:   *In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM) (S.D.N.Y.)

Dear Kevin:

We are writing to you pursuant to Paragraph 12 of the August 1, 2005 Protective Order in the matter *Linde v Arab Bank, PLC*, Lead Case Docket No. CV 04 2799 (NG/VVP), to advise you that the documents identified in Attachment A to this correspondence, which Arab Bank produced in the *Linde* matter and designated as Confidential or Highly Confidential, have been identified as potentially responsive to discovery requests in *In Re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD)(FM) (S.D.N.Y.), in which our firm represents plaintiffs, and *may* be subject to disclosure to the defendants or their counsel in that litigation.

Although the identified documents have not been produced to the defendants in the above-referenced matter, we intend to identify them on a privilege log indicating that they have not been produced due to the applicable protective order in the *Linde* matter.  While we continue to abide by the terms of the August 1, 2005 Order, if a defendant should challenge any of the documents' non-production and inclusion on the log, we cannot predict whether the Court will or will not order their production at a later date.  Beyond the protective order, we do not have any additional reason to withhold their production.

Regards,

Robert T. Haefele

Enclosure

# EXHIBIT 3



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Steven J. Young
steven.young@dlapiper.com
T 212.335.4929
F 212.884.8453

March 28, 2013

*VIA ELECTRONIC MAIL*

Robert T. Haefele, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

>    **Re:   *Linde v. Arab Bank, PLC,* 04 Civ. 2799 (NG)(VVP) and related cases**

Dear Robert:

        I write further to our recent conversation concerning developments in *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (S.D.N.Y.), an action in which the plaintiffs are represented by Motley Rice LLC.  The *In re Terrorist Attacks* plaintiffs bear no relation to the plaintiffs who also happen to be represented by Motley Rice in several of the various related *Linde* actions.

        As we understand those developments from our communications with you, recent actions taken by Motley Rice in *In re Terrorist Attacks,* in apparent violation of the protective order entered in the *Linde* actions, now threaten to result in the production of documents labeled "Highly Confidential" that were produced by Arab Bank in the *Linde* actions pursuant to that order.  As you know, the protective order specifically identifies the various related *Linde* actions and then expressly provides that:

>    Any additional cases that are designated by order of the Court for cooperative or consolidated discovery with the foregoing cases shall by order therein be made subject to this Order and the parties thereto may use Confidential Information or Highly Confidential Information *for no purpose other than prosecuting, defending or settling such cases.*

Protective Order, ¶ 3 (emphasis supplied).  Plainly, the *In re Terrorist Attacks* litigation proceeding in the Southern District has not been consolidated for discovery, nor for any other purposes, with the *Linde* actions.

        To briefly trace these developments, you stated by a letter dated January 30 that various documents produced in the *Linde* actions "have been identified as potentially responsive to discovery requests in *In re Terrorist Attacks* . . . ."  Your letter went on to state that "[a]lthough the identified documents have not been produced to the defendants in the above-referenced matter, *we intend to identify them on a privilege log* [and] . . . we cannot predict whether the Court will or will not order their production."  We



Robert T. Haefele, Esq.
March 28, 2013
Page Two

next learned, shortly thereafter, after a call from counsel for certain of the *In re Terrorist Attacks* defendants, that Motley Rice had indeed provided to them a privilege log comprising 17 pages of listings of Arab Bank documents, each indicating that the document had been "Produced pursuant to Protective Order dated August 1, 2005, in *Linde . . . and related cases."* Although we have not seen the defendants' requests for documents, and therefore have no idea why the *In re Terrorist Attacks* plaintiffs might consider these documents to be responsive, there can be no dispute that these documents were never produced to them and therefore they could have no knowledge of the contents of these documents absent an apparent violation of the Protective Order by their counsel—who happen to be in possession of documents produced in another, unrelated, case in which those same counsel appear.

The law on "possession, custody and control" of a party's documents makes quite clear that Arab Bank's documents were not--and are not—within the possession, custody or control of the plaintiffs in the *In re Terrorist Attacks* litigation. In *Nissei America, Inc. v. Cincinnati Milacron, Inc.,* for example, where defendants sought discovery from plaintiffs' law firm regarding the firm's representation of an unrelated client, the court denied defendant's request, asserting that such discovery "is in the possession and control of [the unrelated client], a non-party to this action *not under plaintiffs' control,* and it is thus not available to plaintiffs within the meaning of the [FRCP]." 95 F.R.D. 471, 475 (N.D. Ill. 1982) (emphasis supplied). *See also Poppino v. Jones Store Co.,* 1 F.R.D. 215, 219 (W.D. Mo. 1940) ("The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party. . . . The paper which he has in his possession may be the property of some other client. *It is inconceivable that he should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it.*) (emphasis supplied).

