


www.motleyrice.com




28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000 f. 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com




May 9, 2013

**By Federal Express**

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

**Re:** *In Re: September 11, 2001 World Trade Center Attack*, 03 MDL 1570 (GBD)

Dear Judge Maas:

Late Friday evening, May 3, 2013, we received, via email attachment, a letter dated May 1, 2013, from Arab Bank attorney Steven Young (hereinafter, "Young Ltr.").[1] More than three months after we advised Arab Bank precisely what information about its documents we intended to include on Plaintiffs' privilege log; more than five weeks after we advised Arab Bank precisely what the *In re Terrorist Attacks* defendants intended to file to seek access to the Bank's documents identified on Plaintiffs' log; more than two weeks after the Court entertained oral argument concerning access to the Bank's documents, and more than a week after the Court issued an order concerning access to the Arab Bank documents, Arab Bank has *finally* approached this Court to express belated opposition to the Court granting Defendants' request.[2] Arab Bank states that its intention is "to place before this Court certain facts that [it believes] may prove helpful." Young Ltr., at 1. But, nothing in Arab Bank's tardy submission provides any facts to change the Courts' approach concerning the dispute.

For the purpose of resolving this particular dispute, Plaintiffs do not disagree with much of Arab Bank's statement of underlying facts. For example, the Bank's description of the *Linde* litigation (p. 2) and its description of the manner in which the Bank's documents were produced to plaintiffs in the *Linde* matter under claims of confidentiality pursuant to the protective order in that litigation (p. 2-3) are more or less consistent with what Plaintiffs already told this Court, though with some minor corrections that are not especially pertinent here (*e.g.*, where the Bank asserts the documents are of a sensitive and confidential nature, plaintiffs would not characterize them as so, but agree that Arab Bank has asserted them to be so under the terms of the protective order).

Although much of Arab Bank's description of its counsels' communications with Motley Rice about this dispute, dating back to January 2013, is *generally* accurate, it misstates some facts and omits two pertinent communications from Motley Rice to the Bank's counsel. As Arab Bank mentions, in a January 30, 2013 letter, Motley Rice apprised the Bank of Plaintiffs' intention to

[1] Although we cannot determine with confidence when the letter was delivered to Your Honor, we note that it was not served on plaintiffs' counsel until the evening two days after the date on the letter, despite providing Mr. Young with a list of counsel to serve within 30 minutes of his request for such a list.

[2] Indeed, the Bank goes even further than the parties in the case and seeks to have the Court order Plaintiffs to strike the Bank's documents from Plaintiffs log.





include Arab Bank documents on Plaintiffs' privilege log. Along with that letter, Plaintiffs included a chart identifying the entries and information about each entry that was to be included on the log. Two days later, having heard *nothing* from the Bank,[3] Plaintiffs served a privilege log that included entries for the Arab Bank documents, providing only non-confidential information that was identified in the attachment to the January 30 letter. Importantly, not a single Arab Bank document has been produced or otherwise disclosed to anyone. Then, on March 26, 2013, nearly two months after providing Arab Bank with the information that was to go on the log, Plaintiffs wrote to the Bank's counsel again, this time to apprise the Bank that the *In re Terrorist Attacks* defendants intended to ask this Court to order Plaintiffs to produce the Arab Bank documents (*see* Exhibit 1, attached hereto). With the March 26 letter, Plaintiffs included both a copy of their January 30 letter and a copy of the letter the *In re Terrorist Attacks* defendants intended to send to Your Honor, wherein Defendants asked Your Honor to order Plaintiffs to produce the Arab Bank documents. In both letters, Plaintiffs explained that, aside from abiding by the *Linde* protective order, Plaintiffs "do not have any additional reason to withhold [the documents from] production." Despite Plaintiffs' admonition to the Bank's counsel to assert its own objections, if any, and despite subsequent active communication between the Bank's counsel and Motley Rice, including two additional letters from the Bank's counsel and three additional letters from Motley Rice, the Bank never communicated its opposition to the Court until May 1, 2013.[4]

Arab Bank makes much of the fact that the documents at issue were produced in the *Linde* litigation and not to the *In re Terrorist Attacks* litigation, and that Motley Rice therefore has the documents by virtue of their representation of one set of plaintiffs and not another. First, that set of facts is *not new*; Plaintiffs have consistently made that fact clear since their very first submission to the Court about this dispute. *See, e.g.*, Plaintiffs' March 29, 2013 Opposition, at 1 (articulating defendants' position as, "notwithstanding a protective order in other litigation prohibiting disclosure of certain documents produced in other litigation wherein counsel for the Burnett plaintiffs represent other plaintiffs, counsel for the Burnett plaintiffs must produce those documents to Defendants in this litigation."). Second, regardless of the manner in which the documents came into Motley Rice's possession, Motley Rice is in possession of the documents and identified them as responsive to the various discovery requests propounded by the *In re Terrorist Attacks* defendants. Certainly, if there were no protective order preventing the production of the documents, then nothing would have prevented Plaintiffs from having produced the documents as responsive to the requests. But, in light of the *Linde* protective order, although the documents were no less responsive to the requests, they

---

[3] Footnote 4 of the Bank's letter to the Court can be read to imply that the Bank expressed intense scrutiny from the outset and that Plaintiffs gave no notice before serving a log that identified no confidential information. But in truth, the log was served only after Plaintiffs received no response from Arab Bank after two full days. In fact, despite the Bank's implication that it pressed hard for information about service of the logs, Arab Bank actually *never* responded to Plaintiff's January 30 letter. The first response from Arab Bank came only after Plaintiffs wrote to Arab Bank again almost two months later, on March 26, 2013, to advise the Bank that the *In re Terrorist Attack* defendants intended to file a motion, as Plaintiffs had already mentioned in the January 30 letter. So, any effort by the Bank to feign that it expressed *any* interest in plaintiffs' log after the January 30 letter is misleading.

