11-3294-cv(L), et al.
*In re Terrorist Attacks on September 11, 2001 (Asat Trust Reg., et al.)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued On: December 4, 2012)                    Decided: April 16, 2013)

Docket Nos.

11-3294-cv(L), 11-3407-cv, 11-3490-cv, 11-3494-cv, 11-3495-cv, 11-3496-cv, 11-3500-cv, 11-3501-cv, 11-3502-cv, 11-3503-cv, 11-3505-cv, 11-3506-cv, 11-3507-cv, 11-3508-cv, 11-3509-cv, 11-3510-cv, 11-3511-cv, 12-949-cv, 12-1457-cv, 12-1458-cv, 12-1459-cv.

_____

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 (ASAT TRUST REG., et al.)

JOHN PATRICK O'NEILL, JR., et al.,

*Plaintiffs-Appellants,*

v.

ASAT TRUST REG., AL SHAMAL ISLAMIC BANK, also known as SHAMEL BANK also known as BANK EL SHAMAR, SCHREIBER & ZINDEL, FRANK ZINDEL, ENGELBERT SCHREIBER, SR., ENGELBERT SCHREIBER, JR., MARTIN WATCHER, ERWIN WATCHER, SERCOR TREUHAND ANSTALT, YASSIN ABDULLAH AL KADI, KHALED BIN MAHFOUZ, NATIONAL COMMERCIAL BANK, FAISAL ISLAMIC BANK, SULAIMAN AL-ALI, AQEEL AL-AQEEL, SOLIMAN H.S. AL-BUTHE, ABDULLAH BIN LADEN, ABDULRAHMAN BIN MAHFOUZ, SULAIMAN BIN ABDUL AZIZ AL RAJHI, SALEH ABDUL AZIZ AL RAJHI, ABDULLAH SALAIMAN AL RAJHI, ABDULLAH OMAR NASEEF, TADAMON ISLAMIC BANK, ABDULLAH MUHSEN AL TURKI, ADNAN BASHA, MOHAMAD JAMAL KHALIFA, BAKR M. BIN LADEN, TAREK M. BIN LADEN, OMAR M. BIN LADEN, DALLAH AVCO TRANS ARABIA CO. LTD., DMI ADMINISTRATIVE SERVICES S.A., ABDULLAH BIN SALEH AL OBAID, ABDUL RAHMAN AL SWAILEM, SALEH AL-HUSSAYEN, YESLAM M. BIN LADEN, YOUSEF JAMEEL, SAUDI BINLADIN GROUP,

*Defendants-Appellees.**

_____

* The multiple appeals arising from the underlying multi-district litigation have been grouped under the case name "*In re Terrorist Attacks on September 11, 2001.*" This opinion, however, only addresses the claims against the thirty-seven defendants dismissed by the District Court for lack of personal jurisdiction, who remain part of this appeal. Accordingly, the caption above refers only to these thirty-seven defendants. For the purpose of the disposition of the claims against these thirty-seven defendants, the Clerk of Court is directed to amend the caption to conform to the listing of the parties shown above.

Before: C<small>ABRANES</small>, R<small>AGGI</small>, *Circuit Judges*, and R<small>AKOFF</small>, *District Judge*.[**]

These appeals involve claims by families and estates of the victims of the September 11, 2001 terrorist attacks, individuals injured by the attacks, and various commercial entities that incurred damages and losses as a result of the attacks. Before us are claims under the Anti-Terrorism Act, the Alien Tort Statute, and the Torture Victim Protection Act, as well as various common law tort claims against purported charities, financial institutions, and other individuals who allegedly provided support and resources to Osama Bin Laden and al Qaeda. The United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granted judgment in favor of seventy-six defendants, dismissing them on various grounds, including: (1) lack of personal jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) immunity from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA").

This opinion addresses only the claims against the thirty-seven defendants dismissed by the District Court for lack of personal jurisdiction. We agree with the District Court that we lack personal jurisdiction over most of these defendants pursuant to our decision in *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ("*In re Terrorist Attacks III*"), because plaintiffs have failed to plead facts sufficient to show that most of these defendants expressly aimed their allegedly tortious conduct at the United States. However, we conclude that jurisdictional discovery is warranted with regard to twelve of them.

---

On February 9, 2012, the parties entered into a stipulation withdrawing the appeals with regard to twenty-seven defendants. Case No. 11-3294-cv(L), Dkt. No. 328. To the extent that the caption in this case includes any defendants listed in that stipulation, the Clerk of Court is directed to amend the caption accordingly. Moreover, the Clerk of Court is directed to remove the following redundant listings of defendants in the caption: (1) National Commercial Bank of Saudi Arabia (the caption already lists "National Commercial Bank"); (2) Yassin Abdullah Al Kadi (listed in the caption twice); (3) Aqeel Abdul Azeel Al-Aqeel (an alias for "Aqeel Al-Aqeel"); (4) Al Turki (the caption already lists "Abdullah Muhsen Al Turki"). Finally, the Clerk of Court is directed to amend the caption to include as defendants-appellees (1) Saleh Al-Hussayen (currently listed only as a defendant), and (2) Engelbert Schreiber, Sr. and Engelbert Schreiber, Jr. (currently listed only as "Engelbert Schreiber").

** The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Accordingly, the December 14, 2011 judgment of the District Court is (1) affirmed insofar as it dismissed plaintiffs' claims against Faisal Islamic Bank, Al Shamal Islamic Bank, Tadamon Islamic Bank, DMI Administrative Services S.A., Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Salaiman Al Rajhi, the National Commercial Bank, Schreiber & Zindel Treuhand Anstalt, Sercor Treuhand Anstalt, Asat Trust Reg., Frank Zindel, Engelbert Schreiber, Sr., Engelbert Schreiber, Jr., Martin Wachter, and Erwin Wachter, Yousef Jameel, the Saudi Bin Laden Group, Abdullah Bin Laden, Bakr Bin Laden, Tarek Bin Laden, Omar Bin Laden, Yeslam Bin Laden, Khaled Bin Mahfouz, and Abdulrahman Bin Mahfouz for lack of personal jurisdiction; and (2) vacated insofar as it dismissed plaintiffs' claims against Aqeel Al-Aqeel, Soliman H.S. Al-Buthe, Abdullah Omar Naseef, Abdullah Bin Saleh Al Obaid, Abdullah Muhsen Al Turki, Adnan Basha, Mohamad Jamal Khalifa, Abdul Rahman al Swailem, Suleiman al-Ali, Yassin Abdullah Al Kadi, Saleh Al-Hussayen, and Dallah Avco Trans Arabia Co. Ltd. for lack of personal jurisdiction.  The cause is remanded to the District Court, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the prompt commencement of a course of judicially-supervised jurisdictional discovery as to the claims against Aqeel Al-Aqeel, Soliman H.S. Al-Buthe, Abdullah Omar Naseef, Abdullah Bin Saleh Al Obaid, Abdullah Muhsen Al Turki, Adnan Basha, Mohamad Jamal Khalifa, Abdul Rahman al Swailem, Suleiman al-Ali, Yassin Abdullah Al Kadi, Saleh Al-Hussayen, and Dallah Avco Trans Arabia Co. Ltd.

> RICHARD KLINGLER (Sean P. Carter, Stephen A. Cozen, Elliott R. Feldman, Cozen O'Connor, Philadelphia, PA; Ronald L. Motley, Robert T. Haefele, Motley Rice, LLC, Mount Pleasant, SC; Carter G. Phillips, Sidley Austin, LLP, Washington, DC; Andrea Bierstein, Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY; Robert M. Kaplan, Ferber Chan Essner & Coller, LLP, New York, NY; James P. Kreindler, Justin T. Green, Andrew J. Maloney, III, Kreindler & Kreindler LLP, New York, NY; Jerry S.

