11-3294-cv(L), et al.
*In re Terrorist Attacks on September 11, 2001 (Al Rajhi Bank, et al.)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued On: December 4, 2012                 Decided: April 16, 2013)

Docket Nos.

11-3294-cv(L), 11-3407-cv, 11-3490-cv, 11-3494-cv, 11-3495-cv, 11-3496-cv, 11-3500-cv, 11-3501-cv, 11-3502-cv, 11-3503-cv, 11-3505-cv, 11-3506-cv, 11-3507-cv, 11-3508-cv, 11-3509-cv, 11-3510-cv, 11-3511-cv, 12-949-cv, 12-1457-cv, 12-1458-cv, 12-1459-cv.

---

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 (AL RAJHI BANK, et al.)

JOHN PATRICK O'NEILL, JR., et al.,

*Plaintiffs-Appellants*,

v.

AL RAJHI BANK, SAUDI AMERICAN BANK, DAR AL-MAAL AL-ISLAMI TRUST, SALEH ABDULLAH KAMEL, DALLAH AL BARAKA GROUP LLC,

*Defendants-Appellees*.[*]

---

[*] The multiple appeals arising from the underlying multi-district litigation have been grouped under the case name "*In re Terrorist Attacks on September 11, 2001*." This opinion, however, only addresses the claims against five defendants—Al Rajhi Bank, Saudi American Bank, Saleh Abdullah Kamel, Dallah al Baraka Group LLC, and Dar Al-Maal Al-Islami ("DMI") Trust—dismissed by the District Court for failure to state a claim upon which relief can be granted. Accordingly, the caption above refers only to these five defendants. For the purpose of the disposition of the claims against these five defendants, the Clerk of Court is directed to amend the caption to conform to the listing of the parties shown above.

On February 9, 2012, the parties entered into a stipulation withdrawing the appeals with regard to twenty-seven defendants. Case No. 11-3294-cv(L), Dkt. No. 328. To the extent that the caption in this case includes any defendants listed in that stipulation, the Clerk of Court is directed amend the caption accordingly. The Clerk of Court is also directed to remove the redundant listing of "Dar-al-maal Al Islami" in the caption because the caption already includes "Dar Al-Maal Al-Islami Trust."

Before: CABRANES, RAGGI, *Circuit Judges*, and RAKOFF, *District Judge*.[**]

These appeals involve claims by families and estates of the victims of the September 11, 2001 terrorist attacks, individuals injured by the attacks, and various commercial entities that incurred damages and losses as a result of the attacks (jointly, "plaintiffs").  Before us are claims under the Anti-Terrorism Act ("ATA"), the Alien Tort Statute ("ATS"), the Torture Victim Protection Act ("TVPA"), as well as various common law tort claims against purported charities, financial institutions, and other individuals who allegedly provided support and resources to Osama Bin Laden and al Qaeda.  The United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granted judgment in favor of seventy-six defendants, dismissing them on various grounds, including: (1) lack of personal jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) immunity from suit pursuant to the Foreign Sovereign Immunities Act.  This opinion addresses only the five defendants who prevailed before the District Court on the ground that plaintiffs had failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (jointly, "Rule 12(b)(6) defendants").

Plaintiffs assert that the District Court erred by dismissing their ATA, ATS, TVPA, and common law tort claims.  Their arguments, however, are not persuasive.  First, in light of our recent decision in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), the ATA claims properly were dismissed because plaintiffs (1) cannot allege aiding-and-abetting claims under the ATA, and (2) do not make the necessary allegation under the ATA that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.  Second, plaintiffs' ATS claims are without merit because no universal norm against "terrorism" existed under customary international law (*i.e.*, the "law of nations") as of September 11, 2001, as is required by the ATS.  Third, the TVPA claims fail in light of the Supreme

---

[**] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

2

Court's decision in *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1710-11 (2012), which held that the TVPA only imposes liability on natural persons, and because plaintiffs do not make the necessary allegation that Saleh Abdullah Kamel—the sole natural person defendant—acted under color of law. Fourth, and finally, the District Court properly dismissed the common law tort claims because plaintiffs failed to make the necessary allegation that the Rule 12(b)(6) defendants owed them a duty or that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.

Affirmed.

