UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :      MOTION TO PERMIT
                                                     ATTACHMENT AND
                                              :      EXECUTION PURSUANT
                                                     TO 28 U.S.C. §1610(c)
                                              :

                                              :      03 MDL 1570 (GBD) (FM)

                                              :
------------------------------------------------------------------x

This Document Relates to
Havlish v. bin Laden,
03 Civ. 9848 (GBD) (FM)

   The *Havlish* Plaintiffs, through counsel, hereby respectfully submit this Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. §1610(c), and in support thereof, aver the following:

   1. On December 22, 2011, this Court entered a default judgment as to liability against the Islamic Republic of Iran, a foreign state, and fifteen (15) of its political subdivisions, agencies and instrumentalities for providing direct material support and assistance to al-Qaeda in carrying out the terrorist attacks of September 11, 2001.  Collectively, these sixteen (16) parties are referred to herein as the "Iranian Defendants."  A copy of the Order of Judgment is attached hereto as **Exhibit A**.

   2. Following the entry of the Order of Judgment, the *Havlish* Plaintiffs submitted materials to United States Magistrate Judge Frank Maas regarding damages.

   3. Upon the Recommendation of Judge Maas, this Court entered an Order and Judgment on October 12, 2012, awarding damages to the *Havlish* Plaintiffs in the amount of $6,048,513,805 and finding both the Iranian Defendants and the non-Sovereign Defendants in the *Havlish* action jointly and severally liable for payment of the judgment.  The Order and

Judgment required service of it upon the Iranian Defendants pursuant to the provisions of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §1330; §1602 - §1611 ("FSIA").  A copy of the Order and Judgment entered on October 12, 2012, is attached hereto as **Exhibit B**.

4. The *Havlish* Plaintiffs obtained a shipping license from the Office of Foreign Assets Control through DHL Express on October 18, 2012.  This license permitted the Clerk of Court to send the requisite documents for service of the default judgment to the Ministry of Foreign Affairs of the Islamic Republic of Iran on behalf of the *Havlish* Plaintiffs in accordance with §1608(a)(3).[1]  On November 15, 2012, pursuant to Plaintiffs' request for service upon each of sixteen (16) Iranian Defendants, the Clerk of Court dispatched a set of documents provided by the *Havlish* Plaintiffs to Tehran, Iran via DHL Express.  A representative copy of a Certificate of Mailing from the Clerk of Court is attached hereto as **Exhibit C**.

5. On November 26, 2012, the Ministry of Foreign Affairs in Tehran refused delivery of all sixteen (16) DHL Express packages containing the requisite documents for service of the *Havlish* default judgment.  A copy of the materials sent by counsel to the Clerk of Court as Returns of Service, including the DHL tracking summaries, is attached hereto as **Exhibit D**.  DHL Express contacted counsel for the *Havlish* Plaintiffs to advise that the shipments had been refused, and to request authorization to dispose of the packages, or return the shipments to Mellon & Webster, P.C. in Doylestown, PA.  A copy of an e-mail by Carolina Ramirez of DHL

---

[1] The FSIA lists four methods of service of a default judgment in descending order of preference.  The first two methods of service are "in accordance of a special arrangement for service between the plaintiff and the foreign state" or, if no special arrangement exists, by delivery of the default judgment "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. §1608(a)(1)-(2); 28 U.S.C. §1608(b)(1)-(2).  No "special arrangement" for service of the default judgment exists between the *Havlish* Plaintiffs and Iran, as Iran failed to appear to defend the case.  Indeed, Iran has never appeared to defend *any* claim in the courts of the United States brought by plaintiffs under the state sponsor of terrorism exception to sovereign immunity found at 28 U.S.C. §1605A.  Further, Iran is not a signatory to any "applicable international convention on service of judicial documents."  See Website of Hague Conference for Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed July 8, 2013).  See also United States District Court for the Southern District of New York, Foreign Mailing Instructions, pp. 5-6.

Express to James P. McCoy, Esquire of Mellon & Webster, P.C. dated December 3, 2012, is attached hereto as **Exhibit E**.

