UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :

                                :       MEMORANDUM OF LAW
                                :       IN SUPPORT OF PLAINTIFFS'
                                    MOTION TO PERMIT
                                :       ATTACHMENT AND
                                    EXECUTION PURSUANT
                                :       TO 28 U.S.C. §1610(c)

                                :       03 MDL 1570 (GBD) (FM)
------------------------------------------------------------------x

This Document Relates to
Havlish v. bin Laden,
03 Civ. 9848 (GBD) (FM)

       The *Havlish* Plaintiffs, through counsel, hereby respectfully submit this Memorandum of

Law in Support of Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C.

§1610(c).

## I.     STATEMENT OF FACTS

       This action was brought by representatives of forty-seven (47) Estates and one-hundred

eleven (111) family members who are victims of the terrorist attacks of September 11, 2001, in

order to hold accountable those who planned, executed, and/or provided material support and

assistance to al-Qaeda in carrying out the most deadly and outrageous attacks against civilians to

occur on American soil.  On December 22, 2011, this Court entered an Order of Judgment

granting a default judgment as to liability against the two categories of Defendants which

Plaintiffs sought to hold accountable: those sixteen (16) Defendants that are related to the Islamic

Republic of Iran ("Iranian Defendants") and certain non-Sovereign Defendants.[1]  A copy of the

Order of Judgment is attached to the accompanying Motion as **Exhibit A**.  An Order and

---

[1] The non-Sovereign Defendants include Osama bin Laden, al-Qaeda, The Taliban a/k/a The Islamic Emirate of Afghanistan, and Muhammad Omar.  These non-Sovereign Defendants are not the subject of the instant Motion.

Judgment followed on October 12, 2012, awarding the *Havlish* Plaintiffs damages in excess of $6 billion to which all Defendants are jointly and severally liable. A copy of the Order and Judgment is attached to the accompanying Motion as **Exhibit B**.

The Iranian Defendants in the *Havlish* action are:  (1) Islamic Republic of Iran; (2) Ayatollah Ali Hosenei Khamenei, Supreme Leader of Iran; (3) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (4) Ministry of Information and Security; (5) Islamic Revolutionary Guard Corps; (6) Ministry of Petroleum; (7) National Iranian Tanker Corporation; (8) National Iranian Oil Corporation; (9) National Iranian Gas Company; (10) National Iranian Petrochemical Company; (11) Iran Airlines; (12) Ministry of Economic Affairs and Finance; (13) Ministry of Commerce; (14) Ministry of Defense and Armed Forces Logistics; (15) Central Bank of the Islamic Republic of Iran; and (16) Hezbollah. This Court has adjudged <u>all</u> of the Iranian Defendants to be the legal equivalent of Iran for purposes of liability under the state sponsor of terrorism exception to sovereign immunity codified at 28 U.S.C. §1605A.  <u>See</u> Findings of Fact and Conclusions of Law, Document #294, December 22, 2011, ¶¶ 35-38.

The Order and Judgment issued by the Court on October 12, 2012, required that the *Havlish* Plaintiffs serve it forthwith, along with other pertinent documents in the case, upon the Iranian Defendants in accordance with the service provisions of the Foreign Sovereign Immunities Act ("FSIA") found at 28 U.S.C. §1608.  The methods of service under the FSIA are listed in §1608 in descending order of preference.  Subsection (a) addresses service upon a foreign state or a political subdivision of a foreign state; subsection (b) provides the methods of service available for an agency and instrumentality of a foreign state.  <u>See</u> 28 U.S.C. §1608 (a)(1)-(4); 28 U.S.C. §1608(b)(1)-(3).  The first two methods under each subsection are virtually

2

identical and neither is applicable to the Islamic Republic of Iran. The first method of service is
"by delivery of a copy of the [default judgment] in accordance with any special arrangement for
service between the plaintiff and political subdivision."[2] 28 U.S.C. §§1608(a)(1), (b)(1).   No
"special arrangement" for service of the default judgment exists between the *Havlish* Plaintiffs
and Iran, as Iran failed to appear to defend the case.   Indeed, Iran has never appeared to defend
*any* of the dozens of claims brought against the Islamic Republic by plaintiffs in the courts of the
United States under the state sponsor of terrorism exception to sovereign immunity found at 28
U.S.C. §1605A.   See *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 85
(D.D.C. 2009) (observing "the notion" that Iran might appear to defend an action brought under
the state sponsor of terrorism exception to sovereign immunity "is almost laughable because that
nation has never appeared in any of the terrorism actions that have been litigated against it in this
Court.")   See also *Heiser v. Islamic Republic of Iran*, 00-cv-2329 (D.D.C. Aug. 10, 2011)
(Lamberth, C.J.) (denying a motion by private U.S. telecommunications company to interplead
Iran in an execution proceeding against funds owed by telecommunications company to Iran,
holding that "this action has been proceeding for almost a decade, yet in all this time Iran has not
appeared to account for its role in the horrific bombing of the Khobar Towers residential
complex.   This choice was made despite both exposure to more than $500 million in damages
and evidence that Iran is perfectly capable of appearing when it wishes.").

