D6STTERC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORKt
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001
4                                        03 MDL 1570 (GBD)(FM)

    ------------------------------x
5

6                                        New York, N.Y.
                                         June 28, 2013
7                                        11:00 a.m.

8   Before:

9                       HON. FRANK MAAS,

10                                       Magistrate Judge

11                       APPEARANCES

12  KREINDLER & KREINDLER
         Attorneys for Ashton Plaintiffs
13  BY:  JAMES KREINDLER

14  MOTLEY RICE
         Attorneys for Burnett Plaintiffs
15  BY:  ROBERT T. HAEFELE

16  ANDERSON KILL & OLICK
         Attorneys for O'Neil Plaintiffs
17        and Plaintiff's Executive Committee
    BY:  JERRY S. GOLDMAN
18
    WIGGINS, CHILDS, QUINN & PANTAZIS
19       Attorneys for Havlish and Hoglan Plaintiffs
    BY:  TIMOTHY B. FLEMING
20
    MELLON & WEBSTER
21       Attorneys for Havlish and Hoglan Plaintiffs
    BY:  THOMAS E. MELLON, III
22       JAMES P. McCOY

23  COZEN O'CONNOR
         Attorneys for Federal Insurance Plaintiff
24  BY:  SEAN P. CARTER
         SCOTT TARBUTTON
25

D6STTERC                          Conference

1                                 APPEARANCES

2    BERNABEI & WACHTEL
          Attorneys for Defendant AHIF
3    BY:  ALAN R. KABAT

4    CLIFFORD CHANCE
          Attorneys for Defendant Dubai Islamic Bank
5    BY:  RONI E. BERGOFFEN

6    OMAR MOHAMMEDI
          Attorney for Defendants WAMY and WAMY International
7
     LEWIS BAACH
8         Attorneys for Defendants IIRO MWL
     BY:  ERIC LEWIS
9         AISHA HENRY
          MARK LEIMKUHLER
10
     DOAR, RIECK, KALEY & MACK
11        Attorneys for Defendant Yassin Abdullah Kadi
     BY:  AMY ROTHSTEIN
12        PETER SALERNO, of counsel

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (In open court)

2          DEPUTY CLERK:  This is a conference in the matter of

3     In Re: Terrorist Attacks on September 11.

4          Counsel, please state your names for the record.

5          MR. KREINDLER:  James Kreindler.  Good morning, your

6     Honor.

7          THE COURT:  Good morning.

8          MR. CARTER:  Good morning, your Honor, Sean Carter

9     from Cozen O'Connor for the Federal Insurance plaintiffs.

10         MR. HAEFELE:  Good morning, your Honor, Robert

11    Haefele, Motley Rice, for Burnett plaintiffs.

12         MR. KABAT:  Good morning, your Honor, Alan Kabat for

13    Al Haramain.

14         MS. BERGOFFEN:  Good morning, your Honor, Roni

15    Bergoffen on behalf of the Dubai Islamic bank.

16         MR. LEWIS:  Good morning, your Honor, Eric Lewis on

17    behalf of the Muslim World League and International Islamic

18    Relief Organization.  This is my first appearance, and I would

19    also like to introduce my partners Ms. Henry and

20    Mr. Leimkuhler.

21         THE COURT:  Good morning, and welcome.

22         MR. MOHAMMEDI:  Good morning, your Honor, Omar

23    Mohammedi on behalf of WAMY & WAMY International.

24         MS. ROTHSTEIN:  Good morning, your Honor, Amy

25    Rothstein of Doar, Rieck, Kaley & Mack for Yassin Abdullah

D6STTERC                    Conference

1   Kadi.

2            THE COURT:  Also new to the party.

3            MS. ROTHSTEIN:  Correct, your Honor.

4            MR. SALERNO:  Peter Salerno, of counsel, from Doar,

5   Rieck, Kaley & Mack for Kadi.

6            MR. FLEMING:  Good morning, your Honor, Timothy

7   Fleming, Wiggins, Childs, Quinn & Pantazis, appearing for the

8   plaintiffs in the Havlish case as well as plaintiffs in the

9   Hoglan case.

10            MR. TARBUTTON:  Good morning, your Honor, Scott

11   Tarbutton, Cozen O'Connor, for the insurance plaintiffs.

12            MR. GOLDMAN:  Good morning, your Honor, Jerry Goldman,

13   Anderson Kill for the O'Neil plaintiffs and the Plaintiffs'

14   Executive Committee.

15            MR. MELLON:  Good morning, your Honor, Tom Mellon on

16   behalf of the Havlish and Hoglan plaintiffs.

17            MR. McCOY:  Good morning, your Honor, James P. McCoy

18   on behalf of the Havlish and Hoglan plaintiffs.

19            THE COURT:  Good morning, everyone.  I see that the

20   mandate issued as to the remanded defendants yesterday.  And

21   one thing I wanted to take up with counsel is when I have been

22   getting letters, sometimes the type font has been shrinking,

23   and hence forth I would like all letters to be in at least 12

24   point font.  It makes it very difficult to read, particularly

25   when you have lengthy letter applications.

1          Dealing first with the issue of document discovery, I

2     guess more accurately, I confess I am a little confused because

3     I thought we –– and I understand there are additional

4     defendants now, but as to those defendants who have been along

5     for the ride thus far, I thought we had a document discovery

6     deadline.  I confess I'm not quite sure what it was at this

7     point, but I also had the impression that it expired and that

8     we were dealing with motions to compel or for sanctions.  But

9     both sides are talking about a schedule which is six months

10    out, so if somebody could enlighten me on how we got to another

11    rolling deadline, I would appreciate that.

12          MR. CARTER:  Your Honor, I think I can.  And I think

13    Mr. Lewis can probably chime in as well.  We were approached by

14    the new attorneys for the Muslim World League some months ago.

