# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)

*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001   ) No. 03 MDL 1570 (GBD/FM)

)

_____)

This document relates to:

    FEDERAL INSURANCE CO*., et al.* v. AL QAIDA*, et al.*,
        Case No. 03-CV-6978.

### Memorandum of Law in Support of
### Defendant Dr. Abdul Rahman Al-Swailem's
### Renewed Motion to Dismiss

Lynne Bernabei  (LB2489)
Alan R. Kabat  (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942
*Counsel for Dr. Abdul Rahman Al-Swailem*

DATED:  August 29, 2013

**Table of Contents**

I.      Introduction..................................................................................................... 1

II.     Factual and Procedural Background. .............................................................. 1

    A.      Dr. Al-Swailem's Status as a Sovereign Official.................................. 1

    B.      Procedural History................................................................................. 5

    C.      Plaintiffs' Allegations as to Dr. Al-Swailem. ...................................... 7

III.    Standard of Review....................................................................................... 10

IV.     Argument. ..................................................................................................... 10

    A.      Common-Law Sovereign Immunity Bars Plaintiffs' Claims............... 10

    B.      Alternatively, Dismissal Is Required under Rules 12(b)(7) and 19. ............. 18

V.      CONCLUSION............................................................................................. 19

**Table of Authorities**

**Cases**

*Burnett v. Al Baraka Inv. & Devel. Corp.*,
　　274 F. Supp. 2d 86 (D.D.C. 2003) …………………………………………….……. 8

*Cuoco v. U.S. Bureau of Prisons*,
　　No. 98 Civ. 9009 (WHP), 2003 WL 22203727 (S.D.N.Y. Sept. 22, 2003)　………….15

*Daisley v. Riggs Bank, N.A.*,
　　372 F. Supp. 2d 61 (D.D.C. 2005) …………………………………………….... 15

*Federal Insurance Co. v. Richard I. Rubin & Co.*,
　　12 F.3d 1270 (3d Cir. 1993)…..………………………….………………………17

*Greenspan v. Crosbie*, No. 74 Civ. 4734 (GLG),
　　1976 WL 841 (S.D.N.Y. Nov. 23, 1976) ……………………………………… 13

*Heaney v. Government of Spain*,
　　445 F.2d 501 (2d Cir. 1971) ……………………………………………... 11-13

*Herbage v. Meese*,
　　747 F. Supp. 60 (D.D.C. 1990),
　　*aff'd* 946 F.2d 1564 (D.C. Cir. 1991) (*per curiam*) ……………………….... 15, 16

*In re Terrorist Attacks on Sept. 11, 2001*,
　　718 F. Supp. 2d 456 (S.D.N.Y. 2010) …………………………………………... 6

*In re Terrorist Attacks on Sept. 11, 2001*,
　　740 F. Supp. 2d 494 (S.D.N.Y. 2010) …………………………………………... 8

*In re Terrorist Attacks on Sept. 11, 2001 (Asat Trust Reg., et al.)*,
　　714 F.3d 659 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013) …………….. 6

*In re Terrorist Attacks on Sept. 11, 2001 (Saudi Joint Relief Committee, et al.)*,
　　714 F.3d 109 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013) ………… 6, 14

*Kline v. Kaneko*,
　　685 F. Supp. 386 (S.D.N.Y. 1988) …………………………………………...14

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ……………………………………………… 13-14

*Li v. Aponte*,
    No. 05 Civ. 6237 (NRB), 2008 WL 4308127 (S.D.N.Y. Sept. 16, 2008)……………15

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009) ………………………………………………………… 12

*Republic of the Philippines v. Marcos*,
    806 F.2d 344 (2d Cir. 1986) …………………………………………………… 17

*Republic of the Philippines v. Pimentel*,
    553 U.S. 851 (2008) ………………………………………………………... 10, 18

*Robinson v. Government of Malaysia*,
    269 F.3d 133 (2d Cir. 2001) …………………………………………………… 17

*Samantar v. Yousuf*,
    560 U.S. 305, 130 S. Ct. 2278 (2010)…………………………………..5, 10-11, 13, 18

*Underhill v. Hernandez*,
    168 U.S. 250 (1897) …………………………………………………………… 12

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983) ………………………………………………………... 11, 16

**Statutes and Rules**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* (FSIA) ……………… 5

Rule 12(b)(1), Fed. R. Civ. P. ……………………………………………………… 1, 10

Rule 12(b)(7), Fed. R. Civ. P. ……………………………………………………1, 10, 18

Rule 12(h)(2), Fed. R. Civ. P. …………………………………………………………7

Rule 12(h)(3), Fed. R. Civ. P. ……………………………………………………… 1, 7, 10

Rule 19, Fed. R. Civ. P. ………………………………………………………....1, 10, 18-19

**Court Filings by the U.S. Government**

*Chuidian v. Philippine Nat'l Bank*, Statement of Interest of the U.S.,
No. 86-2255-RSWL (Doc. No. 255) (C.D. Cal. Mar. 21, 1988) ……………………………13

*Federal Ins. Co. v. Kingdom of Saudi Arabia*, Brief for the U.S. as Amicus Curiae,
No. 08-640, 2009 WL 1539068 (U.S. May 29, 2009) …………………………………………13

*Kensington Int'l Ltd. v. Itoua*, U.S. Dep't of Justice Letter Br.,
Nos. 06-1763 & 06-2216 (2d Cir. filed May 23, 2007) …………………………………12, 13

*Matar v. Dichter*, Brief for the United States of America as Amicus Curiae
in Support of Affirmance, No. 07-2579-cv (2d Cir. filed Dec. 19, 2007)…….......12-13, 15-17

*Matar v. Dichter*, U.S. Statement of Interest,
No. 1:05-cv-10270-WHP (ECF No. 36) (S.D.N.Y. Nov. 17, 2006) ……………………13, 17

