# Exhibit 11

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:
(202) 326-7999

July 8, 2009

***Via Overnight Mail & Facsimile***

Hon. George B. Daniels
United States District Court Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street, Room 630
New York, NY 10007-1312

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)

Dear Judge Daniels:

      In anticipation of the status conference scheduled for July 15, 2009, I write on behalf of the Defendants' Executive Committee to address the implications of the Supreme Court's denial of plaintiffs' petition for a writ of certiorari from the Second Circuit's decision in these matters.

      In light of the Supreme Court's denial of plaintiffs' petition – which leaves the Second Circuit's decision standing as the law of the case and the law of the Circuit – the Defendants' Executive Committee respectfully submits that this Court should proceed to dispose of pending motions to dismiss in accordance with our prior briefing regarding the implications of the Second Circuit's decision. *See* Supplemental Brief on Second Circuit Decision, No. 03 MDL 1570 (GBD) (Oct. 17, 2008) (Doc. # 2140); Defendants to Be Dismissed on the Basis of the Second Circuit's Decision, No. 03 MDL 1570 (GBD) (Oct. 17, 2008) (Doc. # 2141-2) ("Defendants' Dismissal Chart"); Defendants' Reply to Plaintiffs' Supplemental Brief on Second Circuit Decision, No. 03 MDL 1570 (GBD) (Nov. 25, 2008) (Doc. # 2146).

      In previously addressing the implications of the Second Circuit's decision on pending motions to dismiss, plaintiffs agreed that all claims in all cases against thirteen defendants should be dismissed absent further review of the Second Circuit's decision. *See* Plaintiffs' Response to

Hon. George B. Daniels
July 8, 2009
Page 2

Defendants' List of Defendants, No. 03 MDL 1570 (GBD) (Nov. 25, 2008) (Doc. # 2148-2).[1]  In addition, plaintiffs have previously stipulated to the dismissal of HRH Prince Naif bin Abdulaziz Al-Saud, HRH Prince Salman bin Abdulaziz Al-Saud, and the Saudi High Commission – all appellees in the Second Circuit appeal – from the remaining cases in which they are defendants. *See* Defendants' Dismissal Chart at 1 n.1.  Although, for the reasons discussed in prior briefing, the Second Circuit's decision requires the dismissal of many more than these sixteen defendants, the Defendants' Executive Committee submits that the Court should begin by promptly dismissing all claims against these defendants.  We attach a proposed order to that effect.

Once the Court has entered the proposed order, the Court should proceed to address the remaining defendants' motions to dismiss in a manner consistent with our prior submissions. Many of those pending motions to dismiss raise FSIA and/or personal-jurisdiction defenses and hence are governed by the Second Circuit's decision, as explained in our supplemental briefing. Other pending motions to dismiss are based on service of process, Rule 12(b)(6), or other grounds.

With respect to the pending motions to dismiss, we note that the Supreme Court recently issued a significant decision clarifying plaintiffs' pleading requirements. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009).  That decision declared that plaintiffs' frequently cited *Conley* standard – under which a motion to dismiss was to be denied unless "it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) – is officially "retired." *Iqbal*, 129 S. Ct. at 1944.  The Supreme Court has now made clear that, instead, a court reviewing a motion to dismiss, whether for failure to state a claim or otherwise, must put aside conclusory assertions and evaluate the "well-pleaded, nonconclusory factual allegation[s]" (*id.* at 1950), if any, to determine whether "they plausibly give rise to an entitlement to relief," *id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief'" (*id.* (quoting Fed. R. Civ. P. 8(a)(2)), and should be dismissed.  For reasons already stated in the applicable briefs, plaintiffs repeatedly fail that standard and the Court should proceed to address those motions under this authority.

If the Court believes that a status conference on July 15, 2009 would be useful to address these issues, the Defendants' Executive Committee will be happy to participate.  Alternatively, it may be appropriate to convene a status conference after the Court has decided motions to dismiss directly affected by the Second Circuit's and Supreme Court's decisions.

