# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| *In Re* Terrorist Attacks on September 11, 2001 | ) <br> ) No. 03 MDL 1570 (GBD/FM) <br> ) <br> ) |

This document relates to:

  Federal Insurance Co., *et al.* v. Al Qaida, *et al.*,
    Case No. 03-CV-6978.

## Reply Brief in Support of
## Defendant Dr. Abdul Rahman Al-Swailem's
## Renewed Motion to Dismiss

Lynne Bernabei (LB2489)
Alan R. Kabat (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942
*Counsel for Dr. Abdul Rahman Al-Swailem*

DATED: October 23, 2013

**Table of Contents**

Introduction . . . . . . . . . . 1

    I.    The Second Circuit's Decision that the SRC and SJRC are Sovereign Entities Is the Law of the Case . . . . . . . 1

    II.    Dr. Al-Swailem's Alleged Acts were Taken in His Capacity as President of the SRC and SJRC, so that Common Law Sovereign Immunity Applies    3

    III.   This Court Can and Should First Resolve Subject Matter Jurisdiction . 5

    IV.   This Court Does Not Require Guidance from the State Department . 6

    V.    Plaintiffs' Attempts to Re-Argue the Facts are Unavailing . . 10

Conclusion . . . . . . . . . . 10

# Table of Authorities

**Cases**

*Burnett v. Al Baraka Inv. & Devel. Corp.*,
    274 F. Supp. 2d 86 (D.D.C. 2003) . . . . . . 9

*Chen v. Ma*,
    No. 12 Civ. 5232(NRB), 2013 WL 4437607 (S.D.N.Y. Aug. 19, 2013) . 3-4, 7

*Heaney v. Government of Spain*,
    445 F.2d 501 (2d Cir. 1971) . . . . . . . 3, 4, 6-7

*In re Terrorist Attacks on Sept. 11, 2001 (Asat Trust Reg., et al.)*,
    714 F.3d 659 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013) . 2

*In re Terrorist Attacks on Sept. 11, 2001 (Saudi Joint Relief Committee, et al.)*,
    714 F.3d 109 (2d Cir. 2013), *petition for reh'g denied* (June 10, 2013) . 1-2, 4

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009) . . . . . . . 3

*Navy, Marshall & Gordon, P.C. v. U.S. Int'l Devel.-Coop. Agency*,
    557 F. Supp. 484 (D.D.C. 1983) . . . . . . 4

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    162 F.3d 748 (2d Cir. 1998) . . . . . . . 5

*Republic of Mexico v. Hoffman*,
    324 U.S. 30 (1945) . . . . . . . . 6

*Robinson v. Government of Malaysia*,
    269 F.3d 133 (2d Cir. 2001) . . . . . . . 5, 6

*Rosenberg v. Lashkar-e-Taiba*,
    No. 1:10-cv-05448, 2013 WL 5502851 (E.D.N.Y. Sept. 30, 2013) . . 8

*Samantar v. Yousuf*,
    560 U.S. 305, 130 S. Ct. 2278 (2010) . . . . . 2, 5, 7

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) . . . . . . . . 6

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983) . . . . . . . . 6

**Statutes, Rules, and Regulations**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* (FSIA) . *passim*

Rule 12(b)(1), Fed. R. Civ. P. . . . . . . . 10

Rule 12(h)(3), Fed. R. Civ. P. . . . . . . . 10

**Court Filings in Other Cases**

Brief for the U.S. as Amicus Curiae,
*Federal Ins. Co. v. Kingdom of Saudi Arabia*,
No. 08-640, 2009 WL 1539068 (U.S. May 29, 2009) . . . . 5

Statement of Interest and Suggestion of Immunity,
*Rosenberg v. Lashkar-e-Taiba*,
No. 1:10-cv-05448 (ECF No. 35) (E.D.N.Y Dec. 17, 2012) . . . . 7

Plaintiffs' Response to the Statement of Interest and Suggestion of Immunity,
*Rosenberg v. Lashkar-e-Taiba*,
No. 1:10-cv-05448 (ECF No. 40) (E.D.N.Y. Feb. 15, 2013) . . . 7-8

**Other Sources**

Harold H. Koh, "Foreign Official Immunity after *Samantar*: A United States Government Perspective," 44 *Vanderbilt J. Transnational L.* 1141 (2011) . . 9

**Acronyms**

FSIA   Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*

SJRC   Saudi Joint Relief Committee

SRC    Saudi Red Crescent Society

**INTRODUCTION**

Plaintiffs' opposition to Dr. Al-Swailem's motion to dismiss is fundamentally flawed.

