## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) No. 03 MDL 1570 (GBD/FM) |

This document relates to:

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
    Case No. 03-CV-6978.

### Declaration of Alan R. Kabat in Support of
### Defendant Dr. Abdul Rahman Al-Swailem's Reply Brief

I am an attorney licensed to practice in the District of Columbia and am admitted *pro hac vice* in this matter. I am with the law firm of Bernabei & Wachtel, PLLC, counsel to defendant Dr. Abdul Rahman Al-Swailem. I submit this declaration to transmit to the Court the following documents submitted in support of Defendant's Reply Brief in Support of Renewed Motion to Dismiss (Oct. 23, 2013):

1.    Exhibit 1 is a copy of the Statement of Interest and Suggestion of Immunity, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448 (ECF No. 35) (E.D.N.Y. Dec. 17, 2012).

2.    Exhibit 2 is a copy of the Plaintiffs' Response to the Statement of Interest and Suggestion of Immunity, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448 (ECF No. 40) (E.D.N.Y. Feb. 15, 2013).

3.    Exhibit 3 is a copy of excerpts of the Transcript, *Burnett v. Al Baraka Inv. & Devel. Corp.*, No. 02-1616-JR (D.D.C. Oct. 17, 2003).

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on October 23, 2013.

*Alan R. Kabat*
ALAN R. KABAT

**Exhibits**

1. Statement of Interest and Suggestion of Immunity, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448 (ECF No. 35) (E.D.N.Y. Dec. 17, 2012).

2. Plaintiffs' Response to the Statement of Interest and Suggestion of Immunity, *Rosenberg v. Lashkar-e-Taiba*, No. 1:10-cv-05448 (ECF No. 40) (E.D.N.Y. Feb. 15, 2013).

3. Transcript, *Burnett v. Al Baraka Inv. & Devel. Corp.*, No. 02-1616-JR (D.D.C. Oct. 17, 2003) (excerpts).

**Exhibit 1**

Statement of Interest and Suggestion of Immunity,
*Rosenberg v. Lashkar-e-Taiba*,
No. 1:10-cv-05448 (ECF No. 35) (E.D.N.Y. Dec. 17, 2012).

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ROSENBERG et al.; SCHERR et al.; | ) | |
| CHROMAN et al.; RAGSDALE et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 10-05381 (DLI) |
| | ) | Civ. No. 10-05382 (DLI) |
| v. | ) | Civ. No. 10-05448 (DLI) |
| | ) | Civ. No. 11-03893 (DLI) |
| LASHKAR-E-TAIBA et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**STATEMENT OF INTEREST AND SUGGESTION OF IMMUNITY**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 2

I.     THE INTER-SERVICES INTELLIGENCE DIRECTORATE OF THE ISLAMIC
REPUBLIC OF PAKISTAN IS IMMUNE FROM SUIT BECAUSE IT IS A
FOREIGN STATE WITHIN THE MEANING OF THE FSIA AND NO
EXCEPTION TO IMMUNITY APPLIES .......................................................................... 2

II.    APPLYING PRINCIPLES OF FOREIGN OFFICIAL IMMUNITY, THE
DEPARTMENT OF STATE HAS DETERMINED THAT FORMER DIRECTORS
GENERAL PASHA AND TAJ ARE IMMUNE FROM SUIT ......................................... 7

     A.    Under Supreme Court Precedent, the Department of State's Foreign
Official Immunity Determinations are Controlling and Are Not Subject
to Review.................................................................................................................. 7

     B.    The Department of State Has Determined That Former Directors General
Pasha and Taj Are Immune From This Suit.......................................................... 9

CONCLUSION.......................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**CASES**

*Alfred Dunhill of London, Inc. v. Republic of Cuba,*
    425 U.S. 682 (1976)......................................................................................4

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964)......................................................................................5

*Compania Espanola de Navegacion Maritima, S.A. v. The Navemar,*
    303 U.S. 68 (1938)........................................................................................3

*Doe I v. State of Israel,*
    400 F. Supp. 2d 86 (D.D.C. 2005) ..............................................................6

*Fain v. Islamic Republic of Iran,*
    856 F. Supp. 2d 109 (D.D.C. 2012) ............................................................6

*Garb v. Republic of Poland,*
    440 F.3d 579 (2d Cir. 2006)..........................................................................3

*Isbrandtsen Tankers v. President of India,*
    446 F.2d 1198 (2d Cir. 1971)......................................................................8, 9

*Matar v. Dichter,*
    563 F.3d 9 (2d Cir. 2009)............................................................................8, 9

*Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,*
    556 U.S. 366 (2009)......................................................................................5

*Ex parte Republic of Peru,*
    318 U.S. 578 (1943)......................................................................................3

*Republic of Austria v. Altmann,*
    541 U.S. 677 (2004)....................................................................................4, 7

*Republic of Mexico v. Hoffman,*
    324 U.S. 30 (1945)..................................................................................3, 8, 10

*Rich v. Naviera Vacuba, S.A.,*
    295 F.2d 24 (4th Cir. 1961) ..........................................................................9

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) ......................................................................5

*Samantar v. Yousuf,*
        130 S. Ct. 2278 (2010)................................................................................... passim

*Schooner Exchange v. McFaddon,*
        7 Cranch 116 (1812) ........................................................................................ 2, 3

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
        549 U.S. 422 (2007) .............................................................................................. 8

*Southeastern Leasing Corp. v. Stern Dragger Belogorsk,*
        493 F.2d 1223 (1st Cir. 1974)............................................................................... 8

