THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | ) |  |
| In Re Terrorist Attacks on September 11, 2001 | ) | No. 03 MDL 1570 (GBD/FM) |
|  | ) | ECF Case |

## WAEL JELAIDAN'S RULE 72 EXCEPTIONS TO MAGISTRATE'S RULING

COMES NOW the Defendant, Wael Jelaidan, herein and pursuant to Rule 72 of the Federal Rules of Civil Procedure hereby moves the court for relief to reverse a ruling recently made by Magistrate Frank Maas. On September 28, 2013 in response to the Plaintiffs' motion for sanctions against Mr. Jelaidan for discovery infractions, the Magistrate found that Mr. Jelaidan failed to satisfy his discovery obligations and acted in bad faith. Further, the Magistrate found that the requested documents would have had significant evidentiary value for the Plaintiffs' allegations and therefore he considered them relevant in this case. As a result of such a finding, the Magistrate determined that an adverse inference sanction is appropriate as well as the reimbursement of fees and costs associated with the Plaintiffs' filing of the present motion.

As shown infra, there are a number of reasons why the Magistrate's determination to impose sanctions on Wael Jelaidan was an erroneous ruling and should be reversed. The following sections will show that the Plaintiffs have not demonstrated that Wael Jelaidan acted in bad faith and in total disregard of his discovery obligations. Therefore, an award of sanctions is inappropriate. In addition, it is obvious that the Plaintiffs had a suitable remedy to secure the requested documents by way of having the court issue letters rogatory to the respective financial institutions. Finally, under the circumstances of the instant matter, an adverse inference sanction would be harsh, unreasonable, and greatly tilt the evidentiary scale in favor of the Plaintiffs.

1

## I. PLAINTIFFS HAVE NOT DEMONSTRATED THAT WAEL JELAIDAN ACTED IN BAD FAITH AND THAT SANCTIONS ARE APPROPRIATE IN THIS INSTANCE

### A. The Defendant Met His Discovery Obligations and Acted in Good Faith

As outlined in the Defendant's March 14, 2013 opposition to the Plaintiffs' motion to compel and/or motion for sanctions, Mr. Jelaidan has attempted in good faith to collect responsive documents, but many of the banking and governmental institutions have not been compliant. As a result of Mr. Jelaidan's designation as a "Specially Designated Global Terrorist" and thus an individual associated with "Al Qaida", all of his bank accounts were frozen by the respective governments where the accounts were located. As detailed in Mr. Jelaidan's various filings with the Magistrate, he has continued to experience significant obstacles in obtaining the requested documents. (Exhibit , paragraph 5). As noted, the banks have either been non-responsive or reluctant to release any documents or information. (Exhibit 2, paragraph 4). There is no indication that Mr. Jelaidan or his counsel has acted in bad faith or willfully disregarded discovery orders. As mentioned, Mr. Jelaidan simply does not have the responsive documents and/or is not able to obtain the requested documents. Mr. Jelaidan has continued to make diligent efforts, in good faith and to the best of his abilities, to obtain the responsive documents, hardly a posture of a party frustrating the discovery process. Therefore, he met his discovery obligations to the best of his ability and acted in good faith, and as such imposing sanctions for failure to meet his discovery obligations would not be appropriate.

### B. The Defendant Did Not Act With a Culpable State of Mind

When sanctions are sought against a party for discovery infractions, the moving party must demonstrate that the opposing party acted with a "culpable state of mind." In re Sept. 11 Liab. Inc. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (hereinafter "Coverage Cases"). The

Magistrate noted that in this Circuit, the element of culpability may be satisfied if the non-disclosing party breaches a discovery obligation or destroys evidence through bad faith or negligence. In the instant matter, the Plaintiffs have not shown that Mr. Jelaidan either breached his discovery obligation or destroyed evidence through bad faith, gross negligence, or even ordinary negligence.

