# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Civil Action No.
03 MDL 1570 (GBD)(FM)

_____

**This document relates to:**
*All Cases*

### PLAINTIFFS' RESPONSE TO DEFENDANT RABITA TRUST'S
### OBJECTION TO MEMORANDUM DECISION AND REPORT AND
### RECOMMENTATION OF MAGISTRATE JUDGE MAAS DATED OCTOBER 28, 2013

Plaintiffs respectfully submit this opposition to Defendant Rabita Trust's Fed. R. Civ. P. 72(b) Objections (ECF No. 2795) to Magistrate Judge Maas' October 28, 2013 Memorandum Decision and Report and Recommendation (ECF No. 2789) recommending entry of default against Rabita Trust due to its failure to defend itself in the litigation and its discovery misconduct. Essentially, Magistrate Judge Maas' Report and Recommendation explains that the sanction is warranted because Rabita Trust has abandoned, or is incapable of performing, its obligation to defend itself in this litigation either by failing to hire counsel or by failing to cooperate with its counsel, or in the alternative, Rabita Trust has continuously and intentionally shirked its discovery obligation at least since Plaintiffs served discovery on Rabita Trust in 2006. Because everything that Rabita Trust argues in its objection is simply the same arguments that were unsuccessful before Magistrate Judge Maas, rejected with detailed explanations in the Report and Recommendation, Plaintiffs respectfully submit that this Court should reject Rabita

Trust's Rule 72(b) objection and adopt Magistrate Judge Maas' Report and Recommendation as it relates to Rabita Trust.[1]

**STANDARD OF REVIEW**

The standard of review for Rule 72(b) motions is generally considered to be *de novo* review. 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").

However, in circumstances like those presented here, the standard becomes whether the Magistrate Judge committed clear error. *Tuitt v. Martuscello*, 2013 U.S. Dist. LEXIS 143917, at *1-3 (S.D.N.Y., Oct. 3, 2013) (Seibel, J.). Where the objecting party "makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc*., No. 07-CV-6865, 2008 U.S. Dist. LEXIS 92267, at *1 (S.D.N.Y. Nov. 3, 2008); *accord Evans v. Ericole*, No. 06-CV-3684, 2008 U.S. Dist. LEXIS 91556, at *2 (S.D.N.Y. Nov. 10, 2008) (reviewing report and recommendation for clear error where pro se plaintiff made only general objection); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition") (internal quotation marks omitted).

Here, Rabita Trust is reiterating the same several arguments raised before Magistrate Judge Maas, contending that the Court should view the circumstances differently. Specifically, Rabita Trust argues that:

---

[1] In addition, Plaintiffs incorporate by reference Plaintiffs' letters to the Court, dated January 30, 2013 and March 12, 2013, in support of their application regarding Rabita Trust, along with the exhibits referenced therein (ECF Nos. 2701 and ECF No. 2705).

- The Court should stay entry of a default sanction until Rabita Trust hires new counsel (ignoring the fact that the Magistrate Judge's decision was not dependent on Mr. McMahon, in particular, being unable to represent Rabita Trust, and specifically noted that "neither [Mr. McMahon] nor anyone else can continue as [Rabita Trust's] representative in this action" (ECF No. 2789 at 23)).

- Rabita Trust should not be sanctioned because it is a foreign litigant and the Court's previous discovery orders (to which Rabita never objected) were unduly burdensome.

- Rabita Trust should not be sanctioned because the Pakistani government (one of Rabita Trust's own trustees) seized Rabita Trust's documents.

- Entry of a default against Rabita Trust (for its failure to defend and its failure to engage in discovery) is excessive because (despite the Magistrate Judge's finding to the contrary, *see* ECF No. 2789 at 26, n.7) Rabita Trust has not acted in bad faith.

Regardless of which standard is applied, the Court should adopt Magistrate Judge Maas' Report and Recommendation and impose the recommended sanctions. The Report and Recommendation is well-reasoned and supported by the undisputed record. Indeed, Rabita Trust does not dispute the factual underpinnings of the Report and Recommendation, only the Magistrate Judge's conclusions as to the appropriate sanctions recommended. Under the circumstances, Rabita Trust has identified no clear error; nor has it offered any rationale to reject Magistrate Judge's reasoning explained in the Report and Recommendation, applying *de novo* review.

