Case 1:03-md-01570-GBD-SN Document 2814 Filed 12/19/13 Page 1 of 16
Case: 12-1318 Document: 185 Page: 1 12/19/2013 1118982 1 of 16

N.Y.S.D. Case #
03-md-1570(GBD)
03-cv-6978(GBD)
03-cv-8591(GBD)
04-cv-7216(GBD)

12-1318-cv(L) et al.
*In re Terrorist Attacks on September 11, 2001 (Kingdom of Saudi Arabia et al.)*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED December 19, 2013

August Term, 2012

(Argued: March 20, 2013    Decided: December 19, 2013)

Docket Nos.

12-1318-cv(L), 12-1350-cv(CON), 12-1441-cv(CON), 12-1476-cv(CON),
12-1477-cv(CON), 12-1519-cv(CON)

_____

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 (KINGDOM OF SAUDI ARABIA ET AL.)

FEDERAL INSURANCE COMPANY ET AL.

*Plaintiffs-Appellants*,

– v. –

KINGDOM OF SAUDI ARABIA, SAUDI HIGH COMMISSION FOR RELIEF OF BOSNIA AND HERZEGOVINA

*Defendants-Appellees*.[*]

_____

Before: WINTER, CABRANES, AND STRAUB, *Circuit Judges*.

---

[*] The Clerk of Court is directed to amend the caption of this case to conform to the listing of the parties shown above.

CERTIFIED COPY ISSUED ON 12/19/2013

_____

Appeal from an order of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*) denying the plaintiffs' Rule 60(b) motion to reopen the District Court's judgment dismissing sovereign defendants pursuant to the Foreign Sovereign Immunities Act. We hold that the District Court's decision rested on an error of law and that the motion should have been granted. Accordingly, we **REVERSE** the order denying the Rule 60(b) motion and **REMAND** to the District Court for further proceedings consistent with this opinion.

_____

STEPHEN A. COZEN (Elliot R. Feldman, Sean P. Carter, Cozen O'Connor, Philadelphia, PA; Ronald L. Motley, Robert T. Haefele, Jodi W. Flowers, Motley Rice LLC, Mount Pleasant, SC; Carter G. Phillips, Richard Klingler, Sidley Austin LLP, Washington, DC; Andrea Bierstein, Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY; Robert M. Kaplan, Ferber Chan Essner & Coller, LLP, New York, NY; Jerry S. Goldman, Anderson Kill & Olick, P.C., New York, NY; Chris Leonardo, Adams Holcomb LLP, Washington, DC, *on the brief*), Cozen O'Connor, Philadelphia, PA, *for Plaintiffs-Appellants*.

MICHAEL K. KELLOGG (Gregory G. Rapawy, Brendan J. Crimmins, William J. Rinner, *on the brief*), Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, *for Defendant-Appellee Kingdom of Saudi Arabia*.

Lawrence S. Robbins, Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC, *for Defendant-Appellee Saudi High Commission for Relief of Bosnia and Herzegovina*.

_____

1   STRAUB, *Circuit Judge*:

2   This is a tale of two cases: *Doe v. Bin Laden* and the case now before us, *In re*

3   *Terrorist Attacks on September 11, 2001* ("*Terrorist Attacks*").  In both cases, the

4   plaintiffs sought damages for injuries or deaths caused by the September 11, 2001

5   terrorist attacks.  In both cases, the plaintiffs sued defendants who argued that

6   they were immune from suit under the Foreign Sovereign Immunities Act.  In

7   both cases, the plaintiffs contended that the statute's "tort exception" to

8   sovereign immunity applied.

9   In *Terrorist Attacks*, we ruled that the existence of the "terrorism exception"

10  to sovereign immunity precluded the availability of the tort exception when the

11  alleged tort was an act of terrorism.  Three years later, in *Bin Laden*, we overruled

12  that conclusion by "mini-en banc."  We held that even if the tort is an act of

13  terrorism, the tort exception is available when the terrorism exception is

14  inapplicable.

15  The *Terrorist Attacks* plaintiffs moved for relief from judgment under Rule

16  60(b) in order to appeal the District Court's alternative ground for finding

17  sovereign immunity – a ground that we declined to reach in our prior opinion.

18  The District Court (George B. Daniels, *Judge*) denied the motion under the

3

impression that we would be able to consider that unreviewed issue on appeal from the denial. But we cannot.

We conclude that this was an error of law and that "extraordinary circumstances" exist warranting relief under Rule 60(b). For this reason, we **REVERSE** the order denying the Rule 60(b) motion and **REMAND** to the District Court for further proceedings consistent with this opinion.

