UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                          :
IN RE :                                   :    Case No. 03 MDL 1570 (GBD) (FM)
                                          :
TERRORIST ATTACKS ON:
SEPTEMBER 11, 2001                        :
_____:


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**
<u>**PURSUANT TO REPORT AND RECOMMENDATION OF OCTOBER 28, 2013**</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

     A.   Background ...................................................................................................... 1

     B.   Counsel for the Plaintiffs ............................................................................... 5

II.  IN ACCORDANCE WITH THE SECOND CIRCUIT'S
     "PRESUMPTIVELY REASONABLE FEE" ANALYSIS, PLAINTIFFS'
     APPLICATION SEEKS ONLY RELEVANT COSTS AT REASONABLE
     RATES OF COMPENSATION ..................................................................................... 11

     A.   Plaintiffs' hourly rates are comparable to market rates ...................................... 12

     B.   This Application is limited to work directly related to the efforts to
          compel Al Haramain and Jelaidan to comply with their basic discovery
          obligations ...................................................................................................... 15

     C.   Courts in the Second Circuit have the discretion to modify the lodestar
          or presumptively reasonable fee amount to ensure that sanctions have
          their intended effect on litigants ........................................................................ 17

     D.   Plaintiffs are entitled to recoup reasonable costs and expenses in
          connection with the above pleadings and hearings ............................................. 18

     E.   Plaintiffs are entitled to reasonable fee for preparation of the Fee
          Application ...................................................................................................... 19

III. CONCLUSION ......................................................................................................... 19

## TABLE OF AUTHORITIES

## CASES

*Anderson v. City of New York*, 132 F.Supp.2d 239 (S.D.N.Y. 2001)……………...……………..18

*Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182
(2d Cir. 2008)…………………...………………………………………………12, 13, 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
493 F.3d 110 (2d Cir. 2007)………………………………………………………...11, 12

*Ceglia v. Zuckerberg,* No. 10-CV-00569((F), 2012 U.S. Dist. LEXIS 18438 at *13
(W.D.N.Y. Feb. 14, 2012)……………………………………………………14, 17, 18

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204 (2d Cir. 2005)......................................................12

*Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)…………………………………………12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)…………………………………………….....................11

*In re Agent Orange Product Liability Litig.*, 818 F.2d 226 (2d Cir. 1987)……………......................12

*In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD)(FM), 2011
WL 5913526, at *6 (S.D.N.Y. Nov. 22, 2011).......................................................................................3

*LV v. New York City Dept. of Educ.*, 700 F. Supp.2d 510 (S.D.N.Y. 2010)…………………….14

*Momchilov v. Chaduhry*, No. 04-CV-3159, 2006 WL 2594850, at *1
(E.D.N.Y. Sept. 11, 2006)……………………………………………………………..12

*Morris v. Eversley*, 343 F. Supp. 2d 234 (S.D.N.Y. 2004)…………..…………………………...12

*On Time Aviation v. Bombardier Capital, Inc.*, 354 Fed. Appx. 448 (2d Cir. 2009)……...…………17

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., Co.* 09 Civ. 8665 (JGK)(FM),
2010 U.S. Dist LEXIS 138873, *8 (S.D.N.Y. Dec. 6, 2010)…………………………………14

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010)..............................................................11

*Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009)………………………....11

*Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219 (E.D.N.Y. 2009)……………………14

*Tatum v. City of New York*, No. 06-cv-4290, 2010 WL 334975, at *4
(S.D.N.Y. Jan. 28, 2010)………..……………………………………………………..12, 18

*U.S. Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989)……….…………..18

*Weyant v. Okst*, 198 F.3d 311 (2d Cir.1999)...…………………………………………19

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 37 ............................................................................................... 1, 2, 13, 17, 18

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................................5

**OTHER AUTHORITIES**

Karen Sloan, *NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore,* THE NATIONAL LAW JOURNAL (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202637587261?slreturn=20140023124124# …………………………………….……………..14

Mike Mintz, *New Report Finds Law Firm Hourly Billing Rates Continuing to Rise*, MARTINDALE-HUBBELL (May 9, 2012)………..…………………………………………14

# I.  INTRODUCTION

In accordance with the Court's October 28, 2013 Report and Recommendation (ECF No. 2789) ("October 28, 2013 Order") (Exhibit A), Plaintiffs submit this memorandum and the accompanying supporting declaration with exhibits in support of their application for attorneys' fees and costs.[1]  Because the Court's October 28, 2013 Order granted Plaintiffs' request that Defendant Al Haramain Islamic Foundation (USA) (hereinafter "Al Haramain") and Defendant Wa'el Jelaidan (hereinafter "Jelaidan") pay reasonable attorneys' fees and costs, the only issue for the Court's consideration is the reasonableness of the amounts requested.

