# Exhibit K

```
                                                                        1
     16N4TERC
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    IN RE:  TERRORIST ATTACKS
3    ON SEPTEMBER 11, 2001                   03MDL1570(GBD)(FM)
4
4    ------------------------------x
5
5                                            June 23, 2011
6                                            11:35 a.m.
6
7    Before:
7
8                         HON. FRANK MAAS
8
9                                      Magistrate Judge
9
10                        APPEARANCES
10
11   ANDERSON KILL & OLICK
11        Attorneys for O'Neill Plaintiffs and PECs
12   JERRY S. GOLDMAN
12
13   COZEN O'CONNOR
13        Attorneys for Federal Insurance Plaintiffs and PECs
14   SEAN P. CARTER
14   J. SCOTT TARBUTTON
15
15   MOTLEY RICE
16        Attorneys for Burnett Plaintiffs and PECs
16   ROBERT T. HAEFELE
17
17   CLIFFORD CHANCE
18        Attorneys for Defendant Dubai Islamic Bank
18   BY:  RONI BERGOFFEN (via telephone)
19
19   McMAHON & ASSOCIATES
20        Attorneys for Defendants IIRO, MWL and Wa'el Jelaidan
20   BY:  MARTIN McMAHON (via telephone)
21
21   STEVEN BARENTZEN (via telephone)
22        Attorney for Defendant Jamal Barzinji
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

                                                                   9
    16N4TERC
 1              THE COURT:  Let me just interrupt.  I understand part
 2   of the difficulty is that you have not been to the kingdom.  I
 3   am not suggesting that you need to invest your own money in the
 4   case.  Quite the opposite; I think that privately retained
 5   attorneys are entitled to be paid, and I have never kept in a
 6   case an attorney who was not getting paid who wished to exit a
 7   case.
 8              But whether it's because of Saudi regulations or
 9   whatever, documents were not produced on a schedule which is
10   consistent with my order which was that these 8 narrow
11   categories were to be produced within 30 days, I think 30 days
12   of April 12.  I am pretty sure it was as of April 12.  Even it
13   was April 26, we are still more than a month beyond the
14   deadline for the 8 narrow categories.
15              So it seems to me, and you are telling me that after
16   the conference rather than shortly before the conference, you
17   are going to be getting back to Mr. Carter, which basically
18   means there is no way to know what the outcome of that would be
19   today.  So I guess I somewhat share plaintiffs' frustration.
20   One thing that your clients ought to be concerned about is that
21   I can't worry about issues like Saudi approvals for attorney
22   fees.
23              What inevitably may happen in this case is that if
24   responsive documents are not produced, and Mr. Carter and his
25   colleagues are able to show that the documents exist and should
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

```
                                                               10
      16N4TERC
 1    be produced, some of the tenor of what they said in the prior
 2    conferences suggests to me that they may have specimens of
 3    documents from whatever sources that enable them to show that
 4    there are categories of reports that exist, which at least as
 5    of now have not been produced.  If they make a sufficiently
 6    persuasive showing, your clients may be faced with the prospect
 7    that I issue case-dispositive sanctions.
 8              So, I will let you finish talking but I just wanted
 9    you to understand my concerns and where we collectively may all
10    be headed.  Go on.
11              MR. McMAHON:  I appreciate that, your Honor.  You have
12    always being struck me as being a very level-headed guy and you
13    are trying to satisfy the plaintiffs' needs and you are
14    cognizant of the fact that we are dealing with a foreign
15    country.  What my point is that we have produced everything
16    that was called for in terms of the 8 categories for both MWL
17    and IIRO-SA and we now have that format.  I am going to send
18    that to Mr. Carter in about an hour or so.  I am waiting on our
19    translator to tell me some other things, but we can certainly
20    get that to him.
