THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | ) |  |
| In Re Terrorist Attacks on September 11, 2001 | ) | No. 03 MDL 1570 (GBD/FM) |
|  | ) | ECF Case |

**DEFENDANT WAEL JELAIDAN'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO REPORT AND RECOMMENDATION OF OCTOBER 28, 2013**

Defendant Wael Jelaidan hereby files through undersigned counsel this memorandum in opposition to the Plaintiffs' January 24, 2014 application for attorney fees pursuant to the Report and Recommendation of October 28, 2013. As shown *infra*, this application for fees is exaggerated in large measure, and should be reduced severely. Plaintiffs' request is based on a deterrence theory, not actual hours billed. Plaintiffs did not prevail on all points in their Motion to Compel, have not provided contemporaneous time records, and have requested baseless lodestar enhancements. Overbilling and double-billing has occurred, travel time is being billed at full-time hourly rates, and, in certain instances, the hearings that, allegedly, these attorneys attended involved various matters, not just matters concerning Jelaidan. Thus, it would be unfair to saddle him with all of the attorney fees arising out of these hearings. Also, as undersigned counsel recalls, it was only Sean Carter who made the arguments in the case, so Jelaidan should not be billed for four different attorneys. Finally, as shown in the affidavit submitted earlier to this court, Jelaidan made good-faith efforts to produce the documents, and only because of his designation as a Specially Designated Global Terrorist by the Department of the Treasury's

1

Office of Foreign Assets Control (OFAC) was he unable to do so. There was no willful and flagrant disregard of the discovery process.

I. **DEFENDANT WAEL JELAIDAN MADE MULTIPLE GOOD-FAITH ATTEMPTS TO OBTAIN THE REQUESTED DOCUMENTATION**

Plaintiffs would have this Court believe that a "severe" fee award is justified because Defendant Wael Jelaidan engaged in "willful misconduct." (Pls.' Mem., at 1-2). Such a basis for awarding fees is unsubstantiated, as it ignores the multiple good-faith attempts Jelaidan made to obtain the requested documentation. Jelaidan outlined his efforts in his October 29, 2011 affidavit. This included sending letters requesting documents from Faisal Finance Account, Al Rajhi Banking and Investment Corp., Habib Bank, Rabita Trust, Third World Relief Agency, and Maram Company. (*See* Jelaidan Aff. ¶¶ 5-13). As his United Nations designation prohibited his traveling abroad and his OFAC designation made him a virtual prisoner in Saudi Arabia, (Aff. ¶ 7), it is unclear what more Jelaidan could have done to demonstrate his good faith. He had nothing to hide, and has never supported international terrorism.

II. **PLAINTIFFS' REQUEST THAT FEES BE BASED ON A NEED TO DETER IS AKIN TO CLAIMING PUNITIVE DAMAGES PRIOR TO THE RESOLUTION OF A LITIGATION, AND IS CONTRARY TO THE PLAIN LANGUAGE OF THIS COURT'S REPORT AND RECOMMENDATION WHICH LIMITED ANY FEE AWARD TO THE COSTS INCURRED IN BRINGING THE MOTION**

In *Romeo and Juliette Laser Hair Removal, Inc. v. Assara I, LLC, et al.*, this Court outlined the various bases upon which to calculate an appropriate attorney fee, once the award of attorney fees has been found requisite. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 08 CIV. 442 TPG FM, 2013 WL 3322249 (S.D.N.Y. July 2, 2013). Although bad faith may be considered in determining *whether* to award fees, nowhere in these twelve factors does the Court allow for a second factoring-in of bad faith (i.e., the deterrence factor) when it comes to determining the amount to be awarded. Such duplicative factoring of bad faith would be tantamount to awarding punitive damages prior to the resolution of this case.

Thus, Plaintiffs' request that "severe" fees (Pls.' Mem., at 2) be imposed as a deterrent to future perceived discovery infractions is in clear contravention of the twelve bases in *Romeo and Juliette*. Furthermore, the plain language of this Court's Report and Recommendation requires that any fee award be based on "costs incurred in bringing the motion" and not some subjective measure of a party's alleged bad faith. (Pls. Ex. A, "Report and Recommendation," at 41). Plaintiffs' attempt to include a deterrent or punitive element in the fee calculation is clearly overstepping the requirements of the Report and Recommendation.

