## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

$\qquad$ )

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 $\qquad$ ) No. 03 MDL 1570 (GBD/FM)
$\qquad$ ) $\qquad$ ECF Case

_____ )

This document relates to:

> ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 02-CV-6977;
> BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
>     Case No. 03-CV-5738;
> CANTOR FITZGERALD ASSOCIATES, LP, *et al.* v. AKIDA INVESTMENT CO., LTD., *et al.*,
>     Case No. 04-CV-7065;
> CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
>     Case No. 04-CV-05970;
> EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-07279;
> FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
>     Case No. 03-CV-6978; and
> ESTATE OF O'NEILL, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
>     Case No. 04-CV-1923.

**Defendant Al Haramain Islamic Foundation, Inc. (USA)**
**<u>Opposition to Plaintiffs' Application for Attorneys' Fees and Expenses</u>**

# Table of Contents

I.      Procedural Background     .     .     .     .     .     .     .     1

II.     Plaintiffs' Fee Petition     .     .     .     .     .     .     .     3

III.    Legal Standard     .     .     .     .     .     .     .     .     4

IV.     This Court Should Deny Plaintiffs' Fee Petition In Its Entirety     .     .     5

    1.  Plaintiffs failed to provide contemporaneous time records, retainer
    agreements, and sworn affidavits for each law firm     .     .     .     6

    2.  Plaintiffs sought excessive and unjustified hourly rates  .     .     .     8

    3.  Plaintiffs failed to reduce the hours and expenses due to their limited success
    in prevailing on only one of three discovery issues and in not obtaining either
    a default judgment or an adverse inference     .     .     .     .     12

    4.  Plaintiffs improperly sought a lodestar enhancement     .     .     .     13

    5.  Plaintiffs failed to reduce the fee petition to remove excessive hours arising
    from overstaffing and redundant work     .     .     .     .     .     14

    6.  Plaintiffs improperly billed for work or time incurred as to other, unrelated
    defendants, or double-billed the same time to multiple defendants     .     19

    7.  Plaintiffs improperly sought excessive or non-compensable expenses   .     20

V.      CONCLUSION     .     .     .     .     .     .     .     .     21

Al Haramain Islamic Foundation, Inc. (USA) ("Al Haramain (USA)") respectfully submits its Opposition to Plaintiffs' Fee Petition (ECF Nos. 2829-2831) (Jan. 24, 2014).

As set forth below, this Court should exercise its discretion under Rule 37, and strike the time and expenses sought by plaintiffs, due to overbilling, overstaffing, inadequate records, and demanding excessive rates and non-compensable expenses. Plaintiffs' limited success requires a further substantial reduction in a fee award, if any is to be made. Plaintiffs prevailed on only one of three discovery issues, and did not obtain either of the discovery sanctions that they sought, yet failed to reduce their time and expenses to reflect their limited success.

## I.      **Procedural Background.**

After this Court issued its discovery rulings as to Al Haramain (USA) and several other defendants, plaintiffs sought Rule 37 sanctions against four defendants: Al Haramain (USA), the Al Haramain Foundation (Saudi Arabia) ("Al Haramain (SA)"), Rabita Trust, and Wael Jelaidan. Plaintiffs sought the full range of sanctions – either a default judgment or an adverse inference instruction – and also sought fees and expenses. *See* Report (ECF No. 2789) (Oct. 28, 2013).

Plaintiffs sought sanctions against Al Haramain (USA) for three discrete discovery issues: (1) delay in producing documents covered by a protective order in a criminal case in Oregon, *id.* at 32-35; (2) failure to produce documents from Al Haramain (SA)'s headquarters in Saudi Arabia, *id.* at 35-36; and (3) alleged spoliation of electronic evidence. *Id.* at 36-38.

This Court's Report recommended that Plaintiffs be granted the most severe sanction, *i.e.*, a default judgment, as to two defunct defendants, Al Haramain (SA) and Rabita Trust. *Id.* at 40. This Court also recommended that Plaintiffs should be granted the lesser sanction of an adverse inference, with attorneys' fees and expenses, as to Mr. Jelaidan. *Id.*

In contrast, for Al Haramain (USA), this Court concluded that "sanctions are not

warranted at this time but the Plaintiffs may recover the expenses they reasonably incurred in bringing their motion." *Id.* Moreover, of the three discrete discovery issues encompassed by Plaintiffs' motion, this Court found that Plaintiffs had shown <u>no</u> justification for any sanctions as to two issues, and that attorneys' fees (but no sanctions) were only warranted as to the first issue.

(1) For the delay in producing the documents, this Court found that "it is difficult to see how the delay has resulted in any harm to the Plaintiffs' case," *id.* at 33, and that "their belated production has not resulted in any demonstrable prejudice or otherwise deprived the Plaintiffs of a fair opportunity to litigate their case." *Id.* at 34 (only awarding attorneys' fees).

(2) For the failure to produce documents from the Al Haramain (SA) headquarters, this Court found that "there has been no showing that Al Haramain (USA) failed to meet this obligation" to preserve documents. *Id.* at 35. "Rather, Al Haramain (USA)'s present inability to produce the relevant materials was caused by unforeseen external circumstances," *id.* at 35-36, so that "there is no basis for imposing sanctions." *Id.* at 36.

