**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001     ) No. 03 MDL 1570 (GBD/FM)
                                                  )        ECF Case
_____)

### Declaration of Alan R. Kabat in Support of
### Defendant Al Haramain Islamic Foundation, Inc. (USA)'s
### Opposition to Plaintiffs' Fee Petition

I am an attorney licensed to practice in the District of Columbia and am admitted *pro hac vice* in this matter. I am with the law firm of Bernabei & Wachtel, PLLC, counsel to defendant Al Haramain Islamic Foundation, Inc. (USA). I submit this declaration in support of Defendant's Opposition to Plaintiffs' Fee Petition, in order to provide the Court with the exhibit referenced in the Opposition and the analysis of the Plaintiffs' Fee Petition.

1.      Exhibit 1 is a copy of excerpts from the Motley Rice Fee Petition, *In re Air Crash at Lexington, Ky.*, No. 5:06-cv-00316 (ECF No. 3859, 3861) (E.D. Ky. Mar. 15, 2011).

2.      This Court convened five discovery conferences at which matters relating to Al Haramain (USA), among other issues, were addressed. For each conference, I have determined the allocation of time to Al Haramain (USA), and the fees/expenses sought by the four law firms:

(A)      The transcript for the February 8, 2010 status conference comprises 53.5 pages, of which the first three pages are the caption and attorney listing, leaving 50.5 pages of substantive text. Pages 22 (bottom) to 53 (top) (32 pages) are devoted to Al Haramain (USA), or about 63 percent of the total, with the remaining 18.5 pages for general matters or other defendants. Only one of plaintiffs' attorneys (Mr. Haefele) argued with respect to Al Haramain (USA), and he participated by telephone. However, two attorneys from Cozen O'Connor billed for preparing for and attending this hearing,

along with their travel time; as did two attorneys from Kreindler & Kreindler, for a total of $17,610 for 25.2 hours and an additional $474 in travel expenses. *See* ECF No. 2831-3, at 2; No. 2831-4, at 2 (entries for Feb. 8, 2010). Neither the time nor the expenses were reduced by one-third to reflect that the rest of the status conference covered other matters; nor did plaintiffs zero out the time and expenses for the attorneys who did not argue as to Al Haramain (USA).

(B)     The transcript for the October 28, 2010 status conference comprises 18 pages, of which the first two pages are the caption and attorney listing, leaving 16 pages of substantive text. Pages 16 (bottom) to 18 (2.5 pages) are devoted to Al Haramain (USA), or about 16 percent of the total, leaving the remaining 13.5 pages to general matters. However, as the Al Haramain (USA) section was devoted entirely to this Court's reading its discovery ruling, no attorney for Plaintiff argued with respect to Al Haramain (USA). Nonetheless, the Motley Rice firm billed $8,625.00 for 11.5 hours and an additional $1,759.85 in travel expenses; five attorneys from the other three firms billed $20,975.00 for 29.65 hours and an additional $1,016.15 in travel expenses. *See* ECF No. 2831-2, at 9-10; No. 2831-4, at 3; No. 2831-5, at 2 (entries for Oct. 28, 2010). Neither the time nor the expenses were reduced by 84 percent to reflect that the rest of the status conference covered other matters; nor did plaintiffs zero out the time and expenses for the attorneys who did not argue as to Al Haramain (USA).

(C)     The transcript for the telephonic status conference on December 2, 2010 comprises 28 pages, of which the first four pages are the caption and attorney listing, leaving 24 pages of substantive text. Pages 16 to 21 (6 pages) are devoted to Al Haramain (USA), or 25 percent of the total, leaving the remaining 18 pages to other

discovery matters.  Only one of plaintiffs' attorneys (Mr. Haefele) argued with respect to Al Haramain (USA), and he sought $2,625.00 for 3.5 hours.  *See* ECF No. 2831-2, at 8. Four attorneys from the other three firms billed $9,575.00 for 13.1 hours.  *See* No. 2831-3, at 3-4; No. 2831-4, at 1, No. 2831-5, at 2 (entries for Dec. 2, 2010).  Neither the time nor the expenses were reduced by three-fourths to reflect that the rest of the status conference covered other matters; nor did plaintiffs zero out the time and expenses for the attorneys who did not argue as to Al Haramain (USA).

(D)    The transcript for the November 16, 2011 status conference comprises 55 pages, of which the first two pages are the caption and attorney listing, leaving 53 pages of substantive text.  Pages 3 to 4 (top half) (1.5 pages) are devoted to Al Haramain (USA), or 1.5 percent of the total, leaving the remaining 51.5 pages to other issues, including Mr. Jelaidan.  No attorney for plaintiff argued with respect to Al Haramain (USA).  Nonetheless, two attorneys from the Kreindler & Kreindler firm billed $1,550 for 2.0 hours for the "portion" relating to Al Haramain (USA), *i.e.* one hour per attorney for only 1.5 pages of the transcript.  *See* No. 2831-5, at 2 (entries for Nov. 16, 2011).

