**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   ) No. 03 MDL 1570 (GBD/FM)
) ECF Case
)

This document relates to:

    ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
        Case No. 02-CV-6977;
    BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,
        Case No. 03-CV-5738;
    CANTOR FITZGERALD ASSOCIATES, LP, *et al.* v. AKIDA INVESTMENT CO., LTD., *et al.*,
        Case No. 04-CV-7065;
    CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*,
        Case No. 04-CV-05970;
    EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
        Case No. 04-CV-07279;
    FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*,
        Case No. 03-CV-6978; and
    ESTATE OF O'NEILL, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*,
        Case No. 04-CV-1923.

**Defendant Al Haramain Islamic Foundation, Inc. (USA)
Unopposed Sur-Reply in Response to
<u>Plaintiffs' Application for Attorneys' Fees and Expenses</u>**

**Table of Contents**

Introduction . . . . . . . . . . 1

I.  Plaintiffs' "Revised" Fee Petition . . . . . . 2

II. Response to New Issues Raised in Plaintiffs' Reply Brief . . . 2

    1.  Plaintiffs' Failure to Produce Original Billing Records . . 2

    2.  Plaintiffs Continue to Seek Unjustified Hourly Rates . . 4

    3.  Plaintiffs Failed to Account for Their Limited Success . . 6

    4.  Plaintiffs' Request for a Lodestar Enhancement Is Unjustified . 7

    5.  Plaintiffs' "Revised Hours" are Facially Insignificant and Unacceptable 8

    6.  Travel Expenses and Expedited Transcript Expenses are not Justified 9

Conclusion . . . . . . . . . . . 10

Al Haramain Islamic Foundation, Inc. (USA) ("Al Haramain (USA)") respectfully submits its Unopposed Sur-Reply to Plaintiffs' Reply (ECF Nos. 2841-2842) (Mar. 10, 2014). This Unopposed Sur-Reply is limited to addressing the issues raised in Plaintiffs' Reply Brief, as well as several recent court decisions of relevance.[1]

As set forth below and in Defendant's Opposition (ECF No. 2835-2836) (Feb. 14, 2014), this Court should exercise its discretion under Rule 37, and strike the time and expenses sought by Plaintiffs, due to their failure to produce original, contemporaneous time records, overbilling, overstaffing, and demanding excessive rates and non-compensable expenses.

Although Plaintiffs claimed that their Reply Brief would eliminate time for overbilling and double-billing, they only eliminated 18.82 hours, less than 3 percent of the time sought as to Al Haramain (USA). The total fee petition as to Al Haramain (USA) and one other defendant, with the time for the reply brief added, and applying the requested 1.5 lodestar enhancement, is $1,078,927.25, almost the same as the original $1,100,844.68. The reductions are so insignificant that they fail to address the substantial problems with the fee petition – particularly, the lack of contemporaneous time records – as well as double-billing, overbilling, and failure to account for their limited success in prevailing on only one of three discrete discovery issues, and in failing to obtain either a default judgment or an adverse inference as to that one issue.

---

[1] When plaintiffs sought additional time for their reply brief, their counsel claimed that "I think there are an area or two where we anticipate making some concessions. But I need some additional time to corral the rest of my side AND, perhaps more importantly, I need additional time to analyze the time entries to see where the concessions would apply so that we can provide the court with specific views rather than broader concepts. Given that the next conference is not until April, would you mind agreeing to an additional 10 days to work through the concessions with the other camps on my side and to get revised numbers that would take into account your arguments?"  *See* R. Haefele email to A. Kabat (Feb. 21, 2014) (attached hereto as Exhibit 1).

Undersigned counsel readily consented to the requested relief, "provided that plaintiffs do not oppose our seeking leave to file a sur-reply brief to address whatever proposals you make in the reply brief." *See* A. Kabat email to R. Haefele & S. Carter (Feb. 24, 2014) (attached hereto as Exhibit 1). Further, "it may be useful to discuss your new proposals in the week of March 10-14, before filing the reply brief." *Id.* However, plaintiffs' counsel never responded to discuss their "revised numbers," and instead unilaterally filed the Reply Brief.

