**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————
                                                    )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001    ) No. 03 MDL 1570 (GBD/FM)
                                                    )        ECF Case
———————————————————————————    )

**Declaration of Alan R. Kabat in Support of**
**Defendant Al Haramain Islamic Foundation, Inc. (USA)'s**
**Sur-Reply to Plaintiffs' Fee Petition**

I am an attorney licensed to practice in the District of Columbia and am admitted *pro hac vice* in this matter. I am with the law firm of Bernabei & Wachtel, PLLC, counsel to defendant Al Haramain Islamic Foundation, Inc. (USA). I submit this declaration in support of Defendant's Sur-Reply to Plaintiffs' Fee Petition, in order to provide the Court with the exhibits referenced in that filing, and to explain the history of the proceedings before the Judicial Panel on Multidistrict Litigation.

1.      Exhibit 1 is an email exchange between plaintiffs' counsel and undersigned counsel concerning plaintiffs' request for an extension of time on their reply brief.

2.      In 2003, the Saudi Binladin Group filed a motion with the Judicial Panel on Multidistrict Litigation, seeking an order "designating Judge James Robertson of the United States District Court for the District of Columbia as the transferee judge pursuant to 28 U.S.C. § 1407." *See* Saudi Binladin Group's Motion for Transfer and Consolidation (JPML No. 1570) (ECF No. 1) (Aug. 21, 2003) (excerpts attached hereto as Exhibit 2).

3.      The *Burnett* Plaintiffs' response stated that: "As discussed below, the *Burnett* plaintiffs do not object to the relief sought by SBG -- namely, the consolidation of the September 11 Terrorist Attack Cases, transfer to the District of Columbia and assignment to Judge Robertson." *See Burnett* Plaintiffs' Response, at 2 (JPML No. 1570) (ECF No. 14) (Sept. 16,

2003) (excerpts attached hereto as Exhibit 3).

4.      Al Haramain (USA)'s response stated that it "consents to the relief requested by SBG, i.e., the transfer and consolidation of these seven (or more) lawsuits into a single action in the U.S. District Court for the District of Columbia."  *See*  Al Haramain (USA), Response, at 1 (JPML No. 1570) (ECF No. 15) (Sept. 16, 2003) (excerpts attached hereto as Exhibit 4).

5.      The *Ashton* Plaintiffs' response stated that:  "Accordingly, the *Ashton* plaintiffs do not object to Judge Robertson's appointment as the MDL Judge for the September 11 terror actions."  *See Ashton* Plaintiffs' Response, at 4 (JPML No. 1570) (ECF No. 19) (Sept. 17, 2003) (excerpts attached hereto as Exhibit 5).

6.      The *Havlish* Plaintiffs' response stated that:  "The *Havlish* Plaintiffs do not object to the relief sought by SBG -- namely, the consolidation of the September 11 Terrorist Attack Cases, transfer to the District of Columbia and assignment to Judge Robertson."  *See Havlish* Plaintiffs' Response, at 2 (JPML No. 1570) (ECF No. 21) (Sept. 24, 2003) (excerpts attached hereto as Exhibit 6).

7.      The *Federal Insurance* Plaintiffs' response stated that:  "*Federal* Plaintiffs respectfully submit that for all pretrial proceedings, Judge James Robertson should be appointed as the MDL judge for the September 11 lawsuits and be cross-designated as a judge of the United States District Court for the Southern District of New York."  *See Federal Insurance* Plaintiffs' Response, at 13 (JPML No. 1570) (ECF No. 33) (Oct. 30, 2003) (excerpts attached hereto as Exhibit 7).  Thus, as of October 2003, all the plaintiffs wanted the case assigned to Judge Robertson, with some suggesting he be cross-designated to the Southern District.

8.      On November 14, 2003, Judge Robertson granted Princes Sultan's and Turki's motions to dismiss.  *Burnett v. Al Baraka Inv. & Devel. Co.*, 292 F. Supp. 2d 9 (D.D.C. 2003).

9.      At the oral argument held by the Judicial Panel on Multidistrict Litigation on November 20, 2003, a few days after Judge Robertson's decision, counsel for Plaintiffs switched sides, and instead argued that the case should be transferred to New York:

> (1)      *Ashton*:  "last Friday Prince Turki and Prince Sultan were dismissed from the Washington action … Quite frankly, as we weigh this balance of factors, we think things have changed. . . . I recognize that this is a change from the papers we submitted a month ago."  *See* Transcript of Oral Argument (Nov. 20, 2003), at 14 (attached hereto as Exhibit 8).

> (2)      *Burnett*:  "[I]f everything is in New York and it's being handled in New York."  *Id.* at 21.

> (3)      *Havlish*:  "There's been a tension, maybe even considerable tension, among the plaintiffs on this issue of New York versus Washington… The only safe thing to do in terms of the plaintiffs' position is New York as we see the current situation unfolding before our eyes."  *Id.* at 22.

10.      As the *Federal Insurance* counsel were unable to attend the oral arguments, they submitted a post-hearing letter, which stated that:

> Our clients do not consent to any consolidation and transfer which could lead to any type of executive committee being appointed with any impact on or influence over the prosecution of our clients' claims.  Because of the conflict of interest on the part of those attorneys who are claiming priority for their clients over our clients, it is clear that consolidation and appointment of an executive committee would lead to chaos, rather than judicial economies, with respect to the disparate interests of our clients in relation to the plaintiffs in the other actions which are the subject of the pending motion.

> Indeed, especially as to Saudi Arabia, lead counsel for the plaintiffs in the actions which are sought to be consolidated has made it clear that under no circumstances would their clients include Saudi Arabia in their complaints.

*See Federal Insurance* Plaintiffs' post-hearing letter, at 2 (JPML No. 1570) (ECF No. 37) (Nov.

20, 2003) (excerpts attached hereto as Exhibit 9).

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed on March 18, 2014.

*Alan R. Kabat*

ALAN R. KABAT

**Alan Kabat**

| | |
|---|---|
| **From:** | Alan Kabat |
| **Sent:** | Monday, February 24, 2014 7:37 AM |
| **To:** | Haefele, Robert |
| **Cc:** | Carter, Sean |
| **Subject:** | RE: Fee Petition |

Bob,

Lynne and I have discussed this and we do not oppose the request for an extension of time (let's make it 2 weeks even) provided that plaintiffs do not oppose our seeking leave to file a sur-reply brief to address whatever proposals you make in the reply brief.  I agree that there is sufficient time for this briefing to take place before the April status conference.

Also, it may be useful to discuss your new proposals in the week of March 10-14, before filing the reply brief.

Alan

_____

From: Haefele, Robert [rhaefele@motleyrice.com]
Sent: Friday, February 21, 2014 6:20 PM
To: Alan Kabat
Cc: Carter, Sean
Subject: Fee Petition

Alan – Given the hearing earlier this week, I had not really had a chance to study your submission closely until yesterday and today.  Now that I have spent some more time with it, I think there are an area or two where we anticipate making some concessions.  But I need some additional time to corral the rest of my side AND, perhaps more importantly, I need additional time to analyze the time entries to see where the concessions would apply so that we can provide the court with specific views rather than broader concepts.  Given that the next conference is not until April, would you mind agreeing to an additional 10 days to work through the concessions with the other camps on my side and to get revised numbers that would take into account your arguments?

Obviously, your most prompt response is appreciated so that we can advise the court on Monday morning.

Thanks,

Robert T. Haefele  | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464 | rhaefele@motleyrice.com
o. 843.216.9184 | c. 843.834.1951 | f. 843.216.9450


Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you

Exhibit 1

MDL 1570

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2003

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE SEPTEMBER 11, 2001    )
TERRORIST ATTACKS          )        MDL DOCKET NO. _____
LITIGATION                 )
                           )

**MOTION FOR TRANSFER AND CONSOLIDATION
PURSUANT TO 28 U.S.C. § 1407 BY DEFENDANT SBG**

In the aftermath of the September 11, 2001 terrorist attacks, thousands of victims and

victim representatives have filed numerous lawsuits in multiple jurisdictions alleging a vast

conspiracy on the part of hundreds of defendants located throughout the world to commit the

9/11 atrocities. (*See* jointly submitted Schedule of Actions). Defendant Saudi Binladin Group,

Inc. ("SBG") hereby respectfully moves the Judicial Panel on Multidistrict Litigation for an

order: (1) transferring these highly complex, virtually identical actions to a single federal district

court; (2) consolidating them for pretrial proceedings; and (3) designating Judge James

Robertson of the United States District Court for the District of Columbia as the transferee judge

pursuant to 28 U.S.C. § 1407.[1]

---

[1] In filing this motion for transfer and consolidation pursuant to 28 U.S.C. § 1407, SBG does
not intend to waive any affirmative defenses, including any defenses based on lack of personal
jurisdiction.



OFFICIAL FILE COPY IMAGED

Exhibit 2

In support of the transfer and consolidation of these actions, SBG avers the following, as will be set forth more fully in the accompanying memorandum:

1.     To date, thousands of victims of September 11, 2001 have filed at least fifteen separate actions[2] against hundreds of defendants alleged to have conspired to commit the terrorist attacks on the World Trade Center, the Pentagon, and United Airlines Flight 93, which crashed in Shanksville, Pennsylvania. Two of the most recent cases were just filed in July, 2003. Eleven of these actions were filed in the Southern District of New York, three were filed in the District of Columbia, and one was filed in the District of New Jersey. Six of the actions filed in New York have been consolidated, and another three are pending independently. Two of the New York actions and the New Jersey action have been dismissed without prejudice. Thus, seven separate actions ("the 9/11 actions") remain pending in two judicial districts.

