**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD/FM) |

This document relates to:   *All actions*

## DECLARATION OF JERRY S. GOLDMAN

I, Jerry S. Goldman, Esquire, declare under penalty of perjury, as provided for by

28 U.S.C. § 1746, that the following statements are true and correct:

**Introduction**

1.      My name is Jerry S. Goldman and I have been a practicing attorney

in the State of New York since 1977. I am presently a shareholder of the law firm of

Anderson Kill, P.C. I am lead counsel for the Plaintiffs in the *O'Neill* litigations, and I am

a member of the Plaintiffs' Executive Committee for the Personal Injury and Death

Claims which operates with the Plaintiffs Executive Committee for Property Claims

(collectively, "PECs"). As such, I am fully familiar with the facts discussed herein and

attach as exhibits true and correct copies of the documents referenced herein.

2.      I submit this declaration in further support of Plaintiffs' Counsel's

Application for Attorneys' Fees and Expenses on behalf of all Plaintiffs' counsel[1] as

referenced herein and in the October 28, 2013 Report and Recommendation of this

Court ("Fee Application"). Specifically, on October 28, 2013, the Court issued a Report

---

[1]    Plaintiffs' counsel identified herein are lawyers at four (4) law firms representing plaintiffs –
namely, Motley Rice, LLC, Cozen O'Connor, P.C., Kreindler & Kreindler, LLP, and Anderson
Kill P.C.

and Recommendation awarding Plaintiffs' attorneys' fees and costs incurred as a result of Al Haramain's and Wa'el Jelaidan's production failures and the resulting sanctions litigation. Memorandum Decision and Report and Recommendation of October 28, 2013 (ECF No. 2789) ("October 28, 2013 Order").

3. On March 10, 2014, Robert T. Haefele, Esquire, an attorney with Motley Rice who serves on the Plaintiffs Executive Committees filed an amended declaration, along with a memorandum of law and exhibits, on behalf of all of the plaintiffs, in support of the Fee Application (collectively, "Amended Declaration").

4. On April 25, 2014, following a hearing, this Court entered an order directing that representatives of each of the four (4) law firms involved in the Fee Application tender a declaration in support of the Fee Application (ECF No. 2852) ("April Order"). Such order was supplemented by an endorsed letter order dated May 5, 2014 (ECF No. 2854) ("May Order").

5. I am, accordingly, incorporating herein, as if set forth at length, all affidavits, declarations and exhibits, both previously submitted and filed today, on behalf of all Plaintiffs' counsel in support of the relief sought in the Fee Application and am tendering this declaration pursuant to the April Order.

## Anderson Kill: Background

6. I am a graduate of New York University (University College, BA with Honors in Politics, 1973), Boston University School of Law (JD, 1976) and the Temple University School of Law (graduate program, LLM, Taxation, 1983).[2]

---

[2] A copy of my biography is attached hereto and incorporated herein as Exhibit "1" and is available at http://www.andersonkill.com/attorneysprofile.asp?id=5141.

2

nydocs1-1031246.5

7.     I am admitted to practice before the courts of the State of New York (1977), the Commonwealth of Massachusetts (1977), and the Commonwealth of Pennsylvania (1983), along with a variety of federal courts, including the United States District Courts in the Southern and Eastern Districts of New York, the Eastern District of Pennsylvania, and the District of Massachusetts.  I am also admitted to practice before the United States Courts of Appeals for the Second and Third Circuits, the United States Tax Court and the United States Supreme Court.

8.     After law school, from 1976-1982, I was an Assistant District Attorney and Senior Assistant District Attorney in the Office of the District Attorney, King's County (Brooklyn, New York), from 1976-1982, spending the last four (4) years in that office in the Economic Crime and Arson Bureau.[3]

9.     In the course of my experience in the District Attorney's Office, I handled numerous white collar and violent crime investigations, as well as trial and appellate work.

10.    After I left the District Attorney's Office, from 1982-2008) I was the sole shareholder of the Law Offices of Jerry S. Goldman & Associates, P.C., a New York professional corporation, which maintained offices in New York and Philadelphia.

11.    In the Spring of 2008 I joined the firm of Anderson Kill, P.C. ("Anderson Kill").[4]  Anderson Kill is a New York based multi-practice law firm with offices

---

[3]   While in law school, I clerked with another prosecutor's office assigned to in New York, with a criminal defense law firm, and, via a law school clinical program, with the Public Defender's office in Boston, Massachusetts (Roxbury Defenders).

[4]   The firm was formerly known as Anderson, Kill & Olick, P.C.

3

in six (6) other locations across the country.[5]  I am based in Anderson Kill's New York office.[6]

14. 12.    I have tried about fifty (50) cases to verdict before juries (about evenly divided before federal and state courts) and have argued about thirty (30) appeals (mainly federal).  I have also handled numerous bench trials and arbitrations.

13.    I have taught and written on a variety of topics.

14.    I am a member of the board of directors and an officer of the New York University Alumni Association; a board member (and former officer) of the Citizens Crime Commission of the Delaware Valley; and a board member of the New York City Dance Parade, Inc.  I am a member of the Federal Bar Association, Criminal Law Committee of the E.D. Pa., as well as the National Association of Criminal Defense Attorneys, and served, for about 25 years, on the Criminal Justice Panel for the E.D. Pa. and the Third Circuit.

