**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
*In Re* Terrorist Attacks on September 11, 2001     ) No. 03 MDL 1570 (GBD/FM)
                                                    )      ECF Case
_____)

**Defendant's Response to Plaintiffs' Affidavits and Time Records**

Defendant Al Haramain Islamic Foundation, Inc. (USA), through undersigned counsel,

and pursuant to this Court's Order (ECF No. 2852) (Apr. 25, 2014) respectfully submits its

Response to the Plaintiffs' affidavits and time records.

As set forth below, this Court should exercise its authority under 28 U.S.C. § 1927 and its

inherent powers, and should strike, or significantly reduce, the Plaintiffs' Fee Petition, because

Plaintiffs' counsel repeatedly and falsely represented, in both their fee petition filings and at the

April 24, 2014 motions hearing, that they kept contemporaneous time records.  Plaintiffs'

counsel knew or had to have known that (1) the attorneys at the Kreindler & Kreindler law firm

did <u>not</u> keep any time records; and (2) while the paralegal ("researcher") at the Kreindler &

Kreindler firm did keep time records, his records only listed the names of defendant(s), and did

<u>not</u> correspond to the narrative entries in the time records submitted to this Court for the Fee

Petition.

Further, the *O'Neill* counsel misrepresented to this Court that his office was in New York

(in order to justify a higher billing rate), even though the fee petition routinely recorded his travel

from Philadelphia to New York to attend this Court's status conferences.

Finally, the Motley Rice and Cozen O'Connor attorneys improperly "massaged" their

time records, thereby misrepresenting to this Court the billable time and the substance of the

work performed.

1

## I.    **Procedural Background.**

At the April 24, 2014 discovery conference, counsel for Defendant raised concerns about the fact that the Plaintiffs had not submitted separate affidavits for each law firm (instead submitting one affidavit from a Motley Rice attorney, who purported to have knowledge of the time billed by attorneys at three other law firms), and had further failed to provide this Court or the parties with their contemporaneous time records, as they were required to do under Second Circuit case law.  This Court noted that "what's implicit in the application, which is that summaries are based on contemporaneous time records," and that "Well, they've represented, and I have no reason to believe that they haven't verbatim copied electronically entries from time sheets or that their timekeeping system."  *See* Transcript, at 51: 10-11; 57: 18-22 (Apr. 24, 2014) (excerpts attached hereto as Exhibit A).

As a result, this Court ordered the Plaintiffs' counsel to submit separate affidavits from each of the four law firms regarding the time records for each firm, and to submit redacted time records for two months.  *See* Order (ECF No. 2852) (Apr. 25, 2014).

This Court also ruled from the bench that the Plaintiffs would <u>not</u> be getting the requested 50 percent lodestar enhancement:  "Let me save you some time.  There's not going to be a lodestar [enhancement]."  *See* Ex. A (Transcript), at 62: 6-7.  This Court expressed its concern with the Plaintiffs' demand for high hourly rates in the range of $750 to $800 per hour, including for attorneys whose offices were not located in New York.  *Id.* at 43: 16-22.  This Court also recognized that "the billing rate per hour, therefore, to a certain extent, it is a contrived number because if you're getting a percentage of a recovery, what rate you deem yourself to be billing at may not be an accurate rate."  *Id.* at 46: 9-12.

Plaintiffs' counsel filed their affidavits on May 15, 2014.  *See* Declaration of Jerry S.

Goldman (*O'Neill*) (ECF No. 2855) (May 15, 2014); James Kreindler, Affidavit in Support of Application for Attorneys' Fees and Expenses (*Ashton*) (ECF No. 2856) (May 15, 2014); Declarations of Stephen A. Cozen, Elaine M. Rinaldi, and J. Scott Tarbutton (*Federal Insurance*) (ECF Nos. 2857-2859) (May 15, 2014).

Plaintiffs' counsel submitted their time records for the months of February and March 2013.  *See Ashton*, Kreindler & Kreindler time records (May 22, 2014) (attached hereto as Exhibit B); *Burnett*, Motley Rice time records (May 22, 2014) (attached hereto as Exhibit C); *Federal Insurance*, Cozen O'Connor time records (May 22, 2014) (attached hereto as Exhibit D); *O'Neill*, Anderson Kill time records (May 21, 2014) (attached hereto as Exhibit E).

