# Exhibit G

## Carter, Sean

| | |
|---|---|
| **From:** | Kry, Robert <rkry@mololamken.com> |
| **Sent:** | Wednesday, February 26, 2014 7:16 PM |
| **To:** | Carter, Sean |
| **Cc:** | WTC[mm@martinmcmahonlaw.com]; Nitz, Eric; 'William Fox' |
| **Subject:** | Dallah Avco meet and confer |
| **Attachments:** | DA Production Vol. 2 2014-02-26.zip |

Sean,

Thank you for speaking with us the other Friday. This email addresses various issues that we agreed to follow up on after the call.

We discussed the numbering on the privilege log. Please be advised that we plan to use the numbering on the revised February 13, 2014, log going forward, rather than the numbering on the original log. We also confirm, as discussed at the meeting, that the reference to an "employment contract" in footnote 1 of Dallah Avco's objections was a typographical error.

You raised the issue of the date on the 2001 PCA contract containing the confidentiality clause and the fact that it post-dates some of the documents our client is withholding. As we explained on the call, our client reports that the particular contract excerpt we produced is one of a series of contracts between the PCA and Dallah Avco with similar confidentiality language. Our client has not yet been able to locate the earlier contracts, but if we find them, we will produce those confidentiality clauses as well.

You also requested that we produce the entire contract containing the confidentiality clause. Our client's position is that the remainder of the contract is itself covered by the confidentiality clause and the Penal Law. Our disclosure of the confidentiality clause did not waive the protections applicable to the remaining provisions. We can report, however, that we have reviewed the remaining provisions and that none of them provides any exceptions or limitations to the confidentiality obligation imposed by Article 3. (We are attaching a production volume that includes both the English excerpt we previously provided as well as an Arabic version of the same text.)

You asked whether Dallah Avco had invoked the confidentiality provision's procedures for obtaining permission from the PCA to disclose the documents. As we stated on the call, Dallah Avco did indeed submit a letter to the PCA last month requesting permission to disclose the documents. The attached production volume includes the original letter in Arabic as well as a certified English translation. Our client has not received any response to the letter at this time. Please be advised, however, that our client reports that a PCA official informally advised our client's general counsel at the end of last October that the PCA would not permit disclosure.

You asked whether Dallah Avco was withholding documents that it had generated internally rather than received from the PCA. We confirm that the privilege log does include both categories of documents and draw your attention to the second paragraph of Article 3, which states that "The Contractor shall not, without the prior written approval of the Government, disclose to any third party any information developed or obtained by the Contractor in the performance of the Contract, except to the extent that such information falls within one of the categories described above." Our client's position is that any internally generated documents withheld were "developed . . . in the performance of the Contract" and therefore fall within the scope of the confidentiality obligation.

With respect to the Saudi Penal Law, Royal Decree M/35, you asked whether Dallah Avco had relied on any regulations promulgated by the National Center for Documents and Archives. Our client reports that it did not rely on any regulations issued by that agency, but instead on the PCA's determination, reflected in its confidentiality provision, that

disclosure would prejudice the "national security, interests, policies or rights" of the Kingdom. Articles 1(a) and (b) of the Penal Law define classified documents and information broadly to include all those whose disclosure would prejudice the Kingdom's "national security, interests, policies or rights." Although Article 1(c) may grant the National Center for Documents and Archives certain regulatory authority in connection with the Penal Law, our client does not interpret that provision as conditioning a document's protected status under Articles 1(a) and (b) on that agency's prior exercise of its authority under Article 1(c).

You also expressed the view that Article 4 of the Penal Law excludes coverage of documents generated by Dallah Avco or third parties rather than the Kingdom. Our client does not interpret that provision as drawing such a distinction, but rather as covering all documents whose disclosure would prejudice the Kingdom's "national security, interests, policies or rights," whether generated by a government contractor in the performance of its contract or by the Kingdom itself. We further note that Article 1(a) expressly covers documents "whether produced or received by [the Kingdom's] agencies," which by its terms covers documents that the PCA received from third parties and furnished to Dallah Avco in connection with its performance of the ANSS contract, such as Michael Snowden's letter to the PCA.

You requested additional information about the scope of the search. As we explained on the call, the search was supervised by the client's in-house and local Saudi counsel, subject to the direction of our U.S. co-counsel regarding the required scope of the search under U.S. law. Our client is in the process of compiling additional information about the precise steps taken in the course of the search, such as the identities of specific document custodians. To clarify one point from our call, there was no electronic searching by search terms or the like, because our client determined, based on inquiries of responsible Dallah Avco staff, that there were no electronic records from the relevant time period that could be searched. The documents we logged were the results of a manual search for responsive hard-copy documents.

You asked whether our client had received any additional requests from investigating agencies beyond Mr. Snowden's letter. Our client is searching for such records; if we locate any, we will make a determination regarding responsiveness and confidentiality and respond accordingly.

Finally, you expressed concerns that certain types of documents -- such as performance reviews, project reports, or expense reports for Mr. al Bayoumi -- are not listed on the privilege log. Your concerns appear to reflect a misunderstanding about the nature of Dallah Avco's relationship with Mr. al Bayoumi. Our client's position is that Mr. al Bayoumi was employed by the PCA, not Dallah Avco. Our client explains that Dallah Avco served essentially as a recruitment agent and paymaster for the PCA/ANSS project, supplying manpower for the project and processing salary payments subject to reimbursement by the PCA; but it did not supervise or control the work of any PCA/ANSS employee, did not have knowledge of their work, and generally did not even have access to the PCA premises where the work was performed. The documents listed on the privilege log appear to be consistent with that limited relationship.

We are available to discuss any of the foregoing items further, either by email or by telephone.

Best regards,

Robert

**Robert K. Kry**
**Ⅶ MoloLamken**
600 New Hampshire Ave., NW
Washington, DC 20037
T: (202) 556-2011
M: (202) 631-1067
F: (202) 536-2011
rkry@mololamken.com
www.mololamken.com