# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03 Civ. 6978
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04 Civ. 7216
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 03 Civ. 8591
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04 Civ. 1922
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private., Ltd., et al.*, Case No. 04 Civ. 7065

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO FILE A CONSOLIDATED AMENDED PLEADING OF FACTS AND EVIDENCE AS TO THE KINGDOM OF SAUDI ARABIA AND THE SAUDI HIGH COMMISSION FOR RELIEF OF BOSNIA & HERZEGOVINA

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.   FACTUAL BACKGROUND........................................................................... 4

  A.   Plaintiffs' Claims Against the Kingdom and SHC ............................................ 4

  B.   The Kingdom's Motion to Dismiss and Subsequent Procedural History .......................... 6

III.   LEGAL ARGUMENT....................................................................................... 8

  A.   The FSIA Contemplates that Plaintiffs Can Supplement the Pleadings to Incorporate Facts and Evidence Relevant to Jurisdictional Issues ................................... 8

  B.   Plaintiffs' Motion Should Be Granted Because Justice So Requires ................................ 9

  C.   No Reason, Such as Undue Delay, Bad Faith, Dilatory Motive, Undue Prejudice to the Opposing Party, or Futility, Exists that Would Warrant Denial of Plaintiffs' Motion............................................................................................... 13

IV   CONCLUSION.................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................16

*Doe* v. *Bin Laden*,
    663 F.3d 64 (2d Cir. 2011)....................................................................7, 8

*Fed. Ins. Co. v. Kingdom of Saudi Arabia*,
    129 S. Ct. 2859 (2009)............................................................................7

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................9

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
    759 F.Supp. 855 (D.D.C. 1991) .......................................................14, 15

*Gosain v. State Bank of India*,
    414 Fed. Appx. 311 (2d Cir. 2011).......................................................8, 9

*Granite Southlands Town Ctr., LLC v. Provost*,
    445 Fed. Appx. 72 (10th Cir. 2011)......................................................10

*John Gil Constr., Inc. v. Riverso*,
    99 F. Supp. 2d 345, 353 n.16 (S.D.N.Y. 2000).....................................12

*Khulumani v. Barclay Nat'l Bank Ltd.*,
    509 F.3d 148 (2d Cir. 2007)..................................................................16

*United States ex rel. Kirk v. Schindler Elevator Corp.*,
    926 F. Supp. 2d 510 (S.D.N.Y. 2013)..................................................10

*Kwon v. Yun*,
    606 F. Supp. 2d 344 (S.D.N.Y. 2009)..................................................15

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)....................................................8

*Mukaddan v. Permanent Mission of Saudi Arabia*,
    136 F.Supp.2d 257, 260 (S.D.N.Y. 2001) ..............................................9

ii

*Nat'l Petrochemical Co. v. The M/T Stolt Sheaf*,
    930 F.2d 240, 244 (2d Cir. 1991)........................................................................10

*O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on September 11,*
    *2001 (Saudi Joint Relief Comm.))*,
    714 F.3d 109 (2d Cir. 2013)..........................................................................16

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002)........................................................................10

*Robinson v. Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001)..........................................................................8

*Simpson v. Socialist People's Libyan Arab Jamahiriya*,
    326 F.3d 230 (D.C. Cir. 2003)......................................................................10

*In re Terrorist Attacks on September 11, 2001 (Terrorist Attacks I)*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)............................................................6

*In re Terrorist Attacks on September 11, 2001 (Terrorist Attacks II)*,
    392 F. Supp. 2d 539, 555 (S.D.N.Y. 2005)...................................................6

*In re Terrorist Attacks on September 11, 2001 (Terrorist Attacks III)*,
    538 F.3d 71 (2d Cir. 2008).....................................................................5, 6, 7

*United States Fire Ins. Co. v. United Limousine Serv.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004).........................................................11

*USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namib.*,
    681 F.3d 103 (2d Cir. 2012)........................................................................16

*Whiteman v. Fed. Republic of Aus.*,
    No. 00 Civ. 8006, 2002 U.S. Dist. LEXIS 19984 (S.D.N.Y. Oct. 9, 2002),
    vacated on other grounds, 72 Fed. Appx. 850 (2d Cir. 2003)....................11

*Williams v. Citigroup, Inc.*,
    659 F.3d 208 (2d Cir. 2011)........................................................................10

*Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*,
    No. 94 Civ. 1942, 1996 U.S. Dist. LEXIS 10430 (S.D.N.Y. July 24, 1996) ...................8, 14

