# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                   )

IN RE:  TERRORIST ATTACKS ON      )    **Civil Action No. 03 MDL 1570 (GBD)**
SEPTEMBER 11, 2001              )    **ECF Case**
_____ )

This document relates to:

*Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-cv-6978
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 03-cv-8591
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-cv-7216
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-9849
*Euro Brokers Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-7279
*Kathleen Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-cv-6977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia*, Case No. 04-cv-1922
*Continental Casualty Co., et al. v. al Qaeda, et al.*, Case No. 04-cv-5970
*Cantor Fitzgerald Assocs. v. Akida Invest. Co.*, Case No. 04-cv-7065

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## OF THE KINGDOM OF SAUDI ARABIA AND THE SAUDI HIGH COMMISSION
## FOR RELIEF OF BOSNIA & HERZEGOVINA

Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)
*Attorneys for the Kingdom of Saudi Arabia*


Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)
*Attorneys for the Saudi High Commission
for Relief of Bosnia & Herzegovina*

September 15, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION AND SUMMARY ...................................................................... 1

BACKGROUND ...................................................................................................... 6

    A.     Plaintiffs' Allegations and the Initial Motions To Dismiss .................... 6

    B.     Second Circuit and Supreme Court Proceedings in 2008-2009 ............. 9

    C.     Plaintiffs' Rule 60(b) Motion and the Second Circuit's Decision ......... 10

ARGUMENT .......................................................................................................... 12

I.     Plaintiffs' Claims Are Barred Under the FSIA Because They Have Failed To Allege Facts That Could Satisfy the Entire-Tort Rule ................................................. 13

    A.     The Entire-Tort Rule Requires Tortious Activity Within the United States ..................................................................................... 13

    B.     The Al Bayoumi Allegations Do Not Satisfy the Entire-Tort Rule ....... 16

II.    Plaintiffs' Claims Are Barred Under the FSIA Because the Facts Alleged Describe Only Discretionary Policy Decisions Exempt from the FSIA's Torts Exception ........... 19

III.   Plaintiffs Have Failed To Allege Causation .................................................... 20

IV.   Jurisdictional Discovery Has Been Waived and Is Unjustified ....................... 22

CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

Page

**CASES**

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428
(1989)..................................................................................................10, 12, 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................16, 17

*Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517
(D.C. Cir. 1984) .............................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................12, 16, 17

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9
(D.D.C. 2003) .................................................................................................21

*Cabiri v. Government of Ghana*, 165 F.3d 193 (2d Cir. 1999)...................................13

*Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011)........................................3, 10, 11, 23, 24

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007) ..................................23

*Federal Ins. Co. v. Kingdom of Saudi Arabia*:

    555 U.S. 1168 (2009).........................................................................................9

    557 U.S. 935 (2009).........................................................................................10

*Licci v. American Express Bank Ltd.*, 704 F. Supp. 2d 403 (S.D.N.Y. 2010),
    *aff'd sub nom. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    672 F.3d 155 (2d Cir. 2012)...........................................................................21

*O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009) ...................................................13

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) ............................13, 14, 20

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001)........................1, 5, 12, 21, 22

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)............................................................12

*Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010) ...................................................19

*Terrorist Attacks on Sept. 11, 2001,  In re*:

    349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................2, 5, 7, 8, 9, 12, 19, 23

    392 F. Supp. 2d 539 (S.D.N.Y. 2005)..........................................2, 5, 7, 8, 9, 12, 19, 20, 23

    538 F.3d 71 (2d Cir. 2008), *cert. denied*, 557 U.S. 935 (2009).......................2, 3, 8, 9, 20

    714 F.3d 109 (2d Cir. 2013)..........................................................4, 12, 13, 14, 15, 18

    741 F.3d 353 (2d Cir. 2013)..........................................................3, 11, 22, 23

*Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843
    (D.C. Cir. 2000) .............................................................................................16

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig  Airlines)*,
    467 U.S. 797 (1984)............................................................................. 7-8, 19, 20

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002)..........................................................................12

## STATUTES AND RULES

Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*  ...................................................19

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* ................................ *passim*

    28 U.S.C. § 1604....................................................................................................12

    28 U.S.C. § 1605(a)(2)..........................................................................................9

    28 U.S.C. § 1605(a)(5)........................................................5, 6, 12, 13, 20, 21

    28 U.S.C. § 1605(a)(5)(A)....................................................................7, 19, 20

    28 U.S.C. § 1605(a)(7) (2000 & Supp. I 2001) ...................................................6

    28 U.S.C. § 1605A...........................................................................................3, 6

Fed. R. Civ. P.:

    Rule 8 ..................................................................................................................12

    Rule 12(b)(1)........................................................................................................1

Rule 12(b)(6)............................................................................................1

Rule 12(h)(2)..........................................................................................24

Rule 12(h)(3)..........................................................................................24

Rule 54(b) ...............................................................................................8

Rule 60(b) ...........................................................................................3, 11

## LEGISLATIVE MATERIALS

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ......................................14

## OTHER MATERIALS

Brief for the United States as Amicus Curiae, *Federal Ins. Co. v.*
   *Kingdom of Saudi Arabia*, No. 08-640 (U.S. filed May 29, 2009),
   2009 WL 1539068 ...........................................................10, 13, 14, 15, 16, 17

*The 9/11 Commission Report:  Final Report of the National Commission on Terrorist*
   *Attacks Upon the United States* (July 2004) ............................................1, 8, 18

## INTRODUCTION AND SUMMARY

The Kingdom of Saudi Arabia had no role in the attacks of September 11, 2001.  The United States has said often and vigorously that Saudi Arabia is an important ally in the fight against terrorism.  The National Commission on Terrorist Attacks Upon the United States (the "9/11 Commission") found "no evidence" in 2004 that "the Saudi government as an institution or senior Saudi officials individually funded" the September 11 terrorists or their al Qaeda organization.  *The 9/11 Commission Report:  Final Report of the National Commission on Terrorist Attacks Upon the United States* 171 (July 2004) (the "*9/11 Report*").

