

Robert K. Kry
MoloLamken LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
T: 202.556.2011
F: 202.556.2001
rkry@mololamken.com
www.mololamken.com

September 19, 2014

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

BY ECF AND FEDERAL EXPRESS

    Re:  *In Re: Terrorist Attacks on September 11, 2001*, **No. 03 MDL 1570 (GBD) (FM)**

Dear Judge Maas:

    We represent defendant Dallah Avco and write in response to plaintiffs' second motion to compel filed on August 29, 2014 (Dkt. 2886). Unlike plaintiffs' first motion, which raised important legal issues that were ripe for the Court's determination, plaintiffs' second motion seeks this Court's premature intervention into matters that could and should have been resolved by counsel without the Court's involvement.

    Rule 37(a)(1) requires a party, before moving to compel, to "certif[y] that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." That rule requires "serious attempts to reach agreement." *Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007). It is not satisfied where the "'communications do not show a willingness to compromise or find solutions.'" *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2013 WL 6283511, at *3 (S.D.N.Y. Dec. 4, 2013). In particular, a "good faith effort to resolve" a dispute requires "an exchange of information until no additional progress [is] possible." *Medtrica Solutions Ltd. v. Cygnus Med. LLC*, No. C12-538RSL, 2013 WL 5966689, at *2 (W.D. Wash. Nov. 7, 2013).

    Plaintiffs did not comply with that requirement here. During the parties' one and only telephone conference on February 14, 2014, plaintiffs asked for information about the scope of Dallah Avco's search. Counsel provided what information we could during that call.[1] We then followed up after the call with a detailed email providing additional information on February 26. Dkt. 2883-7. The thoroughness of that email speaks for itself and makes clear that Dallah Avco was attempting to cooperate in good faith. *See id.*

---

[1] Undersigned counsel had only recently been retained at that point, hence, that information had been provided by co-counsel.

Plaintiffs did not respond to, question the sufficiency of, or even acknowledge receipt of that email. In fact, after the telephone conference on February 14, ***plaintiffs' counsel did not communicate with Dallah Avco's counsel even once for over six months***. As noted, we sent a detailed email on February 26 addressing various issues plaintiffs had raised during the call. We also furnished a revised privilege log and document production on May 30. Plaintiffs did not respond to either communication. Finally, on August 19, plaintiffs wrote to request a page-limit extension for a motion to compel on the Saudi Penal Law and confidentiality issues, which was filed August 25. That email did not mention the search issue either. And while plaintiffs had asked for information about the search during the February 14 call, at no time did plaintiffs assert that Dallah Avco was violating the Federal Rules of Civil Procedure by providing inadequate responses to those questions.

Then, out of nowhere, plaintiffs filed their second motion to compel on August 29, asserting that Dallah Avco had violated Rule 34 by failing to provide information about its search. That motion does not seek any substantive relief but merely asks this Court to order Dallah Avco to provide information. Plaintiffs, however, did not have to write the Court to obtain that relief. A simple email or call to counsel would have sufficed, and counsel would have been more than willing to provide an update. Instead, plaintiffs failed to communicate for over six months and then wrote the Court without any prior warning. That does not constitute a good faith effort to meet and confer. *See, e.g.*, *Medtrica*, 2013 WL 5966689, at *1 (single telephone conference did not satisfy meet and confer requirement where the possibility of resolving the dispute remained); *Simms v. Ctr. for Corr. Health & Policy Studies*, 272 F.R.D. 36, 39 (D.D.C. 2011) (meet and confer requirement not satisfied where movant never "affirmatively reach[ed] out . . . to try to resolve the issue").

Nevertheless, Dallah Avco will endeavor to provide below the information that plaintiffs have requested. Plaintiffs' letter actually addresses two distinct issues: (1) the required scope of the search; and (2) the steps taken in conducting the search.

With respect to the first issue, Dallah Avco made clear during the February 14 call that discovery should be limited to documents and information "relating to Omar Al Bayoumi." That limitation is reasonable given that jurisdictional discovery is supposed to be narrow and focused on the specific jurisdictional dispute. "Such discovery must . . . be 'limited to the essentials necessary to determining the preliminary question of jurisdiction.' Plaintiffs may not conduct a fishing expedition, but must 'target[ ] information pertinent to the well established factors involved in a jurisdictional inquiry.'" *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002) (citations omitted); *see also City of New York v. Permanent Mission of India to the United Nations*, No. 03 Civ. 3256, 2004 WL 2710040, at *4 (S.D.N.Y. Nov. 23, 2004) (Maas, M.J.) ("Such detailed discovery plainly is beyond the scope of the limited jurisdictional discovery to which the [plaintiff] is entitled at this juncture."); *Chong v. Healthtronics, Inc.*, No. 06-cv-1287, 2007 WL 1836831, at *8 (E.D.N.Y. June 20, 2007) (granting "leave to conduct jurisdictional discovery . . . to the extent that . . . such discovery [is] limited to the facts necessary to establish general jurisdiction").

