# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

October 3, 2014

The Honorable Frank Maas
United States District Court for the
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007-1312

    Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

    The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter brief in reply to the September 19, 2014 letter brief of defendant Dallah Avco Trans Arabia ("Dallah Avco") (hereinafter "Opposition"), which was submitted in response to plaintiffs' August 29, 2014 motion to compel Dallah Avco to disclose the scope of its searches for responsive documents, and further identify which of plaintiffs' requests have been included within the scope of those searches. For the reasons set forth below, plaintiffs respectfully submit they are entitled to the relief sought in the August 29 motion to compel.

**I. DALLAH AVCO CONTINUES TO DISREGARD ITS DISCOVERY OBLIGATIONS PURSUANT TO FED. R. CIV. P. 34**

    Plaintiffs' August 29 motion is clear that there are two very discrete discovery issues defendant Dallah Avco has been asked to address. Specifically, the motion seeks an order requiring Dallah Avco to: (1) provide detailed information regarding any and all searches conducted by the defendant for documentation and information responsive to plaintiffs' jurisdictional discovery; and (2) identify, in relation to each of plaintiffs' jurisdictional requests, whether searches for responsive documents have been conducted, and whether those searches were subject to any limitations based on Dallah Avco's asserted objections. Dallah Avco's Opposition largely evades these issues, instead offering (inaccurate) arguments about the content and adequacy of the meet-and-confer process, and substantive arguments about the Second Circuit's remand, an issue not at all implicated by the narrow and specific relief sought through plaintiffs' motion. Moreover, the very limited information Dallah Avco has offered in support of its attempt at misdirection raises additional concerns that the defendant has only recently initiated efforts to locate and obtain potentially responsive materials, raising the significant question whether

adequate steps were undertaken to preserve relevant documents at the beginning of this litigation. Accordingly, intervention by this Court is necessary.

At the outset of its Opposition, Dallah Avco goes to great lengths to suggest that it was "blindsided" by plaintiffs' August 29 motion. But that argument is unpersuasive. As discussed in the August 29 motion, plaintiffs made it explicitly clear to the defendant during the February 14, 2014 meet-and-confer that Dallah Avco's broad discovery objections made it impossible to determine whether the defendant had conducted any searches for documents in response to plaintiffs' individual document requests. Indeed, the defendant acknowledged plaintiffs' concerns regarding the nature and scope of its searches in its February 26, 2014 email correspondence to plaintiffs, explaining that it was "in the process of compiling additional information" in response to plaintiffs' inquiries. Notwithstanding that promise, plaintiffs never received any clarification from the defendant on those issues which remain outstanding to this day. Consequently, the filing of the instant motion should come as no surprise to the defendant.

Further, even now that these issues are before the Court, Dallah Avco has again failed to meaningfully address plaintiffs' specific concerns. Nowhere in its Opposition does Dallah Avco answer plaintiffs' unambiguous request that Dallah Avco explain whether searches for responsive materials have been undertaken, identify those requests for which searches have been conducted, and identify those requests the defendant contends are outside the scope of discovery. Rather, Dallah Avco continues to assert its oft repeated position that "[d]iscovery should be limited to documents and information that relate in some way to Omar al Bayoumi." Opposition, p. 3. Just as frustrating, the defendant's interpretation of the phrase "relating to Bayoumi," is as unclear today as it was when it was first advanced by the defendant during the February 14 meet-and-confer. Despite plaintiffs' request that Dallah Avco clarify the meaning of that phrase, including whether or not it would apply to relevant third party individuals and entities, the defendant has yet to provide an explanation.

Plaintiffs submit, that if Dallah Avco had simply responded to these discrete issues, including identifying those requests the defendant perceives as problematic, the parties would then have been able to confer and individually address each of the requests on the merits, thereby eliminating the need to request this Court's involvement. Unfortunately, Dallah Avco has been unwilling to do so.

Dallah Avco's Opposition is equally evasive concerning plaintiffs' request that it provide detailed information about the scope of its document searches. Although Dallah Avco provides some information, those few details serve only to raise additional questions and suspicions about the defendant's purported "good faith" efforts to locate and obtain responsive documents.

For instance, Dallah Avco states that there was "an earlier effort to collect documents relating to Omar al Bayoumi."[1] However, Dallah Avco advises that the sole individual with information regarding those efforts "left the company some time ago," compelling the defendant "to redo the search" so that it could determine what steps were previously taken. Opposition, pp. 3-4. The fact that not a single person in the entire organization, including Dallah Avco's longtime counsel in these proceedings, could provide details regarding those prior searches, thereby forcing it to try to reconstruct those efforts, raises far more questions than it answers.

---

[1] According to Dallah Avco, that search led primarily to the documents identified on its privilege log.

In addition, Dallah Avco concedes that potentially responsive documents "are currently stored at an offsite location known as 'Dallah City,' which contains more than one million unindexed documents and files from more than 20 affiliated companies spanning more than 25 years." Opposition, p. 4. However, the defendant alleges that retrieval of the files "would essentially be impossible with Dallah Avco's existing staff and financial resources," forcing it to request additional monies from its parent organization to fund a full-time staff to retrieve the documents. *Id.*

This revelation raises several issues. First, Dallah Avco's apparent new discovery of documents relating to the ANSS project (to which Bayoumi was assigned) in Dallah City, implies that the defendant has only recently begun to search for potential depositories or archives where responsive documents are stored. Defense counsel's inability to provide these important details during the February 14 meet-and-confer reinforces this conclusion. Although Mr. Kry had only recently been retained as Dallah Avco's additional co-counsel at the time of the meet-and-confer, Mr. McMahon, who also participated in the conference call, has been primarily responsible for representing and advising Dallah Avco since the commencement of the litigation.

