## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND FACSIMILE**

December 30, 2014

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 630
New York, NY 10007

    Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Daniels:

Plaintiffs write in reply to the letter submitted earlier today by the Kingdom of Saudi Arabia and Saudi High Commission for Relief of Bosnia & Herzegovina (SHC), opposing plaintiffs' request for a brief extension of the deadline for their opposition brief to allow the United States additional time to complete its review of the Moussaoui transcripts.

First, the brief extension plaintiffs request will not materially delay resolution of the motion to dismiss, and is needed solely due to delays in the extraordinary review of the transcripts by the U.S. government, and is in no way attributable to any fault of the plaintiffs.

Second, the Kingdom's assertion that the extension should be denied under the theory that Moussaoui's alleged "well-documented mental illness" "suggest[s] strongly that [his statements] will have zero evidentiary value" reflects a fundamental misunderstanding of the standards governing the resolution of the defendants' motion to dismiss. Plaintiffs will address that issue in further detail in their substantive opposition.

Third, the Kingdom is in any case simply wrong in asserting that Moussaoui was ever adjudged mentally incompetent. To the contrary, Judge Leonie M. Brinkema found him competent on at least three separate occasions during his criminal trial. In the context of those proceedings, Judge Brinkema:

The Honorable George B. Daniels
December 30, 2014
Page 2

- described Moussaoui as "intelligent," "obviously very smart," and "very bright;"

- found that the observations of the prison personnel who had day-to-day contact with Moussaoui "consistently negated" any suggestion that Moussaoui had any mental disorder; and

- held that "I am fully satisfied that Mr. Moussaoui is completely competent" and that "Mr. Moussaoui is an extremely intelligent man. He has actually a better understanding of the legal system than some lawyers I've seen in court. I reread the transcript from the plea hearing of two-and-a-half years ago, and he understood then and I have no reason to believe he does not understand now the nature of conspiracy law."

Even more recently in an interview for a book on famous legal proceedings, Judge Brinkema observed that Moussaoui had "an extraordinarily clever witty mind" and commented that "it has always troubled me – in terms of thinking about the good of the country – that we didn't try to get more from him," noting that "Moussaoui could have been an invaluable source of information" for U.S. intelligence, but that the decision to prosecute him "cut off the ability of the intelligence community to really mine him for what he was worth." "It seemed to me that Moussaoui's greatest value in those early days would have been to turn him, to flip him." Cohen, *Blindfolds Off: Judges on How They Decide*, (2014), pp. 9, 21-22.

Fourth, the United States government's own assertions during Moussaoui's criminal trial confirm that he was uniquely placed to have access to information relevant to the present proceedings. In this regard, the United States asserted that Moussaoui was an important figure within al Qaeda who had direct access and interactions with Osama bin Laden, Khalid Sheikh Mohammad, and other al Qaeda leadership; spent extensive time in Afghanistan around the al Qaeda leadership and trained at al Qaeda camps in the years leading up to the September 11th attacks; was given a position of "high respect" in Afghanistan by the al Qaeda leadership, serving as manager of an al Qaeda guesthouse in Kandahar; and had personal knowledge of al Qaeda's plan to fly planes into prominent buildings in the U.S. *See* Moussaoui Statement of Facts, Exhibit A to ECF filing.

Respectfully submitted,

Sean P. Carter
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

SPC/bdw

cc:    The Honorable Frank Maas (via Facsimile)
       Sarah Normand, Esquire (via Email)
       Jeannette Vargas, Esquire (via Email)
       All Counsel of Record (via ECF and Email)