# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM) ECF Case |
|---|---|

This document relates to:

*Federal Insurance Co. et al. v. Al Qaida, et al.,* Case No. 03 Civ. 6978
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 04 Civ. 7216
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 03 Civ. 8591
*Thomas Burnett, S., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* Case No. 03 Civ. 9849
*Euro Brokers, Inc., et al. v. Al Baraka, et al.,* Case No. 04 Civ. 7279
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.,* Case No. 02 Civ. 6977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 04 Civ. 1922
*Continental Casualty Co., et al. v. Al Qaeda, et al.,* Case No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private, Ltd., et al.,* Case No. 04 Civ. 7065

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO FILE A CONSOLIDATED AMENDED PLEADING OF FACTS AND EVIDENCE AS TO THE KINGDOM OF SAUDI ARABIA AND THE SAUDI HIGH COMMISSION FOR RELIEF OF BOSNIA & HERZEGOVINA

April 10, 2015

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

      A.      Plaintiffs' Amended Pleading Presents "Colorable Grounds for Relief" .............. 2

      B.      Defendants Do Not Contest That The Proposed Amendment
            Presents The Most Efficient Means To Conform The Pleadings
            To The Evidence .......................................................................................... 5

      C.      Defendants' Undue Delay And Prejudice Arguments Are Without Merit ............ 6

      D.      Even For Purposes Of Defendants' Renewed Motion To Dismiss
            Under The FSIA, Plaintiffs Are Under No Burden To Produce Evidence
            In Support Of Their Allegations ................................................................... 7

      E.      Defendants' Irrelevant Evidentiary Arguments Distort The Record ................... 10

            1.      Defendants' Reading of the 9/11 Commission Report Has
                  Been Thoroughly Refuted and Rejected .................................................. 10

            2.      The Record Conclusively Establishes That Omar al Bayoumi
                  Was an Agent of the Saudi Government .................................................. 12

            3.      The Kingdom's Individual Agents Engaged in Tortious
                  Conduct in Support of the 9/11 Attacks ................................................. 15

      F.      Plaintiffs Have Adequately Alleged The Charities' Alter-Ego Status ................. 18

      G.      The Allegations Concerning The U.S.-Based Tortious Acts Of
            The Saudi Charities Satisfy The Entire Tort Rule ................................................ 19

      H.      Plaintiffs' Claims Are Not Barred By The Discretionary Function
            Clause Or Modest Causation Requirements Of The FSIA ................................. 20

III.    CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*,
   1995 U.S. Dist. LEXIS 11 (S.D.N.Y. Jan. 4, 1995)...................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................18

*Calzaturificio Rangoni, S.A. v. United States Shoe Corp.*,
   1993 U.S. Dist. LEXIS 16610 (S.D.N.Y. Nov. 23, 1993).......................................................3

*Chace v. Bankers Trust Co.*,
   1990 U.S. Dist. LEXIS 17353 (S.D.N.Y. Dec. 18, 1990).......................................................2

*Doe v. Bin Laden*,
   663 F.3d 64 (2d Cir. 2011)...................................................................4

*Filus v. Lot Polish Airlines*,
   907 F.2d 1328 (2d Cir. 1990)...................................................................10

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
   150 F.3d 172 (2d Cir. 1998)...................................................................10

*Foman v. Davis*,
   371 U.S. 178 (1962)...................................................................2

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983)...................................................................15

*Human Rights in China v. Bank of China*,
   2003 U.S. Dist. LEXIS 16436 (S.D.N.Y. 2003).......................................................9

*Innomed Labs, LLC v. Alza Corp.*,
   2002 U.S. Dist. LEXIS 13298 (S.D.N.Y. July 22, 2002).......................................................3

*Khan v. McElroy*,
   2014 U.S. Dist. LEXIS 112304 (S.D.N.Y. Aug. 6, 2014).......................................................3

*Kilburn v. Socialist People's Libyan Arab Jamahariya*,
   376 F.3d 1123 (D.C. Cir. 2004)...................................................................9

*Moran v. Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994)...................................................................9

*O'Neill v. Asat Trust Reg.*,
    714 F.3d 659 (2d Cir. 2013)..........................................................................15, 16

*O'Neill v. Saudi Joint Relief Comm.*,
    714 F.3d 109 (2d Cir. 2013)..........................................................................19

*Penny Lane Owners Corp. v. Conthur Dev. Co.*,
    1997 U.S. Dist. LEXIS 13651 (S.D.N.Y. Sept. 9, 1997)....................................3

*Reiss v. Societe Centrale DuGroupe Des Assurances Nationales*,
    235 F.3d 738 (2d Cir. 2000)..........................................................................10

*Robinson v. Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001)..........................................................................9, 18

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)........................................................................................9, 18

*Sumitomo Electric Research Triangle, Inc. v. Corning Glass Works*,
    109 F.R.D. 627 (S.D.N.Y. 1986) .....................................................................3

*T & N PLC v. Fred S. James & Company of New York, Inc.*,
    1991 U.S. Dist. LEXIS 13025 (S.D.N.Y. Sept. 19, 1991)....................................3

*Williams v. Citigroup, Inc.*,
    659 F.3d 208 (2d Cir. 2011)..........................................................................2

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    1996 U.S. Dist. LEXIS 10430 (S.D.N.Y. July 24, 1996) ......................................3

**Statutes and Rules**

18 U.S.C. § 2339A....................................................................................................17

28 U.S.C. § 1605(a)(5)..............................................................................................4

Fed. R. Civ. P. 1.......................................................................................................6

Fed. R. Civ. P. 15(a) ..........................................................................................2, 3, 5, 6

Fed. R. Evid. 702.....................................................................................................15

## I.     INTRODUCTION

The opposition of defendants Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC"), to plaintiffs' motion for leave to file a consolidated amended pleading of facts and evidence (motion to amend), amounts to no more than a plea that the Court ignore the well-settled standards favoring liberal amendment of pleadings.  Without even acknowledging the controlling authorities providing that an amendment should be allowed so long as it alleges colorable grounds for relief, defendants demand that the Court engage in a burdensome examination of a vast spectrum of facts and evidence, in what amounts to a proposed trial on the papers, simply to decide a motion to amend the pleadings.

