# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                               )

IN RE:  TERRORIST ATTACKS ON       )       **Civil Action No. 03 MDL 1570 (GBD)**
SEPTEMBER 11, 2001              )       **ECF Case**
_____ )

This document relates to:

*Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03-cv-6978
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 03-cv-8591
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, Case No. 04-cv-7216
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-9849
*Euro Brokers Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-7279
*Kathleen Ashton, et al. v. al Qaeda Islamic Army, et al.*, Case No. 02-cv-6977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia*, Case No. 04-cv-1922
*Continental Casualty Co., et al. v. al Qaeda, et al.*, Case No. 04-cv-5970
*Cantor Fitzgerald Assocs. v. Akida Invest. Co.*, Case No. 04-cv-7065

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF THE KINGDOM OF SAUDI ARABIA AND THE SAUDI HIGH COMMISSION
## FOR RELIEF OF BOSNIA & HERZEGOVINA

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER
   & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)

*Attorneys for the Saudi High Commission
for Relief of Bosnia & Herzegovina*

Michael K. Kellogg (MK4579)
Mark C. Hansen (MH0359)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

April 10, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    Plaintiffs' Case Is Both Legally and Factually Insufficient .................................... 2

        A.    Plaintiffs' Complaint and Averment Cannot Withstand a
            Legal Challenge ..................................................................................... 2

        B.    Plaintiffs Must Present Evidence – Not Mere Allegations –
            To Withstand a Factual Challenge Under the FSIA .................................. 3

    II.    Plaintiffs Have Neither Pleaded nor Provided Evidence on Key
        Points ................................................................................................................ 4

        A.    Plaintiffs Have Failed To Satisfy The Entire-Tort Rule ............................ 5

            1.    Hussayen ..................................................................................... 5

            2.    Al Bayoumi .................................................................................. 7

            3.    Al Thumairy ................................................................................. 9

            4.    Basnan and "Unnamed Officials" ................................................ 9

            5.    Unnamed Charity Officials ........................................................... 9

        B,    Plaintiffs Have Failed To Establish that the Charity
            Defendants Were Alter Egos of the Kingdom .......................................... 10

        C.    Plaintiffs' Claims Are Barred by the Discretionary-
            Function Exemption ................................................................................ 11

        D.    Plaintiffs Have Failed To Establish Causation ......................................... 12

    III.    Plaintiffs' Purported Evidence Is Immaterial and Inadmissible ........................... 13

        A.    The Carter Exhibits Are Immaterial and Inadmissible ............................. 13

            1.    The Politicians' Affirmations ...................................................... 13

            2.    The Moussaoui Statements .......................................................... 14

            3.    The Kohlmann Affirmation ......................................................... 15

         4.     The Remaining Carter Exhibits ....................................................16

   B.    The Index Exhibits Are Inadmissible and Immaterial .............................17

         1.     Unsworn Hearsay...................................................................17

         2.     Hearsay Without Cross-Examination ...........................................17

         3.     Hearsay Within Hearsay .........................................................18

         4.     Lack of Personal Knowledge .......................................................18

         5.     Lack of Authentication ..............................................................18

         6.     Preliminary Investigative Stages..................................................18

         7.     Events Outside the United States...................................................19

         8.     Allegations of Indirect Funding....................................................19

IV.   Jurisdictional Discovery Has Been Waived Twice and Is
     Unjustified......................................................................................19

CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*Agricultural Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413
    (S.D.N.Y. 2002)......................................................................................18

*Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1992)...............................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................6

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9 (D.D.C. 2003) ................................19

*Burrage v. United States*, 134 S. Ct. 881 (2014) ........................................................13

*Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007),
    *aff'd*, 354 F. App'x 496 (2d Cir. 2009) ...........................................................17

*Chamberlin v. Principi*, No. 02-cv-8357 (NRB), 2005 WL 1963942
    (S.D.N.Y. Aug. 16, 2005), *aff'd*, 247 F. App'x 251 (2d Cir. 2007)..................................18

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009)..........................................................10

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007) ......................................10, 19, 20

*First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172 (2d Cir. 1998) ........................19

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008),
    *aff'd*, 391 F. App'x 939 (2d Cir. 2010) ......................................................... 19-20

*Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) .............................................11

*Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986).....................................3

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123
    (D.C. Cir. 2004) ..................................................................................13

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013), *cert. dismissed*,
    135 S. Ct. 42 (2014)...............................................................................16

*Mukaddam v. Permanent Mission of Saudi Arabia*, 136 F. Supp. 2d 257
    (S.D.N.Y. 2001).....................................................................................4

*Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004)..........................................4

*Platinum & Palladium Commodities Litig., In re*, 828 F. Supp. 2d 588
    (S.D.N.Y. 2011)................................................................................. 18-19

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001).....................................2

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009),
    *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ............................................................3, 4

*Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006) ...........................................13

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)...............................................................2

*Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, No. 12-cv-7316 (LGS),
    2014 WL 288705 (S.D.N.Y. Jan. 27, 2014) ...........................................................4

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ....................16

*Terrorist Attacks on September 11, 2001, In re*:

    349 F. Supp. 2d 765 (S.D.N.Y. 2005), *on recon. in part*, 392 F. Supp. 2d
    539 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008)................................11, 18

    392 F. Supp. 2d 539 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008) .........11

    718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 109 (2d Cir. 2013).........6, 18

    714 F.3d 109 (2d Cir. 2013).........................................................................3, 4, 5

    714 F.3d 659 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2870 (2014) ...................6

*United States v. Amawi*, 541 F. Supp. 2d 945 (N.D. Ohio 2008), *aff'd*,
    695 F.3d 457 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1474 (2013)................16

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008)....................................................16

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002) .....................3, 4

*Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247
    (2d Cir. 2000).......................................................................................................3


## STATUTES AND RULES

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* ................................. *passim*

    28 U.S.C. § 1605(a)(5)..........................................................................................12, 13

Fed. R. Civ. P.:

    Rule 8 ....................................................................................................................2

    Rule 56 ...................................................................................................................3

Fed. R. Evid.:

    Rule 602 ...................................................................................................14, 18

    Rule 703 .........................................................................................................16

    Rule 804(b)(1)(B). ......................................................................................14, 17

## OTHER MATERIALS

Addendum to Evaluation of Adjudicative Competence, attached as Exh. C to
    Standby Counsel's Memorandum Regarding Rule 11 Considerations,
    *United States v. Moussaoui*, No. 1:01-cr-455 (E.D. Va. filed July 24,
    2002) (Dkt. No. 356) (under seal) ...................................................................15

