F5DVTERC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  TERRORIST ATTACKS
ON SEPTEMBER 11, 2001,                  03 MDL 1570 (GBD)(FM)

------------------------------x

                                        New York, N.Y.
                                        May 13, 2015
                                        10:15 a.m.

Before:

                    HON. FRANK MAAS,

                                        Magistrate Judge



                        APPEARANCES


For Plaintiffs:

KREINDLER & KREINDLER
BY:   JAMES P. KREINDLER
      ANDREW J. MALONEY

ANDERSON KILL
BY:   JERRY S. GOLDMAN
      BRUCE STRONG

MOTLEY RICE
BY:   ROBERT T. HAEFELE

COZEN O'CONNOR
BY:   SEAN P. CARTER

F5DVTERC

1                            APPEARANCES (continued)

2

       For Defendants:

3

4      BERNABEI & WACHTEL
       BY:  ALAN R. KABAT
5
       SALERNO & ROTHSTEIN
6      BY:  PETER C. SALERNO
            AMY ROTHSTEIN
7
       LAW OFFICE OF OMAR T. MOHAMMEDI
8      BY:  OMAR T. MOHAMMEDI

9      MARTIN F. McMAHON & ASSOCIATES
       BY:  MARTIN F. McMAHON
10
       LAW OFFICES OF CHRISTOPHER MANNING
11     BY:  CHRISTOPHER MANNING

12     MOLO LAMKEN
       BY:  ROBERT K. KRY
13
       CLIFFORD CHANCE
14     BY:  STEVEN COTTREAU
            RONI E. BERGOFFEN
15
       LEWIS BAACH
16     BY:  AISHA E. HENRY
            WALEED NASSAR
17
       GOETZ & ECKLAND
18     BY:  FREDERICK J. GOETZ

19

20

21

22

23

24

25

F5DVTERC

```
 1              (Case called)

 2              THE COURT:  I know the attorneys' fees motion is

 3     pending, and I expect to have a decision within the next few

 4     weeks, if not sooner.

 5              There's the issue that Salerno & Rothstein has raised

 6     with respect to Yassin Abdullah Kadi.  And I guess the only

 7     thing left, Mr. Salerno, is the issue of the interrogatories;

 8     is that correct?

 9              MR. SALERNO:  That's correct, your Honor,

10     interrogatories 1 to 7 and to a limited extent that.

11              THE COURT:  I didn't hear the last part.

12              MR. SALERNO:  To a limited extent interrogatories 1

13     through 7 to the extent that they seek the identities of

14     persons with relevant knowledge.  We've had discussions with

15     the plaintiffs about that.  And they've agreed to answer them,

16     it's just a question of when, we don't have any idea of when.

17     These were served in September of 2013.

18              THE COURT:  Who's speaking for the plaintiffs?

19              MR. CARTER:  Your Honor, Sean Carter.  And I apologize

20     for not being there in person, but the train derailment

21     disrupted my travel plans this morning.

22              With regard to the interrogatories number 1 through 7,

23     as Mr. Salerno indicated, they seek identification of witnesses

24     with relevant knowledge.  As your Honor will recall, we had

25     discussions about the merit of serving interrogatories of that
```

F5DVTERC

1   nature very early on in the discovery process, and your Honor

2   ultimately concluded that those types of interrogatories

3   weren't a productive path for us to go down.  And in the

4   alternative what we ended up doing was to use the initial

5   disclosure process as a mechanism for the parties to identify

6   witnesses with relevant knowledge.

7           The defendants' executive committee, as your Honor is

8   aware, has proposed that a deadline be set for the parties to

9   refine and update those initial disclosures, identifying

10  witnesses with relevant knowledge.  And so our proposal is

11  simply that the individual requests made by Defendant Kadi to

12  have plaintiffs update their witness list for witnesses with

13  relevant knowledge to the claims against him be taken care of

14  through the omnibus updating of the initial disclosures.

