# Exhibit N

# UNCLASSIFIED

**Department of Defense**
**Office for the Administrative Review of the Detention of Enemy**
**Combatants at U.S. Naval Base Guantanamo Bay, Cuba**

28 March 2007

TO:        Personal Representative

FROM:      OIC, CSRT (28 Mar 07)

SUBJECT:   SUMMARY OF EVIDENCE FOR COMBATANT STATUS REVIEW
           TRIBUNAL – AL BALUCHI, AMMAR

1.  Under the provisions of the Deputy Secretary of Defense Memorandum, dated 14 July 2006, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba*, a Tribunal has been appointed to determine if the detainee is an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The following facts support the determination that the detainee is an enemy combatant.

    a.  On the morning of 11 September 2001, four airliners traveling over the United States were hijacked. The flights hijacked were: American Airlines Flight 11, United Airlines Flight 175, American Airlines Flight 77, and United Airlines Flight 93.  At approximately 8:46 a.m., American Airlines Flight 11 crashed into the North Tower of the World Trade Center, resulting in the collapse of the tower at approximately 10:25 a.m.  At approximately 9:05 a.m., United Airlines Flight 175 crashed into the South Tower of the World Trade Center, resulting in the collapse of the tower at approximately 9:55 a.m.  At approximately 9:37 a.m., American Airlines Flight 77 crashed into the southwest side of the Pentagon in Arlington, Virginia.  At approximately 10:03 a.m., United Airlines Flight 93 crashed in Stoney Creek Township, Pennsylvania.  These crashes and subsequent damage to the World Trade Center and the Pentagon resulted in the deaths of 2,972 persons in New York, Virginia, and Pennsylvania.

    b.  On or about 10 October 1998, the detainee opened a bank account at the Emirates Bank International.  The detainee provided a Pakistani passport with number *E911562* as identification. The detainee's passport listed the name of the bearer as "Mr. Ali, son of  Mr. Abdul Aziz Ali," (*Mr. Ali*).  The detainee provided, "MEC Ltd. Post Office Box 16958, Jebel Ali, Dubai," as his address.

    c.  On or about 8 August 2000, the detainee opened a bank account at the Dubai Islamic Bank.  The detainee provided a Pakistani passport with number *E911562* as identification.  The

R-1
Page 1 of 3

# UNCLASSIFIED

# UNCLASSIFIED

SUBJECT:   SUMMARY OF EVIDENCE FOR COMBATANT STATUS REVIEW
TRIBUNAL –AL BALUCHI, AMMAR

detainee's passport listed the name of the bearer as "Mr. Ali, son of  Mr. Abdul Aziz Ali," (*Mr. Ali*).  The account documents listed the detainee's phone number as *0506745651*.

d.  On or about 18 April 2000, a person named *Ali*, sent 5000 United States dollars from the Wall Street Exchange Centre in Dubai, United Arab Emirates to Adel Rafeea.  *Ali* listed the Post Office Box and phone number utilized by *the detainee*.  The identification card of the sender of the money, photocopied by the Wall Street Exchange Centre, further identified the sender as *Mr. Ali,* a computer technician of Pakistani nationality with the passport number *E911562*.

e.  On or about 4 June 2000, "9/11 hijacker" Mohammed Atta purchased a Voicestream Wireless pre-paid telephone in Manhattan, New York.  The phone was activated on 4 June 2000 and de-activated on 11 July 2000.

f.  Between 28 and 30 June 2000, "9/11 hijacker" Mohammed Atta's Voicestream cell phone used a calling card to make approximately sixteen calls to the detainee's phone number in the United Arab Emirates.

g.  On 29 June 2000, "9/11 hijacker" Marwan Al-Shehhi picked up a Western Union wire transfer in the amount of 5,000 United States dollars at the Western Union facility located at 1440 Broadway, New York, New York.  The funds were sent by "Isam Mansar" from the U.A.E. Exchange Centre, Bur Dubai, United Arab Emirates on 29 June 2000.

