surely does not require resort to Pakistani law, however, to observe that there is no semblance of any attorney-client relationship between Mr. McMahon and Rabita Trust. Indeed, the Trust ceased paying Mr. McMahon's legal fees long ago, (id. at 42), and, for many years, he has had no contact with anyone who has the power to authorize or direct the Trust's legal representation in these proceedings, (id. at 37). In light of the representation that Rabita Trust is defunct, it is questionable whether such an individual even exists.

It is axiomatic that a lawyer cannot act on a client's behalf without its "consent and cooperation." Kent v. First Inter-County Bank of N.Y., No. 88 Civ. 820 (DNE), 1990 WL 204193, at *2 (S.D.N.Y. Dec. 6, 1990) (quoting R-T Leasing v. Ethyl Corp., 484 F. Supp. 950, 952 (S.D.N.Y. 1979)). Given the present circumstances, Rabita Trust plainly lacks the capacity to assent to Mr. McMahon's or anyone else's continued representation of the Trust in this litigation. Moreover, the lack of an authorized representative spells an end to the Trust's ability to proceed here, since it has long been held that artificial entities are not permitted to appear in federal court without counsel. Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities.") (citations omitted); see also Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007) (per curiam) (limited liability companies may not proceed pro se); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is

established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se."). Therefore, in the present circumstances, it appears that the only viable course of action is to enter a default judgment against the Trust.[7]

---

[7] Even if Mr. McMahon were able to continue serving as Rabita Trust's counsel, the Court would be obliged to recommend sanctions for its nonproduction of documents.

As Mr. McMahon concedes, there seem to be only two possibilities as to who is in charge of Rabita Trust today – either Jelaidan or the Pakistani government. Jelaidan denies having any continuing access to the Rabita Trust documents, stating that "the Pakistani authorities froze all of Rabita Trust's bank accounts and confiscated any and all of its documents" in 2001. (Jelaidan Opp. Mem., Ex. 7, ¶ 6). Mr. McMahon, however, states that "when the Trust entered into dormancy, any documents in the office would likely have been destroyed or transferred to storage, probably by Pakistan's Office of the Cabinet Secretary." (Rabita Opp. Mem. at 3; see also id. Ex. 4, ¶ 7 (McMahon Aff.) ("Apparently, the records have been sent to storage, and to procure documents, if they exist, one must go through the Pakistani government.")). Neither Jelaidan nor Mr. McMahon make any effort to reconcile their dueling representations that the records became unavailable either in 1994 when the Trust allegedly became dormant, or in 2001 when Rabita Trust's assets were seized, nor have they attempted to determine whether the records were destroyed or placed in storage. Indeed, except for their one-sentence explanations, neither Jelaidan nor Mr. McMahon provides any details concerning the disposition of Rabita Trust's records or their efforts to determine the records' present whereabouts.

If the Pakistani government is, in effect, Mr. McMahon's client because it has assumed operational control of the Rabita Trust, the lack of a detailed proffer is even more egregious. Mr. McMahon explains that he "personally met with officials at the Pakistani Embassy and participated in efforts to procure documentation to which [the Plaintiffs] are entitled." (Id. ¶ 5). Mr. McMahon further avers that he has exhausted his "efforts to obtain documents through correspondence and/or the meeting I attended at the Pakistani Embassy." (Id. ¶ 9.) Apart from these two conclusory statements, however, Mr. McMahon has provided no details from which the Court could reasonably conclude that Rabita Trust has made a good faith effort to locate and produce its own records. Nor have Mr. McMahon or Rabita Trust shown that those records no longer exist.

