# Exhibit I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF
DOCUMENTS DIRECTED TO ABDULLAH AL TURKI**

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
August 22, 2013

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ABDULLAH AL TURKI**

Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, and *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, propound and serve on Abdullah al Turki (hereinafter "Defendant" or "Turki"), the following Jurisdictional Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.     In producing documents and other things, Defendant is requested to furnish all documents or things in his possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.     Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.     In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request. All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by Defendant. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.      Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.      Each of these requests shall be continuing. If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.   If Defendant asserts a privilege or other authorized protection with respect to any document requested herein, Defendant is required to provide a privilege log that conforms with the requirements set out in the November 19, 2012 Order Governing Identification of Privileged Documents (ECF No. 2644), including providing the following information concerning each document withheld:

      a.   The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

      b.   The general subject matter of the document;

      c.   The date of the document;

      d.   The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

      e.   If the document is an electronic document, its file size; and

      f.   The basis for the privilege or protection claimed, and if the privilege is governed by state law, the state's privilege rule being invoked.

11.   For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary*, Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.     Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1992 through the present.

14.     Unless otherwise specified, Turki's responses to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to Abdullah al Turki, including any production of documents by the defendant, shall be directed to the law offices of Motley Rice at 275 Seventh Ave., 2nd Floor, New York, NY 10001, c/o Robert T. Haefele, Esq.

## DEFINITIONS

1.     All terms used herein that are defined in Local Civil Rule 26.3 have the meaning as defined therein.  To the extent that any term is defined herein in a manner that is inconsistent with Local Civil Rule 26.3, the rule governs.

2.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

3.     The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

4.      The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

5.      The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv) identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

6.      The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

7.      The term "Plaintiffs" shall refer to Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, and *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279.

8.      The terms "Defendant," "You," and "Your" shall refer to Abdullah al Turki, including by any other name by which You are known, and any employee, attorney, accountant, consultant, agent, or representative acting on Abdullah al Turki's behalf and/or at his direction.

9.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

10.     The term "person" is defined as any natural person or any business, legal, or government entity or association.

11.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.     The terms "all" and "each" shall be construed as all and each.

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.     The use of the singular form of any word includes the plural and vice versa.

15.     The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16.     The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17.     The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if

committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18.     The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19.     The terms "Kingdom of Saudi Arabia," or "KSA," or "Saudi Arabian government" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20.     The terms "Muslim World League" or "MWL" shall mean the Muslim World League and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Muslim World League's behalf and/or at its direction.

21.     The terms "International Islamic Relief Organization" or "IIRO" shall mean the International Islamic Relief Organization and any branch office, officer, director, trustee,

employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the International Islamic Relief Organization's behalf and/or at its direction.

22.     The terms "Al Haramain Islamic Foundation" or "AHIF" shall mean the Al Haramain Islamic Foundation and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Al Haramain Islamic Foundation's behalf and/or at its direction.

23.     The terms "World Assembly of Muslim Youth" or "WAMY" shall mean the World Assembly of Muslim Youth and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the World Assembly of Muslim Youth's behalf and/or at its direction.

24.     The terms "Al Haramain Al Masjed Al Aqsa Charity Foundation" or "AHAMAA" shall mean the Al Haramain Al Masjed Al Aqsa Charity Foundation and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Al Haramain Al Masjed Al Aqsa Charity Foundation's behalf and/or at its direction.

25.     The terms "Rabita Trust" or "Rabita" shall mean the Rabita Trust and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Rabita Trust's behalf and/or at its direction.

26.     The term "Golden Chain-Related Individuals" means the following individuals: Suleiman al-Rashid, Abdel Qader Bakri, Bakr Bin Laden and the Saudi Bin Laden Group, Youssef Jameel, Ibrahim Muhammad Afandi, Saleh Abdullah Kamel, Suleiman Abdulaziz Al-

Rajhi, Mohammed Bin Abdullah Al-Jomaih, Abdulrahman Hassan Al-Sharbatly, Ahmed Mohamed al-Naghi, Khalid Bin Mahfouz, Abdel Qader Faqeeh, Salah Al-Din Abdel Jawad (a/k/a Salahuddin Abduljawad), Ahmad Turki Yamani (a /k/a Ahmad Zaki Yamani), Abdel Hadi Taher, Mohammed Omar, Ahmad Al-Harbi, Mohammed Al-Issai, Hamad Al-Hussaini, Salem Taher, Adel Abdul Jalil Batterjee, Osama Bin Laden and Wael Hamza Jelaiden.

