Stroud v. Commissioner of Social Sec. Admin., Slip Copy (2015)

KeyCite Yellow Flag - Negative Treatment
Report and Recommendation Adopted as Modified by Stroud v. Commissioner of Social Sec., S.D.N.Y., May 6, 2015

2015 WL 2114578
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Nasheen STROUD, Plaintiff,
v.
COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.

No. 13 Civ. 3251(AT)(JCF). | Signed March 24, 2015.

### REPORT AND RECOMMENDATION

JAMES C. FRANCIS IV, United States Magistrate Judge.

*1 TO THE HONORABLE ANALISA TORRES, U.S.D.J.
Plaintiff Nasheen Stroud has filed a motion for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which the Commissioner of Social Security (the "Commissioner") has opposed. I recommend granting the motion in part.

### Background

On August 18, 2014, addressing cross-motions for judgment on the pleadings, I found that the Administrative Law Judge ("ALJ") who presided at Ms. Stroud's hearing had failed to adequately develop the record in the face of an obvious inconsistency in medical records from Ms. Stroud's treating physician, and I recommended vacating the Commissioner's decision denying the plaintiff benefits and remanding the case to the Social Security Administration ("Administration") for further proceedings. *Stroud v. Commissioner of Social Security,* No. 13 Civ. 3251, 2014 WL 4652581, at *9–10 (S.D.N.Y. Sept. 8, 2014). More specifically, the medical records revealed that Ms. Stroud's treating physician, Megan Collins, M.D., issued three conflicting evaluations of Ms. Stroud's condition on the same day. First, she "reported that Ms. Stroud's diabetes was controlled, stated that she did not think Ms. Stroud was disabled by the diabetes, and indicated that any opinion on carpal tunnel syndrome should come from a neurologist," *id.* at *4; second, she "referred Ms. Stroud to a diabetes educator on account of 'poorly controlled diabetes,'" " *id.;* and finally, on the same date, she stated on a "Multiple Impairment Questionnaire" that Ms. Stroud had "uncontrolled ... diabetes mellitus ... and carpal tunnel syndrome," which caused "severe effects ..., resulting in an extremely limited residual functional capacity," *id.* at *4, 9. I therefore recommended remand so that the ALJ could "develop [ ] the record in order to resolve the inconsistency." *Id.* at *10. The Commissioner did not object, and the Report and Recommendation was adopted in its entirety. *Id.* at *1.

Thereafter, Ms. Stroud filed this motion seeking $6,374.41 in attorneys' fees and costs. (Attorney's Affidavit and Memorandum in Support of Motion for EAJA Fees ("Pl. Fee Memo.") at 4). The Commissioner opposes the motion, contending that (1) her position that the denial of benefits should be affirmed was substantially justified; (2) certain fees that the plaintiff claims are not recoverable; and (3) the application does not meet the Second Circuit's standards for an award of attorneys' fees, which require the submission of contemporaneous time records. (Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees ("Def. Fee Memo.") at 3–11).

### Discussion

**A.** *Substantial Justification*
Under the EAJA, a party who prevails against the United States in proceedings for judicial review of agency action is entitled to attorneys' fees and certain other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. 2412(d)(1)(A). Thus,

> *2 To be entitled to statutory fees under § 2412(d) a claimant must satisfy four criteria: (1) the claimant must be a "prevailing party"; (2) the Government's position cannot be "substantially justified"; (3) no "special circumstances" exists [sic] that make an award "unjust"; and (4) the fee application is timely submitted and "supported by an itemized statement."

Exhibit B

*Harris v. Astrue,* 701 F.Supp.2d 410, 412 (E.D.N.Y.2010) (quoting *Kerin v. United States Postal Service,* 218 F.3d 185, 189 (2d Cir.2000)). The Commissioner argues only that her position was substantially justified.

A party is substantially justified "when its case ... has a reasonable basis in law and fact." *Cohen v. Bowen,* 837 F.2d 582, 585 (2d Cir.1988); *see also Pierce v. Underwood,* 487 U.S. 552, 566 n. 2 (1988) ("[W]e believe [a position] can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."). In analyzing the question of substantial justification, it is irrelevant that some of the plaintiff's arguments failed; rather the court should " 'treat[ ] a case as an inclusive whole' " and look to whether the plaintiff was "provided [ ] with the relief sought." *Rocchio v. Commissioner of Social Security,* No. 08 Civ. 3796, 2012 WL 3205056, at *3 (S.D.N.Y. Aug. 7, 2012) (quoting *Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 161–62 (1990)). Otherwise, "[t]he barrier to recovery of attorney's fees would be unreasonably high" and "might disincentivize [p]laintiff's counsel from bringing any but the most conventional arguments." *Id.*

The Commissioner appropriately focuses here on her unsuccessful argument in opposition to the plaintiff's motion for judgment on the pleadings concerning the inconsistencies in Dr. Collins' evaluations. (Def. Fee Memo. at 5–8). There, the Commissioner asserted that the ALJ considered the "glaring inconsistency between Dr. Collins' highly restrictive residual functional capacity assessment on [the Multiple Impairment Questionnaire] ... and the doctor's statement[s] in her treatment notes the same day." (Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Further Support of the Commissioner's Motion for Judgment on the Pleadings ("Def. Merits Memo.") at 8). Addressing the plaintiff's specific argument that the ALJ failed to adequately develop the record, the Commissioner contended:

> Citing a regulation that was eliminated two years ago, plaintiff also argues that the ALJ was required to recontact Dr. Collins before rejecting her opinion.... As discussed above, 20 C.F.R. §§ 404.1512(e), 416.912(e) (2011), is no longer the law, having been eliminated to give adjudicators more flexibility in determining when and how to obtain information from medical sources.

