# BERNABEI & WACHTEL, PLLC

ATTORNEYS AT LAW

1775 T STREET, N.W.

WASHINGTON, D.C. 20009

LYNNE BERNABEI  
DAVID WACHTEL  
ALAN R. KABAT

202.745.1942  
FAX: 202.745.2627  
WWW.BERNABEIPLLC.COM

PETER M. WHELAN  
LAUREN R. S. MENDONSA  
KAREN TANENBAUM

By ECF  
September 30, 2015

Honorable Frank Maas  
U.S. District Court for the Southern District of New York  
Daniel P. Moynihan United States Courthouse  
500 Pearl Street  
New York, NY 10007-1312

Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

Defendant Soliman Al-Buthe respectfully submits his opposition to the Plaintiffs' Motion to Compel (ECF No. 2990) (Aug. 10, 2015).

### I.   Summary of Argument.

The motion to compel should be denied for failure to comply with the meet-and-confer requirements of Rule 37(a)(1), Fed. R. Civ. P.  If counsel for Plaintiffs had attempted to confer with counsel for Mr. Al-Buthe, they would have learned that all relevant and responsive documents have already been produced by Al Haramain Islamic Foundation, Inc. ("Al Haramain USA") – which has produced over 58,000 pages of documents and over 24,000 emails – and that Mr. Al-Buthe does not have any other relevant, non-privileged documents to be produced.  Thus, the motion to compel was unnecessary, as there is no basis to compel the production of documents that have already been produced.

Further, if Plaintiffs' counsel had complied with their meet-and-confer obligations, undersigned counsel could have explained why many of the Plaintiffs' document requests sought information that goes beyond the limited scope of jurisdictional discovery permitted under the Second Circuit's decision.  There is no justification for seeking discovery that is not relevant to determining whether this Court can exercise personal jurisdiction over Mr. Al-Buthe, who currently serves as the Deputy Mayor for Municipal Services in Riyadh.

## II. The Second Circuit's Limited Scope of Jurisdictional Discovery.

As a threshold matter, Mr. Al-Buthe is only subject to limited, jurisdictional discovery, not broader merits discovery. The Second Circuit's remand to this Court made clear that he, and several other "Charity Official defendants," were to be remanded for the limited purpose of jurisdictional discovery to address the following carefully circumscribed issues:

(a) Whether they "allegedly controlled and managed some of those charitable organizations;"

(b) Whether, "through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States;"

(c) Whether they "*directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States;"

(d) "Whether this support was 'expressly aimed' at the United States;" and

(e) "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda."

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 678-79 (2d Cir. 2013) (emphasis in original), *cert. denied*, 113 S. Ct. 2870 (2014). Moreover, the Second Circuit reiterated the law of the case that "foreseeability is not the standard for recognizing personal jurisdiction. Rather, the plaintiffs must establish that [defendants] 'expressly aimed' intentional tortious acts at residents of the United States." *Id.* at 675 (quoting *In re Terrorist Attacks III*, 538 F.3d 71, 95 (2d Cir. 2008)); *accord Laydon v. Mizuho Bank Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *2 (S.D.N.Y. Mar. 31, 2015) (same). Thus, the exercise of personal jurisdiction under a specific jurisdiction theory requires "no less than a 'but for' connection between the defendant's forum-directed activities and the claim." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015).

It is through that narrow framework that the Plaintiffs' discovery requests, and their motion to compel, must be analyzed. The Second Circuit did not allow Plaintiffs to conduct wide-ranging merits discovery into every aspect of Mr. Al-Buthe's life, since such discovery is

not needed to address whether this Court can exercise personal jurisdiction over him. Plaintiffs' motion to compel fails to explain how the requested discovery is specifically tailored to these five narrowly-defined categories set forth in the Second Circuit's decision. Nor could the Plaintiffs proffer any such justification, as discovery about unrelated persons and entities that even plaintiffs have never alleged had anything to do with the September 11 attacks (such as Data Pact and Midway Networks), would have no bearing on this Court's analysis of the five limited categories. Instead, Plaintiffs' motion to compel impermissibly argues that Plaintiffs are entitled to conduct a fishing expedition that is equivalent to merits discovery.

