**BERNABEI & WACHTEL, PLLC**

ATTORNEYS AT LAW

**1775 T STREET, N.W.**

WASHINGTON, D.C. 20009

| | | |
|---|---|---|
| **LYNNE BERNABEI** | **202.745.1942** | **PETER M. WHELAN** |
| **DAVID WACHTEL** | **FAX: 202.745.2627** | **LAUREN R. S. MENDONSA** |
| **ALAN R. KABAT** | WWW.BERNABEIPLLC.COM | **KAREN TANENBAUM** |

<u>By ECF</u>
September 30, 2015

Honorable Frank Maas
U.S. District Court for the Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

Defendant Perouz Sedaghaty respectfully submits his opposition to the Plaintiffs' Motion to Compel (ECF No. 2991) (Aug. 10, 2015).

    **I.**    <u>**Summary of Argument.**</u>

The motion to compel should be denied for failure to comply with the meet-and-confer requirements of Rule 37(a)(1), Fed. R. Civ. P. If counsel for Plaintiffs had attempted to confer with counsel for Mr. Sedaghaty, they would have learned that all relevant and responsive documents have already been produced by Al Haramain Islamic Foundation, Inc. ("Al Haramain USA") – which has produced over 58,000 pages of documents and over 24,000 emails – and that Mr. Sedaghaty does not have any other relevant, non-privileged documents to be produced. Thus, the motion to compel was entirely unnecessary, as there is no basis to compel the production of documents that have already been produced.

    **II.**    <u>**AHIF-USA's Production of Documents.**</u>

Plaintiffs served voluminous discovery requests on Al Haramain USA in October 2003, and subsequently served Mr. Sedaghaty with discovery requests that largely overlapped with those served on Al Haramain USA. Al Haramain USA produced an initial tranche of some 4,153 pages of documents in 2004, but since the U.S. government had seized all of Al Haramain

Honorable Frank Maas
September 30, 2015
Page 2 of 7

USA's documents and computers (including those used by Mr. Sedaghaty), Al Haramain USA could only produce those documents that Mr. Sedaghaty had provided to his counsel in 2003 before he went overseas, and other documents received from Soliman Al-Buthe. *See* Declaration of Alan R. Kabat, at ¶¶ 2-3 (Sept. 30, 2015) (attached and incorporated hereto). Al Haramain USA supplemented that production in January 2011. *Id.* at ¶ 3.

In March 2013, while Mr. Sedaghaty's conviction was on appeal to the Ninth Circuit (*infra*), this Court granted Plaintiffs' demand that Al Haramain USA produce all documents and emails that had been seized by the U.S. government in February 2004 and returned years later, or that were otherwise used at Mr. Sedaghaty's trial. *See* Order (ECF No. 2707) (Mar. 20, 2013). In response, Al Haramain USA produced (1) some 43,700 pages of seized documents; (2) over 8,700 pages of documents produced to the grand jury and subsequently released; (3) over 1,400 pages of trial exhibits; and (4) approximately 24,000 emails from its computers. *See* Kabat Declaration, at ¶ 4.

Mr. Sedaghaty was unable to produce any additional documents on his own part, since he was overseas from 2003 through August 2007, and did not have access to Al Haramain USA's documents after the government seized them in February 2004, *id.* at ¶ 6; it was not until his trial was over that their production by Al Haramain USA was authorized. Moreover, the only relevant documents relating to his involvement with Al Haramain USA were those produced by Al Haramain USA itself. *Id.* Thus, Mr. Sedaghaty has no additional non-privileged documents relating to Al Haramain USA that could be produced in discovery. *Id.*

### III. The Ninth Circuit Vacated Mr. Sedaghaty's Conviction and the Government Agreed to Dismiss with Prejudice the Indictment Against Him.

In 2005, the U.S. government indicted Al Haramain USA, Mr. Sedaghaty, and Mr. Al-Buthe. *See United States v. Al Haramain Islamic Foundation, Inc., et al.*, Indictment, No. 05-CR-60008 (ECF No. 1) (D. Or. Feb. 17, 2005). The indictment did not allege any violations of the Anti-Terrorism Act or any other terrorism-related statute. *Id.* Instead, it brought three counts for (1) conspiracy to defraud the IRS, 18 U.S.C. § 371; (2) filing of a false return by a tax-exempt organization, 26 U.S.C. § 7206(1); and (3) failure to file a report of international transport of currency, 31 U.S.C. § 5316(a)(1)(A), the last against Mr. Al-Buthe alone. *Id.* The government readily agreed to dismiss Al Haramain USA, leading to the filing of an Amended Indictment that made no mention of it as a defendant. *See United States v. Sedaghaty*, Amended Indictment, No. 05-CR-60008 (ECF No. 22) (D. Or. Sept. 21, 2005). Mr. Sedaghaty voluntarily returned to the United States, and his trial took place in August 2010, leading to a conviction.

In 2013, the Ninth Circuit vacated the conviction of Mr. Sedaghaty, holding that multiple errors required reversal. *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013).

