# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks on September 11, 2001

03 MDL 1570 (GBD)(FM)

DECLARATION OF PROFESSOR
JIMMY GURULÉ

I, Professor Jimmy Gurulé, under penalties as provided by law, declare that the statements set forth in this Declaration are true and correct. I am over the age of 21 and have personal knowledge of the facts as set forth herein.

## I. Background

1. My expertise is described more completely in paragraphs 2 – 8 below and in my *curriculum vitae*, which is attached hereto as Exhibit A. In summary, I am a former Under Secretary (Enforcement) of the U.S. Department of Treasury, where I was the Treasury Department's official responsible for overseeing its Office of Foreign Asset Control ("OFAC") in administering and enforcing the United States' economic sanctions policies and programs. Presently I am a full professor of law at Notre Dame Law School, where I have taught courses in Criminal Law, White Collar Crime, International Criminal Law, and the Law of Terrorism. As a law professor since 1989, I have taught courses, conducted research, published scholarly articles and books, and lectured domestically and internationally on the subjects of anti-money laundering and countering the financing of terrorism.

2. In my capacity as Under Secretary for Enforcement, U.S. Department of the Treasury, from 2001-2003, I had oversight responsibility for several major federal law enforcement agencies, including the U.S. Secret Service; U.S. Customs Service; Bureau of Alcohol, Tobacco and

Firearms; Executive Office of Asset Forfeiture; Financial Crimes Enforcement Network (FinCEN); and the Office of Foreign Assets Control (OFAC). The U.S. Customs Service (now part of the Department of Homeland Security and known as Immigration and Customs Enforcement) conducts complex money laundering investigations. FinCEN is the federal agency responsible for enforcing the Bank Secrecy Act (31 U.S.C. § 5311 et seq), and OFAC administers and enforces the United States' economic sanctions policies and programs, including those imposed under Executive Order No. 13224 ("E.O. 13224"), blocking property and prohibiting transactions with persons who commit, threaten to commit, or support terrorism.

3. While Under Secretary of the Treasury, I played a central role in developing and implementing the U.S. Government's anti-terrorist financing strategy. Among other things, I was responsible for drafting the 2001 and 2002 National Money Laundering Strategy (NMLS). The NMLS is intended to prioritize, focus, and coordinate the U.S. Government's resources used to combat money laundering and terrorist financing. Several federal agencies, bureaus and offices are involved in developing and implementing the NMLS, including: the U.S. Department of the Treasury; U.S. Department of Justice; U.S. Department of State; Federal Bureau of Investigation; Drug Enforcement Administration; Federal Deposit Insurance Corporation; Federal Reserve Board; FinCEN; OFAC; Internal Revenue Service; Office of the Comptroller of the Currency; Office of Thrift Supervision; Immigration and Custom Enforcement; U.S. Postal Inspection Service; U.S. Secret Service; Office of National Drug Control Policy; U.S. Securities and Exchange Commission; and Treasury Department Executive Office of Asset Forfeiture.

4. As a component of my role in developing and implementing the U.S. Government's anti-terrorist financing strategy, I had responsibility as Under Secretary for coordinating America's anti-terrorist financing programs, to include the E.O. 13224 designation program, with the complementary programs of our international partners, to include the designation and sanctions

2

programs administered by the United Nations Security Council Committee established pursuant to Resolution 1267 (the UN 1267 Committee). Among other duties, the UN 1267 Committee oversees the implementation by UN Member States of the three sanctions measures (assets freeze, travel ban and arms embargo) imposed by the Security Council on individuals and entities associated with the al Qaeda terrorist organization.

5. While Under Secretary, I also supervised the promulgation of the Treasury Department regulations implementing the anti-money laundering and counter-terrorist financing provisions of the USA PATRIOT Act (P.L. 107-56, 115 Stat. 272 (2001)).

6. As an expert in anti-money laundering and countering terrorist financing, I have given lectures at conferences, universities, before international bankers associations, and other venues located domestically and abroad, including: Milan, Rome, and Naples, Italy; London, England; Vienna, Austria; Brussels, Belgium; Madrid and Barcelona, Spain; Davos, Switzerland (World Economic Forum); Luxembourg, Luxembourg; Mumbai, New Delhi, Pune, and Calcutta, India; Asuncion, Paraguay; Tirana, Albania; New York City, New York (International Organization of Securities Commissioners and Institute of International Bankers); Miami, Florida (Florida International Bankers Association); and Las Vegas, Nevada (Association of Certified Anti-Money Laundering Specialists).

