# BERNABEI & WACHTEL, PLLC

ATTORNEYS AT LAW

1775 T STREET, N.W.

WASHINGTON, D.C. 20009

| | | |
|---|---|---|
| LYNNE BERNABEI | 202.745.1942 | PETER M. WHELAN |
| DAVID WACHTEL | FAX: 202.745.2627 | LAUREN R. S. MENDONSA |
| ALAN R. KABAT | WWW.BERNABEIPLLC.COM | KAREN TANENBAUM |

<u>By ECF</u>
October 7, 2015


Honorable Frank Maas
U.S. District Court for the Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

     Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

     Defendants Dr. Abdullah Al-Turki, Dr. Abdullah Al-Obaid, Dr. Abdullah Naseef, and Dr. Adnan Basha (collectively, "the Four Defendants") respectfully submit their opposition to the Plaintiffs' Motion to Compel (ECF No. 3024) (Sept. 2, 2015).

     **I.**     <u>**Summary of Argument.**</u>

     The motion to compel should be denied for failure to comply with the meet-and-confer requirements of Rule 37(a)(1), Fed. R. Civ. P.  If counsel for Plaintiffs had attempted to confer with counsel for the Four Defendants, they would have learned that in addition to the documents they personally produced (primarily about their employment history and travel to this country), all document requests that were relevant to jurisdictional discovery were already encompassed by the overlapping document requests served on the Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO"), which have collectively produced over 459,000 pages of documents.  The Four Defendants do not have any other documents that are relevant to jurisdictional discovery beyond those already produced by the MWL and IIRO.  Thus, the motion to compel was unnecessary, as there is no basis to compel the production of documents that have already been produced.

     Further, if counsel for Plaintiffs had complied with their meet-and-confer obligations, undersigned counsel could have explained why many of the Plaintiffs' document requests sought

Honorable Frank Maas
October 7, 2015
Page 2 of 9

information that goes beyond the limited scope of jurisdictional discovery permitted under the Second Circuit's decision. There is no justification for seeking discovery that is not relevant to determining whether this Court can exercise personal jurisdiction over the Four Defendants.

## II. The Second Circuit's Limited Scope of Jurisdictional Discovery.

As a threshold matter, the Four Defendants are only subject to limited, jurisdictional discovery, not broader merits discovery. The Second Circuit's remand to this Court made clear that they, and several other "Charity Official defendants," were to be remanded for the limited purpose of jurisdictional discovery to address the following carefully circumscribed issues:

(a) Whether they "allegedly controlled and managed some of those charitable organizations;"

(b) Whether, "through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States;"

(c) Whether they "*directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States;"

(d) "Whether this support was 'expressly aimed' at the United States;" and

(e) "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda."

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 678-79 (2d Cir. 2013) (emphasis in original), *cert. denied*, 573 U.S. __, 113 S. Ct. 2870 (2014). Moreover, the Second Circuit reiterated the law of the case that "foreseeability is not the standard for recognizing personal jurisdiction. Rather, the plaintiffs must establish that [defendants] 'expressly aimed' intentional tortious acts at residents of the United States." *Id.* at 675 (quoting *In re Terrorist Attacks III*, 538 F.3d 71, 95 (2d Cir. 2008)); *accord Laydon v. Mizuho Bank Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *2 (S.D.N.Y. Mar. 31, 2015) (same). Thus, the exercise of personal jurisdiction under a specific jurisdiction theory requires "no less than a 'but for' connection between the defendant's forum-directed activities and the claim." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015).

It is through that narrow framework that the Plaintiffs' discovery requests, and their motion to compel, must be analyzed. The Second Circuit did not allow Plaintiffs to conduct wide-ranging merits discovery into every aspect of the Four Defendants' lives, since such discovery is irrelevant to whether this Court can exercise personal jurisdiction over them. Plaintiffs' motion to compel fails to explain how the requested discovery is specifically tailored to these five narrowly-defined categories set forth in the Second Circuit's decision. Nor could the Plaintiffs proffer any such justification, as discovery about unrelated persons and entities that even plaintiffs have never alleged had anything to do with the September 11 attacks, or discovery into dismissed defendants and factual allegations that have been rejected by this Court, would have no bearing on this Court's analysis of the five limited categories. Instead, Plaintiffs' motion to compel impermissibly argues that Plaintiffs are entitled to conduct a fishing expedition that is equivalent to merits discovery.

