# BERNABEI & WACHTEL, PLLC

ATTORNEYS AT LAW

1775 T STREET, N.W.

WASHINGTON, D.C. 20009

LYNNE BERNABEI

DAVID WACHTEL

ALAN R. KABAT

202.745.1942

FAX: 202.745.2627

WWW.BERNABEIPLLC.COM

PETER M. WHELAN

LAUREN R. S. MENDONSA

KAREN TANENBAUM

By ECF

October 19, 2015

Honorable Frank Maas
U.S. District Court for the Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

Defendant Al Haramain Islamic Foundation, Inc. ("Al Haramain USA") respectfully submits its opposition to the Plaintiffs' Motion (ECF No. 3035) (Sept. 15, 2015).

## I.    Summary of Argument.

The motion for sanctions should be denied. Plaintiffs are not seeking any additional discovery from Al Haramain USA, but are instead improperly arguing that they should get a default judgment because Al Haramain USA did not immediately produce documents about the agreement of the U.S. government and the United Nations to delist the organization, and instead produced these documents after the government agencies agreed to the delistings. Yet, plaintiffs have argued to this Court that the delisting of Al Haramain USA and one of Al Haramain USA's former officers is not relevant to this litigation. Even though plaintiffs argue the lack of relevancy for this discovery, plaintiffs now seek sanctions against Al Haramain USA because plaintiffs were previously unaware that the U.S. government and the United Nations both agreed to delist the organization, as a result of high-level discussions within both the U.S. government and the United Nations.

Plaintiffs, who had no right to participate in the delisting process, cannot credibly argue that they were entitled to earlier discovery into the delisting process when they have argued to this Court that the delisting is not relevant to this litigation, and hence not discoverable.

Further, Plaintiffs' counsel failed to comply with their meet-and-confer obligations, since they did not attempt to meet to discuss why they believe that documents relating to the delisting process are relevant to their claims and hence discoverable, contrary to their representations to this Court. If a meet-and-confer had occurred, then undersigned counsel could have addressed those arguments, and explained why the U.S. government delisted Al Haramain USA, thereby obviating the need to file the present motion.

## II. Plaintiffs Cannot Seek Information That They Have Insisted Is Irrelevant.

As a threshold matter, this Court should deny the motion, because the motion concerns discovery of information that the Plaintiffs have repeatedly insisted is irrelevant. Under Rule 26(b)(1), discovery is limited to information "that is relevant to any party's claim or defense" or "relevant to the subject matter involved in the action." Thus, information that is not relevant is not discoverable. The Supreme Court has held that it is proper to deny "discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence'" because it "is not within the scope of Rule 26(b)(1)." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978).[1] The Second Circuit has made clear that: "Where the information sought is not properly discoverable, a district court may not impose sanctions for non-compliance with an order requiring its production." *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citing *Fonseca v. Regan*, 734 F.2d 944, 948 (2d Cir. 1984)).

Here, Plaintiffs have argued to this Court that the delistings of Al Haramain USA and of Mr. Al-Buthe are not relevant. *See, e.g.*, Pls. Motion (Al-Buthe), at 3 n.3 ("Al-Buthe's delisting by the U.N. may be for any number of reasons; the fact of delisting, alone, has no bearing on whether he has previously provided material support to terrorists.") (ECF No. 2990) (Aug. 10, 2015); Pls. Letter, at 1 ("the removal of Al Haramain from the list of Specially Designated Global Terrorists does not mean Al Haramain did not engage is [*sic*] the conduct that resulted in its designation.") (ECF No. 3058) (Oct. 2, 2015).

This Court need go no further. Plaintiffs, who expressly disclaimed, not once but twice, any relevancy of these delistings to this litigation, cannot now claim that they should have received discovery about the delistings while the delistings were still the subject of high-level confidential discussions within the U.S. government. In fact, Al Haramain USA did produce in discovery 526 pages of documents relating to the delistings (AHIF 4429-4954).

