**Attachment B**

L. Bernabei letter to OFAC
(Aug. 24, 2012).

# Bernabei & Wachtel, PLLC

ATTORNEYS AT LAW
1775 T STREET, N.W.
WASHINGTON, D.C. 20009

202.745.1942
FAX: 202.745.2627
WWW.BERNABEIPLLC.COM

LYNNE BERNABEI
DAVID WACHTEL
ALAN R. KABAT

PETER M. WHELAN
ELIZA BRINK DERMODY

By Hand Delivery and First Class Mail
August 24, 2012

Adam Szubin, Director
Office of Foreign Assets Control
U.S. Department of Treasury
1500 Pennsylvania Avenue, N.W., Annex
Washington, D.C. 20220

Re:     Al Haramain Islamic Foundation, Inc., License No. SDGT-343.

Dear Mr. Szubin:

The Al Haramain Islamic Foundation, Inc. (AHIF-Oregon), a not-for-profit corporation incorporated in Oregon, hereby seeks reconsideration of its designation, and specifically requests that it be removed from the list of Specially Designated Global Terrorists (SDGT).

There have been significant factual developments since OFAC re-designated AHIF-Oregon on February 6, 2008. At that time, OFAC asserted three reasons for AHIF-Oregon's designation: (1) AHIF-Oregon was owned or controlled by Aqeel Al-Aqil; (2) AHIF-Oregon was owned or controlled by Soliman Al-Buthe; and (3) AHIF-Oregon provided support to al Qaeda and other designated persons and entities as a branch office of AHIF-Saudi Arabia. Upon review, the U.S. Court of Appeals for the Ninth Circuit held that there was no basis for the first reason, because Al-Aqil had long since resigned from AHIF-Oregon's board. *Al Haramain Islamic Foundation, Inc. v. U.S. Dep't of the Treasury*, 660 F.3d 1019, 1030 (9th Cir. 2011), *reh'g denied in relevant part*, 686 F.3d 965 (9th Cir. 2012). Instead, it upheld the designation on the basis of the second and third reasons asserted. *Id.* at 1030-32. However, there have been significant developments since the February 2008 re-designation that warrant reconsideration of AHIF-Oregon's designation, as set forth below.

AHIF 4662

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 2 of 8

In addition, it is now established that OFAC must, as a matter of due process, provide AHIF-Oregon with an unclassified summary of any classified evidence upon which it relies for its designation decision, and/or provide counsel access to the classified evidence itself subject to security clearances and a protective order, in order to ensure that AHIF-Oregon has a meaningful opportunity to participate in its own defense. Thus, AHIF-Oregon expressly requests that OFAC do both in this case, as required by due process.

## I.      Soliman Al-Buthe No Longer Has Any Control Over AHIF-Oregon.

First, as of December 2011, Mr. Al-Buthe has resigned from the board of AHIF-Oregon. *See* Declaration of Soliman Al-Buthe, at ¶ 11 (Dec. 9, 2011) (attached hereto as Exhibit A). He has no further relationship to the corporation. Thus, AHIF-Oregon is no longer owned or controlled by Mr. Al-Buthe. Indeed, Al-Buthe's role has been solely nominal since AHIF-Oregon was first blocked in February 2004, as the organization has been unable to function in any meaningful sense since then. *Id.* at ¶¶ 8-9. Mr. Al-Buthe has no intention to participate in future AHIF-Oregon activities. Thus, this basis for designation no longer holds.

## II.      AHIF-Saudi Arabia is Defunct.

Second, AHIF-Saudi Arabia has been defunct for almost eight years; it closed in late 2004. *See Al Haramain*, 660 F.3d at 1026. Thus, to the extent that AHIF-Oregon's designation is based on its being a "branch office" of AHIF-Saudi Arabia, that relationship no longer exists. AHIF-Oregon cannot be a branch office of an entity that does not exist. AHIF-Oregon is separately incorporated, has an entirely separate board, and exists to this day, despite the fact that AHIF-Saudi Arabia went out of existence eight years ago.

AHIF-Oregon has no board members who are or were board members of AHIF-Saudi Arabia. The sole director of AHIF-Oregon is Thomas Nelson, who is not designated, and never was a director of AHIF-Saudi Arabia. *See* Declaration of Thomas H. Nelson in Support of Petition for De-Listing, at ¶ 5 (Feb. 16, 2012) (attached and incorporated hereto as Exhibit B); *see also* AHIF-Oregon, 2012 Annual Report (Oregon Secretary of State, Corporation Division) (Jan. 9, 2012) (attached and incorporated hereto as Exhibit C).

Thus, even if OFAC believed that AHIF-Oregon was once a "branch office" eight or more years ago – a fact AHIF-Oregon does not concede – it is no longer a branch office.

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 3 of 8

### III.   AHIF-Oregon's Alleged Relations Do Not Establish Support of Any Designated Entity or Person.

Third, the evidence OFAC has identified regarding AHIF-Oregon's alleged relations with AHIF-Saudi Arabia and AHIF-Albania does not show that AHIF-Oregon supported any designated persons, the asserted basis for its designation.  OFAC did not designate AHIF-Saudi Arabia until June 2008.  By that time AHIF-Oregon's assets had been blocked for more than four years, and therefore it could not possibly have supported AHIF-Saudi Arabia *after* its designation.  Indeed, the only "support" OFAC points to at all concerns a transfer of funds for humanitarian relief in Chechnya in 2000, eight years before AHIF-Saudi Arabia was designated, and one year before E.O. 13,224 was issued, authorizing designations.  Similarly, the only evidence OFAC adduced regarding AHIF-Oregon's relations to AHIF-Albania date back to 1999, several years before AHIF-Albania was designated, and two years before E.O. 13,224 issued.  *Al Haramain*, 660 F.3d at 1032.

While the Court of Appeals held that OFAC can take an organization's origin and history into account in making a designation decision, OFAC must find that the organization has actually done *something* that falls within the terms E.O. 13,224 sets forth as legal grounds for designation.  OFAC alleged that AHIF-Oregon was designated for supporting a designated person or entity.  Where, as here, the record does not demonstrate *any* support of a designated person or entity, and the only acts of AHIF-Oregon that are even questioned took place when there were no designated persons or entities to whom they could have provide material support, there is no legal authority under E.O. 13,224 for a designation.

### IV.   Designating AHIF-Oregon for Conduct That Was Not Prohibited at the Time It Occurred Violates Due Process.

Fourth, a Supreme Court case decided after OFAC's designation, and after the Court of Appeals for the Ninth Circuit ruled, establishes that if OFAC has designated AHIF-Oregon for conduct that was not prohibited at the time – such as support of AHIF-Albania or AHIF-Saudi Arabia years before they were designated – the designation violates due process for failing to provide adequate notice of the prohibited conduct.  In *FCC v. Fox TV Stations, Inc*., 132 S. Ct. 2307 (2012),  the Supreme Court held that imposition of a civil monetary sanction on two television broadcasters for brief nudity and expletives violated due process because the FCC's prohibition on offensive speech on broadcast television did not sufficient apprise the broadcasters that their conduct was forbidden.  As the Court stated, "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *Id.* at 2317.  The Court elaborated that "the void for vagueness

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 4 of 8

doctrine addresses at least two connected but discrete due process concerns:  first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."  *Id.*  Because the FCC's offensive broadcasting rules were insufficiently clear in specifying what sort of speech was forbidden, the Court invalidated the penalties on due process grounds.

Similarly, here, for OFAC to impose sanctions on AHIF-Oregon for conduct – association with AHIF-Albania and AHIF-Saudi Arabia when neither organization was a designated entity – violates AHIF-Oregon's due process rights.  At the time of the alleged associations, the associations were not proscribed.  Accordingly, if it violated due process for the FCC to impose sanctions based on an *unclear* prohibition, then *a fortiori* it violates due process for OFAC to impose sanctions based on *no prohibition at all.*

## V.      The United States Failed to Prove Support of Terrorism in the Prosecution of Perouz Sedaghaty.

Fifth, recent legal proceedings in a criminal case against Perouz Sedaghaty shed light on the absence of evidence that AHIF-Oregon supported terrorism.  In 2005, the U.S. government indicted AHIF-Oregon, Mr. Al-Buthe, and Perouz Sedaghaty for alleged violations of the tax and customs laws, relating to transfers of funds from AHIF-Oregon to the Saudi Joint Relief Committee – funds that AHIF-Oregon intended be used for charitable purposes in supporting humanitarian relief efforts in Chechnya.  OFAC asserted that these funds were instead used for supporting Chechen terrorists.  *Al Haramain*, 660 F.3d at 1032.  The government voluntarily dismissed AHIF-Oregon.  *See United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript, at 20-21 (ECF No. 21) (D. Or. Sept. 16, 2005) (attached hereto as Exhibit D).  Messrs. Al-Buthe and Sedaghaty were *not* indicted or charged with any terrorism-related charges.  *See United States v. Sedaghaty*, Cr. No. 05-60008-HO, Amended Indictment (ECF No. 22) (D. Or. Sept. 21, 2005) (attached and incorporated hereto as Exhibit E).

