THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In Re Terrorist Attacks on September 11, 2001 | ) | No. 03 MDL 1570 (GBD/FM) |
| | ) | ECF Case |

**DEFENDANT WAEL JELAIDAN'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

**INTRODUCTION**

As this court knows, Defendant Wael Jelaidan has consistently maintained that he had

very limited documents to produce in response to the Plaintiffs' Rule 34 request. His argument

was simple: he cannot produce what he does not have. Some of the documents contained in

Exhibit 1, which are excerpts from the documents Defendant secured from co-Defendant Yassin

Kadi in August 2015, explain the situation more thoroughly, and put the issue of Defendant

Jelaidan's non-production in an entirely different light. For example, pages 26-27 of Exhibit 1

contain an order from the Swiss Public Ministry of the Confederation demanding that all

documents that had any connection with Defendant's Swiss bank account had to be *seized* and

*sequestered*. This is an entirely different scenario from where an individual's funds (like

Defendant Kadi) are either blocked or frozen. Defendant also attaches the letter from his Saudi

attorney, which states what the current status is with regards to Defendant as of November 17,

2011. *See* Ex. 2, Nov. 17, 2011 Letter. Defense counsel can represent to the Court that nothing

has changed in this regard, i.e., Saudi counsel has been unable to secure Swiss bank account

documents. As explained herein, however, we now know why he could not secure those bank records.

## I.  PLAINTIFFS HAVE THE RELEVANT BANK RECORDS IN THEIR POSSESSION

Defendant Jelaidan avers that the documents received by Plaintiffs in the production made by Defendant Yassin Kadi in August, 2015 comprise all the currently accessible documents related to Defendant Jelaidan's banking activities besides those already produced by him. As such, there is nothing more to compel from him.

## II.  THE DOCUMENTS IN THE KADI PRODUCTION SUPPORT DEFENDANT'S ASSERTION THAT HE WAS NOT INVOLVED IN ANY MONEY LAUNDERING OR TERRORIST FINANCING SCHEME

A reading of the Kadi production documents related to Defendant's banking activities shows a clear discrepancy between the inflammatory allegations of terrorist conspiracy made in newspaper clippings, *See* Ex. 1, pp. 11-23, and the much more banal reality of Defendant's financial activity. In specific, the documents indicate: (1) Citibank found no unusual activity in Defendant's Citibank account, *Id.* at 10; (2) Faisal Finance found no unusual activity in his Faisal account, *Id.* at 2; and (3) the Swiss authorities found nothing more conspiratorial in his activity than payment for medical expenses, *Id.* 26-27. Defendant is still reading through the rest of the August 2015 Kadi production, but he is confident that the remaining documents will be similarly disappointing for the Plaintiffs.

**III.    THE DOCUMENTS IN THE KADI PRODUCTION SUPPORT DEFENDANT'S CONTINUING ASSERTION THAT HE WAS PROHIBITED UNDER SWISS LAW FROM ACCESSING HIS OWN BANK RECORDS**

As various documents in the Kadi production make clear, the banks were fearful of working with Defendant for any number of reasons. First, the banks believed Defendant was either already under arrest, or was going to be arrested. Ex. 1, p. 10. His arrest, of course, would lead to an extradition proceeding initiated by the United States. Second, the banks understood the account to have already been closed, and further clarification with the client was not possible. *Id.* And as already referenced, his Swiss bank account documents were required to be "sequestered" by the Swiss authorities vis-à-vis having his funds either frozen or blocked. In those instances, the individual cannot access the funds in his account, but he is still able to deal with his bank.

A simple chronological reading of the Kadi documents would have obviated any basis for Plaintiffs moving to compel production against Defendant and requesting attorney's fees therefor. On September 17, 2002, the Swiss Public Ministry of the Confederation sent an "Order to Block Account and Produce Documents" to Citibank and Faisal Finance Switzerland, demanding: (1) "the blocking, effective immediately" of Defendant's account; and (2) "the production of all documents" tied to Defendant's account. Ex. 1, pp. 3-4. In response to this order, on September 20, 2002, Faisal Finance Switzerland sent a letter to the Swiss authorities stating the bank was in receipt of the September 17, 2002 blocking order, and that since the order does not prohibit informing the client of the account blocking, they would go ahead and inform Defendant of the blocking. *Id.* p. 6.

