# EXHIBIT 6



www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
—Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000  f. 843.216.9450

**Robert T. Haefele**
*Licensed in DC, NJ, NY, PA, SC*
direct: 843.216.9184
rhaefele@motleyrice.com

September 25, 2015

**By Electronic Mail**

Aisha E. Bembry
Lewis|Baach pllc
1899 Pennsylvania Ave., NW
Suite 600
Washington, DC 20006

Re:   In re Terrorist Attacks in September 11, 2001,
      Dkt No. 03 MDL 1570

Dear Aisha:

I write in follow up to our telephone discussion on September 10, 2015, to address your inquiries and to follow up regarding several comments that you and Eric made during the call.

First, since you approached us in March 2015, inquiring about several documents included in Plaintiffs' February 2015 filing opposing the Kingdom of Saudi Arabia and the Saudi High Commission, your group has intimated a sense of certainty that the documents in question are not what they purport to be on their face and, though you have explicitly expressed that you did not suspect any foul play on the part of Plaintiffs' counsel, you seemingly have implied some impropriety that the documents were produced in discovery. In response to that we note, simply, that the documents were produced because they were in our possession, relevant to the claims in issue, and responsive to defendants' discovery requests. We suspect that if we had not produced them, you would, likewise, have complained.

Second, as we all agreed when we spoke on the telephone, it would be in all parties' best interest to determine whether there is, indeed, concern to be had about the provenance of the documents before they are offered substantively at trial. But in our discussions you have indicated that, rather than affording Plaintiffs the best opportunity to make inquiries in that regard (including through discovery), you have the right to demand protected information to address that inquiry on your own. While we have expressed our willingness (indeed, our interest) in making the inquiry and have asked you to provide us with the bases for voicing any concern about the documents, you have for the most part declined to provide the specific information and evidence upon which you predicate your position, and instead offered only generalities. If you are serious about allowing us to make a hard inquiry into the issue, you need to explain in detail what your concerns are, provide concrete examples of each concern, and open your files as to the sources of your information (we expect that much or all of it should have been produced in discovery already).

To allow us to make the inquiry, we ask that you explain to us the process that you used to verify that the documents do not exist in your clients' files and that you used to verify the employment history of the individuals identified in the documents. Our insistence on receiving this information stems from the fact that, in all candor, the speed and purported certainty of your own investigation between February and March stands at great odds with the representations we have received during the entire course of discovery from both your firm and your predecessor counsel concerning the underkeeping, accessibility, and orderly organization of your



clients' documents. Indeed, it is more than striking that your clients have purported to need the better part of a decade to collect, review, and produce documents responsive to Plaintiffs' discovery requests – including, among other things, requests for as yet unproduced employment files. But you have been able to determine definitively within a months' time the employment history and native language of several individuals, when your clients' own interests are served.

In this regard, we also request that you expedite the production of any employment or other files in your clients' care, custody, or control containing any information concerning the employment (or non-employment) of the signators of the documents that have been the subject of our dialogue, as well as any records authored by those individuals in your possession. Based on our discussion and your prompt response to us upon your review of the documents that have been the subject of our dialogue, we understand that you have thoroughly examined files related to individuals' employment with your clients. For example, within days of reviewing the documents Plaintiffs' produced, you were able to make assertions with a purported high degree of certainty concerning those individuals' terms of employ (or non-employment), the offices in which they were employed (or not employed), and the native language for each of the individuals. Given the quick turnaround regarding information about each of the individuals, we anticipate that you have ready access to the information and can produce the files immediately.

Finally, in response to your request to come to our office to inspect a hard copy "original" of the documents, I understand that we do not have a hard copy "original" of a document for you to come to review in our office. In response to your request for "eyes only" access to information, we will not agree to that suggestion.

Sincerely,

ROBERT T. HAEFELE

cc: Sean Carter, Esq.
Scott Tarbutton, Esq.
James Kreindler, Esq.
Andrew Maloney, Esq.
Jerry Goldman, Esq.