# Exhibit A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 29 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re* TERRORIST ATTACKS ON SEPTEMBER 11, 2001

*Federal Insurance Co., et al. v. al Qaida, et al.*, 03-cv-6978
*Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al.*, 03-cv-8591
*Pacific Employers Insurance, et al. v. Kingdom of Saudi Arabia, et al.*, 04-cv-7216
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03-cv-9849
*Euro Brokers Inc., et al. v. Al Baraka, et al.*, 04-cv-7279
*Kathleen Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977
*Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.*, 04-cv-1922
*Continental Casualty Co., et al. v. al Qaeda, et al.*, 04-cv-5970
*Cantor Fitzgerald Assocs. v. Akida Inv. Co.*, 04-cv-7065

**OPINION**

03-MDL-1570 (GBD)

GEORGE B. DANIELS, United States District Judge:

This case involves claims by families and estates of the victims of the September 11,
2001 terrorist attacks, individuals injured by the attacks, and various commercial entities that
incurred damages and losses as a result of the attacks. The moving defendants are the Kingdom
of Saudi Arabia ("Saudi Arabia") and the Saudi High Commission for Relief of Bosnia &
Herzegovina ("SHC") (collectively, "Defendants"). Plaintiffs allege that agents and employees
of the Saudi government bear responsibility for the September 11, 2001 attacks because they
directly and knowingly assisted the hijackers and plotters who carried out the attacks. They
allege further that al Qaeda's development into a terrorist organization was fueled principally by
financial and operational support from Saudi government "da'awa organizations" (described by
Defendants as "charities"), including the SHC.

Defendants move this Court to dismiss Plaintiffs' Complaint for lack of subject matter
jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the basis that Defendants
are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602,
*et seq*. (*See* Defendants' Motion, (ECF No. 2893); Defendants' Memorandum in Support

1

("Defs' Mem."), (ECF No. 2894).)   Plaintiffs oppose Defendants' motion to dismiss and

separately move to file a 587-paragraph consolidated amended pleading of facts and evidence in

support of their claims against Defendants (the "Averment of Facts").[1]   (*See* Plaintiffs' Motion

("Pls' Mot."), (ECF 2891).)   The issue before this Court is whether the noncommercial tort

exception to the FSIA strips Defendants of their sovereign immunity.   The noncommercial tort

exception provides an exception to FSIA immunity when money damages are sought against a

foreign state or its instrumentalities "for personal injury or death, or damage to or loss of

property, occurring in the United States and caused by the tortious act or omission of that foreign

state or of any official or employee of that foreign state while acting within the scope of his

office or employment."   28 U.S.C. § 1605(a)(5).

Defendants' motion to dismiss is GRANTED.   Plaintiffs' motion to file the Averment of

Facts is DENIED as futile.

## I.   PROCEDURAL HISTORY

Saudi Arabia and the SHC previously filed motions to dismiss this action in 2004,

claiming, *inter alia*, immunity from the jurisdiction of the United States pursuant to the FSIA.

Plaintiffs argued that the FSIA's noncommercial tort exception, 28 U.S.C. § 1605(a)(5), applied

to the actions of Defendants, and that, therefore, Defendants lacked jurisdictional immunity.   In

---

[1] To support their allegations, Plaintiffs argue that they should be able to put before the Court new facts that were not available to them at the time they filed the Complaint.   Plaintiffs characterize the "facts and evidence" that they want this Court to now consider as: United States and foreign intelligence reports; State Department diplomatic cables; Congressional testimony of United States officials and counterterrorism experts; government reports, filings and evidence from court and military tribunal proceedings; studies of think tanks and experts; internal documents of the Saudi "da'awa organizations" and al Qaeda; testimony of al Qaeda members; public reporting; sworn testimony of three principals of the United States government's two primary investigations into the 9/11 attacks (Bob Graham, the Co-Chair of the Joint Congressional Inquiry into 9/11, and John Lehman and Bob Kerrey, the 9/11 Commissioners); and the testimony of al Qaeda and 9/11 insider Zacarias Moussaoui. (Plaintiffs' Opposition Memorandum ("Pls' Opp. Mem."), (ECF No. 2926), at 2-3.)

response, Defendants argued that the noncommercial tort exception was inapplicable for at least three reasons: (1) "[P]laintiffs failed to allege that the 'entire tort' occurred in the United States"; (2) "the 'discretionary function' exclusion to the FSIA's noncommercial tort exception applied," *see id.* § 1605(a)(5)(A); and (3) "[P]laintiffs did not plead the necessary causation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 112 (2d Cir. 2013) ("*In re Terrorist Attacks (SJRC)*").

