## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT DELIVERY**

October 30, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this reply in further support of their letter briefs filed on August 10, 2015 seeking an order from this Court compelling defendant Wa'el Hamza Jelaidan to immediately produce all documentation and information responsive to plaintiffs' discovery requests, including the specific categories of documents identified in plaintiffs' briefs at ECF Nos. 2988 and 2989.  For the reasons set forth below, plaintiffs respectfully submit they are entitled to the relief sought in the August 10 motions, including the imposition of an additional monetary penalty against the defendant for his continued willful obstruction of the discovery process and other egregious behavior.

## I.    JELAIDAN'S OPPOSITION BRIEF FAILS TO ADDRESS EACH OF THE ISSUES DETAILED IN PLAINTIFFS' MOTIONS TO COMPEL

On August 10, 2015, plaintiffs submitted two letter briefs requesting that the Court direct Jelaidan to immediately produce approximately nine separate categories of documents that are within the defendant's possession, custody and control.  For instance, plaintiffs' Letter Brief #1 (ECF No. 2988) seeks the following documents:  (1) all banking, financial and corporate records Jelaidan secured and produced to defendant Yassin al Kadi in response to an international terrorism investigation, but willfully refuses to produce to plaintiffs in defiance of this Court's November 16,

The Honorable Frank Maas
October 30, 2015
Page 2

2011 Order;[1] (2) all documents relating to the Swiss government's investigation of defendants Jelaidan and Kadi, occurring at the same time that Jelaidan was a defendant in this litigation and under an affirmative duty to secure and preserve potentially relevant evidence for these proceedings; (3) all banking and financial records for accounts connected to Jelaidan and the Maram Company at Faisal Finance-Istanbul, including Account Nos. xx0905, xx7191, and xx0377; and (4) all banking and financial records for Account No. xxxxxxxxxx-x1961, held jointly by Jelaidan and Specially Designated Global Terrorist Chafiq Ayadi.

Plaintiffs' Letter Brief #2 (ECF No. 2989) additionally requests the following materials: (5) all documents regarding Jelaidan's relationship with the Kingdom of Saudi Arabia, including but not limited to, documents relating to Jelaidan's appointments to head various Saudi charitable organizations; (6) all documents relating to Jelaidan's activities with Saudi charitable organizations, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Rabita Trust, Saudi Red Crescent Society ("SRC"), Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"), and al Haramain al Masjid al Aqsa ("AHAMA"); (7) all documents relating to Jelaidan's corporate activities with Abrar, Caravan Development Group, Cavallo Ltd., Euro Invest Ltd., KA Stan, Maram Travel, and Trading Services, many of which are Executive Order 13224 designees; (8) all documents relating to Jelaidan's support of the mujahideen during the Afghan-Soviet conflict; and (9) all documents relating to Jelaidan's relationship with members of the "Golden Chain."

Rather than specifically addressing each category detailed in plaintiffs' submissions, Jelaidan ignores each of the arguments set forth in plaintiffs' letters as though they never existed. Instead, the defendant uses his opposition as an opportunity to recycle the same unsubstantiated and rejected arguments he has advanced in prior opposition briefs in an effort to excuse his long history of noncompliance in these proceedings. Indeed, Jelaidan again chiefly argues that his designation as an al Qaeda member and terror financier prevents him from pursuing and securing documentation responsive to plaintiffs' discovery requests.

As an example, Jelaidan continues to represent to this Court that he is under house arrest in Saudi Arabia, thereby restricting his movement and capabilities to seek out responsive documents. *See* Defendant Wael Jelaidan's Opposition to Plaintiffs' Motion to Compel (hereinafter "Opposition"), p. 5 (stating that Jelaidan "is under house arrest in Saudi Arabia, and that order has not been revoked as of yet"). The Court will recall that the defendant first raised this issue four years ago in his opposition to plaintiffs' October 17, 2011 motion to compel, arguing that he could not engage in the necessary efforts to obtain responsive banking records because he was "under house arrest and is confined to the Kingdom." *See* Jelaidan's October 31, 2011 Opposition, p. 4, attached as Exhibit A. In response, plaintiffs submitted evidence demonstrating Jelaidan's complete lack of credibility on that point:

> As a final note, Jelaidan indicates in his opposition that some of the sanctions imposed upon him as a result of the September 2002 designations include an absolute bar to traveling abroad, as well as house arrest. Plaintiffs submit that the defendant's contention that he is under house arrest is more than a bit misleading, particularly in

---

[1] *See* Plaintiffs' Letter Brief #1 at pp. 5-6, Exhibits L and M (ECF No. 2988).

The Honorable Frank Maas
October 30, 2015
Page 3

_____

light of statements made by defense counsel early in these proceedings. During an early
meet and confer concerning Jelaidan's discovery responses, Plaintiffs asked Jelaidan's
counsel to explain how Jelaidan could credibly maintain that he never received any
notification concerning any of his designations, given the fact that Jelaidan is a Saudi
citizen living within the Kingdom, who had been designated by Saudi Arabia itself. In
response, counsel expressed his understanding that Jelaidan is a successful and
respected businessman in good standing, who was carrying out business activities
within the Kingdom on an ongoing basis. Jelaidan's counsel also indicated at one point
that Jelaidan's efforts to collect responsive discovery materials had been delayed
because he was busy traveling to several weddings within the Kingdom. These
statements undermine the credibility of many of Jelaidan's arguments, and his status as
an active and respected businessman suggest that Jelaidan has continuing access to
banking resources within Saudi Arabia (which is perhaps the very reason he is
attempting to hide behind his designations to avoid turning over responsive documents).

