# Exhibit A

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York and U.S. District Court of Maryland

CHRISTINE M. HILGEMAN
Of Counsel
Admitted in Virginia and the District of Columbia

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and Maryland

## DEFENDANT WAEL JELAIDAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

October 31, 2011

The Honorable Frank Maas
United States District for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:   *In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD) (FM)*

      COMES NOW the Defendant, Wael Jelaidan, and hereby files, through undersigned counsel, his opposition to Plaintiffs' motion to compel. The motion should be denied because the Defendant has put forth a good faith effort and produced all documents that are within his possession and control. As explained *infra* and as detailed in the attached affidavit of Wael Jelaidan, despite Plaintiffs' contentions that the Defendant has maintained control over the referenced accounts, the reality is that due to his designation by the United Nations, he has lost his ability to access documents concerning the referenced bank accounts. These accounts have been seized and the respective governments have frozen their funds. The Defendant has made several attempts to contact such banks, but none of them are willing to cooperate and respond to his requests.

      In 2001, the United Nations issued the United Nations Security Council Resolution 1373 which requires UN member states to prohibit their nationals from supporting designated terrorists by "making any funds, financial assets or economic resources or financial or other related services available, directly, or indirectly…" to designated individuals.[1] Exhibit 1. Since the Resolution was passed, UN member states and their respective banks have taken steps to freeze the bank accounts of UN designated terrorists. *See, e.g.,* Royal Embassy of Saudi Arabia, *Initiatives and Actions Taken by the Kingdom of Saudi Arabia to Combat Terrorism* 12 (March

---

[1] Additionally, as made abundantly clear by the Treasury Department's Office of Foreign Assets Control, anyone who wishes to conduct business with Mr. Jelaidan, even if only to transmit banking records, has to secure a specific license to do so; otherwise he is breaking the law.

2004) ("In the summer of 2002, in another successful joint anti-terrorism action, the Kingdom of Saudi Arabia and the United States took steps to freeze the assets of a close bin Laden aide, Wa'el Hamza Julaidan, who is believed to have funneled money to al-Qaeda."). Because of the designation, not only has he lost control over the accounts and the ability to obtain account documents, banks are also not willing to cooperate with the Defendant.

As a result, the Plaintiffs' motion to compel should be denied because: the Defendant does not have access or control over the frozen accounts referenced by the Plaintiffs as a result of his designation; the Defendant has made a good faith effort to comply with the Plaintiffs' document request and as detailed in his affidavit, has attempted to acquire documents from the banks regarding his accounts on several occasions; to this date, the Defendant has provided opposing counsel with all responsive documents within his possession and control; and nothing has precluded the Plaintiffs from subpoenaing the various bank accounts which they reference in their motion to compel if they deem that appropriate.

1. **Mr. Jelaidan does *not* have control over his bank accounts due to his designation by the U.S. government and the United Nations, and therefore, *cannot* produce any documents associated with those accounts**

As the Plaintiffs correctly point out, "control has been defined to include the legal right to obtain the documents requested upon demand…" *See United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D 135 (S.D.N.Y 1997) (stating that, "documents are considered to be under a party's control when that party has the right, authority or practical ability to obtain the documents from a non-party to the action"); *In Re Flag Telecom Holdings*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").

As made clear in Mr. Jelaidan's affidavit, he does not have the authority, legal right, or ability to obtain documents responsive to the Plaintiffs requests from any of the following banking institutions and/or accounts: Faisal Finance Account (Switzerland); Al Rajhi Banking and Investment Corp.; Habib Bank; Rabita Trust accounts; Third World Relief Agency bank accounts (Bank Austria accounts); or bank accounts in Turkey concerning the Maram Company. *See* Wael Hamzah Jelaidan Aff., ¶ 5 – 13, Exhibit 2 (hereinafter "Jelaidan Aff."). Mr. Jelaidan's mistaken designation is essentially an absolute hindrance on his capability to obtain any banking documents. Despite Mr. Jelaidan's past signatory authority over many charity accounts, including the MWL, Rabita Trust, SJRC, AHAMAA, and SRC, he has long ceased to have any working relationship with these entities and ergo, has no authority to obtain or request any documents from these institutions. *See* Jelaidan Aff., ¶ 10. Mr. Jelaidan's connection with these entities was purely for humanitarian and/or business purposes and never for illegal, much less terrorist, endeavors.

Contrary to the Plaintiffs' assertions, Mr. Jelaidan has made a good faith effort to obtain these banking records. On many occasions, Mr. Jelaidan has attempted to obtain documents responsive to the Plaintiffs' requests, but as outlined above, the banking entities in question are not willing to cooperate with him and therefore, he has not been able to obtain any additional

documents not already provided to the Plaintiffs. Mr. Jelaidan also is unable to meet with the bank officials in person because he is barred from traveling abroad as a result of being designated by the UN. *See* Jelaidan Aff., ¶ 7. Because these banks are not willing to cooperate with the Defendant and because he is unable to meet with them in person, Mr. Jelaidan has exhausted all methods of retrieving any documents concerning his bank accounts and thus has made a good faith effort to comply with the Plaintiffs' document request. Mr. Jelaidan should not be penalized for failing to produce documents he has no control over.

