# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF and FACSIMILE**

November 6, 2015

Honorable Frank Maas
United States Magistrate Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl street, Room 740
New York, New York 10007-1312

      Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees for all of the plaintiffs write in reply to the September 30, 2015 opposition of criminally indicted Specially Designated Global Terrorist (SDGT) and fugitive defendant Soliman Al-Buthe (ECF No. 3053) and in further support of Plaintiffs' Motion pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, seeking an order compelling Al-Buthe to comply with his discovery obligations (ECF No. 2990) (Aug. 10, 2015).

      Notably, aside from Al-Buthe's conclusory assertion that Plaintiffs' requests fall outside the confines of permitted jurisdictional discovery (which they do not), Al-Buthe does not address Plaintiffs' description of the jurisdictional nature of the various categories of documents referenced in Plaintiffs' August 10, 2015 motion (ECF No. 2990 at 4-10).  Similarly, Al-Buthe does not counter Plaintiffs' arguments against his various boilerplate objections, including his objections that requests are overly broad or that certain requested documents post-date the filing of the actions.

      Instead, after evading his independent obligation to respond to discovery since August 2013, Mr. Al-Buthe relies on his rote assertion that the discovery is not jurisdictional in nature, and insists that he should be otherwise excused from his independent obligation because (1) Plaintiffs did not continually engage his counsel in previously futile efforts to persuade him to comply with his obligation absent the Court's involvement, and (2) because he contends (incorrectly) that, despite his refusal to produce documents, production of documents *by another defendant* satisfied his discovery obligation.

The Honorable Frank Maas
November 6, 2015
Page 2

1. **Plaintiffs' requests, as indicated in ECF No. 2990, were limited to jurisdictionally relevant allegations.**

Because Plaintiffs' discovery, as explained in ECF No. 2990, focused on various aspects of the jurisdictionally relevant allegations in Plaintiffs' pleadings, as recognized by the Second Circuit, the discovery is a proper area of inquiry. In the Second Circuit's decision remanding Al-Buthe for jurisdictional discovery, the Second Circuit recognized that Plaintiffs' jurisdictionally relevant allegations concerned whether Al-Buthe had expressly aimed his conduct at the United States by providing material support to Al Qaeda when it was known that Al Qaeda was engaged in a global terrorist agenda directed at the United States. *In re Terrorist Attacks on September 11, 2001* (Asat Trust Reg.), 714 F.3d 659, 678 (2d Cir. 2013). Jurisdictionally relevant allegations specific to Al-Buthe, previously quoted in ECF No. 2990 at 3, include allegations that Al-Buthe used his role as a Charity Official to orchestrate material support and sponsorship of Al Qaeda, acted with knowledge that the organizations under his control were channeling material support and resources to Al Qaeda, and that such support would be used to support Al Qaeda's jihad against the United States. As explained in ECF No. 2990 at 4-10, each of the categories of documents requested make inquiry into jurisdictionally relevant issues. Aside from his conclusory assertion to the contrary, Al-Buthe does not counter Plaintiffs' explanations as to why each category of requested discovery is jurisdictionally related.

Though Al-Buthe argues that the Circuit Court intended to limit jurisdictional discovery to only five categories set forth in Al-Buthe's opposition, ECF No. 3053 at 2, the only categories the Court references with regard to Al-Buthe are referenced merely as *examples* of issues the Court considered relevant to the issue of whether Al-Buthe had expressly directed conduct at the United States. *Id.* (leading off the list of categories by using the term "For example"). The five categories that Al-Buthe lists in his opposition are his own gleanings from the Second Circuit's decision. But even considering Al-Buthe's five categories, they encompass broad areas of inquiry and documents, such as discovery on Al-Buthe's control and management of charitable organizations, his knowledge of Al Qaeda targeting the U.S., what Al Qaeda support he provided and the timing of that support, and how Al-Buthe was involved in the process of providing support to Al Qaeda. Moreover, inasmuch as one issue that even Al-Buthe focuses on includes whether Al-Buthe intended the support to Al Qaeda to be directed at the United States, discovery about his other affiliations, investigations about him, and other categories that point to support for violent jihad against the West are relevant.

2. **The Parties' longstanding interaction, including meet and confer efforts, and Al-Buthe's response to this motion underscore the futility of any additional formal meet and confers.**

Since Al-Buthe's discovery responses were initially due in September 2013, Plaintiffs have engaged with Al-Buthe's counsel on numerous occasions about Al-Buthe as well as about other defendants represented by the same counsel.

The parties have a long history of communicating on discovery issues throughout that period, *including meet and confer efforts by Plaintiffs trying to address Al-Buthe's intention to produce documents. See* Exhibit A (ECF No. 2945, PEC Apr. 6, 2015 Letter to Judge Maas, at 2-3, 5 and 7). Plaintiffs consistently made clear that they were not satisfied by that lack of production. In April 2015, Plaintiffs continued to express concern about Al-Buthe's lack of production and whether that signaled his intention to default. *See id.* at 5, 7. In May 2015, months after the rolling production

deadline, Mr. Kabat reaffirmed that, despite knowing Plaintiffs were not satisfied with the lack of production, no production was forthcoming. At a May 13, 2015 conference before the Court, Mr. Kabat, responded to an inquiry on a related issue by re-affirming that Al-Buthe (and Sedaghaty) would not produce any documents, had no intention of meeting their obligation under Rule 34(b)(2)(E)(i), and acknowledged Plaintiffs' dissatisfaction with his approach. Exhibit B at 20-21 (Transcript of May 13, 2015 Conference).

