# Exhibit A

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT MAIL**

April 6, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

    Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

    The Plaintiffs' Executive Committees submit this letter in response to the March 16, 2015 letter submitted by the defendants, concerning a schedule for further discovery proceedings.

    Plaintiffs believe it would be beneficial for the Court to hold an in-person conference to discuss a rational schedule and structure for the next phases of discovery. In connection with that dialogue, plaintiffs respectfully request the Court's intervention to address continuing uncertainty about the status of several defendants' document productions,[1] and whether certain of those defendants are still participating in these proceedings. Plaintiffs have made several inquiries about those issues, which bear directly on the evaluation of a proper schedule for further discovery proceedings, but have not received responses to a number of their questions.

---

[1] Plaintiffs note that this issue is distinct from the question of whether there are gaps and other deficiencies in the productions that have been made, which is the case. At the moment, plaintiffs are simply attempting to determine whether certain defendants are still in the process of producing documents, and whether the intervention of any third party, to include any foreign government actor, has potentially interfered with the production of relevant documents.

The Honorable Frank Maas
April 6, 2015
Page 2

---

1. **The Meet And Confer Process**

    At the outset, plaintiffs must address defendants' disingenuous and inaccurate statement that plaintiffs "opposed setting any discovery deadlines" during the meet and confer process. In fact, plaintiffs were fully prepared to negotiate specific deadline proposals, but were frustrated in their efforts to pursue that result by the actions of the defendants.

    For example, upon initiating the telephonic meet and confer on February 23, 2015, plaintiffs' counsel participated for all of the plaintiffs, but were surprised to discover that only Mr. Kabat and Mr. Coutreau were participating in the call on behalf of the defendants. Given the absence of the other defense counsel, plaintiffs inquired as to whether Mr. Kabat, who had arranged the call for the defendants, had the authority to bind all defendants to any terms the parties might negotiate during the call. In response, Mr. Kabat advised that he did not have authority to bind the other defendants, and that those other defendants would be free to object to any terms or agreements the parties might negotiate during the call. Plaintiffs expressed their frustration with defendants' position concerning the duties and functioning of the Defendants' Executive Committee, and the fact that defense counsel whose consent would be necessary to reach any agreements had not even made themselves available to participate in the meet and confer process.

    Nonetheless, plaintiffs sought to use the call as an opportunity to advance discussions concerning several issues relevant to the evaluation of an appropriate schedule for further discovery, to enable plaintiffs to make a formal proposal concerning the discovery schedule following the call, for presentation to all defendants. In this context, plaintiffs suggested that the dialogue about a proposed discovery schedule should begin with a discussion of the status of the defendants' productions, noting that information provided to plaintiffs gave strong indications that several defendants had not yet completed their document productions. Indeed, defendant Dallah Avco had approached plaintiffs before the December 15, 2014 document production deadline, to advise that it would be unable to complete its production by that date. Given those discussions, and based on other information strongly suggesting that other defendants had not completed their productions, plaintiffs asked the Defendants' Executive Committee whether it could provide information about the status of each defendant's document production, and whether any other productions were outstanding. For obvious reasons, the potential that several defendants might be making belated productions, and the anticipated scope, content, and timing of any such productions, were factors plaintiffs wished to consider in formulating proposals for the approach and schedule for the next phases of discovery.

    Again, Mr. Kabat said that he could not speak for any other parties, but did raise on several occasions the potential that defendants might supplement their productions, in the event that they discovered additional materials that had not been produced, or came across a "file cabinet" that had not been searched. Plaintiffs then requested that the Defendants' Executive Committee survey the individual defendants and obtain a brief statement from each defendant concerning the status of its document production efforts, and whether the defendant anticipated making any belated productions. At least during the call, Mr. Kabat indicated that it was not the

The Honorable Frank Maas
April 6, 2015
Page 3

---

responsibility of the Defendants' Executive Committee to secure that information, and that he did not intend to initiate any request to the individual defendants for that information.

Based largely on Mr. Kabat's assertion that it was not the DEC's responsibility to conduct the requested survey, and that he would not do so, plaintiffs thereafter began efforts to obtain the requested information from the individual defendants themselves. During a meet and confer with counsel for the WAMY defendants on February 27, 2015, counsel for plaintiffs repeatedly inquired whether the WAMY defendants had completed their productions. WAMY's counsel responded that the answer was not a simple "yes" or "no," but that they had provided Mr. Kabat with a full statement on the matter, for presentation to plaintiffs along with similar statements that had apparently been requested from other of the defendants. In fact, in stark contradiction to the position asserted by Mr. Kabat in the earlier meet and confer, WAMY's counsel emphasized that because the issue of each defendant's status in discovery was, in their view, an omnibus issue, the proper method of responding to the inquiry was through the DEC (precisely what Mr. Kabat had rejected).

