# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

_IN RE_ TERRORIST ATTACKS ON SEPTEMBER 11, 2001    ) No. 03 MDL 1570 (GBD/FM)

)

)      ECF Case

_____)

This document relates to:

> ASHTON, _et al._ v. AL QAEDA ISLAMIC ARMY, _et al._,
>> Case No. 02-CV-6977;
>
> BURNETT, _et al._ v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., _et al._,
>> Case No. 03-CV-5738;
>
> CANTOR FITZGERALD ASSOCIATES, LP, _et al._ v. AKIDA INVESTMENT CO., LTD., _et al._,
>> Case No. 04-CV-7065;
>
> CONTINENTAL CASUALTY CO., _et al._ v. AL QAEDA ISLAMIC ARMY, _et al._,
>> Case No. 04-CV-05970;
>
> EURO BROKERS, INC., _et al._ v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., _et al._,
>> Case No. 04-CV-07279;
>
> FEDERAL INSURANCE CO., _et al._ v. AL QAIDA, _et al._,
>> Case No. 03-CV-6978; and
>
> ESTATE OF O'NEILL, _et al._ v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., _et al._,
>> Case No. 04-CV-1923
>
> .


## Defendant Al Haramain Islamic Foundation, Inc. (USA)
## Rule 72 Objections to October 28, 2015 Ruling

Defendant Al Haramain Islamic Foundation, Inc. (USA) ("Al Haramain USA"), pursuant to 28 U.S.C. § 636(b)(1) and Rule 72, Fed. R. Civ. P., respectfully submits its objections to the Magistrate Judge's ruling dated October 28, 2015 (ECF No. 3087), on the Plaintiffs' fee petition.

As set forth below, the Magistrate Judge's ruling was in error, since he granted Plaintiffs an unjustified windfall, even though counsel for Plaintiffs knowingly deceived the Court and opposing counsel in their fee petition, and Plaintiffs suffered no prejudice from the delay in receiving documents that were covered by a protective order in a pending criminal case. This Court should hold an evidentiary hearing that would require counsel for Plaintiffs to testify about (1) their knowledge of the fabrication of time records; and (2) their acts in "enhancing" their time records in order to seek additional time beyond that which was actually incurred.

## I.        Introduction and Procedural Background.

This arose from a straightforward discovery dispute – whether Al Haramain USA should be sanctioned because it is alleged to have delayed in producing documents that were subject to a protective order in a pending criminal case in the U.S. District Court for the District of Oregon. Counsel for Al Haramain USA, and the Federal Public Defender in the criminal case, both interpreted this protective order as precluding any use of those documents in this litigation.

Here, Al Haramain USA ultimately produced all the documents that Plaintiffs requested – over 76,000 pages – regardless of whether they were relevant to the claims and defenses. Magistrate Judge Maas specifically held that Plaintiffs have suffered no prejudice from having to wait until early 2013 for the production. *See* Opinion, at 4 ("there was no showing that the Plaintiffs were prejudiced by Al Haramain (USA)'s delay") (ECF No. 3087).[1]

---

[1] Plaintiffs recently filed motions to compel as to several other defendants, seeking additional documents. However, Plaintiffs' pending motion as to Al Haramain USA (ECF No. 3035) (Sept. 15, 2015), does not seek the production of any further documents, thereby confirming that Plaintiffs have obtained all the documents that they want from this defendant.

Magistrate Judge Maas expressly rejected the other discovery issues that Plaintiffs raised in their motion to compel, and further denied the Plaintiffs' request for an adverse inference, a default judgment, or any sanction other than attorneys' fees for bringing their motion, specifically limited with respect to "moving to compel the production of the Oregon documents." *See* Opinion, at 4-5 (ECF No. 3087).

Undaunted, Plaintiffs then filed a joint fee petition that requested 682.85 hours for the entire motion to compel, at high billing rates ranging from $350 per hour (paralegal) to $800 per hour (partners). They further sought a lodestar enhancement of 1.5, so that the billing rates actually requested were an even more unprecedented range of $525 per hour (paralegal) to $1,200 per hour (partners), resulting in $617,497.50 in fees and $6,029.21 in expenses, for a total of $623,526.71. The fee petition was not accompanied by contemporaneous time records, which has been long required under Second Circuit precedent. Instead, Plaintiffs submitted "summaries" (spreadsheets) that Plaintiffs' counsel expressly and repeatedly represented, both in their fee petition and at the court hearing on April 24, 2014, were based on contemporaneous time records. In their joint fee petition, Plaintiffs represented that: "The summaries were prepared based on contemporaneous data maintained by each firm." *See* Pls. Fee Petition, Declaration, at ¶ 15 (ECF No. 2831) (Jan. 24, 2014). At the court hearing, Mr. Haefele expressly represented that: "it says so in our declaration, that the time records were contemporaneously kept time records." *See* Transcript, at 51: 3-4 (ECF No. 2860) (Apr. 24, 2014).

