UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(FM)

For the reasons set forth below, the *Ashton* plaintiffs, by and through their counsel, Kreindler & Kreindler LLP, respectfully move this Court to award them compensatory and punitive damages for the pain and suffering each of their decedents experienced in the same amounts previously awarded by this Court to the *Havlish* plaintiffs, and further award them prejudgment interest as set forth below.

I.  **Background**

Relying on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court on December 22, 2011 granted an Order of Judgment on liability in favor of the *Havlish* group of plaintiffs against, among others, The Islamic Republic of Iran (the "*Havlish* Order of Default Judgment on Liability").

After granting the *Havlish* Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the submissions of the *Havlish* plaintiffs, on October 3, 2012 this Court found, among other things, that an award of $2,000,000 for each decedent's pain and suffering was warranted, as were punitive damages and pre-judgment interest in connection with the pain and suffering awards (the "*Havlish* Damages Decision"). On October 16, 2012 this Court then issued a Judgment as to the *Havlish* plaintiffs' damages (the "*Havlish* Damages Judgment").

1

Subsequently, the *Ashton* plaintiffs – a separate group of plaintiffs whose wrongful death and survival claims are consolidated in this multi-district action with those of the *Havlish* plaintiffs – filed a motion for default judgment against The Islamic Republic of Iran ("Iran") and on August 31, 2015 this Court granted that motion and issued a default judgment on liability (the "*Ashton* Order of Default Judgment on Liability.")

The *Ashton* plaintiffs now respectfully request that in light of the Court's recent Order of Default Judgment on Liability against Iran in their behalf, and on the basis of the facts detailed in the damages submissions provided by the *Havlish* plaintiffs in connection with the Damages Decision and the Damages Judgment in that matter, this Court grant the *Ashton* plaintiffs compensatory damages of $2,000,000 for the conscious pain and suffering experienced by each of their decedents and a punitive damages award at the rate of 3.44 times the compensatory damages award (as it did in the *Havlish* cases) and order pre-judgment interest at a rate of 9% per year from September 11, 2001 until the date of judgment.

**II.     Previous Findings**

Upon motion by the *Havlish* plaintiffs pursuant to Fed.R.Civ.P. 55 and Local Civil Rules 55.1 and 55.2 and after taking into consideration the proof presented in support of the motion for default judgment on liability, this Court entered a liability default judgment against certain defendants including Iran on December 22, 2011. *See* 03-md-1570 (03-cv-9848) (S.D.N.Y.) (GBD) (FM) Doc. No. 2516, Entered 12/22/2011 (*Havlish* Order of Default Judgment on Liability).  Then, following introduction of evidence as to individual damages, this Court accepted the Report and Recommendation of Magistrate Judge Frank Maas for judgment amounts totaling (1) $394,277,884 for economic damages; (2) $94,000,000 for pain and suffering damages; (3) $4,686,235,921 for punitive damages; and (4) $874,000,000 for solatium

damages. *See* 03-md-1570 (03-cv-9848) (GBD) (S.D.N.Y.) (GBD) (FM), Doc. No. 2623, Entered 10/03/2012 (*Havlish* Damages Decision). The pain and suffering damages represented an award of $2,000,000 per decedent. *See id.*, pp. 3 – 4. The Court also ordered that punitive damages be awarded at the proportion of 3.44 times each compensatory damages award and that pre-judgment interest should run on the solatium and pain and suffering damages awards from September 1, 2001 until the date of judgment at a rate of 4.96%. *See id.*, p. 5. The total damages award imposed by the default judgment in favor of the *Havlish* plaintiffs was $7,016,513,805. *See* 03-md-1570 (03-cv-9848) (GBD) (S.D.N.Y.) (GBD) (FM), Doc. No. 2624, Entered 10/16/2012 ("*Havlish* Damages Judgment.")

The *Ashton* plaintiffs also moved for a Judgment by Default against Iran and on August 26, 2015, this Court granted that motion, referring the matter to the magistrate judge "to resolve any remaining issues, including but not limited to damages both compensatory and punitive." *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Entered 08/26/2015 (*Ashton* Order of Default Judgment on Liability). The *Ashton* plaintiffs now move this Court to grant the proposed Order and Judgment in their favor awarding: (1) an amount of $2,000,000 for the conscious pain and suffering experienced by each of their decedents; (2) punitive damages on the conscious pain and suffering awards at a rate of 3.44 times the compensatory damages award; and (3) pre-judgment interest calculated from September 11, 2001 until the date of judgment.[1]

---

[1] Plaintiffs now seek a default judgment with respect only to conscious pain and suffering (along with the associated punitive damages multiplier and interest on the pain and suffering award) as the Court has already determined that a uniform amount should be awarded for that category of loss. The *Ashton* plaintiffs' decedents all are similarly situated to the *Havlish* decedents, and the same factual findings and legal conclusions that formed the basis of the *Havlish* pain and suffering award should therefore apply to the instant motion. In the wake of the United States/Iran nuclear agreement, there have been several legislative initiatives designed to ensure that victims of terrorist acts sponsored by Iran receive compensation. If enacted, these remedies may be limited to victims who hold final judgments against Iran. Entry of a partial judgment is

**III.     Legal Argument**

The *Ashton* plaintiffs move this Court to enter a partial damages award in this case on the same basis upon which it granted conscious pain and suffering damages and awarded punitive damages and prejudgment interest to the *Havlish* plaintiffs.

