**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) Civil Action No. 03 MDL 1570 (GBD) (FM) ) ) ) |

This document relates to:

*Federal Insurance Co., et al. v. al Qaeda, et al.,* Case No. 03-cv-06978


**MEMORANDUM OF LAW OF THE AXA, CHUBB,**
**MUNICH RE AMERICA, AND ONEBEACON INSURANCE GROUP**
**PLAINTIFFS TO ASSESS DAMAGES AGAINST IRAN FOR CLAIMS ARISING**
**UNDER 28 U.S.C. § 1605A(d)**


November 13, 2015

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................ 5

    A.    Standard of Review ............................................................................ 5

    B.    This Court Conducted an Assessment of Damages for Property
           Losses and Loss Claims Under Insurance Policies in the Context
           of the Al Qaeda Default Proceedings ................................................. 6

    C.    The Court's Prior Damage Award Establishes the Value of the
           Compensatory Damages Moving Plaintiffs are Entitled to Receive
           Relative to Their Claims Against Iran Pursuant to Section 1605A(d) ................... 8

    D.    This Court's Punitive Damages Award in *Havlish* Should be
           Applied Here ...................................................................................... 9

    E.    This Court Has Already Determined That Pre-Judgment Interest
           Should be Awarded Against Iran for the Claims in Issue ..................... 10

    F.    Prejudgment Interest Should Be Compounded Annually ..................... 13

III. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. Continental Airlines*,
    125 F.3d 120 (3d Cir. 1997), *cert. denied,* 522 U.S. 144 (1998)............................................10

*Baker v. Socialist People's Libyan Arab Jamahirya*,
    775 F. Supp. 2d 48 (D.D.C. 2011) .........................................................................................10

*Bank of N.Y. v. Yugoimport*,
    745 F.3d 599 (2d Cir. 2014)....................................................................................................12

*Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab
    Jamahiriya*,
    811 F. Supp. 2d 53 (D.D.C. 2011) .........................................................................................10

*Cornell Univ. v. Hewlett Packard Co.*,
    2009 WL 1405208 (N.D.N.Y. May 15, 2009).......................................................................13

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993).........................................................................................................5

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
    183 F.3d 151 (2d Cir. 1999).....................................................................................................6

*Curry v. American Int'l Grp. Inc., Plan No. 502*,
    579 F. Supp. 2d 424 (S.D.N.Y. 2008)...................................................................................13

*Estate of Doe v. Islamic Republic of Iran*,
    808 F. Supp. 2d 1 (D.D.C. 2011) ...........................................................................................12

*Evans v. City of Chicago*,
    434 F.3d 916 (7th Cir. 2006) .................................................................................................10

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
    973 F.2d 155 (2d Cir. 1992).....................................................................................................5

*Jones v. UNUM Life Ins. Co. of Am.*,
    223 F.3d 130 (2d Cir. 2000)...................................................................................................10

*Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*,
    856 F. 2d 293 (D.C. Cir. 1988)..............................................................................................10

*New Mexico v. GE*,
    467 F.3d 1223 (10th Cir. 2006) .............................................................................................10

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)............................................................................................7

*Sands v. Runyon*,
  28 F.3d 1323 (2d Cir. 1994)............................................................................13

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931).......................................................................................6, 9

*Time Warner Cable of N.Y.C. v. Barnes*,
  13 F. Supp. 2d 543 (S.D.N.Y. 1998)................................................................5

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
  109 F.3d 105 (2d Cir. 1997)..............................................................................6

*In re Vivendi Universal, S.A. Securities Litig.*,
  284 F.R.D. 144 (S.D.N.Y. 2012)....................................................................13

*World Trade Farmers Market, Inc. v. American Airlines, Inc. (In Re: September
  11th Litigation)*,
  2015 U.S. App. LEXIS 16619 (2d Cir. Sept. 17, 2015) ..............................11, 13

*Worley v. Islamic Republic of Iran*,
  75 F. Supp. 3d 311 (D.D.C. 2014)..................................................................12

**Statutes**

28 U.S.C. § 1605.............................................................................................*passim*

MEMORANDUM OF LAW OF THE AXA, CHUBB,
MUNICH RE AMERICA, AND ONEBEACON INSURANCE GROUP
PLAINTIFFS[1] TO ASSESS DAMAGES AGAINST IRAN FOR CLAIMS ARISING
UNDER 28 U.S.C. § 1605A(d)

## I.      INTRODUCTION

Moving plaintiffs, along with other members of the insurance industry, initiated this

action by Complaint on September 10, 2003, seeking recovery for losses and injuries resulting

from the September 11, 2001 terrorist attacks upon the United States ("September 11th attacks").

