# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978  (RCC) (S.D.N.Y.)

**AFFIDAVIT OF THOMAS J. TOTH IN SUPPORT OF THE PROOF OF DAMAGES OF AMERICAN ALTERNATIVE INSURANCE COMPANY, THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY AND GREAT LAKES REINSURANCE (UK) LIMITED**

I, Thomas J. Toth, being duly sworn according to law, depose and say,

1. I am Vice President of Property Claims and an officer of Munich Reinsurance America, Inc. ( hereinafter "MRAm") (formerly known as American Reinsurance Company).  I am also an officer of American Alternative Insurance Corporation and The Princeton Excess and Surplus Lines Insurance Company.  MRAm, American Alternative Insurance Company and The Princeton Excess and Surplus Lines Insurance Company are insurance companies domiciled in Delaware and are wholly-owned subsidiaries of Munich Re America Corporation ( hereinafter "MRAC"), a Delaware corporation.  MRAC is ultimately owned by

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

Munich Reinsurance Company (hereinafter "MRC"), a German

corporation.  MRC also owns Great Lakes Reinsurance (UK) Limited, a

United Kingdom corporation.  Pursuant to an underwriting management

agreement between MRAm and Great Lakes Reinsurance (UK) Limited,

MRAm has issued certain surplus lines insurance policies on behalf of

Great Lakes Reinsurance (UK) Limited in the United States, and handles

claims on such policies.

2.      I make this Affidavit in support of the Proof of Damages of American

Alternative Insurance Company, the Princeton Excess and Surplus Lines

Insurance Company, and Great Lakes UK Insurance Company (hereinafter

"AAIC, PESLIC and/or GLUK"), plaintiffs in the above-action.

3.      As an Officer of AAIC and PESLIC, and as an Officer of MRAm, writing

on behalf of GLUK,  I have been authorized to execute this Affidavit on

behalf of AAIC, PESLIC and GLUK.

4.      As an Officer of MRAm, I have personal knowledge of the day-to-day

affairs of the business of these companies, including personal knowledge

of the process related to the submission of claims and the adjustment of

claims under policies of insurance issued by these companies.

5.      AAIC, PESLIC and GLUK act as following participatory insurance

carriers of lead insurance carriers in layered coverage on various risk for

numerous insureds and policy holders.  As such, these companies follow

the lead insurance carriers on a particular risk in the adjustment of claims

2

CONFIDENTIAL This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD), United
States District Court for the Southern District of New York.
00002

submitted by policy holders and insureds. As part of the adjustment

process, I will typically receive reports from the lead insurance carriers or

adjusters in the field assigned to the adjustment of particular claims. The

adjustment process provides me with an opportunity to review the reports,

raise issues associated with the adjustment of claims, or pose particular

questions or make specific inquiries about the adjustment of claims during

the adjustment process. The adjustment will be approved, if appropriate,

and payments made according to the participation of AAIC, PESLIC and

GLUK in the risk, and based upon recommendations by the lead insurance

carriers or adjusters in the field.

6.      The nature of the participation of AAIC, PESLIC and GLUK in the

adjustment process is such that I understand and I am familiar with the

field adjustment process and procedures. The adjustment process includes

compliance with standards and procedures which must be followed in

completing the adjustment of the claim and subsequent payment of claims

under the applicable policies of insurance. The most basic standards of

compliance include prompt notification of the loss or damage, a

description of the property involved in the loss, a description of how,

when and where the loss or damage occurred, the requirement that the

insured take reasonable steps to protect the property from further damage

and provide documentation in support of the loss, an itemization and

inventory of lost or damaged items, an allowance of an inspection of the

damaged property, an examination of books and records related to the lost

CONFIDENTIAL This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD), United
States District Court for the Southern District of New York.
00003

or damaged property, cooperation in the investigation of the loss, and submission to an examination under oath, if necessary.

7.     The adjustment of claims submitted by policy holders and insureds are subject to specific and exacting requirements of proof, including, but not limited to, (a) compliance with, and measurement against, the terms and provisions of the policies of insurance, (b) examination by qualified claims adjustment professionals, (c) analysis and review by outside professionals, such as certified public accounts, engineers, architects, and construction cost specialists, and (d) production of records and other documentation in support of submitted claims.

8.     I also receive and regularly review reports prepared by other company officials responsible for the adjustment process, including the particulars of the adjustment and payments for claims submitted by policy holders and insureds.  Additionally, in the discharge of my job duties and responsibilities, I regularly rely upon financial data and records related to the adjustment of claims and payment for these claims. The information and data I receive includes executive summaries of claims in process, identification of issues which arise in the adjustment of claims which require resolution, and other data which allows me to determine the accuracy of the claims adjustment process.  For these reasons, I am familiar with the adjustment process and disposition of claims submitted by our policy holders and insureds.

