# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Federal Insurance Co. v. al Qaida*, Case No. 03-CV-6978 (RCC) (S.D.N.Y.)

### AFFIDAVIT OF STEVEN JUDOVIN IN SUPPORT OF AXA'S PROOF OF DAMAGES

I, Steven Judovin, being duly sworn according to law, depose and say,

1. I am a Senior Vice President of AXA Liabilities Managers, a plaintiff in the above-action.

2. As an Officer of AXA Liabilities Managers, I have been authorized to execute this Affidavit on behalf of its subsidiaries AXA Insurance Company, AXA Reinsurance Company and AXA Global Risks UK Ltd., as well as the following other companies which are part of the AXA Group and which assert claims for damages in the above-action, including, AXA RE, AXA RE Canadian Branch, AXA RE UK Plc, AXA Corporate Solutions Assurance UK Branch, SPS RE, AXA Art Insurance Corp., and AXA Versicherung (hereinafter referred to as "the AXA Companies"). The AXA Companies provide insurance and reinsurance services.

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00001

3. AXA is both an insurer and a reinsurer. Reinsurance is the practice whereby in consideration of the premium paid, AXA, as the reinsurer, agrees to indemnify another insurance company, called the reinsured or cedant, for all or part of the liability assumed by the reinsured or cedant under the policies of insurance which it has issued.

4. As an Officer of AXA Liabilities Managers, I have personal knowledge of the day-to-day affairs of the business of the AXA Insurance Company and AXA Reinsurance Company, including personal knowledge of the process related to the submission of claims, and the adjustment of claims under the policies of insurance and reinsurance issued by AXA Companies.

5. The adjustment process includes compliance with standards and procedures which must be followed in completing the adjustment of the claim and the subsequent payment of claims under the policies of insurance. The adjustment process is tailored to the provisions of the applicable policy of insurance or reinsurance, and may include follow-the-settlement and/or claims cooperation clauses. The most basic standards of compliance include the following:

- Prompt notice of the loss or damage and a description of the property involved.
- A description of how, when and where the loss or damage occurred.
- Submission of complete inventories of the damaged and undamaged property,

2

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00002

- including quantities, costs, values and amount of loss claimed.
- Inspection of the property proving the loss or damage.
- Cooperation in the investigation or settlement of the claim.
- Examination of an insured or reinsured's books and records.

6. The adjustment of claims submitted by policy holders and insureds or reinsureds are subject to specific and exacting requirements of proof, including, but not limited to, (a) compliance with, and measurement against, the terms and provisions of the policies of insurance or reinsurance (b) examination by qualified adjustment professionals, (c) rigorous scrutiny by highly qualified and experienced adjustment professionals, (d) analysis and review by outside professionals, such as certified public accounts, engineers, architects, and construction cost specialists, and (e) production of records and other documentation in support of submitted claims. The adjustment process as described herein is completed at both the primary insurance company level, and the reinsurance level in that the claims submitted by reinsureds and cedants have been subjected to the adjustment process, and payment is made in accordance with the insurance policy or reinsurance contract.

7. As an Officer of AXA Insurance Company, I also receive and regularly review reports prepared by other company officials responsible for the

3

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00003

adjustment process, including individual reports of particular claims and summary reports of claims submitted to us. These reports are prepared by both AXA claims analysts and independent adjusters. The reports contain information and details on the particulars of the adjustment and payments for claims submitted by insureds, reinsureds and cedants. Additionally, in further discharge of my job duties and responsibilities, I regularly rely upon financial data and records related to the adjustment of claims and payment for these claims. The information and data I receive includes executive summaries of claims in process, identification of issues which arise in the adjustment of claims which require resolution, and other data which allows me to determine the accuracy of the claims adjustment process. For these reasons, I am familiar with the adjustment process and disposition of claims submitted by our insureds, reinsureds and cedants.

