Exhibit 2

**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br>     KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br>     HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

*Via Facsimile*

July 26, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

      Re:    *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees, for all plaintiffs ("Plaintiffs"), write in response to the July 19, 2013 opposition ("Dfts' July 19 Ltr") submitted by counsel for Sana-Bell, Inc. and Sanabel Al Kheer, Inc. ("Defendants"), opposing Plaintiffs' request for imposition of sanctions against Defendants.

      Based on the record, Defendants' self-serving assertions that they have been actively engaged in discovery and their rote insistence, yet again, that they have *finally* produced everything responsive cannot be believed and the only sanction appropriate is default judgment. Here, after being given repeated opportunities to come into compliance, Defendants have demonstrated a lack of ability to do so. Even though Defendants may once again contend they are compliant, the circumstances and historical record cause that claim to ring hollow.

      The parties agree on the legal standard *and* the record demonstrates that Defendants have a history of willful noncompliance, have been advised to comply, the Defendants are themselves complicit in (and primarily responsible for) the non-compliance, Plaintiffs have been prejudiced by Defendants' years of foot-dragging, and nothing even hints that any other sanction is likely to cause them to change their ways. Under the circumstances and for the reasons outlined here and in Plaintiffs' moving papers, default is warranted both because of the Defendants' conduct and to deter other defendants from similar repeated conduct, an issue that has been consistently prevalent in this multidistrict litigation.

1. **Sana-Bell's "Functioning" Matters Little; But Its Failure to Perform Discovery Obligations Does Matter.**

      At the outset of their opposition, Defendants try to "clarify" that Sana-Bell is no longer "functioning," a vague term that continues to say *nothing* about its existence. As this Court is aware,

The Honorable Frank Maas                                                                                    Page 2 of 4
July 26, 2013

Defendant has long argued unsuccessfully the status of Sana-Bell, but the Court has already denied Sana-Bell's motion to dismiss based on that unsuccessful argument. *See* ECF No. 2010, Aug. 2, 2007; and ECF No. 2073, March 18, 2008. *Moreover*, the assertion that Sana-Bell has not been "functioning" since 2001 is belied by the activity of Sana-Bell's counsel in this litigation, distinctly for Sana-Bell.[1] But whether Sana-Bell "functions" is not essential to the outcome of this motion because Defendants agree that, for relevant purposes, Sana-Bell and Sanabel Al Kheer are to be treated as a single entity, the latter being the successor to the former.

In the long run, however, Defendants key defense is that Sana-Bell (an acknowledged predecessor) failed to turn over responsive documents to Sanabel Al Kheer (an acknowledged successor). But there are problems with that approach. *First*, the handoff of documents allegedly happened in 2004, years after Defendants were on notice of this litigation – resulting in no explanation for many missing documents that post-date 2004. For example, documents about the 2008 disposition of the 360 S. Washington Avenue property, listed as one of only four priority sets of documents in the December 21, 2010 email (Exhibit Y[2]), came into being *after* the handoff, leaving no explanation why the full set of documents about that disposition has not been produced. *Second*, to the extent that Sana-Bell failed to preserve documents and turn those documents over to its successor, at a point in time when this litigation was ongoing and both entities had a duty to preserve all relevant materials, responsibility for that failure falls on Sanabel Al Kheer. The acknowledged successor cannot merely disclaim responsibility for the acknowledged predecessor's failed obligations. Sana-Bell's breach of its obligations to preserve documents is attributable to the successor, Sanabel Al Kheer, which cannot now claim that the failure was "beyond its control."[3] Further, Sanabel Al Kheer itself has an independent obligation to secure documents relevant to this litigation beginning no later than the date these claims were filed, by virtue both of its own status as a defendant and as the successor to Sana-Bell.[4] In effect, Defendants acknowledge spoliation occurred attendant to the transition of corporate records from Sana-Bell to its successor. That admission is itself sufficient to warrant the sanction of default.

