## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT DELIVERY**

November 18, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this reply in further support of their letter brief filed on September 2, 2015 (ECF No. 3024), seeking an order from this Court compelling defendants Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Muhsen al Turki, and Adnan Basha (collectively referred to as the "Charity Official Defendants"), to produce documents responsive to plaintiffs' jurisdictional discovery requests. For the reasons set forth below, plaintiffs submit they are entitled to the relief sought in the September 2 motion.

I.   **THE CHARITY OFFICIALS IGNORE THE FACTS DEMONSTRATING THAT THEY HAVE THE PRACTICAL ABILITY TO OBTAIN RESPONSIVE DOCUMENTATION**

On September 2, 2015, plaintiffs submitted their letter brief requesting that the Court direct the Charity Official Defendants to immediately undertake efforts to secure and produce documentation and information within their "control" pursuant to Fed. R. Civ. P. 34, including without limitation, responsive records from the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), and Al Haramain Islamic Foundation. *See* September 2 Letter Brief at pp. 6-9 (ECF No. 3024). As plaintiffs described in overwhelming detail, the defendants have the requisite control and practical ability under Rule 34 to obtain responsive financial, operational, administrative and other corporate materials directly from the charities. *Id.* at p. 6 (defendant Turki, who continues to serve as the MWL Secretary-General, has control over

documents responsive to plaintiffs' jurisdictional discovery); pp. 7-9 (defendants Naseef, Obaid and Basha have the practical ability to obtain responsive documents by virtue of their continuing advisory positions with the charities and on-going relationships with the leadership of the MWL and IIRO). Plaintiffs further assert that the defendants are in possession, custody and control of other responsive documents, including but not limited to copies of their passports, press releases and other documentation. *Id.* at p. 9.

Rather than address plaintiffs' specific contentions, the Charity Official Defendants simply ignore plaintiffs' arguments as though they never existed. Indeed, the defendants do not even attempt to disprove plaintiffs' well-established facts demonstrating the Charity Officials' continuing leadership roles with the charities and their influence over those organizations' policies, decision-making, and activities. Instead, the defendants: (i) argue that plaintiffs' document requests fall outside the confines of permitted jurisdictional discovery (which they do not); (ii) insist they should be excused from their duty to meaningfully respond to discovery because plaintiffs did not continuously engage their counsel in futile efforts to persuade them to comply with their discovery obligations absent the Court's involvement; and (iii) contend (incorrectly) that, despite their refusal to produce documents, production of documents by other defendants in this litigation satisfy their discovery obligations. Each of these arguments lacks merit and fails for the reasons set forth below. But more fundamentally, the Charity Official Defendants' October 7, 2015 opposition (ECF No. 3064) confirms plaintiffs' suspicions that the defendants are not actively engaged in the discovery process and have strategically chosen to forego any and all good faith efforts to secure responsive documents. This Court's intervention is now necessary.

### A. Plaintiffs' Discovery Requests Are Limited to Jurisdictionally Relevant Allegations

Plaintiffs' discovery focuses on various aspects of the jurisdictionally relevant allegations in plaintiffs' pleadings, as recognized by the Second Circuit, and is therefore a proper area of inquiry. ECF No. 3024 at p. 5. In the Second Circuit's decision remanding the Charity Official Defendants for jurisdictional discovery, the Second Circuit recognized that plaintiffs' jurisdictionally relevant allegations concerned whether the defendants expressly aimed their conduct at the United States by providing material support to al Qaeda when it was known that al Qaeda was engaged in a global terrorist agenda directed at the United States. *In re Terrorist Attacks on September 11, 2001* (Asat Trust Reg.), 714 F.3d 659, 678 (2d Cir. 2013). Jurisdictionally relevant allegations specific to the Charity Official Defendants, detailed in ECF No. 3024 at pp. 2-5, include allegations that the defendants used their roles as Charity Officials to orchestrate material support and sponsorship of a Qaeda (in particular, appointing al Qaeda members Wa'el Hamza Jelaidan and Mohammed Jamal Khalifa to head MWL and IIRO offices pivotal to al Qaeda's support network), acted with knowledge that the organizations under their control were channeling material support and resources to al Qaeda, and that such support would be used to support al Qaeda's jihad against the United States. Consistent with those detailed allegations, plaintiffs' document requests make inquiry into jurisdictionally relevant issues.

