# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL No. 1570 (RCC) |
| THOMAS E. BURNETT, SR., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 03 CV 9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | |
| Defendants. | |

## DECLARATION OF ABDULLAH BIN SALEH AL-OBAID

I, Dr. Abdullah bin Saleh Al-Obaid, being duly sworn, declare and state as follows:

1. I am over 18 years of age and competent to testify to the matters set forth below of my own personal knowledge.

2. I have been informed by my attorney that I am a defendant (D23) in the above-captioned action. I am submitting this declaration in support of my Motion to Dismiss for (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

3. I was born in 1941, in Baday, Saudi Arabia, and have lived in Saudi Arabia all of my life, except for when I was studying in graduate school. I have always been a citizen of the Kingdom of Saudi Arabia.

4. I earned a Master's degree in Vocational & Curriculum Educational and Assessment from Oklahoma State University, and in 1979, earned a Ed.D. degree, in the same subject, also from Oklahoma State University. I also studied Arabic at the Islamic University of

Iman Mohammed Bin Saud, and have taken coursework in administration from the Institute of Public Administration, Riyadh. From 1980 to 1981, I was Assistant Deputy and Vice President of the Presidential of the Two Holy Mosques, a government agency responsible for the maintenance and operation of the Grand Mosque in Makkah and the Prophet's Mosque In Madinah. From 1981 to 1982, I was Vice President of the Islamic University, Al-Madina Al-Munawarah, Saudi Arabia. From 1982 to 1995, I was President of the Islamic University, Al-Madina Al Munawarah, Saudi Arabia.

5. I was the Secretary-General of the Muslim World League from 1995 until 2000. The Muslim World League is a charity that is sponsored and financially supported by the Saudi government. As Secretary-General, I was also one of eight members of the Supreme Council for Islamic Affairs, established by King Fahd by Royal Decree No. 296/8 (1994). The Supreme Council has responsibility for Saudi Arabia's Islamic policies in other countries. In my capacity as Secretary-General, I also served as an officer of the Rabita Trust, a charity that is partly owned by the Muslim World League, and partly owned by the government of Pakistan.

6. In 2001, I was appointed by Royal Decree to the Saudi Majlis-ash-Shura, which is the legislative body of the Saudi government, equivalent to a Parliament in other countries. I am one of eleven (11) members of the Committee of Islamic Affairs. And the head of the committee of seventh group for friendship in The Majlis-ash-Shura's.

The Majlis-ash-Shura's function is to advise King Fahd and his deputies on all issues of importance to the Kingdom. Its recommendations, if adopted, become governmental policy. The Committee of Islamic Affairs' function emphasizes all issues relating to Islam and the government's Islamic activities.

7. In March 2004, I was appointed by Royal Decree to be a founding member of the

National Society of Human Rights, a new entity. At its first meeting, held in the Shoura Council headquarters in Riyadh, I was elected to be a Chairman by the forty (40) other members, including ten women.

8.  I have visited the United States on several occasions since 1975, with my last visit being in 2002. In my capacity as a member of the Supreme Council for Islamic Affairs and Secretary-General of the Muslim World League, I made visits to various offices of the Muslim World League around the world. I visited the Muslim World League office in New York in September 2000, where I spoke at an Islamic Seminar that was convened to discuss the proposed International Peace Summit for the Millennium. During that visit, I met with Kofi Annan, the United Nations Secretary General, to discuss proposed Islamic modifications to this International Peace Summit.

9.  I own no real property in the United States. I also have no bank accounts, and have no investments in the United States. I do not conduct any personal business with any businesses in the United States.

10.  I do not subscribe to or read either the *International Herald Tribune* or the *Al Quds al Arabi*. The latter publication, to my knowledge, is banned in the Kingdom of Saudi Arabia.

11.  I have never supported the loss of innocent life and believe that there is no justification for the tragic attacks of September 11, 2001. I have never supported any person or organization that I have known to participate in terrorist activities. I was interviewed on Saudi television shortly after the September 11 attacks, and I condemned these acts.

12.  The Third Amended Complaint in this case has no allegations about me, other than in six paragraphs. In Paragraph 248, it is stated that I and several other individuals were

3

"co-conspirators, material sponsors, and/or aiders and abettors and members of the terrorist enterprise of the International Islamic Relief Organization." I deny that I had any knowledge of any activities of the International Islamic Relief Organization (IIRO) that were terrorist activities, or knowingly supported terrorism. Although the IIRO is a subsidiary of the Muslim World League, I was not involved with its day-to-day operations or activities.

13. In Paragraph 251 of the Third Amended Complaint, it is stated that I was one of three "officers at the Virginia office" of the Muslim World League. During my tenure as Secretary-General of the Muslim World League, from 1995 to 2000, I served in an ex officio capacity with several of its foreign offices, but was not responsible for the day-to-day operations or activities of the Virginia office. In Paragraph 260, it is stated that I was one of several "co-conspirators, aiders and abettors of the Muslim World League." I deny that I had any knowledge of any activities of the Muslim World League that were terrorist activities, or knowingly supported terrorism.

14. In Paragraph 273 of the Third Amended Complaint, it is stated that the Rabita Trust "is connected to the SAAR Network through two officers," including myself. Although I served as an officer of the Rabita Trust in my capacity as Secretary-General of the Muslim World League, I was not involved in the day-to-day operations or activities of the SAAR Network or its components. I deny that I had any knowledge of any activities of the SAAR Network that were terrorist activities, or knowingly supported terrorism.

15. In Paragraph 252 of the Third Amended Complaint, it is stated that I "also run one of the al-Rajhi family's largest corporations, al-Watania." Similarly, in Paragraph 275, it is stated that I am "the Deputy General Manager at one of the al-Rajhi's largest businesses, al-Watania Poultry in Saudi Arabia." I deny that I had any involvement with this or any other

4

poultry business. I believe that the plaintiffs' attorneys may have confused me with someone else with a similar name, a former Deputy Minister of Agriculture in Saudi Arabia.

16. I can read and understand English.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dr. Abdullah bin Saleh Al-Obaid

Executed on the 29 day of March, 2004.

5