# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | No. 03 MDL 1570 (GBD/FM)<br>ECF Case |

*This document relates to:*

Ashton, *et al.* v. Al Qaeda Islamic Army, *et al.*, Case No. 02-CV-6977;
Burnett*, et al.* v. Al Baraka Inv. & Dev. Corp*., et al.*, Case No. 03-CV-9849;
Cantor Fitzgerald Assocs, LP*, et al.* v. Akida Inv. Co., Ltd*., et al.*, Case No. 04-CV-7065;
Continental Cas. Co., *et al.* v. Al Qaeda Islamic Army*, et al.*, Case No. 04-CV-05970;
Euro Brokers, Inc*., et al.* v. Al Baraka Inv. & Dev. Corp*., et al.*, Case No. 04-CV-07279;
Federal Ins. Co*., et al.* v. Al Qaida*, et al.*, Case No. 03-CV-6978; and
Estate of O'Neill*, et al.* v. Al Baraka Inv. & Dev. Corp*., et al.*, Case No. 04-CV-1923.

**Plaintiffs' Opposition to Defendant Al Haramain's
Rule 72 (a) Objections to Memorandum Decision and Order
Decided and Served on October 23, 2015, Corrected on October 28, 2015**

Plaintiffs oppose Al Haramain Islamic Foundation (USA)'s ("Al Haramain") Rule 72(a) Objection (ECF #3116), filed on November 11, 2015, objecting to Magistrate Judge Frank Maas's Memorandum Decision and Order, filed on October 23, 2015 (ECF #3073, "the Order") and corrected on October 28, 2015 (ECF #3087). Based on multiple false presumptions, petty grievances, and an outright false accusation that the magistrate judge acted unethically, Al Haramain is asking the Court to second-guess Magistrate Judge Maas's deliberate approach to valuing Plaintiffs' fee award, which Judge Maas carefully considered based on his years of close oversight over the litigation generally and over the lengthy discovery dispute specifically underlying the sanction imposed. Because the presumptions and the allegation of Judge Maas's impropriety are false and because none of the petty grievances, either individually or collectively, could ever amount to a "clearly erroneous or contrary to law" abuse of discretion, Magistrate Judge Maas's decision should not be disturbed.

In addition to the fact that the Objection was filed more than 14 days after the Order was served, circumstances suggest that it was filed for improper delay purposes as well. Given the openly charged language and the stream of misstatements and inaccuracies included in the Objection, and Al Haramain's long course of efforts to evade discovery obligations, as outlined in Plaintiffs' motion for sanctions, which ultimately led the Court to impose sanctions, the Objection should be considered with sharp skepticism. Al Haramain has already made clear that its near term goal is to wrap up and dissolve and that its sole purpose for existing is to defend itself in this litigation until it dissolves. *See* ECF #3035 at 3 (quoting ECF #3035-3, AHIF 4527 (The objective of Al Haramain's current sole director is to wind down Al Haramain, distribute its assets, and dissolve the corporation). Under the circumstances, the Objection seems to be little more than a ploy to continue to infect the discourse with charged language against Plaintiffs, to divert time and resources from other ongoing efforts in the litigation, and to delay imposition of the sanctions to allow Al Haramain additional time to access its funds, disburse them, then disappear.

The entirety of Al Haramain's late Objection is premised on at least seven false premises, including:

(1) that Al Haramain has produced all relevant documents (but Al Haramain has still not produce multiple categories of documents that it has had the practical ability to produce);

(2) that the proceedings underlying the sanctions involved a "simple discovery dispute" (but the Court has recognized the complexity of the nine-year dispute that has now involved more than eight distinct pleadings and more than three separate court appearances (even before the additional lengthy fee valuation dispute); *see* ECF #2789 at 27 n.8, 28; ECF #2830 at 6; ECF #2831 at 4-5);

(3) that Plaintiffs intentionally mislead the Court that the Kreindler firm kept contemporaneous time records (but contemporaneous time records *did* support nearly all of the time submitted by the Kreindler firm, though the Court deemed those contemporaneous time entries to lack sufficient details; *see* Exhibit A[1], Affirmation of Andrew J. Maloney, III and ECF #2856);

(4) that Plaintiffs artificially inflated time entries (but the Court already found Cozen lawyers' minor adjustments to account for different lawyers billing for identical events was not improper, *see* ECF #3087);

