**MDL 1570 P**LAINTIFFS' E**XECUTIVE** C**OMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>SIMMONS HANLY CONROY LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**<u>Via ECF and Federal Express</u>**

November 25, 2015

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      For all plaintiffs, the Plaintiffs' Executive Committees reply to the Opposition of Al Haramain Islamic Foundation (USA) ("Al Haramain") (ECF #3071) and in further support of Plaintiffs renewed request for sanctions (ECF #3035). In short, even after years of discovery disputes and imposition of sanctions, Al Haramain continues to delay production and has yet to produce documents relevant to assertions on which it has, itself, relied.[1] All activities of Al Haramain should be considered through a prism that accounts for the fact that Al Haramain acknowledges that its sole purpose of existing is to oppose Plaintiffs in this litigation before dissolving.[2] Its opposition to Plaintiffs' renewed motion for sanctions and its objections to the Court's sanctions valuation (ECF Nos. 3073, 3087) are merely additional efforts to delay and distract, consistent with its continued efforts to delay production of its relevant discovery. And, unfortunately, because Al Haramain's counsel is presumably paid from the same limited frozen assets as a financial sanction would be paid, all of the proceedings to defend continue

---

[1] *See, e.g.*, ECF #3060 at 2; #3071 at 8 (arguing that Plaintiffs' claims lack merit because of delistings). *But see* ECF 3061 (Memo Endorsement responding to Al Haramain, admonishing that "Whether Al Haramain USA is or is not affiliated with the terrorists is an issue wholly removed from its obligation -- once sued -- to provide discovery").

[2] *See* ECF #3035 at 3 (quoting ECF #3035-3, AHIF 4527 (The objective of Al Haramain's current sole director is to wind down Al Haramain, distribute its assets, and dissolve the corporation).

The Honorable Frank Maas
November 25, 2015
Page 2

to bleed the already dwindling assets. *See* Exhibit A[3] (AHIF 3127-31, OFAC licenses to counsel for Al Haramain). Where earlier financial sanctions have not sufficed and the entity has an expressed intention of dissolving, the only means of reinforcing the Court's previous orders to impose a default sanction on Al Haramain.

Before addressing the outstanding issues from Plaintiffs' September 14, 2015 request, Plaintiffs address two related housekeeping items. First, Plaintiffs renewed motion for sanctions included a request for the Court to expedite an order valuing the fees previously imposed in Your Honor's Order of October 28, 2013 (ECF #2789). Plaintiffs appreciate that, in Your Honor's Order of October 23, 2015 (ECF #3073, corrected Order at ECF #3087, docketed Oct. 28, 2015), Your Honor addressed that portion of Plaintiffs' request. Second, in an October 2, 2015 letter to Your Honor concerning Al Haramain (ECF #3058), Plaintiffs asked the Court to include in its Order awarding sanctions a requirement that Al Haramain immediately seek a license from the U.S. Treasury Department's Office of Foreign Assets Control allowing Al Haramain to make the transfer necessary to comply with the Court's sanction order. Until a license is granted, Al Haramain cannot pay (and Plaintiffs cannot accept) the value from Al Haramain due to the fact that its assets are currently frozen. Plaintiffs renew their request for an order imposing that requirement on Al Haramain. (The same issue would also apply to the financial sanction imposed on Wa'el Jelaidan).

The remaining outstanding issues raised in Al Haramain's opposition are its erroneous assertions (1) that Plaintiffs have ever contended that requested documents about Al Haramain's efforts to be delisted are not relevant for discovery, (2) that Plaintiffs' decision to seek renewed sanctions is premised solely on Al Haramain's unjustified and lengthy delay in producing documents about its delisting, and (3) that Al Haramain has produced all responsive discovery.

Finally, after nearly a decade of conferences, motions, and hearings concerning Al Haramain's consistent failure to comply with discovery obligations, previously resulting in imposition of sanctions, Al Haramain should not be heard to complain that Plaintiffs filed a renewed request for sanctions under Rule 37(b) without once again engaging Al Haramain in a futile meet and confer process. Even if a meet and confer were required under Rule 37(b), the purpose would presumably be to narrow the scope of the dispute between the parties. But here the issue is whether Al Haramain complied with a preexisting order, not whether Plaintiffs can agree to accept lesser discovery. In short, as Al Haramain has revealed, the meet and confer would simply have entailed Al Haramain counsel asserting that it is right and Plaintiffs are wrong – and Plaintiffs would have disagreed.[4]

> **POINT 1: Al Haramain misrepresents Plaintiffs' assertion that the *fact* of delisting is not indicative that an SDGT was wrongly listed (because the US and**

---

[3] References to Exhibits are to exhibits attached to the November 25, 2015 Declaration of Robert T. Haefele filed in association with this correspondence, Plaintiffs' Reply to Al Haramain's Opposition to Plaintiffs' Renewed Motion for Sanctions.

