Havlish/Hoglan Plaintiffs'
Rule 72(b)(2) Objections
Exhibit A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 30, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In Re:
                               :

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001                :

-----------------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
GEORGE B. DANIELS**

03 MDL 1570 (GBD) (FM)

This Document Relates to
Havlish v. bin Laden,
03 Civ. 9848 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

The former World Trade Center site is only a few blocks from this Courthouse.  At that location, the 9/11 Memorial opened last year, and a new One World Trade Center, known as the "Freedom Tower," is rapidly nearing completion.  Sadly, despite these and other reaffirmations of the human spirit, there remains one group of Americans affected by the September 11th tragedy for whom it will always be difficult to achieve closure – those whose immediate relatives lost their lives as a result of the terrorists' acts.  The plaintiffs in this multidistrict litigation include many such persons who are seeking to recover monetary compensation from the individuals and entities that carried out, or aided and abetted, the September 11th attacks.

On December 22, 2011, Your Honor entered a default judgment on behalf of the plaintiffs in the Havlish action ("Plaintiffs"), one of the cases comprising this MDL proceeding, against two groups of defendants:  (a) certain sovereign defendants, including the Islamic Republic of Iran, Ayatollah Ali Hoseini Khamenei, Hezbollah, and other Iranian individuals and entities ("Sovereign Defendants"); and (b) certain non-sovereign

defendants, including Osama bin Laden, the Taliban, and al Qaeda ("Non-Sovereign

Defendants") (collectively, the "Defendants"). (ECF No. 2516). The case subsequently

was referred to me to report and recommend with respect to the Plaintiffs' damages. For

the reasons set forth below, I find that the Plaintiffs collectively should be awarded

damages in the amount of $6,048,513,805, plus prejudgment interest on their non-

economic damages.

I.      Standard of Review

        In light of the Defendants' default, the Plaintiffs' well-pleaded allegations

concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4

F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,

973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp.

2d 543, 547 (S.D.N.Y. 1998).

        Additionally, although plaintiffs seeking to recover damages against

defaulting defendants must prove their claims through the submission of admissible

evidence, the Court need not hold a hearing as long as it has (a) determined the proper

rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d

151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable

certainty, the basis for the damages specified in the default judgment, see Transatlantic

Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

Here, because both requirements have been met, a hearing is unnecessary.

Havlish/Hoglan Plaintiffs'
Rule 72(b)(2) Objections
Exhibit A

II.      Factual and Procedural Background

The Havlish action concerns fifty-nine victims of the September 11, 2001

terrorist attacks.  Seventeen of the victims were killed in the South Tower of the World

Trade Center, thirty-two in the North Tower of the World Trade Center, and three in the

Pentagon in Washington, D.C.  (See ECF No. 2553 (Pls.' Proposed Findings of Fact and

Conclusions of Law ("Proposed Findings")) ¶¶ 159-66).  Three further victims were

inside the airplane that crashed into the South Tower, including the plane's captain, who

was murdered by the hijackers; another victim was a passenger on United Airlines Flight

93, which crashed near Shanksville, Pennsylvania; and three victims were killed in the

immediate vicinity of the World Trade Center.  (Id. ¶¶ 165, 167-70).  Forty-seven of the

plaintiffs ("Estate Plaintiffs") sue in their capacity as the legal representatives of their

decedents.  Claims also are brought individually on behalf of 111 family members of the

fifty-nine victims of the attacks ("Individual Plaintiffs").

On December 22, 2011, in addition to entering a default judgment, Your

Honor issued Findings of Facts and Conclusions of Law regarding the liability of the

Sovereign Defendants.[1]  (ECF No. 2515).  In that document, Your Honor concluded that

the "Plaintiffs ha[d] established by evidence satisfactory to the Court that the [Sovereign

---

[1]      To obtain a default judgment in an action under the Foreign Sovereign Immunity
Act ("FSIA"), a plaintiff must demonstrate a right to relief "by evidence satisfactory to the
court," 28 U.S.C. § 1608(e), a standard that may be met "through uncontroverted factual
allegations, which are supported by . . . documentary and affidavit evidence."  Valore v. Islamic
Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (internal quotation marks omitted).

