# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* (1944-2013)<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>SIMMONS HANLY CONROY LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF and FACSIMILE (w/o Exhibits) and Federal Express (w/ Exibits)**
January 28, 2016

Honorable Frank Maas
United States Magistrate Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl street, Room 740
New York, New York 10007-1312

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

Plaintiffs' Executive Committees write in response to the January 21, 2016 letter (ECF No. 3202) from Eric L. Lewis, counsel for defendants Muslim World League and International Islamic Relief Organization (collectively, "Defendants"). Plaintiffs do not agree with Defendants' assertion that the documents are forged. Nonetheless, Plaintiffs have sought to address Defendants' concerns, have complied with the Court's November 3 Order (ECF No. 3104), and have responded to Defendants' discovery. But the protracted nature of Defendants' opposition to the documents and the purported urgency with which it is presented suggest that the attention that Defendants urge upon the handful of documents (*that may or may not, someday*, prove to be central to the litigation) is premature, distracting, wasteful of the parties' and the Court's time and resources, and a dangerous precedent opening the door to unnecessarily time-consuming ancillary litigation regarding discovery documents.

Nonetheless, if the Court is inclined to further address the matter while Defendants' own document productions remain unfinished (despite the December 15, 2014 deadline; *see* ECF No. 2897), Plaintiffs are willing to confer about the questions raised. But, if the parties are to address the issues now, Plaintiffs ask that, to foster efficiency, the Court set a schedule for Defendants to lay out their arguments in full and allow Plaintiffs to respond. Plaintiffs further recommend that the Court simultaneously consider issues arising from deficiencies in Defendants' responses to Plaintiffs' discovery, which responses were served January 25, 2016, replete with objections and no additional substantive information.

1. **Plaintiffs have complied with the court's order, including by responding to interrogatories; opposition to objections should be raised in that context.**

Plaintiffs complied with the November 3 Order (ECF No. 3104), which obliged the parties to work through the issue of the documents' authenticity. Plaintiffs expected to confer about an

The Honorable Frank Maas
January 28, 2016
Page 2

approach to addressing the order, rather than resort to formal discovery requests. Instead, Defendants served formal interrogatories, to which Plaintiffs responded, including both substantive responses and interrogatory-specific objections. A number of the responses made clear that, notwithstanding objections and continuing investigation, Plaintiffs have little or no responsive information. Plaintiffs also reciprocated, serving their own discovery requests.

Defendants' January 21 letter wrongly suggests that Plaintiffs were foreclosed from asserting objections to the formal requests. Nothing in the November 3 Order suggests that the Court intended to overrule objections before they were lodged, opposed, and argued. Indeed, Defendants have asserted objections to every request Plaintiffs served. Defendants' suggestion to take the discovery requests out of context, without considering the objections, is improper.

2. **Addressing the matter before both sides have concluded discovery is premature and ignores protections afforded attorney work product.**

In this ancillary dispute about unconfirmed, unilateral concerns over a handful of documents among the hundreds of thousands produced, and where the concerns can be addressed without resort to disclosure of protected information, Defendants have not demonstrated the "substantial need" or "undue hardship" necessary to consider disclosure of work product.

Though Plaintiffs do not concede Defendants' premise that the documents were forged, they nonetheless consistently have tried to address Defendants' concerns. At the same time Plaintiffs have also insisted that Defendants' demands may not cross into privileged work product, involving Defendants' efforts to glimpse into the Plaintiffs' strategies and case preparation, including discovery about non-testifying consultants and investigators retained to aid in preparing Plaintiffs' case. *See LivePerson, Inc. v. 24/7 Customer, Inc.*, Dkt. No. 14 Civ. 1559 (RWS), 2015 U.S. Dist. LEXIS 99782 (S.D.N.Y. July 29, 2015) (non-testifying expert's identity is protected from discovery); *see also United States v. District Council*, 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *26 (S.D.N.Y. Aug. 14, 1992), citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (because attorneys often rely on investigators, attorney's investigator's information is protected work product).[1]

To overcome work product protection, Defendants must show substantial need for the information sought and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship. *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010). Instead of meeting the standard, Defendants have rejected Plaintiffs' pleas to use other means to address the inquiries. Notably, Defendants still have not produced requested documents that may resolve questions about the documents' authenticity without resort to work product. The following examples suggest but a few areas:

