# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

## VIA ECF AND OVERNIGHT DELIVERY

February 9, 2016

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

Re:  *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, filed their motion to compel as to defendant Dallah Avco yesterday via the Court's Electronic Case Filing ("ECF") system. *See* ECF No. 3211, attached. Upon further review of the filing, I discovered that certain documents that were cited in plaintiffs' motion by their bates numbers were inadvertently not included as exhibits to the motion. *See* Section II, p. 2 (identifying DA001101-1102, DA001110, DA001357, DA001119); Section IV(B), p. 10 (identifying DA000309, DA000646, DA000647); and Section IV(C), p. 10 (identifying DA000044, DA000094). For the completeness of the record, plaintiffs are hereby submitting those documents as exhibits to plaintiffs' motion at ECF No. 3211 as follows:

Exhibit V (DA001101-1102)          Exhibit AA (DA000646)

Exhibit W (DA001110)              Exhibit BB (DA000647)

Exhibit X (DA001357)             Exhibit CC (DA000044)

Exhibit Y (DA001119-1121)         Exhibit DD (DA000094)

Exhibit Z (DA000309)

The Honorable Frank Maas
February 9, 2016
Page 2

_____

Should the Court have any questions regarding plaintiffs' submission, please do not hesitate to contact me directly.

Respectfully submitted,

J. Scott Tarbutton, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

cc:    The Honorable George B. Daniels (via overnight Fed Ex delivery)
       MDL Counsel of Record (via ECF)

LEGAL\25806646\1 00000.0000.000/117430.000

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* (1944-2013) MOTLEY RICE LLC James P. Kreindler, *Co-Chair* KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* Sean Carter, *Co-Chair* COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* KREINDLER & KREINDLER LLP Paul J. Hanly, Jr., *Co-Liaison Counsel* SIMMONS HANLY CONROY LLP | J. Scott Tarbutton, *Liaison Counsel* COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT DELIVERY**

February 8, 2016

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and accompanying exhibits in support of their request that the Court enter an order pursuant to Federal Rule of Civil Procedure 37(a), compelling defendant Dallah Avco to immediately produce all documents and information responsive to plaintiffs' jurisdictional document requests.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiffs have described the factual and procedural background concerning their claims against Dallah Avco in their earlier letter motion to compel dated August 25, 2014 (ECF No. 2883). Rather than repeat that discussion here, plaintiffs attach a copy of the August 25 letter brief at Exhibit A, and incorporate the relevant discussion by reference.[1] As a further update, the parties recently conducted a telephonic meet-and-confer on January 15, 2016 in an effort to resolve and narrow the scope of issues to be presented to this Court. *See* Plaintiffs' January 5, 2016 letter to counsel for Dallah Avco at Exhibit B, and Dallah Avco's January 14, 2016 letter response at Exhibit C, setting forth the parties' respective positions and exchanged in advance of the conference. Although the parties continue to confer on several issues which are not yet ripe

---

[1] Exhibits A-G to plaintiffs' August 25, 2014 letter brief have been omitted, but can be found at ECF Nos. 2883-1 to 2883-7.

The Honorable Frank Maas
February 8, 2016
Page 2

for the Court's consideration, the parties remain in disagreement over a number of issues that require this Court's review.

## II.   DALLAH AVCO HAS NOT PRODUCED DOCUMENTS CRITICAL TO THE JURISDICTIONAL ANALYSIS

During the course of Bayoumi's tenure with Dallah Avco beginning in 1995 and ending in 2002, there were multiple requests from the Saudi Presidency of Civil Aviation ("PCA") to the Saudi Ministry of Defense and Aviation seeking the approval to extend Bayoumi's secondment with the defendant. Dallah Avco has produced a handful of documents relating to that process. However, a review of those materials makes clear that Dallah Avco has not produced a number of key documents that are critical to plaintiffs' claims.

