

Robert K. Kry
MoloLamken LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
T: 202.556.2011
F: 202.556.2001
rkry@mololamken.com
www.mololamken.com

May 27, 2016

The Honorable Frank Maas
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

BY ECF AND FEDERAL EXPRESS

    Re:   *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570 (GBD) (FM)
           Opposition to Motion to Compel

Dear Judge Maas,

    We represent defendant Dallah Avco and write in response to plaintiffs' motion to compel filed February 8, 2016 (Dkt. 3211). That motion should be denied. Dallah Avco has already gone to extraordinary lengths and expense to comply with its discovery obligations. Plaintiffs fail to show that further searching would be either productive or appropriate for a defendant that has not even been found subject to the Court's jurisdiction.

    Some of the documents plaintiffs seek legitimately relate to Omar Al-Bayoumi, the ANSS project employee who was the sole basis for the Second Circuit's remand. But without exception, those documents either have already been produced or were found not to exist in Dallah Avco's files despite a diligent and comprehensive search. That Dallah Avco does not possess every document about Al-Bayoumi that plaintiffs might like is unsurprising given the limited nature of Dallah Avco's relationship with him.

    Plaintiffs' remaining requests seek wide-ranging discovery into matters unrelated to Omar Al-Bayoumi – such as other vendors to the ANSS project or employees assigned to completely different projects. That discovery far exceeds the scope of the Second Circuit's mandate and appropriate jurisdictional discovery. Even if the documents had some tangential relevance, the burdens of locating them would be far disproportionate. The Court should deny those requests. But if it does allow further discovery, it should take steps to limit the burden – for example, by permitting Dallah Avco to make its files available for plaintiffs to search on site.

## BACKGROUND

*Dallah Avco and the ANSS Project*

Defendant Dallah Avco is a Saudi government contractor that, for two decades, had contracts with the Kingdom's Presidency of Civil Aviation ("PCA") to provide services for an Air Navigation System Support ("ANSS") project. Yamani Decl. ¶¶ 5-6. Those contracts required Dallah Avco to provide manpower procurement, payroll processing, and related personnel administrative services for the PCA. *Id.* ¶ 6. But Dallah Avco did not make any hiring or firing decisions and did not direct or supervise the work of ANSS project employees. *Id.*

Omar Al-Bayoumi was associated with the ANSS project from 1995 until 2002. Yamani Decl. ¶¶ 7, 88. A longtime PCA employee, Al-Bayoumi was seconded to the project by the PCA in 1995. *Id*. ¶ 7. Dallah Avco then managed his payroll, just as for other ANSS employees. *Id.*

*The Second Circuit's Decision and Plaintiffs' Discovery Requests*

This Court initially held that it lacked jurisdiction over Dallah Avco. Dkt. 2252. But the Second Circuit reversed. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013). The allegations against Dallah Avco, it noted, "fail to show that the acts of Omar al Bayoumi 'were authorized and performed in furtherance of [its] business.'" *Id.* at 679. But the court held that "plaintiffs' allegations suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States." *Id.* It remanded for jurisdictional discovery into "Dallah Avco's knowledge regarding al Bayoumi's activities." *Id.*

On remand, plaintiffs served 56 separate document requests. Mot. Ex. D. Several of those requests legitimately sought information relating to Al-Bayoumi. Many, however, did not. Request No. 39, for example, called for "all documents governing, describing, detailing or otherwise relating to any relationship between Dallah Avco and the Kingdom of Saudi Arabia." *Id.* As a government contractor, Dallah Avco would presumably have **millions** of pages of documents responsive to that request.

With respect to the requests that related to Al-Bayoumi, Dallah Avco confronted another problem. Those documents were covered by confidentiality obligations in Dallah Avco's ANSS contracts with the PCA, and production could potentially expose Dallah Avco or its officers to criminal penalties under Saudi law. Yamani Decl. ¶ 11 & Exs. 1-2. Dallah Avco therefore objected to production while it sought to persuade the PCA to waive confidentiality. Ultimately, in September 2014, the PCA authorized Dallah Avco to produce the documents. *Id.* ¶ 12 & Ex. 6.

