UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

*This document relates to:*
All cases

No. 03 MDL 1570 GBD FM

## DECLARATION OF ABDULLAH YAMANI

Pursuant to 28 U.S.C. § 1746, ABDULLAH YAMANI declares as follows:

1.      I am the General Counsel of Dallah Al Baraka Holding Co. ("Dallah Al Baraka"), the ultimate parent company of defendant Dallah Avco Trans Arabia Co., now known as Dallah Trans Arabia ("Dallah Avco"). Dallah Al Baraka's legal department provides legal services to various Dallah subsidiaries, including Dallah Avco. As the head of that department, I am among the individuals responsible for coordinating Dallah Avco's defense of this action. I submit this declaration as corporate representative for Dallah Avco in opposition to plaintiffs' motion to compel, filed on February 8, 2016, to describe the steps Dallah Avco has taken to comply with plaintiffs' discovery demands and to respond to certain assertions made in plaintiffs' motion. The facts contained herein are based on information known to representatives of Dallah Avco acting within the scope of their authority. Nothing herein is intended to disclose any attorney work product or attorney-client privileged communications.

2.      Dallah Avco has made extraordinary efforts to conduct a thorough document search. Even though Dallah Avco maintains it is not subject to the Court's jurisdiction, the company has expended considerable resources to comply with its jurisdictional discovery obligations, often in the face of substantial obstacles.

1

3.      To date, Dallah Avco has produced 20 volumes of documents comprising approximately 10,063 pages.  That page count, however, does not even begin to describe the magnitude of Dallah Avco's efforts.  Dallah Avco has searched through millions of pages of files, most of them retrieved from an offsite storage facility where documents are poorly organized and difficult to locate.  Dallah Avco has reviewed those documents in search of the small fraction that relate to Omar Al-Bayoumi and are therefore potentially relevant to this case.

4.      In the course of those efforts, Dallah Avco has spent substantial sums on vendor charges as well as attorney's fees to its outside U.S. litigation counsel.  And it has devoted many hundreds of hours of time of its in-house attorneys, technical staff, and laborers engaged in the discovery process.  Dallah Avco has made a substantial and good-faith effort to comply with its discovery obligations under U.S. law.

***Dallah Avco's Responses and Objections to Plaintiffs' Discovery Requests***

5.      Dallah Avco is a contractor that provides logistics support services, including ground logistics support for airports.  Many of its contracts have been with the government of Saudi Arabia.  In the late-1980s, Dallah Avco entered into a contract to provide services for the Presidency of Civil Aviation ("PCA"), now known as the General Authority of Civil Aviation ("GACA").  At the time, the PCA was an agency within the Saudi Ministry of Defense.

6.      One of Dallah Avco's contracts with the PCA concerned a project known as the Air Navigation System Support ("ANSS") project.  Pursuant to that contract, Dallah Avco agreed to provide manpower procurement, payroll processing, and related personnel administrative services for the PCA.  Dallah Avco would help identify candidates for employment as directed by the PCA and would handle salary payments for more than 1,400 project employees as directed by the PCA.  But Dallah Avco did not make any hiring or firing decisions and did not direct, supervise, or manage the work of ANSS project employees.  The

PCA renewed Dallah Avco's ANSS contract repeatedly until 2005, when it awarded the contract to a different, independent company, Safari Company Limited.

7.     I understand that plaintiffs' allegations against Dallah Avco in this suit relate to Omar Al-Bayoumi, a Saudi national who allegedly met with two of the 9/11 hijackers when they arrived in San Diego in 2000.  I understand that Mr. Al-Bayoumi was a longtime employee of the PCA who went to the United States to pursue higher education studies in or around 1994.  I further understand that, at a later time, in 1995, the PCA seconded Mr. Al-Bayoumi to the ANSS project, and that Mr. Al-Bayoumi continued to pursue educational studies in the United States during his secondment.  As an ANSS project employee, Mr. Al-Bayoumi was one of the individuals for whom Dallah Avco processed salary payments pursuant to its ANSS contract with the PCA.

8.     Dallah Avco was initially named as a defendant in this litigation in 2003.  The district court dismissed the claims against Dallah Avco on June 17, 2010.  On April 16, 2013, however, the U.S. Court of Appeals for the Second Circuit remanded for jurisdictional discovery concerning Dallah Avco's knowledge of Al-Bayoumi's activities in the United States.

9.     Plaintiffs then served jurisdictional discovery demands – a total of 56 document requests – on August 22, 2013.  Some of the requests related to Omar Al-Bayoumi.  Others, however, sought a broad range of documents that extended far beyond that topic.

10.     On November 11, 2013, Dallah Avco served its written responses and objections. Dallah Avco objected to some requests on the ground that they sought information not related to Omar Al-Bayoumi and were therefore beyond the scope of jurisdictional discovery.

11.     With respect to the other requests, Dallah Avco objected to producing documents on the ground that disclosure was prohibited by its ANSS contracts and Saudi criminal law.

Dallah Avco's most recent ANSS contract, for example, provided that "[t]he Contractor shall not, without the prior written approval of the Government, disclose to any third party any information developed or obtained by the Contractor in the performance of the Contract." Ex. 1. Dallah Avco understood that disclosure of such confidential information without prior PCA approval would violate Saudi Royal Decree No. M/35, the Penal Law on Dissemination and Disclosure of Classified Information. Ex. 2. Since Dallah Avco's only connection to Omar Al-Bayoumi was through the ANSS project, the substantial majority of Dallah Avco's documents relating to Mr. Al-Bayoumi were covered by those provisions. Accordingly, Dallah Avco withheld the documents and listed them on a privilege log.

12.    Dallah Avco nonetheless made good-faith efforts to seek approval to disclose the documents. On January 13, 2014, Dallah Avco wrote to the GACA to request authorization. Ex. 3. After several months passed, on April 9, 2014, Dallah Avco sent a follow-up letter. Ex. 4. On April 29, 2014, the GACA acknowledged receipt and advised that it had sought guidance from the Saudi Ministry of Foreign Affairs. Ex. 5. Finally, on September 4, 2014, the GACA notified Dallah Avco that it was authorizing production. Ex. 6.

