## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>SIMMONS HANLY CONROY LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT DELIVERY**

July 15, 2016

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

   Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

  The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this reply in further support of their letter brief filed on February 8, 2016 (ECF No. 3211), seeking an order from this Court compelling defendant Dallah Avco to produce documents and information responsive to plaintiffs' jurisdictional discovery requests. For the reasons set forth below, plaintiffs submit they are entitled to the relief sought in the February 8 motion.

### I. DALLAH AVCO FAILED TO ENSURE THE PROPER PRESERVATION OF DOCUMENTS RELEVANT TO PLAINTIFFS' CLAIMS

  In its May 27, 2016 opposition to plaintiffs' motion to compel ("Opposition"), Dallah Avco describes in great detail "the extraordinary lengths and expense" the defendant undertook to search for and locate documents responsive to plaintiffs' jurisdictional discovery requests. Opposition at pp. 1-3; *see also* Declaration of Abdullah Yamani ("Yamani Decl.") at ¶¶ 2-4 (stating that Dallah Avco "made extraordinary efforts," "expended considerable resources," "spent substantial sums on vendor charges as well as attorney's fees," and "devoted many hundreds of hours of time of its in-house attorneys, technical staff, and laborers engaged in the discovery process").

  Of course, the reality is that Dallah Avco was forced to undertake these extraordinary measures as a direct result of the defendant's years of indifference and disregard for its obligations to secure and preserve records relevant to this litigation since its commencement in 2002-2003. As Dallah Avco's May 27 submission makes clear, apart from collecting some documentation relating

The Honorable Frank Maas
July 15, 2016
Page 2

---

to Omar al Bayoumi around the time plaintiffs filed their complaints, Yamani Decl. at ¶ 14, Dallah Avco failed entirely to put protocols in place to ensure the orderly preservation of potentially relevant evidence in its possession, custody and control. As the defendant concedes, it was not until after the Second Circuit Court of Appeals reversed the district court's dismissal of Dallah Avco on personal jurisdiction grounds and remanded the defendant for jurisdictional discovery, *O'Neill v. Asat Trust Reg.* (*In Re: Terrorist Attacks on September 11, 2001* (Asat Trust Reg.)), 714 F.3d 659, 679 (2d Cir. 2013), that Dallah Avco initiated a comprehensive search for responsive documentation in 2014. *See* Yamani Decl. at ¶¶ 15-16 (following a February 14, 2014 meet-and-confer with plaintiffs' counsel, "Dallah Avco determined that it should undertake a new search for documents relating to Omar Al-Bayoumi," and that "process began during the spring and summer of 2014.").

Critically, as that new search unfolded, Dallah Avco quickly discovered that an incredibly large number of potentially relevant files relating to Bayoumi, and the Air Navigation System Support ("ANSS") project to which he was allegedly assigned, had not been previously segregated during the defendant's initial search in late 2002/early 2003. Equally alarming, those records were locked away in a storage facility that had been so severely neglected by the defendant, that it had fallen into an utter "state of disarray," thereby requiring the aforementioned extraordinary measures. Opposition at p. 3 ("In the decade since, however, the warehouse became a 'dumping area' for other companies. Corporate files were left strewn about the warehouse, along with old office furniture, computer hardware, and other trash."); Yamani Decl. at ¶ 34 (stating that "various companies within the Dallah Al Baraka group of companies began to leave files haphazardly throughout the warehouse" and the "ANSS files became buried among heaps of disorganized papers and other unwanted junk").

Records relating to Bayoumi's employment and secondment[1] and related administrative and financial documents were in fact located within the "disorganized papers and unwanted junk," contrary to Dallah Avco's suggestion that its subsequent collection and review of the records in the warehouse yielded limited responsive documentation. Opposition at p. 3; Yamani Decl. at ¶ 40.

These facts raise several glaring issues. First, the disarray Dallah Avco encountered when it initiated its search for relevant records approximately twelve years after these lawsuits were initiated makes clear that Dallah Avco never issued a formal litigation hold at any time before, or after, the outset of this litigation. The duty to preserve relevant evidence not only applies during litigation, but also applies to the period before litigation when a party knows or reasonably should know that the evidence may be relevant to anticipated litigation. *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F.Supp.2d 456, 466 (S.D.N.Y. 2010) (internal citations omitted) (holding duty to

---

[1] Plaintiffs maintain that Dallah Avco has not produced the entirety of the Bayoumi employment file or even truly provided his employment file. *See* Motion to Compel at pp. 8-10. Nearly a month after receipt of plaintiffs' motion, Dallah Avco produced a photograph of the alleged file jacket to the Bayoumi employee file. Opposition at p. 6, n. 2. That the file's cover page had been separated from the records previously contained in it, and produced separately, confirms the significant likelihood trhe relevant records remain missing and that Dallah Avco has not produced the "employment file" as it had been maintained during the ordinary course of business.

preserve was triggered by filing of complaint). The obligation to preserve evidence exists whether or not the documents have been specifically requested in a demand or whether there has been a specific discovery order issued. *Kronisch*, 150 F.3d at 126-27. *See also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (holding that the duty to preserve is an ongoing obligation and the party and counsel must monitor the party's compliance with the litigation hold to ensure proper implementation).

