## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

April 15, 2014

The Honorable Frank Maas
United States District Court for the
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007-1312

  Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

  The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter brief in reply to the April 7, 2014 letter brief of defendant World Assembly of Muslim Youth-Saudi Arabia ("WAMY") (hereinafter "Opposition"), which was submitted in response to plaintiffs' March 14, 2014 motion to compel the defendant to: (1) produce in the United States all responsive documents that WAMY is storing in its Saudi Arabian headquarters; (2) abide by this Court's rulings concerning the scope and diligence of searches required of defendants in the litigation; and (3) search for and produce all responsive documents pursuant to the Court's discovery rulings holding that 1992 through 2004 is the appropriate presumptive time frame for merits discovery. For the reasons set forth below, plaintiffs respectfully submit they are entitled to the relief sought in the March 14 motion to compel.

### I.  WAMY'S INSISTENCE ON A 2002 DISCOVERY CUT-OFF IS UNFOUNDED

  WAMY's unwillingness to comply with the Court's clear ruling that "the end of 2004 is a reasonable cut-off" for discovery is emblematic of the ongoing problems plaintiffs continue to face as they try to obtain meaningful discovery from the defendant. WAMY's argument that the Court "has only individually addressed the temporal limits of discovery for three Defendants" lacks any good faith reading of that order, is unsupported by the record, and conflicts with the understanding and conduct of every other party currently in discovery.

  First, WAMY's inability to point to a specific order by this Court setting a 2002 deadline for *merits* discovery evidences the defendant's intent to purposely frustrate discovery. Although WAMY appears to believe that justification for its decision to exclude documents from the 2002-2004 timeframe lies with a discovery order relating to the Saudi Binladin Group, that position is untenable. As the January 23, 2007 Order (ECF No. 1941) makes apparent, the Court was establishing a "look back"

The Honorable Frank Maas
April 15, 2014
Page 2

period solely for *jurisdictional* discovery purposes, focusing exclusively on the filing of the *Burnett* complaint. There is simply no reasonable rationale for WAMY's assertion that the Court intended to apply the August 2002 date to merits discovery or to other parties.

WAMY's argument that the 2004 discovery ruling applies only to the MWL and IIRO is also without merit. While the 2004 end date was established relative to plaintiffs' dispute with those defendants, that ruling was predicated upon the Court's sound reasoning that the post-9/11 conduct of a defendant can bear directly on liability issues and should be discoverable. *See* Transcript, April 12, 2011 Hearing, pp. 43-44. Without question, the rationale that led to the Court's ruling as to the MWL and IIRO (and all defendants) applies with equal force to WAMY, an ostensible Saudi charitable organization that is similarly alleged to have served as a fully integrated component of al Qaeda's organizational structure.[1] Indeed, this Court has made clear that its discovery orders apply equally to all parties. *See* Transcript, December 20, 2013 Hearing, p. 27 (stating that "[a]ny ruling I make which is generic obviously applies to both sides").

Notably, the Court invited any party who disagreed with that ruling to submit a letter explaining "why it should end significantly before 2004." Transcript, April 2011 Hearing, p. 43. Despite being in attendance at that hearing, counsel for WAMY declined the invitation. As a consequence, WAMY is obligated to follow the Court's instruction and promptly produce all responsive documents through the end of 2004. WAMY's continuing disregard for that ruling, and the meritless arguments it advances in support of its non-compliance, only serve to cast a shadow over the defendant's conduct in these proceedings.

## II. WAMY SHOULD BE COMPELLED TO PRODUCE DOCUMENTS IN THE UNITED STATES AT ITS OWN COST

Despite previously completing four separate document productions in the United States without objection, WAMY argues it is not obligated to produce any more responsive documents in the United States, or to pay for any related costs of producing its responsive documents.[2] But that argument conflicts with this Court's previous discovery rulings and well-settled law that, absent a showing of good cause, a party responding to discovery must bear the costs associated with complying with discovery requests. Moreover, multi-district litigation and mass tort cases historically do not look favorably upon shifting costs to the requesting party.[3]

---

[1] Consistent with the Court's reasoning, discovery as to WAMY's relationship with Wa'el Jelaidan in the years following the September 11 attacks is highly relevant, given WAMY's decision to give the founding al Qaeda member a featured speaking role at its 2008 conference. *See* Ex. A.

