MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLR & KREINDLER, LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J, Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

### Via ECF & Facsimile

July 15, 2016

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

    Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      We write in response to the letter from Dallah Avco's counsel dated May 27, 2016 (ECF No. 3287) ("Kry Letter") seeking to file seven (7) exhibits under seal. Dallah Avco's request should be denied.

      As an initial matter, Dallah Avco erroneously assumes that the standard for sealing documents filed with this Court is "good cause". Contrary to Dallah Avco's letter, the Second Circuit will apply a heightened standard to "judicial documents" because of the historic common law right of the public to access court filings. If these seven (7) exhibits are judicial documents, the Court must determine whether the presumption of access is an especially strong one that can be overcome only by extraordinary circumstances, or whether the presumption is a low one. Once the weight of the presumption is determined, a court must balance competing considerations against it. *See United States v. Amodeo*, 71 F.3d 1044, 1048-1050 (2d Cir. 1995) (*Amodeo II*); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006); 6-26 Moore's Federal Practice - Civil § 26.105 (2015). Only if the document is not "judicial," and there is "no presumption of public access" does the "baseline showing of good cause" apply. *See, e.g., Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011)*; see also Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 517 (E.D.N.Y. 2011).

Even under this lower "good cause" standard, as Judge Casey recognized when he issued the original Protective Order, the movant must show "that disclosure will result in a clearly defined, specific and serious injury." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005); *see also Havens v. Metropolitan Life Ins. Co. (In re Akron Beacon Journal)*, No. 94 Civ. 1402, 1995 U.S. Dist. LEXIS 5183, at *31 (S.D.N.Y. Apr. 20, 1995) ("[Defendant] fails to specify the nature or extent of injury [that] it contemplates release of the sealed documents would bring about, and accordingly fails to establish good cause."). Indeed, Judge Casey acknowledged that the Protective Order was "limited" and that "[u]nder normal circumstances, . . . broad assertions of good cause would be too general to support imposition of a protective order." *See* Memorandum and Order, dated October 3, 2006, at 5. Judge Casey specifically stated "*the Court will not permit such materials to be filed under seal pursuant to the Defendant's Committee's current application.*" *Id.* at 6 (emphasis added).

*Amodeo II* recognized a presumption of public access to documents involved in litigation, noting that any document filed in connection with any motion "or, indeed, . . . any other document which is presented to the court to invoke its powers or affect its decisions" "stand on a different footing" than documents that are simply exchanged during discovery. *See* 71 F.3d at 1050; *see also Byrnes v. Empire Blue Cross Blue Shield*, No. 98 Civ. 8520, 2000 WL 60221, at *1 (S.D.N.Y. Jan. 25, 2000) (a "party seeking a protective order must satisfy a more demanding standard to justify sealing portions of trials, other court hearings or papers filed with the court, *including motion papers*") (emphasis added); *see also Mineweaser v. One Beacon Am. Ins. Co.*, No. 14-CV-0585A, 2015 U.S. Dist. LEXIS 73173 (W.D.N.Y. June 5, 2015) (documents submitted in connection with motion to compel were judicial documents that could not be sealed); *In re Omnicom Group, Inc. Securities Litigation*, No. 02 Civ. 4483, 2006 U.S. Dist. LEXIS 76782, at *5 (Oct. 23, 2006) (finding letter briefs with accompanying exhibits submitted in support of motion to compel "certainly qualify as judicial documents").[1]

Here, Dallah Avco seeks to seal seven (7) exhibits it filed to support its Opposition to Plaintiffs' Motion to Compel. Accordingly, as these are "judicial documents" the public's interest in these documents is heightened and the burden on Dallah Avco becomes heavier. In this context, Dallah Avco would have the burden of showing "extraordinary circumstances" to justify sealing these exhibits, or at the very least, has the burden of showing a "clearly defined, specific and serious injury". Nevertheless, Dallah Avco has not produced a shred of evidence with its Opposition, other than the unsworn statement of Dallah Avco's counsel in a letter to the Court (if that even counts as evidence), specifying the clearly defined serious injury it would suffer if these documents were made public. Ironically, Dallah Avco did not have to file these documents in connection with its Opposition to Plaintiffs' Motion and sought to do so with full knowledge that the prior Protective Order did not cover public filings, precisely because the public's interest in court filings, especially in this case, is so strong.

