**BERNABEI & KABAT, PLLC**
ATTORNEYS AT LAW
1775 T STREET, N.W.
WASHINGTON, D.C. 20009
202.745.1942
FAX: 202.745.2627
WWW.BERNABEIPLLC.COM

LYNNE BERNABEI
ALAN R. KABAT
PETER M. WHELAN

CHRISTOPHER SOUSA
KRISTEN SINISI ▲

▲ ADMITTED IN PA AND MD ONLY

**MEMO ENDORSED**

By ECF
July 15, 2016

Hon. Frank Maas
United States Magistrate Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

*[Handwritten endorsement:]* Having reviewed this letter, I believe that it would be beneficial to hear further from the Plaintiffs, who are requested to submit a response by August 30, 2016.
Maas, USMJ,
8/15/16

Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(FM)

Dear Judge Maas:

    I write on behalf of defendant Perouz Sedaghaty [Seda], in response to the queries that Your Honor raised during the July 8, 2016 status conference. At that conference, you indicated that you were considering recommending that an adverse inference be drawn from the fact that Mr. Sedaghaty had invoked the Fifth Amendment privilege against self-incrimination during the initial stages of discovery, while his criminal case was still pending. I explained that after the Court of Appeals had reversed and vacated Mr. Sedaghaty's conviction, and after the government agreed to dismiss the indictment as to him, that Mr. Sedaghaty was no longer asserting the privilege. Moreover, all the documents to which he had asserted the privilege were produced to plaintiffs by defendant Al Haramain Islamic Foundation, Inc. (USA), over three years ago (in March and April 2013), so that there are no documents that continue to be withheld because of that privilege.

