## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* (1944-2013)<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>SIMMONS HANLY CONROY LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND FACSIMILE**

September 6, 2016

The Honorable Frank Maas
United States District Court for the S.D.N.Y.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

    Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

    The Plaintiffs' Executive Committees for all of the plaintiffs, pursuant to the Court's endorsement at ECF No. 3329 (as extended by ECF No. 3332), write in reply to the July 15, 2016 response of Perouz Sedaghaty (ECF No. 3317), and in further support of Plaintiffs' motion to impose sanctions on Mr. Sedaghaty (ECF No. 2991) (Aug. 10, 2015).  Specifically, the issue here concerns the point raised by the Court during the July 8, 2016 hearing – namely, whether the Court should impose an adverse inference sanction on Mr. Sedaghaty for his failure to comply with his obligations to engage Plaintiffs in discovery, relying on his improper assertion of his Fifth Amendment privilege, despite multiple court orders directing him to engage.

    In his letter, Mr. Sedaghaty argues three general points: first, that he waived in a timely manner his assertion of his Fifth Amendment privilege; second, that Plaintiffs have experienced no prejudice essential to imposition of an adverse inference sanction; and third, that adverse inference cannot be imposed now without a concrete showing of corroborating evidence in support of liability.  All of his arguments fail, because his last-minute waiver was untimely, his conduct has cost Plaintiffs years of delay and lost resources in seeking discovery, and (in addition to the fact that corroborating evidence exists) that showing is necessary only at the time of trial, when the trial court would employ the inference – not in the midst of discovery.

The Honorable Frank Maas
September 6, 2016
Page 2
_____

### I. Mr. Sedaghaty Did *Not* Timely Waive the Fifth Amendment Privilege and Asserted It Until His Lawyer Announced Its Waiver During the Hearing Before the Court.

Mr. Kabat's claims, both during the July 8, 2016 court hearing and in his July 15, 2016 letter, that Mr. Sedaghaty made a timely waiver of his Fifth Amendment assertion are, at best, deceptive. Although Mr. Sedaghaty *now* claims, retrospectively, that he waived his Fifth Amendment assertion three years ago, long before the July 8, 2016 hearing, the fact is that, from the time that Mr. Sedaghaty initially asserted the privilege in January 2011 (ECF No. 2404, Sedaghaty Motion to Stay based on assertion of Fifth Amendment privilege) until the hearing on July 8, 2016, Mr. Sedaghaty had *never* even intimated to anyone that he was withdrawing his assertion. In fact, he specifically continued to assert the privilege in at least six additional filings before this Court and the Second Circuit court.[1] Indeed, even in Mr. Sedaghaty's own letter he recognizes that (1) he never responded to discovery and has just sought to rely on discovery responses from others,[2] and (2) that in order for him to have waived his assertion, he needed to "ask to give up the privilege"[3] which he never did. Even to this date, *no discovery filing asserting the privilege has been supplemented or amended to withdraw the assertion identified therein*. Plaintiffs were never advised even outside of the formal discovery process that Mr. Sedaghty intended to withdraw his assertion.

At best, Mr. Sedaghaty withdrew his assertion in an untimely manner, without prior notice, at the July 8, 2016 hearing on a second motion for sanctions premised on his refusal to engage in discovery based on his assertion, *five and a half years after* the discovery was served in December 2010, *five years after* Plaintiffs filed their first request for sanctions premised on his refusal to engage in discovery based on his assertion (ECF No. 2488), *a year and a half after* the December 2014 deadline for rolling production of initial document discovery, and *nearly a full year after* Plaintiffs filed their second request for sanctions again premised on his refusal to engage in discovery based on his assertion (ECF No. 2991). Not until Mr. Sedaghaty's counsel was standing before the Court facing imminent imposition of sanctions did Mr. Sedaghaty's counsel then finally disclose that Mr. Sedaghaty was waiving his assertion. That is hardly a timely waiver.

A concerning aspect of Mr. Sedaghaty's argument is its implicit presumption that the Court must credit his initial refusal for years to engage in discovery. But the facts and both this Court and

---

[1] *See* ECF No. 2488 (June 29, 2011, Opposition to Plaintiffs' Discovery Motion); ECF No. 2499 (December 6, 2011, Sedaghaty Rule 72 Objection); Second Cir. Dkt. No. 11-5372, ECF No 7 (December 29, 2011, Sedaghaty Mandamus Petition); ECF Nos 2991-4 and 2991-2 (January 20, 2012 and September 4, 2012, Sedaghaty's Objections to Responding to Discovery Requests, based on assertions of the Fifth Amendment); ECF No. 2991-5 (February 28, 2013, Sedaghaty letter indicating that Mr. Sedaghaty "continues to assert his Fifth Amendment privilege").

