**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 10/12/2016 __

**03-MDL-1570 (GBD)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to: Hoglan v. Islamic Republic of Iran, 11-CV-7550 (GBD)(SN)

      The plaintiffs in Hoglan ("Hoglan Plaintiffs") seek the entry of default judgments awarding them compensatory and punitive damages against the Islamic Republic of Iran, Ayatollah Ali Hoseini Khamenei, Hezbollah, and other Iranian individuals and entities ("Sovereign Defendants"). For the reasons set forth below, I recommend that 13 of the 15 Estates represented in the case and 190 of the 278 individual family member plaintiffs be awarded a partial final default judgment against Iran in the amount of $1,759,715,035. I further recommend that the individual family members receiving solatium awards and the Estates receiving pain and suffering awards be awarded prejudgment interest on those damages from September 11, 2001 to the date judgment is entered at the rate of 4.96 percent per annum, compounded annually.

      The claims of the remaining 79 individual plaintiffs, who claim to be the "functional equivalents" of immediate family members, as well as all of the individual and estate claims pertaining to non-U.S. national decedents Nicholas Rowe and Hagay Shefi, with the exception of

the claims of two of Hagay Shefi's U.S. national children, shall be addressed in a forthcoming

Report and Recommendation.[1]

## PROCEDURAL BACKGROUND

This case is one of numerous related actions filed against Iran and its agencies and

instrumentalities on behalf of the estates and family members of the victims of the heinous

attacks of September 11, 2001. That day's brutality was without parallel in the recent history of

our Nation and our City—a brutality which was incomparably greater for those loved ones who

continue to grieve for the victims of the attacks to this day. While the suffering and heartbreak

that they have gone through is impossible to quantify, these cases require that the Court perform

this delicate task.

The Hoglan case rests largely on the extensive evidentiary record compiled in Havlish v.

Bin Laden, No. 03-CV-9848 (GBD)(FM), a case brought on behalf of September 11 victims

involving the same Iranian defendants. This record, based on, *inter alia*, thirty hours of sworn

testimony by former Iranian intelligence operatives, documentary exhibits, affidavits of ten

expert witnesses including members of the National Commission on Terrorist Attacks upon the

United States and other evidence, established that the Iranian defendants had furnished material

support for the Al Qaeda terrorist network, and that plaintiffs had demonstrated reasonable

connections between this support and the 9/11 attacks perpetrated by the Al Qaeda terrorists.

ECF No. 3019 at 58, ¶ 46 (Hoglan Findings of Fact and Conclusions of Law). This record was

fully incorporated into this case, and Hoglan was recognized as a "related action" to Havlish as

---

[1] One individual family member plaintiff, Michelle Baker, falls into both categories, as she asserts that she was the functional equivalent of a spouse for non-U.S. national decedent Nicholas Rowe. However, as she herself is a U.S. citizen, the only question governing her recovery is whether or not she qualifies as Rowe's "immediate family member" or a functional equivalent thereof.

defined by § 1083(c)(3) of the National Defense Authorization Act for Fiscal Year 2008. Id. at 48, ¶ 298–¶ 300.

On December 22, 2011, The Honorable George B. Daniels entered an Order and Judgment in Havlish against the same defendants named in this case. ECF No. 2516. The Havlish order referred all remaining issues regarding the case, including the calculation of compensatory and punitive damages, to The Honorable Frank Maas. Id. at 3. In a Report and Recommendation dated July 30, 2012, Judge Maas approved the Havlish plaintiffs' proposed economic, pain and suffering, solatium, and punitive damage awards for all plaintiffs except one, who was deemed not to be the functional equivalent of an immediate family member. In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2012 WL 3090979 (S.D.N.Y. July 30, 2012) ("Havlish Report"). On October 3, 2012, Judge Daniels adopted Judge Maas's Report and Recommendation in full, granting damages in the sum of $6,048,513,805 to the Havlish plaintiffs, plus prejudgment interest. In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2012 WL 4711407, at *1 (S.D.N.Y. Oct. 3, 2012).

