**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:_____ 10/24/2016
```

**03-MDL-1570 (GBD)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:    <u>Hoglan v. Islamic Republic of Iran</u>, 11-CV-7550 (GBD)(SN)

      On October 12, 2016, the Court issued a Report and Recommendation to the Honorable George B. Daniels recommending the entry of default judgments awarding compensatory and punitive damages to thirteen of the fifteen Estates represented in the case and 190 of the 278 individual family member plaintiffs in the amount of $1,759,715,035. On October 14, 2016, the Court issued a subsequent Report and Recommendation considering the solatium claims of 79 additional individual plaintiffs in the <u>Hoglan</u> litigation who were not "immediate family members" of 9/11 decedents but sought damages as "functional equivalents" of such family members. This final Report and Recommendation recommends the resolution of the last group of claims presented in the <u>Hoglan</u> damages inquest.

      This group of claims concerns the economic and pain and suffering damages claims made by the Estates of Hagay Shefi and Nicholas Rowe, as well as nine solatium damages claims made by non-citizen immediate family members derived from Shefi and Rowe's deaths on September 11, 2001. Shefi, a citizen of Israel, and Rowe, a citizen of South Africa, were both

U.S. lawful permanent residents at the time of the attacks, but were not U.S. citizens by birth or naturalization.[1]

The Rowe and Shefi plaintiffs allege that they are entitled to recovery on the following grounds. Though they do not dispute that non U.S.-nationals are not entitled to assert the federal private right of action created by the FSIA's state sponsor of terrorism exception, 28 U.S.C. § 1605A(c), they assert that they may still bring a "pass-through" claim under New York's wrongful death and survival statutes. In the alternative, they claim that their substantial ties to this country demonstrated that they owed "permanent allegiance" to the United States, and thus should be considered U.S. nationals as per the definition in 8 U.S.C. § 1101(a)(22). They also claim that, even if the above arguments are not accepted, they may still assert their claims against Iran through the noncommercial tort exception to the FSIA, 28 U.S.C. § 1605(a)(5). Finally, several Rowe plaintiffs, including the Estate of Nicholas Rowe, claim that they may recover under § 1605A(c)'s private cause of action because they are represented by Personal Representative Alexander Rowe, the father of the decedent and a U.S. citizen.

Though the Court is deeply sympathetic to these claims and to the contributions that the Rowe and Shefi families have made to the United States, it is compelled to deny them, for the reasons set forth below.

## I.      Jurisdictional and Cause of Action Provisions under the FSIA's Terrorism Exception

Before 2008, victims of terrorism seeking damages against sovereigns under the FSIA terrorism exception were required to identify a viable cause of action stemming from underlying

---

[1] This group of claims does not include the claim of Michelle Baker, a U.S. national who presented a solatium claim as the "functional equivalent" of a spouse or Roy-Yetkutiel Shefi and Naomi-Ruth Shefi, the two U.S. national children of Hagay Shefi. These claims are addressed in the prior two Reports and Recommendations in this case.

state or foreign law because the Court of Appeals for the D.C. Circuit had held that the relevant

provisions conferred jurisdiction but did not provide an independent federal cause of action.

Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1033 (D.C. Cir. 2004). Accordingly,

Plaintiffs had to bring "pass-through" claims based on already-existing state or foreign

substantive law. Dammarell v. Islamic Republic of Iran, No. 01-CV-2224 (JDB), 2005 WL

756090, at *8 (D.D.C. Mar. 29, 2005) (describing how other section of the FSIA allowed

plaintiffs to "pass-through" to the causes of action that would exist against a private individual in

like circumstances); Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 12 (2d Cir. 1996)

("[T]he FSIA . . . operates as a 'pass-through' to state law principles."). This approach was

widely criticized for promoting unfair outcomes due to a lack of uniformity in the underlying

state sources of law and required cumbersome analyses of tort claims under the laws of

numerous state jurisdictions. In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31,

48 (D.D.C. 2009); see, e.g., Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25 (D.D.C.

2007) (applying the laws of over 30 jurisdictions to resolve plaintiffs' claims).

