**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
I<small>N</small> R<small>E</small> T<small>ERRORIST</small> A<small>TTACKS ON</small> S<small>EPTEMBER</small> 11, 2001 :   **MEMORANDUM OF**
                                                            :   **LAW IN SUPPORT OF**
                                                            :   **MOTION TO PROCEED**
                                                            :   **DIRECTLY TO DIPLOMATIC**
                                                            :   **SERVICE OF PARTIAL**
                                                            :   **FINAL JUDGMENT PURSUANT**
                                                            :   **TO 28 U.S.C. § 1608(a)(4)**
                                                            :
                                                            :   1:03 MDL 1570 (GBD) (FM)
------------------------------------------------------------------X

This Document Relates to
<u>Hoglan v. Iran</u>
1:11-cv-07550 (GBD) (FM)

   The *Hoglan* Plaintiffs, through counsel, hereby respectfully submit this Memorandum of Law in Support of Motion to Proceed Directly to Diplomatic Service Pursuant to 28 U.S.C. §1608(a)(4) in light of the Iranian Defendants' certain refusal to accept service of the forthcoming partial final judgment in this case via mail under 28 U.S.C. §1608(a)(3). The Plaintiffs submit that the facts and case law support an authorization for the Plaintiffs in this case to proceed directly to diplomatic service of any final judgment in this case. Plaintiffs respectfully request expedited consideration of this motion due to the time exigencies imposed by the federal Victims of State Sponsored Terrorism Fund, as explained below.

**I.  FACTUAL BACKGROUND**

   This is the second of two actions brought by the same consortium of attorneys under the §1605A state sponsor of terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611. In both the instant lawsuit and the prior related case, *Havlish, et al., v. bin Laden, et al.*, 1:03-cv-09848 (GBD)(FM), the Islamic Republic of Iran and seven (7) of its political subdivisions, and eight (8) of its agencies and instrumentalities (collectively, the

1

"Iranian Defendants"), having been duly served in accordance with the FSIA, all failed to respond to the Complaints, or to otherwise appear.  In this action particularly, on July 17, 2015, Plaintiffs moved the Court for a default judgment and for the Court should adopt the liability evidence gathered and presented in *Havlish*.  A hearing was held on August 17, 2015, in which the *Havlish* evidence was re-presented to the Court, with some supplementation with new evidence.  In both *Havlish* and in this case, the Plaintiffs presented admissible and persuasive evidence that was satisfactory to the Court, as required by 28 U.S.C. §1608(e), that Iran and all the Iranian Defendants provided direct and material support to al Qaeda in carrying out the terrorist attacks of September 11, 2001.

An Order of Judgment as to the liability of all sixteen (16) Iranian Defendants was formally entered on August 31, 2015.  Document No. 112.  The case was referred to U.S. Magistrate Judge Frank Maas on September 3, 2015, for the resolution of all outstanding issues, including damages.  Document No. 113.  The *Hoglan* Plaintiffs submitted their damages evidence to the Court on January 11, 2016, supplemented as to two plaintiffs on March 31, 2016.  Document Nos. 155 and 161.  On October 4, 2016, the damages referral was transferred to U.S. Magistrate Judge Sarah Netburn.  Magistrate Judge Netburn issued Reports and Recommendations on October 12, and October 14, 2016, recommending that 13 Estates and 203 Individual Plaintiffs receive, *inter alia*, compensatory damages in a collective amount in excess of $1.8 billion.  Document Nos. 171 and 172.  These *Hoglan* Plaintiffs have requested entry of a Partial Final Judgment by the Court as to these 13 Estates and 203 Individual Plaintiffs.

Following the entry of a partial final judgment, the *Hoglan* Plaintiffs will be charged with giving notice of the Partial Final Judgment to the Iranian Defendants pursuant to the service provisions of the FSIA found at §1608(a)-(b).  Time is of the essence because the *Hoglan*

Plaintiffs seek to participate in the U.S. Victims of State Sponsored Terrorism Fund ("VSST") recently established by Congress. The VSST has been allocated $1,025,000,000 in funds that, by law, will be disbursed in their entirety this December to victims of state sponsored terrorism who hold FSIA judgments, including those who have fallen victim to Iran's continued support for terrorism worldwide. Participation in the VSST requires entry of a final judgment that has been transmitted to the U.S. Department of State for service. See the VSST Fund Special Master's FAQ 2.3 at http://www.usvsst.com/faq.php (last accessed Oct. 18, 2016). Existing judgment holders had an October 12, 2016 deadline to file VSST claims; although it is unclear what the cutoff date for new judgment holders will be to participate in the December payout, there is no question that filing claims as soon as possible after October 12, 2016, would make participation in the December payout much more likely for the *Hoglan* plaintiffs and others seeking entry of final judgment at this time.

