UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   :   **PLAINTIFFS' OBJECTIONS**
                                                                         :   **TO MAGISTRATE**
                                                                         :   **JUDGE'S REPORT AND**
                                                                         :   **RECOMMENDATION**
                                                                         :   **REGARDING SHEFI AND**
                                                                         :   **ROWE FAMILY CLAIMS**
                                                                         :
                                                                         :   1:03 MDL 1570 (GBD) (SN)
------------------------------------------------------------------X

This Document Relates to
*Hoglan, et al. v. Iran, et al.*
1:11-cv-07550 (GBD) (SN)

      Pursuant to Federal Rule of Civil Procedure 72(b), 28 U.S.C. §636(b)(1)(C), and Local Rule 72.1, certain of the *Hoglan* Plaintiffs (herein collectively referred to as the "Shefi and Rowe Plaintiffs"), through counsel, hereby respectfully object to portions of the Magistrate Judge Netburn's third Report and Recommendation (MDL Doc. 3374), issued October 24, 2016.  The Magistrate Judge recommended against any award for the Estate of Nicholas Rowe and four family members whose claims derived from Nicholas Rowe's death on September 11, 2001, and against any award for the Estate of Hagay Shefi, and five family members whose claims derived from Hagay Shefi's death on September 11, 2001.

      In their original damages submission, the Plaintiffs raised a number of grounds upon which the claims of the Shefi and Rowe families could be sustained.  All were rejected by the Magistrate Judge in her third Report and Recommendation.  The Shefi and Rowe families herein object only to the Magistrate Judge's rejection of the Shefi and Rowe families' claims on grounds that Hagay Shefi, Sigal Shefi, and Nicholas Rowe are not to be considered U.S. nationals for purposes of the FSIA (discussed in Plaintiffs' Damages Inquest Memorandum

1

(MDL Doc. 3194) at pp. 46-49).

The evidence supports, and a reasonable extension of the law calls for, both Nicholas Rowe and Hagay Shefi and/or Sigal Shefi to be treated as U.S. nationals for purposes of the FSIA in this case.

Specifically, the Shefi and Rowe Plaintiffs, whose claims are in question here, are follows:

(A)     (1) Sigal Asher-Shefi as Personal Representative of the Estate of Hagay Shefi, Deceased (the 9/11 Decedent); (2) Sigal Asher-Shefi, individually as the spouse of Hagay Shefi; (3) Dov Shefi, father of Hagay Shefi; (4) Esther Shefi, mother of Hagay Shefi; (5) Yishai Shefi, brother of Hagay Shefi; and, (6) Pazit Shefi Baum, sister of Hagay Shefi. All are citizens of Israel.

(B)     (1) Alexander Rowe, as Personal Representative of the Estate of Nicholas Rowe (the 9/11 Decedent, who was a lawful permanent resident of the United States); (2) Alexander Rowe as the Personal Representative of the Estate of Judith Rowe, deceased, the mother of Nicholas Rowe; (3) Alexander Rowe, as Guardian of Nadine Rowe, sister of Nicholas Rowe; (4) Paul Rowe, brother of Nicholas Rowe; and, (5) Rachael Logan, sister of Nicholas Rowe. The family patriarch, Alexander Rowe, is a citizen of the United States and was a citizen on 9/11; he obtained a judgment in his own right, as a parent of the 9/11 decedent, in *Havlish et al. v. bin Laden, et al.* Rachel Logan obtained U.S. citizenship after 9/11. All others are citizens of South Africa.

The facts are set forth in detail in the Plaintiffs' Damages Inquest Memorandum (MDL Doc. 3194), Part VIII and the exhibits cited therein; the letter brief filed in supplementation thereof on April 1, 2016 (MDL Doc. 3249) and all exhibits cited therein.

I.     **Hagay Shefi, Sigal Shefi, and Nicholas Rowe Should All Be Considered "U.S. Nationals" for purposes of the FSIA**

In their supplemental letter brief filed on April 1, 2016 (MDL Doc. No. 3249) and the declarations with multiple exhibits filed confidentially under seal at the same time, the Shefi and Rowe Plaintiffs offer substantial additional evidence that Hagay Shefi and Nicholas Rowe should be considered U.S. nationals for the purposes of FSIA anti-terrorism litigation. The Second

2

Declaration of Sigal Shefi, and the documents attached thereto, demonstrate that, not only did Hagay Shefi intend to become a U.S. citizen, but he had in fact already submitted an apparently successful application for citizenship and was on the verge of completing the final steps actually to become a U.S. citizen.  Hagay Shefi applied for citizenship on or about May 21, 2001, and this became his "priority date."  *See* Attachment B to the Second Declaration of Sigal Shefi, filed under seal on March 31, 2016 (*Hoglan* Doc. No. 161).

