# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

January 23, 2017

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

As counsel for the plaintiffs in the case captioned as *Burnett, et al., v. The Islamic Republic of Iran, et al.*, Docket No. 15-cv-9903 (GBD)(SN) ("*Burnett/Iran*"[1]) and on behalf of the Plaintiffs' Executive Committees in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, 03 MDL 1570 (GBD)(SN), we write to address issues identified in paragraphs 2 and 4 of the Court's Order dated January 11, 2017. *Burnett/Iran*, 15-cv-9903 ECF No. 77 at paras 2, 4.[2]

### I.   *Burnett/Iran* Counsel Response to directions in Para. 2.

In paragraph 2, Your Honor directed *Burnett/Iran* Counsel to submit a status letter "explaining why they have not sought to join the multidistrict litigation and responding to the January 6, 2017 letter [of Dorothea M. Capone, counsel for plaintiffs in the *Bauer* case]." *Burnett/Iran*, 15-cv-9903 ECF No. 77 at para. 4.

### A.   *Burnett/Iran* counsel have always asserted the case is properly part of MDL 1570.

---

[1] The plaintiffs in *Burnett/Iran* are also plaintiffs in another action in MDL 1570, captioned as *Burnett v. Al Baraka Investment and Dev. Co.*, initially filed in the federal court in the District of Columbia on August 12, 2002, and transferred to the Southern District of New York into these multidistrict litigation proceedings on December 9, 2003, where it has proceeded ever since.

[2] The Court's January 11, 2017 Order set a deadline of January 18, 2017 for this status letter. At counsel's request, that deadline was extended to January 23, 2017. 03-md-1570 ECF No. 3430.

The Honorable Sarah Netburn
January 23, 2017
Page 2

_____

      Since the filing of the *Burnett/Iran* matter on December 18, 2015, *Burnett/Iran* counsel have consistently asserted that the *Burnett/Iran* matter **is** related to MDL 1570. With the complaint, the *Burnett/Iran* plaintiffs filed a "Related Case Statement" that explained in detail that the *Burnett/Iran* action is related to *Ashton*, another case in the multidistrict litigation with wrongful death and personal injury claims versus Iran pursuant to 28 U.S.C. § 1605 (a)(7) (and now 28 U.S.C. § 1605A) of the Foreign Sovereign Immunities Act.[3] *Burnett/Iran*, 15-cv-9903 ECF No. 3. As a result of that "Related Case Statement," the *Burnett/Iran* matter was assigned to the Hon. George B. Daniels, the transferee judge overseeing the 03-md-1570 multidistrict litigation. *See Burnett/Iran*, 15-cv-9903 ECF Docket Notations on 12/21/2015 and 1/4/2016. And in August 2016, during the period that the *Burnett/Iran* plaintiffs were perfecting service on the Iran defendants, to be clear that the case belonged in the MDL proceedings, the *Burnett/Iran* plaintiffs also filed a Notice of Potential Tag-Along action as to *Burnett/Iran* with the Judicial Panel on Multidistrict Litigation. *See* JPML for MDL 1570, ECF No. 75 (attached hereto as Appendix A). The JPML responded by noting that "[t]he Panel ha[d] been properly notified of potential tag-along actions . . . . [But b]ecause the actions listed originated in the transferee district, no further action by the Panel [was] required. *See* Rule 7.2(a)." Rule 7.2(a), in turn, directed the plaintiffs to "request assignment of such actions to the Section 1407 transferee judge in accordance with the applicable local rules." By that time, the case had already been assigned to Judge Daniels, the transferee judge. *See Burnett/Iran*, 15-cv-9903 ECF Docket Notations on 12/21/2015 and 1/4/2016.

      **B.**      **Historical cooperation among the Plaintiffs' Executive Committees on all issues common among the plaintiffs.**

      *Burnett/Iran* counsel agree with Ms. Capone's characterization of the "longstanding and friendly relationship" between the two firms. Moreover, we would emphasize the longstanding, tight cooperation of the Plaintiffs' Executive Committees ("PECs") for more than a decade. By way of background, we note that, although the June 15, 2004 Case Management Order ("CMO3"), which created the PECs, afforded the PECs broad authority to coordinate the litigation on behalf of the various constituent plaintiffs' groups, the core of the order was to authorize the PECs to "conduct all pretrial proceedings involving common legal and factual issues" (CMO3, ¶ 10) and to "coordinate and, wherever possible, submit joint [pleadings] regarding all matters common to the Individual Actions." (CMO3, ¶ 9).

