UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (GBD)(FM) |

This document relates to:

*Thomas E. Burnett, Sr., et al. v. Al Baraka Investment and Development Corp., et al.,*
*Case No. 03-CV-9849 (GBD)(SN) (S.D.N.Y.)*

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT UNDER RULE 15

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend the complaint in the Action by filing the proposed *Burnett* Plaintiffs' Amended Complaint Adding Defendant Kingdom of Saudi Arabia in substantially the form attached to the accompanying Notice of Motion as Exhibit A. Defendant Kingdom of Saudi Arabia (the "Kingdom") has indicated that it is reviewing and considering Plaintiffs' proposed amended complaint. Counsel for the Kingdom have advised that the Kingdom expects to provide its position on the present motion to Plaintiffs early next week, and to address the issue in the letter due to the Court on March 16, 2017.

### INTRODUCTION

These MDL proceedings arise out of the terrorist attacks that took place on September 11, 2001. Plaintiffs in the present case are individuals who were killed in the attacks, their survivors, heirs, and close family members, and individuals who sustained physical injuries in the September 11, 2001 attacks. Through actions filed between 2002 and the present date in the Multi-District Litigation in which this case has been joined, the estates of individuals murdered in the September 11th attacks, thousands of family members of those killed in the attacks, thousands of individuals who were physically injured by the attacks, and commercial victims that incurred billions of dollars in property damage losses as a result of the attacks (collectively "the 9/11 plaintiffs" or "plaintiffs"), brought claims against *inter alia* the Kingdom of Saudi Arabia

("the Kingdom" or "Saudi Arabia") and/or the Saudi High Commission for Relief of Bosnia & Herzegovina ("SHC") for their injuries caused by the attacks.

From the commencement of the first suits against Saudi Arabia through September 28, 2016, the proceedings in this litigation pertaining to the Kingdom have focused exclusively on the availability of subject matter jurisdiction for plaintiffs' claims under the non-commercial tort exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), which provides an exception to foreign sovereign immunity for cases "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."

Plaintiffs in this case have not previously asserted direct and explicit claims against the Kingdom of Saudi Arabia under 28 U.S.C. § 1605(a)(5), and the Kingdom has previously argued that the non-commercial tort exception does not provide a basis of jurisdiction for claims against it arising from the September 11th attacks. The wrongful death claims, however, are arguably part of the class that is being pursued by the *O'Neill* plaintiffs in this MDL, and the claims against the Kingdom under 28 U.S.C. § 1605(a)(5) have been set forth in the *O'Neill* action. Furthermore, Plaintiffs' allegations in their operative pleadings to date have demonstrated the liability of the Kingdom even though the Kingdom of Saudi Arabia has not previously been named as a party in this case. Whatever the merits of the Kingdom's arguments on the point of whether or not the non-commercial tort exception provides jurisdiction here, the passage of new legislation on September 28, 2016 opened an avenue for these Plaintiffs to explicitly assert their claims against the Kingdom of Saudi Arabia as a defendant for what they have known has been the Kingdom's involvement in the September 11th attacks including pursuant to substantive causes of action that did not previously exist.

The Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (Sept. 28, 2016), was enacted following passage by both chambers and overwhelming votes in both the Senate and House to override a Presidential veto. *See* 162 Cong. Rec. S2845–48 (May 17, 2016) (unanimous consent); 162 Cong. Rec. H5239–44 (Sept. 9, 2016) (voice vote); 162 Cong. Rec. S6166–73 (Sept. 28, 2016) (veto override vote of 97-1); 162 Cong. Rec. H6023–32 (Sept. 28, 2016) (veto override vote of 348-77).

