UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                    :
IN RE :                                            :      Case No. 03 MDL 1570 (GBD) (FM)
                                                    :
TERRORIST ATTACKS ON:
SEPTEMBER 11, 2001                           :
_____:


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES
<u>PURSUANT TO OPINION AND ORDER OF FEBRUARY 15, 2017</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

    A.    Background ................................................................................................ 1

    B.    Counsel for the Plaintiffs ....................................................................... 4

II.   APPLYING THE SECOND CIRCUIT'S "PRESUMPTIVELY REASONABLE FEE" ANALYSIS, PLAINTIFFS SEEK RELEVANT COSTS AT REASONABLE RATES OF COMPENSATION ...................................................... 8

    A.    Second Circuit requires application of comparable forum rates ......................... 8

    B.    Plaintiffs' hourly rates are comparable to market rates. ..................................... 11

    C.    Although entitled to comparable in-forum rates consistent with Second Circuit precedent, Plaintiffs agree (without prejudice) to application of the rates applied by Judge Maas in ECF # 3087. ...................................................... 14

    D.    This Application is limited to work directly related to the efforts to compel Sedaghaty to comply with his basic discovery obligations ................... 15

    E.    Plaintiffs are entitled to recoup reasonable costs and expenses in connection with the above pleadings and hearings. ........................................... 16

    F.    Plaintiffs are entitled to a reasonable fee for preparation of the Fee Application ......................................................................................................... 17

III.  CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. City of New York*, 132 F.Supp.2d 239 (S.D.N.Y. 2001)……………...……………..17

*Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)…………………...………………………………………………………11, 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110 (2d Cir. 2007)……………………………………………………...........8

*Ceglia v. Zuckerberg,* No. 10-CV-00569((F), 2012 U.S. Dist. LEXIS 18438 at *13 (W.D.N.Y. Feb. 14, 2012)……………………………………………………………14

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204 (2d Cir. 2005)......................................11

*Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)……………………………………8, 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………….......................8

*LV v. New York City Dept. of Educ.*, 700 F. Supp.2d 510 (S.D.N.Y. 2010)………….……….13

*Momchilov v. Chaduhry*, No. 04-CV-3159, 2006 WL 2594850, at *1 (E.D.N.Y. Sept. 11, 2006)……………………………………………………..………...8

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., Co.* 09 Civ. 8665 (JGK)(FM), 2010 U.S. Dist LEXIS 138873, *8 (S.D.N.Y. Dec. 6, 2010)………………………….…13

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)..............................................  8

*Restivo v. Hessemann,* 846 F.3d 547 (2d Cir. 2017).......................................................8, 9, 10

*Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009)………………….....11

*Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219 (E.D.N.Y. 2009)………………8, 9, 10

*Tatum v. City of New York*, No. 06-cv-4290, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010)……………………………………………………………11, 17

*Themis Capital v. Democratic Republic of Congo,* 09 Civ. 1652 (PAE), 2014 U.S. Dist. LEXIS 124208, at *21 (S.D.N.Y. Sept. 4, 2014).....................................13

*U.S. Bank N.A. v. Dexia Real Estate Capital Mkts.*, 12 Civ. 9412 (PAE), 2016 U.S. Dist. LEXIS 165268, at *26-27 (S.D.N.Y. Nov. 30, 2016)…………………....... 13

*U.S. Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989)……..…………. 17

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 12cv275 (DLC), 2015 U.S. Dist. LEXIS 49477, *5-6 (S.D.N.Y. Apr. 15, 2015)...………………………………………… 13

*Weyant v. Okst*, 198 F.3d 311 (2d Cir.1999)...……………………………………………..17

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 37 .................................................................................................... 1, 12

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................................4

Fed. R. Civ. P. 72 ..............................................................................................................2, 16

**OTHER AUTHORITIES**

Karen Sloan, *NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore,* THE NATIONAL LAW JOURNAL (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202637587261?slreturn=20140023124124# ………………………………….………………13

Mike Mintz, *New Report Finds Law Firm Hourly Billing Rates Continuing to Rise*, MARTINDALE-HUBBELL (May 9, 2012)………..………………………………………………13

Sara Randazzo and Jacqueline Palank, *"Legal Fees Cross New Mark: $1,500 an Hour,"* THE WALL STREET JOURNAL, Sec. A, Page 1, Feb. 9, 2016)…………………………………13

