# Exhibit B

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___ 2/15/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-1570 (GBD)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

The Plaintiffs' Executive Committees, on behalf of all plaintiffs in this multidistrict litigation, move for sanctions against defendant Perouz Sedaghaty pursuant to Federal Rule of Civil Procedure 37(a) and (b). They allege a continuing and intentional failure to comply with Plaintiffs' discovery requests and orders by the Honorable Frank Maas compelling production of documents. Plaintiffs seek a conditional default against Sedaghaty unless he complies with the discovery orders outstanding in this case by a date certain, an order of preclusion preventing Sedaghaty from introducing any evidence subject to Plaintiffs' discovery requests at trial, an instruction permitting the jury to draw an adverse inference from Sedaghaty's failure to comply with discovery and prolonged invocation of his Fifth Amendment privilege against self-incrimination, and fees and expenses.

Most of these requests were either granted or denied by Judge Maas at a July 8, 2016 hearing. At that hearing, Judge Maas granted a preclusion order (ECF No. 3320 at 9, 11, 16) and denied plaintiffs' request for a conditional default judgment. Id. at 17. Judge Maas also indicated that he would entertain an application for costs related to this discovery motion. Id. The Court explicitly adopts and reaffirms these rulings. Accordingly, the Court shall enter an order of preclusion and award reasonable fees and costs to Plaintiffs upon an appropriate application, and denies Plaintiffs' request for a conditional default.

Judge Maas, however, deferred ruling on Plaintiffs' request for an adverse inference instruction pending further briefing. Id. After due consideration of this briefing, the Court DENIES the request for an adverse inference instruction without prejudice to its refiling if and when Plaintiffs present sufficient evidence to demonstrate the relevance of the withheld documents to their claims in the current litigation.

## BACKGROUND

Perouz Sedaghaty was the Secretary and alleged founder of the Al-Harimain Islamic Foundation-USA ("Al Harimain-USA"), an Oregon-based foundation that was classified by the Treasury as an organization linked to support for terrorism and a co-defendant in this case. As detailed in Judge Maas's November 22, 2011 Order (ECF No. 2491), in 2005, Sedaghaty was indicted and charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371, and abetting the filing of a false federal tax return in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2. The indictment alleged that Sedaghaty had participated in a scheme to transport approximately $200,000 in traveler's checks to Saudi Arabia without properly declaring them, with the ultimate goal of financing Chechen separatists in the Russian Federation. ECF No. 2491 at 2. It was further alleged that Sedaghaty had falsely claimed that the check used to purchase the traveler's checks was used to purchase a building in Springfield, Missouri, leading Al Harimain-USA's accountant to understate its charitable contributions and overstate its real estate holdings on a 2000 federal tax return. Id. at 3. Sedaghaty was convicted by a jury on September 9, 2010, and sentenced to a 33-month term of imprisonment in 2011. Sedaghaty appealed the conviction to the Court of Appeals for the Ninth Circuit.

In December 2010, shortly after the jury verdict, Plaintiffs served Sedaghaty with their First Set of Requests for the Production of Documents ("First Document Demands"). The subject

matter of many of the documents that the Plaintiffs sought overlapped with what was at issue in the Oregon case, including, *inter alia*, Sedaghaty's involvement with Al Harimain-USA and the Quran Foundation, a charity located at the same address, Sedaghaty and Al Harimain-USA's financial activities, and U.S. and foreign investigations of Al Harimain-USA. Rather than responding to the First Document Demands, on January 21, 2011, Sedaghaty filed a motion to stay discovery pending the disposition of his criminal appeal. ECF No. 2403. The Plaintiffs, in turn, sought to compel him to respond to their First Document Demands. ECF No. 2486.

