UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD/SN) |

This document relates to:   *All actions*

**DECLARATION OF JERRY S. GOLDMAN IN SUPPORT OF FEE APPLICATION RELATING TO PEROUZ SEDAGHATY**

  I, Jerry S. Goldman, Esquire, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

**Introduction**

  1. My name is Jerry S. Goldman and I have been a practicing attorney in the State of New York since 1977. I am presently a shareholder of the law firm of Anderson Kill P.C. I am lead counsel for the Plaintiffs in the *O'Neill* litigations, and I am a member of the Plaintiffs' Executive Committee for the Personal Injury and Death Claims which operates with the Plaintiffs Executive Committee for Property Claims (collectively, "PECs"). As such, I am fully familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents referenced herein.

  2. I submit this declaration in further support of Plaintiffs' Counsel's Application for Attorneys' Fees and Expenses on Behalf of all Plaintiffs' Counsel,[1] dated March 28, 2017, submitted by Robert T. Haefele, an attorney with Motley Rice who serves on the Plaintiffs Executive Committees, ("Fee Application") pursuant to an

---

[1] Plaintiffs' counsel identified herein are lawyers at four (4) law firms representing plaintiffs – namely, Motley Rice, LLC, Cozen O'Connor, P.C., Kreindler & Kreindler, LLP, and Anderson Kill P.C.

1

nydocs1-1083655.3

Opinion and Order of the Hon. Sarah Netburn, dated February 15, 2017, 03-MDL-1570-GBD-SN, ECF No. 3447 pertaining to Perouz Sedaghaty ("Fee Order"). *See* statement of Hon. Frank Maas on July 8, 2016. ECF No. 3320 at 17. The Fee Order stated that "the Court GRANTS Plaintiffs' request for reasonable fees and costs relating to this discovery motion, and invites them to submit an application to the Court by March 15, 2017. The parties should meet and confer before this date to determine whether they can reach a stipulated agreement on a sum before seeking Court intervention." Fee Order, ECF No. 3447 at 9, 13. The Court later extended the time to submit a fee application to March 28, 2017. *See* ECF No. 3460.

3. On March 28, 2017, Robert T. Haefele, Esquire, an attorney with Motley Rice who serves on the Plaintiffs Executive Committees, filed a declaration along with a memorandum of law and exhibits on behalf of all of plaintiffs, in support of the Fee Application. In the Fee Application, Anderson Kill seeks (1) compensation for 29.5 hours of professional time, and $202.05 for disbursements in connection with the discovery dispute and (2) 20.6 hours of professional time with regard to the preparation of this fee application, through March 27, 2017.

4. I am tendering the instant declaration with exhibits in support of the Fee Application pursuant to the Fee Order. I am further incorporating herein, as if set forth at length, all affidavits, declarations and exhibits tendered, on behalf of all plaintiffs' counsel in support of the relief sought in the Fee Application.

**Anderson Kill:  Background**

      5.      I am a graduate of New York University (University College, BA with Honors in Politics, 1973), Boston University School of Law (JD, 1976) and the Temple University School of Law (graduate program, LLM, Taxation, 1983).[2]

      6.      I am admitted to practice before the courts of the State of New York (1977), the Commonwealth of Massachusetts (1977), and the Commonwealth of Pennsylvania (1983), along with a variety of federal courts, including the United States District Courts in the Southern and Eastern Districts of New York, the Eastern District of Pennsylvania, and the District of Massachusetts.  I am also admitted to practice before the United States Courts of Appeals for the Second and Third Circuits, the United States Tax Court and the United States Supreme Court.

      7.      After law school, from 1976-1982, I was an Assistant District Attorney and Senior Assistant District Attorney in the Office of the District Attorney, King's County (Brooklyn, New York), from 1976-1982, spending the last four (4) years in that office in the Economic Crime and Arson Bureau.[3]

      8.      In the course of my experience in the District Attorney's Office, I conducted and/or oversaw numerous white collar and violent crime investigations, as well as trial and appellate work.

---

[2]    A copy of my biography is attached hereto and incorporated herein as Exhibit "1" and is available at http://www.andersonkill.com/attorneysprofile.asp?id=5141.

[3]    While in law school, I clerked with another prosecutor's office located within the City of New York, with a criminal defense law firm located in New York City, and, participated in a law school clinical program, with a public defender's office in Boston, Massachusetts (Roxbury Defenders).

3

9. After I left the District Attorney's Office, from 1982-2008 I was the sole shareholder of the Law Offices of Jerry S. Goldman & Associates, P.C., a New York professional corporation, which maintained offices in New York and Philadelphia.

10. In the spring of 2008 I joined the firm of Anderson Kill P.C. ("Anderson Kill").[4]  Anderson Kill is a New York based multi-practice law firm with offices in approximately five (5) other locations across the country.[5]  I am based in Anderson Kill's New York office.[6]

11. I have tried about fifty (50) cases to verdict before juries (divided before federal and state courts) and have argued about thirty (30) appeals (mainly federal).  I have also handled numerous bench trials and arbitrations.

