UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  TERRORIST ATTACKS OF
SEPTEMBER 11, 2001

                              03 MDL 1570 (GBD)


------------------------------x
                              New York, N.Y.
                              March 23, 2017
                              3:10 p.m.

Before:

                    HON. SARAH NETBURN,

                              Magistrate Judge

                    APPEARANCES

KREINDLER & KREINDLER LLP
     Attorneys for Ashton Plaintiffs
BY:  JAMES P. KREINDLER
     ANDREW J. MALONEY

COZEN O'CONNOR
     Attorneys for Federal Insurance Plaintiffs
BY:  SEAN P. CARTER

MOTLEY RICE LLC
     Attorneys for Burnett Plaintiffs
BY:  JODI WESTBROOK FLOWERS

ANDERSON KILL
     Attorneys for O'Neill Plaintiffs
BY:  JERRY S. GOLDMAN

NAPOLI SHKOLNIK PLLC
     Attorneys for Addesso Plaintiffs
BY:  PAUL J. NAPOLI
     CHRISTOPHER R. LOPALO

1                          APPEARANCES (cont'd)

2    WIGGINS CHILDS PANTAZIS FISHER GOLDFARB`
          Attorneys for Homer Plaintiffs
3    BY:  DENNIS G. PANTAZIS
          TIMOTHY B. FLEMING
4          -and-
     FOOTE MIELKE CHAVEZ & O'NEIL, LLC
5    BY:  ROBERT M. FOOTE

6    MOTLEY RICE LLC
          Attorneys for Burnett Plaintiffs and Eurobroker
7    BY:  ROBERT T. HAEFELE
          -and-
8    SIMMONS HANLY CONROY
     BY:  JAYNE CONROY

9

10   ALLAN C. SAMUELS
          Attorneys for Plaintiffs Antoinette McCarthy
          and Jennifer Castellano
11   BY:  MICHAEL F. GROSSMAN, of counsel

12   THE MILLER FIRM LLC
          Attorneys for DeSimone Plaintiffs
13   BY:  DAVID J. DICKENS

14   SALERNO & ROTHSTEIN
          Attorneys for Defendant Yassin Abdullah Al Kadi
15   BY:  PETER C. SALERNO

16   OMAR T. MOHAMMEDI
          Attorney for Defendant WAMY International, Inc.
17

18   CLIFFORD CHANCE US LLP
          Attorneys for Defendant Dubai Islamic Bank
19   BY:  STEVEN T. COTTREAU

20   KELLOGG HUBER HANSEN TODD EVANS & FIGEL, P.L.L.C.
          Attorneys for Defendant Kingdom of Saudi Arabia
21   BY:  MICHAEL K. KELLOGG

22   ROBBINS RUSSELL ENGLERT ORSECK UNTEREINER & SAUBER LLP
          Attorneys for Defendant Saudi High Commission
23   BY:  ROY T. ENGLERT, JR.

24

25

1                          APPEARANCES (cont'd)

2    MOLO LAMKEN
          Attorneys for Defendant Dallah Avco Trans Arabia Co. LTD.
3    BY:   ROBERT K. KRY

4    LEWIS BAACH PLLC
          Attorneys for Defendants The International Islamic Relief
5    Organization and The Muslim World League
     BY:   WALEED NASSAR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (Case called)

 2              MR. KREINDLER:  Good afternoon, your Honor, Jim

 3     Kreindler for the Ashton plaintiffs, and I'm one of the

 4     cochairs of the Plaintiffs' Executive Committee.

 5              MS. FLOWERS:  Jodi Flowers on behalf of the Burnett

 6     plaintiffs and the Plaintiffs' Executive Committee.

 7              MR. CARTER:  Good afternoon, your Honor, Sean Carter

 8     on behalf of the Federal Insurance plaintiffs and the

 9     Plaintiffs' Executive Committee.

10              MR. GOLDMAN:  Good afternoon, your Honor Jerry Goldman

11     on behalf of the O'Neill plaintiffs and the Plaintiffs'

12     Executive Committee.

13              MR. COTTREAU:  Good afternoon, your Honor, Steve

14     Cottreau for Dubai Islamic Bank.

15              MR. KELLOGG:  Good afternoon, your, Michael Kellogg on

16     behalf of the Kingdom of Saudi Arabia.

17              MR. ENGLERT:  Good afternoon, your Honor, Roy Englert

18     for the Saudi High Commission.

19              THE COURT:  Thank you.

20              I understand that there are some other counsel in the

21     room who may wish to be heard.  For anybody else who has not

22     made an appearance, if you do wish to be heard, that's fine.  I

23     would just ask that you identify yourself both by your name and

24     by the case that you're working on.

