## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel* | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

April 14, 2017

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

    RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)
              <u>Jurisdictional Discovery Progress Report</u>

Dear Judge Netburn:

    Pursuant to Your Honor's request at the March 23, 2017 status conference and the instructions set forth in the Court's March 24, 2017 Scheduling Order (ECF No. 3482), the Plaintiffs' Executive Committees ("PECs") write to provide the Court with a status report as to the progress of jurisdictional discovery. Because the PECs were unable to reach agreement with the Defendants' Executive Committee ("DEC") on text for a neutral joint report, we are providing a separate progress report. It was, however, drafted with the intention of being neutral and in accordance with the Court's instruction.

    Plaintiffs regret that we were unable to reach agreement with the DEC on a joint report as Your Honor requested. After the recent conference, the PECs took the lead in drafting the progress report as to jurisdictional discovery and presented that draft to the DEC in advance of the April 14 deadline. Plaintiffs tried to follow the clear framework articulated in Your Honor's March 24, 2017 Scheduling Order, making certain not to "discuss any discovery disputes that have arisen" or include language that may appear argumentative. We understood the Scheduling Order to instruct the parties to provide the Court with an impartial and informative overview of jurisdictional discovery that avoided contentious characterizations of the allegations and any argument relating to any dispute, past or present. In response to plaintiffs' proposal, the DECs indicated they could not suggest edits and, instead, offered additional paragraphs to add to the letter for each defendant. In the PECs' view, the DECs' proposed additions presented two problems. First, the text far exceeded the scope of the Court's Scheduling Order, including

language that advanced issues relating to prior discovery disputes and motions to compel. Second, while the PECs' proposal was intended to be neutral, the text offered by the DEC was not. Plaintiffs explained to the DEC that we were unwilling to join in a discovery submission that, in our view, so clearly diverges from the Court's instructions and asked them to reconsider. Because we were unable to reach agreement with the DEC on a joint report, we are providing this separate report. We note, though, that to the extent that the DEC's separate report is argumentative or otherwise impartial, we do not accede to the DEC's characterizations, but do not anticipate countering each disagreement at the present time unless the Court requests.

To briefly summarize, the United States Court of Appeals for the Second Circuit vacated the district court's dismissal of several defendants on personal jurisdiction grounds on April 16, 2013, concluding that plaintiffs' allegations warranted remand for jurisdictional discovery. *O'Neill v. Asat Trust Reg.* (*In Re: Terrorist Attacks on September 11, 2001* (Asat Trust Reg.)), 714 F.3d 659 (2d Cir. 2013). The remanded defendants include Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Muhsen al Turki, Adnan Basha, Dallah Avco, Yassin Abdullah al Kadi, and Soliman H.S. al Buthe. On August 22, 2013, plaintiffs served each of these defendants with consolidated jurisdictional requests for production of documents. Since the commencement of jurisdictional discovery, these defendants have collectively produced 286,453 pages of documents. *See* Attachment A. Plaintiffs have made multiple productions throughout these proceedings totaling approximately 776,193 pages of documents.

## The Charity Official Defendants

The Charity Official Defendants are Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah Muhsen al Turki, and Adnan Basha. Plaintiffs generally allege that these defendants "served as senior officials of one or more of al-Qaeda's front charities," "used their authority over those organizations to orchestrate their material support and sponsorship of al-Qaeda," and "acted with knowledge that the organizations under their control were channeling material support and resources to al-Qaeda, and that [such support] would be used to support al-Qaeda's *jihad* against the United States." *Asat Trust Reg.*, 714 F.3d 659, 667 (2d Cir. 2013) (emphasis original).[1]

