# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel* | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

April 14, 2017

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

    RE:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)
            <u>Merits Discovery Progress Report</u>

Dear Judge Netburn:

Pursuant to Your Honor's request at the March 23, 2017 status conference and the instructions set forth in the Court's March 24, 2017 Scheduling Order (ECF No. 3482), the Plaintiffs' Executive Committees write to provide the Court with a status report as to the progress of merits discovery.[1]

The defendants currently engaged in merits discovery include the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), World Assembly of Muslim Youth-Saudi Arabia ("WAMY"), World Assembly of Muslim Youth-International ("WAMY-Int'l"), Dubai Islamic Bank, Wa'el Hamza Jelaidan, and Perouz Sedaghaty. Since the commencement of merits discovery, these defendants have collectively produced 1,230,549 pages of documents. *See* Attachment A. Plaintiffs have made multiple productions throughout these proceedings totaling approximately 776,193 pages of documents.

## Muslim World League ("MWL")

Defendant MWL is the parent organization of the International Islamic Relief Organization ("IIRO"), and uses it as an "operational arm to perform many of its charitable

---

[1] For the same reasons described in the PEC's April 14, 2017 Jurisdictional Discovery Progress Report at pp. 1-2, plaintiffs were unable to reach an agreement with the Defendants' Executive Committee on a joint status report as to merits discovery.

The Honorable Sarah Netburn
Page 2
April 14, 2017

activities." *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 563 (S.D.N.Y. 2005).[2] Plaintiffs allege the MWL and other so-called charities "provided the vast majority of the funding that allowed al Qaeda to build and sustain its massive global infrastructure over the thirteen years leading up to the September 11th attacks," was "intimately involved in all aspects of al Qaeda's operations, and allowed al Qaeda to use their infrastructures and resources as platforms for carrying out jihad." *See* ECF No. 2927-1 at pp. 14-15. In particular, plaintiffs allege: MWL Secretary-General Abdullah Omar Naseef entered into an agreement with Osama bin Laden "that al Qaeda attacks would be launched from MWL offices;" Secretary-General Naseef "approved the appointment of Mohammed Jamal Khalifa, a founding al Qaeda member and Osama bin Laden's brother-in-law, to open a joint MWL/IIRO branch office in the Philippines contemporaneous with the formation of al Qaeda;" MWL officials have "issued statements calling for Muslims to support jihad" in "regions of strategic importance to al Qaeda;" and the MWL "played a role in supporting the 1998 U.S. Embassy bombings in Kenya and Tanzania." *Id.* at pp. 84-93.

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to the Muslim World League on October 28, 2005, Plaintiffs' First Set of Supplemental Requests for Production of Documents on April 21, 2006, and Plaintiffs' Second Set of Supplemental Requests for Production of Documents on August 22, 2013. Plaintiffs' requests seek *inter alia*: (i) annual, semi-annual, and other periodic financial reports of the MWL (including overseas branch offices), such as annual reports, financial statements, budget reports, bank account summaries, and audits; (ii) banking records for accounts held by the MWL (including overseas branch offices); (iii) reports submitted by MWL overseas branch offices concerning their operations and finances; (iv) lists of recipients of aid from MWL offices in Saudi Arabia and overseas branch offices; (v) documents relating to any investigation or inquiry into allegations that MWL was diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organization; (vi) documents relating to any investigation or audit of MWL's banking and financial accounts, investments, or assets conducted by the Kingdom of Saudi Arabia or other third party; and (vii) documents relating to the MWL's employment of al Qaeda members Wa'el Hamza Jelaidan, Mohammed Jamal Khalifa, and others. The MWL has produced over 178,000 pages of documents (MWL00001-64631; MWLIIRO000001-114255), including without limitation: annual reports; accounting, auditing, and other financial reports; banking records; meeting minutes for MWL committees; operations and activity reports; correspondence and reports concerning MWL's overseas activities, including construction of, and financial support to, mosques, Islamic centers, and madrassas; correspondence and reports relating to the MWL's sponsorship or participation in Islamic conferences and seminars; correspondence between the MWL's headquarters and its overseas branch offices; rules, regulations, and procedures for MWL's overseas branch offices;

