# BERNABEI & KABAT, PLLC

ATTORNEYS AT LAW
1775 T STREET, N.W.
WASHINGTON, D.C. 20009

| | | |
|---|---|---|
| **LYNNE BERNABEI** | 202.745.1942 | **KRISTEN SINISI** |
| **ALAN R. KABAT** | FAX: 202.745.2627 | **DEVIN WRIGLEY** |
| **PETER M. WHELAN** | WWW.BERNABEIPLLC.COM | |

By ECF
April 14, 2017

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

    Re:  *In Re Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

    Pursuant to Your Honor's request at the March 23, 2017 status conference and the instructions set forth in the Court's March 24, 2017 Scheduling Order (ECF No. 3482), the Defendants' Executive Committee write to provide the Court with a status report regarding the progress of both merits discovery and jurisdictional discovery.

    Plaintiffs' counsel circulated a proposal for this letter, and Defendants circulated a counter proposal.  Undersigned counsel was informed by plaintiffs this afternoon that they did not wish to engage in the process of combining our proposals into a single letter.  In contravention of this Court's order that we file a "joint status letter from the Plaintiffs' and Defendants' Executive Committees," (ECF No. 3482) plaintiffs chose to file their own letter without meeting and conferring with Defendants.  Accordingly, this letter contains Defendants' descriptions of the allegations, bases for discovery, and the nature of the discovery.

    This report addresses those defendants who are currently in active discovery; the first section addresses the merits discovery defendants, and the second section addresses the jurisdictional discovery defendants.

### I.     Merits Discovery Defendants.

**Dubai Islamic Bank (DIB).**

As Judge Daniels characterized the allegations in his 2010 order, plaintiffs allege that DIB was an "intentional, knowing and direct participant in providing money laundering services to al Qaeda, which allowed for direct funding of terrorist attacks." *In Re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 489 (S.D.N.Y. 2010). At Plaintiffs' request, DIB has produced banking records, certain correspondence with U.S. and foreign government entities, internal bank training materials and policies and procedures, documents related to allegations of affiliations with Al Qaeda, and documents related to the embassy bombings and the Taliban. At DIB's request, plaintiffs have produced any document that plaintiffs plan to use in their case concerning DIB, including but not limited to all documents concerning allegations and claims against DIB, all documents relevant to DIB's or plaintiffs' claims or defenses, and all documents concerning DIB. DIB has produced 4,410 pages. Plaintiffs have produced 1,062 pages to DIB.

**Muslim World League (MWL).**

Plaintiffs allege that MWL provided funding that allowed al Qaeda to build its global infrastructure and was "intimately involved in all aspects of al Qaeda's operations, and allowed al Qaeda to use their infrastructures and resources as platforms for carrying out jihad." *See* Plaintiffs' Opposition to the KSA/SHC motion to dismiss (ECF 2927-1, at 14-15) (Feb. 3, 2015). In response to Plaintiffs' over 100 document requests, MWL has produced, inter alia, periodic financial reports of the MWL (including overseas branch offices), banking records, reports submitted by MWL overseas branch offices concerning their operations and finances, lists of MWL projects in Saudi Arabia and overseas branch offices, and documents relating to the MWL's employment of Wa'el Hamza Jelaidan and Mohammed Jamal Khalifa. MWL has produced 64,631 pages to date. An additional 114,255 pages of joint MWL/IIRO records were copied by Plaintiffs after their in-person review of documents that were made available to them. At MWL's request, Plaintiffs have produced any document that they intend on using in their case against MWL. Plaintiffs have produced 27,792 pages to MWL.

