```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RE:  911 Litigation                         03 MD 1570


------------------------------x
```

April 24, 2017
10:40 a.m.

Before:

> HON. SARAH NETBURN,
>
> U.S. Magistrate Judge

1          (Teleconference in Chambers)

2          THE COURT:  Good morning.  This is Judge Netburn.  I
3   am here with my law clerk and with a court reporter.  I am
4   going to ask that those parties who intend to speak, state
5   their appearances for the record.  Anybody who is on the phone
6   but who will not be speaking doesn't need to state their
7   appearance.

8          If any of such people choose to speak, they can state
9   their appearance when they do.  Let me remind everybody that we
10  do these telephone conferences as an accommodation to the
11  lawyers, but it is important, one, that everybody identify
12  themselves every time they speak so that the court reporter can
13  properly attribute your statements to the appropriate person,
14  and that the parties avoid jumping in and speaking over one
15  another.  I know that can be hard when you don't have the body
16  language for queues, but if everyone can just be cognizant for
17  that.

18         Why don't I ask those lawyers from the plaintiff's
19  executive committee who are going to be speaking to state their
20  appearance.

21         MR. HAEFELE:  So you understand, your Honor, based on
22  what your order had said, we only sent the call information out
23  to PC folks and defense lawyers.  So I think there are only
24  about six or seven people on the call.

25         THE COURT:  Okay, that is fine.  Who will be speaking

1    for Saudi Arabia?
2             MR. KELLOGG:  Good morning, your Honor.  Michael
3    Kellogg, and I am here with Greg Hathaway.
4             THE COURT:  Wonderful.  I appreciate everyone making
5    themselves available at relatively short notice.  We were
6    drafting an order to respond to the competing issues, and it
7    occurred to me that it would probably be easiest if we just had
8    a quick call to talk through some of my questions.
9             The first question that I have here -- sorry.  Let me
10   put you on hold for one second.
11            (Continued on next page)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          THE COURT:  Sorry about that.
2          So, my first question is with respect to this issue
3  raised in the first instance by the Kingdom of Saudi Arabia,
4  that it was reserving rights to challenge the adequacy of the
5  information provided by the plaintiffs in the short-form
6  complaint and suggesting that the short-form complaint state
7  that parties may, if they like, add additional pages of
8  information.
9          What I would like to do is, in the first instance,
10 hear from Saudi Arabia about what it is that they think is
11 deficient.  I also want to hear from the plaintiffs' executive
12 committee.  I see that in the original short-form complaint,
13 which I have in front of me, there was significantly more
14 information under the category of identification of parties,
15 information about relationships, information about the nature
16 of the personal injury; and all of that was omitted in the
17 final version that was submitted after the plaintiffs'
18 executive committee received comments back from various
19 plaintiffs lawyers.
20         So, my question to the parties -- again, to Saudi
21 Arabia -- is, what exactly is it looking for and whether or not
22 the information that was on the original short-form complaint
23 would be better, and then to hear from the plaintiffs'
24 executive committee why that information that was initially
25 proposed was omitted.

1          And one final comment:  I am reluctant to do as Saudi
2    Arabia proposes, by inviting parties, if they so choose, to add
3    additional pages, because my sense is that, knowing lawyers as
4    I do, if they're invited to submit more words, they will, and
5    so I fear that this invitation will be taken up by most lawyers
6    and we start to lose the benefit of the short-form complaint.
7          Let me first begin with Mr. Kellogg.
8          MR. KELLOGG:  Okay.  Thank you, your Honor.  Michael
9    Kellogg on behalf of Saudi Arabia.  We are absolutely fine with
10   that.  We do not want to put a burden on the parties or the
11   Court to do detailed descriptions at this point.  We just want
12   to make sure -- and the plaintiffs, in their letter, now
13   acknowledge -- that we would reserve the right to challenge the
14   sufficiency of allegations on injury causation, should it ever
15   come to that stage in the proceedings.  Even in other cases
16   where short-form complaints have been filed, like the Deepwater
17   Horizon or some of the medical device cases that the plaintiffs
18   cite, generally more information is provided than they are
19   providing here.
20         That said, you're probably correct that an open-form
21   invitation to have more may make it too cumbersome.  So, as
22   long as it's clear that we have the right down the road, should
23   it ever become necessary, to challenge the injury causation
24   allegations and require more specific statement, that's fine.
25   We just did not want to be waiving those rights.

