```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:  TERRORIST ATTACKS OF
     SEPTEMBER 11, 2001
 4
                                              03 MDL 1570 (GBD)(SN)
 5

 6   ------------------------------x
                                              New York, N.Y.
 7                                            April 21, 2017
                                              12:00 p.m.
 8
     Before:
 9
                         HON. SARAH NETBURN,
10
                                              Magistrate Judge
11
                       APPEARANCES (by telephone)
12
     COZEN O'CONNOR
13        Attorneys for Federal Insurance Plaintiffs
     BY:  SEAN P. CARTER
14
     MOTLEY RICE LLC
15        Attorneys for Burnett Plaintiffs
     BY:  ROBERT T. HAEFELE
16
     CLIFFORD CHANCE LLP
17        Attorneys for Defendant Dubai Islamic Bank
     BY:  STEVEN T. COTTREAU
18

19

20

21

22

23

24

25
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

1           (In chambers)

2           THE COURT:  Good morning.  This is Judge Netburn.  I
3  am here with my law clerk and with a court reporter.

4           What I'd like to do is set some ground rules.  I am
5  going to ask that anybody who is not speaking mute their phones
6  so we don't get any feedback from them.  I'm also going to ask
7  that appearances be entered only for those lawyers who intend
8  to speak.  And if another lawyer who is on the call decides
9  that he or she would like to speak, you can just introduce
10 yourself.

11          And, lastly, after the appearances are made and we
12 begin the conference, I want to remind everybody, one, that
13 they need to introduce themselves before they speak so that the
14 court reporter can appropriately attribute your statements to
15 you and, two, that everybody needs to speak slowly and clearly
16 because the court reporter is listening to you on my speaker
17 phone.  So in order to get an accurate transcript, everybody
18 needs to be cognizant of that.

19          With that, let me ask those people on the phone who
20 represent the plaintiffs who intend to be speaking to state
21 their appearances for the record.

22          MR. CARTER:  Your Honor, this is Sean Carter from
23 Cozen O'Connor on behalf of the plaintiffs' executive
24 committee.

25          MR. HAEFELE:  Your Honor, this is Robert Haefele from

1   Motley Rice also on behalf of the executive committee.  I'm
2   introducing myself because I am one of the authors of the
3   letters that came to your Honor.  But Sean and I have discussed
4   it and I think most of the dialogue, I anticipate, will be by
5   him.
6           MR. KREINDLER:  Good morning, your Honor, this is Jim
7   Kreindler, Kreindler & Kreindler, plaintiffs' executive
8   committee.  Other than saying hello, I am not sure I'll have
9   anything to say.
10          THE COURT:  Who will be speaking on behalf of the
11  Dubai Islamic Bank?
12          MR. COTTREAU:  Good morning, your Honor, Steve
13  Cottreau for Dubai Islamic Bank from Clifford Chance.
14          THE COURT:  Let me begin with Mr. Cottreau.
15          Mr. Cottreau, can you tell me a little bit about the
16  state of Dr. Hussein's health?  I appreciate that he is an
17  older gentleman.  But is there concern that he is going to pass
18  in the immediate future?
19          MR. COTTREAU:  Sure.  Yes, there is a concern that he
20  is going to pass.  He is 84 years old.  I understand that he
21  has some medical issues involving his kidneys.  I don't have a
22  great amount of detail on that and haven't troubled him for his
23  medical history because, quite frankly, the necessity issue
24  wasn't really raised until I think yesterday morning or this
25  morning in the opposition.

1           THE COURT:  What do you mean by the necessity issue
2    wasn't raised until yesterday?  I thought the whole purpose of
3    the urgency of this deposition was because there was necessity
4    to preserve his testimony.
5           MR. COTTREAU:  There wasn't a dispute as to the
6    parties as to whether it was really necessary or not until that
7    was raised in the opposition this morning.  No one had asked
8    for his medical history and whether it was pressing.
