```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   In re Terrorist Attacks on
      September 11, 2001                    03 MD 1570 (GBD)(SN)
 4
                                            Telephone Conference
 5   ------------------------------x

 6

 7                                          New York, N.Y.
                                            May 8, 2017
 8                                          12:15 p.m.

 9   Before:

10                      HON. SARAH NETBURN,

11                                   Magistrate Judge

12                         APPEARANCES

13

14

15
     KREINDLER & KREINDLER LLP
16        Attorneys for Plaintiffs' Executive Committee
     BY:  JAMES P. KREINDLER
17        -and-
     MOTLEY RICE, LLP
18   BY:  ROBERT T. HAEFELE

19


20   OMAR T. MOHAMMEDI
     FREDERICK GOETZ
21        Attorneys for Defendant WAMY

22

23

24

25
```

1           (In chambers)

2           THE COURT:  Good afternoon.  I am here with a court
3   reporter and with my law clerk.  I'm going to ask that those
4   attorneys who intend to be speaking during this conference
5   state their appearance.  If there are other people on the line
6   but they're just listening, I don't need their appearance made.
7   Let me remind you that when you speak you should introduce
8   yourself each time so that your comments can be properly
9   attributed, and anybody who doesn't state their appearance at
10  the outset but then decides to speak at a later time, please be
11  sure to state your appearance at that time.

12          Who do I have on the line on behalf of WAMY?

13          MR. MOHAMMEDI:  Good afternoon, your Honor.  This is
14  Omar Mohammedi on behalf of WAMY.

15          MR. GOETZ:  Good afternoon, your Honor.  Frederick
16  Goetz for WAMY as well.

17          THE COURT:  And on behalf of Mr. Kreindler.

18          MR. KREINDLER:  Hi, your Honor.  Mr. Kreindler
19  himself.

20          THE COURT:  OK.  Thank you.

21          I have reviewed the three letters in connection with
22  this application as well as a Politico article and the 2006
23  protective order that was entered into by Judge Casey.

24          Let me address first Mr. Kreindler's response to the
25  accusation that the information was information that's publicly

available and that should never have been designated as confidential in the first place.  We have had several conversations already in connection with confidentiality issues.  This case has heightened public interest, but as Judge Casey noted when he granted the protective order, there are also serious allegations being made as to the defendants, and until they are found responsible, it's not fair to disclose information that's designated as confidential that might tend to make the public think that somebody is guilty of certain conduct.  In this instance, it's clear that the information was designated confidential.  As I understand it, Mr. Kreindler, nor anyone from the plaintiffs' executive committee, has moved to dedesignate that information, and what I don't want is for the parties to think that they can undermine the confidentiality orders because, by their own likes, something is not confidential or should not be confidential.  The parties obviously negotiated a protective order a decade ago, and I expect the parties to follow it.  I'm not moved by Mr. Kreindler's initial remarks that the information at issue here is otherwise publicly available.

         MR. KREINDLER:  Your Honor, if I could start this way, I want to be very clear, I never released any confidential evidence at all to Caleb Hannan or to any other reporter.  John Fawcett, our investigator, did not show a document or release any confidential information at all.  I think Mr. Mohammedi has

a misunderstanding borne of maybe the overly dramatic way in which the reporter wrote his article, but I want to be clear, neither the document that WAMY cited or any other piece of paper or any other bit of information designated confidential was ever, ever, ever released by me or anyone who works for me.

Now, what did happen, and maybe this is why Mr. Mohammedi has this apprehension about something that never existed, is the reporter spoke to me about themes in the case, spoke to John, and was interested in how we went about connecting the dots to show the connection between lower-level Saudi officials like Basnan and Bayoumi to a higher official, Saudi official, Thumairy, to Thumairy's boss' boss, Sowailem, from the Saudi embassy. And I apologize if we didn't put this in the letter the right way, but here is what happened, so there's no misunderstanding at all.

