UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001

03 MD 1570 (GBD)
ECF Case

---------------------------------------------------------------x

This document relates to: *Continental Casualty Co. et al. v. Al Qaeda Islamic Army*, 04-CV-5970 (GBD)

**AFFIDAVIT OF LAWRENCE BOYSEN IN SUPPORT OF PROOF OF DAMAGES FOR PLAINTIFFS CONTINENTAL CASUALTY COMPANY, TRANSCONTINENTAL INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, TRANSPORTATION INSURANCE COMPANY, VALLEY FORGE INSURANCE COMPANY AND AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA**

STATE OF ILLINOIS )
                  ) ss.:
COUNTY OF COOK    )

Lawrence Boysen, being duly sworn, deposes and says,

1. I am a Senior Vice President and Corporate Controller of plaintiff Continental Casualty Company ("CCC"). This Affidavit is submitted on behalf of Plaintiffs Continental Casualty Company, Transcontinental Insurance Company, which has been merged into National Fire Insurance Company of Hartford, Transportation Insurance Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania (collectively, "the Continental Companies"). Plaintiffs are all part of the group of insurance companies operating under the CNA servicemark.

2. I make this Affidavit in support of the Continental Companies' Proof of Damages.

3. As an Officer of the Continental Companies, I am authorized to execute this Affidavit on behalf of the Continental Companies.

4. As part of my job responsibilities, I oversee the internal controls and procedures for financial reporting on behalf of the Continental Companies. This includes obtaining assurance that losses and expenses paid by the Continental Companies for claims are appropriately reflected in their financial records.

5. It is my understanding that the Continental Companies have offered a variety of insurance products over time, including primary, umbrella and excess policies of insurance, and reinsurance. Reinsurance is the practice whereby in consideration of the premium paid, the reinsurer agrees to indemnify another insurance company, called the reinsured or cedant, for all or part of the liability assumed by the reinsured or cedant under the policies of insurance which it has issued.

6. I have general knowledge of many of the day-to-day affairs of the business of the Continental Companies, including general knowledge of the processes related to the submission and adjustment of claims under primary, umbrella, and excess policies of insurance and reinsurance contracts issued by the Continental Companies.

7. My general understanding of the adjustment process includes compliance with standards and procedures which must be followed in completing the adjustment of the claim and subsequent payment of claims under the policies of insurance or reinsurance contracts. It is also my general understanding that the following language (or substantively similar language) is found within most property and casualty policies of insurance issued by the Continental Companies or the ceding

insurers: An insured's duties in the event of loss or damage to covered property include but are not limited to the following:

    (1) Give us prompt notice of the loss or damage. Include a description of the property involved.

    (2) As soon as possible, give us a description of how, when and where the loss or damage occurred.

    (3) Take every reasonable step to protect the Covered Property from further damage and keep a record of your expenses necessary to protect such Covered Property for consideration in the settlement of the claim. This will not increase any Limit Of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set such damaged property aside and in the best possible order for examination.

    (4) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    (5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damage and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    (6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days of our request. We will supply you with the necessary forms,

    (7) Cooperate with us in the investigation or settlement of the claim.

    (8) Resume all or part of your "operations" as quickly as possible.

In addition, it is my general understanding that the following language is typically contained in most reinsurance contracts: "All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of reinsurance, shall be binding on the Reinsurer. Upon receipt of acceptable proof of loss, the

3

Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations."

8. My general understanding of the adjustment of claims submitted by policy holders, insureds and reinsureds is subject to specific and exacting requirements of proof, including, but not limited to (a) compliance with, and measurement against, the terms and provisions of the policies of insurance, (b) examination by qualified adjusters and/or professionals, (c) analysis and review by outside professionals as deemed necessary including, but not limited to, certified public accountants, engineers, architects and construction cost specialists, and (d) production of records and other documentation in support of submitted claims.

9. As part of my responsibilities in overseeing the internal controls and procedures for financial reporting on behalf of the Continental Companies, I rely upon financial data and records, prepared in the regular course of their business, related to the adjustment of claims and payment for these claims. For these reasons, I am competent to confirm the financial transactions arising out of the adjustment process and disposition of claims submitted by our policy holders, insureds and reinsureds.

10. It is my understanding that the adjustment process is also subject to internal review and audit by other management and supervisory personnel, which further ensure accuracy in the final adjustment and payment of claims submitted by policy holders and insureds. Our management and supervisory personnel have experience in a wide range of areas including experience in the calculation and determination of loss of business income, property values, and construction costs and expenses. Further, each of our management and supervisory personnel are

trained or experienced in their particular areas of specialty, and each individual brings to the claims evaluation process many years of experience.

11. I have general knowledge of the numerous industry regulatory standards and requirements, including fair claims handling statutes and codes within various jurisdictions, relating to the adjustment and disposition of all claims.

12. At the time of the September 11, 2001 terrorist attacks on the United States (the "September 11th Attacks"), the Continental Companies provided property, general liability, specialty liability, business interruption, reinsurance, and related insurance coverage to numerous corporations, companies, partnerships, affiliations, persons, trusts and other parties ("policy holders, insureds and reinsureds") who suffered injuries, losses and damages as a result of the September 11th Attacks.

13. In connection with the preparation of this Affidavit, I have reviewed the Continental Companies' records necessary to determine that payments were made by the Continental Companies in compensation for losses suffered by their policy holders, insureds and reinsureds for claims resulting from the September 11th attacks submitted by them under the Continental Companies' policies of insurance and contracts of reinsurance.

