```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE:

 4   TERRORIST ATTACKS ON
     SEPTEMBER 11, 2011                          03 MD 1570 (GBD)(SN)
 5
     ------------------------------x
 6
                                                 May 25, 2017
 7                                               11:00 a.m.

 8   Before:

 9                       HON. SARAH NETBURN,

10                                              Magistrate Judge

11                          APPEARANCES

12   COZEN O'CONNOR
          Attorneys for Plaintiffs' Executive Committee
13   BY:  SEAN P. CARTER

14   MARTIN F. McMAHON & ASSOCIATES
          Attorneys for Defendant Jelaidan
15   BY:  MARTIN F. McMAHON
          NICHOLAS KIPA

16

17

18

19

20

21

22

23

24

25
```

1          (In chambers; phone conference)

2          THE COURT:  Good morning.  This is Judge Netburn.  I
3  have been given a call-in number, and in the future you are
4  welcome to just provide that number to me rather than trying to
5  have me patch in once you are all on the line.

6          I am here with my law clerk and with a court reporter.
7  I am going to ask the parties who intend to speak to state
8  their names for the record, and to remind everybody that before
9  you speak you should remind us all who is speaking so that your
10 comments can be appropriately attributed.

11         I don't need everybody who is on the line to
12 necessarily state their appearance.  And if there are others on
13 the line who don't state their appearance right now because
14 they don't intend to speak, but then later have occasion to
15 speak, just be sure to state your appearance at that time.

16         So may I ask first who is on the line for the
17 plaintiffs?

18         MR. CARTER:  Good morning, your Honor.  Sean Carter,
19 from Cozen O'Connor, on behalf of the plaintiffs' executive
20 committee.

21         THE COURT:  Thank you.

22         And for the defendant.

23         MR. McMAHON:  Good morning, your Honor.  This is
24 Martin McMahon, and I have with me an associate Nick Kipa, and
25 we represent Wael Jelaidan.

1             THE COURT:  Thank you.

2             So I have the various letters filed over the last few
3    weeks related to Defendant Jelaidan's efforts or not to secure
4    an OFAC license, and my view of the state of affairs is that
5    Mr. McMahon has not acted with alacrity here, and not until
6    these motions were filed, it appears, that now some progress
7    has been made.  I reviewed the e-mail string that you printed
8    out and filed suggesting that you now have a point person at
9    the appropriate office at the Department of Treasury to move
10   this forward.

11            Since filing your submission, Mr. McMahon, is there
12   anything further to report?

13            MR. McMAHON:  Not at this time, your Honor.  I will
14   explain something.

15            We are working now with Heather Epstein.  I think she
16   is in the office of general counsel.  She fortuitously was in a
17   meeting with her colleagues, and they were discussing all the
18   letters they received from me.  So then she returned the call
19   and said, Mr. McMahon, we are sorry we didn't get back to you,
20   but we are now going to try to assist you, and if you have any
21   questions, please feel free to call.

22            So that, I think, reflects what the problem is over at
23   the agency, your Honor, especially since no new players have
24   come in.  We just happened to be being discussed at a meeting
25   nine months after our first submission.

1              So my goal, your Honor, in all of this was to
2    establish some sort of human being contact at OFAC, because in
3    the past that's been effective for me.
4              Now, I should explain, your Honor, I have never done
5    one of these before.  When we 12 years ago applied for
6    licenses, cited by Mr. Carter, I believe we just sent in a fax
7    and four days later we would get a license.  So I did lose an
8    associate who was conversant with that process, and he left for
9    greener pastures.  I now have a new associate, Nick Kipa, who
10   is here, and he did the best he could with this electronic
11   license preparation.  Again, I have never done a license for a
12   non-client, and there appears to be, according to Nick, no box
13   to check for that situation.  But Heather Epstein has assured
14   me that if there are any hiccups on the license application,
15   that she will contact me.
16             So to answer your question again, we haven't heard
17   from her recently.  I told Nick to check in with her -- we have
18   a direct dial number -- and to continue to report to the Court.
19   I tried to reach her today, or I did reach her, and this is
20   where the application stands.
21             So I apologize on some occasions, your Honor, when I
22   should have informed the Court there was no progress just to
23   make sure, but I have done my best, your Honor, to try to bring
24   about the license application, and again, I apologize.  I have
25   had some issues with my personal health, your Honor.  I have to

1  go to dialysis three days a week.  I went there today this
2  morning, and that has cut about 20 billable hours out of my
3  schedule.  Again, I am working with a new associate who doesn't
4  have the experience that the other one had.
5        So, again, I apologize, your Honor.  I think I adopted
6  the correct strategy to try to get somebody to have a dialogue
7  with, and when they were sitting in the meeting, they were
8  discussing the letters that I sent in, three or four, and
9  somebody finally decided to get back to us.
10       THE COURT:  Mr. McMahon, I am sorry to hear about your
11 health, and I hope that that improves, but what do you say in
12 connection with your failure to file the status reports every
13 60 days as ordered by the Court?
14       MR. McMAHON:  Your Honor, that is my fault.  I think
15 in retrospect, of course, I should have filed something and
16 said, I don't have anything to report, but consistent with the
17 obligation to the Court, this is my report.  I am still trying
18 to send in letters, etc.  I apologize, your Honor.  I messed up
19 on that.
20       THE COURT:  Mr. Carter, I have read the lengthy
21 submissions from the plaintiffs' executive committee.  Do you
22 have anything further that you wish to add to be heard by the
23 Court?
24       MR. CARTER:  Only a few minor points, your Honor.
25       One relates to the procedural status of the

1   proceedings against Defendant Jelaidan.

