# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

IN RE:  TERRORIST ATTACKS ON
SEPTEMBER 11, 2001
_____

)
)
)
)
)

**Civil Action No. 03 MDL 1570 (GBD)**
**ECF Case**

This document relates to:

*Ashton, et al. v. al Qaeda, et al.,* No. 02-cv-6977
*Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-5970
*Cantor Fitzgerald Assocs., et al. v. Akida Inv. Co.*, et al. No. 04-cv-7065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-7279
*McCarthy, et al. v. Kingdom of Saudi Arabia*, No. 16-cv-8884
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9663
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9937
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-117
*DeSimone v. Kingdom of Saudi Arabia*, No. 17-cv-348
*Aiken, et al v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-450
*The Underwriting Members of Lloyd's Syndicate 53, et al. v. Kingdom of Saudi Arabia, et al.*,
    No. 17-cv-2129
*The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.* No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-3887
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-3908
*Abrams, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-4201
*Abtello et al. v. Kingdom of Saudi Arabia et al.*, No. 17-cv-05174
*Aasheim, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-5471

## MEMORANDUM OF LAW IN SUPPORT OF
## RENEWED MOTION TO DISMISS OF THE SAUDI HIGH COMMISSION FOR
## RELIEF OF BOSINA & HERZEGOVINA

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)
*Attorneys for the Saudi High Commission for Relief
of Bosnia & Herzegovina*

August 1, 2017

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

A.      The Saudi High Commission .................................................................................... 2

B.      Proceedings ............................................................................................................... 4

      1.      Initial Rulings and Related Appeals ....................................................... 4

      2.      *Doe v. Bin Laden*.................................................................................... 5

      3.      Proceedings After *Doe v. Bin Laden*..................................................... 5

      4.      JASTA and the Present Remand............................................................. 6

C.      Allegations Related to SHC ...................................................................................... 8

ARGUMENT ...................................................................................................................... 10

      PLAINTIFFS DO NOT PLEAD AND CANNOT PROVE GROUNDS FOR FSIA JURSISDICTION OVER THE SHC ................................................................. 10

A.      Plaintiffs Do Not Sufficiently Allege That SHC or Its Official, Employee, or Agent Committed a *Tortious* Act ....................................................................... 12

B.      Plaintiffs Do Not Sufficiently Allege or Come Forward With Evidence That the Tortious Act of SHC or Its Official, Employee, or Agent *Caused* Plaintiffs' Injuries ....................................................................................................................... 20

      1.      Plaintiffs Must Allege That SHC or Its Official, Employee, or Agent Was a *But-For* Cause of the September 11 Attacks................................... 21

      2.      Plaintiffs Must Also Allege That SHC or Its Official, Employee, or Agent Was a *Proximate* Cause of the September 11 Attacks........................... 22

      3.      Under These Principles, Plaintiffs Have Not Alleged a Causal Connection Between SHC's Actions and the September 11 Attacks ...................... 24

CONCLUSION..................................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................................ 27

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander & Alexander of N.Y., Inc. v. Fritzen,*
  68 N.Y. 2d 968 (1986) ................................................................................................. 13

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ..................................................................................................... 22

*Argentine Republic v. Amerada Hess Shipping Corp.,*
  488 U.S. 428 (1989) ..................................................................................................... 10

*Bank of Am. Corp. v. City of Miami, Fla.,*
  137 S. Ct. 1296 (2017) ................................................................................................. 22

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................... 18

*Bigio v. Coca-Cola Co.,*
  675 F.3d 163 (2d Cir. 2012) .................................................................................. 13, 16

*Bridge v. Phoenix Bond & Indemnity Co.,*
  553 U.S. 639 (2008) ..................................................................................................... 21

*Burrage v. United States,*
  134 S. Ct. 881 (2014) ................................................................................................... 21

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V.* v.
  *Pemex–Exploración Y Producción,* 832 F.3d 92 (2d Cir. 2016) ................................. 2

*Dejesus v. HF Mgmt. Servs. LLC,*
  726 F.3d 85 (2d Cir. 2013) .......................................................................................... 18

*Doe v. Bin Laden,*
  663 F.3d 64 (2d Cir. 2011) ............................................................................................ 5

*Doe v. Islamic Salvation Front,*
  257 F. Supp. 2d 115 (D.D.C. 2003) ............................................................................ 25

*Duane Thomas LLC v. Wallin,*
  8 A.D.3d 193 (N.Y. App. Div. 2004) .......................................................................... 17

*First Nationwide Bank v. Gelt Funding Corp.,*
  27 F.3d 763 (2d Cir. 1994) .......................................................................................... 12

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
  582 F.3d 393, 399 (2d Cir. 2009) ............................................................. 2

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ........................................................... 14, 19

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992).............................................................................. 21

*In re Terrorist Attacks on September 11, 2001*,
  134 F. Supp. 3d 774 (S.D.N.Y. 2015) .................................. 6, 10, 14, 20

*In re Terrorist Attacks on September 11, 2001*,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005) ............................................. 4, 15

*In re Terrorist Attacks on September 11, 2001*,
  392 F. Supp. 2d 539 (S.D.N.Y. 2005) ............................... 4, 10, 11, 17

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008) ...................................................................... 4

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 118 (2d Cir. 2013) ....................................... 22, 23, 24, 25

*In re Terrorist Attacks on September 11, 2001*,
  740 F. Supp. 2d 494 (S.D.N.Y. 2010) ........................... 14, 15, 16, 20

*In re Terrorist Attacks on September 11, 2001*,
  741 F.3d 353 (2d Cir. 2013) ................................................................... 5

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
  513 U.S. 527 (1995)............................................................................ 22

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006) ............................................................... 13

*Okusami v. Psychiatric Inst. of Wash., Inc.*,
  959 F.2d 1062 (D.C. Cir. 1992)........................................................... 20

*Robinson v. Gov't of Malaysia*,
  269 F.3d 133 (2d Cir. 2001) ............................................................... 12

*Rohland v. Syn-Fuel Assocs-1982 Ltd. P'ship*,
  879 F.Supp. 322 (S.D.N.Y. 1995) ....................................................... 14

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ................................................. 21, 22, 23, 24

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) .......................................................................................... 21

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ........................................................................................ 10

*Swarna v. Al-Awadi*,
    622 F.3d 123 (2d Cir. 2010) ..................................................................... 12, 17

*Treppel v. Biovail Corp.*, No. 03-CV-3002
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ......................................... 13

*United States v. Int'l Bhd. Of Teamsters,*
    141 F.3d 405 (2d Cir. 1998) ......................................................................... 17

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013) ................................................................................... 21

*Weiss v. Nat'l Westminister Bank PLC,*
    768 F.3d 202 (2d Cir. 2014) ......................................................................... 14

**Statutes**

18 U.S.C. § 1962 ..................................................................................................... 23

18 U.S.C. § 2331 ..................................................................................................... 12

18 U.S.C. § 2333 ..................................................................................................... 21

28 U.S.C. § 1604 ..................................................................................................... 10

