IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |
| *This document relates to:* | ORAL ARGUMENT REQUESTED |
| *The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; and *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>AL RAJHI BANK'S MOTION TO DISMISS</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC  20005

August 21, 2017

*Counsel for Al Rajhi Bank*

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................2

ARGUMENT ......................................................................................................................4

I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK UNDER THE ANTI-TERRORISM ACT ......................................................................................7

    A.    Decisions Of The Second Circuit And This Court In These MDL Proceedings Foreclose Plaintiffs' Claims Against The Bank Under The ATA ....................................................................................................................8

        1.    The Second Circuit's Decision Affirming Dismissal Of Claims Against The Bank Bars Plaintiffs' Claims For Primary Liability...............9

        2.    This Court's Prior Dismissal Of Claims Against The Bank Bars Plaintiffs' Claims For Secondary Liability ...............................................11

    B.    Plaintiffs Fail To Allege That The Bank Had Knowledge Or Intent As Required Under The ATA ....................................................................................12

        1.    Plaintiffs Fail To Allege That The Bank Knew That Any Charity Or Any Bank Customer Supported Al Qaeda...........................................14

        2.    Plaintiffs Cannot Impute Alleged Knowledge Of Others To The Bank .......................................................................................................18

    C.    Plaintiffs Otherwise Fail To Allege Primary Liability Against The Bank Under Section 2333(a) ............................................................................20

        1.    Plaintiffs Fail To Allege That The Bank's Actions Proximately Caused Plaintiffs' Injuries..............................................................20

        2.    Plaintiffs Fail To Allege That The Bank Committed An Act Of "International Terrorism"..............................................................23

            a.    Plaintiffs Fail To Allege Conduct By The Bank That Is "Violent" Or "Dangerous To Human Life"..................................23

            b.    Plaintiffs Fail To Plead Any Predicate Offense...........................24

            c.    Plaintiffs Fail To Allege The Requisite Objective Intent .............27

    D.    Plaintiffs Otherwise Fail To Plead Secondary Liability Against The Bank Under Section 2333(d)(2) ...................................................................28

        1.    Plaintiffs Fail To Allege That The Bank Aided And Abetted Al Qaeda ........................................................................................28

        2.    Plaintiffs Fail To Allege That The Bank Conspired With Al Qaeda.........29

II.    PLAINTIFFS FAIL TO ALLEGE ANY BASIS FOR PERSONAL JURISDICTION OVER AL RAJHI BANK.................................................................................31

CONCLUSION.................................................................................35

## TABLE OF AUTHORITIES

**CASES**

*Ahmad v. Christian Friends of Israeli Cmtys.*,
  No. 13 Civ. 3376, 2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014),
  *aff'd* 600 F. App'x. 800 (2d Cir. 2015) ..............................................................7, 12

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ..............................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................5, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................5, 31

*Boim v. Holy Land Found. for Relief & Dev. ("Boim III")*,
  549 F.3d 685 (7th Cir. 2008) ............................................................23-24, 27-28

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016).................................................................................31

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
  274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................................22

*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................................................34, 35

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)...............................................................................................28

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) .......................................................................6, 31

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)............................................................................................31

*Fidelity Bank, Nat'l Ass'n v. Avrutick*,
  740 F. Supp. 222 (S.D.N.Y. 1990).......................................................................19

*Gill v. Arab Bank, PLC ("Gill I")*,
  891 F. Supp. 2d 335 (E.D.N.Y. 2012) ............................................................13, 25

*Gill v. Arab Bank, PLC ("Gill III")*,
  893 F. Supp. 2d 542 (E.D.N.Y. 2012) ......................................................8, 13, 21, 25, 30

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) .......................................................7, 12, 29, 30

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ................................................................................11, 28, 29

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ...............................................................................................................20

*Holder v. Humanitarian Law Project*,
   130 S. Ct. 2705 (2010)........................................................................................................25

*Holmes v. Secs. Inv. Prot. Corp.*,
   503 U.S. 258, 271 (1992).....................................................................................................20

*Karpus v. Hyperion Capital Mgmt.*,
   1997 U.S. Dist. LEXIS 4332 (S.D.N.Y. Apr. 2, 1997)........................................................8-9

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ............................................................................................................30

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006).........................................................................................13, 29

*Linde v. Arab Bank, PLC*,
   384 F. Supp. 2d 571 (E.D.N.Y. 2005) ................................................................................27

*Mastafa v. Australian Wheat Bd. Ltd.*,
   2008 U.S. Dist. LEXIS 73305 (S.D.N.Y. Sep. 25, 2008)................................................13, 29

*O'Neill v. Al Rajhi Bank ("Terrorist Attacks VII")*,
   714 F.3d 118 (2d Cir. 2013), *cert. denied* 134 S. Ct. 2870 (2014) ................................. *passim*

*O'Neill v. Asat Trust Reg. ("Terrorist Attacks VIII")*,
   714 F.3d 659 (2d Cir. 2013), *cert. denied* 134 S. Ct. 2870 (2014)........................3, 32, 33, 34

*Owens v. Republic of Sudan*,
   2017 U.S. App. LEXIS 13695 (D.C. Cir. July 28, 2017) ....................................................30

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010).............................................................................................6, 31

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)................................................................................9, 20, 21, 22, 23

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks I")*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................................................ *passim*

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks III")*,
   538 F.3d 71 (2d Cir. 2008)..........................................................................................33, 34, 35

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd sub nom. O'Neill v. Asat Trust
   Reg.*, 714 F.3d 659 (2d Cir. 2013) ............................................................... 3, 5, 18-19, 34

*In re Terrorist Bombings of U.S. Embassies in E. Afr.*,
   552 F.3d 93 (2d Cir. 2008) ........................................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................ 14

*United States v. Aleskerova*,
   300 F.3d 286 (2d Cir. 2002) .................................................................................... 30

*United States v. Kilkenny*,
   493 F.3d 122 (2d Cir. 2007) .................................................................................... 24

*United States v. Sedaghaty*,
   No. 10-30061 (9th Cir. July 12, 2010), ECF No. 41 .............................................. 16

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009) ................................................................................. 25-26

*U.S. ex rel. Schnitzler v. Follette*,
   406 F.2d 319 (2d Cir. 1969) ...................................................................................... 8

*Vernet v. Bellmore-Merrick Cent. High Sch. Dist.*,
   343 F. Supp. 2d 186 (E.D.N.Y. 2004) ...................................................................... 8

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .................................................................................. 6, 32, 34

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ................................................................... 6, 7, 12, 32, 34

*Weiss v. Nat'l Westminster Bank PLC*,
   453 F. Supp. 2d 609 (E.D.N.Y. 2006) .................................................................... 29

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014) .................................................................................... 13

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) ................................................................. 13, 27, 28

## STATUTES

8 U.S.C. § 1189 ..................................................................................................... 8, 26

18 U.S.C. § 2331 (2000) .......................................................................... 23, 24, 27, 28

18 U.S.C. § 2332 (2000) ............................................................................24, 25, 30

18 U.S.C. § 2333(a) (2000)...................................................................7, 9, 12, 13, 20

18 U.S.C. § 2333(d) (2016) .....................................................4, 7, 8, 11, 12, 13

18 U.S.C. § 2339A (2000) .............................................................................24, 25, 26

18 U.S.C. § 2339B (2000) .............................................................................24, 26, 27

18 U.S.C. § 2339C (2002) ..................................................................................24, 27

Pub. L. 107-197, 116 Stat. 724 (2002)..............................................................27

Pub. L. 114-222, 130 Stat. 852 (2016)................................................................4

## RULES

Fed. R. Civ. P. 12(b)(2)..........................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................4, 8, 9

## OTHER AUTHORITIES

9/11 Commission Report, *available at*
   http://govinfo.library.unt.edu/911/report/911Report.pdf .......................................21

9/11 Monograph on Terrorist Financing, *available at*
   http://govinfo.library.unt.edu/911/staff_statements/
   911_TerrFin_Monograph.pdf ...............................................................15, 17

Brief for the United States as Amicus Curiae,
   *O'Neill v. Al Rajhi Bank*, 134 S. Ct. 2870 (2014)
   (No. 13-318).......................................................................................3, 15, 17

U.S. Dep't of State, "Foreign Terrorist Organizations," *available at*
   http://www.state.gov/j/ct/rls/other/des/123085.htm...............................................17

Al Rajhi Bank reiterates its unequivocal condemnation of the unconscionable attacks of September 11, 2001, and again expresses its sympathy for the victims of those attacks. But, as the Bank has stated repeatedly in this multidistrict litigation and elsewhere, the Bank categorically rejects any suggestion that it somehow supported Al Qaeda or the September 11 attacks. The Bank vigorously opposes this latest attempt to reopen this litigation against the Bank based upon defective and attenuated allegations that are substantively identical to those already rejected by this Court and other courts including the Second Circuit.

