# JONES DAY

51 Louisiana Avenue, N.W.  •  Washington, D.C.  20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number:  (202) 879.5572
scottreau@jonesday.com

Via ECF

The Honorable Sarah Netburn
Magistrate Judge, United States District Court
Thurgood Marshall U.S. Courthouse                    August 28, 2017
40 Foley Square
New York, NY 10007

<u>*In re Terrorist Attacks of September 11, 2001*</u>, 03 MDL 1570 (GBD)(SN):

Dear Judge Netburn,

The Defendants' Executive Committee ("DEC"), on behalf of the Defendants currently in merits or jurisdictional discovery, write in support for our positions with respect to the areas of disagreement in the Draft Deposition Protocol Order ("Dep. Protocol") (ECF No. 3646).  We appreciate the Court's attention and consideration.

Following repeated meet and confers, the DEC and Plaintiffs' Executive Committees ("PECs") reached agreement on the majority of the issues, as reflected in the draft Deposition Protocol.  Unfortunately, the sides could not reach agreement on seven issues: (1) Rule 26(a)(1) witness disclosures for Defendants not in merits discovery; (2) selection of deposition location; (3) coordination of former employee depositions; (4) deposition scheduling that conflicts with an individual Defendant's religious obligations; (5) exchange of exhibit disclosures prior to discovery depositions that precede depositions to perpetuate trial testimony; (6) duration of depositions, including depositions needing translations; and (7) attorney-witness consultations during a deposition.  We address below each in turn.

## 1.   <u>Rule 26(a)(1) Witness Disclosures Are Inappropriate for Jurisdictional Defendants.</u>

The sides were unable to agree as to whether defendants who are not in merits discovery should be required to produce witness disclosures in paragraph 6 of the proposed Deposition Protocol.  Defendants believe that witness list disclosures are inappropriate for parties remanded for jurisdictional discovery.  These defendants are Yassin Kadi, Dallah Avco, Dr. Abdullah Al-Turki, Dr. Abdullah Naseef, Dr. Abdullah Al-Obaid, Dr. Adnan Basha, and Mr. Soliman Al-Buthe.

Under Court order, the parties in merits discovery long ago exchanged witness disclosures regarding the merits of the claims and defenses, and those parties remain under an

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

ongoing duty to supplement those disclosures ("Witness Disclosures"). *See* Court Order (ECF No. 2260) (July 15, 2010) (Maas, J.); *see also* Dep. Protocol ¶ 6 ("[E]ach party in merits discovery remains under a continuing duty to supplement its Witness Disclosure."). Those parties have agreed in the proposed protocol to limit discovery and *de bene esse* depositions to the persons appearing on operative Witness Disclosures. *See* Dep. Protocol ¶ 6.

In contrast, defendants remanded for limited jurisdictional discovery have not answered Plaintiffs' complaints in this litigation. These parties still await resolution of their pending motions to dismiss after the completion of jurisdictional discovery. These defendants maintain that witness disclosures are inappropriate at this stage. Federal Rule of Civil Procedure 26(a)(1)(C) states that witness disclosures are due within 14 days after a Rule 26(f) conference. There has been no Rule 26(f) conference involving the defendants currently in jurisdictional discovery.

Generally, dispositive motions, particularly those that challenge a claim as a matter of law, such as challenges directed to the Court's jurisdiction, warrant a court-ordered stay of initial disclosures. *Flores v. S. Peru Copper Corp.*, 203 F.R.D. 92, 94 (S.D.N.Y. 2001) ("[A] leading treatise recognizes a district court's discretionary power to stay all Rule 26(a)(1) initial disclosure 'pending resolution of a motion to dismiss, if the defendant makes a strong showing that the plaintiff's claim is unmeritorious.'" (quoting 6 Moore's Federal Practice § 26.22[3][b] at 26–64 (3d ed. 1997)); *see also Johnson v. PPI Tech. Servs., L.P.*, Nos. Civ. A. 11-2773, 12-1534, 2012 WL 5449636, at *2 (E.D. La. Oct. 18, 2012) ("[T]he Court finds that the production of initial disclosures is premature pending the resolution of [defendants'] motion to dismiss."). These defendants have made such a showing—they previously *prevailed* on motions to dismiss before Judge Daniels. The Second Circuit did not reverse those dismissals. Rather, it remanded for limited jurisdictional discovery pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994). Nothing in the voluminous discovery that has occurred since that remand has increased the strength of Plaintiffs' case. Moreover, the scope of the Second Circuit's remand was very narrow; it did not reopen the case carte blanche as to the remanded defendants. Thus, anything that approaches merits discovery—such as the exchange of initial disclosures and witness lists— falls outside the scope of the Second Circuit's remand.

