H97sINRc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  TERRORIST ATTACKS ON SEPTEMBER 11, 2001


                                03 MD 1570 (GBD)(SN)

------------------------------x


                                        New York, N.Y.
                                        September 7, 2017
                                        3:30 p.m.

Before:

                    HON. SARAH NETBURN,

                                    U.S. Magistrate Judge

                         APPEARANCES

SIMMONS HANLY CONROY
     Attorneys for the Burnett plaintiffs
BY:  ANDREA BIERSTEIN

KREINDLER & KREINDLER
     Attorneys for the Ashton plaintiffs
BY:  ANDREW J. MAHONEY
     JAMES KREINDLER

COZEN O'CONNOR
     Attorneys for Federal Insurance plaintiffs
BY:  SEAN P. CARTER

MOTLEY RICE
     Attorneys for the Burnett plaintiffs
BY:  ROBERT T. HAEFELE

ANDERSON KILL
     Attorneys for the O'Neill plaintiffs and putative class
BY:  BRUCE STRONG
     ETHAN W. MIDDLEBROOKS

H97sINRc

```
 1                              APPEARANCES
                               (Continued)
 2

 3   JONES DAY
          Attorneys for Defendant Dubai Islamic Bank
 4   BY:  STEVEN T. COTTREAU

 5   BERNABEI & KABAT, PLLC
          Attorneys for Defendants Dr. Al-Turki, et al.
 6   BY:  ALAN KABAT

 7   LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
          Attorneys for Defendants IIRO and MWL
 8   BY:  WALEED NASSAR

 9   MOLOLAMKEN
          Attorneys for Defendant Dallah Avco
10   BY:  ROBERT K. KRY

11   SALERNO & ROTHSTEIN
          Attorneys for Defendant Yassin Kadi
12   BY:  AMY ROTHSTEIN
          PETER C. SALERNO

13   THE LAW FIRM OF OMAR T. MOHAMMEDI, LLC
          Attorneys for Defendant World Assembly of Muslim Youth
14   BY:  ELIZABETH KIMUNDI

15

16

17

18

19

20

21

22

23

24

25
```

H97sINRc

1          (Case called)

2          THE COURT:  Good afternoon.

3          MS. BIERSTEIN:  Good afternoon, your Honor.  Andrea

4   Bierstein, Simmons Hanly Conroy, for the Burnett plaintiffs in

5   the PEC.

6          MR. MAHONEY:  Good afternoon, your Honor.  Andrew

7   Mahoney for the Ashton plaintiffs in the PEC.

8          MR. CARTER:  Good afternoon, your Honor.  Sean Carter

9   from Cozen O'Connor for the federal plaintiffs.

10          MR. HAEFELE:  Good afternoon, your Honor.  Robert

11   Haefele from Motley Rice here for the Burnett plaintiffs in the

12   PEC.

13          MR. KREINDLER:  Good afternoon, your Honor.  Jim

14   Kriendler, Kriendler & Kreindler, for the Ashton plaintiffs and

15   the Plaintiffs' Committee.

16          MR. COTTREAU:  Good afternoon, your Honor.  Steve

17   Cottreau, Jones Day, on behalf of the Dubai Islamic bank.

18          MR. KABAT:  Good afternoon, your Honor.  Alan Kabat

19   from Bernabei & Kabat for Dr. Al-Turki et al.

20          MR. NASSAR:  Good afternoon, your Honor.  Waleed

21   Nassar from Lewis Baach on behalf of the Muslim World League

22   and the International Islamic Relief Organization.

23          MR. KRY:  Good afternoon, your Honor.  Robert Kry from

24   MoloLamken for Dallah Avco.

25          MS. ROTHSTEIN:  Good afternoon, your Honor.  Amy

H97sINRc

1  Rothstein from Salerno & Rothstein for Yassin Kadi.

2          MR. SALERNO:  Good afternoon, your Honor.  Peter

3  Salerno, Salerno & Rothstein, for Yassin Kadi.

4          THE COURT:  Yes.

5          MR. STRONG:  Bruce Strong and Ethan Middlebrooks,

6  Anderson Kill, on behalf of the O'Neill plaintiffs, the

7  putative class, and the PEC.

8          THE COURT:  Thank you.  Good to see you all.  I hope

9  everybody had a nice summer.

10          Let me tell you what I have on my agenda for today.

11  I may take things a little out of turn.  I want to check in

12  on the status of discovery, make sure that I have all of the

13  relevant dates set, and make sure that you all have your

14  expectations set.  I want to talk about the motions to compel,

15  which obviously is related to the status of discovery.  Then I

16  want to talk about the deposition protocol, and I'm prepared to

17  rule on the disputed areas of that deposition protocol, but

18  more importantly, I want to talk about depositions.

19          The thing that was missing from the deposition

20  protocol, I can see that you all spent a lot of time and put a

21  lot of hard work in drafting that protocol, but in my view it

22  was missing some key information that I had expected to be in

23  there, namely when those depositions are going to take place

24  and how many are reasonably anticipated.  I know in the

25  protocol there is a triggering date for beginning the

1    meet-and-confers between the parties, about how many

2    depositions are likely to be undertaken, and I am concerned

3    that that process would put us deep into next year before any

4    deposition is taken and I don't want that.  I want to talk with

5    you all about a way to make sure that we are taking depositions

6    in this case in the spring of next year.  I believe that that

7    is reasonable and appropriate, and I want to talk to you about

8    how to get that done.  Then I have a few housekeeping matters.

9           Let me begin with the status of discovery as I

10   understand it.  It is my understanding that with respect to the

11   jurisdictional defendants, paper discovery has been completed;

12   that with respect to all of the merits defendants, other than

13   the World Assembly of Muslim Youth and WAMY International,

14   paper discovery has been completed as well, obviously with the

15   asterisks about motions to compel.

16          I am expecting status letters from the parties on

17   September 29 for those defendants for whom paper discovery

18   should have been completed by now, and I am expecting a status

19   letter on the WAMY production on November 17.  My hope is that

20   we will be teeing up motions to compel, if any, in that case

21   toward the end of this year.

22          There is also the motions to compel that have been

23   filed or that have been raised as possible in the status letter

24   that was recently filed in connection with the jurisdictional

25   defendants.

1              Who wants to speak from the plaintiff's side with

2      respect to that?

3              Mr. Carter?

4              MR. CARTER:  Your Honor, I can address those issues.

5              As a general matter, I think all of the dates and

6      status, as your Honor ticked off, are accurate.  There is one

7      issue ongoing with the plaintiffs and Dubai Islamic bank.

8              THE COURT:  This courtroom is beautiful but has

9      terrible acoustics.  Please use the microphone.

