**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :

                                  :      **PLAINTIFFS' OBJECTIONS**
                                  :      **TO MAGISTRATE**
                                  :      **JUDGE'S *HOGLAN IV***
                                  :      **REPORT AND**
                                  :      **RECOMMENDATION**
                                  :      **ISSUED ON AUGUST 8, 2017**
                                  :
                                  :      1:03 MDL 1570 (GBD) (SN)
-----------------------------------------------------------------X

**This Document Relates to**
**_Hoglan, et al. v. Iran, et al._**
**1:11-cv-07550 (GBD) (SN)**

       Pursuant to Federal Rule of Civil Procedure 72(b), 28 U.S.C. §636(b)(1)(C), and Local

Rule 72.1, certain of the *Hoglan* Plaintiffs, through counsel, hereby respectfully object to the

Magistrate Judge Netburn's fourth Report and Recommendation in this matter ("*Hoglan IV*").[1]

In *Hoglan IV*, the Magistrate Judge recommends against any solatium award for relatives of *9/11*

decedents that do not fit into a fairly rigid formula.  Specifically, the Magistrate Judge only

recommends awarding judgments to the estates of *9/11* victims, and their spouses, children,

siblings and parents.

       The Magistrate Judge recognizes that "every plaintiff is entitled to have their damages

claim fully evaluated by the Court."[2]  The Magistrate Judge continues: "rather than apply 'a rigid

rule or formulaic analysis,' [the Court] must 'embrace a claim-by-claim, family-by-family, fact-

driven analysis.'"[3]  Plaintiffs agree that Magistrate Judge Netburn goes to great lengths to - in

---

[1] Magistrate Judge Netburn's fourth Report and Recommendation ("*Hoglan IV*") (MDL Doc. No. 3676), was issued on August 8, 2017.

[2] Id., p. 6.

[3] Id., *citing Hoglan* Plaintiffs' Memorandum of Law in Support of Reconsideration of Claims of Functional Equivalents of Immediate Family Members brief at MDL Doc. No. 3551, dated May 5, 2017, at 2.

her words: "apply objective factors of general applicability to the unique circumstances of each plaintiff seeking relief."[4]  However, the *Hoglan* Plaintiffs assert that the factors applied in the *Hoglan IV* Report and Recommendation are too rigid and too formulaic and do not take into account some functional equivalents of very close family members and the evolving concept of "family" (Section II, *infra*).  Further, the factors applied in the *Hoglan IV* Report and Recommendation do not fully take into account the extraordinary and unprecedented nature of the instant underlying tort; the September 11, 2001 terrorist attacks on the United States of America (Section III, *infra*).

Magistrate Judge Netburn did award some "half-awards" to some *Hoglan* Plaintiffs who were not *9/11* estates, or spouses, siblings, children or parents thereof, because those *Hoglan* Plaintiffs evidenced some extraordinary circumstances.[5]  However, the *Hoglan* Plaintiffs assert that extraordinary circumstances of *9/11* and a more flexible interpretation of the terms "immediate family member" and "functional equivalent" warrant some type of awards, albeit perhaps partial, to additional *Hoglan* Plaintiffs.

I.    **Facts**

The general relevant facts are set forth in detail in the Plaintiffs' Damages Inquest Memorandum (MDL Doc. 3194), Part VIII and the exhibits cited therein, including detailed damage declarations from every *Hoglan* Plaintiff;[6] the letter brief filed in supplementation thereof on April 1, 2016 (MDL Doc. 3249) and all exhibits cited therein; Plaintiffs' Objections to Magistrate Judge Netburn's first and second Reports and Recommendations, dated October 12,

---

[4] Id., p 6.

[5] See "*Hoglan II*" Report and Recommendation, MDL Doc. No. 3363, dated October 14, 2016, pp. 22-24.

[6] Paper copies of the previously-submitted, individual damage declarations of each *Hoglan* Plaintiffs whose awards were denied in *Hoglan IV* are being provided with the courtesy copy of these Objections being sent to Judge Daniels' chambers.  These damage declarations were previously provided on CD-ROM and filed confidentially on March 31, 2016 (*Hoglan* Doc. No. 161), pursuant to a *File Under Seal* Order at *Hoglan* Doc. No. 160.

2016 and October 14, 2016 (Reports are *Hoglan* Doc.s No. 171 and 172; Plaintiffs' first

Objections are *Hoglan* Doc. No. 177 (dated Oct. 31, 2016)); and, Plaintiffs' Memorandum of

Law in Support of Reconsideration of Claims of Functional Equivalents of Immediate Family

Members brief at MDL Doc. No. 3551, dated May 5, 2017.

