# EXHIBIT B

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT DELIVERY**

August 10, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and accompanying exhibits in support of their request that the Court enter an order pursuant to Federal Rule of Civil Procedure 37(a), compelling defendant Wa'el Hamza Jelaidan to immediately produce all documents and information responsive to plaintiffs' document requests, including but not limited to: (1) all banking, financial and corporate records Jelaidan secured and produced to defendant Yassin al Kadi in response to an international terrorism investigation, but refused to produce to plaintiffs in defiance of this Court's November 16, 2011 Order; (2) all documents relating to the Swiss Government's investigation of defendants Jelaidan and Kadi; (3) all banking and financial records for accounts connected to Jelaidan and the Maram Company at Faisal Finance-Istanbul; and (4) all banking and financial records for an account held jointly by Jelaidan and Specially Designated Global Terrorist Chafiq Ayadi.[1] Plaintiffs further request that the Court impose additional sanctions on Jelaidan pursuant to Federal Rule of Civil Procedure 37(b), based on newly discovered evidence that his failure to comply with this Court's earlier discovery orders was not merely a product of a lack of diligence in seeking responsive

---

[1] Plaintiffs' proposal concerning a schedule for motions to compel, and the Court's Order endorsing same (ECF No. 2963), contemplates the filing of multiple motions as to any one defendant. Pursuant to that Order, plaintiffs are filing two separate motions today in support of their request for an order compelling defendant Wa'el Hamza Jelaidan to produce relevant categories of documents. This motion will be referred to as "Plaintiffs' Letter Brief #1."

The Honorable Frank Maas
August 10, 2015
Page 2

---

documents, but in fact involved a willful refusal to produce records he had actually obtained (for the benefit of another Specially Designated Global Terrorist).

As this Court is well aware, plaintiffs' efforts to obtain any responsive documents from defendant Jelaidan since the commencement of discovery have proven exceedingly difficult and frustrating. Notwithstanding the countless opportunities to meaningfully respond to plaintiffs' initial and supplemental document requests, and several chances to comply with this Court's clear discovery orders, Jelaidan has failed in every instance to convince this Court and the parties that he is actively engaged in the discovery process and making good-faith attempts to locate and produce responsive materials.

In an effort to excuse his non-compliance and deflect blame to others, Jelaidan has on numerous occasions represented to this Court that unnamed banking, corporate and government officials have allegedly refused to respond to Jelaidan's own requests for relevant records given his designated status. But new evidence confirms that those statements are demonstrably inaccurate. In fact, documentation obtained by plaintiffs makes it perfectly clear that Jelaidan was able to successfully request and obtain personal and corporate bank account records and other business documents in the years following his designations by the United States and United Nations in 2002,[2] and did so for the benefit of another defendant in this litigation.

Jelaidan's conscious obstruction of the discovery process, and defiance of this Court's unambiguous orders, have required plaintiffs and this Court to waste valuable time and resources. At this juncture, plaintiffs respectfully submit that severe monetary sanctions are warranted.

## I.   PROCEDURAL HISTORY

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Wa'el Hamza Jelaidan, on June 13, 2006, attached hereto as Exhibit A. Those requests seek *inter alia*: (i) relevant banking and financial documents, including documentation relating to an account Jelaidan holds jointly with Osama bin Laden; (ii) documents relating to investigations conducted by the United States and foreign governments into Jelaidan's terror sponsorship activities, including sanctions leveled against the defendant; (iii) documents relating to Jelaidan's employment with, and oversight of, several of the charities that were an integral part of the al Qaeda financial support infrastructure, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Rabita Trust, Saudi Joint Relief Committee ("SJRC"), and Al Haramain & Al Masjed Al Aqsa Charity Foundation ("AHAMAA"); and (iv) documents relating to Jelaidan's relationship with fellow Executive Order 13224 designees – Yassin Abdullah al Kadi and Chafiq Ayadi – and other prominent financial supporters of Osama bin Laden and al Qaeda.

---

[2] Jelaidan was jointly designated by the U.S. Department of Treasury and Saudi Arabia as a Specially Designated Global Terrorist pursuant to Executive Order 13224 on September 6, 2002. Several days later, on September 11, 2002, the United Nations Security Council 1267 Committee also designated Jelaidan.

