# EXHIBIT D

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA HAND DELIVERY**

October 17, 2011

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

   Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

  In accordance with the Court's January 21, 2011 Order, Plaintiffs in the above referenced action submit this letter and the accompanying exhibits and respectfully request that Your Honor enter an order, pursuant to F.R.C.P. 37(a), compelling defendant Wa'el Hamza Jelaidan, an Executive Order 13224 terrorist designee, to promptly produce documentation and information relating to certain categories of documents previously requested by the Plaintiffs. Generally speaking, the documents at issue relate to: (1) banking and financial accounts associated with the terror financier, including a frozen account Jelaidan holds jointly with Osama bin Laden; (2) the defendant's relationship with other Executive Order 13224 designees, including transfers of millions of dollars between them; and (3) the imposition of financial and other sanctions upon Jelaidan following his September 2002 designations by the United States, Kingdom of Saudi Arabia, and United Nations.[1]

---

[1] There are a number of other serious deficiencies with the defendant's discovery responses that warrant this Court's attention. Plaintiffs will separately address those remaining issues in subsequent letter submissions.

The Honorable Frank Maas
October 17, 2011
Page 2

---

## I. PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

On June 13, 2006, Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Wa'el Hamza Jelaidan, attached hereto as Exhibit 1. Plaintiffs' document requests were divided into Part A (comprising the first 25 requests) and Part B (the remaining 49 requests).[2]

Those requests seek *inter alia*: (i) relevant banking and financial documents, including documentation relating to an account Jelaidan holds jointly with Osama bin Laden; (ii) documents relating to investigations conducted by the United States and foreign governments into Jelaidan's terror sponsorship activities, including sanctions leveled against the defendant; (iii) documents relating to Jelaidan's employment with, and oversight of, several of the charities that were an integral part of the al Qaeda financial support infrastructure, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Rabita Trust, Saudi Joint Relief Committee ("SJRC"), and Al Haramain & Al Masjed Al Aqsa Charity Foundation ("AHAMAA"); and (iv) documents relating to Jelaidan's relationship with fellow Executive Order 13224 designees – Yassin Abdullah al Kadi and Chafiq Ayadi – and other prominent financial supporters of Osama bin Laden and al Qaeda.

On August 15, 2006, Jelaidan provided his responses to the Plaintiffs' Part A requests, and on September 13, 2006, Jelaidan provided his responses to the Plaintiffs' Part B requests. *See* Wael Jelaidan's Responses to the Plaintiffs' First Set of Requests for Production of Documents "Part A," and Wael Jelaidan's Responses to the Plaintiffs' First Set of Requests for Production of Documents "Part B," attached collectively hereto as Exhibit 2.

Following an examination of the defendant's discovery responses and documents, it is readily apparent that there are significant problems. First, the most glaring deficiency is the fact that the defendant has failed to produce a single document in response to sixty-seven (67) of the Plaintiffs' seventy-four (74) document requests. Just as egregious, the defendant has produced a mere 22 documents (104 pages) since the commencement of merits discovery, several of which are unresponsive to the Plaintiffs' discovery requests and have no relevance to the specific issues articulated in those requests.

Second, when responding to Plaintiffs' discovery requests, Jelaidan has in boilerplate fashion asserted conclusory and unsubstantiated objections regarding alleged burdens associated with producing responsive documentation and materials. Although the Federal discovery rules require a party to provide credible evidence to substantiate its objections, the defendant has failed to provide a single affidavit, declaration, or other document in support of those burden objections. *See Arias-Zeballos v. Tan*, 2007 U.S. Dist. Lexis 40245, *4 (S.D.N.Y. 2007) ("In

---

[2] Plaintiffs staggered their discovery requests in this manner, as well as the response times, so as to provide the defendant with sufficient time to search for and gather responsive materials and fully respond to the Plaintiffs' requests.

The Honorable Frank Maas
October 17, 2011
Page 3

---

order to satisfy its burden, the resisting party must do more than simply inton[e the] familiar litany that the [discovery requests] are burdensome, oppressive or overly broad, and must clarify and explain its objections and provide support thereof.").

Further, not only has Jelaidan blatantly ignored his continuing obligation under Federal Rule 26(e) to supplement his responses to the Plaintiffs' discovery requests, the defendant has failed to supplement his responses pursuant Judge Daniels' Order holding that "the appropriate temporal scope of discovery should reasonably begin in 1992," and further directing Jelaidan to respond to Plaintiffs' discovery requests in accordance with that determination. *See* Order, MDL Docket No. 2059, December 21, 2007. Jelaidan's failure to do so has significantly prejudiced the Plaintiffs' ability to obtain relevant and discoverable information.

