The Honorable Frank Maas
October 17, 2011
Page 5

---

discussed in further detail below, that response fails to meet Jelaidan's most basic obligations under the Federal discovery rules.

### 1. Jelaidan has "control" over his bank accounts and must produce documents concerning those accounts in accordance with Rule 34.

The federal courts have been clear that a party may not forego his duty to produce responsive documents by asserting that they are "not in my possession," and must produce documents where the party has the legal right to obtain such documents on demand. *See Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) (Court holding that a party to a lawsuit cannot escape the obligation to produce documents by incanting …. 'not in my possession.' That a party does not possess documents is simply immaterial if those documents remain in that party's custody or control.").

Rule 34(a) of the Federal Rules of Civil Procedure requires production of all responsive, non-privileged documents within a party's "possession, custody or control" that are responsive to another party's document request. *See United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y 2007) ("Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items. *Control* has been defined to include the legal right to obtain the documents requested upon demand. The term 'control' is broadly construed."); *Florentia Contracting Corp. v. The Resolution Trust Corp.*, 1993 WL 127187, at *3 (S.D.N.Y. Apr. 22, 1993) ("Control has been defined as the legal right, authority, or ability to obtain upon demand documents in the possession of another."); *The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997) (stating that control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather, documents are considered to be under a party's control when that party has the right, authority or practical ability to obtain the documents from a non-party to the action); *In Re Flag Telecom Holdings*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").

Following that reasoning, the courts have similarly held that a party has control over his or her bank account records and must produce them in accordance with Rule 34. *See Dorocon, Inc. v. Burke*, 2005 U.S. Dist. Lexis 38839, at *52-53 (D.D.C. 2005) (reasoning that control is not defined by actual possession but also includes constructive possession (i.e., the legal right to obtain documents on demand), the court held that Rule 34(a) obligates the party to turn over documents such as bank statements "given that they enjoy constructive possession of such documents."); *Engel v. Town of Roseland*, 2007 U.S. Dist. Lexis 73645 (N.D. Ind. 2007) (holding that when a person has a right to obtain copies of his bank statements, the party is in control of those documents and must produce them in response to a request under Rule 34); *Thomas v. Deloitte Consulting L.P.*, 2004 Dist. Lexis. 29154 (N.D. Tex. 2004) (ordering production of bank statements); *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D.N.Y. 1978) (where the plaintiff failed to produce the requested banking records by claiming they were not in his possession, the court ordered the plaintiff to request production of the records from the Swiss Bank, holding that "[p]roduction may be ordered when a party has a legal right to obtain

The Honorable Frank Maas
October 17, 2011
Page 6

---

papers, even though he has no copy, and regardless of whether a paper is beyond the jurisdiction of the Court.").

### 2. Jelaidan's accounts at Faisal Finance (Switzerland) S.A.

Plaintiffs served the following requests seeking banking records for accounts held by the defendant at Faisal Finance (Switzerland) S.A.[4]

- Request No. A-6 – Please provide any and all documents relating to any financial accounts held by You in Faisal Finance and/or any Faisal Finance accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

- Request No. A-7 – Please provide any and all documents relating to Switzerland's investigation and post 9-11 determination to freeze any and all accounts in Your name and/or any accounts over which you hold or held signatory authority, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Swiss government.

Jelaidan produced a mere two documents in response to Request Nos. A-6 and A-7: (1) a three-page bank statement for Account No. x0409 at Faisal Finance for the month of January 2005 (WJ003); and (2) a September 25, 2002 letter from Faisal Finance notifying Jelaidan that Account No. x0409 has been frozen per the directives of the Swiss Federal Prosecutor (WJ013). The defendant further responds as follows:

> WJ neither has knowledge of nor possession of any additional documents other than what has been produced which are responsive to this request.

*See* Exhibit 2, pp. 6-7. As the case law cited above makes clear, Jelaidan's discovery obligations under the Federal Rules require him to do more than simply assert that responsive banking records are not in his possession, particularly when he has the legal right, authority, and/or practical ability to request them from the bank. There is no question that Jelaidan has control over Account No. x0409 and/or any other account associated with him at Faisal Finance. Indeed, the defendant's production of the January 2005 account statement makes clear that Jelaidan has successfully requested and obtained responsive banking records from the Swiss bank despite the freezing of the account three years earlier in 2002.

