The Honorable Frank Maas
October 17, 2011
Page 20

### D. Jelaidan Should Be Compelled To Produce Documentation Relating To Any And All Sanctions Imposed Upon Him

On September 6, 2002, the United States and the Kingdom of Saudi Arabia jointly designated Jelaidan as "an associate of Usama bin Laden and a supporter of al-Qa'ida terror." *See* Exhibit 8. A week later on September 11, 2002, the United Nations Security Council Committee (a/k/a the "1267 Committee") similarly designated Jelaidan for his connections to al Qaeda. *See* Exhibit 9.

Plaintiffs served the defendant with the following document requests:

- Request No. A-13 – Please provide any and all documents relating to any sanctions imposed upon you by the United States, United Nations, or any other nation or international body.

- Request No. A-18 – Please provide any and all documents relating to the joint United States-Saudi Arabian investigation and September 6, 2002 designation of You as a Specially Designated Global Terrorist and "an associate of Usama bin Laden and a supporter of al-Qa'ida terror," including without limitation, any and all documents identifying all of Your accounts, assets, and monies that were frozen by the United States and Saudi Arabia per the September 6, 2002 designation.

- Request No. A-19 – Please provide any and all documents relating to any sanctions imposed upon you by the Kingdom of Saudi Arabia.

Yet again, the defendant responds to each of the Plaintiffs' requests by claiming that he does not have possession of relevant documents:

> WJ neither has knowledge of nor possession of any documents responsive to this request.

*See* Exhibit 2, p. 9 and 11. Jelaidan's contention is questionable.

As this Court is well aware, a principal method by which the United States government and other foreign states seek to deny financial resources to terrorist organizations, including those who sponsor them or act on their behalf, has been the imposition of asset-blocking orders and related economic sanctions. *See* Exhibit 8 (stating that the U.S. and Saudi Arabia are taking joint action "to publicly identify and freeze the assets of terrorists and their supporters"). Indeed, by Jelaidan's own acknowledgement in his discovery responses, at least three financial institutions have blocked assets linked to him following his 2002 designations – Faisal Finance, Al Rajhi Bank, and Habib Bank.

In conjunction with their determination to freeze problematic accounts, participating banks routinely provide official notification of their actions to named account holders, beneficiaries, and persons with signatory authority. For example, Faisal Finance notified Jelaidan of the bank's decision to freeze Account No. x0409 in a September 2002 letter to the

defendant, attached hereto as Exhibit 24. Habib Bank also advised Jelaidan of the freezing of six Rabita Trust accounts identified in Section B(5), leading to him ask the bank to reconsider its decision. *See* Exhibit 6. Moreover, other designated defendants in this litigation have received documented notice that their bank accounts were frozen as a result of U.S. and U.N. designations. In a December 14, 2006 letter to the IIRO, the Bank of Philippines Islands notified the Saudi charity that its account at the bank was ordered frozen. *See* Exhibit 25.

In response to Plaintiffs' Request No. 8 seeking documents relating to accounts at Al Rajhi Bank, the defendant fully acknowledges that his account at the bank was frozen, but produces no documentation to that effect. *See* Exhibit 2, p. 7. Surely he received some form of official notification from Al Rajhi Bank, the Saudi Arabian Monetary Authority ("SAMA"), and/or the Kingdom itself advising him of the bank's actions and the reasons for doing so. *See* Exhibit 26 (July 25, 2003 article from the Saudi newspaper, Ain Al Yaqeen, reporting that the Kingdom of Saudi Arabia took steps to freeze the assets of Jelaidan, a close aid to Osama bin Laden who funneled money to al Qaeda). Similarly, Habib Bank and/or the State Bank of Pakistan must have sent official notice to Jelaidan that it was freezing the six Rabita Trust accounts and the account he holds jointly with Osama bin Laden. The defendant has failed to produce any such documentation and this Court should compel Jelaidan to produce all responsive materials relating to *all* accounts, assets, and/or monies that were seized and frozen by the United States, Saudi Arabia, other foreign states, and financial institutions following his September 2002 designations.

In addition to the freezing of assets, other types of sanctions have been effectively imposed upon terror financiers such as Jelaidan. Sanctions such as travel restrictions, seizure of passports, and home detention are known to have been used by the host government where the designee resides and/or does business. In the instant case, it is implausible to believe that the Saudi government and other governments and institutions implementing the U.N. mandated sanctions as to Jelaidan failed to provide any form of official notification and/or explanation to Jelaidan (a Saudi citizen and long-time official to several of the Kingdom's global charities) in relation to his September 2002 designations. Plaintiffs have yet to receive any such documentation. Accordingly, Jelaidan should be compelled to produce all documents relating to any and all types of sanctions imposed upon him by the Kingdom of Saudi Arabia or any other foreign state.

