# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(FM)<br><br>ECF Case |

This document relates to:

*Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al., No. 03 Civ. 9849*
*Federal Insurance Co., et al. v. Al Qaida, et al., No. 03 Civ. 6978*
*Ashton, et al. v. Al Qaeda Islamic Army, et al., Case No. 02 Civ. 6977*
*Estate of O'Neill v. Al Baraka Investment & Development Corp., 04-CV-1923*
*Euro Brokers Inc., et al., v. Al Baraka, et al., No. 04 Civ. 7279*
*Continental Casualty Co., et al. v. Al Qaeda, et al., No. 04 Civ. 5970*
*Cantor Fitzgerald Associates, LP v. Akida Investment Co., Ltd., 04-CV-7065*

## PLAINTIFFS' MOTION FOR SANCTIONS AS TO CHARITY OFFICIAL DEFENDANTS ABDULLAH OMAR NASEEF, ABDULLAH BIN SALEH AL OBAID, ABDULLAH MAHSEN AL TURKI, ADNAN BASHA, AND SOLIMAN AL-BUTHE

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    BACKGROUND AND PROCEDURAL HISTORY ................................................................2

    A.    The previous motions to compel the charity official defendants ................................ 3

    B.    The Court's previous rulings as to the Charity Official Defendants ......................... 5

    C.    Productions after the March 22, 2016 hearing ..................................................... 6

    D.    Productions after the September 7, 2017 hearing ................................................. 8

        1.    Mr. Al-Buthe ..................................................................................... 8

        2.    Drs. Al-Turki, Al-Obaid, and Naseef ...................................................... 8

        3.    Dr. Basha ......................................................................................... 9

III.    ARGUMENT ..............................................................................................................10

    A.    Rule 37(b)(2) authorizes the Court to impose a range of sanctions on the five charity official defendants for failing to obey the Court's orders authorizing discovery. ...............................................................................10

    B.    The Four MWL/IIRO charity official defendants should be sanctioned for their failure to produce their passports. ......................................................11

    C.    All five charity official defendants should be sanctioned because the certifications of all five charity official defendants fall far short of what the Court ordered the defendants to provide. ......................................................13

    D.    All five charity official defendant should be sanctioned because the certifications provided do not meet the statutory requirement. ................................16

    E.    All five charity official defendant should be sanctioned because none of them have provided a privilege log identifying responsive documents that have been withheld in discovery ......................................................................16

IV.    CONCLUSION ..........................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on September 11, 2001*),
   714 F.3d 659 (2d Cir. 2013)..................................................................................... 2, 12

**STATUTES**

28 U.S.C. § 1746............................................................................................... 1, 15, 16

**RULES**

Fed. R. Civ. Proc. Rule 34 ........................................................................................ 15

Fed. R. Civ. Proc. Rule 37 ......................................................................... 1, 10, 17, 18

## I.  Introduction

The Plaintiffs' Executive Committees ("PECs") request that the Court enter an order, under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure and the Court's inherent powers, sanctioning defendants Abdullah Omar Naseef, Abdullah bin Saleh Al-Obaid, Abdullah Mohsen Al-Turki, Adnan Basha and Soliman Al-Buthe ("the charity official defendants") for each defendant's failure to comply with this Court's discovery orders of March 22, 2016 (*see* Exhibit A,[1] Transcript of Mar. 22, 2016 hearing at 84-85) and September 8, 2017 (*see* Exhibit B, Transcript of Sept. 7, 2017 hearing, at 10-13).  At the March 22, 2016 hearing, the charity official defendants were each instructed to provide a "sworn or affirmed certification" that he had "produced all documents responsive to the [plaintiffs' discovery] requests" and to identify any withheld documents on a privilege log. A specific item the Court ordered each defendant to produce is their passports.  At the September 7, 2017 conference, the Court reiterated the earlier direction for the five charity official defendants to provide the certifications, passports, and privilege logs, setting an October 6, 2017 deadline, or they would face sanctions.

