# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001,

v. 03 MDL 1570 (FM)

------------------------------x

New York, N.Y.
March 22, 2016
10:20 a.m.

Before:

HON. FRANK MAAS,

Magistrate Judge

document requests and are producing documents, and that plaintiffs should look exclusively to those productions in relation to the discovery we are seeking from the individuals.

Obviously, your Honor, the rules require that the defendants respond individually to the document requests directed to them and the fact that other defendants may or may not be producing documents relating to the same areas of inquiry does not relieve them of their independent discovery obligations.

The related problem is that even if a party to litigation could rely on the separate discovery responses of another party to satisfy its obligations, the reality is that many of the charities these officials had roles in are not meaningfully participating in discovery at all. So, for example, your Honor, Abdullah Naseef was not merely the secretary of the Muslim World League, he also founded Rabidi Trust and that, your Honor will recall, was designated by the United States government, failed to participate in discovery in the case, and was ultimately defaulted by this Court.

Naseef also had relationships with individuals of considerable interest. For example, he was responsible for appointing Wael Jelaidain to his position in the Muslim World League; also responsible for appointing Osama Bin Laden's brother-in-law, Mohammed Jamal Khalifa to the designated IIRO

branch in the Philippines. Abdullah Bin Saleh Obaid was, in addition to his secretary of Muslim World League also an officer of Rabidi Trust and of many of the Sanabel entities that were incorporated in the items.

Your Honor will recall that the Sanabel entities in the United States have stated that they no longer have any records relating to the periods of greatest interest including the period when Obaid was an officer of the entity, Abdullah bin Muhsen al Turki, your Honor, is currently the head of the Muslim World League and therefore in a position to direct that entity to respond to request relating to his position.

Before that, he was the Saudi Minister of Islamic Affairs from 1993 to 1999. In that capacity he had a supervisory role over all of the kingdom's proselytizing organizations according to the 9/11 Commission, the Muslim World League, the International World Islamic Relief Organization, the World Assembly of Muslims and al-Haramain Islamic Foundation.

We also know, your Honor, that al-Haramain filed an affidavit early in the case when it was still participating in which it specifically stated that al-Haramain works under the supervision of the Audi Minister of Islamic affairs who appoints its board members and senior management personnel.

And, again, al-Haramain Saudi Arabia is no longer participating in the proceedings.

filed an affidavit at one point way back in 2011 stating that the IIRO had two kinds of documents; public documents and documents that were protected from discovery by virtue of the king and his immunity.

Now, again, that objection was withdrawn entirely but it does indicate a certain desire to protect certain categories of documents relating to the activities of the charities from disclosure because of the governmental character. There is just no basis to do that.

I think, your Honor, there was a recent article in the New York Times in September of 2015 that underscores the issue and that I shared with Mr. Kabat in advance of the hearings. It was issued in September of 2015 and describes the kingdom's efforts to both spread a certain variant of Islam and use those efforts to counter Iranian influence and describes the very close coordination within the Saudi government in doing that.

The report indicates that the documents describe an extensive apparatus inside the Saudi government dedicated to missionary activity that brings in officials from the foreign interior and Islamic affairs ministry, the intelligence service, and the office of the king. It goes on to say the intelligence agency, sometime potentially the Saudi-supported Muslim World League helps coordinate strategy.

And so, what we understand from all of the information we have gathered largely on our own that these are very

significant positions of respect and of achievement relative to which these individuals interacted, traveled with, met with some of the most senior officials of the Saudi government, as well as foreign dignitaries. People who reach that level of accomplishment maintain some record of their life's work, your Honor, and we are to believe that all four of these individuals are so devoid of any interest in their own accomplishments that they haven't retained a single record responsive to plaintiff's requests? That simply can't be the case. They routinely gave speeches at international conferences, they attended world summits, they met with world leaders. They have some records in their possession that are responsive and we would simply ask that they be directed to undertake the reasonable and necessary efforts to collect them and produce them.

Thank you, your Honor.

THE COURT: Thank you.

Mr. Kabat, why don't you use the microphone over there.

MR. KABAT: Your Honor, again, we need context of the discovery.

What plaintiffs have not told you is that they served a total of 129 document requests on the four charity officers but of those 129 requests, 97 were identical or substantively identical to the merits discovery request that they served on the Muslim World League and the IIRO.

sureties because there is no evidence of day-to-day control and it appeared that the only reason the plaintiffs are really seeking this discovery from the four defendants is not to prove their liability, instead it is a backdoor way to get the government back in the case. An example of that was yesterday Mr. Carter sent me an article from the New York Times which he said he was going to rely upon today. That article actually came out in July of 2015, it is based on Wikileaks which is double hearsay --

THE COURT: It is based on what?

MR. KABAT: Wikileaks --

THE COURT: Okay.

MR. KABAT: -- which of course is double hearsay, but the article that Mr. Carter gave me yesterday and aid he was going to rely on specifically says the documents do not show any Saudi support for militant activity.

That's what Mr. Carter wanted to rely upon today.

The last point I want to make is that plaintiffs, in their document requests, had numerous requests relating to the golden chain which he may remember from years ago when Judge Casey had this case --

THE COURT: Let me save you some time. I'm not going to require the production of any documents related to the golden chain so we can move on from there.

