**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   ) No. 03 MDL 1570 (GBD/SN)
_____)

**Defendants Dr. Abdullah Al-Turki, Dr. Abdullah Al-Obaid, Dr. Abdullah Naseef,
Dr. Adnan Basha, and Soliman Al-Buthe's Opposition to Plaintiffs' Motion**

Dr. Al-Turki, Dr. Al-Obaid, Dr. Naseef, Dr. Basha, and Mr. Al-Buthe, through undersigned counsel, respectfully submit their Opposition to Plaintiffs' motion for sanctions (ECF Nos. 3748-3750). As set forth below, it would be an abuse of discretion to impose any sanctions on these five Defendants, who were remanded by the Second Circuit for the limited purpose of jurisdictional discovery, because they have properly responded to the plaintiffs' jurisdictional discovery requests, and any remaining open issues as to several of the Defendants are of minor importance in light of the extensive prior evidence in the record.

**I.      The Plaintiffs' Grounds for Personal Jurisdiction over the Five Defendants.**

On April 9, 2004, three of the five Defendants submitted motions to dismiss the *Burnett* case for lack of personal jurisdiction and sovereign immunity. *See* Al-Turki Mot. to Dismiss (ECF No. 85); Al-Obaid Mot. to Dismiss (ECF No. 98); Naseef Mot. to Dismiss (ECF No. 87). In 2005, after several other cases were consolidated into the MDL-1570, and several earlier complaints were amended, all five Defendants submitted motions to dismiss the other cases in which they were named as a defendant. Those motions to dismiss similarly argued lack of personal jurisdiction and failure to state a claim:

> Al-Turki Motion to Dismiss (ECF Nos. 1183-1185) (Sept. 6, 2005);
> Al-Obaid Motion to Dismiss (ECF Nos. 1180-1182) (Sept. 6, 2005);
> Naseef Motion to Dismiss (ECF Nos. 1204-1206) (Sept. 6, 2005);
> Basha Motion to Dismiss (ECF Nos. 1195-1197) (Sept. 6, 2005); and
> Al-Buthe Motion to Dismiss (ECF Nos. 891-893) (May 9, 2005).

1

Three of the five Defendants submitted declarations in 2004 and 2005 setting forth their professional and educational background and their limited travel to the United States:

- Declaration of Abdullah bin Abdul Mohsen Al-Turki (Mar. 31, 2004) (ECF No. 85, Exhibit 1; ECF No. 1185, Exhibit 1) (attached hereto as Attachment A). Dr. Al-Turki confirmed that he has lived his entire life in Saudi Arabia, *id.* at ¶ 3; set forth his educational background (entirely in Saudi Arabia), *id.* at ¶ 4; set forth his employment history and positions held from 1975 through the present (also entirely in Saudi Arabia), *id.* at ¶¶ 5-10; and discussed his three trips to the United States, in (1) 1979, to UCLA, in his capacity as Rector of a university in Saudi Arabia; (2) 1998, to Los Angeles, to attend a mosque opening, in his capacity as Minister of Islamic Affairs; and (3) June 2002, to New York, Chicago, Los Angeles, and Washington, D.C., in his capacity as Secretary-General of the Muslim World League (MWL), *id.* at ¶ 11.

- Declaration of Abdullah bin Saleh Al-Obaid (Mar. 29, 2004) (ECF No. 98, Exhibit 1; ECF No. 1182, Exhibit 1) (attached hereto as Attachment B). Dr. Al-Obaid confirmed that he has lived his entire life in Saudi Arabia except for when he was in graduate school in Oklahoma in the late 1970s, *id.* at ¶¶ 3-4; set forth his educational background (in both Saudi Arabia and Oklahoma, in the 1970s), *id.* at ¶ 4; set forth his employment history and positions held from 1980 through the present (all in Saudi Arabia), *id.* at ¶¶ 4-7; explained that his service as Secretary-General of the MWL was from 1995 to 2000, *id.* at ¶ 5; and explained that he made several trips to the United States since the 1970s, with the most recent being in 2000 and 2000, *id.* at ¶ 8.

