UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(FM)<br><br>ECF Case |

This document relates to:

    *Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
    *Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
    *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
    *Estate of O'Neill v. Al Baraka Investment & Development Corp.*, 04-CV-1923
    *Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279
    *Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
    *Cantor Fitzgerald Associates, LP v. Akida Investment Co., Ltd.*, 04-CV-7065

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AS TO CHARITY OFFICIAL DEFENDANTS ABDULLAH NASEEF, ABDULLAH AL-OBAID, ABDULLAH AL-TURKI, ADNAN BASHA, AND SOLIMAN AL-BUTHE**

    The Plaintiffs' Executive Committees ("PECs") offer this memorandum in further support of their request (ECF Nos. 3748-50, filed Oct. 6, 2017) that the Court enter an order, under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure and the Court's inherent powers, sanctioning defendants Abdullah Naseef, Abdullah Al-Obaid, Abdullah Al-Turki, Adnan Basha and Soliman Al-Buthe ("the charity official defendants") for each defendant's now-acknowledged failure to comply with this Court's discovery orders of March 22, 2016 (*see* Exhibit A,[1] Transcript of Mar. 22, 2016 hearing at 84-85) and September 8, 2017 (*see* Exhibit B, Transcript of Sept. 7, 2017 hearing, at 10-13). This memorandum responds to the charity official defendants' opposition filed at ECF No. 3763.

    This Court should not countenance the charity official defendants' indefatigable efforts to re-litigate issues the Court has already decided. The issue before the Court now is *not* whether plaintiffs'

---

[1] Exhibits A and B cited herein are attached to the Declaration of Robert T. Haefele, dated October 6, 2017. Exhibit O, comprised of pages 81-83 and 114 from the transcript of the March 22, 2016 hearing, is attached to the Supplemental Declaration of Robert T. Haefele, date October 26, 2017.

discovery requests were overly broad, *not* about providing information limited to their travels to the United States, or even whether the defendants had failed to respond to any given request (aside from the direction to produce their passports). Indeed, the Court's approach here was to advance the matter by ordering the charity official defendants to comply with the Court's specific directions as to *all* of plaintiffs' requests and then addressing any remaining issues thereafter.[2]

The discrete issue presented by the PECs' October 6, 2017 application (ECF Nos. 3748-50) is whether to impose sanctions for the charity official defendants' failure to comply with the Court's orders of March 22, 2016 (Exhibit A) and September 8, 2017 (Exhibit B). Those orders unambiguously imposed on each charity official defendant obligations to provide a "sworn or affirmed certification" that they have produced all documents responsive to the requests, produce his passport(s), and identify any documents responsive that have been withheld. Exh. A at 85. The Court unambiguously rejected the defendants' effort to limit that obligation to documents they unilaterally deemed relevant to the jurisdictional issue. *Id.* at 87. The Court was especially clear on this point in the context of Mr. Al-Buthe, where, in response to defense counsel's request to carve out discovery defendants deemed beyond jurisdictional discovery, the Court stated, "I am not carving anything out" because those objections were waived. Exh. O at 114.

Instead of addressing straight forward whether the charity official defendants met their obligations under those two orders (they have not), the charity official defendants offer extensive discourse rearguing whether plaintiffs' discovery requests were proper (ECF No. 3763 at 5-7) and implying that, notwithstanding their failure to produce passports (which the Court ordered to be produced to show their travel not only to the U.S. but also to **other international locations**), the

---

[2] As for Mr. Al-Buthe, the Court specifically ruled that he had waived objections as to relevance or over breadth. *Id.* at 114. As to the other charity official defendants, the Court required each of them, in the first instance, to address their productions as to all of plaintiffs' discovery requests, certifying that they had done the necessary search and identified what they have withheld from production in the case of each of the requests. The Court added that, "[i]f, at the end of the process . . . there are lingering issues, [plaintiffs] can bring those back to the Court . . . ." *Id.* at 87.
.

limited information they produced about their travels to the United States should suffice to meet their individual obligations to produce their passports.

Because, even their opposition brief acknowledges that none of the charity official defendants provided the sworn or affirmed certifications as ordered by this Court and because only Al-Buthe provided his passport, each of the defendants has remained in willful noncompliance of the Court's orders and sanctions are warranted.

### A. The charity official defendants failed to provide sworn or affirmed certifications in compliance with the Court's orders.

Although the charity official defendants try to sidestep the issue by arguing about information provided to support their 2005 motions to dismiss (more than a decade before the Court issued the 2016 and 2017 orders at issue here), even in their opposition they acknowledge that they have failed to comply with the Court's orders to provide sworn or affirmed certifications. (*See, e.g.*, ECF No. 3763 at 9.) Although the obligation was initially imposed in March 2016 (more than a year and a half ago) and the Court recently allowed them until October 6, 2017 to comply (Exh. B at 13), none of the defendants complied by the deadline. After that deadline, Mr. Al-Buthe (and only Mr. Al-Buthe) sought to belatedly comply (*see* ECF 3764 at 74, Attachment L to Declaration of Alan R. Kabat). However, Mr. Al-Buthe's certification *still* insists on limiting his certification to documents he (or his counsel) deem "relevant," leaving unacceptably open questions about whether he inappropriately limited his search or refrained from producing documents based on unilateral views of relevance.

