# EXHIBIT O

G3M5terA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001,

       v.                     03 MDL 1570 (FM)

------------------------------x

                                  New York, N.Y.
                                  March 22, 2016
                                  10:20 a.m.

Before:

                 HON. FRANK MAAS,

                    Magistrate Judge

1   documents that reflect activities of these individuals.  We do

2   not think it is at all complete.  Again, we will address the

3   sufficiency of their productions with those defendants.

4            THE COURT:  How about Mr. Kabat's argument that there

5   has been no meet and confer here?

6            MR. CARTER:  Your Honor, we laid out in our reply

7   brief at page 3 that we raised this at multiple hearings in

8   multiple letters to the Court and there was a consistent

9   response: *Go look for their stuff.*  And so we came to the

10  Court to say that is not sufficient.  That was our point all

11  along.

12           So, we went down this road for a while.  There simply

13  isn't an indication on the record, affirmative, in a response,

14  I have searched all of the records in my possession, custody,

15  or control and you have everything responsive to your discovery

16  requests.  And again, we don't want to end up at a deposition

17  and have one of these individuals say, well, of course I

18  maintained a diary during the time that I was Muslim World

19  League Secretary, or of course I have copies of all the

20  speeches I wrote and Fatwahs I issued during that time, or of

21  course I have a copy of my passport from those periods.

22           As an example, your Honor, there is an allegation

23  based on US government investigations that Abdullah Omar Naseef

24  was present at the founding meeting of al Qaeda with Bin Laden

25  in the Sudan.  The travels of these individuals, as reflected

1    by their passports, are relevant.
2             To the extent they have received letters of
3    commendation or similar awards that have lauded their
4    activities during their service and outlined what they did, you
5    would have expected them to be kept.  One of them received the
6    King Faisal award for service to Islam.  That would describe
7    what that person did.
8             THE COURT:  How does that add to the jurisdictional
9    discovery?
10            MR. CARTER:  I think the proper question in the
11   jurisdictional discovery was what did these individuals do at
12   these charitable organizations, what was the nature of their
13   roles.  I can give you an example, your Honor.
14            In our own investigations we have, by way of example,
15   a report in the Arabic version of the Muslim World League
16   Journal dating to the period in 1992 where defendant Naseef
17   attends a meeting with members of the royal family and the
18   Saudi Grand Mufti, who is the government official during which
19   Naseef thanks the King for the generous support of the Muslim
20   World League and the Grand Mufti indicated the jihad fighters
21   must be encouraged worldwide.  A year later Naseef again thanks
22   King Fahd for a donation of 20 million given for Muslims in
23   Bosnia so they could continue their legal jihad against the
24   Serbs.
25            So, these kinds of dialogues about policy issues,

1     global events, are very relevant to the determination as to

2     whether or not these individuals were responsible for setting

3     in motion the program of support we have described in other

4     pleadings.  And, again, it is a matter of them going and

5     searching their own records in the same way that the Court

6     directed defendant Jelaidain to do so.

7             Thank you, your Honor.

8             THE COURT:  How about the passports, Mr. Kabat?

9             MR. KABAT:  I can ask him for that but I think the

10    proper way --

11            THE COURT:  I gather there was a specific request that

12    asked for those.  What was your response to that request?

13            MR. KABAT:  I don't --

14            THE COURT:  Mr. Carter, can you point me in the right

15    direction here?

16            MR. KABAT:  Again, your Honor --

17            THE COURT:  Hang on just a minute.

18            MR. CARTER:  I think in a moment we will be able to.

19    I know there were requests relating to travel to places like

20    Sudan, Afghanistan, Pakistan during relevant periods and,

21    again, that certainly would have encompassed a passport.

22            THE COURT:  I thought there was a specific reference

23    to supports in the request.

24            MR. CARTER:  There probably was.  But I think, your

25    Honor, regardless of the individual request, the overarching

G3M5terA

1        MR. KABAT:  Every document request pertains to
2    jurisdictional discovery.  Are you carving anything out?
3        THE COURT:  I am not carving anything out because my
4    view is the letter which didn't raise specific objections
5    essentially waived those objections and that the general
6    objections that are set forth in the formal document response
7    are not sufficient to assert an objection.
8        Let me just generally, while we are on that topic, the
9    rules applicable to this case, Federal Rules of Civil
10   Procedure, changed as you all know effective December 1st, and
11   the Advisory Committee's notes, I believe it is, suggest that
12   the they should be applied, to the extent possible or
13   practicable -- I am paraphrasing, not quoting -- in cases that
14   are ongoing.
15       So, as far as I'm concerned on a going-forward basis,
16   although I also held the view even before the rule's
17   amendments, general objections are not objections that the
18   Court will give any weight to.
19       Additionally, the change in the rule that I indicated
20   earlier says that if documents are being withheld based on an
21   objection, that must be disclosed in a Rule 34 response.
22       So, I intend to enforce both those provisions of the
23   revised rule.
24       The boiler plate objections that everybody has been
25   using since the beginning of time that objections are vague and