**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT DUBAI ISLAMIC BANK TO COMPLY WITH THE COURT'S MARCH 22, 2016 ORDER**

October 30, 2017

## TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ............................................................................................... 1

II. DISCUSSION ..................................................................................................................... 6

    A. DIB's Objections to Plaintiffs' List of Search Terms on Relevancy and Burden Grounds are Improper Under Magistrate Judge Maas's Order .............................. 6

    B. Plaintiffs' Search Terms Are Relevant to Their Claims that Dubai Islamic Bank Maintained Institutional Links to Al Qaeda and Associated Terrorist Groups ................................................................................................................... 7

        1. International Islamic Relief Organization ("IIRO") ....................................... 7

        2. Abdullah Azzam ............................................................................................ 9

        3. Ali Amin Al Rashidi ...................................................................................... 9

        4. Hamas Entities ............................................................................................. 10

        5. Sheikh Mohamed bin Saqar ......................................................................... 10

    C. DIB Should be Ordered to Comply Immediately With the Court's March 22, 2016 Order and Produce Responsive Documentation Relating to the 1998 U.S. Embassy Bombings ......................................................................................... 11

III. CONCLUSION ................................................................................................................. 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

Federal Rule of Civil Procedure 37 ............................................................................................1, 5

Federal Rule of Civil Procedure 26 ...............................................................................................7

I.      **FACTUAL BACKGROUND**

On October 15, 2010, plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to Dubai Islamic Bank ("DIB"), attached hereto as Exhibit A, seeking *inter alia*: (i) banking and financial records for DIB accounts linked to Osama bin Laden, members of al Qaeda, and financiers of the terrorist organization; (ii) banking and financial records for Taliban accounts at DIB; (iii) documents relating to DIB's involvement in the funding of the 1998 U.S. Embassy bombings; (iv) documents relating to the 1998 and 1999 meetings between U.S. officials and representatives of DIB and the UAE government concerning al Qaeda's use of DIB to launder and move money; and (v) DIB accounts that were frozen following the September 11, 2001 attacks.  Plaintiffs served supplemental discovery requests on DIB on July 31, 2012 and March 21, 2016, also seeking banking records for DIB accounts linked to members of al Qaeda connected to the September 11th plot, al Qaeda charity front organizations, associates of Osama bin Laden, and al-Qaeda related terror groups.  *See* Exhibits B and C.

DIB served responses and objections to plaintiffs' discovery on January 21, 2011, September 4, 2012, and April 25, 2016 respectively, and has to date produced documents bates-stamped DIB00001-5587 in several tranches.

On July 14, 2015, plaintiffs filed a Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a), requesting that the Court enter an order directing DIB to immediately undertake efforts to secure and produce additional documents and information responsive to plaintiffs' document requests.  *See* Exhibits D, E, and F (ECF Nos. 2973, 2974, and 3164).  As described in plaintiffs' motion, DIB had failed to produce basic account and other financial records for many DIB bank accounts used by members of al Qaeda, al Qaeda charity fronts such as the International Islamic Relief Organization ("IIRO"), al Qaeda related terrorist organizations, and

terror financiers.  *See* <u>Exhibit D</u> at pp. 2-5 (describing DIB's provision of critical banking services and other financial support to members of al Qaeda, 9/11 hijackers, prominent terrorism financiers, and al Qaeda charity fronts); pp. 2-3, 10 (Abdallah Azzam, spiritual mentor to Osama bin Laden and co-founder of al Qaeda, used DIB Account No. 1335 to direct monetary support to bin Laden's Islamic army); pp. 3, 6-7 (Saidi Madani al Tayyib, al Qaeda's "chief financial officer" in Sudan, used at least two accounts at DIB (Account Nos. xx-xxx-xxx4302 and xx-xxxxxxx-x20-01)); pp. 3, 9 (Mamdouh Mahmoud Ahmed Salim, a founding member of al Qaeda, was arrested for his connection to the 1998 U.S. Embassy bombings in Africa with three DIB banking cards in his possession (Nos. xxxx xxxx xxxx 1013, xxxx xxxx xxxx 2362, and xxx4008)); pp. 4, 8-9 (Ali Abdul Aziz Ali, al Qaeda member and Khalid Sheikh Mohammed's nephew, held an account at DIB (Account No. xx-xxx-xxxxx63-01), and was responsible for transferring significant sums of money to the 9/11 hijackers in the United States); pp. 4, 10 (9/11 hijacker Fayez Banihammad used an account at DIB (Account No. xx-xxxxxxx-x20-06)); *id.* (Ali Salah Muhammad al Marri, an al Qaeda member linked to the 9/11 plot, also held an account at DIB (Account No. xx-xxxxxxx-580-7)); pp. 5, 10-11 (al Qaeda financier Ahmed Nur Ali Jumale held several personal and business accounts at DIB (Account Nos. xxx-xxx-xxx-960, xxx1192, xxx7440, xxx7483, xxx339, and xx-xxx-xx-x13-01)); and p. 5 (defendant International Islamic Relief Organization ("IIRO") held at least one bank account at DIB (Account No. xxx0287)).

