# EXHIBIT E

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

July 14, 2015

The Honorable Frank Maas
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

  Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

  The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter and accompanying exhibits in support of their request that the Court enter an order pursuant to Federal Rule of Civil Procedure 37(a), compelling defendant Dubai Islamic Bank ("DIB") to produce documents and information responsive to plaintiffs' document requests. Generally speaking, the documents at issue relate to: (1) the 1998 United States Embassy bombings; (2) the 1998 and July 1999 meeting(s) between U.S. officials and representatives from the UAE government; (3) DIB accounts that were frozen following the 9/11 attacks; (4) DIB's Fatwa and Sharia Supervisory Board; and (5) DIB's anti-money laundering policies and practices.[1]

  DIB's refusal to produce these relevant materials is unsupportable on both factual and legal grounds, and represents an improper attempt to avoid its discovery obligations on a wholesale basis. Accordingly, Plaintiffs request that this Court order DIB to search for and produce all such responsive documents.

---

[1] Plaintiffs are filing two motions today in support of their request for an order from this Court compelling DIB to produce relevant categories of documents. This is the second motion, referred to hereafter as "Plaintiffs' Letter Brief #2."

The Honorable Frank Maas
July 14, 2015
Page 2

---

I. **DIB HAS LONG PROVIDED CRITICAL MONEY LAUNDERING AND OTHER FINANCIAL SUPPORT TO AL QAEDA AND ITS AFFILIATES**

Plaintiffs incorporate by reference the underlying factual background found in Plaintiffs' Letter Brief #1, pp. 2-5, filed this same day.

II. **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiffs incorporate by reference the underlying procedural history found in Plaintiffs' Letter Brief #1, pp. 5-6, filed this same day.

The present motion concerns DIB's failure to produce any documents relating to the following issues, which go to the heart of plaintiffs' claims against DIB: (i) the 1998 U.S. Embassy bombings in Kenya and Tanzania; (ii) the 1998 and July 1999 meeting(s) between U.S. officials and representatives from the UAE government concerning the use of DIB by terror groups to launder and move money; (iii) any developments or communications relating to those meetings; and (iv) DIB accounts that were frozen per the orders of the Central Bank of the UAE following the September 11th attacks. In addition, this motion addresses DIB's failure to produce documentation responsive to plaintiffs' requests seeking information relating to DIB's Fatwa and Sharia Supervisory Board and the bank's anti-money laundering policies and practices.

Court intervention is necessary and plaintiffs respectfully request that the Court order DIB to promptly produce all responsive materials, including but not limited to the following categories of documents.

A. **DIB Should Be Compelled To Produce Documents Relating To The 1998 Embassy Bombings**

Plaintiffs' Request Nos. 33-36 seek the production of documents relating to evidence implicating DIB in the 1998 U.S. Embassy bombings in Kenya and Tanzania, and meetings U.S. government officials held with representatives of the UAE government in the wake of those attacks, during which U.S. officials demanded that it close certain accounts at DIB that were used to facilitate the movement of money intended for the attacks. *See* Plaintiffs' Letter Brief #1, p. 3. Plaintiffs' requests seek *inter alia*: (i) documents relating to any meetings or communications between U.S. officials and UAE officials concerning the attacks or use of financial institutions in the UAE to finance the attacks or al Qaeda;[2] (ii) documents relating to any accusation that DIB, DIB personnel, or persons associated with DIB were connected to the attacks; (iii) documents relating to any internal investigation or audit conducted by DIB or the UAE regarding same; (iv) documents that were seized by, or produced to, the United States or

---

[2] Public reporting indicates U.S. officials engaged in discussions with UAE officials following the U.S. Embassy bombings regarding the use of DIB to finance the attacks. *See* Plaintiffs' Letter Brief #1, p. 3. During those discussions, U.S. officials reportedly asked that certain Taliban accounts at DIB be closed, and DIB complied. *Id.*

any investigative body concerning the attacks; and (v) any communications between DIB and the UAE government concerning the accusation that DIB was connected to the attacks.

DIB objects to these requests on various grounds, none of which are well-founded or reasonable. Specifically, DIB objects to these requests on the basis that they are overly broad, unduly burdensome, irrelevant, vague, ambiguous, and not reasonably limited in temporal scope. Not only does DIB present unsupported objections to these requests, but it also broadly refuses to produce any responsive documents.

