# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks on September 11, 2001

03 MDL 1570 (GBD) (SN)

**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DEFENDANT
DUBAI ISLAMIC BANK**

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ............................................................................. 2

     A.    Plaintiffs' Discovery Requests and the Parties' Search Term Methodology ......................................................................... 2

     B.    Plaintiffs Waited Nearly Three Years to File Motions to Compel ........... 4

     C.    The Parties' Negotiations Since the Initial Motions to Compel ............... 4

II.     PLAINTIFFS' ADDITIONAL SEARCH TERMS ARE BEYOND THE NUMERICAL LIMIT OF 500 SET BY JUDGE MAAS .................................... 5

III.    DIB OBJECTED TO 17 OF THE TERMS IN 2011 AND 2012 AND THOSE SEARCH TERMS ARE NOT RELEVANT TO THE CLAIMS AGAINST DIB ................................................................................ 6

     A.    DIB Timely Objected to These 17 Terms in 2011 and 2012 .................... 7

     B.    Plaintiffs Did Not Move To Compel These Terms at the March 2016 Hearing ................................................................... 9

     C.    These 17 Search Terms Are Irrelevant to Plaintiffs' Claims Against DIB ...................................................................... 10

IV.    PLAINTIFFS PROPOSE 20 NEW SEARCH TERMS BEYOND THE SCOPE OF DISCOVERY ...................................................................... 13

     A.    Terms Without Concrete Ties to Al Qaeda ............................................. 14

     B.    Terms Tied to Charitable Organizations ................................................. 15

     C.    Search Terms Connected to Abd al Latif Al Imran ................................ 15

     D.    Search Terms Related to Binladen Overseas and Yassin al Kadi ........... 16

     E.    Search Terms Related to Ballayth ........................................................... 17

V.     DIB COMPLIED WITH THE COURT'S ORDER RE RECORDS RELATED TO THE EMBASSY BOMBINGS ................................................. 17

VI.    CONCLUSION .................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES** **Page**

*Coleman v. Starbucks*,
    No. 6:14-CV-527-ORL, 2015 WL 2449585 (M.D. Fla. May 22, 2015) ................................10

*In re Teligent, Inc.*,
    358 B.R. 45 (Bankr. S.D.N.Y. 2006) .....................................................................................10

Plaintiffs' Motion to Compel should be denied because it ignores Judge Maas's prior rulings and seeks to revive relevancy issues resolved many years ago. Dubai Islamic Bank ("DIB") completed its document production in August 2012. Plaintiffs then waited almost three years to file their initial two motions to compel in July 2015. In March 2016, Judge Maas then ordered that DIB search its legacy bank account database using 421 search terms he identified that fell into four categories. Judge Maas also allowed Plaintiffs to supplement those search terms with aliases and other names in those four categories, but the search terms were to total "not more than 500" search terms. Plaintiffs' Motion to Compel ("MTC"), Ex. G at 56.

Plaintiffs have ignored Judge Maas's ruling ever since. Plaintiffs have refused to use all of the 421 search terms set by Judge Maas, have refused to obey the 500 term limitation, have ignored the four categories identified in his ruling, and have sought to re-litigate objections from 2011 and 2012 on which Plaintiffs never previously sought to challenge. Out of a spirit of compromise, DIB attempted to work with Plaintiffs and DIB tried to compromise with Plaintiffs by offering to use 629 search terms—129 more than Judge Maas ordered.

Despite DIB's compromise efforts, Plaintiffs refuse to relent on 37 terms that relate to 31 individuals or entities falling into 2 categories: (i) 17 terms that Plaintiffs included in document requests in 2010 and 2012 but on which Plaintiffs never moved to compel in 2012 and (ii) 20 new search terms that relate to persons having no direct ties to al Qaeda, Osama Bin Laden, the U.S. embassy bombings, the September 11 attacks, or any claims or defenses.

In addition, Plaintiffs seek to compel information that relates to DIB investigations in the wake of 1998 U.S. Embassy bombings. DIB has searched for and produced its responsive information. For these reasons and those set forth below, the Court should deny Plaintiffs' motion.

I.      **BACKGROUND**

A.      **Plaintiffs' Discovery Requests and the Parties' Search Term Methodology**

To allow document collection to proceed efficiently, Judge Maas ordered that Plaintiffs serve all document discovery requests on merits defendants by December 10, 2010 (Dkt. 2381, attached as Ex. 1).  Plaintiffs served their First Set of Requests for Production of Documents on DIB in 2010 ("First RFPs").  MTC, Ex. A (Oct. 15, 2010).  On January 21, 2011, DIB filed its responses and objections to those requests, including objections to 11 of the search terms currently in dispute.  DIB's Resps. & Objections to Pls' Reqs. for Produc. (Jan. 21, 2011) (attached as Ex. 2).

