FERBER CHAN ESSNER & COLLER, LLP

ONE GRAND CENTRAL PLACE
SUITE 2050
NEW YORK, NEW YORK 10165

TEL: (212) 944-2200
FAX: (212) 944-7630

November 21, 2017

Magistrate Judge Sarah Netburn
United States District Court,
  Southern District of New York
United States Courthouse
40 Centre Street
New York, New York 10007

Re: Continental Casualty Co. v. Al Qaeda Islamic Army, 04 Civ. 5970
    In Re Terrorist Attacks on September 11, 2001 03 MDL 1570

Dear Judge Netburn:

    This firm represents the plaintiffs in *Continental Casualty Co. v. Al Qaeda*, 04 Civ. 5970 ("Plaintiffs"). Plaintiffs are insurers who, in accordance with their obligations under applicable insurance and reinsurance policies, paid over $500 million to their insureds and reinsureds in compensation for property and other forms of economic damage resulting from the terrorist attacks on September 11, 2001 (the "Attacks"). In an order dated January 5, 2017, Plaintiffs were awarded judgment by default as to liability against defendant Islamic Republic of Iran ("Iran") on their cause of action pursuant to 28 U.S.C. §1605A. By a notice of motion dated June 19, 2017, Plaintiffs requested an assessment of damages with respect to that judgment; that motion remains pending. In an order dated November 6, 2017, this Court directed Plaintiffs to submit a letter brief "addressing the appropriate date from which prejudgment interest should be computed pursuant to Section 5001(b) of the New York Civil Practice Law and Rules and any other applicable law" with respect to the damages requested in that pending motion.

    As set forth below, there is compelling precedent, from courts in this Circuit, that the appropriate date for the accrual of prejudgment interest is September 11, 2001, the date of the underlying Attacks.

    Plaintiffs' judgment against Iran is based upon Federal law – the State Sponsor of Terrorism Exception to the Foreign Sovereign Immunities Act, codified at 28 U.S.C. §§

102834

FERBER CHAN ESSNER & COLLER, LLP

Magistrate Judge Sarah Netburn
November 21, 2017
Page 2

1605A(c) and 1605A(d). However, Congress has not legislated an accrual date for the running of pre-judgment interest[*] and therefore this issue is left to the broad discretion of the district court. *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476-77.

There is compelling authority that prejudgment interest should be deemed to have accrued on September 11, 2001.

In *Atlantic Mutual Insurance Company v. Napa Transportation, Inc.*, 399 F.Supp.2d 523 (S.D.N.Y. 2005), the plaintiff-insurer, the subrogee of Johnson & Johnson, sued the defendant trucker, alleging that J&J's goods were damaged while being transported by the defendant. The suit was brought under the Carmack Amendment, 49 U.S.C. §1470, which supplies the exclusive remedy when goods are damaged while being transported by motor carriers in interstate commerce. An essential element of a plaintiff's case under the Carmack Amendment is proof that the goods, upon arrival at their destination, were damaged. *New Son Yeng Produce LLC v. United One Transport, Inc.*, 2015 WL 1439884, *3 (S.D.N.Y. March 9, 2015). Moreover, the plaintiff's actual loss in such cases is measured by the difference between the goods' market value and their value as damaged at their destination. *Id.*

In *Atlantic Mutual*, the goods were scheduled to be delivered at their destination on December 13, 2001, but were never delivered because of the damage they suffered en route. Therefore, for the purposes of the Carmack Amendment, the date of expected delivery was the date that J&J actually suffered its loss. *See Mitsui & Co., Ltd. v. American Export Lines, Inc.*, 636 F.2d 807, 824 (2d Cir. 1981) (in cases involving carriage by land or sea, the shipper "has not suffered any loss until the time when the goods should have been, but were not, delivered").

After ruling that the date of J&J's actual loss, December 13, 2001, was the date of commencement of prejudgment interest[†], the *Atlantic Mutual* court held that because the plaintiff-insurer stood in J&J's shoes and was entitled to recover whatever J&J could have recovered, the plaintiff was entitled to prejudgment interest from the date of loss, *not* from the later date when the plaintiff made its insurance payment to J&J. "Since Johnson & Johnson would no doubt be entitled to prejudgment interest from the date of expected delivery, it stands to reason that plaintiff should have the same rights as to the full amount of that payment." *Id.* at 526. One of the main policy interests which undergirds the award of prejudgment interest is ensuring that the injured party is made whole. *First Jersey Securities, supra*, 101 F.3d at 1476, *Mitsui, id.* To set a later date for the accrual of prejudgment interest when the plaintiff is a subrogated insurer would grant an undeserved benefit to the defendant

---

[*] Congress has also not legislated the appropriateness or rate of prejudgment interest.
[†] *See also New Son Yeng Produce LLC, supra*, at *5 (where damaged goods were actually delivered, the date of that delivery was the date of loss and prejudgment interest accrued on that date of loss).

