

T.C.
SANAYİ VE TİCARET BAKANLIĞI
İç Ticaret Genel Müdürlüğü

SAYI: B.140 İTG 0 10 00 02/ 103084

MARAM SEYAHAT İTHALAT İHRA AT TİCARET

İşbu Limited Şirketi esas mukavelesi ile Düzeltme Beyannamesi incelenmiş ve şirketin Türk Ticaret Kanunu'nun 509 uncu maddesi gereğince kurulmasına izin verilmiştir.

Bakan a.
Genel Müdür Yardımcısı

DOJ AR - 002129

00010555

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073767

REPUBLIC OF TURKEY
MINISTRY OF INDUSTRY AND COMMERCE
General Directorate of Domestic Trade

NO      : B. 140, ITG, O 10 00 02 /
                          103084

MARAM TRAVEL IMORTATION EXPORTATION TRADING

The main contract and Amendment Declaration of this applicant company has been considered and accordingly the company has been allowed to establish in accordance with Article 509 of the Turkish Trade Code.

Ali ...[ illegible ]...
On behalf of the Minister
Vice Director General
**Signature**

...[ illegible ]...

...[ illegible ]...DECEMBER 1996

SEAL ( ...[ illegible ]... MINISTRY )

74

00010556

DOJ AR - 002130

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073768

T İ C A R E T   O D A S I

F A A L İ Y E T   B E L G E S İ
(SİCİL KAYIT SURETİ)

15

SİCİL NO    :  361454  /309036                              TARİH:  17/03/99

FİRMA        :  MARAM SEYAHAT İTHALAT VE İHRACAT
                  TİCARET LİMİTED ŞİRKETİ

ADRES        :  HALİL RIFAT PAŞA MAH.PERPA
                  TİCARET MERKEZİ 9.KAT NO.1381
                  OKMEYDANI

MEŞGALE      :        Seyahat,Turizm Bakanlığı'ndan işletme belgesi almak
                  kaydıyla seyahat acentalığı,yürürlükteki ithalat ve ihracat
                  rejimleri ile diğer mevzuata riayet etmek kaydıyla her türlü
                  malın ithalatını,ihracatını ve dahili toptan ticaretin,
                  elektronik cihazların(tv,video,kamera,bilgisayar,fotoğraf
                  makinesi,buzdolabı,ütü,gameboy,cep telefonu),yurtiçi toptan
                  ticareti,ithalatı ve ihracatının yanı sıra inşaat malzemeleri
                  karo,seramik,ahşap,kereste,çimento alım satımı,ihracat ve
                  ithalatı,yurt içi toptan ticareti ve ana sözleşmesinde yazılı
                  olan diğer işler.

MESLEK GR. :  43  ELEKTRİKLİ ALETLER VE CİHAZLAR
DERECESİ    :  02
İŞE BAŞLAMA
TARİHİ       :  15/ 1/1997

BU BELGE HALEN FAALİYETTE OLAN YUKARIDA UNVANI YAZILI FİRMANIN
DİLEĞİ ÜZERİNE VERİLMİŞTİR.

                                                      GENEL SEKRETER Y.



SUAT GÜNEŞ
TİC.SİCİLİ VE TESCİL
MEMURU

00010557

75

DOJ AR - 002131

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.                    KADI0073769

[ doc 9 ]

**ISTANBUL**

**CHAMBER OF COMMERCE**

**CERTIFICATE OF ACTIVITIES**
( COPY OF THE REGISTRATION RECORDS )

| | | | |
|---|---|---|---|
| REGISTRATION NO | : | 361454  / 309036 | DATE: 17/ 03 / 98 |
| COMPANY | : | MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY | |
| ADDRESS | : | HALIL RIFAT PASA NEIGHBOURHOOD PERPA TRADE CENTRE: 9TH FLOOR NO.1381 OKMEYDANI | |
| ACTIVITIES | : | Travel, Travel Agency on condition that certificate of business enterprise is obtained from Ministry of Tourism, importing, exporting and internal wholesaling of any category of good on condition of compliance with rules and regulations relating to importation and exportation and other relevant laws that are in force, in country wholesaling, importation and exportation of electronic devices (TV, video, video camera, computer, camera, refrigerator, iron, computer games, mobile phone) alongside with buying, selling, exportation, importation and in country wholesaling of construction equipments, floor tiles, ceramic, timber and cement and other activities mentioned in the main contract of the company. | |

| | | | |
|---|---|---|---|
| CATEGORY OF OCCUPATION: | | 43 | ELECTRICAL TOOLS AND DEVICES |
| GRADE | : | 02 | ...[ illegible ]... APRIL 1998 |
| DATE OF COMMENCEMENT OF BUSINESS | : | 15 / 1 / 1997 | |

## NO: 1 4 8 3 9

THIS DOCUMENT HAS BEEN PROVIDED FURTHER TO A REQUEST MADE BY THE ABOVE
MENTIONED COMPANY WHO IS STILL ACTIVE.

VICE SECRETARY GENERAL.

SEAL
( Republic of Turkey. Istanbul ...[ illegible ]...)

SEAL ...[ illegible ]...

SUAT GUNES
TRADE REGISTRATION AND
RECORDS OFFICER
Signature

STAMP
[      Republic of Turkey      ]
BEYOGLU NO: 25 NOTARY PUBLIC
...[ illegible ]... Okmeydani / ISTANBUL
Tel: 221 56 76 ...[ illegible ]...
[ Fax: 221 87 ...[ illegible ]...) ]

SIGNATURE

C O P Y
I certify that this is
a certified copy of the
original that has been
provided to me.
Beyoglu No: 25 Notary Public
Vakkas Seydi Sayyaf

76

00010558

DOJ AR - 002132

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073770

TİCARET ODASI

FAALİYET BELGESİ
(SİCİL KAYIT SURETİ)

*16*

SİCİL NO    : 3o1454  /309036                      TARİH: 17/03/98

FİRMA      : MARAM SEYAHAT İTHALAT VE İHRACAT
             TİCARET LİMİTED ŞİRKETİ

ADRES      : HALİL RIFAT PAŞA MAH.PERPA
             TİCARET MERKEZİ 9.KAT NO.1381
             OKMEYDANI

MEŞGALE    : Seyahat,Turizm Bakanlığı'ndan işletme belgesi almak
             kaydıyla seyahat acentalığı,yürürlükteki ithalat ve ihracat
             rejimleri ile diğer mevzuata riayet etmek kaydıyla her türlü
             malın ithalatını,ihracatını ve dahili toptan ticaretin,
             elektronik cihazların(tv,video,kamera,bilgisayar,fotoğraf
             makinesi,buzdolabı,ütü,gameboy,cep telefonu),yurtiçi toptan
             ticareti,ithalatı ve ihracatının yanı sıra inşaat malzemeler
             karo,seramik,ahşap,kereste,çimento alım satımı,ihracat ve
             ithalatı,yurt içi toptan ticareti ve ana sözleşmesinde yazıl
             olan diğer işler.

MESLEK GR. : 43  ELEKTRİKLİ ALETLER VE CİHAZLAR
DERECESİ   : 02
İŞE BAŞLAMA
TARİHİ     : 15/ 1/1997

BU BELGE HALEN FAALİYETTE OLAN YUKARIDA UNVANI YAZILI FİRMANIN
DİLEĞİ ÜZERİNE VERİLMİŞTİR.

GENEL SEKRETER Y



SUAT GÜNEŞ
TİC.SİCİLİ VE TESCİL
MEMURU

77

00010559

DOJ AR - 002133

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073771

ISTANBUL

CHAMBER OF COMMERCE

CERTIFICATE OF ACTIVITIES
( COPY OF THE REGISTRATION RECORDS )

| | | | |
|---|---|---|---|
| REGISTRATION NO | : | 361454  / 309036 | DATE: 17/ 03 / 98 |
| COMPANY | : | MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY | |
| ADDRESS | : | HALIL RIFAT PASA NEIGHBOURHOOD PERPA TRADE CENTRE: 9TH FLOOR NO.1381 OKMEYDANI | |

ACTIVITIES     :     Travel, Travel Agency on condition that certificate of business enterprise is obtained from Ministry of Tourism, importing, exporting and internal wholesaling of any category of good on condition of compliance with rules and regulations relating to importation and exportation and other relevant laws that are in force, in country wholesaling, importation and exportation of electronic devices ( Tv, video, video camera, computer, camera, refrigerator, iron, computer games, mobile phone ) alongside with  buying, selling, exportation, importation and in country wholesaling of construction equipments, floor tiles, ceramic, timber and cement and other activities mentioned in the main contract of the company.

| | | | |
|---|---|---|---|
| CATEGORY OF OCCUPATION: | 43 | ELECTRICAL TOOLS AND DEVICES | |
| GRADE | : | 02 | ...[ illegible ]... APRIL 1998 |
| DATE OF COMMENCEMENT OF BUSINESS | : | 15 / 1 / 1997 | |

## NO: 1 4 8 3 9

THIS DOCUMENT HAS BEEN PROVIDED FURTHER TO A REQUEST MADE BY THE ABOVE MENTIONED COMPANY WHO IS STILL ACTIVE.

VICE SECRETARY GENERAL.

SEAL
( Republic of Turkey. Istanbul ...[ illegible ]...)

SEAL ...[ illegible ]...

SUAT GUNES
TRADE REGISTRATION AND RECORDS OFFICER
Signature

STAMP
[     Republic of Turkey     ]
BEYOGLU NO: 25 NOTARY PUBLIC
...[ illegible ]... Okmeydani / ISTANBUL
Tel: 221 56 76 ...[ illegible ]...
[ Fax: 221 87 ...[ illegible ]...) ]

SIGNATURE

COPY
I certify that this is a certified copy of the original that has been provided to me.
Beyoglu No: 25 Notary Public
Vakkas Seydi Sayyaf

78

00010560

DOJ AR - 002134

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073772

N°e 7738

TÜRKİYE TİCARET SİCİLİ GAZETESİ

15 EKİM 1977 · SAYI : 4329

N.5 36 15

00010561

79

DOJ AR - 002135

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073773

18

iş bu örneğin, ilgili tarafından ibraz olunan Be-
yoğlu 31. Noterliğinden onaylı 20.10.1997 tarihli 53615
yevmiye nolu MARAM SEYAHAT İTHALAT VE İHRACAT TİCARET
LİMİTED ŞİRKETİ'ne ait imza sirküleri aslının aynı ol-
duğunu onaylarım. Bindokuzyüzdoksansekiz Yılı Şubat A-
yının ondokuz'uncu Günü. /02/1998

BEYOĞLU 25. NOTERİ
VAKKAS SEYDİ SEYYAR

NG

BEYOĞLU 25. NOTERİ
İmza Yetkili Başkatibi
Şuat SALDIRAN

00010562

80

DOJ AR - 002136

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073774

[ doc 10 ]

NO: 7 7 3 8

NO: 53615

OFFICIAL TURKISH TRADE GAZETTE

From Istanbul Trade Registration Office

Registration No: 361454 – 309036

TITLE OF TRADE
MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY

Central Office      : Istanbul Beyoglu Istiklal Street. Beyoglu Plaza. No. 163/3

The company whose title of trade and registration have been given above has applied to us for registration and announcement of the partners committee decision certified by Istanbul No: 4 Notary Public on 1.9.1997 with no 25955. Accordingly, it is hereby announced that the above mentioned company has been registered with us upon the documents that have been provided to our office on 10.10.1997 in accordance with the provisions of the Turkish Trade Code No 25955.

Decision No: 4
Date of Decision: 1.9.1997
Subject of Decision: Regarding change of company's address

Company shareholders further to a meeting held at the company's central office have taken following decisions.

1- It has been decided that the company's central office in Salihpasa Street. No.36/13 G.O.Pasa Istanbul shall be moved to Istiklal Street. Beyoglu Plaza. No.153/3 Beyoglu Istanbul on 2.9.1997.

Yavus Subasi Signature
Representative of Mohammed Luay Bayazaed
Yavus Subasi Signature
Representative of Wael H.A. Jelaidan

(5/A) (13/10063)

From Istanbul Trade Registration Office

Registration No: 361454 – 309036

TITLE OF TRADE
MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY

Central Office      : Istanbul Gaziosmanpasa Salihpasa Street. Esenturk Plaza. No. 36/13

The company whose central office, title of trade and registration have been given above has applied to us for registration and announcement of the partners committee decision certified by Istanbul No: 4 Notary Public on 1.9.1997 with no 25954 together with signature declaration certified by Istanbul No: 25 Notary Public on 14.7.1997 with no 34118. Accordingly, it is hereby announced that the above mentioned company has been registered with us upon the documents that have been provided to our office on 10.10.1997 in accordance with the provisions of the Turkish Trade Code No 25955.

Decision No: 3
Date of Decision: 20.8.1997
Subject of Decision: Regarding representation

Company shareholders further to a meeting held at the company's central office have taken following decisions.

1- Mohammed Luay Bayazaed has been chosen for the period of 5 ( five ) years to represent the company. His signature performed under company's official title of trade shall be binding the company in all representations, transactions and undertakings.

Yavus Subasi Signature
Representative of Mohammed Luay Bayazaed
Yavus Subasi Signature
Representative of Wael H.A. Jelaidan

(5/A)(13/10063)

81

00010563

DOJ AR - 002137

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073775

[ doc 11 ]

I certify that this is a certified copy of the original signature circular belonging to MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY certified by Beyoglu No:31 Notary Public on 20.10.1997 with daybook no 53615 that has been provided to me by the person concerned. Nineteen ninety eight, month of February, nineteenth day. 19/02/1998.

SEAL ...[ illegible ]...
BEYOGLU NO:25 NOTARY PUBLIC
VAKKAS SEYDI SEYYAR
SIGNATURE

BEYOGLU NO:25 NOTARY PUBLIC
Chief Secretary authorized to sign
Suat SALMAN
Signature

NG

82

00010564

DOJ AR - 002138

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073776



T.C.
BEYOĞLU 31. NOTERİ
SAHİP Çelebikan
Büyükdere ...re Sk.
Tümer Han No:1 Kat.2
Mecidiyeköy-İSTANBUL
0212-2673315-2721231

T Ü R K İ Y E   C U M H U R İ Y E T İ

№ 53615

(A) Y.No.: .........
Tarih:20-Ekim-1997

İMZA SİRKÜLERİ

Merkezi İstanbul'da Beyolu, İstiklal Caddesi, Beyoğlu İş Merkezi, No.153/3 adresinde bulunan ve İstanbul Ticaret Sicili Memurluğunun 331454/309036 sicil numarasında kayıtlı olan..;

**MARAM SEYAHAT İTHALAT VE İHRACAT TİCARET LİMİTED ŞİRKETİ**

Unvanlı şirketimizi.;.

Ortaklar kurulunca alınmış ve Türkiye Ticaret Sicili Gazetesinin 15/10/1997 tarih ve 4398 sayılı nüshasının 1104 sayılı nüshasında neşr ve ilan edilmiş olan 20/08/1997 tarih ve 2 nolu karara istinaden;

Şirketi temsile Şöyilliğine şirket müdürü MOHAMMED LUAY BAYAZAED seçilmiştir. Şirketin resmi ünvanı altında vaaz edeceği imzası ile şirketi her hususta tessil ve ilzam ederek taahhüt altına koyacaktır.

Genilmekte olduğundan bu hususun dikkate alınmasını ve aşağıdaki imzamızın tasdikini talep ederiz.

**MARAM SEYAHAT İTHALAT VE İHRACAT TİCARET LİMİTED ŞİRKETİ**
Şirket Müdürü..: MOHAMMED LUAY BAYAZIED

*Loay bayazid*    *Loay bayazid*    *Loay bayazid*

İşbu sirküler içindeki imzanın gösterdiği, İstanbul Emniyet Müdürlüğünden 26/5/1997 tarih ve A/167427 seri no ile verilmiş 31/0/1998 tarihine kadar geçerli olan fotoğrafılı ve tasdikli İkamet Tezkeresine göre; Yasin ile Nimet oğlu, 1960 Elşham doğumlu MOHAMMED LUAY BAYAZIED'e ait olduğunu dairede ve huzurunda imzaladığını onaylarım. Yirmi Ekim Bindokuzyüzdoksanyedi Pazartesi.
20/10/1997

3/3

DAYANAK :

Merkezi İstanbul'da kain MARAM SEYAHAT İTHALAT VE İHRACAT TİCARET LİMİTED ŞİRKETİ'nin ortaklar kurulunca alınmış ve Türkiye Ticaret Sicili Gazetesinin 15/10/1997 tarih ve 4398 sayılı nüshasının 1104 sayılı nüshasında neşr ve ilan olunan 20/8/1997 tarih ve 2 nolu karara istinaden yukarıda adı geçenin mezkür şirketi sirküler metninde yazılı olduğu şekilde temsil ve ilzama yetkili olduğu görülmüştür........................................................
İşbu müstenidat 1512 Sayılı Noterlik Kanununun 79.maddesine istinaden çıkarılmıştır.Müstenit fotokopisi evraka eklenmiştir.

00010565

83
DOJ AR - 002139

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073777

**NO: 7 7 3 8**

**NO: 5 3 6 1 5**

SEAL ...[ illegible ]...

**REPUBLIC OF TURKEY**

**STAMP**
( BEYOGLU NO: 31 NOTARY PUBLIC             (A) Daybook No: ................
SAKIN ...[ illegible ]...                              Date         : 20-October-1997
Buyukdere ...[ illegible ]... Close
Turner Office Buildings No: 1 2nd Floor
Mecidiyekoy – ISTANBUL
0212-2673315 – 2721231 )

<u>SIGNATURE CIRCULAR</u>

Further to Decision No 3 taken by the partners committee on 20/08/1997 which was written and announced in Issue No 1104 of Issue No 4398 of the Official Turkish Trade Gazette of 15/10/1997,  MOHAMMED LUAY BAYAZAED has been chosen for a period of 5 years as director to represent our company titled as
<u>MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY</u>
of which central office is at the address of Istanbul Beyoglu Istiklal Street. Beyoglu Plaza. No. 153/3 and which is registered with Istanbul Trade Registration Office with registration no 361454/309036. His signature performed under company's official title of trade shall be binding the company in all representations, transactions and undertakings.
I ask that you kindly take the above into your consideration and certify the signatures provided below.
<u>MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY</u>
Company Director..: <u>MOHAMMED LUAY BAYAZAED</u>

**Signature**               **Signature**               **Signature**

I certify that this circular has been personally performed at my office in my presence by MOHAMMED LUAY BAYAZAED who, according to residence document no A/167487 photographed, certified and issued to be valid until 31 ...[ illegible ]... 1998 by Istanbul Security Headquarters on 26.5.1997, is son of Yasin and Nimet, born in Elsham in 1960. Twentieth of October, Nineteen ninety seven, Monday. 20/10/1997.

...[ illegible ]...                              **SEAL**
                              ( BEYOGLU NO: 31 NOTARY PUBLIC)
                              **SIGNATURE**

BASIS  :
It has been observed that the person mentioned above is legally authorized to make representations and to enter into transactions as specified in the circular on behalf of MARAM TRAVEL IMPORTATION AND EXPORTATION TRADING LIMITED COMPANY based in Istanbul on the basis of Decision No 3 taken by the partners committee on 20/08/1997 which was written and announced in Issue No 1104 of Issue No 4398 of the Official Turkish Trade Gazette of 15/10/1997......................................

SEAL ...[ illegible ]...                    SEAL ...[ illegible ]...

**SIGNATURE**

84

00010566

DOJ AR - 002140

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073778

**T.C.**
**BAŞBAKANLIK**
**HAZİNE MÜSTEŞARLIĞI**

20

SAYI  : B.02.1.HM.0.YSGM.05.01.MG    21.07.97 * 33790
KONU  : Ortak Değişikliği

Maram Seyehat İthalat ve İhracat Ticaret Ltd.Şti.
Salihpaşa Cad. Esentürk Merkezi No:36/3
Gaziosmanpaşa-İSTANBUL

İLGİ : 16.07.1997 tarih ve 57962 sayılı müracaatınız.

Ilgi'de kayıtlı müracaatınız ekinde sunulan belgelerden, 29.11.1996 tarih ve 4179 sayılı İzin Belgesi kapsamında faaliyet gösteren şirketinizin ortaklık yapısının aşağıdaki şekilde değiştiği anlaşılmıştır.

| ORTAK ADI | TABİYETİ | MİKTAR | ORAN (%) |
|---|---|---|---|
| 1. Yabancı Ortaklar | | | |
| -Wael H. A. Jelaidan | S. Arabistan | 7.150.000.000 | 50 |
| -Mohammed Luay Bayazed | SUDAN | 7.150.000.000 | 50 |
| TOPLAM | | 14.300.000.000 | 100 |

İşbu yazımız sözkonusu Belge'nin eki niteliğindedir.

Bilgilerinizi ve gereğini rica ederim.

MÜSTEŞAR ADINA

Rahmi KAYA
Daire Başkanı

EK: İzin Belgesi Aslı

İnönü Bulvarı        Tel : (312) 212 88 00        Faks : (312) 212 87 26

85

00010567

DOJ AR - 002141

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073779

[doc 13 ]

REPUBLIC OF TURKEY
PRIME MINISTRY
TREASURY DEPARTMENT

NO    : B.02.1.HM.0.YSGM.05.01.MG      21.07.97 * 3 3 790
RE    : Change of Partner


Maram Travel Importation and Exportation Ltd. Company
Salihpasa Street. Esenturk Centre No: 36/3
Gaziosmanpasa – ISTANBUL

RE    : Your application no 57962 of 16.07.1997

Further upon examination of the documents you have enclosed in your above mentioned application, we have observed the following amendments in the partnership structure of your company which carries its activities within the conditions set by Permit No 4179 issued on 29.11.1996.

| PARTNERS NAME | NATIONALITY | AMOUNT | PROPORTION (%) |
|---|---|---|---|
| **1. Foreign Partners** | | | |
| - Wael H. A. Jelaidan | Saudi Arabia | 7.150.000.000 | 50 |
| - Mohammed Luay Bayazed | SUDAN | 7.150.000.000 | 50 |
| **TOTAL** | | 14.300.000.000 | 100 |

This document is supplementary to the Certificate concerned.

For your kind consideration.

