# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br><br> ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978 (GBD) (SN)

*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849 (GBD) (SN)

*Kathleen Ashton, et al v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977 (GBD) (SN)

*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923 (GBD) (SN)

*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970 (GBD) (SN)

*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065 (GBD) (SN)

*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279 (GBD) (SN)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF ORGANIZATION

Jerry S. Goldman, Esq.
Kanishka Agarwala, Esq.
Bruce Strong, Esq.
Nicholas Maxwell, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel: (212) 687-8181

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel: (843) 216-9000

*Attorneys for Plaintiffs*

Dated: December 1, 2017

**TABLE OF CONTENTS**

Page

I.   PROCEDURAL HISTORY/FACTUAL BACKGROUND............................................. 2

II.  ARGUMENT........................................................................................................ 5

    A.   Legal Standard ......................................................................................... 6

    B.   MWL-IIRO Have Repeatedly Made Material Misrepresentations
        and Have Otherwise Engaged in Discovery Misconduct from
        2005-2011. ................................................................................................ 7

        1.   MWL-IIRO's Failure to Comply with this Court's Orders
            and MWL-IIRO's Discovery Obligations under the Federal
            Rules of Civil Procedure............................................................. 8

            (a)   Misrepresentations Pertaining to MWL-IIRO's
                    Recordkeeping Systems.................................................. 8

            (b)   Recycled Documents ...................................................... 9

            (c)   Purported Lack of Familiarity with the American
                    Judicial System. ........................................................... 10

        2.   MWL-IIRO's Failure to Comply with its Obligations to
            Produce Financial Records and Funding Sources..................... 10

        3.   MWL-IIRO's Improper Attempts to Conceal Their
            Relationships with Bin Laden, His Family, al Qaeda and
            the Taliban ............................................................................... 11

        4.   MWL-IIRO's Attempts to Mislead the Court and the
            Plaintiffs as to its Relationship to the Kingdom of Saudi
            Arabia in the Course of Document Production.......................... 12

        5.   MWL-IIRO's Disregard of its Discovery Obligations as to
            Other Individuals Associated with Terrorism............................ 12

        6.   The MWL-IIRO Sought to Conceal the Existence of Their
            Branch Offices and Records Relating Thereto ......................... 13

        7.   MWL-IIRO's Responses to "Investigations and Raids"
            Were False ............................................................................... 14

**TABLE OF CONTENTS**
*(continued)*

Page

C.    Defendants' Representations Regarding the Non-Existence of
      Documents Later Determined to Exist Warrant Sanctions Against
      MWL-IIRO for Failure to Obey Discovery Orders. .............................. 14

D.    The Appropriate Sanction Is Cost-Shifting Under Subsection
      (b)(2)(C) of Rule 37 and a Monetary Sanction. ..................................... 16

      1.    Based on MWL-IIRO's Willful Conduct, the Court Should
            Shift Plaintiffs' Costs to MWL-IIRO. ....................................... 16

            (a)    There Is No Substantial Justification for MWL-
                   IIRO's Conduct or Other Circumstance Rendering
                   Cost-Shifting Unjust. .................................................... 17

      2.    The Court Should Impose a Monetary Sanction on MWL-
            IIRO. ............................................................................................ 20

III.    CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blauinsel Stiftung v. Sumitomo Corp.*,
    2001 U.S. Dist. LEXIS 20746 (S.D.N.Y. Dec. 12, 2001) .......................................................20

*Crawford v. Franklin Credit Mgmt. Corp.*,
    261 F.R.D. 34 (S.D.N.Y. 2009) (Maas, J.) ...........................................................6, 12, 13, 17

*Creative Res. Group of N.J., Inc. v. Creative Res. Group, Inc.*,
    212 F.R.D. 94 (E.D.N.Y. 2002) ...................................................................................15, 16

*Doe v. Delta Airlines, Inc.*,
    2015 U.S. Dist. LEXIS 22739 (S.D.N.Y. Feb. 25, 2015).................................................15, 16

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017)........................................................................................................5, 4

*Grenion v. Farmers Ins. Exch.*,
    2014 U.S. Dist. LEXIS 35549 (E.D.N.Y. Mar. 14, 2014) ......................................................20

*Lan v. Time Warner, Inc.*,
    2015 U.S. Dist. LEXIS 13957 (S.D.N.Y. Feb. 5, 2015)...................................................17, 18

*Nieves v. City of N.Y.*,
    208 F.R.D. 531 (S.D.N.Y. 2002) ....................................................................................*passim*

*Novak v. Wolpoff & Abramson LLP*,
    536 F.3d 175 (2d Cir. 2008)...............................................................................................6, 12

*Nycomed US Inc. v. Glenmark Generics Ltd.*,
    No. 08-CV-5023, 2010 U.S. Dist. LEXIS 82014 (E.D.N.Y. Aug. 11, 2010)..............15, 16, 20

*In re September 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) ...................................................................................19, 20

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)...........................................................................................................3

Fed. R. Civ. P. 37 ...........................................................................................................*passim*

The Plaintiffs' Executive Committees ("PEC") submit this Memorandum of Law, and the Declaration of Jerry S. Goldman, Esq. together with accompanying exhibits[1] in support of their request that the Court sanction defendants Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO") (collectively, "MWL-IIRO") for discovery misconduct, pursuant to Federal Rule of Civil Procedure 37(b)(2).  As demonstrated below, Judge Maas concluded that MWL-IIRO engaged in sanctionable conduct based upon their pattern of blatant and material misrepresentations to plaintiffs and the Court, and their consistent disregard for multiple Court orders.  While this motion could rely on the existing record to obtain such sanctions, the record now is far stronger than the record was before Judge Maas because later MWL-IIRO productions further demonstrate these defendants' misrepresentations.[2]

