

# COZEN
# O'CONNOR

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

June 16, 2011

**VIA E-MAIL**

Sean P. Carter
Direct Phone 215.665.2105
Direct Fax   215.701.2105
scarter@cozen.com

Martin F. McMahon, Esquire
Martin F. McMahon & Associates
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036

Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)
      Our File No.: 117430

Dear Marty:

    We send this letter to express our deep and continuing frustration with the failure of the Muslim World League (MWL) and International Islamic Relief Organization (IIRO) to honor their most basic discovery obligations under the Federal Rules of Civil Procedure, even in the face of the Court's explicit directives.

    We have now spent several years attempting to persuade your clients to cure broad omissions from their respective document productions, and to refrain from the practice of repeatedly recycling previously produced documents and representing them as new productions. We have made clear that these evasive and abusive practices have required plaintiffs to needlessly invest significant resources in the translation and analysis of materials that have little relevance to the litigation.

    Unfortunately, the most recent document productions by the MWL and IIRO are infected with the same evasive and abusive practices that have plagued the effort to obtain meaningful discovery from those defendants for nearly four (4) years. This pattern of behavior, as discussed in further detail below, exhibits a fundamental lack of regard for the Federal discovery rules and Court's authority, and can no longer be explained by alleged cultural differences or confusion concerning the focus of the ongoing discovery. As a result, plaintiffs have no choice but to request that the Court impose sanctions upon the MWL and IIRO for the improprieties detailed below, to include compensation for costs and time incurred as a result of those improprieties.

Martin F. McMahon, Esquire
June 16, 2011
Page 2

---

1.      The "Indexes" of the IIRO Warehouse

During the months of March and April 2011, we held several telephonic conferences with you to discuss discovery priorities pertaining to the MWL and IIRO. Having failed to reach any meaningful progress through our dialogue, we made clear at the conclusion of those conferences our intention to file a series of motions to compel with the Court to obtain documents directly relevant to the claims and defenses at issue. The first of those motions sought to compel production of court documents within eight (8) specified categories, and was served on your office on March 16, 2011. The second motion, served on March 24, 2011, sought to compel production of documents relating to Mohamed Jamal Khalifa, Abd al Hamid Sulaiman al Mujil, Wa'el Jelaidan, the operations of the Philippine and Indonesia branches of the IIRO, and several other issues.

Shortly before the April 12, 2011 hearing at which plaintiffs' first motion to compel was to be heard, your office produced four indexes, and represented to us that they provided a guide to the filing system within the IIRO main document warehouse. At the April 12, 2011 hearing, you made multiple references to these indexes in your presentation to the Court, citing them as evidence of the IIRO's alleged diligence in relation to the discovery process, and in furtherance of the IIRO's efforts to avoid entry of an Order compelling it to produce the documents within the eight categories at issue in plaintiffs' first motion to compel. As the indexes were in Arabic and provided only days before the hearing, it was impossible for plaintiffs to provide the Court with any meaningful description or assessment of the content of the more than 200,000 line item entries contained in the four spreadsheets at the hearing.

In reliance on your representations that the indexes would provide a comprehensive guide to the filing system within the IIRO warehouse, we invested considerable resources in having linguists and consultants analyze those documents. After investing a number of hours in an effort to determine the general focus of each of the four indexes, our consultants came to the conclusion that the IIRO had not produced four distinct indexes as indicated in your emails transmitting those documents, but rather two indexes and two duplicates of those indexes. Of course, because there were nearly 50,000 entries on each of the indexes, they were not able to reach that conclusion until after investing considerable time in a general review of the four spreadsheets.

