## MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

JACQUELYN GLUCK
Of Counsel
Admitted in District of Columbia

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

November 7, 2007

**VIA OVERNIGHT DELIVERY**

The Honorable George B. Daniels
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1350
New York, NY 10007-1312

  Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570

Dear Judge Daniels:

  As this Court is aware, a dispute concerning the scope of discovery has arisen between the International Islamic Relief Organization, Muslim World League, Wael Jelaidan (collectively referred to as "Defendants") and the Ashton, Burnett, Federal Insurance and O'Neill Plaintiffs (collectively referred to as "Plaintiffs"). The parties seek an Order from this Court that will resolve the issue as to whether discovery should be limited to a specific "look-back" period prior to 9/11, and the duration of that period.

  In our opinion, limiting the timeframe for discovery in this case to 1998, or at the earliest 1996, is consistent with the requirements of Fed. R. Civ. P. 26, this Court's previous holdings, and Second Circuit caselaw. Defendants submit that in order to promote fairness and judicial efficiency in this vastly complex case, a limitation on discovery is appropriate. A substantial amount of materials Plaintiffs seek vis-à-vis their first set of document production requests are *not* relevant, are too remote, and, even if some materials sought from the 1980s and early 1990s have some relevancy, are so *minimally* relevant that the substantial burden on the Defendants to produce such materials outweighs the minimal benefit to the Plaintiffs.

  Stated simply, the Plaintiffs' claims are essentially that the Defendants are part of a nebulous global terrorist network which financed, *inter alia*, the 9/11 tragedy. However, because there was substantial and notorious terrorist activity in the period 3-5 years before the 9/11 attacks, Plaintiffs need not look back to the 1980s or 1990s for evidence, assuming it exists, to

support their claims. Defendants' rationale is that if they are the vital players the Plaintiffs claim them to be in financing international terrorism, surely there would be an evidentiary trail linking these Defendants to, for example, the American Embassy bombings in 1998. Besides, if in the course of discovery the Plaintiffs find specific evidence justifying an extension of the look-back period, this Court can always revisit the propriety of such a discovery limitation.

## I.   BRIEF HISTORY OF DISCOVERY DISPUTE

The Defendants seek relief as to the scope of discovery for substantially similar reasons. These reasons are best illustrated by the following events, which concern Defendant MWL.

In or about October 2005, Defendant MWL was served with Plaintiffs' first set of requests for production of documents.[1] Shortly thereafter, Defendants' counsel sent Plaintiffs' counsel a letter stating, *inter alia*:

> Your Requests contain 89 individual requests for documents, many of which contain numerous subparts. In addition, several Requests seek a variety of documents associated with the people or entities listed in Exhibit A. There are approximately 93 people and entities listed in Exhibit A. Many of the Requests seek information going back to January 1990, and some seek information from as far back as January 1980. Many of the Requests seek information that is not likely to lead to the discovery of admissible evidence, and most, if not all, of the Requests seek information that is not in English. Finally, without getting into specifics at this time, certain Requests seek confidential information and/or information that is not relevant to any of the allegations in the Complaint.[2] Given the extreme breadth of the Requests, MWL simply does not have the resources to respond, especially given the language barrier and the location of many of the documents requested. For all these reasons, the burden of the proposed discovery greatly outweighs its potential benefit.[3]

In addition and with respect to the instant dispute – the scope of discovery – Defendant proposed:

> While we believe there are ample grounds for a protective order under Rule 26, it would be more productive to work with you to refine your Requests and make them more manageable. One possibility would be to reduce the time frame of the requests and narrow their scope to documents more closely related to the

---

[1] *See* example of document production requests, attached hereto as Exhibit A. Defendants IIRO and Wael Jelaidan were served with similar requests.

[2] *See, e.g., Conlove v. Compaq Computer Corp.*, 223 F.R.D. 162, 168 (S.D.N.Y. 2004) (breadth of document request "would require an expenditure of time and resources far out of proportion to the marginal value of the materials to this litigation"); *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)").