Even absent a protective order restricting access to documents at issue, a party's mere ability to obtain non-party documents from a common lawyer is insufficient to bring those documents within the party's "control," and therefore subject to production. *See, e.g., Pupo-Leyvas v. Bezy,* No. 2:08CV207-RLY-WGH, 2009 WL 1810337, at *1 (S.D. Ind. June 24, 2009) ("Bezy's practical ability to obtain the documents would require that his counsel, acting on his behalf, request those items from the [non-party]. Bezy's counsel in this case also represents the [non-party]. The mere fact that Bezy's counsel could ask another separate client . . . to provide those documents does not give to Bezy the legal right to control the documents sought."); *see generally Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1426-27 (7th Cir. 1993)



Robert T. Haefele, Esq.
March 28, 2013
Page Three

("But the fact that a party could obtain a document if it tried hard enough . . . does not mean that the document is in its possession, custody, or control; in fact it means the opposite").

Indeed, so encompassing is this restriction regarding the proper reach of "possession, custody and control" that courts have held that a responding party cannot be compelled to produce even a co-party's documents, despite the fact that both parties are represented by the same attorney in the same litigation. In *Kendall State Bank v. West Point Underwriters*, for example, the court upheld plaintiff bank's refusal to produce documents of other banks in the same litigation, despite the fact that these documents were in its attorney's possession by virtue of shared representation. *Kendall State Bank v. W. Point Underwriters, LLC*, No. 10-2319-JTM/KGG, 2011 WL 5506278, at *2-3 (D. Kan. Nov. 9, 2011). As the court explained, "[a]ttorneys have numerous clients and the documents of one client do not simply come within the control of another client merely because both clients have retained the services of the same lawyer or law firm." *Id. See also Netbula, LLC v. Chordiant Software, Inc.*, C08-00019 JW (HRL), 2009 WL 3919495, at *2 (N.D. Cal. Nov. 18, 2009) ("Merely because counsel for said Defendant also represents co-Defendant does not mean that information within the control of co-Defendant is 'available' to said Defendant."); *Smith v. SGS N. Am., Inc.*, 2007-CV-0014, 2008 WL 4588742, at *2 (D.V.I. Oct. 10, 2008) (same).

When we spoke, you indicated that Motley Rice felt compelled to consider Arab Bank documents within counsel's possession, but not plaintiffs' possession, as being responsive to defendants' document requests, in light of rulings or statements of the court in the *In re Terrorist Attacks* litigation. Yet you declined to identify any such directives, suggesting instead that we are free to search the record. In the interests of attempting, in good faith, to understand the position taken by Motley Rice in that action with regard to plaintiffs' discovery obligations before we assess what course of action is appropriate, we ask that you: (a) inform us of the date on which you provided the privilege log listing Arab Bank documents subject to the *Linde* Protective Order; (b) provide a copy of the document requests to which that privilege log purported to respond; and (c) provide a copy of any rulings or portions of transcripts evidencing any directives that plaintiffs' counsel produce documents not within the possession, custody or control of those plaintiffs.



Robert T. Haefele, Esq.
March 28, 2013
Page Four

   In light of the fact that there will be motion practice over this issue in the *In re Terrorist Attacks* litigation, we ask that you respond no later than close of business tomorrow.

      Sincerely,

      Steven J. Young

# EXHIBIT 4



MotleyRice®LLC

ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000  f. 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct:  843.216.9184
rhaefele@motleyrice.com

March 29, 2013

**Via Electronic Mail**

Steven J. Young, Esq.
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020

Re: *In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM) (S.D.N.Y.)

Dear Steven:

We are writing in response your letter sent yesterday afternoon, March 28, 2013, asking us to comb through the orders and transcripts in *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, (GBD)(FM) (S.D.N.Y.), to cull out information we discussed yesterday and to do so by the close of business today.  Largely because of the deadlines that you reference in your letter (*i.e.*, plaintiffs' response to the defendants' letter application in the *In re Terrorist Attacks* matter is due to be served during the same time period), we are not in a position either to do the research that you have asked for us to perform or to respond to your legal commentary.

However, we did want to quickly disabuse you of any notion that Motley Rice has violated the *Linde* protective order.  As you and I discussed, contrary to the innuendo and implications contained in the letter from the *In re Terrorist Attacks* defendants, Motley Rice has made none of the documents Arab Bank produced under the *Linde* order (nor any of the content that Arab Bank alleges to be confidential or highly confidential) available for any other counsel in *In re Terrorist Attacks*, neither plaintiffs' counsel nor defendants' counsel.

Although you have taken what I would characterize as a very narrow view of what may be considered responsive to discovery requests served on plaintiffs' in other litigation, based in large part on our having been involved in the *In re Terrorist Attacks* litigation for many years, we took a bit broader perspective, more transparent, if you will, on what we considered responsive.  But at the same time, we nonetheless maintained the integrity of the *Linde* order and have not disclosed a single document from the Arab Bank collection protected under that order.