[4] In addition to the March 26, 2013 letter, Arab Bank also omitted an April 10, 2013 letter from Motley Rice to Arab Bank's counsel. The April 10 letter supplemented Motley Rice's April 3, 2013 response to Arab Bank counsel's letter of April 2, 2013 and provided Arab Bank with copies of the Defendants' document requests that the Bank had requested.



Honorable Frank Maas
May 9, 2013



could not be produced. Accordingly, the documents were appropriately identified as being responsive to Defendants' requests but subject to a protection – namely, the protective order.

Arab Bank's argument ignores that the *Linde* protective order offers broad latitude for production of the documents at issue where a formal request is made for the documents. Specifically, paragraph 12 of the *Linde* protective order provides that persons in possession of information designated as confidential under the order are not obligated to resist production or disclosure of the information in response to formal requests. *See* Protective Order, *Linde v. Arab Bank*, No. 04-2799, ¶ 12 (E.D.N.Y. Aug. 1, 2005) (Exhibit 4 to Defendants' Original Undated Letter Application). So, in a sense, the Bank's argument elevates form over substance by contending that, simply because the request came in the form of a document request rather than some other formal process directed to Motley Rice, production is prohibited.

The irony here is that Arab Bank and the *In re Terrorist Attacks* Defendants, *all* defendants identified in their own respective litigations as being *not* wholly forthright in their own discovery obligations (indeed, Arab Bank has had sanctions imposed upon it for its refusal to abide by the district court's discovery), fault Motley Rice for its transparency in the discovery process – *i.e.*, for identifying information it was not obligated to identify. But to ensure compliance with this Court's various admonitions throughout the discovery proceedings here that "documents in the hands of lawyers . . . are in the custody or control of a party" (Dec. 2, 2010 Transcript, at 21:18-25), Motley Rice produced (or in the case of documents that were protected from production, like the Arab Bank documents, identified) documents using a broad interpretation of the Court's directive. *See also, e.g.*, April 12, 2011 Transcript, at 18:17-25 ("[I]f there is a document that counsel have collected that responds to a specific subject matter request . . . if there is a document that plaintiffs' counsel as agents for plaintiffs have obtained from whatever source, whether it's a consultant or a trial exhibit in a criminal trial, or somebody flung it over the transom, I do think that document has to be produced."); *cf.* Jan. 7, 2011 Transcript, 35:21 to 36:22 (stating that, attorney who received subpoena for multiple clients' documents within attorney's possession, may be obligated to produce responsive documents).[5]

As for the array of uncontrolling case citations the Bank offers (none of which are from this district or this circuit), all of the cases are distinguishable by the fact that in each of those cases the party that was asked to produce the documents actively opposed production of the documents. Here, Motley Rice made clear from the start that the *only* reason it was not producing the documents was to maintain the integrity of the protective order that applied to the documents; had there been no order, the documents would have been produced. Surely, the Bank is not suggesting that, absent a protective order, relevant documents uncovered in one litigation *must* be segregated and may *never* be used in other litigation, even if their existence is known.

In short, nothing in the Bank's submission should change in any manner the Court's approach to resolving the discovery dispute among the parties. Merely because the protective order

[5] Although Arab Bank distorts the conversation with Motley Rice, by saying that Motley Rice indicated that the court had entered "orders" requiring Motley Rice to produce documents in Motley Rice's possession as a result of its representation of plaintiffs in the *Linde* matter, what Motley Rice had stated was consistent with what is said here – namely, that throughout the litigation, the Court had made clear that the parties were expected to produce documents without counsel's possession, regardless of where counsel had obtained the documents.






prevented production of the documents in discovery, the order did nothing to change the fact that the documents are nonetheless responsive to the Defendants' discovery requests; had there been no protective order, the documents would have been produced as responsive. Inasmuch as no confidential information from the Arab Bank documents has been disclosed (notwithstanding the terms of ¶ 12 of the *Linde* protective order), the *Linde* order has not been violated. But, inasmuch as the Bank failed to object to production in a timely manner, its untimely objections ought to be considered waived.

Respectfully,

ROBERT T. HAEFELE

cc: Hon. George B. Daniels (by Federal Express)
Steven Young, Esq. (counsel for Arab Bank, by electronic mail)
Counsel for parties actively engaged in discovery[6]

---

[6] On May 2, 2013, Mr. Young asked counsel for *Burnett* plaintiffs to provide a service list for a letter Arab Bank was sending to Judge Maas concerning the request to produce the Bank's documents. Within 15 minutes, counsel for the *Burnett* plaintiffs expressed uncertainty about getting a complete counsel list for *in re Terrorist Attacks* to Mr. Young due to its size, but asked if he would be satisfied with a list of the defendants actively engaged in discovery, to which Mr. Young responded that that would suffice. Within minutes, *Burnett* counsel emailed to Mr. Young a list of those defendants' email contacts along with plaintiffs' counsels' email contacts. This letter was emailed to the same list. However, if the Court determines that the two letters require a wider audience, then Plaintiffs volunteer to circulate the two letters to the broader list.