Goldman, Anderson Kill & Olick, P.C., New
York, NY; Chris Leonardo, Adams Holcomb
LLP, Washington, DC, *on the brief*), Sidley
Austin, LLP, Washington, DC, *for Plaintiffs-
Appellants on Personal Jurisdiction Issues.*

JAMES E. GAUCH (Mary Ellen Powers, Stephen J.
Brogan, Timothy J. Finn, *on the brief*), Jones
Day, Washington, DC, *for Defendants-Appellees
Saudi Binladin Group, Abdullah Bin Laden, Bakr
M. Bin Laden, Omar M. Bin Laden, Tarek M. Bin
Laden, Yeslam M. Bin Laden, and Khaled Bin
Mahfouz.*

Barry Coburn, Coburn & Greenbaum, PLLC,
Washington, DC, *for Defendants-Appellees Asat
Trust Reg., Martin Watcher, Erwin Watcher, and
Secor Treuhand Anstalt.*

Martin F. McMahon, Martin F. McMahon &
Associates, Washington, DC, *for Defendants-
Appellees Al Shamal Islamic Bank, Tadamon
Islamic Bank, and Dallah Avco Trans Arabia Co.
Ltd.*

John N. Scholnick, Ayad P. Jacob, Schiff Hardin LLP,
Chicago, IL, *for Defendants-Appellees Schreiber &
Zindel Treuhand Anstalt, Frank Zindel, Engelbert
Schreiber, Sr., and Engelbert Schreiber, Jr.*

Daniel L. Brown, David Geneson, Sheppard Mullin
Richter & Hampton LLP, New York, NY, *for
Defendant-Appellee Yassin Abdullah Al Kadi.*

Lawrence H. Schoenbach, Law Offices of Lawrence
H. Schoenbach, PLLC, New York, NY, *for
Defendant-Appellee Yeslam M. Bin Laden.*

Mitchell R. Berger, Alan T. Dickey, Patton Boggs,
LLP, Washington, DC, *for Defendant-Appellee
National Commercial Bank.*

John F. Lauro, Lauro Law Firm, Tampa, FL and New
York, NY, *for Defendant-Appellee Faisal Islamic
Bank.*

Lynne Bernabei, Alan R. Kabat, Bernabei & Wachtel,
PLLC, Washington, DC, *for Defendants-*

4

> *Appellees Abdul Rahman Al Swailem, Abdullah Muhsen Al Turki, Abdullah Bin Saleh Al Obaid, Saleh Al-Hussayen, Soliman H.S. Al Buthe, Adnan Basha, and Abdullah Omar Naseef.*

Peter J. Kahn, Edward C. Reddington, David S. Kurtzer-Ellenbogen, Williams & Connolly LLP, Washington, DC, *for Defendant-Appellee Abdulrahman Bin Mahfouz.*

V. Thomas Lankford, Terrance G. Reed, Lankford & Reed, PLLC, Alexandria, VA, *for Defendants-Appellees Sulaiman Bin Abdul Aziz Al Rajhi, and Abdullah Salaiman Al Rajhi.*

David R. Francescani, Thomas M. Melsheimer, Fish & Richardson P.C., New York, NY, *for Defendant-Appellee Saleh Abdul Aziz Al Rajhi.*

Kenneth A. Caruso, White & Case LLP, New York, NY; Viet D. Dinh, Lizette Benedi, D. Zachary Hudson, Bancroft PLLC, Washington, DC, *for Defendant-Appellee Yousef Jameel.*

James J. McGuire, Timothy J. McCarthy, Aimee R. Kahn, Daniel A. Mandell, Mishcon de Reya New York LLP, New York, NY, *for Defendant-Appellee DMI Administrative Services S.A.*[1]

JOSÉ A. CABRANES, *Circuit Judge*:

These appeals involve claims by families and estates of the victims of the September 11, 2001 terrorist attacks, individuals injured by the attacks, and various commercial entities that incurred damages and losses as a result of the attacks (jointly, "plaintiffs").   Before us are claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, as well as various

---

[1]  Due to the large number of attorneys involved in these appeals, we list only the attorneys representing the defendants dismissed for lack of personal jurisdiction, as well as the attorneys for the plaintiffs involved in the argument and briefing of the personal jurisdiction issues.  No appearances were entered on behalf of Mohamad Jamal Khalifa, Aqeel Al-Aqeel, or Sulaiman Al-Ali.

common law tort claims against purported charities, financial institutions, and other individuals who are alleged to have provided support and resources to Osama Bin Laden and al Qaeda. The United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granted judgment in favor of seventy-six defendants, dismissing them on various grounds, including: (1) lack of personal jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) immunity from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA").

Due to the logistical challenges associated with these appeals, we address the various issues they raise in separate decisions. This opinion addresses only the claims against the thirty-seven defendants dismissed by the District Court for lack of personal jurisdiction (jointly, "Personal Jurisdiction defendants"). In separate opinions filed today, we address the claims against the defendants dismissed by the District Court for want of jurisdiction pursuant to the FSIA, as well as the claims against the defendants dismissed by the District Court for failure to state a claim upon which relief can be granted.

We agree with the District Court that we lack personal jurisdiction over most of the Personal Jurisdiction defendants pursuant to our decision in *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ("*In re Terrorist Attacks III*"), because plaintiffs have failed to plead facts sufficient to show that most of these defendants expressly aimed their allegedly tortious conduct at the United States. However, we conclude that jurisdictional discovery is warranted with regard to twelve of them. Accordingly, we (1) affirm the judgment of the District Court insofar as it dismissed plaintiffs' claims against Faisal Islamic Bank, Al Shamal Islamic Bank, Tadamon Islamic Bank, DMI Administrative Services S.A., Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Salaiman Al Rajhi, the National Commercial Bank, Schreiber & Zindel Treuhand Anstalt, Sercor Treuhand Anstalt, Asat Trust Reg., Frank Zindel, Engelbert Schreiber, Sr., Engelbert Schreiber, Jr., Martin Wachter, and Erwin Wachter, Yousef Jameel, the Saudi Bin Laden Group,

Abdullah Bin Laden, Bakr Bin Laden, Tarek Bin Laden, Omar Bin Laden, Yeslam Bin Laden,

Khaled Bin Mahfouz, and Abdulrahman Bin Mahfouz for lack of personal jurisdiction; and (2)

vacate the judgment of the District Court insofar as it dismissed plaintiffs' claims against Aqeel Al-

Aqeel, Soliman H.S. Al-Buthe, Abdullah Omar Naseef, Abdullah Bin Saleh Al Obaid, Abdullah

Muhsen Al Turki, Adnan Basha, Mohamad Jamal Khalifa, Abdul Rahman al Swailem, Suleiman al-

Ali, Yassin Abdullah Al Kadi, Saleh Al-Hussayen, and Dallah Avco Trans Arabia Co. Ltd.

for lack of personal jurisdiction and, as to these claims only, remand the cause to the District Court,

pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the prompt commencement of a

course of judicially-supervised jurisdictional discovery.

## BACKGROUND

In this sprawling multi-district litigation, plaintiffs, who allege that they suffered injuries as a

result of the September 11, 2001 attacks, seek money damages from several hundred defendants that

are alleged to have provided financial and other material support to al Qaeda and other terrorist

organizations.[2] Although these appeals address some of the defendants involved in this litigation,

claims against many more remain pending before the District Court.

Plaintiffs assert that "since at least the mid-1990's, it has been publicly known that Osama

bin Laden and his al Qaeda network were engaged in a global campaign of terror directed at its

proclaimed enemy, the United States." *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d

456, 464 (S.D.N.Y. 2010) ("*In re Terrorist Attacks IV*"). Because the aim of al Qaeda allegedly was

known in the mid-1990s, plaintiffs contend that "those who directly or indirectly provided material

support to them, during that period of time, plainly knew they were assisting al Qaeda with its

terrorist agenda." *Id.* Plaintiffs allege, moreover, that the September 11, 2001 attacks "could not

---

[2] Indeed, this multi-district litigation originally consisted of 28 complaints, which named a total of 835 defendants.

have been possible had it not been for the knowing material support provided to al Qaeda by [the] charities, banks, [and] foreign officials" who are the subject of these appeals. *Id.*

## A. Personal Jurisdiction Defendants

The thirty-seven Personal Jurisdiction defendants involved in these appeals can be grouped generally into nine categories based on their alleged actions.