> SEAN P. CARTER (Stephen A. Cozen, Elliott R. Feldman, Cozen O'Connor, Philadelphia, PA; Ronald L. Motley, Robert T. Haefele, Motley Rice, LLC, Mount Pleasant, SC; Carter G. Phillips, Richard Klingler, Sidley Austin, LLP, Washington, DC; Andrea Bierstein, Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY; Robert M. Kaplan, Ferber Chan Essner & Coller, LLP, New York, NY; James P. Kreindler, Justin T. Green, Andrew J. Maloney, III, Kreindler & Kreindler LLP, New York, NY; Jerry S. Goldman, Anderson Kill & Olick, P.C., New York, NY; Chris Leonardo, Adams Holcomb LLP, Washington, DC, *on the brief*), Cozen O'Connor, Philadelphia, PA, *for Plaintiffs-Appellants on Rule 12(b)(6) Issues*.
>
> CHRISTOPHER M. CURRAN (Nicole Erb, Matthew S. Leddicotte, *on the brief*), White & Case LLP, Washington, DC, *for Defendant-Appellee Al Rajhi Bank*.
>
> Henry Weisburg, Brian H. Polovoy, Shearman & Sterling LLP, New York, NY, *for Defendant-Appellee Saudi American Bank*.
>
> James J. McGuire, Timothy J. McCarthy, Aimee R. Kahn, Daniel A. Mandell, Mishcon de Reya New York LLP, New York, NY, *for Defendant-Appellee Dar Al-Maal Al-Islami Trust*.
>
> Martin F. McMahon, Martin F. McMahon & Associates, Washington, DC, *for Defendants-*

3

*Appellees Dallah Al Baraka Group LLC & Saleh Abdullah Kamel.*[1]

JOSÉ A. CABRANES, *Circuit Judge*:

These appeals involve claims by families and estates of the victims of the September 11, 2001 terrorist attacks, individuals injured by the attacks, and various commercial entities that incurred damages and losses as a result of the attacks (jointly, "plaintiffs"). Before us are claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, as well as various common law tort claims against purported charities, financial institutions, and other individuals who are alleged to have provided support and resources to Osama Bin Laden and al Qaeda. The United States District Court for the Southern District of New York (George B. Daniels, *Judge*), granted judgment in favor of seventy-six defendants, dismissing them on various grounds, including: (1) lack of personal jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) immunity from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA").

Due to the logistical challenges associated with these appeals, we address the various issues they raise in separate decisions. This opinion addresses only the five defendants who prevailed before the District Court on the ground that plaintiffs had failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). These defendants are: (1) Al Rajhi Bank, (2) Saudi American Bank, (3) Saleh Abdullah Kamel, (4) Dallah al Baraka Group LLC, and (5) Dar Al-Maal Al-Islami ("DMI") Trust (jointly, "Rule 12(b)(6) defendants"). In separate opinions filed today, we address the claims against the defendants dismissed by the District Court

---

[1] Due to the large number of attorneys involved in these appeals, we only list here the attorneys representing the defendants dismissed for failure to state a claim upon which relief can be granted, and the attorneys for the plaintiffs involved in the argument and briefing of the Rule 12(b)(6) issues.

4

for lack of personal jurisdiction, as well as the claims against the defendants dismissed by the District Court for want of jurisdiction pursuant to the FSIA.

In this appeal, we are asked to consider whether the District Court properly dismissed plaintiffs' ATA, ATS, TVPA, and common law tort claims.  We conclude that: (1) plaintiffs cannot allege aiding-and-abetting claims under the ATA and do not make the necessary allegation that the actions of the Rule 12(b)(6) defendants proximately caused their injuries, *see Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013); (2) no universal norm against "terrorism" existed under customary international law (*i.e.*, the "law of nations") as of September 11, 2001, as required for a claim under the ATS; (3) the TVPA only provides liability for natural persons pursuant to *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1708, 1710-11 (2012), and plaintiffs do not make the necessary allegation under the TVPA that the sole natural person defendant, Saleh Abdullah Kamel, acted under color of law; and (4) plaintiffs fail to make the necessary allegation for their common law tort claims that the Rule 12(b)(6) defendants owed them a duty or that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.  Accordingly, we affirm the judgment of the District Court insofar as it dismissed the claims against the Rule 12(b)(6) defendants.

## BACKGROUND

The background of the case is discussed in detail in the two opinions issued today addressing claims against the defendants dismissed pursuant to FSIA and for lack of personal jurisdiction.  We need not elaborate further here, and we assume the parties familiarity with the facts and procedural history of this sprawling multi-district litigation.

## DISCUSSION

We review *de novo* a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. N.Y.C.*

5

*Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. The ATA Claims

The ATA, which Congress enacted in 1992,[2] provides, in relevant part:

> [a]ny national of the United States injured in his or her person, property, or business *by reason of an act of international terrorism,* or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a) (emphasis supplied).