6. Due to the Iranian Defendants' refusal to accept service under §1608(a)(3), the *Havlish* Plaintiffs were forced to resort to the time-consuming and expensive means of service through diplomatic channels via the U.S. Department of State as authorized by §1608(a)(4) or §1608(b)(3)(A).

7. On January 14 and January 15, 2013, the Clerk of Court, pursuant to Plaintiffs' request under §1608(a)(4), mailed sixteen (16) sets of documents that were provided to the Clerk by counsel to the U.S. Department of State for service upon the sixteen (16) Iranian Defendants through diplomatic means. Included with the requisite documents for service of the default judgment was a check in the amount of $2,275.00 for each of the sixteen (16) Iranian Defendants to be served.[2] A copy of one of the sixteen (16) Certificates of Mailing from the Clerk of Court to the U.S. Department of State is attached hereto as **Exhibit F**.

8. The FSIA makes a distinction between a "foreign state or political subdivision" or an "agency and instrumentality" of a foreign state for purposes of service through diplomatic means. To serve an agency and instrumentality of a foreign state, there must be a court determination that the defendant to be served is indeed an agency and instrumentality of the foreign state, and letters rogatory must be issued for service. There is no such requirement for service upon a foreign state itself, or its political subdivisions. On January 25, 2013, William P. Fritzlen, Esquire of the U.S. Department of State corresponded with the Clerk of Court to inform the Clerk that the Department of State was empowered to serve only eight (8) of the sixteen (16) Iranian Defendants in the *Havlish* action under §1608(a)(4). The eight (8) Defendants that would be served by the Department of State were those that were "a foreign state or a political

---

[2] The cost of service through the U.S. Department of State, excluding translation costs, was $36,400.

subdivision of a foreign state." The remaining eight (8) Defendants could not be served until the *Havlish* Plaintiffs confirmed that there was a determination by the Court that these Defendants were agencies and instrumentalities of Iran and letters rogatory were issued, as contemplated by 28 U.S.C. §1608(b)(3)(A).   A copy of the letter by William P. Fritzlen, Esquire of the U.S. Department of State, to Ruby J. Krajick, Clerk of Court, dated January 25, 2013, is attached hereto as **Exhibit G**.

9. On February 13, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service, for the eight (8) Iranian Defendants that are a foreign state or political subdivision of a foreign state.  These eight (8) Defendants are:  (1) Islamic Republic of Iran; (2) Ministry of Information and Security; (3) Islamic Revolutionary Guard Corps; (4) Ministry of Petroleum; (5) Ministry of Economic Affairs and Finance; (6) Ministry of Commerce; (7) Ministry of Defense and Armed Forces Logistics; and (8) Central Bank of Iran aka Bank Markazi.

10. The Ministry of Foreign Affairs refused service of these materials upon these eight (8) Defendants on that same date.  A copy of the diplomatic notes and other materials provided to lawyers for the *Havlish* Plaintiffs by the U.S. Department of State is attached hereto as **Exhibit H**.

11. Upon application by the *Havlish* Plaintiffs, eight (8) letters rogatory were issued by this Court so that service could be perfected through the authorities of the Swiss Confederation upon those eight (8) remaining Iranian Defendants who are adjudged to be agencies and instrumentalities of Iran.  These Defendants are: (1) Ayatollah Ali Khamenei, Supreme Leader of Iran; (2) Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment

Counsel and former President of Iran; (3) National Iranian Tanker Corporation; (4) National Iranian Oil Corporation; (5) National Iranian Gas Corporation; (6) National Iranian Petrochemical Company; (7) Iran Airlines; and (8) Hezbollah.  A representative copy of a Certificate of Mailing from the Clerk of Court to the Department of State is attached hereto as **Exhibit I**.

12. On May 22, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service, for the remaining eight (8) Iranian Defendants.

13. The Ministry of Foreign Affairs refused service of these materials on that same day.  A copy of the diplomatic notes and other materials provided to lawyers for the *Havlish* Plaintiffs by the U.S. Department of State is attached hereto as **Exhibit J**.