     When no special arrangement for service exists, as is the case here, the second method of
service under the FSIA is by delivery of the default judgment "in accordance with an applicable
international convention on service of judicial documents."   28 U.S.C. §§1608(a)(2), (b)(2).   Iran

---

[2] Though the language of the FSIA service provisions is couched in terms applicable to service of original process,
these same provisions at §1608(a)(1)-(4)   or §1608(b)(1)-(3) are applicable to service of a default judgment by
operation of §1608(e), which states that "[a] copy of any…default judgment shall be sent to the foreign state or
political subdivision in the manner prescribed for service in this section." 28 U.S.C. §1608(e).

is not a signatory to any such international convention.  <u>See</u> Website of Hague Conference for Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed July 8, 2013). <u>See also</u> United States District Court for the Southern District of New York, Foreign Mailing Instructions, pp. 5-6.

If service of the default judgment cannot be made by the first two methods, the FSIA permits a plaintiff to request that the Clerk of Court send the required documents "by any form of mail requiring a signed receipt…to the head of the ministry of foreign affairs of the foreign state concerned" or, in the case of an agency or instrumentality, directly to the agency or instrumentality itself.  28 U.S.C. §§1608(a)(3), (b)(3)(B).  The *Havlish* Plaintiffs obtained the shipping license required to ship packages to Iran on October 18, 2012, from the Office of Foreign Assets Control ("OFAC") through the international courier DHL Express.[3]  The *Havlish* Plaintiffs subsequently hand delivered sixteen (16) sets of legal documents, one for each of the sixteen (16) Iranian Defendants, to the Clerk of Court for the Southern District of New York for shipment to Tehran, Iran via DHL Express pursuant to 28 U.S.C. §1608(a)(3) and 28 U.S.C. §1608(b)(3)(B).  Plaintiffs' hand delivery included translations of each document into Farsi and the completed shipping waybills, which directed each package of legal documents to the Ministry of Foreign Affairs of the Islamic Republic of Iran, the address of which was verified through the English version of the Foreign Ministry's own website, http://www.mfa.gov.ir/Default.aspx?lang=en.

---

[3] The Office of Foreign Assets Control is the arm of the United States Treasury that is responsible for promulgating and enforcing the Iranian Transaction Regulations that have been implemented pursuant to Executive Order by the past six presidential administrations.

The Clerk of Court dispatched the sixteen (16) DHL Express packages to Iran on Plaintiffs' behalf on November 15, 2012.  According to the tracking summaries provided by DHL Express, the packages arrived in Tehran on November 22, 2012, and the shipment was refused by the Ministry of Foreign Affairs on November 26, 2012.[4]  DHL Express contacted counsel for the *Havlish* Plaintiffs to advise that the shipments had been refused, and to request authorization to dispose of the packages, or return the shipments to Mellon & Webster, P.C. in Doylestown, PA.  A copy of a representative Certificate of Mailing from the Clerk of Court is attached to the accompanying Motion as **Exhibit C**.  A copy of the sixteen (16) tracking summaries forwarded to the Clerk of Court as Returns of Service is attached to the accompanying Motion as **Exhibit D**.  A copy of an e-mail by Carolina Ramirez of DHL Express to James P. McCoy, Esquire of Mellon & Webster, P.C. dated December 3, 2012, is attached to the accompanying Motion as **Exhibit E**.

Following the Iranian Defendants' refusal to accept service of the *Havlish* judgment via DHL Express, Plaintiffs requested that the Clerk of Court attempt service via the final method of service proscribed by the FSIA, which involves transmission of the necessary documents by the Clerk to the Department of State in Washington, D.C. for service via diplomatic channels.  See 28 U.S.C. § 1608(a)(4).  Plaintiffs again hand delivered to the Clerk of Court the requisite documents for service upon the sixteen (16) Iranian Defendants in the *Havlish* action, along with a cashier's check in the amount of $2,275 for each Defendant to be served.  The Clerk of Court dispatched the documents on Plaintiffs' behalf to Washington on January 14 and January 15,

---

[4] Although 28 U.S.C. §1608(b)(3)(B) permits direct service upon an agency or instrumentality of Iran by any form of mail requiring a signed receipt, the *Havlish* Plaintiffs chose to serve all sixteen (16) Iranian Defendants through the Ministry of Foreign Affairs because this Court adjudged all Defendants to be the legal equivalent of Iran. Further, Plaintiffs believed that service directly through the Ministry of Foreign Affairs would ensure that each Defendant received notice of the *Havlish* judgment.