15    They raised a proposal that we afford them an opportunity to

16    attempt to cure some deficiencies in the document productions

17    that had a been made to date, asked us if we would give them

18    that opportunity in exchange for agreeing not to move for entry

19    of defaults at this time without waiving our right to move for

20    sanctions relative to anything we believe to have been a form

21    of misconduct to date.  And we said we were amenable to that

22    approach, provided that they could get the other defendants on

23    board and that we basically took a snapshot that was a limited

24    window to try and fix everything and get the complete universe

25    of documents to which we're entitled.

D6STTERC                    Conference

1          THE COURT:  That would put us to the end of the year,

2    and it seems to me also it affects Judge Daniels' schedule

3    because he contemplated motions for summary judgment I guess in

4    the fall or thereabouts.

5          MR. CARTER:  If he had that in mind, your Honor, it

6    had not been shared with us.  We did not have a --

7          THE COURT:  According to the last time he held a

8    conference, he didn't set dates clearly, but I thought he set

9    out the grand scheme of how he thought the case might go

10   forward.  Am I inventing that?

11         MR. CARTER:  I do not remember that at all, your

12   Honor.

13         THE COURT:  OK.  Well, I suppose with new counsel here

14   and hope springing eternal that's an appropriate extension of

15   time, so I will grant the six-month extension.

16         As to the remanded defendants, the objection that the

17   mandate has not issued obviously has gone by the boards.

18         There was reference in the defendants' letter to a

19   proposed July 31 deadline, and I tried to find the antecedent

20   to that and couldn't, so I'm not sure what the July 31 deadline

21   mentioned in the letter was.

22         MR. CARTER:  Your Honor, I think it was in response to

23   a proposal we had made that although there was a six-month

24   rolling production deadline, defendants who have been before

25   the Court for several years now in discovery should make an

D6STTERC                        Conference

1   effort to essentially wrap up their productions early on so

2   that we could use the remaining period of the six-month window

3   to do motions, analyze their documents, and try and bring as

4   much as possible to conclusion within the six months.  They had

5   objected to the proposal that their productions be due by

6   July 30 and said that they had voluminous materials and it will

7   take them essentially the full window is the suggestion.

8          I guess our view on that, your Honor, is that we think

9   there has to be some interim pressure points to keep people on

10  track here.  And whether or not it's a firm deadline for

11  completing productions or as an alternative, perhaps, just

12  regular status reports to the Court about what's been done,

13  what's been produced, and what remains to be done say on a

14  monthly basis, either way we're fine.  We want to avoid a

15  situation in which everyone takes the six months and says let's

16  sit on it until five months from now and dump everything at the

17  last day.

18         THE COURT:  Or say six months is inadequate and we

19  need another six months.

20         MR. CARTER:  Correct.  So we're really trying to

21  create a structure that keeps us on base.

22         MR. LEWIS:  Your Honor, if I may be heard.

23         THE COURT:  Please.

24         MR. LEWIS:  We had a very positive meeting after the

25  16th of April conference with your Honor when I said we are

D6STTERC                      Conference

1    committed and the client is committed to getting all of these

2    problems behind us.  We need time.  We also need to sit down --

3    we're not going to just ask you what you want, we have ideas

4    about where we think there are gaps.  But before we get on an

5    airplane to Islamabad or Jakarta, let's make sure we're on the

6    same page, particularly as there's going to be supplemental

7    requests.  Those are difficult logistical and security

8    environments, and we want to go once.

9              We have been asking for that meeting since April.  I

10   respect the fact that plaintiffs have had a lot on their plate

11   in the Court of Appeals, but we have said we have Arabic

12   speakers, we have a team ready to go, we are putting together

13   agendas.  We want to have the meeting before everyone starts

14   running around.  So I was somewhat surprised to see the July 30

15   smack in the middle of Ramadan, people aren't working more than

16   a few hours a day.  We are committed to moving forward quickly,

17   but we can't do it in a month, we can do it in six.  And I was

18   pleased to hear Mr. Carter say six months and your Honor grant

19   that.  And we'll give whatever interim reports your Honor

20   wishes, but we have no intention of waiting five months and

21   saying sorry, we need more time.  Our intention is to move

22   forward once we have a meeting of the minds to the best we can

23   with the plaintiffs.  Thank you.

24             THE COURT:  When are you going to sit down with

25   Mr. Lewis and his colleagues?

D6STTERC                    Conference

1          MR. CARTER:  Your Honor, we indicated to Mr. Lewis and

2     his colleagues we would give him dates early next week when

3     we're available.  And we also indicated we're more than happy

4     to provide essentially a list of where we think there are some

5     notable gaps that are illustrative to the problems.

6          But back to something your Honor said at a conference

7     previously, we think there has to be a comprehensive approach

8     on the part of the defendants.  We can't tell them what

9     documents they have that are responsive.  So the best we can do

10    is provide some examples, but the process has to be ongoing,

11    and really should have, in our view, been ongoing for some time

12    in recognition of the conversations we already had.  But we'll

13    set something up with the next couple of weeks.

14         THE COURT:  Why don't I say that by September 20th you

15    and Mr. Lewis will submit to me a written progress report, and

16    if need be I'll schedule a conference separately to deal with

17    any issues that relate to those defendants.

18         MR. LEWIS:  Yes, your Honor.

19         MR. CARTER:  Yes, your Honor.

20         THE COURT:  There's the proposal from the plaintiffs

21    that defendants, to the extent they can, serve consolidated

22    discovery requests so that you don't have respond to the whole

23    series of different and potentially overlapping requests.  I

24    know this came up in the last round or maybe two rounds ago,

25    and I didn't go back through the docket, but my recollection is

D6STTERC                    Conference

1   that I directed that that occur and that it was pretty much a

2   disaster.  Do I have that wrong?