**Other Sources**

Curtis A. Bradley and Laurence R. Helfer, "International Law and the U.S.
Common Law of Foreign Official Immunity," 2010 *Sup. Ct. Rev.* 213 (2011) ………. 12, 16

Harold H. Koh, "Foreign Official Immunity after *Samantar*: A United States
Government Perspective," 44 *Vanderbilt J. Transnational L.* 1141 (2011) …………... 18-19

**Acronyms**

FSIA   Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*

SJRC   Saudi Joint Relief Committee

SRC    Saudi Red Crescent Society

## I.        Introduction.

Dr. Abdul Rahman Al-Swailem, the former Deputy Minister of Health and the former

President of both the Saudi Red Crescent Society ("SRC") and the Saudi Joint Relief Committee

("SJRC") is entitled to common law sovereign immunity, and must be dismissed from this case.

Dr. Al-Swailem was, at all relevant times, a high-ranking official of the Saudi government.  He

directed the SRC and the SJRC, both of which have been held by this Court and the Second

Circuit to be agencies or instrumentalities of the Saudi government.  The allegations as to

Dr.  Al-Swailem are based entirely on acts that he took in his official capacity, on behalf of the

Saudi government, which has properly asserted immunity on his behalf.  This Court must dismiss

Dr. Al-Swailem, pursuant to Rules 12(b)(1) and 12(h)(3), for lack of subject matter jurisdiction.

Alternatively, this Court must dismiss him, pursuant to Rules 12(b)(7) and 19(a)(1)(B),

since the SRC and SJRC are required parties or real parties in interest, yet they have already been

held to be immune under the Foreign Sovereign Immunities Act (FSIA).

## II.       Factual and Procedural Background.

### A.        Dr. Al-Swailem's Status as a Sovereign Official.

Dr. Abdul Rahman Al-Swailem is a physician who has lived in Saudi Arabia almost his

entire life.  He has always been a citizen of the Kingdom of Saudi Arabia.  *See* Declaration of

Abdul Rahman Al-Swailem ("Al-Swailem Decl.") at ¶ 3 (Apr. 2, 2004) (attached hereto as

Exhibit 1).  In 1989, Dr. Al-Swailem was appointed by the Saudi Council of Ministers to the

position of Deputy Minister for Executive Affairs, Ministry of Health.  *Id.* at ¶ 6.  The Saudi

Council of Ministers, which was then headed by King Fahd bin Abdulaziz al Saud and his

deputies, is the highest decision-making body in the Saudi government.  *Id.*  As Deputy Minister,

Dr. Al-Swailem was in charge of all executive and technical affairs, including issues relating to

medicine, hospitals, preventive medical care, and the delivery of health care services.  He served in that position until 1998.  *Id.* at ¶ 7.  In November 1998, King Fahd issued a Royal order that appointed Dr. Al-Swailem to serve as President of the Saudi Red Crescent Society (SRC).  He served in that position through 2005, *id.* at ¶ 8, when the Saudi government appointed him to the Majlis al-Shoura, which is the Saudi equivalent of a Parliament.

As set forth below, both the SRC and the SJRC are agencies or instrumentalities of the Kingdom of Saudi Arabia.

The Saudi Red Crescent Society was established by Royal Decree in the 1960s.  *See* Declaration of Abdul Rahman Al-Swailem ("SRC Decl.") at ¶ 3 (Apr. 2, 2004) (attached hereto as Exhibit 2).  It is member No. 91 of the International Federation of Red Cross and Red Crescent Societies, which is the international consortium of national humanitarian medical societies headquartered in Geneva, Switzerland.  *Id.*

The Kingdom of Saudi Arabia sponsors and supervises the SRC, and appoints its directors.  *Id.* at ¶ 4.  The SRC's functions include supporting humanitarian operations in other countries, and providing emergency medical services and related programs within Saudi Arabia.  *Id.*  The government funds the SRC's operations within Saudi Arabia so that it may operate its nationwide ambulance center network, the health clinics for pilgrims during the *Hajj* pilgrimage season, the teaching of first aid and road safety courses, the provision of road accident emergency services, and the development of disaster preparedness plans.  *Id.*, Att. 1-2.  The SRC assumed responsibility for these operations within the Kingdom, and has functioned as an agency or instrumentality of the Kingdom of Saudi Arabia since its formation.

In 1999, the Kingdom of Saudi Arabia established the SJRC in response to the catastrophic humanitarian crisis triggered by the civil war in the former Republic of Yugoslavia,

and the systematic violence against ethnic Albanians in Kosovo orchestrated by former Serbian president Slobodan Milosevic.  *See* Declaration of Abdul Rahman Al-Swailem ("SJRC Dec.") ¶ 5 (Jan. 17, 2005) (attached hereto as Exhibit 3).  The Kingdom of Saudi Arabia appointed Dr. Al-Swailem to serve as the President of the SJRC in 1999.  *Id.* at ¶ 1 & Att. A.  As the crisis in Kosovo unfolded, the Kingdom of Saudi Arabia concluded that a single governmental entity was necessary to coordinate and distribute aid to Albanian refugees in Kosovo on behalf of the Kingdom and its citizens.  *Id.* ¶ 4.  Accordingly, the SJRC was established pursuant to High Order No. 7/B/1863 (the "Albanian High Order") issued by HRM King Fahd bin Abdulaziz upon the recommendation of the Council of Ministers of the Kingdom of Saudi Arabia.  *Id.* ¶ 3, Ex. B. The SJRC assumed responsibility for all of the Kingdom's charitable initiatives on behalf of Albanian refugees in Kosovo, and has thus functioned as a political subdivision, agency, or instrumentality of the Kingdom of Saudi Arabia since its formation.  *Id.* ¶ 2.