---

[1] Those defendants are:  Sheikh Abdullah bin Khalid Al Thani; Saudi Joint Relief Committee; Saudi Arabian Red Crescent Society; Ahmed Zaki Yamani; Hamad Al Husaini; Zahir Kazmi; Mohamed Al Mushayt; Khalid Al Rajhi; Alfaisaliah Group (a/k/a Faisal Group Holding Co.); Al Aqsa Islamic Bank; Binladin Group International; Mohammed Binladin Company; and Mushayt for Trading Establishment.

Hon. George B. Daniels
July 8, 2009
Page 3

### Reply to Plaintiffs' Letter

In their letter to the Court, plaintiffs raise seven issues. We address each in turn.

1.      Plaintiffs first argue (at 1-2) that there is an "acute" need for a case management conference on July 15, 2009 and that a contrary position would be "absurd." As explained, the Defendants' Executive Committee stands ready to participate in a status conference if the Court would find that useful. We note, however, that many of the topics raised by plaintiffs are substantive and are thus not appropriate for consideration at a procedural conference. Furthermore, as we have also observed, the appropriate course may be to convene a conference after the Court has had the opportunity to address the motions to dismiss directly affected by the Second Circuit's and Supreme Court's decisions. There is nothing "absurd" about this position, which would permit the Court to convene a procedural conference after narrowing the case significantly through resolution of many pending motions to dismiss.

2.      Plaintiffs make a number of substantive arguments (at 2-5) regarding the state of the law as it relates to the pending motions to dismiss. These letters are not a proper forum to address these issues. At plaintiffs' suggestion, the parties have already comprehensively briefed the implications of the Second Circuit's decision, and plaintiffs should not be permitted to revisit (and in many respects revise) their contentions now. Nevertheless, to ensure a complete record, we briefly address each of plaintiffs' arguments below.

*First*, plaintiffs assert that the Second Circuit's decision requires dismissal of claims against only *two* remaining defendants, both of which are sovereign agencies of Saudi Arabia: the Saudi Joint Relief Committee ("SJRC") and the Saudi Arabian Red Crescent Society ("SRCS"), with all remaining defendants requiring a "a case by case analysis of [plaintiffs'] claims and allegations . . . and extrinsic evidence submitted of record." Pls. Letter at 2. Plaintiffs' position appears to be a direct refutation of *plaintiffs' own prior representation regarding the effect of the Second Circuit's decision on this litigation.* Following that decision – and in the immediate aftermath of a status conference at which the plaintiffs themselves proposed briefing on the effect of the Second Circuit's decision – this Court "directed" defendants to provide "a list of all defendants . . . for whom they contend" the Second Circuit's "rulings would require dismissal." Order, No. 03 MDL 1570 (GBD) (Sept. 15, 2008) (Doc. # 2134). The Court further directed that "plaintiffs' counsel shall designate those listed defendants for whom there exists a good faith basis to assert that those rulings should not be so dispositive." *Id.* As explained above, pursuant to the Court's order, plaintiffs expressly

Hon. George B. Daniels
July 8, 2009
Page 4

stipulated that the Second Circuit's decision, if left standing on review, mandated dismissal of all claims against *thirteen* defendants. *See supra* p. 2 n.1.[2]

Plaintiffs' apparent attempt to disregard their prior submission without even acknowledging it should be rejected. Plaintiffs have for years complained about the pace of this litigation, and a critical step in advancing these cases is the resolution of the pending motions to dismiss. This Court established a procedure for doing so in the wake of the Second Circuit's decision. As we have previously emphasized, plaintiffs' identification of thirteen defendants with respect to whom they had no "good faith basis" to pursue claims was far too narrow; their effort now to backtrack as to eleven of those thirteen, with no explanation whatsoever, is beyond the pale. As to those eleven defendants, plaintiffs have previously submitted – pursuant to this Court's order and subject to Rule 11 – that they have no "good faith basis" to keep them in the case. They should be held to that submission.