First, plaintiffs argued that the Saudi Red Crescent Society (SRC) and the Saudi Joint Relief Committee (SJRC) are essentially private, non-governmental organizations carrying out private acts. Yet, the Second Circuit held that the SRC and SJRC are Saudi governmental entities under the Foreign Sovereign Immunities Act (FSIA), which is the law of the case.

Second, plaintiffs argued that Dr. Al-Swailem's alleged acts were beyond the scope of his authority. Yet, plaintiffs pled that these alleged acts were taken in his capacity as President of the SRC and the SJRC, thereby defeating their argument that the allegations against him were taken in his personal rather than his official capacity.

Third, sovereign immunity is a threshold issue that must be resolved before personal jurisdiction, since sovereign immunity is immunity from litigation, contrary to plaintiffs' arguments that a court must look at personal jurisdiction before subject matter jurisdiction.

Fourth, under Supreme Court and Second Circuit precedent, this Court can decide sovereign immunity issues without obtaining guidance from the State Department.

Finally, plaintiffs attempt to re-argue the facts relating to Dr. Al-Swailem. Yet, their factual allegations are either unsupported or contradicted by the underlying documents, as Dr. Al-Swailem has previously briefed to this Court.

**I.    The Second Circuit's Decision that the SRC and SJRC are Sovereign Entities Is the Law of the Case.**

The Second Circuit, in upholding this Court's dismissal of the SRC and SJRC, did so because it was undisputed that both are instrumentalities of the Saudi government: "The parties do not dispute that the SJRC and the SRC qualify as instrumentalities of a foreign sovereign within the meaning of the FSIA." *In re Terrorist Attacks (Saudi Joint Relief Committee)*, 714

F.3d 109, 114 (2d Cir. 2013), *petition for reh'g denied* (2d Cir. June 10, 2013).[1]  The Second Circuit's conclusion was fully consistent with plaintiffs' express representation to this Court, in 2005, that, "[f]or purposes of the sovereign immunity analysis, Plaintiffs concede that the SRC and Al Swailem qualify as agencies, instrumentalities or organs of the Kingdom within the meaning of the FSIA."  Pls. Opp., at 8 (ECF No. 1245) (Sept. 20, 2005).  Although plaintiffs filed a petition for writ of certiorari with the Supreme Court as to the other defendants, plaintiffs did not seek further review as to the SJRC and the SRC, so the Second Circuit's decision as to those two Saudi agencies is a final decision, and the law of the case.

This decision is contrary to plaintiffs' new argument – the predicate for their opposition – that the SRC and SJRC are private charities or equivalent to non-governmental organizations for purposes of sovereign immunity.  *See* Pls. Opp. at 1 ("entities engaged in activities most commonly performed by private and non-governmental organizations"); *id.* at 16 ("the SJRC and SRC were established to engage in activities commonly performed by private entities").  The FSIA "codif[ied] the restrictive theory of sovereign immunity," under which "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts."  *Samantar v. Yousuf*, 130 S. Ct. 2278, 2285 (2010) (internal quotation marks omitted).  By failing even to argue before the Second Circuit that the FSIA's commercial-activities exception (which codifies the restrictive theory of