*Spacil v. Crowe,*
        489 F.2d 614 (5th Cir. 1974) ................................................................................ 8

*Sugarman v. Aeromexico, Inc.,*
        626 F.2d 270 (3d Cir. 1980)................................................................................. 4

*Transaero, Inc. V. La Fuerza Aerea Boliviana,*
        30 F.3d 148 (D.C. Cir. 1994) ............................................................................... 5

*Ye v. Zemin,*
        383 F.3d 620 (7th Cir. 2004) ............................................................................. 8, 9

*Wultz v. Islamic Republic of Iran,*
        864 F. Supp. 2d 24 (D.D.C. May 14, 2012)...................................................... 5, 6

*Yousuf v. Samantar,*
699 F.3d 763 (4th Cir. 2012) ................................................................................... 9

**STATUTES**

18 U.S.C. § 2333 ........................................................................................................ 2

22 U.S.C. § 8401(10) ................................................................................................. 5

28 U.S.C. § 517............................................................................................................ 1

28 U.S.C. § 1330 ........................................................................................................ 4

28 U.S.C. § 1350 ........................................................................................................ 2

28 U.S.C. § 1602 ........................................................................................................ 4

28 U.S.C. § 1605 ........................................................................................................ 4

28 U.S.C. § 1605(a) .................................................................................................... 6

28 U.S.C. § 1605A ....................................................................................................... 6

28 U.S.C. § 1606 ......................................................................................................... 4

28 U.S.C. § 1607 ......................................................................................................... 4

## INTRODUCTION

The United States respectfully submits this Statement of Interest and Suggestion of Immunity in response to this Court's request for its views and to inform the Court of its determination regarding the immunity of certain defendants in this action.[1] The United States has strong interests in the proper interpretation of the Foreign Sovereign Immunities Act ("FSIA") and in ensuring the correct application of principles of foreign official immunity accepted by the Executive Branch. These cases implicate both issues.

The United States strongly condemns the terrorist attacks in Mumbai, and continues to believe that the Islamic Republic of Pakistan must take steps to dismantle Lashkar-e-Taiba and to support India's efforts to counter this terrorist threat. In the United States' view, the FSIA requires that the Inter-Services Intelligence Directorate of Pakistan (the "ISI") be accorded immunity from this civil suit[2] because the ISI is a fundamental part of the Government of Pakistan itself and no exception to immunity applies. Moreover, the Department of State has determined that the former Directors General of the ISI, Ahmed Shuja Pasha and Nadeem Taj, enjoy immunity, a determination that is not subject to judicial review. In making this determination, the United States emphasizes that it expresses no view on the merits of plaintiffs' claims.

---

[1]  This filing is submitted under 28 U.S.C. § 517, which provides that "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

[2]  The Executive Branch's recognition of foreign official immunity in the civil context does not imply that foreign officials are entitled to immunity in a criminal case.

1

## BACKGROUND

The plaintiffs in these cases are American and Israeli citizens who were injured or whose relatives were killed during the 2008 terrorist attacks in Mumbai, India.  They sue under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333.  In relevant part, plaintiffs allege that the ISI controlled and coordinated the terrorist attacks and provided critical planning and material support to the attackers.  They also contend that former Directors General Pasha and Taj provided material support and resources to the attackers, recruited participants, and planned the attacks.  Plaintiffs seek compensatory and punitive damages.

On April 23, 2012, this Court requested that "the United States . . . file a statement of interest in the above-captioned matters, or notify the Court as to why it declines to do so." Request for Statement of Interest From the United States Department of State and Order Staying All Actions 4, ECF No. 23 (No. 10-05381).  This Court stayed these cases pending a submission from the United States.  The United States respectfully submits this Statement of Interest and Suggestion of Immunity in response to the Court's request and to inform the Court of its determination regarding the immunity of certain defendants.

## ARGUMENT

I. **THE INTER-SERVICES INTELLIGENCE DIRECTORATE OF THE ISLAMIC REPUBLIC OF PAKISTAN IS IMMUNE FROM SUIT BECAUSE IT IS A FOREIGN STATE WITHIN THE MEANING OF THE FSIA AND NO EXCEPTION TO IMMUNITY APPLIES**

"The doctrine of foreign sovereign immunity developed as a matter of common law long before the FSIA was enacted in 1976." *Samantar v. Yousuf*, 130 S. Ct. 2278, 2284 (2010).  In *Schooner Exchange v. McFaddon*, 7 Cranch 116 (1812), Chief Justice Marshall explained that "the United States had impliedly waived jurisdiction over certain activities of foreign

sovereigns." *Id.* *Schooner Exchange* was "interpreted as extending virtually absolute immunity to foreign sovereigns as 'a matter of grace and comity.'" *Samantar*, 130 S. Ct. at 2284 (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983)).

Following the decision in *Schooner Exchange*, "a two-step procedure developed for resolving a foreign state's claim of sovereign immunity." *Samantar*, 130 S. Ct. at 2284 (citing *Republic of Mexico v. Hoffman*, 324 U.S. 30, 34–36 (1945); *Ex parte Peru*, 318 U.S. 578, 587–89 (1943); *Compania Espanola de Navegacion Maritima, S.A. v. The Navemar*, 303 U. S. 68, 74–75 (1938)). Under this regime, a foreign state sued in the United States could request a "Suggestion of Immunity" from the Department of State. *Samantar*, 130 S. Ct. at 2284 (quotation marks omitted). If the Department of State accepted the request and filed a Suggestion of Immunity, the district court "surrendered its jurisdiction." *Id.* If the Department of State took no position in the suit, "a district court had authority to decide for itself whether all the requisites for such immunity existed," applying "the established policy of the [Department of State]." *Id.* (quotation marks omitted) (alteration in original). As the Supreme Court recently explained, "[a]lthough cases involving individual foreign officials as defendants were rare, the same two-step procedure was typically followed when a foreign official asserted immunity." *Id.* at 2284–85 (citing cases).