Unlike the defendant insurer in <u>Coverage Cases</u> who knowingly destroyed evidence and failed to produce evidence in his possession, Mr. Jelaidan has not ever knowingly destroyed any of the requested documents or failed to produce documents in his possession. Mr. Jelaidan is unable to produce the requested documents because he simply does not have them in his possession and has shown that he is unable to procure them despite making diligent efforts to do so. (Exhibit 1, paragraphs 5 and 14). Such inability to produce the requested documents does not evidence that he is negligent, unwilling to participate in discovery, or acting in bad faith. Further, such inability cannot fairly be characterized as bad faith or that Mr. Jelaidan is acting negligently and/or with the intention of destroying evidence. As noted above, Mr. Jelaidan has made diligent efforts to obtain the responsive materials and exhausted all avenues by which to collect the missing documents. (*See* Defendant's Opp. to Plaintiffs' Motion to Compel at pages 2-4). This is indicative of the fact that Mr. Jelaidan has acted in total good faith to ensure that his discovery obligations were satisfied. Therefore, the imposition of sanctions for an alleged failure to meet his discovery obligations would not be appropriate.

## II.   PLAINTIFFS HAD ALTERNATIVE MEANS AVAILABLE TO SECURE THE REQUESTED FINANCIAL DOCUMENTS

In 2002, Mr. Jelaidan was designated as a Specially Designated Global Terrorist for his alleged association with "Al Qaida". It is undisputed that this designation resulted in all of his

bank accounts being frozen by the respective governments where the accounts were located. Notwithstanding such limitations, Mr. Jelaidan continued to make diligent efforts to personally procure the documents requested by the Plaintiffs.[1] As his efforts were proving more and more challenging, Mr. Jelaidan suggested in good faith that the Plaintiffs' counsel make such request for documents on his behalf by filing letters rogatory to the financial institutions. Such a request would have obviated the need for the Plaintiffs' Motion to Compel discovery.

Nevertheless, it has never been explained in this record why the Plaintiffs chose not to pursue this alternative approach to procuring the requested documents. Mr. Jelaidan continues to act in good faith to meet his discovery obligations in any way possible but continues to face significant limitations and challenges given his designation as a global terrorist. Mr. Jelaidan did not have any objection to the Plaintiffs' lawyers approaching the financial institutions and requesting his records on his behalf. The failure of the Plaintiffs to pursue alternative means of procuring these documents makes the sanctions rendered by Magistrate Maas inappropriate.

### III. AN ADVERSE INFERENCE SANCTION IS HARSH AND UNREASONABLE UNDER THE CIRCUMSTANCES

#### A. The Adverse Inference Sanction is Harsh and Unreasonable Because the Defendant Acted in Good Faith to Meet All His Discovery Obligations.

As noted above, Mr. Jelaidan maintains that he simply does not have possession of or access to the documents requested by the Plaintiffs. He has acted diligently and made a good faith effort to procure the requested documents, but the banks and governmental institutions have not been compliant with his requests. Any shortfalls in his document production are attributed solely to his inability to procure the documents requested, not his unwillingness to meet his

---

[1] As this Court should be made aware, Professor Gurule of Notre Dame Law School submitted an affidavit on behalf of the Plaintiffs claiming that it is fairly easy to procure documents such as the ones requested by the Plaintiffs despite a Special Designation as a Global Terrorist. Professor Gurule did not cite any actual experience wherein such a request was successful. In fact, Professor Gurule failed to point out or supply a single example of even one instance where he was actually successful in procuring such documents for a Specially Designated Global Terrorist.

4

discovery obligations. It would be unjustified to sanction Mr. Jelaidan for failure to produce documents that are not in his possession and that he is unable to procure. Thus, an adverse inference sanction would be too severe and unjustified in this instance because Mr. Jelaidan acted in good faith.