## ARGUMENT

**MAGISTRATE JUDGE MAAS' REPORT AND RECOMMENDATION WAS BASED ON THE CLEAR AND UNDISPUTED RECORD OF RABITA TRUST'S FAILURE TO DEFEND ITSELF AND ITS FAILURE TO ENGAGE IN DISCOVERY DESPITE THE COURT'S PREVIOUS ORDERS THAT IT DO SO.**

The background to this discovery dispute is set forth at length in Magistrate Judge Maas' Report and Recommendation. ECF No. 2789 at 18-26. The following summarizes Magistrate Judge Maas' findings concerning Rabita Trust.

In 2001, both the United States and the United Nations designated Rabita Trust as a terrorist organization based upon evidence that it had supplied logistical and financial support to al Qaeda. ECF No. 2789 at 18.

In 2006, the Plaintiffs served Rabita Trust with a set of jurisdictional discovery requests seeking, among other things: (a) documents about any support of terrorism; (b) information about the Trust's terrorist designations and any sanctions arising out of those designations; (c) relevant banking and financial records; (d) documents about the appointment of Jelaidan as Rabita Trust's Secretary General; (e) information about Rabita Trust's relationship to certain other purported charitable organizations alleged to have operated within the al Qaeda network; and (f) documents about the Trust's relationship with the government of Saudi Arabia, including the Islamic Affairs Division of any Saudi embassy or consulate. Rabita Trust's only production in purported response to those requests has consisted of the 22 documents Jelaidan produced, many of which, the Plaintiffs contend, are "not even remotely relevant to the specific issues articulated in [their] discovery requests." *Id*. at 18-19.

Mr. McMahon, who serves as counsel for both Jelaidan and Rabita Trust, takes the view that Rabita Trust has been "dormant" since 1994 and, consequently, has no further documents to produce. But his representations are at odds with other evidence suggesting that Rabita Trust was active well beyond 1994, including:

- A prior declaration executed by Jelaidan indicating that he was appointed as the Trust's Secretary General in 1999; and
- Several of the scant documents that Rabita Trust and Jelaidan did produce indicating that Rabita Trust's Board of Directors was conducting operations as late as August 2002.

*Id*. at 19-20.

In light of these conflicting documents about Rabita Trust's status, Plaintiffs wrote to Mr. McMahon on September 29, 2011, asking him to provide information about the current location

4

of Rabita Trust's documents and any offices, employees, or administrative functions that the Trust maintained after 1994. The Plaintiffs also requested an update regarding the efforts of a Pakistani lawyer who allegedly was retained in 2006 to assist in the location and collection of responsive documents. *Id*. at 20

During a telephone conference among the parties to resolve the issues, Plaintiffs voiced concern as to whether anyone presently had authority to retain counsel or direct litigation on behalf of the Trust. In an email dated November 4, 2011, Mr. McMahon responded by agreeing to try to discern "if there [was] anyone currently with authority to direct the Trust," and to "figure out the current organizational status of the entity and the officers, if any, that occupy positions in the entity." Mr. McMahon also promised to try to obtain more information about the Trust's documents, but noted that any documents contained in Rabita Trust's office when it became dormant "would likely have either been destroyed or transferred to storage, probably by Pakistan's Office of the Cabinet Secretary." *Id*. at 20-21

On July 30, 2012, Plaintiffs wrote to Mr. McMahon to follow up on the results of his inquiries into Rabita Trust's current status and received no satisfactory response. On August 30, 2012, the discovery deadline expired without Rabita Trust having produced so much as a single additional document. *Id*. at 21

On January 30, 2013, Plaintiffs filed their discovery motion, which sought an order compelling Rabita Trust to: (a) provide information about its current organizational status and leadership; (b) identify any individuals who presently or previously were authorized to direct litigation on the Trust's behalf or ensure compliance with its discovery obligations; (c) identify the efforts undertaken by Rabita Trust to obtain and produce documents responsive to the Plaintiffs' requests; and (d) produce all materials responsive to Plaintiffs' supplemental

document requests, which were served on August 1, 2012. Mr. McMahon opposed the motion on behalf of Rabita Trust on the basis that the Trust did not have access to its own files. Plaintiffs believe that Rabita Trust's opposition papers simply confirm their allegations regarding the Trust's continuing discovery violations and requested that sanctions be imposed. *Id*. at 21-22.