## BACKGROUND

The factual background of this multi-district litigation has been discussed in detail in several of our opinions. *See Terrorist Attacks (Asat Trust Reg. et al.)*, 714 F.3d 659, 666-73 (2d Cir. 2013); *Terrorist Attacks III*, 538 F.3d 71, 76-79 (2d Cir. 2008).[1] Briefly, the plaintiffs "are persons who incurred losses in the September 11, 2001 terrorist attacks: those who suffered personal injuries, the families and representatives of those who died, insurers and property owners." *Terrorist*

---

[1] There have been many decisions concerning *Terrorist Attacks*. The three most frequently mentioned in this opinion are *Terrorist Attacks I*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005); *Terrorist Attacks II*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005); and the Second Circuit opinion addressing the appeal from those two decisions: *Terrorist Attacks III*, 538 F.3d 71 (2d Cir. 2008), *overruled by Doe v. Bin Laden*, 663 F.3d 64, 70 n.10 (2d Cir. 2011) (per curiam). The late Judge Richard Conway Casey decided *Terrorist Attacks I* and *II*. The case was then reassigned to Judge George B. Daniels, who issued the ruling below.

4

*Attacks III*, 538 F.3d at 75.  The defendants subject to this appeal are the Kingdom of Saudi Arabia ("Kingdom") and the Saudi High Commission for Relief of Bosnia and Herzegovina ("SHC").

The issues before us primarily involve the case's procedural history.  The Kingdom and the SHC moved to dismiss the claims against them on the ground that they were immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq*.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 802-04 (Kingdom); *Terrorist Attacks II*, 392 F. Supp. 2d at 551-53 (SHC).

The District Court concluded that both the Kingdom and the SHC fell within the statutory definition of "foreign states," which under the statute are generally "immune from the jurisdiction of the courts of the United States."  28 U.S.C. § 1604; *see Terrorist Attacks I*, 349 F. Supp. 2d at 802 (Kingdom); *Terrorist Attacks II*, 392 F. Supp. 2d at 553 (SHC).

There are, however, exceptions to this immunity, including a "terrorism exception" and a "tort exception."  *See* 28 U.S.C. §§ 1605(a)(5), 1605A.  But the statute gets more complicated.  There is a "discretionary function limitation" on the tort exception: the tort exception does not apply to claims based on the

5

performance of, or failure to perform, a discretionary function. 28 U.S.C.

§ 1605(a)(5)(A).

The District Court concluded that the plaintiffs' claims fell within the discretionary function limitation, and it dismissed the claims against the Kingdom and the SHC. *Terrorist Attacks I*, 349 F. Supp. 2d at 803-04 (Kingdom); *Terrorist Attacks II*, 392 F. Supp. 2d at 555 (SHC). In doing so, the court also concluded that jurisdictional discovery was unnecessary. *Terrorist Attacks I*, 349 F. Supp. 2d at 804 (Kingdom); *Terrorist Attacks II*, 392 F. Supp. 2d at 555 (concluding that the SHC provided undisputed evidence establishing that the discretionary function limitation applied).

The plaintiffs appealed, and we affirmed the District Court's decision, but on different grounds. *Terrorist Attacks III*, 538 F.3d at 86-90. We concluded that where claims are based on acts of terrorism, only the terrorism exception – and not the tort exception – could be used to lift the statute's protection of foreign states. *Id.* at 90. Because we ruled that the tort exception was not available to the plaintiffs, we never reached the issue of whether the discretionary function limitation on the tort exception applied. *Id.* at 90 n.15.

6

1 After *Terrorist Attacks III*, we reversed course in *Doe v. Bin Laden*, 663 F.3d

2 64 (2d Cir. 2011) (per curiam). There, the plaintiff sued Afghanistan, among

3 other defendants, for the death of his wife in the September 11 attacks. *Id.* at 65.

4 He also argued that the defendant was not immune from suit based on the tort

5 exception. *Id.* For a time, *Bin Laden* was not centralized as part of the *Terrorist*

6 *Attacks* multi-district litigation. During this period, the District Court for the

7 District of Columbia concluded that the terrorism exception did not preclude use

8 of the tort exception for claims based on acts of terrorism. *Doe v. Bin Laden*, 580 F.