## A.  Background

A complete procedural history of the events and circumstances culminating in Plaintiffs' Fed. R. Civ. P. 37 Motions and the Court's consequent October 28, 2013 Order imposing sanctions on defendants Al Haramain and Jelaidan need not be detailed again, as the Order itself summarizes the near decade-long chain of events preceding the Court's sanctions ruling.[2]  The October 28, 2013 Order and the underlying record render it clear that, over the course of the long-standing discovery disputes with both Al Haramain and Jelaidan, Plaintiffs have spent enormous amounts of time and energy not only to draft and review multiple pleadings, and prepare for various resulting hearings, but also each of the defendant's intentional misconduct to evade their discovery obligations necessitated Plaintiffs conducting lengthy and detailed independent investigations to confirm the defendants' improprieties. Although a complete procedural history is unnecessary, some consideration of the nature of the defendants' willful misconduct (particularly in the face of multiple admonitions by the

---

[1] The exhibits referenced herein are exhibits to the Declaration of Robert T. Haefele, dated January 24, 2014.

[2] Plaintiffs incorporate herein by reference their prior submissions to this Court in connection with their December 2, 2009 and October 17, 2011 motions to compel Al Haramain and Jelaidan (along with Plaintiffs reply papers), their January 9, 2013 and January 30, 2013 motions for sanctions (along with Plaintiffs' reply papers), and their November 29, 2010 and December 2, 2013 oppositions to the two Objections filed by Al Haramain and their December 2, 2013 oppositions to the Objection filed by Jelaidan.

Court), is nonetheless appropriate to determine the severity of the fee award necessary to achieve the essential deterrent objective of Rule 37 sanctions.

For purposes of Plaintiffs' Fee Application, Plaintiffs note that Al Haramain's noncompliance with its discovery obligations has necessitated Plaintiffs researching, drafting, editing, and finalizing, on behalf of all of the Plaintiffs, eight separate pleadings for this Court's consideration, including: (1) Plaintiffs' December 2, 2009 motion to compel (ECF No. 2206); (2) Plaintiffs' January 5, 2010 reply in further support of the motion to compel; (3) Plaintiffs' November 29, 2010 opposition (ECF No. 2389) to Al Haramain's Rule 72 objections (ECF No. 2384) to the Court's October 28, 2010 Ruling; (4) Plaintiffs' January 9, 2013 motion for sanctions and accompanying declaration with exhibits (ECF Nos. 2654, 2655); (5) Plaintiffs' February 7, 2013 reply and accompanying declaration with exhibits (ECF Nos. 2679, 2680) in further support of the motion for sanctions; (6) Plaintiffs' February 27, 2013 response (ECF No. 2694) to two notices of filings by Al Haramain; (7) Plaintiffs' December 2, 2013 opposition (ECF No. 2805) to Al Haramain's Rule 72 objections (ECF No. 2799) to the Court's October 28, 2013 Ruling (ECF No. 2789), and (8) this application. In addition, Al Haramain's actions have also necessitated Plaintiffs' preparation and appearance to argue the various motions during hearings on February 8, 2010, December 2, 2010, and March 19, 2013.

Similarly, for purposes of this Application, Plaintiffs note that Jelaidan's noncompliance with his discovery obligations has necessitated Plaintiffs researching, drafting, editing, and finalizing, on behalf of all of the Plaintiffs, six separate pleadings for this Court's consideration, including: (1) Plaintiffs' October 17, 2011 motion to compel; (2) Plaintiffs' November 16, 2011 reply in further support of the motion to compel; (3) Plaintiffs' January 30, 2013 motion to compel and request for sanctions (ECF No. 2700); (4) Plaintiffs' March 12, 2013 reply in further support of the motion to compel and request for sanctions (ECF No.

2704); (5) Plaintiffs' December 2, 2013 opposition (ECF No. 2803) to Jelaidan's Rule 72 objections (ECF No. 2794) to the Court's October 28, 2013 Ruling (ECF No 2789), and (6) this application. In addition, Jelaidan's actions have also necessitated Plaintiffs' preparation and appearance to argue the various motions during hearings on November 16, 2011 and March 19, 2013.

Under the circumstances here, though, where the nature of the defendants' misconduct required Plaintiffs to conduct significant independent investigations merely to confirm that defendants' objections to discovery were baseless, the Court should consider more than the Plaintiffs' exercise of researching, writing, and arguing the various referenced pleadings. Plaintiffs offer the following examples of the additional financially burdensome hurdles defendants' discovery violations imposed on Plaintiffs. For example, Al Haramain's insistence that it was unrelated to its Saudi headquarters resulted in Plaintiffs having to conduct exhaustive investigation and document reviews to develop facts and evidence concerning the relationship between the branch and its headquarters to demonstrate that the two entities were mere alter egos. Similarly, Al Haramain's insistence that it could not produce Al Haramain documents used in the criminal trial of its officer Pirouz Sedaghaty (represented here by the same counsel), even in the face of an Order from this Court confirming that the documents were available for Al Haramain to produce (*see In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD)(FM), 2011 WL 5913526, at *6 (S.D.N.Y. Nov. 22, 2011) (ECF No. 2491), necessitated substantial review of the record from the criminal trial to determine what information was available in that record, only to have Al Haramain counsel engage in eleventh-hour efforts to produce the documents *after* Plaintiffs moved for sanctions.