21              That is our position that we have complied.  I
22    apologize.  It was not timely in terms of if you set this down
23    for 30 days.  Mr. al Rahdi is just super overworked.  He can't
24    get the resources he needs to do all sorts of stuff.  He's been
25    killing himself.  He has produced a ton of things.  I have sent
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                   17
         16N4TERC
 1   court issued a subsequent order on April 27, directing the IIRO
 2   to produce documents relating to other unrelated issues,
 3   distinct from the 8 categories.  Those included records
 4   relating to Mohammed Jamal Khalifa, another individual named
 5   Wa'el Jelaidan, and the director named al Mujil.
 6            Since the April 27 order was issued there has been
 7   absolutely no production relative to any of those issues.  So
 8   there has been a focus on a few discrete aspects of the 8
 9   categories.  We don't think that that is complete.  There has
10   been nothing as to the other order.
11            Adding to the problems, Mr. McMahon suggested there
12   was a conciliatory tone.  What there wasn't was any outreach to
13   us in advance of any of the expirations of these deadlines at
14   all to let us know that there was going to be a problem, to let
15   us know that they were not going to be able to comply with the
16   court's order.  It's all after the fact and only after we
17   invest the time and effort to come before the court again on an
18   issue that really should have been put to bed.
19            THE COURT:  What I am inclined to do is to put this
20   over to the July 12 or 13 conference.  I think I have made my
21   position clear which is that if a persuasive showing can be
22   made that MWL and IIRO have not fully complied with the rulings
23   that I made on April 12 and April 26, those organizations may
24   be facing a more formal motion that I would entertain which if
25   my recommendation were to be accepted by Judge Daniels might
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
                                                                      18
      16N4TERC
 1    lead to the entry of default judgments against those
 2    organizations.  By the same token, if you are not getting paid
 3    and move to withdraw on another route, they could end up in the
 4    same position.
 5             So I am inclined to put this off because there is not
 6    much point in my simply saying you really have to comply with
 7    orders that I last time and the time before said you really
 8    have to comply with.  But really the burden is it seems to me
 9    on your clients, Mr. McMahon, to establish that they have
10    complied, putting aside questions of timeliness of the
11    compliance.
12             I don't think I said it before, but as far as I am
13    concerned anything that is produced by anybody needs to be
14    Bates-stamped because it's difficult enough that we are dealing
15    with documents in Arabic and there may be translations down the
16    road, if we have piles of documents that are not Bates-stamped,
17    this is rapidly going to spin even more out of control than it
18    may be now.
19             MR. CARTER:  Your Honor, we have a double problem with
20    regard to Bates-stamping as far as the IIRO is concerned.
21    There were documents produced without Bates stamps.  Then there
22    was another production which repeated Bates stamps that were
23    used in an earlier production with regard to different
24    documents.  So for instance, I directed Mr. Haefele to a
25    particular Bates stamp the other day and he was looking at a
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                                    23
        16N4TERC
 1      period after 1992.
 2               MR. McMAHON:  How can it be?  He was in jail; he was
 3      under arrest.
 4               MR. CARTER:  He was briefly detained in the United
 5      States; he was not in jail throughout that period of time.
 6               THE COURT:  One thing that Mr. McMahon had suggested
 7      was that the person you are relying on to review the documents,
 8      or I guess the indices, have a discussion with the person who
 9      the defendants are using for the same purpose and I guess I
10      don't see much harm in that.  Why should that not occur?
11               MR. CARTER:  There's a whole group of people who need
12      to be used to analyze this information.  The analysis of
13      information in this case requires a rather unique set of
14      skills.  It's not really translating; it's having substantive
15      knowledge regarding particular activities, particular
16      individuals, networks.
17               THE COURT:  I am really focusing, maybe I didn't make
18      it clear, on the indices, the two indices, and how they were
19      generated, what you perceive as the shortcomings, why they
20      perceive them as adequate, and perhaps dealing with some of the
21      issues where you say just the file organization suggests that
22      there must be must be other indices.  I guess what I am
23      proposing is that whoever is generating that belief on your
24      side communicate with whoever thinks they have done an adequate
25      job on their side as part of an informal meet and confer to see
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```