### III. PLAINTIFFS ENJOYED ONLY PARTIAL SUCCESS ON THE MOTION TO COMPEL, THUS ANY AWARD OF ATTORNEY FEES SHOULD BE REDUCED TO REFLECT ONLY THE FEES ACTUALLY INCURRED IN PREVAILING ON THEIR SUCCESSFUL POINTS

The most critical factor in determining the amount awarded in attorney fees is the degree of success obtained by the plaintiff. *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005). When, as in this case, Plaintiffs achieve only partial or limited success, multiplying the hours reasonably expended on the litigation as a whole by a reasonable hourly rate is an excessive amount. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

Work on unsuccessful claims cannot be deemed to have been expended in pursuit of the ultimate result achieved, and thus should not be counted in the award total. *Id.* In *Carrero v. New York City Housing Authority*, the requested award was subject to a 35% reduction for the plaintiff's lack of success on the merits of some claims. 685 F. Supp. 904 (S.D.N.Y. 1988) aff'd and remanded, 890 F.2d 569 (2d Cir. 1989).

In this case, Plaintiffs' requests for sanctions were interpreted by this Court as being tripartite, comprising claims for attorney fees, adverse inferences, and the entry of default judgment. (*See* Report and Recommendation at 34). Jelaidan, unlike Rabita Trust and Al Haramain Saudi Arabia, was not sanctioned with the entry of a default judgment, but received only the sanction of an adverse inference instruction and an award of attorney fees. Similar to the 35% reduction in *Carrero*, after paring down the bald-faced padding in Plaintiffs' fee application, the final amount should also be reduced by one third to reflect Plaintiffs' limited success in this matter.

### IV. PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN OF ESTABLISHING THROUGH CONTEMPORANEOUS TIME RECORDS THAT THE SUBSTANTIAL SUM OF $446,941.80 IS THE ACTUAL AMOUNT INCURRED IN ATTORNEY FEES ON ONE MOTION TO COMPEL

To enable a court to determine the reasonableness of the hours expended, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F.Supp. 811, 817 (S.D.N.Y.1997); Palacios v. Z & G Distributors, Inc., 11 CIV. 2538 AT FM, 2013 WL 4007590 (S.D.N.Y. Aug. 6,

2013). Any attorney who applies for court-ordered compensation in the Second Circuit must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done. *Carey* at 1148 (setting this as the rule for all work done after the date of this 1983 decision). This Court's Report and Recommendation directed Plaintiffs to "submit, within thirty days, affidavits *and contemporaneous time records* itemizing the number of hours expended on the motion…" (Report and Recommendation at 17)(emphasis added).

In contravention of this Court's direction, Plaintiffs' attorneys have failed to provide any contemporaneous documentation or any documentation whatsoever that could serve to externally corroborate their claim that the instant application is based solely on the time incurred. Instead, Plaintiffs have simply provided reconstructed summaries and an affidavit from Attorney Sean Carter attesting that "the summaries were prepared based on contemporaneous data maintained by each firm." (Pls.' Mem. at 7). If the summaries were truly prepared based on contemporaneous data, why was that data not provided as required by *Carey*? Even if the summaries were truly based on contemporaneous data, affidavits accompanying reconstructed time records in support of fee applications are generally not acceptable. *Johnson v. Kay*, 742 F. Supp. 822 (S.D.N.Y. 1990). Where exception to the *Carey* rule was made, penalties of 20% or greater have applied. *Id. See also Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (when the documentation of hours in inadequate, the court may reduce the award accordingly).

V. **LODESTAR ENHANCEMENTS ARE RARE AWARDS APPLICABLE ONLY TO FEES INCURRED IN CLASS ACTION SETTLEMENTS OR JURY VERDICTS, NOT IN MOTIONS TO COMPEL**

Enhancing by some percentage the base "lodestar" hourly fees incurred by the prevailing attorneys is an exceptional occurrence, available only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of hourly rates charged, and that success was exceptional. *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). This method has generally been limited to civil rights actions, and even then very sparingly. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ("The aim of § 1988, which provides that the prevailing party in certain civil rights actions may recover a reasonable attorney fee as part of the costs, is to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys"). The novelty and complexity of a case generally may *not* be used as a ground for an enhancement of the lodestar figure for a reasonable attorney fee under a fee-shifting statute, because these factors presumably are fully reflected in the number of billable hours recorded by counsel. *Id.*

The burden of proving the necessity of an enhancement to the lodestar figure for a reasonable attorney fee under a fee-shifting statute must be borne by the fee applicant. *Id. See also Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). Applicants must provide specific evidence that the lodestar fee would not have been adequate to attract and reward competent counsel. *Perdue* at 542.