(3) For the alleged spoliation of evidence, this Court found that "there has been no showing as to how or when the documents were lost. . . . they may well have been erased at a time prior to when the duty to preserve arose." *Id.* at 37. The government's document examiner "admitted that there could have been several innocent explanations," so there was no evidence of intentional destruction or a negligent failure to preserve. *Id.* at 38. Further, "Plaintiffs have also failed to show that any materials that could not be recovered were relevant to their case." *Id.*

Critically, the problems with production of documents arose from the legitimate basis that Al Haramain (USA) lacked access to documents in the criminal case in Oregon – a situation that was resolved after that trial was completed. Subsequently, the Court of Appeals reversed the conviction of Mr. Sedaghaty. *See United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013).

II.    **Plaintiffs' Fee Petition.**[1]

Plaintiffs submitted one fee petition for both Al Haramain (USA) and Mr. Jelaidan.  The fee petition listed separate attorneys' fees and expenses for these two defendants (with double billing, *infra*), except for the time in preparing the fee petition itself, which was combined by Plaintiffs, but is here allocated 50/50 between the two defendants.  Since the fee petition and the supporting affidavit set forth different numbers, the correct numbers are set forth here:

|  | Al Haramain (USA) | Jelaidan | Subtotal |
|---|---|---|---|
| Hours on Discovery Motions | 637.50 hours | 437.65 hours | 1,075.15 hours |
| Hours on Fee Petition | 32.25 hours | 32.25 hours | 64.50 hours |
| Hours (total) | 669.75 hours | 469.90 hours | 1,139.65 hours |
| Fees for Discovery Motions | $411,665.00 | $270,482.50 | $682,147.50 |
| Fees for Fee Petition | $22,961.25 | $22,961.25 | $45,922.50 |
| Attorneys' Fees (subtotal) | $434,626.25 | $293,443.75 | $728,070.00 |
| 1.5 Lodestar enhancement | $651,939.37 | $440,165.63 | $1,092,105.00 |
| Expenses | $6,029.21 | $2,710.47 | $8,739.68 |
| **Total fees and expenses** | $657,968.58 | $442,876.10 | $1,100,844.68 |

*See* Plaintiffs' Mem. & Exhibits B-D (ECF No. 2830, 2831) (Jan. 24, 2014).  Plaintiffs' fee petition required undersigned counsel to spend significant time analyzing their spreadsheets in order to identify improper or excessive time and expenses.  *See* Affidavit of Alan R. Kabat (Feb. 14, 2014) (attached and incorporated hereto).

---

[1] This Court directed Plaintiffs to submit their fee petition within 30 days, *i.e.*, by November 27, 2013.  *See* Report, at 17, 35.  Plaintiffs initially sought a 45-day extension of time, to January 10, 2014.  *See* Order (ECF No. 2801) (Nov. 26, 2013).  Plaintiffs then sought another extension, of 14 days, to January 24, 2014, for a total of 89 days, or nearly three months.  *See* Order (ECF No. 2824) (Jan. 9, 2014).

### III.    **Legal Standard.**

While Rule 37(a)(5)(A) grants the court the discretion to require the non-moving party to pay "the movant's reasonable expenses incurred in making the motion, including attorney's fees," it expressly provides that "the court <u>must</u> not order this payment if … other circumstances make an award of expenses unjust" (emphasis added).  Rule 37(b)(2)(C) similarly provides that an award of attorney's fees need not be paid if "other circumstances make an award of expenses unjust."  "Accordingly, while an award of fees under the Rule is encouraged, it is entirely discretionary."  *See* G. Joseph, *Sanctions*, § 49(B)(1), at 720 (5th ed. 2013).

The Second Circuit "warned … [that] attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983); *see also Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (district court failed "to heed our admonition that fee awards under § 1988 were never intended to produce windfalls to attorneys").  Judge Hellerstein denied fees in related litigation:  "The wounds of 9/11 will not easily be assuaged. But neither should they be exacerbated by rich rewards of fees and benign indifference to unreasonably large awards."  *In re Sept. 11 Litig.*, 567 F. Supp. 2d 611, 621 (S.D.N.Y. 2008).

The appellate courts have held that fee petitions should be struck if the movant's request is excessive in the hours, rates, or expenses.  *Fair Housing Council v. Landow*, 999 F.2d 92, 99 (4th Cir. 1993) (striking $537,113 petition because its excessive nature "give[s] us every indication that the attorneys representing the FHC intended to submit an outrageously excessive fee petition in the hope that the district court would at least award some, preferably, high percentage of the requested fees"); *Thelen Oil Co. v. Fina Oil & Chemical Co.*, 962 F.2d 821, 824 (8th Cir. 1992) ("it is not inappropriate to deny fees completely when the fee request is

outrageously excessive and unsupported by adequate documentation"); *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991) ("A request for attorney's fees is required to be in good faith and in reasonable compliance with judicial pronouncements, and not an opening gambit in negotiations to reach an ultimate result."); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) ("If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.  To discourage such greed a severer reaction is needful, and the District Court responded appropriately.").[2]

## IV.    This Court Should Deny Plaintiffs' Fee Petition In Its Entirety.

This Court should deny Plaintiffs' fee petition – which seeks $651,939.37 in fees (669.75 hours) and $6,029.21 in expenses (for a total of $657,968.58) against Al Haramain (USA), due to its outrageously excessive nature and failure to comply with controlling law governing petitions.