(E)    The transcript for the March 19, 2013 status conference comprises 56 pages, of which the first three pages are the caption and attorney listing, leaving 53 pages of substantive text.  Pages 4 (bottom) to 20 (16.5 pages) are devoted to Al Haramain (USA), or about 31 percent of the total, leaving the remaining 36.5 pages to other issues, including Mr. Jelaidan.  Only one of plaintiffs' attorneys (Mr. Haefele) argued with respect to Al Haramain (USA), and he billed $7,500.00 for 10 hours and an additional $972.97 in expenses.  *See* No. 2831-2, at 1-2.  Five other attorneys, including an associate from Motley Rice and four attorneys from the other three law firms, billed $11,800.00 for

20 hours, with an additional $567.50 in expenses.  *See* No. 2831-2, at 1-2, No. 2831-3, at 5, No. 2831-4, at 1, No. 2831-5, at 5 (entries for Mar. 19, 2013).  Neither the time nor the expenses were reduced by two-thirds to reflect that the rest of the status conference covered other matters; nor did plaintiffs zero out the time and expenses for the attorneys who did not argue as to Al Haramain (USA).

3.      Thus, at the five status conferences, the attorney arguing as to Al Haramain (USA) billed $18,750.00 for 25 hours, with $2,732.82 in travel expenses.  Attorneys other than the attorney arguing billed $61,510.00 for 89.95 hours, with $2,057.65 in travel expenses.  The travel expense relating to the status conferences total $4,790.47, which is about 80 percent of the total expenses sought in Plaintiffs' fee petition.

4.      The status conferences on November 16, 2011 and March 19, 2013 also included time for the discovery issues as to Wael Jelaidan – 29.5 percent and 33.5 percent of the respective transcripts.  Although plaintiffs' spreadsheets stated that they allocated the time between Al Haramain (USA) and Mr. Jelaidan, *see* ¶ 2(B), (C), *supra*, they did so on a 50/50 basis, even though the time actually incurred for Al Haramain (USA) at those two conferences was much less, *i.e.*, 3 percent and 16.5 percent.  Also, the travel time was not reduced by one-half prior to allocating the travel time among the defendants.  *Id.*

5.       A representative sample of vague or generic time entries includes these on the Anderson Kill spreadsheet:  "AHIF issues" (0.50 hours on Sept. 10, 2010); "Work on Al Haramain" (1.20 hours on Dec. 24, 2010); "Al Haramain, etc. Discovery" (0.80 hours on Dec. 25, 2010); "Al Haramain, etc." (0.40 hours on Dec. 26, 2010); "Docket item Al Haramain and IIRO" (0.75 hours on Feb. 8, 2013); "AH issues" (0.30 hours on Apr. 1, 2013); "Al Haramain documents" (2.10 hours on Apr. 2, 2013).  *See* No. 2831-5, *passim*.

6.      A representative sample of entries for clerical or paralegal work performed by partners for whom high compensation is sought includes these on the Anderson Kill spreadsheet: "Order transcript" (Oct. 28, 2010); "file organization" (Nov. 13, 2010); "Download the 78 attachments on Al Haramain; conference with paralegal" (1.0 hour on Nov. 30, 2010); "Order transcript" (Mar. 19, 2013); "arrange to have [documents] loaded on system … file organization" (Apr. 30, 2013).  *See* No. 2831-5, *passim*.

7.      A representative sample of entries for excessive internal conferences within the Plaintiffs' Executive Committee (PEC) includes the following:  (A) in connection with this Court's February 8, 2010 status conference, two attorneys from Cozen O'Connor billed 3.0 hours each for PEC conferences, yet Motley Rice billed zero time for any PEC conferences on that day, indicating that there were no such conferences; (B) in connection with this Court's October 28, 2010 status conference, one attorney from Motley Rice firm billed 1.5 hours for PEC conferences, while two attorneys from Cozen O'Connor each billed 4.5 hours for the same PEC conferences for a total of 10.5 hours on a single day (the inconsistency between 1.5 hours and 4.5 hours confirms the overbilling); (C) in connection with this Court's December 2, 2010 status conference, one Motley Rice attorney and two Cozen O'Connor attorneys each billed 1.5 hours for PEC conferences for a total of 4.5 hours on a single day; (D) in connection with this Court's March 19, 2013 status conference, two attorneys from Motley Rice and two attorneys  from Cozen O'Connor each billed 2.0 hours for PEC conferences as to Al Haramain, with an additional 2.0 hours each for PEC conferences on the same day as to Mr. Jelaidan, for a total of 16.0 hours on a single day.  The actual time for PEC conferences is even higher, but cannot be determined, since the attorney from Anderson Kill routinely block-billed his time entries for those days. *See* ¶ 8, *infra*.

8.      A representative sample of block-billing time entries includes these on the Anderson Kill spreadsheet:  ""Travel to NY with Cozen team; Conference with plaintiffs attorneys at courthouse re: hearing; Conference with Maas; Lunch with P attorneys – discuss case; Send a letter via email to RH; Travel to office; Conference with Flynn re: transcript; … Travel back" (5.25 hours on Feb. 8, 2010); "Prep; Travel to court house; PEC meeting; Hearing; PEC Meeting; travel uptown to office; Order transcript; Fawcett re: SBG;[1] return to PHL" [Philadelphia] (4.25 hours on Oct. 28, 2010); "Prep for SDNY; call with Sean Carter; obtain materials for Sean Carter; Travel to SDNY; Meet with PEC; Hearing with Court; Travel back to office; Order transcript" (2.0 hours on Mar. 19, 2013), along with the entries for Nov. 30, 2010, Dec. 1, 2010, Dec. 2, 2010, among others.  *See* No. 2831-5, *passim*.