## I.  Plaintiffs' "Revised" Fee Petition.

Plaintiffs submitted one fee petition for both Al Haramain (USA) and Mr. Jelaidan. The fee petition listed separate attorneys' fees and expenses for these two defendants (with double billing, *see* Def. Opp.), except for the time in preparing the fee petition itself, which was combined by Plaintiffs, but is here allocated 50/50 between the two defendants:

| Al Haramain (USA) | Original Petition | Revised Petition | Difference |
|---|---|---|---|
| Hours on Discovery Motions | 637.50 hours | 618.68 hours | 18.82 hours |
| Hours on Fee Petition | 32.25 hours | 32.25 hours | n/a |
| Hours (total) | 669.75 hours | 650.93 hours | 18.82 hours |
| Fees for Discovery Motions | $411,665.00 | $387,474.21 | $24,190.79 |
| Fees for Fee Petition | $22,961.25 | $22,961.25 | n/a |
| Fees (original subtotal) | $434,626.25 | $410,435.46 | $24,190.79 |
| Fee Petition Reply Brief | n/a | $9,756.25 | n/a |
| Fees (new subtotal) | $434,626.25 | $420,191.71 | $14,434.54 |
| 1.5 Lodestar enhancement | $651,939.37 | $630,287.56 | $21,651.81 |
| Expenses | $6,029.21 | $6,029.21 | n/a |
| **Total fees and expenses** | $657,968.58 | $636,316.77 | $21,651.81 |

*See* Plaintiffs' Mem. & Exhibits B-D (ECF No. 2830, 2831) (Jan. 24, 2014); Plaintiffs' Reply Br. & Exhibits B-D (ECF Nos. 2841-2842) (Mar. 10, 2014). The difference in hours is 2.8 percent; the difference in the total fees and expenses is only 3.3 percent.

## II.  Response to New Issues Raised in Plaintiffs' Reply Brief.

### 1.  Plaintiffs' Failure to Produce Original, Contemporaneous Billing Records.

Plaintiffs' continued and unjustified failure to produce their original, contemporaneous billing records is a sufficient basis to deny their fee petition. Although Plaintiffs now claim that

2

they could provide "individual attorney declarations from each firm," *see* Reply Br. at 3 n.3, their inability or refusal to produce contemporaneous billing records is troubling, given the numerous instances of double-billing and overbilling identified in Defendant's Opposition.

In particular, Plaintiffs *never* addressed the judicial finding, in other aviation litigation, that "Motley Rice did not keep time sheets," and the admission of a Motley Rice partner that "we did not keep time sheets' and "we did not record research, preparation and investigation hours." *See* Def. Opp., at 7 (citing *In re Air Crash at Lexington, Ky.*, No. 5:06-cv-00316, 2011 WL 2358611, at *7, *21 (E.D. Ky. June 9, 2011) and Motley Rice Fee Petition, at 3, 6, *In re Air Crash at Lexington, Ky.*, No. 5:06-cv-00316 (ECF No. 3859, 3861) (E.D. Ky. Mar. 15, 2011)).

Recent decisions from this Court and others in this Circuit have reiterated long-standing Second Circuit law – the failure to produce contemporaneous time records, particularly where they have been demanded, is fatal to the fee petition. *Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, No. 7 Civ. 349 (LAP)(FM), 2014 WL 793084, at *6 (S.D.N.Y. Feb. 28, 2014) ("a party seeking an award of attorney's fees must submit contemporaneous time records …. not the sort of post-hoc cobbling together of notes, emails and calendars that courts have disapproved of in the past"); *Ray v. Debt Free Nation, Inc.*, No. 11 Civ. 7316 (AT), 2014 WL 957023, at *5 (S.D.N.Y. Mar. 11, 2014) ("A fee application that is not supported by evidence of 'contemporaneous time records' … should normally be denied") (quoting *N.Y. State Ass'n v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)) (approving denial of fee petition); *Cole-Hoover v. N.Y. Dept. of Correctional Services*, No. 02-CV-00826(M), 2014 WL 576176, at *6 (W.D.N.Y. Feb. 12, 2014) ("The long-established rule in this Circuit is that an application for court-awarded attorneys' fees on federal claims *must* be based on contemporaneous time records. . . . That rule was meant to have teeth."); *id.* at *7 ("his failure to maintain contemporaneous time

3

records would have prevented a fee award" and "constituted a failure to properly represent plaintiff's interests").