2.     There are literally thousands of named plaintiffs in the 9/11 actions, and two of the complaints seek class action treatment pursuant to Fed. R. Civ. P. 23. The 9/11 plaintiffs have named roughly 500 defendants,[3] approximately 245 of which are common to three or more

---

[2] After SBG's counsel had finalized the Memorandum and Schedule of Action accompanying this Motion and was preparing for filing, we became aware that an additional action was filed in the S.D.N.Y. According to the plaintiffs, this new action is "materially identical" to an action already pending in the D.D.C. and has been filed "solely as a prophylactic measure" to protect the D.C. plaintiffs from, *inter alia*, a lack of subject matter jurisdiction in the D.C. action. For logistical reasons, SBG's Memorandum and Schedule of Actions do not address this new action.

[3] These statistics were compiled by counsel for SBG and are based upon the captions of the most recent complaints filed in each of the relevant actions. While it is possible that certain defendants have been named multiple times in a single complaint in varying forms (*see, e.g., Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Third Amended Complaint at 190-91 (listing as defendants: "M. Yaqub Mirza," "Yaqub M. Mirza," and "Yaqub Mirza")), at this time SBG cannot verify that these separately named defendants are not distinct individuals.

of the 9/11 actions. More than 400 of these defendants are named in at least two of the proceedings. SBG is named as a defendant in all of the 9/11 actions except one.

3.      The 9/11 actions seek to demonstrate that this extremely large group of defendants conspired with, aided and abetted, and materially supported al Qaeda, thereby proximately causing the 9/11 attacks.

4.      As required by 28 U.S.C. § 1407(a), the cases proposed for transfer and consolidation "involv[e] one or more common questions of fact" inasmuch as they are premised on nearly identical factual allegations regarding the cause of and culpability for the 9/11 attacks.

5.      Moreover, transfer and consolidation of these cases "will be for the convenience of parties and witness and will promote the just and efficient conduct of the actions." 28 U.S.C. § 1407(a).   For example, consolidation of these actions before a single court will eliminate duplicative discovery and the issuance of duplicative letters rogatory by multiple courts, prevent conflicting pretrial rulings, conserve judicial resources, reduce the costs of litigation for the thousands of parties involved, and allow the cases to proceed more efficiently.

6.      Also in furtherance of these goals, SBG respectfully submits that the Honorable James Robertson of the U.S. District Court for the District of Columbia ("D.D.C.") is best suited to preside over these cases as the transferee judge. Judge Robertson is already presiding over *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.*, the 9/11 action that is the most advanced; in fact, Judge Robertson just rendered, on July 25, 2003, a fifty-page opinion granting in part and denying in part the first five motions to dismiss the *Burnett* case. Judge Robertson also has prior experience handling these types of terrorism cases. In addition, the District of Columbia is geographically accessible to the parties and witnesses and the D.D.C. has

a particular expertise in adjudicating lawsuits that involve the interests of foreign nations, U.S. foreign relations, and matters of national security.

WHEREFORE, SBG respectfully requests that the Judicial Panel on Multidistrict Litigation issue an order: (1) transferring the cases listed in the Schedule of Actions to a single federal district court; (2) consolidating them for pretrial proceedings; and (3) designating Judge James Robertson of the United States District Court for the District of Columbia as the transferee judge pursuant to 28 U.S.C. § 1407.

Dated:  August 7, 2003

Respectfully submitted,

Stephen J. Brogan (D.C. Bar # 939082)
Jonathan C. Rose
Timothy J. Finn
James E. Gauch
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant SBG*

4

1570

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 16 2003

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE SEPTEMBER 11, 2001 TERRORIST          **MDL NO. 1570**
ATTACKS LITIGATION

**BURNETT PLAINTIFFS' MEMORANDUM IN RESPONSE TO
DEFENDANT SAUDI BINLADEN GROUP'S MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

**Introduction**

The Plaintiffs in *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment and Development
Corp, et al.*, Civil Action No. 02-CV-01616 pending in the United States District Court for the
District of Columbia ("the *Burnett* plaintiffs" or "*Burnett*"), hereby respond through counsel,
pursuant to Title 28, United States Code, Section 1407 and Rule 7.2(c) of the Rules of the
Judicial Panel on Multidistrict Litigation, to the Defendant Saudi Binladen Group's ("SBG")
Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407. *Burnett* is assigned to U.S.
District Judge James Robertson ("Judge Robertson") in the District of Columiba. The *Burnett*
Plaintiffs include over 5,000 persons whose cases are brought in a consolidated action. The

OFFICIAL FILE COPY IMAGE

Exhibit 3

*Burnett* Plaintiffs have currently named over 200 defendants, over 100 of which have been served. *Burnett* is not only the largest consolidation, it is the most advanced of the fifteen actions that SBG seeks to consolidate and transfer in its pending motion. The *Burnett* plaintiffs submit this response to articulate their positions with respect to the matters raised in SBG's motion.

As discussed below, the *Burnett* plaintiffs do not object to the relief sought by SBG -- namely, the consolidation of the September 11 Terrorist Attack Cases, transfer to the District of Columbia and assignment to Judge Robertson.[1]

While the *Burnett* plaintiffs generally agree with SBG's description of the pendency, procedural posture, and factual background of the various September 11 Terrorist Attack cases, there are several matters that warrant comment and clarification. Specifically, (1) the mistaken contention that the September 11 Terrorist Attack cases all allege a single conspiracy, (2) the existence of a single common factual question in all the cases, and (3) additional justifications for the Panel not to employ the "situs of the disaster" test in ruling upon SBG's Motion.

**Current Procedural Posture of *Burnett***

Although the *Burnett* plaintiffs generally agree with SBG's description of the pendency, procedural posture, and factual background of the various September 11 Terrorist Attack cases, they believe that it does not do justice to the significant amount of work undertaken and completed because of Judge Robertson's efficient adjudication of the complex issues raised by the *Burnett* case. To provide the Panel with a more complete understanding of the extent of the work Judge Robertson has done on the case, the *Burnett* plaintiffs provide the following

---

[1] Any order of transfer and consolidation issued by the Judicial Panel on Multidistrict Litigation ("the Panel"), however, should consider providing for the continued, perhaps limited, involvement of U.S. District Judge Richard C. Casey of the U.S. District Court for the Southern District of New York ("Judge Casey"), for the limited purpose of hearing discrete issues that, for one reason or another, are not decided by Judge Robertson. *See* Discussion 1, *infra*.

The *Burnett* plaintiffs do not object to the relief sought by SBG in its pending motion. As previously discussed, however, any order of transfer and consolidation issued by the Panel should -- in addition to naming Judge Robertson as the presiding judge -- consider providing for the continued involvement of Judge Casey.

Respectfully submitted,

Ronald L. Motley, Esq. (SC Bar #4123)
Jodi Westbrook Flowers, Esq. (SC Bar #66300)
Donald A. Migliori, Esq. (RI Bar #4936)
Jeffrey S. Thompson, Esq. (TX Bar #00785101)
Michael Elsner, Esq. (NY & VA Bar #ME-8337)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

William H. Narwold, Esq.
Joel B. Casey, Esq.
Ingrid L. Moll, Esq.
CUMMINGS & LOCKWOOD LLC
185 Asylum Street, 36th Floor
CityPlace I
Hartford, CT  06103-3495
Telephone:  (860) 275-6787

Harry Huge, Esq. (D.C. Bar #55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq. (DC Bar #327494)
ATTORNEY AT LAW
4221 Lenore Lane

Washington, DC 20008
Tel:  (202) 966-8557

Paul J. Hanly, Jr., Esq. (NY Bar #PH-5486)
Jayne Conroy, Esq.
Andrea Bierstein, Esq.
HANLY & CONROY, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq. (IN Bar #4941-49)
Mark K. Dudley, Esq. (IN Bar #15418-49)
Amy Ficklin DeBrota, Esq. (IN Bar #17294-49)
YOUNG, RILEY, DUDLEY & DEBROTA
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone:  (317) 848-7939

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Attorneys for *Burnett* Plaintiffs

Dated: Mount Pleasant, S.C.
       September 15, 2003

**MDL 1570**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 1 6 2003

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| *In re* September 11, 2001 Terrorist Attacks Litigation | ) ) ) ) | MDL No. 1570 |

## DEFENDANT AL HARAMAIN ISLAMIC FOUNDATION, INC.'S
## RESPONSE TO MOTION FOR TRANSFER AND CONSOLIDATION
## PURSUANT TO 28 U.S.C. § 1407 BY DEFENDANT SBG

Pursuant to Panel Rule 7.2(c), defendant Al Haramain Islamic Foundation, Inc. ("AHIF"),

hereby submits its response to the motion of defendant Saudi Binladin Group, Inc. ("SBG") to

transfer and consolidate the lawsuits filed in the U.S. District Courts for the District of Columbia

and the Southern District of New York, as set forth in SBG's Motion.

AHIF, an Islamic charity located in Oregon, consents to the relief requested by SBG, i.e.,

the transfer and consolidation of these seven (or more) lawsuits into a single action in the U.S.

District Court for the District of Columbia. AHIF agrees with SBG's argument that the

extensive overlap of claims, defendants, and the common questions of fact and law merits

consolidation in the interests of judicial economy. See SBG's Memorandum, at 8-15. AHIF

further agrees that since the case entitled *Burnett, et al. v. Al Baraka Investment & Development

Corporation, et al.*, No. Civ. A. 02-1616(JR) (D.D.C.), is the furthest advanced of any of these

OFFICIAL FILE COPY IMAGED

**Exhibit 4**

cases in terms of its litigation, that the U.S. District Court for the District of Columbia is the

most appropriate forum for the consolidation of these cases. See SBG's Memorandum, at 16-20.