15.    On March 10, 2004, the two O'Neill putative class actions were originally filed in the Southern District of New York on or about March 10, 2004.  Al Haramain was a defendant in one of those class actions.[7]  I was one of the attorneys of

---

[5]    Anderson Kill's other offices are located in California, Texas, Pennsylvania, New Jersey, Connecticut and Washington, D.C.

[6]    While I handled the O'Neill litigations at my former firm from 2004-2008, the only time and expenses relevant to the Fee Application relate to time and expenses incurred at Anderson Kill.

[7]    The O'Neill litigations consist of three (3) related lawsuits which have been consolidated as part of the MDL pending before the Southern District of New York (In re:  Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD/FM).  The cases involving Al Haramain (and the other defendants who are engaged in discovery before this Court) and involving certain sovereign defendants, both putative class actions, were always pending before this Court. The third O'Neill  case was filed by other counsel in the District of Columbia.  It was subsequently transferred to the SDNY.  I entered by appearance in that case, and assumed the role of lead counsel therein, sometime in 2004.

4

record when the O'Neill class action litigations were filed, and have remained lead counsel in all of the O'Neill litigations ever since. I was with the Law Offices of Jerry S. Goldman & Associates, P.C. when the class action litigations commenced; I continued as O'Neill lead counsel when I joined Anderson Kill in the Spring of 2008.

16. The vast majority of my personal practice is in New York and I spent most of my time in Anderson Kill's New York office.

17. As to the Fee Application, only two (2) Anderson Kill professionals are involved, myself- and a senior associate, Renee Hertzog, who was only involved in the work relating to the Fee Application (and was not involved in any of the underlying work relating to Al Haramain (USA)).

18. Ms. Hertzog is an associate with Anderson Kill. She has been a member of the bar in the State of New York since 2008 and is admitted to practice for the United States District Courts in the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second, Sixth and Eleventh Circuits as well as the United States Supreme Court. She graduated from the University of Vermont and then the Fordham University School of Law.[8]

19. My current standard hourly billing rate is $800/hour. Ms. Hertzog's rate is $490.00/hour. For purposes of this fee application, however, we are utilizing a billing rate for Ms. Hertzog which is actually lower than her standard rate ($475 vs. $490).

---

[8] A copy of Ms. Hertzog's biography is attached hereto and incorporated herein as Exhibit "2" and is available at http://www.andersonkill.com/attorneysprofile.asp?id=5014

20.     First year associates based in Anderson Kill's New York office are billed at a rate of $295/hour.  The highest billing rate in my firm is believed to be $1,025/hour.

21.     We utilize a billing system based upon contemporaneous kept time and expense records.  All attorneys, including the undersigned, are expected to record their time currently via a program called DTE Axiom, and then, on an at least a weekly "release it" into a central database which utilizes that information for billing, accounting and time management purposes.   The only time the undersigned does not enter time into the program immediately is when I am out of the office, such as in Court.  In those cases, I record the entries manually and input it into electronic system upon my return to the office.  Expense slips are either automatically recorded or inputted by the accounting staff.

## Anderson Kill Fee and Expenses Submission

22.     Anderson Kill represents *O'Neill* Plaintiffs in this litigation on a contingency fee basis.  As indicated above, two of the three *O'Neill* cases are putative class actions.

23.     The Fee Application Costs requests fees calculated based on the following hourly rates for Anderson Kill attorney:

(1)     Shareholders: $800 per hour; and

(2)     Associates: $475 per hour.

24.     The hourly rates for the attorneys identified above are consistent with the standard billing rates assigned to these attorneys for their services in complex

6

litigation matters.  These rates are also consistent with the rates charged by attorneys with comparable experience and expertise in National firms in the New York area.

25.    The hourly rates for the attorneys identified above are reasonable, as based on my personal knowledge of rates charged by other firms with attorneys of comparable experience and expertise, negotiations with clients, and discussions with other attorneys, in complex litigations such as this.

26.    The undersigned caused the time and expense entries relevant to the matter in question to be extracted from Anderson Kill's data bases by the accounting staff and then forwarded the information to Robert T. Haefele, Esquire who was charged with putting together a unified submission on behalf of all of the Plaintiffs.

27.    I have verified that the information set forth in the charts accompanying the Amended Declaration comported with the information which I had furnished to him from Anderson Kill.[9]  Accordingly, I specifically incorporate herein by reference that factual information and those exhibits.  I have, attached hereto and incorporated herein as Exhibit "3", the pertinent portions of Exhibits B and D of his submission which I represent are true and accurate.

28.    One of Mr. Kabat's complaints is purported over-staffing on the part of the Plaintiffs.  As the Court is aware, the case is managed, on behalf of almost 3000 families and a number of property insurance companies who collectively suffered extraordinary damages, by two Plaintiffs' Executive Committees.  Those Committees, each consisting of a number of attorneys from a variety of law firms, were appointed

---

[9]    I did notice, in re-reviewing the data, a typographical error.  There is an entry labeled February 3, 2014 which should have been labeled 2/1/13.  I assume it was a transcription error when it was re-formatted for Mr. Haefele's Amended Declaration.