## II.   This Court Should Strike, or Substantially Reduce, Plaintiffs' Fee Petition.

Based upon Plaintiffs' counsels' own affidavits and time records, this Court should strike, or substantially reduce, the Plaintiffs' Fee Petition, because their counsel falsely represented to this Court that their Fee Petition was based on *contemporaneous* time records, when they knew, or should have known, that the attorneys at the Kreindler & Kreindler law firm (*Ashton* plaintiffs) did <u>not</u> record their time, and that while the paralegal at that firm did record his time, he only recorded the name of the defendant for each time entry, and did <u>not</u> record the substance of his time entries, contrary to the submissions in the Fee Petition.

Further, counsel for the *O'Neill* plaintiffs, in an attempt to justify obtaining an hourly rate of $800, even though he practices in Philadelphia, stated in his affidavit that "I am based in Anderson Kill's New York office."  *See* Goldman Dec., at ¶ 11 (ECF No. 2855) (May 15, 2014). However, in the Fee Petition, he sought recovery for multiple trips from Philadelphia to New York in order to attend the status conferences in this court, completely contradicting the assertion in his affidavit as to the location of his office.

Finally, counsel for the *Burnett* and *Federal Insurance* plaintiffs improperly "massaged" their time records in the Fee Petition, in order to misrepresent their hours and to enhance the substantive level of work performed by the attorneys.

These misrepresentations have forced this Court and Defendant's counsel to expend substantial time in reviewing Plaintiffs' Fee Petition, in order to identify these serious problems.

Taken together, these misrepresentations justify the sanction of striking Plaintiffs' Fee Petition entirely.  In the alternative, these misrepresentations justify substantially reducing the Fee Petition, over and beyond the reductions already required to account for (1) the lack of success in prevailing on only one of three discrete issues and in not obtaining either a default judgment or adverse inference instruction; (2) the excessive billing and overstaffing; (3) the vague or incomplete time records; (4) the improper demand for inflated hourly rates; and (5) the improper demand for a 50 percent lodestar enhancement, contrary to Supreme Court precedent.

### III.   Standard of Review.

This Court has the authority, under 28 U.S.C. § 1927 and its inherent powers, to sanction counsel for engaging in litigation abuse, which includes making material misrepresentations to the Court and to other parties.  The Second Circuit has held that the "imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith," and that inherent power sanctions are appropriate "if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes.  Conduct is entirely without color when it lacks any legal or factual basis."  *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336-38 (2d Cir. 1999)) (upholding imposition of sanctions on attorney).

Section 1927 provides that:  "Any attorney … who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The Second

Circuit has held that the "showing of bad faith required to support sanctions under 28 U.S.C. §

1927 is 'similar to that necessary to invoke the court's inherent power,'" and the only difference

between the two sanctions is that "'an award made under the court's inherent power may be

made against an attorney, a party, or both.'"  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138,

143-44 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986))

(upholding imposition of sanctions on law firm and its attorneys).

## IV.    Plaintiffs' Counsel Misrepresented to This Court That the Kreindler & Kreindler Firm Had Contemporaneous Time Records.

Plaintiffs repeatedly insisted to this Court that their Fee Petition was based upon

contemporaneous time records:

> Attached hereto as Exhibits B and C are billing entries indicating the amount and value of time spent by each attorney and one investigative researcher for work performed . . . . The summaries were based on **contemporaneous data maintained by each firm** and that include only time and expenses related to the sanctioned discovery disputes and fee applications versus Al Haramain and Wa'el Jelaidan.

*See* Declaration of Robert Haefele, at ¶ 15 (ECF No. 2831) (Jan. 24, 2014) (emphasis added).

In response, Defendant's Opposition explained that the Fee Petition did not include

contemporaneous time records, as expressly required under Second Circuit case law.  *See* Def.

Opp., at 6-7 (ECF No. 2835) (Feb. 14, 2014) (citing *N.Y. State Ass'n for Retarded Children, Inc.*

*v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) ("contemporaneous time records are a prerequisite

for attorney's fees in this Circuit"); *Shamir v. Anchor-International Found., Inc.*, No. 10 Civ.