**Statutes**

28 U.S.C. §§ 1603-1605 ................................................................................6

FSIA ...................................................................................................... *passim*

RICO ...............................................................................................4, 11, 12

**Other Authorities**

Rule 15(a)................................................................................................................3, 9, 10, 16

Rule 42(a)..............................................................................................................................3

Rule 54(b) ......................................................................................................................2, 12

Rule 60(b) ........................................................................................................................3, 7

## I.   PRELIMINARY STATEMENT

On September 11, 2001, members of the al Qaeda terrorist organization hijacked four commercial airliners and used those planes as weapons to attack the United States (the "September 11th attacks").  Plaintiffs in this action are family members of the nearly 3,000 people killed in the attacks, thousands of individuals injured as a result of the attacks, and commercial entities that incurred billions of dollars of property damage and other losses as a result of the attacks.

Between 2002 and 2004, Plaintiffs initiated several lawsuits, which now comprise the present multi-district litigation, pursuant to which they sought to hold accountable the principal parties who provided material support to al Qaeda and provided it with the essential means to carry out the September 11th attacks, and acted with knowledge and intent to advance al Qaeda's objective of targeting the United States.  The defendants in these cases include the Kingdom of Saudi Arabia ("the Kingdom") and the Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC"), a Saudi government component that conducts ostensibly humanitarian relief efforts outside of the Kingdom.  The Foreign Sovereign Immunities Act ("FSIA") provides the basis for subject matter jurisdiction for Plaintiffs' claims against the Kingdom and SHC.

As discussed in more detail *infra*, although this Court initially dismissed Plaintiffs' claims against the Kingdom and SHC in January 2005, the Second Circuit ultimately reinstated Plaintiffs' claims and remanded to this Court for further proceedings nearly nine years later, on December 19, 2013.  On June 30, 2014, the Supreme Court of the United States denied the Kingdom's Petition for a Writ of *Certiorari* seeking review of the Second Circuit's decision restoring the Kingdom and SHC as defendants in this litigation.  The remanded defendants thereafter expressed their intent to file renewed motions to dismiss under the FSIA.

Through the present motion, Plaintiffs seek leave to file a single consolidated amended pleading of facts and evidence as to the Kingdom and SHC, in order to provide the clearest possible record for purposes of the further proceedings as to those defendants pursuant to the Second Circuit's remand.  The proposed amended pleading does not seek to assert new claims or causes of action against the Kingdom or SHC, but is instead offered to provide the Court and defendants with a focused statement of the facts and evidence relevant to the FSIA immunity analysis.  Consistent with this purpose, Plaintiffs' propose that their operative complaints remain in force, thus ensuring continuity in the causes of action asserted against the Kingdom and SHC from the outset of the litigation, and that the proposed amended pleading attached as Exhibit "A" hereto be treated as an amendment to each of the parties' respective complaints, consistent with the approach this Court adopted with respect to RICO Statements and More Definite Statements under Case Management Order  No. 2.

Plaintiffs' present application comes before the Court in unique circumstances.  Over a decade has passed since Plaintiffs first presented their claims against the Kingdom and SHC. Moreover, the pleadings as to these defendants closed no later than 2006, when the Court granted Rule 54(b) judgments in their favor, and as a practical matter concluded much earlier, in advance of the filing of their original motions to dismiss.  As of that time, only limited information concerning investigations by the United States and international community concerning the factors that led to the September 11th attacks had been released to the public, and those investigations themselves remained ongoing.  In the ensuing years, literally troves of governmental investigative reports have been declassified, and the public record has been further augmented by public statements of knowledgeable officials and witnesses, actions undertaken to limit al Qaeda's operational capabilities and block its sources of funding, the investigations and findings of experts, and the like.  Meanwhile, discovery has proceeded in the MDL as to dozens

of defendants, including a number of the charities whose attributable conduct forms part of the basis for Plaintiffs' claims against the Kingdom, providing additional evidence directly relevant to Plaintiffs' theories of jurisdiction and liability.  In addition, Plaintiffs supplemented the record concerning these defendants in connection with the Rule 60(b) proceedings with extrinsic evidence (in the form of affidavits, government reports and other materials), which this Court held would be part of the record in these proceedings going forward.  As a result, the pleadings presented as to the Kingdom and SHC a decade ago do not meaningfully capture the facts and evidence now relevant to the immunity inquiry the defendants intend to present to the Court through their new motions to dismiss.