Like the Kingdom, the Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC"), an agency of the Kingdom that was created to assist victims of Serbian genocide in Bosnia-Herzegovina, played no role in the attacks of September 11, 2001.  Plaintiffs' claims of terrorist support are not only unsubstantiated, but affirmatively refuted by uncontradicted record evidence:  A 2002 audit by Bosnian authorities into SHC's funding disbursements from 1998-2001 confirmed that SHC's funds were being used for humanitarian purposes, and were not diverted to al Qaeda.[1]

Plaintiffs nevertheless seek damages for the September 11 attacks from the Kingdom of Saudi Arabia and its instrumentality SHC, among hundreds of other defendants.  Plaintiffs seek to link Saudi Arabia and its instrumentalities to the hijackers responsible for the attacks by asserting that they provided financial and other support to terrorist groups.  In a blanket, conclusory assertion repeated verbatim with respect to dozens of defendants, Plaintiffs claim that

---

[1] *See* Decl. of Saud bin Mohammad Al-Roshood, Exh. 3A (MDL ECF No. 262-3), submitted in support of Mem. of Law in Supp. of Def. SHC's Mot. To Dismiss (filed June 25, 2004) (MDL ECF No. 262).  On a motion under Federal Rule of Civil Procedure 12(b)(1), unlike a motion to dismiss under Rule 12(b)(6), a court may take evidence and make factual findings.  *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).  Plaintiffs never attempted any factual refutation of the Al-Roshood Declaration.

"[t]he September 11th Attack was a direct, intended and foreseeable product of [Defendants']

participation in al Qaida's jihadist campaign."[2]

1.      Foreign sovereign immunity, codified in the Foreign Sovereign Immunities Act

of 1976 ("FSIA"), 28 U.S.C. § 1604, bars Plaintiffs' claims against Saudi Arabia and its

instrumentalities, including SHC.  In 2005, this Court dismissed the cases against Saudi Arabia

and its instrumentalities under the FSIA.  *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F.

Supp. 2d 765 (S.D.N.Y. 2005) ("*Terrorist Attacks I*") (Casey, J.) (dismissing claims against

Saudi Arabia); *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)

("*Terrorist Attacks II*") (Casey, J.) (dismissing claims against SHC).  In *Terrorist Attacks I*,

Judge Casey reasoned that the FSIA's exception to foreign sovereign immunity for non-

commercial torts does not apply in these cases because Plaintiffs' claims against Saudi Arabia

trigger the FSIA's preservation of immunity for the performance of discretionary functions.

349 F. Supp. 2d at 802-04.  In *Terrorist Attacks II*, Judge Casey held that the Kingdom's

immunity under the FSIA extends to SHC, which the Court held is an agency, instrumentality, or

organ of the Kingdom.  392 F. Supp. 2d at 552-53.  The Court held that SHC, like the Kingdom,

is entitled to immunity under the discretionary-function exclusion.  *Id.* at 555.

The Second Circuit affirmed this Court's judgment, and the Supreme Court denied

review.  *See In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71 (2d Cir. 2008), *cert. denied*,

557 U.S. 935 (2009).  The Second Circuit did not reach the discretionary-function issue, which

was the basis for Judge Casey's rulings.  Instead, the court of appeals affirmed on the alternative

ground that the FSIA's torts exception is categorically inapplicable to claims involving alleged

---

[2] First Am. Compl. ¶¶ 189, 425, *Federal Ins. Co. v. al Qaida*, No. 03-cv-6978 (filed
Sept. 30, 2005) (ECF No. 772) ("*Fed. Ins.* Compl.").

support for terrorism.  *See id.* at 75, 86-92.  The Second Circuit reasoned that such claims could

be brought only under the FSIA's exception for state-sponsored terrorism, 28 U.S.C. § 1605A.

Saudi Arabia and its instrumentalities cannot be sued under § 1605A because Saudi Arabia has

never been designated as a state sponsor of terrorism.  *See* 538 F.3d at 89.

      In 2011, the Second Circuit revisited the narrow legal issue addressed in its 2008 decision

in *Terrorist Attacks* – that is, whether the FSIA's torts exception to immunity can ever provide a

basis for jurisdiction over a claim involving alleged support for terrorism.  *See Doe v. Bin Laden*,

663 F.3d 64 (2d Cir. 2011) (per curiam).  Partially overruling its 2008 decision in *Terrorist*

*Attacks*, the court of appeals held that "the terrorism exception, rather than limiting the

jurisdiction conferred by the noncommercial tort exception, provides an additional basis for

jurisdiction."  *Id.* at 70 & n.10.  The Second Circuit emphasized, however, that it was not

deciding any other issue regarding the application of the FSIA even on the facts of *Doe*, stating

that it "ma[d]e no judgment as to whether the allegations in the complaint are sufficient to state

a claim or even to provide jurisdiction."  *Id.* at 70-71.

      In December 2013, the Second Circuit determined that *Doe*'s overruling of *Terrorist*

*Attacks* warranted reopening the judgments dismissing the cases against Saudi Arabia and its

instrumentalities under Federal Rule of Civil Procedure 60(b).  *See In re Terrorist Attacks on*

*Sept. 11, 2001*, 741 F.3d 353 (2d Cir. 2013).  The court of appeals recognized that Saudi Arabia

and its instrumentalities had put forward three other potential grounds for dismissal under the

FSIA, and it stated that "[a]ll these issues may be considered by the District Court on remand."

*Id.* at 359.

      **2.**    The torts exception to FSIA immunity does not apply in these cases – and the

Court should therefore grant this renewed motion to dismiss – for three independent reasons:

*First*, for the FSIA's torts exception to apply, "the 'entire tort' must be committed in the United States."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115 (2d Cir. 2013). The Second Circuit so held in an April 2013 decision affirming the dismissal of Plaintiffs' cases against two other Saudi instrumentalities.  *See id.* at 116-17.  It rejected Plaintiffs' "attempt to hold the [Saudi Joint Relief Committee] and the [Saudi Red Crescent Society] liable for providing funding and other aid to entities that purportedly supported al Qaeda" because "the actions allegedly taken by the SJRC and the SRC . . . took place completely outside the United States," and as a result Plaintiffs had failed to allege that those agencies "committed any tortious act in the United States."  *Id.*  That reasoning applies squarely here and compels dismissal.