The Second Circuit remanded this case to address one specific jurisdictional issue — whether Dallah Avco was subject to jurisdiction based on plaintiffs' theory that it provided

"cover employment" to an alleged Saudi operative, Omar al Bayoumi. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013) ("[P]laintiffs' allegations suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States, although questions about Dallah Avco's knowledge regarding al Bayoumi's activities remain."). Discovery should therefore be limited to documents and information that relate in some way to Omar al Bayoumi. There is no basis for wide-ranging discovery into documents and information that do ***not*** relate to Mr. al Bayoumi.[2]

Ignoring the narrow scope of jurisdictional discovery, plaintiffs served document requests on ***56 different topics***. Dkt. 2883-3. Many of those requests seek documents that do not relate to Mr. al Bayoumi and are plainly beyond the scope of appropriate jurisdictional discovery. Some of the most egregious examples include No. 39 ("all documents governing, describing, detailing, or otherwise relating to any relationship between Dallah Avco and the Kingdom of Saudi Arabia"); No. 33 ("all documents governing, describing, detailing, or otherwise relating to any relationship between Dallah Avco and the Saudi Civil Aviation Administration (SCAA)"); and No. 56 ("all documents relating to any understanding or agreement between You and any individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse You for any of the costs associated with defending this lawsuit"). On the other hand, some of the requests seek categories of information relating to Mr. al Bayoumi and therefore are not objectionable on this ground (Nos. 1-17, 24-30, 34, 36, 38, and 41-44).

Plaintiffs also speculate that Dallah Avco may have "limited its search to documents specifically referencing Omar al Bayoumi (perhaps even failing to account for language translations or variations due to transliteration)." Dkt. 2886 at 3. That is not a correct reflection of Dallah Avco's position. Dallah Avco does not dispute that a document may relate to Omar al Bayoumi even if it does not specifically mention him by name, and Dallah Avco certainly is not taking the position that whether a document relates to Mr. al Bayoumi depends on how his name is translated or transliterated. Dallah Avco's position is simply that it should not have to search for documents that do not relate to Mr. al Bayoumi in any way. That position was made clear during the February 14 call, and if there were any doubts, we were certainly available to clear them up if plaintiffs had contacted us during the intervening six months.

The second issue plaintiffs raise is the steps taken in connection with the search. Dallah Avco's counsel provided some information on that topic during the February 14 call, and provided additional information in the February 26 email. That email indicated that counsel was still trying to determine certain information such as "specific document custodians." Dkt. 2883-7 at 2. Unfortunately, counsel was never able to provide that information. Following the February 26 email, it was determined that the documents Dallah Avco had listed on its privilege log had resulted from an earlier effort to collect documents relating to Omar al Bayoumi, and

---

[2] Dallah Avco anticipates that discovery will show that its relationship with Mr. al Bayoumi was attenuated at best, and that Dallah Avco did not direct or supervise Mr. al Bayoumi's activities in the United States or have any knowledge of his alleged actions on which plaintiffs rely. In any event, both the 9/11 Commission and the FBI investigated the accusations against Mr. al Bayoumi and concluded that he was not complicit in the 9/11 attacks. Dkt. 2889 at 2.

that the Dallah Avco official responsible for coordinating that effort had left the company some time ago and therefore was no longer available to provide the information.

Dallah Avco ultimately concluded that the appropriate course of action, to avoid any questions about its good-faith compliance with discovery obligations, was to redo the search so that Dallah Avco would have a full record of the steps taken. Unfortunately, that effort has met with significant challenges. It appears that most of Dallah Avco's files relating to the ANSS project from the 1995-2002 timeframe are currently stored at an offsite location known as "Dallah City," which contains more than one million unindexed documents and files from more than 20 affiliated companies spanning more than 25 years. Dallah Avco conducted an investigation in an effort determine how best to go about retrieving the ANSS files. That investigation ultimately concluded that retrieving the files would essentially be impossible with Dallah Avco's existing staff and financial resources. Nonetheless, Dallah Avco determined to persist in its efforts to retrieve the files. Dallah Avco is currently in the process of obtaining an additional allocation of budget authority from its parent company to fund the retrieval project and additional full-time staff specifically dedicated to work on that project.

Dallah Avco is therefore trying its utmost to comply with its discovery obligations despite the adverse circumstances described above. To be clear, Dallah Avco has no reason to believe that Dallah City contains documents of any particular significance to the case. Rather, Dallah Avco expects that the Omar al Bayoumi documents already listed on its privilege log are the ones at the heart of the case. Nonetheless, to ensure that it has conducted a thorough and diligent search, Dallah Avco is taking the additional steps described above.[3]

We hope that the foregoing information has adequately addressed plaintiffs' concerns. If not, we remain available to discuss the matters with them further at their convenience.

                                                          Respectfully submitted,

                                                          Robert K. Kry

cc:     all counsel by ECF

---

[3] Dallah Avco understands that the production deadline for all defendants is currently proposed for December 15, 2014. Although Dallah Avco is working diligently to fulfill its discovery obligations, based on the information currently available to it, Dallah Avco believes it is not likely to be able to meet that deadline with respect to the Dallah City documents. Dallah Avco will meet and confer with plaintiffs over those timing issues as information develops.