Second, Dallah Avco's claim that it does not have the financial resources to invest in efforts to search the Dallah City collection is unconvincing. As plaintiffs have indicated, Dallah Avco is part of the Dallah al Baraka global conglomerate, owned by Saudi billionaire Saleh Kamel. If the defendant is indeed experiencing financial difficulties, it should provide affidavit testimony from company officials attesting to that fact. Based on the current record, the assertion is unsupportable.

More importantly, the defendant's admission above clearly suggests that Dallah Avco failed to implement a litigation hold to collect and protect records relevant to plaintiffs' claims. The duty to preserve relevant evidence not only applies during litigation, but also applies to the period before litigation when a party knows or reasonably should know that the evidence may be relevant to anticipated litigation. *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F.Supp.2d 456, 466 (S.D.N.Y. 2010) (internal citations omitted) (holding duty to preserve was triggered by filing of complaint). The obligation to preserve evidence exists whether or not the documents have been specifically requested in a demand or whether there has been a specific discovery order issued. *Kronisch*, 150 F.3d at 126-27; *see also Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (holding that the duty to preserve is an ongoing obligation and the party and counsel must monitor the party's compliance with the litigation hold to ensure proper implementation). In the instant case, the duty on the part of Dallah Avco to preserve evidence arose no later than September 4, 2002, when the *Ashton* plaintiffs filed their initial complaint with this Court. If it is determined that Dallah Avco failed to implement a litigation hold leading to the destruction or loss of relevant evidence, sanctions will be appropriate.

## II. DALLAH AVCO MISCHARACTERIZES THE FINDINGS OF THE 9/11 COMMISSION

Finally, plaintiffs feel compelled to respond to Dallah Avco's misleading statement that "both the 9/11Commision and the FBI investigated the accusations against [Omar] al Bayoumi and concluded that he was not complicit in the 9/11 attacks." *See* Opposition, p.3 n. 2 (citing to Dallah Avco's Opposition to plaintiffs' August 25, 2014 Motion to Compel, ECF No. 2889, p. 2).

Affidavit testimony by former United States Senator and 9/11 Commission member Bob Kerrey refutes similar characterization of the Commission's findings by the Kingdom of Saudi Arabia. In his testimony, Senator Kerrey makes clear that "it is fundamentally inaccurate and misleading for the Kingdom and [the Saudi High Commission] to suggest that the 9/11 Commission's investigation exonerated them for the events of September 11, 2001." *See* Affirmation of Joseph Robert "Bob" Kerrey at ¶ 18, ECF No. 2557-3. According to Senator Kerrey, "significant questions remain unanswered concerning the possible involvement of Saudi government institutions and actors in the financing and sponsorship of al Qaeda, and evidence relating to the plausible involvement of possible Saudi government agents in the September 11th Attacks has never been fully pursued." *Id.* at ¶ 9.

Former United States Senator and Co-Chair of the Congressional Joint Inquiry Bob Graham concurs with Senator Kerrey, stating that the "Kingdom is mistaken" that it "has been fully exonerated of any culpability for the events of September 11, 2001, whether through the investigation and findings of the 9/11 Commission or any other investigation of the United States government." *See* Affirmation of Daniel Robert "Bob" Graham at ¶ 11, ECF No. 2558.

Specifically, as to Bayoumi, Senator Graham adds:

> Based on my review of the evidence unearthed by the Joint Inquiry concerning al Bayoumi's sources of income, the nature of his activities while residing in the United States, his established ties to Saudi officials, the circumstances surrounding his meeting with al Hazmi and al Mihdhar in Los Angeles, the status assigned to al Bayoumi by the Federal Bureau of Investigation San Diego field office prior to 9/11, and the nature of the assistance he thereafter provided to the two hijackers – as informed by my decades of service in government and more than a decade as a Member of the Senate Select Committee on Intelligence – I am convinced that al Bayoumi was an agent of the government of Saudi Arabia. To this date, this evidence has not been fully explored and pursued, to the considerable detriment of the American public.

*Id.* at ¶ 9.

Moreover, lest Dallah Avco forget, the Second Circuit Court of Appeals thought enough of plaintiffs' allegations relating to Dallah Avco's relationship with Bayoumi to remand the defendant back to the district court for discovery for a more complete record.

### III. CONCLUSION

At base, if Dallah Avco would simply identify the document requests for which it declines to conduct searches, the intervention of this Court may not have been necessary. But because Dallah Avco has refused to abide by the court rules, plaintiffs' ongoing discovery dispute with Dallah Avco requires intervention by this Court.

Accordingly, plaintiffs respectfully request the Court compel Dallah Avco to disclose the scope of its searches in response to plaintiffs' First Set of Jurisdictional Requests for Production of Documents, and to specifically identify which of those requests have been included within the scope of Dallah Avco's searches.

Respectfully submitted,

SEAN P. CARTER, ESQ.
ON BEHALF OF THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES

cc: The Honorable George B. Daniels (Via Overnight UPS Mail)
Members of Plaintiffs' Executive Committees (Via ECF)
Martin F. McMahon, Esq. (Via ECF)
Robert K. Kry. Esq. (Via ECF)
Alan R. Kabat, Esq. (Via ECF)

LEGAL\20972185\1 00000.0000.000/117430.000