In connection with this proposed (and entirely improper) inquiry into the ultimate merits of the claims, defendants urge the Court to draw unwarranted conclusions from selective facts and evidence favored by defendants, and to disregard plaintiffs' allegations, facts and evidence wholesale, based on alleged conflicts with other sources of information (which may or may not even qualify as evidence).  In every instance, defendants urge the Court to accept defendants' preferred interpretations of the record, and to draw every imaginable inference in their favor, even though plaintiffs are entitled to the benefit of all inferences at this stage of the litigation.

To be sure, the Court need not, and should not, enter the rabbit hole defendants have constructed, whether for purposes of deciding the present motion to amend, or defendants' renewed motion to dismiss.[1]  To the contrary, the Court's inquiry in the present context focuses solely on whether the proposed amended pleading presents a colorable grounds for relief that is

---

[1] Plaintiffs use the following abbreviations for citations to the parties' briefs and other submissions:  Memorandum of Law in Support of the Motion to Dismiss of the Kingdom and SHC, ECF No. 2894 (Sept. 15, 2014) ("MTD"); Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of the Kingdom and SHC, ECF No. 2926 (Feb. 3, 2015) ("MTD Opp."); Plaintiffs' Memorandum of Law in Support of Their Motion to File a Consolidated Amended Pleading of Facts and Evidence as to the Kingdom and SHC, ECF No. 2892 (Sept. 15, 2014) ("MTA"); Memorandum of Law in Opposition to Plaintiffs' Motion to File a Consolidated Amended Pleading of Facts and Evidence as to the Kingdom and SHC, ECF No. 2928 (Feb. 3, 2015) ("MTA Opp."); Plaintiffs' Averment of Facts and Evidence, ECF No. 2927-1 (Feb. 3, 2015) ("Aver."); and all exhibits filed in support of the Averment per the Court's Order at ECF No. 2929 (Feb. 4, 2015), shall be referred to as "Exh."

not patently frivolous.  Because it clearly does, and other factors also demonstrate that justice so requires, plaintiffs' motion to amend should be granted.

## II.    ARGUMENT

Defendants' opposition is conspicuous in its failure to engage plaintiffs' request for leave to amend in accordance with the liberal standards applicable to such proposed amendments under Rule 15(a).  Instead, defendants urge that the Foreign Sovereign Immunities Act (FSIA) requires the Court to engage in a trial-like weighing of the evidence and evaluation of the ultimate merits of plaintiffs' claims, simply to determine whether an amendment to conform the pleadings to that evidence should be allowed at the preliminary motion to dismiss phase.  Not surprisingly, the standard of review defendants advocate is manifestly incorrect, under both Rule 15(a) and the FSIA.

### A.    Plaintiffs' Amended Pleading Presents "Colorable Grounds for Relief"

Pursuant to Rule 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  As the Supreme Court has entreated, "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Accordingly, "[i]f the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (emphasis supplied).  Consistent with this standard, the Court's inquiry under Rule 15(a) focuses solely on whether the plaintiff's proposed pleading presents a colorable claim that is not patently frivolous, and does not involve an extensive evaluation of the ultimate merits of the claims and theories set forth in the proposed pleading.  *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, 1995 U.S. Dist. LEXIS 11, at *8 (S.D.N.Y. Jan. 4, 1995) ("[W]hen a proposed amendment raises a colorable claim, a comprehensive legal analysis should be deferred"); *Chace v. Bankers Trust Co.*, 1990 U.S. Dist. LEXIS 17353, at *7-8 (S.D.N.Y. Dec. 18, 1990) ("On a motion for leave to amend, the court need not finally determine the merits of a

proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous.")
(*quoting Sumitomo Electric Research Triangle, Inc. v. Corning Glass Works*, 109 F.R.D. 627,
628 (S.D.N.Y. 1986)); *Calzaturificio Rangoni, S.A. v. United States Shoe Corp.*, 1993 U.S. Dist.
LEXIS 16610, at *2-3 (S.D.N.Y. Nov. 23, 1993); *T & N PLC v. Fred S. James & Company of
New York, Inc.*, 1991 U.S. Dist. LEXIS 13025, at *5 (S.D.N.Y. Sept. 19, 1991); *Khan v.
McElroy*, 2014 U.S. Dist. LEXIS 112304, at *10 (S.D.N.Y. Aug. 6, 2014) ("If the amendments
are colorable, especially where they are based upon disputed facts, they should be allowed, and a
comprehensive legal analysis deferred to subsequent motions to dismiss or for summary
judgment."); *Penny Lane Owners Corp. v. Conthur Dev. Co.*, 1997 U.S. Dist. LEXIS 13651, at
*4-5 (S.D.N.Y. Sept. 9, 1997) ("When, as in this case, the argument against allowing the
amended complaint is based on an assertion that the evidence will not support the allegations
made, an evaluation of the merits is better left to a motion for summary judgment or for trial.)
(citing cases); *Innomed Labs, LLC v. Alza Corp.*, 2002 U.S. Dist. LEXIS 13298, at *7 (S.D.N.Y.
July 22, 2002).

  The fact that the present claims implicate the FSIA does not alter the "colorable grounds
for relief" standard of review applicable to plaintiffs' motion to amend under Rule 15(a).
Indeed, as a court in this district observed in rejecting FSIA-based futility arguments analogous
to those advanced by the defendants here:

> On a Rule 15 motion, any inquiry into the merits of the claim is
> very limited. To overcome objections of futility the plaintiff must
> merely show that it has at least colorable grounds for relief.