Aff. of Zacarias Moussaoui, attached to Def.'s Mot. To Withdraw Guilty Plea,
    *United States v. Moussaoui*, No. 1:01-cr-455 (E.D. Va. filed May 8, 2006)
    (Dkt. No. 1857) ............................................................................................14

Brief for the United States as Amicus Curiae, *Federal Ins. Co. v. Kingdom of
    Saudi Arabia*, No. 08-640 (U.S. filed May 29, 2009) ...................................8, 10

9/11 Review Commission, *The FBI:  Protecting the Homeland in the 21st
    Century* (Mar. 2015), *available at* http://www.fbi.gov/stats-
    services/publications/protecting-the-homeland-in-the-21st-century .......................1, 8, 20

*The 9/11 Commission Report:  Final Report of the National Commission on
    Terrorist Attacks Upon the United States* (July 2004), *available at*
    http://govinfo.library.unt.edu/911/report/911Report.pdf...............................8, 9, 17

Trial Tr., *United States v. Moussaoui*, No. 1:01-cr-455 (E.D. Va. Mar. 27, 2006) ......................15

## INTRODUCTION

Plaintiffs have accused the Kingdom of Saudi Arabia ("Kingdom") and the Saudi High Commission ("SHC") of perpetrating a terrorist attack against the United States that killed thousands of innocent people.  After 12 years, they have failed to turn those inflammatory and irresponsible accusations into viable claims supported by evidence sufficient to defeat the Kingdom's and the SHC's presumptive immunity from suit.  The United States, after repeated investigations, has repudiated attempts to recast a terrorist attack by al Qaeda as an unprovoked act of war by a foreign state that is also an important ally; and a comprehensive review, mandated by Congress and performed in close coordination with the FBI, recently found that there is "no new information . . . since the 9/11 Commission 2004 report [that] would change the 9/11 Commission's findings regarding responsibilities for the 9/11 attacks."[1]

Plaintiffs can offer no document or witness that supports their attempt to invoke this Court's jurisdiction.  They rely instead on affidavits from former politicians with no personal knowledge of any relevant events; on colorful but immaterial hearsay statements from convicted, mentally ill terrorist Zacarias Moussaoui; and on thousands of pages of recycled, patently inadmissible speculation.  They fail to establish any genuine issue of fact as to three dispositive points:  *first*, there is no evidence of any tortious act by the Kingdom or the SHC in the United States; *second*, there is no evidence that the Kingdom or the SHC knowingly or directly supported the September 11 attacks; and, *third*, there is no evidence that the Kingdom or the SHC caused those attacks.  Plaintiffs have had enough chances to make their case.  This Court should reject their (previously waived) requests for discovery and grant the motions to dismiss.

---

[1] 9/11 Review Commission, *The FBI:  Protecting the Homeland in the 21st Century* 107 (Mar. 2015) ("9/11 Review Report"), *available at* http://www.fbi.gov/stats-services/publications/ protecting-the-homeland-in-the-21st-century.

## ARGUMENT

### I.       Plaintiffs' Case Is Both Legally and Factually Insufficient

Plaintiffs' allegations (whether in their operative complaint or in the new pleading they

seek belatedly to file) are legally insufficient to defeat the presumptive immunity from suit that

both the Kingdom and the SHC – as a foreign sovereign and its instrumentality – possess under

the Foreign Sovereign Immunities Act of 1976 ("FSIA").  *See Saudi Arabia v. Nelson*, 507 U.S.

349, 355 (1993).  Their allegations are also unsupported by admissible evidence.  Defendants

raised those two procedurally distinct challenges, legal and factual, in their Motion to Dismiss,

*see* Dkt. No. 2894, at 12, 13-18.  Plaintiffs have now shown that they can withstand neither.

#### A.       Plaintiffs' Complaint and Averment Cannot Withstand a Legal Challenge

To survive a legal challenge under the FSIA, Plaintiffs must show that they have properly

pleaded, under the standards of Federal Rule of Civil Procedure 8, facts which if proved would

fit their case within an exception to foreign sovereign immunity.  That familiar pleading standard

is applied with special care when sovereign immunity is at stake, so that a "foreign government

[can] obtain an early dismissal" of "vague and conclusory allegations of tortious conduct."

*Robinson v. Government of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001).

Defendants showed in their opening memorandum that Plaintiffs' operative complaint –

the First Amended Complaint filed by the *Federal Insurance* Plaintiffs 11 years ago, which all

the other Plaintiffs stipulated was representative of their claims – is legally insufficient.  *See* Dkt.

No. 2894.  Plaintiffs do not seriously dispute the point.  Instead, they rely on a filing styled an

"Averment of Facts and Evidence" that is – except for its title – identical to the "Proposed

Amended Pleading" they have sought leave to file.  Plaintiffs' Pleading is composed almost

entirely of recycled material repeated at greater length and is legally futile.  *See* Dkt. No. 2928.

Nothing changes because Plaintiffs have restyled it as an "Averment" rather than a "Pleading."

### B. Plaintiffs Must Present Evidence – Not Mere Allegations – To Withstand a Factual Challenge Under the FSIA

To survive a factual challenge under the FSIA, Plaintiffs must come forward with admissible evidence to establish the subject matter jurisdiction of this Court. The Kingdom and the SHC must initially make out a *prima facie* defense by establishing foreign sovereign or instrumentality status, *see Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002), but Plaintiffs admit that here.[2]  Plaintiffs thus have the "burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 114 (2d Cir. 2013) (internal quotations omitted). Because Plaintiffs have not met that burden, the Kingdom and the SHC can and should prevail on the basis of their uncontested *prima facie* showing.

Plaintiffs must come forward with evidence that is admissible, competent, and sufficient to "create a material issue of fact" on key jurisdictional issues. *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (explaining that a court "ruling on [a] 12(b)(1) motion" may not rely on "conclusory and hearsay statements"). Useful guidance is provided by cases applying Federal Rule of Civil Procedure 56 at summary judgment. *See Kamen*, 791 F.2d at 1011; *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 396 n.9 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

Plaintiffs incorrectly contend (at 7-9) that they can carry their burden with their Averment. The counsel who signed that document do not claim – and plainly do not have – personal knowledge of its contents. Thus, aside from its shortcomings as a pleading, the

---

[2] *See* First Am. Compl. ¶¶ 63, 181, *Federal Ins. Co. v. al Qaida*, No. 03-cv-6978 (filed Sept. 30, 2005) (ECF No. 772) (the Kingdom is a "foreign state" and the SHC is its "instrumentality"); Aver. ¶¶ 4, 5.