15          THE COURT:  Mr. Salerno.

16          MR. SALERNO:  Up to a certain point, I guess

17  Mr. Carter is correct.  But our view is our interrogatories are

18  a little broader.

19          The 26(a) witness disclosures are witnesses on whom

20  parties intend to rely, and ours seek witnesses with relevant

21  knowledge.  And Mr. Carter has been using that language.  If he

22  really means that he's going to identify witnesses with

23  relevant knowledge beyond those on whom their side intends to

24  rely, we are getting a lot closer to, I think, an agreement.

25          THE COURT:  I thought one of the problems in the

F5DVTERC

1    earlier stage of the case was that the defendants took the view

2    that they've been given the kitchen sink.  And maybe when

3    Mr. Carter talks about refining the 26(a) disclosures, that

4    would cure that problem.

5         MR. SALERNO:  Well, I can't speak for the other

6    defendants and what they want or don't want.  Obviously on the

7    one hand I'm sure we'd all like a narrow view of the witnesses

8    that might be used, but in discovery we need as broad a view as

9    possible about who they think has relevant knowledge.

10        THE COURT:  I guess the first question, perhaps from

11   Mr. Carter, is when is the plaintiffs' executive committee

12   going to revise the 26(a)(3) disclosures?

13        MR. CARTER:  Your Honor, that was an issue that we

14   felt was bound up with the other deadline dates, including the

15   dates by which defendants would be completing their productions

16   and the dates by which we might have additional materials from

17   them as a result of motions to compel, because we obviously

18   want to scan through those documents on a comprehensive basis

19   before we identify the full universe of people we may call as

20   witnesses or rely upon in connection with the theories.

21        THE COURT:  The only letter that I received suggesting

22   that somebody had not completed -- as far as they were

23   concerned on the defense side -- their production was from Molo

24   Lamken with respect to Dallah Avco.  And pursuant to my order,

25   I assume that means that everybody else takes the position that

F5DVTERC

1   they're done with their production.  Maybe that's a

2   Polly-Ann-ish view of what's going on, but I thought that's, in

3   effect, what's been represented to the Court.

4           MR. KABAT:  That's correct, your Honor.

5           MR. HAEFELE:  Your Honor, this is Robert Haefele.

6           If I can address that issue just for one moment.

7           The concern I had with the language that your Honor

8   had put in the order was that, for example, if someone does not

9   send you a letter because they are not participating, because

10  they don't plan on participating, we would not know that based

11  on what your Honor's order was.

12          THE COURT:  Well, presumably if you've gotten no

13  documents from somebody, they are not participating.  Am I

14  missing something there?

15          MR. HAEFELE:  No, I don't think you are, your Honor.

16  But that's the problem, is that they may take the position

17  either that there are no documents, or they may take the

18  position that they aren't participating, so they are not, and

19  we just wouldn't know.  I think that's one of the things that

20  we had asked for, some acknowledgment from the defendants so we

21  would know one way or the other.

22          THE COURT:  Let's table that for the moment and go

23  back to Mr. Salerno's request.

24          MR. CARTER:  Your Honor, it's Sean Carter again.

25          THE COURT:  Yes.

F5DVTERC

1          MR. CARTER:  I think we are at a point where we can

2   set some dates for these further processes based on the

3   representations that had been made by the defendants.

4          By virtue of Dallah Avco's letter yesterday indicating

5   that it would be completing its production in the very near

6   future, we can retain an omnibus schedule for all defendants,

7   which is obviously something that the plaintiffs have felt to

8   be in the appropriate approach throughout.  All we want is that

9   the schedule is a reasonable schedule reflecting the scope of

10  the productions, the complexity of the review of those

11  materials, the potential that defendants may be ordered to make

12  additional productions in response to motions to compel, which

13  is something we think is very likely under the circumstances,

14  and that we be afforded enough time in this process to have

15  dialogues with the defendants so that we can resolve some of

16  these issues without motion practice.