h.  On 18 July 2000, "Isam Mansur" sent 10,000 United States dollars via a bank transfer from U.A.E. Exchange Centre, Bur Dubai, United Arab Emirates to "9/11 hijacker" Marwan Al-Shehhi's Suntrust Bank, Florida, account (a joint account with "9/11 hijacker" Mohammed Atta). The funds posted to the Suntrust account on 19 July 2000 less a 15 United States dollar fee. Isam Mansur listed the same Post Office box number associated with the detainee.

i.  On 5 August 2000, "Isam Mansour" sent 9,500 United States dollars via a bank to bank transfer from the U.A.E. Exchange Centre, Bur Dubai, United Arab Emirates to "9/11 hijacker" Marwan Al-Shehhi's Suntrust Bank, Florida, account (a joint account with "9/11 hijacker" Mohamed Atta).  The funds posted to the Suntrust account on 7 August 2000 less a 15 United States dollar fee.  "Isam Mansour" listed the same Post Office box number associated with the detainee.

j.  On 29 August 2000, *Mr. Ali* sent 20,000 United States dollars via bank to bank transfer from U.A.E. Exchange Centre, Bur Dubai, United Arab Emirates, to "9/11 hijacker" Marwan Al-Shehhi's Suntrust Bank, Florida, account (a joint account with "9/11 hijacker" Mohammed Atta). The funds posted to the Suntrust account on 30 August 2000 less a 15 United States dollar fee. *Mr. Ali* listed a phone number one digit off of the phone number listed by "Isam Mansour" on 5 August 2000.

# UNCLASSIFIED

# UNCLASSIFIED

SUBJECT:    SUMMARY OF EVIDENCE FOR COMBATANT STATUS REVIEW
                   TRIBUNAL –AL BALUCHI, AMMAR

k.  On 17 September 2000, "Hani (Fawaz Trading)" sent 70,000 United States dollars via a bank to bank transfer from the U.A.E. Exchange Centre, Bur Dubai, United Arab Emirates to Marwan Al-Shehhi's Suntrust Bank, Florida account (a joint account with "9/11 hijacker" Mohammed Atta).  The funds posted to the Suntrust account on 18 September 2000 less a 15 United States dollar fee.  "Hani (Fawaz Trading)" listed the same phone number that "*Mr. Ali*" listed on the 29 August 2000 transfer documents.

l.  During an August 2002 Federal Bureau of Investigation interview, Abdul Samad Din Mohammed, told the Federal Bureau of Investigation that the detainee was in constant contact with Khalid Sheikh Mohammed, the detainee's uncle.  Abdul Samad Din Mohammed also stated the detainee would constantly receive Arab visitors from Pakistan at the Airport.

m.  During an August 2002 interview, Abdul Samad Din Mohammed (Mohammed), stated the detainee left the United Arab Emirates on 9 September 2001 or 10 September 2001.  The detainee did not have all his belongings together, but insisted on leaving.  Mohammed asked the detainee why he was in such a rush to leave, but did not receive a satisfactory answer.

n.  The detainee discussed the smuggling of explosives into the United States through an import and export textile company in New York, with another individual.

o.  The detainee was arrested in possession of a compact disk which contained a letter addressed to Usama bin Laden.  The disk also contained two photographic images of the World Trade Center when United Airlines flight 175 crashed into the south tower.

p.  The detainee was captured on 29 April 2003 in Karachi, Pakistan, as he waited for the delivery of explosives for an alleged plot against the United States consulate in Karachi, Pakistan.  The detainee was in possession of a perfume spray bottle which contained a low concentration of cyanide when he was arrested.

q.  The detainee's pocket litter included a letter from unidentified Saudi Arabian scholars to Usama bin Ladin.  The letter discussed al Qaida's strategy in the War on Terror.

4.  The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant and that is deemed relevant to that issue.  The Tribunal President will determine the reasonable availability and relevance of evidence or witnesses.

# UNCLASSIFIED