In sum, even if Mr. McMahon continues to represent Rabita Trust, his client has not shown that it made reasonable efforts to produce the documents sought by the Plaintiffs, the relevance of which can scarcely be contested. Nor has Rabita Trust shown that those records no longer exist. In these circumstances, assuming that Rabita Trust is entitled to continue defending this action, its failure to establish that it took reasonable steps to attempt to produce its documents would warrant a finding that Rabita Trust proceeded in bad faith. This, in turn, would entitle the Plaintiffs, at a minimum, to an adverse inference instruction at trial. The Plaintiffs would also be (Continued…)

C. Al Haramain Defendants

1. Background

The Plaintiffs' third sanctions motion relates to two entities that the Plaintiffs refer to collectively as Al Haramain Islamic Foundation ("Al Haramain").[8] Al Haramain is a purported Islamic charity based in Saudi Arabia with branch offices located throughout the world. Between 2002 and 2004, the Treasury Department designated thirteen Al Haramain field offices as terrorist organizations, including branches in the United States, based upon evidence that Al Haramain had provided financial and logistical support to al Qaeda and other affiliated terrorist organizations. See Treasury Designates Al Haramain Islamic Foundation, http://www.treasury.gov/press-center/press-releases/Pages/hp1043.aspx. Al Haramain's branch in the United States ("Al Haramain (USA)") was further alleged to have engaged in tax fraud and money laundering offenses in connection with the channeling of funds to mujahideen and Chechen jihadists affiliated with al Qaeda. Id. Several of Al Haramain's directors, including Aqeel Al-Aqeel ("Al-

---

(…continued)
entitled to recover the expenses incurred in connection with their motion. Fed. R. Civ. P. 37(b)(2)(C).

[8] The papers associated with the Al Haramain motion are docketed as follows: Ltr. to the Court from the Pls.' Exec. Comm., dated Jan. 9, 2013 (ECF No. 2654) ("Pls.' Al Haramain Mem."); Decl. of Robert T. Haefele, Esq., in Supp. of Pls.' Mot. for Sanctions, sworn to Jan. 9, 2013 (ECF No. 2655) ("Haefele Decl."); Al Haramain Opp. to Pls.' Mot. for Sanctions (ECF No. 2676) ("Al Haramain Opp. Mem."); Ltr. to the Court from the Pls.' Exec. Comm., dated Feb. 7, 2013 (ECF No. 2679) ("Pl.'s' Al Haramain Reply"); Decl. of Mr. Robert T. Haefele, Esq., in Further Supp. of Pls.' Mot. for Sanctions (ECF No. 2680) ("Haefele Decl. II"); Al Haramain's Notice of Filing (ECF No. 2683) ("Al Haramain Notice"); Al-Haramain's Second Notice of Filing (ECF No. 2691) ("Al Haramain Second Notice"); Pls.' Resp. to Al Haramain's Notice of Filing (ECF No. 2694) ("Pls.' Resp.").

Aqeel") and Soliman Al-Buthe ("Al-Buthe"), who are themselves defendants in this litigation, also were designated for similar reasons. Id.

The Plaintiffs' present motion regarding Al Haramain caps a procedural history that spans more than nine years. That history began in August 2002, when the Plaintiffs filed the first complaint in this action, naming as defendants both Al Haramain (USA) and Al Haramain's head office in Saudi Arabia ("Al Haramain (SA)"). Subsequently, in January 2003, Al Haramain (USA) entered an appearance and filed a motion to dismiss, which later was granted in part and denied in part. In February 2003, one month after Al Harmain (USA) appeared, Perouz Sedaghaty ("Sedaghaty"), one of Al Haramain (USA)'s directors and himself a defendant in this case, moved to the United Arab Emirates, allegedly to pursue job opportunities because his work in the United States as a self-employed arborist had "dried up." Sedaghaty apparently closed down Al Haramain (USA)'s operations later that year.

On October 29, 2003, following the partial denial of Al Haramain (USA)'s motion to dismiss, the Plaintiffs served a set of initial discovery requests on Al Haramain (USA). No requests were served on Al Haramain (SA), however, because it did not enter an appearance in the case until April 2004. Counsel initially agreed that Al Haramain (USA)'s discovery responses would be due by February 13, 2004, but Judge Richard Casey, to whom the case then was assigned, approved an extension of that deadline to April 26, 2004.