27.     The term "jihad" (جهاد) shall refer to, but is not limited to, al jihad bi-al-lisan ("jihad of the tongue"), al jihad bi-al-qalam ("jihad of the pen"), al jihad al nafs ("jihad of the soul"), al jihad bi-al-nafs ("self–sacrificing jihad"), and al jihad bi-al-mal ("financial jihad").

28.     The term "signatory authority" shall mean a legal power that is designated upon a person because of their identity or is designated upon them because of their role or position or control within an organization.

29.     The term "Designated" refers to any designation pursuant to the U.N.'s, the E.U.'s, or any nation's counter-terrorism sanctions regime, unless stated otherwise.  When used in relation to the U.S. government, "Designated" refers to any designation by the United States as a Specially Designated Terrorist ("SDT") pursuant to E.O. 12947; as a Specially Designated Global Terrorist ("SDGT") pursuant to E.O. 13224; as a Foreign Terrorist Organization ("FTO") pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189); or as a State Sponsor of Terrorism pursuant to section 6(j) of the Export Administration Act, section 40 of the Arms Export Control Act, or section 620A of the Foreign Assistance Act.  When used in relation to the U.N., "Designated" refers to any inclusion on the list established and maintained by the U.N. Security Council Committee pursuant to resolutions 1267 (1999) and 1989 (2011) concerning Al-Qaida and associated individuals and entities.

30.     The term "deviant activity" shall mean and refer to any activity related to or associated with deviant ideologies, deviant thinking or deviant interpretations of Islam.  The terms "deviant ideologies," "deviant thinking," and "deviant interpretations of Islam" shall have the same meanings as when used by authorities of the government of the Kingdom of Saudi Arabia and/or Saudi religious authorities.  *See Interior Minister Urges Imams to Confront Deviant Ideologies*, June 21, 2007, Website of the Royal Embassy of Saudi Arabia, Washington, D.C.,   http://www.saudiembassy.net/2007News/News/NewsDetail.asp?cIndex+7240;   *Mosque Council Urges Confrontation of Deviant Thinking*, September 1, 2003, Website of the Royal Embassy        of        Saudi        Arabia,        Washington,        D.C., http://www.saudiembassy.net/2003News/News/IslDetail.asp?cIndex=762.

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF
DOCUMENTS DIRECTED TO ABDULLAH AL TURKI**

1.      Please provide all documents governing, describing, detailing, or otherwise
relating to Your employment from 1980 to the present, including without limitation, any and all
resumes, curriculum vitaes, biographies, abstracts, media reports, digests, summaries,
employment contracts, and/or outlines.

**ANSWER:**

2.      Please provide all documents relating to any business, employment, financial,
charitable, religious, or other relationship between you and the Muslim World League ("MWL"),
the International Islamic Relief Organization ("IIRO"), the Al Haramain Islamic Foundation
("AHIF"), the World Assembly of Muslim Youth ("WAMY"), the Al Haramain Al Masjed Al
Aqsa Charity Foundation ("AHAMAA"), and the Rabita Trust (hereinafter collectively referred
to as the "Charities"), including without limitation, all documents relating to all positions You
held or hold within the Charities.

**ANSWER:**

3.      Please provide all documents relating to You and the Charities.

**ANSWER:**

12

4.    Please provide all documents relating to all awards, honors, accolades, or distinctions You received from the Kingdom of Saudi Arabia and/or Saudi royal family during Your tenure with the Charities.

**ANSWER:**

5.    Please provide all documents illustrating, describing, or otherwise relating to the Charities' formation and organizational structure, the date of incorporation, the state of incorporation, the duration of their existence, any documents relating to their initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of those Charities (including any subsidiary, affiliate, or branch office).

**ANSWER:**

6.    Please provide all documents relating to Your role in the establishment, organization, funding, oversight, supervision, management, and/or control of the Charities (including any subsidiary, affiliate, or branch office), including without limitation, appointment and termination of personnel, selection of committee/board members or other officers, accounting, internal or external auditing, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

7.      Please provide all documents relating to Your supervision, management, control of, or distribution of the Charities' funds, including without limitation, all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from the Charities and the purpose for such disbursements.