77 Fed.Reg. 10651 (Feb. 23, 2012). In any case, here there was no need to recontact Dr. Collins since no additional information was needed. See *Rosa[ v. Callahan],* 168 F.3d [72,] 79 n. 5 [ (2d Cir.1999) ].

**\*3** (Def. Merits Memo. at 11). This argument is not only incorrect, it does not have a reasonable legal basis. The Commissioner's assertion that the two regulations cited were superseded by a new rule is accurate. However, the amendment does not give the ALJ license to ignore gaps or inconsistencies in the record. Rather, it

> modif[ied] the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. Depending on the nature of the inconsistency or insufficiency, *there may be other, more appropriate sources from whom we could obtain the information we need.* By giving adjudicators more flexibility in determining *how best to obtain this information,* we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations.

How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10651–01 (Feb. 23, 2013) (emphasis added). Thus, as I noted in the Report and Recommendation, the new rule does not alter the ALJ's duty to resolve inconsistencies in a medical source's evidence, it merely allows him to seek information beyond the original medical source. See *Stroud,* 2014 WL 4652581, at *10 n. 10. The Administration's explanation, which the Commissioner herself cited, is quite clear on that point.

The footnote in *Rosa* on which the Commissioner relies is equally problematic. In that case, the ALJ had rejected a treating physician's opinion supporting the claimant's allegations of "near total disability" because "it was contradicted by the information in [the physician's] underlying notes." *Rosa,* 168 F.3d at 75–76. The Second Circuit vacated the district court's affirmance of the decision denying benefits and confirmed "that an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Id.* at 79. The court relied on *Hartnett v. Apfel,* 21 F.Supp.2d 217, 221 (E.D.N.Y.1998), for the proposition

that "if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."[1] *See Rosa,* 168 F.3d at 79. Indeed, in the cited footnote, the court contrasts the circumstance where there is an inconsistency in a medical source's notes to one "where there are no obvious gaps in the administrative records, and where the ALJ already possesses a complete medical history," in which case "the ALJ is under no obligation to seek additional information." *Id.* at 79 n. 5 (internal quotation marks omitted). Thus, *Rosa,* like the Administration's commentary on its new rule, supported Ms. Stroud's position and undermined the Commissioner's. The Commissioner's position was not, therefore, substantially justified.

---

[1] As noted above, the ALJ now has flexibility to resolve the inconsistency by recourse to sources other than the physician, herself, but the duty remains intact.

---

**B.** *Fee Calculation*

Ms. Stroud seeks fees for seven timekeepers: Howard D. Olinsky, Edward A. Wicklund, Shannon Persse, Paul B. Eaglin, Emily Tinsley, Vanessa Sena, and Michael P. Smith. (Ledger, attached as Exh. to Pl. Fee Memo.). The Commissioner objects that only Mr. Olinsky and Mr. Wicklund are "attorneys admitted to practice in New York." (Def. Fee Memo. at 9 & n. 3). The EAJA permits fees to be awarded for the work of attorneys and paralegals. *See Richlin Security Service Co. v. Chertoff,* 553 U.S. 571, 581, 588 n. 10 (2008). Mr. Olinsky, plaintiff's lead counsel, has elsewhere affirmed that he, Mr. Wicklund, and Mr. Eaglin are attorneys, and that Ms. Persse and Mr. Smith are paralegals. (Attorney's Affidavit and Memorandum in Support of Motion for EAJA Fees dated Jan. 9, 2015, ¶ 7, *Miranda v. Commissioner of Social Security,* 13 Civ. 3264 (S.D.N.Y.)). Thus, recoverable fees will be limited to these five timekeepers.

**\*4** A more serious problem is nature of the supporting documentation. Since 1983, it has been the rule in this Circuit that "any attorney ... who applies for court-ordered compensation ... must document the application with contemporaneous time records." *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983); *see also Scott v. City of New York,* 626 F.3d 130, 133 (2d Cir.2010) ("*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."). "So long as an attorney '*made contemporaneous entries as the work was completed, and ... [his] billing was based on these contemporaneous records,' Carey* is satisfied." *Marion S. Mishkin Law Office v. Lopalo,* 767 F.3d 144, 149 (2d Cir.2014) (quoting *Cruz v. Local Union No. 3, International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1160 (2d Cir.1994)).