### III. AHIF-USA's Production of Documents.

Plaintiffs served voluminous discovery requests on Al Haramain USA in October 2003, and subsequently served Mr. Al-Buthe with "jurisdictional" requests that overlapped with those served on Al Haramain USA, and included numerous other requests about unrelated individuals and entities that were not identified in the complaints. Al Haramain USA produced an initial tranche of some 4,153 pages of documents in 2004, but since the U.S. government had seized all of Al Haramain USA's documents and computers (including those used by Perouz Sedaghaty), Al Haramain USA could only produce those documents that Mr. Sedaghaty had provided to his counsel in 2003 before he went overseas, and other documents received from Mr. Al-Buthe. *See* Declaration of Alan R. Kabat, at ¶¶ 2-3 (Sept. 30, 2015) (attached and incorporated hereto). Al Haramain USA supplemented that production in January 2011. *Id.* at ¶ 3.

In March 2013, while Mr. Sedaghaty's conviction was on appeal to the Ninth Circuit (*infra*), this Court granted Plaintiffs' demand that Al Haramain USA produce all documents and emails that had been seized by the U.S. government in February 2004 and returned years later, or that were otherwise used at Mr. Sedaghaty's trial. *See* Order (ECF No. 2707) (Mar. 20, 2013). In response, Al Haramain USA produced (1) some 43,700 pages of seized documents; (2) over 8,700 pages of documents produced to the grand jury and subsequently released; (3) over 1,400 pages of trial exhibits; and (4) approximately 24,000 emails from its computers. *See* Kabat Declaration, at ¶ 4.

### IV. The Ninth Circuit Vacated Mr. Sedaghaty's Conviction and the Government Agreed to Dismiss with Prejudice the Indictment Against Him.

In 2005, the U.S. government indicted Al Haramain USA, Mr. Sedaghaty, and Mr. Al-Buthe. *See United States v. Al Haramain Islamic Foundation, Inc., et al.*, Indictment, No. 05-CR-60008 (ECF No. 1) (D. Or. Feb. 17, 2005). The indictment did not allege any violations of the Anti-Terrorism Act or any other terrorism-related statute. *Id.* Instead, it brought three counts for (1) conspiracy to defraud the IRS, 18 U.S.C. § 371; (2) filing of a false return by a tax-exempt organization, 26 U.S.C. § 7206(1); and (3) failure to file a report of international

transport of currency, 31 U.S.C. § 5316(a)(1)(A), the last against Mr. Al-Buthe alone. *Id.* The government readily agreed to dismiss Al Haramain USA, leading to the filing of an Amended Indictment that made no mention of it as a defendant. *See United States v. Sedaghaty*, Amended Indictment, No. 05-CR-60008 (ECF No. 22) (D. Or. Sept. 21, 2005). Mr. Sedaghaty voluntarily returned to the United States, and his trial took place in August 2010, leading to a conviction.

In 2013, the Ninth Circuit vacated the conviction of Mr. Sedaghaty, holding that multiple errors required reversal. *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013).

First, the Ninth Circuit recognized that:

> The only direct evidence about Seda's desire to fund the [Chechen] mujahideen, came from Barbara Cabral, a witness who the prosecution showcased as critical. Despite a defense request, the government withheld material, significant, and non-cumulative impeachment evidence about Cabral, including government payments and interview notes.

*Id.* at 898. Further, the undisclosed interview notes revealed key inconsistencies between what the government's key witness told the FBI agents prior to trial and her testimony at trial:

> Taken together with the substantive issues described above, the undisclosed material would have allowed the defense to paint a picture of, at best, a witness whose shaky recollection was influenced by her gratitude to the FBI for its financial assistance; at worst, a witness making up a story to obtain money for medical bills, with the FBI revising its materials to match her anticipated testimony. Either story could have had a substantial impact on the jury.

*Id.* at 901. This *Brady* violation alone required reversal and a new trial. *Id.* at 898-903.

Second, the Ninth Circuit held that the government's production of summaries of the classified evidence (under CIPA) was an inadequate substitute for access to the classified evidence itself, particularly as it did not include a summary of classified information that was exculpatory or otherwise favorable to Mr. Sedaghaty. *Id.* at 903-07.

Finally, the Ninth Circuit held that a remand was necessary to determine whether the government's seizure of all of Al Haramain USA's documents, including items beyond the scope of the search warrant, was overbroad and not in good faith, therefore requiring suppression of improperly seized evidence. *Id.* at 910-15.