First, the Ninth Circuit recognized that:

> The only direct evidence about Seda's desire to fund the [Chechen] mujahideen, came from Barbara Cabral, a witness who the prosecution showcased as critical. Despite a defense request, the government withheld material, significant, and non-cumulative impeachment evidence about Cabral, including government payments and interview notes.

*Id.* at 898. Further, the undisclosed interview notes revealed key inconsistencies between what the government's key witness told the FBI agents prior to trial and her testimony at trial:

> Taken together with the substantive issues described above, the undisclosed material would have allowed the defense to paint a picture of, at best, a witness whose shaky recollection was influenced by her gratitude to the FBI for its financial assistance; at worst, a witness making up a story to obtain money for medical bills, with the FBI revising its materials to match her anticipated testimony. Either story could have had a substantial impact on the jury.

*Id.* at 901. This *Brady* violation alone required reversal and a new trial. *Id.* at 898-903.

Second, the Ninth Circuit held that the government's production of summaries of the classified evidence (under CIPA) was an inadequate substitute for access to the classified evidence itself, particularly as it did not include a summary of classified information that was exculpatory or otherwise favorable to Mr. Sedaghaty. *Id.* at 903-07.

Finally, the Ninth Circuit held that a remand was necessary to determine whether the government's seizure of all of Al Haramain USA's documents, including items beyond the scope of the search warrant, was overbroad and not in good faith, therefore requiring suppression of improperly seized evidence. *Id.* at 910-15.

Although the government sought additional time to consider whether to seek rehearing *en banc*, the government later abandoned that request after the Solicitor General "determined that the government should not seek further review of this Court's opinion." *See United States v. Sedaghaty*, No. 11-30342, Letter to the Clerk (ECF No. 77) (9th Cir. Nov. 4, 2013).

On remand, the government agreed to dismiss the indictment with prejudice as to Mr. Sedaghaty, pursuant to Rule 48(a), Fed. R. Crim. P., instead of conducting a new trial. *See United States v. Sedaghaty*, Motion to Dismiss, No. 06-CR-60005 (ECF No. 659) (D. Or. July 29, 2014); Order of Dismissal, No. 05-CR-60005 (ECF No. 660) (July 29, 2014). Thus, as of July 2014, the government abandoned any further prosecution of Mr. Sedaghaty.

The government's abandonment of the prosecution of Mr. Sedaghaty confirms that the government was unable to prove that he committed any support of terrorism. Moreover, the U.S. government has never charged either Mr. Sedaghaty or Mr. Al-Buthe with any terrorism offenses, and has made no attempt to do so. It is unclear how Plaintiffs – who lack the resources, including classified evidence, that the government had – would be able to prove any of their terrorism claims against either Mr. Sedaghaty or Mr. Al-Buthe, when the government did not and could not do so as to Mr. Sedaghaty.

### IV.   Plaintiffs' Failure to Comply with Rule 37(a)(1).

This Court should deny the motion to compel, given Plaintiffs' inexcusable failure to comply with Rule 37(a)(1), Fed. R. Civ. P., which expressly provides that:

> The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*See* Rule 37(a)(1), Fed. R. Civ. P. Here, had counsel for Plaintiffs made any attempt to discuss their document requests with counsel for Mr. Sedaghaty, they would have readily learned that he had <u>no</u> relevant, non-privileged documents beyond the over 58,000 pages of documents and the over 24,000 emails that Al Haramain USA had already produced. Thus, there was nothing further that he could produce, so that there was no basis for the motion to compel.

The purpose of this rule (formerly codified as Rule 37(a)(2)), is to narrow the scope of the dispute by giving the parties the opportunity to discuss the relevancy of the discovery requests and the legal or factual basis for the objections.

In order to comply with this rule, the parties must have a "live exchange of ideas and opinions," not merely an exchange of letters. *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998). As Magistrate Judge Francis explained:

> The meet-and-confer requirement mandates that parties actually "meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention."

*Id.* at *2-*3 (quoting *Deckon v. Chidebere*, No. 93 Civ. 7845 (LMM)(BAL), 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994)). The requisite certification must provide sufficient specificity as

to these communications:

> To satisfy the meet-and-confer requirement, Prescient [movant] had to provide an account of a "live exchange of ideas and opinions," including details such as the positions taken by each side, the extent to which the parties compromised their positions, and why the negotiations proved fruitless.

*Id.* at *4 (denying motion to compel).

The courts in this jurisdiction have consistently denied motions to compel where, as here, the movant made no effort (or an insufficient effort) to comply with this express requirement. *See*, *e.g.*, *Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) ("Accordingly, the plaintiff's motion is denied on that ground."); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW)(HBP), 2006 WL 2637836, at *7 (S.D.N.Y. Sept. 12, 2006) ("This deficiency alone is a sufficient ground for denying the motion."); *Prescient Partners*, 1998 WL 67672, at *3 ("Under ordinary circumstances, however, the failure to meet and confer mandates denial of a motion to compel."). Further, under Rule 37(a)(5)(B), attorneys' fees and expenses can be awarded to the party opposing a motion to compel where, as here, the movant failed to meet-and-confer before filing the motion. *Wiwa*, 2006 WL 2637836, at *9 (awarding attorneys' fees to party opposing the motion to compel).