7. As Under Secretary, I gave two presentations to the UN 1267 Committee on the Treasury Department designation process. In late 2001, I gave a presentation discussing the process employed by the U.S. Government for placing the names of individuals and entities on the Treasury Department list. Further, in early 2002, I explained the delisting process for removing names from the Treasury list.

8. I am the author and co-author of numerous books, law review articles, and other publications on money laundering and terrorist financing, including: PRINCIPLES OF

3

COUNTERTERRORISM LAW (West Publ. 2011 ) (co-authored with Prof. Geoffrey Corn); UNFUNDING TERROR: THE LEGAL RESPONSE TO THE FINANCING OF GLOBAL TERRORISM (Edward Elgar 2008); COMPLEX CRIMINAL LITIGATION: PROSECUTING DRUG ENTERPRISES AND ORGANIZED CRIME (LEXIS 2d ed., 2001); INTERNATIONAL CRIMINAL LAW: CASES AND MATERIALS (Carolina Academic Press 3d ed., 2007) (co-authored with Jordan Paust, Cherif Bassiouni, Michael Scharf, Leila Sadat and Bruce Zagaris); THE LAW OF ASSET FORFEITURE (LexisNexis 2d ed., 2004) (coauthored with Sandra Guerra Thompson and Michael O'Hear); How To COMBAT MONEY LAUNDERING AND TERRORIST FINANCING (Chapter 13) (Central Banking Publ. Ltd. 2005); *The Demise of the UN Economic Sanctions Regime to Deprive Terrorists of Funding,* 41 CASE W.RES. J. INT'L L. 19 (2009); *Does "Proceeds" Really Mean "Net Profits"?: The Supreme Court's Efforts to Diminish the Utility of the Federal Money Laundering Statute,* 7 AVE MARIA L. REV. 339 (2009); *Who Is Winning the War on Terrorist Financing?,* THE FINANCIAL REGULATOR 25 (2005); *The Global Efforts to Stop Terrorist Financing,* AM. INT'L ELECT. 1., U.S. Dep't of State(Aug. 2003); and *The Money Laundering Control Act of 1986: Creating a New Federal Offense or Merely Affording Federal Prosecutors an Alternative Means of Punishing Specified Unlawful Activity?,* 32 AM.CRIM.L.REV. 823 (1996).

9. By virtue of my experience serving as Under Secretary and academic work, as described more fully above, I am intimately familiar with the requirements and objectives of the E.O. 13224 sanctions program, as well as the requirements and objectives of the UN 1267 sanctions regime.

10. Broadly speaking, E.O. 13224 imposes economic sanctions on persons who have been determined to have committed or pose a significant risk of committing acts of terrorism, as well as on persons determined to be owned or controlled by such persons or to provide support to such persons or acts of terrorism. It prohibits any transaction or dealing *in property or interests in*

4

*property* of any person (i.e., an individual or entity) designated under its authority, including the donation of funds, goods, or services, and it blocks all property in the United States or within the possession or control of a U.S. person in which there is an interest of any designated person. The overarching objective of this program is to deprive designated parties of access to funds and resources, as a means of undermining their ability to promote acts of terrorism.

11. The sanctions programs overseen by the UN 1267 Committee serve these same goals, by requiring UN Member States to undertake the following steps with respect to any individual or organization included on the UN 1267 Committee Consolidated List:

- freeze without delay the funds and other financial assets or economic resources of designated individuals and entities [**assets freeze**],

- prevent the entry into or transit through their territories by designated individuals [**travel ban**], and

- prevent the direct or indirect supply, sale and transfer from their territories or by their nationals outside their territories, or using their flag vessels or aircraft, of arms and related materiel of all types, spare parts, and technical advice, assistance, or training related to military activities, to designated individuals and entities [**arms embargo**].

12. Neither the text of E.O. 13224, nor any regulations promulgated thereunder, nor the text of UN Security Resolution 1267, nor any related Security Council resolutions, preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.

13. Neither the Treasury Department nor the UN 1267 Committee have ever interpreted either E.O. 13224 or UN Security Resolution 1267, or any related regulations or security resolutions, to preclude a financial institution from providing a designated or listed party with account statements concerning an account that has been frozen or blocked.

14. And finally, neither the Treasury Department nor the UN 1267 Committee have ever prohibited or banned or taken action otherwise to preclude a financial institution from providing a

5

designated or listed party with account statements concerning an account that has been frozen or blocked.

15. Stated simply, the goals of the E.O. 13224 designation process and the UN Sec. Res. 1267 designation process would not be undermined by disclosing to a designated or listed party account statements concerning an account that has been frozen or blocked. Those programs are designed to prevent designated parties from obtaining access to the *funds or property* in the blocked account, not from obtaining a simple statement for the blocked account. In fact, the provision of such statements serves the goals of the respective programs, by verifying that all account funds have in fact been frozen, and that the accounts in question are being maintained in accordance with the requirements of those programs, including requirements established for the protection of the designated party.