### III. The Overlapping Document Requests and Document Production.

#### A. The Substantially Overlapping Document Requests.

Plaintiffs served numerous document requests on the MWL in October 2005, and served supplemental document requests on the MWL in April 2006, for a total of 93 document requests directed to the MWL. *See* Declaration of Alan R. Kabat, at ¶¶ 6, 8 & Exh. 6, 8 (Oct. 7, 2015) (attached and incorporated hereto). Plaintiffs also served numerous document requests on the IIRO in December 2005, and served two sets of supplemental document requests in April 2006 and January 2008, for a total of 136 document requests directed to the IIRO. *Id.* at ¶¶ 7, 9-10 & Exh. 7, 9-10. In response, the MWL and the IIRO collectively produced over 459,000 pages of documents, and also produced lengthy indexes for much of the production, indicating the document request(s) for which each indexed document was responsive. *Id.* at ¶ 11.

After the Second Circuit remanded the Four Defendants to this Court for the limited purpose of conducting jurisdictional discovery, the plaintiffs served equally numerous document requests on them: 125 on Dr. Al-Turki, 114 on Dr. Al-Obaid, 111 on Dr. Basha, and 108 on Dr. Naseef. *Id.* at ¶¶ 2-5 & Exh. 2-5. Many of these document requests were duplicates, with identical requests being served on more than one defendant, so that there were a total of 129 document requests collectively served on the Four Defendants. *Id.* at ¶ 1 & Exh. 1.

Of the 129 document requests served on the Four Defendants, at least 97 were also served on the MWL and/or the IIRO, or were otherwise encompassed by the requests served on those two organizations, and hence were satisfied through the production of those defendants; the Four Defendants did not themselves have additional responsive documents. *Id.* at ¶ 1 & Exh. 1-5. The lengthy indexes prepared by the MWL and the IIRO allow cross-referencing of those defendants' document productions with the requests served on the Four Defendants. *Id.* at ¶ 11.

Of the remaining 33 requests served on the Four Defendants, two – Nos. 1 and 4, which sought information about their employment history and their honors or awards – were satisfied with the production of their resumes, and their previously filed affidavits regarding their limited contacts with this country. *Id.* at ¶ 1 & Exh. 2-5.

The remaining document requests include those for which the Four Defendants do not have any responsive documents, and are not within the limited scope of jurisdictional discovery.

### B. Discovery Into the Saudi Government and Its Officials Is Not Relevant to This Court's Analysis of Personal Jurisdiction over the Four Defendants.

Plaintiffs sought information about the roles that Dr. Al-Turki and Dr. Al-Obaid had as government ministers with the Supreme Council of Islamic Affairs and the Saudi Council of Ministers. *Id.* at ¶ 1 & Exh. 2-3 (Al-Turki Nos. 18-24 and Al-Obaid Nos. 18-21), and about the Four Defendants' communications or relationships with the Saudi government (Al-Turki Nos. 75-81, 84-85; Al-Obaid Nos. 68-74, 77-78; Basha Nos. 65-71, 74-75; Naseef Nos. 61-67, 70-71).

However, this Court has not only dismissed the Kingdom of Saudi Arabia, but also expressly rejected the Plaintiffs' attempt to rely on alleged connections between the Kingdom and the MWL/IIRO. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (GBD)(FM), __ F. Supp. 3d __, 2015 WL 5724893, at *7 (S.D.N.Y. Sept. 29, 2015) ("Plaintiffs also fail to allege facts that sufficiently show that Saudi Arabia controlled the day-to-day operations of these charities."). This Court specifically rejected Plaintiffs' "expert witness" testimony on the alleged links between the Saudi government and several charities, including the MWL and the IIRO:

> The Averment of Facts falls short as to the charities alleged to have had offices in the United States. For example, **the affirmation by Evan Francois Kohlmann is not sufficient for this Court to even reasonably infer that Saudi Arabia controls each of the charities at issue.** (See Affirmation of Sean P. Carter ("Carter Aff."), (ECF No. 2927), Ex. 9.) These conclusory, largely boilerplate, allegations provide an insufficient basis to strip Saudi Arabia of its immunity.

*Id.* at *8 n.9 (emphasis added).

Therefore, this Court should find that there is no basis to demand documents from the Four Defendants as to the roles that Dr. Al-Turki and Dr. Al-Obaid had or formerly had with the Saudi government, or about the Four Defendants' communications or relationships with the Saudi government and its officials, when this Court has expressly rejected Plaintiffs' argument that the Saudi government controlled the MWL and the IIRO.

### C. Discovery as to the "Golden Chain" Is Not Relevant to This Court's Analysis of Personal Jurisdiction over the Four Defendants.

Plaintiffs also sought information about any connection that the Four Defendants had with the so-called "Golden Chain." *See* Kabat Declaration, at ¶ 1 & Exh. 2-5 (Al-Turki Nos. 110-115; Al-Obaid Nos. 103-108; Basha Nos. 100-105; and Naseef Nos. 96-101).