Under Rule 26(b)(1), as amended, and the Second Circuit's *Daval Steel* and *Fonseca* decisions, irrelevant information is not discoverable, and cannot form the basis for any legitimate discovery-related motion, let alone discovery sanctions.

---

[1] Rule 26(b)(1) has been amended several times since the *Oppenheimer Fund* decision, to make it even more restrictive, and it will be amended again on December 15, 2015, removing the "reasonably calculated" language.

### III. The U.S. Government's Agreement to Delist Al Haramain USA.

The delisting of Al Haramain USA by both the U.S. government and the United Nations, along with the delisting of Soliman Al-Buthe (a former officer of Al Haramain USA) by the United Nations, arose of out the fact that both the U.S. government and the United Nations recognized that there was no evidentiary basis for continuing to designate either Al Haramain USA or Mr. Al-Buthe for any alleged support of terrorism.

As set forth below, the U.S. government, which has never indicted or prosecuted Al Haramain USA or its officers for any terrorism-related offense, realized that it could not support any further prosecution of Al Haramain USA or of Perouz Sedaghaty (another former officer of Al Haramain USA). As a result, the defense attorneys for Mr. Sedaghaty, and counsel for Al Haramain USA were able to get the U.S. government to agree to delist Al Haramain USA as part of the government's agreement to abandon the prosecution of Mr. Sedaghaty. Further, other than paying a civil tax assessment to the IRS, the blocked assets of Al Haramain USA remain intact.

#### A. Al Haramain USA Successfully Challenged the OFAC Designation.

Al Haramain USA successfully challenged its designation by the Office of Foreign Assets Control (OFAC), Department of the Treasury, placing it among the few organizations accused of having supported terrorism that did so. Al Haramain USA filed a civil action in the U.S. District Court for the District of Oregon, challenging the designation as violating its constitutional due process rights, and as violating the Administrative Procedure Act. The Court of Appeals held that OFAC was required to provide the organization with an unclassified summary of the classified evidence, or to provide access to the classified record to lawyers with a security clearance. *Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of the Treasury*, 660 F.3d 1019 (9th Cir. 2011), *amended opinion on denial of reh'g*, 686 F.3d 965, 983-84 (9th Cir. 2012). The Ninth Circuit issued its first decision on September 23, 2011; OFAC unsuccessfully petitioned for rehearing (with no judge requesting that a vote be taken), upon which the panel reissued its opinion with several minor amendments on February 27, 2012. The Court of Appeals concluded that: "We hold that OFAC violated AHIF–Oregon's due process rights by failing to provide an adequate statement of reasons for its investigation." 686 F.3d at 988. The Court of Appeals then remanded for the district court to consider the remedy for the related claim that alleged a Fourth Amendment violation arising from freezing the organization's assets without obtaining a warrant, which the district court had improperly dismissed. *Id.* at 1001-02.

The U.S. government sought additional time, to June 28, 2012, to file a *certiorari* petition with the U.S. Supreme Court. *See* Declaration of Alan R. Kabat, at ¶¶ 1-3 & Att. A (Oct. 19, 2015) (attached hereto as Exhibit 1). However, the Solicitor General's office, after meeting with counsel for Al Haramain USA on May 14, 2012, decided not to pursue this appeal. *Id.* at ¶ 3.