Mr. Sedaghaty was convicted of conspiracy to defraud the IRS and filing a false tax return.  *United States v. Sedaghaty*, Cr. No. 05-60008-HO, Jury Verdict (ECF No. 466) (D. Or. Sept. 9, 2010) (attached and incorporated hereto as Exhibit F).  At sentencing, the government sought an enhanced sentence on the ground that Mr. Sedaghaty had supported terrorism by participating in the AHIF-Oregon transfer of funds to Chechnya, the same transfer that OFAC relied upon in designating AHIF-Oregon.  U.S. District Judge Hogan rejected the request, holding that the government had *not* proven that any funds went to support terrorism, and, therefore, denied the government's request for a terrorism enhancement in sentencing:

AHIF 4665

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 5 of 8

> … the remaining [sentencing] increase sought by the government is for
> application of a terrorism enhancement.  And there is little doubt in my mind that
> this money went to Chechnya, and that it went to the mujahideen, **but I find that
> there has been a failure to prove the terrorist [sentencing] enhancement . . .
> by clear and convincing evidence . . . because of the failure to prove a link
> between the defendant and the money being used for terrorist activities.**

*United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript, at 6-7 (ECF No. 588) (D. Or.
Sept. 27, 2011) (emphasis added) (excerpts attached and incorporated hereto as Exhibit G).  Mr.
Sedaghaty's appeal of the conviction is pending.  *See United States v. Sedaghaty*, C.A. No. 11-
30342 (9th Cir.).

Therefore, in reassessing the relevance to AHIF-Oregon's designation of the donation
directed to Saudi Arabia for humanitarian relief in Chechnya, OFAC should take into account the
fact that the U.S. government was unable to prove at trial that AHIF-Oregon had provided any
support to terrorism in Chechnya.  As noted above, the donation could not possibly have
supported any designated entities in Chechnya, as there were none at the time.  And, as the
federal court held in Mr. Sedaghaty's case, there is no evidence that the donation supported any
terrorist activity, either.

**VI.   The Recent Developments And Legal Decisions Undermine OFAC's Initial
Decision, And Require Review Of The Entire Record, As Well As
Constitutionally Adequate Notice To AHIF-Oregon Of The Classified
Record.**

Finally, reconsideration of AHIF-Oregon's designation requires review of the full
administrative record, in order to assess whether, on the full record, designation is still warranted
in light of the above developments.  Accordingly, AHIF-Oregon's request is based, in addition to
the above and materials submitted herewith, on <u>all</u> of the evidence and arguments it previously
submitted.  As OFAC has lost parts of the record in the past, we note that these documents are
now collected in the appendix in the Court of Appeals in *Al Haramain Islamic Foundation, Inc.
v. U.S. Dep't of the Treasury*, No. 10-35032 (ECF No. 19) (9th Cir. July 30, 2010) (ER 0168-
2334, corresponding to Administrative Record 0102-1941 & 2000-2201).  We request that the
agency reconsider the designation in light of all evidence in the record.

In particular, we direct OFAC's attention to the following pages in the Administrative
Record ("AR" = OFAC's Administrative Record; "ER" = Excerpts of Record filed with the

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 6 of 8

Ninth Circuit), which address OFAC's stated concerns and demonstrate that there is no basis in the Administrative Record for showing that AHIF-Oregon provided support to any designated entity or any terrorist group or activity:

> AR 0365-0396 (ER 0476-0507);
> AR 0397-0410 (ER 0509-0522);
> AR 0426-0430 (ER 0540-0544);
> AR 0592 (ER 0706);
> AR 0597-0613 (ER 0714-0730);
> AR 0795-0973 (ER 0926-1104);
> AR 0974-0999 (ER 1105-1130);
> AR 1110-1118 (ER 1259-1266);
> AR 1462-1871 (ER 1611-2018); and
> AR 2052-2169 (ER 2181-2298).

This evidence shows that AHIF-Oregon's delivery of a donation to Saudi Arabia for humanitarian relief in Chechnya under the aegis of the Saudi Joint Relief Committee (SJRC), was indeed intended for humanitarian relief, and was distributed by an officially approved humanitarian aid organization licensed and approved by the Russian and Saudi governments. This evidence includes court filings by the SJRC, a sovereign agency of the Kingdom of Saudi Arabia, which show that the SJRC's work in Chechnya was expressly approved by the Russian and Saudi governments. Had the SJRC been funding terrorism, surely the Russian government would not have approved its actions.

In addition, the evidence shows that AHIF-Oregon's only support of AHIF-Albania consisted of a $2,000 donation made in 1999, *i.e.*, five years before that entity was designated in 2004, was not used for any unlawful purpose, and was not provided to any designated entity or person. *See* AR 0364 (ER 0475); AR 1108 (ER 1257). Indeed, not only was AHIF-Albania not designated as an SDGT in 1999; no organizations were. Accordingly, this single donation cannot support a finding that AHIF-Oregon supported any designated entities, OFAC's asserted basis for designation.

In addition, two declarations included in the Ninth Circuit's Excerpts of Record, which were originally filed with the U.S. District Court for the District of Oregon, provide further support for AHIF-Oregon's motion for reconsideration. *See* ER 2341-2363 (U.S. District Court ECF No. 103) (Feb. 16, 2009). These declarations make clear that AHIF-Oregon was not involved with the operations of any other "Al Haramain" entity, and that Mr. Al-Buthe's involvement with AHIF-Oregon essentially ceased after the 2004 designation, other than in

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 7 of 8

unsuccessfully attempting to obtain documents from AHIF-Saudi Arabia to support the OFAC designation challenge. (As noted above and in the declaration submitted herewith, Mr. Al-Buthe has now resigned even his nominal position on the Board, and has no involvement with AHIF-Oregon).

In its appellate briefs filed with the U.S. Court of Appeals for the Ninth Circuit, AHIF-Oregon directly addressed the evidence the government placed in the Administrative Record, showing in detail that none of the documents the government cited in the administrative record supported its assertion that AHIF-Oregon had provided material support to any designated persons or entities at any time. *See* Appellants' Opening Br. at 58-59 (July 30, 2010); Appellants' Reply Br. at 19-24 (Oct. 27, 2010). OFAC should address those arguments as well in its reconsideration, as it did not do so in its initial designation or in the 2008 redesignation, and in light of the recent developments listed above, the basis for designation is called into serious question.

Finally, as the Court of Appeals held, AHIF-Oregon has a constitutionally guaranteed opportunity to respond to *all of the evidence* upon which OFAC relies in reaching a decision upon this request, including the classified evidence. *Al Haramain*, 660 F.3d at 1036-38. The Court of Appeals ruled that as a U.S.-based entity, AHIF-Oregon is entitled to due process, and that while due process may permit reliance on classified information in some circumstances, it requires OFAC, when relying on classified information, to pursue mitigation measures to ensure that AHIF-Oregon has a meaningful opportunity to respond. These measures, the Court noted, specifically include the provision of an unclassified summary of the classified evidence, and/or granting access to an attorney for AHIF-Oregon subject to a security clearance and reasonable limits on his or her further disclosure of that evidence. *Id.* Absent such efforts, AHIF-Oregon's due process rights with respect to reconsideration will be violated. Therefore, AHIF-Oregon hereby requests a summary of all classified information relied upon sufficient to permit it to participate in its defense, and also seeks access for its counsel to any classified information upon which OFAC relies. Counsel are willing to submit to security clearance review for that purpose.

## VII.   CONCLUSION

For all the above reasons, AHIF-Oregon requests reconsideration and de-listing.

Adam Szubin, Director
Office of Foreign Assets Control
August 24, 2012
Page 8 of 8

Sincerely,

Lynne Bernabei/AHL

Lynne Bernabei

Enc.

cc:    J. Ashlee Albies, Esquire
       Stephen Buckingham, Esquire
       David D. Cole, Esquire
       Diane Kelleher, Esquire
       Thomas S. Nelson, Esquire
         (by e-mail)

AHIF 4669

**Exhibits to OFAC Petition for Reconsideration**

A.      Declaration of Soliman Al-Buthe (Dec. 9, 2011).

B.      Declaration of Thomas H. Nelson in Support of Petition for De-Listing (Feb. 16, 2012).

C.      AHIF-Oregon, 2012 Annual Report (Oregon Secretary of State, Corporation Division) (Jan. 9, 2012).

D.      *United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript (ECF No. 21) (D. Or. Sept. 16, 2005) (excerpts).

E.      *United States v. Sedaghaty*, Cr. No. 05-60008-HO, Amended Indictment (ECF No. 22) (D. Or. Sept. 21, 2005).

F.      *United States v. Sedaghaty*, Cr. No. 05-60008-HO, Jury Verdict (ECF No. 466) (D. Or. Sept. 9, 2010).

G.      *United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript (ECF No. 588) (D. Or. Sept. 27, 2011) (excerpts).

**Exhibit A**

Declaration of Soliman Al-Buthe
(Dec. 9, 2011).

AHIF 4671

# BEFORE THE UNITED NATIONS
## SECURITY COUNCIL RESOLUTION 1267 SANCTIONS COMMITTEE

| | |
|---|---|
| Soliman H.S. Al-Buthi (Ref. No. No. QI.A.179.04) | Declaration of Soliman Al-Buthi |

Upon being placed under oath, Soliman H.S. Al-Buthi deposes and says:

1.      I am a Saudi Arabian national currently residing in Riyadh, Saudi Arabia.

2.      I am employed in the position of General Director of the Environmental Health Department for the Municipality of Riyadh. In that position it is my duty to protect the citizens of the City of Riyadh from environmental threats resulting from intentional, negligent, and natural forces. I report directly to the Mayor of the City of Riyadh and supervise more than 700 municipal employees.