Less than a month later, on October 16, 2002, and as if to clarify or correct their previous order, the Swiss authorities then sent the banks an "Order to Seize Account and Produce Documents". *Id.* p. 24-25. This is a more detailed order describing the bases for the seizure, and

it orders specifically: (1) the seizure of the account; and (2) the **sequestration** of all the documents tied to Jelaidan. *Id.* The term "sequestration" is bolded and underlined. From a linguistic perspective, if the Swiss authorities had wanted to just say production of documents, they could have done so. In fact, they would not have needed to send another order, because already in their September 17, 2002 order, they employed the legal term "édition de documents" and also the more generic "production", both which refer to a simple document production. *Id.* But the Swiss authorities did send a second order, and in the later October 16, 2002 order, they specifically bold and underline the term "séquestre", i.e., "sequestration."[1] The purpose of the second order can only be to differentiate it from the first, more general order which basically froze the funds in Defendant's account. Sequestration goes far beyond freezing the account proceeds, as discussed herein.

Furthermore, in the October 16 order, although the authorities say that anyone negatively affected by the order can appeal it within a five-day period, it provides a very limited three-point list of those entities who can be notified of the seizure and sequestration. *Id.* Notably, *neither Defendant Jelaidan nor his Saudi counsel knew of the sequestration*. The notification is limited to: (a) the Swiss Money Laundering Reporting Office; (b) the bank in question; and (c) the Swiss Federal Judicial Police. Hence, when Defendant and counsel attempted to secure information from the bank, the bank had no information to produce, because it had been sequestered, i.e., turned over to the Swiss authorities. And, Defendant Jelaidan's bank had absolutely no interest in pursuing an appeal on his part, which would be lengthy, expensive, and put the bank in a bad

---

[1] Black's Law Dictionary defines sequestration as "a writ authorizing the taking into the custody of the law". French legal dictionaries define it almost identically as "la mesure conservatoire à caractère provisoire permettant de mettre 'sous main du justice.'" http://www.dictionnaire-juridique.com/definition/sequestre.php accessed Sept. 30, 2015.

light, i.e., by taking such an appeal, the bank could be viewed as aiding and abetting an international terrorist.

The reason why Yassin Kadi was able to secure the documents listed in his recent production was from working directly with the Swiss authorities at a time where Mr. Kadi was not under the same restrictions as Defendant is, i.e., house arrest in Saudi Arabia and fearing possible extradition to America. Indeed Mr. Kadi, through extensive litigation and other efforts, has been successful at having his name removed from various terrorist lists, including the OFAC SDGT list and the UN Resolution 1267 list. Defendant Jelaidan, on the other hand, is still on those lists, has not only had his accounts blocked but the funds actually seized and sequestered, and is under house arrest in Saudi Arabia, and that order has not been revoked as of yet. Defendant's position, because of the Swiss government's sequestration order, is that he cannot produce what he does not have and cannot access.

If the Court is willing to enter an order requesting certain documents from the Swiss authorities, Defense counsel can transmit that order to the Swiss authorities and see if that can result in further production of documents. Defense counsel is more than willing to draft up an appropriate order should the court deem that necessary. But barring success in such a Court-initiated endeavor, Plaintiffs now have all the currently accessible relevant documents in their possession.

## IV.     THE PLAINTIFFS' EXPERT, PROFESSOR GURULE, NEVER ADDRESSED DEFENDANT JELAIDAN'S SITUATION, I.E., SEQUESTRATION VIS-À-VIS FREEZING OF ACCOUNT

The expert statement submitted by Professor Jimmy Gurule is not dispositive on this issue. As this Court knows, Defendant has consistently maintained that he was unable to secure documents from Swiss bank authorities. And, as referenced *supra*, it is obvious why that was the case. His account had not simply been technically "frozen" or "blocked". His account had been seized, and any documents pertaining to it had been "sequestered" by the Swiss government. What that meant, effectively, is that the Swiss government, and not the bank itself, had sole, complete and direct control of any documents related to Defendant's banking activities. Hence, Defendant Jelaidan has been telling the truth in the narrative that he and his lawyer have been unable to secure the documents as requested by the Plaintiffs.