In 2005, Judge Casey held that Defendants were foreign sovereigns immune from suit. *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 802-04 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*") (Casey, J.) (dismissing claims against Saudi Arabia); *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 553 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*") (Casey, J.) (dismissing claims against the SHC).[2]  Specifically, Judge Casey held that the discretionary function exclusion to the noncommercial tort exception applied.   "[T]he 'discretionary function' exclusion provides that a foreign sovereign retains immunity under the FSIA even if its act or omission is deemed to be tortious if the act is 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion [is] abused.'" *In re Terrorist Attacks (SJRC)*, 714 F.3d at 112 (citing 28 U.S.C. § 1605(a)(5)(A)).  An order of partial final judgment was entered as to those decisions on January 10, 2006.  (*See* Clerk's Judgment (ECF No. 1594).)

The Second Circuit affirmed the dismissal of the claims asserted against Saudi Arabia and the SHC, but on an alternative basis.  *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 90 (2d Cir. 2008) ("*In re Terrorist Attacks III*").  The Second Circuit "held that the

---

[2]  In dismissing Defendants, Judge Casey also concluded that jurisdictional discovery was unnecessary. *See In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353, 355 (2d Cir. 2013) ("*In re Terrorist Attacks V*") (citations omitted).

FSIA's noncommercial tort exception cannot apply to claims based on alleged involvement in terrorist activities, because 'claims based on terrorism must be brought under the Terrorism Exception, and not under any other FSIA exception.'" *In re Terrorist Attacks (SJRC)*, 714 F.3d at 113 (quoting *In re Terorrist Attacks III*, 538 F.3d at 90).[3] In 2011, however, the Second Circuit decided *Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011),[4] which—through use of the Circuit's "*mini-en banc*" procedure—partially overruled the judgment in *In re Terrorist Attacks III*. *Id.* at 70 n.10. The Second Circuit in *Doe* held that "the terrorism exception, rather than limiting the jurisdiction conferred by the noncommercial tort exception, provides an additional basis for jurisdiction." *Id.* at 70.

Plaintiffs therefore moved this Court for relief from judgment under Federal Rule of Civil Procedure 60(b). This Court denied that motion with the view that the Second Circuit "would be able to consider that unreviewed issue[, application of the discretionary function exclusion,] on appeal from the denial." *See In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 354-55 (2d Cir. 2013) ("*In re Terrorist Attacks V*"). In 2013, the Second Circuit reversed the order denying the Rule 60(b) motion and remanded this action to this Court for further proceedings consistent with its opinion. *Id.* at 355, 357 ("We conclude that the circumstances here are 'extraordinary' and warrant relief under Rule 60(b)(6)."). The Second Circuit specifically noted

---

[3] Plaintiffs filed a certiorari petition. The Supreme Court asked for the views of the United States. The United States recommended that the Court deny the petition, but for grounds different from those relied on by the Second Circuit. Br. of the United States as Amicus Curiae, No. 08-640 (U.S. filed May 29, 2009), 2009 WL 1539068. Instead, the United States advised that, in its view, the noncommercial tort exception could apply to terrorism claims. However, the United States concluded that the exception was inapplicable to Plaintiffs' claims because Plaintiffs did not "allege that Saudi Arabia, its officials, or employees, committed tortious acts within the United States," as is required under the "entire tort rule." *Id.* at *12. The Supreme Court thereafter denied review of the Second Circuit's decision.

[4] The *Doe v. Bin Laden* case was transferred to the Southern District of New York nearly a year after the Second Circuit's decision in *In re Terrorist Attacks III*. "Had it happened earlier the [*Doe*] plaintiff's claims could have been resolved at the same time—and in the same way—as those of the other *Terrorist Attacks* plaintiffs." *In re Terrorist Attacks V*, 741 F.3d at 358.

that Defendants raised before Judge Casey three independent grounds for dismissal under the FSIA, and "[a]ll [of] these issues may be considered by the District Court on remand." *Id.* at 359. On June 30, 2014, the Supreme Court denied Defendants' petition for a writ of certiorari seeking review of the *In re Terrorist Attacks V* decision.

On September 15, 2014, Defendants moved to dismiss, reasserting their three grounds for dismissal under the FSIA. (*See* Defs' Mem. at 3-5 (arguing that the noncommercial tort exception does not apply because: (1) Plaintiffs fail to allege that the "entire tort" occurred within the United States; (2) the "discretionary function" exclusion applies; and (3) Plaintiffs do not adequately plead causation).) On the same day, Plaintiffs cross-moved for leave to file the Averment of Facts. This Court heard oral argument on July 30, 2015.

## II.   **STANDARD OF REVIEW**

"It is well settled that the only source of subject matter jurisdiction over a foreign sovereign [or its instrumentalities] in the courts of the United States is [the FSIA]." *In re Terrorist Attacks (SJRC)*, 714 F.3d at 114 (quoting *Garb v. Republic of Poland*, 440 F.3d 579, 581 (2d Cir. 2006)); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts."). "Once the defendant presents a prima facie case that it is a foreign sovereign [or an instrumentality of a foreign sovereign], the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *In re Terrorist Attacks (SJRC)*, 714 F.3d at 114 (internal quotation marks and citation omitted).