Plaintiffs' independent investigations corroborate the characterization of Jelaidan's
present status provided by his counsel, and indicate that Jelaidan has relationships with
senior officials of Saudi Arabia that he could use to facilitate the release by his banks in
the Kingdom of relevant financial documents. Specifically, Arabic news articles report
that Jelaidan was featured as a "major speaker" at an April 2008 conference hosted by
the World Assembly of Muslim Youth ("WAMY"), which was sponsored by Prince
Khaled al Faisal, Governor of the Mecca District, and further attended by
representatives of the Saudi government from the Office of Islamic Affairs and the
Office of Social Affairs. *See* Arab News, "WAMY Organizing Forum on Integration of
Charity Work," April 18, 2008, attached hereto as Exhibit 3. The defendant's
participation in this conference similarly belies any representation that he has been
under house arrest since his 2002 designations.

*See* Plaintiffs' November 9, 2011 Reply Brief, pp. 6-7, attached as Exhibit B.

Jelaidan's claim is as hollow today as it was four years ago. Indeed, the defendant's Saudi
Arabian attorney, Mr. Bassim A. Alim, has confirmed that Jelaidan has been conducting business
activities within the Kingdom and comfortably moving throughout the country without restriction in
the years following his joint designation by the United States and Saudi Arabia. For instance, in a
2004 interview with Elaph, a daily Arabic online newspaper (discovered by plaintiffs through
additional investigative efforts undertaken as a result of the defendant's most recent
representations), Mr. Alim stresses that Jelaidan "is absolutely free, he has not been indicted, he is
not a wanted man, and he is working in his business with no problems and is meeting with senior
officials." *See* Elaph, *The Lawyer of the Saudi Businessman Wael Julaidan Accused in Connection
With Al-Qaeda Says to Elaph:  My Client is Completely Free in Saudi Arabia*, April 1, 2004,
attached as Exhibit C. Mr. Alim adds that two high-level Saudi government officials told Jelaidan
that he is "under the protection of the Kingdom," and further states that Jelaidan "is free, goes to
work and lives a normal regular lifestyle, without any questions asked." *Id.* It is worth noting that
Mr. Alim has previously represented to this Court that the sanctions imposed upon his client have
had a chilling effect on Jelaidan's ability to communicate with, and procure documents from,
government and banking entities, both within the Kingdom and abroad. *See* November 26, 2011

The Honorable Frank Maas
October 30, 2015
Page 4

---

letter from Mr. Bassim A. Alim at Exhibit D (stating that Jelaidan "still is a person with limited maneuvering capabilities due to the freezing of his assets, bank account and a plethora of other issues locally and internationally"). Not surprisingly, Jelaidan has never presented a single piece of evidence substantiating his claim that he has been, and remains, under house arrest.[2]

By way of further illustration, Jelaidan also argues once again that his attorneys are unable to obtain responsive banking records as a consequence of his designation. *See* Opposition, pp. 1-2 (stating that defense counsel has been unable to secure Swiss bank account records); p. 3 (asserting that the banks are fearful of working with the defendant). According to the defendant, he and his legal team were effectively blocked from obtaining copies of relevant banking documents once Swiss banking authorities seized and "sequestered" all records relating to his accounts at Citibank-Geneva and Faisal Finance (Switzerland) S.A. *See* Opposition, p. 6 (stating that the "Swiss government had decided to 'sequester' everything to do with Defendant's bank statements and records"); p. 7 (asserting that "an individual designated as an international terrorist cannot secure, let alone produce, banks records that a foreign government has seized and sequestered").

There are several glaring problems with the defendant's position on these points as well. First, there is not a single piece of tangible evidence submitted by the defendant that even remotely substantiates his assertion that a foreign government retains exclusive control over banking records that have allegedly been sequestered. *See* Opposition, p. 6 (claiming that when documents are sequestered, "the Swiss government, and not the bank itself, ha[s] sole, complete and direct control of any documents related to Defendant's banking activities"). Jelaidan offers no legal or statutory support for the proposition, fails to present affidavit testimony from a banking or government official attesting to the practice, and further omits any supporting documentation relative to the investigation confirming the bank's inability to provide basic account records. Importantly, the Swiss government's October 16, 2002 seizure and sequestration order relied upon by the defendant does not mention any such prohibition imposed upon the bank.[3][4] Yet again, Jelaidan would prefer that this Court just take him at his word rather than submit competent, supporting evidence.

---

[2] Jelaidan, being free to pursue his business and charitable interests within Kingdom, is likely to be in possession of an extensive archive of documents at his business address in Jeddah, Saudi Arabia, which he used for his business and charitable activities. Documents held at his business location, even if run from his home, would certainly include relevant banking, corporate and charitable documents.