2. **Mr. Jelaidan has no further documents relating to relationships that he has/had with particular individuals named in the Plaintiffs' motion to compel**

Plaintiffs assert that the Defendant has failed to produce documents relating to various individuals including Yassin Kadi and Chafiq Ayadi. Even though it is possible that the Defendant served on a board with Yassan Kadi or Chafiq Ayadi, he has no access to any documents that may be responsive to the Plaintiffs' requests. *See* Jelaidan Aff., ¶ 15.

Mr. Jelaidan also does not have any documents in his possession or control concerning his relationship to Hasan Cengic. In a chart on page 17 of the Plaintiffs' motion, they point to several significant monetary transfers made to Mr. Cengic in 1993 as evidence that he has maintained a relationship with Mr. Cengic. These monetary transfers which are labeled as "debt repayment[s]" to Hasan Cengic are nothing more than "comfort loans" extended to the Bosnian Government for relief efforts. The Bosnian Government constantly repaid these loans. *See* Jelaidan Aff., ¶ 10. Mr. Jelaidan does not recall the specifics of the six (6) referenced transfers and does not possess or control documents concerning them. *See* Jelaidan Aff., ¶ 16.

The Plaintiffs also allege that Mr. Jelaidan has a relationship with Adel Batterjee and Mohamed Bayazid (a former co-owner of Maram Company), and that he has failed to produce any documents regarding his relationships with them. Though the Defendant has been acquainted with them in the past, he does not have any documents responsive to the Plaintiffs' requests in his possession or control. *See* Jelaidan Aff., ¶ 17.

3. **Mr. Jelaidan has previously submitted to the Plaintiffs any and all documents he is aware of concerning the sanctions that have been levied against him**

Plaintiffs assert that the Defendant has failed to turn over all documents relating to the sanctions imposed upon him. As mentioned in the Defendant's Production of Documents response, Mr. Jelaidan does not have any additional documents, nor does he have access to any additional documents concerning the sanctions or investigations that have been rendered or conducted against him by the United Nations, the United States Government, or the Saudi Arabian Government. As described above, Mr. Jelaidan's designation is a plenary roadblock to his ability to request or obtain any documents that may be responsive to the Plaintiffs' requests.

### 4. Defendant cannot recall any documents that have been lost, discarded, or destroyed

Plaintiffs assert that Mr. Jelaidan has failed to identify all documents that were in his possession, custody or control that have now been lost, discarded or destroyed. This assertion stems from the Plaintiffs' opinion that Mr. Jelaidan has intentionally discarded documents. This opinion is false. Mr. Jelaidan has acted in good faith and has produced all documents that are within his possession or control. The Defendant cannot readily recall any documents that may have been lost or discarded within the relevant time period.

### 5. The Court need only take a cursory look at the Plaintiffs' motion to compel to decipher the flagrantly weak case that the Plaintiffs have constructed against Mr. Jelaidan—thus, Mr. Jelaidan objects to an earlier discovery date of 1988

Defendant objects to an earlier discovery date of 1988. Judge Daniels ordered a discovery date of 1992—nine (9) years before the terrorist attacks of September 11, 2001. Plaintiffs' request for an even earlier date is unnecessary and inappropriate as being well beyond the scope of relevance in this case. It is clear that the Plaintiffs' recent recognition of the weakness of their case against Mr. Jelaidan has prompted the instant request of an earlier discovery date. Any humanitarian efforts that Mr. Jelaidan engaged in during the 1980s, or distant relationships he had then, is wholly irrelevant to whether he assisted in the financing of terrorist attacks that occurred thirteen (13) years later. Mr. Jelaidan has dedicated his life to humanitarian efforts and his name on a questionable document (i.e., the Golden Chain document—which has been rejected by a number of courts so this Court should not entertain it as a reliable document either), or his name passively mentioned in an interview in 1998, is hardly reliable evidence to base an entire case on.

### 6. Conclusion

In conclusion, the Plaintiffs have offered no evidence to prove that an entity or individual can deal with an international designated global terrorist without proceeding through regulatory agencies within the countries where the bank accounts are located. And they have not proffered any rationale as to why they cannot subpoena records from the various banks. The Plaintiffs have to concede that Mr. Jelaidan is basically under house arrest and is confined to the Kingdom—thus he cannot travel across the globe and meet with these banks to resolve issues concerning records. Banks will not go out of their way to accommodate alleged international terrorists. Thus, there is no basis for entry of an order compelling further production of documents by Defendant Jelaidan.

Respectfully Submitted,

Martin F. McMahon, Esq.