While Plaintiffs are not suggesting that the meet and confer obligation is futile in all respects in this litigation – indeed, Plaintiffs have met and conferred with defendants on many occasions throughout these MDL proceedings, and continue to do so – in instances of continued longstanding noncompliance in vigorously opposed litigation, especially where the parties' respective positions have been made clear, the futility of continued meet and confers is apparent. *See Reidy v. Runyon*, 169 F.R.D. 486, 490 (E.D.N.Y. 1997) (excusing failure to confer because compromise was unlikely given defendant's history of noncompliance with court orders); *Matsushita Electric Corporation v. 212 Copiers Corp.*, 1996 U.S. Dist. LEXIS 2221, No. 93 Civ. 3243, 1996 WL 87245 at *1 (S.D.N.Y. Feb. 29, 1996) (conference would be futile in bitter litigation which included contempt citations directing the jailing of some defendants for noncompliance with court orders).

Al-Buthe's response to Plaintiffs' motion underscores the futility. A deadline for this motion has been set and re-set. Al-Buthe knew a motion was imminent and, given the dialogue among the parties, as well as defense counsel's acknowledgment at the May 2015 conference, he knew the arguments Plaintiffs would advance. And yet even in the interim since Plaintiffs filed their motion on August 10, 2015, Al-Buthe has continued to refuse to produce rather than offer a reasoned compromise. In instances with other defendants, where a motion has identified an area for compromise, other parties have sought to meet and confer during the pendency of the motion. Al-Buthe has not. He has merely insisted that his lack of production must be excused, despite his failure to meet his discovery obligation.

### 3. Al-Buthe was obligated to respond and identify documents specific to his own discovery responses, and he failed to do so.

Al-Buthe's assertion that, despite his refusal to identify or produce any documents in discovery, his discovery obligations were nonetheless satisfied by another defendants' production misses the point that Al-Buthe must, himself, respond to discovery in a manner that allows the Plaintiffs to determine which documents in the production corresponds to each of Plaintiffs' requests. At the very least, to satisfy Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure, Al-Buthe was obligated to identify which documents among the Al Haramain production were among his own production *and* which documents corresponded to the categories in Plaintiffs' requests. Without his responses, Plaintiffs cannot know to which requests Al-Buthe has responded and to which he has not. Nor can Plaintiffs be satisfied, without formal responses indicating so, that Al-Buthe has produced all documents in his control responsive to each request. Allowing Al-Buthe to rely entirely on Al Haramain's production, versus requiring him to respond independently, would leave a gaping hole for him to avoid production of responsive documents that are specific to him. Similarly, at a trial, whether a document is acknowledged to have come from Al Haramain or Al-Buthe may be material for authentication purposes. So Al-Buthe's lengthy description of the documents Al Haramain produced in the course of discovery, while Al-Buthe produced nothing, is largely immaterial. Regardless of what Al Haramain produced, Al-Buthe never indicated which documents he claimed as his, which documents among the Al Haramain collection corresponded to the requests

Plaintiffs served on him, which documents he had but was not producing, or which documents he had and claimed as privileged (Al-Buthe has not produce a privilege log).[1]

In correspondence written by Al-Buthe's counsel, counsel claims that Al-Buthe has no other documents responsive to Plaintiffs' requests, but that claim has never been affirmed in formal discovery useable at trial and neglects to respond to the points raised in Plaintiffs' brief about documents that would clearly remain in Al-Buthe's control. See Plaintiffs' Brief at 4-10. Under existing circumstances, Plaintiffs are left unsatisfied as to whether Al-Buthe has control over additional, unproduced documents, including, for example, documents regarding his own banking and financial transaction documents (Categories 1 and 2 in ECF No. 2990); documents regarding his own indictment, sanctioning, and delisting (including his efforts to be de-delisted) by U.S., U.N. and other authorities (Category 3); documents regarding inquiries he directed or in which he played some role regarding allegations of criminality, corruption, extremism, financial irregularities, suspicious activities, terrorism links, or support for violent jihad (Category 4); the set of requested documents particularly personal to him, including his bio/resume, travel documents, passports, affiliations with various organizations, and filings with government agencies (Category 5); documents regarding Al Haramain, his affiliation with Al Haramain, or the sanctioning, closure, or disposition of any assets of Al Haramain (Categories 6 and 7); documents about his affiliation with alleged co-conspirators (Categories 8 and 9).

### 4. Al-Buthe's delisting by the U.N. does not change his discovery obligations; he was designated by the U.N., remains designated by the U.S., and remains a fugitive from U.S. criminal indictment concerning allegations material to this litigation.