In light of those discussions, plaintiffs wrote to Mr. Kabat on March 11, 2015, to again request that he provide basic statements from the individual defendants concerning their document productions, noting that such statements had apparently been requested already and, in at least certain cases, provided to Mr. Kabat. *See* Exhibit A. In that letter, plaintiffs again explained that the requested information was relevant to the evaluation of the appropriate timeline and structure for further discovery proceedings, noting that there were significant discrepancies between the content of the documents received to date from certain defendants, and the scope and nature of the materials those defendants previously indicated they would be providing. Plaintiffs offer several examples of such discrepancies below, a number of which were raised explicitly in plaintiffs' March 11, 2015 letter. *See id.* Plaintiffs concluded that letter by once again explaining that they "have made a simple request for basic information that we believe is relevant to the evaluation of an appropriate schedule for further discovery processes." Noting that certain of the defendants had apparently already provided the requested statements to Mr. Kabat, plaintiffs emphasized that "we are struggling to understand why they have not simply been passed on to us."

The Defendants' Executive Committee did not respond to plaintiffs' March 11, 2015 letter, choosing to instead terminate the parties' dialogue and submit its own unilateral scheduling proposal to the Court. ECF No. 2935 (March 16, 2015). Further, although plaintiffs' communications raised specific concerns as to certain of the defendants, plaintiffs have received no response from those individual defendants concerning the issues raised.

In sum, plaintiffs' efforts to pursue a meaningful dialogue with the defendants concerning an appropriate structure and schedule for further discovery proceedings were frustrated by a lack of coordination among the defendants, and their inexplicable refusal to respond to plaintiffs' repeated requests for basic information, either through the DEC collectively or individually from the defendants.

### 2. Concerns Relating To The Status Of Certain Defendants' Productions And Related Issues

As indicated above, plaintiffs' request that the defendants clarify the status of their productions was prompted, in part, by discrepancies between what certain of the defendants indicated they would be producing, and the scope and nature of the productions received from those defendants, as of the document production deadline. These discrepancies suggest that certain of the defendants may have set aside certain categories of documents for production, but have not provided those materials for some reason. In addition, based on the productions received to date, it is unclear whether certain of the discovery defendants remain active participants in this litigation or have opted to refrain from further participation. The defendants' responses to these areas of concern will provide information valuable to the Court and parties in assessing the approach and schedule for further proceedings. Several examples follow.

#### A.   WAMY Defendants (WAMY-SA and WAMY Int'l)

On several occasions, WAMY-SA represented during discovery conferences that more than 120,000 pages of documents responsive to plaintiffs' discovery requests had been assembled in a room in Saudi Arabia for review by plaintiffs. *See, e.g.*, Transcript of Hearings, Apr. 12, 2014 at p. 7; Apr. 24, 2014 at p. 13. The Court thereafter directed WAMY to produce those records to plaintiffs in the United States. However, since the issuance of that order, plaintiffs have received only about 50,000 pages of documents from WAMY-SA (excluding certain FOIA materials), leaving a discrepancy of 70,000 pages between the responsive materials WAMY represented would be produced and what has actually been provided.

Further, when counsel for plaintiffs recently asked counsel for the WAMY defendants whether those defendants' productions were complete, counsel responded that the answer was not a simple "yes" or "no," and indicated that a full statement on the issue would be provided through the Defendants' Executive Committee. Notwithstanding plaintiffs' requests, plaintiffs have not received that statement.

#### B.   MWL and IIRO

During a conference call on February 18, 2014, counsel for the MWL and IIRO advised plaintiffs that the government of Saudi Arabia had designated certain of those defendants' responsive documents to be "governmental" in nature, and advised that the defendants were working to secure the approval of the government to produce those documents. These materials were reported to include collections of communications between the MWL/IIRO and Saudi government, and an estimated 40,000-50,000 pages of documents from the IIRO's designated Eastern Province Branch, the production of which this Court had ordered in full on April 26, 2011 (ECF No. 2424). Although plaintiffs have never received any explanation as to the fate of these documents, it is plaintiffs' understanding that the government of Saudi Arabia may have taken possession or control of these documents.