Al Haramain USA's opposition to the fee petition questioned the extravagantly high hourly rates, the lack of contemporaneous records, the obvious inconsistencies among counsel in billing for the same events, and the substantial overbilling for a straightforward discovery dispute. When Al Haramain USA requested that it be allowed to examine all of the Plaintiffs'

contemporaneous time records – since the reconstructed spreadsheets covered 38 months from June 2008 through December 2013 – Magistrate Judge Maas allowed discovery of only <u>two</u> months of records, barely 5 percent of the months for which Plaintiffs were seeking fees.

Only then did Magistrate Judge Maas and Al Haramain USA learn what counsel for Plaintiffs had deliberately concealed from this Court – that the Kreindler & Kreindler law firm, counsel for the *Ashton* plaintiffs, did <u>not</u> keep contemporaneous time records and instead reconstructed their time, months and years later.  In light of this fraud on the Court, Al Haramain USA then explained why the Court would be justified in substantially reducing or denying entirely the fee petition, including through subsequent decisions of the Second Circuit addressing similarly deficient fee petitions filed with U.S. District Judge Hellerstein in the related 9/11 litigation.  *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (requiring district court "to determine whether Mishkin kept sufficiently detailed contemporaneous records as as to be eligible for a fee award under *Carey*"); *In re World Trade Center Disaster Site Litigation*, 754 F.3d 114, 126-27 (2d Cir. 2014) (district court properly denied fees, in part because counsel did not keep contemporaneous time records); *see also* Def. Notices of Supp. Auth. (ECF Nos. 2868 & 2940) (discussing subsequent case law).

Al Haramain USA also described how even the limited sample of two months of time records for the other law firms showed that these firms had improperly "enhanced" their time entries in order to increase the time sought beyond what was originally recorded.  *See* Al Haramain Response, at 12 (ECF No. 2864) (May 29, 2014).

Magistrate Judge Maas held that the Kreindler & Kreindler firm would not be allowed to receive any fees.  However, he declined to sanction the other law firms even though (1) they knew or had to have known that their representations that the fee petition was based on

contemporaneous time records, made in both the fee petition and at the April 24, 2014 court

hearing, were false; and (2) they had knowingly deceived the Court by their "enhancing" the

time entries through increasing the time allegedly recorded on several dates within the two

month period for which full records were disclosed.  Magistrate Judge Maas ultimately awarded

the Plaintiffs a windfall for their deception:  over $176,000 for 380 hours, corresponding to a

blended hourly rate of $450 per hour, for a relatively simple discovery motion.  In short,

Magistrate Judge Maas's decision rewarded Plaintiffs' counsel for misleading this Court.

## II.    Standard of Review.

Rule 72(a), Fed. R. Civ. P., and 28 U.S.C. § 636(b)(1) govern this Court's review of a

magistrate judge's ruling on a "pretrial matter not dispositive of a party's claim or defense."

This Court reviews a magistrate judge's ruling on a non-dispositive matter under the

"clearly erroneous or contrary to law" standard.  *See* 28 U.S.C. § 636(b)(1)(A); Rule 72(a), Fed.

R. Civ. P.  "A district court is justified in finding a magistrate judge's ruling 'clearly erroneous'

where, although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed."  *Highland Capital*

*Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (citations omitted).

Under Rule 37(a)(5)(A), Fed. R. Civ. P., an attorney fee provision of the discovery rules,

the courts "must not order this payment [of fees]" if it finds that either "(ii) the opposing party's

nondisclosure, response, or objection was substantially justified," or "(iii) other circumstances

make an award of expenses unjust."[2]  Similarly, Rule 37(b)(2)(C), another attorney fee

provision, precludes the payment of fees if "the failure was substantially justified or other

circumstances make an award of expenses unjustified."