While plaintiffs seeking to recover damages against defaulting defendants must prove their claims through the submission of admissible evidence, the Court need not hold a hearing so long as it has: (a) determined the proper rule for calculating damages (*see Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), and (b) the plaintiffs' evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). In this case, both requirements have been satisfied and a hearing is therefore unnecessary.

As for the burden of proof, the Second Circuit has explained that to enter an amount of damages as part of a default judgment a trial court need only be "ensured there [is] a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Services, Inc.*, 873 F. 38, 40 (2d Cir. 1989); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (it was "not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had 'relied upon detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record gained during four years involvement with the litigation … .'")

In this case, the Court has already concluded, based on the detailed information in the record as well as a matter of common public knowledge, the conscious pain and suffering

---

therefore appropriate in this case, to make sure that the 9/11 families holding liability judgments against Iran are not excluded from the benefits provided by such legislation.  Since there are also economic losses and solatium losses that involve individualized factual findings, the *Ashton* plaintiffs will defer filing a motion for default judgment on those issues until a later date.

4

experienced by those who died on September 11, 2001 and the record contains sufficient evidence of facts warranting both punitive damages and prejudgment interest in this case. Accordingly, the *Ashton* plaintiffs ask that this Court enter the proposed judgment and order on their behalf.

IV.     **Plaintiffs' Proposed Findings of Fact and Conclusions of Law**

On December 22, 2011, in connection with the *Havlish* Order for Default Judgment on Liability, this Court concluded that the plaintiffs had "established by evidence satisfactory to the Court that [The Islamic Republic of Iran] had provided material support and resources to" the perpetrators of the September 11th terrorist attacks, by, "inter alia, planning funding, [and] facilitat[ing] . . . the hijackers' travel and training," and providing the hijackers with "services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." *See* 03-md-1570 (03-cv-9848) (GBD) (S.D.N.Y.) (GBD) (FM), Doc. No. 2515, Entered 12/22/2011 ("Findings of Fact and Conclusions of Law"), pp. 50 – 53.  By defaulting, Iran admitted its role in the September 11th terrorist attacks and the only remaining question is thus a determination of plaintiffs' damages.

As liability against Iran has now been established, the *Ashton* plaintiffs respectfully ask the Court to award them damages consistent with the previous findings and conclusions in the *Havlish* matter.

A. **Damages Under Section 1605A**

Among the claims that the *Ashton* Plaintiffs have asserted against Iran are survival, wrongful death, and solatium claims under the Foreign Sovereign Immunities Act ("FSIA") exception encompassed in 28 U.S.C. § 1605A ("Section 1605A"). Section 1605A creates an exception to sovereign immunity pursuant to which a United States citizen can sue "[a] foreign

5

state that is or was a state sponsor of terrorism . . . , and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency," for damages arising out of an act of terrorism sponsored by that state." 28 U.S.C. § 1605A(c). Though Congress did not pass Section 1605 until 2008, it applies retroactively to suits pending at the time of its passages against foreign states that had been designated as state sponsors of terrorism by the time the suits originally were filed. *See* 28 U.S.C. § 1605A(2)(A)(i)(II); Nat'l Defense Auth. Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3.

The *Ashton* plaintiffs initially filed their suit in 2002 but successfully moved to amend their complaint against Iran, whom they contended was liable under Section 1605A's predecessor statute and which was a designated state sponsor of terrorism at the time they originally filed suit, so as to proceed against Iran under Section 1605A. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3015, Entered 08/31/2015 (granting *Ashton* plaintiffs' motion to proceed with claims against Iran pursuant to 28 U.S.C. § 1605A). They are thus entitled to all damages set forth in that statute.