Broadly speaking, the Complaint asserted claims for property damage and economic losses

resulting from the September 11th attacks, and wrongful death and personal injury claims of

several hundred victims of the attacks, who elected to assign their claims to plaintiffs under

governing worker's compensation laws.  The Complaint asserted claims against several hundred

defendants, including the Islamic Republic of Iran ("Iran").

While these claims were pending, Congress amended the so-called State Sponsor of

Terrorism Exception of the Foreign Sovereign Immunities Act ("FSIA"), previously codified as

28 U.S.C. § 1605(a)(7), replacing it with 28 U.S.C. §1605A.  Section 1605A created express

causes of action for the benefit of terrorism victims against Designated State Sponsors of

Terrorism like Iran.  *See* 28 U.S.C. § 1605A(c), (d).  The act authorized plaintiffs who had

brought claims under §1605(a)(7) to convert them to claims under §1605A.

On July 9, 2015, all plaintiffs in the *Federal Insurance* action moved to amend their

complaints, solely as to Iran, in order to convert their claims under §1605(a)(7) to claims under

---

[1] Moving plaintiffs are AXA Art Insurance Company, AXA Global Risks (LTK) Ltd., AXA CSA UK
Branch, AXA Insurance Company, AXA Reinsurance Company, AXA Re, AXA Re Canadian Branch,
AXA Re UK Plc, AXA Versicherung, and SPS Re (collectively, "AXA"); Chubb Custom Insurance
Company, Chubb Insurance Company of Canada, Chubb Insurance Company of New Jersey, Chubb
Indemnity Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Pacific
Indemnity Company, and Vigilant Insurance Company (collectively, "Chubb"); American Alternative
Insurance Corporation, the Princeton Excess and Surplus Lines Insurance Company, and the Great Lakes
(UK) Insurance Company (collectively, "MRAm"); and OneBeacon (now known as Bedivere Insurance
Company).

§1605(A); to confirm that service of the amended pleading upon Iran was unnecessary given that the *Federal Insurance* plaintiffs had properly served their earlier complaint upon Iran; and for entry of default judgment against Iran as to liability for their claims arising under §1605A(c) and (d).  *See* Memorandum of Law in Support of Joint Motion to Proceed Under §1605A, ECF No. 2968; Memorandum of Law in Support of Motion for Entry of Judgment by Default as to Liability Against Defendant Iran, ECF No. 2970.

By Order docketed on August 31, 2015, the Honorable George B. Daniels authorized the *Federal Insurance* plaintiffs to file a Consolidated Amended Pleading solely as to Iran "to proceed with claims against Iran under §1605A."  ECF No. 3015.  Through the same Order, Judge Daniels confirmed that "Service of the Consolidated Amended Complaint upon Defendant Iran is not required under 28 U.S.C. §1608, as the *Federal Insurance* and *Ashton* Plaintiffs properly served their initial complaints upon Defendant Iran, and the Consolidated Amended Complaint merely clarifies and converts the claims asserted in the original complaints under 28 U.S.C. §1605(a)(7) to claims under 28 U.S.C. §1605A."  ECF No. 3015.

By separate Order also dated August 31, 2015, Judge Daniels granted in its entirety the *Federal Insurance* plaintiffs' motion for judgment by default against Iran as to liability, and ordered that "final judgment on liability is entered in favor of all Plaintiffs in *Federal Insurance Co.* v. *al Qaida, et al.,* 03-CV-06978 (GBD) and against The Islamic Republic of Iran."  ECF No. 3020.  The Court's liability judgment against Iran encompassed two distinct categories of claims brought by the moving plaintiffs pursuant to §1605A:  (1) wrongful death and personal injury claims brought pursuant to §1605A(c); and (2) claims for recovery of property loss and for loss claims under life and property insurance policies brought pursuant to §1605A(d).  *See* Memorandum of Law in Support of Motion of Entry of Judgment by Default as to Liability Against Defendant Iran at pp. 2, 11-13, 17-19 (ECF No. 2970).  Having entered default judgment

2

as to liability in favor of moving plaintiffs on those claims pursuant to the FSIA, Judge Daniels ordered "that the *Federal Insurance* plaintiffs are hereby referred to Magistrate Judge Frank Maas to resolve any remaining issues, including but not limited to damages both compensatory and punitive."  ECF No. 3020.