4

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00004

9.     The adjustment process is subject to my review and audit which further ensures accuracy in the final adjustment and payment of claims submitted by policy holders and insureds.

10.    The adjustment of claims is further subject to numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions. We are bound by law to follow these standards and requirements in the adjustment and disposition of all claims.

11.    In connection with preparation of this Affidavit, I have undertaken a thorough review of business records relating to insurance claims submitted to AAIC, PESLIC and GLUK by their policyholders and insureds for losses resulting from the September 11, 2001 Attack on the United States (the "September 11th Attack"), and the payments made by these companies in compensation for losses suffered by their policy holders and insureds for the claims submitted by them.

12.    At the time of the September 11th Attack, AAIC, PESLIC and GLUK provided property, business interruption and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders and insureds") who suffered injuries, losses and damages as a result of the September 11th Attack.

13.    Based on my review of the business records of AAIC, PESLIC and GLUK, as well as information I have also received in my capacity as an

5

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00005

Officer of MRAm, I have personal knowledge concerning the insurance claims submitted to these companies by their policy holders and insureds for the damages, losses, and injuries resulting from the September 11th Attack, and the adjustment and subsequent payments made by these companies in compensation for these submitted claims.

14.    I was the individual ultimately responsible for determining the validity of the claims filed with AAIC, PESLIC and GLUK, and I made a determination based upon all information, data, reports, and evaluations provided to me whether these companies were responsible for the losses claimed pursuant to the submissions of our policy holders and insureds and the requirements of our policies of insurance.

15.    In accordance with the terms of the applicable policies of insurance, the adjustment process as described herein, the needs of the insureds, the exigencies of the aftermath of the September 11th Attack, and sound considerations related to business operations, AAIC, PESLIC and GLUK have made total aggregate payments to-date in the amount of $107,230,501.59 in compensation for property, business interruption and related damages,  as follows:

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00006

| American Alternative Insurance Company | $ 3,922,782.07 |
| Princeton Excess and Surplus Lines Insurance Company | $ 3,796,292.50 |
| Great Lakes UK Reinsurance Company | $ 99,511,427.02 |

16.    AAIC, PESLIC and GLUK would not have made these payments and suffered these losses, nor would their insureds and policy holders have suffered these losses, but for the September 11th Attack.

17.    We also suffered losses because of the need to incur costs in the claims adjustment process. These costs included the fees charged by outside consultants such as accountants and engineers, who were utilized to ensure the accuracy of the claims submitted and losses sustained. These costs also included the expenses incurred by our claims adjustment professionals in responding to the extraordinary demands of the claims submitted following the September 11th Attack. The claims adjustment costs incurred by AAIC, PESLIC and GLUK total $810,805.43 to-date, and they would not have suffered these losses but for the September 11th Attack.

18.    We also suffered losses because of the need to incur legal expenses in the claims adjustment process. These expenses involved the fees charged by counsel retained to advise and assist us in fairly and fully responding to our obligations under the policies of insurance and to resolve questions of policy coverage consistent with the law and our policy obligations. The legal expenses incurred by AAIC, PESLIC and GLUK total $299,891.05

7

CONFIDENTIAL This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD), United
States District Court for the Southern District of New York.
00007

to-date, and they would not have suffered these losses but for the September 11th Attack.

19.   The loss of money represented by the amounts paid, and costs and expenses incurred by AAIC, PESLIC and GLUK was a direct result of the September 11th Attack.

20.   A schedule identifying each insured and policy holder who submitted a covered claim which was adjusted as of the date of this Affidavit, and for which payment in the total aggregate amount of $107,230,501.59 was made by AAIC, PESLIC and GLUK is attached hereto as Exhibit "A", Columns A through D.  Claims adjustment costs of $810,805.43 incurred by AAIC, PESLIC and GLUK is attached hereto as  Exhibit "A", Column E.  Legal expenses of $299,891.05 incurred by AAIC, PESLIC and GLUK is attached hereto as Exhibit "A", Column F.

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00008

Further affiant says naught.

January, 16, 2007

Thomas J. Toth, Officer
Munich Reinsurance America, Inc.

Lauren M. Lupica

01-16-07

LAUREN MARY LUPICA
Notary Public, State of New Jersey
No. 2291019
Qualified in Middlesex County
Commission Expires August 21, 2007

CONFIDENTIAL This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD), United
States District Court for the Southern District of New York.
00009