8. The adjustment process is also subject to internal review and audit by other management and supervisory personnel, which further ensures accuracy in the final adjustment and payment of claims submitted by insureds, reinsureds and cedants. Our management and supervisory personnel have expertise in a wide range of areas, including expertise in the calculation and determination of loss of business income, and property values. Further, each of our management and supervisory personnel are trained or experienced in their particular areas of specialty, and each individual brings to the claims evaluation process many years of

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00004

experience. I have personal knowledge of their work and regularly rely upon it in my own evaluation and disposition of claims.

9. The adjustment of claims is further subject to numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions. We are bound by law to follow these standards and requirements in the adjustment and disposition of all claims.

10. In connection with preparation of this Affidavit, each AXA company has undertaken review of its' business records necessary to determine that insurance claims were submitted to the AXA Companies by its insureds, reinsureds and cedants for damages and injuries resulting from the September 11, 2001 Attack on the United States (the "September 11th Attack"), and that payments were made by the AXA Companies in compensation for losses suffered by our insureds, reinsureds and cedants for the claims submitted by them under the AXA Companies' policies of insurance and reinsurance.

11. At the time of the September 11th Attack, the AXA Companies provided property, business interruption and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders and insureds") who suffered injuries, losses and damages as a result of the September 11th Attack.

12. Based on my review of the AXA Companies' documents, as well as information I have also received in my capacity as an Officer of AXA

5

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00005

Liabilities Managers, I have personal knowledge of the insurance claims submitted to the AXA Companies by its insureds, reinsureds and cedants for the damages, losses, and injuries resulting from the September 11th Attack, and the adjustment and subsequent payments made by the AXA Companies in compensation for these submitted claims.

13. The records and information reviewed revealed that the AXA Companies were able to make a determination regarding the validity of claims filed with the AXA Companies, and this determination was made by the AXA Companies based upon all information, data, reports and evaluations provided to them. AXA Companies further determined that the losses claimed were covered under the AXA Companies insurance or reinsurance policies.

14. In accordance with the terms of the applicable policies of insurance or reinsurance contracts, the adjustment process as described herein, the needs of the insureds, reinsureds or cedants, the exigencies of the aftermath of the September 11th Attack, and sound considerations related to business operations, the AXA Companies have made as of the date of this affidavit total aggregate payments in the amount of $539,784,217.34 in compensation for property, business interruption and related damages, and it would not have made these payments and suffered these losses, nor would its insureds and policy holders have suffered these losses, but for the September 11th Attack. Specifically, the AXA Companies which have

6

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00006

made payments included within the aggregate claim for damages herein are, as follows:

| | |
|---|---|
| AXA Art Insurance Corp. | $ 14,287,543.00 |
| AXA Global Risks (UK) Ltd. | $ 10,986,623.57 |
| AXA CSA UK Branch | $ 64,779,883.00 |
| AXA Insurance Company | $ 131,696,044.96 |
| AXA Reinsurance Company | $ 82,714,778.00 |
| AXA RE | $ 105,790,023.00 |
| AXA RE Canadian Branch | $ 26,138,407.11 |
| AXA RE UK Plc | $ 18,162,701.70 |
| AXA Versicherung | $ 923,053.00 |
| SPS RE | $ 84,305,160.00 |

The payments noted for each of the AXA Companies listed above include claim adjustment and claim legal expenses to the extent that those costs and expenses were incurred by reinsureds or cedants.

15. The loss of money represented by the amounts paid, and costs and expenses incurred, by the AXA Companies were a direct result of the September 11th Attack.

16. A schedule, with Columns A through D, identifying each insured, reinsured and cedant who submitted a covered claim which was adjusted, and for which payments in the total aggregate amount of $539,784,217.34 was made by the AXA Companies as of

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00007

December 31, 2005 as a result of the September 11th Attack, is attached hereto as Exhibit "A".

Further affiant says naught.

_____
Steven Judovin
Senior Vice President
AXA Liabilities Managers

State of New York  )
                   )SS
County of New York )

Sworn and Subscribed to before me this 20th day of November, 2006

_____
Diana Morrison - Notary Public

My commission expires 11/30/2006

> DIANA MORRISON
> Notary Public - State of New York
> NO. 01MO4676326
> Qualified in New York County
> My Commission Expires Nov 30, 2006

CONFIDENTIAL This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.
00008