2. **Defendants' Inactivity is Well Documented in Plaintiffs' June 24, 2013 Submission, Notwithstanding Defendants' Self-Serving Statements to the Contrary.**

Although Defendants contend that they have been compliant and have produced all their documents since 2009, they consistently promised additional documents were to be produced,

---

[1] *See, e.g.*, ECF Nos. 1725, March 14, 2006 Stipulation as to Extension of Time to Respond to Complaint Consolidated Under MDL 1570, on behalf of Sana-Bell, Inc. and not Sanabel Al Kheer; ECF No. 1804, 1808, 1867, 1868, 1873, 1884, 1907, May 19, 2006, July 31, 2006, August 1, 2006, August 16, 2006, October 12, 2006, submissions on Motions to Dismiss, on behalf of Sana-Bell, Inc. and not Sanabel Al Kheer; and ECF No. 2319, 2321, Sana-Bell's Answers to Complaints; ECF No. 2322, Rule 26 Disclosure on behalf of Sana-Bell, Inc. and not Sanabel Al Kheer.

[2] All exhibits referenced herein are to the Declaration of Robert T. Haefele dated June 24, 2013.

[3] The approach Defendants suggest would allow a predecessor entity to escape liability merely by creating a successor, agreeing to provide only innocuous documents to the successor, while destroying all other documents.

[4] There is no indication that Sanabel Al Kheer has taken any steps over the last several years to secure missing corporate records from former Sana-Bell officers and employees, something it was obligated to do. *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 342 (S.D.N.Y. 2005) (corporate defendant "must exhaust the practical means at its disposal" to obtain the documents from former employees); *see also McCoy v. Whirlpool Corp.*, 214 F.R.D. 637, 641 (D. Kan. 2003) (requiring defendant to contact former employees to determine whether they were in possession of responsive documents); *Lintz v. Am. Gen. Fin., Inc.*, No. 98-2213-JWL, 1999 U.S. Dist. LEXIS 12572, at *4 (D. Kan. Aug. 2, 1999) (suggesting that defendants' obligation to undertake a reasonable investigation for relevant documents included contacting former knowledgeable employees). Indeed, the only information about such effort shows that Defendants' then-counsel misstated his efforts to reach out to Dr. Mirza. *See* Pltfs' June 24 Ltr, at 11.

represented more documents existed to produce, and (perhaps most tellingly) ***have not produced prioritized documents that came into being during the time period that Plaintiffs have been seeking discovery.*** *See, e.g*, Exhibit Y, indicating the prioritized production of documents about the 2008 disposition of property.

Defendants' assertion that they have been actively engaged in discovery contradicts the lengthy dialogue in the communications attached to Plaintiffs' moving papers. As outlined in Plaintiffs' June 24, 2013 letter ("Pltfs' June 24 Ltr"), every production from Defendants has come about due solely to painstaking determination and patience on Plaintiffs' part. Moreover, the productions that have been produced by Defendants are marked with myriad deficiencies in form, including a lack of any indication as to which documents are responsive to which requests (violating Fed. R. Civ. P. 37(b)(2)(1)) and multiple documents that bear no bates labeling interspersed within documents that are bates labeled, missing ranges of bates numbers, and duplicate bates numbers (violations of this Court's order at ECF No. 2442, June, 24, 2011).

Even several bulleted items Defendants use in an attempt to support their argument that they have been active fall short and are in stark contrast with their failure to participate in all other respects. *First*, their assertion that they have gone beyond their obligations by producing unrequested documents that have proved helpful are vague, self-serving, and offer no examples, leaving Plaintiffs (and presumably the Court) wondering what unrequested documents Defendants are referencing and how they might be considered "helpful." *Second*, Defendants' three-page initial disclosures and their single paragraph letter asserting that they have not withheld any documents on privilege grounds (which was technically untimely because it was sent on March 1, 2013, one day after the deadline for such letters), hardly constitute active participation in the face of the remaining *in*activity outlined in Plaintiffs' initial submission. *Finally*, the mere fact that Defendants have repeatedly referenced a lack of funding to mount a defense and have not been represented at conferences before this Court weighs against their assertion that they are actively participating.