Though the Charity Official Defendants argue that the Second Circuit intended to limit jurisdictional discovery to only the five categories set forth in their opposition, ECF No. 3064 at p. 2, the only categories the Court references with regard to the defendants are mentioned merely as

*examples* of issues the Court considered relevant to the issue of whether the Charity Official Defendants had expressly directed conduct at the United States. 714 F.3d at 678 (leading off the list of categories by using the term "For example"). The five categories that the Charity Official Defendants list in their opposition are their own gleanings from the Second Circuit's decision. But even considering the defendants' five categories, they encompass broad areas of inquiry and documents, such as discovery relating to the Charity Officials' control and management of the charities (including (i) their authority to supervise and direct the operations, activities and policies of the charities; and (ii) their oversight of the charities' funds and the authority to direct financial assistance to intended recipients), their knowledge of al Qaeda's intention to target the United States, what support they provided to al Qaeda and the timing of that support, and how the Charity Officials themselves were involved in the process of providing support to al Qaeda. Moreover, inasmuch as one issue that even the defendants focus on includes whether the Charity Officials intended the support to al Qaeda to be directed at the United States, discovery as to their affiliations with other co-conspirators,[1] counter-terrorism investigations concerning the charities and personnel under their leadership, and other categories that point to support for violent jihad against the West are relevant.

### B. The Parties' Longstanding Interactions and Defendants' Response to Plaintiffs' Motion Underscore the Futility of Additional Meet and Confers

Since the Charity Official Defendants' discovery responses were initially due in November 2013, plaintiffs have engaged with their counsel on numerous occasions about the Charity Officials as well as about other defendants represented by the same counsel. The parties have a long history of communicating on discovery issues throughout that period, *including meet and confer efforts by plaintiffs trying to address the Charity Officials' intention to produce documents*. See Plaintiffs' April 6, 2015 letter to the Honorable Frank Maas, at pp. 2-3, 5 and 7 (ECF No. 2945), attached as Exhibit A. Plaintiffs consistently made clear that they were not satisfied by that lack of production. In April 2015, plaintiffs continued to express concern regarding the Charity Officials' lack of production and whether that signaled their intention to default. *See id.* at 5, 7. In May 2015, months after the rolling production deadline, Mr. Kabat reaffirmed that, despite knowing plaintiffs were not satisfied with the lack of production, no production was forthcoming. At a May 13, 2015 conference before the Court, Mr. Kabat, responded to an inquiry on a related issue by re-affirming that the Charity Officials would not produce any documents, had no intention of meeting their obligation under Rule 34(b)(2)(E)(i), and acknowledged plaintiffs' dissatisfaction with his approach. *See* excerpt from May 13, 2015 Discovery Hearing Transcript, pp. 20-21, at Exhibit B. *See also* March 6, 2015 letter from Mr. Kabat at Exhibit C (advising plaintiffs' counsel that most of the defendants, including the Charity Officials, have completed their document productions); April 19, 2015 Order (ECF No. 2946) at Exhibit D (Charity Officials did not send letter to plaintiffs as directed by Court's Order, thereby confirming that they have completed their document productions).

---

[1] Discovery as to the Charity Officials' relationships with members of the "Golden Chain," described by the U.S. government as a listing of al Qaeda's top financial donors, is relevant to the jurisdictional analysis. Importantly, at least three individuals on the Golden Chain held senior leadership roles with the IIRO during the time period leading up to the September 11th attacks – Ibrahim Afandi and Sheikh Abd al Rahman Abd al Kader Faqih served as IIRO Board Members, and Saleh Kamel served as an IIRO senior committee member overseeing the charity's finances and investments.

The Honorable Frank Maas
November 18, 2015
Page 4

---

While plaintiffs are not suggesting that the meet and confer obligation is futile in all respects in this litigation – indeed, the parties have met and conferred on many occasions throughout these MDL proceedings – in instances of continued longstanding noncompliance in vigorously opposed litigation, the futility of continued meet and confers is apparent. *See Reidy v. Runyon*, 169 F.R.D. 486, 490 (E.D.N.Y. 1997) (excusing failure to confer because compromise was unlikely given defendant's history of noncompliance with court orders); *Matsushita Electric Corporation v. 212 Copiers Corp.*, 1996 U.S. Dist. LEXIS 2221, No. 93 Civ. 3243, 1996 WL 87245 at *1 (S.D.N.Y. Feb. 29, 1996) (conference would be futile in bitter litigation which included contempt citations directing the jailing of some defendants for noncompliance with court orders).

The Charity Official Defendants' response to plaintiffs' motion underscores this futility. A deadline for this motion has been set and re-set. The Charity Officials knew a motion was imminent and, given the dialogue among the parties, as well as defense counsel's acknowledgment at the May 2015 conference, he knew the arguments plaintiffs would advance. And yet even in the interim since plaintiffs filed their motion on September 2, 2015, the Charity Officials continue to refuse to produce rather than offer a reasoned compromise. In instances with other defendants, where a motion has identified an area for compromise, other parties have sought to meet and confer during the pendency of the motion. The Charity Officials have not. Rather, the Charity Officials merely insist that their lack of production must be excused, despite their failure to meet their discovery obligations.

### C. The Charity Official Defendants are Obligated to Respond and Identify Documents Specific to Their Own Discovery Responses, and They Have Failed to Do So

The Charity Official Defendants believe they can excuse their persistent non-compliance by directing plaintiffs to the over 459,000 pages of documents produced in this litigation by defendants MWL and IIRO, and adopting them wholesale as their own. Citing "overlapping" document requests, the defendants argue that their discovery obligations are satisfied by simply instructing plaintiffs to cross-reference the discovery requests served on the Charity Officials with the document requests propounded on the MWL and IIRO and the charities' subsequent document productions. Opposition at pp. 3-4.