(5) that the Court "expressly limited" the Plaintiffs to seeking costs associated with obtaining documents used in Oregon federal criminal proceedings involving Al Haramain (but the Court did not so limit, expressly or otherwise; ECF #2789 at 34-35);

(6) that Al Haramain's more than a year long delay in producing discoverable documents used in Oregon federal criminal proceedings involving Al Haramain was justified (but the Court found that Al Haramain unjustifiably delayed production of relevant discovery for over a year even after the Court had ordered the discovery produced; ECF #3087 at 4, 32, 43); and

(7) that Judge Maas engaged in an improper *ex parte* dialogue with the Magistrate Judge in Oregon federal criminal proceedings because he did not tell the parties he was speaking to the Oregon magistrate judge (but Judge Maas specifically asked the parties and the parties consented, Exhibit B, Transcript of July 13, 2011 Hearing at 15, 17-18).

---

[1] References to Exhibits are to exhibits attached to the November 25, 2015 Declaration of Robert T. Haefele filed in association with Plaintiffs' Opposition to Defendant Al Haramain's Rule 72 (a) Objections to Corrected Memorandum Decision and Order of October 28, 2015 (originally decided October 23, 2015).

**POINT 1: Al Haramain's Objection was filed late.**

Rule 72 provides that "[a] party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to." The initial order from which Al Haramain appeals was served on October 23, 2015 (ECF #3073). Days later, on October 28, 2015, the Court served a Corrected Memorandum Decision and Order to make two arithmetic corrections, which are not pertinent to the Al Haramain's objections (indeed, in both instances, the arithmetic corrections were in Al Haramain's favor). Compare ECF #3073 at 38 to ECF #3087 at 38 (changing Anderson Kill's Final Award for Al Haramain from $32,917.50 to $26,334.00) and compare ECF 3073 at 44 to ECF #3087 at 44 (changing the total awarded attorney's fees against AHIF from $177,466.22 to $176,812.22). In short, the deadline for defendant to have filed an objection expired on November 6, 2015, fourteen days from the service of ECF #3073 on October 23, 2015. Defendant did not file its objections until November 11, 2015.

Secondly, though Al Haramain purports to object to Magistrate Judge Maas's order setting the value of the fees and expenses for the sanctions against Al Haramain, much of the argument really second guesses Judge Maas's October 28, 2013 order imposing the sanctions (ECF #2789). For example, much of Al Haramain's argument is that *any* award of fees would be a windfall because (Al Haramain contends and the Court agreed) Plaintiffs suffered no prejudice from Al Haramain's reluctance to abide by the Court's discovery orders. But the determination that Plaintiffs were entitled to *some* value for fees and expenses was made as part of the October 28, 2013 order (ECF #2789). Likewise, Al Haramain asserts that the Court should require more judicial scrutiny than what Judge Maas deemed necessary on April 24, 2014, when the Court set out the procedures it would follow in reviewing the Plaintiffs' petition. ECF #2852.

In addition to being late, second-guessing Judge Maas's determination now would not only require him to engage in additional, unnecessary extended scrutiny, it would also delay the execution

of the sanction well beyond the two year gap between the imposition of the sanction in October 2013 and the valuation of the sanction in October 2015.  The time has long expired for filing objections related either to the October 28, 2013 order or to Judge Maas's April 23, 2014 order regarding the procedures the Court would employ to scrutinize Plaintiffs' time entries.

>    **POINT 2: Al Haramain has not produced all responsive documents in its control.**

In Plaintiffs' response (addressed to Magistrate Judge Maas in another filing today) to Al Haramain's opposition (ECF #3071) to Plaintiffs' renewed motion for sanctions (ECF #3035), Plaintiffs outlined with more specificity examples of documents that Al Haramain has still not produced.  Plaintiffs incorporate that discussion here.

Al Haramain's claim that it has fully complied with its discovery obligations is untrue.  To support its claim, Al Haramain argues that, because Plaintiffs' September 15, 2015 motion against Al Haramain (ECF #3035) does not seek to compel additional documents, Plaintiffs must agree that Al Haramain has produced all discovery.  But Plaintiffs do not agree.  Multiple categories of relevant discovery documents remain unproduced even though they were undoubtedly within Al Haramain's practical control to produce.  But Plaintiffs have opted instead to seek additional sanctions, recognizing the unlikelihood that much of the valuable documents that Al Haramain failed to produce during the course of the discovery dispute will be produced.