[4] Other than as argued below concerning the discovery relevance of information concerning SDGT designation and criminal proceedings against the defendants, Plaintiffs decline to respond to Al Haramain's pages of description of the delisting of Al Haramain, Soliman Al-Buthe or the criminal proceedings against Al Haramain, Al-Buthe or Perouz Sedaghaty, inasmuch as they argue that decisions to delist or to forego criminal prosecution have dispositive bearing or otherwise demonstrate why Plaintiffs' claims against any of the defendants should not be fully considered by the Court. *See* ECF #3061; s*ee also* ECF #3111 at 4, n.1.

> **UN delist SDGT's for many reasons); nonetheless, documents related to an SDGT's listing and delisting are relevant for discovery purposes.**

Surely Al Haramain knows that Plaintiffs never argued that information about a party's designation or de-designation as an SDGT has no relevance. In fact, in fact, even if Plaintiffs had so argued (which they have not), the discovery would nonetheless be relevant as to Al Haramain's defenses, because Al Haramain and other defendants have insisted that the Court consider the fact of delisting as part of its defense. *See, e.g.*, ECF #3060 at 2; #3071 at 8 (Al Haramain argues that Plaintiffs' claims lack merit because of delistings). Still, it is hard to conceive how Al Haramain could mistakenly misconstrue Plaintiffs' arguments that the mere *fact* that an SDGT is delisted does not mean that the SDGT did not engage in the conduct that resulted in the designation. *See, e.g.*, ECF #2990; ECF #3058. The simple *fact* of delisting, which is what Plaintiffs were addressing in the cited comments, does nothing to remove the relevance of documents that discuss the underlying reasons for authorities' decisions to list or delist an SDGT, the timing of listing and delisting, what information was exchanged between listing/delisting authorities and listed/delisted entities, or any of a host of other relevant issues that may reasonably be anticipated to be contained in documents concerning a party's listing or delisting. Finally, as this Court recently observed, "Whether Al Haramain USA is or is not affiliated with the terrorists is an issue wholly removed from its obligation -- once sued -- to provide discovery." ECF # 3061.

Given the breadth of relevance under the Federal Rule, and especially considering Al Haramain's and other defendants' reliance on the types of documents at issue, there should be no doubt remaining that documents about a party's listing or delisting (including, for example, Al Haramain's efforts to be delisted by the UN and US) are relevant for purposes of discovery.

> **POINT 2: Al Haramain's suggestion that it has merely delayed production of documents is mistaken; after years of dispute, followed by court orders requiring production, orders setting deadlines for production, and orders imposing sanctions for unjustifiably delaying production, Al Haramain continues to withhold discoverable documents.**

Once again, Al Haramain's approach is to be unresponsive to the issue presented when opposing Plaintiffs' motion. Throughout Al Haramain's brief, it inaccurately suggests that Al Haramain has produced all documents underlying the communications leading to, and the alleged agreement about, the U.S. government's alleged delisting of Al Haramain. In its opposition brief, Al Haramain asserts affirmatively that it "produced these documents after the government agenc[y] agreed to the delisting[]." ECF #3071 at 1. But despite the expiration of the deadline for completing rolling document productions responsive to the parties' earlier discovery requests and although the alleged agreement to delist purportedly happened more than a year ago now, nowhere in any production from Al Haramain has it produced any documents making reference to any dialogue concerning the U.S. delisting or any agreement to delist.

The first instance where Plaintiffs received any indication that the U.S. government has allegedly agreed to delist Al Haramain came in the September 30, 2015 ECF filing by Al Haramain's counsel on behalf of co-defendant Soliman Al-Buthe (ECF #3053), where Al-Haramain's counsel stated (without including any citation or attaching and supporting exhibits) that "the U.S. government has agreed to delist Al Haramain USA." Plaintiffs brought that comment to the Court's attention in correspondence dated October 2, 2015 (ECF #3058). In October 2, 2015 correspondence from Al Haramain responding to Plaintiffs (ECF #3060) and again in its opposition to Plaintiffs' renewed motion for

The Honorable Frank Maas
November 25, 2015
Page 4

_____

sanctions (ECF #3071), Al Haramain reiterates that the U.S. government has agreed to delist Al Haramain, but again it provides no citation or supporting documentation for its assertions.

Al Haramain's most detailed recitation of the facts about the purported agreement to delist is in the October 19, 2015 Declaration of Alan Kabat (ECF #3071-1 at ¶¶ 6-7). Mr. Kabat explains that during the period between late 2013 through the summer of 2014, Al Haramain counsel was engaged in dialogue with OFAC to delist Al Haramain, which eventually culminated in an agreement that included an agreement to delist Al Haramain. He also states that, as part of the dialogue that preceded and resulted in the July 2014 dismissal of charges against Perouz Sedaghaty, OFAC informed Al Haramain that it would delist Al Haramain, provided it agreed to pay a civil tax assessment to the IRS.