Defendants] provided material support and resources to" the perpetrators of the

September 11th terrorist attacks, by, "inter alia, planning funding, [and]

facilitat[ing] . . . the hijackers' travel and training," and providing the hijackers with

"services, money, lodging, training, expert advice or assistance, safehouses, false

documentation or identification, and/or transportation." (Id. at 50-53). By virtue of their

defaults, the Non-Sovereign Defendants also have admitted their role in the September

11th terrorist attacks.

Accordingly, because all questions concerning the Havlish defendants'

liability have been fully resolved, the only remaining task is the determination of the

Plaintiffs' damages.

III.     Damages

A.     Sovereign Defendants

Among the claims that the Plaintiffs assert against the Sovereign

Defendants in their third amended complaint (ECF No. 2259 ("Complaint" or "Compl.")

are survival, wrongful death, and solatium claims under section 1605A of the FSIA, 28

U.S.C. § 1605A ("Section 1605A"). Section 1605A creates an exception to sovereign

immunity pursuant to which a United States citizen can sue "[a] foreign state that is or

was a state sponsor of terrorism . . . , and any official, employee, or agent of that foreign

state while acting within the scope of his or her office, employment, or agency," for

damages arising out of an act of terrorism sponsored by that state. See Section 1605A(c).

Although Congress enacted Section 1605A in 2008, it applies retroactively to suits then

pending against foreign states that had been designated as state sponsors of terrorism by

the time the suits originally were filed. See Section 1605A(2)(A)(i)(II); Nat'l Defense

Auth. Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3.

Section 1605A effected a "sea change" in suits against state sponsors of

terrorism. Read v. Islamic Republic of Iran, ___ F. Supp. 2d ___, ___, 2012 WL 639139,

at *8 (D.D.C. Feb. 28, 2012). Previously, to recover damages against such defendants,

plaintiffs had to demonstrate their entitlement under state or foreign law. Id. Now, such

claims are subject to a "uniform federal standard." Id. (citing In re Terrorism Litig., 659

F. Supp. 2d 31, 85 (D.D.C. 2009)). Courts therefore usually determine damages under

Section 1605A by applying the legal principles found in the Restatement of Torts and

other leading treatises. Harrison v. Republic of Sudan, ___ F. Supp. 2d ___, ___, 2012

WL 1066683, at *3 (D.D.C. Mar. 30, 2012).

In an action under Section 1605A, "damages may include economic

damages, solatium, pain and suffering, and punitive damages." Section 1605A(c)(4).

Additionally, "[i]n any such action, a foreign state shall be vicariously liable for the acts

of its officials, employees, or agents." Id. Consequently, the "estates of those who [died]

can recover economic losses stemming from wrongful death of the decedent; family

members can recover solatium for their emotional injury; and all plaintiffs can recover

punitive damages." Valore, 700 F. Supp. 2d at 83.

1.    Economic Damages

The Estate Plaintiffs seek economic damages for (a) the past and future lost

wages and benefits of each decedent; (b) the estate's loss of household services; (c) its

loss of advice, counsel, guidance, instruction, and training services; (d) its loss of

accompaniment services; and (e) prejudgment interest.  (See ECF No. 2554 (Pls.' Am.

Damages Inquest Mem. ("Pls.' Mem.")) Ex. H).  To support their claims for these

damages, the Estate Plaintiffs have submitted extensive analyses by Dr. Stan V. Smith, a

forensic economist.  (See Pls.' Mem. Ex. F (Dr. Smith's curriculum vitae)).  Dr. Smith

calculated each decedent's lost wages and benefits by assuming that the decedent would

have worked until the age of sixty-seven and adjusting his calculations through the use of

growth and discount rates.  Dr. Smith also calculated each decedent's estate's non-wage-

related losses by determining the replacement cost of those services.  Finally, Dr. Smith

calculated the prejudgment interest on these damages using the annual average of

monthly interest rates for thirty-day Treasury Bills.  (See id. Ex. H).

Dr. Smith has provided detailed reports for two decedents and calculated

the economic damages for the other forty-five decedents in the same manner.  Having

reviewed Dr. Smith's reports, I find that his calculations are reasonable, and yield

proposed economic damages awards comparable to those in other cases.  See, e.g.,

Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261, 310-24 (D.D.C. 2005);

Alejandre v. Republic of Cuba, 996 F. Supp. 1239, 1249 (S.D. Fla. 1997); Ferrarelli v.