(1) Defendants produced a 2001 audit indicating gross financial irregularities and the diversion of millions of dollars from one of their Pakistan branch offices, involving office personnel conducting massive fabrications of invoices, receipts, and other office documents in relation to construction projects, medical services, and other activities. *See* Exhibit A. Discovery of fraudulently created office documents from Defendants' Pakistan offices is particularly pertinent to the issue under review. But despite Plaintiffs' insistence, Defendants have not produced working papers regarding the audit and

---

[1] Once a testifying or authenticating witness is offered, then at that time Defendants can test the documents' authenticity in a deposition or at trial.

The Honorable Frank Maas
January 28, 2016
Page 3

documents that appear to have triggered the investigation underlying the audit.  *See* Exhibit B, correspondence dated January 25, 2016 to counsel for MWL/IIRO.

(2) Defendants' confirmation that they looked for the documents in the location where documents from their offices in Pakistan would be expected to be would aid in determining whether Defendants have adequately searched their files for the Documents in Question.

(3) Defendants listing of each of their concerns would allow Plaintiffs to determine if trouble-free explanations might dispel their concerns.  For example, Defendants express concern that dates are in Gregorian style versus Hijri style, but both styles are used in Pakistan, from where the documents originate.  Similarly, Defendants express concern about differences in the spelling of certain words, but those differences may simply be attributed to transliteration of words.  But until each of Defendants' complaints are identified, the degree of legitimate concern cannot be discerned.

(4) Defendants have expressed doubt as to the signatures.  Given that the documents appear to be from Defendants' employees, any information about the employees or documents bearing their signature would have a bearing on the documents' authenticity.  Defendants have identified a small sample of documents in this category, but they have not confirmed that they have produced all documents in their control regarding each of the individuals.

(5) Defendants have expressed concern that letterhead on the Documents in Question differs from the letterhead used by Defendants.  To test that assertion, Plaintiffs asked Defendants to produce exemplars of all letterhead used by the Defendants, including particularly from the offices identified in the Documents in Question.  Defendants identified a few letterhead examples among documents previously produced, but unless exemplars of all letterhead are produced for comparison, Defendants' assertion cannot be confirmed.

**3. Defendants' attention to the handful of documents is a distraction.**

Compared to the time needed to complete their own long overdue initial production, Defendants have toiled disproportionately on a handful of documents that may or may not eventually need authentication.  Though the deadline to complete rolling productions passed on December 15, 2014, Defendants' new counsel, retained over two years ago, have failed on their promise to fix earlier deficiencies.  Among the documents still unproduced are documents the Court ordered produced in mid-2011.  *See* Exhibit B; *see also* July 13, 2011 Discovery Hearing Transcript at pp. 30-31.  Instead of focusing on complying with their long outstanding discovery obligations, Defendants try to distract attention to an ancillary, time-consuming, unnecessary "fishing expedition" about a small set of documents that they unilaterally declare to be forgeries.  And when asked to support the rationale for their assertions, they have refused to do so unless Plaintiffs promise not to investigate possible innocuous explanations from the most likely source of such explanations.  Instead, with nothing more than their assertions, they insist that their interpretation must be accepted as the real world view.

In short, Defendants have demanded disproportionate attention to a handful of documents that may or may not eventually need authentication, rather than attending to their own discovery obligations.  Before Defendants are permitted to intrude into Plaintiffs' trial preparation, other avenues should be explored and exhausted, including complete production from Defendants that may resolve the issue. *See Crosby*, 269 F.R.D. at 277 (Purposes of the work product doctrine include protecting attorneys' space to formulate legal theories and prepare cases, discouraging opponents from "free-loading" off their adversaries work, and preventing interference with ongoing litigation).

The Honorable Frank Maas
January 28, 2016
Page 4

                                            Respectfully submitted,

                                            THE MDL 1570 PLAINTIFFS' EXECUTIVE
                                            COMMITTEES

cc:    Eric Lewis, Esquire (Counsel for MWL/IIRO, via ECF)
        All counsel of record (Via ECF)
        The Honorable George B. Daniels, U.S.D.J. (via Federal Express)