Dallah Avco has produced an April 4, 1999 letter from Dallah Avco's Chairman of the Board of Directors, Alawi Muhammad Said Kamel, to Muhammad Ahmad al Salimi of the PCA, advising that Dallah Avco no longer wishes to extend Bayoumi's secondment with the company. DA001101-1102. Just several days later, however, Kamel writes to the PCA again on April 7, 1999, but this time asks that Bayoumi's secondment with Dallah Avco be extended for another year. DA001110. The April 7 letter is subsequently attached to an April 17, 1999 letter from the PCA to the Saudi Ministry of Defense and Aviation, requesting the urgent approval of the extension of Bayoumi's secondment. DA001357. To date, Dallah Avco has failed to produce any documents explaining this sudden about-face, and it is implausible to suggest that no such documents exist. Accordingly, Dallah Avco should be compelled to immediately search for and produce all documents precipitating Kamel's reversal, including without limitation, all internal communications at Dallah Avco relating to the company's desire not to extend Bayoumi's secondment, and all communications between Dallah Avco and the PCA regarding same.

Relatedly, during the parties' most recent meet-and-confer, plaintiffs advised the defendant that it has not produced the Ministry of Defense and Aviation's official response to the April 17, 1999 extension request from the PCA. In its January 14, 2016 letter at Exhibit C, p. 2, Dallah Avco responds by citing to "a decree announcing the secondment at DA001119." DA001119 is a letter from Abd al Aziz bin Abd al Karim al Anqari, the Assistant President of the PCA, to Bayoumi, advising that pursuant to an April 27, 1999 letter received from the Deputy Minister of Defense and Aviation, the extension to the secondment has been authorized and will be effective April 24, 1999. However, the April 27, 1999 letter from the Deputy Minister has itself not been produced.

Further, the Anqari letter at DA001119 confirms that the Deputy Minister of Defense and Aviation similarly granted the PCA's prior requests for extensions to Bayoumi's secondment. Those prior authorizations from the Deputy Minister are missing as well. As these examples reflect, Dallah Avco has not conducted an adequate search for records directly relevant to the jurisdictional analysis. Plaintiffs respectfully submit that Dallah Avco should be compelled at this point to conduct an appropriate search, and to immediately produce all communications between the PCA and the office of the Minister of Defense and Aviation relating to Bayoumi's secondment to Dallah Avco, including without limitation, all requests the PCA sent to the Ministry seeking an extension to Bayoumi's secondment, and all authorizations received from

The Honorable Frank Maas
February 8, 2016
Page 3

_____

the Deputy Minister in response to those requests. Dallah Avco should also be compelled to
produce communications with the Ministry of Defense and Aviation pertaining to any other
secondments.

## III.   DALLAH AVCO'S INSISTENCE THAT IT WILL ONLY SEARCH FOR
  DOCUMENTS EXPRESSLY RELATING TO OMAR AL BAYOUMI IS
  CONTRARY TO THE SECOND CIRCUIT'S MANDATE AUTHORIZING
  JURISDICTIONAL DISCOVERY

On April 16, 2013, the United States Court of Appeals for the Second Circuit reversed
the district court's dismissal of Dallah Avco on personal jurisdiction grounds, and remanded
Dallah Avco for jurisdictional discovery. *O'Neill v. Asat Trust Reg.* (*In Re: Terrorist Attacks on
September 11, 2001* (Asat Trust Reg.)), 714 F.3d 659, 679 (2d Cir. 2013). In reinstating the
claims against Dallah Avco, the Second Circuit confirmed that plaintiffs' allegations sufficiently
alleged that Dallah Avco had conspired to provide "cover employment" for Bayoumi while he
was in the United States and providing support to the September 11th hijackers. *Id.* Accordingly,
the Second Circuit concluded that "plaintiffs' allegations suggest that Dallah Avco may have
directed its activities, related to Bayoumi's cover employment, towards the United States," and
further held that plaintiffs' allegations concerning Dallah Avco "suggest a closer nexus between
[Dallah Avco's] alleged support of al Qaeda and the September 11, 2001 attacks." *Id.* Thus, the
Second Circuit's decision plainly authorized discovery concerning any matters that would
provide insight into the nature of Dallah Avco's relationship with Bayoumi.