*Dallah Avco's Document Search*

Dallah Avco conducted a thorough and comprehensive search for documents relating to Omar Al-Bayoumi. First, it identified custodians of potentially relevant files. Yamani Decl. ¶ 17. It determined that such files would be located in two places: Dallah Tower, its corporate headquarters in Jeddah; and Dallah City, in an offsite warehouse. *Id.* ¶ 19.

2

With respect to Dallah Tower, Dallah Avco identified relevant custodians and retrieved and searched potentially responsive files. Yamani Decl. ¶¶20-27. Counsel traveled to Jeddah in April 2015 to interview custodians to ensure all files had been searched. *Id.* ¶18.

Searching the Dallah City files proved much more difficult. After the last ANSS contract expired in 2005, most of the company's ANSS files were moved to an offsite storage facility on the outskirts of Jeddah called Dallah City. Yamani Decl. ¶¶33-34. Those files fell into two categories. Some were ANSS employee files – essentially, the human resources files that Dallah Avco maintained for each person assigned to the project. *Id.* ¶39. Others were administrative or financial files that Dallah Avco maintained in connection with the project. *Id.* ¶47.

When Dallah Avco first sent the ANSS files to Dallah City, it expected to be able to retrieve them from storage if necessary. Yamani Decl. ¶34. In the decade since, however, the warehouse became a "dumping area" for other companies. *Id.* Corporate files were left strewn about the warehouse, along with old office furniture, computer hardware, and other trash. *Id.* ¶¶34-36 & Ex. 7 (photographs). As a result, retrieving the ANSS files was a daunting task.

Dallah Avco hired additional staff, ultimately engaging three full-time employees and five temporary laborers. Yamani Decl. ¶38. By December 2014, the ANSS employee files had been located and retrieved. *Id.* ¶39. Dallah Avco quickly located Al-Bayoumi's employee file (about 350 pages) and produced it in January 2015. *Id.* ¶40.

Dallah Avco next set about searching the remaining ANSS employee files, just in case they also happened to contain documents relating to Omar Al-Bayoumi. At a cost of over $200,000, Dallah Avco hired a vendor to scan each file to allow for electronic searching – a task complicated by staples, oddly sized pages, and other impediments. Yamani Decl. ¶¶41-43 & Ex. 8. Ultimately, the vendor assigned two seven-employee shifts to the scanning project. *Id.* ¶43. Those efforts proved relatively pointless: Apart from Al-Bayoumi's own employee file, Dallah Avco located only a single responsive document. *Id.* ¶¶45-46.

The administrative and financial ANSS files proved even more challenging. Those files consisted of more than 290 boxes containing as many as 3 million pages of documents. Yamani Decl. ¶48. During April and May 2015, Dallah Avco had approximately 20 people working across two shifts from 10 a.m. to 10 p.m. each workday to review the documents. *Id.* ¶51. That labor-intensive search yielded just 30 pages of responsive documents. *Id.* ¶52.

### *The Meet and Confer Process*

After Dallah Avco notified plaintiffs that it had completed production, plaintiffs contacted Dallah Avco on June 16, 2015 to schedule a meet and confer call. Kry Decl. Ex. 2. Dallah Avco promptly proposed dates. *Id.* Plaintiffs, however, failed to respond for nearly ***six months***. Finally, on December 11, 2015, plaintiffs proposed a call for early January, just weeks before the January 22 deadline for their motion to compel. Kry Decl. Ex. 3.

Notwithstanding the last-minute nature of that request, Dallah Avco addressed many of plaintiffs' concerns. Dallah Avco identified numerous previously produced documents that

3

plaintiffs claimed to be missing. Kry Decl. Ex. 5. It produced a copy of the cover of Al-Bayoumi's employee file. Kry Decl. Ex. 9 at 2. In an effort to compromise, Dallah Avco also produced several categories of documents despite its objection to discovery unrelated to Al-Bayoumi. It produced a random sample of 31 employee files so plaintiffs could compare them to Al-Bayoumi's. *Id.* at 1. It searched the ANSS employee files for other individuals seconded by the PCA, and produced the small number of files located. Kry Decl. Ex. 10 at 1. It produced documents relating to job descriptions for the titles that Al-Bayoumi held. *Id.* And it searched the ANSS employee files for references to Fahad Al-Thumairy or Osama Basnan and found none. Kry Decl. Ex. 9 at 1.