### Dallah Avco's Identification of Custodians and Document Search in Dallah Tower

13.    At the same time Dallah Avco was seeking authorization to produce documents in response to plaintiffs' requests, Dallah Avco was taking steps to ensure that it had undertaken a thorough and diligent search for documents relating to Omar Al-Bayoumi.

14.    The documents initially listed on Dallah Avco's privilege log had been located years earlier. In particular, I understand that, in or around the end of 2002 or early 2003, Dallah Avco had collected documents relating to Omar Al-Bayoumi. That process, I understand, was coordinated by Fareed Bogary, the Dallah Avco employee primarily responsible for Dallah Avco's performance under the ANSS contract at the time. The documents that resulted from that

4

earlier collection effort were compiled into a file that has been maintained by the Dallah Al Baraka legal department on behalf of Dallah Avco.

15.     I understand that, on February 14, 2014, the plaintiffs' lawyers discussed Dallah Avco's discovery responses with our U.S. lawyers and requested information about the search that Dallah Avco had conducted to locate the documents on its privilege log.  Unfortunately, Dallah Avco was unable to provide that information.  Fareed Bogary had left the company many years earlier, and no one else was able to describe what steps he had taken over a decade earlier to identify and collect the Omar Al-Bayoumi documents in the Dallah Al Baraka legal file.

16.     Accordingly, Dallah Avco determined that it should undertake a new search for documents relating to Omar Al-Bayoumi so that it could ensure its search complied with the requirements of U.S. law.  Over the following months, in coordination with our U.S. counsel, Dallah Avco identified relevant document custodians, collected documents, and reviewed those documents to identify any that related to Omar Al-Bayoumi.  That process began during the spring and summer of 2014 but accelerated after the GACA authorized Dallah Avco to produce documents in September 2014.

17.     In coordination with our U.S. counsel, Dallah Avco identified eight potential document custodians still employed within the Dallah group of companies who might have documents relating to Omar Al-Bayoumi: Alawi Kamel, Baderaldin Kasamallah, Ahmed Niazi, Osama S. Kamel, Riaz M. Khan, Jabir Khalifa, the Dallah Al Baraka public relations department, and the Dallah Al Baraka legal department.  Dallah Avco also identified four potential document custodians who were former Dallah employees but were no longer with the group: Samir Magboul, Fareed Bogary, Anas Habis, and Hisham Mallasi.

18.     For each custodian, in consultation with our U.S. counsel, Dallah Avco made internal inquiries to determine where that individual's files were located and what steps should be taken to search the documents.  In addition, in early April 2015, our U.S. counsel travelled to Jeddah, Saudi Arabia, and personally met with each of the six individual custodians listed above who were still employed within the Dallah group of companies.  Our U.S. counsel interviewed each of those custodians to confirm that all potentially responsive files had been identified and searched.

19.     That process revealed that documents for each custodian were stored in one of two locations.  Some were located at Dallah Tower, the office tower in Jeddah where Dallah Al Baraka and its subsidiaries such as Dallah Avco maintain their corporate headquarters.  Others were located in an offsite warehouse in Dallah City, a housing compound in the outskirts of Jeddah, Saudi Arabia.  The details of what Dallah Avco determined for each custodian are set forth below.

20.     **Alawi Kamel** is the Chairman of Dallah Group, the immediate parent of Dallah Avco within the Dallah Al Baraka group of companies.  Dallah Avco's investigation determined that any files Mr. Kamel had relating to the ANSS project were maintained by other custodians, namely Baderaldin Kasamallah or Hisham Mallasi.  Dallah Avco also learned that many of those files had been transferred to Dallah City in or around 2005 when Dallah Avco ceased work on the ANSS project.  Dallah Avco's search of the Dallah City documents is described further below.

21.     **Baderaldin Kasamallah** served as Mr. Kamel's office manager and administrative assistant during Dallah Avco's involvement with the ANSS project.  Dallah Avco's investigation determined that Mr. Kasamallah maintained some of Mr. Kamel's files in

his own office at Dallah Tower.  Those files were located and reviewed in 2014.  That review identified approximately 100 pages of responsive and non-privileged material, which were produced to plaintiffs.   Subsequently, Dallah Avco identified additional general and administrative files in Mr. Kasamallah's possession at Dallah Tower in or around February 2015.  Those files were likewise reviewed, but only one further responsive document was found and produced.  Dallah Avco's investigation determined that additional responsive documents Mr. Kasamallah may have possessed would have been transferred to Dallah City with the ANSS project files in or around 2005.

22.   **Ahmed Niazi** was the manager of the accounts department for Dallah Avco. Dallah Avco's investigation determined that Mr. Niazi had documents in his possession at Dallah Tower relating to the ANSS project.  Those documents were located and reviewed in late 2014, and approximately 200 pages of responsive and non-privileged documents were produced to plaintiffs.  In addition, following our U.S. counsel's interview with Mr. Niazi in April 2015, a large number of additional financial and administrative ANSS project files were located in Dallah Tower storage.   Those files were found to comprise about 70 boxes, 25 of them duplicates, each containing about 2,000 to 10,000 pages.  Those files were manually reviewed in April and May 2015, but no additional responsive documents were identified.

23.   **Osama Kamel** served as assistant director of the ANSS project from 1995 until 2004.  He currently works in Dallah Food Services, another subsidiary within Dallah Al Baraka. Dallah Avco's investigation determined that Mr. Kamel no longer maintained custody of any ANSS project files.

24.   **Riaz Khan** currently works for Dallah Commercial Company, another Dallah Al Baraka subsidiary.  Previously, Mr. Khan was the Director of Manpower Services for the ANSS

project.  Dallah Avco's investigation determined that any ANSS project files with which he may have been associated were moved to Dallah City in or around 2005.

25.    **Jabir Khalifa** was the Recruitment Manager for Dallah Group.  In that capacity, Mr. Khalifa had custody of certain ANSS project files relating to the overseas recruitment of workers for the ANSS project.  Based on the nature of Mr. Khalifa's responsibilities for the ANSS project, Dallah Avco determined that he would not have had custody of any documents relating to Omar Al-Bayoumi.