Dallah Avco's failure to implement a litigation hold raises legitimate concerns that important evidence relevant to plaintiffs' claims has likely been lost, destroyed or altered, particularly given the manner in which those documents were so carelessly maintained by the defendant for over a decade.[2] Indeed, Dallah Avco's representations that it could not find certain categories of documents during its search of the warehouse only serves to heighten suspicions that key documentation has gone missing due to the defendant's negligence. *See* Yamani Decl. ¶ 74 (unable to find records relating to the Saudi Ministry of Civil Services); ¶ 75 (unable to find communications between Dallah Avco and the Saudi Ministry of Islamic Affairs, the Saudi Royal Embassy in Washington, D.C., and the Saudi Consulate in Los Angeles). Further, Dallah Avco's description of the state of the records confirms that they have not been produced in the manner in which they were maintained at the time this litigation commenced, rendering it impossible to understand how responsive records relate to one another.

Equally troubling is the manner in which Dallah Avco conducted its search of the warehouse for documents responsive to plaintiffs' discovery requests. Adamant that it would only search for documents that relate in some way to Bayoumi, Dallah Avco admittedly adopted a very narrow view of relevance, while simultaneously acknowledging that plaintiffs have requested additional categories of documents relevant to their claims. Opposition at pp. 7-11 (maintaining that plaintiffs' requests seeking documents with no relation to Bayoumi exceed the Second Circuit's mandate and scope of jurisdictional discovery). Given the chaotic state of it records facility, the responsible and proper approach would have been to search for all documents that had any relevance to plaintiffs' claims, no matter how remote, and hold them for litigation purposes. Having failed to do so, Dallah Avco cannot complain about being required to review those records for additional responsive materials. In fact, Dallah Avco's approach amounts to spoliation.

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)). A party's failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation may subject it to a spoliation claim. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A court has broad "authority to impose sanctions on a party for spoliation and other discovery misconduct under its inherent power to manage its own affairs...." *Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 1409413, at *3 (S.D.N.Y. May 23, 2006) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002)); *see also*

---

[2] Dallah Avco admits that the records were moved to the warehouse, and transformed into a disorganized mess, after the ANSS project closed in 2005, and thus after this litigation was already pending for several years. Opposition at p. 3.

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("[A] district court may impose sanctions for spoliation, exercising its inherent power to control litigation."); *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 194 (S.D.N.Y. 2007) (same); *Osberg v. Foot Locker, Inc.*, No. 07-cv-1358 (KBF), 2014 U.S. Dist. LEXIS 95543 (S.D.N.Y. July 14, 2014) (finding that the defendant's failure to implement a document retention policy until three years after a lawsuit on the subject matter was filed, which resulted in the destruction of documents, constituted negligence and sanctioned the defendants by granting the plaintiff an adverse inference instruction).

Plaintiffs respectfully submit that given the degree to which Dallah Avco has evaded its duty to preserve relevant evidence in these proceedings, the defendant should be directed to cure the spoliation by conducting another search and review of its documents for responsive materials, or suffer appropriate sanctions.

## II. DALLAH AVCO'S BURDEN AND EXPENSE OBJECTIONS HAVE BEEN PREVIOUSLY REJECTED BY THIS COURT

Dallah Avco argues that should the Court require the defendant to conduct additional discovery, it should be relieved of certain obligations that would impose "disproportionate burdens" upon it, such as excluding the review of paper documentation from the Dallah City warehouse, permitting the defendant to make its documents available for inspection in Saudi Arabia, and requiring plaintiffs to pay the costs of any further discovery. Opposition at pp. 11-12. Each of those arguments have been soundly rejected by this Court in prior proceedings.