[2] Another practical rationale that favors WAMY bearing the cost of its own production is that plaintiffs should not be required to bear the cost of WAMY producing substantial volumes of irrelevant or self-serving documents. As this Court has seen in the context of previous MWL/IIRO disputes, defendants have often produced substantial documents endeavoring to paint the organizations as ones with purely charitable purposes, producing thousands of pages related to purported charitable endeavors – regardless of plaintiffs' explanation that those document fall outside the scope of plaintiffs' requests. WAMY is no exception. Requiring parties to bear their own production costs will, presumably, reduce the parties' inclination to include substantial irrelevant documents within their productions, or at the very least require them to bear their own costs of such unnecessary productions.

[3] Over the course of this litigation, plaintiffs have incurred significant costs associated with locating, reviewing, copying and scanning hundreds of thousands of documents which have been produced to defendants in electronic format. At no time have

The Honorable Frank Maas
April 15, 2014
Page 3

### A. WAMY-Int'l Must Produce Documents In The Possession Of Its Saudi Parent

Supported by Second Circuit precedent, this Court has been clear that a U.S. based alter ego of a Saudi Arabian charity defendant must produce in the United States any and all responsive documents in the possession of the Saudi parent.[4] Consistent with that ruling, WAMY's New York alter ego, WAMY-International, is required to produce in this forum all responsive materials in the possession, custody and control of its Saudi headquarters. WAMY cannot disregard the law of this Court to escape its duty to produce documents in the United States, particularly where it has failed to substantiate any alleged financial burdens as set forth below.

### B. WAMY Has Failed To Submit Any Evidence In Support Of Its Claim Of Financial Burden Requiring Plaintiffs To Pay Discovery Costs

Pursuant to the Federal Rules governing discovery, "[t]he presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from undue burden or expense in doing so, including orders conditioning discovery on the requesting party's payment of the cost of discovery." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 348 (1978); *Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003) (holding that the party responsible for production generally bears the costs). The "party moving for such an order bears the burden of proof to show 'good cause' for shifting the cost to the requesting party." *Clever View Inv., Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) (citing *Zubulake*, 216 F.R.D. at 283, and holding that the responding party is responsible for the production of paper documents unless it can meet the "good cause" standard). Good cause exists when the responding party makes "a particular and specific demonstration of injury based in fact, rather than relies on stereotyped and conclusory statements." *Novick v. AXA Network, LLC*, 2013 U.S. Dist. Lexis 136517, at *12 (S.D.N.Y. 2013).

WAMY primarily argues that plaintiffs should cover the costs of production because scanning and producing responsive documents in the United States "would be an extremely expensive endeavor for WAMY ... and would impose a burden on the charity." Opposition, p. 4.[5] Yet, WAMY cannot substantiate any such claim that the organization has limited resources to respond to discovery, having failed to submit affidavit testimony or other compelling evidence demonstrating the alleged burden.[6] Rather, WAMY insists the Court take it at its word.

---

plaintiffs sought reimbursement of those costs, but rather have followed the accepted practice that each side bear the cost of its own productions. Plaintiffs proposed the same to WAMY (relative to a dispute over the production of SAAR documents). Alternatively, plaintiffs proposed each side agree to mutually reimburse the other for duplication costs. WAMY rejected both proposals, wanting only to pay for the price of the production medium (i.e., CD or flash drive). *See* March 21, 2014 letter to Mr. Mohammedi at Ex. B, p. 2.

[4] *See* March 14, 2014 Motion to Compel ("Motion to Compel"), pp. 6-7.

[5] WAMY cites to several cases where the requesting party was ordered to pay costs associated with copying and shipping documents in the possession of the responding party. Opposition, pp. 2-4. But those cases, where the documents were readily "available" for inspection in the same forum or a nearby state, are easily distinguishable from the present case where documents are presently located in a foreign country where designated terrorist defendants and others sympathetic to al Qaeda's ideology reside, and to which the State Department has cautioned U.S. citizens against traveling.