Dallah Avco claims that an agency of another defendant in this case, Saudi Arabia, gave Dallah Avco documents on the condition that they remain confidential, and that

---

[1] Indeed, even a case cited by Dallah Avco confirms that documents filed in connection with a motion to compel are judicial documents. *See Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-cv-6608, 2014 U.S. Dist. LEXIS 122732, at *4 (S.D.N.Y. Sept. 2, 2014).

therefore the documents should remain confidential, even if they are filed. Even assuming this claim is true, that two defendants can unilaterally agree to provide documents to each other on the condition that they remain confidential, without any explanation why, and have the Court rely on that as a reason to seal documents is improper.[2] Indeed, Dallah Avco can only speculate that "evidently" Saudi Arabia "considers that these documents should not be publicly disclosed." Kry Letter at 1. That is simply an insufficient basis to seal publicly filed documents, especially documents that were filed to influence the Court's decision on a motion. *Nycomed US, Inc. v. Glenmark Generics, Inc*., No. 08-CV-5023, 2010 U.S. Dist. LEXIS 20788, at *20 (E.D.N.Y. Mar. 8, 2010) ("vague and conclusory allegations will not suffice"); *In re Parmalat Sec. Litig*., 258 F.R.D. 236, 253 (S.D.N.Y. 2009) (same).

Dallah cites three cases standing for the proposition that a court should defer to another country's confidentiality concerns in determining whether sufficient cause exists to shield documents from the public eye. However, those cases are distinguishable for a number of reasons (and two of the cases have nothing to do with another country's confidentiality concerns). First, in those cases, the parties actually set forth in detail the harm that would result if the documents were made public. Dallah has not done so here. Second, *Strauss*, the only case cited by Dallah Avco that discusses another country's confidentiality concerns, is distinguishable because French *law* prohibited disclosure of certain banking records the parties sought to seal, and French *law* was similar to U.S. *law* on the issue. There is no allegation here that any Saudi *law* prevents disclosure of the documents Dallah Avco proposes to seal. Rather the confidential nature of the documents appears to be the result of a private agreement between two defendants—(an agency of) Saudi Arabia and Dallah Avco. Further, in *Refco*, the documents were submitted in connection with a complaint and therefore were not being submitted to a court to decide a motion. Finally, in these cases, the documents to be sealed involved third parties that were not parties to the suit, whereas here, Saudi Arabia is part of this litigation as well.

Most importantly, contrary to Dallah Avco's statements to the contrary, there is enormous public interest in the instant litigation, and in documents related to Omar al-Bayoumi in particular. Defendants in this case are believed to have assisted in or directly perpetrated the largest terrorist attack on U.S. soil, which killed thousands of civilians, caused billions of dollars in property damage, and spawned a massive international campaign to root out terrorists and those that provide them material support. Numerous news agencies have followed this litigation for over a decade, the outcome of which will have a significant impact on U.S. relations with foreign sovereigns. The issues involved in this litigation have prompted Congress to consider enacting legislation to clarify the legislative infrastructure necessary to deter and punish terrorist attacks. Families of the victims of 9/11 have created non-profit organizations committed to finding out the complete truth behind the September 11th Attacks. Due to the importance of disclosing to the pubic exactly what happened leading up to the Attacks, Congress created the 9/11 Commission to investigate the attacks and inform the public of its causes. In the wake of this growing public interest, President George W. Bush classified 28-pages of the Joint Inquiry Report,[3] which many believe implicates the Kingdom of Saudi Arabia in the Attacks—a country

---

[2] Plaintiffs never entered into any agreement with Dallah Avco whatsoever regarding the confidentiality of documentation.

[3] There have also been public calls to release the 9/11 Commission's working papers.

which the United States considers a close ally and has partnered with to fight extremists abroad. In short, the public interest in this case is enormous, dwarfing virtually any other case in size, scope, and international significance. *See SEC v. TheStreet.com*, 273 F.3d 222, 234 (2d Cir. 2001) (upholding trial court decision allowing intervener online news syndicate access to deposition testimony and noting that the district court "could reasonably conclude, in the exercise of its informed discretion, that in the particular circumstances presented, the intervention of a media enterprise for the limited purpose of gaining access to the sealed documents required the striking of a new balance between privacy rights and the interest of the general public"); *Schiller v. City of New York*, 04 Civ. 7922, 2007 U.S. Dist. LEXIS 4285 (S.D.N.Y. Jan. 19, 2007) (granting intervener New York Times' request to de-designate certain confidential documents); *Havens*, 1995 U.S. Dist. LEXIS 5183, at *49 (granting newspaper intervener's motion to de-designate documents as confidential and to modify blanket protective order so that the defendant had to show good cause to keep documents confidential).

Accordingly, Dallah Avco's request to seal seven (7) exhibits it has filed with the Court should be denied.

                                            Respectfully submitted,

                                            /s/ Jerry S. Goldman
                                            Jerry S. Goldman, Esq.
                                            THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc:    The Honorable George B. Daniels (via Facsimile)
        MDL-1570 Counsel of Record (via ECF)