    As set forth below, the Second Circuit and the district courts have held that where a party has timely waived the privilege so that the opposing party is not prejudiced by the prior assertion of the privilege, that there is no basis for granting an adverse inference. Moreover, an adverse inference cannot be granted in a vacuum or based on speculation, but requires a concrete showing of corroborating evidence in support of liability.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/16
```

## I. Mr. Sedaghaty Timely Waived the Privilege.

As a threshold matter, the Fifth Amendment privilege only applies as long as there is a pending or likely criminal proceeding: "It 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory,' in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, **could be used in a subsequent state or federal criminal proceeding**." *United States v. Balsys*, 524 U.S. 666, 672 (1998) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972)) (emphasis added). Here, however, the criminal proceeding against Mr. Sedaghaty was terminated in his favor, so that there is no pending or subsequent criminal proceeding relating to his former role with the Al Haramain Islamic Foundation (USA).

The Second Circuit has recognized that a litigant "who has invoked the Fifth Amendment" may later change his mind and "ask to give up the privilege." *United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2d Cir. 1995). In those circumstances, the district court should recognize the validity of the waiver of the privilege:

> The district court should, in general, take a liberal view towards such applications, for **withdrawal of the privilege allows adjudication based on consideration of all the material facts to occur. The court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from a litigant's later-regretted decision to invoke the Fifth Amendment.** *See Graystone Nash*, 25 F.3d at 190–94; *see also FTC v. Sharp*, 782 F. Supp. 1445, 1452–53 (D. Nev. 1991) (refusing to bar a litigant's later testimony, since "it does not appear that the [opposing party] has been unfairly prejudiced" by prior assertion of Fifth Amendment); *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1291 (D. Minn. 1985) (admitting a litigant's testimony, since opposing party "has not been unfairly surprised or prejudiced by the [litigant's] assertion of the privilege and subsequent decision to testify at trial").

*Id.* at 84 (emphasis added).

The Second Circuit held that such a waiver or change of mind would be warranted, unless it "comes only at the 'eleventh hour.'" *Id.* at 85. The latter situation, of course, is <u>not</u> present here – since the privilege was waived three years ago with the production of all the documents relating to Mr. Seda, including the materials he provided to the grand jury, the documents seized from his personal residence, his personal and work emails, and the exhibits used at his trial.

Hon. Frank Maas
July 15, 2016
Page 3 of 8

Indeed, plaintiffs made no attempt to depose Mr. Sedaghaty, either before or after that production, so that this waiver was not belated. Instead, this situation is akin to that which the Second Circuit cautioned against:

> **A reviewing court must still make sure that a trial court has not, through inappropriate procedural remedies or unwarranted sanctions, unduly burdened litigants' valid attempts to seek the protection that the privilege against self-incrimination provides. And we must do so especially when there is nothing to suggest that the Fifth Amendment or its attempted withdrawal was used abusively or to gain an unfair tactical advantage.**[8] *See Graystone Nash*, 25 F.3d at 192 ("Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.").
>
> [footnote 8] Thus, circuit courts have reversed decisions in which a trial court has automatically entered judgment against the party that invoked the Fifth Amendment or has precluded that party from presenting any evidence whatsoever. *See Graystone Nash*, 25 F.3d at 190–94 (reversing an order barring defendants from offering any evidence after they invoked the Fifth Amendment); *Wehling*, 608 F.2d at 1087 (reversing a holding that plaintiff's assertion of the Fifth Amendment during discovery required the dismissal of his claim).

*Id.* at 85 & n.8 (emphasis added).

In contrast, where a party or the employee of a corporate party refused to testify at a deposition or at trial, only then have the courts held that an adverse inference can be warranted. *See, e.g., Certain Real Property*, 55 F.3d at 80, 86 (defendant asserted the privilege throughout discovery); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011) (two defendants' "refusal to answer any questions at trial"); *East Coast Novelty Co. v. City of New York*, 842 F. Supp. 117, 121 (S.D.N.Y. 1994) (refusal to testify at depositions); *see generally SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) ("One of the situations in which that concern comes into play arises when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege."). However, that situation is not present here – Mr. Sedaghaty's invocation of the privilege expired once the criminal proceedings were dismissed, and his documents were produced (through Al Haramain USA) over three years ago. Thus, this is not a case where the party invoked the Fifth Amendment privilege at his deposition or at trial, or waited until the summary judgment stage or trial to waive that privilege.

Here, the privilege was waived three years ago, plaintiffs received all the Al Haramain USA documents (which were nearly all obtained from Mr. Sedaghaty's residence), and there have been no depositions since then. Therefore, there was no prejudice to the plaintiffs arising from Mr. Sedaghaty's transitory invocation of the privilege during the period that his criminal prosecution was still alive, so that an adverse inference is not warranted.

## II. An Adverse Inference Is Not a Substitute for Admissible Evidence.

Moreover, it is settled law that an adverse inference cannot be imposed based on speculation, or absent cognizable evidence of the party's guilt. Instead, an adverse inference applies when a party refuses to testify in response to admissible, probative evidence. The Supreme Court, in holding that an adverse inference could be drawn in civil actions, stated that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to *probative evidence* offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (emphasis added). Evidence that does not satisfy the Rule 401 relevancy threshold ("evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") is not admissible under Rule 402 and hence not probative ("Evidence which is not relevant is not admissible.").

If the court finds that the evidence of a fact sought by a question to which a witness has invoked the Fifth Amendment privilege is both relevant and probative, then the court must determine whether there exists independent evidence of the facts for which the witness has invoked the Fifth Amendment. In other words, plaintiffs' counsel cannot simply demand an adverse inference jury instruction unless they are able to point to other corroborating evidence supporting their allegations. Here, of course, there are no pending discovery requests for which Mr. Sedaghaty continues to assert the privilege.

Even where a party continues to assert the privilege – a situation not present here – the courts have still held that an adverse inference requires corroborating evidence. For example, in a civil action arising from an alleged rape, both the district court and the Court of Appeals held that under the Supreme Court's ruling in *Baxter*, there could be no adverse inference drawn from the defendant's refusal to answer the question of whether he had ever taken a certain medical test, since the plaintiff had *no* independent or corroborating evidence relating to that issue:

> The *Baxter* holding is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context. Rather, lower courts interpreting *Baxter* have been uniform in suggesting that

> the key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer. *See, e.g., LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 391 (7th Cir. 1995); *Peiffer v. Lebanon Sch. Dist.,* 848 F.2d 44, 46 (3d Cir. 1988). Thus, an adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned, but that same inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint. *See Nat'l Acceptance Co. v. Bathalter,* 705 F.2d 924, 930 (7th Cir. 1983). **In such instances, when there is no corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted.** *See LaSalle Bank,* 54 F.3d at 391.