[2] *See, e.g.,* Sedaghaty Ltr at 2 ("the privilege was waived three years ago with [Al Haramain's] production of all documents relating to Mr. Seda, including the materials he provided to the grand jury, the documents seized from his residence [which also served as Al Haramain's offices], his personal and work emails [which were comingled], and exhibits used at his trial." (bracketed text added)).

[3] *See* Sedaghaty Ltr at 2, citing *United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2d Cir. 1995).

The Honorable Frank Maas
September 6, 2016
Page 3

_____

the Second Circuit have all made clear that his refusal to engage in discovery was wrong from the start.  First, Mr. Sedaghaty's involvement in the litigation was initially delayed by his wrongful conduct of fleeing from the United States to Saudi Arabia, Iran, and Syria.  Moreover, there is no question that Mr. Sedaghaty actively continued to refuse to respond meaningfully to any discovery even after the Courts' had ruled,[4] and that notwithstanding his informal efforts to point to productions by other co-defendants, he has produced no documents or otherwise responded meaningfully to any discovery himself.

Mr. Sedaghaty cannot credibly argue that he timely withdrew his assertion given that he fled from the jurisdiction, then resisted discovery by continuing to actively assert his Fifth Amendment privilege even after this Court and the Second Circuit had denied his efforts to stay discovery, and also given that he never alerted anyone – even in any of the briefing on two sanctions motions – of any intention to withdraw the assertion until July 8, 2016, in the middle of a third hearing regarding requests to impose sanctions.  Under the circumstances, Mr. Sedaghaty's argument that his waiver was not last minute or not tactical is not at all credible.

## II.     Mr. Sedaghaty's Failure to Waive Before July 8, 2016 Caused Plaintiffs Substantial Prejudice.

Types of prejudice considered for imposition of an adverse inference may include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party. Prejudice also includes deprivation of information through noncooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Harrington v. All Am. Plazas, Inc.*, No. 08-3848, 2010 U.S. Dist. LEXIS 67583, 2010 WL 2710573, at *3 (D.N.J. July 7, 2010) (citing *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994)).  In Mr. Sedaghaty's case, all of the above-referenced types of prejudice are identifiable.

The circumstances of Mr. Sedaghaty are hardly distinguishable from those of the previously sanctioned defendant Wa'el Jelaidan.  When this issue was presented in nearly identical fashion regarding Mr. Jelaidan, the Court agreed that Mr. Jelaidan's willful refusal to engage in discovery – using as an example, his failure to produce his own banking records – necessitated the imposition of severe sanctions, including an adverse inference.  ECF No. 2789 at 16.  There, this Court observed that "[w]ithout banking records, for example, it will be very difficult, if not impossible, for the Plaintiffs to prove that Jelaidan financed terrorism-related activities.  The only means of restoring the evidentiary imbalance caused by Jelaidan's incomplete production is the imposition of an adverse inference instruction." *Id.*  Here, in addition to Mr. Sedaghaty's failure to produce bank records, Mr. Sedaghaty also failed to produce various relevant tax documents requested in discovery.  Had he responded to discovery in a timely manner, or at least protected the requested documents, they

_____
[4] *Compare* ECF Nos. 2491, 2501, 2529, (District Court ruling on November 11, 2011, December 15, 2011, and January 11, 2012) and ECF No. 2531 and Second Cir. Dkt. No. 11-5371 ECF No. 30 (Second Circuit Orders on January 12, 2012 and March 28, 2012) *with* ECF Nos 2991-4 and 2991-2 (January 20, 2012 and September 4, 2012, Sedaghaty's Objections to Responding to Discovery Requests, based on assertions of the Fifth Amendment); ECF No. 2991-5 (February 28, 2013, Sedaghaty letter indicating that Mr. Sedaghaty "continues to assert his Fifth Amendment privilege").

The Honorable Frank Maas
September 6, 2016
Page 4
_____

would have been available. However, given his delay in engaging in discovery, the documents are not available.

      Mr. Sedaghaty's years of delay in engaging in discovery effectively cut off any questioning of Mr. Sedaghaty over the course of his self-created discovery moratorium. In the course of that time, Mr. Sedaghaty fled from the U.S. to Saudi Arabia, Iran, and Syria. He then refused to participate in discovery for several years after he returned. Particularly considering Mr. Sedaghaty's past claims that documents and other information went missing in government raids and his related ineffectiveness in protecting and retrieving information due to his absence from the U.S., it would *not* be credible to suggest that over five years of intercontinental travel through more than four countries, and the passage of many years, has not resulted in some dimmed memories and otherwise lost information. In addition to the documents Plaintiffs have specifically identified as missing from discovery, Plaintiffs are presumptively deprived of additional documents and the benefit of Mr. Sedaghaty's fresh memory. It is not credible to suggest that his memory remains unfaded by time and his elaborate efforts to evade the jurisdiction of the United States courts. Likewise, after Mr. Sedaghaty elected to willfully evade discovery for over a half a decade, it would be unfair to insist that Plaintiffs must identify every document or other point of data that went missing due to his evasion.