On August 31, 2015, Judge Daniels issued an Order of Judgment granting the Hoglan plaintiffs' motion for entry of a default and entering final judgment on liability against all of the Iranian Defendants. ECF No. 3023 (Hoglan Order of Judgment). On the same date, Judge Daniels also issued defaults in three related cases. ECF No. 3020 (Order of Judgment in Federal Insurance Co. v. al Qaida, No. 03-CV-6978 (GBD)(FM)); ECF No. 3021 (Order of Judgment in Ashton v. al Qaeda Islamic Army, No. 02-CV-6977 (GBD)(FM)); ECF No. 3022 (Order of Judgment in Estate of O'Neill v. Republic of Iraq, No. 04-CV-1076 (GBD)(FM)).

All four of these cases were referred to Judge Maas for determination of damages. On December 28, 2015, Judge Maas recommended that pain and suffering and associated punitive

damages be issued to the Ashton plaintiffs for a total of $7,556,880,000 using the same formula that he employed in the Havlish case. In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2015 WL 9468813, at *1 (S.D.N.Y. Dec. 28, 2015) ("Ashton Report").[2] On March 9, 2016, Judge Daniels adopted Judge Maas's Report and Recommendation in full. In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2016 WL 1029552 (S.D.N.Y. Mar. 9, 2016). On June 16, 2016, Judge Daniels issued an Order for Further Partial Judgment in Ashton, awarding economic damages to four estates and solatium damages to family members related to those decedents, as well as the punitive damages associated with them, following the formula established by Judge Maas. ECF No. 3300.

On January 11, 2016, the Hoglan plaintiffs submitted a damages inquest memorandum. ECF No. 3194 ("Pls.' Dam. Inq. Mem."). On October 4, 2016, this case was transferred to me from Judge Maas for calculation of damages.

## FACTUAL BACKGROUND

The Hoglan plaintiffs are family members and legal representatives of the victims of the September 11, 2001 terrorist attacks. Pls.' Dam. Inq. Mem. at 3. Their claims are brought by the estates of 15 people who were killed on September 11 ("Estate Plaintiffs") and 278 individual family members ("Individual Plaintiffs"). Id. at 3–4, Ex. A. The Estate Plaintiffs present claims for economic damages for past and future lost wages and benefits of each 9/11 decedent, as well as damages for the pain and suffering that each 9/11 decedent endured before their deaths on September 11, 2001. Id. at 12–15. The Individual Plaintiffs request damages for solatium, the mental anguish, bereavement and grief that immediate family members suffered as a result of

---

[2] The same Report and Recommendation recommended a default judgment in the sum of $3,040,998,426.03 on behalf of the insurance company carrier plaintiffs in Federal Insurance Co. v. al Qaida, No. 03-CV-06978 (GBD)(FM). Id.

decedents' deaths, as well as the harm caused by the loss of decedents' society and comfort. Id. at 15–17.

Thirteen of the fifteen Estate Plaintiffs represent the estates of U.S. nationals killed in the attacks. Id. at 40. Two of the Estate Plaintiffs, however, represent non-U.S.-nationals; the Estate of Nicholas Rowe and the Estate of Hagay Shefi. Nicholas Rowe, a citizen of South Africa, and Hagay Shefi, a citizen of Israel, were both lawful permanent residents of the United States at the time of their deaths. Id. at 40–42.

Most Individual Plaintiffs are spouses, parents, children, or siblings of decedents who enter within the traditional definition of "immediate family members" permitted to maintain solatium claims under general principles of tort law. Id. at 17–20. But among the class of plaintiffs there are also stepparents, stepchildren, stepsiblings, cousins, uncles, aunts, grandparents, nephews, nieces, and in-laws. Id. Ex. A. Though they do not fall into the category of "immediate family members" described above, all allege that because they had served as the "functional equivalents" of a qualifying family member in decedents' lives, they are entitled to solatium damages as well. Id. at 20–30. Plaintiffs have organized the Individual Plaintiffs' claims into three categories: Category A for immediate family members of a 9/11 decedent, Category B for family members who are alleged to be clearly "functional equivalents" of immediate family members of a 9/11 decedent, and Category C for extended family members whose familial and factual relationship to a 9/11 decedent are alleged to make them "functional equivalents" of immediate family members, albeit in a manner not explicitly described by existing case law. Id. at 11–12.

Additionally, Plaintiffs represent that 27 Individual Plaintiffs have sought or will seek voluntary dismissal of their claims by separate motion. Id. at 4 n.1. Accordingly, this Court will not consider these Individual Plaintiffs' claims at this time.