     Concerned about these issues, Congress revamped the state sponsor of terrorism

exception to the FSIA in 2008 by repealing 28 U.S.C. § 1605(a)(7) and replacing it with a new

section 28 U.S.C. § 1605A. National Defense Appropriations Act, Pub. L. No. 110–181, §

1083(2)–(3), 112 Stat. 3, 342–43 (2008). This new section, which is in force today, abrogated

Cicippio-Puleo and created an express federal right of action, which reads, in relevant part:

> A foreign state that is or was a state sponsor of terrorism . . . shall be liable to—
>
> > (1) a national of the United States,
> > (2) a member of the armed forces,
> > (3) an employee of the Government of the United States, or of an individual
> > performing a contract awarded by the United States Government, acting within
> > the scope of the employee's employment, or
> > (4) the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by [terrorist acts] of that foreign state . . . for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages.

28 U.S.C. § 1605A(c).

In determining whether a claim may be brought, this section must be read in conjunction with the FSIA terrorism exception's jurisdictional provisions. These state that jurisdiction is proper only when:

the claimant or the victim was, at the time the [terrorist act] occurred—

(I) a national of the United States;
(II) a member of the armed forces; or
(III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment.

28 U.S.C. § 1605A(a)(2)(A)(ii).

While similarly worded, the jurisdictional section and private cause of action sections are plainly not identical. "[T]he plain text and plain meaning of § 1605A(a)(2)(A)(ii) extends jurisdiction to cases where *either* 'the claimant or the victim was, at the time of the [terrorist] act' a United States citizen. The claimant and victim need not both be American citizens." Leibovitch v. Islamic Republic of Iran, 697 F.3d 561, 570 (7th Cir. 2012). By contrast, the private federal cause of action is available only to *claimants* who are U.S. nationals, armed forces members, or government employees. Therefore, the ineluctable conclusion is that "Congress . . . established a private right of action principally for American *claimants* while waiving sovereign immunity in a broader set of cases also involving American *victims*."). Id. at 571 (emphasis in original).

Those plaintiffs who are ineligible for the federal private cause of action may thus bring "pass-through" claims based on state or foreign law under the approach that predominated before

4

to the 2008 amendments to the FSIA. See id. at 572 (concluding that non-U.S. national claimants may bring pass-through claims for solatium); Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 332 n.6 (D.D.C. 2014) ("Section 1605A allows plaintiffs who are not entitled to pursue subsection (c)'s cause of action to use section 1605A as a pass through to causes of action arising under other bodies of law."); Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 20 (D.D.C. 2011) ("Although § 1605A created a new cause of action, it did not displace a claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity."). Accordingly, Plaintiffs argue, even if they are not entitled to rely on § 1605A(c)'s cause of action as non-U.S. nationals, they should be able to bring pass-through claims under N.Y. Est. Powers & Trusts Law § 5–4.1 (providing claim for wrongful death) and § 11–3.2(b) (providing claim for survival).

## II. Plaintiffs' "Pass-Through" and Federal Cause of Action Claims

In claiming that the FSIA terrorism exception confers the Court jurisdiction to award damages to the estates of non-U.S. national decedents and non-U.S. national family members of those decedents, Plaintiffs rely heavily on the Court of Appeals for the Seventh Circuit's decision in Leibovitch, 697 F.3d 561. In that case, the court decided that non-U.S. national claimant relatives of a U.S. national child victim of Iranian terrorism could bring such claims, even though the child was not killed in the attack. Id. at 572. The court construed "victim" broadly; though, as relevant to this case, the statute allowed for recovery only for damages resulting from an "act of extrajudicial killing," 28 U.S.C. § 1605A (a)(1), it deemed that the U.S. national child was a "victim" of such an act because her (non-U.S. national) sister was killed in the attack. Id.

Nowhere does <u>Leibovitch</u> suggest, however, that the FSIA grants jurisdiction over pass-through claims brought by non-U.S. national family members of non-U.S. national victims. <u>See</u> <u>id.</u> ("[J]urisdiction exists for [the U.S. national child's] foreign national family members to bring claims derived from [her] injury."); <u>see also</u> <u>Worley</u>, 75 F. Supp. 3d at 327 (hearing claims without requiring proof of claimants' nationality because they "base[d] their claims on injuries suffered by victims who meet the statute's requirements."). Indeed, the text of the statute expressly requires that "the claimant or the victim [be], at the time the [terrorist act] occurred . . . a national of the United States." 28 U.S.C. § 1605A(a)(2)(A)(ii). "We should prefer the plain meaning since that approach respects the words of Congress." <u>Lamie v. U.S. Tr.</u>, 540 U.S. 526, 536 (2004). In this case, because both Hagay Shefi and Nicholas Rowe were lawful permanent residents and not U.S. nationals at the time of the September 11, 2001 attacks, their non-U.S. national family members cannot derive jurisdiction from their injuries. Neither claimant nor victim fit within the jurisdictional requirements of § 1605A(a). <u>See</u> <u>Kaplan v. Hezbollah</u>, No. 09-CV-0646 (RCL), 2016 WL 5714754, at *2 (D.D.C. Sept. 30, 2016) (dismissing claims of two non U.S.-nationals that did not derive from individuals who met the FSIA's requirements).