As more fully explained in the section below, the FSIA typically requires a plaintiff to first attempt service of a judgment "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the head of the ministry of foreign affairs of the foreign state concerned," before a plaintiff is eligible to transmit materials to the U.S. Department of State for service of a judgment via diplomatic channels. See 28 U.S.C. §1608(a)(3). If service via mail is unsuccessful, a plaintiff is required to wait 30 days before again attempting service by delivering to the clerk of court the materials necessary for service for transmission to the U.S. Department of State. 28 U.S.C. §1608(a)(4).[1]

---

[1] Though not specifically provided by the FSIA, it is the policy of the U.S. Department of State to serve an agency or instrumentality of a foreign state via diplomatic channels, including individuals, upon request of a plaintiff subject to a condition precedent that letters rogatory are issued by the court. This service by the State Department upon an agency or instrumentality is performed in identical manner to diplomatic service upon a foreign state, or a political subdivision of a foreign state, as provided in §1608(a)(4).

3

Within the past four years, both the *Havlish* and *Hoglan* Plaintiffs have attempted to serve the Ministry of Foreign Affairs in Tehran with documents related to their respective litigations. In *Havlish*, the documents to be served related to final Order and Judgment entered by this Court; in *Hoglan*, it was the governing Second Amended Complaint. Service by mail in both cases was refused by the Ministry of Foreign Affairs. See *Havlish, et al v. bin Laden, et al.*, Motion to Authorize Attachment and Execution Pursuant to 28 U.S.C. § 1610(c), Document No. 389, Exhibits C, D and E; Memorandum of Law in Support of Motion to Authorize Attachment and Execution Pursuant to 28 U.S.C. § 1610(c), Document 390; Order Granting Motion to Authorize Attachment and Execution Pursuant to 28 U.S.C. § 1610(c), Document 393. See also *Hoglan, et al. v. Islamic Republic of Iran, et. al.*, Motion for Judgment, Document 91, Exhibit E; Memorandum of Law in Support of Motion for Judgment, Document 92.

As documented in the above-cited portions of the record, on October 18, 2012, the *Havlish* Plaintiffs obtained a shipping license from the Office of Foreign Assets Control ("OFAC") through the international courier DHL Express, which was required to transmit the packages to Iran without violating applicable sanctions.[2] The *Havlish* Plaintiffs subsequently hand-delivered sixteen (16) sets of legal documents containing this Court's Order and Judgment, and other documents necessary for the perfection of service, to the Clerk of Court for the Southern District of New York for shipment to Tehran, Iran, via DHL Express pursuant to 28 U.S.C. §1608(a)(3) and 28 U.S.C. §1608(b)(3)(B). The *Havlish* Plaintiffs' hand-delivery included translations of each document into Farsi and the completed shipping waybills, which directed each package of legal documents to the Ministry of Foreign Affairs of the Islamic

---

[2] The Office of Foreign Assets Control is the arm of the United States Treasury Department responsible for promulgating and enforcing the Iranian Transaction Regulations that have been implemented pursuant to Executive Order by the past six presidential administrations.

Republic of Iran, the address of which was verified through the English version of the Foreign Ministry's own website, http://www.mfa.gov.ir/Default.aspx?lang=en.

On November 15, 2012, pursuant to the *Havlish* Plaintiffs' request for service upon each of sixteen (16) Iranian Defendants, the Clerk of Court dispatched the documents provided by the *Havlish* Plaintiffs to Tehran, Iran via DHL Express.  On November 26, 2012, the Ministry of Foreign Affairs in Tehran refused delivery of all sixteen (16) DHL Express packages containing the requisite documents for service of the *Havlish* default judgment.  Service of the *Havlish* Order and Judgment was eventually perfected via the State Department during February 2013 for the foreign state and political subdivision Defendants, and March 2013 for the eight (8) agency or instrumentality Defendants.  The diplomatic notes served upon the Ministry of Foreign Affairs in Tehran by the Swiss Confederation were similarly refused, and the State Department received no evidence that the letters rogatory issued by this Court requesting service upon the eight (8) agency or instrumentality Defendants were ever executed.