By notice dated August 8, 2001, the Immigration and Naturalization Service  ("INS"). officially notified Hagay Shefi that he would be called to appear for a naturalization interview within the following thirty-six days.  On September 11, 2001, Hagay Shefi arrived at the very final step: on that fateful day, INS sent to him a Notice to Report for Fingerprinting for completion of his background check.  The Notice was dated September 11, 2001.  In essence, Hagay Shefi had done everything he could to become a U.S. citizen by the time of the 9/11 terrorist attacks in which he died.  Only the actions of the terrorist defendants prevented formal completion of the U.S. naturalized citizenship process.  Further, his wife, Sigal Shefi, as her declaration and the documents show, was following the same process in a parallel manner, and did in fact herself acquire American citizenship within a few months thereafter.  The 9/11 attacks themselves may be presumed to account for the interim short delay.

Because Hagay Shefi was so close to acquiring actual U.S. citizenship, he should be considered the next closest thing, a "U.S. national" for purposes of his claim under the FSIA. U.S. nationality is defined by federal law as having a demonstrable allegiance to United States of America.  "The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."  8 U.S.C. § 1101(a)(22).  The Estate of Hagay Shefi proved beyond doubt that

3

Hagay Shefi did have full allegiance to the United States; indeed, INS had actually accepted his demonstration of allegiance to the United States by approving his naturalization application and notifying him to report for fingerprinting.  Moreover, there is absolutely no indication of any reason why Hagay Shefi would, at that point, have been denied naturalization, particularly in light of the fact that his surviving wife, Sigal Shefi, did in fact become an American citizen shortly thereafter.  His two children were natural born citizens of the U.S.

It was, of course, through no fault of his own – and indeed, it was entirely the Defendants' fault – that Hagay Shefi was not able to finalize his American citizenship.[1]

If Hagay Shefi is held to be a U.S. national under the FSIA, then automatically his wife, parents, and siblings would also be eligible to recover under the FSIA.

Hagay Shefi's surviving wife, Sigal Shefi, did complete the naturalization process and became a U.S. citizen.  Clearly, the bona fides of her allegiance to the United States were confirmed officially, and there is no reason to doubt that Hagay would have been similarly successful but for the 9/11 terrorist attacks.  Under these circumstances, Hagay Shefi and Sigal Shefi should be held to be U.S. nationals for purposes of the FSIA.

Similarly, Nicholas Rowe's long-time girlfriend, Michelle Baker (now Michelle Schramm), has attested to Nicholas Rowe's intent to become a U.S. citizen.  *See* Declaration of Michelle Baker, filed under seal on March 31, 2016 (*Hoglan* docket No. 161).  Ms. Baker's declaration demonstrates that Nicholas Rowe did in fact intend to become a U.S. citizen, and that, as of September 11, 2001, he had demonstrated his allegiance to the United States.

---

[1] Hagay Shefi graduated *Magna Cum Laude* with two academic degrees.  He was voted and awarded the "Most Distinguished Cadet" in officers' training school in the Israeli Defense Force ("IDF").  At the time of his death, Hagay Shefi was a partner in a new business venture, GoldTier Technologies, Inc., a computer software company, with offices in New Jersey.  On September 11, 2001, Hagay Shefi was attending a conference being held at the "Windows on the World" restaurant on the 106th floor of the North Tower, World Trade Center.  Hagay Shefi called his wife, Sigal, at 9:04 a.m. to say goodbye.  First Declaration of Sigal Shefi.  Hagay's body was found on Saturday, September 15, 2001, intact and whole.  First Declaration of Sigal Shefi, ¶¶5, 12.

Nicholas loved the USA, had become a lawful permanent resident, and had no intention of returning to South Africa. He made his intentions clear to his American long-time girlfriend and her family, and he had made marriage and family plans for living the United States, including eventually bringing his disabled sister to live with him in America. Finally, he was close to the end of his five-year waiting period as a lawful permanent resident when he was killed on September 11, 2001. Like Hagay Shefi, albeit not quite so imminently, but for the actions of the Defendants, Nicholas Rowe would have become a naturalized U.S. citizen. Under these circumstances, Nicholas Rowe should also be considered a U.S. national for purposes of the FSIA.

If Nicholas Rowe is held to be a U.S. national, his non-citizen family members who are plaintiffs in *Hoglan* would be eligible to recover, as well as his estate.