_____

[3] In addition to making clear that the matter was related to cases in the 03-md-1570 multidistrict litigation, to demonstrate the timeliness of the *Burnett/Iran* matter, the *Burnett/Iran* plaintiffs explained that the matter was "related to" another pending action commenced in a timely manner under 28 U.S.C. § 1605 (a)(7). The relationship to *Ashton* (as well as to other cases in the multidistrict litigation) satisfied that criteria. *See* 28 USC 1605A(b) ("An action may be brought . . . if . . . a related action was commenced under section 1605(a)(7) . . . not later than . . . 10 years after the date on which the cause of action arose."); Section 1083(c)(3) of the National Defense Authorization Act for Fiscal Year 2008 ("If an action arising out of an act or incident has been timely commenced under [28 U.S.C. §] 1605(a)(7) . . . any other action arising out of the same act or incident may be brought under [28 U.S.C. §] 1605A . . ., if the action is commenced not later than . . . 60 days after . . . the date of the entry of judgment in the original action."); *In re: Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, 65 (D.D.C. 2009) (Section 1083(c) "allows plaintiffs in a prior action under § 1605(a)(7) to file an action under . . . § 1605A, as a related case to any other pending action that was timely commenced under § 1605(a)(7) and based on the same terrorist act or incident. In other words, plaintiffs' right to proceed under [§ 1605A] is not tied exclusively to their prior action; plaintiffs may identify other cases that are pending under § 1605(a)(7) that are based on the same act or incident.").

The Honorable Sarah Netburn
January 23, 2017
Page 3

_____

Before issues first raised in the context of the plaintiff-specific, damage default judgments proceedings against the Iran defendants and the related U.S. Victims of State Sponsored Terrorism Fund ("USVSST") proceedings, the issues in the litigation have been nearly uniform in their application to the various plaintiffs' groups.  Until the plaintiff-specific Iran default proceedings, the PECs have consistently coordinated on all issues common to the various plaintiffs and have acted uniformly on behalf of the plaintiffs in virtually every instance, including filing joint, consolidated pleadings for all of the plaintiffs' interests – for both the wrongful death/personal injury plaintiffs and the commercial plaintiffs.  But the plaintiff-specific damage requests against Iran implicated damage requests unique to individual plaintiffs, resulting in plaintiffs' counsel seeking to address plaintiff-specific issues that were not viewed as necessarily common among all the plaintiffs.

One relevant example of the manner in which plaintiffs' counsel have coordinated relates to some overlap of representation among various plaintiffs' in the litigation.  Because some plaintiffs, at the outset of the litigation, retained more than one law firm to represent their interests (*i.e.*, unbeknown to the two firms at the time, some plaintiffs signed retainers with both firms), some plaintiffs are named in more than one case.  This set of plaintiffs with dual representation in separate cases is _not_ implicated in the inquiry identified in the Court's January 11, 2017 order.  Importantly, as to the plaintiffs who retained more than one firm, plaintiffs' counsel have worked together to identify those plaintiffs, have accounted for those plaintiffs in dealings with the court, and taken steps to ensure that the overlapping representations have *not* resulted (or will result in) duplicate judgments in favor of such plaintiffs.[4]

As discussed further below, the issue with the eleven individuals identified in the Court's January 11, 2017 Order (and Ms. Capone's January 6, 2017 letter) derives from a different question that was not specifically identified until plaintiffs were preparing plaintiff-specific default judgments against Iran.  Specifically, in addition to the limited instances in which the same plaintiffs hired more than one firm, in some instances estate representatives retained one firm and decedents' close relations with solatium claims retained another firm.  Because both individuals and estate representatives have been recognized as having the authority to file solatium claims, the issue of who would file solatium claims in the Iran default proceedings under the short time constraints imposed by the USVSST deadlines first became an issue when the plaintiff-specific default judgments were being prepared.