Through JASTA, Congress established an additional exception to foreign sovereign immunity for cases against foreign states arising from acts of international terrorism occurring in the United States, supplementing the jurisdictional grant provided by the non-commercial tort exception, which continues to provide an independent basis of jurisdiction for such cases as well. JASTA § 3(a) (enacting 28 U.S.C. § 1605B). In addition, JASTA made foreign sovereigns subject to Anti-Terrorism Act ("ATA") claims, *see id.* § 3(a) (enacting 28 U.S.C. § 1605B(c)), and amended the ATA's civil liability provisions to "recognize the substantive causes of action for aiding and abetting and conspiracy liability." *Id.* § 2(a)(4); *see id.* § 4(a) (enacting 18 U.S.C. § 2333(d)). JASTA's legislative history makes clear that Congress intended it to provide a jurisdictional grant and basis of relief applicable specifically to plaintiffs' claims against the Kingdom, and to eliminate immunity defenses advanced by the Kingdom proceedings in 03 MDL 1570.[1] JASTA does so by "provid[ing] civil litigants with the broadest possible basis …

---

[1] *See* 162 Cong. Rec. at H6025 (Sept. 28, 2016) (Rep. King) ("What [JASTA] is going to do is finally allow the 9/11 families to have their day in court to seek the justice they have long been denied. And if the Government of Saudi Arabia has no involvement, if there is no liability, they have nothing to worry about."); 162 Cong. Rec. at H6029 (Sept. 28, 2016) (Rep. Smith) ("[T]he Second Circuit dismissed legal action against Saudi Arabia and other defendants . . . . JASTA corrects that. . . . Anyone who has read the recently de-classified 28 pages of findings from the House-Senate Intelligence Committee's joint inquiry in 2002 . . . knows the provocative evidence of Saudi complicity in 9/11, and that remains unexamined."); 162 Cong. Rec. at S6167 (Sept. 28, 2016) (Sen. Blumenthal) ("[T]he Justice Against Sponsors of Terrorism Act simply closes a loophole that was created by the courts, contrary to the intent of this body. . . . Saudi Arabia, is able to evade all responsibility under the decision made by the Second Circuit Court of Appeals in New York, which created that loophole. . . . That is wrong. . . . This loophole will be closed by this measure for the benefit of not only the 9/11 victims but also potential victims in the future."); 162 Cong. Rec. at S6172 (Sept. 28, 2016) (Sen. Schumer) ("Unfortunately, the courts in New York have dismissed the 9/11 victims' claims against certain foreign entities alleged to have helped the 9/11 attacks. These courts are

consistent with the Constitution … , to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States." JASTA, § 2(b).

To that end, JASTA removed non-textual judicial limitations on federal courts' jurisdiction over foreign sovereigns under the FSIA for acts of international terrorism occurring in the United States, and eliminated judicial constrictions on ATA claims, in order to ensure the rights of victims of terrorism in the United States to "pursue civil claims against … countries that have knowingly or recklessly provided material support or resources, directly or indirectly, to the persons or organizations responsible for their injuries." JASTA, § 2(a)(7). Among other features, JASTA's exception to foreign sovereign immunity confirms that jurisdiction can be based on a sovereign entity's actions undertaken abroad (not just in the United States), and predicated on acts undertaken by a sovereign entity's agent (not just an employee, official, or alter-ego). JASTA § 3(a) (enacting 28 U.S.C. § 1605B(b)(2)). Through these and other provisions, JASTA "incorporates traditional principles of vicarious liability and attribution, including doctrines such as *respondeat superior*, agency and secondary liability," thus confirming that a foreign state is subject to jurisdiction and liability for tortious acts of employees and agents at every level acting within the scope of their employment or agency. 162 Cong. Rec. at S2845 (May 17, 2016) (Sen. Cornyn).

---

following what I believe is a fundamentally incorrect reading of the Foreign Sovereign Immunities Act. . . . For the sake of these families, it should be made clear—beyond a shadow of a doubt—that every entity, including foreign states, will be held accountable if they are sponsors of heinous acts like 9/11. It is very simple. If the Saudis were culpable, they should be held accountable. If they had nothing to do with 9/11, they have nothing to fear."); *cf.* 162 Cong. Rec. at H6026 (Sept. 28, 2016) (Rep. Nadler) ("If the Saudi Government was not complicit in the attack on 9/11, the plaintiffs will fail to prove such complicity in an American court. Justice will have been served, and the Saudis will be vindicated after years of suspicion. But if it is proven in an American court that the Saudi Government was complicit in the attacks on 9/11, justice will have been served and we—not the Saudis—will have justification to be very angry."); 162 Cong. Rec. at H5241 (Sept. 9, 2016) (Rep. Poe) ("Based on the 28 pages held secret for years, there may be evidence that the country of Saudi Arabia and their officials may have had some involvement in planning the elements of that attack. I don't know. That is what the courtroom is for. Whether this involvement rises to the level to be held accountable at trial is an issue for a jury of Americans to decide.").