## I.   <u>INTRODUCTION</u>

In accordance with the Court's on-the-record comments at the July 8, 2016 hearing (Exh. A, Transcript of July 8, 2016 Hearing, ECF No. **3320** at 17) and the Court's February 15, 2017 Opinion and Order (ECF No. 3447) ("February 15, 2017 Order") (Exh. B), Plaintiffs submit this memorandum and the accompanying supporting declarations with exhibits in support of their application for attorneys' fees and costs as to Defendant Perouz Sedaghaty.[1]  During the July 8, 2016 hearing, Judge Maas granted Plaintiffs permission to apply for costs, acknowledging that "as was true in the prior application for costs [related to Al Haramain and Wa'el Jelaidan], [Judge Maas] recognize[d] there's a fair amount of baggage going backward that relates to [the discovery dispute].  *See* Exh. A at 17:16-17:18; 17:23-17:24.  In the February 15, 2017 Order, the Court reiterated its permission for Plaintiffs to apply for reasonable attorneys' fees and costs from Defendant Perouz Sedaghaty (hereinafter "Sedaghaty") (ECF No. 3447 at 13).  The only issue for the Court's consideration is the reasonableness of the costs and fees requested.

### A.   **Background**

As exemplified in the February 15, 2017 Order and the underlying record, over the six-year course of discovery disputes between Plaintiffs and Sedaghaty, Plaintiffs have expended enormous time and energy drafting and reviewing multiple pleadings, preparing for various resulting hearings, and conducting lengthy and detailed independent investigations necessitated by Sedaghaty's intentional misconduct to avoid and evade his discovery obligations.  Although a complete procedural history is unnecessary, some consideration of Sedaghaty's willful misconduct is nonetheless appropriate to determine the severity of the fee award necessary to achieve the essential deterrent objective of Rule 37 sanctions.

---

[1] The exhibits referenced herein are exhibits to the Declaration of Robert T. Haefele, dated March 28, 2017.

Sedaghaty's noncompliance with his discovery obligations has necessitated Plaintiffs researching, drafting, editing, and finalizing – on behalf of all of the Plaintiffs – seven separate pleadings[2] for this Court's consideration, including: (1) Plaintiffs' February 4, 2011 opposition to Sedaghaty's motion to stay discovery (ECF No. 2405); (2) Plaintiffs' June 17, 2011 motion to compel Sedaghaty (ECF No. 2486); (3) Plaintiffs' July 6, 2011 brief in further support of Plaintiffs' motion to compel Sedaghaty (ECF No. 2489); (4) Plaintiffs' December 20, 2011 opposition (ECF No. 2504) to Sedaghaty's Rule 72 objections (ECF No. 2495) to the Court's November 22, 2011 Ruling; (5) Plaintiffs' August 10, 2015 motion for sanctions and accompanying declaration with exhibits (ECF Nos. 2991); (6) Plaintiffs' November 6, 2015 reply and accompanying declaration with exhibits (ECF Nos. 3110) in further support of their motion for sanctions; and (7) Plaintiffs' September 6, 2016 additional response in support of their request for imposition of sanctions (ECF No. 3339).

In addition to the proceedings before the District Court, Sedaghaty filed two related applications to the Second Circuit in efforts to evade his discovery obligations.  His Second Circuit proceedings include one failed Mandamus petition and one failed application for emergent stay.  Those filings, both related to his efforts to avoid his discovery obligations, necessitated Plaintiffs researching, drafting, editing, and finalizing an additional brief in opposition to Sedaghaty's stay application.  Perhaps reflecting the weakness of Sedaghaty's application to the Second Circuit, despite imposing a deadline for a responsive pleading, the Second Circuit denied Sedaghaty's application for an emergent stay before the deadline for a responsive pleading, obviating the need for Plaintiffs to file their prepared brief.

---

[2] Plaintiffs incorporate herein by reference their prior submissions in connection with their June 17, 2011 and August 10, 2015 motions to compel/sanction Sedaghaty (and Plaintiffs' reply papers; ECF Nos. 2486, 2489, 2991, 3110, 3339), their February 4, 2011 opposition to Sedaghaty's motion to stay (ECF No. 2405), and their December 20, 2011 opposition to Sedaghaty's Rule 72 objections (ECF No. 2504).

Sedaghaty's actions have also necessitated Plaintiffs' preparation, travel, and appearance before the Court to argue the various motions during hearings on November 16, 2011, December 14, 2011, and July 8, 2016.  While the hearing on July 8, 2016, was entirely related to the Sedaghaty sanctions issue, only portions of the hearings on November 16, 2011 and December 14, 2011 were related to Sedaghaty sanctions issues.  For that reason, for purposes of this fee petition, Plaintiffs have suggested significant reductions for the time and expenses related to the earlier hearings.