On November 22, 2011, Judge Maas denied Sedaghaty's request for a stay and granted the Plaintiffs' application to compel, noting that "discovery in this case is unlikely to implicate Sedaghaty's Fifth Amendment rights." ECF No. 2491 at 11. Judge Maas further observed that Sedaghaty had been tried on tax charges in Oregon, and that his "misdeeds . . . [were not] inextricably interrelated to the events that gave rise to the terrorist attacks of September 11, 2011." Id. at 10. Sedaghaty was given until January 20, 2012, to produce documents responsive to the First Document Demands. ECF No. 2501. On January 11, 2012, Judge Daniels overruled Sedaghaty's objections to Judge Maas's Order. ECF No. 2529.[1]

On January 20, 2012, Sedaghaty responded to the First Document Demands by stating separately for each request: "Sedaghaty respectfully declines to respond on the grounds that the answer may tend to incriminate him." ECF No. 2991-1. On July 31, 2012, Plaintiffs served supplementary document demands on Sedaghaty ("Supplemental Document Demands"); on September 4, 2012, Sedaghaty responded in identical fashion. ECF No. 2991-2.

---

[1] Sedaghaty also challenged the discovery orders via a petition for writ of mandamus to the Court of Appeals for the Second Circuit. On January 12, 2012, the Court of Appeals denied Sedaghaty's request for a stay, ECF No. 2532, and denied the mandamus petition on March 28, 2012. ECF No. 30, Dkt. 11-5371 (2d Cir. 2012).

On August 23, 2013, the Court of Appeals for the Ninth Circuit vacated Sedaghaty's criminal conviction. United States v. Sedaghaty, 728 F.3d 885 (9th Cir. 2013). The court found that the government made a number of errors while prosecuting Sedaghaty, "which resulted in admitting evidence illegally seized while denying [Sedaghaty] both material impeachment evidence and potentially exculpatory evidence." Id. at 892. The court noted with concern that "[t]his [was] a tax fraud case that was transformed into a trial on terrorism," given that the District Court ultimately found that "there has been a failure to prove the terrorist enhancement . . . [a] failure to prove a link between the defendant and the money being used for terrorist activities." Id. at 891, 899 n.8. On July 28, 2014, the government dismissed the case against Sedaghaty, provided that Al Harimain-USA "fufill[] all the terms and conditions of its [plea] agreement with the [government]," which apparently included a plea of guilty to one count of filing a false tax return. ECF No. 3110-3.

Despite the vacatur of his conviction and the dismissal of all charges against him, Sedaghaty failed to amend his discovery responses or produce any documents. In response, Plaintiffs filed this motion for sanctions on August 10, 2015. ECF No. 2991. Sedaghaty opposed the motion, arguing primarily that he had no responsive documents beyond those that were already produced by Al Harimain-USA. These documents included (a) a 2004 production of 4,153 pages of documents that Sedaghaty had provided to his counsel in 2003 before going overseas and other documents received from co-defendant Soliman Al-Buthe; (b) a 2013 production of approximately 43,700 pages of documents seized from Al Harimain-USA by the U.S. Government in February 2004 and subsequently returned; (c) approximately 8,700 pages of

4

documents produced to the grand jury and subsequently released; (d) 1,400 pages of trial exhibits; and (e) 24,000 emails from Al Harimain-USA computers. ECF No. 3054 at 2.[2]

At a July 8, 2016 hearing before Judge Maas, Sedaghaty's counsel clarified that he was not asserting a Fifth Amendment defense since the date his conviction was vacated in August 2013, though apparently this had never been communicated to Plaintiffs or reflected in his responses to the discovery demands, and alleged that he had no non-privileged responsive documents in his possession. ECF No. 3320 at 9. During this hearing, Judge Maas granted Plaintiffs a preclusion order and reasonable costs and fees, denied their request for a conditional default, and deferred ruling on the request for an adverse inference instruction pending further briefing.

## ANALYSIS

**I.      Legal Standard for Imposing Sanctions**

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a "wide range of sanctions for . . . discovery abuses." Mali v. Federal Ins. Co., 720 F.3d 387, 392 (2d Cir. 2013). These include, but are not limited to: "orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." Linde v. Arab Bank, PLC, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 101 (2d Cir. 2002)).

---

[2] Al Harimain-USA was, however, ordered by Judge Maas to pay Plaintiffs' attorneys fees and costs for their unreasonable delay in making the necessary application to the U.S. District Court for the District of Oregon to make this production. ECF No. 2789.