12. I have taught and written on a variety of topics before a variety of groups.  I am, for example, presenting, on an unrelated topic, before the Federal Bar Association's Civil Rights/Civil Liberties Committee in April and for a commercial CLE provider later this spring.

13. I am a member of the board of directors and an officer of the New York University Alumni Association; a board member (and former officer) of the Citizens Crime Commission of the Delaware Valley; and a board member of the New York City Dance Parade, Inc.  I am a member of the Federal Bar Association, and served, for

---

[4] The firm was formerly known as Anderson, Kill & Olick, P.C.

[5] Anderson Kill's other offices are located in California, Pennsylvania, New Jersey, Connecticut and Washington, D.C.

[6] While I handled the *O'Neill* litigations at my former firm from 2004-2008, the only time and expenses relevant to the Fee Application relate to time and expenses incurred at Anderson Kill.

nydocs1-1083655.3

about 25 years, on the Criminal Justice Panel for the E.D. Pa. and the Third Circuit. I am also a member of other local and specialty bar associations.

14. On March 10, 2004, the two (2) *O'Neill* putative class actions were filed in the Southern District of New York.[7] I was one of the attorneys of record when the *O'Neill* class action litigations were filed, and have remained lead counsel in all of the *O'Neill* litigations ever since. I was with the Law Offices of Jerry S. Goldman & Associates, P.C. when the class action litigations commenced; I continued as *O'Neill* lead counsel when I joined Anderson Kill in the spring of 2008.

15. The vast majority of my personal practice is in New York and I spend most of my time in Anderson Kill's New York office.

16. As to the Fee Application, three (3) Anderson Kill professionals are involved, myself, a senior associate, Bruce Strong, and a former senior associate, Rene Hertzog.

17. Ms. Hertzog was formerly an associate with Anderson Kill, but has since left this firm to enter public service. She has been a member of the bar in the State of New York since 2008, and is admitted to practice before the United States District Courts in the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Second, Sixth and Eleventh Circuits as well as the United

---

[7] The *O'Neill* litigations consist of three (3) related lawsuits which have been consolidated as part of the MDL pending before the Southern District of New York *In re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD/SN). The cases involving the instant defendant, as well as the other defendants who are engaged in discovery before this Court and involving certain sovereign defendants, both putative class actions, were always pending before this Court. The third *O'Neill* case was filed by other counsel in the District of Columbia. It was subsequently transferred to the Southern District of New York. I entered by appearance in that case, and assumed the role of lead counsel therein, sometime in 2004.

States Supreme Court. She graduated from the University of Vermont and then the Fordham University School of Law.

18. Mr. Strong is presently an associate with Anderson Kill. He has been a member of the bar of the State of New York since 2014, and has been a member of the bars of the Commonwealth of Pennsylvania and the State of New Jersey since 2013. He is admitted to practice before the United States District Courts in the Southern and Eastern Districts of New York, the District of New Jersey, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.[8] He graduated *magna cum laude* from Brandeis University and then *cum laude* from Georgetown University Law Center.

19. My current standard hourly billing rate is $825/hour. Mr. Strong's rate is $425.00/hour; Ms. Hertzog's was $475.00/hour.

20. First year associates based in Anderson Kill's New York office are billed at a rate of $295/hour. The highest billing rate in my firm is believed to be $1,050/hour.

21. We utilize a billing system based upon contemporaneous kept time and expense records. All attorneys, including the undersigned, are expected to record their time currently via a program called DTE Axiom, and then, on an at least a weekly basis "release it" into a central database which utilizes that information for billing, accounting and time management purposes. The only time the undersigned does not

---

[8] A copy of Mr. Strong's biography is attached hereto and incorporated herein as Exhibit "2" and is available at https://www.andersonkill.com/People-Details/PeopleId/69. A copy of Ms. Hertzog's biography when she was at Anderson Kill is attached hereto and incorporated herein as Exhibit "3".

enter time into the program immediately is when I am out of the office, such as in Court. In those cases, I either record the entries manually and input it into the electronic system upon my return to the office or provide the information to my assistant who can input it. Expense slips are either automatically recorded or inputted by the accounting staff.

**Anderson Kill Fee and Expenses Submission**

22. Anderson Kill represents the *O'Neill* Plaintiffs in this litigation on a contingency fee basis. As indicated above, two of the three *O'Neill* cases are putative class actions.

23. The Fee Application requests fees calculated based on the following hourly rates for Anderson Kill attorney:

    (1)    Shareholders: $825 per hour; and

    (2)    Associates: $425-475 per hour.

24. The hourly rates for the attorneys identified above are consistent with the standard billing rates assigned to these attorneys for their services in complex litigation matters. These rates are also consistent with the rates charged by attorneys with comparable experience and expertise in National firms in the New York area.