25              The purpose of today's conference is to touch base on
```

1   where we find ourselves.  As you know, I issued a status

2   conference order on the 17th that identified four areas for

3   discussion.  So what I thought I would do was just remind

4   everybody about what I want to talk about, and then we can

5   proceed from there.

6            I'd like to begin by discussing the new cases that

7   have been filed against Saudi Arabia.  As recently as moments

8   ago another case has been filed, the Homer case.  In addition

9   to the consolidated amended complaint, we have the Ashton

10   complaint, we have four complaints filed by the same counsel.

11   The lead case is I think Aguilar.

12            There are a series of cases that were filed that were

13   identified in my conference order.  I want to talk about those

14   new cases and get my hands around that issue.  Related to the

15   new cases I want to talk about the role of the Plaintiffs'

16   Executive Committee and make sure that everything is working as

17   it needs to be for that purpose and as we fold in these new

18   cases.

19            I want to discuss the anticipated motion to dismiss

20   brought by Saudi Arabia and how that will be affected.  I know

21   we had a June 1 date to move to dismiss the consolidated

22   amended complaint, but we now have additional complaints that

23   are coming in and how we are going to handle those complaints.

24            And then I thought I would just conclude by touching

25   base on discovery in the earlier filed cases and see where

 1    things stand with that.

 2          Why don't we begin and maybe I will ask Mr. Kellogg to

 3    begin.  And we can just talk about where things stand from your

 4    perspective with respect to the complaints that are filed

 5    against Saudi Arabia.

 6          MR. KELLOGG:  Thank you, your Honor.

 7          As you know, there have been many letters and orders

 8    back and forth since the time of the remand and even preceding

 9    the remand, all of which were endorsed by the Plaintiffs'

10    Executive Committee and assumed that there was going to be one

11    consolidated complaint by the various plaintiffs' groups

12    represented by the Plaintiffs' Executive Committee.  There was

13    no suggestion that there was going to be a separate complaint

14    that was filed after the deadline that this Court established

15    for serving on us the consolidated amended complaint.

16          THE COURT:  Can I interrupt you for one legal

17    question, which a statute of limitations question.  I am just

18    trying to get a sense of, for how long is the possible window

19    that cases against Saudi Arabia might be filed?  Do you have an

20    answer?  I assume that's going to be one of your motion issues.

21          MR. KELLOGG:  I believe, your Honor, that Congress

22    extended the statute of limitations to 2019, so there could

23    potentially be more cases filed.

24          But our goal in dealing with the remand was to have a

25    single consolidated complaint, that we would file a single

1    consolidated motion to dismiss against we, the Kingdom.  The

2    Saudi High Commission would file its own motions to dismiss.

3    That was a goal that we shared, we thought, by the Plaintiffs'

4    Executive Committee and endorsed by this Court.

5         All the orders talked about a single pleading, a

6    single complaint, and a complaint by all the plaintiffs.  The

7    goal has been disrupted now because the Ashton plaintiffs have

8    filed the complaint that is quite a bit different from the

9    consolidated amended complaint.  It contains different

10   allegations.  And that's distinct from the other complaints,

11   new complaints which the Court has rightly indicated are

12   tagalong actions that are really just embracing the

13   consolidated amended complaint.

14        THE COURT:  Have you looked at the Homer complaint or

15   the Aguilar complaint?  The Homer one was the one I just

16   noticed was filed maybe a couple of hours ago.

17        MR. KELLOGG:  It was filed while I was walking to the

18   courthouse today, your Honor.  I have not looked at it.  I am

19   told that it's mainly a cut and paste.  As long as they are

20   tagalong, it doesn't make that much difference to our objective

21   of having a single organized proceeding.

22        But the Ashton complaint really does, and it's out of

23   time.  It was supposed to be served on us March 1, a single

24   consolidated complaint, all through the letter exchange and the

25   letters were signed by the Plaintiffs' Executive Committee of

1    which counsel for Ashton plaintiffs is a member.  There was no

2    hint, no suggestion that we were going to get a separate

3    complaint out of the blue, and we were proceeding in good

4    faith.

5          We agreed to waive service on all the new complaints.

6    We decided not to file an opposition to the motions to amend

7    because we were going to have this nice package and we were

8    going to respond to it on June 1.  That has been undermined by

9    Mr. Kreindler.

10         And the reason he says he can do this is because the

11   Court's orders requiring the consolidated amended complaint

12   only apply to those who had already sued Saudi Arabia.  And

13   that's doubly wrong.  First of all, the orders talked about all

14   plaintiffs.  The Plaintiffs' Executive Committee was

15   representing all the plaintiffs who were covered under the

16   umbrella of the Plaintiffs' Executive Committee.  The Ashton

17   plaintiffs did sue Saudi Arabia back in 2014.  They were part

18   of the consolidated amended complaint which was filed in 2014

19   and denied by Judge Daniels.  They were part of the appeal that

20   went to the Second Circuit.  They were part of the remand and

21   they were on all of the letters.  And our position is that it

22   is simply too late for them to come in with significantly

23   different allegations that we are now going to have to try to

24   deal with in the motion to dismiss.

25         THE COURT:  I'll ask Mr. Kreindler to tell me his view

1    on this.  I confess that I have not compared the consolidated

2    amended complaint to the Ashton complaint, so forgive me for my

3    ignorance.  The grounds on which Saudi Arabia is going to move,

4    presumably, since it will be a motion to dismiss, will be legal

5    grounds.  Can you explain to me, if you are able to, why the

6    motion that you would file against the consolidated amended

7    complaint would not be equally applicable to the Ashton

8    complaint?

9         MR. KELLOGG:  Well, because they have added a number

10   of different specific allegations and so we will have to

11   respond separately to those, presumably in a separate motion to

12   dismiss against that complaint, which will complicate the

13   process.

14        First of all, we have to go through the very long

15   consolidated amended complaint, compare it against the

16   complaint we just got this week, and figure out which

17   allegations are significantly different that are going to

18   require a separate response.  We have identified dozens,

19   already, of specific allegations that are not contained in the

20   consolidated amended complaint.

21        THE COURT:  What relief would you be seeking from the

22   Court?  Set aside the fact that you might have assumed that the

23   Ashton claims have been brought in the consolidated amended

24   complaint and maybe there was a miscommunication or maybe it

25   was something worse than that.  What's the remedy at this

1   point?

2           MR. KELLOGG:  One remedy which we would ask is to

3   simply dismiss the Ashton complaint as untimely and allow them

4   to join in the consolidated amended complaint.  I would note

5   that many, if not most, of the Ashton plaintiffs are already

6   part of the consolidated amended complaint insofar as they are

7   members of the putative O'Neill class, which is on the

8   consolidated amended complaint.

9           If they think that there are additional allegations

10  that the consolidated amended complaint did not cover and that

11  are critical to the case, then we can have yet another revised

12  amended consolidated complaint that puts them all in one place

13  or they can perhaps do an addendum to the existing consolidated

14  amended complaint and we will set a new schedule for responding

15  to that.

16          THE COURT:  Thank you.

17          I have questions for you about some of the other

18  complaints, but maybe it makes sense for me to speak with

19  Mr. Kreindler about the Ashton complaint and finish this topic.

20          MR. KREINDLER:  Thank you, your Honor.  Let me address

21  your first three topics:  The Plaintiffs' Executive Committee,

22  the Ashton complaint, and how our committee intends to handle

23  additional lawsuits which could be filed until 2019.

24          THE COURT:  I am going to stop you because I want to

25  focus on Ashton right now because that's what we were talking

```
 1    about.

 2              MR. KREINDLER:  Here is the situation on the Ashton

 3    complaint.  Our committee had the same understanding and we

 4    have been on the same page from the beginning here.  The Ashton

 5    plaintiffs -- and we represent the family members of 850 people

 6    who were killed and 1,500 injury cases -- have never sued Saudi

 7    Arabia.  We have not been part of any complaint against Saudi

 8    Arabia.

 9              With the passage of JASTA, we clearly have the right

10    to assert our claim.  Speaking for the committee, our committee

11    always had the same understanding and apparently there has been

12    a misunderstanding with the defendant.