As to each specific defendant, plaintiffs allege the following: (1) "Abdullah Omar Naseef founded the Rabita Trust ('Rabita'), served as Secretary-General of the Muslim World League ('MWL')," and "'knowingly provided financial support to al Qaeda, through the MWL, Rabita … and the IIRO [International Islamic Relief Organization];'" (2) "Abdullah Bin Saleh Al Obaid 'has held high leadership roles in numerous charities that operated as conduits for al Qaida financing, including the [MWL, Rabita, IIRO,] Sanabell, Inc., and Sanabel al-Khair,'" and "'was instrumental in funneling funds from the various organizations with which he was

---

[1] For each defendant discussed herein, plaintiffs incorporate and rely upon the Second Circuit's summation of plaintiffs' central allegations as to liability and personal jurisdiction, as described in *O'Neill v. Asat Trust Reg.*, 714 F.3d 659 (2d Cir. 2013). Plaintiffs did so in an effort to avoid unnecessary disputes and/or argument with the defendants concerning the characterization of plaintiffs' allegations.

The Honorable Sarah Netburn
Page 3
April 14, 2017

affiliated to Osama bin Laden and al Qaida to support their jihad against the United States;'" (3) "Abdullah Muhsen Al Turki served as 'Minister of Islamic Affairs, Member of the Council of Ministers and Head of the MWL,'" and "through those positions, 'knowingly used his authority to assist the Saudi charities in sponsoring Islamic extremists, including al Qaida;'" and (4) "Adnan Basha provided financial support to al Qaeda through his position as Secretary-General of the IIRO," and "the IIRO allegedly funded al Qaeda training camps in Afghanistan, 'including camps from which al Qaida planned, approved and coordinated the September 11th Attack, and at which some or all of the September 11 hijackers received indoctrination and training.'" *Id.* at 667-668. According to the Second Circuit, "these allegations suggest that the Charity Official Defendants ... directly provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States." *Id.* at 678.

Plaintiffs served their consolidated First Set of Jurisdictional Requests for Production of Documents Directed to the Charity Official Defendants on August 22, 2013. *See* ECF Nos. 3024-7-8 (Naseef), 3024-9-10 (Obaid), 3024-11-12 (Turki), and 3204-13-14 (Basha). Those requests generally seek *inter alia*: (i) documents detailing or describing each defendant's authority to supervise and direct the operations, activities, and policies of the charities; (ii) documents detailing or describing each defendant's management or supervision over the charities' funds, including control over the charities' accounts in any banking or financial institution; (iii) documents relating to the charities' organizational structure, funding, and activities, including but not limited to annual and periodic reports, financial reports, auditing reports, branch office reports, and delegation reports; (iv) documents relating to all delegations each defendant participated in as an official representative of the charities and/or Saudi government; (v) documents relating to all trips each defendant took to Sudan (between 1988-1997) and Afghanistan (between 1988-2002); (vi) documents relating to any information or notification received that the charities were involved in the sponsorship of radical, extremist, or terrorist organizations such as al Qaeda; (vii) documents relating to any investigation or inquiry into allegations that the charities, or the defendants themselves, were diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organizations; (viii) documents relating to any investigation or audit of the charities' banking and financial accounts, investments, or assets conducted by the Kingdom of Saudi Arabia or other third party; (ix) documents relating to any meetings the defendants participated in with representatives of the Saudi government, Saudi royal family, and/or representatives from other foreign governments or international bodies regarding any investigation or inquiry into allegations that the charities were providing material support to al Qaeda or other terror groups; and (x) documents detailing or describing the defendants' relationships with al Qaeda members Wa'el Hamza Jelaidan and Mohammed Jamal Khalifa.

The four Charity Official Defendants have collectively produced a total of 82 pages of documents in response to plaintiffs' jurisdictional discovery, consisting primarily of declarations and supporting attachments, biographies, curricula vitae, and resumes. Individually, defendant Naseef has produced 17 pages of documents (NASEEF0001-17), defendant Obaid has produced

The Honorable Sarah Netburn
Page 4
April 14, 2017

30 pages (AL-OBAID0001-30), defendant Turki has produced 34 pages (AL-TURKI0001-34), and defendant Basha has produced a single document (BASHA0001).