---

[2] For each defendant discussed herein (except for the MWL which did not file a motion to dismiss with the district court), plaintiffs incorporate and rely upon the district court's summation of plaintiffs' central allegations as to liability, as described in *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 563 (S.D.N.Y. 2005) ("*Terrorist Attacks II*"), *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 488-489 (S.D.N.Y. 2010) ("*Terrorist Attacks IV*"), *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) ("*Terrorist Attacks V*"). Plaintiffs did so in an effort to avoid unnecessary disputes and/or argument with the defendants concerning the characterization of plaintiffs' allegations.

correspondence and reports relating to the MWL Constituent Council; correspondence between the MWL and the Saudi King and members of the Saudi Royal family; correspondence between the MWL and various Saudi government ministries; and correspondence between the MWL and Saudi embassies around the globe.

## International Islamic Relief Organization ("IIRO")

The IIRO has for many years "materially supported terror around the globe, including Osama bin Laden and al Qaeda." *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 563 (S.D.N.Y. 2005). "In the early 1990s, IIRO 'was rapidly becoming al Qaeda's foremost charity used as a means to transfer funds, personnel, and other means of material support.'" *Id.* Mohammed Jamal Khalifa "headed IIRO's Philippines office, which served as a center of terrorist financing and training." *Id.* "Khalifa collected and laundered money for al Qaeda through IIRO's Philippines office." *Id.* "Through Khalifa, IIRO was allegedly involved with bombings in Jordan in 1993 and 1994, the 1993 attack on the World Trade Center, plots to assassinate former President Bill Clinton and the late Pope John Paul II and to simultaneously blow up twelve American airliners, and the 1998 Embassy bombings in Africa." *Id.* Plaintiffs further allege that the "IIRO funded six al Qaeda training camps, including those from which it planned, approved, and coordinated the September 11 attacks and where hijackers received training and indoctrination." *Id.* "IIRO also works with numerous other charities allegedly affiliated with al Qaeda, including [Saudi Joint Relief Committee], [Benevolence International Foundation], Global Relief Foundation, Taibah International, Islamic African Relief Agency, and [World Assembly of Muslim Youth]." *Id.*

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to the International Islamic Relief Organization on December 13, 2005, Plaintiffs' First Set of Supplemental Requests for Production of Documents on April 21, 2006, Plaintiffs' Second Set of Supplemental Requests for Production of Documents on January 28, 2008, Plaintiffs' Third Set of Supplemental Requests for Production of Documents on March 30, 2012, and Plaintiffs' Fourth Set of Supplemental Requests for Production of Documents on August 22, 2013. Those requests seek *inter alia*: (i) annual, semi-annual, and other periodic financial reports of the IIRO (including overseas branch offices), such as annual reports, financial statements, budget reports, bank account summaries, and audits; (ii) banking records for accounts held by the IIRO (including overseas branch offices); (iii) reports submitted by IIRO overseas branch offices concerning their operations and finances; (iv) lists of recipients of aid from IIRO offices in Saudi Arabia and overseas branch offices; (v) documents relating to any investigation or inquiry into allegations that IIRO was diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organization; (vi) documents relating to any investigation or audit of IIRO's banking and financial accounts, investments, or assets conducted by the Kingdom of Saudi Arabia or other third party; (vii) documents relating to the IIRO's employment of al Qaeda members Wa'el Hamza Jelaidan and Mohammed Jamal Khalifa; (viii) documents relating to the U.S. Treasury Department's designations of the IIRO's Philippine and Indonesian branch offices, as well as a senior IIRO official, "for facilitating fundraising for al Qaida and affiliated terrorist groups;" and (ix) IIRO's role in supporting al Qaeda training camps in and around Afghanistan. To date, the IIRO has produced over 338,000