**International Islamic Relief Organization (IIRO).**

Plaintiffs allege that IIRO has for many years "materially supported terror around the globe, including Osama bin Laden and al Qaeda." *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 563 (S.D.N.Y. 2005). In response to Plaintiffs' over 100 document requests, IIRO has produced, inter alia, periodic financial reports of the IIRO (including overseas branch offices), banking records, reports submitted by IIRO overseas branch offices concerning

their operations and finances, lists of recipients of aid from IIRO offices in Saudi Arabia and overseas branch offices, and documents relating to the IIRO's employment of Mohammed Jamal Khalifa and Abdul Hamid Al Mojil.  IIRO has produced 338,421 pages to date.  An additional 114,255 pages of joint MWL/IIRO records were copied by Plaintiffs after their in-person review of documents that were made available to them.  At IIRO's request, Plaintiffs have produced any document that they intend on using in their case against IIRO.  Plaintiffs have produced 47,685 pages to IIRO.

**World Assembly of Muslim Youth International and World Assembly of Muslim Youth Saudi Arabia (collectively, WAMY).**

Plaintiffs allege that WAMY violated the Anti-Terrorism Act by providing material support to Al Qaeda, the perpetrators of the terrorist acts committed in the United States on September 11, 2001.  Plaintiffs allege that WAMY was a conduit for financial support and other means of support to Al Qaeda, and that WAMY was involved in the production and/or distribution of Al Qaeda training manuals, propaganda, and hate literature aimed against Americans, Christians, and Jews.  WAMY denies these allegations.

Plaintiffs served four sets of document request to WAMY.  The third and fourth document requests were untimely.  In response to the 201 requests that were timely, WAMY has produced financial reports, operational reports, budget reports, audits, financial transfers and bank statements.  It has also produced documents related to the projects it undertakes, which include support to orphans, digging of wells, building of schools, hospitals, assistance to refugees, medical camps, summer camps, and conferences, reports on its activities, reports about its organizational structure and the relation between its headquarters and chapters.  To date, WAMY has produced 707,562 pages of documents. This number includes documents produced on behalf of WAMY USA.  WAMY is still supplementing its production.

**Perouz Sedaghaty.**

Plaintiffs' allegations regarding Mr. Sedaghaty are based entirely on his role as a former officer of the Al Haramain Islamic Foundation, Inc. (USA), which plaintiffs alleged indirectly supported terrorism.  Plaintiffs served him with two sets of requests for production containing 106 document requests.  Therefore, Mr. Sedaghaty has relied upon the over 81,400 pages of documents produced by that (now-defunct) organization.  That production includes his own documents relating to his trial and his successful appeal that resulted in a reversal and a dismissal of the indictment, and also includes numerous other documents and emails (reflecting his communications) that were seized from the charity's office, which was also his former residence.

The Honorable Sarah Netburn
April 14, 2017
Page 4 of 6

## II. Jurisdictional Discovery Defendants.

### Dallah Avco

Dallah Avco is currently engaged in jurisdictional discovery on remand from the Second Circuit. Plaintiffs allege that Dallah Avco should be held liable for the September 11th attacks because Dallah Avco purportedly employed Omar al Bayoumi, an individual alleged to have provided certain assistance to two hijackers in San Diego more than a year before the attacks, including by helping them rent an apartment. After the district court dismissed Dallah Avco on jurisdictional grounds, the Second Circuit remanded for jurisdictional discovery. The Second Circuit agreed with Dallah Avco that the company was not subject to jurisdiction on a respondeat superior basis because al Bayoumi's alleged assistance to the two hijackers was not within the scope of his employment. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013). But the Second Circuit remanded for discovery into whether Dallah Avco had provided "cover employment" for al Bayoumi while he was assisting the hijackers, noting that "questions about Dallah Avco's knowledge regarding al Bayoumi's activities remain." *Id.*

Plaintiffs served their jurisdictional discovery document requests on August 22, 2013. Some of the requests related to Dallah Avco's relationship with al Bayoumi. Others sought discovery into a wide range of largely unrelated topics, such as Dallah Avco's relationship with the Kingdom of Saudi Arabia or purported connections to other individuals or entities whose names have surfaced in connection with the September 11th attacks. Dallah Avco completed its document search and resulting production in June 2015. Plaintiffs moved to compel, and on January 18, 2017, this Court largely denied the motion but ordered Dallah Avco to search for certain additional discrete categories of documents. Dallah Avco is currently in the process of complying with that order. To date, Dallah Avco has produced 21 volumes of documents containing approximately 10,899 pages of documents. Those documents include al Bayoumi's employee file and various other personnel and financial records related to al Bayoumi; documents related to Dallah Avco's Air Navigation Systems Support (ANSS) contract under which Dallah Avco processed al Bayoumi's payroll; documents related to other individuals who, like al Bayoumi, were seconded from the Saudi government to the ANSS project; and documents related to Ercan Engineering.