1     THE COURT:  So let me ask you a couple of related
2  questions.  The first is -- and I don't know if you have it in
3  front of you -- the original form that the executive committee
4  had proposed, which did have more information on it than what
5  they ultimately proposed.  So, one question I had for you is
6  whether or not adding that information back into the short-form
7  complaint would facilitate the process.
8     And then the second question I have for you is:
9  Recognizing your desire to reserve your rights to challenge the
10  adequacy, what I don't want is, whenever that phase presents
11  itself, for the plaintiffs to now have to file another amended
12  complaint, inviting another opportunity for delay, motion
13  practice, et cetera.
14     So, to the extent we think that there would be a
15  future opportunity for the plaintiffs to plead their
16  allegations with more precision, when that becomes appropriate,
17  could we proceed at that time, which I realize may be years
18  from now, with some sort of supplemental filing rather than a
19  new amended complaint?
20     MR. KELLOGG:  In answer to your second question first,
21  yes, I think that would be fine.  In answer to your first
22  question, unfortunately, I don't have right in front of me --
23  I'm trying to pull it up -- the original short-form complaint.
24     THE COURT:  I can give you the docket number.  It's
25  3502-2.

1             MR. KELLOGG:  Okay.  And that has injured parties
2     diagnosed, with approximate date and location of injury?
3             THE COURT:  Correct.
4             MR. KELLOGG:  Yes, that would be a better version than
5     what they are offering now.
6             THE COURT:  Okay.
7             Let me now ask from the plaintiffs' executive
8     committee if you can share it without violating any confidences
9     that you might have with your colleagues --
10            MR. HAEFELE:  Sure, your Honor.
11            THE COURT:  -- why you modified it?
12            MR. HAEFELE:  Sure.  Your Honor, this is Robert
13    Haefele, from Motley Rice.
14            The reason we did was, essentially, after we had
15    circulated -- after we had sent it out on ECF, I started to
16    receive calls from some of the other, newer, plaintiffs'
17    lawyers or lawyers for the plaintiffs that have yet to file,
18    and I heard feedback that, quite frankly, we hadn't really
19    taken to heart at the time that we were putting together the
20    proposal.  And what I was hearing made me think that they had
21    very good rationales for wanting the additional input, and that
22    prompted the letter to your Honor.
23            The way we saw it was, the purpose of this, as your
24    Honor probably knows, I'm sure, is to promote efficiency in
25    filing the amended complaints.  And any of the burdens that

1  took away from that efficiency, especially when it wouldn't
2  change how we anticipated the defendants would respond to the
3  complaint, seemed to take away from the efficiency.
4          Most of all, what we were hearing was complaints about
5  things that would be added to the short-form complaint where
6  there's a multiplaintiff complaint.  And some of these
7  complaints may have many plaintiffs in them, where it would
8  require an actual individual filling-out for every single
9  plaintiff.  It took away the efficiency of actually doing the
10 short form and would cause those folks probably to just slap
11 their plaintiffs into a consolidated amended complaint and
12 would file it and would take away the whole incentive to use
13 the short form at all.  What they were looking for was
14 something that they could do everything generally regarding all
15 the plaintiffs in the short form and then have a simple
16 attachment that's attached to the end in a spreadsheet that
17 included the plaintiffs' specific information.
18         That's really where we ended up in the long run.  And
19 then when we started looking at what was needed in the
20 complaint that was plaintiff-specific, that's where we ended up
21 with what we put on the back side, on the attachment.
22         THE COURT:  Okay.
23         So I think that the attachment, the Exhibit 1 to the
24 short-form complaint, which I think in the short-form complaint
25 is referred to as Exhibit A, is insufficient, from my

1  perspective.  I would request that this be modified, though I
2  think, depending on what we end up with in the short-form
3  complaint, it may no longer be necessary.  But I think it's
4  critical that, in the first instance, information regarding the
5  plaintiffs' relationship to what I'll call a direct victim is
6  set forth, because in the exemplar that you've provided here,
7  it's impossible for me to know whether or not Mary Ames is a
8  spouse of a decedent or a next-door neighbor of a decedent;
9  and, obviously, as you know from the Iran judgments, the
10 relationship is critical, and I would like lawyers to at least
11 be thinking about that issue when they're filing complaints.
12 And I know that there are outstanding questions about how far
13 the scope of claims exceeds beyond immediate family members,
14 but I think that that information is important.
15         I also think that questions about nationality,
16 particularly and explicitly on September 11th, 2001, is
17 important, again, for some of the reasons that I have
18 experienced in connection with the Iran case.
19         And I think stating the nature of the claim -- so,
20 again, using your exemplar, it's not clear to me whether or not
21 Mary Ames was injured but not killed, at, let's say, the towers
22 or whether or not she is a relation to somebody who was killed
23 at the towers.  So, I do think the limited information that you
24 have in this exemplar exhibit is inadequate.  I think it's
25 unfair to the defendants and it doesn't provide the Court with

sufficient information.  And some of that information is in the original list that was provided.

I guess with respect to your colleague's concern that the short-form complaint might get too expansive, I think that there may be a way to modify what was originally in the complaint with what I think is critical information.