9           What had happened to prompt this, your Honor, in the
10   course of this litigation we have lost two key witnesses who
11   were actually on our witness lists.  We started thinking about,
12   well, if the litigation is going to continue to take this long
13   to resolve, we may be losing additional witnesses.  This
14   witness is actually on plaintiffs' witness list and not on our
15   witness list, and he was injected into this litigation not in
16   any of the complaints, not in any of the RICO statements.  But
17   he was first injected into the litigation in the role of the
18   Fatwa Sharia Board, was injected into this litigation by
19   plaintiffs in both their document requests and then in
20   connection with their motion to compel that they filed in July
21   of 2015.  They mentioned Dr. Hussein by name in their motion to
22   compel in footnote 3 and that's at docket 2973.  And so the
23   issue was that they have now brought him into the litigation.
24   They have made allegations that he has fostered some radical
25   Islamic agenda at the bank.

1    By the way, he's affiliated with dozens and dozens of
2    banks.  He's a leading Islamic scholar.  He was educated at
3    NYU.  And we thought that if the plaintiffs are going to make
4    an issue of him, he ought to have a chance to defend his good
5    name.
6              THE COURT:  The plaintiffs suggest, though I don't
7    think they state it expressly, that there might be discovery
8    that should be produced in advance of his deposition.  What's
9    your position with respect to that?
10             MR. COTTREAU:  Your Honor, I have two positions.  On
11   general document discovery, that was handled as part of the
12   motion to compel process by Judge Maas at last March's hearing
13   that he held.  He found at page 60 of that transcript that a
14   bunch of the requests that plaintiffs were seeking about the
15   Sharia board struck him as overbroad.
16             What he did grant them were documents that we had
17   already produced showing the role of the Fatwa Sharia Board at
18   the bank, and also a list of members.  And if the plaintiffs
19   thought that any of those members were involved with
20   pronouncements, violent pronouncements, plaintiffs had the
21   opportunity to flag those members, and we would have to search
22   any Fatwas that are issued in our possession that involve
23   violence by those members, and plaintiffs have never availed
24   themselves of that process.
25             In terms of additional document discovery, that was

resolved by Judge Maas.  In terms of a list of questions or what we are going to do with him, I have told him essentially in a meet-and-confer process that he is going to rebut their allegations and to talk generally about what the actual function of the Sharia board is.  Very simple, very simple deposition.  If you take a look at their motions to compel, which I'm sure you don't want to do, but they have page after page after page of what they think the Sharia board does do in their motions to compel and clearly seem to be at times more up to speed than I am even on the board.

        THE COURT:  Let me ask Mr. Carter, with respect to discovery, do you agree that following Judge Maas' ruling last year that the documents that you were entitled to have been turned over?

        MR. CARTER:  Your Honor, Judge Maas, among other things, directed the parties to engage in a dialogue concerning a number of search terms to be used for locating additional transactional records, and we have been going back and forth on that for some time.  So we do expect that there is additional documentation to be produced by the Dubai Islamic Bank.

        Mr. Cottreau takes the view that that additional documentation is not potentially relevant to Dr. Hussein's proposed testimony.  But, of course, we can't know that until we have seen the documentation.

        I think, putting that aside, your Honor's question to

1  Mr. Cottreau about the necessity of this deposition sort of
2  goes to the heart of the matter here. Aside from the initial
3  e-mail on February 27 and our response, which concerned nothing
4  more than holding dates and contained no details concerning the
5  reason for the necessity of this deposition or the subject
6  matter, we never received any proffer from the Dubai Islamic
7  Bank whatsoever as to why this is necessary. In fact, we
8  didn't receive any further communication whatsoever about it
9  after that very preliminary e-mail.
10          Now, quite obviously, by simply agreeing to hold dates
11 on our calendars, we weren't agreeing to the necessity of this
12 deposition, the appropriateness of going over to London to
13 conduct a single deposition or submitting ourselves to
14 protocols that Dubai Islamic Bank was going to unilaterally
15 identify less than two weeks in advance of the proposed
16 deposition, and we certainly weren't waiving our right to have
17 a discovery deposition to allow ourselves to be in a position
18 to effectively cross-examine this witness.