The FBI had released, in its report, a number of phone numbers called by Bayoumi, the Saudi embassy official in San Diego and L.A. Among the numbers called was a number from the Saudi embassy in Washington, particularly the number of the Saudi Ministry of Islamic Affairs headed by Sowailem. John explained to the reporter the process, never showed him a single document, never read from a document, or referred from a document. What John did say is when we saw the numbers that Bayoumi called, I immediately went to our data and looked for this D.C. number, suspecting it was from the embassy, and this

1     number is all over the place.  It's on the Saudi website.  It's
2     in the FBI reports.  It's in State Department reports, and even
3     though we haven't gotten a single piece of paper from Saudi
4     Arabia yet, there is correspondence with the Saudi letterhead
5     in the files of lots of defendants.  And as we've seen, there
6     is correspondence with the number of the Saudi letterhead in
7     WAMY files, but to be crystal clear, John never showed Caleb
8     that document or any other document or said anything about the
9     contents of any of those documents, simply pointed out that
10    that number, 202-3700, is public information all over the
11    place.
12              Now, when Caleb wrote up the article, he wrote it in a
13    dramatic way, that when John had the numbers Bayoumi dialed, he
14    found it on a piece of paper, but that piece of paper exists in
15    thousands of places in discovery and in the public record, but
16    the only thing we're talking about is the letterhead, just as
17    if my office number, 212-617-8181, if somebody wanted to look
18    up my number, maybe they grab some attorney-client privilege
19    and read my number that has nothing to do with anything
20    contained in that document.
21              THE COURT:  Mr. Kreindler, the article explicitly
22    cites to the receipt of hundreds of thousands of pages of
23    documents, and then makes the specific notation that at the top
24    of a single page they found this note, so I think the argument
25    here, whether it's dramatic writing or not, is that the import

of the narrative is that as a result of the documents that you received, you received information that allowed you to connect these dots, and I think that that is disclosing information, even if you're not disclosing the specific number, but information that was set forth in a confidential document.

MR. KREINDLER: Yes, the reporter's description is really not accurate, because when he says at the top is a note, what he's referring to is just the Saudi letterhead which has the phone number, which Mr. Mohammedi supplied in this and probably a thousand other documents. What John said is with that number, I looked it up and found that it's the Saudi embassy Ministry of Islamic Affairs headed by Sowailem, so the reporter wrote it in a way that it's not wrong, but it's not accurate; it creates an implication. It creates the implication that John somehow pulled a document that said the letterhead says this number is the Saudi embassy Ministry of Islamic Affairs, and that's not what happened.

Listen, I don't fault Mr. Mohammedi for being concerned or suspicious, but had anyone asked me, I would have explained this and made clear that John never ever read or showed anything from a document, including the letterhead, to this reporter or anyone else. From the very beginning of the case, we've been very careful, because there are a lot of reporters interested. And of course, the only thing we said is: We can never show any document. You can read the

1   complaint and read court filings.  So it's not a crazy reading

2   for Mr. Mohammedi to make, but it's an incorrect reading, and

3   what he suspects happened absolutely never happened.

4           THE COURT:  OK.  Let me hear from either Mr. Mohammedi

5   or Mr. Goetz.

6           MR. MOHAMMEDI:  Thank you, your Honor.  I'd just like

7   to mention if WAMY's document was not described and it was not

8   mentioned in the interview, why would the reporter mention it?