14. The Continental Companies' records and information that I reviewed revealed that the Continental Companies were able to make a determination about the validity of the claims filed with them, and this determination was made by the Continental Companies based upon all information, data, reports and evaluations provided to it. The Continental Companies paid for those claimed losses

submitted by their policy holders, insureds and reinsureds which met the requirements of their policies of insurance or contracts of reinsurance.

15. The financial records of the Continental Companies show that they have made total aggregate payments to or on behalf of their policy holders and insureds as of the date of this affidavit in the amount of $221,861,243.69 in compensation for property, business interruption and related damages, and it would not have made these payments and suffered these losses, nor would its insureds and policy holders have suffered these losses, but for the September 11th Attacks. Specifically, the Continental Companies' payments to policy holders and insureds as a result of the September 11th Attacks are as follows:

> Continental Casualty Company: $192,301,241.57[1]
> Transcontinental Insurance Company: $8,115,114.37
> Transportation Insurance Company: $13,060,028.15
> Valley Forge Insurance Company: $6,690,447.18
> National Fire Insurance Company of Hartford: $1,274,708.33
> American Casualty Company of Reading, Pennsylvania: $419,704.09.

16. The Continental Companies also suffered losses because of the need to incur costs in the claims adjustment process in the amount of $8,572,527.43. These costs included the fees charged by outside consultants such as accountants and engineers, who were utilized to ensure accuracy of the claims submitted and losses sustained. These costs also included the fees charged by legal counsel retained to advise and assist the Continental Companies in fairly and fully responding to our obligations under the policies of insurance and to resolve questions of policy coverage consistent with the law and our policy obligations. These costs further included the expenses incurred by our claims adjustment

---

[1] This number includes payments made by CCC on policies underwritten by (1) CCC, in the amount of $190,668,537.90, and (2) Columbia Casualty Company, a wholly owned subsidiary of CCC, in the amount of $1,632,703.67.

professionals in responding to the extraordinary demands of the claims submitted following the September 11th Attacks. Specifically, the Continental Companies incurred claims adjustment costs as of the date of this Affidavit as follows:

> Continental Casualty Company: $5,077,799.07[2]
> Transcontinental Insurance Company: $374,858.08
> Transportation Insurance Company: $654,644.40
> Valley Forge Insurance Company: $2,125,968.05
> National Fire Insurance Company of Hartford: $118,221.94
> American Casualty Company of Reading, Pennsylvania: $221,035.89.

The Continental Companies would not have incurred these costs but for the September 11th Attacks.

17. The loss of money represented by the amounts paid, and costs and expenses incurred, by the Continental Companies was a direct result of the September 11th Attacks.

18. A schedule identifying each insured or policy holder who has submitted a covered claim as of the date of this Affidavit, and for which adjustment was complete and payment made in the total aggregate amount of $221,861,243.69, is attached hereto as Exhibit A. Exhibit A also sets forth the adjustment costs and expenses of each covered claim. To the date of this affidavit, the aggregate amount incurred by the Continental Companies in adjusting the covered claims is $8,572,527.43.

19. The financial records of the Continental Companies show that they also suffered losses on account of the reinsurance contracts that CCC had with insurers that made payments in connection with the September 11th Attacks in the amount of

---

[2] This number includes expense payments made by CCC on policies underwritten by (1) CCC, in the amount of $4,667,816.94; (2) Columbia Casualty Company, a wholly owned subsidiary of CCC, in the amount of $403,018.63; and (3) CNA Casualty of California, a wholly owned subsidiary of CCC, in the amount of $6,963.50.

7

$305,737,641. Exhibit B attached hereto sets forth the payments that were made by CCC in connection with the reinsurance policies they issued.

20. In addition, CCC, through its wholly owned subsidiary Continental Insurance Company, participated in the Associated Aviation Underwriters insurance program ("AAU"), which underwrote insurance for a full range of risks for a wide variety of aerospace clients, including domestic airlines. The financial records of the Continental Companies show that CCC issued the payments for insured losses in connection with this program and CCC's share of the payments made to date as a result of insured losses attributable to the September 11th Attacks is $3,186,499.40. Exhibit C attached hereto sets forth a summary of the losses and expenses incurred in connection with the AAU program.

21. The financial records of the Continental Companies show that they also incurred legal fees in pursuing their claims for damages attributable to the September 11th Attacks in the amount of $226,638 from November 16, 1999 through February 1, 2017. Exhibit D attached hereto sets forth a summary of counsel's time incurred in connection with this lawsuit.

22. Accordingly, the financial records of the Continental Companies show that the total amount of damages[3] incurred by the Continental Companies in connection with the September 11th Attacks to date is $539,357,911.52. The following Continental Companies made the following total payments in connection with the September 11th Attacks:

Continental Casualty Company: $506,303,181.04
Transcontinental Insurance Company: $8,489,972.45

---

[3] The Continental Companies made additional payments as a result of the September 11th Attacks which are not set forth in this affidavit and for which recovery is not sought at this time. The Continental Companies reserve the right to seek those additional sums at a later date.

Transportation Insurance Company: $13,714,672.55
Valley Forge Insurance Company: $8,816,415.23
National Fire Insurance Company of Hartford: $1,392,930.27
American Casualty Company of Reading, Pennsylvania: $640,739.98.

23. Therefore, for the reasons set forth above, it is respectfully requested that plaintiffs be awarded their damages as set forth in paragraph 22 above plus their reasonable attorneys' fees and expenses, as set forth in paragraph 21 above.

Lawrence Boysen

Sworn to before me this
23rd day of May, 2017

Notary Public

YOLANDA JIMENEZ
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
September 24, 2017