2            As your Honor is aware, there was extensive motion
3   practice which resulted in the sanction award for which the
4   current OFAC license is needed.  While our fee petition for
5   that sanction award was pending, we received discovery from
6   another defendant, Yasin al-Qadi, which included information
7   that indicated that Defendant Jelaidan had successfully
8   assisted al-Qadi in obtaining bank records associated with
9   Jelaidan's accounts for purposes of enabling al-Qadi to respond
10  to a Swiss investigation; and, as a result of that, it became
11  clear to us, at least in our mind, that at periods earlier in
12  the case, when Defendant Jelaidan had been representing to the
13  Court that he had no means to obtain his banking records, he
14  was in fact successfully doing so for the benefit of another
15  defendant.

16           As a result of that, we filed a motion asking Judge
17  Maas to permit us to file an additional application for fees as
18  a sanction for those earlier misrepresentations.  Judge Maas
19  authorized us to do so at a hearing on March 22, 2016.  We had
20  not filed that additional application for sanctions simply
21  because the original award had not been paid.

22           So in terms of what we are requesting in the present
23  moment, I think the most efficient means would be simply for us
24  to ask to include this OFAC issue in the sanctions petition
25  Judge Maas previously authorized us to file.

1    THE COURT:  Well, before you file anything, I would
2 like to at least move forward a little bit, given that there
3 has now been contact with OFAC, and see what happens over the
4 next few months.
5    So what I am inclined to do is to direct Mr. McMahon
6 to continue his efforts.  I am going to order that you provide
7 detailed status reports to me every 30 days, Mr. McMahon.
8    MR. McMAHON:  Fine, your Honor.
9    THE COURT:  A detailed status report does not mean
10 nothing has happened in the last 30 days.  In every report I
11 expect you to demonstrate to me the ways in which you have made
12 efforts to move this along, even if it means that you are
13 harassing whoever you're in touch with at OFAC.  I expect you
14 to be aggressively pursuing this, and I want a detailed report
15 which has dates of contact and the form of communication so
16 that I am satisfied that you are truly focusing on this issue.
17    I want those reports to be filed every 30 days.  I
18 will fine you, Mr. McMahon, as counsel -- because I believe
19 that this is a problem of your making and not of your client's
20 making -- I will fine you $100 for every day after the 30-day
21 period that you fail to submit a status report to me, payable
22 directly to the clerk of court.  My hope is that you will not
23 have to pay that fine, but four every day that follows the
24 30-day mark, I will fine you $100, you personally.
25    MR. McMAHON:  I understand, your Honor.  Again, I

1    apologize for inflicting on the Court this basic clerical
2    problem to get the application going.
3             THE COURT:  Mr. Carter, my request is that you hold
4    off on filing any subsequent sanction motion, at least so we
5    can see what happens in the next coming months with respect to
6    this particular issue.
7             MR. CARTER:  That's fine, your Honor.
8             THE COURT:  Anything further?
9             MR. McMAHON:  Yes, your Honor.  I think in terms of
10   the prejudice issue, it is my understanding that the bank
11   account is an interest bearing account, so I don't think they
12   are losing anything, and that's a fortunate situation.
13            THE COURT:  Thank you.
14            Anything further?
15            MR. CARTER:  Your Honor, I have one unrelated case
16   management order that's probably best to bring to your
17   attention now.
18            Your Honor had previously issued an order directing
19   the parties to submit a comprehensive protocol for depositions.
20   That is currently due on May 29, which is Memorial Day.  The
21   defendants' executive committee had requested the opportunity
22   to take a first shot at drafting the protocol, and we have not
23   yet received it.  They expect to provide it to us within the
24   next day.  But given that we are only receiving it a few days
25   before the May 29 deadline, we wrote to the defendants'

H5P8911C

1  executive committee earlier in the week and suggested that we
2  may have to extend that to give the plaintiffs an opportunity
3  to review what they submit and meet and confer with them.  So
4  you will probably be receiving this afternoon a letter request
5  to adjust that deadline.
6          THE COURT:  That's fine.  For what are probably
7  obvious reasons, I am not going to issue an order without the
8  defendants' executive committee present, but I will look out
9  for the order and understand the situation.
10         Happy Memorial Day.  Apologies for setting a deadline
11 that fell on Memorial Day.  We didn't intend for that.
12         MR. CARTER:  Thank you, your Honor.
13         MR. McMAHON:  Thank you, your Honor.
14         (Adjourned)