28 U.S.C. § 1605(a)(5) ....................................................................................... 6, 10

28 U.S.C. § 1605A .............................................................................................. 4, 6

28 U.S.C. § 1605B(2) ............................................................................................. 19

28 U.S.C. § 1605B(b) ........................................................................................ 6, 20

28 U.S.C. § 1605B(b)(2) .................................................................................. 12, 17

28 U.S.C. §1605B(b) ............................................................................................. 11

42 U.S.C. § 3604(b) ............................................................................................... 22

42 U.S.C. § 3605(a) ............................................................................................... 22

**Other Authorities**

162 Cong. Rec. at S2845 (May 17, 2016) (Sen. Cornyn) ............................................. 11

Anti-Terrorism Act of 1990 ("ATA") ......................................................................... 6

Exec. Order No. 13224, 66 FR 49079 (2001) .............................................................. 8

Prosser and Keeton on Torts § 41 (5th ed. 1984) ...................................................... 22

Pub. L. No. 114-222, 130 Stat. 852 (2016) (codified at, *inter alia*, 28 U.S.C. § 1605B) .............. 1

Pub. L. No. 94-583, 90 Stat. 2891 1976 (codified as amended at, *inter alia*, 28 U.S.C. §§ 1602-1611) ............................................................................................................... 1

W. Prosser, Law of Torts § 46 (4th ed. 1971) ............................................................ 19

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 2

Federal Rule of Civil Procedure 12(b)(2) ..................................................................... 2

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 2

Federal Rule of Civil Procedure 60(b) ......................................................................... 5

## INTRODUCTION

Fourteen years have passed since Plaintiffs first alleged that the Saudi High Commission ("SHC") – an agency of the Kingdom of Saudi Arabia ("Saudi Arabia" or "KSA"), created to assist victims of Serbian genocide in Bosnia-Herzegovina – knowingly and intentionally conspired with, and aided, the terrorist organizations that committed one of the greatest atrocities in American history.   No court has ever found Plaintiffs' conclusory and threadbare allegations legally sufficient to establish jurisdiction over SHC or Saudi Arabia under the Foreign Sovereign Immunities Act of 1976 ("FSIA").[1]   This time, Plaintiffs, armed with a statutory amendment – the Justice Against Sponsors of Terrorism Act ("JASTA")[2] – recycle the same fatally vague, threadbare, and wholly conclusory allegations.   But neither time, nor the passage of a statutory amendment eliminating some of SHC's foreign immunity defenses, can change what has always been true:   SHC had no role in the September 11 attacks.   Plaintiffs' choice to sue SHC is especially misguided because SHC's very mission is to alleviate suffering by victims and survivors of violence that, like the September 11 attacks, is too terrible to comprehend.

To meet the foreign sovereign immunities exception created by JASTA, Plaintiffs must properly allege and present competent and admissible evidence of:   1) a tortious act by either SHC or its official, employee, or agent; 2) that was done within the scope of office, employment, or agency; and 3) that caused the September 11 attacks.   Plaintiffs' recycled allegations do not and cannot meet those elements.   What was true fourteen years ago remains true today:   SHC did not commit, did not conspire to commit, did not encourage, and did not condone the September 11 attacks.   Thus, this Court should dismiss Plaintiffs' claims against SHC (1) under Federal

---

[1]  Pub. L. No. 94-583, 90 Stat. 2891 (1976) (codified in relevant part as amended at 28 U.S.C. §§ 1602-1611).

[2]  Pub. L. No. 114-222, 130 Stat. 852 (2016) (codified in relevant part at 28 U.S.C. § 1605B).

Rule of Civil Procedure 12(b)(1), because this Court lacks subject-matter jurisdiction (even after JASTA) over SHC; (2) under Rule 12(b)(6) because the Plaintiffs' complaints fail to state claims on which relief can be granted; and (3) under Rule 12(b)(2) because the Court lacks personal jurisdiction over SHC, which has no contacts with the State of New York, or anywhere else in the United States.  Nor have Plaintiffs alleged that SHC expressly aimed any intentional tort at the United States.[3]

SHC adopts, and incorporates by reference, all arguments made by Saudi Arabia in its renewed motion to dismiss that are applicable to SHC, including without limitation, the Kingdom's analysis of the causation requirement, its analysis of the standards applicable to these motions to dismiss, its analysis of jurisdictional discovery, and its analysis of constitutional issues.

## BACKGROUND

### A. The Saudi High Commission

SHC was formed in 1993 at a time of civil war in the former Yugoslavia.  In 1994, Bosnian Muslims and Croats reached a peace agreement and formed the Federation of Bosnia-Herzegovina, but the Bosnian Serbs, supported by neighboring Serbia under the control of dictator Slobodan Milosevic, continued the war against the Federation.  Serbian atrocities included the destruction of historical treasures – mosques, libraries, and entire ancient cities – as well as brutal massacres of thousands of innocent civilians.  Decl. of Saud bin Mohammad Al-

---

[3]   SHC acknowledges that its due process claims are barred by *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex–Exploración Y Producción*, 832 F.3d 92, 102-03 (2d Cir. 2016) (stating that "[t]he jurisdictional protections of the Due Process Clause do not apply to 'foreign states and their instrumentalities.'" (quoting *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009)).  However, SHC respectfully asserts lack of personal jurisdiction to preserve this position for later review.

Roshood ¶ 3 (*Al-Roshood Decl.*).  The United States hosted talks at Wright-Patterson Air Force Base, and the 1995 Dayton Peace Accord ended the fighting.  *Al-Roshood Decl.* ¶ 4.

During and after the civil war, there was much interest among the citizenry and the government of KSA in supporting humanitarian causes in Bosnia-Herzegovina.  In Decision No. 17419, dated 2/12/1412 (1993 Gregorian), the President of the Council of Ministers of Saudi Arabia, then-King Fahd bin Abdulaziz Al-Saud, decreed the formation of SHC by High Order.  The same High Order named as President of SHC his Royal Highness Prince Salman bin Abdulaziz Al-Saud, a Saudi Royal Family member who was then a high-ranking government official and the Governor of Riyadh Province (and is now King).  Then-King Fahd vested in SHC and its President, then-Prince Salman, sole authority to collect donations and provide aid and humanitarian relief in Bosnia-Herzegovina, so KSA would "speak with one voice" as a nation toward Bosnia-Herzegovina.  *Al-Roshood Decl.* ¶¶ 5, 6.

Since its formation, SHC, acting on behalf of KSA, has funded a great many humanitarian relief efforts, and provided foreign aid directly to the Bosnian government.  Humanitarian and charitable relief has included care for orphans in Sarajevo; providing or funding medicines and hospital supplies and equipment; supporting pilgrimages to the Holy City of Mecca and meals for the Ramadan fast; and funding scholarships for students to study in Jordan.  SHC funds have also rebuilt numerous schools and cultural and religious treasures.  *Id.* ¶¶ 12-13.  Throughout its efforts in Bosnia-Herzegovina, SHC worked closely with the United Nations High Commission for Refugees and the United Nations Educational, Scientific and Cultural Organization, which had missions overlapping with those of SHC.  *Id.* ¶¶ 15-19.

## B. Proceedings

### 1. Initial Rulings and Related Appeals

In 2005 and 2006, this Court granted Saudi Arabia's and SHC's motions to dismiss for lack of jurisdiction under the FSIA.[4]  In *Terrorist Attacks I*, this Court concluded that the FSIA's non-commercial tort exception to foreign sovereign immunity does not apply because Plaintiffs' claims against Saudi Arabia could not "overcome the discretionary function exception to the tortious acts exception."  349 F. Supp. 2d at 802-04.  In *Terrorist Attacks II*, this Court held that Saudi Arabia's immunity under the FSIA extends to SHC, which the Court found is "an organ of the Kingdom of Saudi Arabia."  392 F. Supp. 2d at 553.  The Court held that SHC, too, is entitled to immunity under the discretionary-function exclusion from the tortious acts exception. *See id.* at 555.