Indeed, over the past fifteen years, multiple courts and judges have uniformly held that plaintiffs have failed to allege sufficient facts to state a claim against Al Rajhi Bank — under the Anti-Terrorism Act ("ATA") or otherwise — for support of Al Qaeda or the September 11 attacks. In 2005, this Court dismissed claims against Al Rajhi Bank that are substantively identical to those here and that were advanced by similarly situated plaintiffs — in some instances represented by the same counsel as Plaintiffs here. Those dismissals were affirmed by the Second Circuit in 2013, and the Supreme Court denied certiorari in 2014 after requesting and obtaining the views of the U.S. Solicitor General (who supported the Second Circuit decision and advocated against certiorari).

The Amended Complaint here repeats the defective allegations against Al Rajhi Bank advanced in the actions previously dismissed for failure to state a claim against the Bank. The Amended Complaint also repeats defective allegations of personal jurisdiction over Al Rajhi Bank, even though substantively identical allegations against other defendants in this multidistrict litigation were previously found insufficient to withstand a motion to dismiss for lack of personal jurisdiction. Under controlling Second Circuit authority and prior decisions of

this Court in this multidistrict litigation, this Court should dismiss the Amended Complaint against Al Rajhi Bank for failure to state a claim and lack of personal jurisdiction.

## BACKGROUND

Beginning in August 2002, numerous plaintiffs claiming to have suffered losses resulting from the September 11, 2001 attacks filed various actions in the district courts against hundreds of defendants, including Al Rajhi Bank.  In 2003, the Judicial Panel on Multidistrict Litigation transferred the lawsuits to the U.S. District Court for the Southern District of New York for coordinated and consolidated pre-trial proceedings.  The plaintiffs filed dozens of complaints and amended complaints, as well as numerous more definite statements and RICO statements.

In January 2005, this Court (then the Honorable Richard C. Casey) dismissed the claims against Al Rajhi Bank in their entirety.  *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks I")*, 349 F. Supp. 2d 765, 832-33 (S.D.N.Y. 2005) ("Even accepting all the allegations against Al Rajhi Bank as true, Plaintiffs have failed to state a claim that would entitle them to relief."); *see also* Order of Dismissal at 3, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (S.D.N.Y. May 5, 2005), ECF No. 883 (extending dismissal to all remaining cases consolidated before this Court and stating that "the parties agree and the Court finds that the allegations and evidence presented against these Defendants [including Al Rajhi Bank] in the cases still pending against them do not materially differ from the allegations and evidence presented in the cases already dismissed").

On July 13, 2011, this Court incorporated those rulings into partial final judgments, from which plaintiffs appealed.  In 2013, the United States Court of Appeals for the Second Circuit (Circuit Judge José A. Cabranes, joined by Circuit Judge Reena Raggi, and District Judge Jed S. Rakoff of the Southern District of New York sitting by designation) unanimously affirmed this Court's dismissals of all claims against Al Rajhi Bank (and other defendants).  *O'Neill v. Al*

*Rajhi Bank ("Terrorist Attacks VII")*, 714 F.3d 118, 124-25 (2d Cir. 2013) (finding plaintiffs' allegations "fell short," were "conclusory," and ultimately "failed to state a claim under the ATA upon which relief can be granted against [Al Rajhi Bank]"); *see also In re Terrorist Attacks on September 11, 2001 ("Terrorist Attacks IV")*, 718 F. Supp. 2d 456, 485, 495 (S.D.N.Y. 2010) (dismissing claims against Sulaiman bin Abdulaziz Al Rajhi, the Bank's founder and former Chairman), *aff'd sub nom.*, *O'Neill v. Asat Trust Reg. ("Terrorist Attacks VIII")*, 714 F.3d 659, 675-76 (2d Cir. 2013).

The Supreme Court denied the plaintiffs' petition for a writ of certiorari, 134 S. Ct. 2870 (2014), having called for and received the views of the U.S. Solicitor General.  The Solicitor General argued that "[i]n this case, the court of appeals appropriately focused on the adequacy of petitioners' allegations as a whole, and reasonably concluded that petitioners failed to plausibly allege that [Al Rajhi Bank's and other defendants'] alleged contributions to purported charities foreseeably caused their injuries."  Brief for the United States as Amicus Curiae at 17, *O'Neill v. Al Rajhi Bank*, 134 S. Ct. 2870 (2014) (No. 13-318); *see also id.* at 17-18 ("Petitioners' allegations that the *charities* played an important role in facilitating al Qaeda's operations, without more, do not indicate that petitioners' injuries were the foreseeable result of *respondents'* provision of assistance and services to those charities.  And as the court of appeals observed, petitioners provided no reason to conclude that merely 'providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused the September 11, 2001 attacks.'") (citations omitted); *id.* at 11-12 n.4 ("Petitioners' allegations that the charities held themselves out as bona fide organizations that conducted government-sanctioned activities . . . undercut any inference that [Al Rajhi] Bank was aware of the charities' alleged support for terrorism.").

–3–

On January 15, 2016, the *Lloyd's* Plaintiffs, through longstanding counsel for other plaintiffs in these proceedings, filed a new complaint against three previously dismissed Defendants: Al Rajhi Bank, National Commercial Bank, and Saudi Binladin Group. Pursuant to this Court's order, the *Lloyd's* Plaintiffs filed an Amended Complaint on May 19, 2017 against these three previously dismissed Defendants. Order at 2, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-01570 (S.D.N.Y. May 16, 2017), ECF No. 3584; *Lloyds* First Am. Compl., No. 16-cv-07853, ECF No. 56 ("Am. Compl."). Also in accordance with that order, Plaintiffs in the other consolidated cases against the Bank adopted as controlling the factual, liability, and jurisdictional allegations of the *Lloyd's* Amended Complaint. *See Charter Oak*, No. 17-cv-02651, ECF No. 15; *Arrowood*, No. 17-cv-03908, ECF No. 1; *Addesso*, *Aguilar*, *Aiken*, *Hodges*, *Abarca*, and *Abedhajajreh*, No. 03-md-01570, ECF Nos. 3596, 3602, 3681.

Like the prior complaints, the Amended Complaint seeks to hold Al Rajhi Bank liable under theories of primary and secondary liability under the ATA. For secondary liability, Plaintiffs now rely on the recent ATA amendment, enacted under the Justice Against Sponsors of Terrorism Act ("JASTA"), which provides for claims of aiding and abetting and conspiracy in a new provision (18 U.S.C. § 2333(d)). Pub. L. No. 114-222, § 4(a), 130 Stat. 852 (2016).

Al Rajhi Bank now moves to dismiss the claims against it in the Amended Complaint for failure to state a claim and lack of personal jurisdiction under Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure, respectively.

## ARGUMENT

Prior decisions of the U.S. Court of Appeals for the Second Circuit and this Court in this multidistrict litigation foreclose Plaintiffs' claims. These courts already have considered allegations substantively identical to the allegations in the Amended Complaint and held them to be insufficient to sustain claims against Al Rajhi Bank under theories of both primary and

–4–

secondary liability under the ATA. *See Terrorist Attacks VII*, 714 F.3d at 124-25 (affirming dismissal of ATA claims for failure to plausibly allege facts showing that the Bank's actions proximately caused plaintiffs' injuries); *Terrorist Attacks I*, 349 F. Supp. 2d at 832-33 (dismissing claims based on concerted action liability for failure to plausibly allege facts showing that the Bank knew charities supported terrorism).   On this basis alone, Plaintiffs' claims must be dismissed.

Moreover, it is well established that to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").   In particular, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   This test "asks for more than a sheer possibility that a defendant has acted unlawfully" and regards "plead[ed] facts that are merely consistent with a defendant's liability" as "stop[ping] short of the line between possibility and plausibility of entitlement to relief."   *Id.* (quotation omitted).   As a result, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . dismissal is appropriate." *Terrorist Attacks IV*, 718 F. Supp. 2d at 491 (quotation omitted).

As with the previously dismissed complaints, the Amended Complaint fails to allege sufficient facts to plausibly support Plaintiffs' claims, particularly as to the Bank's purported knowledge and intent, elements required for both primary and secondary liability under the ATA.  Also as before, the Amended Complaint fails to plausibly allege facts showing that the Bank's purported provision of routine banking services and charitable donations proximately

caused Plaintiffs' injuries, as required for primary liability under the ATA, or that such services or donations substantially assisted Al Qaeda to commit the September 11 attacks, as required for aiding-and-abetting liability.  The Amended Complaint similarly fails to plausibly allege facts showing that the Bank entered into any agreement with Al Qaeda or that the Bank's purported conduct was intended to further Al Qaeda's terrorist agenda, as required for conspiracy liability. Accordingly, this Court should dismiss all claims against Al Rajhi Bank because, as with the previously dismissed complaints, Plaintiffs' Amended Complaint lacks sufficient factual content and fails to allege any facially plausible claim for relief.  *See  Terrorist Attacks VII*, 714 F.3d at 122, 125; *Terrorist Attacks I*, 349 F. Supp. 2d at 833.