A stay in witness disclosures is also consistent with the prior jurisdictional discovery conducted in 2005 as to the National Commercial Bank ("NCB") and the Saudi Binladin Group ("SBG"). Those two defendants produced numerous documents in response to the Plaintiffs' jurisdictional requests, but did not produce any Rule 26(a)(1) disclosures, including the identity of witnesses. Instead, the Plaintiffs reviewed documents and interrogatory responses, as applicable, and identified the witness(es) to be deposed for each of those two defendants. At no time did Judge Casey or Judge Maas order that either defendant prepare witness disclosures or any other Rule 26(a)(1) disclosures.

The same scope of jurisdictional discovery should continue to apply here.  When Judge Maas discussed the scope of the initial disclosures at the April 12, 2011 discovery conference, the parties did not request any extension of that requirement to defendants who were in jurisdictional discovery (at that time, the Rabita Trust).   Similarly, in 2013, when the jurisdictional discovery defendants were remanded by the Second Circuit, the parties did not request that either side submit Rule 26(a)(1) disclosures, confirming the sides' joint view that such disclosures would not be made unless those defendants' motions to dismiss were denied and they then entered into merits discovery.

Plaintiffs nonetheless insist on receiving disclosures from jurisdictional defendants to identify witnesses with knowledge relevant to the jurisdictional claims and defenses.  However, after extensive document discovery (and, at least in Mr. Kadi's case, unanswered interrogatories), the information Plaintiffs have provided is so vague and seemingly inapposite that the jurisdictional defendants lack an understanding of Plaintiffs' claims sufficient to allow them to select any witnesses let alone to provide a witness list.  Plaintiffs, on the other hand, are in a position to identify witnesses relevant to jurisdictional discovery as they had done with NCB and SBG.

## 2.   Deposition Locations Should Consider the Interests of the Witnesses.

The parties disagree on the appropriate standard for determining the location for depositions.  Dep. Protocol ¶ 27.

The witnesses in this case live across the world and many of them are former employees of parties or third parties.  Plaintiffs insist that these witnesses (including third party witnesses living elsewhere in the US) travel to New York for depositions by default, or at a minimum to the "UK, Paris, or Rome" if possible.  *Id.*  Setting New York as the default location for every

deposition is not consistent with normal practice for parties and officers[1] nor is it consistent with Rule 45 or international conventions, which limit the available location for depositions.[2]

Defendants propose instead that this Court protect the interests of witnesses outside this Court's jurisdiction by recognizing the burdens and costs imposed on witnesses as a result of Plaintiffs' proposal.  Many of the witnesses in this case live in Saudi Arabia or the United Arab Emirates ("UAE").  As a result, Defendants propose that both Jeddah, Saudi Arabia and Dubai, UAE would be "Presumptively Acceptable Locations" for depositions.  These are modern cities with facilities equipped to handle depositions.  In fact, many international law firms maintain offices in these cities.  Moreover, for witnesses who regularly travel on business to the US or Western Europe, Defendants' proposal recognizes that UAE and Saudi Arabia locations may not be appropriate and directs the parties to confer about holding the deposition in the US or Western Europe.

By designating some locations closer to the residences of Middle East witnesses who do not regularly travel to the West, Defendants' proposal seeks a location that is more convenient and less costly to the witness.  Indeed, in light of the time limits being proposed by the parties (see Section 6 below), many of these depositions will take place over multiple days.  Moreover, many witnesses may not be able to obtain (or easily obtain) the permissions, including a visa, required for travel outside of their home countries.  Even ascertaining whether a Western country will issue a visa can take many months or more and threatens to unduly delay scheduling in this case.

Moreover, the hardships a witness may face as a result of a deposition location are more important to consider than any potential inconvenience to counsel.  *See Six West Retail*

---

[1]   Even the determination of deposition locations for current parties or current officers of a corporate party should include a consideration of the residence of the deponents and the extent to which the deponents' affairs might be disrupted if required to travel to attend a deposition.  *See, e.g.*, *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) ("[T]he residence of the witnesses to be deposed is a significant consideration."); *Six West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107–108 (S.D.N.Y. 2001) (holding that for two officers who worked and resided in Japan, "questioning should proceed in Japan"); *Devlin v. Transp. Commc'ns Int'l Union*, Nos. Civ. A. 95-0752, 95-10838, 2000 WL 28163, at *4 (S.D.N.Y. Jan. 14, 2000) (considering "the residence of deponents" and "the extent to which the witness' affairs might be disrupted" to determine deposition location for defendant TCU's president and 30(b)(6) witnesses); 8A Wright & A. Miller, *Federal Practice & Procedure* § 2112 (3d ed. 2017) ("The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business.").