10             MR. COTTREAU:  There is an ongoing dialogue between

11     the plaintiffs and counsel for Dubai Islamic Bank concerning a

12     universe of search terms that was the subject of a prior motion

13     to compel relative to which Judge Maas had issued an order, and

14     we had some disagreement about the proper understanding and

15     interpretation of that order.  It's been an ongoing and

16     productive dialogue, and we have gotten it narrowed down to,

17     I think, a universe of 20 or so names that we are in dispute

18     about.  We are trying to resolve that hopefully in the next

19     couple weeks.  The hope is that we will resolve that and there

20     will be no motion practice related to that.  That is our

21     aspiration at least.

22             THE COURT:  With respect to Dubai Islamic Bank?

23             MR. CARTER:  That's correct, your Honor.

24             THE COURT:  That would cover all discovery disputes,

25     this ESI issue is the only one at this point?

H97sINRc

1              MR. CARTER:  I'm sorry, with regard to Dubai Islamic

2     Bank?

3              THE COURT:  Yes.

4              MR. CARTER:  Because we haven't gone through the

5     process of doing our full status report, I want to reserve.  I

6     think there was also an issue as to whether or not they have

7     complied to Judge Maas' order to search for certain documents

8     relating to the 1998 Embassy bombings.  I raised that with them

9     as well.  Off the top of my head, there are a few issues that

10    we are trying to resolve.

11             THE COURT:  That sounds promising.  Hopefully when we

12    get that status letter on the 29th, those issues will be

13    narrowed.  If they are not narrowed and if a motion is going to

14    be filed, I do want that be to filed soon after the status

15    letter.  When I say "soon after," I mean certainly within

16    30 days after the status letter.

17             One of the housekeeping issues I want to mention is

18    the length of status letters.  I don't need a full motion in

19    a status letter.  That's the point of a status letter.  You

20    should be prepared to file that motion soon afterwards.  It may

21    be there are certain things I can resolve without additional

22    motion practice, or I can call the parties and we can have a

23    conference, but my hope is that we are going to tee up these

24    motions sooner rather than later.

25             MR. CARTER:  Your Honor, with the Dubai Islamic Bank

motion to compel, I think that timeline is fine.  With regard

to the Muslim World League, IIRO, and World Assembly of Muslim

Youth, as your Honor is aware, they were given extensions to

complete their productions and we are just working through

those.  We have received literally hundreds of thousands of

documents within the last few months from those defendants, and

so I think we might be needing a bit longer after the

September 29 deadline to try and identify what the universe of

motions will be and to get those on file.  We are dealing, in

certain of these cases, with productions that encompass a

million pages, and we think there is quite a bit missing.  It

may be a bit of a more involved process in those cases.

THE COURT:  Well, I'll get the status letter with

respect to that production as well on September 29.

MR. CARTER:  You will, your Honor.

THE COURT:  Hopefully we'll have some clarity there,

that will have been 45 days from the close of that discovery,

and obviously what was produced prior to that close deadline,

you should be reviewing on an ongoing basis.  My hope is that

you'll have a pretty good handle by the 29th as to what remains

and where you think there is room for dispute.

With respect to each of the individual defendants,

I am comfortable individual conferences with the relevant

representatives from the Plaintiffs' Executive Committee and

the relevant lawyers so everybody doesn't need to be involved

1    to move those disputes through.  But what I don't want to have

2    is a period of months of meet-and-confer, and then months to

3    prepare a motion, and all of a sudden it is June of 2018 and we

4    are not moving the case forward.  I have a significant interest

5    in pushing this case forward at this point.

6            MR. CARTER:  Your Honor, we share that, and I think in

7    those cases we have had numerous meet-and-confers along the way

8    and we are just at an impasse, ultimately.

9            THE COURT:  That is what I'm here for.

10           So on the 29th, I'll get a letter with respect to the

11   Dubai Islamic Bank production and with respect to the Muslim

12   World League and International Islamic Relief Organization.

13   Hopefully we'll have a handle roughly on what has been

14   produced, what remains outstanding, and where to go from there.

15   Obviously, the same will go with respect to the WAMY documents,

16   though we're two months behind with respect to that.

17           Can we turn to the jurisdictional discovery.  The

18   status letter that I received suggested that there had been

19   several orders that were issued by Judge Maas in 2015 and 2016,

20   and that there was a view that there had not been compliance

21   with those orders.  Specifically I'm looking at the order from

22   Judge Mass related to Muslim World League and IIRO.

23           I understand that Judge Maas ordered a sworn

24   statement, a certification of the completeness of the

25   production, that a privilege log be produced, and I understand

H97sINRc

1    that there is also, related to some of the individual

2    defendants, a question about passports, both personal passports

3    and governmental passports.

4          I'm not sure at this point a motion to compel is the

5    right motion to be filing.  It seems to me a motion for

6    sanctions is the appropriate motion to be filing.

7          MR. CARTER:  Your Honor, we wanted, obviously, to give

8    the defendants an opportunity to cure the problems, and that is

9    why we went into the level we did in the status report.  I

10   think we agree, if they haven't complied, that's the

11   appropriate recourse.

12         THE COURT:  Counsel, is there an intention to comply

13   any further with Judge Maas' orders?

14         MR. KABAT:  With respect to the individual

15   defendants --

16         THE COURT:  I'm sorry.  Put the microphone to you as

17   well.

18         MR. KABAT:  With respect to the individual defendants,

19   we had to wait until the World League completed the production

20   with them to be able to certify that all documents had been

21   produced and abeyances are involved and so forth, and that

22   production was completed two weeks ago.  We submitted the

23   certification to our client for their review, and we hope to

24   have them sign within a week or two, certainly by the end of

25   the month.

H97sINRc

1          THE COURT:  The certification will be provided in the

2      next two weeks.

3          What about with respect to passports?  My

4      understanding is that there was a response to one of the

5      discovery demands that the officials were traveling primarily

6      on official passports which were not in their possession.

7          I don't understand why your clients can't obtain

8      a certified copy of their passports from the relevant

9      government entity in order to produce that, and then there is

10     also a question about any personal passports that they may have

11     and travel on.

12         MR. KABAT:  Our client inquired about that, and we

13     have not been successful so far.  We will keep on working on

14     it.  I'm sorry.

15         THE COURT:  The alternative, as I mentioned, I don't

16     think a motion to compel the production is the right posture at

17     this point.  You've been ordered to produce these documents.

18     You failed to do so.

19         What I am going to do is set a deadline for the

20     sanctions motion.  I'll give you time to have one last

21     opportunity to cure, to produce these documents, but if they

22     can't be, if they aren't produced within the next 30 days, I

23     am going to invite a sanctions motion from the Plaintiffs'

24     Executive Committee.

25         Today is September 7.  Why don't we set Friday, the

H97sINRc

1    6th of October, as a deadline for any sanctions motion with

2    respect to those individual defendants.  Is two weeks enough

3    time to respond to that motion?

4            Any opposition to that motion will be filed on

5    October 20, and if the Plaintiffs' Executive Committee wants to

6    file a reply, that will be filed October 27.

7            Who is here on behalf of Mr. Al-Buthe?

8            MR. KABAT:  I am.

9            THE COURT:  You as well?

10           Same question.  I think there's been some productions

11   and certifications that Judge Maas previously ordered.