Specific facts relevant to those *Hoglan* Plaintiffs who were denied awards are discussed

in Section IV, *infra*.

**II.A.    Interpretation of "Immediate Family" Should Be More Inclusive**

The Magistrate Judge correctly notes in *Hoglan IV* that the terms and definitions used in

the Foreign Sovereign Immunities Act (the "FSIA")[7] are not static - but rather are dynamic and

are defined and re-defined by the ever-evolving standards of American common law:

> "Although [terrorism] cases arise under a federal cause of action,
> 28 U.S.C. § 1605A(c), *the common law of intentional infliction of
> emotional distress governs questions of who is entitled to recover
> damages.*  As such, courts have looked at "*state decisional law*,
> *legal treatises*, or *the Restatements* in order to find and apply what
> are generally considered to be the well-established standards of
> state common law…" Id. at 24.  In *Hoglan II*, the Court found that
> virtually all courts considering the availability of solatium damages
> under the FSIA relied on the definitions of RESTATEMENT
> (SECOND) OF TORTS § 46 as a proxy for state common law."[8]

The Magistrate Judge continues the *Hoglan IV* Report and Recommendation quoting

directly from the RESTATEMENT (SECOND) OF TORTS § 46, which states in relevant part:

> "(2) Where such conduct is directed at a third person, the actor is
> subject to liability if he intentionally… causes severe emotional
> distress

---

[7] 28 U.S.C. § 1608, *et seq*.
[8] *Hoglan IV* Report and Recommendation, MDL Doc. No. 3676, p. 4 (*emphases added*).

> (a) to a *member* of such person's *immediate family* who is present at the time, whether or not such distress results in bodily harm…"[9]

The term "immediate family member" is not defined in either the RESTATEMENT (SECOND) OF TORTS, or the RESTATEMENT (THIRD) OF TORTS.  Therefore, per the RESTATEMENT (SECOND) OF TORTS § 46 approach, the standards of current common law, as evidenced in recent state decisional law, treatises, statutes, regulations and guidelines, must be considered when determining immediate family members and functional equivalency thereof for solatium recovery eligibility under the FSIA.  The instant case certainly warrants the utmost expanded and flexible interpretations of immediate family members and their functional equivalents.

## II.B.   Evolution of Family in American Tort Law

The legal definition of family has evolved and expanded as American tort law has evolved with our changing society.  Not that long ago, the very concept of solatium damages to any family member was not recognized as a stand-alone tort claim.[10]  The development and expansion of the tort of intentional infliction of emotional distress ("IIED") has corresponded to a broader-based sensitivity to emotional security in American tort law.  Expansion of the functional equivalency to family members likewise corresponds to similar broader-based sensitivities.

It has been noted that "the twentieth century was in fact a veritable breeding ground for the development of new categories of tort recovery for intangible loss, and there is no sign of

---

[9] Id., p. 4 (*emphases added*).  The § (2)(a) "*present at the time*" requirement has invariably been waived in FSIA terrorism cases.  *See* Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 115 *n*.12 (D.D.C. 2005); Jenco v. Islamic Republic of Iran, 154 F. Supp. 2d 27, 35 (D.D.C. 2001).

[10] *See generally,* Rabin, R., Pain and Suffering and Beyond: Some Thoughts on Recovery for Intangible Loss, 55 DePaul L. Rev. 359 (Winter 2006), pp. 362-370.  Compensation for intentional outrageous behavior became accepted only with the adoption in 1948 of Section 46 in the RESTATEMENT (SECOND) OF TORTS, which introduced the intentionally inflicted emotional distress doctrine.

retreat as a new century unfolds."[11]  Intangible loss torts such as loss of consortium, loss of companionship and counsel, invasion of privacy, and intrusion on privacy, have all greatly expanded their scope in recent decades.[12]  "IIED is a particularly interesting tort because it mirrors the evolving social attitudes about the extent to which one is expected to have a 'thick skin' in dealing with the occasional insults and indignities that are a part of everyday life."[13]  This case is certainly not about increasing sensitivities because the underlying act is so egregious.  Any recognition of the injuries involved points directly to the propriety of the broadest view of IIED.  Thus, as other aspects of American tort law have evolved and expanded with the sensibilities of American society, the definition of "immediate family member" under the FSIA should evolve to adequately redress the egregious acts of *9/11*.