Case 1:03-md-01570-GBD-SN   Document 3746-2   Filed 10/06/17   Page 4 of 9
Case 1:03-md-01570-GBD-FM   Document 2988   Filed 08/10/15   Page 3 of 8

The Honorable Frank Maas
August 10, 2015
Page 3

In response, Jelaidan repeatedly asserted that he neither has knowledge of nor possession of responsive documents, particularly as to banking and financial records for accounts under his control. Jelaidan also produced a mere 22 documents (104 pages), a number of which are unresponsive and have no relevance to the specific issues articulated in plaintiffs' requests.

On July 31, 2012, plaintiffs served their consolidated Supplemental Requests for Production of Documents to Wa'el Jelaidan, attached hereto as Exhibit B. Those requests seek *inter alia*: (i) banking and financial documents for additional accounts directly linked to the defendant; (ii) documents relating to Jelaidan's relationship with U.S. aviation schools attended by certain of the 9/11 hijackers; (iii) documents relating to Jelaidan's relationship with the Muwafaq Foundation, a purported charity co-founded by defendants Khalid bin Mahfouz and Yassin al Kadi which merged with al Qaeda prior to the 9/11 attacks; and (iv) documents relating to Jelaidan's relationship with individuals and entities that were a part of the al Qaeda financial network. To date, the defendant has simply refused to serve responses to plaintiffs' supplemental requests.[3]

Plaintiffs filed their initial motion to compel on October 17, 2011, attached hereto as Exhibit C, seeking the production of documents relating to: (i) banking and financial accounts associated with Jelaidan; (ii) Jelaidan's relationship with Executive Order 13224 designees; and (iii) the imposition of financial and other sanctions upon Jelaidan following his September 2002 designations by the United States, Saudi Arabia, and United Nations.

Jelaidan filed his opposition to plaintiffs' motion on October 31, 2011, primarily arguing that he had made several attempts to request and obtain documentation and information regarding his frozen bank accounts, but his designations as a terrorist financier by the United States and United Nations effectively extinguished any and all rights he had as an account holder to communicate with the banks and make such requests. See October 31, 2011 Opposition at Exhibit D, pp. 1-3. According to Jelaidan, Faisal Finance (Switzerland) S.A. and other financial institutions are precluded from providing him with the most basic account information (such as bank statements or account summaries) by virtue of the designations. *Id.*

In response, plaintiffs offered affidavit testimony from Professor Jimmy Gurulé, former Under-Secretary (Enforcement) of the United States Department of the Treasury, which makes clear that the sanctions programs implemented by the United States and United Nations were purposely designed to prevent designees like Jelaidan from gaining access to funds or other assets in frozen bank accounts, *but not from requesting and obtaining basic banking records for the blocked account(s)*. See plaintiffs' November 9, 2011 reply in further support of the motion to compel at Exhibit E.

Thereafter, at the November 16, 2011 conference, Your Honor ruled that Jelaidan's bank account records are indeed within the defendant's control given his practical ability to obtain

---

[3] As is true of several other defendants, Jelaidan has advanced the remarkable position that the supplemental requests, served nearly three years before the document production deadline (which was itself extended numerous times at the request of the defendants), were untimely. Plaintiffs respectfully request that the Court strike that baseless objection, and direct Jelaidan to provide substantive responses to the supplemental requests.

Case 1:03-md-01570-GBD-SN Document 3746-2 Filed 10/06/17 Page 5 of 9
Case 1:03-md-01570-GBD-FM Document 2988 Filed 08/10/15 Page 5 of 9

The Honorable Frank Maas
August 10, 2015
Page 4

them from the banks, and subsequently ordered Jelaidan to undertake vigorous and expeditious efforts to obtain the requested banking materials, and to document those good faith efforts:

> I guess, Mr. McMahon, it comes down to the same thing I said with respect to your other two clients, namely, that there has to be a full-court press. And, as Mr. Carter indicated and I've said before, it has to be documented. If you're not sufficiently able to document a vigorous effort to obtain those documents, it may be that sanctions are imposed.

*See* November 16, 2011 Discovery Hearing Transcript, p. 33, attached hereto as Exhibit F.

Only a few short weeks following the hearing (19 days), defendant's counsel sent a cursory email to plaintiffs' counsel, advising that further attempts by Jelaidan and his Saudi Arabian attorney (Bassim Alim) to obtain responsive documentation had been exhausted, claiming once again that certain government and commercial entities were unwilling to cooperate with the defendant and/or his attorney. *See* Exhibit G.