Moreover, the defendant attempts to excuse his lack of production by repeatedly asserting that he neither has knowledge of nor possession of responsive documents. Jelaidan particularly relies upon this position when responding to Plaintiffs' requests seeking banking and financial records for accounts under his control. But neither Jelaidan's failure to conduct a diligent search for responsive records nor his bare "not in my possession" disclaimers fulfill his discovery obligations. *See Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) (Court holding that a party to a lawsuit cannot escape the obligation to produce documents by incanting .... 'not in my possession.' That a party does not possess documents is simply immaterial if those documents remain in that party's custody or control.").

Plaintiffs have well-founded concerns that Jelaidan does not intend to fulfill his discovery obligations in this important case and is in fact deliberately withholding the production of responsive documentation. Plaintiffs have attempted to contact Jelaidan's counsel, Martin McMahon, on at least three separate occasions to set up a meet and confer to discuss the defendant's discovery deficiencies, but Mr. McMahon's office has not responded to any of Plaintiffs' requests to schedule a conference. *See* Plaintiffs' emails to Martin McMahon dated April 14, 2011, and May 5, 2011 and May 16, 2011, attached hereto as Exhibit 3. Plaintiffs still do not have the requested information and, particularly given the impending deadline for document productions, intervention by this Court is now necessary. Accordingly, Plaintiffs respectfully request that the Court order Jelaidan immediately to produce all responsive materials.

### A. Jelaidan's Timeframe and Burden Objections Have Previously Been Struck By This Court

Plaintiffs have served the defendant with a number of important discovery requests seeking a variety of relevant information, including without limitation, documents concerning: (i) meetings and conferences Jelaidan attended with other members of al Qaeda; (ii) relationships between members of al Qaeda and certain charities; (iii) Jelaidan's relationship with fellow Executive Order 13224 designees Yassin Abdullah al Kadi, Chafiq Ayadi, Adel Batterjee, and Hassan Cengic; (iv) Jelaidan's relationship with the al Qaeda charities such as the IIRO, AHAMAA, World Assembly of Muslim Youth ("WAMY"), and Third World Relief Agency

The Honorable Frank Maas
October 17, 2011
Page 4

---

("TWRA"); and (v) bank accounts Jelaidan held jointly with the aforementioned individuals and entities. *See* Plaintiffs' Request Nos. B12-14 and B38-43 at Exhibit 1.

Jelaidan has failed to produce a single document in response to these document requests, primarily relying on his objection that the timeframe and breadth of the requests is "too expansive and burdensome:"

> Despite the foregoing and preserving all our objections, WJ states that no responsive documents will be produced because both the timeframe and breadth of this request is much too expansive and burdensome. Should Plaintiffs identify a reasonable amount of specific individuals and a reasonable and relevant timeframe, WJ would endeavor to focus a search that may or may not produce documents responsive to this request.

(Emphasis added). *See* Jelaidan's Responses to Plaintiffs' Request Nos. B12-14 and B38-43 at Exhibit 2. As this Court will recall, Judge Daniels previously considered, rejected, and struck the defendant's timeframe and burden objections, holding that the appropriate temporal scope of discovery should reasonably begin in 1992, and further directing Jelaidan to respond to the Plaintiffs' discovery requests in accordance with that determination. *See* December 21, 2007 Order (MDL Docket Entry No. 2059). The defendant has failed to supplement his discovery responses and/or produce a single document since the Court's December 2007 Order. Plaintiffs therefore respectfully request that Your Honor direct Jelaidan to comply with the Court's prior orders and immediately produce all requested documents.

### B. Jelaidan Should Be Compelled To Produce All Banking And Financial Records

Plaintiffs have served the defendant with several discovery requests seeking banking and financial records for accounts linked to Jelaidan, including the defendant's personal bank accounts and other accounts over which he has signatory authority and control. Although the defendant responded to Plaintiffs' banking requests by producing a few documents (mostly unresponsive), Jelaidan has largely failed to produce any of the requested information relating to a number of bank accounts the Plaintiffs have discovered through their independent investigations, as well as certain accounts Jelaidan himself has acknowledged in his discovery responses.[3] In support of his non-production, the defendant relies primarily upon his contention that he "neither has knowledge of nor possession" of the requested banking records. As

---

[3] The discussion which follows focuses on a select number of identified bank accounts held in Jelaidan's name, or over which he held signatory or account authority. Plaintiffs focus on these particular accounts merely as a means of demonstrating Jelaidan's failure to comply with his discovery obligations in responding to Plaintiffs' document requests. However, through the instant application, Plaintiffs seek an Order directing Jelaidan to produce any and all records for *any* bank account held in his name, or relative to which he held signatory or account authority, during the relevant timeframe. For the reasons discussed in Section F below, that timeframe should extend at least back to the formation of al Qaeda in 1988.