Jelaidan's document production in response to Plaintiffs' Request Nos. A-6 and A-7 is significantly inadequate and the defendant should be compelled to immediately produce all responsive documents.

---

[4] Executive Order 13224 designee and al Qaeda financier, Yassin al Kadi, also held personal and business accounts at Faisal Finance (Switzerland) S.A. As discussed in Section C(1) herein, Kadi used his accounts at Faisal Finance to transfer millions of dollars to Jelaidan.

The Honorable Frank Maas
October 17, 2011
Page 7

---

### 3. Jelaidan's accounts at Al Rajhi Banking & Investment Corporation.

Plaintiffs also served the following request seeking banking records for all accounts held by the defendant at Al Rajhi Bank:

- Request No. A-8 – Please provide any and all documents relating to any financial accounts held by You in the al Rajhi Banking & Investment Corporation ("al Rajhi") and/or any al Rajhi accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

The defendant responded to Plaintiffs' discovery request with the following:

Despite the foregoing and preserving all our objections, WJ has no statements post dating the freezing of his account. WJ is currently endeavoring to obtain statements prior to the freezing of his account (but not prior to 1996) and will produce such documents if and when they may be found.

*See* Exhibit 2, p. 7.

Despite the defendant's assurances in 2006 that he was working to obtain the requested documentation, Jelaidan has yet to produce a single document relating to his accounts at Al Rajhi Bank. Nor has the defendant advised Plaintiffs of the status of his efforts to obtain the requested banking records. Accordingly, Jelaidan should be compelled to produce all relevant banking records for any and all accounts associated with the defendant at Al Rajhi Bank, including without limitation, all bank statements for the life of the accounts (both *prior to and after* the date of freezing).

### 4. Jelaidan's joint account with Osama bin Laden at Habib Bank.

In addition to the frozen accounts at Faisal Finance (Switzerland) S.A. and Al Rajhi Bank, a third account linked to Jelaidan has been frozen following the September 11th attacks. According to media reporting, the government of Pakistan identified and seized an account Jelaidan held jointly with Osama bin Laden at Habib Bank in Peshawar in or around June 2003. *See* Ikram Hoti, *Accounts of 15 Terrorist Organizations Frozen*, World News Connection (June 21, 2003) (identifying the frozen Jelaidan-bin Laden account as: "Osama Bin-Laden and Wael Jelaidan FC-CD xx051-1 US$ 342.04 Habib Bank Limited (HBL) Cantt Br. Peshawar"), attached hereto as Exhibit 4; *see also* November 18, 2002 letter from the State Bank of Pakistan to William C. Murde, Director of the Treasury Department's Task Force on Terrorist Financing, regarding the status of certain frozen accounts, including the Jelaidan-bin Laden account, attached hereto as Exhibit 5.

The Honorable Frank Maas
October 17, 2011
Page 8

---

Based on this reporting and other available information, Plaintiffs served the following document requests:

- Requests No. A-3 – From the period beginning January 1984 through the present, please provide any and all documents relating to any accounts You hold or held jointly with, or on behalf of Osama Bin Laden (including any member of the Bin Laden family), including without limitation, any accounts over which You held or hold signatory authority. Such documents shall include, but are not limited to, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

- Request No. A-4 – Please provide any and all documents relating to the Islamic Republic of Pakistan's investigation and post 9-11 determination to freeze any and all accounts in Your name and/or any accounts over which you hold or held signatory authority, including without limitation, all documents identifying any and all accounts, assets, and/or monies frozen by the Islamic Republic of Pakistan, including the following: "Osama Bin-Laden and Wael Jelaiden FC-CD xx051-1 USS 342.04 Habib Bank Limited (HBL) Cantt Br. Peshawar."

Jelaidan responds to Request No. A-3 by merely asserting that "no such documents exist." *See* Exhibit 2, p. 5. The defendant's contention is simply not true in light of the specifically identified Jelaidan-bin Laden account at Habib Bank in Pakistan.