### E. Jelaidan Should Be Compelled To Specifically Identify Any Documents Responsive To Plaintiffs' Requests That Have Been Lost, Discarded Or Destroyed (Or Seized)

Jelaidan's boilerplate objection to the production of documents that are no longer in his physical "possession" also fails to meet his obligation to identify any responsive documents that have been lost, discarded or destroyed, and describe the circumstances under which those responsive documents were lost, discarded, or destroyed. In this regard, Plaintiffs' Requests for Production of Documents directed to defendant Jelaidan included the following specific instruction:

> If any documents requested herein have been lost, discarded, destroyed or otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing disposal and person disposing of the document.

*See* Exhibit 1, p. 3.

The Definitions section of Plaintiffs' document requests to defendant Jelaidan, fully consistent with Local Rule 26.3(c)(4), go on to state as follows:

> The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s).

*Id.*, p. 5.

Although Jelaidan has generically denied that responsive materials are currently in his "possession," he has failed to indicate in his responses whether responsive documents were at one time within his care, custody, or control, but were at some point lost, destroyed, or discarded. That information, as well as information sufficient to identify the nature of the documents, its disposition, and perhaps its current custodian, is absolutely necessary to determine whether Jelaidan has engaged in any spoliation of evidence, and to determine whether responsive documents may be available from another source. Accordingly, Plaintiffs' respectfully request the Court direct Jelaidan to comply with the instructions in Plaintiffs' documents requests, and identify any responsive documents that were at any point within his care, custody, or control, and to describe the circumstances under which any such documents were lost, destroyed, discarded, or seized.

### F. The Temporal Scope Of Discovery Concerning Defendant Jelaidan Should Extend To Periods Prior To 1992

As discussed in Section I(A) above, Judge Daniels previously issued an Order setting 1992 as the presumptive starting point for discovery in this litigation. However, in issuing that Order, Judge Daniels made clear that discovery concerning information and activities relating to earlier periods may be appropriate upon a "showing of relevance as to a particular issue or defendant." *See* Order, MDL Docket No. 2059, December 21, 2007. With regard to defendant Jelaidan, the extension of discovery to earlier periods is singularly appropriate.

As the United States government's public declarations concerning Jelaidan make clear, he is a founding member of al Qaeda, and a close and long-term associate of Osama bin Laden. Defendant Jelaidan's own counsel has confirmed that his client's relationship with Osama bin Laden predates 1992, acknowledging during a prior hearing in these proceedings that "Wael Jelaidan, your Honor, was very important in Afghanistan. He headed up the refugee mission,

and he got to know, among other things, Osama bin Laden very well." *See* April 12, 2011 Discovery Hearing Transcript, pp. 40-41.

Significantly, the U.S. government has asserted, and Plaintiffs have alleged, that Jelaidan was instrumental in assisting bin Laden adapt the support network established to support the Afghan jihad into a global infrastructure to support al Qaeda's jihad against the United States. To that end, Jelaidan is alleged to have used bank accounts under his control, and the charities for which he worked, as tools to channel financial and other forms of support to al Qaeda from that organization's inception.

Given his status as a founding member of al Qaeda, and his role in adapting the Afghan support network into a global infrastructure to support al Qaeda's jihad against the West, Plaintiffs respectfully submit that discovery as to Jelaidan should presumptively extend to 1988, the year in which al Qaeda was founded. In addition, at least with respect to certain facts and issues, such as Jelaidan's relationship with bin Laden, the extension of discovery to periods prior to 1988 would be appropriate. However, for purposes of the documents at issue in the present Motion, Plaintiffs at this time merely request an Order directing Jelaidan to provide documentation from the period between 1988 and 2004. Plaintiffs reserve their right to request documents and information pertaining to the subject matter of this motion for earlier and later periods, after they have reviewed the responsive materials from defendant Jelaidan.

### III. CONCLUSION

As the foregoing demonstrates, Plaintiffs have legitimate concerns that defendant Jelaidan is deliberately withholding the production of responsive documents and information. Accordingly, intervention by this Court is now necessary and Plaintiffs respectfully request that the Court order the defendant to immediately to produce all responsive materials.

Respectfully submitted,

*MDL Plaintiffs' Executive Committees*

THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

The Honorable Frank Maas
October 17, 2011
Page 24

---

cc:    Sean P. Carter, Esq.
       J. Scott Tarbutton, Esq.
       Robert T. Haefele, Esq.
       Jodi Westbrook Flowers, Esq.
       John M. Eubanks, Esq.
       James P. Kreindler, Esq.
       Andrew J. Maloney, Esq.
       Jerry S. Goldman, Esq.
       Martin F. McMahon, Esq.
       Alan Kabat, Esq.

PHILADELPHIA\6053428\1 117430.000