Because, as of the writing of this motion, the charity official defendants have not complied with the Court's orders, plaintiffs request that the Court impose sanctions.  Aside from Mr. Al-Buthe, no defendant has produced a passport.  And though defendants Al-Buthe, Al-Obaid, and Basha have each provided a document labelled a certification, none of the "certifications" provide the information the Court required and none are sworn or affirmed or meet the statutory requirements for unsworn declarations required under 28 U.S.C. § 1746, thus making the documents essentially worthless. Defendants Naseef and Al-Turki have provided no certification at all.  Finally, no defendant has produced a privilege log.

---

[1] The exhibits cited herein are attached to the Declaration of Robert T. Haefele, dated October 6, 2017.

## II.      Background and Procedural History

In April 2013, the Second Circuit Court of Appeals remanded all five charity official defendants for jurisdictional discovery.  *O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on September 11, 2001*), 714 F.3d 659, 678-679 (2d Cir. 2013).  Defendants Naseef, Al-Obaid, and Al-Turki all served as senior officials of defendant Muslim World League (MWL).  Dr. Basha served as a senior official of defendant International Islamic Relief Organization (IIRO), a MWL subsidiary.  Soliman Al-Buthe, who remains criminally indicated and designated by the United State as a Specially Designated Global Terrorist (SDGT), served as a senior official of defaulted defendant Al Haramain.  The Second Circuit authorized jurisdictional discovery concerning plaintiffs' allegations that the charity official defendants "controlled and managed some of [the purported charitable organizations that allegedly supported al Qaeda] and, through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States." *Id.*

Plaintiffs served jurisdictional discovery requests on August 22, 2013.  In addition to seeking documents accessible to the charity official defendants from the charity's files, the requests also sought documents more likely found in the individual defendants' files.  For example, requests to Mr. Al-Buthe sought his passports and personal accounting and financial account and transaction documents (*see, e.g.,* Exhibit C, Al-Buthe Request Nos. 17, 19, 48, 59, 60, 64).[2]  And for example, requests to the other charity official defendants sought passports, visas, or other documents authorizing each defendants' travel worldwide (*see, e.g.*, Exhibit D, Naseef Request Nos. 20, 89, 90; Exhibit E, Al-Obaid Requests Nos. 24, 96, 97; Exhibit F, Al-Turki Requests Nos.

---

[2] *See also* Exhibit H, Aug. 31, 2017 Letter of Robert T. Haefele, ECF No. 3713, summarizing the discovery requests served on Mr. Al-Buthe into nine categories.

27, 103, 104, Exhibit G, Basha Requests Nos. 20, 93, 94), as well as financial account documentation personally accessible to the charity official defendants (*see, e.g.*, Exhibit D, Naseef Request No. 98; Exhibit E, Al-Obaid Request No. 105; Exhibit F, Al-Turki Request No. 112; Exhibit G, Basha Request Nos. 102).  The five charity official defendants initially responded by asserting numerous objections and arguing that the documents sought were wholly under the control of the charities themselves.

### A.     The previous motions to compel the charity official defendants

In August and September 2015, plaintiffs filed motions to compel discovery from the five charity official defendants.  On August 10, 2015, plaintiffs filed a motion as to the criminally indicted SDGT Al-Buthe (ECF No. 2990, 3111), arguing that he had interposed only objections and produced no documents.  On September 2, 2015, plaintiffs filed a motion as to defendants Naseef, Al-Obaid, Al-Turki, and Basha (ECF Nos. 3024, 3129).  Before the motion to compel, the four MWL/IIRO-related charity official defendants had collectively produced only 84 documents, and the few documents that had been produced consisted principally of affidavits and other documents they previously filed with the Court in 2003 and 2005 in support of their initial motions to dismiss.

The central premise of all five defendants' oppositions to plaintiffs' motions was that none of them were personally in possession of any records relating to their roles as officials at the relevant charities, and they each were relying upon the productions of those charities to satisfy their distinct discovery obligations.  In short, each of the five argued that they had not retained a single piece of information – not a commendation, a photo, a media account, or a single piece of paper – from their respective tenures with some of the world's most prominent Islamic organizations.