MR. KABAT: Thank you.

response was go look at what the charities produced. And what we are really here about is compelling the defendants to conduct their own searches.

MR. KABAT: Your Honor, regardless of whether the request asked for the passport, the reality is the plaintiffs simply cut and pasted their merits discovery into the four individual defendants and they have not bothered -- they have not bothered -- to meet with us, to send us a discovery deficiency letter, completely at all with Rule 37 meet and confer requirement.

THE COURT: Well, but the passports would seem to be something that the charities would not have produced that perhaps -- well, I don't see one that relates to passports but I do see 89: Provide all documents relating to any trips you took to Sudan; and 90 is the same for trips to Afghanistan. Let me take a moment and look at the responses.

(pause)

THE COURT: Unfortunately they don't track from defendant to defendant.

(pause)

THE COURT: Well, here. For 89 and 90 the answer to both is: See objections to document request no. 10. Document request no. 10 says: Defendant objects to this request as overly broad seeking documents relating to his employment with the government of the Kingdom of Saudi Arabia which has

sovereign immunity; improperly seeks official records of the Saudi government; improperly seeks business records of the MWL and IRRO; and goes on and on. And going back to the specific answers it says: Defendant will produce responsive documents, if any, when available.

So, I think what I am going to do is, first of all, invoke the current version of Rule 34 -- bear with me a second -- which requires that an objection state specifically -- let me read it: *An objection must state whether any responsive materials are being withheld on the basis of that objection.*

So, I am going to require several things. First, a sworn or affirmed certification from each of the four charity defendants that except to the extent to which they have specified that a document is being withheld, they have produced all documents responsive to the requests unless those documents are part of the productions of the MWL or IIRO. Secondly, that there be a privilege log if there are documents being withheld on the basis of privilege.

I think at the moment that's all I need direct with respect to the motion related to these four defendants.

Is there something else you seek, Mr. Carter, at the moment?

MR. CARTER: Your Honor, only based on the response that you read to the request, which very much seemed to invoke

discovery and we have not undertaken a search for that.

THE COURT: Well, I think by invoking the provision of Rule 34 that I have directed you to comply with, it will become clear whether you are withholding documents. I think there may be categories of documents or requests as to which your response is we have nothing beyond what the corporate charities have produced and therefore there is not much point in worrying about whether the request relates to jurisdictional or merits discovery.

If, at the end of the process I have just directed there are lingering issues, you can bring those back to the Court or Mr. Carter can, but I think for the moment this takes us further down the road.

MR. KABAT: Thank you.

MR. CARTER: Thank you, your Honor.

THE COURT: You said you had two points?

MR. KABAT: Pardon?

THE COURT: I guess the other was the golden chain. Thank you.

MR. CARTER: Your Honor, I'm sorry.

THE COURT: Yes.

MR. CARTER: With regard to the golden chain, and I don't want to belabor this point because I understand the Court's ruling, but there are people on the golden chain other than the contributors, for instance Wael Jelaidain is listed on

the golden chain, Osama Bin Laden is listed on the golden chain. And so, we just want clarity that you are not talking about those people.

THE COURT: That's correct.

MR. CARTER: Thank you.

THE COURT: I am talking specifically about the requests that use the phrase "and seek those documents."

MR. CARTER: Thank you, your Honor.

THE COURT: So, if there were other more specific requests, those, of course, are not affected by that ruling.

MR. CARTER: Thank you, your Honor.

THE COURT: We can break for lunch now or we can deal with the next one.

Mr. Haefele?

MR. HAEFELE: I leave it up to you, your Honor.

THE COURT: Why don't we move on.

Okay. Fire away, Mr. Haefele.

MR. HAEFELE: Your Honor, I think it is a good afternoon at this point. We made it past, into the afternoon.

Robert Haefele from Motley Rice for the plaintiffs, your Honor. I am here to talk about the plaintiff's motion regarding Soliman Al-Buthe.

Much of what Mr. Charter had to say about the other charity officials applies also to Mr. Al-Buthe and I refer back to the dialogue that you had with Mr. Carter for what was said

defendants and not Mr. Al-Buthe's property. I take a different view; namely, if there were documents in his possession that relate to those entities that are responsive, they have to be produced. The objections that have been asserted are essentially all boiler plate. The letter that I received essentially talks about several things that I don't think are relevant, one of which is, as I discussed with Mr. Haefele and we all had some interchange about, the fact of delisting and also the collapse of the Oregon criminal case which occurred for a number of reasons, none of which relate to whether Mr. Al-Buthe is or is not somebody who supports terrorism in a fashion that impacted the United States.

Among other things, there is, as I think indicated in a footnote, there was a different standard applicable to the criminal case in terms of burden of proof, and obviously Grady applies as a concept in the criminal case and apparently may have been somewhat tortured and is not applicable in this setting.

So, I am going to require production of the documents that the plaintiffs seek as well as a certification that Mr. Al-Buthe has produced all the responsive documents in his possession, custody or control.

So, that's my ruling regarding Mr. Al-Buthe.

MR. KABAT: Your Honor, one question?

THE COURT: Yes, sure.