- Declaration of Abdullah Naseef (Mar. 30, 2004) (ECF No. 78, Exhibit 1; ECF No. 1206, Exhibit 1) (attached hereto as Attachment C). Dr. Naseef confirmed that he has lived his entire life in Saudi Arabia, *id.* at ¶ 3; set forth his employment history and positions held through the present (all in Saudi Arabia), *id.* at ¶¶ 4-6; explained that his service as Secretary-General of the MWL ended in 1993, *id.* at ¶ 5; explained that he made several trips to the United States since 1965, including studying at Stanford University and attending the World Economic Forum Conference in 2002, as well as several trips as a tourist, *id.* at ¶ 7.

Mr. Al-Buthe also submitted a declaration to this Court on December 10, 2009, as part of the letter response by the Al Haramain Islamic Foundation, Inc. (USA) ("AHIF") to plaintiffs' motion to compel. *See* Declaration of Soliman H. Al-Buthe (Dec. 9, 2009) (attached hereto as

Attachment D).[1]  Mr. Al-Buthe set forth his educational history (entirely in Saudi Arabia), and his employment history through 2009.  *Id.* at ¶¶ 1-2.  He also explained that as of June 2004, when the U.S. government demanded that the Saudi government shut down the AHIF offices in Saudi Arabia, it was no longer possible to access any of its documents or files.  *Id.* at ¶¶ 12-13.

In 2009, Mr. Al-Buthe also submitted a declaration to the U.S. District Court for the District of Oregon, as part of AHIF's ultimately successful challenge to its designation by the Office of Foreign Assets Control, Department of the Treasury.  *See* Declaration of Soliman H. Al-Buthe (Feb. 15, 2009), which was subsequently submitted to this Court in 2013 (ECF 2676-2, at 22-26) (Jan. 31, 2013) (attached hereto as Attachment E).[2]  That declaration similarly set forth his educational background (in Saudi Arabia), and his employment history through 2009.  *Id.* at ¶¶ 1-2.  Mr. Al-Buthe explained his limited role as a volunteer with AHIF, and that he stopped that involvement in 2002, "due to the death of my son."  *Id.* at ¶¶ 3-7, 9.

Judge Daniels granted the motions to dismiss of all five Defendants (and numerous other defendants) in 2010, based on a lack of personal jurisdiction.  *See In re Terrorist Attacks*, 718 F. Supp. 2d 456, 476, 483, 484 (S.D.N.Y. 2010) (Dr. Al-Turki and Dr. Al-Obaid) [Opinion, at 25-26, 40 (ECF No. 2252) (June 17, 2010)]; *In re Terrorist Attacks*, 740 F. Supp. 2d 494, 506-07 (S.D.N.Y. 2010) (Dr. Naseef, Dr. Basha, and Mr. Al-Buthe) [Opinion, at 11-14 (ECF No. 2312) (Sept. 13, 2010)].

---

[1] At that time, discovery letters to Magistrate Judge Maas were not docketed in the MDL-1570 ECF docket, but the existence of this letter is reflected in the order granting plaintiffs additional time to respond to this letter.  *See* Order (ECF No. 2214) (Dec. 17, 2009).  Mr. Al-Buthe's declaration was subsequently docketed with this Court in 2013 as part of AHIF's briefing of a discovery motion (ECF No. 2676-2, at 40-41) (Jan. 31, 2013).

[2] This declaration was originally filed in *Al Haramain Islamic Foundation, Inc. v. U.S. Dep't of the Treasury*, No. 07-CV-1155-KI (ECF No. 103-3) (D. Oregon Feb. 16, 2009).