The remainder of the charity official defendants wholly acknowledge that they have not complied with the Court's direction to provide timely sworn or affirmed certifications. Although they offer no excuse for their non-compliance with the Court's unambiguous directions, they nonetheless argue that the Court should simply overlook their non-compliance.

Given the continued and longstanding lack of attention to this Court's orders (an issue that has not been confined to these several defendants), sanctions are essential. The charity official

defendants were ordered over a year ago to provide the sworn or affirmed certifications to push the discovery disputes forward; but they completely ignored the Court's order until more than a year later when pressed by the Court during the September 2017 conference.  Then the defendants reacted by providing inadequate, ineffective responses.  Then when those documents were questioned, counsel for the defendants claims that his clients are largely unavailable.

What may be more concerning is that the reasons for at least some of the defendants' unavailability (counsel for the charity official defendants Naseef, Al-Turki, and Basha indicates that they are mentally or physically incapacitated; *see* ECF No. 3763 at 10), suggest that ultimately the defendants longstanding delay tactics will result in further irreparable prejudice to the plaintiffs.  If, after years of prejudicial delay in providing full discovery, the defendants ultimately evade discovery by their own incapacity, plaintiffs will be further irreparably prejudiced and these defendants rewarded for their dilatory discovery tactics.

### B. Charity official defendants Al-Turki, Al-Obaid, Naseef, and Basha have still not produced passports, as they were ordered to do in March 2016 and again in September 2017.

Despite being unambiguously ordered to produce their passports – first in March 2016 and again in September 2017 – four of the five charity official defendants have not complied with the Court's order.  Although not especially candid about their failures, the charity official defendants' opposition brief acknowledges that defendants Al-Turki, Al-Obaid, Naseef, and Basha all remain in non-compliance with the Court's order to produce their passports.  *See* ECF No. 3763 at 9.

What the opposition brief and the supporting certification of Mr. Kabat underscore is the near complete lack of attention given to trying to comply with the Court's March 2016 order regarding the passports until after the Court's October 6, 2017 date for production had passed.  In response to the Court's March 2016 direction for these defendants to produce their passports, the *only* efforts made were an April 2016 letter to a lawyer in Saudi Arabia and another letter to a Saudi lawyer a year later

in May 2017. The record includes no other reference to any attempt on behalf of these four defendants to obtain their passports before the October 6 deadline. Only after the production deadline passed, finally a letter was allegedly sent to the Saudi Embassy – though we have little information as to what that letter said.

> C. **The charity official defendants' continued focus on travels limited to the United States is deceptive and ignores that the Court's order (and plaintiffs' discovery requests) were unambiguously focused on travels that included locations other than the United States.**

The charity official defendants inexplicably insist that the information they have provided about their travels to the United States should suffice to meet their obligation to produce their passports; but the Court and plaintiffs have been consistently unambiguous that the reason the passports were to be produced was to provide evidence of the defendants' travel not only to the United States, but to a multitude of other locations.

As the Court and plaintiffs observed during the conference that led to the Court ordering the passports to be produced (*see* Exh. O at 81-82), and as plaintiffs argued in the brief requesting these sanctions (see ECF 3749 at 15), and as the charity official defendants observe in their opposition brief (*see, e.g.*, ECF No. 3763 at 4), by and large plaintiffs' focus in jurisdictional discovery over the charity official defendants has been on specific jurisdiction as opposed to general jurisdiction.

Defendants' continued suggestions that their limited references to trips to the United States is particularly curious, given that plaintiffs have repeatedly explained why the markers of travel on the charity defendants' passports are relevant to the jurisdictional issues identified by the Second Circuit. (*See* Exh. O at 82-83; ECF No. 15-16). For example, during the March 2016 hearing, pointing to one area of jurisdictional discovery that the Second Circuit identified (namely, the roles and activities of these defendant at identified charitable organizations), plaintiff explained that evidence of these defendants' participation in dialogue and global events is relevant to determining their role in setting

5

in motion the program of Al Qaeda support alleged in plaintiffs pleadings. One example identified in the hearing concerned evidence that places defendant Naseef at a meeting with Saudi officials thanking them for generous support and encouraging jihad fighters worldwide. (Exh. O at 82-83.) Another example, identified in plaintiffs' brief requesting sanctions, concerned evidence that places defendant Naseef at the founding meeting of Al Qaeda. (ECF No. 3749 at 16.) In short, passport markers that place Naseef, or any of the other charity official defendants, at relevant locations worldwide (not just in the United States) support plaintiffs' claims.