   Plaintiffs' motion also sought the production of banking records relating to DIB accounts that were frozen following the September 11th attacks.  *Id.* at p. 4 (explaining that the Central Bank of the UAE ordered the freezing of accounts and investments of approximately 26 individuals and organizations suspected of ties to al Qaeda, including accounts at DIB).

Plaintiffs additionally asked the Court to direct DIB to produce banking records for DIB accounts associated with the designated terrorist organization Hamas. *Id.* at p. 5, n. 10 (seeking account records for the International Islamic Charity Association (Account No. xxx2845), Nablus Zakat Committee (Account No. xxx5/939), Al Fujairah Charity Organization (Account No. xxxxxxxxxx2006), Emirates Red Crescent (Account No. xxx6754), Human Appeal International, and the Union of Good).

Plaintiffs further requested that the Court order DIB to produce documents relating to DIB's involvement in the 1998 U.S. Embassy bombings in Dar es Salaam, Tanzania, and Nairobi, Kenya; the subsequent agreement by the UAE government to close certain Taliban accounts at DIB following meetings with U.S. officials after the bombings; and all banking records relating to those accounts. *Id.* at p. 3 (DIB was directly implicated in the 1998 U.S. Embassy bombings in Kenya and Tanzania as well. According to the NATO report at Ex. A, "Al Qaida had previously used the Dubai Islamic Bank and local Hawala transfer companies to fund the bombings of the American embassies in Kenya and Tanzania." In the wake of the attacks, U.S. officials pressed the UAE to enact more rigorous banking controls and to close certain accounts at DIB that were used to move money intended for the attacks. In connection with those discussions, "the U.S. asked in 1998 that some Taliban accounts be closed at Dubai Islamic Bank.").

Plaintiffs' motion to compel was fully briefed as of December 11, 2015, and was the subject of a hearing before the Court on March 22, 2016.

During the hearing, Magistrate Judge Frank Maas issued an order from the bench permitting plaintiffs to provide DIB with a list of 500 individuals, entities, and/or accounts of their choosing, and requiring DIB to conduct searches of its electronic legacy account database using each of those names and accounts identified by plaintiffs to locate and produce responsive

banking records, including account opening and closing records, account statements, and other transactional data such as wire transfers.  *See* March 22, 2016 Transcript of Record ("Tr."), attached as Exhibit G, at pp. 55 and 57.

As to the 1998 U.S. Embassy bombings, DIB acknowledged that it had failed to produce anything in response to plaintiffs' discovery requests on that topic, and the Court directed DIB to "*expand the search*" for documentation relating to "*investigations or other responses that the bank internally may have had in terms of checking whether it had troublesome accounts or relationships*" following the embassy bombings.  *See* Tr. at pp. 63-64 (emphasis supplied).[1]

Pursuant to the Court's Order, on October 10, 2016, plaintiffs provided DIB with their list of 500 individuals, entities, and accounts to be searched in DIB's electronic account database.  *See* Exhibit H (Plaintiffs' Tranche Nos. 1 and 2).[2]  After three months passed without a response from the defendant, DIB finally transmitted a January 4, 2017 letter asserting numerous objections to plaintiffs' October 10 proposal, arguing that (i) plaintiffs' search term list exceeded the 500 limitation set by Judge Maas's March 22, 2016 Order, (ii) plaintiffs' list fell outside of the four search term categories permitted by the Court, and (iii) that many of the individuals and entities on plaintiffs' list were "overly broad, unduly burdensome," and "not relevant to a claim or defense of any party."  *See* Exhibit I.