In point of fact, plaintiffs' inquiries into these topics are predicated on a range of public reporting and evidence implicating DIB accounts in the financing of the attacks and confirming the efforts of U.S. officials to address the terror financing channels through DIB with officials of the UAE. Far from ambiguous or overly broad, plaintiffs' document requests concerning these relationships and developments are both clear and singularly relevant to plaintiffs' claims that DIB maintained institutional links to al Qaeda.

Although DIB agreed during the meet-and-confer process to revisit these areas of inquiry at a later date, DIB has not produced any documents responsive to these requests. Plaintiffs therefore respectfully request that this Court order DIB to produce documents responsive to Request Nos. 33-36.

### B. DIB Should Be Compelled To Produce Documents Relating To The July 1999 Meeting(s) In The UAE

Plaintiffs' Request Nos. 22-28 seek the production of documents regarding the meeting(s) held in or around July 1999 in the UAE involving U.S. officials and representatives of the UAE government, relative to claims that Osama bin Laden was allowed to "funnel money through the Dubai Islamic Bank" with the approval of DIB officials. *See* Plaintiffs' Letter Brief #1, pp. 3-4. Request No. 24 seeks information specifically relating to a one-time bank transfer of approximately $50 million to Osama bin Laden through DIB, also discussed at the meeting(s). *Id.*

Rather than produce the requested materials, DIB objects to these requests as overly broad and irrelevant on the grounds that the request is not reasonably limited in temporal scope. DIB further objects on the basis that the requests are vague, ambiguous, unduly burdensome, and uncertain in their use of various terms, including "money laundering and/or terrorist financing" or "U.S. officials." These terms are hardly ambiguous and the requests seek information directly relevant to the core issues in this litigation.

DIB's objection to the temporal scope of the requests is similarly unfounded. Judge Daniels issued an Order on December 21, 2007 directing that "the appropriate temporal scope of discovery should reasonably begin in 1992." ECF No. 2059. That Order was endorsed by Your Honor during argument at the April 12, 2011 discovery hearing. *See* Transcript, April 12, 2011 Hearing, pp. 42-43. Although counsel for DIB was in attendance at that hearing and offered no

Case 1:03-md-01570-GBD-SN Document 3776-5 Filed 10/30/17 Page 5 of 8
Case 1:03-md-01570-GBD-SN Document 2976-5 Filed 04/14/15 Page 5 of 8

The Honorable Frank Maas
July 14, 2015
Page 4

objection to that ruling, DIB now contends that requests focused on meeting(s) that took place in or around July 1999 are not reasonably limited in temporal scope.

In further support of its effort to avoid discovery with respect to the efforts undertaken by the U.S. government to close the al Qaeda funding channels maintained by DIB, DIB has improperly attempted to re-write the requests to align the scope of the search to suit its own agenda. In doing so, DIB has sought to narrow the scope of the requests to the point of rendering them meaningless, and to appoint itself the sole arbiter of determining what individuals or entities have been affiliated with al Qaeda.

For example, in response to plaintiffs' Request No. 22, which seeks "all documents relating to the . . . July 1999 Meeting(s) . . . regarding Osama bin Laden, DIB's relationship with Osama bin Laden, money laundering, and/or terrorist financing," DIB raises a series of objections and further states:

> Subject to an without waiving the foregoing Specific Objections and General Objections, Dubai Islamic Bank will produce non-privileged documents, if any exist, concerning (i) any relationship between the bank and any individual named "Osama bin Laden" and (ii) any meeting in the U.A.E. attended by the U.S. government, the U.A.E. government, and Dubai Islamic Bank representatives in or around July 1999 concerning any individual named "Osama bin Laden," provided that such documents do not pertain solely to persons or entities who have not been affiliated with al Qaida.

*See* Ex. M to Plaintiffs' Letter Brief #1, p. 35.

Following the parties' meet and confer on March 29, 2011, DIB agreed, specifically with respect to Request Nos. 22-29, that the definition of July 1999 meeting would include a meeting between U.S. and UAE officials, even if such meeting was not attended by DIB officials. DIB further revised its response to Request No. 26 and agreed to produce non-privileged correspondence between DIB and the UAE government relating to any July 1999 meeting(s). Despite these representations, DIB has not produced any additional documents or materials relating to the July 1999 meeting(s).