In March and July 2011, counsel for DIB and Plaintiffs met and conferred to address DIB's objections.  A key issue that the parties confronted was how DIB should search its banking records for relevant al Qaeda members and other individuals.  The parties agreed to a search term methodology by which DIB would search its electronic banking records.  On July 7, 2011, DIB summarized the parties' search term agreement:

> Plaintiffs asked that DIB include additional search terms.  DIB agreed to do so provided that the additional list of terms was not subject to a valid objection, such as unduly burdensomeness or irrelevance.  DIB also suggested that Plaintiffs include on that list (a) names in Arabic because many records are not in English and (b) alternative spellings of both English and Arabic names that it would like searched.  Plaintiffs agreed to provide for DIB's consideration a proposed list of additional search terms, including terms in Arabic and alternate spellings of terms.

Letter from S. Cottreau at 4 (July 7, 2011) (attached as Ex. 3).  As part of this agreement, DIB agreed to search for the "names of individuals and entities as identified in Plaintiffs' Requests [and] additional search terms" agreed upon by the parties, and all persons identified in DIB's "correspondence from the U.S. or U.A.E. governments that identifies a person as being affiliated with al Qaeda."  *Id.* at 4, 7.

2

Plaintiffs then provided DIB with two lists of terms totaling over 2,900 names in July 2011. *See* Email from S. Tarbutton (July 15, 2011) (attached as Ex. 4). DIB objected to, among other things, the relevance and burdensomeness of this proposal. In an effort to narrow the search term lists to Rule 26's scope of discoverable information, DIB analyzed the 9/11 Commission Report and narrowed Plaintiffs' lists to the "full name search terms (including alternative spellings) for the individuals on Plaintiffs' Lists that [DIB was] able to identify as having been mentioned in the 9/11 Commission's Report as having a connection with the terrorist attacks of September 11, 2001." Letter from S. Cottreau at 2 (Sept. 8, 2011) (attached as Ex. 5). This list contained 194 terms. Plaintiffs never responded. On September 22, 2011, DIB revised the list to 261 terms, which included "additional search terms that attempt to take into account alternative ways in which these names could have been stored." Letter from S. Cottreau at 2 (Sept. 22, 2011) (attached as Ex. 6). Again, Plaintiffs never responded.

DIB then engaged in a comprehensive document collection effort, including searching its electronic account system by using the 261 search terms proposed. DIB completed its production in August 2012 (as it was required to do by the operative court scheduling order at the time). *See* Letter from S. Cottreau (Aug. 30, 2012) (attached as Ex. 7).

On July 31, 2012, one month before document discovery was set to close and after DIB's conducted an extensive document collection process, Plaintiffs served 43 Supplemental Requests for Production of Documents ("Supplemental RFPs"). MTC, Ex. B. In response, DIB objected that Plaintiffs' supplemental requests violated Judge Maas's order requiring that all written discovery requests be served by December 10, 2010. DIB's Resps. & Objections to Pls' Suppl. Reqs. for Produc. (Sept. 4, 2012) (attached as Ex. 8). In addition, DIB explained that "Plaintiffs' supplemental requests [were] untimely and objectionable in their entirety" and "inconsistent with

the agreement [DIB] reached with Plaintiffs over a year ago."  Letter from S. Cottreau at 2 (Aug. 22, 2012) (attached as Ex. 9).

**B.** **Plaintiffs Waited Nearly Three Years to File Motions to Compel**

Instead of responding to DIB's 2011 and 2012 objections, Plaintiffs waited almost three more years to file motions to compel on July 14, 2015.  MTC Exs. D & E.  Oddly, Plaintiffs' Motions to Compel ignored the parties agreed upon search term methodology, which DIB noted in its opposition.  *See* Dkt. 3057 (Sept. 20, 2015) (attached as Ex. 10).

On March 22, 2016, the parties appeared before Judge Maas to argue Plaintiffs' Motions to Compel.  During this hearing, Judge Maas then ordered that DIB use 421 search terms from four categories:

1) "[t]he 261 . . . search terms that were agreed upon by the plaintiffs and by the defendants";

2) "the 152 alleged Taliban accounts" listed in a document that the Court ordered DIB to produce in unredacted form;

3) "[t]he eight . . . actual accounts found and produced to the plaintiff[s]" by DIB in its prior productions; and

4) "accounts . . . relate[d] to the embassy bombings."