> "based upon the mere fortuity that plaintiff decided to pay Johnson & Johnson's claim and undertake the prosecution of this cause of action. Such a result undermines the policy underlying the awarding of prejudgment interest." 399 F.Supp.2d at 526.

The principles set forth in *Atlantic Mutual* are equally applicable here. Plaintiffs' insureds suffered their losses on September 11, 2001, when they were injured by the Attacks[‡]. Under Federal law, prejudgment interest in tort cases accrues at the time of the underlying injury, as that is when the tortfeasor incurs its obligation to to make the injured party whole. *McCrann v. U.S. Lines, Inc.*, 803 F.2d 771, 773 (2d Cir. 1986). Had Plaintiffs' insureds commenced their own actions against Iran to recover the damages they incurred, they would have been entitled to recover prejudgment interest from September 11, 2001. Plaintiffs now stand in the shoes of those insureds and therefore should be able to collect from Iran the same amounts which their insureds could have collected.[§] As in *Atlantic Mutual*, to calculate prejudgment interest from the later (and numerous) dates when Plaintiffs made their insurance payments to their insureds would grant the wrongdoer an unwarranted benefit and would undermine the policy underlying the award of prejudgment interest.[**]

---

[‡] There are losses that occurred after September 11, 2001, where the injuries resulted from clean-up efforts, or other such circumstances, arising out of the Attacks. Since this Court has broad discretion with regard to prejudgment interest, since all of these injuries flowed from the Attacks and since one of the applicable considerations in awarding prejudgment interest is "considerations of fairness and the relative equities of the award", *First Jersey Securities, supra*, 101 F.3d at 1476, Plaintiffs believe that it is within the discretion of this Court to award prejudgment interest from September 11, 2001 with regard to those claims. This would also be consistent with the remedial purposes of the State Sponsor of Terrorism Exception and would ensure that the statute fully punishes Iran for its wrongdoing. If this Court believes that such a result is not within its discretion, prejudgment interest on this group of claims should be awarded from a reasonable intermediate date between the date of the Attacks and the date of the last injury incurred by an insured. *APL Co. PTE. Ltd v. Blue Water Shipping U.S. Inc.*, 779 F.Supp.2d 358, 371-72 (S.D.N.Y. 2011) (in admiralty action seeking demurrage for four separate shipments of goods, prejudgment interest was deemed to accrue at the midpoint between the first date demurrage was assessed and the date the final shipment was destroyed).

[§] It is noteworthy that both in this MDL (see ECF nos. 3175, 3229, 3233) and in *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jemahiriya*, 811 F. Supp.2d 53, 75-76 (D.D.C. 2011), insurers subrogated to the claims of terrorism victims have been held to be entitled to pre-judgment interest commencing as of the date of the underlying terrorist attack.

[**] These principles are equally applicable to Plaintiffs' payments to its reinsureds. Plaintiffs reimbursed its reinsureds for payments they had made to their insureds for injuries caused by the Attacks. Since those claimants and those reinsureds could have recovered prejudgment interest on those losses from September 11, 2001, Plaintiffs, who ultimately had to bear those losses, should also be entitled to recover

FERBER CHAN ESSNER & COLLER, LLP

Magistrate Judge Sarah Netburn
November 21, 2017
Page 4

   Accordingly, for all of the reasons set forth above, Plaintiffs respectfully request that prejudgment interest on their damages against Iran be deemed to commence on September 11, 2001.

Respectfully submitted,

Robert M. Kaplan

---

what those claimants and reinsureds would have been entitled to. Once again, to set a later date for accrual would grant an undeserved benefit to the wrongdoer, Iran. Moreover, in both this MDL (see ECF nos. 3175, 3229, 3233) and in *Certain Underwriters, id.*, reinsurers were held to be entitled to the same recovery of prejudgment interest as subrogated insurers.