SEAL
( Republic of Turkey. Treasury Department)
Name ...[ Illegible ]...
Signature

ON BEHALF OF UNDERSECRETARY                    SIGNATURE
                                               Rahmi KAYA
                                               Chief Officer


ENCLOSED    : Original Permit


Inonu Boulevard        Tel: (0312) 212 88 00        Fax: (0312) 212 87 26

86

00010568

DOJ AR - 002142

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073780



00010569

DOJ AR - 002143

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073781

**REPUBLIC OF TURKEY PRIME MINISTRY TREASURY DEPARTMENT GENERAL DIRECTORATE OF FOREIGN CAPITAL   Page ( )**
(This is a supplementary document to the Certificate of Permit No 30/4179 issued on 29.11.1996 )

Further upon examination of the Official Turkish Trade Gazette No 4213 issued on 21.1.1997 and the receipt of foreign currency provided to our general directorate in the attachments of the application no 20889 made on 13.3.1997, we hereby approve that a company has been established with a capital of 14.300.000.000 – TL and that foreign capital in the sum of $ 120.000 ( 14.468.400.000. –TL ) has been brought to be allocated.

**SEAL**
( Republic of Turkey. Treasury Department )
1923
**Signature**

00010570

DOJ AR - 002144

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073782

 

~ 1 1997   22

011561

KARAR NO      :1
KARAR TARİHİ :14.07.1997
KARAR KONUSU :HİSSE DEVRİ

Şirket Hissedarları Şirket Merkezinde toplanarak
aşağıdaki kararları almışlardır.
1.- Şirket Hissedarlarından MAMDOUH MAHMOUD SALEEM AHMED
şirkette mevcut 7.150.000.000.-tl. hissesinin tamamını
istanbul 25.Noterliğinden 14.07.1997 tarih ve 34110 sayılı
Limited Şirket Hisse devir sözleşmesi ile şirket ortağı
olmayan Akatlar Zeytinoğlu cad.Çelebi sok. no:11/8
Etiler/istanbul adresinde mukim Sudan Uyruklu MOHAMMED LUAY
BAYAZIED'e devret miştir.
2.- Şirket Hissedarlarından THIKRA MOH.GAWHAR MUBARAK
şirkette mevcut 7.150.000.000.-tl.hissesinin tamamını
istanbul 25.noterliğinden 14.07.1997 tarih ve 34109 sayılı
Limited şirket hisse devri sözleşmesi ile şirket ortağı
olmayan Akatlar Zeytinoğlu cad.Çelebi sok. no:11/8
Etiler/istanbul adresinde mukim Suudi Arabistan Uyruklu WAEL
H.A.JELAIDAN'a devretmiştir.
3.-Yukarıda bahsi geçen devirlerin kabulüne ve
keyfiyetin pay defterine işlenmesine karar verilmiştir.
4.-Vaki devirler neticesinde şirket hissedarları ile
hisselerinin
286 hisse karşılığı 7.150.000.000.- WAEL H.A.JELAIDAN
286 hisse karşılığı 7.150.000.000.- MOHAMMED LUAY BAYAZED
tarafından 1/4'ü ödenmiştir.
5.-Sanayi ve Ticaret Bakanlığı iç Ticaret Genel
Müdürlüğünün 1976/1 sayılı sirküleri gereğince esas
mukavelede değişiklik yapılmamasına oy birliği ile karar
verilmiştir.

WAEL H.A.JELAIDAN                    MOHAMMED LUAY BAYAZAED
Vekili Yavuz Subaşı                  Vekili Yavuz Subaşı

İMZA

00010571

89
DOJ AR 002145

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0073783

[ doc 16 ]

C O P Y

1 August 1997

STAMP
( Republic of Turkey
ISTANBUL NO: ...[ Illegible ]... NOTARY PUBLIC
Nefer Zekeriya Karli
Hamidiye Street No: 4 Vakif Office Buildings
Ground Floor No. 8 Bahcekapi – ISTANBUL

Tel : 512 27 77

0 1 1 5 6 1

| | |
|---|---|
| DECISION NO | : 1 |
| DATE OF DECISION | : 14.07.1997 |
| SUBJECT OF DECISION | : TRANSFER OF SHARES |

Further to a meeting held at the Company's Central Office, the company shareholders took the following decisions:

1. Company's shareholder MAMDOUH MAHMOUD SALEEM AHMED has transferred all of his company shares worth 7.150.000.000. – TL to Sudanese national MOHAMMED LUAY BAYAZEID of Akatlar Zeytinoglu Street, Celebi Close, No: 11/8 Etiler / Istanbul who is not a company shareholder through a Limited Company Share Transfer Contract No 34110 made in the presence of Istanbul No: 25 Notary Public on 14.07.1997.

2. Company's shareholder THIKRA MOH. GAWHAR MUBARAK has transferred all of his company shares worth 7.150.000.000. – TL to Saudi Arabian national WAEL H.A. JELAIDAN of Akatlar Zeytinoglu Street, Celebi Close, No: 11/8 Etiler / Istanbul who is not a company shareholder through a Limited Company Share Transfer Contract No 34109 made in the presence of Istanbul No: 25 Notary Public on 14.07.1997.

3. The above mentioned transfers have been agreed on and the matter has been agreed to be recorded on the company share book.

4. Following the above mentioned transfers
286 shares worth 7.150.000.000 of the company shares has been paid by WAEL H.A. JELAIDAN
¼ of 286 shares worth 7.150.000.000 of the company shares has been paid by MOHAMMED LUAY BAYAZED

5. Due to Circular No 19/6/1 issued by the Ministry of Industry and Commerce General Directorate of Domestic Trade, it has been agreed unanimously that no amendments shall be made in the main contract.

Yavuz Subasi                                    Yavuz Subasi
Representative of WAEL H.A. JELAIDAN   Representative of MOHAMMED LUAY BAYAZED

SIGNATURE                                       SIGNATURE

SEAL ...[ Illegible ]...
Signature

90

00010572

DOJ AR - 002146

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0073784

## SCHEDULE

### The Legal Test & HM Treasury's Approach

1. It may be convenient to start by setting out the applicable legal test and HM Treasury's approach in deciding whether to withdraw the Direction.

2. The Terrorism Order enables HM Treasury to issue a direction under Article 4(1) where it has "reasonable grounds for suspecting" that the person by, for or on behalf of whom the funds are held is or may be:

    (a) a person who commits, attempts to commit, facilitates or participates in terrorism,

    (b) a person controlled directly or indirectly by a person in (a), or

    (c) a person acting on behalf, or at the direction, of a person in (a).

3. HM Treasury have adopted the following approach in interpreting and exercising their powers under this provision:

    3.1. Before making or affirming a direction, they must have reasonable grounds for 'suspecting', not for 'believing'. In its ordinary meaning, suspicion is a state of conjecture or surmise where proof is lacking. This is reinforced by the use of the phrase "is *or may be*".

    3.2. Although the formation of a suspicion requires a lesser factual basis than would be required for a belief, it must nevertheless be based on some evidential foundation. HM Treasury fully recognise that it is not sufficient for them honestly to suspect (although such suspicion is itself a requirement): there must also be some evidential basis which a reasonable man would regard as sufficient for forming that suspicion.

    3.3. HM Treasury do not have to have *prima facie* proof in order to form their suspicion, and accordingly hearsay material (i.e. information provided by an ostensibly reliable source) may provide them with sufficiently reasonable grounds to form a suspicion.

4. More generally, HM Treasury have taken the following matters into account:

138

KADI0103016

available to them. Viewing the transactions in that light, this emerges as another case in which Mr Kadi has provided significant funding for an organisation that employs an individual who is connected with terrorism. The particular significance of this specific connection is:

17.1. first, in this case Mr Kadi can be seen also to have provided funding direct to the individual himself, as well as to the organisation that employed him, and

17.2. secondly, that the individual's connection with terrorism has been established in a court of law.

### MAMDUH MAHMOUD SALIM & THE UNIVERSITY HOUSING PROJECT

18. Your client's submissions of 22.8.03 to the Deputy Attorney-General of Switzerland are principally concerned with the Housing Project at the Al Eman University in Yemen ("the University Housing Project"). The following features of that transaction have enhanced HM Treasury's suspicions:

18.1. The University was founded by Shaikh Abdel Majid Zindani, who is designated as an SDGT under EO 13224.

18.2. Mr Kadi chose to implement the University Housing Project through Wa'el Julaydan, whose connections with Osama Bin Laden have already been noted.

18.3. Wa'el Julaydan chose to operate through a company, Maram Tourism Import Export Trading Limited Company ("Maram"), which he and Mr Beyazied had recently acquired from Mamduh Mahmoud Salim and his wife: p.11 of the 22.8.03 submissions. Mr Salim has been extradited to the US to face terrorism charges there. HM Treasury's suspicion is aroused by this connection, not from any inference that Mr Salim or his wife had a continuing beneficial interest in the share capital of Maram after the transfer of shares to Wa'el Julaydan and Mr Beyazied, but because of the fact that, of all the Turkish construction or trading companies that Mr Kadi could have engaged, or that Wa'el Julaydan could have bought, they chose one formerly owned

148

KADI0103026

by yet another person who has fallen under the suspicion of the law enforcement agencies of another country for connections with terrorism.

18.4. There is no suggestion in the papers that Maram had any trading history, so Wa'el Julaydan's supposed reason for wanting to acquire the company (namely, the need to have 5 years' trading history in order to obtain a licence from the Turkish authorities) is unconvincing. There is in particular no documentary evidence to suggest that Maram had any trading record in the construction industry, so Wa'el Julaydan's decision to use Maram, and Mr Kadi's readiness to fund that company, also appear suspicious.

18.5. Maram ostensibly entered into a contract with Vefa Engineering Industry and Trading Limited Company ("Vefa") dated the 5th February 1998. HM Treasury's suspicions are enhanced by the fact that, in order to fund the University Housing Project, Mr Kadi made payments totalling $1,250,000 to Wa'el Julaydan personally in Geneva, rather than discharging Maram's liabilities by paying the money direct to Vefa in Turkey, or even by paying the money direct to Maram. HM Treasury notes the explanation given at pp.13-14 of your client's 22.8.03 submissions, but (particularly in the context of the other matters set out in this paragraph) they are not sufficient to dispel their suspicions in this regard.

18.6. The contractual document between Maram and Vefa which is attached to the 22.8.03 submissions at pp.185-188 does not mention a contract price. This seems anomalous for a contract that was, according to your client's submission, worth $850,000.

18.7. The alleged contract price of $850,000 is inconsistent with the figure of $595,720, which appears on p.190 of the attachment to your client's 22.8.03 submission.

18.8. Furthermore, there are a number of issues relating to the ultimate destination of the money transferred by Mr Kadi to Wa'el Julaydan which are suspicious.

18.8.1. The bulk of the money transferred to Wa'el Julaydan in Geneva appears then to have been transferred by him to account number 160377 with Faisal Finance in Istanbul. Your client alleges that that account was in the name of Maram: p.21 of the 22.8.03 submission.

149

KADI0103027

However, the only documentary evidence in support of that assertion is a bank statement which has no account-holder's name printed on it (p.209 of the bundle attached to the 22.8.03 submission). Someone (we do not know who or when) has simply written the name of Maram across the top of the page in manuscript. By contrast, the printed remittance advices on pp.202 and 205 of the attachment indicate that account 160377 was in the name of Wa'el Julaydan.

18.8.2. The table on p.16 of the 22.8.03 submissions alleges that Vefa had received $740,000 by 18.4.98, but (i) no documentation exists evidencing any demand from the company for that amount; (ii) according to the table on p.16, very significantly less than $740,000 had been transferred by Mr Kadi to Wa'el Julaydan by that date, and only $350,000 had been transferred by Wa'el Julaydan to account number 160377 (supposedly in the name of Maram), so it is unclear where the money allegedly paid to Vefa is supposed to have come from; (iii) the figure of $740,000 is inconsistent with the figure of $510,000, which is the amount shown on p.190 of the attachment to the 22.8.03 submission as being due from Maram to Vefa by 20.4.98; (iv) the figure of $740,000 is also inconsistent with the sum of $654,280, which is the amount shown by Vefa as having been received by 16.4.98: see p.192 of that attachment.

18.8.3. The 22.8.03 submissions indicate on p.17 that 'investigations' indicate that ground-works for the University Housing Project would have cost $125,000. On p.18, this is described as an 'estimate'. No equivalent figure appears to have been paid out from account 160377: see p.209 of the attachment to the submission. HM Treasury's suspicion is that the figure of $125,000 is another arbitrary sum that has been included in order to balance the figures, and that no such amount was in fact paid in connection with the University Housing Project.

18.8.4. The table on p.16 of the 22.8.03 submission shows that a sum of $300,000 was paid out by Wa'el Julaydan on 29.6.98, but that that money was not transferred to Maram.

150

KADI0103028

18.8.5. The same table shows that a further sum of $300,000 was transferred by Wa'el Julaydan on 4.8.98, not to Maram but to another of his own personal accounts. It would appear that he was only meant to retain $100,000 by way of commission: see p.18 of the 22.8.03 submissions.

19. HM Treasury also understand that Mr Kadi is under investigation in Switzerland in connection with alleged support of a terrorist organisation, and that the matter has recently been passed to an investigating magistrate there as a preliminary to Mr Kadi's prosecution. The investigation centres on the payments made by Mr Kadi to Wa'el Julaydan, supposedly in connection with the University Housing Project.

## ASSESSMENTS BY OTHER LAW ENFORCEMENT AGENCIES

20. HM Treasury are fully conscious that they are not required or entitled automatically to follow the decision of any other law enforcement agency. However, the fact that other reputable law enforcement agencies have reached conclusions adverse to Mr Kadi is capable of contributing to the formation of reasonable grounds for suspicion, and as such it is a relevant factor which HM Treasury are entitled and required to take into account in reaching their own assessment under Article 4 of the Terrorism Order. It will be seen from the foregoing that HM Treasury have taken into account:

20.1. the fact that Mr Kadi has been listed under UNSCR 1333 (2000) and Council Regulation 881/2002/EC,

20.2. the decision of OFAC, communicated to Mr Kadi's US attorneys by letter dated the 12th March 2004, to maintain his designation as an SDGT under EO 13224,

20.3. various matters appearing in the 12.3.04 Memorandum,

20.4. the findings of the US court referred to in §16.9 above, and

151

KADI0103029

مؤسسة النقد العربي السعودي

المركز الرئيسي

إدارة التفتيش البنكي

الرقم : ٢١٩٨ م١٣ ... أ ت

التاريخ : ٤/١٢/١٤٢٤ هـ

المرفقات :

الموافق : ٢٦/١/٢٠٠٤ م

**سري وعاجل**

صاحب السمو الملكي الأمير محمد بن نايف بن عبدالعزيز     حفظه الله
مساعد وزير الداخلية للشؤون الأمنية

السلام عليكم ورحمة الله وبركاته:

بالإشارة إلى طلب السيد/ ياسين قاضي المقدم للمؤسسة باستخدام بعض أمواله المحجوزة في تغطية تكاليف المحاماة والحاجات المعيشية الأساسية وعطفاً على برقية معـالي وزيــر المالية رقم ١٨٤٧/١ وتاريخ ١٤٢٣/٢/٨هـ المرفق بطيها صورة من برقية ســمو وزيــر الخارجية رقم ٢٥/٩٧/١٧٠٨٣/١ وتاريخ ١٤٢٣/٢/٣هـ وخطابنا رقم ١٩٧٦ م ظ/م أ ت وتاريخ ١٤٢٤/١١/٧هـ المرسل لسمو وزير الخارجية وصورة لسموكم (مرفق صـوره) ، بشأن السيد/ ياسين قاضي رجل الأعمال السعودي الذي وجهت إليه اتهامات بضـلـوعه فـي تمويل بعض الشبكات الإرهابية مما أدى إلى تجميد بعض حساباته وإدراج اسمه على القائمة الصادرة من اللجنة المنشأة بموجب قرار مجلس الأمن رقم ١٣٧٣ لعام ٢٠٠١م حيث تقـدم المذكور بملف مدعم بالوثائق اللازمة التي تثبت برامته من تلك التهم وطلبه تقديم ما أمكن من مساعدة له في محاولاته لتبرئة نفسه. واقتراح سمو وزير الخارجية إحالة موضوع المـذكور إلى اللجنة المشكلة بموجب الأمر السامي رقم س/٢٣١١٤ وتاريخ ١٤٢٢/١١/١٥هــ مـع تأييد سموه لتبني قضية المذكور و إحالة الملفات إلى اللجنة المشكلة بمجلس الأمن وذلك عـن طريق الوفد الدائم للمملكة في الأمم المتحدة.

نود إحاطة سموكم بأن المؤسسة قامت بدراسة حسابات المذكور لدى البنوك المحلية حيث وجد للمذكور عدد ثمانية حسابات لدى شركة الراجحي المصرفية للاستثمار برصيد إجمـالي يقدر بـ (٥,٠٥٣,١٧٧/٩٣) ريال وعدد خمسة عشر حساب لدى البنـك الأهلـي التجـاري برصيد إجمالي قدرة (١٣,٦٢٢,٥٨٥/٩١) ريال وحساب واحد لدى البنك السعودي الهولندي برصيد قدرة (٣٩,١٥٨) ريال . ولم يلاحظ من خلال دراسة العمليـات المنفـذة فـي هـذه الحسابات وجود ما يشير إلى ارتباطها بعمليات مشبوهة أو غير طبيعية.

العنوان البريدي : الرياض ١١١٦٩ المملكة العربية السعودية . فاكس ٤٦٦٢٨٦٥ - تلفون ٤٦٦٢٤٤٠

KADI0103317

CONFIDENTIAL - This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

كما نود إحاطة سموكم بأن المؤسسة لم تتوصل من خلال دراسة المعلومات المسربة المتعلقة بالسيد/ ياسين قاضي والمقدمة من الجانب الأمريكي خـلال الاجتماعـات الثنائيـة المنعقدة بين الجانبين إلى إثبات ارتباط الحسابات البنكية للمـذكور بعمليـات تثبـت إدانتـه بموضوع تمويل أنشطة إرهابية، حيث ركزت معظم تلك المعلومات على جوانب استخباراتيه عن المذكور وليس على الجوانب أو العمليات البنكية المنفذة من قبله.

وعليه فإن المؤسسة ترى أنه نظراً لعدم التوصل إلى ما يشير إلـى ارتبـاط حسـابات المذكور البنكية بعمليات مشبوهة ، ولحاجة المذكور المشروعه إلى الصرف علـى مكاتـب المحاماة للدفاع عن نفسه أمام التهم الموجهة إليه. فأننا نرى وجاهة طلبه وتخصـيص مبلـغ كاف من حساباته بحدود مبلغ يعادل مليون دولار للصرف مباشرة على المحامين ويتم تغذية الحساب الذي يودع فيه هذا المبلغ إذا تبين حاجة لذلك.

وتقبلوا سموكم خالص تحياتي،،،

المحافظ

حمد بن سعود السياري

السبيل

العنوان البريدي : الرياض ١١١٦٩ المملكة العربية السعودية ، فاكس ٤٦٦٢٨٦٥ – تلفون ٤٦٦٢٤٤٠

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0103318

We would also like to inform Your Highness that the Authority did not reach, through reviewing the confidential information regarding Mr. Yasin Kadi, presented by the US side during the bilateral meetings held between the two sides, any conclusions connecting the aforementioned bank accounts to transactions that would prove his involvement in financing terrorist activities. The confidential information focused on intelligence issues regarding the aforementioned person and not on banking aspects or transactions conducted by him.

Therefore, the Authority, because of the lack of any indications connecting the aforementioned person's bank accounts with suspicious transactions, and because of the need of the aforementioned person to pay for attorneys to defend himself against the accusations directed at him, believes that his request is legitimate and recommend allocating an amount of about 1 million riyals to pay attorneys directly, with the account in which this amount is deposited, refilled if needed.

Your Highness, please accept my highest regards,


Governor

[signature]

Hamad bin Saud Al-Siari


Al-Sabeel

بسم الله الرحمن الرحيم

تليفون: ٤٦٤٨٥٤٠، ٤٦٤٨٥٣٤
، ٤٦٥٦٥٤٣، ٤٦٥٢٢٥٥
تليفاكس: ٤٦٤٨٤٨٠
اشتراك الغرفة التجارية: ٦٨١٢
بريد إلكتروني: shawwaflaw@alshawwaf.com

سعود محمد علي الشواف
للمحاماة والاستشارات القانونية
ترخيص رقم ٤٤
الرياض - المملكة العربية السعودية

١٤٢٤/٠١/٠٤هـ

٢٠٠٥/٠٢/١٣م

**أصحاب الفضيلة رئيس وأعضاء الدائرة**
**الإدارية الخامسة - ديوان المظـــــالم**                حفظهم الله،،

السلام عليكم ورحمة الله وبركاته ،

**الموضــوع:**   الدعوى المقيدة بالديوان برقم ٣٦٦٣/ق لعام ١٤٢٥هـ المقامة من/
ياسين عبدالله قاضي (المدعي) ضد وزارة الخارجية (المدعى عليها).

أصحاب الفضيلة،

بالإشارة إلى لائحة الإدعاء المقامة من المدعي تحت الرقم ٤٢٩/ق/٨٠٤ وتاريخ
١٤٢٥/٨/١٨هـ، نلتمس كريم سماحكم لنا بأن نتقدم نيابة عن وزارة الخارجية لمقام الدائرة بهذه
المذكرة رداً على ما جاء في لائحة الإدعاء المذكورة. كما نرجو السماح بأن يكون ردنا ودفاعنا مبنياً
على إعتراض من الناحية الشكلية وإعتراض من الناحية الموضوعية؛ وذلك على النحو التالي:

**أولاً:**   **الناحية الشكلية:**

(١)   لقد لاحظنا أن من يقوم بتمثيل المدعي والتقاضي بالوكالة عنه في هذه الدعوى هو
مكتب الدكتور/ سعد بن عبدالله البريك. وحيث أن الدكتور/ سعد البريك قد تعددت
وكالاته عن العديد من الوزارات والمصالح الحكومية السعودية وأنه كثيراً ما قام ويقوم
حالياً بتقديم المشورة والخدمات في مجال المحاماة لأطراف حكومية، فإن هذا يجعل
قيامه الآن بتمثيل المدعي ضد وزارة الخارجية أمام مقام دائرتكم الموقرة داخلاً في
باب تضارب المصالح لكون وزارة الخارجية نفسها طرفاً حكومياً. وقد نصت المادة
الرابعة عشرة من نظام المحاماة الصادر بالمرسوم الملكي رقم (م/٣٨) وتاريخ
١٤٢٢/٧/٢٨هـ، صراحة على التالي:

الرياض-العليا. بناية مؤسسة الملك فيصل الخيرية. البرج الشمالي. الدور ١٣ . ص.ب: (٢٧٠٠) الرياض ١١٤٦١ المملكة العربية السعودية

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103319

In the Name of Allah, the Most Merciful and Compassionate

**Saud Mohammed Ali Al-Shawwaf**

Attorney and Legal Consultant

License 24

Riyadh – Kingdom of Saudi Arabia

email: shawwaflaw@alshawwaf.com

Phone: 4648540 - 4648534

4652255 – 4656543

telefax: 4648480

Commercial Registration: 6812

4/1/1424AH

13/2/2005

**The Honorable President and members of the Fifth Circuit**

**Board of Grievances          May Allah keep them safe**

Peace and the blessings of Allah be upon you.