As sanctions for this continuing misconduct, plaintiffs request that MWL-IIRO: (i) pay plaintiffs' reasonable attorneys' fees, costs and expenses (including the fees, costs and expenses related to this motion) incurred as a result of defendants' malfeasance and misconduct; (ii) remit to the Court a financial penalty for the judicial resources unnecessarily expended due to their misbehavior and to deter future actions in an amount determined by this Court; and (iii) receive such other and further sanctions that this Court deems just and proper.[3]

---

[1] References to exhibits tendered with the Declaration of Jerry S. Goldman, Esq. are referred to herein as "JSG Ex. __." References to exhibits that were a part of J. Scott Tarbutton's Affirmation, dated August 26, 2011, which is attached in its entirety as JSG Ex. 1, is referred to herein as "ST Ex. __."

[2] For purposes of brevity, the PECs are not recounting, ad nauseum, the extensive motion practice as to these particular defendants, which included numerous motions to compel and a motion for sanctions between 2005 through 2011. That history, and the defendants' repeated misrepresentations to the PEC and this Court in the context of discovery and their steadfast refusal to comply with their obligations is well-documented in the prior motions to compel and sanctions. ST Exs. 1, 2, 5, 6; JSG Exs. 2, 3, 4.

[3] Contemporaneously with the submission of this application, plaintiffs are filing yet another motion to compel. As of this late date, MWL-IIRO still has not provided the documents which were requested and to which plaintiffs are entitled to under the Federal Rules of Civil Procedure.

## I.   PROCEDURAL HISTORY/FACTUAL BACKGROUND

Plaintiffs served initial document requests on MWL on October 28, 2005, and on IIRO on December 13, 2005, including supplemental document requests to each defendant thereafter. *See* Status Report, ECF No. 3516, at pp. 2-4, JSG Ex. 5.[4] After MWL-IIRO failed to meaningfully comply with plaintiffs' discovery requests, in October 2007, plaintiffs requested that the MWL-IIRO begin to prioritize gathering and producing eight (8) categories of documents, and for IIRO to also prioritize the collection and production of several additional categories of documents. *See* Motions to Compel, ST Exs. 1, 2, 5, 6. In doing so, plaintiffs made explicit that MWL-IIRO were obligated to produce documents responsive to all of plaintiffs' requests, but given the history of noncompliance to that point, plaintiffs thought it necessary to have MWL-IIRO focus first on producing documents in those categories. *Id.* The Court approved this process. *See* April 12, 2011 Transcript ("Tr.), at pp. 24-28, 39, 41-42, JSG Ex. 7. But MWL-IIRO still failed to produce the requested documents or the documents requested in plaintiffs' discovery requests. *See* ST Exs. 1, 2, 5, 6. During the first half of 2011, plaintiffs filed two (2) motions to compel seeking the production of these eight (8) specific categories of documents from both MWL and IIRO and seven (7) specific categories of documents from IIRO only. *See id.*

Following extensive briefing and argument, Magistrate Judge Maas issued a number of orders directing MWL-IIRO to immediately produce all documents falling within the specified categories. *See* April 12, 2011 Tr., JSG Ex. 7; Order dated April 26, 2011, ECF No. 2424, ST Ex. 6 (IIRO "shall produce all documents discussed in plaintiffs' letter to the Court dated March 24, 2011" with two exceptions); April 26, 2011 Discovery Hearing Tr., JSG Ex. 8; Order dated

---

[4] A timeline summarizing the dates of MWL-IIRO's productions are attached as JSG Ex. 6.

June 23, 2011, ECF No. 2442, ST Ex. 7 (IIRO and MWL "shall produce any additional documents required by this Court's orders dated April 12 and April 26, 2011").  During a June 23, 2011 discovery conference, Judge Maas expressly and repeatedly stated that "the 8 categories of documents were to be produced" and further chastised IIRO for failing to comply with his April 26, 2011 Order requiring the production of the additional categories of documents.  June 23, 2011 Tr., at pp. 4-5, 9-10, 17-18, JSG Ex. 9.  Judge Maas warned MWL-IIRO that failure to comply with the Court's Orders could lead to sanctions.  *See id.* at pp. 9-10, 17-18.  After MWL-IIRO failed wholesale to comply with the Court's directives yet again, *see* July 13, 2011 Discovery Conference Tr. at pp. 19-30, JSG Ex. 10, Judge Maas found it "appropriate" for plaintiffs to seek sanctions.  *See id.* at pp. 31; July 26, 2011 Order (ECF No. 2450), ST Ex. 9.

Throughout the course of these proceedings, counsel for the MWL-IIRO repeatedly represented to the Court that his clients had produced all responsive documents subject to the Court's orders.  *See* June 23 Discovery Hearing Tr., JSG Ex. 9, at p. 10 ("What my point is that we have produced everything that was called for in terms of the 8 categories for both MWL and IIRO-SA … that is our position that we have complied."); p. 11 ("It's our position that we produced everything now, albeit late."); p. 13 ("Yes, Your Honor.  To reiterate, we believe we have produced everything.").  Those representations were patently false.  In the weeks following those statements, immediately before plaintiffs' motion for sanctions was due, MWL-IIRO told plaintiffs that over 13,000 pages of new documents were going to be produced, making clear that no meaningful effort had previously been invested in searching for records until the Court threatened them with case-dispositive sanctions.  *See* JSG Ex. 6.