Having as a result of considerable effort eliminated two of the indexes as entirely duplicative, our consultants then undertook the labor and time intensive task of analyzing the more than 100,000 line item entries in the two non-duplicative spreadsheets. That analysis revealed the following fundamental problems with the indexes provided by the IIRO. First, contrary to the representations made to plaintiffs' counsel and the Court, the indexes do not provide a guide or catalog of the filing system within the IIRO warehouse, but rather contain a mere listing of individualized documents and folders that have been extracted from a larger filing system. Second, with a limited number of exceptions, the subject/topic entries for the vast majority of the line item entries are too vague to allow plaintiffs to make any meaningful assessment of the potential relevance and value of the document or sub-file at issue. Third, there

is no explanation of the methodology that was used in determining which documents to include on the spreadsheet. As a result of these fundamental defects, the indexes are virtually worthless.[1]

2.  The Documents Produced on April 5, 2011

On April 5, 2011, the IIRO made a supplemental production totaling 2,412 pages. Like the indexes, these documents were produced shortly before the scheduled hearing before the Court on April 12, 2011, in an attempt to bolster the IIRO's argument that it was engaging in good faith efforts in relation to the discovery process. Unlike prior productions by the IIRO, none of the documents delivered to plaintiffs on April 5 were bates stamped.

The overwhelming majority of the documents produced on April 5 were in Arabic, thus again requiring the involvement of linguists and consultants to translate and analyze those materials. Ultimately, the lengthy evaluation of these documents revealed that 1,781 of the 2,412 pages produced on April 5 had previously been produced by the IIRO. Thus, 74% of the documents produced on April 5 were entirely redundant of documents previously produced by the IIRO. Further, the "new" documents in the production consisted primarily of three brochures relating to the opening of the Islamic Cultural Center in Madrid, totaling 212 pages. While the IIRO would likely argue that these public relations brochures are nominally responsive to one of plaintiffs' document requests, they bear no relationship to the topics we prioritized during our discussions with you, and appear to have been included as filler to bolster the last minute production in advance of the April 12, 2011 hearing.

You also represented, in both your dealings with us and to the Court, that the April 5, 2011 production included the "Mohammed Jamal Khalifa file." The file that purportedly contained the IIRO's documents concerning Khalifa included 156 pages, but only 44 of those related in any way to Khalifa or his activities with the IIRO. Of those 44 pages, 41 had previously been produced, and the three remaining documents did not contain new material, but were instead English indexes identifying the 41 recycled Khalifa documents.

Again, the vast majority of the April 5, 2011 production was in Arabic, and plaintiffs were compelled to invest significant resources and time in the analysis of these materials, merely to find that they were almost entirely duplicative and/or worthless. Although we have not yet received a formal accounting from our consultants of the time invested in analyzing and translating these materials, the process itself took several weeks, and we are confident that the economic investment in the review of these materials will prove significant. Further, the time spent reviewing these materials prevented our consultants from working on other pending and important projects relating to the litigation.

---

[1] What is notable about the indexes is that they seem to confirm that the IIRO uses some highly organized and well structured archiving system for its records. In this regard, the indexes contain numerical entries referencing the year, date, file number, box number, row, and pillar number from which the individual document or sub-files were extracted, along with numerical designation for the individual documents itself. Those numerical references leave little doubt that some logical and efficient (but undisclosed) organizational system has been used by the IIRO for many years to maintain its records.

3. The Production Made by the MWL and IIRO in Response to the Court's April 12, 2011 Order

At the hearing on April 12, 2011, Judge Maas granted plaintiffs' March 16, 2011 Motion to Compel, and directed the MWL and IIRO to produce all documents within the eight categories referenced in that motion within thirty (30) days.

The thirty (30) day deadline passed without any production by the MWL or IIRO, and without any communication from your office concerning the required production. On May 16, 2011, several days after the deadline had passed, we received cursory email from your office indicating that "we will be sending you via Fed Ex the materials you requested, hopefully no later than tomorrow. They will not be bates stamped because we were in a hurry to get them to you. Also, I may need some extra time because Bethany and I are getting our visas, but we don't know when the trip is taking place. The trip will focus on discovery issues in the case."

In response, we sent you an email suggesting that you take an extra day to bates stamp the documents prior to production, and requesting that you clarify what would be produced, and whether or not it would encompass everything within the eight categories that were the subject of plaintiffs' first motion, as required by the Court's order.

In reply to our email, you sent us a note indicating that the production would include "the financial statements with the auditor's report from 1992 – 2002, the annual reports for IIRO for 1986 – 2004, and the orphans' records. You went on to note that the "orphans' records" total approximately 52,000 (2 pages per orphan). We then sent you an email advising that the documents identified in your summary "would represent but a small fraction of the documents responsive to one or two" of the eight categories of documents the Court directed the MWL and IIRO to produce. We also expressed concern that your summary implied that the production would relate almost exclusively to the IIRO, even though the Order was directed at both the IIRO and MWL. In addition, we advised you that we found troubling your reference to the production of 52,000 "orphans' records," noting that we had repeatedly made clear that we are not seeking production of individual orphans' records, and that those materials were not responsive to the Order issued by the Court.