[3] *See* Letter dated November 30, 2005, attached hereto as Exhibit B.

allegations. *For instance, pursuant to ¶ 42 of the Complaint, 1998 might be a more reasonable cut-off date for document production.* (emphasis added).[4]

After a series of letter exchanges between the parties, no amendment to Plaintiffs' initial request for documents was offered. Consequently, Defendant MWL was forced to provide responses to Plaintiffs' document requests which contained, *inter alia*, the following objection:

> Defendant objects to this request on grounds that it is overbroad and that it is a multiple document request ostensibly portrayed as a single document request. Based upon Judge Casey's ruling that 1996 appears to be the year when an individual or entity would have sufficient knowledge concerning Osama Bin Laden's evil intentions toward the U.S. and eventually the 9/11 attacks, no documents prior to 1996 will be provided. *See Terror Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *65 (S.D.N.Y. Sept. 21, 2005).[5]

Since providing Plaintiffs with initial responses to their discovery requests, the parties have met at least two times and attempted to work with each other, in good faith, on several outstanding discovery related issues. While successful in resolving (at least for now) some issues, the scope of discovery as to how far back Defendants should have to go when producing documents cannot be resolved by the parties.

## II.   SUMMARY OF ARGUMENT

The discovery date limitation, look-back period either 1998 or 1996, is *not* unfair to the Plaintiffs. However, as shown *infra*, requiring these Defendants to produce documents as far back as the early 1990s is abundantly unfair to the Defendants.

First, discovery of matters pre-dating 1998, or at the earliest 1996, are not relevant to Plaintiffs' claims because they occurred before the Defendants could have been *on notice* of the activities of Al Qaeda and Osama bin Laden, courtesy of the fatwa cited in ¶ 42 of the Federal Insurance complaint, as cited *supra* n. 4.

---

[4] Paragraph 42 of the (Federal Insurance) Complaint states in pertinent part:

In February 1998, al Qaeda issued a fatwa under the banner "the World Islamic Front for Jihad Against Jews and Crusaders," saying it was the duty of all Muslims to kill United States citizens – civilian or military – and their allies everywhere.

[5] Defendants IIRO and Wael Jelaidan also made similar objections based upon the same grounds as Defendant MWL. This Court should further know that Defendants MWL and IIRO have supplemented their discovery responses on two separate occasions and have offered Plaintiffs the opportunity to copy and inspect IIRO's largest document retention warehouse located in Jeddah, Saudi Arabia and MWL's New York, London, Gibraltar, and Madrid offices. To date, Plaintiffs have failed to make any attempt to inspect IIRO's warehouse or MWL's office (including MWL's New York office.) Also, the Defendants have provided Plaintiffs with all records received from the FBI which were seized from the MWL offices in New York and Virginia. Defendants' counsel has recently been informed that the FBI intends to produce another 30 boxes of documents. Once these boxes are received, they will be produced to the Plaintiffs. It should be noted, that no criminal prosecution against the MWL resulted from the FBI raid on MWL offices in New York or Virginia.

3

Second, discovery of matters pre-dating 1998, or at the earliest 1996, is so minimally relevant that the burden of producing these materials outweighs the potential benefit of the discovery.

Third, even if some of the documents Plaintiffs seek are relevant, this Court has the discretion to limit discovery in order to prevent undue burden to the Defendants and to promote judicial economy.

### III.   ARGUMENT

The threshold question for discovery is "Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, 2006 U.S. Dist. LEXIS 53684 *6 (S.D.N.Y. 2006). "Only if a matter is relevant and potentially discoverable must a court then consider whether additional Rule 26 limitations on discovery apply." *Id.* at *7. Therefore, consistent with prior rulings of this Court, Defendants submit that materials predating 1998, or 1996 at the earliest, should be deemed to be nondiscoverable because they are not relevant to the claims and defenses in this case, and consequently requests for such materials are not calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26.