Unfortunately, I am out of my office the early part of next week, with anticipated sporadic email access.  However, if you would like to discuss this further, I can be available mid-day on Wednesday.  But in the interim, my recommendation, as I did suggest when we spoke, is that you review the various transcripts and orders in the *In re Terrorist Attacks* litigation.  I cannot extemporaneously identify a specific item or set of items that jump out at me where Judge Maas ordered us to produce the Arab Bank documents (of course, if that existed, then all parties would be situated somewhat differently).  And I would have to go through the orders and transcripts the same as I am suggesting that you do.

Regards,

Robert T. Haefele

MT. PLEASANT, SC | PROVIDENCE, RI. | HARTFORD, CT | NEW YORK, NY
MORGANTOWN, WV | WASHINGTON, DC | LOS ANGELES, CA

*Motley Rice LLP operates the California office.*

# EXHIBIT 5



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Steven J. Young
steven.young@dlapiper.com
**T**  212.335.4929
**F**  212.884.8453

April 2, 2013

*VIA ELECTRONIC MAIL*

Robert T. Haefele, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464

     **Re:**   *Linde v. Arab Bank, PLC,* **04 Civ. 2799 (NG)(VVP) and related cases**

Dear Robert:

     On March 28, 2013, we wrote, on behalf of Arab Bank plc, to express serious concern regarding actions taken by Motley Rice in *In re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (S.D.N.Y.), in apparent violation of the protective order entered in the *Linde* actions.  In doing so, we asked that your firm provide the following:

> **In the interests of attempting, in good faith, to understand the position taken by Motley Rice in that action with regard to plaintiffs' discovery obligations before we assess what course of action is appropriate, we ask that you:  (a) inform us of the date on which you provided the privilege log listing Arab Bank documents subject to the *Linde* Protective Order; (b) provide a copy of the document requests to which that privilege log purported to respond; and (c) provide a copy of any rulings or portions of transcripts evidencing any directives that plaintiffs' counsel produce documents not within the possession, custody or control of those plaintiffs.**

     Your response, dated March 29, 2013, however, did not identify the date on which Motley Rice provided the list of documents at issue to the *In re Terrorist Attacks* defendants; nor did you provide a copy of the document requests; nor did you identify any rulings or directives instructing Motley Rice to consider as responsive to those requests documents in the possession of Motley Rice solely by virtue of their unrelated role as counsel to plaintiffs in the *Linde* actions.  Indeed, although Arab Bank is not a party to any of the nearly 20 consolidated actions that comprise the MDL *In re Terrorist Attacks* proceeding—a proceeding with a docket in excess of 3000 entries— you instead suggested that **we** "go through the orders and transcripts" to determine whether **Motley Rice** has acted appropriately.   We cannot take that suggestion seriously.



**DLA PIPER**

Robert T. Haefele, Esq.
April 2, 2013
Page Two

     Although we have already discussed this matter at length, I will certainly make myself available mid-day tomorrow as you requested, *if there is additional information you wish to convey*.  At a minimum, please provide the information that we requested in our letter of March 28.  If Motley Rice cannot or will not do so, please be advised that we will seek all appropriate relief.

Sincerely,

Steven J. Young

# EXHIBIT 6



**MotleyRice**®
LLC
ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000   f. 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com

April 3, 2013

**Via Electronic Mail**
Steven J. Young, Esq.
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020

       Re:    *In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM) (S.D.N.Y.)

Dear Steven:

     We are writing in response to your letter sent yesterday afternoon, April 2, 2013, reiterating your request to have us comb through the orders and transcripts in *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, (GBD)(FM) (S.D.N.Y.), to cull out information for you. As I indicated in my response to you, I was unavailable to attend to your request until today. And though I am still open to speaking with you today, your letter suggests that you would rather speak to me only if I am in a position to provide you with all the information that you have asked for from us. At the moment, I am not in such a position. But in response to your three inquiries, I can offer the following:

     (1)    The privilege log with the information that we had previously sent to your office (to Kevin Walsh) was served on the defendants in *In re Terrorist Attack*, 03 MDL 1570, on February 1, 2013.

     (2)    As I have advised the *In re Terrorist Attacks* defendants, once a document was identified as being responsive to any request but subject to restrictions placing it on the privilege log, it was not necessarily flagged for all other requests to which it was responsive. But I will do my best to provide, by mid-next week, copies of the discovery requests with additional information indicating exemplary requests for the Arab Bank documents.

     (3)    Finally, concerning your suggestion that we should comb through the docket, I have a different view than you have for several reasons, including: (1) as I indicated when we spoke, much of the view we had was premised on having lived through the litigation for years, and thus we have not culled through the transcripts or orders to do what you have suggested, and (2) it would therefore be just as easy for you to do the work that you suggest. Moreover, as I mentioned when we spoke, I suggested that it would entail focusing primarily on transcripts and orders concerning hearings and disputes before Magistrate Judge Maas, rather than the entirety of the docket. But to ask Motley Rice to cull through the documents independent of the work we are performing to advance that litigation, merely to provide you with new information, seems unnecessary.

     If you are still interested in speaking today, please let me know.

Regards,

Robert T. Haefele