(1) The nine "Charity Official defendants" allegedly controlled and managed purported charitable organizations that provided support and funding to al Qaeda.

(2) The "Sudanese defendants" are four financial institutions that are alleged to have knowingly provided banking services to al Qaeda and other groups that supported al Qaeda.

(3) The "Al Rajhi defendants" are four individuals that managed Al Rajhi Bank, which allegedly provided financial services to al Qaeda front charities.

(4) The "National Commercial Bank ("NCB") defendants" include NCB itself, as well as three individuals that managed NCB; plaintiffs allege that the NCB defendants, like the Sudanese defendants and the Al Rajhi defendants, provided banking services to organizations that supported al Qaeda.

(5) The "Bin Laden defendants" are five relatives of Osama Bin Laden, four of whom allegedly managed the Saudi Bin Laden Group ("SBG"), the Bin Laden family construction company.[3]

(6) SBG also is a defendant and is alleged to have provided material support to Osama Bin Laden during the time of al Qaeda's formation.

---

[3] Plaintiffs allege that the fifth relative of Osama Bin Laden, his nephew, Abdullah Bin Laden, is subject to personal jurisdiction based on his involvement in two purported charities located in the United States that supported al Qaeda.

Case: 11-0294  Document: 708  Page: 9  04/16/2015  308538  9 of 32

     (7)  The "Liechtenstein defendants" include three financial entities that allegedly provided

         financial services to al Qaeda and other terrorist organizations, as well as five individuals

         who managed them.

The last two "groups" of Personal Jurisdiction defendants do not fit neatly within the seven

categories listed above.  Plaintiffs allege that (8) Yousef Jameel ("Jameel") provided financial

resources to purported charities knowing that they supported al Qaeda, and (9) Dallah Avco Trans

Arabia Co. Ltd. ("Dallah Avco"), a company that specializes in aviation services, employed an

individual who aided two of the September 11, 2001 hijackers.

We briefly describe the jurisdictional allegations against each of these nine groups of

Personal Jurisdiction defendants.

### i. Charity Official Defendants

The nine "Charity Official defendants" are: Aqeel Al-Aqeel, Soliman H.S. Al-Buthe,

Abdullah Omar Naseef, Abdullah Bin Saleh Al Obaid, Abdullah Muhsen Al Turki, Adnan Basha,

Mohamad Jamal Khalifa, Abdul Rahman al Swailem, and Suleiman al-Ali.  Plaintiffs allege that the

Charity Official defendants (1) "served as senior officials of one or more of al-Qaeda's front

charities," (2) "used their authority over those organizations to orchestrate their material support

and sponsorship of al-Qaeda," and (3) "acted with knowledge that the organizations under their

control were channeling material support and resources to al-Qaeda, and that [such support] would

be used to support al-Qaeda's jihad against the United States."  Plaintiffs' PJ Br. 20-21 (citing Joint

App'x 3982-86, 4120-4214, 4166-68, 4451-54, 4478-82, 4496-4504, 6175-99).  In particular, plaintiffs

allege that:

- Aqeel Al-Aqeel served as General Director of Al-Haramain Islamic Foundation ("Al-Haramain"), Joint App'x 1776, as well as President of the United States branch of Al-Haramain, and "r[a]n all of al-Haramain worldwide," a charity which "exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism," *id.* at 846.

- Soliman H.S. Al-Buthe, through his involvement as a director of Al Haramain's branch in the United States, "direct[ed] support to al-Qaeda." Plaintiffs' PJ Reply Br. 102 (citing Dist. Ct. Dkt. 1039-5, at 2-4).

- Abdullah Omar Naseef founded the Rabita Trust ("Rabita"), served as Secretary-General of the Muslim World League ("MWL"), *see* Joint App'x 879, and "knowingly provided financial support to al Qaeda, through the MWL, Rabita . . . and the IIRO [International Islamic Relief Organization]," *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 510 (S.D.N.Y. 2010) ("*In re Terrorist Attacks V*").

- Abdullah Bin Saleh Al Obaid "has held high leadership roles in numerous charities that operated as conduits for al Qaida financing, including the [MWL, Rabita, IIRO,] Sanabell, Inc., and Sanabel al-Khair," Joint App'x 4210, and "was instrumental in funneling funds from the various organizations with which he was affiliated to Osama bin Laden and al Qaida to support their *jihad* against the United States," *id.* at 4210-11.

- Abdullah Muhsen Al Turki served as "Minister of Islamic Affairs, Member of the Council of Ministers and Head of the MWL," *id.* at 3984, and through those positions, "knowingly used his authority to assist the Saudi charities in sponsoring Islamic extremists, including al Qaida," *id.*

- Adnan Basha provided financial support to al Qaeda through his position as Secretary-General of the IIRO, *see id.* at 871, and the IIRO allegedly funded al Qaeda training camps in Afghanistan, "including camps from which al Qaida planned, approved and coordinated the September 11th Attack, and at which some or all of the September 11 hijackers received indoctrination and training," *id.* at 3794.

- Mohamad Jamal Khalifa "opened an office in Pakistan for the [MWL] . . . . [which] is alleged to be an al Qaeda front charity which also served as an umbrella organization for other suspect charities . . . . Khalifa allegedly headed the IIRO branch in the Philippines . . . using it as a base to plan, launch and finance al Qaeda and international terrorism." *In re Terrorist Attacks V*, 740 F. Supp. 2d at 508-09.

- Abdul Rahman al Swailem used his position as head of the Saudi Red Crescent Society to "foster the organization's continued role in al Qaida's global *jihad*." Joint App'x 4190.

- Sulaiman Al-Ali served as a member of IIRO's Executive Committee and the founder of its United States branch, *id.* at 1742, and "in addition to [his] own significant dubious charitable donations, Al-Ali made several financial investments on behalf of IIRO and Sana-Bell Inc. to provide support to al Qaeda and its charity sponsors," *In re Terrorists Attacks V*, 740 F. Supp. 2d at 510; *see also* Joint App'x 1742-50.

### ii. Sudanese Defendants

The four "Sudanese defendants" are Faisal Islamic Bank, Al Shamal Islamic Bank, Tadamon

Islamic Bank, and DMI Administrative Services S.A.  Although some unique allegations are made

against each specific Sudanese defendant, the central allegation against them is that they "knowingly

and intentionally provided financial services" and other forms of material support to al

Qaeda, *see* Joint App'x at 5982, and its "global jihad," *id.* at 4355; *see also id.* at 1789, 2428, 2569,

3255-56, 3426, 4331, 4335, 5012, 6009-10, 6205, 6208, 6212, 6219, 6235.

### iii. Al Rajhi Defendants

The four "Al Rajhi defendants" are: Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz

Al Rajhi, Abdullah Salaiman Al Rajhi, and Saleh Al-Hussayen.  Plaintiffs assert that we have personal

jurisdiction over the Al Rajhi defendants because they controlled Al Rajhi Bank, which:

> (1) provid[ed] financial services for several known al-Qaeda front charities,
> including SDGT ["Specially Designated Global Terrorist"] al Haramain; (2)
> provid[ed] financial services to the Spanish and Hamburg al-Qaeda cells; (3)
> allow[ed] the "SAAR network" of terrorist support entities to use its
> correspondent account with a US bank to launder money for terrorist
> activities; (4) provid[ed] banking and financial services for Youssef Nada
> (another SDGT); and (5) act[ed] as a correspondent bank for Bank al Taqwa,
> an SDGT.