Plaintiffs allege that the Rule 12(b)(6) defendants are both primarily and secondarily liable pursuant to § 2333(a) for: (1) knowingly providing financial support to purported charities that supported al Qaeda, *see, e.g.*, Plaintiffs' 12(b)(6) Br. 78; and (2) "knowingly and intentionally provid[ing] financial [and bank account] services" for certain front charities that benefitted al Qaeda as well, Joint App'x 2485; *see also id.* at 843-44, 1062-77, 1783, 4331. The Rule 12(b)(6) defendants respond that: (1) the ATA does not provide for secondary liability as the statute is silent on that issue, *see* Al Rajhi Bank Br. 41 (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182, 184 (1994) (noting that "there is no general presumption that [a] plaintiff may . . . sue aiders and abettors" and that statutory silence regarding aiding and abetting liability "indicates a deliberate congressional choice with which the courts should not interfere")); and (2) plaintiffs do not allege the actions of the Rule 12(b)(6) defendants proximately caused their injuries,

---
[2] In fact, § 2333 initially was apparently enacted in error in 1990, repealed in 1991, and reenacted in 1992. *See* S. Rep. No. 102-342, at 22 (1992).

6

*see id.* at 29 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267 (1992) (interpreting the "by reason of" language in the civil RICO statute as incorporating common-law principles of proximate causation)). In light of our recent decision in *Rothstein*, 708 F.3d at 82, we find the Rule 12(b)(6) defendants' arguments persuasive.

First, *Rothstein* specifically held that a defendant cannot be liable under the ATA on an aiding-and-abetting theory of liability. *Id.* at 97 ("[W]e are not persuaded that the district court erred in concluding that plaintiffs had not stated a claim on which relief could be granted against UBS on an aiding-and-abetting theory, because it does not appear to us that Congress intended § 2333(a) to permit recovery on such a theory."); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) (holding that "statutory silence on the subject of secondary liability means there is none; and section 2333(a) . . . does not mention aiders and abettors or other secondary actors"); *cf. Cent. Bank of Denver, N.A.*, 511 U.S. at 185 (holding that "an implicit congressional intent to impose . . . aiding and abetting liability" could not plausibly be inferred from the "statutory silence" in § 10(b) of the Securities Exchange Act of 1934).

Second, we held in *Rothstein* that Congress did not "intend[ ] to permit recovery under § 2333 on a showing of less than proximate cause," *Rothstein*, 708 F.3d at 95, based on the Supreme Court's interpretation of the "well-understood meaning" of the phrase "by reason of" across multiple statutes, *id.*; *see also Holmes*, 503 U.S. at 266-67 (interpreting the "by reason of" language in the civil RICO statute and holding that proximate causation was required); *id.* at 268 ("[A] plaintiff's right to sue under § 4 [of the Clayton Act] required a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. St. Counsel of Carpenters*, 459 U.S. 519, 534 (1983))); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (citing *Holmes* in the RICO context).

7

As *Rothstein* holds that proximate cause is required to state a claim under § 2333, our next task is to determine whether plaintiffs allege that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.  After reviewing the record, we conclude that they do not.

In *Rothstein*, we determined that plaintiffs' allegations—which are strikingly similar to those alleged against these Rule 12(b)(6) defendants—were insufficient for the purposes of establishing proximate causation.  In particular, the *Rothstein* plaintiffs alleged that UBS, the defendant in that case, "provided Iran with hundreds of millions of dollars in cash" knowing that: (1) Iran "promot[ed] terrorism to injure and intimidate the Jewish residents of Israel"; (2) Iran "provided Hamas and Hizbollah with hundreds of millions of dollars to fund terrorist attacks"; and (3) Iran "conditioned that funding on agreement by those organizations to conduct terrorist attacks on Israel and its residents." *Rothstein*, 708 F.3d at 92.  In other words, UBS allegedly provided funding to a known state sponsor of terrorism that, in turn, provided funding to Hizbollah and Hamas.  The complaint in *Rothstein* also alleged that "the bombings and rocket attacks between July 1997 and July 2006, in which plaintiffs and/or their family members were injured, were conducted by Hizbollah or Hamas." *Id.* at 92-93.