14. The *Havlish* Plaintiffs have exhausted all available methods of service permitted under the FSIA for service of the *Havlish* judgment entered by this Court.  The Iranian Defendants, after failing to appear to defend the *Havlish* case, have refused service of the *Havlish* judgment three (3) times by two (2) different methods of service, including service by diplomatic means.

15. Section 1610(c) of the FSIA does not permit the enforcement of a judgment via execution proceedings upon the property of a foreign state in the United States, or the property of an agency and instrumentality of a foreign state in the United States, until this Court has "determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under" the service provisions of the FSIA.  28 U.S.C. §1610(c).

16. A reasonable period of time has passed since the entry of judgment by this Court, and the giving of notice of the judgment by the *Havlish* Plaintiffs to the Iranian Defendants, such that Plaintiffs should be permitted to enforce their judgment against the Iranian Defendants forthwith. The U.S. District Court for the District of Columbia has held that a "reasonable period of time" for purposes of §1610(c) is sixty (60) days. *Valore v. Islamic Republic of Iran*, 1:08-cv-01273-RCL (D.D.C. Jun. 8, 2003). Chief Judge Lamberth found "no basis in the FSIA to suggest that any longer period is needed, particularly in comparison to the period of time – 60 days, 28 U.S.C. §1608(e) - that a foreign sovereign is given to respond to initial service of a complaint and summons under the Act." *Id*.

17. Chief Judge Lamberth has also held separately that six (6) weeks is a reasonable period of time to satisfy the requirements of §1610(c), especially when "there is no evidence that the defendant has taken any steps toward the payment of its debt." *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64 (D.D.C. 2001).

18. The judgment as to liability against the Iranian Defendants was issued by this Court on December 22, 2011. The judgment as to damages against the Iranian Defendants was issued on October 12, 2012.

19. All of the Iranian Defendants refused service of this Court's judgment via DHL Express on November 26, 2012.

20. The eight (8) Iranian Defendants that are the foreign state itself, or a political subdivision of a foreign state, refused service of this Court's judgment through diplomatic means on February 13, 2013.

21. The eight (8) Iranian Defendants that are agencies and instrumentalities of Iran refused service of this Court's judgment through diplomatic means on May 22, 2013.

22. Over eighteen (18) months have passed since the entry of this Court's judgment as to liability against the Iranian Defendants. Over eight (8) months have passed since the entry of this Court's judgment as to damages against the Iranian Defendants.

23. Approximately eight (8) months have passed since the Iranian Defendants refused service of the *Havlish* judgment via DHL Express.

24. Over one-hundred and twenty (120) days have passed since the eight Iranian Defendants that are the foreign state itself, or a political subdivision of a foreign state, refused service of this Court's judgment through diplomatic means.

25. As of the date of the filing of this Motion, over six (6) weeks have passed since the eight Iranian Defendants that are agencies and instrumentalities of Iran refused service of this Court's judgment through diplomatic means.

26. The Iranian Defendants are well-aware of this Court's judgment in this matter. Following the entry of default by this Court as to liability on December 22, 2011, the spokesman for Iran's Ministry of Foreign Affairs, Ramin Mehmanparast, dismissed this Court's judgment as "clumsy scenario-making" by the United States. See Associated Press report dated December 25, 2011, as distributed by numerous media outlets, including the *New York Post*, at: http://www.nypost.com/p/news/local/iran_rejects_ny_judge_ruling_on_Q8S7vzwzrxlqYkIg7bTA3L (last accessed July 8, 2013). A copy of this article in .pdf format is attached hereto as **Exhibit K**.

27. Additionally, the refusal of the Iranian Defendants to accept service of the valid judgment issued by this Court demonstrates that the Iranian Defendants have no inclination whatsoever to exercise their appellate rights with respect to the *Havlish* case, or to even recognize the validity of the judgment. Therefore, the protections of the FSIA codified at

§1610(c) in order to prevent a judgment creditor such as the *Havlish* Plaintiffs from a hasty execution upon the property of a foreign state, such as Iran, are no longer implicated here.