2013.   A copy of a representative Certificate of Mailing from the Clerk of Court to the Department of State is attached to the accompanying Motion as **Exhibit F**.

On January 25, 2013, William P. Fritzlen, Esquire of the Department of State informed the Clerk of Court via correspondence that service would only be effectuated on eight (8) of the sixteen (16) Iranian Defendants at that time.  See letter by William P. Fritzlen, Esquire to Ruby J. Krajick, Clerk of Court dated January 25, 2013, which is attached to the accompanying Motion as **Exhibit G**.  The eight (8) Iranian Defendants that would not be served were considered "agencies and instrumentalities" by the Department of State and, therefore, the Court would first be required to issue letters rogatory under 28 U.S.C. §1608(b)(3)(A) for the Department of State to assist with service of the following Defendants:   (1) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (2) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (3) National Iranian Tanker Corporation; (4) National Iranian Oil Corporation; (5) National Iranian Gas Corporation; (6) National Iranian Petrochemical Company; (7) Iran Airlines; and (8) Hezbollah.  The Department of State assured the *Havlish* Plaintiffs that service upon the remaining eight (8) Iranian Defendants would be effectuated as requested.

Since the United States and Iran have no diplomatic relations, diplomatic notes are sent to Iran through the U.S. Embassy in Bern, Switzerland, which transmits the notes to the Swiss Confederation.  The Swiss authorities then forward any such diplomatic transmissions to their Foreign Interests Section at the Swiss Embassy in Tehran.  On February 13, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service, for the eight (8) Iranian Defendants that are a foreign state or political

subdivision of a foreign state.  The Ministry of Foreign Affairs refused service of these materials on that same date.  A copy of the diplomatic notes and other materials provided by the U.S. Department of State to lawyers for the *Havlish* Plaintiffs is attached to the accompanying Motion as **Exhibit H**.

On February 21, 2013, the *Havlish* Plaintiffs filed a Motion to Request the Issuance of Letters Rogatory so that service upon the remaining eight (8) Iranian Defendants could be perfected by the U.S. Department of State.  The Court issued eight (8) Letters Rogatory directed to the Appropriate Judicial Authority of the Islamic Republic of Iran, and the Clerk of Court forwarded these eight (8) Letters Rogatory and other materials necessary to perfect service, including the required fee of $2,275 per Defendant, to the U.S. Department of State on April 25, 2013.  <u>See</u> Case Docket for 1:03-cv-09848 (GBD) (FM), Docket Entry Nos. 378 through 385.  A representative copy of a Certificate of Mailing from the Clerk of Court to the Department of State is attached to the accompanying Motion as **Exhibit I**.

On May 22, 2013, the Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with the *Havlish* judgment, and other materials required by law to perfect service, for the eight (8) remaining Iranian Defendants that are an agency and instrumentality of the Islamic Republic.  Once again, the Ministry of Foreign Affairs refused service of these materials on that same date.  A copy of the diplomatic notes and other materials provided by the U.S. Department of State to lawyers for the *Havlish* Plaintiffs is attached to the accompanying Motion as **Exhibit J**.

The Iranian Defendants are well-aware of this Court's judgment in this matter.  Following the entry of the Order of Judgment on December 22, 2011, the spokesman for Iran's Ministry of Foreign Affairs, Ramin Mehmanparast, dismissed this Court's findings as "clumsy

scenario-making" by the United States.  This is the same Ministry which has rejected service of this Court's judgment three times.  See Associated Press report dated December 25, 2011, as distributed by numerous media outlets in the U.S. and abroad, including the *New York Post* at: http://www.nypost.com/p/news/local/iran_rejects_ny_judge_ruling_on_Q8S7vzwzrxlqYkIg7bTA3L (last accessed July 8, 2013).   A copy of this article in .pdf format is attached to the accompanying Motion as **Exhibit K**.[5]

Now that the *Havlish* Plaintiffs have exhausted every method of service sanctioned by the FSIA for delivery of this Court's judgment upon the Iranian Defendants, Plaintiffs seek an Order of this Court pursuant to §1610(c) to permit the *Havlish* Plaintiffs to enforce their judgment against the Iranian Defendants in earnest.