3          MR. CARTER:  Your Honor, I don't think from our

4   perspective it was a disaster.  There was some disputes over

5   the scope of the consolidated requests, but it did alleviate

6   the need to respond to those requests for six different

7   defendants with slight variations, and at least we had one

8   dispute over the consolidated request rather than five.  Part

9   of our concern here really relates to the fact that many of the

10  remanded defendants are officials or former officials of

11  defendants who have been engaged in discovery for a very long

12  time.

13         THE COURT:  Say that again?

14         MR. CARTER:  They're officials or former officials of

15  entities that have been engaged in the discovery process for

16  some time.  So if you take the example, for instance, of

17  Defendant Basha, he is the director of the IRO.  He, I know

18  Mr. McMahon has said on a number of occasions, has himself been

19  involved in the discovery process to date.  It really does not

20  make much sense for Dr. Basha to serve discovery requests that

21  are identical to those that the IRO already served and covering

22  the same territory.  And in many cases some of these attorneys

23  have been involved already in the discovery process.  So that's

24  the focus of it from our perspective.

25         MR. KABAT:  Your Honor, could I please speak to that.

1    The issue with discovery with respect to the remanded

2    defendants is slightly distinct from the merit discovery

3    because the Second Circuit on May 27 in a slip opinion outlined

4    the areas for jurisdictional discovery.  So naturally we want

5    and our clients want information relating to those topics that

6    the Second Circuit outlined should not necessarily have been

7    covered --  So for that reason, Dr. Basha and the other people

8    mentioned would need to be able to serve their own discovery

9    related to the jurisdictional issues, and that both sides would

10   try to avoid any overlap.  Because of the different focus, I

11   don't think there could be that much overlap.

12           THE COURT:  You can correct me if I'm wrong, but I

13   don't think Mr. Carter would quarrel with that, or his

14   colleagues.  I think they're trying to avoid two things, one,

15   as you alluded to, needless duplication with prior requests,

16   but also getting a dozen different sets of requests when they

17   could be consolidation among the remanded defendants.  And I

18   think both of those are goals that should be pursued.

19           So I think what I will do is simply say that to the

20   extent possible the requests should not duplicate prior

21   requests, nor -- well, should not duplicate prior requests, and

22   additionally those defendants who were making jurisdictional

23   discovery requests -- and I recognize that there may be unique

24   aspects of each remanded defendant, but to the extent that

25   there's some commonality, there should be a set of common

D6STTERC                    Conference

1   requests.

2           I think that's essentially the ruling I made last

3   time.  I'm not sure it could be done any more precisely than

4   that, Mr. Carter.

5           MR. CARTER:  No, I think that's fine, your Honor.

6           THE COURT:  Perhaps I should have asked this earlier,

7   but how many defendants are in the case today, either as a

8   remanded defendant for jurisdictional discovery or as to merits

9   discovery?

10           MR. CARTER:  Your Honor, I'm going to put a sort of a

11   ballpark estimate at about 20.

12           THE COURT:  OK.  And how many of those are in

13   jurisdictional discovery?

14           MR. CARTER:  It would be the dozen remanded by the

15   Second Circuit.

16           THE COURT:  So no one else.

17           MR. CARTER:  Well, there was jurisdictional discovery

18   ongoing as to Rabita Trust.  There is obviously the motion

19   pending as to Rabita.

20           MR. KABAT:  Your Honor, I would just note that two of

21   the remanded defendants are deceased and there's been no effort

22   to made to substitute the estate for them.  And two other

23   remanded defendants were not represented on appeal, they're not

24   currently represented either.  So it's possible that we're only

25   dealing with eight remanded defendants who will actually

1    participate in the case.

2            THE COURT:  OK.  I just wanted, as Mr. Carter put it,

3    a guesstimate, to see whether or not whether anything had

4    changed materially.

5            There's the issue of follow-up discovery and it seems

6    to me that follow-up discovery should be limited to reasonable

7    requests suggested by that discovery which is produced.

8    Frankly, I don't want to get mired in a request by request

9    review, but beyond stating it that way, I'm not sure what else

10   I can do to set guidelines for either side at this point.

11           MR. CARTER:  Your Honor, I think that there are two

12   sort of practical dimensions to this that we're concerned

13   about.  And the first, as identified in the letter, is this

14   concern about these individualized disputes over whether a

15   request is a legitimate follow up or new.  And that's of

16   particular concern to us because of some of the FOIA inquiries

17   that remain outstanding.  And what we perceive --

18           THE COURT:  When you say the FOIA inquiries, you're

19   speaking about FOIA requests that are currently being processed

20   by the government?

21           MR. CARTER:  Correct.

22           THE COURT:  I thought I convinced you not to make any

23   more FOIA requests.

24           MR. CARTER:  Your Honor, we don't mind turning the

25   stuff over consistent with your ruling.  Some of the FOIA

D6STTERC                    Conference

1    requests were made in 2003 and we're still waiting for them, so

2    we can't undo that.

3            But to sort of put a focal point on it, from about May

4    of 2012 through October of 2012 Dubai Islamic Bank and counsel

5    Clifford Chance were engaged in an ongoing dialogue with the

6    Treasury Department objecting to the Treasury's plan to release

7    certain documents to us.  So their intervention in the process

8    and objection to the Treasury actually served to delay

9    production of materials pursuant to FOIA until after the

10   original discovery deadline your Honor set.  And we suspect

11   that there's more of that going on in the background.  We don't

12   really want to fight about whether we're entitled to follow up

13   on information that's released to us by the government in

14   response to FOIA, just as an example.

15           And as a practical matter, your Honor, I don't think

16   this really relates as much to concerns about a new set of

17   discovery requests but rather many of the defendants objected

18   to discovery requests that we served in July of 2012 as

19   untimely at that time even though discovery hadn't ended.  And

20   it seems that the real effort here is to avoid answering

21   discovery that was served a year ago, and had it been answered

22   in due course, we would be well past this.  So we're going to

23   move to compel on those issues, we just didn't want the ruling

24   right now to go back in time and sort of bar discovery that had

25   been served long ago.