The Kingdom of Saudi Arabia expanded the scope of the SJRC's mission to include relief work for victims of the ongoing hostilities in Chechnya pursuant to a second High Order (No. 7/B/12089) (the "Chechnya High Order").  *Id.* ¶ 6, Ex. C.  Through the Chechnya High Order, the Kingdom of Saudi Arabia intended that the SJRC would act in concert with other international agencies stationed in Chechnya (including the United Nations) to provide humanitarian aid to the hundreds of thousands of Muslims displaced by the war between Chechen fighters and Russia.  *Id.*  The SJRC's operations in both Kosovo and Chechnya were thus limited to charitable and humanitarian efforts, and none of the funds or other aid distributed by the SJRC was provided for "commercial" purposes.  *Id.* ¶ 4.

The Kingdom of Saudi Arabia took specific steps to ensure that the SJRC functioned as a political subdivision, agency, or instrumentality of the government.  The Albanian High Order

3

specified that the SJRC would be supervised by the Minister of the Interior of the Kingdom of

Saudi Arabia and chaired by the President of the Saudi Red Crescent Society, and further stated

that the SJRC must include high-ranking representatives from agencies of the Kingdom,

including the Ministry of Finance and National Economy, the Ministry of Defense and Aviation,

the Ministry of Information, the Ministry of Labor and Social Affairs, the Ministry of Foreign

Affairs, the Presidency of General Intelligence, and the Presidency of National Guard. *Id.* ¶ 7.

In addition, the SJRC submitted regular financial and performance reports to the Minister of the

Interior, who was then HRH Prince Nayef Bin Abdulaziz Al-Saud. *Id.* ¶ 8.

The daily operations of the SJRC's offices in Riyadh, Saudi Arabia, Pristina, Kosovo,

and Vladikavkaz and Moscow, Russia, were performed by a technical and administrative staff

consisting of employees hired directly by the SJRC and civil servants of the Kingdom of Saudi

Arabia seconded to work for the SJRC. *Id.* ¶ 9. The Kingdom of Saudi Arabia paid the salaries

and expenses for most of the civil servants seconded to work for the SJRC. *Id.* Similarly, the

Organizational Charter adopted by the SJRC expressly provided that employees seconded from

the government would be subject to the laws applicable to government civil servants. *Id.* ¶ 10,

Ex. D. Accordingly, seconded government employees of the SJRC are treated as civil servants,

rather than private hires, under Saudi law. *Id.*

The SJRC's mission was largely subsidized by the Kingdom of Saudi Arabia. *Id.* ¶ 11.

In addition, the Kingdom of Saudi Arabia routinely provided critical logistical support for the

SJRC's humanitarian efforts in Kosovo and Chechnya. *Id.* ¶ 12.

The Kingdom of Saudi Arabia, through its Ambassador to the United States, has formally

asserted sovereign immunity on behalf of Dr. Al-Swailem and has confirmed that, as head of the

SRC and SJRC, Dr. Al-Swailem acted in an official capacity on behalf of the government of

4

Saudi Arabia.  *See* Declaration of H.E. Adel A. Al-Jubeir (Aug. 27, 2013) (attached hereto as

Exhibit 4).

> **B.      Procedural History.**

Dr. Al-Swailem was initially named as a defendant in five cases consolidated in this

Court:  *Burnett I* (No. 03-cv-9849, transferred from the District of Columbia); *Burnett II* (No. 03-

cv-5738, originally filed in this Court); *Federal Insurance* (No. 03-cv-6978); *NY Marine* (No.

04-cv-6105); and *Tremsky* (No. 02-cv-7300).   After Dr. Al-Swailem filed his motion to dismiss

the *Burnett I* complaint (ECF No. 96) (Apr. 9, 2004), the *Burnett* plaintiffs dismissed him from

both that case, <u>and</u> *Burnett II*.  *See Burnett* Dismissal (ECF No. 286) (July 1, 2004).  Hence, Dr.

Al-Swailem remained a defendant in only three lawsuits – *Federal Insurance* (No. 03-cv-6978),

*NY Marine* (No. 04-cv-6105), and *Tremsky* (No. 02-cv-7300).   His motion to dismiss those three

complaints was consolidated with that of the Saudi Red Crescent Society, which was named a

defendant in those and several other complaints.  *See* Motion (ECF Nos. 1174-1176) (Sept. 6,

2005); Reply Br. (ECF No. 1270) (Sept. 26, 2005).

Dr. Al-Swailem's first motion to dismiss argued that dismissal was warranted on three

independent grounds:  (1) lack of subject matter jurisdiction under Rule 12(b)(1), due to

sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et*

*seq.* (FSIA); (2) lack of personal jurisdiction under Rule 12(b)(2); and (3) failure to state a claim

under Rule 12(b)(6).

While his first motion to dismiss was pending, the Supreme Court, in *Samantar v. Yousuf*,

560 U.S. 305, 130 S. Ct. 2278 (2010), held that the FSIA does not cover individual defendants,

since its scope is limited to foreign states, together with their agencies and instrumentalities.  The

Supreme Court thus abrogated a decision of the Second Circuit and several decisions by other

district judges in this court, who had applied the FSIA to individual defendants.  As a result, both plaintiffs and Dr. Al-Swailem (together with several other individual defendants who had also asserted immunity under the FSIA), submitted letter briefs to this Court regarding the impact of the *Samantar* decision; Dr. Al-Swailem explained that this Court could consider his Rule 12(b)(1) motion by applying the alternative, common law sovereign immunity defense.  *See* Def. Letters (June 4 & 16, 2010); Pls. Letters (June 3 & 15, 2010).