*Second*, plaintiffs argue (at 3) "the United States expressly rejected in its brief to the Supreme Court" the personal-jurisdiction arguments in our prior supplemental briefing. According to plaintiffs, the "United States advocated that the Second Circuit's decision should be read narrowly, as merely reflecting perceived deficiencies in the allegations." *Id.* (internal quotation marks omitted). Plaintiffs "submit that this Court should adopt and follow the United States' interpretation of the Second Circuit's decision." *Id.*

This Court, however, is bound to follow the holdings of the Second Circuit, not the views of the Executive Branch as relayed by the Solicitor General in a litigation brief. As we explained in our supplemental briefing, the Second Circuit's decision, properly read, forecloses the principal jurisdictional theory advocated by plaintiffs in this litigation and accordingly has direct application to numerous pending motions to dismiss. *See* Defs. Supp. Br. at 12-34; Defs. Supp. Reply Br. at 7-18. Specifically, the Second Circuit, in reviewing allegations that are indistinguishable from those pending against many of the remaining defendants, rejected plaintiffs' principal theory of personal jurisdiction – namely, that any allegation of material support for al Qaeda, no matter how temporally, geographically, or causally remote from the September 11 attacks, is sufficient to establish personal jurisdiction. Indeed, plaintiffs themselves have interpreted the Second Circuit's decision in just this way in briefing before the Supreme Court, and they have expressly assailed the position they now advocate as "*based on a disingenuous and incorrect assertion* that the Second Circuit's decision could possibly be read as 'focus[ing] on the inadequacy of the particular allegations before it.'"[3] Plaintiffs' calculated shift

---

[2] These thirteen defendants are in addition to the three defendants (Princes Naif and Salman and the Saudi High Commission) who were appellees in the Second Circuit and whom plaintiffs had previously stipulated would be dismissed from all remaining cases in the event the Second Circuit affirmed. *See supra* p. 2. On July 2, 2009, the undersigned emailed a copy of defendants' proposed order to a representative of the Plaintiffs' Executive Committee, stating that we "believe that the proposed order accurately reflects the plaintiffs' stipulations" and asking the representative to "[p]lease let me know if you disagree." Plaintiffs did not respond.

[3] Supplemental Brief of Petitioners in Response to Brief of the United States, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640, at 9 (June 6, 2009) (emphasis added).

Hon. George B. Daniels
July 8, 2009
Page 5

in positions regarding the meaning of the Second Circuit's decision should be rejected. And, because it is the opinion of the Second Circuit, not the views of the Solicitor General, that bind this Court, there is no basis for plaintiffs' request (at 3) that this Court afford the parties "the opportunity to update the supplemental briefing and charts . . . to formally incorporate the views of the United States."[4]

In any event, plaintiffs mischaracterize the position of the United States. The Solicitor General wrote that a complaint "would need to allege facts that could support the conclusion that the defendant acted with the requisite intention and knowledge," Brief of the United States as Amicus Curiae, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640, at 19-20 (May 2009) (citing *Iqbal*) ("U.S. Brief"), and that "the district court rightly focused on the sufficiency of the allegations to establish that the defendants' intentional acts of funding the charities were done with the knowledge that they would support al Qaeda's jihad against the United States," *id.* at 20. Consistent with the Second Circuit, the Solicitor General explained that, under *Calder v. Jones*, 565 U.S. 783 (1984), "due process is not satisfied merely because a defendant can 'foresee' that his actions 'will have an effect' in the foreign jurisdiction." U.S. Brief at 18 (quoting 565 U.S. at 789). Rather, "one who undertakes 'intentional and allegedly tortious actions' that are 'expressly aimed' at the forum are subject to jurisdiction there." *Id.* This is a far cry from plaintiffs' position that any allegation of material support to al Qaeda anywhere, anytime, and however indirectly, suffices for personal jurisdiction.[5]

*Third*, and relatedly, plaintiffs point to the Solicitor General's brief for the view that "foreign officials may not claim immunity under the FSIA." Pls. Letter at 3-4. On that basis, they argue that this Court should (1) apply common law immunity to remaining FSIA defendants and (2) invite Statements of Interest from the United States. *Id.* But, as this Court has recognized, the Second Circuit squarely held – in this very case – that the FSIA applies to individuals. *See* Order, No. 03 MDL 1570 (GBD) (Sept. 15, 2008) (Doc. # 2134) ("Individual officials of a foreign state, acting in their official capacity, are . . . protected by the FSIA grant of immunity for their official-capacity acts."). That decision is the law of this case and the law of this Circuit. This Court has no authority to depart from the holding of the Second Circuit on the basis of a litigation brief filed by the Executive Branch, particularly where the views of the Executive Branch with respect to the scope of the FSIA are entitled to no deference. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) ("the FSIA's reach" is "a pure question of statutory construction" on which the views of the Government "merit no special deference") (internal quotation marks and alterations omitted). Furthermore, because the FSIA