---

[1] This Court should not condone plaintiffs' other misrepresentations of the Second Circuit's opinions.  Plaintiffs' opposition opens with a statement about the Second Circuit's "findings" (Pls. Opp. at 1), yet the Second Circuit only said that "these allegations *suggest*," and made no findings.  *In re Terrorist Attacks (Asat Trust Reg.)*, 714 F.3d 659, 678 (2d Cir. 2013) (emphasis added), *petition for reh'g denied* (2d Cir. June 10, 2013).  Plaintiffs' discussion of the facts incorrectly states:  "As the Second Circuit concluded, plaintiffs' pleadings … sufficiently establish" (Pls. Opp., at 2), but the Second Circuit was merely quoting the allegations in plaintiffs' appellate brief, and not reaching any conclusion as to the merits of those allegations.  *See* 714 F.3d at 667 (quoting Plaintiffs' Pers. Juris. Br., at 20-21).  Thus, the Second Circuit has not made a "controlling ruling" (Pls. Opp. at 2), as plaintiffs incorrectly claim.

2

foreign sovereign immunity) deprived the SJRC and the SRC of immunity, plaintiffs admitted that those entities – and all officials performing acts on behalf of those entities – are entitled to immunity under the restrictive theory.

In short, plaintiffs' argument that Dr. Al-Swailem's acts on behalf of the SRC and SJRC are not protected by sovereign immunity cannot be reconciled with the Second Circuit's ruling that both are sovereign agencies of the Saudi government.

## II. Dr. Al-Swailem's Alleged Acts were Taken in His Capacity as President of the SRC and SJRC, so that Common Law Sovereign Immunity Applies.

This Court should find since the SJRC and the SRC are entitled to sovereign immunity under the FSIA, there is no basis for plaintiffs to argue that Dr. Al-Swailem's alleged acts – all in his capacity as President of the SJRC and SRC – are not also entitled to common law sovereign immunity. Plaintiffs argued that Dr. Al-Swailem's alleged acts were beyond the scope of his authority, yet plaintiffs affirmatively pleaded that these alleged acts were taken in his official capacity as President of the SRC and the SJRC (*e.g.*, "As head of the SRC, al Swailem used his authority to foster the organization's continued role…" (Pls. Opp. Ex. 1, RICO Statement, at 11)), thereby defeating their argument that sovereign immunity does not apply.

The Second Circuit has held that common law sovereign immunity applies where a defendant's alleged acts were taken in his official, not personal capacity, as is the case here:

> Common law recognizes the immunity of former foreign officials. At the time the FSIA was enacted, **the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for "acts performed in his official capacity."** *Restatement (Second) of Foreign Relations Law of the United States* § 66(f) (1965); *see also Heaney v. Gov't of Spain*, 445 F.2d 501, 504 (2d Cir. 1971) (plaintiff's concession that defendant was "at all relevant times 'an employee and agent of the defendant Spanish Government'" sufficed to dispose of the claim against the individual defendant).

*Matar v. Dichter*, 536 F.3d 9, 14 (2d Cir. 2009) (emphasis added); *accord Chen v. Ma*, No. 12

3

Civ. 5232(NRB), 2013 WL 4437607, at *3 (S.D.N.Y. Aug. 19, 2013) ("Under the common law, an individual foreign official is entitled to immunity 'for acts performed in his official capacity.'") (quoting *Matar*).  While plaintiffs' allegations as to Dr. Al-Swailem are unsupported by the underlying documents, plaintiffs have <u>not</u> even alleged that he took those acts in his personal capacity outside his role as President of the SRC and SJRC.

Plaintiffs argue that the Second Circuit's five examples of "political or public acts" covered by sovereign immunity, *Heaney*, 445 F.2d at 503, was an exclusive listing (Pls. Opp. at 17-18, 21); in fact, those were examples that have to be considered in context of how a particular foreign government is organized.  The SJRC and SRC are most analogous to the U.S. Agency for International Development (USAID), a U.S. government agency that also provides humanitarian relief work overseas, including through the use of contractors, and is entitled to sovereign immunity in the U.S. courts.[2]  *Navy, Marshall & Gordon, P.C. v. U.S. Int'l Devel.-Coop. Agency*, 557 F. Supp. 484, 487-88 (D.D.C. 1983) (USAID entitled to sovereign immunity).  Again, plaintiffs' contrary argument cannot be squared with the Second Circuit's recent decision (*Terrorist Attacks*, 714 F.3d at 114) recognizing the sovereign status of the SJRC and the SRC under the FSIA, which codified the restrictive theory of immunity applied in the pre-FSIA authorities on which plaintiffs rely.