In suits against foreign states, "[t]his general doctrine of absolute sovereign immunity survived until 1952, when the so-called Tate Letter enunciated as United States policy a new, 'restrictive' theory of sovereign immunity." *Garb v. Republic of Poland*, 440 F.3d 579, 585 (2d Cir. 2006). Under the restrictive theory, a foreign sovereign is immune from suit for its "public acts," but may be sued for its non-sovereign acts. *See* Letter of Jack B. Tate, Acting Legal Adviser, Department of State, to Acting Attorney General Philip B. Perlman (May 19, 1952),

*reprinted* in 26 Dep't of State Bull. 984, 984-85 (1952), and in *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 711-15 (1976); *see also Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 273-74 (3d Cir. 1980) (reprinting the "core" of the Tate Letter).

Congress largely codified the restrictive theory of foreign sovereign immunity by enacting the FSIA, 28 U.S.C. §§ 1330, 1602 et seq., in 1976. The FSIA thus "supersede[d] the common-law regime for claims against foreign states." *Samantar*, 130 S. Ct. at 2292. With respect to claims against "a foreign state or its political subdivisions, agencies, or instrumentalities," the FSIA "transfers primary responsibility for immunity determinations from the Executive to the Judicial Branch." *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (quotation marks omitted). Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," unless the suit comes within one of the statutory exceptions to immunity. 28 U.S.C. § 1604. "Thus, if a defendant is a 'foreign state' within the meaning of the Act, then the defendant is immune from jurisdiction unless one of the exceptions in the Act applies." *Samantar*, 130 S. Ct. at 2285-86; *see also* 28 U.S.C. §§ 1605–1607 (enumerating exceptions).

Under the FSIA, the ISI is immune from suit for the simple reason that it is a fundamental part of the Pakistani government. Under the FSIA, the ISI must be treated as a "foreign state" for purposes of the FSIA and there is no applicable exception to immunity. There can be no serious question regarding the ISI's status as a "foreign state" within the meaning of the FSIA. As the Government of Pakistan states, the ISI is part of its government, organized under the Ministry of Defence. Moreover, although plaintiffs contend that the ISI is not governed or authorized by Pakistani law and is not under the control of the Pakistani government, the United States executive and legislative branches have consistently treated the ISI as part of the

Government of Pakistan. The executive branch holds official meetings with representatives of the ISI, issues them diplomatic visas consistent with their status as Pakistani government employees, and in all respects recognizes the ISI as part of the Government of Pakistan. Congress likewise has specifically recognized that the ISI is part of the Pakistani government. *See* 22 U.S.C. § 8401(10) ("The term 'security forces of Pakistan' means the military and intelligence services of the Government of Pakistan, including the Armed Forces, Inter-Services Intelligence Directorate, Intelligence Bureau, police forces, levies, Frontier Corps, and Frontier Constabulary."). It would be inappropriate for the Court to second-guess the conclusion that the political branches and Pakistan itself have reached. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964). The United States is not aware of any case in which a court has concluded that a component of a foreign state lacks immunity because the foreign state allegedly does not control its actions. Plaintiffs' theory is particularly unusual in the context of an intelligence agency, which, like a foreign ministry or defense ministry, serves a quintessentially sovereign purpose.

Indeed, in other cases under the FSIA, courts have held that a nation's armed forces, intelligence agencies, and foreign ministries are parts of the foreign state. *See, e.g.*, *Transaero v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) (armed forces); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) ("A nation's armed forces are clearly on the governmental side. . . . For similar reasons, the Ministry of Foreign Affairs must be treated as the state of Iran itself."); *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 370 (2009) ("We shall refer to the Ministry, for present purposes an inseparable part of the Iranian State, as 'Iran.'"); *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 32 (D.D.C. May 14, 2012) ("Thus, defendants MOIS, Syrian Ministry of

Defense, Syrian Military Intelligence, and Syrian Air Force Intelligence Directorate are foreign states for purposes of these proceedings."); *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109, 119 (D.D.C. Apr. 20, 2012) (finding that the Iranian Ministry of Information and Security is "a foreign state for purposes of these proceedings."); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005) (the Israeli Defense Forces is a foreign state). These cases remove any doubt that the ISI is part of the Government of Pakistan.

None of the FSIA's specified exceptions to foreign sovereign immunity apply here. Plaintiffs cite 28 U.S.C. § 1605A for the proposition that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which money damages are sought . . . for personal injury or death that was caused by an act of torture [or] extrajudicial killing." But Section 1605A's exception applies only if "the foreign state was designated as a state sponsor of terrorism at the time the act . . . occurred, or was so designated as a result of such act." *Id.* § 1605A(a)(2)(A)(i)(I). Because Pakistan is not designated as a state sponsor of terrorism (and was not so designated at the time of the acts alleged here), this exception is inapplicable. Moreover, none of the exceptions in 28 U.S.C. § 1605(a) apply: Pakistan has not waived its immunity (*id.* § 1605(a)(1)), and this action is not based upon any alleged commercial activity or rights in property (*id.* § 1605(a)(2)-(4)). And because plaintiffs' allegations involve events that took place entirely outside the United States, the noncommercial tort exception in 28 U.S.C. § 1605(a)(5) also does not apply.