### B. The Adverse Inference Sanction Would Unfairly Tilt the Evidentiary Scale in Favor of the Plaintiffs

The purpose of an adverse inference sanction is to restore the evidentiary imbalance caused by a party's failure to produce requested documents that would be vital to the opposing party's claim. The Magistrate found that Mr. Jelaidan's failure to produce the responsive documents supposedly deprived the Plaintiffs of vital information relevant to their case. However, this finding is nothing more than a stark assumption that such responsive documents actually exist. Mr. Jelaidan has provided evidence to the Plaintiffs of his good faith efforts to procure the requested documents from the relevant banks and governmental institutions but highlights that such document requests should not be viewed as an admission that such documents exist. (*See* Defendant's Opp. to Plaintiffs' Motion to Compel at page 3). The letter requests are mere attempts to collect any documents that may be available.

Thus, an adverse inference sanction would be too severe and further unjustified in this instance because there is no indication that the requested documents even exist. The suggested adverse inference would unfairly tilt the balance in favor of the Plaintiffs and dramatically place Mr. Jeleidan in a disadvantageous position. *See* Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the So. Dist. Of Iowa, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger of unnecessary, or unduly burdensome, discovery may place them in a

disadvantageous position."). Therefore, an award of an adverse inference instruction is not necessary to maintain the evidentiary balance between the parties.

## Conclusion

Because Mr. Jelaidan has not acted in bad faith or with a culpable state of mind, the adverse inference sanction should not be imposed against him. Mr. Jelaidan himself, his Saudi Counsel, and the undersigned counsel here, have requested banking documents on his behalf, and those institutions have largely been unwilling to provide Mr. Jelaidan with any responsive documents or further correspondence. Mr. Jelaidan simply does not have in his possession or under his control any documents responsive to those requests.

Respectfully submitted,

*/s/ Martin McMahon*
Martin F. McMahon, Esq.
McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
Phone: (202) 862-4343
Fax: (202) 828-4130
mm@martinmcmahonlaw.com

Dated: November 11, 2013                    *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of November, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system pursuant to section 2.9(a), Electronic case filing, 1 Civil Practice in the Southern District of New York section 2:9 (2d ed.), which will then send a notification of such filing (NEF) to the Plaintiffs' counsel.

                                                */s/ Martin McMahon*
                                                Martin F. McMahon, Esq.
                                                McMahon & Associates
                                                1150 Connecticut Avenue, N.W.
                                                Suite 900
                                                Washington, D.C. 20036
                                                Phone: (202) 862-4343
                                                Fax: (202) 828-4130
                                                mm@martinmcmahonlaw.com

# Exhibit 1

## Affidavit of Wael Hamzah Jelaidan

IN THE NAME OF GOD, THE MERCIFUL, THE COMPASSIONATE

I Wael Hamzah Jelaidan, state as follows:

1. I give this affidavit in support of our memorandum in opposition to the plaintiffs' motion to compel.

2. I do not now and have never supported international terrorism of any kind, and the only relationship I had with Osama bin-Laden was in connection with my supporting humanitarian efforts in Afghanistan in the late 1980's. There was a tremendous number of Afghani refugees who fled into Pakistan during that time due to the Russian invasion and occupation. I would like to add that during my limited interaction with Osama Binladen, he was an acceptable figure locally and internationally. Further, I would mention that I ran my Offices in complete transparency to the extent that Local and International envoys systematically visited our offices and project sites including the US Embassy officials and His Excellency President Jimmy Carter and Mrs. Carter.

3. My humanitarian career began with the Saudi Red Crescent during 1986 – 88, and then I directed the Muslim World League office in Pakistan from 1989-1994 in addition to being the Director of the Muslim World League office in Pakistan, I was also given the added responsibility of overseeing the repatriation of the Stranded Pakistanis in Bangladesh as the Manager of the said Project (AKA Rabita Trust) since 1992 onwards till 1994. I want the court to know specifically that, in connection with Pakistani activities, there was a complete separation between the MWL and IIRO organizations—separate offices, bank accounts, etc.