During a discovery conference on March 19, 2013, Magistrate Judge Maas asked Mr. McMahon to address the issue of Rabita Trust's current leadership. Mr. McMahon explained that he had been retained by Jelaidan to represent Rabita Trust approximately nine years ago, when Jelaidan was serving as the Trust's Secretary General. He acknowledged, however, that Jelaidan no longer occupied a position in Rabita Trust's leadership and has not for at least several years. Although the only communications that Mr. McMahon continued to have with regard to Rabita Trust were with Jelaidan and Jelaidan's Saudi counsel, he admitted that Jelaidan has no authority to speak for the Trust. When asked who presently was running the organization, Mr. McMahon indicated that he did not know and suggested that, because the Trust was "inactive," there likely was no one in command. He further conceded that the Trust had not paid his legal fees for many years. *Id*. at 22.

Although the Plaintiffs' motion sought sanctions on the basis of Rabita Trust's continuing failure to meet its discovery obligations, the Magistrate Judge expressed a more fundamental concern regarding the Trust's participation in this case. In his Report and Recommendation, Magistrate Judge Maas explained that, as a matter of basic agency law, an attorney's authority to represent a client terminates, in the case of a corporation or similar organization, when the client loses its capacity to function. *Id*. at 23, citing Restatement (Third) of the Law Governing Lawyers § 31 (2000). Thus, the Magistrate Judge explained, if Mr. McMahon is correct that

Rabita Trust is a defunct organization which lacks any leadership or person authorized to retain counsel and direct the organization's litigation efforts, neither he nor anyone else can continue as its representative in this action. ECF No. 2789 at 23, citing N.Y. Rules of Prof'l Conduct R. 1.2(a), 1.4.

The Magistrate Judge also points out that, despite Mr. McMahon's apparent "belie[f]" that he is able to represent the Trust even if it is dormant, his affidavit in support of that position contains a number of puzzling contradictions. ECF No. 2789 at 23. First, the affidavit asserts that Jelaidan continues to act as the Trust's Secretary General, but Mr. McMahon has admitted on the record that Jelaidan has not served as Secretary General for many years. Second, the affidavit indicates that Jelaidan is responsible for coordinating legal strategy on the Trust's behalf, but at the same time suggests that the Pakistani government currently has the sole authority to make decisions regarding the Trust's legal representation, including whether to retain or terminate counsel. Finally, despite the suggestion that the Pakistani government may ultimately be in control of Rabita Trust, there is no indication that Mr. McMahon has ever had communications with any Pakistani official regarding the Trust's legal representation in this suit. *Id*. at 23-24.

The Magistrate Judge determined that any further efforts to investigate Rabita Trust's current status and leadership would be futile, and Mr. McMahon's inability to obtain even basic information from his Rabita Trust" confirms that Rabita Trust is no longer actively participating in this suit. On this point, the Magistrate Judge noted that Mr. McMahon claims that he already has sent multiple requests for information to the Trust's current Secretary General, which have been met with no response. But it is unclear to whom those requests would have been addressed since Mr. McMahon has said that he does not know who is part of the Trust's leadership. The

fact that Mr. McMahon's other client, Jelaidan, did not respond cuts against Mr. McMahon's claim that Jelaidan is still acting as Secretary General. In the two years since the Plaintiffs first raised the issue, Mr. McMahon has been unable to obtain any information about the Trust's current organizational status, its officers, or the identity of any individual who is responsible for directing its representation in this action. *Id*. at 24.

Correctly applying proper law to the undisputed circumstances, the Magistrate Judge determined that "Rabita Trust plainly lacks the capacity to assent to Mr. McMahon's or anyone else's continued representation of the Trust in this litigation." ECF No. 2789 at 25. The Magistrate Judge explained that, because Rabita Trust apparently lacked the capacity either to authorize representation or to represent itself in the federal litigation, it had not and could not proceed in the litigation. Accordingly, the Magistrate Judge reasoned, the only viable course of action is to enter a default judgment against Rabita Trust. *Id*. at 25-26.