9 Supp. 2d 93, 97 (D.D.C. 2008). It reached this decision only a month and a half

10 before our opposite conclusion in *Terrorist Attacks III*. *Bin Laden* was later

11 transferred to the Southern District of New York for centralization with *Terrorist*

12 *Attacks*, and the appeal pending before the Court of Appeals for the District of

13 Columbia was transferred to us. *See Bin Laden*, 663 F.3d at 66.

14 On appeal in *Bin Laden*, we overruled our conclusion in *Terrorist Attacks III*

15 that where the alleged tort is an act of terrorism, the tort exception is

16 inapplicable. *Bin Laden*, 663 F.3d at 70. This was done by a procedure we have

17 called "mini-en banc." *Id.* at n.10. Recognizing that its holding was inconsistent

18 with *Terrorist Attacks III*, the *Bin Laden* panel circulated its opinion to the

7

members of the *Terrorist Attacks III* panel and all the other active judges on the Court. *Id.* No judge objected to the issuance of the *Bin Laden* opinion. *Id.*

The *Bin Laden* decision led to inconsistent results for September 11 attack victims. Our final word to the *Bin Laden* plaintiff was that the tort exception was available to him and that the parties should proceed with jurisdictional discovery. Our final word to the *Terrorist Attacks* plaintiffs was that the tort exception was unavailable and that their lawsuit against Saudi Arabia and the SHC could not go forward.

This put the *Terrorist Attacks* plaintiffs in an awkward, if not impossible bind. The reasoning behind our decision in their case had been overruled. But we never reviewed the District Court's reason for reaching the same result – that the discretionary function limitation applied. Trying to find a mechanism to enable us to review the discretionary function issue, the plaintiffs moved for relief from judgment under Rule 60(b). The District Court denied the motion, concluding that opening the judgment was not necessary to allow us to consider the merits of the District Court's prior application of the discretionary function limitation. This timely appeal followed.

**DISCUSSION**

Rule 60(b)(6) provides that a District Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for "any . . . reason that justifies relief." "It is a grand reservoir of equitable power to do justice in a particular case. But that reservoir is not bottomless. Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal citation and quotation marks omitted).

"We review a district court's decision on a Rule 60(b) motion for abuse of discretion. A court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (per curiam) (internal citation omitted).

The District Court did not recognize the plaintiffs' inability to seek review of the discretionary function limitation issue. It concluded that on appeal from its denial of the Rule 60(b) motion, we could reach the underlying merits of the decision to apply that limitation. It stated that a panel of this Court could

9

determine "whether or not they have a different determination with regard to the sufficiency of the complaint with regard to Saudi Arabia to assert a claim or to provide jurisdiction . . . ." Joint App'x at 2228.

That conclusion was not correct. "The appeal from the denial of a motion to vacate pursuant to Rule 60(b) brings up for review only the validity of that denial, not the merits of the underlying judgment itself." *S.E.C. v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998); *see also Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) ("An appeal from an order denying a rule 60(b)(6) motion brings before us only the denial of the motion, not the merits of the underlying judgment."). Thus, the District Court's decision rests on an error of law.

"[A]s a general matter, a mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004). That general rule, however, is not absolute. *See id.* And it should not be followed here. The procedural history of this case produced inconsistent results between two sets of plaintiffs suing for damages based on the same incident. It also allowed the District Court's application of the discretionary function limitation to go unreviewed. We

10

conclude that the circumstances here are "extraordinary" and warrant relief under Rule 60(b)(6).

"Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Whenever the law changes, parties who lost a prior case because of the now-altered law may feel that justice was not done. Generally, the interest in finality outweighs that concern.

However, as the Supreme Court determined in *Gondeck v. Pan American World Airways, Inc.*, the interest in finality is outweighed by the interest in treating victims of the same tort consistently. 382 U.S. 25, 26-27 (1965) (per curiam). In that case, the Supreme Court faced a petition for rehearing. Two men had been killed in an automobile accident outside a defense base where they were employed. *Id.* at 26. For one, Frank Gondeck, the district court set aside an award made by the Department of Labor to his survivors, and the Fifth Circuit affirmed. *Id.* The Supreme Court denied certiorari and denied rehearing. *Id.* The Fourth Circuit reached the opposite result for the other employee. *Id.* at 27. Over three years after the original certiorari petition was denied, Gondeck

11

petitioned the Supreme Court for rehearing again, this time successfully.  *See id.* at 26, 28.

The Supreme Court noted that Gondeck's survivors were the only ones who were eligible for compensation from the accident who did not receive it.  *Id.* at 27.  This, according to the Court, "justif[ied] application of the established doctrine that the interest in finality of litigation must yield where the interests of justice would make unfair the strict application of [the Court's] rules."  *Id.* at 26-27 (internal quotation marks omitted).  The Court vacated its order denying certiorari and reversed the decision of the Fifth Circuit.  *Id.* at 28; *see also Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 723 (10th Cir. 1975) (en banc) (applying *Gondeck* in the context of a Rule 60(b) motion).

While the allegations regarding the September 11 attacks are far more intricate than a common traffic accident, the Supreme Court's reasoning still applies.  We treated cases arising from the same incident differently.  One victim's suit was allowed to proceed while others' were not based on opposite interpretations of the same statutory provisions.  As in *Gondeck*, the interest in finality must yield to the interests of justice.