Examples of the willful character of Jelaidan's misconduct necessitating Plaintiffs' detailed independent investigations are similarly in no shortage. For example, because of

Jelaidan's unwillingness to produce any information about the various accounts in his name, Plaintiffs were obliged to conduct difficult, exhaustive investigations to identify the universe of accounts over which Jelaidan had control to support a fact that he should have disclosed willingly in discovery. Similarly, rather than producing any information about any account, Jelaidan's assertion that his designation as a terrorist prevented him from accessing any information about the financial accounts necessitated Plaintiffs researching the issue and employing an expert to dispute the position – incidentally, a position that Jelaidan continues to assert without any support. And finally, even after Plaintiffs demonstrated the fallacy of Jelaidan's position, and the court offered Jelaidan a renewed opportunity to ameliorate his misconduct, Jelaidan demonstrated not only that he had never undertaken efforts to obtain the requested documents, but also that he made no new effort when given the renewed opportunity. (*See* ECF No. 2789, at 9.)

The circumstances to be considered here should also take into account the need for the court to deter *all of the defendants* in the litigation from similar discovery misconduct, as well as the fact that all of the defendants, including Al Haramain, Jelaidan, and each of the other defendants, have all been admonished that sanctions up to and including dispositive sanctions might be warranted if they continue to withhold documents improperly in discovery.[3]

---

[3] *See, e.g.*, Transcript of Oct. 28, 2010 Hearing at 17-18 (Exhibit I) (Admonishing Al Haramain of the potential for sanctions if Al Haramain failed to produce documents, Judge Maas states "I intend to leave for another day what consequences of any nonproduction . . . will be."); Transcript of Nov. 16, 2011 Hearing at 33 (Exhibit L) (The Court warned Jelaidan of the need to initiate a "full court press" to obtain requested discovery or fact sanctions, concluding with the warning "If you're not sufficiently able to document a vigorous effort to obtain those documents, it may be that sanctions are imposed." Transcript of April 26, 2011 Hearing at 20 (Exhibit J) (At oral argument during a motion to compel MWL and IIRO, the Court clearly expressed the need for defense counsel to actively engage the defendants' in their discovery responsibilities, stating "I do think this is the type of stage of the case where you . . . need[] to sit down with the folks who are responding to these requests and hold their hand to a certain extent and describe in greater detail what needs to be searched for. . . . And if . . . any other defendant has failed to produce documents that manifestly are within its possession, custody, or control, than may lead to consequences that that particular defendant doesn't care for."); Transcript of June 23, 2011 Hearing at 9-10 (Exhibit K) (The Court expressly warned counsel for defendants of the possibility of sanctions for continued refusal to abide by the court's discovery orders, stating "if responsive documents are not produced, and [Plaintiffs] are able to show that they documents exist and should be produced [. . .] If they make a sufficiently persuasive

Thus, with the parameters set by the October 28, 2013 Order and having already determined that an award is proper, the Court need not reconsider whether an award of fees and expenses is justified. Instead, the sole issue to be determined is the reasonable fees and expenses to award Plaintiffs under Rule 37(b)(2)(C) *in view of the totality of the circumstances* and the time spent and itemized costs presented in support of this Application. Given Al Haramain's and Jelaidan's *insistence* on maintaining their rejected objections for the past near decade and the enormous need to deter these *and* other defendants from their continued patterns of discovery obstruction, Plaintiffs submit that the time and expenses for which this Application seeks recovery are conservative.

## B. Counsel for the Plaintiffs

Plaintiffs have been represented in this litigation by multiple law firms that individually represent various subsets of plaintiffs and by lawyers from each of the firms that the Court has appointed to Plaintiffs' Executive Committees to coordinate various aspects of this multidistrict litigation, including discovery, for all of the plaintiffs. Among the law firms representing Plaintiffs in opposition to Al Haramain's and Jelaidan's longstanding discovery abuses are Motley Rice LLC, Cozen O'Connor P.C., Kreindler & Kreindler LLP, and Anderson Kill P.C. (*See* biographies of each firm at Exhibits E – H).

Five attorneys from the Motley Rice firm – Jodi Westbrook Flowers, Robert T. Haefele, Elizabeth Smith, John M. Eubanks, and Brian Frutig – have performed various tasks necessary in connection with the Al Haramain and Jelaidan motions. (Detailed biographies of these Motley Rice attorneys are included at Exhibit E.)

---

showing, [defendants] may be faced with the prospect that I issue case-dispositive sanctions."); Transcript of June 23, 2011 Hearing at 17-18 (Exhibit K) (The Court admonished defendants of the possibility of default judgments, stating "I think I have made my position clear which is that if a persuasive showing can be made that [defendants] have not fully complied with the ruling I made . . .[that] might lead to the entry of default judgments….").