Obviously, this is not a civil rights or class action case. It is a very limited award on a single motion to compel discovery. As much as Plaintiffs may try to portray this as a complex case, it was a simple matter of trying to obtain documents. Plaintiffs' attorneys have simply claimed entitlement to a 50% enhancement over and above the lodestar amount. They have not even attempted to meet their burden of producing evidence showing that the quality of the

service rendered was superior to the already considerable hourly rates charged and that the lodestar fee would not attract competent counsel.

VI.  **PLAINTIFFS' ATTORNEYS' ALLEGED EXPENDITURE OF 437.65 HOURS ON ONE RULE 37(b) MOTION TO COMPEL IS OVER TWICE WHAT THIS COURT HAS FOUND TO BE EXCESSIVE IN SIMILAR CIRCUMSTANCES**

This Court has, on numerous occasions, labeled as excessive claims to hours spent preparing 37(b) Motions to Compel such as the one at issue here. *See Antonmarchi v. Consol. Edison Co. of New York, Inc.*, 03 CIV. 7735 LTS KNF, 2012 WL 3126004 (S.D.N.Y. July 31, 2012) (excluding as excessive 80% of the hours requested because "the facts relevant to the motion did not require any significant investigation, the misconduct was obvious, and the application of facts to law was straightforward. Yet, to complete this limited and straightforward motion, three attorneys with considerable experience and expertise billed over 210 hours.") *and Bravia Capital Partners, Inc. v. Fike*, 09 CIV. 6375 JFK KNF, 2013 WL 1728059 (S.D.N.Y. Apr. 22, 2013) (reducing by 40% the "fat" from a fee application). *See also Levitian v. Sun Life & Health Ins. Co. (U.S.)*, 09 CIV. 2965 GBD FM, 2013 WL 3829623 (S.D.N.Y. July 24, 2013) report and recommendation adopted, 09 CIV. 2965 GBD FM, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013) (finding excessive 34 hours to draft a reply brief and 100 hours to draft a motion for summary judgment).

In *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, this Court found that, for a similar 37(b) motion to compel, a 14 page brief, six page declaration, and 16 exhibits, which included Defendants' document requests, correspondence between the parties, and transmission e-mails for Plaintiffs' document productions need not have taken 33 hours to prepare and file. 276 F.R.D. 105, 111 (S.D.N.Y. 2011). Here, Plaintiffs' attorneys' alleged hours surpass the 33 hours in

*Underdog Trucking* by a staggering factor of 13, and yet their document requests, motion to compel, memorandum in support, and reply brief are not anywhere close to 13 times longer than the comparable products in *Underdog Trucking*. In *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, this Court found it appropriate to apply a 75% reduction in fees for similar puffery. 08 CIV. 442 TPG FM, 2013 WL 3322249 (S.D.N.Y. July 2, 2013). As in *Antomarchi*, this Court found this case to be straightforward. (*See* Report and Recommendation at 9).

VII. **PLAINTIFFS' ATTORNEYS' REPRESENTATION THAT THEY SPENT 64.5 HOURS WRITING ONE FEE APPLICATION FOR ONE MOTION TO COMPEL IS INCONCEIVABLE AND NOT IN THE REALM OF REASONABLE INDUSTRY NORMS**

Plaintiffs' attorneys also exaggerate the time spent on their fee application. In *Levitian v. Sun Life & Health Ins. Co. (U.S.)*, this Court found it "most glaring" that fee applicant attorneys spent more than 36 hours preparing a fee application. 09 CIV. 2965 GBD FM, 2013 WL 3829623 (S.D.N.Y. July 24, 2013) report and recommendation adopted, 09 CIV. 2965 GBD FM, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013). Here, Plaintiffs' attorneys' alleged 64.5 hours is nearly double that "glaring" amount.