Plaintiffs' fee petition is seriously deficient for the following seven reasons:  (1) failure to provide contemporaneous time records, retainer agreements, and sworn affidavits for each law firm; (2) seeking excessive and unjustified hourly rates; (3) failure to reduce the hours and expenses due to limited success in prevailing on only one of three discovery issues and in not obtaining either a default judgment or an adverse inference; (4) improperly seeking a lodestar enhancement; (5) failure to remove excessive hours arising from overstaffing and redundant work; (6) improperly billing for time incurred for other defendants; and (7) improperly seeking excessive or non-compensable expenses.

---

[2] *Toussie v. County of Suffolk*, No. 01–CV–6716 (JS)(ARL), 2012 WL 3860760, at *6 (E.D.N.Y. Sept. 6, 2012) ("The Court finds that Toussie's fee application is so outrageously excessive and unreasonable that it could not possibly have been made in good faith."); *Brown v. Iowa*, 152 F.R.D. 168, 175 (S.D. Iowa 1993) ("the federal courts have consistently held that an intolerably inflated fee request justifies a complete denial of fees") (collecting cases).

1.  **Plaintiffs failed to provide contemporaneous time records, retainer agreements, and sworn affidavits for each law firm.**

This Court should find that that Plaintiffs' fee petition is defective under Second Circuit and district court case law which requires that a fee petition must be supported by contemporaneous time records, retainer agreements, and sworn affidavits for each law firm, each of which must be submitted with the petition, <u>not</u> with the reply brief.

Here, Plaintiffs failed to submit any sworn affidavit from each law firm attesting as to the fees and expenses incurred by each firm, and instead merely submitted an affidavit by one attorney who asserted to have knowledge as to the time and expenses incurred by four law firms, and the experience of the attorneys at those firms.  Plaintiffs further failed to submit any retainer agreements documenting the actual rates charged to their clients.  Nor did Plaintiffs submit either the monthly invoices that they sent to their clients or their daily time sheets; instead, they provided unauthenticated spreadsheets that purport to reconstruct their time over several years.

The movant is "obligated, in [its] initial moving papers, not in [its] reply, to provide evidence supporting the reasonableness of both the attorneys' fees [it] incurred on the motion to compel and the hours expended."  *Bravia Capital Partners, Inc. v. Fike*, No. 09 Civ. 6375 (JFK)(KNF), 2013 WL 1728059, at *7 (S.D.N.Y. Apr. 22, 2013).

The fee petition must be supported by sworn affidavit(s) for each law firm, attesting that the fees were incurred solely for the specific purpose covered by the fee award, accompanied by contemporaneous time records.  *Carey*, 711 F.2d at 1147 ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit"); *Shamir v. Anchor-International Foundation, Inc.*, No. 10 Civ. 725 (PGG), 2013 WL 4008635, at *13-14 (S.D.N.Y. July 30, 2013) (absence of sworn affidavit as to time records precludes any fee award); *Anthony v. Franklin First Financial, Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) ("the Court gives significant weight to the

6

retainer agreements"); *Adeleke v. McNary*, No. 92 Civ. 8440 (CSH), 1994 WL 30463, at *2 (S.D.N.Y. Jan. 28, 1994) ("The usual practice is for attorneys to execute affidavits stating that contemporaneous time records were kept, and attaching copies of the contemporaneous records as exhibits."); *Carrero v. N.Y. City Housing Auth.*, 685 F. Supp. 904, 908-09 (S.D.N.Y. 1988), *aff'd in relevant part*, 890 F.2d 569, 582 (2d Cir. 1989) (both affidavits and actual records required; "penalties have been imposed for failure to provide the actual records").

In other aviation litigation, Motley Rice recently admitted that "we did not keep time sheets" and "we did not record research, preparation and investigation hours." *See* Motley Rice Fee Petition, at 3, 6, *In re Air Crash at Lexington, Ky.*, No. 5:06-cv-00316 (ECF No. 3859, 3861) (E.D. Ky. Mar. 15, 2011) (emphasis added) (excerpts attached as Exhibit 1 to Kabat Aff.). Motley Rice represented one family for less than one year, in a case that they did not take to trial, yet claimed to have incurred 2,657.69 hours with a value of $1,158,269.00, based on rates of $650 for a partner (Schiavo), $450 for associates, and $150 for a paralegal. *Id.* at 7. The "reconstructed" time records were based on estimates derived from the word-count of emails or page length of documents, *e.g.*, spending up to 6.5 hours to read a single email from their client, *id.*, Ex. 3, at 61, and up to 3 hours to write a single email to their client. *Id.* at 64.

Judge Forester noted: "Schiavo states that Motley Rice did not keep time sheets," and awarded only $245,500 from the settlement, a reduction of almost 80 percent. *In re Air Crash at Lexington, Ky.*, No. 5:06-cv-00316, 2011 WL 2358611, at *7, *21 (E.D. Ky. June 9, 2011).

Here, too, Plaintiffs' counsel have not submitted their contemporaneous time records, *i.e.*, the monthly invoices or daily time sheets. Nor have they submitted their retainer agreements, or sworn affidavits from each law firm. Under clear Second Circuit precedent, and decisions by other district court judges in this jurisdiction, Plaintiffs should have known of their obligation to

do so – an obligation that cannot be cured in the reply brief, as *Bravia Capital* held.  Therefore, this Court should find that Plaintiffs' fee petition must be struck entirely on that ground alone.