9.      An associate at Motley Rice routinely billed the exact same amount of time to a wide range of multiple discrete tasks on a single day.  *See* No. 2831-2, entries for Oct. 16, 2011 (five entries, each 1.0 hours); Nov. 19, 2012 (three entries, each 1.0 hours); Nov. 19, 2012 (four entries, each 0.50 hours); Nov. 20, 2012 (five entries, each 0.50 hours); Dec. 14, 2012 (six entries, each 0.50 hours); Dec. 17, 2012 (six entries, each 0.25 hours); Feb. 7, 2013 (four entries, each 1.0 hours); Feb. 7, 2013 (four entries, each 0.25 hours).

10.     The plaintiffs seek $474.00 in travel-related expenses for the February 8, 2010 conference; $2,776.00 in travel-related expenses for the October 28, 2010 conference, and $1,540.47 in travel-related expenses for the March 19, 2013 conference.  *See* Nos. 2831-2, 2831-3, 2831-5, *passim*.  The Motley Rice firm also charged for meals while traveling.  *See* No. 2831-2, at 18 ($73.86 for dinner for one person on Oct. 28, 2010); *id.* at 23 ($14.75 for breakfast and lunch on Mar. 19, 2013); $17.19 for dinner on Mar. 20, 2013); *id.* at 29 ($90.26 for "lunch liquor" on Mar. 18, 2013), *id.* at 29 ($50.53 for breakfast on Mar. 19, 2013).

---

[1] The reference to "SBG" appears to be the Saudi Binladin Group, an entirely unrelated defendant.

11.     The Plaintiffs' fee petition, before the lodestar enhancement, seeks $411,665.00 in fees for Al Haramain (USA) discovery motions. *See* Mem., at 17 (No. 2830). However, the Plaintiffs' Declaration states that the total fees sought for these motions is $417,694.21. *See* Haefele Dec., at ¶ 17 (No. 2831). The higher number is in error, since plaintiffs double-counted the expenses in the Declaration.

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on February 14, 2014.

*Alan R. Kabat*

—————————————————
ALAN R. KABAT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION at LEXINGTON**

*ELECTRONICALLY FILED*

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316-KSF**

**IN RE:  AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006**

| | |
|---|---|
| JAMIE HEBERT, Administratrix of the Estate of Bryan Woodward;<br>LAUREN MADISON HEBERT;<br>DAVID ROYSE, Conservator for Mattie-Kay Hebert; and<br>MATTIE-KAY HEBERT | PLAINTIFFS |

v.

| | |
|---|---|
| COMAIR, INC. and<br>UNITED STATES OF AMERICA | DEFENDANTS |

and

| | |
|---|---|
| COMAIR, INC. | THIRD PARTY PLAINTIFF |

v.

| | |
|---|---|
| UNITED STATES OF AMERICA | THIRD PARTY DEFENDANT |

and

| | |
|---|---|
| TWIN CITY FIRE INSURANCE, CO., INC. | INTERVENING PLAINTIFF |

v.

| | |
|---|---|
| COMAIR, INC. and DELTA AIR LINES, INC. | DEFENDANTS |

**PREVIOUS COUNSEL MOTLEY RICE LLC AND WILSON, POLITES & McQUEEN'S STATEMENT OF SERVICES PROVIDED AND ATTORNEY EMPLOYMENT CONTRACT AS REQUESTED BY THE COURT**

NOW COMES Mary Schiavo on behalf of Motley Rice LLC and Albert McQueen of Wilson, Polites and McQueen, previous counsel for Jamie Hebert, individually and as the Court-appointed Administratrix of the Estate of Bryan Woodward and as the Natural Mother, Next Friend and Court-appointed Tutrix (Guardian) of the

Exhibit 1

minor children of Jamie Hebert and Bryan Woodward, that being Lauren Madison Hebert and Mattie-Kay Hebert, for the purpose of presenting the Court with a request for payment of fees pursuant to the Court's Order requiring the filing of Statements of Services Provided, Recoverable Expenses and any Attorney Employment Contracts to be filed with the Court on or before March 15, 2011. As instructed by the Court in its Order of March 14, 2011, a copy of this statement and all un-redacted attachments is being served on all other counsel for Plaintiffs.

On March 7, 2007, Attorney Mary Schiavo was first contacted by Jamie Hebert. Ms. Hebert had, or was in the process of discharging her previous counsel, Mr. Carl Duhon, of the Duhon Law Firm (as well as his co-counsel, Thomas Miller and Michael Cox and David Wise). The undersigned counsel on order of the client was forbidden to speak to Counsel Duhon. Instead Counsel Duhon forwarded the client's files to Ms. Hebert. After Ms. Hebert retained Motley Rice LLC (see the following paragraph) she then forwarded files from Counsel Duhon to Motley Rice LLC. Motley Rice immediately commenced work upon confirmation that Ms. Hebert was no longer represented by counsel. Please see Exhibit 1 for a redacted index of Counsel Duhon's files.