For example, Plaintiffs now claim that the multiple incidents of *identical* time amounts entered by a single attorney on a single day (*see* Def. Opp., at 18) could somehow be explained by speculating that "it is equally plausible that certain time was allotted to do the various tasks and when the time entries were entered they were entered consistent with the time budgeted." *See* Reply Br. at 11 n.9.  However, speculation in the Reply Brief is no substitute for producing the *original* time records, particularly where, as here, Defendant has identified numerous instances of overbilling, double-billing, and questionable time entries.

Therefore, this Court would be more than justified in denying Plaintiffs' fee petition, based on their continued inability to produce the original, contemporaneous time records.

### 2. Plaintiffs Continue to Seek Unjustified Hourly Rates.

Plaintiffs continue to make apples-to-oranges comparisons in attempting to justify hourly rates of $750 to $800, but have failed to satisfy their burden of justifying such high rates.

As a threshold matter, it is the courts, and *not* Defendant, who carefully explained why "Wall Street rates" are inappropriate for firms that do not handle sophisticated corporate merger and acquisition or securities work.  The Second Circuit, in *Carey*, specifically held that applying "Wall Street" rates was reversible error in creating an unjustified windfall.  *See Carey*, 711 F.2d at 1150 (2d Cir. 1983) ("Now that the issue is forcefully brought before us by the allowance of an award in excess of a million dollars, computed on the basis of rates charged by a leading Wall Street firm, we think it is appropriate to explore the matter and provide the district courts with further guidance."); *see also Marisol A. v. Giuliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) ("attorneys at large 'Wall Street' firms may receive higher compensation due to the higher

overhead and additional costs associated with practice at such firms"); *Richards v. N.Y. City Board of Education*, No. 83 Civ. 7621 (CBM), 1988 WL 70209, at *4 (S.D.N.Y. June 27, 1988) ("newspaper articles listing billing rates at Wall Street firms are of no probative value").

Further, this Court did not hold that the "*Laffey* matrix" from the District of Columbia was an appropriate metric, as Plaintiffs now claim. *See* Reply Br., at 4. Instead, in *House*, this Court relied on the fact that the partner at a large defense firm charged his client at a rate of $580 per hour, which was comparable to the *Laffey* matrix rate. *House v. Wackenhut Services, Inc.*, No. 10 Civ. 9476 (CM)(FM), 2012 WL 3538083, at *2 (S.D.N.Y. Aug. 8, 2012). Here, in contrast, Plaintiffs' counsel have presented <u>no</u> evidence of their customary billing rates, so there is no basis to apply the *Laffey* matrix to their fee petition.

Plaintiffs' reliance on surveys for New York City billing rates (Reply Br., at 4-5) is similarly flawed in its methodology. Plaintiffs' Reply Brief Exhibit O is based on "legal fees billed to sixty-two companies in seventeen industries," <u>not</u> "all of New York City," as Plaintiffs incorrectly claim. Plaintiffs' Reply Brief Exhibit P is similarly limited to a "survey of the nation's 350 largest firms" with responses from "159 of the country's largest law firms," and even that survey makes clear that only a very few partners at a few mega-firms bill over $1,000 an hour. Plaintiffs' Reply Brief Exhibit Q, although an incomplete document, makes clear that the average billing rate of $695 only applies to firms with 1,000 or more attorneys; firms with 51-200 attorneys have an average billing rate of only $442. *See* Pls. Reply Br., Ex. Q, at 72.

Plaintiffs' reliance on the Second Circuit's *Arbor Hill* decision is misplaced (Pls. Reply Br., at 6), since that decision concerned attempts to obtain higher out-of-forum rates for a case litigated in Albany. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir. 2004). Instead, the relevant analysis is that applicable to firms from

outside New York seeking "New York rates" for work done in Philadelphia or South Carolina, as Magistrate Judge Peck recognized in a case that Defendant briefed, but Plaintiffs ignored: "To the extent the reasonable hourly rate for an out-of-district lawyer is less than the billing rate in the district where the court sits, the lower rate should apply.  In other words, the appropriate billing rate should be the rate where the attorney works or the forum rate, whichever is lower." *Ryan v. Allied Interstate, Inc*, 882 F. Supp. 2d 628, 633 (S.D.N.Y. 2012).