## PROCEDURAL BACKGROUND

AHIF has been served with the complaint in only one of these actions, i.e., *Burnett*, and

AHIF has entered an appearance in that action. AHIF has informally learned that it has been

named as a defendant in one or more of the other actions that are the subject of SBG's motion for

transfer and consolidation. However, AHIF has neither been served nor entered an appearance in

any of those other actions.[1]

On July 25, 2003, Judge Robertson granted in part, and denied in part, AHIF's motion to

dismiss. See Burnett v. Al Baraka Inv. & Dev. Corp., No. Civ. A. 02-1616(JR), 2003 WL

21730530 (D.D.C. July 25, 2003). Judge Robertson dismissed the negligence and Civil RICO

claims against AHIF (Counts 6, 8 *partim*, and 11-13), and allowed about half of the plaintiffs'

original claims to go forward as against AHIF (Counts 3-4, 7, 8 *partim*, 9-10, and 14).[2] Id. at

*19. Of the five defendants who had completed the briefing on their motions to dismiss at the

time of the motions hearing on June 24, 2003, plaintiffs voluntarily dismissed one defendant

(Zahir Kazmi) shortly after the hearing. Plaintiffs voluntarily dismissed another defendant (Dr.

---

[1] At least one of these actions was dismissed on the same day as SBG filed its motion
with the Panel. See *Doe v. Al Baraka Inv. & Dev. Corp.*, No. 01-CV-01980 (JR) (D.D.C.),
Notice of Voluntary Dismissal (Aug. 7, 2003) (attached and incorporated herein as Exhibit A).

[2] Plaintiffs, in their opposition to AHIF's motion to dismiss, withdrew Count 2 (Torture
Victim Protection Act) against AHIF, after AHIF briefed in its motion to dismiss that this statute
only applied to conduct by state actors, and that plaintiffs had failed to plead any facts to support
any allegation that AHIF was a state actor. Counts 1 and 15 apply solely to the foreign state
defendants, not to AHIF.

Soliman J. Khudeira), after the court's ruling and after Dr. Khudeira filed a Rule 12(e), Fed. R.

Civ. P., request for a more definite statement. Another defendant (Al Rajhi Bank) is expected to

submit its renewed motion to dismiss, and the fifth defendant (Muslim World League), whose

motion to dismiss was primarily on jurisdictional grounds, remains in the case. Thus, of the five

defendants who completed the first round of briefing, two are already out of the case, and half of

the plaintiffs' claims against AHIF have been dismissed or withdrawn. AHIF also notes that, in

the *Burnett* action, it is the only defendant to have commenced the discovery process.[3]

## LEGAL ARGUMENT

Section 1407(a) provides, in relevant part, that:

> (a) When civil actions involving one or more common questions of fact are
> pending in different districts, such actions may be transferred to any district for
> coordinated or consolidated pretrial proceedings. Such transfers shall be made by
> the judicial panel on multidistrict litigation . . . upon its determination that
> transfers for such proceedings will be for the convenience of parties and witnesses
> and will promote the just and efficient conduct of such actions. . . .

28 U.S.C. § 1407(a). All of the statutory criteria that justify transfer and consolidation are

present with respect to AHIF.

First, AHIF, along with innumerable other defendants, has been named as a defendant in

several lawsuits that are pending in two judicial districts. These lawsuits, as defendant SBG has

noted, all involve a single factual question as against AHIF: did AHIF knowingly and

intentionally provide material support to al Qaeda (and related terrorist groups) for the purposes

of committing the September 11 attacks?

---

[3] AHIF served the plaintiffs with its discovery requests during the Rule 26(f) discovery
conference on August 19, 2003.

Second, transfer and consolidation of these proceedings would significantly enhance judicial economy and inure to the convenience of all the parties and their witnesses. With respect to AHIF, transfer and consolidation would (1) eliminate duplicative discovery, both served by AHIF on the plaintiffs, and by the plaintiffs on AHIF; (2) prevent conflicting rulings on dispositive motions, discovery issues, evidentiary matters, and related pretrial motions by different courts; (3) conserve the parties' and the judiciary's scarce resources; and (4) ensure that the litigation of plaintiffs' claims, and AHIF's defenses, proceed in an orderly and efficient manner. *In re* Charter Communications, Inc. Sec. Litig., 254 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003). Critically, since AHIF has already commenced discovery in *Burnett*, it has an interest in avoiding the needless expense and time of conducting overlapping discovery in the other actions in which it has been named as a defendant, but never served.

Third, transfer and consolidation of these proceedings before Judge James Robertson of the U.S. District Court for the District of Columbia would be the most appropriate result, given that Judge Robertson has prior experience with cases relating to terrorism,[4] and is the only judge to have issued a published opinion in any of the cases that are the subject of the pending motion, *i.e.*, *Burnett*.[5]

---

[4] Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115 (D.D.C. 2003) (granting summary judgment to one defendant in Alien Tort Claims Act case), appeal dismissed, No. 03-7072, 2003 WL 21649468 (D.C. Cir. Jul. 9, 2003); Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (denying default judgment against Iran for lack of evidence that Iran supported individuals who committed terrorist attack).

[5] Upon information and belief, no motions to dismiss have even been filed in any of the other pending cases.

## CONCLUSION

For the foregoing reasons, AHIF joins SBG's motion for transfer and consolidation, and

requests that the actions listed in SBG's Schedule of Actions be consolidated in a single district

for consolidated pretrial proceedings, and submits that the U.S. District Court for the District of

Columbia is the most suitable transferee forum for these consolidated proceedings.

Respectfully submitted,

Lynne Bernabei   D.C. Bar No. 938936
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorney for Defendant
Al Haramain Islamic Foundation, Inc.

DATED:  September 15, 2003



5

# MDL 1570

## BEFORE THE JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 17 2003

FILED
CLERK'S OFFICE

IN RE TERRORIST ATTACKS
ON SEPTEMBER 11, 2001

MDL Docket No.:   1570

### ASHTON PLAINTIFFS' RESPONSE TO SAUDI BINLADIN
### GROUP'S MOTION FOR TRANSFER AND
### CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407(a)

The plaintiffs in 766 death actions, 1,233 personal injury actions and 2 property damage actions pending in the Southern District of New York, known as the consolidated *Ashton, et al .v. Al Qaeda Islamic Army, et al.* 02 CV 6977(RCC), action respectfully submit this response to defendant Saudi Binladin Group's Motion to the Judicial Panel on Multi-District Litigation ("MDL") for an Order pursuant to 28 U.S.C. § 1407(a) to transfer all September 11 terror cases to Judge James Robertson in the District of Columbia for coordinated and consolidated pre-trial proceedings.

### BACKGROUND

Shortly after the September 11 attacks, Congress passed the Air Transportation Safety and System Stabilization Act (Public Law 107-42, 115 Stat. 203, enacted September 22, 2001; codified at 49 U.S.C. § 40101). Section 408(b)(3) reads:

> The United States District Court for the Southern District of New York shall have original and <u>exclusive</u> jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001. (emphasis supplied).

The Act was one of the factors leading to a number of actions being filed in the Southern District of New York (the "SDNY").

**OFFICIAL FILE COPY** IMAGE

Exhibit 5

The *Ashton* action was filed against Al Qaeda and its co-conspirators and sponsors in the

SDNY on September 4, 2002.   Eight additional actions against Al Qaeda and other defendants

were filed in the SDNY beginning in October 2001 through the fall of 2002.   Six of the actions

were consolidated before the Honorable Allen G. Schwartz under the *Ashton* docket number.[1]   A

case filed on November 14,  2001, *Smith, et al. v. Islamic Emirate of Afghanistan, et al.*, 01 CV

10132(HB); 01 CV 10144(HB), was brought before the Honorable Harold Baer in the SDNY and

proceeded to a default judgment against the Republic of Iraq on May 6, 2003.   A case filed on

July 24, 2003, entitled *York et al. v. Al Qaeda Islamic, et al.*, 03 CV 5493 was assigned to Judge

Casey on August 18, 2003.

On September 10, 2003, Federal Insurance Co., Pacific Insurance Co. and Vigilant

Insurance Co. filed a motion to intervene in the *Ashton* action in order to recover workers'

compensation payments made to plaintiffs.

In the fall of 2002, Judge Schwartz ordered the Ashton plaintiffs to file a Master

Consolidated Complaint by January 7, 2003 consolidating five other cases[1] and directed that

James P. Kreindler, upon consent of all counsel, be appointed liaison counsel.   After the Master

Consolidated Complaint was filed, Judge Schwartz issued an Order on March 18, 2003 regarding

alternative service by publication notice for some of the terrorist defendants, co-conspirators and

sponsors.   Unfortunately, Judge Schwartz passed away a short while later.

---

[1]*Beyer, et al. v. Al Qaeda Islamic Army, et al.*, 02 CV 6978(AGS), *Burlingame, et al. v. Al Qaeda Islamic Army, et al.*, 02 CV 7230(AGS), *Bauer, et al. v. Al Qaeda Islamic Army, et al.*, 02 CV 7236(AGS), *Schneider, et al. v. Al Qaeda Islamic Army, et al.*, 02 CV 7209(AGS), and *Mayore Estates, LLC, et al. v. Al Qaeda Islamic Army, et al.*, 02 CV 7214(AGS). Three SDNY cases that were not consolidated, *Smith et al. v. Islamic Emirate of Afghanistan, et al.*, 01 CV 10132(HB); 01 CV 10144(HB)(consolidated as one case); *Tremsky, et al. v. Bin Laden, et al.* 02 CV 7300 (JSM); *Iwachiw, et al. v. Al Baraka Investment, et al.*, 02 CV 7303 (JSR).

The *Ashton* case was re-assigned to the Honorable Richard C. Casey in the SDNY. Judge Casey has held two status conferences thus far. Service of the complaints is well underway and several defendants have appeared.