7

pursuant to the order of the District Court. In fact, in many cases, there are several attorneys appointed from a single law firm. The District Court appointed a number of attorneys to the PECs in recognition of the magnitude of work which had to be performed. Defendants did not challenge that composition (nor did the Plaintiffs challenge the make-up of the Defendants' Executive Committee ("DEC")).

29.    I note that at the most recent conference held before the Magistrate, there were nine (9) defense counsel present - two (2) of whom participated by telephone and seven (7) of whom were in the courtroom. Of this group, the majority (five (5)) represented defendants who were not subject to the particular applications before the Court, and, on information and belief, none of those five were on the DEC. In comparison, the Plaintiffs only had five (5) attorneys present in Court, all of whom were on the PECs, and all of whom represented parties directly involved in the applications heard by the Court on that date.[10]

30.    Anderson Kill's presumptively reasonable fees are based upon the firms' billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the firms' billing rates.

31.    Anderson Kill had limited expenses related to the Fee Application, specifically a few transcript reproduction expenses as typically, Anderson Kill orders the transcripts of the various proceedings in this case on behalf of the PECs.

---

[10]    Mr. Kabat also raised, in his response to the Fee Application, certain questions in his response to entries relating to PEC meetings. As a matter of shorthand, I often label communications with counsel for the other PEC plaintiffs groups (i.e., non-*O'Neill* counsel) as meetings with PEC members, emails with PEC, telephone conference PEC, and the like, so as to distinguish it from internal communications or communications with non-PEC Plaintiffs' counsel  O'Neill counsel, and others.

8

32.     Mr. Kabat, in his papers, challenged the PECs costs, claiming that we should have purchased the transcripts at the 'standard' delivery terms as opposed to an expedited turn-around process, which was more costly.

33.     Southern District Court Reporters ("SDR")[11] have 5 different delivery and pricing models for transcripts [12]

(1)     *Realtime delivery*- Transcripts are instantly delivered to one's computer either in a courtroom or remotely;

(2)     *Nightly delivery:* Transcripts are delivered same day;

(3)     *Daily delivery*: Transcripts are delivered the morning following the proceeding;

(4)     *Expedited delivery- Seven Days:* Transcripts are delivered within seven or fourteen days of order;

(5)     *Two week delivery:* Transcripts are delivered within fourteen (14) days of order; and,

(6)     *Regular delivery:*  Transcripts are delivered within thirty (30) calendar days of order.  http://sdreporters.com/services.php

34.     There is a $0.66 per page difference when one orders them with a 14 day delivery schedule as compared with a standard (one month) delivery guarantee. There is an additional $0.66 per page differential when one orders them on an

---

[11]   SDR are the official court reporters for the United States District Court for the Southern District of New York.

[12]   Copies of the relevant pages from the SDR website are attached hereto and incorporated herein as Exhibit "4".

9

"expedited"" (one week) basis as opposed to a two (2) week delivery arrangement.
https://sdreporters.com/order.php

      35.    Most of the transcripts in this case are not particularly lengthy.

      36.    I typically order them for delivery in two (2) weeks.  I believe one
transcript in question was ordered on  an expedited (1 week) basis.

      37.    At times, the order does not actually reach the SDR until the day
after the proceedings,

      38.    The PECs operate on a collaborative basis with attorneys being
based in four (4) principal law firms, who, in turn, may have staff located around the
country collectively working on the matters.  It is important that all of the attorneys
involved in the litigation have accurate and timely information as to what transpired in
Court.

      39.    Often, as a result of a proceeding, follow up activities are required.
This was frequently the case with regard to the transcripts which were challenged as is
evident by a review of the data entries in between the various court dates.

      40.    Sometimes, there are disputes between the parties as to what the
Court directed at a hearing or order.  As a case in point, after the April 24, 2014
conference, Mr. Kabat disagreed with the PEC's interpretation of the Court's order.  This
resulted in multiple email communications between the parties and led to a telephone
conference with Chambers, with Mr. Kabat seeking a clarification of the Court's April
Order.. That was succeeded by Mr. Kabat's correspondence, Mr. Haefele's response,
and Mr. Kabat's reply, followed by the May Order.  Unfortunately, this all took place in

10

nydocs1-1031246.5

less than 14 days after the hearing.[13]  Had I ordered the transcript on a one week basis perhaps that would have been obviated.  I am re-evaluating our "standard" practice based upon this experience.

41.    It is accordingly respectfully submitted that a two week (or even a week) turn around for the transcripts is not unreasonable.

42.    Under separate cover, in accordance with the Court's scheduling order, I will submit time and expense records for February and March, 2013.

Executed:  May 15, 2014

/s/ Jerry S. Goldman
Jerry S. Goldman, Esq.

---

[13]   The SDR received the order the morning after the hearing in question.

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2014, a copy of the foregoing was filed electronically via PACER.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jerry S. Goldman*
Jerry S. Goldman