725 (PGG), 2013 WL 4008635, at *13-14 (S.D.N.Y. July 30, 2013) (absence of sworn affidavit

as to time records precludes any fee award); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d

504, 508 (S.D.N.Y. 2012) ("the Court gives significant weight to the retainer agreements");

*Adeleke v. McNary*, No. 92 Civ. 8440 (CSH), 1994 WL 30463, at *2 (S.D.N.Y. Jan. 28, 1994)

("The usual practice is for attorneys to execute affidavits stating that contemporaneous time

records were kept, and attaching copies of the contemporaneous records as exhibits."); *Carrero*

*v. N.Y. City Housing Auth.*, 685 F. Supp. 904, 908-09 (S.D.N.Y. 1988), *aff'd in relevant part*,

890 F.2d 569, 582 (2d Cir. 1989) (both affidavits and actual records required; "penalties have

been imposed for failure to provide the actual records")).

Plaintiffs' Reply Brief reiterated their claim that the spreadsheets (revised for minute

reductions for duplicative entries), were, in fact, based upon contemporaneous time records:

> Attached hereto as Exhibits B and C are revised billing entries indicating the amount and
> value of time incurred by each firm, attorney and one investigative researcher . . . . The
> summaries were prepared based on **contemporaneous data maintained by each firm**
> and that include only time and expenses related to the sanctioned discovery disputes and
> fee applications versus Al Haramain and Wa'el Jelaidan.

*See* Amended Declaration of Robert Haefele, at ¶ 15 (ECF No. 2842) (Mar. 10, 2014) (emphasis

added).

At the April 24 conference, this Court agreed with Defendant that the Plaintiffs were

required to turn over their contemporaneous time records, and allowed for examination of time

records for two months.  This Court also required the other three law firms to submit their own

affidavits vouching as to the time records, instead of allowing all four law firms to rely upon an

affidavit from one attorney.  At no time during the April 24 hearing did any attorney advise this

Court that one of the law firms did not maintain contemporaneous time records.

In response, the Kreindler & Kreindler firm belatedly admitted that their attorneys do <u>not</u>

maintain contemporaneous time records, so that the fee petition was improperly based on

reconstructed records, and that only their paralegal (the "investigator") recorded his time:

6

> **Our application setting out the time we devoted to plaintiffs' motion is based on Court Records, email traffic and the monthly contemporaneous time records of John Fawcett**, our investigator and researcher.  These records were used to support the Kreindler & Kreindler portion of Plaintiffs' application contained in Exhibit B and Exhibit C of the Amended Declaration of Robert T. Haefele . . .

*See* J. Kreindler, Affidavit in Support of Application for Attorneys' Fees and Expenses, at ¶ 3 (ECF No. 2856) (May 15, 2014) (emphasis added).

Recent decisions from this Court and others in this Circuit have reiterated long-standing Second Circuit law – the failure to produce contemporaneous time records, particularly where they have been demanded, and relying instead on "reconstructed" time records – is fatal to the fee petition.  In *Prince of Peace*, this Court stated that "a party seeking an award of attorney's fees must submit contemporaneous time records …. not the sort of post-hoc cobbling together of notes, emails and calendars that courts have disapproved of in the past."  *Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, No. 7 Civ. 349 (LAP)(FM), 2014 WL 793084, at *6 (S.D.N.Y. Feb. 28, 2014); *see also Ray v. Debt Free Nation, Inc.*, No. 11 Civ. 7316 (AT), 2014 WL 957023, at *5 (S.D.N.Y. Mar. 11, 2014) ("A fee application that is not supported by evidence of 'contemporaneous time records' … should normally be denied") (quoting *Carey*, 711 F.2d at 1154) (approving denial of fee petition); *Cole-Hoover v. N.Y. Dept. of Correctional Servs.*, No. 02-CV-00826(M), 2014 WL 576176, at *6 (W.D.N.Y. Feb. 12, 2014) ("The long-established rule in this Circuit is that an application for court-awarded attorneys' fees on federal claims *must* be based on contemporaneous time records. . . . That rule was meant to have teeth."); *id.* at *7 ("his failure to maintain contemporaneous time records would have prevented a fee award" and "constituted a failure to properly represent plaintiff's interests").  Here, this Court would be justified in striking the Fee Petition for failure to have contemporaneous time records.