        As discussed below, Plaintiffs' proposed amendment is consistent with the law of this Circuit concerning procedures in FSIA jurisdictional contests, the standards for amendment of pleadings under Rule 15(a), and the authority afforded this Court under Rule 42(a).  Specifically, the Second Circuit has held that plaintiffs faced with a jurisdictional challenge under the FSIA may augment the allegations of their complaint through the filing of an averment of fact in support of jurisdiction, or through the submission of extrinsic evidence and materials.  Rule 15(a), meanwhile, directs that amendments should be liberally granted, and Rule 42(a) grants this Court broad authority to issue orders to promote the efficient management of consolidated litigation.  Consistent with these rules and standards, Plaintiffs respectfully submit that the consolidated amended pleading they propose to file represents the most practical means to present the additional facts and evidence relevant to the FSIA jurisdictional analysis, particularly given the nearly unique procedural history of this litigation.  Accordingly, Plaintiffs respectfully submit that this motion should be granted.

## II.      FACTUAL BACKGROUND

### A.      Plaintiffs' Claims Against the Kingdom and SHC

Plaintiffs seek to recover against the Kingdom and SHC, among others, based on claims

arising under, *inter alia*, common law tort theories and RICO.  Generally speaking, the claims

and theories of jurisdiction advanced against the Kingdom are predicated upon:  (1) the

attributable tortious acts of individual agents of the Saudi government, who provided direct

assistance and support to the September 11th hijackers, in the United States and elsewhere; and

(2) the attributable tortious acts of the Saudi government's charity alter-egos and agents,

including the SHC itself, involving their provision of material support and resources directly to

al Qaeda for more than a decade leading up to the September 11th attacks, including support

provided through offices located in the United States.  Among other activities carried out in

support of al Qaeda's campaign to attack the United States, these "charities" raised and

transferred funds for al Qaeda, provided cover for and facilitated the operations of al Qaeda

operatives and fundraisers (who were often employees, officials, or board members of the

"charities"), and directly participated in the planning and conduct of al Qaeda plots and attacks.

Before and after the September 11th attacks, the United States government identified several of

these "charities" as having facilitated al Qaeda's terrorist objectives.  In fact, in the wake of the

attacks, the United States designated several of those "charities" and certain of the officials

associated with them as terrorists or terrorist entities.

The SHC is itself one of al Qaeda's most important charity collaborators, and the theories

of jurisdiction and liability as to the SHC rest on its own tortious conduct in directly providing

funding, logistical support, and other resources to al Qaeda.

Plaintiffs' earliest pleadings contained voluminous facts supporting their assertions and

demonstrating the particular, intimate collaboration among the Kingdom's "charities," including

SHC, and al Qaeda.  Indeed, the Second Circuit elsewhere concluded that Plaintiffs' pleadings

"include a wealth of detail (conscientiously cited to published and unpublished sources) that, if true, reflect close working arrangements between ostensible charities and terrorist networks, including al Qaeda." *See In re Terrorist Attacks on September 11, 2001 (Terrorist Attacks III)*, 538 F.3d 71, 76 (2d Cir. 2008).

For the past thirteen years, governmental officials and experts who have studied the causes and consequences of the events leading to the September 11th attacks have gathered information and formulated conclusions that serve to reinforce Plaintiffs' allegations. These conclusions, coupled with information secured from various defendants and third parties through ongoing discovery in the proceedings before this Court, further substantiate the allegations originally pleaded against the Kingdom and SHC.

For example, since 2005, when Plaintiffs' claims against the Kingdom and SHC were dismissed, the FBI has declassified hundreds of documents relating to the investigation of Omar al Bayoumi, a Saudi intelligence agent who provided direct assistance to several of the September 11th hijackers in support of the September 11th attacks. This information bears directly on the theories advanced against the Kingdom and SHC.   In addition, former government officials who led U.S. investigations into the September 11th attacks have submitted affidavits in support of Plaintiffs' allegations that agents of the Saudi government were at the center of a U.S.-based support network that received several of the hijackers upon their arrival in the United States, and provided assistance to those hijackers critical to the success of the September 11th plot.

These newly discovered categories of information and evidence were not available to Plaintiffs at the time the underlying pleadings as to the Kingdom and SHC closed nearly a decade ago, and are directly relevant to the defenses the Kingdom and SHC intend to raise through their new motions to dismiss under the FSIA.

**B.      The Kingdom's Motion to Dismiss and Subsequent Procedural History**

In 2003 and 2004, the Kingdom and SHC moved to dismiss the claims against them,

arguing that they were immune from suit under the FSIA.  The FSIA provides that foreign states

are immune from the jurisdiction of the courts of the United States unless one of several

statutorily-defined exceptions applies.  28 U.S.C. §§ 1603-1605.  In response, Plaintiffs

principally argued that their claims fell within the FSIA's tort exception, which authorizes

actions "in which money damages are sought against a foreign state for personal injury or death,

or damage to or loss of property, occurring in the United States and caused by the tortious act or

omission of that foreign state."  28 U.S.C. § 1605(a)(5).