Plaintiffs have contended that they can satisfy the entire-tort rule by relying on allegations concerning assistance purportedly provided to two of the September 11 hijackers by Omar Al Bayoumi, who they say was a Saudi "intelligence agent."  *Fed. Ins.* Compl. ¶ 414. The allegations that Al Bayoumi was a Saudi agent are both insufficient under general pleading standards and unsupported by the evidence necessary to withstand a motion to dismiss under the FSIA.  Further, Plaintiffs make *no* allegations, conclusory or otherwise, that Al Bayoumi knew that the individuals whom he allegedly assisted were terrorists or that they intended to attack the United States.  The 9/11 Commission interviewed and investigated Al Bayoumi and rejected contentions that he knowingly assisted terrorists, and the United States evaluated Plaintiffs' Al Bayoumi allegations in 2009 and advised the Supreme Court that they do not satisfy basic pleading standards.  Those allegations are no basis to prolong further this decade-long litigation against the Kingdom and SHC.

*Second*, as Judge Casey held in 2005, the FSIA's torts exception to immunity is inapplicable in these cases for the independent reason that the only actions by Saudi Arabia and its instrumentalities properly alleged in Plaintiffs' complaint were discretionary functions

performed at the planning level of government.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 803-04 (Saudi Arabia's "treatment of and decisions to support Islamic charities" "are purely planning level decisions grounded in social, economic, and political policy") (internal quotation marks omitted); *Terrorist Attacks II*, 392 F. Supp. 2d at 555 (SHC's "decisions regarding the distribution of humanitarian relief funds were within the sole discretion of its Chairman Salman and the advisors he selected" and were "guided by the Kingdom's policies").[3]  No court has overturned those rulings or even called them into question.

Third, Plaintiffs did not adequately allege causation for purposes of the FSIA's torts exception.  By its terms, the torts exception applies only to claims for injuries "*caused by* the tortious act or omission" of a foreign sovereign.  28 U.S.C. § 1605(a)(5) (emphasis added).  Plaintiffs' conclusory assertion that the September 11 attack was a "direct, intended and foreseeable" result of some conduct by Saudi Arabia and its instrumentalities does not satisfy that causation requirement.  *Fed. Ins.* Compl. ¶ 425.  As the Second Circuit has explained, the FSIA mandates dismissal of "vague and conclusory allegations of tortious conduct" so as to promote its goal of "enabl[ing] a foreign government to obtain an early dismissal when the substance of the claim against it does not support jurisdiction."  *Robinson*, 269 F.3d at 146.  The decade-long progress of this litigation has already poorly served that goal.

Finally, Plaintiffs are not entitled to jurisdictional discovery, which they suggested on appeal they would seek from this Court.  They waived any such request by failing to ask when this case was before Judge Casey, and in any event their conclusory allegations do not justify further prolonging these proceedings.

---

[3] HRH Prince Salman bin Abdulaziz, who was at that time Governor of Riyadh and Chairman of SHC, is currently Crown Prince and First Deputy Prime Minister of Saudi Arabia.

# BACKGROUND

## A.    Plaintiffs' Allegations and the Initial Motions To Dismiss

Plaintiffs are insurance companies, businesses, and family members who suffered

damages from the terrorist attacks of September 11, 2001.  They alleged that the Saudi

government and its instrumentalities, acting through senior officials and various entities

supposedly acting on Saudi Arabia's behalf, provided financial and material assistance to al

Qaeda and thereby assisted that organization's "growth and development into a sophisticated

global terrorist network" capable of perpetrating the September 11 attacks.  *Fed. Ins.* Compl.

¶ 398.[4]  Plaintiffs did not allege any direct involvement by Saudi Arabia or its instrumentalities

in the September 11 attacks, but rather asserted (without specific factual support) that those

attacks were a "direct, intended and foreseeable product" of their purported support of al Qaeda.

*Id.* ¶ 425.  Plaintiffs repeated identical boilerplate allegations accusing various businesses, banks,

and humanitarian relief organizations of intending and foreseeing the September 11 attacks.

In 2004, Saudi Arabia and SHC filed motions to dismiss asserting sovereign immunity

under the FSIA.  They argued, among other things, that the FSIA's exception for tort claims,

28 U.S.C. § 1605(a)(5), did not provide jurisdiction for four reasons:  (1) Plaintiffs' claims

involving alleged support for terrorism must be maintained, if at all, under the FSIA's

separate terrorism exception, 28 U.S.C. § 1605A;[5] (2) any decisions by Saudi Arabia or its

instrumentalities about distributing financial and material resources involved discretionary

---

[4] Plaintiffs stipulated that the allegations in the *Federal Insurance* complaint are representative of the allegations in the other complaints in which Saudi Arabia is named as a defendant.  *See infra* p. 8.

[5] At the time, the state-sponsor-of-terrorism exception was codified at 28 U.S.C. § 1605(a)(7) (2000 & Supp. I 2001).  Former § 1605(a)(7) has since been repealed and replaced with § 1605A.

functions and were exempted from the torts exception; (3) under the entire-tort rule, the torts

exception does not apply because Plaintiffs failed to allege tortious conduct by Saudi Arabia or

its instrumentalities within the United States; and (4) Plaintiffs failed to plead a sufficient causal

link between any alleged actions of Saudi Arabia or its instrumentalities and the September

11 attacks.[6]

This Court (per Casey, J.) granted the Kingdom's and SHC's motions to dismiss in

January 2005 and September 2005, respectively.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 793,

802-04 (granting the Kingdom's motion to dismiss); *Terrorist Attacks II*, 392 F. Supp. 2d at 555

(granting SHC's motion to dismiss).  Judge Casey held that Plaintiffs' claims did not satisfy the

torts exception to FSIA immunity because they challenged discretionary functions.  The FSIA's

exception to immunity for non-commercial torts does not apply to "any claim based upon the

exercise or performance or the failure to exercise or perform a discretionary function regardless

of whether the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  Judge Casey explained that

Plaintiffs' allegations with respect to Saudi Arabia "ar[o]se predominantly" from claims that the

Saudi government "aided and abetted the terrorists" by supporting charities purportedly "under

the Kingdom's control."  *Terrorist Attacks I*, 349 F. Supp. 2d at 802-03 (internal quotation marks

omitted).  The Court concluded that Plaintiffs' concrete allegations concerned only Saudi

Arabia's alleged "treatment of and decisions to support Islamic charities."  *Id.* at 804.  Those

alleged decisions were "purely planning level 'decisions grounded in social, economic, and

political policy'" and were therefore discretionary functions outside the scope of the torts

exception.  *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

---

[6] *See* Mem. of Law in Supp. of Mot. To Dismiss of the Kingdom of Saudi Arabia at 9-14 (filed Aug. 4, 2004) (MDL ECF No. 374-2); Mem. of Law in Supp. of Def. SHC's Mot. To Dismiss at 14-16, 19-23 (filed June 25, 2004) (MDL ECF No. 262-2).