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 1996 U.S. Dist. LEXIS 10430 (S.D.N.Y.
July 24, 1996).  Consistent with that standard, the *Zappia* court granted plaintiffs leave to amend
to present allegations relating to additional facts learned in discovery, even though it remained
unclear whether those allegations sufficiently alleged a basis of jurisdiction under the FSIA.  *Id.*

Here, plaintiffs' proposed amended pleading provides a comprehensive statement of plaintiffs' claims predicated upon:  (1) the attributable tortious acts of individual agents of the Saudi government, who provided direct assistance and support to the September 11th hijackers, in the United States and elsewhere; and (2) the attributable tortious acts of the Saudi government's charity alter-egos and agents, including the SHC itself, involving their provision of material support and resources directly to al Qaeda for more than a decade leading up to the September 11th attacks.  MTA at 4.  As discussed at greater length in plaintiffs' opposition to defendants' renewed motion to dismiss, the allegations of the proposed amended pleading describe in detail the U.S.-based tortious acts of agents of the Saudi government in support of the September 11th attacks (including Omar al Bayoumi, Fahad al Thumairy, Osama Basnan, Saleh al Hussayen, U.S.-based employees of the Kingdom's Ministry of Islamic Affairs, and U.S. branches of the Kingdom's charity alter-egos).  MTD Opp. at 10-17.  The amended pleading's allegations concerning those tortious actors' status as agents or alter-egos of the Saudi government are, in turn, detailed and well-supported.  MTD Opp. at 17-18.  Further, the allegations of the amended pleading also describe how the tortious acts of the Saudi government's agents directly assisted the 9/11 hijackers in their heinous mission, and how the acts of the Kingdom's charity alter-egos provided al Qaeda with the resources necessary to carry out the attacks.  MTD Opp. at 22-25.

These allegations concerning the direct support provided by agents of the Saudi government to the 9/11 hijackers and al Qaeda present claims that are far from "frivolous," and more than sufficient to state a "colorable grounds for relief" within the ambit of the FSIA's tort exception.  *See* 28 U.S.C. § 1605(a)(5) (providing that U.S. courts have jurisdiction  "in any case" against a foreign state "for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state" or one of its employees or agents); *see also Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) (*Doe II*) (finding allegations that Afghanistan provided material support to al Qaeda satisfied

requirements of tort exception for 9/11 claims, and affirming the denial of Afghanistan's motion to dismiss under FSIA).[2]  Indeed, the defendants' own extensive arguments relating to the ultimate merits and import of the parties' "evidence" reinforce this conclusion.  In a word, were plaintiffs' allegations "frivolous" and thus insufficient to state "a colorable grounds for relief," defendants would not need to spend the bulk of their opposition brief attempting to persuade the Court to disregard them on the basis of other, purportedly conflicting, evidence.

In sum, because plaintiffs' amended pleading most clearly presents colorable grounds for relief, the proposed amendment is authorized by Rule 15(a).

### B.   Defendants Do Not Contest That The Proposed Amendment Presents The Most Efficient Means To Conform The Pleadings To The Evidence

Defendants also fail entirely to address the range of practical considerations raised in plaintiffs' motion that overwhelmingly favor plaintiffs' proposed amendment.  In this regard, plaintiffs noted in their motion to amend that the allegations relevant to their claims against defendants presently reside in at least nine separate complaints, and numerous RICO and More Definite Statements.  MTA at 1-3.  Plaintiffs further noted that those allegations have been supplemented over the course of these proceedings by numerous evidentiary filings, and would be further augmented by extensive additional evidence plaintiffs intended to file in support of their opposition to defendants' renewed motion to dismiss.[3]  *Id.*  In light of these considerations, plaintiffs argued in their motion to amend that their proposed amendment "represents the most practical means," MTA at 3, to offer a "focused statement of the factual allegations and evidence," *Id.* at 12, and "provide the clearest possible record for further proceedings" in this litigation.  *Id.* at 2.

---

[2] Because the Court's decision in *Doe II* involved review of the district court's rulings on a motion to dismiss, it involved a more rigorous and demanding inquiry into the allegations than is involved here.

[3] Defendants also do not contest plaintiffs' right to supplement the record in response to the renewed motion to dismiss through the filing of extrinsic evidence and materials, or plaintiffs' right to file an averment of facts.

Defendants do not even attempt to rebut these important points, which further demonstrate that "justice so requires" plaintiffs' proposed amendment.  *See* Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure should be construed and administered to "secure the just, speedy, and inexpensive determination of every action and proceeding").

### C.  Defendants' Undue Delay And Prejudice Arguments Are Without Merit

Defendants' half-hearted arguments that plaintiffs' proposed amendment should be denied on the basis of alleged "undue delay" or potential "prejudice" are entirely without merit. For example, defendants' suggestion that plaintiffs "unduly delayed in seeking leave to file" the amended pleading rests entirely on their contention that "a large majority of the allegations in the pleading were available to plaintiffs from publicly available sources when this case was litigated before Judge Casey."  MTA Opp. at 6.  The defendants go on to assert that approximately 70% of the allegations in plaintiffs' amended pleading "contain either no factual information at all or information from sources publicly available in 2004 or earlier."  *Id.*  These arguments suffer from a number of obvious defects.

First, even accepting defendants' statistical analysis at face value, it merely serves to confirm that approximately 1/3 of the allegations of the amended pleading are based on information that was not available to plaintiffs during the proceedings before Judge Casey.  That represents an extensive amount of new evidence, and there is no rational basis under Rule 15(a) to deny plaintiffs leave to amend their pleadings to include that additional information.

Second, the fact that the amended pleading includes allegations relating to evidence that was available at the time of the proceedings before Judge Casey is to be expected.  Once again, the objective of plaintiffs' amended pleading is to provide a comprehensive statement of the facts and evidence supporting plaintiffs' claims.  Given that goal, the amended pleading includes allegations that appeared in plaintiffs' earlier pleadings, and facts set forth in extrinsic materials filed during the proceedings before Judge Casey.  For that reason, it is entirely natural that the

6

amended pleading contains extensive allegations relating to evidence that was disclosed before 2005, and the defendants' "analysis" proves nothing.