Averment is no response to Defendants' factual challenge.  *See*, *e.g.*, *Fridman*, 643 F. Supp. 2d at 369 n.9 (no affidavits without personal knowledge on motion to dismiss under the FSIA); *see generally Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (pleadings create no genuine issue of fact unless verified with personal knowledge).

In seeking to rest on the mere allegations of their Averment, Plaintiffs erroneously draw analogies (at 7-8) to challenges to personal jurisdiction by non-sovereign defendants.  FSIA plaintiffs, as explained by *Virtual Countries* and *Terrorist Attacks*, have a special burden to come forward with *evidence* to survive a motion to dismiss.  *See*, *e.g.*, *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, No. 12-cv-7316 (LGS), 2014 WL 288705, at *1 (S.D.N.Y. Jan. 27, 2014) ("While typically a Court does not wade into the facts or merits on a motion to dismiss and accepts well-pleaded allegations as true, the inquiry is different in a challenge . . . under the [FSIA].").[3]  That is why the Averment is not enough.

## II.    Plaintiffs Have Neither Pleaded nor Provided Evidence on Key Points

Plaintiffs' inability to answer either one of the legal and factual challenges raised by the Kingdom and the SHC is highlighted by focusing on several specific points that they must both plead and support by admissible evidence in order to invoke this Court's jurisdiction.  Those required points consist of (a) a tortious act by an agent of the Kingdom in the United States; (b) that is distinct from any discretionary function; and (c) that caused the 9/11 attacks, and so caused Plaintiffs' injuries.  Plaintiffs have neither pleaded nor proved those things.

---

[3] *Mukaddam v. Permanent Mission of Saudi Arabia*, 136 F. Supp. 2d 257 (S.D.N.Y. 2001), on which Plaintiffs rely (at 8), is not to the contrary.  In that case, the sovereign defendant raised *only* a legal challenge.  *See* 136 F. Supp. 2d at 260 ("Defendant sought dismissal on the complaint alone.").  The Court thus reserved any factual challenge.  *See id.* at 261-62.  Here, the Kingdom has expressly raised a factual challenge, *see* Dkt. No. 2894, at 12, 13-18; Plaintiffs have attempted (unsuccessfully) to come forward with evidence to meet that challenge, *see* Dkt. No. 2926, at 2 & n.1; and so this Court should consider whether Plaintiffs have met their burden.

### A.      Plaintiffs Have Failed To Satisfy the Entire-Tort Rule

The entire-tort rule requires Plaintiffs to plead and to provide evidence that an agent of the Kingdom or the SHC committed a tortious act in the United States.  *See Terrorist Attacks*, 714 F.3d at 117.[4]  Because the act must be tortious, Plaintiffs must establish that such an agent assisted the 9/11 hijackers despite *knowing* that the hijackers planned an act of terrorist violence. *See* Dkt. No. 2928, at 14 & n.17.  The Kingdom and the SHC have already shown that Plaintiffs' Proposed Amended Pleading (identical to their Averment) fails to state a claim on these issues. *See id.* at 9-24.  Plaintiffs also have no evidence to support their assertions.[5]

### 1.      Hussayen.

**Hussayen.**  Plaintiffs offer no evidence concerning Abdul Rahman Hussayen, who they allege stayed at the same hotel as three of the 9/11 hijackers the night before the attacks.  The paragraphs of their Averment relevant to him are ¶¶ 231-240; according to their Index, the only Exhibits that support those paragraphs are two newspaper articles.  *See* Index 5 (citing Ind. Exhs. 64 and 65).  Neither article is remotely admissible, *see infra* pp. 17-18, and even if they were admissible they are both useless to Plaintiffs.

*First*, neither article states that Hussayen held any official position with the Kingdom in September 2001; both refer to his later appointment as a minister in 2002.  *See* Ind. Exh. 64, #703; Ind. Exh. 65, #708.   Plaintiffs thus have no evidence that Hussayen was a Kingdom

---

[4] Contrary to Plaintiffs' assertions (at 19-20), the Second Circuit considered and rejected their arguments that the 9/11 attacks themselves were the relevant tort in the United States and that the 9/11 hijackers' actions could be attributed to sovereign defendants under state law theories of secondary liability.  Plaintiffs made those arguments to the appellate court.  *See* Reply Br. of Appellants Regarding the FSIA at 12-13, *Terrorist Attacks*, Nos. 11-3294-cv et al. (filed June 25, 2012) (Dkt. No. 579).  The Second Circuit answered with a clear rule requiring Plaintiffs to show that an "employee of the SJRC and [Red Crescent] – or [some]one controlled by these entities – committed a tortious act in the United States."  714 F.3d at 117.  Plaintiffs could not do so; that is why they lost the appeal.

[5] Plaintiffs do not even try to establish any tortious acts in the United States attributable to the SHC; they try but fail to establish any such acts attributable to the Kingdom.

official at the time,[6] much less acting in any official capacity.[7]

     *Second*, neither article states that Hussayen did anything wrong. Both clarify that Hussayen was "accused of no wrongdoing" and that "there is no evidence that he had contact with" the three hijackers. Ind. Exh. 64, #703; *see* Ind. Exh. 65, #709. Even Plaintiffs' Averment does not allege that Hussayen did or said anything to assist the September 11 plot. They instead rely on the mere allegation of his presence in the hotel.

     Plaintiffs also mischaracterize the decision of the Second Circuit ordering jurisdictional discovery against Hussayen. *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2870 (2014). That decision did not address Hussayen's alleged status as an agent of the Kingdom and did not find that Plaintiffs had properly alleged any tortious act in the United States. Instead, the court of appeals ordered jurisdictional discovery against Hussayen personally based on his allegedly intentional "indirect support" for al Qaeda as a director of Al Rajhi Bank. *Id.* It found that Plaintiffs had plausibly alleged such intent because he allegedly "switch[ed] hotels" to stay near the three hijackers. *Id.* It did *not* find that Plaintiffs had plausibly alleged he did anything to help the hijackers at that time.[8]

---

    [6] Plaintiffs rely (at 15-16) on Hussayen's motion to dismiss, in which his counsel argued that he was a "governmental official during the entire period in question." Dkt. No. 83, at 6. Hussayen's declaration did *not* say he was an official of the Kingdom itself in 2001. *See* Dkt. No. 83-2, ¶¶ 5, 6 (stating that, from 1974 to 2002, after *retiring* from a post with the Kingdom's Council of Prime Ministers, Hussayen worked for several charitable organizations; Plaintiffs have not argued that any of those charities were alter egos of the Kingdom).