17          THE COURT:  In principle, I'm certainly not opposed to

18  anything you've said.  And I suppose one way I could deal with

19  this is to set a date for the amended initial disclosures

20  pursuant to Rule 26, see whether that satisfies Mr. Salerno and

21  potentially other defendants' counsel, rather than dealing with

22  the issue of interrogatories 1 through 7 now.

23          Although I understand that the plaintiffs contend

24  that's somewhat bound up with document production, it seems to

25  me that the connection between the two is not as strong as

F5DVTERC

1   plaintiffs perhaps suggest.

2        So when are the plaintiffs in a position to provide

3   their amended or revised list of persons who are knowledgeable?

4        MR. CARTER:  Your Honor, it's Mr. Carter again.

5        Again, some of my colleagues may have a different

6   view, but I would expect, based on what we've been told to

7   expect from the defendants, that we could probably complete

8   those revisions by July 30th.

9        THE COURT:  Is there anybody on the defense side who

10  objects to that schedule?

11       I don't see anybody standing up to oppose that, so

12  July 30th it is.

13       And based on that, Mr. Salerno, I guess I'll table

14  discussion of your interrogatories 1 through 7.

15       MR. SALERNO:  Fair enough, your Honor.

16       I guess if we understand that the plaintiffs had

17  intended to respond to them, we may very well be satisfied by

18  that date, to the extent that they are not exactly coterminous

19  with the 26(a) disclosures.

20       THE COURT:  If it turns out that Yassin Kadi, for one,

21  is not satisfied, if I conclude that the interrogatories should

22  be answered or answered in part, plaintiffs' counsel should

23  expect that I would set a fairly short date for the completion

24  of the answers to the interrogatories.

25       Certainly what I said at one conference, as consistent

F5DVTERC

1    with what I've always said, which is I'm not a fan of

2    interrogatories, particularly in early stages.  Notwithstanding

3    where we are in terms of document production in a case filed in

4    2003, it's hard to say with a straight face that we're in the

5    early stage of the process.  So July 30th it is.

6              MR. COTTREAU:  Just one point of clarification on

7    what's going to be supplemented by July 30th.

8              If you'll remember, at the end of 2010 we got a list

9    of over 1,000 witnesses from the plaintiffs.  And then I think

10   in April of 2011 you ordered that they give us a Cliff's Notes

11   version, if you will, of folks that they intend to call to

12   testify or have the present ability to secure a declaration

13   from.

14             Is it the Cliff's Notes version that will be

15   supplemented by end of July or is it the longer 26(a)

16   disclosure?

17             THE COURT:  That's a fair question.

18             It seems to me it probably is the Cliff's Notes

19   version, and I'm not sure it's necessarily supplemented so much

20   as refined.  I don't know that the list should grow; perhaps it

21   should narrow.

22             Is that consistent with what you had in mind,

23   Mr. Carter?

24             MR. CARTER:  Your Honor, I think that is the list that

25   we would be refining.  In terms of the potential that it might

F5DVTERC

grow, I think it would principally grow by virtue of the

identification of witnesses we were unaware of in defendants'

documents.  So there may be some addition as a result of that.

It does seem, as your Honor hinted at the beginning,

that perhaps Mr. Salerno on behalf of Mr. Kadi is asking for

something different than other of the defendants had requested.

So I think we'd just like to be clear on what we're expected to

do with regard to the updating of the initial disclosures.

THE COURT:  Well, as to Yassin Abdullah Kadi, for the

moment, nothing different than for any of the other defendants.

But procedurally, that defendant, and perhaps a few others, are

in the relatively unique position of their cases having been

remanded for either discovery or further discovery.  And in

light of that, it may well be that as we move forward, I do

allow interrogatories of the sort that Salerno & Rothstein have

propounded.

MR. CARTER:  That's fine, your Honor.  Thank you.