In the interim, on February 18, 2004, United States government officials executed a search warrant and seized all the documents and computers at Al Haramain (USA)'s office in Ashland, Oregon. According to Al Haramain (USA), that seizure made it impossible to produce any documents in response to the Plaintiffs' discovery requests, with the exception of certain materials that Sedaghaty had supplied to Al Haramain (USA)'s lawyers prior to his departure from the United States. Al Haramain (USA) also raised objections to the Plaintiffs' requests on the basis that they were overbroad and unduly burdensome, and that it could not be required to produce documents in the possession of Al Haramain (SA), which it contended was a separate entity. Moreover, Al Haramain (USA) asserted that it was unable to obtain responsive documents from Al Haramain (SA) because the Saudi government had announced, on June 2, 2004, that it would be dissolving Al Haramain (SA) as part of an effort to "choke off additional channels of terrorist funding." (See Haefele Decl., Ex. T at 4; Al Haramain Opp. Mem. at 6).

On December 2, 2009, the Plaintiffs wrote to the Court, requesting an order compelling Al Haramain to provide "complete and non-evasive" responses to their discovery requests or "risk institution of sanctions." (ECF No. 2206). Al Haramain (USA) responded as it had before, arguing that it lacked the ability to produce documents in the possession of Al Haramain (SA) because that entity's offices had been shut down, and it did not have the requisite custody or control over Al Haramain (SA)'s documents because the two entities were separate. (ECF No. 2384-2).

At a discovery conference on October 28, 2010, I overruled Al Haramain (USA)'s objections and granted the Plaintiffs' motion to compel. At the outset, I concluded that Al Haramain (USA) and Al Haramain (SA) were not separate entities for discovery purposes, and that Al Haramain (USA) consequently was required to produce documents in Al Haramain (SA)'s possession, custody, and control, since "the Saudi entity controlled . . . the U.S. entity and . . . the two were indistinguishable."[9] (Haefele Decl., Ex. A ("10/28/10 Hr'g Tr.") at 17). Second, I overruled Al Haramain (USA)'s boilerplate objections that the Plaintiffs' requests were unduly burdensome. (Id.). Third, I found that Al Haramain (USA) had not made an adequate showing that it was incapable of obtaining any documents from Al Haramain (SA) simply because the Saudi branch had been closed. (Id. at 18). Finally, I recognized that my directives to the Al Haramain defendants might not open the documentary floodgates, but left "for another day what the consequences of any nonproduction . . . w[ould] be." (Id.).

On November 12, 2010, Al Haramain (USA) filed objections to my ruling pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. (ECF No. 2384). During a subsequent telephone conference on December 2, 2010, I cautioned Al Haramain (USA)

---

[9] The following year, in ruling on a challenge to the Treasury Department's designation of Al Haramain (USA), the Ninth Circuit similarly rejected Al Haramain (USA)'s argument that it was a distinct organization. See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury, 660 F.3d 1019, 1031 (9th Cir. 2011) ("We have no trouble concluding that substantial evidence supports OFAC's determination that [Al Haramain (USA)] is a branch office of [Al Haramain (SA)] and of the worldwide network of the Al Haramain Islamic Foundation . . . . Additionally, three out of four founding members of [Al Haramain (USA), including Al-Aqeel and Al-Buthe,] were senior officials of [Al Haramain (SA)].").

that its objections did not stay my order and directed the Al Haramain defendants to produce all responsive documents by January 7, 2011. (Haefele Decl., Ex. B). I further issued a written order to that effect on December 10, 2010. (ECF No. 2393). Judge Daniels subsequently rejected Al Haramain (USA)'s objections to my ruling in their entirety. (ECF No. 2536).