**ANSWER:**

8.      Please provide all documents relating to the administration, governance, and long-term strategic decision-making of the Charities (including any subsidiary, affiliate, or branch office), including without limitation, articles of incorporation, by-laws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

**ANSWER:**

9.      Please provide all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of the Charities (including any subsidiary, affiliate, or branch office).

**ANSWER:**

14

10.     Please provide all documents relating to Your role in the oversight, supervision, management, and/or control over the Charities' various committees, boards and/or internal bodies of the Charities (including any subsidiary, affiliate, or branch office).

**ANSWER:**

11.     Please provide all documents identifying each officer, director, trustee, shareholder, board member, and/or committee member of the Charities (including any subsidiary, affiliate, or branch office).

**ANSWER:**

12.     Please provide all documents relating to any meetings of officers, directors, trustees, shareholders, managers, boards, committees, and/or internal bodies of the Charities (including any subsidiary, affiliate, or branch office), including without limitation, any agendas or meeting minutes.   Responsive documents shall include, but are not limited to, any such meetings attended by representatives of the Kingdom of Saudi Arabia, members of the Saudi royal family, and/or representatives or special advisors from the King's chambers.

**ANSWER:**

13.     Please provide all documents relating to any accounts in any banking or financial institution established or held in the name of, on behalf of, and/or for the benefit of the Charities, including without limitation, any accounts You hold, or held jointly with, or on behalf of the

Charities, and/or any Charity accounts over which You hold or have held signatory authority. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You, the Charities, and the banking or financial institution, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

14.     Please provide all documents relating to any investigation, inquiry, review, audit, analysis, or examination conducted by any United States state or federal governmental entity, agency and/or department, or any United States-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "United States Investigator"), any foreign government or any foreign-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi Arabian-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "KSA Investigator"), which references or addresses any of the Charities' banking and financial accounts, including any accounts You hold, or held jointly with, or on behalf of the Charities, and/or any Charity accounts over which You hold or have held signatory.

**ANSWER:**

15.    Please provide copies of all documents that have been seized by, or produced by You and/or the Charities to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses any of the Charities' banking and financial accounts, including any accounts You hold, or held jointly with, or on behalf of the Charities, and/or any Charity accounts over which You hold or have held signatory.

**ANSWER:**

16.    Please provide all documents relating, in whole or in part, to any investigation, inquiry, review, audit, analysis, or examination of any of the Charities' financial accounts, investments, assets, capital, and/or financial affairs, conducted either by officials and/or employees of the Charities, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, due diligence, analysis, examination, or review ordered, conducted, supervised, or overseen by You, the Kingdom of Saudi Arabia, and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

17.    Please provide all documents relating to any written or oral communication between You, the Charities, the Kingdom of Saudi Arabia, and/or SAMA, which references or addresses any of the Charities' banking and financial accounts, including any accounts You hold, or held jointly with, or on behalf of the Charities, and/or any Charity accounts over which You

hold or have held signatory. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles, or otherwise.

**ANSWER:**

18.    Please provide all documents relating to Your role as a member of the Supreme Council of Islamic Affairs (a/k/a Higher Council of Islamic Affairs) and the authority conferred upon You to supervise, manage, and/or direct the operations, activities, and policies of the Charities.

**ANSWER:**

19.    Please provide all documents authored, generated, or drafted by You during Your tenure as a member of the Supreme Council of Islamic Affairs which describe, detail, or otherwise relate to the Charities' operations, banking and financial activities, fundraising, personnel, and/or policies.  Responsive documents shall include, but are not limited to, all correspondence, memoranda, reports, or executive summaries submitted by You to:   the Kingdom of Saudi Arabia; members of the Saudi royal family; the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Da'wah and Guidance; the Ministry of Foreign Affairs, Endowments, Da'wah and Guidance; and/or the Charities' governing bodies.

**ANSWER:**

20.     Please provide all documents relating to any meetings You attended during Your tenure as a member of the Supreme Council of Islamic Affairs relating to the Charities. Responsive documents shall include, but are not limited to, any such meetings attended by representatives of the Kingdom of Saudi Arabia, members of the Saudi royal family, and/or representatives or special advisors from the King's chambers.