In *Kottwitz v. Commissioner of Social Security,* a recent case in this district, Mr. Olinsky described his firm's timekeeping practices. He stated that, during much of the pendency of that case (roughly February 2014 to September 2014), his firm "did not employ a 'stopwatch and write down' method of time keeping"; although entries from certain of the firm's software programs and its document management system "represent[ ] an event and a certain amount of time expended by [ ] staff[,][ ] the time [was] not recorded." (Howard Olinsky Declaration in Support of Motion for Attorney's Fees, ¶¶ 8–10, *Kottwitz v. Commissioner of Social Security,* No. 14 Civ. 2677 (S.D.N.Y. Oct. 3, 2014) ("*Kottwitz* Decl.")). That is, although the firm had entries indicating that work on the case was performed, the records did not reflect how much time the work required. Thus, although counsel stated that the entries included in the fee petition were "a compilation of the contemporaneous records" from the relevant databases, (*Kottwitz* Decl., ¶ 10), the Honorable Sarah Netburn, U.S.M.J., characterized the firm's billing practices as attempting to "cobble together a historical account of time expended based on work records" and found that those practices were both "contrary to the legal standard" and "inadequate as a factual matter," *Kottwitz,* No. 14 Civ. 2677, 2015 WL 293821, at \*3 (S.D.N.Y. Jan. 16, 2015). Relying in the *Miranda* case on the *Kottwitz* Declaration, the Honorable P. Kevin Castel, U.S.D.J., similarly found that the firm's timekeeping practices did not comport with *Carey* and disallowed "time charges for work done prior to October 3, 2014"—the date that the *Kottwitz* Declaration was filed—but allowed charges after that date on the strength of Mr. Olinsky's representation that "his office ha[d] changed its practices and [began to use] a stopwatch feature to record time." (Order dated Feb. 18, 2015, at 2, *Miranda,* No. 13 Civ. 3264 (S.D.N.Y.) ("*Miranda* Order"), attached as exhibit to Letter of Susan D. Baird dated March 13, 2015).

**\*5** In this case, Mr. Olinsky attempts to distinguish the billing practices used for this litigation from those employed in *Kottwitz:*

> The *Kottwitz* time submittal did not indicate who did the work. The time/activity display here fully satisfied what was found to be

Exhibit B

> acceptable in *Mishkin.* We did the work, kept records in our system, won the case, charged a reasonable fee, and reported to the court our hours line by line without block billing.

(Reply to Opposition at Docket 38 to Motion for Attorney's Fees Pursuant to the Equal Access to Justice Act 28 U.S.C. § 2412 ("Reply") at 4).

The fact that the submission here identifies the timekeeper for each time entry does not, by itself, satisfy the requirements of *Carey* or *Mishkin.* Indeed, *Mishkin* reaffirmed that fee applications must be accompanied by "contemporaneous records of the date, *the hours expended,* and the nature of the work," and indicated that supporting documentation based on such records—such as transcriptions of complete, accurate, and contemporaneous time records—is acceptable. *Mishkin,* 767 F.3d at 149 (emphasis added) (internal quotation marks omitted). The time-keeping practices used in *Kottwitz,* which consisted of estimations of time spent on tasks reconstructed from imprecise records, are not acceptable merely because a particular attorney or paralegal is now associated with each task.[2]

[2] Ms. Stroud cites *Securities and Exchange Commission v. Smith,* 798 F.Supp.2d 412, 439 (N.D.N.Y.2011), to argue that contemporaneous time records are not, in all situations, necessary. (Reply at 5). In that case, the court awarded attorneys' fees to the SEC as a sanction for an intentional misrepresentation to the court. *Id.* at 422–36. The court noted that the SEC did not regularly keep contemporaneous time records, but nevertheless assessed estimated fees against one of the defendants. *Id.* at 439. The case is inapposite. Mr. Olinsky is an experienced Social Security practitioner who should have known that contemporaneous time records are required for fee applications except in the rarest of circumstances. See *Scott,* 626 F.3d at 134.

Mr. Olinsky admits here that it was not until "the Government first began to challenge [his] firm's record keeping in *Kottwitz,* [that his] firm [ ] unlocked a software feature ... which employs a stopwatch feature to track the hours working on any task." (Reply at 6; *Kottwitz* Decl., ¶ 11 ("Our [software] vendor has now activated a previously hidden ledger tab which contains a stopwatch feature which is currently in use at our firm....")). The Commissioner opposed the fee application in *Kottwitz* on August 29, 2014.

Therefore, fees incurred after that date are compensable. (Reply at 6 (asserting new billing system began in August 2014)). There are six compensable billing entries for work performed after August 29, 2014. Mr. Olinsky performed 1.25 hours of work; Mr. Wicklund performed 0.2 hours of work; and Mr. Smith performed 0.4 hours of work. (Ledger at 2). The claimed rate of $192.29 per hour for attorneys (Pl. Fees Memo. at 2) is reasonable. And I agree with Judge Castel that a rate of $100 per hour for paralegals is appropriate. (*Miranda* Order at 2). Ms. Stroud is therefore entitled to $318.82 in fees.

*Conclusion*

For these reasons, I recommend granting in part the plaintiff's application (Docket no. 35) and awarding her $318.82 in attorneys' fees under the Equal Access to Justice Act. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

**All Citations**

Slip Copy, 2015 WL 2114578

Exhibit B