Honorable Frank Maas
September 30, 2015
Page 5 of 8

Although the government sought additional time to consider whether to seek rehearing *en banc*, the government later abandoned that request after the Solicitor General "determined that the government should not seek further review of this Court's opinion." *See United States v. Sedaghaty*, No. 11-30342, Letter to the Clerk (ECF No. 77) (9th Cir. Nov. 4, 2013).

On remand, the government agreed to dismiss the indictment with prejudice as to Mr. Sedaghaty, pursuant to Rule 48(a), Fed. R. Crim. P., instead of conducting a new trial. *See United States v. Sedaghaty*, Motion to Dismiss, No. 06-CR-60005 (ECF No. 659) (D. Or. July 29, 2014); Order of Dismissal, No. 05-CR-60005 (ECF No. 660) (July 29, 2014). Thus, as of July 2014, the government abandoned any further prosecution of Mr. Sedaghaty.

The government's abandonment of the prosecution of Mr. Sedaghaty confirms that the government was unable to prove that he committed any support of terrorism. Moreover, the U.S. government has never charged either Mr. Sedaghaty or Mr. Al-Buthe with any terrorism offenses, and has made no attempt to do so. It is unclear how Plaintiffs – who lack the resources, including classified evidence, that the government had – would be able to prove any of their terrorism claims against either Mr. Sedaghaty or Mr. Al-Buthe, when the government did not and could not do so as to Mr. Sedaghaty.

V.     **The United Nations' Delisting of Mr. Al-Buthe.**

As this Court is aware, Mr. Al-Buthe was designated by both the Office of Foreign Assets Control (OFAC), U.S. Department of the Treasury and by the United Nations, based upon his alleged connections with Al Qaeda through his involvement with Al Haramain USA.

Recently, as Plaintiffs had to admit, the United Nations formally delisted both Al Haramain USA and Mr. Al-Buthe, because United Nations recognized that there was no basis for continuing to list either as an alleged terrorist or supporter of terrorism. Moreover, the U.S. government has agreed to delist Al Haramain USA. The denial of Al Haramain USA's motions to dismiss turned in part on the fact that it was a designated entity or connected with other designated entities. *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 520 (S.D.N.Y. 2010); *Burnett v. Al Baraka Investment & Devel. Corp.*, 274 F. Supp. 2d 86, 104 (D.D.C. 2003).

Therefore, the fact that Mr. Al-Buthe and Al Haramain USA are no longer designated by the United Nations, and that Al Haramain USA is to be delisted by the U.S. government, removes these designations as a basis for imposing liability on these defendants, and as a basis for exercising personal jurisdiction over Mr. Al-Buthe. Thus, the designations, including the recent delistings, are not a legitimate basis for jurisdictional discovery as to Mr. Al-Buthe.

### VI. Plaintiffs' Failure to Comply with Rule 37(a)(1).

This Court should deny the motion to compel, given Plaintiffs' inexcusable failure to comply with Rule 37(a)(1), Fed. R. Civ. P., which expressly provides that:

> The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*See* Rule 37(a)(1), Fed. R. Civ. P. Here, had counsel for Plaintiffs made any attempt to discuss their document requests with counsel for Mr. Al-Buthe, they would have readily learned that he had <u>no</u> relevant, non-privileged documents beyond the over 58,000 pages of documents and the over 24,000 emails that Al Haramain USA had already produced.

Further, at a meet-and-confer, counsel for Mr. Al-Buthe could have explained how the remaining categories of documents sought by Plaintiffs are not relevant to the limited scope of jurisdictional discovery as set forth in the Second Circuit's decision.

The purpose of this rule (formerly codified as Rule 37(a)(2)), is to narrow the scope of the dispute by giving the parties the opportunity to discuss the relevancy of the discovery requests and the legal or factual basis for the objections.

In order to comply with this rule, the parties must have a "live exchange of ideas and opinions," not merely an exchange of letters. *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998). As Magistrate Judge Francis explained:

> The meet-and-confer requirement mandates that parties actually "meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention."

*Id.* at *2-*3 (quoting *Deckon v. Chidebere*, No. 93 Civ. 7845 (LMM)(BAL), 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994)). The requisite certification must provide sufficient specificity as to these communications:

> To satisfy the meet-and-confer requirement, Prescient [movant] had to provide an account of a "live exchange of ideas and opinions," including details such as the positions taken by each side, the extent to which the parties compromised their positions, and why

the negotiations proved fruitless.