Here, counsel for Plaintiffs did nothing more than make some off-the-cuff remarks over the telephone during a status conference. This was patently insufficient to satisfy Rule 37's meet-and-confer requirements, particularly where, as here, counsel for Plaintiffs never followed up on their off-the-cuff remarks. If counsel for Plaintiffs had conducted the requisite meet-and-confer, they would have learned that Mr. Sedaghaty had no relevant, non-privileged documents beyond those already produced by Al Haramain USA, so that there was no basis for filing a motion to compel as to him. This failure to comply with Rule 37(a)(1) is a sufficient basis for denying the motion to compel.

### V. This Court Cannot Compel the Production of Documents That Have Already Been Produced by Al Haramain USA, or That Otherwise Do Not Exist.

Even if this Court were to excuse the Plaintiffs' failure to make any meaningful attempt to comply with Rule 37(a)(1), it must still deny the motion to compel, for the simple reason that Mr. Sedaghaty has no further responsive, non-privileged documents that have not already been produced by Al Haramain USA.

It would be a waste of judicial resources for this Court to consider whether Mr. Sedaghaty should be compelled to produce certain documents when (a) the responsive, non-privileged documents that exist have already been produced in discovery by Al Haramain USA; and (b) Mr. Sedaghaty has no other relevant, non-privileged documents that could be produced. *See* Kabat Dec., at ¶¶ 1-6. The district courts in the Second Circuit have consistently held that a motion to compel should be denied in such circumstances. *See*, *e.g.*, *Guillory v. Skelly*, No. 12-CV-00847S(F), 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) (denying motion to compel as to non-existent documents, since "an attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document"); *American Banana Co. v. Republic National Bank of N.Y.*, No. 99 Civ. 1330 (AGS), 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) ("the court cannot compel production of what does not exist"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) (denying motion to compel non-existent documents, or documents that "were already produced to BNY"); *Doe I v. Karadzic*, No. 93 Civ. 878 (PKL)(HBP), 1997 WL 45515, at *6 (S.D.N.Y. Feb. 4, 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production.") (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).

This Court need go no further, as there is no basis for seeking documents from Mr. Sedaghaty that either he does not have in the first place, or that have already been produced in discovery by Al Haramain USA, so that the motion to compel should be denied.

### VI. Plaintiffs' July 31, 2012 Supplemental Document Requests Were Untimely.

Finally, this Court should not consider Plaintiffs' attempt to serve untimely "supplemental" document requests on July 31, 2012. As a threshold matter, this Court directed that: "By December 10, 2010, the parties shall serve their document requests." *See* Order (ECF No. 2381) (Oct. 28, 2010). Subsequently, this Court set the deadline for completion of document production as August 30, 2012. *See* Order (ECF No. 2614) (June 1, 2012). Here, the July 31, 2012 requests, which came over 1.5 years after the December 10, 2010 deadline, would not have allowed production to be completed prior to the discovery cut-off date. *Nicaj v. City of New York*, No. 14-CV-4215 (AT)(JLC), 2015 WL 2152705, at *2 (S.D.N.Y. May 6, 2015) ("Generally, discovery requests are to be made sufficiently inside the discovery period to allow for a response prior to the discovery cut-off date."); *Jones v. Hirschfeld*, No. 01-CV-7585 (PKL), 2003 WL 21415323, at *4 n.13 (S.D.N.Y. June 19, 2003) (same; "Discovery requests which are served too late in the discovery period to allow for a timely response have been disallowed").

While this Court, in 2013, *subsequently* allowed limited follow-up document requests based upon newly acquired information or to follow-up the prior production, plaintiffs did not seek leave to have their untimely 2012 document requests as to Mr. Sedaghaty be included

within that narrow window for additional discovery – nor could they. The "supplemental" document requests were not based upon information acquired subsequent to 2010, nor did they follow-up on issues newly identified from Al Haramain USA's prior production.

Moreover, if counsel for Plaintiffs had attempted to comply with their meet-and-confer obligations before filing the present motion to compel, undersigned counsel could have explained how the document requests that were specifically relevant to this litigation were already encompassed by Al Haramain USA's document production, *supra*, or otherwise requested documents that Mr. Sedaghaty did not have.

### VII. Conclusion.

For the foregoing reasons, this Court should deny the Plaintiffs' Motion to Compel. Had counsel for Plaintiffs made any effort to comply with Rule 37(a)(1), they would have learned that the document requests to Mr. Sedaghaty sought documents that Al Haramain USA had already produced, or otherwise sought documents that Mr. Sedaghaty does not have, so that there was no basis for filing a motion to compel.

Sincerely,

*/s/ Alan R. Kabat*

Alan R. Kabat

Enc.

cc: MDL-1570 Counsel of Record
(by ECF)