Jimmy Gurulé
Professor of Law University of Notre Dame
Notre Dame, Indiana

11/9/11
Date

6

# EXHIBIT A

## QUALIFICATIONS OF EXPERT WITNESS

### JIMMY GURULÉ

**EDUCATION:**

University of Utah College of Law, J.D. 1980;

University of Utah, B.A. English 1974

**EXPERT WITNESS AND CONSULTING:**

Retained as an expert witness or expert consultant in ten major money laundering and terrorist financing cases, including: El Camino Resources, Ltd., et al. v. Huntington National Bank, No. 1:07-cv-598 (W.D. Mich.) (deposed); Richardson v. Huntington National Bank, No. 06-80989-jrh (Bkrtcy. W.D. Mich.) (deposed and testified); Dale, et al. v. Dreyfus Service Corp., et al., No. 3:00 CV 359LN (S.D. Miss. Jackson Div.) (deposed); BDP International Finance Corp., Ltd., et al. v. 6-F Corporation, Pedro Castillo, No. 06-02544-CA 21 (11th Dist. Miami-Dade County) (deposed). Serves as a Senior Advisor on AML, Booz Allen Hamilton (2007).

**EXPERIENCE:**

**PROFESSOR OF LAW, NOTRE DAME LAW SCHOOL** (1989 to present) – Tenured, full Professor of Law, teaching courses in Criminal Law, White Collar Crime (money laundering, RICO), International Criminal Law, and The Law of Terrorism. Served as Associate Dean from 1999-2000.

**UNDER SECRETARY (ENFORCEMENT), U.S. DEPARTMENT OF THE TREASURY (2001-2003)** - Nominated by President George W. Bush and unanimously confirmed by the United States Senate.

Served as the top Treasury law enforcement official, providing oversight and policy guidance to and coordinating the activities of the United States Customs Service, United States Secret Service, Bureau of Alcohol, Tobacco and Firearms, Financial Crimes Enforcement Network (FinCEN), Federal Law Enforcement Training Center (FLETC), Office of Foreign Assets Control (OFAC), and Executive Office of Asset Forfeiture, and coordinated the enforcement activities of the Internal Revenue Service – Criminal Investigation Division (IRS-CID).

The Treasury Enforcement Bureaus comprised approximately 33,000 employees with a proposed fiscal year 2003 budget of over $5 billion.

Played a pivotal role in developing and coordinating the Treasury Department's global

strategy to combat terrorist financing and freeze terrorist-related assets, meeting regularly with foreign cabinet and sub-cabinet ministers and foreign bank officials. Supervised Treasury's participation in the Financial Action Task Force (FATF), and was responsible for developing the 2001 and 2002 National Money Laundering Strategy, and overseeing publication of the regulations implementing Title III (anti-money laundering provisions) of USA PATRIOT Act.

Responsible for establishing the U.S. Customs-led terrorist financing task force – "Operation Green Quest."

As Under Secretary (Enforcement), was featured in *Newsweek* (Oct. 29, 2001); *U.S. News & World Report* (Dec. 31, 2001); *The Washington Diplomat* (March 2003); *The Government Executive* (July 2002); *Bank Systems & Technology* (May 2002); *Luxembourg Business* (Sept. 2002); and *Notre Dame Magazine* (Autumn 2002).

As Under Secretary was awarded the prestigious U.S. Department of Treasury Medal (2003).

ASSISTANT ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE (1990-1992) –
Nominated by former President George H.W. Bush and sworn in as Assistant Attorney General by U.S. Attorney General Dick Thornburg. Unanimously confirmed by the United States Senate.

Provided oversight, policy guidance to, and coordinated the activities of the Bureau of Justice Assistance (BJA), Bureau of Justice Statistics (BJS), National Institute of Justice (NIJ), Office of Juvenile Justice and Delinquency Prevention (OJJDP), and Office of Victims of Crime (OVC).

Responsible for administering an office with a combined fiscal year budget of over three-quarters of a billion dollars. Testified before various congressional committees on a wide range of criminal justice issues.

For services as Assistant Attorney General, was awarded the Edmund J. Randolph Award and the Excellence in Administration Award.