However, both Judge Casey and Judge Daniels have expressly rejected the Plaintiffs' attempts to rely on the "Golden Chain," or any alleged connections between the "Golden Chain" and other individual defendants, as a basis for exercising personal jurisdiction:

> The Court finds the Plaintiffs have not established a prima facie case of jurisdiction over Mr. Aljomaih to defeat his motion or warrant jurisdictional discovery. **Their theory of jurisdiction rests almost entirely on a document with serious foundational flaws.** Even assuming, as the Court must, that the "Golden Chain" refers to Mr. Aljomaih, with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters. Mr. Aljomaih's motion to dismiss the *Burnett* complaint for lack of personal jurisdiction is accordingly granted.

*In re Terrorist Attacks*, 349 F. Supp. 2d 765, 817 (S.D.N.Y. 2005) (emphasis added).

> Plaintiffs have not established a prima facie showing of jurisdiction over Mr. Al-Husani to survive his motion to dismiss or warrant jurisdictional discovery. **The "Golden Chain" does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office. It does not establish [defendant's] involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the United States.** Accordingly, Mr. Al-Husani's motion to dismiss the *Burnett* complaint against him is granted.

*Id.* at 818 (emphasis added). Tellingly, plaintiffs did not include Mr. Aljomaih or Mr. Al-Husani in their Second Circuit appeal, so that Judge Casey's decision as to them was final as of 2005.

Judge Casey also held that even if a defendant was allegedly named in the "Golden Chain," that was not a basis for stating a claim as to that defendant:

> **And, as the Court has previously explained, the presence of Kamel's name in the so-called Golden Chain documents does not, on its own, provide grounds to sustain the claims in this case.** *See Terrorist Attacks I*, 349 F. Supp. 2d at 818 ("The 'Golden Chain' does not say what the Plaintiffs argue it says. It is only a list of names found in a

>charity's office. It does not establish [the defendant's] involvement in a terrorist conspiracy culminating in the September 11 attacks ...."). Accordingly, Plaintiffs' claims against Kamel are dismissed.

*In re Terrorist Attacks*, 464 F. Supp. 2d 335, 340-41 (S.D.N.Y. 2006) (emphasis added), *aff'd* 714 F.3d 118 (2d Cir. 2013), *cert. denied*, 573 U.S. __, 134 S. Ct. 2870 (2014).

Judge Daniels similarly held that the "Golden Chain" did not provide any basis for exercising personal jurisdiction over yet another defendant, Mr. Jameel:

>In addressing the evidentiary weight of the Golden Chain, Judge Casey concluded that, "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters." *Terrorist I*, 349 F. Supp. 2d at 817. This Court finds that, even if the document is in fact what plaintiffs purport it to be, **it alone does not render those listed therein subject to the jurisdiction of this Court under specific jurisdictional theories.** Generalized allegations that a defendant provided financial or other material support to al Qaeda, without the reasonable inference of the temporal, geographical or causal connection, or proximity to the 9/11 attacks, is an insufficient basis for the Court's exercise of jurisdiction over a foreign defendant. Thus, Yousef Jameel's alleged role as an al Qaeda sponsor, **as purportedly evidenced by his inclusion on the Golden Chain list, does not demonstrate that he himself expressly aimed tortious conduct at the United States which resulted in, or relates to, the injuries sustained by plaintiffs.**

*In re Terrorist Attacks*, 718 F. Supp. 2d 456, 482-83 (S.D.N.Y. 2010) (emphasis added), *aff'd*, 714 F.3d 659 (2d Cir. 2013), *cert. denied*, 573 U.S. __, 134 S. Ct. 2870 (2014).

These decisions, which are the law of the case, make clear that discovery from the Four Defendants as to the "Golden Chain" is impermissible. What is even more improper is that the Plaintiffs served these discovery requests on the Four Defendants on August 22, 2013, <u>four months after</u> the Second Circuit's decisions issued on April 16, 2013.

Thus, Plaintiffs knew, well prior to serving their "jurisdictional" document requests on the Four Defendants, that the "Golden Chain" could not serve as the basis for exercising personal jurisdiction – not even as to other defendants allegedly listed on it. Here, of course, Plaintiffs never alleged that the Four Defendants are listed on the "Golden Chain," so that the Four Defendants are even further removed from that inadmissible document. This Court should not condone Plaintiffs' attempt to seek jurisdictional discovery based on a document that has been expressly rejected multiple times by this Court.

### IV. **Plaintiffs' Failure to Comply with Rule 37(a)(1).**

This Court should deny the motion to compel, given Plaintiffs' inexcusable failure to comply with Rule 37(a)(1), Fed. R. Civ. P., which expressly provides that:

> The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*See* Rule 37(a)(1), Fed. R. Civ. P. Here, had counsel for Plaintiffs made any attempt to discuss their document requests with counsel for the Four Defendants, they would have readily learned that these defendants had <u>no</u> relevant documents beyond the documents that they produced and the over 459,000 pages of documents that the MWL and the IIRO had already produced, accompanied by detailed indexes.