Honorable Frank Maas
October 19, 2015
Page 4 of 10

Al Haramain USA then sought reconsideration of its designation by OFAC in August 2012. *Id.* at ¶ 4 & Att. B. The reconsideration request specifically asked that OFAC consider all of the evidence that the organization had previously submitted, since OFAC admitted to having lost prior document submissions. Further, OFAC was asked to take into consideration the facts that Mr. Al-Buthe was no longer an officer of the organization, and that Al Haramain Saudi Arabia had been defunct since 2004. *Id.*, Att. B at 2. Moreover, an intervening U.S. Supreme Court decision, decided on June 21, 2012 (four months after the Ninth Circuit's decision), *FCC v. Fox TV Stations, Inc.*, 132 S. Ct. 2307 (2012), made clear that imposing civil sanctions on an organization violated due process where the laws did not provide "fair notice of conduct that is forbidden or required," *id.* at 2317, so that the penalties imposed upon the private party were invalidated on due process grounds. *Id.* Thus, Al Haramain USA's request for reconsideration argued that OFAC could not designate the organization for conduct that was not prohibited at the time. *See* Kabat Decl. at ¶ 4, Att. B, at 3-4.

The request for reconsideration concluded that OFAC was required to provide the organization's attorneys with a summary of the classified record or access to the classified documents by cleared attorney(s). *Id.*, Att. B, at 7. OFAC delayed in complying with its obligations, and did not provide any substantive response in late 2012 or early 2013. *Id.* at ¶ 4.

While Al Haramain USA was waiting for OFAC to provide it with the full administrative record – including either an unclassified summary of the classified evidence or access by a cleared attorney to the classified evidence – the Ninth Circuit heard oral arguments in the appeal of Mr. Sedaghaty, which led to the vacating of his conviction, *infra*.

### B. The Ninth Circuit Vacated Mr. Sedaghaty's Conviction.

In 2005, the U.S. government indicted Al Haramain USA, Mr. Sedaghaty, and Mr. Al-Buthe. *See United States v. Al Haramain Islamic Foundation, Inc., et al.*, Indictment, No. 05-CR-60008 (ECF No. 1) (D. Or. Feb. 17, 2005). The indictment did not allege any violations of the Anti-Terrorism Act or any other terrorism-related statute. *Id.* Instead, it brought three counts for (1) conspiracy to defraud the IRS, 18 U.S.C. § 371; (2) filing of a false return by a tax-exempt organization, 26 U.S.C. § 7206(1); and (3) failure to file a report of international transport of currency, 31 U.S.C. § 5316(a)(1)(A), the last against Mr. Al-Buthe alone. *Id.*

The government agreed to dismiss Al Haramain USA, filing an Amended Indictment that made no mention of it as a defendant. *See United States v. Sedaghaty*, Amended Indictment, No. 05-CR-60008 (ECF No. 22) (D. Or. Sept. 21, 2005). Mr. Sedaghaty voluntarily returned to the United States, and his trial took place in August 2010, leading to a conviction.

On August 23, 2013, the Ninth Circuit vacated the conviction of Mr. Sedaghaty, holding that multiple errors required reversal. *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013). First, the Ninth Circuit recognized that:

> The only direct evidence about Seda's desire to fund the [Chechen] mujahideen, came from Barbara Cabral, a witness who the prosecution showcased as critical. Despite a defense request, the government withheld material, significant, and non-cumulative impeachment evidence about Cabral, including government payments and interview notes.

*Id.* at 898. Further, the undisclosed interview notes revealed key inconsistencies between what the government's key witness told the FBI agents prior to trial and her testimony at trial:

> Taken together with the substantive issues described above, the undisclosed material would have allowed the defense to paint a picture of, at best, a witness whose shaky recollection was influenced by her gratitude to the FBI for its financial assistance; at worst, a witness making up a story to obtain money for medical bills, with the FBI revising its materials to match her anticipated testimony. Either story could have had a substantial impact on the jury.

*Id.* at 901. This *Brady* violation alone required reversal and a new trial. *Id.* at 898-903.

Second, the Ninth Circuit held that the government's production of summaries of the classified evidence (under CIPA) was an inadequate substitute for access to the classified evidence itself, particularly as it did not include a summary of classified information that was exculpatory or otherwise favorable to Mr. Sedaghaty. *Id.* at 903-07.