3.      Beginning in approximately 1998 I acted as unpaid volunteer liaison between Al-Haramain Islamic Foundation (Saudi Arabia) ("AHIF Saudi Arabia") and Al-Haramain Islamic Foundation, Inc., a separate Islamic charity operating under Oregon law ("AHIF Oregon").

4.      For personal reasons I resigned my participation and position with AHIF Saudi Arabia in September 2002. I retained my position on the board of directors of AHIF Oregon.

5.      On September 9, 2004, OFAC issued an administrative declaration that I am a "specially designated global terrorist" ("SDGT"). At the same time OFAC issued a similar declaration that AHIF Oregon was a SDGT. OFAC did not state whether I was being designated for my relationship to AHIF Oregon, whether AHIF Oregon was being designated for its relationship to me, or whether we were both designated for the same or independent reasons.

Page 1 – Declaration of Soliman Al-Buthi

AHIF 4672

6.     On September 24, 2004, this Committee listed me as an individual associated with Al-Qaida organization and AHIF Oregon as an entity associated with Al-Qaida organization. The Committee did not state the evidentiary basis for its actions, or any of the specific allegations underlying its action.  Like OFAC, it did not state whether I was being designated for my relationship to AHIF Oregon, whether AHIF Oregon was being designated for its relationship to me, or whether we were both designated for the same or independent reasons.  The current entry on this Committee's list reads as follows:

QI.A.179.04. *Name: 1: SULIMAN 2: HAMD 3: SULEIMAN 4: AL-BUTHE Title: na Designation: na DOB: 8 Dec. 1961 POB: Cairo, Egypt *Good quality a.k.a.: Soliman H.S. Al Buthi Low quality a.k.a.: na *Nationality: Saudi Arabia Passport no.: a) B049614 b) Passport Number C 536660 issued on 5 May 2001 and expired on 11 Mar. 2006 National identification no.: na Address: na *Listed on: 28 Sept. 2004 (amended on 23 Apr. 2007)
*Other information: na.

7.     I do not now have, nor have I ever had, any relationship whatsoever, direct or indirect, with Al-Qaida, the Taliban, or with Usama bin Laden. Moreover, I have never supported mujahedeen in Chechnya or anywhere else in the world.

8.     On February 18, 2004, OFAC froze the assets of AHIF Oregon pending an investigation into its activities.  OFAC took no action whatsoever regarding me at that time.  On September 9, 2004, OFAC extended the freeze of AHIF Oregon's assets and designated the organization, making it illegal to engage in any transaction with it or on its behalf.   AHIF Oregon challenged its designation in court, and that challenge is still pending.  Since the initial freeze in February 2004, however, AHIF Oregon has been effectively shut down, unable to operate in any manner as a result of the OFAC restrictions.

9.     Because the assets of AHIF Oregon have been frozen and the organization has effectively been shut down since February 2004 I have not been

Page 2 – Declaration of Soliman Al-Buthe

AHIF 4673

able to take any action whatsoever to further the activities or aims of AHIF Oregon. Thus, while I remained as a director of the AHIF Oregon while the organization and I challenged the validity of our designations, I had no operational role and engaged in no activities on the organization's behalf.

10.    I did not resign earlier because I sought to maintain the status quo while AHIF Oregon and I challenged our listings and designations; because I was never put on notice that my board membership was a cause of my listing; and because my involvement once the organization was subject to a freeze was purely formalistic, in that I could do and did nothing in furtherance of the organization's activities. Now that the Committee's response to my prior petition has put me on notice that my listing is due to my continuing relationship with AHIF Oregon, I have severed even the purely formalistic relationship I maintained until this time.

11.    I have now formally resigned as a member of the board of directors of AHIF Oregon. Consequently, except for my supporting legal challenges to AHIF Oregon's designation, in addition to having taken no actions on behalf of AHIF Oregon since February 2004, I now have no ties with or relationship with AHIF Oregon whatsoever. As the Ombudsperson's September 1, 2011 letter to me in connection with my earlier delisting request stated that a principal reason for the denial of my delisting was that I continued to be a board member of AHIF Oregon, and AHIF Oregon is listed, that material fact has now changed.

12.    In reviewing the classified files released publicly by Wikileaks since the filing of my initial petition, I discovered a document discussing me. That document is an October 6, 2006, cable from the American Embassy in Riyadh to the United States Treasury Department in Washington D.C., and is attached as Exhibit 1 to this Declaration. As I have never been informed as to the basis for my

Page 3 – Declaration of Soliman Al-Buthi



listing by the Committee, I cannot know what evidence the Committee has considered, if any. But to the extent that the allegations in this document are in any way relevant to my listing, I would like to note that this document contains significant and material misstatements of objective facts. Specifically, in two short paragraphs Exhibit 1 makes seven false claims regarding me:

(i)     That I have "control of [Riyadh Municipality's Department of Gardens and Beautification's] finances," Exhibit 1 at ¶ 2,

(ii)    That the government of the Kingdom of Saudi Arabia required me "to turn in seven passports," *id.*,

(iii)   That the government of the Kingdom of Saudi Arabia "is paying for the schooling of [my] three children, *id.*,"

(iv)    That "[i]n addition to working for [the Saudi Arabia Government], Al-Buthe has an export-import business," *id.*,

(v)     That I am engaged in that export-import business "with his brother," *id.*,

(vi)    That my brother "is a textbook publisher in the KSA," *id.*, and

(vii)   That the government of the Kingdom of Saudi Arabia has "control over [my] children's education." *Id.* ¶ 3.

13.     Each of the seven statements of fact quoted above is in error:

(i)     I never had control over the finances of the Department of Gardens and Beautification,

(ii)    I never had seven passports (I have had only one valid passport at any one time), and the government of the Kingdom of Saudi Arabia never required me to turn in any passport or other travel document;



AHIF 4675

indeed, I today have in my possession the Saudi Arabian passports I have ever had, all of which have expired;

  (iii) My four (not three) children all attend or attended public schools and thus the government never was "paying for the schooling of [my] three children,"

  (iv) I never have had and do not now have an "export-import business,"

  (v) None of my brothers has had and does not now have an "export-import business,"

  (vi) None of my siblings is a "text-book publisher" or, for that matter, a publisher of any other written materials, and

  (vii) The government of the Kingdom of Saudi Arabia never has had and does not now have "control over [my] children's education."

14. In short, to the extent that the Committee declined my delisting because of my position as a member of the board of directors of AHIF Oregon, I no longer hold such a position. Moreover, as made clear above, except for participating in the legal challenges to AHIF Oregon's designation, for all practical purposes I have done nothing on AHIF Oregon's behalf since February 2004, nearly eight years ago. Accordingly, I respectfully request that the Committee consider delisting me in light of this new information and these materially changed circumstances.


DATED at Riyadh, Kingdom of Saudi Arabia, this 9th day of December 2011.


Soliman H.S. Al-Buthi

Page 5 – Declaration of Soliman Al-Buthi

AHIF 4676

| **Reference id** | 06RIYADH83... aka Wikileaks id #82200 ? |
|---|---|
| **Subject** | TERRORISM FINANCE: UNSC 1267 DESIGNEE, SULIMAN AL-BUTHE, FEATURED IN LOCAL PRESS, STILL ON SAG PAYROLL |
| **Origin** | Embassy Riyadh (Saudi Arabia) |
| **Cable time** | Tue, 17 Oct 2006 15:34 UTC |
| **Classification** | SECRET//NOFORN |
| **Source** | http://wikileaks.org/cable/2006/10/06RIYADH8314.html |
| **Referenced by** | 06RIYADH8415, 06RIYADH8416, 06RIYADH8858 |
| **History** | First published on Thu, 1 Sep 2011 23:24 UTC |