This Court relied on the expert statement of Professor Gurule in terms of evaluating Defendant's ability to secure documents that were the subject of a Rule 34 request by the Plaintiffs herein. However, a review of Professor Gurule's affidavit, and specifically paragraphs 12, 13, and 14, shows that he mistakenly relied on the fact that Defendant's bank accounts had only been "frozen" or "blocked". Ex. 3, Aff. Nov. 9, 2011. So to the extent an individual like Defendant Kadi had his accounts frozen or blocked, he still had the ability to secure documents that were requested by the Plaintiffs. As explained in the letter from Defendant's Saudi attorney, Bassim Alim, Defendant attempted to secure such records and could not. So the obvious difference between Kadi's and Defendant Jelaidan's situations is that for various reasons the Swiss government had decided to "sequester" everything to do with Defendant's bank statements and records. The reasons were: (a) the UN as well as U.S. authorities had labeled him a terrorist; (b) the fact that he was about to be arrested by the Swiss authorities and would face extradition

6

by America; and (c) there was also the fear factor, i.e., the bank justifiably thought it had been assisting a confidant of Osama Bin Laden in terms of providing banking services.[2] Given these stark realities, this Court cannot rely in good faith on Professor Gurule's affidavit in circumstances where an individual's bank account had been seized and sequestered by a foreign government. In fact, Professor Gurule does not even address that situation in his affidavit. Since this matter is obviously beyond the competency of Professor Gurule, i.e., he is no expert on Swiss law[3], this Court should reconsider its award of attorney's fees. An individual designated as an international terrorist cannot secure, let alone produce, bank records that a foreign government has seized and sequestered based on the fact that it was dealing with an international fugitive whom America desperately wanted on its soil.

### V.     DEFENDANT SHOULD NOT BE REQUIRED TO PAY ATTORNEYS FEES FOR HAVING ASSERTED THE TRUTH

The revelations from the Kadi production above establish conclusively that Defendant was correct in his original and continuing assertion that he could not access his bank records. If Plaintiffs are only now, at this late date, forced to concede this point, then at the very least, this Court should reconsider its April 25, 2014 order awarding attorney's fees to the Plaintiffs for bringing multiple motions to compel. Docket no. 2852. The Court can take into account , in reconsidering this award, that no prejudice has injured to Plaintiffs' lawyers, i.e., depositions

---

[2] The Court should keep in mind that, based on conclusions reached by U.S. law enforcement authorities, Defendant Jelaidan, unlike Kadi, had a close personal relationship with Osama Bin Laden (OBL). Of course, Defendant thoroughly denies that conclusion and was only involved with OBL in helping refugees streaming out of Afghanistan because of the Russian invasion. Keep in mind that at that time, OBL was a staunch ally of America, like every other member of the *mujahideen*.

[3] For example, Professor Gurule cannot, and does not attempt to, address the canton-specific procedures under Swiss law governing sequestration orders, their execution and recordation, and oppositions and appeals thereto. *See* e.g.,  http://www.vd.ch/themes/economie/poursuites-et-faillites/deroulement-des-procedures/sequestre/ accessed Oct. 2, 2015.

have not started yet, so they now have any and all documents necessary to depose Defendant Jelaidan. Prejudice, caused by a recalcitrant party to a litigation who refuses to produce responsive documents, as this Court knows, is a consideration in terms of awarding reasonable attorney's fees.

Because production has been ongoing in this litigation for the past twelve years, Defendant considers it possible that Plaintiffs have had in their possession *for several years now* documents produced by Mr. Kadi or others establishing that Defendant was unable to access his records. If this latter situation proves true, Defendant respectfully requests the Court consider an award of monetary sanctions and attorney's fees against the Plaintiffs for having perpetrated a fraud upon this Court by filing motions to compel production of documents they knew were outside of Defendant's control.

## CONCLUSION

Given the situation under review, i.e., an individual's bank account had been seized and sequestered and is in the possession of a foreign government concerned about offending its ally—America, it is unfair to deem the Defendant in violation of a court order for production. In deciding to reconsider its award of attorney's fees, the Court should be mindful of the holding in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987) (American courts, in supervising pretrial proceedings involving foreign nationals, should "exercise special vigilance to protect foreign litigants from the danger that unnecessary or unduly burdensome discovery may place them in a disadvantageous position, and judicial supervision of discovery should always seek to minimize its cost and inconvenience and to prevent improper uses of discovery requests").

Respectfully Submitted,

MARTIN F. MCMAHON & ASSOCIATES

/s/ Martin F. McMahon, Esq.
Martin F. McMahon, Esq. #196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
Tel: (202) 862-4343
Fax: (202) 828-4130
mfm@martinmcmahonlaw.com


*Counsel for Wael Jelaidan*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of October, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

[Counsel for Plaintiffs]

 _/s/ Martin McMahon_
Martin F. McMahon, Esq.
McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
Phone: (202) 862-4343
Fax: (202) 828-4130
mm@martinmcmahonlaw.com