"Determining whether [the plaintiff's] burden is met involves a 'review [of] the allegations in the complaint, the undisputed facts, if any, placed before [the court] by the parties,

and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—[resolution of] disputed issues of fact.'" *In re Terrorist Attacks II*, 392 F. Supp. 2d at 547 (alterations in original) (citing *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002)). "Throughout the inquiry, Defendants retain the burden of persuasion, which they must meet by a preponderance of the evidence." *Id.* at 547. "[B]y permitting the district court to go beyond the bare allegations of the complaint, it preserves the effectiveness of the immunity doctrine by avoiding 'put[ting the foreign government defendant] to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amenability to suit at the earliest possible opportunity.'" *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 142 (2d Cir. 2001) (second alteration in original) (quoting *Segni v. Commercial Office of Spain*, 816 F.2d 344, 347 (7th Cir. 1987)).

Defendants "may challenge either the legal or factual sufficiency" of Plaintiffs' assertion of jurisdiction, "or both." *Id.* at 140 (citations omitted). Here, Defendants challenge both. To the extent the challenge is legal, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [Plaintiffs]." *Id.* (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). However, "where evidence relevant to the jurisdictional question is before the court," it may refer to that evidence. *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### III.   THE NONCOMMERCIAL TORT EXCEPTION TO THE FSIA

"For more than a century and a half, the United States generally granted foreign sovereigns complete immunity from suit in the courts of this country" as "a matter of grace and comity." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486 (1983). The State Department later adopted the "restrictive" theory of foreign sovereign immunity, under which

"immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Id.* at 487. In 1976, Congress passed the FSIA, which codified the "restrictive" theory of foreign sovereign immunity. *Id.* at 488.

Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. "Under the FSIA, federal courts therefore inquire at the 'threshold of every action' against a foreign state whether the exception to sovereign immunity that the plaintiff alleges permits the exercise of federal jurisdiction." *Robinson*, 269 F.3d at 139 (quoting *Verlinden B.V.*, 461 U.S. at 493). Thus, Saudi Arabia, as a foreign state, and the SHC, as an instrumentality of Saudi Arabia, are immune from suit unless one of the FSIA's enumerated exceptions to immunity applies. *See In re Terrorist Attacks III*, 538 F.3d at 75 ("[T]he FSIA protects . . . the Kingdom itself" and "the SHC [a]s an 'agency or instrumentality' of the Kindgom"); *see also* 28 U.S.C. § 1603(a)-(b) (defining "foreign state" and "instrumentality of a foreign state").

With respect to the claims against Saudi Arabia and the SHC, the parties agree that the only potentially applicable exception to immunity is the noncommercial tort exception. *See* 28 U.S.C. § 1605(a)(5). The FSIA's noncommercial tort exception reads in pertinent part:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> . . .
> (5) . . . in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

7

> (A) any claim based upon the exercise or performance or the
> failure to exercise or perform a discretionary function regardless
> of whether the discretion be abused . . . .

*Id.* For the noncommercial tort exception to apply, *inter alia*, (1) "the 'entire tort' must

be committed in the United States," *In re Terrorist Attacks (SJRC)*, 714 F.3d at 115, and

(2) the tortious act or omission cannot be a "discretionary function."

### A. The Entire Tort Rule

The noncommercial tort exception "covers only torts occurring within the territorial

jurisdiction of the United States." *Amerada Hess Shipping Corp.*, 488 U.S. at 441. In April

2013, the Second Circuit dismissed two Saudi instrumentalities, the Saudi Joint Relief

Committee ("SJRC") and the Saudi Red Crescent Society ("SRC"), from this multi-district

litigation based on Plaintiffs' failure to allege facts that satisfy the entire tort rule. *In re Terrorist*

*Attacks (SJRC)*, 714 F.3d at 115. The Second Circuit held:

> Although the September 11, 2001 attacks constitute a 'tort,' the
> SJRC and the SRC are not alleged to have participated in that
> 'tort.' Instead, the 'torts' allegedly committed by the SJRC and
> the SRC only involve giving money and aid to purported charities
> that supported al Qaeda. The September 11, 2001 attacks thus are
> distinct and separate from the 'torts' allegedly committed by the
> SJRC and the SRC.