[3] It is important to clarify that the Swiss government's October 16, 2002 seizure and sequester order cited by the defendant applies *only* to his account at Citibank-Geneva, and is not in any way applicable to his account at Faisal Finance as the defendant's opposition makes it appear. *See* Opposition, Exhibit 1, pp. 24-25 (identifying only Citibank Account No. xx0406). Nor does it apply to the approximately *18 other bank accounts* linked to Jelaidan that have been specifically identified in plaintiffs' prior motions to compel. As plaintiffs have demonstrated on several occasions, Jelaidan has had unrestricted access to his account records at Faisal Finance following his 2002 designation. *See* Plaintiffs' October 17, 2011 Motion to Compel, p. 6 at Exhibit E (explaining that Jelaidan was able to obtain a January 2005 bank statement for Account No. x0409 at Faisal Finance despite the freezing of his account three years earlier); *see also* plaintiffs' August 10, 2015 Motion to Compel, Letter Brief #1, pp. 5-6 (establishing that in July 2003, a year after his designation, Faisal Finance was retrieving account documentation requested by Jelaidan for the benefit of defendant Yassin Kadi).

[4] Several of the documents relied upon by the defendant and attached as Exhibit 1 to his Opposition, including the October 16, 2002 seizure and sequestration order, were taken from defendant Yassin Kadi's

The Honorable Frank Maas
October 30, 2015
Page 5

The defendant's response also raises serious doubts that the defendant and his legal team made any attempt to request records from Citibank. Jelaidan claims that "when Defendant and counsel attempted to secure information from [Citibank], the bank had no information to produce, because it had been sequestered, i.e., turned over to the Swiss authorities." *Id.* at p. 4. Despite this Court's clear order at the November 16, 2011 conference directing Jelaidan and his attorneys to document their efforts to obtain requested banking records, Jelaidan fails once again to provide any documentary proof of his alleged communications with Citibank, including but not limited to: (i) all correspondence and other documentation concerning the freezing and sequestration of the account; (ii) all correspondence from Jelaidan's attorneys to Citibank formally requesting his account records; and (3) all correspondence from Citibank advising that the bank cannot produce the requested account records as a result of the sequestration. Plaintiffs respectfully submit that this obvious omission demonstrates another clear attempt by the defendant to mislead this Court concerning the extent of his efforts (or lack thereof) to obtain responsive discovery materials.

Finally, in a last act of desperation, Jelaidan attempts to discredit the 2011 affidavit testimony of Professor Jimmy Gurulé, an internationally recognized expert in the field of anti-terrorist financing and anti-money laundering. The Court will recall that Professor Gurulé has led a long and distinguished career, including serving as the U.S. Department of the Treasury's Under Secretary for Enforcement (the top Treasury law enforcement official), and an expert witness in a number of significant money laundering and terrorist financing cases in U.S. courts. *See* Qualifications of Professor Jimmy Gurulé at Exhibit F.

Jelaidan argues that this Court's prior reliance on his affidavit is misplaced because "Professor Gurulé does not even address [the issue of sequestration] in his affidavit." Opposition, p. 7. The defendant's argument is perplexing. Since the commencement of merits discovery, and particularly during the most recent four years since plaintiffs filed their first motion to compel in October 2011, Jelaidan never once advanced the issue that the alleged sequestration of a bank account by foreign authorities not only precludes him from requesting basic account records, but prohibits the bank from providing him with same. Even when first presented with the opportunity to address Professor Gurulé's affidavit in 2011 (9 years after the Swiss government allegedly sequestered his Citibank account), Jelaidan failed to raise this specific concern. The defendant's criticism of Professor Gurulé's affidavit is equally incomprehensible for the mere fact that Jelaidan cannot even provide this Court with tangible evidence to support this new assertion, as discussed above. Jelaidan's attack on Professor Gurulé is devoid of any legal or factual merit, and simply underscores the defendant's egregious behavior in this litigation. The only party that has willfully "perpetrated a fraud on this Court"[5] is the defendant and he should be sanctioned accordingly. *See* Plaintiffs' Letter Brief #1, pp. 6-7 (ECF No. 2988).

---

August 2015 document production. *See* Opposition, p. 1 (Jelaidan acknowledging that the documents in Exhibit 1 "are excerpts from the documents Defendant secured from co-Defendant Yassin Kadi in August 2015"). Noticeably absent from those documents in Exhibit 1 are the bates numbers that were affixed to them as produced by Kadi's counsel, raising the distinct possibility that Jelaidan's counsel has been in possession of those documents since before they were bates stamped and produced by Kadi's counsel, but purposely withheld them from plaintiffs.

[5] *See* Opposition, p. 8.

The Honorable Frank Maas
October 30, 2015
Page 6

_____

Respectfully submitted,

J. Scott Tarbutton, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

JST

cc:    The Honorable George B. Daniels (via overnight UPS delivery)
       MDL-1570 Counsel of Record (via ECF)

LEGAL\24694600\1 00000.0000.000/117430.000