Finally, Al-Buthe underscores for the Court that he has been delisted from the U.N. list of designated terrorists. However, somewhat lost in his message is that, despite apparent repeated pleas on his behalf, the U.S. has refused to delist him; he remains both a Specially Designated Global Terrorist and a fugitive under U.S. criminal indictment. Moreover, as Plaintiffs have previously

---

[1] Plaintiffs decline to respond to Al-Buthe's characterization about Plaintiffs' ability to prove their claims against him by comparing Plaintiffs' burden in civil proceedings to the prosecution's burden in criminal proceedings, other than to note that: (1) the standards differ, (2) the tools available to the parties differ, and (3) Al-Buthe's misleading account blatantly omits the fact that the government's dismissal of charges against Sedaghaty, who had already spent approximately 15 months in prison, was in return for Al Haramain pleading guilty, paying financial penalties, and agreeing to make no attempt to resume operations as a charity in the U.S. for three years. *Compare* Defendant's Brief at 4 (asserting that "the government readily agreed to dismiss Al Haramain USA") and at 5 (asserting that the government "abandon[ed] the prosecution of Mr. Sedaghaty") with Exhibit C (*United States v. Sedaghaty*, Agreement Letter, No. 06-CR-60005 (D. Or. ECF No. 658)(July 28, 2014) ("**Interlocking Agreements**: The parties to this agreement understand that there is a separate agreement with co-defendant Al-Haramain Islamic foundation. [Sedaghaty] agrees the . . . obligations as set forth in this agreement are contingent upon co-defendant Al-Haramain fulfilling all the terms and conditions of its agreement . . . . If [Al-Haramain] moves to withdraw its guilty plea at any time, or in any way fails to abide by the terms and conditions of its agreement, the USAO . . . may continue its prosecution against all named defendants. Nothing in this agreement affects the prosecution of the fugitive co-defendant Soliman Al-Buthe."); Exhibit D (Statement of Federal Bureau of Investigation, Portland Division, Specially Designated Global Terrorist al Haramain Islamic Foundation Inc. Pleads Guilty to Tax Fraud (July 29, 2014) ("Prior to entering the plea agreement, AHIF paid [a financial penalty]. At sentencing, AHIF was placed on probation for three years. During that time, AHIF agreed that it will make no attempt to resume operations as a tax exempt charity in the United States. In return, the United States agreed to dismiss criminal charges pending against Pirouz Sedaghaty (Pete Seda), the former head of AHIF in the United States. A third defendant, Soliman Al-But'he, remains under indictment. An arrest warrant is outstanding for Al-But'he and he is a fugitive.").

explained and this Court has previously recognized, the reasons for any authority (U.N., U.S., or another) to de-list a previously listed subject are many. See ECF No. 2990 at 3-4, fn3. In fact, in the letter informing Al-Buthe that he was delisted, the U.N.'s Ombudsperson wrote:

> The Committee noted that, in common with all delisting decisions, this decision to remove a name from the Al-Qaida Sanctions List was a de novo decision which looked at the circumstances, as they stood at the time of the delisting request, to determine the appropriateness of a continued listing. The Committee emphasized that the decision to delist is separate from and does not reflect on the original decision to list.

Exhibit E (AHIF 4518). Though the fact of delisting itself is immaterial to whether Al-Buthe provided material support to Al Qaeda when it was known that Al Qaeda was engaged in a global terrorist agenda directed at the United States, the reasons for listing, the U.S.'s reasons for refusing to de-list, and perhaps the U.N.'s reasons for de-listing very likely are material on whether Al-Buthe provided such support, and discovery as to those categories is appropriate.

One glaring omission from any discovery is any communication regarding Al-Buthe's assertion that the U.S. has agreed to de-list Al Haramain. *See* ECF No 3053 at 5 (Al-Buthe asserting that the U.S. has agreed to delist Al Haramain). Aside from writings of counsel to this Court, no documents on that issue have been produced in discovery and as of this date Al Haramain remains designated by the U.S. If Al-Buthe (or Sedaghaty, or Al Haramain) have withheld those documents from production, that withholding alone violates discovery obligations.

**5. Conclusion**

So, in summary, Plaintiffs are not asking the Court to compel production of documents already produced by another defendant. Plaintiffs are asking the Court (1) to require Al-Buthe to identify documents produced by other defendants that he contends he would have produced and correlate them to discovery requests, and (2) to require him to produce any other documents in his control responsive to any request of the Plaintiffs or provide a response to each request indicating that he has control of no documents responsive to the request. Lastly, recognizing Al-Buthe's apparent reluctance to engage in the pretrial discovery process, Plaintiffs ask that the Court require him to verify that he and his counsel have undertaken vigorous efforts to request and secure the documents responsive to both sets of Plaintiffs' discovery requests. *See, generally*, Transcript of Nov. 16, 2011 Hearing at 33-35, requiring co-defendant Jelaidan to document vigorous, "full-court press" effort to obtain documents; ECF No. 2490.

Respectfully submitted,

THE MDL 1570 PLAINTIFFS' EXEC. COMMITTEES

cc: Alan Kabat, Esquire (Counsel for Mr. Al-Buthe and Defendants' Liaison counsel, via e- mail and ECF)
The Honorable George B. Daniels, U.S.D.J.