The Honorable Frank Maas
April 6, 2015
Page 5

---

Plaintiffs wrote to counsel for the MWL and IIRO concerning this issue on March 14, 2014, explaining that plaintiffs had challenged the right of the IIRO to withhold documents based on their alleged "governmental" nature in proceedings before Your Honor on June 23, 2011, and that the IIRO had formally withdrawn any objection on that basis through prior counsel, on July 7, 2011. *See* Exhibit B at pp. 5-6. Plaintiffs indicated that counsel's more recent statements indicating the intervention of the Saudi government stood at odds with those earlier proceedings, and therefore asked the MWL and IIRO to clarify "whether effective control over any responsive documents has been surrendered to the government of Saudi Arabia or any agency of the government of Saudi Arabia." *Id.* at p. 6. Plaintiffs did not receive a response to that inquiry, and presumed that all of these records would be produced prior to the document production deadline.

To this point, plaintiffs have seen no evidence that this collection of documents has been produced. Plaintiffs therefore raised the issue again in their March 11, 2015 letter to Mr. Kabat, but have not received a response to that inquiry either.

    C.    <u>Abdullah Naseef and Soliman al Buthe</u>

In a November 11, 2013 letter, Mr. Kabat advised that he anticipated producing documents on behalf of his clients Abdullah Naseef and Soliman al Buthe in the near future. Specifically, the letter advised "that Dr. Naseef is in critical condition, recovering from surgery, and we have been unable to determine what documents he may have. Hence, his responses are in the nature of a placeholder, and we intend to supplement the responses upon his return to good health, and when he is able to review his documents." *See* Exhibit C. As to al Buthe, the letter reported that "We also anticipate producing one or more tranches of documents for Mr. Al-Buthe over the next week or two." *Id.* Neither defendant has produced a single document since the 2013 letter. Notwithstanding Mr. Kabat's participation in the meet and confers, he did not comment on the status of discovery completion as to either of these defendants. As a result, it is unclear to plaintiffs whether they remain active participants in this litigation.

    D.    <u>Al Haramain Islamic Foundation (USA)</u>

On March 6, 2015, Mr. Kabat made a belated production of approximately 700 pages of documents on behalf of his client al Haramain Islamic Foundation (AHIF) (USA). *See* Exhibit D. Of note, Mr. Kabat made no mention of these materials when plaintiffs inquired during the meet and confer whether any defendants expected to make additional productions, but they presumably were on his mind when he raised the potential that a defendant might supplement its production if it found a "file cabinet" that had been overlooked.

Significantly, these additional materials relate principally to AHIF USA's previously undisclosed efforts to secure its removal from U.N. and U.S. sanctions lists, for the stated purpose of allowing its sole director to sell off its remaining assets and formally dissolve the organization. As one of its submissions to the U.N. explains:

Case 1:03-md-01570-GBD-SN   Document 3111-1   Filed 11/06/15   Page 7 of 11
Case 1:03-md-01570-GBD-FM   Document 2945   Filed 04/06/15   Page 6 of 10

The Honorable Frank Maas
April 6, 2015
Page 6

> At present, the sole director of AHIF-Oregon is Thomas Nelson, who is also legal counsel for AHIF-Oregon. Mr. Nelson is operating in that capacity with OFAC's knowledge and consent. He is doing so in order to pursue AHIF-Oregon's challenges to its designation and listing, and with the ultimate objective of winding down AHIF Oregon's affairs, distributing its assets in a manner consistent with the intent of its donors, and once that is accomplished, dissolving the corporation. None of this can be achieved, however, so long as AHIF-Oregon remains a designated and listed entity.

The bulk of these documents date back several years, and include communications sent between Mr. Kabat's office and the relevant authorities. No explanation was provided for the delay in the production of those documents.

Given the subject matter of the documents in issue, and given that the Court has imposed costs and fees related to plaintiffs' previous motion for sanctions against AHIF (USA) for discovery violations, including its "unreasonable refusal" to produce documents when ordered by this Court (ECF No. 2789), the belated production of these materials raises significant concerns warranting the Court's attention. Plaintiffs submit that it would be beneficial to explore these issues during an in-person conference.

E.   Dallah Avco

As indicated above, Dallah Avco advised plaintiffs immediately before the December 15, 2014 document production deadline that it would need additional time to complete its production. *See* Exhibit E. In response, plaintiffs indicated that they would be amenable to a reasonable omnibus extension of the document production deadline, to accommodate Dallah Avco. *See* Exhibit F.

Dallah Avco initially indicated that it anticipated completing its productions in April, but has most recently revised that estimate to May. *See* Exhibits G and H.