---

[2] Rule 37(a), Fed. R. Civ. P., will be amended as of December 1, 2015.  However, the
provision governing attorneys' fees remains unchanged.

### III.     The Ruling that Attorneys' Fees were Justified, even though Plaintiffs Knowingly Deceived the Court, Is Clearly Erroneous or Contrary to Law.

This Court must find that the ruling must be set aside under the "clearly erroneous or contrary to law" standard, *see* 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed. R. Civ. P., since it was based on a clear factual and legal mistake, leaving this Court "with the definite and firm conviction that a mistake has been committed." *Highland Capital*, 551 F. Supp. 2d at 177.

Here, the counsel for the Plaintiffs knew, at the time of submitting their fee petition, that the time records of at least one law firm were <u>not</u> based on contemporaneous records, yet they repeatedly represented that their "summaries" were based on contemporaneous records. Thus, the ruling was based on a clear legal mistake, since it improperly rewarded Plaintiffs for fabricating their time records, which no court has ever condoned.

### A.     The Ruling Improperly Rewarded Plaintiffs for Their Deception.

As a threshold matter, this Court should strike the fee petition award in its entirety, due to Plaintiffs' knowing deception of this Court. Plaintiffs ultimately *admitted* that the Kreindler law firm's "time records" were not based on contemporaneous time records, yet Plaintiffs made no attempt to correct the record at the time of their fee petition or at the motions hearing.[3]  Indeed, Mr. Kreindler himself was present at the April 24, 2014 hearing, and he spoke on the record near the end of the hearing, *see* Transcript, at 58:22 – 59:6 (ECF No. 2860) (Apr. 24, 2014), yet he did not stand up at any time to explain that his firm did not maintain time records. Nor did any

---

[3] This conduct calls into question counsels' compliance with Rule 3.3(a), N.Y. R. Prof. Conduct, "Conduct Before a Tribunal," which requires that: "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer," and Rule 3.4(a), "Fairness to Opposing Party and Counsel," which similarly requires that "A lawyer shall not: (a) . . . (3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal; (4) knowingly use perjured testimony or false evidence; [or] (5) participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false."

other counsel admit what they had to have known – that one firm's "summaries" (spreadsheets) were not based on contemporaneous time records, and that the other firm's "summaries" were enhanced to seek additional time beyond what was actually recorded.

It has been settled law in the Second Circuit for five decades that attorneys <u>must</u> keep contemporaneous time records if they are seeking to get fees:

> **We wish to emphasize that any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent**. Lawyers are well aware that, especially where services of the nature here involved are spread over a period of time and ultimate payment is virtually assured, they are valued principally on the basis of the time required.  **There is no excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported by daily records or for it to expect a court to do so.**

*In re Hudson & Manhattan Railroad Co.*, 339 F.2d 114, 115 (2d Cir. 1964) (emphasis added). The Second Circuit reinforced this in its widely-cited 1983 *Carey* decision, which rejected the use of reconstructed time records in support of a fee petition.  *N.Y. Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *accord McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) (contemporaneous time records are required so that the court can properly evaluate the fee petition).  As the Third Circuit stated, the "courts frequently must rely not only upon the accuracy of the record keeping but upon the intellectual honesty of counsel in the allocation of hours and in the measurement of time," which requires "ethical sensitivity."  *Hall v. Borough of Roselle*, 747 F.2d 838, 842 (3d Cir. 1984).[4]

---

[4] Numerous other circuits have similarly held that contemporaneous time records are required for a fee petition.  *See*, *e.g.*, *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984); *In re Meade Land & Devel. Co.*, 527 F.2d 280, 283-84 (3d Cir. 1975) (reversible error to award fees); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990); *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863, 877 (6th Cir. 1974) (reversible error to award any fees); *Ranco Fertiservice, Inc. v. Laursen*, 456 F.2d 988, 991 (8th Cir. 1972) (same); *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).

Here, while the Magistrate Judge did deny the Kreindler firm's fees, that was but a drop in the bucket, since the Kreindler firm sought only 40.50 hours (with a base value of $17,500, and the lodestar enhancement sought $26,250), less than 4 percent of the entire fee petition. Indeed, Mr. Kreindler made clear, in response to the fee petition decision, that he did not care that the Court had found that he made false representations to the Court, since his only concern was in getting money from any source, by any means, in order to keep on litigating this case:

> James Kreindler, from the Kreindler law firm, **said he wasn't bothered by the denial of fees**. He said the plaintiffs firms are working together, "**so if we can pick up a couple hundred thousand dollars** for the common effort, when we spent millions, **that's a good thing**."