Under Section 1605A, damages became available under the federal law – as opposed to finding support in state or foreign law. *See Read v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 215 (D.D.C. Feb. 28, 2012) (Section 1605A represented a "sea-change" to the law of recovery against state sponsors of terrorism and damage claims are now subject to a "uniform federal standard"), citing *In re Terrorism Litig.*, 659 F. Supp. 2d 31, 85 (D.D.C. 2009)). In an action under Section 1605A "damages may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). Additionally, "[i]n any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents." *Id.* Consequently, the "estates of those who [died] can recover economic losses stemming from

wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

### B. Conscious Pain and Suffering

The *Ashton* Plaintiffs seek damages for the conscious pain and suffering experienced by each of their decedents, all of whom died as a result of the September 11, 2011 terror attacks. "When determining the appropriate damages for pain and suffering, [the Court] is bound by a standard of reasonableness." *Mastrantuono v. United States*, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001) (citing *Battista v. United States*, 889 F. Supp. 716, 727 (S.D.N.Y. 1995)). The *Havlish* plaintiffs previously moved for an award on their decedents' pain and suffering and this Court adopted the report and recommendation of the magistrate judge on that point. *See Havlish* Damages Order, pp. 3 – 4. The magistrate judge recognized that

> "[t]he effort after a tragedy of this nature to calculate pain and suffering is difficult at best. Unfortunately, there is no way to bring back [the decedents] and no way to even come close to understanding what [they] experienced during their last moments. Under our legal system, compensation can only be through the award of a sum of money. While always difficult and never exact, the devastation and horror accompanying this tragedy makes a realistic appraisal almost impossible."

*See* 03-md-1570 (03-cv-9848) (S.D.N.Y.) (GBD) (FM), Doc. No. 2618, Entered 07/30/2012 ("*Havlish* Recommendation and Report on Damages"), p. 8, quoting *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 233 (S.D.N.Y. 2003), amended, 2003 WL 23324214 (S.D.N.Y. May 19, 2003). Despite this challenge, the magistrate judge found that while "the specifics of each decedent's demise remain largely unknown," the expert report of a retired Navy Rear Admiral established "that many, if not all, of the decedents in this case experienced unimaginable pain and suffering on September 11, 2001." *Id.* It then looked to other

FSIA cases that awarded pain and suffering awards to the estates of victims of state-sponsored terrorism. *Id.*, citing *Smith*, 262 F. Supp. 2d at 234, 239 (awarding $1 million and $2.5 million for the pain and suffering of two 9/11 decedents); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002) (awarding $1.5 million to estate for the pain and suffering of a decedent tortured for fifteen hours before being shot to death); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 22-23 (D.D.C. 2002) ($10 million award to estate of victim who survived forty-nine days with limited pain medication after suffering extensive burn and blast injuries during a terrorist bombing of a bus); *Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1, 8 (D.D.C. 2000) (awarding $1 million in damages for pain and suffering to the estate of a victim of a bus bombing who survived for several minutes before dying.)

> While recognizing that the September 11th decedents
>
> "arguably may have experienced different levels of pain and suffering dependant upon whether they were in the North Tower (the first to be hit but the second to collapse), the South Tower (where they may have had knowledge of the first attack but less notice that a structural collapse was likely), the Pentagon, one of the airplanes, or on the ground," and that each person's precise location when the attack occurred also may have affected their levels of conscious pain and suffering would make "calculating a precise award for each decedent's individual pain and suffering … impossible,"

the plaintiffs were nevertheless entitled to damages for the decedents' pre-death pain and suffering. *Havlish* Recommendation and Report on Damages, p. 9. The *Havlish* Report and Recommendation then concluded that awards in other FSIA cases "suggest that $2 million per decedent is a reasonable figure" for each decedent's pain and suffering. *Id.* This Court adopted that recommendation and awarded $2 million per decedent for pain and suffering damages. *Havlish* Damages Decision, pp. 3 – 4.

In this case, all of the *Ashton* plaintiffs' decedents, like the *Havlish* plaintiffs' decedents, died as a result of the September 11 attacks. And, as in *Havlish*, a precise calculation for each

8

decedent's individual pain and suffering would be impossible. But as established previously, there is no question that each of the decedents "experienced unimaginable pain and suffering on September 11, 2001." *Havlish* Report and Recommendation on Damages, p. 8; *see also Havlish* Damages Decision, p. 3 ("Plaintiff's expert report confirms that many, if not all of the decedents in this case experienced horrific pain and suffering on September 11, 2001.") Because each of the *Ashton* plaintiffs' decedents were killed in the September 11, 2001 attacks – whether they were in the North Tower of the World Trade Center, the South Tower, the Pentagon, one of the airplanes or on the ground – and each suffered the same horror, pain and suffering as did the *Havlish* decedents, the *Ashton* plaintiffs are entitled to damages in the amount previously established of $2 million per decedent.