Through the present motion, moving plaintiffs seek an assessment of damages for the subset of their claims arising under §1605A(d), which provides as follows:

> (d) Additional damages – after an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts under which the action under subsection (c) is based.

28 U.S.C. §1605A(d).

Significantly, this Court previously conducted an assessment of damages for the precise category of claims at issue here – property losses and loss claims under insurance policies – in the context of entering default judgments in favor of moving plaintiffs[2] against al Qaeda.  *See* Report and Recommendation to the Honorable Judge George B. Daniels, ECF No. 2479 ("*Federal* Report").  Although those prior default proceedings arose in the context of claims under the Anti-Terrorism Act ("ATA"), rather than under Section §1605A(d), the same measure of damages applies under both statutes for the claims which are the subject of the present motion. *See infra* at pp. 8-9.  Accordingly, moving plaintiffs respectfully submit that this Court need look no further than its prior award in favor of moving plaintiffs in the context of the al Qaeda default

---

[2] Plaintiff TIG Insurance Company also participated in the al Qaeda damage inquest.  However, following the Court's assessment of damages in favor of TIG and against al Qaeda, TIG made additional payments to insureds in compensation for losses arising from the September 11th attacks.  Accordingly, TIG is updating its loss information and will submit revised damage proofs, along with other of the plaintiffs in the *Federal Insurance* action that did not participate in the prior damage inquest conducted in relation to the al Qaeda default.  The *Federal Insurance* plaintiffs will address damages with respect to their separate wrongful death claims under §1605A(c) through a separate application as well.

proceedings, for purposes of awarding damages relative to moving plaintiffs' judgment against Iran under 1605A(d).

Consistent with the Court's analysis and holding in the context of the al Qaeda default proceedings, moving plaintiffs respectfully request that the Court award compensatory damages in their favor in the aggregate amount of \$3,040998,426.03[3] as to moving plaintiffs' claims against Iran under §1605A(d).  Specifically, moving plaintiffs request individualized compensatory damage awards in the following amounts:

| PLAINTIFF | COMPENSATORY DAMAGES |
|---|---|
| Vigilant Insurance Company | \$42,305,933.24 |
| Chubb Custom Insurance Company | \$612,585.00 |
| Chubb Indemnity Insurance Company | \$4,083,878.20 |
| Federal Insurance Company | \$1,513,667,597.39 |
| Chubb Insurance Company of New Jersey | \$412,681.71 |
| Chubb Insurance Company of Canada | \$50,452,395.71 |
| Pacific Indemnity Company | \$9,936,536.66 |
| Great Northern Insurance Company | \$595,997,113.79 |
| AXA Art Insurance Corp. | \$14,287,543.00 |
| AXA Global Risks (UK) Ltd. | \$10,986,623.57 |
| AXA CSA UK Branch | \$64,779,883.00 |
| AXA Insurance Company | \$131,696,044.96 |
| AXA Reinsurance Company | \$82,714,778.00 |
| AXA RE | \$105,790,023.00 |

---

[3] The Court's aggregate award in the al Qaeda default proceedings included an additional \$76,084,229.30 in favor of TIG, which as indicated is not a party to the present motion.

| | |
|---|---|
| **AXA RE Canadian Branch** | $26,138,407.11 |
| **AXA RE UK Plc** | $18,162,701.70 |
| **AXA Versicherung** | $923,053.00 |
| **SPS RE** | $84,305,160.00 |
| **American Alternative Insurance Company** | $3,922,782.07 |
| **Princeton Excess and Surplus Lines Insurance Company** | $3,796,292.50 |
| **Great Lakes UK Reinsurance Company** | $99,511,427.02 |
| **OneBeacon Insurance Company** | $176,514,985.40 |

Moving plaintiffs further request that the Court follow its prior ruling in the *Havlish* action, and award punitive damages at a rate of 3.44 times the compensatory damage award, relative to their claims arising under §1605A(d). *See* Report and Recommendation to the Honorable George B. Daniels, July 30, 2012, ECF No. 2618 ("*Havlish* Report"). Finally, moving plaintiffs request that the Court award prejudgment interest relative to their claims under §1605A(d) from September 11, 2001.