Defendants' assertion that Plaintiffs have suffered little prejudice as a result of Defendants' inactivity in discovery applies circular reasoning and is plain wrong. Their argument is premised on the fact that the parties are still in paper discovery and depositions have not begun in earnest. But the very reason paper discovery is still ongoing is because these Defendants and others engaging in similarly obstreperous discovery tactics have stalled the paper discovery stage. The prejudice to Plaintiffs is discussed further in Plaintiffs' June 24, 2013 Letter, at 12.[5]

3. **Defendants' Continued Assertion That Their "Settlement Discussions" Affected the Discovery Schedule Contradicts Their Characterization of the Issue as a Red Herring.**

Although Plaintiffs have been consistently clear throughout the parties' discussions that they were seeking discovery to which they are entitled under the Federal Rules, Defendants have ignored that clarity and have continued to insist that the parties' discussions about the need for Defendants to comply with their discovery obligations are "settlement discussions." Even now, in their July 19, 2013 letter, for example, using Orwellian language, they refer to discussions about their obligations to produce documents and make witnesses available for deposition as "non-monetary offerings" and assert that their insistence on holding back documents in hopes of receiving a "settlement" is merely a distraction from

---

[5] Defendants' comment that even Plaintiffs contemplate producing additional documents is misleading. As the Court will recall, Plaintiffs' contemplation of additional documents being produced is not tied to a lack of searching and producing documents currently in Plaintiffs' possession, but an anticipation that additional documents may come into Plaintiffs' possession, necessitating updates to Plaintiffs' discovery responses – for example, receipt of additional FOIA responses may necessitate updating Plaintiffs' recent responses in that regard.

The Honorable Frank Maas                                                                                         Page 4 of 4
July 26, 2013

the issue (a red herring). But the second heading in their letter shows the flaw. *See* Dfts' July 19 Ltr at 2 ("Plaintiffs' Reference to Settlement Discussion is a Red Herring. Regardless, Those Negotiations Were Real and Did Naturally Affect the Positions of the Parties."). Either the discussions about their refusal to disclose documents until they received a dismissal was a red herring (presumably meaning a distraction) or those discussions affected the parties' positions. Plaintiffs agree that the discussions affected the parties' positions; they just contend that it was improper for the Defendants to withhold the requested documents premised on a demand for dismissal and insist on calling that a "settlement discussion."

4.    **The Parties Agree on the Standard Applied to Impose Default Judgment as a Sanction and Plaintiffs Have Explained How Application of That Standard Here Results in Default Judgment.**

The parties agree on the standard to be applied. Compare Pltfs' June 24 Ltr at 7-8 with Dfts' July 19 Ltr at 3, both listing the factors from *Am. Cash Card Corp. v. Amcash New York W. Corp.*, 184 F.R.D. 521 (S.D.N.Y. 1999). But Defendants' sole defense is that they now claim, yet again and years after the plaintiffs have pressed them for discovery, that they have finally produced all of their documents *and* any failure to produce any documents is a result of circumstances beyond their control. Dfts' July 19 Ltr at 3. They claim that they have been cooperative and that "Plaintiffs have offered up absolutely no evidence of spoliation." The problem with the claim that they have been fully responsive is that they have repeated it numerous times and have been shown to be not credible in each instance (including this time), such that they cannot be believed now. Looking at this most recent claim of complete production, it is not credible for them to state they have produced all requested documents that have been generated during the litigation when they have failed to produce the set of documents concerning the disposition of the building at 360 S. Washington St., Falls Church, VA, including documents about the distribution of the proceeds from that disposition.

### III.    CONCLUSION

Defendants contend, once again, that all documents have been produced, but after their claim has proved to be hollow so many times previously, it cannot be believed now. Even in this final instance of claiming that all documents in their care, custody, and control have been produced, Plaintiffs have shown at least one prioritized set of documents that demonstrates the lack of veracity of their assertion. After being given repeated opportunities to come into compliance, Defendants have demonstrated a lack of ability to do so. Under the circumstances and for the reasons outlined here and in Plaintiffs' moving papers, default is warranted both because of the Defendants' conduct and to deter other defendants from similar repeated conduct.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for sanctions and enter default judgments against the Sanabel Defendants pursuant to Rule 37(b).

                                                                               Respectfully submitted,

                                                                               THE MDL 1570 PLAINTIFFS' EXECUTIVE
                                                                               COMMITTEE

cc:       The Honorable George B. Daniels, U.S.D.J. (Via Federal Express)
          Christopher Manning, Esquire (Via Electronic Mail)
          Alan Kabat, Esquire – Defendants' Liaison Counsel (Via Electronic Mail)