The assertion that the Charity Officials' discovery obligations are fulfilled by another defendant's production misses the point that the defendants must, themselves, respond to discovery in a manner that allows the plaintiffs to determine which documents in the production corresponds to each of plaintiffs' requests. At the very least, to satisfy Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure, the Charity Officials are obligated to identify which documents among the MWL and IIRO productions are among their own production *and* which documents correspond to the categories in plaintiffs' requests. A spreadsheet, attached as Exhibit 1 to the defendants' opposition, merely indicating potential overlapping of discovery requests does not even remotely satisfy the defendants' discovery obligations under Rule 34. Moreover, the lack of any substantive information or detail in the defendants' spreadsheet makes clear that the defendants have not even initiated a full and comprehensive review of the MWL's and IIRO's document productions to identify, by bates-number, each document they believe is responsive to each of plaintiffs' requests. Without doing so, plaintiffs cannot begin to know to which requests the Charity Officials have responded and to which they have not.

Nor can plaintiffs be satisfied, without formal responses indicating so, that the Charity Officials Defendants have produced all documents in their control responsive to each request. Allowing the Charity Officials to rely entirely on the MWL and IIRO productions, versus requiring them to respond independently, would leave a gaping hole for each defendant to avoid production of responsive documents that are specific to him. Similarly, at a trial, whether a document is acknowledged to have come from the MWL, IIRO or the Charity Official himself may be material for authentication purposes. Regardless of what the MWL and IIRO have produced, the Charity Officials have to date never indicated which specific documents they claim as theirs, which specific documents among the MWL and IIRO collections correspond to the requests plaintiffs served on them, which documents they have but are not producing, or which documents the Charity Officials have and claim as privileged (none of the Charity Official Defendants has produced a privilege log). Counsel for the defendants claim that the Charity Officials have no other documents responsive to plaintiffs' requests, but that claim has never been affirmed in formal discovery useable at trial and neglects to respond to the points raised in plaintiffs' brief about documents that are clearly in their possession, custody and control. *See* September 2 Letter Brief at pp. 6-9.

### D. Discovery as to the Saudi Government and its Officials is Relevant

Finally, defendants argue that discovery should be denied as to their roles with the Saudi government, as well as their communications and relationships with the government and its officials.[2] Opposition at p. 4 (citing the Court's September 29, 2015 Opinion, ECF No. 3046). While plaintiffs respectfully disagree with Judge Daniels' decision relative to the alter-ego analysis, that is an entirely separate issue from whether the government played a role in providing strategic direction to the charities concerning their global operations, and the involvement of the Charity Officials in implementing those decisions (faithfully or otherwise). Importantly, the charities' own filings in this litigation expressly state that as heads of the charities, the charity officials were also designated to hold seats in key government bodies, Exhibits E-H, the charities (such as the MWL) were supervised by the Saudi government officials who headed them, and that the Saudi government was responsible for providing the charities with a majority of their annual funding. Discovery materials produced more recently further indicate that key offices of the charities – such as the Philippine office of the IIRO (designated by the U.S. under E.O. 13224) – sought and obtained diplomatic status in their host countries, and that Saudi embassy officials often served as heads of those offices. See Exhibits I-K.[3] Stated most simply, to categorically exclude all communications between the Charity Officials and Saudi government agencies and employees, or documents relating to the government's involvement in the charities' strategic decision-making, operations and funding, would render it impossible to obtain a complete picture of the Charity Officials' roles with the charities. Thus, discovery as to the defendants' relationships with the charities and the Saudi government is essential to the inquiry concerning the Charity Officials' responsibility for directing the charities' support to al Qaeda.

---

[2] None of the defendants' arguments speak to whether the relevant charities, currently engaged in merits discovery, are obligated to produce these documents. A review of the charities' document productions suggests that there has been an effort on the part of the charity defendants to withhold documents pertaining to the relationship with the Saudi government. Plaintiffs will address this issue in a future motion to compel.

[3] Exhibits J and K, demonstrating Saudi embassy officials simultaneously serving in executive roles with the IIRO branch offices in Pakistan and Ethiopia, are in Arabic and will be translated into English.

The Honorable Frank Maas
November 18, 2015
Page 6

---

                                                  Respectfully submitted,

                                                  J. Scott Tarbutton, Esq.
                                                  THE MDL 1570 PLAINTIFFS' EXECUTIVE
                                                  COMMITTEES

JST

cc:    The Honorable George B. Daniels (via overnight UPS delivery)
       MDL-1570 Counsel of Record (via ECF)

C:\Users\starbutton\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\ETL1ALU5\LEGAL 24911026v1 Plaintiffs_ Reply Letter Brief as to Charity Officials (11_18_2015) (3).DOC