Most egregiously among the documents that presumably exist, but that have not been produced, are records of a purported dialogue and resulting agreement with the U.S. government, purportedly finalized in about July 2014, to delist Al Haramain as a Specially Designated Global Terrorist ("SDGT"), which Al Haramain has repeatedly cited as part of its defense. *See, e.g.*, ECF #3060 at 2; #3071 at 8 (arguing that Plaintiffs' claims lack merit because of delistings).  *But see* ECF 3061 (Magistrate Judge Maas responding to Al Haramain, admonishing that "Whether Al Haramain USA is or is not affiliated with the terrorists is an issue wholly removed from its obligation -- once

sued -- to provide discovery"). Although Al Haramain argues based on the purported existence of the dialogue and agreement and has represented that it produced the documents, *see, e.g.*, ECF #3071 at 1 (representing that Al Haramain "produced these documents after the government agenc[y] agreed to the delisting[]), the agreement was purportedly finalized by July 2014 and Al Haramain still has not produced any documents making reference to any dialogue or agreement concerning a U.S. delisting.

Al Haramain has also not produce other categories of documents within Plaintiffs' discovery requests and which Al Haramain had the practical ability to obtain and produce. For example, in discovery propounded on October 29, 2003, Plaintiffs obligated Al Haramain to produce, *inter alia*, bank statements (Document Request No. 22) and filings and other communications with the U.S. I.R.S. (Document Request No. 28). Although Al Haramain produced limited sets of documents in both categories, reflecting recognition that such documents were obligated to be produced, its production was woefully incomplete and did not reflect an active good faith effort to approach its banks, accountants, or other agents to fulfill its discovery obligations.

> **POINT 3: Al Haramain repeatedly mischaracterizes the underlying proceedings as a "simple discovery dispute," though the record reveals the dispute has spanned a decade and entailed more than eight Plaintiffs' pleadings and three court appearances (even before the additional extensive fee valuation dispute).**

Al Haramain repeatedly mischaracterizes the parties' lengthy discovery dispute as "simple" Dft. Brf. at 5, 9, 11, 13, 19. Al Haramain's goal is to invite an ill-fitted comparison to the prevailing party's appeal of attorney fees on the simple contract claim referenced in the cited Fourth Circuit case, *Fair Hous. Council v. Landow*, 999 F.2d 92 (4th Cir. 1993). Unlike this case, *Landow* was not a sanctions award under Rule 37 (b)(2)(C), but an award granted to a party for prevailing on claims in litigation. Not only is the complexity of the cases vastly different but the standards of awarding fees is also different.

Even the trial judge that granted the plaintiff in *Landow* fees for prevailing on a simple contract claim, did so reluctantly with the view that the fees sought for the success were excessive in the face of limited success in the simple case. After the plaintiff failed on a civil rights claim but succeeded on a breach of contract claim, the *Landow* trial judge awarded $20,000 in attorney fees. Although the applicable state law did not permit prevailing party fee awards for contract claims, the trial court awarded prevailing party fees because (though the civil rights claim was unsuccessful) the complaint included a claim under the Civil Rights' Attorneys' Fees Award Act, 42 U.S.C. § 1988. *Landow*, 999 F.2d at 94-95. But, even in granting the award, the judge expressed reticence, characterizing the time entries submitted as "so grossly in excess of any realistic amount as to be unworthy of consideration" in a "relatively simple and straightforward" breach of contract dispute. *Id.* at 95. The granting judge also expressed his view that, "should . . . the appellate court find that this court has discretion to deny all legal fees here, the award of legal fees made herein should be rescinded without remand." *Id.*

On appeal, the circuit court found not only that (1) a trial court may, in its discretion, deny all legal fees submitted pursuant to the Civil Rights' Attorneys' Fees Award Act, 42 U.S.C. § 1988, but also that (2) the time submissions were "woefully inadequate" and made it impossible to exclude fees attributable to unsuccessful claims. *Landow*, 999 F.2d at 96. Attribution among successful versus unsuccessful claims was particular to an award under § 1988 because, in determining the award to a prevailing party under § 1988, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). In contrast, the award here was pursuant to Rule 37 (b)(2)(C), which requires a disobedient party, to "pay the reasonable expenses, including attorney's fees, caused by the [disobedient party's] failure [to comply with a discovery order]."