Although Al Haramain's counsel has repeatedly asserted the existence of dialogue concerning the delisting agreement, and explained that the dialogue dates back as early as late 2013 (and although it has suggested that the documents have been produced to Plaintiffs in discovery), Al Haramain has not produced any documents about the purported delisting. The only documents located in Al Haramain's production that concern Al Haramain's designation by OFAC are a February 6, 2008 letter from the U.S. Department of Treasury, advising Al Haramain of the U.S. government's determination to *RE*-designate Al Haramain (AHIF 4484-88) and Al Haramain's August 24, 2012 letter to OFAC requesting reconsideration Al Haramain's designation (AHIF 4662-69). And, as indicated in Plaintiffs' September 15, 2015 letter, *even those documents were delayed in their production to the Plaintiffs*. ECF #3035 at 2-5. So, while Al Haramain intentionally delayed production of all documents regarding its efforts to delist, by the U.N. and the U.S., it has yet to produce any documents about the oft-cited purported agreement with OFAC for the U.S. to delist.

As this Court is aware, this defendant has a documented history of intentionally and without justification delaying production of documents in discovery. Indeed, the Court has already made that determination. ECF #2789 at 35; ECF 3073 at 4. It is also true that Al Haramain's previous conduct in unjustifiably delaying production was grounds for sanctions. Again, the court previously made that determination. ECF #3073 at 5. Furthermore, when given three opportunities to explain the additional delay in producing yet *another* set of documents – *i.e.*, documents concerning efforts toward U.N. delisting – Al Haramain was unable to explain the delay. ECF #3035 at 3-5 (quoting ECF #3035-4, May 13, 2015 Discovery Hearing Transcript at 20-24).

The latest revelation, that Al Haramain has continued to withhold a *third* set of documents – *i.e.*, documents concerning the dialogue about Al Haramain's U.S. delisting and the purported resulting agreement) demonstrates even further why the previous sanctions were insufficient to reinforce the need for compliance with the Court's discovery orders.

**POINT 3: Al Haramain has not produced all responsive discovery.**

Al Haramain inaccurately suggests that Plaintiffs decision to forego another motion under Rule 37(a) demonstrates that Al Haramain has fully complied with its discovery obligations; but Al Haramin has not. In addition to the fact that Al Haramain still has not produced any documents about the U.S. delisting issue discussed in the preceding section, Al Haramain has also not produce other categories of documents within Plaintiffs' discovery requests and which Al Haramain had the practical ability to obtain and produce. For example, in discovery propounded on October 29, 2003 (excerpts attached at Exhibit B), Plaintiffs obligated Al Haramain to produce, *inter alia*, bank statements (Document Request No. 22) and filings and other communications with the U.S. I.R.S. (Document Request No. 28). Although Al

Haramain produced limited sets of documents in both categories, reflecting recognition that such documents were obligated to be produced, its production was woefully incomplete and did not reflect an active good faith effort to approach its banks, accountants, or other agents to fulfill its discovery obligations.

For example, regarding five known bank accounts for Al Haramain (accounts ending in #4381, #1561, #6549, #5615, and #4895) account data was requested for the period from 1998 through the current time (which at the time of the request would have been at least October 2003). Account documentation for the following time periods was *not* collected or produced: for #4381, no documents for January 2002 or March 2003 to October 2003; for #1561, no documents for January 2002 or March 2002 to September 2003; for #6549, no documents for October 2000 through September 2003; for #5615, no documents for January 2001, December 2001, or April 2003 through September 2003, and for #4895, no documents for June 2003 through September 2003. Even if Al Haramain failed to retain the bank records among its own files, it made no effort to acquire the documents from its banks.

Another example reflecting Al Haramain's lack of good faith effort to collect and produce documents concerns the lack of I.R.S. documentation Al Haramain produced. For example, although Al Haramain's productions include some I.R.S. Form 941's (Employer's Quarterly Federal Tax Returns, examples are at AHIF 001139-40, -1398, and -1402), the bulk of those filings, required by the I.R.S. on a quarterly basis, were not produced. Specifically, Al Haramain produced no Form 941's for any of the four quarters of 1998, 1999, 2000. It produced no Form 941's for the second, third, and fourth quarters of 2001. It produced no Form 941 for the first quarter of 2002. It produced no Form 941 for the first, second, and third quarters of 2003. Even if Al Haramain failed to retain the records pursuant to applicable I.R.S. requirements, it made no effort to acquire the documents from its accountant for production.

The documents concerning its purported U.S. delisting, its tax filings, and its bank accounts all represent areas of discovery that Al Haramain has still not produced, despite multiple orders requiring it to do so and financial sanctions imposed for its lack of due diligence in meeting its discovery obligations. Where these additional examples evidence Al Haramain's continued failures to comply with court-ordered production, additional sanctions are warranted.

**Conclusion**

For the reasons set forth above as well as in Plaintiffs' previous application, Plaintiffs' renewed motion for sanctions should be granted, default judgment should be ordered, additional expenses and attorneys' fees should be directed, and an order should be entered directing Al Haramain to immediately obtain a license from OFAC to pay all sanctions imposed (including those previously imposed), along with such other sanctions as this Court deems appropriate.

> Respectfully submitted,
> */s Robert T. Haefele*
> ROBERT T. HAEFELE
> For THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc: Alan Kabat, Esq. (Via ECF)
     The Honorable George B. Daniels, U.S.D.J. (Via Federal Express)
     All counsel – Via ECF