United States, CV 90-4478 (JMA), 1992 WL 893461, at *19 (E.D.N.Y. Sept. 24, 1992).  I

therefore adopt his findings regarding lost wages, benefits, and services, and prejudgment

interest thereon, which leads to a finding that the Estate Plaintiffs' economic damages

total $394,277,884. The separate award to each individual Estate Plaintiff is set forth in

Appendix 1 to this Report and Recommendation.

> 2.      Pain and Suffering

The Estate Plaintiffs also seek damages for their decedents' pain and

suffering. "When determining the appropriate damages for pain and suffering, [the

Court] is bound by a standard of reasonableness." Mastrantuono v. United States, 163 F.

Supp. 2d 244, 258 (S.D.N.Y. 2001) (citing Battista v. United States, 889 F. Supp. 716,

727 (S.D.N.Y. 1995)).

Relying on Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F.

Supp. 2d 216 (D.D.C. 2008), the Estate Plaintiffs seek $18 million for each decedent's

pain and suffering. (Pls.' Mem. at 10). In Pugh, a suitcase bomb on an airplane

detonated mid-flight, killing everyone on board. The court awarded the estate of each

passenger $18 million for the passenger's pain and suffering, but did not explain how it

arrived at that number, nor did it cite any cases in which there had been similar awards.

See 530 F. Supp. 2d at 266-73. In other FSIA cases, courts have made considerably

lower pain and suffering awards to the estates of victims of state-sponsored terrorism.

For example, in Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 78, 89 (D.D.C.

2002), the court awarded $1.5 million to an estate for the pain and suffering of a decedent

who was tortured for fifteen hours before being shot to death. Similarly, in Eisenfeld v.

Islamic Republic of Iran, 172 F. Supp. 2d 1, 8 (D.D.C. 2000), the court awarded $1

million in damages for pain and suffering to the estate of a victim of a bus bombing who

had survived for several minutes before ultimately dying.  See also Weinstein v. Islamic

Republic of Iran, 184 F. Supp. 2d 13, 22-23 (D.D.C. 2002) ($10 million award to estate of

victim who survived for forty-nine days with limited pain medication after suffering

extensive burn and blast injuries during a terrorist bombing of a bus).

Although the specifics of each decedent's demise remain largely unknown,

the Plaintiffs have submitted the expert report of Dr. Alberto Diaz, Jr., M.D., a retired

Navy Rear Admiral, which provides a chilling account of the horrific conditions that each

of the Estate Plaintiffs' decedents likely encountered immediately before his or her death.

(See Pls.' Mem. Exs. D, E).  As Dr. Diaz's report confirms, there is little doubt that many,

if not all, of the decedents in this case experienced unimaginable pain and suffering on

September 11, 2001.  As Judge Baer noted in a previous case brought by two of the Estate

Plaintiffs:

> The effort after a tragedy of this nature to calculate pain and
> suffering is difficult at best.  Unfortunately, there is no way to
> bring back [the decedents] and no way to even come close to
> understanding what [they] experienced during their last
> moments.  Under our legal system, compensation can only be
> through the award of a sum of money.  While always difficult
> and never exact, the devastation and horror accompanying
> this tragedy makes a realistic appraisal almost impossible.

Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 233

(S.D.N.Y. 2003), amended, 2003 WL 23324214 (S.D.N.Y. May 19, 2003).

Judge Baer awarded the two <u>Smith</u> plaintiffs $1 million and $2.5 million,

respectively, for their decedents' pain and suffering.  <u>Id.</u> at 234, 239.  Judge Baer

reasoned that a $1 million award was reasonable for the first victim, who died in the

South Tower, because there was no evidence that he survived the plane's impact, and that

a $2.5 million award was appropriate for the second victim, because there <u>was</u> evidence

that he had survived the initial impact and subsequently was trapped in the North Tower

for some time before his death.  <u>Id.</u>

As Judge Baer's analysis in <u>Smith</u> suggests, the decedents in this case

arguably may have experienced different levels of pain and suffering dependant upon

whether they were in the North Tower (the first to be hit but the second to collapse), the

South Tower (where they may have had knowledge of the first attack but less notice that a

structural collapse was likely), the Pentagon, one of the airplanes, or on the ground.  The

decedents' precise locations when the attack occured also may have affected their levels

of conscious pain and suffering.  In these circumstances, calculating a precise award for

each decedent's individual pain and suffering obviously would be impossible.