Significantly, the record before the Second Circuit on appeal included allegations, based
on FBI investigative reports that Bayoumi was but one of approximately 50 ghost employees
Dallah Avco had on its payroll. Further, plaintiffs' pleadings asserted that Dallah Avco affiliates
and partners in the United States, including a company called Ercan Engineering, played a role in
the ghost employment relationship between Dallah Avco and Bayoumi. And most
fundamentally, the pleadings asserted that Bayoumi's ghost employment relationship with
Dallah Avco was the product of an arrangement between Dallah Avco and the Saudi
government. Thus, those are among the relationships and issues that serve to inform the nature
of Dallah Avco's relationship with Bayoumi, and most clearly within the scope of discovery
pursuant to the Second Circuit's mandate.

Plaintiffs served their First Set of Jurisdictional Requests for Production of Documents
Directed to Dallah Avco on August 22, 2013, attached hereto as Exhibit D. Those requests seek
documents relating to Bayoumi's secondment to Dallah Avco and his purported work on the Air
Navigation Systems Support ("ANSS") aviation project in Saudi Arabia,[2] including but not
limited to, the various positions Bayoumi held during his secondment, the work Bayoumi
allegedly performed while in the United States during his secondment, communications between
Bayoumi and Dallah Avco, Bayoumi's employment records and personnel file(s), financial
records relating to Bayoumi, financial payments issued by Dallah Avco to Bayoumi, academic

_____

[2] Although the project to which Bayoumi was assigned was located in Saudi Arabia, Bayoumi was
stationed in San Diego, CA throughout much of his secondment.

The Honorable Frank Maas
February 8, 2016
Page 4

studies Bayoumi allegedly pursued while in the United States, and Bayoumi's relationship with
Saudi government agencies and officials responsible for his secondment.

Consistent with the Second Circuit's remand, plaintiffs' jurisdictional requests also seek
relevant information relating to the circumstances surrounding Bayoumi's secondment to Dallah
Avco, Dallah Avco's communications with Saudi government agencies and officials responsible
for authorizing and overseeing Bayoumi's secondment, and Dallah Avco's relationship and
communications with individuals and entities identified in the United States investigations of
Bayoumi and Dallah Avco (such as Ercan and Avco Overseas).

For instance, plaintiffs' jurisdictional requests at Exhibit D seek *inter alia*: (i) documents
identifying all individuals employed or contracted by Dallah Avco in the United States to
perform any work or services on behalf of, or for the benefit of, Dallah Avco; (ii) documents
relating to Dallah Avco's relationship with Ercan Engineering; (iii) documents relating to Dallah
Avco's relationship with Fahad al Thumairy, a representative of the Ministry of Islamic Affairs
in the Saudi Consulate in Los Angeles who had a long-standing relationship with Bayoumi
during his secondment to Dallah Avco, and who was later stripped of his diplomatic visa and
barred from the United States based on his ties to terrorism; (iv) documents relating to Dallah
Avco's relationship with officials of the Saudi Presidency of Civil Aviation ("PCA") and other
government agencies with knowledge of Bayoumi's secondment; (v) records for all projects,
work or services performed by Dallah Avco on behalf of the Saudi government, for which
Bayoumi performed any work or services; (vi) documents detailing and describing any
investigation of Dallah Avco in relation to the September 11th attacks; and (vii) all
documentation Dallah Avco collected and provided to any official or agency of the Saudi
government in relation to any investigation of the September 11th attacks, Bayoumi, Saleh
Abdullah Kamel, Dallah al Baraka, and/or al Qaeda.[3]

Notwithstanding the Second Circuit's clear mandate, Dallah Avco has from the
commencement of discovery consistently objected to any requests that do not relate solely to
Bayoumi himself, taking the narrow and incorrect view that it is only required to search for
documents expressly relating to Bayoumi. *See* Dallah Avco's Responses to Plaintiffs' Requests
for Jurisdictional Discovery, General Objection Nos. 1-3, attached hereto as Exhibit E (asserting
that plaintiffs' jurisdictional discovery "exceeds the scope of discovery authorized by the Second
Circuit" because the Court "focused on the activities of Mr. Omar al Bayoumi while he was in
California"); *see also* Dallah Avco's September 19, 2014 letter brief (ECF No. 2896) ("Dallah
Avco's position is simply that it should not have to search for documents that do not relate to Mr.
al Bayoumi in any way."). Dallah Avco's oft-repeated position that it should only search for and
produce documents that refer or relate to Bayoumi conflicts with the view of the Second Circuit
permitting discovery to determine whether the defendant directed its activities at the United
States by offering cover employment to Bayoumi. Plaintiffs respectfully submit that any
documents that would shed light on that issue are within the Second Circuit's mandate.