On February 8, 2016, plaintiffs filed their motion to compel. Dkt. 3211.

## ARGUMENT

### I. Dallah Avco Produced All Non-Privileged Documents Relating to Omar Al-Bayoumi That It Located Through a Comprehensive Search

Much of plaintiffs' motion seeks documents that relate to Omar Al-Bayoumi. Dallah Avco agrees that those requests are within the legitimate scope of discovery. But that portion of the motion should be denied for the simple reason that plaintiffs cannot show that Dallah Avco has anything left to produce. Dallah Avco conducted a reasonable – indeed, extraordinarily thorough – search, and it produced whatever non-privileged documents it found.

To comply with discovery obligations, "***reasonable*** efforts must be made to search those locations in which responsive documents are ***likely*** to be found." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 2109472, at *2 (S.D.N.Y. July 20, 2006) (emphasis added). "[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). A reasonable search typically includes "identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation." *Id.*; *see also In re Vitamin C Antitrust Litig.*, Nos. 06-MD-1738, 05-cv-0453, 2013 WL 504257, at *10 (E.D.N.Y. Feb. 8, 2013). That is precisely what Dallah Avco did here. Yamani Decl. ¶¶ 13-55.

Plaintiffs effectively ask this Court to order Dallah Avco to produce documents that it does not have and could not locate despite a diligent search. As this Court has observed, however, "the Court cannot compel production of what does not exist." *Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, No. 99 Civ. 1330, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000); *see also Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) (denying motion to compel where responding party "proffered . . . affidavits . . . to establish that these documents either do not exist, exist but were not located, or exist and were already produced"); *Guillory v. Skelly*, No. 12-cv-847, 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) ("An attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document.").

Nor have plaintiffs cast any doubt on the adequacy of Dallah Avco's search. "It is up to the party seeking to compel production to 'cast doubt' on the responding party's representation that they have conducted a reasonable and adequate search for responsive documents." *A.V.E.L.A., Inc. v. Estate of Monroe*, No. 12 Civ. 4828, 2014 WL 1408488, at *3 (S.D.N.Y. Apr. 11, 2014). Plaintiffs have not met that burden. They identify various documents that, they say, ought to have been produced but were not. But in several instances, Dallah Avco *did* produce the documents. And in the others, plaintiffs provide no reason to think that Dallah Avco actually has the documents they seek.

### A.     Allegedly Missing Omar Al-Bayoumi Documents

Plaintiffs' ***very first example*** of a supposedly missing document is an explanation for why Dallah Avco wrote the PCA on April 7, 1999, requesting that Al-Bayoumi's secondment be extended despite having told the PCA on April 4 that it did not want to renew the secondment. Mot. 2. But in fact ***Dallah Avco produced that document multiple times***. On April 7, 1999, the PCA wrote Dallah Avco, referenced the earlier April 4 letter, and directed Dallah Avco to "renew the Secondment of [Al-Bayoumi] to another period of one year," while noting the need for "a letter to be issued by the Company directed to the Presidency in this respect . . . in order to complete the Secondment Procedures Arrangements, as per Law." Yamani Decl. ¶59 & Ex. 9. Dallah Avco's April 7 letter was obviously sent in response to that directive. Dallah Avco produced copies of the PCA's April 7, 1999 letter multiple times over a year ago. Yamani Decl. ¶59 & n.1 & Ex. 9. Plaintiffs simply ignore the document.[1]

That document is highly relevant for a number of reasons. For one thing, the fact that plaintiffs' ***lead example*** of an allegedly missing document is verifiably false speaks volumes about the credibility of their accusations. That plaintiffs evidently did not carefully review the documents that Dallah Avco did produce suggests their complaints about the adequacy of Dallah Avco's production should be taken with a grain of salt. Second, the document underscores the inadequacy of plaintiffs' meet and confer efforts. Plaintiffs never mentioned this issue even once before filing their motion to compel. Kry Decl. ¶14. Had they done so, Dallah Avco easily could have pointed this document out. Finally, the document strongly supports Dallah Avco's case on the merits: It confirms that Dallah Avco had no control over Al-Bayoumi's activities.