26.    **Dallah Al Baraka Public Relations Department.**  Dallah Avco's investigation determined that, following the 9/11 attacks, Dallah Avco provided various documents relating to Omar Al-Bayoumi to the public relations department of its parent company, Dallah Al Baraka. Those files were obtained and reviewed, and approximately 200 to 300 pages were produced.

27.    **Dallah Al Baraka Legal Department.**  As explained above, since 2002 or 2003, the Dallah Al Baraka legal department has maintained custody of a file of documents relating to Omar Al-Bayoumi.  Those documents were produced promptly after the GACA authorized production of the materials in September 2014.  Dallah Avco also investigated whether the Dallah Al Baraka legal department had any additional non-privileged documents relating to Omar Al-Bayoumi and concluded that it did not.

28.    **Samir Magboul** served as Dallah Avco's Director responsible for the ANSS project contract until around 1996.  He is no longer employed within the Dallah Al Baraka group.  Dallah Avco's investigation determined that responsive files Mr. Magboul may have had would have been transferred to his successor, Fareed Bogary.

29.    **Fareed Bogary** served as Dallah Avco's Director responsible for the ANSS project contract from Mr. Magboul's departure until the PCA reassigned the contract in 2005.

He is no longer employed within the Dallah Al Baraka group. Dallah Avco's investigation determined that ANSS project files formerly in Mr. Bogary's custody would have been transferred to Dallah City in or around 2005 along with other ANSS project files.

30. **Anas Habis** formerly served as a senior officer of Dallah Group. He is no longer employed within the Dallah Al Baraka group of companies. Dallah Avco's investigation determined that any ANSS project files that Mr. Habis may have had would have been transferred to Dallah City in or around 2005 along with other ANSS project files.

31. **Hisham Mallasi** was formerly the finance manager for Dallah Group. He is no longer employed within the Dallah Al Baraka group of companies. Dallah Avco's investigation determined that any ANSS project files that Mr. Mallasi may have had would have been transferred to Mr. Niazi upon his departure.

*Dallah Avco's Document Search in Dallah City*

32. As explained above, Dallah Avco's investigation in 2014 determined that many potentially responsive files were located in a warehouse in Dallah City. Dallah Avco's efforts to locate and retrieve files from that facility posed special challenges.

33. Dallah City is a compound of buildings owned by Dallah Al Baraka located in the outskirts of Jeddah. During the 1990s, Dallah Al Baraka began to run out of storage space in Dallah Tower in which to store files of its subsidiaries. As a result, in or around 1997, Dallah Group built a warehouse at Dallah City to hold those files.

34. When Dallah Avco stopped working on the ANSS contract in 2005, the ANSS project files were put in boxes and transferred to the warehouse in Dallah City. At the time, Dallah Avco expected to be able to retrieve those files from storage if necessary. As time passed, however, various companies within the Dallah Al Baraka group of companies began to leave files haphazardly throughout the warehouse. In addition, companies began using the

warehouse as a "dumping area" for old office furniture, computer hardware, and the like. As a result, the ANSS files became buried among heaps of disorganized papers and other unwanted junk, making them significantly harder to retrieve.

35.     To make things worse, the Dallah City warehouse is not air conditioned, and the poor air quality due to dust and old files makes it necessary for workers to wear breathing masks if they spend any extended period of time within the building. Those conditions were a further obstacle to efforts to retrieve files from the building.

36.     During our U.S. counsel's trip to Jeddah in April 2015, our U.S. counsel visited the Dallah City warehouse to physically inspect the conditions. Attached as Exhibit 7 are photographs that our U.S. counsel took of the Dallah City warehouse on April 6, 2015. Those photographs accurately depict the conditions in the warehouse in 2014 and 2015.

37.     Given that state of disarray, locating and retrieving files from the Dallah City warehouse was a daunting task. During the summer of 2014, Dallah Avco formed a committee that I chaired to determine how best to go about retrieving the ANSS files from the dumping area. That investigation concluded that retrieving the files would essentially be impossible with Dallah Avco's existing staff and financial resources.

38.     Nonetheless, Dallah Avco persisted in its efforts to retrieve the files. Dallah Avco sought an additional allocation of budget authority from its parent company to fund the retrieval project and sought additional full-time staff specifically dedicated to work on the project. Dallah Avco hired manual laborers to dig out and remove boxes of ANSS files. Dallah Avco also secured additional space to house the ANSS files removed from the warehouse. By December 2014, Dallah Avco had three full-time employees and five temporary laborers sorting through boxes in the Dallah City dumping area to locate and retrieve ANSS files.

39.     By the end of December 2014, Dallah Avco had retrieved the ANSS project "employee files" from the Dallah City warehouse.  Those files consisted of Dallah Avco's records for the employees that were hired to work on the ANSS project.  In all, Dallah Avco retrieved 1,411 individual employee files, some containing nearly 1,000 pages.  In total, those files comprised approximately 270,000 pages of documents.

40.     That same month, Dallah Avco also succeeded in locating Omar Al-Bayoumi's employee file from among the ANSS project files that had been retrieved from Dallah City.  Dallah Avco scanned the contents of that file and sent them to our U.S. counsel for review.  The file was reviewed and its non-privileged contents – approximately 350 pages – were produced to plaintiffs in January 2015.

41.     To review the remaining ANSS employee files retrieved from Dallah City, Dallah Avco retained a vendor, Maghrabi Information Technology, in early 2015 to scan the files so they could be searched by Optical Character Recognition ("OCR").  As reflected in the invoices attached as Exhibit 8, Dallah Avco paid the vendor a total of 819,443 SAR (equivalent to about $221,000 USD) to scan the files that had been retrieved from Dallah City by that point.

42.     Pursuant to that engagement, the vendor manually scanned each of the 270,000 pages of employee files.  That proved to be a very painstaking task as many documents had to be manually un-stapled or otherwise separated, were oddly sized, or presented other problems.

43.     As scanning proceeded during April 2015, Dallah Avco agreed to pay the vendor additional charges to increase the number of employees assigned to the project so it could be completed sooner.  Ultimately, the vendor had approximately 14 employees working in two shifts to organize and scan the ANSS project employee files.