### A. Dallah Avco Cannot Rely on the Unorganized State of Its Own Records to Support Undue Burden or Expense Objections

Courts in the Southern District of New York have consistently held that a party may not rely upon the unwieldy state of its own records as a means to avoid discovery, or as grounds to shift the burden and expense of locating responsive materials within a voluminous archive of poorly indexed documents to the requesting party. *See Standard Dyeing and Finishing Co. v. Arma Textile Printers Corp.*, 1987 U.S. Dist. LEXIS 868 (S.D.N.Y. 1987); *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 2004 U.S. Dist. LEXIS 6031 (S.D.N.Y. 2004). This Court has previously applied this sound reasoning to reject arguments advanced by defendants Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") that it would be unduly burdensome for them to search for and review potentially relevant materials due to the unmanageable state of their document archives. Plaintiffs respectfully submit that the Court should apply the same logic here to reject Dallah Avco's burden and expense objections.

### B. Dallah Avco Should be Compelled to Produce all Responsive Documents in the United States

Notwithstanding the fact that Dallah Avco has completed twenty (20) separate document productions in the United States without objection, Dallah Avco argues it is appropriate for this Court to order plaintiffs to travel to Saudi Arabia to conduct their own review of the defendant's documents, rather than undertake searches for responsive documents itself. Opposition at p. 11.

This Court rejected a similar request by defendant World Assembly of Muslim Youth ("WAMY"), which was collecting and storing thousands of documents in its Saudi headquarters. Rather than produce the documentation in the United States, WAMY argued that plaintiffs should be required to travel to Riyadh to review the collection of documents. In their March 14, 2014 Motion to Compel, attached hereto as Ex. A, plaintiffs asserted that a range of safety, security, equitable, and practical consideration supported their position that WAMY should be required to produce its responsive documents in the forum where this litigation is pending. *See* Motion to Compel at pp. 3-6, incorporated herein by reference.

Your Honor agreed with plaintiffs in that instance, stating that "I do not view it as practical to turn to plaintiffs' counsel and say, go to Saudi Arabia to review the documents." *See* April 24, 2014 Discovery Hearing Transcript, pp. 35-36, attached hereto as Ex. B ("It seems to me, in a litigation of this scope, an MDL litigation in particular, the only practical solution is to have each side produce its documents to the other side, rather than having plaintiffs, by way of example, have to go to Saudi Arabia."). Consistent with that reasoning, plaintiffs respectfully ask the Court to direct Dallah Avco to produce all documents in the United States.

### C. Dallah Avco Should be Compelled to Produce All Further Discovery at its Own Cost

Finally, Dallah Avco argues that plaintiffs should cover the costs of additional discovery because requiring the defendant to continue to search for responsive records would be "extremely burdensome and costly" and "would impose severely disproportionate burdens." Opposition at p. 11; Yamani Decl. ¶¶ 86, 89. First, the argument advanced by the defendant that their own spoliation of relevant materials requires a cost-shifting to plaintiffs is more than a bit outrageous. But secondly, that argument conflicts with this Court's previous discovery rulings and well-settled law that, absent a showing of good cause, a party responding to discovery must bear the costs associated with complying with discovery requests. *See* April 15, 2014 Reply Brief at pp. 2-4, attached hereto as Ex. C, and incorporated herein by reference. Moreover, multi-district litigation and mass tort cases historically do not look favorably upon shifting costs to the requesting party.[3] *Id.* at pp. 4-5. *See also* Ex. B at pp. 37-38 (denying defendant WAMY's argument that plaintiffs should be required to pay for costs associated with discovery).

As plaintiffs have previously indicated, Dallah Avco is part of the Dallah al Baraka global conglomerate, owned by Saudi billionaire Saleh Abdullah Kamel.[4] The notion that Dallah Avco does not have available funds to continue its search for, and production of, materials responsive to plaintiffs' jurisdictional discovery is simply unsupported by the record. Accordingly, the Court should deny Dallah Avco's request.

---

[3] Over the course of this litigation, plaintiffs have incurred significant costs associated with locating, reviewing, copying and scanning hundreds of thousands of documents which have been produced to defendants in electronic format. At no time have plaintiffs sought reimbursement of those costs, but rather have followed the accepted practice that each side bear the cost of its own productions.

[4] Dallah al Baraka and Kamel are alleged to have directed tens of millions of dollars in funding to support al Qaeda and other radical Islamic causes. Kamel has been identified on the "Golden Chain" as one of al Qaeda's principal financiers.

The Honorable Frank Maas
July 15, 2016
Page 6

---

Respectfully submitted,

/s/ Sean P. Carter

Sean P. Carter, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

JST

cc: The Honorable George B. Daniels (via overnight UPS delivery)
MDL-1570 Counsel of Record (via ECF)

LEGAL\27422635\1 00000.0000.000/117430.000