[6] *See Textron Fin. Corp. v. Eddy's Trailer Sales, Inc.*, 2009 U.S. Dist. Lexis 60065, *2-3 (E.D.N.Y. 2009) (holding that the defendants were required to bear the cost of production where defendants had failed to provide proof of their financial hardship or inability to fund their discovery obligations); *see also Arias-Zeballas v. Tan*, 2007 U.S. Dist. Lexis 40245, *4

The Honorable Frank Maas
April 15, 2014
Page 4

---

Plaintiffs have little confidence in the defendant's representations.[7] For instance, statements by WAMY and other Saudi government officials undermine WAMY's claim that it does not have available resources to pay for discovery associated costs. According to those officials, WAMY regularly receives significant financial support from the Kingdom which oversees the activities of the organization through the Ministry of Islamic Affairs. *See* Declaration of Mutaz Saleh Abu Unuq, WAMY Financial Director, at Ex. C, p. 2 ("The Government of Saudi Arabia funds a large portion of WAMY's budget.").[8] Moreover, the Kingdom made clear early in the litigation that it would fully fund the defense of all Saudi individuals and entities named in this litigation, thus obviating the need for WAMY and other Saudi defendants to dip into their own coffers to pay litigation costs.[9]

Additionally, the manner in which WAMY has approached its defense belies this notion that it is cash-strapped. In particular, WAMY allegedly expended $1.5 million of "limited resources" to collect non-responsive documents and create deficient indices. WAMY further invested considerable time and resources to submit FOIA requests to various U.S. agencies, merely to obtain documents plaintiffs have already produced in this litigation. WAMY has also retained additional out-of-state counsel to assist in its defense, at considerable additional cost. The notion that WAMY does not have available funds to produce responsive documents is unsupported by the record. Plaintiffs respectfully submit that WAMY should not be relieved of its discovery obligations and request the Court compel WAMY to immediately produce all documents at its own cost.

### C.   Multi-District Litigation Does Not Favor Cost-Sharing

Finally, the circumstances in which cost-sharing relief is sought in multi-district litigation ("MDL") cases are rare, given the fact that the courts follow the strong and well-settled rule that the producing party must bear the costs of complying with discovery. *See In Re: Fosamax Products Liability Litigation*, 06-MDL-1789, (S.D.N.Y.) (JFK), 11/14/07 Case Management Order No. 13 (Order Regarding Document Production Format and Cost-Sharing) at Ex. D (ordering defendant Merck to produce all hard-copy and native electronic form documents as single-page, searchable TIFF images without charge to the Plaintiffs Steering Committee); *In Re: Air Crash Near Clarence Center, New York, on February 12, 2009*, 277 F.R.D. 251, 255 (W.D.N.Y. 2011) (rejecting request for cost-sharing

---

(S.D.N.Y. 2007) (holding that a party resisting discovery on grounds of undue burden must substantiate its objections through the submission of affidavit testimony or offer other evidence revealing the nature of the burden).

[7] The Court will recall that counsel for the MWL and IIRO similarly complained on several occasions that his clients were experiencing funding issues that prevented him from buying a train ticket to New York to attend discovery conferences. *See* Transcript, July 13, 2011 Hearing, pp. 24-25 (counsel explaining that there are insufficient funds for him to "come to New York for this conference" or travel to Saudi Arabia to meet with MWL and IIRO officials). Notwithstanding those claims of economic hardship, those Saudi charities have since hired new counsel and are funding a team of attorneys to travel around the world to various branch offices to survey and collect documents. *See* Transcript, December 20, 2013 Hearing, p. 44 (counsel explaining a "team of Arabic-speaking attorneys" have "spent months on the road" traveling to MWL and IIRO offices in the Philippines, Indonesia, Bosnia, Albania, Kosovo, Macedonia, Pakistan, and Saudi Arabia to identify documents to be brought to the United States).

[8] *See also* January 12, 2001 Al Jazeera interview with WAMY Secretary General Maneh al Johani, available at http://213.136.192.26/2001jaz/jan/12/is1.htm (stating that WAMY's primary funding comes from the Kingdom).