*Doe v. Glanzer,* 232 F.3d 1258, 1265 (9th Cir. 2000) (emphasis added). This determination also cannot be made until the presentation of evidence at trial. Since the purpose of discovery is to narrow the issues to be presented at trial, it would be premature for this Court to make this determination or recommendation at the present time.

Even if the district court determines that the evidence of a fact sought by a question to which a witness has invoked the Fifth Amendment privilege is both relevant and probative, and has further determined that there is independent evidence in the record to support the existence of the alleged fact sought by the unanswered question, then the court still has to determine whether the adverse inference is properly limited to the specific subject for which the witness invoked the Fifth Amendment. It would be impermissible to pile inferences upon inferences:

> A hypothetical can best illustrate this concept: Within a civil suit, a defendant is asked the question "did you ever pick up the gun?" The defendant refuses to answer asserting his Fifth Amendment privilege. The plaintiff then introduces into evidence the fact that defendant's fingerprints were found on the gun. The jury then may be instructed that from defendant's silence, it can infer that defendant picked up the gun. However, it cannot be instructed that it can infer from defendant's refusal to answer that particular question, that the defendant fired the gun, or that he disposed of the gun at the crime scene. **That would be constructing an inference on another inference. These other inferences could only come into play if the specific questions pertaining to such inferences are asked, are met with a Fifth Amendment privilege response, and are corroborated by other evidence to the specific fact being questioned.**

*Doe,* 232 F.3d at 1266 n.2 (emphasis added).

Here, of course, there is no issue or document for which Mr. Sedaghaty continues to assert the privilege, so that the plaintiffs will be unable to point to any evidence or testimony that they cannot obtain as a result of his *prior* invocation of the privilege.

Finally, the courts have consistently held that there is no bright-line rule requiring that an adverse inference jury instruction be given every time a party or a witness has invoked the Fifth Amendment privilege against self-incrimination. Instead, the courts have recognized that the adverse inference must be evaluated on a case-by-case basis:

> The court in *Rosebud* declined to announce any blanket rule legitimizing all attempts to require a witness to invoke the privilege in the presence of the jury. Likewise, we announce no such rule in this case, preferring instead to consider these questions on a case-by-case basis.

*Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) (citing *Rosebud Sioux Tribe v. A&P Steel, Inc.*, 733 F2d 509, 523 (8th Cir. 1984) ("we are not declaring a bright-line rule for use in all civil cases"); *see also Brink's, Inc. v. City of New York*, 717 F.2d 700, 708 (2d Cir. 1983) (recognizing "the difficulty, and perhaps the undesirability, of a bright line rule against drawing inferences from a failure to testify in the context of civil proceedings"); *United States v. District Council of N.Y. City*, 832 F. Supp. 644, 651-52 (S.D.N.Y. 1993) ("None of these cases set down a bright-line rule allowing the admission of an employee's Fifth Amendment invocation. Indeed, they carefully state that these questions should be considered on a case-by-case basis.") (citing *Cerro Gordo* and *Brink's*).

Thus, the district court must determine whether the plaintiffs have satisfied all the criteria for imposing an adverse inference, and only if those criteria are met may the district court then exercise its discretion and decide whether to give a jury instruction imposing an adverse inference based upon the presentation of the evidence at trial. And, here, Mr. Sedaghaty is not asserting the Fifth Amendment privilege with respect to any relevant or responsive documents.

Further, as the Second Circuit held, the district court must analyze the specific circumstances of the case at trial. *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) ("Accordingly, as in *Brink's*, the circumstances of a given case, rather than the status of a particular non-party witness, is the admissibility determinant"). Ultimately, the court must satisfy itself that the evidence satisfies "the overarching concern [which] is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

For example, Judge Leisure in *Wechsler* held that it was premature to issue an adverse inference, without knowing exactly what was information being withheld because of the invocation, and why that information was potentially relevant:

> Defense counsel's broad-based questions and Rosoff's sweeping invocation of his Fifth Amendment privilege provide no instruction as to the potential relevance of Rosoff's testimony. **Without such pertinent information, the Court cannot assess the resulting bias, if any, upon the parties from the Rosoff's claim of privilege and therefore cannot evaluate whether a negative inference would be appropriate.** *See United States v. Feola*, 651 F. Supp. 1068, 1129 (S.D.N.Y. 1987) ("It would be improper for this Court to speculate as to the circumstances that might surround the introduction of this evidence at trial ... and the purpose for which such a statement will be introduced at that time.")

*Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294 (PKL), 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) (emphasis added). Similarly, Judge Katz held that an adverse inference was not warranted against two parties, where the party seeking the inference "failed to present any evidence showing that" those parties had any involvement with the alleged illegal conduct of yet other defendants. *Pure Power Boot Camp*, 813 F. Supp. 2d at 555.

Two other decisions held that an adverse inference alone <u>cannot</u> be the sole basis for ruling on summary judgment, since there must be other evidence supporting the existence of the alleged fact sought by the unanswered questions. The Seventh Circuit held that it was reversible error to grant summary judgment to the plaintiff in a civil RICO action based solely on the defendant's invocation of the Fifth Amendment, since that would violate the right to invoke the Fifth Amendment. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1994). "Although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds." *Id.* at 391 (quoting *Baxter*, 425 U.S. at 318). Thus, "the district court did draw an impermissible inference of liability based only on the Segubans' assertion of the Fifth Amendment privilege," so that judgment was improperly granted. *Id.* at 394.

Similarly, Judge Kessler held that, under *Baxter* and *LaSalle Bank*, summary judgment could not be granted to the plaintiff as to one defendant, where a witness exercised his Fifth Amendment right, since even if an adverse inference was to be recognized, "Such an adverse inference would not, in any case, support a grant of summary judgment *without additional evidence* that J.S. Holdings' funds are traceable to Huttoe's wrongful acts." *SEC v. Huttoe*, No. Civ. A. 96-2543 (GK), 1998 WL 34078092, at *14 (D.D.C. Sept. 14, 1998) (emphasis added).

### III.  Conclusion.

This Court should decline to recommend an adverse inference instruction with respect to Mr. Sedaghaty's *prior* invocation of the Fifth Amendment privilege. That invocation was waived when all of his relevant and responsive documents were produced in early 2013, so that there are no documents to which he continues to assert the privilege. There is no prejudice to plaintiffs, since they remain free to question him, whether at deposition or at trial, about their allegations and his defenses.

Moreover, an adverse inference is only warranted if the plaintiffs can show that they have other independent and admissible evidence corroborating their allegations as to Mr. Sedaghaty – a determination that cannot be rendered on the present evidentiary record.

Sincerely,

*/s/ Alan R. Kabat*

Alan R. Kabat

cc:   MDL-1570 Counsel of Record