      Finally, Mr. Sedaghaty's failure to timely waive his assertion of the Fifth Amendment privilege and engage meaningfully in discovery has required Plaintiffs to engage in substantial motion practice, incurring costs in time and resources expended to obtain court orders to force compliance with discovery obligations. Moreover, Mr. Sedaghaty's evasive conduct must be considered in light of similar conduct of other Al Haramain-related defendants (Al Haramain, Saudi Arabia, Al Haramain, USA, and Soliman Al-Buthe), who have all – along with other defendants in the litigation – collectively pursued a strategy of intentionally diverting the Plaintiffs' and the Courts resources. And in the case of the Al Haramain defendants, largely while being represented by the same counsel.

      Finally, while Mr. Sedaghaty's counsel has informally expressed that Mr. Sedaghaty has no documents to produce beyond those produced by Al Haramain, no discovery responses that are usable in Court against Mr. Sedaghaty have been provided. Under existing circumstances, Plaintiffs are left unsatisfied as to whether Mr. Sedaghaty has control over additional, unproduced documents, including, for example, documents regarding his own bank accounts, both U.S. and foreign (Plaintiffs' Requests Nos. 11 and 12); regarding investigations/audits of Mr. Sedaghaty's own accounts (Plaintiffs' Request 16); regarding his travels outside the U.S. when he fled from this jurisdiction (Plaintiffs' Requests 42, 43); regarding his own communications and interactions with other defendants (Plaintiffs' Requests 20, 34, 38, 43, 82); or regarding Al Haramain's designation as a SDGT (Plaintiffs' Requests 24, 29). Indeed, regarding documents responsive to Plaintiffs' Request No. 41 (requesting documents concerning his criminal proceedings), not only did Plaintiffs face stiff opposition from Mr. Sedaghaty's counsel (then purporting to act as Al Haramain's counsel), but ultimately counsel delayed production of documents responsive to that request, including documents from the July 29, 2014 plea proceedings in Oregon. Counsel delayed producing those documents until March 6, 2015, over six months after the event and nearly three months after the December 15, 2014 deadline for completing rolling productions in these proceedings.

The Honorable Frank Maas
September 6, 2016
Page 5

_____

      Accordingly, Plaintiffs contend that Mr. Sedaghaty's delayed waiver and his refusal to engage in discovery in a timely manner has prejudiced Plaintiffs not just by the loss of evidence and the inevitable dimming of Mr. Sedaghaty's memories, but also by the excessive and likely irremediable burdens and costs in time and resources incurred by the Plaintiffs to obtain court orders to force compliance with discovery obligations.

### III. Though the Existence of Admissible Evidence May Be Necessary to Impose an Adverse Inference, Not Only Does Such Evidence Exist Now, But Also the Time for Assessing that Evidence is at the Time of Trial, Not Now, Before Discovery Is Complete.

      Although there has been ample evidence against Mr. Sedaghaty outlined, inter alia, in the criminal indictment and trial, the proper time to assess the evidence is when the adverse inference is sought to be applied at trial, not at the time the court is sanctioning the defendant for his willful discovery transgressions in the course of ongoing discovery.  Still, the existence of evidence against Mr. Sedaghaty is underscored by the government's successful conviction of him, undone only by discovery that the government had failed to disclose an incentive to a government witness and the government's decision not to retry Mr. Sedaghaty in conjunction with a plea deal ending the existence of his then-employer, Al Haramain.

      In summary, Plaintiffs reaffirm their request that the Court impose an adverse inference sanction against Mr. Sedaghaty for refusing to waive his Fifth Amendment assertion in a timely manner and meaningfully engage in discovery (particularly in the face of a previous unequivocal orders compelling him to do so) and for requiring the parties to engage in unnecessary motion practice to compel a response from him.

      Respectfully,

      *Robert T. Haefele*
      ROBERT T. HAEFELE
      *FOR THE PLAINTIFFS' EXEC. COMMITTEES*

cc:    The Honorable George B. Daniels, via Facsimile and ECF
       Alan R. Kabat, Esq., counsel for Perouz Sedaghaty, via ECF
       Sean Carter, Esq., via ECF
       Jerry Goldman, Esq., via ECF
       All Counsel of Record via ECF