The factual scenario presented in this case is nearly identical to that of Havlish and Ashton; all are suits brought against Iran and other defendants by the estates of persons who either were killed during the September 11, 2001 attacks or by their family members suing in their own right. As such, this Court's recommendations shall closely follow many, though not all, of the claim value determinations and damage methodologies present in Judge Maas's carefully considered Reports and Recommendations in Havlish and Ashton. Havlish Report, 2012 WL 3090979; Ashton Report, 2015 WL 9468813.

## DISCUSSION

## I.  Estate Plaintiffs' Economic Damages

Each Estate Plaintiff seeks economic damages for (a) the past and future lost wages and benefits of each decedent; (b) the estate's loss of household services; (c) its loss of advice, counsel, guidance, instruction, and training services; and (d) its loss of accompaniment services. Pls.' Dam. Inq. Mem. at 12. To support their claims for these damages, the Estate Plaintiffs have submitted extensive analyses by Dr. Stan V. Smith, a forensic economist. See Pls.' Dam. Inq. Mem. Ex. G (Dr. Smith's curriculum vitae). Dr. Smith calculated each decedent's lost wages and benefits by assuming that the decedent would have worked until the age of 67 and adjusting his calculations through the use of growth and discount rates, and calculated each estate's non-wage-related losses by determining the replacement cost of those services. See id. Ex. F.

Dr. Smith has provided detailed economic reports with calculations and backup data and tables for all of the decedents in this case. Having reviewed Dr. Smith's reports, I find that his

calculations are reasonable and yield proposed economic damages awards comparable to those in Havlish and other cases under the FSIA terrorism exception. See Havlish Report, 2012 WL 3090979; see also Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261, 310-24 (D.D.C. 2005); Alejandre v. Republic of Cuba, 996 F. Supp. 1239, 1249 (S.D. Fla. 1997); Ferrarelli v. United States, 90-CV-4478 (JMA), 1992 WL 893461 at *19 (E.D.N.Y. Sept. 24, 1992).

I therefore adopt Dr. Smith's findings regarding lost wages, benefits, and services, and recommend that all the Estate Plaintiffs except the Estates of Nicholas Rowe and Hagay Shefi be awarded economic damages totaling $469,465,035. The claims of the Rowe and Shefi estates, because they pertain to decedents who were not U.S. nationals at the time of their deaths, will be addressed in a separate Report and Recommendation.

## II.    Estate Plaintiffs' Pain and Suffering Damages

The Estate Plaintiffs also seek damages for the conscious pain and suffering that their decedents endured before their deaths on September 11, 2001. In determining appropriate monetary damages to be awarded for pain and suffering, the Court is guided by a "standard of reasonableness." Mastrantuono v. United States, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001).

As was the case in the Havlish proceedings, Plaintiffs have submitted the expert report of Alberto Diaz, Jr., M.D., a retired Navy Rear Admiral and board-certified physician and psychiatrist. See Pls.' Dam. Inq. Mem. Ex. D, E. While it is not possible to determine the exact conditions of the deaths of each decedent, Dr. Diaz's report details the harrowing conditions in which 9/11 victims lost their lives. There can be no doubt that every decedent felt fear, pain, and physical and psychological anguish that was almost unfathomable.

Accordingly, following the calculations in the <u>Havlish</u> report, I recommend that the Estate Plaintiffs (except the Estates of Nicholas Rowe and Hagay Shefi) be awarded $2 million each for their decedents' pain and suffering, totaling $26,000,000.

## III.   Individual Plaintiffs' Solatium Damages

Under Section 1605A of the Foreign Sovereign Immunities Act, qualifying family members of decedents are entitled to solatium. 28 U.S.C. § 1605A(c). "A claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." <u>Belkin v. Islamic Republic of Iran</u>, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). Because of the extreme and outrageous conduct inherent in acts of terrorism, courts have held that solatium claims in FSIA terrorism cases are "indistinguishable" from claims of intentional infliction of emotional distress. <u>See</u>, <u>e.g.</u>, <u>Surette v. Islamic Republic of Iran</u>, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting <u>Wagner v. Islamic Republic of Iran</u>, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Terrorist attacks, by their very nature, are meant to inflict severe emotional distress upon society as a whole, but the loved ones of their victims bear a burden which is unquestionably heavier. As the September 11 attacks have left deep scars in the consciousness of this city and this nation, family members of the decedents are left with constant and stark reminders of their tragic losses.