In the alternative, Plaintiffs claim that at least the Estate of Nicholas Rowe, the Estate of Nadie Rowe (Nicholas Rowe's mother) and Nadine Rowe (Nicholas Rowe's sister) may recover under the federal cause of action in 28 U.S.C. § 1605A(c) because Alexander Rowe, Nicholas Rowe's father and a U.S. national on the date of the September 11, 2001 attacks, is the Personal Representative of the two Estates and the Guardian for Nadine Rowe.[2] Under this reasoning, because a personal representative of the estate of a decedent states a valid claim for wrongful death and survival, U.S. national Alexander Rowe is a "claimant" for the purposes of triggering

_____

[2] Alexander Rowe is not seeking solatium damages in his own right as he was awarded such damages in the <u>Havlish</u> related action.

FSIA's jurisdictional provisions in § 1605A(a) and is also entitled to invoke the federal cause of action in § 1605A(c).

This position misconstrues the nature of a wrongful death action, which is to be considered under the general principles applicable to the federal cause of action.[3] Wrongful death statutes do create a new cause of action. Rather, "both they and the survival statues are dependent upon the rights of the deceased. Hence if no action could have been brought by the deceased if still alive, no right of action exists." Restatement (Second) of Torts § 925 cmt. a. Therefore, the few courts who have applied wrongful death statutes in similar situations have uniformly refused to award damages unless the decedent would have been able to recover him or herself. See, e.g., Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 27 (D.D.C. 2008) (denying claims for economic damages and pain and suffering brought by a U.S. citizen personal representative of the estate of a non-U.S. citizen decedent because the representative's recovery "ultimately turns on the decedent's ability to recover" and the decedent could not recover under the FSIA); Oveissi v. Islamic Republic of Iran, 498 F. Supp. 2d 268, 279 (D.D.C. 2007), rev'd on other grounds, 573 F.3d 835 (D.C. Cir. 2009) (noting that personal representative "has a right of action only if [the decedent], had he lived could have brought suit for the injuries he sustained.").[4] Accordingly, because the FSIA would have barred Nicholas Rowe from seeking

---

[3] In deciding what law to apply for cases arising under the federal private cause of action in §1605A(c), courts have looked at "state decisional law, legal treatises, or the Restatements in order to find and apply what are generally considered to be the well-established standards of state common law . . . ." Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 24 (D.D.C. 2009). A source that most courts have considered to be a "proxy for state common law" is the Restatement (Second) of Torts. Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003).

[4] The Oveissi decision, which dealt with unique facts involving assassination of a non-U.S. national in Paris, was reversed on appeal on the grounds that the district court erred in its choice-of-law analysis and should have applied French wrongful death and tort law. Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 843 (D.C. Cir. 2009). On remand, applying French wrongful death principles that are quite different from the Anglo-American tradition, the district court awarded damages to the U.S. citizen personal representative. Oveissi v. Islamic Republic of Iran, 768 F. Supp. 2d 1 (D.D.C. 2010). The D.C. Circuit,

economic and pain and suffering damages and Nadie Rowe from seeking solatium damages against Iran in their own names had they survived, Alexander Rowe is barred from seeking such damages as their personal representative. The same is true for Alexander Rowe's claim on behalf of his daughter Nadine Rowe on account of his legal guardianship.[5]

The result is the same if the claim is construed as a pass-through claim under New York wrongful death law. The law plainly states that a "personal representative . . . may maintain an action to recover damages for a wrongful act . . . which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts Law § 5-4.1. This principle has been well-established and applied by New York state courts for over a century in the most diverse contexts. See, e.g., Prink v. Rockefeller Ctr., Inc., 48 N.Y.2d 309, 315 (1979) ("[T]o succeed in this action, which is wholly statutory in nature, plaintiff must establish that it could have been maintained by decedent had he survived."); Barnhart v. American Concrete Steel Co., 227 N.Y. 531 (1920) (representative may not bring wrongful death claim where decedent would be barred by release in employment contract); Kelliher v. New York Cent. & Hudson Riv. R. Co., 212 N.Y. 207, 208 (1914) (personal representative may not maintain action where statute of limitations had run during decedent's lifetime); Allen v. Cty. of Westchester, 567 N.Y.S.2d 826, 827 (2nd Dep't 1991) (representative may not bring wrongful death claim where decedent had no viable cause of action due to voluntary intoxication); but see McDaniel v. Clarkstown Cent. Sch.