Similarly, pursuant to the same OFAC shipping license granted to the *Havlish* Plaintiffs on October 18, 2012, the *Hoglan* Plaintiffs attempted service of the Second Amended Complaint in this case via DHL Express.  The Clerk of Court processed the sixteen (16) DHL Express packages and tendered them to DHL Express, on the *Hoglan* Plaintiffs' behalf, for shipment to Iran on July 30, 2013.  Copies of the Certificates of Mailing from the Clerk of Court are Docket Nos. 44-52.  According to the tracking summaries provided by DHL Express, the packages arrived in Tehran on or about August 4, 2013, and the shipment was refused by the Ministry of Foreign Affairs on that same date.  DHL Express contacted counsel for the *Hoglan* Plaintiffs to advise that the shipments had been refused, and to request authorization to dispose of the packages or return the shipments.  The shipments were returned to the law firm of Mellon &

Webster, P.C. in Doylestown, PA, on or about August 27, 2013.  Copies of the sixteen (16) tracking summaries forwarded to the Clerk of Court as Returns of Service were attached to Plaintiffs' Default Judgment Motion (Docket No. 91) as Exhibit E.  The *Hoglan* Plaintiffs subsequently perfected service of the Second Amended Complaint through diplomatic means during February 2014.

Service by mail upon the Iran has proven futile in so many of the approximately 70 cases filed against the Islamic Republic of Iran as a result of its sponsorship of terrorism that the foreign mailing instructions for the U.S. District Court for the District of Columbia (where *Havlish* and *Hoglan* originated) no longer require a plaintiff to attempt service by mail upon Iran before proceeding to diplomatic service.  The D.D.C.'s Attorney Manual for Service Upon a Foreign Defendant currently states:

> **A Special Note:** The countries of **Iran** and **Iraq** have not objected to service by mail.  However, many attempts at service by mail or courier are unsuccessful.  Therefore, it is okay for an attorney to request service directly through diplomatic channels (28 U.S.C. § 1608(a)(4)) without attempting service under any other provisions first.

United States District Court for the District of Columbia, Attorney Manual for Service Upon a Foreign Defendant (Pursuant to FRCP 4 and the Foreign Sovereign Immunities Act) (Revised: March 2016), Section B, Paragraph 11, page 7 (bold formatting in original).[3]

In light of the Iranian Defendants' refusal to accept service by mail of the *Havlish* Order and Judgment, the *Hoglan* Second Amended Complaint, coupled with the opportunity for the *Hoglan* Plaintiffs to participate in the VSST during this calendar year, the *Hoglan* Plaintiffs move this Court via the accompanying Motion to authorize their proceeding directly to

---

[3] Available on the internet at http://www.dcd.uscourts.gov/sites/dcd/files/AttyForeignMlg2016wAttach.pdf .  The Manual could not be electronically filed as an exhibit hereto because coding embedded in the document precluded proper formatting.

diplomatic service under §1608(a)(4) of the FSIA.  Due to the exigencies of time pertaining to these VSST claims applications, Plaintiffs also respectfully request expedited consideration.

## II.     LEGAL ARGUMENT

### a.     Service under the FSIA Generally

There are four methods of service under the FSIA in §1608, listed in descending order of preference.  Section 1608(a) addresses service upon a foreign state or a political subdivision of a foreign state; subsection (b) provides the methods of service available for an agency or instrumentality of a foreign state.  See 28 U.S.C. §1608 (a)(1)-(4); 28 U.S.C. §1608(b)(1)-(3).  Although the language of §1608 is couched in terms of service of a "summons and complaint," these same provisions are applicable to service of a default judgment by operation of §1608(e), which provides that "[a] copy of any … default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." 28 U.S.C. §1608(e).