As the Magistrate Judge discussed, the case law directly supporting the claims of the Shefi and Rowe families, discussed *infra*, has been called into question by the D.C. Circuit, and the federal courts have been generally reluctant to hold that the definition of U.S. nationality in 8 U.S.C. § 1101(a)(22)(B) can confer U.S. national status by itself, *i.e.*, that persons generally who demonstrate allegiance to the U.S.A. are therefore U.S. nationals. In one FSIA case, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015), the District of Columbia Circuit rejected an attempt by foreign nationals to claim U.S. national status in order to assert claims against Iran under the FSIA's § 1605A. There, however, the asserted claims were for actions that occurred in Iran, not in the United States, and the acts occurred years before the plaintiffs had any demonstrable allegiance to the United States. The *Mohammadi* plaintiffs did not even come to the U.S. until years after the events, and therefore, as of the time of the challenged actions, could assert allegiance to the United States only in a generalized manner.

Most of the cases addressing the § 1101(a)(22)(B) definition of U.S. nationality involve immigration-related issues. It is true that the Second Circuit has stated, in the immigration context, that § 1101(a)(22)(B) cannot confer U.S. national status, holding that a person could not avoid removal from the country by generally demonstrating his "permanent allegiance" to the United States, regardless of the equities in his favor, even compelling equities such as enlistment in the U.S. Army, a pending naturalization application, registration for the Selective Service, and a lack of ties to his country of origin. *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210, 212, 216 (2d Cir. 2005). However, the scope of protection and rights afforded by the FSIA should not be conclusively determined by an immigration law case precedent.

The logic of *Marquez-Almanzar* is that § 1101(a)(22)(B) was "designed to describe the attributes of a person who has already been deemed a non-citizen national elsewhere . . . rather than to establish a means by which one may obtain that status." *Id.* at 217. The problem with that logic is that § 1101(a)(22)(B) does not actually do that. It does not describe the attributes of a person who has already been deemed a non-citizen elsewhere, and, for that matter, it does not describe the attributes of persons upon whom other parts of the U.S. Code *have* conferred U.S. national status. As noted by the Magistrate Judge, according to *Marquez-Almanzar*, "the only statute that could confer the status of a non-citizen U.S. national was 8 U.S.C. § 1408, which described individuals born or "found" in an "outlying possession" of the United States or who were the children of such individuals. Third Report and Recommendation at p. 10, citing *Marquez-Almanzar*. at 217. Yet nothing in 8 U.S.C. § 1408 addresses any aspect of allegiance to the United States. Nor do the other code sections similarly "conferring" U.S. national status by declaring that persons who were born or found in certain geographical places (some at certain times in history), such as Puerto Rico (§ 1402), the Canal Zone or Panama (§ 1403), Alaska (§ 1404), Hawaii (§ 1405), the Virgin Islands (§ 1406), Guam (§ 1407), or other "outlying

6

possessions" (§ 1408), or even some children born out of wedlock (§ 1409), shall be U.S. nationals, but not citizens.  Nothing in any of those statutes hinges on the person's allegiance to the United States.

The *Marquez-Almanzar* court turns this around by positing that

> § 1408 establishes a category of persons who qualify as non-citizen nationals; those who qualify, in turn, are described by § 1101(a)(22)(B) as owing "permanent allegiance" to the United States.  In this context the term "permanent allegiance" merely describes the nature of the relationship between non-citizen nationals and the United States, a relationship that has already been created by another statutory provision.

*Marquez-Almanzar,* at 217.

Section 1101(a)(22)(B) seems an unlikely way for Congress to define some sort of an relationship/obligation of a U.S. national, and there are no laws requiring such U.S. nationals to pay such a debt of allegiance "owed" to the country.

There seems no good reason why the federal courts cannot make better use of the definition of "U.S. national" found in the U.S. Code.  The Shefi and Rowe Plaintiffs submit that where U.S. national status matters to the question of standing to sue under a U.S. statute, a U.S. court should look to the facts of the person's life history and circumstances to determine whether, within the intent of the statute in question, the person ought to be able to proceed. Where, as here, a horrendous act of terror was committed on U.S. soil against thousands of U.S. citizens, intending citizens, and legal residents, it is submitted that the FSIA's use of the term "U.S. national" must mean that the scope of persons who may sue a foreign state sponsor of terrorism for such an act includes persons who can demonstrate U.S. nationality by means of their allegiance to the United States – in this case, persons such as Hagay Shefi and Nicholas Rowe.

In *Morin v. U.S.*, 80 F. 3d 124 (4th Cir. 1996), the court used the definition found in § 1101(a)(22)(B) for a similar purpose, applying it to a murder statute to extend coverage to murder victim who was a U.S. permanent resident and an intending citizen – but who was murdered before he could become naturalized.

> Citizenship ... is not the sine qua non of "nationality." A "national of the United States" may also be "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). The district court found that because Dr. Soto was a permanent resident alien of the United States who had applied for United States citizenship, he was indeed "a national of the United States." We agree — an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself.