      **C.**    **_Burnett/Iran_ counsel's response to the January 6, 2017 letter.**

*Burnett/Iran* counsel agree that the judgments entered into in the *Bauer* litigation on behalf of the eleven solatium plaintiffs also named in the *Burnett* actions should not be disturbed.  Those eleven solatium plaintiffs represent instances where individual family members retained *Burnett/Iran*

---

[4] In January 2016, after several hundred *Ashton* plaintiff estate representatives filed for default judgments against Iran, *Ashton* counsel learned of seven instances in which the plaintiffs had years earlier retained more than one firm to represent them.  At the time of filing, *Ashton* counsel was unaware of the dual representations or that defaults had previously been entered for those plaintiffs in the *Havlish* and *Hoglan* actions.  The *Ashton* plaintiffs promptly filed a corrective amended default judgment application withdrawing the request for default judgment for those seven plaintiffs who had already obtained default judgments. 03-md-1570 ECF No. 3208.  The amended and revised default judgment in the *Ashton* case was granted.

The Honorable Sarah Netburn
January 23, 2017
Page 4

_____

counsel and estate representatives retained *Bauer* counsel.[5] At the time *Burnett/Iran* counsel filed the *Burnett/Iran* default judgment applications, we were not aware that the representatives of the estates of the eleven solatium plaintiffs' decedents had already obtained judgments on the solatium plaintiffs' behalf in the *Bauer* action. But given that the Court has entered default judgments on behalf of those eleven solatium plaintiffs, those judgments should not be disturbed and duplicate judgments for those plaintiffs are not appropriate. Since filing the *Burnett/Iran* default judgment applications, *Bauer* counsel has alerted us to several additional similarly situated plaintiffs; and when the remainder of the *Burnett/Iran* default judgment applications are filed, none of the plaintiffs who have obtained judgments in the *Bauer* case will be included.

The concerns identified in Ms. Capone's January 6 letter arose partly due to a miscommunication as to which firm was authorized to file for default judgments for the solatium plaintiffs. Although solatium claims recognized under the FSIA belong to the individual heirs of the deceased family members personally for the injury to the feelings and loss of the decedents' comfort and society,[6] courts have nonetheless permitted recovery by family members for solatium damages in instances where an estate representative has sought the damages on behalf of individual family members.[7] In fact, in *Stethem* and *Surette*, the court's decisions included footnotes specifically addressing the legal basis for awarding damages to individuals not specifically named in the case based on applications by the estates' personal representatives.[8] Here, unaware of the individual claims of the particular *Burnet/Iran* plaintiffs, *Bauer* counsel filed default judgments to protect the

---

[5] Baumeister & Samuels, P.C., represents the estates of the solatium plaintiffs' decedents. The eleven plaintiffs identified in the January 6 letter are solatium plaintiffs named both in the *Burnett v. Al Baraka* complaint and in the *Burnett/Iran* complaint and are each represented individually by Motley Rice LLC.

[6] *Eisenfeld v. Islamic Republic of Iran*, 172 F. Supp. 2d 1, 8 (D.D.C. 2000); *Flatow v. The Islamic Republic of Iran*, 999 F. Supp. 1, 29 (D.D.C. 1998); *Kilburn v. The Islamic Republic of Iran*, 999 F. Supp. 136, 157 (D.D.C. 1998).

[7] *See* 03-md-1570 ECF No. 3296 (awarding solatium damages through estate representatives in *Ashton*); s*ee, e.g., Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260 (D.D.C. 2002) (solatium award granted to decedent's sister where estate's personal representative filed suit); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002) (solatium award granted to decedent's three siblings where estate's personal representative filed suit); *Flatow*, 999 F. Supp. 1 (solatium award granted to decedent's three siblings where estate's personal representative filed suit).

[8] In footnote 18 of *Stethem*, the court commented:

> While [the decedent's parents] were the only [family members] named as plaintiffs in their suit, a decedent's parents have standing on behalf of themselves and their lineal decedents to bring loss of solatium claims. . . . Therefore, to the extent that an award for loss of solatium is warranted, [the decedent's three siblings] are also entitled to such damages.

*Stethem*, 201 F. Supp. 2d at 89, n18.