JASTA also confirms that there is no "discretionary function" limitation on jurisdiction for claims against a foreign state arising from an act of international terrorism occurring in the United States, and that the "caused by" language of the new exception to sovereign immunity, codified at 28 U.S.C. § 1605B, requires only some "reasonable connection" between defendant's actions and plaintiffs' injuries, 162 Cong. Rec. at S2845 (May 17, 2016) (Sen. Cornyn) (citing case law affirming "reasonable connection" standard), a flexible standard that may be met based on a showing of "tortious act or acts" attributable to the defendant.  JASTA § 3(a) (enacting 28 U.S.C. § 1605B(b)(2)).

Cases within the MDL (including the *Burnett* case with claims against the Saudi High Commission for Relief of Bosnia & Herzegovina) were on appeal to the Second Circuit against the Kingdom of Saudi Arabia and one of its agencies when JASTA was enacted.  In a joint motion for vacatur of that appeal in light of JASTA, the Kingdom of Saudi Arabia acknowledged that "JASTA was intended to apply to" cases arising out of the terrorist attacks of September 11, 2001, and that "JASTA makes significant changes to the legal framework addressed in the district court's" prior rulings on sovereign immunity as to the Kingdom of Saudi Arabia. *In re: Terrorist Attacks on September 11, 2001*, No. 15-3605-cv (2d Cir.), ECF No. 132-1 at 2. The joint motion for vacatur in the Second Circuit further stated, "the district court should have the opportunity to address those questions in the first instance and to apply JASTA to the complex record of this case, including the effects of JASTA on the rights of potential additional plaintiffs that are not before this Court in the present appeal." *Id.*

Now, Plaintiffs seek to assert claims against the Kingdom of Saudi Arabia based on the exception to sovereign immunity and new substantive causes of action created by JASTA – which was passed in September 2016.  The Kingdom of Saudi Arabia has recognized the potential impact of this new legislation upon claims in the MDL against it and joined a vacatur motion in the Second Circuit to remand the cases for further consideration in light of JASTA.  In

5

the interest of efficiency, Plaintiffs seek to amend their operative pleadings to add claims against the Kingdom of Saudi Arabia rather than filing a new complaint that would further hamper the just, speedy, and inexpensive determination of this action.  *See* Fed. R. Civ. P. 1. As the Court's February 16, 2017 Order provided, the Kingdom of Saudi Arabia's motion to dismiss the actions filed against it asserting claims arising from JASTA is scheduled to be filed by June 1, 2017. Therefore, the Kingdom of Saudi Arabia would suffer no prejudice from granting Plaintiffs' motion for leave to amend to add the Kingdom of Saudi Arabia as a defendant.

In short, none of the factors justifying denial of a motion for leave to amend is present here, and the Plaintiffs should be permitted to file the proposed Fourth Amended Complaint.

## ARGUMENT

## LEAVE TO AMEND SHOULD BE FREELY GRANTED

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 604 (2d Cir. 2005).  "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotations omitted).  A motion to amend should be denied only for such reasons as "undue delay, bad faith, futility of the amendment," and "resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *see also Lee v. Regal Cruises, Ltd.,* 916 F. Supp. 300, 303 (S.D.N.Y. 1996), aff'd, 116 F.3d 465 (2d Cir. 1997), *citing Foman, supra,* 371 U.S. at 182.  None of these factors is present here, and Plaintiffs' motion should be granted.