Plaintiffs respectfully submit that this application reflects a need for the Court to deter *all of the defendants* in the litigation from similar discovery misconduct.  This is especially important given that all of the defendants, including Sedaghaty and other previously sanctioned defendants represented by the same counsel as Sedaghaty, have been admonished that sanctions up to and including dispositive sanctions might be warranted if they continue to withhold documents improperly in discovery.[3]

Thus, with the parameters set by the July 8, 2016 determination and February 15, 2017 Order which have already determined that an award is proper, the Court need not reconsider whether an award of fees and expenses is justified.  Instead, the sole issue to be determined is

---

[3] *See, e.g.*, Transcript of Oct. 28, 2010 Hearing at 17-18 (**Exhibit O**) (admonishing Al Haramain of the potential for sanctions, Judge Maas stated "I intend to leave for another day what consequences of any nonproduction . . . will be."); Transcript of Nov. 16, 2011 Hearing at 33 (**Exhibit P**) (warning Jelaidan's counsel of the need to initiate a "full court press" to obtain requested discovery or face sanctions, concluding, "If you're not sufficiently able to document a vigorous effort to obtain those documents, it may be that sanctions are imposed." Transcript of April 26, 2011 Hearing at 20 (**Exhibit Q**) (expressing the need for defense counsel to actively engage the defendants' in their discovery responsibilities, stating "I do think this is the type of stage of the case where you . . . need[] to sit down with the folks who are responding to these requests and hold their hand to a certain extent and describe in greater detail what needs to be searched for. . . . And if . . . any other defendant has failed to produce documents that manifestly are within its possession, custody, or control, that may lead to consequences that that particular defendant doesn't care for."); Transcript of June 23, 2011 Hearing at 9-10 (**Exhibit J**) (warning defense counsel of the possibility of sanctions, stating "if responsive documents are not produced, and [Plaintiffs] are able to show that they documents exist and should be produced [. . . ] If they make a sufficiently persuasive showing, [defendants] may be faced with the prospect that I issue case-dispositive sanctions."); Transcript of June 23, 2011 Hearing at 17-18 (**Exhibit J**)  (admonishing defendants of the possibility of default judgments, stating "I think I have made my position clear which is that if a persuasive showing can be made that [defendants] have not fully complied with the ruling I made . . .[that] might lead to the entry of default judgments…."").

the reasonable fees and expenses to award Plaintiffs under Rule 37(b)(2)(C) in view of the totality of the circumstances and the time spent and itemized costs presented in support of this Application.

### B.    Counsel for the Plaintiffs

Plaintiffs have been represented in this MDL by multiple law firms that individually represent various subsets of plaintiffs and by lawyers from each of the firms that the Court has appointed to Plaintiffs' Executive Committees to coordinate various aspects of this multidistrict litigation, including discovery, for all of the Plaintiffs.   Among the law firms representing Plaintiffs in opposition to Sedaghaty's longstanding discovery abuses are Motley Rice LLC, Cozen O'Connor P.C., and Anderson Kill P.C. (*See* biographies of each firm at **Exhibits E – G**).

**Motley Rice LLC** – Three attorneys from the Motley Rice firm – Robert T. Haefele, John M. Eubanks, and Brian Frutig – have performed various billed tasks necessary in connection with the Sedaghaty motions.  (Detailed biographies of these Motley Rice attorneys are included at **Exhibit E** (the biography of Mr. Frutig is the biography used while he was at Motley Rice).

1.  Robert T. Haefele is an associate of the Motley Rice firm, member of the firm's Anti-Terrorism and Human Rights practice group, and an appointed member and co-liaison counsel of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570. Mr. Haefele, a 1989 graduate of Rutgers University School of Law - Camden, has more than twenty five years of experience practicing in complex civil litigation, including asbestos, tobacco, and other mass tort and product liability litigation.  Since 2003, the primary emphasis of Mr. Haefele's practice has involved representing plaintiffs in anti-terrorism, human rights, and other litigation related to the attacks that occurred on September 11, 2001.  Mr. Haefele is licensed to

practice law in South Carolina, New Jersey, Pennsylvania, New York, and the District of Columbia and is admitted to practice before the U.S. Courts of Appeals for the Second, Third, Fourth, and Eleventh Circuits and before the U.S. District Court for the Districts of New Jersey, the District of Columbia, and the Southern District of New York.

2. John M. Eubanks is an associate of the Motley Rice firm and is a member of the firm's Anti-Terrorism and Human Rights practice group.  Mr. Eubanks, a 2003 graduate of the Georgetown University Law Center, has spent his entire legal career representing victims, survivors, and family members of terrorism and human rights violations in litigation against international and domestic defendants.  Mr. Eubanks is licensed to practice law in Maryland and South Carolina and is admitted to practice before the U.S. Supreme Court and before the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, and Eleventh Circuits.

3. Brian Frutig was an associate of the Motley Rice firm and a member of the firms' Anti-Terrorism and Human Rights practice group.  At the time Mr. Frutig was at Motley Rice, Mr. Frutig, a 2008 graduate of the William & Mary School of Law and a 2005 Masters graduate of King's College London, University of London, had more than 5 years' experience focused principally on litigating cases involving the Anti-Terrorism Act, the Alien Tort Claims Act, the Foreign Sovereign Immunities Act and international humanitarian law.  Before becoming a lawyer, Mr. Frutig gained international law experience as a legal assistant at the Association of Defense Counsel practicing at the International Criminal Tribunal for the Former Yugoslavia. While at Motley Rice, Mr. Frutig was licensed to practice law in New York and South Carolina and was admitted to practice before the U.S. Supreme Court and the U.S. District Court for the Eastern and Southern Districts of New York.