5

When sanctions are sought based upon a party's failure to produce documents, the party moving for sanctions must demonstrate that: (a) the opposing party had an obligation to make timely disclosure of the requested materials; (b) the opposing party acted with a "culpable state of mind"; and (c) the missing evidence is "relevant" to the moving party's claim or defense. In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) ("Coverage Cases") (quoting Residential Funding, 306 F.3d at 107). To satisfy the first element, there must be proof that either the non-disclosing party was obligated by Rule 26 or a court order to produce the materials, Coverage Cases, 243 F.R.D. at 125, or, in cases involving spoliation of evidence, the party was on "notice that the evidence [was] relevant to litigation or . . . should have known that the evidence [might] be relevant to future litigation," Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001). The second element of culpability may be satisfied if the non-disclosing party is shown to have breached a discovery obligation or destroyed evidence through bad faith, gross negligence, or even ordinary negligence. Residential Funding, 306 F.3d at 113. Finally, with respect to the third element, the party moving for sanctions must identify at least "some evidence" that suggests that items "relevant to substantiating its claim would have been included among the withheld or destroyed files." Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998). Evidence that the non-disclosing party acted in bad faith may sometimes be sufficient to infer that the missing evidence is "relevant," and even a showing of gross negligence is "frequently" enough. Residential Funding, 306 F.3d at 109. In all other circumstances, however, the party moving for sanctions "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the [moving] party." Id. (internal quotation marks and brackets omitted).

6

The courts have "broad discretion in fashioning an appropriate sanction" for the non-production of evidence. Id. at 107. In determining the proper sanction to impose, a court may consider "(a) the willfulness of the non-compliant party or the reason for noncompliance; (b) the efficacy of lesser sanctions; (c) the duration of the period of noncompliance[;] and (d) whether the non-compliant party had been warned of the consequences of noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (quotation marks and ellipses omitted). "[T]hese factors are not exclusive, and they need not each be resolved against the party challenging . . . sanctions." S. New England Tel. Co. v. Global NAPs, Inc., 624 F.3d 123, 144 (2d Cir. 2010). The overriding consideration therefore is whether the "severity of [the] sanction" is "commensurate with the non-compliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).

## II. Application to Sedaghaty

The record makes clear that Sedaghaty's conduct in discovery has been far from exemplary. In his initial responses to the Plaintiffs' two sets of document demands, his blanket invocation of the Fifth Amendment privilege against self-incrimination was likely abusive. As Plaintiffs correctly argue, there are at the very least certain categories of documents responsive to their demands that would not properly be covered by the Fifth Amendment privilege. First, "an individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." Bellis v. United States, 417 U.S. 85, 88 (1974). Therefore, though Sedaghaty might have objected to producing Al Harimain-USA documents on the grounds that, for example, they were unavailable to him due to circumstances relating to his criminal trial, his blanket invocation of the Fifth Amendment to prevent the production of such

7

documents was plainly improper. Moreover, Sedaghaty failed to provide a privilege log identifying the documents he has withheld, thereby depriving Plaintiffs of any opportunity to evaluate his Fifth Amendment objections. Finally, all of this conduct occurred in the face of Judge Maas's November 22, 2011 Order denying a stay of discovery and his subsequent Order compelling Sedaghaty to produce documents by January 20, 2012, which were affirmed by Judge Daniels and left undisturbed by the Court of Appeals.

Beyond this, Sedaghaty made no efforts to comply with discovery, or, apparently, to inform Plaintiffs' counsel that he was withdrawing his Fifth Amendment objections, after his conviction was vacated in August 2013 or since the time that he entered a plea agreement with the government in July 2014. While he has made a blanket statement that all responsive documents were produced by Al Harimain-USA, plaintiffs rightly note that Sedaghaty has failed to indicate <u>which</u> documents produced by Al Harimain-USA correspond to each of Plaintiffs' document requests. Plaintiffs reference several specific requests, including documents regarding Sedaghaty's personal bank accounts in the U.S. and abroad (Reqs. 11, 12), investigations/audits of Sedaghaty's personal accounts (Req. 16), his travels outside the United States (Reqs. 42, 43), his personal communications and interactions with other defendants (Reqs. 20, 34, 38, 43, 82), and Al Harimain-USA's designation as a Specially Designated Global Terrorist (Reqs. 24, 29), that are likely to be in Sedaghaty's personal possession and control, as opposed to that of Al Harimain-USA.