25. The hourly rates for the attorneys identified above are reasonable, as based on my personal knowledge of rates charged by other firms with attorneys of comparable experience and expertise, negotiations with clients, and discussions with other attorneys, in complex litigations such as this.

26. The undersigned caused the time and expense entries relevant to the matter in question to be extracted from Anderson Kill's databases by the accounting

staff and then forwarded the information to Robert T. Haefele, Esquire who was charged with putting together a unified submission on behalf of all of the Plaintiffs.

27.     I have verified that the information set forth in the charts accompanying the Declaration comported with the information which I had furnished to him from Anderson Kill.  Accordingly, I specifically incorporate herein by reference that factual information and that exhibit.  I have, attached hereto and incorporated herein as Exhibit "4", the pertinent portions of Exhibits C & D of his submission which I represent are true and accurate.

28.     As a matter of shorthand, I often label communications with counsel for the other PEC plaintiffs groups (i.e., non-*O'Neill* counsel*)* as meetings with PEC members, emails with PEC, telephone conference PEC, and the like, so as to distinguish it from internal communications or communications with non-PEC Plaintiffs' counsel, *O'Neill* counsel, and others.

29.     Anderson Kill's presumptively reasonable fees are based upon the firms' billing rates, which do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in the firms' billing rates.

30.     With regard to allocating time spent attending hearings that addressed multiple issues, Anderson Kill reviewed each relevant hearing transcript, determined the total number of issues that were addressed at the hearing versus the number of issues discussed in the hearing that involved Mr. Sedaghaty, and created a fraction with the number of issues in the hearing transcript devoted to Sedaghaty discovery issues in the numerator and the total number of issues discussed in the transcript in the denominator.  Anderson Kill then multiplied the hours devoted to

8

attending the hearing by this fraction to determine how much attorney time to allocate to Sedaghaty discovery issues.

31. In other circumstances, if the time notation covered matters irrelevant to the Sedaghaty matter, it was redacted and the actual time entry contained within the instant application reduced accordingly. The column entitled "Gross Hours" contains the actual amount set forth in the time entry; the column entitled "Adjusted Hours" reflects the time applicable to this particular matter.

32. The above adjustments reduces the actual 96.6 hours reflected in the time records to the 29.5 hours set forth in this Fee Application applicable to Mr. Sedaghaty.

33. Anderson Kill had limited expenses related to the Fee Application, specifically a few transcript reproduction expenses as typically, Anderson Kill orders the transcripts of the various proceedings in this case on behalf of the PECs. The allocation of these expenses is divided in the same way that attorney time was allocated.

34. In a prior fee application, counsel for the defendant objected to our transcript fee application.

35. Southern District Court Reporters ("SDR")[9] have 5 different delivery and pricing models for transcripts

    (1) *Realtime delivery*: Transcripts are instantly delivered to one's computer either in a courtroom or remotely;

    (2) *Nightly delivery:* Transcripts are delivered same day;

---

[9] SDR are the official court reporters for the United States District Court for the Southern District of New York.

    (3) *Daily delivery*: Transcripts are delivered the morning following the proceeding;

    (4) *Expedited delivery - Seven Days:* Transcripts are delivered within seven or fourteen days of order;

    (5) *Two week delivery:* Transcripts are delivered within fourteen (14) days of order; and,

    (6) *Regular delivery:* Transcripts are delivered within thirty (30) calendar days of order.  http://sdreporters.com/services.php

  36. There is a $0.66 per page difference when one orders them with a 14 day delivery schedule as compared with a standard (one month) delivery guarantee. There is an additional $0.66 per page differential when one orders them on an "expedited"" (one week) basis as opposed to a two (2) week delivery arrangement. https://sdreporters.com/secure/order.php.

  37. Most of the transcripts in this case are not particularly lengthy.

  38. I typically order them for delivery in two (2) weeks; if there are time sensitive issues (e.g., we are ordered to submit a response) I ordered them on a more expedited basis.

  39. At times, the order does not actually reach the SDR until the day after the proceedings.

  40. The PECs operate on a collaborative basis with attorneys being based in four (4) principal law firms, who, in turn, may have staff located around the country collectively working on the matters.  It is important that all of the attorneys

involved in the litigation have accurate and timely information as to what transpired in Court.

41. Often, as a result of a proceeding, follow up activities are required. This was frequently the case with regard to the transcripts which were challenged as is evident by a review of the data entries in between the various court dates.

42. It is accordingly respectfully submitted that a two week (or even a week) turn around for the transcripts is not unreasonable.

43. Magistrate Judge Maas, in relationship to the Al Haramain fee application, approved our methodology relative to transcripts, over the defendant's objection. *See* ECF No. 3073, pp. 41-42.

Executed: March 28, 2017

/s/ *Jerry S. Goldman*
Jerry S. Goldman, Esq.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 28, 2017, a copy of the foregoing was filed electronically via PACER.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

                                         /s/ *Jerry S. Goldman*
                                        Jerry S. Goldman