13              As your Honor knows, the two complaints that were

14    filed 14 years ago were the Federal Insurance complaint and the

15    O'Neill complaint.  The O'Neill complaint alleges a class

16    action, but of course there is no class that's been certified.

17    Those are the two cases that have been proceeding against Saudi

18    Arabia up to the Second Circuit, back to the district court, to

19    the Second Circuit.  Those are the two cases that were remanded

20    for an amended complaint.  Those are the two cases where

21    complaints had been filed and been litigated.

22              We always believed that the schedule, the June 1 date

23    and your Honor's orders referred to the two cases against Saudi

24    Arabia that have been before the Court and did not refer to new

25    cases that could be brought by thousands of people who have
```

1    never sued Saudi Arabia.

2            Now, as your Honor noted and Mr. Kellogg just

3    confirmed, the Ashton complaint is different from the complaint

4    filed by the original two cases, Federal Insurance, O'Neill,

5    and joined in by Burnett.  And we have an absolute right,

6    having never sued Saudi Arabia, to present our case and present

7    it in the matter we see fit.

8            On the timing issue, I spoke with Michael Kellogg.  We

9    tried to talk Friday.  I think we wound up speaking Saturday.

10   But I said, we are filing our complaint.  If you consent to it

11   being an amendment of Ashton, we can be, effectively, on the

12   same briefing schedule and take whatever time you would like to

13   study the complaint and decide if you want to consent.  If you

14   don't consent, it's a new complaint, a standalone complaint, as

15   we have every right to bring, and then it's up to Saudi Arabia

16   to decide whether to accept service or require us to serve the

17   usual way.  Obviously, if Saudi Arabia consents to it being an

18   amendment to the original Ashton complaint, we can be on the

19   same briefing schedule and there will be two briefs.

20           In terms of additional cases, the committee has agreed

21   that for all new cases, for anyone who wants to join in this

22   litigation and adopt a complaint, we are using the Federal

23   Insurance/O'Neill/Burnett complaint for everyone to sign onto.

24   So it's our expectation that as these new cases join, the Court

25   will have before it only two complaints down from the 20 or so

1    complaints that have been filed, and it's entirely up to Saudi

2    Arabia to decide whether to consent to being an amendment or

3    not, and we will act accordingly.

4            THE COURT:  Why does Ashton need to have a standalone

5    complaint?  What's unique about the facts of Ashton that are

6    not covered by the consolidated amended complaint?  That seems

7    to work for thousands of other folks.

8            MR. KREINDLER:  Your Honor, this is our first time to

9    present the case that we see fit in the way we want to present

10   it.  I could detail a lot of differences between the two, but

11   our committee has been working together and discussing these,

12   and I don't know that it's the best thing for us to do to talk

13   about all the differences between the two complaints, but our

14   complaint has some fact allegations, not in the other, as the

15   other has some facts and items not in ours.

16           And including the people we have not filed for, for

17   the 5,000 people we represent, we have a right to state our

18   case the way we want to state it, and I don't believe that

19   there is any prejudice or any inefficiency in proceeding this

20   way.  There will be two complaints.  Everything we do from here

21   on out, as has been the case for 15 years, we are completely

22   unified on, discovery, court conferences.  There isn't a gap

23   among any members of the plaintiffs' committee.  We are acting

24   together.

25           But for thousands of people, family members of people

1    who were murdered who have never yet been able to voice their

2    allegations against Saudi Arabia, we have a right to present

3    our case the way we think best, and I am joining with my

4    colleagues in simplifying the procedure by urging that every

5    new plaintiff sign onto the Federal, O'Neill, and Burnett

6    complaint so that there are only two complaints.

7         THE COURT:  I don't understand why what's good enough

8    for everybody else is not good enough for the Ashton

9    plaintiffs.  If you're encouraging every other claimant or

10   plaintiff to sign on and to have their voice heard through this

11   consolidated amended complaint and, yet, your clients need to

12   have a separate voice, I don't mean to undermine their claims,

13   but we are talking about thousands and thousands and thousands

14   of people here, and we are trying to come up with something

15   that is sufficient.

16        What I'm struggling with is why the lawyers and the

17   Court should be required to review two separate complaints and

18   two separate motions and all that that undertakes when 98

19   percent of the plaintiffs are all in one complaint, why we need

20   to have a special carve-out for these other plaintiffs.

21        I'm not trying to devalue your sentiments that your

22   clients have the right to be heard, but that voice, I assume,

23   can be brought forward, and you are asking for every other

24   lawyer to have their client's voices heard through this

25   consolidated amended complaint that the Plaintiffs' Executive

1      Committee thinks is strong enough to states these claims.

2              What's so special about Ashton?

3              MR. KREINDLER:  Let me say this.  I believe that every

4      plaintiff has a right to start their case and present their

5      case the same way.  Now, in my career I have never worked off a

6      master complaint and from every -- from Pan Am 103 to this

7      case, there have always been different complaints when a motion

8      is filed.  It can either be one motion or separate motions.

9              The Ashton plaintiffs are not a spinoff.  This is half

10     the death cases and a majority of the injury cases and the

11     complaints are different.  There are facts that we thought

12     important to include that others didn't, and there are other

13     facts and components that others thought important to conclude.

14             THE COURT:  What would you recommend that I do if 50

15     lawyers come in in the next month and say what you are saying

16     to me right now.

17             MR. KREINDLER:  Here is my suggestion.  Number one,

18     give this process a chance to play out.  There is a certain

19     practical reality here.  Now, 90 percent or a huge percentage,

20     80 percent of the death cases are filed.  My prediction is, as

21     new people join -- and no one wants to be left on the

22     sideline -- my prediction is, a month from now, instead of

23     having 20 different complaints before the Court, we will be

24     down to two and I think that's a very solvable problem.

25             Over the next days or weeks Saudi Arabia can decide

1   whether or not to consent to ours being an amendment to the

2   earlier Ashton complaint against other defendants and, if so,

3   we can have the same briefing schedule.  We believe that this

4   does not upset the briefing schedule.  Certainly if Saudi

5   Arabia wants to consent to an amendment, and there will be no

6   burden on the Court.  When we get to the briefing, we are

7   amenable to one brief to dismiss both actions or two briefs

8   with an area of overlap.

9          But, either way, I believe you will soon have before

10  you virtually all the plaintiffs in this case down to two

11  complaints with some different facts and a different approach

12  and a different presentation, without prejudice to any

13  plaintiff's right to assert the most powerful claims that they

14  feel exist in the way they think is appropriate.  I don't

15  foresee a problem with this at all.

16         Just as a footnote, what I wanted to say about the

17  committee, we are on exactly the same page and this is how we

18  were operating.  We always understood what was happening was a

19  briefing schedule for the remanded actions and other cases

20  could shortly file their own complaints.