**Dallah Avco**

Defendant Dallah Avco, a Saudi-based company specializing in aviation services, is alleged to have "provided a 'ghost' job to Omar al Bayoumi, a Saudi citizen residing in San Diego who provided direct funding and support to two of the September 11th hijackers," Nawaf al Hazmi and Khalid al Mihdhar. *Asat Trust Reg.*, 714 F.3d 659, 671 (2d Cir. 2013). In reinstating the claims against Dallah Avco, the Second Circuit noted that "plaintiffs allege that Dallah Avco provided 'cover employment' for al Bayoumi while he was in the United States and allegedly supporting two September 11, 2001 hijackers." *Id.* at 679. "Accordingly, plaintiffs' allegations suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States, although questions about Dallah Avco's knowledge regarding al Bayoumi's activities remain." *Id.* The Second Circuit further concluded that plaintiffs' allegations "suggest a closer nexus between [Dallah Avco's] alleged support of al Qaeda and the September 11, 2001 attacks." *Id.*

Plaintiffs served their First Set of Jurisdictional Requests for Production of Documents Directed to Dallah Avco, ECF No. 3211-4, seeking *inter alia*: (i) documents relating to Bayoumi's secondment to Dallah Avco and his purported work on the Air Navigation Systems Support ("ANSS") aviation project in Saudi Arabia; (ii) documents identifying all individuals employed or contracted by Dallah Avco in the United States to perform any work or services on behalf of, or for the benefit of, Dallah Avco; (iii) documents relating to Dallah Avco's relationship with Ercan Engineering, an entity linked to Dallah Avco in connection with post-9/11 terrorism investigations targeting Bayoumi; (iv) documents relating to Dallah Avco's relationship with Fahad al Thumairy, a representative of the Ministry of Islamic Affairs in the Saudi Consulate in Los Angeles who had a long-standing relationship with Bayoumi during his secondment to Dallah Avco, and who was later stripped of his diplomatic visa and barred from the United States based on his ties to terrorism; (v) documents relating to Dallah Avco's relationship with officials of the Saudi Presidency of Civil Aviation ("PCA") and other government agencies with knowledge of Bayoumi's secondment; (vi) records for all projects, work or services performed by Dallah Avco on behalf of the Saudi government, for which Bayoumi performed any work or services; (vii) documents detailing and describing any investigation of Dallah Avco in relation to the September 11th attacks; and (viii) all documentation Dallah Avco collected and turned over in relation to any investigation of the September 11th attacks, Bayoumi, Saleh Abdullah Kamel, Dallah al Baraka, and/or al Qaeda. To date, Dallah Avco has produced over 10,900 pages of documents (DA000001-10988), including but not limited to: Bayoumi's alleged personnel file and employment records; correspondence from Bayoumi to Dallah Avco; correspondence between Dallah Avco and the Saudi Presidency of Civil Aviation ("PCA") concerning Bayoumi's secondment; documents detailing third party financial payments for Bayoumi's tuition and living expenses in the United States; documents relating to Ercan Engineering; and copies of the ANSS services contract.

### Yassin Abdullah Al Kadi

Defendant Yassin Abdullah al Kadi is alleged to have co-founded the Muwafaq Foundation, an al Qaeda charity front, with National Commercial Bank Chairman Khaled bin Mahfouz, for the purpose of "serv[ing] as a vehicle for funding and otherwise supporting terrorist organizations, including al Qaida." *Asat Trust Reg.*, 714 F.3d 659, 669 (2d Cir. 2013). Plaintiffs allege that Kadi "ran [Muwafaq] from 1992 through 1997," during which time, "(1) Muwafaq 'transferred millions of dollars from wealthy Saudi businessmen to al-Qaeda,' (2) Al Kadi 'spent roughly 15-20 million dollars of his own money on the day to day operations of Muwafaq,' and (3) Al Kadi selected managers for Muwafaq's regional branches." *Id.* at 678. "Moreover, Al Kadi allegedly was 'one of al Qaida's chief global financiers,'" and "'knowingly provided material assistance to Islamic terrorist groups such as al Qaida.'" *Id.* at 670. "On October 12, 2001, Al Kadi was designated as a Specially Designated Global Terrorist, or SDGT."[2] *Id.*