The Honorable Sarah Netburn
Page 4
April 14, 2017

pages of documents (IIRO000001-338421), including but not limited to: annual reports; accounting, auditing, and other financial reports; banking records; meeting minutes for the IIRO's Board of Directors, Executive Council, and other committees; operations and activity reports; correspondence and reports concerning IIRO's overseas activities, including construction of, and financial support to, mosques, Islamic centers, and madrassas; correspondence and reports relating to IIRO's sponsorship or participation in Islamic conferences and seminars; correspondence between IIRO's headquarters and its overseas branch offices; rules, regulations, and procedures for IIRO's overseas branch offices; correspondence between the IIRO and the Saudi King and members of the Saudi Royal family; correspondence between the IIRO and various Saudi government ministries; and correspondence between the IIRO and Saudi embassies around the globe.

### World Assembly of Muslim Youth-Saudi Arabia ("WAMY")

"Defendant World Assembly of Muslim Youth (WAMY), is alleged to be an al Qaeda front charity, headquartered in Saudi Arabia, which has a physical and operational presence in at least fifty-six countries. Plaintiffs allege that, for more than a decade WAMY has knowingly and intentionally used its international infrastructure as a tool to provide support to al Qaeda. Plaintiffs allege that WAMY disseminates literature worldwide calculated to promote global jihadist agenda, convince young Muslims to reject United States and democratic ideas, demonize Christians, Jews and non-Wahhabi Muslims, and convince young Muslims to engage in violent jihad against the West and Israel. WAMY allegedly uses its publications, youth camps, Islamic Centers, mosques conferences and other sponsored events, to provide ideological foundation for the al Qaeda movement, actively advocating for young Muslims to take up arms and engage in a violent jihad against the United States. Plaintiffs allege that WAMY has also supported the militant and terrorist activities of al Qaeda in Bosnia, Chechnya, Kosovo, Kashmir, Pakistan, South East Asia, the United States, and elsewhere. Acting on behalf of al Qaeda, WAMY has allegedly raised and laundered funds, performed reconnaissance missions, funded and facilitated al Qaeda training camps, and operated as a recruiting center." *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519 (S.D.N.Y. 2010).

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to the World Assembly of Muslim Youth-Saudi Arabia on December 10, 2010, Plaintiffs' Second Set of Requests for Production of Documents on October 28, 2011, Plaintiffs' Third Set of Requests for Production of Documents on July 31, 2012, and Plaintiffs' Fourth Set of Requests for Production of Documents on August 22, 2013. Those requests generally seek *inter alia*: (i) annual, semi-annual, and other periodic financial reports of WAMY (including overseas branch offices), such as annual reports, financial statements, budget reports, bank account summaries, and audits; (ii) banking records for accounts held by WAMY (including overseas branch offices); (iii) reports submitted by WAMY overseas branch offices concerning their operations and finances; (iv) lists of recipients of aid from WAMY offices in Saudi Arabia and overseas branch offices; (v) documents relating to any investigation or inquiry into allegations that WAMY was diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organization; and (vi) documents relating to any investigation or audit of WAMY's banking and financial accounts, investments, or assets conducted by the Kingdom of

Saudi Arabia or other third party. To date, WAMY-SA has produced over 692,000 pages of documents (WAMYSA000001-692360), including but not limited to: WAMY's constitution; annual reports; accounting, auditing, and other financial reports; operations and activity reports; reports concerning WAMY's overseas activities, including summer camps, Sharia courses, and construction projects; books and other Islamic publications disseminated by WAMY; correspondence and reports relating to WAMY's sponsorship or participation in Islamic conferences and seminars; documents concerning WAMY's sponsorship of Hajj activities and travel by Muslim pilgrims to the Saudi holy sites; correspondence and reports relating to WAMY's global activities; correspondence between WAMY and its overseas branch offices; regulations and procedures for WAMY's overseas branch offices; WAMY branch office foreign registration documents; and correspondence relating to the appointment of individuals serving as heads of WAMY's overseas branch offices.