### Yassin Kadi

Plaintiffs' allegations against Mr. Kadi as to liability are, in brief, that through various personal and organizational affiliations he somehow had a causal relationship with the terrorist attacks of September 11, 2001.

The Honorable Sarah Netburn
April 14, 2017
Page 5 of 6

Plaintiffs' allegations supporting personal jurisdiction over Mr. Kadi are similar to the allegations as to liability, that through various personal and organizational affiliations he "*directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 678 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 2870 (2014) (italics in original).

Plaintiffs have asked Mr. Kadi for virtually every document pertaining to his business and other financial affairs, his relationships with various persons and entities, investigations of allegations that he financed terrorist activities, and his travels to various countries. Plaintiffs propounded two sets of document requests to Mr. Kadi. The first set, served August 22, 2013 and covering the period January 1, 1992 to "the present," consisted of 111 numbered document requests, supplemented with three lists of 45 persons and 71 entities as to which two document requests applied, for a total of 337 document requests. (Decisions by Judges Daniels and Maas, rendered at various times regarding certain defendants, set the temporal limits of document discovery at the period 1992 through 2004.) A second set of document requests, with no time frame stated, was directed at 29 additional persons and entities and accounts at 30 banks, making a total of 396 document requests to Mr. Kadi. Every subject arguably related to the allegations against him, and many that are not, is covered.

Mr. Kadi produced documents responsive to all of Plaintiffs' document requests, without waiving any objections to the breadth or relevance of those requests. Mr. Kadi has not withheld any requested documents except based on privilege or work product protection (and a small number of documents, fewer than 20 in number, that were produced in discovery in U.K. litigation in which Mr. Kadi was involved, the disclosure of which is prohibited by U.K. law). Mr. Kadi's document production in this jurisdictional discovery stage is complete. He has produced 139,817 documents, comprising 275,383 pages.

**Dr. Abdullah Al-Turki, Dr. Abdullah Naseef, Dr. Abdullah Al-Obaid, Dr. Adnan Basha, and Mr. Soliman Al-Buthe.**

The Second Circuit remanded these five defendants (the first four were former officers of the MWL and/or IIRO, and the fifth was a former officer of Al Haramain Islamic Foundation, Inc. USA), for the limited purpose of jurisdictional discovery to address the following issues:

(a) Whether they "allegedly controlled and managed some of those charitable organizations;"

      (b) Whether, "through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States;"

      (c) Whether they "*directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States;"

      (d) "Whether this support was 'expressly aimed' at the United States;" and

      (e) "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how these defendants were involved in the process of providing support to al Qaeda."

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 678-79 (2d Cir. 2013) (emphasis in original), *cert. denied*, 573 U.S. __, 134 S. Ct. 2870 (2014). Further, "the plaintiffs must establish that [defendants] 'expressly aimed' intentional tortious acts at residents of the United States." *Id.* at 675 (citations omitted).

      The plaintiffs' allegations as to liability and their allegations supporting personal jurisdiction arise from these defendants' role as former officers of the charities, as circumscribed by the Second Circuit. The 536 document requests (supplemented with three lists of 106 persons and entities) served on these five defendants are largely the same as those served on the charities. Therefore, these five defendants are primarily relying upon the documents produced by the respective charities (over 81,400 pages for Al Haramain USA and over 577,300 pages for MWL and IIRO), and will be supplementing their responses over the next two months to provide further indexing of those documents and to produce any additional responsive documents that may be in their personal possession.

                                          Sincerely,

                                          /s/ Alan R. Kabat

                                          Alan R. Kabat
                                          Defendants' Executive Committee

cc: Counsel of Record (ECF)