So, I would require, in either the short-form complaint or the exhibit -- but I do think if we can just put it in the short-form complaint, that's the better practice -- to have the nature of the injury that is being brought, so sometimes it's being brought as a wrongful death claim by an administrator, sometimes it's being brought by somebody who was a direct physical victim of the terrorist attacks, and sometimes it's a solution claim, so I think the nature of the claim needs to be set forth in the short-form complaint; I think the relationship, which I think was related to the nature of the claim; questions about residency, and I think there's a question about -- in your exemplar you have at the commencement of the litigation.  I haven't looked at this issue closely but I have a question as to whether or not residency at the time you filed the complaint is the relevant point or whether or not it's when the injury was first suffered, meaning where everybody lived on September 11th, 2001.  I'm not ruling on that issue, just to be clear.  I know that's a legal question with choice-of-law questions at play but there may be

1    additional residency requirements that are needed.
2              So, I'm wondering whether or not adding that sort of
3    information, maybe without the diagnosis information, which I
4    appreciate may be more complicated, that might be a good
5    compromise so that the defendants understand who's bringing a
6    solatium claim, who's bringing a wrongful death claim, who was
7    an injured party, and respect to solatium claims, what the
8    nature of the relationship was.
9              MR. HAEFELE:  Your Honor, it's Robert Haefele.  May I
10   respond?
11             THE COURT:  Yes.
12             MR. HAEFELE:  I think, for the most part, that all
13   sounds very reasonable.  I think it's not a problem, from the
14   plaintiffs' perspective, with a few additional comments.
15             The need for information regarding the relationships
16   to the direct victim, I think that you're absolutely right with
17   regard to -- we found that important in the Iran context; same
18   probably thing with the nationality.
19             As I understand your comments regarding the nature of
20   the claim, you're just talking about a notation that there is
21   an injury that's from 9/11 or the person was killed on 9/11 or
22   that they have a particular relationship.  You're not asking
23   for a narrative, you're just asking for a reference as to what
24   category the claim is in?
25             THE COURT:  Correct.

1          MR. HAEFELE:  Okay.
2          Now, if we took those items and put them into the
3  spreadsheet at the back end, would that suffice?
4          THE COURT:  I think that that would -- I'd like to
5  hear from Mr. Kellogg, but I think that would put the
6  defendants on significantly more notice than they are in the
7  current form, so that they can appreciate, for instance, how
8  many people were bringing solatium claims versus actual
9  wrongful death claims; and with respect to those solatium
10 claims, how many of them are immediate family members, how many
11 claims are being brought by more distant family members, that
12 they can evaluate what the liability might be with respect to
13 those claims, I think that that would assist.
14         And it may be still that many years from now, when we
15 start talking about damages, there might need to be an
16 additional, more detailed, narrative filing, but I think that
17 that would put everybody on much greater notice than the
18 proposed short-form complaint does now.
19         Mr. Kellogg, do you --
20         MR. HAEFELE:  Thank you, Judge.  Well, let me just add
21 one additional thing.  It's still Robert Haefele.
22         With regard to whether it's in the body of the short
23 form versus at the end, I think there is a pretty strong
24 preference not to make it such that an individual form needs to
25 be filled out for each individual plaintiff.  And that's why

1   there's a strong preference to put it into the Exhibit 1 or
2   whatever you want, the Exhibit 1 to the short-form complaint,
3   versus in the body.
4            THE COURT:  I think that that's fine.  And maybe I
5   would throw out one other concept, just for case management,
6   which is something I'm very focused on in this case, that to
7   the extent you have people who are better at IT than I am, it
8   may be that this exhibit can be also emailed to the plaintiffs'
9   executive committee such that they can consolidate everybody's
10  claims, and if we ever needed a master list, we would have
11  that.
12           MR. HAEFELE:  I think that's a good suggestion.
13           THE COURT:  So, what I would like to do is have you
14  take one more shot at this, incorporating some of the comments
15  that we have discussed here, which I think will facilitate the
16  notice concerns that Saudi Arabia reasonably raised, as well as
17  their request about service issues, so that should be made more
18  clear, that people need to request a waiver of service.
19           Let me ask another question with respect to process.
20  In the proposed order that you submitted to me, it indicated
21  that a party who is filing a new complaint will file the
22  short-form complaint in the individual docket of that case, so,
23  a 2017 docket number, and then request that that case be deemed
24  related to the MDL.  It then indicates that steps should be
25  taken to ensure that the short-form complaint is also docketed