19          The first point in time when we got any indication as
20 to why Dubai Islamic Bank wanted to proceed with this trial
21 deposition was during the phone conversations over the last few
22 days when we raised the issue.
23          As we note in our papers, it's the burden of the party
24 seeking to perpetuate trial testimony in this matter to
25 demonstrate its necessity. And when we asked the question,

what we were told was that Dr. Hussein was going to testify concerning the role, functions, and activities of the Sharia board. The problem with that is is that the Sharia board is a continuing body which includes presently five members and, by necessity, will continue to exist throughout the course of this litigation. So there will always be a witness available to Dubai Islamic Bank to testify concerning the duties, functions, and activities of the Sharia board.

In terms of Dr. Hussein in particular, the only reference in our motion papers to him is a footnote noting that he had endorsed Abdullah Azzam's book *In Defense of Muslim Land*, which had largely been viewed as a foundational document for modern Jihad, but we didn't say anything further about him at all.

To the extent that we have been provided an explanation as to why this deposition is supposed to go forward, it's been limited to subject matter that can be addressed by another witness at a future date under circumstances that aren't deeply prejudicial to the plaintiffs.

Against that backdrop, we have trouble understanding why it makes sense for the parties to haul themselves over to London with circumstances that will require us to dedicate a week of our time at tremendous expense to complete what is effectively an unnecessary deposition.

What we understood when the Court directed the parties

1  to confer about depositions to preserve testimony is that there
2  would be some kind of comprehensive dialogue among the parties
3  in which anyone who believed there was a witness whose
4  testimony needed to be preserved would identify them, and that
5  we discuss ground rules for those depositions, discuss their
6  necessity, and come up with some comprehensive plan to do them
7  efficiently.  But it certainly doesn't promote the goals of the
8  MDL for us to all go over to London for a single, unnecessary
9  deposition.  Dubai Islamic Bank itself has indicated it may
10 have other witnesses that it wants to preserve.  If that's the
11 case and they intend to present those in London, we should know
12 about that and we should be incorporating those people into any
13 trip.
14          Again, your Honor, I think the foundational point that
15 we have made is that there were some very obvious issues
16 presented by this proposed deposition that needed to be worked
17 out in advance and protocol that needed to be worked out in
18 advance and it was completely anticipatable by Dubai Islamic
19 Bank that we would have problems with the proposal that they do
20 a trial deposition and relegate us to a few hours of
21 cross-examination.  All of those would have been fleshed out
22 either by the timely service of a notice of deposition or some
23 other communication about ground rules, and we had flagged in
24 our very first e-mail that we expected that there might be
25 problems with location, duration, and sequence of the proposed

1  deposition.  In fact, those are the very issues that are now in
2  front of the Court.
3             THE COURT:  Let me say a few things.  The first is
4  that planning these depositions, and we are on the cusp of many
5  depositions going forward, I hope, in this case, is going to be
6  a complex matter and will require cooperation and the
7  involvement of many, many lawyers.
8             So the first thing I want to do is to encourage
9  everybody to open the lines of communication.  I think this
10 problem is here before me right now because there was a lack of
11 communication between the parties.  And my reading of the
12 various e-mails back and forth was that both sides had agreed
13 that these dates in early May were acceptable, that the
14 plaintiffs had said that they did flag these issues as real
15 issues that needed to be resolved.  And I guess I would have
16 preferred if the parties, one, actually addressed those issues
17 in a timely way and, two, having not done so, come to me sooner
18 than the end of April for an emergency conference.  In the
19 future, going forward, I hope that these issues can be raised
20 more promptly with the lawyers and then, if an agreement cannot
21 be reached, presented to me in a less urgent presentation.
22            Second, I do agree that the parties need to work out a
23 deposition protocol for this MDL.  And that would have both
24 components of *de bene esse* depositions, as well as regular old
25 depositions.  That protocol, I imagine, will be complex and

1  lengthy.  And to the extent that Dr. Hussein's deposition
2  should happen in the near future, if not the immediate future,
3  I'm not optimistic that we will be able to work out a
4  full-fledged protocol in advance of his deposition.