9   Whether the confidential document had been the subject of the

10  disclosure with the reporter, it was the needle in the haystack

11  that Mr. Kreindler and his team found, and your Honor, even

12  worse, the context by which WAMY's document was described in

13  relation to the information provided put it in bad light.  And

14  even though the document does not describe exactly what the

15  article is, but when you look at page 6 where the reporter

16  says, "In their 15 years on the case, Kreindler's team hadn't

17  persuaded the U.S. government to provide them much of anything

18  useful," and then he goes on and he says, "But they had spent

19  more than a decade legally compelling some of the largest

20  charities in the Middle East," and he goes on and then says,

21  "U.S. government knew these charities had provided financial

22  and logistical support for the people and groups American

23  officials label as terrorists" -- when he put that within the

24  context, it makes it even worse the way WAMY document was,

25  "they found needle in the haystack," and that is the problem we

1   have with Mr. Kreindler's conversation with the reporter, and
2   the information specifically referred to that document, which
3   is the needle in the haystack. So it's actually even worse,
4   and that's exactly what Judge Casey said in his order:
5       "Most, if not all, of the numerous defendants to these
6   consolidated actions are accused of either committing the
7   terrorist acts of September 11, 2001, or providing material
8   support to those who did. Many of the same defendants will be
9   asked to turn over a vast array of private and confidential
10  information during discovery, much of which will have little or
11  no bearing on the resolution of these actions but will be
12  subject to widespread public scrutiny with prejudicial effects
13  in the absence of a protective order."
14      This is the reason why Judge Casey issued this order
15  for this type of information, the context by which the article
16  mentioned WAMY documents, and that's the problem we have, your
17  Honor. If the reporter did not have any information of WAMY
18  documents, which you have in front of you, he would never
19  mention WAMY's documents as the needle in the haystack. That
20  is the problem, your Honor, we have with Mr. Kreindler and his
21  communication with the reporter.
22      THE COURT: OK. I tend to agree with WAMY here that
23  the information that was disclosed did violate the letter of
24  the agreement. The agreement does make clear that summaries or
25  abstracts of the documents are confidential as well, and as

counsel just mentioned, the information that Mr. Kreindler was trying to convey to the reporter could just as easily have been conveyed without making the direct link between confidential documents that were provided in this case and your ability to connect the dots.

I do find, Mr. Kreindler, that this is a breach of the confidentiality requirement.  As I ordered a few weeks ago with respect to the applications that came in more generally about the Politico article, there is heightened interest in this case, and I'm certainly not going to prohibit anybody from speaking to the press, but the parties need to really be careful here because of the reasons that Judge Casey first referenced when he entered this order.  It is really unfair to the parties who will be turning over a lot of confidential and personal information to have those documents portrayed in a light that has a particular viewpoint, and I believe that this article -- and I just have a hard time believing that the journalist came up with this bent, this viewpoint, on his own -- does reveal as a technical matter information that was provided in a confidential document.

Going forward, Mr. Kreindler, to the extent you are going to be continuing to speak to the press, or any other lawyer in this case, I expect the parties to hew much more closely to the confidentiality order and to be exceedingly discreet in the information that they reveal.

1            I'm not going to sanction Mr. Kreindler with any
2    monetary sanction or otherwise.  Consider this a first warning,
3    and it's my hope that I don't get these applications again.  I
4    do find that there was a breach, but I'm not going to enter a
5    particular sanction.
6            MR. MOHAMMEDI:  Your Honor, can I say something about
7    the sanction?  Monetary damages are not the most important
8    things for us.  I believe Judge Casey and I do believe that the
9    district court has a great deal of discretion as to the remedy
10   for violating a confidentiality or protective order, and even
11   outside the case, even Judge Casey's order, anything the judge
12   could relieve as part of the disclosure of any defendant's
13   documents should be ordered.  We also believe that maybe that's
14   very, very harsh, but I think that is the remedy to make sure
15   that plaintiff will not do that in the future, preclusion of
16   this particular document being used in evidence in this case,
17   and I really do believe this is fair and reasonable for us, for
18   this Court to issue this order.
19           THE COURT:  Mr. Kreindler, do you wish to be heard?
20           MR. KREINDLER:  Yes, your Honor.  First of all, I
21   don't even know what's in the document.  Mr. Mohammedi sent an
22   English translation to you, not to us, and I'm not sure what
23   he's talking about.  If he's talking about the Arabic text of
24   something I don't know what it says, all I can say is at this
25   moment we're not making use of unknown Arabic text.  If he's