On appeal, the Second Circuit affirmed on alternative grounds.  *See In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ("*Terrorist Attacks III*"), *cert. denied*, 557 U.S. 935 (2009).  The Second Circuit held that Plaintiffs could not invoke the non-commercial tort exception for "claims . . . expressly predicated on a state-sponsored terrorist act."  *Id.* at 75.  The court held that such claims could be brought solely under the exception for state-sponsored terrorism, 28 U.S.C. § 1605A.  It was (and is) undisputed that Saudi Arabia and SHC have not been designated as a state sponsor of terrorism, and that therefore neither Saudi Arabia nor SHC can be sued under § 1605A.  *See* 538 F.3d at 86-90.  The Second Circuit did not reach the discretionary-function ground of Judge Casey's ruling or any other alternative grounds for defending the judgment.

---

[4]  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ("*Terrorist Attacks I*") (Casey, J.) (dismissing claims against Saudi Arabia); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005) ("*Terrorist Attacks II*") (Casey, J.) (dismissing claims against SHC).

### 2. *Doe v. Bin Laden*

In 2011, the Second Circuit revisited the question addressed in its 2008 decision in *Terrorist Attacks III*: whether the FSIA's non-commercial torts exception to immunity can ever provide a basis for jurisdiction over a claim involving alleged support for terrorism. *See Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) (per curiam). Partially overruling *Terrorist Attacks III*, the court held that "the terrorism exception, rather than limiting the jurisdiction conferred by the noncommercial tort exception, provides an additional basis for jurisdiction." *Id.* at 70 & n.10.

Shortly after *Doe*, Plaintiffs moved under Federal Rule of Civil Procedure 60(b) for relief from the final judgments in favor of Saudi Arabia and SHC. This Court denied that motion, ECF No. 2578, but the Second Circuit reversed. *See In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013) ("*Terrorist Attacks VII*"). The Second Circuit concluded that *Doe* warranted reopening the final judgments dismissing the cases against Saudi Arabia and SHC so as to remove the "disparity between the *Terrorist Attacks* plaintiffs and the [*Doe*] plaintiff where none should ever have existed." *Id.* at 359.

### 3. Proceedings After *Doe v. Bin Laden*

On remand, Saudi Arabia and SHC again moved to dismiss, contending that: (1) Plaintiffs did not allege plausibly or come forward with competent and admissible evidence that SHC, or any official or employee of SHC committed a tortious act or omission within the United States (*i.e.*, the entire-tort rule); (2) SHC's decision on how to spend humanitarian and foreign assistance funds is a discretionary function; and (3) Plaintiffs did not allege plausibly or come forward with evidence that SHC caused the September 11 attacks. ECF No. 2894. In response, Plaintiffs filed a 587-paragraph Averment of Facts ("Averment"). Plaintiffs also sought leave to file a Consolidated Amended Pleading of Facts and Evidence that was substantively identical to the Averment. ECF Nos. 2891, 2892.

This Court granted Saudi Arabia and SHC's motion to dismiss and denied Plaintiffs' motion to amend, ruling that "[t]he allegations in the Complaint alone do not provide this Court with a basis to assert jurisdiction over Defendants," and that "[f]iling the Averment of Facts [would be] futile, . . . because the additional allegations do not strip [Saudi Arabia and SHC] of sovereign immunity." *In re Terrorist Attacks on September 11*, *2001*, 134 F. Supp. 3d 774, 782-84 (S.D.N.Y. 2015) ("*Terrorist Attacks VIII*") (concluding that Plaintiffs' Averment, like their Complaint, does "not allege[] a tortious act or omission by Saudi Arabia or the SHC"). Plaintiffs appealed to the Second Circuit.

### 4. JASTA and the Present Remand

On September 28, 2016, Congress enacted JASTA.   JASTA creates a new FSIA exception for

> any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by—
>
>> (1) an act of international terrorism in the United States; and
>>
>> (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b).  Unlike the non-commercial tort exception, *id.* § 1605(a)(5), JASTA does not incorporate an entire-tort rule or a discretionary-function exception.  And unlike the previous exception for acts of state-sponsored terrorism, *id.* § 1605A, the new exception created by JASTA is applicable to a defendant that has *not* been designated by the Executive Branch as a state sponsor of terrorism.  JASTA also permits claims against foreign sovereigns under the Anti-Terrorism Act of 1990 ("ATA").

Acknowledging that "JASTA was intended to apply to this case," the parties asked the Second Circuit to vacate this Court's dismissal order and remand the case for further consideration by this Court.  Joint Mot. To Vacate and Remand, *In re Terrorist Attacks on September 11, 2001*, No. 15-3426, ECF No. 255-1, at 2 (2d Cir. filed Oct. 21, 2016).  Saudi Arabia and SHC reserved "any available arguments concerning JASTA, including but not limited to constitutional challenges," and "any other arguments for dismissal that are not foreclosed by JASTA."  *Id.* at 2 n.1.  The court of appeals granted the motion, leaving all such arguments to this Court "in the first instance."  Order, *In re Terrorist Attacks on September 11, 2001*, No. 15-3426, ECF No. 287 (2d Cir. Feb. 7, 2017).

On March 17, 2017, Plaintiffs filed their present Consolidated Amended Complaint ("CAC").  In addition to the plaintiffs identified in the pleadings incorporated into the CAC, *see* CAC ¶ 21 n.4, the CAC has been adopted by plaintiffs in several other actions via a Notice to Conform or Short Form Complaint.  Separately, others ("the *Ashton* plaintiffs") filed a complaint against Saudi Arabia on March 20, 2017.  *See Ashton v. Kingdom of Saudi Arabia*, No. 1:17-cv-02003-GBD-SN, ECF No. 1 (S.D.N.Y. filed March 20, 2017).  Although it does not name SHC as a defendant, that complaint includes an allegation – that SHC employed certain al Qaeda operatives – that is not included or incorporated (by any of the operative complaints) in the Consolidated Amended Complaint.[5]  The Ashton Plaintiffs previously brought claims against SHC in 2002.  *See Ashton v. Al Qaeda Islamic*, 1:02-cv-06977-GBD-SN, ECF No. 1 (S.D.N.Y. filed Sept. 4, 2002) *as amended by* the Sixth Amended Consolidated Master Complaint, No. 02-

---

[5]  The complaint, without providing any evidence, makes the conclusory allegation that "SHC employed various al Qaeda operatives, including Ali Ahmed Ali Hamad, Abdelsamad al Bahrani, Hassam al Din, Abu Miqdad al Dosari, Abu Abdelmalik al Libi and Yusuf Rahman in Bosnia, and Abdullah al Matrafi in Mecca."  *See* Compl., 1:17-cv-2003, ¶ 43(s).  The CAC and the other operative complaints had not previously alleged that SHC employed Abdelsamad al Bahrani, Abu Abdelmalik al Libi, Yusuf Rahman, and Abdulla al Matrafi.

cv-6977-GBD-SN, ECF No. 465 (S.D.N.Y. filed Sept. 30, 2005) ("*Ashton* Compl."). This motion to dismiss also applies to the *Ashton* Complaint.