Furthermore, the Amended Complaint's deficient factual allegations as to Al Rajhi Bank's purported knowledge and any supposed connection between the Bank and the September 11 attacks similarly fail to make a *prima facie* showing of personal jurisdiction over the Bank.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) ("[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists."); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case [of personal jurisdiction] requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.").  For a court "to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (holding that the "relevant 'suit-related conduct' by the defendants [is] the conduct that could have subjected them to liability under the ATA").  The Amended Complaint should be dismissed as to Al Rajhi Bank on this basis, as well.

I.      **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK UNDER THE ANTI-TERRORISM ACT**

Plaintiffs seek to hold Al Rajhi Bank civilly liable under § 2333(a) (*see* Counts II-VII) and § 2333(d)(2) (*see* Count I) of the Anti-Terrorism Act.  The Amended Complaint, however, lacks sufficient factual allegations to state a claim under either section of the ATA.

Section 2333(a) provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  According to the plain language of this provision, a claim must allege, among other things, that (1) the plaintiffs were injured "by reason of" (2) a predicate "act of international terrorism."   And further, (3), "[i]t is well established, that to be liable under the ATA, a party must engage in knowing misconduct."  *Ahmad v. Christian Friends of Israeli Cmtys.*, No. 13 Civ. 3376, 2014 U.S. Dist. LEXIS 62053, *7 (S.D.N.Y. May 5, 2014) (quotation omitted), *aff'd* 600 F. App'x 800 (2d Cir. 2015); *see Waldman*, 835 F.3d at 335 ("To prevail under the ATA, a plaintiff must prove three formal elements:  unlawful *action*, the requisite *mental state*, and *causation*.") (quotation omitted); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 428 (E.D.N.Y. 2009) ("While 18 U.S.C. § 2333(a) does not contain an explicit *mens rea* requirement, courts have interpreted the statute to include a requirement that there be some deliberate wrongdoing by the defendant, in light of the fact that the statute contains a punitive element (i.e. treble damages).").

Plaintiffs also seek to hold Al Rajhi Bank civilly liable under the recently enacted secondary liability provision, § 2333(d)(2), which provides:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C. § 2333(d)(2) (2016).  Thus, to state a claim for aiding and abetting under the ATA, the Amended Complaint must plausibly allege facts showing that Al Rajhi Bank "*knowingly provid*[ed] *substantial assistance*" to a foreign terrorist organization that allegedly caused Plaintiffs' injuries.  *Id.* (emphases added).  To plead a conspiracy claim, the Amended Complaint must plausibly allege facts showing that the Bank not only "(1) *knew* about the aims and objectives of the [alleged] criminal conspirac[y]," but also "(2) *agreed* to the essence of these objectives, and (3) performed acts . . . *intended to* further these objectives."  *Gill v. Arab Bank, PLC ("Gill III")*, 893 F. Supp. 2d 542, 554 (E.D.N.Y. 2012) (emphasis added) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 114 (2d Cir. 2008)).

### A.  Decisions Of The Second Circuit And This Court In These MDL Proceedings Foreclose Plaintiffs' Claims Against The Bank Under The ATA

Prior decisions of the Second Circuit and the Court in these MDL proceedings compel dismissal of Plaintiffs' claims here.  *See U.S. ex rel. Schnitzler v. Follette*, 406 F.2d 319, 322 (2d Cir. 1969) (holding in case involving same "factual and legal background" that "the district court is required to follow a binding precedent of a superior court"); *Vernet v. Bellmore-Merrick Cent. High Sch. Dist.*, 343 F. Supp. 2d 186, 188, 190-91 (E.D.N.Y. 2004) (considering "stare decisis impact of a 1974 decision by this Court involving the same claims and defendant," and granting Rule 12(b)(6) motion based on the 30-year-old prior ruling); *Karpus v. Hyperion Capital Mgmt.*, 1997 U.S. Dist. LEXIS 4332, at *10-11 (S.D.N.Y. Apr. 2, 1997) ("[G]iven the plaintiff's total

failure to allege any facts that might serve to distinguish this case from *Olkey*, the doctrine of *stare decisis* compels me to follow the determination of this issue by the Court of Appeals.").

1.     **The Second Circuit's Decision Affirming Dismissal Of Claims Against The Bank Bars Plaintiffs' Claims For Primary Liability**

In a decision emanating from this multidistrict litigation, the Second Circuit held that allegations by prior plaintiffs in these proceedings were insufficient to sustain claims against Al Rajhi Bank for primary liability under the ATA. *Terrorist Attacks VII*, 714 F.3d at 123-25.  The Second Circuit's decision, which involved similarly situated plaintiffs and substantively identical allegations, is controlling here.

The Second Circuit held that "Congress did not 'intend[] to permit recovery under § 2333 on a showing of less than proximate cause,'" and required plaintiffs to "plausibly allege that [Al Rajhi Bank's] actions proximately caused their injuries."  *Id.* at 123, 125 (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013)).  The Second Circuit held that the prior plaintiffs failed to allege that the Bank's purported actions proximately caused their injury, stating:

> [T]he Rule 12(b)(6) defendants [including Al Rajhi Bank] are alleged to have provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations.  These allegations are insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short.  Simply put, plaintiffs do not allege that the Rule 12(b)(6) defendants participated in the September 11, 2001 attacks or that they provided money directly to al Qaeda; nor are there factual allegations that the money allegedly donated by the Rule 12(b)(6) defendants to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks.
>
> We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda — as alleged by plaintiffs — proximately caused the September 11, 2001 attacks or plaintiffs' injuries.

*Id.* at 124 (citations omitted). Thus, the Second Circuit unanimously affirmed the dismissal of the primary liability claims against the Bank. *Id.* at 125, *cert. denied*, 134 S. Ct. 2870 (2014).

The Amended Complaint repeats allegations substantively identical (*see* Am. Compl. ¶¶ 173-74, 182-83) to those that this Court previously dismissed in *Terrorist Attacks I*, 349 F. Supp. 2d 765, namely that (i) Al Rajhi Bank provided routine banking services to charity fronts for Al Qaeda and persons purportedly affiliated with Al Qaeda, (ii) the Bank knowingly provided funding to those purported charity fronts, and (iii) Al Rajhi family members had ties to persons allegedly affiliated with Al Qaeda. For example:

- **Routine Banking Services.** "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' including Al Haramain, MWL, WAMY, SJRC, and IIRO" (*compare* 349 F. Supp. 2d at 831 (quotations omitted), *with* Am. Compl. ¶ 173);

- Plaintiffs claim the Bank held accounts for and performed banking services for some of the hijackers (*compare* 349 F. Supp. 2d at 831, *with* Am. Compl. ¶ 163);

- Plaintiffs claim that purported Al Qaeda financiers used the Bank to send money (*compare* 349 F. Supp. 2d at 831 (quotation omitted), *with* Am. Compl. ¶¶ 158, 162-63);

- Plaintiffs claim the Bank transferred funds for entities linked to terrorists other than Al Qaeda (*compare* 349 F. Supp. 2d at 831-32, *with* Am. Compl. ¶ 165);

- "Plaintiffs claim Al Rajhi Bank knew or had to know that its depositors, Defendant charities WAMY, MWL, IIRC, and SJRC were material supporters of terrorism" (*compare* 349 F. Supp. 2d at 831, *with* Am. Compl. ¶ 174);

- **Charitable Donations.** Plaintiffs claim the Bank "donat[ed] to certain Defendant charities" (*compare* 349 F. Supp. 2d at 832, *with* Am. Compl. ¶¶ 173, 183);

- **Al Rajhi Family Members.** Plaintiffs claim that "[m]embers of the Al Rajhi family, which owns and controls Al Rajhi Bank, are alleged to have ties to Osama bin Laden's personal secretary," and "are allegedly closely associated with wealthy donors to Osama bin Laden" (*compare* 349 F. Supp. 2d at 832, *with* Am. Compl. ¶¶ 166, 187-88).

*See also* Exhibit 1 (chart comparing allegations against Al Rajhi Bank in the Amended Complaint with allegations against the Bank in previously dismissed complaints).

–10–

Just like the previously dismissed complaints, the Amended Complaint fails to allege any facts showing that the Bank "participated in the September 11, 2001 attacks" or "provided money directly to al Qaeda," or that "money allegedly donated by [Al Rajhi Bank] to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks." *Terrorist Attacks VII*, 714 F.3d at 124. Thus, under the Second Circuit's controlling decision in this multidistrict litigation, Plaintiffs have failed to plead proximate causation and their claims for primary liability under the ATA must be dismissed.