[2]   *See, e.g.,* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.").

*Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 108 (S.D.N.Y. 2001) ("[T]he inconvenience of counsel is less compelling than any hardship to the witness."). Here, the parties have agreed that counsel can take or attend depositions by videoconference. Dep. Protocol ¶ 28.[3] As a result, only a limited number of counsel (if any) need to travel for a remote deposition, and counsel can fully participate from their own offices in the United States.

Of course, counsel in this case should meet and confer—including with counsel for each witness—to schedule depositions. Plaintiffs' proposal, however, simply does not provide adequate consideration to the legitimate interests of witnesses in this case or to the limitations of Rule 45 and to any applicable or analogous conventions.

## 3. Corporate and Organizational Defendants Do Not Have an Obligation to Arrange Former Employee Depositions.

Defendants were unable to agree to Plaintiffs' last minute proposal that "each corporate or organizational defendant should exercise good faith efforts to arrange for the depositions of its former employees." Dep. Protocol ¶ 27. Plaintiffs' proposal would place an inappropriate burden on Defendants to produce individuals who are no longer under their control.

In general, a corporation or organization that is a party to a litigation is only obligated to make available its officers, directors, or managing agents. *See U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994) ("[A] corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice."); 8A Wright & A. Miller, *Federal Practice & Procedure* § 2103 (3d ed. 2017) ("[T]he corporation is responsible for producing its officers, managing agents, and directors if notice is given."). All other witnesses must be deposed under Rule 45 or the procedures of the Hague Convention or other applicable law or treaty. *See Afram Lines*, 159 F.R.D. at 413.

As a result, a corporation or organization generally is not required to produce any ordinary employee, much less a former employee, for a deposition. *See Boss Mfg. Co. v. Hugo Boss AG et al.*, No. Civ. A. 97-8495-SHS-MHD, 1999 WL 20828, at *2 (S.D.N.Y. Jan. 13, 1999) ("As a general matter, a corporation cannot be required to produce a former officer or

---

[3] *See also* Fed. R. Civ. P. 30(b)(4) ("The parties shall stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."); S.D.N.Y. Local Civil Rule 30.2 ("The motion of a party to take the deposition of an adverse party by telephone or other remote means *will presumptively* be granted.") (emphasis added); *Sec. & Exch. Comm'n v. Aly*, No. Civ. A. 16-3853-PGG-GWG, 2017 WL 798527, at *3 (S.D.N.Y. March 1, 2017) ("This potential burden on travel to each side plainly points to holding the deposition by videoconference. This is frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides."); *Zakre v. Norddeutsche Landesbanke Girozentrale*, No. Civ. A. 03-257-RWS, 2003 WL 22208364, at *2 (S.D.N.Y. Sept. 23, 2003) ("[The defense witness] will therefore be permitted to be deposed from Germany. However, recognizing the cost and inconvenience to [Plaintiff's] counsel, [the witness's] deposition will take place by videoconference at [Defendant's] expense.").

agent for deposition since it does not have control over him.").[4]  Plaintiffs are not entitled to their proposal, which places an inappropriate burden on the Defendants.  It is simply not Defendants' obligation to track down individuals no longer under their control.  To the extent Plaintiffs are seeking information about a former employee's last-known addresses or similar information, Plaintiffs were free to request this information in interrogatories or other discovery requests.  Plaintiffs' failure to seek this information through the appropriate discovery requests does not mean that Defendants must now bear the burden of producing these individuals.

As a practical matter, Defendants do not have the ability to compel the appearance of their former employees and thus cannot ensure a former employee's appearance at a deposition.  As a legal matter, Plaintiffs are required to subpoena or otherwise lawfully obtain the testimony of former employee witnesses they wish to depose.

## 4.  Depositions Should Not Be Scheduled on Days that Conflict with an Individual Defendant's Religious Obligations.

This relatively narrow dispute concerns a situation where a defendant is a natural person and is specifically interested in a particular deposition (*e.g.*, of a former co-worker or a Rule 30(B)(6) corporate designee of his former employer), but the scheduling of that deposition may conflict with the individual party's worship practices.  *See* Dep. Protocol ¶ 32.  Defendants believe that depositions should not be scheduled on Fridays when an individual party who observes Friday as a religious holiday wants or needs to attend that deposition.