12           MR. KABAT:  We should be able to have the

13   certification within a week or two, or certainly by the end of

14   the month, and I am going to have to review the rest of the

15   documents they claim we haven't produced to double-check again

16   what we have.  It may be that he simply does not have those

17   documents.  I need to double-check with our client on that.

18           THE COURT:  OK.  If you can continue the

19   meet-and-confer with respect to all those individuals,

20   hopefully there will be a cure and the appropriate

21   certifications will be provided.  To the extent your clients

22   are withholding any documents on privilege grounds, that needs

23   to be produced, a privilege log needs to be produced, I

24   understand that hasn't been produced yet, and obviously

25   certified copies of both the official passport and any personal

1    passport that would be in your clients' possession, that needs

2    to be produced.  Your time to cure is up until October 6, at

3    which time the sanctions motion will be filed.

4            MR. KABAT:  I would just note that Mr. Al—Buthe has

5    already submitted his passport.  That is not an issue for him.

6            THE COURT:  Terrific.  Thank you.

7            Any issues with respect to obviously Dallah Avco, we

8    already addressed motions to compel.  I interpret the letter to

9    say there is nothing further that the Executive Committee is

10   seeking.  With respect to Mr. Jelaidan, I understand we are

11   trying to get the OFAC license issue squared away.  I don't

12   think there is anything for the court to do on that defendant.

13           MR. CARTER:  Your Honor, there were two issues.

14           With regard to Dallah Avco, we thought there was some

15   ambiguity in the letter we received from Mr. Kry about the

16   scope of the search, for meetings within Dallah Avco about the

17   September 11 investigation pursuant to your Honor's order.

18           I spoke to Mr. Kry.  It sounds as though from his

19   explanation to me that they have searched for all potential

20   meetings, but we are just asking for clarification of that in

21   writing.

22           THE COURT:  Can you provide that?

23           MR. KRY:  I'll raise that with my client and provide

24   the appropriate clarification.

25           THE COURT:  If you can get that done in the next two

weeks, that would be terrific.

MR. CARTER:  Your Honor, with Mr. Jelaidan, we mentioned in the letter that one of the communications to OFAC included, as attachments to OFAC, two bank records relating to accounts that were held by Mr. Jelaidan.  We understand that they were seeking release of funds from those banks.  One of the long-running issues that we have had relative to which Judge Maas issued a number of orders was that Mr. Jelaidan had not produced his banking records, claimed that he was unable to get them.  Judge Mass ultimately ruled that he was able to get them, had not undertaken steps, and needed to do so.

The communication to OFAC suggests the existence of banking records that we have never been provided.  It is hard for us to tell because they weren't provided.  Informally we ask that we be able to see those to make sure they are not new documents that have never been then produced, but we haven't gotten a response.

THE COURT:  Who is here on behalf of Mr. Jelaidan? Anyone?

There is a lawyer on this case.  He writes me letters every 30 days.

MR. CARTER:  Mr. McMahon is counsel to Mr. Jelaidan.

THE COURT:  Anyone from the Defendants' Executive Committee know whether he had intended to come to this conference?

1          MR. KRY:  Your Honor, it is my understanding that he

2     was not able to attend today.

3          THE COURT:  I think what I will do is issue an order

4     directing the parties to continue that meet-and-confer,  and I

5     am going to set the October 6 deadline for the sanctions motion

6     with respect to the various individual charity officers as a

7     deadline for you to file any motion before me with respect to

8     those bank records.

9          MR. CARTER:  Thank you, your Honor.

10          THE COURT:  In addition, there was a submission by

11     Mr. Kadi addressing issues with respect to the plaintiffs'

12     production in response to discovery demands.  Obviously the

13     Plaintiffs' Executive Committee also raised issues with respect

14     to Mr. Kadi's production.

15          Who wants to tell me where we are on this issue?

16          MR. MAHONEY:  Andrew Mahoney, your Honor.

17          I spoke to Mr. Salerno over the last several days,

18     including today.  We have substantially narrowed a lot of the

19     issues.  Some of them are more ministerial.  I am not prepared

20     to say that we anticipate motion practice, but there was an

21     extensive privilege log that was given to us that I want to

22     discuss with Mr. Salerno in the next week or two to see whether

23     or not we will make a motion regarding some of the documents he

24     has identified there.  He has represented that he has produced

25     everything.  We will get that certified, but I think we have

H97sINRc

 1    come a long way in narrowing the issues even since the status

 2    letter to the court.

 3           THE COURT:  Terrific.  Is that narrowing issues that

 4    both sides raised?

 5           MR. MAHONEY:  I think so.  There was a question about

 6    interrogatories that they raised.  We believe they are

 7    contention interrogatories that are tabled for the time being.

 8    There is a little bit of a disagreement about that, and I don't

 9    know if Mr. Salerno wants to speak to that today or table that

10    for a later time.

11           I think that was an area we did not agree on.  But

12    beyond that, I think there was some issue with regard to

13    identifying which of the plaintiffs' production were specific

14    to Mr. Kadi.  Some of that has already taken place and some of

15    that will take place in the next week or two.  Mr. Kadi is

16    actually handling some of that.  He recently got new documents,

17    I think only a small number of which will pertain to Mr. Kadi.

18    They are interested in getting that.  We agreed to do that.

19           THE COURT:  Mr. Salerno, anything to add?

20           MR. SALERNO:  Just, your Honor, with respect to

21    interrogatories.  We don't want to go to motions to compel and

22    pressing the court on that issue if the court feels this is not

23    the right time.

24           We disagree with the plaintiffs that there was any

25    tabling of interrogatories that is applicable now.  The tabling

H97sINRc

1    was years ago.  At some point, tabling ceases.  But if now is

2    not the right time from the court's point of view, we don't

3    want to press it.  We do want answers to the interrogatories,

4    because after having produced voluminous amounts of discovery

5    post remand and getting voluminous amounts of discovery from

6    the plaintiffs, we would like to know what claims now the

7    plaintiffs see against our client for us to respond to, and all

8    we have is pleadings that predate the decisions on our motion

9    to dismiss.  Interrogatory answers would be helpful, but if the

10   court feels that this is not the right time, as I said, we

11   don't want to burden the court with unnecessary motions either.

12           THE COURT:  I haven't reviewed the specific

13   interrogatories to rule one way or another whether or not they

14   are contention interrogatories or close to contention

15   interrogatories.

16           Typically my practice is to have some depositions go

17   forward before contention interrogatories are propounded.  I

18   don't know, because I haven't seen these interrogatories,

19   whether or not in this instance that makes the most sense.  I

20   certainly understand your position that you need some clarity

21   as to what exactly is being alleged.

22           I am not prepared to rule one way or the other as to

23   whether they are sort of back on the table or off the table or

24   where they stand.  Without having reviewed them, I can tell you

25   that my practice generally is that I think it is more

1     productive to have depositions go forward and then propound

2     those interrogatories at the conclusion of that.