**II.C.**   **The Trump Administration's "Muslim Travel Bans"**

As recently as earlier this month, President Donald Trump's numerous "Muslim travel ban" attempts have brought the definition of "close family member" into the national spotlight. On September 7, 2017, the U.S. Court of Appeals for the Ninth Circuit affirmed the U.S. District Court in Hawaii's modified preliminary injunction.[14]  Noting "the Supreme Court deployed fundamental equitable considerations that have guided American law for centuries," the Ninth Circuit Court of Appeals recognized the changing nature of families and expanded prior familial interpretations.[15]  The U.S. District Court in Hawaii had previously concluded that the U.S. Government defined "close familial relationships" too narrowly by restricting it to only: "parents, parents-in-law, spouses, fiancés, children, adult sons and daughters, sons- and

---

[11]  Id., p. 368.

[12]  Id., pp. 362-370.

[13]  Id., p. 369, *fn.* 40.

[14]  State of Hawaii and Elshikh v. Trump, *et al.*, 17-16426 (U.S. Ct. App. Ninth Cir., Sept. 7, 2017).

[15]  Id., p. *8.

daughters-in-law, siblings (half and whole relationships), and step relationships."[16]  The Hawaii District Court modified the Trump Administration's "travel ban" to also no longer prohibit grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins of persons in the United States.[17]

This month's opinion by the U.S. Court of Appeals for the Ninth Circuit is a clear summary of the history and evolution of the term "close family member" and it offers a succinct statement of current American common law regarding familial relations, and as such, is useful in informing an analysis of this issue under the FSIA:

> [E]ven if the INA may inform the construction of "close familial relationship[s]," the Government's decision to rely on the cited specific provisions of the INA is troubling because other provisions of the INA (and other immigration laws) offer broader definitions.  In the Family Sponsor Immigration Act of 2002, for example, Congress amended the INA to provide that when the sponsor of an alien's immigrant visa petition has died, another member of the alien's "close family" - defined to include family members such as "sister-in-law, brother-in-law, grandparent, or grandchild" - could sponsor the alien for admission.  In other words, the INA explicitly refers to sisters-in-law, brothers-in-law, grandparents, and grandchildren as close family.  The Government's "cherry-picked" INA provisions recognize immediate family relationships as those between parents, spouses, children, and siblings, yet other provisions of the INA and other immigration laws offer broader definitions for close family.  As Plaintiffs further point out, other immigration laws enable an individual to seek admission on behalf of aunts, uncles, and close blood relatives.
>
> > *fn.* 7: For example, Plaintiffs cite an immigration law that permits a juvenile alien to be released from detention to the custody of parents, legal guardians, or "other close blood relatives."  Such relatives include "brother, sister, aunt, uncle, [and] grandparent."  Other immigration laws enable an individual to seek admission on behalf of grandchildren, nieces, or nephews, to apply for asylum if a "grandparent, grandchild, aunt, uncle, niece, or nephew" resides in the United States; to apply for

---

[16] Hawaii v. Trump, _ F. Supp. 3d _, No. CV 17-00050 DKW-KSC, 2017 WL 2989048, at *1 (D. Haw., July 13, 2017), p. *5-6.

[17] Id. at *6, *10.

naturalization on behalf of a grandchild; or *to qualify as a special immigrant if he or she is the "grandparent" of a child orphaned by the September 11, 2001 attacks, USA PATRIOT Act of 2001.* The Board of Immigration Appeals has also held that an alien has "close family ties in the United States" for purposes of obtaining cancellation of removal or waiver of inadmissibility if a sibling-in-law or grandchild lives here.

The Government offers no explanation as to why it relied on its selected provisions of the INA, while ignoring other provisions of the same statute as well as other immigration laws. The INA was implemented with "the underlying intention of… preservation of the family unit." The Government's artificially narrow interpretation of close familial relationships directly contradicts this intention…

We find further support in other Supreme Court decisions, albeit that arise in different contexts from immigration law, for this broad definition of "close familial relationship." These cases show how the denial of entry can cause concrete hardship to family members in the United States. In Moore v. City of East Cleveland, the Court invalidated as unconstitutional a housing ordinance that limited occupancy of a dwelling unit to members of a nuclear family. 431 U.S. at 495-96, 506. *The Court discussed "a larger conception of [] family," derived from "the accumulated wisdom of civilization, gained over the centuries and honored throughout our history," that was worthy of constitutional protection.* Id. at 505. To that end, the Court recognized and protected the tradition of "close relatives" as "uncles, aunts, cousins, and especially grandparents" - "sharing a household along with parents and children." Id. at 504-05. Other cases have likewise addressed extended family relationships. *See* Troxel v. Granville, 530 U.S. 57, 64-65 (2000) (discussing the "important role" grandparents often play); Tooahnippah v. Hickel, 397 U.S. 598, 608 (1970) (noting the "close and sustained familial relationship" between a testator and his niece). *In these cases, the Court described the importance of close relatives such as grandparents, aunts, uncles, nieces, nephews, and cousins.*[18]