Plaintiffs filed their second motion to compel on January 30, 2013, asking the Court to direct Jelaidan to immediately produce: (i) all documents verifying all efforts Jelaidan and his counsel have undertaken to request and secure documents responsive to plaintiffs' requests for production of documents, consistent with the Court November 16, 2011 Order; and (ii) all documents and materials in Jelaidan's possession, custody, or control responsive to plaintiffs' Supplemental Requests for Production of Documents. *See* Exhibit H. Plaintiffs argued that the imposition of severe sanctions against Jelaidan were warranted given his refusal to meaningfully respond to plaintiffs' discovery and failure to comply with the Court's discovery orders. *Id.*

In his March 1, 2013 Opposition, Jelaidan predictably argued again that he made a number of good faith attempts to request and obtain responsive banking records, but that "the banks have chosen not to be compliant with Mr. Jelaidan's requests." *See* March 1, 2013 Opposition at Exhibit I, pp. 2-3. Despite the Court's clear order directing the defendant to document his attempts to request responsive documents, Jelaidan failed to present this Court with any credible documentary evidence verifying that he and his legal team made vigorous and exhaustive "good faith" attempts to request and secure documentation responsive to plaintiffs' discovery. *See* plaintiffs' March 12, 2013 reply brief at Exhibit J. Argument as to plaintiffs' motion to compel was held before the Court on March 19, 2013.

On October 28, 2013 (ECF No. 2789), the Court issued its Memorandum Decision and Report and Recommendation, finding that Jelaidan exhibited a "continued unwillingness to participate in discovery" over seven years, and "willfully disregarded his discovery obligations and acted in bad faith." *See* Memorandum at Exhibit K, pp. 9, 14. Further, the Court determined that "some of the material submitted for *in camera* review actually suggests that certain relevant bank records <u>are</u> available to Jelaidan, despite his claims to the contrary." *Id.* at p. 14. The Court ruled that adverse inference sanctions against Jelaidan are warranted, and also held that

Case 1:03-md-01570-GBD-SN   Document 3746-2   Filed 10/06/17   Page 6 of 9
Case 1:03-md-01570-GBD-FM   Document 2988   Filed 08/10/15   Page 5 of 8

The Honorable Frank Maas
August 10, 2015
Page 5

plaintiffs are entitled to reasonable attorney's fees and costs incurred in bringing the motions to compel.[4]

## II. DEFENDANT JELAIDAN MADE MISREPRESENTATIONS REGARDING HIS ABILITY TO OBTAIN RESPONSIVE BANKING AND CORPORATE DOCUMENTS

Without question, Jelaidan's obstructionist behavior has forced plaintiffs, and this Court, to expend significant time and valuable resources to address the defendant's years of non-compliance in this important litigation. Since the commencement of discovery, Jelaidan has regularly excused his non-compliance on the unwillingness of banking, corporate and government officials to cooperate with him and his legal team to obtain relevant records for discovery. But those representations are nothing more than a farce as new evidence makes clear that Jelaidan has always had the practical ability to secure the banking and corporate records he said he could not, and in fact purposely went out of his way to successfully request and obtain such documents for defendant Yassin al Kadi, an al Qaeda financier and Executive Order 13224 Specially Designated Global Terrorist.

Documents produced by Kadi in discovery unambiguously describe the Swiss government's investigation of Kadi for his terror financing activities and Jelaidan's efforts to assist Kadi's legal team respond to records requests from Swiss investigators. Indeed, following a July 1, 2003 meeting between Swiss investigators and Kadi, Jelaidan personally met with Kadi's legal team and helped them obtain relevant financial records for Jelaidan's personal bank accounts, as well as corporate and bank account records for Maram Company ("Maram")[5]:

> Following that meeting, Mr. Kadi's legal team has also met Mr. Jelaidan. Mr. Jelaidan has co-operated with the legal team including by authorizing access to corporate documents for Maram Travel Importation and Exportation Trading Limited Company (for convenience "Maram") as well as banking documents relating both to Mr. Jelaidan's personal accounts and the account of Maram. Mr. Kadi's legal team has arranged for many of these documents to be translated.

See Exhibit L (KADI0004271-4272). Shortly after that meeting, Jelaidan received a letter from officials at Faisal Finance (Switzerland) S.A., dated July 18, 2003, advising that the bank has started the work of retrieving the financial documentation requested by Jelaidan and will courier the records to him once all documents have been retrieved. See Exhibit M (KADI0102987).[6] [7]

---

[4] Plaintiffs' Application for Attorneys' Fees and Reimbursement of Expenses remains pending.