In response to Plaintiffs' Request No. A-4, the defendant has produced seven (7) documents, including but not limited to: (i) a September 25, 2002 letter from Faisal Finance (Switzerland) S.A. to Jelaidan stating that the Swiss Federal Prosecutor has ordered the freezing of Jelaidan's account (WJ013); (ii) a letter from the MWL Secretary General, Dr. Abdullah bin Abdul Mohsin al Turki, to the Ambassador of Pakistan in the Kingdom of Saudi Arabia, Admiral Abdul Aziz Mirza, requesting that the Rabita Trust accounts in Habib Bank be unfrozen by the government of Pakistan (WJ021); (iii) a December 16, 2002 letter from Javed Masud, Government of Pakistan, Cabinet Division, to the MWL Secretary General, Dr. Abdullah bin Abdul Mohsin al Turki, stating that Jelaidan's continued presence on the Board of Rabita Trust acts "as an impediment in defreezing the accounts of the Rabita Trust" (WJ008); and (iv) an October 15, 2001 statement by Jelaidan (unsigned) asserting that neither he nor Rabita Trust were involved or connected to al Qaeda or Osama bin Laden (WJ015). None of these mostly self-serving documents are remotely responsive to Plaintiffs' request that made specific reference to the Jelaidan-bin Laden account.

Moreover, Jelaidan once again falls back on his oft-stated position that he is not in possession of responsive documents:

> WJ neither has knowledge of nor possession of any additional documents other than what has been produced which are responsive to this request.

*See* Exhibit 2, p. 5. As a named account holder and beneficiary of the account at Habib Bank, Jelaidan most certainly has control over the requested documents and thus the legal right, authority, and practical ability to request and obtain all responsive banking records from Habib Bank relating to the account he holds jointly with bin Laden. Accordingly, this Court should compel the defendant to promptly produce the requested banking documents.[5]

### 5. Other responsive account records at Habib Bank.

Given the defendant's relationship with Habib Bank (as evidenced by the Jelaidan-bin Laden account), Plaintiffs served Jelaidan with the following request seeking documents for any and all bank accounts at Habib Bank associated with the defendant, including any account over which Jelaidan holds signatory authority:

- Request No. A-2 – Please provide any and all documents relating to any financial accounts held by You in Habib Bank and/or any Habib Bank accounts over which You hold or have held signatory authority, including without limitation, monthly or annual account statements, correspondence, deposits, withdrawals, cleared or canceled checks, wire transfers, or investments, including the source or destination of funds deposited into or withdrawn from any such account.

Although Jelaidan responds that he "neither has knowledge of nor possession of" documents responsive to this request,[6] the defendant does produce an August 21, 2002 letter authored by himself in his capacity as the Secretary General of Rabita Trust, to the State Bank of Pakistan, requesting that six (6) Rabita Trust accounts held at Habib Bank be unfrozen and the funds contained therein released. *See* Exhibit 6 (identifying Account Nos. xx973-1, x536, xx206-4, x254, x255, and x414).

As the leading official for Rabita Trust, Jelaidan would have signatory authority over the Rabita Trust accounts at Habib Bank and thus the supervisory authority to manage the disposition of the funds in those accounts at the time they were frozen. Accordingly, responsive banking records in the possession of Habib Bank are within defendant Jelaidan's control by virtue of his signatory authority. Therefore, Plaintiffs submit that these six Rabita Trust accounts are responsive to Request No. A-2 and the defendant should be compelled to request, obtain, and produce all responsive banking records relating to these accounts.

Similarly, in documents resolving an arbitrated dispute between Jelaidan and another man concerning funds for a project in Afghanistan, Jelaidan indicated that he had control of various accounts at Habib Bank related to that project. According to representations to which Jelaidan agreed, Jelaidan wrested control of all the components of the project, "pressured the director of the (Habib Bank), Peshawar Kant Branch, and managed to seize control of all the bank accounts

---

[5] To the extent Jelaidan is attempting to make a semantic distinction to avoid production of the requested documents, for instance on the ground that bin Laden is not formally listed by name on the account, his attempts to avoid discovery should be rejected.

[6] *See* Exhibit 2, p. 4.