The PECs responded, arguing (1) that each charity official defendant had an independent obligation and the practical ability to facilitate the charities' production of relevant and responsive documentation, and (2) that the individual charity officer defendants' claims that none of the five had access to *any* relevant and responsive records apart from the charities' records was implausible.   At oral argument on March 22, 2016, for example, plaintiffs explained that the positions the charity official defendants held were prominent roles in the world's largest Islamic institutions, in relation to which the individual officials traveled throughout the world, often in the company of senior Saudi government officials, and participated in and gave speeches at high profile international events and conferences.  *See* Exhibit, A, Transcript of March 22, 2016 Hearing at 71-72.   Plaintiffs expressed skepticism that the individual officials had retained *nothing* commemorating such prominent work – again, no commendations, photographs, media accounts, etc.   At a minimum, the PECs noted, the individual defendants' passports would reflect travel undertaken during their service with the organizations, and should have been produced in response to plaintiffs' requests.

Each of the defendants sought to avoid other relevant areas of discovery that obligated them to produce documents unlikely to be in the organization's records – e.g., passports, financial records, and records of regarding the individuals' activities with other implicated organizations. For example, in addition to being officers of MWL, defendants Naseef, Al-Obaid, and Al-Turki have all held positions in other organizations that are likely sources of relevant documents. Defendants Naseef and Al-Obaid had been a founder and officer, respectively, of defaulted defendant Rabita Trust, a United States designated terrorist organization.  Dr. Al-Obaid was also an officer of various Sanabel entities that were previously defendants in these proceedings, but certified that they no longer had any records from the relevant time period.  Dr. Al-Turki served

from 1993 to 1999 as Saudi Minister of Islamic Affairs, where he had supervisory authority over all of the Saudi proselytizing organizations. *Id.* at 67-68. Similarly, although Mr. Al-Buthe has identified responsive documents from the collection produced by al-Haramain's now defunct United States office, he was also affiliated with the entity's office in Saudi Arabia, which declined to engage in discovery and was defaulted. Mr. Al-Buthe has also held a governmental position in Riyadh where he reported to a member of the Saudi royal family.

### B.     The Court's previous rulings as to the Charity Official Defendants

At the March 22, 2016 hearing, Judge Maas directed the four MWL/IIRO charity official defendants to provide a "***sworn or affirmed certification*** . . . that except to the extent to which they have specified that a document is being withheld, they have produced all documents responsive to the requests unless those documents are part of the productions of the MWL or IIRO." *Id.* at 85 (emphasis added). To comply, the defendants needed to produce *all* responsive documents – including, inter alia, their passports and financial data – or identify the withheld documents on a privilege log. *Id.* The Court rejected defense counsel's request to limit the certifications to areas unilaterally deemed by them to be relevant to jurisdictional discovery. Instead, the Court ordered that the certifications apply to all documents sought by plaintiffs' discovery requests.[3] Notably, Judge Maas recognized that the defendants' passports were responsive to several of plaintiffs' requests and "would seem to be something the charities would not have produced." *See id* at 84.

---

[3] The Court limited the declarations in one respect – namely, the defendants were not be obligated to produce documents related to the Golden Chain. However, defendant were obligated to produce documents related to individuals identified in the Golden Chain. Compare Exhibit A, Transcript of Mar. 22, 2016 hearing at 77 ("I'm not going to require the production of any documents related to the golden chain so we can move on from there) with Transcript of Mar. 22, 2016 hearing at 87-88 (agreeing that production must include documents as to "people on the golden chain other than the contributors, for instance Wael Jelaidain [and] Osama Bin Laden. . . .")

During that March 22, 2016 hearing, the Court ruled regarding the motion to compel discovery from Mr. Al-Buthe.  The Court overruled Mr. Al-Buthe's objections and ordered as follows:  "I am going to require production of the documents that the plaintiffs seek as well as a certification that Mr. Al-Buthe has produced all the responsive documents in his possession, custody or control."  *Id*. at 113:19-22.