On appeal, the plaintiffs argued to the Second Circuit that personal jurisdiction was warranted over these five Defendants (the "charity officers") on the following grounds:

> As the district court properly understood plaintiffs' pleadings and acknowledged, the claims against the Charity Official Defendants were predicated on their respective roles in forging their charities' alliances with al-Qaeda, maintaining the channels of material support through the charities to al-Qaeda, and utilizing the charities to provide material support to al-Qaeda. Each of the Charity Official Defendants is expressly alleged to have acted knowingly in facilitating the charities' institutional support for al-Qaeda.

*In re: Terrorist Attacks on Sept. 11, 2001*, No. 11-3294, Appellants' Consolidated Brief with Respect to Personal Jurisdiction, at 106 (ECF No. 298) (2d Cir. Jan. 20, 2012).

> As the district court itself acknowledged, the claims against the Defendants were based on their respective roles in knowingly establishing, maintaining and promoting the charities' collaboration with al-Qaeda.

*Id.* at 111.

Therefore, the basis for plaintiffs' assertion of personal jurisdiction over the five Defendants was limited to the alleged roles that each of the five Defendants had with their respective charities, *i.e.*, the Muslim World League (MWL) and the International Islamic Relief Organization (IIRO) for Dr. Al-Turki, Dr. Al-Obaid, and Dr. Naseef; the IIRO alone for Dr. Basha; and the Al Haramain Islamic Foundation, Inc. (AHIF) for Mr. Al-Buthe.

Plaintiffs did not argue on appeal that general jurisdiction existed as to these five Defendants. Nor did plaintiffs argue that conduct outside of their roles with these charities, such as governmental positions that several held during their careers, or faculty positions that several had with local universities, was relevant for the exercise of personal jurisdiction.

In response, the Second Circuit granted a remand for the *limited purpose* of jurisdictional discovery. The Second Circuit identified the following areas as examples of what would be encompassed within jurisdictional discovery:

4

(1) Whether they "allegedly controlled or managed some of those charitable organizations;"

(2) Whether, "through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States;"

(3) Whether they "*directly* provided financial and other resources to al Qaeda knowing that al Qaeda was engaged in a global campaign of terror directed at the United States;"

(4) "Whether this support was 'expressly aimed' at the United States;" and

(5) "(1) when the alleged support was given to al Qaeda, (2) what support was given, (3) whether the support was 'earmarked' for use in specific schemes or attacks not directed at the United States, or (4) specifically how those defendants were involved in the process of providing support to al Qaeda."

*In re Terrorist Attacks on Sept. 11, 2001 (Asat Trust Reg., et al.)*, 714 F.3d 659, 678-79 (2d Cir. 2013) (emphasis in original), *cert. denied*, 134 S. Ct. 2870 (2014). These limited grounds were consistent with those set forth in plaintiffs' appellate briefing.

The Second Circuit thus remanded the five Defendants (and several others), "pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the prompt commencement of a course of judicially-supervised jurisdictional discovery." *Id.* at 682.

## II. The Plaintiffs' Jurisdictional Discovery Requests.

The plaintiffs served jurisdictional discovery requests on the five Defendants on August 22, 2013. Those requests encompassed over 100 requests to each Defendant, with some requests asking for information about dozens of named individuals and entities, essentially imposing several hundred requests on each of the five Defendants. Some of these requests sought information that went far afield from plaintiffs' theory of personal jurisdiction as to these five Defendants that plaintiffs had previously argued to both this Court and the Second Circuit.

Nonetheless, the five Defendants attempted to answer these requests to the best extent possible, as set forth below.