All too often in this litigation, defendants have sought to impose on the plaintiffs and the Court their "better" idea as to how discovery should proceed. Usually, the real purpose seems simply to allow defendants to evade production of discovery. For example, in one instance, counsel proposed that rather than producing specific documents responsive to plaintiffs' requests, plaintiffs should come search a warehouse of documents in Riyadh. In another instance, rather than producing responsive documents, defendants insisted the plaintiffs should travel overseas to depose a witness about what documents exist responsive to the requests. And now, the charity official defendants insist that rather than complying with the Court's order to produce their passports, evidencing their travels worldwide, they should be permitted to rely on potentially self-serving declarations that limit information to travels to the United States only. Their proposal should be rejected.

### D. The Court should reject any reliance on the charity official defendants' deficient "certifications" or counsel's declaration that the defendants withheld no documents from production.

The purpose for requiring certifications from each of the various individual defendants was to obviate questions about whether the defendants engaged in proper searches for responsive documents and whether they withheld any responsive documents from production. Reliance on "certifications" which are effectively nullities, or reliance on a lawyer's declaration that cannot attest to the searches the individual defendants performed, cannot alleviate the problem the Court's order sought to address.

6

E.   **The Court should require the charity official defendants claiming physical impairment of mental incapacity to provide certification of their impairment or disability.**

Given the long history in this litigation of defendants evading discovery, plaintiffs ask that the Court order the defendants to tender certifications supporting the defendants' alleged physical impairments and mental incapacity. Multiple defendants in this litigation (including several represented by the same counsel as the charity official defendants) have evaded discovery for years only to disappear once they are forced to participate in defending themselves or face sanctions. *See* ECF No. 3550 at 3-4 (plaintiffs' letter to the Court regarding defendant Sedaghaty's counsel's post-bankruptcy petition motion to withdraw, which was filed after Sedaghaty was sanctioned for years of refusing to defend himself; the letter also describes similar discovery evasion, sanctioning, and disappearances of defendants Al Haramain, Rabita Trust, and Sanabel).

The opposition brief of the charity official defendant calls to the Court's and plaintiffs' attention for the first time alleged physical impairments and mental incapacity of three of the charity official defendants. Namely, Dr. Al-Turki and Dr. Basha are raising medical impairments, and Dr. Naseef's counsel has claimed that he is now mentally incapacitated.

Plaintiffs request that the Court order those three defendants to produce competent sworn or affirmed certifications from qualified treating physicians of the three defendants identifying the specific medical issues that have and will prevent them from fulfilling their discovery obligations in a timely manner. As to the certification regarding Dr. Naseef's alleged mental incapacity, the certification should be required to identify not only the nature of Dr. Naseef's incapacity, but also when Dr. Naseef became incapacitated.

## Conclusion

For the reasons and authorities stated here and in plaintiffs' moving papers at ECF Nos. 3749-50, and because even the charity official defendants acknowledge that they have failed to comply with the Court's orders (even to the extent that they made no attempt to comply with the direction to produce the passports until after the deadline had passed), imposition of sanctions under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure is authorized and necessary.

Among the sanctions plaintiffs ask the Court to impose on Mr. Al-Buthe are:

- Ordering Mr. Al-Buthe to re-submit a sworn or affirmed certification that complies with the Court's previous orders
- Imposing costs and reasonable attorney fees for the legal proceedings necessary to bring Mr. Al-Buthe in compliance with his discovery obligations;
- Treating the defendants' refusal as an act of contempt (Rule 37(b)(2)(A)(vii); and
- Such other sanctions as the Court may deem appropriate.

Among the sanctions plaintiffs ask the Court to impose on the four MWL/IIRO charity official defendants are:

- Striking the MWL/IIRO charity official defendants' objections in their entirety and ordering them to produce every responsive document;
- Ordering the MWL/IIRO charity official defendants' to re-submit sworn or affirmed certifications that comply with the Court's previous orders
- Ordering clarification as to the continued participation of defendants Al-Turki and Naseef, including when they were last responsive to counsel's communication;
- Imposing costs and reasonable attorney fees for the legal proceedings necessary to bring the defendants in compliance with their discovery obligations;
- Treating the defendants' refusal as an act of contempt (Rule 37(b)(2)(A)(vii); and
- Such other sanctions as the Court may deem appropriate.

As to Drs. Al-Turki, Basha, and Naseef, plaintiffs ask the Court to require the defendants to produce competent sworn or affirmed certifications from qualified treating physicians of those defendants identifying the specific medical issues that have and will prevent them from fulfilling their discovery obligations in a timely manner; and as to the certification regarding Dr. Naseef's alleged

mental incapacity, the certification is required to identify not only the nature of Dr. Naseef's incapacity, but also when Dr. Naseef became incapacitated.

Dated:  October 27, 2017                                   Respectfully Submitted,

/s/ Robert T. Haefele
Jodi W. Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050
New York, New York 10165
Tel:  (212) 944-2200

Christopher T. Leonardo, Esq.
ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South
Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*