---

[1] The Court also ordered DIB to:  (i) produce an un-redacted version of the U.A.E. Central Bank's July 6, 2003 circular sent to DIB identifying the names of 152 individuals and 1 entity "belonging to/or associated with the Taliban," and instructing DIB to "search for immediately and freeze any accounts, deposits, investments or remittances" relating to those individuals and entity; and (ii) identify all members of DIB's Fatwa and Sharia Supervisory Board for the relevant period of discovery.  DIB produced documents responsive to those categories of inquiry on April 13, 2016 (DIB003558-3582), and August 11, 2016 (DIB005019) respectively.

[2] The process of finalizing plaintiffs' list was delayed for several months due to DIB's delay in responding to Judge Maas's Order to search for and produce documents relating to the 1998 U.S. Embassy bombings.  As plaintiffs explained to DIB in correspondence at Exhibits J and K, any responsive records relating to the embassy bombings would inform the composition of the plaintiffs' list of 500 individuals, entities, and accounts, thus making certain that any exchange of the plaintiffs' list would be premature until DIB completed its search for responsive documentation.  DIB made a supplemental production of documents on August 11, 2016 (DIB004196-5023), contending that it complied with the Court's Order to produce "documents possibly related to the persons involved in the 1998 U.S. embassy bombings," but it is unclear whether any of those documents relate in any way to the embassy bombings.  DIB still has not yet responded to plaintiffs' requests for information concerning DIB's efforts to search for and locate materials concerning the embassy bombings.  *See infra* at pp. 11-13.

In the ensuing months, the parties conducted several meet-and-confers and exchanged numerous pieces of correspondence in an effort to narrow the areas of disagreement as to the Court's March 22, 2016 Order.  On multiple occasions, plaintiffs agreed to undertake additional reviews of their proposed search terms to determine whether areas of compromise may exist.  Though plaintiffs' initial list complied with the Court's order to limit the list to 500 individuals, entities, and/or accounts of plaintiffs' choosing, as a demonstration of their good faith, plaintiffs agreed to eliminate a total of 126 individuals and entities (and all associated aliases) from their original list of 500 provided to DIB on October 10, 2016.[3]

Although the parties' extensive discussions significantly narrowed the number of search terms in dispute, DIB continues to object to a final 31 individuals and entities, principally on relevance grounds.  *See* DIB's October 11, 2017 letter at Exhibit R.[4]  Plaintiffs submit that DIB's relevance objections are improper pursuant to Judge Maas's Order, and that the remaining 31 individuals and entities in dispute are directly relevant to plaintiffs' claims (and DIB's defenses to plaintiffs' claims) that DIB knowingly provided financial services and other support to Osama bin Laden, members of al Qaeda, al Qaeda charity front organizations, al Qaeda related terrorist organizations, and terror financiers.

Accordingly, pursuant to Federal Rule of Civil Procedure 37(a), plaintiffs respectfully request that the Court order DIB to immediately comply with this Court's March 22, 2016 Order and commence the process of searching its electronic legacy account database for these 31 individuals and entities, as well as the individuals, entities, and accounts previously agreed to by

---

[3] *See* Exhibit L (plaintiffs' March 8, 2017 correspondence agreeing to remove 100 individuals and entities from plaintiffs' list in the interests of good faith and compromise); Exhibit M (plaintiffs' April 21, 2017 letter to DIB agreeing to remove an additional 15 individuals and entities); Exhibit N (plaintiffs' June 2, 2017 letter to DIB providing a summary of the relevant allegations and evidence relating to certain individuals and entities on plaintiffs' list); Exhibit O (plaintiffs' June 8, 2017 letter to DIB agreeing to remove another 6 individuals and entities); Exhibit P (plaintiffs' August 3, 2017 letter to DIB concerning plaintiffs' proposals); and Exhibit Q (plaintiffs' September 22, 2017 letter to DIB agreeing to a final narrowing of plaintiffs list by removing an additional 5 individuals and entities).