To date, DIB has only produced roughly 101 pages of documents relating to the July 1999 meetings, virtually all of which relate to DIB's efforts to formulate a public relations response to the New York Times article discussing the meetings and underlying intelligence reports concerning DIB's links to Osama bin Laden (83 pages).[3] DIB has not produced any documents relating to any internal investigations concerning the serious issues discussed in the

---

[3] DIB also produced the July 8, 1999 State Department press briefing (Ex. G to Plaintiffs' Letter Brief #1), during which State Department spokesperson, James Foley, made clear that "terrorist money laundering" was a central issue of those discussions. DIB further produced the July 8, 1999 New York Times article, *"U.S. Officials Say Aid for Terrorists Came Through Two Persian Gulf Nations,"* (Ex. H to Plaintiffs' Letter Brief #1), and a July 8, 1999 Associated Press article reporting on the July 1999 meeting(s) in the UAE.

Case 1:03-md-01570-GBD-SN Document 3776-5 Filed 10/30/17 Page 6 of 8
Case 1:03-md-01570-GBD-SN Document 2976-5 Filed 07/14/15 Page 5 of 7

The Honorable Frank Maas
July 14, 2015
Page 5

New York Times article and in the public statements of State Department officials concerning the July 1999 meetings. Nor has DIB produced any communications with the government of the UAE inquiring about or concerning the meetings with UAE officials. Given the gravity and very public nature of the allegations surveyed in the New York Times article and confirmed by State Department officials, it is implausible to suggest that the handful of non-substantive documents DIB has produced concerning those issues represents a full and complete production of all documents responsive to plaintiffs' discovery requests.

Coupled with the labyrinth of objections DIB has offered in response to plaintiffs' unambiguous requests concerning these topics, and DIB's efforts to rewrite the requests themselves, the scope of the production confirms that DIB has not undertaken adequate and appropriate efforts to locate and produce responsive documents.

Plaintiffs respectfully request that DIB be compelled to conduct a comprehensive search for all documents responsive to Request Nos. 22-28 and promptly produce them to plaintiffs.

### C. DIB Should Be Compelled To Produce Documents Relating To All DIB Accounts That Were Frozen Following The September 11, 2001 Attacks

Plaintiffs' Request Nos. 37-45 seek the production of documents relating to the seizure and freezing of any and all DIB accounts following the September 11th attacks. *See* Plaintiffs' Letter Brief #1, p. 4.

Despite the clear relevance of the requested documents, DIB objects to the production of responsive documents on the basis that the requests are overly broad, unduly burdensome, unlimited by temporal scope, and seeking information not relevant to a claim or defense of any party. As noted above, DIB has not attempted to – and is unable to – demonstrate the validity of these objections. DIB once again imposes its own arbitrary limitations on the discovery requests by agreeing to produce documents, if any exist, for accounts in the name of select individuals. This modification to the discovery requests indiscriminately limits the scope of the request at DIB's discretion. Not only does the modification focus on specific individuals, as opposed to "any and all DIB accounts," DIB's response does not encompass aliases of particular individuals nor does it structure the search in a way that is designed to capture all responsive records. In addition, DIB agrees to produce such documents "provided that the search for such documents does not yield a voluminous number of documents …." DIB's refusal to search its records for documents responsive to Plaintiffs' specific and unambiguous request underscores its intent to align the scope of the search to suit its own agenda.

Plaintiffs respectfully request that DIB be directed to produce all documents responsive to Request Nos. 37-45.

The Honorable Frank Maas
July 14, 2015
Page 6

### D. DIB Should Be Compelled To Produce Documents Relating To DIB's Fatwa And Sharia Supervisory Board

Plaintiffs' requests further seek information relating to DIB's Fatwa and Sharia Supervisory Board and its oversight and control over DIB's operations, including the distribution of DIB funds.