MTC, Ex. G at 58, 51, 55.  Judge Maas permitted Plaintiffs to supplement this list with additional search terms in these categories up to not more than 500 search terms.  MTC, Ex. G at 55.  Using those search terms, DIB was required to provide "the account opening and if there is any account closing paperwork, the periodic [account] statements and the other electronic information" for exact matches in the account holder field of its legacy electronic account record system.  *Id.*

**C.** **The Parties' Negotiations Since the Initial Motions to Compel**

On April 13, 2016, DIB sent a letter to Plaintiffs detailing DIB's discovery obligations in light of Judge Maas's oral ruling.  *See* Letter from S. Cottreau (Apr. 13, 2016) (attached as Ex.

11).  DIB compiled the search terms in the first three categories Judge Maas ordered and "attempted to remove any duplicate names that existed on this list as a result of assembling search terms covering categories 1, 2, and 3."  *Id.* at 2.  As a result, DIB proposed a total search term list of 422 terms.

Plaintiffs waited in total almost six months to substantively respond to DIB's post-hearing search term proposal.  Instead of complying with Judge Maas's ruling limiting search terms to 500 terms in 4 categories, Plaintiffs in October 2016 proposed a list of 804 search terms.  MTC, Ex. H. This proposal disregarded Judge Maas's order by (i) removing some of the 421 search terms Judge Maas ordered be searched, (ii) failing to count each alias as a search term in order to exceed the 500 term limit, and (iii) ignoring the four categories established by Judge Maas.

The parties have been negotiating from that list of 804 terms ever since, exchanging letters and holding multiple meet and confers to reach agreement on the majority of the search terms. Since the hearing, DIB has agreed to add over 200 search terms that were not amongst the 421 search terms identified by Judge Maas.  Presently, the search term list is 629 search terms—129 terms more than Judge Maas ordered.  Unfortunately, the sides remain in disagreement over an additional 37 search terms, which fall into 2 categories: (i) 17 search terms for which Plaintiffs have waived their right to discovery, and (ii) 20 search terms that are irrelevant to the current litigation and outside of the search term standards set by Judge Maas.  *See* MTC, Ex. R at Attachment A, Nos. 1-17, 18-37 (respectively).

## II.    PLAINTIFFS' ADDITIONAL SEARCH TERMS ARE BEYOND THE NUMERICAL LIMIT OF 500 SET BY JUDGE MAAS

The search term list is already at 629 terms—129 terms over Judge Maas's order of 500 search terms.  *See* MTC, Ex. G at 58, 51, 55.  In arriving at a limitation of 500 search terms, the Court recognized that the effect of its rulings at the hearing already totaled 421 search terms, and

permitted Plaintiffs the chance to provide additional alternative spellings, Arabic spellings, and aliases to be used by DIB to find account holder name matches in its legacy electronic account records system.  Indeed, amongst the 421 search terms identified by the Court were some aliases for single persons—*e.g.*, seven search terms for Ziad Samir Jarrah—thereby confirming that Judge Maas's limitation of 500 was a limitation on the number of search terms.  *See* Ex. 6.  Plaintiffs' bid for more than 500 search terms simply seeks to ignore the limitations in Judge Maas's ruling.

Indeed, Plaintiffs have sought to ignore Judge Maas's March 2016 order in other ways as well.  First, Plaintiffs have sought to subtract many terms from the 421 search terms set by Judge Maas.  Moreover, Plaintiffs have sought to extend the list beyond the four categories set by Judge Maas: the "261 [terms] that the bank has proffered," "152 alleged Taliban accounts, terms related to "eight other accounts" already produced by DIB, and terms related to the U.S. Embassy bombings.  MTC, Ex. G at 51.[1]  Because Plaintiffs' 37 proposed search terms fall outside of Judge Maas's ruling, Plaintiffs' Motion to Compel should be denied.

## III.   DIB OBJECTED TO 17 OF THE TERMS IN 2011 AND 2012 AND THOSE SEARCH TERMS ARE NOT RELEVANT TO THE CLAIMS AGAINST DIB

Seventeen search terms sought by Plaintiffs concern entities and individuals upon which Plaintiffs previously sought document discovery in 2010 or 2012, but to which DIB quickly objected in 2011 and 2012.  Instead of timely dealing with those objections, Plaintiffs instead moved forward in discovery, implicitly conceding DIB's objections.

---

[1] Since the hearing, in the spirit of compromise, DIB has relented and permitted some reasonable expansion of these categories as demanded by Plaintiffs, including search terms for "names of alleged members of al Qaeda on a UN or OFAC list."  Letter from K. Barlow (Mar. 22, 2017) (attached as Ex. 12).  In addition, DIB has been willing to add persons or entities who during the relevant period allegedly were members of al Qaeda or deliberately provided funding or relevant logistical support and who were not subject to prior objections in 2011 and 2012.  See MTC, Ex. R.  But, for the reasons set forth below, the 37 search terms at issue remain objectionable.