Re:      Case registered with the Board under No. 3663/Q of 1425AH, filed by <u>Yasin Abdullah Kadi</u>
          **(Plaintiff) V. Foreign Ministry (Defendant)**

Your Honors,

In reference to the Statement of Claim filed by the Plaintiff under No. 429/Q/804, dated 18/8/1425AH, we request your kind permission for us to appear on behalf of the Foreign Ministry before this circuit, with this memorandum in response to what the aforementioned Statement of Claim contained. We also request your permission for our response and defense to be based on a challenge to the form and a challenge to the substance, in the following manner:

**First**: As to Form:

1.   We noticed that the attorney representing the Plaintiff and adjudicating on his behalf in this case is the Office of Dr. Saad bin Abdallah Al-Braik. Whereas Dr. Saad Al-Braik has represented many ministries and Saudi governmental agencies, and he had often provided counsel and services in the legal field to governmental parties and still does. This makes his representation of the Plaintiff against the Foreign Ministry before your esteemed Circuit, fall within the scope of conflict of interest because of the fact that the Foreign Ministry is a governmental party itself. Article 14 of the Code of Law Practice, issued in Royal Decree No. M/38. Dated 28/7/1422AH, explicitly states the following:

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, PO. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101319

سعود محمد على الشواف
للمحاماة والاستشارات القانونية
ترخيص رقم ٤٤
الرياض - المملكة العربية السعودية

‏— ٢ —

"١— لا يجوز للمحامي بنفسه أو عن طريق محام آخر أن يقبل أي دعوى أو يعطي أية إستشارة ضد جهة يعمل لديها، أو ضد جهة إنتهت علاقته بها إلا بعد مضي مدة لا تقل عن خمس سنوات من تاريخ إنتهاء علاقته بها.

٢— لا يجوز للمحامي الذي يعمل لموكله بصفة جزئية بموجب عقد أن يقبل أي دعوى أو يعطي أي إستشارة ضد موكله قبل مضي ثلاث سنوات على إنتهاء العقد".

كما أن المادة الخامسة عشرة من نفس النظام قد نصت على أنه:

"لا يجوز للمحامي بنفسه أو بواسطة محام آخر أن يقبل الوكالة عن خصم موكله أو أن يبدي له أية معونة، ولو على سبيل الرأي، سبق له أن قبل الوكالة فيها أو في دعوى ذات علاقة بها ولو بعد إنتهاء وكالته"

من نصوص النظام التي تقدّم ذكرها، يثبت تماماً أن قيام مكتب الدكتور/ سعد البريك بتمثيل المدعي في هذه الدعوى ضد وزارة الخارجية مع قيامه في نفس الوقت بتقديم المشورة وخدمات المحاماة لعدة جهات حكومية، مخالف تماماً لمقتضيات المهنة ولأحكام النظام المنطبق وذلك بصرف النظر عن الوحدة أو الوحدات الحكومية التي قام أو يقوم مكتب الدكتور/ سعد البريك بتمثيلها وتقديم خدمات قانونية لها؛ لأن جميع الوحدات الحكومية تقوم في نهاية الأمر بتكوين جسم واحد وشخصية إعتبارية واحدة هي الحكومة. من هذا المنطلق، نرى يا أصحاب الفضيلة، أن الوكالة الصادرة من المدعي لمكتب الدكتور/ سعد البريك، لا يعتدّ بها وهي، لكونها قد جاءت مخالفة للنظام المنطبق، تعتبر كأن لم تكن؛ وبالتالي، يلزم الأمر أن يقوم المدعي بالترافع بنفسه أو بالقيام بتعيين وكيل آخر لا يكون هناك أي تضارب مصالح ناتج عن تعيينه وكيلاً له. وحتى ذلك الحين، نلتمس من مقام الدائرة شطب الدعوى أو، على الأقل تعليق النظر فيها.

(٢)  لقد قام المدعي برفع دعواه الماثلة مباشرة ضد وزارة الخارجية كما ولو كانت وزارة الخارجية هي صاحبة القرار الذي يَقضي بإحالة ملفّ تظلماته إلى اللجنة المشكّلة بمجلس الأمن. إن الأمر ليس كما يظنّ المدعي حيث أن هناك لجنة سعودية دائمة لمكافحة الإرهاب تم تكوينها بموجب الأمر السامي رقم (٢٠١٦٨) وتاريخ

13022005/Kam   أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة — ياسين قاضي ضد وزارة الخارجية

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103320

**Saud Mohammed Ali Al-Shawwaf**
Attorney and Legal Consultant
License 24
Riyadh – Kingdom of Saudi Arabia

- 2-

" 1. An  attorney, himself or through another attorney, may not accept any claim or give any counsel against a party for which he works, or against a party with which his relationship terminated until after the lapse of a period of not less than five years from the date of such termination.

2 - An attorney who works part-time for a client under contract may not accept any case or give any counsel against such client before the lapse of three years from the expiry of said contract".

Moreover, Article 15 of the same Code stipulates that:

" An attorney, himself or through another attorney, may not agree to represent his client's adversary or to offer any assistance thereto, not even by way of expressing an opinion, in a case in which he had previously agreed to take part or in a case that is related to it, even after the expiry of his power of attorney".

Through the provisions of the Code mentioned above, it is well established that the representation of the Office of Dr. Saad Al-Braik of the Plaintiff in this case against the Foreign Ministry, while simultaneously providing counsel and legal services to several governmental agencies, is totally contrary to the exigencies of the profession and to the provisions of the applicable Code. This is regardless of the governmental agencies that the Office of Dr. Saad Al-Braik had represented or to which it provided legal services, because all governmental agencies eventually form one body and one legal entity, which is the Government. Based on this point of view, we think, Your Honors, that the representation of the Plaintiff by the Office of Dr. Saad Al-Braik is null, as it violates the applicable Code. Therefore, the Plaintiff shall plead himself or appoint another attorney whose representation shall not result in any conflict of interest. Until then, we request from this Circuit to dismiss the case or at least to suspend its consideration.

2.  The Plaintiff has filed his Case directly against the Foreign Ministry, as if the Foreign Ministry is the maker of the decision to refer his file of grievances to the Committee formed by the Security Council (CTC). It is not as the Plaintiff thinks, since there is a Saudi Permanent Counter-Terrorism Committee (PCTC), formed under High Order No. 20168, dated 10/10/1422AH,

13022005/Kam the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101320

سعود محمد علي الشواف

للمحاماة والاستشارات القانونية

ترخيص رقم ٤٤

الرياض - المملكة العربية السعودية

—٣—

١٤٢٢/١٠/١٠هـ رهي المعنية بالأمر. صحيح أن وزارة الخارجية عضو في تلك اللجنة ولكن عضويتها تلك لا تخولها الخروج عن المنظومة المكوّنة للجنة ولا الإنفراد بقرار إحالة ملف المدعي للجنة مجلس الأمن؛ كما يطـــالب المدعي. إن الأمر السامي المذكور قد حدد بوضوح طريقة عمل اللجنة الدائمة لمكافحة الإرهاب المختصة بالأمور التي تدخل ضمنها موضوع المدعي المطروح على مقام الدائرة. وكما أسلفنا، لا يحق لوزارة الخارجية أو لأي عضو آخر في اللجنة المذكورة أن يخرج عن إطار الآلية المحددة التي عقد لها الإختصاص بهذا الموضوع ولا عن المسار المحدد لعملية إصدار وتسيير قرارات و/أو توصيات تلك الآلية. إن الذي يتم حسبما تم تحديده هو أن يقوم صاحب الدعوى برفع أمر دعواه ومستنداته الثبوتية مباشرة للجنة الدائمة لمكافحة الإرهاب في مقرها بوزارة الداخلية. وتقوم اللجنة بالنظر في الموضوع ومن ثم تقوم بإصدار توصياتها إلى المقام السامي ويقوم المقام السامي بالنظر في الأمر ومن ثم بإصدار توجيهاته المحددة لوزارة الخارجية. وفي حالة أن تكون توجيهات المقام السامي بإحالة ملف الموضوع إلى لجنة مجلس الأمن لمكافحة الإرهاب، تقوم وزارة الخارجية من فورها ودونما تأخير بتنفيذ تلك التوجيهات وإحالة الملف إلى لجنة مجلس الأمن لمكافحة الإرهاب وذلك عن طريق بعثة وزارة الخارجية الدائمة في الأمم المتحدة بنيويورك. إذاً، فإن قيام وزارة الخارجية بإحالة الملف على النحو المذكور لا يتأتّى إلا بإستلامها لتوجيه بذلك من المقام السامي. وهكذا يتضح لكم يا أصحاب الفضيلة أن طلب المدعي أن يتم إلزام وزارة الخارجية بإحالة ملفه إلى لجنة مجلس الأمن ما هو إلا معركة في غير معترك ودعوى تمّ رفعها على غير ذي صفة. وإزاء هذا الخلل الشكلي وتأسيساً عليه، لا يسعنا إلا أن نلتمس مقام الدائرة إصدار قرارها العادل بشطب دعوى المدعي إيجازياً.

**ثانياً:** الناحية الموضوعية:

من الناحية الموضوعية، ترى وزارة الخارجية أنه لم يكن هناك أصلاً أي داع أو مبرر لإقامة هذه الدعوى وذلك لسبب بسيط هو أن وزارة الخارجية (المدعى عليها) قد قامت فعلاً ومنذ مدة بإتخاذ الإجراء الذي يسعى إليه المدعي لأن بموجب دعواه الحالية وذلك منذ تاريخ ١٤٢٤/٥/٢١هـ. وأنّ ذلك قد تم عن طريق الآلية المذكورة وبإتّباع المسار النظامي المحدد لتوصيات تلك الآلية. وليكون الأمر أكثر وضوحاً، نلتمس سماح الـــدائرة الموقرة بأن نسرد

أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة — ياسين قاضي ضد وزارة الخارجية    13022805/Knm

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103321

**Saud Mohammed Ali Al-Shawwaf**
Attorney and Legal Consultant
License 24
Riyadh – Kingdom of Saudi Arabia

- 3 -

which is the concerned authority. It is true that the Foreign Ministry is a member of that Committee, but its membership does not authorize it to deviate from the constituent system of the Committee nor to solely take the decision of the referral of the Plaintiff's file to the CTC. The above-mentioned High Order clearly defined the course of action of the PCTC which is competent in matters that include the claim of the Plaintiff filed before this Circuit. As mentioned above, neither the Foreign Ministry nor any other member of the aforesaid Committee has the right to deviate from the specific mechanism designated to be the competent party, or from the specific process course of issuing and conducting the decisions and/or recommendations of that mechanism. What shall be done as determined is that a claimant shall directly file his claim and supporting documents with the PCTC at its headquarters at the Interior Ministry. The PCTC shall consider the matter and then issue its recommendations to the Supreme Authority and the latter shall consider the matter and then issue its specific directives to the Foreign Ministry. In the event that the Supreme Authority's directives are to refer the file to the Security Council Counter-Terrorism Committee (CTC), the Foreign Ministry shall immediately and promptly implement such directives and refer the file to the CTC through the Permanent Mission of the Foreign Ministry at the United Nations in New York. Therefore, the Foreign Ministry's referral of the file as aforementioned can only be done by receiving a directive thereof from the Supreme Authority. Thus, it is obvious to Your Honors that the Plaintiff's request to obligate the Foreign Ministry to refer his file to the CTC is only a battle in the wrong battlefield and a case filed against a party that lacks standing. In view of and based upon this form defect, we cannot but request from this Circuit to make its fair decision to summarily dismiss the Plaintiff's case.


**Second**: As to Substance:

As to the substance, the Foreign Ministry believes that there was no reason or justification for filing such a case, simply because the Foreign Ministry (Defendant) had, for a while already, taken the action sought by the Plaintiff in his case at hand since 21/5/1424 AH, and it was done through the aforesaid mechanism and by following the system's specific course of the recommendations of that mechanism. To make it even clearer, we request the permission of this esteemed Circuit to detail

13022005/Kam  the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101321

سعود محمـد علي الشواف
للمحاماة والاستشارات القانونية
ترخيص رقم ٤٤
الرياض- الملكة العربية السعودية

— ٤ —

هنا أدناه بالتفصيل الخطوات التي تمت  والإجراءات التي أتخذت سلفاً من قبل وزارة الخارجية والجهات الرسمية الأخرى المختصة بشأن موضوع هذه الدعوى؛ وذلك على النحو التالي:

(١) تم إدراج إسم المدعي في قوائم الأمم المتحدة وفقاً لقرار مجلس الأمن رقم ١٢٦٧(١٩٩٩) لوجود إتهامات بارتباطه بتمويل الإرهاب وأدى ذلك إلى تجميد حساباته وأصوله المالية.

(٢) بتاريخ ١٤٢٢/١٢/٢٨هـ قام المدعي بتقديم ملفين (باللغة الإنجليزية) إلى وزارة الخارجية لتسليمها إلى الأمم المتحدة.

(٣) حيث أن المدعي لم يتّبع المسار النظامي المحدّد، قامت وزارة الخارجية بتاريخ ١٤٢٣/٢/٣هـ بإحالة الملفين إلى اللجنة الدائمة لمكافحة الإرهاب مع التوصية بتبني قضية المذكور وإحالة الملفين لمجلس الأمن عبر وفد المملكة في الأمم المتحدة بنيويورك.

(٤) بتاريخ ١٤٢٣/٧/١٦هـ، قدم المدعي أيضاً لوزارة الخارجية ملفين آخرين ثم إحالتهما أيضاً للجنة الدائمة لمكافحة الإرهاب.

(٥) بتاريخ ١٤٢٣/٧/٢هـ، قدم المذكور ترجمة عربية لملفاته.

(٦) قامت اللجنة الدائمة لمكافحة الإرهاب بدراسة وضع المذكور ورفعت محضرها الأول للمقام السامي بتاريخ ١٤٢٣/٦/١٥هـ مؤيدة توصية وزارة الخارجية بتبني قضية المذكور.

(٧) بتاريخ ١٤٢٣/٧/٢٥هـ، صدر الأمر السامي بالموافقة على توصية وزارة الخارجية التي تبنتها اللجنة الدائمة لمكافحة الإرهاب.

(٨) بتاريخ ١٤٢٣/٨/٢هـ تم إحالة الموضوع مرة أخرى للجنة الدائمة لمكافحة الإرهاب لوجود قواعد إرشادية جديدة صادرة من مجلس الأمن.

(٩) بتاريخ ١٤٢٤/١/١هـ رفعت اللجنة العليا لمكافحة الإرهاب الموضوع مرة ثانية للمقام السامي موصية بدعم قضية المذكور حتى على ضوء القواعد الإرشادية الجديدة الصادرة من مجلس الأمن.

13022005/Kam   أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة ـ ياسين قاضي عبد وزارة الخارجية

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103322

**Saud Mohammed Ali Al-Shawwaf**

Attorney and Legal Consultant

License 24

Riyadh – Kingdom of Saudi Arabia

- 4 -

below the steps and actions taken in advance by the Foreign Ministry and the other competent official authorities on the matter of this case, as follows:

√ 1.  The name of the Plaintiff has been added to the lists of the United Nations in accordance with Security Council resolution no. 1267 (1999) because of the accusations of his involvement in financing terrorism, which led to the freezing of his accounts and financial assets.

√ 2.  On 28/12/1422 AH, the Plaintiff submitted two files (in English) to the Foreign Ministry to be handed over to the United Nations.

√ 3.  As the Plaintiff did not follow the system's specific course, the Foreign Ministry referred the files on 3/2/1423 AH to the PCTC with a recommendation to support the case of the Plaintiff and to refer the two files to the Security Council through the Kingdom's delegation at the United Nations in New York.

√ 4.  On 16/7/1423 AH, the Plaintiff also submitted another two files to the Foreign Ministry which were also referred to the PCTC.

√ 5.  On 2/7/1423 AH, the Plaintiff submitted an Arabic translation of his files.

√ 6.  The PCTC examined the situation of the Plaintiff and submitted its first report to the Supreme Authority on 15/6/1423 AH, endorsing the recommendation of the Foreign Ministry to support the case.

√ 7.  On 25/7/1423 AH, a High Order was issued approving the recommendation of the Foreign Ministry adopted by the PCTC.

√ 8.   On 2/8/1423 AH, the issue was referred again to the PCTC because of the new guidelines issued by the Security Council.

√ 9.  On 1/1/1424 AH, the Supreme Counter-Terrorism Committee (SCTC) referred the issue again to the Supreme Authority, with a recommendation to support the case of the Plaintiff even in the light of the new guidelines issued by the Security Council.

13022005/Kam  the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101322

سُعود محمد على الشواف
للمحاماة والاستشارات القانونية
ترخيص رقم ٢٤
الرياض - المملكة العربية السعودية

—٥—

(١٠) بتاريخ ١٤٢٤/٥/١٩هـ، صدر الأمر السامي بالموافقة على التوصية المذكورة وذلك بالصياغة التالية: "**ترغب إليكم أن تقوم وزارة الخارجية بالطلب من الولايات المتحدة إيضاح أسباب إدراج إسم المذكور على قوائم مجلس الأمن، وعلى ضوء ذلك، تتم المطالبة برفع إسمه من قائمة تمويل الإرهاب وفقاً للآلية المقررة لذلك".**

(١١) بتاريخ ١٤٢٤/٥/٢١هـ، قامت وزارة الخارجية بتوجيه برقية لسفارة المملكة في واشنطن ووفد المملكة في نيويورك بالعمل وفقاً للتوجيه الكريم.

(١٢) بتاريخ ١٤٢٤/٦/٨هـ، وردت برقية من سفارة المملكة في واشنطن بأنه قد تمت الكتابة لوزارة الخارجية الأمريكية بالإستفسار عن أسباب إدراج إسم المذكور في قوائم الأمم المتحدة.

(١٣) بتاريخ ١٤٢٤/١١/١٢هـ، تم إستعجال سفارة المملكة في واشنطن ووفد المملكة في نيويورك بالإفادة بنتائج إتصالاتهما بالحكومة الأمريكية بشأن المواطن ياسين قاضي (المدعي).

(١٤) تقدم المدعي بطلب حيال إقتطاع مبلغ مالي من أمواله المجمدة في البنوك السعودية لتغطية مصروفات القضية وفقاً لقرار مجلس الأمن ذي الصلة؛ وبالتالي، صدر الأمر السامي بتاريخ ١٤٢٥/٤/١١هـ بقيام اللجنة العليا لمكافحة الإرهاب بدراسة الطلب المذكور.

(١٥) بتاريخ ١٤٢٥/٦/١٦هـ، قام ديوان رئاسة مجلس الوزراء بمخاطبة سمو وزير الداخلية رداً على إستفسار سموه حول قيام وزارة الخارجية بالإستفسار عن أسباب إدراج إسم المذكور في قوائم مجلس الأمن وأنه لم يرد أي رد حتى تاريخه.

(١٦) بتاريخ ١٤٢٥/٦/١٧هـ، عقّبت وزارة الخارجية على السفارة الأمريكية بالرياض حول طلب الإفادة عن أسباب إدراج إسم المذكور في قوائم مجلس الأمن.

(١٧) بتاريخ ١٤٢٥/٦/١٧هـ، عقّبت وزارة الخارجية على سفارة المملكة في واشنطن ووفد المملكة في نيويورك لمتابعة الإفادة عن أسباب الإدراج مع الخارجية الأمريكية.

(١٨) بتاريخ ١٤٢٥/٦/٢٩هـ، صدر الأمر السامي بالموافقة على توصية اللجنة الدائمة لمكافحة الإرهاب بدعم طلب المذكور إقتطاع مبلغ من حساباته المجمدة لتغطية مصروفات موضوعة؛ وكان الأمر السامي المذكور بالصياغة التالية:

13022005/Kam   أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة ـ ياسين قاضي ضد وزارة الخارجية

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103323

**Saud Mohammed Ali Al-Shawwaf**
Attorney and Legal Consultant
License 24
Riyadh – Kingdom of Saudi Arabia

- 5 -

√ 1.  On 19/5/1424 AH, a High Order was issued endorsing this recommendation and stating: "**We would like the Foreign Ministry to request the United States to clarify the reasons for adding the name of the Plaintiff on the lists of the Security Council. In light of this, removing his name from the terrorism financing list shall be requested in accordance with the established mechanism**".

√ 2.  On 21/5/1424 AH, the Foreign Ministry sent a telegraph to the Kingdom's Embassy in Washington and the Kingdom's delegation in New York to act in accordance with the royal directive.

√ 3.  On 8/6/1424 AH, a telegraph from the Kingdom's Embassy in Washington reported that a letter was sent to the U.S. Department of State to inquire about the reasons for adding the name of the Plaintiff to the UN lists.

√ 4.  On 12/11/1424 AH, the Kingdom's Embassy in Washington and the Kingdom's delegation in New York were reminded to report on the results of their contacts with the US government regarding the citizen Yasin Kadi (Plaintiff).

5.  The Plaintiff submitted a request to deduct an amount of money from his frozen funds in Saudi banks to cover the expenses of the case in accordance with the relevant Security Council resolution. Consequently, a High Order was issued on 11/4/1425 AH requiring the SCTC to examine this request.

6.  On 16/6/1425 AH, the Prime Minister's Office sent a letter to His Highness the Minister of Interior in response to his inquiry about the Foreign Ministry's inquiring about the reasons for adding the name of the Plaintiff to the Security Council lists, and reported that no response has been received to date.