Accordingly, plaintiffs on August 26, 2011 filed a motion for case-dispositive sanctions ("2011 Sanctions Motion"), JSG Exs. 1-4, and oral argument was held on November 16, 2011.

JSG Ex. 11.  The motion provided detailed proof that MWL-IIRO had made numerous

misrepresentations to the Court, and remained in defiance of the Court's unambiguous discovery

orders, as briefly summarized in Section II.B., below.

During the hearing on the 2011 Sanctions Motion, Judge Maas acknowledged that

plaintiffs' allegations supporting the imposition of sanctions "seem[] to be correct in terms of

what was and wasn't done" but explained that while non-dispositive sanctions may be warranted

on the record, he was reluctant to impose case-dispositive sanctions in a case of this magnitude,

suggesting that if the plaintiffs wanted the Court to consider case dispositive sanctions, he would

prefer the record to be crystalized as to the defendants' discovery failures.  November 16, 2011

Tr., JSG Ex. 11, at pp. 16, 25.  Accordingly, Judge Maas denied without prejudice plaintiffs'

motion for entry of defaults and admonished the defendants to undertake greater efforts to search

for and produce responsive documents.  Failure to do so, the Court warned, "may lead to

dispositive sanctions."  *See id.* at pp. 15-16, 25-26.  While Judge Maas declined to enter default

judgments at that time, he expressly permitted plaintiffs to file a sanctions motion to recover the

costs and expenses incurred as a result of the defendants' history of noncompliance, including

efforts expended to disprove the defendants' contentions that several categories of documents

requested by the plaintiffs did not exist.  *See id.* at pp. 25-26.

Not long after the hearing on November 16, 2011, Mr. McMahon wrote to the Court on

April 11, 2012 to advise that MWL-IIRO intended to engage new counsel.  Letter from Martin

McMahon to Court, JSG Ex. 12.  In correspondence to plaintiffs' counsel at that time, Mr.

McMahon identified Lewis Baach as replacement counsel.  *Id.*  However, Lewis Baach did not

appear until January 2013.  Notice of Appearance, ECF No. 2650, JSG Ex. 13.  Thereafter,

Lewis Baach sought to confer with plaintiffs.  On or about May 1, 2013, Lewis Baach sought six

4

(6) months to cure defects in the MWL-IIRO productions. Email from Eric Lewis to Sean Carter, JSG Ex. 14. Plaintiffs consented without prejudice to their rights to seek monetary sanctions for the violations that had occurred to date. June 28, 2013 Hearing Tr., at p. 5, JSG Ex. 15.

MWL-IIRO re-commenced document productions in September 2013 and has continued to produce documents, from time to time, through August 2017. Timeline, JSG Ex. 6. Contrary to their prior representations to the Court, they did in fact have responsive documents, producing a total of 563,655 additional pages (337,142 pages for IIRO, 112,258 for the MWL, and 114,255 that received joint MWL-IIRO Bates numbers) of documents since the filing of the 2011 Sanctions Motion. Indeed, from the inception of this litigation until January 2013, MWL-IIRO produced approximately 155,000 pages, at least 132,000 pages of which were produced after the 2011 motion for sanctions. Since January 2013, MWL-IIRO produced an additional 420,000 pages of documents. These subsequent productions belie the MWL-IIRO repeated representations to both the Court and the PEC, and further corroborates each point plaintiffs made in the 2011 Sanctions Motion.[5]

## II.    ARGUMENT

For the reasons set forth herein, this Court should impose sanctions on MWL-IIRO. Subsection (A) below sets forth the relevant standards for imposing sanctions under Fed. R. Civ.

---

[5] Plaintiffs bring this motion now, for three key reasons. First, as plaintiffs received more documents from MWL-IIRO the scope of their prior misconduct and misrepresentations became even clearer. Second, plaintiffs did not want to take any action that would chill the production of additional documents. Third, plaintiffs believed they had a claim that the amount of the sanctions was to be based upon how grievous the error, including how long MWL-IIRO took to correct the error. Plaintiffs note that the Supreme Court in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1189 (2017), recently clarified this rule, explaining that a court should look for a causal link between a parties' sanctionable conduct, not just a temporal link. Fourth, MWL-IIRO can point to no prejudice they suffered.

P. 37.  Subsection (B) briefly summarizes the history of misrepresentations and discovery abuses

by the MWL-IIRO from 2005 through 2011.  Subsection (C) explains why MWL-IIRO's

conduct warrants imposition of Rule 37 sanctions.  Subsection (D) explains the most appropriate

sanctions based on the nature of MWL-IIRO's conduct during the applicable period of time.

### A.    Legal Standard

The Federal Rules of Civil Procedure provide that where "a party … fails to obey an

order to provide or permit discovery," the court "may issue further just orders."  Fed. R. Civ.

P. 37(b).  As a court in this district has previously explained, "[c]ivil discovery depends upon the

good faith of the parties."  *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43

(S.D.N.Y. 2009) (Maas, J.).  "It is well settled that district courts enjoy wide discretion in

sanctioning litigants appearing before them."  *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175,

177 (2d Cir. 2008).  In addition to any sanctions ordered under subsection (b)(2)(A) pursuant to

the Court's inherent discretion, "the court must order the disobedient party, the attorney advising

that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure

[to comply with discovery obligations], unless the failure was substantially justified or other

circumstances make an award of expenses unjust."  *Id.* at 37(b)(2)(C) (emphasis added).