As predicted, the belated production of documents that followed on May 20, 2011 was woefully incomplete. Nominally, the production included limited documentation falling within three designated categories: (1) financial statements of the IIRO; (2) English language "annual reports" for the years 1996, 1998, 1999-2000, 2000-2001, 2001-2002, 2002-2003, 2003-2004; and (3) a handful of documents relating to the MWL's Constituent Council meetings.

Any suggestion that this limited production represented a good faith effort to comply with the Court's April 12, 2011 Order is blatantly disingenuous. To begin with, the production included absolutely no documents responsive to several of the eight categories of materials the Court directed the IIRO and MWL to produce. Further, even as to categories for which documents were provided, the documents produced represented only a fraction of the responsive materials in the possession, custody and control of the MWL and IIRO. For example, although a few financial statements were offered in the production, critical financial documents, such as

periodic financial reports from the field offices, were omitted entirely from the production. Similarly, although documents designated as the IIRO's "annual reports" for certain years were included in the production, only the English language reports were produced, and those reports are more accurately described as annual promotional brochures concerning the activities of the IIRO, rather than true annual reports.

Perhaps most troubling are the documents included in the production pertaining to the MWL's Annual Constituent Council. Although your email to us suggested that the MWL and IIRO would be providing comprehensive documentation relating to the Annual Constituent Council, the actual production included a handful of press releases and alleged "meeting minutes" for certain of the annual summits. We know from our independent investigation that far more robust and detailed documentation is generated for purposes of the Constituent Council meetings. More importantly, *the few documents that were produced appear to have been generated for purposes of this production by copying and pasting selected text from separate documents, which were not themselves produced.* This manipulation is evidenced by the absence of any customary Muslim World League letterhead or other authenticating marks on the documents, and the fact that much of the Arabic text in the documents was scrambled in the process of copying and pasting it from the original source. Indeed, much of the text is gibberish, including the entirety of the documents bearing bates IIRO 000782 – IIRO 000804.

Based on the content of the production, it is apparent that your clients made no meaningful effort to search for documents falling within the scope of the Court's Order, but instead merely grabbed a few documents that were readily at hand, and produced those in an effort to give some appearance of compliance with the Court's Order. In relation to the Constituent Council records, it appears likely that a representative of the IIRO simply searched for publicly available documents, and then copied selective text into new Word file, in an effort to provide some cover for the MWL's non-compliance.[2]

4. The IIRO's Failure to Comply at All With the Court's April 27, 2011 Order

On April 27, 2011, the Court issued an Order broadly granting plaintiffs' March 24, 2011 Motion to Compel. Although at the time of the April 26, 2011 hearing on the Motion, the Court had directed the IIRO to produce the documents at issue within thirty days, the Court provided the IIRO with additional time to collect and produce the responsive documents through its written Order, pursuant to which it set a June 13, 2011 deadline for the production. Once again, the deadline established by the Court for complying with its Order passed without any production by the IIRO and without any communication from your office indicating that there would be a delay in complying with the Court's Order.

Again, the improper practices delineated above can not be viewed as isolated departures from the requirements of the Rules, but rather represent the latest manifestations of a pattern of behavior that reflect a fundamental disregard for the discovery process. Accordingly, it is our intention to seek sanctions with respect to these discovery violations.

---

[2] The Constituent Council documents bear IIRO bates stamps, rather than MWL designations.

                        Sincerely,

                        COZEN O'CONNOR

                        By: *Sean P. Carter* /ast

SPC/bdw

cc:    Jodi Flowers, Esquire (*via email*)
        Robert Haefele, Esquire (*via email*)
        Jerry Goldman, Esquire (*via email*)
        James Kreindler, Esquire (*via email*)
        Andrew Maloney, Esquire (*via email*)
        J. Scott Tarbutton, Esquire (*via email*)