#### A.    Defendants Could Not Be "On Notice" of Al Qaeda's Terrorist Activities Against America Until 1996.

Notice of al Qaeda's terrorist activities, vis-à-vis Osama Bin Laden's ("OBL")1996 fatwa, may be a dispositive factor in this Court's decision to limit discovery herein. As noted above, Defendants objected to most, if not all of Plaintiffs' discovery requests that sought production of documents before 1996. Defendants' rationale was that there is no factual relevance to the Defendants' activities before 1996 because the Defendants were not *on notice* of Al Qaeda's terrorist activities until that time, and hence, could not have knowingly and intentionally provided material support to al Qaeda (a prerequisite to establishing liability herein). Defendants based their position upon Judge Casey's previous holdings.

In *Terrorist Attacks II*, for example, the Court held that Tarik Hamdi's alleged delivery of a satellite phone used by OBL could have been done knowingly because the allegations against Tarik Hamdi happened after OBL declared war on Americans. *See Terrorist Attacks II*, 392 F. Supp. 2d 539, 566 (S.D.N.Y 2005). This same logic should be applied here, when this Court decides what is "relevant" in terms of Plaintiffs' document production requests. Furthermore:

> "[t]he Court has held that Defendants may be responsible for the September 11 attacks if they knowingly and intentionally provided material support to al Qaeda." (*See Terrorist Attacks II,* 392 F. Supp. 2d at 564 (citing *Terrorist Attacks I,* 349 F. Supp. 2d at 826)) ***because*** "In light of al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda. *Terrorist Attacks I,* 349 F. Supp. 2d at 826 (citing *Burnett I,* 274 F. Supp. 2d at 104)."

4

In short, this Court should accept Defendants' proposed timeframe for discovery because the Plaintiffs need not delve into a timeframe that will not assist them in showing the Defendants were "on notice" of Al Qaeda's terrorist activities. Bin Laden did not declare war on America until 1996 (Peter L. Bergen, *The Osama Bin Laden I Know*, 164 (2006)), and he was not publicly acknowledged as a terrorist until he was indicted in the US in 1998. Even the Central Intelligence Agency "had no idea of [OBL's] possible significance until 'the bin Laden unit' was set up within the CIA in January 1996." *Id.* at 61. If the CIA did not recognize OBL's "possible significance" prior to his issuance of the 1996 fatwa, how could the Defendants recognize such significance, especially when the outlines of what would become the 9/11 plot were not even discussed until 1996 when Khalid Sheikh Mohammed met with OBL in Tora Bora. *Id.* at XVI; see also Substitution For The Testimony of Khalid Sheikh Mohammed, Def's Exh. 941, *U.S. v. Moussaoui*, Cr. No. 01-455-A, at 4, ¶ 6 attached hereto as Exhibit B.

## B.  The Burden Of Production to Defendants Outweighs The Likely Benefit to Plaintiffs.

As the discovery sought in this case goes back to earlier and earlier dates, the connection between alleged support to Al Qaeda and the 9/11 attacks becomes increasingly remote, to the point where the likely benefit of discovering such minimally relevant materials is outweighed by the substantial burden on Defendants in producing those materials. Although Rule 26 permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party," Fed. R. Civ. P. 26, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003).

In particular, Rule 26(b)(2)(iii) provides that:

> "a court may limit discovery where, *inter alia,* 'the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Barkley v. Olympia Mortg. Co.*, 2007 U.S. Dist. LEXIS 13308 at *37 (S.D.N.Y. 2007) (quoting Fed. R. Civ. P. 26).

When the breadth of a document request "would require an expenditure of time and resources far out of proportion to the marginal value of the materials to this litigation," (*Conlove v. Compaq Computer Corp.*, 223 F.R.D. 162, 168 (S.D.N.Y. 2004)) it is appropriate to impose limits such as the timeframe sought herein. Considering the complexity of the alleged conspiracy, the number of claims filed, the number of plaintiffs' classes alleging those claims, and the sheer number of documents sought, discovery in this case threatens to spiral out of control if reasonable limits are not imposed. The party that will suffer from such a loss of control is the Defendants.