Plaintiffs' PJ Br. 121 (citing Joint App'x 827-28, 1066-77, 1082-85, 1849-50, 2533-36, 3245-47, 3715-

18).  In addition to his involvement at Al Rajhi Bank, plaintiffs allege that Saleh Al-Hussayen

traveled to the United States shortly before the September 11, 2001 attacks and stayed in the same

hotel as "at least three of the American Airlines Flight 77 hijackers."[4]  Joint App'x 4096-97.  When

he was questioned by the FBI after the attacks, plaintiffs allege, he feigned a seizure and was allowed

to leave the United States shortly thereafter.  *Id.* at 4097.

---

[4]  In particular, plaintiffs allege that Al-Hussayen "switched from his original hotel to the Marriott Residence Inn"—the
same hotel, in which the hijackers stayed.  Joint App'x 4096.

### iv. National Commercial Bank ("NCB") Defendants

The four "NCB defendants" are NCB itself, Khaled Bin Mahfouz, Abdulrahman Bin Mahfouz, and Yassin Abdullah Al Kadi.

Plaintiffs allege that NCB itself is subject to both general and specific personal jurisdiction.[5] Plaintiffs argue that NCB is subject to specific personal jurisdiction because it maintained accounts for several of the purported charity organizations that allegedly supported al Qaeda, *see* Joint App'x 7882-85, and was a "conduit" for financing al Qaeda, *id.* at 7883.  In particular, NCB is alleged to have provided financial services and helped fund the IIRO and the SJRC.  *See id.* at 4498-99. Plaintiffs argue, moreover, that NCB is subject to general personal jurisdiction because: (1) it operated an office in New York that closed in 1992, *see id.* at 6598; (2) it operated a subsidiary, SNCB, in the United States that closed before the September 11, 2001 attacks, *see id.* at 7759; (3) it maintained correspondent banking relationships with financial institutions in the United States and made corporate loans in the United States, *see id.* at 7841-46; (4) it maintained an interactive website, which allowed account holders—mostly individuals from Saudi Arabia—to manage their accounts, *see id.* at 6599, 7846; *see also In re Terrorist Attacks IV*, 718 F. Supp. 2d at 477; and (5) it had an aviation division that operated in the United States, *see* Plaintiffs' PJ Br. 161.

Khaled Bin Mahfouz and Abdulrahman Bin Mahfouz allegedly are subject to the exercise of specific personal jurisdiction due to their involvement with NCB and with the Muwafaq Foundation, of which Khaled Bin Mahfouz was a co-founder.[6]  Khaled Bin Mahfouz allegedly "is among al Qaida's most significant individual financiers," and "has directly participated in the channeling of financial and logistical support to al Qaida through entities under his control, including [the] National Commercial Bank and [the] Muwafaq Foundation."  Joint App'x 4496.  Abdulrahman Bin

---

[5]  For a discussion of the differences between specific and general personal jurisdiction, *see* Discussion Section B, *post*.

[6]  Khaled bin Mahfouz became the President and CEO of NCB and served in that role until 1999, when the Kingdom of Saudi Arabia bought out his controlling interest.  Joint App'x 3829.

Mahfouz allegedly served as an officer and director of NCB, *see id.* at 3718, and he also served as a director of the Muwafaq Foundation, *see id.* at 4478.

Yassin Abdullah Al Kadi allegedly co-founded the Muwafaq Foundation with Khaled Bin Mahfouz for the purpose of "serv[ing] as a vehicle for funding and otherwise supporting terrorist organizations, including al Qaida." *Id.* at 4478, 4501. In particular, plaintiffs allege that Al Kadi "ran [the Muwafaq Foundation] from 1992 until approximately 1997 with $15 to $20 million of his own money." *Id.* at 2036, 3694. Moreover, Al Kadi allegedly was "one of al Qaida's chief global financiers," *id.* at 6175, and "knowingly provided material assistance to Islamic terrorist groups such as al Qaida," *id.* at 6176. On October 12, 2001, Al Kadi was designated as a Specially Designated Global Terrorist, or SDGT. *Id.* at 4501.

### v. Bin Laden Defendants

The five "Bin Laden defendants"—Bakr, Omar, Tarek, Yeslam, and Abdullah Bin Laden—are relatives of Osama Bin Laden.

"Defendants Bakr, Omar, Tariq and Yeslam Binladin, Osama bin Laden's half-brothers, are . . . argued to be subject to personal jurisdiction under specific jurisdictional theories, based on their alleged direct sponsorship and material support of al Qaeda" through their involvement with SBG, the family construction company. *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 483. "With the exception of Abdullah Binladin, each of the Binladin Defendants held a position of significant authority within the family enterprise, affording them control over means to steer support toward Osama and al-Qaeda." Plaintiffs' PJ Reply Br. 218 (citing Joint App'x 889, 1267, 1293, 2030, 2511, 2646, 3845, 4394, 4401-02, 4024-25).[7] Plaintiffs also allege that Yeslam Bin Laden is subject to general personal jurisdiction based on his investments in real estate in the United States, his

---

[7] Furthermore, Yeslam Bin Laden is alleged to have been a cosignatory with Osama Bin Laden on a Swiss bank account at UBS that Yeslam maintained from 1990 until 1997. Joint App'x 2511, 2646, 2849-50.

incorporation of at least six companies in the United States, and the fact that he "was an FAA-licensed pilot, with an FAA-registered private plane owned by a Delaware Corporation, Roxbury Technologies (US) Inc."  Plaintiffs' PJ Br. 156-58.

Finally, plaintiffs allege that Abdullah Bin Laden, Osama Bin Laden's nephew, is subject to both specific and general personal jurisdiction.  Plaintiffs argue that Abdullah is subject to specific personal jurisdiction because he established the U.S. office of the World Assembly of Muslim Youth ("WAMY") and served as its president from 1992-1998, and that he was a founder of the Taibah International Aid Association ("Taibah") in Virginia.  *See* Joint App'x 884, 888, 1241, 2861, 3670-71, 3800, 3818, 4399-4440, 5637.  Plaintiffs argue that Abdullah is subject to general personal jurisdiction based on the asserted fact that he lived in the United States at the time of the September 11, 2001 attacks.  *See In re Terrorist Attacks IV*, 718 F. Supp. 2d at 471 n.8.

### vi. Saudi Bin Laden Group ("SBG")

Plaintiffs allege that SBG is subject to both general and specific personal jurisdiction.  With regard to the exercise of specific personal jurisdiction, plaintiffs allege that SBG provided material support to Osama Bin Laden before he was removed as a shareholder in 1993.  Plaintiffs also allege that SBG maintained a "financial lifeline" to Osama Bin Laden after he was removed as a shareholder from the family construction business.  *In re Terrorist Attacks on September 11, 2001*, 840 F. Supp. 2d 776, 782 (S.D.N.Y. 2012) ("*In re Terrorist Attacks VI*").

With regard to the exercise of general personal jurisdiction, plaintiffs assert that "(1) business activities by SBG's now defunct United States subsidiary, (2) business activities of Dr. Rihani, an SBG employee who has lived and worked from his North Carolina residence for up to half of each year since SBG's inception, and (3) over a dozen instances of SBG representatives traveling to the United States for SBG-related activities, represent systematic and continuous contacts to meet the minimum contacts threshold" for the purpose of general personal jurisdiction.  *Id.* at 780-81.