Similarly, the Rule 12(b)(6) defendants are alleged to have provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations.  These allegations are insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short.  *See id.* at 94-96.  Simply put, plaintiffs do not allege that the Rule 12(b)(6) defendants participated in the September 11, 2001 attacks or that they provided money directly to al Qaeda; nor are there factual allegations that the money allegedly donated by the Rule 12(b)(6) defendants to the purported charities actually was transferred to Al Qaeda and aided in the September 11, 2001 attacks.  *See id.* at 96-97; *see also* Al Rajhi Bank Br. 31.

8

We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda—as alleged by plaintiffs—proximately caused the September 11, 2001 attacks or plaintiffs' injuries. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service."). The allegations, moreover, against the Rule 12(b)(6) defendants on this score are conclusory, *see, e.g.*, Joint App'x 3829 ("The September 11th Attack was a direct, intended and foreseeable product of [the Rule 12(b)(6) defendants'] participation in al Qaida's jihadist campaign."), and similar to the allegations rejected in *Rothstein*, 708 F.3d at 97 ("And while the Complaint alleges that UBS knew full well that *the cash dollars it was providing* to a state-sponsor of terrorism *such as* Iran *would be used to cause and facilitate terrorist attacks* by Iranian-sponsored terrorist organizations *such as* Hamas, Hizbollah and PIJ, these are conclusory allegations that do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs." (citation and internal quotation marks omitted)).

For these reasons, we conclude that plaintiffs have failed to state a claim under the ATA upon which relief can be granted against the Rule 12(b)(6) defendants. Although Congress clearly intended to create impediments to terrorism by "the imposition of liability at any point along the causal chain of terrorism," S. Rep. No. 102-342, at 22 (1992), the "by reason of" language of the statute restricts the imposition of such liability to situations where plaintiffs plausibly allege that defendants actions proximately caused their injuries, *Rothstein*, 708 F.3d at 95 ("[H]ad [Congress] intended to allow recovery upon a showing lower than proximate cause, we think it either would have so stated expressly or would at least have chosen language that had not commonly been

9

interpreted to require proximate cause for the prior 100 years."). As plaintiffs do not make such allegations in this case, we affirm the District Court's dismissal of the ATA claims.

### B. The ATS Claims

To assert a private cause of action under the ATS, a plaintiff must plead that: (1) the plaintiff is an alien; (2) the claimed damages stem from a tort only; and (3) the a defendant committed the tort in violation of the law of nations or a treaty of the United States. 28 U.S.C. § 1350; *see Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 242-43 (2d Cir. 2003). Plaintiffs fail to allege the third element necessary to plead a violation of the ATS because no universal norm against "terrorism" existed under customary international law (*i.e.*, the "law of nations") as of September 11, 2001. Indeed, in *United States v. Yousef*, 327 F.3d 56, 106-08 (2d Cir. 2003), we noted:

> We regrettably are no closer now . . . to an international consensus on the definition of terrorism or even its proscription; the mere existence of the phrase "state-sponsored terrorism" proves the absence of agreement on basic terms among a large number of States that terrorism violates public international law. Moreover, there continues to be strenuous disagreement among States about what actions do or do not constitute terrorism, nor have we shaken ourselves free of the cliché that "one man's terrorist is another man's freedom fighter." We thus conclude . . . that terrorism—unlike piracy, war crimes, and crimes against humanity—does not provide a basis for universal jurisdiction [under customary international law].

Other courts have reached the same conclusion. *See Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 795 (D.C. Cir. 1984) (Edwards, J., concurring) ("Indeed, the nations of the world are so divisively split on the legitimacy of such aggression [terrorism] as to make it impossible to pinpoint an area of harmony or consensus."); *In re Chiquita Brands Int'l., Inc. Alien Tort Statute & S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1317 (S.D. Fla. 2011) ("Plaintiffs thus attempt to group this broad, ill-defined class of conduct under the umbrella of 'terrorism,' or material support thereof, and create a cause of action against it under the ATS. . . . [T]his Court . . . reject[s] Plaintiffs' attempt to categorize these broad claims as violations of the law of nations."); *Mwani v. Bin Laden*, No. CIV A 99-125 CKK,

10

2006 WL 3422208, at *3 n.2 (D.D.C. Sept. 28, 2006) ("The law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations.").

Accordingly, the District Court correctly dismissed the ATS claims against the Rule 12(b)(6) defendants.

### C. The TVPA Claims

The TVPA, Pub. L. No. 102-256, § 2(a), 106 Stat. 73 (1992), 28 U.S.C. § 1350 note, which Congress passed in 1992, establishes a cause of action in federal court against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects an individual to torture or extrajudicial killing. *See Flores*, 414 F.3d at 247 n.21.