28. Indeed, Iran has never appeared to defend *any* of the dozens of claims brought against the Islamic Republic by plaintiffs in the courts of the United States under the state sponsor of terrorism exception to sovereign immunity found at 28 U.S.C. §1605A. See *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 85 (D.D.C. 2009) (Lamberth, C.J.) (observing "the notion" that Iran might appear to defend an action brought under the state sponsor of terrorism exception to sovereign immunity "is almost laughable because that nation has never appeared in any of the terrorism actions that have been litigated against it in this Court.") See also *Heiser v. Islamic Republic of Iran*, 00-cv-2329 (D.D.C. Aug. 10, 2011) (Lamberth, C.J.) (denying a motion by private U.S. telecommunications company to interplead Iran in an execution proceeding against funds owed by telecommunications company to Iran, holding that "this action has been proceeding for almost a decade, yet in all this time Iran has not appeared to account for its role in the horrific bombing of the Khobar Towers residential complex. This choice was made despite both exposure to more than $500 million in damages and evidence that Iran is perfectly capable of appearing when it wishes.").

29. Yet, Iran and garnishees holding Iranian assets regularly enter their appearance in this Court, and other courts, when judgment creditors who hold judgments against Iran due to their state sponsorship of terrorism seek to enforce their valid judgments. See *Peterson v. Islamic Republic of Iran*, 10-cv-04518 (KBF); *In re 650 Fifth Avenue and Related Properties*, 08-cv-10934 (KBF); *Bank of Tokyo Mitsubishi UFJ, Ltd. v. Peterson*, 12-cv-04038 (BSJ); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011) *cert. denied,* 133 S.Ct. 23 (2012); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010).

30. Iran also utilizes the courts of the United States when it suits their interests. Iran recently applied to the Southern District of California for prejudgment interest, postjudgment interest and attorney's fees in an action which arose from confirmation of an arbitration award issued by the International Chamber of Commerce.[3] Iran was awarded $447,090.52 plus interest. See *Ministry of Defense and Support of the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 98-cv-1165-B (DHB) (S.D.Cal. January 3, 2013).

31. In light of the *Havlish* Plaintiffs' efforts to serve the Iranian Defendants through conventional and diplomatic means over the past seven (7) months, as sanctioned by the FSIA, and the Iranian Defendants' refusal to accept service of same despite Iran's acknowledgment of this Court's judgment, the *Havlish* Plaintiffs should forthwith be permitted to engage in execution proceedings to enforce their judgment against the Iranian Defendants in earnest.

**WHEREFORE,** the *Havlish* Plaintiffs respectfully request that this Honorable Court enter the attached proposed Order GRANTING the *Havlish* Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. §1610(c).

Respectfully submitted,

/s/ Thomas E. Mellon, III

Thomas E. Mellon, III (PA Bar No. 81631)
James P. McCoy (PA Bar No. 90330)
MELLON & WEBSTER, P.C.
87 North Broad Street
Doylestown, PA 18901
(215) 348-7700

[3] The underlying suit involved an American company which breached a pre-Islamic Revolution contract to supply Iran with an air combat maneuvering range.

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB- 3739-R71M)
WIGGINS CHILDS QUINN
& PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS QUINN
& PANTAZIS, PLLC
1850 M Street, NW, Suite 720
Washington, DC 20036
(202) 467-4123

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ
& O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-6333

J.D. Lee (TN Bar No. 2030)
LAW OFFICE OF J.D. LEE
422 South Gay Street, 3rd Floor
Knoxville, TN 37902
(865) 544-0101

David C. Lee (TN Bar No. 015217)
LAW OFFICE OF DAVID C. LEE
422 South Gay Street, Suite 303
Knoxville, TN 37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS
YEGELWEL. P.A.
233 East Bay Street
Blackstone Building, 8th Floor
Jacksonville, FL 32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
LAMM RUBENSTONE LLC
3600 Horizon Boulevard, Suite 200
Trevose, PA 19053
(215) 638-9330

Donald J. Winder (UT Bar No. 3519)
Jerald V. Hale (UT Bar No. 8466)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. BOX 2668
Salt Lake City, UT 84110-2668
(801) 322-2222

*Attorneys for the Havlish Plaintiffs*