## II.   LEGAL ARGUMENT

### A.   The Havlish Plaintiffs Have Complied with Both the FSIA And the Order and Judgment of This Court Regarding Service

"Under the FSIA, entry of a default judgment against a foreign state or its instrumentalities must be accompanied by service of that judgment."  *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70 (D.D.C. 2011).  This requirement of service, coupled with the requirement that a plaintiff pursuing a claim under §1605A of the FSIA can only obtain a default judgment after presenting evidence satisfactory to the court, both "ensure[s] that having been served with an initial complaint and declining to participate in the litigation[,] a foreign state or entity remains protected by the requirement that a plaintiff substantiate her claim" and

---

[5] Further, Mr. Mehmanparast, who briefly declared himself a candidate in Iran's recent presidential election, insisted that al-Qaeda had no presence in Iran.  Not only did the evidence presented by the *Havlish* Plaintiffs debunk this notion but various sources, including communications seized by the United States following the raid which killed Osama bin Laden on May 2, 2011, have subsequently confirmed the connection between the Iranian Defendants and al-Qaeda.  See *Letters from Abbottabad: Bin Laden Sidelined?* by the Combatting Terrorism Center at West Point, Don Rassler, Gabriel Koehler-Derrick, Liam Collins, Muhammad al-Obaidi, and Nelly Lahoud, Authors. (May 3, 2012).

that foreign property interests are preserved "by insisting upon prompt notification of any entry of judgment that might put such interests at risk." *Murphy*, 778 F. Supp. 2d at 72.

Following the entry of the Order and Judgment by this Court on October 12, 2012, the *Havlish* Plaintiffs obtained a shipping license from OFAC and translated the relevant documents into Farsi for service upon the Iranian Defendants via DHL Express as permitted by §1608(a)(3) and §1608(b)(3)(B).    The shipment was refused.   Plaintiffs then sought to notify the Iranian Defendants of this Court's judgment through service by diplomatic means.   The Iranian Defendants similarly twice refused service, even though the Islamic Republic itself has acknowledged the existence of the judgment.   As in *Heiser v. Islamic Republic of Iran*, *supra*, the Iranian Defendants have made this choice to refuse service despite both exposure to billions of dollars in damages and evidence that Iran is perfectly capable of appearing in the courts of the United States when it wishes.   See *Peterson v. Islamic Republic of Iran*, 10-cv-04518 (KBF); *In re 650 Fifth Avenue and Related Properties*, 08-cv-10934 (KBF); *Bank of Tokyo Mitsubishi UFJ, Ltd. v. Peterson*, 12-cv-04038 (BSJ); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011) *cert. denied,* 133 S.Ct 23 (2012); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010); *Ministry of Defense and Support of the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 98-cv-1165-B (DHB) (S.D.Cal. January 3, 2013).

The *Havlish* Plaintiffs have exhausted every available method of service sanctioned by the FSIA for delivery of this Court's judgment upon the Iranian Defendants.   Plaintiffs have attempted service three (3) times through two (2) different means, including the time-consuming and expensive use of diplomatic channels.   The Iranian Defendants have refused service at every turn, and have done so at their own peril.   This Court should hold that the *Havlish* Plaintiffs have

complied with both the requirements of the FSIA and this Court's Order and Judgment of October 12, 2012, regarding service of the *Havlish* judgment on the Iranian Defendants.

### B.      A Reasonable Period of Time Has Elapsed Such That the *Havlish* Plaintiffs Should Be Permitted to Enforce Their Judgment

Following the service of a judgment, the FSIA establishes a condition precedent before a party such as the *Havlish* Plaintiffs can formally attach and execute upon the property of a foreign sovereign.[6]  Section 1610(c) requires that a plaintiff seek leave of court before executing upon the property of a foreign state to enforce a judgment obtained under §1605A:

> "No attachment or execution…shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following entry of judgment and giving notice required under §1608(e) of this chapter."

28 U.S.C. §1610(c).

According to a House Report on the FSIA, the procedures mandated by §1610(c) are in place to ensure that sufficient protection is afforded to foreign states that may be defendants in actions in courts in the United States:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or local sheriff.  This would not afford sufficient protection to a foreign state.  This subsection contemplates that the courts will exercise discretion in permitting execution.  Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment…In determining whether the period of time has been reasonable, the court should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representation by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

---

[6] There is an exception in that a plaintiff may seek a lien of *lis pendens* upon the property of a foreign state pursuant to §1610(d) prior to the entry of judgment, provided that the lien is not sought to obtain jurisdiction.  28 U.S.C. §1608(d)(2).

*Levin v. Bank of New York*, No. 1:09-cv-59000 (RPP) (MHD) (S.D.N.Y. Jan. 28, 2011) *quoting* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6629.