1          THE COURT:  If it was served previously and not

2     adequately responded to, I view that as a wholly separate issue

3     from somebody who received your discovery requests, responded

4     producing everything that they reasonably could find, and then

5     were served with a new battery of requests and said that these

6     should have been a part of what we looked at when we served

7     originally, which is a concern that Mr. Lewis was raising a

8     while ago.

9          MR. CARTER:  Your Honor, I think it has to do with the

10    stuff that was served a while ago in the prior period.  And to

11    the extent there are follow-up discovery requests, or in

12    certain cases the way that objections have been framed may

13    require us to rephrase some requests for the same subject

14    matter.  But that's all we're really asking for the opportunity

15    to do.

16         THE COURT:  And I think I'll have to deal with it on a

17    case-by-case basis.

18         In terms of the applications that I have received thus

19    far either to compel or for sanctions, I haven't ruled on any

20    of them because I was hoping to deal with them as they grew,

21    much the same way I know Judge Daniels helps the group deal

22    with substantive motions as a group.

23         With respect to Rabita Trust, there was a suggestion

24    in the letter that I was going to -- maybe I was misreading it,

25    but it sounded like there was a belief that I was going to

1    undertake some sort of review of the in camera documents that

2    were submitted to me to determine whether they properly were

3    attorney-client material that couldn't be compelled.  Whereas

4    my view was they had been submitted -- I guess not just Rabita

5    Trust, but Jelaidan also, but they had been submitted simply to

6    show that those defendants had been proceeding in good faith

7    for whatever light it shed on the motion rather than something

8    where I was going to direct that potentially some documents be

9    turned over.

10          Is that consistent with plaintiffs' understanding?

11          MR. CARTER:  Your Honor, the scope of the review that

12   you outlined is consistent with our understanding.  I think the

13   one issue is that your Honor had identified in the context of

14   the review a letter to Habib Bank, I believe, and raised with

15   Mr. McMahon that you couldn't identify any reason why that

16   would have been deemed privileged and not turned over, and

17   asked Mr. McMahon to send it to us, and we still don't have it.

18   So that's the one example where the Court sua sponte sort of

19   raised a question about the scope of the asserted privilege.

20          THE COURT:  I remember that.  I will go back and look

21   at the document.  Mr. McMahon, as you all know, sent a letter

22   saying that he wanted to participate in this conference by

23   telephone but didn't phone in.  We tried to reach out to him

24   and weren't able to reach him.

25          There's also the issue of depositions.

D6STTERC                    Conference

1          MS. BERGOFFEN:  Your Honor, if I may, before we move

2     on to depositions, if I can could respond to a couple of

3     Mr. Carter's points with regard to follow-up discovery,

4     document discovery.

5          THE COURT:  Yes.

6          MS. BERGOFFEN:  Your Honor, just to be clear, what we

7     want to avoid is plaintiffs being able to reuse the remand of

8     the twelve additional jurisdictional discovery defendants to

9     simply open up the flood gates to a slew of document requests

10    unrelated to the hundreds and hundreds of requests that were

11    served back in 2010.

12         Your Honor, the deadline to serve document requests

13    passed more than two and a half years ago.  While your Honor

14    extended the production deadline several times, including

15    through last August, almost a year ago, there is simply no

16    basis, nor have you extended the document request deadline

17    beyond 2010.

18         Now recognizing that it took a long time and very

19    extensive efforts on behalf of defendants to collect and

20    produce documents, we understand the nature of the need to have

21    extended the rolling production deadline, but that had nothing

22    to do with simply carte blanche allowing plaintiffs to serve

23    document requests whenever they wanted with regard to, quite

24    frankly, topics that were otherwise objectionable for a variety

25    of reasons, including being beyond the scope of Rule 26.  That

1    also, by the way, is this FOIA request that Mr. Carter alluded

2    to fall under the scope of things that wouldn't be covered

3    under the scope of Rule 26 that would be producible.  That

4    issue is not ripe for your Honor at this point anyway.

5            Nor, your Honor, is the reference that Mr. Carter made

6    to the supplemental requests that were validly objected to not

7    only on the basis of timeliness but for other reasons,

8    including being beyond the scope of Rule 26, which by the way,

9    your Honor, those were served almost a year ago, validly

10   objected to almost a year ago, and we never heard, before the

11   context of preparing for this hearing, any word from plaintiff

12   making any mention -- we simply never heard from them after

13   sending a letter upon receipt of their supplemental requests

14   and following up with formal objections, we never heard a

15   single word if them back on those, which, with all due respect,

16   indicates to me Dubai Bank and the other defendants completed

17   their production in August of 2012.  It's simply more of a

18   fishing expedition.  They're not pleased at this point with

19   what they found within the production, they're simply wanting

20   to reopen the possibility to go for more and more and getting

21   increasingly further away from the actual substance or relevant

22   issues in this case.

23           So we ask that any order that you issue today clarify

24   that following discovery for those merits defendants who have

25   been actively engaged in discovery be limited to things that

D6STTERC                    Conference

1    are tied to valid motions to compel, follow up in connection

2    with motions to compel, and not simply opening it up for new

3    avenues of inquiry ten years into this case.

4              THE COURT:  Mr. Carter.

5              MR. CARTER:  Your Honor, it's a bit of an abstraction.

6    There's an idea of Pandora's box that is completely invented

7    for the purposes of making the argument.  The fact of the

8    matter is that we don't have documents from many of the

9    defendants.  They acknowledged that we don't have their

10   documents.  And it's really impossible to do a follow-up

11   discovery until we get the documents from really everyone

12   because there's interrelationships here.