On June 17, 2010, this Court dismissed Dr. Al-Swailem, the SRC, the SJRC, and numerous other defendants.  *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456 (S.D.N.Y. 2010).  This Court recognized that the "government official defendants are now asserting common-law immunity" and that those defendants argued "that the claims based on alleged acts taken in their official capacity must be dismissed because they are in essence claims against their respective governments, which are immune from suit under the FSIA."  *Id.* at 467. However, this Court instead dismissed those defendants for lack of personal jurisdiction: "Although this Court has thoroughly examined that issue, the issue of immunity need not, however, be resolved," due to their "meritorious" personal jurisdiction defenses.  *Id.*

The Second Circuit upheld the dismissal of the SRC and the SJRC as agencies or instrumentalities under the FSIA.  *In re Terrorist Attacks on Sept. 11, 2001 (Saudi Joint Relief Committee, et al.)*, 714 F.3d 109 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013).  The Second Circuit, in a separate opinion, remanded several defendants, including Dr. Al-Swailem, for discovery limited to personal jurisdiction.  *In re Terrorist Attacks on Sept. 11, 2001 (Asat Trust Reg., et al.)*, 714 F.3d 659 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013).

The parties then submitted proposals to this Court for briefing Dr. Al-Swailem's renewed motion to dismiss under Rule 12(b)(1), for lack of subject matter jurisdiction based upon the

common law sovereign immunity applicable to individual foreign officers.  *See* Joint Letter (July

12, 2013).  Dr. Al-Swailem explained that, under Supreme Court and Second Circuit precedent,

he had the right to renew his motion and that this Court did not need a submission from the State

Department regarding his immunity in order to determine whether he was entitled to sovereign

immunity.  *Id.* at 2, 8-11.  Plaintiffs, however, claimed that Dr. Al-Swailem had waived his right

to renew his motion to dismiss, and that this Court should wait for a submission from the State

Department before considering if he could file a motion to dismiss.  *Id.* at 3-7.  This Court agreed

with Dr. Al-Swailem by setting a prompt briefing schedule, thereby rejecting plaintiffs' demand

that the State Department's views were required to adjudicate the issue.  *See* Order (ECF No.

2743) (July 17, 2013).[1]

      **C.**      **Plaintiffs' Allegations as to Dr. Al-Swailem.**

      There is only one complaint remaining before this Court as to Dr. Al-Swailem – the

*Federal Insurance* First Amended Complaint (ECF No. 111) (Mar. 10, 2004; re-filed on Sept.

30, 2005).[2]  The *Federal Insurance* plaintiffs filed two RICO Statements as to Dr. Al-Swailem,

*see* RICO Statement (SRC and Dr. Al-Swailem) (ECF No. 629) (Jan. 14, 2005); Amended RICO

Statement (SRC and Dr. Al-Swailem) (ECF No. 1324) (Sept. 30, 2005), and a separate RICO

statement as to the SJRC.  *See* RICO Statement (SJRC) (ECF No. 579) (Dec. 15, 2004).

Although the RICO claims were dismissed for failure to state a claim, and that dismissal was not

---

[1] Dr. Al-Swailem reserves the right to renew his additional defenses, including lack of justiciability and failure to state a claim, which are not subject to waiver.  *See* Rule 12(h)(2), (3), Fed. R. Civ. P.

[2] The *NY Marine* plaintiffs voluntarily dismissed their complaint, pursuant to Rule 41(a), Fed. R. Civ. P., after this Court issued the first of its two 2010 decisions, so they were not in the Second Circuit appeal. *See* Stipulation of Voluntary Dismissal (ECF No. 2278) (Aug. 23, 2010).  The one plaintiff in *Tremsky* did not file a notice of appeal as to any defendant, so that the 2010 dismissal of Dr. Al-Swailem is a final judgment as to that case.

appealed, the RICO Statements support Dr. Al-Swailem's sovereign immunity defenses.[3]

Plaintiffs' First Amended Complaint only mentions Dr. Al-Swailem in a laundry list of over 240 defendants who are alleged to have "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein." *See* First Am. Compl., ¶ 66, at 37.

Since the RICO Statements discuss Dr. Al-Swailem in connection with both the SRC and the SJRC, the plaintiffs' allegations as to the status of those two entities are summarized in order to provide full context for his sovereign immunity defenses.

The First Amended Complaint specifically pled that the SRC "is an agency, instrumentality and organ of the Kingdom of Saudi Arabia." *Id.* at ¶ 191. The First Amended Complaint further pled that the "Kingdom controls and directs Saudi Red Crescent operations, appoints and terminates Saudi Red Crescent personnel, provides the Saudi Red Crescent with virtually all of its funding, determines how funds will be distributed throughout the world and otherwise stringently controls the Saudi Red Crescent's operations." *Id.* This text was repeated in plaintiffs' RICO Statement. *See* RICO Statement (SRC and Dr. Al-Swailem), at 7 (ECF No. 629) (Jan. 14, 2005). The RICO Statement further stated that Dr. Al-Swailem "is the president of the Saudi Arabian Red Crescent, and chairman of the Saudi Joint Committee for Relief [*sic*] of Kosovo and Chechnya (SJRC)." *Id.*

Plaintiffs, in their opposition to the SRC's and Dr. Al-Swailem's motions to dismiss, conceded that both defendants were sovereign defendants. *See* Pls. Opp to Mot. to Dismiss, at 8 (ECF No. 1245) (Sept. 30, 2005) ("For purposes of the sovereign immunity analysis, Plaintiffs

---

[3] *In re Terrorist Attacks*, 718 F. Supp. 2d at 494; *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 515 (S.D.N.Y. 2010). Judge Robertson held that the Burnett plaintiffs lacked standing to bring their RICO claims. *Burnett v. Al Baraka Inv. & Devel. Corp.*, 274 F. Supp. 2d 86, 100-02 (D.D.C. 2003).

concede that the SRC and Al Swailem qualify as agencies, instrumentalities or organs of the Kingdom within the meaning of the FSIA.").