---

[4] If such supplementation is allowed, however, defendants request the opportunity to respond – for the first time – to inaccurate and misleading assertions embodied in plaintiffs' charts.

[5] Plaintiffs also assert in a footnote that certain foreign defendants may not be "entitled to invoke Due Process protections in the first place." Pls. Letter at 3 n.1. But the Second Circuit necessarily rejected this argument in applying the protections of the Due Process Clause to five foreign defendants to affirm their dismissals on personal-jurisdiction grounds. Furthermore, defendants have already explained why plaintiffs' position is deeply flawed. *See* Defendants' Response to Plaintiffs' Notice of Supplemental Authority in Relation to All Pending Motions to Dismiss for Failure to State a Claim and/or For Lack of Personal Jurisdiction, No. 03 MDL 1570, at 7-8 (GBD) (Mar. 13, 2009) (Doc. # 2162).

Hon. George B. Daniels
July 8, 2009
Page 6


applies to the remaining individual defendants raising this defense and because no exception to immunity applies, whether these defendants would also be entitled to immunity under the common law is irrelevant.[6] There is thus no conceivable basis for inviting the views of the United States.

*Fourth*, it is unclear whether plaintiffs agree that all dismissals based on sovereign immunity should be final. With respect to the SJRC and SRCS, plaintiffs seek to "reserve their right to argue on appeal that the Second Circuit's FSIA ruling is wrong, and that jurisdiction is available under the FSIA for the claims advanced against the SJRC and [SRCS]." Pls. Letter at 2. Plaintiffs are of course free to contest the Second Circuit's ruling in the court of appeals, but, to the extent they contend that the Court should delay that process by refusing to order final dismissals as to FSIA defendants, we disagree. Sovereign immunity under the FSIA is immunity not just from liability, but also from "the attendant burdens of litigation." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998). To ensure that litigants benefit from the immunity to which they are entitled, claims of immunity should be completely and finally resolved as early as possible. *See Robinson v. Government of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001); *Rein*, 162 F.3d at 755-56. Accordingly, dismissals based on sovereign immunity are regularly certified as final under Federal Rule of Civil Procedure 54(b). *See, e.g., Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 241 (2d Cir. 1996) (affirming judgment entered under Rule 54(b) dismissing claims as barred by foreign sovereign immunity); *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 83  (2d Cir. 1983) (Friendly, J.) (same); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 70 (2d Cir. 1977) (affirming entry of Rule 54(b) judgment dismissing claim as barred under act of state doctrine). Deferring the entry of final judgment on the dismissed claims until after the resolution of the claims still pending would effectively deprive FSIA defendants of their immunity by forcing them to continue actively monitoring cases from which they have been properly dismissed to ensure that their interests are fully protected. Plaintiffs provide "no just reason" for that result. Fed. R. Civ. P. 54(b).

*Finally*, plaintiffs argue (at 4) that, with respect to Rule 12(b)(6) motions to dismiss, this Court should follow the "comprehensive statement of the law" set forth in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008). But the implications of *Boim* have already been the subject of supplemental-authority submissions by the parties. *See* Defendants' Response to Plaintiffs' Notice of Supplemental Authority in Relation to All Pending Motions to Dismiss for Failure to State a Claim and/or For Lack of Personal Jurisdiction, No. 03 MDL 1570 (GBD) (Mar. 13, 2009) (Doc. # 2162); Plaintiffs' Notice of Supplemental Authority in Relation To All Pending Motions To Dismiss For Failure To State a Claim and/or Lack of

---

[6] We have already explained why plaintiffs' (renewed) suggestion (at 4 n.2) that the FSIA may not apply to the acts of the remaining individual FSIA defendants is wrong. *See* Defs. Supp. Reply Br. at 3-6. These cases are therefore unlike *Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009), where the Second Circuit considered immunity under the common law because it was not settled whether the FSIA supplies immunity for *former* governmental officials. *See* 563 F.3d at 14 (holding "[t]he FSIA is silent with regard to former foreign government officials" but the "[c]ommon law recognizes the immunity of former foreign officials" and thus the Court "need not decide" whether the FSIA applies to "former foreign official[s]").