Plaintiffs argue that the scope of common law immunity may not be coextensive with FSIA immunity.  However, the State Department has consistently recognized that common law immunity is usually broader than FSIA immunity, because FSIA has statutory exceptions (*e.g.*, the tort exception) that do not apply to common law immunity.  *See* Mot. to Dismiss, at 13 & n.5.

---

[2] Plaintiffs' analogy to a hospital in Trinidad (Pls. Opp. at 18) is misplaced, since plaintiffs have not alleged that the SRC or the SJRC (or Dr. Al-Swailem) are liable for medical malpractice in their domestic facilities.  Instead, plaintiffs allege liability based on the SRC's and SJRC's overseas humanitarian operations – the same kind of operations that the USAID undertakes.

In particular, State, when this case was on its first appeal, stated: "Significantly, even after endorsing the restrictive theory of immunity for foreign *states*, the Executive continued to recognize the immunity of foreign *officials* for their official acts in circumstances in which the state would not itself be immune." Brief for the U.S. as Amicus Curiae, at 5, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640, 2009 WL 1539068 (U.S. May 29, 2009). Although plaintiffs unsuccessfully argued that FSIA's tort exception applied to the SRC and SJRC, that exception does not apply to common law immunity.

Therefore, since common law immunity is broader than FSIA immunity with respect to tort claims, under the Second Circuit's rulings in *Matar* and *Heaney*, and since Dr. Al-Swailem's alleged acts were in his official capacity as President of the SRC and the SJRC, this Court should find that common law sovereign immunity extends to Dr. Al-Swailem.[3]

### III. This Court Can and Should First Resolve Subject Matter Jurisdiction.

Sovereign immunity must be resolved before personal jurisdiction, since sovereign immunity means immunity from litigation, including discovery. Sovereign immunity is immunity not just from liability, but also from "the attendant burdens of litigation." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998). To ensure that litigants benefit from the immunity to which they are entitled, claims of immunity should be completely and finally resolved as early as possible. *Id.* at 755-56; *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001).

Plaintiffs incorrectly assert that a court must look at personal jurisdiction before addressing subject matter jurisdiction by claiming that "common law immunity defenses should

---

[3] Plaintiffs state that Dr. Al-Swailem previously "opposed consideration of any common law immunity defense" (Pls. Opp. at 8), but fail to advise this Court that this statement was made on July 8, 2009, one year *before* the Supreme Court's decision in *Samantar v. Yousuf*, 130 S. Ct. 2278 (2010), and at a time when Second Circuit precedent required individuals to pursue immunity under FSIA.

5

not be addressed at all until other threshold issues, such as personal jurisdiction, have been resolved." *See* Pls. Opp., at 13. However, the Supreme Court decision cited by plaintiffs is to the contrary: "There is no mandatory 'sequencing of jurisdictional issues,'" and, ultimately, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999)).

Thus, under *Sinochem*, personal jurisdiction does not have priority over sovereign immunity. Instead, where sovereign immunity is at stake, then it should be resolved first. *Robinson*, 269 F.3d at 141. Moreover, judicial economy greatly favors resolving subject matter jurisdiction first, as jurisdictional discovery will likely require extensive judicial involvement (as previously happened in this case) and will only further delay the resolution of this case.

**IV. This Court Does Not Require Guidance from the State Department.**

This Court should find that guidance from the State Department is unnecessary to resolve Dr. Al-Swailem's motion. The U.S. Supreme Court has consistently recognized that the courts can decide common law sovereign immunity without soliciting or obtaining the views of the U.S. government. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) (absent a request to the State Department, "the responsibility fell to the courts to determine whether sovereign immunity existed, generally by reference to prior State Department decisions"); *Republic of Mexico v. Hoffman*, 324 U.S. 30, 34-35 (1945) ("In the absence of recognition of the claimed immunity by the political branch of the government, the courts may decide for themselves whether all the requisites of immunity exist."). The Second Circuit has similarly decided common law sovereign immunity defenses without a submission from the State Department. *Heaney*, 445 F.2d at 503 & n.2 (upholding dismissal of foreign government and