The ISI is accordingly immune from this Court's jurisdiction because it is a foreign state within the meaning of the FSIA and no exception to immunity applies. *Id.* § 1603.

II.   **APPLYING PRINCIPLES OF FOREIGN OFFICIAL IMMUNITY, THE DEPARTMENT OF STATE HAS DETERMINED THAT FORMER DIRECTORS GENERAL PASHA AND TAJ ARE IMMUNE FROM SUIT**

   A.   **Under Supreme Court Precedent, the Department of State's Foreign Official Immunity Determinations Are Controlling and Are Not Subject to Review**

The conduct of the Nation's foreign affairs is committed to the political branches. As discussed above, prior to the enactment of the FSIA in 1976, courts deferred to the Department of State's determinations concerning the immunity of both foreign states and foreign officials. *See Samantar*, 130 S. Ct. at 2284. Although the FSIA displaced this procedure for claims against foreign states by "transfer[ring] primary responsibility for immunity determinations from the Executive to the Judicial Branch," *Altmann*, 541 U.S. at 691 (quotation marks omitted), the Supreme Court in *Samantar* concluded that the FSIA did not also transfer responsibility to the Judicial Branch for determining the immunity of foreign officials. The Court declared that "nothing in the statute's origin or aims . . . indicate[s] that Congress similarly wanted to codify the law of foreign official immunity." 130 S. Ct. at 2292. Accordingly, the Court could discern "no reason to believe that Congress saw as a problem, or wanted to eliminate, the Department of State's role in determinations regarding individual official immunity." *Id.* at 2291. The Court explained that "[t]he immunity of officials simply was not the particular problem to which Congress was responding when it enacted the FSIA." *Id.* It thus concluded that the FSIA did not bar suit against the defendant in that case and remanded to allow the district court to consider whether he "may be entitled to head of state immunity, or any other immunity, under the common law." *Id.* at 2290 n.15.

In making determinations of foreign official immunity, courts therefore apply the longstanding two-step framework (discussed above) that was not displaced by the FSIA.[3] As the Second Circuit has held, under that framework, the separation of powers requires courts to defer to the Executive Branch's determination regarding foreign official immunity. *See Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("Here, the Executive Branch has urged the courts to decline jurisdiction over appellants' suit, and under our traditional rule of deference to such Executive determinations, we do so."). For as the Seventh Circuit observed in *Ye v. Zemin*, "[i]t is a guiding principle in determining whether a court should [recognize a suggestion of immunity] in such cases, that the courts should not so act as to embarrass the executive arm in its conduct of foreign affairs . . . by assuming an antagonistic jurisdiction." 383 F.3d 620, 626 (7th Cir. 2004) (quoting *Hoffman*, 324 U.S. at 35) (quotation marks omitted).

In the absence of a controlling statute, the common law governing foreign official immunity is a "rule of substantive law" requiring courts to "accept and follow the executive determination" concerning a foreign official's immunity from suit. *Hoffman*, 324 U.S. at 36; *see Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974) ("When the executive branch has determined that the interests of the nation are best served by granting a foreign sovereign immunity from suit in our courts, there are compelling reasons to defer to that judgment without question.").[4]

---

[3] In a case involving a claim of immunity, the courts need not address the immunity question until they have first reached determinations on threshold issues, including whether a foreign official defendant has been properly served and whether the court has personal jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

[4] *See also Southeastern Leasing Corp. v. Stern Dragger Belogorsk*, 493 F.2d 1223, 1224 (1st Cir. 1974) (rejecting argument that district court "erred . . . in accepting the executive suggestion of immunity without conducting an independent judicial inquiry"); *Isbrandtsen Tankers v. President of India*, 446 F.2d 1198, 1201 (2d Cir. 1971) ("[O]nce the State Department has ruled in a matter of this nature, the judiciary will not interfere." (deferring to Department of State

Because the FSIA does not apply to foreign officials, the decision concerning the immunity of foreign officials "remains vested where it was prior to 1976 — with the Executive Branch." *Ye*, 383 F.3d at 625.

### B.   The Department of State Has Determined That Former Directors General Pasha and Taj Are Immune From This Suit

As a general matter, under principles accepted by the Executive Branch, a former foreign official enjoys immunity from suit based upon acts taken in an official capacity.  In making the official capacity determination, the Department of State considers a foreign government's request (if there is such a request) that the Department of State suggest the former official's immunity.

Notwithstanding such a request, however, the Department of State could determine that a foreign official is not entitled to immunity.  That would occur, for example, should the Department of State conclude that the conduct alleged was not taken in an official capacity, as might be the case in a suit challenging a former official's purely private acts, such as personal financial dealings.[5]  In making that determination, it is for the Executive Branch, not the courts,

---

foreign sovereign immunity determination)); *Rich v. Naviera Vacuba, S.A.*, 295 F.2d 24, 26 (4th Cir. 1961) ("We think that the doctrine of the separation of powers under our Constitution requires us to assume that all pertinent considerations have been taken into account by the Secretary of State in reaching his conclusion." (deferring to Department of State foreign sovereign immunity determination)).  In a recent decision, the Fourth Circuit stated that while courts should place "substantial weight" on the Executive's determination, the Executive's determination is not controlling.  *See Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012).  But, of course, the Second Circuit's contrary decisions in *Dichter* and *Isbrandtsen Tankers* are binding precedent on that point here.