4. I have been the Secretary-General of the Rabita Trust since 1999 till this date. It is worth noting that although, I submitted my resignation, it was never ratified nor accepted. Rabita Trust was a humanitarian organization that engaged in the construction of housing units for the repatriation and rehabilitation of Pakistanis displaced in Bangladesh by the 1970 Indo-Pakistan War.

5. On 11/09/2002, I was designated by the UN as a " individual associated with Al-Qaida". Since then, as mentioned below, all of my bank accounts have been frozen by the respective governments of which the accounts were located. I do not possess any documents, such as notifications, concerning these accounts being frozen. With several of these accounts, I was made aware that they were frozen via a phone call or verbal answer to my inquiries.

6. On or about 2001, the Pakistani Authorities froze all of Rabita Trust's bank accounts and confiscated any and all of its documents. The bank accounts referred

to by the Plaintiffs were mainly for the "Stranded Pakistanis in Bangladesh" Repatriation Program. I was the signatory for these accounts. Ever since the Pakistani Authorities seized these accounts, I have been unable to access them nor obtain documents. Any documents that are in my control have been handed over to the Plaintiffs.

7. I did have a personal bank account with Faisal Finance S.A. in Switzerland. However, after the said UN Designation, the account was frozen by the Swiss Authorities per the UN directive. Since then, I do not have the legal authority to access the account nor request any documentation. On several occasions, I have initiated contact with the bank but they have not been responsive. It is very important to understand that because of my designation by the UN, I have been barred from traveling abroad to contact the Banks in person, which has made the requisite effort extremely difficult and in many cases unattainable.

8. I did maintain a bank account with Al Rajhi Bank to facilitate my personal finances. However, that accounts have been frozen and is controlled by the Saudi Authorities. Since the Kingdom has confiscated my account, I neither have authority to access the account nor request any documentation. I have contacted the bank on several occasions and was informed that all relevant information in regards to the account can only be disseminated by the Saudi Authorities.

9. To the best of my recollection, the joint account with Usama bin Laden at Habib Bank was opened in 1985 during the height of the Soviet invasion and occupation of Afghanistan. The account was solely used to receive governmental aid and donations allotted to the Afghan refugees. This account has also been frozen. I have attempted to acquire responsive documents from the bank, but they are not willing to cooperate with me.

10. Over the years, I have had signatory authority over charity accounts with the MWL, Rabita Trust, SJRC, AHAMAA, and SRC. I have never had signatory authority over any account associated with IIRO. I was the principal officer for SRC in Pakistan, MWL in Pakistan, Rabita Trust in Pakistan and SJRC in Albania and Kosovo. Though I used to have signatory authority, I no longer work for these organizations and have been currently out of touch with all of them. As a result, I do not have access or control over any of these said accounts and cannot obtain documents concerning these accounts.

11. Maram Company did maintain bank accounts in Turkey. However, Maram Co. has long ceased operations. I do not have authority to access any of these accounts and cannot request any documentation.

12. I did have an account at the Bank of Austria but cannot recall the account number. If the account number mentioned by the Plaintiffs is that of the Third World Relief Agency, then I had no privity at all to it. If the account number was that of my personal account, then I do not have any control or access to the said account at this time. That personal account was used to receive donations for the purpose of humanitarian aid as part of the international humanitarian effort for the Bosnia Herzegovina Refugee's plight during the Serbian Ethnic Cleansing.

13. I also had a personal account in Turkey, but like every other account, it has been frozen due to my UN designation. Therefore, I neither have access to nor legal authority to oversee the account and secure documentation pertaining to the account.

14. As stated previously, I have tried on several occasions to initiate contact with some of the Banks mentioned above; however, to this date, my efforts have been fruitless. Because of my designation I am barred from traveling and cannot contact the banks in person. When I attempt to contact them, they are not willing to cooperate because of my designation.