The Magistrate Judge also determined that, even if Mr. McMahon were able to continue serving as Rabita Trust's counsel, the Court would nonetheless be obliged to recommend sanctions for its failure to participate as indicated by its nonproduction of documents. The Magistrate Judge explained (and Mr. McMahon conceded) that there seems to be only two possibilities as to who is in charge of Rabita Trust today – either Jelaidan or the Pakistani government. Jelaidan denies having any continuing access to the Rabita Trust documents, asserting that the Pakistani authorities seized Rabita Trust's documents in 2001. But Mr. McMahon states that when the Trust entered into dormancy, its documents were likely destroyed or transferred to storage, probably by Pakistan's Office of the Cabinet Secretary. Neither Jelaidan nor Mr. McMahon make any effort to reconcile their dueling representations that the records became unavailable either in 1994 when the Trust allegedly became dormant, or in 2001

when its assets were seized, nor have they attempted to determine whether the records were destroyed or placed in storage. Indeed, except for their one-sentence explanations, neither Jelaidan nor Mr. McMahon provides any details concerning the disposition of Rabita Trust's records or their efforts to determine the records' present whereabouts. *Id*. at 26, n.7.

The Magistrate Judge explained that, if the Pakistani government is, in effect, Mr. McMahon's client because it has assumed operational control of the Rabita Trust, the lack of a detailed proffer is even more egregious. Mr. McMahon has explained that he "personally met with officials at the Pakistani Embassy and participated in efforts to procure documentation to which [the Plaintiffs] are entitled" and that he has exhausted his "efforts to obtain documents through correspondence and/or the meeting [he] attended at the Pakistani Embassy." Apart from these two conclusory statements, however, Mr. McMahon has provided no details from which the Court could reasonably conclude that Rabita Trust has made a good faith effort to locate and produce its own records. Nor have Mr. McMahon or Rabita Trust shown that those records no longer exist. *Id.*

So, even if Mr. McMahon or any other new counsel continues to represent Rabita Trust, his client has not shown that it made reasonable efforts to produce the documents sought by the Plaintiffs, the relevance of which can scarcely be contested. Nor has Rabita Trust shown that those records no longer exist. In these circumstances, assuming that Rabita Trust is entitled to continue defending this action, its failure to establish that it took reasonable steps to attempt to produce its documents would warrant a finding that Rabita Trust proceeded in bad faith, properly warranting sanctions. *Id.*

## CONCLUSION

For the foregoing reasons, the reasons expressed in Plaintiffs' letters to the Court seeking sanctions (ECF Nos. 2701, 2705), and the reasons expressed in Magistrate Judge Maas' Report and Recommendation (ECF No. 2789), Plaintiffs respectfully submit that the Court should adopt Magistrate Judge Maas' October 28, 2013 Report and Recommendation, recommending entry of default against Rabita Trust. Nothing in the Report and Recommendation is clearly erroneous or contrary to law. Indeed, aside from repeating the same arguments previously asserted to and rejected by Magistrate Judge Maas, Rabita Trust has offered nothing to raise a definite and firm conviction that Magistrate Judge Maas committed any error or anything pointing to any misapplication of a statute, case law, or rule.

Dated: December 2, 2013        Respectfully Submitted,

        /s/_____
        Jodi Westbrook Flowers
        Robert T. Haefele
        *RHaefele@motleyrice.com*
        MOTLEY RICE LLC
        28 Bridgeside Boulevard
        P.O. Box 1792
        Mount Pleasant, South Carolina 29465
        Tel: (843) 216-9000
        Fax: (843) 216-9450

        Stephen A. Cozen
        Sean P. Carter
        *scarter@cozen.com*
        J. Scott Tarbutton
        COZEN O'CONNOR
        1900 Market Street
        Philadelphia, PA 19103
        Tel: (215) 665-2000
        Fax: (215) 665-2013

        James P. Kreindler
        jkreindler@kreindler.com

KREINDLER & KREINDLER LLP
750 Third Avenue
New YorkNY10017
 Phone: 212-687-8181
Fax: 212-972-9432

Andrea Bierstein
abierstein@hanlyconroy.com
HANLY CONROY BIERSTEIN SHERIDAN FISHER
 & HAYES, LLP
112 Madison Avenue
New York, NY 10016
Tel:  (212) 784-6400
Fax:  (212) 213-5949

Jerry S. Goldman
jgoldman@andersonkill.com
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas, 42nd Floor
New York, N.Y. 10020-1182
Telephone:  (212) 278-1498
Fax:  (212) 278-1733

For the Plaintiffs' Executive Committees

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 2, 2013, I caused an electronic copy of the foregoing Plaintiffs' Response to Defendant Rabita Trust's Objection [ECF No. 2795] to the October 28, 2013 Memorandum Decision and Report and Recommendation of Magistrate Judge Maas [ECF No. 2789] to be served electronically by the Court's Electronic Case Filing (ECF) System.

  /s/ Robert T. Haefele
Robert T. Haefele