12

The disparity between the *Terrorist Attacks* plaintiffs and the *Bin Laden* plaintiff is particularly troubling because of *Bin Laden's* late centralization with the *Terrorist Attacks* multi-district litigation. That occurred nearly a year after our decision in *Terrorist Attacks III*. Had it happened earlier, the *Bin Laden* plaintiff's claims could have been resolved at the same time – and in the same way – as those of the other *Terrorist Attacks* plaintiffs. In fact, the September 11 cases were centralized in part in order to "prevent inconsistent pretrial rulings." *Terrorist Attacks*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003); *see also* Transfer Order at 1, *Doe v. Bin Laden*, 09-cv-7055 (S.D.N.Y. Aug. 10, 2009), ECF No. 1 (transferring *Bin Laden* to the Southern District of New York for the same reasons as the original centralization order). The disparate treatment of two sets of litigants suing for the same underlying tort is especially anomalous where, as here, the cases are ongoing in the same court, yet subject to different rules based on this Court's use of the unusual "mini-en banc" process by which one panel overrules another.

For all these reasons, we follow the Supreme Court's guidance in *Gondeck* and conclude that the circumstances of this case are extraordinary and that relief under Rule 60(b)(6) is warranted.

1   *United Airlines, Inc. v. Brien* does not require a contrary result. 588 F.3d 158

2   (2d Cir. 2009). *Brien* involved two cases in which the Immigration and

3   Naturalization Service ("INS") imposed fines on airlines for bringing non-

4   citizens into the United States without proper documentation. *Id.* at 161-62. In

5   the first, Air India had brought a lawful permanent resident into the United

6   States without the required reentry permit or visa. *Id.* at 164-65. Air India was

7   fined despite the INS's waiver of that requirement based on "good cause" under

8   8 C.F.R. § 211.1(b)(3). *Id.* at 165. The District Court ruled that the fine was

9   unlawful. *Id.* at 164-67.

10  In the second, the District Court let stand a fine against United Airlines for

11  bringing a non-immigrant into the country without a valid passport and/or visa,

12  even though that person qualified for a waiver based on an "unforeseen

13  emergency" under 8 C.F.R. § 212.1(g) (pre-1996). *Id.* at 162-64. Based on the

14  second ruling, the INS moved for relief from the first under Rule 60(b)(6). *Id.* at

15  167-68. The District Court granted the motion, and we reversed. *Id.* at 176.

16  The differences between *Brien* and the case now before us highlight why

17  Rule 60(b)(6) relief is warranted here. First, the *Brien* cases were based on fines

18  imposed for different incidents – incidents governed by a "different set of

14

statutes and regulations." *Id.* at 162. The plaintiffs in *Terrorist Attacks* and *Bin Laden* are all suing based on a single underlying tort governed by the same statute. As discussed above, inconsistent results for victims of the same incident poses a unique problem of unfairness.

Second, we ruled in *Brien* that the INS's argument failed primarily because it was "based not on mandatory authority from the Circuit but only on persuasive authority from the district court." *Id.* at 176. Here, the Rule 60(b) motion is based on two conflicting opinions of this Court – one overruling the other.

Finally, while the INS and Air India each initially appealed the district court's original decision, the parties later stipulated to dismiss their appeals. We noted that "Rule 60 does not allow district courts to indulge a party's discontent over the effects of its bargain, such as where the party has made a deliberate, strategic choice to settle." *Id.* (internal quotation marks omitted). In contrast, the *Terrorist Attacks* plaintiffs never made a tactical decision to abandon their claims. They used every avenue for appeal available to them, including an unsuccessful petition to the Supreme Court for a writ of certiorari. *See Federal Ins. Co. v. Kingdom of Saudi Arabia*, 557 U.S. 935 (2009) (denying petition). Yet by virtue of

15

the procedural posture of this case, they were never able to obtain review of the District Court's basis for dismissing their claims.

## CONCLUSION

Our incorrect decision in *Terrorist Attacks III* caused a disparity between the *Terrorist Attacks* plaintiffs and the *Bin Laden* plaintiff where none should ever have existed. We conclude that the circumstances of this case are "extraordinary," warranting relief under Rule 60(b).

Because we cannot reach the underlying merits of the judgment, we will not address the plaintiffs' argument that the District Court should not have applied the discretionary function limitation or, at a minimum, should have granted jurisdictional discovery. Nor will we address the defendants' arguments that the complaints should be dismissed because the "entire tort" rule applies or because the plaintiffs have not sufficiently shown causation. All these issues may be considered by the District Court on remand.

Accordingly, we **REVERSE** the order denying the Rule 60(b) motion and **REMAND** to the District Court for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

16