1. Jodi Westbrook Flowers is a member of the Motley Rice firm, chair of the firm's Anti-Terrorism and Human Rights practice group, and an appointed member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570. Ms Flowers, a 1993 Carolina Legal Scholar and graduate of the University of South Carolina School of Law, has over twenty years of experience developing, researching and managing groundbreaking and complex litigation and class actions on behalf of thousands of plaintiffs in lawsuits and trials involving, among others, asbestos; lead pigment; aviation; transportation, tire, and vehicle defects. Ms. Flowers has also litigated against the tobacco industry resulting in the historic Master Settlement Agreement between the state attorneys general and the tobacco industry. She has served on numerous MDL Executive Committees and Subcommittees. Ms. Flowers is licensed to practice law in South Carolina and is admitted to practice before the U.S. Courts of Appeals for the Fourth and District of Columbia Circuits and before the U.S. District Court for the District of South Carolina.

2. Robert T. Haefele is an associate of the Motley Rice firm, member of the firm's Anti-Terrorism and Human Rights practice group, and an appointed member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570. Mr. Haefele, a 1989 graduate of Rutgers University School of Law - Camden, has more than twenty years of experience practicing in complex civil litigation, including asbestos, tobacco, and other mass tort and product liability litigation. Since 2003, the primary emphasis of Mr. Haefele's practice has involved representing plaintiffs in anti-terrorism, human rights, and other litigation related to the attacks that occurred on September 11, 2001. Mr. Haefele is licensed to practice law in South Carolina, New Jersey, Pennsylvania, New York, and the District of Columbia and is admitted to practice before the U.S. Courts of Appeals for the Second, Third, Fourth, and

Eleventh Circuits and before the U.S. District Court for the Districts of New Jersey, the District of Columbia, and the Southern District of New York.

3.  Elizabeth Smith is an associate of the Motley Rice firm and has been a member of the firm's Anti-Terrorism and Human Rights practice group.  Ms Smith, a 2000 *cum laude* graduate of the University of South Carolina School of Law, has over a decade of experience representing plaintiffs' interests in aviation, anti-terrorism, human rights, vehicle defect, asbestos, lead poisoning, and other complex civil litigation.  Ms. Smith is licensed to practice law in South Carolina and the District of Columbia and is admitted to practice before the U.S. Court of Appeals for the District of Columbia Circuit and before the U.S. District Court for the District of South Carolina.

4.  John M. Eubanks is an associate of the Motley Rice firm and is a member of the firm's Anti-Terrorism and Human Rights practice group.  Mr. Eubanks, a 2003 graduate of the Georgetown University Law Center, has more than 10 years experience representing victims, survivors, and family members of terrorism and human rights violations in litigation against international and domestic defendants.  Mr. Eubanks is licensed to practice law in Maryland and South Carolina and is admitted to practice before the U.S. Supreme Court and before the U.S. Courts of Appeals for the Second, Fourth, Fifth, and Eleventh Circuits.

5.  Brian Frutig is an associate of the Motley Rice firm and is a member of the firms' Anti-Terrorism and Human Rights practice group.  Mr. Frutig, a 2008 graduate of the William & Mary School of Law and a 2005 Masters graduate of King's College London, University of London, has more than 5 years experience focused principally on litigating cases involving the Anti-Terrorism Act, the Alien Tort Claims Act, the Foreign Sovereign Immunities Act and international humanitarian law.  Before becoming a lawyer, Mr. Frutig gained international law experience as a legal assistant at the Association of Defense Counsel practicing at the

International Criminal Tribunal for the Former Yugoslavia. Mr. Frutig is licensed to practice law in New York and South Carolina and is admitted to practice before the U.S. Supreme Court and the U.S. District Court for the Eastern and Southern Districts of New York.

Three attorneys from the Cozen O'Connor firm – Sean P. Carter, J. Scott Tarbutton, and Adam Bonin – have performed various tasks necessary in connection with the Al Haramain and Jelaidan motions. (Detailed biographies of these Cozen O'Connor attorneys are included at Exhibit F.)

1. Sean P. Carter is a member of the Cozen O'Connor firm and an appointed co-chair and member of the Plaintiffs' Executive Committee for the Commercial Claims in 03 MDL 1570. Mr. Carter is a 1996 graduate of the Villanova University School of Law with more than fifteen years of litigation experience, concentrated in commercial and mass tort litigation, with a particular focus on cases involving claims under the Foreign Sovereign Immunities Act and Anti-Terrorism Act. Mr. Carter is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit and the U.S. District Court for the Eastern District of Pennsylvania.

2. J. Scott Tarbutton is a member of the Cozen O'Connor firm and the designated liaison counsel and member of the Plaintiffs' Executive Committee for the Commercial Claims in 03 MDL 1570. Mr. Tarbutton is a 2001 graduate of the Catholic University of America, Columbus School of Law with more than a decade of litigation experience, concentrated in subrogation and recovery litigation. Mr. Tarbutton is licensed to practice law in Pennsylvania and is admitted to practice before the U.S. District Court for the Eastern District of Pennsylvania.

3. Adam Bonin was a member of the Cozen O'Connor firm and, since January 2012, has practiced at his own law firm. Mr. Bonin is a 1997 graduate of the University of Chicago

Law School, whose practice has focused on subrogation, commercial, products liability, antitrust, municipal finance, and first amendment litigation, in addition to the litigation. Mr. Bonin is licensed to practice law in Pennsylvania and admitted to practice before the U.S. Supreme Court.