As discussed in section IV, *supra*, with regards to the fees incurred for the motion to compel, failure to provide contemporaneous time records bars recovery of fees incurred on the application itself. *Carrero v. New York City Hous. Auth.*, 685 F. Supp. 904 (S.D.N.Y. 1988) aff'd and remanded, 890 F.2d 569 (2d Cir. 1989). Furthermore, failure to keep contemporaneous records may preclude an award of attorney fees for time spent preparing and litigating the fee application if the inordinate amount of time plaintiffs' attorneys spent on the fee application was a direct result of their failure to keep better records. *New York State Ass'n for Retarded Children,*

*Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). Plaintiffs' attorneys should not be rewarded for their own poor recordkeeping.

### VIII. FEES FOR HEARING ATTENDANCE MUST BE LIMITED TO SEAN CARTER BECAUSE HE WAS THE ONLY ATTORNEY WHO ARGUED FOR PLAINTIFFS WITH RESPECT TO COMPELLING DOCUMENT PRODUCTION FROM DEFENDANT JELAIDAN

This Court has reduced by 75% fees that are redundant and unnecessarily duplicative. *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100(KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008); *Lide v. Abbott House*, No. 05 Civ. 3790(SAS), 2008 WL 495304, at *1–2 (S.D.N.Y. Feb. 25, 2008) (reducing attorney fee award by thirty percent for various reasons, including "excessive and unnecessary hours spent on indisputably straightforward tasks"); *Winkler v. Metro. Life Ins. Co.*, No. 03 Civ. 9656(SAS), 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006) (reducing lodestar figure by twenty percent for "excessive charges and lack of delegation").

At all hearings related to the Motion to Compel, Sean Carter was the only attorney arguing for Plaintiffs with respect to Jelaidan, MWL, IIRO, and Rabita. Yet, all the other attorneys billed for those hearings, including travel time. (*Compare* Pls.' Exs. B *and* C re 03/18/13–03/20/13 Hr'gs). This included the Motley Rice attorneys, the two attorneys from Kreindler, and Scott Tarbutton, the second attorney from Cozen O'Connor. At the very least, billing for four to six attorneys when one would suffice merits the 20% reduction in *Winkler* for lack of delegation, and reeks of the duplicative billing cited in *Days Inn*. Query: why should Plaintiffs' attorneys be paid for a full hour if they were mere spectators? Lastly, Mr. Carter himself only spent a fraction of every hour spent at the hearing actually dealing with Jelaidan's

9

case. A reduction on the scale of the 75% reduction in *Days Inn* is thus appropriate. Similar duplication occurred with the Status Conference of November 15-16.

### IX.   PLAINTIFFS' ATTORNEYS HAVE ENGAGED IN NUMEROUS INSTANCES OF OVERBILLING

In reducing the total number of hours awarded, a court may "exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir.2006). Plaintiffs' attorneys have left "fat" in their fee application by not limiting their application to time spent only on matters related to Jelaidan in four categories: (1) billing full hours for shorter hearings, (2) billing full hearing time when only a portion was spent on Jelaidan, and (3) billing travel time at full hourly rates.

#### a. Plaintiffs' Attorneys Billed Full Hours For Hearings That Did Not Run One Full Hour

Plaintiffs' attorneys typically billed one full hour for each hearing, essentially corresponding to the entire length of the hearing and then some. Although the transcripts for the November 16, 2011 and March 19, 2013 hearings (at which Jelaidan and other defendants were discussed) do not indicate how long each hearing lasted, (*See* 11/16/11 Hr'g Tr., *and* 03/19/13 Hr'g Tr.), this Court may have access to that information. Undersigned counsel cannot recall a single hearing ever going over 1 hour (corresponding to about 50-60 transcript pages), with most hearings well under the 1-hour mark.

#### b. Plaintiffs' Attorneys Billed For Full Hearing Time When Jelaidan Was Not The Only Defendant Discussed

As mentioned above, the hearings of November 16, 2011 and March 19, 2013 included more defendants than just Jelaidan, and yet multiple attorneys billed for the full hearing time on

the fee application. (*See* Pls.' Ex. C). An analysis of the Nov. 16, 2011 hearing transcript shows why such billing practices are excessive. The transcript is 55 pages in length, corresponding roughly to one hour's time. (*See* 11/16/11 Hr'g Tr.). But pages 1-2 should not be counted, because they are the caption and list of attorneys. *See id.* Of the remaining 53 pages, only 29.5 pages, (pages 4 bottom to 28 top and pages 30 to 35 top), or 56%, relate to MWL, IIRO, and Jelaidan. *See id.* Because some of that time was specific to MWL/IIRO, that percentage should be further reduced. *See id.* The rest of that hearing was devoted to general discovery matters, Al Haramain, and the Mirza deposition issue. *See id.* Thus one hour is an overly generous estimate for the time Plaintiffs' attorneys actually spent on Jelaidan at that hearing.