Alternatively, this Court should order Plaintiffs to produce their contemporaneous time records and retainer agreements for review by both the Court and undersigned counsel:

> *Carey* places the burden of producing these records on the attorney submitting the fee request.  Beyond this, the records' importance is so critical in determining a reasonable fee as to make their production by the most efficient method possible a prerequisite. Opposing counsel should not have to make a preclusion motion.  Thus, the district court properly refused to award fees for time spent preparing the fee application.

*Lewis*, 801 F.2d at 577 (citing *Carey*, 711 F.2d at 1148, 1154).

### 2.  Plaintiffs sought excessive and unjustified hourly rates.

This Court should further find that the Plaintiffs' fee petition should be struck entirely for seeking excessive and unjustified hourly rates – with most of the time incurred by attorneys seeking $800 (Ms. Flowers and Messrs. Goldman and Kreindler) or $750 (Messrs. Haefele, Carter, and Maloney), with some time sought by other associates and junior partners seeking $475 to $600, and a "researcher" seeking $350.  *See* Pls. Mem., at 15.  As the appellate courts held in *Landow*, 999 F.2d at 98, *Thelen Oil*, 962 F.2d at 821, *Lewis*, 944 F.2d at 958, and *Brown*, 612 F.2d at 1059, the district courts should strike fee petitions that are "outrageous" or "excessive."  As set forth below, Plaintiffs' fee petition is both outrageous and excessive in the hourly rates sought, as well as in the rampant overbilling.

For an attorneys' fee petition – whether under Rule 37 or any another statute or rule – the Supreme Court has held that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorneys' own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

8

As a threshold matter, Plaintiffs' reliance on the billing rates of "Wall Street" law firms is misplaced.  The Second Circuit has held that it is improper to use the rates for giant-sized law firms in deciding a fee petition (unless it is submitted by a comparable law firm).  *Carey*, 711 F.2d at 1150 ("large private firms like Cravath … pay premium rents, and they maintain the personnel and other resources necessary to provide the extensive legal services and quantity of documents required on short notice in connection with corporate and securities practices").  Instead, "several market rates may prevail in a given area, particularly one with as large and diverse a legal community as New York City."  *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989).  The Second Circuit held that a district court "properly accorded … little weight" to articles about billing rates for Wall Street firms.  *Id.* (the "article itself supports the proposition that smaller firms may be subject to their own prevailing market rate").  Thus, this Court should reject Plaintiffs' reliance on "newspaper articles listing billing rates at Wall Street firms [that] are of no probative value."  *Richards v. N.Y. City Board of Education*, No. 83 Civ. 7621 (CBM), 1988 WL 70209, at *4 (S.D.N.Y. June 27, 1988).

This Court should exercise particular caution given Plaintiffs' failure to provide their retainer agreements, since it appears that the $800 hourly rates they seek were created solely for purposes of a fee petition.  Magistrate Judge Peck recently criticized this approach:  "Moreover, there is no evidence that any of the Kimmel firm's clients pay its so-called 'regular' hourly billing rates in FDCPA cases—the rates appear to exist for the purpose of charging defendants, such as Allied, under the FDCPA fee shifting provisions."  *Ryan v. Allied Interstate, Inc*, 882 F. Supp. 2d 628, 635 (S.D.N.Y. 2012) (rejecting attempt to seek rates of $425 for partners, and $300 for a senior associate; finding that the proper rates were $300 and $225, respectively).

As this Court recently recognized, "One of the most important factors in determining the

prevailing market rate, and thus the reasonable hourly rate, is the amount that counsel actually charge their clients," based upon the "actual billing arrangement." *E.F. v. N.Y. City Dept. of Educ.*, No. 11 Civ. 5243 (GBD)(FM), 2012 WL 5462602, at *3 (S.D.N.Y. Nov. 8, 2012).

This discovery dispute did <u>not</u> require special expertise in specialized areas of the law that might justify higher rates. *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 04 Civ. 5002 (JSR), 2005 WL 2063819 at *4 (S.D.N.Y. Aug. 24, 2005) ("higher rates have been found reasonable for experienced intellectual property litigators in New York City, given the complexity of the work"); *accord Harley v. Nesby*, No. 08 Civ. 5791 (KBF)(HBP), 2012 WL 1537881, at *9 (S.D.N.Y. May 2, 2012).[3]  Here, in contrast, this dispute involved civil procedure issues that every litigator is expected to know, so that higher rates are <u>not</u> warranted.

As set forth below, the rates Plaintiffs seek here – up to $800 per hour – are excessive, and substantially exceed what might be an appropriate market rate.

<u>New York attorneys.</u>  This Court recently held that hourly rates of $450 for attorneys with 30 years' experience, $300 for attorneys with 25 years' experience, and $75 for paralegals, are "clearly in line with the prevailing market rates for partners and associates in the Southern District of New York." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, No. 08 Civ. 442 (TPG)(FM), 2013 WL 3322249, at *5 (S.D.N.Y. July 2, 2013) (collecting cases); *accord Stengel v. Black*, No. 10 Civ. 8661 (CM)(HPB), 2012 WL 4794583, at *5 (S.D.N.Y. Sept. 20, 2012) (hourly rate of $300 for attorney with ten years' experience).