Ms. Hebert was provided a finalized attorney contract on June 19, 2007. The contract was similar to many other aviation passenger casualty contingency contracts, except Ms. Hebert negotiated the contract and insisted on a reduction of the contingency fee to a 15% contingency fee contract. The undersigned counsel agreed and the contract was executed on July 16, 2007, a redacted copy of which is attached at Exhibit 2. Pursuant to the contingency fee contract, the law firm of Motley Rice LLC is entitled to 15% of any recovery whether by settlement, verdict or other resolution.

Exhibit 1

Because the undersigned counsel was working on a contingency fee contract, we did not keep time sheets, but we did keep very detailed records of work and action on the case, including on what dates the work and action occurred. The dates and activity are memorialized in the Statement of Services, of which a redacted version is attached as Exhibit 3. As stated above, the un-redacted Statement of Services showing the activities of the attorneys will be submitted to this Honorable Court as well as to Mr. Carl Duhon and Mr. Sam Burnett, for the Duhon Law Firm and to Mr. David Rapoport, successor attorney to Motley Rice LLC. Motley Rice LLC requests permission to file under seal the full un-redacted contract and statement of work because it reflects activities of counsel on behalf of the case and activities and statements of the client which may be protected by the attorney client privilege.

Motley Rice LLC previously filed on July 8, 2008, a Notice of Attorney's Lien in this case, and re-advised counsel in this matter of the lien in writing on August 5, 2008, and December 11, 2009. Please see attached exhibits 4, 5 and 6.

Motley Rice LLC's work included all litigation aspects of the case from commencement of the case up to the eve of trial.[1] We filed Federal Tort Claims Act (FTCA) notices with the federal government. We drafted and filed two complaints and one amended complaint, handled several sets of interrogatories and requests for production, both to and from defendants and took the case through all pretrial discovery. We actively participated in the Plaintiffs' Steering Committee and the work thereof. We located, vetted and selected expert witnesses for this case in addition to those experts selected by the Plaintiffs' Steering Committee. It is Motley Rice LLC which made the

---

[1] Motley Rice LLC also worked to obtain for the clients any Social Security and Worker's Compensation benefits to which they were entitled by virtue of Mr. Woodward's death, and did obtain them for their daughters.

Exhibit 1

decision to obtain a pre-impact expert, and we secured the same. That decision and our selected expert played a very important role at trial. We prepared for trial and filed witness and exhibit lists.

However, we had additional issues which most counsel do not have to address, and should not have to address. Those issues concerned the marital status of plaintiff, the guardianship of the children of decedent and plaintiff, and the authenticity of documents which purportedly related thereto. Successor counsel has already made public, as have subsequent court proceedings and orders herein that the issue which arose between plaintiff and Motley Rice LLC was plaintiff's alleged marital status.

Motley Rice undertook a tremendous amount of legal work and investigation to ascertain the factual basis for plaintiff's claim of marriage. That work was necessary for many reasons, but three were most important. First, we could not allow plaintiff to present testimony about a marriage or present documents purporting to attest to a marriage or purporting to be signed by the decedent if those statements and documents were not supported by facts. We took very seriously our obligation to plaintiff to protect her from the serious consequences of certain courses of action. Second, the two minor children needed to have a guardian other than Ms. Hebert to protect their interest in the lawsuit and they needed separate counsel because of the obvious conflict presented by the issue of marriage. Third, as we were rapidly approaching trial, the Court needed to be advised the claim of marriage needed to be withdrawn from the case.

As this Honorable Court knows, because successor counsel made it public, we concluded Ms. Hebert and the decedent were not married and when our counsel and advice were not followed, we moved to withdraw from the case as we are required to do

Exhibit 1

by ethical and legal requirements. That does not change the fact that substantial attorney and paralegal time was expended which work was in addition to that reflected on the case communications and pleadings indices. We undertook that tremendous amount of additional work investigating the claim of marriage to protect the client and her two minor children from the unfortunate consequences which would result from advancing a claim without factual evidence.

When the client would not cooperate or communicate about the issue, Motley Rice was forced to re-review all documents and files, and to find and scrutinize all evidence. We examined check registries for evidence of the claim, combed through pictures looking for evidence of wedding rings, searched the internet for any mention of the marriage, spoke with Parrish clerks in all possible areas in search of license applications, license copies checked out but not returned, lists possible officiants, or anything at all to document the claim. Finally we resorted to an expert, a former FBI handwriting analyst to authenticate the decedent's alleged signature on an REDACTED REDACTED                                        The former FBI expert opined  REDACTED REDACTED                At that point we provided, and more than once, all required legal advisements and admonishments to the client. When that advice and those admonishments were refused, Motley Rice LLC and Wilson, Polites and McQueen moved this Honorable Court for leave to withdraw as counsel, just as we were ethically and legally required to do. Our withdrawal does not change the fact that we worked over two thousand hours on this case, hundreds of which were because of a claim of marriage for which no facts could be found and which we refused to advance.