Finally, Plaintiffs have improperly rewritten history by falsely claiming that this lawsuit was "transferred to the Southern District of New York in the MDL process, *largely at the defendants' insistence*." See Reply Br., at 6 (emphasis in original).  In fact, as counsel well know, it was *Plaintiffs* who insisted on consolidating this case in New York, and they did so only *after* Judge Robertson dismissed Princes Sultan and Turki.  The chronology set forth in the attached Affidavit, taken from the MDL docket, shows that the majority of Plaintiffs and Defendants initially wanted consolidation in the District of Columbia, and it was Plaintiffs who switched sides after that unfavorable decision.  *See* Kabat Aff., at ¶¶ 2-9 & Exhibits 2-10.

Therefore, it is clear that – contrary to Plaintiffs' Reply Brief (at 6) – it was Plaintiffs, *not* Defendants, who insisted on consolidating the case in New York, and Plaintiffs did so only *after* Judge Robertson granted the motions to dismiss of Prince Sultan and Prince Turki.  This court should not condone Plaintiffs' attempt to rewrite history in their Reply Brief.

### 3.     Plaintiffs Failed to Account for Their Limited Success.

Plaintiffs' Reply Brief (at 7) fails to admit their limited success – they only prevailed on one of three discrete discovery issues as to Al Haramain (USA), and they did not obtain either a default judgment or an adverse inference as to that one issue.

Plaintiffs failed to discuss the controlling appellate precedent under which the "degree of

success" is the "most critical factor." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"); *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained") *Barfield v. N.Y. City Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("we are mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff") (quoting *Farrar*, 506 U.S. at 114).

Plaintiffs' reliance on a 1980 decision (Reply Br., at 7), decided before *Farrar*, *Hensley*, and *Barfield*, is misplaced, as the Supreme Court and the Second Circuit subsequently made clear that the "degree of success" is the most important factor in assessing a fee petition.

### 4. Plaintiffs' Request for a Lodestar Enhancement Is Unjustified.

Plaintiffs' cursory argument that a lodestar enhancement is justified is contradicted by the two cases that they cited in their opening brief, as Defendant explained. *See* Def. Opp., at 13-14. Yet, Plaintiffs continue to cite *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed. App'x 448, 452 (2d Cir. 2009) and *Ceglia v. Zuckerberg*, No. 10–CV–00569 A(F), 2012 WL 503810, at *3, *17 (W.D.N.Y. Feb. 14, 2012), even though there were <u>no</u> lodestar enhancements in either case. Plaintiffs' Reply Brief (at 8) cites two additional cases, one of which is inapposite since it did not concern attorneys' fees. *Colozzi v. St. Joseph's Hosp. Ctr.*, No. 5:08-cv-1220, 2010 WL 3433997 (N.D.N.Y. July 20, 2010). The second cited case was reversed in part by the Seventh Circuit. *In re Petition of Boehringer Ingelheim Pharm. Inc.*, __ F.3d __, 2014 WL 274084 (7th Cir. Jan. 24, 2014) (reversible error to impose non-monetary discovery sanctions).

Most importantly, Plaintiffs do not even discuss the Supreme Court's controlling opinion

7

in *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010), which held that the circumstances warranting a lodestar enhancement "are indeed rare and exceptional." *See* Def. Opp. at 13.

This Court should find that Plaintiffs have not satisfied their burden of showing that a lodestar enhancement is warranted.

### 5. Plaintiffs' "Revised Hours" are Facially Insignificant and Unacceptable.

This Court should find that Plaintiffs' assertion that they have submitted "revised hours" is unacceptable, given that the Plaintiffs have only reduced their fee petition by 18.82 hours as to Al Haramain (USA), and a further 4.70 hours as to the other defendant. This microscopic reduction fails to address the majority of the overbilling, double-billing, and excessive time that Defendant identified in its Opposition.

For example, Plaintiffs continue to insist on billing for multiple attorneys attending a single status conference, even though only attorney one argued as to Al Haramain (USA). Plaintiffs' argument that "defendants generally have had multiple lawyers present at proceedings" (Pls. Reply Br. at 10 n.7) is incorrect as to Al Haramain (USA), which has only had one attorney present at proceedings for the past eight years.