In February 2002 an action known as *Havlish, et al. v. Usamah Bin-Laden, et al.*, 1:02 CV 00305 was filed in the United States District Court for the District of Columbia. That action was assigned to the Honorable James Robertson, U.S.D.J. On August 15, 2002 an action known as *Burnett, et al. v. Al Baraka Investment, et al.*, 1:02 CV 01616 was filed in the District of Columbia and assigned to Judge Robertson. The *Burnett* plaintiffs include the *Havlish* plaintiffs.

Judge Robertson in the District of Columbia has held conferences, presided over hearings and has ruled on motions in the year that he has presided over the *Havlish* and *Burnett* actions.

Most recently, on July 25, 2003, Judge Robertson issued a 49 page Memorandum Opinion regarding multiple dismissal motions by multiple defendants. The Opinion demonstrates Judge Robertson's substantial familiarity with and involvement in the issues presented in the September 11 terrorism cases.

On August 1, 2003, plaintiffs in the *Burnett, et al., v. Al Baraka Inv. & Dev. Corp. et al.*, 1:02 CV 1616 (D.D.C. Robertson, J.) filed a protective action in the Southern District of New York that was assigned docket number 03-CV-5738 and referred to Judge Casey. Thus, upon information and belief, all plaintiffs in the terror suits have actions pending in the SDNY.

## ARGUMENT

At the outset we note that since all plaintiffs have currently pending actions in the SDNY, the actions might not require intervention by this panel. MDL consolidation is designed to deal

3

with the circumstances of multiple actions arising from a single disaster being filed in different judicial districts. *See* 28 U.S.C. §1407.

If the MDL Panel is inclined to intervene, however, New York and Washington are the only appropriate forums. This Panel has repeatedly emphasized that where the documents and witnesses relevant to the issues involved are located in a particular district, that district is "the most appropriate forum for this litigation . . . ." In Re Air Crash Disaster at Paris, France on March 3, 1974, 376 F. Supp. 887, 888 (J.P.M.L. 1974); In Re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975, 407 F. Supp. 244, 246 (J.P.M.L. 1976); In Re Amerada Hess Corp. Antitrust Litigation, 395 F. Supp. 1404 (J.P.M.L. 1975). New York is where two of the attacks occurred and the majority of victims and their families are from the New York area. Washington D.C. is near the site of the Pentagon attack.

Consolidation and transfer of these cases to any District other than New York or Washington would not promote the just and efficient conduct of these actions.

Further, the *Ashton* Plaintiffs recognize that if a MDL judge is to be appointed, Judge Robertson is a logical choice because of his extensive involvement and familiarity with the issues existing in the related *Burnett* and *Havlish* actions. Accordingly, the *Ashton* plaintiffs do not object to Judge Robertson's appointment as the MDL Judge for the September 11 terror actions. However, given the language of the Air Transportation and Stability Act, when considered along with the strong nexus of the actions to New York, this complex litigation may warrant a cross-designation of Judge Robertson as a Judge of the SDNY or the continued involvement of Judge Casey in the SDNY.

4

Dated: New York, New York
         September 15, 2003

                    Respectfully submitted,

                    KREINDLER & KREINDLER LLP

                    By: _James P. Kreindler_

                         James P. Kreindler
                         Marc S. Moller
                         Justin T. Green
                         Andrew J. Maloney
                         100 Park Avenue, 18th Floor
                         New York, New York  10017
                         (212) 687-8181
                         *Attorneys for Plaintiff*

#122077-1                          5

**MDL 1570**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

SEP 2 4 2003

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

---

IN RE SEPTEMBER 11, 2001 TERRORIST       **MDL NO. 1570**
ATTACKS LITIGATION

---

***HAVLISH* PLAINTIFFS' RESPONSE TO
THE SAUDI BINLADEN GROUP'S MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

The Plaintiffs/Class Representatives in *Havlish, et al. v. Bin Laden, et al.*, Civil

Action No. 02-CV-00305 pending in the United States District Court for the District of

Columbia ("the *Havlish* Plaintiffs"), hereby respond to the Saudi Binladen Group's

("SBG") Motion for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407 as follows:

SBG has filed a motion to consolidate at least fifteen separate actions brought by

victims of the September 11, 2001 attacks on America against the alleged terrorists that

planned, executed and supported those attacks. The *Havlish* action, filed on February 19,

2002, was the earliest of the terrorist suits that SBG seeks to consolidate. *Havlish* is

pending before U.S. District Judge James Robertson ("Judge Robertson") in the District

of Columbia. *Havlish* is a class action brought on behalf of the estates of those killed in

the September 11 attacks and members of their immediate families. Among those named

**Exhibit 6**

**OFFICIAL FILE COPY**

IMAGED SEP 25 '03

as defendants are Osama Bin Laden, Al Qaeda, the nations of Iran and Iraq, and a number of officials and ministries of the Iranian and Iraqi governments. The *Havlish* Plaintiffs have asserted a number of common law and statutory claims including violations of the Foreign Sovereign Immunities Act (the "FSIA"), the Torture Victim Protection Act, the Alien Tort Claims Act and 18 U.S.C. §2333. The *Havlish* Plaintiffs have completed service on all defendants in accordance with the Court's order for alternative service of process. The Court has entered default judgments against all defendants.

The *Havlish* Plaintiffs do not object to the relief sought by SBG -- namely, the consolidation of the September 11 Terrorist Attack Cases, transfer to the District of Columbia and assignment to Judge Robertson. In addition, the *Havlish* Plaintiffs support the position taken by plaintiffs in the *Burnett* and *Ashton* actions, i.e., the continued involvement of U.S. District Judge Richard C. Casey of the U.S. District Court for the Southern District of New York ("Judge Casey"), for the purpose of hearing discrete issues that, for one reason or another, are not be decided by Judge Robertson.[1] The *Havlish* Plaintiffs believe that assignment to Judge Robertson and continued participation of Judge Casey will facilitate the efficient administration of the consolidated cases.

---

[1] The *Havlish* plaintiffs do not completely agree with SBG's characterizations of the procedural posture and factual background of the various September 11 Terrorist Attack cases, especially SBG's mistaken contention that the September 11 Terrorist Attack cases allege a single conspiracy. However, since those mischaracterizations do not impact the position taken on the current motion, the *Havlish* Plaintiffs will defer argument relating to those assertions until a more appropriate stage of the litigation.

**Conclusion**

The *Havlish* Plaintiffs do not object to the transfer and consolidation sought by

SBG in its motion.  The *Havlish* Plaintiffs support the appointment of Judge Robertson as

the presiding judge for the consolidated action as well as the continued involvement of

Judge Casey.

Respectfully submitted,

Thomas E. Mellon, Jr., (Pa. Bar No. 16767)
John A. Corr, (Pa. Bar No. 52820)
Stephen A. Corr, (Pa. Bar No. 65266)
MELLON, WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
Telephone:  (215) 348-7700


Ronald L. Motley, (SC Bar No. 4123)
Jodi Wesbrook Flowers, (S.C. Bar No. 66300)
Anne McGinness Kearse, (S.C. Bar No. 15642)
MOTLEY RICE, LLC
28 Bridgeside Boulevard, P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone: 843-216-9000

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 3 0 2003

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE TERRORIST ATTACKS
ON SEPTEMBER 11, 2001                    MDL Docket No.:  1570

**RESPONSE OF INTERESTED PARTY FEDERAL PLAINTIFFS TO
THE SAUDI BINLADIN GROUP'S MOTION FOR TRANSFER
AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407(a)**

Plaintiffs in *Federal Insurance Co., et al. v. Al Qaida, et al.*, 03-CV-6978

(SDNY) [hereinafter, collectively referred to as "Interested Party Federal Plaintiffs"], by and

through their undersigned counsel, respectfully submit this Response to the Saudi Binladin

Group's Motion to the Judicial Panel on Multi District Litigation ("Judicial Panel" or "MDL") for

an Order pursuant to 28 U.S.C. § 1407(a) to transfer and consolidate certain lawsuits arising out

of the Attack of September 11, 2001 to Judge James Robertson of the United States District

Court for the District of Columbia for coordinated and consolidated pretrial proceedings.[1]

Interested Party Federal Plaintiffs assert that consolidation of their September 11

lawsuit for pretrial purposes is warranted to address complex factual and legal issues common to

---

[1]      **Interested Party Federal Plaintiffs request leave to participate in the oral argument
in this matter scheduled for November 20, 2003 in San Antonio, Texas.**

**OFFICIAL FILE COPY**                                **Exhibit 7**

IMAGED OCT 3 1 '03

all parties. Interested Party Federal Plaintiffs respectfully submit that for all pretrial proceedings,

Judge Robertson should be appointed as the MDL judge for the September 11 lawsuits.

Interested Party Federal Plaintiffs further submit, in view of the location of numerous witnesses

in the New York vicinity, that the United States District Court for the Southern District of New

York is the most appropriate forum to promote the just and efficient conduct of the September 11

actions. It therefore is requested that Judge Robertson should be cross designated as a judge of

the United States District Court for the Southern District of New York.

## I.    BACKGROUND

On September 11, 2001, nineteen (19) members of the Al Qaeda terrorist network

hijacked four (4) commercial airliners, and used those planes as weapons in a coordinated

terrorist attack on the North and South Towers of the World Trade Center in New York, New

York, the Pentagon in Arlington, Virginia, and United Airlines Flight 93, which crashed in

Shanksville, Pennsylvania (hereinafter, the "September 11[th] Attack" or "Attack"). The

September 11th Attack resulted in the tragic loss of several thousand lives, personal injuries to

countless other persons, and property damage on a catastrophic scale, including the complete

destruction of the World Trade Center Complex.