Further, when the Kreindler & Kreindler firm submitted its time records for Mr. Fawcett (the paralegal), those records stated, for each day, nothing other than "al Haramain" or "Jel[aidan]/Rabita." *See* Ex. B, at 2. Yet, the Plaintiffs' Fee Petition gave elaborate descriptions for Mr. Fawcett's time during those two months, such as "Identification of deficiencies in Defendant's document production" and "Factual backup to PEC's Reply to Al Haramain's Opposition to PEC Motion to Compel." *See* Pls. Revised Fee Petition, Exhibit B, at 67 (ECF No. 2842-2) (Mar. 10, 2014). This makes clear that the Fee Petition improperly reconstructed or enhanced the description of Mr. Fawcett's time in an attempt to bolster the Fee Petition.

This is not an isolated phenomenon for this law firm. Magistrate Judge Fox of this Court recently found that a senior attorney at that same firm, who also handles aviation litigation, similarly did <u>not</u> keep contemporaneous time records:

> Savarese hired the law firm Kreindler & Kreindler LLP ("Kreindler" or "the firm") to investigate the plane crash, institute litigation and negotiate settlements. . . .
>
> Brian J. Alexander, Esq. ("Alexander"), counsel to the plaintiffs, submitted an affidavit … and a supplemental affidavit … detailing the legal services Kreindler rendered to the plaintiff and its fees. . . . Alexander attached a copy of the retainer agreement to his September 2009 affidavit. Pursuant to this agreement, Kreindler will receive, out of the eventual recovery, "an amount equal to 30% of the net recovery (gross recovery less costs and expenses of prosecuting the case), whether said settlement is achieved by suit, settlement, or otherwise."
>
> **The Court inquired whether Alexander kept contemporaneous time records, in support of his request for attorneys' fees. Alexander responded that he did not keep contemporaneous time records for contingency fee cases.**

*Savarese v. Cirrus Design Corp.*, No. 09 Civ. 1911(JGK)(KNF), 2010 WL 532289, at *2-*3 (S.D.N.Y. Feb. 8, 2010) (emphasis added), *aff'd*, 2010 WL 815027 (S.D.N.Y. Mar. 9, 2010).

Moreover, the attorneys for the other plaintiffs, in drafting the Fee Petition that was filed on January 24, 2014, in preparing the revised version submitted on March 10, 2014, and in

preparing for and arguing at the April 24 conference, must have known that the Kreindler &

Kreindler attorneys did <u>not</u> record their time and that the narrative description of Mr. Fawcett's

time records was reconstructed after the fact. Yet, at no time until last week did Plaintiffs admit

that their Fee Petition and their other representations to this Court were false – the Fee Petition

was not based on contemporaneous time records.

Therefore, this Court would be justified in exercising its authority, under both Section

1927 and its inherent power, to strike the Plaintiffs' Fee Petition for repeatedly and falsely

representing that the Fee Petition – both the original version and the revised version – was based

on contemporaneous time records when the attorneys at the Kreindler & Kreindler law firm did

not record their time at all, and the description of the paralegal's time was reconstructed after the

fact. Here, the attorneys "acted in bad faith" by knowingly misrepresenting their time records to

this Court, and did so without "any legal or factual basis," so that their conduct was motivated by

improper purposes – to get a windfall from the defendant. *Wolters Kluwer*, 564 F.3d at 114

(imposing sanctions under court's inherent powers). Plaintiffs' counsels' conduct has also

"multiplie[d] the proceedings … unreasonably and vexatiously," *see* 28 U.S.C. § 1927, through

forcing this Court and Defendant to expend excessive time and effort in addressing the Fee

Petition, so that sanctions, including "the excess costs, expenses, and attorneys' fees reasonably

incurred because of such conduct," *id.*, are warranted.

The Second Circuit has upheld the imposition of sanctions where, as here, the attorney

improperly made misrepresentations to the court or to opposing counsel, or otherwise

unreasonably multiplied the proceedings. In *Enmon*, the Second Circuit upheld sanctions under

both Section 1927 and the court's inherent powers, where the law firm failed to disclose critical

information to the Court, which was a "misrepresentation by omission." *Enmon*, 675 F.3d at

144.  The Second Circuit further upheld the district court's requiring the law firm to pay the

attorneys' fees incurred by the opposing party:

> **Under these circumstances, we also see no error in the District Court's order
> requiring Arnold & Itkin to pay for the costs associated with defending the
> sanctions motion itself**.  The fact that it denied the sanctions motion in part did not
> prevent the District Court from imposing the full cost of litigating the motion, which, if
> not completely successful on all the grounds urged by Prospect, was nevertheless well
> founded.  In challenging the fee amount, Arnold & Itkin observes that a very large
> portion of the fees related to litigating the sanctions motion itself (roughly $260,000 of
> the $354,559 awarded).  But the high cost of preparing the sanctions motion is
> attributable largely to Arnold & Itkin's extraordinary pattern of misrepresentations and
> unreasonable litigation in this case.  *Cf. In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109,
> 120 (2d Cir. 2000) ("relevant to our [sanctions] inquiry is the fact that [appellant's]
> behavior is repetitive.").

*Enmon*, 675 F.3d at 148-49 (emphasis added) (brackets in original).

In *Wolters Kluwer*, the Second Circuit held that the district court properly exercised its

inherent power in imposing sanctions upon an attorney (Peters), based upon "conduct that it

found to have been undertaken in bad faith, without color of law, and for an improper purpose."

*Wolters Kluwer*, 564 F.3d at 116; *see also Peters v. Committee on Grievances for the U.S.*

*District Court for the Southern District of N.Y.*, __ F.3d __, 2014 WL 1327951 (2d Cir. Apr. 4,

2014) (*per curiam*).

Judge Sullivan recently held that sanctions under Section 1927 were warranted where, as

here, the attorney made repeated misrepresentations to the Court:

> Reichman had ample time, adequate notice, and multiple opportunities to change course
> and abandon his utterly groundless legal claims.  He steadfastly refused to do so.  Such
> persistent conduct can only be explained by willful blindness, and such willful blindness
> in turn persuades the Court that Reichman has acted in bad faith.

*16 Casa Duse, LLC v. Merkin*, No 12 Civ. 3492 (RJS), 2013 WL 5510770, at *20 (S.D.N.Y.

Sept. 27, 2013).  Hence Judge Sullivan imposed Section 1927 sanctions on the attorney, by

allowing the opposing party to obtain its attorneys' fees and costs "reasonably incurred because of Reichman's conduct."  *Id.* at *21.

Here, this Court should find that the Plaintiffs' Fee Petition – both the original and the revised version – made misrepresentations to this Court by claiming that it was based on contemporaneous time records, when Plaintiffs' counsel knew or should have known that the Kreindler firm did not maintain any time records for its attorneys, and that the Kreindler firm's paralegal's time records were reconstructed after the fact in order to provide a narrative description of the work performed.  These misrepresentations justify striking the Plaintiffs' Fee Petition entirely, under both Section 1927 and this Court's inherent powers.

## V.       Plaintiffs' Counsel Misrepresented to This Court That Mr. Goldman's Office was in New York, in an Attempt to Justify Higher Rates for Him.

This Court should further find that the Plaintiffs made misrepresentations to this Court regarding the location of Mr. Goldman's office, in an attempt to circumvent the likelihood that this Court would not allow "Wall Street" rates for attorneys practicing in Philadelphia or South Carolina.  *See* Ex. A (Tr.), at 43: 19-22.  Mr. Goldman, lead attorney for the *O'Neill* plaintiffs, submitted an affidavit to this Court, which stated that:  "I am based in Anderson Kill's New York office."  *See* Declaration of Jerry S. Goldman, at ¶ 11 (ECF No. 2855) (May 15, 2014).

However, the Plaintiffs' Fee Petition – both original and revised versions – had multiple entries for Mr. Goldman's travel from Philadelphia – where his primary office is located – to New York, for the purpose of attending this Court's status conferences.  *See* Pls. Fee Petition, Ex. B, at 2 ("Travel to NY with Cozen team … Travel back (trains delayed due to weather)") (ECF No. 2831-5) (Jan. 24, 2014); *id.* at 3 ("Travel to NYC" and "Return to PHL [Philadelphia]"); *id.* at 4 ("Travel to NY" and "Travel back to PHL"); Pls. Revised Fee Petition, Ex. B, at 70 ("Travel to NY with Cozen team … Travel back (trains delayed due to weather)")

(ECF No. 2842-2) (Mar. 10, 2014); *id.* at 71 ("Travel to NYC" and "Return to PHL"); *id.* at 72 ("Travel to NY" and "Travel back to PHL").