This Court granted the Kingdom's motion to dismiss on January 18, 2005.  *See In re*

*Terrorist Attacks on September 11, 2001 (Terrorist Attacks I)*, 349 F. Supp. 2d 765 (S.D.N.Y.

2005).  The Court relied on the FSIA's "discretionary function" provision, a limitation on the tort

exception to immunity.  28 U.S.C. § 1605(a)(5)(A). On September 21, 2005, this Court granted

SHC's motion on the same basis.  *See In re Terrorist Attacks on September 11, 2001 (Terrorist*

*Attacks II)*, 392 F. Supp. 2d 539, 555 (S.D.N.Y. 2005).  This Court entered an order of partial

final judgment on January 10, 2006.

Plaintiffs appealed to the Second Circuit, which affirmed the dismissals of the Kingdom

and SHC on wholly different grounds.  *See Terrorist Attacks III*, 538 F.3d 71; *see* Judgment

Mandate, No. 03-md-1570 (2d Cir. Sept. 16, 2008) ("the judgment of the district court is

AFFIRMED in accordance with the opinion of this court").  Finding it "unnecessary to reach"

this Court's discretionary function rulings, 538 F.3d at 90 n.15, the Second Circuit held that the

FSIA's exception for claims against sovereigns designated by the United States as sponsors of

terrorism (currently, Section 1605A), and not the tort exception (Section 1605(a)(5)), provided

the exclusive basis of jurisdiction under the FSIA for claims arising from acts of terrorism. *Id.* at 87-90. Because neither the Kingdom nor SHC was formally designated as a state sponsor of terrorism, the Second Circuit affirmed the lower court's order of dismissal. The Supreme Court denied review. *See Fed. Ins. Co. v. Kingdom of Saudi Arabia*, 129 S. Ct. 2859 (2009).

In 2011, the Second Circuit overruled *Terrorist Attack III's* construction of the FSIA's tort exception in *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) and held that § 1605(a)(5) *did* authorize claims against foreign governments for acts in support of terrorism. *Doe* is part of the same MDL at issue in this case and involved a suit brought by a victim of the September 11th attacks against the government of Afghanistan based on that sovereign defendant's material support of al Qaeda leading to the attacks. In its ruling in *Doe,* the Second Circuit permitted the victim's suit against Afghanistan seeking damages for the September 11th attacks to proceed and remanded the case for jurisdictional discovery.

Soon after the Second Circuit issued *Doe*, Plaintiffs filed a motion with this Court pursuant to Rule 60(b)(6) to vacate the earlier judgments in favor of the Kingdom and SHC. Plaintiffs argued that such relief was appropriate because *Doe* overruled the Second Circuit's earlier holding that formed the sole basis for the dismissal of their claims against the Kingdom and SHC, and that to hold otherwise would produce contradictory results as to two identically-situated sovereign states and victims of the same tort in the same ongoing litigation. This Court denied Plaintiffs' Rule 60(b) motion.

On December 19, 2013, the Second Circuit reversed the order denying the Rule 60(b) motion on the basis that "extraordinary circumstances" warranted relief. The Second Circuit remanded the matter to this Court for further proceedings consistent with its opinion. On March 19, 2014, the Kingdom and SHC petitioned the Supreme Court for a writ of *certiorari*. The

Kingdom and SHC principally argued that, regardless of the change in law effected by *Doe*, they were entitled to dismissal on the basis of their "discretionary function" and "entire tort" theories of immunity under the FSIA.  The United States Supreme Court rejected the petition on June 30, 2014.

## III.   LEGAL ARGUMENT

### A.   The FSIA Contemplates that Plaintiffs Can Supplement the Pleadings to Incorporate Facts and Evidence Relevant to Jurisdictional Issues

Pursuant to the FSIA, plaintiffs faced with a motion to dismiss for lack of jurisdiction have the right to supplement their factual allegations to satisfy the jurisdictional requirements. *See Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (recognizing plaintiff can rebut defendant's claim of immunity by "proffering evidence of record"); *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* No. 94 Civ. 1942, 1996 U.S. Dist. LEXIS 10430, *22 (S.D.N.Y. July 24, 1996) (permitting motion to amend to allow plaintiff to present facts in support of jurisdictional nexus under FSIA); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("where evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence").