*Airlines)*, 467 U.S. 797, 814 (1984)).[7]  As to SHC – which, as an organ of the Kingdom, is entitled to immunity under the FSIA, 392 F. Supp. 2d at 553 – Judge Casey likewise held that its "decisions regarding the distribution of humanitarian relief funds were within the sole discretion of its Chairman Prince Salman and the advisors he selected," were "guided by the Kingdom's policies regarding Bosnia-Herzegovina," and thus were "the result of a discretionary function" that "cannot be the basis for overcoming SHC's immunity."  *Terrorist Attacks II*, 392 F. Supp. 2d at 555.

Following the Court's decisions granting the motions to dismiss, the parties stipulated that the Court's ruling in *Terrorist Attacks I* would apply to all actions naming Saudi Arabia as a defendant, on the ground that "the allegations and evidence" presented in the cases still pending did "not materially differ" from those presented in the cases already dismissed.[8]  The plaintiffs in other actions naming SHC likewise stipulated that they would be bound by all rulings of this Court and the court of appeals on SHC's motion to dismiss.[9]  On Plaintiffs' motion, the Court entered an order directing the clerk to enter a final judgment in favor of Saudi Arabia and SHC, among others, pursuant to Federal Rule of Civil Procedure 54(b), and the judgment was entered in January 2006.  *See* Order (filed Dec. 16, 2005) (MDL ECF No. 1554); Judgment (filed Jan. 10, 2006) (MDL ECF No. 1594).

---

[7] The Court also recognized that "the presidentially-appointed September 11 commission found no evidence of the Kingdom's funding or support for the September 11 terrorists." *Terrorist Attacks I*, 349 F. Supp. 2d at 803 (citing *9/11 Report* 171).

[8] Order of Dismissal at 3 (filed May 5, 2005) (MDL ECF No. 883); *see Terrorist Attacks*, 538 F.3d at 79 ("The plaintiffs conceded that the allegations and evidence in the other consolidated cases against [the Kingdom] did not materially differ from the allegations in the cases already dismissed.").

[9] *See* Stipulation with Regard to Rulings on Mots. To Dismiss of Def. SHC (filed May 19, 2005) (MDL ECF No. 918); Stipulation and Order with Regard to Rulings on Mots. To Dismiss of Def. SHC (filed May 20, 2005) (MDL ECF No. 941).

**B.**     **Second Circuit and Supreme Court Proceedings in 2008-2009**

In 2008, the Second Circuit affirmed this Court's judgment dismissing the cases against

Saudi Arabia and its instrumentalities, including SHC.  *See Terrorist Attacks*, 538 F.3d 71.

The court of appeals did not reach the discretionary-function issue that was the basis for Judge

Casey's decision granting the motions to dismiss.  Instead, the Second Circuit affirmed on the

alternative ground that the FSIA's torts exception is categorically inapplicable to claims based

on alleged support for terrorism.  *See id.* at 86-90.  The court of appeals acknowledged that the

sovereign defendants had raised "other challenges to the application of the Torts Exception" –

including that, "since the Torts Exception is limited to torts that are both committed and felt

within the United States, it does not concern a tortious act committed abroad"; that "the

'discretionary function' exclusion to the Torts Exception reinstates sovereign immunity";

and that, "for lack of causation, the plaintiffs fail to state a claim in tort in any event."  *Id.* at

90 n.15.  The Second Circuit explained that, in light of its conclusion that the torts exception

was categorically inapplicable to these cases, it was "unnecessary to reach these additional

arguments."  *Id.*[10]

Plaintiffs filed a certiorari petition, and the Supreme Court asked for the views of the

United States.  *See Federal Ins. Co. v. Kingdom of Saudi Arabia*, 555 U.S. 1168 (2009).  In

---

[10] Plaintiffs had also relied on the FSIA's commercial-activities exception to immunity, 28 U.S.C. § 1605(a)(2), as a basis for jurisdiction.  Both Judge Casey and the Second Circuit concluded that the commercial-activities exception is inapplicable.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 793; *Terrorist Attacks II*, 392 F. Supp. 2d at 554; *Terrorist Attacks*, 538 F.3d at 91-92.  No subsequent decision has cast any doubt on those conclusions, and they remain binding here.  Accordingly, the torts exception is the only potentially applicable exception to immunity for purposes of this renewed motion to dismiss.

response, the United States recommended that the Court deny the petition.[11]  Although it *disagreed* with the Second Circuit's holding that the torts exception does not apply to terrorism cases, the United States told the Supreme Court that the Second Circuit properly upheld the dismissal of Saudi Arabia and its instrumentalities under the FSIA.  *See* U.S. Amicus Br. 3 ("The lower courts correctly concluded that Saudi Arabia and its officials are immune from suit for governmental acts outside the United States.").

In particular, the United States concluded that Saudi Arabia and its instrumentalities are immune from suit under the entire-tort rule.  It explained that the FSIA's torts exception "'covers only torts occurring within the territorial jurisdiction of the United States.'"  *Id.* at 11 (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989)).  "The tort exception's territorial limitation protects against conflict that would arise from asserting jurisdiction over a foreign government's actions taken in its own territory, and also serves to deter foreign courts from exercising jurisdiction over the United States for actions taken in the United States."  *Id.* at 15.  Applying the entire-tort rule to these cases, the United States concluded that Plaintiffs' complaints do not "allege that Saudi Arabia, its officials, or employees, committed tortious acts within the United States" and therefore "do not satisfy" the entire-tort rule.  *Id.* at 12.  The Supreme Court denied review.  *See Federal Ins. Co. v. Kingdom of Saudi Arabia*, 557 U.S. 935 (2009).