Third, the allegations based on evidence that was not previously available are particularly significant. For instance, plaintiffs' amended pleading presents extensive allegations relating to the tortious acts of Omar al Bayoumi, an agent of the Saudi government who provided direct support to the 9/11 hijackers from within the United States. Those allegations are based on a range of information, including approximately 52 documents consisting primarily of FBI reports and witness statements and other U.S. intelligence reports. Of note, 43 of those documents were made publicly available in 2005 or later, after the proceedings before Judge Casey concluded. A chart identifying further evidence that was released after 2004, and relied upon in preparing the amended pleading, is attached hereto as Exhibit "A."

Finally, defendants' passing argument relating to potential "prejudice" hardly warrants comment. On that issue, the entirety of defendants' argument is contained in a single sentence, in which they say they are "primarily concerned" about potential delay in the resolution of their motion to dismiss. MTA Opp. at 8. However, briefing on plaintiffs' motion to amend and defendants' motion to dismiss will conclude simultaneously, pursuant to an agreement between the parties, so no such potential for delay exists.

**D.    Even For Purposes Of Defendants' Renewed Motion To Dismiss Under The FSIA, Plaintiffs Are Under No Burden To Produce Evidence In Support Of Their Allegations**

Defendants also err in their characterizations of the burden regime governing this Court's evaluation of their motion to dismiss under the FSIA, which is in any case distinct from the framework governing the evaluation of plaintiffs' motion for leave to amend. *See supra* Sec. A.

Initially, it is important to note that defendants' opposition does not offer any focused statement of the burden-shifting regime applicable to motions to dismiss under the FSIA, or how the procedural setting of the dispute impacts the applicable burdens (as was true of their renewed

motion to dismiss).  Instead, defendants sprinkle fragmentary language referencing the nature of

FSIA "burdens" throughout their briefs, completely out of context and without regard for the

procedural postures of the cases cited.  The result is a schizophrenic collage of inconsistent

standards, selectively invoked to serve particular arguments.

      For example, defendants at times acknowledge (correctly) that plaintiffs may meet their

burden through allegations satisfying the requirements of the tort exception.  *See, e.g.*, MTA

Opp. at 9 ("Under [the Second Circuit's rule], Plaintiffs must properly allege 'that the 'torts'

committed by [Defendants] occurred in the United States.") ("Accordingly, Plaintiffs must allege

[a tortious act by a Saudi agent] while acting within the scope of his office or employment.").

However, where confronted with unambiguous factual allegations demonstrating the

applicability of the tort exception, defendants eschew that (correct) standard, urging instead that

plaintiffs are required to support their allegations with "evidence."  *Id.* at 2.  When such evidence

is offered (to include affidavits of members of the 9/11 Commission and 9/11 Joint Inquiry, FBI

and intelligence reports, and like materials), defendants pivot yet again, arguing that the Court

should simply disregard it, based on defendants' view that it is inconsistent with other evidence,

favored by defendants.[4]  *Id.* at 9-19.

      As the thorough discussion of the analytical framework for deciding motions to dismiss

under the FSIA presented in plaintiffs' opposition to the renewed motion to dismiss confirms,

MTD Opp. at 21-28, defendants' articulation of the nature of plaintiffs' burden is entirely

inaccurate, and the novel trial on the papers they propose is most clearly inappropriate (even in

the context of the Court's resolution of defendants' renewed motion to dismiss).  As a primary

matter, defendants have not presented any affirmative evidence of their own, such as an affidavit,

---

[4] Defendants' motion to dismiss thus rests on the contention that a plaintiff in an FSIA case is required to:  (1) prove its claims; (2) by incontrovertible and definitive evidence; (3) at the motion to dismiss phase; (4) without the benefit of discovery or a hearing; (5) even where the foreign state defendant has raised no competent challenge to the plaintiffs' allegations or evidence.

directly refuting any of plaintiffs' allegations.[5]   At best, defendants point to alleged contradictions between plaintiffs' allegations and statements in government reports and other materials.   But merely pointing to such inconsistencies does not serve to raise a competent factual challenge to plaintiffs' allegations.   *Kilburn v. Socialist People's Libyan Arab Jamahariya*, 376 F.3d 1123, 1132 (D.C. Cir. 2004).   As a result, plaintiffs' allegations must be accepted as true, and all reasonable inferences drawn in plaintiffs' favor, in deciding defendants' renewed motion to dismiss.   *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993); *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 (2d Cir. 2001).

Even if defendants could be credited as having met their burden of production to raise a competent factual challenge to certain of plaintiffs' allegations, plaintiffs have more than met any potential burden required of them in response.   As surveyed in detail in their opposition to defendants' renewed motion to dismiss, plaintiffs have presented particularized facts (through both their amended pleading and averment of facts and evidence) in support of their allegations that agents of the Kingdom provided direct support to the September 11th hijackers and al Qaeda, from within the United States and elsewhere.   Plaintiffs have also presented extensive evidence (spanning over 4,000 pages) including affidavit and sworn testimony, intelligence reports, diplomatic cables, and other materials that support their particularized factual allegations.   Such facts and evidence more than satisfy any burden of production plaintiffs might be subject to in the present pre-discovery setting.   *Robinson,* 269 F.3d at 141-43; *Moran v. Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994) ("once a *prima facie* showing of immunity has been made, the plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an exception applies"); *Human Rights in China v. Bank of China,* 2003 U.S. Dist. LEXIS 16436, at *4 (S.D.N.Y. 2003) (same).   Furthermore, any conflicts that may exist between the

---

[5] For example, defendants have not presented the Court with an affidavit denying that Omar al Bayoumi was an agent or employee of the Saudi government, as alleged in plaintiffs' pleadings.

parties' respective facts and evidence are subject to resolution only after discovery, and following an evidentiary hearing. *First City, Texas-Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 177 (2d Cir. 1998); *Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1332 (2d Cir. 1990); *Reiss v. Societe Centrale DuGroupe Des Assurances Nationales,* 235 F.3d 738, 748 (2d Cir. 2000).

Consistent with the foregoing, the Court's resolution of the renewed motion to dismiss merely requires it to review plaintiffs' allegations and supporting facts and evidence and, accepting them as true and drawing all reasonable inferences in plaintiffs' favor, determine if they allege jurisdiction under the tort exception.