    [7] In an opinion that assumed Hussayen was an official, this Court has already found that the claims against him "alleged conduct . . . outside the scope of his government duties." *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 475 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 109 (2d Cir. 2013).

    [8] The Second Circuit stated that Plaintiffs had "suggest[ed] the possibility that [Hussayen] m[ight] have provided direct aid to members of al Qaeda." 714 F.3d at 679. Allegations that "do not permit [a] court to infer more than the mere *possibility* of misconduct" do not state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added).

In any event, a plausible inference that the director of a private bank knowingly aided al Qaeda is not enough for Plaintiffs on this motion. They must come forward with evidence that Hussayen, acting on behalf of the Kingdom, helped the hijackers in the United States. It is now clear that Plaintiffs have *no support at all* – not even hearsay newspaper articles – for their allegation that Hussayen "'deci[ded] to switch hotels to stay in the same hotel as at least three of the hijackers.'" Dkt. No. 2926, at 11. The Second Circuit's decision thus does not help them.

**2.    Al Bayoumi.**  Plaintiffs offer no evidence to support their contention (rejected by the FBI, *see* Dkt. No. 2928, at 12-13 & n.15) that Omar Al Bayoumi was an intelligence agent of the Kingdom. They err in relying on the affirmation of Senator Bob Graham, who lacks personal knowledge, *see infra* pp. 13-14; on purported FBI or "intelligence" reports, inadmissible on their face and relying on anonymous sources, *see infra* pp. 17-18; and on books and news articles that are not even colorably evidence, *see id.*  Plaintiffs cannot even support their (facially inadequate) allegations that Al Bayoumi did too little work for the aviation company Dallah Avco or made too many phone calls to the Saudi consulate – much less their assertions that unnamed "source[s]" and "witnesses" thought he was a "'spy,'" Aver. ¶¶ 187-189.

Plaintiffs also offer no evidence that Al Bayoumi provided any material assistance to Nawaf Al Hazmi or Khalid Al Mihdhar, the two individuals he met in San Diego who later participated in the September 11 attacks. Plaintiffs cannot meet their burden merely by showing that Al Bayoumi helped the two men find an apartment or held a welcome party for them. *See* Dkt. No. 2928, at 15-16. Their assertions that he did more lack any meaningful support.[9]

---

[9] Plaintiffs cite (at 12 n.13) ¶ 177 of their Averment for the proposition that Al Bayoumi provided "significant funds" to the hijackers and "paid their rent." Their Index states that ¶ 177 is supported by Averment Exhibits 35, 37-39, and 49-51. Those documents contain conclusory statements attributed to unnamed FBI agents. None contains any statement from personal knowledge about any transfer of funds from Al Bayoumi to the two men. Likewise, Plaintiffs

Finally, Plaintiffs also have no evidence that, when Al Bayoumi allegedly helped Al Hazmi or Al Mihdhar, he knew they were planning a terrorist attack.  The 9/11 Commission and the FBI both credited Al Bayoumi's denial of such knowledge, and Plaintiffs' own affirmant Senator Graham has agreed.  *See* Dkt. No. 2928, at 12-13, 14-15 & n.20, 16; *see also* 9/11 Review Report 101-03 (recently concluding that no new evidence changes this finding).  Citing an FBI memorandum, Plaintiffs assert that "U.S. officials" have "concluded" that Al Bayoumi was "'tasked'" to help Al Hazmi and Al Mihdhar.  Dkt. No. 2926, at 12 (citing Ind. Exh. 35, #397-#399).  That is a mischaracterization.  The memorandum states that it is "*unknown*" whether a meeting between someone whose name is redacted (Plaintiffs apparently believe it was Al Bayoumi) and the two men "was a planned event or a 'chance meeting.'"  Ind. Exh. 35, #398 (emphasis added).[10]  Plaintiffs' other attempts to support their allegations that Al Bayoumi knowingly assisted the 9/11 plot likewise fall short.[11]  Their unsupported claims about Al Bayoumi remain – as the United States said in 2009 – "inadequate to sustain [their] burden."[12]

---

cannot support their claims that Al Bayoumi introduced the two men to Anwar Aulaqi or Modhar Abdullah.  Plaintiffs assert (at 13) that "[Al] Bayoumi introduced the hijackers to Aulaqi," but the only source they cite is Index Exhibit 60, which contains no such statement.  They further assert (at 13) that "[Al] Bayoumi . . . tasked . . . Abdallah . . . with assisting the hijackers."  The 9/11 Report states that Abdallah told the FBI that Al Bayoumi "asked him" to "acclimate" the two men to the United States, but notes that Al Bayoumi denied doing so.  *The 9/11 Commission Report:  Final Report of the National Commission on Terrorist Attacks Upon the United States* 516 n.20 (July 2004) ("9/11 Report"), *available at* http://govinfo.library.unt.edu/911/report/ 911Report.pdf.  Plaintiffs do not offer any direct record of Abdallah's statement to the FBI.

[10] Plaintiffs also cite ¶ 162 of their Averment to support their statement that Al Bayoumi was "'tasked'" to help the two men.  The Averment itself is allegation, not evidence.  Other than the mischaracterized memorandum, the only sources they cite to support ¶ 162 are Senator Graham's book and an anonymous blog post.  Index 3, 4.

[11] Those consist of an anonymous quote attributed to a "top FBI official" in a newspaper, Aver. ¶ 152; Ind. Exh. 25; and Lehman's speculation that "al Bayoumi knew that al Mihdhar and al Hazmi were bad actors," Carter Exh. 3, ¶ 8.  Neither is evidence.  *See infra* pp. 13-14, 17-19.

[12] Brief for the United States as Amicus Curiae 16 n.4, *Federal Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640 (U.S. filed May 29, 2009) ("U.S. Amicus Br.").

**3.    Al Thumairy.**  Plaintiffs have no evidence that Fahad Al Thumairy did anything to help Al Hazmi or Al Mihdhar.  Plaintiffs assert (at 12) that Al Bayoumi helped the two at Al Thumairy's direction, but that assertion is grounded solely in (a) affirmations with no basis in personal knowledge, *see infra* pp. 13-14; and (b) the FBI memorandum discussed above, which states only that "there remains the possibility that . . . [redacted] was directed by someone at the Saudi Consulate to meet the two hijackers at the restaurant in LA."  Ind. Exh. 35, #398.  That in 2002 the FBI thought there was a "possibility" that someone had done something wrong – a possibility that the 9/11 Commission later rejected as "speculation," 9/11 Report 216-17 – is not evidence of anything, much less enough to pierce foreign sovereign immunity.