THE COURT:  Anything else on that issue?

As I said, the only letter I received was from Dallah

Avco, which explained what additional documents it intends to

produce.  I'm not sure that the letter indicates when the

document production will be complete.  I guess it says by June;

is that correct?

MR. KRY:  We actually submitted an update to that

letter yesterday, which was the one that Mr. Carter referred

F5DVTERC

1      to.

2                  THE COURT:  Okay.

3                  MR. KRY:  And based on additional manpower that's been

4      assigned to this, as well as other factors, we now expect to

5      get through that production by around the end of the month.

6                  THE COURT:  Oh, terrific.

7                  And I take it, based on that, that at least for the

8      moment there are no particular issues with respect to Dallah

9      Avco from the plaintiffs' side; is that correct?

10                 MR. CARTER:  Your Honor, there was a motion that had

11     been filed a while ago through which the plaintiffs sought

12     clarification as to the scope of the search that was being

13     undertaken by Dallah Avco.

14                 Based on the objections that were lodged to the

15     individual requests and some of the conversations we had, it

16     was unclear to us which of the document requests were being

17     considered for purposes of the search.  And there was a concern

18     on our part that perhaps Dallah Avco was conducting a search

19     solely for the name Omar Al-Bayoumi, which is not something

20     that we thought to be appropriate based on the remand.

21                 We've already addressed that motion with your Honor,

22     but it just hasn't been ruled on.  So I flag it only for that

23     reason.

24                 THE COURT:  And I confess, I didn't really focus on

25     the motion because it sounded like it was being worked out.

F5DVTERC

1                  Let me ask Mr. Kry.

2                  MR. KRY:  That was our impression, as well, your

3        Honor.  If there are still any points that need clarification,

4        we are happy to meet and confer with Mr. Carter sometime.

5                  THE COURT:  Was the search as narrow as he fears it

6        might have been?

7                  MR. KRY:  I don't think so at all.  The Second Circuit

8        remanded the case based on a specific jurisdictional allegation

9        which related to the claim that our clients had provided some

10       sort of cover employment was the term the Court used to a

11       Mr. Omar Al-Bayoumi.

12                 And so we made clear throughout that the scope of our

13       search was all documents relating to Mr. Al-Bayoumi, and that's

14       involved review of something more than a million documents so

15       far.  So it's actually been a very broad search and that

16       subsumes a large number of the requests that they originally

17       propounded on us.

18                 On Docket No. 2896, page 3, we list the specific

19       requests that we think are wholly subsumed within that; that's

20       numbers 1 to 17, 24 to 30, 34, 36, 38 --

21                 THE COURT:  Wait.  Do those numbers more slowly.

22                 MR. KRY:  1 to 17, 24 to 30, 34, 36, 38, and 41 to 44.

23                 And those are all requests that ask for particular

24       categories of information relating to Mr. Al-Bayoumi, which we

25       view as fairly within what the Second Circuit was asking for.

F5DVTERC

1          For some of the other requests, they're really pretty

2     far afield.  For example, one of the requests is all documents

3     relating to the Kingdom of Saudi Arabia government.  That has

4     millions of documents for a government contractor.  And so to

5     the extent there are documents that relate to the kingdom and

6     Mr. Al-Bayoumi, those will get picked up in the search.  But

7     beyond that, we just think it is beyond the scope of

8     appropriate jurisdictional discovery.

9          So that was in our letter that we filed last

10     September.  And if there are any further points of

11     clarification, we are happy to meet and confer over those with

12     Mr. Carter, but I'm not sure there's a live issue for the Court

13     to resolve at this point.

14          THE COURT:  Mr. Carter.

15          MR. CARTER:  Your Honor, we can take that up with them

16     separately.  I think that we're at a point like they were where

17     we just disagree about the scope of the remand, and that we'll

18     likely just have to proceed either to work it out or to have

19     motion practice relating to that issue.