By 2012, both Al Haramain entities still had yet to produce any additional documents. On July 31, 2012, in a final attempt to obtain at least partial responses, the Plaintiffs served supplemental document requests on the Al Haramain defendants, seeking a narrowly-tailored subset of the documents that they originally had requested. (Haefele Decl., Ex. D). On September 4, 2012, Al Haramain (USA) once again objected to those requests on grounds that they were overbroad or unduly burdensome and that Al Haramain did not have possession, custody, or control of any documents located at "the headquarters of Al Haramain in Saudi Arabia" or "any other branch office of Al Haramain worldwide." (Id., Ex. H at 2).

On January 9, 2013, the Plaintiffs filed their present motion, which seeks sanctions against the Al Haramain defendants for their "abject failure to produce responsive documents" throughout this case. (Pls.' Al Haramain Mem. at 1). The Plaintiffs contend that the Al Haramain defendants have been willfully delinquent in meeting their discovery obligations and, therefore, that the entry of a default judgment is "the most appropriate remedial course of action." (Id. at 19). As an alternative sanction,

31

the Plaintiffs have requested that the Court instruct the jury that it may draw an adverse inference from the Al Haramain defendants' repeated failures to produce. (Id. at 1, 20).

2.  Analysis

Since the Court previously found that Al Haramain (USA) was the alter ego of Al Haramain (SA) for purposes of document production, both entities necessarily have the same discovery responsibilities. (10/28/10 Hr'g Tr. at 17-18). Nevertheless, because my ruling was limited to the discovery context and left unresolved the question of whether Al Haramain (USA) ultimately could be deemed liable for Al Haramain (SA)'s actions, I will consider each entity's conduct separately. (Id.; ECF No. 2536).

a.  Al Haramain (USA)

i.  Failure to Produce Oregon Documents

The Plaintiffs first contend that sanctions are warranted based upon Al Haramain (USA)'s failure to produce relevant documents from its office in Ashland. In response to the Plaintiffs' motion, Al Haramain (USA) initially took the position that it was unable to obtain the requested documents due to "factors beyond its control" – namely, the Government's seizure of all of its documents from its office in February 2004. Al Haramain (USA) further maintained that those documents were subject to a protective order that had been entered in a criminal tax fraud prosecution pending against Sedaghaty in the District of Oregon. (Al Haramain Opp. Mem. at 13). Since then, however, Al Haramain (USA) and Sedaghaty's defense counsel jointly petitioned Chief Judge Aiken, the Judge assigned to Sedaghaty's criminal case, to modify the protective order so as to

32

permit Al Haramain (USA) to obtain any materials that the Government had seized through the execution of the search warrant at its Ashland office. (See Al Haramain Notice). After Judge Aiken entered the requested order on February 14, 2013, (D. Or. ECF No. 629), Al Haramain (USA) produced all non-privileged documents responsive to the Plaintiffs' requests. (See ECF No. 2740 ("6/28/13 Hr'g Tr.") at 34-35).

       The Plaintiffs complain that Al Haramain (USA) unreasonably waited years before making its ultimately successful effort to procure the records. (Pls.' Al Haramain Reply at 11; Pls.' Resp. at 1-2). It is true that it has taken Al Haramain (USA) a great deal of time to obtain and produce the requested documents. It is particularly troubling that, even after I specifically ruled that the original Oregon protective order did not restrict the dissemination of any materials the Government had seized, In re Terrorist Attacks on September 11, 2001, No. 03 MDL 1570 (GBD) (FM), 2011 WL 5913526, *6 (S.D.N.Y. Nov. 22, 2011),[10] Al Haramain (USA) continued to claim that it would be precluded from obtaining any responsive records. Although I sympathize with the Plaintiffs' frustration with Al Haramain (USA)'s failure to take timely steps to obtain the requested documents earlier, it is difficult to see how the delay has resulted in any harm to the Plaintiffs' case.

       In determining whether to impose severe sanctions, such as the entry of a default judgment or an adverse inference instruction, the Court must "assess whether the requesting party suffered prejudice as a result of the loss or withholding of evidence."