**ANSWER:**

21.     Please provide all documents relating to the goals, objectives and efforts of the Supreme Council of Islamic Affairs to monitor the flow of financial assistance to Islamic groups and benevolent organizations outside the Kingdom of Saudi Arabia in order to prevent the financing of radical, extremist, or terrorist activities, as stated by Prince Sultan bin Abdul Aziz al Saud at the inaugural meeting of the Supreme Council of Islamic Affairs.

**ANSWER:**

22.     Please provide all documents relating to Your role as a member of the Saudi Council of Ministers.

**ANSWER:**

23.     Please provide all documents authored, generated, or drafted by You during Your tenure as a member of the Saudi Council of Ministers which describe, detail, or otherwise relate to the Charities.  Responsive documents shall include, but are not limited to, all correspondence,

memoranda, reports, or executive summaries submitted by You to:  the Kingdom of Saudi Arabia; members of the Saudi royal family; the Council of Ministers; the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Da'wah and Guidance; the Ministry of Foreign Affairs, Endowments, Da'wah and Guidance; and/or the Charities' governing bodies.

**ANSWER:**

24.    Please provide all documents relating to any meetings You attended during Your tenure as a member of the Saudi Council of Ministers relating to the Charities.  Responsive documents shall include, but are not limited to, any such meetings attended by representatives of the Kingdom of Saudi Arabia, members of the Saudi royal family, and/or representatives or special advisors from the King's chambers.

**ANSWER:**

25.    Please provide all documents You received from the Charities' Finance and Auditing Departments during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the organizations' financial performance.  Responsive documents shall include, but are not limited to, annual, semi-annual, and other periodic reports of the Charities, such as annual financial reports, balance sheets, financial statements, bank account summaries, and audits.

**ANSWER:**

26.    Please provide all documents authored, generated, or drafted by You during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the organizations' financial performance. Responsive documents shall include all financial reports or executive summaries submitted by You to: the Kingdom of Saudi Arabia; members of the Saudi royal family; the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Da'wah and Guidance; the Ministry of Foreign Affairs, Endowments, Da'wah and Guidance; and/or the Charities' governing bodies, including but not limited to, the MWL Constituent Council, the MWL General Secretariat, the IIRO Executive Council (a/k/a Board of Directors), and the IIRO Executive Committee.

**ANSWER:**


27.    Please provide all documents relating to any delegation, commission, task force, or group You participated in during Your tenure as an official representative of the Charities and/or Saudi Arabian government, to assess conditions and needs both within the Kingdom of Saudi Arabia and in other foreign countries, including without limitation, Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Russia, Sudan, Somalia, Tanzania, Turkey, United States, and Yemen. Responsive documents shall include, but are not limited to, copies of Your passports, visas, or other documents authorizing Your entry into those countries.

**ANSWER:**

28.     Please provide all documents You received during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to delegations, commissions, task forces, or groups of other high-ranking representatives of the Charities and/or Saudi Arabian government, to assess conditions and needs both within the Kingdom of Saudi Arabia and in other foreign countries, including without limitation, Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Russia, Sudan, Somalia, Tanzania, Turkey, United States, and Yemen.

**ANSWER:**


29.     Please provide all documents authored, generated, or drafted by You which describe, detail, or otherwise relate to each delegation You and other high-ranking officials participated in during Your tenure as an official representative of the Charities and/or Saudi Arabian government.  Responsive documents shall include all delegation reports or executive summaries submitted by You to:  the Kingdom of Saudi Arabia; members of the Saudi royal family; the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Da'wah and Guidance; the Ministry of Foreign Affairs, Endowments, Da'wah and Guidance; and/or the Charities' governing bodies, including but not limited to, the MWL Constituent Council, the MWL General Secretariat, the IIRO Executive Council (a/k/a Board of Directors), and the IIRO Executive Committee.

**ANSWER:**

30.     Please provide all documents You received from the Charities' offices within the Kingdom of Saudi Arabia during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the operations and finances of those offices.  Responsive documents shall include, but are not limited to, annual, semi-annual, monthly and other periodic reports relating to bank accounts and statements, finances and accounting, budgets and expenditures, audits, projects and activities, donations, disbursements of financial and non-monetary aid, delegations of high-ranking Charity officials and/or representatives of the Saudi Arabian government, and employee assessments.