*Id.* at *4 (denying motion to compel).

The courts in this jurisdiction have consistently denied motions to compel where, as here, the movant made no effort (or an insufficient effort) to comply with this express requirement. *See*, *e.g.*, *Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) ("Accordingly, the plaintiff's motion is denied on that ground."); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW)(HBP), 2006 WL 2637836, at *7 (S.D.N.Y. Sept. 12, 2006) ("This deficiency alone is a sufficient ground for denying the motion."); *Prescient Partners*, 1998 WL 67672, at *3 ("Under ordinary circumstances, however, the failure to meet and confer mandates denial of a motion to compel."). Further, under Rule 37(a)(5)(B), attorneys' fees and expenses can be awarded to the party opposing a motion to compel where, as here, the movant failed to meet-and-confer before filing the motion. *Wiwa*, 2006 WL 2637836, at *9 (awarding attorneys' fees to party opposing the motion to compel).

Here, counsel for Plaintiffs did nothing more than make some off-the-cuff remarks over the telephone during a status conference. This was patently insufficient to satisfy Rule 37's meet-and-confer requirements, particularly where, as here, counsel for Plaintiffs never followed up on their off-the-cuff remarks. If counsel for Plaintiffs had conducted the requisite meet-and-confer, they would have learned that Mr. Al-Buthe had no relevant, non-privileged documents beyond those already produced by Al Haramain USA, and that the remaining document requests sought documents that were not relevant to the limited scope of jurisdictional discovery, so that there was no basis for filing a motion to compel as to him. This failure to comply with Rule 37(a)(1) is a sufficient basis for denying the motion to compel.

### VII. This Court Cannot Compel the Production of Documents That Have Already Been Produced by Al Haramain USA, or That Otherwise Do Not Exist.

Even if this Court were to excuse the Plaintiffs' failure to make any meaningful attempt to comply with Rule 37(a)(1), it must still deny the motion to compel, for the simple reason that Mr. Al-Buthe has no further responsive, non-privileged documents that have not already been produced by Al Haramain USA, and that are relevant to the limited scope of jurisdictional discovery permitted by the Second Circuit's remand decision.

It would be a waste of judicial resources for this Court to consider whether Mr. Al-Buthe should be compelled to produce certain documents when (a) the responsive, non-privileged documents that exist have already been produced in discovery by Al Haramain USA, *see* Kabat Dec., at ¶¶ 1-6; and (b) Mr. Al-Buthe has no other relevant, non-privileged documents that could

Honorable Frank Maas
September 30, 2015
Page 8 of 8

be produced <u>and</u> that fall within the scope of the jurisdictional discovery permitted by the Second Circuit.  The district courts in the Second Circuit have consistently held that a motion to compel should be denied in such circumstances.  *See*, *e.g.*, *Guillory v. Skelly*, No. 12-CV-00847S(F), 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) (denying motion to compel as to non-existent documents, since "an attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document"); *American Banana Co. v. Republic National Bank of N.Y.*, No. 99 Civ. 1330 (AGS), 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) ("the court cannot compel production of what does not exist"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) (denying motion to compel non-existent documents, or documents that "were already produced to BNY"); *Doe I v. Karadzic*, No. 93 Civ. 878 (PKL)(HBP), 1997 WL 45515, at *6 (S.D.N.Y. Feb. 4, 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production.") (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).

This Court need go no further, as there is no basis for seeking documents from Mr. Al-Buthe that he does not have in the first place, or that have already been produced in discovery by Al Haramain USA, or that are not relevant to jurisdictional discovery, so that the motion to compel should be denied.

### VIII.  Conclusion.

For the foregoing reasons, this Court should deny the Plaintiffs' Motion to Compel.  Had counsel for Plaintiffs made any effort to comply with Rule 37(a)(1), they would have learned that the document requests to Mr. Al-Buthe sought documents that Al Haramain USA had already produced, or otherwise sought documents that Mr. Al-Buthe does not have, or that are not relevant to jurisdictional discovery, so that there was no basis for filing a motion to compel.

Sincerely,

*/s/ Alan R. Kabat*

Alan R. Kabat

Enc.

cc:  MDL-1570 Counsel of Record
       (by ECF)