ASSISTANT UNITED STATES ATTORNEY, U.S. ATTORNEY'S OFFICE, CENTRAL DISTRICT OF CALIFORNIA (1985-1989) – Served as the Deputy Chief of the Major Narcotics Section, prosecuting high profile international narcotics, money laundering, and tax fraud cases, and conducting complex grand jury investigations. Supervised the three year investigation and prosecution of defendants responsible for the kidnapping and murder of a DEA Special Agent.

For services as Assistant United States Attorney, received the Attorney General's Distinguished Service Award, and Drug Enforcement Administration Administrator's Award (the highest award conferred by DEA).

2

**DEPUTY COUNTY ATTORNEY, SALT LAKE COUNTY ATTORNEY'S OFFICE (1982-1985)**
– Served as Section Chief of Major Drug Section, where he prosecuted major felony cases.

**TRIAL ATTORNEY, U.S. DEPARTMENT OF JUSTICE, CRIMINAL DIVISION (1980-1982)** – Hired through the DOJ Honors Program (one of eleven attorneys hired from over 1,000 applicants). Prosecuted major narcotics cases and investigated money laundering cases.

## PUBLICATIONS

### Books

PRINCIPLES OF COUNTER-TERRORISM LAW (West Publ. 2011) (with Prof. Geoffrey Corn);

UNFUNDING TERROR: THE LEGAL RESPONSE TO THE FINANCING OF GLOBAL TERRORISM (Edward Elgar Publ. 2008);

HOW TO COMBAT MONEY LAUNDERING AND TERRORIST FINANCING (Chapter 13) (Central Bank Publ.) (2005);

COMPLEX CRIMINAL LITIGATION: PROSECUTING DRUG ENTERPRISES AND ORGANIZED CRIME (Lexis Publ., 2d ed. 2000);

INTERNATIONAL CRIMINAL LAW, CASES AND MATERIALS (with Prof. Jordan Paust, Cherif Bassiouni, Michael Scharf, Lelia Sadat, and Bruce Zagaris) (Carolina Academic Press, 3d ed. 2007);

INTERNATIONAL CRIMINAL LAW DOCUMENTS SUPPLEMENT (with Prof. Jordan Paust, Cherif Bassiouni, Michael Scharf, Lelia Sadat, and Bruce Zagaris) (Carolina Academic Press 2007); and

THE LAW OF ASSET FORFEITURE (with Sandra GuerraThompson & Michael O'Hear) (Lexis Publ., 2d ed. 2004).

### LAW REVIEW and OTHER LEGAL ARTICLES

*The Demise of the U.N. Economic Sanctions Regime to Deprive Terrorists of Funding*, CASE W. RES. J. INT'L L., 41 CASE W. RES. J. INT'L L. 19 (2009);

*Does "Proceeds" Really Mean "Net Profits"? The Supreme Court's Efforts to Diminish the Utility of the Federal Money Laundering Statute*, 7 AVE MARIA L. REV. 339 (2009);

*Who Is Winning the War on Terror Financing?*, 10 THE FINANCIAL REGULATOR 25

3

(Sept. 2005);

*Unfunding Terror, The U.S. and International Response to 9/11*, 17 TRANSNAT'L. LAW. 113 (2004);

*The Global Effort to Stop Terrorist Financing*, AM. INT'L ELECT. J., U.S. State Department (August 2003);

*The 1988 U.N. Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances – A Ten Year Perspective: Is International Cooperation Merely Illusory?*, 22 FORDHAM INT'L. L.J. 74 (1998);

*The Money Laundering Control Act of 1986: Creating a New Federal Offense or Merely Affording Federal Prosecutors an Alternative Means of Punishing Specified Unlawful Activity?* 32 AM. CRIM. L. REV. 823 (1996);

*The Ancient Roots of Modern Forfeiture*, 21 NOTRE DAME J. LEGIS. 155 (1995).

## OTHER PUBLICATIONS IN THE PRECEDING TEN YEARS

CRIMINAL AND FORENSIC EVIDENCE – CASES, MATERIALS, PROBLEMS ( with Robert Goodwin) (LexisNexis, 3d ed. 2009);

HUMAN RIGHTS MODULE ON CRIMES AGAINST HUMANITY, GENOCIDE, OTHER CRIMES AGAINST HUMANITY, AND WAR CRIMES (with Prof. Jordan Paust, Cherif Bassiouni, Michael Scharf, Lelia Sadat, and Bruce Zagaris) (Carolina Academic Press) (2006); and

*U.S. Opposition to the 1998 Rome Statute Establishing an International Criminal Court: Is the Court's Jurisdiction Truly Complementary to National Criminal Jurisdictions?*, 35 Cornell Int'l Law Journal 1 (2002).