Further, at a meet-and-confer, counsel for the Four Defendants could have explained how the remaining categories of documents sought by Plaintiffs are not relevant to the limited scope of jurisdictional discovery as set forth in the Second Circuit's decision.

The purpose of this rule (formerly codified as Rule 37(a)(2)), is to narrow the scope of the dispute by giving the parties the opportunity to discuss the relevancy of the discovery requests and the legal or factual basis for the objections.

In order to comply with this rule, the parties must have a "live exchange of ideas and opinions," not merely an exchange of letters. *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998). As Magistrate Judge Francis explained:

> The meet-and-confer requirement mandates that parties actually "meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention."

*Id.* at *2-*3 (quoting *Deckon v. Chidebere*, No. 93 Civ. 7845 (LMM)(BAL), 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994)). The requisite certification must provide sufficient specificity as to these communications:

> To satisfy the meet-and-confer requirement, Prescient [movant] had to provide an account of a "live exchange of ideas and opinions," including details such as the positions

>   taken by each side, the extent to which the parties compromised their positions, and why the negotiations proved fruitless.

*Id.* at *4 (denying motion to compel).

The courts in this jurisdiction have consistently denied motions to compel where, as here, the movant made no effort (or an insufficient effort) to comply with this express requirement. *See*, *e.g.*, *Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) ("Accordingly, the plaintiff's motion is denied on that ground."); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW)(HBP), 2006 WL 2637836, at *7 (S.D.N.Y. Sept. 12, 2006) ("This deficiency alone is a sufficient ground for denying the motion."); *Prescient Partners*, 1998 WL 67672, at *3 ("Under ordinary circumstances, however, the failure to meet and confer mandates denial of a motion to compel."). Further, under Rule 37(a)(5)(B), attorneys' fees and expenses can be awarded to the party opposing a motion to compel where, as here, the movant failed to meet-and-confer before filing the motion. *Wiwa*, 2006 WL 2637836, at *9 (awarding attorneys' fees to party opposing the motion to compel).

If counsel for Plaintiffs had conducted the requisite meet-and-confer, they would have learned that the Four Defendants had no relevant documents beyond those that they already produced and those produced by the MWL and the IIRO. Further, the remaining document requests sought documents that were not relevant to the limited scope of jurisdictional discovery, so that there was no basis for filing a motion to compel. This failure to comply with Rule 37(a)(1) is a sufficient basis for denying the motion to compel.

### V.    This Court Cannot Compel the Production of Documents That Have Already Been Produced by the MWL and the IIRO, or That Otherwise Do Not Exist.

Even if this Court were to excuse the Plaintiffs' failure to make any meaningful attempt to comply with Rule 37(a)(1), it must still deny the motion to compel, for the simple reason that the Four Defendants have no further responsive documents that have not already been produced by themselves and by the MWL and the IIRO, and that are relevant to the limited scope of jurisdictional discovery permitted by the Second Circuit's remand decision.

It would be a waste of judicial resources for this Court to consider whether the Four Defendants should be compelled to produce certain documents when (a) the responsive documents that exist have already been produced in discovery by them and by the MWL and the IIRO, *see* Kabat Dec., at ¶¶ 1, 11; and (b) the Four Defendants have no other relevant documents that could be produced <u>and</u> that fall within the scope of the jurisdictional discovery permitted by the Second Circuit. The district courts in the Second Circuit have consistently held that a motion

to compel should be denied in such circumstances. *See*, *e.g.*, *Guillory v. Skelly*, No. 12-CV-00847S(F), 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) (denying motion to compel as to non-existent documents, since "an attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document"); *American Banana Co. v. Republic National Bank of N.Y.*, No. 99 Civ. 1330 (AGS), 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) ("the court cannot compel production of what does not exist"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) (denying motion to compel non-existent documents, or documents that "were already produced to BNY"); *Doe I v. Karadzic*, No. 93 Civ. 878 (PKL)(HBP), 1997 WL 45515, at *6 (S.D.N.Y. Feb. 4, 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production.") (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).

This Court need go no further, as there is no basis for seeking documents from the Four Defendants that they do not have in the first place, or that have already been produced in discovery by the MWL and the IIRO, or that are not relevant to jurisdictional discovery, so that the motion to compel should be denied.

### VI. Conclusion.

For the foregoing reasons, this Court should deny the Plaintiffs' Motion to Compel. Had counsel for Plaintiffs made any effort to comply with Rule 37(a)(1), they would have learned that the "jurisdictional" document requests to the Four Defendants sought documents (1) that the Four Defendants, the MWL, and the IIRO have already produced; (2) that the Four Defendants do not have; or (3) that are not relevant to jurisdictional discovery, so that there was no basis for filing a motion to compel.

Sincerely,

*/s/ Alan R. Kabat*

Alan R. Kabat

Enc.

cc: MDL-1570 Counsel of Record
     (by ECF)