Finally, the Ninth Circuit held that a remand was necessary to determine whether the government's seizure of all of Al Haramain USA's documents, including items beyond the scope of the search warrant, was overbroad and not in good faith, therefore requiring suppression of improperly seized evidence. *Id.* at 910-15.

Although the government sought additional time to consider whether to seek rehearing *en banc*, the government later abandoned that request after the Solicitor General "determined that the government should not seek further review of this Court's opinion." *See United States v. Sedaghaty*, No. 11-30342, Letter to the Clerk (ECF No. 77) (9th Cir. Nov. 4, 2013) (attached as Attachment C to Kabat Decl., ¶ 5).

### C. The U.S. Government Agreed to Delist Al Haramain USA, and to Dismiss with Prejudice the Indictment of Mr. Sedaghaty.

Commencing in late 2013, and continuing into the Summer of 2014, as a result of the Ninth Circuit's decision in Mr. Sedaghaty's case, his defense counsel pressed the prosecution to comply with its obligations before conducting a new trial, including providing adequate summaries of the classified evidence, or access by cleared counsel to the classified evidence. Counsel for Al Haramain USA similarly continued to press OFAC for access to the full administrative record, including adequate summaries of the classified evidence, or access by cleared counsel to the classified evidence. *See* Kabat Decl., at ¶ 6.

The U.S. government then conceded that it could not prove the charges as to Mr. Sedaghaty, for the prosecutors agreed to dismiss the indictment with prejudice, pursuant to Rule 48(a), Fed. R. Crim. P., instead of conducting a new trial. *See United States v. Sedaghaty*, Motion to Dismiss, No. 06-CR-60005 (ECF No. 659) (D. Or. July 29, 2014); Order of Dismissal, No. 05-CR-60005 (ECF No. 660) (July 29, 2014) (Attachments D-E to Kabat Decl.). Thus, as of July 2014, the government abandoned any further prosecution of Mr. Sedaghaty.

As part of these discussions, the U.S. government also agreed to delist Al Haramain USA, provided that the organization pay a civil tax assessment from its blocked funds, thereby closing the prosecution, and that the organization agree to dissolve. *See* Kabat Decl., at ¶ 7. The requested corporate dissolution was a formality since Al Haramain USA had not conducted any operations since 2003 – other than challenging the OFAC designation and defending itself in this Court – and was only operating as a party in these legal proceedings.

Since this resolution would resolve both Mr. Sedaghaty's criminal case and the OFAC designation challenge, all counsel involved, including the U.S. government attorneys in the Department of Justice, OFAC, and the Internal Revenue Service, agreed that it was in the best interests of all involved – the U.S. government, Mr. Sedaghaty, and Al Haramain USA. *Id.* The delisting, the corporate dissolution, and the payment to the IRS, were at the express request of the Department of Justice, OFAC, and IRS, and reflect the U.S. government's considered judgment as to the best way to resolve Al Haramain USA's challenge to the OFAC designation.

The government's abandonment of the prosecution of Mr. Sedaghaty confirms that the government was unable to prove that he supported terrorism. Moreover, the U.S. government has never criminally charged Al Haramain USA, Mr. Sedaghaty, or Mr. Al-Buthe with terrorism offenses, and made no attempt to do so. It is unclear how Plaintiffs – who lack the government's resources, including classified evidence – would be able to prove their terrorism claims, when the government did not and could not do so as to Mr. Sedaghaty, and when the government failed to present any inculpatory evidence as part of the OFAC designation challenge.

Honorable Frank Maas
October 19, 2015
Page 7 of 10

OFAC then issued a license so that Al Haramain USA could pay the Internal Revenue Service $121,275 from its blocked funds. *See* Kabat Decl., at ¶ 8. In the meantime, the remaining blocked funds of Al Haramain USA (an estimated $257,725) remain frozen by the OFAC, pending dissolution and unwinding of the organization. *Id.*

In light of the pending discovery motion in this Court, counsel for Al Haramain USA made the decision in 2014 to postpone dissolution, in the event that this Court decides that some attorney fee award is appropriate. *Id.* at ¶ 9. Counsel made this decision despite the revelation that the Plaintiffs' counsel knowingly concealed from this Court the fact that one firm improperly "reconstructed" its time records months or years later, and the other firms improperly "enhanced" their time records in order to seek more time than was originally recorded, both of which are sufficient under Second Circuit precedent to strike the fee petition entirely.