VZCZCXRO1845 OO RUEHDE DE RUEHRH #8314 2901534 ZNY SSSSS ZZH O 171534Z OCT 06 FM AMEMBASSY RIYADH TO RUEATRS/DEPT OF TREASURY WASHDC IMMEDIATE RUEHC/SECSTATE WASHDC IMMEDIATE 2719 INFO RHEHNSC/NSC WASHDC PRIORITY RHMCSUU/FBI WASHINGTON DC PRIORITY RUEAIIA/CIA WASHDC PRIORITY RUEHZM/GULF COOPERATION COUNCIL COLLECTIVE RUEHJI/AMCONSUL JEDDAH 7830 Hide header S E C R E T RIYADH 008314 SIPDIS NOFORN SIPDIS E.O. 12958: DECL: 10/17/2031 TAGS: EFIN *[Financial and Monetary Affairs]*, PTER *[Terrorists and Terrorism]*, KTFN *[Terrorism Finance Traffic]*, ETTC *[Trade and Technology Controls]*, PREL *[External Political Relations]*, SA *[Saudi Arabia]* SUBJECT: TERRORISM FINANCE: UNSC 1267 DESIGNEE, SULIMAN AL-BUTHE, FEATURED IN LOCAL PRESS, STILL ON SAG PAYROLL Classified By: Counselor for Economic Affairs Robert Silverman for reas ons 1.4 (b), (d), and (g). ¶1. (U) United Nations Security Council Resolution (UNSCR) 1267 Designee, Suliman H. Al-Buthe (aka Solaiman Al-Buthi) was featured in an article published in the Saudi Gazette, a mainstream Saudi publication censored by the Saudi Arabian Government (SAG). Al-Buthe, the Assistant General Manager for the Department of Gardens and Beautification, Riyadh Municipality, boasted about Saudi's three-day Eid celebration, which includes a circus and fireworks. ¶2. (C) Al-Buthe, who was designated in 2004 by the UNSC 1267 Committee for ties to the Taliban and Al'Qaida through the Al Haramain Islamic Foundation, has worked for the Riyadh Municipality, Department of Gardens and Beautification, for over twenty years and has control of its finances. Following his 1267 Designation, the SAG has promoted Al-Buthe twice. Currently Al-Buthe oversees a SAR 30 million (USD $8 million) project for a sporting complex in Riyadh. In 2004, the SAG enforced UNSCR 1267 sanctions by freezing Al-Buthe's assets and forcing him to turn in seven passports; he has been unable to leave the Kingdom of Saudi Arabia (KSA) since this time. Due to these restrictions, the SAG pays his salary in cash and is paying for the schooling of his three children in Riyadh. In addition to working for the SAG, Al-Buthe has an import/export business in Riyadh with his brother, who is a textbook publisher in the KSA. ¶3. (S/NF) Comment. According to intelligence sources, the SAG may have provided at least two radical clerics with government employment to keep a watchful eye on them; the SAG's employment of Al-Buthe and its control over his children's education may be a way for the SAG to monitor Al-Buthe. However, while the SAG has complied with the minimum sanctions imposed by UNSCR 1267, their continued comfortable employment of this 1267 designee, specifically giving him budgetary responsibilities, is a troubling indicator of the seriousness with which the SAG takes the designation - at least in this case. Post plans on raising this case in our post-Eid meetings with counterterrorism officials. End comment. OBERWETTER

**Exhibit 1**

**Exhibit B**

Declaration of Thomas H. Nelson in Support of Petition for De-Listing
(Feb. 16, 2012).

AHIF 4678

# BEFORE THE UNITED NATIONS
## SECURITY COUNCIL RESOLUTION 1267 SANCTIONS COMMITTEE

| | |
|---|---|
| Soliman H.S. Al-Buthi (Ref. No. No. QI.A.179.04) | Declaration of Thomas H. Nelson in Support of Petition for De-Listing |

Upon being placed under oath Thomas H. Nelson deposes and says:

1.      I am a citizen of the United States and an attorney at law admitted into practice in the State of Oregon. I reside in Zigzag, Oregon.

2.      I began representing Petitioner Soliman Al-Buthi in the summer of 2004, before he was formally designated as a "specially designated global terrorist" by the Office of Foreign Assets Control ("OFAC") of the United States Treasury Department.  My representation has been authorized by licenses issued periodically by OFAC.

3.      When OFAC in February 2004 "froze" the assets of Al-Haramain Islamic Foundation ("AHIF Oregon"), an Oregon non-profit entity, it ended the ability of AHIF Oregon to function. When OFAC formally designated AHIF Oregon, it thereby prohibited United States citizens from taking any action in support of the charity without first obtaining a license from OFAC.

4.      Since the designation of AHIF Oregon I have continuously maintained licenses from OFAC to provide legal and other services to the charity. These licenses have authorized me to engage in litigation and other activities intended to remove the designation with the ultimate purpose of distributing the seized assets to another charitable organization or organizations under the legal doctrine of *cy pres.*

Page 1 - Declaration of Thomas H. Nelson

EXHIBIT B

5.    As a result of the inability of former co-director of AHIF Oregon Pirouz Sedaghaty (commonly known as "Pete Seda") to continue serving as a director and the formal resignation of Petitioner Soliman Al-Buthi as director, I am the sole remaining director of AHIF Oregon. I am attaching as Exhibit 1 to this Declaration a printout of the current status of AHIF Oregon as of today's date that I obtained from the Oregon Secretary of State's website.

6.    Prior to the indictment of Petitioner in February 2005 I had several meetings with Assistant U.S. Attorney Christopher Cardani, who was one of the two prosecutors in the criminal case against Petitioner, co-defendant Pete Seda, and AHIF Oregon. During one of those meetings Mr. Cardani informed me that the indictment would not include a terrorism claim because there was insufficient evidence to support such a claim.

7.    I attended every day of the trial of co-defendant Pete Seda, and also attended the sentencing hearing. As a result I am intimately familiar with the issues and their resolution in that prosecution.

8.    I am one of the trial and appellate attorneys in the case of *Al-Haramain Islamic Foundation v. Bush*, which involves AHIF Oregon's challenge to OFAC's designation as a "specially designated global terrorist." OFAC initially based its designation on "direct links" to Usama bin Laden, which allegation was strongly contested. Subsequently, on February 6, 2008, OFAC "resdesignated" AHIF Oregon; in this redesignation OFAC omitted any reference to links to Usama bin Laden. See Petition Exhibit 4.

Dated at Zigzag, Oregon, this 16th day of February 2012.

*Thomas H. Nelson*

Thomas H. Nelson

Page 2 - Declaration of Thomas H. Nelson

EXHIBIT B

AHIF 4680

# Business Registry Business Name Search

## Business Entity Data

02-16-2012
09:47

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 674259-84 | DNP | ACT | OREGON | 02-11-1999 | 02-11-2013 | |

| Entity Name | AL HARAMAIN ISLAMIC FOUNDATION, INC. |
|---|---|
| Foreign Name | |
| Non Profit Type | PUBLIC BENEFIT |

## Associated Names

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | | | |
|---|---|---|---|---|---|---|
| Addr 1 | %BOX 1211 | | | | | |
| Addr 2 | | | | | | |
| CSZ | WELCHES | OR | 97067 | | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | | Start Date | 10-03-2005 | Resign Date | |
|---|---|---|---|---|---|---|---|
| Name | THOMAS | H | NELSON | | | | |
| Addr 1 | 24525 E WELCHES RD | | | | | | |
| Addr 2 | | | | | | | |
| CSZ | WELCHES | OR | 97067 | | Country | UNITED STATES OF AMERICA | |

| Type | MAL | MAILING ADDRESS | | | | |
|---|---|---|---|---|---|---|
| Addr 1 | %BOX 1211 | | | | | |
| Addr 2 | | | | | | |
| CSZ | WELCHES | OR | 97067 | | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date | |
|---|---|---|---|---|---|
| Name | THOMAS | H | NELSON | | |
| Addr 1 | %BOX 1211 | | | | |
| Addr 2 | | | | | |
| CSZ | WELCHES | OR | 97067 | Country | UNITED STATES OF AMERICA |

EXHIBIT B

AHIF 4681

| Type | SEC SECRETARY | | | | | Resign Date | |
|---|---|---|---|---|---|---|---|
| Name | THOMAS | H | NELSON | | | | |
| Addr 1 | %BOX 1211 | | | | | | |
| Addr 2 | | | | | | | |
| CSZ | WELCHES | OR | 97067 | | Country | UNITED STATES OF AMERICA | |

<br><br>

New Search

# Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|---|---|---|---|---|
| AL HARAMAIN ISLAMIC FOUNDATION, INC. | EN | CUR | 03-08-1999 | |
| AL HARAMIAN ISLAMIC FOUNDATION, INC. | EN | PRE | 02-11-1999 | 03-08-1999 |

<br>

Please read before ordering Copies.

New Search

## Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|---|---|---|---|---|---|---|
| 🖹 | AMENDED ANNUAL REPORT | 01-09-2012 | | FI | | |
| 🖹 | AMENDED ANNUAL REPORT | 01-05-2011 | | FI | | |
| 🖹 | AMENDED ANNUAL REPORT | 01-11-2010 | | FI | | |
| | ANNUAL REPORT | 01-06-2009 | | FI | | |
| | ANNUAL REPORT | 02-08-2008 | | FI | | |
| | AMENDED ANNUAL REPORT | 01-23-2007 | | FI | | |
| | ANNUAL REPORT PAYMENT | 01-31-2006 | 01-29-2006 | SYS | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 10-03-2005 | | FI | Agent | |
| | ANNUAL REPORT PAYMENT | 04-01-2005 | 03-31-2005 | SYS | | |
| | NOTICE LATE ANNUAL | 02-18-2005 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 02-04-2004 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 02-13-2003 | | SYS | | |
| | ANNUAL REPORT | | | | | |

EXHIBIT B

AHIF 4682

| | | | | | |
|---|---|---|---|---|---|
| | PAYMENT | 01-08-2002 | | SYS | |
| | ANNUAL REPORT PAYMENT | 01-23-2001 | | SYS | |
| | CHANGED RENEWAL | 02-10-2000 | | FI | |
| | STRAIGHT RENEWAL | 02-04-2000 | | FI | |
| | NB AMENDMENT | 03-08-1999 | | FI | |
| | ENTITY NAME CHANGE | 03-08-1999 | | FI | |
| | NEW FILING | 02-11-1999 | | FI | |

© 2012  Oregon Secretary of State.  All Rights Reserved.