*Id.* at 117 n.10. Plaintiffs did not allege that "any employees of the SJRC or SRC—or anyone

controlled by these entities—committed a tortious act in the United States." *Id.* at 117. The

Second Circuit held that the SJRC's and SRC's tortious activities—donating money to purported

al Qaeda supporters—occurred abroad and, therefore, did not satisfy the entire tort rule. *Id.*

### B. The Discretionary Function Exclusion

The discretionary function exclusion to the FSIA's noncommercial tort exception

"provides that a foreign sovereign retains immunity under the FSIA even if its act or omission is

8

deemed to be tortious if the act is 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion [is] abused.'" *Id.* at 112 (citing 28 U.S.C. § 1605(a)(5)(A)). This "'exception to the exception' . . . preserves the immunity of a sovereign nation when it would otherwise be abrogated by the tortious activity exception 'if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis.'" *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 111-12 (2d Cir. 2012) (citations omitted). "The discretionary function rule is designed to prevent judicial second-guessing of decisions grounded in social, economic, and political policy of a foreign state through the medium of an action in tort." *Id.* at 112 (internal quotation marks, alterations, and citations omitted).

Judge Casey ruled in 2005 that the FSIA's tort exception does not provide jurisdiction over Plaintiffs' claims against Saudi Arabia and the SHC because Defendants' alleged actions involved the exercise of policy discretion. He held that "Saudi Arabia's treatment of and decisions to support Islamic charities are purely planning level 'decisions grounded in social, economic, and political policy.'" *In re Terrorist Attacks I*, 349 F. Supp. 2d at 804 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). With respect to the SHC, Judge Casey held:

> SHC offers undisputed evidence that all decisions regarding the distribution of humanitarian relief funds were within the sole discretion of its Chairman Prince Salman and the advisors he selected. Further, SHC was guided by the Kingdom's policies regarding Bosnia-Herzegovina in making its funding determinations. Accordingly, SHC's alleged misuse of funds and/or inadequate record-keeping—even if it resulted in the funds

> going to terrorists—was the result of a discretionary function and
> cannot be the basis for overcoming SHC's immunity.

*In re Terrorist Attacks II*, 392 F. Supp. 2d at 555 (citations omitted).  Thus, both defendants were

dismissed on the ground that the discretionary function exclusion barred application of the

noncommercial tort exception.[5]

## IV.   **MOTION TO DISMISS**

The allegations in the Complaint alone do not provide this Court with a basis to assert

jurisdiction over Defendants.  Perhaps anticipating this result, Plaintiffs moved for leave to file

the Averment of Facts to further support their claims as to Saudi Arabia and the SHC only.

Pursuant to Federal Rule of Civil Procedure 15(a), "[t]he court should freely give [a party] leave

[to amend its pleading] when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*,

371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be

'freely given.'").  Filing the Averment of Facts is futile, however, because the additional

allegations do not strip Defendants of sovereign immunity.  *Cf. Lucente v. Int'l Bus. Machs.

Corp.*, 310 F.3d 243, 258 (2d Cir. 2008) ("An amendment to a pleading is futile if the proposed

claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

### A. The Complaint

Dismissal of the Complaint as to Saudi Arabia and the SHC based upon sovereign

immunity is proper.  As in *In re Terrorist Attacks (SJRC)*, the allegations in the Complaint

---

[5]  The Second Circuit did not address Plaintiffs' argument "that the District Court should not have applied
the discretionary function limitation or, at a minimum, should have granted jurisdictional discovery."
*In re Terrorist Attacks V*, 741 F.3d at 359.

regarding tortious conduct by Defendants predominantly concern torts committed abroad. The Second Circuit has rejected Plaintiffs' argument that their claims can survive the entire tort rule where Defendants' tortious conduct—allegedly funneling money through charities to al Qaeda—occurred outside the United States. *See* 714 F.3d at 117.

Although the Complaint states that "a Saudi intelligence official named Omar al Bayoumi provided direct assistance to Kalid al-Midhar and Nawaf Al Hazmi, two of the September 11th hijackers," (Complaint ("Compl."), (No. 03-cv-6978, ECF No. 772), ¶ 411), such conclusory allegations do not satisfy Plaintiffs' burden.[6] *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (conclusory allegations are not entitled to be assumed true).[7]

In addition, Plaintiffs' argument that "Saudi da'awa organizations" funded al Qaeda from within the United States does not satisfy the entire tort rule.[8] To strip a presumptive sovereign of immunity, the tortious conduct must be that of the sovereign itself "or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). Plaintiffs seek attribution of these charities' allegedly tortious acts to Saudi Arabia. As the United States correctly explained in its 2009 amicus brief submitted to the Supreme Court in this case:

> Jurisdiction under the tort exception, however, cannot be based on
> the tortious acts of third parties, even if the applicable substantive
> law would permit holding the foreign state liable for those acts

---

[6] (*See also* Compl. ¶¶ 66, 412-20 (additional allegations regarding al Bayoumi).)

[7] Plaintiffs also allege that al Bayoumi met with another individual suspected of ties to terrorism, Fahad al Thumairy. These allegations are entirely deficient to strip Defendants of immunity. (*Id.* ¶ 412 ("At the consulate, Al-Bayoumi met with Fahad Al-Thumairy, a Saudi diplomat who was stripped of his diplomatic visa and later barred from the United States, based on suspected ties to terrorism.").)