Plaintiffs remain of the view that, rather than applying a piecemeal approach to discovery, a common schedule for further discovery proceedings should apply to all discovery defendants, consistent with the approach the Court has consistently endorsed to this point. Accordingly, to the extent the Court is inclined to afford Dallah Avco or any other defendant additional time to complete its production of documents, the schedule for further discovery processes should take into consideration the date on which such productions will be complete. To that end, plaintiffs have requested in their March 11, 2015 letter to Mr. Kabat that Dallah Avco provide an updated estimate for the completion of its document production. Plaintiffs also have not received a response to that request.

The Honorable Frank Maas
April 6, 2015
Page 7

---

      F.      Negligible and Non-Existent Productions

A number of defendants produced only a handful of documents long ago, or have produced none at all. These include: Wa'el Jelaidan (104 pages)[2]; Perouz Sedaghaty (0 pages); Adnan Basha (1 page); Abdullah Omar Naseef (14 pages); Abdullah al Turki (34 pages); Abdullah al Obaid (30 pages); Abdul Rahman al Swailem (82 pages); and Soliman al Buthe (1 page).

It is unclear to plaintiffs whether certain of these defendants remain active participants in this litigation, an issue that would have been clarified by the statements plaintiffs have requested. To the extent certain of the defendants have decided to no longer participate, that fact will impact the scope and nature of necessary motion practice, and is therefore relevant to the evaluation of the appropriate approach and schedule for further proceedings.

As the defendants have not responded to plaintiffs' inquiries relating to the issues and concerns raised above, plaintiffs respectfully request the Court hold an in-person conference and require participation by counsel for each defendant, to address these questions.

### 3.    Plaintiffs' Proposal And Response To Defendants' Proposal

Putting aside the uncertainties regarding the status of certain defendants' document productions, the scheduling proposal presented by the defendants is manifestly unrealistic, fails to provide time and mechanisms for necessary and important processes, and would serve to necessitate motion practice that might be avoidable through compromise. The following considerations reinforce these conclusions:

      A.      The Defendants' Proposal Does Not Provide Any Means for the Parties to Resolve Disputes Without Court Intervention

Significantly, the proposal submitted by the defendants does not provide time for the parties to meet and confer about discovery disputes, or for the defendants to take remedial action relating to issues raised by plaintiffs that might obviate the need for motion practice. Instead, it proposes that the parties simply bombard the Court with any motion to compel they may potentially wish to file before April 30, 2015, or presumably be barred from seeking redress.

In this respect, the defendants' proposal would invite a flood of motions, some of which may prove unnecessary in the event time is afforded for dialogue among the parties, and overwhelm the Court with a simultaneous deluge of motions to compel.

---

[2] The Court has sanctioned Mr. Jelaidan for discovery failures. *See* ECF No. 2789.

B.  Significant Portions of the Defendants' Productions Were Made Shortly Before the December 15, 2014 Deadline, Despite the Court's Repeated Admonitions that the Defendants Produce Their Documents on a Rolling Basis

As defendants acknowledge in their own proposal, the productions of several of the defendants were heavily weighted to the period shortly before the document production deadline. After productions spanning the course of multiple years, these recent productions encompass approximately 35% of the total of all productions in the preceding multiple years, and a total of more than 200,000 pages. Moreover, those recent productions came on the heels of significant other productions that were deferred until the last year. For example, since the date one year before the document production deadline, plaintiffs have received 241,550 pages from the IIRO; 90,791 pages from Yassin al Kadi; 57,072 pages from the WAMY defendants; and 50,463 pages from the MWL (in addition to productions from other of the defendants). Thus, plaintiffs have received approximately one half million pages of documents in the last year.

C.  The Analysis of the Defendants' Productions is Highly Complex, Due Not Only to the Scope of the Productions and Translation Issues, but the Disorderly Nature of Several of the Defendants' Productions and Continuing Infusion of Irrelevant Materials

Beyond the difficulties presented by the volume of the defendants' recent productions, the analysis of those documents requires extensive and laborious translation efforts and the involvement of subject matter experts. In fact, defendants' productions encompass documents in (among others) the following foreign languages: Arabic, Urdu, Bangladeshi, Serbo-Croatian, Bosnian, Russian, Turkish, German, and French. Local dialects used in Indonesia, the Philippines, Thailand and elsewhere are also implicated. Further complicating matters, many of the documents are handwritten or include handwritten notations, rendering translation more difficult. Once translated, knowledgeable subject matter experts need to analyze these materials. Even if the more than half million pages had been in English, useful short order analysis would have been impossible, but the language differentials complicate matters even further.

Even beyond those linguistic and subject-matter issues, the productions of several of the defendants lack any internal logic or order, and are infused with countless irrelevant documents.[3] The Court has been apprised of these problems in the past, and plaintiffs do not wish to litigate these problems in this context.