*See* C. Simmons, "Firms' Discovery Fee Request Is Trimmed in 9/11 Litigation," *N.Y. L.J.*, Nov. 2, 2015, at 1 (emphasis added). This Court should not condone the ends-justify-the-means approach to fee litigation, which rewards counsel for Plaintiffs for their deception. Instead, this Court should set aside the fee petition award as to Al Haramain USA, so that counsel for Plaintiffs do not receive an unjustified windfall for their conduct.

###### B.      The Ruling Improperly Rewards Plaintiffs for Their Overreaching.

This Court should further find that the Magistrate Judge's ruling on the fee petition should be set aside, because it improperly rewarded Plaintiffs for their blatant overreaching. This was a relatively straightforward motion to compel. Magistrate Judge Maas granted the motion to compel as to only one issue. Moreover, his order allowing the Plaintiffs to submit a fee petition expressly limited the Plaintiffs to seeking the costs associated with obtaining the Oregon documents, not any other aspect of their motion to compel. *See* Mem. Dec., at 34-35 (ECF No. 2789) (Oct. 28, 2013). He also denied the plaintiffs any other sanction, expressly rejecting their request for an adverse inference or entry of a default judgment. *Id.*

Undeterred, Plaintiffs submitted an overreaching fee petition that sought <u>all</u> of their time

for the entire motion to compel, without regard to their limited success, and contrary to the

Magistrate Judge's October 28, 2013 ruling.  Even though this was a simple discovery dispute,

Plaintiffs claimed to have incurred 637.50 hours, and an additional 45.35 hours on their fee

petition, for a total of 682.85 hours.  Plaintiffs' overreaching was further exemplified by the

hourly rates sought:  ranging from $350 per hour for paralegals to $800 per hour for partners.

On top of that, Plaintiffs remarkably sought an entirely unjustified lodestar enhancement of 1.5,

which brought their hourly rates to a breathtaking $525 per hour (paralegal) to $1,200 per hour

(partners).  The total sought was $623,526.71, including $6,029.21 in expenses.

It is settled law that the district court can, and should, strike a fee petition that is so

excessive as to be outrageous.  Judge Posner held that:  "When an award of fees is permissive,

denial is an appropriate sanction for requesting an award that is not merely excessive, but so

exorbitant as to constitute an abuse of the process of the court asked to make the award."  *Budget

Rent-A-Car System, Inc. v. Consolidated Equity, LLC*, 428 F.3d 717, 718 (7th Cir. 2005).  The

Eleventh Circuit similarly upheld a district court's denial of a "grossly excessive" fee request,

since "other circuits have held that district courts do not abuse their discretion by wholly denying

exorbitant fee applications when an award of fees is permissive."  *Lexon Insurance Co. v.

Community & Southern Bank*, 608 Fed. Appx. 918, 919 (11th Cir. 2015) (collecting cases).  The

D.C. Circuit similarly explained that:

> **We may deny in its entirety a request for an "outrageously unreasonable"**
> **amount,** lest claimants feel free to make "unreasonable demands, knowing that
> the only unfavorable consequence of such misconduct would be reduction of their
> fee to what they should have asked for in the first place."

*Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting *Brown

v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) (emphasis added)).

The Fourth Circuit's decision in *Landow* is directly on point.  There, the plaintiffs

8

obtained very limited relief on their housing discrimination claims, since the district court rejected most of their claims and most of the remedies sought. *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 94-95 (4th Cir. 1993). Yet, the plaintiffs filed a fee petition seeking $537,113. *Id.* at 95. While the district court recognized that the plaintiffs were ostensibly entitled to fees under 42 U.S.C. § 1988, the district court instead drastically reduced the fee award to $20,000, given that the dispute "was relatively simple and straightforward." *Id.* The plaintiffs appealed the reduction of the fee award, and the defendant cross-appealed "the district court's refusal to deny the fee request in its entirety." *Id.* at 95-96.

The Fourth Circuit rejected the plaintiffs' appeal. Instead, the Fourth Circuit recognized that "other circuits allow a district court to deny a request for attorneys' fees in its entirety when the amount of fees requested by the prevailing party is so outrageously excessive as to shock the conscience of the court." *Id.* at 96. The Fourth Circuit adopted the Seventh Circuit's reasoning that a fee petition should <u>not</u> be an opening bid in the hope that some award will be made:

> **If, as appellant argues, the court were required to award a reasonable fee when an outrageously un-reasonable one has been asked for, claimants would be encouraged to make unreasonable demands**, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful . . .

*Id.* at 96 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) (emphasis added)).

The Fourth Circuit held that fee petitions should be denied in these circumstances:

> **Thus, we hold that a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request** . . . **is so outrageously excessive it shocks the conscience of the court**. . . . We believe that the rule adopted today . . . telegraphs a signal to attorneys . . . to act responsibly when submitting petitions for attorneys' fees. Therefore, we join the First and Seventh Circuits in recognizing discretion in the district court to deny a fee request in its entirety in civil rights litigation when the amount requested is so excessive it shocks the conscience of the court.

*Id.* at 96-97.  In *Landow*, not only did the plaintiffs submit an excessive fee petition – $537,113

in 1993 dollars for a straightforward case where they only prevailed on one small remedy on one

claim – but also the plaintiffs submitted "woefully inadequate time records," *id.* at 97, which

further justified outright denial of the fee petition:

> In summary, the fee petition in the present case contained several serious deficiencies.
> **First, despite obtaining only limited success, the FHC excluded only a small portion
> of its fees from its petition and sought to recover an amount of fees so outrageously
> excessive it shocked the conscience of the court**.  Second, the FHC submitted a fee
> application which failed to specifically allocate the amount of fees attributable to the
> distinct claims on which it prevailed or to detail the fees which the FHC excluded from
> its petition.  **These factors give us every indication that the attorneys representing the
> FHC intended to submit an outrageously excessive fee petition in the hope that the
> district court would at least award some, preferably high, percentage of the
> requested fees.  We believe Congress did not intend to foster such gamesmanship** . . .
> Rather, the clear intent of Congress was to provide only reasonable fees to prevailing
> parties.  Our decision today seeks to further that purpose by encouraging attorneys at the
> outset to request only reasonable fees and to provide the necessary assistance to the
> district court for determining a reasonable fee.  In the present case, because the FHC's fee
> petition completely ignored these principles, we think the district court would not have
> abused its discretion by denying the FHC's fee request in its entirety.  **We, therefore,
> accept the district court's invitation to deny the FHC's fee request completely**.

*Id.* at 98 (emphasis added).

Here, too, this Court would be fully justified in striking the fee petition entirely as to Al

Haramain USA, given that Plaintiffs not only submitted an outrageously excessive fee petition

(seeking enhanced rates of up to $1,200 per hour, and seeking over $623,000 for a simple

discovery dispute).  Further, Plaintiffs also deceived this Court in falsely representing, both in

the fee petition and at the April 24, 2014 motions hearing, that their "spreadsheets" were based

on contemporaneous time records, when they knew that one law firm reconstructed its records

months or years later, and they "enhanced" their time entries in order to seek reimbursement for

more time than was actually incurred.

Under Rules 37(a)(5)(A) and 37(b)(2)(C), Fed. R. Civ. P., the courts cannot order the payment of fees, if the opposing party's conduct "was substantially justified" or if "other circumstances make an award of expenses unjust."  Here, not only did counsel for Al Haramain USA reasonably believe that the plain language of the Oregon protective order barred it from even having access to the documents in the criminal case, let alone producing them in discovery, but also the conduct of counsel for Plaintiffs in deceiving this Court and in submitting an outrageously excessive fee petition, demonstrably makes "an award of expenses unjust" under either Rule 37(a)(5)(A) or Rule 37(b)(2)(C).

Therefore, this Court should set aside the fee petition award as to Al Haramain USA, so that counsel for Plaintiffs are not rewarded by receiving an unjustified windfall for their conduct.

### C.        The Ruling Is Based on Speculation, Not Admissible Evidence.

Further, the ruling is improperly based on speculation, not admissible evidence, and gives greater credence to Plaintiffs' explanations than is warranted.  A fee petition should not be used as a sanction where the party requesting fees submits inadmissible evidence.  For example, regarding the rates of the *O'Neill* plaintiffs' law firm, Mr. Goldman submitted an affidavit stating that "the firm's highest partner billing rate is '*believed to be* $1,025/hour.'"  *See* Report, at 15 (quoting Goldman Declaration, at ¶ 20) (emphasis added).  However, an attorney's "belief" as to the billing rates at his law firm is not cognizable evidence that can be used in a fee petition.