### C. Punitive Damages

Under the FSIA plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." *Havlish* Report and Recommendation on Damages, p. 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F.Supp. 2d 150, 158 (D.C. 2011). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). *See Havlish* Damages Decision, p. 5; *Havlish* Damages Judgment, pp. 3 – 4. The *Ashton* plaintiffs therefore respectfully request that this Court award them punitive damages of 3.44 times the award for conscious pain and suffering for each decedent, which is identical to what this Court awarded to the *Havlish* plaintiffs, whose decedents' pain and suffering awards were premised on identical liability and damages facts.

### D. Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). The magistrate judge awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment. *See Havlish* Damages Report and Recommendation, pp. 13 – 14. This Court, recognizing that prejudgment interest was appropriate in this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest on pain and suffering was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

The *Ashton* plaintiffs seek prejudgment interest at the New York State statutory amount of 9% or, in the alternative, at the rate set in the *Havlish* judgment.

As the Second Circuit has explained, "Congress did not intend that the FSIA establish substantive rules of liability." *Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 609, n. 8 (2d Cir. 2014). Instead, "the FSIA operates as a pass-through granting federal courts jurisdiction over otherwise ordinary actions brought against foreign states." *Id.*[2] Accordingly, state law typically provides the substantive law for a cause of action arising under the FSIA. *Id.*; *see also Jones v UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir 2000) (There is "no federal statute that

---

[2] Judge Royce Lamberth of the United States District Court for the District of Columbia also recently opined that "although §1605 created a new cause of action, it did not displace a claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity" set forth in §1605A. *Worley v. Islamic Republic of Iran,* 75 F. Supp. 3d 311, 332, n. 6 (D.D.C. 2014)., *quoting Estate of Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1, 20 (D.D.C. 2011). Thus, the *Ashton* plaintiffs' claims against Iran under Section 1605A are premised on both federal common law and New York law, given that the overwhelming majority of deaths occurred and injuries were suffered in New York.

purports to control the rate of prejudgment interest.")  The Second Circuit has never "endorse[d] any particular rate of prejudgment interest," and the selection of New York's statutory rate has been held to have been a sound exercise of a district court's discretion. *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse,* 996 F.2d 506, 520 (2d Cir.1993) (in selecting rate of 9% on prejudgment interest, district court did not abuse its discretion).  Indeed, "[d]istrict courts routinely look to, among other factors, the law of the forum state when selecting a rate for a prejudgment interest award." *Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir 1975), *cert. denied* 429 U.S. 825 (1976); *see also Randolph v. Laeisz,* 896 F.2d 964, 969 (5th Cir. 1990) ("one measure of prejudgment interest that has been upheld as within a trial court's discretion is the prejudgment interest rate of the state in which the court sits"); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1219–20 (8th Cir. 1981) (affirming use of Missouri's nine percent statutory interest rate in ERISA action), *cert. denied,* 454 U.S. 968 (1981); *United States v. M/V Zoe Colocotroni*, 602 F.2d 12, 14 (1st Cir. 1979) ("While a federal court is not bound by the forum's local rate of interest, it is well established that may use the law of the forum as its guide.").

Indeed, the Second Circuit very recently held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation System Stabilization Act ("ATSSA"). *World Trade Farmers Market, Inc. v. American Airlines, Inc. (In Re:  September 11th Litigation)*, 2015 U.S. App. LEXIS 16619, * 66 (2d Cir. Sept. 17, 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of 9%,

11

as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims. *Id.* There is no convincing reason to apply a lower interest rate to the *Ashton* plaintiffs' claims – brought against the international supporters of the terrorist attacks themselves – than the rate applied to domestic defendants whose conduct rose only to the level of negligence in connection with their failure to prevent the attacks.[3]

For the foregoing reasons, the *Ashton* plaintiffs respectfully request that the clerk be directed to award prejudgment interest at a rate of 9% per annum from September 11, 2001 through the date a monetary judgment is issued in favor of moving plaintiffs.

## V. Conclusion

For all of the reasons herein, as well as those set forth in the submissions of the *Havlish* plaintiffs, the *Ashton* plaintiffs respectfully request that this Court award them compensatory damages in the amount of $2,000,000 for each decedents' conscious pain and suffering, punitive damages for the conscious pain and suffering of $6,880,000 for each decedent and prejudgment interest of 9% on the compensatory conscious pain and suffering awards to run from September 11, 2001 until the date of judgment.

Dated: New York, New York
November 13, 2015

Respectfully submitted,

KREINDLER & KREINDLER LLP

BY:   /s/ James P. Kreindler, Esq.
James P. Kreindler, Esquire
Andrew J. Maloney, III, Esquire
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel: (212) 687-8181
*Attorneys for Ashton Plaintiffs*

---

[3] In the alternative, the *Ashton* plaintiffs ask that this Court award prejudgment interest at the rate of 4.96% for the same reasons set forth in the *Havlish* order. *See Havlish* Damages Decision, p. 5.

12