**II.   ARGUMENT**

A.   <u>Standard of Review</u>

In the context of issuing damage awards against Iran in an identical procedural setting in the *Havlish* action, this Court succinctly described the applicable standard of review as follows:

> In light of the Defendants' default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true. *See Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992); *Time Warner Cable of N.Y.C. v. Barnes,* 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).
>
> Additionally, although plaintiffs seeking to recover damages against defaulting defendants must prove their claims through the submission of admissible evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for

5

> calculating damages, *see Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997).

*Havlish* Report at 2.

And as the Supreme Court has further explained:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.  In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate.

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931).

B.    This Court Conducted an Assessment of Damages for Property Losses and Loss Claims Under Insurance Policies in the Context of the Al Qaeda Default Proceedings

In 2011 this Court conducted a thorough assessment of damages for purposes of entering a monetary default judgment in favor of moving plaintiffs and against al Qaeda under the ATA. In that context, moving plaintiffs sought judgment under the ATA for amounts paid to policyholders and insureds for "business interruption, property damage, and other losses resulting directly from the September 11th terrorist attacks." *Federal* Report at 2-3.  This Court concluded that moving plaintiffs established their entitlement to compensatory damages in the amount of $3,040,988,425.03 under the ATA's provision authorizing recovery for injury to "business or property," *id.* at 6-8, a ruling which applies with full force here as well.[4]

---

[4] Judge Daniels adopted the Report and Recommendation in its entirety through a Memorandum Decision and Order issued on December 16, 2011, ECF No. 2502, and thereafter entered judgment in favor of moving plaintiffs and against al Qaeda.  The judgment set forth individualized awards in favor of each member company, with treble damages.  *See* December 22, 2011 Judgment, Exhibit 1 to the Affirmation of Sean P. Carter in Support of the Motion of the AXA, Chubb, Munich Re America and OneBeacon Plaintiffs' to Assess Damages Against Iran for Claims Arising Under 28 U.S.C. §1605A(d).  Moving plaintiffs respectfully request that the Court enter

In arriving at that holding, this Court initially examined the affidavits submitted by each of the moving plaintiffs.[5]  On the basis of that review, this Court held that each of those affidavits "establish that the affiant has personal knowledge of the relevant plaintiff's day-to-day operations, and that all of the claims for which recovery is sought were subject to an exacting adjustment process requiring compliance with well-established standards and procedures, as well as internal scrutiny and outside analysis by independent adjusters."  *Id.* at 3 (internal citations omitted).

This Court next addressed the relevant standard for calculating damages for the claims in issue under the ATA's language authorizing recovery for injury to "business or property." Consistent with the established interpretations afforded identical language under federal statutes with remedial purposes, this Court held that the term property as used in the ATA "comprehends anything of material value owned or possessed," *Id.* at 6 (*quoting Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979)), and that money losses constitute injuries to both business and property. Pursuant to that standard, this Court held that "Plaintiffs here are clearly entitled to treble damages for any claims that they reasonably paid to insureds who suffered business and property damage as a result of the September 11th attacks."  *Federal* Report at 7.  Reasoning that "Plaintiffs' affidavits identify each of the insurance claims they paid as compensation for property loss, business interruption, and related damages, and attest that these damages were directly caused by the September 11th terrorist attacks," this Court awarded the moving plaintiffs compensatory damages in the amount of $3,040,988,425.03.  *Id.* at 7-8.

---

individualized awards in favor of the moving plaintiffs here as well.  The values reflected in the chart presented on pp. 4-5 of this brief correspond exactly to the individual awards reflected in the al Qaeda judgment, reduced by three.

[5] The affidavits are included as Exhibits 2, 3, 4 and 5 to the Affirmation of Sean P. Carter in Support of the Motion of the AXA, Chubb, Munich Re America and OneBeacon Plaintiffs' to Assess Damages Against Iran for Claims Arising Under 28 U.S.C. §1605A(d).  The schedules to those Affidavits were filed under seal and are not being filed of record at this time, but were previously submitted to this Court in the context of the al Qaeda damage inquest.