Moreover, as the Court has recognize on a number of occasions, this complex, multi-plaintiff, multi-defendant multi-district litigation is nothing like the referenced "simple and straightforward"

contract dispute in *Landow*. The procedural history against Al Haramain has now spanned over a decade. Al Haramain's conduct underlying the sanctions request dates back to at least 2004, when it was to have retained documents to produce in response to Plaintiffs' document discovery. The actual discovery dispute with Al Haramain has spanned well over half a decade, dating back to before Plaintiffs' December 2, 2009 motion to compel (ECF # 2206). All told, excluding the extensive pleadings filed since the Court imposed sanctions, the proceedings that Al Haramain has termed "simple" and "straightforward" have now entailed more than eight distinct pleadings and more than three separate court appearances. *See* ECF #2789 at 27 n8, 28; ECF #2830 at 6; ECF #2831 at 4-5.

**POINT 4: Because nearly all of the Kreindler time was supported by contemporaneous records and no Plaintiffs' counsel artificially inflated time, Al Haramain's assertions to the contrary are incorrect; Plaintiffs did not mislead the Court to the contrary.**

Al Haramain also repeatedly mischaracterizes the Plaintiffs' time submissions – specifically by arguing that (1) the Kreindler time submissions lacked any contemporaneous time records, and (2) other Plaintiffs' counsel "enhanced" their time entries. Both arguments are invalid because they are premised on untruths. Nearly all of the time submitted by the Kreindler firm was supported by the contemporaneous time records, though the Court exercised discretion to disallow that time because the entries lacked adequately detailed descriptions. As for the other firms' entries, the Court considered and rejected Al Haramain's argument that the time was "enhanced".

<u>Contemporaneous Kreindler Time</u>

Al Haramain's near single-minded focus has been on its *false* allegation that the Kreindler firm did not provide any contemporaneous records to support its time submissions. As the Court acknowledged, nearly all of the time submitted by the Kreindler firm was for work performed by Kreindler independent contractor and investigator, John Fawcett, (ECF #3087 at 27; Exhibit A, Maloney Affirmation at ¶¶ 2, 10), which was supported by contemporaneous time records (Exhibit A, Maloney Affirmation at ¶¶ 4, 10; ECF #2856 at ¶ 3; ECF #2864-2 at 21-22). Indeed, almost all of

the time that the Kreindler firm submitted was for work done by Mr. Fawcett. And, as explained in the May 15, 2014 Affidavit of James P. Kreindler (ECF #2856) and amplified in the November 24, 2015 Affirmation of Andrew J. Maloney, III (Exhibit A at ¶ 4), both members of the Kreindler firm, Mr. Fawcett kept his time contemporaneous with his work so that he could get paid by the law firm for his work. So, although Magistrate Judge Maas was dissatisfied with the degree of specificity in the time entries of Mr. Fawcett, a non-lawyer, nearly all of the time from the Kreindler firm was premised on contemporaneous time entries. As for the remaining time, a mere 8.5 hours (about 1 % of the total time entries for all of the work performed concerning the motion), that represented time that the Kreindler attorneys, Mr. Kreindler and Mr. Maloney, were actually in court (or meetings with the PECs immediately preceding and following a hearing). That small amount of time, though not evidenced in contemporaneous timekeeping by the lawyers (and as a consequence, disallowed by Judge Maas) was nonetheless supported by the time entries of the other firms' lawyers – that is, there is absolutely no hint that that any of the time was improperly manufactured.

Any hint either that there was an intent to mislead, deceive, or falsify the record as to the contemporaneousness of the Kreindler firm time entries is not supported by the facts in the record. Indeed, while nearly all of the entries were based on contemporaneous records, no one at the Kreindler firm (nor of the other counsel) intended to represent that the Kreindler firm had a formal electronic procedure available to collect all of its time entries. The intention was simply to confirm that, for the bulk of the relevant time, contemporaneous records existed to reliably confirm the time. And such records did exist. *See* Exhibit A, Maloney Affirmation at ¶ 11.

Al Haramain's contention that each of the other firms knew that no contemporaneous Kreindler records existed is, likewise, unsupportable. It is unsupportable, first, because they knew only what was conveyed from the Kreindler firm, and second, because what was truthfully conveyed was that contemporaneous records existed. *See* Exhibit A, Maloney Affirmation at ¶ 11.