Nonetheless, the Estate Plaintiffs are entitled to fair compensation for their injuries; the

awards in other FSIA cases – particularly those made by Judge Baer in <u>Smith</u> – suggest

that $2 million per decedent is a reasonable figure.  Accordingly, I recommend that each

of the Estate Plaintiffs be awarded that amount for their decedents' pain and suffering.

The total recommended pain and suffering award is therefore $94,000,000.

3.    Solatium

Under Section 1605A, family members of the decedents also are entitled to

damages for solatium.  "A claim for solatium refers to the mental anguish, bereavement,

and grief that those with a close relationship to the decedent experience as a result of the

decedent's death, as well as the harm caused by the loss of decedent's society and

comfort." Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C.

2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).  "Acts of terrorism

are by their very definition extreme and outrageous and intended to cause the highest

degree of emotional distress." Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22

(D.D.C. 2009).  For that reason, in FSIA cases, courts have recognized that a solatium

claim is "'indistinguishable' from the claim of intentional infliction of emotional

distress." See, e.g., Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 267 n.5

(D.D.C. 2002) (quoting Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128, 135

n.11 (D.D.C. 2001)).

In Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C.

2006), District Judge Royce Lamberth articulated a framework for determining solatium

damages pursuant to which spouses of deceased victims each received approximately $8

million, parents each received $5 million, and siblings each received $2.5 million.

Several courts subsequently have followed the Heiser framework while acknowledging

that upward or downward departures are sometimes appropriate.  See, e.g., Estate of

Case 1:03-md-01570-GBD-SN   Document 3192-1   Filed 01/11/16   Page 11 of 19
Case 1:03-cv-09848-GBD   Document 314   Filed 07/30/12   Page 11 of 19
**Havlish/Hoglan Plaintiffs'
Rule 72(b)(2) Objections
Exhibit A**

<u>Bland v. Islamic Republic of Iran</u>, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); <u>Valore</u>, 700

F. Supp. 2d at 85.

Here, each of the Individual Plaintiffs has submitted a declaration attesting

to the traumatic effects of the loss of his or her loved one. (<u>See</u> Pls.' Mem. Ex. B). A

review of those submissions makes clear that all of the Individual Plaintiffs have suffered

profound agony and grief as a result of the tragic events of September 11th. Worse yet,

the Individual Plaintiffs clearly are faced with frequent reminders of the events of that

day. (<u>Id.</u>). Considering the extraordinarily tragic circumstances surrounding the

September 11th attacks, and their indelible impact on the lives of the victims' families, I

find that it is appropriate to grant the upward departures from the <u>Heiser</u> framework that

the Individual Plaintiffs collectively have requested. Accordingly, I recommend that with

one exception[2] the Individual Plaintiffs be awarded solatium damages as follows:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

[2] The exception relates to Chrislan Fuller Manuel ("Manuel"), the niece of one of the decedents. Typically, solatium damages are available only to the spouses, children, parents, and siblings of decedents. <u>See</u> <u>Smith</u>, 262 F. Supp. 2d at 234. Although courts occasionally have awarded solatium damages to more distant relatives who served functionally as immediate family members, <u>see, e.g.</u>, <u>id.</u> at 236 (grandmother who raised decedent from an early age); <u>Surette</u>, 231 F. Supp. 2d at 270 (decedent's unmarried partner of over twenty years), Manuel did not have that sort of relationship with her aunt. (<u>See</u> Pls.' Mem. Ex. B).

If this recommendation is adopted, the 110 Individual Plaintiffs entitled to

recover damages for solatium will receive a total of $874,000,000.  The separate

solatium award for each Individual Plaintiff is set forth in Appendix 2 to this Report and

Recommendation.

4.      Punitive Damages

Pursuant to the FSIA, the Plaintiffs also are entitled to punitive damages.

See Section 1605A(c)(4).  The Plaintiffs propose two different ways to calculate their

punitive damages.  First, the Plaintiffs propose that the Court follow the reasoning

articulated in Estate of Bland, 831 F. Supp. 2d at 158.  Under that rubric, the Court would

calculate punitive damages by multiplying the Plaintiffs' compensatory damages by 3.44.

(See Pls.' Mem. at 20).  Alternatively, the Plaintiffs propose applying a 5.35 ratio as the

court did in Flax v. DaimlerChrysler Corp., 272 S.W.3d 521 (Tenn. 2008).  (See Pls.'