---

[3] Dallah Avco is part of the Dallah al Baraka global conglomerate, owned by Saudi billionaire Saleh
Abdullah Kamel. Dallah al Baraka and Kamel are alleged to have directed tens of millions of dollars in
funding to support al Qaeda and other radical Islamic causes. Kamel has been publicly identified on the
"Golden Chain" as one of al Qaeda's principal financiers.

The Honorable Frank Maas
February 8, 2016
Page 5

_____

Plaintiffs raised these concerns with the defendant's attorneys at an early stage of these proceedings, advising that the narrow searches conducted by Dallah Avco were insufficient because those searches did not encompass areas of relevant inquiry other than Bayoumi. Plaintiffs moved to compel on August 29, 2014 to require Dallah Avco to disclose the scope of its searches in response to plaintiffs' jurisdictional requests and to specifically identify which of those requests have been included within the scope of Dallah Avco's searches. *See* Plaintiffs' August 29, 2014 Motion to Compel (ECF No. 2886) and Reply Brief (ECF No. 2899) at Exhibits F and G. However, this Court deferred judgment on plaintiffs' motion, hopeful that the parties could resolve the dispute without court intervention. *See* excerpts from Discovery Hearing Transcript, dated May 13, 2015, pp. 11-13, at Exhibit H.

Despite recent efforts by the parties to resolve this long-standing disagreement, Dallah Avco maintains its objection to searching for documents that do not relate expressly and directly to Bayoumi himself. *See* Dallah Avco's January 14, 2016 letter response at Exhibit C. Some of the categories of documents Dallah Avco contends are outside the scope of the Second Circuit's mandate and thus refuses to search for include the following examples.

## A. Ercan Engineering

Plaintiffs' Request No. 31 seeks documentation relating to Dallah Avco's association with Ercan Engineering, an entity that has been linked to Dallah Avco in connection with post-9/11 terrorism investigations targeting Bayoumi. According to a U.S. intelligence report, *Connections of San Diego PENTTBOMB Subjects to the Government of Saudi Arabia*, under the heading *Omar Ahmed Al-Bayoumi*, attached hereto as Exhibit I, Ercan was a California subcontractor for Dallah Avco tasked with providing financial assistance to Bayoumi while he was in the United States.

> In 1995, Ercan Engineering, a San Diego subcontractor of Dallah Avco, was asked by the CAA[4] to provide financial support to Al-Bayoumi while he studied in the U.S. Ercan refused and was told that its contract maybe jeopardized as a result.

*See also* Federal Bureau of Investigation's April 15, 2002 report, *Omar Al Bayoumi, Employed by Dallah Al Baraka*, at no. 000000123 (stating that Ercan Engineering and Dallah Avco were parties to a contract with the CAA, whereby Dallah Avco "had the contract for operations maintenance and Ercan supplied the parts"), attached hereto as Exhibit J.

Plaintiffs respectfully submit that Ercan's relationship with Dallah Avco, and its role in providing monetary support to Bayoumi in the United States while Dallah Avco was simultaneously providing "cover employment," falls within the scope of the jurisdictional discovery mandated by the Second Circuit. Accordingly, plaintiffs respectfully request that the Court strike the defendant's objection and order Dallah Avco to immediately produce all documents as to Ercan.

_____

[4] CAA is the Civil Aviation Administration of Saudi Arabia, also referred to as the Saudi Presidency of Civil Aviation ("PCA").

The Honorable Frank Maas
February 8, 2016
Page 6

### B.  Other Individuals Seconded To, And/Or Employed By, Dallah Avco

Plaintiffs' jurisdictional discovery seeks documents relating to other individuals like Bayoumi who were seconded to Dallah Avco, and any individual employed or contracted by Dallah Avco to perform work or services in the United States. *See* plaintiffs' January 5, 2016 letter at Exhibit B, p. 2 (requesting (1) any list of Saudi government employees who were seconded to Dallah Avco at any time between 1995 and 2002; and (2) any documents relating to any Saudi government employees who were seconded to Dallah Avco between 1995 and 2002); *see also* Request No. 52 at Exhibit D (requesting all documents relating to any individual employed or contracted by Dallah Avco in the United States to perform any work or services on behalf of, and/or for the benefit of, Dallah Avco).