Plaintiffs' second complaint is that Dallah Avco did not produce "the Ministry of Defense and Aviation's official response to the April 17, 1999 extension request from the PCA" as well as other "requests the PCA sent to the Ministry seeking an extension to Bayoumi's secondment" and "authorizations received from the Deputy Minister in response to those requests." Mot. 2-3. But those are communications ***between two Saudi government agencies*** – the PCA and Ministry of Defense – ***not*** communications with Dallah Avco. Although Dallah Avco might sometimes come into possession of internal government correspondence, plaintiffs offer no reason to think that happened here. Dallah Avco searched for precisely that type of

---

[1] Plaintiffs' refusal to acknowledge the document is particularly baffling given that ***plaintiffs themselves submitted a copy as Exhibit S to their motion*** in connection with an unrelated dispute over whether Al-Bayoumi's employee number is 50040 or 50060. Mot. 9 & Ex. S.

document and did not find these items – although it found numerous *other* documents related to Al-Bayoumi's secondment, confirming the adequacy of its search.  Yamani Decl. ¶61 & n.2.

### B. Omar Al-Bayoumi's Employee File

Plaintiffs also complain about the production of Al-Bayoumi's ANSS employee file. They speculate on the one hand that there *was no* employee file and that Dallah Avco just "thr[ew] together [documents] to create the appearance of a . . . file" – but then promptly make the inconsistent (but equally speculative) claim that there are *multiple* files and that Dallah Avco produced only one.  Mot. 8-9.  None of those conspiracy theories has any basis in fact.  The first thing Dallah Avco did when it retrieved the ANSS employee files from Dallah City was to locate Al-Bayoumi's file and produce all of its non-privileged contents.  Yamani Decl. ¶62.

That Al-Bayoumi's file was not maintained in chronological order (Mot. 9) hardly proves there *was no* employee file.  The accusation that Dallah Avco "thr[ew] together [documents] to create the appearance of a so-called employee file" is a serious one, and if plaintiffs had any evidence to back it up, they should have presented it.  Nor do plaintiffs point to any evidence that there are multiple files.  Yamani Decl. ¶68.  The claim that Al-Bayoumi had two different employee numbers (Mot. 9) is just a product of messy handwriting.  *Id.* ¶69 & Mot. Ex. S.[2]

Plaintiffs complain that documents are "noticeably absent" from the file, such as "Bayoumi's personal information, copies of Bayoumi's passport or visa, job title and description, and payroll records," as well as "employee evaluations."  Mot. 9-10.  But Dallah Avco produced numerous documents within those categories, including Al-Bayoumi's social security card, medical enrollment form, and family information; numerous payroll records; and extensive documentation about his job position.  Yamani Decl. ¶65 & n.3 & Exs. 12-14.  To the extent certain records are absent – such as employee evaluations and a passport – plaintiffs never explain why the absence is "noticeable."  Dallah Avco did not supervise or direct Al-Bayoumi's work.  It merely performed payroll processing and related administrative services.  *Id.* ¶¶65-66.  Given the limited nature of that role, it is unsurprising that Dallah Avco's files would not contain every conceivable document related to Al-Bayoumi.

### C. More Allegedly Missing Al-Bayoumi Documents

Plaintiffs complain that Dallah Avco produced "very little documentation" relating to "Bayoumi's alleged work in the United States" or "educational studies."  Mot. 10.  But Dallah Avco searched for those documents and produced whatever it could find.  Yamani Decl. ¶¶71-72.  Dallah Avco did not direct or supervise Al-Bayoumi's work or educational studies.  *Id.* Plaintiffs' demand for documents that "provided the basis for the representations made" in two *PCA* documents about Al-Bayoumi's studies (Mot. 10) makes particularly little sense.  Plaintiffs do not explain why Dallah Avco would have support for statements *by PCA officials*.

---

[2] Plaintiffs complain that Dallah Avco did not produce a copy of the cover of Al-Bayoumi's file.  Mot. 9.  Plaintiffs never mentioned that issue before filing their motion to compel.  Kry Decl. ¶15.  On March 4, 2016, Dallah Avco produced a photograph of the file jacket, labeled with Omar Al-Bayoumi's ANSS employee number.  Yamani Decl. ¶64.