44.     The vendor completed scanning the ANSS project employee files around the end of April 2015.  Once scanning was complete, the vendor's scan of the Omar Al-Bayoumi file was checked against the version previously produced, and certain additional pages were produced.  Those additional pages consisted primarily of color copies of documents previously produced in black and white, and duplicate pages of carbon-copy documents.

45.     Dallah Avco then sought to determine whether any of the employee files other than Omar Al-Bayoumi's file contained documents relating to Omar Al-Bayoumi.  Our U.S. counsel instructed the vendor regarding English search terms to apply to the entire data set. Those search terms included several different translations and transliterations of Mr. Al-Bayoumi's name.  Apart from the documents in Omar Al-Bayoumi's employee file, Dallah Avco located only a single additional document in the remaining employee files.

46.     Dallah Avco also sought to run Arabic search terms against the employee files that had been scanned to identify any documents that might relate to Omar Al-Bayoumi but in Arabic rather than English.  Because of a software license issue, Dallah Avco retained a separate vendor in the United States to provide those Arabic OCR services in May 2015.  Once again, our U.S. counsel instructed the vendor regarding Arabic search terms to apply to that data, which included several different spellings of Mr. Al-Bayoumi's name in Arabic.  That search returned several results but, on review, all the results were found to be either false positives or already produced as part of Al-Bayoumi's employee file.

47.     In the course of reviewing the documents retrieved from Dallah City in late 2014, Dallah Avco discovered that additional files – specifically administrative and financial ANSS files – remained at the Dallah City warehouse and still needed to be retrieved.

48.     Accordingly, in early 2015, Dallah Avco conducted a second search of the Dallah City warehouse to locate and retrieve the remaining files.  That search yielded a very large number of additional files.  Dallah Avco identified approximately 292 boxes of ANSS files, as well as additional ANSS files outside the relevant time period, each with about 2,000 to 10,000 pages of documents – in other words, as many as 3 million pages of additional documents.

49.     Many of those documents were financial records such as invoices, purchase orders, receipts, or similar documents.  Searching those records for documents relating to Omar Al-Bayoumi was like searching for a needle in a haystack:  Although it was possible that some financial records might correspond to transactions involving Mr. Al-Bayoumi, there was no real way to identify those documents other than reviewing them to try to find ones that referred to Mr. Al-Bayoumi (although some files could be excluded as outside the relevant date range).

50.     Based in part on our experience with the vendor scanning the ANSS employee files, Dallah Avco determined that attempting to scan those millions of additional pages would take too long and be too cumbersome, particularly because many of the documents were receipts or other oddly sized documents that would take longer to scan.  Dallah Avco determined that a better approach was to assign a large contingent of personnel to conduct a manual review of the files.

51.     Accordingly, during April and May 2015, Dallah Avco assigned approximately 20 people working across two shifts from 10 a.m. to 10 p.m. each workday to complete review of the remaining Dallah City documents.  Those individuals included both Dallah in-house legal staff and Dallah technical staff working under the legal staff's direction and supervision to review financial and other records.  The review was carried out in coordination with our U.S. counsel regarding the requirements of the search.

52.     Out of those millions of pages, that review identified approximately 30 additional pages of responsive documents.  Those documents were produced to plaintiffs in May 2015.

***Dallah Avco's Search for Electronic Documents***

53.     Dallah Avco also investigated whether any of its document custodians had emails or other electronic files that it needed to produce.

54.     Dallah Avco's investigation determined that it did not have any responsive email data to be searched.  Dallah Avco did not maintain corporate email accounts for its employees during the relevant time period.  When our U.S. counsel came to Jeddah to meet with document custodians in April 2015, the subject of email usage was specifically discussed with each of them.  Dallah Avco concluded that none of its document custodians had any email accounts that might contain potentially responsive documents.

55.     Dallah Avco also investigated whether it had any computerized records or other electronic files from the relevant time period.  Dallah Avco determined that it did have a primitive computerized payroll system during that time period.  Print-outs from that system relating to Omar Al-Bayoumi already existed among Dallah Avco's hard copy documents in the Dallah Al Baraka legal file for Omar Al-Bayoumi and elsewhere, and those printouts were produced to plaintiffs.  In 2015, Dallah Avco made further efforts to locate electronic data from that system.  Dallah Avco obtained a very limited amount of additional data and produced it to plaintiffs.

***Response to Plaintiffs' Motion to Compel – Documents Relating to Omar Al-Bayoumi***

56.     I have reviewed the motion to compel that plaintiffs filed on February 8, 2016. Plaintiffs complain that Dallah Avco has not searched for or produced a variety of categories of documents.  Generally, plaintiffs' complaints fall into two categories: (1) documents that relate to Omar Al-Bayoumi; and (2) documents that do not relate to Omar Al-Bayoumi.

14

57.     With respect to the first category, Dallah Avco conducted a thorough and diligent search for documents, including the specific categories plaintiffs identify.  Dallah Avco did not search only for documents that "expressly" or "directly" related to Omar Al-Bayoumi.  It also searched for and produced documents that related to Omar Al-Bayoumi even though they did not expressly mention him by name – for example, the ANSS project contracts that governed Dallah Avco's responsibilities.

58.     With respect to each category of documents relating to Omar Al-Bayoumi that plaintiffs identify, Dallah Avco has either already produced the documents or determined that it does not have them following a thorough and diligent search.

59.     For example, plaintiffs contend that Dallah Avco did not produce the document that explains the change of position between Dallah Avco's April 4, 1999 letter to the PCA requesting that Omar Al-Bayoumi's secondment not be renewed and Dallah Avco's April 7, 1999 letter requesting renewal.  Motion at 2.  That is incorrect.  On January 28, 2015, Dallah Avco produced the document bates numbered DA001104, a letter from Mohammed Ahmed Al-Salmi, the PCA's Director-General of Airways Engineering, dated 20.12.1419H (April 7, 1999).  That letter, marked "Top Urgent," cites Dallah Avco's April 4 letter and states, "We would like to inform you that the Presidency wants to grant [Omar Al-Bayoumi] a Secondment for a period of one year only, to complete the task [for] which the Presidency approved of his Secondment." Mr. Al-Salmi directs Dallah Avco to "renew the Secondment of the said to another period of one year," while noting the need for "a letter to be issued by the Company directed to the Presidency in this respect . . . in order to complete the Secondment Procedures Arrangements, as per Law" as well as "the required expedition . . . due to the lack of time and the dawn of the New Hijri Year."  Dallah Avco's April 7, 1999 letter was sent in response to that direction.  A copy of Mr.