[9] Al Sharq Al Awsat, *Prince Naif: We Will Appoint American Lawyers to Protect the Saudis in the 9/11 Lawsuit*, November 26, 2002 (Saudi Interior Minister Prince Naif bin Abd al Aziz declaring that the Kingdom will hire U.S. attorneys to defend its citizens whose names appear in the lawsuit submitted by the relatives of victims of the September 11 attacks.).

The Honorable Frank Maas
April 15, 2014
Page 5

where the defendant airline failed to show undue financial burden). *See also In Re: HRT Litigation*, 06/23/05 Order on Record Production at Ex. E (ordering that "each party to the action shall be responsible for cost of producing documents in their possession"). Accordingly, plaintiffs respectfully submit that each party to this MDL, including WAMY, should be responsible for bearing the cost of its own document productions.

### III. WAMY'S OPPOSITION SUPPORTS PLAINTIFFS' ARGUMENT THAT THE INDICES ARE FUNDAMENTALLY DEFICIENT

Despite compelling evidence to the contrary,[10] WAMY argues in its Opposition that the document descriptions set forth in the indices "provide more than enough information" to assess the relevance of each document, and in support thereof, directs the Court to Index No. 154 as an example of the "intelligible," "sufficiently detailed" descriptions. Opposition, pp. 7-8. Upon closer examination, however, the example WAMY offers confirms the fundamental inadequacies of the indices which prevent plaintiffs from intelligently selecting documents for review and/or duplication.

Looking at the entirety of the 5-page index, rather than just the 4 entries WAMY has selectively highlighted, Index No. 154 corroborates plaintiffs' contention that WAMY has proffered exceptionally brief and ambiguous descriptions that offer little insight into the nature and content of the documents – descriptions such as "Correspondence," "Regarding office in U.S.," "Regarding budget," or "Asking for official statement." Furthermore, the limited information provided in the index makes it undeniably difficult to determine what type of documents WAMY has collected – are these reports, financial statements, memoranda, letters, emails, or other? Without more information, plaintiffs cannot reasonably comprehend the nature of the documents at issue. Perhaps more importantly, the lack of detail validates plaintiffs' concerns that the content of the indices can be manipulated to conceal the existence of highly relevant materials.

Moreover, WAMY cannot credibly argue that thousands of documents collected from its various offices in the Kingdom and overseas branches, and presently stored in a conference room in WAMY's Riyadh headquarters, are being made available as they are kept in the usual course of business pursuant to Rule 34(b)(2)(E)(i).

Finally, despite numerous representations to this Court that WAMY has produced all documentation in its possession, custody and control relating to WAMY-Canada,[11] Index No. 154 clearly identifies 64 separate entries relating to its "office in Canada," including numerous documents authored by, or sent to, Mohammed Khatib, the former WAMY-Canada director and board member. That WAMY is using this artificially manufactured construct to intentionally withhold documents relating to its Canadian branch office, while simultaneously representing to this Court that it cannot obtain WAMY-Canada documents to produce to plaintiffs, is simply egregious and evidences a pattern of evasive and obstructionist conduct throughout these discovery proceedings.

---

[10] Motion to Compel, pp. 7-12.

[11] *See* WAMY's February 4, 2014 letter to the Honorable Frank Maas, p. 1(stating that "[WAMY] has produced all relevant WAMY-Canada documents in its possession"); p. 4 ("WAMY has produced all responsive WAMY-Canada documents within WAMY's custody and control"); p. 8 ("WAMY has not been obstructing production of discovery in this case."); *see also* Transcript, February 19, 2014 Hearing, pp. 21-22 (counsel for WAMY stating that "WAMY Saudi Arabia had documents relating to WAMY Canada in their offices, which were produced…. All of these were produced to plaintiffs and they have them.").

The Honorable Frank Maas
April 15, 2014
Page 6

Respectfully submitted,

*[signature]* By J Gll for the PECs

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:   The Honorable George B. Daniels (Via Hand Delivery)
      Members of Plaintiffs' Executive Committees (Via Email)
      Omar T. Mohammedi, Esq. (Via Email)
      Fred Goetz, Esq. (Via Email)
      Alan Kabat, Esq. (Via Email)

LEGAL\18674824\1 00000.0000.000/117430.000