In the <u>Havlish</u> Report, Judge Maas applied a framework first articulated in <u>Heiser v. Islamic Republic of Iran</u>, 466 F. Supp. 2d 229 (D.D.C. 2006). In <u>Heiser</u>, which awarded solatium damages to family members of servicemen killed in a 1996 Hezbollah bombing in Saudi Arabia, the court surveyed the damage awards issued in comparable cases, awarding $8 million to spouses, $5 million to parents or children, and $2.5 million to siblings. <u>Id.</u> at 269. "Considering

the extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Judge Maas granted upward departures from the Heiser framework, raising the amount of solatium damages to $12.5 million to spouses, $8.5 million to parents or children, and $4.25 million to siblings. Havlish Report, 2012 WL 3090979, at *5.

The Individual Plaintiffs have presented voluminous evidence attesting to the strength of their relationship with the decedents and the heartbreak and prolonged suffering that they have had to undergo as a result of the Sovereign Defendants' actions. Therefore, I adopt Judge Maas's framework and recommend that all 188 Individual Plaintiffs who are immediate family members of a U.S. national decedent should be awarded solatium damages as follows:

| Relationship to Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Additionally, I recommend that $8,500,000 in solatium damages be awarded to each of the two U.S. national children of non-U.S. national decedent Hagay Shefi.[3] The plain text of the jurisdictional section of the FSIA's terrorism exception states that courts shall hear terrorism claims when "the claimant or the victim was, at the time that [the terrorist act] occurred—(I) a national of the United States." 28 U.S.C. § 1605A(a)(2)(A)(ii) (emphasis added); see also In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31, 42 (D.D.C. 2009) ("[T]he victim

---

[3] The names of these Individual Plaintiffs are Roy-Yetkutiel Shefi and Naomi-Ruth Shefi.

or claimant in an action against a state sponsor of terrorism must have been a United States citizen or national at the time of the incident that gave rise to his claim(s).”); Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (awarding solatium damages to U.S. national immediate relatives of non-U.S. national victim). Because decedent Hagay Shefi’s children were nationals of the United States at the time of the September 11, 2001 attacks, this Court must exercise jurisdiction over their claims. Furthermore, as natural born citizens of the United States and immediate family members of decedent Hagay Shefi, they are clearly entitled to assert a private right of action for solatium damages, regardless of their father’s nationality. “A foreign state that is or was a state sponsor of terrorism . . . shall be liable to . . . (1) a national of the United States . . . for personal injury or death caused by [statutorily identified acts, including extrajudicial killing] . . . . In any such action, damages may include . . . solatium.” 28 U.S.C. § 1605A(c). Accordingly, their entitlement to solatium damages is equivalent to that of the Individual Plaintiffs who are immediate family members of U.S. national decedents.

Therefore, I recommend that the 188 Individual Plaintiffs in Category A who are immediate family members of a U.S. national decedent, as well as the two claimants associated with the Shefi estate who were U.S. nationals on September 11, 2011, be awarded a total of $1,264,250,000 in solatium damages.

This recommendation does not include all non-immediate-family Individual Plaintiffs categorized as “Category B” or “Category C” by the Hoglan Plaintiffs (see Pl. Dam. Inq. Mem. Ex. A) as well as non-U.S. national “Category A” plaintiffs related to non-U.S. decedents

Nicholas Rowe[4] and Hagay Shefi.[5] A forthcoming Report and Recommendation will address the solatium claims of these Individual Plaintiffs.

## IV.    Punitive Damages

The FSIA also entitles Plaintiffs to seek punitive damages. 28 U.S.C. § 1605A(c)(4). In the <u>Havlish</u> and <u>Ashton</u> Reports and Recommendations, Judge Maas applied a punitive damage multiplier of 3.44 to all compensatory damages awarded. <u>Havlish</u> Report, 2012 WL 3090979 at *5–6.