_____

however, expressed no opinion on the lower court's initial analysis of U.S. wrongful death statues, stating that "we have every reason to doubt that France has adopted the equivalent of an 1846 British statute to govern wrongful-death claims in its courts." Oveissi, 573 F.3d at 844.

[5] The plaintiffs provided no briefing on the nature of Alexander Rowe's guardianship of Nadine Rowe, nor an analysis of which law applies or Alexander Rowe's entitlement to bring suit on his daughter's behalf. If plaintiffs contend that their legal relationship accords Alexander Rowe the right to bring suit on his daughter's behalf even if she would barred from doing so in her own name, they may object to this Report and Recommendation accordingly.

<u>Dist. No. 1</u>, 494 N.Y.S.2d 885, 888 (2nd Dep't 1985) (agreeing with the "general proposition," but carving out small exception where decedent's inability to recover was product of "a restrictive rule of law which was subsequently abolished, and which was no longer in existence at the time the wrongful death cause of action accrued"). Because the lack of jurisdiction over a foreign sovereign is as absolute a bar to a cause of action as a lapsed statute of limitations or contractual release, Nicholas Rowe's wrongful death claims would be barred under New York state law.

Therefore, the Court concludes that none of the non-U.S. national claimants, including those represented by U.S. national Alexander Rowe, is eligible to bring claims under the FSIA terrorism exception, either under the federal cause of action in 28 U.S.C. § 1605A or as a "pass-through" New York law claim.

## III. Plaintiffs' Claims to be U.S. Nationals

In the alternative, Plaintiffs submit that the claims of decedent Hagay Shefi, his wife Sigal Shefi, and decedent Nicholas Rowe should be regarded as claims of U.S. nationals. Although none was a U.S. citizen on September 11, 2001, all three had intended to become naturalized U.S. citizens. Hagay Shefi had applied for citizenship on May 21, 2001, and on the very day of September 11, 2001, received a Notice to Report for Fingerprinting as the final stage of his background check. ECF No. 3249. Sigal Shefi did actually become a U.S. citizen several months after the September 11, 2001 attacks. <u>Id.</u> Though Nicholas Rowe had never applied for citizenship, he had substantial ties to the United States and was reaching the end of his waiting period to apply for citizenship when he was killed. <u>Id.</u> Therefore, Plaintiffs argue, they should be considered to be U.S. nationals under 8 U.S.C. § 1101(a)(22)(B), which defines "national of the United States" as including not only citizens, but also "a person who, though not a citizen of the

United States, owes permanent allegiance to the United States."[6] Such a finding, in turn, would offer them jurisdiction over Iran under 28 U.S.C. § 1605A(a) and allow them to utilize the federal private cause of action provided in 28 U.S.C. § 1605A(c).

Plaintiffs' argument is plainly foreclosed by precedent from the Court of Appeals for the Second Circuit, with which its sister circuits are in near-unanimous agreement. In Marquez-Almanzar v. I.N.S., a citizen of the Dominican Republic argued that he could avoid removal by demonstrating his "permanent allegiance" to the United States. 418 F.3d 210, 212 (2d Cir. 2005). The petitioner could marshal considerable equities in his favor; he was enrolled in the U.S. Army, had applied for naturalization, registered for the Selective Service, and declared that he had no ties to his country of origin. Id. at 216.