The first two methods under each subsection are virtually identical and neither is applicable to the Islamic Republic of Iran.[4]  If service of the default judgment cannot be made

---

[4] The first method of service is "by delivery of a copy of the [default judgment] in accordance with any special arrangement for service between the plaintiff and political subdivision." 28 U.S.C. §§1608(a)(1), (b)(1).  No "special arrangement" for service of the default judgment exists between the *Hoglan* Plaintiffs and Iran, as Iran failed to appear to defend this case.  Indeed, Iran has never appeared to defend *any* of the dozens of claims brought against the Islamic Republic by plaintiffs in the courts of the United States under the state sponsor of terrorism exception to sovereign immunity found at 28 U.S.C. §1605A.  See *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 85 (D.D.C. 2009) ("the notion" that Iran might appear to defend an action brought under the state sponsor of terrorism exception to sovereign immunity "is almost laughable because that nation has never appeared in any of the terrorism actions that have been litigated against it in this Court.")  See also *Heiser v. Islamic Republic of Iran*, 00-cv-2329 (D.D.C. Aug. 10, 2011) (Lamberth, C.J.) (denying motion by private U.S. telecommunications company to interplead Iran in an execution proceeding against funds owed by telecommunications company to Iran, holding that "this action has been proceeding for almost a decade, yet in all this time Iran has not appeared to account for its role in the horrific bombing of the Khobar Towers residential complex.  This choice was made despite both exposure to more than $500 million in damages and evidence that Iran is perfectly capable of appearing when it wishes.").

When no special arrangement for service exists, as is the case here, the second method of service under the FSIA is by delivery of the default judgment "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. §§1608(a)(2), (b)(2).  Iran is not a signatory to any such international convention. See Website of Hague Conference for Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed July 8, 2013).  See also United States District Court for the Southern District of New York, Foreign Mailing Instructions, pp. 5-6.

by the first two methods, the FSIA permits a plaintiff to request that the Clerk of Court send the required documents "by any form of mail requiring a signed receipt … to the head of the ministry of foreign affairs of the foreign state concerned" or, in the case of an agency or instrumentality, directly to the agency or instrumentality itself.  28 U.S.C. §§1608(a)(3), (b)(3)(B).  In the event service via any form of mail requiring a signed receipt fails, a plaintiff must wait until 30 days have elapsed before delivering documents to be dispatched by the Clerk of Court to the U.S. Department of State for service via diplomatic channels.

### b.  The Federal Courts Have Found That Service Via Mail Upon Iran is Futile

The *Havlish* and *Hoglan* litigations have demonstrated that any service upon the Iranian Defendants of any forthcoming partial final judgment from this Court via mail under §1608(a)(3) would be futile.  In addition to the standing instruction by the Clerk of Court for the U.S. District Court for the District of Columbia that service by mail upon Iran is no longer necessary to comport with the enumerated service preferences of the FSIA, case law also holds that FSIA plaintiffs are not bound to make attempts at futile mail service upon Iran.

In *Rubin v. Islamic Republic of Iran*, 1:03-cv-09370 (N.D.Ill, Jan. 18, 2008), the *Rubin* Plaintiffs attempted to enforce a $71,500,000 million judgment against Iran entered by the U.S. District Court for the District Columbia, which arose out of a triple suicide bombing perpetrated by HAMAS in a pedestrian mall in downtown Jerusalem.[5]   A copy of the Memorandum Opinion and Order is attached hereto as **Exhibit A**.  Unlike in liability actions pursued by plaintiffs against Iran under the FSIA, Iran entered its appearance in the enforcement litigation to protect its assets at issue.  In this enforcement action, Iran asserted, in the midst of a discovery dispute, that service of the *Rubin* default judgment as to liability and damages upon Iran was improper

---

[5] Iran provides direct financial support to HAMAS.  The underlying litigation in the District of Columbia was consolidated with *Campuzano v. Islamic Republic of Iran*, hence the references to that case within the attached opinion issued by the Northern District of Illinois.

and therefore, so was general discovery as to Iranian assets.

Both parties agreed that service pursuant to §1608(a)(1) and §1608(a)(2) of the FSIA (bilateral arrangement for service, and delivery in accordance with an international convention, see n. 3, *supra*) was not applicable to the Islamic Republic of Iran.  However, Iran argued that the FSIA lists four methods of service in descending order of preference and that the *Rubin* Plaintiffs, by foregoing mail service of their final judgment pursuant to §1608(a)(3) in favor of attempting service by diplomatic means only pursuant to § 1608(a)(4), had violated the statutory service scheme established by the FSIA.  Therefore, Iran argued, service of the *Rubin* final judgment upon Iran was defective because it violated the requirement of FSIA §1610(e) that notice of a default judgment be provided "in the manner provided by service in this section."