*Id*. at 126.

As the Shefi and Rowe Plaintiffs stated in the original damages brief (at pp. 47-49), the District Court of the District of Columbia did make such use of the statute in *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25 (D.D.C. 2007), and *Asemani v. Islamic Republic of Iran*, 266 F. Supp. 2d 24 (D.D.C. 2003).  However, the Magistrate Judge correctly indicated that those cases seem to have been abrogated by *Mohammadi*, *supra*, on the basis of *Lin v. United States*, 561 F.3d 502 (D.C. Cir. 2009), albeit somewhat obliquely ("Those decisions predate ours in *Lin*.").  This was likely due to the fact that *Lin's* discussion of § 1101(a)(22) was clearly dicta, as *Lin* was decided not on that basis but on the basis of the political question doctrine.  See *Lin* at 508. The Shefi and Rowe Plaintffs submit that the two FSIA cases, *Peterson* and *Asemani*, were undercut but were not reversed, and they were based on sound legal reasoning.  Indeed, *Mohammadi* did not completely abrogate them because the court stated that the "Plaintiffs ... err in relying on ... [*Peterson* and *Asemani*] attributing United States nationality to non-citizens *based on unique circumstances indicating a 'permanent allegiance to the United States*.'"  (Emphasis added.)  782 F.3d at 15.  The error may have been that

*Mohammadi* simply did not present unique circumstances. Indeed, untold numbers of Iranian nationals who made their way to the U.S. at some point might have made the same type of assertions as the *Mohammadi* plaintiffs. On the other hand, the Shefi and Rowe Plaintiffs urge that the instant facts do present "unique circumstances indicating ... 'permanent allegiance to the United States," just as did *Peterson* and *Asemani*. Indeed, as described above, Hagay Shefi could hardly have been closer to naturalized citizenship than he was when he was murdered.

This Court should take into account the unique circumstances posed by the claims of Hagay Shefi and Nicholas Rowe, and their families. This Court is properly postured to decide this important aspect of FSIA law because it is faced with appropriate, if rather unique, facts and circumstances. Again, the question of the meaning of the FSIA's usage of the term "U.S. national" should be decided in FSIA cases, not in immigration cases like *Marquez-Almanzar* or political question cases like *Lin*. Although a FSIA case in another jurisdiction, *Mohammadi*, was decided adversely, it is distinguished by its facts in that the *Mohammadi* plaintiffs did not show actual allegiance to the United States at the time of the acts in question, which occurred, in any event, on foreign soil at a time when the plaintiffs were clearly Iranian citizens and not U.S. nationals because they could not make anything but a generalized profession of allegiance to the U.S. In the case at bar, however, the Shefi and Rowe Plaintiffs present unique circumstances because they were so close to U.S. citizenship that they should be deemed U.S. nationals on the basis of their clear allegiance to the United States, thereby justifying a holding to protect these victims of terror on the U.S. soil that they had already made their home.

## II.  Conclusion

This Court should decline to adopt the Magistrate Judge's recommendation that the claims of the Shefi and Rowe Plaintiffs be denied, and should order that that their claims be

sustained, that damages findings be entered on their claims commensurate with those of other *Hoglan* Plaintiffs, and that final judgment in their favor be entered.

                                                Respectfully submitted,

Date:  January 6, 2017               /s/ Timothy B. Fleming\_\_\_\_\_
                                               Timothy B. Fleming (DC Bar No. 351114)
                                               WIGGINS CHILDS PANTAZIS
                                             FISHER GOLDFARB PLLC
                                             1850 M Street, NW, Suite 720
                                             Washington, DC  20036
                                             (202) 467-4489

                                             Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
                                             Melina Goldfarb (AL Bar No. ASB- 3739-R71M)
                                             WIGGINS CHILDS PANTAZIS
                                             FISHER GOLDFARB LLC
                                             The Kress Building
                                             301 19th Street North
                                             Birmingham, AL  35203
                                             (205) 314-0500

                                             Richard D. Hailey (IN Bar No. 7375-49)
                                             Mary Beth Ramey (IN Bar No. 5876-49)
                                             RAMEY & HAILEY
                                             9333 North Meridian Street, Suite 105
                                             Indianapolis, IN  46260
                                             (317) 582-0000

                                             Robert M. Foote (IL Bar No. 03124325)
                                             Craig S. Meilke (IL Bar No. 03127485)
                                             FOOTE, MIELKE, CHAVEZ
                                              & O'NEIL, LLC
                                             10 West State Street, Suite 200
                                             Geneva, IL  60134
                                             (630) 232-7450

                                             ***Attorneys for the Hoglan Plaintiffs***