In footnote 9 of *Surette*, the court commented:

> While the Court ordinarily will not award damages to a non-plaintiff, the specific circumstances of this action permit such an award to plaintiff [the estate representative] on behalf of [the decedent's sister]. In similar cases brought in this district, judges have awarded damages to non-plaintiffs who demonstrated a sufficiently close connection to the victim of a terrorist attack." "In conformity with this practice, and in recognition of the unique circumstances of this action, the Court finds that plaintiff [the estate representative] may raise a claim for solatium on behalf of [the decedent's sister]. For clarity on this point, plaintiff moved to amend [the complaint], and the Court granted the motion, so that it now reads: "This action is brought by plaintiff [the estate representative], on behalf of herself and the decedent's heirs-at-law, including [decedent's sister].

*Surette*, 231 F. Supp. 2d at 271 n9.

The Honorable Sarah Netburn
January 23, 2017
Page 5

_____

solatium interests of the family members related to each of the estates represented in the *Bauer* action.  Likewise, when *Burnett/Iran* counsel sought default judgments for their named plaintiffs, they were unaware that the Bauer action included the *Burnett/Iran* solatium plaintiffs. The *Burnett/Iran* plaintiffs are withdrawing those motions pursuant to this Court's Order and will resubmit default judgment applications in *Burnett/Iran* without duplicates included.

Because the estate is an accepted vehicle to obtain such judgments and because the Court has already entered appropriate judgments against Iran for the eleven solatium plaintiffs, the eleven *Burnett/Iran* plaintiffs do not object to those judgments and recommend that they not be disturbed. Although solatium claims are personal to the individual and the preferred approach should be to address that claim in that plaintiff's own case, particularly where a party has filed his or her own claim, the judgments already entered for these plaintiffs should not be disturbed.  To do otherwise would suggest that the Court unnecessarily disturb existing judgments in the *Bauer* case only to reenter the very same judgment for the same judgment holders in the *Burnett/Iran* case.

Moving forward, *Burnett/Iran* counsel are aware of the issue with the *Bauer* judgments, will guard against any similar circumstances, and will employ the safeguards recommended by the PECs to eliminate the risk of future duplicate judgments.

Finally, the remaining plaintiffs in the *Burnett/Iran* complaint ask that the Court enter a liability judgment in the *Burnett/Iran* matter, pursuant to the *Burnett/Iran* plaintiffs' filings at *Burnett/Iran*, 15-cv-9903 ECF Nos. 68, 69.  Because the individual damage determinations do not impact the liability judgment aspect of the *Burnett/Iran* plaintiffs' proceedings (especially for the thousands of plaintiffs not included in the *Bauer* default motion), plaintiffs ask that the Court enter the default judgment as to liability in the *Burnett/Iran* matter for the reasons expressed in ECF Nos. 68, 69 in an expedited manner.

        **II.**        **Plaintiffs' Executive Committees' Response to directions in Para. 4.**

In paragraph 4, Your Honor directed the PECs "to submit a status letter . . . which (1) verifies that no individual or estate plaintiff has received duplicate judgments in any of the Court's past orders or, if duplicate relief has been issued, naming such plaintiffs and such relief; (2) details the nature of coordination between the different groups of plaintiffs applying for default judgments to ensure that duplicate judgments are not entered; (3) explains the due diligence measures conducted by plaintiffs' counsel to verify the family relationship between 9/11 decedents and immediate family member plaintiffs claiming solatium damages; and (4) identifies safeguards that will be implemented to prevent the issuance of duplicate relief in the future."  *Burnett/Iran*, 15-cv-9903 ECF No. 77 at para. 4.

        **A.**    **Verification that the Court's past orders contain no duplicate judgments, and that if duplicate relief has been issued, naming such plaintiffs and such relief.**

The PECs have identified the universe of orders granting partial default judgments against Iran, compiled a list of those judgments (attached as Appendix B, identifying the filing firms, case names, names of judgment holders, docket numbers of the cases in which judgments were issued, the dates of the judgments, and the docket numbers of the judgments) and reviewed the orders for

duplication.  The list of orders has been circulated among plaintiffs' counsel to ensure its accuracy and no errors have been identified.  Following this review, the PECs verify that no duplicate judgments have been identified among the past judgments issued by the Court.

### B. Detail of the nature of coordination between the different groups of plaintiffs applying for default judgments to ensure that duplicate judgments are not entered.