A.   **There is no undue delay given the proximity of Plaintiffs' motion and the enactment of JASTA giving Plaintiffs additional substantive rights against the Kingdom of Saudi Arabia.**

As set forth above, Plaintiffs seek to amend their operative pleadings to assert claims against the Kingdom of Saudi Arabia for its alleged role in the terrorist attacks on September 11, 2001. JASTA was enacted on September 28, 2016 giving rise to an exception to sovereign immunity permitting Plaintiffs' claims to proceed pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2331 *et seq.* This motion is being filed less than six months since JASTA's enactment.

In a joint motion filed with the U.S. Court of Appeals for the Second Circuit to vacate a then-pending appeal, Plaintiffs and the Kingdom of Saudi Arabia, among others, wrote:

> The parties also agree that JASTA raises significant new questions of law that the district court should have the opportunity to address in the first instance. The new exception to foreign sovereign immunity created by JASTA, 28 U.S.C. § 1605B, does not incorporate the entire-tort rule on which Judge Daniels relied in the opinion under review. It also does not incorporate the discretionary-function exclusion on which Judge Casey relied in his earlier 2005 opinion.

*In re: Terrorist Attacks on September 11, 2001*, No. 15-3605-cv (2d Cir.), ECF No. 132-1 at 9-10.

The change in law created by JASTA affirms that there is no undue delay in Plaintiffs' proposed amendment. In fact, in the same submission to the Second Circuit, the Kingdom of Saudi Arabia conceded "that it is appropriate that Appellants be permitted to add additional causes of action to their complaints that were not previously available as a matter of law." *Id.* at 10. For the Kingdom of Saudi Arabia to suggest that this is no longer the case and amendment should be denied would be contrary to its prior judicial admissions. "Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *Ali v. Reno*, 22 F.3d 442, 446 (2d Cir. 1994). Judicial admissions "are statements of fact rather than

7

legal arguments made to a court." *New York State NOW v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998).

Because of JASTA's recent enactment and the Kingdom's admissions regarding the availability of additional causes of action not previously available, Plaintiffs assert there is no undue delay in seeking leave to add claims against the Kingdom of Saudi Arabia.[2]

**B.   Plaintiffs' proposed amendment to add the Kingdom of Saudi Arabia as a Defendant in this action is not futile.**

Plaintiffs' claims under JASTA and the allegations contained in their proposed amended pleading – including addenda – against the Kingdom of Saudi Arabia augur against any finding that the amendment would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines, Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). That is, where an amendment does not establish a sufficient or cognizable claim, or has no merit, then it would be considered futile. *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). Under the Rule 12 analysis, "the claim sought to be asserted must plead facts sufficient to support a plausible claim to relief. As in the Rule 12 context, the Court considering futility construes the facts alleged by the party seeking to amend as true, and views such facts in a light 'most favorable' to the moving party." *Rodriguez v. Wells Fargo Bank*, 2017 U.S. Dist. LEXIS 23388, at *15 (E.D.N.Y. Feb. 16, 2017).

Any alleged futility in Plaintiffs' putative amendment is ameliorated again by the Kingdom of Saudi Arabia's admission that JASTA applied directly to the scenario of the September 11, 2001 attacks and that additional causes of action should be allowed against the Kingdom for its alleged role in the September 11, 2001 attacks. While this does not constitute an

---

[2] The same would be true of any allegation of bad faith as Plaintiffs' present motion is being filed only four weeks after the Second Circuit remanded claims against the Kingdom of Saudi Arabia back to the District Court following the joint motion for vacatur.

admission that Plaintiffs could withstand a Rule 12(b)(6) motion, it does, however, admit to the plausibility of Plaintiffs' allegations in light of the recent congressional enactment of JASTA.

Furthermore, Plaintiffs' allegations include in-depth recitations of the involvement of agents and alter-egos of the Kingdom of Saudi Arabia in the preparations for the September 11, 2001 attacks. For example, Sections V through VIII of Plaintiffs' proposed amendment chronicle the activities of charities and individuals who were agents or alter egos of the Kingdom of Saudi Arabia who provided material support or resources to al Qaeda in the years leading up to the September 11, 2001 terrorist attacks. Furthermore, despite the Kingdom of Saudi Arabia having been dismissed from the MDL proceedings on two prior occasions, JASTA provides that the two bases for the Kingdom's dismissal – the discretionary-function exception and the entire-tort rule – do not apply to claims against a foreign sovereign arising out of an act of international terrorism that causes injury in the United States. While not waiving its rights and objections, the Kingdom of Saudi Arabia has explicitly accepted that JASTA alters the playing field for a foreign state that is similarly situated to the Kingdom in these circumstances.