**Cozen O'Connor P.C**. – Two attorneys from the Cozen O'Connor firm – Sean P. Carter and J. Scott Tarbutton – have performed various tasks necessary in connection with the

Sedaghaty motions.  (Detailed biographies of these Cozen O'Connor attorneys are included at Exhibit F.)

1. Sean P. Carter is a member of the Cozen O'Connor firm and an appointed co-chair and member of the Plaintiffs' Executive Committee for the Commercial Claims in 03 MDL 1570.  Mr. Carter is a 1996 graduate of the Villanova University School of Law with twenty years of litigation experience, concentrated in commercial and mass tort litigation, with a particular focus on cases involving claims under the Foreign Sovereign Immunities Act and Anti-Terrorism Act.  Mr. Carter is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit and the U.S. District Court for the Eastern District of Pennsylvania.

2. J. Scott Tarbutton is a member of the Cozen O'Connor firm and the designated liaison counsel and member of the Plaintiffs' Executive Committee for the Commercial Claims in 03 MDL 1570.  Mr. Tarbutton is a 2001 graduate of the Catholic University of America, Columbus School of Law with more than fifteen years of litigation experience, concentrated in subrogation and recovery litigation.  Mr. Tarbutton is licensed to practice law in Pennsylvania and is admitted to practice before the U.S. District Court for the Eastern District of Pennsylvania.

**Anderson Kill P.C.** – Three attorneys from the Anderson Kill firm – Jerry Goldman, Rene Hertzog, and Bruce Strong – have performed various tasks necessary in connection with the Sedaghaty motion.  (Detailed biographies of these Anderson Kill attorneys are included at Exhibit G.)

1. Jerry Goldman is a shareholder at the Anderson Kill firm and operates as a member of the Plaintiffs' Executive Committee for Personal Injury and Death Claims in 03 MDL 1570 through the seat appointed to Joshua Ambush.  Mr. Goldman, a 1976 graduate of the Boston University School of Law (and a 1983 graduate of Temple University with an LLM), has more

than 40 years of experience practicing in areas of complex litigation; general business law; white collar criminal defense; and other areas.  Mr. Goldman is licensed to practice law in New York, Pennsylvania, and Massachusetts and is admitted to practice before the U.S. Supreme Court, the U.S. Tax Court, the U.S. Court of Appeals for the Second and Third Circuits and before the U.S. District Court for the Eastern and Southern Districts of New York, and the Eastern District of Pennsylvania.

2.  Rene Hertzog was an associate in the Insurance Recovery group at the Anderson Kill firm and has left the firm since the proceedings that are the subject of this motion.  Ms. Hertzog is a 2007 cum laude graduate of the Fordham Law School.  While at Anderson Kill, Ms. Hartzog's practice concentrated on insurance recovery for policyholders, corporate and commercial litigation, and environmental law.  While at Anderson Kill, Ms. Hertzog was licensed to practice law in New York, and was admitted to practice before the U.S. Supreme Court, the U.S. Courts of Appeals for the Second, Sixth, and Eleventh Circuits and before the U.S. District Court for the Eastern and Southern Districts of New York.

3.  Bruce Strong is an associate in the Insurance Recovery and Regulated Products groups at the Anderson Kill firm.  Mr. Strong is a 2013 *cum laude* graduate of the Georgetown University Law Center.  His practice concentrates on insurance recovery for policyholders, corporate and commercial litigation.  Mr. Strong is licensed to practice law in New York, New Jersey, and Pennsylvania, and is admitted to practice before the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit and before the U.S. District Court for the Eastern and Southern Districts of New York and the U.S. District Court for the District of New Jersey.

## II.   APPLYING THE SECOND CIRCUIT'S "PRESUMPTIVELY REASONABLE FEE" ANALYSIS, PLAINTIFFS SEEK RELEVANT COSTS AT REASONABLE RATES OF COMPENSATION

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[4]   Though the Supreme Court continues to acknowledge this "lodestar" method, the Second Circuit has often avoided the term in favor of applying an approach centered on determining a "presumptively reasonable fee," or "what a reasonable, paying client would be willing to pay." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007)).   Under either methodology, before calculating the fees, the party seeking reimbursement must prove the reasonableness and necessity of the hours spent, as well as the rates charged. *Momchilov v. Chaduhry*, No. 04-CV-3159, 2006 WL 2594850, at *1 (E.D.N.Y. Sept. 11, 2006).