### A. Preclusion Order

Given Sedaghaty's lack of production, Plaintiffs seek an order precluding Sedaghaty from introducing at trial any document that would have been subject to their document requests. As a question of basic fairness, Sedaghaty cannot take advantage of his failure to provide

8

documents in discovery at trial for any reason. As such, in accordance with Judge Maas's July 8, 2016 Order, Plaintiffs' request is GRANTED, and the Court orders that Sedaghaty be precluded from introducing any documents or evidence arguably responsive to Plaintiffs' document requests that he has not produced in discovery.

### B. Conditional Default

Plaintiffs also seek the drastic sanction of defaulting Sedaghaty if he fails to come into compliance with his discovery obligations within a time certain. This relief is DENIED. As Judge Maas noted in the July 8, 2016 hearing, conditioning a default judgment on the production of documents in a short period of time is not the proper response to a defendant's claim that no responsive documents exist, and "simply defaulting the defendant entirely . . . is not warranted on the facts of this case." ECF No. 3320 at 17.

### C. Fees and Costs

At the July 8, 2016 hearing, Judge Maas indicated that "there is also an application for costs and I'll entertain such an application related to this discovery motion." ECF No. 3320 at 17. In line with this Order, the Court GRANTS Plaintiffs' request for reasonable fees and costs relating to this discovery motion, and invites them to submit an application to the Court by March 15, 2017. The parties should meet and confer before this date to determine whether they can reach a stipulated agreement on a sum before seeking Court intervention.

### D. Adverse Inference

An adverse inference is an equitable device that serves the remedial purpose, "insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence," or failure to produce evidence, by the opposing party. Kronisch. 150 F.3d at 126. A party seeking an adverse inference instruction must demonstrate

9

(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Residential Funding, 306 F.3d at 107.

The question of whether, as Plaintiffs contend, an adverse inference instruction should be given to the jury involves a slightly different question than the other relief requested, as it concerns only the period during which Sedaghaty was relying on his Fifth Amendment privilege against self-incrimination to avoid the production of documents. The calculation of this period is somewhat difficult, however, because, though Sedaghty's counsel affirmed at the July 8, 2016 hearing that Sedaghaty had waived his Fifth Amendment privilege as of 2013, he never amended his discovery filings to reflect this, nor did he inform the Court or the Plaintiffs in any other way that he was doing so.

The Court does not look kindly as to this behavior, which is likely strategic, and finds that it satisfies the "culpable state of mind" requirement for the imposition of an adverse inference sanction. This is not, however, sufficient for the imposition of the sanction because Plaintiffs must also demonstrate that the missing evidence is "relevant" to their claim. Severe sanctions like adverse inferences cannot be awarded absent some showing that the missing evidence would, in fact, have been harmful to the non-moving party. Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 439 (S.D.N.Y. 2010) ("It is not sufficient for the moving party merely to point to the fact that the opposing party has failed to produce requested information."); Great N. Ins. Co. v. Power Cooling, Inc., No. 06-CV-874 (ERK)(KAM), 2007 WL 2687666 at *12 (E.D.N.Y. Sept. 10, 2007) (denying adverse inference where "defendant has not offered any such evidence").

Under certain circumstances, "a showing of gross negligence in the destruction or untimely production of evidence" will support an inference of relevance standing alone. Orbit One Commc'ns, 271 F.R.D. at 439 (citing Residential Funding, 306 F.3d at 109). The conduct, however, must be particularly egregious. Compare Toussie v. County of Suffolk, No. 01-CV-6716, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007) (declining to award adverse inference even though defendant failed to implement litigation hold and delayed litigation through "foot dragging") with Cordius Trust v. Kummerfeld, No. 99-CV-3200, 2008 WL 113664, at *4 (S.D.N.Y. Jan. 11, 2008) (defendant's "long-term and purposeful evasion of discovery requests," standing alone, was sufficient to support a finding of relevance for purpose of imposing sanctions). Absent a finding based on Sedaghaty's conduct alone, Plaintiffs must affirmatively "produce[] some evidence suggesting that a document or documents relevant to substantiating [their] claim would have been included among the [unproduced evidence]." Kronisch, 150 F.3d at 128.