21         As it's turning out, and I have not seen the complaint

22  that was filed today, but it's my understanding that it is

23  identical or substantially the same as the

24  Federal/O'Neill/Burnett complaint.  So I think if you let this

25  process run its course, we are going to be down to two

1   complaints and a very manageable schedule for the defendant to

2   answer or move, and we know it's going to be a motion, not an

3   answer.

4          THE COURT:  Does the Plaintiffs' Executive Committee

5   recommend requiring any newly filed complaint containing an

6   attorney certification that the complaint largely or

7   substantially tracks the consolidated amended complaint?

8          MR. CARTER:  Your Honor, we have been having some

9   conversations with the attorneys who are in the newly filed

10  actions and the one thing that I can report is that all

11  indications so far are that the folks that we have talked to in

12  the newly filed cases intend to adopt the consolidated amended

13  complaint for purposes of litigation, so we do expect that the

14  group of actions you identified in your order for purposes of

15  today's conference will be adopting the consolidated amended

16  complaint.  We are awaiting final answers from a couple.  I do

17  think Barrison, Addesso, Aguilar, Hodges, Desimone, Akin all

18  intend to adopt the consolidated amended complaint, and

19  hopefully I have not misspoken on any of those.  I'm sure

20  counsel will advise.

21          I believe that the complaint that was filed today does

22  in fact track the consolidated amended complaint, and we are

23  going to be recommending to anyone who reaches out to us who is

24  a potential plaintiff that they file a complaint in the form of

25  the consolidated amended complaint.  Certainly I am,

1    Mr. Goldman.

2           THE COURT:  Can we come up with some sort of system so

3    that the Plaintiffs' Executive Committee can notify the Court?

4    This is one of many cases that I have on my docket and it would

5    be nice to have experts let me know whether or not I should

6    assume that a newly filed complaint is in fact an adoption of

7    the consolidated amended complaint.

8           MR. CARTER:  Yes, your Honor.  We had some

9    conversations downstairs about what the most effective

10   procedural advice would be to do that, whether it's a

11   short-form complaint that essentially plaintiffs in those cases

12   could come in and simply adopt and incorporate into their

13   complaints the consolidated amended complaint and take the

14   benefit of that, or whether it's some sort of stipulation to

15   that effect.  We are having those conversations now.  We think

16   we will have a firm proposal on that very shortly.

17          THE COURT:  Good.  I'm glad to hear that.

18          Mr. Kreindler, one other question before we move away

19   from Ashton.

20          From a judicial efficiency standpoint, which is one of

21   the considerations that I'm taking, why would the best course

22   of action not be to have Saudi Arabia move against the

23   consolidated amended complaint, let that motion be decided, and

24   then once that motion is decided, issue an order to show cause

25   as to why that decision that came out of that process shouldn't

1    apply to Ashton?  Why is that not the most efficient way to

2    proceed?

3              MR. KREINDLER:  I think a more efficient way to

4    proceed is to deal with all the briefing right away.  If we

5    follow your Honor's recommendation, there will be a decision on

6    the motion.  If the motion is denied, then we have a whole

7    separate round of us arguing that it has to be denied in our

8    case, too, even though it's different allegations.

9              Conversely, if the motion was granted, we would have a

10   whole separate briefing schedule where we are arguing that a

11   different result should apply in our case.  So instead of doing

12   it in two phases, I think it's more efficient just to do it at

13   once.  We will know sometime fairly soon whether we can be on

14   the same schedule because if there is a consent to either

15   accept service in a standalone case or to treat ours as an

16   amendment, there shouldn't be a problem for a motion to dismiss

17   both complaints being filed by June 1, and we are on the same

18   schedule.

19             I don't see a need to do it in two separate waves.  I

20   think it's more efficient to do it all at one time.

21             MR. KELLOGG:  Your Honor, the premise of

22   Mr. Kreindler's argument, and he said this several times, is

23   that they never filed suit before against the Kingdom of Saudi

24   Arabia and the Saudi High Commission.  That is simply not

25   correct.  I refer the Court to document 2891, which was filed

1   on the 15th of September in 2014.  It is plaintiffs' motion to

2   file a consolidated amended pleading of facts in evidence as to

3   the Kingdom of Saudi Arabia and the Saudi High Commission.  It

4   was in a proposed amended complaint after the initial remand

5   from the Second Circuit.

6           We opposed that amendment on two grounds.  First, on

7   the grounds that there was a very limited purpose for the

8   Second Circuit remand and it was inappropriate for them to open

9   up the record with a great deal of new allegations; but,

10  second, we also argued that it was futile because it did not

11  correct the defects in the existing complaints.

12          Judge Daniels agreed with us on the latter point.  He

13  did not reach the former.  He agreed with us that it was

14  futile.  He dismissed the complaint against us.  And Ashton

15  plaintiffs were part of the appeal on that.  They joined in the

16  document 2891.  They signed the pleadings.  They are listed as

17  participating in the proposed amended complaint.  They

18  participated in the appeal.  They are part of the remand.  We

19  had every reason to expect during these back-and-forth letters

20  that they were part of that process that we were agreeing on as

21  well.  For them now to have laid in the weeds during that and

22  come up with a new complaint imposes a substantial burden not

23  just on us, but also on the Court.

24          THE COURT:  I guess I go back to my question to you

25  about remedy, which is tied into my question to you about the

1    statute of limitations.  Whether it was fair or not for the

2    Ashton plaintiffs to file this separate complaint and whether

3    or not you expected it or I expected it, I'm not quite sure

4    that there is an appropriate remedy.  I don't know.  You said

5    dismiss the complaint.  If the parties are allowed to file this

6    complaint up until 2019, I'm not really sure that that's the

7    appropriate remedy here.

8            MR. KELLOGG:  Parties can file new complaints.

9    Parties were not in the proceeding before, but the Ashton

10   plaintiffs were part of the prior proceeding.  Their complaint

11   was dismissed and they were part of the remand from the Second

12   Circuit, so they have to amend.  And they have not given an

13   actual legitimate reason for why they did not amend as of March

14   1 if that's what they wanted to do.

15           MR. KREINDLER:  Your Honor, I have got to say one

16   other thing because it makes no sense.  The Ashton plaintiffs

17   never sued Saudi Arabia.  We joined with our colleagues.  The

18   committee speaks in one voice in 2014.  But 2014 is a decade

19   after the statute of limitations has run.  So it just isn't

20   right to create the impression that we ever sued Saudi Arabia

21   or forfeited our right to do so after JASTA because the

22   plaintiffs' committee speaks as one voice and we all support

23   one another in the relief sought, even if it doesn't apply to

24   some plaintiffs.  Had we won in the Second Circuit, that would

25   not have affected the Ashton plaintiffs because we never have

1  sued Saudi Arabia.

2          What we are talking about is now, the first time since

3  the statute is gone, after JASTA we can sue.  And to suggest

4  that we lose our right to sue Saudi Arabia the way we think it

5  should be done in our cases, because of a misunderstanding that

6  can be easily cured, is just not right.

7          THE COURT:  I think I've heard enough on this

8  particular topic.

9          What I am going to do is ask both sides to send me a