Plaintiffs served their consolidated First Set of Jurisdictional Requests for Production of Documents Directed to Yassin Abdullah al Kadi, and Plaintiffs' Second Set of Jurisdictional Requests for Production of Documents, seeking *inter alia*: (i) banking records for accounts held by Kadi at National Commercial Bank ("NCB"), Faisal Finance (Switzerland) S.A., and other financial institutions; (ii) documents detailing or describing Kadi's positions at NCB, including his oversight and control over NCB's operations and funds; (iii) documents detailing or describing Kadi's oversight and control over the Muwafaq Foundation's operations and funds; (iv) banking records for accounts held by the Muwafaq Foundation, including accounts for which Kadi held signatory authority; (v) documents relating to any investigation or inquiry into allegations that Kadi, the Muwafaq Foundation, or Muwafaq officials, were diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organizations; and (vi) documents relating to the U.S. Treasury Department's investigation and October 12, 2001 designation of Kadi as a Specially Designated Global Terrorist. To date, defendant Kadi has produced over 275,000 pages of documents (KADI000001-275383), consisting of the following: banking records; documents from the Swiss government's investigation of Kadi; documents from the U.S. Treasury Department's investigation and Executive Order 13224 designation of Kadi; and documents relating to investigations conducted by the United Nations, the United Kingdom, Turkey, and Albania.

### Soliman H.S. Al Buthe

Defendant Soliman H.S. al Buthe is alleged to have served as a senior official of the Al Haramain Islamic Foundation, an al Qaeda charity front, and used his authority over al Haramain "to orchestrate [its] material support and sponsorship of al-Qaeda." *Asat Trust Reg.*, 714 F.3d

---

[2] Defendant Kadi's designation was lifted by the U.S. Treasury Department on November 26, 2014. Kadi was also designated by the United Nations Security Council Committee Concerning Afghanistan on October 19, 2001, but that designation was similarly lifted on October 5, 2012.

The Honorable Sarah Netburn
Page 6
April 14, 2017

---

659, 667 (2d Cir. 2013). "[T]hrough his involvement as a director of Al Haramain's branch in the United States," defendant al Buthe "direct[ed] support to al-Qaeda." *Id.*

Plaintiffs served their consolidated First Set of Jurisdictional Requests for Production of Documents Directed to Defendant Soliman H.S. Al Buthe, ECF No. 2990-2, seeking *inter alia*: (i) documents detailing or describing al Buthe's positions at Al Haramain, including his oversight and control over Al Haramain's operations and funds; (ii) travel documents and passports; (iii) banking records for accounts held by al Buthe; (iv) banking records for accounts held by Al Haramain at Bank of America and other financial institutions, including accounts for which al Buthe held signatory authority; (v) documents relating to the U.S. Treasury Department's investigation and September 9, 2004 designation of al Buthe as a Specially Designated Global Terrorist;[3] and (vi) documents relating to the U.S. Treasury Department's investigation and September 9, 2004 designation of Al Haramain's Ashland, Oregon branch office as a Specially Designated Global Terrorist entity. Defendant al Buthe has produced a total of 0 documents since the commencement of jurisdictional discovery.

Respectfully submitted,

COZEN O'CONNOR

By: J. Scott Tarbutton

cc: The Honorable George B. Daniels (via ECF and Federal Express)
All MDL Counsel of Record (via ECF)

LEGAL\30053759\1

---

[3] Defendant al Buthe was also designated by the United Nations Security Council following the September 11th attacks, but that designation was lifted on February 10, 2013. He remains on the U.S. Treasury Department's designation list.