### World Assembly of Muslim Youth-International ("WAMY-Int'l")

"Plaintiffs allege that WAMY had a physical presence in the United States, which it used to channel material support to al Qaeda. In 1992, Osama bin Laden's nephew allegedly established, in Virginia, the United States branch of WAMY, defendant World Assembly of Muslim Youth International (WAMY-Int'l). Plaintiffs further allege that, in 2002, federal authorities raided the offices of WAMY-Int'l in Virginia, in connection with an ongoing investigation into the sponsoring of al Qaeda." *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519 (S.D.N.Y. 2010).

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to the World Assembly of Muslim Youth-International on December 10, 2010, seeking many of the same operations and financial reports, banking records, and terrorism investigation documents requested from WAMY-Saudi Arabia above. WAMY-International has produced over 15,200 pages of documents (WAMYINTLE000001-15202). Those documents include but are not limited to: office bylaws and regulations; office invoices, bills, and receipts; banking records; requests for financial and other assistance; correspondence between WAMY-Int'l and WAMY headquarters in Saudi Arabia; correspondence between WAMY-Int'l and other WAMY branch offices; correspondence and reports relating to the operations and activities of WAMY-Int'l; correspondence and reports relating to WAMY-Int'l's sponsorship or participation in Islamic conferences and seminars; financial transfers between WAMY-Int'l and WAMY headquarters; and financial transfers between WAMY-Int'l and other WAMY branch offices.

### Dubai Islamic Bank ("DIB")

"Plaintiffs allege that, in 1999, the United States government announced that DIB was laundering money for Osama bin Laden. United States intelligence officials had allegedly obtained evidence that Osama bin Laden had a financial relationship with DIB, which was believed to have been arranged with the approval of the officials who control the bank. Plaintiffs further allege that, in 1999, United States officials visited the United Arab Emirates to put a halt to such a relationship by demanding the government end its purported lax supervision of the bank. DIB allegedly continued to knowingly provide financial and other forms of material aid to Osama bin Laden and al Qaeda, while disregarding the warnings and refusing to adhere to even

Case 1:03-md-01570-GBD-SN   Document 3516   Filed 04/14/17   Page 6 of 8

The Honorable Sarah Netburn
Page 6
April 14, 2017

minimal banking industry standards designed to thwart the support of terrorist networks through anti-terrorist and money laundering safeguards, and 'know your customer' regulations. Plaintiffs claim that, in addition to bin Laden being allowed to funnel money through the bank, al Qaeda operatives used their bank accounts at DIB to send money to suspect charities. Plaintiffs further allege that DIB itself provided direct financial services and support for the attacks against the United States on 9/11. Specifically, plaintiffs allege that the bank account of Osama bin Laden's Chief Financial Officer was the source of thousands of dollars of money transfers from DIB to two of the hijackers. The sole purpose of those fund transfers was allegedly to pay for the hijacker's training, including flight lessons, and other expenses incurred in preparing for the 9/11 terrorist attacks." *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 488-489 (S.D.N.Y. 2010).

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Dubai Islamic Bank on October 15, 2010, and Plaintiffs' Supplemental Requests for Production of Documents on July 31, 2012. *See* ECF Nos. 2973-13 and 2973-18. Those requests generally seek *inter alia*: (i) banking and financial records for DIB accounts held by members of al Qaeda (including those directly linked to the 9/11 plot), financiers of the terror group, and al Qaeda charity fronts; (ii) banking and financial records for DIB accounts held by members of the Taliban; (iii) banking and financial records for DIB accounts that were frozen following the 9/11 attacks; (iv) documents relating to DIB's involvement in the funding of the 1998 U.S. Embassy bombings; and (v) documents relating to the 1998 and 1999 meetings between U.S. officials and representatives of DIB and the U.A.E. government concerning al Qaeda's use of the bank to launder and move money. Since the commencement of merits discovery, DIB has produced over 5,500 pages of documents (DIB_000001-5576), including but not limited to: media reports and other publications; U.S. congressional committee reports and hearing testimony; U.N. Security Council Resolutions; circulars authored and distributed by the Central Bank of the U.A.E.; DIB administrative records, including employee regulations and guidelines; DIB memoranda and guidelines concerning prevention of money laundering; internal auditing department reports; account statements; account transactional records; and other account records.