1    in the MDL.  And I don't think that that is necessary but I
2    wanted to just confirm with the parties if they thought that
3    was needed.  From a case management perspective, I don't think
4    we need every related complaint to be also filed in the MDL, so
5    long as it's filed in its own docket.
6               MR. HAEFELE:  I think the intention of that, your
7    Honor, was to ensure that it got picked up in the MDL.  And I
8    think you're right, it probably doesn't necessarily need to be
9    docketed in the MDL, but, as I think your Honor may recall, we
10   had one instance of one of the Iran cases -- in fact, it was
11   the Burnett Iran case -- that ended up it got filed, it got
12   requested to be related and then never ended up, for some time,
13   getting moved and recognized in the MDL.  We wanted to make
14   sure that that didn't happen.
15              THE COURT:  So, if I can ask that you -- we're going
16   to omit that from the proposed order, and in the future, if you
17   have a circumstance where a case is not being related to the
18   MDL, your first line of attack is to call -- there's an MDL
19   clerk, an administrative court clerk, who should be able to
20   facilitate that, but if that doesn't work, just send a letter
21   to my chambers, and we'll take care of it.
22              MR. HAEFELE:  Thank you, your Honor.
23              While we're on that issue, if I can raise one what I
24   think is a related point, and I don't know whether your Honor
25   has the ability to do this or not:  With the filing of the

1   complaints that have many plaintiffs in them, it's becoming
2   really very burdensome for the plaintiffs to go in and add each
3   of the individual plaintiffs.  I think it's still an ongoing
4   process with regard to the plaintiffs in Burnett versus the
5   Kingdom.  And I didn't know whether there's a way on the back
6   end, if we gave the information to the clerk's office, if they
7   could side-load it.  I think the reason I'm raising it -- I
8   think it's an issue for some of the plaintiffs in upcoming
9   cases as well -- I don't know whether you have the ability to
10  communicate with the tech people in the clerk's office to
11  implement something that made it a little bit more efficient.
12          THE COURT:  I think the answer to that question is no,
13  but I will inquire.
14          I believe that there is a, quote, next generation of
15  ECF on its way, which will pull the information directly off
16  the complaint and input it into the docket, but to the extent
17  you have any experience with the Southern District of New York,
18  you know that we are the dinosaur of the federal judiciary, so
19  we have not adopted the next generation of ECF yet.  So, in the
20  future, I think this will be much more easy but I don't think
21  there's a way to do it other than manually.
22          I guess there's a related question as to whether or
23  not we actually need to put everybody's name on the docket or
24  whether we can just have sort of an "et al.," where we've got
25  complaints that have 900 plaintiffs.  So, let me inquire both

1  as to whether there is any way for the clerk's office to do it
2  for you -- and I'm almost certain the answer to that is no --
3  and, secondly, whether or not we can just leave it as et al.
4  and just have any interested party actually look to the
5  complaint.
6          MR. HAEFELE:  Thank you, your Honor.
7          THE COURT:  I have one other housekeeping matter, but
8  I just want to check and see if we're all done on this
9  particular issue?
10         All right --
11         MR. KELLOGG:  This is Michael Kellogg, your Honor.  We
12 have nothing further.
13         THE COURT:  Okay.
14         So why don't I ask the plaintiffs' executive committee
15 to look at this and if you can file something by the end of the
16 week, so we can turn it around and make it available for
17 everybody.
18         MR. HAEFELE:  Thank you, your Honor.  We will do that.
19         THE COURT:  I have one other housekeeping matter.  And
20 I will be transparent here; my law clerk thinks I'm wrong.
21         It looks to me -- and maybe it's just that my eyes are
22 going -- that the plaintiffs' executive committee letters are
23 written in a very small font, and my law clerk is now laughing
24 at me.  To the extent my eyesight is not deceiving me, I just
25 want to make sure.  I plan on spending a lot of time with all

1   of you and I don't want letters that are coming in in 11 font,
2   and for some reason, these letters seem like they're very small
3   and very dense and --
4            MR. HAEFELE:  Your Honor, I can tell you this is
5   Robert Haefele.  I can tell you the ones we've been doing have
6   been in Garamond 12.
7            THE COURT:  Garamond 12?
8            Well, I appreciate that.  I appreciate the
9   information.  It seems very small, to me, but I guess --
10           MR. HAEFELE:  To be completely transparent, I think
11  the footnotes are in Garamond 10 or 11, I'm not sure.
12           THE COURT:  Okay.  I'll just wear my glasses more
13  often.
14           So, I will look to get these from you in the next
15  couple of days and we'll get the order out and make it
16  available for everybody.  And we will also communicate to you
17  our information that we learn with respect to getting
18  plaintiffs' names on the docket.
19           MR. HAEFELE:  Thank you.
20           THE COURT:  Okay.  Thank you, everybody.
21           MR. HAEFELE:  Bye-bye.
22           MR. KELLOGG:  Thank you, your Honor.
23           THE COURT:  Thank you.
24                              * * *
25