5           That said, I do think, and based on the representation
6  from Mr. Cottreau, it doesn't sound like Dr. Hussein is likely
7  to pass in the next two or three weeks.  It sounds like he is
8  an older person, and we all appreciate that and has various
9  medical conditions.  But it doesn't sound to me like he is on
10 his way to the hospital right now.
11          What I would like to do is to stay the deposition
12 that's been scheduled for May 2 and give the parties an
13 opportunity to talk about a protocol for this deposition.  Like
14 I said, I think it's optimistic to try to flesh out an entire
15 deposition protocol.  I've done that in other complex
16 litigation.  I think it's essential.  But it's hard and there
17 are a lot of issues.  And that I think will take many, many
18 weeks and probably a couple of court conferences before we can
19 finalize it.  I don't want to stay Dr. Hussein's deposition
20 until we can get a full-fledged deposition protocol in place.
21          But I do think we should be addressing some of the
22 issues that are raised, and I do think it is unfair and
23 prejudicial to the plaintiffs to both limit the deposition
24 hours in the way that has been proposed, and I do think that
25 the parties should discuss the opportunity for a preliminary

1   discovery deposition in advance of a deposition to preserve
2   trial testimony.
3           I don't think it is unreasonable for those to happen
4   nearly consecutively, which is to say that one possibility
5   might be to schedule depositions Thursday, Friday, give the
6   lawyers the weekend, and then Monday, Tuesday.  I do think you
7   all should be discussing some sort of protocol like that.  And
8   I do think this deposition should happen in the next few weeks,
9   which is to say in the next four to six weeks I think is
10  reasonable.  I don't think we should be putting it out
11  indefinitely.
12          Mr. Carter, your presentation to me was a little bit
13  in tension because on one hand your position is, you want to be
14  able to take discovery deposition before you preserve this
15  person's deposition, but then, at the same time, you are
16  suggesting that there are other witnesses from the Dubai
17  Islamic Bank who may serve the same purpose that Dr. Hussein
18  does.  And so I want to make sure that you are not resisting
19  this deposition for reasons that are not related to your desire
20  to actually develop the record with respect to Dr. Hussein.
21          MR. CARTER:  Your Honor, we are not resisting a
22  deposition and we were trying to be accommodating.  If there is
23  somebody who is going to come in to testify about the duties
24  and functions of the Sharia board, we want an opportunity to do
25  a discovery deposition on that subject before we do the trial

1  testimony of that person, whoever it is.

2          THE COURT: I am adjourning the deposition that has
3  previously been noticed for -- seemed to be conflicting
4  dates -- either May 3, 4 or May 4, 5. What I'd like the
5  parties to do is talk about a proposed schedule, both dates,
6  times, and substance and try to reach agreement.

7          Why don't you send me a letter on May 2, which is a
8  Tuesday, letting me know either what has been agreed upon or if
9  the parties have not reached agreement, I want to know the
10 areas of dispute and I will resolve those issues. Obviously,
11 it's best if everybody can reach agreement on all of the
12 outstanding matters. If not, I'm happy to resolve those for
13 you.

14         Let me also encourage the parties to be thinking now
15 about a deposition protocol. I think that means folding in the
16 defendants' executive committee to this conversation. I have
17 some reservations saying that because I don't want to overly
18 complicate matters for purposes of Dr. Hussein's deposition.
19 But I think it's time to start having that conversation.

20         Then over the summer months I think we should be
21 hammering out a protocol that we can order so that everybody
22 understands exactly what the expectations are as far as
23 noticing depositions, foreign depositions, language issues, all
24 of that needs to be addressed in advance. And I'd like it in
25 place so that once document discovery concludes, we can move

1  forward in earnest with depositions.  And also to the extent
2  there are additional witnesses for whom trial preservation
3  testimony will be necessary that we can have a framework for
4  those.
5            Anything further from anyone?
6            MR. COTTREAU:  Thank you very much for your prompt
7  attention to the matter.  We are truly grateful for your time.
8            THE COURT:  You're very welcome.  I will hear from you
9  all on May 2.  Thank you, everybody.
10                                o0o