1  talking about public information, he cannot exclude public
2  information.  I think what he's trying to do is try and exclude
3  the link between Sowailem and Bayoumi, and neither of them are
4  his clients and neither of them have anything to do with WAMY,
5  so I'm not sure what he's asking for.
6          MR. HAEFELE:  Your Honor, may I be heard for a moment?
7          THE COURT:  Yes.
8          MR. HAEFELE:  My concern from what I'm hearing from
9  what Mr. Mohammedi's saying is that the punishment related to
10 something Mr. Kreindler did should be passed on to the entire
11 plaintiffs, if I'm understanding him, he's asking for the
12 document to be precluded from evidence based on something that
13 Mr. Kreindler did and precluded from evidence on behalf of all
14 plaintiffs, if I'm understanding him right.  If I'm
15 misunderstanding, I'll stay quiet now.
16         MR. MOHAMMEDI:  Your Honor, I think that in response
17 to Mr. Kreindler, I'm asking that the document be precluded,
18 not the link.  Since the document was revealed in the article,
19 to the reporter should be precluded, and this is actually
20 within the remedies that are prescribed in the judge's order.
21 And I think WAMY should not be suffering, should not have to
22 give -- I mean, how are we to prevent them from making any
23 other communications with the reporters?  And also WAMY's being
24 put in bad light now, and like I said, evidence shown in the
25 report, and the article said, is being put in bad light, even

1       though the document itself is not really what it is, but the

2       way it was described, based on that, I do believe that it was a

3       communication, private communication between the kingdom of

4       Saudi Arabia and WAMY, and it was revealed to the reporter and

5       it violated the confidentiality agreement.  Therefore, I think

6       we should be entitled to preclude that.

7                THE COURT:  OK.

8                MR. KREINDLER:  I have to add something.  You keep

9       saying something that's utterly untrue.  This document was not

10      revealed to a reporter.  No reporter was shown this document or

11      had this document read to him.  All you're talking about is the

12      phone number on the letterhead, which is public information, so

13      I really wish you would stop saying that someone showed this

14      document to a reporter, because it never happened.

15               THE COURT:  OK.  I've heard enough.  I have read all

16      these letters and thought hard about this.

17               As I stated earlier, Mr. Kreindler, by describing to

18      the journalist that having received these confidential

19      documents from WAMY and then having identified this particular

20      piece of information you were able to connect the dots.  I do

21      believe that that was information that was confidential and you

22      were not entitled to disclose the source of your information.

23      As counsel for WAMY has said, you could have easily either left

24      that out or said you found this information through publicly

25      available sources, so I do believe it is a violation of the

1  confidentiality order.
2          Mr. Kreindler, I'm speaking.
3          MR. KREINDLER:  OK.
4          THE COURT:  I am not going to impose a sanction at
5  this time.  I'm not going to impose a monetary sanction against
6  Mr. Kreindler, and I'm certainly not going to preclude the use
7  of this document, because I don't believe that the specific
8  contents were, in fact, disclosed; it was more the light in
9  which the documents were presented that was inappropriate.  At
10 this point, I am not going to impose a particular sanction.
11         Mr. Kreindler, this is the second time we've had to
12 deal with this Politico article, and it's my hope that you will
13 be more careful as you continue to litigate this case,
14 including given that you are an executive member of the
15 plaintiffs' executive committee and you have a heightened role
16 here representing all of the plaintiffs, and I don't want you
17 to lose sight of that.
18         MR. KREINDLER:  I won't.
19         THE COURT:  OK.  Thank you, everybody.
20         MR. KREINDLER:  Thank you.
21         MR. MOHAMMEDI:  Thank you, your Honor.
22         (Adjourned)
23
24
25