### C. Allegations Related to SHC

Plaintiffs' sparse allegations amount to nothing more than "Headline News" sound-bites and unsubstantiated assertions, designed to create impressions about some imagined role that SHC has had in supporting world terror. Plaintiffs' allegations fall into three by-now-familiar categories: guilt-by-association allegations that group SHC with other Islamic charities (collectively referred to as "Da'awa organizations"); outdated and immaterial allegations concerning SHC's presence in Bosnia-Herzegovina; and conclusory and unsubstantiated allegations about SHC's support for al Qaeda.

As to Plaintiffs' guilt-by-association allegations, Plaintiffs allege that:

- "[S]upport flowed continuously from the Kingdom's da'awa organizations to al Qaeda, providing the massive funding and other essential resources that enabled bin Laden to build and maintain al Qaeda." (CAC ¶ 70);

- "The material support provided by the Saudi da'awa organizations included aid and operational assistance closely related to al Qaeda's efforts to target the United States through large scale terrorist attacks, including the September 11th attacks . . . ." (CAC ¶ 85);

- "Saudi government da'awa organizations enabled Osama bin Laden to build and sustain the al Qaeda organization, and acquire the resources and assets necessary to carry out the September 11th attacks." (CAC ¶ 98).

These threadbare and wholly conclusory statements, which lump SHC with other Islamic charities – some of which have been designated as terrorist organizations[6] – do not attribute any

---

[6] "On October 12, 2001, the United States Treasury Department designated Rabita Trust a Specially Designated Global Terrorist Entity and froze its assets." *Terrorist Attacks II,* 392 F. Supp. 2d at 560, 560 n.7; *see also* Exec. Order No. 13224, 66 FR 49079 (2001), *amended in part by* 70 FR 8499 (2005). Beginning in 2002, certain branches of Al Haramain were designated by the United States as terrorist organizations. *See* Exec. Order No. 13224, 66 FR 49079, *amended in part by* 70 FR 490979, *available at https://www.treasury.gov/ofac/downloads/sdnlist.pdf*

conduct specifically to SHC; do not demonstrate a connection between SHC charitable donations and the September 11 attacks; and do not show that SHC was deliberately indifferent or knew that its funds might be used improperly.

The second type of allegation made by Plaintiffs consists of outdated and largely immaterial allegations, such as SHC's presence in Bosnia-Herzegovina.[7]  Plaintiffs allege that:

- SHC has been criticized by "aid agencies and Bosnian intellectuals" for importing a radical form of Islam to Bosnia (*Ashton* Compl. ¶ 330; Third Am. Compl., *Burnett v. Al Baraka Inv. & Dev. Corp*., ECF No. 29 No. 1:02 Civ-1616 (D.D.C. filed Nov. 22, 2002), ECF No. 29[8] ("*Burnett* Compl.") ¶ 393));

- SHC "has been identified by Bosnian intelligence as a source of Taibah's funds" (*Ashton* Compl. ¶ 286; *Burnett* Compl. ¶ 298; *see* First Am. Compl., *Federal Ins. Co. v. al Qaida*, No. 03-cv-6978, ECF No. 772 (S.D.N.Y. filed Sept. 30, 2005) ECF No. 772("*Fed. Ins.* Compl.") ¶ 243));

- Investigators have been unable to account for "approximately $41 million donated to" SHC (*Burnett* Compl. ¶ 407; *Ashton* Compl. ¶ 338; *Fed. Ins.* Compl. ¶ 184);

- Al Qaeda "mujahideen fighters began entering Bosnia-Herzegovina in 1992, frequently disguised as relief workers for the SHC." (*Fed. Ins.* Compl. ¶ 183; CAC App'x 1, ¶ 524);

- The head of the Zagreb office of SHC allegedly was a member of a group that planned a 1993 bombing in Croatia (which apparently never took place).  (*Fed. Ins.* Compl. ¶ 138);

Like Plaintiffs' guilt-by-association allegations, these allegations offer nothing to support Plaintiffs' claims that SHC is somehow responsible for the September 11 attacks (many years later).  Even if the allegations are taken at face value, they show only that SHC might have had a few rogue employees who might (or might not) have been involved in terrorism-related activities remote in time and place from the September 11 attacks in the United States.  None of the

---

[7]  All of the factual allegations against SHC in the *Ashton* Complaint concern SHC's activities in Bosnia.  None of the outdated and immaterial allegations in the *Ashton* Complaint attempts to show that SHC provided funds to al Qaeda, much less that it did so knowingly or with deliberate indifference.  *See Ashton* Compl. ¶¶ 329-339.

[8]  The *Burnett* action was originally filed in the United States District Court for the District of Columbia.  The case was transferred to the Southern District of New York by Order of the Judicial Panel on Multidistrict Litigation on December 9, 2003.  *See* ECF No. 1.

allegations demonstrates that SHC knowingly provided logistical support for al Qaeda or the September 11 attacks.

Finally, in a transparent attempt to cure the foregoing deficiencies, Plaintiffs throw in a few wholly conclusory allegations that SHC has supported al Qaeda itself:

- "[P]roselytizing organizations (including the SHC) . . . knowingly, directly, and extensively supported al Qaeda's targeting of the United States by funding and collaborating intimately with al Qaeda."  (CAC ¶ 53);

- Supposedly suspicious material, most notably before and after pictures of the World Trade Center, were found on a computer located in offices used by SHC in Bosnia in a raid conducted in October 2001 (CAC ¶ 94; *Burnett* Compl. ¶ 397; *Ashton* Compl. ¶ 334; *Fed. Ins.* Compl. ¶¶ 186, 458);

- "The SHC's material sponsorship of al Qaeda also encompassed arms trafficking on behalf of Osama bin Laden's organization, and the laundering of millions of dollars for al Qaeda's benefit."  (CAC ¶ 97).

These scurrilous allegations prove nothing.

## ARGUMENT

## PLAINTIFFS DO NOT PLEAD AND CANNOT PROVE GROUNDS FOR FSIA JURSISDICTION OVER THE SHC

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  It provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States," unless a specified exception applies.[9]  28 U.S.C. § 1604; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  This Court previously ruled that Plaintiffs failed to bring their case against SHC and Saudi Arabia within the FSIA's non-commercial tort exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(5).  *Terrorist Attacks VIII*, 134 F. Supp. 3d at 787.

---

[9]  In *Terrorist Attacks II*, this Court ruled that "SHC . . . made a prima facie showing that it is a foreign sovereign."  392 F. Supp. 2d at 553.

Plaintiffs' failure of pleading in this case, despite three opportunities to bring claims, requires dismissal of their claims against SHC once again. Twice before, this Court has found that Plaintiffs' "conclusory, largely boilerplate, allegations" do not provide a sufficient basis to strip SHC or Saudi Arabia of its immunity. *See id.* at 784 n.9; *Terrorist Attacks II*, 392 F. Supp. 2d at 553. This time around, Plaintiffs, relying *entirely* on JASTA, recycle the *same* "conclusory, largely boilerplate, allegations." As noted above, Plaintiffs seek to implicate SHC in the September 11 terrorist attacks by tarring it with guilt by association with persons or entities that allegedly had something to do with those attacks; by making outdated and immaterial accusations of misconduct that occurred long before and far from, and has no connection to, the September 11 terrorist attacks; and by making wholly conclusory assertions of key elements of their causes of action.