### 2. This Court's Prior Dismissal Of Claims Against The Bank Bars Plaintiffs' Claims For Secondary Liability

This Court in 2005 already considered and rejected the prior plaintiffs' claims against Al Rajhi Bank for secondary liability under the ATA, albeit before the ATA was amended to expressly provide for secondary liability in § 2333(d)(2). *See Terrorist Attacks I*, 349 F. Supp. 2d at 832-33. This Court found insufficient the prior plaintiffs' allegations — which are substantively identical to the Amended Complaint — that "Al Rajhi Bank aided and abetted the September 11 terrorists by donating to certain Defendant charities and acting as the bank for these Defendants." *Id*. at 832; *compare id.*, *with* Am. Compl. ¶¶ 313, 316. This Court held that "concerted action liability requires general knowledge of the primary actor's conduct." 349 F. Supp. 2d at 832 (citing cases); *see also id.* at 798, 800 (holding allegation of funding for Al Qaeda through undesignated charities did not "satisfy *Halberstam*") (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (holding aiding and abetting requires that a "defendant must knowingly and substantially assist the principal violation")).

Secondary liability under § 2333(d)(2), as under *Halberstam*, requires a defendant to "knowingly provid[e] substantial assistance" to the principal violator. Effectively, therefore, this

Court in 2005 already rejected Plaintiffs' copycat claims of secondary liability against Al Rajhi

Bank based on the insufficiency and implausibility of substantively the same allegations:

> Plaintiffs do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities . . . were supporting terrorism. . . . Even accepting all the allegations against Al Rajhi Bank as true, Plaintiffs have failed to state a claim that would entitle them to relief.

*Terrorist Attacks I*, 349 F. Supp. 2d at 833; *see* Am. Compl. ¶ 174 ("At all times relevant, Al

Rajhi Bank and the al Rajhi family members, including Suleiman al Rajhi, were expressly aware

that the charities for which Al Rajhi Bank provided financial services and funding were al Qaeda

fronts . . . .").  The Amended Complaint fails to state a claim for secondary liability against the

Bank under § 2333(d)(2) today for the same reasons already expressed by this Court in 2005.

*Terrorist Attacks I*, 349 F. Supp. 2d at 831-33.

In short, based solely on the prior decisions of the Second Circuit and this Court,

Plaintiffs' claims against the Bank should be dismissed in their entirety, with prejudice.

### B.  Plaintiffs Fail To Allege That The Bank Had Knowledge Or Intent As Required Under The ATA

Even if examined anew, the Amended Complaint fails to state a claim against the Bank.

For claims of primary liability under § 2333(a), Plaintiffs must allege facts supporting a plausible

inference that Al Rajhi Bank acted with knowledge and intent.  *See Waldman*, 835 F.3d at 335;

*Ahmad*, 2014 U.S. Dist. LEXIS 62053, at \*7, *aff'd* 600 F. App'x 800 (2d Cir. 2015); *Goldberg*,

660 F. Supp. 2d at 428 (requiring "deliberate wrongdoing" and "circumstances of aggravation or

outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or

such a conscious and deliberate disregard of the interests of others that the conduct may be called

wilful or wanton") (quotation omitted); *see also Iqbal*, 556 U.S. at 678.

In addition to § 2333(a)'s intrinsic scienter requirement, to allege primary liability under § 2333(a) the Amended Complaint must allege facts that plausibly satisfy the knowledge requirements of the predicate acts of international terrorism. *See Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014) (holding § 2333(a) "incorporates the knowledge requirement from [the alleged predicate act]."); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 42 (D.D.C. 2010) ("[T]he ATA requires allegations of intentional misconduct — in addition to other state-of-mind requirements incorporated in [the alleged predicate acts].").

By its terms, to state a claim for secondary liability under § 2333(d)(2), Plaintiffs must likewise allege facts supporting a plausible inference that Al Rajhi Bank acted with knowledge and intent. 18 U.S.C. § 2333(d)(2) (providing liability for "any person who aids and abets, by *knowingly* providing substantial assistance, or who *conspires* with the person who committed such an act of international terrorism") (emphasis added); *see also Mastafa v. Australian Wheat Bd. Ltd.*, 2008 U.S. Dist. LEXIS 73305, at *18 (S.D.N.Y. Sep. 25, 2008) (holding that common law aiding and abetting liability requires that "a defendant have 'actual knowledge' that it is assisting in the tortious conduct") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)); *see Gill III*, 893 F. Supp. 2d at 554 (holding conspiracy liability requires that a defendant "(1) *knew* about the aims and objectives of the [alleged] criminal conspiracy" to perpetrate a terrorist attack, "(2) *agreed* to the essence of these objectives, and (3) performed acts . . . *intended to* further these objectives") (emphasis added).

Furthermore, the ATA requires the Amended Complaint to allege facts supporting a plausible inference that Al Rajhi Bank knew there was "a substantial probability that Americans would be injured as a result" of the Bank's alleged material support for charities. *Gill v. Arab Bank, PLC ("Gill I")*, 891 F. Supp. 2d 335, 366 (E.D.N.Y. 2012).

All of Plaintiffs' claims under the ATA must be dismissed for failure to plausibly allege facts showing that Al Rajhi Bank acted with knowledge and intent.

> **1.      Plaintiffs Fail To Allege That The Bank Knew That Any Charity Or Any Bank Customer Supported Al Qaeda**

The Amended Complaint contains only impermissible legal conclusions devoid of fact regarding Al Rajhi Bank's purported knowledge (*e.g.*, Am. Compl. ¶ 174 ("Al Rajhi Bank . . . [was] expressly aware that the charities for which Al Rajhi Bank provided financial services and funding were al Qaeda fronts . . . ."); *see id.* ¶¶ 175, 182, 184, 324, 330, 339-40, 356).  Plaintiffs fail to allege facts plausibly showing that the Bank knew that any of its charity customers were "fronts" for Al Qaeda or that any customers otherwise supported Al Qaeda.

In particular, the Amended Complaint does not contain any plausible allegation of fact that Al Rajhi Bank knew that any alleged charity passed on any purported Bank donations to Al Qaeda or used any alleged Bank services for Al Qaeda.  Plaintiffs do not — and cannot — allege that before September 11, 2001, any of the Bank's alleged charity customers were designated as Al Qaeda fronts so as to put the Bank (and others) on notice of the risk of dealing with these charities.  *See, e.g.*, Am. Compl. Ex. A ¶¶ 59, 123, 153 (alleging designation of certain charities or their foreign branches starting in 2002, not including WAMY, MWL, or SHC, which the Amended Complaint does not — and cannot — allege have ever been designated).

Plaintiffs' allegations of the Bank's purported knowledge regarding the charities are based largely on speculative and conclusory statements in documents incorporated into the Amended Complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'")  But those documents tend to show that the Bank would *not* have

–14–

known the charities were, as alleged, "front charity networks" for Al Qaeda.  Am. Compl. ¶ 119.
For instance, the Amended Complaint, relying on a 2003 United Nations Security Council letter,
alleges that the charities held themselves out as bona fide charitable organizations that carried
out "legitimate humanitarian or social programs" and were "state-assisted."  *Id.* (quoting U.N.
Security Council, Letter dated Dec. 1, 2003 from the Chairman of the Security Council
Committee to President of the Security Council, U.N. Doc. S/2003/1070 (Dec. 2, 2003) ("UNSC
Letter")).  The Amended Complaint (¶ 120) also relies upon and incorporates by reference the
9/11 Commission Staff Monograph on Terrorist Financing ("9/11 Staff Report"), which similarly
reports that "[Al Haramain] provides meals and assistance to Muslims around the world,
distributes books and pamphlets, pays for potable water projects, sets up and equips medical
facilities, and operates more than 20 orphanages."  9/11 Staff Report 115 (2004),
http://govinfo.library.unt.edu/911/staff_statements/911_TerrFin_Monograph.pdf; *see* Brief for
the United States at 17-18 n.4.

Moreover, the Amended Complaint, relying on the UNSC Letter, alleges that any funds
purportedly passed on to Al Qaeda by any charities allegedly were "merged with and *hidden*
among funds used for other legitimate humanitarian or social programs."  Am. Compl. ¶ 119
(quoting UNSC Letter) (emphasis added).  As alleged, often it "was nearly impossible" to
distinguish terrorist support networks from legitimate religious organizations.  *Id.* ¶ 125.  Thus
the Bank had no more reason to suspect the charities than U.S. officials, who, according to the
9/11 Staff Report, stated that their intelligence about purported terrorist funding through charities
"did not rise to the level of being actionable against any specific charity."  9/11 Staff Report at
116-17; *id.* at 26 ("Most banks probably did not know their institutions were being used to
facilitate the flow of funds to al Qaeda, although some may have.").

–15–

Contrary to Plaintiffs' allegation that Al Rajhi Bank "both funded and provided financial services to virtually all of al Qaeda's most critical charity fronts" (Am. Compl. ¶ 173 (listing MWL, IIRO, WAMY, BIF, Al Haramain, SHC, "among others")), the Amended Complaint contains factual allegations regarding purported Bank support for only IIRO, Al Haramain, and SHC.  *See id.* ¶¶ 158, 175-79, 182-83.  But those allegations fail to support a plausible inference that the Bank knowingly supported Al Qaeda or terrorism.