The Local Rules provide that any individual who is a party in an action "may attend the deposition of a party or witness."  S.D.N.Y. Local Civil Rule 30.3.  The Local Rule implicitly recognizes that such attendance by an individual party may be important to assisting defense counsel in effectively examining the witness, including subjecting the witness to cross-examination.  Moreover, protecting an individual defendant's right to attend a deposition that relates to that party further ensures that the process of taking depositions remains fair and respectful to all parties, regardless of their religious beliefs.

Defendants and Plaintiffs have already agreed that a deposition should not conflict with the worship practices of a deponent.  Defendants believe the same protection should be in place for an individual defendant wishing to attend a deposition.

---

[4]  Some courts have recognized that a narrow exception to this rule may exist when a former officer, director, or managing agent practically continues to have managing agent status at the corporation, such as through "continuing ability to utilize the party's organs of communication" and "access to the party's confidential documents."  *See U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994).  Plaintiffs, however, do not attempt to make such a showing and their proposal is much broader and requires no showing.

Plaintiffs apparently believe that such a protection would unfairly constrain available deposition dates. Defendants do not believe, however, that such a provision would unduly impair the parties from carrying out discovery in this case.

## 5.   Any Obligation to Exchange Exhibits Should Be Mutual.

As this Court suggested previously, (*see* Tr. of R. at 10:3–11:4 (ECF No. 3578) (Apr. 21, 2017)), the parties have agreed to meet and confer about provisions for and limitations on discovery depositions prior to a party's *de bene esse* deposition to perpetuate testimony of its own witness. *See* Dep. Protocol ¶ 34.

Plaintiffs propose three types of additional discovery in advance of such a deposition: at least two weeks before the deposition "the Parties shall exchange (1) any applicable Rule 26 disclosures that pertain to the witness; (2) a proffer of the witness's expected testimony; and (3) a copy of each document *the party that noticed the deposition* to perpetuate testimony for trial anticipates using at the deposition." Dep. Protocol ¶ 35. Defendants address each in turn.

First, with respect to Rule 26 disclosures, it is not clear what the Plaintiffs are proposing. Either Rule 26 requires disclosures or it does not—but Rule 26, not the Deposition Protocol, should govern that issue.

Second, regarding an exchange of proffers of expected testimony, Defendants do not believe that such an exchange is necessary. Nothing in the Federal Rules of Civil Procedure or the Local Civil Rules requires that parties exchange proffers. Moreover, neither Federal Rule of Civil Procedure 27—which specifically deals with depositions to perpetuate testimony—nor Rule 30 requires such an exchange. For good reason: such an exchange simply threatens to spawn a host of collateral motion issues for this Court where Parties challenge adequacy of proffers or challenge bits and pieces of testimony, claiming that lines of questioning fell outside the scope of the proffer.

The game is not worth the candle. With respect to the defendants in merits discovery, proffers will add little value because the parties' Witness Disclosures already identify the general contours of the witness's expected knowledge. *See* Tr. of R. at 12:24–13:4 (Dec. 2, 2010) (Maas, J.) ("Rule 26(a)(1) requires you to identify the name … along with the subjects of that information the disclosing party may use to support its claims or defenses unless solely for impeachment purposes."); *see also* Tr. of R. at 15:23–16:1 (Apr. 12, 2011) (Maas, J.) ("But for each person who is on the list [of individuals that will be deposed or have their statement introduced] I am going to require that you set forth topics as to which you believe that person has personal knowledge of discoverable information …."). Moreover, the sides have also exchanged documents in response to requests for production that likely further illuminate the scope of a witness's involvement or knowledge. In short, proffers add little and simply afford an

opportunity for gamesmanship in seeking to suppress the testimony of witnesses who will likely not be available to testify in person in this action.[5]

Third, Defendants do not believe an exchange of documents is necessary but are willing to agree to Plaintiffs' proposal for an exchange of exhibits—provided that such an **exchange is mutual**. Plaintiffs' first two pre-deposition discovery proposals regarding Rule 26 disclosures and proffers are expressly mutual. *See* Dep. Protocol ¶ 35. Yet, Plaintiffs insist on a one-way exchange of exhibits by the party who noticed the deposition to perpetuate testimony.