3             I guess at this point I have to leave it to you

4     whether or not you want to raise the issue with me, given the

5     little you now know about my practice, and decide whether or

6     not I should review the interrogatories and make a specific

7     ruling.

8             MR. SALERNO:  We will confer among ourselves about

9     that and with the plaintiffs and see if we can make progress

10    and maybe reach an appropriate conclusion on that.

11            THE COURT:  Can we set the same October 6 deadline?

12            I think I am going to set the same October 6 deadline

13    for motion practice on this particular schedule as well.  That

14    gives you all a month to continue the conversation, and if you

15    decide that you want to press the issue of interrogatories or

16    something else, it should be in a motion filed on October 6.

17            MR. SALERNO:  Your Honor, could we have one more week?

18    Only because we have a vacation planned and it is already

19    bought and paid for a week in late September.

20            THE COURT:  Sure.  Everything will get shifted a week.

21            Instead, that particular motion with respect to Kadi

22    would be filed on October 13, with opposition papers filed on

23    October 27, and any reply brief filed on November 3.

24            MR. SALERNO:  The only other issue we have with the

25    plaintiffs, your Honor, it is the reciprocal of the issues that

they have with us, but we have completed our document

discovery.  They have told us informally that they had

completed their document discovery, that they are not

withholding anything pursuant to any objection under privilege.

        They have now told us informally that there are no

documents to go on a privilege log, keeping in mind that there

was a temporal deadline set for privilege logs, temporal

cutoff.  The documents that are privileged postdating 9/11 need

not be logged.

        We filed a privilege log, the one that Mr. Mahoney

spoke about with the 277 documents, all pre 9/11 documents.  We

filed the log, we served the log, all we need is the formal

statement from them, as opposed to the informal one which they

want from us, that no privilege log is necessary, which is

probably the case.  These are mere formalities and ministerial

matters, just as they are --

        THE COURT:  Sure.  Judge Maas obviously decided that

there was sufficient question about the efforts to search for

certain documents that he decided.  And this was back, I think,

in March of 2016 that certain defendants needed to certify that

they had behaved appropriately.  I am not saying you are, but I

am now questioning whether or not a certification from the

plaintiffs is necessary.

        Typically in litigation, lawyers who are officers of

the court make a representation to the court, they stand by it,

H97sINRc

1    and I assume that it is truthful.  If there is something you

2    think about the plaintiffs' informal representations to you

3    that is unsatisfactory or that you think leaves you with doubt,

4    you should bring it to my attention.  But typically I don't

5    require a party to certify that they are completed with

6    discovery.

7             MR. SALERNO:  Fair enough, your Honor.  I guess

8    neither of us were clear on that.  I have no problem whatsoever

9    with the certification that they are done.  I don't know if

10   they have a problem with our certification that we are done.

11   They haven't expressed one really, except there was some

12   discussion of it just today.  We don't have a problem with

13   that.  If it is not necessary, then we don't want it.

14             THE COURT:  Why don't I let you all continue this

15   conversation about whether the production is completed or not

16   or whether or not there is anything outstanding.  I mean, I see

17   that the requirement for a certification -- at least in my

18   practice, I don't know what Judge Maas was thinking when he

19   issued those rulings -- in my practice it is because there is

20   some doubt about whether or not the producing party has been

21   adequate in his or her searching and there is a requirement or

22   a need for some sort of something more formal to rely upon.  If

23   there is no reason, I wouldn't ordinarily require lawyers to

24   certify their production.

25             MR. SALERNO:  Fair enough, your Honor.

H97sINRc

1          THE COURT:  Thank you.  I think that addresses and

2     gives me some sense of where we are on discovery.

3          So we've got deadlines set for any of the

4     jurisdictional defendants and we are going to get some status

5     letters in the coming months with respect to the merits

6     defendants.  If we think that there is a need for motion

7     practice, I am going to set deadlines for that motion practice.

8     They will be reasonable, but they will not be extended deep

9     into 2018.  We will set deadlines as necessary.

10          If you reasonably anticipate motion practice, you can

11     put in your status letter that you do and propose dates.  I

12     would prefer those dates to come on consent from both parties,

13     and to the extent you're asking for something beyond a 30-day

14     window to file a motion, I am going to want to hear why that is

15     necessary.

16          Let's turn to the deposition protocol.  I think what

17     I am going to do, I've read the letters, I've looked over the

18     protocol, obviously.  I don't think I need argument from

19     anyone, so I am going to tell you how I am going to rule, and

20     then I want to have a conversation about some of the

21     information that is missing, in my view, in this protocol.

22          The first issue is with respect to paragraph six.

23     There was a question about whether or not it would apply to

24     jurisdictional defendants.  I don't think there is a basis for

25     Rule 26(a) disclosure requirements to apply to jurisdictional

H97sINRc

defendants.  Certainly in the course of that jurisdictional

discovery, if there is an appropriate interrogatory or

information is provided by defendants, witnesses will be

disclosed.  But I don't think procedural Rule 26(a) is

implicated, and I think that the jurisdictional defendants have

raised an adequate explanation for why it would be unfair for

them to comply with Rule 26(a), given the posture of the case.

          The next issue I flagged is an issue which you did not

flag.  I just want to mention it.  I don't necessarily need to

deal with it quite yet.  It will go to this general issue of

when we are going to get these depositions taken.

          I am concerned in paragraph 25, the parties propose

that notices for depositions that are going to take place in

the United States be provided within 21 days, and there is a

45-day deadline to schedule notices for depositions outside the

United States.  I don't think that those sorts of deadlines are

necessary.  Those seem excessive to me.  I actually think, and

I am going to be ruling, that some of these depositions are

going to take place outside of the United States, potentially

many of them.  Trying to schedule depositions, with all of the

moving parts that is inherent in this case, with 45 days'

notice, in my mind, is an impossibility and will only create

problems and disputes about when people are changing dates, and

then do we need to restart some 45-day clock.  I don't

necessarily have dates that you should put into that, but I do

think that 21 days and 45-day system is too long.

With respect to paragraph 27, and as it deals with the location of the defendants, I am certainly mindful that the presumptive rule is that defendants are not required to appear in the forum jurisdiction for purposes of the deposition.  So I reject the Plaintiffs' Executive Committee's proposal that all depositions take place here in the forum.

I did read the Plaintiffs' Executive Committee, setting forth all of their letter, setting forth all of the factors that courts consider when deviating from that presumptive rule.  I find that they justify some limitations on the location of deposition, but not requiring that all depositions take place here.  I think that the complexity associated with scheduling these depositions and coordinating them among various parties and interested actors, as well as some of the unique issues that are raised by requiring depositions to take place in Saudi Arabia, which is obviously a defendant in this case, or in the United Arab Emirates, where the defendant Dubai Islamic Bank has a major presence, I think create real issues here.  I reject the proposal from the Defendants' Executive Committee that depositions occur in any nation, including where a deponent lives or works.