The Ninth Circuit's analysis and discussion of the current state of American common law

regarding family relationships  - especially with direct reference to and in the context of the 9/11

attacks - demonstrates the shift and evolution toward greater functional equivalency and away

---

[18] Hawaii v. Trump, _ F. Supp. 3d _, No. CV 17-00050 DKW-KSC, 2017 WL 2989048, at *1 (D. Haw., July 13, 2017) (*emphases added; some internal citations ommitted*).

from the more simplistic and rigid familial relationship formulas implemented in earlier decades of tort law.

**II.D.**   **Recent Examples of "Immediate Family Member" Broadly Interpreted**

There are many examples from American courts just in 2016 and 2017 of the term "immediate family member" being broadly interpreted or specifically being defined to include more categories of relatives than were deemed eligible to recover under the FSIA by the Magistrate Judge in the *Hoglan IV* Report and Recommendation.  The *Hoglan* Plaintiffs assert that the following examples evidence the law's evolving and expanding definitions of whom ought to be considered an immediate family member:

U.S. v. Moreland, 207 F. Supp. 3d 1222 (Dist. Court, N.D. Oklahoma, September 14, 2016) ("immediate family members" described as additional cyber-stalking victims in indictment was not an "indefinite, imprecise term" but rather is expressly stated to be "as defined in Section 115," and thus includes a "spouse, parent, brother or sister, child" or "any other person living in his household and related to him by blood or marriage."  18 U.S.C. § 115(c)(2), 2261A(1)(A)(ii));

Stephens v. Uranium Enery Corp., Civil Action No. H-15-1862 (United States District Court, S.D. Texas, Houston Division, July 15, 2016) (discussing S.E.C.'s 'Regulation S-K' which requires disclosure of any 'related-party transactions' and defines "immediate family member" of director, executive officer or nominee for director as "any child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of such director, executive officer or nominee for director, and any person (other than a tenant or employee) sharing the household of such director, executive officer or nominee for director");

Coutard v. Municipal Credit Union, Docket No. 15-1113 (United States Court of Appeals, Second Circuit, February 9, 2017) (Second Circuit vacated and remanded Family and Medical Leave Act action, holding grandfather is not automatically excluded from "immediate family member" protections of Act);

The People v. Thadius Landel Williams, Jr., F073066 (Cal. Ct. App., Jun. 20, 2017) (conditions of probation that required no contact with the victim's family members was not unconstitutionally vague and the term "immediate family" is defined under Section 646.9 of the California Penal Code, subdivision (l) which provides: "For purposes of this section, 'immediate family' means any

spouse, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household." (A second-degree relative is someone who shares 25% of a person's genes; it includes uncles, aunts, nephews, nieces, grandparents, grandchildren, half-siblings, and double-cousins));

State of Arizona v. J. Whipple, No. 1 CA-CR 14-0233 PRPC (Court of Appeals of Arizona, Division One, April 12, 2016) (Grandparents are considered "immediate family members" pursuant to Arizona law that allows "immediate family members" to give victim impact statements at criminal sentencing hearings);

Simon v. Launch Technical Workforce Solutions, LLC, and Dept. of Employ. and Econ. Devel., No. A16-1307 (Court of Appeals of Minnesota, March 6, 2017) (while rejecting "fiancée" as category of "immediate family members," unemployment law judge nonetheless defined "immediate family members" as "an individual's spouse, parent, stepparent, grandparent, son or daughter, stepson or stepdaughter, or grandson or granddaughter" pursuant to Minnesota Stat. § 268.035, subd. 19(a) (2016));

Aiono v. Utah Dept. of Corrections, No. 20160030-CA (Court of Appeals of Utah, August 10, 2017) (state correctional officer was not in violation because policy did not specifically prohibit contact with "immediate family members" although it does cite that the Utah Dept. of Corrections' Career Service Review Office considers that: "[i]mmediate family members includes cousins");