[5] Maram Company, located in Istanbul, Turkey, is a company founded by a long-term al Qaeda member, Mamdouh Mahmud Salim, currently incarcerated in the Supermax prison in Colorado. Jelaidan and another long-term al Qaeda member, Mohamed Bayazid, purchased Maram from Salim. Another al Qaeda financier, Executive Order designee Yassin al Kadi, transferred $1.25 million into the coffers of Maram to support a Yemen-based university founded by yet another long-term al Qaeda supporter and Executive Order designee, Abdel Majid Zindani. Not surprisingly nearly all the funds went unaccounted for, with a significant tranche ending up in Jelaidan's private account. See plaintiffs' October 17, 2011 Motion to Compel at Exhibit C, p. 13.

[6] Notably, the July 18, 2003 letter from Faisal Finance copies Jelaidan's attorney in Saudi Arabia, Bassim Alim. Despite having prior knowledge of the assistance Faisal Finance provided to Jelaidan in acquiring relevant banking

Case 1:03-md-01570-GBD-SN Document 3746-2 Filed 10/06/17 Page 7 of 9
Case 1:03-md-01570-GBD-FM Document 2988 Filed 08/10/15 Page 6 of 8

The Honorable Frank Maas
August 10, 2015
Page 6

The Court will recall that plaintiffs previously sought the production of these very same documents, *see* plaintiffs' October 17, 2011 Motion to Compel at Exhibit C, pp. 6, 13 (seeking banking and corporate records for Maram and all banking records for accounts held by Jelaidan at Faisal Finance (Switzerland) S.A.), but Jelaidan swore to this Court that Faisal Finance would not cooperate with him, nor did he have the authority to access accounts for Maram:

> 7. I did have a personal bank account with Faisal Finance S.A. in Switzerland. However, after the said UN Designation, the account was frozen by the Swiss authorities per the UN directive. Since then, I do not have the legal authority to access the account nor request any documentation. On several occasions, I have initiated contact with the bank but they have not been responsive.
>
> ***
>
> 11. Maram Company did not maintain bank accounts in Turkey. However, Maram Co. has long ceased operations. I do not have the authority to access any of these accounts and cannot request any documentation.

*See* Affidavit of Wael Hamzah Jelaidan, dated October 29, 2011, Exhibit 2 to Jelaidan's October 31, 2011 Opposition to plaintiffs' Motion to Compel at Exhibit D hereto.

Jelaidan's conscious and willful refusal to produce responsive banking and corporate documents that are clearly within his possession, custody and control is incredibly alarming. Indeed, the willful nature of the defendant's non-compliance easily warrants the entry of a default judgment against Jelaidan. *See Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 146-148 (2d Cir. 2010) (upholding district court sanction entering default against defendants for failing to comply with court order to produce documents relevant to jurisdiction after noting that the defendants failed to comply with discovery orders, "willfully lied about the existence and whereabouts of certain documents," and "failed to provide a good-faith explanation for their neglect in producing financial documents that clearly were the subject of the court's discovery orders"); *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 615 (2d Cir. 1964) (upholding sanction entering default against defendants for willfully failing to comply with various court orders including an order to appear at a deposition and two orders to produce documents and noting this was "particularly intolerable in a large and complex litigation such as this one"); *Altschuler v. Samsonite Corp.*, 109 F.R.D. 353, 357-358 (E.D.N.Y. 1986) (entering default judgment where the defendant presented no justifiable excuse for his failure to obey the

---

records, Alim advances the charade before this Court in a November 26, 2011 letter to Martin McMahon when he states that Jelaidan "is unable to get any satisfactory response from any of the Government and commercial entities he corresponded with" and that "[a]ll entities contacted by us are simply non-responsive." *See* Exhibit 6 to Jelaidan's March 1, 2013 Opposition to plaintiffs' Motion to Compel, attached hereto as Exhibit I.

[7] The document productions received from defendant Kadi demonstrate that Jelaidan (and Kadi) engaged in significant efforts to obtain responsive documents for the benefit of third parties, for purposes other than this litigation. Indeed, documentation relating to those efforts were shared with the Office of the Attorney General of Switzerland, and potentially other foreign investigators and/or third parties. Plaintiffs respectfully submit no privilege applies to those documents and they should be promptly produced as well.

Case 1:03-md-01570-GBD-SN Document 3746-2 Filed 10/06/17 Page 8 of 9
Case 1:03-md-01570-GBD-FM Document 2988 Filed 08/10/15 Page 7 of 8

The Honorable Frank Maas
August 10, 2015
Page 7

court's order, produce a representative for deposition, serve answers to interrogatories, or respond to a request for documents).