During the September 7, 2017 hearing, the Court ordered all five charity official defendants to provide the sworn or affirmed certifications that the Court had previously ordered the defendants to provide and directed the four MWL/IIRO charity official defendants to produce their passports. Transcript of Sept. 7, 2017 hearing at 11-13.  The Court expressed its expectation that the charity official defendants would obtain certified copies of their passports from the relevant government entities.  *Id*. at 11.  When counsel for the MWL/IIRO charity official defendants sought to excuse their non-compliance, the Court explained that "You've been ordered to produce these documents. You failed to do so.  . . . I'll give you time to have one last opportunity . . . to produce these documents, but . . . if they aren't produced within the next 30 days, I am going to invite a sanctions motion from the Plaintiffs' Executive Committee[s]."  *Id*.  The Court also reaffirmed all five defendants' obligation to produce privilege logs identifying any documents the defendants were withholding.  *Id*. at 12.

## C.    Productions after the March 22, 2016 hearing

On June 2, 2017, counsel for the MWL and IIRO officials sent a letter to plaintiffs' counsel enclosing indices for defendants Al-Turki, Al-Obaid, Naseef, and Basha, identifying documents within the productions of the MWL and IIRO that the individual defendants had determined to be responsive to the discovery requests directed to those individual defendants.  Exhibit I, June 2, 2017 Letter from Alan Kabat enclosing indices.  In that letter, those defendants acknowledged the MWL and IIRO had not yet completed their document productions, and that the indexes would

have to be supplemented upon completion of those productions.  The charity official defendants'
counsel, Mr. Kabat, expressed his expectation to complete the necessary review and
supplementation of the index "within one week of the completion of the MWL and IIRO's final
production."  *Id.*

In that same letter, Mr. Kabat advised that "we understand that the individual defendants
do not themselves have documents relating to their work at the charities, as those documents
remain with the charities after their retirement."  *Id.*  On the basis of this representation, plaintiffs
understood that the individual charity official defendants were maintaining their position that they
are not in possession of any responsive documents (including their passports), other than the 84
documents they have collectively produced to date.

As to Judge Maas' directive that the individual charity officials produce their passports,
Mr. Kabat represented that "since they traveled on official passports, which the government
retained after each trip, they do not have personal possession of those passports."  *Id.*  The PECs
understood this statement to indicate that the individual charity officials traveled on government
or diplomatic passports in their capacities as the heads of the MWL and IIRO, and that the Saudi
government retained possession of those governmental or diplomatic passports.

On June 14, 2017, more than a year after the Court's unambiguous direction to produce *all*
of the documents plaintiffs requested and to certify that he had done so, Mr. Al-Buthe produced a
set of documents accompanied with an interposed slate of objections that the defendant had long
ago waived and that the Court had explicitly overruled at the March 22, 2016 hearing.  Exhibit J,
June 14 2017 Letter from Kabat regarding Al-Buthe production.  And, although Mr. Al-Buthe
produced passports, he did not provide the sworn or affirmed certification that the Court had
ordered him to provide to certify under oath that he had produced all responsive documents in his

care, custody, or control.  Nor did he provide a log identifying responsive documents that he had withheld.

The PECs raised various defects in the defendants' responses and productions following the March 22, 2016 hearing in their letter of August 31, 2017 (ECF No. 3713), and at the conference on September 7, 2017 the Court directed the defendants to take steps to bring themselves into compliance with the Court's prior orders or face sanctions.

### D.    Productions after the September 7, 2017 hearing

Since the September 7, 2017 hearing, three of the charity official defendants – namely, Mr. Al-Buthe, Dr. Al-Obaid, and Dr. Basha – have provided documents labelled certifications. Defendants Naseef and Al-Turki have not provided certifications.  Aside from the passports of Mr. Al-Buthe (which had been produced prior to the hearing), none of the four MWL/IIRO charity official defendants have produced passports.   None of the defendants have produced a log identifying any responsive documents that they have withheld from their productions.