At the time that these jurisdictional discovery requests were served, three of the five Defendants – Drs. Al-Obaid, Dr. Naseef, and Mr. Al-Buthe – were no longer officers or volunteers with the charities where they had formerly worked or volunteered, and had not been for over a decade. Dr. Al-Obaid was Secretary-General of the MWL from 1995 to 2000. *See* Al-Obaid Declaration, at ¶ 5 (Att. B hereto). Dr. Naseef was Secretary-General of the MWL from 1983 to 1993. *See* Naseef Declaration, at ¶ 5 (Att. C hereto). Mr. Al-Buthe ceased any substantive involvement with AHIF after 2002, other than assisting AHIF's former counsel for litigation purposes with respect to AHIF's challenge to its designation. *See* Al-Buthe Declaration I, at ¶¶ 3, 12 (Att. D hereto); Al-Buthe Declaration II, at ¶¶ 3-4 (Att. E hereto). Therefore, they no longer had access to the files and documents of those charities, and had to rely largely or entirely on the document production of those charities.

Dr. Basha, who was the director of the IIRO until his retirement, directed the charity's staff to work with the IIRO's outside counsel to search for and produce documents that were relevant to the merits discovery requests served on the IIRO, and/or relevant to the jurisdictional discovery requests, as he did not have personal files outside the IIRO containing documents relevant to plaintiffs' allegations for the exercise of personal jurisdiction over him. *See* Certification of Dr. Adnan Basha (Sept. 19, 2017) (attached hereto as Attachment F).

As a result, counsel for the five Defendants, in addition to producing their resumes (which set forth their educational and professional backgrounds), and the previously submitted affidavits, reviewed the document production of the MWL, IIRO, and AHIF, in order to identify the documents produced by those charity defendants (in merits discovery) that were also relevant

to the jurisdictional requests served on the five Defendants. Here, the MWL and IIRO collectively produced over 574,000 pages of documents, and AHIF produced over 81,000 pages of documents and emails.

With respect to Dr. Al-Turki, Dr. Al-Obaid, and Dr. Naseef, counsel prepared indexes to the subset of the MWL's and IIRO's documents that were responsive to the jurisdictional discovery requests, and produced those indexes on June 2, 2017, with a supplemental index on September 26, 2017. For Dr. Basha, counsel prepared indexes to the subset of the IIRO's documents that were responsive to the jurisdictional discovery requests, and produced those indexes on June 2, 2017 and September 26, 2017. *See* A. Kabat letters to S. Carter, et al. (June 2, 2017; Sept. 26, 2017) (attached hereto as Attachment G). For Dr. Al-Turki, Dr. Al-Obaid, and Dr. Naseef, the document indexes were 1,751 pages and 378 pages, respectively, for a total of 2,129 pages. *See* Dr. Al-Turki, et al., Document Indexes (June 2, 2017; Sept. 26, 2017) (excerpts attached hereto as Attachment H). For Dr. Basha, the document indexes were 1,147 pages and 19 pages, respectively, for a total of 1,166 pages. *See* Dr. Basha, Document Indexes (June 2, 2017; Sept. 26, 2017) (excerpts attached hereto as Attachment I).

### III. Information on the Five Defendants' Travels.

In 2004 and 2005, three of the five Defendants provided the plaintiffs and this Court with information on their travels to the United States. *See* Part I, *supra*. In 2017, several of the Defendants were able to update this information, in response to plaintiffs' requests.

Dr. Al-Obaid provided additional information on his travels to the United States, *i.e.*, two trips he made in August 1997 and in August or early September 1998. *See* Certification of Dr. Abdullah bin Saleh Al-Obaid, at ¶ 3 (Oct. 14, 2017) (attached hereto as Attachment J). Dr. Al-Obaid no longer has the passport(s) that he used during that time period. *Id.* at ¶ 4. Some of the

7

information on his travels to the United States, along with other countries, was already reflected in the annual reports that were previously produced to plaintiffs on January 10, 2012, over five years ago. *See*, *e.g.*, Documents Bates-stamped IIRO 16973-17130 (1997 travels); IIRO 17131-17414 (1998 travels). Dr. Al-Obaid also certified that he has not withheld any documents on the basis of privilege, other than communications with his lawyers after these lawsuits were filed. *See* Al-Obaid Declaration, at ¶ 2 (Att. J hereto).