[4] DIB asserts that the parties remain in disagreement over "37 search terms."  That number represents the 31 individuals and entities in dispute, and 6 alias names associated with two individuals and two entities.

the parties. Plaintiffs further request that the Court order DIB (again) to immediately search for and produce documents relating to the 1998 U.S. Embassy bombings, as previously directed by this Court at the March 22, 2016 conference, or face sanctions for failure to do so.

## II. DISCUSSION

### A. DIB's Objections to Plaintiffs' List of Search Terms on Relevancy and Burden Grounds are Improper Under Magistrate Judge Maas's Order

Throughout the course of the parties' negotiations, DIB has persisted in objecting to many of the individuals and entities comprising plaintiffs' list of 500 by arguing that those selections fall outside the scope of relevant discovery, including the remaining 31 individuals and entities at issue. *See* Exhibit I (objecting to plaintiffs' search terms as "overly broad, unduly burdensome," and "not relevant to a claim or defense of any party"); Exhibit R (same).[5] That position, however, is contrary to the pragmatic approach constructed by the Court to address plaintiffs' earlier motion to compel at ECF Nos. 2973, 2974, and 3164, seeking banking records and other responsive documentation plaintiffs allege evidence the essential financial services and other forms of material support DIB provided to Osama bin Laden, members of al Qaeda, and related terror groups in the decade leading up to the September 11th attacks.

In issuing a ruling that permitted plaintiffs to identify 500 individuals, entities, and accounts of their choosing, and requiring DIB to search for records relating to those individuals, entities, and accounts, Judge Maas clearly sought to obviate the need to micromanage the selection process by precluding DIB from litigating relevance objections as to each and every selection by the plaintiffs. Indeed, the entire point of Judge Maas's methodology to resolving the parties' dispute during the March 22, 2016 conference, by setting a reasonable number of individuals and entities to be selected by plaintiffs for searching purposes, was to avoid the very

---

[5] DIB responded to every one of plaintiffs' document requests, including requests relating to many of the remaining 31 individuals and entities, with the following unsupported, boilerplate objection: "Dubai Islamic Bank objects to this request as overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party."

6

delay that DIB's objections caused. Notwithstanding the intent of the Court's March 22, 2016 Order, DIB has insisted on micro-litigating plaintiffs' search term list, demanding that plaintiffs provide evidence of relevance for every individual and entity DIB unilaterally contends has an insufficient connection to al Qaeda (itself an incorrect standard that is more narrow than the scope of discovery permitted under Rule 26).[6] In doing so, DIB has appointed itself the sole arbiter of determining what information sought by the plaintiffs is relevant (and what is not), the specific result Judge Maas wanted to avoid. Under the Court's order, DIB should be directed to search the terms plaintiffs have provided, and no micro-analysis of DIB's unilateral relevancy objections is warranted.

> B.  **Plaintiffs' Search Terms Are Relevant to Their Claims that Dubai Islamic Bank Maintained Institutional Links to Al Qaeda and Associated Terrorist Groups**

Plaintiffs have consistently maintained that they are not required to provide such justification for their selections, but nevertheless agreed to provide DIB with detailed explanations of relevance in the hopes of narrowing the areas of disagreement and avoiding the need to seek the Court's intervention in this dispute. *See* Exhibit N (Plaintiffs' June 2, 2017 letter summarizing the relevant allegations and evidence for a number of al Qaeda members, al Qaeda charity fronts, and al Qaeda related individuals and entities); Exhibit Q (Plaintiffs' September 22, 2017 letter detailing allegations and evidence relating to 47 individuals and entities). A few examples are illustrative:

> 1.  **International Islamic Relief Organization ("IIRO")**

The folly of DIB's position is made most immediately obvious by DIB's continuing objection to searching for and producing responsive documentation relating to the International Islamic Relief Organization ("IIRO"), a defendant in the pending litigation. Banking records and

---

[6] For example, discovery of DIB's extensive ties to Hamas-related entities would demonstrate its broader alignment with jihad organizations, and provide evidence to undercut its claims that it would never associate itself with terrorism of any kind.

other responsive documents relating to IIRO's Account No. xxx0287 at DIB are relevant to plaintiffs' claims that DIB provided financial services to an entity the U.S. government has described as the preeminent sponsor of al Qaeda training camps prior to the September 11th attacks.  *See* Exhibit Q at p. 2:

> International Islamic Relief Organization – On August 3, 2006, the U.S. Treasury Department designated the IIRO's Philippine and Indonesian branch offices and a senior IIRO official in Saudi Arabia, Abd al Hamid Sulaiman al Mujil, "for facilitating fundraising for al Qaida and affiliated terrorist groups."  According to U.S. Treasury officials, "Abd Al Hamid Sulaiman Al-Mujil, a high ranking IIRO official in Saudi Arabia, has used his position to bankroll the al Qaida network in Southeast Asia.  Al Mujil has a long record of supporting Islamic militant groups, and he has maintained a cell of regular financial donors in the Middle East who support extremist causes."  U.S. State Department diplomatic cables further identify IIRO as "the principal sponsor of terrorist training camps in Afghanistan during the Taliban regime" and indicate that "Usama bin Ladin used the entire IIRO network for his terrorist activities."  *See* June 2004 and February 13, 2007 State Department cables. Moreover, a 1996 CIA Report concerning the involvement of purported charities in the sponsorship of terrorism indicates that the IIRO provided the funding for six al Qaeda training camps in Afghanistan.
>
> *See also* FSB intelligence document at BUR-PEC014984-14987, stating that "the Sharja affiliation of the Saudi 'International Islamic Relief Organization' and the 'Human Appeal International' established the 'Special Chechen Refugees Assistance Fund' (account number 01520483656101 in the 'Islamic Bank of Dubai.'").

DIB's resistance to locating and producing banking records for the IIRO on relevancy grounds is even more untenable given DIB's agreement to search its database for other charity defendants in the litigation which are similarly alleged to have provided al Qaeda and related terror groups with massive amounts of financial, material, and logistical assistance in the years leading up to the September 11th attacks.  Indeed, DIB has agreed to conduct searches for the Muslim World League ("MWL") (the IIRO's parent organization), World Assembly of Muslim Youth ("WAMY"), Al Haramain Islamic Foundation, and Sanabel al Kheer.  Accordingly, DIB's objection to conducting searches for responsive documents relating to the IIRO is without merit,

8

and suggests that its objections are more about protecting damaging evidence from discovery than anything else.

### 2. Abdullah Azzam

DIB also objects to searching for responsive documents and banking records for Abdullah Azzam, Al Qaeda's co-founder and spiritual mentor to Osama bin Laden. Azzam used DIB Account No. 1335 to direct monetary donations for jihadist activities:

> Abdullah Azzam – DIB's collaboration with Osama bin Laden in the cause of violent jihad dates to the Afghan jihad. During that time, DIB maintained and serviced a jihad account for Abdallah Azzam, spiritual mentor to Osama bin Laden, co-founder of al Qaeda, and co-leader (with bin Laden) of the mujahideen during the "holy war" against the Soviet occupation of Afghanistan of the 1980s. In his book, "Ayyat al Rahman fee Jihad al-Afghan," ("God's Signs in the Afghan Jihad"), Azzam directs monetary donations for the Afghan mujahideen be sent to Account No. 1335 at Dubai Islamic Bank.

*See* Exhibit Q at p. 5. As plaintiffs have previously pointed out, Azzam was instrumental in establishing al Qaeda with Osama bin Laden at the very same time when Azzam was collecting money to finance a mujahideen army for violent jihad through the account in his name at DIB. The historical relationship between DIB and the senior-most leadership of al Qaeda is directly relevant to the character of the relationship between DIB and al Qaeda in the years that followed. Moreover, although Azzam may have died, the relevant account at DIB continued to be active for many years after his death. *See* Exhibit D at pp. 2-3.

### 3. Ali Amin Al Rashidi

Rashidi is a senior al Qaeda member who was present at the founding meetings of al Qaeda in Afghanistan in 1988. Banshiri headed al Qaeda's Military Committee, and according to the 9/11 Commission, was considered "one of the most capable and popular leaders of al Qaeda." *See* 9/11 Commission Final Report at p. 65. Like Azzam, the relationship between DIB and senior members of al Qaeda is directly relevant to the plaintiffs' claims in this litigation.