In particular, Request Nos. 46-52 seek documentation relating to Sheikh Yousef al Qaradawi, DIB's first Sharia advisor. *See* Plaintiffs' Letter Brief #1, p. 2, n. 2 (Qaradawi has a long record of advocating acts of terrorism and inciting violence against the U.S. and Israel). Plaintiffs' requests seek information relating to *inter alia*: (i) Qaradawi's role in the establishment, oversight and control over DIB's Fatwa and Sharia Supervisory Board; (ii) Qaradawi's and the Sharia Board's role in designing and implementing Sharia training programs or DIB; (iii) Qaradawi's and the Sharia Board's role in the supervision and control over the distribution of DIB's funds; and (iv) Qaradawi's and the Sharia Board's role in determining or recommending which entities or individuals should receive financial or other support from DIB.

Plaintiffs' Request Nos. 53-64 seek additional documents relating to the Sharia Board, including but not limited to: (i) the Sharia Board's policies and procedures regarding the collection and distribution of *zakat* and *haram* monies; (ii) Sharia Board meeting minutes; (iii) annual or periodic reports prepared by the Sharia Board; (iv) fatwas issued by the Sharia Board; (v) the Sharia Board's oversight and control over DIB's branch offices; (vi) statements or speeches by members of the Sharia Board regarding Muslim conflict regions and the legitimacy of armed jihad; and (vii) all fatwas issued by members of the Sharia Board mentioning "jihad." *See* Plaintiffs' Letter Brief #1, p. 2 and n. 2-3 (members of DIB's Sharia Board have issued and/or endorsed fatwas supporting jihad, justifying suicide attacks, and permitting *zakat* funds to be paid to radical and violent Islamic groups).

DIB broadly objected to these requests as overly broad, unduly burdensome, not reasonably limited in temporal scope, and seeking information not relevant to a claim or defense of any party. DIB additionally asserted that the term "Fatwa and Sharia Supervisory Board" is vague and ambiguous." During the parties' meet and confer, DIB withdrew that particular objection and agreed to determine whether the Sharia Board possesses records that may be searched electronically.

DIB's January 24, 2012 production includes some general information regarding the Sharia Board, but the defendant has largely omitted much of the information plaintiffs seek, as described above (*e.g.*, meeting minutes, annual reports, fatwas, sharia training programs, etc.). Nor has DIB produced a single document relating to Qaradawi and his relationship with the bank, including any role he played in establishing the Sharia Board and influencing its decision making. Plaintiffs therefore request that this Court strike DIB's objections to Request Nos. 46-64 and order the defendant to produce all responsive documents.

Case 1:03-md-01570-GBD-SN Document 3776-5 Filed 10/30/17 Page 8 of 8
Case 1:03-md-01570-GBD-SN Document 2964-5 Filed 07/14/15 Page 7 of 7

The Honorable Frank Maas
July 14, 2015
Page 7

E.   **DIB Should Be Compelled To Produce Documents Relating To DIB's Anti-Money Laundering Policies And Practices**

Plaintiffs' Request Nos. 65-81 seek information regarding DIB's anti-money laundering ("AML"), combatting terrorism financing ("CTF"), and know-your-customer ("KYC") policies and practices, including without limitation, documentation relating to: (i) account opening procedures; (ii) internal monitoring and/or reporting of wire transfers; (iii) training of DIB personnel in AML, CTF and KYC policies and procedures; (iv) software or internet-based applications used by DIB for monitoring and detecting money-laundering, terrorist financing, or suspicious activities; (v) DIB's policies, procedures, and compliance with suspicious transaction reporting or suspicious activity reporting; and (vi) internal and external auditing of DIB's AML, CTF, KYC policies and practices.

DIB generally objects to each of plaintiffs' requests as vague, overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party. DIB does produce some documentation mentioning "money laundering," but the production can hardly be described as a good faith effort to respond to plaintiffs' requests. For example, the production consists almost entirely of one and two-page letters, dated 2001, authored by DIB employees discussing money laundering forms, concerns regarding hawala transfers, and the appointment of personnel to coordinate the bank's anti-money laundering efforts. *See* DIB02957, 2958, 2961, 2964, 2970-71, 2972, 3044.

Without question, DIB continues to withhold a wealth of documentation and information responsive to plaintiffs' requests. Plaintiffs respectfully ask the Court to order DIB to produce all responsive documents.

Respectfully submitted,

J. Scott Tarbutton, Esq.
THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

SPC

cc:   The Honorable George B. Daniels (via overnight UPS mail)
      MDL-1570 Counsel of Record (via email)

LEGAL\23838401\1 00000.0000.000/117430.000