Plaintiffs, however, have sought to use Judge Maas's limited ruling in March 2016 concerning 500 search terms in four limited categories to try to re-litigate settled objections raised by DIB in 2011 and 2012.  Plaintiffs' request for these search terms should be denied for two key reasons.  <u>First</u>, Plaintiffs never sought to timely litigate DIB's 2011 and 2012 objections and never sought a ruling from Judge Maas on these objections at the hearing in March 2016.  <u>Second</u>, the 17 search terms concern persons and entities not relevant to Plaintiffs' claims against DIB and its defenses.

**A.**     **DIB Timely Objected to These 17 Terms in 2011 and 2012**

As set forth below, DIB previously objected to all of the persons at issue in these 17 search terms: 11 in 2011 and 6 in 2012.  Plaintiffs have waived any dispute regarding these terms by not previously pursuing a motion to compel on these 17 terms.

**1.**     **2011 Objections to 11 Terms**

Plaintiffs served document requests concerning 11 of the names in dispute in October 2010 as part of Plaintiffs' First RFPs: International Islamic Charity Organization; Nablus Zakat Committee; Al Fujairah Charity International; Emirates Red Crescent; Al Ihsan Charitable Society; Dar al Bir Society; Human Appeal International; Abdullah Azzam; Ali Amin al Rashidi; Abu Ubaidah al Banshiri; and Al Shamal Islamic Bank.  *See* MTC, Ex. A.  DIB specifically objected to each of these terms on January 21, 2011.  *See* Ex. 2 at Nos. 10, 31, 89, 91, 92, 93, 94, 95, 97, 98, 99, 100, 101, 102, 106.  DIB's objections included that discovery about such persons was overly broad, unduly burdensome, and seeking information not relevant to a claim or defense of any party.  *See id*.

Plaintiffs never moved to compel on the basis of DIB's 2011 objections.  Instead, Plaintiffs dropped any dispute about DIB's objections and never sought to over-rule them in Plaintiffs' initial motions to compel in 2015, which were decided by Judge Maas at the hearing in March 2016.

Instead, Plaintiffs simply tried to reassert their discovery requests by including these 11 entities amongst their proposed search terms.  Those terms remain objectionable and beyond the scope of relevant discovery, and Plaintiffs' delay has further waived any right they have to such discovery.

### 2. 2012 Objections to 6 Terms

As noted above, Judge Maas structured document discovery to require all document requests to be served by Plaintiffs by December 10, 2010.  Plaintiffs proceeded to ignore Judge Maas's ruling, serving Plaintiffs' Supplemental RFPs in July 2012.  Those Supplemental RFPs included requests for 6 of the search terms currently in dispute: International Islamic Relief Organization (with additional search terms of IIRO, Igatha, and Hay'at al-Igatha al-Islamiya al-'Alamiyaa); Special Chechen Refugees Assistance Fund; and Jamiat Dubai al Heiriyah.  See MTC, Ex. B.

On September 4, 2012, DIB objected to these requests.  *See* Ex. 8 at Nos. 39, 40, 42 (Sept. 4, 2012).  DIB also objected to these Supplemental RFPs as untimely because they ignored Judge Maas's Discovery order.  Plaintiffs' Supplemental RFPs were not "follow-up discovery based upon facts Plaintiffs learned during the course of discovery in this matter; instead, Plaintiffs' Supplemental Requests [were] merely an end run around the Court requirement that Plaintiffs serve document requests by December 10, 2010."  *Id.* at 2.  In this litigatfion, the Court has limited its consideration of follow up  discovery to "reasonable requests suggested by that discovery which is produced."  Dkt. No. 2717, Tr. at 13:6–7 (Jun. 28, 2013) (attached as Ex. 13).  Plaintiffs' Second RFPs did not meet this standard.  In fact, none of these 6 terms currently in dispute were requested

based upon information Plaintiffs did not have and could not reasonably have discovered on December 10, 2010.

In response, Plaintiffs in July 2015—after a three year delay—sought an order from Judge Maas seeking to enforce their Supplemental RFPs—including the 6 terms now at issue. DIB opposed Plaintiffs' prior motions to compel, explaining

> On July 31, 2012—almost two years after the December 10, 2010 deadline set by this Court for the service of document requests—Plaintiffs served 43 additional document requests. On August 22, 2012, DIB objected to the Second RFPs in their entirety because the requests were "untimely" and "because the requests are not follow-up discovery based upon facts Plaintiffs learned during the course of discovery in this matter; instead, Plaintiffs' Supplemental Requests are merely an end-run around the Court's requirement that Plaintiffs serve document requests by December 10, 2010." These objections should be sustained.