√ 7.  On 17/6/1425 AH, the Foreign Ministry followed up with the US Embassy in Riyadh about the request to report on the reasons for adding the name of the Plaintiff to the Security Council lists.

√ 8.  On 17/6/1425 AH, the Foreign Ministry followed up with the Kingdom's Embassy in Washington and the Kingdom's delegation in New York to update on its report on the reasons for the addition to the lists with the U.S. Department of State.

9.  On 29/6/1425 AH, a High Order was issued endorsing the recommendation of the PCTC to support the request of the Plaintiff to deduct an amount from his frozen accounts to cover the expenses of his case. The High Order states:

13022005/Kam  the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101323

سعود محمد علي الشواف

للمحاماة والاستشارات القانونية

ترخيص رقم ٤٤

الرياض - المملكة العربية السعودية

— ٦ —

"(أ)   تأييد طلب المواطن ياسين قاضي لموافقته قرار مجلس الأمن رقم ١٤٥٢(٢٠٠٢) على أن يتقدم بالوثائق المؤيدة لطلبه والمستندات التي توضح حاجاته الضرورية.

(ب)   تقوم وزارة الخارجية عبر وفد المملكة الدائم لدى الأمم المتحدة بمخاطبة لجنة مجلس الأمن المنشأة بالقرار ١٢٦٧(١٩٩٩) والإفادة بما يصدر عن اللجنة حول طلب المذكور".

(١٩)   بتاريخ ١٤٢٥/٨/١١هـ، تم رفع مذكرة السفارة الأمريكية بالرياض بشأن رأي الجهات الأمريكية حول المذكور وما يقوم به من أعمال مشبوهة.

(٢٠)   بتاريخ ١٤٢٥/٧/٧هـ، وردت للخارجية مكاتبة وزارة الداخلية مرفق بها ملفان للمذكور يوضحان تكاليف المحاماة والحاجات المعيشية الأساسية.

(٢١)   بتاريخ ١٤٢٥/٧/٨هـ، تم الإبراق إلى وفد المملكة في نيويورك لتسليم الملفين إلى لجنة مجلس الأمن وفقاً للتوجيه الكريم ولقرار مجلس الأمن رقم ١٤٢٥.

(٢٢)   بتاريخ ١٤٢٥/٨/٦هـ، وردت برقية وفد المملكة الدائم في نيويورك تطلب الإفادة حول بعض التساؤلات المحددة بشأن الموضوع وكانت الأسئلة المعنية كالتالي:

(أ)   ما هي المبالغ المستحقة حالياً ولم يتم سدادها بالتفصيل؟.

(ب)   المعلومات الواردة في الملفات المرفقة بالبرقية تشير إلى سداد بعض المبالغ بشيكات مسحوبة على عدة مصارف تجارية، فمن أي حساب تم سدادها؟ وما علاقة تلك الحسابات بالمدعي؟؟.

(٢٣)   بتاريخ ١٤٢٥/٨/٢٦هـ، قامت وزارة الخارجية برفع تلك الإستفسارات إلى سمو وزير الداخلية الذي قام بإحالتها إلى محامي المذكور. وحتى هذه اللحظة لم ترد أية إجابة بشأنها من المدعي أو من محاميه.

من كل ما ورد أعلاه يتّضح لمقام الدائرة أن الجهات المعنية في المملكة، شاملة وزارة الخارجية، لم تألو جهداً في إتخاذ ما كان بوسعها من إجراءات لمساعدة المدعي وتحريك قضيته وتحقيق نتائج إيجابية لها. كما أن تسلسل التواريخ الواردة أعلاه توضح بجلاء عدم وجود أي تقصير أو تأخير من جانب وزارة الخارجية أو من جانب أي من الجهات الرسمية ذات الصلة. وحسبما هو واضح من تـاريخ آخر إجراء تم إتخـاذه (١٤٢٥/٨/٢٦هـ)، إن كان هناك تقصير، فـإنه يكون من

أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة ـ ياسين قاضي ضد وزارة الخارجية          13022005/Kam

CONFIDENTIAL: This document is subject to a Protective Order regarding confidential information in 03 MDL 1570 (GBD), United States District Court for the Southern District of New York.

KADI0103324

**Saud Mohammed Ali Al-Shawwaf**
Attorney and Legal Consultant
License 24
Riyadh – Kingdom of Saudi Arabia

- 6 -

"(A) Approving the request of the citizen Yasin Kadi as it is consistent with Security Council Resolution No. 1452 of 2002, provided that he shall submit the documents in support of his request and the documents showing his necessary needs.

(B) The Foreign Ministry shall, through the Permanent Mission of the Kingdom to the United Nations, address the Security Council Committee established pursuant to resolution no. 1267 of 1999 and report on the response of the Committee regarding the Plaintiff's request".

√ 10. On 11/8/1425 AH, a memorandum from the US Embassy in Riyadh was submitted on the opinion of the US authorities regarding the Plaintiff and his suspicious actions.

11.  On 7/7/1425 AH, the Foreign Ministry received a letter from the Interior Ministry, attached to which were two files by the Plaintiff, showing attorney fees and basic living needs.

12. On 8/7/1425 AH, a telegraph was sent to the Kingdom's Mission in New York to deliver the two files to the Security Council Committee in accordance with the Royal Directive and  Security Council Resolution no. 1425.

13. On 6/8/1425 AH, a telegraph was received from the Kingdom's Permanent Mission in New York requesting information on certain specific questions on this matter. The questions were as follows:

    **A.  What are the amounts currently due and not paid. in detail?**

    **B.  The information included in the files attached to the telegraph indicate that some amounts have been paid by checks drawn on several commercial banks; from which accounts were they paid? What is the relationship between these accounts and the Plaintiff?**

14. On 26/8/1425 AH, the Foreign Ministry referred these questions to HH the Interior Minister, who referred them to the Plaintiff's attorney. To date, no answer has been received from the Plaintiff or his attorney.

Based upon all the above, it becomes obvious to this Circuit that the concerned authorities in the Kingdom, including the Foreign Ministry, have made every effort to take the necessary measures to assist the Plaintiff, to set his case in motion and achieve positive results. The sequence of dates mentioned above clearly shows the absence of any negligence or delay by the Foreign Ministry or by any of the relevant official authorities. As is clear from the date of the last action taken (26/8/1425 AH), if there is

13022005/Kam the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101324

سعود محمد علي الشواف
للمحاماة والاستشارات القانونية
ترخيص رقم ٤٤
الرياض- المملكة العربية السعودية

—٧—

جانب المدعي وحده؛ حيث أنه لم يقم حتّى تاريخه بتقديم المعلومات المطلوبة منه بموجب مذكرة الوزارة المؤرخة ١٤٢٥/٨/٢٦هـ. وبالطبع ليس في وسع الوزارة العودة إلى متابعة الموضوع دون تقديم تلك المعلومات التي سيبنى عليها أي تطور لاحق يتحقق فيما يتصل به.

إن وزارة الخارجية لديها كل المستندات والوثائق الثبوتية التي تؤكد قيامها وقيام الجهات الرسمية الأخرى المعنية باتخاذ الإجراءات المنوه عنها هنا أعلاه، ولكن بالطبع لا يخفى على مقام الدائرة أن جميع تلك المستندات والوثائق تعتبر وثائق سرية ومتصلة، بشكل أو بآخر، بمتطلبات الأمن القومي السعودي والعلاقات الدولية للمملكة. ولهذا السبب، فإنه لم يكن بوسع وزارة الخارجية إرفاق صور أو أصول تلك المستندات و"وثائق الثبوتية طي هذه المذكرة. ومع ذلك، فإن وزارة الخارجية لعلى أتم إستعداد لإطلاع أصحاب الفضيلة رئيس وأعضاء الدائرة الموقرة دون غيرهم على كامل الملف الذي يحتوي على تلك الوثائق والمستندات؛ إذا إستدعي الأمر ذلك.

من كل ما ورد أعلاه، يثبت بجلاء أن دعوى المدعي ضد وزارة الخارجية لا معنى لها ولا مبرر البتة لأنّ المطلوب بموجبها قد تم تقديمه بالزيادة سلفاً. وعليه، تلتمس وزارة الخارجية شطب الدعوى لعدم وجود أساس لها.

هذا ونسأل الله الكريم أن يحفظكم من كلّ سوء وأن يسدّد في سبيل الحق خطاكم.

**والسلام عليكم ورحمة الله وبركاته.....**

خـــالــد عـــواض الثبيتي
بالنيــــابة عن وزارة الخارجية
مكتب الدكتـــــور سعود الشواف
المستشار القانوني لوزارة الخارجية

13022005/Kam   أصحاب الفضيلة رئيس وأعضاء الدائرة الإدارية الخامسة — يمين قاضي ضد وزارة الخارجية

CONFIDENTIAL: This document is subject to a Protective Order
regarding confidential information in 03 MDL 1570 (GBD),
United States District Court for the Southern District of New York.

KADI0103325

**Saud Mohammed Ali Al-Shawwaf**

Attorney and Legal Consultant

License 24

Riyadh – Kingdom of Saudi Arabia

- 7 -

any negligence, it is solely on the part of the Plaintiff; he has not yet submitted the information required from him under the memorandum of the Ministry dated 26/8/1425 AH. Certainly, the Ministry cannot continue to follow up on the subject without providing the information on which any subsequent development will be made.

The Foreign Ministry has all the supporting documents confirming that the measures mentioned above were taken by the Foreign Ministry and the other concerned official authorities. However, it is abundantly clear to this Circuit that all these documents are confidential and relevant, in one way or another, to the requirements of Saudi national security and the international relations of the Kingdom. For this reason, the Foreign Ministry could not attach copies or the originals of these supporting documents to this memorandum. However, the Foreign Ministry is fully prepared to show the Honorable President and members of this esteemed Circuit, exclusively, the entire file containing such documents, if necessary.

Based upon all the above, it is clearly proven that the Plaintiff's case against the Foreign Ministry is meaningless and unjustified, since the relief it seeks has already been provided. Accordingly, the Foreign Ministry requests the dismissal of the case for lack of grounds.

May Allah keep you safe from all evil and guide you on the straight path

**Peace and the blessings of Allah be upon you.**

[signature]

**Khaled Awwad Al Thubaiti**

**PP. the Foreign Ministry**

**The Office of Dr. Saud Al-Shawaf**

**The Legal Consultant of the Foreign Ministry**

13022005/Kam the Honorable President and members of the Fifth Circuit - Yasin Kadi V. Foreign Ministry

Riyadh, Alaya, King Faisal Charity Organization Bldg, North Tower, 13th Fl, P.O. Box 2700, Riyadh 11461, Kingdom of Saudi Arabia

KAD101325

# SOLANO

## سولانو الدورة الاستثمارية الثانية

| المبلغ | المبلغ | المبلغ | البيان |
|---|---|---|---|
| ٢.١٩٤.٥٠٠.٣٢ | | | الأرباح المتاحة للدورة |
| | | | العمليات التجارية للدورة الثانية |
| | | ٦٥٠.٠٠٠.٠٠ | ١. عملية السمسم حار النبوي |
| | | ٥٨٣.٥١٢.٠٠ | ٢. عملية الكراسات |
| | | ١٦٥.٠٠٠.٠٠ | ٣. عملية الكبريت |
| | ١.٦٨٤.٥١٢.٠٠ | ٢٨٦.٠٠٠.٠٠ | ٤. السمسم عبوده |
| | | | المديونيات |
| | ٩.٢٢٦.٠٠ | | ١. العاديات |
| | | | المصروفات |
| ١.٨٤٢.٧٤٢.٠٠ | ١٥٠.٠٠٠.٠٠ | | ١. مينة جنوب الصحراء |
| ٣٥٠.٧٥٧.٩٥ | | | الرصيد |
| | | | خامساً . السداد |
| | ٢٢٦.٨٥١ | | عملية السمسم عبوده |
| | | | عمليات لم تتم تسفيتها |
| | ٥٨٣.٥١٢.٠٠ | | ١. الكراسات |
| | ١٦٥.٠٠٠.٠٠ | | ٢. الكبريت |
| | ٤٢.٠٠١.٧٥ | | ٣. القادسية |
| | ٢٨.٤٠٠.٠٠ | | ٤. إعتماد٦٢/٣٠٠٠ فيض |
| | | | المديونيات |
| | ٢٦.٧٦١.٥٥ | | ١. محلفون |
| ٢.١٧٤.٧٥٢.٢٠ | ٨٥٠.٠٠٠.٠٠ | | ٢. عبوده |
| | | | الأرباح المتوقعة |
| | ٥٨.٢٥١.٢٠ | | عملية الكراسات |
| ٦٩.٨٠٦.٥٢ | ١١.٤٥٨.٢٢ | | عملية الكبريت |

< ٢.٥٩٥/٢١٦٧٨٨

KADI0104343

SOLANO

### SOLANO Second Investment Round

First:

| Statement | Amount | Amount | Amount |
|---|---|---|---|
| Amounts Available for the Round | | | 2,194,500.32 |
| Business Ventures - Second Round | | | |
| 1. Sesame Venture – Dar Al-Nabwi | 650,000.00 | | |
| 2. Notebooks Venture | 583,512.00 | | |
| 3. Sulfur Venture | 165,000.00 | | |
| 4. Sesame - Aboudah | 286,000.00 | 1,684,512.00 | |

Liabilities

   1.  Adyyat                    9,231.00

Expenses

   1.  Sub-Saharan Authority         <u>150,000.00</u>       <u>1,843,743.00</u>

   Balance                              350,757.95

Fifth: Payment

Sesame Venture – Aboudah           326,851

Ventures that have not been Settled

   1.  Notebooks             583, 512.00
   2.  Sulfur                 165,000.00
   3.  Al-Qadisiyah          43,001.75
   4.  Credit 62/2000 qeif     28,400.00

Liabilities

   1.  Various                26,761.55
   2.  Aboudah          <u>850,000,00</u>    2,174,752,30

Expected Profit

Notebooks Venture          58,351.20

Sulfur Venture            11,458.33      69,806.53

                                        *2,595,316.78*

KAD10104343

*SOLANO*

الدورة الثانية

التاريخ : ٢٦/١١/٢٠٠٠ م

| البيان | المبلغ | المبلغ | المبلغ |
|---|---|---|---|
| | | | ١.٦٦٢.٨٦٠.٧ |
| أولاً : | | | |
| الرصيد المرحل من السداد عمليات | | | ١.٦٦٢.٨٦٠.٧ |
| الدورة الأولى | | | |
| ثانياً: | | | |
| العمليات التجارية الدورة الثانية | | | |
| ١. الورق ٦٩٥٢ك | | | ٦٠.١٩٨.٠٠ |
| ٢. الورق ٥٩٠ك | | | ٦٨.٦٧٤.٥٠ |
| ٣. الورق ١٣٠/١٠٥/١٣/٢٠٠٠ | | | ٦٩.٥٩٧.٠٠ |
| ٤.الشراماتيد | | | ١٤٤.٥٨٥.٠٠ |
| ٥. الصابون اعتماد ٢٠٣/٦٣ | | | ٥٦.٨٠٠.٠٠ |
| ٦. الصابون الاعتماد٦٥ | | | ٨٥.٢٠٠.٠٠ |
| ٧. الصابون الاعتماد ٨٠ | | | ٨٨.٨٢٤.٠٠ |
| ٨. الملبوسات | | | ٦٠.٠٠٠.٠٠ |
| ٩. المينة الخيرية | | | ٦٣.٠٠٠.٠٠ |
| ١٠. التانج | | | ٣٥.٨٦٩.٠٠ |
| ١١. الورق ٢٠٠٠/١٧٨/١٧٩/١٤٤/٤٥ | | | ٢٠٠.٠٠٠.٠٠ |
| ١٢.مع اللمائك حانفو | | | ٦٦٦.٠٠٠.٠٠ |
| | | ١.٥٥٨.٧٤٧.٥٠ | |
| ثالثاً: | | | |
| المنصرفات: | | | |
| ١. رئيس مجلس الأدارة | ١.٦٥٨.٧٤٧.٥٠ | ١٠٠.٠٠٠.٠٠ | |
| الرصيد | ٥.١١٢.٥٧ | | |
| الأربا ح المتوقعة للعمليات | ٣٢.١٧٧.٤٠ | | |
| رابعاً. | | | |
| سداد العمليات | | | |
| ١. الملبوسات | | | ٥٨.١٣٩.٥٠ |
| ٢. المينه الخيريه | | | ٥٤.٧١٠.٠٠ |
| ٣. الورق الاعتماد٦٩٥٢ | | | 60,198.00 |
| ٤. الورق الاعتماد٥٩٠ | | | 68,674.50 |
| ارباح اعتماد ٦٩٥٢+٥٩٠ | | | ٢٧.٢٤٧.٨٣ |
| خامساً . | | | |
| المديونيات | | | |
| ١. مجموعة النص | | | ٧٠.٠٠٠.٠٠ |
| ٢. لمائك حانفوديو | | | |
| | ٣٦٠.٢٨٧.٦٥ | | |

٢٩٧,٥٧٧ك

KADI0104344

SOLANO

Second Round

Date: 26 November 2000

| Statement | Amount | Amount | Amount |
|---|---|---|---|
| First: | 1,663,860.07 | | 1,663,860.07 |
| Balance Transferred from Ventures' Payments | | | |
| First Round | | | |

| | | | |
|---|---|---|---|
| Second: | | | |
| Business Ventures – Second Round | | | |
| 1. Papers 6952 k | 60,198.00 | | |
| 2. Papers 5900 k | 68,674.50 | | |
| 3. Papers 103/105/120/2000 | 69,597.00 | | |
| 4. Notebooks | 144,585.00 | | |
| 5. Soap – Credit 62/200 | 56,800.00 | | |
| 6. Soap – Credit 65 | 85,200.00 | | |
| 7. Soap – Credit 80 | 88,824.00 | | |
| 8. Clothing | 60,000.00 | | |
| 9. Charitable Organization | 63,000.00 | | |
| 10. Tang | 35,869.00 | | |
| 11. Papers 145/144/179/178/2000 | 200,000.00 | | |
| 12. Allsetaic Danfo Venture | 626,000.00 | | |
| | | 1,558,747.50 | |

| | | | |
|---|---|---|---|
| Third: | | | |
| Expenses: | | | |
| 1. Chairman of Board of Directors | | 100,000.00 | 1,658,747.50 |
| Balance | | | 5,113.57 |
| Ventures' Expected Profit | | | 32,177.40 |

| | | | |
|---|---|---|---|
| Fourth: | | | |
| Ventures Payment | | | |
| 1. Clothing | 58,139.50 | | |
| 2. Charitable Organization | 54,710.00 | | |
| 3. Papers – Credit 6952 | 60,198.00 | | |
| 4. Papers – Credit 5900 | 68, 674.50 | | |
| Profits– Credit 6952 + 5900 | | | |

| | | | |
|---|---|---|---|
| Fifth: | | | |
| Liabilities | | | |
| 1. Text Group | 70,000.00 | | |
| 2. Lesatic Dan Fodio | | | 360,287.65 |

*397,577.62*

KAD10104344

*SOLANO*

سولانو الدورة الأولى

التاريخ : ٢٠٠٠/١١/٢٦ م

| المبلغ | المبلغ | المبلغ | البيان |
|---|---|---|---|
| | | | أولاً |
| | | ٣٠٠٠٠٠٠٠٠ | ١. المالغ المدفوعة |
| ٣٠٠٥٠٠٠٠٠ | | ٥٠٠٠٠٠٠ | ٢. أرباح |
| | | | ثانياً : العمليات التجارية |
| | | ١٥٠٠٠٠٠٠٠ | ١. عملية السمسم ⊗ |
| | | ١٦٢٠٠٠٠٠ | ٢. عملية الأرز |
| | | ٤٣٠٠٦١٠٧٥ | ٣. عملية القادسية ⊗ |
| | | ١٤٤٠٩٩٨٠٢٥ | ٤. ع. السمسم المزارع |
| | | ٨٥٠٢٠٠٠٠ | ٥. ع. الصابون ٢٠٠/٤٣ |
| ١٩٦٢٠٦٠٠٠٠ | | ٢٨٠٤٠٠٠٠ | ٦. ع. الصابون ٢٠٠/٦٢ |
| | | | ثالثاً : المديونيات |
| ٣٠٠٣٠٦٠٠٠٠ | ٤٠٠٠٠٠٠ | ٤٠٠٠٠٠٠ | ١. عاجياتص |
| ١٤٠٠٠٠٠ | | | الرصيد |
| ٩٩٠٠٩٧ | | | مديونيات سمسم المزارع |
| | | | رابعاً: سماد العمليا |
| | | ١٥٠٠٠٠٠٠٠ | ١. السمسم |
| | | ٢٣٠٠٠٠٠٠ | أرباح السمسم |
| | | ١٦٠٠٤٨٢٠٥٧ | ٢. الأرز |
| | | ٨٥٠٢٠٠٠٠ | ٣. الاعتماد ٢٠٠/٤٣ |
| | | ٢٢٠٩٣١٠٦٨ | أرباح الاعتماد ٢٠٠/٤٣ |
| | | ١٩٠٢٣٨٠٤٥ | ٤. سماد عاجياتص |
| ٣٠٠٩٤٠٠٢٠٣٣ | | ٧٥٠١٥١٠٢٥ | ٥. سماد السمسم المزارع |
| ٣٠١٩٤٠٥٠٠٠٣٣ | | | المبلغ المتاح للاستثمار |

KADI0104345

SOLANO

### Solano First Round

Date: 26 November 2000

| Statement | Amount | Amount | Amount |
|---|---|---|---|
| First: | | | |
| 1.  Paid amounts | 2,000,000.00 | | |
| 2.  Profit | 5,000.00 | | 2,005,000.00 |

| Second: Business Ventures | | | |
|---|---|---|---|
| 1.  Sesame Venture | 1,500,000.00 | | |
| 2.  Rice Venture | 162,000.00 | | |
| 3.  Al-Qadisiyah Venture | 43,001.75 | | |
| 4.  Sesame – Farms Venture | 144,998.25 | | |
| 5.  Soap Venture 43/200 | 85,200.00 | | |
| 6.  Soap Venture 62/200 | 28,400.00 | 1,962,600,00 | |

| Third: Liabilities | | | |
|---|---|---|---|
| 1.  Adyyat | 40,000.00 | 40,000.00 | 2,003,600.00 |
| Balance | | | 1,400.00 |
| Sesame – Farms Liabilities | | | 99,097 |

| Fourth: Venture Payments | | | |
|---|---|---|---|
| 1. Sesame | 1,500,000.00 | | |
| Sesame Profits | 230,000.00 | | |
| 2. Rice | 160,482.57 | | |
| 3. Credit 43/200 | 85,200.00 | | |
| Credit Profits 43/200 | 23,931.68 | | |
| 4. Adyyat Payment | 19,238.45 | | |
| 5. Sesame –Farms Payment | 75,151.25 | | 2,094,003.32 |
| Amount Available for Investment | | | 2,194,500.32 |