Sanctions are designed to serve three purposes:  "(1) obtain[] compliance with discovery

orders; (2) ensur[e] the disobedient party does not benefit from non-compliance; and

(3) provid[e] a general deterrent in the particular case and litigation in general."  *Nieves v. City of

N.Y.*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing *NHL v. Metro. Hockey Club*, 427 U.S. 639,

643 (1976)).  This dispute implicates all three of the purposes sanctions are intended to serve.

First, with respect to obtaining compliance with discovery orders, MWL-IIRO have failed to

comply with their discovery obligations, for the multitude of reasons discussed herein.  Second,

with respect to ensuring the offending party does not benefit from its intransigence, MWL-IIRO have withheld from plaintiffs documents vital for plaintiffs to prove their claims, and in doing so, compelled plaintiffs and the Court to waste immense time and resources.  Third, with respect to deterrence against non-compliance, discovery remains ongoing and there are numerous other defendants also guilty of discovery abuses, meaning sanctions could materially improve and expedite the discovery process overall in this case.

### B.   MWL-IIRO Have Repeatedly Made Material Misrepresentations and Have Otherwise Engaged in Discovery Misconduct from 2005-2011.

From the onset of discovery in this multi-year litigation, MWL-IIRO has delayed the discovery process and made numerous misrepresentations as to the range of documents and information in MWL-IIRO's possession, custody or control.  In the process, MWL-IIRO violated multiple orders that were intended to rectify MWL-IIRO's discovery misconduct.  MWL-IIRO's misrepresentations were made repeatedly and relate to facts and documents at the very heart of the 9/11 plaintiffs' claims.  MWL-IIRO's actions were specifically directed to obscuring the existence of documents and information that would support plaintiffs' claims.  This misleading conduct required plaintiffs to expend significant resources, hire independent investigators, and engage in costly motion practice to retrieve documents that they were entitled to by right under this Court's discovery rules and orders.

While plaintiffs' 2011 Sanctions Motion details numerous instances of MWL-IIRO's discovery misconduct, *see* JSG Exs. 1-4, plaintiffs highlight and summarize the following particularly egregious categories of discovery misconduct and misrepresentation: (1) MWL-IIRO's Failure to Comply with this Court's Orders and MWL-IIRO's Discovery Obligations; (2) MWL-IIRO's Financial Records and Funding Sources; (3) MWL-IIRO's Relationship with Bin Laden, His Family, al Qaeda and the Taliban; (4) MWL-IIRO's Relation to the Kingdom of

Saudi Arabia; (5) MWL-IIRO's Relation to Individuals Associated with Terrorism; (6) MWL-IIRO's Branch Offices; and (7) MWL-IIRO's Responses to Investigations and Raids.

**1.**   ***MWL-IIRO's Failure to Comply with this Court's Orders and MWL-IIRO's Discovery Obligations under the Federal Rules of Civil Procedure***

Among other violations of prior Court orders, MWL-IIRO have:  (a) misstated the manner in which records are kept in their branch offices, in an attempt to make complying with the Court's orders appear unduly burdensome; (b) misleadingly produced the same documents multiple times; and (c) blamed their discovery malfeasance on fabricated language barriers and a purported lack of familiarity with the American judicial system.

**(a)**   **Misrepresentations Pertaining to MWL-IIRO's Recordkeeping Systems**

As explained at length in the 2011 Sanctions Motion, JSG Exs. 1-4, since discovery began in 2005, MWL-IIRO have blamed their discovery failings on the allegedly non-digital, non-searchable document management system in use by all MWL-IIRO branches during the relevant time period. *See id.*; *see also* Letter from MWL-IIRO to Judge Daniels, dated Nov. 28, 2007, JSG Ex. 16.

Plaintiffs detailed the extensive and sophisticated document archive and storage system used by MWL-IIRO in plaintiffs' prior motion for sanctions.  JSG Ex. 2, at pp. 16-19; JSG Exs. 1, 3, 4.  Indeed at a 2016 meet and confer with MWL-IIRO's new counsel confirmed that IIRO has a Dataflex computer system that allows for queries and searches of financial records and donor records, that searches could be done to determine what projects were given aid and how much aid went to each project. *See* Letter from Aisha Bembry to J. Scott Tarbutton, Apr. 25, 2016, JSG Ex. 17.  New counsel explained that this was different from their understanding three to four years ago.  Further MWL-IIRO conceded at this meeting that while the system may not

8

have been fully centralized in 1992, that by 1998, for example, donation records were centralized with IIRO headquarters from branch office records.  Counsel explained that these records would show who was paid in the branch offices.

### (b)    Recycled Documents

In a bad faith effort to obscure their discovery malfeasance, MWL-IIRO repeatedly inflated the actual number of responsive documents they produced.  In April 2011, for example, MWL-IIRO produced documents that they contended represented all documents related to Khalifa.  The production totaled 44 pages, despite Khalifa being the most central figure in a longstanding MWL-IIRO branch office.  Nonetheless, even if the 44 pages did somehow represent everything relating to Khalifa, plaintiffs shortly discovered that 41 of the 44 pages— over 90 percent—had been previously produced.  JSG Ex. 2, at pp. 3-4.

As another example, on April 5, 2011, MWL-IIRO produced approximately 2,600 documents to give the appearance of good faith in advance of a hearing to decide a pending motion to compel.  That production consisted of 2,412 pages of documents and 212 pages of brochures relating to the opening of an Islamic Cultural Center in Madrid.  Plaintiffs expended significant time and resources to translate and analyze this production, which was primarily in Arabic.  Plaintiffs ultimately determined that 1,781 of the 2,412 pages, or 74 percent, had previously been produced by IIRO.  *Id.*

MWL-IIRO's repeated re-productions were expressly intended to delay and distort the discovery process.  Had MWL-IIRO simply refused to produce anything, discovery motion practice could have proceeded expeditiously.  Instead, MWL-IIRO produced just enough to require plaintiffs to expend years and hundreds of thousands of dollars to determine what had been produced.  MWL-IIRO's tactic not only delayed this litigation by years, but also gave

9

MWL-IIRO the opportunity to misrepresent to this Court that they were complying with their discovery obligations.