5

### 1.     The Burden vs. The Benefit

The Defendants face a substantial undue burden without the timeframe limitation sought herein, and can articulate the nature of that burden. *See Arias-Zeballos v. Tan*, 2007 U.S. Dist. LEXIS 40245 *4-5 (S.D.N.Y. 2007) (stating that the party resisting discovery has the burden of showing how the discovery is unduly burdensome).

First, the volume of document requests (not just the individual requests) is far beyond average, and when multiplied by the number of sub-sections, is immeasurable. This number of requests is then increased more than a hundred-fold by the attachment of "Exhibit A" to the Plaintiffs' Requests For Production of Documents.[6] Exhibit A contains 93 names of individuals and entities for whom Plaintiffs seek voluminous documentation in an attempt to discover links between the Defendants and these individuals or entities. Limiting the timeframe that Plaintiffs can seek discovery regarding these 93 individuals and entities is a rational limitation on otherwise boundless requests.

Second, discovery of documents pre-1996 is especially burdensome because it involves discovery of mostly inaccessible documents that would be extremely expensive to locate, because there is no indexing system or electronic database that allows Defendants to simply "pull a file." Based upon information and belief, Defendants did not begin using computers in their home and field offices until after 1996. Thus, documents created before 1996 are in a largely inaccessible non-electronic format. Additionally, these documents have only a rudimentary, non-electronic indexing system. Finally, most of the records Plaintiffs seek to discover are in Arabic (hence requiring translation) and many of the older records are in handwritten Arabic in ledger books and other compilations of documents which makes it essentially impossible to create "searchable" electronic images of the documents. In *Zubulake*, the court stated:

> "[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (*a distinction that corresponds closely to the expense of production*). In the world of paper documents, for example, a document is accessible if it is readily available in a usable format and reasonably indexed. Examples of *inaccessible* paper documents could include (a) documents in storage in a difficult to reach place; (b) documents converted to microfiche and not easily readable; or (c) documents kept haphazardly, with no indexing system, in *quantities that make page-by-page searches impracticable*." *Zubulake*, 217 F.R.D. at 318 (emphasis added).

Third, while Defendants do not seek to prevent Plaintiffs' from accessing the documents they seek, the financial burden of conducting the production sought by Plaintiffs would rival the value of the claims in this case. For example, Plaintiffs want Defendants to scour through a warehouse in Jeddah, Saudi Arabia and produce all responsive documents found there from the

---

[6] *See* Ex. A.

early 1980's.[7] An initial assessment of the cost of copying the contents of the warehouse alone totaled over ten million riyals, or $3,000,000.00.[8] Although Defendants offered Plaintiffs unfettered access to the Jeddah warehouse, these offers have been declined and Defendants therefore seek to protect themselves from the undue burden of this production through the imposition of a reasonable "look-back" limitation. Also, for the court's edification, in the specific case of Defendant IIRO, Defendants have offered a deposition of a records custodian, in London, to, in effect, educate Plaintiffs' counsel about how and where documents are kept in the IIRO headquarters and its overseas offices in an attempt to reduce the burden and costs of complying with Plaintiffs' broad discovery requests. Plaintiffs have rejected this offer.

Therefore, due to the cost-conscious balancing of Rule 26(b)(2), inaccessibility of documents, and the severe additional burden placed on Defendants if they are required to produce discovery before 1998 or 1996, the burden clearly outweighs the benefit of discovering documents pre-1996 since they are only minimally relevant.

## 2. Prejudice vs. Fairness

The Plaintiffs will undoubtedly argue that they will be prejudiced if Defendants' discovery timeframe limitation is imposed. Defendants submit, however, their proposed discovery limit is fair to both parties and hardly prejudicial to the Plaintiffs.