### vii. Liechtenstein Defendants

The "Liechtenstein defendants" are three financial entities—Schreiber & Zindel Treuhand Anstalt, Sercor Treuhand Anstalt, and Asat Trust Reg.—as well as the five individuals that managed them, Frank Zindel, Engelbert Schreiber, Sr., Engelbert Schreiber, Jr., Martin Wachter, and Erwin Wachter.[8]

As the District Court noted, "[p]laintiffs allege that [Schreiber & Zindel Treuhand Anstalt, Sercor Treuhand Anstalt, and Asat Trust Reg.] served as money laundering organizations, who along with their principals . . . conspired with Osama bin Laden, al Qaeda, Hezbollah, Iran, Iraq and the Taliban to raise, launder, transfer, distribute and hide funds for bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks." *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 486. "Defendants Frank Zindel, Engelbert Schreiber, Sr., Engelbert Schreiber, Jr., Martin Wachter, and Erwin Wachter are the principals of the [Schreiber & Zindel Treuhand Anstalt, Sercor Treuhand Anstalt, and Asat Trust Reg.], [and] are purportedly responsible for overseeing the activities of their respective financial entities." *Id.*

### viii. Yousef Jameel

Yousef Jameel allegedly is subject to the exercise of specific personal jurisdiction due to his knowing financial support of various front charities that aided al Qaeda and other terrorist organizations. In particular, plaintiffs allege that "Jameel knowingly and actively participated in continuous efforts to advance al Qaida's terrorist ambitions, and used his financial position as an effective mechanism for raising funds for, and providing other forms of support to, al Qaida." Joint App'x 4545.

---

[8] An "anstalt" is a legally independent entity created under Liechtenstein law, which resembles a business trust. *See, e.g., Cohn v. Rosenfeld*, 733 F.2d 625, 628-29 (9th Cir. 1984).

### ix. Dallah Avco

Dallah Avco is a wholly-owned subsidiary of Dallah Al Baraka Group LLC that specializes in aviation services. *Id.* at 6158. It allegedly "provided a 'ghost' job to Omar al Bayoumi, a Saudi citizen residing in San Diego who provided direct funding and support to two of the September 11th hijackers." Plaintiffs' PJ Reply Br. 248-49 (citing Joint App'x 6158-61). Moreover, plaintiffs assert that Dallah Avco was aware of al Bayoumi's activities in the United States, as illustrated by the fact that "senior officials of [Dallah Avco] quickly tramped down internal inquiries from Bayoumi's immediate supervisor concerning the nature and propriety of his employment with the company." Plaintiffs' PJ Br. 152 (citing Joint App'x 6161).

### B. Procedural History

The prolonged and complicated history of this multi-district litigation is especially relevant to the personal jurisdiction issues that are the subject of this opinion. Soon after the attacks of September 11, 2001, several actions seeking money damages stemming from those attacks were filed in district courts around the country. In December 2003, the Judicial Panel on Multidistrict Litigation ordered that the actions be consolidated and transferred to the United States District Court for the Southern District of New York, and assigned to Judge Richard C. Casey. *See In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003).

On January 10, 2006, before Judge Casey's death, he entered a final judgment, pursuant to Rule 54(b),[9] and dismissed the claims for lack of subject matter and/or personal jurisdiction against several named defendants. *See In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539

---

[9] Rule 54(b), in relevant part, provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

16

(S.D.N.Y. 2005) ("*In re Terrorist Attacks II*"); *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*"). Plaintiffs appealed those judgments with respect to seven defendants and, in 2008, we affirmed the dismissal of the claims against those seven defendants, including several Saudi princes. *See In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ("*In re Terrorist Attacks III*"). Among other things, our *In re Terrorist Attacks III* decision addressed whether the jurisdictional allegations against the Saudi princes—namely, that they knowingly provided financial and material support to purported charitable organizations that aided al Qaeda and other terrorist organizations—were sufficient for us to exercise specific personal jurisdiction over them. As detailed below, *see* Discussion Section C, *post*, we determined that these allegations were not enough for us to exercise personal jurisdiction over the Saudi princes.

Pursuant to our decision in *In re Terrorist Attacks III*, the District Court, on June 17, 2010, and September 13, 2010, issued two opinions dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(2),[10] approximately sixty defendants for lack of personal jurisdiction. *See In re Terrorist Attacks IV*, 718 F. Supp. 2d at 495; *see also In re Terrorist Attacks V*, 740 F. Supp. 2d at 524 n.12. On October 7, 2010, the parties jointly requested that the District Court enter Rule 54(b) final judgments, *see* note 9, *ante*, in favor of all defendants dismissed by the *In re Terrorist Attacks IV* and *In re Terrorist Attacks V* decisions, as well as other defendants dismissed by the District Court's decisions in *In re Terrorist Attacks I* and *In re Terrorist Attacks II*, to the extent they did not fall within the scope of the January 10, 2006 Rule 54(b) judgment. On June 13, 2011, the District Court granted the parties' joint request for entry of Rule 54(b) judgments, and the Clerk of the District Court on July 14, 2011 entered final judgment in favor of seventy-five defendants pursuant to Rule 54(b).

---

[10] Rule 12(b)(2) provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . **(2)** lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

Finally, on January 11, 2012, the District Court dismissed plaintiffs' claims against SBG for lack of personal jurisdiction. *In re Terrorist Attacks VI*, 840 F. Supp. 2d at 779. The District Court held, after some jurisdictional discovery, that plaintiffs' allegations were legally insufficient to support personal jurisdiction because, *inter alia*, they had "no evidentiary support, which is required at this stage." *Id.* at 782.

These appeals relating to defendants dismissed for lack of personal jurisdiction in *In re Terrorist Attacks I, II, IV, V, and VI* followed.

## DISCUSSION

### A. Standard of Review

"We review a district court's dismissal of an action for want of personal jurisdiction *de novo*, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.* at 34-35 (internal quotation marks omitted). This prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and brackets omitted). "In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks omitted), nor must we "accept as true a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's

affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the

plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary

presentation by the moving party." (internal quotation marks omitted)).

### B. "Specific" and "General" Personal Jurisdiction

To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege

(1) that a defendant has "certain minimum contacts" with the relevant forum, and (2) that the

exercise of jurisdiction is reasonable in the circumstances.  *See, e.g.*, *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945) (noting that for the purpose of establishing personal jurisdiction, due process

requires "certain minimum contacts with [the United States] such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice" (internal quotation marks

omitted)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he

foreseeability that is critical to due process analysis is not the mere likelihood that a product will find

its way into the forum . . . .  Rather, it is that the defendant's conduct and connection with the forum

. . . are such that he should reasonably anticipate being haled into court there.").

To determine whether a defendant has the necessary "minimum contacts," a distinction is

made between "specific" and "general" personal jurisdiction.  *See Metro. Life Ins. Co. v. Robertson-Ceco*

*Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996).  "Specific [personal] jurisdiction exists when 'a [forum]

exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's

contacts with the forum'; a court's general jurisdiction, on the other hand, is based on the

defendant's general business contacts with the forum . . . and permits a court to exercise its power in

a case where the subject matter of the suit is unrelated to those contacts."  *Id.* (quoting *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984)).  The existence of either

specific personal jurisdiction or general personal jurisdiction satisfies the "minimum" contacts

requirement of the Due Process Clause.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414-16.

For the purpose of establishing specific personal jurisdiction, the necessary "'fair warning'
requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the
forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465
U.S. 770, 774 (1984), and *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414).  Put another way,
specific personal jurisdiction properly exists where the defendant took "intentional, and allegedly
tortious, actions . . . expressly aimed" at the forum.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  As we
noted in *In re Terrorist Attacks III* and recall below, the fact that harm in the forum is foreseeable,
however, is insufficient for the purpose of establishing specific personal jurisdiction over a
defendant.  *See In re Terrorist Attacks III*, 538 F.3d at 95; *see also Burger King*, 471 U.S. at 474.

Unlike specific personal jurisdiction, general jurisdiction is not related to the events giving
rise to the suit, and thus, courts impose a more stringent minimum contacts test, requiring the
plaintiff to demonstrate the defendant's "continuous and systematic general business contacts" with
the forum at the time the initial complaint was filed.  *See Helicopteros Nacionales de Colombia, S.A.*, 466
U.S. at 414-16 & n.9.  The Supreme Court recently noted that "[f]or an individual, the paradigm
forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an
equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011).