Although plaintiffs asserted in their opening brief that the District Court erroneously dismissed the TVPA claims against the Rule 12(b)(6) defendants, they have withdrawn those claims against the organizational Rule 12(b)(6) defendants in light of the Supreme Court's decision in *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1710-11 (2012) ("The text of the TVPA convinces us that Congress did not extend liability to organizations, sovereign or not. There are no doubt valid arguments for such an extension. But Congress has seen fit to proceed in more modest steps in the Act, and it is not the province of this Branch to do otherwise."). *See* Plaintiffs' 12(b)(6) Reply Br. 106.

Moreover, to the extent that plaintiffs continue to press their TVPA claims against Saleh Abdullah Kamel, we agree with the District Court that these claims must be dismissed because plaintiffs do not allege that he acted under color of law. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 828 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*").

For these reasons, we affirm the District Court's dismissal of plaintiffs' TVPA claims.

### D. The Common Law Claims

Finally, plaintiffs assert common law negligence and intentional tort claims with regard to the Rule 12(b)(6) defendants, including (1) negligence, (2) negligent infliction of emotional distress, (3) intentional infliction of emotional distress, (4) assault and battery, (5) trespass, and (6) wrongful death.

With regard to the common law negligence tort claims, the District Court dismissed them on the basis that plaintiffs did not adequately allege that the Rule 12(b)(6) defendants owed them a duty.[3] *Id.* at 830-31; *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (noting that, under New York law, "a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate cause of that breach" to establish a claim for negligence). We agree. Indeed, we have held that "[a]s a general matter [under New York law], '[b]anks [and other financial institutions] do not owe non-customers a duty to protect them from the intentional torts of their customers.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *In re Terrorist Attacks I*, 349 F. Supp. 2d at 830) (third alteration in *Lerner*).

With regard to the common law intentional tort claims, we conclude that they properly were dismissed by the District Court, substantially for the same reasons that the ATA claims properly were dismissed—namely, that plaintiffs fail to allege that the Rule 12(b)(6) defendants' actions proximately caused their injuries.[4]

---

[3] Although one of the underlying complaints baldly asserts that "defendants negligently, intentionally, recklessly, willfully and wantonly breached duties of care owed to plaintiffs and the employees of plaintiffs' insureds," Joint App'x 3916, plaintiffs offer no basis to support the conclusory assertion that a duty was owed in the circumstances presented.

[4] In addition, the common law intentional tort claims raised in the Federal Insurance Company complaint were properly dismissed because that complaint was filed outside of New York's one-year statute of limitations for intentional torts. Plaintiffs provide no compelling arguments in favor of tolling the applicable statute of limitations, and their argument that New York's one-year limitation period does not bar these claims is without merit. *See Portfolio Recovery Assocs., LLP v. King*, 14 N.Y.3d 410, 416 (2010) ("[W]hen a nonresident sues on a cause of action accruing outside New York, CPLR

## CONCLUSION

To summarize, we hold that:

(1) In light of our decision in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), plaintiffs cannot allege aiding-and-abetting claims under the Anti-Terrorism Act, and moreover, plaintiffs do not make the necessary allegation under the Anti-Terrorism Act that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.

(2) Plaintiffs have not pleaded a violation of the Alien Tort Statute because, as we held in *United States v. Yousef*, 327 F.3d 56, 106-08 (2d Cir. 2003), no universal norm against "terrorism" existed under customary international law (*i.e.*, the "law of nations") as of September 11, 2001.

(3) Plaintiffs' Torture Victim Protection Act claims against Al Rajhi Bank, Saudi American Bank, DMI Trust, and Dallah Al Baraka Group LLC fail in light of the Supreme Court's decision in *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702, 1710-11 (2012), which held that the TVPA only imposes liability on natural persons, and plaintiffs' Torture Victim Protection Act claims against Saleh Abdullah Kamel fail because they do not allege that he acted under color of law.

(4) Plaintiffs' common law tort claims were properly dismissed because plaintiffs failed to plead that the Rule 12(b)(6) defendants owed them a duty or that the actions of the Rule 12(b)(6) defendants proximately caused their injuries.

For these reasons, we **AFFIRM** the District Court's July 14, 2011 judgment insofar as it dismissed plaintiffs' claims against the Rule 12(b)(6) defendants.

---

202 requires the cause of action to be timely under the limitation periods of *both* New York and the jurisdiction where the cause of action accrued." (internal quotation marks omitted) (emphasis supplied)).