Iran has never voluntarily paid a judgment entered as a result of its continued state sponsorship of terrorism around the world.  The judgment of this Court as to liability with respect to the Iranian Defendants was issued over eighteen (18) months ago, and it was acknowledged by the Islamic Republic within days of its issuance.  Indeed, the spokesman for the Islamic Republic's Ministry of Foreign Affairs mocked the very judgment issued by this Court, which the *Havlish* Plaintiffs now seek to enforce.  The Order and Judgment with respect to damages was issued by this Court over eight (8) months ago.  The Iranian Defendants have refused service of this Court's judgment three (3) times through both conventional and diplomatic means.  There is no reason whatsoever to afford the Iranian Defendants, and their property, the continued protections of the FSIA with respect to the enforcement of the *Havlish* judgment.

The U.S. District Court for the District of Columbia has held that a "reasonable period of time" for purposes of §1610(c) is sixty (60) days.  *Valore v. Islamic Republic of Iran*, 1:08-cv-01273-RCL (D.D.C. Jun. 8, 2003).  Chief Judge Lamberth found "no basis in the FSIA to suggest that any longer period is needed, particularly in comparison to the period of time – 60 days, 28 U.S.C. §1608(e) - that a foreign sovereign is given to respond to initial service of a complaint and summons under the Act."  *Id*.  Chief Judge Lamberth has also held separately that six weeks is a reasonable period of time to satisfy the requirements of §1610(c), especially when "there is no evidence that the defendant has taken any steps toward the payment of its debt." *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64 (D.D.C. 2001).

Those eight (8) Iranian Defendants that are the foreign state itself, or a political subdivision of Iran, were served with notice of the *Havlish* judgment over one-hundred twenty (120) days ago via diplomatic means.  The eight (8) Iranian Defendants that are agencies and instrumentalities of the Islamic Republic were served notice of the judgment over forty-five (45) days ago via these same diplomatic channels.

The *Havlish* Plaintiffs respectfully submit to the Court that, when applying the applicable law to the circumstances presented here, Plaintiffs should be permitted to commence enforcement of their judgment forthwith.  Over six (6) weeks have passed since the remaining eight (8) Iranian Defendants were served with notice of the *Havlish* judgment.  The outright refusal of the Iranian Defendants to accept service of the judgment - despite Iran's official acknowledgment of it – flies in the face of the authority of this Court.  Further, there has never been any indication that the Iranian Defendants are inclined to suddenly reverse course and satisfy the judgments that have entered against them due to their continued state sponsorship of terrorism.  One needs to look no further than this very Court for examples of the vigor with which Iran, its front companies and its garnishees approach litigation in order to shield Iran's assets from those which hold valid judgments against the Islamic Republic.  <u>See</u> *Peterson v. Islamic Republic of Iran*, 1:10-cv-04518 (KBF); *In re 650 Fifth Avenue and Related Properties*, 1:08-cv-10934 (KBF).  Therefore, there is no reason to provide protection to the assets of the Iranian Defendants in this action any longer.

III.   **CONCLUSION**

For the reasons stated above, the *Havlish* Plaintiffs respectfully request that this Honorable Court enter the attached proposed Order GRANTING this Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. §1610(c).

Respectfully submitted,


/s/ Thomas E. Mellon, III
Thomas E. Mellon, III (PA Bar No. 81631)
James P. McCoy (PA Bar No. 90330)
MELLON & WEBSTER, P.C.
87 North Broad Street
Doylestown, PA 18901
(215) 348-7700

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB- 3739-R71M)
WIGGINS CHILDS QUINN
& PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS QUINN
& PANTAZIS, PLLC
1850 M Street, NW, Suite 720
Washington, DC 20036
(202) 467-4123

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ
& O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
(630) 232-6333

J.D. Lee (TN Bar No. 2030)
LAW OFFICE OF J.D. LEE
422 South Gay Street, 3rd Floor
Knoxville, TN 37902
(865) 544-0101

David C. Lee (TN Bar No. 015217)
LAW OFFICE OF DAVID C. LEE
422 South Gay Street, Suite 303
Knoxville, TN 37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS
YEGELWEL. P.A.
233 East Bay Street
Blackstone Building, 8th Floor
Jacksonville, FL 32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
LAMM RUBENSTONE LLC
3600 Horizon Boulevard, Suite 200
Trevose, PA 19053
(215) 638-9330

Donald J. Winder (UT Bar No. 3519)
Jerald V. Hale (UT Bar No. 8466)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. BOX 2668
Salt Lake City, UT 84110-2668
(801) 322-2222

*Attorneys for the Havlish Plaintiffs*

14