13             So this has to be a two-way street.  There has to be

14   complete productions that we can go through making an

15   assessment of what is missing, maybe what has been withheld

16   from one party and we suddenly get a signal about from another

17   party.  We're not trying to prejudge the motion to compel as to

18   Dubai Islamic Bank.  The fact of the matter is that we have

19   been very active in targeting defendants sequentially in a way

20   that we thought made sense and wouldn't overburden the Court

21   all the once with 6,000 motions to compel.  And we're moving

22   through that process and we'll continue to do so.  But I think

23   the follow-up discovery order has always been there and we're

24   just intending to comply with it.

25             THE COURT:  I don't think this is something I can deal

D6STTERC                    Conference

 1    with in the abstract in the way that you've suggested.  I think

 2    there have to be concrete examples.  And the discussion that

 3    there may be an issue that becomes a non-issue or may become an

 4    issue, that takes a lot of my time.  But beyond what I said

 5    previously, I don't know that I can provide greater guidance to

 6    either side at this point in time.

 7            MS. BERGOFFEN:  Your Honor, one thing, recognizing

 8    that I think there are two separate issues, and clearly we have

 9    to deal with motions to compel regarding standing discovery

10    requests, what I'm trying to avoid is receiving in the next

11    couple of weeks a hundred more document requests dealing with

12    all sorts of new avenues that we would have to put in

13    objections and burden the Court with.  I think there might be

14    some sort of middle ground where they would be tied to valid

15    motions to compel.

16            THE COURT:  Unless I missed something in what

17    Mr. Carter is saying, it doesn't sound like you're going to be

18    getting a slew of requests in the next few weeks, because in

19    part he was saying it's contingent upon receiving documents

20    from the defendants so he can have a greater understanding of

21    what else he should be asking for.

22            And am I misunderstanding what you were saying?

23            MR. CARTER:  You're not.  And the other possibility

24    that we know we're likely to get information in response to

25    FOIA soon that could be relevant, but there's not some grand

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D6STTERC                    Conference

1    set of document requests in the works on our end at all.

2              THE COURT:  Let's move on to the issue of depositions.

3    I have read both sides' submissions.  My view is that if a

4    defendant wants to take a deposition before document discovery

5    is complete, I don't see a reason why that shouldn't be

6    allowed.  But they proceed at their own peril and are unlikely

7    to get a second bite at the apple if, at the end of the

8    document discovery period, there are additional documents they

9    wish they had earlier and would like to question about.

10             MR. CARTER:  Your Honor, I think a good bit of our

11   concern relates to, for instance, third-party witnesses, former

12   government officials, if subpoenas suddenly go out to people --

13             THE COURT:  I thought we were focusing on parties.

14   Are there third parties that defendants contemplate deposing at

15   this point?

16             MS. BERGOFFEN:  There are, your Honor.

17             THE COURT:  Tell me why and who.

18             MS. BERGOFFEN:  Your Honor, plaintiffs have listed in

19   their 26(a) disclosures dozens of individuals, including

20   several current and former government officials from various

21   agencies, including the State Department, the CIA and the like.

22             Your Honor, if I may note, the process of taking these

23   depositions will -- we anticipate that there's a potential for

24   those agencies to try to pose (2)(a) type of requirements, and

25   it will be a long and drawn-out process, potentially.  We need

D6STTERC                          Conference

1    to be in a position, once we get through plaintiffs' most

2    recent production, to move forward in taking those depositions.

3         THE COURT:  Given the nature of what you're inquiring

4    about, I would be flabbergasted if there weren't objections as

5    to the present and former government officials.  I would be

6    somewhat surprised if there were areas that you're allowed to

7    inquire at the end of the process in any event.  But since

8    there's likely to be a convoluted process of getting to the

9    government saying what it is that can be inquired about, I'm

10   not sure I see a harm in allowing that process to go forward at

11   the same time as document discovery.

12        MR. CARTER:  Your Honor, if I may, part of the problem

13   and part of the reason we ended up in our position is because

14   when we had our meet and confer and the deposition issue was

15   raised, we asked:  Who do you intend to depose?  What's the

16   plan?  And were told we're not going to disclose our deposition

17   strategy at this point.  So we were left in a complete vacuum

18   without an ability to appreciate whether this is a problem or

19   not.  Personally, I haven't conferred with everyone about this

20   because we're just hearing who is it now.  I don't think it's a

21   problem to initiate that process.  However, we do know that for

22   certain of these witnesses, the very agencies where they worked

23   are set in the relatively near future to release information in

24   response to FOIA.  So this a perfect example of where a

25   dialogue might be helpful with regard to a specific individuals

1    to try and make sure we have the documents when we go in there.

2           THE COURT:  Well, the start of the process is a notice

3    of deposition being served.  So as the process unfolds, you'll

4    certainly know which government officials or former officials

5    they're seeking to depose.  And if it impacts on FOIA requests,

6    you can have that discussion as you move forward.  But as just

7    in broad brush strokes I'm not going to say that depositions

8    cannot be taken as to party witnesses, understanding that there

9    may be not a second bite at the apple, and in particular to

10   these non-party present and former government officials where

11   there's likely to be a long road to go down before anybody can

12   actually take such deposition.

13          Is there something that you wanted to add?

14          MR. HAEFELE:  I'm unclear, your Honor.  When you say

15   the depositions of the party witnesses, I wasn't clear about

16   what your ruling was with regard to that.

17          THE COURT:  Well, in the broadest terms I'm not going

18   to say that at any point from now forward either side cannot

19   notice the deposition of the other side either as to an

20   organizational witness or as to an individual.  But what I said

21   earlier was if those depositions are taken before the document

22   discovery period is over, I will not look kindly upon a request

23   to continue the deposition, because if on the penultimate day

24   of the document discovery period you got some juicy documents

25   from the plaintiffs that you wished you had asked about, that

1    would be too bad, I would not allow a second deposition.  That

2    obviously runs both ways.