The First Amended Complaint pled that the SJRC was "a body established by the Kingdom of Saudi Arabia to coordinate ostensible relief efforts among several charitable organizations" in Kosovo and Chechnya. *See* First Am. Compl., ¶ 203. The First Amended Complaint further pled that: "Throughout this time [1998 to 2000], the committee [SJRC] was under the supervision and control of Saudi Interior Minister Prince Naif Bin Abdul Aziz." *Id.* at ¶ 204. This text was repeated in plaintiffs' RICO Statement as to the SJRC. *See* RICO Statement (SJRC), at 7 (ECF No. 579) (Dec. 15, 2004).

Plaintiffs, in their opposition to the SJRC's motion to dismiss, conceded that the SJRC is "an organ of the Kingdom of Saudi Arabia" for purposes of the FSIA. *See* Pls. Opp. to Mot. to Dismiss (SJRC), at 1 (ECF No. 744) (Mar. 18, 2005).

The First Amended Complaint and the three RICO Statements did *not* plead that Dr. Al-Swailem took any acts in his personal capacity. Indeed, the RICO Statement as to the SJRC made *no* mention of him. The first RICO Statement as to the SRC and Dr. Al-Swailem mentioned him only in connection with his role as president of the SRC and chairman of the SJRC, and made the conclusory allegation that he "actively and directly participated in both organizations' sponsorship of al Qaida, and used his authority to facilitate and conceal the support provided by those organizations to al Qaida." *See* RICO Statement, at 7 (ECF No. 629) (Jan. 14, 2005).

The "Amended" RICO Statement as to the SRC and Dr. Al-Swailem identified him as the head of the SRC from 1998 to 2005, but alleged *only one* act that he took in that capacity: "as head of the SRC, al Swailem was responsible for the decision to appoint Julaidan as a Director of

the SJRC, thus placing a prominent and known al Qaida figure in a position of authority within his [*sic*] charity." *See* Am. RICO Statement, at 11 (ECF No. 1324) (Sept. 30, 2005). However, the plaintiffs' RICO Statement as to Wael Julaidan makes *no* allegation of any connection he supposedly had with either the SRC or the SJRC, and only mentions him in connection with the Rabita Trust, a non-sovereign charity. *See* RICO Statement (Muslim World League Group) (ECF No. 313) (July 16, 2004).

### III.    Standard of Review.

Under Rule 12(b)(1), Fed. R. Civ. P., a complaint must be dismissed for "lack of subject-matter jurisdiction," which includes sovereign immunity. Under Rule 12(h)(3), Fed. R. Civ. P., if "the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Alternatively, under Rule 12(b)(7) ("failure to join a party under Rule 19") and Rule 19(b), Fed. R. Civ. P., "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Thus, if the foreign state "is immune from suit under the FSIA, the district court may have to dismiss the suit, regardless of whether the official is immune or not under the common law." *Samantar*, 130 S. Ct. at 2278 (citing *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 867 (2008)).

### IV.    Argument.

### A.    Common-Law Sovereign Immunity Bars Plaintiffs' Claims.

Plaintiffs' claims against Dr. Al-Swailem must be dismissed because he is entitled to common law sovereign immunity. Plaintiffs' allegations against him are based entirely on official acts that he took in his official capacity as head of the SRC and SJRC, agencies of the government of Saudi Arabia that have themselves been held to be immune from suit. Moreover,

the Saudi government has properly asserted immunity on Dr. Al-Swailem's behalf.

     **1.**     In *Samantar v. Yousuf*, 130 S. Ct. 2278 (2010), the Supreme Court held that the FSIA "does not govern the determination of" individual foreign officials' "immunity from suit." *Id.* at 2282.  Instead, the immunity of foreign officials is governed by "foreign sovereign immunity under the common law." *Id.* at 2292.  The Court acknowledged and approved of pre-FSIA practice under which, "in the absence of recognition of the immunity by the Department of State, a district court had authority to decide for itself whether all the requisites for such immunity existed." *Id.* at 2284 (citing, *e.g.*, *Heaney v. Government of Spain*, 445 F.2d 501, 503 & n.2 (2d Cir. 1971)) (internal quotation marks omitted).  "In making that decision," the Court explained, "a district court inquired whether the ground of immunity is one which it is the established policy of the [State Department] to recognize." *Id.* (internal quotation marks omitted); *see also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487 (1983) (under pre-FSIA practice, "foreign nations did not always make requests to the State Department.  In such cases, the responsibility fell to the courts to determine whether sovereign immunity existed, generally by reference to prior State Department decisions.").

     Here, the applicable principle of common-law immunity is clear and has been recognized repeatedly in recent cases by the Department of State:  officials of foreign states are immune from suits arising out of acts performed in their official capacities.  *See*, *e.g.*, *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) ("Common law recognizes the immunity of former foreign officials.  At the time the FSIA was enacted, the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for 'acts performed in his official capacity.'") (quoting Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965)); *Heaney v. Government of Spain*, 445 F.2d 501, 504 (2d Cir. 1971) (Friendly,

C.J.); *see also Underhill v. Hernandez*, 168 U.S. 250, 252 (1897) (recognizing the principle of

"immunity of individuals from suits brought in foreign tribunals for acts done within their own

states, in the exercise of governmental authority").[4]

      The Second Circuit has recognized and applied that principle at least twice.  In *Matar*, the

Second Circuit addressed, before *Samantar*, the immunity of the former head of the Israeli

Security Agency for damages resulting from an Israeli bombing of a Gaza apartment complex.  It

concluded that, regardless of whether the FSIA applied, the individual sovereign defendant was

"immune from suit under common-law principles that pre-date, and survive, the enactment of

that statute."  563 F.3d at 14.  In that appeal, the Department of State filed an amicus brief

squarely articulating the Executive Branch's view that "foreign officials . . . enjoy immunity

from civil suit with respect to their official acts."  Br. for the United States of America as Amicus

Curiae in Support of Affirmance at 21, *Matar v. Dichter*, No. 07-2579-cv (2d Cir. filed Dec. 19,

2007) ("U.S. *Matar* Br."); *accord* U.S. Dep't of Justice Letter Br. at 3, *Kensington Int'l Ltd. v.