Hon. George B. Daniels
July 8, 2009
Page 7


Personal Jurisdiction, No. 03 MDL 1570 (GBD) (Feb. 4, 2009) (Doc. # 2156).  For the reasons we have previously explained:  (1) *Boim* has no application to issues of personal jurisdiction; and (2) *Boim* does not, as plaintiffs once again incorrectly argue (at 4), "confirm[] that plaintiffs have stated valid claims against all of the defendants under the ATA."[7]

     **3.**     Recognizing that their complaints are in many if not most cases insufficient to survive review under the Supreme Court's established pleading standards, plaintiffs request (at 5-6) that this Court adopt a "procedure" allowing for amendment.  The Defendants' Executive Committee strongly disagrees that any such procedure is necessary.[8]  To the contrary, plaintiffs have already had ample opportunity to amend the complaints in these cases and already have done so multiple times.  The complaint in *Ashton*, for example, is the sixth amended complaint; the *Burnett* complaint is the third amended complaint; and the *Federal Insurance* complaint has also already been amended.  This is in addition to the numerous amendments plaintiffs made, or attempted to make, to their pleadings by filing RICO statements.  Pursuant to Case Management Order No. 2, the *final* deadline for filing amended pleadings was July 31, 2005 – nearly four years ago.  *See* Case Management Order No. 2, 03 MDL 1570, ¶ 13 (RCC) (June 16, 2004) (Doc. # 247).  Contrary to plaintiffs' claim (at 5), that date was more than one year after the release of the Final Report of the National Commission on Terrorist Attacks Upon the United States, so plaintiffs had more than sufficient time to amend their complaints to take account of that report.  Plaintiffs' request to further amend the complaints now is untimely.

     Moreover, plaintiffs' request to amend would substantially delay resolution of the cases as it would necessarily require further individualized briefing under Federal Rule of Civil

---

[7] *Boim* is not controlling or dispositive of Rule 12(b)(6) motions in this proceeding: (1) the facts in *Boim* are markedly different from the allegations against the diverse and differently situated defendants in these cases; (2) the majority opinion in *Boim* contains flawed reasoning (as cogently highlighted in the dissenting opinion); (3) the majority opinion in *Boim* is inconsistent in material respects with the law of the case in this litigation, as previously established by Judge Casey, *see In re Terrorist Attacks of September 11, 2001*, 349 F. Supp. 2d 765, 825, 828 (S.D.N.Y. 2005); and (4) under the Supreme Court's recent decision in *Iqbal,* discussed above, only "nonconclusory factual allegations" may be considered in assessing whether a complaint "plausibly" shows an entitlement to relief.  To the extent this Court believes that resolution of individual Rule 12(b)(6) motions warrants more detailed consideration of the impact, if any, of *Boim*, defendants have previously expressed their willingness to submit supplemental briefs.  *See* Defendants' Response to Notice of Supplemental Authority at 8.

[8] Plaintiffs also argue (at 5) that "the Second Circuit went out of its way observe" that the complaints contain a "wealth of detail" and, on that basis, they assert that "all motions to dismiss alleging deficiencies in the pleadings should be dismissed." (internal quotation marks omitted).  That is absurd.  The Second Circuit's offhand comment regarding a "wealth of detail" in an appeal not involving any of the allegations against remaining defendants could not conceivably be deemed a holding applicable to any of the remaining defendants, much less one that would require rejecting all arguments regarding pleading deficiencies with respect to remaining defendants.  Moreover, as explained above, the Supreme Court's decision in *Iqbal* post-dates the Second Circuit's opinion here and imposes pleading requirements under Rule 8 that the Second Circuit did not address.