individual defendant). The Supreme Court's recent decision in *Samantar* similarly recognized the lower courts could decide common law sovereign immunity without a submission from State. *Samantar v. Yousuf*, 130 S. Ct. 2278, 2284-85 (2010) (citing *Hoffman* and *Heaney*). Judge Buchwald similarly decided that individual foreign defendants were entitled to sovereign immunity without obtaining a submission from State: "Because the United States has declined to take a position with respect to defendants' purported immunity under the common law, the Court may 'decide for itself' whether such immunity exists." *Chen v. Ma*, No. 12 Civ. 5232(NRB), 2013 WL 4437607, at *2 (S.D.N.Y. Aug. 19, 2013) (quoting *Samantar*, 130 S. Ct. at 2284).

Plaintiffs' argument is grounded upon the Department of State's submission in another jurisdiction. *See* Pls. Opp., at 10-13 (citing *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448 (E.D.N.Y)).[4] However, plaintiffs failed to explain that the *Rosenberg* plaintiffs were represented by the Kreindler & Kreindler law firm – the same law firm that represents the *Ashton* plaintiffs in this Court. After the *Rosenberg* plaintiffs demanded that the court obtain the views of the State Department, Judge Irizarry made that request. *See* Order Requesting Statement of Interest, *Rosenberg*, No. 1-10-cv-05448 (ECF No. 23) (Apr. 23, 2012). The government's response was filed nearly eight months later, and more than a year after briefing on the motion to dismiss was completed. *See* Statement of Interest and Suggestion of Immunity, *Rosenberg*, No. 1:10-cv-05448 (ECF No. 35) (Dec. 17, 2012) (attached hereto as Exhibit 1).

After State explained that the individual defendants were entitled to common law sovereign immunity, *id.*, the Kreindler law firm repudiated State's submission:

> Further, the Department of State's view of common law immunity is not dispositive; this Court must exercise its judicial autonomy and reach an independent decision as to . . . foreign officer common law immunity . . .

---

[4] Plaintiffs incorrectly cited this case as from the Southern District of New York.

> The Judicial branch is not – and as a basic matter of separation of powers, must not be – bound by suggestions from the Department of State regarding foreign official immunity and the Executive Branch's statements in this regard are decidedly not entitled to absolute deference. . . . Thus, the Department of State's recommendations regarding a foreign officer's immunity do not displace the judiciary's essential role in determining whether an individual defendant may avoid suit. This Court – and not the Department of State – must determine the foreign officer immunity of Pasha and Taj.

*See* Plaintiffs' Response to the Statement of Interest and Suggestion of Immunity, at 1-2, *Rosenberg*, No. 1:10-cv-05448 (ECF No. 40) (Feb. 15, 2013) (attached hereto as Exhibit 2).

Judge Irizarry rejected plaintiffs' attempt to delay the litigation for over a year by seeking a response from the State Department, only to repudiate that response:

> As a preliminary matter, it was implicit in Plaintiffs' earlier filings that the Statement of Interest would be dispositive on the issue of sovereign immunity. The Plaintiffs described the United States' potential opinion as "critical" and "highly probative" on the issue of immunity. (Pls.' Opp'n at 11–16.) Plaintiffs further urged this Court to defer its ruling on the Moving Defendants' motion until the United States had the opportunity to submit a statement. (Id. at 2–3.) Consequently, the Court issued an order staying the case and requesting that the United States submit a statement. Understandably, **Plaintiffs now seek to distance themselves from the Statement of Interest, which is unfavorable to the survival of their claims**.

*Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448, __ F. Supp. 2d __, 2013 WL 5502851, at *5 (E.D.N.Y. Sept. 30, 2013) (emphasis added). Judge Irizarry held that the individual defendants were entitled to common law sovereign immunity. *Id.* at *6-7. Here, too, if this Court requested a response from State, it could take a half-year or more for a response, and if State indicated that Dr. Al-Swailem is entitled to common law immunity, the plaintiffs would then argue that State's response should be entitled to no deference, much as their co-counsel did in *Rosenberg*.