[5]  As noted, if the United States takes no position in the suit involving a claim to foreign official immunity, "a district court ha[s] authority to decide for itself whether all the requisites for such immunity exist[]," applying "the established policy of the [Department of State]." *Samantar*, 130 S. Ct. at 2284 (quotation marks omitted) (last alteration in original).  However, because a foreign state's request for immunity on behalf of an official itself has foreign relations implications,

to determine whether the conduct alleged was taken in a foreign official's official capacity.  *See Hoffman*, 324 U.S. at 35 ("It is . . . not for the courts to deny an immunity which our government has seen fit to allow, or to allow an immunity on new grounds which the government has not seen fit to recognize.").

Here, the Government of Pakistan has requested the Department of State to recognize the immunities of former Directors General Pasha and Taj.  Upon consideration of this matter, and after a full review of the pleadings, the Department of State has determined that former Directors General Pasha and Taj are immune from suit in this case.  *See* Exhibit 1 (Letter from Harold Hongju Koh, Legal Adviser, Department of State, to Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, requesting that the United States suggest the immunity of former Directors General Pasha and Taj).  The complaint contains largely unspecific and conclusory allegations against the Directors General, and relies centrally on plaintiffs' view that the ISI is not part of the Government of Pakistan.  As explained above, that view is incorrect.  By expressly challenging defendants Pasha's and Taj's exercise of their official powers as Directors General of the ISI, plaintiffs' claims challenge defendants Pasha's and Taj's exercise of their official powers as officials of the Government of Pakistan.  The complaint expressly refers not to any private conduct by defendants, but only to Pasha's and Taj's actions as Directors General of the ISI, which as noted above, is a fundamental part of the Government of Pakistan.  All of their allegations in the Complaint are bound up with plaintiffs'

---

courts should ensure that the Executive Branch has been notified of and had an opportunity to consider such a request before ruling on the immunity issue. Indeed, for that reason, a foreign state's request for an official's immunity should first be presented to the Department of State, not to the court. *See id.* (noting that, under the "two-step procedure," the foreign states ask the Department of State to submit a suggestion of immunity).

claims that the former Directors General were in full command and control of the ISI and allegedly acted entirely within that official capacity.[6]  The plaintiffs repeatedly assert that the former Directors General "exerted full command and control" over the ISI.  Compl. ¶ 37, ECF No. 1 (No. 10-05381).  On their face, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity, and plaintiffs have provided no reason to question that determination.

In making this immunity determination, the United States emphasizes that it expresses no view on the merits of plaintiffs' claims.  The United States strongly condemns the terrorist attacks in Mumbai, and continues to believe that the Islamic Republic of Pakistan must take steps to dismantle Lashkar-e-Taiba and to support India's efforts to counter this terrorist threat.[7]

## CONCLUSION

In the view of the United States, the ISI is entitled to immunity because it is part of a foreign state within the meaning of the FSIA.  Furthermore, the Department of State has determined that former Directors General Pasha and Taj are immune because plaintiffs' allegations relate to acts that these defendants allegedly took in their official capacities as directors of an entity that is undeniably a fundamental part of the Government of Pakistan.

Dated:  December 17, 2012                    Respectfully submitted,

                                             STUART F. DELERY
                                             Principal Deputy Assistant Attorney General

---

[6]  *See, e.g.*, Memorandum of Law in Opposition to Motion to Dismiss Submitted by Defendants Inter-Services Intelligence, Pasha and Taj 21, ECF No. 15 (No. 10-05381) (Pasha's and Taj's defenses "are linked directly to those of the ISI").

[7]  Because foreign sovereign immunity and foreign official immunity provide an adequate basis upon which to dispose of this case with respect to the ISI and former Directors General Pasha and Taj, the United States takes no position on the political question doctrine issues that are also presented in this case.

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

LORETTA E. LYNCH
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

<u>s/*Ethan P. Davis*</u>
ETHAN P. DAVIS
JUDSON O. LITTLETON
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue NW, Room 6118
Washington, DC  20530
Telephone:  (202) 514-9242
Fax:  (202) 616-8470
Email: ethan.p.davis@usdoj.gov

*Attorneys for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2012, a copy of the foregoing document and all attachments were filed electronically via the Court's ECF system, through which a notice of the filing will be sent to all counsel of record.

*s/ Ethan P. Davis*           
ETHAN P. DAVIS

United States Department of State

*The Legal Adviser*

*Washington, D.C. 20520*

December 17, 2012

The Honorable Stuart F. Delery, Esq.
Principal Deputy Assistant Attorney General
Civil Division
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington D.C. 20530

Re: *Scherr v. Lashkar-e-Taiba et al.*, No. 10-05382-DLI (E.D.N.Y.); *Rosenberg et al. v. Lashkar-e-Taiba et al.*, No. 10-05381-DLI (E.D.N.Y.); *Chroman v. Lashkar-e-Taiba et al.*, No. 10-05448-DLI (E.D.N.Y.); *Ragsdale v. Lashkar-e-Taiba et al.*, No. 11-03893-DLI (E.D.N.Y.)

Dear Mr. Delery Stuart:

I write to request that the Department of Justice convey to the U.S. District Court for the Eastern District of New York in the above-referenced case the determination of the Department of State that Defendants Ahmed Shuja Pasha and Nadeem Taj, each a former Director General of the Inter-Services Intelligence Directorate of the Islamic Republic of Pakistan (ISI), enjoy immunity from suit with respect to this action.