15. I do know Yassin Kadi and Chafiq Ayadi but do not possess any records documenting any money transfers nor any documents relating to any business relationship with them. I may have sat on a board with them but do not recall the exact board, date or organization.

16. The Plaintiffs refer to debt repayment transfers made by H.E. the representative and Humanitarian Envoy of the President of Bosnia Herzegovina Mr. Hasan Cengic. I do not recall wether any payment were indeed made by Mr. Cengic. However, to be precise, all debt repayment transactions were repayment of comfort loans (banking overdraft) extended to the Bosnian Government to help their relief efforts. This loan was continuously repaid via monies received by the Bosnian Government from international Governmental & Non Governmental Organizations and was subsequently utilized when necessary because the funds were in short supply and not always available when needed. In other words, these transfers were very much like a revolving credit mechanism. As to the six money transfers specifically mentioned by the Plaintiffs, I do not recall the specifics of them.

17. The Plaintiffs mentioned my relationships with Adel Batterjee and Mohamed Bayazid. I do not have any documents in my possession concerning these individuals.

_____     29 - 10 - 2011
Wael Jelaidan                 Date

The Law [Offices] [& Asso]ciates

Certifies that the above signing person was presented before me and the signature which appears on this document is his/her correct signature, without assuming any responsibility to the contents of the document.
Bassim A. Alim, Esq.
Attorney at Law
Ministry of Justice License No. 98/23
Kingdom [of Saudi Arabia]

# Exhibit 2



Law Firm of
Bassim A. Alim & Associates
Ministry of Justice
License No. 98/23

مكتب
د. باسم عبدالله عالم ومشاركيه

Date: 26/11/2011
Ref: 2256/01/201

<u>Client-Attorney Privileged Information and Correspondence</u>

To: **Mr. Martin F. McMahon**
**Transnational Business Attys. Group**

Connecticut Bldg., Ninth Floor
150 Connecticut Ave., N.W
Washington, D.C. 20036
United States of America

Phone: +1 (202) 862-4343
Fax:   +1 (202) 862-4302
E-mail: mfm@martinmcmahonlaw.com
        lawmfm@hotmail.com

From: **Bassim A. Alim, Esq.**
**Law Firm of Bassim A. Alim & Associates**
Jeddah, Saudi Arabia
www.alimlaw.com

*Dear Mr. McMahon;*

Thank You for your E-Mail dated 17th. Nov. 2011.

After a detailed discussion with Mr. Jelaidan regarding the discovery requests, I would like to reiterate what we all understand and know but sometimes forget to incorporate in the midst of all the legal jousting that is taking place.

Mr. Jelaidan, was and still is a person with limited maneuvering capabilities due to the freezing of his assets, bank accounts and a plethora of other issues locally and internationally. Mr. Jelaidan went through many hurdles trying to obtain the necessary exculpatory information, but even then as is true now, he is unable to get any satisfactory response from any of the Governmental and commercial entities he corresponded with.



As Mr. Jelaidan's Lawyer, I can assure all parties concerned that Mr. Jelaidan cannot produce nor procure any further information than what has already been received by the Plaintiff's and the court. All entities contacted by us are simply non-responsive.
Both Mr. Jelaidan and Myself are prepared to sign any requested letter for the court to initiate a document request from whichever entity the court finds is relevant. The best method is for the court to seek these document through a formal official request via the Saudi Arabian Embassy in Washington which could be more effective.

Last but not least, it is worth mentioning that most of the entities which Mr. Jelaidan is expected to contact and receive the information from, are on the case defendants list, and the plaintiffs should ask them directly instead of the round about way.

I remain available for any lending hand in order for justice to be achieved but will not be able to communicate with the given entities any further.

Best Regards,

Bassim A. Alim, Esq.
Advocate & Legal Consultant
Legal Practice License (98/23)