Two attorneys and one investigative researcher from the Kreindler & Kreindler law firm – James P. Kreindler, Andrew J. Maloney, III and John Fawcett (investigator) – have performed various tasks necessary in connection with the Al Haramain and Jelaidan motions. (Detailed biographies of these Kreindler & Kreindler attorneys and its investigative researcher are included at Exhibit G.)

1.  James P. Kreindler, is a partner at the Kreindler & Kreindler firm and an appointed co-chair of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570. Mr. Kreindler is a 1980 Harlan Fiske Stone Scholar graduate of the Columbia Law School with more than thirty years of litigation experience, concentrated in aviation accident and terrorism litigation, including the lead counsel for plaintiffs in the successful terrorism action against the State of Libya for the Pan Am 103 Lockerbie bombing and previously served as an Assistant District Attorney in Brooklyn, NY. Mr. Kreindler is licensed to practice law in New York and is admitted to practice before the U.S. Supreme Court, the U.S. Courts of Appeals for the Second, Fifth, and Ninth Circuits and the U.S. District Court for the Eastern and Southern Districts of New York.

2.  Andrew J. Maloney III is a partner at the Kreindler & Kreindler firm and a designated co-liaison counsel and member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570. Mr. Maloney is a 1988 graduate of the Fordham University School of Law with more than twenty years of litigation experience, concentrated in aviation, products liability, medical malpractice and general negligence litigation. He has

worked on other terror litigation and previously served as an Assistant United States Attorney in the Southern District of New York in the Criminal Division and also clerked for the late Honorable Lloyd F. MacMahon, USDJ, SDNY. Mr. Maloney is licensed to practice law in New York, Connecticut, the District of Columbia, and Massachusetts and is admitted to practice before the U.S. Supreme Court, the U.S. Courts of Appeals for the Second, Third, and Federal Circuits, and the U.S. District Court for the Eastern, Southern and Northern Districts of New York, the District of Connecticut, the District of Colorado, the District of Columbia, the Eastern District of Missouri, and the U.S. Court of Federal Claims.

3. John Fawcett is an investigative researcher for the Kreindler & Kreindler firm who has worked for the firm since 2002, helping to develop the factual bases for the firm's terror-related civil suits and other complex litigation involving foreign defendants. Before working with the firm, Mr. Fawcett worked in the human rights field, particularly in the area of identifying financial backing of dictators and other human rights abusers. Mr. Fawcett spent years in the international emergency relief field, working in war zones and refugee camps. Mr. Fawcett has an MSc degree in International Relations from the Department of Politics at Bristol University in the United Kingdom.

Two attorneys from the Anderson Kill firm – Jerry Goldman and Rene Hertzog – have performed various tasks necessary in connection with the Al Haramain motion and this fee application. (Detailed biographies of these Anderson Kill attorneys are included at Exhibit H.)

1. Jerry Goldman is a shareholder at the Anderson Kill firm and operates as a member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570 through the seat appointed to Joshua Ambush. Mr. Goldman, a 1976 graduate of the Boston University School of Law (and a 1983 graduate of Temple University with an LLM), has more than 35 years of experience practicing in areas of complex litigation; general business law; white

collar criminal defense; and other areas. Mr. Goldman is licensed to practice law in New York, Pennsylvania, and Massachusetts and is admitted to practice before the U.S. Supreme Court, the U.S. Tax Court, the U.S. Court of Appeals for the Second and Third Circuits and before the U.S. District Court for the Eastern and Southern Districts of New York, and the Eastern District of Pennsylvania.

2. Rene Hertzog is an associate in the Insurance Recovery group at the Anderson Kill firm. Ms. Hertzog is a 2007 *cum laude* graduate of the Fordham Law School. Her practice concentrates on insurance recovery for policyholders, corporate and commercial litigation, and environmental law. Ms. Hertzog is licensed to practice law in New York, and is admitted to practice before the U.S. Supreme Court, the U.S. Courts of Appeals for the Second, Sixth, and Eleventh Circuits and before the U.S. District Court for the Eastern and Southern Districts of New York.

## II. IN ACCORDANCE WITH THE SECOND CIRCUIT'S "PRESUMPTIVELY REASONABLE FEE" ANALYSIS, PLAINTIFFS' APPLICATION SEEKS ONLY RELEVANT COSTS AT REASONABLE RATES OF COMPENSATION

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[4] Though the Supreme Court continues to acknowledge this "lodestar" method, the Second Circuit has often avoided the term in favor of applying an approach centered on determining a "presumptively reasonable fee," or "what a reasonable, paying client would be willing to pay." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007). Under either methodology, prior to the calculation

---

[4] The Supreme Court has reaffirmed the vitality of this "lodestar" method. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010).

of fees being made, the party seeking reimbursement must prove the reasonableness and necessity of the hours spent, as well as the rates charged. *Momchilov v. Chaduhry*, No. 04-CV-3159, 2006 WL 2594850, at *1 (E.D.N.Y. Sept. 11, 2006).