Plaintiffs' attorneys similarly overbilled for the March 19, 2013 hearing. That hearing's transcript is 56 pages. (*See* 03/19/13 Hr'g Tr.). Pages 1-3 also don't count (caption, list of attorneys), leaving 53 pages. *See id.* Of that, 33.5 pages (pages 21 to 54 top) are for both Jelaidan and Rabita, or 63% of the total. *See id.* Some of this portion is unique to Rabita, so the amount of time specific to Jelaidan is, generously, still less than 30 minutes. In any event, Sean Carter should only be reimbursed for part of the hearing time as to Jelaidan, instead of the full time, as the rest of that hearing was devoted to general discovery matters and Al Haramain. *See id.*

Plaintiffs' attorneys should not have billed at all for the hearing on April 12, 2011. On that date, one attorney (Kreindler) and one investigator (Fawcett) from the Kreinder firm both billed for court hearings. *See* Exhibits B and C. The April 12 transcript makes clear that the hearing had to do with IIRO/MWL, WAMY issues, and general discovery issues such as the witness list and discovery deadlines, with Jelaidan only mentioned tangentially. (*See* 04/12/11 Hr'g Tr.). Thus, the April 12 conference should not be billed at all to the Jelaidan discovery dispute.

### c. Plaintiffs' Attorneys Billed Their Travel Time At Full Hourly Rates

As a default matter, travel time can only be billed at 50%. Yet Plaintiffs' attorneys are seeking 50% of the travel time from both Jelaidan and Haramain, effectively recouping 100%. *See* Plaintiffs' Exhibits B and C. Thus travel fees should be cut in half, and then further reduced to reflect that Jelaidan was only part of the hearings in which other matters were also considered.

### Conclusion

Because Defendant Wael Jelaidan responded to the discovery requests in good faith, this award of attorney fees should not be granted. Should this Court grant Plaintiffs' fee application, then Defendant respectfully requests that the fees be reduced by 90% to reflect actual time spent on this one 37(b) Motion to Compel, for a total fee award of $44,694.18.

Respectfully submitted,

 */s/ Martin McMahon*
 Martin F. McMahon, Esq.
 McMahon & Associates
 1150 Connecticut Avenue, N.W.
 Suite 900
 Washington, D.C. 20036
 Phone: (202) 862-4343
 Fax: (202) 828-4130
 mm@martinmcmahonlaw.com

Dated: February 14, 2014                                *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

                                                 */s/ Martin McMahon*
                                                 Martin F. McMahon, Esq.
                                                 McMahon & Associates
                                                 1150 Connecticut Avenue, N.W.
                                                 Suite 900
                                                 Washington, D.C. 20036
                                                 Phone: (202) 862-4343
                                                 Fax: (202) 828-4130
                                                 [mm@martinmcmahonlaw.com](mm@martinmcmahonlaw.com)

Jodi Westbrook Flowers
Michael Elsner
Robert T. Haefele
*[Rhaefele@motleyrice.com](Rhaefele@motleyrice.com)*
Motley Rice LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Tel: (843) 216-9000
Fax: (843) 216-9450

Stephen A. Cozen
Sean P. Carter
*[scarter@cozen.com](scarter@cozen.com)*
J. Scott Tarbutton
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2000
Fax: (215) 665-2013

James P. kreindler
[jkreindler@kreindler.com](jkreindler@kreindler.com)
Kreindler & Kreindler LLP
750 Third Avenue
New York, NY 10017
Phone: 212-687-8181
Fax: 212-972-9432

Paul J. Hanly, Jr.
Jayne Conroy
Andrea Bierstein
abierstein@hanlyconroy.com
Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP
112 Madison Avenue
New York, NY 10016
Tel: (212) 784-6400
Fax: (212) 213-5949

Jerry S. Goldman
jgoldman@andersonkill.com
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas, 42nd Floor
New York, N.Y. 10020-1182
Telephone: (212) 278-1498
Fax: (212) 278-1733