<u>Out of town attorneys.</u>  Plaintiffs improperly sought Wall Street rates for work performed in Mt. Pleasant (a suburb of Charleston) and Philadelphia.  However, as Magistrate Judge Peck recently held, "To the extent the reasonable hourly rate for an out-of-district lawyer is less than

---

[3] Even in those intellectual property cases, the rates authorized for experienced partners were significantly lower than the $750 to $800 sought by Plaintiffs here, *i.e.*, $395 to $485 in *Design Tex* and $395 in *Harley*.

the billing rate in the district where the court sits, the lower rate should apply.  In other words, the appropriate billing rate should be the rate where the attorney works or the forum rate, whichever is lower."  *Ryan*, 882 F. Supp. 2d at 633.

Mt. Pleasant, South Carolina attorneys.  The U.S. District Court for South Carolina has awarded fees to attorneys in South Carolina firms that are significantly larger than Motley Rice, but at rates much lower than Motley Rice is seeking.[4]  Nexsen Pruet, twice the size of Motley Rice, recently received fees at a rate of $265 for partners.  *H & C Corp., Inc. v. Puka Creations, LLC*, No. 4:12–cv–00013–RBH, 2013 WL 2303248, at *2 (D.S.C. May 24, 2013).  Nelson Mullins and Womble Carlyle, each more than six times the size of Motley Rice, recently received fees at a rate of $300 for partners, and $125 for a paralegal.  *Grayson Consulting, Inc. v. Cathcart*, No. 2:07–02992–DCN, 2013 WL 436217, at *3 (D.S.C. Feb. 5, 2013).

Philadelphia attorneys.  The U.S. District Court for the Eastern District of Pennsylvania recently awarded fees to Cozen O'Connor attorneys at a rate of $350 per hour for partners, $285 for associates, and $195 for paralegals, in a copyright infringement and indemnification action (*i.e.*, a specialized area of the law), after reducing for "excessive and duplicative work" and for partial success on the petition.  *Maule v. Philadelphia Media Holdings, LLC*, No. 08–3357, 2010 WL 3859613, at *7-8 (E.D. Pa. Oct. 1, 2010).  The same court recently awarded Morgan Lewis – a firm more than twice the size of Cozen O'Connor[5] – fees at a rate of $200 to $305 for its associates.  *Miles v. Elliot*, No. 94–4669, 2011 WL 5524842, at *4 (E.D. Pa. Nov. 14, 2011).

---

[4] *Compare* Nexsen Pruet (http://www.nexsenpruet.com/) (190 lawyers in eight offices) *and* Nelson Mullins, "Firm Overview" (http://www.nelsonmullins.com/overview) ("more than 500 attorneys" in 14 offices) *and* Womble Carlyle, "History" (http://www.wcsr.com/Firm-and-Clients/History) ("more than 550 lawyers in 14 offices") *with* Motley Rice, "Attorney Profiles" (http://www.motleyrice.com/attorneys) (74 attorneys) (viewed Feb. 6, 2014).

[5] *Compare* Morgan Lewis, "The Story of Our Firm" (www.morganlewis.com) (1,400 attorneys) *with* Cozen O'Connor, "About" (http://www.cozen.com/about) (575 attorneys) (viewed Feb. 6, 2014) *and* Anderson Kill, "Attorneys and Advisors" (www.andersonkill.com) (92 attorneys).

Therefore, there is no basis for this Court to award Plaintiffs fees at the excessive rates that they are seeking, which further justifies denying their fee petition.

### 3. Plaintiffs failed to reduce the hours and expenses due to their limited success in prevailing on only one of three discovery issues and in not obtaining either a default judgment or an adverse inference.

This Court should strike, or drastically reduce, Plaintiffs' fee petition because they failed to account for their limited success – they prevailed on only one of three discovery issues (requiring a reduction of two-thirds), and they did not obtain either sanction (a default judgment or an adverse inference) that they sought, which requires a further substantial reduction.

The Supreme Court has held that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *Carrero*, 685 F. Supp. at 908 (same); *accord Barfield v. N.Y. City Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("we are mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff") (quoting *Farrar*, 506 U.S. at 114); *U.S. Football League v. National Football League*, 704 F. Supp. 474, 487 (S.D.N.Y. 1989), *aff'd*, 887 F.2d 408 (2d Cir. 1989) ("it is clear from the above discussion that some reduction in the basic lodestar amount is mandated by the limited success of the USFL").

Here, Plaintiffs prevailed on only one of three discovery issues as to Al Haramain (USA). Even if this Court does not strike the fee petition entirely for lack of contemporaneous records, or for seeking excessive and unjustified hourly rates, it should still reduce the fee petition by at least two-thirds to reflect the limited degree of success on the merits, and by a further two-thirds to reflect that they did not obtain either a default judgment or an adverse inference sanction.

12

### 4.  Plaintiffs improperly sought a lodestar enhancement.

This Court should further deny Plaintiffs' request for a 1.5 (or 50 percent) lodestar

enhancement, since this discovery dispute does not justify any enhancement – instead, a

significant reduction or complete denial of the fee petition is warranted.

The Supreme Court and the Second Circuit have held that it is reversible error to award a

lodestar enhancement based on "complexity" or "novelty of the issues," which are <u>not</u> criteria for

an enhancement.  *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010) (holding that the circumstances

warranting a lodestar enhancement "are indeed rare and exceptional");[6] *Blum*, 465 U.S. at 898-99

("Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining

whether to increase the basic fee award.") (reversible error to award 50 percent enhancement);

*Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986) ("Complexity, of course, no longer justifies

a bonus; nor does handling a strongly meritorious case on a contingent fee basis.").  Similarly,

the "'results obtained' … normally should not provide an independent basis for increasing the

fee award."  *Blum*, 465 U.S. at 900.  Thus, "unjustified enhancements that serve only to enrich

attorneys are not consistent with the [fee-shifting] statute's aim."  *Perdue*, 559 U.S. at 559.