Exhibit 1

In addition to the above investigative work, we also worked to obtain for Ms. Hebert and her daughters any Social Security and Workers' Compensation benefits to which they were lawfully entitled. We did obtain those benefits. These services and work were in addition to our services from filing, through discovery, and to the eve of trial in this case.

From March 2008 until this Honorable Court permitted us to withdraw as counsel, the undersigned counsel and assigned paralegal worked almost exclusively on this matter in research, witness retention and preparation, trial preparation and strategy, investigation of the claims of marriage and reviewing 345,000+ pages of production in this case. Because we worked on a contingency contract, we did not record research, preparation and investigation hours, but we estimate that to be approximately 500 member attorney hours and 550 paralegal hours in addition to that reflected in our Statement of Services, attached at Exhibit 3.

Other U.S. District Courts have approved the following 2008 rates for partners (members), associates and paralegals at Motley Rice LLC:

Member: Mary Schiavo: $650.00/hr.

Partner: Albert B. McQueen, Jr.: $650.00/hr. [not at Motley Rice but at a seniority level comparable to Mary Schiavo]

Associates: Marlon Kimpson, Don McCune, Sam Cothran: $450.00/hr.

Paralegals: Dotty Strobel, LeAnn Lester: $150.00/hr.

One Motley Rice LLC member, three Motley Rice LLC associates, two Motley Rice LLC paralegals and Albert B. McQueen, Jr., Kentucky co-counsel and partner with Wilson, Polites & McQueen, worked on this matter. As set forth in detail on the attached

Exhibit 1

case chronologies of work (Exhibits 3, 7 and 8), the firms Motley Rice LLC and Wilson, Polites and McQueen expended 2657.69 hours, totaling $1,158,269.00 on this case. We realize the Motley Rice rates are substantially higher than Mr. Duhon's. In our experience, Mr. Duhon's rates are lower than the reasonable and customary recognized rates. But, we also realize that the amount of fees are limited by the size of the verdict and the number of counsel who have worked on this case and we accept that this Honorable Court will of necessity adjust the rates.

However, by the terms of our contract in which the Plaintiff negotiated the rate, we are entitled to 15% of the recovery whether by trial and verdict or settlement. Even though another firm took the case to trial, Motley Rice LLC had already received an opening settlement offer of   REDACTED   from defendants. At a contingency fee rate of 15%, we are entitled to a fee of   REDACTED   based on the opening offer in the case at the time we withdrew. With an opening offer of   REDACTED   it is obvious a settlement at a much higher amount was possible. Under the contingency contract the verdict of $7,100,000.00 would result in a $1,065,000.00 fee. Based on the contract  negotiated by the client, Motley Rice LLC requests a fee award in this case of $532,500.00 to $1,065,000.00 based on the contingency contract or $1,158,269.00 based on *quantum meruit*.

WHEREFORE, Mary Schiavo and Motley Rice LLC and Albert B. McQueen, Jr. and Wilson, Polites and McQueen respectfully request that this Court recognize the previously filed liens which shall attach to any monies or proceeds received by the Plaintiffs', whether by settlement, trial or otherwise and herby render judgment in favor of Motley Rice LLC and Wilson Polites and McQueen in a minimum amount of

Exhibit 1

$532,500.00 or a maximum amount of $1,158,269.00 or in the alternative that amount which the Court determines to be appropriate under the circumstances in this case for services provided to be paid out of any damages awarded the Plaintiffs or out of any monies or proceeds received by the Plaintiffs, whether by settlement, trial or otherwise.

Respectfully submitted,


/s/ Mary F. Schiavo
Mary F. Schiavo
E-mail: mschiavo@motleyrice.com

Marlon Kimpson
E-mail: mkimpson@motleyrice.com                    And

MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9440

Albert B. McQueen, Jr.
Email: abmcqueen@wspmlaw.com
Wilson, Polites & McQueen
444 East Main Street, Suite 201
Lexington, KY 40517
Telephone: 859.253.2373
Facsimile: 859.253.2360


## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants recorded therein. I further certify that an un-redacted copy of PREVIOUS COUNSEL MOTLEY RICE LLC AND WILSON, POLITES & McQUEEN'S STATEMENT OF SERVICES PROVIDED AND ATTORNEY EMPLOYMENT CONTRACT AS REQUESTED BY THE COURT, and Un-redacted exhibits were served electronically (via email) on all current and prior Plaintiffs' counsel on March 15, 2011, pursuant the Court's Opinion and Order: Docket No. 8356 in Master File, 5:-06-CV-316-KSF and in the Hebert Matter 5-07-CV-320-KSF.