Plaintiffs continue to insist on billing for conferences at which no attorneys argued as to Al Haramain (USA). *See* Reply Br., at 12-13. For example, the October 28, 2010 hearing had only 2.5 transcript pages devoted to Al Haramain (USA), which consisted solely of the Court's reading of its decision. *See* Def. Opp., at 19 (billing 2 hours each for three attorneys for that hearing). The November 16, 2011 hearing had only 1.5 transcript pages devoted to Al Haramain (USA), yet two attorneys each billed 1.0 hours, with no reduction in the Reply Brief. Even where one attorney did argue as to Al Haramain (USA), Plaintiffs continue to insist on billing for five attorneys, each billing 1.0 hour to Al Haramain, as in the March 19, 2013 hearing, which

8

had only 16.5 pages devoted to Al Haramain (USA).

Plaintiffs attempt to explain away obvious inconsistencies in time for internal conferences, by speculating that these inconsistencies "may be alternatively explained based on one attorney arriving and departing earlier or later than another attorney, and billing accordingly." *See* Reply Br., at 11.  But, as Plaintiffs have failed to produce their original time records, this Court has no basis for evaluating that speculation.  Moreover, it is illogical that an internal conference could take place for the full claimed duration if the attorneys for the other law firms were not present, having arrived late or departed early.

### 6. Travel Expenses and Expedited Transcript Expenses are not Justified.

Plaintiffs' argument as to their travel expenses is based on a misrepresentation of the history of this case, since Plaintiffs assert "several important facts," including "First, the choice of the multidistrict forum, to a large extent, is a choice of the defendants, who argued to have the MDL centralized in the Southern District of New York." *See* Pls. Reply, at 13.  Yet, as counsel are well aware, most of the Plaintiffs and Defendants originally supported consolidation in the District of Columbia, and it was Plaintiffs who switched sides at the last minute, after Judge Robertson dismissed Prince Sultan and Prince Turki.  *See* Part II.2, *supra.*  This Court should not condone Plaintiffs' misrepresentation of judicial proceedings in which they took part.

Moreover, although Plaintiffs claim that they "have been unable to identify any transcripts ordered in an expedited manner," *see* Reply Br., at 13 n.10, a cursory comparison of the transcripts ordered with the rates of the Southern District Reporters readily reveals that the February 8, 2010 transcript, comprising 54 pages, cost $288.36, a per-page rate of $5.34, corresponding to the "expedited" rate, and the December 2, 2010 transcript, comprising 28 pages, cost $130.64, a per-page rate of $4.67, corresponding to the "14-days" expedited rate.

9

*Compare* Pls. Reply Br., Exhibit B, at 70, 73 (transcript orders) *with* Southern District Reporters, "Rates" (online at: https://sdreporters.com/order.php) (viewed Mar. 18, 2014).  This further contradicts Plaintiffs' attempts to argue away their unjustified expenses.

### III.     CONCLUSION.

For the foregoing reasons, and those set forth in Defendant's Opposition (Feb. 14, 2014), this Court should strike or substantially reduce the Fee Petition, due to the lack of original, contemporaneous billing records, the pervasive overbilling, overstaffing, double-billing, demanding excessive hourly rates, and seeking non-compensable expenses.

Further, the Fee Petition fails to account for the limited success on the motion to compel – Plaintiffs prevailed on only one of three discovery issues, and did not obtain either sanction that they sought (since this Court did not award either a default judgment or an adverse inference), yet Plaintiffs failed to reduce their time or expenses to reflect their limited success.

                  Respectfully submitted,

                  */s/ Lynne Bernabei*
                  _____
                  Lynne Bernabei (LB2489)
                  Alan R. Kabat (AK7194)
                  Bernabei & Wachtel, PLLC
                  1775 T Street, N.W.
                  Washington, D.C. 20009-7102
                  (202) 745-1942
                  *Attorneys for Al Haramain Islamic Foundation, Inc. (USA)*

DATED:  March 18, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2014, I caused the foregoing Unopposed Sur-Reply Brief to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

_____

Alan R. Kabat