### 1.    September 11 Lawsuits Filed In The Southern District Of New York

In accordance with the Air Transportation Safety and System Stabilization Act

(Public Law 107 42 [H.R. 2926], 115 Stat. 230, enacted September 22, 2001; codified at 49

U.S.C. § 40101) (the "Act"), a number of lawsuits arising out of the September 11 Attack have

been filed in the SDNY. On November 14, 2001, *Smith, et. al. v. Islamic Emirate of

Afghanistan, et al.*, 01-CV-10132, 01-CV-10144, was filed and assigned to Judge Harold Baer of

the SDNY, seeking damages for, *inter alia*, wrongful death and survival claims as a result of the

Interested Party Federal Plaintiffs respectfully submit that the SDNY is the most appropriate forum for the September 11 lawsuits.

### III.   CONCLUSION

Interested Party Federal Plaintiffs respectfully submit this Response to the Saudi Binladin Group's Motion to the Judicial Panel on Multi-District Litigation for an Order pursuant to 28 U.S.C. § 1407(a) to transfer and consolidate all September 11 lawsuits to the United States District Court for the District of Columbia. Joint Plaintiffs assert that consolidation of the September 11 lawsuits is warranted to address complex factual and legal issues common to all parties. Interested Party Federal Plaintiffs further submit that the United States District Court for the Southern District of New York is the most appropriate forum to promote the just and efficient conduct of the September 11 actions. Finally, Interested Party Federal Plaintiffs respectfully submit that for all pretrial proceedings, Judge James Robertson should be appointed as the MDL judge for the September 11 lawsuits and be cross-designated as a judge of the United States District Court for the Southern District of New York.

Respectfully submitted,

COZEN O'CONNOR

Dated: _Oct. 28, 2003_        BY:_____

STEPHEN A. COZEN, ESQUIRE
ELLIOTT R. FELDMAN, ESQUIRE
SEAN P. CARTER, ESQUIRE
JOHN M. POPILOCK, ESQUIRE
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

Attorneys for Plaintiffs in _Federal Insurance Co., et al. v. Al Qaida, et al._, 03-CV-6978 (SDNY)

```
 1                    UNITED STATES OF AMERICA
             JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
 2
     IN RE TERRORIST ATTACKS ON  )
 3   SEPTEMBER 11, 2001,         )
                                 )   Docket No. 1570
 4                               )
                                 )   San Antonio, Texas
 5                               )   November 20, 2003
     _____ )
 6
                    TRANSCRIPT OF ORAL ARGUMENTS
 7   BEFORE THE HONORABLE JOHN F. KEENAN, THE HONORABLE JULIA SMITH
        GIBBONS, THE HONORABLE D. LOWELL JENSEN, THE HONORABLE J.
 8      FREDERICK MOTZ AND THE HONORABLE ROBERT L. MILLER, JR.
        MEMBERS OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
 9
     A P P E A R A N C E S:  COPY
10
     FOR SAUDI BIN LADIN GROUP, INC.:
11        James E. Gauch, Esquire
          Jones Day
12        51 Louisiana Avenue, N.W.
          Washington, D.C.  20001
13
     FOR HRH PRINCE TURKI AL-FAISAL BIN ABDULAZIZ AL-SAUD AND PRINCE
14   SULTAN BIN ABDULAZIA AL-SAUD:
          Michael K. Kellogg, Esquire
15        Kellogg, Huber, Hansen, Todd & Evans, PLLC
          Sumner Square
16        1615 M Street, N.W., Suite 400
          Washington, D.C.  20036-3209
17
     FOR MOHAMED AL-FAISAL AL-SAUD:
18        Louis R. Cohen, Esquire
          Wilmer, Cutler & Pickering
19        2445 M Street, N.W.
          Washington, D.C.  20037
20
     FOR THOMAS BURNETT, ET AL:
21        Jeffrey Thompson, Esquire
          Motley Rice LLC
22        28 Bridgeside Boulevard
          P.O. Box 1792
23        Mount Pleasant, SC  29465

24

25
```

```
 1   FOR FIONA HAVLISH, ET AL:
          Thomas E. Mellon, Jr., Esquire
 2        Mellon, Webster & Shelly
          87 North Broad Street
 3        Doylestown, PA  18901

 4   FOR KATHLEEN ASHTON, ET AL AND CHIEMI YORK, ET AL:
          James P. Kreindler, Esquire
 5        Kreindler & Kreindler
          100 Park Avenue, 18th Floor
 6        New York, NY  10017

 7   COURT REPORTER:
          CHRIS POAGE
 8        Official Court Reporter
          655 E. Durango Blvd., Rm. 314
 9        San Antonio, TX  78206
          Telephone:  (210) 472-4747
10        Email:  fedcr@ev1.net

11   Proceedings reported by stenotype, transcript produced by
     Computer-aided transcription.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 8

1          (Open court)

2               JUDGE KEENAN:  All right.  The next matter on the

3     calendar is MDL docket number 1570, In re Terrorist Attacks on

4     September 11th, 2001.  And first we have Mr. James Gauch who is

5     urging centralization in the District of the District of

6     Columbia before Judge Robertson.

7               Mr. Gauch, after everybody gets seated, you may

8     commence.

9               MR. GAUCH:  May it please the Court.  James Gauch on

10    behalf of the Saudi Bin Ladin Group.

11              I won't restate what's already in the papers.  As the

12    panel knows, there's very little disagreement that

13    consolidation is warranted here and that the parties are in

14    virtual agreement that if consolidation is appropriate, that

15    Judge Robertson is the appropriate transferee judge.

16              He's the only judge that's spent substantial time in

17    these cases since our papers were filed.  He has decided an

18    additional two motions to dismiss, those of Princes Sultan and

19    Turki.  He decided those last week, bringing the total to nine.

20    Their motions to dismiss he's already decided.  He's scheduled

21    an additional ten motions to dismiss for oral argument on

22    December 15th.  And there are others, including Saudi Bin Ladin

23    Group's that are currently in briefing within the Burnett

24    action.

25              In addition to the motions to dismiss, Judge

1    Robertson recently held a discovery conference in which he

2    addressed a variety of issues, including procedures for the

3    future issuance of letters rogatory or letters for judicial

4    assistance to foreign authorities to avoid duplication and to

5    give all parties the opportunity to comment.

6         He's also discussed with the parties using the

7    electronic docket system in DDC not only for -- as it's used

8    currently for the filing of pleadings, but also for filing and

9    service of all discovery requests, which will greatly ease the

10   burden on all the parties as this case proceeds to discovery.

11        There are two issues -- two primary issues that have

12   been raised with respect to transfer to Judge Robertson.  The

13   first is the potential issue of recusal, which Mr. Cohen,

14   Wilmer, Cutler, will address.  In our view that's a -- that is

15   a non-issue in light of the position he's expressed in his

16   papers, that Prince Mohamed will get substitute counsel, if

17   necessary, to avoid causing a recusal problem.

18        The second issue is whether or not Judge Robertson

19   should be cross-designated or specially designated as a judge

20   for the Southern District of New York for purposes of this

21   action.  Mr. Kellogg will address this in more detail.

22        But if I may briefly, first of all, there is no need

23   for a special designation in this case.  Judge Robertson -- the

24   issue that's been raised is a question of subject matter

25   jurisdiction.  Judge Robertson has already addressed that issue

```
 1   and determined that he has jurisdiction to hear these cases.

 2   He invited the parties to proceed with an interlocutory appeal

 3   or at least request one.  No party has appealed that decision.

 4          JUDGE MOTZ:  But the issue is still there.  I mean,

 5   it would -- the issue is there, or it could be made academic?

 6          MR. GAUCH:  The issue is there.  Well, with

 7   respect -- I don't think it would be made academic with a

 8   designation to the Southern District of New York.  The issue is

 9   still lurking there because it would only be a transfer for

10   pretrial purposes.

11          JUDGE MOTZ:  You're right.

12          MR. GAUCH:  And so that -- it'd be -- frankly, the

13   only way to get it resolved is through an appeal from Judge

14   Robertson's decision.

15          Second, a designation of Judge Robertson on the

16   Southern District of New York would substantially diminish the

17   benefits that might be realized by designation before him.

18   First of all, presumably if he's designated judge of the

19   Southern District of New York, the case would be docketed

20   there, which would eliminate the use of the DDC's electronic

21   docket system which Judge Robertson has worked fairly hard on,

22   to iron out the glitches in a case that involves several

23   hundred defendants.