There would be no reason for Mr. Goldman to record time for round-trip travel from Philadelphia to New York if his office was in New York, as his affidavit now claims.  Therefore, this Court should reject the Plaintiffs' attempt to misrepresent the location of his office in order to obtain "Wall Street" rates for work done in Philadelphia, and should find that this misrepresentation further justifies striking Plaintiffs' Fee Petition.

**VI.    Plaintiffs' Counsel Misrepresented to This Court the Time Recorded by Attorneys from Both Motley Rice and Cozen O'Connor.**

Finally, based upon the review of the two months of contemporaneous time records that were produced on May 22, 2014, it is clear that Plaintiffs' counsel made material misrepresentations to this Court regarding the time recorded by attorneys from both Motley Rice (*Burnett* plaintiffs) and Cozen O'Connor (*Federal Insurance* plaintiffs).

For example, the two Cozen O'Connor attorneys who attended this Court's March 19, 2013 discovery conference, in their "contemporaneous" time records, recorded different time durations for that conference and the meetings that plaintiffs' counsel had before and after the conference, yet the Fee Petition misrepresented their time:

| Event (Mar. 19, 2013) | Carter, Time Records | Carter, Fee Petition | Tarbutton, Time Records | Tarbutton, Fee Petition |
|---|---|---|---|---|
| Pre-hearing conference | 1.50 | 1.50 | 1.00 | 1.50 (+0.50) |
| Hearing | 2.50 | 2.00 | 1.00 | 2.00 (+1.00) |
| Post-hearing conference | 2.50 | 2.50 | 1.50 | 2.50 (+1.00) |
| Total | 6.50 | 6.00 | 3.50 | 6.00 (+2.50) |

*Compare* Ex. D, at 11-12 (time records) *with* Pls. Amended Fee Petition, Ex. B, at 49-50 (ECF No. 2842-2) (Mar. 10, 2014).  This comparison is based on the total time recorded, before plaintiffs allocated half of that time to Al Haramain USA and half of that time to Wael Jelaidan. Also, since Mr. Tarbutton traveled with Mr. Carter from Philadelphia to New York, *see* Ex. D, at 12, it was not the case that he somehow arrived later or left earlier than did Mr. Carter.

Yet, the Fee Petition misrepresented Mr. Tarbutton's time through increasing it by *over 70 percent*, in an attempt to justify Mr. Carter's greater "hours" for the exact same events.

Since Defendant has access to time records for only two months, this Court and Defendant are unable to determine whether similar misrepresentations were made by this firm in an attempt to justify the higher hours allegedly incurred by a senior attorney.

Similarly, review of the two months of records provided by the Motley Rice firm reveals misrepresentations made regarding the attorney time and work.  For example, the Fee Petition, for March 19, 2013, has an entry for an associate (Mr. Frutig), stating that:  "Attend *and argue* at hearing on sanctions motion."  *See* Pls. Amended Fee Petition, Ex. B, at 25 (ECF No. 2842-2) (Mar. 10, 2014) (emphasis added).  However, the "contemporaneous" records that this firm submitted instead state for this associate:  "Attend hearing on sanctions motion."  *See* Ex. C, at 8. Of course, this associate did not "argue" the sanctions motion.  In other words, the Fee Petition did <u>not</u> reflect the supposed contemporaneous records, since the records were massaged to "enhance" this associate's role in order to justify fees, thereby misleading the Court.

Taken together, these material misrepresentations in both the Cozen O'Connor and Motley Rice time records further justify this Court striking the Plaintiffs' Fee Petition, or drastically reducing it beyond the reductions already required to account for their limited success, their excessive billing and overstaffing, their vague and incomplete time records, their

13

improper demand for inflated hourly rates, and their improper demand for a 50 percent lodestar enhancement, contrary to Supreme Court precedent.

**VII.**   **Conclusion.**

For the foregoing reasons, Defendant respectfully requests that this Court strike Plaintiffs' Fee Petition, and grant other relief as warranted under both Section 1927 and the Court's inherent powers.

Respectfully submitted,

*/s/ Lynne Bernabei*

_____
Lynne Bernabei (LB2489)
Alan R. Kabat (AK7194)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942
*Attorneys for Al Haramain Islamic Foundation, Inc. (USA)*

DATED:  May 29, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2014, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____
Alan R. Kabat