Relatedly, the Second Circuit has held that a plaintiff facing an FSIA jurisdictional challenge may file, as a matter of right, an averment of fact in support of jurisdiction.  As the Second Circuit explained in *Gosain v. State Bank of India*, 414 Fed. Appx. 311 (2d Cir. 2011):

> When faced with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction to hear the claims. A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. If affidavits are submitted, the court should construe all allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.

8

*Id.* at 314.  *See also Mukaddan v. Permanent Mission of Saudi Arabia*, 136 F.Supp.2d 257, 260
(S.D.N.Y. 2001) (noting in context of FSIA case that same "test" applies in evaluating motions
to dismiss for lack of subject matter jurisdiction and personal jurisdiction).

The procedural rights afforded plaintiffs faced with a motion to dismiss under the FSIA,
as summarized above, endorse both the appropriateness and logic of the present application.
Under the Second Circuit authority, Plaintiffs may amplify and augment the allegations of their
respective complaints as of right, through the submission of a jurisdictional averment of fact and
extrinsic materials, in response to the new motions to dismiss of the Kingdom and SHC.[1]
Through the present motion, Plaintiffs merely seek to present their factual "averment"
summarizing the content of the extrinsic record at the earliest possible stage of the proceedings
on remand, an approach that actually affords the defendants greater opportunity to address the
import of the additional facts and evidence to the FSIA jurisdictional analysis.[2]  Further,
Plaintiffs' request that their factual pleading be treated as an amendment to their respective
complaints is consistent with the standards for amendment under Rule 15(a).

**B.      Plaintiffs' Motion Should Be Granted Because Justice So Requires**

Under Rule 15(a), leave to amend is to be given freely when justice so requires.  *See* FED.
R. CIV. P. 15(a).  This Court's discretion is to be exercised in a manner consistent with the
standard established by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

---

[1] For their part, the Kingdom and SHC have previously argued that Plaintiffs are *required* to present facts and
evidence beyond the pleadings in response to a motion to dismiss under the FSIA.  That position misstates the
burden regime under the FSIA and is incorrect.  However, having consistently advanced that view, the defendants
can hardly be heard to complain about Plaintiffs' efforts to present (at an earlier stage than required) a focused
statement of the facts and evidence that comprise the extrinsic record.

[2] In fact, Plaintiffs proposed in their discussions with the defendants that they file their motion to amend and
proposed amended pleading in advance of the deadline for the defendants' new motions to dismiss, so that they
could address the amended pleading in their motions.  In response, the defendants advised that the briefing on the
motion to amend would itself afford them an opportunity to address the substantive import of the amended pleading
to the FSIA analysis, and that the motions could therefore proceed on parallel tracks.  In contrast, were Plaintiffs to
follow the normal course and simply file their "factual averment" in response to the defendants' new motions to
dismiss, the defendants would be relegated to responding solely through their reply brief.

> Rule 15(a) declares that leave to amend "shall be freely given
> when justice so requires"; this mandate is to be heeded. If the
> underlying facts or circumstances relied upon by a plaintiff may be
> a proper subject of relief, he ought to be afforded an opportunity to
> test his claim on the merits. In the absence of any apparent or
> declared reason—such as undue delay, bad faith or dilatory motive
> on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be
> "freely given."

*Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011) (quoting *Foman*, 371 U.S. at 182); *see also United States ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510 (S.D.N.Y. 2013) (same).

Here, Plaintiffs submit the proposed Consolidated Amended Pleading amending the operative pleadings against the Kingdom and SHC on remand, following an appeal to the Second Circuit. The dictates of Rule 15(a) likewise are applicable on the procedural posture before this Court. *See, e.g., Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 235 (D.C. Cir. 2003) (permitting plaintiff to amend complaint after remand following interlocutory appeal); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 94 (D.C. Cir. 2002) (remanding case to district court to provide plaintiffs with opportunity to amend torture claim under FSIA); *see also Granite Southlands Town Ctr., LLC v. Provost*, 445 Fed. Appx. 72 (10th Cir. 2011) (noting district court should reconsider motion for leave to amend on remand because by reversing order dismissing defendants, "the factors relevant to granting or denying the motion have been substantially altered"); *Nat'l Petrochemical Co. v. The M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) ("[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)."); *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (applying standard from *National Petrochemical* and allowing party to amend pleading on remand to district court).