## C.    Plaintiffs' Rule 60(b) Motion and the Second Circuit's Decision

In November 2011, the Second Circuit decided *Doe v. Bin Laden*, which involved allegations that Afghanistan directly assisted al Qaeda in planning and executing the September 11 attacks.  Partially overruling its 2008 decision in *Terrorist Attacks*, the court of appeals held

---

[11] *See* Br. for the United States as Amicus Curiae, No. 08-640 (U.S. filed May 29, 2009), 2009 WL 1539068 ("U.S. Amicus Br.").

that "the terrorism exception, rather than limiting the jurisdiction conferred by the noncommercial tort exception, provides an additional basis for jurisdiction."  663 F.3d at 70 & n.10.  It emphasized its desire to "be clear" that it "ma[d]e no judgment as to whether the allegations in the complaint" before it in *Doe* were "sufficient to state a claim or even to provide jurisdiction" under the FSIA. *Id.* at 70-71.

Following *Doe*, Plaintiffs moved under Rule 60(b) for relief from the final judgments in favor of Saudi Arabia and SHC.  This Court denied that motion, but the Second Circuit reversed. *See Terrorist Attacks*, 741 F.3d 353.  The court of appeals concluded that *Doe*'s overruling of the Second Circuit's 2008 decision in *Terrorist Attacks* warranted reopening the judgments dismissing the cases against Saudi Arabia and SHC under Rule 60(b).  *See id.* at 356-59.  The Second Circuit recognized three other potential grounds for dismissing Saudi Arabia and its instrumentalities under the FSIA – namely, Judge Casey's 2005 decision applying "the discretionary function limitation"; "the 'entire tort' rule"; and that "plaintiffs have not sufficiently shown causation."  *Id.* at 359.  It stated that "[a]ll these issues may be considered by the District Court on remand."  *Id.*

11

**ARGUMENT**

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Amerada Hess*, 488 U.S. at 434.  It provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  Saudi Arabia and its instrumentalities are foreign sovereigns under the FSIA.  *See*, *e.g.*, *Terrorist Attacks I*, 349 F. Supp. 2d at 802; *Terrorist Attacks II*, 392 F. Supp. 2d at 554.  They are therefore "presumptively immune from the jurisdiction of United States courts[] unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  The FSIA's exception to immunity for non-commercial tort claims, 28 U.S.C. § 1605(a)(5), is the only potentially applicable exception here. *See supra* note 10.  As set forth below, that exception does not provide jurisdiction over Plaintiffs' claims.

In moving to dismiss under the FSIA, a sovereign defendant "may challenge either the legal or factual sufficiency of the plaintiffs' assertion of jurisdiction, or both." *Robinson*, 269 F.3d at 140.  Here, Plaintiffs' assertions of jurisdiction are both legally and factually insufficient. Legally, Plaintiffs' complaint rests on key premises that are no more than "bald assertions" and "[c]onclusory allegations," *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (internal quotation marks omitted) – the sort that do not suffice even in an ordinary civil action under Rule 8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), much less under the FSIA.  Factually, Plaintiffs also cannot meet their "burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." *Terrorist Attacks*, 714 F.3d at 114 (internal quotation marks omitted).  Both those legal and factual deficiencies compel the dismissal of their complaints for lack of jurisdiction without further proceedings.

I.     **Plaintiffs' Claims Are Barred Under the FSIA Because They Have Failed To Allege Facts That Could Satisfy the Entire-Tort Rule**

Plaintiffs cannot satisfy the torts exception because they have not properly alleged – and certainly cannot provide any evidence – that any of the supposed actions by Saudi Arabia and its instrumentalities to support al Qaeda occurred within the United States.

A.     **The Entire-Tort Rule Requires Tortious Activity Within the United States**

To fall within the torts exception, the "entire tort" – that is, the allegedly tortious activity itself, not just the injury that results from it – "must be committed in the United States." *Terrorist Attacks*, 714 F.3d at 115.  The entire-tort rule "was first articulated by the Supreme Court" in *Amerada Hess*.  *Id.* at 115-16; *see Amerada Hess*, 488 U.S. at 441 (FSIA's torts exception "covers only torts occurring within the territorial jurisdiction of the United States").  The Second Circuit subsequently "described and explained the 'entire tort' rule in *Cabiri v. Government of Ghana*, 165 F.3d 193 (2d Cir. 1999)." *Terrorist Attacks*, 714 F.3d at 116; *see Cabiri*, 165 F.3d at 200 n.3. Two other circuits have likewise applied the entire-tort rule.  *See Terrorist Attacks*, 714 F.3d at 116 (citing *O'Bryan v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009), and *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1525 (D.C. Cir. 1984) (Scalia, J.)).  The Executive Branch has embraced that rule as well:  "The domestic tort exception . . . requires . . . that 'the tortious act or omission of th[e] foreign state or of any official or employee' be committed within the United States."  U.S. Amicus Br. 14 (quoting 28 U.S.C. § 1605(a)(5)).

As the D.C. Circuit explained, "the briefest consideration of the purposes of the statute shows that . . . both the tort and the injury must occur in the United States." *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984); *see Terrorist Attacks*, 714 F.3d at 116 n.8; *O'Bryan*, 556 F.3d at 381-82.  In enacting the torts exception, "Congress' principal concern was with torts committed in this country" – "'*primarily . . . traffic accidents*.'"  *Persinger*, 729 F.2d

at 840 (quoting H.R. Rep. No. 94-1487, at 20-21 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604,

6619); *see Amerada Hess*, 488 U.S. at 439-40 ("Congress' primary purpose in enacting

§ 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts

committed in the United States").  The D.C. Circuit reasoned that, "[i]f Congress had meant to

remove sovereign immunity for governments acting on their own territory, with all of the

potential for international discord and for foreign government retaliation that that involves, it is

hardly likely that Congress would have ignored those topics and discussed instead automobile

accidents in this country."  *Persinger*, 729 F.2d at 841.  The tort exception's "territorial

limitation" serves important policies:  it "protects against conflict that would arise from asserting

jurisdiction over a foreign government's actions taken in its own territory, and also serves to

deter foreign courts from exercising jurisdiction over the United States for actions taken in the

United States."  U.S. Amicus Br. 15.