### E.    Defendants' Irrelevant Evidentiary Arguments Distort The Record

As discussed above, defendants' extensive arguments concerning the import and significance of the facts and evidence underlying plaintiffs' allegations are improper and misguided, in relation to both the present motion to amend, and defendants' renewed motion to dismiss under the FSIA.  Even if such trial-phase evidentiary arguments were appropriate in relation to either of the motions presently pending before the Court, which they are not, they rest on grave distortions of the record, implausible interpretations of the allegations, facts and evidence, and a refusal to afford plaintiffs the obvious inferences to which they are entitled.

### 1.    Defendants' Reading of the 9/11 Commission Report Has Been Thoroughly Refuted and Rejected

In support of their flawed effort to persuade the Court to ignore plaintiffs' well-pleaded factual allegations and related evidence, defendants once again attach immense and unwarranted significance to the open-ended statement in the 9/11 Commission Report that the Commission found "no evidence that the Saudi government *as an institution* or *senior* Saudi officials individually funded" al Qaeda.  MTA Opp. at 13 (quoting 9/11 Commission Report) (emphasis supplied).  Over the course of this litigation, defendants have repeatedly argued that this isolated sentence in some way establishes that the 9/11 Commission conclusively exonerated the

Kingdom of Saudi Arabia for any culpability for the events of September 11, 2001 or the funding of al Qaeda.[6]  In their most recent filing, defendants argue that this sentence represents an "emphatic, considered finding" that requires the Court to ignore the affidavit testimony of actual members of the 9/11 Commission.  MTA Opp. at 13.

The affirmations and statements of the 9/11 Commissioners who have squarely and unambiguously addressed the issue confirm that the Kingdom's proposed interpretation of this isolated sentence is plainly incorrect, and that the sweeping conclusions the Kingdom asks the Court to draw from it are baseless.  Indeed, 9/11 Commission members Bob Kerrey and John Lehman have both filed affidavits emphatically rejecting the Kingdom's characterizations of the Commission's findings, and confirming that "the 9/11 Commission did not exonerate Saudi Arabia for the events of September 11, 2001."  Affirmation of John F. Lehman at ¶ 4 (ECF No. 2927-3).  Interviewed in the wake of the recent filing of the Lehman and Kerrey Affirmations, 9/11 Co-Chair Lee Hamilton joined the chorus of Commissioners rejecting Saudi Arabia's misrepresentations concerning the Commission's findings and report, telling CNN that "the commission never claimed to give the final word on Saudi involvement and that sentence was written in [Hamilton's] words very carefully to allow for the remaining questions."  *See* CNN Transcript, available at http://www.cnn.com/TRANSCRIPTS/1502/04/acd.02.html.

The record now available confirms that the "remaining questions" the sentence was "very carefully" drafted to allow include those raised by plaintiffs' claims against the Kingdom of Saudi Arabia.[7]  Of particular note, the authoritative historical account of the 9/11 Commission recounts that the staff members who investigated the evidence pertaining to Saudi government

---

[6] At most, the 9/11 Report is simply a piece of potentially admissible evidence, to be weighed against all other evidence at an appropriate stage, pursuant to traditional judicial procedures.  It has no preclusive or conclusive import relative to a motion to dismiss.

[7] Far from exonerating the Kingdom from any potential legal culpability for the events of 9/11 (an issue the Commission did not even consider), the plain text of this sentence clearly and conspicuously leaves open the possibility that the Commission did receive evidence indicating that *elements* of the Saudi government and *non-senior* Saudi government agents (like al Thumairy, al Bayoumi, and al Hussayen) did provide support to al Qaeda and the September 11th plot.  That is the crux of plaintiffs' case.

involvement in the 9/11 attacks "felt strongly that they had demonstrated a close Saudi government connection to the two hijackers in San Diego," consistent with plaintiffs' claims here.  Aver. ¶ 191.  The evidence supporting this "close Saudi government" connection to the hijackers encompassed "explosive material" concerning the actions of "Omar al Bayoumi, the Saudi 'ghost employee' who played host to the hijackers in San Diego, and Fahad al-Thumairy, the shadowy Saudi diplomat in Los Angeles."  Exh. 44.  The affidavit testimony of Secretary Lehman and Senator Graham is consistent with the conclusions of these investigators, and further demonstrates the plausibility of plaintiffs' allegations.  *See* Affirmations at ECF Nos. 2927-2 and 2927-3.

In sum, defendants' characterizations of the 9/11 Commission investigation and report are grossly inaccurate, inconsistent with the testimony and statements of the actual members of the 9/11 Commission, and in conflict with historical accounts of the Commission's work.[8]

## 2.     The Record Conclusively Establishes That Omar al Bayoumi Was an Agent of the Saudi Government

The Kingdom's contention that "plaintiffs fail properly to allege that Al Bayoumi was an agent of Saudi Arabia" is equally baseless.  As reflected in plaintiffs' amended pleading and discussed in their opposition to defendants' renewed motion to dismiss, plaintiffs' express allegation that al Bayoumi was an agent of the Saudi government is supported by at least thirteen separate categories of evidence.  MTD Opp. at 16.  This evidence includes the express assertion by Dallah Avco, al Bayoumi's ghost employer, that al Bayoumi was an employee of the Saudi government at all relevant times.  *Id.*  The additional evidence, documenting the nature and scope

---

[8]  A more recent government report, issued by the 9/11 Review Commission, further confirms that plaintiffs' theories relating to the tortious actions of Omar al Bayoumi and Fahad al Thumairy have not remotely been "debunked" by the FBI, and that the government's investigation of the matter remains open.  Specifically, in a passage addressing the evidence pertaining to al Bayoumi and al Thumairy, "[t]he Review Commission notes that there is ongoing internal debate within the FBI between the original PENTTBOM team and the subfile team regarding the potential significance of some of this information. The Review Commission recognizes the importance of strong internal engagement between the PENTTBOM and the subfile teams. The Review Commission recommends that the FBI leadership review both perspectives and continue the investigation accordingly."

of al Bayoumi's pervasive dealings with Saudi officials and offices, and the conclusions of U.S. officials who examined al Bayoumi's relationship to the Saudi government, amply support Dallah Avco's express statement on the issue.