**4.    Basnan and "Unnamed Officials."**  Plaintiffs have no evidence that Osama Basnan was a "Saudi agent."  Dkt. No. 2926, at 14.  They cite only a largely redacted passage from a purported FBI memorandum.  *See id.*[13]  Their further assertions that Basnan and unnamed "Saudi officials" purportedly "funneled" money "through [Al] Bayoumi and his family," *id.*, are based solely on Senator Graham's book.  None of this is evidence.

**5.    Unnamed Charity Officials.**  Plaintiffs further argue (at 15) that "U.S.-based Saudi officials working in . . . al Haramain, WAMY, MWL, and the IIRO" help them satisfy the entire-tort rule.  That argument fails because those charities are not alter egos of the Kingdom, *see infra* pp. 10-11, and because Plaintiffs cannot show that any charity employee committed a tortious act inside the United States.  Plaintiffs offer only three paragraphs of legally insufficient allegations about conduct by the charities in this country.  *See* Dkt. No. 2928, at 24.  Even after

---

[13] The memorandum refers to a "possibility" of a redacted individual "being affiliated with the Saudi Arabian Government or the Saudi Arabian Intelligence Service" and states that certain redacted facts "could indicate he . . . may be undertaking activities on behalf of the Government of Saudi Arabia."  Ind. Exh. 49, #632.  Even assuming the redacted name is Basnan's, the memorandum is naked speculation.

discovery from those four charities, Plaintiffs cannot support those allegations with evidence.  As for MWL, IIRO, and WAMY, Plaintiffs can point to no act in the United States at all.[14]  As for Al Haramain, Plaintiffs have only hearsay statements that funds raised here went to militants in Chechnya – there is no showing that any went to al Qaeda or helped fund the 9/11 attacks.[15]

### B.    Plaintiffs Have Failed To Establish that the Charity Defendants Were Alter Egos of the Kingdom

Plaintiffs also cannot attribute the actions of the charity defendants to the Kingdom. Most of the relevant charities (MWL, IIRO, WAMY, and Al Haramain) are non-governmental organizations, not instrumentalities of the Kingdom.  Even for those charities that are instrumentalities (SHC, the Red Crescent, and the SJRC) – and even if Plaintiffs were correct that *all* of the charities are instrumentalities – they must still persuade this Court to "overrid[e] the presumption of independent status" between sovereign and instrumentality, an unusual act to which courts have a "strong aversion."  *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 478 (2d Cir. 2007) (internal quotations omitted).  That requires proof of the sovereign's "day-to-day control" of the instrumentality.  *Doe v. Holy See*, 557 F.3d 1066, 1079-80 (9th Cir. 2009) (per curiam). *See* Dkt. No. 2928, at 21; *see also* U.S. Amicus Br. 17 n.14 (explaining in 2009 that Plaintiffs had failed to overcome "the law's respect for corporate personality, which the FSIA recognizes").

---

[14] Plaintiffs' Index identifies no document even purportedly supporting Averment ¶ 424, which concerns the MWL and the IIRO.  Plaintiffs assert (at 15) that some of their allegations concern the IIRO's operations "on a global basis," but such generalized characterizations do not meet their burden.  The Index identifies only two newspaper articles purportedly supporting Averment ¶ 462, which concerns WAMY.  *See* Index 5, 14 (citing Ind. Exhs. 64, 188).  Those articles describe only investigations, not any specific acts by WAMY in U.S. territory.

[15] Plaintiffs' Index identifies five documents relevant to Plaintiffs' allegations concerning Al Haramain's U.S. activities (at Aver. ¶¶ 492-501).  *See* Index 15-16 (citing Ind. Exhs. 206-210).  None helps them.  *See* Ind. Exh. 206 (press release; hearsay); Ind. Exh. 207 (diplomatic cable; hearsay); Ind. Exhs. 208-209 (tax records and corporate documents; immaterial); Ind. Exh. 210 (search warrant affidavit that discusses alleged transfers of funds to Chechen militants, with no suggestion of a link to al Qaeda; also hearsay).

Plaintiffs attempt (at 26-27) to carry that heavy burden with the Kohlmann Affirmation; but that is inadmissible because Kohlmann lacks relevant expertise and recites hearsay without meaningful analysis.  *See infra* pp. 15-16.  Further, his Affirmation does not suggest day-to-day control of the charities by the *Kingdom*.  It instead addresses control of the non-governmental charities'[16] branch offices by their *own central headquarters*.[17]  That is immaterial.[18]

## C.    Plaintiffs' Claims Are Barred by the Discretionary-Function Exemption

Plaintiffs have also neither pleaded nor proved any allegedly wrongful act that is not embraced by the discretionary-function exemption.  Judge Casey concluded 10 years ago that the Kingdom's "treatment of and decisions to support Islamic charities" were discretionary functions.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 803-04 (S.D.N.Y. 2005), *on recon. in part*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008).[19]  Nothing would support a contrary conclusion today.  To the contrary, Plaintiffs' heavy emphasis on so-

[16] Kohlmann's discussion of the SHC, SJRC, and Red Crescent is much shorter and features little if any discussion of day-to-day control.  *See* Carter Exh. 9, ¶¶ 110-129.

[17] *See* Carter Exh. 9, ¶¶ 39-54 (Al Haramain); *id.* ¶¶ 65-68 (MWL); *id.* ¶¶ 81-90 (IIRO); *id.* ¶¶ 104-109 (WAMY).  Kohlmann's sole attempt to show day-to-day control of one non-governmental charity by "Saudi government officials," *id.* ¶¶ 98-99 (unredacted version), involves only minor financial assistance and the resolution of a dispute.

[18] Plaintiffs also make (at 27-28) the remarkable argument that, because promoting Islam is a "core policy and function" of the Kingdom, and the non-governmental charities promote Islam, the charities somehow must be legally identical to the Kingdom.  The case they cite for this novel proposition, *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), says nothing of the kind.  That case held that Poland's Ministry of the Treasury could not be sued under the "'takings' exception" to foreign sovereign immunity because it was part of the Republic of Poland rather than a mere "agency or instrumentality."  *Id.* at 598.  *Garb* reached that conclusion only after considering Polish law showing that the Ministry "does not hold property separately from the Polish State."  *Id.* at 595 (internal quotations omitted).  Plaintiffs have presented nothing remotely similar here.