20          THE COURT:  Given that, why shouldn't I deny the

21     motion without prejudice to a renewed application?  It does

22     sound like it's narrower, if nothing else.

23          MR. CARTER:  That's fine, your Honor.

24          THE COURT:  Okay.

25          Then there was the issue of scheduling generally

F5DVTERC

1    beyond the July 30th date we just spoke about.

2                Is there anything else we should be taking up today?

3                MR. KABAT:  Regarding the briefing schedule for motion

4    to compel, we want to move forward with fact witness discovery

5    and expert discovery.  We would propose July 31st for motion to

6    compel to be filed.  And we had originally proposed a date I

7    think at the end of May.  And all the defendants are moving

8    forward with fact witness discovery.

9                Now the plaintiff essentially made two objections.

10               First of all, they object to the volume of documents

11   while the fact is that the plaintiff submitted voluminous

12   document requests; it sought information about dozens and

13   hundreds of individuals.  And the plaintiffs sought information

14   with respect to the surety defendants about every foreign

15   affiliate, every foreign branch office.  It's going to be

16   thousands of documents produced by many of these defendants.

17   And also plaintiffs complain that many of the documents require

18   translation.  Well, again, that's inevitable.  We sued foreign

19   defendants who have foreign offices in countries around the

20   world.

21               I want to say a few words about the pace of the

22   document production.

23               The defendants have produced approximately 622,000

24   pages of documents.  A third of those documents were produced

25   through 2013, a year and-a-half ago; two-thirds of those

F5DVTERC

1   documents, just over 400,000, were produced through last July

2   2014.  So only one-third of the document production was

3   produced from August through December of last year.  And the

4   plaintiff complains that some documents are being produced in

5   this calendar year.  When you look at the numbers, that's less

6   than one percent; in fact, it's one-fourth of one percent, and

7   it primarily comes from two defendants:  Dallah Avco and Al

8   Haramain.  We did a supplemental production as to that

9   defendant.

10          And we have repeatedly informed the plaintiffs that we

11   are willing to allow additional time for motion to compel as to

12   the productions that were made in this calendar year to give

13   the plaintiff additional time to review those.  We are only

14   talking about several thousand pages that are being produced in

15   this calendar year.

16          But I speak for all the defendants in saying we want

17   to move the case forward.  And the way to make that happen is

18   to have a deadline for motion to compel so we get the document

19   production completely out of the way, and then we can move

20   forward with fact witness discovery.

21          Thank you.

22          MR. KREINDLER:  Your Honor, Jim Kreindler.

23          Just a word.

24          This dispute is really over about a two-month period,

25   the difference between the end of July and the end of

F5DVTERC

1    September.

2            No one on the face of the earth is more anxious to see

3    this case tried or settled than me and my colleagues.  It's

4    self-evident.

5            THE COURT:  In the elevator on the way up I was

6    thinking that this is probably the only case I have where I've

7    never used the word "settlement."

8            MR. KREINDLER:  Well, maybe it's time, your Honor.

9            But there will be a resolution.

10           When I heard this schedule, I thought our proposal is

11   not enough time.  Frankly, as you know, this case is a

12   marathon; it's not a sprint.  And when you get the documents,

13   not only do they have to be translated and understood, but then

14   you've got to compare them to documents produced by all the

15   other defendants.  And only then do you get a full

16   understanding of what's there, what hasn't been produced, and

17   what may be there that's needed in the supplemental request.

18           And my colleagues thought that they could live with

19   what we think is a very fast-paced schedule to get a lot of

20   work done by the end of September.  We wouldn't propose it

21   unless realistically we need it; and that's teams of people

22   working all the time to master it and get the documents

23   digested and understood so we're ready to make meaningful

24   motions.  The difference of two months, after struggling with

25   this case for 13 years, is time we need to do it right.