---

[10] Prior to issuing that decision, I confirmed with the magistrate judge who had entered the protective order that my interpretation of its scope was correct.

Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 Civ. 5023 (CBA) (RLM), 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (citing Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Secs., LLC, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010)). Here, although there is no question that Al Haramain (USA) could have pursued the requested documents earlier, their belated production has not resulted in any demonstrable prejudice or otherwise deprived the Plaintiffs of a fair opportunity to litigate their case. To the extent that what now has been produced makes reference to additional categories of relevant documents, I will of course permit the Plaintiffs to serve follow-up requests. Since they have the documents and will have that opportunity, however, I find it inappropriate to impose an adverse inference instruction or to recommend the entry of a default judgment.

Although Al Haramain (USA)'s belated production of the Oregon documents may not have resulted in prejudice, the Plaintiffs nevertheless are entitled to recover the reasonable attorneys' fees and costs that they incurred in bringing this motion. See Fed. R. Civ. P. 37(b)(2)(C) (requiring an award of expenses unless a discovery failure "was substantially justified or other circumstances make an award . . . unjust"); Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 291-92 (S.D.N.Y. 2009) (denying adverse inference sanction but awarding attorneys' fees and costs). Indeed, it is clear that the Plaintiffs would not have had to file their motion, but for Al Haramain (USA)'s unreasonable refusal to make efforts to obtain the Oregon documents after I ruled that the protective order in Sedaghaty's criminal case did not preclude their production in this

34

action. Moreover, Al Haramain (USA) has made no showing that its failure to pursue those documents in a timely manner was substantially justified or that the awarding of expenses to the Plaintiffs would be unjust. The Plaintiffs shall therefore make their motion and Al Haramain (USA) shall respond on the schedule previously fixed for the Plaintiffs' fee application regarding Jelaidan.

### ii. Failure to Produce Saudi Arabia Documents

The Plaintiffs also seek sanctions against Al Haramain (USA) for its failure to produce documents from Al Haramain (SA)'s headquarters in Saudi Arabia. Al Haramain (USA) asserts in its defense that it is incapable of obtaining any such documents because Al Haramain (SA)'s office was closed by Saudi authorities in 2004 and, as a result, "repeated attempts" to secure responsive materials have been unsuccessful. (Al Haramain Opp. Mem. at 13-14 & Ex. 2). The Plaintiffs counter that Al Haramain (USA) nevertheless defaulted on its discovery obligations because it had nearly twenty-two months between the filing of the complaint in this action and Al Haramain (SA)'s forced dissolution during which it should have collected and preserved relevant documents from the charity's Saudi headquarters. (Pl.'s Al Haramain Reply at 8).

Although it is true that a party has an obligation to preserve any materials it "knows, or reasonably should know, [are] relevant to the action," Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Zubulake IV"), there has been no showing that Al Haramain (USA) failed to meet this obligation. Rather, Al Haramain (USA)'s present inability to produce the relevant materials was caused by unforeseen

35

external circumstances – the shutting of Al Haramain (SA)'s offices by the Saudi government. There may be cases where the duty to preserve would require a custodian to remove relevant documents from their existing location. For example, such a need might arise if the custodian has reason to believe that the documents would become inaccessible in their current location, or that they have been stored in a manner that makes their destruction likely. Here, however, there simply is no indication that Al Haramain (USA) had any advance notice that the Saudi government intended to dissolve Al Haramain (SA) or that it would no longer have access to responsive documents as a result of the closure. Absent a showing that Al Haramain (USA) had a duty to collect or remove relevant documents from the Saudi Arabia office before its closure, there is no basis for imposing sanctions, notwithstanding the Plaintiffs' present inability to secure compliance with their document requests.

iii. Spoliation of Evidence

The Plaintiffs also seek sanctions against Al Haramain (USA) for allegedly destroying certain electronic documents located at the Oregon branch office, including several Microsoft Outlook mailboxes which contained approximately 25,000 emails and other records. (Pls.' Al Haramain Mem. at 11). The evidence of Al Haramain (USA)'s spoliation originally came to light in connection with Sedaghaty's criminal case in the District of Oregon. During the trial, there was evidence that the Government's search of Al Haramain (USA)'s office had yielded, among other things, eight computer hard drives containing financial data files, QuickBooks entries, emails, and other documents.