**ANSWER:**


31.     Please provide all documents You received from the Charities' overseas offices during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the operations and finances of those offices.   Responsive documents shall include, but are not limited to, annual, semi-annual, monthly and other periodic reports relating to bank accounts and statements, finances and accounting, budgets and expenditures, audits, projects and activities, donations, disbursements of financial and non-monetary aid, delegations of high-ranking Charity officials and/or representatives of the Saudi Arabian government, and employee assessments.

**ANSWER:**


32.     Please provide all documents You received from the Charities' offices within the Kingdom of Saudi Arabia during Your tenure as an official representative of the Charities and/or

Saudi Arabian government, which describe, detail, or otherwise relate to the potential misuse or misappropriation of funds, including but not limited to, concerns regarding financial or accounting irregularities, embezzlement, theft, or the financing of radical, extremist, or terrorist activities.

**ANSWER:**

33.     Please provide all documents You received from the Charities' overseas offices during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the potential misuse or misappropriation of funds, including but not limited to, concerns regarding financial or accounting irregularities, embezzlement, theft, or the financing of radical, extremist, or terrorist activities.

**ANSWER:**

34.     Please provide all documents authored, generated, or drafted by You during Your tenure as an official representative of the Charities and/or Saudi Arabian government, which describe, detail, or otherwise relate to the operations and finances of the Charities' offices (both within the Kingdom and overseas), including without limitation, all reports concerning the potential misuse or misappropriation of funds in those offices.  Responsive documents shall include all reports or executive summaries submitted by You to:  the Kingdom of Saudi Arabia; members of the Saudi royal family; the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Da'wah and Guidance; the Ministry of Foreign Affairs,

Endowments, Da'wah and Guidance; and/or the Charities' governing bodies, including but not limited to, the MWL Constituent Council, the MWL General Secretariat, the IIRO Executive Council (a/k/a Board of Directors), and the IIRO Executive Committee.

**ANSWER:**


35.    Please provide all annual or periodic reports generated by the Charities concerning their objectives and activities, both in English and Arabic.

**ANSWER:**


36.    Please provide all documents relating to the struggle against the Soviet occupation of Afghanistan during the 1980s, including without limitation, Your involvement and/or the involvement of the Charities.

**ANSWER:**


37.    Please provide all documents relating to Your role, and/or the role of the Charities, in providing material support or resources, directly or indirectly, to the mujahideen forces in Afghanistan in their struggle against the Soviet occupation during the 1980s. For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political, or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**

38.    Please provide all documents governing, describing, detailing, or otherwise relation to Your relationship, and the Charities' relationship, with the various mujahideen factions in and around the Afghanistan region following the Soviet-Afghan conflict.

**ANSWER:**


39.    Please provide all documents relating to Your role, and/or the role of the Charities, in providing material support or resources to the mujahideen forces or other Islamic fighters in Afghanistan, Albania, Algeria, Bosnia, Chechnya, Egypt, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Somalia, Sudan, Tanzania, Turkey, Yemen, or elsewhere, including without limitation, the support of camps in and/or around those areas, recruitment, training, transportation, lodging, the acquisition, trafficking, and/or smuggling of weapons and arms such as rockets, mortars, rifles, explosives and other bombs, and the provision of boots, tents, and uniforms.

**ANSWER:**


40.    Please provide all documents relating to the MWL's and IIRO's roles in the 1998 U.S. Embassy bombings in Kenya and Tanzania.

**ANSWER:**


41.    Please provide all documents relating to the MWL's and IIRO's roles in the plot to assassinate Pope John Paul II during a planned January 1995 visit to the Philippines and to

simultaneously attacks multiple U.S. airlines as they flew over the Pacific Ocean from Asia to the United States (the "Operation Bojinka" plot).

**ANSWER:**


42.    Please provide all documents relating to the admission by Dr. Abdullah bin Saleh al Obaid, published in *The Muslim World* (July 21-27, 1997 edition), that the MWL's funds were being funneled to extremist groups.  Responsive documents shall include, but are not limited to, all documents relating to any related investigation conducted by You, the Charities, the Kingdom of Saudi Arabia, members of the Saudi royal family, and/or any third party.