## CONGRESSIONAL TESTIMONY

As Under Secretary (Enforcement), testified before the following Congressional committees:

Senate Judiciary Committee (11/20/02);
House Committee on Ways and Means (6/26/02);
U.S. Commission on Security and Cooperation in Europe (OSCE) (5/8/02);
Senate Appropriations Subcommittee on Treasury and General Government (4/17-18/02);
House Appropriations Subcommittee on Treasury, Postal Service and General Government (3/06/02, 2/27-28/02);
Senate Select Committee on Intelligence (2/04/02);

4

House Committee on Financial Services (10/03/01);
Senate Committee on Banking, Housing, and Urban Affairs (9/26/01);
House Permanent Select Committee on Intelligence (9/18/01); and
Senate Committee on Finance (5/16/01).

## AWARDS AND RECOGNITION

U.S. Department of the Treasury -- Treasury Medal (conferred by Secretary of the Treasury John Snow) (2003);

U.S. Department of Justice, Edmund J. Randolph Award (conferred by U.S. Attorney General Dick Thornburg) (1991);

Attorney General's Distinguished Service Award (one of the highest awards conferred by the U.S. Department of Justice) (1990);

Excellence in Management Award (conferred by U.S. Attorney General William P. Barr) (1992);

Drug Enforcement Administration Administrator's Award (highest award conferred by the DEA) (1989); and

Drug Enforcement Administration Certificate of Appreciation (April 1987 and July 1987).

## LECTURES

An internationally recognized expert in the field of anti-terrorist financing and anti-money laundering, delivering lectures on these subjects in Tirana, Albania (2008); Mumbai (ICICI Bank, Nehru Center), Pune (MIT School of Government, National Defense Academy, National Institute of Bank Management, Indira School of Management Studies), New Delhi (Institute for Defense Studies and Analysis, Central Economic Intelligence Bureau, Standard Chartered Bank), and Calcutta (India Bankers Seminar), India (2006); Asuncion, Paraguay (Vice-President Luis Castiglioni, SEPRELAD, Comandancia de la Policia Nacional, Senators of Finance Committee, Paraguay Bankers' Association) (2005); Amerika Haus, Vienna, Austria (2006, 2005 & 2004); Milan (Banca Intesa, Guardia di Finanza), Rome (Italian Bankers' Association, Military Center for Strategic Studies (War College), members of Italian Senate) and Naples (Treasury Police Regional Headquarters), Italy (2005); American Center Forum Series, U.S. Embassy, Brussels, Belgium (2005); Copenhagen, Denmark (2006); Judicial Conference for Iraqi Judges and the Rule of Law; The Hague, Netherlands (2004); International Organization of Securities Commissions, New York City (2004); Institute of International Bankers, New York City (2003); Florida International Bakers Association, Miami, Florida (2003); EuroForum, Madrid, Spain (2003); British Institute of International & Comparative Law, London, England (2003); Centre for the Study of

5

Financial Innovation (CFSI), London, England (2003); World Economic Forum, Davos, Switzerland (2003); American-Luxembourg Chamber of Commerce, Luxembourg (2002); Heritage Foundation (2002); McGeorge School of Law (2003); S.J. Quinney School of Law, University of Utah (2003); Columbus School of Law, Catholic University of America (2002), University of Mississippi (2002); Notre Dame Law School (2003); Florida State University School of Law (2000); Institute of Advanced Legal Studies, London, England (2000); University of Mendoza School of Law, Mendoza, Argentina (1999); Harvard Law School (1993); and University of Kentucky Law School (1997).

Delivered the law school commencement address at the S.J. Quinney School of Law, University of Utah (2002).

Addressed a nationwide meeting of high-ranking Russian federal prosecutors at a conference on money laundering and organized crime sponsored by the U.S. Embassy in Moscow, Russia (1997), and participated in a conference on money laundering and organized crime held in Yerevan, Armenia, sponsored by the ABA Central and East Europe Law Initiative (CEELI) (1998).

Addressed the United Nations Security Counsel Al Qaida/Taliban Sanctions Committe on freezing terrorist assets (February and September 2002).

## BAR AND COMMUNITY ACTIVITIES

Fulbright Scholar – Santiago, Chile (2011);

American Bar Association Rule of Law Initiative – Drafting Prosecutorial Reform Index for Belize;

National Academy of Public Administration (NAPA) – Elected Fellow (2009);

American Law Institute (ALI) – Member (since 2003);

American Society of International Law (ASIL) – Member (since 2005);

Seventh Circuit Court of Appeals Committee on Pattern Criminal Jury Instructions – Member (2008);

International Penal Law Association – Member (2008); and

Utah State Bar – Member (since 1980).

6