### D. The United Nations' Delisting of Al Haramain USA and Mr. Al-Buthe.

During the same time period that the U.S. government agreed to delist Al Haramain USA, and to abandon the prosecution of Mr. Sedaghaty, the United Nations agreed to delist both Al Haramain USA and Mr. Al-Buthe, as Plaintiffs have conceded.

As for the OFAC delisting process, the United Nations process does not provide any mechanism for the Plaintiffs to participate in the delisting. The United Nations rules governing the listing and delisting process provide that all the members of the United Nations Security Council – including the United States, a permanent voting member – have the unilateral right to object to a delisting, including by requesting a formal vote by the Security Council.

In 1999, the United Nations established what is now known as the "1267 Committee" or the "Al Qaida Sanctions Committee," comprising all the Security Council members, to address alleged support of terrorism. *See* UN Security Council Resolution 1267, at ¶ 6 (Oct. 15, 1999).[2] The scope of this Committee was subsequently expanded to include requests to list alleged supporters of terrorism, and to consider delisting requests. When the United Nations was considering the delisting requests of Al Haramain USA and Mr. Al-Buthe, the applicable regulations made clear that all the members of the Security Council were also members of the Committee, and that these members had the right to object to a delisting, or to seek a vote by the Security Council as a whole on the delisting (where the United States, as one of five permanent members, has unilateral veto authority). *See* UN Security Council Resolution 1989, at ¶¶ 21-35 & Annex II, at 15-18 (June 17, 2011); UN Security Council Resolution 2161, at ¶¶ 41-61 & Annex II, at 19-23 (June 17, 2014).

---

[2] The United Nations Resolutions cited herein are online at: http://www.un.org/en/sc/documents/resolutions/ (viewed on Oct. 15, 2015)

Here, neither the U.S. government, nor any other member of the Security Council, voted against the delisting of either Al Haramain USA and Mr. Al-Buthe, or sought to have the Security Council as a whole take a vote. The delisting of Al Haramain USA took place on October 28, 2014, and the delisting of Mr. Al-Buthe on February 10, 2013. Al Haramain USA produced to the Plaintiffs 526 pages of documents (AHIF 4429-4954) relating to the delistings.

The denial of Al Haramain USA's motions to dismiss by this Court and by Judge Robertson turned in part on the fact that it was a designated entity or connected with other designated entities. *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 520 (S.D.N.Y. 2010); *Burnett v. Al Baraka Investment & Devel. Corp.*, 274 F. Supp. 2d 86, 104 (D.D.C. 2003). Therefore, the fact that Mr. Al-Buthe and Al Haramain USA are no longer designated by the United Nations, and that Al Haramain USA is to be delisted by the U.S. government, removes these designations as a basis for imposing liability on these defendants.

### IV.     Plaintiffs' Failure to Comply with Rule 37(a)(1).

This Court should deny the motion, given Plaintiffs' inexcusable failure to comply with Rule 37(a)(1), Fed. R. Civ. P., which expressly provides that:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*See* Rule 37(a)(1), Fed. R. Civ. P. Here, had counsel for Plaintiffs made any attempt to discuss their document requests regarding the OFAC and United Nations with counsel for Al Haramain USA, then Plaintiffs would have had to explain why they thought the discovery into the delistings was permissible when Plaintiffs have consistently argued to this Court that the delistings are not relevant to this litigation.

The purpose of this rule (formerly codified as Rule 37(a)(2)), is to narrow the scope of the dispute by giving the parties the opportunity to discuss the relevancy of the discovery requests and the legal or factual basis for the objections.