EXHIBIT B

AHIF 4683

**Exhibit C**

AHIF-Oregon, 2012 Annual Report
(Oregon Secretary of State, Corporation Division)
(Jan. 9, 2012).



Secretary of State
Corporation Division
255 Capitol Street NE, Suite 151
Salem, OR 97310-1327

Phone:(503)986-2200
www.filinginoregon.com

**2012 ANNUAL REPORT**
Registry Number: **674259-84**
Date of Incorporation: 02/11/1999
Fee: **$50.00**
Due Date: **02/11/2012**
Type: DOMESTIC NONPROFIT CORPORATION

0026
AL HARAMAIN ISLAMIC FOUNDATION, INC.
%BOX 1211
WELCHES OR 97067

**FILED**

**JAN 0 9 2012**
OREGON
SECRETARY OF STATE

**Name of Domestic Nonprofit Corporation**
AL HARAMAIN ISLAMIC FOUNDATION, INC.

**Jurisdiction:** OREGON                    **Nonprofit Type:** Public Benefit

The following information is required by statute. Please complete the entire form. If any of the information is incorrect, you can make changes on this form. Failure to submit this Annual Report and fee by the due date may result in inactivation on our records.

**Registered Agent**
THOMAS H NELSON
24525 E WELCHES RD
WELCHES OR 97067

If the Registered Agent has changed, the new Agent has consented to the appointment. Oregon street address required.

**1) Type of Business**

**2) Principal Place of Business**  (Str. address,city,state,zip)

%BOX 1211
WELCHES OR 97067

**3) Mailing Address**  (Address,city,state,zip)

%BOX 1211
WELCHES OR 97067

**4) President Name and Address**
THOMAS H NELSON
%BOX 1211
WELCHES OR 97067

**5) Secretary Name and Address**
THOMAS H NELSON
%BOX 1211
WELCHES OR 97067

**6) Signature**
_Thomas Nelson_

**8) Date**
12/29/2011

AL HARAMAIN ISLAMIC FOUNDATION,



67425984-13214824     RENANA

**Make check payable to "Corporation Division" and mail completed form with payment to Secretary of State, Corporation Division, 255 Capitol ST NE Suite 151, Salem, OR 97310-1327.**
Note: You can also fax to (503) 378-4381. Filing fees may be paid with VISA or MasterCard. Submit the card number and expiration date on a separate page for your protection.

ANRPF1  12/23/11   EXHIBIT C

AHIF 4685

**Exhibit D**

*United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript
(ECF No. 21) (D. Or. Sept. 16, 2005) (excerpts).

AHIF 4686

1

1      UNITED STATES DISTRICT COURT

2         DISTRICT OF OREGON

3

4    THE HON. THOMAS M. COFFIN, JUDGE PRESIDING

5

6                   -

7  UNITED STATES OF AMERICA,          )
                                      )
8                 Government,         )
                                      )
9            v.                       ) No. 05-60008-01
                                      )
10 AL-HARAMAIN ISLAMIC FOUNDATION,    )
                                      )
11               Defendant.           )
   _____    )

12

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              EUGENE, OREGON

16

17        THURSDAY, SEPTEMBER 8, 2005

18              PAGES 1 - 22

19

20

21              Kristi L. Anderson
                Official Federal Reporter
22              United States Courthouse
                211 East Seventh Avenue
23              Eugene, Oregon 97401
                (541) 465-6503
24

25

20

1    of jurisdiction.  We both have briefly discussed this.  I'm

2    not sure, and I say this with due respect, I don't know what

3    the court's powers are to enter with finality answers to

4    these motions.  I don't know if it has to be in report and

5    recommendation form to Judge Hogan or whether the court has

6    the power to -- to order the response to these motions.

7            THE COURT:  Okay.  Well, I don't know for sure

8    either, but I'm going to grant your motion to dismiss

9    without prejudice.

10           I will look at the -- both versions of the

11   proposed redactions, and I will do a minute order directing

12   which redacted indictment will be substituted.

13           But I will -- whichever form it is, I will direct

14   the government to do the redacting and then submit a clean

15   redacted indictment in the file.

16           I'm not going to destroy, shred, or otherwise

17   obliterate the current indictment that's in the file.  What

18   is written is written.  And -- but there will also be a

19   record in the file of the government's motion to dismiss.

20           And either side that wishes to object to my ruling

21   and figure out whether they want to object to the District

22   Court or file an appeal directly with the Ninth Circuit, I

23   don't care what you do.  I will let you worry about that.