[8] These organizations include Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), World Assembly of Muslim Youth ("WAMY"), Al Haramain Islamic Foundation, Rabita Trust, Saudi Red Crescent Society, and Benevolence International Foundation. (*See* Averment of Facts, (ECF No. 2892-1), ¶ 19.)

> under a theory of secondary liability. The jurisdictional inquiry is
> one of federal law, and the FSIA tort exception strips foreign states
> of immunity only for injuries 'caused by the tortious act or
> omission of that foreign state or of any official or employee of that
> foreign state while acting within the scope of his office or
> employment.' It is the foreign state's act or omission—not that of
> any third party—that must occur in the United States.

Br. of the United States as Amicus Curiae, No. 08-640 (U.S. filed May 29, 2009), 2009 WL

1539068, at *16 (citing 28 U.S.C. § 1605(a)(5)). Plaintiffs also fail to allege facts that

sufficiently show that Saudi Arabia controlled the day-to-day operations of these charities.

Plaintiffs therefore fail to implicate Saudi Arabia under an alter-ego theory. (*See, e.g.*, Compl.

¶¶ 85, 114, 131, 151, 168, 181, 191, 208.) "[T]he presumption that a foreign government's . . .

instrumentality is to be accorded separate legal status . . . may be overcome . . . where a corporate

entity is so extensively controlled by its owner that a relationship of principal and agent is

created," or it "would work fraud or injustice . . . to give effect to the corporate form." *See First

Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 628-

30 (1983); *see also EM Ltd. v. Banco Cent. De La Republica Argentina*, No. 13-3819-CV, 2015

WL 5090694, at *13 (2d Cir. Aug. 31, 2015) (citations omitted) ("On these facts, neither prong

of the *Bancec* test is satisfied—[the foreign sovereign] does not exercise sufficiently extensive

control over [the alleged alter-ego's] day-to-day operations, and recognizing [the alleged alter-

ego's] separate status would not constitute a 'fraud or injustice' within the meaning of *Bancec*.").

Plaintiffs also therefore fail to provide a basis for showing that tortious conduct by the sovereign

occurred within the United States in satisfaction of the entire tort rule. Thus, the Complaint

cannot withstand Defendants' motion to dismiss.

## B. The Averment of Facts

Unable to rely on allegations that Defendants indirectly funded al Qaeda through entirely

12

overseas conduct, Plaintiffs move to file the Averment of Facts to bolster their allegations that "operational level agents and alter-egos" of Saudi Arabia conducted torts within the United States that are attributable to Saudi Arabia. Plaintiffs' Averment of Facts, like their Complaint, fails to satisfy the entire tort rule. They have not alleged a tortious act or omission by Saudi Arabia or the SHC, or of any official or employee of Saudi Arabia or the SHC while acting within the scope of his office or employment, that was committed in the United States. *See In re Terrorist Attacks (SJRC)*, 714 F.3d at 115.

In *Robinson v. Government of Malaysia*, the Second Circuit held that in determining application of the noncommercial tort exception, "the district court was required, first, to determine what the relevant activities of the Malaysian government were." 269 F.3d at 142. Here, Plaintiffs make no claim of actions by Defendants themselves in the United States. Instead, they argue that Saudi charity alter-egos[9] and four individuals acting on behalf of or at the behest of Saudi Arabia carried out tortious acts in the United States to further the September 11, 2001 attacks. Some courts have determined that the "scope of employment" provision of the tort exception "requires a finding that the doctrine of respondeat superior applies to the tortious acts of individuals." *See id.* at 144 (quoting *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1025 (9th Cir. 1987)). Plaintiffs do not allege sufficient facts for this Court to

---

[9] As discussed above, *see supra* Section IV.A., the allegations with respect to the charity entities are not sufficient to invoke the tort exception to the FSIA. (*See* Pls' Opp. Mem. at 17 ("As for the U.S.-based officials of al Haramain, IIRO, MWL, and WAMY, their status as agents or officials of the Kingdom is based on the close relationship between the Kingdom and the global charities, whereby the global charities function as alter-egos of the Kingdom, and the alleged lack of corporate independence of the U.S. branches within each of the globally active charities."); *see also* Averment of Facts ¶ 48.) To the extent these allegations relate to overseas activity, they are irrelevant under the entire tort rule. The Averment of Facts falls short as to the charities alleged to have had offices in the United States. For example, the affirmation by Evan Francois Kohlmann is not sufficient for this Court to even reasonably infer that Saudi Arabia controls each of the charities at issue. (*See* Affirmation of Sean P. Carter ("Carter Aff."), (ECF No. 2927), Ex. 9.) These conclusory, largely boilerplate, allegations provide an insufficient basis to strip Saudi Arabia of its immunity.