The Court will recall that the defendants collectively moved to require plaintiffs to reorganize their productions of FOIA-related documents, arguing that it would be unfair to require them to attempt to analyze those documents unless they were produced in a highly ordered and sequenced matter. The Court agreed, and directed plaintiffs to revisit and re-

---

[3] The volume of irrelevant documents is problematic by itself. But coupled with the linguistic issue, requiring plaintiffs to have pages of irrelevant documents translated ant analyzed before recognizing they are unresponsive to plaintiffs' requests amplifies the problem further.

The Honorable Frank Maas
April 6, 2015
Page 9

---

organize their FOIA productions. Plaintiffs intend to seek the same relief relative to several of the defendants' productions.

    D.    <u>Several Defendants Have Abused the Omnibus Confidentiality and Protective Order</u>

On October 3, 2006, the Court entered an omnibus confidentiality and protective order, allowing the parties to unilaterally and without any affirmative showing designate materials as "confidential." ECF No. 1900. The defendants had argued that such an order was necessary given the anticipated production of voluminous financial documents of a sensitive nature. Plaintiffs opposed that order, urging that it inverted the applicable burden regime, and would be abused by the defendants. Citing the anticipatory concerns raised by the defendants, the Court issued an order authorizing the parties to unilaterally designate documents as confidential and protected, and requiring the parties to observe various protocols in relation to documents so designated. However, the ability of a party to invoke the order was subject to significant limitations, most notably the requirement that the party invoking the order exercise good faith and only mark qualifying materials as confidential in the first place.

Unfortunately, the 2006 confidentiality and protective order has been abused by several defendants. In fact, several defendants have simply marked the entirety of certain document productions as "confidential" under the order. Remarkably, materials so designated have included documents specifically created for public dissemination (such as marketing materials), MapQuest directions, newspaper articles, books, gas station receipts, and the like.

Because the confidentiality and protective order imposes a range of burdens concerning the treatment of designated material, the abuse of the order effects future discovery proceedings in significant respects. As a result, plaintiffs intend to request that several of the defendants re-visit their designations wholesale, a process that may take time but that plaintiffs hope they will undertake voluntarily.

    E.    <u>Plaintiffs (Unfortunately) Anticipate Extensive Motion Practice</u>

Although plaintiffs have not completed their review of all defendants' productions, they anticipate that extensive motion practice may be necessary, likely to include motions for sanctions in a few cases. The schedule proposed by the defendants does not reasonably reflect the scope of motions needed to address deficiencies in the defendants' own productions.

    F.    <u>The Defendants Have Requested Numerous Extensions to Complete Their Own Review and Analysis of the Documents Provided</u>

The duration of the various defendants' own review of the documents produced thus far in discovery, and numerous accommodations afforded them to conduct that review, further underscore the unreasonableness of the defendants' proposal. Several of the defendants have been in the process of reviewing their records for years, and have requested and received numerous extensions to complete their productions. The length of time it has taken the

---

defendants to review and analyze their own records for production stands at odds with their suggestion that plaintiffs should be able to complete their review of all defendants' productions within a narrow window following the document production deadline. As but one example, the Court issued an order directing WAMY-SA to produce in the United States 120,000 pages of documents the defendant had previously collected and organized in a conference room in its Riyadh headquarters. *See* April 25, 2014 Order (ECF No. 2852). From the date of that order, it has taken WAMY-SA nearly a year to produce approximately 50,000 pages, with another 70,000 pages still outstanding.

Having taken years to conduct their own analysis of the documents produced, and having received numerous accommodations from plaintiffs to complete their reviews, the defendants should not be permitted to now use the mechanism of an unreasonable schedule for motions to compel as a sword to inhibit plaintiffs' ability to challenge the significant remaining deficiencies in their productions.

In light of the issues summarized above and other factors, plaintiffs propose the following structure and schedule for the next phases of discovery:

1. Deadline for Serving Supplemental Discovery Requests Concerning Matters Raised in Documents Already Produced: May 30, 2015.

2. Deadline for Responding to Supplemental Discovery Requests Concerning Matters Raised in Documents Already Produced: June 30, 2015.

3. Deadline for Filing Motions to Compel and Other Motions Relating to Document Productions (which are to be filed on a rolling basis beginning immediately): September 30, 2015.

Plaintiffs look forward to discussing these matters with the Court.

Respectfully submitted,

Sean P. Carter
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

SPC/bdw
cc: The Honorable George B. Daniels (via Overnight Mail)
    MDL-1570 Counsel of Record (via ECF)

LEGAL\22554861\1 00000.0000.000/117430.000