The Report also improperly "weighs" the conduct of the two sides in reaching its determination:  "Although the Plaintiffs' decision not to be fully up-front about the shortcomings in Kreindler & Kreindler's record keeping is certainly far from praiseworthy, it pales in comparison to the Defendants' [*i.e.*, including Wael Jelaidan] dodging and weaving with respect to discovery over the past few years."  *See* Report, at 31.  "Here, whatever the shortcomings of

11

the Plaintiffs' fee application may be, they have not placed their thumbs on the scale so heavily that the total disallowance of their fee request is the appropriate remedy." *Id.* at 34.  Similarly, the Report attempted to excuse the conduct of the Kreindler law firm, because "almost all of its cases are accepted on a contingent fee basis," so that "undoubtedly for that reason, the firm has not made any submission concerning its customary rates."  *See* Report, at 21 (citing the website of the Kreindler & Kreindler law firm).  However, a fee petition is <u>not</u> a matter of equity where it might be appropriate to weigh or compare the conduct of the parties; instead, a fee petition is to be decided as a matter of law, applying the factors set forth in Rule 37(a)(5)(A), Fed. R. Civ. P. (the courts "must not order this payment [of fees]" if it finds that either "(ii) the opposing party's nondisclosure, response, or objection was substantially justified," or "(iii) other circumstances make an award of expenses unjust") and Rule 37(b)(2)(C) (precluding fees if "the failure was substantially justified or other circumstances make an award of expenses unjustified").

Thus, once the court has concluded that sanctions may be appropriate under Rule 37, the second step is for the court to consider how much to award, if any.  However, the court cannot then further penalize the party opposing the fee award by "excusing" the conduct of the party seeking fees, when Rule 37 expressly requires that sanctions cannot be imposed if the objection was substantially justified or if other circumstances made a fee award unjustified.  Here, the Plaintiffs' conduct in fabricating their time records and in submitting a grossly excessive fee petition for simple discovery dispute precludes an award of fees.

The Report also erred in concluding that while some of Plaintiffs' "adjustments" to their fee petition "summaries" were upward adjustments in order to increase the time sought, there was "a downward adjustment as a result of such a discrepancy."  *See* Report, at 34.  This is based on an incorrect reading of defendant's analysis of the Plaintiffs' contemporaneous time records.

In fact, for the March 19, 2013 time entries of the *Federal Insurance* plaintiffs, there were four sets of entries, <u>each</u> of which had a net upward enhancement:

| Event (Mar. 19, 2013) | Carter, Time Records | Carter, Fee Petition | Tarbutton, Time Records | Tarbutton, Fee Petition | Net Change |
|---|---|---|---|---|---|
| Pre-hearing conference | 1.50 | 1.50 | 1.00 | 1.50 | +0.50 |
| Hearing | 2.50 | 2.00 | 1.00 | 2.00 | +0.50 |
| Post-hearing conference | 2.50 | 2.50 | 1.50 | 2.50 | +1.00 |
| Total | 6.50 | 6.00 | 3.50 | 6.00 | +2.00 |

*See* Al Haramain Response, at 12 (ECF No. 2864) (May 29, 2014).  If these "adjustments" or corrections were neutral, then one would expect that half would be upwards, and half would be downwards.  Instead, <u>all</u> of the adjustments had a net upward effect, which is anything but neutral.  Moreover, Plaintiffs only had to disclose time records for two months out of 38 months for which fees were sought, which is barely 5 percent of the entirety of the time records, so that this analysis of Plaintiffs' "enhancements" was necessarily limited.  Indeed, there is no basis in the Second Circuit's precedent that allows a party seeking fees to limit its submission of contemporaneous time records to only 5 percent of the period covered by the fee petition.

Finally, the Report erred in justifying requiring a single defendant to pay for the time and costs of Plaintiffs' attorneys from four law firms for all of their time at all of the motions hearings, on the grounds that "many attorneys on the defense side who were not directly involved in these motions also attended the conferences."  *See* Report, at 33.  This is a *non sequitur*, since those other attorneys did not bill Al Haramain USA for attending these conferences, and if any one defendant were to prevail on a motion to compel, its fee petition would not include the time for attorneys who represent other defendants.