C.    The Court's Prior Damage Award Establishes the Value of the Compensatory Damages Moving Plaintiffs are Entitled to Receive Relative to Their Claims Against Iran Pursuant to Section 1605A(d)

This Court's reasoning and holding in awarding damages in favor of moving plaintiffs under the ATA apply with equal force in the context of the present damage inquest relative to moving plaintiffs' judgment under §1605(a)(d), for at least three reasons.

First, like the ATA, the plain text of §1605(a)(d) authorizes recovery for loss of "property." 28 U.S.C. §1605A(d). As indicated above, this Court's damage assessment in the al Qaeda default proceedings rested on its interpretation of the standard of damage applicable to an injury to "property," and finding that the affidavits established the moving plaintiffs' entitlement to compensatory damages in the amount of $3,040,988,425.03 pursuant to the broad meaning afforded the term "property" under remedial statutes. *Federal* Report at pp. 6-7. As §1605A(d), like the ATA, expressly authorizes recovery for injury or loss of "property," and both statutes are aimed at the same remedial purposes of sanctioning terror sponsors and deterring the sponsorship of terrorism, the analysis underlying this Court's compensatory damage award in the ATA default proceedings establishes that plaintiffs are entitled to the same compensatory damage award relative to their claims for loss of property under §1605A(d).

Second, the further language of §1605A(d) entitling insurers to recover for "loss claims under life and property insurance policies" provides an additional basis for extending this Court's prior compensatory damage award under the ATA to moving plaintiffs' judgment against Iran under §1605A(d). Through that language, Congress unambiguously provided insurers with an express right to recover amounts paid in relation to loss claims under property insurance policies in actions brought pursuant to §1605A(d). Here, this Court already has held that the affidavits submitted by the moving plaintiffs "identify each of the insurance claims they paid as compensation for property loss, business interruption, and related damages, and attest that these damages were directly caused by the September 11th terrorist attacks." *Federal*

8

Report at 7. That prior ruling thus confirms that moving plaintiffs' affidavits establish that they are entitled to recover $3,040,988,425.03 in compensatory damages, pursuant to the text of §1605A(d) authorizing insurers to recover for "loss claims under life and property insurance policies."

Third, the present damage inquest arises in a procedural context in which moving plaintiffs are entitled to the benefit of all reasonable inferences and considerable leeway in establishing their damages. As this Court has held previously, moving plaintiffs are entitled to have the allegations of their pleadings, including their allegations that their property losses were caused by the September 11th attacks, credited in the present context. *Federal* Report at 7. Further, given the catastrophic nature of the physical damage caused by the September 11th attacks, moving plaintiffs need merely submit evidence sufficient to establish their damages as a matter of just and reasonable inference. *Story Parchment Co.,* 282 U.S. at 563. Moving plaintiffs' affidavits more than carry that modest burden, as this Court already has confirmed. *Federal* Report at 7.

    D.    <u>This Court's Punitive Damages Award in *Havlish* Should be Applied Here</u>

In its damage award against Iran under §1605A(c) in the *Havlish* action, this Court made a judicial finding that a punitive damage award at a rate of 3.44 times the compensatory damage award is appropriate for the conduct which forms the basis of the present action. *Havlish* Report at 12-13. That same punitive damage award should apply here.[6] Indeed, applying the same approach to punitive damages both ensures consistency in this Multi-District Litigation

---

[6] Actions under §1605A(d) are derivative of actions brought first under §1605A(c), and predicated upon "the same acts on which the action under subsection (c) is based." 28 U.S.C. §1605A(d). The rights and remedies in cases arising in actions arising under §1605A(d) are, in turn, set forth principally in subsections (a), (b) and (c) of §1605A, including rules relating to the circumstances in which jurisdiction exists (§1605A(a)), the defendants who may be named in such cases (§1605A(b)), imposition of vicarious liability (§1605A(c)), and availability of punitive damages (§1605A(c)). *See* 28 U.S.C. §1605A(a)-(c). Thus, the rules, rights and remedies applicable in actions under §1605(a)(c) and §1605(a)(d) are identical.

proceeding, and furthers the remedial purposes of §1605A to punish terror sponsor states and deter the sponsorship of terrorism.[7]

     E.    <u>This Court Has Already Determined That Pre-Judgment Interest Should be Awarded Against Iran for the Claims in Issue</u>

This Court's prior determination in *Havlish* deeming it appropriate to award prejudgment interest against Iran for its role in sponsoring al Qaeda and the September 11th attacks applies to the present claims as well.