Adjustments in time entries by other firms

Likewise, Al Haramain's claim that the other firm's inflated time entries to increase the billable hour totals is false. For this contention, Al Haramain offers examples where two lawyers from the same firm attended the same court hearing, but their formal time entries reflected slightly different time values for the hearing and meetings before and after that hearing. Before submitting the time for the Court's consideration, the time entries were adjusted to reflect the reality that the two lawyers' time was necessarily the same (they travelled and attended the hearing together). As the Court noted, several individual time entries were adjusted, some upward and some downward, to realistically account for the discrepancies in time entries for lawyers that attended the same event. ECF #3087 at 34-35; *see also* Exhibit C, Transcript of April 24, 2014 Hearing at 74 (Judge Maas commenting that he has never seen "pristine" time records where multiple attorneys keep time for the same proceedings).

The short of Al Haramain's argument here is that Magistrate Judge Maas abused his discretion by not accepting Al Haramain's view that the entirety of all four firm's fee award, involving 698.7 hours of work over the course of eight years, should be denied because the total value of two lawyers' time surrounding a single court hearing was adjusted upward by two hours. Judge Maas's discretion to reject the argument was not in error.

**POINT 5: The Court did not limit ("expressly" or otherwise) Plaintiffs' fee petition to seeking costs associated with obtaining documents used in Oregon federal criminal proceedings involving Al Haramain.**

Al Haramain's contention that the Court "expressly limited" the Plaintiffs' motion is false. Al Haramain contends that the Court "expressly limited" Plaintiffs' fee valuation motion to tie the value to time solely related to Al Haramain's failure to timely produce documents from the Oregon criminal proceedings. But the citation Al Haramain offers for that proposition (see ECF #3116 at 7, citing ECF no. 2789 at 34-35), requires no such restriction. Instead, the Court's decision provides simply that "the Plaintiffs . . . are entitled to recover reasonable attorney's fees and costs that they incurred

in bringing this motion." ECF #2789 at 34, citing Fed. R. Civ. P. 37(b)(2)(C). In the Court's October 23 and 28, 2015 Orders, at 4 n.1, the Court clarified that the correct scope of recovery under Rule 37 (b)(2)(C) requires Al Haramain, the disobedient party, to "pay the reasonable expenses, including attorney's fees, caused by the [disobedient party's] failure [to comply with a discovery order]." Although the court imposed no limitation as Al Haramain alleges, is did explain why fees and costs were warranted, stating:

> "it is clear that the Plaintiffs would not have had to file their motion, but for Al Haramain (USA)'s unreasonable refusal to make efforts to obtain the Oregon documents after [the Court] ruled that the protective order in Sedaghaty's criminal case did not preclude their production in this action. Moreover, Al Haramain (USA) has made no showing that its failure to pursue those documents in a timely manner was substantially justified or that the awarding of expenses to Plaintiffs would be unjust."

ECF #2789 at 34-35.

**POINT 6: Al Haramain's mischaracterization of its conduct, carefully omitting that it intentionally delayed production of relevant documents for over a year, is misleading, and warranted the sanctions imposed.**

Al Haramain's argument that it was "justified" in "reasonably" believing an Oregon federal protective order permitted it to disregard Judge Maas's order to produce discovery (Deft's Obj. at 14) is invalid because Judge Maas had previously rule the Oregon order did not prevent production of the documents. On November 22, 2011, Judge Maas decided that the Oregon protective order on which Al Haramain relied to delay production did not prevent Al Haramain from producing to Plaintiffs documents in Al Haramain's control before the U.S. government seized the documents in the execution of a search warrant. ECF #2491 at 13. But for more than a year, from at least November 2011 until March 2013, when Al Haramain finally produced documents from the Oregon proceedings, Al Haramain knew that the Oregon protective order did not preclude production. Nonetheless, despite the Court's unambiguous determination, Al Haramain continued to refuse to produce the documents.