Mem at 21).

In Estate of Bland, an FSIA case arising out of the bombing of the United

States Marine barracks in Beirut, the court, "relying on the Supreme Court's opinion in

Philip Morris USA v. Williams, 549 U.S. 346 (2007)," applied a 3.44 ratio, noting that

several courts previously had applied that ratio in FSIA cases.  Estate of Brand, 831 F.

Supp. 2d at 158 (citing Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 75

(D.D.C. 2010), and Valore, 700 F. Supp. 2d at 52).  In Flax, a products liability case

arising out of a car accident, the Tennessee Supreme Court upheld a punitive damages

award that was 5.35 times the victim's compensatory damages.  272 S.W.3d at 540, cert.

denied, 129 S. Ct. 2433.  In the course of approving that higher multiplier, however, the

court expressly noted that the victim's compensatory damages were not so substantial as

to render such a high ratio unconstitutional.  Id. at 539.

As the court explained in Estate of Bland, the 3.44 ratio "has been

established as the standard ratio applicable to cases arising out of" terrorist attacks.  831

F. Supp. 2d at 158.  Moreover, the Plaintiffs in this case are entitled to substantial

compensatory damages.  Accordingly, Flax, which was decided several years before

Bland and involves dissimilar facts, does not suggest that this Court should deviate from

the established standard in FSIA cases.  The Plaintiffs' compensatory damages amount to

$1,362,277,884.  I therefore recommend that they be awarded punitive damages based on

a 3.44 multiplier, yielding a punitive damages total of $4,686,235,921.

5.    Prejudgment Interest

Recognizing that an award of prejudgment interest is warranted when

plaintiffs are delayed in recovering compensation for non-economic injuries caused by

acts of terrorism, Magistrate Judge Facciola recently awarded such plaintiffs prejudgment

interest at the prime rate.  See Baker v. Socialist People's Libyan Arab Jamahirya, 775 F.

Supp. 2d 48, 86 (D.D.C. 2011).  Dr. Smith similarly has used the average prime rate

published by the Federal Reserve Bank for the period from September 11, 2001, through

the date of his report and assumed that prejudgment interest would be awarded through

January 1, 2013.  (See Pls.' Mem. Ex. J).  There is, however, no reason to believe that this

Report and Recommendation will be reviewed by a particular date.  Accordingly, if this

Report and Recommendation is adopted, the Clerk of the Court should simply be directed

to award prejudgment interest on the Plaintiffs' damages for solatium and pain and

suffering, which total $968,000,000, at the rate of 4.96 percent per annum for the period

from September 11, 2001, through the date that judgment is entered.

      B.     <u>Non-Sovereign Defendants</u>

      Although the Plaintiffs' submissions do not discuss their claims against the

Non-Sovereign Defendants in great detail, those Defendants are liable for the same

damages as the Sovereign Defendants under traditional tort principles.[3]  <u>See</u> <u>Valore</u>, 700

F. Supp. 2d at 76-80.  The Non-Sovereign Defendants consequently should be held jointly

and severally liable for the damages set forth above and in the appendices to this Report

and Recommendation.[4]

      C.     <u>Costs</u>

      The Plaintiffs also seek approximately $2 million in costs.  (<u>See</u> Pls.' Mem.

Ex. M).  Pursuant to 28 U.S.C. § 1920 and Local Civil Rule 54.1(c), only certain

expenditures may be taxed as costs.  The Plaintiffs have requested an award of costs

---

[3]     The Plaintiffs, however, cannot recover treble damages against the Non-Sovereign Defendants pursuant to the Antiterrorism Act, 18 U.S.C. § 2333, <u>see</u> <u>Smith</u>, 262 F. Supp. 2d at 220-22, because they did not assert such a claim in their Complaint. (<u>See</u> Compl. ¶¶ 401-21).

[4]     As discussed above, at least two of the Estate Plaintiffs already have been awarded damages against some of the Non-Sovereign Defendants. <u>See</u> <u>Smith</u>, 262 F. Supp. 2d at 240-41. To the extent that the damages awarded in this action may exceed those awarded in a previous action, the Non-Sovereign Defendants have waived any potential <u>res judicata</u> defense by failing to appear.

primarily for expenses that are not recoverable.  In addition, the proffered evidence is

insufficient for the Court to calculate any taxable costs that could be allowed.  The

Plaintiffs' application for costs consequently should be denied without prejudice to a

renewed application.