On several occasions, plaintiffs have made clear to the defendant that records relating to secondments of other Saudi government employees to Dallah Avco, as well as those individuals performing work or services in the United States for the benefit of Dallah Avco, are of critical importance to understanding the nature of Dallah Avco's relationship with Bayoumi. Nevertheless, Dallah Avco maintains that the requests are outside the scope of the Second Circuit's mandate permitting jurisdictional discovery.

As plaintiffs' August 25, 2014 motion at Exhibit A describes (ECF No. 2883), Dallah Avco provided Bayoumi with a ghost job and a regular salary of $3,000 per month from 1995 through the tragic events of September 11, 2001. Throughout this timeframe, Bayoumi was stationed in San Diego despite the fact that the ANSS aviation project to which he was assigned was located in Saudi Arabia. During those 7 years, Bayoumi reportedly only showed up for work once. When Bayoumi's immediate supervisor notified the company of his failure to appear and argued in favor of terminating his employment, Dallah Avco officials immediately dismissed those concerns and affirmed that Bayoumi remain on the payroll despite his chronic absence. Throughout the period of his employment with Dallah Avco, Bayoumi, while enjoying the cover his ghost job with Dallah Avco afforded him, provided financial and logistical assistance to September 11th hijackers Nawaf al Hazmi and Khalid al Mihdhar in the United States. Importantly, U.S. intelligence affirms that there were approximately fifty (50) individuals who were being carried on the books at Dallah Avco who were being paid for doing nothing. *See* Exhibit I at p. 3, and Exhibit J at p. 30.

Plaintiffs submit that it is impossible to properly assess and understand the employment relationship between Dallah Avco and Bayoumi without being afforded an opportunity to analyze the defendant's relationship with similarly situated individuals. Moreover, given the assessment by U.S. intelligence that Dallah Avco was in the business of providing cover employment to dozens of individuals during this relevant time period, plaintiffs' requests are well within the scope of permissible jurisdictional discovery authorized by the Second Circuit.

### C.  Avco Overseas Services/Textron

Plaintiffs additionally seek information relating to Dallah Avco's relationship with Houston, TX-based Avco Overseas/Textron ("Textron"). Like Ercan, Avco Overseas/Textron had a business relationship with Dallah Avco and was also responsible for issuing financial

The Honorable Frank Maas
February 8, 2016
Page 7

_____

payments to, and/or for the benefit of, Bayoumi and his family while he was in the United States during his secondment to Dallah Avco. *See* Exhibit K (documents detailing Avco Overseas/Textron's role in issuing payments for Bayoumi's tuition at San Diego State University, living allowances, and reimbursement of expenses); *see also* Exhibit L (Saudi Presidency of Civil Aviation requesting that Avco Overseas/Textron issue financial payments to Bayoumi beginning in August 1994 and continuing for the next 27 months).

The U.S. investigations and limited discovery provided to date thus place Avco Overseas/Textron at the center of the relationship between Dallah Avco and Bayoumi. Accordingly, plaintiffs have requested documents relating to the relationship between Dallah Avco and Avco Overseas/Textron during the relevant period. Because those entities were used as proxies to facilitate payments to Bayoumi and involved in supporting Bayoumi's presence in the United States, plaintiffs are entitled to information and documents relating to Dallah Avco's relationship with those entities.[5]

### D. September 11th Related Investigations of Dallah Avco

Plaintiffs' Request Nos. 53 and 54 at Exhibit D seek documentation relating to any investigation of Dallah Avco in relation to the September 11th attacks, including documentation Dallah Avco collected and provided to any official or agency of the Saudi government in relation to any investigation of the September 11th attacks, Omar al Bayoumi, Saleh Abdullah Kamel, Dallah al Baraka, and/or al Qaeda.