6

Plaintiffs fault the absence of "records relating to the [Saudi Ministry of Civil Service's] review and approval of Bayoumi's secondment." Mot. 10-11. Dallah Avco looked for those documents but did not find any. Yamani Decl. ¶74. To the extent the Ministry reviewed secondment decisions, Dallah Avco was not involved. *Id.* Finally, plaintiffs demand "communications between Dallah Avco and the Saudi Ministry of Islamic Affairs, the Saudi Royal Embassy in Washington, D.C., and the Saudi Consulate in Los Angeles." Mot. 11. Dallah Avco searched for those documents too. Yamani Decl. ¶75.[3]

## II. The Court Should Not Order Dallah Avco To Search for Documents Unrelated to Omar Al-Bayoumi

Dallah Avco conducted an extensive search for documents related to Al-Bayoumi – including documents that did not specifically reference him by name or employee number. Yamani Decl. ¶57. Several of plaintiffs' requests, however, seek documents with no relation to Al-Bayoumi – or at best, a highly attenuated one. Those requests should be denied. They exceed the Second Circuit's mandate and the legitimate scope of jurisdictional discovery. And they are unduly burdensome in relation to their likelihood of identifying probative evidence – particularly given the efforts Dallah Avco has made so far.

### A. Plaintiffs' Demands Exceed the Second Circuit's Mandate and Limits of Jurisdictional Discovery, and Would Be Unduly Burdensome

The Second Circuit remanded this case for jurisdictional discovery on a single narrow theory. "[P]laintiffs' allegations," the court held, "suggest that Dallah Avco may have directed its activities, ***related to Bayoumi's cover employment***, toward the United States, although questions about Dallah Avco's ***knowledge regarding al Bayoumi's activities*** remain." 714 F.3d at 679 (emphasis added). This Court "must follow the mandate issued by an appellate court." *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015). The Second Circuit's mandate was expressly limited to discovery concerning Al-Bayoumi.

Even apart from the mandate, jurisdictional discovery is supposed to be narrow. Jurisdictional discovery "must . . . be 'limited to the essentials necessary to determining the preliminary question of jurisdiction.'" *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002); *see also Chong v. Healthtronics, Inc.*, No. 06-cv-1287, 2007 WL 1836831, at *8 (E.D.N.Y. June 20, 2007) (discovery "limited to the facts necessary to establish . . . jurisdiction"). Courts routinely deny discovery requests that stray beyond those bounds. *See, e.g.*, *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606, 2010 WL 2593923, at *1 (S.D.N.Y. June 22, 2010) (denying motion to compel where "discovery sought by the plaintiffs stray[ed] beyond the[] bounds" of jurisdictional discovery); *City of New York v.*

---

[3] Plaintiffs' motion is unclear whether they want Dallah Avco to search for ***any*** communications with the embassy, consulate, or Ministry of Islamic Affairs, or only those related to Al-Bayoumi. Mot. 11. Plaintiffs' January 5, 2016 letter sought only the latter. Mot. Ex. B Nos. 9 & 10. Searching for communications ***unrelated*** to Al-Bayoumi would be unduly burdensome and beyond the scope of the mandate and jurisdictional discovery.

*Permanent Mission of India to the United Nations*, No. 03 Civ. 3256, 2004 WL 2710040, at *4-5 (S.D.N.Y. Nov. 23, 2004) (Maas, M.J.) (denying motion where discovery "plainly is beyond the scope of the limited jurisdictional discovery" and "clearly is not necessary in order to resolve the jurisdictional question"); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, No. 12 Civ. 3470, 2013 WL 5769915, at *2 (S.D.N.Y. Oct. 24, 2013); *Vitamin C Antitrust Litig.*, 2013 WL 504257, at *10.