Al-Salmi's letter, with a translation, is attached as Exhibit 9.  That same letter was also submitted as Exhibit S to Plaintiffs' motion.[1]

60.     Plaintiffs' own submission to this Court confirms that Dallah Avco's April 7, 1999 letter was sent at the PCA's direction.  Plaintiffs' Exhibit V, at DA001102, is Dallah Avco's April 4 letter bearing a "Received – 06 APR 1999 – AED" stamp indicating that it is a copy of the version received by the PCA's Airways Engineering Department.  The letter bears a handwritten notation at the bottom signed by PCA official Mohammed Ahmed Al-Salmi, stating "do the necessary to extend the Secondment Period of the Employee for one year effective from 1/8/1420H."  A copy of that letter, with a translation, is attached as Exhibit 10.

61.     Plaintiffs next complain that Dallah Avco has not produced "the Ministry of Defense and Aviation's official response to the April 17, 1999 extension request from the PCA" as well as other "requests the PCA sent to the Ministry seeking an extension to Bayoumi's secondment" and "authorizations received from the Deputy Minister in response to those requests."  Motion at 2-3.  The PCA and the Ministry of Defense and Aviation, however, are both agencies within the Saudi government, neither of which is under Dallah Avco's control.  Plaintiffs' motion does not explain why Dallah Avco would necessarily have copies of internal Saudi government correspondence.  Although Dallah Avco sometimes receives copies of such correspondence, that is not the norm.   Dallah Avco conducted a thorough search for communications relating to Omar Al-Bayoumi's secondments in its files and produced all non-privileged documents it found.[2]  Samples of those documents are attached as Exhibit 11.

---

[1] In fact, Dallah Avco produced multiple copies of Mr. Al-Salmi's April 7, 1999 letter.  It also produced another copy on December 15, 2014, bates numbered DA000900.

[2] Relevant documents include DA000044, DA000080, DA000081, DA000082, DA000083, DA000085, DA000091, DA000092-93, DA000094, DA000289, DA000298, DA000432-33, DA000450, DA00539, DA000540, DA000541, DA000542-45, DA0000546-47, DA000548-49, DA000552-53, DA000578-79, DA000581-87, DA000588-89, DA000591-97, DA000598-603, DA000606-607, DA000609-11, DA000612-13, DA000616-17, DA000629, DA000732, DA000900, DA000901-02, DA000905-09, DA000911-12, DA000914-15, DA000916, DA000917,

62.     Plaintiffs also contend that Dallah Avco has "not produced the entirety of the Bayoumi employee file" and that "additional personnel and/or personal files relating to Bayoumi exist and also have not been produced."  Motion at 8-9.  That is incorrect.  As explained above, Dallah Avco retrieved the 1,411 employee files from Dallah City in late 2014.  One of those files was Omar Al-Bayoumi's.  Dallah Avco produced the entire contents of that file, apart from documents withheld as privileged or work product and logged by U.S. counsel.  I am not aware of any other Omar Al-Bayoumi employee file apart from the one we produced, and Dallah Avco's search did not locate any.  Moreover, our discovery vendor scanned all the ANSS employee files, and our U.S. counsel used search terms to locate any documents relating to Omar Al-Bayoumi that were not contained in the Omar Al-Bayoumi file we produced.  That search did not locate any additional Omar Al-Bayoumi files either.

63.     Plaintiffs suggest that the fact that Omar Al-Bayoumi's file was not arranged in chronological order "suggests that the documents were selectively handpicked and thrown together to create the appearance of a so-called employee file."  Motion at 9.  That is not true. Dallah Avco located Omar Al-Bayoumi's employee file as a result of its search of Dallah City, and it produced all non-privileged contents of that file.   That the file was not arranged chronologically does not mean that the file is incomplete, or that other files exist, or that documents were thrown together to create the appearance of a file.

---

DA000918, DA000919-20, DA000922-23, DA000930, DA000931, DA000932, DA000933, DA000935, DA000936, DA000937, DA000938, DA000939, DA000940, DA000942-45, DA000947-52, DA000958-62, DA000995, DA001010, DA001011, DA001012, DA001013, DA001014, DA001016, DA001017, DA001043, DA001047, DA001056, DA001057, DA001059, DA001062, DA001066, DA001073, DA001074, DA001076, DA001092-99, DA001101, DA001102, DA001103, DA001104, DA001107, DA001108, DA001109, DA001110, DA001111, DA001112, DA001113, DA001114, DA001118, DA001119, DA001120, DA001121, DA001122, DA001123, DA001124, DA001125, DA001126, DA001127, DA001128, DA001129, DA001130-31, DA001132, DA001133, DA001134, DA001239, DA001342, DA001343, DA001354, DA001356, DA001357, DA002287, and DA002290.

64.     Plaintiffs demand that Dallah Avco produce "copies of the actual file itself identifying Bayoumi's name." Motion at 9. Dallah Avco has addressed that concern. On March 4, 2016, Dallah Avco produced a photograph of the file jacket, labeled with Omar Al-Bayoumi's ANSS employee number.

65.     Plaintiffs claim that "basic personnel records such as Bayoumi's personal information, copies of Bayoumi's passport or visa, job title and description, and payroll records" are "noticeably absent" from the employee file. Motion at 9. That is not true. Dallah Avco produced several documents reflecting Omar Al-Bayoumi's personal information, including his Saudi social security card, medical enrollment form, and family file.[3] It also produced a number of payroll records for Mr. Al-Bayoumi as well as numerous documents relating to his job position.[4] Samples of each are attached as Exhibit 12 (personal information); Exhibit 13 (payroll records); and Exhibit 14 (job position). Plaintiffs are correct that Dallah Avco did not produce a copy of Mr. Al-Bayoumi's passport or visa. The reason is that Dallah Avco's search determined

---

[3] See DA001045 (Saudi social security card), DA001100 (same), DA001117 (medical enrollment form), and DA001135-36 (family file).