The <u>Havlish</u> and <u>Ashton</u> Reports and Recommendations followed the ratio set by the U.S. District Court for the District of Columbia in litigation brought by estates and family members of the victims of the 1984 bombing of a U.S. Marine Barracks in Beirut, Lebanon. <u>See Estate of Brand v. Islamic Republic of Iran</u>, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (applying 3.44 multiplier); <u>Murphy v. Islamic Republic of Iran</u>, 740 F. Supp. 2d 51, 75 (D.D.C. 2010) (applying same ratio); <u>Valore v. Islamic Republic of Iran</u>, 700 F. Supp. 2d 52, 89-90 (D.D.C. 2010) (calculating punitive damages based five times Iran's annual financing of Hezbollah, with a final figure of 3.44 times the compensatory damages awarded in the case).

This Court respectfully disagrees with the logic underlying the line of cases upon which the <u>Havlish</u> report relies and on which the plaintiffs here seek massive punitive damages. In <u>Valore</u>, the court applied a well-established framework derived from the Restatement (Second) of Torts considering "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." <u>Valore v. Islamic Republic of Iran</u>, 700 F. Supp. 2d 52, 87 (D.D.C.

---

[4] These plaintiffs are the Estate of Judith Rowe, Guardian of Nadine Rowe, Paul Rowe and Rachel Logan.
[5] These plaintiffs are Sigal Shefi-Asher, Dov Shefi, Esther-Rivka Shefi, Yishai Shefi, and Pazit Baum-Shefi.

2010) (citing Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 32 (D.D.C. 2008)). This approach, which in the FSIA context is generally referred to as the "Flatow method," appropriately links the monetary amount of the punitive damages award to the tortious conduct to be deterred. The Valore court's damages award was based on expert testimony regarding Iran's financing of terrorist organizations; having determined that Iran's annual budget for financing the terrorist group Hezbollah (implicated in the Beirut bombings) was $200 million, the court imposed a punitive multiplier of five to deter such activity. Id. at 89–90.

However, the Murphy and Estate of Bland decisions operated on a different principle. In Murphy, the court reasoned that

> [w]here there is more than one case arising out of the same facts, an analysis of the amount of punitive damages awarded compared with the amount of compensatory damages awarded can be used to gauge the amount of punishment and deterrence the Court considered necessary based on the injuries plaintiffs to that case suffered. Where injuries suffered by separate plaintiffs in a second case are of the same sort as those suffered by plaintiffs in the first, there is no reason to deviate in the second case from the conclusion reached in the first as to the ratio of punitive-to-compensatory damages.

Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 82 (D.D.C. 2010)

Accordingly, the Murphy court issued punitive damages by applying the same ratio (3.44) that resulted from the Valore court's application of the Flatow method. Id. It did so despite the fact that Valore itself did not explicitly consider the appropriate punitive-to-compensatory ratio in that case; therefore, had compensatory damages in that case been $100 million instead of approximately $290 million and punitive damages remained $1 billion, the ratio applied in subsequent cases could well have been 10:1 instead of 3.44:1.

In reaching its conclusion, Murphy relied on the Supreme Court's decision in Philip Morris USA v. Williams, 549 U.S. 346 (2007), which held that punitive damages may only be awarded to punish and deter actions of defendants with respect to the plaintiffs in the particular

case in which punitive damages are sought. See id. at 353 ("[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . *i.e.,* injury that it inflicts upon those who are, essentially, strangers to the litigation."). Therefore, the Murphy court reasoned, each punitive damages award issued in prior decisions was (necessarily, and by constitutional mandate) personal to the plaintiffs in that case, and therefore, awarding plaintiffs punitive damages on the same ratio in subsequent cases did not constitute multiple punishment. Murphy, 740 F. Supp. 2d at 81.

The difficulty with this reasoning in the FSIA terrorism context is that the Flatow method utilized in Valore and in other cases before the U.S. District Court for the District of Columbia plainly does not consider only the specific injuries of the plaintiffs involved in the case; rather, given the heinous nature of state support for terrorism as a whole, it selects a multiplicand based on the entire sum of the state sponsor of terror's financing for terrorism (or, at least, the sum of support given to a particular terrorist group). See, e.g., Valore, 700 F. Supp. 2d at 88 (calculating punitive damages by multiplying the annual cash assistance that Iran provides to Hezbollah); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 34 (D.D.C. 1998) (awarding punitive damages calculated based on Iran's total "annual expenditure for terrorist activities"). As a sovereign's support for terrorist activities all too often and all too tragically leads to multiple attacks with many victims who bring civil suits under 28 U.S.C. § 1605A, the Flatow method cannot possibly tailor punitive damages exclusively to the victims before the court, and instead aims to provide a more global sanction for states who sponsor attacks on our citizens.