The Marquez-Almanzar court found that the provision in question could not possibly confer U.S. national status, no matter how strong the petitioner's equities. Rather, it was "designed to describe the attributes of a person who has already been deemed a non-citizen national elsewhere . . . rather than to establish a means by which one may obtain that status." Id. at 217. It found that the reference to individuals with a "permanent allegiance" to the United States was "a term of art that denotes a legal status for which individuals have never been able to qualify by demonstrating permanent allegiance, as that phrase is colloquially understood." Id. at 218. Instead, the only statute that could confer the status of a non-citizen U.S. national was 8 U.S.C. § 1408, which described individuals born or "found" in an "outlying possession" of the United States or who were the children of such individuals. Id. at 217; cf. Hashmi v. Mukasey, 533 F.3d 700, 704 n.1 (8th Cir. 2008) (noting that the category of those owing "permanent

---

[6] The FSIA's terrorism exception indicates that "the term 'national of the United States' has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act." 28 U.S.C. § 1605A(h)(5).

allegiance" to the United States "is now apparently limited to residents of American Samoa and Swains Island"). As such, the Court of Appeals held in no uncertain terms that "one cannot qualify as a U.S. national under 8 U.S.C. § 1101(a)(22)(B) by a manifestation of 'permanent allegiance' to the United States." Id. at 218–19.

Our Circuit's precedent alone on the interpretation of 8 U.S.C. § 1101(a)(22)(B) is enough to resolve this issue. But any doubts that this logic applies with equal force to claims under the FSIA's terrorism exception are dispelled by the Court of Appeals for the D.C. Circuit's decision in Mohammadi v. Islamic Republic of Iran, 782 F.3d 9 (D.C. Cir. 2015).[7] In that case, non-U.S. citizen claimants made identical claims to the plaintiffs in this case; namely, that their professions of "permanent allegiance" to the United States entitled them to U.S. national status, and that they therefore could avail themselves of jurisdiction over Iran as a state sponsor of terrorism under 28 U.S.C. § 1605A(a). Id. at 14. Reaching the same conclusion as Marquez-Almanzar, the court noted that the reference to persons owing "'permanent allegiance' to the United States" is descriptive of someone who has attained the status of United States nationality through other statutory provisions; it does not itself set forth an independent basis by which to obtain that status." Id. at 14–15. It further noted that, in the immigration context where it usually arises, this conclusion had been reached by virtually all of the courts of appeals to have

---

[7] In their briefing, plaintiffs rely on two cases from the U.S. District Court for the District of Columbia, Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25 (D.D.C. 2007), and Asemani v. Islamic Republic of Iran, 266 F. Supp. 2d 24 (D.D.C. 2003). These cases were clearly and explicitly abrogated by Mohammadi. 782 F.3d at 15 ("Plaintiffs likewise err in relying on certain district court decisions attributing United States nationality to non-citizens based on unique circumstances indicating a 'permanent allegiance to the United States.'" (citing Peterson and Asemani)). The Court notes with concern plaintiffs' reliance on abrogated cases, as well as their failure to cite to Marquez-Almanzar, which is controlling Second Circuit precedent on this issue. Plaintiffs' counsel are reminded of their duty of candor to the tribunal, which applies with special force in cases where the defendant has defaulted. Model Rules of Prof'l Conduct r. 3.3(a)(2) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

considered the question. See United States v. Sierra-Ledesma, 645 F.3d 1213, 1224–26 (10th Cir. 2011); Abou-Haidar v. Gonzales, 437 F.3d 206, 207 (1st Cir. 2006); Omolo v. Gonzales, 452 F.3d 404, 409 (5th Cir. 2006); Sebastian-Soler v. U.S. Att'y Gen., 409 F.3d 1280, 1285–87 (11th Cir. 2005); Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 972 (9th Cir. 2003); Salim v. Ashcroft, 350 F.3d 307, 309–10 (3d Cir. 2003).

For the foregoing reasons, the Court concludes that neither Hagay Shefi, Sigal Shefi, nor Nicholas Rowe were U.S. nationals at the time of the terrorist attacks of September 11, 2001, and they may not avail themselves of the FSIA terrorism exception's jurisdictional provisions in 28 U.S.C. § 1605A(a) or its private cause of action in 28 U.S.C. § 1605A(c).