The court soundly rejected Iran's argument and held explicitly that the FSIA did not require service of the default judgment by mail where that method of service had failed when the *Rubin* Plaintiffs attempted service of the summons and complaint to commence the litigation in the District of Columbia:

> To accept this argument, the Court would have to interpret §1608(e)'s requirement that notice of default be given "in the manner proscribed for service in this section" to mean that, regardless of how the summons was served, a plaintiff must follow §1608(a)'s order of preference when giving notice of a default judgment.  In a case like this one, that would mean attempting to give notice by mail even though service by mail had already failed.  Evidently the Washington, D.C. district court, which ordered the Plaintiffs to skip this likely futile step, did not interpret §1608(e) that way, and neither does this Court. The most natural interpretation is that "in the manner prescribed for service in this section" means "using the method that was prescribed by §1608(a) for service of the summons."  In other words, *whatever method of service was appropriate in initiating the suit is appropriate in giving notice of the default judgment.*  Here, the method prescribed by §1608(a) was service through diplomatic channels, since there was no applicable treaty or international agreement and service by mail failed.  Therefore, that same method – *service through diplomatic channels - was appropriate in giving notice of the default judgment*.

*Id.* at 21-22 (emphases added).

> The *Rubin* court further held:
>
>> This reading also has the advantage of being sensible: why would the [FSIA] require a plaintiff to go through the empty formality of trying "preferable" methods of service that have already proven futile? As this Court interprets it, it does not. This is consistent with other courts' holdings that "the purpose of the FSIA is to ensure actual notice to foreign states of the fact and substance of pending litigation," not to mire plaintiffs in a labyrinth of procedural requirements. Because service by mail failed and service of the summons through diplomatic channels was proper, notice of the default judgment through diplomatic channels was sufficient to satisfy §1608(e).

*Id.* at 22, *quoting Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 109 (6th Cir. 1995) (*internal quotes omitted*).

Just like the *Rubin* Plaintiffs, the *Hoglan* Plaintiffs attempted to serve the Second Amended Complaint via mail, and it was refused by the Iranian Defendants. Both the *Havlish* and *Hoglan* Plaintiffs have demonstrated that service upon the Iranian Defendants via mail pursuant to §1608(a)(3) is futile. This Court should permit the *Hoglan* Plaintiffs to avoid this futile step of service and proceed directly to service of any forthcoming partial final judgment via diplomatic channels. Otherwise, the *Hoglan* Plaintiffs risk becoming mired in "a labyrinth of procedural requirements" that will render the *Hoglan* Plaintiffs' participation in the VSST all but impossible.

In another situation, in this MDL proceeding, the *Continental Casualty* plaintiffs were able to skip the first three alternatives under FSIA §1608 and proceed directly to diplomatic service of their complaint and summons. The reasons for foregoing the §1608(a)(1) and §1608(a)(2) alternatives were exactly the same as here. Although the reason for omitting §1608(a)(3) service was different than in this case, specifically, that Continental Casualty asserted that its materials to be served exceeded U.S. Postal Service limits, see **Exhibit B**, at pp.

18-19, the result was the same in that the Clerk of Court for the SDNY transmitted the service materials to the State Department for diplomatic service without any attempt by Continental Casualty to serve by mail.  There was no prejudice to the defendant.  Likewise, there will be no prejudice here.  Indeed, Iran will be served by the most effective means under the FSIA.

## IV.    CONCLUSION

In light of the above, the *Hoglan* Plaintiffs respectfully request that the attached proposed order, permitting the *Hoglan* Plaintiffs to proceed directly to service of the partial final judgment through diplomatic means, be granted.

Respectfully submitted,

Date:  October 27, 2016

/s/ Timothy B. Fleming_____
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
1850 M Street, NW, Suite 720
Washington, DC  20036
(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB- 3739-R71M)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN  46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)

FOOTE, MIELKE, CHAVEZ
 & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

*Attorneys for the Hoglan Plaintiffs*