Each of the plaintiffs' counsels' firms have created lists of the plaintiffs filed in the individual actions within the multidistrict litigation and are using those lists to identify and eliminate duplication.  Where there has been a question as to whether a firm represents a party, the respective firms have communicated directly to resolve the issue.  Although the PECs' view is that, including in the limited context outlined above (and identified in Ms. Capone's January 6 letter), cooperation among the PECs has resolved issues to date, we recommend implementation of the measures described in section II.D. below to further ameliorate any risk of future duplication.

### C. Explanation of the due diligence measures conducted by plaintiffs' counsel to verify the family relationship between 9/11 decedents and immediate family member plaintiffs claiming solatium damages.

As the Court's inquiry is phrased, verification of the individual family relationships is correctly characterized as not being a function of the PECs; rather, the issue is a matter to be addressed by the individual firms representing the plaintiffs.  With that understanding, each of the firms representing individual plaintiffs has collected information to assess the familial relations of their respective clients and continue to do so.

In addition to the client-specific information that the firms collected initially upon being retained and in updates communicated since initial retention (which identified family relationships, along with other client-specific metrics), each firm is contacting (prior to filing) its clients to reverify the close family relationships between 9/11 decedents and immediate family members seeking solatium damages.  Each firm is reconfirming the names, relationships, current addresses and status (*e.g.*, whether the client is still alive) of each eligible family member.

### D. Identification of the safeguards that will be implemented to prevent the issuance of duplicate relief in the future.

The Court has given the PECs broad authority to coordinate and conduct discovery and pretrial proceedings for all plaintiffs.  To address the court's concerns, the PECs recommend and are implementing the following safeguards for all plaintiffs to employ in default judgment proceedings against Iran to prevent entry of duplicate judgments against Iran.

1. The PECs will designate one or more members of the PECs as a clearinghouse for the following information concerning Iran default proceedings in this multidistrict litigation: (a) a master list of every represented party in every action, and (b) a master list of each judgment obtained against Iran, including identification of the name and docket number of the case in which judgment was ordered, the date and ECF number of the judgment, name of each judgment holder, and the

value of the judgment for each judgment holder, and any other information the PECs shall indicate as necessary to facilitate coordination of the proceedings.

      2.      Each firm representing plaintiffs in the MDL proceedings will be asked to provide the PECs' designee(s) with the information identified in paragraph 2, formatted in a common manner as required by the PECs designee(s).

      3.      Each firm representing plaintiffs in the MDL proceedings will be asked to identify to the PECs' designee(s) in a timely manner any duplication identified in the pleadings moving forward and coordinate with the PECs to resolve the duplication.

      4.      Before filing any motion seeking default judgment in the Iran default proceedings, counsel for the filing party will be asked to confirm that both master lists are reviewed to ensure (a) that the motion is being filed on behalf of a plaintiff who has a claim in the default proceedings against the defaulted defendant, (b) that the firm filing the motion represents the plaintiff filing the motion for default, and (c) that no prior relief has been obtained or has been sought by the same plaintiff.

      5.      In instances where a default judgment is sought by a personal representative in favor of a solatium claimant who is not a named plaintiff in the action in which the award is sought, counsel requesting the judgment will be asked to confirm that: (1) the personal representative has requested that a judgment be sought in favor of the solatium claimant; (2) the solatium claimant has been contacted and affirmed that he or she authorizes the personal representative to seek the judgment in his or her favor; and (3) counsel has confirmed that the solatium claimant in favor of whom the judgment is being sought has not retained other counsel or been named in any other action or, if he or she has, that counsel has communicated with the claimant's counsel and received authorization to seek the judgment via the estate's representative.

      Respectfully,

      /s/ Robert T. Haefele
      ROBERT T. HAEFELE
      *PLAINTIFFS' EXECUTIVE COMMITTEES*

cc:      The Honorable George B. Daniels, via ECF
          Alan Kabat, Esq., liaison counsel for defendants, via ECF
          Sean Carter, Esq., via ECF
          James Kreindler, Esq., via ECF
          Jerry Goldman, Esq., via ECF
          Dorothea Capone, Esq., via ECF
          All Counsel of Record via ECF