Plaintiffs' putative amendment states cognizable claims against the Kingdom of Saudi Arabia based on plausible factual allegations demonstrating liability through theories of agency and alter-ego. Therefore, Plaintiffs assert that their putative amendment is not futile, and leave to amend should be granted.

## C. The Kingdom of Saudi Arabia is at no risk of prejudice by the Court granting Plaintiffs' motion.

The current procedural posture of claims against the Kingdom of Saudi Arabia demonstrate that the Kingdom would suffer no prejudice by the Court granting Plaintiffs' motion for leave to amend. First, the Kingdom has admitted that additional causes of action are available to be pleaded against it in light of JASTA. Second, the Kingdom agreed to vacate Plaintiffs' appeals against it and have the case remanded to this Court for a determination of JASTA's applicability to it. Third, this Court set a briefing schedule on the Kingdom's motion

9

to dismiss claims arising as a result of the passage of JASTA with the Kingdom's opening brief due to be filed on June 1, 2017. In short, it is as if all of the cases filed against the Kingdom of Saudi Arabia were only now initiated with briefing on a motion to dismiss on the horizon. There is no prejudice as to the Kingdom in the granting of Plaintiffs' motion for the Kingdom to defend against claims that are identical to those asserted in the Consolidated Amended Complaint submitted by the Plaintiffs' Executive Committee to the Court by letter on March 6, 2017. The *Burnett* Plaintiffs assert identical allegations and claims to those set forth in the PEC's Consolidated Amended Complaint. Given the identical nature of the allegations and claims, the Kingdom of Saudi Arabia cannot claim prejudice where it has no choice but to defend against the claims set forth in the Consolidated Amended Complaint.

In addition, to the extent that the Kingdom opposes this motion and the Court determines that leave should not be granted, Plaintiffs retain the right to assert their claims against the Kingdom of Saudi Arabia in a newly instituted action rather than as an amendment. Plaintiffs, however, believe that maintaining a smaller set of cases from which to draw out the allegations against the Kingdom of Saudi Arabia would assist the Court in this sprawling litigation. Therefore, in the interest of efficiency, Plaintiffs seek to amend their operative pleadings to add claims against the Kingdom of Saudi Arabia rather than filing a new complaint that would further hamper the just, speedy, and inexpensive determination of this action. *See* Fed. R. Civ. P. 1.

Because the Kingdom of Saudi Arabia will not suffer any prejudice by the granting of Plaintiffs' motion, and Plaintiffs would be within their rights to file a new action against the Kingdom asserting these identical claims, Plaintiffs respectfully submit that the Court should grant the instant motion.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Leave to File the *Burnett* Plaintiffs' Amended Complaint Adding Defendant Kingdom of Saudi Arabia, in the form attached to the Notice of Motion as Exhibit A. The Kingdom of Saudi

10

Arabia can demonstrate no undue delay, bad faith, futility, or prejudice as a result of the Court granting Plaintiffs' motion.  Plaintiffs further request that this Court treat the amended pleading as an amendment to Plaintiffs' now-operative complaints, in lieu of filing new amended complaints.  A proposed form of order is attached hereto.

Dated:   March 7, 2017                                         Respectfully submitted,

    /S/
Jodi Westbrook Flowers, Esq. (SC-66300)
Donald A. Migliori, Esq. (RI-4936; MA-567562; MN-0245951)
Michael E. Elsner, Esq. (NY & VA-ME8337)
Robert T. Haefele, Esq. (SC75266; DC1007583; NJ58293; PA57937; NY845666 - RH-2811)
John M. Eubanks, Esq. (SC79816; MD[no bar numbers assigned])
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone:  (843) 216-9000