### A.   Second Circuit requires application of comparable forum rates.

Courts in the Second Circuit apply the forum rule to assess the reasonableness of attorney fee rates under the lodestar approach. *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017).   Applying the forum rule, courts use "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.*, *quoting Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (providing that, in calculating the lodestar amount, the rates used generally "are the market rates prevailing in the community for similar

---

[4] The Supreme Court has reaffirmed the vitality of this "lodestar" method. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010).

services by lawyers of reasonably comparable skill, experience, and reputation" (internal quotation marks omitted)).

In instances where a party has sought to apply higher out-of-district rates to a fee award, the Second Circuit has required the party seeking to depart from the in-district rates to overcome the presumption in favor of the forum rule, "by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Restivo*, 846 F.3d at 590 (quoting *Simmons*, 575 F.3d at 172). The Second Circuit has described the burden this way: "[T]o rebut the presumption that the forum rule applies, the party seeking higher fees 'must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.'" *Restivo*, 846 F.3d at 590 (quoting Simmons, 575 F.3d at 176) (internal quotation marks omitted).

Relevant factors that the Second Circuit has considered in applying higher out-of-district rates include whether counsel has "special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise," whether any "in-district counsel possessed such expertise," and whether "local counsel possessing requisite experience were unwilling or unable to take the case." *Restivo*, 846 F.3d at 590 (quoting Simmons, 575 F.3d at 175-76).

In previous sanctions proceedings in these multidistrict proceedings in 2015, the Court did not apply the Second Circuit's presumptive forum rule to impose financial sanctions against Al Haramain Islamic Foundation and Wa'el Jelaidan for their discovery violations. Rather than applying the Second Circuit's presumptive rule to use rates from the forum, Judge Maas premised

each counsels' billable rate on the location of the counsel's "home community" as delineated on the respective law firm's website.  *See* ECF 3087, at 12-13.

The approach the Court applied to the AHIF and Jelaidan sanctions is not consonant with Second Circuit precedent, presents independent anomalies, and (in the case of this litigation) has ignored the actual character of at least one of the law firms with a national practice. Departure from the presumptive forum rule has been recognized to impose the burden on a party seeking departure from forum rates where *higher* out-of-district rates are sought.  Where a party seeks to use a *higher* rate than recognized in the district, the party seeking the departure must "persuasively establish[] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  *Restivo*, 846 F.3d at 590 (quoting *Simmons*, 575 F.3d at 176). But here, imposition of an out-of-district departure (despite that it is a rate not used by counsel) would result in a *lower* rate and the correlative burdens do not lead to a good fit.  For example, Sedaghaty would have the burden of making a particularized showing that the selection of out-of-district counsel was predicated on reduced rates versus experience-based, objective factors, and the likelihood that use of in-district counsel would produce a substantially superior result.  *Id.*[5]

In addition, the Court's use of so-called "home" rates makes assumptions about the character of certain of the firms and the firms' "overhead."  For example, the Court ignores that Motley Rice is atypical in character and rather than being compared to other South Carolina firms, a better "home" comparison would be to comparable firms with national practices. Moreover, the firm as a whole and the Motley Rice lawyers who billed time on Sedaghaty issues have a practice that more typically than not spans outside of South Carolina.

---

[5] Another anomaly caused by the Court's application of out-of-state rates is that it applied significantly different billing rates to at least one lawyer based on historical rates in a district where the lawyer does not practice versus applying rates from the forum, where the lawyer is admitted and practices.

**B.      Plaintiffs' hourly rates are comparable to market rates.**

In assessing the in-forum rates to apply, the Court should compare the requested rates to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998) (internal citation omitted).  A court's determination of the rate is a factual issue within its discretion, and in addition to knowledge of rates charged, courts "should rely" upon "evidence submitted by the parties as to the rates they typically charge." *Tatum v. City of New York*, No. 06-cv-4290, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010) (citing *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).  Subject to the Court's discretion, current rather than historic hourly rates of counsel at-issue typically are applied to reflect the protracted nature of complex cases.  *Id.* at *4 (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

Other elements warrant consideration in connection with Plaintiffs' instant Application.  First, in evaluating fee requests, *Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), instructs that courts should consider, *inter alia*, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself." *Id.* at 184.  As demonstrated in the attached firm and attorney biographies (Exhibits E - G), Plaintiffs' counsel in these cases bring unique resources and experience to this groundbreaking, expansive multidistrict litigation, demonstrating vast experience in complex international, commercial, banking, mass tort and terrorist financing/human rights litigation.  Those factors, combined with the volume of resources required for firms (particularly in a contingent litigation) to collect, manage, and use massive volumes of foreign language documents, as well as be positioned to coordinate and attend