The Court declines to infer the relevance of the allegedly missing documents from the mere fact of Sedaghaty's invocation of the Fifth Amendment, notwithstanding his strategic (or grossly negligent) behavior in failing to timely withdraw the objection after the vacatur of his conviction. While it could conceivably be inferred that Sedaghaty invoked the Fifth Amendment because the production of documents would have incriminated him in this case as a material supporter of Al-Qaeda and/or the attacks on September 11, 2001, it is far more plausible that Sedaghaty did not want to prejudice his unrelated criminal proceeding in Oregon. As Judge Maas noted in denying Sedaghaty's motion to stay discovery, "[a]lthough there concededly is some overlap of legal and factual issues in the criminal and civil actions, the overlap is far from complete." Though Sedaghaty was convicted of two tax-related offenses, "[n]either of these

11

misdeeds . . . is inextricably interrelated to the events that gave rise to the terrorist attacks of September 11, 2011." ECF No. 2491 at 10. Indeed, on a full record including all the documents seized from Al Harimain-USA by the government, the district court in which Sedaghaty was convicted found that the prosecution "fail[ed] to prove a link between the defendant and the money being used for terrorist activities" and accordingly declined to impose an available terrorism sentencing enhancement. Sedaghaty, 728 F.3d at 889 n.8.

Given Sedaghaty's plausible reasons for invoking the Fifth Amendment relating to a case whose factual predicate was only tangentially related to this multidistrict litigation, Plaintiffs would have to demonstrate the relevance of the documents that Sedaghaty did not produce through extrinsic evidence. Though "the burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous," Chan v. Triple 8 Palace, Inc., No. 03-CV-6048 (GEL)(JCF), 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005), in this case, Plaintiffs have presented virtually no extrinsic evidence of relevance. While Plaintiffs claim that "the existence of evidence against Mr. Sedaghaty is underscored by the government's 0successful conviction of him," ECF No. 3339 at 5, the Court of Appeals for the Ninth Circuit explicitly cautioned *against* drawing such conclusions in his tax case. Sedaghaty, 728 F.3d at 917–18 ("It suffices to say that the charge here relates to a false tax return filed on behalf of a tax-exempt organization, and does not allege material support to terrorism. We are confident that the district court will recognize the fine line separating necessary and probative evidence of willful falsity from evidence that would cast [Sedaghaty] in the role of a terrorist based on appeals to fear and guilt by association and thereby unduly prejudice the proceedings.").

Plaintiffs also argue that certain unspecified evidence, including dimmed memory on the part of Sedaghaty himself, must have been lost in the more than five years that have passed since

12

they served the First Document Demands on Sedaghaty, and that they have been prejudiced by such loss. ECF No. 3339 at 4. While this may serve as a viable basis to impose a sanction of costs and fees on Sedaghaty, the fact that Plaintiffs may have been prejudiced by the delay is not a sufficient basis to determine that relevant, adverse documents or testimony (or, in fact, *any* documents or testimony, relevant or otherwise) have been lost or spoliated.

Finally, Plaintiffs argue that "the proper time to assess the evidence is when the adverse inference is sought to be applied at trial, not at the time the court is sanctioning the defendant . . . in the course of ongoing discovery." ECF No. 3339 at 5. They provide no case law supporting this proposition, and it is contrary to a plain reading of Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002), as well as the district court cases applying its standard, which indicate that relevance must be considered at the time the motion for sanctions is decided.

Accordingly, Plaintiffs' motion for an adverse inference sanction is DENIED WITHOUT PREJUDICE to its renewal with an appropriate evidentiary basis demonstrating the relevance of the documents not produced.

## CONCLUSION

Plaintiffs' motion for sanctions is GRANTED in part. Plaintiffs' request for an order precluding Sedaghaty from introducing any documents or evidence arguably responsive to Plaintiffs' document requests that he has not produced in discovery is GRANTED. Plaintiffs' application for reasonable costs and fees is GRANTED, and Plaintiffs are instructed to submit a fee application by March 15, 2017. Plaintiffs' request for a conditional default is DENIED and their request for an adverse inference instruction is DENIED WITHOUT PREJUDICE.

**SO ORDERED.**

DATED: New York, New York
February 15, 2017

_____
SARAH NETBURN
United States Magistrate Judge

13