10 letter in a week letting me know what their current position

11 is.  It sounds like there may be some further discussions.  I

12 would like to hear from both the Ashton plaintiffs and from

13 Saudi Arabia.  And if the High Commission also wants to weigh

14 in, that's acceptable, and then I'll take all of that under

15 advisement.

16         Can I ask, is the lawyer for the Aguilar and other

17 related cases here?

18         Can I ask you to come into the well.  I think we need

19 to have you by a microphone.

20         THE COURT:  Can I get your name.

21         MR. NAPOLI:  Paul Napoli from Napoli Skolnick.

22         THE COURT:  I had some sort of housekeeping questions

23 for you.  I understand that you filed four separate complaints

24 that I understand are largely identical and the representatives

25 of the Plaintiffs' Executive Committee seemed to suggest that

1   either that tracks the consolidated amended complaint or you

2   will be joining the consolidated amended complaint.  As you can

3   tell from the latest colloquy, we want to have as few

4   complaints as possible here in order to streamline and manage

5   this case.  Can you tell me a little bit about where things

6   stand on that issue.

7          MR. NAPOLI:  Your Honor, we have been speaking over

8   the last several days with the executive committee trying to

9   work out a process by which we can adopt the complaint that the

10  majority has put forth.  We think a simple solution would be a

11  notice of adoption or a short-form complaint by which if there

12  are any new cases that get filed, they can just automatically

13  adopt the pleadings as they exist.  That way there will be one

14  briefing schedule and one set of briefs, which we will be

15  working to see if we can help the executive committee with

16  throughout the process.

17         THE COURT:  That's what I was talking about with

18  Mr. Carter.  Hopefully, the Plaintiffs' Executive Committee

19  will come up with a proposal for that.  I think that resolves

20  my first problem, which is that we had four complaints that

21  were identical.

22         My second question for you, and this also may be

23  mooted if you join the consolidated amended complaint, is your

24  motion for leave to serve by way of publication.  Should I

25  assume that that's mooted now if you are going to be moving

1    within the consolidated amended complaint?

2            MR. NAPOLI:  Not exactly, your Honor.  So the

3    consolidated complaint has just the one defendant, the Kingdom

4    of Saudi Arabia.  There are the additional defendants that we

5    have sued as well.  There are 14 counsel all together.  We have

6    reached out to all of them.  And the consensus so far, we have

7    spoken with half of them, that they are going to talk to their

8    clients to see if they will waive service and consent to

9    service so there will be no need for the motion.  I would ask

10   that the Court give us a little time to continue those

11   conversations, and hopefully all defendants will agree to

12   accept service by consent, and then we can stipulate to the

13   withdrawal of the motion.

14           THE COURT:  The way these motions are typically filed

15   is that a lawyer has made real efforts to identify somebody and

16   figure out a way to serve them and the motion needs to set

17   forth all of the ways in which you made those efforts.  In this

18   case, as was reported by counsel, many of these defendants are

19   represented in this case.  I think one of the defendants is

20   dead.  It doesn't appear that a real effort was made to effect

21   service before that motion was filed.

22           I'm inclined to deny the motion.  It's without

23   prejudice and you can make a new application if there are

24   certain defendants who refuse to accept service.  And to those

25   defendants, counsel, who are here, I hope you will all work

1    together on this issue.  And then if you want to make an

2    application for service by way of publication for a particular

3    defendant, you need to make a showing that you've really

4    searched and made real efforts to identify where that person is

5    and try to attempt service.

6            MR. NAPOLI:  Sure.  Fair enough, your Honor.  And we

7    understand the standards that are involved in coming to the

8    most unusual request to serve by publication.  This case, as

9    you know, has gone on for 15 years and I think at some point

10   the executive committee themselves reached a point where they

11   were unable to serve process and made a motion for publication.

12   So it's not that we didn't make efforts or intended to make

13   efforts; it's we knew those efforts were going to be futile.

14   That's why we brought the publication.  I'm hopeful that we can

15   work out the service issues, but we understand your Honor.

16           THE COURT:  I am going to deny the motion.  It's

17   without prejudice and you can make an application on a

18   particular showing with a particular defendant.

19           MR. COTTREAU:  Your Honor, if we could just clarify a

20   couple quick points.  I appreciate the denial of the motion.

21           One is, my client is a publicly traded company in

22   Dubai.  It's not as it's been characterized, a terrorist hiding

23   in any way.  It is easy to be found.  Having said that, I have

24   not received a call.  I think it was represented that all

25   defendants have received calls yesterday or the day before.  I

1    have not received any call to accept service.

2           But if we could have a court order, that would be very

3    useful in case there is any lack of clarity, either now under

4    existing law or as the law develops in the future, that an

5    acceptance of service by a defendant or a waiver of service by

6    a defendant will have no impact on that defendant's ability to

7    argue that this Court lacks personal jurisdiction.

8           MR. NAPOLI:  Your Honor, we consent to that.  I think

9    that's always the case.  We would stipulate to that in our

10   waiver.  To the extent that you can help us expedite getting

11   the waivers, great.

12          THE COURT:  I'm happy to issue an order, if that would

13   make the process more streamlined, and ask that the defendants

14   get back to counsel within the next two weeks on their position

15   and that any waiver of service would not constitute a waiver of

16   any jurisdictional defenses.

17          MR. COTTREAU:  Thank you, your Honor.

18          THE COURT:  I think, Mr. Napoli, those were my only

19   questions for you.  Thank you.  I did want to call up one other

20   lawyer, if the lawyer for the newly filed Homer case is here.

21          Can you state your name for the record.

22          MR. PANTAZIS:  I am Dennis Pantazis, and I represent

23   the Homer complaint that was filed today.  That's 3476.  It is

24   289 plaintiffs.  They are family victims of decedents of 9/11.

25          Your Honor, I am part of the Plaintiffs' Executive

1    Committee, but previously we have been representing Havlish and

2    still do and Hoglan against Iran.  We had not participated in

3    the Saudi cases up until this complaint.  The purpose of this

4    complaint was to add those plaintiffs that were in the Hoglan

5    and Havlish case that were not part of the Saudi case.  So we

6    contacted and worked with the executive committee and we were

7    instructed, and I think it was my interpretation as well, that

8    the consolidated complaint was only for the remand.  Since

9    these people were not part of that, they would not be added to

10   the consolidated complaint.  At least that's what we were

11   instructed.

12        THE COURT:  Does the complaint track the consolidated

13   amended complaint?

14        MR. PANTAZIS:  We worked with them.  Our intent was to

15   be identical except for the parties to the consolidated

16   complaint.

17        THE COURT:  One other housekeeping question.  It

18   doesn't appear that you commenced this action as a separate

19   action, but that it's only been filed in the MDL case.  Or have

20   you also --

21        MR. PANTAZIS:  Only been filed in the MDL case.

22        THE COURT:  I think, and maybe somebody here can help

23   me, but I think the practice has been to open a new case, get a

24   new civil docket number, and then it will be related to the MDL

25   case.