**Wa'el Hamza Jelaidan**

Defendant Wa'el Hamza Jelaidan, alleged to be "one of the founders of al Qaeda," "operated [Muslim World League] offices that served in the early days of al Qaeda to attract and train holy warriors from around the world for the war in Afghanistan" and "repeatedly aided and abetted terrorists." *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 561 (S.D.N.Y. 2005). The U.S. Treasury Department designated defendant Jelaidan on September 6, 2002 as a Specially Designated Global Terrorist, and "characterized [him] as having 'directed organizations that have provided financial and logistical support to al-Qa-ida, [he] is the logistics chief of bin Laden's organization and fought on bin Laden's side in Afghanistan.'" *Id.* "Further, Osama bin Laden and his lieutenant, Abu Zubaydah, allegedly 'have acknowledged Wa'el Julaidan as a known associate of their operations.'" *Id.*

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Defendant Wa'el Hamza Jelaidan on June 13, 2006 seeking *inter alia*: (i) banking and financial records, including documentation relating to an account Jelaidan held jointly with Osama bin Laden; (ii) documents relating to Jelaidan's employment with, and oversight of, the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Rabita Trust, Saudi Joint Relief Committee ("SJRC"), and Al Haramain & Al Masjed Al Aqsa Charity Foundation ("AHAMAA"); (iii) documents relating to any investigation or inquiry into allegations that Jelaidan and the charities were diverting funds or providing material support to Islamic extremists, al Qaeda, or other terror organizations; (iv) documents relating to the U.S. Treasury Department's investigation and September 6, 2002 designation of Jelaidan as a Specially Designated Global Terrorist; and (v) documents relating to Jelaidan's relationship with other prominent financial supporters of Osama bin Laden and al Qaeda. Since the commencement of merits discovery, defendant Jelaidan has produced 104 pages of documents (WJ001-022), consisting of affidavits, bank records, audit reports, correspondence, media reports, and a resume.

### **Perouz Sedaghaty**

"Defendant Perouz Sedaghaty purportedly was a founder of AHIF-USA, and served as its Secretary." *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 520 (S.D.N.Y. 2010). "[Al Haramain Islamic Foundation] is a purported charitable organization, headquartered in Saudi Arabia, which operated through its branch offices in nearly fifty countries. Plaintiffs allege that AHIF and its branch offices are under a single management, and are so intertwined so as to be deemed to be operating as a single entity. AHIF's website allegedly had a direct link to al Qaeda's site pertaining to its Chechen operations. Additionally, AHIF was allegedly banned from Kenya for national security concerns related to the 1998 United States embassy bombings in Africa. Intelligence officials throughout the world have allegedly acknowledged that AHIF is a charity front which exploits its non-profit status for the benefit of Osama bin Laden and al Qaeda. Several of its branches have been designated as terrorist organizations, including its branch in the United States, AHIF-USA. *Id.*

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Perouz Sedaghaty on December 10, 2010, and Plaintiffs' Supplemental Requests for Production of Documents on July 31, 2012. Those requests seek *inter alia*: (i) documents detailing or describing Sedaghaty's positions at Al Haramain, including his oversight and control over Al Haramain's operations and funds; (ii) banking records for accounts held by Sedaghaty; (iii) banking records for accounts held by Al Haramain at Bank of America and other financial institutions, including accounts for which Sedaghaty held signatory authority; (iv) documents relating to the U.S. Treasury Department's investigation and September 9, 2004 designation of Al Haramain's Ashland, Oregon branch office as a Specially Designated Global Terrorist entity; and (v) documents relating to the criminal trial of Sedaghaty in *U.S. v. Pirouz Sedaghaty*, Case No. 05-CR-60008-HO. To date, the defendant has produced 0 documents.

The Honorable Sarah Netburn
Page 8
April 14, 2017

Respectfully submitted,

COZEN O'CONNOR

By: /s/ J. Scott Tarbutton

cc:   The Honorable George B. Daniels (via ECF and Federal Express)
      All MDL Counsel of Record (via ECF)

LEGAL\30054304\1