Plaintiffs proceed as if JASTA grants a free pass to exercise jurisdiction over a foreign sovereign on the basis of fatally vague, overbroad, and entirely conclusory pleadings. Not so. To the contrary, although JASTA was enacted to apply specifically to this case, the new exception to foreign sovereign immunity created by JASTA was also intended to be "narrowly tailor[ed]" and designed to "alleviate the concern[]" that it would "derogate too far from *traditional principles of foreign sovereign immunity*." *See* 162 Cong. Rec. at S2845 (May 17, 2016) (Sen. Cornyn) (emphasis added). Congress therefore imposed three critical jurisdictional requirements that must be met before a court can lift the immunity of a foreign sovereign. JASTA requires: 1) a tortious act; 2) within the scope of employment or agency; 3) that caused the September 11 attacks. 28 U.S.C. §1605B(b).

Plaintiffs' allegations flunk those requirements. Plaintiffs have not sufficiently alleged a tortious act (including the requisite scienter elements and proper identification of an actor within

the scope of employment or agency).  And Plaintiffs have not sufficiently alleged causation.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal quotation marks omitted).  The complaints should therefore be dismissed, both for want of subject-matter jurisdiction and for failure to state a claim.

### A.  Plaintiffs Do Not Sufficiently Allege That SHC or Its Official, Employee, or Agent Committed a *Tortious* Act

To exercise jurisdiction over a sovereign defendant, JASTA requires that the act of the foreign state or its officials, employees, or agents be "*tortious.*"  28 U.S.C. § 1605B(b)(2) (emphasis added).  In assessing whether there is sufficient allegation or proffer of evidence to support the conclusion that SHC or its official, employee, or agent committed a "tortious act," this Court must first "determine [] the relevant activities" of SHC.  *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 142 (2d Cir. 2001).  Second, this Court is required to determine whether those acts were tortious.  *Id*.  "In making the assessment of whether the plaintiff has alleged actions on the part of the defendant that constitute a tort, the district court may . . . take[] an excursion into the same legal territory that it would visit in the course of deciding the case on the merits."  *Id*. at 143.

Plaintiffs' state-law claims arise under the tort law of the State of New York.  *See Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) ("In determining whether an alleged action is a tort, we have applied the law of the state in which the locus of injury occurred – here, New York law.").  Plaintiffs' federal-law claims arise under various provisions of the ATA, 18 U.S.C. § 2331 *et seq.*

Plaintiffs do not allege, of course, that SHC committed the September 11 attacks.  Rather, both Plaintiffs' state-law claims and their federal-law claims rest on theories of secondary liability for aiding and abetting or conspiracy.  Both sets of claims require Plaintiffs to allege and prove a culpable mental state related to the September 11 attacks.

Specifically, "under New York law, a plaintiff generally states a claim for aiding and abetting upon alleging facts sufficient to support an inference of . . .  the defendant's knowledge of the underlying tort; and . . . that the defendant provided substantial assistance to advance the underlying tort's commission."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (internal quotation marks and alternation omitted).  New York does not recognize an independent tort of conspiracy, *see Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); however, it does allow a claim for civil conspiracy to "connect the actions of separate defendants with an otherwise actionable tort."  *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986).  Therefore, "a claim for civil conspiracy may stand only if it is connected to a separate underlying tort."  *Treppel v. Biovail Corp.*, No. 03-Cv-3002 (PKL), 2005 WL 2086339, at *5 (S.D.N.Y. Aug. 30, 2005).  Once this threshold showing is satisfied, the plaintiff must establish four additional elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and; (4) resulting damage or injury."  *Id.*

As for federal law, aiding-and-abetting liability requires plaintiffs to plead and prove the following three elements: (1) "a wrongful act . . .  caus[ing] an injury" by a party aided by the defendant; (2) the defendant's knowledge of his "role as part of an overall illegal or tortious activity at the time that he provided the assistance"; and (3) the defendant's "knowing[] and substantial[] assist[ance]" in the "principal violation."  *Halberstam v. Welch*, 705 F.2d 472, 477

13

(D.C. Cir. 1983).   The doctrine of civil conspiracy requires proof of four elements: (1) "an agreement between two or more persons" (2) "to participate in an unlawful act," or tortious conduct, (3) "an injury caused by an unlawful" or tortious "overt act" performed by one of the conspirators, and (4) that the "overt act was done pursuant to and in furtherance of the common scheme." *Id.*

To meet these requirements, Plaintiffs must allege facts showing that SHC committed the tortious act with "know[ledge]" of or "deliberate[] indifferen[ce]" to the commission of "terrorist acts." *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 517 (S.D.N.Y. 2010) ("*Terrorist Attacks V*"); *see also Weiss v. Nat'l Westminister Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014) ("[w]hile § 2333(a) does not include a mental state requirement on its face, it incorporates the knowledge requirement from § 2339B(a)(1)").   Finally, even if Plaintiffs presented claims that do not require intent, knowledge, or deliberate indifference (which they do not),[10] JASTA precludes jurisdiction over "tortious . . . acts that constitute mere negligence."   28 U.S.C. § 1605B(d).

Plaintiffs' complaints do not meet those standards.   In *Terrorist Attacks VIII*, 134 F. Supp. 3d 774, this Court characterized Plaintiffs' factual pleadings as alleging that SHC "provid[ed] funding to entities that allegedly funded al Qaeda," *id.* at 784, and found that Plaintiffs did not "allege[] a tortious act . . . by Saudi Arabia or the SHC, or of any official or employee of Saudi Arabia or the SHC while acting within the scope of his office or employment." *Id.*   In light of Plaintiffs' recycled allegations, this finding remains true.   Plaintiffs allege broadly that SHC gave money in the form of humanitarian aid to somebody who gave it to somebody else –

---

[10]   Plaintiffs' civil Racketeer Influenced and Corrupt Organizations ("RICO") claims, CAC ¶¶397-409, also require knowledge of the terrorist acts.   *See Rohland v. Syn-Fuel Assocs-1982 Ltd. P'ship*, 879 F. Supp. 322, 333 (S.D.N.Y. 1995).

with the money ultimately making its way into the hands of terrorists.  However, as this Court previously recognized, providing substantial assistance to a terrorist organization is *not* a tort unless the provider acts with "*know[ledge]*" of or "*deliberate[] indifferen[ce]*" to the commission of "terrorist acts."  *Terrorist Attacks V*, 740 F. Supp. 2d at 517 (emphasis added).

Accordingly, to show that SHC committed a tortious act, Plaintiffs must allege facts that show that SHC knew, or at the very least was deliberately indifferent, that the money it provided in the form of humanitarian aid would ultimately make its way into the hands of al Qaeda and be used to carry out the September 11 attacks.  The deficiencies of Plaintiffs' Consolidated Amended Complaint are glaring, and are not remedied by JASTA.  These allegations do not demonstrate any level of knowledge or deliberate indifference by SHC that its funds would be used improperly.