**IIRO**.  The Amended Complaint makes the extraordinary allegation, unsupported by factual content, that because IIRO purportedly had accounts at Al Rajhi Bank and placed advertisements encouraging "the action most loved by Allah," a phrase which Plaintiffs assert refers to "suicide bomb[ing]," the Bank "made little effort to hide the fact that donations to those accounts would be used to support terrorist activities."  *Id.* ¶ 178.  The Amended Complaint does not allege any basis to conclude that the phrase "the action most loved by Allah" means "suicide bomb[ing]" rather than charity for the poor.  *See id.* (alleging the advertisements were directed towards "needs in Somalia, Sri Lanka, India, and the Philippines").  Nor does the Amended Complaint allege that the Bank itself was responsible for the alleged advertisements.  *Id.* (alleging the Bank "handled IIRO 'charitable' contributions").

**Al Haramain**.  The Amended Complaint misleadingly alleges that Al Rajhi Bank "refused to comply" with a U.S. government third-party subpoena for documents related to prosecution of an Al Haramain official.  *Id.* ¶ 158.  The public record in that unrelated case shows that the Bank "fully complied with the challenged administrative subpoena and the Government [ ] averred that no further steps [would] be taken to enforce it."  Order at 1, *United States v. Sedaghaty*, No. 10-30061 (9th Cir. July 12, 2010), ECF No. 41.

The Amended Complaint's remaining allegations regarding Al Haramain, i.e., that the Bank provided financial services to Al Haramain and one of its officials (Am. Compl. ¶ 158), fail to support any plausible inference that the Bank knowingly provided support to Al Qaeda. Al Haramain, according to the 9/11 Staff Report referenced in the Amended Complaint (*e.g.*, *id.* ¶ 120), was described by former U.S. officials as "the 'United Way' of Saudi Arabia." 9/11 Staff Report at 114. The Staff Report explains that Al Haramain "provides meals and assistance to Muslims around the world, distributes books and pamphlets, pays for potable water projects, sets up and equips medical facilities, and operates more than 20 orphanages"; it "has considerable ties to the Saudi government," including via "government ministers [with] supervisory roles"; and receives "financial support" from the Saudi government. *Id.* at 115. These additional allegations, incorporated into the Amended Complaint by reference, "undercut" the plausibility of any inference that the Bank knowingly supported Al Qaeda by providing financial services to Al Haramain. Brief for the United States at 17-18 n.4.

**SHC**. The Amended Complaint's only allegation that Al Rajhi Bank provided any funds to charities refers to three donations to the Saudi High Commission between 1994 and 1996 — five to seven years before the September 11 attacks. Am. Compl. ¶ 183. The Amended Complaint fails to plausibly allege, however, any facts showing how Al Rajhi Bank knew or could have known or intended that these purported donations — allegedly collected "for Bosnia" (*id.*) three to five years before Al Qaeda was even designated a terrorist organization in 1999 (*see* U.S. Dep't. of State, Foreign Terrorist Organizations, https://www.state.gov/j/ct/rls/other/des/ 123085.htm) — would be passed on to a "Foreign Terrorist Organization" ("FTO") or used for terrorist attacks. Am. Compl. ¶ 183.

Even if Al Qaeda operatives had ever exploited Al Rajhi Bank, as Plaintiffs' allege without factual support (*id.* ¶ 172 ("Al Rajhi Bank had been 'used by al Qaida . . . .'")), this exploitation would be insufficient to allege that the Bank knowingly and intentionally supported terrorist attacks likely to harm Americans.  The Amended Complaint alleges that the United States, after careful consideration, did *not* designate Al Rajhi Bank under Executive Order 13224, which, Plaintiffs explain, would have required the U.S. officials to conclude that the Bank "knowingly" supported acts of terrorism.  *Id.* ¶ 168.

The Amended Complaint also fails to plausibly allege facts showing that the Bank knew that any of its millions of customers were affiliated with Al Qaeda at any time relevant to the September 11 attacks.  *See id.* ¶¶ 163-66 (failing to allege the Bank knew of purported links between Al Qaeda and individuals allegedly receiving Bank services).

## 2.     Plaintiffs Cannot Impute Alleged Knowledge Of Others To The Bank

The allegations in the Amended Complaint of purported links between Suleiman Al Rajhi and certain charities (*e.g.*, *id.* ¶¶ 180-81) are insufficient to support a plausible inference that Al Rajhi Bank knew its banking services and charitable donations would be used for the benefit of Al Qaeda and to support terrorist acts in which Americans would likely be injured.  The Amended Complaint fails to allege *any* facts supporting a plausible inference that Suleiman Al Rajhi knew that IIRO — or any other alleged Al Rajhi Bank customer — passed on Bank donations to, or used the Bank's services for, Al Qaeda.

The Amended Complaint's allegations that Suleiman Al Rajhi served on an "Executive Council" for IIRO and on the "Board of Trustees" for IIRO's alleged affiliate Sanabel, Inc. (*id.* ¶ 180) do not implicate Suleiman Al Rajhi or the Bank in any alleged IIRO support for Al Qaeda.  This Court has held that "[b]eing a founder, officer, director or administrator of a foreign or domestic charitable organization that allegedly provides material support to al Qaeda, cannot

alone serve as a basis to impute the acts of the organization upon the individual defendant himself, and certainly not upon a company owned by a defendant having no direct relationship to the charity." *Terrorist Attacks IV*, 718 F. Supp. 2d at 483-84.

The Amended Complaint's speculative allegation that raids and closure of "IIRO branches" were "closely monitored by IIRO's senior leadership in Saudi Arabia, and widely reported in media in Saudi Arabia" also does not support an inference that Suleiman Al Rajhi — much less Al Rajhi Bank itself — was "notifi[ed]" that IIRO in Saudi Arabia had any terrorist ties or objectives.  Am. Compl. ¶¶ 177, 181.  Indeed, the Amended Complaint does not — and cannot — allege that any of the IIRO branches were designated before 2006 or that IIRO in Saudi Arabia was ever designated.  *See* Am. Compl. Ex. A ¶ 59.

Furthermore, whatever purported knowledge Suleiman Al Rajhi may have had as an alleged director of IIRO and/or its affiliates (*see* Am. Compl. ¶ 181) cannot be imputed to Al Rajhi Bank, because such knowledge was not "gained within the scope of his activity with respect to [Al Rajhi Bank]."  *Fidelity Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990)) (rejecting allegations that any knowledge gained by director of surety corporation could be imputed to a separate bank of which he was board chairman and COO).

This Court also previously disregarded essentially the same allegations about Suleiman Al Rajhi and other Al Rajhi family members for this very reason.  *Terrorist Attacks I*, 349 F. Supp. 2d at 833 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business.") (citation omitted).

## C.   Plaintiffs Otherwise Fail To Allege Primary Liability Against The Bank Under Section 2333(a)

### 1.   Plaintiffs Fail To Allege That The Bank's Actions Proximately Caused Plaintiffs' Injuries

Plaintiffs' claims under § 2333(a) fail for the additional reason that the Amended Complaint fails to allege facts supporting a plausible inference that Plaintiffs suffered injury "*by reason of*" an act of international terrorism committed by the Bank.  18 U.S.C. § 2333(a) (emphasis added).  The Second Circuit has held "that Congress did not 'intend[] to permit recovery under § 2333 on a showing of less than proximate cause,' based on the Supreme Court's interpretation of the 'well-understood meaning' of the phrase 'by reason of' across multiple statutes." *Terrorist Attacks VII*, 714 F.3d at 123 (quoting *Rothstein*, 708 F.3d at 95).

To show proximate cause, Plaintiffs must allege that the Bank's purported conduct was "*a substantial factor in the sequence of responsible causation*," and that Plaintiffs' injury was "reasonably foreseeable or anticipated as a natural consequence."  *Rothstein*, 708 F.3d at 91 (quotation omitted); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (holding proximate cause "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'  A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient") (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 271, 274 (1992)) (citations omitted); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (stating that "central" to proximate causation is "whether the alleged violation led directly to the plaintiff's injuries").

Like the previously dismissed complaints, the Amended Complaint fails to make even a single factual allegation that Al Rajhi Bank "participated in the September 11, 2001 attacks or that [it] provided money directly to al Qaeda; nor are there factual allegations that the money allegedly donated by the [Bank] to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks." *Terrorist Attacks VII*, 714 F.3d at 124.  Indeed, in

over fifty-five pages of supplemental allegations regarding MWL, IIRO, WAMY, Al Haramain, and SHC (Am. Compl. Ex. A ¶¶ 1-188), the Amended Complaint fails to plausibly allege facts showing that *any* purported funds or other support supposedly provided by Al Rajhi Bank to the charities ultimately went to Al Qaeda, much less was a "substantial factor in the sequence of responsible causation" leading to the September 11 attacks. *Rothstein*, 708 F.3d at 91.