No reason exists to make the exchange non-mutual. Both sides will undoubtedly prepare exhibits in advance of a deposition and may use those exhibits at a deposition. The party that noticed the deposition may not even be the party that injected the witness into the case. In many instances, the witness may be a person that Plaintiffs put at issue by placing that person on Plaintiffs' own Witness Disclosure. Such depositions—expressly taken to perpetuate testimony—will likely be rare and thus the burden on the parties, including Plaintiffs, will be slight. But the parties should be treated equally—and an exchange of exhibits should be mutual.

## 6.  The Parties Should Attempt to Complete Fact Witness Depositions in a Single Day.

The parties were unable to reach agreement regarding time limits for deposition questioning by the noticing party. *See* Dep. Protocol ¶ 73. Defendants believe that parties should aim to complete fact witness depositions in a single day—or at least in two days when absolutely necessary.

Towards that end, Defendants made three key proposals: (1) the norm should be that the noticing side has 7 hours to question the witness; (2) in a limited number of instances where 7 hours may not suffice, the noticing side should be able to elect an extended deposition of 10 hours to question the witness; and (3) deposition time limits should be extended by an additional 50% when a translator is involved.

Defendants' proposal aims to permit many depositions conducted in English to be completed in a single day. Dep. Protocol ¶ 75. Both sides agree that the non-noticing side may also question the witness for up to 7 hours and that the deposition should commence at 8:30 a.m. *See* Dep. Protocol ¶ 73 & 75. Defendants hope that such follow-on questioning by the non-noticing side often will be able to be completed on the same day as the noticing side's questioning so the deposition can be completed in one day. Defendants further propose that a deposition day should ordinarily conclude after 8.5 hours of testimony, which should afford at least 90 minutes of follow up questioning by non-noticing side on the same day.

---

[5] Further, the jurisdictional defendants explained in Point 1 above why the witness disclosure requirement should not apply to the defendants in jurisdictional discovery. Judge Maas's rulings did not apply to those defendants because, at the time the rulings were made, those defendants' motions to dismiss had been granted.

Depositions are often "the most costly and time-consuming activity in complex litigation" when "overused and conducted inefficiently." *Manual for Complex Litigation* (4th) § 11.45. The Federal Rules of Civil Procedure presumptively limit depositions to one day of 7 hours. Fed. R. Civ. P. 30(d)(1); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. Civ. A. 08-7508-SAS-DCF, Hrg. Tr. 36:2–36:9 (ECF 256) (May 16, 2011) ("There is nothing good lawyers can't get done in seven hours. That's why the federal rules said so."). Extending depositions for two or three days—as Plaintiffs propose—often will only multiply costs and the burdens on the witnesses without advancing the legitimate ends of discovery.

Plaintiffs propose a minimum 10 hours of on-the-record questioning for ***every*** deposition by the non-noticing side—with "extensions of th[at] time limit … for certain depositions." Dep. Protocol ¶ 75. This would mean that every English language deposition would have to be scheduled for a minimum of two days (and possibly three if the non-noticing side needs significant time to ask questions).

Plaintiffs' proposal only gets more burdensome for witnesses who are not fluent in English. Plaintiffs could not agree to Defendants' proposal to extend the time for foreign language depositions by 50% because presumably they want to double the time for such depositions. Combined with their request for 10 hours, doubling the time means that every foreign language deposition would have to be scheduled for at least 3 days to afford the 20 hours of questioning Plaintiffs seek for the noticing side. If the non-noticing side has significant questioning to conduct, the deposition could extend to 4 or 5 days long (with a possibility of a sixth day if Plaintiffs also seek a "discovery deposition" in advance). *See* Dep. Protocol ¶ 34–36. Of course, 4 to 5 days may even be extended, because Plaintiffs want this Court to "recognize that extensions of the time limit will be warranted for certain depositions." Dep. Protocol ¶ 73.

Plaintiffs offer no tangible reason why depositions cannot be completed within a more reasonable timeframe. Most witnesses in this case are likely to be like witnesses in any other case—those who have a limited role with limited knowledge. As a result, they should be able to be questioned by the noticing side in 7 hours like in any other case (with a reasonable extension for foreign language depositions).

## 7.   Attorney-Witness Consultations Are Generally Permissible Except When a Question is Pending.

The parties were unable to reach an agreement concerning when counsel and a witness may consult in privileged and work-product protected communications. Dep. Protocol ¶ 89. Defendants' position—rooted in the Local Rules and the case law—is that a witness may consult with counsel during a deposition.