I am going to authorize the depositions to take place either in the forum jurisdiction or London, Paris, and Rome as acceptable locations.  I do think that the protocol should

H97sINRc

provide that upon the agreement of the parties, based on the

convenience of the witness, a deposition may take place in some

location other than those four presumptive locales.  It may be

that there is a Canadian citizen and everybody agrees that it

makes sense to take that deposition, for convenience of the

witness, in Canada, but if there can't be agreement, the

presumptive locations will be New York, London, Paris, and

Rome, and the New York jurisdiction doesn't carry any more

weight.

         For those defendants, of whom I am assuming there are

many who are going to be coming from the Middle East, my

assumption is that many of those depositions are going to take

place in Western European cities.

         MR. HAEFELE:  Your Honor, Robert Haefele.  I am sorry

to interject here.

         One thing I wanted to call your attention, it was

actually plaintiffs that I think proposed to do Paris as one of

the locations, it turns out I think Paris may be problematic

because I think that there is a blocking statute that might

prevent the depositions from taking place in Paris.  If that is

an issue, then it probably wouldn't be an appropriate location

to have as a proper location for the depositions.

         THE COURT:  You said there is a blocking statute?

         MR. HAEFELE:  I think the blocking statute that would

forbid depositions American style, so to speak, from taking

H97sINRc

 1    place in Paris.

 2              THE COURT:  Yes.

 3              MR. NASSAR:  We have a couple questions on that.  It

 4    is in relation to both of my clients I represent, Muslim World

 5    League and the International Islamic Relief Organization.  Both

 6    of them are in Saudi Arabia.  Visa issues are going to be a

 7    major concern for our clients, as well as many of the

 8    prospective witnesses that plaintiffs are interested in.  In

 9    getting them to Western European countries is going to pose

10    quite a challenge, especially given the nature of this

11    litigation and what is alleged against them in particular.

12              Is this something we should write to you further on?

13              THE COURT:  I'm happy to address these problems.  I

14    don't want a problem without a solution.

15              One of the things I want to talk about is, it seems to

16    me today, if I forced you all to pick your depositions, you

17    should be able to do a pretty good job.  And so what I reject

18    wholly in the protocol is this triggering date of May 2 as

19    being the day that you start to talk about depositions.

20              I want to have a conversation with you all about when

21    we can start identifying who is going to be deposed.  Once we

22    identify who is going to be deposed, you may be in a better

23    position to say, my clients can very easily travel to Rome, or

24    my clients can very easily travel to, I don't know, Tunisia, I

25    don't know, some other country where everybody can agree there

H97sINRc

1     is not a travel ban.  I am not sure if Tunisia is one of them.

2     That would be appropriate.

3          I think countries where there is serious travel ban

4     issues are inappropriate.  I think countries where women are

5     going to be under some sort of disability, for lack of a better

6     word, if we have female lawyers going to have some sort of

7     restrictions, those countries are not appropriate, in my view,

8     for depositions in this purpose.

9          MR. NASSAR:  Sure.  And on that point, in terms of

10    alternatives, we have navigated numerous other federal

11    litigations in the U.S., as well as the Cayman Islands.

12    Depositions in the kingdom, in Saudi Arabia where, for whatever

13    reason, maybe one side is not able to attend, but by video, by

14    video link, and if that is also an acceptable alternative as

15    well?  That is something that we have done in numerous federal

16    courts in relation to Saudi Arabia, some of the challenges that

17    are poised by Saudi Arabian depositions.

18         THE COURT:  Is that a case where Saudi Arabia was a

19    defendant?

20         MR. NASSAR:  Saudi Arabian interests.  I don't

21    represent Saudi Arabia, I represent two organizations, NGOs in

22    Saudi Arabia.  Those cases included Saudi Arabian interests,

23    but not the kingdom itself.

24         THE COURT:  Well, those are real concerns.  Obviously

25    if somebody can't appear in London for a deposition, then that

H97sINRc

makes no sense in ordering that deposition.

But I want to be clear that I am rejecting both proposals from the parties that it will not be presumptively here in New York and it will not be presumptively where the witness lives or works. With some of the limitations that I have just outlined, certain countries I think are not going to be available. Whether or not, for instance, if we identify a particular witness from your client who, for whatever reason, it would be a significant hardship to travel or impossibility to travel to a country that the Plaintiffs' Executive Committee is prepared to travel to for purposes of the deposition, it may be that the Plaintiffs' Executive Committee is comfortable taking that deposition by video hook up with the person in Saudi Arabia and the lawyers in New York.

I am repeating myself a little bit, but what I want to make clear is that these conversations, I think, should be happening now, because I think you know who is going to be deposed, you have a sense of who you are going to be asking for. We should be having these conversations now. That would inform this protocol.

I think the problem with the protocol is that it is a little bit in a vacuum without actually thinking about carrying it out. It's got a lot of detail about the bells and whistles of the depositions, but I think it is missing some of the hard work about how many depositions are going to take place.

1          Both sides are going to leave the deposition phase of

2     this case without having deposing every single person they want

3     to depose.  When are those depositions going to start taking

4     place, how much time do you have for those depositions; those

5     are the hard questions that we need to be asking now that I

6     didn't see in the protocol.

7          So I think I've been clear, at least with respect to

8     the locations, on what is not acceptable.  Hopefully I have

9     resolved that dispute among the parties, and I'll pass it on to

10     you to have the conversation to create carve-outs for

11     situations where there are witnesses who, for whatever

12     political or legal reasons, are unable to travel to a country

13     that the Plaintiffs' Executive Committee thinks is appropriate.

14     And also maybe we scratch Paris, if Paris's civil system

15     creates too much complications as far as enforcing the federal

16     rules for these depositions.

17          Let me also talk, in paragraph 27 there is the issue

18     of former employees.  Again, we have a presumptive rule that

19     I think is appropriate and correct, but in the unique

20     circumstances of this case, I think, needs to be modified in

21     part.  Obviously it is correct that the defendant corporation

22     does not and should not have an obligation to produce former

23     employees for depositions.  As a practical matter, however, it

24     may be that the corporate defendants are the only entities that

25     have any information about the whereabouts for witnesses that

H97sINRc

1   the Plaintiffs' Executive Committee wishes to depose.  I think

2   a compromise proposal is appropriate.

3           The defendant corporation should be providing upon

4   request, which may or may not have been made already, all of

5   the last-known contact information for any former employees.

6   To the extent the Plaintiffs' Executive Committee has

7   identified former employees that they intend to depose, you

8   should be providing those names now to the defendant

9   corporations and the corporation should be providing last-known

10  information.

11          Then the Plaintiffs' Executive Committee should take

12  reasonable efforts to serve a notice of deposition on that

13  person, and the burden is on the Plaintiffs' Executive to do

14  that.  You should make that first effort.  If you're

15  unsuccessful, I do think it is appropriate for the defendant

16  corporation to provide reasonable assistance.