Fountain v. Michigan Dept. of Corrections, No. 325699 (Court of Appeals of Michigan, May 17, 2016) (state corrections officer required to notify warden if any immediate family member is incarcerated in same facility and immediate family is defined as: "spouse, parent(s), children or step-children, brother(s), sister(s), parent(s)-in-law, grandparent(s), grandchild(ren) and any person(s) whose financial or physical care the employee is principally responsible [for]...");

The People v. Francisco Sanchez, Jr., No. B271011 (Court of Appeals of California, Second District, Division One, May 4, 2017) (unmarried long-time girlfriend qualified as "immediate family" pursuant to criminal threat statute that stated "the victim of a criminal threat may be anyone whose immediate family is the target of the threatened violence"; appeals court noted that the unmarried girlfriend "plainly falls under the statutory definition of 'immediate family' because she had resided in the household for three to four years preceding these events"); and,

611 East 179th Street Realty Corp. v. Gonzalez, 2017 NY Slip Op. 50792(U), 76688/2016) (Civil Court of the City of New York, Bronx County,

June 12, 2017 (confirming a granddaughter was an "immediate family member" for purposes of New York tenancy law).

Additional recent statutory and regulatory examples of the specific term "immediate family member" being broadly interpreted or specifically being expansively defined include:

• Section 1128(j)(1) of the Social Security Act and the regulations at 42 CFR 1001.1001(a)(2) define the term "immediate family member" to mean the person's:

> "Husband or wife;
> Natural or adoptive parent, child, or sibling;
> Stepparent, stepchild, stepbrother or stepsister;
> Father-in-law, mother-in-law, daughter-in-law, son-in-law, brother-in-law, or sister- in-law;
> Grandparent or grandchild; and,
> Spouse of a grandparent or grandchild."

• Pursuant to 18 U.S. Code § 115 - Influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member, "immediate family member" of an individual means: "(A) his spouse, parent, brother or sister, child or person to whom he stands *in loco parentis*; or (B) any other person living in his household and related to him by blood or marriage."

• Under 18 U.S. Code § 2261A - Stalking: "Whoever (1) travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that:

> (A) places that person in reasonable fear of the death of, or serious bodily injury to:
> (i) that person;
> (ii) an immediate family member (as defined in Section 115 [18 U.S.C. § 115(c)(2), 2261A(1)(A)(ii), *supra*]) of that person;
> *****
> shall be punished as provided in section 2261(b) of this title."

• Per the California Department of Industrial Relations Division of Labor Standards Enforcement Code §13692, "immediate family member" is defined as:

"spouse, domestic partner, cohabitant, child, stepchild, grandchild, parent, stepparent, mother-in-law, father-in-law, son-in-law, daughter-in-law, grandparent, great grandparent, brother, sister, half-brother, half-sister, stepsibling, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, or first cousin (that is, a child of an aunt or uncle)." *See also*, Part (d) of California Labor Code, Section 2066.

## III.    The September 11, 2001 Terrorist Attacks Deserve Expansive Interpretration of Torts Law Under the FSIA

As correctly pointed out in *Hoglan IV* Report and Recommendation:

"The tragic loss of thousands of innocent lives in the attacks of September 11, 2001, *shook our nation like no other event in our recent history*.  As the submissions that the Court has reviewed in this process amply demonstrate, *the loss suffered went far beyond those who perished in the World Trade Center and the Pentagon*.  The people who died on that day left behind loving parents, spouses and partners, sons and daughters, brothers and sisters."[19]

Of course, in addition to loving parents, spouses and partners, sons and daughters, brothers and sisters, the Americans who were murdered on September 11, 2001 left behind other very close family members, many of whom were the functional equivalent of even greater traditionally-recognized relationships.

Courts have uniformly held that all terrorist attacks by their very inherent nature are directed not only at the victims present but also at the victims' entire families.[20]  Further, courts have held uniformly that, in FSIA terrorism cases, if the conduct is sufficiently outrageous and intended to inflict severe emotional harm upon a person which is not present, "no essential reason of logic or policy prevents liability."[21]

The September 11, 2001 terrorist murders of almost 3,000 Americans warrants the most expansive interpretation of law at every possible point.

---

[19] *Hoglan* Fourth Report and Recommendation (MDL Doc. No. 3676), dated August 8, 2017, p. 2 (*emphases added*).

[20] *See* Salazar v. Iran, *supra*, 370 F. Supp. 2d at 115 *n*. 12.

[21] Jenco v. Islamic Republic of Iran, *supra*, 154 F. Supp. 2d at 35.