Rather than seek that sanction at this time, plaintiffs respectfully request that the Court instead issue a monetary penalty against Jelaidan, commensurate with his egregious behavior in these proceedings. *Qualcomm Inc. v. Broadcom Corp.*, 2008 U.S. Dist. LEXIS 911 (S.D. Cal. 2008) (imposing monetary penalty for withholding 46,000 plainly relevant documents and misleading court); *SD Protection, Inc. v. Edward Del Rio*, 587 F. Supp. 2d 429, 431-432 (S.D.N.Y. 2008) (imposing a monetary sanction for failure to comply with discovery orders); *AAIpharma, Inc. v. Kremers Urban Dev. Co.*, 2006 U.S. Dist. LEXIS 79815, *16-19 (S.D.N.Y. 2006 (holding that the imposition of monetary sanctions against a party pursuant to Rule 37(b) was appropriate for improperly withholding documents after significant court intervention). Plaintiffs submit that a significant monetary penalty is proper in this instance give Jelaidan's prolonged and vexatious obstruction of discovery. Moreover, the imposition of a harsh penalty serves to compel future compliance by other defendants in discovery.

Plaintiffs further ask this Court to direct the defendant to immediately produce all banking, financial, and corporate records Jelaidan secured for Kadi as described above.

### III. JELAIDAN SHOULD BE COMPELLED TO PRODUCE OTHER CATEGORIES OF DOCUMENTS

#### A. Investigation by the Swiss Government

The Kadi discovery documents also disclose that Jelaidan was questioned by Swiss investigators on May 3, 2004 in Riyadh. The topics of that interrogation included, *inter alia*: (i) Jelaidan's relationship with Osama bin Laden and other senior members of al Qaeda; (ii) Jelaidan's relationship with SDGTs Yassin al Kadi and Chafiq Ayadi; and (iii) Jelaidan's relationship with Maram Company and certain of its principals. *See* Interrogation Report at Exhibit N (KADI012162-12172).

Although Jelaidan was represented in this litigation at the time of the interrogation[8] and was under an affirmative duty to secure and preserve potentially relevant evidence for these proceedings, not a single document relating to the Swiss investigation (including the interrogation report itself) has ever been produced by the defendant. Not only was Jelaidan a focal point of the investigation, but he also worked closely with Kadi and his legal team to secure financial and business records requested by investigators. It is simply implausible to believe that Jelaidan is not in possession of responsive documents relating to the investigation. Accordingly, Jelaidan should be compelled to immediately produce all such documents.

---

[8] Judge Richard Casey endorsed Martin McMahon's *pro hac vice* admission on behalf of defendant Jelaidan on March 29, 2004 (ECF No. 77).

The Honorable Frank Maas
August 10, 2015
Page 8

### B. Bank Accounts Connected to Jelaidan

Plaintiffs have further discovered evidence of additional bank accounts connected to Jelaidan that he has failed to disclose in response to plaintiffs' discovery. Jelaidan had personal accounts at the Istanbul branch of Faisal Finance – Account Nos. xx0905 and xx7191. *See* August 22, 2003 Submission of Yassin Abdullah Kadi to the Deputy Attorney General of Switzerland at Exhibit O, pp. 14, 16, 20; and bank record for Account Nos. xx0905 at Exhibit P.

The Kadi submission also identifies Account No. xx0377 for the Maram Company. *See* Exhibit O at pp. 12, 14, 16, 21; and bank record for Account No. xx0377 at Exhibit Q.

Plaintiffs respectfully submit that Jelaidan should be directed to immediately secure and produce all banking and financial records relating to these accounts.

### C. Joint Bank Account With Specially Designated Global Terrorist Chafiq Ayadi

U.S. diplomatic cables disclose that Jelaidan had an account at Privredna Banka Zagreb which was frozen by Croatia's Financial Intelligence Unit ("FIU") on May 2, 2006. *See* Exhibit R (identifying Account No. xxxxxxxxxx-x1961). The co-signer to the account was designated terrorist Chafiq Ayadi. Jelaidan should be compelled to produce all banking records relating to that account, including all documentation relating to the investigation and freezing of that account.

Respectfully submitted,

J. Scott Tarbutton, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

JST

cc: The Honorable George B. Daniels (via overnight UPS delivery)
MDL-1570 Counsel of Record (via ECF)

LEGAL\24029322\1 00000.0000.000/117430.000