#### 1.    Mr. Al-Buthe

Under cover letter dated September 26, 2017 (Exhibit K), Mr. Al-Buthe produced a document titled "Certification of Soliman H. Al-Buthe," dated September 26, 2017, with a signature that purports to be Mr. Al-Buthe's.  The certifications states:

> I, Soliman H. Al-Buthe, hereby certify that I have searched for and produced (through my attorneys) all non-privileged document *that are relevant for jurisdictional discovery* and responsive to the plaintiffs' jurisdictional discovery document requests.  These include documents that were previously produced by the Al Haramain Islamic Foundation, Inc. (USA).

Exhibit K (emphasis added).

#### 2.    Drs. Al-Turki, Al-Obaid, and Naseef

Defendants Al-Turki, Al-Obaid, and Naseef sent two letters since the September 7, 2017 hearing.  On September 26, 2017, defendants Al-Turki, Al-Obaid, and Naseef produced a

supplemental index sourcing documents from the MWL production to plaintiffs' discovery requests. The indices did not identify or otherwise include the defendants' passports, their personal financial accounts, nor any documents not in MWL files. In a letter dated October 5, 2017 (Exhibit L), counsel for Dr. Naseef and Dr. Al-Turki indicates that, notwithstanding the Court's orders to do so, neither of those defendants has provided any certification or supplemental documentation, including their passports. Dr. Al-Obaid produced a document titled "Certification of Dr. Abdullah Bin Saleh Al-Obaid," dated October 4, 2017, with a signature that purports to be Dr. Al-Obaid's. The certification states:

> I, Dr. Abdullah Bin Saleh Al-Obaid, hereby certify that, as a long-retired Secretary-General of the Muslim World League (MWL) (having served from 1995 to 2000), I no longer have access to the MWL's files and archives.

> I further certify that, though my attorneys, I have produced all documents responsive to the document requests, including both the documents that are available to me, and the documents that were part of the productions of the MWL and the International Islamic Relief Organization.

Of note, the covering letter from counsel enclosing that certification stated that the certification confirms that he has "produced the responsive documents that he has *that are relevant to jurisdictional discovery*." Exhibit L (emphasis added).

### 3. Dr. Basha

Under cover letter dated September 26, 2017 (Exhibit M), Dr. Basha produced a document titled "Certification of Dr. Adnan Basha," dated September 19, 2017, with a signature that purports to be Dr. Basha's, and a supplemental index sourcing documents from the IIRO production to discovery requests plaintiffs served on Dr. Basha. The certification states:

> I, Dr. Adnan Basha, hereby certify that, prior to my recent retirement as the Secretary-General of the [IIRO], I directed my assistants to guide the IIRO's attorneys through the IIRO's files and archives, and I ensured that the attorneys had full access to the IIRO's files and archives.

I further certify that, through my attorneys, I have produced all document responsive to the document requests, including both the documents that are available to me, and the documents that were part of the productions of the Muslim World League and the IIRO."

Under cover letter dated October 2, 2017 (Exhibit N), Dr. Basha produced another document titled "Declaration of Dr. Adnan Basha," dated September 30, 2017, with a signature that again purports to be Dr. Basha's.  The declaration states:

> Under penalty of perjury, I attest to the following is true:
>
> 1. I, Dr. Adnan Basha, hereby provide the following information on my travels to the United States of America from 1992 through 2002.
> 2. I made two family vacation trips to Orlando, Florida in July 1997 and August 1999, accompanied by my wife and our four children.
> 3. In June 2001, I made a trip to New York to attend the meetings of the Special Committee of the United Nations General Assembly concerning children, and was accompanied by my two daughters.
> 4. I do not have my passports for that time period, and the above information is from my memory.

## III.    Argument

### A.    Rule 37 (b)(2) authorizes the Court to impose a range of sanctions on the five charity official defendants for failing to obey the Court's orders authorizing discovery.