Dr. Basha, through a signed declaration, provided information on his travels to the United States, which were limited to two family vacation trips, both to Orlando (Florida) in 1997 and 1999, and a trip to New York in June 2001 to attend the meetings of the Special Committee of the United Nations General Assembly concerning children. *See* Declaration of Dr. Adnan Basha, at ¶¶ 2-3 (Sept. 30, 2017) (attached hereto as Attachment K). Dr. Basha does not have his passports for that time period. *Id.* at ¶ 4.

Some of the information on Dr. Basha's travel to the United States, *i.e.*, his one trip to the United Nations, along with his travel to other countries, is reflected in the annual reports produced to plaintiffs, *e.g.*, Document Bates-stamped IIRO 341073, which is part of an IIRO annual report (IIRO 340871-341098). In any event, Dr. Basha's travel to the United Nations does <u>not</u> count for purposes of exercising personal jurisdiction over him, under the Second Circuit's *Klinghoffer* jurisdictional exception. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51-52 (2d Cir. 1991) (United Nations activities cannot form the basis for personal jurisdiction); *Sokolow v. Palestinian Liberation Organization*, No. 04-CV-00397 (GBD), 2011 WL 1345086, at *5 (S.D.N.Y. Mar. 30, 2011) ("The Second Circuit has also held that participation in the United Nation's affairs by a 'foreign organization' may not properly be considered as a basis of jurisdiction in New York."), *aff'd in relevant part*, 835 F.3d 317, 325 (2d

Cir. 2016); *id.* at *5 ("With respect to the activities involving the New York office, Defendants are entitled to the *Klinghoffer* jurisdictional exception.").

Mr. Al-Buthe had received his old passports from the Saudi government for the period of 1996 through 2003, so he was able to produce scans of those passports to the plaintiffs on June 14, 2017, together with a detailed list of his travels to the United States from 1990 through 2001. (Documents Bates-stamped Al-Buthe 0002-0020 (passport for 1996 to 2000); Al-Buthe 0021-0023 (passport for 2001 to 2003); Al-Buthe 0024-0027 (chronology of travels to the U.S., 1990-2001)). Mr. Al-Buthe also certified that he has not withheld any documents on the basis of privilege, other than communications with his lawyers after these lawsuits were filed. *See* Certification of Soliman H. Al-Buthe (Oct. 17, 2017) (attached hereto as Attachment L).

Over the past year, counsel for Drs. Al-Turki, Dr. Al-Obaid, Dr. Naseef, and Dr. Basha have attempted to obtain additional information on their passports, and to supplement the information already in the record through their declarations and the annual reports. On April 13, 2016, and again on May 26, 2017, undersigned counsel sent letters to local counsel in Saudi Arabia to request, *inter alia*, information on their passports and foreign travel, but were unable to obtain any additional information. *See* Declaration of Alan R. Kabat, at ¶ 1 (Oct. 20, 2017) (attached hereto as Attachment M). Undersigned counsel renewed this request on October 10, 2017, through a letter to the Embassy of Saudi Arabia, requesting that our contacts at the Embassy communicate with the General Directorate of Passports, Ministry of Interior (Saudi Arabia) to determine if their passports and related travel information for 1992 to 2002 were still available; the Embassy contacts promptly acknowledged this request. *Id.* at ¶ 1. Counsel will apprise the Court and the parties if the Saudi government is able to provide any information, whether copies of the passports, or any other information on their international travels. *Id.*