9

### 4. Hamas Entities

Plaintiffs also seek banking records and related documentation for several entities associated with the Hamas terrorist organization. *See* supra at p. 3 (seeking account records for DIB accounts connected to Hamas entities International Islamic Charity Association, Nablus Zakat Committee, Al Fujairah Charity Organization, Emirates Red Crescent, and Human Appeal International); *see also* Exhibit Q at pp. 2-3 (stating that the U.S. Department of State designated Hamas as a Foreign Terrorist Organization on October 8, 1997).

Banking records and other responsive documents relating to these entities are relevant not only to plaintiffs' claims that DIB knew and intended to support radical terrorist groups like al Qaeda, but also to DIB's defenses in this litigation, particularly where DIB has represented to the plaintiffs and the Court that it is a sophisticated, international financial institution which adheres to the highest standards of international banking practices and abhors terrorism of any kind.

Notably, Dr. Hussein Hamid Hassan, a long-time senior banking official at DIB and the current Chairman of DIB's Fatwa and Shariah Oversight Board, has acknowledged that Hamas is a terrorist organization that engages in acts of violence. *See* Excerpt of the August 3, 2017 Deposition Transcript of Dr. Hussein Hamid Hassan at Exhibit S. Particularly, in light of Dr. Hassan's statements, plaintiffs respectfully submit that disclosure of all DIB bank accounts connected to Hamas is warranted.

### 5. Sheikh Mohamed bin Saqar

Plaintiffs' list also includes Sheikh Mohamed bin Saqar, an individual the German government concluded used his bank account at DIB to transfer funds to al Qaeda charity front Third World Relief Agency. *See* Exhibit Q at p. 11:

> Sheikh Mohamed bin Saqar – According to the German government, on multiple occasions Sheikh Saqar authorized the transfer of funds from his account at DIB to the Third World Relief Agency's bank account in Vienna, Austria. *See* Expert Report of the Federal Office of Criminal Investigation relating to the judicial assistance request, ref. no.

>INV/10289/T09-PH(245), dated 8/27/2002 of the "Office of the Prosecutor" (OTP) of the International Court of Criminal Justice for the former Yugoslavia relating to the "Third World Relief Agency" (TWRA), Vienna/Austria, pp. 19, 20, and 57. The 9/11 Commission concluded that Osama bin Laden used the TWRA to "covertly provide financial and other support for terrorist activities." *See* 9/11 Report at p. 58. *See also* June 8, 2017 letter to DIB.

Whether Sheikh Saqar used his DIB account to finance al Qaeda terrorist activities is probative to the inquiry as to whether DIB maintained a supportive relationship with al Qaeda.

Plaintiffs' relevance summaries for the remaining individuals and entities at issue are equally compelling. *See* Exhibit Q. However, despite plaintiffs' good faith efforts to reach compromise, DIB continues to resist its obligation to search its electronic database for responsive materials within its possession, custody, and control. Accordingly, plaintiffs respectfully request that this Court compel DIB to comply with this Court's March 22, 2016 Order and immediately undertake all efforts to search for relevant banking and financial records for the 31 individuals entities at issue, including the individuals, entities, and accounts previously agreed to by the parties.

### C. DIB Should be Ordered to Comply Immediately With the Court's March 22, 2016 Order and Produce Responsive Documentation Relating to the 1998 U.S. Embassy Bombings

DIB's conduct in these proceedings raises additional concerns that it is purposely evading its obligation to comply with the Court's Order directing DIB to search for and produce responsive documents relating to the 1998 U.S. Embassy bombings. As referenced above, Judge Maas unambiguously ordered DIB to "*expand the search*" for documentation relating to "*investigations or other responses that the bank internally may have had in terms of checking whether it had troublesome accounts or relationships*" following the bombings. *See* supra at p. 4. That Order clearly contemplates that responsive documentation may potentially include: (i) internal DIB meeting minutes, communications, reports, memoranda, and other records relating

11

to any information that DIB, DIB personnel, and/or individuals associated with DIB may have had a connection to the embassy bombings; (ii) meeting minutes or communications between DIB and the UAE government regarding same; (iii) investigations and/or audits conducted by DIB and/or the UAE government in response to those accusations; (iv) reports, memoranda, account records, and other documents generated as a result of any investigation or audit; and (v) reports, memoranda, account records, and other documents DIB and/or the UAE government provided to U.S. investigators.