Ex. 10 at 18.

In response to the Parties' briefing in 2015, Judge Maas never issued an order compelling DIB to respond to any of Plaintiffs Supplement RFPs—including requests for discovery concerning IIRO, Special Chechen Refugees Assistance Fund, or Jamiat Dubai al Heiriyah. Indeed, when given the chance to raise this issue at the March 2016 hearing on the motions to compel, Plaintiffs abandoned their request for enforcement of the Supplemental RFPs as explained below.

**B.**      **Plaintiffs Did Not Move To Compel These Terms at the March 2016 Hearing**

During the March 22, 2016 Motions to Compel hearing, Judge Maas established a process for the search term list and Plaintiffs litigated a variety of other discovery issues, but Plaintiffs never asked the Court to add these 17 terms to the search term list.[2]   Plaintiffs had many opportunities.   Plaintiffs suggested that "the only remaining issue is with regard to the 1999

---

[2] Plaintiffs did argue generally to add HAMAS entities to the list of categories for the search term list.  Judge Maas did not grant this request.  MTC, Ex. G at 49.

meeting." MTC, Ex. G at 64. Later, near the end of the hearing Judge Maas directly asked Plaintiffs, "[i]s there anything else that we ought to take up today?" MTC, Ex. G at 164. Plaintiffs then moved on to other issues concerning other parties. *See id*. At that point, Plaintiffs abandoned all of the other issues they raised in their two motions to compel—including discovery about the individuals and the entities that Plaintiffs then tried to reinject through backdoor of the search term process.

The Court should not allow Plaintiffs to use the search term list to revive their improper and abandoned requests. "A party must bring discovery abuses to the Court's attention within a reasonable time." *In re Teligent, Inc.*, 358 B.R. 45, 59 (Bankr. S.D.N.Y. 2006) (finding that waiting three years to raise a discovery issue is unreasonable delay); *see also, e.g.*, *Coleman v. Starbucks*, No. 6:14-CV-527-ORL, 2015 WL 2449585, at *8 (M.D. Fla. May 22, 2015) ("[w]hen parties fail to raise discovery disputes with the court in a timely manner, those disputes can fester into serious case management problems."). Allowing Plaintiffs to prevail would set dangerous precedent and extend this already lengthy litigation.

### C.   These 17 Search Terms Are Irrelevant to Plaintiffs' Claims Against DIB

DIB has maintained objections to all 17 of these search terms because they are irrelevant to the claims or defenses of the parties and outside the relevant scope of discovery set forth in Rule 26. To prevail in this litigation, Plaintiffs must prove, amongst other things, that DIB purposefully directed its conduct at the U.S. (to establish personal jurisdiction) and conspired with al Qaeda to commit the September 11 attacks. In fact, DIB never knowingly provided financial services to anyone who brought about the terrible tragedy of 9/11. As Judge Daniels explained in denying DIB's Motion to Dismiss, Plaintiffs must show that DIB was an "intentional, knowing and direct participant in providing money laundering services to al Qaeda, which allowed for direct funding

of terrorist attacks." Dkt. 2252 at 49 (June 17, 2010) (attached as Ex. 14). None of Plaintiffs' 17 search terms are relevant to Plaintiffs' claims.

### 1.   **Hamas and Chechen Extremists**

Plaintiffs have sought search term discovery related to 9 entities that Plaintiffs claim support Hamas or Chechen extremists: Special Chechen Refugees Assistance Fund; International Islamic Charity Organization; Nablus Zakat Committee; Al Fujairah Charity International; Emirates Red Crescent; Al Ihsan Charitable Society; Dar al Bir Society; Jamiat Dubai al Heiriyah; and Human Appeal International. *See* MTC at 13; MTC, Ex. Q. Plaintiffs suggest that Hamas entities are relevant to DIB's defenses.

Judge Maas, however, already heard this argument from Plaintiffs in March 2016 and refused to add Hamas entities to the search term list. MTC, Ex. G. at 49–50. Plaintiffs' request is a second bite at the apple. Plaintiffs also argue that they are entitled to add Hamas entities to the search term list because Dr. Hussein Hamid Hassan, chairman of DIB's Fatwa and Sharia Oversight Board, "acknowledged that Hamas is a terrorist organization." MTC at 13. Dr. Hussein's opinion, however, does not make Hamas-related entities relevant to the events of September 11, 2001.

### 2.   **Old Al Qaeda Connections**

Plaintiffs also seek to use search three terms related to two individuals: Abdullah Azzam and Ali Amin al Rashidi (alias: Abu Ubaidah al Banshiri).