KAD10104345

بسم الله الرحمن الرحيم

## *SOLANO*

التاريخ ٢٦/١١/٢٠٠٠ م

| المبلغ | المبلغ | المبلغ | البيان |
|---|---|---|---|
| | | ٦٠٠٠٠٠٠.٠٠ | دفعة أولى |
| ١٦٠٠٠٠٠.٠٠ | | ١٠٠٠٠٠٠.٠٠ | دفعة ثانية |
| | | | العمليات التجارية الدورة الأولى:- |
| | | ٣٠٠٠٠٠.٠٠ | ١. لماتك دانفوديو |
| | | ٢٢٠٠٠٠.٠٠ | ٢. السمو الخصبى |
| | | ٧٠٠٠٠.٠٠ | ٣. مجموعة النص |
| | | ٥٠٠٠٠٠.٠٠ | ٤. اسمنت دانفوديو |
| | | ٢٠٠٠٠٠.٠٠ | ٥. اسمنت عادياتص |
| | | ٣٠٠٠٠٠.٠٠ | ٦. لماتك دانفوديو |
| | ١٦٠٠٠٠٠.٠٠ | ١٠٠٠٠.٠٠ | ٧. مصروفات متنوعة |
| | | | ثالثاً :- سداد العمليات |
| | | ٣٠٠٠٠٠.٠٠ | ١. عملية لماتك دانفوديو |
| | | ٣٦٠٨٠٠.٠٠ | ارباح لماتك دانفوديو |
| | | ٢٠٠٠٠٠.٠٠ | ٢. اسمنت عادياتص |
| | | ٢٢٠٠٠٠.٠٠ | ٣. السمو الخصبى |
| | | ٥٠٠٠٠٠.٠٠ | ٤. اسمنت دانفوديو |
| | | ٧٠٠٠٠.٠٠ | ارباح اسمنت دانفوديو |
| | ١٦٦٣٨٦٠.٠٧ | ٣٤٣٧٨٠.٠٧ | ٥. لماتك دانفوديو+الأرباح |
| | | | مديونياتص : |
| | | ٧٠٠٠٠.٠٠ | ١. مجموعة النص |
| ١٧٥٥١٧٧.٨٩ | ٩١٣١٧.٨٢ | ٢١٣١٧.٨٢ | ٢. لماتك دانفوديو |
| ١٥٥١٧٧.٨٩ | | | |

In the Name of God, Most Gracious, Most Merciful

SOLANO

Date: 26 November 2000

| Statement | Amount | Amount | Amount |
|---|---|---|---|
| First Payment | 600,000.00 | | |
| Second Payment | 1,000,000.00 | | 1,600,000.00 |
| Business Ventures – First Round | | | |
| 1. Lesatic Dan Fodio | 300,000.00 | | |
| 2. Golden Sesame | 220,000.00 | | |
| 3. Text Group | 70,000.00 | | |
| 4. Dan Fodio Cement | 500,000.00 | | |
| 5. Adyyat Cement | 200,000.00 | | |
| 6. Lesatic Dan Fodio | 300,000.00 | | |
| 7. Various Expenses | 10,000.00 | | 1,600,000.00 |

| Third: Ventures' Payment | | | |
|---|---|---|---|
| 1. Lesatic Dan Fodio Venture | 300,000.00 | | |
| Lesatic Dan Fodio Profits | 31,080.00 | | |
| 2. Adyyat Cement | 200,000.00 | | |
| 3. Golden Sesame | 220,000.00 | | |
| 4. Dan Fodio Cement | 500,000.00 | | |
| Dan Fodio Cement Profits | 70,000.00 | | |
| 5. Lesatic Dan Fodio 2+ Profits | 342,780.07 | 1,662,860.07 | |

| Liabilities: | | | |
|---|---|---|---|
| 1. Text Group | 70,000.00 | | |
| 2. Lesatic Dan Fodio | 21,317.82 | 91,317.82 | 1,755,177.89 |
| Balance - Profits | | | 155,177.89 |

KAD10104346

بسم الله الرحمن الرحيم

عقد مضاربه

بالتاريخ: 1999/9/27م

أبرم هذا العقد فى

اليوم: الاثنين السابع عشر من شهر  جمادى الاخر ســـــــــنه   1420 هـ
الموافق:  السابع والعشرون  من شهر سبتمبر ـــــــــــنـــــة 1999م

بين كل من

اولاً :-   شركة سولاثو العالميه وتعرف فيما بعد بالطرف الاول ( رب المال)
ثانياً :-  والسـاده شركة الريان للتجاره والاستثمار المحدوده  وتعرف فيما بعد بالطرف الثانى ( مضارب)
حيث ان الطرف الثانى طلب من الطرف الاول تمويله عن طريق المضاربه بالعمله الاجنبيه لشراء وتصدير
وبيع سمسم وأن لديه خطابات اعتماد باسعار مجزيه تحقق ربحيه كليـه قـى حـدود 16.7   % وحيـث ان
الطرف الاول وافق على هذا الطلب فقد ابرما بينهما عقد المضاربه وفق الشروط التاليه

1/ دفع الطرف الاول للطرف الثانى مبلغ 1.500.000 ليستثمره فى شراء وتصدير سمسم وفقاً للاسعار
المبينه فى خطاب الاعتماد ولا يجوز استخدام رأس المال المدفوع فى غير السمسم وبغرض التصدير
2/ يقوم الطرف الثانى بشراء السمسم بالمواصفات المطلوبه ويصدرها ويلترم بتوريد حصيلتها
3/ حسب الدراسه المقدمه لاسعار السمسم المحليه بالمواصفات المطلوبه فى خطاب الاعتماد وللقيمه المزكوره
فى خطاب الاعتماد فان الربحيه المتوقعه تمثل 16.7 %
4/ على الطرف الثانى تقديم تقرير نصف شهرى عن سير المعامله
5 / تصفى المضاربه بين الطرفين أ ، ب عند الشحن من بورتسودان بتاريخ اقصاه 1999/1/27م
6/ توزع الارباح بين الطرفين بنسبة

أ :   75    % لرب المال

ب :  25    % للمضارب

7/ يقدم الطرف الثانى الضمانات التاليه للطرف الاول
1: شيكات بقيمة المضاربه + الربح
2: ثلاثه الف طن سمسم أبيض حسب، للمواصفات المطلوبه

8/ اذا نشا نزاع يفصل فيه بلجنة تحكيم وفق لحكام الشريعه الاسلاميه وتكون قراراتها ملزمه ونهائيه

توقيع الطرف الثانى
شركة الريان للتجاره والاستثمار المحدوده
السيد/ الفاتح محمد على عبروه

توقيع الطرف الاول
شركة سولاثو العالميه ( عنها)
السيد/ يمن أحمد محمد على

KADI0104347

In the Name of God, Most Gracious, Most Merciful

Speculation (Mudaraba) Contract

Date: 27 September 1999

This contract has been concluded on

This day: Monday, the seventeenth of the month of Jumada al-Thani, the year of 1420 AH

Corresponding to: the twenty seventh of September, the year of 1999

Between Each of:

First: Solano International Company, referred to hereafter as the First Party (the Capital Owner)

Second: Al-Rayaan Company for Trading and Investment, Ltd, referred to hereafter as the Second Party (speculator)

As the Second Party has requested from the First Party to finance them by speculating in foreign currency in order buy, export, and sell sesame; moreover, they have letters of credit with profitable prices that achieve a total profit of approximately 16.7%; and as the First Party has agreed to this request, the two parties have concluded a speculation contract according to the following conditions:

1. The First Party shall pay the Second Party an amount of 1,500,000 to invest in buying and exporting sesame according to the prices stated in the letter of credit. The paid capital shall not be used in anything but sesame for exportation.
2. The Second Party shall purchase sesame with the required specifications, export it, and shall be obliged to transfer its proceeds.
3. According to the presented study on local prices of sesame with the required specifications in the letter of credit, and the value mentioned in the letter of credit, the expected profit is 16.7%.
4. The Second Party shall submit a bi-monthly report on the progress of the venture.
5. The speculation between the two parties, A and B, shall be terminated at the time of shipping from Port Sudan by a date that shall not exceed 27 January 2000, at the latest.
6. Profits shall be distributed between the two parties by percentage of
   A. 75% for the Capital Owner
   B. 25% for the Speculator
7. The Second Party shall provide the following guarantees to the First Party:
   1. Checks with speculative value + profit
   2. Three thousand tons of white sesame according to the required specifications
8. In the case of a dispute, it shall be settled by an arbitration committee in accordance with the provisions of the Islamic Law, whose decisions are binding and final.

[signature]

First Party Signature                                          Second Party Signature

Solano International Company (on behalf)          Al-Rayaan Company for Trading and Investment, Ltd.

Mr. Yassen Ahmed Muhammad Ali                    Mr. Al-Fattih Muhammad Ali Aboudah

[signature]

KAD10104347

التاريخ: ٢٠٠٠/٢/٢٢م.

**السادة/ شركة سولانو**
**الاخ الكريم / يس احمد**

السلام عليكم ورحمة الله وبركاته

<u>**الموضوع: عقد مضاربة**</u>

نشير إلى عقد المضاربة الموقع بيننا بتاريخ ١٩٩٩/٩/٢٧ والتى ينصّ العقد على تصفية العملية عند شحن الصادر بتاريخ أقصاه ٢٠٠٠/١/٢٧م.

نفيدكم ان شراء الكمية تم وفق ما تم الاتفاق عليه وان كمية ٢٥٢٨ طن كانت جاهزة للشحن في ٢٠٠٠/١/٢٧ الا ان بعض الظروف الخاصة بتوفر البواخر وظروف خاصة بالمشترين أدى الى تأخير الشحن وفق الجدول الاتى والأسعار المبدئية أمامها.

| | | | |
|---|---|---|---|
| إلى سوريا بتاريخ ٢٠٠٠/٢/٢٢ مرفق البوليصة | ٥٢٨ طن × ٧٢٠ $ | ٣٨٠١٦٠ $ | |
| الى جده بتاريخ ٢٠٠٠/٢/١٨ مرفق البوليصة | ١٠٠٠ اطن × ٧٤٠ $ | ٧٤٠٠٠٠ $ | |
| نسبة لتأخر الشحن تم دفع قيمتها مقدما وسوف تشحن فى مارس | ١٠٠٠ طن × ٦٧٠ $ | ٦٧٠٠٠٠ $ | |

ـــــــــــــــــــــــ

٢٥٢٨ $ ١٧٩٠١٦٠

| | |
|---|---|
| الربح المحقق | ٢٩٠١٦٠ $ |
| نصيبكم ٧٥% | $٢١٧٦٢٠ |
| راس المال | $١٥٠٠,٠٠٠ |
| جملة استحقاقكم طرفنا | $١,٧١٧,٦٢٠ |

نسبة الربح المحقق ١٩,٢٤% وهو نسبة اعلى من المتوقع .
السداد ٣٨٠١٦٠$ + ٦٧٠٠٠٠$ سوف يتم سدادها من الحصيلة المتنازل عنها لكم من بنك امدرمان الوطنى زائدا مدفوعاتنا النقدية.
مبلغ ٦٦٧٤٦٠$ سوف يتم سداده حالة استلام حصيلة الكمية التى تم شحنها إلى جده ونتوقع ذلك خلال النصف الأول من مارس وسوف نوافيكم فور استلام الحصيلة.

KADI0104348

Date: 22 February 2000

M/S Solano Company

Mr. Yassin Ahmed

May the Peace and Blessings of God be Upon You,

### Subject: Speculation Contract

We refer to the speculation contract signed between us on 27 September 1999, which states that the termination of the venture shall take place at the time of the shipping of the export, by a date that shall not exceed 27 January 2000, at the latest.

We inform you that the purchase of the amount has been done in accordance with what has been agreed upon. Furthermore, the amount of 2528 tons was ready to be shipped on 27 January 2000. However, due to particular situations related to the availability of ships and circumstances that have to do with the buyers, a delay occurred in shipping, as indicated by the following table and initial prices.

| | | |
|---|---|---|
| $380,160 | 528 tons X $ 720 | To Syria on 22 February 2000 (bill of exchange attached) |
| $740,000 | 1000 tons X $ 740 | To Jeddah on 18 February 2000 (bill of exchange attached) |
| $670,000 | 1000 tons X $ 670 | Percentage for the delayed in shipment has been paid in advance, and will be shipped in March. |
| **$1790160** | **2528** | |

| | |
|---|---|
| Achieved Profit | $290,160 |
| Your Share 75% | $217,620 |
| Capital | $1500,000 |
| Total of your accruals | $1,717,620 |

The percentage of the achieved profit is 19.34%, which is higher than expected.

Payment: $380,160 + $670,000. This is to be paid from the proceeds yielded to you from Omdurman National Bank in addition to our cash payments.

The amount of $667,460 to be paid as soon as we when receive the proceeds of the amount shipped to Jeddah; which we expect during the first half of March. We will inform you when we receive the proceeds immediately.

KAD10104348

نعتذر عن الانفلات الزمنى   الذى لـم يكـن بإرادتـنا ونؤكـد لكم عشـمنا وحرصنا علـى التعامل وننتظر ردكم الإيجابي على عملية المرابحة المقدمة لكم والتى نرجو ان  تكـون مدتها ٦ اشهر لنتجنب الانفلات الزمنـى فيـها وهـى كمـا أسـلفنا سـوف تكـون بضمـان مؤسسة دان فوديو الخيرية.

وجزاكم الله خيراً،،،،

**الفـاتـح عبـــــوده**
**رئيس مجلس الادارة**

KADI0104349

We apologize for the time delay which was beyond our control, and we assure you of our determination and keenness to do business deals with you. We are awaiting your positive response on the speculation venture presented to you, which we hope to be for a period of 6 months to avoid any time delay. Furthermore, it will be guaranteed, as we previously mentioned, by the Dan Fodio Charitable Foundation.


May God Reward You,


Al-Fattih Aboudah

Chairman of the Board of Directors

KAD10104349



# FARMER'S COMMERCIAL BANK



مصرف المزارع التجارى

٢٠٠٠/٥/٢٢م

السيد / مدير فرع بورتسودان

السلام عليكم ورحمة الله

<u>الموضوع: اذن تسليم</u>

نرجو التكرم بتسليم السادة / شركة الريان عدد ١٠٥٦ طن فقط الف وستة وخمسون طن سمسم ابيض والمخزنة طرفكم على ان يتم تسليمهم داخل مخازنكم بالاوزان مع دفع مصروفات الصادر وقدره ٦,٨٢٣,٣٨٤ دينار وفق المستندات المقدمة لكم على ان لايتعدى قيمة المستندات المبلغ المرصود

وشكرا

الادارة التجارية

P.O. Box ٦٦٥٦ KHARTOUM - QASR STREET

TEL: ٧٧٤٩٦٠ - ٧٨٣٠٠٥ - ٧٧١٤٦٨ FAX: ٧٧٩٩٠٧ - TELX : ٢٢٦٢١

KADI0104350

In the Name of God, Most Gracious, Most Merciful

FARMER'S                         [Logo: Farmer's Commercial Bank]

COMMERCIAL BANK

---

22 May 2000

Dear Port Sudan Branch Manager,

May the Peace and Blessings of God be Upon You,

**<u>Subject: Delivery Order</u>**

We request to kindly deliver to Al-Rayyan Company 1056 tons, only one thousand and fifty six tons, of white sesame stored at your end. They are to be delivered within your warehouses by weight, in addition to paying the amount of 6,823,384 dinars as export expenses in accordance with the documents presented to you, provided that the value does not exceed the allocated monetary amount.

Thank You,

[signature]

Commercial Department

PO Box 11924, Khartoum, Gasr Street – Tel: 774960 – 783005 – 771468 – Fax: 779907 – Telex 22621

KAD10104350

Al SHAMAL ISLAMIC BANK — فرع الخرطوم — كشف حساب

ACCOUNT NUMBER
US $ 50 50 23/2

للفترة من ٩٩/١١٢/١ الي ٩٩/١١٢/١

شركة سولدتو المحدودة ٥٠٥٠٢٣/٢    جاري اجنبي    دولار امريكي

بواسطة بن احمد: محمد علي    تلفون

| تاريخ الشرح | الوصف | رقم الشيك | مدين | دائن | الرصيد |
|---|---|---|---|---|---|
| ٩٩/١١٢/١ | رصيد ما قبله | | | | ٥٠٠٠٠٠٠٠ |
| ٩٩/١١٢/٢ | سحب بشيك | ٩٩/١١٢/١ ٠٠٠٢٠٣٦١ | ١٠٠٠٠٠٠٠ | | ٢٠٠٠٠٠٠٠ |
| ٩٩/١١٢/٣ | سحب بشيك | ٩٩/١١٢/٠١٠٠٠١٠٣٠٢ | ١٠٠٠٠٠٠٠ | | ٢٠٠٠٠٠٠٠ |
| ٩٩/١١٢/٩ | قيمة دفتر شيكات | | ١٠٠٠٠ | | ١٩٩٩٩٠٠٠ |
| ٩٩/١١٢/١١ | الاعتماد ٠٠٠١١٢٧ | ٩٩/١١٢/٩١٠٠٠١١٢٧ | ٩٧٠٠٠٠٠ | | ١٠٢٩٩٠٠٠ |
| ٩٩/١١٢/٢١ | تحميل داخلي | ٩٩/١١٢/٢٠ ٠٠٠١١٤١ | | ١١٥٢٥٧٦٠١٥ | ١١٢٥٢٥٧٦٠١٥ |
| ٩٩/١١٢/٢١ | تحميل داخلي | ٩٩/١١٢/٢١٠٠٠١٥١٤ | | ٢٠٠٠٠٠٠ | ١٢٢٤٥٢٧٦٠١٥ |
| ٩٩/١١٢/٢١ | ايداع نقدي | | | ١٠٠٠٠٠٠ | ١٢٤٥٢٧٦٠١٥ |
| ٩٩/١١٢/٢٢ | ايداع نقدي | | | ٤٩٩٠٠٠٠ | ١٩٤٣٤٣٦٠١٥ |
| ٩٩/١١٢/٢٣ | تحميل داخلي | ٩٩/١١٢/٢٣ ٠٠٠١٥٦١١ | | ٣٠٠٠٠٠٠ | ٢٢٤٣٤٣٦٠١٥ |
| ٩٩/١١٢/٢٤ | تحميل داخلي | ٩٩/١١٢/٢٤ ٠٠٠١٥٦١٨ | | ٢٠٠٠٠٠٠ | ٢٤٤٣٤٣٦٠١٥ |
| ٩٩/١١٢/٢٢ | تحميل شيكات على بنوك اخرى | ٩٩/١١٢/٢٢ ٠٥٢٤٠٣١ | | ٢٠٠٠٠٠٠ | ٢٦٤٣٤٣٦٠١٥ |
| ٩٩/١١٢/٢٥ | تحميل داخلي | ٩٩/١١٢/٢٥ ٠٠٠١٥٧١ | | ١٩٢٤٩٠٩٠ | ٢٤٩٤٨٧١٠٠٥ |
| ٩٩/١١٢/٢٩ | سحب بشيك | ٩٩/١١٢/٢٧ ٠٠٠١٠٣٦١ | ٤٢٠٠١٠١٧٥ | | ٢٠٧٣٦٩٠٢٠ |
| | الرصيد المتاح بتاريخه | | | | ٢٠٧٣٦٩٠٢٠ |

ملحوظة : لا يعتمد هذا الكشف إلا بعد الختم والتوقيع

بنك الشمال الاسلامي — فرع الخرطوم

KADI0104351

Al-Shamal Islamic Bank

Khartoum Branch

Bank Statement

For the Period from 01/11/99 till 01/12/99

505023/2 Solano Company, Ltd.              Current Foreign              USD

By Yassen Ahmed Muhammed Ali              Telephone

Transaction

| Transaction Date | Description | | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 02/11/99 | Previous balance | | | | 500,000.00 |
| 02/11/99 | Withdrawn by check | 0020361 02/11/99 | 100,000.00 | | 300,000.00 |
| 02/11/99 | Withdrawn by check | 00020370 02/11/99 | 100,000.00 | | 200,000.00 |
| 09/11/99 | Checks book value | | 10.00 | | 199,990.00 |
| 11/11/99 | Credit 12270 | 00012270 11/11/99 | 97,000.00 | | 102,990.00 |
| 20/11/99 | Inward collection | 00006641 20/11/99 | | 11,546.15 | 114,536.15 |
| 21/11/99 | Inward collection | 00021564 21/11/99 | | 200,000.00 | 134,536.15 |
| 21/11/99 | Cash deposit | | | 6,000.00 | 140,536.15 |
| 22/11/99 | Cash deposit | | | 49,900.00 | 190,436.15 |
| 23/11/99 | Inward collection | 00021566 23/11/99 | | 30,000.00 | 220,436.15 |
| 24/11/99 | Inward collection | 00021568 24/11/99 | | 20,000.00 | 240,436.15 |
| 24/11/99 | Collection of other banks checks | 00524031 22/11/99 | | 2,000.00 | 242,436.15 |
| 25/11/99 | Inward collection | 00021571 25/11/99 | | 6,934.90 | 249,371.05 |
| 29/11/99 | Withdrawn by check | 00020361 27/11/99 | 43,001.75 | | 206,369.30 |
| | Available balance to date | | | | 206,369.30 |

Note: This statement is not approved without a stamp and a signature.