**(c)**     **Purported Lack of Familiarity with the American Judicial System.**

As discussed in the original case-dispositive motion for sanctions, JSG Exs. 1-4, MWL-IIRO have consistently attempted to hide behind their alleged unfamiliarity with the American judicial system to avoid providing meaningful discovery. *See, e.g.*, Letter Brief in Opposition to Sanctions Motion, p. 20, JSG Ex. 18 ("[t]he Defendant charities lack any sophistication with the American legal system.") Even if this explanation could justify MWL-IIRO's discovery failings, however, it is nonetheless a fabrication. Mr. McMahon represented to this Court that he regularly discussed discovery issues with Mr. Radhi via Skype. *See* April 12, 2011Hearing Tr., at p. 36, JSG Ex. 7; June 23, 2011 Discovery Hearing Tr., p. 8, JSG Ex. 9. In light of Mr. McMahon's ongoing contact with MWL-IIRO about their discovery obligations, the suggestion that the discovery misconduct is the product of ignorance, rather than calculated withholding of important inculpating information, is simply not credible.[6]

**2.**     *MWL-IIRO's Failure to Comply with its Obligations to Produce Financial Records and Funding Sources*

MWL-IIRO have consistently shirked their duty to produce financial records and related audits detailing the nature of the financial support MWL-IIRO provided to terrorist organizations like al Qaeda and misled the Court over and over again as to the financial documents in their possession, custody, or control. They also continuously represented that they would produce or

---

[6] On a related note, MWL-IIRO have made much of a language barrier that is in fact largely non-existent. Among many other indicia of sophistication in the English language, MWL: (1) has offices throughout the English-speaking world; (2) publishes extensive English language literature; and (3) makes its constitution and bylaws available in English. Specifically, one of MWL's most central publications, the "MWL Journal," is published in English by the MWL's "Press and Publications Department" in Mecca.

10

already had produced other relevant financial documents, but had not done so and have not done so to this day.

While this was discussed in detail in plaintiffs' motion for case-dispositive sanctions, JSG Exs. 1-4, MWL-IIRO's more recent correspondence and productions with MWL-IIRO's new counsel further make the point that MWL-IIRO failed to produce responsive documents in their care, custody, or control.  *See, e.g.*, Indices from Lewis Baach acknowledging that hundreds of thousands of new documents are, in MWL-IIRO's view, responsive to plaintiffs' requests, JSG Exs. 20-30; JSG Ex. 20, at p. 2 (July 29, 2014 index showing thousands of pages of financial records being produced); JSG Ex. 30, at pp. 3-21 (Aug. 4, 2017 index showing thousands of pages of financial records being produced); Letter from Aisha Bembry to Scott Tarbutton, dated Apr. 25, 2016 (enclosure), JSG Ex. 17.

### 3. *MWL-IIRO's Improper Attempts to Conceal Their Relationships with Bin Laden, His Family, al Qaeda and the Taliban*

Throughout this litigation, plaintiffs have sought documents from MWL-IIRO concerning their relationship with Osama bin Laden, his family, Al Qaeda and the Taliban.  MWL-IIRO have repeatedly asserted that "no documents exist" responsive to these requests.  *See* MWL's Responses to Plaintiffs' 1st Requests for Production of Documents, dated January 19, 2006, JSG Ex. 31, Answers 29, 74; IIRO's Responses to the Plaintiffs' 1st Requests for Production of Documents, dated February 24, 2006, JSG Ex. 32, Answers 42, 50; IIRO's 1st Supplemental Responses to Plaintiffs' 1st Requests for Production of Documents, dated October 8, 2008, JSG Ex. 33, Answers 43, 51; IIRO's Response to Plaintiffs 2nd Set of Supplemental Requests for Production of Documents, dated April 28, 2008, JSG Ex. 34, Answers 15, 19 (emphasis added). However, as discussed in the prior motion for sanctions, this was not accurate.  *See* JSG Exs. 1-4.

Documents produced in recent years confirm this to be true. *See* e.g., MWL-IIRO Indices, Exs. 20-30; *see also* JSG Ex. 27, at p. 12 (MWL index dated December 30, 2016 showing documents relating to Osama bin Laden being produced); JSG Ex. 22 at pp. 1-26 (etc.) (IIRO index dated July 17, 2015 showing documents related to Osama bin Laden being produced); JSG Ex. 23, at pp. 2, 5-7, 11, 13, 14, 22, 23, 25, 26, 28, 29, 31, 37, 43-46, 50 (etc.) (MWL index dated July 17, 2015 showing documents related to Osama bin Laden being produced).

### 4.   *MWL-IIRO's Attempts to Mislead the Court and the Plaintiffs as to its Relationship to the Kingdom of Saudi Arabia in the Course of Document Production*

MWL-IIRO have been demonstrably misleading about evidence of their relationship with the Kingdom. *See* JSG Ex. 1-4. IIRO, for example, for its part, has stated that was unable to find any documents linking: (1) Abd al Hamid Sulaiman al Mujil, the Executive Director of the IIRO's Eastern Province branch office in Saudi Arabia, to the Kingdom; (2) the IIRO to the Kingdom's embassies and consulates; and (3) IIRO to any member of the Saudi royal family. *See* JSG Ex. 34, Answer 19; JSG Ex. 33, Answers 29, 34, 35, 38, 82, 83. These representations by MWL-IIRO are disproven by countless documents plaintiffs obtained from their own investigations and from the long overdue productions subsequent to the 2011 Motion for Sanctions. JSG Exs. 20-30; JSG Ex. 22, at pp. 8, 10, 20, 22, 33, 54, 55, 56, 59, 69, 74 (etc.) (IIRO index dated July 17, 2015 showing documents related to Kingdom of Saudi being produced).