As this Court knows, there were a series of attacks on U.S. interests, orchestrated by Al Qaeda between 1998 and the 9/11 attack in 2001, e.g., the 1998 Kenya and Tanzania embassy bombings and the 2000 USS Cole bombing. Assuming *arguendo*, Plaintiffs' allegations that the Defendants materially supported or were members of al Qaeda are true, surely they would be able to discover links between them without looking past 1996. If the Plaintiffs cannot discover any links between the Defendants and Al Qaeda in the 3-5 year period before the 9/11 attacks, it is certainly unlikely that they will find links relevant to their claims by looking back even further. In fact, when one revisits the Plaintiffs' allegations in their various complaints, it is clear Plaintiffs seek broader discovery in a backdoor attempt to later allege more than what was in their original complaints. As only one example, ¶231 of Defendant Ashton's complaint against the IIRO alleges that IIRO was implicated in the bombing of the US Embassies in Kenya and Tanzania in 1998. Plaintiffs need not look-back to the 1980s and early 1990s in a desperate attempt to support this fantastic allegation. Plaintiffs' discovery requests must be grounded in their original allegations. Thus, the imposition of a "look-back" limitation will essentially force the Plaintiffs to provide to the Court documents evidencing linkage between the Defendants and post-1998 or 1996 terrorist activities.

Stated simply, the Plaintiffs do not need to discover materials predating 1998 to support their claims. And, presuming their allegations carry any weight, they should not be prejudiced by Defendants' proposed discovery limitation. Because this Court can always revisit the propriety of a "look-back" limitation at a later date if, in the course of discovery within the

---

[7] *See* Ex. A (which essentially mirrors other Defendants' discovery requests)

[8] *See* $3 million estimate attached hereto as Exhibit C. Copying the contents of the warehouse would be necessary in order for Defense counsel to review and determine which documents are responsive to Plaintiffs requests since Plaintiffs require that all production of documents must state how each document is responsive to which requests.

suggested timeframe, the Plaintiffs find specific evidence that leads them to believe it is necessary to request an extension of the "look-back" period, the Defendants can then approach the Court for additional relief. This is a very effective approach to guard against the "fishing expedition" that these Plaintiffs are on. The Court should know that when Defendants requested documents to support the Plaintiffs' outrageous allegations, the Defendants were assaulted by news paper clippings and website articles, both of which are inadmissible hearsay.[9]

### C.    This Court Has The Discretion To Limit Relevant Discovery.

Even if this Court finds that some of the materials sought by Plaintiffs from the time period before 1998 or at the earliest, 1996 are relevant, Rule 26(c) provides that courts may limit relevant discovery to a particular timeframe to protect the defendant from overly burdensome discovery.

"[T]he discovery of relevant evidence…is subject to limitation." *Ferguson v. Lion Holding, Inc.*, 2005 U.S. Dist. LEXIS 9789, *9 (S.D.N.Y. 2005); *see also During v. City Univ. of N.Y.*, 2006 U.S. Dist. LEXIS 53684 at *15 (S.D.N.Y. 2006) ("Even if the information sought is relevant, courts have the authority to forbid or to alter discovery that is unduly burdensome."); *Barkley v. Olympia Mortg. Co.*, 2007 U.S. Dist. LEXIS 13308 at *6 (S.D.N.Y. 2007) ("the Court finds the majority of these requests to be relevant, but limits them as necessary to limit the burden placed on defendants"). Under Rule 26(c), this Court may impose the Defendants' proposed timeframe limitation to protect them from the unduly burdensome requests presented by Plaintiffs.

### IV.    CONCLUSION

As discussed at length above, the burden on the Defendants in this case is severe. Other defendants have been given similar time limitations in this case. *See* J. Maas Ord. (June 26, 2006) (ordering a 6 year look back period for jurisdictional discovery). Furthermore, the risk of permitting Plaintiffs to engage in a fishing expedition at Defendants' cost is reason enough for this Court to exercise its discretion by imposing the Defendants proposed timeframe limitation.

Respectfully submitted,

Martin F. McMahon, Esq.

cc: All Counsel of Record via E-mail

---

[9] As only one example, in Plaintiff Burnett's responses to IIRO's Document Requests they produced 83 PDF folders each containing numerous documents. 53 of their PDF folders, however, were nothing more than Newspaper or Website Articles.