## C. *In re Terrorist Attacks III* (2008)

In *In re Terrorist Attacks III*, we recognized two fundamental requirements necessary to
establish specific personal jurisdiction with regard to other defendants involved in this multi-district
litigation.  First, we held that plaintiffs must plead facts to show that a defendant "'expressly aimed'
intentional tortious acts at residents of the United States."  538 F.3d at 95 (quoting *Calder*, 465 U.S.

20

at 789).  Second, we held that plaintiffs must plead facts to show that their injuries "arise out of or

relate to those activities."  *Id.* at 93 (internal quotation marks omitted).

As noted above, some of the defendants in *In re Terrorist Attacks III* were Saudi princes who

allegedly "caused money to be given to [certain] Muslim charities . . . with the knowledge that the

charities would transfer the funds to al Qaeda."  *Id.* at 77.  We held, however, that such alleged

conduct was insufficient to establish personal jurisdiction, explaining:

> Even assuming that the Four Princes were aware of Osama bin Laden's
> public announcements of jihad against the United States and al Qaeda's
> attacks on the African embassies and U.S.S. Cole, their contacts with the
> United States would remain far too attenuated to establish personal
> jurisdiction in American courts.  It may be the case that acts of violence
> committed against residents of the United States were a foreseeable
> consequence of the princes' alleged indirect funding of al Qaeda, but
> foreseeability is not the standard for recognizing personal jurisdiction.
> Rather, the plaintiffs must establish the Four Princes "expressly aimed"
> intentional tortious acts at residents of the United States. *Calder*, 465 U.S. at
> 789.  *Providing indirect funding to an organization that was openly hostile to the United
> States does not constitute this type of intentional conduct.*  In the absence of such a
> showing, American courts lacked personal jurisdiction over the Four Princes.

*Id.* at 95 (emphasis supplied).

Furthermore, *In re Terrorist Attacks III* addressed whether "an executive of various private

banks" could be subject to personal jurisdiction where plaintiffs alleged that the banks controlled by

this executive had "actively sponsored and supported the al Qa[e]da movement through several . . .

subsidiaries."  *Id.*  We rejected the argument that such allegations were sufficient to subject the

executive to personal jurisdiction:

> [E]ven assuming [the] accuracy [of these allegations], it does not reflect that
> [Prince] Mohamed engaged in "intentional" conduct "expressly aimed at the
> United States." *Calder*, 465 U.S. at 789.  It may be that, but for access to
> financial institutions, al Qaeda could not have funded its terrorist attacks.
> But that does not mean that the managers of those financial institutions
> "purposefully directed" their "activities at residents of [this] forum." *Burger
> King*, 471 U.S. at 472. . . . [W]e decline to read [*Mwani v. bin Laden*, 417 F. 3d 1
> (D.C. Cir. 2005), *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006), *Pugh v.
> Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003),
> *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) and *Rein v. Socialist*

21

> *People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998)] to say that
> the provision of financial services to an entity that carries out a terrorist
> attack on United States citizens could make Prince Mohamed, in the
> circumstances presented here, subject to the jurisdiction of American courts.

*Id.* at 95-96.

### D. "Specific Personal Jurisdiction"

With the relevant precedents in mind, most notably, *In re Terrorist Attacks III*, we turn to the

issue of whether plaintiffs' allegations are sufficient to establish specific personal jurisdiction over

the various Personal Jurisdiction defendants.

### i.

After reviewing plaintiffs' allegations, we conclude that the holding of *In re Terrorist Attacks*

*III* requires us to affirm the District Court's dismissal of many of the Personal Jurisdiction

defendants. In particular, we find the allegations against the Sudanese defendants; Sulaiman Bin

Abdul Aziz Al Rajhi; Saleh Abdul Aziz Al Rajhi; Abdullah Salaiman Al Rajhi;[11] NCB itself; the

Liechtenstein defendants; and Yousef Jameel are indistinguishable from plaintiffs' allegations in *In re*

*Terrorist Attacks III*, which we held to be insufficient for personal jurisdiction purposes.

The central allegations against the Sudanese defendants; Sulaiman Bin Abdul Aziz Al Rajhi;

Saleh Abdul Aziz Al Rajhi; Abdullah Salaiman Al Rajhi; and NCB itself are that they (1) knowingly

maintained bank accounts for individuals associated with al Qaeda as well as for purported front

charities that aided al Qaeda, and (2) that those accounts were used for al Qaeda operations.

Similarly, plaintiffs' central allegation against the Liechtenstein defendants is that they provided

financial services to clients that purportedly were associated with al Qaeda, and thereby aided al

Qaeda.

---

[11] Plaintiffs' allegations against the fourth Al Rajhi defendant—Saleh Al-Hussayen—are addressed separately because
plaintiffs make additional allegations against him. *See* Discussion Section D.iii., *post*.

These allegations are not enough for personal jurisdiction purposes.  Just as we concluded in *In re Terrorist Attacks III* that the "managers of . . . financial institutions" who allegedly "knowingly and intentionally provided material support to terrorists" by "actively sponsor[ing] and support[ing] the al Qa[e]da movement through several . . . subsidiaries" did not "expressly aim" their conduct at the United States, 538 F.3d at 95-96, the allegations against these various banking and financial institutions—as well as the individuals who managed them—similarly fall short.  Indeed, as in *In re Terrorist Attacks III*, "we decline . . . to say that the provision of financial services to an entity that carries out a terrorist attack on United States citizens could make [a defendant], in the circumstances presented here, subject to the jurisdiction of American courts."  *Id.* at 96.

Moreover, plaintiffs' allegations that Jameel donated money to various purported al Qaeda fronts, even if true, are not a sufficient basis for us to exercise specific personal jurisdiction over him.  *See id.* at 95 ("[Plaintiffs' specific personal jurisdiction] burden is not satisfied by the allegation that the Four Princes intended to fund al Qaeda through their donations to Muslim charities.").

### ii.

The claims against some other Personal Jurisdiction defendants are not directly foreclosed by our decision in *In re Terrorist Attacks III*, but are deficient for other reasons.  Turning to these defendants, we conclude that plaintiffs' allegations with regard to SBG; the Bin Laden defendants; Khaled Bin Mahfouz; and Abdulrahman Bin Mahfouz are conclusory and insufficient for specific personal jurisdiction purposes.

First, we agree with the District Court's dismissal of SBG.  After conducting some jurisdictional discovery, the District Court determined that the only alleged "support" given by SBG to Osama Bin Laden occurred before 1993 and involved (1) distributions to Osama Bin Laden as a shareholder of SBG, and (2) support to Osama Bin Laden through government infrastructure contracts that SBG had in the Sudan.  *In re Terrorist Attacks VI*, 840 F. Supp. 2d at 782; Supp. Joint

App'x 685-90 (discussing Osama Bin Laden's role in Sudan prior to 1993).  In these circumstances, we agree with the District Court that nothing in the record supports the notion that these actions were "expressly aimed" at the United States or are connected in any meaningful way, for the purpose of establishing personal jurisdiction, to the September 11, 2001 attacks.  Likewise, the District Court determined that the alleged support supposedly given to Osama Bin Laden after 1993—and after he was removed as a shareholder of SBG—"ha[d] no evidentiary support."  *Id.*  We find no basis to question this finding made by the District Court after some jurisdictional discovery, and on the facts presented, we are persuaded that the pre-1993 "support" provided by SBG to Osama Bin Laden does not provide a valid basis for us to exercise personal jurisdiction over the company.