3        MR. HAEFELE:  That raises two concerns on my part,

4    your Honor, number one is just recalling that we're still --

5    recalling and emphasizing we're still in liability phase only,

6    not damages.  And I just wanted make sure that's clear.

7        THE COURT:  Sure.

8        MR. HAEFELE:  Because I imagine that will be something

9    that defendants would be interested in deposing at least the

10   Burnett plaintiffs and the other individual plaintiffs.

11       And the other issue, your Honor, is it still seems to

12   touch on the fact that many of the documents have not been

13   produced, and when a witness is deposed there very well may be

14   a number of documents in the defendants' possession relative to

15   those witnesses, and that witness's deposition has been done

16   already.

17       THE COURT:  Well, they're not going to be able use a

18   document that they haven't produced to you.  And I understand

19   the concern that the witness might be sandbagged, but the

20   witness presumably is only capable of testifying about that

21   which he or she recalls, and so it's hard to see how that

22   prejudices truly an individual being deposed.

23       As to the extent that it applies, to the extent that

24   there are organizational witnesses being deposed pursuant to

25   Rule 30(b)(6), I suppose that is more of a concern.  But again,

1    I think we'll have to deal with that in concrete examples

2    rather than an abstraction

3         MR. HAEFELE:  What's running through my mind is that

4    the abstract and concrete is not something that I'm able to

5    give good examples about when I say this.  The circumstance I'm

6    contemplating is something where the defendants, for example,

7    notice a deposition of a third-party witness, have documents in

8    their possession that they haven't produced, do the deposition,

9    and then we get the documents and the plaintiffs want to ask

10   more questions based on those documents of that particular

11   witness.

12        THE COURT:  Well, that would not have been you jumping

13   the gun, it would have been them jumping the gun.  And were

14   that circumstance to arise, I think I would be sympathetic to

15   your concern.  I think it really would be more where the person

16   noticing the deposition then seeks a second bite at the apple.

17   That's all I was talking about.

18        MR. HAEFELE:  Thank you.

19        THE COURT:  As to the schedule of sovereign immunity

20   defense motions and the issue of who ought to be setting the

21   schedule, when I first read the letters my impression was that

22   that certainly falls within the scope of my general pretrial

23   referral from Judge Daniels.  Frankly, to see whether I was

24   missing anything in that regard, I spoke to him this morning,

25   and I think it's safe to say we're both on the same page as to

1   that.

2           But in terms of the procedural context, I think both

3   of us are a little confused.  Judge Daniels had set a schedule

4   along the way for motions to dismiss.  It's not clear to him or

5   me why there are additional motions potentially coming before

6   him now not in the context of summary judgment down the road.

7   I understand somebody who is claiming sovereign immunity would

8   not want to go through discovery before filing a motion, but

9   it's not clear which defendants we're talking about or why the

10  motions are being filed now rather than some time ago.

11          Mr. Kabat.

12          MR. KABAT:  I'll speak to that.  When we represented

13  sovereign individuals and we filed our motions to dismiss, we

14  had both 12(b)(1) sovereign immunity and personal jurisdiction

15  claims.  Now moving forward here in 2010, shortly before Judge

16  Daniels issued his decision in the summer of 2010, the Supreme

17  Court came out with a decision called Samantar,

18  S-A-M-A-N-T-A-R, and the Supreme Court held that the Foreign

19  Sovereign Immunities Act did not apply to individual defendants

20  who instead would have to revert to the old common law

21  immunity.  And both we and the plaintiffs submitted

22  supplemental letters to Judge Daniels about that decision, but

23  within a month Judge Daniels issued his two decisions and he

24  only decided the personal jurisdiction defense against those

25  individual who also had the lack of subject matter

D6STTERC                    Conference

1   jurisdiction.

2          In our Second Circuit brief we pointed out that our

3   clients also have subject matter jurisdiction for failure to

4   state a claim, and the Second Circuit did not address those

5   other defenses.  And under Rule 12, I believe it's 12(h), a

6   jurisdictional defense can always be renewed, it is not waived,

7   it is not lost by the fact that part of the case was remanded.

8   And so we submit that those defendants have the right under

9   12(h) to renew their motion to dismiss for lack of subject

10  matter jurisdiction invoking the common law sovereign immunity.

11  And the contours of that are somewhat similar to the procedure

12  for sovereign immunity.  And I would note that there are

13  already two decisions out of this Court after <u>Samantar</u> that

14  applied the common law, so we already have fairly recent case

15  law on point.

16         A final observation I want to make is that the

17  government of Saudi Arabia ultimately makes the call to who

18  will be invoking sovereign immunity, and we are in discussions

19  with Michael Kellogg, the attorney for the kingdom, and we hope

20  to have a proposal ready to share with plaintiffs and Judge

21  Daniels at the July 16 conference as to exactly who will be

22  going forward with the renewed Rule 12(b)(1) motion.

23         MR. CARTER:  Your Honor, I guess a couple of problems.

24  We're not conceding that these defendants have preserved common

25  law immunity defenses at this time.  They raised FSIA defenses.

D6STTERC                    Conference

They didn't have any right to remedies available under that
statute.  The Supreme Court made that clear.  Some courts have
since questioned whether a defendant who fails to raise a
common law claim maybe has in fact waived it.

        But putting that aside for a moment, I think the issue
here is sort of twofold, what the track should be for any
potential common law immunity and the process should be, and
then second, whether or not the jurisdictional discovery that
was clearly directed to go forward by the Second Circuit should
happen along a parallel track.  With regard to that latter
issue, it seems to us quite clear the Second Circuit issued a
directive that the discovery proceed.  It was aware from the
briefing that these defendants had an intention of raising
common law immunity defenses.  The Second Circuit didn't pause
as a result of that indication in directing that discovery go
forward.  Were we to go down a path of litigating common law
immunity while discovery was stayed, we risk having ourselves
up on appeal, two, three times, potentially, and that doesn't
make sense.