Itoua*, Nos. 06-1763 & 06-2216 (2d Cir. filed May 23, 2007) ("American jurisprudence has long

recognized individual officials of foreign sovereigns to be immune from civil suit with respect to

their official acts").

      The government's brief in *Matar* also explained that the immunity of foreign officials for

official acts was a "principle[] to which future courts may refer in making immunity

determinations in suits against foreign officials in which the Executive does not appear."  *See*

---

[4] *See generally* Curtis A. Bradley and Laurence R. Helfer, "International Law and the U.S. Common Law of Foreign Official Immunity," 2010 *Sup. Ct. Rev.* 213, 235 (2011) ("[A] state official is not accountable to other states for acts that he accomplishes in his official capacity and that therefore must be attributed to the state under the international law of state responsibility.  Inasmuch as conduct immunity is based on the individual's actions and not his personal status, it extends to all government officials who carry out state functions.  For the same reason, conduct immunity does not depend on whether the official is currently in office and thus applies equally to former officials.").

U.S. *Matar* Br., at 21.[5]

In *Heaney*, the Second Circuit similarly recognized that common law immunity shielded an agent of the Spanish government from suit in U.S. court. *See* 445 F.2d at 504. There, the State Department did not participate in the case. The court relied on an affidavit submitted by the Spanish Ambassador, *see id.* at 502 n.1 (reprinting excerpts), which it concluded "was more than sufficient to raise the issue of immunity," *id.* at 506 n.5; *see also Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (court should give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties") (quoting *Kline v. Kaneko*, 685 F. Supp. 386, 392 (S.D.N.Y. 1988)).

---

[5] Indeed, the Executive Branch and courts in this Circuit have recognized that the common-law immunity of individual foreign officials is even *broader* than the immunity of foreign states under the FSIA, because the FSIA's exceptions to sovereign immunity do not apply to individual foreign officials. For example, although a foreign state may be liable on a contract claim in a suit arising from its commercial activity in the United States, the individual foreign official who negotiated the contract would not be personally liable. *See Samantar*, 130 S. Ct. at 2290 (citing *Greenspan v. Crosbie*, No. 74 Civ. 4734 (GLG), 1976 WL 841, at *1 (S.D.N.Y. Nov. 23, 1976)); Brief for the U.S. as Amicus Curiae, at 5, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640, 2009 WL 1539068 (U.S. May 29, 2009) ("Significantly, even after endorsing the restrictive theory of immunity for foreign *states*, the Executive continued to recognize the immunity of foreign *officials* for their official acts in circumstances in which the state would not itself be immune.") (citing *Greenspan*); U.S. *Matar* Br., at 21 ("the Executive generally recognizes foreign officials to enjoy immunity from civil suit with respect to their official acts – even including, at least in some situations, where the state itself may lack immunity under the FSIA"); U.S. Dept. of Justice Letter Br., at 8, *Kensington Int'l Ltd. v. Itoua*, Nos. 06-1763 & 06-2216 (2d Cir. May 23, 2007) ("As reflected in *Greenspan* . . . the immunity then recognized for foreign officials acting in their official capacity did not merely match, but rather exceeded that of the state: even if the state could be sued for an official's acts . . . the official himself could not be."); U.S. Statement of Interest, at 9, *Matar v. Dichter*, No. 1:05-cv-10270-WHP (ECF No. 36) (S.D.N.Y. Nov. 17, 2006) ("Notably, in . . . *Greenspan v. Crosbie*, the immunity of individual foreign officials was recognized to be unlimited by the restrictive theory's exceptions to immunity for commercial activity – and thus broader than the immunity of the state itself."); Statement of Interest of the U.S., at 5, *Chuidian v. Philippine Nat'l Bank*, No. 86-2255-RSWL (Doc. No. 255) (C.D. Cal. Mar. 21, 1988) ("[I]n the view of the United States . . . the rationale for the FSIA's exceptions to absolute immunity . . . does not apply to an official carrying out official duties for the sovereign. Such an official, as a general matter, should not be personally liable for such acts. Rather, the general rule is that an official should be shielded from personal liability for the performance of official functions.").

**2.**     The principle recognized in the Second Circuit's decisions in *Matar* and *Heaney*, and in the United States' submissions in *Matar*, controls this case.  The accompanying declaration of Saudi Arabia's Ambassador to the United States establishes that plaintiffs' claims against Dr. Al-Swailem arise entirely from his role as an official of the government of Saudi Arabia.  *See* Ex. 4.  Here, as in *Heaney* and *Leutwyler*, the affidavit submitted to this Court is more than sufficient to establish that Dr. Al-Swailem was a government official whose acts while at the SRC and SJRC were official acts, attributable to the Saudi government.