Hon. George B. Daniels
July 8, 2009
Page 8

Procedure 15(a) as to whether in individual cases plaintiffs should be allowed to amend. If, in the wake of that briefing, the Court permits amendment, individual defendants would then file new motions to dismiss, with new rounds of briefing. Because that delay would substantially prejudice defendants who have already stood erroneously accused of complicity in terrorism for more than six years, this Court should reject plaintiffs' request for a "procedure" to facilitate further amendment of their complaints. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) ("motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party") (internal quotation marks omitted).

    **4.**    Plaintiffs also suggest (at 6) that "limited oral argument" will be necessary to resolve pending motions to dismiss. The Defendants' Executive Committee does not agree. The resolution of remaining motions to dismiss can be accomplished by applying established legal standards (set forth in the Second Circuit's decision and recent Supreme Court decisions) to the specific claims and allegations against remaining moving defendants. Because this analysis can be accomplished on the basis of the papers, it is not clear that oral argument would be useful. Of course, if the Court found it necessary to hold oral argument as to any specific motions and/or issues, defendants would be happy to participate.

    **5.**    Plaintiffs request (at 6) that the Court act on Letters Rogatory to the International Criminal Tribunal for the Former Yugoslavia, which plaintiffs have previously submitted. The Defendants' Executive Committee takes no position on this issue here, other than to note that resolution of this issue does not require the time and expense of a global status conference.

    **6.**    Plaintiffs ask (at 6) that the Court act on a request for *in camera* review of classified U.S. Government documents that were improperly disclosed to plaintiffs' counsel and subsequently reclaimed from plaintiffs' counsel by agents of the Federal Bureau of Investigation. The U.S. Government and the National Commercial Bank ("NCB") have already submitted substantial briefing in opposition to plaintiffs' request. Rather than respond in this letter to plaintiffs' request that "the Court should review those documents, at the very least in connection with any determination concerning the need for additional jurisdictional discovery from NCB," we respectfully refer the Court to the briefing by plaintiffs, the Government, and NCB in connection not only with plaintiffs' motion for "declaratory relief" concerning the classified documents, but also with NCB's motion to strike new arguments improperly raised in plaintiffs' reply in support of their "declaratory relief" motion.[9]

---

[9] That briefing is docketed as follows:

Plaintiffs' Motion for Declaratory Relief:

- Plaintiffs' motion and supporting papers. MDL Doc. ## 2157-2159.
- NCB's opposition and supporting papers. MDL Doc. ## 2160-2161.
- Government's opposition letter (Mar. 9, 2009). Filed as MDL Doc. # 2161, Ex. D.
- Plaintiffs' reply papers. MDL Doc. ## 2163-2164.

Hon. George B. Daniels
July 8, 2009
Page 9

     Plaintiffs' letter (at 3) also discusses the impact of the Supreme Court's denial of certiorari on the plaintiffs' application for specific-jurisdiction discovery from NCB, which is currently pending before Magistrate Judge Maas.  We respectfully invite the Court's attention to the June 30, 2009 letter on that subject from NCB's counsel to Judge Maas.  NCB's letter takes the position that the Second Circuit's decision precludes the "jurisdictional discovery" that plaintiffs have requested when, as here, this Court has not yet assessed whether the plaintiffs have "establish[ed] a prima facie case that the district court ha[s] jurisdiction" over NCB under the standards announced by the Court of Appeals. *See* NCB Letter at 1 (June 30, 2009) (quoting *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008), *cert. denied*, --- U.S. ---, 2009 WL 1835181 (June 29, 2009)).

     7.    Finally, plaintiffs conclude with a call for "[e]fficient [m]anagement" of these cases going forward.  To the extent plaintiffs mean to suggest that pending motions to dismiss should be promptly addressed, the Defendants' Executive Committee agrees.  Now that the Second Circuit has established principles of law that serve as the law of the case and law of this Circuit on several important threshold issues, and in light of the Supreme Court's denial of certiorari as well as its further clarification of the standards governing motions to dismiss, the Defendants' Executive Committee believes that many if not all pending motions to dismiss can be resolved expeditiously.