Moreover, when this litigation was in the U.S. District Court for the District of Columbia, Judge Robertson notified the Department of Justice of the October 2003 motions hearing on the

motions to dismiss filed by two sovereign defendants (Prince Sultan and Prince Turki). While DOJ sent an attorney to observe the motions hearing, neither DOJ nor State submitted a statement of interest. Instead, during the oral argument, counsel for the *Burnett* plaintiffs admitted that according to State's website, "most important [is] that it [State] has no plans to intervene in this case," and while the plaintiffs informed the U.S. government of this case, and "they could come in if they wanted to," that did not happen. *See* Transcript, at 52:8-9, 53:2, *Burnett*, No. 02-1616-JR (D.D.C. Oct. 17, 2003) (excerpts attached hereto as Exhibit 3). Judge Robertson granted the motions to dismiss without any submissions from either State or DOJ. *See Burnett v. Al Baraka Inv. & Devel. Corp.*, 292 F. Supp. 2d 9, 14-21 (D.D.C. 2003).

Further, even if this Court asked State for its position in this case, there is no guarantee that State would provide a substantive response. Instead, State's response could be consistent with the views of its Legal Advisor, who recently explained that:

> Following the 1952 Tate Letter, **courts consistently applied the restrictive theory of sovereign immunity articulated by the State Department even in cases where the Department did not make a case-specific determination**.
>
> . . . In closing, let me say that in time, we hope that litigants will come to understand, with respect to State Department submissions in these cases, both the "sound of silence" and the notion that government silence is sometimes golden. In domestic litigation, our ultimate goal is, in fact, not more verbiage, but more silence. **The government need not, and should not, speak in every case, and that is not what *Samantar* envisages, particularly when those cases are brought not by the U.S. Government, but by private litigants with their own motives and goals**.

H. H. Koh, "Foreign Official Immunity after *Samantar*: A United States Government Perspective," 44 *Vanderbilt J. Transnational L.* 1141, 1161 (2011) (emphasis added) (attached as Exhibit 14 to Pls. Opp.).[5] Thus, the Department of State's current view is that it does not intend

---

[5] Although plaintiffs cited other sections of this article, plaintiffs did not cite its conclusion, which makes clear that State does not intend to get involved in every case.

to get involved in every case, particularly those brought by "private litigants," so this Court should not allow plaintiffs to delay this case by demanding a submission from State that plaintiffs may repudiate.

### V. Plaintiffs' Attempts to Re-Argue the Facts are Unavailing.

Finally, this Court need not consider plaintiffs' attempts to argue the allegations as to Dr. Al-Swailem. As he has previously briefed, the factual allegations are either unsupported by, or contradicted by, the underlying documents. *See* Mot. to Dismiss, at 7-10 (ECF No. 2774) (Aug. 29, 2013); Reply Br., at 2-3 (ECF No. 1270) (Sept. 26, 2005).

### CONCLUSION

For the foregoing reasons, and those set forth in Dr. Al-Swailem's motion to dismiss (Aug. 29, 2013), this Court should find that Dr. Al-Swailem is entitled to common law sovereign immunity. At all relevant times, he was an official of the Saudi government, and all the acts that he took in his capacity as President of the SRC and the SJRC – which the Second Circuit held were agencies or instrumentalities of the Saudi government – were official acts on behalf of the Saudi government, which has properly asserted immunity on his behalf. Dismissal of the complaint, pursuant to Rules 12(b)(1) and 12(h)(3), is, therefore, warranted.

Respectfully submitted,

*/s/ Lynne Bernabei*

Lynne Bernabei (LB2489)
Alan R. Kabat (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
*Counsel for Dr. Abdul Rahman Al-Swailem*

October 23, 2013

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 23, 2013, I caused the foregoing Reply Brief to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (ECF No. 247) (June 16, 2004), and this Court's Order (ECF No. 2652) (Jan. 10, 2013).

                                                  */s/ Alan R. Kabat*
                                                  _____
                                                  Alan R. Kabat