As a threshold matter, we note that the Department of State strongly condemns the terrorist attacks in Mumbai. The Department continues to believe that the Islamic Republic of Pakistan must take steps to dismantle Lashkar-e-Taiba and to support India's efforts to counter this terrorist threat. This determination of immunity should not be viewed as expressing any view on the merits of plaintiffs' claims.

Upon consideration of this matter, and after a full review of the pleadings, the Department of State has determined that Defendants Pasha and Taj are immune from suit in this case. The residual immunity of a former official is based upon that official's conduct and extends only to acts that individual took in an official capacity.

Here, the complaint contains largely unspecific and conclusory allegations against the Directors General, and relies centrally on plaintiffs' incorrect view that the ISI is not part of the Government of Pakistan. By expressly challenging defendants Pasha's and Taj's exercise of their official powers as Directors General of the ISI, plaintiffs' claims challenge defendants Pasha's and Taj's exercise of their official powers as officials of the Government of Pakistan. The complaint expressly refers not to any private conduct by defendants, but only to Pasha's and Taj's actions as Directors General of the ISI. All of their allegations in the Complaint are bound up with plaintiffs' claims that the former Directors General were in full command and control of the ISI and allegedly acted entirely within that official capacity. The plaintiffs repeatedly assert

1

that the former Directors General "exerted full command and control" over the ISI.  Compl. ¶ 37. On their face, acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity, and plaintiffs have provided no reason to question that determination.

In light of these circumstances, taking into account principles of immunity articulated by the Executive Branch in the exercise of its constitutional authority over foreign affairs and informed by customary international law, and considering the overall impact of this matter on the foreign policy of the United States, the Department of State has determined that former ISI Directors General Pasha and Taj enjoy immunity from suit with respect to this consolidated action.

Again, this determination of immunity should not be viewed as expressing any view on the merits of Plaintiffs' claims.

Sincerely,

Harold Hongju Koh
Legal Adviser

**Exhibit 2**

Plaintiffs' Response to the Statement of Interest and Suggestion of Immunity,
*Rosenberg v. Lashkar-e-Taiba*,
No. 1:10-cv-05448 (ECF No. 40) (E.D.N.Y. Feb. 15, 2013).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Shimon ROSENBERG, et al.; Kia SCHERR, et al.; and Emunah CHROMAN, et al.; Linda RAGSDALE, et al.; and Autumn GILLES, et al.

Plaintiffs,

v.

LASHKAR-E-TAIBA (also known as Idara Khidmat-e-Khalq, Jamat ud Dawa, Markaz ud Dawa and Tehrik-e-Tahaffuz-e-Qibla Awal); MOHAMAED HAFIZ SAYEED; ZAKI ur REHMAN LAKHVI; SAJID MAJID (also known as Sajid Mir); AZAM CHEEMA; INTER-SERVICES INTELLIGENCE of the ISLAMIC REPUBLIC OF PAKISTAN; AHMED SHUJA PASHA, NADEEM TAJ, MAJOR IQBAL and MAJOR SAMIR ALI,

Defendants.

Plaintiffs' Response to Statement of Interest and Suggestion of Immunity

10-cv-5381 (DLI)
10-cv-5382 (DLI)
10-cv-5448 (DLI)
11-cv-3893 (DLI)
12-cv-5816 (DLI)

## PLAINTIFFS' RESPONSE TO THE STATEMENT OF INTEREST AND SUGGESTION OF IMMUNITY

KREINDLER & KREINDLER
James P. Kreindler (JK7084)
750 Third Avenue
New York, NY  10017-5590

-- and --

THE SILVERMAN LAW FIRM
16 Squadron Boulevard
New City, NY  10956

1

Plaintiffs charge Ahmed Shuja Pasha ("Pasha") and Nadeem Taj ("Taj"), the former directors of the Inter-Services Intelligence Directorate ("ISI"), with collaborating with Lashkar-e-Taiba ("LeT"), a group classified by the Department of State as a foreign terrorist organization and the Department of Treasury as a blocked terrorist organization, in planning and executing the Mumbai terror attacks.  As set forth in plaintiffs' earlier briefings, LeT was founded by the ISI acting in conjunction with Al Qaeda.  Plaintiffs alleged that Pasha and Taj individually engaged in orchestrating the Mumbai attacks and that they thus are independently liable for acts of murder, torture and terrorism, classic violations of *jus cogens* norms.  Discovery would show precisely what roles those individuals played, such as why Pasha personally visited Zaki ur Rehman Lakhvi, an LeT leader, in prison soon after the terrorist attacks.

Pasha and Taj are indisputably not entitled to statutory immunity under the Foreign Sovereign Immunities Act ("FSIA").  Further, the Department of State's view of common law immunity is not dispositive; this Court must exercise its judicial autonomy and reach an independent decision as to whether Pasha and Taj may avail themselves of foreign officer common law immunity for their role in the Mumbai mass murder.  Moreover, plaintiffs must be afforded an opportunity to conduct discovery on the question of whether Pasha and Taj participated in the torture, extrajudicial killing, sabotage and hostage taking of the United States victims of the Mumbai terror attacks, as individuals who violate internationally accepted *jus cogens* norms, even if under color of official authority, are not entitled to foreign officer immunity.

1

### The Executive Branch's Determination Regarding
### Foreign Official Immunity is Not Controlling

The Judicial Branch is not – and as a basic matter of separation of powers, must not be --

bound by suggestions from the Department of State regarding foreign official immunity[1] and the

Executive Branch's statements in this regard are decidedly not entitled to absolute deference.