A. **Plaintiffs' hourly rates are comparable to market rates.**

This Court should assess Plaintiffs' counsels' fee and expense requests by comparing the requested rates to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998) (internal citation omitted). The hourly rate ordinarily is judged in relation to the district in which the reviewing court sits, *Arbor Hill,* 493 F.3d at 119 (*see also In re Agent Orange Product Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)), and courts may "rely on [their] own knowledge of rates charged by lawyers in the district." *Morris v. Eversley,* 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004). A court's determination of the rate is a factual issue within its discretion, and in addition to knowledge of rates charged, courts "should rely" upon "evidence submitted by the parties as to the rates they typically charge." *Tatum v. City of New York*, No. 06-cv-4290, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010) (citing *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). Subject to the court's discretion, current rather than historic hourly rates of counsel at-issue typically are applied to reflect the protracted nature of complex cases. *Id.* at *4 (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

Several other elements warrant consideration in connection with Plaintiffs' instant Application. First, in evaluating fee requests, *Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) instructs that courts should consider, *inter alia*, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or

might initiate the representation himself," *Id.* at 184.  As demonstrated in the attached firm and attorney biographies (Exhibits E - H), Plaintiffs' counsel in these cases bring unique resources and experience to this groundbreaking, expansive multidistrict litigation, demonstrating vast experience in complex international, commercial, banking, mass tort and terrorist financing/human rights litigation.  Those factors, combined with the volume of resources required for firms (particularly in a contingent litigation) to collect, manage, and use massive volumes of foreign language documents, as well as be positioned to coordinate and attend domestic and possibly overseas depositions, all render it clear that a reasonable client would have selected counsel with the essential resources to do so.  Moreover, in this litigation, the discovery aspects have proven to be particularly more complex than in most cases (*see, e.g.*, ECF No. 2730, at 1[5]; ECF No. 2789, at 1[6]; Transcript of Dec. 20, 2013 hearing at 41, lines 1-2 (Exhibit N)[7]; Transcript of Feb. 15, 2012 hearing at 4, lines 12-17 (Exhibit M)[8]; Transcript of June 23, 2011 hearing at 23, lines 11-16 (Exhibit K)[9]).  Indeed, the Rule 37 relief reflected in the October 28, 2013 Order is the end product of nearly a decade of litigation, including, literally, hundreds of pages of briefing, declarations, and exhibits addressing a multitude of issues often unique to this litigation.

Here, the hourly rates of the various attorneys involved in the various proceedings are reasonable as reinforced by various authorities.  These rates, which are the same as the

---

[5] In its Memorandum Decision and Order, the Court characterizes the case as having a "complex and sprawling procedural history," with "no shortages of disputes regarding discovery."

[6] In its Memorandum Decision and Report and Recommendation, the Court characterizes the litigation as "expansive multidistrict litigation."

[7] In a discussion about setting deadlines in the litigation, Judge Maas "recognize[s] it's a case with considerable complexity."

[8] Describing the complexity of the discovery issues in the litigation, Judge Maas states: "I find that a lot of the discovery issues in this case are a little like pushing on one part of a pillow, only to watch it rise somewhere else.  And I am not necessarily being critical of either side in terms of saying that.  I just think it's probably the nature of the enterprise we're all engaged in."

[9] Commenting on the uniqueness of the skill sets required in discovery in this multidistrict litigation, Mr. Carter explained:  "There's a whole group of people who need to be used to analyze this information.  The analysis of information in this case requires a rather unique set of skills.  It's not really translating; it's having substantive knowledge regarding particular activities [and] particular individuals and networks."

prevailing rates that Plaintiffs' counsel would demand of fee-paying clients, fit squarely within the norm of reasonable fees for lawyers of comparable experience, skill, and reputation handling complex litigation in the Southern and Eastern Districts of New York. *See, e.g.*, Mike Mintz, "New Report Finds Law Firm Hourly Billing Rates Continuing to Rise," Martindale-Hubbell, May 9, 2012 (Exhibit O) ("New York City firms raised their attorney billing rates on average 12 percent in the past few years, the second highest change in rates among lawyers in various U.S. cities . . .. The median billing rate for 2,020 partners in New York City in 2011 was $756 per hour. The top 25% of those partners' rates was almost $1,000 per hour."); Karen Sloan, The National Law Journal, NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202637587261?slreturn= 20140023124124# (Exhibit P) (Indicating that nearly 20 percent of the firms surveyed had at least one partner charging more than $1000 per hour, with a median among the high partner billing rates of the surveyed firms being $775 an hour); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., Co.* 09 Civ. 8665 (JGK)(FM), 2010 U.S. Dist LEXIS 138873, at *8, *10 (S.D.N.Y. Dec. 6, 2010) (finding reasonable a $750 hourly rate for a partner practicing for over twenty years, which was voluntarily discounted by ten percent, and noting that the 2009 AIPLA Report showed that seventy-fifth percentile of the attorneys surveyed billed $700 per hour); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (Awarding an hourly rate of $600 to two senior lawyers following settlement of class action); *Ceglia v. Zuckerberg,* No. 10-CV-00569(F), 2012 U.S. Dist. LEXIS 18438, at *13 (W.D.N.Y. Feb. 14, 2012) (identifying standard rates for SDNY attorneys of $955, $825, $670, and $450); *Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 222 (E.D.N.Y. 2009) (class action fraud case awarding hourly rates for senior counsel as high as $790 and for associates as high as $500).