Hence, Plaintiffs' reliance on the "complexity" of this case is incorrect.

Plaintiffs' reliance on *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed.

App'x 448 (2d Cir. 2009) for a lodestar enhancement, *see* Pls. Mem. at 17, is misplaced, since

that decision concerned Rule 11 sanctions.  The Second Circuit explained that Rule 11 "is not a

fee-shifting mechanism," *On Time Aviation*, 354 Fed. App'x at 452, in contrast to Rule 37,

which is a fee-shifting mechanism.  Moreover, that case had <u>no</u> lodestar enhancement.  *Id.*

---

[6] On remand from the Supreme Court, the district court concluded that <u>no</u> lodestar enhancement was warranted. *Kenny A. v. Deal*, No. 1:02-cv-1686-MHS, at 6, 28 (ECF No. 710) (N.D. Ga. July 19, 2011) (rejecting plaintiffs' attempt to obtain "an enhancement between 50.16% and 97.83% of the lodestar").

Plaintiffs' reliance on *Ceglia v. Zuckerberg*, No. 10–CV–00569 A(F), 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012), *see* Pls. Mem. at 17, is even more misplaced, since that case also had <u>no</u> lodestar enhancement – instead, the movant voluntarily reduced its fee request by 25 percent, and the court reduced that by a further 10 percent. *Ceglia*, 2012 WL 503810, at *3, *17.

Plaintiffs have offered no support for any lodestar enhancement in this Rule 37 discovery dispute, which involved civil procedure issues that every litigator is expected to know. This dispute did not rise to the "rare and exceptional" level that might warrant an enhancement.

### 5. Plaintiffs failed to reduce the fee petition to remove excessive hours arising from overstaffing and redundant work.

This Court should strike, or drastically reduce, Plaintiffs' fee petition, for improperly seeking excessive time. As set forth in the attached Affidavit, the fee petition has excessive time and expenses, arising from (1) billing for five or six attorneys to "attend" status conferences; (2) failing to reduce travel time by one-half; (3) excessive internal conferences; (4) block billing; (5) partners billing for work that could be done by a paralegal; (6) billing for reviewing documents that would have to be reviewed regardless of a discovery motion; (7) vague or generic entries; and (8) billing the exact same amount of time in one day for multiple discrete tasks.

The Supreme Court has stated that "cases may be overstaffed," so fee petitions must exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Thus, the Second Circuit stated that "we have held that a district court, in reviewing a fee application, should 'examine the particular hours expended by counsel' … and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the calculation of the reasonable fee." *Konits v. Karahalis*, 409 Fed. App'x 418, 421 (2d Cir. 2011) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ("the district court should exclude

14

excessive, redundant or otherwise unnecessary hours").

As this Court recently observed, "It requires only a brief review of the time records in this case to conclude that the hours for which Romeo is seeking reimbursement are grossly excessive relative to the nature of the work performed.  Those hours consequently must be excluded from any fee award."  *Romeo*, 2013 WL 3322249, at *6 (citing *Hensley*); *accord Levitian v. Sun Life & Health Ins. Co.*, No. 09 Civ. 2965 (GBD)(FM), 2013 WL 3829623, at *10-11 (S.D.N.Y. July 24, 2013) (30 percent reduction for excessive hours), *report adopted*, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013).

This Court, and other judges in the Southern District, have not hesitated to impose drastic reductions to Rule 37 fee petitions to reflect excessive and unreasonable billing.  *Romeo*, 2013 WL 3322249, at *8 (75 percent reduction); *Bravia*, 2013 WL 1728059, at *2, *8-9 (75 percent reduction); *Antonmarchi v. Consolidated Edison Co. of New York, Inc.*, No. 03 Civ. 7735 (LTS)(KNF), 2012 WL 3126004, at *3 (S.D.N.Y. July 31, 2012) (80 percent reduction); *Underdog Trucking, LLC v. Verizon Services Corp.*, 276 F.R.D. 105, 112-13 (S.D.N.Y. 2011) (40 percent reduction on motion to compel and 50 percent reduction on reply).

Excessive and unreasonable billing is particularly problematic where, as here, it is incurred by attorneys who are demanding high hourly rates of up to $800 per hour:

> Moreover, it should be noted that the lodestar computation is a two-edged sword.  A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law.  Double dipping, in any form, cannot be condoned.  Our cases supply no authority for rewarding non-stop meter running in law offices.

> Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates.  Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.

15

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).

(1)     Time sending multiple attorneys to a status conference, particularly where, as here, those attorneys did <u>not</u> argue as to Al Haramain (USA), is not compensable.  *In re Sept. 11 Litig.*, 567 F. Supp. 2d at 618; *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 521-22 (S.D.N.Y. 1994) ("fees for attorneys contributing little to the case will be eliminated"). Plaintiffs routinely billed for five or six attorneys to attend a status conference, even though only one was arguing as to Al Haramain (USA).  *See* Kabat Aff., at ¶¶ 2-3.