/s/ Mary F. Schiavo
Mary F. Schiavo

Exhibit 1

Case: 5:06-cv-00316-KSF-REW   Doc #: 3859   Filed: 03/15/11   Page: 9 of 9 - Page ID#: 39676

Attorney

Exhibit 1

CONFIDENTIAL - ATTORNEY WORK PRODUCT

## JAMIE HEBERT EMAIL COMMUNICATIONS

| FROM | SUBJECT | DATE | TIME | WORD COUNT | BILLED |
|------|---------|------|------|-----------|--------|
| Jamie Hebert | | 3/7/2007 | 12:36 PM | 682 | 0.75 |
| Jamie Hebert | | 3/27/2007 | 5:29 PM | 115 | 0.25 |
| Jamie Hebert | | 3/28/2007 | 12:15 PM | 103 | 0.25 |
| Jamie Hebert | | 4/20/2007 | 4:50 PM | 1,755 | 1.75 |
| Jamie Hebert | | 5/20/2007 | 6:46 PM | 2,519 | 2.5 |
| Jamie Hebert | | 6/1/2007 | 9:23 PM | 1,130 | 1.25 |
| Jamie Hebert | | 6/14/2007 | 11:52 PM | 742 | 0.75 |
| Jamie Hebert | | 6/19/2007 | 12:11 AM | 453 | 0.5 |
| Jamie Hebert | | 6/21/2007 | 1:49 AM | 1,494 | 1.5 |
| Jamie Hebert | | 6/21/2007 | 5:07 PM | 1,285 | 1.25 |
| Jamie Hebert | | 6/21/2007 | 5:26 PM | 129 | 0.25 |
| Jamie Hebert | | 6/23/2007 | 4:25 PM | 169 | 0.25 |
| Jamie Hebert | | 6/23/2007 | 5:32 PM | 868 | 0.75 |
| Jamie Hebert | | 6/24/2007 | 7:35 PM | 213 | 0.25 |
| Jamie Hebert | | 6/24/2007 | 8:10 PM | 714 | 0.75 |
| Jamie Hebert | | 7/6/2007 | 8:57 PM | 13,366 | 6.5 |
| Jamie Hebert | | 7/13/2007 | 5:10 PM | 228 | 0.25 |
| Jamie Hebert | | 7/16/2007 | 12:14 PM | 142 | 0.25 |
| Jamie Hebert | | 7/16/2007 | 12:28 PM | 80 | 0.25 |
| Jamie Hebert | | 7/17/2007 | 3:37 PM | 315 | 0.5 |
| Jamie Hebert | | 8/5/2007 | 12:08 AM | 957 | 0.75 |
| Jamie Hebert | | 8/12/2007 | 1:04 AM | 542 | 0.5 |
| Jamie Hebert | | 8/12/2007 | 1:11 AM | 151 | 0.25 |
| Jamie Hebert | | 8/21/2007 | 11:09 AM | 488 | 0.5 |
| Jamie Hebert | | 8/22/2007 | 12:10 AM | 190 | 0.25 |
| Jamie Hebert | | 8/24/2007 | 4:39 PM | 777 | 0.75 |
| Jamie Hebert | | 8/25/2007 | 2:48 AM | 1,217 | 1.25 |
| Jamie Hebert | | 8/25/2007 | 3:19 AM | 35 | 0.25 |
| Jamie Hebert | | 9/13/2007 | 3:43 PM | 723 | 0.75 |
| Jamie Hebert | | 9/14/2007 | 1:56 PM | 704 | 0.75 |
| Jamie Hebert | | 10/4/2007 | 12:12 AM | 1,717 | 1.75 |
| Jamie Hebert | | 10/4/2007 | 10:12 PM | 530 | 0.5 |
| Jamie Hebert | | 10/4/2007 | 12:15 AM | 15 | 0.25 |
| Jamie Hebert | | 10/5/2007 | 12:20 PM | 60 | 0.25 |

Exhibit 1

CONFIDENTIAL - ATTORNEY WORK PRODUCT

| Jamie Hebert | 10/5/2007 | 12:35 PM | 224 | 0.25 |
| Jamie Hebert | 10/5/2007 | 10:33 PM | 68 | 0.25 |
| Jamie Hebert | 10/9/2007 | 11:14 PM | 1,489 | 1.5 |
| Jamie Hebert | 10/13/2007 | 12:58 AM | 1,814 | 1.5 |
| Jamie Hebert | 10/13/2007 | 1:41 PM | 293 | 0.25 |
| Jamie Hebert | 10/13/2007 | 1:48 PM | 29 | 0.25 |
| Jamie Hebert | 10/16/2007 | 8:58 PM | 154 | 0.25 |
| Jamie Hebert | 10/23/2007 | 7:54 PM | 977 | 0.75 |
| Jamie Hebert | 10/23/2007 | 8:25 PM | 72 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:26 PM | 30 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:27 PM | 0 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:28 PM | 0 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:29 PM | 54 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:31 PM | 8 | 0.25 |
| Jamie Hebert | 10/23/2007 | 8:41 PM | 86 | 0.25 |
| Jamie Hebert | 10/27/2007 | 10:53 AM | 275 | 0.5 |
| Jamie Hebert | 10/27/2007 | 10:33 AM | 8 | 0.25 |
| Jamie Hebert | 10/27/2007 | 9:26 PM | 405 | 0.5 |
| Jamie Hebert | 10/28/2007 | 7:15 PM | 5,957 | 3.5 |
| Jamie Hebert | 10/29/2007 | 4:14 PM | 422 | 0.5 |
| Jamie Hebert | 10/30/2007 | 6:44 PM | 8,082 | 4.75 |
| Jamie Hebert | 10/31/2007 | 1:42 AM | 904 | 0.75 |
| Jamie Hebert | 11/6/2007 | 1:09 AM | 1,507 | 1.5 |
| Jamie Hebert | 11/7/2007 | 12:46 AM | 908 | 0.75 |
| Jamie Hebert | 11/7/2007 | 3:10 PM | 346 | 0.5 |
| Jamie Hebert | 11/7/2007 | 4:11 PM | 168 | 0.25 |
| Jamie Hebert | 11/8/2007 | 11:02 PM | 396 | 0.5 |
| Jamie Hebert | 11/15/2007 | 1:51 PM | 167 | 0.25 |
| Jamie Hebert | 11/29/2007 | 1:16 AM | 421 | 0.5 |
| Jamie Hebert | 12/10/2007 | 2:54 PM | 1,131 | 1.25 |
| Jamie Hebert | 12/10/2007 | 4:29 PM | 436 | 0.5 |
| Jamie Hebert | 12/10/2007 | 4:45 PM | 289 | 0.25 |
| Jamie Hebert | 12/10/2007 | 6:29 PM | 869 | 0.75 |
| Jamie Hebert | 12/11/2007 | 6:59 PM | 1,059 | 1 |
| Jamie Hebert | 12/12/2007 | 12:28 AM | 76 | 0.25 |
| Jamie Hebert | 1/18/2008 | 12:19 AM | 516 | 0.5 |
| Jamie Hebert | 1/18/2008 | 12:56 AM | 778 | 0.75 |