24          JUDGE KEENAN:  Being from the Southern District of

25   New York I don't want you to think that we're back in the Stone
```

```
 1   Age.  I mean --
 2              MR. GAUCH:  Certainly not, Your Honor.
 3              JUDGE KEENAN:  We have electrical plugs up there
 4   and -- or all manners of wizardry that works too and --
 5              MR. GAUCH:  I think the issue is the --
 6              JUDGE KEENAN:  We create websites and all these other
 7   magical things.
 8              MR. GAUCH:  I think the issue is the ease with which
 9   Judge Robertson would be able to work with the clerk's office.
10   It would certainly be easier for him to do that in his -- in
11   his home district.  And also -- I see the red light is on but
12   --
13              JUDGE KEENAN:  You can finish.
14              MR. GAUCH:  Mr. Kellogg will address these issues in
15   more detail, but I think it also needlessly complicates the
16   decisional law if Judge Robertson is required to now sit as a
17   judge of the Southern District of New York and presumably
18   decide cases under that decisional law rather than the law he's
19   already applied to the -- to the nine motions he's decided and
20   the others that have been briefed.
21              Thank you.
22              JUDGE KEENAN:  Thank you.
23              All right.  Next we have Mr. Kellogg who also
24   supports centralization.
25              MR. KELLOGG:  Thank you, Judge Keenan.
```

1    May it please the Court.  Michael Kellogg on behalf

2    of Prince Sultan and Prince Turki who were both dismissed from

3    the Burnett action in a decision issued by Judge Robertson last

4    Friday.

5    I'm going to address solely the suggestion by the

6    asking plaintiffs that concerns about subject matter

7    jurisdiction in D.C. would justify asking the chief justice to

8    assign Judge Robertson temporarily as a judge in the Southern

9    District of New York.

10    Any concerns about the subject matter jurisdiction of

11    those D.C. cases should be irrelevant to the MDL decision, as

12    Judge Motz pointed out.  The MDL can send this case to any

13    district for pretrial proceedings.  It doesn't have to be a

14    district where there is original jurisdiction.  Subject matter

15    jurisdiction would be based on where the cases were filed,

16    where they were brought, which means that sending it for

17    pretrial proceedings to Southern District of New York would not

18    cure any defect in those cases brought in D.C., nor would it

19    add a defect to those brought in New York.

20    The best thing would be to have the issue decided in

21    one place.  And if it goes up to the D.C. Circuit and they

22    ultimately disagree with Judge Robertson and find that there's

23    only subject matter jurisdiction in the Southern District of

24    New York, then pursuant to 1631 Judge Robertson can transfer

25    the D.C. Circuit cases at that time in conclusion of pretrial

1    proceedings to New York without any loss of the proceedings to

2    that date.  So it's really not an issue that should concern --

3             JUDGE MOTZ:  Wait a second.  My mind was wondering.

4    The transfer by Judge Robertson would not cure the subject

5    matter jurisdiction problem?

6             MR. KELLOGG:  Well, under 1631 if there is a lack of

7    subject matter jurisdiction, the district court may transfer

8    the cases rather than simply dismissing --

9             JUDGE MOTZ:  1631.  Okay.  1631 would solve it even

10   if there was not subject matter jurisdiction?

11            MR. KELLOGG:  Yes.

12            And the final point is simply that, as Mr. Gauch

13   noted, the district court has already decided a number of

14   issues applying D.C. and D.C. Circuit law.  This Court has

15   recognized in In re Korean Airlines cases that expertise of the

16   D.C. Circuit in issues of national security, foreign relations,

17   and such, is an additional factor in favor of that forum.

18            JUDGE KEENAN:  All right.  Thank you, Mr. Kellogg.

19            Mr. Cohen.  And Mr. Cohen is arguing for defendant

20   Mohamed Al-Faisal Al-Saud, and he supports centralization

21   before Judge Robertson.

22            MR. COHEN:  Thank you, Your Honor.  Yes, Louis Cohen

23   of Wilmer, Cutler & Pickering for Prince Mohamed who supports

24   the motion for centralization before Judge Robertson.

25            I reserved time only to answer questions that the

1   panel might have arising out of the fact that before he went on

2   the bench nine years ago, Judge Robertson was a partner in our

3   firm.  And I'll say only one more thing, which is that we don't

4   think that that fact should bear on his recusal.

5            The issue, if any, is whether we would be required to

6   withdraw our appearance in the Ashton case that's now in New

7   York in order to eliminate a problem.  And I think it's only --

8   it's only a counsel withdrawal problem and not a problem with

9   respect to the designation of Judge Robertson.

10           JUDGE MOTZ:  Has Judge Robertson now disqualified

11  himself from other -- cases?

12           MR. COHEN:  He says -- he said in an order in the

13  Burnett case, from which Prince Mohamed has subsequently been

14  dismissed, and that it has been his practice to do so, but that

15  in view of the complexity and the investment of judicial time

16  even up to that -- the date of that order, which was several

17  months ago, he should solve the problem, he said, analytically

18  rather than by route.

19           And he went through the various mandatory

20  disqualification requirements and determined that he was not

21  required to disqualify himself.  And his disposition at that

22  time was to say that if Prince Mohamed were to file a motion to

23  dismiss, he would refer that motion to another judge in the --

24  in the DDC pursuant to that Court's assignment procedures.  And

25  if it were granted, there would be no problem.  And if it were

1  denied, he then said he would recuse himself from the entire
2  case.

3          But what I'm now suggesting is that if he continues
4  to feel, after these cases have been further developed and he
5  has invested a great deal more time, that he would be required
6  to do even that, Prince Mohamed's position is that counsel,
7  rather than the judge, should withdraw.  And we would withdraw
8  our notice of appearance, of course, naming substitute counsel
9  to represent Prince Mohamed.

10         JUDGE KEENAN:  And your -- I'm sorry.  And you
11 represent to us that this is all right with your client, that
12 he doesn't mind if you withdraw and he then choose other
13 counsel?  Is that what you're representing to us?

14         MR. COHEN:  Yes, Your Honor.  His position is that he
15 does not want to -- either to be any sort of obstacle to the
16 designation of Judge Robertson and the centralization before
17 Judge Robertson and that his case should, in all respects, be
18 handled along with all of the other cases.  Indeed, it would be
19 both impractical and unfair to him to have some sort of special
20 proceedings with respect to him.

21         And, therefore, the solution, which obviously I don't
22 think is ideal -- but our solution and his solution is that we
23 should withdraw.

24         JUDGE GIBBONS:  It seems to me that while it may be
25 the best course of action for your client to change counsel

1    given the situation you're presently in depending on what

2    happens, this recusal problem really exists because Judge

3    Robertson is being unusually scrupulous.  I mean, isn't --

4    there's not any other problem here other than his prior

5    affiliation with the firm.  I mean, no other connection.  I

6    mean, it seems to me he is there -- and he's well past the time

7    when most judges would cease recusing from cases in which their

8    former law firms were involved.  Is that -- do you agree with

9    that assessment or --

10        MR. COHEN:  Well, yes, I thought he was being quite

11    conservative.  He pointed out that he is still receiving

12    payments under our retirement plan, which although the payments

13    do not -- do not vary depending on any particular matter, do

14    depend on the survival of the firm.

15        JUDGE GIBBONS:  So there is in that sense some

16    financial connection.  It's not just that he has, say, a 401K

17    that he can no longer contribute to.  He's actually getting

18    money out of a retirement plan.

19        MR. COHEN:  He's actually getting money.  And as he

20    described it in his own words, by the way, which is attached to

21    the response we filed with the panel, he is getting an amount

22    that is -- that is fixed, that at least as of the time that he

23    issued that order was still continuing, and I believe he's

24    still receiving it.

25        JUDGE GIBBONS:  It would seem that if it was a

Exhibit 8