Over ten years ago, Plaintiffs filed their respective complaints against the Kingdom and SHC.  It was over nine years ago that this Court dismissed Plaintiffs' claims.  The Second Circuit's most recent ruling restores the Kingdom and SHC as defendants, and restores the proceedings as to those defendants to a pre-motion, pre-discovery stage.  Amendment of pleadings in such a setting is, of course, routine.  But, in contrast to cases travelling a more traditional procedural path, a decade has passed since the filing of the initial complaints and the presentation of the defendants' motions to dismiss.  Owing to the singular historical significance of the events giving rise to the claims against the Kingdom and SHC, the universe of new evidence that has been released into the public domain in the ensuing decade has, not surprisingly, grown exponentially.  Thus, the procedural history of this case and nature of the events giving rise to the claims present unusually compelling grounds for amendment of the (now very outdated) pleadings.

Moreover, Plaintiffs' proposal to file an amended and consolidated factual pleading addressed solely to the Kingdom and SHC, which will serve to amend the operative complaints in each of the actions as to those defendants, represents a most pragmatic and appropriate approach to the proceedings on remand, given the complexity of this MDL and present procedural setting.  Particularly in complex cases analogous to the present action, courts in this Circuit have endorsed the filing of particularized pleadings as to a subset of the named defendants.  *See Whiteman v. Fed. Republic of Aus.*, No. 00 Civ. 8006, 2002 U.S. Dist. LEXIS 19984, at *24 (S.D.N.Y. Oct. 9, 2002) (allowing plaintiffs to amend pleadings as to certain defendants in complex FSIA case), vacated on other grounds, 72 Fed. Appx. 850 (2d Cir. 2003); *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 445 (S.D.N.Y. 2004) (granting plaintiff leave to amend pleading as to two of twenty-three defendants to allege more specific facts to support RICO claim after considering materials outside the pleadings "for the

11

sole purpose of determining whether to grant Plaintiff leave to amend its Amended Complaint as to [two] Defendants.") (citing *John Gil Constr., Inc. v. Riverso*, 99 F. Supp. 2d 345, 353 n.16 (S.D.N.Y. 2000) (reviewing affidavit on a 12(b)(6) motion in considering whether to grant plaintiff leave to amend)).

The procedural history of the present litigation, and present posture of the claims against the various defendants now before this Court, establishes that such an approach is the only practical solution available here.  As a result of the entry of Rule 54(b) judgments in favor of the Kingdom and SHC in 2006, the claims against those defendants (and a few others) were formally segregated from the proceedings as to the vast majority of the other defendants (including all other defendants now before this Court), and have now run on a separate course for more than eight years.  As a result, the filing of an amended complaint as to all defendants and all claims would not be appropriate, and a pleading directed solely to the Kingdom and SHC is the only proper course.  At the same time, the purpose of the present amendment is simply to present a focused statement of the factual allegations and evidence, including facts and evidence unknowable at the time of the filing of the earlier operative complaints, principally for purposes of the FSIA immunity dispute.  In that context, restating the identity of the thousands of plaintiffs in each of the actions, the nature of the injuries each of those plaintiffs have suffered, and other case-specific details (such as the class allegations in the *O'Neill* action), in a consolidated pleading would only confuse matters, and would not promote efficiency in any sense.

Accordingly, presenting the relevant factual allegations in a stand-alone pleading, which serves to amend the operative complaints in each of the actions, is the most efficient and appropriate solution, and is consistent with the approach the Court adopted in relation to defendant-specific RICO Statements and More Definite Statements at the outset of this litigation. *See* CMO#2 ¶¶ 13-14 (authorizing filing of More Definite Statements and RICO Statements as to

individual defendants, and stating that such statements would be "deemed amendments to previously-filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint").

      **C.**     **No Reason, Such as Undue Delay, Bad Faith, Dilatory Motive, Undue Prejudice to the Opposing Party, or Futility, Exists that Would Warrant Denial of Plaintiffs' Motion**

Plaintiffs' proposed amendment does not present any issues of undue delay, bad faith, or dilatory motive. Immediately following the Second Circuit's ruling reinstating the Kingdom and SHC as defendants, Plaintiffs requested an opportunity to address the Court concerning a proposed schedule for further proceedings as to the Kingdom and SHC on remand. However, the Kingdom and SHC notified the Court of their intention to file a Petition for a Writ of Certiorari seeking review of the Second Circuit's ruling, and expressly requested that the Court defer any further proceedings as to them while that Petition was pending before the Supreme Court. Promptly after the Supreme Court denied review, Plaintiffs informed the Kingdom and SHC that they intended to seek leave to amend, and the present motion is being filed in accordance with the schedule jointly proposed by the parties and endorsed by the Court.