In its April 2013 decision in *Terrorist Attacks*, the Second Circuit applied the entire-tort

rule in upholding the dismissal of two Saudi instrumentalities that it described as

"similarly-situated" to "the Kingdom."  714 F.3d at 112; *see id.* at 115-17.  There, "plaintiffs d[id]

not claim that the 'torts' allegedly committed by the [defendants] occurred in the United States,"

but instead "that the injuries and damage caused by the September 11, 2001 attacks in the United

States were related to, and a result of, the actions taken by the [defendants] abroad – namely,

allegedly contributing financial and other resources to support Osama Bin Laden and al Qaeda."

*Id.* at 116.  Those allegations were "insufficient to satisfy the requirements of the FSIA's

noncommercial tort exception" and therefore could not "strip the [defendants] of their

jurisdictional immunity from suit."  *Id.* at 116-17.  It was not enough for the plaintiffs to assert

that the two sovereign defendants "provid[ed] funding and other aid to entities that purportedly

supported al Qaeda" because "the actions allegedly taken . . . in this regard took place completely outside the United States." *Id.* at 117.

Here, too, Plaintiffs have not alleged that Saudi Arabia or its instrumentalities committed any act, much less a tortious one, in the United States.  Plaintiffs do not allege that Saudi Arabia or its instrumentalities participated in, or even knew in advance about, the events of September 11, 2001.  The allegation is rather that they funneled money through certain charities to al Qaeda, thereby providing material support to the terrorists.  As the United States has explained, that kind of claim fails under the entire-tort rule:

> [T]he tort exception's territorial limitation cannot be avoided by pleading the kind of "material support" claim that falls within the terrorism exception when brought against a country designated [as a state sponsor of terrorism] by the Secretary of State.  To satisfy the domestic tort exception, petitioners must allege that Saudi Arabia, its officials, or employees, committed tortious acts within the United States.  [Plaintiffs'] complaints do not satisfy that requirement.

U.S. Amicus Br. 12.  Further, as the Second Circuit has now made clear, it is irrelevant that the September 11 attacks themselves occurred in the United States.  Those attacks were "distinct and separate" torts from those that involve "giving money and aid to purported charities that supported al Qaeda," and those attacks therefore cannot serve as a basis for avoiding the entire-tort rule.  *Terrorist Attacks*, 714 F.3d at 117 n.10.

Plaintiffs have also sought to attribute the alleged acts of various charitable organizations to Saudi Arabia on some theory of agency.  But, as the United States explained, "jurisdiction under the tort exception must be based entirely on acts *of the foreign state* within the United States."  U.S. Amicus Br. 15 (emphasis added); *see id.* at 16 ("It is the foreign state's act or omission – and not that of any third party – that must occur in the United States.").  Jurisdiction under the FSIA "cannot be based on the tortious acts of third parties, even if the applicable

substantive law would permit holding the foreign state liable for those acts under a theory of secondary liability." *Id.*

In addition, Plaintiffs have not properly alleged that any charities were agents of Saudi Arabia, such that their acts could be attributable to Saudi Arabia itself.  As the United States also explained, "[e]specially in light of the law's respect for corporate personality, which the FSIA recognizes, see *Dole Food[ Co. v. Patrickson]*, 538 U.S. [468,] 474-76 [(2003)], the complaint's 'formulaic recitation,' *[Ashcroft v.] Iqbal*, [556 U.S. 662, 681 (2009)] (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), of incidents of control by Saudi Arabia – repeated verbatim with respect to eight charities, see *[Fed. Ins.* Compl.] (¶¶ 85, 114, 131, 151, 168, 181, 191, 208) – provides an insufficient basis for deeming the acts of the charities to be those of Saudi Arabia." *Id.* at 17 n.4; *see also Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848-52 (D.C. Cir. 2000).

**B.     The Al Bayoumi Allegations Do Not Satisfy the Entire-Tort Rule**

In recent filings, Plaintiffs have relied heavily on a debunked theory that an individual named Omar Al Bayoumi was a Saudi intelligence agent who aided two individuals who were later among the September 11 hijackers.  The *Federal Insurance* complaint alleges that Al Bayoumi met with "two of the . . . hijackers" at an unstated time in Los Angeles, that he "facilitated . . . [their] settlement in the San Diego community, and paid two months rent for an apartment on their behalf." *Fed. Ins.* Compl. ¶ 413.  Plaintiffs have sought to attribute these actions to Saudi Arabia on the basis of an allegation that, "[a]ccording to various sources, Al-Bayoumi is an intelligence agent of the Kingdom of Saudi Arabia." *Id.*  ¶ 414.  As the United States advised the Supreme Court in 2009, Plaintiffs' allegations concerning Al Bayoumi

16

– which apply only to the claims against the Kingdom, not SHC – are insufficient to state a plausible claim. *See* U.S. Amicus Br. 16 n.4.

The allegation that Al Bayoumi was an agent of Saudi Arabia – whether an intelligence agent or any other kind – is "no more than [a] conclusion[]" that is "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). During the relevant period, Al Bayoumi was concededly "in the employment of Dallah Avco," *Fed. Ins.* Compl. ¶ 415 – a private corporation that is a Saudi government contractor but not part of the Saudi government. Under ordinary civil pleading standards, Plaintiffs' undeveloped assortment of facts[12] do not provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 556, that Al Bayoumi was also employed by Saudi Arabia at the relevant time at all, much less that he was acting within the scope of any such employment when he allegedly met with the two future hijackers.

In addition, the *Federal Insurance* complaint does not allege, even in conclusory fashion, that Al Bayoumi (or anyone else relevant) knew or should have known that the two men were terrorists or that they were planning an attack on the United States. Nor does it provide any factual basis that could support such an allegation. The two individuals named as hijackers ("Khalid al-Midhar and Nawaf Al Hazmi," *Fed. Ins.* Compl. ¶ 411) are not named anywhere else in the *Federal Insurance* complaint, and there is no allegation that Al Bayoumi met them before or afterwards. That omission is fatal, because without such knowledge Al Bayoumi's alleged

_____

[12] Plaintiffs allege that, for some part of his employment by Dallah Avco, Al Bayoumi "was considered a Saudi civil servant" (by whom is left unstated), *Fed. Ins.* Compl. ¶ 415; that the Saudi government "reimbursed Dallah Avco for [his] salary," *id.*; and that in 1999 the Saudi "aviation authority" sent a letter to Dallah Avco urging that Al Bayoumi's "contract [be] renewed 'as quickly as possible,'" *id.* ¶ 418. Viewed in the light of "judicial experience and common sense," those sparse data points "do not permit the court to infer more than the mere possibility" that Al Bayoumi was working for Saudi Arabia when he met with the hijackers. *Iqbal*, 556 U.S. at 679.

actions would not have been tortious – and the entire-tort doctrine requires a "*tortious* act in the United States." *Terrorist Attacks*, 714 F.3d at 117 (emphasis added).