Defendants' challenge to plaintiffs' extensive allegations demonstrating al Bayoumi's status as an agent of the Kingdom focuses almost entirely on an irrelevant question – whether al Bayoumi was a Saudi *intelligence* agent.  MTA Opp. at 2, 9-12, 19.  Of course, the pertinent question is whether plaintiffs have adequately alleged that al Bayoumi was an agent of the Saudi government, not whether he was an *intelligence* agent specifically.  And on the question that matters, defendants have admitted the point, arguing in their brief that the evidence relating to al Bayoumi's relationship with Dallah Avco "is consistent with Al Bayoumi's being a PCA [Saudi Civil Aviation Authority] employee."  MTA Opp. at 11.  This admission settles the matter.

Defendants' remaining arguments relating al Bayoumi's status as an agent of the Kingdom, concerning the significance of certain aspects of the FBI's investigations of al Bayoumi and weight to be afforded to the conclusions of U.S. officials, do not withstand scrutiny.  For example, defendants attach significance to the fact that the FBI's first investigation of al Bayoumi in 1998-99 was closed.  MTA Opp. at 12.  But the fact that the investigation was closed, purportedly because the report that prompted it turned out to be inaccurate, simply does not say anything about al Bayoumi's relationship to the Saudi government.

More fundamentally, the content of the FBI's actual investigative reports fully supports al Bayoumi's status as a Saudi agent.  By way of example, a United States intelligence report expressly titled, "*Connections of San Diego PENTTBOMB Subjects to the Government of Saudi Arabia,*" describes al Bayoumi as a long-time employee of the Saudi government "working for the Saudi Intelligence Service."  *See* Exhs. 37-39.  The same report links al Bayoumi's associate Osama Basnan (described in the report as an "ardent [Usama bin Laden] supporter") to the Saudi Embassy in Washington D.C. and Saudi Consulate in Los Angeles.  *Id.*  An October 3, 2001 FBI

report, "PENTTBOMB; MAJOR CASE 182," similarly indicates that "Al-Bayoumi is believed

to work for the Saudi Arabian Intelligence Service and reports on dissident Saudis in the U.S,"

and that FBI officials believed Basnan was being groomed to replace Bayoumi in San Diego:

> The possibility of [Basnan] being affiliated with the Saudi Arabian
> Government or the Saudi Arabian Intelligence Service is supported
> by [REDACTED] … indicat[ing] he succeeded Omar Al-Bayoumi
> and may be undertaking activities on behalf of the Government of
> Saudi Arabia."

Exh. 51.  A FBI special agent describes Basnan and al Bayoumi as "the closest of friends" and

indicates that Basnan was in contact with senior al Qaeda member and key facilitator for the 9/11

attacks, Ramzi Binalshibh, at least a year before the attacks.  Exh. 33.

Moreover, a September 4, 2002 FBI report detailing Fahad al Thumairy's relationship

with Bayoumi and 9/11 hijackers Hazmi and Mihdhar also supports al Bayoumi's status as an

agent of the Kingdom, acting on behalf of the Saudi government:

> San Diego investigation indicated that [Bayoumi] has extensive
> ties to the Saudi government.  He was being supported in the U.S.
> with a stipend from his employer, the Saudi Arabian Civil Air
> Administration, and/or the Saudi government.  There is speculation
> that [Bayoumi] could be a Saudi intelligence officer based on
> numerous factors and circumstances.  Therefore, there remains the
> possibility that the meeting was planned or [Bayoumi] was
> directed by someone at the Saudi Consulate to meet the two
> hijackers at the restaurant in LA.

Exh. 35.

Defendants' related request that the Court simply ignore Senator Graham's testimony

identifying al Bayoumi as a Saudi agent should be disregarded, under the theory that his affidavit

presents "conclusions, not facts," MTA Opp. at 13, further underscores the folly of their

attempted trial on the papers.  While that characterization of the testimony is incorrect, the

argument ignores that Senator Graham is more than qualified to offer opinion testimony, based

on his direct involvement in leading the 9/11 Joint Inquiry, personal familiarity with the relevant

intelligence reports, and decades of experience in intelligence matters.  *See* Fed. R. Evid. 702.[9]

### 3. The Kingdom's Individual Agents Engaged in Tortious Conduct in Support of the 9/11 Attacks

Again preferring their own carefully selected evidence, and ignoring other aspects of the

record, defendants implausibly argue that the allegations in the amended pleading (and

inferences to be drawn from those allegations) fail to sufficiently allege that al Bayoumi, al

Thumairy, Basnan, or Saleh al Hussayen, engaged in any tortious actions.[10]  As was true of the

nearly identical arguments offered in their renewed motion to dismiss, defendants' criticisms of

the sufficiency of plaintiffs' pleadings relating to the tortious acts of these Saudi agents ignore

the specific content of plaintiffs' allegations, and the logical inferences that necessarily flow

from those allegations.[11]  They also rest on defendants' mistaken view that plaintiffs are required

to prove their allegations through trial-phase evidence at the pleading phase.

As a preliminary matter, the Second Circuit has already confirmed the sufficiency of the

allegations relating to al Bayoumi's tortious activities in support of the 9/11 attacks, through its

ruling restoring Dallah Avco to the case.  *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 679 (2d Cir.

2013).  In that ruling, the Court recognized that plaintiffs' claims and theories of jurisdiction

relating to Dallah Avco rested on plaintiffs' allegation that it "provided 'cover employment' for

al Bayoumi while he was in the United States and allegedly supporting two September 11, 2001

---

[9] While they on the one hand argue that the testimony of Senator Graham and other senior U.S. officials charged with leading the nation's two principal investigations into 9/11 should be ignored, defendants simultaneously urge that the allegedly contrary conclusions of unnamed FBI field agents, unsupported by any affidavits, should be regarded as conclusive.