[19] Judge Casey likewise determined that the SHC's alleged actions were discretionary functions and that "undisputed evidence" submitted by the SHC showed that all of the SHC's decisions were guided by the Kingdom's policies regarding Bosnia-Herzegovina.  *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 555 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008).

called "Wahhabism" as a purported link between the Kingdom, the non-governmental charities, and various terrorist organizations only underscores how unsuitable their claims are for judicial resolution.  It would be deeply inappropriate for this Court to consider evidence of the Kingdom's efforts to support and promote the Islamic religion and to provide charity in accordance with the dictates of that religion as somehow showing wrongful conduct.

In attempting to distinguish Judge Casey's ruling, Plaintiffs assert (at 28-29) that they have provided evidence of "operational level" acts that "directly support[ed] the 9/11 hijackers and al Qaeda."  (Emphasis omitted.)  They have no such evidence.  The allegations concerning Hussayen, Al Bayoumi, Al Thumairy, and Basnan are insufficient for the reasons already given.  Their assertion (at 28) that the charity defendants provided "funding for training camps and facilities used for the attacks" is unsupported by any citation.  It appears to rest on the same mischaracterization of hearsay within hearsay that is endemic to Plaintiffs' submissions.[20]

### D.      Plaintiffs Have Failed To Establish Causation

Even if Plaintiffs had established a tortious, nondiscretionary act by the Kingdom or the SHC within the territory of the United States – which they have not done – they still have not met their burden to plead and prove that the September 11 attacks were "caused by [that] tortious act."  28 U.S.C. § 1605(a)(5).  Plaintiffs argue that they must only establish a vaguely defined "reasonable connection" between an act of the Kingdom or the SHC and the attacks.  To the contrary, when Congress uses ordinary language such as "'because of,'" "'results from,'" "'based on,'" or "'by reason of'" to establish a causal requirement, it thereby "imposes a

---

[20] For example, Plaintiffs' allegation that the IIRO "provided the funding for six al Qaeda training camps in Afghanistan," Aver. ¶ 315, appears to be based on an unauthenticated, heavily photocopied document they call a "1996 CIA Report," *id.*, which attributes to a "clandestine source" the statement that the IIRO "help[ed] fund six militant training camps in Afghanistan." Ind. Exh. 95, #972.  Plaintiffs simply insert the phrase "al Qaeda" in their own characterization.

requirement of but-for causation." *Burrage v. United States*, 134 S. Ct. 881, 889 (2014). The phrase "caused by" in § 1605(a)(5) is of the same kind and should be given the same effect.[21]

Even if they had evidence of some tort by the Kingdom or the SHC, Plaintiffs could neither establish but-for causation nor trace any reasonable connection to the September 11 attacks. Plaintiffs argue: (1) that the Kingdom or the SHC conspired with or abetted the 9/11 attackers, which requires a showing of intent they have not made, *see supra* pp. 5-9; (2) that Al Bayoumi, Al Thumairy, or Basnan provided substantial funding for the attacks, which again they have not shown, *see id.*; or (3) that Plaintiffs can rely on alleged overseas actions by charities – allegations barred by the entire-tort rule, unsupported by evidence, and (for charities other than the SHC) immaterial in light of Plaintiffs' failure to establish alter-ego status, *see supra* pp. 10-11. They do not come close to establishing the extraordinary proposition that the September 11 attacks were "caused by," 28 U.S.C. § 1605(a)(5), the Kingdom or the SHC.

## III.   Plaintiffs' Purported Evidence Is Immaterial and Inadmissible

Plaintiffs have attempted to meet their burden of production by submitting thousands of pages of inadmissible and irrelevant materials. If they had a single piece of evidence that would stand up in court, they would highlight it in their papers. Instead, they focus heavily on witnesses manifestly lacking personal knowledge, and on newspaper articles, blog posts, and similar multiple hearsay. They thus reveal that they have nothing better.

### A.   The Carter Exhibits Are Immaterial and Inadmissible

### 1.   **The Politicians' Afirmations.**   Plaintiffs rely on affirmations from three

---

[21] *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004), and *Rux v. Republic of Sudan*, 461 F.3d 461, 472 (4th Cir. 2006), on which Plaintiffs rely, predated *Burrage*; and in any event both courts affirmed that an FSIA plaintiff must establish proximate cause. *See Kilburn*, 376 F.3d at 1127-30; *Rux*, 461 F.3d at 473. For the reasons given in text, Plaintiffs can no more establish proximate causation than they can but-for causation.

politicians:  former Senator Bob Graham; former Secretary of the Navy John Lehman; and former Senator Robert Kerrey.  *See* Carter Exhs. 2-4.  None of these individuals has any relevant personal knowledge, as required by Federal Rule of Evidence 602.  Each acquired his knowledge by reviewing evidence gathered by either the 9/11 Commission, *see* Lehman Aff. ¶ 2; Kerrey Aff. ¶ 2; or the congressional Joint Inquiry into the events of 9/11, *see* Graham Aff. ¶ 2.

It is irrelevant whether those individuals (two of whom served on the 9/11 Commission and signed its report) now disagree in part with the findings of the 9/11 Commission and the FBI, as well as the recent reaffirmation of those findings by another independent commission.  *See* Dkt. No. 2928, at 12-13, 14-15, 16; *supra* p. 1 & n.1.  It is immaterial that Mr. Lehman and Senator Kerrey favor more investigation, *see* Lehman Aff. ¶ 8; Kerrey Aff. ¶ 9; or that Senator Graham believes some of Plaintiffs' allegations, *see* Graham Aff. ¶¶ 7-9.  Their speculation based on second- or third-hand analysis of the work of other investigators is not evidence.

**2.     The Moussaoui Statements.**  Plaintiffs sought several delays in briefing to obtain allegedly new evidence from Zacarias Moussaoui.  They promised that evidence would be "not only relevant, but critical."  Dkt. No. 2909, at 2.  They have not delivered on that promise.

We assume (for argument's sake) that Moussaoui could be brought to this Court to repeat what he told Plaintiffs' counsel during ex parte sessions at the federal prison in Colorado where he is serving a life sentence.[22]  This Court would have many reasons to reject his tangled, self-contradictory tale.  Those would include his previous statements that his testimony about involvement in the September 11 attacks had been a "complete fabrication"[23] and that he

---

[22] Otherwise, his statements would be inadmissible hearsay because the Kingdom and the SHC had no "opportunity" for " cross-. . .examination."  Fed. R. Evid. 804(b)(1)(B).