F5DVTERC

1          MR. CARTER:  Your Honor, Sean Carter.  If I could just

2     piggyback on what Mr. Kreindler just said.

3          We've obviously been very patient and accommodating of

4     the defendants in their many requests for extensions.  And I

5     think that the numerous extension requests that they made to

6     complete their document productions reflect the complexity of

7     the materials at issue.

8          And as Mr. Kreindler indicated, it's not simply a

9     matter of translating the documents, it's also a matter of

10     having appropriate subject matter experts analyze them.  There

11     are a variety of disciplines required in order to do that,

12     because you not only have documents where individual names and

13     relationships are significant, but you also have financial

14     materials that require a completely different type of analysis.

15     And I can assure you that we've had teams of people looking at

16     these diligently.

17          The manner in which the documents were produced has

18     complicated this process.  It is not as though, for instance,

19     we've received a production that includes all financial records

20     for a defendant from all of its offices, organized by office

21     and by year; rather, we've received productions that include

22     just a whole range of materials with no really internal logic,

23     and that has complicated the process.

24          But this is a reasonable schedule.  And we do

25     anticipate that the motion practice will be staggered, as I

F5DVTERC

think your Honor has expressed a preference for in the past.  I

know, as an example, that Mr. Cottreau on behalf of his client,

Dubai Islamic Bank, has expressed frustration about the

timeline for proceedings since his client feels that it's

completed its production sometime ago.  We could, as an

example, in that case, agree to have a motion filed by an

earlier date.  I think June 30th would be fine with regard to

that particular defendant.

          But, as a general matter, in order to present these

issues, have meet-and-confers, and conclude the process, the

deadline we propose is relatively aggressive.

          THE COURT:  The May deadline was the most tempting,

but that's come and gone.

          I do want to ensure that built into this process is

some time -- and perhaps it's already been done, but I want to

know that when motions are filed, there have been, prior to the

filing of the motion, as our rules require, a meet-and-confer

to see whether the dispute can be narrowed.

          So I am going to accept the plaintiffs' September 30

deadline.  But I want counsel to confer.  I'm hardened by what

Mr. Carter said about plaintiffs' ability to be able to move

with respect to at least one, and perhaps others, of the

defendants' earlier date.  And so I would ask that within two

weeks you submit a schedule to me, an agreed schedule, for

anybody as to whom the motion can be filed earlier.  And

F5DVTERC

1    hopefully it will be more than one defendant.

2              I'm aware that the manner in which the records were

3    produced and how logical the production may seem or how

4    organized has varied considerably from defendant to defendant.

5    And I'm mindful, for example, of what Dallah Avco sent to show

6    that it was basically a shambles of a store room that they were

7    starting to look through.

8              So for those reasons I will allow the date that the

9    plaintiffs want and hope that the schedule will be front-loaded

10   to the extent it can be.

11             And obviously I've just set a date for the filing of

12   the motions.  I guess we have an omnibus order that controls

13   opposition and reply papers; is that correct?

14             MR. KABAT:  Yes.

15             THE COURT:  So I don't need to deal with that.

16             What else should we take up today?

17             MR. CARTER:  Your Honor, it's Mr. Carter again.  There

18   were just a few other issues.

19             Your Honor has included language in the order relating

20   to this conference about confidentiality designations.  And I

21   think we just wanted to let the Court know that we haven't

22   received communications from several of the defendants

23   withdrawing confidentiality designations as to certain of the

24   documents.  There may be some remaining issues, but at this

25   point we'll just raise those by letter as appropriate.

F5DVTERC

1          THE COURT:  Okay.

2          Anything else on the plaintiffs' side?

3          MR. CARTER:  The last issue, your Honor, that we had

4    raised was we're still a bit troubled by the timing of the

5    production by Al Haramain USA of the collection of documents

6    relating to its efforts to persuade the United Nations and the

7    U.S. to lift the sanctions that have been imposed upon Al

8    Haramain USA for the stated purpose of allowing the remaining

9    director to dissolve the entity and disburse its remaining

10   assets.