(Haefele Decl., Ex. N ("Sedaghaty Tr.") at 37-39). A subsequent forensic examination established, however, that a large amount of data, including entire Microsoft Outlook mailboxes, had been deleted or at least "partially overwritten." (Id. at 39-40, 45-47). The Plaintiffs contend that Al Haramain (USA) therefore intentionally destroyed relevant information during a period of time when it had a duty to preserve potential evidence.

Although it appears undisputed that a great deal of evidence was deleted from the hard drives, there has been no showing as to how or when the documents were lost. Thus, they may well have been erased at a time prior to when the duty to preserve arose. In any event, even if the Court were to assume that the alleged spoliation occurred at a time when Al Haramain (USA) had an obligation to preserve the emails from its Oregon office, to secure sanctions, the Plaintiffs still would have to establish that the missing evidence was relevant and that they suffered prejudice as a result of its nonproduction. Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 438-40 (S.D.N.Y. 2010). Such prejudice may be presumed in cases where evidence is destroyed willfully or through gross negligence, but when "the destruction of evidence is merely negligent, the burden falls on the innocent party to prove prejudice." Sekisui Am. Corp. v. Hart, ___ F. Supp. 2d ___, No. 12 Civ. 3479, 2013 WL 4116322, at *5 (S.D.N.Y. Aug. 15, 2013) (citing Byrnie v. Town of Cromwell, Bd. Of Educ., 243 F.3d 93, 108 (2d Cir. 2001)).

Here, there simply is insufficient evidence upon which to evaluate Al Haramain (USA)'s culpability. Although the Plaintiffs posit that, in the "absence of any

37

other proposed plausible explanation," the "sheer scale of the [alleged] deletion" suggests an intentional erasure, (Pl.'s' Al Haramain Reply at 13), that amounts to speculation since the forensic examiner who testified at Sedaghaty's criminal trial never opined as to the circumstances under which the information was deleted. In fact, on cross-examination, the examiner admitted that there could have been several innocent explanations. (See Sedaghaty Tr. at 78-83). Thus, there is no basis upon which the Court may conclude that Al Haramain (USA) intentionally destroyed evidence, nor is there any evidence to establish that Al Haramain (USA)'s failure to preserve its email data constituted gross negligence. Even under the liberal standards of the Second Circuit, see Residential Funding, 306 F.3d at 113, the Plaintiffs therefore are not entitled to a presumption of prejudice and must make an affirmative showing that they have been harmed. Sekisui, 2013 WL 4116322, at *5.

      The available evidence in that regard fails to demonstrate that Al Haramain (USA)'s alleged spoliation has caused the Plaintiffs prejudice. Indeed, a substantial portion of Al Haramain (USA)'s emails – approximately 20,000 to 25,000 – were recovered by the Government's forensic expert from "unallocated space" on the hard drives. (Sedaghaty Tr. at 43, 45). These recovered emails presumably were among the files turned over to the Plaintiffs after Judge Aiken modified the protective order in the Sedaghaty criminal case. The Plaintiffs have also failed to show that any materials that could not be recovered were relevant to their case. For these reasons, it plainly would be inappropriate to impose sanctions. The Plaintiffs may renew their application, however,

should they obtain more evidence concerning the circumstances under which erasures occurred or the contents of any missing files.