**ANSWER:**


43.    Please provide all documents relating to the United States Treasury Department's investigation and August 3, 2006 Designations of the IIRO's Philippines and Indonesia branch offices and Abd al Hamid Sulaiman al Mujil, the IIRO's Executive Director of the Eastern Province Branch "for facilitating fundraising for al Qaeda and affiliated terrorist groups" and "bankroll[ing] the al Qaida network in Southeast Asia."

**ANSWER:**


44.    Please provide all documents relating to any investigation conducted by the government of Pakistan and its subsequent determination to expel IIRO personnel after September 11, 2001.

**ANSWER:**

27

45.     Please provide all documents relating to the transfer of funds between the IIRO and Afghanistan, including without limitation, IIRO Secretary General Adnan Basha's public admission that the IIRO transferred over 264 million Saudi Riyals from Saudi officials (including the King, the Crown Prince, the Deputy Premier, the Commander of the National Guard and other members of the Saudi royal family) to Taliban controlled Afghanistan.

**ANSWER:**

46.     Please provide all documents relating to the participation of radical or extremist lecturers at IIRO summer youth camps and the IIRO's failure to implement appropriate vetting processes to prevent their participation in camps outside of the Kingdom of Saudi Arabia, as IIRO Secretary General Adnan Basha stated to U.S. officials in the document at Exhibit 1. Responsive documents shall include, but are not limited to, all materials authored, published, disseminated, and/or received by You relating to same.

**ANSWER:**

47.     Please provide all documents relating to any investigation conducted by the government of Macedonia and its subsequent determination to shut down the IIRO branch office and expel IIRO personnel from that country in 2005.

**ANSWER:**

28

48.     Please provide all documents relating to any investigation conducted by the government of Bangladesh and its subsequent determination to freeze IIRO accounts at Islami Bank Bangladesh in 2006.

**ANSWER:**


49.     Please provide all documents relating to any investigation conducted by the government of Bahrain, the Bahrain Monetary Authority, and/or the Bahraini Financial Intelligence Unit and their subsequent determination to shut down IIRO accounts at Shamil Bank of Bahrain in 2005.

**ANSWER:**


50.     Please provide all documents relating to the IIRO's role in supporting training camps in Afghanistan, Pakistan, and Kashmir, including without limitation, the transfer of any funds in support of those training camps.  For purposes of this request, term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**


51.     Please provide all documents relating to the IIRO's support for Arab fighters in Fallujah, Iraq in or around 2004.  Responsive documents shall include, but are not limited to, all

banking and financial documents identifying the account at Al Rajhi Bank used by the IIRO to solicit and receive donations.

**ANSWER:**

52.     Please provide all documents relating to the October 12, 2001 and October 17, 2001 Designations of Rabita Trust by the United States Treasury Department and United Nations respectively, for "providing logistical and financial support to al Qaida."

**ANSWER:**

53.     Please provide all documents relating to the May 6, 2004 and June 28, 2004 Designations of the Al Haramain Al Masjed al Aqsa Charity Foundation by the United States Treasury Department and United Nations respectively, for having significant financial ties to al Qaeda.

**ANSWER:**

54.     Please provide all documents relating to the 2002-2008 Designations of the Al Haramain Islamic Foundation by the United States Treasury Department, the Kingdom of Saudi Arabia, and United Nations "for providing financial and material support to al Qaida, as well as a wide range of designated terrorists and terrorist organizations."

**ANSWER:**

55.     Please provide all documents relating to any information or notification You and/or the Charities received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Charities was associated with or involved in: (1) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal, corrupt or deviant activities; or (iii) any military or terrorist activity, plot, or attack.

**ANSWER:**


56.     Please provide all documents relating to any information or notification You and/or the Charities received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Charities may have been or was engaging in conduct unrelated to the Charities' ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists, persons, or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaeda, other terrorist organizations, and/or individuals sympathetic to al Qaeda or other terrorist organizations, regardless of whether you believe such individual(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**


57.     Please provide all documents relating to any information or notification You and/or the Charities received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Charities was associated with or involved in: (i) providing funds,