In order to comply with this rule, the parties must have a "live exchange of ideas and opinions," not merely an exchange of letters. *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998). As Magistrate Judge Francis explained:

> The meet-and-confer requirement mandates that parties actually "meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... what the

>    requesting party is actually seeking; what the discovering party is reasonably capable of
>    producing that is responsive to the request; and what specific genuine issues, if any,
>    cannot be resolved without judicial intervention."

*Id.* at *2-*3 (quoting *Deckon v. Chidebere*, No. 93 Civ. 7845 (LMM)(BAL), 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994)). The requisite certification must provide sufficient specificity as to these communications:

>    To satisfy the meet-and-confer requirement, Prescient [movant] had to provide an
>    account of a "live exchange of ideas and opinions," including details such as the positions
>    taken by each side, the extent to which the parties compromised their positions, and why
>    the negotiations proved fruitless.

*Id.* at *4 (denying Rule 37 discovery motion).

The courts in this jurisdiction have consistently denied Rule 37 motions where, as here, the movant made no effort (or an insufficient effort) to comply with this express requirement. *See*, *e.g.*, *Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529 (KMW)(KNF), 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) ("Accordingly, the plaintiff's motion is denied on that ground."); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW)(HBP), 2006 WL 2637836, at *7 (S.D.N.Y. Sept. 12, 2006) ("This deficiency alone is a sufficient ground for denying the motion."); *Prescient Partners*, 1998 WL 67672, at *3 ("Under ordinary circumstances, however, the failure to meet and confer mandates denial of a motion to compel.").

Further, under Rule 37(a)(5)(B), attorneys' fees and expenses can be awarded to the party opposing a Rule 37 motion where, as here, the movant failed to meet-and-confer before filing the motion. *Wiwa*, 2006 WL 2637836, at *9 (awarding attorneys' fees to party opposing the Rule 37 discovery motion).

Here, counsel for Plaintiffs did nothing more than make some off-the-cuff remarks over the telephone during a status conference. This was patently insufficient to satisfy Rule 37's meet-and-confer requirements, particularly where, as here, counsel for Plaintiffs never followed up on their off-the-cuff remarks.

If counsel for Plaintiffs had conducted the requisite meet-and-confer, they would have had to articulate why the delistings were relevant and hence discoverable, notwithstanding that Plaintiffs have argued to this Court that the delistings are not relevant to this litigation. Moreover, plaintiffs would have had to articulate why they needed the 526 pages that were produced by Al Haramain USA any sooner.

...

Honorable Frank Maas
October 19, 2015
Page 10 of 10

### V.     Conclusion.

For the foregoing reasons, this Court should deny the Plaintiffs' Motion. Plaintiffs are improperly seeking sanctions against Al Haramain USA, which did produce 526 pages of documents about the delistings, even though Plaintiffs have expressly argued to this Court that the delistings are not relevant. It is settled law, under both Rule 26(b)(1) and the Second Circuit's decisions in *Daval Steel* and *Fonseca*, that information that is not relevant is not discoverable and cannot form the basis for any discovery-related sanctions motion.

Further, the delistings were the result of confidential discussions within the Department of Justice, OFAC, and the IRS, as well as within the United Nations – discussions to which Plaintiffs had no right to participate. Thus, Plaintiffs had no need for the 526 pages of documents about the delistings prior to the delistings.

Plaintiffs, who failed to comply with the meet-and-confer obligations of Rule 37(a)(1), are improperly using Rule 37 to get the limited funds of an essentially defunct organization when they have been unable to prove any liability for supporting terrorism on the part of that organization – and will be unable to do so, in light of the U.S. government's inability to do so.

Sincerely,

*/s/ Alan R. Kabat*

Alan R. Kabat

Enc.

cc:  MDL-1570 Counsel of Record
        (by ECF)