24           Okay.  Thank you.

25           MR. BLACKMAN:  Thank you very much, Your Honor.

21

```
 1              THE COURT:   Okay.
 2              THE CLERK:   This court's in recess.
 3              (The proceedings were concluded this
 4              8th day of September, 2005.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

EXHIBIT D

AHIF 4689

22

1            I hereby certify that the foregoing is a true and

2    correct transcript of the oral proceedings had in the

3    above-entitled matter, to the best of my skill and ability,

4    dated this 16th day of September, 2005.

5

6

7    _____

     Kristi L. Anderson, Certified Realtime Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AHIF 4690

**Exhibit E**

*United States v. Sedaghaty*, Cr. No. 05-60008-HO, Amended Indictment
(ECF No. 22) (D. Or. Sept. 21, 2005).

AHIF 4691

KARIN J. IMMERGUT, OSB #96314
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
701 High Street
Eugene, OR 97401
(541) 465-6771
chris.cardani@usdoj.gov

FILED'05 SEP 21 15:51 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-60008-HO |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SUBMISSION |
| | ) | OF REDACTED INDICTMENT |
| vs. | ) | |
| | ) | |
| PIROUZ SEDAGHATY, | ) | |
| a/k/a Pete Seda, Perouz Seda Ghaty | ) | |
| and Abuy Yunus; and | ) | |
| | ) | |
| SOLIMAN HAMD AL-BUTHE, | ) | |
| a/k/a Soliman Al-Buthe, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, through its undersigned counsel, herein submits

the attached redacted indictment for filing.

After a hearing on September 8, 2005, this Court granted the government's

motion to dismiss without prejudice defendant Al-Haramain Islamic Foundation, Inc.

from the indictment. (Docket entry #19). During the hearing, counsel for the

EXHIBIT E
AHIF 4692

government and defendant offered different versions of a proposed redacted indictment based on the potential dismissal of defendant Al-Haramain Islamic Foundation, Inc. This Court ruled in a subsequent minute order dated September 12, 2005 (#20) that the government's version of the redacted indictment would be accepted, rather than defendant's, and that the government should file the redacted indictment.

Submitted with this notice is the government's redacted indictment. All references to "defendant" prior to Al-Haramain Islamic Foundation, Inc. have been removed, and defendant Al-Haramain Islamic Foundation, Inc. has been removed from the case caption and from the list of defendants charged in Counts One and Two.

DATED this $\underline{21^{st}}$ day of September, 2005.

KARIN J. IMMERGUT
United States Attorney

CHRISTOPHER L. CARDANI
Assistant United States Attorney

EXHIBIT E
AHIF 4693

<u>CERTIFICATE OF SERVICE BY TELEFAX</u>

I HEREBY CERTIFY that I have made service of the GOVERNMENT'S

SUBMISSION OF REDACTED INDICTMENT by providing a true copy thereof on the

21st day of September, 2005, by causing to be deposited in the United States mail in

Eugene, Oregon, a true copy thereof, enclosed in an envelope with postage prepaid,

addressed to:

Marc D. Blackman
Attorney at Law
1001 SW 5th Avenue, Suite 1400
Portland, OR  97204

Lawrence Matasar
Attorney at Law
Suite 1025
621 S.W. Morrison Street
Portland, OR 97205

Thomas H. Nelson
Attorney at Law
825 NE Multnomah, Suite 925
Portland, OR 97232

CHRISTOPHER L. CARDANI
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-60008-HO |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** [Amended] |
| | ) | |
| v. | ) | Count One:  18 U.S.C. §371 - |
| | ) | |
| | ) | Conspiracy to Defraud the |
| | ) | United States |
| | ) | |
| PIROUZ SEDAGHATY, | ) | Count Two:  26 U.S.C. §7206(1) - |
| a/k/a Pete Seda, Perouz Seda Ghaty | ) | |
| and Abu Yunus; and | ) | False I.R.S. Return by Tax |
| | ) | Exempt Organization |
| SOLIMAN HAMD AL-BUTHE, | ) | |
| a/k/a Soliman Al-Buthe; | ) | Count Three: 31 U.S.C. |
| | ) | §5316(a)(1)(A) - |
| Defendants. | ) | |
| | | Failure to File Report of |
| | | International Transportation of |
| | | Currency or Monetary |
| | | Instrument |

**THE GRAND JURY CHARGES:**

**Introductory Allegations**

At all times relevant to this indictment:

    A)    Defendant PIROUZ SEDAGHATY, also known as Pete Seda, Perouz

Seda Ghaty, and Abu Yunus, was a naturalized United States citizen and resident of

Ashland, Oregon.

Indictment - 1

B)      The Al-Haramain Islamic Foundation, referred to in this indictment as Al-Haramain (Riyadh), was a non-governmental organization headquartered in Riyadh, Saudi Arabia. Al-Haramain (Riyadh) operated in more than fifty countries throughout the world. Its publicly stated purposes were to distribute Islamic aid and Islamic educational material.

  i)      Aqeel Abdul-Aziz Al'Aqeel, also known as Ageel al-Ageel or Aquil al-Aquil, was the General Manager of Al-Haramain (Riyadh).

  ii)     Defendant SOLIMAN HAMD AL-BUTHE, also known as Soliman Al-Buthe, was a citizen of Saudi Arabia and an official with Al-Haramain (Riyadh). AL-BUTHE was also the chairman of the United States Committee for Al-Haramain, responsible for promoting Al-Haramain's (Riyadh) causes in the United States.

  iii)    Al-Haramain (Riyadh) first established a presence in the United States in 1997. In October 1997, Aqeel Abdul-Aziz Al'Aqeel, on behalf of Al-Haramain (Riyadh), designated defendant SOLIMAN AL-BUTHE through a power of attorney as its lawful representative in the United States. Later that month, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE registered the Al-Haramain Islamic Foundation as an assumed business name with the Oregon Secretary of State. SEDAGHATY was designated as Al-Haramain Islamic Foundation's authorized representative. The Al-Haramain Islamic Foundation listed its principal place of business in the United States as 1257 Siskiyou Blvd. #224, Ashland, Oregon.

Indictment - 2

EXHIBIT E
AHIF 4696

iv)     Defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE

established a bank account in the name of the Al-Haramain Islamic

Foundation at the Bank of America in Ashland, Oregon.  Defendants

PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE were the only two

individuals authorized to conduct transactions involving that bank account.

v)     In February and March 1999, defendant PIROUZ SEDAGHATY

established Al-Haramain as a corporation in the State of Oregon, thus

becoming the AL-HARAMAIN ISLAMIC FOUNDATION, INC.  In its

corporate application,               AL-HARAMAIN ISLAMIC FOUNDATION,

INC. asserted:

> The corporation is organized as a public benefit corporation
> exclusively for religious, humanitarian, educational, and charitable
> purposes as defined in Section 501(C)(3) of the Internal Revenue
> Code, and ORS 65.036 of the Oregon Revised Code.  The
> corporation shall not carry on any activities which are not permitted
> by the Internal Revenue Code for such corporations which are
> exempt from federal income tax and to which contributions are
> deductible for federal income tax purposes. Al Haramain Islamic
> Foundation, Inc. stands against terrorism, injustice, or subversive
> activities in any form and shall not support any statement or acts of
> terrorism. Al Haramain Islamic Foundation, Inc. believes such
> conduct is contrary to Islamic principles.

vi)     In documents filed with the Internal Revenue Service,.

AL-HARAMAIN ISLAMIC FOUNDATION, INC. listed the following

individuals among its corporate officers:

| | | |
|---|---|---|
| Ageel Al-Ageel (aka Aquil al-Aquil) | - | President |
| Soliman HS Al-Buthe | - | Treasurer |
| Perouz Seda Ghaty | - | Secretary |

Indictment - 3

EXHIBIT E
AHIF 4697

AL-HARAMAIN ISLAMIC FOUNDATION, INC. provided the
Internal Revenue Service with a website address of www.alharamain.org.

vii)          AL-HARAMAIN ISLAMIC FOUNDATION, INC. was
funded by its parent organization Al-Haramain (Riyadh) through its
headquarters in Riyadh, Saudi Arabia, which exercised decision-making
authority over financial transactions conducted by the United States office,
including decisions on how donations received by Al-Haramain (Riyadh)
and          AL-HARAMAIN ISLAMIC FOUNDATION, INC. would be
distributed.

C)     Immigration and Customs Enforcement (ICE) and Customs and Border
Protection (CBP) are agencies of the U.S. Department of Homeland Security. At the
time of the events relevant to this indictment, ICE and CBP were known as the United
States Customs Service, which was an agency of the United States Department of the
Treasury. As part of its lawful functions, ICE and CBP are responsible for collecting
information concerning currency and monetary instruments coming into or leaving the
United States in amounts greater than $10,000. At the time of the events relevant to
this indictment, the United States Customs Service was responsible for collecting
information concerning currency and monetary instruments coming into or leaving the
United States in amounts greater than $10,000.

i)     Anyone who transports, mails or ships more than $10,000 in
currency or monetary instruments, including travelers checks, into or out
of the United States, is required by law to provide the details of that
transaction to the United States Government through a Form 4790,

Indictment - 4

EXHIBIT E
AHIF 4698

*Report of International Transportation of Currency or Monetary Instruments.*

D)      The Internal Revenue Service is an agency of the United States

Department of the Treasury.  As part of its lawful functions, the IRS is responsible for

considering applications from organizations seeking to be exempt from taxation.  If tax

exempt status is granted to an organization, it must file a Form 990, *Return of*

*Organization Exempt from Income Tax,* with the IRS each year in which its contributions

exceed $100,000.  If the IRS determines from a review of a Form 990 that a tax exempt

organization is not operating consistently with its tax exempt status, then the IRS may

revoke the tax exemption and subject the organization to taxation.

i)      On December 31, 1999, defendant PIROUZ SEDAGHATY and

AL-HARAMAIN ISLAMIC FOUNDATION, INC. filed an

application for tax exempt status, asserting the Al-Haramain Islamic

Foundation was a public benefit corporation, organized exclusively for

religious, humanitarian, educational and charitable purposes.  The Internal

Revenue Service granted          AL-HARAMAIN ISLAMIC

FOUNDATION, INC.'s application for tax exempt status in December

2000.

E)      As used in this indictment, the term "jihad" means violent jihad, that is, a

holy war accomplished through violent physical struggle and armed conflict.

F)      "Mujahideen" are individuals who engage in a violent physical struggle or

armed conflict to promote a holy war or violent jihad.

G)      "Zakat" is one of the pillars of Islam, and is the obligatory alms or charity

Indictment - 5

AHIF 4699

tax imposed on all practicing Muslims to support the poor and needy. Money obtained through zakat has been diverted by Islamic charitable foundations and non-governmental organizations to fund mujahideen, assisting them in violent jihad.

H)   Chechnya is a North Caucasus province located south of Russia. Chechnya has a long history of a Muslim led guerilla independence resistance against Russian occupation. In approximately 1995, foreign mujahideen moved into Chechnya in an organized effort to aid local Muslim fighters in an attempt to defeat Russian forces. The mujahideen are engaged in a violent jihad, with the goal of creating an Islamic state in Chechnya. The Chechen mujahideen have received funding from Islamic charities and non-governmental organizations.