13

conclude that the individuals who allegedly carried out tortious acts in the United States were employees of Defendants acting within the scope of their employment.

### 1. Allegations as to the SHC

The Complaint and Averment of Facts provide no basis for this Court to conclude that the noncommercial tort exception applies to the claims against the SHC. The actions allegedly taken by the SHC took place outside the United States. The alleged tortious conduct is akin to that alleged as to the SRC and the SJRC: providing funding to entities that allegedly funded al Qaeda.[10] For the same reasons the Second Circuit dismissed the SRC and SJRC—Plaintiffs' failure to satisfy the entire tort rule—the SHC is dismissed.[11]

### 2. Allegations as to Saudi Arabia

Plaintiffs argue that four individuals, alleged "agents" of Saudi Arabia, committed tortious acts in the United States by providing material support to the hijackers responsible for the September 11, 2001 attacks. To invoke the noncommercial tort exception, Plaintiffs must show that these individuals are officials or employees of Saudi Arabia who, while acting within the scope of their office or employment, engaged in non-discretionary tortious conduct in the United States. They have not met this burden.

#### i. *Abdul Rahman Hussayen*

Plaintiffs allege no facts and provide no evidence to support that Hussayen was a Saudi official acting in any official capacity at the relevant time. (*See* Averment of Facts, (ECF No.

---

[10] (*See* Averment of Facts ¶¶ 524-29, 531-41.)

[11] At the July 30, 2015 oral argument, Plaintiffs made no effort to defend their claims as to the SHC. Defendant Saudi Arabia's counsel stated: "[T]he Saudi High Commission operated wholly outside the United States . . . it never operated inside the United States and the plaintiffs have made no attempt to suggest or prove otherwise." (*See* Tr. 6:13-14, 16-18.) Plaintiffs did not respond to this argument. (*See id.* 78:7-8 ("Mr. Kellog: As I predicted, Mr. Carter did not mention the Saudi High Commission.").)

2892-1), ¶ 232 (alleging that Hussayen was "a member of the Saudi Ulema").) Plaintiffs rely on
Hussayen's declaration submitted in support of his motion to dismiss in which he claims he was
a Saudi governmental official. However, assuming this is true, the only allegation to support his
connection to the September 11, 2001 attacks is that he came to the United States on September
6, 2001, and, "just days before the September 11th attacks," moved from his original hotel to the
hotel where three of the hijackers were staying. (*Id.* ¶ 237.) Even if this Court were to assume
that Hussayen was a Saudi government official, there is no allegation—let alone evidence—that
he assisted the hijackers within the scope of his employment or otherwise. Allegations that "do
not permit the court to infer more than the mere possibility of misconduct" do not state a claim
for relief. *Iqbal*, 556 U.S. at 679.

Plaintiffs allege that "[a]bsent the critical financial, logistical, ideological and other
support provided to them . . . the hijackers would have been incapable of successfully carrying
out" the September 11, 2001 attacks. (Averment of Facts ¶ 242.) Plaintiffs do not allege,
however, that Hussayen specifically provided any such support to the hijackers.

### ii. *Osama Basnan*

The allegations that Basnan was an employee of the Saudi government are entirely
conclusory. (*Id.* ¶ 196 (describing Basnan as "another agent of the Saudi government who was
being groomed to replace Bayoumi in San Diego").) Even if this Court assumes that Basnan
was a Saudi employee based on the allegations that he was associated with the Saudi Embassy
in Washington, D.C. and the Saudi Consulate in Los Angeles, there are no allegations that he
was acting on behalf of the Saudi government pursuant to his employment. Moreover, Plaintiffs'
attempt to allege that Basnan provided material support simply because he had a relationship
with al Bayoumi is insufficient. (*Id.* ¶ 200-05 (allegations that their wives were good friends;

Basnan's wife signed checks over to al Bayoumi's wife; and phone records reveal that al Bayoumi and Basnan called each other hundreds of times over a one-year period).) Taking these allegations together, this Court cannot even loosely infer that Basnan provided support to al Bayoumi with the intention that the support would go to the hijackers, nor is there a basis to find that any such actions would be within the scope of Basnan's role as an employee or official of Saudi Arabia.

### iii. *Omar al Bayoumi*

Plaintiffs present facts that support that al Bayoumi was an employee of the "Saudi Arabian Presidency of Civil Aviation" during 2001. (*Id.* ¶ 153.) There is a dispute as to whether he was technically seconded to the aviation contractor Dallah Avco, and, thus, a Dallah Avco employee at the time.[12] (*See* Defendants' Memorandum in Opposition ("Defs' Opp. Mem."), (ECF No. 2928), at 10-11 (citing Averment of Facts ¶¶ 153, 156-58); *see also* Averment of Facts ¶¶ 150, 184, 185-89.) Assuming he was a Civil Aviation employee of Saudi Arabia, there are still insufficient allegations and no credible evidence to support Plaintiffs' contention that al Bayoumi provided material support to two of the hijackers, Nawaf al Hazmi and Khalid al Mihdar, within the scope of his employment.