IV.    **The Ruling that Attorneys' Fees were Justified Because Al Haramain USA Delayed in Producing Documents Covered by a Protective Order in the <u>Criminal Case Is Clearly Erroneous or Contrary to Law.</u>**

This Court must further find that the ruling must be set aside under the "clearly erroneous or contrary to law" standard, *see* 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed. R. Civ. P., since it was based on a clear factual and legal mistake, since Al Haramain USA's delay in producing certain documents was based on its reasonable belief that the plain language of the protective order in the Oregon criminal case precluded it from producing them in this litigation.

A.    **Al Haramain USA Delayed in Producing Documents That Were Covered by <u>a Protective Order in the U.S. District Court for the District of Oregon.</u>**

Here, the Magistrate Judge held that attorneys' fees were warranted for Plaintiffs' motion to compel, because Al Haramain USA had delayed in producing certain documents that were covered by a protective order entered in the criminal case, *United States v. Sedaghaty* (D. Or.). However, this ruling was based on a clear factual and legal mistake, because the <u>only</u> reason for the delay in producing additional documents was because counsel for Al Haramain USA, and the Federal Public Defender in the criminal case, both reasonably believed that the protective order entered in the U.S. District Court for the District of Oregon precluded Al Haramain USA from even receiving those documents, let alone producing them in this litigation, while that criminal case was still pending. *See* Declaration of S. Wax, at ¶¶ 2, 7-8 (Nov. 8, 2013) (attached hereto as Exhibit 1 to Kabat Declaration). The plain language of the Order made this clear:

> Upon motion of the United States . . . it is hereby ORDERED that pursuant to Rule 16(d)(1), Federal Rules of Criminal Procedure, **defense counsel will not reproduce any discovery material provided by the government for dissemination to** the defendant or to any third party (specifically including . . . **the Al Haramain Islamic Foundation, Inc., and its attorneys**) . . .

*See* Order (Attachment A to Wax Declaration) (emphasis added). Al Haramain USA did not

want to violate that protective order, or otherwise interfere with the then-ongoing criminal case. Moreover, the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant. *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989).

As Mr. Sedaghaty's criminal defense counsel – the Federal Public Defender – has consistently made clear, the documents could <u>not</u> be released absent both consent by the prosecutor <u>and</u> written modification of the Protective Order. *See* Ex. 1 (Wax Decl.), at ¶ 8. This was consistent with the Protective Order itself, which expressly prohibited sharing of the seized documents with Al Haramain USA, or making any other use of the documents outside the criminal case. *Id.* at ¶ 2 & Att. A. Moreover, the Federal Public Defender's consistent position is that Mr. Sedaghaty's "Fifth Amendment privilege against self-incrimination could be waived by the production or authentication of these documents," so that "Mr. Sedaghaty should not agree to produce the documents at that time," including "while the criminal case was pending on appeal and a new trial was a possibility." *Id.* at ¶ 7. For that reason, counsel for Al Haramain USA, who also represent Mr. Sedaghaty in the civil litigation, could not take actions that could harm him in the then-ongoing criminal case, which was at the post-trial stage.

**B.    The Reliance on an Improper *Ex Parte* Communication with the Magistrate Judge in Oregon Cannot Serve to Justify the Fee Petition.**

In response to the Plaintiffs' motion to compel, Magistrate Judge Maas had an *ex parte* communication with a Magistrate Judge in Oregon, who apparently asserted his belief that the protective order did not bar disclosure of the documents that were part of the criminal case. Even then, the Oregon magistrate judge did not modify or vacate the protective order. However, the parties were given no advance notice of this *ex parte* communication, had no opportunity to object, to participate, or to rebut what was said, and there is no transcript of this discussion.

Hence, in response to this *ex parte* communication, the prosecutor and the Federal Public

Defender had to obtain permission from the District Judge in Oregon to allow release of the documents for production in this litigation, as discussed in the previous section. *See* S. Wax Declaration, at ¶ 8. Only after that was accomplished was Al Haramain USA able to produce over 76,000 pages of documents (including emails) to the Plaintiffs; this production took place from March 29, 2013 to April 19, 2013, more than two years ago.