The decision whether to award punitive damages in cases governed by federal law rests within the discretion of the court, subject to equitable considerations. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). As this Court observed in its decision in *Havlish*, the award of prejudgment interest is appropriate where a plaintiff is delayed in securing compensation for injuries resulting from an act of terrorism. This Court already has held that circumstance exists in the context of the claims against Iran for injuries resulting from the September 11th attacks. *Havlish* Report at 13. This Court's holding on that point is consistent with the ruling of another court in a case arising under §1605A(d), which recognized that an award of prejudgment interest is "necessary to fully compensate the victims for the injuries they sustain[]" as a result of a State Sponsor's terrorist activities, and to prevent the State Sponsor defendant "from profiting from its terrorist attacks." *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya,* 811 F. Supp. 2d 53, 76 D.D.C. 2011).

While moving plaintiffs recognize that this Court previously endorsed the *Havlish* plaintiffs' request that prejudgment interest be calculated on the basis of the average federal

---

[7] Where a plaintiff is entitled to recover damages under a federal statute with remedial and deterrent objectives, the Court should liberally construe the remedies available thereunder to advance those goals. *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 139 (2d Cir. 2000) (ERISA); *New Mexico v. GE,* 467 F.3d 1223, 1238 (10th Cir. 2006) (CERCLA); *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.,* 856 F. 2d 293, 296 (D.C. Cir. 1988) (LMRA); *Air Line Pilots Ass'n v. Continental Airlines,* 125 F.3d 120, 135-136 (3d Cir. 1997) (Title VII), *cert. denied,* 522 U.S. 144 (1998); *Evans v. City of Chicago,* 434 F.3d 916, 925 (7th Cir. 2006) (RICO).

prime rate, they respectfully submit that application of New York's statutory prejudgment interest rate of 9% is the appropriate standard in this context, particularly given the Second Circuit's decision last month in *World Trade Farmers Market, Inc. v. American Airlines, Inc. (In Re: September 11th Litigation)*, 2015 U.S. App. LEXIS 16619 (2d Cir. Sept. 17, 2015).  In that case, the Second Circuit considered various challenges raised by the leaseholders of the World Trade Center complex to district court rulings issued in their litigation against American Airlines and United Airlines, for property loss and other damages resulting from the September 11th attacks.  *Id.* at *3-5.  Among other challenges to the trial court's rulings on damages, the plaintiffs asserted that the district court had erred in refusing to calculate prejudgment interest at the New York statutory rate of 9% for their claims arising from the Air Transportation System Stabilization Act (ATSSA).  *Id.* at *65-66.  The Second Circuit agreed, reasoning that the federal cause of action arising under ATSSA incorporated state law of the place where the injury had occurred as federal common law, including applicable state rules concerning prejudgment interest.  *Id.* at 66.  On that basis, the Second Circuit held that New York's statutory prejudgment interest rate of 9%, as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' 9/11 claims.  *Id.*

The Second Circuit's decision in *World Trade Farmers' Market* compellingly argues in favor of application of New York's statutory prejudgment interest rate in relation to moving plaintiffs' judgment against Iran.  Most simply, it would be fundamentally inequitable to apply a 9% prejudgment interest rate to claims against domestic actors who are alleged to have been negligent in preventing the September 11th attacks, but charge intentional supporters of those attacks, such as Iran, a lesser prejudgment interest rate based on the average of the federal prime rate.  As equitable considerations are paramount in crafting the appropriate prejudgment interest rate under federal law, Iran should be required to pay at least the same prejudgment interest rate

as would apply to claims against domestic entities sued for alleged negligence in failing to prevent the attacks.

Perhaps more critically, the rationale underlying the Second Circuit's conclusion that the ATSSA incorporates New York law as federal common law extends to at least certain of the claims against Iran under §1605A of the FSIA.  As the Second Circuit recently observed in *Bank of N.Y. v. Yugoimport*, 745 F.3d 599 (2d Cir. 2014), "Congress did not intend that the FSIA establish substantive rules of liability."  *Id.* at 609, n. 8.  Instead, "the FSIA operates as a pass-through granting federal courts jurisdiction over otherwise ordinary actions brought against foreign states."  *Id.*  Accordingly, state law typically provides the substantive law for a cause of action arising under the FSIA.  *Id.*