Although Al Haramain's contention that it was "justified" in delaying the production based on its "reasonable" belief that the Oregon order precluded Al Haramain from producing the document (Deft'd Obj. at 14), Judge Maas determined differently. In his October 28, 2015 decision, Judge Maas emphasized in several instances that Al Haramain's delayed production was unjustified. ECF 3087 at 4 ("[W]ithout justification, [Al Haramain] failed to request its documents from the Government."), 32 (referring to Al Haramain's refusal to request the Oregon documents as "wholly unjustified"). Judge Maas summed up his determination by explaining that Al Haramain "wrongly continued to claim that it could not produce its Oregon records even after [the Court] had confirmed that the [Oregon protective order] did not preclude [Al Haramain] from obtaining the documents requested by the Plaintiffs." ECF 3087 at 43. Al Haramain has offered nothing but its own opinion to contradict that determination. Accordingly, it has not demonstrated that Judge Maas was clearly erroneous or contrary to law.

**POINT 7: Al Haramain mischaracterized Judge Maas's discussion with the Oregon Magistrate Judge by claiming the parties were not told of the call in advance; in fact, <u>Judge Maas asked the parties in advance if they consented to the call and Al Haramain specifically consented</u>.**

If for none of the other reasons indicated above, the Court should look with severe skepticism on Al Haramain's claims of wrongdoing after it has wrongly accused Judge Maas of improperly communicating with the magistrate judge in the Oregon criminal proceedings. In an Objection that so aggressively (albeit improperly) accuses the Plaintiffs of multiple wrongdoings, Al Haramain openly displays its lack of candor and reliability when it falsely claims that Magistrate Judge Maas did not inquire of the parties in this case before communicating with the magistrate judge in the Oregon federal criminal proceedings involving Al Haramain. Its assertion could not be further from the truth.

On the court record in a hearing held July 13, 2011, the following exchange occurred, including Magistrate Judge Maas and the parties, including Al Haramain:

> THE COURT: . . . I am interested in having discovery move forward. I could simply call the magistrate judge in Oregon and say this may not be a development you thought of or anticipated.
>
> . . .
>
> I guess I'll ask both sides whether they see any problem with my in the first instance if I get that far, calling the magistrate judge and saying would this be a problem? It's fine that the public defender has a view but it seems it's more important what the view of the court that issued the order is.
>
> MR. HAEFELE: . . . on behalf of the plaintiffs, . . . [w]e don't have a problem with Your Honor making that call.
>
> . . .
>
> THE COURT: Mr. Kabat? . . . [T]he question is whether you have a problem with my consulting with the magistrate judge in Oregon.
>
> MR. KABAT: Well, I think it would perhaps be helpful if I could have an opportunity just to give them a heads up, you know.
>
> THE COURT: Sure, I don't have a problem with that. Okay.

*See* Exhibit B, Transcript of Hearing, July 13, 2011, at 15, 17-18.

Clearly, Al Haramain is wrong to have accused Magistrate Judge Maas of having communicated with the magistrate judge in the Oregon criminal proceedings without affording notice to the parties. Indeed, he asked the parties and Al Haramain consented.

## Conclusion

Magistrate Judge Maas's decision is neither clearly erroneous nor contrary to law, Al Haramain has not demonstrated it to be so, and the decision should not be disturbed. Because Al Haramain has premised its argument on multiple false presumptions, petty grievances, and an outright false accusation that the magistrate judge acted unethically, the Court should overrule the objection and uphold Magistrate Judge Maas's decision.

Dated:  November 25, 2015

Respectfully Submitted,

/s/ Robert T. Haefele
Jodi W. Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792

    Mount Pleasant, SC  29465
    (843) 216-9000

    Sean P. Carter, Esq.
    J. Scott Tarbutton, Esq.
    COZEN O'CONNOR
    1650 Market Street
    Philadelphia, PA  19103
    (215) 665-2000

    James P. Kreindler, Esq.
    Andrew J. Maloney, III, Esq.
    KREINDLER & KREINDLER, LLP
    750 Third Avenue
    New York, NY  10017
    (212) 687-8181

    Jerry S. Goldman, Esq.
    ANDERSON KILL & OLICK, P.C.
    1251 Avenue of the Americas
    New York, NY  10020
    (212) 278-1000

    *For the Plaintiffs' Executive Committees*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Plaintiffs' Opposition to Defendant Al Haramain's Rule 72 (a) Objections to October 28, 2015 Fee Award (originally decided October 23, 2015), was filed electronically this 25th day of November 2015. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

    /s/Robert T. Haefele

Robert T. Haefele, Esq.