IV.    Conclusion

For the reasons set forth above, the Plaintiffs should be awarded damages

against the Sovereign and Non-Sovereign Defendants in the amount of $6,048,513,805.

Additionally, the Plaintiffs are entitled to prejudgment interest on their non-economic

compensatory damages at the rate of 4.96 percent per annum from September 11, 2001,

through the date judgment is entered.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the Chambers of the Honorable George B. Daniels and to the Chambers of the

undersigned at the United States Courthouse, 500 Pearl Street, New York, New York

10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Daniels. The failure to file these timely objections will result in a waiver of those

objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            July 30, 2012

                              FRANK MAAS
                        United States Magistrate Judge

Copies to:

Hon. George B. Daniels
United States District Judge

All counsel via ECF

**Havlish/Hoglan Plaintiffs'**
**Rule 72(b)(2) Objections**
**Exhibit A**
**Appendix 1**
**Economic Damage Awards**

| ESTATE | ECONOMIC DAMAGES |
|---|---|
| Bane, Michael | $5,960,665 |
| Boryczewski, Martin | 17,363,416 |
| Cafiero, Steven | 1,754,202 |
| Caproni, Richard M. | 3,551,011 |
| Chirchirillo, Peter | 5,440,587 |
| Coale, Jeffrey | 5,558,859 |
| Coffey, Daniel M. | 5,059,077 |
| Coffey, Jason | 4,006,486 |
| Collman, Jeffrey | 4,318,172 |
| Diehl, Michael | 5,584,103 |
| Dorf, Stephen | 3,242,690 |
| Fernandez, Judy | 2,852,544 |
| Gamboa, Ronald | 2,890,981 |
| Godshalk, William | 16,672,472 |
| Grazioso, John | 7,376,753 |
| Gu, Liming | 11,883,059 |
| Halvorson, James | 9,464,745 |
| Havlish, Donald | 6,711,879 |
| Lavelle, Dennis | 4,039,992 |
| Levine, Robert | 4,520,876 |
| Lostrangio, Joseph | 5,777,844 |
| Mauro, Dorothy | 1,580,579 |
| Melendez, Mary | 7,531,551 |
| Milano, Peter T. | 22,153,588 |

**Havlish/Hoglan Plaintiffs'**
**Rule 72(b)(2) Objections**
**Exhibit A**

| | |
|---|---:|
| Moreno, Yvette | 2,360,239 |
| Nunez, Brian | 2,499,922 |
| Ognibene, Philip | 4,435,087 |
| Papasso, Salvatore T. | 6,289,680 |
| Perry, John | 4,924,240 |
| Ratchford, Marsha | 6,233,977 |
| Reiss, Joshua | 7,726,738 |
| Rodak, John M. | 24,440,747 |
| Romero, Elvin | 14,783,971 |
| Rosenthal, Richard | 7,274,204 |
| Santillan, Maria Theresa | 3,255,002 |
| Saracini, Victor | 9,593,658 |
| Schertzer, Scott | 2,792,107 |
| Sloan, Paul K. | 5,967,696 |
| Smith, George | 2,609,215 |
| Soulas, Timothy | 86,796,344 |
| Steiner, William | 6,443,814 |
| Stergiopoulos, Andrew | 5,716,259 |
| Straub, Edward W. | 16,552,703 |
| Tino, Jennifer | 2,625,577 |
| Wallendorf, Jeanmarie | 1,768,803 |
| Waller, Meta | 1,200,501 |
| Ward, Timothy | 2,691,269 |
| **TOTAL** | **$394,277,884** |

(See Pls.' Mem. Ex. H).

**Havlish/Hoglan Plaintiffs'**
**Rule 72(b)(2) Objections**
**Exhibit A**
**Appendix 2**
**Solatium Damages**

| RELATIONSHIP | NUMBER OF PLAINTIFFS | DAMAGES | TOTAL |
|---|---|---|---|
| Spouse | 23 | $12,500,000 | $287,500,000 |
| Parent | 41 | 8,500,000 | 348,500,000 |
| Child | 10 | 8,500,000 | 85,000,000 |
| Sibling | 36 | 4,250,000 | 153,000,000 |
| **Total** | **110** | | **$874,000,000** |

(See Pls.' Mem. Ex. A)