Dallah Avco has consistently objected to these requests, arguing that plaintiffs' requests seeking "information concerning alleged investigations of Dallah Avco" are "clearly beyond the scope of the Second Circuit mandate." *See* Dallah Avco's Responses to Plaintiffs' Requests for Jurisdictional Discovery, General Objection No. 3, at Exhibit E. But that view cannot be reconciled with the Second Circuit's unmistaken conclusion that plaintiffs' claims evidence a close nexus between the defendant and the September 11th attacks. It logically follows that any investigation of Dallah Avco relative to its relationship with Bayoumi and the "cover employment" it provided him while he was offering support to the hijackers in the United States, are absolutely relevant. Accordingly, any documents in Dallah Avco's possession, custody and control relating to any such investigation, including without limitation, all documents Dallah Avco collected and produced to any foreign country, international body, or the Saudi

_____

[5] Dallah Avco's own documents evidence an agreement for Avco Overseas/Textron to provide financial assistance to Bayoumi for almost two and half years. Despite this fact, Dallah Avco has merely produced a few documents referencing Avco Overseas/Textron's initial payments in the summer of 1994, but otherwise fails to provide any documentation relating to payments made by Textron over the next 27 months. Dallah Avco also has refused to produce documents relating to financial payments Avco Overseas/Textron made to, and/or for the benefit of, any other individual similarly seconded to Dallah Avco, or any employee of Dallah Avco, arguing that the request is beyond the scope of the Second Circuit's mandate.

The Honorable Frank Maas
February 8, 2016
Page 8

_____

government investigating the September 11th attacks and/or Dallah Avco's relationship with the individuals and entities identified in Request No. 54, should be produced.

Dallah Avco similarly asserts the same objection to other of plaintiffs' jurisdictional requests, including but not limited to, requests seeking information relating to Dallah Avco's relationship with Safari Company Limited, Dallah Avco's "Out-of-Kingdom" expenses and costs relating to the ANSS project, ANSS project requirements that an office in the United States must be maintained, and Saudi government officials instrumental in Bayoumi's secondment. *See* Dallah Avco's January 14, 2016 letter response at Exhibit C; *see also* excerpts from Discovery Hearing Transcript, dated May 13, 2015, p. 12, at Exhibit H (objecting to Request Nos. 18-23, 31-33, 35, 37, 39, 40, 45-56).

From the outset, Dallah Avco has been on notice that plaintiffs would challenge the adequacy of any search that was limited to materials only as to Omar al Bayoumi and would move to compel. As the above examples prove, Dallah Avco's objection is without merit. Plaintiffs respectfully ask that the Court strike Dallah Avco's objection and compel the defendant to immediately undertake efforts to search for and produce all responsive materials.

## IV.   DALLAH AVCO CONTINUES TO WITHHOLD DOCUMENTATION AND INFORMATION RESPONSIVE TO PLAINTIFFS' JURISDICTIONAL DISCOVERY

Plaintiffs' jurisdictional discovery additionally seeks several important categories of documents relevant to their claims, including Bayoumi's employment and personnel files, Bayoumi's educational studies in the United States, Bayoumi's communications from the United States regarding his work and studies, and materials relating to the Saudi government's oversight of Bayoumi's secondment and his activities in the United States. Although the defendant has produced some documents that respond to plaintiffs' inquiries, those very same records demonstrate that Dallah Avco is withholding a much larger collection of responsive materials.

### A.   Omar Al Bayoumi's Employment/Personnel Files

Plaintiffs' jurisdictional discovery additionally seeks the full and complete production of all employment and personnel files for Omar al Bayoumi. *See* Request No. 2 at Exhibit D (requesting all personnel, employment or consultancy records relating to Omar al Bayoumi). Dallah Avco maintains that it has produced Bayoumi's employee file for the Air Navigation Systems Support ("ANSS") project to which he was assigned at DA000996-1341 and DA001344-57, and is unaware of any other personnel files relating to Bayoumi. *See* January 14, 2016 letter response at Exhibit C, p. 5. However, a careful examination of the defendant's production indicates that not only has the defendant not produced the entirety of the Bayoumi employee file as it represents, but that additional personnel and/or personal files relating to Bayoumi exist and also have not been produced. The following points are illustrative.

During the most recent meet-and-confer held on January 15, 2016, Dallah Avco assured plaintiffs that the Bayoumi employee file at DA000996-1341 and DA001344-57 has been produced in the same form that it was kept in during Dallah Avco's regular course of business.