Finally, the Court should deny discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts routinely rely on that limitation to deny overbroad requests. *See, e.g., Bank of New York*, 2013 WL 5769915, at *2 (denying discovery where party was unable to "explain[ ] why the substantial burden alleged to be associated with the production of th[e] materials is outweighed by their probative value"); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016) (denying discovery where party was "seeking access to a wide array of documents . . . that have very, very little, if anything, to do with plaintiff's claims"); *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978, 2000 WL 1538003, at *1 (S.D.N.Y. Oct. 17, 2000) (ruling that the "burden and expense of retrieving complaints against clearing brokers other than [the broker at issue] and his affiliated entities outweighs the likely benefit of the information").

Despite its objections, Dallah Avco produced several categories of documents unrelated to Al-Bayoumi in an effort to compromise. Yamani Decl. ¶93; Kry Decl. Exs. 5, 7, 9, 10. But plaintiffs want more. Their demands run afoul of the foregoing principles and should be denied.

Ercan Engineering. Plaintiffs first seek documents relating to Ercan Engineering, a vendor to the ANSS project based in the United States. Mot. 5; Yamani Decl. ¶77. As plaintiffs note, a U.S. government investigative report – author and source unknown – asserts that **the PCA** asked Ercan to pay Al-Bayoumi's expenses in 1995 and, when Ercan refused, stated that "its contract may be jeopardized as a result." Mot. Ex. I at 2. If true, Dallah Avco has no knowledge of the incident. Yamani Decl. ¶78. Dallah Avco conducted a thorough search for documents relating to that allegation – or any other documents showing a connection between Ercan and Al-Bayoumi – and found none. *Id.*

Plaintiffs nevertheless demand that Dallah Avco produce documents relating to Ercan, even if they do ***not*** relate to Al-Bayoumi. That request is overbroad and runs afoul of the Second Circuit's mandate and the limits on jurisdictional discovery. Moreover, to the extent plaintiffs' demand would require Dallah Avco to re-search the Dallah City files or any other files that exist only in paper form, it would impose undue burdens that far exceed the likelihood of yielding probative evidence. Documents relating to ***Al-Bayoumi*** and Ercan may be a legitimate object of discovery. But documents that relate ***solely to Ercan*** are not.[4]

---

[4] Mindful of plaintiffs' document requests, Dallah Avco did segregate two files of Ercan documents it encountered during its Dallah City search. Kry Decl. Ex. 10 at 2. Those files primarily consist of financial records showing that the PCA directed Dallah Avco to reimburse Ercan for certain ANSS project expenses. *Id.*; Yamani Decl. ¶77 & Ex. 15. Production of those previously collected Ercan documents would of course not be unduly burdensome, although Dallah Avco still objects on the other grounds above.

Other Seconded Employees and Employees in the United States.  Plaintiffs next seek documents relating to (1) Saudi government employees seconded to Dallah Avco; and (2) Dallah Avco contractors or employees in the United States.  Mot. 6.

With respect to the first category, Dallah Avco produced extensive documents concerning *Al-Bayoumi's* secondment.  Yamani Decl. ¶61 n.2.  In an effort to compromise, it also conducted a thorough search of the ANSS employee files for secondments of any *other* government employees and produced three additional employee files.  *Id.* ¶79; Kry Decl. Ex. 10 at 1.  Dallah Avco also produced a random sample of 31 employee files at plaintiffs' request.  Yamani Decl. ¶93; Kry Decl. Ex. 9 at 1.

Those documents provide a more than sufficient basis to assess Al-Bayoumi's secondment, the secondments of other ANSS project employees, and the contrast (if any) with project employees who were not seconded.  Plaintiffs offer no reason to believe that additional discovery would add anything.  Further discovery would not only exceed the Second Circuit's mandate and limits of jurisdictional discovery but also be extremely burdensome:  Since Dallah Avco has already searched for and produced whatever it could find in the ANSS employee files, plaintiffs are essentially demanding searches for secondments in *other* contracts separate from the ANSS project.  That would be extremely burdensome, as it would involve completely different custodians and files in many cases decades old.  Yamani Decl. ¶80.[5]

As for plaintiffs' other request – for documents relating to Dallah Avco contractors or employees in the United States – plaintiffs fail to make even a threshold showing of relevance.  Even if such persons exist, plaintiffs offer no reason to believe their actions would shed any light on Dallah Avco's relationship *with Omar Al-Bayoumi*, the only subject of the Second Circuit's mandate and legitimate object of jurisdictional discovery.  This request would also be extraordinarily burdensome, as it would require Dallah Avco to locate and review decades of old records concerning unrelated projects in an effort to ascertain the residence of each contractor or employee who ever provided any goods or services to them.  Yamani Decl. ¶81.