[4] Payroll records were produced at DA000043, DA000457-77, DA000490-517, DA000528, DA000809-29, DA000841-69, DA000878, DA001019, DA001024, DA001246-65, DA001270, DA001279-306, and DA001318. Documents relevant to Mr. Al-Bayoumi's job position were produced at DA000080, DA000081, DA000082, DA000083, DA000084, DA000085, DA000095, DA000097, DA000098, DA000099, DA000286, DA000289, DA000291, DA000292, DA000296, DA000311, DA000323, DA000325, DA000327, DA000440, DA000447, DA000448, DA000450, DA000533, DA000538, DA000540, DA000541, DA000542-43, DA000544-45, DA000546-47, DA000548-49, DA000552-53, DA000598-602, DA000605, DA000606-08, DA000609-611, DA000612-13, DA000618, DA000629, DA000633-35, DA000671, DA000674, DA000675, DA000676, DA000678, DA000732, DA000787, DA000795, DA000802, DA000803, DA000884, DA000886, DA000888, DA000891, DA000893, DA000897, DA000900, DA000901-02, DA000905-909, DA000930, DA000931, DA000935, DA000936, DA000937, DA000938, DA000939, DA000940, DA000539, DA000942, DA000943, DA000947, DA000948, DA000949, DA000950, DA000951, DA000952, DA000958-62, DA000966-70, DA000981, DA000982, DA000986, DA000987, DA000988, DA000989, DA000990, DA000991, DA001010, DA001011, DA001012, DA001013, DA001014, DA001016, DA001017, DA001032, DA001039-41, DA001042-43, DA001048-51, DA001052-53, DA001054-55, DA001056, DA001057, DA001058-59, DA001060-61, DA001062, DA001063, DA001064, DA001065, DA001066, DA001074, DA001075-76, DA001079-90, DA001092-97, DA001101, DA001102, DA001103, DA001104, DA001107, DA001109, DA001110, DA001111, DA001114, DA001119, DA001120, DA001121, DA001125, DA001127, DA001128, DA001130-31, DA001132, DA001133, DA001134, DA001229, DA001236-37, DA001239, DA001324, DA001326, DA001329, DA001331, DA001335, DA001343, DA001345, DA001350, DA001351-53, DA001354, DA001355, DA001356, DA002287, DA002288, and DA002290.

that Dallah Avco did not have a copy of either of those travel documents.  I am not aware that Dallah Avco ever made travel arrangements for Mr. Al-Bayoumi.

66.     Plaintiffs complain that the employee file contains no "complete compilation of employee evaluations for Bayoumi."  Motion at 9.  Dallah Avco, however, did not conduct employee performance reviews for ANSS project employees.  Dallah Avco did not direct or supervise the work of ANSS project employees.  Although Dallah Avco occasionally received copies of PCA performance reviews for other employees, Dallah Avco's search did not identify any performance reviews for Omar Al-Bayoumi.

67.     Plaintiffs claim that Dallah Avco "has produced employee evaluations and performance reviews for other individuals hired for the ANSS project."  Motion at 9.  Two of the three reviews plaintiffs cite, however, are from 1979 and 1982, years before Dallah Avco took over the ANSS project.  Plaintiffs' Ex. N at DA001926-27.  For those reviews, it appears that the PCA may have hired one of Dallah Avco's own employees for the ANSS project, and that his old performance reviews from Dallah Avco remained in his file.  I am not aware of the circumstances of the third review, conducted by Bendix Field Engineering Corporation on Sept. 6, 1987.  *Id.* at DA002040.

68.     According to plaintiffs, the fact that Dallah Avco's documents refer variously to an "Omar Bayoumi file," "employee file," and "Datac [*i.e.*, Dallah Avco Trans Arabia Co.] file" show that "Dallah Avco maintained several personnel and/or personal files for Bayoumi."  Motion at 9 & Plaintiffs' Exs. O-R.  As explained above, that is not correct.  Dallah Avco maintained a single ANSS employee file for Omar Al-Bayoumi.  That file was one of the 1,411 ANSS employee files, which in turn were a subset of all of Dallah Avco's files.  The reference on Plaintiffs' Exhibit O to "Datac file/Employee file/Omar Bayomi file" appears to be a

reference to that organizational structure.  And the references to "employee file," "Omar Baiomy File," and "Omer Bayomi" in plaintiffs' other exhibits all appear to refer to the same thing – namely, Omar Al-Bayoumi's employee file.

69.     Plaintiffs contend that "the documents identify at least two different employee numbers for Bayoumi, similarly suggesting multiple employee files."  Motion at 9.  That is also incorrect.  Omar Al-Bayoumi's ANSS employee number was #50040, as reflected on the jacket cover of his file and numerous other documents.  The document that plaintiffs cite as listing the number as "50060" in fact appears to be "50040," with the handwritten "4" written in a way that looks like a "6."  Plaintiffs' Ex. S.

70.     Plaintiffs point to preprinted forms indicating that "copies are to be sent to various internal departments for filing," such as "Personnel, Finance, and the Base/Site Director." Motion at 10.  Dallah Avco thoroughly searched its files for documents relating to Omar Al-Bayoumi, including both its ANSS project employee files and its finance files, and it produced whatever non-privileged documents it found.

71.     Plaintiffs complain that Dallah Avco "has failed to produce a single report, memorandum, or other piece of correspondence from Bayoumi to Dallah Avco and/or the PCA relating to the ANSS project or any work he was doing on behalf of Dallah Avco" apart from correspondence concerning "his U.S. bank account and payments for vacation time."  Motion at 10.  Dallah Avco, however, did not direct or supervise the work of ANSS employees.  Nor were those employees doing work "on behalf of Dallah Avco."   Dallah Avco performed only manpower procurement and payroll processing functions (and in Omar Al-Bayoumi's case, only the latter).  Accordingly, it is not surprising that there would be little correspondence between Omar Al-Bayoumi and Dallah Avco, and that what little there is would relate to "his U.S. bank

account and payments for vacation time." Dallah Avco conducted a diligent and thorough search for any correspondence from Omar Al-Bayoumi and produced whatever it could locate.