This does not, however, raise constitutional concerns about the Flatow method itself. The Supreme Court's punitive damages jurisprudence is rooted in the protections of the Due Process Clause of the Fifth and Fourteenth Amendments. Philip Morris USA, 549 U.S. at 353. However,

the Second Circuit Court of Appeals has held that foreign sovereigns are not "persons" protected by the Clause. Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 400 (2d Cir. 2009); see also Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 96 (D.C. Cir. 2002) (same). On these grounds, the same judge who decided Murphy found Iran could not rely on the Supreme Court's punitive damages jurisprudence to challenge the propriety of the Flatow method itself because it was not protected by the Due Process Clause and because Congress was aware of courts' application of the method when it authorized claimants to seek punitive damages under § 1605A. Beer v. Islamic Republic of Iran, 789 F. Supp. 2d 14, 20–22 (D.D.C. 2011).

The Court agrees that the Flatow method remains a permissible way of calculating punitive damages in the wake of Phillip Morris. It is, however, triply unconvinced by the rationale behind the 3.44 multiplier previously utilized in this case. First, as a faithful application of the Flatow method will yield roughly equivalent punitive damages regardless of the compensatory damages awarded to plaintiffs (though the punitive multiplier can be adjusted, typically between three and five times the state's level of terrorist financing), the resulting ratio becomes an arbitrary product of the amount of compensatory damages awarded in a given case. This ratio, in the Court's view, easily becomes unmoored from the deterrence rationale of the Flatow framework. Second, in Havlish and Ashton, the multiplier was imported wholesale from the Valore-Murphy-Bland line of cases, which related to a *wholly different* terrorist attack. Third, the awarding of punitive damages based on a multiplier of compensatory damages awarded disproportionately benefits those Estate Plaintiffs who have been awarded greater economic damages, and it is far from clear to this Court that the dollar amount necessary for deterrence of terrorist activity should depend in any way on the income and earning capacity of the decedent.

This application of the 3.44 multiplier has led to the issuance of judgments for punitive damages totaling $4.69 billion to the plaintiffs in Havlish, and $5.85 billion to the plaintiffs in Ashton alone. In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012) (Havlish order); In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570 (GBD)(FM), 2016 WL 1029552 (S.D.N.Y. Mar. 9, 2016) (Ashton order). Taking $200 million as a recent estimate of Iranian terrorism financing, see, e.g., Flanagan v. Islamic Republic of Iran, 87 F. Supp. 3d 93, 122–23 (D.D.C. 2015), the punitive damages awarded in these judgments (which represent only a portion of the overall cases against Iran) amount to over 52 times that amount. "In situations where punitive damages have been awarded repeatedly against a defendant for the same conduct in a series of lawsuits, the Court should consider whether to limit such damages so as not to over-punish that defendant for that particular conduct." Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 403 (D.D.C. 2015). Nevertheless, the Court is cognizant of the fact that "significant deviations from the Flatow Method . . . could have the disastrous and perverse consequence of undermining prior efforts at deterrence," Beer, 789 F. Supp. at 25 (D.D.C. 2011), and wishes to minimize resulting disparities in punitive damage awards between similarly situated plaintiffs in this litigation.

The Court is aware of the exigencies of the moment, and has worked expeditiously to resolve the plaintiffs' inquest so that they would be able to submit claims to the United States Victims of State Sponsored Terrorism Fund ("VSST") created by act of Congress last year. Consolidated Appropriations Act, Pub. L. No. 114-113, § 404, 129 Stat. 2242, 3007–17 (2015) (codified at 42 U.S.C. § 10609). It is also cognizant of the fact, however, that only compensatory damages are eligible for payment under this fund. See 42 U.S.C. § 10609 (c)(2)(A) (referring to

eligible claims for compensatory damages only); id at (j)(3) ("The term 'compensatory damages' does not include pre-judgment or post-judgment interest or punitive damages.").