## IV.    Plaintiffs' Invocation of the Non-Commercial Tort Exception

In the alternative, Plaintiffs argue that the FSIA's non-commercial tort exception, which does not require that the victim or claimant in question be a U.S. national, allows them to assert jurisdiction over Iran. This exception reads, in relevant part, that "a foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . not otherwise encompassed in [the commercial activity exception] in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1605(a)(5). The noncommercial tort exception has been utilized, if rarely, in terrorism cases before, and the Court of Appeals for the Second Circuit has held that "the terrorism exception, rather than limiting the jurisdiction conferred by the noncommercial tort exception, provides an additional basis for jurisdiction." Doe v. Bin Laden, 663 F.3d 64, 70 (2d Cir. 2011).

In order for the noncommercial tort exception to apply, the Court of Appeals has made clear that the "entire tort" must be committed in the United States. In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 109, 115 (2d Cir. 2013); see also Cabiri v. Government of Ghana, 165 F.3d 193, 200 n.3 (2d Cir. 1999) ("Although [the words of the statute are] cast in terms that may be read to require that only the injury rather than the tortious acts occur in the United States, the Supreme Court has held that this exception 'covers only torts occurring within the territorial jurisdiction of the United States.'" (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 441 (1989))).

In this multidistrict litigation, the Court of Appeals considered plaintiffs' claims against two purported humanitarian relief organizations, the Saudi Joint Relief Committee and the Saudi Red Crescent Society, whom plaintiffs had alleged provided financial and other material support for Osama Bin Laden and al Qaeda. In re Terrorist Attacks, 714 F.3d at 117. Because the tortious conduct in question occurred outside the territory of the United States, the court upheld the dismissal of these claims. Id.

Relying on this decision, this Court dismissed plaintiffs' claims against the Kingdom of Saudi Arabia and the Saudi High Commission for Relief of Bosnia & Herzegovina. In re Terrorist Attacks on Sept. 11, 2001, 134 F. Supp. 3d 774 (S.D.N.Y. 2015). In that decision, plaintiffs "[made] no claims of actions by Defendants themselves in the United States . . . [instead arguing] that Saudi charity alter-egos and four individuals acting on behalf of or at the behest of Saudi Arabia carried out tortious acts in the United States to further the September 11, 2001 attacks." Id. at 784. Upon a careful review of the facts, the Court found that "Plaintiffs [did] not allege sufficient facts for this Court to conclude that the individuals who allegedly

carried out tortious acts in the United States were employees of Defendants acting within the scope of their employment." Id.

This logic applies with equal force to the Sovereign Defendants in this case. Plaintiffs have demonstrated Iranian liability for the September 11 attacks based on a number of tortious actions, virtually all of which occurred outside the territorial limits of the United States. Plaintiffs proved by evidence satisfactory to the Court that Iran provided material support for acts of terrorism, including the extrajudicial killings of the victims of the September 11, 2001 attacks. ECF No. 3019 (Conclusions of Law) ¶ 33–34. This support included "planning, funding, facilitation of the hijackers' travel and training, and logistics, and included the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." Id. The Court noted that "Plaintiffs have demonstrated several reasonable connections between the material support provided by defendants and the 9/11 attacks. Hence, Plaintiffs have established that the 9/11 attacks were caused by Defendants' provision of material support to al Qaeda." Id. at ¶ 46. Plaintiffs did not, however, demonstrate to the satisfaction of the Court that any of the Iranian Defendants' material support, much less the "entire tort," occurred with the territory of the United States.[8] Accordingly, they may not avail themselves of the non-commercial tort exception to the FSIA.

---

[8] The "entire tort" requirement could also be met by a showing that the terrorists who carried out the attacks were "officials or employees of [Iran] who, while acting within the scope of their office or employment, engaged in non-discretionary tortious conduct in the United States." In re Terrorist Attacks, 134 F. Supp. 3d at 785. While Plaintiffs have proven Iran's liability on account of its material support for the al-Qaida terrorists, they have not come close to proving that the 9/11 hijackers were "officials or employees" of Iran so that Iran could be held vicariously liable for their torts.

## CONCLUSION

For the foregoing reasons, I recommend that the claims associated with the Estates of

Hagay Shefi and Nicholas Rowe that are the subject of this Report and Recommendation be

DENIED.

**SO ORDERED.**

_____

SARAH NETBURN

United States Magistrate Judge


DATED:     New York, New York

             October 24, 2016



\*         \*         \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation

to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules

of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service

is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another

party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street,

New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge George B. Daniels. The failure to file these timely objections will result in a

waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).