domestic and possibly overseas depositions, all render it clear that a reasonable client would have selected counsel with the essential resources to do so.  Moreover, in this litigation, the discovery aspects have proven to be particularly more complex than in most cases (*see, e.g.*, ECF No. 2730, at 1[6]; ECF No. 2789, at 1[7]; Transcript of Dec. 20, 2013 hearing at 41, lines 1-2 (Exhibit H)[8]; Transcript of Feb. 15, 2012 hearing at 4, lines 12-17 (Exhibit I)[9]; Transcript of June 23, 2011 hearing at 23, lines 11-16 (Exhibit J)[10]).  Indeed, the Rule 37 relief reflected in the Court's July 8, 2016 bench decision and the Court's February 15, 2017 Order is the product of over a half decade of litigation for discovery and sanctions against a single defendant in the MDL proceedings, involving reams of pages of briefing.  Similarly, the Court's October 28, 2013 Order (ECF No. 2730), imposing sanctions on AHIF and Jelaidan for similar discovery violations, reflected nearly a decade of discovery litigation, including, literally, hundreds of pages of briefing, declarations, and exhibits addressing a multitude of unique issues.

Here, the hourly rates of the various attorneys involved in the various proceedings are reasonable as reinforced by various authorities.  These rates, which are the same as the prevailing rates that counsel would demand of fee-paying clients, fit squarely within the norm of reasonable fees for lawyers of comparable experience, skill, and reputation handling complex litigation in

---

[6] In its Memorandum Decision and Order, the Court characterizes the case as having a "complex and sprawling procedural history," with "no shortages of disputes regarding discovery."

[7] In its Memorandum Decision and Report and Recommendation, the Court characterizes the litigation as "expansive multidistrict litigation."

[8] In a discussion about setting deadlines in the litigation, Judge Maas "recognize[s] it's a case with considerable complexity."

[9] Describing the complexity of the discovery issues in the litigation, Judge Maas states: "I find that a lot of the discovery issues in this case are a little like pushing on one part of a pillow, only to watch it rise somewhere else. And I am not necessarily being critical of either side in terms of saying that.  I just think it's probably the nature of the enterprise we're all engaged in."

[10] Commenting on the uniqueness of the skill sets required in discovery in this multidistrict litigation, Mr. Carter explained:  "There's a whole group of people who need to be used to analyze this information.  The analysis of information in this case requires a rather unique set of skills.  It's not really translating; it's having substantive knowledge regarding particular activities [and] particular individuals and networks."

the Southern and Eastern Districts of New York.  *See, e.g.*, *U.S. Bank N.A. v. Dexia Real Estate Capital Mkts.*, 12 Civ. 9412 (PAE), 2016 U.S. Dist. LEXIS 165268, at *26-27 (S.D.N.Y. Nov. 30, 2016) (finding billing rates exceeding $1,000 to be reasonable and no longer uncommon); *Themis Capital v. Democratic Republic of Congo,* 09 Civ. 1652 (PAE), 2014 U.S. Dist. LEXIS 124208, at *21 (S.D.N.Y. Sept. 4, 2014) (in 2014, finding billing rates of $871.04 and $742.84 to be reasonable); *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 12cv275 (DLC), 2015 U.S. Dist. LEXIS 49477, *5-6 (S.D.N.Y. Apr. 15, 2015) (in 2015, noting support for billing rates as high as $942 per hour and finding proposed rates of $836, $631 and $541 reasonable);  Sara Randazzo and Jacqueline Palank, "Legal Fees Cross New Mark: $1,500 an Hour," The Wall Street Journal, Sec. A, page 1, Feb. 9, 2016; Mike Mintz, "New Report Finds Law Firm Hourly Billing Rates Continuing to Rise," Martindale-Hubbell, May 9, 2012 (Exhibit K) ("New York City firms raised their attorney billing rates on average 12 percent in the past few years, the second highest change in rates among lawyers in various U.S. cities . . .. The median billing rate for 2,020 partners in New York City in 2011 was $756 per hour.  The top 25% of those partners' rates was almost $1,000 per hour."); Karen Sloan, The National Law Journal, NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore (Jan. 13, 2014), http://www.nationallawjournal.com/ id=1202637587261?slreturn= 20140023124124# (Exhibit L) (Indicating that nearly 20 percent of the firms surveyed had at least one partner charging more than $1000 per hour, with a median among the high partner billing rates of the surveyed firms being $775 an hour); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., Co.* 09 Civ. 8665 (JGK)(FM), 2010 U.S. Dist LEXIS 138873, at *8, *10 (S.D.N.Y. Dec. 6, 2010) (in 2010, finding reasonable a $750 hourly rate for a partner practicing for over twenty years, which was voluntarily discounted by ten percent, and noting that the 2009 AIPLA Report showed that seventy-fifth percentile of the attorneys surveyed billed $700 per hour); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (in 2010, awarding an hourly

rate of $600 to two senior lawyers following settlement of class action); *Ceglia v. Zuckerberg,* No. 10-CV-00569(F), 2012 U.S. Dist. LEXIS 18438, at *13 (W.D.N.Y. Feb. 14, 2012) (in 2012, identifying standard rates for SDNY attorneys of $955, $825, $670, and $450); *Steinberg v. Nationwide Mut. Ins. Co.,* 612 F. Supp. 2d 219, 222 (E.D.N.Y. 2009) (in 2009, class action fraud case awarding hourly rates for senior counsel as high as $790 and for associates as high as $500).