```
1             MR. PANTAZIS:  We debated that, but based on the fact
2    that the Court wanted to have all the parties and all the
3    complaints we deemed today, and the fact that we would be
4    joining the consolidated complaint, we thought it would be
5    better to at least today to notify the Court by filing through
6    the MDL.  If the Court directs us as you have, we will file a
7    separate case.
8             THE COURT:  I will double-check to make sure, but I
9    think the correct protocol for newly filed cases is to file
10   them in both a new case under its own action and in the MDL
11   case.
12            MR. PANTAZIS:  That's the way we normally file them.
13   We thought since there was a consolidated complaint and the
14   effort was to join it, we would file it just with this.  We
15   will do it both ways.
16            THE COURT:  Presumably, once we get something in place
17   from the Plaintiffs' Executive Committee on how we are going to
18   have people join that consolidated amended complaint, I take it
19   the Homer plaintiffs will file whatever that form is.
20            MR. PANTAZIS:  Absolutely.  Our purpose was to notify
21   the Court and the defendants and to track the consolidated
22   complaint.
23            THE COURT:  Great.  Thank you, sir.
24            Mr. Carter.
25            MR. CARTER:  Your Honor, the Court's dialogue with
```

1    Mr. Napoli triggered an issue that I thought timely to bring up

2    at this point.  There are claims against nonsovereign

3    defendants in, I believe, six of the cases that are now pending

4    in the MDL, six of the newer cases in the MDL.  The four cases

5    by Mr. Napoli, a case captioned Lloyd's that my firm

6    represented, and a case on behalf of Beasley that Mr. Kreindler

7    represents.

8              The nonsovereign defendants who are named in those

9    cases and the Defendants' Executive Committee reached out to me

10   recently in the hopes of reaching an agreement on any

11   amendments of the claims in those cases against the

12   nonsovereign defendants, the timing for that so that we could

13   all be on the same page.  We have got an agreement from

14   everyone who has those claims that any amendments as to the

15   nonsovereign defendants in those cases will be done within 30

16   days and then there is going to be a schedule proposed for

17   briefing those.  We are hopeful, I think, again that there can

18   be couldn't consolidated briefing on all those actions in

19   relation to the motions to dismiss of those nonsovereign

20   defendants.

21             THE COURT:  Let me say back to you what you just said

22   to me so I understand.

23             For these six cases and potentially others, since that

24   seems to be happening, with respect to the nonsovereign

25   defendants, there is an application being made to those

1    defendants now to amend those pleadings and then to set a

2    briefing schedule, which may or may not -- sounds like will not

3    coincide with the June 1 schedule that we already have in

4    place.  Is that correct?

5           MR. CARTER:  I think that's correct.  I think the

6    proposed amendments would have to occur within the next 30

7    days, and then there is likely to be some divergence of opinion

8    on the part of the lawyers representing the nonsovereign

9    defendants who will be moving about the timing on their motions

10   to dismiss.  Again, we are going to try to do it this in an

11   orderly way and hopefully through consolidated briefing in

12   those cases.  I think the allegations in those cases as to the

13   nonsovereign defendants, I had not studied them in detail, but

14   I do think that they are harmonious enough for there to be

15   consolidated briefing in that setting.

16          THE COURT:  They are also distinct enough or

17   distinguishable enough that there is no need to consolidate

18   that motion practice with the sovereign motion to dismiss.  Is

19   that correct?

20          MR. CARTER:  That's correct, your Honor.  It's

21   completely different issues, and I just wanted to clarify one

22   point because some of us may have misheard.  I know that the

23   Plaintiffs' Executive Committee members who have signed under

24   the consolidated amended complaint were of the understanding

25   that should briefing go forward as to the Kingdom's motion to

1    dismiss as to both the consolidated amended complaint and the

2    Ashton complaint, there would be separate briefing as to those

3    two issues.  But it is not an issue, admittedly, that we have

4    spoken to Mr. Kellogg about at this point.

5               THE COURT:  Thank you.

6               Mr. Kreindler, you were speaking briefly about the

7    role of the Plaintiffs' Executive Committee and I cut you off.

8    Is there anything else that you want to educate me about as far

9    as how you see the committee working on a going-forward basis?

10              MR. KREINDLER:  No, your Honor.  I think I've covered

11   it.  I just wanted to stress that we are always exactly one

12   team doing the same thing.  There is no issues in the

13   committee, whether it was the appeal in 2014 or how we are

14   proceeding now.  I just wanted to assure you that we are

15   exactly on the same page and uniform in our approach and we

16   will do everything humanly possible to coordinate with all

17   other counsel so we can simplify briefing and filings in all

18   related matters.

19              MR. CARTER:  Your Honor, a related data point.  The

20   Plaintiffs' Executive Committee structure was established

21   through a case management order issued many, many years ago, I

22   think in 2004.  It's case management order No. 3 in the MDL

23   proceeding.  I believe the docket No. is 248.  One of the

24   reasons I can't tell you for certainty is because I think it

25   actually preceded the implementation of the ECF system and, as

1    a consequence, I'm reading off of a handwritten notation, but

2    in terms of assessing what the duties, obligations, and powers

3    of the executive committees are in the litigation, those are

4    set forth in that case management order.

5         THE COURT:  Is there any reason why we might want to

6    have a case management order No. 4?  Do you think there is a

7    need at this stage to reaffirm the role of the Plaintiffs'

8    Executive Committee or put anything on the record that's more

9    current?

10        MR. CARTER:  I don't know that there is anything that

11   we see presently about the structure and powers of the

12   executive committee that needs to be changed.  We would, by the

13   way, if I'm correct, be on case management order No. 7.  There

14   were several after case management order No. 3.  Thank you,

15   your Honor.

16        THE COURT:  That's a good segue into a question I have

17   about discovery.

18        MR. COTTREAU:  Your Honor, I don't mean to interrupt

19   or break your train of thought.  I understand that a lot of

20   these new cases have not been formally part of the MDL and they

21   are simply showing on the docket as related cases.  And maybe

22   it would be appropriate for your Honor to order that the case