To be sure, Plaintiffs' Consolidated Amended Complaint includes the boilerplate allegation that SHC knowingly provided funds or otherwise provided some type of unspecified "support" to al Qaeda.  *See* CAC ¶ 53 (alleging that "proselytizing organizations (including the SHC) . . . "knowingly, directly, and extensively supported al Qaeda's targeting of the United States by funding and collaborating intimately with al Qaeda").  Not only is this allegation completely conclusory, it is legally insufficient and is not backed by any evidence.  As this Court has recognized, "[t]he law does not permit Plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints." *See Terrorist Attacks I*, 349 F. Supp. 2d at 801 (quotation marks omitted).

The most fatal flaw of this threadbare recital, however, is that it does not even allege that SHC acted knowingly or with deliberate indifference in providing funds or support *for the commission of the September 11 attacks in particular*.  Yet that is exactly what Plaintiffs must

allege and support with competent proof. *See Terrorist Attacks V*, 740 F. Supp. 2d at 517 (requiring "know[ledge]" of or "deliberate[] indifferen[ce]" to the commission of the "*terrorist acts*") (emphasis added); *see also Bigio*, 675 F.3d at 172 (for plaintiff to state a claim for aiding and abetting under New York law, plaintiff must allege facts sufficient to support an inference of "defendant's *knowledge of the underlying tort*") (emphasis added) (quotation marks and alteration omitted). Moreover, this conclusory statement cannot suffice in light of sworn statements, uncontradicted by any evidence, that SHC expended a significant majority of its funds "to support relief for refugees and orphans," provide assistance "to widows, and poor families, . . . [and] repair . . . schools, homes, medical centers, and mosques, hundreds of which were destroyed during the [Bosnian Civil] war." *See Al-Roshood Decl*. ¶ 12.

In the few instances in which Plaintiffs attempt to provide support for their conclusory statements, they rely on yet additional conclusory statements that do not, in any event, support the inference that SHC provided funds to al Qaeda *at all*, let alone that it knowingly funded terrorism or was deliberately indifferent to the funding of terrorism. *See, e.g.,* CAC ¶ 97 (alleging that "SHC . . . launder[ed] . . . millions of dollars for al Qaeda's benefit, as reflected by U.N. and Bosnian investigations") (citing CAC App'x ¶¶ 530, 542). In support of this statement, Plaintiffs allege that a "U.N. sponsored investigation further determined that [then-]Prince Salman bin Abdul Aziz al Saud, the head of the SHC, transferred in excess of $120 million from his *personal* accounts and SHC accounts under his control" to an al Qaeda front. CAC App'x ¶ 530 (emphasis added).

Apart from Plaintiffs' failure to provide any support for this statement, and the fact that it does not allege that SHC provided funding for the September 11 attacks themselves, the plain language of JASTA's new exception requires that a claim be based on an "act or acts of the

foreign state, or of any official, employee, or agent of that foreign state while acting within the *scope of his or her office, employment, or agency*." 28 U.S.C. § 1605B(b)(2) (emphasis added). The funds allegedly transferred by then-Prince Salman from his *personal* accounts are not within the scope of employment.[11]  Moreover, Plaintiffs do not even allege that then-Prince Salman was acting within the scope of his office, or that he served as SHC's agent, when he allegedly transferred funds from SHC's account.  *See S*warna, 622 F.3d at 144.  ("an employer [or principal] is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business") (quotation marks omitted); *Duane Thomas LLC v. Wallin*, 8 A.D.3d 193, 194 (N.Y. App. Div. 2004) (a principal "cannot be held liable for . . . outrageous conduct of an agent who was acting for personal motives unrelated to the furtherance of [the principal's] business").  There is no liability for unauthorized (and allegedly criminal) acts of agents, particularly where the affected principal is a foreign sovereign.  *See United States v. Int'l Bhd. Of Teamsters,* 141 F.3d 405, 409 (2d Cir. 1998) ("[I]n no jurisdiction that our research has uncovered does an employee who embezzles from the corporation act in the scope of employment in doing so.") (quotation marks omitted).  The allegations against then-Prince Salman are factually baseless, but even if true they would not state a claim against SHC.[12]

---

[11]  Then-Prince Salman was originally a defendant in these actions, but all claims against him were dismissed in 2005 in the same opinion in which claims against SHC were originally dismissed.  *See Terrorist Attacks II*, 392 F. Supp. 2d at 556; *see also* ECF No. 1594 (entry of final judgment dismissing claims against then-Prince Salman).  The Second Circuit affirmed, the Supreme Court denied certiorari, and no steps have ever been taken to attempt to reopen that final judgment.

[12]  Plaintiffs' other support for this conclusory statement is yet another conclusory statement that is remote in place and time from the September 11 attacks, and fails to link the alleged conduct to the September 11 attacks.  *See* CAC App'x 1, ¶ 542 (alleging that General Mohammad Farah Hassan Aideed, the al Qaeda-affiliated Somali warlord responsible for the massacre of American troops during the 1993 Battle of Mogadishu, received weapons shipment from the SHC).

Other allegations of misconduct by specified individuals similarly fail to show tortious conduct that can be attributed to SHC because those individuals were acting within the scope of their office, employment, or agency, let alone that any SHC official, employee, or agent carried out an act related to the September 11 attacks *while* acting within the scope of his or her office, employment, or agency.  The closest the Consolidated Amended Complaint comes to doing so is in its Averment, which makes the vague and conclusory statement that alleged SHC employee Ali Hamad "was sent to Bosnia in 1992 to help coordinate al Qaeda's military operations," and that Hamad was "arrested and convicted for participation in a car bombing in the city of Mostar." CAC App'x 1, ¶ 526.  Not only do Plaintiffs not allege that Hamad was acting within the scope of employment or agency, but also they fail to allege that Hamad engaged in any act related to the September 11 attacks.  Tellingly, the only act Plaintiffs allege Hamad participated in – the car bombing in the city of Mostar – is one that is not only remote in place and time from the September 11 attacks, but one where Plaintiffs acknowledge that Hamad may *not* have been employed by SHC when this act was committed.  *Id.* (stating that, at the time of the car bombing in the city of Mostar, "Hamad was *ostensibly* employed by . . . SHC") (emphasis added); *see also id.* ¶ 298 (stating that "[s]everal . . . al Qaeda members planned and carried out terrorist attacks from offices of the SHC, while *ostensibly* employed by" SHC) (emphasis added).   Such conclusory allegations, which are supported only by additional conclusory recitals, and which fail to include any specific facts regarding the alleged tortious conduct, must be dismissed.  *See Dejesus v. HF Mgmt. Servs. LLC*, 726 F.3d 85, 87 (2d Cir. 2013) ("A complaint must . . . contain more than 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Like the Consolidated Amended Complaint, the *Ashton* Plaintiffs also fail to plead that any alleged SHC employee acted within the scope of employment or agency. The closest the *Ashton* Plaintiffs come to doing so is by making allegations apparently designed to implicate SHC in terrorist conduct, stating that "five Algerians" were arrested in Bosnia-Herzegovina on October 21, 2001, on suspicion of plotting to attack the U.S. embassy in Bosnia. *Ashton* Compl. ¶ 331. The supposed leader of the group "has been identified as a top al Qaeda lieutenant." *Id.* ¶ 332. Finally, "[o]ne of the six Algerian terror suspects, Sabir Lamar, worked for [SHC] as an Arabic language teacher." *Id.* ¶ 333. The *Ashton* Plaintiffs do not allege that the "five Algerian" terror suspects were involved in the September 11 attacks – rather, at most these alleged malfeasants conspired to commit a wholly different terrorist attack, which was foiled. Furthermore, the terrorist conduct that the *Ashton* plaintiffs attribute to Sabir Lamar is not alleged to have been connected to his employment at SHC as an Arabic language teacher. *See* 28 U.S.C. § 1605B(2) (requiring "tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting *within the scope* of his or her office, employment, or agency") (emphasis added). It is telling that the *Ashton* Plaintiffs have not sought to sue Lamar for any role in the September 11 attacks. If Lamar is not responsible, it is difficult to see how SHC, whose alleged relationship to the attacks depends on Lamar's alleged employment with the SHC, could be involved.