The Amended Complaint fails to allege how the three charitable donations made by Al Rajhi Bank to SHC — totaling just over US$ 1 million over five to seven years before the September 11 attacks (Am. Compl. ¶ 183) — could have been a "substantial factor" in causing the attacks. *Rothstein*, 708 F.3d at 91; *see Gill III*, 893 F. Supp. 2d at 563-65 (rejecting evidence of transactions with alleged terrorist fronts four to eight years before the attack at issue because "there is no evidence they were in close temporal proximity" to the attack). Nor does the Amended Complaint allege how the September 11 attacks could have been a "reasonably foreseeable" consequence of the Bank's donations. *Rothstein*, 708 F.3d at 91. Rather, the Amended Complaint alleges the donations were collected "for Bosnia" (Am. Compl. ¶ 183), three to five years before Al Qaeda was designated as an FTO and at least two years before Osama Bin Laden allegedly decided to attempt the September 11 attacks (*see* 9/11 Commission Report at 149 (stating Bin Laden gave the "green light for the 9/11 operation sometime in late 1998 or early 1999")).

Like the defendant UBS in *Rothstein*, Al Rajhi Bank's purported donations to SHC are too far removed from the terrorists. *See Rothstein*, 708 F.3d at 97 ("The Complaint does not allege that UBS was a participant in the terrorist attacks that injured plaintiffs. It does not allege that UBS provided money to Hizbollah or Hamas."). The Amended Complaint, like the complaint in *Rothstein*, fails to plausibly allege facts showing any direct link between the Bank's

–21–

purported material support and the attacks at issue.  *See Rothstein*, 708 F.3d at 97 ("[The Complaint] does not allege that U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas.").  The Second Circuit dismissed the claims against UBS for failure to allege proximate cause because, although "[t]he fact that the transfers were made to a state sponsor of terrorism of course made it more likely that the moneys would be used for terrorism," Iran nonetheless "is a government, and as such it has many legitimate agencies, operations, and programs to fund."  *Id.*

Unlike Iran, a designated state sponsor of terror that allegedly provided terrorists with "hundreds of millions of dollars" if they "agree[d] . . . to conduct terrorist attacks" (*id.* at 92-93), SHC was never designated, and the Amended Complaint does not allege that SHC gave Al Qaeda *any* support earmarked for terrorism.  Thus, unlike in *Rothstein*, the Amended Complaint does not allege that donations to SHC would "more likely . . . be used for terrorism."  *id.* at 97.  But *like* Iran, which the Second Circuit found had "legitimate" uses for funds from UBS (*id.*), charities like SHC are similarly alleged to have used donations for "legitimate humanitarian [and] social programs."  Am. Compl. ¶ 119 (quoting UNSC Letter).

Moreover, allegations that Al Rajhi Bank provided routine financial services to the charities are insufficient to establish proximate cause.  *See Terrorist Attacks VII*, 714 F.3d at 124 (rejecting allegation that banking services "to organizations and individuals said to be affiliated with al Qaeda" could have "proximately caused the September 11, 2001 attacks or plaintiffs' injuries," and stating that "Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service") (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003)).

As in *Rothstein*, Plaintiffs' claims must be dismissed for failure to allege proximate causation under the ATA. *See Terrorist Attacks VII*, 714 F.3d at 124 (dismissing substantively identical allegations as here "for the same reasons the allegations in *Rothstein* fell short").

**2.     Plaintiffs Fail To Allege That The Bank Committed An Act Of "International Terrorism"**

Under the ATA definition of "international terrorism," 18 U.S.C. § 2331(1) (2000), Plaintiffs must allege facts to support a reasonable inference that Al Rajhi Bank's conduct: (1) "involve[d] violent acts or acts dangerous to human life" that (2) would constitute "a violation of the criminal laws of the United States or of any State" (*id.* § 2331(1)(A)), and that (3) "appear[ed] to be intended" "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by assassination or kidnapping" (*id.* § 2331(1)(B)(i)-(iii)).  Plaintiffs' allegations fail as to each.

**a.     Plaintiffs Fail To Allege Conduct By The Bank That Is "Violent" Or "Dangerous To Human Life"**

The Amended Complaint does not allege that Al Rajhi Bank engaged in any conduct that "involve[s] violent acts or acts dangerous to human life." *Id.* § 2331(1)(A).  Instead, the Amended Complaint alleges that the Bank provided routine banking services for, and made donations to, charities which — according to Plaintiffs — were government supported and held themselves out as bona fide charitable organizations.  *See* Am. Compl. ¶ 119 (alleging charities were "state-assisted" and "hid[]" funds for Al Qaeda among "funds used for other legitimate humanitarian [and] social programs").

Undoubtedly, the September 11 attacks involved violent acts and acts dangerous to human life.  Nevertheless, the Amended Complaint is devoid of factual allegations that create a plausible inference of any violent or dangerous conduct on the part of the Bank.  *See Boim v. Holy Land Found. for Relief & Dev. ("Boim III")*, 549 F.3d 685, 708 (7th Cir. 2008) (stating "it

is difficult if not implausible to characterize donations [to terrorist-linked charities] that are earmarked and used for humanitarian work as violent or life-threatening acts") (Rovner, J., concurring in part and dissenting in part).

### b. Plaintiffs Fail To Plead Any Predicate Offense

The Amended Complaint also fails to allege facts to support any plausible inference that the Bank committed a "violation of the criminal laws of the United States or of any State" within the meaning of § 2331(1)(A). The predicate acts alleged in Counts II-VI of the Amended Complaint are purported violations of 18 U.S.C. §§ 2332(a)-(c), 2339A, 2339B(1), 2339B(2), and 2339C. *See* Am. Compl. at 83-90.

Because U.S. criminal laws cannot be applied retroactively, only those criminal statutes in effect at the time of the Bank's alleged wrongful conduct may apply. *See United States v. Kilkenny*, 493 F.3d 122, 126 (2d Cir. 2007) ("[L]egislation in the criminal law is not to be applied retroactively.") (quotation omitted); *Boim III*, 549 F.3d at 691 (reversing civil judgment against defendant who could not have rendered material support between effective date of § 2339A and date of plaintiff's injury). The Amended Complaint is largely silent on the alleged timing of the Bank's purported conduct, making it impossible to determine which alleged predicate acts might apply as against the Bank. Purely for the sake of argument, the discussion below addresses the alleged predicate acts as they were in effect on September 11, 2001.

**Section 2332(a)-(c) (Counts II & III).** On September 11, 2001, § 2332(a) provided: "Whoever kills a national of the United States, while such national is outside the United States, shall" be subject to certain penalties. Section 2332(b) provided: "Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall" be subject to certain penalties. Section 2332(c) provided: "Whoever outside the United States engages in physical violence (1) with intent to cause serious bodily injury to a national of the

–24–

United States; or (2) with the result that serious bodily injury is caused to a national of the United States," shall be subject to certain penalties.

Plaintiffs claim that Al Rajhi Bank is civilly liable under the ATA for violating § 2332(a)-(c) by "aiding and abetting" Al Qaeda.  Am. Compl. ¶¶ 320-26.  But none of these subsections provides for aiding and abetting liability.  Plaintiffs also claim that the Bank is civilly liable under the ATA for violating § 2332(b) by conspiring with Al Qaeda "to carry out terrorist attacks against the United States and its citizens" on U.S. soil.  *Id.* ¶¶ 321, 327-32.  But § 2332(a)-(c) apply only to harms or attempted harms to U.S. nationals "outside the United States."  *See Gill I*, 891 F. Supp. 2d at 364 ("Section 2332 criminalizes the unlawful killing of — and other unlawful attacks on — American nationals while those nationals are outside of the United States; similarly criminalized are attempted killings of and conspiracies to kill American nationals abroad.") (citing § 2332(a)-(c)); *see also Gill III*, 893 F. Supp. 2d at 554 (holding § 2332(b) applies to conspiracies against "a United States national *abroad*") (emphasis added).

**Section 2339A (Count IV).**  On September 11, 2001, § 2339A provided:  "Whoever, within the United States, provides material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out a violation of" certain enumerated statutes prohibiting terrorist acts "shall be fined, imprisoned, . . . or both."  18 U.S.C. § 2339A(a) (2000).  "[M]aterial support or resources" was then defined to include, among other things, "currency or other financial securities [and] financial services."  *Id.* § 2339A(b) (2000).  A violation of § 2339A requires the provision of "material support or resources" to terrorists with knowledge or intent.  *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *United States v. Stewart*, 590 F.3d 93, 117-18 (2d Cir. 2009) (describing "heightened scienter

requirement in section 2339A" requiring that the defendant "knew or intended the criminal uses to which the [attackers] would put the material support").