In the Southern District, witness consultations with counsel during the course of a deposition are permissible, other than when a question is pending: "An attorney for a deponent shall not initiate a private conference with the deponent while a deposition question is pending, except for the purpose of determining whether a privilege should be asserted." *See* Local Civil Rule 30.4. Thus, Defendants believe that, when a question is pending, the witness must first answer the question before consulting with counsel unless such consultation is needed to (1) determine whether a privilege exists; (2) determine whether disclosure of information may violate a court order or any other law, rule, or restriction; or (3) address issues of confidentiality or whether information is or should be subject to a protective order.

During breaks or between deposition days, the deponent should be free to obtain the legal advice of counsel or engage in other work-product protected communications. "A witness is generally free to consult with counsel at any time during a deposition." *Okoumou v. Horizon*, No. Civ. A. 03-1606-LAK-HBP, 2004 WL 2149118, at *2 (S.D.N.Y. Sept. 23, 2004). Indeed, the implication of Local Civil Rule 30.4 is that while counsel generally cannot confer with a witness while a question is pending, they are free to confer at other points before and during the deposition. *See Few v. Yellowpages.com, LLC*, No. Civ. A. 13-4107-RA-MHD, 2014 WL 3507366, at *1–2 (S.D.N.Y. July 14, 2014) ("The rules of this court do not limit discussions between counsel and client during a deposition other than when a question is pending.").[6]

Such conferences are not nefarious. Indeed, they help ensure that the witness's testimony is complete, accurate, and not misleading—issues that could also expose the witness to accusations of perjury. That such conferences are permissible is underscored by case law that treats them as protected. Such conferences reveal the thoughts and mental impressions of counsel—to which opposing counsel has no entitlement under work-product doctrine. As a result, numerous courts have afforded them protection. *See Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 92 (N.D.N.Y. 2003) (refusing to direct Plaintiffs to reveal what counsel said to witness during the break of witness's deposition because "[t]o gain this information may truly intrude upon the attorney-client privilege and the work product doctrine"); *Odone v. Croda Int'l. PLC.*, 170 F.R.D. 66, 69–70 (D.D.C. 1997) ("Nothing in the record convinces this Court that the plaintiff and his attorney abused the attorney-client privilege; therefore, the defendant's motion for sanctions and to redepose the plaintiff regarding the content of his discussion with his attorney [during deposition recess] is denied."); *cf. Morales v. United States*, Nos. Civ. A. 94-4865-JSR, 94-8773-JSR, 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997) (denying plaintiffs'

---

[6] Local Civil Rule 30.4's precursor "incorporated a broader prohibition, barring a deponent's attorney from 'intiat[ing] a private conference with the deponent during the actual taking of a deposition, except for the purpose of determining whether a privilege should be asserted.'" *Few v. Yellowpages.com, LLC*, No. Civ. A. 13-4107-RA-MHD, 2014 WL 3507366, at *2 (S.D.N.Y. July 14, 2014). Witnesses, however, remained free to initiate such protected communications. Now, the current Local Civil Rule 30.4, amended effective July 11, 2011, "narrows the restriction on counsel to conferencing during the pendency of a question, a change that obviously represents a deliberate decision to alter the scope of the prohibition." *Id.* at *2.

JONES DAY

motion to compel non-party witnesses to answer questions about conversations with defendants' counsel because of material possibility witness responses would reveal counsel's legal strategy and thought processes "in contravention of the attorney work product doctrine").

Plaintiffs' proposal instead limits all attorney-witness consultations to instances in which counsel or a witness seeks to (1) determine whether a privilege exists; (2) determine whether disclosure of information violates a court order; or (3) address issues of confidentiality or whether information is subject to a protective order.  This approach inappropriately restricts acceptable attorney-witness consultations and risks jeopardizing a deponent's right to counsel. *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) ("[T]he right of counsel does not need to be unnecessarily jeopardized absent a showing that counsel or a deponent is abusing the deposition process."); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1119 (5th Cir. 1980) (holding that judge's rule during the course of trial prohibiting counsel from communication with a witness during recess or breaks from witness's testimony "impinged on [party's] due process right to retain counsel").  Thus, the restrictions Plaintiffs propose to place on witness-counsel consultations should only apply when there is a question pending.

* * *

Counsel for the Defendants currently in merits or jurisdictional discovery thank the Court for its consideration of these areas in which the Parties were unable to reach agreement.  We look forward to discussing these issues at the September 7, 2017 conference.


Respectfully submitted,

/s/ Steven T. Cottreau

Steven T. Cottreau

cc:      MDL-1570 Counsel of Record (via ECF)