17          To the extent that there is a contact or some way to

18  communicate, I think it is reasonable, given the length of time

19  that has passed since this event, given the issues related to

20  language, I think just the nature of this litigation in and of

21  itself, I think, is fair.  And the difficulties of the court

22  enforcing its subpoena power in foreign jurisdictions, I think

23  it is reasonable to ask the defendants, after the plaintiffs

24  have exhausted their efforts, to undertake a reasonable effort

25  to make the witness, the former employee, available.

H97sINRc

         However, the burden will never shift to the defendants

to produce that witness, so the defendants have to make a

reasonable effort after the plaintiffs have done so.  But if

ultimately that effort is unsuccessful, it will not be the

burden on the defendants to produce that employee.

         MR. HAEFELE:  Your Honor, may I address that for a

moment?

         THE COURT:  Sure.

         MR. HAEFELE:  My understanding is that the federal

rules reach a little beyond just whether the person is a former

employee or not.  There is a term we use "managing agent" that

extends a little bit beyond.  There are circumstances where the

case law has recognized the obligation of a defendant, a

corporation, to produce a former employee or a former, I should

say former, official or a person that speaks on behalf of the

corporation, a person who has an identity that is sympathetic

to the defendant corporation versus to the opposing side, the

questioning party.

         I just want to make sure and determine whether or not

your ruling is intended to go to restrict that use of that term

"managing agent?"

         THE COURT:  I haven't looked at this specific issue

recently, but I have in the not-too-long distant past.  My

understanding of the law is that the defendant corporation does

have an obligation to produces officer, directors, managing

1    agents, anyone who can bind the corporation that are current

2    employees.  And so to the extent you're seeking depositions of

3    a president or director of WAMY, that would be the obligation

4    of WAMY to produce that person.

5            If you're asking about former directors, people who

6    once held a position of authority but have since left, I am not

7    sure that the law covers those people.

8            MR. HAEFELE:  I could give you a few citations, and

9    maybe your Honor can look at them before you do the order?

10           THE COURT:  Sure.

11           MR. HAEFELE:  The few citations instances I have

12   located are Independent Products Corporation v. Loew's at

13   24 F.R.D. 19 (S.D.N.Y 1959); a Seventh Circuit decision,

14   O'Shea v. Jewel Tea Corporation, 233 F.2d 530 (7th Cir. 1956);

15   Petition of Manor Investment Corporation, 43 F.R.D. 299

16   (Southern District 1967); Libbey Glass v. Oneida Limited,

17   197 F.R.D. 342, that's a Northern District of Ohio from 1999;

18   and Tomingas v. Douglas Aircraft, 45 F.R.D. 94.  I know it is a

19   Southern District case, but I don't have the year.

20           THE COURT:  Thank you.

21           MR. KRY:  Your Honor, if I can ask for clarification

22   on one.  My understanding is that under the rules, a foreign

23   corporate defendant would not have any obligation, even for a

24   current employee, to produce somebody unless that person was a

25   managing agent officer or director.

1          Does your order with respect to former employees apply

2     only to former employees that we would have an obligation to

3     produce if they were still current, or was it intended to be

4     broader than that?

5          THE COURT:  I guess I would reserve a ruling at this

6     time on that precise issue, but I would say that typically the

7     way parties operate is that a defendant corporation will make

8     available its employees.  I think it may be that the obligation

9     legally is just as to managing agents and directors and the

10    like.

11         You start to get into ethical questions about whether

12    or not lawyers from opposing side can contact employees, and

13    there is all sorts of ethical case law about how low down the

14    food chain that employee needs to be before you don't have an

15    ethical problem.  And I think in my experience, lawyers

16    typically simply agree that the company will produce all of its

17    employees that are called for deposition.

18         You may object to a particular witness for a

19    particular reason and have a conversation about that, but that

20    typically, in part, out of a courtesy to your own employees,

21    that corporations do produce their own employees regardless of

22    where they are on the hierarchy.

23         MR. COTTREAU:  Your Honor, one quick thing.  Steve

24    Cottreau for Dubai Islamic Bank.

25         With respect to the case law that you got from

1     Mr. Haefele we never had a chance to respond to because we had

2     a simultaneous exchange of briefs.  As you're reading through

3     it, a lot of those cases involve former officers, directors,

4     and managing agents who were then demoted by the corporation of

5     a status of a former employee.  A lot of those cases deal with

6     that ruse by those parties trying to get around having to

7     produce those people.

8            Also, there is a strand -- this is a very narrow

9     exception -- where the former officer, director, or managing

10    agent still is somehow under the control of the corporation or

11    still closely identified with that corporation that the courts

12    are essentially saying they are not former, at least in terms

13    of your ability to control them.  A lot of those cases involve

14    employees that the corporation has been able to put up for

15    depositions in other cases and still be able to have their

16    cooperation.

17           I think it is a very narrow exception and maybe is

18    better off handled by you on a case-by-case basis if it ever

19    even comes up as an issue in the case.

20           THE COURT:  Very well, thank you.

21           MR. HAEFELE:  Your Honor, I would agree that is

22    exactly what the case law says.  It is a case-by-case basis,

23    and we have no problem with looking at it on a case-by-case

24    basis, but a rule that says that we can't notice their

25    depositions and they cannot be produced by the corporation is

H97sINRc

1    somewhat of an issue for us.

2          THE COURT:  Why isn't the best practice then to --

3    again, this goes back to the point of starting this

4    conversation now -- if you identify 15 people from Dubai

5    Islamic Bank that you know you want to depose and ask counsel,

6    will you produce these people, and he'll say yes to this one,

7    no to that one, yes to this one, no to that one.  And then you

8    have a meet-and-confer on the noes, and raise the issue to me

9    at that point rather than legislate, at this point in the

10   protocol.

11          It may be more productive to have a general rule that,

12   generally speaking, former low-level employees are not under

13   the control of the corporation, but that the parties will work

14   cooperatively to identify people to be deposed.

15          Look, this litigation is contentious because of the

16   nature of the claims.  It seems to me that the lawyers can do

17   their part by making this sort of issue not contentious.  My

18   recommendation would be that we settle on some very broad

19   terms, some sort of best practices, but on a case-by-case basis

20   because each will be unique, because it may be that one witness

21   truly is a low-level former janitor who maybe heard something

22   and you want to depose that person, or it may be that the

23   person really still is making the major decisions for the

24   corporation, even though they are not technically not on the

25   letterhead.

1              MR. HAEFELE:  I think one of the circumstances that we

2    can think of actually runs quite similar to what Mr. Cottreau

3    indicated wasn't the circumstance here, but it is that

4    situation where someone was a fairly high-ranking official

5    with one of the organizations and continued to be with the

6    organization for years.  The defendants kept getting extensions

7    to their document production, and toward the end of that

8    process, after years of being in the litigation and after the

9    motions to dismiss were decided, then suddenly they said the

10   official becomes a former official at the entity.  If we had

11   fast-tracked some of the discovery processes, we may have had

12   that person.  We may or may not, depends on whether or not he

13   was released as a result of suddenly becoming available for

14   depositions.