Additionally, the rationale often given to avoid inclusion of otherwise deserving and grieving relatives is because of "crushing liability" considerations.  This consideration does not apply to 9/11 terrorism litigation.  The crushing liability concern could involve a relatively contained number of claims, possibly from a single isolated incident but of enormous aggregate magnitude.[22]  However, crushing liability is irrelevant in this case because of the nature of the tort, the nature of the sovereign defendants and the size of the defendants' agencies and instrumentalities.

## IV.   _Hoglan_ **Plaintiffs Who Were Denied Recovery**

Several _Hoglan_ Plaintiffs were deemed ineligible to recover in the _Hoglan IV_ Report and Recommendation exclusively because they do not fit neatly into the nuclear family framework with slight expansions implemented by the Magistrate Judge.  The _Hoglan_ Plaintiffs hereby respectfully object and request that every Plaintiff has his or her damages claims fully evaluated by the Court under rubric of a fact-driven analysis of what it means to be the functional equivalent of an immediate family member.

Those individual _Hoglan_ Plaintiffs who were denied any solatium award are:[23]

## A.   **Anthony Dorf**

_Hoglan_ Plaintiff Anthony Dorf is the nephew of _9/11_ decedent Stephen Dorf.  Under the Magistrate Judge's fact-driven, case-by-case analysis, Anthony Dorf should be eligible for FSIA solatium damages, particularly because of the long cohabitation at a tender age and the strong financial dependency involved.  Anthony Dorf should be eligible for solatium damages as the

---

[22]  R. Rabin, Emotional Distress in Tort Law: Themes of Constraint, 1198 Wake Forest L. Rev. 1198 (2009); _see also_, D. Givelber, The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct, 82 Colum. L. Rev. 42 (1982).

[23]  These _Hoglan_ Plaintiffs are arranged in the same order as in the _Hoglan IV_ Report and Recommendation, MDL Doc. No. 3676, pp. 14-22.

functional equivalent of a child of the *9/11* decedent.  The facts in Anthony Dorf's declaration submitted in this matter evidence the extraordinary relationship between Anthony Dorf and decedent Stephen Dorf.  As acknowledged in *Hoglan IV*, "Anthony Dorf never knew his biological father and lived with his mother and her brother Stephen Dorf from his birth in August 1986 until September 11, 2001."  MDL Doc. No. 3552, Dorf Supp'l Decl. at ¶ 2; *Hoglan IV* at 14.  Anthony declares that Stephen Dorf was his primary male role model and "the father [he] never had," and noted that his uncle considered formally adopting him and named him as a beneficiary on a small life insurance policy.  MDL Doc. No. 3552, Dorf Supp'l Decl. at ¶¶ 2-3; *Hoglan IV* at 14.  The Magistrate Judge even agreed that "that Stephen Dorf was a father figure in his nephew [Anthony Dorf]'s life" and that Anthony cohabitated extensively with the *9/11* decedent.  *Hoglan IV*, MDL Doc. No. 3676, at 14.  Plaintiffs assert that a review of Mr. Anthony Dorf's declaration will attest to the extraordinary relationship that warrants Mr. Anthony Dorf be eligible for solatium damages in this matter as the functional equivalent of a child of a *9/11* decedent.

**B.**   **Jennie Mandelino, James Mandelino, Mary Ann Pino, and Michael Mandelino**

Plaintiffs Jennie Mandelino, James Mandelino, Mary Ann Pino, and Michael Mandelino ("the Mandelinos") are the surviving brothers-in-law and sisters-in-law of *9/11* decedent Joseph D. Mistrulli.  MDL Doc. No. 3557, Philomena Mistrulli Decl. at ¶ 6.  Decedent Joseph Mistrulli and Philomena Mistrulli lived with Jennie, James, and Michael Mandelino and Mary Ann Pino from 1980 until the early 1990s.  All four of these *Hoglan* Plaintiffs were children or teenagers the whole time they live with the *9/11* decedent.  MDL Doc. No. 3554, James Mandelino Decl. at ¶¶ 7-8.  The declarations by these four survivors detail that Joseph Mistrulli was fully integrated into the family after his marriage to Philomena, participated in family celebrations and served as