Federal Rule of Civil Procedure 37(b)(2) authorizes the Court to impose sanctions "[i]f a party . . . fails to obey an order to provide or permit discovery.  Among the sanctions permitted under Rule 37 are:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)  striking pleadings in whole or in part;
>
> (iv)   staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part;

(vi)   rendering a default judgment against the disobedient party; or

(vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

In this instance, all five of the charity official defendants have failed, in at least one respect, to obey the Court's orders to produce their passports, certifications, and privilege logs. All five were ordered to produce their passports; only Mr. Al-Buthe complied with that direction. All five were ordered to provide logs identifying responsive documents withheld from production; no defendant provided such a log.   All five were ordered to provide sworn or affirmed certifications.  Two of the defendants, Drs. Nassef and Al-Turki, did not provide any certifications. The remaining three, Mr. Al-Buthe, Dr. Obaid, and Dr. Basha, provided documents titled "certifications" but they did not comply with the Court's requirements, thus evading their very purpose, and they do not comply with the federal statute for such certifications.  In short, the documents are worthless nullities.

In light of each charity official defendants separate failures to obey the Court's orders, plaintiffs request that the Court impose sanctions on each.

**B.      The Four MWL/IIRO charity official defendants should be sanctioned for their failure to produce their passports.**

During both the March 22, 2016 and the September 7, 2017 hearings, the Court was abundantly clear that the defendants were to produce their passports. Indeed, in the more recent hearing, the Court made the point abundantly clear, stating "You've been ordered to produce these. You failed to do so. . . .  [I]f they aren't produced within the next 30 days, I am going to invite a sanctions motion."  Exhibit B, at 11.  Not only has none of the four MWL/IIRO charity official defendants produced his passport, but none has offered an explanation as to what efforts were made to try to obtain their passport.  Inasmuch as the four defendants have flat out failed to obey the Court's order to produce the documents, sanctions are warranted.

11

In the recent cover letters from counsel for the four MWL/IIRO charity official defendants, counsel has offered some information from some of the defendants concerning their travels to the United States.  Dr. Basha had offered an additional declaration identifying several trips he took to the United States.  The suggestion, though not necessarily explicit, seems to be that the information offered regarding their trips to the United States should satisfy their obligation to produce their passports because only their trips to the United States have any jurisdictional relevance (presumably in a general jurisdiction context).

But the suggestion that only those trips to the United States are relevant is completely at odds with the plaintiffs' specific jurisdiction approach to these defendants, at odds with the jurisdictional discovery authorized by the Second Circuit, at odds with the specific requests that were before the Court during the March 22, 2016 hearing, and at odds with the Court's order for the defendants to produce their passports.

As indicated in the Second Circuit's decision, the jurisdictional issue as to these defendants is tied to their alleged activities of directing conduct at the United States by using their positions of control to provide material support to al Qaeda.  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d at 678.  As a result, the Circuit Court authorized jurisdictional discovery concerning plaintiffs' allegations that the charity official defendants "controlled and managed some of [the purported charitable organizations that allegedly supported al Qaeda] and, through their positions of control, they allegedly sent financial and other material support directly to al Qaeda when al Qaeda allegedly was known to be targeting the United States."  *Id*.  The particular requests that concerned defendants' passports did not, as defendants suggest, address their travels solely to the United States as a premise to general jurisdiction.  The requests inquired into the defendants' activities in their respective positions of control, principally with the respective charities, and

12

engagements they may have had in those capacities with al Qaeda. For example, historical documents relating to al Qaeda's founding indicate that defendant Naseef, who was Secretary General of the MWL at the time, was present at a founding meeting of bin Laden's terror organization. Thus, the inquiries the Court directed the defendants to address by producing their passports sought information about the defendants' travels worldwide, but especially to locations of activity for the defendant charities and al Qaeda.

In short, the defendants' suggestion that their obligations to produce the passports can be satisfied by offering various indications within MWL or IIRO records (or in a separate declaration from Dr. Basha) about their trips to the United States, is an exercise in deflection that merely serves to underscore their lack of regard for this Court's orders.