Over the past two months, subsequent to this Court's September 7, 2017 status conference, counsel for Dr. Al-Turki and Dr. Naseef have repeatedly attempted to contact their clients, both through their sons, and through local counsel and colleagues in Saudi Arabia, but have been unsuccessful in receiving any response. *Id.* at ¶ 2 (Att. M hereto).  Counsel have learned that Dr. Naseef (age 78) is incapacitated and unable to communicate with others about substantive topics.  *Id.*  Dr. Al-Turki (age 77) is apparently out of the country, which may be for medical purposes, and is not responding to our communications.  *Id.*  Nonetheless, counsel are continuing their efforts to contact Dr. Al-Turki to obtain a certification in compliance with the Court's order, and to obtain a certification from Dr. Naseef's son as to his current health condition.  *Id.*

Counsel have also been in contact with Dr. Basha to obtain an updated certification – one that would differ from the two certifications in September 2017 (Att. F & K hereto) only in the language used in the perjury statement, and to certify that he has not withheld anything on the grounds of privilege other than communications with his counsel after these lawsuits were filed. However, counsel have just learned that he is going through at least two weeks' of medical procedures, and is unable to respond at present.  *Id.* at ¶ 3.

## IV.     Sanctions are Not Warranted on the Five Defendants.

The five Defendants respectfully submit that sanctions are not warranted, and that it would be an abuse of discretion to do so.  As a threshold matter, the information that plaintiffs are now seeking – their travels to the United States and their passports – are largely addressed through the declarations that the five Defendants have submitted to this Court, some of which date back to 2004.  At no time from 2004 to 2010 did the plaintiffs contest the veracity or accuracy of those earlier declarations, or otherwise argue to this Court that additional

information about their travels was needed to contest those three Defendants' then-pending motions to dismiss, even though plaintiffs had over six years to raise any concerns with Judge Casey or Judge Daniels. Moreover, information about the travels of the former MWL and IIRO officers is corroborated through several of the annual reports that those organizations previously produced in discovery – and those annual reports also include information about their travel to yet other countries. Similarly, Mr. Al-Buthe's passports also provide information about his travels to yet other countries.

Plaintiffs' remaining concerns about the form of the declarations, such as the perjury certification, do not warrant any sanctions, and undersigned counsel have attempted to address those minor concerns through obtaining updated certifications that are substantively the same as the previous declarations and certifications.

Finally, undersigned counsel have confirmed that no documents were withheld on the basis of privilege, other than communications that the five Defendants had with their lawyers after these lawsuits were filed – communications that are not within the scope of discovery and do not have to be included on a privilege log. *See* Kabat Declaration, at ¶ 4 (Att. M hereto).

Thus, counsel for the five Defendants have made multiple efforts over the past year to obtain the passports for four of the five Defendants, including through a formal written request to the Saudi government, and will continue their efforts to communicate with Dr. Al-Turki and with the son of Dr. Naseef, to determine their current status and their ability to communicate regarding this litigation. Counsel will apprise this Court and the plaintiffs of any further developments in that regard.

## V. Conclusion.

Therefore, this Court should find that sanctions on the five Defendants are not warranted, since they have provided more than sufficient information about their travels to the United States, and have made renewed efforts to obtain their passports (for four of the five Defendants). Plaintiffs' remaining concerns about the content and format of the certifications (for three of the five Defendants) are of minor import, and counsel for the five Defendants has confirmed that nothing was withheld on the basis of privilege other than communications they had with their counsel subsequent to the filing of these lawsuits.

Moreover, plaintiffs have received abundant discovery from the five Defendants and from the associated charities – discovery that goes well beyond plaintiffs' own theory of personal jurisdiction as to these five Defendants, as adopted by the Second Circuit in its remand decision.

Respectfully submitted,

*/s/ Alan R. Kabat*
_____
Lynne Bernabei (LB 2489)
Alan R. Kabat (AK7194)
Bernabei & Kabat, PLLC
1400 – 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
(202) 745-1942

Attorneys for Defendants Dr. Al-Turki, *et al.*

DATED:  October 20, 2017

## CERTIFICATE OF SERVICE

      I hereby certify that on October 20, 2017, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

                                                   */s/ Alan R. Kabat*
                                                  _____
                                                  Alan R. Kabat