Notwithstanding the explicit language and intent of the Court's Order, DIB has to date failed to produce any materials remotely responsive to Judge Maas's ruling. Concerned that DIB had disregarded the Court's Order and was withholding responsive records implicating DIB's role in the embassy bombings, plaintiffs sent multiple letters to DIB reminding the defendant of its obligation to "*expand the search*" for documents relating to the attacks, and requesting that DIB update the plaintiffs with information concerning the status and/or findings of the Court-ordered search.[7] After failing to provide a response to plaintiffs' requests on the issue for months, DIB eventually responded on August 14, 2017 with a single sentence merely asserting that "[w]e included responsive documents in our supplemental productions following the March 22, 2016 hearing." *See* Exhibit T. No further information or explanation has been offered. Plaintiffs subsequently requested further clarification, asking DIB to "please identify all such responsive documents, including bates numbers, DIB contends relate to the embassy bombings." *See* Exhibit Q at p. 11. Rather than specify the documents it contends are responsive to the Court-ordered search, DIB directed plaintiffs to over 800 pages of documents "possibly related to the persons involved in the 1998 U.S. embassy bombings." *See* Exhibit R at p. 2. Despite the

---

[7] *See* Exhibit M at p. 2 (April 21, 2017 letter requesting an update as to where DIB's search for responsive documentation stands); Exhibit N at p. 4 (June 2, 2017 letter asking DIB again to address plaintiffs' request for information concerning the status and/or findings of DIB's search for responsive documents); and Exhibit P (August 3, 2017 letter advising that plaintiffs await DIB's response to their previous requests for information regarding the status of its searches for documents relating to the embassy bombings).

fact that DIB was publicly implicated in the embassy bombings in prominent media reports, the production to which DIB has directed plaintiffs does not include any internal memoranda, meeting minutes, investigation records, or other materials a sophisticated financial institution would possess in response to public accusations of involvement in acts of terrorism. Further, the documents in the production have no clear or apparent relationship to the embassy bombings.

Even more troubling, DIB's responses suggest the defendant is attempting to redefine Judge Maas's Order in such a way that it narrows the intended scope of the Court-order searches, thereby excluding highly relevant categories of responsive documents from production, including potentially damaging information linking DIB to the embassy bombings. *See* DIB's August 11, 2016 letter at Exhibit U (stating that its supplemental production of documents, as ordered by the Court on March 22, 2016, contains "documents possibly related to the persons involved in the 1998 U.S. embassy bombings"); DIB's January 4, 2017 letter at Exhibit I (identifying documents to be produced as "accounts … that will relate to the embassy bombings"); DIB's May 22, 2017 letter (same). Any unilateral attempt by DIB to construct a search methodology intended to significantly limit the discovery of relevant materials is in direct violation of the Court's Order.

Plaintiffs respectfully request the Court order DIB (again) to immediately search for and produce documents relating to the 1998 U.S. Embassy bombings as previously directed by this Court, or face sanctions for failure to do so.

## III.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court enter an order directing defendant Dubai Islamic Bank to immediately: (1) search its electronic legacy account database for relevant banking and financial records for the 31 individuals and entities at issue; (2) search its electronic legacy account database for relevant banking and financial records for

the individuals, entities, and accounts previously agreed to by the parties; and (3) search for and produce relevant documentation relating to the 1998 U.S. Embassy bombings in Dar es Salaam, Tanzania, and Nairobi, Kenya, as previously directed by this Court.

Dated:  October 30, 2017                                Respectfully Submitted,

/s/ Sean P. Carter
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

Jodi Westbrook-Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050
New York, New York 10165
Tel:  (212) 944-2200

Christopher T. Leonardo, Esq.
ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South
Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*

**CONSOLIDATED CERTIFICATE OF SERVICE**

  I hereby certify that a true copy of Plaintiffs' Notice of Motion to Compel, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel, and the Declaration of J. Scott Tarbutton in Support of Plaintiffs' Motion to Compel with exhibits, was filed electronically this 30th day of October 2017. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

              /s/
              J. Scott Tarbutton, Esq.

LEGAL\33105172\1 88888.8888.888/801767.000