DIB objects to the inclusion of these two individuals because they are far removed from the events at issue in this litigation. Abdullah Azzam died in 1989. *See* Ex. 10. The issue in this motion to compel is whether DIB must provide account opening documents and annual account statements from 1992 through 2004. An individual who died in 1989 simply is not within the scope of relevant discovery.

Likewise, Ali Amin al Rashidi (Abu Ubaidah al Banshiri) is irrelevant to Plaintiffs' claims. Plaintiffs' only allegations are that Banshiri attended a 1988 meeting to found al Qaeda. *See* MTC at 12. But that alleged relevance pre-dates the discovery start date in this litigation of 1992 and is far removed from the events of September 11, 2001.

### 3. International Islamic Relief Organization

Plaintiffs also seek blunderbuss discovery of banking information concerning International Islamic Relief Organization, suggesting search terms International Islamic Relief Organization, IIRO, Igatha, and Hay'at al-Igatha al-Islamiya al-'Alamiyaa (collectively IIRO).

As noted above, Plaintiffs first sought untimely discovery from DIB regarding IIRO in their 2012 Supplemental RFPs. No information related to IIRO was "follow up" discovery that was an exception to the Court's order that Plaintiffs serve discovery requests by December 10, 2010. In fact, IIRO had long been a defendant in multiple 9/11 suits well before the 2010 discovery request deadline.

Indeed, discovery regarding IIRO is not even relevant to Plaintiffs' claims. None of the six pending complaints against DIB make any allegation that DIB assisted IIRO in connection with terrorist funding or conspired with IIRO in any way. Moreover, even if Plaintiffs had made such an allegation, a request for copies of all account statements matching an IIRO search term would likely be overbroad, encompassing all transactions in an account of a charity, regardless of any actual connection between the transaction and al Qaeda.

### 4. Al Shamal Islamic Bank

DIB has objected and continues to object to the inclusion of Al Shamal Islamic Bank as a search term because Al Shamal Islamic Bank is not relevant to the claims or issues of this case. Plaintiffs initially sued Al Shamal Islamic Bank, but Judge Daniels dismissed all claims against Al Shamal Islamic Bank on June 17, 2010. Dkt. 2252 at 44–45. In particular, Judge Daniels held

that "[t]he alleged acts of rendering support to al Qaeda during its formative years, performing routine banking services for customers having terrorist ties, and having investors or shareholders who purportedly are sponsors of terrorism" were "too remote and attenuated" to support claims against Al Shamal Islamic Bank.  *Id*.

Judge Daniels's ruling is instructive: discovery—like Plaintiffs' allegations—is simply "too remote and attenuated" to be permitted concerning Al Shamal Islamic Bank.  In fact, Plaintiffs have never alleged in their complaints against DIB that Al Shamal Islamic Bank used its accounts at DIB to assist al Qaeda or to carry out terrorist attacks.  For these reason, Plaintiffs' bid for broad discovery concerning Al Shamal Islamic Bank should be denied.[3]

## IV.   PLAINTIFFS PROPOSE 20 NEW SEARCH TERMS BEYOND THE SCOPE OF DISCOVERY

Plaintiffs also seek to add 20 additional search terms to the list of 629 terms.  DIB has objected to these 20 search terms because, amongst other reasons, they are not within Rule 26's scope of discovery and are unduly burdensome.

In addition to being overbroad, these final 20 search terms at issue are not relevant to a claim or defense of any party.  Plaintiffs have ***not contended that their complaints allege any illicit ties*** between these persons and DIB, much less that DIB sought to assist al Qaeda through these individuals or organizations.  Such search terms epitomize the fishing expedition that Plaintiffs now seek to have this Court endorse.

---

[3] In the spirit of compromise, DIB previously agreed to produce "non-privileged documents, if any exist, sufficient to show any relationship between Dubai Islamic Bank and … Al Shamal Bank." See Ex. 2 at No. 106.  DIB made that production.

A.    **Terms Without Concrete Ties to Al Qaeda**

Plaintiffs seek all account statements hitting on the following 7 search terms: Abdullah I. Lootah; Al Kdrow; Abdelsamad Mohamed; Khalid Ali Walid; Saleh Salim al Shamsi; Sameer Mohamed Mahmoud; and Yasser al Otaibi.

The only search term Plaintiffs even attempt to link to DIB is Abdullah I. Lootah, who Plaintiffs allege is a relative of DIB's founder H.E. Saeed bin Ahmed Al Lootah, who founded the bank in 1975.  Plaintiffs, however, provide no connection between Abdullah I. Lootah and any attempt to assist al Qaeda.  Indeed, Plaintiffs do not allege that he is a member of al Qaeda or linked to any terrorist activity.