[stamp: Al-Shamal Islamic Bank - Khartoum Branch]

KAD10104351



بواسطة يس احمد محمد علي

الــمــرطــه

| تاريخ | الحركه | الوصف | مدين | دائن | الرصيد |
|---|---|---|---|---|---|
| ١٢/١/٩٩ | رصيد ما قبله | | | ٩٠٠٠٠٠٠٠ | ٩٠٠٠٠٠٠٠ |
| ١٢/١/٩٩ | حوالة واردة بالتلكس | | | | |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٢ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٨٥٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٣ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٨٠٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٤ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٧٥٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٥ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٧٠٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٦ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٦٥٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٧ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٦٠٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٨ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٥٥٠٠٠٠٠٠ |
| ١٧/١/٩٩ | سحب بشيك | ٢٥٩ ت ٢٠٢ / ٦١٦ / ٩٩ | ٦٠٠٠٠٠٠ | | ٥٠٠٠٠٠٠٠ |
| ٢٠/١١/٩٩ | سحب بشيك | ٢٣٦ ت ٢٠٢ / ١١ / ٩٩ | ٣٠٠٠٠٠٠ | | ٣٠٠٠٠٠٠ |
| ٢٠/١١/٩٩ | سحب بشيك | ٢٣٧ ت ٢٠٢ / ١١ / ٩٩ | ١٠٠٠٠٠٠ | | ٣٠٠٠٠٠٠ |

الرصيد المتاح بتاريخه

ملحوظة : لا يعتمد هذا الكشف إلا بعد الختم والتوقيع

KADI0104352

By: Yassen Ahmed Muhammad Ali

Transaction

| Transaction Date | Description | | Debit | Credit | Balance |
|---|---|---|---|---|---|
| 13/10/99 | Previous balance | | | | |
| 13/10/99 | Telex transfer | | | 900,000.00 | 900,000.00 |
| 17/10/99 | Withdrawn by check | 00020352 16/10/99 | 50,000.00 | | 850,000.00 |
| 17/10/99 | Withdrawn by check | 00020353 16/10/99 | 50,000.00 | | 800,000.00 |
| 17/10/99 | Withdrawn by check | 00020354 16/10/99 | 50,000.00 | | 750,000.00 |
| 17/10/99 | Withdrawn by check | 00020355 16/10/99 | 50,000.00 | | 700,000.00 |
| 17/10/99 | Withdrawn by check | 00020356 16/10/99 | 50,000.00 | | 650,000.00 |
| 17/10/99 | Withdrawn by check | 00020357 16/10/99 | 50,000.00 | | 600,000.00 |
| 17/10/99 | Withdrawn by check | 000203558 16/10/99 | 50,000.00 | | 550,000.00 |
| 17/10/99 | Withdrawn by check | 00020359 16/10/99 | 50,000.00 | | 500,000.00 |
| 02/11/99 | Withdrawn by check | 00020361 02/11/99 | 200,000.00 | | 300,000.00 |
| 02/11/99 | Withdrawn by check | 00020360 02/11/99 | 100,000.00 | | 200,000.00 |
| | Available balance to date | | | | 200,000.00 |

Note: This statement is not approved without a stamp and a signature.

KAD10104352

فرع الخرطوم

كشف حساب

للفترة من 2000/03/01 الي 2000/03/01

505 0323/2 505.0323/2 شركة سولدتو المحدودة

جاري اجنبي          دولار امريكي

بواسطة يس احمد محمد علي

تلفون

| الرصيد | دائن | مدين | المركزية | الوصف | الحركه | تاريخ |
|---|---|---|---|---|---|---|
| 2.02 | | | | رصيد ما قبله | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08573 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08575 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08574 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...03763 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...03762 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...03764 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08761 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08764 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08760 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...03763 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08749 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08733 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08732 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08731 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08736 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08735 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08734 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08749 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08738 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08737 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08740 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08748 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08744 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08747 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08776 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08765 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...08573 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...088184 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...088183 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 500000 | 500000 | 2000/01/27 ...088183 | شيك مرتد من بنوك اخري | | 2000/03/17 |
| 2.02 | 3000000 | 3000000 | 2000/01/27 ...08474 | شيك مرتد من بنوك اخري | | 2000/03/17 |

KADI0104353

Al-Shamal Islamic Bank

Khartoum Branch

Bank Statement

For the Period from 01/02/2000 till 01/03/2000

505023/2 Solano Company, Ltd.      Current Foreign      USD

By Yassen Ahmed Muhammed Ali      Telephone

Transaction

| Transaction Date | Description | | Debit | Credit | | Balance |
|---|---|---|---|---|---|---|
| 17/02/2000 | Previous Balance | | | | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004728 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004725 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004724 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004723 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004722 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004721 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004742 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004741 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004740 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004750 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004743 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004730 27/01/2000 | 50,000.00 | 50,000.00 | Bounced Checks in amount | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004729 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004733 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004732 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004731 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004736 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004735 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004734 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004739 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004738 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004737 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004720 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004748 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004744 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004746 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004747 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004726 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004745 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004537 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00068184 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00068182 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00068183 27/01/2000 | 50,000.00 | 50,000.00 | | 2.02 |
| 17/02/2000 | Returned check from other banks | 00004749 27/01/2000 | 30000,00 | 30000,00 | | 2.02 |
| | Available balance to date | | | | | |

KAD10104353



fedpol.ch

| | Bundesamt für Polizei |
|---|---|
| Eidg. Justiz- and Polizeidepartement | Office fédéral de la police |
| Département fédéral de justice et police | Ufficio federale di polizia |
| Dipartimento federale di giustizia e polizia | Federal Office of Police |
| Federal Department of Justice and Police | |

| SWISS FEDERAL PUBLIC PROSECUTOR'S OFFICE | | | | |
|---|---|---|---|---|
| E   23/…[illegible]…/2005 | | | | |
| …[illegible]… 01/2006 | | | | |
| Registered | | | | |
| | | | | |
| | | | | |

| | |
|---|---|
| Report by | Dominique Ritter |
| Department | Bundeskriminalpolizei [Swiss Federal Bureau of Investigation], ERM-TWK |
| Date | 20/05/05 |
| File no. | 100 / 254690-705 |
| Swiss Federal Public Prosecutor's Office Case n°. | BA/█████/01/000█ |

## Final report

**regarding**   funding and logistical support of the criminal organisation Al-Qaeda, led by Osama Bin Laden
Art. 260 *ter*, 260 *quinquies* of the Swiss Criminal Code

**for the attention of**  **Claude Nicati, Swiss Federal Public Prosecutor's Office**

### Defendant

| | | |
|---|---|---|
| Surname(s) | **KADI** | **m** |
| First name(s) | **Yassin Abdullah** | |
| Date of birth | **23/02/1955** | |
| a/k/a | **Sheikh Yassin Al Qadi and numerous variations** | |
| Birthplace, region/country | **Cairo / Egypt** | |
| Address, region/country | **Saudi Arabia** | |
| Parents | **Abdullah Aziz Ud Din Kadi and Salha Omar Zubeir** | |
| Spouse/partner | **married to Balgis[i]** | |
| Occupation/employer | **Businessman** | |
| Town/country | **2141 Jeddah / Saudi Arabia** | |
| Address | **Wale Al-Ahad Street, Al-Farsi Center, West Tower 11th Floor, Suites 1&2** | |
| | **P.O. Box 214** | |
| Languages | **Arabic, English** | |
| Personal secretary | **Khalid Najl** | |
| Availability | **Telephone: 966 2 650 2255** | |
| | **Fax: 966 2 650 2188** | |
| UN Resolution 1267 | **included on the list of Taliban and Al-Qaeda** | |

---

[i] Translator's note: possibly "Belgis" – source text unclear

| | | |
|---|---|---|
| Regulation dated Issued to | 20/05/05 Claude Nicati, Swiss Federal Prosecutor's Department | …[signature]… Federal Office of Police Bureau of Investigation Jacques Repond, Investigating Officer BUNDESKRIMINALPOLIZEI |

KADI0010744

Page 15



the 1998 bomb attacks on the US embassies in Nairobi and Dar Es Salaam for example.

Those who served in his military organisation could then be integrated easily into the "civilian organisations" even using their real identities. These trusted allies brought in the financial resources required. Messrs. Mamdouh Mahmud SALIM (Abu Hajer al Iraqi), Mohamed Loay BAYAZID (Abu Rida al Suri) or Wa'el Hamza JULAIDAN (Abu Hasan al Madani), all mentioned below, are typical examples of this system.

Al-Qaeda had its own backers who identified with the organisation's *raison d'être*. A large number of financial backers came from rich Saudi families.
*See TAREEKHOSAMA/41/Tareekh Osama 108*
*See article "les documents originaux de la Golden Chain / La liste secrète des financiers de Ben Laden, www.investigateur.info/zines/textes/176_alqaeda.htrnl*

There were also those working for BIN LADEN who were exclusively involved in the commercial or charitable organisations and therefore provided Al-Qaeda with purely logistical and financial support. Examples include Mr. Enaam ARNAOUT (Abu Mahmoud) and his charity the Benevolence International Foundation / BIF (UN Resolution 1267). Mr. ARNAOUT is now being held in America and has been indicted for several terrorist crimes. Mr. KADI could be categorised under financial and logistical supporters thanks to his payments to suspected Al-Qaeda businesses and individuals via his own businesses, charitable organisations and private accounts.
*See brief synopsis on Osama BIN LADEN, http://de.wikipedia.org*
*See brief synopsis on Al-Qa'ida (The Base), http://ict.org*
*See USA v. Enaam Arnaout, Indictment, No. 02 CR 892*

### 3.   Money transferred from Y.A. KADI to Osama BIN LADEN's innermost circle

Mr. KADI commissioned Mr. Wa'el Hamza JULAIDAN (Abu Hasan al Madani) with a building project. Mr. KADI sent Mr. Wa'el Hamza JULAIDAN a total of US$ 1'250'000.- in several payments for this purpose. These sums originated exclusively from Switzerland. Those who were involved in this operation all number amongst the trusted inner circle of Osama Bin Laden and his Al-Qaeda organisation.

KADI0010758

Page 16



The facts mentioned by Mr. KADI with regard to the transfers are summarised in the Sections below and investigated.

### 3.1 The building project for the students at Al-Eman University in the Yemen, according to Y.A. KADI

On the basis of Mr. KADI's testimony, the founder of Al-Eman University in the Yemen, Sheikh Abdel Majid ZINDANI, required financial resources to be able to offer accommodation to his numerous students. Mr. ZINDANI therefore organised a public appeal for funds in 1997. At the same time he turned to his friend, Mr. Mohammed Omar ZUBEIR, a lecturer and consultant at King Abdel Aziz University in Jeddah/Saudi Arabia and one-time President of the University. Mr. ZUBEIR then contacted his nephew, the businessman Y.A. KADI. KADI immediately announced that he was prepared to donate the money for the student accommodation at Al-Eman University, but he did not send the funds to Al-Eman University and instead took on responsibility for construction of the accommodation himself. To carry out this project, he appointed a Saudi, Wa'el Hamza JULAIDAN, as project manager, even though, from what Mr. KADI said, it appears that JULAIDAN was a poor businessman. Mr. KADI owns the company CARAVAN. Y.A. KADI transferred US$ 1'250'000.- from this company's business account at Faisal Finance in Switzerland direct to a private account held by Mr. JULAIDAN at the same Swiss bank.

| Bank, Faisal Finance, in Geneva/ Switzerland | | | | |
|---|---|---|---|---|
| Date | Total | Caravan KADI's business account | | JULAIDAN personal account |
| 20/02/98 | US$ 350'000.- | IFA 10257 | to | IFA 10409 |
| 14/04/98 | US$ 300'000.- | IFA 10257 | to | IFA 10409 |
| 22/05/98 | US$ 250'000.- | IFA 10257 | to | IFA 10409 |
| 03/07/98 | US$ 150'000.- | IFA 10257 | to | IFA 10409 |
| 30/07/98 | US$ 200'000.- | IFA 10257 | to | IFA 10409 |
| Total | US$ 1'250'000.- | | | |

*See Interview with Y.A. Kadi by the Swiss Federal Public Prosecutor's Office on 25/10/2001*
*See submission by Y.A.KADI to Mr. Claude Nicati of the Swiss Federal Public Prosecutor's Office on 22/08/2003*

KADI0010759

Page 17



*See BKP (Swiss Federal Bureau of Investigation) report Pierallini Paolo[8] dated 07/05/03*
*See BKP (Swiss Federal Bureau of Investigation) report Pierallini Paolo dated 17/09/03*

Mr. JULAIDAN then transferred the sums of money to two different accounts in Istanbul in Turkey. The first, business account IFA 160377 held at Faisal Finance, was in the name of a company called Maram, in which Mr. JULAIDAN holds a stake. The other Faisal Finance account, IFA 950905, belongs to Wa'el Hamza JULAIDAN in person.

| Bank, Faisal Finance, in Istanbul, Turkey | | | | | |
|---|---|---|---|---|---|
| Date | Amount | JULAIDAN personal account | | Maram business account | JULAIDAN personal account |
| 03/03/98 | US$ 150'000.- | IFA 10409 | to | IFA 160377 | |
| 03/04/98 | US$ 200'000.- | IFA 10409 | to | IFA 160377 | |
| 22/04/98 | US$ 250'000.- | IFA 10409 | to | IFA 160377 | |
| 26/05/98 | US$ 50'000.- | IFA 10409 | to | IFA 160377 | |
| 26/05/98 | US$ 200'000.- | IFA 10409 | to | IFA 160377 | |
| 29/06/98 | US$ 300'000.- | IFA 10409 | to | IFA 160377 | |
| 04/08/98 | US$ 300'000.- | IFA 10409 | to | | IFA 950905 |
| Total | US$ 1'450'000.- | | | | |

Maram was set up by the Al-Qaeda operative, Mamdouh Mahmud SALIM (Abu Hajer al Iraqi) and his wife. He sold the company to the Al-Qaeda employees Wa'el Hamza JULAIDAN (Hasan al Madani) and Mohammed Loay BAYAZID (Abu Rida al Suri). At the time of the transfers the company was owned by Messrs. JULAIDAN and BAYAZID. Mr. Mohammed Loay BAYAZID, the Company Director, supposedly had power of attorney for business account IFA 160377 at Faisal Finance. The overall project for the construction of 59 pre-fabricated buildings for Al-Eman University in the Yemen was officially awarded to the company Maram. Maram (Julaidan/Bayazid) issued various subcontracts for this purpose to several companies.

---

[8] Translator's note: the name is presumably "Paolo Pierallini" but I have left it in this format because it is the name of a report

KADI0010760

Page 18



fedpol.ch

| Company | Contract | Date | Overall money transferred |
|---|---|---|---|
| Pacific Invoice[9] | Transport | 10/03/98 to 05/05/98 | US$ 110'548.- |
| Egemak | Bakery equipment | 12/03/98 | US$ 23'500.- |
| Vefa | Construction of buildings | 18/04/98 | US$ 740'000.- |
| Inoksan | Construction of kitchens | 05/05/98 | US$ 35'321.- |
| Yaman and other companies | Building contractor | 98 | US$ 125'000.- |
| Technovision | Engineering | | Amount not specified |
| Total at least | | | US$ 1'034'369.- |

*Submission of Yassin Abdullah KADI to the Deputy Attorney-General of Switzerland, further to the meeting at the Swiss Embassy in Riyadh on 1st July 2003, dated 22/08/2003, page 16*

The table details the payments performed in effect according to Mr. Kadi's report. Money withheld, such as US$ 110'000.- still claimed from Maram by the company Vefa, is not taken into account.

According to Mr. Kadi, the buildings were supposed to be shipped to the Yemen by the company "Pacific Invoice[10]". There they were to be constructed on the Al-Eman University campus. All documents relating to this transaction can be found in:
*Submission of Yassin Abdullah KADI to the Deputy Attorney-General of Switzerland, further to the meeting at the Swiss Embassy in Riyadh on 1st July 2003, dated 22/08/2003 and annexes.*

Why was a public appeal launched for the Al-Eman University building project, even though Yassin Abdullah KADI had declared that he was prepared to finance the entire project?

At the time of the money transfers Osama Bin Laden was in Afghanistan, according to press reports. His organisation, however, was active on the international stage. For instance car bombs exploded in Dar es-Salaam/Tanzania and Nairobi/Kenya outside the American Embassies on 07/08/1998, i.e. during the period when Mr. Kadi was performing his money transfers to Wa'el Hamza JULAIDAN. Hundreds of people were killed and thousands were wounded in these two attacks.
*See Kadi/Maram overview dated 13/10/03*

---

[9] Translator's note: the source text spells this "Pasifik Invoice" and later "Pacifik Invoice" but I have assumed that "Pacific Invoice" is the actual name in view of the large number of spelling mistakes
[10] Translator's note: see above

KADI0010761

Page 19



**3.2.      The individuals involved in the building project and their close ties to Osama Bin Laden and the Al-Qaeda organisation.**

Several people can be linked with the funds for this project, which originated from Switzerland. It is noticeable here that all the individuals exhibit extremely close ties to Osama Bin Laden. These personal, school, business or religious relationships are presented below. A brief synopsis is also provided regarding the responsibilities of these individuals in the individual suspect companies or educational establishments.

**3.3      Abd-al-Majid Al-ZINDANI**

**3.3.1    Mr. ZINDANI's relationship with Osama BIN LADEN**

Mr. ZINDANI was placed on the Al-Qaeda and Taliban list compiled by the UN under Resolution 1267. Mr. Abd-al-Majid Al-ZINDANI, like Osama BIN LADEN's father, also comes from the Yemen. He spent a long time with Osama Bin Laden in Afghanistan, fighting against the Soviet occupying forces. According to specialist literature he had a religious, spiritual and organisational role to play for the mujahadeen. Mr. ZINDANI was reportedly one of Osama BIN LADEN's mentors but he did not take direct part in battle on the various fronts. There are clear indications, nevertheless, that Abd-al-Majid Al-ZINDANI had an important role to play for the leader of Al-Qaeda. Please refer to the BIF/Al-Qaeda document (See Section 17) Tareekhosama/49/Tareekh Osama 121.
*See Tareekhosama/48/Tareekh Osama.121*

This document relates to a meeting between ABU ABDALLAH (Osama BIN LADEN's *nom de guerre* in Afghanistan), Dr. Abdullah NASEEF and Sheikh Abd-al-Majid Al-ZINDANI on the one side and Zia-ul-Haq, the former President of Pakistan, on the other. This document shows that Abd-al-Majid Al-ZINDANI and Osama BIN LADEN attended a meeting as a team at the highest political level. This shows that both of the participants at this meeting have strong mutual interests. Mr. ZINDANI has known Mr. ZUBEIR since the



time he was guest lecturer at the King Abdul Aziz University in Jeddah, Saudi Arabia. At that time Mr. ZUBEIR was reportedly President of the University.
*See Submission of Yassin Abdullah KADI to the Deputy Attorney-General of Switzerland, further to the meeting at the Swiss Embassy in Riyadh on 1st July 2003, dated 22/08/2003, Part 1, 2 Background, 2.1*

This Jeddah-based university is considered the stronghold of radical Islam and is where Osama BIN LADEN himself studied. In Section 3.4, Mohammed Omar ZUBEIR, more details are given with regard to the university. According to expert reports it is assumed that Osama BIN LADEN has been building up his political and military infrastructure in the Yemen since 1995. He received support in achieving this from Mr. ZINDANI. A.M. ZINDANI was president of the consultative council (Majlis al Chourah) of the ISLAH Party. He was also considered the spiritual leader of the armed wing of the ISLAH party (Yemeni Union for Reform), the Yemeni Islamic Jihad. Abd-al-Majid Al-ZINDANI is reported to have set up several Al-Qaeda training camps in the Yemen. According to reports the first was created in the Sadah region in 1992, following Mr. ZINDANI's return from Afghanistan. 3500 to 4000 activists have supposedly been trained in the camps set up there.
*See Intelligence Newsletter no. 309 17/04/97, Bin Laden on Saudi Doorstep.*

It is clear that the Yemen was a preferred retreat for the former mujahadeen, the so-called Arab Afghans.
*See Yemen Times article, 500 Arab Afghans arrested, from 18/11/01*

### 3.3.2    Links between Al-Eman University in Sanaa / Yemen and Osama BIN LADEN

In parallel with the training camps, Mr. ZINDANI founded Al-Eman University in Sanaa in 1994. It must be said that actual accommodation was built at the university for students and lecturers.
*See Yemen Times article, Al-Zindani: My reservation is due to security and intelligence factors, dated 23-26/09/04*

Interestingly, a close friend of Mr. ZINDANI sits on the committee of the University, namely Mr. Mohammed Omar ZUBEIR, Yassin Al KADI's uncle.
*See Interview with Mohammed Omar Zubeir of 3/5/2004 by Claude Nicati of the Swiss Federal Public Prosecutor's Office.*

KADI0010763



According to reports the head of the University is reportedly Mr. Abdul Wahab al-DAILAMI, a former mujahadeen, who fought against the occupying troops in Afghanistan in the 1980s.
*See News.Telegraph article, West fears Sanaa is playing double-game, from 02/03/02*

The graduate from the university who is perhaps most notorious in the west is John Walker Lindh, the American Taliban, who was arrested in Afghanistan. John Walker Lindh attended Al-Eman University and then went on to the war zone to wage his personal jihad.
*See article in The Christian Science Monitor, In Yemen Lindh's quest found its fire, from 06/02/02*

Other students and lecturers from this university have also achieved notoriety in the headlines. Former students of the university have been implicated in the murder of 3 American missionaries/doctors and Jarallah Omar, a leading member of the Yemeni Socialist Party.
*See From the Office of Public Affairs, United States Designates Bin Laden Loyalist, dated 24/02/2004,*
*http://www.treasury.gov/press/releases/is1190.htm*
*See NRO (Nationalreviewonline) Yemeni Sheikh of Hate, by Josh Devon, 07/01/2003,*
*http://www.nationalreview.com/comment/comment-devon010703.asp*

The man who murdered the American doctors in Jiblah, Abed AL-KAMIL, was an Al-Eman University student.
*See Yemen Times article, Jarallah's assassin faced with charges, from 27/4 – 4/5/03*

Al-Eman University lecturer Ahmad AL-DAGHSHI and Al-Eman student, Abduljabar AL MARWANI, were arrested by the Yemeni authorities in connection with the murder of the said Jarallah Omar. They were both members of the "Fundamentalist Jihad Movement", as was Jarallah Omar's murderer.
*See Yemen Times article, Arrest campaign continues, targets of terrorist activities announced, from 4/1 – 4/2/03*