### 5.   *MWL-IIRO's Disregard of its Discovery Obligations as to Other Individuals Associated with Terrorism*

As discussed in the 2011 Sanction Motion MWL-IIRO failed to produce all documents related to, among others, Wa'el Jelaidan; al Qaeda's "Million Dollar Man" Abd Al Hamid

12

Sulaiman Al Mujil; and Mohammed Jamal Khalifa. *See* JSG Ex. 2, at pp. 31-35; JSG Ex. 4 at pp. 5-9. It is clear that MWL-IIRO have had responsive documents relating to these individuals for years and have simply chosen not to produce them, all the while representing to the Court and to plaintiffs that their search was complete. Indeed, MWL-IIRO's recent productions belie their earlier assertions that all documents were produced. *See, e.g.*, MWL-IIRO Indices, JSG Exs. 20-30; *see also* JSG Ex. 20, at pp. 28-32 (July 29, 2014 index showing records relating to individuals tied to terror being produced); Ex. 22, at pp. 1, 2, 7, 10, 12- 16, 18 (etc.) (IIRO index dated July 17, 2015 showing records relating to individuals tied to terror being produced).

### 6.    *The MWL-IIRO Sought to Conceal the Existence of Their Branch Offices and Records Relating Thereto*

Plaintiffs requested documents from MWL-IIRO field offices, including Indonesia and the Philippines. *See* JSG Exs. 1-4. In response to these requests, MWL-IIRO stated, for example, that "there was no official IIRO Philippines office until 2011." Letter Brief in Opposition to Sanctions Motion, p. 14, JSG Ex. 18; *see also* November 16, 2011 Tr., at p. 10, JSG Ex. 11 ("Mr. McMahon: I don't know what MWL records exist for the Philippines, because if there was an operational arm there at some juncture, I thought it was IIRO."). Each of these statements was materially false. This has been discussed in the 2011 Sanctions Motion, where plaintiffs confirmed, for example, that the IIRO opened its own, independent office in the Philippines in 1991. *See* JSG Ex. 2, at pp. 31-35; JSG Ex. 3, at pp. 7-8. Indeed, to this day, plaintiffs still do not know all of the offices from which MWL-IIRO operated, let alone received documents from these unknown offices. Documents produced by Lewis Baach further belie MWL-IIRO's prior assertions that all documents about branch offices had been produced. *See e.g.,* MWL-IIRO indices, JSG Exs. 20-30; JSG Ex. 23, at pp. 1-57 (etc.) (MWL index dated July

13

17, 2015 showing records relating to branch offices); JSG Ex. 22, at pp. 1, 3-7, 9-11, 13-15, 21,

24, 25, 27 (etc.) (IIRO index dated July 17, 2015 showing records relating to branch offices).

### 7. *MWL-IIRO's Responses to "Investigations and Raids" Were False*

MWL-IIRO have also been the target of investigations and raids from different

government entities in connection with their ties to terrorism and specific terrorist acts.  Plaintiffs

sought documents in MWL-IIRO's possession related to these investigations and raids, but

MWL-IIRO indicated that they could find "no documents." *See* JSG Ex. 34, Answers 7, 9, 14;

JSG Ex. 33, Answer 85.  Despite these representations, plaintiffs' independent investigations

uncovered that these documents do exist, and in some instances were even eventually produced

by MWL-IIRO. *See* JSG Exs. 1-4.  Similarly, these defendants have produced documents that

show that representation to be false. *See* MWL-IIRO Indices, JSG Exs. 20-30; JSG Ex. 20, at

pp. 31-32 (July 29, 2014 index showing records relating to raids being produced); JSG Ex. 22, at

pp. 35, 255-58, 262, 282, 286 (etc.) (IIRO index dated July 17, 2015 showing records relating to

raids being produced).

### C. Defendants' Representations Regarding the Non-Existence of Documents Later Determined to Exist Warrant Sanctions Against MWL-IIRO for Failure to Obey Discovery Orders.

"Numerous factors are relevant to a district court's exercise of its broad discretion to

order sanctions under Rule 37, including (1) the willfulnesss of the non-compliant party or the

reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period

of noncompliance, and (4) whether the non-compliant party had been warned of the

consequences of his non-compliance." *Nieves v. City of N.Y.*, 208 F.R.D. 531, 535 (S.D.N.Y.

2002) (citing *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).  Each of these four factors

counsels in favor of sanctioning MWL-IIRO.

14

*Willfulness or reason for non-compliance*:  The typical sanctions case involves a court punishing a party for delay in fulfilling the party's discovery obligations or for failing to timely respond to discovery orders.  Here, MWL and IIRO have done much more than that—they have affirmatively misrepresented the existence and/or content of responsive documents in their possession literally dozens of times.  Accordingly, the willfulness factor counsels strongly in favor of sanctioning MWL-IIRO.

*Efficacy of lesser sanctions*:  We address this factor *infra*, because it is appropriately analyzed by reference to the specific cost-shifting sanction plaintiffs seek.