In a related vein, we find the allegations against Bakr, Omar, Tarek, and Yeslam Bin Laden—namely, that they used their positions within SBG to funnel support to Osama Bin Laden—insufficient for personal jurisdiction purposes.  As there is no evidence that SBG provided support to Osama Bin Laden after 1993, the only alleged support given by Bakr, Omar, Tarek, and Yeslam Bin Laden through their positions at SBG necessarily occurred before 1993.  For the same reasons that we find those allegations insufficient to exercise personal jurisdiction over SBG, we find them insufficient with regard to these four Bin Laden Defendants.[12]

Finally, we find no basis in the record to support our exercise of personal jurisdiction over Abdullah Bin Laden, Khaled Bin Mahfouz, or Abdulrahman Bin Mahfouz.  Indeed, the only non-conclusory allegations against these three defendants are that they served in various positions of authority within organizations that are alleged to have supported terrorist organizations.  Abdullah

---

[12]  The allegations related to Yeslam Bin Laden's management of various bank accounts do not support jurisdiction either.  In fact, plaintiffs make no factual allegations to support the assertion in their brief that Yeslam "provid[ed] money from . . . Swiss bank accounts to Osama Bin Laden."  Plaintiffs' PJ Br. 141.  Based on the record before us, we agree with the District Court that these allegations against Yeslam Bin Laden are insufficient for specific personal jurisdiction purposes "given the absence of any allegations that [Yeslam] ever . . . exercise[d] [his] authority [over these accounts] in order to aid Osama bin Laden."  *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 483.

Bin Laden served as President of the United States branch of WAMY and as a founding officer of Taibah, *see* Joint App'x 3671, 3677; Khaled Bin Mahfouz co-founded the Muwafaq Foundation and was an officer of NCB, *see id.* at 4504; and Abdulrahman Bin Mahfouz served as director of the Muwafaq Foundation and NCB, *see id.* at 3718, 3868.

Although plaintiffs assert that: (1) the United States branch of WAMY was "part of the SAAR Network of businesses and charities created to provide funding, money laundering and other material support to terrorist organizations, including al Qaida," *see id.* at 3800; (2) Taibah "further[ed] the aims [of] and materially support[ed]" Osama Bin Laden and al Qaeda, *see id.* at 3678; (3) the Muwafaq Foundation served as a "vehicle for funding and otherwise supporting terrorist organizations, including al Qaida," *see id.* at 4501; and (4) NCB provided financial services and other support to purported charities associated with al Qaeda, *see id.* at 7882-85—*no allegations in the voluminous record suggest that Abdullah Bin Laden, Khaled Bin Mahfouz, or Abdulrahman Bin Mahfouz played any role in directing any support to benefit al Qaeda*.[13] Some of plaintiffs' allegations, in fact, suggest quite the opposite. For example, while plaintiffs ambiguously assert that Khaled Bin Mahfouz "directly *participate[d]* in the management, funding and operation of . . . [the Muwafaq Foundation]," *id.* at 1253 (emphasis supplied), the weight of the factual allegations suggest that Yassin Abdullah Al Kadi (and not Khaled Bin Mahfouz) "ran [Muwafaq] from 1992 through 1997," *id.* at 1287-88; *see id.* at 7885-89; *see also In re Terrorist Attacks V*, 740 F. Supp. 2d at 507-08.

Accordingly, we lack personal jurisdiction over these defendants.

---

[13] Plaintiffs' allegations that Khaled Bin Mahfouz "made substantial contributions to many of the charities operating within al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's operations and terrorist attacks," *see* Joint App'x 3867, are insufficient to establish personal jurisdiction over him for the reasons stated in *In re Terrorist Attacks III*, 538 F.3d at 94-95 (noting that "the plaintiffs rely on a causal chain to argue a concerted action theory of liability: the Princes supported Muslim charities knowing that their money would be diverted to al Qaeda, which then used the money to finance the September 11 attacks," and concluding that "[p]roviding indirect funding to an organization that was openly hostile to the United States does not constitute th[e] type of intentional conduct" necessary for personal jurisdiction purposes).

**iii.**

Our review of the record leads us to a different conclusion, however, with regard to the Charity Official defendants; Yassin Abdullah Al Kadi; Saleh Al-Hussayen; and Dallah Avco. In short, whether we have jurisdiction over these twelve defendants is a question that is not controlled by our holdings in *In re Terrorist Attacks III*, because these defendants' alleged support of al Qaeda is more direct. In these circumstances, we conclude that plaintiffs' allegations against these twelve Personal Jurisdiction defendants warrant jurisdictional discovery.

Unlike the defendants in *In re Terrorist Attacks III*, the Charity Official defendants allegedly "used their offices in purported al Qaeda front organizations to aim their conduct at the United States, by providing material support to al Qaeda, when it was publicly known that al Qaeda was engaged in a global terrorist agenda directed at the United States." *In re Terrorist Attacks V*, 740 F. Supp. 2d at 510. Similarly, Yassin Abdullah Al Kadi allegedly "ran [Muwafaq] from 1992 through 1997," Joint App'x 1287-88, and during that time, (1) Muwafaq "transferred millions of dollars from wealthy Saudi businessmen to al-Qaeda," (2) Al Kadi "spent roughly 15-20 million dollars of his own money on the day to day operations of Muwafaq," and (3) Al Kadi selected managers for Muwafaq's regional branches, *id.* at 3451-55. In other words, instead of knowingly sending money to purported charitable organizations that allegedly supported al Qaeda—like the defendants in *In re Terrorist Attacks III*—the Charity Official defendants and Al Kadi allegedly controlled and managed some of those "charitable organizations" and, through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States. This alleged support of al Qaeda therefore is more direct and one step closer to al Qaeda when compared to the alleged support given by the *In re Terrorist Attacks III* defendants, which we found inadequate.

Construing all reasonable inferences in favor of the plaintiffs, these allegations suggest that the Charity Official defendants and Al Kadi *directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States. Nevertheless, factual issues persist with respect to whether this support was "expressly aimed" at the United States. For example, it is not clear from plaintiffs' allegations (1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was "earmarked" for use in a specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda. In these circumstances, we believe that jurisdictional discovery regarding the Charity Official defendants and Al Kadi is appropriate.

The allegations against Saleh Al-Hussayen and Dallah Avco also warrant jurisdictional discovery. Although Al-Hussayen's involvement with Al Rajhi Bank would not be sufficient, standing alone, for specific personal jurisdiction purposes, *see* Discussion Section D.i., *ante*, plaintiffs' allegations regarding his travels to the United States shortly before the September 11, 2001 attacks, as well as his decision to switch hotels *to stay in the same hotel as at least three of the hijackers*, cast his activities at Al Rajhi Bank and his alleged indirect funding of al Qaeda[14] in a different light. These additional allegations not only suggest the possibility that he may have provided direct aid to members of al Qaeda, but they also raise a plausible inference that he may have intended his alleged indirect support of al Qaeda to cause injury in the United States.

With regard to Dallah Avco, we agree with the District Court that the allegations against the company fail to show that the acts of Omar al Bayoumi "were authorized and performed in furtherance of the employer's business." *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 485 (citing *Int'l*

---

[14] Specifically, plaintiffs allege that Saleh Al-Hussayen channeled contributions to purported charities that supported al Qaeda through his position as "a member of the Sharia Board at Al Rajhi Bank." Plaintiffs' PJ Br. 125 (citing Joint App'x 3339, 4097, 4336-38).

*Shoe*, 326 U.S. at 318). But plaintiffs' jurisdictional theory against Dallah Avco is not limited solely to the acts of al Bayoumi. Rather, plaintiffs allege that Dallah Avco provided "cover employment" for al Bayoumi while he was in the United States and allegedly supporting two September 11, 2001 hijackers. *See* Joint App'x 6158-61. Accordingly, plaintiffs' allegations suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States, although questions about Dallah Avco's knowledge regarding al Bayoumi's activities remain.

When compared to the allegations against many of the Personal Jurisdiction defendants, plaintiffs' allegations against Saleh Al-Hussayen and Dallah Avco suggest a closer nexus between their alleged support of al Qaeda and the September 11, 2001 attacks. But the limited factual allegations regarding Al-Hussayen's activities in the United States shortly before the September 11, 2001 attacks, as well as regarding Dallah Avco's knowledge of al Bayoumi's activities in San Diego, counsel in favor of remand.