        In addition, it's quite likely that certain of the
discovery for personal jurisdiction would inform the common law
immunity issues.  I don't want to sort of litigate the
substance of those at this point, but it may very well save us
quite a bit of time to do that.

        With regard to the process, it's quite clear that the

1    State Department should be afforded an opportunity to weigh in

2    with regard to these common law immunity doctrines.  We're

3    returning essentially to the regime that was in place under the

4    pre-FSIA era.  The normal course would be either for the

5    defendants themselves to seek a statement of interest from the

6    State Department, if they were so inclined, or for the Court --

7    either to ask for it from the Court or to direct the defendants

8    to ask for it.

9          And so before we talk about a briefing schedule, we

10   should really be talking about going to the State Department.

11   I have been involved in one case already where the State

12   Department's response to a request for a statement of interest

13   was to say that we think there are areas of discovery that need

14   to be conducted before we can weigh in and give you the view.

15   So it seems that that should happen first so we make sure that

16   we do everything efficiently and whatever record may later go

17   up is complete.

18         MR. KABAT:  Your Honor, I note that Rule 12(b)(1)

19   motions cannot be waived, and we have the absolute right to

20   bring them.  And whole purpose of immunity is not to give

21   immunity from lawsuits but also immunity from discovery.

22         THE COURT:  Well, I understand the theory, but even

23   though the defendants were relying on the FSIA and now has to

24   resort to common law immunity, there is the argument that that

25   defense has been waived.

1          Without judging the merits of that, it seems to me we

2     can't have this go on forever.  So my ruling with respect to

3     what Mr. Carter raises is going to be that discovery in those

4     narrow areas can go forward pending the motion practice.  If

5     you want to take that up with Judge Daniels by way of

6     objection, you certainly can.  I understand why you might, but

7     that's going to be my ruling.

8          In terms of the schedule for the motions, what are you

9     proposing?

10         MR. KABAT:  We haven't actually discussed it.  Maybe

11    one month for the motion and one month for the opposition and

12    two or three weeks for the reply.

13         THE COURT:  Well, maybe what I simply ought to do -- I

14    understand plaintiffs take the view that this is something that

15    Judge Daniels should deal with, and I think it's safe to say

16    that he has a different view.  But why don't I simply say that

17    the two sides should confer because there are a number of

18    issues, as you understand, Mr. Carter, and submit a proposal to

19    me, either a single proposal, or like the letter that I

20    received before this conference, something that sets out each

21    side's position.  And while we're coming up on the holidays,

22    say within two weeks.  OK?

23         MR. CARTER:  That's fine, your Honor.

24         THE COURT:  As to the FOIA documents that initially

25    were listed on the privilege log and now have been withdrawn

D6STTERC                        Conference

1    because the plaintiffs conclude that they are not relevant, I'm

2    not sure why the mere fact that they were listed on the

3    privilege log suggests somehow that they're fair game if after

4    listing them the plaintiffs conclude otherwise.  Which is not

5    to say that at a deposition there couldn't be inquiry into the

6    reasoning behind that, and if need be, an application to the

7    Court.  But if somebody mistakenly lists something on a

8    privilege log, and it's not -- I will use the word "relevant,"

9    but it's not responsive to a request, then it seems to me

10   there's no particular reason why it should be produced.

11           Does anybody have anything they want to say in that

12   regard?

13           MS. BERGOFFEN:  The Dubai Islamic Bank doesn't have

14   any position.

15           MR. MOHAMMEDI:  As long as it's there by mistake it's

16   fine.  If they just decide they're not relevant, then that's an

17   issue.

18           MR. HAEFELE:  Your Honor, they shouldn't have been put

19   on the privilege log in the first place.  That's why we

20   withdrew them from on the privilege log.  And them not being on

21   the privilege log now, it seems to me that they don't need to

22   be produced.  The same way as the bank documents, they have

23   been withdrawn from the privilege log and they're not being

24   produced.  Honestly, I think if we produced them they would be

25   like:  Why are you flooding us with this stuff?  It means

D6STTERC                    Conference

```
 1   nothing.

 2           THE COURT:  There's the Hoglan and maybe the Havlish

 3   plaintiffs' request to amend the complaint.

 4           MR. FLEMING:  Yes, your Honor.

 5           THE COURT:  You're Mr. Fleming?

 6           MR. FLEMING:  Yes, your Honor.  We're here today with

 7   respect to the Harlan case simply to -- we filed two motions

 8   that are pending.  The first is a motion for leave to amend,

 9   which added a number of plaintiffs, and then we filed a second

10   motion simply to supplement that because there was a slight

11   error in how one of the plaintiffs was described in terms of

12   both the claims themselves and -- her claim herself as well as

13   the estate that she was representing.  And so we filed those

14   and just seeking to -- hoping for an order to be able to amend

15   it.  And we also --

16           THE COURT:  Your letter describes this as a

17   technicality failing which you would simply institute a new

18   action.  But would we have statute of limitations problems?

19           MR. FLEMING:  We would, and because of that we did

20   file -- actually on the 60th day after the Havlish judgment was

21   entered we did go ahead and file the complaint in sort of an

22   abundance of caution trying to cover all our bases.  So there

23   is that concern, yes.  Because the National Defense

24   Authorization Act explicitly authorized filing cases that are

25   related to a timely case, which Havlish was, we think there is
```

1  no statute of limitations issue on that basis.  Of course, if

2  the defendants were to raise that as a statutory -- as an

3  affirmative defense, they might make an argument, but we think

4  it's pretty clear that the National Defense Authorization Act

5  authorizes filing of the case within 60 days after the final

6  judgment in Havlish.

7          THE COURT:  And I take it by virtue of who it is that

8  you're seeking to sue, I think there's no opposition to the

9  motion, is that correct?