An examination of plaintiffs' pleadings confirms that conclusion.  There is no dispute that Dr. Al-Swailem was, at all relevant times, President of the SRC and the SJRC.  *See* Part II.A, *supra*.  Plaintiffs admitted in their pleadings that Dr. Al-Swailem served the Saudi government in those capacities.  *See* RICO Statement (SRC and Dr. Al-Swailem), at 7 (ECF No. 629) (Jan. 14, 2005).  There is also no dispute that both the SRC and the SJRC are instrumentalities of the Saudi government.  *See In re Terrorist Attacks*, 714 F.3d at 114 ("The parties do not dispute that the SJRC and the SRC qualify as instrumentalities of a foreign sovereign within the meaning of the FSIA.").  Plaintiffs in fact pled that both the SJRC and the SRC were part of the Saudi government.  *See* RICO Statement (SRC and Dr. Al Swailem), at 7 (ECF No. 629) (Jan. 14, 2005); RICO Statement (SJRC), at 7 (ECF No. 579) (Dec. 15, 2004); First Am. Compl., at ¶¶ 191, 203.

Plaintiffs' allegations as to Dr. Al-Swailem are based entirely on his work as head of both the SRC and the SJRC.  Plaintiffs did not allege that he took any acts in his personal capacity; to the contrary, plaintiffs affirmatively asserted that his acts were taken in his official capacity as a government official.  Plaintiffs' submissions identify only one alleged act by Dr. Al-Swailem – the appointment of Wael Julaidan as a director of the SJRC.  *See* Am. RICO Statement (SRC and

14

Dr. Al-Swailem), at 11 (ECF No. 1324) (Sept. 30, 2005).  (In conflict with this claim, plaintiffs'

RICO statement as to Julaidan made <u>no</u> mention of any connection with the SJRC, let alone with

Dr. Al-Swailem.  *See* RICO Statement (Muslim World League Group) (ECF No. 313) (July 16,

2004).)  Even accepting this one allegation at its face value, Dr. Al-Swailem's alleged

appointment of Julaidan was plainly an official act taken on behalf of the Kingdom.[6]

This Court should enforce Dr. Al-Swailem's immunity for the additional reason that

permitting plaintiffs to sue Dr. Al-Swailem for actions taken in his official capacity, when both

this Court and the Second Circuit have determined that the SRC and the SJRC are immune under

the FSIA, would enable plaintiffs effectively to circumvent the sovereign immunity of Saudi

Arabia's instrumentalities.  *See Herbage v. Meese*, 747 F. Supp. 60, 65-67 (D.D.C. 1990)

(plaintiff improperly sued several British officials to avoid sovereign immunity of British

government), *aff'd* 946 F.2d 1564 (D.C. Cir. 1991) (*per curiam*).  The Executive Branch, in

setting forth guidelines for determining sovereign immunity, has stated that the sovereign

immunity of a foreign state cannot be undermined by suing an individual officer.  *See* U.S.

*Matar* Br. 23 ("Indeed, there is broad agreement in international law that, where a foreign state is

immune, 'the foreign state's right to immunity cannot be circumvented by suing its servants or

agents.'") (quoting *Jones v. Ministry of Interior*, [2006] UKHL 26, ¶ 10 (U.K. House of Lords)

(collecting cases)); *id.* at 24 ("Under customary international law, then, that immunity [of the

---

[6] *Cf. Li v. Aponte*, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008)
("Personnel decisions of the United States generally fall within the discretionary function exception to the
FTCA.") (collecting cases); *Cuoco v. U.S. Bureau of Prisons*, No. 98 Civ. 9009 (WHP), 2003 WL
22203727, at *3 (S.D.N.Y. Sept. 22, 2003) ("challenges to the personnel decisions of the United States
are barred by the discretionary function exception to the FTCA") (collecting cases); *see also Daisley v.
Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 82-83 (D.D.C. 2005) ("The exercise of judgment in hiring and
supervising personnel . . . is within Treasury's discretion, and, therefore, immune from suit for negligence
in the performance of such functions.").

state] cannot be circumvented by suing Dichter for the same conduct.").[7]

That plaintiffs intend to use their claims against Dr. Al-Swailem as a basis for improperly seeking discovery against both the SRC and the SJRC is confirmed by the jurisdictional discovery requests recently served on Dr. Al-Swailem.  *See* Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to Abdul Rahman Al-Swailem (Aug. 22, 2013) (attached hereto as Exhibit 5).  Those document requests – 113 in total – seek extensive discovery about the operations and activities of the SRC and the SJRC, undisputed instrumentalities of the Saudi government, about their control by the Saudi government, and their communications with the Saudi government.  *Id.*[8] Of the 113 document requests, fewer than 10 could be read to seek Dr. Al-Swailem's own documents, as opposed to official documents of the SRC and the SJRC.  The document requests improperly interfere with the sovereign immunity of the SRC and the SJRC and provide further justification for this Court to dismiss Dr. Al-Swailem, since the SRC's and SJRC's sovereign immunity cannot be circumvented by suing an individual officer.  *Herbage*, 747 F. Supp. at 65-67; U.S. *Matar* Br., at 23-24.

In addition, granting Dr. Al-Swailem's motion to dismiss serves the fundamental purposes of the doctrine of sovereign immunity recognized in decisions of the Supreme Court and the Second Circuit.  Since "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident," *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983), the courts have

---

[7] *See generally* Bradley & Helfer, *supra*, 2010 *Sup. Ct. Rev.* at 235 ("Since a state can only act through its officials, the state's immunity would be undermined if those officials could be sued for acts carried out on the state's behalf.").

[8] *See, e.g.*, Doc. Req. Nos. 2, 5-56, 60-80, 85-87, 91-111 (SRC's and SJRC's documents and activities); Nos. 6-61, 65-66, 70 (SRC's and SJRC's communications with the Saudi government and other Saudi agencies and sovereign officials); Nos. 19-21, 23-29, 71-76 (all documents relating to Dr. Al-Swailem's "tenure as an official representative of the Charities and/or Saudi Arabian government").

recognized "the rationale underlying sovereign immunity – avoiding embarrassment to our government and showing respect for a foreign state." *Republic of the Philippines v. Marcos*, 806 F.2d 344, 360 (2d Cir. 1986).