     By contrast, to the extent plaintiffs' reference to "[e]fficient [m]anagement" refers to the remaining suggestions in their letter, plaintiffs' submission is fundamentally at odds with their purported desire to move these cases forward.  As explained above, plaintiffs seek to withdraw their prior stipulation of dismissal as to eleven defendants; they seek still more briefing (apparently on a case-by-case basis) on scores of motions to dismiss, many of which they acknowledge have been pending for several years; and they propose still further amendment of pleadings that have already been amended multiple times.  Each of plaintiffs' proposals amounts to a request that the Court delay consideration of threshold motions to dismiss that are ripe for resolution on the current record.  For this reason, as well as those set forth above, plaintiffs' proposals should be rejected.

     Nor does the Defendants' Executive Committee agree that "regular" case management conferences are necessary going forward.  Instead, the Court should continue its practice of scheduling conferences at six-month intervals, with the parties providing their positions in advance regarding whether the conference should go forward and, if so, what issues should be addressed.  With respect to plaintiffs' suggestion that the Court modify its case management

---

-     Government's letter in response to plaintiffs' reply (Apr. 3, 2009).  Filed as MDL Doc. # 2173, Ex. A.

NCB's Motion to Strike:

-     NCB's motion and supporting papers.  MDL Doc. ## 2166-2167.
-     Plaintiffs' opposition.  MDL Doc. # 2171.
-     NCB's reply papers.  MDL Doc. ## 2172-2173.

Hon. George B. Daniels
July 8, 2009
Page 10

orders, the Defendants' Executive Committee will respond if and when the plaintiffs submit any concrete recommendations but it does not believe that modifications are warranted at this time.

Respectfully submitted,

Michael K. Kellogg
*Defendants' Executive Committee*

cc:
Magistrate Judge Frank Maas (via overnight mail and facsimile)
All MDL 1570 counsel of record (via email)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

)

IN RE:  TERRORIST ATTACKS ON    ) Civil Action No. 03 MDL 1570 (GBD)
SEPTEMBER 11, 2001              )
                               )
_____)

*This document relates to: All Actions*

## (PROPOSED) ORDER

      1.    WHEREAS, plaintiffs and defendants have stipulated that all remaining claims against certain defendants should be dismissed if the prior dismissal of certain claims against those defendants by the District Court were affirmed by the Second Circuit on appeal and those decisions have been so affirmed on appeal;[1] and

      2.    WHEREAS, plaintiffs and defendants have stipulated that all claims against certain other defendants should be dismissed if the Second Circuit's decision in *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008), were left standing and that decision has been left unreviewed either by the Second Circuit or the Supreme Court,[2]

      **IT IS HEREBY ORDERED** that all remaining claims against

      HRH Prince Naif bin Abdulaziz Al-Saud;
      HRH Prince Salman bin Abdulaziz Al-Saud;
      Saudi High Commission;
      Sheikh Abdullah bin Khalid Al Thani;
      Saudi Joint Relief Committee;
      Saudi Arabian Red Crescent Society;
      Ahmed Zaki Yamani;
      Hamad Al Husaini;
      Zahir Kazmi;
      Mohamed Al Mushayt;

---

[1] *See* MDL Doc. Nos. 915, 918, 932, 1466, 1506, 1510, & 1677-78.

[2] *See* MDL Doc. No. 2148-2.

Khalid Al Rajhi;
Alfaisaliah Group (a/k/a Faisal Group Holding Co.);
Al Aqsa Islamic Bank;
Binladin Group International;
Mohammed Binladin Company; and
Mushayt for Trading Establishment,

are dismissed **WITH PREJUDICE** in all cases in this Multi-District Litigation.  The

Court further finds, pursuant to Federal Rule of Civil Procedure 54(b), that there is no

just reason for delay in the entry of a final judgment with respect to the claims and

defendants noted above.  The Clerk of the Court is accordingly directed to prepare and

enter a final judgment consistent with this Order.


Dated: July ____, 2009
        New York, New York

_____
Honorable George B. Daniels
United States District Judge