"Unlike head-of-state immunity and other status-based immunities, there is no equivalent

constitutional basis suggesting that the views of the Executive Branch control questions of

foreign official immunity." *Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012).  The opinion

of the Executive Branch with respect to a defendant's potential immunity for acts that may have

been committed within the scope of his or her official capacity "concerns the general assessment

of a case's impact on the foreign relations of the United States … rather than a controlling

determination of whether an individual is entitled to conduct-based immunity." *Id*.  Thus, the

Department of State's recommendations regarding a foreign officer's immunity do not displace

the judiciary's essential role in determining whether an individual defendant may avoid suit.

This Court – and not the Department of State – must determine the foreign officer immunity of

Pasha and Taj.

### Pasha and Taj Are Not Entitled to Immunity

Neither Pasha nor Taj is entitled to foreign officer immunity here.  As the Supreme Court

has held, individuals cannot claim the statutory immunity that attaches to acts of a sovereign

under the FSIA which, based on its text, purpose and history, applies only to claims against a

foreign state and not its individual officers. *Yousuf v. Samantar*, 130 S.Ct. 2278, 2289 (2010)

("Reading the FSIA as a whole, there is nothing to suggest we should read 'foreign state' in §

---

[1] This is as opposed to "head of state immunity," which rests on a defendant's status as the
representative of the sovereign.

2

1603(a) to include an official acting on behalf of the foreign state, and much to indicate that this meaning was not what Congress enacted."); *see also Carpenter v. Chile*, 610 F.3d 776, 780 (2d Cir. 2010) (acknowledging abrogation of *In re Terrorist Attacks on Sept. 11, 2001* and stating that the Foreign Sovereign Immunity Act "no longer protects government officials[.]")  The only conceivable immunity for the individual defendants, therefore, is under the common law.

At this stage of the proceedings, plaintiffs' allegations concerning Pasha and Taj must be accepted as true.  In addition to the general allegations against these two individuals are specific claims that (1) Pasha met individually with Lakhvi, an LeT leader, while Lakhvi was imprisoned and that during that meeting the two discussed the Mumbai terrorist attacks; and (2) Pasha, Taj and other ISI officers conspired with David Headley and Tahawwur Hussain Rana, both of whom have been convicted of terrorist acts in the United States District Court for the Northern District of Illinois, to raise funds, build a network of connections, recruit participants and plan the Mumbai terrorist attacks.  The intended and actual result of Pasha's and Taj's efforts was the murder, torture and terrorizing of plaintiffs and plaintiffs' decedents.

A claim of foreign officer immunity will be unavailing when the acts that form the basis of the suit "violate a *jus cogens* norm, also known as a 'peremptory norm of general international law,'" which "can be defined as 'a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." *Samantar*, 699 F.3d at 775, *quoting Vienna Convention on the Law of Treaties*, art. 53, May 23, 1969, 1155 U.N.T.S. 331 ("Vienna Convention"); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 715 (9th Cir. 1992) (adopting Vienna Convention of *jus cogen* norms). Among the widely and commonly accepted notions of violations of *jus cogen* norms are acts of

3

murder, torture and summary execution. *See Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774,

791 n. 20 (D.C. Cir. 1984) (Edward, J., concurring) ("On the basis of international covenants,

agreements and declarations, commentators have identified at least four acts that are now subject

to unequivocal international condemnation: torture, summary execution, genocide and slavery");

*Restatement (Third) of Foreign Relations Law*, § 702 (listing the state acts that constitute

violation of *jus cogens* norms, including murder and intentional infliction of severe physical or

mental pain or suffering). Although *jus cogens* violations may, by their nature, have a political

component and "may well be committed under color of law", these acts are never entitled to

foreign officer immunity, even if they were "performed in the course of the foreign official's

employment by the Sovereign." *Samantar*, 699 F.3d at 776. Acts of murder and torture "are, by

definition, acts that are not officially authorized by the Sovereign." *Id.* As a result, both

domestic and foreign courts have concluded that *jus cogens* violations are not legitimate and,

consequently, do not warrant foreign officer immunity, even if the acts were technically

committed in the defendant's capacity as a foreign official. *See, e.g., Regina v. Bartle, ex parte

Pinochet*, 38 I.L.M. 581, 593 – 95 (H.L. 1999) (no official act immunity from liability for

torture, which does not constitute an officially-approved act); *Sarei v. Rio Tinto, PLC*, 487 F.3d

1193, 1209 (9th Cir. 2007) ("international law does not recognize an act that violates jus cogens

as a sovereign act").[2]

Because the acts with which plaintiffs have charged Pasha and Taj – the targeted murder

and attempted murder of individuals on the basis of their nationality and/or religion – violated

---

[2] Foreign officer immunity in this area differs from head-of-state immunity, for which *jus cogens*
violations may not strip the defendant of sovereign immunity. *See, e.g., Devi v. Rajapaska* 2012
WL 3866495, at *3 (S.D.N.Y. Sept. 4, 2012) (sitting president of Sri Lanka immune from suit,
even for *jus cogens* violations). The Department of State, however, has only argued in favor of
foreign officer immunity on behalf Pasha and Taj.

4

peremptory norms of international law, the defendants cannot avail themselves of the benefits of foreign officer immunity. This is so despite the Department of State's filing here, as the Executive Branch is not empowered to unilaterally alter those internationally accepted and recognized norms, such as a prohibition on murder and torture.