Meanwhile, the comparable current prevailing market rates for Plaintiffs' counsel seeking fees with this Application are as follows:

| Motley Rice Lawyer | Title/Law School Grad. Year | Hourly Rate |
|---|---|---|
| Jodi Westbrook Flowers | Member/1993 | $800 |
| Robert T. Haefele | Associate/1989 | $750 |
| Elizabeth Smith | Associate/2000 | $600 |
| John M. Eubanks | Associate/2003 | $550 |
| Brian Frutig | Associate/2008 | $475 |

| Cozen O'Connor Lawyer | Title/Law School Grad. Year | Hourly Rate |
|---|---|---|
| Sean P. Carter | Member/1996 | $750 |
| J. Scott Tarbutton | Member/2001 | $600 |
| Adam Bonin | Member/1997 | $500 |

| Kreindler Lawyer | Title/Law School Grad. Year | Hourly Rate |
|---|---|---|
| James P. Kreindler | Partner/1980 | $800 |
| Andrew J. Maloney III | Partner/1988 | $750 |
| John Fawcett | Investigative Researcher since 2002 | $350 |

| Anderson Kill Lawyer | Title/Law School Grad. Year | Hourly Rate |
|---|---|---|
| Jerry S. Goldman | Shareholder/1976 | $800 |
| Rene F. Hertzog | Associate/2007 | $475 |

Bearing in mind the body of case law, the complexity of the litigation, Plaintiffs' counsel's experience, and comparable counsel rates, it is unnecessary to lower Plaintiffs' counsel's prevailing market rates; the rates Plaintiffs seek are presumptively reasonable.

**B.    This Application is limited to work directly related to the efforts to compel Al Haramain and Jelaidan to comply with their basic discovery obligations.**

To determine the presumptive reasonable fee, in addition to confirming reasonable rates for counsel, the Court must determine the number of "hours reasonably expended." "Hours reasonably expended are those actually expended by counsel minus 'excessive, redundant, or otherwise unnecessary' hours." *Arbor Hill*, 522 F.3d at 189-90.

Here, Plaintiffs are asking for the fees and expenses limited to work undertaken in order to demonstrate the defendants' non-compliance with applicable discovery obligations, and to make the factual and legal showings necessary to obtain a series of orders from the

Court directing compliance on the part of the defendants. Those efforts necessarily encompassed factual and evidentiary investigations to demonstrate the defendants' access to, and custody and control over, relevant records that had not been produced (in some cases involving the assistance of experts), as well as time invested in researching, drafting, editing, and finalizing 14 separate pleadings (eight for Al Haramain and six for Jelaidan), and to preparing for and appearing at four court hearings (three for Al Haramain and two for Jelaidan, with some overlap).

For Al Haramain, the eight separate pleadings include: (1) Plaintiffs' December 2, 2009 motion to compel (ECF No. 2206); (2) Plaintiffs' January 5, 2010 reply in further support of the motion to compel; (3) Plaintiffs' November 29, 2010 opposition (ECF No. 2389) to Al Haramain's Rule 72 objections (ECF No. 2384) to the Court's October 28, 2010 Ruling; (4) Plaintiffs' January 9, 2013 motion for sanctions and accompanying declaration with exhibits (ECF Nos. 2654, 2655); (5) Plaintiffs' February 7, 2013 reply and accompanying declaration with exhibits (ECF Nos. 2679, 2680) in further support of the motion for sanctions; (6) Plaintiffs' February 27, 2013 response (ECF No. 2694) to two notices of filings by Al Haramain; (7) Plaintiffs' December 2, 2013 opposition (ECF No. 2805) to Al Haramain's Rule 72 objections (ECF No. 2799) to the Court's October 28, 2013 Ruling (ECF No. 2789), and (8) this application. The three hearings for Al Haramain are those held on February 8, 2010, December 2, 2010, and March 19, 2013.

For Jelaidan, the six separate pleadings include: (1) Plaintiffs' October 17, 2011 motion to compel; (2) Plaintiffs' November 16, 2011 reply in further support of the motion to compel; (3) Plaintiffs' January 30, 2013 motion to compel and request for sanctions (ECF No. 2700); (4) Plaintiffs' March 12, 2013 reply in further support of the motion to compel and request for sanctions (ECF No. 2704); (5) Plaintiffs' December 2, 2013 opposition (ECF No. 2803) to

Jelaidan's Rule 72 objections (ECF No. 2794) to the Court's October 28, 2013 Ruling (ECF No. 2789), and (6) this application. The two hearings for Jelaidan are those held on November 16, 2011 and March 19, 2013.