(2)     Moreover, travel time must be reduced by one-half and the remainder allocated among the discrete discovery issues.  *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008) ("The defendants are correct that travel time is appropriately compensated at half of counsel's normal billing rate."); *Colbert v. Furumoto Realty, Inc.*, 144 F. Supp. 2d 251, 261 (S.D.N.Y. 2001) ("They [plaintiffs] have obviously overlooked our prior decisions in which we reduced attorneys' fees for travel time by 50% because of the lack of productivity that results when an attorney travels to appointments.").  Although the out-of-town law firms did reduce their travel time by one-half for only 1 conference, they did so only to allocate all of the remaining time between Al Haramain (USA) and Mr. Jelaidan, and failed to reduce further it to reflect that the discovery conferences covered yet other discovery issues.  *See* Kabat Aff., at ¶ 4.

Instead, the proper starting point for travel time is one-half the actual time, which should then be reduced to allocate the time between Al Haramain (USA) and the other discovery issues. For example, if Al Haramain (USA) accounted for only 20 percent of the time at a given hearing, the proper method is to reduce the travel time by one-half, and then to apply 20 percent to that one-half amount, *i.e.*, 10 percent of the total travel time, and not 50 percent as Plaintiffs seek.

(3)     The district judges in this jurisdiction have held that time for internal conferences

can be excessive or unnecessary and must be reduced.  *Anthony*, 844 F. Supp. 2d at 509 ("84 hours for internal meetings between the attorneys"); *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 268 (S.D.N.Y. 1995) ("the court agrees with Judge Dollinger's conclusion that both firms spent an excessive amount of attorney hours in both kinds of [intra- and inter-firm] conferences;" reducing that time by half).

Here, Plaintiffs routinely sought time for internal conferences (within the Plaintiffs' Executive Committees) that is not compensable or must be reduced drastically.  *See* Kabat Aff., at ¶ 7 (up to 16 hours in a single day).

Moreover, Plaintiffs sought inconsistent time for the same internal conferences:  on October 28, 2010, one attorney from Motley Rice billed 1.5 hours, while two attorneys from Cozen O'Connor billed 4.5 hours each for the <u>same</u> PEC conferences before and after this Court's hearing; on February 8, 2010, Cozen O'Connor claimed 6 hours for a PEC conference that nobody else billed for.  *Id.*

(4)     Plaintiffs' time records also reflect block billing, particularly for the Anderson Kill law firm.  *See* Kabat Aff., at ¶ 8.  The Second Circuit held that it was proper to impose an across-the-board reduction for block billing, since "the obfuscation inherent in block billing frequently renders it impossible to determine the reasonableness of specific charges aggregated within the block billing."  *Green v. City of N.Y.*, 403 Fed. Appx. 626, 630 (2d Cir. 2010); *accord Romeo*, 2013 WL 3322249, at *7 (imposing 75 percent reduction; "Ms. Jaffe's block-billing has made it difficult to separate tasks that are compensable from those that are not, or tasks that should have been billed at lower rates from those compensable at ordinary rates.").

(5)     Having a partner do a paralegal's work is not compensable.  Magistrate Judge Dollinger held that it was "indefensible" to compensate attorneys for "performing work that can

be done by a clerical person or at most a paralegal." *Tucker v. City of New York*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010). Judge Holwell held that plaintiffs "should not be compensated for the time that Ms. Duguay spent executing purely clerical tasks, like downloading documents, speaking with copy vendors, filing, and faxing documents." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009). For example, Plaintiffs seek to have a partner reimbursed at $800 for 1.0 hours to download exhibits to a court filing. *See* Kabat Aff., at ¶ 6 (listing these and other clerical tasks, such as "Order Transcript").

(6)     Time reviewing documents is not compensable, since the movant "would have had to review the discovery even if it had not filed its motion; therefore, those fees were not 'incurred in making the motion.'" *Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, No. 11 Civ. 1237 (LGS)(JCF), 2013 WL 3871394, at *2 (S.D.N.Y. July 26, 2013) (quoting Rule 37(a)(5)(A)). Yet, Plaintiffs seek to be reimbursed for time reviewing documents, as indicated by numerous entries in their spreadsheets. *See* Nos. 2831-2, 2831-3, 2831-4, 2831-5, *passim*.

(7)     Many entries are vague or so generic as to be useless for evaluating a fee petition, and must be struck entirely. *See* Kabat Aff., at ¶ 5 (*e.g.*, "AHIF issues" or "Al Haramain, etc.").

(8)     Other entries by a single attorney in a single day reflect an inexplicable practice of recording the exact same time for multiple tasks in one day. For example, one Motley Rice attorney, on October 16, 2011, listed 1.0 hours for each of five discrete tasks. That same attorney, on later days, listed three entries, each 1.0 hours, on November 19, 2012; four entries, each 1.0 hours, on February 7, 2013; and similar identical time allocations on yet other days. *See* Kabat Aff., at ¶ 9. That the exact "same time" was listed on the same day by the same attorney for multiple discrete tasks casts doubt on the contemporaneous nature of the time records – it is improbable that discrete tasks on a single day would each take the exact same time.

18

Plaintiffs' failure to exercise any discretion in preparing their fee petition, and their insistence on seeking every hour allegedly expended (in the absence of contemporaneous time records), more than justifies striking or drastically reducing their fee petition.

### 6. Plaintiffs improperly billed for work or time incurred as to other, unrelated defendants, or double-billed the same time to multiple defendants.