Exhibit 1

CONFIDENTIAL ATTORNEY WORK PRODUCT

| | | | | |
|---|---|---|---|---|
| Jamie Hebert | 1/18/2008 | 1:48 AM | 70 | 0.25 |
| Jamie Hebert | 1/18/2008 | 3:10 PM | 9 | 0.25 |
| Jamie Hebert | 3/11/2008 | 3:00 AM | 2,762 | 2.25 |
| Jamie Hebert | 3/15/2008 | 2:35 PM | 1,732 | 1.75 |
| Jamie Hebert | 3/16/2008 | 12:16 AM | 3,428 | 2.25 |
| Jamie Hebert | 5/13/2008 | 10:25 PM | 2 pages | 1.5 |
| Jamie Hebert | 5/15/2008 | 10:26 PM | 141 | 0.25 |
| Jamie Hebert | 5/15/2008 | 10:40 PM | .5 page | 0.25 |
| Jamie Hebert | 5/16/2008 | 12:09 AM | 2.5 pages | 1.5 |
| Jamie Hebert | 5/16/2008 | 10:02 PM | .5 page | 0.25 |
| Jamie Hebert | 5/16/2008 | 10:34 PM | .5 page | 0.25 |
| Jamie Hebert | 5/23/2008 | 4:10 PM | 237 | 0.25 |
| Jamie Hebert | 5/23/2008 | 6:11 PM | 2,237 | 2.25 |
| Jamie Hebert | 6/3/2008 | 4:05 PM | 761 | 0.75 |
| Jamie Hebert | 6/6/2008 | 6:18 PM | 640 | 0.5 |
| Jamie Hebert | 6/10/2008 | 8:00 PM | 330 | 0.25 |
| Jamie Hebert | 6/11/2008 | 6:10 PM | 267 | 0.25 |
| Jamie Hebert | 6/11/2008 | 6:12 PM | 17 | 0.25 |
| Jamie Hebert | 6/11/2008 | 6:15 PM | 477 | 0.5 |
| Jamie Hebert | 6/12/2008 | 12:30 AM | 385 | 0.25 |
| Jamie Hebert | 6/12/2008 | 7:25 PM | 299 | 0.25 |
| Jamie Hebert | 6/13/2008 | 1:53 PM | 140 | 0.25 |
| Jamie Hebert | 6/14/2008 | 2:48 AM | 2,040 | 2 |
| Jamie Hebert | 6/16/2008 | 8:27 PM | 135 | 0.25 |
| Jamie Hebert | 6/17/2008 | 11:39 PM | 1,061 | 1 |
| Jamie Hebert | 7/10/2008 | 1:22 PM | 89 | 0.25 |
| Jamie Hebert | 7/10/2008 | 2:16 PM | 20 | 0.25 |

| | |
|---|---|
| **TOTAL** | **76.75** |
| **Mary Schiavo Total** | **76.75** |
| **Dotty Strobel Total** | **76.75** |