```
 1    retirement payment, he would continue to receive it, correct,
 2    if the firm survives, if the money's still there?
 3              MR. COHEN:  Yes.  I think that's -- I think that's
 4    right.  I'm getting to that age myself, and the fact is that
 5    it's not a payment for life.  But yes, it's not dependent on
 6    any possible thing that could happen in this case.
 7              JUDGE GIBBONS:  So it might be a little bit different
 8    for the typical situation in which somebody has, you know, no
 9    other connection with a former law firm?
10              MR. COHEN:  Yes.
11              JUDGE GIBBONS:  Okay.
12              JUDGE KEENAN:  Thank you.
13              All right.  Next we have Mr. Kreindler for plaintiffs
14    in two Southern District of New York actions.
15              MR. KREINDLER:  Yes.
16              JUDGE KEENAN:  Mr. Kreindler.
17              MR. KREINDLER:  Good morning, Your Honors.
18              JUDGE KEENAN:  Good morning.
19              MR. KREINDLER:  Your Honors, right now about
20    three-quarters of the 3,000 victims' families have filed suit
21    against the various terror defendants.  It's about 2,300 cases.
22    All those cases are filed in New York.  The Ashton plaintiffs
23    filed in New York.  Other plaintiffs filed in New York.  The 75
24    Havlish plaintiffs initially filed in Washington.  They became
25    part of the 1,500 Burnett plaintiffs who initially filed in
```

Exhibit 8

1    Washington.  And Burnett has filed the same action in New York
2    that it has filed in Washington.
3         The fact that virtually all of 2,300 plaintiffs filed
4    in New York is no accident given that 90 percent of the deaths
5    were in New York and 80 billion in property damage was in New
6    York.  And that fact is reflected in the ATSSA provision
7    mandating the Southern District of New York as the exclusive
8    jurisdiction for 9/11 cases.
9         As Your Honors know, a number of defendants in D.C.
10   before Judge Robertson made that same argument, that under the
11   ATSSA subject matter for jurisdiction could only lie in the
12   Southern District of New York.  And this morning Mr. Thompson
13   informed me that yet another defendant has made that motion.
14   And if those defendants prevail on appeal, we will be faced
15   with a situation where all the actions are pending in the
16   Southern District of New York.
17        Now, quite frankly, there's a certain tension in the
18   case.  I mean, it seemed to us at the beginning, and it still
19   seems now, that this is a New York case.  When we submitted our
20   papers we obviously recognized the fact that because of a
21   variety of circumstances, Judge Schwartz's unfortunate death,
22   that Judge Robertson has done more in Washington, D.C. than
23   Judge Schwartz or Judge Casey in terms of our New York cases.
24        But something happened within the last week that, to
25   us, changes the balance.  Your Honors have just heard from

Exhibit 8

1    three defendant defense attorneys.  Two of the three of them

2    represent important defendants who are no longer in the

3    Washington action.  They are now only defendants in New York.

4    Prince Mohamed, because of the Wilmer, Cutler issue, and last

5    Friday Prince Turki and Prince Sultan were dismissed from the

6    Washington action.

7            Quite frankly, as we weigh this balance of factors,

8    we think things have changed.  We think the better approach now

9    is simply to send the case to the Southern District of New

10   York.  With the absence of important defendants in Washington

11   who are defendants in New York, with the possibility that on

12   appeal the appellate court will find that the ATSSA does

13   mandate exclusive jurisdiction for all cases in New York, as

14   the language says, and the fact that all the plaintiffs are now

15   in New York, as we constantly think about balancing the

16   factors, and as productive as Judge Robertson has been in the

17   case, it just doesn't make sense to us to send the case to

18   anyplace other than the Southern District of New York where all

19   the important defendants, including Prince Turki and Prince

20   Sultan and Prince Mohamed are defendants, and where all the

21   plaintiffs have pending actions.

22            I recognize that this is a change from the papers we

23   submitted a month or so ago, but we think the dismissal of key

24   defendants from the Washington action, two-thirds of the

25   defendants' lawyers who just addressed Your Honors, causes a

1   change in the balance.

2           JUDGE JENSEN:  Is there any appeal of the order of

3   dismissal by Judge Robertson?

4           MR. KREINDLER:  I do not think it's appealed yet.

5           JUDGE JENSEN:  Yet.

6           MR. KREINDLER:  It may be.  And a motion was just

7   filed by yet another defendant, again alleging exclusive

8   jurisdiction in the Southern District of New York.  And while I

9   haven't seen those papers, Mr. Thompson, who has, told me about

10  it this morning, says that different arguments are raised.  And

11  it's possible Judge Robertson will -- as recognized, it was a

12  close call.  He said, if you look at the language alone, the

13  language is clear.  But he, for -- I won't get into his

14  reasoning now.  He kept jurisdiction.

15          But he might change his mind.  And it just doesn't

16  make sense to us, if everything is in New York, all actions, to

17  have the case pending outside the Southern District of New

18  York.

19          JUDGE MOTZ:  Now, when you say those rulings might be

20  appealed, if they're only individual defendants, they would

21  have to be -- has Judge Robertson entered the appropriate

22  interlocutory certification?

23          MR. KREINDLER:  I think he has not, Your Honor.

24          JUDGE MOTZ:  But he did on the related issue.  So he

25  might?

1           MR. KREINDLER:  He might.  It's still looming as an

2      issue.  And as we weigh the factors with that issue -- and

3      everyone in New York, we looked at it and said, you know,

4      let's -- let's keep it simple.  Everyone is in New York.  All

5      the plaintiffs are in New York.  All important defendants are

6      in New York.

7           JUDGE MOTZ:  Do you agree that at some appropriate

8      time the District of Columbia action could be transferred to

9      New York under 1631?  When they talk about want of jurisdiction

10     in 1631, does that include want of subject matter jurisdiction?

11          MR. KREINDLER:  I think it could, Your Honor.  But

12     while I haven't compared it word for word, the Burnett action

13     now in New York includes the same people who have filed in

14     Washington and the same allegations.  So while there are a

15     number of possibilities, transfer, at some point in time I

16     would expect that when there's two identical actions, same

17     plaintiffs, same defendants, same allegations, one of the

18     identical actions will wind up being dismissed.

19          So one way or another, whether it's through transfer

20     or the fact that the actions are identical and one may be

21     dismissed, we think we're looking at a situation where already

22     all plaintiffs and all defendants are in New York, and it could

23     well be that six months from now there will be no actions

24     outside of New York.

25          So given what's happened in the last week, we took a

1     look at it and said, why make it so complicated?  So we urge

2     Southern District of New York.

3              JUDGE MILLER:  Has anything been happening in the

4     Southern District of New York cases, or has everybody been

5     focussed on the cases before Judge Robertson?

6              MR. KREINDLER:  In New York we've been moving through

7     service.  If I may, Your Honor, just outline what did happen in

8     New York.  Ashton and then five, six other actions were filed.

9     Initially we thought they were going to go to Judge Hallerstein

10    who has the litigation against American, United Airlines and

11    the Port Authority.  And Judge Hallerstein said he's got enough

12    to do.

13             JUDGE KEENAN:  They're not related cases?

14             MR. KREINDLER:  Right.

15             JUDGE KEENAN:  Okay.  These are before Judge Casey,

16    and there's one case before Judge Daniels.  Go ahead, because

17    your time is up.

18             MR. KREINDLER:  Okay.  The answer is we've had two

19    conferences with Judge Casey, following Judge Schwartz's death,

20    and he said before he gets immersed in it, where are we on

21    consolidation in the MDL proceedings?  And we told him we'd

22    report to him as this progresses.  And we've had just those two

23    conferences with Judge Casey, Your Honor.

24             JUDGE KEENAN:  Thank you.

25             All right.  Mr. Kreindler, thank you very much.

1           MR. KREINDLER:   Thank you, Your Honors.

2           JUDGE KEENAN:   Thank you.

3           Next we have Mr. Thompson on behalf of plaintiffs in

4    the District of Columbia action.  And I'm not sure of your

5    position now so I won't attempt to state it.  But I do know you

6    represent some plaintiffs in the District of Columbia.  Go

7    ahead.

8           MR. THOMPSON:   Thank you, Your Honor.  Jeff Thompson

9    for the Burnett plaintiffs in the District of Columbia.  I

10   wanted to be available to answer questions.  I've only got a

11   few seconds.  But I want to confirm what Mr. Kreindler said

12   because it is unusual.  There is a parallel filing of an

13   action, Burnett II, if you will, in the Southern District of

14   New York, which is a mirror case to the southern -- to the

15   District of Columbia action.

16          The reason for that is -- I think directly addresses

17   the point that the movant made when they said that this

18   designation in the Southern District of New York and this

19   jurisdictional problem is irrelevant.  It is not irrelevant.

20   It's sufficiently troublesome to the lawyers representing 5,000

21   people that in the face of motions to dismiss, the uncertainty

22   of Judge Robertson's decision on that and the possibility of an

23   appeal that might delay the case for a period of time, a

24   difficult decision was made to file a parallel action in the

25   Southern District of New York to protect the rights in the

1    statute for these people.

2          As Mr. Kreindler pointed out, there has been a

3    subsequent motion to dismiss by another defendant, raising

4    essentially the same issue but with different arguments than

5    were made to the first.  In fact, basically taking issue with

6    Judge Robertson's decision and arguing that he got it wrong for

7    various reasons.

8          Judge Robertson on the record invited discussion of a

9    1292 certification on this issue of jurisdiction.  And the

10   question I think that Judge Motz asked is very important, is

11   does 1631 absolutely cure the problem?  It's clear that the

12   statute allows a district court, even after an appellate

13   decision, to move a court -- or move a case that was filed in

14   the wrong court for subject matter jurisdiction purposes to the

15   right court and preserve what's happened.

16         The problem with that is, Your Honor, is that

17   changing horses at some point down the line in the middle of a

18   stream is going to create problems about which circuit law

19   applies, onto difficult questions of law.  And although under

20   the MDL rule you have the power to send cases across district

21   and circuit lines, ultimately many of these substantive

22   questions are going to be decided based on sparse law, on new

23   statutes.

24         And so the 1631 cure, although it is there and the

25   statute clearly permits it, doesn't prevent possible problems

```
 1   in the future.
 2            So the cross-designation that was raised first by
 3   defendant Al Rajhi, and we have -- we have said is not a bad
 4   idea in others, is a way possibly to cure that problem now.  In
 5   other words, have Judge Robertson, who is clearly ahead of the
 6   game in terms of getting things done in this case, handle this
 7   matter.  But have him handle it as a specially designated judge
 8   sitting in the Southern District of New York which --
 9            JUDGE MOTZ:  Do you mind if I explore this for a
10   second?  I know --
11            JUDGE KEENAN:  Go ahead.
12            JUDGE MOTZ:  I mean, I'm persuaded now that the
13   designation would be premature, but I'm not -- it seems to me
14   that it would -- he doesn't have to be designated under the
15   rules.  I mean, he can -- we can send it to Hawaii if we wanted
16   to.
17            MR. THOMPSON:  That's correct, Your Honor.
18            JUDGE MOTZ:  And if he invested the time and the case
19   finally goes to trial, then the prudent thing for him to do
20   would be -- and if he was willing to do it -- would be to
21   transfer this case pursuant to 1631 to the southern district.
22   Then one of two things could happen, either a judge in the
23   southern district could pick it up, or he could then apply to
24   be designated, if he was willing to go to New York to try the
25   case -- the chief justice could acquaint him under an
```

Exhibit 8

1    intercircuit transfer so there wouldn't be lost investment of

2    time.

3              MR. THOMPSON:  And I think that's a scenario --

4              JUDGE MOTZ:  Is my analysis right?

5              MR. THOMPSON:  I think you're right, Your Honor.  But

6    the problem with that is that there are also other issues.  In

7    other words, some of the important pretrial motions that are

8    going to be decided are novel theories of law that are based on

9    circuit precedent that -- requiring a difficult decision.  And

10   Second Circuit and D.C. Circuit law is different.

11             JUDGE MOTZ:  They both might be stepping stones for

12   the Supreme Court.

13             MR. THOMPSON:  That's exactly right.  So it's not --

14   it's not an absolute cure.  It's not without problems where if

15   everything is in New York and it's being handled in New York

16   maybe by Judge Robertson, then the 1631 transfer -- it cures

17   the piece that hadn't been fixed before, but it doesn't create

18   other problems.  And that's our point.

19             And if I can answer any other questions, I'd be happy

20   to.

21             JUDGE KEENAN:  Thank you.

22             MR. THOMPSON:  Thank you.

23             MR. GAUCH:  Your Honor, in light of the plaintiffs

24   just may I have 30 seconds to reply?

25             JUDGE KEENAN:  Yes, when the argument's over.  We'll

```
1    be extremely generous.  We'll even give you a minute.

2              And finally, other than for the rebuttal argument by

3    Mr. Cherry -- excuse me.  Not by Mr. Cherry.  The rebuttal

4    argument's going to be offered -- we're going to hear Mr.

5    Mellon for plaintiffs in a District of Columbia action.

6              MR. MELLON:  Good morning, Your Honor.  Tom Mellon on

7    behalf of the Havlish plaintiffs, an action that was filed in

8    February of 2002 in Washington, D.C.

9              There are two points I wish to make in my minute, and

10   that is Mr. Kreindler is correct.  There's been a tension,

11   maybe even considerable tension, among the plaintiffs on this

12   issue of New York versus Washington and Washington versus New

13   York.  The only safe thing to do in terms of the plaintiffs'

14   position is New York as we see the current situation unfolding

15   before our eyes.