In addition, the proposed amendment will not unduly prejudice the Kingdom or SHC. Given the fact that the defendants' motions to dismiss were granted before they expended resources to participate in the litigation and because permitting amendment will promote, rather than delay, the efficient resolution of the dispute, this Court should permit Plaintiffs to amend their operative complaints, as requested herein.

Further, neither the Kingdom nor SHC would suffer any prejudice as a result of the proposed amendment. Once again, Plaintiffs may augment their operative complaints through the filing of averments of fact and extrinsic evidence as a matter of right, in response to the defendants new motions to dismiss under the FSIA. Given that the facts included in the

proposed amended pleading could be presented through such an averment and extrinsic materials as of right, it is illogical to suggest that the presentation of those facts at an earlier stage presents any "prejudice."  Indeed, amendment is particularly appropriate where, as here, additional facts and evidence have emerged that bear on the sufficiency of the claim or jurisdictional predicate. *See, e.g., Zappia,* 1996 U.S. Dist. LEXIS 10430; *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 759 F.Supp. 855 (D.D.C. 1991).  For example, in *Zappia,* the court permitted plaintiffs to amend their complaint to incorporate allegations learned through discovery that pertained to the defendant bank's commercial activities in the United States.  Recognizing that such information was closely related to the allegations of the original pleadings and relevant to the jurisdictional analysis under the FSIA, the court explained that "amendment is favored where it would allow the merits of a claim to be fully adjudicated." *Zappia,* 1996 U.S. Dist. LEXIS 10430 at *5.   The court rejected the non-moving party's argument that amendment would unduly delay the filing of any motion to dismiss and reasoned that the "conclusion that this limited delay will not be prejudicial is bolstered by the fact that the case is still in the early stages of litigation, as no dispositive motions have been filed or ruled upon." *Id.* at *13.  The court further held that "[c]ourts consistently grant motions to amend where it appears that facts and allegations are developed during discovery which are closely related to the original claim and foreshadowed in earlier pleadings." *Id.* at *4.

This result is further supported by the District Court for the District of Columbia's decision in *Foremost-McKesson, supra.* Plaintiff filed suit in 1982 against the Islamic Republic of Iran seeking to recover losses it sustained in connection with its partial ownership interest in Sherkat Shami Labiniat Pasteurize Pak.  The action was stayed pending the presentment of claims to the Iran-United States Claims Tribunal.  Six years later, in 1988, plaintiff filed a motion for partial summary judgment which was held in abeyance.  Iran thereafter filed a motion

14

to strike its answer and a motion to stay.  After those motions were denied, Iran moved to amend its answer and dismiss the complaint for lack of jurisdiction under the FSIA.  In December 1990, following an interlocutory appeal from the denial of its motion to dismiss, McKesson sought leave to amend the original complaint on remand.

Emphasizing the time that elapsed during the pendency of the litigation, the court noted that "McKesson moves to amend its complaint to include pertinent events that have occurred since the original complaint was filed in 1982."  *Id.* at 857.  The court rejected Iran's concern that its potential challenge to jurisdiction will be less effective if amendments are permitted, explaining:

> The amendments are based on the same set of occurrences as the original complaint.  All documents and information relating to the original complaint will also relate to the amended complaint.  Iran will have the same opportunity to present facts and evidence after the amendment as it did before the amendment.  Iran's claim that one of its defenses will not work as effectively as it would have prior to the amendment is simply not enough to warrant denial of the amendment.

*Id.* at 858.  The court further held that, to the extent Iran claimed undue delay, any delay was "neither entirely, nor principally, attributable to McKesson.  Most of the delay in this case has been occasioned by the interlocutory appeal and the Claims Tribunal process.  Under these circumstances, the Court cannot find that McKesson's delay in requesting leave to amend the complaint was undue or unreasonable."  *Id.* at 857-58.  In the instant matter, Plaintiffs diligently pursued their claims against the Kingdom and SHC and now seek, at the earliest stage on remand, to incorporate into a consolidated amended pleading extrinsic material in the record and facts uncovered in the preceding decade.

Finally, the proposed amended pleading would not be futile or otherwise immaterial.  *See Kwon v. Yun*, 606 F. Supp. 2d 344, 364-65 (S.D.N.Y. 2009) (permitting defendant to amend counterclaims to address additional facts obtained in discovery pertaining to promissory notes, as

defendant would otherwise be free to file a new action on the basis of same); *see also Khulumani v. Barclay Nat'l Bank Ltd*., 509 F.3d 148, 152 (2d Cir. 2007) (remanding case to district court and refusing to stay mandate pending appeal, noting "that it has been several years since this issue has been briefed, and the parties should be able to develop the record to take into account intervening developments").