Finally, even if the Al Bayoumi allegations were facially sufficient to state a claim (which they are not), they are factually unsupported. Both the 9/11 Commission and the FBI interviewed and investigated Al Bayoumi. *See 9/11 Report* 217-19, 515-16 n.19. The *9/11 Report* found that, although Al Bayoumi did help the two future hijackers find an apartment and sign a lease, he "[n]either then nor later . . . g[a]ve money to them"; that there was "no credible evidence that [Al Bayoumi] believed in violent extremism or knowingly aided extremist groups"; and that "investigators who ha[d] dealt directly with him and studied his background f[ou]nd him to be an unlikely candidate for clandestine involvement with Islamist extremists." *Id*. at 218.[13] Plaintiffs have not met and cannot meet their burden of coming forward with evidence to the contrary.

In sum, because Plaintiffs have not even sought to allege that Saudi Arabia and its instrumentalities "participated in the September 11, 2001 attacks," and because they have not properly alleged and in any event cannot prove that Saudi Arabia or any of its instrumentalities "committed any tortious act in the United States," the entire-tort rule bars their claims. *Terrorist Attacks*, 714 F.3d at 117.

---

[13] Plaintiffs have also alleged that Al Bayoumi met with an alleged Saudi diplomat named Fahad Al Thumairy, who they say "was stripped of his diplomatic visa and later barred from the United States based on suspected ties to terrorism." *Fed. Ins.* Compl. ¶ 412. "Suspected ties to terrorism" are not a tort; there is no allegation (conclusory or otherwise) that Al Thumairy did anything but meet Al Bayoumi, and no allegation about what was done or said at that meeting. The 9/11 Commission, "after exploring the available leads, [did] . . . not f[i]nd evidence that Thumairy provided assistance" to Al Hazmi or Al Mihdhar. *9/11 Report* 217.

## II.      Plaintiffs' Claims Are Barred Under the FSIA Because the Facts Alleged Describe Only Discretionary Policy Decisions Exempt from the FSIA's Torts Exception

As Judge Casey correctly ruled in 2005, the FSIA's torts exception also does not provide jurisdiction over Plaintiffs' claims against Saudi Arabia and its instrumentalities because the actions they are alleged to have taken involve the exercise of policy discretion.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 803-04; *Terrorist Attacks II*, 392 F. Supp. 2d at 555.

The FSIA excludes from the scope of the torts exception "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A).  The purpose of discretionary-function immunity is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Swarna v. Al-Awadi*, 622 F.3d 123, 146 (2d Cir. 2010) (quoting *Varig Airlines*, 467 U.S. at 814 (construing Federal Tort Claims Act's comparable discretionary-function limitation, on which the FSIA's provision was modeled)).  "Generally, acts are discretionary if they are performed at the planning level of government, as opposed to the operational level." *Terrorist Attacks I*, 349 F. Supp. 2d at 794.

Plaintiffs' claims against Saudi Arabia and its instrumentalities are based primarily on contributions and other support they are alleged to have provided to Islamic charities that in turn were alleged to have funded al Qaeda.  But the decisions to support Islamic charities, and the determinations made by the Saudi government and its instrumentalities about which charities to support, are integral aspects of Saudi Arabia's leadership role in the Islamic world.  As Judge Casey held, those decisions have substantial social and political dimensions and are thus immune from challenge under the FSIA.  *See id.* at 804 (Saudi Arabia's "treatment of and decisions to support Islamic charities are purely planning level 'decisions grounded in social, economic, and

political policy' " and are immune from suit) (quoting *Varig Airlines*, 467 U.S. at 814); *Terrorist Attacks II*, 392 F. Supp. 2d at 555 (Plaintiffs' allegations as to SHC "could not overcome the discretionary function exemption" because SHC's "decisions regarding the distribution of humanitarian relief funds were within the sole discretion of its Chairman Prince Salman" and "guided by the Kingdom's policies regarding Bosnia-Herzegovina").

No subsequent decision has called into question these rulings.  Although the Second Circuit affirmed Judge Casey's decisions based on different reasoning, it cast no doubt on the correctness of the conclusion that discretionary-function immunity bars Plaintiffs' claims against the Kingdom and its instrumentalities.  *See* 538 F.3d at 90 n.15.

The fact that these discretionary funding decisions supposedly resulted in acts of terrorism does not defeat sovereign immunity.  The discretionary-function limitation applies to "*any* claim" challenging a discretionary function "*regardless of whether the discretion be abused*."  28 U.S.C. § 1605(a)(5)(A) (emphases added).  It would rob that language of all meaning if Plaintiffs could circumvent it merely by claiming that a particular alleged abuse of discretion was illegal or extraordinary.  As the D.C. Circuit has explained in a related context, the alleged "heinousness" of a discretionary decision "is not sufficient to give [courts] jurisdiction," because "[n]either the substantive basis of the tort, nor the seriousness of the crime, is relevant to the question of jurisdiction" under the FSIA.  *Persinger*, 729 F.2d at 843 n.12.

In sum, Judge Casey's rulings that discretionary-function immunity bars Plaintiffs' claims have never been called into question by any subsequent decision, and they remain correct.

## III.   Plaintiffs Have Failed To Allege Causation

Jurisdiction under the FSIA also is lacking because Plaintiffs have not adequately alleged causation for purposes of the FSIA's torts exception.  That exception applies only to claims for injuries "*caused by* the tortious act or omission" of a foreign sovereign.  28 U.S.C. § 1605(a)(5)

(emphasis added).  The words "caused by" in § 1605(a)(5) incorporate common-law principles

of tort causation.  *See Robinson*, 269 F.3d at 142 (to determine whether torts exception applies,

court must "decide whether [the defendant's alleged] acts were tortious under the law" that

"would apply to the merits of the claim").  Further, in light of the purpose of the torts exception –

and, again, its focus on traffic accidents, *see supra* pp. 13-14 – courts have held that § 1605(a)(5)

"should be narrowly construed so as not to encompass the farthest reaches of common law."