[10] Defendants' arguments relating to plaintiffs' secondary liability theories stand at odds with the seminal authority on concerted action liability, *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), and in particular the rulings in that case concerning:  (1) the factors relevant in inferring agreement in a conspiracy case, *id.* at 480-81; (2) the state of mind  required to establish aiding and abetting liability and bases for inferring that state of mind, *id.* at 481-85; and (3) the factors relevant in determining whether a defendant's contributions constitute "substantial assistance for aiding and abetting purposes."  *Id.* at 484 n. 13.  On this final point, the *Halberstam* Court's holding that even de minimis support may qualify as substantial assistance where particularly "bad or opprobrious acts" are involved, is particularly notable here.  *Id.*

[11] Plaintiffs responded to these arguments at length in the opposition to the motion to dismiss.  Plaintiffs' arguments from that brief, which are incorporated by reference, demonstrate the tortious nature of these agents' conduct.

hijackers." *Id.* The court concluded that "plaintiffs' allegations suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States," and "suggest a closer nexus [than presented by allegations against other defendants] between [Dallah Avco's] alleged support of al Qaeda and the September 11, 2001 attacks." *Id.* In so holding as to Dallah Avco, the Court necessarily endorsed the sufficiency of plaintiffs' underlying allegations that al Bayoumi engaged in tortious acts in support of the September 11th attacks.

While the Second Circuit's prior ruling conclusively resolves the issue, an examination of defendants' arguments relating to the sufficiency of the allegations relating to al Bayoumi's mental state serves to illustrate the deeply flawed approach they take in evaluating plaintiffs' pleadings. Defendants begin by arguing that the specific allegation presented in plaintiffs' amended pleading that an FBI agent involved in the investigation stated that al Bayoumi "had knowledge" of the 9/11 plot should be ignored, MTA Opp. at 16, even though they elsewhere invoke the conclusions of other unidentified FBI agents in support of their arguments. *Id.* at 1, 2, 12, 13, 16, 18, 19. From there, defendants assert that the pleading as a whole is deficient as to al Bayoumi's state of mind, without even addressing the nature or the relationships and actions described in the amended pleading, or the obvious inferences that arise from those allegations.

In fact, plaintiffs' extensive allegations concerning the nature of al Bayoumi's interactions with Fahad al Thumairy, Khalid al Mihdhar, Nawaf al Hazmi, Anwar al Aulaqi, and Osama Basnan most certainly give rise to a clear inference that al Bayoumi acted with the requisite state of mind in providing material support to the September 11th hijackers. Most simply, the allegations confirm that al Bayoumi met in the morning with al Thumairy (a known terrorist with ties to al Qaeda) at the Saudi consulate; proceeded from that meeting to a restaurant where he met al Hazmi and al Mihdhar (two of the September 11th hijackers); promptly offered to help those al Qaeda hijackers settle in San Diego; assisted them in making contact with Aulaqi

(another al Qaeda member) immediately upon their arrival in San Diego; and provided various forms of assistance that enabled them to begin preparation for the September 11th attacks, despite being ill-prepared for their mission.  From these and other allegations demonstrating their extensive and focused engagements with a range of al Qaeda members, and contemporaneous provision of assistance to the 9/11 hijackers, an obvious inference that al Bayoumi acted knowingly (and that al Thumairy directed al Bayoumi to assist the hijackers), readily arises.[12]

Defendants also quibble over the "substantiality" of the assistance provided by al Bayoumi, but here again their arguments simply fail to meet the content of the pleadings and facts of record.  Plaintiffs clearly allege that al Bayoumi intervened at the most crucial moment, immediately after the hijackers arrived in the United States, and provided a broad array of assistance "which enabled them to establish themselves in the United States despite their lack of preparation for that transition, and to begin their operational preparations for the attacks."  The substantiality of this assistance is self-evident from the 9/11 Commission's observation, quoted in the amended pleading, that al Hazmi and al Mihdhar were "ill prepared for a mission in the United States" and therefore "unlikely that Hazmi and Mihdhar – neither of whom, in contrast to the Hamburg group, had any prior exposure to life in the West – would have come to the United States without arranging to receive assistance from one or more individuals informed in advance of their arrival."[13]  Aver. ¶¶ 146-47.

---

[12] Secretary Lehman has specifically testified that "Fahad al Thumairy and Omar al Bayoumi knew that al Mihdhar and al Hazmi were bad actors who intended to do harm to the United States."

[13] Further, the various forms of assistance al Bayoumi provided to the hijackers all constitute "material support and resources" within the meaning of the Anti-Terrorism Act.  As such, his actions were not only tortious, but criminal under federal law.  18 U.S.C. § 2339A ("The term 'material support or resources' means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials).

**F.      Plaintiffs Have Adequately Alleged The Charities' Alter-Ego Status**

Defendants are further mistaken in their claim that plaintiffs have failed to adequately

allege that the Kingdom's da'awa organizations (charities) are alter-egos of the Saudi

government.  Beyond the fact that the amended pleading expressly alleges that those entities are

alter-egos, it offers specific factual allegations concerning the means through which the

Kingdom exercises its complete control over those entities.  For example, plaintiffs allege that

the charities receive a vast majority (if not all) of their funding from the Saudi government; that

senior Saudi officials head the charities; that the charities operate under the supervision of the

Ministry of Islamic Affairs; that the charities conduct field operations under the direct

supervision of the local Saudi embassies; that employees of the charities view themselves to be

government employees; and that the charities have described themselves as "instrumentalities"

of the Kingdom in this litigation.  MTD Opp. at 26-27.[14]

Although the allegations of plaintiffs' amended pleading are themselves sufficient to

carry their burden on this point, they have also presented expert testimony demonstrating that the

da'awa organizations operate under the direct and rigid control of the Saudi government, both

within the Kingdom and abroad.  *See* Affirmation of Evan Francois Kohlmann, ECF No. 2927-9.

According to Kohlmann, the da'awa organizations serve as the primary "government arm"

through which the Kingdom fulfills its self-described duty to propagate Islam throughout the

world under the direct supervision of the Ministry of Islamic Affairs.