[23] Aff. of Zacarias Moussaoui ¶ 13, attached to Def.'s Mot. To Withdraw Guilty Plea, *United States v. Moussaoui*, No. 1:01-cr-455 (E.D. Va. filed May 8, 2006) (Dkt. No. 1857).

considered it "okay to lie in court as part of jihad,"[24] as well as evidence of his mental illness.[25]

The Court can be spared the burden and spectacle of such a proceeding.  Even if (again for argument's sake) Moussaoui's statements were true, they would be immaterial.  He says that in Afghanistan, in or around 1998, as part of a group that did not yet call itself al Qaeda,[26] he made a computerized list of alleged "donors" to bin Laden.  Carter Exh. 5, at 7-11.  He received some information for the list orally from other members of the group, *see id.* at 9:25-10:1, and some from documents that he needed help to interpret.[27]  He claims the list included the SHC and certain members of the Kingdom's royal family (though not the Kingdom itself).  *See id*. at 12:1-4.  Nevertheless, he does not claim to know the dates or purposes of any alleged donations; he cannot link any to the 9/11 attacks, of which he admittedly has no personal knowledge; and, dispositively, he never suggests that any alleged donation occurred in the United States.[28]

3.      **The Kohlmann Affirmation.**  Plaintiffs rely on an affirmation by Evan Francois Kohlmann, a self-styled "International Terrorism Consultant" who has written a book about al Qaeda and worked as a part-time analyst for NBC News.  Carter Exh. 9, at 1.  Plaintiffs seek to use his testimony to contend that various Islamic charities were legal alter egos of the Kingdom.

---

[24] Trial Tr. 2382:11-24, *Moussaoui* (Mar. 27, 2006).

[25] Addendum to Evaluation of Adjudicative Competence 1-2, attached as Exh. C to Standby Counsel's Memorandum Regarding Rule 11 Considerations, *Moussaoui* (July 24, 2002) (Dkt. No. 356) (under seal) ("paranoia," "thought disorder," and "persecutory and grandiose delusions").

[26] *See* Carter Exh. 5, at 7:22-25 (stating that it was then called "Group bin Laden").

[27] *See id.* at 10:1-3 ("[S]ome of the document[s] were in Arabic, so I would ask them to – to tell me what does that mean exactly.").

[28] Moussaoui also contends that he carried letters between bin Laden and members of the Saudi Royal family in 1998.  *See* Carter Exh. 7, at 23:8-25:17.  Moussaoui denies knowing the contents of those alleged letters, *see id.* at 27:14-19; his statements about them are meaningless.  Finally, he conjures up a spurious plot to shoot down Air Force One, again in 1998, involving an individual who purportedly worked in the Saudi Embassy in Washington, D.C.  *See* Carter Exh. 8, at 9:9-21.  Even Moussaoui admits that no such plot was ever "put into action," *id.* at 10:10, and that he never met with the other individual in the United States, *id.* at 12:14-19.

Kohlmann, however, does not claim to be an expert in Saudi law or about Saudi charitable institutions, and gives no example where he has written or testified on such matters in the past. Further, Kohlmann's affirmation contains practically no analysis; it merely quotes and characterizes hearsay sources, followed by generalized conclusions.  Before an expert can use hearsay, the proponent of his testimony must show that "experts in the particular field" would "reasonably rely," Fed. R. Evid. 703, on such sources.  That is not so here, and Plaintiffs make no attempt to show otherwise.  Also, the Second Circuit has disapproved "'call[ing] an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.'"  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (citation omitted), *cert. dismissed*, 135 S. Ct. 42 (2014); *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (expert violates Rule 703 by "'repeating hearsay evidence without applying any expertise whatsoever'") (citation omitted).  Kohlmann's testimony has previously been rejected for this reason,[29] and should be again here.

4.    **The Remaining Carter Exhibits.**  The remaining Carter exhibits include:

(a) the Kingdom's Basic Law, royal decrees, and speeches and newspaper articles concerning the importance of the Islamic religion to the Kingdom and its support of charitable activities abroad, Carter Exhs. 10-16;

(b) an unauthenticated document that purports to be a "Matrix of Threat Indicators" used in assessing detainees at Guantanamo Bay, which mentions the SHC, Carter Exh. 17;

(c) a declaration from a former member of al Qaeda that he received assistance from the SHC in Bosnia in 1994 or 1995, before he was imprisoned in 1997, Carter Exh. 18;

(d) a report of a German prosecutor alleging that in 1993 and 1994 the SHC transferred $28.5

---

[29] *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 446 (E.D.N.Y. 2013) (excluding parts of Kohlmann's report that were "nothing more than a recitation of secondary evidence" as to which he "ma[d]e no attempt to bring his expertise to bear"); *United States v. Amawi*, 541 F. Supp. 2d 945, 955 (N.D. Ohio 2008) (excluding his testimony about terrorist recruitment materials because the jury could "view [any admissible] materials" for itself), *aff'd*, 695 F.3d 457 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1474 (2013).

million to an organization called the Third World Relief Agency, Carter Exh. 19, which the 9/11 Report mentions in one sentence as having been linked to Osama bin Laden at an unspecified time, *see* 9/11 Report 58;

(e) an audit, or minutes for an audit, of the SHC's books in Sarajevo that does not mention terrorism, but that alleged deficiencies in the SHC's accounting, Carter Exh. 20;

(f) a radio interview of two U.S. senators in which they urge the Kingdom to do more to stop funds from flowing to terrorist groups, Carter Exh. 21;

(g) an op-ed from October 2001 that speculates without basis whether the Kingdom had advance knowledge of the 9/11 attacks and then concludes: "[t]he current view among Saudi-watchers is probably not," Carter Exh. 22; and

(h) a web page about a press conference from the Kingdom's Embassy describing increased cooperation with the United States in cutting off funds to terrorist groups, Carter Exh. 23.

None of these materials is evidence against the Kingdom or the SHC. All are plainly immaterial.

### B.    The Index Exhibits Are Inadmissible and Immaterial

Plaintiffs have also submitted 273 documents (more than 4,000 pages) they inaccurately call "Evidence Supporting [their] Averment." Exhibit A to this Reply sets forth which of the following eight points apply to which documents.[30]

1.    **Unsworn Hearsay.** 219 (80%) of the documents are unsworn hearsay such as newspaper articles, web pages, and blog posts. Courts do not consider such material in Rule 56 proceedings. *See*, *e.g.*, *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) ("Newspaper articles offered for the truth of the matter asserted are inadmissible hearsay."), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). Similarly inadmissible are documents purportedly from various government agencies, many of which are heavily redacted.