11         I think the timing of the production troubles us based

12   on the track record with the defendant, along with the fact

13   that the Court is presently in the process of considering a fee

14   application that would result in the imposition of monetary

15   sanctions.

16         Obviously the disbursement of the remaining assets

17   would remove from our reach assets that we might otherwise

18   pursue in satisfaction of either a fee award or with respect to

19   the default judgment that's previously been issued as to the

20   parent organization in Saudi Arabia.

21         THE COURT:  Presumably the default judgment would

22   dwarf anything that you might gain by way of legal fees.

23         MR. KABAT:  Your Honor, may I briefly speak to that?

24         THE COURT:  Please.

25         MR. KABAT:  We represent all the defendants who

F5DVTERC

1    plaintiff alleged have not produced anything.

2          One group of them, the current and former officers of

3    the Muslim World League and the International Islamic Relief

4    Organization do not have personal control and custody of the

5    MWL or the IIRO documents.  Instead, what has happened, the

6    Muslim World League and the IIRO have produced some 345,000

7    pages of documents which essentially are the documents that

8    plaintiff requested from the individual officers of those

9    entities.  So it would be pointless for our firm to have to go

10   through the 345,000 documents that the other firm has produced

11   and say, Okay, this one is responsive for Dr. Al-Turki, this

12   one is responsive for Dr. Naseef.

13         THE COURT:  All of that is interesting, but I'm not

14   sure it responds to the point that Mr. Carter was making with

15   respect to Al Haramain.  He doesn't want to see money walk out

16   the door, and I'm not sure --

17         MR. KABAT:  I'm sorry, your Honor.  I didn't hear

18   Mr. Carter say -- I know he talked about the other group of

19   defendants they were complaining about.

20         THE COURT:  Let me revert back to Mr. Carter.

21         Tell us again what it is you're seeking and why.

22         MR. CARTER:  Your Honor, I take it at this point we

23   are simply requesting an explanation as to why this particular

24   groups of Al Haramain USA documents that relates specifically

25   to efforts to obtain the removal of sanctions against it were

F5DVTERC

 1    not produced in a timely manner and were instead held and

 2    produced even after the document production deadline.

 3            THE COURT:  But you did receive those documents now?

 4            MR. CARTER:  We did receive them; but your Honor had

 5    previously dealt with a range of motions about Al Haramain not

 6    producing documents in a timely manner.  So we've been down

 7    this road before.

 8            And given the subject matter of the documents that

 9    were produced belatedly, we unfortunately could see a reason

10    why Al Haramain USA might have an incentive not to have

11    produced this earlier, because, candidly, it likely would have

12    resulted in efforts on our part to reach out to the U.N. and

13    the U.S. to explain that the removal of sanctions could have

14    adverse consequences to the rights and litigation interests of

15    the 9/11 victims.

16            MR. KABAT:  I think there are two separate issues.

17            First of all, we did put in some documents they teared

18    up.  We then went back and looked at our earlier production and

19    realized we had not supplemented that to the court filings in

20    the *Organ* case.

21            And the other issue that they have raised is that the

22    two individual officers of Al Haramain and Organ, what we did

23    was all the documents that Al Haramain produced are essentially

24    those that the individual officers would have produced if they

25    had had access to those documents.  So that's why the two

F5DVTERC

1  individual officers are not producing anything further

2  themselves beyond what Al Haramain itself has produced.  So as

3  far as we're concerned, there is really no further issue as to

4  the Al Haramain defendants.

5          THE COURT:  Were you able to hear that?

6          MR. CARTER:  I was able to hear it, your Honor, but

7  unfortunately I still don't think we have an answer to the

8  specific question as to why documents, some of which involve

9  communication from Mr. Kabat's firm relating to the delisting

10 request, weren't produced in a timely manner.