### b. Al Haramain (SA)

Since entering an appearance in this case more than eight years ago, Al Haramain (SA) has been conspicuously absent from discovery. Its counsel has failed to attend any of the Court's regularly-scheduled discovery conferences and there is no indication that it has any intention of participating in such proceedings in the future. Moreover, Al Haramain (SA) has made absolutely no effort to respond to the Plaintiffs' document requests or to comply with my order that it engage in efforts to obtain and produce responsive materials. (See 10/28/10 Hr'g Tr. at 18).

Al Haramain (SA)'s total lack of involvement in this case strongly suggests that it no longer has any interest in pursuing a defense. Indeed, it did not even respond to the Plaintiffs' motion for sanctions.[11] Having flouted its discovery obligations and this Court's orders for many years, Al Haramain (SA) plainly has demonstrated that its noncompliance has been both willful and in bad faith. The entry of a default judgment against Al Haramain (SA) is therefore appropriate. See Lantigua v. Bonao Meats & Produce, Inc., No. 11 Civ. 2147 (DAB) (KNF), 2012 WL 2553472, at *3 (S.D.N.Y. July 3, 2012) (default judgment appropriate for defendants' willful refusal to comply with court

---

[11] Al Haramain (USA) has made clear that its opposition papers were submitted solely on its own behalf. Moreover, Al Haramain (USA)'s counsel have confirmed that they do not represent Al Haramain (SA), and are not permitted to represent any Al Haramain entity other than Al Haramain (USA) under the terms of their OFAC license. (Al Haramain Opp. Mem. at 1 n.1).

order and failure to respond to motion for sanctions); Pennacchio v. Powers, No. 05 Civ. 985 (RRM) (RML), 2010 WL 3767141, at *7 (E.D.N.Y. Aug. 9, 2010) ("Perillo's total lack of participation in this case and his failure to oppose plaintiff's motion warrant the entry of a default judgment against him."); Trs. of Tapers' Ins., Annuity and Pension Funds v. Albee Drywall Partitions Corp., No. 91 Civ. 1014 (DLC), 1996 WL 294306, at *4 (S.D.N.Y. June 3, 1996) (failure to attend conferences, brief motions, or otherwise participate in case warrants entry of default judgment).

IV. Conclusion

For the foregoing reasons, the Plaintiffs' motions (ECF Nos. 2654, 2700, 2701) are granted in part and denied in part.

To summarize, my rulings and recommendations are as follows:

1. With respect to Jelaidan, adverse inference sanctions are warranted, and the Plaintiffs are entitled to recover the reasonable fees and costs they incurred in bringing the motion.

2. With respect to Rabita Trust, a default judgment should be entered.

3. With respect to Al Haramain (USA), sanctions are not warranted at this time, but the Plaintiffs may recover the expenses they reasonably incurred in bringing their motion.

4. With respect to Al Haramain (SA), a default judgment should be entered.

V. Notice of Procedure for Filing of Objections to this Report and Recommendation

To the extent I have recommended entry of a default judgment, the parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules

of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

Dated: New York, New York
October 28, 2013

FRANK MAAS
United States Magistrate Judge

Copies to:

Hon. George B. Daniels
United States District Judge

All counsel via ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: : **REPORT AND RECOMMENDATION TO**

TERRORIST ATTACKS ON : **THE HONORABLE**
SEPTEMBER 11, 2001      **<u>GEORGE B. DANIELS</u>**

: 03 MDL 1570 (GBD) (FM)

-----------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

      I issued a Memorandum Decision and Order today granting in part and denying in part three motions for sanctions. For reasons explained in that Decision and Order, some relief I found to be appropriate is dispositive and therefore requires that I issue a Report and Recommendation. Accordingly, for the reasons explained in my Decision and Order, I recommend the following:

    1.    Imposition of an adverse inference jury instruction against Jelaidan.

    2.    Entry of a default judgment against Rabita Trust.

    3.    Entry of a default judgment against Al Haramain (SA).

<u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

      The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See also</u> Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the

undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated: New York, New York
October 28, 2013

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable George B. Daniels
United States District Judge

All counsel via ECF