I)   The website www.alharamain.org was hosted by Al-Haramain (Riyadh). Through this website and other websites referred to in Al-Haramain's (Riyadh) website, Al-Haramain (Riyadh) promoted violent jihad as an obligation of Islam, updated readers concerning the Chechen mujahideen's violent jihad against the Russian army, and advised readers on how to donate money to the Chechen mujahideen.

### Count One

The introductory allegations are incorporated as if fully set forth herein.

### Conspiracy to Defraud the United States Government

From late 1999, through October 2001, in the District of Oregon and elsewhere,

- PIROUZ SEDAGHATY, a/k/a Pete Seda, Perouz Seda Ghaty, and Abu Yunus; and

Indictment - 6

EXHIBIT E

AHIF 4700

• SOLIMAN HAMD AL-BUTHE, a/k/a Soliman Al-Buthe;

defendants herein, did unlawfully, willfully, and knowingly conspire, combine,

confederate, and agree together and with each other and with other individuals and

organizations both known and unknown to the grand jury to defraud the United States

for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of

the U.S. Immigration and Customs Enforcement and Customs and Border Protection of

the Department of Homeland Security, formerly the United States Customs Service of

the Department of Treasury, in the collection of information concerning the

transportation of currency and monetary instruments leaving the United States, and the

Internal Revenue Service of the Treasury Department, in the collection of information

concerning financial transactions of tax exempt organizations, through deceit, craft,

trickery and dishonest means.

## I. Object of the Conspiracy

In February 2000, an individual in Egypt donated $150,000 to Al-Haramain

(Riyadh) as zakat to be sent to Chechnya. The funds were initially wire transferred by

the donor to an Al-Haramain bank account in Oregon, converted into travelers checks

and a cashier's check, and covertly taken out of the United States by defendant

SOLIMAN AL-BUTHE. Intending that the funds be delivered to the Chechen

mujahideen, defendants PIROUZ SEDAGHATY, SOLIMAN AL-BUTHE,

, and others, engaged in a conspiracy to

prevent the United States Government from learning of the transaction by failing to fill

out paperwork, as required by law, acknowledging the funds were leaving the United

States, and by filing a false tax return with the Internal Revenue Service which falsified

Indictment - 7

EXHIBIT E
AHIF 4701

how the donated funds were distributed by          AL-HARAMAIN ISLAMIC

FOUNDATION, INC.

II.  Manner and Means by Which the Conspiracy was Carried Out

        The manner and means by which the conspiracy was sought to be accomplished

included:

        A)      In 1999 and 2000, Al-Haramain (Riyadh) published reports and articles in

support of the mujahideen in Chechnya on its website, www.alharamain.org.  These

reports were published in English and Arabic.  One report, entitled "The Latest News

About the Jihaad in Chechnya," provided details of specific battles between Russian

forces and the mujahideen in Chechnya.  The website also published prayers calling for

the destruction of the Russian army and for aid for "our Mujaahideen brothers in

Chechnya."  The website also contained a link to www.qoqaz.com.  Through this link,

details were available on how to fund the Chechen mujahideen.

        B)      In February 2000, Al-Haramain (Riyadh) issued an online newsletter

        reading in part:

            Jihad is a religious obligation in Islaam.  Its aim is to fight oppression and
            injustice and to remove obstacles which prevent the spread of Islam.  This
            is accomplish[ed] either by weakening or destroying the disbelieving
            prevalent political parties so that Muslims can prevent anyone from
            persecuting their brother Muslims wherever they may be.

        C)      In February 2000, Al-Haramain (Riyadh) was contacted by an individual in

Egypt seeking to donate $150,000 "as Zakat in order to participate in your nobel

support to our muslim brothers in Chychnia...."  To make the donation, the Egyptian

donor initially sent the funds to ·          AL-HARAMAIN ISLAMIC FOUNDATION,

INC. in the United States.

Indictment - 8

EXHIBIT E

AHIF 4702

D)    On or about February 24, 2000, the Egyptian donor wire transferred $149,985 from an account he controlled at the National Bank of Kuwait in London, England, to an account at the Bank of America in Ashland, Oregon, in the name of the Al-Haramain Islamic Foundation.  All funds in the Al-Haramain account at the Bank of America were controlled by defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE.

E)    In an electronic message sent from Riyadh, Saudi Arabia, to defendant PIROUZ SEDAGHATY in Oregon, defendant SOLIMAN AL-BUTHE asked defendant PIROUZ SEDAGHATY to verify whether the funds had been received in Al-Haramain's bank account in the United States.

F)    Sometime after February 24, 2000, the General Manager of Al-Haramain (Riyadh), Aqeel Abdul-Aziz Al-'Aqeel, signed a letter thanking the Egyptian donor for his $150,000 donation and stating:

> We appreciate your trust in Al-Haramain Islamic Foundation and assure you of our commitment to continue every possible effort to help ending the Chechnyan crisis.

G)    On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from Riyadh, Saudi Arabia to Oregon.  AL-BUTHE entered the United States pursuant to a business visa and listed his intended destination as 1257 Siskiyou Blvd. #212, Ashland, Oregon.

H)    On or about March 10, 2000, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE went to the Bank of America in Ashland, Oregon to obtain a portion of the donated funds.  Defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY purchased one hundred thirty (130) $1,000 American Express Travelers

Indictment - 9

EXHIBIT E
AHIF 4703

Checks. The bank charged $1,300 in fees for the travelers checks. Defendant

SOLIMAN AL-BUTHE signed and used check #9456, in the amount of $131,300,

written off of the Al-Haramain account at the Bank of America, to pay the bank for these

American Express Travelers Checks. The money used to purchase these checks was

derived from the Egyptian donor.

    I)    On or about March 11, 2000, defendant PIROUZ SEDAGHATY returned

to the Bank of America in Ashland, Oregon. He requested that a cashier's check, in the

amount of $21,000, be issued to defendant SOLIMAN AL-BUTHE. The funds used to

purchase this cashier's check were derived from the Egyptian donor. Someone later

wrote a notation at the bottom of Al-Haramain Islamic Foundation, Inc.'s copy of the

cashier's check, which stated: "Donation for Chichania Refugees."

    J)    On or about March 11, 2000, defendants SOLIMAN AL-BUTHE and

PIROUZ SEDAGHATY signed an agreement which reads in part:

> This is an agreement bet (sic) Soliman and Abu Yunus. This agreement states,
> that Abu Yunus is turning all monies and responsibilities that were collected for
> the Brothers and Sisters in Chechnya over to Brother Soliman. Soliman states
> that he has received monies in the amount of $186,644.70 and he also fully
> relieves Abu Yunus of all responsibilities to the money.

A handwritten notation at the bottom of this agreement states: "I deposit the amanet

[gift] in Alharamain head office for Chechenya refugees." On or about March 11, 2000,

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY signed another

agreement which was identical to the first agreement, except that defendants

represented that defendant SOLIMAN AL-BUTHE had received $188,465.00 from

defendant PIROUZ SEDAGHATY, rather than $186,644.70.

    K)    On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed

Indictment - 10

EXHIBIT E
AHIF 4704

the United States from JFK International Airport in New York for Riyadh, Saudi Arabia

with the funds donated by the Egyptian. As part of the conspiracy, defendant

SOLIMAN AL-BUTHE intentionally failed to file a Form 4790, *Report of International*

*Transportation of Currency or Monetary Instruments*, as required by law, with the United

States Customs Service, acknowledging that he was leaving the United States with

travelers checks exceeding $10,000.

     L)    On or before March 25, 2000, defendant SOLIMAN AL-BUTHE cashed

the one hundred thirty (130) $1,000 American Express Travelers Checks at Al Rajhi

Banking and Investment in Saudi Arabia.

     M)    Sometime after March 12, 2000, defendant SOLIMAN AL-BUTHE

deposited the $21,000 cashiers check he obtained from the Bank of America in Oregon

into an account he had at Al Rajhi Banking and Investment in Saudi Arabia.

     N)    In June 2000,       AL-HARAMAIN ISLAMIC FOUNDATION, INC.

purchased a building in Springfield, Missouri for approximately $375,000. A large

portion of the funds used by       AL-HARAMAIN ISLAMIC FOUNDATION, INC.

to purchase this building came from a Bank of America account in Oregon controlled by

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY, on behalf of

AL-HARAMAIN ISLAMIC FOUNDATION, INC.

     O)    In or about September 2001, defendant PIROUZ SEDAGHATY provided

a financial summary to his accountant detailing the funds used by      AL-

HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the building in Springfield,

Missouri. This accounting was false in that it represented that check #9456, referred to

in paragraph H of the Manner and Means section of this indictment above, dated March

Indictment - 11

EXHIBIT E

AHIF 4705

10, 2000, in the amount of $131,300, was part of the funds used by AL-HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the Missouri building. In fact, these funds had been transported out of the United States by defendant SOLIMAN AL-BUTHE in March 2000. The accounting was additionally false in that defendant PIROUZ SEDAGHATY represented to the accountant that the $21,000 cashier's check to defendant SOLIMAN AL-BUTHE, referred to in paragraph I of the Manner and Means section of this indictment above, were funds which had been returned to the original donor.

P)     In September and October 2001, an accountant in Medford, Oregon, relying on information provided to him by defendant PIROUZ SEDAGHATY, prepared a 2000 Form 990, *Return of Organization Exempt from Income Tax*. This return was false in that it represented that check #9456, dated March 10, 2000, in the amount of $131,300, was used by AL-HARAMAIN ISLAMIC FOUNDATION, INC. as part of the funds to purchase a building in Springfield, Missouri. The return was additionally false in that it represented that the $21,000 cashier's check to defendant SOLIMAN AL-BUTHE were funds which had been returned to an Al-Haramain (Riyadh) donor.

Q)     On or about October 16, 2001, defendant PIROUZ SEDAGHATY signed a 2000 Form 990, *Return of Organization Exempt from Income Tax*, on behalf of AL-HARAMAIN ISLAMIC FOUNDATION, INC., which he knew to be false.

R)     In October 2001, defendant PIROUZ SEDAGHATY caused a 2000 Form 990, *Return of Organization Exempt from Income Tax*, which he knew to be false, to be

EXHIBIT E