The additional allegations in the Averment of Facts—like those in the Complaint—are inadequate for Plaintiffs to sustain their burden. The allegations of material support include that al Bayoumi helped the hijackers by finding them an apartment, providing them with monetary support, and introducing them to individuals who helped them apply to flight school. (*Id.* ¶ 172 (al Bayoumi "invited the men to relocate to San Diego"); *id.* ¶ 175 ("The two hijackers initially

---

[12] "Dallah Avco's position is that there is no employment relationship between Omar Bayoumi and Dallah Avco at all—technical, nominal, or otherwise." (Letter from Robert Kry, dated August 14, 2015, (ECF No. 2999).)

moved in with Bayoumi and his family at their residence . . . until Bayoumi was able to secure similar housing for them at the same apartment building."); *id.* ¶ 177 ("Bayoumi recommended Hazmi and Mihdhar to the proprety manager . . . and appears as a co-signer and guarantor for them on their rental application"); *id.* ¶ 179 ("Bayoumi organized a party to welcome the two men to San Diego."); *id.* ¶¶ 219-221 (al Bayoumi put the hijackers in touch with individuals who helped them apply to flight schools and acquire fake driver's licenses).)

Plaintiffs argue that their allegations support the following conclusions: "al Bayoumi met in the morning with al Thumairy (a known terrorist with ties to al Qaeda) at the Saudi consulate; proceeded from that meeting to a restaurant where he met al Hazmi and al Mihdhar (two of the September 11th hijackers); promptly offered to help those al Qaeda hijackers settle in San Diego; assisted them in making contact with Aulaqi (another al Qaeda member) immediately upon their arrival in San Diego; and provided various forms of assistance that enabled them to begin preparation for the September 11th attacks, despite being ill-prepared for their mission." (Plaintiffs' Reply Memorandum ("Pls' Reply Mem."), (ECF No. 2947), at 16-17; *see also* Averment of Facts ¶¶ 151-52, 162, 177.)

Assuming for purposes of this motion that al Bayoumi was an employee of Civil Aviation during the relevant time, none of these allegations attempt to draw any connection between his role at Civil Aviation and his alleged material support to the hijackers. This Court cannot assert jurisdiction over Defendants on this basis without improperly speculating, based on the allegations in the Averment of Facts and the Complaint, that al Bayoumi was a Saudi employee who, *while acting within the scope of his employment*, committed a tortious act in the United States.

### iv. *Fahad al Thumairy*

The Averment of Facts alleges that al Thumairy, "an official from the Consulate's ministry of Islamic Affairs," (*id.* ¶¶ 162-63), and al Bayoumi met regarding the recent arrival of the hijackers. The allegations also state that "Thumairy acted as the Saudi Consulate's liaison to the King Fahd Mosque, per the request of his superiors at the Ministry of Islamic Affairs," and two of the hijackers "spent time at the King Fahd Mosque until their move to San Diego." (*Id.* ¶¶ 164-65.) Despite evidence, including phone records, supporting that al Bayoumi and al Thumairy spoke to each other by phone, al Thumairy initially denied recognizing al Bayoumi's name or photo during his 9/11 Commission interview. (*Id.* ¶¶ 168-69.) As with the other three alleged Saudi "agents," there is no basis on these allegations to find that al Thumairy was acting within the scope of his employment.

\*     \*     \*

The allegations in the Complaint and Averment of Facts, taken as true, do not satisfy the entire tort rule, as is required to sustain jurisdiction under the noncommercial tort exception to the FSIA. The broad allegations turn in large part on speculative opinions.[13] Accordingly,

---

[13] This Court agrees with Defendants that "[t]he newly proffered opinions of two former Senators (the minority view, rejected by the 9/11 Commission and by the FBI) about old facts," the statements of Secretary Lehman, and the statements of Zacarias Moussaoui do not give this Court a legal basis to strip Defendants of the immunity to which they are presumptively entitled. (*See* Defs' Opp. Mem. at 1 (citation omitted); Defs' Reply Mem., (ECF No. 2948), at 14.) To the extent Plaintiffs' claims rely on the speculative conclusions of Senator Graham and Secretary Lehman, those individuals' disagreement with the conclusions of the 9/11 Commission and the FBI cannot be the basis for application of the noncommercial tort exception. For example, Senator Graham wrote: "I am convinced that there was a direct line between at least some of the terrorists who carried out the September 11th Attacks and the government of Saudi Arabia, and that a Saudi government agent living in the United States, Omar al Bayoumi, provided direct assistance to September 11th hijackers Nawaf al Hazmi and Khalid al Midhard." (*See* Affirmation of Daniel Robert "Bob" Graham, Exhibit 2 to Carter Aff., at 3-4.) In addition, Secretary Lehman wrote: "I believe Nawaf al Hazmi and Khalid al Mihdhar knew who to go to for support, and that their initial encounter with Omar al Bayoumi immediately following al Bayoumi's meeting with Fahad al Thumairy was not at all coincidental." (Affirmation of John F. Lehman, Exhibit 3 to Carter Aff., at 3.) Senator Kerrey does not state that Defendants are connected to or responsible for supporting the hijackers. Instead, he states that the 9/11 Commission did not