Meanwhile, on August 23, 2013, the Ninth Circuit vacated Mr. Sedaghaty's conviction in the Oregon case. *United States v. Sedaghaty*, 728 F.3d 885, 898 (9th Cir. 2013). The Court held that multiple errors required reversal, including failure to disclose payments to a key witness, *id.* at 898; failure to disclose interview notes that revealed key inconsistencies between what the government's key witness told the FBI agents prior to trial and her testimony at trial, *id.* at 901; and failure to provide adequate access to the classified evidence, including a summary of classified information that was exculpatory or otherwise favorable to Mr. Sedaghaty, *id.* at 903-07; and that a remand was required to determine whether the government's seizure of all of Al Haramain USA's documents, including items beyond the scope of the search warrant, was overbroad and not in good faith, therefore requiring suppression of improperly seized evidence. *Id.* at 910-15. The government abandoned its request for additional time to seek rehearing *en banc*, and ultimately abandoned any re-trial of Mr. Sedaghaty on the tax charges. *See United States v. Sedaghaty*, Motion to Dismiss, No. 06-CR-60005 (ECF No. 659) (D. Or. July 29, 2014); Order of Dismissal, No. 05-CR-60005 (ECF No. 660) (July 29, 2014) (Exhibits 2-3 to Kabat Declaration). Mr. Sedaghaty and Al Haramain USA, of course, were never charged with any support of terrorism. Thus, as of July 2014, one year after the documents were produced in this litigation, the government abandoned any further prosecution of Mr. Sedaghaty.

Magistrate Judge Maas correctly held that there was no showing that Plaintiffs suffered

any prejudice from this delay, and he further recognized that it was only after his *ex parte* communication with his counterpart in Oregon that the prosecutor, the Federal Public Defender, and the District Judge in Oregon, were able to revise the protective order in the criminal case to allow release of the documents.  Yet, Magistrate Judge Maas allowed Plaintiffs to get attorneys fees by holding Al Haramain USA responsible for this delay in producing documents, even though Al Haramain USA could not violate the protective order, and both counsel for Al Haramain USA and the Federal Public Defender reasonably believed that the protective order barred release of the documents to Al Haramain USA for use in this litigation.  The basis for this decision was the *ex parte* communication with the magistrate judge in Oregon.  This Court should find that it violates due process to impose sizable monetary sanctions on a party based on *ex parte* communications.  The Supreme Court has held that due process is satisfied only where the parties had advance notice of a judge's proposed *ex parte* communications, there was a transcript of the communication, and no party objected to the procedure.  *United States v. Gagnon*, 470 U.S. 522, 524, 527-28 (1985) (*per curiam*).  Here, in contrast, <u>none</u> of these prerequisites for due process existed when sizable financial penalties were imposed upon Al Haramain USA based on this *ex parte* communication.

Under Rule 72(a), Fed. R. Civ. P., and 28 U.S.C. § 636(b)(1)(A), this Court should set aside the Magistrate Judge's ruling that Al Haramain USA has to pay $176,812.22 in fees and expenses, because it was based on a clear error of law.  Here, the protective order in the Oregon case, as a matter of law, expressly barred Al Haramain USA from even having access to the documents in the criminal case, let alone producing them in discovery, so that Al Haramain USA was reasonable in not producing those documents prior to 2013.  Moreover, the reliance on the *ex parte* communication with another magistrate judge violated Al Haramain USA's due process

rights in depriving it of a significant property interest, since the parties had no notice, no

opportunity to object or to participate, and no transcript exists of what was said.

### V.   CONCLUSION.

For the foregoing reasons, and pursuant to 28 U.S.C. § 636(b)(1)(A) and Rules

37(a)(5)(a), 37(b)(2)(C), and 72(a), Fed. R. Civ. P., this Court should set aside the Magistrate

Judge's ruling on the Plaintiffs' fee petition, because it was based on a clear factual and legal

mistake, so that the circumstances make an award of fees and expenses unjustified.

The ruling improperly gave the Plaintiffs a windfall for their deceit on this Court through

their misrepresentations as to whether their "summaries" were based upon contemporaneous

time records, when their "summaries" either were based on reconstructions, months or years

later, or were based on "enhancing" the time records in order to increase the time for which fees

were sought.  The ruling also improperly gave Plaintiffs a windfall for their excessive fee

request, which sought over $623,000 in fees for a simple discovery dispute, and sought 682.85

hours at extravagant rates ranging up to $1,200 per hour.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei          D.C. Bar No. 938936
Alan R. Kabat            D.C. Bar No. 464258
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7102
(202) 745-1942

Attorneys for Al Haramain Islamic Foundation, Inc.

DATED:  November 11, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2015, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____
Alan R. Kabat