Consistent with this longstanding view of the FSIA, Judge Royce Lamberth of the United States District Court for the District of Columbia, who has had a primary role in presiding over the many terrorism cases against Iran, recently confirmed that both federal common law and state law causes of action are available in cases where jurisdiction is predicated upon §1605A.  *Worley v. Islamic Republic of Iran,* 75 F. Supp. 3d 311, 332, n. 6 (D.D.C. 2014).  Specifically, the Court recognized that "although §1605 created a new cause of action, it did not displace a claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity" set forth in §1605A.  *Id.*  (*quoting Estate of Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1, 20 (D.D.C. 2011).  Consistent with this ruling, plaintiffs' claims against Iran under §1605A arise under both federal common law and state law, including in particular New York law (as adopted as federal common law under the FSIA).[8]  Accordingly, application of New York's statutory prejudgment interest rate is particularly appropriate for the claims at

---

[8] The injuries which are the subject of plaintiffs' claims under §1605A(d) overwhelmingly arise from property damage and other catastrophic injury that occurred in New York.

issue here, consistent with the Second Circuit's recent decision in *World Trade Farmers' Market.*

For the foregoing reasons, moving plaintiffs respectfully request that the clerk be directed to award prejudgment interest at a rate of 9% per annum from September 11, 2001 through the date a monetary judgment is issued in favor of moving plaintiffs.[9]

F.   Prejudgment Interest Should Be Compounded Annually

Under federal law, the methodology for calculating prejudgment interest also is left to the discretion of the trial court, again based on equitable considerations and principles of fairness. Courts in this Circuit have awarded prejudgment interest on a compound basis in a broad range of causes of action, including where, as here, the claim involves a deprivation of access to money as a result of the defendant's wrongful conduct.  *See generally Cornell Univ. v. Hewlett Packard Co.*, 2009 WL 1405208 (N.D.N.Y. May 15, 2009) ("[T]he payment of royalties and interest compounded annually is an accepted practice within the patent field."); *Curry v. American Int'l Grp. Inc., Plan No. 502*, 579 F. Supp. 2d 424 (S.D.N.Y. 2008) (finding award of prejudgment interest compounded annually was fair, equitable and necessary in ERISA action seeking reinstatement of long-term disability benefits); *Sands v. Runyon*, 28 F.3d 1323 (2d Cir. 1994) (explaining that in a civil rights action pursuant to Rehabilitation Act, 29 U.S.C. §§ 701-797b, "back pay should be calculated to the date of judgment and should ordinarily include compound interest"); *In re Vivendi Universal, S.A. Securities Litig.*, 284 F.R.D. 144 (S.D.N.Y. 2012) (awarding plaintiffs prejudgment interest compounded annually in securities fraud class action).

---

[9] In its *Havlish* Report this Court recognized that the date on which its Report and Recommendation might be adopted and judgment entered could not be ascertained with certainty.  Accordingly, this Court held that prejudgment interest should be calculated based on the rate requested from September 11, 2001 through the date of entry of judgment.  *Havlish* Report at pp. 13-14.  Moving plaintiffs propose that same approach to addressing the uncertainty of the timing of entry of any judgment here.

Consistent with the foregoing authorities, moving plaintiffs submit that prejudgment interest should be calculated on a compound basis for their claims involving deprivation of access to funds as a result of Iran's terrorist activity.

**III.     CONCLUSION**

For all of the foregoing reasons, moving plaintiffs respectfully request that the Court award them compensatory damages relative to their judgment against Iran under 28 U.S.C. §1605A(d) in the aggregate amount of $3,040,988,425.03, together with punitive damages at a rate 3.44 times the compensatory damage award, and prejudgment interest at 9%, compounded annually.

Dated:  November 13, 2015                         Respectfully submitted,

                                                  /s/ Sean P. Carter
                                                  Sean P. Carter, Esq.
                                                  Stephen A. Cozen, Esq.
                                                  J. Scott Tarbutton, Esq.
                                                  COZEN O'CONNOR
                                                  1650 Market Street
                                                  Philadelphia, PA  19103
                                                  (215) 665-2000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the Memorandum of Law of the AXA, Chubb, Munich Re America, and OneBeacon Insurance Group Plaintiffs to Assess Damages Against Iran for Claims Arising Under 28 U.S.C. § 1605A(d), was filed electronically this 13th day of November 2015.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

/s/
J. Scott Tarbutton, Esq.