The Honorable Frank Maas
February 8, 2016
Page 9

Assuming that to be true, the employee file could reasonably be expected to have been maintained in a well-organized manner, with documents filed in chronological order, starting from the date of Bayoumi's secondment to Dallah Avco in 1995 to work on the ANSS aviation project, until the termination of the secondment in or around May 2002, or soon thereafter. In the instant case, just the opposite has occurred. The employee file, which contains approximately 118 separate documents (many of which are duplicates), is simply a disorganized mess. The employee file begins with several documents dated in 2001 and 2003, and then ends with documents dated 2001, 1998, 2000, and 1998 again. In the middle are a random mix of records between 1993 and 2003. The randomness of the production has made it impossible for the plaintiffs to understand the nature of the documents or provide any context to them, but also suggests that the documents were selectively handpicked and thrown together to create the appearance of a so-called employee file. Dallah Avco should be directed to clarify how the documents it has identified as the "employee" file were found, collected and assembled for production, and reproduce the alleged employee file in chronological order, remove all duplicates, and include copies of the actual file itself identifying Bayoumi's name.[6]

In addition to the haphazardness of the documents described above, noticeably absent from the alleged employee file are some basic personnel records such as Bayoumi's personal information, copies of Bayoumi's passport or visa, job title and description, and payroll records. Equally striking is the absence of a complete compilation of employee evaluations for Bayoumi. Dallah Avco has produced a single "employee performance review" for Bayoumi at Exhibit M, which appears to indicate that Bayoumi had to undergo at least 4 probationary performance reviews during the first year of his secondment to Dallah Avco, none of which have been produced. When plaintiffs requested all evaluations and performance reviews for Bayoumi, Dallah Avco claimed that it is not in possession of employee evaluations or performance analyses because it does not direct or supervise the work of ANSS project employees. *See* January 14, 2016 letter at Exhibit C, p. 10. That representation appears hollow, particularly in light of the fact that the defendant has produced employee evaluations and performance reviews for other individuals hired for the ANSS project at Exhibit N.

Dallah Avco's representation that it is not aware of any other employment files relating to Bayoumi is equally unconvincing. Several documents produced by the defendant in the alleged employee file include handwritten notations instructing that the document should be filed in the "Omar Bayoumi file," "employee file," and "Datac file," indicating that Dallah Avco maintained several personnel and/or personal files for Bayoumi. *See* Exhibit O (identifying "Datac file/employee file/Omar Bayoumi file"), Exhibit P ("employee file"), Exhibit Q ("Omar Baiomy File"), and Exhibit R ("Omer Bayomi"). In addition, the documents identify at least two different employee numbers for Bayoumi, similarly suggesting multiple employee files. *See* Exhibit S (employee # 50060), and Exhibit T (employee # 50040).

---

[6] Dallah Avco should also be required to produce a sampling of intact employee and personnel files for a number of randomly selected other employees, to allow plaintiffs to ascertain what a normal employee and personnel file looks like and contains, both to assess the validity of Dallah Avco's representation that it has produced the employee and personnel file for Bayoumi, and to evaluate unique aspects of its relationship with Bayoumi. Plaintiffs have an outstanding request to Dallah Avco for such a production, flowing from the recent meet-and-confer.

The Honorable Frank Maas
February 8, 2016
Page 10

_____

Moreover, Dallah Avco has produced a number of company forms referring to Bayoumi which clearly direct that copies are to be sent to various internal departments for filing. *See* 1995 Notice of Employment and 2002 Notice of Termination forms at <u>Exhibit U</u> (copies are required to be sent to Personnel, Finance, and the Base/Site Director, among others). Those Bayoumi related files should also be produced.

Plaintiffs respectfully request that the Court compel Dallah Avco to undertake all necessary efforts to promptly search for and produce all employee, personnel, or personal files relating to Bayoumi.