Avco Overseas/Textron.  Plaintiffs seek documents relating to Avco Overseas (a.k.a. Textron), another United States based company that provided services to the ANSS project. Mot. 6-7; Yamani Decl. ¶83.  Dallah Avco's document search did identify a small number of

---

[5] Plaintiffs assert that "U.S. intelligence affirms that there were approximately fifty (50) individuals who were being carried on the books at Dallah Avco who were being paid for doing nothing."  Mot. 6.  But "U.S. intelligence" made no such assessment.  The cited documents reflect only statements of unidentified witnesses.  Mot. Ex. I at 3; Mot. Ex. J at 30-31. Meanwhile, plaintiffs cite no support at all for their assertion that "Bayoumi's immediate supervisor notified the company of his failure to appear and argued in favor of terminating his employment" but "Dallah Avco officials immediately dismissed those concerns and affirmed that Bayoumi remain on the payroll."  Mot. 6.  As explained above, Dallah Avco told the PCA in 1999 that it did not want to renew Al-Bayoumi's secondment, but the PCA insisted that he remain.  Yamani Decl. ¶¶59-60.  In any event, none of those allegations provides any basis for discovery into secondments *outside the ANSS project*.

documents relating to Avco Overseas and Al-Bayoumi.  In particular, it appears that in 1994 – while Al-Bayoumi was pursuing studies in the United States but before the PCA seconded him to the ANSS project – the PCA directed Avco Overseas to pay his educational expenses and then charged the expenses to the ANSS project by having Dallah Avco reimburse Avco Overseas. Yamani Decl. ¶84; Mot. Exs. K & L.  Despite a diligent search, Dallah Avco did not identify any subsequent payments from Avco Overseas to Al-Bayoumi or any further connection between the two.  Yamani Decl. ¶¶84-85.

Plaintiffs nevertheless seek production of **all** documents relating to Avco Overseas, even those unrelated to Omar Al-Bayoumi.  That request should be denied for several reasons.  For one thing, plaintiffs never asked for documents relating to Avco Overseas in their document requests.  Mot. Ex. D.  That failure precludes them from moving to compel now.  *See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (authorizing motion to compel only where party "fails to produce documents . . . ***as requested under Rule 34***" (emphasis added)); *Vann v. Fischer*, No. 09 CV 385, 2010 WL 415287, at *2 (W.D.N.Y. Jan. 28, 2010) (denying motion where "plaintiff has never served a document request . . . for the documents sought in the motion").  Plaintiffs' failure to ask for the documents sooner was particularly prejudicial:  Had they done so, Dallah Avco could have segregated documents relating to Avco Overseas that it encountered during its Dallah City search, as it did with Ercan documents.  *See* note 4, *supra*.  Because plaintiffs never made the request, Dallah Avco would essentially have to redo the Dallah City search to locate such documents – an extremely burdensome task.  Yamani Decl. ¶86.[6]

In any event, plaintiffs fail to show that documents relating to Avco Overseas, but ***unrelated*** to Al-Bayoumi, would be sufficiently probative to bring them within the scope of the mandate and legitimate jurisdictional discovery, or to justify the extraordinary burdens involved in redoing the Dallah City search.  As noted, the only evidence of any connection between Avco Overseas and Al-Bayoumi is the payment of certain educational expenses in 1994, ***before*** he was seconded to the ANSS project in 1995 when Dallah Avco began paying his salary, and ***six years*** before the allegations at issue in this case.  There is no reason to think that further discovery into Avco Overseas unrelated to Al-Bayoumi would shed any significant light on plaintiffs' claims given that limited and temporally remote relationship.

<u>September 11th Related Investigations</u>.  Plaintiffs seek documents relating to investigations of Dallah Avco in relation to the September 11th attacks.  Mot. 7.  Contrary to plaintiffs' claim, however, Dallah Avco has not "consistently objected to these requests." *Id.* Dallah Avco searched for documents concerning "'any investigation of Dallah Avco relative to its relationship with Bayoumi'" and produced the non-privileged documents it found – which were several.  Yamani Decl. ¶87 & n.6.  There is no evidence that documents were withheld.