72.     Plaintiffs similarly complain that Dallah Avco has not produced documents "relating to [Omar Al-Bayoumi's] alleged educational studies in the United States" apart from "a few documents indicating that Bayoumi was briefly enrolled at San Diego State University in 1995." Motion at 10. As already explained, however, Dallah Avco did not direct or supervise the work of Omar Al-Bayoumi or any other ANSS employee. Thus, Dallah Avco would not necessarily receive copies of correspondence between Omar Al-Bayoumi and the PCA regarding his educational studies, or any other documents relating to his educational studies. Dallah Avco conducted a thorough search for documents regarding Omar Al-Bayoumi's studies, and it produced the documents it located.

73.     Plaintiffs also demand that Dallah Avco produce "any document or information that provided the basis for the representations made in the documents referenced above," which are two documents written by PCA officials that contain statements about Omar Al-Bayoumi's studies. Motion at 10. Plaintiffs do not explain why Dallah Avco would have documents providing the basis for statements made by **PCA officials**. The PCA is a Saudi government agency separate from Dallah Avco and is not under Dallah Avco's control.

74.     Plaintiffs complain that they have not received "records relating to the [Saudi Ministry of Civil Services'] review and approval of Bayoumi's secondment to Dallah Avco." Motion at 10-11. Dallah Avco diligently searched for such documents but was unable to find any. To the extent the Saudi Ministry of Civil Services reviewed secondment decisions, Dallah Avco was not involved in the process.

75.     Plaintiffs finally demand "communications between Dallah Avco and the Saudi Ministry of Islamic Affairs, the Saudi Royal Embassy in Washington, D.C., and the Saudi Consulate in Los Angeles."   Motion at 11.   Plaintiffs' January 5, 2016 letter sought such documents only to the extent they related to Omar Al-Bayoumi.  Plaintiffs' Ex. B Nos. 9 & 10. Dallah Avco diligently searched for such documents but was unable to find any.

***Response to Plaintiffs' Motion to Compel – Documents Not Relating to Omar Al-Bayoumi***

76.     Plaintiffs also seek discovery into several categories of documents that do not relate to Omar Al-Bayoumi.

77.     First, plaintiffs seek discovery into documents relating to Ercan Engineering. Motion at 5.  Ercan was a United States based company that was a vendor to the ANSS project. Dallah Avco's financial records reflect that the PCA sometimes directed Dallah Avco to reimburse Ercan for certain ANSS project expenses.  Examples of those directions are attached as Exhibit 15.

78.     Dallah Avco conducted a thorough search for any documents concerning Ercan that related to Omar Al-Bayoumi.  Dallah Avco's search did not identify any such documents. Plaintiffs cite an FBI report alleging that the PCA asked Ercan to provide financial support to Omar Al-Bayoumi while he studied in the United States.  Motion at 5.  If true, Dallah Avco has no knowledge that such a request was made.  Dallah Avco's document search did not identify any documents relating to that alleged request that Ercan pay Omar Al-Bayoumi's expenses.

79.     Plaintiffs also seek discovery into other individuals who were seconded to Dallah Avco projects or who performed work or services in the United States.  Motion at 6.  Dallah Avco produced numerous documents concerning Omar Al-Bayoumi's secondment to the ANSS

project.[5]  In addition, after the filing of plaintiffs' motion to compel, Dallah Avco conducted a thorough search of the ANSS employee file database for documents relating to any other secondments of Saudi government employees to the ANSS project, and produced three additional employee files.

80.     It would be extremely burdensome for Dallah Avco to search for secondments of Saudi government employees to projects other than the ANSS project.  Dallah Avco is a government contractor that has been engaged on a number of other projects for the Saudi government over the years.  Locating files relevant to each of those projects would require identifying an entirely new set of document custodians, many of whom undoubtedly no longer work for Dallah Avco.  Many of those files would be decades old, and locating and reviewing them would be an extraordinary task.

81.     Similarly, it would be extremely burdensome for Dallah Avco to search for documents relating to any employee or contractor who has ever performed services in the United States for any of Dallah Avco's projects.  Dallah Avco has performed a number of contracts for the PCA or other agencies, and locating files relevant to each one would involve entirely new document custodians and files often decades old.  It would be extraordinarily burdensome to review all those files in an effort to identify the residence of every employee or contractor who may have provided services to the projects at some point.

82.     Plaintiffs assert that "U.S. intelligence affirms that there were approximately fifty (50) individuals who were being carried on the books at Dallah Avco who were being paid for doing nothing."  Motion at 6.  Dallah Avco is not aware of any facts supporting that allegation.  The exhibits plaintiffs cite are not "affirmations" of U.S. intelligence agencies but rather anonymous statements of unidentified third parties.  Plaintiffs' Ex. I at 3; Plaintiffs' Ex. J. at 30.

---

[5] See documents cited above in note 2.

In any event, Dallah Avco does not supervise the work of ANSS project employees and thus does not typically have information about the nature of the work they perform or how much, if any, work the PCA assigns them.

83.     Plaintiffs also seek documents relating to Avco Overseas, also known as Textron. Motion at 6-7.  Avco Overseas is based in Houston, Texas.  It is not currently affiliated with Dallah Avco, although prior to the mid-1980s, it had a minority (approximately 15%) equity stake in Dallah Avco.  Avco Overseas provided services to the ANSS project, including manpower procurement services for Dallah Avco.

84.     Dallah Avco's search for documents relating to Omar Al-Bayoumi located a handful of documents concerning Avco Overseas.  Those documents show that, in 1994 – when Omar Al-Bayoumi was pursuing studies in the United States but prior to his secondment to the ANSS project – the PCA arranged for Avco Overseas to pay Mr. Al-Bayoumi's education expenses and then charged the expenses to the ANSS project by having Dallah Avco reimburse Avco Overseas.  Plaintiffs' Ex. K & L.  Plaintiffs incorrectly describe those documents as referring to payments for 27 months – in fact the documents refer only to payments for 27 *weeks*, from August 1994 to January 1995.  Plaintiffs' Ex. L.

85.     Dallah Avco's document search did not locate any evidence that Avco Overseas continued to pay Omar Al-Bayoumi after the PCA seconded him to the ANSS project in April 1995, at which point Dallah Avco began processing his salary as with other ANSS employees.