Relying on the prior decisions made in Havlish and Ashton, plaintiffs have not substantially briefed their entitlement to a particular method for the computation of punitive damages. As such, the Court recommends that their claim for punitive damages be DENIED without prejudice. Plaintiffs may file supplemental briefing to justify any punitive damages that they believe the law supports. In such submission, they should address: (1) whether the case law requires a rational relationship between the level of terrorism financing by the Sovereign Defendants and the amount of punitive damages; (2) whether a multiple of compensatory damages is appropriate given the potential for imbalanced punitive awards among families where decedents' earnings were disparate; and (3) how to rationalize punitive damages in this case in light of past and future cases stemming from the 9/11 attacks. If plaintiffs advocate for the Flatow method, they should submit evidence sufficient for the Court to make a reasoned calculation of Sovereign Defendants' level of financing for terrorism.

## V.      Prejudgment Interest

Pursuant to sections 5001 and 5004 of the New York Civil Practice Law and Rules ("CPLR"), Plaintiffs whose claims arise out of the terrorist attacks in New York seek prejudgment interest on their non-economic injuries (pain and suffering and solatium) at the State's nine percent (9%) statutory rate. See Pls. Dam. Inq. Mem. at 40. Those Plaintiffs whose claims arise out of the crash of Flight 93 in Shanksville, Pennsylvania or from the attack on the Pentagon in Virginia seek prejudgment interest at 4.96%, compounded annually, which was the amount awarded in Havlish on the basis of expert reports. Id.

Plaintiffs' request for the nine percent statutory interest rate prescribed in the New York CPLR is misplaced. New York's statute governing the award of prejudgment interest states that such interest is recoverable only "upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ." CPLR § 5001(a). "Actions for personal injury are not mentioned in § 5001(a) and [i]t has long been the established rule that in all personal injury actions, whether resulting from intentional tort or not, the plaintiff has not been entitled in any circumstance to recover interest on the damages assessed." Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 186–87 (2d Cir. 2001) (citing Gillespie v. Great Atlantic & Pacific Tea Co., 255 N.Y.S.2d 10, 11 (N.Y. Sup. 1964)). This is a question of substance, not form, and "parties cannot attempt to circumvent this bar on pre-verdict interest by couching their complaints in the form of contract actions." Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999); see also McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc., 672 N.Y.S.2d 230, 235–36 (Sup. Ct. 1997) ("In determining whether to award pre-verdict interest, it is not the theory of the claim that controls. While a portion of plaintiff's award for pain and suffering was premised upon her claims of gender discrimination and unlawful retaliation, this action is clearly one to recover damages for emotional pain and suffering." (citations and internal quotation marks omitted)); Loeb v. Teitelbaum, 448 N.Y.S.2d 391, 393 (1982) ("It is not the theory of the claim that controls but whether the claim was the result of a financial or property loss, liquidated or not, intentional or otherwise that determines the date of fixation of interest."). Given that the solatium and pain and suffering claims in this case indisputably do not arise from a breach of contract claim or from a tortious interference with property rights as required by CPLR § 5001(a), this

section does not demonstrate their entitlement to the New York statutory rate of prejudgment interest.

The New York statutory rate of interest does apply, however, to common law wrongful death actions. See, e.g., Toledo v. Iglesia Ni Christo, 18 N.Y.3d 363, 367–68 (N.Y. 2012) (discussing application of New York statutory rate to wrongful death actions). Not all of the damages sought in this case, however, could be awarded in a wrongful death action under New York law. See N.Y. Est. Powers & Trusts Law § 5-4.3 (allowing for "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought"). New York's definition of "pecuniary injuries" does not permit recovery for, inter alia, the grief of survivors, the loss of their decedent's love, companionship and society, or loss of consortium. See Gonzalez v. New York City Hous. Auth., 77 N.Y.2d 663, 667–68 (N.Y. 1991) ("New York . . . has steadfastly restricted recovery to 'pecuniary injuries,' or injuries measurable by money, and denied recovery for grief, loss of society, affection, conjugal fellowship and consortium.") (citation omitted); Liff v. Schildkrout, 49 N.Y.2d 622, 633 (N.Y. 1980) ("The qualifying phrase 'pecuniary injuries' . . . has been consistently construed by the courts as excluding recovery for grief, and loss of society, affection and conjugal fellowship all elements of the generic phrase 'loss of consortium.'"). Therefore, because Individual Plaintiffs would not be able to seek solatium damages as part of a New York wrongful death action, they are not entitled to New York's statutory interest rate on these claims.