The comparable current prevailing market rates for Plaintiffs' counsel seeking fees with this Application are as follows (the billing rates for each attorney as set within their respective firms and the rates imposed by the Court in the 2015 order awarding fees against Al Haramain and Wa'el Jelaidan are both identified here):

| **Motley Rice** | **Title/Law School Grad. Year** | **Firm Rate** | **Rate per ECF 3087** |
|---|---|---|---|
| Robert T. Haefele | Associate/PEC member & Co-liaison counsel/1989 | $750 | $450 |
| John M. Eubanks | Associate/2003 | $725 | $350 |
| Brian Frutig | Former associate/2008 | $400 | $350 |
| | | | |
| **Cozen O'Connor** | **Title/Law School Grad. Year** | **Firm Rate** | **Rate per ECF 3087** |
| Sean P. Carter | Bd. Member/PEC co-chair/1996 | $750 | $500 |
| J. Scott Tarbutton | Member/PEC member & Co-liaison counsel/2001 | $600 | $400 |
| | | | |
| **Anderson Kill** | **Title/Law School Grad. Year** | **Firm Rate** | **Rate per ECF 3087** |
| Jerry S. Goldman | Shareholder/PEC member/1976 | $825 | $600 |
| Rene F. Hertzog | Former associate/2007 | $475 | $375 |
| Bruce Strong | Associate/2013 | $425 | Not set |

Bearing in mind the body of case law, the complexity of the litigation, Plaintiffs' counsels' experience, and rates of comparable counsel, the Plaintiffs contend that the rates set by the attorneys' respective firms are the presumptively reasonable rates that may be applied.

### C. Although entitled to comparable in-forum rates consistent with Second Circuit precedent, Plaintiffs agree (without prejudice) to application of the rates applied by Judge Maas in ECF # 3087.

Notwithstanding Plaintiffs' assertion that the rates set by each of the firms for the respective lawyers are comparable rates for the jurisdiction whose application would yield fare results, for the purpose of this fee application, without prejudice, and to reduce the areas of

dispute for the Court to consider, Plaintiffs would agree to application of the attorney rates that Magistrate Judge Maas applied in his October 2015 Order at ECF No. 3087 (as indicated in the preceding chart). Although the parties met and conferred to discuss whether the parties might agree to apply the rates used in ECF No. 3087 rather than offering arguments to apply higher or lower rates, ultimately Mr. Sedaghaty simply argued that Plaintiffs should argue for application of those rates, but would not agree that Mr. Sedaghaty would not argue for lower rates. Plaintiffs believe the weight of case law favors the more current higher rates set forth above, as currently applied by each of the firms, but will agree to accept application of the lower rates applied by Magistrate Judge Maas (without prejudice) to eliminate an argument that the Court would need to address here. However, Plaintiffs respectfully submit that any argument seeking to lower those fees previously determined by Magistrate Judge Maas even further should be dismissed out of hand by this Court.

> **D.      This Application is limited to work directly related to the efforts to compel Sedaghaty to comply with his basic discovery obligations.**

To determine the presumptive reasonable fee, in addition to confirming reasonable rates for counsel, the Court must determine the number of "hours reasonably expended." "Hours reasonably expended are those actually expended by counsel minus 'excessive, redundant, or otherwise unnecessary' hours." *Arbor Hill*, 522 F.3d at 189-90.

Here, Plaintiffs are asking for the fees and expenses limited to work undertaken to show Sedaghaty's non-compliance with applicable discovery obligations, and to make the factual and legal showings necessary to obtain a series of orders from the Court directing compliance on his part. Those efforts necessarily encompassed factual and evidentiary investigations to show Sedaghaty's access to, and custody and control over, relevant records that had not been produced, as well as time invested in researching, drafting, editing, and finalizing seven separate

pleadings, to draft and address to two separate pleadings in the Second Circuit, and to preparing for and appearing at three court hearings.