23   management orders in place in this case apply also to the

24   related cases as well as to the cases that have been

25   consolidated formally under the MDL.

1          THE COURT:  Because you think those cases aren't
2    otherwise covered by the existing orders?
3          MR. COTTREAU:  As I understand it, they have been
4    shown and docketed as being related cases and transferred to
5    you and to Judge Daniels.  But I think there may be an issue as
6    to whether they are formally part of the MDL.
7          THE COURT:  I thought that that had been resolved, but
8    I will look and see if that is in fact the case.
9          MR. PANTAZIS:  One quick question.  Based on that, the
10   way I have participated in MDLs before on consolidated cases,
11   if the Plaintiffs' Executive Committee has a consolidated
12   complaint, plaintiffs can join that consolidated complaint and,
13   therefore, it would be under the order and would not have to
14   file separate cases and that might clean up some of the issues
15   the Court has been discussing.  Is that a possibility under
16   your organizational plan?
17         THE COURT:  I think it is.
18         MR. PANTAZIS:  Because it would be an easier fix from
19   our perspective to simply join in the consolidated complaint.
20         THE COURT:  Sure.  And I think that is my desire as
21   well.  What I just need to reflect on is whether or not there
22   should still be sort of a pin in a new civil docket number that
23   acknowledges that case.
24         I think what I am going to do is, I am going to ask
25   the Plaintiffs' Executive Committee to send a letter to me in

1   the next week.  And what I would like to hear from you all is

2   on some of these topics we have been discussing:  One, whether

3   or not there should be -- what's your recommendation for having

4   new parties join the consolidated amended complaint.  Should

5   there be a notice of adoption or some sort of shell complaint

6   form?  And, relatedly, whether or not in the Plaintiffs'

7   Executive Committee, whether or not your recommendation is to

8   have new complaints opened as a new civil and related or not.

9         I'd like to hear from you all what you think, from

10  your experience, is the best way to proceed.  And maybe if you

11  could also address the concern that Mr. Cottreau just raised

12  about making sure that related cases are truly part of the MDL

13  and if an appropriate order needs to be put in place, if you

14  could propose that order.  I'd like that letter from the

15  Plaintiffs' Executive Committee within a week.

16        Separately I'd like a letter from -- these can be

17  separate letters -- from the Saudi Arabia and the Saudi High

18  Commissioner and the Ashton parties as to what is the current

19  position on the status of the complaint.  If there is

20  agreement, that's terrific.  If there is not, I will hear from

21  both of you as to what you think is the appropriate remedy and

22  issue my rulings.  If I can get a letter within a week on the

23  Ashton issues.

24        Then I am going to give the parties two weeks to send

25  me a letter on the issue related to the new cases with the

1    nonsovereign defendants and where we are on that case.  And I

2    think in that letter I would like to also hear from Mr. Napoli

3    on the issue of service and where we are on that particular

4    issue, and then we can also discuss where things stand with

5    respect to the complaint, whether there will be an amended

6    complaint that's going to be filed; if so, a proposed schedule

7    for that amended complaint to be filed and thereafter a

8    proposed schedule for any motions that are anticipated.

9            MR. SALERNO:  Peter Salerno of Salerno & Rothstein.  I

10   represent Yassin Kadi.  Mr. Kadi is a nonsovereign defendant in

11   all the cases.  He is in the new cases as a defendant, but has

12   also been in the old cases.  He made a motion to dismiss many

13   years ago that was granted, but the Second Circuit remanded the

14   claims against him and others, but I am not sure they are in

15   these cases, remanded the claims against him for personal

16   jurisdiction discovery.  My client has been in that personal

17   jurisdiction discovery producing documents since late 2013,

18   within months after the remand.

19           With that history, the concept of answering or moving

20   with respect to any of the new complaints strikes one as an

21   exercise in futility since we know that the Second Circuit has

22   already said that the claims in the old complaints, at least,

23   need to be elucidated by discovery, so presumably if we move to

24   dismiss and won again, the same thing would happen and that

25   would certainly be wasteful.  If we lost, we would be in the

1    same position that we are with the old complaints.  I'm afraid

2    that's a long-winded way of saying we think that the new cases

3    should be on the same track as the old one.  We are stuck in

4    the case anyway.  We can't probably reasonably expect this

5    Court to grant a motion to dismiss after looking at the Second

6    Circuit's decision in the old cases.  So that's a

7    consideration.

8              THE COURT:  Where are you now?  You're engaged in

9    discovery over personal jurisdiction?

10             MR. SALERNO:  We are about to finish our document

11   production.  We have been in document production discovery

12   since the Second Circuit remand directed that this discovery be

13   judicially supervised.  The next steps, I guess, are up to a

14   combination of ourselves and the other remanded defendants.

15             THE COURT:  How many of you are there?

16             MR. SALERNO:  I honestly don't know, your Honor.

17   Mr. Kabat, I know, represents some of them.  But nobody else

18   having stood up, I suspect I'm the only one physically here

19   representing one of them.

20             THE COURT:  I'm seeing hands behind you.

21             MR. KRY:  Robert Kry with Molo Lamken.  We represent

22   Dallah Avco.  We were in front of your Honor recently on the

23   motion to compel.  But procedurally we are in the same

24   situation as Kadi.

25             THE COURT:  This is supposed to be judicially

1    supervised discovery, as you represent to me.  So it seems like

2    I need to be supervising better than I am.

3           MR. SALERNO:  We have no complaints on that score,

4    your Honor, I assure you.

5           The fact of the matter is, under Judge Maas we had

6    been working through the process of producing documents.  There

7    are other defendants producing documents that are not remanded

8    defendants, but they are in the case.  I think we all expect

9    that process to be -- each defendant is in a different

10   situation.  I can't speak for them.  We are about to finish our

11   document production as we see it, I think, within a matter of

12   days, if not a week or so.

13          THE COURT:  I have a note in my notes here that

14   document discovery is to end March 31 and this must be that

15   document discovery that we are referring to.