Nor can Plaintiffs cure the defects in their complaint through the doctrine of civil conspiracy. "The element of agreement is a key distinguishing factor for a civil conspiracy claim." *Halberstam*, 705 F.2d at 477. "It is only where means are employed, or purposes are accomplished, *which are themselves tortious*, that the conspirators who have acted but have promoted the act will be held liable." W. Prosser, Law of Torts § 46, at 293 (4th ed. 1971)

(emphasis added).  As this Court previously found, Plaintiffs' threadbare recitals do not allege that SHC committed a tortious act, *see Terrorist Attacks VIII*, 134 F. Supp. 3d at 778, let alone that it entered into an agreement to commit a tortious act.  And, even if Plaintiffs sufficiently alleged that SHC committed a tortious act (which they do not), specific factual allegations from which an agreement can be inferred are required to meet Plaintiffs' pleading requirement.  *See Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992) (failure to allege facts making out an agreement required dismissal of civil conspiracy claim).  As this Court previously recognized, "the factual allegations pled must support a reasonable inference that the defendant purposefully . . .  conspired with . . . al Qaeda in the commission of an act of terrorism." *Terrorist Attacks V*, 740 F. Supp. 2d at 514.  Plaintiffs do not allege facts from which it can be inferred that SHC entered into any agreement, let alone an agreement to engage in tortious conduct resulting in the September 11 attacks.

Thus, Plaintiffs fail to allege the required mental state or intent.  Without pleading and being prepared to prove that SHC acted with deliberate indifference or knowledge that its alleged conduct would result in the September 11 attacks, or that SHC entered into an agreement to carry out those attacks, Plaintiffs have not stated claims against SHC under JASTA's exception to foreign sovereign immunity.

**B.  Plaintiffs Do Not Sufficiently Allege or Come Forward With Evidence That the Tortious Act of SHC or Its Official, Employee, or Agent *Caused* Plaintiffs' Injuries**

JASTA requires that the "tortious act" committed by the foreign state or its officials, employees, or agents must have "caused" . . . the "physical injury to person or property or death" for which Plaintiffs seek money damages.  28 U.S.C. § 1605B(b).  Thus, causation is a jurisdictional requirement of § 1605B.  Because Plaintiffs seek recovery for injuries arising from the September 11 attacks, any exercise of this Court's jurisdiction must be grounded on an act

committed by SHC that *caused* the September 11 attacks.  Plaintiffs must show that SHC was both a but-for and proximate cause of the September 11 attacks.

### 1.   Plaintiffs Must Allege That SHC or Its Official, Employee, or Agent Was a *But-For* Cause of the September 11 Attacks

As used in JASTA, the phrase "caused by" imposes a requirement of actual causality, *i.e.*, proof that the harm – injuries resulting from the September 11 attacks – "would not have occurred in the absence of – that is, but for – the defendant's conduct."  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (internal quotation marks omitted) (interpreting "because of" as requiring but-for causation); *Burrage v. United States*, 134 S. Ct. 881, 887 (2014) (interpreting "results from" and similar phrases to require "but-for" causation); *see also* W. Keeton, D. Dobbs, & D. Owen, Prosser and Keeton on Law of Torts § 41, at 265 (5th ed. 1984) (stating that an action "is not regarded as a cause of an event if the particular event would have occurred without it.")  The Supreme Court has read other similar phrases (*e.g.*, "based on" and "by reason of") to impose a but-for causation requirement.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007) ( "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition"); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) ("by reason of" requires plaintiff to show that defendant's prohibited conduct "was a 'but for' cause of his injury"); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992) ( "by reason of" in civil RICO statute requires plaintiff to show that defendant's violation was a "but for" cause of plaintiff's injury).

Similarly, in interpreting the causal requirement of the ATA, 18 U.S.C. § 2333 – which allows recovery of damages "by reason of an act of international terrorism," and under which Plaintiffs' federal-law claims arise – the Second Circuit, in *Rothstein v. UBS AG*, followed the Supreme Court's approach in *Holmes*, and quoted *Holmes*'s reasoning that the causal phrase *by*

*reason of* "required a showing that the defendant's violation not only was the 'but for' cause of his injury, but was the proximate cause as well."  708 F.3d 82, 95 (2d Cir. 2013) (quoting *Holmes*, 503 U.S. at 267-68); *see also Terrorist Attacks VI*, 714 F.3d 118 at 123  ("*Terrorist Attacks VI*") (following *Rothstein*, and quoting the same passage from *Holmes*).

### 2.  Plaintiffs Must Also Allege That SHC or Its Official, Employee, or Agent Was a *Proximate* Cause of the September 11 Attacks

It is not enough that the defendant's act was a but-for cause of any injuries sustained; where a causal relationship must be shown, traditional principles of tort law also require plaintiffs to show proximate cause.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) (interpreting "caused by" in a different jurisdictional statute as "requiring what tort law has traditionally called 'proximate causation'")*;* W. Keeton, D. Dobbs, & D. Owen, Prosser and Keeton on Law of Torts,  § 41, at 264  ("As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.").

To establish proximate cause in a tort action, a plaintiff must do more than show that his or her injuries foreseeably flowed from the alleged statutory violation.  *See Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017).  Instead, the Plaintiff is required to show '"some *direct relation* between the injury asserted and the injurious conduct alleged.'"  *Id.* at 1306 (quoting *Holmes*, 503 U.S. at 268  (emphasis added)).[13]  The Supreme Court has "repeatedly applied directness principles" to statutes like JASTA and the ATA, both of which incorporate common-law concepts of causation.  *Id.* at 1306; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (interpreting the Racketeer Influenced and Corrupt Organizations Act, 18

---

[13]  The statutory provision at issue in *City of Miami* was the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(b), 3605(a).  In ruling that proximate cause requires "some direct relation" between the injury and the injurious conduct, the Supreme Court observed that a claim for damages under the FHA "is akin to [other] tort action[s]."  *Id.* at 1305 (quotation marks omitted).

U.S.C. § 1962, as requiring "the alleged violation [to have] led directly to the plaintiff's injuries").  As the Supreme Court recently cautioned, "[t]he general tendency in . . . cases [dealing with common law concepts of causation] . . . is *not to go beyond the first step*."  *City of Miami*, 137 S. Ct. at 1306 (emphasis added).  The Second Circuit has repeatedly heeded this warning.  *See, e.g.*, *Rothstein*, 708 F.3d at 97; *Terrorist Attacks VI*, 714 F.3d at 118.