The Amended Complaint does not satisfy any of the elements required under § 2339A.  It fails to allege any facts supporting a plausible inference that the Bank engaged in any conduct from "*within the United States*"; or, for the reasons set forth above, either provided "material support or resources" to Al Qaeda or had the requisite knowledge or intent to further Al Qaeda's terrorist acts.  Further, the Amended Complaint fails to allege facts supporting a plausible inference that the Bank knew its purported material support would be used to commit any specific crime listed in § 2339A(a).

**Section 2339B(1) (Count IV).**  No provision numbered "§ 2339B(1)" exists in Chapter 18 of the United States Code.  Plaintiffs may have meant to refer to § 2339B(a)(1). Section 2339B(a)(1) provided on September 11, 2001:  "Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned . . . or both."  18 U.S.C. § 2339B(a)(1) (2000).  The statute further defined "terrorist organization" as "an organization *designated* as a terrorist organization under section 219 of the Immigration and Nationality Act."  *Id.* at § 2339B(g)(6) (2000) (emphasis added). "Foreign Terrorist Organizations" ("FTOs") are designated pursuant to 8 U.S.C. § 1189, enacting Section 219 of the Immigration and Nationality Act.

Plaintiffs do not allege that, prior to September 11, 2001, *any* of the charities with which Al Rajhi Bank allegedly dealt was designated as an FTO, nor are they so designated today (*see* U.S. Dep't of State, "Foreign Terrorist Organizations").  Thus, by its terms, § 2339B(a)(1) does not apply to the Bank's alleged conduct with respect to such charities.  Moreover, as established

above, Plaintiffs have failed to plausibly allege facts showing that the Bank acted with knowledge.

**Section 2339B(2) (Count V).**   No provision numbered § 2339B(2) existed on September 11, 2001, nor does one exist today.  Plaintiffs may have meant to cite § 2339B(a)(2), which is a blocking and reporting statute.  18 U.S.C. § 2339B(a)(2).  But, "violations of the reporting requirements [in § 2339B(a)(2)] are neither criminal violations nor acts of international terrorism, as defined by the statute" (*Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 590 (E.D.N.Y. 2005) (quotation omitted)), and "[f]ailure to [comply with § 2339B(a)(2)] is not civilly actionable under § 2333(a)." *Wultz*, 755 F. Supp. 2d at 53 n.10.

**Section 2339C (Count VI).**  Section 2339C is clearly inapplicable, as it was enacted on June 25, 2002 — *after* the September 11 attacks.  Pub. L. 107-197, 116 Stat. 724 (2002).  As enacted, § 2339C prohibits the "unlawful[] and willful[] provi[sion] or collect[ion of] funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" acts of terrorism.  18 U.S.C. § 2339C(a) (2002).  As set forth above, Plaintiffs fail to allege facts supporting any plausible inference that Al Rajhi Bank knew or intended that its charitable donations or routine banking services would further Al Qaeda's terrorist acts.

### c.    Plaintiffs Fail To Allege The Requisite Objective Intent

The term "international terrorism" under § 2331(1)(B) further requires that the Amended Complaint allege facts plausibly showing that Al Rajhi Bank's conduct "appear[ed] to be intended" to (i) "intimidate or coerce a civilian population," (ii) "influence the policy of a government by intimidation or coercion," or (iii) "affect the conduct of a government by assassination or kidnapping."  18 U.S.C. § 2331(1)(B) (2000).  This requirement "is a matter of external appearance rather than subjective intent" that "distinguish[es] terrorist acts from other

violent crimes." *Boim III*, 549 F.3d at 694; *see also Wultz*, 755 F. Supp. 2d at 49 (holding that plaintiffs must plead "grounds from which an objective observer could conclude [the] defendant . . . intended to achieve any of the three results set forth under § 2331(1)(B)").  The Bank's alleged provision of routine banking services and charitable donations do not objectively "appear to be intended" to coerce or intimidate any civilian population or government.

Having failed to allege sufficient facts to plausibly show conduct by the Bank that is "violent" or "dangerous to human life," any predicate acts, or the requisite objective intent, Plaintiffs fail to allege an act of "international terrorism" under the ATA.

### D.      Plaintiffs Otherwise Fail To Plead Secondary Liability Against The Bank Under Section 2333(d)(2)

#### 1.      Plaintiffs Fail To Allege That The Bank Aided And Abetted Al Qaeda

Plaintiffs' aiding and abetting claim fails because the Amended Complaint does not allege facts supporting a plausible inference that Al Rajhi Bank knowingly provided substantial assistance to a terrorist organization.  *See* 18 U.S.C. § 2333(d)(2) (providing that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance [to] . . . the person who committed such an act of international terrorism"); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994) (describing civil law aiding and abetting as "know[ing] that the other's conduct constitutes a breach of duty and giv[ing] substantial assistance or encouragement to the other"); *Halberstam*, 705 F.2d at 477 (explaining that to succeed on a claim for civil aiding and abetting liability "the defendant must knowingly and substantially assist the principal violation").

For the reasons set forth above, the Amended Complaint fails to allege facts supporting a plausible inference that Al Rajhi Bank acted with knowledge as required by § 2333(d)(2).  For this reason alone, Plaintiffs' claims for secondary liability under the ATA fail.

–28–

Further, the Amended Complaint fails to allege facts supporting a plausible inference that Al Rajhi Bank provided "substantial" assistance to Al Qaeda in carrying out the September 11 attacks. *See Mastafa*, 2008 U.S. Dist. LEXIS 73305, at *17 (holding under common law aiding and abetting that assistance for the tortfeasor must be "a substantial factor in *causing* the resulting tort") (emphasis added); *id.* at *16 ("It is not enough that a defendant provide substantial assistance to a tortfeasor; the 'substantial assistance' must also 'advance the [tort's] *commission*.'") (quoting *Lerner*, 459 F.3d at 292) (emphasis added); *Goldberg*, 660 F. Supp. 2d at 425 ("It has long been recognized that 'substantial assistance' means more than just a little aid . . . .") (quotation omitted). The Amended Complaint does not contain a single factual allegation of any material support provided by the Bank, whether donations or banking services, that is linked in any way to the "commission" of the September 11 attacks, much less that is a "substantial factor in causing" the attacks. *Mastafa*, 2008 U.S. Dist. LEXIS 73305, at *16-17. Because the Amended Complaint purports to allege that Al Rajhi Bank provided only funding and banking services to charities and persons allegedly affiliated with Al Qaeda, Plaintiffs fail to allege facts showing that Al Rajhi Bank substantially assisted Al Qaeda in carrying out the September 11 attacks. *See Terrorist Attacks I*, 349 F. Supp. 2d at 800-01 (holding allegations of indirect funding for Al Qaeda through charities not designated as sponsors of terrorism not "sufficiently close to the terrorists' illegal activities to satisfy *Halberstam*"); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 621 (E.D.N.Y. 2006) ("The mere maintenance of a bank account and the receipt or transfer of funds do not [ ] constitute substantial assistance").

### 2. Plaintiffs Fail To Allege That The Bank Conspired With Al Qaeda

Plaintiffs have failed to state a claim for conspiracy, because the Amended Complaint does not allege that Al Rajhi Bank (1) knew about the aims and objectives of Al Qaeda's alleged conspiracy to perpetrate the September 11 attacks, (2) agreed to the essence of these objectives,

and (3) performed acts intended to further these objectives.  *See Gill III*, 893 F. Supp. 2d at 554 (addressing conspiracy under § 2332(b)).

The Second Circuit has held that "to establish membership in a conspiracy, [plaintiffs] must prove that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy."  *United States v. Aleskerova*, 300 F.3d 286, 292 (2d Cir. 2002) (quotation omitted).  Again, for the reasons stated above, the Amended Complaint fails to allege facts to support a plausible inference that the Bank acted with the requisite knowledge and intent.  In addition, the Amended Complaint does not allege any facts regarding any agreement with Al Qaeda or showing that Al Rajhi Bank intended to commit any terrorist acts against the United States and its citizens.  Nor does the Amended Complaint allege any specific steps taken by the Bank in furtherance of any such conspiracy.  Therefore, the Amended Complaint fails to plead a claim of conspiracy under the ATA against Al Rajhi Bank.

*       *       *

Moreover, Plaintiffs' claim for "treble" and "punitive damages" under § 2333(d) fails. Am. Compl. at 83 (Count I).  Absent "a clear statement of congressional intent," punitive damages cannot apply retroactively to pre-enactment conduct.  *Owens v. Republic of Sudan*, No. 14-5105(L), 2017 U.S. App. LEXIS 13695, at \*144 (D.C. Cir. July 28, 2017) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 281 (1994) (observing that retroactive application of punitive damages "would raise a serious constitutional question")).  Section 2333(d), enacted in 2016 under JASTA, contains no statement of Congressional intent regarding punitive damages.  Thus, Plaintiffs' claim for treble and punitive damages under § 2333(d) must be dismissed.  *Owens*, 2017 U.S. App. LEXIS 13695, at \*144; *see also Goldberg*, 660 F. Supp. 2d at 428 (describing ATA treble damages as "punitive").