15              What I would want to make sure isn't the circumstance

16   is that the defendants aren't getting the benefit of releasing

17   individuals who are defendants, releasing themselves from the

18   entity so that they can then have the benefit of avoiding

19   discovery on that.

20              THE COURT:  Right.  This seems like a perfect example

21   of a situation where a conversation with counsel may or may not

22   be productive.  Then you can bring specific facts to me and I

23   can make a ruling.  And obviously if I rule that the person

24   should be considered a current employee of the company and

25   should be produced by the company and the company refuses, then

1     you'll make the appropriate application at that time.

2             MR. HAEFELE:  Thank you.

3             THE COURT:  I am going to skip for one moment

4     paragraph 31 and go back to it.  I think that is the big one,

5     although it is little on the protocol.

6             The Friday issue should not be an issue.  If there is

7     a religious barrier to parties appearing at a deposition

8     because it is scheduled for a Friday, then the parties should

9     make changes.  People can take depositions Monday through

10    Thursday, if that is what needs to happen here, but I am not

11    going to let religious observance be sacrificed for

12    depositions.

13            With respect to paragraph 35, which has to do with

14    depositions to preserve testimony, I understand that the

15    plaintiffs' Executive Committee wants to exchange Rule 26

16    disclosures, a proffer of the witness' testimony, and a copy of

17    each of the documents that the party that noticed the

18    preservation deposition anticipates using.

19            I am not going to impose Rule 26(a) disclosure

20    obligations for these witnesses.  It wouldn't otherwise be

21    imposed for the purpose of this particular exercise.  Obviously

22    if the witness is under 26(a) obligations already, then that

23    person should be complying with those obligations, but I am not

24    going to impose them as additional obligations for somebody who

25    the parties seek to preserve the testimony.

H97sINRc

1          I do think it is appropriate that any party that is

2    going to be testifying for preservation purposes should be

3    obligated to proffer the subject matter of the testimony.  But

4    something more than that, I think the general substance of the

5    anticipated testimony is fair and reasonable.  I am considering

6    how this would play out if it was just simply the person

7    testifying at trial, and I think we all agree that trial by

8    ambush is not how we try cases anymore or ever.

9          The cross-examining lawyer, as it were, would

10    certainly know the purpose of the person's testimony and some

11    sense about what the person is going to testify to.  I think a

12    proffer is appropriate in advance of that deposition.

13          With respect to the issue of identifying exhibits, I

14    don't think there is a basis for that obligation.  I'll note

15    that the Defendants' Executive Committee has expressed a

16    willingness to have a mutual exchange of exhibits, and so if

17    the Plaintiffs' Executive Committee thinks that it is

18    sufficiently important that they have the exhibits that the

19    attorney who noticed the deposition intends to use, it should

20    be a mutual exchange.  Otherwise, I am not going to require

21    that there be an exchange of the anticipated exhibits in

22    advance of that deposition.

23          A minor point, paragraph 39, which is letters to me

24    about deposition scheduling.  I think three pages is more than

25    enough.  You identified five pages.

1          Paragraph 73, the duration of depositions, I
2     appreciate that this is a complex litigation and that there is
3     significant interest in the discovery of the truth here both by
4     the interested parties, the plaintiffs, all of the parties in
5     the case, as well as the public, but I don't think there is a
6     need to lift the seven-hour presumptive rule for depositions.
7     The parties have proposed, or I think the Defendants' Executive
8     Committee has proposed, that in certain instances the parties
9     can agree to a deposition that would last ten hours if there is
10     a good faith basis for believing that the deposition was
11     sufficiently complex.  But that should be the exception, not
12     the rule, otherwise, I am imposing a seven-hour presumptive
13     rule per side.
14          I know in other portions of the protocol you discussed
15     having multiple people ask questions even from the same side.
16     That seven hours would apply to each side, meaning the
17     plaintiffs, however that is divided up, would get seven hours,
18     and the defendants, however that is divided up, would get seven
19     hours.
20          With respect to the use of an interpreter, I think an
21     additional half-time for that is adequate.  You will all get
22     excellent interpreters who can do something pretty close to
23     realtime interpretation.  We obviously have interpreters here
24     all the time here, particularly in criminal matters.  They
25     basically work at realtime.  I think an additional half-time is

adequate for any deposition where an interpreter is

contemplated.

          Lastly is paragraph 89, which I think has been

resolved.  This was the attorney consultation provision.  I

understand that the Plaintiffs' Executive Committee ultimately

proposed a more modest amendment, which I think is reasonable,

simply an admonition that the attorney-client communication

should be kept to a minimum and that communication shouldn't be

used to coach the witness or in any way sort of encourage or

shape the witness's testimony.  I think we can all agree to

that.  If we want to add that as part of the protocol, that

seems fine by me.

          So the paragraph that I set aside for further

discussion is paragraph 31.  That is the paragraph that says

that on May 2, which is the date proposed in paragraph six for

the amended witness statements, witness disclosure, that that

would trigger the parties' conversation about numbers of

depositions.  I don't think we need to wait until that point in

time.  I've been gaming out the next couple months on this

case, and I have reversed my initial instinct, which was that

the March 2 deadline was too far in the distant future.  To the

extent I assume that the parties have made Rule 26 disclosures,

those should be done on a rolling basis.  I think it would

probably be helpful to have an additional maybe interim

deadline of the end of the year, December 31, but I appreciate

H97sINRc

1    that there is going to be document production, including some

2    that won't be completed until the end of this month and fully

3    reviewed probably for a another couple months.  I understand

4    that there may be some delays that would make the March 2

5    deadline reasonable.  That deadline stays.  I do think there

6    should be an interim production before then.

7              But what I don't think we need to do is wait until

8    that moment in time to start talking about deposition numbers.

9    I actually have no sense from the parties, nothing has been

10   shared with me to give me a sense of how many depositions we

11   are talking about here.  In actuality, there aren't that many

12   defendants.  I don't know whether or not there has been any

13   discussion about how many witnesses per defendant would be

14   called upon.  I think that that is a conversation that the

15   parties are competent to have at this time, and I don't want to

16   wait until March for you all to start that conversation, only

17   to spend a month having meet-and-confer, only to disagree and

18   then come to me, and now I am not ruling on the number of

19   depositions until June.

20             It seems to me that this is a conversation that, if it

21   hasn't already started happening, it should happen.  I'm happy

22   to hear from the parties about what they think is the best way

23   to proceed, but I am inclined to secure the number of

24   depositions that are going to be authorized under this protocol

25   in the near term, not in March, so that the parties can be in

H97sINRc

 1    a position that they can start taking depositions this spring,

 2    which I think is a reasonable position for the parties to be

 3    in.

 4         Maybe I'll start with the Plaintiffs' Executive

 5    Committee.  Have you started either an internal conversation or

 6    a bilateral conversation about the number of depositions you

 7    are anticipating?