a role model for the younger family members.  In *Hoglan IV*, the Magistrate Judge noted "[t]he Mandelinos have certainly demonstrated a long period of tight bonds and love with decedent Joseph Mistrulli - an extraordinarily close relationship that persisted over time." *Hoglan IV*, MDL Doc. No. 3676, at 15-16.  The Magistrate Judge denied any solatium recovery sought to the Mandelinos and Mary Ann Pino because, "given that the age of majority is 18, a simple extension of the Court's analysis as to stepsiblings indicates that, even under the unusual circumstances of extensive cohabitation presented in this case, a brother-in-law or sister-in-law can *never* recover solatium damages." Id. at 16 (*emphasis added*).  Plaintiffs assert that such an absolute prohibition of against recovering FSIA solatium damages for siblings-in-law abrogates the Court's obligation to consider extraordinary circumstance and does not account for the subtle yet inevitable changes in American common law that governs FSIA eligibility.  Therefore, the *Hoglan* Plaintiffs contend that the Mandelinos and Mary Ann Pino should be eligible to recover solatium damages in this matter.

## C.     Vaughn Hoglan, Linden Hoagland, Lee N. Hoglan, Kathleen B. Hoglan, Candyce Hoglan, Michelle Arthurs, Kelly Arthurs and Estate of Herbert K. Hoglan

These *Hoglan* Plaintiffs are the grandfather, stepmother, stepsister, uncles, and aunts of *9/11* decedent Mark Bingham.  Mark Bingham's parents, Gerald Bingham and Alice Hoagland, divorced a few months after his birth, and Alice Hoagland moved in with her father Herbert Hoglan, her mother, and her siblings. MDL Doc. No. 3560, Decl. of Alice Hoagland at ¶ 6. Herbert Hoglan and his wife Betty took care of *9/11* decedent Mark Bingham when he was a child and were the "sole caregivers" for Mark over half a decade. Id. at ¶¶ 6, 8.  As correctly noted in *Hoglan IV*:

> Ms. Hoagland's brothers Lee N. Hoglan, Linden Hoagland and Vaughan Hoglan and younger sister Candyce Hoglan also lived in the family home at that time as teenagers, served as role models and "big brothers" and "big sisters" to the *9/11* decedent and they maintained close ties with Mark Bingham throughout his adult life.  Kathleen B. Hoglan is Vaughn Hoglan's wife, and met Mark Bingham in 1992.

MDL Doc. No. 3676 at 18.

Utilizing an appropriate and up-to-date definition of "immediate family members" would result in Vaughn Hoglan, Linden Hoagland, Lee N. Hoglan, Kathleen B. Hoglan, Candyce Hoglan, Michelle Arthurs, Kelly Arthurs and the Estate of Herbert K. Hoglan being deemed eligible for some recovery under the FSIA.  Grandparents, step-parents, step-sister, uncles, and aunts should all be considered functional equivalents of immediate family members, as noted in numerous citations in Section II.D., *supra*, and given the extraordinary and exclusive circumstances inherent in the *9/11* litigation, as discussed in Section III, *supra*.

## D.    <u>Carole Grazioso</u>

Carole Grazioso was the step-mother of <u>two</u> *9/11* decedents, John Grazioso and Timmy Grazioso.  Carole married John and Tim's father, Hank Grazioso, when the decedents were six and seven years old, respectively.  Carole Grazioso Decl. ¶¶ 4, 8; *see also* MDL Doc. No. 3566, Grazioso Decl. at ¶ 1.  Carole cared for the two boys in her role as their step-mother and, as such, should be eligible to recover solatium damages as the functional equivalent of an immediate family menber.  Regardless, the very extraordinary circumstance that Carole Grazioso lost two step-children on September 11th should elevate her to damages-eligible status in this action.

E.   <u>**Karen Moreno**</u>

Plaintiff Karen Moreno was the step-mother of *9/11* decedent Yvette Nichole Moreno.
Karen Moreno was married to *9/11* decedent Yvette Moreno's father.  Karen Moreno had known
the *9/11* decedent Yvette Nichole Moreno since Yvette was three-years old.  Karen Moreno
should also be eligible to recover solatium damages under an expansive interpretation of
functional equivalent to an immediate family member, which would certainly include step-
parents.

F.   <u>**Estate of Paul Scalogna**</u>

Plaintiff Paul Scalogna was the grandfather of *9/11* decedent Brian Nunez.  Brian
Nunez's biological father was absent in his life, and Mr. Scalogna provided support and guidance
as a "father figure" in his early life.  Moreover, *9/11* decedent Brian Nunez lived with his
grandfather, Paul Scalogna, both as an infant and for 3 years in his late-teens and early-twenties.
Decl. of Joanne Lovett on Behalf of Paul Scalogna ¶¶ 4, 12–13, 16.  Mr. Scalogna should be
eligible for FSIA solatium damages under a broad, flexible interpretation of functional
equivalent to an immediate family member.