### C. All five charity official defendants should be sanctioned because the certifications of all five charity official defendants fall far short of what the Court ordered the defendants to provide.

The Court clearly instructed each charity official defendant to provide a "**sworn or affirmed** certification" that he had "produced all documents responsive to the [plaintiffs' discovery] requests." Exhibit A, Transcript of Mar. 22, 2016 hearing at 85.

Defendants Naseef and Al-Turki must be sanctioned because neither has provided a certification. Counsel for Drs. Naseef and Al-Turki may argue that their failures should be excused due to the two defendants' unavailability since the September 7, 2017 hearing, but when asked at the September 7, 2017 hearing, counsel expressed an expectation to be able to provide the certifications for each of the defendants "within a week or two." Exhibit B, Transcript of Sept. 7, 2017 hearing at 12. Moreover, their unavailability in the past 30 days does not excuse their failure to provide a certification they have been obliged to provide since March 2016, more than a year and a half ago. The lack of availability of these two defendants for over a year and a half would strongly imply that they may no longer be participating in their defense, a circumstance that would

warrant the Court entering a default here as the Court has previously done in two other circumstances in this MDL.  *See* ECF No. 2851 (ordering entry of default judgment against Rabita Trust after counsel had been unable to identify any representative of the entity with whom he had contact); ECF No. 3311 (ordering entry of default judgment against Sanabel when counsel was unable to contact a representative for more than a year.)

Although the other three charity official defendants provided documents titled "certification," all three of their certifications are completely deficient, leaving gaping holes for the defendants to continue precisely that same evasive conduct that prompted the Court to require the certifications.  Because the deficiencies enable the defendants to withhold documents by unilaterally deeming them beyond the scope or not relevant to jurisdictional discovery, the "certifications" are effectively a nullity.

The certifications became necessary because the defendants' discovery responses evinced a pattern that indicated a likelihood that they were either not being appropriately aggressive in searching for documents or they were circumscribing their productions based on their unilateral determinations as to what fell within the proper scope of jurisdictional discovery.  To address the issue, Judge Maas ordered each defendant to certify (in a sworn or affirmed document) that the defendant had conducted a reasonable search and produced all documents in the defendants' control.  When the defendants tried to limit the certification to "anything to do with jurisdictional discovery," the Court rejected the limitation and required the defendants to address whether they had produced all documents as to all of plaintiffs' requests.  Exhibit A, Transcript of Mar. 22, 2016 hearing at 86-87.

Review of the three "certifications" that have been offered demonstrate the following gaping deficiencies:

14

First, the "certifications" should be considered in light of their accompanying cover letters which indicate that each of the defendants are making their productions "without waiving [their] prior objections."  Given that a central objection that each defendant asserted was that plaintiffs' requests went beyond the proper scope of jurisdictional discovery, is wholly unclear from the "certifications" whether defendants' searches and productions were artificially circumscribed to exclude documents based on that objection.  Indeed, the certification provided by defendant Al-Buthe is expressly limited to documents "relevant to jurisdictional discovery," and the cover letter accompanying defendant Al-Obaid's contains similar limiting language.  Those limitations are in direct conflict with the Court's order expressly rejecting the defendants' counsel's request to limit the certifications to documents the defendants deemed relevant to jurisdictional discovery.

Second, a central reason for the Court requiring the certifications was to bring the defendants in compliance with the provision within Rule 34 of the Federal Rules of Civil Procedure that requires "an objection must state whether any responsive materials are being withheld on the basis of the objection."  *See* Exhibit A, Transcript of Mar. 22, 2016 hearing at 85.  Because neither the Court nor the plaintiffs were able to determine whether the defendants had withheld any documents (and if so, what was withheld and why) the Court required the certifications.  But the information within the certifications, especially because the defendants continue to re-assert their objections, does nothing to clarify whether documents were withheld.