The remaining six search terms are likewise lacking.  All of these terms are loosely connected or not connected to terrorism at all.  **1)** Plaintiffs seek to use the search term Abdelsamad Mohamed, but the only justification is that his brother-in-law was an al Qaeda member Khalid Sheikh Mohamed; Plaintiffs cite no reason to believe that Mr. Mohamed had any role in al Qaeda. **2)** Khalid Ali Walid served as an accountant for Taba Investments and Ladin International Company, al Qaeda affiliated companies, but Jamal al Fadl, a United States government witness, testified that Khalid Ali Walid was not a member of al Qaeda.  *See* S(7) 98 Cr. 1023, Tr. 251:2–3 (attached as Ex. 15).  **3-4)** Sameer Mohamed Mahmoud and Yasser al Otaibi's names appear on a 2002 circular that was transmitted by the Central Bank of the U.A.E. to all banks in the UAE. Plaintiffs allege that this Central Bank circular links these individuals to terrorism, but the circular itself does not indicate that these individuals are terrorists or have any relation to al Qaeda.  **5)** Al Kdrow allegedly is a Sudanese company run by Mamdouh Mahmud Salim, but Plaintiffs point to no allegations that the company had any connection to terrorism or al Qaeda.  **6)** Plaintiffs seek to add Saleh Salim al Shamsi as a search term because a U.S. Treasury Assistant Secretary in 2004 suggested "that the USG and the UAEG consider jointly submitting his name to the UN."  MTC,

14

Ex. Q at 8.  Plaintiffs, however, do not allege that al Shamsi had any role in the September 11 attacks or was assisted in any way by DIB.

### B.    Terms Tied to Charitable Organizations

Plaintiffs also seek the use of search terms Darbar Charity and Sheikh Mohamed bin Saqar.

Regarding Darbar Charity, Plaintiffs allege that 9/11 hijacker Marwan al Shehhi sent nominal donations to Darbar Charity prior to the September 11 attacks.  Plaintiffs never allege that Darbar Charity assisted al Qaeda in any way or that any government has placed it on a terrorist related watch list.  Nor do Plaintiffs allege that DIB sought to assist or conspire with Darbar Charity to assist al Qaeda.  Moreover, discovery of all yearly account statements would be grossly overbroad discovery for a legitimate charity, as such statements may reflect all donations and expenditures, none of which may have any relevance to this litigation.

Plaintiffs also seek to use a search term for Sheikh Mohamed bin Saqar because Plaintiffs allege that he may have transferred money from a DIB account to the Third World Relief Agency (TWRA), an international charity.  Plaintiffs allege that TWRA assisted al Qaeda.  *See* MTC, Ex. Q.  What Plaintiffs do not allege is that Sheikh Saqar donated to assist TWRA in funding terrorism, or that Sheikh Saqar was linked to terrorism in any way.  Furthermore, Plaintiffs do not suggest that DIB is linked to TWRA's alleged support for terrorism.

### C.    Search Terms Connected to Abd al Latif Al Imran

Plaintiffs also seek to search terms affiliated with Rumat International: Rumat International, Romat, Abd al Latif Al Imran, Union Beverages Company, and Union Beverage Factory.

Plaintiffs request to add Rumat International and Romat to the search term list because Mamdouh Mahmoud Salim testified that he worked for the company from 1997–1998.  *See* MTC, Ex. Q.  Plaintiffs, however, do not make any allegations that Romat itself was involved in terrorist

15

activities. A former employer of a terrorist is not a direct enough link to terrorism to support the search for and production of all bank account statements for that employing company.

Similarly, Plaintiffs seek a search term for Abd al Latif Al Imran, the alleged owner of Romat and alleged owner of Union Beverage Company (or Union Beverage Factory), which Plaintiffs suggest is a U.A.E. company connected to Chechen extremists. *See id*. Plaintiffs simply have not shown any relevance of these organizations to its claims against DIB and have made no allegations against DIB concerning these persons.

### D.      Search Terms Related to Binladen Overseas and Yassin al Kadi

Plaintiffs also seek the use of search terms Binladen Overseas (Pvt Ltd), Mohamed Ahmed Obaid Bin Mahfouz; Yasin Ahmed Mohamed Ali; and Ahmed Mohamed Ali Yasin.