Finally even Mr. ZINDANI's son-in-law, Abdulsalam AL-HARIRI, was arrested with regard to this incident.
*See Yemen Times article, Prominent sheikh's son-in-law arrested over Omar assassination, from 09/02/2003*

Mr. ZINDANI and Mr. ZUBEIR have strong mutual geopolitical and religious interests in the city of Jerusalem. Mr. ZINDANI called for a jihad in

Page 22



Palestine and demanded the restoration of "Al Kuds" (Jerusalem). Mr. ZUBEIR expressed fears that the Al Aqsa Mosque in Jerusalem would be attacked by the Americans/Jews. This sort of act would be unacceptable to Muslims.
*See Interview with Mohammed Omar ZUBEIR by the Swiss Federal Public Prosecutor's Office, from 3/5/04, page 5.*
*See Yemen Times article, ZINDANI calls for Jihad in Palestine, from 14/10/2001*

Shortly after the attacks on the World Trade Center on 11/9/2001, Mr. ZINDANI closed his *Al-Eman* University for a matter of months. The university's official line was that the students had started their field-studies early.
*See Yemen Times article, Zindani calls for Jihad in Palestine, from 14/10/2001*

Mr. ZINDANI was not an uncontroversial figure in his own country either. For instance the journalist Mohammed Al-Qadhi criticised Al-Eman University as a "pain in the neck of Yemen".
*See Yemen Times, Government takes stock of religious schools / Feeding young minds, from 2003*

Abd-al-Majid Al-ZINDANI can still be connected today with individuals from the Al-Qaeda underworld. In a separate case launched by the Swiss Federal Public Prosecutor's Office, the Swiss authorities applied in 2004 to interview Al-Qaeda member Abdullah al RIMI (a/k/a OWAISS) who was imprisoned in the Yemen. The former mujahadeen and veteran from the conflict in Afghanistan explained that he had met Abdel Majid ZINDANI in the Al Masall Mosque in Taez / Yemen. Mr. ZINDANI apparently held a seminar there.
*See translation of the interview with Abdallah al RIMI by the Yemeni authorities / Swiss Federal Public Prosecutor's Office document from 2004*

### 3.4    Mohammed Omar ZUBEIR

### 3.4.1   Mr. ZUBEIR and Islamic extremists

Mohammed Omar ZUBEIR, born 1932, a consultant to the IDB (Islamic Development Bank), residing at Fawwaz Villa 297, Jeddah / Saudi Arabia, home telephone number 6200045, business telephone number 64661110, was interviewed on the matter in Riyadh by Mr. Claude Nicati of the Swiss Federal Public Prosecutor's Office on 03/03/2004. Mr. ZUBEIR is Yassin Abdullah KADI's uncle on his mother's side. He studied in the USA. From 1971 to 1973 he was the head of the Faculty of Economics at King Abdul

Page 23



Aziz University in Jeddah/SA. Over the years from 1976 to 1979 he took over leadership of the famous university as its President. After 1979 he continued to work as a consultant to the university. In 1980 he was awarded an honorary doctorate. Mr. ZUBEIR owns a villa in Istanbul, i.e. in the same city in which Maram carried out KADI's building project. He has enjoyed a long, friendly relationship with the Al-Qaeda intermediary Wa'el Hamza JULAIDAN, whom he met in Afghanistan, during the wars against the Soviet occupiers. Significantly Mr. ZUBEIR reportedly introduced his nephew, Yassin Abdullah KADI, and Mr. Wa'el Hamza JULAIDAN. He is also reported to have proposed Wa'el JULAIDAN for the building project in the Yemen. He has also known Mr. JULAIDAN's partner at Maram for a very long time, Mr. Mohammed Loay BAYAZID, who is referred to below. Mr. ZUBEIR met Wa'el Hamza JULAIDAN's partner 5 or 6 years before work started on the building project, i.e. sometime around 1991 or 1993. Mr. BAYAZID was working for Osama BIN LADEN in the Sudan at that time. Mr. ZUBEIR must be classified as being a member of the Muslim Brotherhood. After the election victory by the FIS [Front Islamique du Salut] in Algeria was declared null and void, both the leading figures in the party, Abassi MADANI and Ali BENHADJ were arrested by the Algerian Government. Mr. ZUBEIR reportedly tried to act as a go-between between the two parties. In Algeria he reportedly met Mr. Youssef NADA from the Al Taqwa bank, who was there in relation to the same matter. For many years Mr. NADA was the person responsible for foreign policy affairs in the Muslim Brotherhood.
*See interview by the Al-Jazeera television channel, "Witness of the Age" programme hosted by Ahmed Mansour with Youssef NADA, from 08/07/2002 and other dates*

In 1992 Youssef NADA's partner, Mr. Ali Ghaleb HIMMAT, travelled to Afghanistan with the Muslim Brotherhood. The then leader (Murshid) of the Brotherhood, Mr. Mustafa MANSOUR, met there with the then Afghan President, Burhanuddin RABBANI. This meeting was held after the Soviet withdrawal from Afghanistan. The BKP (Swiss Federal Bureau of Investigation) found a videocassette of this meeting in one of the rooms belonging to Messrs. NADA and HIMMAT in Switzerland. Mr. Mohamed Omar ZUBEIR can be seen with the Muslim Brotherhood in this short recording.
*See videocassette of Ali Ghaleb HIMMAT in Afghanistan.*

The links between the KADI/ZUBEIR family and the Muslim Brotherhood can also be shown by means of the payments to the Zarka Private University detailed below.

Mr. ZUBEIR made clear in the interview his aversion to American and Israeli policy. He was not afraid of admitting to being a member of the committee of Al-Eman University in the Yemen

KADI0010766

Page 24



even though he knew that the American authorities linked this university with terrorist activities.
*See Interview with Mohammed Omar ZUBEIR from 3/5/04*


### 3.4.2    King Abdel Aziz University in Jeddah / Saudi Arabia and Osama BIN LADEN.

Mr. ZUBEIR clearly played a very central role in the intellectual development of notorious, radical figures at King Abdul Aziz University. During his time at the university, Mr. ZINDANI worked as a lecturer. Abdullah AZZAN, a Palestinian, is considered by experts as being the principal mentor of Osama BIN LADEN in Afghanistan. Mr. AZZAN was also a lecturer at Abdul Aziz University. Mr. AZZAM probably first met Osama BIN LADEN on the university campus, because the terrorist mastermind was a student there. Another notorious lecturer was Muhammad Qutb, an Egyptian. He is the brother of Sayyid QUTB, the ideological leader of the Muslim Brotherhood. After Sayyid's execution in Egypt, Muhammad QUTB published his brother's guiding works in Saudi Arabia. These writings are considered milestones of modern, radical Islam.
*See book "Jihad, the trial of political Islam", by Gilles Kepel, Table of Contents Muhammad and Sayyid QUTB (not attached)*

Wa'el Hamza JULAIDAN was also a lecturer at King Abdul Aziz University in Jeddah / Saudi Arabia from 1982 to 1983.
*See Interview with Wa'el Hamza JULAIDAN, from 3/5/04*

It is impossible to ascertain how much direct influence Mr. Mohammed Omar ZUBEIR had on the appointment of such "eminent" figures at the university. Mr. KADI could not provide an answer to this question. Mr. ZUBEIR visited Afghanistan back in 1992. He can also be seen on various photos in Pakistan/Afghanistan from around 1993, which have been provided by the FBI in New York. He is accompanied in these photographs by Wa'el Hamza JULAIDAN and Yassin Abdullah Kadi.
*See photo-dossier photograph nos. 227, 290, 226 , 294, 292*

Between 1988 and 1990 Mr. ZUBEIR visited Pakistan 3 or 4 times, in order to mediate between the rival parties in Afghanistan. He was accompanied by Yassin Abdullah KADI. According to KADI's testimony, Mr. ZUBEIR headed the delegation. He reported that his uncle also met BIN LADEN's mentor there, Abdullah AZZAM.

KADI0010767

Page 46



The Muwafaq Foundation also bought various goods though from the Binjad Establishment, P.O.Box 1301, Dubai, United Arab Emirates. For instance in 1994 Chafiq AYADI, who will be looked at in more detail below, bought at least 5 Mitsubishi Pickup L200s from the Binjad Establishment for the Muwafaq Foundation in Zagreb. A Toyota Pickup was also bought from the "Fondaciónit Bamir Muaffak". These are known to be the standard types of vehicle used by the mujahadeen around the world. Mr. KADI explained that the owner of the Binjad Establishment was Mr. Khamir Amer BALLAYTH, whom he knew personally. *See response of Yassin Abdullah KADI to the questionnaire of the Deputy Attorney-General of Switzerland, question, response nos. 152 to 155, from 12/03/04, plus attachments relating to the Mitsubishi Pickups and Toyota vehicle documentation*

### 4.    The Muwafaq Foundation in the Sudan, responsible for Africa

At the invitation of the Sudanese Finance Minister, Mr. Abdel Rahim HAMDI, Mr. KADI travelled to Khartoum in 1991 with other Saudi businessmen. At this time the dominant party in the country was the National Islamic Front (NIF) led by Hassan Al TURABI, a personal acquaintance of Osama BIN LADEN. Mr. KADI went on the business trip with Ibrahim AFFENDI, Saleh KAMEL and others. Messrs. AFFENDI and KAMEL feature on the Golden Chain List (BIF/Al-Qaeda document) and are therefore considered to be sponsors of Osama BIN LADEN. After this business trip Mr. KADI set up companies and the Muwafaq Foundation in the Sudan and in other African countries.
*See response of Yassin Abdullah KADI to the questionnaire of the Deputy Attorney-General of Switzerland, response no. 51, page 11, from 12/03/04*
*See TAREEKHOSAMA/41/Tareekh Osama 108*

Mr. Siraj El Din Abdul BARI was the Regional Director of the Muwafaq Foundation in the Sudan from 1992 to 1996. From 1981 to 1992 he had been the cultural attaché at the Saudi Embassy in Washington / USA. The Muwafaq Foundation in Khartoum also reported to the Foundation in Jersey. The Muwafaq Foundation was registered in Khartoum on 16/05/1992 and then dissolved again in 1996.

To recap: Al-Qaeda and Osama Bin Laden went to the Sudan from Afghanistan from approx. 1991 to 1996, at the invitation of Hassan Al TURABI. Amongst those responsible for making preparations for this move were the aforementioned Mohamed Loay BAYAZID and Mamdouh Mahmud SALIM. The preparations involved talks being held with Hassan Al TURABI of the National Islamic Front (NIF).

KADI0010789

Page 47



According to Mr. KADI's testimony, the Muwafaq office in the Sudan was the Foundation's most important branch. The Muwafaq was financed by Khalid BIN MAHFOUZ and Yassin A. KADI's Leemount Ltd. Significant sums of money passed from KADI's Swiss bank accounts to the Sudan. These included considerable sums transferred to Khartoum from Faisal Finance account no. 10172 held by Leemount Ltd. in Geneva. The company Solano also sent money to Khartoum from account no. 10741 held at Faisal Finance in Switzerland. These transfers are described in more detail in the Section "Yassin Abdullah KADI, Osama BIN LADEN and the Shamal Islamic Bank".
*See response of Yassin Abdullah KADI to the questionnaire of the Deputy Attorney General of Switzerland Mr. Claude Nicati, questions 91ff, from 12/03/04*

The Foundation ran a large number of aid programmes in the Sudan in the areas of education, health, social welfare, agriculture, small industries and the provision of drinking water. Mr. BIN LADEN was also investing at this time in agriculture and other branches of industry. For example he set up the Damazine farm and other farms. These farms also served as training camps. Under the 1994 Al Raian project, Mr. Kadi had a total of 33 wells bored to the south of Tokar and Port Sudan, and in the areas around Assaloum and Dolabyay. Did the Muwafaq Foundation also have wells bored for the Al-Qaeda organisation? Mr. BIN LADEN definitely had the road built from Khartoum to Port Sudan.
*See YAK to OFAC, index to statement of Yassin Abdullah KADI, pages 21 - 28*

On 02/08/1996 the Board of Directors decided to close the Muwafaq Foundation in the Sudan as from the end of 1996. False statements on the Muwafaq Foundation were allegedly published in "Africa Confidential", according to which a former employee of the Muwafaq Foundation in Ethiopia had been involved in the attempted assassination of the Egyptian President, Hosni Mubarak. Allegedly it was the damage this statement did to the reputation of the Muwafaq Foundation that prompted the Board of Directors to close the Foundation.
*See YAK to OFAC, index to statement of Yassin Abdullah KADI, pages 24 - 25*
*See exhibit to the witness statement of Yassin Abdullah KADI, dated 19th December, 2002*
*See article in The Guardian, Muslim relief groups caught in crossfire*

After it was closed, all the Muwafaq's goods in the Sudan were divided amongst other relief organisations.
*See exhibit to the witness statement of Yassin Abdullah KADI, dated 19th December, 2002, pages 156 - 157*

KADI0010790

Page 48



For instance the "Cultural Centre" project in Equatoria State was bequeathed to the Al-Birr organisation. This was the forerunner of the Benevolence International Foundation (BIF) and was founded by Adel BATTERJEE. Mr. BATTERJEE is considered by experts to be a sponsor of Osama BIN LADEN and also features on the Golden Chain List (BIF/Al-Qaeda documentation).
*See Tareekhosama/41/ Tareekh Osama 108*

The Sub-Saharan International Development Organization (SIDO) took on 8 projects. It was around the same time that the Regional Director of the Muwafaq Foundation, Mr. Siraj EL DIN BARI, became General Manager of this organisation and therefore ensured the virtually seamless take-over of a large proportion of KADI's projects in the Sudan.
*See YAK to OFAC, index to statement of Yassin Abdullah KADI, pages 25 - 26*

The Dawa Organisation took on 6 projects. Unfortunately no details have been found on this charity. According to the testimony of a Sudanese national who works at the BKP (Swiss Federal Bureau of Investigation), this organisation is probably close to Hassan Al TURABI. Mr. TURABI of the National Islamic Front (NIF) had a major role to play in welcoming Osama Bin Laden to the Sudan.

## 5.1    The Muwafaq Foundation in Ethiopia

The Foundation was registered in April 1993 and its address was P.O.Box 50504, Addis Ababa. In theory it reported to the Muwafaq Foundation in Delaware/USA. The Regional Director was probably someone called Mr. Abdulmonim, tel. (work) 611747 and 189970.
*See exhibit to the witness statement of Yassin Abdullah KADI dated 19th December, 2002, page 197*

The Foundation focussed on school projects in the country. The branch was closed by the Government, along with other NGOs. The probable reason was the possible involvement in the assassination attempt on the Egyptian President, Hosni Mubarak.
*See YAK to OFAC, index to statement of Yassin Abdullah KADI, pages 59-60*

KADI0010791

Redacted

MUWAFAQ FOUNDATION 

*SIRAG EL DIN A.BARY*

*EXECUTIVE MANAGER*

TEL : 272370 - 272398
FAX : 271843

P.O. BOX: 83/EL BARAY
KHARTOUM - SUDAN
TLX : 22512 LMNT SD

KADI0107858



Company Number **50212**       Continuation to Form 9

Please do not write in this binding margin

# THE COMPANIES ACTS 1931 TO 1982

# Notice of change of directors or secretaries or in their particulars

Pursuant to Section 143 of the Companies Act 1931
as amended by Section 21 of the Companies Act 1982

To the Chief Registrar

Please complete legibly, preferably in black type, or bold block lettering

Name of Company

Loxumu                                            Limited

¹Delete if appropriate

hereby notifies you in accordance with Section 143 of the Companies Act 1931
as amended by Section 21 of the Companies Act 1982 that:

Specify change and date thereof and if this consists of the appointment of a new director or secretary fill in also the particulars below

Particulars of new director or secretary (see notes overleaf)

| Name | Vassin Quadi |
|---|---|
| Former name(s) (note 3) | |
| Address (note 4) | P. o. Box 3555, Jeddah (KSA) |

I hereby consent to act as (director) ~~(secretary)~~³ of the company named above

²Delete as appropriate

Signed                             Date **4 December 1990**

³This section applicable to directors only

| ⁴Other directorships (note 5) | Nationality (and Nationality of origin if other than present Nationality) |
|---|---|
| | Saudia Arabia |
| Business occupation | Investor |

number of continuation sheets attached (see note 1)

³Delete as appropriate

Signed _____ (Director) ~~(Secretary)~~³ Date **4 December 1990**

Presentor's name, address and reference (if any): J. L. ASSOCIATES LIMITED,
Perbayne House,
41, Circular Road,
Douglas,
Isle of Man.

Printed by Bridson & Horrox Limited, Print House, Market Street, Douglas, Isle of Man

KADI0110226

**List of Past and Present Members**

| Folio in Register Ledger | Name and Address | Number of Shares held by existing members at date of return | Account of Shares | | | | Remarks |
|---|---|---|---|---|---|---|---|
| | | | Particulars of Shares transferred since the date of the last return or in the case of the first return of the incorporation of the Company, by persons who are still members | | Particulars of Shares transferred since the date of last return or in the case of the first return of the incorporation of the Company, by persons who have ceased to be members | | |
| | | | Number | Date of Registration of Transfer | Number | Date of Registration of Transfer | |
| | Yassin Quadi | 1 | | | | | |
| | P.O. Box 214, Jeddah, Saudi Arabia | | | | | | |
| | | | | | | | |
| | Omar Saleh Saeed Al-Amoudi | 1 | | | | | |
| | P.O. Box 214, Jeddah, Saudi Arabia | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Signature . .    .    .    . . .    .    .    . .  . . . .  .  . . . . . .

. . . . . . . . . . .   . .  .   .  .         .     . .  . . . .

(State whether Director or Manager or Secretary)

KADI0110239

PREDUZEĆE K.A. STAN - SARAJEVO

ANALIZA

FINANSIJSKIH REZULTATA PO OBJEKTIMA ZA PERIOD OD 01.03.1996. G. DO 01.03.1998. G.

| RED | OBJEKAT | MATERIJAL | KOOPERANTI | RADNA SNAGA | TROŠKOVI | UKUPNO | UGOVORENO | RAZLIKA |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 7 | 7 |
| 1 | GOSP. SHAFIK AYADI STAM. OBJEKAT OSIJEK | 13,000.00 | | 12,500.00 | | 25,500.00 | (27,000.00) | (1,500.00) |
| 2 | MESUD BAŽDAR FASADA (TREBENJSKA) | 1,900.00 | 800.00 | 1,300.00 | | 4,000.00 | (5,500.00) | (1,500.00) |
| 3 | K.A. "PROFARM" - SARAJEVO, POSLOVNI PROSTO (SKEND.) | 1,300.00 | 150.00 | 1,150.00 | | 2,600.00 | (3,000.00) | (400.00) |
| 4 | K.A "STAN" - SARAJEVO, SKLADIŠTA LEPENIŽKA 31 | 39,455.00 | | 19,000.00 | | 58,455.00 | | |
| 5 | VISOKI SAUD. KOMITET ABDESTHANA LOKVE | 150.00 | 4,000.00 | | 200.00 | 4,350.00 | (5,000.00) | (650.00) |
| 6 | GOSP SHAFIK AYADI STAM. OBJEKAT DRINSKA | 14,632.00 | 8,891.00 | 34,477.00 | | 58,000.00 | (58,000.00) | - |
| 8 | KOORDENACIONE ODBOR NEUROPSIH. BOLNCA KOŠEVO | 1,100.00 | 3,000.00 | 2,100.00 | | 6,200.00 | (8,000.00) | (1,800.00) |
| 9 | VISOKI SAUD. KOMITET DŽAMIJA OLOVO | 140.00 | 50,000.00 | | 1,800.00 | 51,940.00 | (69,533.00) | (17,593.00) |
| 10 | MUFTIJSTVO - SARAJEVO UPRAVA | 2,800.00 | 4,000.00 | 3,200.00 | | 10,000.00 | (15,908.00) | (5,908.00) |
| 11 | HOROZOVIĆ (POMIT COMPUTERS) FASADA SKENDERIJA | 2,100.00 | 1,300.00 | 1,700.00 | | 5,100.00 | (5,500.00) | (400.00) |
| 12 | GOSP. SHAFIK AYADI STAM. OBJEKAT LEPENIČKA | 2,800.00 | 1,600.00 | 9,000.00 | | 13,400.00 | (15,000.00) | (1,600.00) |
| 13 | VISOKI SAUD. KOMITET ABDESTHANA OLOVO VER | | 1,600.00 | | | 1,600.00 | (2,500.00) | (900.00) |
| 14 | FASADA NEDARIĆ | | 700.00 | | | 700.00 | (1,000.00) | (300.00) |
| 15 | RIU HOUING NASELJE SOKOLJE | 70,000.00 | 80,500.00 | 29,000.00 | | 179,500.00 | (213,182.00) | (33,682.00) |
| 16 | NAHLA - SARAJEVO, UPRAVA U.G. NAHLA | 1,250.00 | 200.00 | 500.00 | | 1,950.00 | (2,400.00) | (450.00) |
| 17 | DEPOZITNA BANKA IZGRADNJE GARAŽA | 2,100.00 | 37,859.00 | 2,800.00 | | 42,759.00 | (53,000.00) | (10,241.00) |
| 18 | RESALA - SARAJEVO, MUZIČKA ŠKOLA (I FAZA) | 77,453.00 | 170,210.00 | 54,000.00 | | 301,663.00 | (650,000.00) | (348,337.00) |
| 19 | M. BABAJIĆ FASADA | 500.00 | 1,200.00 | 200.00 | | 1,900.00 | (2,000.00) | (100.00) |
| 20 | VISOKI SAUD. KOMITET NASELJE BRCKO (44 + 30) | | 775,204.00 | | 4,800.00 | 780,004.00 | (951,984.00) | (171,980.00) |
| 21 | VISOKI SAUD. KOMITET DŽAMIJA U ZENICE | 106,181.00 | 512,408.00 | 98,000.00 | 2,800.00 | 719,389.00 | (968,531.00) | (249,142.00) |
| 22 | GOS. ŠEFIK AYADI SKLADIŠTA RAKOVICA | | | | | | | |
| 23 | ISLAMSKA BANKA - DžEDDAH STUDENT. DOM .NEDŽARIĆ | 47,592.00 | 117,596.00 | 60,000.00 | | 225,188.00 | (1,350,000.00) | (1,124,812.00) |
| 24 | VISOKI SAUD. KOMITET SELJE BRČKO (46) NOVI | 1,245.00 | 197,500.00 | 1,100.00 | 2,000.00 | 201,845.00 | (660,000.00) | (448,155.00) |
| 25 | DžHOR SVJETSKA BANKA KUĆA U KONJIC | 52,026.00 | 18,250.00 | 18,500.00 | 1,200.00 | 89,976.00 | (149,200.00) | (59,224.00) |
| 26 | VISOKI SAUD. KOMITET ARAPSKI INSTITUT - MOSTAR | | 310,600.00 | 1,800.00 | 300.00 | 312,700.00 | (1,000,000.00) | (687,300.00) |
| 27 | AHATOVIĆ SALKO FASADA | 5,318.00 | | 1,700.00 | | 7,018.00 | (12,670.00) | (5,652.00) |
| 28 | ALMA, BESIMA, NABIL ,SAMIR B, RAZNI RADOVI | 800.00 | 200.00 | 150.00 | | 1,150.00 | (1,300.00) | (150.00) |
| 29 | ISLAMSKA BANKA ŠKOLA PODVELEŽJA - MOSTAR | | | | | | (958,233.00) | |
| 30 | NEDŽAD RAJKOVIĆ KUĆA NA GRBAVICA | 2,081.00 | | | | 2,081.00 | | |
| 31 | ŠEFIKOVA KUĆA KONJIC | 753.00 | | | 700.00 | 1,453.00 | | |
| 32 | K.A "STAN" UPRAVA | 7,180.00 | | | | 7,180.00 | | |
| 33 | VISOKI SAUDIJSKI KOMITET DŽAMIJA LOKVE | 14,260.00 | 34,198.00 | 15,675.00 | 4,400.00 | 68,533.00 | (80,000.00) | (11,467.00) |
| 34 | IGASA I APOTEKA UPRAVA IGASA | 10,302.00 | 40,800.00 | 13,059.00 | | 64,161.00 | (84,689.00) | (20,528.00) |
| 35 | DEPOZITNA BANKA. UPRAVA | 14,783.00 | 43,577.00 | 13,059.00 | | 71,399.00 | (102,124.00) | (30,725.00) |
| 36 | K.A "NEKRETNINA" KUCA NA PRNJAVORSKA" | 14,273.00 | 5,100.00 | 10,627.00 | | 30,000.00 | (30,000.00) | - |
| | UKUPNO | 507,454.00 | 2,421,443.00 | 404,597.00 | 18,200.00 | 3,351,694.00 | (7,475,254.00) | (3,234,496.00) |