*Duration of non-compliance*:  While the Court may measure the duration of MWL-IIRO's non-compliance in multiple ways, no matter how the duration is measured, the non-compliance spans years.  It arguably began the day MWL-IIRO issued their first discovery responses, since those responses included various materially false representations.  From the point of these early discovery responses forward, MWL-IIRO were knowingly withholding responsive documents they knew or should have known were within their possession, as proven by Lewis Baach's subsequent production of documents previously claimed not to exist.

*Whether the non-compliant party had been warned of the possibility of sanctions*:  There can be no reasonable dispute that MWL-IIRO were made well aware of the possibility of sanctions.  At the November 16, 2011 hearing, the Court issued the following warnings:

> THE COURT:  It's not my intent at the end of today to grant ... dispositive relief in terms of something like striking the answer of any of these defendants.  <u>But I do think, unless I'm convinced otherwise, we may be heading in that direction.</u>

Hearing Tr. dated November 16, 2011, JSG Ex. 11, at 12:18-23 (emphasis added).

> MR. CARTER:  Your Honor, could we reserve at a minimum that ... the Court would entertain ... a motion for sanctions to recover some of the costs and expense we have incurred over nine months of simply proving that these documents exist?

15

THE COURT: Oh, sure.  Yes.

*Id.* at 25:23-26:4.

MWL and IIRO cannot reasonably argue that this Court did not provide the notice

required by Rule 37.

### D.   The Appropriate Sanction Is Cost-Shifting Under Subsection (b)(2)(C) of Rule 37 and a Monetary Sanction.

Rule 37 is clear, and courts routinely hold, that if the Court deems sanctions necessary,

those sanctions must include—at a minimum—imposition of cost-shifting on the offending

party. *See* Fed. R. Civ. P. 37(b)(2)(C) ("the court <u>must</u> order the disobedient party, the attorney

advising that party, or both to pay the reasonable expenses, including attorney's fees…")

(emphasis added); *see also Doe v. Delta Airlines, Inc.*, 2015 U.S. Dist. LEXIS 22739, at *29

(S.D.N.Y. Feb. 25, 2015) ("This cost-shifting is mandatory…").

Cost-shifting "serve[s] to encourage litigants and their counsel to promptly comply with

discovery orders at the risk of being penalized for disobedience." *Creative Res. Group of N.J.,*

*Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (quotation omitted).

Courts should craft cost-shifting awards in the manner that "best suits the facts and evidentiary

posture of [the] case" at bar. *Nycomed US Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023,

2010 U.S. Dist. LEXIS 82014, at *37 (E.D.N.Y. Aug. 11, 2010).  "[T]he Court is permitted to

consider … the resources of the sanctioned party" and should avoid sanctions that only amount

to the "proverbial slap on the wrist." *Id.* at *39.

#### 1.   *Based on MWL-IIRO's Willful Conduct, the Court Should Shift Plaintiffs' Costs to MWL-IIRO.*

MWL and IIRO have willfully skirted their discovery obligations for years, in an effort to

drag this case out and exhaust plaintiffs' resources before the Court forces them to produce the

inculpating documents they knowingly possess.  Indeed, MWL, IIRO and various other

defendants have largely succeeded in withholding significant inculpating documents for the

twelve years since Judge Casey ordered them to submit to jurisdictional discovery, making

various misrepresentations to this Court along the way.[7]  Indeed, like the *Crawford* case, "[t]his

case is a poster child for how the system should not work."  *Crawford*, 261 F.R.D. at 43 (Maas,

J.).  Like the court's previous *Crawford* decision, MWL-IIRO "essentially stonewalled

[plaintiffs] for much of the discovery period" and "made baseless representations to the Court."

*Id.*  The court sanctioned the *Crawford* defendant for the amount of time the plaintiff spent

attempting to procure the discovery to which she was entitled, *id.* at 43-44, and plaintiffs request

that this Court do the same here.

No lesser sanction would be effective, as anything other than a significant shifting of

costs would incentivize MWL-IIRO to continue pursuing the same subterfuge.  If MWL-IIRO

see that they can impede discovery and avoid paying plaintiffs' fees—or even avoid paying some

of plaintiffs' fees—they will go forward as they have.  MWL-IIRO realize that the documents

they are withholding are central to plaintiffs' case, and if produced could leave MWL-IIRO

owing far, far more than just plaintiffs' attorneys' fees.

> **(a)     There Is No Substantial Justification for MWL-IIRO's
> Conduct or Other Circumstance Rendering Cost-Shifting
> Unjust.**

A court can be excused from the cost-shifting requirement if it finds that the offending

party "was substantially justified" in failing to comply with discovery, or that "other

---

[7] In so doing, MWL-IIRO have also impeded Plaintiffs' case against separate defendants.  For example, plaintiffs have alleged at length that MWL-IIRO are controlled by the Kingdom of Saudi Arabia, in plaintiffs' case against the Kingdom.  However, plaintiffs received much of the MWL-IIRO discovery relevant to the Kingdom claims only after important filing dates as to the Kingdom had passed.

circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "The noncompliant party bears the burden of showing that his failure to comply was justified or that an award of expenses would be unjust." *Lan v. Time Warner, Inc.*, 2015 U.S. Dist. LEXIS 13957, at *7 (S.D.N.Y. Feb. 5, 2015).