For these reasons, we vacate the District Court's dismissal of the Charity Official defendants; Yassin Abdullah Al Kadi; Saleh Al-Hussayen; and Dallah Avco, and we remand the cause, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for jurisdictional discovery with regard to these twelve Personal Jurisdiction defendants.[15]

### E. "General Personal Jurisdiction"

Although we conclude that we lack specific personal jurisdiction over NCB, Abdullah Bin Laden, Yeslam Bin Laden, and SBG, plaintiffs argue alternatively that we have general personal jurisdiction over these four defendants. We disagree.

---

[15] Whether the actions of Charity Official defendants; Al Kadi; Al-Hussayen; and Dallah Avco were "expressly aimed" at the United States so that exercising jurisdiction over them would be appropriate is a matter for the District Court to decide after jurisdictional discovery is completed and motions are filed with the benefit of a more complete record.

### i.

Plaintiffs assert that NCB is subject to general personal jurisdiction based on: (1) its operation of an office in New York that closed in 1992; (2) its operation of a U.S. subsidiary, SNCB, before the September 11, 2001 attacks; (3) its maintenance of correspondent banking relationships with U.S. banking institutions; (4) its maintenance of an interactive website; (5) its operation of an aviation division in the United States; and (6) its making of loans to United States companies. *See* Plaintiffs' PJ Br. 161-63.

As noted, some jurisdictional discovery was taken with regard to whether plaintiffs' allegations adequately provided a basis for the exercise of general personal jurisdiction over NCB. *See* Plaintiffs' PJ Br. 52 n.105. Based on that jurisdictional discovery, the District Court made several findings that undermine plaintiffs' general personal jurisdiction arguments with respect to NCB, including that: (1) "[n]either NCB's office or that of [SNCB] was in existence at the time plaintiffs commenced their actions"; (2) "[p]laintiffs' contention [that SNCB continued to operate after it was officially closed in early 2001] is, at best, mere speculation, unsupported by the relevant factual circumstances"; (3) "[t]he supporting exhibits submitted by plaintiffs do not demonstrate, nor even give rise to a reasonable inference, that NCB maintained an aviation division or . . . derived revenue from aviation-related activities in the United States"; and (4) "[t]he dubious and isolated incidences [of NCB making loans in the United States] . . . do not demonstrate the requisite continuity and degree of permanence necessary to support a finding that NCB is doing business in the United States for purposes of general jurisdiction." *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 476-78. We find no error—let alone clear error—in these factual findings. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

Furthermore, we conclude that the alleged use of correspondent bank accounts and the maintenance of a website that allows account holders to manage their accounts are insufficient to

support the exercise of general personal jurisdiction over NCB.[16]  *See, e.g.*, *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 731-32 (S.D.N.Y. 2010) (holding that the "mere maintenance of a correspondent account in New York" is insufficient to establish "minimum contacts with the United States"); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris*, No. 03 Civ. 1681 (LAP), 2004 WL 2199547, at *7 (S.D.N.Y. Sept. 29, 2004) (holding that an interactive website allowing clients to bank online was insufficient to confer general jurisdiction over a foreign bank).

In these circumstances, we agree with the District Court that the "the totality of NCB's [alleged] activities . . . is insufficient to confer general jurisdiction."  *In re Terrorist Attacks IV*, 718 F. Supp. 2d at 478.

## ii.

Plaintiffs argue that Abdullah Bin Laden is subject to general personal jurisdiction based on the assertion that he lived in the United States at the time of the September 11, 2001 attacks. Plaintiffs' PJ Br. 159 (citing Joint App'x 4400).  Plaintiffs' allegation, however, finds no support in the record; in fact, the only evidence on which plaintiffs rely shows that Abdullah Bin Laden left the United States permanently in September 2000.  *See* Dist. Ct. Dkt. 1505-2, ¶¶ 3-4.  Accordingly, we agree with the District Court that plaintiffs have failed to allege the requisite contacts to support the exercise of general personal jurisdiction over Abdullah Bin Laden.  *See In re Terrorist Attacks IV*, 718 F. Supp. 2d at 470; *see also Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414-16 & n.9.

## iii.

Plaintiffs also allege that Yeslam Bin Laden is subject to general personal jurisdiction based on his real estate investments in the United States, his incorporation of at least six companies in the

---

[16]  The recent decision by the New York Court of Appeals in *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012), is not to the contrary; it does not suggest that the maintenance of correspondent bank accounts is sufficient to establish general personal jurisdiction.  Instead, that case addressed only the question of whether such accounts could constitute a "transaction" of business in New York within the meaning of N.Y. CPLR § 302(a)(1).  *See id.* at 334-39; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 74 (2d Cir. 2012) (certifying that question to the New York Court of Appeals).

United States, and the fact that he "was an FAA-licensed pilot." Plaintiffs' PJ Br. 156-58. We hold that these allegations are insufficient for the exercise of general jurisdiction, substantially for the reasons outlined in the District Court's opinion. *See In re Terrorist Attacks IV*, 718 F. Supp. 2d at 470-71 (citing, *inter alia, Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 180-181 (S.D.N.Y. 1995) ("[I]t is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation.")).

### iv.

Finally, plaintiffs assert that SBG is subject to the exercise of general personal jurisdiction based on the business activities of a now-defunct alleged United States subsidiary, the alleged fact that an SBG employee lived in the United States, and the alleged fact that SBG employees traveled to the United States more than a dozen times over a period of more than three years. *See In re Terrorist Attacks VI*, 840 F. Supp. 2d at 780-81. We agree with the District Court that these alleged contacts with the United States are not enough for the exercise of general personal jurisdiction. *See id.*; *see also Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 639 (S.D.N.Y. 2008).

## CONCLUSION

We recognize the complexity of this case as well as its logistical challenges, and we appreciate the thoughtful manner in which the District Judge has discharged his duties. The rulings we issue today should provide the District Court with guidance on questions that likely will arise throughout the remainder of this litigation, and we expect that they will permit the District Judge to continue to discharge his duties in an efficient manner.

To summarize, we hold that:

(1) In light of our decision in *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 82 (2d Cir. 2008), we lack specific personal jurisdiction over the Sudanese defendants; Sulaiman

Bin Abdul Aziz Al Rajhi; Saleh Abdul Aziz Al Rajhi; Abdullah Salaiman Al Rajhi; NCB; the Liechtenstein defendants; and Yousef Jameel.

(2) As plaintiffs do not allege that SBG; the Bin Laden defendants; Khaled Bin Mahfouz; and Abdulrahman Bin Mahfouz "expressly aimed" their actions at the United States, we lack specific personal jurisdiction over them.

(3) Plaintiffs' allegations regarding the Charity Official defendants; Yassin Abdullah Al Kadi; Saleh Al-Hussayen; and Dallah Avco are sufficient to warrant jurisdictional discovery.

(4) Abdullah Bin Laden; Yeslam Bin Laden; NCB; and SBG lack the requisite contacts with the United States for us to exercise general personal jurisdiction over them.

For these reasons, we **AFFIRM** the District Court's July 14, 2011 judgment insofar as it dismissed plaintiffs' claims against the Sudanese defendants; Sulaiman Bin Abdul Aziz Al Rajhi; Saleh Abdul Aziz Al Rajhi; Abdullah Salaiman Al Rajhi; NCB; the Liechtenstein defendants; Yousef Jameel; SBG; the Bin Laden defendants; Khaled Bin Mahfouz; and Abdulrahman Bin Mahfouz for lack of personal jurisdiction; and we **VACATE** the judgment of the District Court insofar as it dismissed plaintiffs' claims against the Charity Official defendants; Yassin Abdullah Al Kadi; Saleh Al-Hussayen; and Dallah Avco for lack of personal jurisdiction and, as to these claims only, we **REMAND** the cause to the District Court, pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the prompt commencement of a course of judicially-supervised jurisdictional discovery.