10         MR. FLEMING:  There is no opposition to the motion, to

11 either motion, I should say.  As I say, the second motion is

12 only a technicality, really just a very --

13         THE COURT:  So both relate to Hoglan, the second

14 motion corrects an error in the first motion.

15         MR. FLEMING:  Yes, your Honor.

16         THE COURT:  And since there's no opposition, I see no

17 reason not to grant those, both of those motions.

18         MR. FLEMING:  When the Court does enter those, we will

19 be moving directly to the service phase.  We've got that ready

20 to go, the translations are done, and we will then be filing

21 also a lis pendens motion to follow that.

22         THE COURT:  You've got two separate orders.  Does it

23 make sense for this to be combined into one order?

24         MR. FLEMING:  We certainly could do that and deliver

25 it to your chambers.

D6STTERC                      Conference

1      THE COURT:  Why don't do you that.  And as soon as I

2  receive it, I will sign it.

3      MR. FLEMING:  Thank you.  Your Honor, just want to

4  point out with respect to Havlish, a couple of small matters,

5  one is that we just wanted -- we have a lis pendens motion

6  pending there since March 30, 2012.  We supplemented that in

7  November of 2012.

8      THE COURT:  That's pending before Judge Daniels?

9      MR. FLEMING:  That's correct.  We are anticipating a

10  notification from the State Department of the final service,

11  completion of service through the diplomatic process.  When

12  that happens, which we are really hoping that will happen

13  within 10 to 20 days from now, based on what we understand has

14  already occurred, we will immediately be filing our motion for

15  a 1610(c) order.  And we are respectfully requesting as

16  expeditious consideration of that as possible because

17  enforcement proceedings are also commenced and are well

18  advanced.  So it would be very helpful for us to get the

19  1610(c) order rapidly and appreciate that.

20      THE COURT:  I will let Judge Daniels know that that's

21  an issue.

22      MR. FLEMING:  One last thing, very minor, I didn't

23  think I would bring it up, but I realized Mr. McCoy here who is

24  admitted in the Hoglan case pro hac vice and receiving

25  everything in Havlish as well.  Apparently you have not

1    received the pro hac vice order in Havlish, and since he had

2    his shoulder to the wheel on the 1610(c) matter, I was hoping

3    we could get that signed so he could put his name on it.

4            THE COURT:  Every time I try to open the docket sheet

5    in this case my computer overheats, so if you let my chambers

6    know the ECF number we'll deal with that.

7            MR. FLEMING:  Thank you, your Honor.

8            MR. McCOY:  Thank you, your Honor.

9            MR. FLEMING:  That's all we had.

10           THE COURT:  OK.  There was also the plaintiffs'

11   request that defendants should be required to certify the

12   completeness of their productions and that they have undertaken

13   comprehensive searches, and the defendants' opposition to that,

14   but request that if I do order it, it run both ways.  Obviously

15   if I were to order it I would require that it run both ways,

16   but since the federal rules require that there be reasonable

17   searches undertaken, I'm not sure why I'm ordering something

18   that is an obligation to begin with.

19           MR. CARTER:  Your Honor, I think given the history,

20   and there have been a number of occasions in which a defendant

21   came to the Court and affirmatively stated all the responsive

22   documents had been produced and that it was done, and it

23   subsequently turned out that was retracted as a statement.  So

24   we're looking for some bench mark when some defendant would say

25   we're done, we produced everything and that's the end of it and

1    we completed our search.

2         MR. KABAT:  Your Honor, under Rule 26, any party,

3    plaintiff or defendant, always has the right to supplement the

4    production with discovery of evidence or evidence relating to

5    expert witness issues.

6         THE COURT:  Well, Rule 26(g)(1) says every discovery

7    request, response, et cetera, must be signed by one attorney of

8    record who then is certifying that to the best of that person's

9    knowledge, information and belief, after a reasonable inquiry,

10   disclosure that issue is complete as of the time made, with

11   respect to a discovery request, response, objection consistent

12   with the rules or non-frivolous argument to extend them.  I'm

13   paraphrasing, obviously.  It really doesn't speak directly to

14   the issue that Mr. Carter was raising.

15        There's another section.

16        MS. BERGOFFEN:  Rule 26(e).

17        THE COURT:  I knew there were two.  That deals with

18   supplementation.

19        MS. BERGOFFEN:  That's what we're trying to avoid,

20   your Honor, is some certification that plaintiffs want to us

21   sign that defendants have searched and we don't have any more

22   documents that we could ever produce, and it's simply at odds

23   for the rule that allows for supplementation.

24        THE COURT:  I think I'm not going to require that at

25   the present time.  As we get closer to the end of the six-month

D6STTERC                    Conference

1   period I'm willing to reconsider that, but for the moment I'm

2   not going to require that.

3           Any other issues that we ought to be taking up today?

4           MR. KABAT:  We have a status conference with Judge

5   Daniels on July 16, and I wonder whether it makes sense to set

6   a discovery conference, just a place holder, maybe in early

7   August.  Maybe we can do that as part of our two-week report

8   that Mr. Carter and I will be making, maybe we could include

9   our available proposed dates.

10          MR. CARTER:  I think that makes sense, your Honor.

11          THE COURT:  Yeah, I agree.

12          Anything further?

13          I do note that Judge Daniels' chambers I think will,

14  as he has in the past, be reaching out to both sides shortly to

15  get some sort of heads up as to what issues might be raised

16  with him on July 16 conference, if it's held.

17          MR. CARTER:  Correct, your Honor.  There was one other

18  issue that we had intended to raise.  It related to some

19  concerns we had about the supplemental information that

20  defendant Jelaidan submitted related to the Bank of Austria,

21  but given that Mr. McMahon is not on the line, I will send your

22  Honor a letter.

23          THE COURT:  Fair enough.

24          Thank you all.  Have a good holiday.

25                              o0o

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300