Hence, sovereign immunity – whether under the common law or under the FSIA – "'is immunity from suit, not just from liability.' Such 'immunity … is effectively lost if a case is permitted to go to trial.'" *Robinson v. Government of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)) (affirming dismissal of tort claims); *accord Federal Insurance Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993) ("we adopt the prevalent view that 'sovereign immunity is an immunity from trial and the attendant burdens of litigation' on the merits, 'and not just a defense to liability on the merits'") (quoting *Rush-Presbyterian-St. Luke's Medical Ctr. v. Hellenic Republic*, 877 F.2d 574, 575 n.2 (7th Cir. 1989)).

Finally, there is no basis for plaintiffs to argue that Dr. Al-Swailem's immunity should be denied because their claims involve alleged support for terrorism. The United States has explained in submissions to this Court and the Second Circuit that, under prevailing domestic and international law, a plaintiff's allegation that a foreign official acted unlawfully – or even violated settled international norms of conduct – does not deprive that official of immunity from suit in U.S. courts. *See* Statement of Interest of the United States of America at 23, *Matar v. Dichter*, No. 1:05-cv-10270-WHP (ECF No. 36) (S.D.N.Y. filed Nov. 17, 2006) ("Whether an act is performed in an official capacity turns on whether the act is attributable to the State, not on whether it was lawful.") (capitalization and emphasis omitted); U.S. *Matar* Br. at 21.

In sum, because this suit arises entirely from Dr. Al-Swailem's official acts attributable to the government of Saudi Arabia, he is immune from suit in this Court under the common law.

### B.    Alternatively, Dismissal Is Required under Rules 12(b)(7) and 19.

Alternatively, Rules 12(b)(7) ("failure to join a party under Rule 19") and 19 require

dismissal of the plaintiffs' claims against Dr. Al-Swailem, because the SRC and the SJRC are

required parties that cannot be joined since they are immune from suit.  The Supreme Court has

recognized that Rule 19 requires the dismissal of a sovereign defendant where another sovereign

defendant is absent and cannot be joined in the lawsuit:  "A case may not proceed when a

required-entity sovereign is not amenable to suit."  *Republic of the Philippines v. Pimentel*, 553

U.S. 851, 867 (2008).  As the Court explained in *Samantar*,

> **Even when a plaintiff names only a foreign official, it may be the case that
> the foreign state itself, its political subdivision, or an agency or
> instrumentality is a required party**, because that party has "an interest relating
> to the subject of the action" and "disposing of the action in the person's absence
> may … as a practical matter impair or impede the person's ability to protect the
> interest."  If this is the case, and the entity is immune from suit under the FSIA,
> the district court may have to dismiss the suit, regardless of whether the official is
> immune or not under the common law.

*Samantar*, 130 S. Ct. at 2292 (quoting Rule 19(a)(1)(B), Fed. R. Civ. P.) (emphasis added).

Thus, where, as here, the foreign state has been adjudged immune under the FSIA, the plaintiffs

cannot proceed against a foreign official in an attempt to circumvent the foreign state's sovereign

immunity, and the case must be dismissed under Rule 19.

The State Department's then-Legal Adviser, Harold Koh, has similarly recognized that

Rule 19 will require dismissal of claims against a foreign official for official acts when the

foreign government is not a party:

> [W]here the foreign state is a necessary party, the case may not be able to proceed
> in its absence.  In *Republic of the Philippines v. Pimentel*, for example, the
> Supreme Court recently indicated that a civil lawsuit should generally be
> dismissed under Federal Rule of Civil Procedure 19 when it may prejudice an
> absent sovereign, observing that "where sovereign immunity is asserted, and the
> claims of the sovereign are not frivolous, dismissal of the action must be ordered

18

where there is a potential for injury to the interests of the absent sovereign."
Harold H. Koh, "Foreign Official Immunity after *Samantar*:  A United States Government
Perspective," 44 *Vanderbilt J. Transnational L.* 1141, 1158 (2011) (quoting *Pimentel*, 553 U.S.
at 867).

Therefore, pursuant to *Republic of Philippines* and *Samantar*, dismissal under Rule 19 is
mandated, since the foreign state – the Kingdom of Saudi Arabia's agencies, the SRC and SJRC
– are required parties for plaintiffs' claims against Dr. Al-Swailem for his official acts on behalf
of those sovereign entities, yet those entities are immune under the FSIA and therefore cannot be
joined in the litigation.

## V.      CONCLUSION.

For the foregoing reasons, this Court should find that Dr. Abdul Rahman Al-Swailem is
entitled to common law sovereign immunity.  At all relevant times, he was an official of the
Saudi government, and all the acts that he took in his capacity as President of both the SRC and
the SJRC, which are undisputed agencies or instrumentalities of the Saudi government, were
official acts on behalf the government, which has properly asserted immunity on his behalf, so
that dismissal of the complaint, pursuant to Rules 12(b)(1) and 12(h)(3), is warranted.

Alternatively, dismissal pursuant to Rules 12(b)(7) and 19(a)(1)(B) is warranted, since
the SRC and SJRC are required parties or the real parties in interest, and plaintiffs have
improperly circumvented these agencies' undisputed immunity under the FSIA by attempting to
seek relief from Dr. Al-Swailem for official acts he took on their behalf.

19

Respectfully submitted,

*/s/ Lynne Bernabei*

_____
Lynne Bernabei (LB2489)
Alan R. Kabat (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
*Counsel for Dr. Abdul Rahman Al-Swailem*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2013, I caused the foregoing Memorandum of Law to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (ECF No. 247) (June 16, 2004), and this Court's Order (ECF No. 2652) (Jan. 10, 2013).


*/s/ Alan R. Kabat*

_____

Alan R. Kabat