### Plaintiffs Must be Afforded an Opportunity for Discovery as to Pasha and Taj

A defendant seeking the benefits of sovereign immunity always bears the "ultimate burden of persuasion" on immunity. *Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). The party asserting immunity also bears the burden "of producing evidence to establish its claim of sovereign immunity." *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Const. Industries*, 575 F.Supp. 1222, 1224 (S.D.N.Y. 1983). "[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue" of an immunity claim. *First City, Texas Houston, N.A. v. Rahdain Bank*, 150 F.3d 172, 176 – 177 (2d Cir. 1998); *see also Filus v. LOT Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990). Refusal to do so when the non-movant has identified specific facts and questions undermining the jurisdictional defense constitutes an abuse of a court's discretion. *See First City*, 150 F.3d at 177.

Here, plaintiffs' allegations, if proven, would establish that Pasha and Taj are not entitled to immunity. Since there has been no discovery yet, plaintiffs must be allowed to conduct a limited inquiry into the responsibilities and authority wielded by Pasha and Taj and their role in planning and executing the Mumbai attacks.

Dated: New York, New York  
      February 15, 2013

KREINDLER & KREINDLER

_____/s/_____  
James P. Kreindler (JK7084)  
750 Third Avenue  
New York, NY  10017-5590

5

(212) 687-8181
(212) 972-9432 (Fax)

-- and --

THE SILVERMAN LAW FIRM
16 Squadron Boulevard
New City, NY  10956

**Certificate of Service**

I certify that on February 15, 2013, I electronically filed the foregoing Plaintiffs' Response to Statement of Interest and Suggestion of Immunity with the Clerk of the Court by using the CM/ECF system, with copies served on all parties registered to receive electronic notice on this matter.


__/s/_____
James P. Kreindler, Esq.
Attorney for Plaintiffs

7

**Exhibit 3**


Transcript,
*Burnett v. Al Baraka Inv. & Devel. Corp.*,
No. 02-1616-JR (D.D.C. Oct. 17, 2003) (excerpts).

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Thomas Burnett, et al.          Docket No. CA 02-1616 JR

        Plaintiffs

                        Washington, D.C.

     vs.              Friday, October 17, 2003

                        2:05 p.m.

Al Baraka Investment

 Corporation, et al.

        Defendants

Transcript of Motion Hearing

Before the Honorable James Robertson

United States District Judge

APPEARANCES:

For the Plaintiff:          Harry Huge, Esq.

                        Andrea Bierstein, Esq.

                        Jodi W. Flowers, Esq.

                        Ron Motley, Esq.

                        Allan Gerson, Esq.

For the Defendant:          William H. Jeffress, Jr., Esq.

                        Casey Cooper, Esq.

                        Sara E. Kropf, Esq.

                        Mark C. Hansen, Esq.

                        Michael K. Kellogg, Esq.

Reporter:          WILLIAM D. MC ALLISTER, CVR-CM

                        Official Court Reporter

                        Room 4806-B

                        333 Constitution Avenue, N.W.

                        Washington, D.C. 20001-8306

                        (202) 371-6446

Reported by Stenomask and transcribed using SpeechCAT

Pages 1 through 104

1    was released on November 1st of 2002, it is still on the web

2    site.  In fact we downloaded it from the web site yesterday.

3    This is a Q and A addressed to the State Department about

4    whether that department has intervened in the lawsuit and what

5    position the State Department has, and as Your Honor can see,

6    what the State Department said it is that it's aware of the

7    lawsuit.  It's not a defendant.  It doesn't comment on pending

8    litigation, but most important that it has no plans to

9    intervene in this case.

10   THE COURT:  And for further information, contact the

11   Department of Justice.

12   (Laughter.)

13   THE COURT:  So we are all on the same page here.

14   MS. BIERSTEIN:  Contact the Department of Justice.

15   Which, actually, Your Honor, leads to my other point

16   which despite Mr. Jeffress assertion that this action would

17   have to come from the State Department which he said doesn't do

18   this except in response to a request from the court, my

19   understanding is that this actually comes through the Justice

20   Department and through White House counsel's office and that

21   they do intervene when they feel it is necessary.

22   As I was going to point out to Your Honor that we

23   knew for sure that the government was aware of this lawsuit,

24   but obviously, Your Honor has further made the government aware

25   of the lawsuit.

Page 53

1    So I think it's clear that they know.  I think it's

2     clear that they could come in if they wanted to but I guess the

3     last point that Mr. Jeffress made on this that I think it's

4     important to address is he suggested that plaintiffs shouldn't

5     be the ones deciding whether the case is in furtherance of

6     foreign policy but that the court should be deciding that.

7    I think that's a very dangerousness notion that the

8     defendants are advancing that the courts are supposed to

9     consider the effect of a case on U.S. national interests and on

10    foreign policy.

11   I think we have an independent judiciary precisely

12    because the rights of our citizens to seek justice in a court

13    of law is not tied to the views of the political branches about

14    what's in the best interest of the  foreign policy of a

15    country.

16   And as the Supreme Court said 200 years ago in

17    Marberry versus Madison, the very essence of civil liberty

18    consists in the right of every individual to claim the

19    protection of the laws whenever he receives an injury.  And

20    that is not to say there is not a role for the political

21    question doctrine and in fact that doctrine is first announced

22    I believe in the same case but the notion that Your Honor is

23    supposed to decide whether a case is in the national interest

24    or not I think is a dangerous one that there is no precedent

25    for and we would urge Your Honor not to go down that road.