In accordance with the October 28, 2013 Order and prior precedent, the amount of presumptively reasonable fees Plaintiffs seek, before application of any enhancement, as evidenced and detailed in the Declaration of Robert T. Haefele and supporting documentation (*see* Exhibits B, C), includes $411,665.00 in fees in connection with the Al Haramain work and $270,482.50 in fees in connection with the Jelaidan work.

**C.    Courts in the Second Circuit have the discretion to modify the lodestar or presumptively reasonable fee amount to ensure that sanctions have their intended effect on litigants.**

When a court establishes a lodestar amount, this does not necessarily set the amount for an award of attorney's fees, and enhancements may be applied to account for the need to achieve a sanction's deterrent effect. Whereas a lodestar amount is generally intended to identify a reasonable fee that a party would agree to pay, the purpose of sanctions "is not compensation of the victimized party but rather . . . the curbing of abuses." *On Time Aviation v. Bombardier Capital, Inc.*, 354 Fed. Appx. 448, 452 (2d Cir. 2009). When attorney's fees are based on sanctions, courts start "with the lodestar or 'presumptively reasonable fee,' which is then adjusted as necessary to assure [the rule 37 sanction's] deterrent objective is achieved." *Ceglia*, 2012 U.S. Dist. LEXIS 18438, at *13.

Under the circumstances, it is difficult to imagine a circumstance in which imposition of an enhancing multiplier would be more appropriate. In addition to the willful and longstanding non-compliance of al Haramain and Jelaidan – even in the face of the multiple admonitions from the Court to come into compliance – this multidistrict litigation has also involved a multitude of other defendants who have similarly practiced willful non-compliance;

hence, the need for a strong deterrence message. Plaintiffs contend that an enhancement to the lodestar is warranted to achieve the necessary deterrent effect of the Rule 37 sanction and to put an end to the continued noncompliance of the various defendants. Accordingly, Plaintiffs request that the court enhance the lodestar value by 1.5 to reinforce the deterrent purpose of Rule 37. *See generally*, *Ceglia*, 2012 U.S. Dist. LEXIS 18438.

### D. Plaintiffs are entitled to recoup reasonable costs and expenses in connection with the above pleadings and hearings.

The Court already ruled that Plaintiffs should not have to bear the costs of defendants' conduct, and are entitled to reimbursement of expenses. This includes those "reasonable costs that are ordinarily charged to clients in the legal marketplace." *Anderson v. City of New York*, 132 F.Supp.2d 239, 245 (S.D.N.Y. 2001). Attorney's fees awards themselves "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients," such as those "incidental and necessary to the representation." *U.S. Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989); *Tatum*, 2010 WL 334975, at *40. The range of costs particularly pertinent to the pleadings and hearings listed in the Application include such reimbursable items as airfare, train fare, travel lodging, and parking, all associated with travel for hearings, as well as transcript fees and postal fees associated with providing the court and opposing counsel hard copies of the various associated pleadings and exhibits.

In accordance with the October 28, 2013 Order and prior precedent, the amount of expenses Plaintiffs seek, before application of any enhancement, as evidenced and detailed in the Declaration of Robert T. Haefele and supporting documentation (*see* Exhibits B, C), includes $6,029.21 in costs and expenses in connection with the Al Haramain work and $2,710.47 in costs and expenses in connection for the Jelaidan work.

**E.    Plaintiffs are entitled to a reasonable fee for preparation of the Fee Application.**

A party awarded attorney's fees is also entitled to compensation "for time reasonably spent in preparing and defending" the fee application. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999). Accordingly, before application of any enhancement, as evidenced and detailed in the Declaration of Robert T. Haefele and supporting documentation (*see* Exhibit D), Plaintiffs are entitled to fees of $45,922.50 for preparation of the Fee Application, with supplementation permitted for any additional work to be performed in the event opposition is filed necessitating a response. Inasmuch as the Fee Application was prepared jointly for all Plaintiffs counsel as to both of the defendants, Plaintiffs ask that the award for fees for the preparation of the fee petition be made jointly and severally as to both of the defendants.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that the Court grant this Fee Application and order Al Haramain and Jelaidan to pay Plaintiffs the attorneys' fees and costs and expenses incurred and requested herein, as identified in the Declaration of Robert T. Haefele and the exhibits and supporting documentation attached thereto, along with the enhancement as requested herein, as well as any amounts and any other relief the Court orders within its discretion.

Dated:  January 24, 2014

By:

_____

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

Fax: (843) 216-9450

Attorneys for *Burnett and Euro Broker* Plaintiffs and Plaintiffs' Executive Committees


_____

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2000
Fax: (215) 665-2013

On Behalf of the *Federal Insurance* Plaintiffs and Plaintiffs' Executive Committees


_____

James P. Kreindler, Esq.
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, NY 10017
Tel: (212) 687-8181
Fax: (212) 972-9432

On Behalf of the *Ashton* Plaintiffs and Plaintiffs' Executive Committees


_____

Jerry Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000
Fax: (212) 278-1733

On Behalf of the *O'Neill* Plaintiffs and Plaintiffs' Executive Committees