This Court should strike, or drastically reduce, Plaintiffs' fee petition, for improperly double-billing time for work done as to other defendants, or billing the same time twice to multiple defendants. Specifically, at status conferences that addressed both Al Haramain (USA) discovery issues, and other, unrelated discovery issues, Plaintiffs should only bill for the one attorney who argued the Al Haramain (USA) discovery issues, *and* only for that portion of the hearing devoted to Al Haramain (USA). Yet, Plaintiffs routinely billed an entire discovery conference to Al Haramain (USA) alone. *Id.* at ¶¶ 2-4. Even for the two conferences that also addressed Mr. Jelaidan's discovery, Plaintiffs improperly divided the entire conference between the two defendants, without acknowledging that those conferences also addressed other general discovery issues, which constitutes impermissible double-billing. *Id.* at ¶ 4.

Plaintiffs grossly overstated the amount of time allocated to Al Haramain (USA) at each hearing. The February 8, 2010 hearing had only 32 transcript pages for Al Haramain (USA), yet the Motley Rice firm billed 2.0 hours and the Cozen O'Connor firm billed 2.10 hours for that hearing; even the 1.0 hour billed by two attorneys from Kreindler & Kreindler exceeds the amount of time to cover 32 pages. The October 28, 2010 hearing had only 2.5 pages devoted to Al Haramain (USA) – and no attorney for either side argued as to that defendant – yet three attorneys each billed 2.0 hours for that hearing – which lasted less than a half hour, as the transcript was under 18 pages. The December 28, 2010 hearing was similarly short (only 24 pages of substantive text), with only 6 pages devoted to Al Haramain (USA), yet three attorneys

each billed 1.0 hours for that hearing, and a fourth attorney billed 0.50 hours.  The November 16, 2011 hearing had only 1.5 pages devoted to Al Haramain (USA), yet two attorneys from the Kreindler & Kreindler firm each billed 1.0 hours.  The March 19, 2013 hearing had only 16.5 pages devoted to Al Haramain (USA), yet five attorneys each billed 1.0 hours for that hearing.

The district courts have rejected entire fee petitions when the movant attempted to bill twice or overbill for the same work, as plaintiffs have done here.  Judge Patterson concluded that:  "Counsel's double-billing … [is] sub-standard and unprofessional.  Accordingly, the Court strikes RTC's request for attorneys' fees."  *Resolution Trust Corp. v. 12A Associates*, 782 F. Supp. 270, 272, 272 (S.D.N.Y. 1992).  Magistrate Judge Ellis recently reduced a fee petition by 30 percent for "duplicative billing errors," among other reasons.  *Cathay Bank v. Ho Seo*, No. 06 Civ. 15445 (LTS)(RLE), 2009 WL 5341672, at *6 (S.D.N.Y. Dec. 16, 2009).

Therefore, this Court should strike, or at a minimum, drastically reduce, Plaintiffs' fee petition, for their excessive overbilling through billing Al Haramain (USA) for time devoted to other discovery issues, through not properly calculating travel time, and through seeking fees for the exact same time from both Al Haramain (USA) and Mr. Jelaidan.

### 7.  Plaintiffs improperly sought excessive or non-compensable expenses.

The bulk of plaintiffs' expenses are non-compensable.  Plaintiffs are seeking $6,029.21 in expenses, but about 80 percent, or $4,790.47, are travel and meal expenses relating to the status conferences.  *See* Kabat Aff., at ¶ 10.  As a threshold matter, these expenses are not compensable.  *Ryan*, 882 F. Supp. 2d at 638 ("The Court … denies travel-related expenses. . . . counsel's travel expenses are a result of plaintiffs' choice to litigate these cases in the Southern District of New York while being represented by a firm based in Ambler, Pennsylvania");  *Carrero*, 685 F. Supp. at 909 ("Expenses for transportation, telephone, meals, and word

processing will be disallowed. . . . meals are not something the defendants should have to pay for.  Thus, incurring this expense in no way contributes to the proceeding.").

The remaining expenses are primarily for transcripts of the court hearings, which appear to have been ordered at expedited rates, which is not allowable.  *Natural Organics, Inc. v. Nutraceutical Corp.*, No. 01 Civ. 0384 (GBD)(RE), 2009 WL 2424188, at *3-4 (S.D.N.Y. Aug. 6, 2009); *Sylvester v. City of New York*, No. 03 Civ. 8760 (FM), 2006 WL 3230152, at *16 (S.D.N.Y. Nov. 8, 2006).  Moreover, no attempt was made to allocate the transcript costs according to the actual percentage of pages devoted to Al Haramain (USA).

## V.     <u>CONCLUSION.</u>

For the foregoing reasons, this Court should strike or substantially reduce the Fee Petition, due to the pervasive overbilling, overstaffing, double-billing, inadequate records, demanding excessive hourly rates, and seeking non-compensable expenses.  Further, the Fee Petition fails to account for the limited success on the motion to compel – Plaintiffs prevailed on only one of three discovery issues, and did not obtain either sanction that they sought (since this Court did not award either a default judgment or an adverse inference), yet Plaintiffs failed to reduce their time or expenses to reflect their limited success.

Respectfully submitted,

*/s/ Lynne Bernabei*

_____

Lynne Bernabei (LB2489)
Alan R. Kabat (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942
*Attorneys for Al Haramain Islamic Foundation, Inc. (USA)*

DATED:  February 14, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2014, I caused the foregoing Opposition to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat

_____

Alan R. Kabat