Exhibit 1

CONFIDENTIAL - ATTORNEY WORK PRODUCT

## JAMIE HEBERT EMAIL COMMUNICATIONS

| FROM | SUBJECT | DATE | TIME | WORD COUNT | BILLED |
|------|---------|------|------|-----------|--------|
| Mary Schiavo | | 3/23/2007 | 9:37 AM | 144 | 0.5 |
| LeAnn Lester (Paralegal) | | 3/28/2007 | 8:01 AM | 210 | 0.5 |
| Mary Schiavo | | 3/28/2007 | 2:20 PM | 43 | 0.25 |
| Mary Schiavo | | 4/26/2007 | 7:42 PM | 42 | 0.25 |
| Mary Schiavo | | 4/26/2007 | 7:46 PM | 0 | 0.25 |
| Mary Schiavo | | 5/16/2007 | 1:11 PM | 43 | 0.25 |
| Mary Schiavo | | 5/31/2007 | 6:22 PM | 713 | 1.5 |
| Mary Schiavo | | 6/18/2007 | 9:37 AM | 216 | 0.5 |
| Mary Schiavo | | 6/19/2007 | 2:46 PM | 1,512 | 2.5 |
| Mary Schiavo | | 6/23/2007 | 5:43 PM | 178 | 0.5 |
| Mary Schiavo | | 6/23/2007 | 6:05 PM | 321 | 0.75 |
| Dotty Strobel (Paralegal) | | 7/6/2007 | 1:57 PM | 36 | 0.25 |
| LeAnn Lester (Paralegal) | | 7/16/2007 | 12:04 PM | 94 | 0.25 |
| LeAnn Lester (Paralegal) | | 7/17/2007 | 3:43 PM | 233 | 0.5 |
| LeAnn Lester (Paralegal) | | 7/24/2007 | 10:43 AM | 514 | 1.25 |
| LeAnn Lester (Paralegal) | | 8/9/2007 | 3:53 PM | 128 | 0.5 |
| LeAnn Lester (Paralegal) | | 8/14/2007 | 3:33 PM | 193 | 0.5 |
| LeAnn Lester (Paralegal) | | 8/14/2007 | 4:34 PM | 192 | 0.5 |
| Patti Funderburk (Assist.) | | 8/14/2007 | 4:18 PM | 13 | 0.25 |
| LeAnn Lester (Paralegal) | | 8/21/2007 | 3:33 PM | 248 | 0.75 |
| Dotty Strobel (Paralegal) | | 9/14/2007 | 12:29 PM | 808 | 2 |
| Dotty Strobel (Paralegal) | | 10/3/2007 | 5:04 PM | 228 | 0.5 |
| Dotty Strobel (Paralegal) | | 10/4/2007 | 4:57 PM | 653 | 1.5 |
| Dotty Strobel (Paralegal) | | 10/5/2007 | 12:47 PM | 41 | 0.25 |
| Dotty Strobel (Paralegal) | | 10/9/2007 | 10:28 AM | 295 | 0.5 |
| Dotty Strobel (Paralegal) | | 10/12/2007 | 5:09 PM | 845 | 1.75 |
| Dotty Strobel (Paralegal) | | 10/16/2007 | 2:52 PM | 97 | 0.5 |
| Dotty Strobel (Paralegal) | | 11/7/2007 | 1:32 PM | 119 | 0.5 |
| Dotty Strobel (Paralegal) | | 11/7/2007 | 3:46 PM | 151 | 0.5 |
| Dotty Strobel (Paralegal) | | 11/7/2007 | 4:44 PM | 113 | 0.5 |
| Dotty Strobel (Paralegal) | | 12/10/2007 | 11:43 AM | 113 | 0.5 |
| Dotty Strobel (Paralegal) | | 12/10/2007 | 5:57 PM | 257 | 0.75 |
| Dotty Strobel (Paralegal) | | 1/17/2008 | 5:45 PM | 81 | 0.25 |
| Dotty Strobel (Paralegal) | | 3/13/2008 | 9:30 AM | 119 | 0.5 |
| Mary Schiavo | | 3/15/2008 | 4:09 PM | 901 | 3 |

Exhibit 1

CONFIDENTIAL - ATTORNEY WORK PRODUCT

| | | | | |
|---|---|---|---|---|
| Mary Schiavo | 4/30/2008 | 6:00 PM | 415 | 1.5 |
| Mary Schiavo | 5/2/2008 | 4:18 PM | 142 | 0.75 |
| Mary Schiavo | 5/5/2008 | 1:10 PM | 267 | 1 |
| Dotty Strobel (Paralegal) | 5/19/2008 | 5:32 PM | 22 | 0.25 |
| Dotty Strobel (Paralegal) | 5/19/2008 | 5:33 PM | 13 | 0.25 |
| Dotty Strobel (Paralegal) | 6/2/2008 | 12:16 PM | 10 | 0.25 |
| Dotty Strobel (Paralegal) | 6/6/2008 | 5:00 PM | 9 | 0.25 |
| Dotty Strobel (Paralegal) | 6/10/2008 | 5:28 PM | 10 | 0.25 |
| Dotty Strobel (Paralegal) | 6/11/2008 | 11:08 AM | 9 | 0.25 |
| Dotty Strobel (Paralegal) | 6/13/2008 | 5:14 PM | 18 | 0.25 |
| Dotty Strobel (Paralegal) | 6/18/2008 | 4:33 PM | 10 | 0.25 |
| Dotty Strobel (Paralegal) | 6/24/2008 | 12:14 PM | 14 | 0.25 |
| Dotty Strobel (Paralegal) | 7/2/2008 | 2:12 PM | 11 | 0.25 |
| Dotty Strobel (Paralegal) | 7/10/2008 | 1:47 PM | 159 | 0.5 |

| | |
|---|---|
| **Mary Schiavo Total** | **13.5** |
| **Dotty Strobel Total** | **13.75** |
| **LeAnn Lester Total** | **4.75** |

Exhibit 1