16             The second point I wish to make, Judge Miller, is

17   that, in fact, the only place there has been a hearing has been

18   the Southern District of New York on the merits.  In fact,

19   there's a rather lengthy opinion by Judge Baer addressing the

20   merits as it pertains to al-Qaeda activity with one of the

21   sovereign states, Iraq to be exact.  So we too have seen a

22   major change, and we too believe that the only safe thing to do

23   is to be in the Southern District of New York.  Thank you.

24             JUDGE KEENAN:  Thank you.

25             All right.  Mr. Gauch.
```

1           MR. GAUCH:  I'd just like to note that, as the

2    plaintiffs acknowledge, they have shifted their position

3    somewhat.  And I think if the panel looks at it, they'll see

4    that the major development that has caused them to shift is the

5    decision last Friday on two motions to dismiss where Judge

6    Robertson dismissed a couple of the deepest of the deep-pocket

7    defendants in this case.

8           The particular decisions that a judge has made is not

9    a relevant consideration, as this panel well knows, and that

10   should not be taken into account.  I would also note that in

11   regard to the Smith case that the last counsel alluded to, that

12   was a very much different case, a very narrow case.  It was

13   decided on default judgment, did not concern most of the issues

14   that Judge Robertson has tackled --

15          JUDGE KEENAN:  The Smith case being Judge Bear's

16   case, right?

17          MR. GAUCH:  Yes.

18          JUDGE KEENAN:  All right.

19          MR. GAUCH:  Thank you, Your Honor.

20          JUDGE KEENAN:  Okay.  Thank you.

21          All right.  We're going to reserve decision, and you

22   will receive an order promptly.

23   * * *

24          (End of requested transcript)

25

1                              -oOo-

2            I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.  I

4     further certify that the transcript fees format comply with

5     those prescribed by the Court and the Judicial Conference of

6     the United States.

7

8     Date:  11/25/2003

9                                    CHRIS POAGE
                                     OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Captured and Transcribed by Computer - Eclipse

Exhibit 8



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
LAS VEGAS
LONDON
LOS ANGELES

**COZEN
O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN FRANCISCO
SANTA FE
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

Elliott R. Feldman

Direct Phone 215.665.2071

November 20, 2003

**VIA FACSIMILE - 202-502-2888**

Michael J. Beck, Clerk of the Panel
Judicial Panel on Multi district Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20005

    Re:   MDL-1570 -- In Re:  Terrorist Attack on September 11, 2001

Dear Mr. Beck:

    Our firm represents 29 insurance companies which collectively have filed suit in Federal Insurance Co., et al v. Al Qaida, et al, 03-CV-6978 in the Southern District of New York.  We previously had filed a response of interested party Federal Insurance plaintiffs to the Saudi Bin Laden Group's Motion for Transfer and Consolidation, which is pending before the Court.  I had planned to appear personally in court in connection with the hearing and oral argument scheduled to take place on November 20, 2003, commencing at 9:30 AM.  Unfortunately, as a result of extensive weather problems in the Philadelphia area, both my original flight as well as a backup flight were substantially delayed, rendering it impossible to make connections and arrive in San Antonio in time to attend the hearing.  I, therefore, am providing the following written statement of our clients' position, which I respectfully would ask you to bring to the attention of the Judicial Panel hearing this matter prior to or during the hearing.

    By way of background, the 29 insurers that we represent have paid and reserve claims in excess of $4 billion as a result of World Trade Center losses, and the complaint that has been filed in the Southern District of New York seeks recovery for these subrogated claims, together with damages for hundreds of wrongful deaths and personal injury actions which have been assigned to our clients.  The action which we have filed easily is among the two largest actions, with respect to the magnitude of the damages being claimed, of any of the complaints which

IMAGED NOV 26 '03          OFFICIAL FILE COPY          **Exhibit 9**

Michael J. Beck
November 20, 2003
Page 2

have been filed in the actions referenced in the Motion for Transfer and Consolidation. There is
a serious question, however, concerning whether the Federal Insurance action is included within
the scope of the Saudi Bin Laden group's motion. The Federal Insurance action clearly was not
included when the motion initially was filed, since the Federal Insurance complaint had not been
filed at that time. In fact, we understand that briefing formally closed before the Federal
Insurance complaint was filed. Similarly, the Federal Insurance action clearly is not a tag-along
action as defined in Rule 1.1., since no order has been entered granting consolidation and
transfer. The exclusion of the Federal Insurance action from the actions which are sought to be
transferred and consolidated is corroborated by the fact that there recently was a conference call
arranged among counsel for the affected parties of which we were given no notice and in which
we were not asked to participate. Therefore, it is our position and understanding that any Order
which may be entered by the judicial panel would not affect the claims asserted in the Federal
Insurance complaint.

At the same time, it is important to note that since the filing of our response on October
28, serious conflicts of interest have arisen on the part of those attorneys representing the
plaintiffs in the actions which are sought to be consolidated (again, excluding the Federal
Insurance action) which would prevent those attorneys from purporting to represent the interests
of the Federal Insurance plaintiffs in any type of consolidated proceeding, whether in the form of
an executive committee or otherwise. Specifically, certain attorneys representing the plaintiffs in
the actions sought to be consolidated recently have articulated the position that their clients are
entitled to priority with respect to any recovery obtained from commonly sued defendants. This
would relegate our clients to second class citizenship which, in our view, has no basis in law or
in fact, and, indeed, is directly contravened by nothing less than United States constitutional
principles. Moreover, our clients are sophisticated Fortune 500 companies who have retained
our firm, on the basis of long standing attorney-client relationships, to prosecute their substantial
subrogation claims against 539 foreign defendants. Our clients do not consent to any
consolidation and transfer which could lead to any type of executive committee being appointed
with any impact on or influence over the prosecution of our clients' claims. Because of the
conflict of interest on the part of those attorneys who are claiming priority for their clients over
our clients, it is clear that consolidation and appointment of an executive committee would lead
to chaos, rather than judicial economies, with respect to the disparate interests of our clients in
relation to the plaintiffs in the other actions which are the subject of the pending motion.

In fact, while there is some overlap among the defendants which we have sued, and the
defendants named in the actions which are sought to be consolidated, there also are significant
differences. Our main focus is Saudi Arabia and Syria, two countries which, to our
understanding, have not been named as defendants in any of the actions sought to be
consolidated. Indeed, especially as to Saudi Arabia, lead counsel for the plaintiffs in the actions
which are sought to be consolidated has made it clear that under no circumstances would their
clients include Saudi Arabia in their complaints.

Our clients are not agreeable to having their resources utilized in any type of consolidated
proceeding with the likelihood that a significant portion of those resources would be utilized for
discovery purposes directed against claims which are not the primary focus of the Federal

Michael J. Beck
November 20, 2003
Page 3

---

Insurance complaint. Rather, our clients respectfully submit that their distinct claims, buttressed
by legal theories, such as civil RICO, which have no application to wrongful death and personal
injury claims, but which have every application to property damage subrogation claims, are not
properly consolidated with the actions which are the subject of the pending motion.

It is noteworthy that all of the insurance related claims arising out of the World Trade
Center attack are venued in the Southern District of New York, including first party insurance
claims and subrogation claims, not only against the terrorist defendants, but also against the so-
called domestic defendants. It is respectfully submitted that it makes eminent sense for all of the
insurance claims to be venued in the same judicial district. By way of illustration, after filing the
response of the Federal Insurance plaintiffs to the pending motion, we received notice from the
Wachtel firm on behalf of the Silverstein entities that to the extent that they have any uninsured
loss with respect to the finalization of their insurance claim, they may seek to have their interests
protected in the Federal Insurance Company lawsuit. This supports the maintenance of the
Federal Insurance action in the Southern District of New York so that it can be prosecuted in
conjunction with other insurance related actions similarly pending in the Southern District of
New York, all of which are distinct from the actions which are the subject of the pending motion
for transfer and consolidation before this Court.

To the extent that there is any commonality with respect to discovery issues, it is
respectfully submitted that the appointment of a discovery master is the most effective method
for addressing and coordinating common discovery in the separate World Trade Center actions
against terrorist organizations. Indeed, it is noteworthy that these actions have been filed only in
two districts, the Southern District of New York and the District of Columbia, which militates
against the consolidation and transfer of these actions. Moreover, on the issue of damages, there
is likely to be virtually no overlapping discovery since proof of our clients' subrogated property
damage and workers' compensation claims is entirely separate and distinct from the damage
issues arising from the wrongful death and personal injury actions filed in the actions sought to
be consolidated. Our clients' damages, in excess of $4 billion, will entail the production of
literally millions of documents and the presentation of potentially thousands of witnesses to
substantiate payments in over 3,800 separate and distinct insurance claims. None of these
matters can be handled, directly or indirectly, by any of the plaintiffs' attorneys in the actions
sought to be consolidated because of the conflict of interest which they have created by asserting
the position that their clients are entitled to priority of entitlement over our clients. Again, this
conflict of interest which they have asserted obviates the opportunity for any judicial economy
from the consolidation of our clients' actions with the other actions which are the subject of the
pending motion.

Since we have not been notified, formally or informally, that the pending motion to
transfer and consolidate will have any effect on our clients' claims, we are providing the above
information for advisory purposes only. We respectfully request the opportunity to submit a
Memorandum of Law and to have oral argument before any order is entered which affects the
Federal Insurance plaintiffs' claims.

Michael J. Beck
November 20, 2003
Page 4

Thank you for your kind consideration of this matter.

Respectfully submitted,

COZEN O'CONNOR

By:    Elliott R. Feldman

ERF/pmc
cc:  All Counsel of Record

PHILA1\1967790\1