To the contrary, the proposed amended pleading addresses developments in the applicable facts and law,[3] all of which pertain directly to the claims advanced against the Kingdom and SHC.  The scope of information presently available and incorporated in the proposed amended pleading greatly exceeds the information initially available at the time Plaintiffs first instituted this litigation in September 2003.  Moreover, in the intervening years, the Second Circuit has clarified and refined its views with respect to the tort exception to foreign states' immunity under the FSIA.  Accordingly, given the interests of justice and because no reason exists for this Court to deny leave, amendment is proper.

## IV.   <u>CONCLUSION</u>

Plaintiffs submit that the Court's interests in avoiding unnecessary cost or delay, the liberal dictates of Rule 15, and the analytical framework of the FSIA are complementary, and counsel in favor of permitting the proposed Consolidated Amended Pleading of Facts and Evidence as to the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina, and treating that pleading as an amendment to Plaintiffs' now operative complaints.  For these reasons, this Court should exercise its discretion and grant Plaintiffs leave to file their proposed amended pleading.

---

[3] *See O'Neill v. Saudi Joint Relief Comm. (In re Terrorist Attacks on September 11, 2001 (Saudi Joint Relief Comm.))*, 714 F.3d 109 (2d Cir. 2013) (clarifying Second Circuit precedent regarding the non-commercial tort exception to the FSIA); *USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namib.*, 681 F.3d 103 (2d Cir. 2012) (clarifying Second Circuit precedent regarding the scope of the discretionary function doctrine).  Further, the Supreme Court has articulated a new pleading standard since the complaint was filed.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to File a Consolidated Amended Pleading of Facts and Evidence as to the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina, in the form attached hereto as Exhibit A.  Plaintiffs further request that this Court treat the amended pleading as an amendment to each of the Plaintiffs' now operative complaints, in lieu of filing new amended complaints.  A proposed form of order is attached hereto as Exhibit B.

Dated:  September 15, 2014                    Respectfully submitted,


                                             /s/ Stephen A. Cozen
                                             Stephen A. Cozen, Esq.
                                             Elliott R. Feldman, Esq.
                                             Sean P. Carter, Esq.
                                             Scott Tarbutton, Esq.
                                             COZEN O'CONNOR
                                             1900 Market Street
                                             Philadelphia, PA  19103
                                             (215) 665-2000

                                             Attorneys for *Federal Insurance* Plaintiffs

                                             Jodi W. Flowers, Esq.
                                             Robert T. Haefele, Esq.
                                             MOTLEY RICE LLC
                                             28 Bridgeside Boulevard
                                             P. O. Box 1792
                                             Mount Pleasant, SC  29465
                                             (843) 216-9000

                                             -and-

                                             Andrea Bierstein, Esq.
                                             HANLY CONROY BIERSTEIN SHERIDAN
                                             FISHER & HAYES, LLP
                                             112 Madison Avenue
                                             7th Floor
                                             New York, NY  10016
                                             (212) 784-6400

                                             Attorneys for *Burnett* Plaintiffs and *Euro Brokers*
                                             Plaintiffs

17

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
32nd Floor
New York, NY 10017
(212) 687-8181

Attorneys for *Ashton* Plaintiffs

Jerry S. Goldman, Esq.
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for *O'Neill* Plaintiffs

Chris Leonardo, Esq.
ADAMS HOLCOMB LLP
1875 Eye Street, NW
Suite 810
Washington, DC  20006
(202) 580-8803

Attorneys for *Cantor Fitzgerald*
Plaintiffs

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER &
COLLER, LLP
530 Fifth Avenue, 23rd Floor
New York, NY 10036-5101
(212) 944-2200

Attorneys for *Continental Casualty*
Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Support of Their Motion to File a Consolidated Amended Pleading of Facts and Evidence as to the Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia & Herzegovina, was filed electronically this 15th day of September 2014.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.  In addition, copies of Plaintiffs' Memorandum of Law were served separately via express U.S. mail upon counsel for the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina as indicated below:

Michael K. Kellogg, Esq.
Kellogg, Huber, Hansen, Todd,
Evans & Figel, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

Roy T. Englert, Jr., Esq.
Robbins, Russell, Englert, Orseck,
Untereiner & Sauber, LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006

/s/ J. Scott Tarbutton, Esquire
J. Scott Tarbutton, Esquire