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 19 (D.D.C. 2003) (internal quotation

marks omitted).

Here, Plaintiffs' allegations of causation are based on boilerplate, conclusory assertions

that the September 11 attacks were a "direct, intended and foreseeable product of [Defendants']

participation in al Qaida's jihadist campaign."  *Fed. Ins.* Compl. ¶ 425.  As the D.C. district

court recognized in dismissing claims against several Saudi officials, Plaintiffs' theory is that

"(i) [the Kingdom and its instrumentalities] funded (ii) those who funded (iii) those who carried

out the September 11th attacks."  *Burnett*, 292 F. Supp. 2d at 20.  Accepting that theory of

causation "would stretch the causation requirement of the noncommercial tort exception not

only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita."  *Id.*;

*cf. Licci v. American Express Bank Ltd.*, 704 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2010) (allegations

that bank facilitated wire transfers to terrorist groups, which enabled terrorist acts resulting in

plaintiffs' injuries, insufficient to establish proximate causation under New York law), *aff'd*

*sub nom. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012)

(per curiam).

In *Robinson*, the Second Circuit elaborated on the dangers of allowing "conclusory . . .

allegations . . . to sustain jurisdiction" under the FSIA.  269 F.3d at 146.  Basing federal

jurisdiction on "generic allegations of [misconduct]," the court of appeals warned, "would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints – and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law." *Id.* Refusing to dismiss such claims would be "at odds with the goal of the FSIA to enable a foreign government to obtain an early dismissal when the substance of the claim against it does not support jurisdiction." *Id.*

Those concerns apply with far greater force here. *Robinson* involved a routine slip-and-fall claim. *See id.* at 135. The claims in these cases, by contrast, accuse a foreign sovereign of complicity in a heinous terrorist attack, and the theories of tort liability and causation are novel and unsupported. It is therefore all the more important here to require proper allegations of "a 'tortious act or omission' caused by the [Saudi] government," *id.* at 145, before permitting these actions to persist any longer. Because Plaintiffs have not properly alleged that any act of Saudi Arabia or its instrumentalities caused their damages, their claims should be dismissed without delay.

## IV.   Jurisdictional Discovery Has Been Waived and Is Unjustified

In the recent appeal to the Second Circuit, Plaintiffs suggested that they would seek jurisdictional discovery if they succeeded in obtaining a remand to this Court. *See Terrorist Attacks*, 741 F.3d at 359. It is too late for them to do so. Plaintiffs had an opportunity to seek discovery in 2005, before Judge Casey granted the original motions to dismiss, and they did not take that opportunity.[14] Even on appeal, Plaintiffs did not argue that jurisdictional discovery was

---

[14] In opposing Saudi Arabia's and SHC's original motions to dismiss, Plaintiffs did not argue that there was any dispute regarding a fact material to the applicability of the torts

necessary to resolve the discretionary-function issue,[15] and similarly did not argue for discovery into the actions of Al Bayoumi or of Al Thumairy.[16] They have now obtained a remand to this Court on the theory that they were previously "never able to obtain [appellate] review of [Judge Casey's] basis for dismissing their claims." *Id.* That does not and should not include a new chance nine years later to ask for discovery they never timely sought.

Even if Plaintiffs were allowed to request jurisdictional discovery at this late date, they could not establish an entitlement to it. Judge Casey correctly determined that "no jurisdictional discovery is necessary" because "there were no factual disputes raised in the Court's resolution of" the Kingdom's motion. *Terrorist Attacks I*, 349 F. Supp. 2d at 804; *see also Terrorist Attacks II*, 392 F. Supp. 2d at 553 ("Plaintiffs have not identified a factual dispute that would require jurisdictional discovery [as to SHC's claim of foreign sovereignty]."). "[I]n the FSIA context, discovery should be ordered circumspectly and only to verify allegations of *specific facts* crucial to an immunity determination." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (internal quotation marks omitted; emphasis added). For all the reasons we have given, Plaintiffs' nonspecific allegations of misconduct are not enough to justify discovery against foreign sovereigns presumptively entitled to immunity under the FSIA.[17]

---

exception that would require jurisdictional discovery. *See* Fed. Pls.' Mem. of Law in Opp. to Mot. To Dismiss at 21 (filed Oct. 1, 2004) (MDL ECF No. 471); Pls.' Consol. Mem. of Law in Opp. to Mot. To Dismiss of Def. SHC at 12-22 (filed Aug. 24, 2004) (MDL ECF No. 397).

[15] *See* Br. of the *Federal Insurance* Pls.-Appellants at 22-33, No. 06-0319-cv (2d Cir. filed Jan. 5, 2007).

[16] *See id.* at 13, 22 n.10 (describing allegations concerning Al Bayoumi and Al Thumairy; no requests for discovery).

[17] Plaintiffs also suggested on appeal that *Doe* supported their requests for jurisdictional discovery. There, the Second Circuit remanded for jurisdictional discovery on the discretionary-function exclusion because the defendant had *requested* such discovery if the court determined that the suit was properly cognizable under the torts exception rather than the

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' actions against Saudi

Arabia and SHC in their entirety for lack of jurisdiction under the FSIA.[18]

Respectfully submitted,

/s/ *Michael K. Kellogg*

Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)
*Attorneys for the Kingdom of Saudi Arabia*

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)
*Attorneys for the Saudi High Commission
for Relief of Bosnia & Herzegovina*

September 15, 2014

---

terrorism exception.  *See Doe*, 663 F.3d at 66 ("Afghanistan had requested [jurisdictional discovery] if its motion to dismiss [contending that the torts exception cannot apply in terrorism cases] were denied"); *id.* at 65 ("we remand the case for jurisdictional discovery as requested by Afghanistan in the district court").  Neither Saudi Arabia nor SHC has made such a request here.

[18] Saudi Arabia and SHC have additional defenses based on justiciability and failure to state a claim that are not asserted in this motion.  Those contentions are not subject to waiver, *see* Fed. R. Civ. P. 12(h)(2), (3), and Saudi Arabia and SHC reserve their rights to assert them if this Court declines to dismiss for lack of subject-matter jurisdiction under the FSIA.

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 15th day of September 2014, I caused copies of the foregoing document to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/ *Michael K. Kellogg*

Michael K. Kellogg