---

[14] Here again, the Kingdom has never come forward with any affirmative evidence, such as an affidavit, refuting any aspect of plaintiffs' allegations concerning the charities' alter-ego status, or the Kingdom's complete domination of those charities.  For that reason alone, plaintiffs' allegations that the charities are alter-egos of the Saudi government must be accepted as true, and plaintiffs are entitled to all reasonable inferences arising from those allegations. *Nelson*, 507 U.S. at 351; *Robinson*, 269 F.3d at 140.  Moreover, even if the Court were to conclude that the allegations are insufficient to establish alter-ego status as a matter of law, plaintiffs have presented sufficient detail and facts to raise a reasonable expectation that discovery will provide additional evidence relevant to the issue. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**G.    The Allegations Concerning The U.S.-Based Tortious Acts Of The Saudi Charities Satisfy The Entire Tort Rule**

Contrary to the Kingdom's assertions, plaintiffs' amended pleading also adequately alleges tortious acts by the Saudi da'awa organizations in the United States, sufficient to satisfy the entire tort rule.  For instance, plaintiffs' amended pleading cites the U.S. government's express statement that it's "investigation [of al Haramain] shows direct links between the U.S. branch and Usama bin Laden."  Exh. 206.  *See also* Aver. ¶ 490; Exh. 204 (U.S. Treasury officials stating that al Haramain "field offices and representatives operating throughout Africa, Asia, Europe and *North America* appeared to be providing financial and material support to the al Qaida network.") (emphasis supplied).  Similarly, plaintiffs' amended pleading describes numerous federal terrorism investigations of the U.S. offices of the MWL, IIRO, and WAMY, relating to their funding of al Qaeda from within the United States.[15]

Relatedly, in suggesting that plaintiffs' allegations concerning the charities' intimate collaborations with al Qaeda outside of the United States are irrelevant, defendants err in two significant respects.  First, the additional allegations concerning the charities' terrorist activities outside of the United States confirm the intimacy of their collaborations with al Qaeda, and thus reinforce the plausibility of plaintiffs' express claims that they used their U.S. offices to advance al Qaeda's terrorist agenda, as specifically alleged in the amended pleading.  Second, so long as the defendant engages in some tortious act in the United States, the Second Circuit's entire tort rule is satisfied, and the defendant is not entitled to immunity with respect to related tortious activities carried out from beyond U.S. borders.  *See O'Neill v. Saudi Joint Relief Comm.*, 714 F.3d 109, 117 (2d Cir. 2013) (claims are barred by the entire tort rule because defendants are not alleged to have "committed a single tortious act in the United States" and "*all of the tortious conduct*" allegedly occurred abroad) (emphasis in original).  Thus, because the charities provided

---

[15] Defendants' entire tort arguments fail for the additional reasons discussed in plaintiffs' opposition to defendants' renewed motion to dismiss at pp. 18-21.  Plaintiffs incorporate that discussion by reference.

support to al Qaeda from their U.S. offices as part of their global campaign to advance al Qaeda's targeting of the United States, all of their tortious acts in support of al Qaeda are encompassed within the scope of the claims authorized by the tort exception.[16]

### H. Plaintiffs' Claims Are Not Barred By The Discretionary Function Clause Or Modest Causation Requirements Of The FSIA

Defendants' opposition to plaintiffs' motion to amend also rehashes the misguided discretionary function and causation arguments presented in their renewed motion to dismiss. Plaintiffs have thoroughly addressed those arguments in their opposition to the renewed motion to dismiss, MTD Opp. at 28-30, and incorporate those discussions herein by reference.

## III. CONCLUSION

For these reasons, plaintiffs respectfully submit the Court should exercise its discretion and grant plaintiffs leave to file their proposed amended pleading.

Dated:  April 10, 2015                    Respectfully submitted,

                                          /s/ Stephen A. Cozen
                                          Stephen A. Cozen, Esq.
                                          Elliott R. Feldman, Esq.
                                          Sean P. Carter, Esq.
                                          Scott Tarbutton, Esq.
                                          COZEN O'CONNOR
                                          1900 Market Street
                                          Philadelphia, PA  19103
                                          (215) 665-2000

                                          Attorneys for *Federal Insurance* Plaintiffs

                                          Jodi W. Flowers, Esq.
                                          Robert T. Haefele, Esq.
                                          MOTLEY RICE LLC
                                          28 Bridgeside Boulevard
                                          P. O. Box 1792
                                          Mount Pleasant, SC  29465
                                          (843) 216-9000

---

[16] The U.S.-based torts of the Kingdom's individual agents also satisfy the entire tort rule.  Significantly, their acts also were carried out pursuant to the program of support administered by the Ministry of Islamic Affairs, of which the charities' torts were a related part.

-and-

Andrea Bierstein, Esq.
SIMMONS HANLY CONROY, LLC
112 Madison Avenue
7th Floor
New York, NY  10016
(212) 784-6400

Attorneys for *Burnett* Plaintiffs and *Euro Brokers*
Plaintiffs

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew J. Maloney III, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue
32nd Floor
New York, NY 10017
(212) 687-8181

Attorneys for *Ashton* Plaintiffs

Jerry S. Goldman, Esq.
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

Attorneys for *O'Neill* Plaintiffs

Chris Leonardo, Esq.
ADAMS HOLCOMB LLP
1875 Eye Street, NW
Suite 810
Washington, DC  20006
(202) 580-8803

-and-

Howard N. Feldman
Dickstein Shapiro LLP
1825 I Street NW
Washington, DC  20006
(202) 420-2200

Attorneys for *Cantor Fitzgerald*
Plaintiffs

21

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER &
COLLER, LLP
530 Fifth Avenue, 23rd Floor
New York, NY 10036-5101
(212) 944-2200

Attorneys for *Continental Casualty*
Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' Reply in Further Support of Their Motion to File a Consolidated Amended Pleading of Facts and Evidence as to the Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia & Herzegovina was filed electronically this 10th day of April 2015.  Notice of this filing will be sent to all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.  Parties may access this filing through the Court's ECF system.

/s/ _____
J. Scott Tarbutton

LEGAL\22563770\1

23