2.    **Hearsay Without Cross-Examination.** 38 (14%) of the documents are hearsay statements made under oath but without cross-examination, and so inadmissible. *See* Fed. R. Evid. 804(b)(1)(B); *supra* p. 14 n.22. Plaintiffs also have not shown that any of the declarants

---

[30] The percentages listed above add up to well over 100% because many (indeed, nearly all) of Plaintiffs' documents have more than one of the listed flaws.

could be available for hearing or trial.[31]

**3.    Hearsay Within Hearsay.**  196 (72%) of the documents are statements that not only are hearsay but also rely on hearsay sources – often anonymous ones – for key propositions. Examples include news articles and heavily redacted FBI memoranda.  "Double hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule." *Agricultural Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 n.3 (S.D.N.Y. 2002).

**4.    Lack of Personal Knowledge.**  214 (78%) of the documents are statements without foundation in personal knowledge, inadmissible under Rule 602.  *See supra* pp. 3-4.

**5.    Lack of Authentication.**  74 (27%) of the documents are attributed to third parties based on bare assertions by Plaintiffs' counsel about what the documents are and what they mean.  An example is the so-called "Golden Chain," which Plaintiffs assert "identif[ies] the principal financiers of al Qaeda."  Both Judge Casey and this Court have properly rejected as unfounded Plaintiffs' attempts to rely on the Golden Chain.[32]

**6.    Preliminary Investigative Stages.** 104 (38%) of the documents concern preliminary stages of an investigation or proceeding – such as speculation by unnamed FBI agents or reports of arrests.  Such documents are immaterial even on an ordinary motion to dismiss, *see* Dkt. No. 2928, at 16 (citing *In re Platinum & Palladium Commodities Litig.*, 828 F.

---

[31] *See Chamberlin v. Principi*, No. 02-cv-8357 (NRB), 2005 WL 1963942, at *10 (S.D.N.Y. Aug. 16, 2005) ("When an affidavit itself is not admissible, then 'an implicit or explicit showing that the affiant is prepared to testify in a manner consistent with [the] affidavit is required to oppose summary judgment.'") (citation omitted; alteration in original), *aff'd*, 247 F. App'x 251 (2d Cir. 2007).

[32] *See Terrorist Attacks*, 349 F. Supp. 2d at 817 (Casey, J.) ("[W]ith no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters."); *Terrorist Attacks*, 718 F. Supp. 2d at 482 (Daniels, J.) (document does not support any "reasonable inference of [a] temporal, geographical or causal connection, or proximity to the 9/11 attacks").

Supp. 2d 588, 593 (S.D.N.Y. 2011)), and certainly are not the evidence Plaintiffs need here.

7.     **Events Outside the United States.**  178 (65%) of Plaintiffs' 273 documents relate solely to events that allegedly occurred outside the territory of the United States.  Those alleged events are immaterial under the entire-tort rule.  *See supra* p. 5 & n.4.  Notably, *every* document that mentions the SHC falls into this category – consistent with Plaintiffs' repeated failure to allege any tortious act by the SHC within the United States.

8.     **Allegations of Indirect Funding.**  194 (70%) of the documents relate solely to alleged *indirect* funding of terrorist groups – allegations that the Kingdom "funded . . . those who funded . . . those who carried out the September 11th attacks."  *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 20 (D.D.C. 2003).  Examples include documents concerning the Kingdom's or its nationals' support for various Islamic charities; or concerning transfers of funds from the charities to terrorist organizations.  Plaintiffs' attempt to hold the Kingdom liable for funding charitable organizations or for failing to police alleged leaks of funding from those organizations to terrorists is barred by the discretionary-function exception.  *See supra* pp. 11-12.

## IV.     Jurisdictional Discovery Has Been Waived Twice and Is Unjustified

Contrary to Plaintiffs' apparent belief (at 8-9), jurisdictional discovery under the FSIA is not available to them automatically or as a matter of right.  Instead, "in the FSIA context, 'discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.'"  *EM Ltd.*, 473 F.3d at 486 (quoting *First City, Texas– Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)).  The exercise of this Court's discretion should, moreover, be part of a "delicate balancing" process that takes into account a "'sovereign's . . . legitimate claim to immunity from discovery.'"  *Rafidain Bank*, 150 F.3d at 176 (quoting *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992)); *Freund v. Republic of France*, 592 F. Supp. 2d 540, 564 (S.D.N.Y. 2008) (denying discovery based in part

on "[a]ppropriate deference to principles of international comity"), *aff'd*, 391 F. App'x 939 (2d Cir. 2010).  Plaintiffs themselves admit (at 9 n.10) that "discovery should be limited to disputed facts the Court deems material to the FSIA analysis."

Accordingly, to properly request discovery, Plaintiffs must – at a minimum – identify "specific facts" into which they will inquire, *EM Ltd*., 473 F.3d at 486, so that this Court may conduct the appropriate discretionary balancing.  They failed to do this before Judge Casey, *see* Dkt. No. 2894, at 22-23 & n.14, and likewise fail to do it in their present Opposition.  Instead, they argue (at 9 n.10) that they should receive "discovery as to any fact the Court deems to be in dispute and material to the FSIA analysis," and assert without citation that at some point they made a similar request to Judge Casey.  Plaintiffs' request is an inappropriate attempt to burden this Court with sifting through their voluminous filings to find allegations that might warrant inquiry.  This Court should find that they have now *twice* waived jurisdictional discovery.

Even if Plaintiffs had made a more appropriate request for discovery, it would do them no good.  There is no basis for further investigation into the facts of September 11, which have been the subject of an extraordinarily thorough investigation across multiple branches of government. The individuals whom Plaintiffs baselessly accuse of complicity, such as Al Bayoumi and Al Thumairy, were all interviewed multiple times, and the Kingdom cooperated in making such witnesses available to the 9/11 Commission and to the FBI.  Plaintiffs' suggestion that, more than 10 years later, they could find new and different evidence is implausible – especially after a recent review found "no new evidence to date that would change the 9/11 Commission's findings regarding responsibility for the 9/11 attacks."  9/11 Review Report 117.

## CONCLUSION

The motion to dismiss should be granted.

Respectfully submitted,

/s/ Michael K. Kellogg

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER
  & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)

*Attorneys for the Saudi High Commission
for Relief of Bosnia & Herzegovina*

April 10, 2015

Michael K. Kellogg (MK4579)
Mark C. Hansen (MH0359)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900
(202) 326-7999 (fax)

*Attorneys for the Kingdom of Saudi Arabia*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 10th day of April 2015, I caused copies of the foregoing document to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/ Michael K. Kellogg
Michael K. Kellogg