11         MR. KABAT:  I'm sorry, I didn't quite get that.

12         THE COURT:  He's asking why in particular documents

13 relating to the effort to have Al Haramain delisted were not

14 produced timely, fearing that it may prejudice the plaintiffs'

15 ability to say that Al Haramain should not be de-designated

16 because that might enable Al Haramain to disburse its remaining

17 funds to the prejudice of the plaintiffs.

18         MR. KABAT:  Al Haramain has been defunct for almost 12

19 years.  It did not have access to the funds OFAC has, the

20 Office of --

21         THE COURT:  Let me just interrupt you for a second.

22         How much money are we talking about roughly?

23         MR. KABAT:  I believe it's less than a quarter

24 million.

25         THE COURT:  Okay.

F5DVTERC

1          MR. KABAT:  Also, with the caveat that we have several

2     times asked OFAC for an accounting, we've never gotten one.

3          But we do not have control of those funds; OFAC does.

4          THE COURT:  I understand your concern, Mr. Carter.

5     But since you have the documents now, and presumably have your

6     remedies with respect to the U.S. Government, I'm not sure what

7     else I can usefully pursue with Mr. Kabat with respect to this

8     issue.

9          MR. CARTER:  Your Honor, it may be an issue we wish to

10    raise with reference to some of the prior court orders about

11    the timeliness of productions and what your Honor expected of

12    them.  So we're content to defer it.

13         THE COURT:  Okay.

14         Anything else on the plaintiffs' side?

15         MR. CARTER:  No, your Honor.

16         MR. GOLDMAN:  No, your Honor.

17         MR. MALONEY:  No, your Honor.

18         THE COURT:  Anything on the defendants' side?

19         MR. SALERNO:  Your Honor, just a matter that's

20    completely nonsubstantive.  But I was wondering if your Honor

21    would consider entering a blanket order in this case allowing

22    counsel to bring tablets and laptops into these hearings.  It

23    would be a great convenience, and the rules are a little

24    cumbersome.

25         THE COURT:  I would consider it.  The only problem is

F5DVTERC

1    I'm not allowed to do it, I understand.  It has to be

2    date-specific.

3            MR. SALERNO:  Okay.

4            THE COURT:  And device-specific, worse yet.

5            The day will come when we'll abandon these procedures,

6    but it may not be before this case ends.

7            MR. HAEFELE:  Your Honor, this is Robert Haefele.

8            I just raise this in response to a question just

9    asked.

10           Would it be offensive to you if in each of our letters

11   we made that request, and then an order is entered per

12   conference?

13           THE COURT:  If you are asking me whether if you sent

14   me a form that said, We want the following 64 cell phones to be

15   admitted as part of the, in effect, agenda for the next

16   conference, no, that wouldn't offend me at all.  The only thing

17   that will offend me is if cell phones start ringing left and

18   right at the next conference.

19           MR. HAEFELE:  I think we all understand.  We're still

20   obligated to follow the rules.

21           THE COURT:  Should I set a date for a next conference?

22           MR. KABAT:  Your Honor, Judge Daniels did set a date

23   of July 30th for his end; so perhaps you can set a date on the

24   same day.

25           THE COURT:  Let me see.  I think that was not on my

F5DVTERC

1   calendar, but recently was added.

2            MR. KABAT:  Judge Daniels set it for 11 a.m.

3            THE COURT:  Why don't I just say if need be; although

4   it doesn't sound like on the schedule we just set up that much

5   of anything will happen between now and then; that if there's

6   something we need to discuss, we can do it after Judge Daniels'

7   conference or in lieu of it if it gets put off again.  Okay?

8            MR. KREINDLER:  Good.

9            MR. GOLDMAN:  Thank you, your Honor.

10           THE COURT:  Anything else?

11           Okay.  Thank you, all.

12                              *   *   *

13

14

15

16

17

18

19

20

21

22

23

24

25