AHIF 4706

filed with the Internal Revenue Service on behalf of         AL-HARAMAIN ISLAMIC
FOUNDATION, INC.

### III.  Overt Acts of the Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the following
overt acts were committed in the District of Oregon and elsewhere:

A)      In February 1999, defendant PIROUZ SEDAGHATY filed an application to
incorporate the Al-Haramain Islamic Foundation in Oregon.  He listed a mail service
business located at 1257 Siskiyou Blvd. in Ashland, Oregon as the corporation's
principal place of business.

B)      In late 1999 and early 2000, Al-Haramain (Riyadh) published articles
captioned "The Latest News About the Jihaad in Chechnya" on its website,
www.alharamain.org, which provided details concerning the mujahideen's progress in
fighting the Russian army.  The website also contained a prayer for the Chechen
mujahideen which calls for aid for the "Mujaahideen brothers in Chechnya."  The
website also contained a link to www.qoqaz.com.  Through this link, details were
available on how to fund the Chechen mujahideen.

C)      On or about February 24, 2000, a donor to Al-Haramain (Riyadh) wire
transferred $149,985 from a bank account in London, England to a Bank of America
account in the name of        AL-HARAMAIN ISLAMIC FOUNDATION, INC. in
Ashland, Oregon.

D)      On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from
Riyadh, Saudi Arabia to Oregon.  AL-BUTHE entered the United States pursuant to a

Indictment - 13

EXHIBIT E
AHIF 4707

business visa and listed his intended destination as 1257 Siskiyou Blvd., Ashland,

Oregon.

E)    On or about March 10, 2000, defendants PIROUZ SEDAGHATY and

SOLIMAN AL-BUTHE purchased one hundred thirty (130) $1,000 American Express

Travelers Checks at the Bank of America in Ashland, Oregon.

F)    On or about March 11, 2000, defendant PIROUZ SEDAGHATY

purchased a $21,000 cashier's check, payable to defendant SOLIMAN AL-BUTHE,

from the Bank of America in Ashland, Oregon.

G)    On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed

the United States on Saudi Air flight #38 from New York to Riyadh, Saudi Arabia.

H)    In June 2000,        AL-HARAMAIN ISLAMIC FOUNDATION, INC.

purchased a building in Springfield, Missouri, paid for in large part with funds provided

by Al-Haramain (Riyadh).

I)    In or about September 2001, defendant PIROUZ SEDAGHATY gave his

accountant a financial summary of the funds used by        AL-HARAMAIN

ISLAMIC FOUNDATION, INC. to purchase a building in Springfield, Missouri.

J)    In October 2001, defendant PIROUZ SEDAGHATY signed a Form 990,

*Return of Organization Exempt from Income Tax,* on behalf of defendant AL-

HARAMAIN ISLAMIC FOUNDATION, INC.

In violation of Title 18, United States Code, Section 371.

///

Indictment - 14

EXHIBIT E

AHIF 4708

## Count Two

### False Return by Tax Exempt Organization

The Introductory Allegations, and the Manner and Means in Count One, are incorporated as if fully set forth herein.

On or about October 16, 2001, in the District of Oregon and elsewhere,

defendant PIROUZ SEDAGHATY, a resident of Ashland, Oregon, did willfully make and subscribe a Form 990, *Return of Organization Exempt from Income Tax*, for the calendar year 2000, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that:

> Line 1 understated "Contributions, gifts, grants, and similar amounts received;"

> Line 22 understated "Grants and allocations;" and

> Line 57a overstated "Lands, buildings, and equipment: basis."

In violation of Title 26, United States Code, Section 7206(1) and Title 18, United States Code, Section 2.

## Count Three

### Failure to File Report of International Transportation of

### Currency or Monetary Instruments

The Introductory Allegations, and Manner and Means in Count One, are incorporated as if fully set forth herein.

Indictment - 15

EXHIBIT E

AHIF 4709

On or about March 12, 2000, in the District of Oregon and elsewhere, defendant SOLIMAN AL-BUTHE, did knowingly transport, mail, and ship, monetary instruments of more than $10,000 from a place within the United States to a place outside the United States, that is, he knowingly transported, mailed or shipped $130,000 in travelers checks from Oregon to New York to Saudi Arabia, and, in so doing, did unlawfully, knowingly and willfully fail to file a report of that transportation, as required by Title 31, United States Code, Section 5316(a)(1)(A), and Title 31, Code of Federal Regulations, Section 103.23, with the United States Customs Service.

In violation of Title 18, United States Code, Sections 5316(a)(1)(A) and 5322, and Title 31, Code of Federal Regulations, Sections 103.11 and 103.23

### Forfeiture Allegation

Upon conviction of the violation alleged in Counts One or Three, defendant shall forfeit all property involved in or traceable to such violation, including but not limited to $130,000.

Pursuant to Title 18, United States Code, Section 982(a)(1)(A).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

Indictment - 16

EXHIBIT E

AHIF 4710

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by
18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant up to the
value of the forfeitable property described above.

A True Bill:

Grand Jury Foreperson

KARIN J. IMMERGUT
UNITED STATES ATTORNEY

By:

Christopher L. Cardani
Assistant United States Attorney

Indictment - 17

EXHIBIT E
AHIF 4711

**Exhibit F**

*United States v. Sedaghaty*, Cr. No. 05-60008-HO, Jury Verdict
(ECF No. 466) (D. Or. Sept. 9, 2010).

AHIF 4712

FILED'10 SEP 09 19:29USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 05-CR-60008-HO |
| | ) | |
| Plaintiff, | ) | *VERDICT* |
| | ) | |
| vs. | ) | |
| | ) | |
| PIROUZ SEDAGHATY, | ) | |
| a/k/a Pete Seda, Perouz Seda Ghaty | ) | |
| and Abu Yunus | ) | |
| | ) | |
| Defendant. | ) | |

We the jury, duly empaneled, find the Defendant, PIROUZ SEDAGHATY, a/k/a

Pete Seda, Perouz Seda Ghaty and Abu Yunus:

<u>Count One - Conspiracy to Defraud the United States</u>

As to Count 1 of the Indictment charging Conspiracy to Defraud the United

States.

$$\times$$
—————          —————
Guilty          Not Guilty

If guilty on Count One, did you unanimously find that an object of the conspiracy
was to defraud the Internal Revenue Service?   (Yes)   No

If guilty on Count One, did you unanimously find that an object of the conspiracy
was to defraud the United States Customs Service?   Yes   No

You may answer yes to both questions if you find that both objects were a
proven part of the conspiracy.

VERDICT - *United States v. Pirouz Sedaghaty*

EXHIBIT F
AHIF 4713

### Count Two - False Return by Tax Exempt Organization

As to Count 2 of the Indictment charging False Return by Tax Exempt Organization.

        X

   Guilty               Not Guilty

DATED this ___9___ day of September, 2010.

s/ PRESIDING JUROR

PRESIDING JUROR

VERDICT - *United States v. Pirouz Sedaghaty*

EXHIBIT F
AHIF 4714

**Exhibit G**

*United States v. Sedaghaty*, Cr. No. 05-60008-HO, Transcript
(ECF No. 588) (D. Or. Sept. 27, 2011) (excerpts).

AHIF 4715

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3    UNITED STATES OF AMERICA,          )
                                        )
4                   Plaintiff,          ) No. 05-60008-2-HO
                                        )
5       v.                              ) September 27, 2011
                                        )
6    PIROUZ SEDAGHATY, et al.,          ) Eugene, Oregon
                                        )
7              - Defendants.            ) .

8

9          TRANSCRIPT OF SENTENCING PROCEEDINGS

10       BEFORE THE HONORABLE MICHAEL R. HOGAN

11         UNITED STATES DISTRICT COURT JUDGE

12

13                      -:-

14

15

16

17

18

19

20

21

22

23              Deborah Wilhelm, CSR, RPR
                     Court Reporter
24                   P.O. Box 1504
                  Eugene, OR  97440
25                   (541) 431-4113

EXHIBIT G
AHIF 4716

1          There is a recommended-by-probation increase

2     for sophisticated or intricate, complex means.   And

3     Mr. Sedaghaty and Mr. al-But'he, I find, engaged in

4     especially complex and intricate conduct when they

5     withdrew the El-Fiki donation from the Bank of America

6     account in Ashland, converted it to 130 traveler's

7     checks, each for $1,000 and one -- and another cashier's

8     check, and transported the checks by plane to a bank in

9     Saudi Arabia, that's Mr. al-But'he, where it would be

10    very difficult for authorities to track and detect the

11    money, and the purpose for which it was used, and,

12    therefore, I impose a two-level increase under specific

13    offense characteristics.

14          Now, the -- I believe the remaining increase

15    sought by the government is for application of a

16    terrorism enhancement.   And there is little doubt in my

17    mind that this money went to Chechnya, and that it went

18    to the mujahideen, but I find there has been a failure

19    to prove the terrorist enhancement because of the --

20    certainly by clear and convincing evidence, which I

21    think is appropriate here under the Ninth Circuit case

22    law, because of the failure to prove a link between the

23    defendant and the money being used for terrorist

24    activities.   There is no doubt the Chechen mujahideen

25    were involved in terrorist activities, but there hasn't

1  been that link proved for this defendant.

2        What other findings do you request for the

3  underlying sentence?

4        MR. CARDANI:  Judge, before Mr. Wax speaks on

5  the tax loss, there is an argument that under the Ninth

6  Circuit law that because the tax loss increases the

7  sentence under the guidelines fairly-significantly, that

8  the burden of proof should be clear and convincing

9  evidence.  Does the court so find?

10        THE COURT:  Yes.

11        MR. CARDANI:  I think those were all of the

12  guideline issues, and the others would relate to the

13  Rule 32 matters.

14        THE COURT:  All right.

15        MR. WAX:  One moment, please, Your Honor.

16        THE COURT:  Excuse me, yes.  Go ahead.

17        (Discussion held off the record between Mr. Wax

18  and Mr. Matasar.)

19        MR. WAX:  Your Honor, your ruling on the

20  terrorism enhancement obviates the need for a number of

21  the other specific objections that we --

22        THE COURT:  I'm aware of that.  That's why I

23  didn't bother to rule on them.

24        MR. WAX:  -- have made.  I believe that there

25  are still three or four issues that we had raised on

1                          CERTIFICATE

2          I, Deborah Wilhelm, Certified Shorthand Reporter

3    for the State of Oregon, do hereby certify that I was

4    present at and reported in machine shorthand the oral

5    proceedings had in the above-entitled matter.  I hereby

6    certify that the foregoing is a true and correct

7    -transcript, to the best of my skill and ability, dated

8    this 5th day of October, 2011.

9

10

11

12
                               /s/ Deborah Wilhelm
13                             _____
                               Deborah Wilhelm, RPR
14                             Certified Shorthand Reporter
                               Certificate No. 00-0363
15

16

17

18

19

20

21

22

23

24

25