Plaintiffs have neither pleaded nor come forward with facts or evidence sufficient to show that their claims are for the tortious conduct of Saudi Arabia or the SHC that took place in the United States.[14] Thus, Plaintiffs have not met their "burden of going forward with evidence showing that under the FSIA's exceptions [Defendants] lack[] immunity."[15] *Virtual Countries, Inc.*, 300 F.3d at 242.

## C. Jurisdictional Discovery

A district court "has wide latitude over the management of discovery . . . but in the FSIA context, discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 486 (2d Cir. 2007) (internal quotation marks and citations omitted). "The Second Circuit has instructed that generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until [plaintiffs have] shown a reasonable basis for assuming jurisdiction, [they are] not entitled to any other discovery." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 783 (internal quotation marks and citation omitted). Thus, Plaintiffs must offer sufficient allegations to demonstrate a genuine issue of jurisdictional fact to warrant discovery. *Id.*

---

exonerate Defendants for the events of September 11, 2001.  (Affirmation of Joseph Robert "Bob" Kerrey, Exhibit 4 to Carter Aff., at 3, 6.)

[14] Because this Court determines that the Averment of Facts and Complaint are insufficient to invoke the noncommercial tort exception, Defendants are entitled to immunity, and this Court does not address whether Plaintiffs' allegations are further deficient under the discretionary function exclusion and causation arguments raised by Defendants.

[15] The remaining three grounds on which Plaintiffs rely to argue that the entire tort rule is met are baseless. (*See* Pls' Opp. Mem. at 18-21.)  Specifically, Plaintiffs argue that (1) the 9/11 attacks were themselves an entire tort committed in the United States caused by Defendants' conduct abroad (a theory the Second Circuit rejected in *In re Terrorist Attacks (SJRC)*, 714 F.3d at 117 n.10); (2) basic state law secondary liability principles attribute the attackers' U.S.-based actions to Defendants (a theory that this Court rejects, *see supra* Section IV.A.); and (3) the entire tort doctrine reflects a misconstruction of § 1605(a)(5) (a theory this Court cannot entertain because it is bound by the Second Circuit's holding to the contrary in *In re Terrorist Attacks (SJRC)*, 714 F.3d at 112).)

"[P]laintiffs request an opportunity to conduct discovery as to any fact the Court deems to be in dispute and material to the FSIA analysis." (Pls' Opp. Mem. at 9 n.10.)  Plaintiffs argue, "[I]t is appropriate for plaintiffs in FSIA cases to wait until the Court has defined such areas of relevant dispute[] before serving discovery." (*Id.*)[16]

Plaintiffs' allegations do not give rise to a genuine issue of jurisdictional fact.  Thus, Plaintiffs have not established a prima facie case that this Court has jurisdiction over Defendants, and jurisdictional discovery is not warranted.  *See In re Terrorist Attacks III*, 538 F.3d at 96 (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998)).

## V.   CONCLUSION

Defendants' motion to dismiss the claims against Saudi Arabia and the SHC is GRANTED.  Those defendants are DISMISSED from this case because Saudi Arabia is a foreign sovereign, and the SHC is an instrumentality of that foreign sovereign.  Both are immune from suit under the FSIA.  Plaintiff's motion to file the Averment of Facts is DENIED as futile.

---

[16] The following exchange took place during the July 30, 2015 oral argument on the instant motions:

> Mr. Carter: . . . [I]f your Honor were to find that a particular fact that is vital to the resolution of the jurisdictional dispute was insufficiently developed in the record . . . the Court would then say I want discovery as to that issue.

> The Court: The Court doesn't want discovery, it's the party that wants discovery. . . . That's not to say, [w]ell, if you disagree with us, then just open the door to discovery.  That's not particularly useful for me because I see no basis for further discovery, nor do you.  You say that you have what is sufficient and pretty much whatever you're going to get.  You don't articulate anything on any issue that you would anticipate that you and the Court are going to be more knowledgeable about if I end up disagreeing with you that your 100-page additional averment of facts, plus the original complaint [are sufficient].

(Tr. 69:22-70:5, 70:9-23.)

The Clerk of the Court is instructed to close the motions at ECF Nos. 2891 and 2893.

Dated: New York, New York
      September 29, 2015

SO ORDERED.

GEORGE B. DANIELS
United States District Judge