### B. Communications and Other Records Authored by Bayoumi

Plaintiffs similarly have very little documentation relating to Bayoumi's alleged work in the United States, despite the many years he resided in San Diego during his secondment. In fact, Dallah Avco has failed to produce a single report, memorandum, or other piece of correspondence from Bayoumi to Dallah Avco and/or the PCA relating to the ANSS project or any work he was doing on behalf of Dallah Avco. Dallah Avco cites to DA000309, DA000646, and DA000647 (duplicate of DA000309) as examples of "reports, memoranda, and other communications authored by Mr. al Bayoumi," but those are merely two separate letters from Bayoumi concerning his U.S. bank account and payments for vacation time. Dallah Avco should be directed to produce all responsive materials relating to Bayoumi's work and activities in the United States.

### C. Bayoumi's Alleged Educational Studies in the United States

At DA000044, Dallah Avco produced a March 1997 document authored by Muhammad Ahmad al Salimi, Director-General of Airways Engineering, Presidency of Civil Aviation ("PCA"), representing that Bayoumi was in the United States studying for a Master's in Business Administration ("MBA"). Further, DA000094, a document authored by Ali bin Abd al Rahman al Khalaf of the PCA, indicates that Bayoumi received a master's degree in the United States and was accepted for a doctorate program in business administration in the United Kingdom. Aside from a few documents indicating that Bayoumi was briefly enrolled at San Diego State University in 1995, plaintiffs have received no further records relating to his alleged educational studies in the United States (*e.g.* registration documents; tuition invoices and paid receipts; class schedules; transcripts; certificates; diplomas), nor have plaintiffs seen a single communication from Bayoumi to Dallah Avco and/or the PCA regarding his studies. Dallah Avco should be directed to undertake efforts to search for and produced all documents relating to Bayoumi's alleged studies in the United States, including without limitation, any document or information that provided the basis for the representations made in the documents referenced above.

### D. Saudi Government Oversight of Bayoumi's Secondment

Plaintiffs' review of the Kingdom of Saudi Arabia's protocols and procedures relating to the secondment of government civil servants to the private sector indicates that any secondment of any Saudi government employee, no matter his position or rank, must be formally reviewed and approved by the Saudi Ministry of Civil Services. *See* Exhibit B, p. 3. Secondment

The Honorable Frank Maas
February 8, 2016
Page 11

---

approvals are to be issued by letter from the Ministry's council. To date, plaintiffs have received no records relating to the Ministry's review and approval of Bayoumi's secondment to Dallah Avco, which should be produced.

Plaintiffs also seek all communications between Dallah Avco and the Saudi Ministry of Islamic Affairs, the Saudi Royal Embassy in Washington, D.C., and the Saudi Consulate in Los Angeles. *See* Exhibit B at No. 9 (requesting all documents sent to, and/or received from, the Ministry of Islamic Affairs or any agent of the Ministry of Islamic Affairs relating to Omar al Bayoumi), and No. 10 (requesting all documents sent to, and/or received from, the Royal Embassy of Saudi Arabia in Washington, D.C. or the Saudi Arabian Consulate in Los Angeles, CA, relating to Omar al Bayoumi). Intelligence collected by the FBI demonstrates a deeply rooted relationship between the Saudi government and Bayoumi. According to the FBI's April 15, 2002 report, *Omar Al Bayoumi, Employed by Dallah Al Baraka*, attached hereto as Exhibit J, the FBI obtained and analyzed Bayoumi's telephone records revealing extensive contacts between Bayoumi and Saudi officials in Washington D.C. and Los Angeles, CA, particularly during the January-March 2000 timeframe when 9/11 hijackers Hazmi and Mihdhar arrived in Los Angeles and subsequently settled in San Diego with Bayoumi's assistance. Telephone records indicate that Bayoumi made approximately 141 calls to Saudi officials in Washington D.C. at the Saudi Arabian Royal Embassy, the Saudi Islamic Affairs Department, the Saudi Arabian Cultural Mission, the Saudi Arabian Education Mission, and the Saudi National Guard. Bayoumi also made approximately 34 calls to the Saudi Arabian Royal Consulate in Los Angeles. Plaintiffs respectfully request that the Court compel Dallah Avco to search for and produce any and all communications that fall within this category.

Respectfully submitted,

J. Scott Tarbutton, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

JST

cc:    The Honorable George B. Daniels (via overnight Fed Ex delivery)
       MDL-1570 Counsel of Record (via ECF)

LEGAL\25469423\1 00000.0000.000/117430.000