<u>Miscellaneous</u>.  In cursory fashion, plaintiffs seek production of documents relating to Safari Company Ltd., "Out-of-Kingdom" expenses, a purported requirement for a United States office, and various Saudi officials.  Mot. 8.  Plaintiffs, however, make no argument in support of

---

[6] Plaintiffs have no excuse for not asking for these documents sooner.  Their own publicly available FBI reports include a witness statement characterizing Al-Bayoumi as a "'ghost employee' of AVCO Oversees [*sic*]."  Mot. Ex. J. at 30.

10

any of those requests. The requests are therefore waived. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013) (party "waive[s] . . . argument by failing to develop it"); *Lyn v. Inc. Vill. of Hempstead*, No. 03 CV 5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("'Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"). In any event, the requests are improper and should be denied. Yamani Decl. ¶¶ 88-90.

### B.  Any Further Discovery Should Be Limited To Reduce the Undue Burdens

Even if the Court finds additional discovery unrelated to Al-Bayoumi warranted, it should take steps to reduce the burdens. This Court has "discretion to narrow the focus and methods of discovery." *Gucci Am., Inc. v. Rebecca Gold Enters., Inc.*, 802 F. Supp. 1048, 1052 (S.D.N.Y. 1992). It should exercise that discretion here. Dallah Avco has already performed an exhaustive and comprehensive search for all documents relating to Al-Bayoumi – the documents at the heart of this case by any standard. The Court should not order wide-ranging discovery into other topics that are at best indirectly and tangentially relevant without taking appropriate steps to limit the burdens – particularly at this jurisdictional stage.

First, the Court should exclude from any further discovery the millions of pages of documents from Dallah City and the Dallah Tower financial files that exist only in physical form (as opposed to the ANSS employee files that were previously scanned). Dallah Avco already conducted a laborious and time-consuming search of those files for anything related to Omar Al-Bayoumi – a search that involved up to 20 people working across two shifts from 10 a.m. to 10 p.m. but which, apart from the Al-Bayoumi employee file, yielded only a couple dozen pages of responsive documents. Yamani Decl. ¶¶ 22, 51-52. Repeating that onerous manual review process would impose severely disproportionate burdens.

Second, to the extent the Court does order further discovery into Dallah Avco's physical files, it should allow Dallah Avco to comply by making its ANSS files available on-site for plaintiffs to review rather than searching for responsive documents itself. *See, e.g., Jeffries v. Pension Tr. Fund*, No. 99 Civ. 4174, 2004 WL 1048221, *6 n.6 (S.D.N.Y. May 7, 2004) (ordering party seeking production to "assume the responsibility and burden of manually sorting through the individual records to ascertain the relevant information" because "manual review of thousands of individual . . . records" would be "extremely burdensome"); *Clever View Invs., Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) (party "'need only make requested documents available for inspection and copying'"); 8B Wright & Miller, *Federal Practice and Procedure* § 2214 (3d ed. 2016) ("Business records should usually be examined at the place where they are kept and at reasonable hours."). An order requiring plaintiffs to undertake that review is particularly appropriate given that the files are voluminous but appear to contain only an extremely small proportion of responsive documents.

Finally, the Court should require plaintiffs to pay the costs of any further discovery. This Court can shift costs upon a showing of good cause. *Clever View*, 233 F.R.D. at 394. In *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272, 2002 WL 975713 (S.D.N.Y. May 9, 2002), for example, the court ordered cost-shifting where there was only "miniscule evidence" that discovery would yield responsive documents and "the costs of

discovery . . . would be substantial." *Id.* at *7-8. The same is true here: Dallah Avco has already expended enormous amounts of time and resources searching for documents related to Omar Al-Bayoumi. It has also made several productions of documents unrelated to Al-Bayoumi in an effort to compromise. Further searches at this point would be disproportionate.

                                                        Respectfully submitted,

                                                        Robert K. Kry

cc:      all counsel by ECF