86.     Plaintiffs' document requests did not call for the production of documents relating to Avco Overseas.  As a result, Dallah Avco did not specifically search for documents relating to Avco Overseas, except to the extent they related to Omar Al-Bayoumi.  Performing such a search now would place a very heavy burden on Dallah Avco.  The handful of Avco Overseas

documents that related to Al-Bayoumi were located among the millions of pages of Dallah City administrative and financial files that were manually reviewed.  Redoing that labor-intensive search now would be extremely burdensome and costly.

87.     Plaintiffs contend that Dallah Avco is refusing to produce documents relating to "any investigation of Dallah Avco relative to its relationship with Bayoumi."  Motion at 7-8. That is incorrect.  Dallah Avco agreed to produce documents relating to investigations of Dallah Avco and Mr. Al-Bayoumi, as well as documents relating to investigations of the PCA and Mr. Al-Bayoumi to the extent Dallah Avco had such documents.  Dallah Avco produced a number of documents within those categories.[6]  Samples are attached as Exhibit 16.  To the extent plaintiffs are also seeking documents relating to 9/11 investigations of Dallah Avco that do not relate to Omar Al-Bayoumi, I am not aware that any such investigations or documents exist.

88.     Plaintiffs demand the production of documents relating to Safari Company Limited.  Motion at 8.  Safari was the unrelated company that took over operation of the ANSS contract from Dallah Avco in 2005.  Plaintiffs' document requests did not call for the production of documents relating to Safari.  As a result, Dallah Avco did not specifically search for documents relating to Safari except to the extent they related to Omar Al-Bayoumi – which none did, given that Safari did not become involved with the ANSS project until long after Al-Bayoumi departed in 2002.

89.     Requiring Dallah Avco to search for documents related to Safari now would impose substantial burdens on Dallah Avco.  Most, if not all, of the ANSS project documents referencing Safari are presumably in the ANSS administrative files in Dallah City.  Those files

---

[6]  Relevant document were produced at DA000086, DA000087, DA000088, DA000089-90, DA000092-93, DA000094, DA000578-87, DA000911-20, and DA000972-73.

were manually reviewed and were not scanned by the vendor. Redoing that labor-intensive search now would be extremely burdensome and costly.

90.     Plaintiffs also demand production of all documents relating to "Dallah Avco's 'Out-of-Kingdom' expenses and costs relating to the ANSS project." Motion at 8. Complying with that request would be extraordinarily burdensome as it would require a review of all of Dallah Avco's ANSS financial records (including the millions of pages at Dallah City) in an effort to identify which, if any, expenditures were made to U.S. parties.

91.     Plaintiffs also refer to "ANSS project requirements that an office in the United States must be maintained." Motion at 8. To my knowledge, Dallah Avco never maintained its own office in the United States. Rather, Dallah Avco relied on its relationships with independent parties such as Avco Overseas to comply with that contract requirement.

92.     Finally, plaintiffs demand production of documents relating to the Saudi government officials involved in Omar Al-Bayoumi's secondment. Motion at 8. Dallah Avco searched for documents relating to those (or any other) officials' involvement in Mr. Al-Bayoumi's secondment, and it produced numerous documents located as a result of that search.[7] Samples are attached as Exhibit 17.

---

[7] Mr. al Khalaf: DA000086-87, DA000088, DA000094, DA000542-43, DA000544-45, DA000583-85, DA000593-95, DA000610-11, DA000634-35, DA000641-43, DA000651-53, DA000661-63, DA000905, DA000906, DA000916-18, DA000924-26, DA000935-36, DA000947-48, DA000958-59, DA000966-67, DA000986-87, DA001010, DA001011, DA001062, DA001074, DA001092-93, DA001103, DA001114, DA001118, DA001122, DA001125, DA001126, DA001129, DA001130-31, DA001133, DA001134. Mr. al Salmi: DA000044, DA000078-79, DA000080, DA000081, DA000082, DA000083, DA000091, DA000092-93, DA000289, DA000298, DA000413-14, DA000432-33, DA000450, DA000578-79, DA000581-82, DA000588-89, DA000590-91, DA000606-07, DA000609, DA000612-13, DA000616-17, DA000629, DA000633, DA000639-40, DA000646, DA000649-50, DA000656-57, DA000659-60, DA000676, DA000787, DA000900-02, DA000911-12, DA000914-15, DA000922-23, DA000930, DA000931, DA000932, DA000933, DA000940, DA000942-44, DA000952, DA000981, DA000982, DA000983, DA000984, DA000991, DA001016, DA001017, DA001043, DA001056, DA001057, DA001059, DA001066, DA001076, DA001097-99, DA001101, DA001102, DA001104, DA001105-06, DA001107, DA001108, DA001112, DA001113, DA001123, DA001124, DA001132, DA001239, DA002267-69, DA002281-82, DA002287, DA002290. Mr. Jestiniya: DA000091, DA000933, DA000934, DA000944-45, DA000983-84, DA001098-99, DA001108, DA001112, DA001113, DA001123, DA001124. Mr. al Ankari: DA00540, DA000541, DA000546-47, DA000552-53, DA000732, DA000907, DA000908, DA000909, DA000937-

93.     Although Dallah Avco has generally objected to discovery into documents unrelated to Omar Al-Bayoumi, it has searched for and produced several categories of such documents in an effort to compromise.  On March 4, 2016, in response to plaintiffs' request, Dallah Avco produced a set of 31 randomly selected ANSS employee files, comprising over 6,000 pages.  Dallah Avco also searched the ANSS employee files for other individuals seconded by the PCA, and produced three more files as explained above.  Dallah Avco produced documents relating to job descriptions for the titles that Al-Bayoumi held.  And finally, at plaintiffs' request, it searched the ANSS employee files for references to Fahad Al-Thumairy or Osama Basnan but found none.  Dallah Avco has thus consistently strived to act cooperatively and in good faith in connection with its discovery obligations.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _22.5.2016_        _____
                (date)                          Abdullah Yamani

---

39, DA000949-51, DA000960-62, DA000968-70, DA000988-90, DA001012, DA001013, DA001014, DA001094-96, DA001119, DA001120, DA001121, DA001128.