Damages for conscious pain and suffering, on the other hand, are considered proper parts of New York wrongful death awards. New York state courts, however, have routinely declined to award prejudgment interest on such claims. See Miller v. Santoro, 643 N.Y.S.2d 168, 169 (2nd Dep't 1996) (reversing trial court judgment which "erroneously award[ed] preverdict

interest on the award of damages for conscious pain and suffering"); Chase v. New York City
Transit Auth., 503 N.Y.S.2d 123, 124 (2nd Dep't 1986) (same); Sleeman v. Reifenstein, 456
N.Y.S.2d 597, 597 (4th Dep't 1982) (same); In re Joint E. & S. Districts Asbestos Litig., 798 F.
Supp. 940, 946 n.3 (E.D.N.Y. 1992), rev'd on other grounds, 995 F.2d 343 (2d Cir. 1993) ("It is
clear [under New York law] that awards for non-economic losses are not entitled to pre-verdict
interest.").

The prejudgment interest rate to be applied to all of the Plaintiffs' claims is a matter of
the Court's discretion. See Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998) (finding that
trial court's discretion to award prejudgment interest is guided by "(i) the need to fully
compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the
relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such
other general principles as are deemed relevant by the court.").

Numerous courts have awarded prejudgment interest on pain and suffering and solatium
awards to plaintiffs in FSIA terrorism cases. While the passage of time is often fully factored
into a calculation of economic damages, "[a]wards for pain and suffering and solatium are
calculated without reference to the time elapsed since the attacks." Opati v. Republic of Sudan,
60 F. Supp. 3d 68, 82 (D.D.C. 2014). A prejudgment interest award, therefore, "reimburses
plaintiffs for the time value of money, treating the awards as if they were awarded promptly and
invested . . . ." Id. at 83; but see Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 16, 30
(D.D.C. 2011) ("In adopting the Heiser framework [for solatium damages], this Court
determined that the values set by that scale represent the appropriate level of compensation,
regardless of the timing of the attack.").

In this case, Plaintiffs have been obliged to wait over 15 years for final civil judgments stemming from the immensely traumatic events which took their loved ones' lives. It is clearly appropriate for the Court to exercise its discretion to award Plaintiffs prejudgment interest to compensate them for the unusually long period of time that it has taken for justice to be served in this complex case.

Therefore, I recommend that all Plaintiffs be awarded the 4.96 percent average prime rate published by the Federal Reserve Board during the period from September 11, 2001, through January 1, 2013. This is consistent with Judge Maas's recommendation in Havlish. Havlish Report, 2012 WL 3090979 at *6.  Although that average interest rate could be recalculated to account for the passage of additional time, I recommend for the sake of consistency that this same 4.96 percent rate be applied to all pain and suffering and solatium claims that are the subject of this Report and Recommendation.

## CONCLUSION

For the reasons set forth above, I recommend that the Hoglan Plaintiffs described in this Report be awarded a default judgment against Iran in the amount of $1,759,715,035. The portions of the compensatory damages which are awarded for pain and suffering and solatium are also subject to interest at the rate of 4.96 per annum, compounded annually, through the date that judgment is entered. I further recommend that plaintiffs' claims for punitive damages be denied without prejudice to a future application. The solatium claims of 79 Individual Plaintiffs who are non-immediate family members of 9/11 decedents, the economic damages and pain and suffering claims of the two Estate Plaintiffs representing decedents who were not U.S. nationals at the time of their deaths, and the solatium claims of non-U.S. national immediate family

members of non-U.S. national decedents shall all be addressed in a forthcoming Report and Recommendation.

In order to expedite the issuance of partial final judgment in this case, plaintiffs are instructed to submit to Judge Daniels an exhibit containing information regarding every Estate and Individual Plaintiff to whom I recommend damages be awarded. This exhibit should have the name of each plaintiff, compensatory damages broken down between economic damages, pain and suffering, and solatium, and total damage award per plaintiff. The exhibit should omit any reference to the 88 Individual Plaintiffs and the two Estate Plaintiffs who are not covered by this Report and Recommendation.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            October 12, 2016

                    *                *                *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).