The seven separate pleadings include: (1) Plaintiffs' February 4, 2011 opposition to Sedaghaty's motion to stay discovery (ECF No. 2405); (2) Plaintiffs' June 17, 2011 motion to compel Sedaghaty (ECF No. 2486); (3) Plaintiffs' July 6, 2011 brief in further support of Plaintiffs motion to compel Sedaghaty (ECF No. 2489); (4) Plaintiffs' December 20, 2011 opposition (ECF No. 2504) to Sedaghaty's Rule 72 objections (ECF No. 2495) to the Court's November 22, 2011 Ruling; (5) Plaintiffs' August 10, 2015 motion for sanctions and accompanying declaration with exhibits (ECF Nos. 2991); (6) Plaintiffs' November 6, 2015 reply and accompanying declaration with exhibits (ECF Nos. 3110) in further support of the motion for sanctions; and (7) Plaintiffs' September 6, 2016 additional response in support of its request for imposition of sanctions (ECF No. 3339).

Sedaghaty's efforts included two Second Circuit proceedings -- a failed Mandamus petition and a failed application for emergent stay – which both required Plaintiffs to attend to those proceedings.  But only one of the two necessitated Plaintiffs drafting a response because the appellate court ultimately rejected Sedaghaty's application before Plaintiffs filed their brief.

Sedaghaty's actions have also necessitated Plaintiffs' preparation, travel, and appearance to argue the various motions during hearings on November 16, 2011, December 14, 2011, and July 8, 2016.

In accordance with the July 8, 2016 bench decision and February 15, 2017 memorandum and order, and prior precedent, the amount of presumptively reasonable fees Plaintiffs seek from Sedaghaty, as evidenced and detailed in the Declarations of Robert T. Haefele, Jerry S. Goldman, and J. Scott Tarbutton and supporting documentation (*see* Exhibit C), totals $131,163.79 if the Court opted to apply the rates that the firms currently ordinarily apply to the time for each of

the attorneys, or $83,284.93 if the Court opts to apply the rates previously applied by Judge Maas in his October 2015 order.[11]

### E.    Plaintiffs are entitled to recoup reasonable costs and expenses in connection with the above pleadings and hearings.

The Court already ruled that Plaintiffs should not have to bear the costs of defendants' conduct, and are entitled to reimbursement of expenses.  This includes those "reasonable costs that are ordinarily charged to clients in the legal marketplace." *Anderson v. City of New York*, 132 F.Supp.2d 239, 245 (S.D.N.Y. 2001).   Attorney's fees awards themselves "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients," such as those "incidental and necessary to the representation." *U.S. Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989); *Tatum*, 2010 WL 334975, at *40.  The range of costs particularly pertinent to the pleadings and hearings listed in the Application include such reimbursable items as airfare, train fare, travel lodging, and parking, all associated with travel for hearings, as well as transcript fees and postal fees associated with providing the Court and opposing counsel hard copies of the various associated pleadings and exhibits.

In accordance with the July 8, 2016 bench decision and February 15, 2017 memorandum and order, and prior precedent, the amount of expenses Plaintiffs seek, as evidenced and detailed in the Declarations of Robert T. Haefele, Jerry S. Goldman, and J. Scott Tarbutton and supporting documentation (*see* Exhibits C), and as voluntarily reduced as shown in Exhibit C, totals $1,985.65.

### F.    Plaintiffs are entitled to a reasonable fee for preparation of the Fee Application.

---

[11] The billing rate for attorney Bruce Strong is the currently ordinary billing rate applied by Anderson Kill.  A modified rate was not established for Mr. Strong by Judge Maas in his October 2015 order.

A party awarded attorney's fees is also entitled to compensation "for time reasonably spent in preparing and defending" the fee application. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999). Accordingly, as evidenced and detailed in the Declaration of Robert T. Haefele and supporting documentation (*see* Exhibit D), the amount of presumptively reasonable fees Plaintiffs are entitled to from Sedaghaty, totals $41,367.50 if the Court opted to apply the rates that the firms currently ordinarily apply to the time for each of the attorneys, or $27,267.50 if the Court opts to apply the rates previously applied by Judge Maas in his October 2015 order.[12]

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant this Fee Application and order Perouz Sedaghaty to pay Plaintiffs the attorneys' fees and costs and expenses incurred and requested herein, as identified in the supporting declarations and the exhibits and supporting documentation attached thereto, as well as any amounts and any other relief the Court orders within its discretion.

Dated:  March 28, 2017                    By:  _____

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000
Fax:  (843) 216-9450

Attorneys for *Burnett and Euro Brokers*
Plaintiffs and Plaintiffs' Executive
Committees

---

[12] The billing rate for attorney Bruce Strong is the currently ordinary billing rate applied by Anderson Kill.  A modified rate was not established for Mr. Strong by Judge Maas in his October 2015 order.

_____

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel:  (215) 665-2000
Fax:  (215) 665-2013

On Behalf of the *Federal Insurance* Plaintiffs
and Plaintiffs' Executive Committees


_____

Jerry Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000
Fax:  (212) 278-1733

On Behalf of the *O'Neill* Plaintiffs and
Plaintiffs' Executive Committees