16          MR. SALERNO:  It is, your Honor.

17          THE COURT:  And that the Plaintiffs' Executive

18   Committee suggested an April 21 status letter on whether any

19   motions to compel will be filed.

20          MR. SALERNO:  Yes.  I have to say, our final

21   production is going to be large.  We had been doing it on a

22   rolling basis and finally discovered that we couldn't stop and

23   do production and still get it done, so we decided to keep

24   working on coding documents, the ultimate of which, the last

25   one is going to be large.  I doubt if the plaintiffs will be in

1    a position to say whether they have a motion to compel in three

2    weeks, but that's up to them.

3            In any event, we expect to meet that deadline

4    actually, yes.

5            MR. COTTREAU:  Your Honor, if we could just address

6    the deadline issue.  Sean Carter and Alan Kabat and I have all

7    been speaking, and I hope on behalf of the defendants who are

8    currently in document discovery and who are subject to your

9    fall order last fall of a March 31 deadline for document

10   discovery.

11           I think we have agreement between Mr. Carter and

12   myself and Mr. Kabat, with your consent, to extend that

13   deadline to June 16, if we could.  I think almost all of the

14   defendants need an additional extension, maybe with one or two

15   exceptions, to complete document discovery and some of that is

16   because we are still working out trying to work through some

17   issues with the plaintiffs.

18           THE COURT:  Mr. Carter, yes.

19           MR. CARTER:  Your Honor, yes.  The defendants

20   approached us recently and requested an extension to June 16,

21   and we are not opposing that extension.  There is an issue that

22   one of the defendants in discovery, the World Assembly of

23   Muslim Youth, or WAMY, has indicated that it expects to need

24   much longer to complete its production potentially until

25   September, some time in September.  That struck the executive

1   committee as quite a long period of time for completion of the

2   productions.  The letter advising us of the proposed new date

3   didn't provide much detail about why that length of an

4   extension would be necessary.

5          I had a brief conversation with Mr. Mohammedi, who

6   represents WAMY, as we came into court today and suggested that

7   it would be beneficial for us to hear from him during today's

8   hearing so your Honor can consider what kind of a deadline for

9   WAMY's production would be appropriate.

10         MR. MOHAMMEDI:  Yes, your Honor.  My name is Omar

11  Mohammedi representing WAMY International.

12         We have quite a large number of documents we have to

13  go through.  So far we have produced over 700,000 pages of

14  documents, and we have been producing the supplemental

15  documents from April 2015 every four weeks, three weeks,

16  average of 35,000 pages of documents.  It's impossible for us

17  to complete that discovery by June 15.  We are doing everything

18  we can.  Our clients, they are doing their own due diligence.

19  They are looking for documents.  They are finding more

20  documents.  We are going through all those documents.  95

21  percent of those documents are in Arabic.  Some of them are in

22  different languages.  Your Honor, we are doing our best to get

23  this discovery done.  And we think that September 30 will be

24  the best date for us to complete this discovery.

25         THE COURT:  Thank you.

1            MR. MOHAMMEDI:  Thank you.

2            MR. CARTER:  Your Honor, sorry.  There was one issue I

3    neglected in relation to the executive committee's consent to

4    the extension of the discovery deadline to June 16.  We have

5    communicated to the defendants that while we are agreeing to

6    the extension to that date, we expect that the productions to

7    be rolling to the extent possible so that we don't receive a

8    massive portfolio of documents all on June 16, and my

9    understanding is that that's how they intend to proceed.

10           THE COURT:  With respect to those defendants who

11   believe they can complete their discovery by June 16, what do

12   you think would be an appropriate time for you to file a status

13   letter with the Court notifying me whether or not you

14   anticipate filing any motions to compel?

15           MR. CARTER:  The difficulty that I think was suggested

16   in some of the defendant's statements is that we appear to be

17   looking at potentially hundreds of thousands of documents being

18   served between now and June 16, mostly in Arabic.  So without

19   the benefit of an opportunity to assess what the productions

20   look like and make a determination how long it's going to take

21   us to get through them, it's difficult to say.  We can propose

22   to send a letter stating our views based on a 30-day

23   preliminary review sort of keep to something on the books on

24   that point.

25           THE COURT:  I am going to grant WAMY's application to

1    complete its documents on September 30 and that's contingent

2    upon continuing a rolling production.  And with respect to the

3    other nonsovereign defendants who are engaged in this personal

4    jurisdiction discovery, I'll extend the deadline to June 16 as

5    requested.  But I do want the parties to engage in rolling

6    production.

7            MR. COTTREAU:  Your Honor, just to clarify, we are in

8    merits discovery and some of the other defendants are in merits

9    discovery as well.  I think there is a class of defendants in

10   personal jurisdiction document discovery and a class of

11   defendants that are in merits document discovery as well.

12           THE COURT:  All of those categories will be completed

13   by June 16.  And as Mr. Carter said, I expect that to be a

14   rolling production.

15           Why don't we set a status letter of July 31 to let me

16   know where things stand with respect to those documents and

17   whether or not at that time the Plaintiffs' Executive Committee

18   thinks that it's likely to need to file a motion to compel or

19   whether or not they need some more time to review and to give

20   me a sense of why that is.

21           I think that that addresses all of the issues that I

22   had on my agenda.  Is there anything else from anyone they

23   wanted to raise at this time?

24           I take it that with respect to the June 1 deadline for

25   the motion, that's still on target with respect to the

1    consolidated amended complaint.  There is just this open

2    question about what to do about Ashton.

3              MR. KELLOGG:  Your Honor, I understood that to be an

4    issue that we would work out with plaintiffs' counsel.  If we

5    are going to be responding to both complaints

6    contemporaneously, we may want additional time.

7              THE COURT:  That's fine.  You'll put that all in the

8    letter you will send next week.

9              Anything further from anyone?  Wonderful.  Thank you

10   very much, everybody.

11                                o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25