In *Rothstein*, the Second Circuit held that a private right of action under the ATA required a plaintiff to show that the allegedly wrongful conduct – UBS's provision of funds to a state sponsor of terrorism (Iran) – was a proximate cause of plaintiffs' injuries.  Like the Supreme Court in *City of Miami*, the Second Circuit  recognized that proximate cause goes beyond "reasonabl[e] foreseeab[ility]"; the court held that plaintiffs must also show that the defendant's act was a "*substantial factor in the sequence of responsible causation*."  *Rothstein*, 708 F.3d at 91.  As the Second Circuit put it:

> [W]hile [Plaintiffs'] Complaint alleges that UBS knew full well that the cash dollars it was providing to a state-sponsor of terrorism . . .would be used to cause and facilitate terrorist attacks . . . these are conclusory allegations that do not meet *Twombly's* plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to [the state sponsor of terror] and the terrorist attacks by [the terrorist organizations] that injured plaintiffs.

*Id.* at 97 (internal quotation marks omitted).  Similarly, in *Terrorist Attacks*, the Second Circuit held that allegations broadly stating that defendants indirectly provided funds to al Qaeda were "strikingly similar" to the allegations rejected in *Rothstein* and failed to state a claim under the ATA because such pleadings did not show that the provision of funds to terrorist organizations was a proximate cause of plaintiffs' injuries in particular.  *Terrorist Attacks VI*, 714 F.3d at 124. As the Second Circuit stated:

> These allegations are insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short.  . . . .  Simply put, plaintiffs do not allege that the . . . defendants participated in the September 11, 2001 attacks or

that they provided money directly to al Qaeda; nor are there factual allegations that the money allegedly donated by the . . . defendants to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks.

*Id.*

### 3. Under These Principles, Plaintiffs Have Not Alleged a Causal Connection Between SHC's Actions and the September 11 Attacks

Because causation is a jurisdictional requirement in the context of § 1605B, each of Plaintiffs' claims requires them to plead that something SHC did caused the September 11 terrorist attacks, and Plaintiffs' failure to do so requires dismissal.  JASTA does nothing to change this requirement.  *See Terrorist Attacks VI*, 714 F.3d at 125 ("Had Congress intended to allow recovery upon a showing lower than proximate cause, we think it either would have so stated expressly or would at least have chosen language that had not commonly been interpreted to require proximate cause for the prior 100 years.") (quotation and alterations omitted).

Plaintiffs' allegations – that SHC gave money in the form of humanitarian aid to somebody who gave it to somebody else, with the money ultimately making its way into the hands of terrorists – are precisely the kind of conclusory and threadbare allegations the Second Circuit rejected in *Rothstein* and *Terrorist Attacks VI*.  Such allegations are not sufficient to establish proximate cause under either the ATA or JASTA's new exception to foreign sovereign immunity.  It is not enough for Plaintiffs to show that their injuries foreseeably flowed from the alleged tortious act, *see City of Miami*, 137 S. Ct. at 1306; Plaintiffs must also show "some direct relation between the injury asserted and the injurious conduct alleged."  *Id.* (internal quotation marks omitted).  "The general tendency in . . . cases [dealing with common law concepts of causation] . . . is *not to go beyond the first step*."  *Id.* (emphasis added) (internal quotation marks omitted).  This "first step," as the Second Circuit recognized in *Rothstein* and *Terrorist Attacks VI*, requires Plaintiffs to allege that SHC's actions were a proximate cause of the injuries sustained as a result

24

of the September 11 attacks. *See Terrorist Attacks VI*, 714 F.3d at 124 ("We . . . are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda – as alleged by plaintiffs – proximately caused the September 11, 2001 attacks or plaintiffs' injuries."). *See also Doe v. Islamic Salvation Front,* 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (plaintiffs' failure to show a direct link between a particular defendant and alleged acts of terrorism, and reliance on "conclusory statements" about the defendant's role defeated the cause of action, warranted dismissal).

Even the most creative interpretation of the allegations against SHC in these complaints cannot begin to establish a direct link between Plaintiffs' alleged tortious conduct and the September 11 attacks. The allegations do not show "direct relation" nor do they link any SHC monies to the September 11 attacks specifically. As some of the Plaintiffs conceded once before, "[i]f that's the burden" – and even after JASTA, it still is – "we don't have a case." Motion Hearing, *Burnett v. Al Baraka Inv. & Dev. Corp*., No.1:02 Civ-1616, ECF No. 209, at 78 (D.D.C. filed July 15, 2003).[14] Plaintiffs did not have a case then, and they do not have a case now.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' claims in their entirety.

---

[14]  This is especially true when Plaintiffs' conclusory and largely boilerplate allegations are contrasted with the sworn declaration of Mr. Al-Roshood, which not only explains in great detail that SHC is a legitimate humanitarian organization, but also provides the results of an audit conducted in 2002 by Bosnian authorities of the disbursements of funds by SHC from 1998 to 2001. *See Al-Roshood Decl*. Exh. 3. The audit revealed in detail many categories of humanitarian aid, and expressed not one word of concern about diversion of funds to al Qaeda or any other non-humanitarian purpose. *Id.*

August 1, 2017

Respectfully submitted,

/s/Lawrence S. Robbins

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
   ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)

*Attorneys for the Saudi High Commission for Relief of Bosnia & Herzegovina*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of August 2017, I caused a copy of the foregoing document to be served electronically pursuant to the Court's ECF system on the consolidated MDL docket and the individual dockets for the following cases, which I understand to include all but two[*] of the consolidated MDL cases in which the Saudi High Commission for Relief of Bosnia & Herzegovina is named as defendant.

*Ashton, et al. v. al Qaeda, et al.,* No. 02-cv-6977
*Federal Insurance Co., et al. v. al Qaida, et al.,* No. 03-cv-6978
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 03-cv-9849
*Continental Casualty Co., et al. v. Al Qaeda, et al.,* No. 04-cv-5970
*Cantor Fitzgerald Assocs., et al. v. Akida Inv. Co.,* et al. No. 04-cv-7065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.,* No. 04-cv-7279
*Aguilar, et al. v. Kingdom of Saudi Arabia,* et al., No. 16-cv-9663
*Addesso, et al. v. Kingdom of Saudi Arabia,* et al., No. 16-cv-9937
*Hodges, et al. v. Kingdom of Saudi Arabia,* et al., No. 17-cv-117
*Aiken, et al v. Kingdom of Saudi Arabia,* et al., No. 17-cv-450
*The Underwriting Members of Lloyd's Syndicate 53, et al. v. Kingdom of Saudi Arabia,*
    *et al.,* No. 17-cv-2129
*The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.* No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia,* et al., No. 17-cv-3887
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia,* et al., No. 17-cv-3908
*Abrams, et al. v. Kingdom of Saudi Arabia,* et al., No. 17-cv-4201
*Abtello et al. v. Kingdom of Saudi Arabia et al.,* No. 17-cv-05174
*Aasheim, et al. v. Kingdom of Saudi Arabia,* et al., No. 17-cv-5471

/s/ Lawrence S. Robbins
Lawrence S. Robbins

---

[*] The remaining two individual cases in which the Saudi High Commission for Relief of Bosnia & Herzegovina is named as a Defendant are *McCarthy, et al. v. Kingdom of Saudi Arabia,* No. 16-cv-8884 and *DeSimone v. Kingdom of Saudi Arabia,* No. 17-cv-348. The Saudi High Commission for Relief of Bosnia & Herzegovina is presently unable to file in those dockets and is serving counsel in those cases via the MDL docket and electronic mail. A separate letter will also be sent notifying the Court.