*     *     *

In sum, the Amended Complaint fails to plausibly allege facts showing the necessary elements of primary or secondary liability under the ATA, and Plaintiffs' allegations cannot "nudge" Plaintiffs' theory from "conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court should dismiss Plaintiffs' Amended Complaint for failure to state a claim under the ATA.

## II.   PLAINTIFFS FAIL TO ALLEGE ANY BASIS FOR PERSONAL JURISDICTION OVER AL RAJHI BANK

Plaintiffs fail to carry their burden of making a *prima facie* showing that Al Rajhi Bank is subject to general or specific personal jurisdiction in this action. *See Penguin Grp.*, 609 F.3d at 34-35 ("[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists"); *Chirag*, 604 F. App'x at 19 (requiring *prima facie* case for personal jurisdiction based on "non-conclusory fact-specific allegations").

Plaintiffs do not, and cannot, allege general personal jurisdiction over Al Rajhi Bank, because the U.S. Supreme Court has established that a foreign corporation's contacts with the forum must be so "continuous and systematic" that the foreign corporation is "essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Save for "a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler*, 134 S. Ct. at 761 & n.19).

The Amended Complaint effectively concedes that Al Rajhi Bank is "at home" in Saudi Arabia: Al Rajhi Bank "is a Saudi-based international financial institution, with a principal place of business located at Olaya Street, Riyadh, Saudi Arabia," and "with over five hundred (500) branch offices in the Kingdom." Am. Compl. ¶¶ 67, 153. Because the Amended Complaint fails

to allege any exceptional grounds to find Al Rajhi Bank "at home" in the United States, the Bank is not subject to general personal jurisdiction in this Court or any United States court.

Plaintiffs also do not, and cannot, allege specific personal jurisdiction over the Bank. The U.S. Supreme Court in *Walden v. Fiore* held that "to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State."   134 S. Ct. at 1121 (emphasis added).   In *Waldman v. Palestine Liberation Organization*, the Second Circuit (quoting *Walden*) held that the "relevant 'suit-related conduct' by the defendants [is] the conduct that could have subjected them to liability under the ATA." 835 F.3d at 335 (dismissing claims for lack of personal jurisdiction where "defendants' activities *in violation of the ATA* occurred outside the United States"); *id.* at 342 (deeming irrelevant to personal jurisdiction alleged conduct in the United States "not *proscribed by the ATA* and [ ] not connected to the [purported] wrongs") (emphasis added).

For the reasons set forth above, the factually deficient allegations in the Amended Complaint — which are substantively identical to those previously dismissed — fail to allege any conduct by Al Rajhi Bank that could "subject[] [the Bank] to liability under the ATA." *Waldman*, 835 F.3d at 335.  Plaintiffs thus fail to allege any "suit-related conduct" justifying this Court's "exercise of jurisdiction consistent with due process." *Walden*, 134 S. Ct. at 1121.

Moreover, the Second Circuit's prior rulings in this multidistrict litigation foreclose any assertion of specific personal jurisdiction over the Bank.  The Second Circuit has identified "two fundamental requirements necessary to establish specific personal jurisdiction" for "defendants involved in this multi-district litigation":  Plaintiffs "must plead facts" showing (i) "that a defendant 'expressly aimed intentional tortious acts at residents of the United States,'" and (ii) "that their injuries 'arise out of or relate to those activities.'" *Terrorist Attacks VIII*, 714 F.3d

at 674 (quoting *In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks III")*, 538 F.3d 71, 93, 95 (2d Cir. 2008)); *see also id.* at 676 (rejecting "conclusory" allegations as "insufficient for personal jurisdiction purposes").

Under the Second Circuit's rulings in this multidistrict litigation, Plaintiffs fail to allege that Al Rajhi Bank "expressly aimed" any conduct at the United States. *Id*. at 674. The Second Circuit previously held that "indirect funding of al Qaeda" through charities does not amount to "'expressly aim[ing]' intentional tortious acts at residents of the United States." *Terrorist Attacks III*, 538 F.3d at 94-95 (affirming dismissal for lack of personal jurisdiction where defendants "could and did foresee that recipients of their donations would attack targets in the United States"). The Second Circuit further held that specific personal jurisdiction cannot be exercised over a bank based on allegations "(1) [that the bank] knowingly maintained bank accounts for individuals associated with al Qaeda as well as for purported front charities that aided al Qaeda, and (2) that those accounts were used for al Qaeda operations" in the context of terrorism. *Terrorist Attacks VIII*, 714 F.3d at 676 (affirming dismissal of claims against Al Rajhi family members and NCB, among others, for lack of personal jurisdiction).

The Amended Complaint's only allegations against Al Rajhi Bank — that the Bank allegedly made donations to charities and persons purportedly affiliated with Al Qaeda, and provided banking services to purported charity fronts (*e.g.*, Am. Compl. ¶¶ 163, 173-74) — are substantively identical to the allegations already rejected by the Second Circuit. The Second Circuit's and this Court's prior decisions compel dismissal here.

Furthermore, under prior decisions in this multidistrict litigation, Plaintiffs' injuries could not have "arise[n] out of or related to" alleged conduct substantively identical to that purportedly alleged here. *Terrorist Attacks VIII*, 714 F.3d at 673-74. This Court held that — as in the

Amended Complaint here — "[g]eneralized allegations that a defendant provided financial or other material support to al Qaeda, without the reasonable inference of the temporal, geographical or causal connection, or proximity to the 9/11 attacks, is an insufficient basis for the Court's exercise of jurisdiction over a foreign defendant." *Terrorist Attacks IV*, 718 F. Supp. 2d at 482-83.  This Court further held:

> The alleged acts of rendering support to al Qaeda during its formative years, performing routine banking services for customers having terrorist ties, and having investors or shareholders who purportedly are sponsors of terrorism, *are too remote and attenuated to support the exercise of specific jurisdiction.*  The purported indirect funding of al Qaeda through the funneling of one's charitable donations is, under controlling Second Circuit law, of no jurisdictional import.

*Id.* at 486-87 (emphasis added).

Because the Amended Complaint is devoid of facts showing *any* "causal connection" or link between the Bank's own alleged conduct and the September 11 attacks, the Amended Complaint fails to allege facts supporting a plausible inference that Plaintiffs' claims "arise out of or relate to [the Bank's] activities." *Terrorist Attacks VIII*, 714 F.3d at 674.

Finally, specific personal jurisdiction cannot be asserted over the Bank because the Amended Complaint does not allege facts supporting a plausible inference that Al Rajhi Bank *itself* engaged in *any* conduct — much less conduct "proscribed by the ATA" (*Waldman*, 835 F.3d at 342) — "substantial[ly] connected" with the United States.  *See Walden*, 134 S. Ct. at 1121-22 (requiring for specific jurisdiction "a substantial connection with the forum State" based on "suit-related" contacts "that the "defendant *himself*" creates with the forum State").

As the Second Circuit has emphasized, the U.S. Supreme Court, in *Calder v. Jones*, "affirm[ed] that [the] court could exercise personal jurisdiction over '*primary participants* in an alleged wrongdoing *intentionally directed* at a California resident.'" *Terrorist Attacks III*, 538

F.3d at 94 (quoting *Calder*, 465 U.S. 783, 790 (1984)).  In holding that alleged indirect but *knowing* funding for Al Qaeda through charities could not establish personal jurisdiction, the Second Circuit distinguished cases where defendants "were primary participants in terrorist acts."  *Id.* at 93-94 ("[P]laintiffs do not allege that the [defendants] directed the September 11 attacks or commanded an agent (or authorized al Qaeda) to commit them").  None of the allegations in the Amended Complaint supports any plausible inference that Al Rajhi Bank was a primary participant — either directly or by commanding an agent — in the September 11 attacks.

In sum, under controlling Second Circuit authority, this Court should dismiss Plaintiffs' claims for lack of personal jurisdiction.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Bank's motion and should dismiss Plaintiffs' claims against Al Rajhi Bank, with prejudice.

Dated: August 21, 2017
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

  /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (*pro hac vice* admission
   pending)
Reuben J. Sequeira (*pro hac vice* admission
   pending)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:  + 1 202 626 3600
Facsimile:  + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 21, 2017, I caused an electronic copy of the foregoing Memorandum Of Law In Support Of Al Rajhi Bank's Motion To Dismiss to be served electronically by the Court's Electronic Case Filing (ECF) System.  I caused the foregoing to be filed on the MDL docket and the dockets for the following consolidated cases:

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853;
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663;
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937;
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117;
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450;
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651;
*Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887;
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; and
*Abedhajajreh, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123.


Dated: August 21, 2017

/s/ *Christopher M. Curran*
Christopher M. Curran