 8         MR. CARTER:  Your Honor, I think the short answer is

 9    yes.  We obviously have a fairly good sense at least certain

10    of the witnesses we want to depose.  Part of the reason for

11    deferring a very specific conversation about the universe was

12    that we did have these document productions coming in,

13    identifying new witnesses that may affect who we choose to

14    depose.  We may find someone who can answer a universe of

15    questions that alleviates the need for three other depositions.

16    We were focused on that.

17         There are certainly a number of depositions that we

18    can say right now, you know, these are folks that we want to

19    depose and intend to depose.  We have a bit of a reservation

20    doing the depositions before the documents come in because of

21    the potential that new things come up that require us to go

22    back again and revisit the same deposition.  But we could, on a

23    rolling basis, identify witnesses for the defendants.

24         THE COURT:  I'll tell you how I handle complex cases.

25    Typically I will hear from the parties with a magic number; I

H97sINRc

think I need to take this many depositions from this party and

this many from this party.  And maybe the parties reach

agreement.  Hopefully they do.  Sometimes they come to me and

say, on the pure number, we can't reach agreement.

          At that point, what I have done is have the parties

justify why they need to take, I'll keep simple, ten

depositions.  And they'll identify the ten witnesses they think

are critical, and they will give me basically why they think

those witnesses are critical.  And I'll hear from the other

side as to why they are duplicative or they don't have relative

information.  It would be a waste of everybody's time.

          Then often what I will do is simply rule that instead

of ten, you get eight, and you can figure it out then.  But I

think that process needs to start now.  Even if we don't start

identifying specific individuals, I think we can start getting

a sense of how many we think is reasonable.

          To the point about issuing a ruling on the protocol, I

am not inclined at this point to sign off on this protocol.  I

think I have given you some instructions on ways to go back to

it.  This, I think, is a great foundation, but what I would

like to do, because I think the most important thing in this

protocol is how many depositions people are going to take and

some deadlines as to when those are going to happen, what I

would like to do is have the parties go back and start having

an internal conversation, and then a bilateral conversation

1    about the number of depositions, and when they think those

2    depositions can reasonably start.  It seems to me, based on my

3    gaming out the system and the motions to compel that I

4    anticipate and the responses to those motions to compel, that

5    depositions should be able to start sometime in April or May.

6    I think that that is reasonable.

7            And so what I would like to do now is start having you

8    do the hard work of thinking about who do you actually want to

9    depose.  How many people is it?  Is it 100?  Is it 50?  Is it

10   15?  I don't know.  Having those conversations with everybody

11   and then presenting either a joint proposal to me or competing

12   views, and then we can start talking about how to shave the

13   number to make it more equitable.

14           I can't tell, Mr. Carter, if you're waiting to say

15   something.

16           MR. CARTER:  Mr. Haefele is writing me a note.

17           THE COURT:  OK.

18           MR. CARTER:  Your Honor, I think we can have that

19   conversation and we can advance the ball in terms of

20   identifying who, and some of that is going to be impacted about

21   who is available and the circumstances under which they can be

22   made available.

23           Yes, we can start that conversation for sure.

24           THE COURT:  I am going to set a separate deadline for

25   us to revisit this issue so that we can keep this conversation

H97sINRc

1    moving.

2            The last set of discovery, so what you're still

3    waiting on is the WAMY discovery, and that should be provided

4    by the end of September.  I understand that there may be

5    motions to compel, there may be gaps.  You'll get at least

6    their first batch or their presumptive completion, I should

7    say, by the end of September.

8            What if we set November 3 as a deadline for a letter

9    to be submitted with the parties' proposal.  Maybe what we

10   should get then is the revised protocol based on my rulings

11   today, and it should include in that revised protocol, the

12   parties' proposal with respect to the number of depositions

13   that are going to be taken, and a reasonable date to start

14   those depositions and a reasonable date to conclude those

15   depositions.

16           I am not foolish enough to think that you all are

17   going to agree on those pieces of information, so you can do

18   the same thing that you did with respect to the initial

19   protocol with competing arguments as to why one position or

20   another is appropriate.

21           MR. CARTER:  Your Honor, can I just touch upon the

22   November 3 date?

23           THE COURT:  Sure.

24           MR. CARTER:  The oppositions to Saudi Arabia's renewed

25   motion to dismiss are due on November 2.

H97sINRc

1              THE COURT:  You don't want this due back to back?

2              MR. CARTER:  I have a feeling we're all going to be --

3              THE COURT:  Drunk probably.

4              MR. CARTER:  -- dealing with a deeper issue.

5              I didn't say it, your Honor.  If we can maybe move

6     that date just a bit?

7              THE COURT:  What if I give you to November 15?

8              MR. CARTER:  That would be fine, your Honor.  Thank

9     you.

10             THE COURT:  Again, the number of depositions, to the

11    extent you all know better than I do if there is going to be

12    disputes about specific witnesses that are going to be called

13    upon, I'm happy to hear about that on the 15th as well, if you

14    think that is ripe for resolution.

15             That issue, I feel like, we can set aside if we need

16    to, but I would like to start getting some limits on the number

17    of depositions.  So what I do want to at least develop is the

18    number of depositions that each side is going to be entitled

19    to, when those depositions are going to begin, when those

20    depositions are going to end.  And I can get a revised protocol

21    based on rulings today with a goal of getting a protocol so

22    ordered on the docket by the end of the year that has firm

23    dates and real expectations for the parties to move forward

24    with depositions.  I think that that is reasonable.

25             I think that that addresses everything.  The other

1    housekeeping thing I just want to reference again, I won't

2    quote Mark Twain, but I think you all can edit your letters

3    more.  My individual rules permit only five-page letters, and

4    there is really no reason for these letters to be longer than

5    five pages.  I will remind you of my individual rules.  If

6    there is a reason why you need to seek relief from that

7    limitation, you may do so, but five pages is really enough for

8    you to get your thoughts to me.

9            This is a case where I am probably going to be having

10   plenty of conferences.  I'll always give you the opportunity to

11   be heard.  If you feel like you're not able to fully express

12   yourselves in your letter, I'll give you an opportunity to do

13   so orally.  For my own docket management, five pages is

14   adequate from everybody.

15           MR. CARTER:  Your Honor, just as a point of

16   clarification, a lot of the motions to compel have been done

17   via letter, and we had, I think, some page limits for motions

18   to compel by letter.

19           Would that apply as well to those?

20           THE COURT:  I think what I was going to do was issue

21   an order with some dates, and I was going to incorporate in

22   that sort of a little bit of instructions about page limits and

23   whether it should be by letter motion or letter motion.

24           I know Judge Maas preferred to have everything by

25   letter motion.  I actually may prefer it by proper motion, so I

H97sINRc

1    might have it come more as a brief than a letter.

2              MR. CARTER:  Thank you, your Honor.

3              THE COURT:  But I'll put that in the order.

4              Anything further from any side?

5              Great.  I will hear from you all in the coming weeks

6    and months.

7              Be well.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25