G.   <u>**Donna Corbett-Moran**</u>

Plaintiff Donna Corbett-Moran was *9/11* decedent Brian Nunez's long-time girlfriend and
was the functional equivalent of Brian's spouse.  Donna Corbett-Moran and Brian Nunez had
been together as a couple for many years and conceived a child together (although it was
miscarried).  As Donna's declaration in this matter attests, they had planned to be married.
Donna Corbett-Moran be considered Brian's fiancée and, as such, should recover solatium
damages in this tragedy as the functional equivalent of Brian Nunez's spouse.

**H.**   **Diane Ognibene**

Plaintiff Diane Ognibene was *9/11* decedent Philip Ognibene's step-mother who cohabited with *9/11* decedent Philip Ognibene for about 10 years.  Diane Ognibene married *9/11* decedent Philip Ognibene's father, Vincent Ognibene, when the decedent was 18 years old. Decl. of Diane Ognibene ¶ 4.  Even though Diane Ognibene was not a part of *9/11* decedent Philip Ognibene's early childhood, Diane performed as his step-mother for a decade and, as such, should be eligible in this action.

**I.**   **Norma Ward**

Plaintiff Norma Ward was *9/11* decedent Timothy Raymond Ward's step-mother. As discussed above, the Hoglan Plaintiffs contend that step-mothers should be considered "immediate family members" - especially for FSIA terrorism cases.  Plaintiff Norma Ward also cohabitated with *9/11* decedent Timothy Raymond Ward.  Therefore, Norma Ward should also be eligible for FSIA solatium damages under a broad, flexible interpretation of functional equivalent to an immediate family member.

**J.**   **Jessica Kramer and Christi Pendergraft**

Plaintiff Jessica Kramer and Plaintiff Christi Pendergraft are Plaintiff Norma Ward's daughters, who became *9/11* decedent Timothy Raymond Ward's step-sisters when Norma Ward married Timothy Raymond Ward's stepfather.  Jessica and Christi were children when they became decedent Timothy Raymond Ward's step-sisters.  Step-siblings should be deemed eligible and Jessica Kramer and Christi Pendergraft's claims should be upheld.

**K.**     **Other Claimants**

The Magistrate Judge recommends that the claims of the following Plaintiffs be denied

solatium damages: Michelle Clendenney, Heather Strickland, Jeanette Coffey, Estate of Daniel

F. Coffey, Jr., Estate of Ida Reiss, Estate of Lenore Jackson, Estate of Ken Jackson, Samuel

Collazo, Leonardo Collazo, Gabriella Rinehart, Estate of Louise Borzumato, Michelle Baker,

Martin Smith, Mateo Pino, Martin Smith, Anthony Pino, Vincent Pappasso, Jr., Brendan Cofresi

(Minor), James Montoya, Addison Friedman, Anthony Friedman-Ceraso, Daniel Huber, Danielle

Smith, Brittney Cofresi (Minor), Troia Johnson, Diane Smith, Tawanda Sith, Kaitlin Steiner

Keller, Kristyn Steiner Martin, Kristen Druckenmiller, Stephanie Feher, Nina Fuller, James

Mandelino Sr., Pedro Geraldino, Kathryn Collman, Gail Smith, Julie Bertelsen Hoglan,

Raymond Woods, Scott Woods, Lisa Smith, Mike Smith, Jason Smith, Lance Ward and Marc

Ward.  The *Hoglan* Plaintiff respectfully object to the denial of solatium damages to all of these

Plaintiffs and request their claims and eligibility be reviewed under an expansive interpretation

of functional equivalents to immediate family members.

**V.**     **Conclusion**

The Court should decline to adopt the Magistrate Judge's Report and Recommendations

insofar as she recommended denial of awards for immediate family members who were not

within the outdated and inappropriate definition of "immediate family member" utilized in the

*Hoglan IV* Report and Recommendation.  Instead, the Court should enter awards for such

*Hoglan* Plaintiffs commensurate with those requested in Plaintiffs' damages inquest submission,

or in other appropriate amounts.

Respectfully submitted,

Date:  September 29, 2017

/s/ Timothy B. Fleming_____
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
1850 M Street, NW, Suite 720
Washington, DC  20036
(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN  46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ
 & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

***Attorneys for the Hoglan Plaintiffs***