Third, none of the "certifications" afford any assurance that the defendants understood that failure to tell the truth carried any consequence.  Nothing on the face of the documents even makes clear that the signatories agreed to be truthful.  *See also* Section II.D., below regarding the certifications' non-compliance with 28 U.S.C. § 1746.

Fourth, to the extent that the "certifications" purport to certify that the defendants have produced all documents available to the witness, nothing in the documents purport to explain the absence of documents that were presumably more available (or exclusively available) to the defendants, such as document that related to their positions outside of MWL and IIRO (including positions with, among others, Rabita Trust, a designated terrorist organization, and with the Saudi Kingdom itself); their personal accounting and financial documents; or commendations, photos, or media reports of any activity in which they were involved while they were in positions with some the world's foremost Islamic charities, who often interacted with world leaders.

**D.**   **All five charity official defendant should be sanctioned because the certifications provided do not meet the statutory requirement.**

The three certifications that have been offered, from Mr. Al-Buthe and Dr. Al-Obaid and two from Dr. Basha, do not comply with 28 U.S.C. § 1746.  Under § 1746, unsworn declarations executed outside the United States (plaintiffs understand each of the declarations were executed overseas) must contain a statement that states in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)."  The certifications offered do not contain language substantially similar to what is identified in the statute, particularly inasmuch as nothing in the text of the certification indicates that the signatory of the document has signed the document "under penalty of perjury under the laws of the United States of America."  Nor does the certification state that the statements are "true and correct."

**E.**   **All five charity official defendant should be sanctioned because none of them have provided a privilege log identifying responsive documents that have been withheld in discovery.**

Though the defendants would not be obligated to provide a log if no documents have been withheld, their coy approach to the certification process has made it impossible to determine

16

whether any documents have been withheld.  If any documents have been withheld, even if they were not produced due to a defendants' unilateral view that they fall outside the scope of what they deem is proper jurisdictional discovery, then the defendant has violated the Court's order.  Again, a central purpose for the Court's approach was to flag whether documents were being withheld and the reason for their withholding.

## IV.   Conclusion

Because all of the defendants have disobeyed the Court's orders in at least one regard, plaintiffs request that, under Rule 37(b)(2)(A) and the Court's inherent powers, the Court impose sanctions on each of the charity official defendants.  Mr. Al-Buthe has not provided a certification that complies with the Court's order, nor has he provided a log of responsive documents that have been withheld.  Dr. Obaid and Dr. Basha have not provided certifications that comply with the Court's order, nor have they provided their passports or a log of responsive documents that have been withheld.  Dr. Naseef and Dr. Al-Turki have not provides their passports, certifications, or logs.

Among the sanctions plaintiffs ask the Court to impose on Mr. Al-Buthe are:

- Ordering Mr. Al-Buthe to re-submit a sworn or affirmed certification that complies with the Court's previous orders
- Imposing costs and reasonable attorney fees for the legal proceedings necessary to bring Mr. Al-Buthe in compliance with his discovery obligations;
- Treating the defendants' refusal as an act of contempt (Rule 37(b)(2)(A)(vii); and
- Such other sanctions as the Court may deem appropriate.

Among the sanctions plaintiffs ask the Court to impose on the four MWL/IIRO charity official defendants are:

- Striking the MWL/IIRO charity official defendants' objections in their entirety and ordering them to produce every responsive document;
- Ordering the MWL/IIRO charity official defendants' to re-submit sworn or affirmed certifications that comply with the Court's previous orders

- Ordering clarification as to the continued participation of defendants Al-Turki and Naseef, including when they were last responsive to counsel's communication;
- Imposing costs and reasonable attorney fees for the legal proceedings necessary to bring the defendants in compliance with their discovery obligations;
- Treating the defendants' refusal as an act of contempt (Rule 37(b)(2)(A)(vii)); and
- Such other sanctions as the Court may deem appropriate.

Respectfully Submitted,

Dated:  October 6, 2017

/s/ Robert T. Haefele
Jodi W. Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050
New York, New York 10165
Tel:  (212) 944-2200

18

Christopher T. Leonardo, Esq.
ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South
Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*