Plaintiffs seek to add Binladen Overseas (Pvt Ltd) to the list solely because it is allegedly affiliated with defendant Saudi Binladin Group ("SBG") and was awarded a contract to construct an airport in Port Sudan during period of time al Qaeda relocated to Sudan. *See* MTC, Ex. Q at 10. As explained in SBG's memorandum in support of its Motion to Dismiss, "performance of a government contract from 1989-92 to construct an airport in the Sudan is simply not tortious conduct by SBG purposefully directed at the United States." *See* Dkt. 3701 at 18 (Aug. 21, 2017) (attached as Ex. 16). More importantly, the construction of the airport in Sudan has absolutely nothing to do with DIB or Plaintiffs' allegations against DIB.

The same is true of Plaintiffs' requests to add Mohamed Ahmed Obaid Bin Mahfouz and Yasin Ahmed Mohamed Ali (alias Ahmed Mohamed Ali Yasin) to the search term list. Bin Mahfouz was allegedly a business associate of defendant Yassin al Kadi, and according to Plaintiffs, he "had a relationship close relationship with Khalid Amer Ballayth," and oversaw the Islamabad, Pakistan branch of the Muwafaq Foundation. *See* MTC, Ex. Q. Plaintiffs also allege that Ali was a director of a Sudanese company owned by the Muwafaq Foundation. *Id*. Plaintiffs

allege ties between the Muwafaq Foundation and terrorism.  But Plaintiffs make no allegations that these individuals assisted al Qaeda, were involved in the 9/11 plot, or otherwise conspired with DIB to assist in similar activities.

      **E.**     **Search Terms Related to Ballayth**

Plaintiffs seek account statements hitting on the search terms Sana Trading and Binjad Establishment.  Plaintiffs allege that these businesses are owned by Khalid Amer Ballayth. Plaintiffs, however, never alleged that either entity has ever been involved in terrorism or that DIB sought to promote al Qaeda by providing banking accounts for these companies.

**V.**    **DIB COMPLIED WITH THE COURT'S ORDER RE RECORDS RELATED TO THE EMBASSY BOMBINGS**

During the March 2016 hearing, Judge Maas ordered DIB to search for responsive documents because he was "inclined to agree" with Plaintiffs, who sought documents related to DIB's investigation of "accounts that they were asked to close in the wake of the embassy bombings."  MTC, Ex. G at 54, 64.  Following that hearing, DIB conducted a search and produced all responsive documents on August 11, 2016.

In the intervening months, DIB has repeatedly informed Plaintiffs about this production in response to Plaintiffs' follow up queries.  *See* MTC, Exs. T & U.  Most recently, on October 11, 2017, DIB told Plaintiffs that "[o]n August 11, 2016, DIB produced documents DIB_004196 to DIB_005023, which DIB noted were 'possibly related to the persons involved in the 1998 U.S. embassy bombings.'"  *See* MTC, Ex. R.

Plaintiffs now contend "the documents in the production have no clear or apparent relationship to the embassy bombings."  MTC at 16.  DIB's production range included Mamdouh Mahmoud Salim's account opening forms, account statements, and other electronic data.  DIB produced these documents to err on the side of caution as Mr. Salim has been connected to the

U.S. Embassy bombing plots.  Because DIB does not have independent knowledge about who actually caused the Embassy bombings, DIB noted that these documents "may" relate to the Embassy bombings.  By contrast, Plaintiffs have alleged that Salim "was arrested for his connection to the 1998 U.S. Embassy bombings in Africa."  MTC at 5.  For these reasons, DIB produced Salim's account activity.

Plaintiffs are asking the Court to compel DIB to produce additional information in the wake of the 1998 Embassy bombings that Plaintiffs speculate exists.  Plaintiffs previously tried this tactic with the Court, speculating that limited information is implausible (despite the fact we are dealing with the pre-email age).  Judge Maas rebuffed such arguments: "the fact that because something may be implausible doesn't give anyone the ability to take steps of any sort. Presumably, as discovery moves forward, there will be depositions at some stage and if something concrete occurs then you can bring it back to the Court."  MTC, Ex. G. at 62.  The same holding should apply here.

## VI.    CONCLUSION

For all of the reasons set forth above, DIB urges the Court to deny Plaintiffs' Motion to Compel.  Counsel for DIB thanks the Court for its careful consideration of these issues.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2011 | 03 MDL 1570 (GBD) (FM)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT DUBAI ISLAMIC BANK** |

    I, Steven T. Cottreau, hereby certify that I have this 13th day of November 2017 caused a true and correct copy of DIB's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendant Dubai Islamic Bank, and the Declaration of Steven T. Cottreau in Support of DIB's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendant Dubai Islamic Bank to be served upon all parties in this litigation by filing through the Southern District of New York's Electronic Case Filing ("ECF") system.

/s/ Steven T. Cottreau
Steven T. Cottreau