COMPANY [Illegible] – SARAJEVO

## ANALYSIS
### OF FINANCIAL RESULTS PER FACILITY FOR THE PERIOD FROM MARCH 01, 1996 TO MARCH 01, 1998

| LINE | FACILITY | MATERIAL | SUBCONTRACTORS | LABOR | EXPENSES | TOTAL | CONTRACTED | DIFFERENCE | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 7 | 7 | |
| 1 | MR. SHAFIK AYADI RESIDENTIAL BUILDING OSIJEK | 13,000.00 | | 12,500.00 | | 25,500.00 | (27,000.00) | (1,500.00) | F |
| 2 | MESUD BAZDAR FAÇADE (TREBINJSKA) | 1,900.00 | 800.00 | 1,300.00 | | 4,000.00 | (5,500.00) | (1,500.00) | F |
| 3 | K.A. "PROFARM"- SARAJEVO, BUSINESS PREMISES (SKEND.) | 1,300.00 | 150.00 | 1,150.00 | | 2,600.00 | (3,000.00) | (400.00) | F |
| 4 | K.A. "STAN"- SARAJEVO, STORAGES LEPENIZKA 31 | 39,455.00 | | 19,000.00 | | 58,455.00 | | | N |
| 6 | SAUDI HIGH COMMISSION ABDESTHANA LOKVE | 150.00 | 4,000.00 | | 200.00 | 4,350.00 | (5,000.00) | (650.00) | F |
| 7 | MR. SHAFIK AYADI RESIDENTIAL BUILDING DRINSKA | 14,632.00 | 8,891.00 | 34,477.00 | | 58,000.00 | (58,000.00) | - | F |
| 8 | COORDINATION COMMITTEE OF NEUROPSYCHIATRY HOSPITAL KOSEVO | 1,100.00 | 3,000.00 | 2,100.00 | | 6,200.00 | (8,000.00) | (1,800.00) | F |
| 9 | SAUDI HIGH COMMISSION MOSQUE OLOVO | 140.00 | 50,000.00 | | 1,800.00 | 51,940.00 | (69,533.00) | (17,593.00) | F |
| 10 | MUFTISHIP – SARAJEVO ADMINISTRATION | 2,800.00 | 4,000.00 | 3,200.00 | | 10,000.00 | (15,908.00) | (5,908.00) | F |
| 11 | HOROZOVIC (POMIT COMPUTERS) FAÇADE SKENDERIJA | 2,100.00 | 1,300.00 | 1,700.00 | | 5,100.00 | (5,500.00) | (400.00) | F |
| 12 | MR. SHAFIK AYADI RESIDENTIAL BUILDING LEPENICKA | 2,800.00 | 1,600.00 | 9,000.00 | | 13,400.00 | (15,000.00) | (1,600.00) | F |
| 13 | SAUDI HIGH COMMISSION ABDESTHANA OLOVO | | 1,600.00 | | | 1,600.00 | (2,500.00) | (900.00) | F |
| 14 | [CUT-OFF] FAÇADE NEDARIC | | 700.00 | | | 700.00 | (1,000.00) | (300.00) | F |
| 15 | PROJECT IMPLEMENTATION UNIT (PIU) HOUING RESIDENTIAL HOUSING COMMUNITY SOKOLJE | 70,000.00 | 80,500.00 | 29,000.00 | | 179,500.00 | (213,182.00) | (33,682.00) | F |
| 16 | NAHLA – SARAJEVO, ADMINISTRATION OF U.G. NAHLA | 1,250.00 | 200.00 | 500.00 | | 1,950.00 | (2,400.00) | (450.00) | F |
| 17 | DEPOSIT BANK BUILDING OF A GARAGE | 2,100.00 | 37,859.00 | 2,800.00 | | 42,759.00 | (53,000.00) | (10,241.00) | F |
| 18 | RESALA – SARAJEVO, SCHOOL OF MUSIC (PHASE I) | 77,453.00 | 170,210.00 | [circled] 54,000.00 | | 301,663.00 | (650,000.00) | (348,337.00) | N |
| 19 | M. BABAJIC FAÇADE | 500.00 | 1,200.00 | 200.00 | | 1,900.00 | (2,000.00) | (100.00) | F |
| 20 | SAUDI HIGH COMMISSION RESIDENTIAL COMMUNITY BRCKO (44 + 30) | | 775,204.00 | | 4,800.00 | 780,004.00 | (951,984.00) | (171,980.00) | F |
| 21 | SAUDI HIGH COMMISSION MOSQUE IN ZENICA | 106,181.00 | 512,408.00 | 98,000.00 | 2,800.00 | 719,389.00 | (968,531.00) | (249,142.00) | N |
| 22 | MR. SHEFIK AYADI STORAGE RAKOVICA | | | | | | | | |
| 23 | ISLAMIC BANK – DZEDDAH STUDENT DORMITORY, NEDZARIC | 47,592.00 | 117,596.00 | 60,000.00 | | 225,188.00 | (1,350.000.00) | (1,124,812.00) | N |
| 24 | SAUDI HIGH COMMISSION RESIDENTIAL COMMUNITY BRCKO (46) NEW | 1,245.00 | 197,500.00 | 1,100.00 | 2,000.00 | 201,845.00 | (650,000.00) | (448,155.00) | F |
| 25 | UNHCR WORLD BANK HOUSE IN KONJIC | 52,026.00 | 18,250.00 | 18,500.00 | 1,200.00 | 89,976.00 | (149,200.00) | (59,224.00) | F |
| 26 | SAUDI HIGH COMMISSION ARABIC INSTITUTE – MOSTAR | | 310,600.00 | 1,800.00 | 300.00 | 312,700.00 | (1,000,000.00) | (687,300.00) | N |
| 27 | SALKO AHATOVIC FAÇADE | 5,318.00 | | 1,700.00 | | 7,018.00 | (12,670.00) | (5,652.00) | N |
| 28 | ALMA, BESIMA, NABIL, SAMIR B VARIOUS WORKS | 800.00 | 200.00 | 150.00 | | 1,150.00 | (1,300.00) | (150.00) | F |
| 29 | ISLAMIC BANK PODVELEZJE SCHOOL – MOSTAR | | | | | | (958,233.00) | | N |
| 30 | NEDZAD RAJKOVIC HOUSE IN GRBAVICA | 2,081.00 | | | | 2,081.00 | | | N |
| 31 | SHEFIK'S HOUSE KONJIC | 753.00 | | 700.00 | | 1,453.00 | | | F |
| 32 | K.A. "STAN" ADMINISTRATION | 7,180.00 | | | | 7,180.00 | | | |
| 33 | SAUDI HIGH COMMISSION MOSQUE LOKVE | 14,260.00 | 34,198.00 | 15,675.00 | 4,400.00 | 68,533.00 | (80,000.00) | (11,467.00) | F |
| 34 | IGASA I PHARMACY ADMINISTRATION IGASA | 10,302.00 | 40,800.00 | 13,059.00 | | 64,161.00 | (84,689.00) | (20,528.00) | F |
| 35 | DEPOSIT BANK | 14,763.00 | 43,577.00 | 13,059.00 | | 71,399.00 | (102,124.00) | (30,725.00) | F |

**P. 6**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ADMINISTRATION | | | | | | | | |
| 36 | K A "NEKRETNINA" HOUSE IN PRNJAVORSKA | 14,273.00 | 5,100.00 | 10,627.00 | | 30,000.00 | (30,000.00) | - | F |
| | TOTAL | 507,454.00 | 2,421,443.00 | 404,597.00 | 18,200.00 | 3,351,694.00 | (7,475,254.00) | (3,234,496.00) | |

[Illegible handwritten text]

KAD|0122337

**P. 7**



**K.A. STAN d.o.o. - Sarajevo**

PREDUZEĆE ZA KONSALTING, PROJEKTOVANJE, INŽENJERING, PROIZVODNJU, IZGRADNJU,
SANACIJU I OPREMANJE OBJEKATA, UNUTRAŠNJU I VANJSKU TRGOVINU I POSLOVANJE NEKRATNINAMA
Adresa: Sarajevo, ul. Lepenička br. 31.
Telefoni: Direktor ++387 71 455 047; Centrala ++387 71 455 187 Fax: ++387 71 626 642
Dinarski račun 10180-601-40482; Devizni račun 10180-601-2040482 kod Z.P.P. Sarajevo

عـدطراسـربحــ : بـه أسـتـز،سـع ٥٥

**VISOKI SAUDIJSKI KOMITET
ZA POMOĆ BIH – SARAJEVO**                   Sarajevo, 16.02.1998.
Ul. Vrazova  br.9

III-Privremena_situacija

Za izvršene radove na objektu "Institut za učenje arapskog jezika" u
Mostaru, sa 16.02.1998.godine.

Ugovoreni iznos za sve radove iznosi .......1.000.000.- DM.
Iznos avansa.......................................... 250.000.- DM.

1.Ukupno izvršeni radovi ......................................... 247.436,22  DM.
2.Do sada fakturisano ................................,...139.000,00  DM.
3.Razlika  (1-2)  ...........................................................108.436,22  DM.
4.Umanjuje se za avans( 25% ).....................................27.109,06  DM.
=========================================================
**Ostaje za naplatu: ...................................... 81.327,16  DM.**

Sarajevo, 16.02.1998  godine.                      Sastavio:

                                                   / Mirsad  Bapkić  grad.ing./

Da su radovi po ovoj III-ćoj privremenoj situaciji stvarno izvršeni te da
kvalitet odgovara uslovima ugovora,. tvrdi i ovjerava:

Investitor                 Nadzorni organ                    Izvodač radova

Arabic language center
d   24.2.98.

**P.1**

KAD10125792

[Page 6]

| [Logo: KA STAN] | **K.A. STAN d.o.o. – Sarajevo** |
|---|---|
| | COMPANY FOR CONSULTING, DESIGN, ENGINEERING, MANUFACTURING, CONSTRUCTION, RECOVERY, AND FURNISHING OF FACILITIES, DOMESTIC AND FOREIGN TRADE AND REAL ESTATE SALE |
| | Address: Sarajevo, ul. Lepenicka No. 31 |
| | Telephones: Director ++387 71 455 047, Switchboard ++387 71 455 187 Fax: ++387 71 626 642 |
| | Dinar currency account 10180-601-40482; Foreign currency account 10180-601-2040482 at Z.P.P. Sarajevo |

[Illegible handwritten Arabic text]

**SAUDI HIGH COMMISSION**
**RELIEF FOR BOSNIA & HERZEGOVINA – SARAJEVO**          Sarajevo, February 16, 1998
Ul. Vrazova No. 9

III – Interim status

For completed work on the facility "The Institute for the Study of the Arabic Language" in Mostar, as of February 16, 1998.

The agreed upon amount for all the work is ………….    1,000,000 DM
Advance amount ……………….……………………    250,000 DM

1.  Total completed work …………………………………    247,436.22 DM
2.  Invoiced to date …………………………….…………    139,000.00 DM
3.  Difference (1-2) …………………………………………    108,436.22 DM
4.  Minus advance amount (25%) ………………….[circled]    25,109.06 DM

---

**Payment remaining:** ……………………………………… **81,327.16 DM**

[Illegible handwritten text]
Sarajevo, February 16, 1998                     Created by:
                                                [Illegible signature]
                                                (Mirsad Rapkic, BS in Civil Eng.)

It is asserted and certified that the work in this fourth interim period is actually completed and that the quality corresponds to the terms of the agreement:

[Illegible signature]            [Illegible signature]            [Illegible signature]
Investor                    Supervising engineer          Contractor
                [Stamp: Projektni biro d.o.o. Stari Grad, Mostar]

[Stamp: "K.A. Stan" d.o.o. Sarajevo COMPANY FOR CONSULTING, DESIGN, ENGINEERING, MANUFACTURING, CONSTRUCTION, RECOVERY, AND FURNISHING OF FACILITIES, DOMESTIC AND FOREIGN TRADE AND REAL ESTATE SALE]
[handwritten: Arabic Language Center
[illegible] February 24, 1998]

KAD|0125792

**P. 2**



**BH BANKA**
DD SARAJEVO

K.A.STAN SARAJEVO

FAX 626-642

Sarajevo, 20.02.98

Predmet: Obavjest o prilivu

Obavještavamo Vas da smo u Vašu korist primili devizni priliv u iznosu DEM 21.978.06
sa valutom 20.02.98

po nalogu VISOKI SAUDIJSKI KOMITET

preko BH BANKA DD SARAJEVO

po osnovu DEVETA RATA IZG.DZAM.U BABINOJ RIJECI ZENICA

naš broj 20133898 .

Molimo Vas da u zakonskom roku (48 sati) dostavite nalog za raspored deviznog priliva
na Sektor deviznih poslova (telefon 470 014, fax 442 677).

Obavještavamo Vas da je naknada po prilivima iz inostranstva
za BH Banku DD 0,25% KM  54,95 .
Molimo da navedeni iznos uplatite na dinarski žiro-račun BH BANKE DD  10100-620-133.
Napominjemo da ste po važećim zakonskim propisima, ukoliko se radi o redovnom deviznom
prilivu, obavezni dostaviti Obrazac 745 (5 primjeraka -svaki ovjeren i popunjen) za raspored priliva i
jedan  ovjeren primjerak Obrasca 743.
Ukoliko se radi o prilivu po nekoj drugoj osnovi, molimo Vas da dostavite odgovarajuću
dokumentaciju koja će potvrditi karakter sredstava.

S poštovanjem,

SEKTOR  DEVIZNIH  POSLOVA
KOLASOVIC B.



**P. 3**

KAD10726079

[Page 7]

[Logo]
**BH BANK**
**DD SARAJEVO**

---

K.A. STAN SARAJEVO
FAX 626-642

Sarajevo, February 20, 1998

Subject: Notification of received payment

We are informing you that we have received on your behalf the amount of DEM 21,978.06 under the exchange rate as of February 20, 1998

at the order of the SAUDI HIGH COMMISSION

via BH BANK DD SARAJEVO

for the purpose of the NINTH INSTALLMENT FOR THE BUILDING OF THE MOSQUE IN BABINA RIJEKA IN ZENICA

our number 20133898.

Please submit an order to schedule receipt of the foreign currency payment within the legal time frame (48 hours) to the Department of Foreign Currency Transactions (telephone 470 014, fax 442 677).

We are informing you that the fee for payments from abroad for the BH Bank DD is 0.25% KM 54.95. Please pay the above amount to the dinar currency bank account of the BH BANK DD 10100-620-133. Please note that in accordance with applicable law, if this is a regular foreign currency receipt of payment, you are obliged to submit Form 745 (5 copies – each notarized and completed) for the schedule of received payment and one notarized copy of Form 743.
If this is a payment received for another purpose, please submit the appropriate documentation which will confirm the nature of the funds.

Sincerely,

> DEPARTMENT OF FOREIGN CURRENCY TRANSACTIONS
> KOLASOVIC, B.
> [Illegible signature]
> [Stamp: (Illegible)]

KAD|0126079

**P. 4**

OBRAZAC 1450

# NALOG ZA IZVRŠENJE DOZNAKE U INOZEMSTVU

| | NALOGODAVAC | | | NAZIV BANKE | | 70. |
|---|---|---|---|---|---|---|
| 1 | Jamil Rifat Sarajevo | 0200000 | 2 | Depozitna banka dd arajevo | 3 | |
| | Telefon          Referent | | | | | 1509657 |

NALOG broj

| 4 | Doznačite poštom - brzojavno u valuti | | DEM=62.500,00 |
|---|---|---|---|
| 5 | U korist  Chafik Ayadi | | |
| 6 | Kod Al Baraka Turk Ozel Kurumu A.S. Istambul acc. 143-404 | | 288 |
| 7 | Po osnovi  Nalog za prenos | | 280 |
| | NADLEŽNA BANKA  UB BIM | | Registarski broj prijave | | doz.regist. |
| 9 | Zemlja iz koje se roba - usluga uvozi  Turska | 280 | 10 Ukupni br. nalmn. |

| 11 | Naziv i šifra po carinskoj nomenklaturi | | HOK UVOZA | BROJ KREDITNE PRIJAVE | OD | V.K. | OUR |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 12 | Red. br. nalmn. | KORISNIK ROBE - USLUGE | Matični broj | REŽIM | Izvor sredst. | IZNOS U VALUTI |
|---|---|---|---|---|---|---|
| | | Chafik Ayadi | | | | DEM=62.500,00 |
| | | | | | | |

| 13 | PRIMJEDBA | | 14 | |
|---|---|---|---|---|
| | Sarajevo,20.03.98. | Pečat i potpis nalogodavca | DEPOZITNA BANKA, D.D. SARAJEVO | Pečat i potpis banke |
| | Nalog za knjiženje i broj | | | |

| 16 | Šifra valute 280 Oznaka valute DEM | Iznos u valuti 62.500,00 | S VALUTOM 20.03.98. |
|---|---|---|---|
| 17 | Na teret Jamil Rifat  Sarajevo | 62.500,00 | 1 50722500-00028 |
| | U korist Depozitna banka dd Sarajevo | 62.500,00 | 2 20432500- |
| 18 | Na teret | | |
| | U korist | | |
| 19 | | UPLAĆENO DINARA | |
| 20 | BANKA IZ ČLANA 108. ZOP | | |
| 21 | Sarajevo,20.03.98. Mjesto i datum | DEPOZITNA BANKA, D.D. SARAJEVO | Pek i potpis |

OBRAZAC: NB IH

KAD 00445110

*Za Saudu 2x1*

OBRAZAC 1450

## NALOG ZA IZVRŠENJE DOZNAKE U INOZEMSTVU

| 1 | NALOGODAVAC | 2 | NAZIV BANKE | 3 |
|---|---|---|---|---|
| | HUSSAIN O.H.JIFFRY | | DEPOZITNA BANKA | |
| | Telefon Vrazova Sarajevo 11 | | DD SARAJEVO | |

NALOG broj

| 4 | Doznačite poštom - brzojavno u valuti | | DEM 50.000 |
|---|---|---|---|
| 5 | U korist | CHAFIK AYADI | 280 |
| 6 | Kod | ALBARAKA TURK-Ozel Finans Kurumu A.S Istanbul rač.143 404 | |
| 8 | | Prenos sredstava po osnovu naloga za prenos | 280 |
| | NADLEŽNA BANKA | DB Sarajevo    Registarski broj prijave    God.registr. | |
| | Zemlja iz koje se roba - usluga uvozi | Turska | |
| 11 | Naziv i šifra po carinskoj nomenklaturi | ROK UVOZA | BROJ KREDITNE PRIJAVE | OD | V.K. | OUR |
| 12 | Red. br. naimen. | KORISNIK ROBE - USLUGE | Matični broj | REŽIM | Izvor sredst. | IZNOS U VALUTI |
| | | CHAFIK AYADI | | | | DEM 50.000,00 |

| 13 | PRIMJEDBA | | 14 | DEPOZITNA BANKA J.D. |
|---|---|---|---|---|
| | Sarajevo,24.02.98. | | | |
| | Mjesto i datum   Pečat i potpis nalogodavca | | | |
| 15 | Nalog za knjiženje i broj | | | |

| 16 | Šifra valute | 280 | Oznaka valute | DEM | Iznos u valuti | U valutom | 24.02.98 |
|---|---|---|---|---|---|---|---|
| 17 | Na teret | Hussain O.H. Jiffry | | | 1 | |
| | U korist | Depozitna banka dd Sarajevo | | | 2 | |
| 18 | Na teret | | | | 1 | |
| | U korist | | | | 2 | |
| 19 | | | UPLAĆENO DINARA | | | |
| 20 | BANKA IZ ČLANA 108. ZDP | | | | | |
| 21 | | Sarajevo, 24.02.98.   Mjesto i datum | | DEPOZITNA BANKA, D.D. SARAJEVO | |

OBRAZAC: NB BiH

0387 033 664 581

KADI0145111