The "substantially justified" escape hatch addresses situations entirely different from what MWL-IIRO have done in this case. By contrast, for example, in *Singer v. Covista, Inc.*, the court found a party's non-compliance substantially justified because the non-compliant defendant's reading of the relevant Court order, "while narrower than plaintiff's, was a reasonable one, thereby giving [him] substantial justification" to redact certain documents. No. 10-6147, 2013 U.S. Dist. LEXIS 44474, at *27 (D.N.J. Mar. 28, 2013). In another case, *Kara Holding Corp. v. Getty Petroleum Mktg.*, the court limited its cost-shifting to the costs incurred bringing the sanctions motion because the non-compliance was deemed harmless to the other party's case. No. 99 Civ. 0275, 2004 U.S. Dist. LEXIS 15864, at *69, *85 (S.D.N.Y. Aug. 12, 2004).

The reasons for deeming non-compliance substantially justified in the above cases are plainly inapplicable to MWL-IIRO's conduct here. The more than 550,000 pages of documents produced *after* the 2011 Sanctions Motion (compared to the 11,000 or so pages produced before) have made indisputably clear that MWL-IIRO for years knowingly obscured the existence of over half a million responsive documents. As plaintiffs continue to learn about new documents through their own investigations and MWL-IIRO's latest document productions, plaintiffs' contentions are proven true over and over again.

To deem MWL-IIRO's non-compliance "substantially justified" would be to reward them for conduct that was at best gross negligence, and at worst intentional subterfuge concerning

18

documents at the heart of plaintiffs' case.  Accordingly, MWL-IIRO's allegedly exhaustive efforts to locate documents are not a justification, much less a substantial one, for defying this Court's orders and failing to produce documents already within MWL-IIRO's possession.

Plaintiffs have incurred millions of dollars in attorneys' fees and costs attempting to obtain discovery from MWL-IIRO for over a decade.  Plaintiffs have sent dozens of letters and arranged myriad meet-and-confers.  Plaintiffs have prepared for and appeared at various court conferences addressing MWL-IIRO's malfeasance, before both this Court and Judge Daniels. Plaintiffs have researched, briefed and argued multiple motions to compel MWL-IIRO to comply with their obligations, as well as one prior motion to sanction MWL-IIRO.  Consultants have had to perform extensive work on this issue.

Based on all of this work, spanning more than a decade, it should come as no surprise to MWL-IIRO that plaintiffs' counsel have incurred millions of dollars in fees and expenses.  This massive expense of time and money could all have been avoided had MWL-IIRO simply complied with their discovery obligations—MWL-IIRO have significantly impeded and delayed this litigation, and plaintiffs deserve to be reimbursed for their efforts.

A large award of costs would warn MWL, IIRO and all other defendants that ignoring discovery obligations and disobeying court orders comes at a cost.  It would level the playing field by incentivizing each defendant to provide responsive documents in its possession in a timely fashion, just as plaintiffs themselves have consistently done throughout this litigation.

Accordingly, should the Court rule that cost-shifting sanctions are warranted, plaintiffs respectfully request leave to submit a fee application as was done in prior motions for sanctions, including for example, the motion against al-Haramain. *See* ECF Nos. 2654, 2789, 2829, 2831,

3035, 3073, 3133, 3139, 3170, 3228.  This allows the plaintiffs time to gather relevant time records and coordinate their orderly transmission to the Court.

### 2. *The Court Should Impose a Monetary Sanction on MWL-IIRO.*

This Court should order monetary sanctions under Rule 37(b)(2)(A), to "provid[e] a general deterrent" against further misconduct by MWL-IIRO and the other defendants remaining "in [this] particular case." *Nieves*, 208 F.R.D. at 535.  Punitive monetary sanctions, though not explicitly listed in subsection (b)(2)(A), are a permissible and frequently imposed sanction.[8]  *See, e.g.*, *Blauinsel Stiftung v. Sumitomo Corp.*, 2001 U.S. Dist. LEXIS 20746, at *3 (S.D.N.Y. Dec. 12, 2001) (in addition to reasonable expenses, "this court levies an additional monetary sanction").  As discussed above, MWL-IIRO have willfully skirted their discovery obligations for years, in an effort to drag this case out, and in the process, have exhausted the resources of this Court in addressing their discovery violations, including the violation of this Court's orders. In light of these blatant violations, the Court should fine MWL-IIRO.

### III.  CONCLUSION

For all of the reasons set forth above, plaintiffs request that MWL-IIRO: (i) pay plaintiffs' reasonable attorneys' fees, costs and expenses (including the fees, costs and expenses related to this motion) incurred as a result of defendants' malfeasance and misconduct; (ii) remit to the Court a financial penalty for the judicial resources unnecessarily expended due to their misbehavior and to deter future actions in an amount determined by this Court; and (iii) receive such other and further sanctions that this Court deems just and proper.

---

[8] Indeed, it is well settled that the list of possible sanctions in subsection (b)(2)(A) is not exhaustive. *Grenion v. Farmers Ins. Exch.*, 2014 U.S. Dist. LEXIS 35549, at *25 (E.D.N.Y. Mar. 14, 2014).

Dated:  December 1, 2017

Respectfully submitted,

*/s/ Jerry S. Goldman*

Jerry S. Goldman, Esq.
Kanishka Agarwala, Esq.
Bruce Strong, Esq.
Nicholas Maxwell, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

*Attorneys for Plaintiffs*

## <u>CONSOLIDATED CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of plaintiffs' Notice of Motion for Sanctions Against Defendants Muslim World League and International Islamic Relief Organization, plaintiffs' Memorandum of Law in Support of plaintiffs' Motion for Sanctions Against Defendants Muslim World League and International Islamic Relief Organization, and the Declaration of Jerry S. Goldman, Esq. in Support of plaintiffs' Motion for Sanctions Against Defendants Muslim World League and International Islamic Relief Organization with exhibits, was filed electronically this 1st day of December, 2017.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

*/s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.