# EXHIBIT 15

1

```
D6STTERC                    Conference
```

1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORKt
2   ------------------------------x
2
3   IN RE:  TERRORIST ATTACKS ON
3   SEPTEMBER 11, 2001
4                                   03 MDL 1570 (GBD)(FM)
4   ------------------------------x
5
5
6                                   New York, N.Y.
6                                   June 28, 2013
7                                   11:00 a.m.
7
8   Before:
8
9                       HON. FRANK MAAS,
9
10                                  Magistrate Judge
10
11                       APPEARANCES
11
12  KREINDLER & KREINDLER
12       Attorneys for Ashton Plaintiffs
13  BY:  JAMES KREINDLER
13
14  MOTLEY RICE
14       Attorneys for Burnett Plaintiffs
15  BY:  ROBERT T. HAEFELE
15
16  ANDERSON KILL & OLICK
16       Attorneys for O'Neil Plaintiffs
17        and Plaintiff's Executive Committee
17  BY:  JERRY S. GOLDMAN
18
18  WIGGINS, CHILDS, QUINN & PANTAZIS
19       Attorneys for Havlish and Hoglan Plaintiffs
19  BY:  TIMOTHY B. FLEMING
20
20  MELLON & WEBSTER
21       Attorneys for Havlish and Hoglan Plaintiffs
21  BY:  THOMAS E. MELLON, III
22       JAMES P. McCOY
22
23  COZEN O'CONNOR
23       Attorneys for Federal Insurance Plaintiff
24  BY:  SEAN P. CARTER
24       SCOTT TARBUTTON
25
```

```
                                                              2
        D6STTERC                    Conference
1                                   APPEARANCES
2    BERNABEI & WACHTEL
2         Attorneys for Defendant AHIF
3    BY:  ALAN R. KABAT
3
4    CLIFFORD CHANCE
4         Attorneys for Defendant Dubai Islamic Bank
5    BY:  RONI E. BERGOFFEN
5
6    OMAR MOHAMMEDI
6         Attorney for Defendants WAMY and WAMY International
7
7    LEWIS BAACH
8         Attorneys for Defendants IIRO MWL
8    BY:  ERIC LEWIS
9         AISHA HENRY
9         MARK LEIMKUHLER
10
10   DOAR, RIECK, KALEY & MACK
11        Attorneys for Defendant Yassin Abdullah Kadi
11   BY:  AMY ROTHSTEIN
12        PETER SALERNO, of counsel
12
13
14
14
15
16
17
18
19
20
21
22
23
24
25
```

3

D6STTERC                        Conference

1              (In open court)
2              DEPUTY CLERK:  This is a conference in the matter of
3   In Re: Terrorist Attacks on September 11.
4              Counsel, please state your names for the record.
5              MR. KREINDLER:  James Kreindler.  Good morning, your
6   Honor.
7              THE COURT:  Good morning.
8              MR. CARTER:  Good morning, your Honor, Sean Carter
9   from Cozen O'Connor for the Federal Insurance plaintiffs.
10             MR. HAEFELE:  Good morning, your Honor, Robert
11  Haefele, Motley Rice, for Burnett plaintiffs.
12             MR. KABAT:  Good morning, your Honor, Alan Kabat for
13  Al Haramain.
14             MS. BERGOFFEN:  Good morning, your Honor, Roni
15  Bergoffen on behalf of the Dubai Islamic bank.
16             MR. LEWIS:  Good morning, your Honor, Eric Lewis on
17  behalf of the Muslim World League and International Islamic
18  Relief Organization.  This is my first appearance, and I would
19  also like to introduce my partners Ms. Henry and
20  Mr. Leimkuhler.
21             THE COURT:  Good morning, and welcome.
22             MR. MOHAMMEDI:  Good morning, your Honor, Omar
23  Mohammedi on behalf of WAMY & WAMY International.
24             MS. ROTHSTEIN:  Good morning, your Honor, Amy
25  Rothstein of Doar, Rieck, Kaley & Mack for Yassin Abdullah
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

```
                                                           4
        D6STTERC                  Conference
 1   Kadi.
 2              THE COURT:  Also new to the party.
 3              MS. ROTHSTEIN:  Correct, your Honor.
 4              MR. SALERNO:  Peter Salerno, of counsel, from Doar,
 5   Rieck, Kaley & Mack for Kadi.
 6              MR. FLEMING:  Good morning, your Honor, Timothy
 7   Fleming, Wiggins, Childs, Quinn & Pantazis, appearing for the
 8   plaintiffs in the Havlish case as well as plaintiffs in the
 9   Hoglan case.
10              MR. TARBUTTON:  Good morning, your Honor, Scott
11   Tarbutton, Cozen O'Connor, for the insurance plaintiffs.
12              MR. GOLDMAN:  Good morning, your Honor, Jerry Goldman,
13   Anderson Kill for the O'Neil plaintiffs and the Plaintiffs'
14   Executive Committee.
15              MR. MELLON:  Good morning, your Honor, Tom Mellon on
16   behalf of the Havlish and Hoglan plaintiffs.
17              MR. McCOY:  Good morning, your Honor, James P. McCoy
18   on behalf of the Havlish and Hoglan plaintiffs.
19              THE COURT:  Good morning, everyone.  I see that the
20   mandate issued as to the remanded defendants yesterday.  And
21   one thing I wanted to take up with counsel is when I have been
22   getting letters, sometimes the type font has been shrinking,
23   and hence forth I would like all letters to be in at least 12
24   point font.  It makes it very difficult to read, particularly
25   when you have lengthy letter applications.
```

D6STTERC                    Conference

1      Dealing first with the issue of document discovery, I
2  guess more accurately, I confess I am a little confused because
3  I thought we -- and I understand there are additional
4  defendants now, but as to those defendants who have been along
5  for the ride thus far, I thought we had a document discovery
6  deadline.  I confess I'm not quite sure what it was at this
7  point, but I also had the impression that it expired and that
8  we were dealing with motions to compel or for sanctions.  But
9  both sides are talking about a schedule which is six months
10  out, so if somebody could enlighten me on how we got to another
11  rolling deadline, I would appreciate that.
12      MR. CARTER:  Your Honor, I think I can.  And I think
13  Mr. Lewis can probably chime in as well.  We were approached by
14  the new attorneys for the Muslim World League some months ago.
15  They raised a proposal that we afford them an opportunity to
16  attempt to cure some deficiencies in the document productions
17  that had a been made to date, asked us if we would give them
18  that opportunity in exchange for agreeing not to move for entry
19  of defaults at this time without waiving our right to move for
20  sanctions relative to anything we believe to have been a form
21  of misconduct to date.  And we said we were amenable to that
22  approach, provided that they could get the other defendants on
23  board and that we basically took a snapshot that was a limited
24  window to try and fix everything and get the complete universe
25  of documents to which we're entitled.

6

D6STTERC                    Conference

1        THE COURT:  That would put us to the end of the year,
2   and it seems to me also it affects Judge Daniels' schedule
3   because he contemplated motions for summary judgment I guess in
4   the fall or thereabouts.
5        MR. CARTER:  If he had that in mind, your Honor, it
6   had not been shared with us.  We did not have a --
7        THE COURT:  According to the last time he held a
8   conference, he didn't set dates clearly, but I thought he set
9   out the grand scheme of how he thought the case might go
10  forward.  Am I inventing that?
11       MR. CARTER:  I do not remember that at all, your
12  Honor.
13       THE COURT:  OK.  Well, I suppose with new counsel here
14  and hope springing eternal that's an appropriate extension of
15  time, so I will grant the six-month extension.
16       As to the remanded defendants, the objection that the
17  mandate has not issued obviously has gone by the boards.
18       There was reference in the defendants' letter to a
19  proposed July 31 deadline, and I tried to find the antecedent
20  to that and couldn't, so I'm not sure what the July 31 deadline
21  mentioned in the letter was.
22       MR. CARTER:  Your Honor, I think it was in response to
23  a proposal we had made that although there was a six-month
24  rolling production deadline, defendants who have been before
25  the Court for several years now in discovery should make an

7

D6STTERC                    Conference

1  effort to essentially wrap up their productions early on so
2  that we could use the remaining period of the six-month window
3  to do motions, analyze their documents, and try and bring as
4  much as possible to conclusion within the six months.  They had
5  objected to the proposal that their productions be due by
6  July 30 and said that they had voluminous materials and it will
7  take them essentially the full window is the suggestion.
8          I guess our view on that, your Honor, is that we think
9  there has to be some interim pressure points to keep people on
10 track here.  And whether or not it's a firm deadline for
11 completing productions or as an alternative, perhaps, just
12 regular status reports to the Court about what's been done,
13 what's been produced, and what remains to be done say on a
14 monthly basis, either way we're fine.  We want to avoid a
15 situation in which everyone takes the six months and says let's
16 sit on it until five months from now and dump everything at the
17 last day.
18         THE COURT:  Or say six months is inadequate and we
19 need another six months.
20         MR. CARTER:  Correct.  So we're really trying to
21 create a structure that keeps us on base.
22         MR. LEWIS:  Your Honor, if I may be heard.
23         THE COURT:  Please.
24         MR. LEWIS:  We had a very positive meeting after the
25 16th of April conference with your Honor when I said we are

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

D6STTERC                    Conference

1   committed and the client is committed to getting all of these
2   problems behind us.  We need time.  We also need to sit down --
3   we're not going to just ask you what you want, we have ideas
4   about where we think there are gaps.  But before we get on an
5   airplane to Islamabad or Jakarta, let's make sure we're on the
6   same page, particularly as there's going to be supplemental
7   requests.  Those are difficult logistical and security
8   environments, and we want to go once.
9           We have been asking for that meeting since April.  I
10  respect the fact that plaintiffs have had a lot on their plate
11  in the Court of Appeals, but we have said we have Arabic
12  speakers, we have a team ready to go, we are putting together
13  agendas.  We want to have the meeting before everyone starts
14  running around.  So I was somewhat surprised to see the July 30
15  smack in the middle of Ramadan, people aren't working more than
16  a few hours a day.  We are committed to moving forward quickly,
17  but we can't do it in a month, we can do it in six.  And I was
18  pleased to hear Mr. Carter say six months and your Honor grant
19  that.  And we'll give whatever interim reports your Honor
20  wishes, but we have no intention of waiting five months and
21  saying sorry, we need more time.  Our intention is to move
22  forward once we have a meeting of the minds to the best we can
23  with the plaintiffs.  Thank you.
24          THE COURT:  When are you going to sit down with
25  Mr. Lewis and his colleagues?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D6STTERC                    Conference

1            MR. CARTER:  Your Honor, we indicated to Mr. Lewis and
2    his colleagues we would give him dates early next week when
3    we're available.  And we also indicated we're more than happy
4    to provide essentially a list of where we think there are some
5    notable gaps that are illustrative to the problems.
6            But back to something your Honor said at a conference
7    previously, we think there has to be a comprehensive approach
8    on the part of the defendants.  We can't tell them what
9    documents they have that are responsive.  So the best we can do
10   is provide some examples, but the process has to be ongoing,
11   and really should have, in our view, been ongoing for some time
12   in recognition of the conversations we already had.  But we'll
13   set something up with the next couple of weeks.
14           THE COURT:  Why don't I say that by September 20th you
15   and Mr. Lewis will submit to me a written progress report, and
16   if need be I'll schedule a conference separately to deal with
17   any issues that relate to those defendants.
18           MR. LEWIS:  Yes, your Honor.
19           MR. CARTER:  Yes, your Honor.
20           THE COURT:  There's the proposal from the plaintiffs
21   that defendants, to the extent they can, serve consolidated
22   discovery requests so that you don't have respond to the whole
23   series of different and potentially overlapping requests.  I
24   know this came up in the last round or maybe two rounds ago,
25   and I didn't go back through the docket, but my recollection is

```
      D6STTERC                    Conference
 1    that I directed that that occur and that it was pretty much a
 2    disaster.  Do I have that wrong?
 3              MR. CARTER:  Your Honor, I don't think from our
 4    perspective it was a disaster.  There was some disputes over
 5    the scope of the consolidated requests, but it did alleviate
 6    the need to respond to those requests for six different
 7    defendants with slight variations, and at least we had one
 8    dispute over the consolidated request rather than five.  Part
 9    of our concern here really relates to the fact that many of the
10    remanded defendants are officials or former officials of
11    defendants who have been engaged in discovery for a very long
12    time.
13              THE COURT:  Say that again?
14              MR. CARTER:  They're officials or former officials of
15    entities that have been engaged in the discovery process for
16    some time.  So if you take the example, for instance, of
17    Defendant Basha, he is the director of the IRO.  He, I know
18    Mr. McMahon has said on a number of occasions, has himself been
19    involved in the discovery process to date.  It really does not
20    make much sense for Dr. Basha to serve discovery requests that
21    are identical to those that the IRO already served and covering
22    the same territory.  And in many cases some of these attorneys
23    have been involved already in the discovery process.  So that's
24    the focus of it from our perspective.
25              MR. KABAT:  Your Honor, could I please speak to that.
```

D6STTERC                    Conference
1    The issue with discovery with respect to the remanded
2    defendants is slightly distinct from the merit discovery
3    because the Second Circuit on May 27 in a slip opinion outlined
4    the areas for jurisdictional discovery.  So naturally we want
5    and our clients want information relating to those topics that
6    the Second Circuit outlined should not necessarily have been
7    covered --  So for that reason, Dr. Basha and the other people
8    mentioned would need to be able to serve their own discovery
9    related to the jurisdictional issues, and that both sides would
10   try to avoid any overlap.  Because of the different focus, I
11   don't think there could be that much overlap.
12           THE COURT:  You can correct me if I'm wrong, but I
13   don't think Mr. Carter would quarrel with that, or his
14   colleagues.  I think they're trying to avoid two things, one,
15   as you alluded to, needless duplication with prior requests,
16   but also getting a dozen different sets of requests when they
17   could be consolidation among the remanded defendants.  And I
18   think both of those are goals that should be pursued.
19           So I think what I will do is simply say that to the
20   extent possible the requests should not duplicate prior
21   requests, nor -- well, should not duplicate prior requests, and
22   additionally those defendants who were making jurisdictional
23   discovery requests -- and I recognize that there may be unique
24   aspects of each remanded defendant, but to the extent that
25   there's some commonality, there should be a set of common
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

12

D6STTERC                    Conference

1   requests.
2              I think that's essentially the ruling I made last
3   time.  I'm not sure it could be done any more precisely than
4   that, Mr. Carter.
5              MR. CARTER:  No, I think that's fine, your Honor.
6              THE COURT:  Perhaps I should have asked this earlier,
7   but how many defendants are in the case today, either as a
8   remanded defendant for jurisdictional discovery or as to merits
9   discovery?
10             MR. CARTER:  Your Honor, I'm going to put a sort of a
11  ballpark estimate at about 20.
12             THE COURT:  OK.  And how many of those are in
13  jurisdictional discovery?
14             MR. CARTER:  It would be the dozen remanded by the
15  Second Circuit.
16             THE COURT:  So no one else.
17             MR. CARTER:  Well, there was jurisdictional discovery
18  ongoing as to Rabita Trust.  There is obviously the motion
19  pending as to Rabita.
20             MR. KABAT:  Your Honor, I would just note that two of
21  the remanded defendants are deceased and there's been no effort
22  to made to substitute the estate for them.  And two other
23  remanded defendants were not represented on appeal, they're not
24  currently represented either.  So it's possible that we're only
25  dealing with eight remanded defendants who will actually

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
        D6STTERC                  Conference
```

1    participate in the case.
2            THE COURT:  OK.  I just wanted, as Mr. Carter put it,
3    a guesstimate, to see whether or not whether anything had
4    changed materially.
5            There's the issue of follow-up discovery and it seems
6    to me that follow-up discovery should be limited to reasonable
7    requests suggested by that discovery which is produced.
8    Frankly, I don't want to get mired in a request by request
9    review, but beyond stating it that way, I'm not sure what else
10   I can do to set guidelines for either side at this point.
11           MR. CARTER:  Your Honor, I think that there are two
12   sort of practical dimensions to this that we're concerned
13   about.  And the first, as identified in the letter, is this
14   concern about these individualized disputes over whether a
15   request is a legitimate follow up or new.  And that's of
16   particular concern to us because of some of the FOIA inquiries
17   that remain outstanding.  And what we perceive --
18           THE COURT:  When you say the FOIA inquiries, you're
19   speaking about FOIA requests that are currently being processed
20   by the government?
21           MR. CARTER:  Correct.
22           THE COURT:  I thought I convinced you not to make any
23   more FOIA requests.
24           MR. CARTER:  Your Honor, we don't mind turning the
25   stuff over consistent with your ruling.  Some of the FOIA

14

D6STTERC                    Conference
1    requests were made in 2003 and we're still waiting for them, so
2    we can't undo that.
3              But to sort of put a focal point on it, from about May
4    of 2012 through October of 2012 Dubai Islamic Bank and counsel
5    Clifford Chance were engaged in an ongoing dialogue with the
6    Treasury Department objecting to the Treasury's plan to release
7    certain documents to us.  So their intervention in the process
8    and objection to the Treasury actually served to delay
9    production of materials pursuant to FOIA until after the
10   original discovery deadline your Honor set.  And we suspect
11   that there's more of that going on in the background.  We don't
12   really want to fight about whether we're entitled to follow up
13   on information that's released to us by the government in
14   response to FOIA, just as an example.
15             And as a practical matter, your Honor, I don't think
16   this really relates as much to concerns about a new set of
17   discovery requests but rather many of the defendants objected
18   to discovery requests that we served in July of 2012 as
19   untimely at that time even though discovery hadn't ended.  And
20   it seems that the real effort here is to avoid answering
21   discovery that was served a year ago, and had it been answered
22   in due course, we would be well past this.  So we're going to
23   move to compel on those issues, we just didn't want the ruling
24   right now to go back in time and sort of bar discovery that had
25   been served long ago.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D6STTERC                    Conference
1           THE COURT:  If it was served previously and not
2      adequately responded to, I view that as a wholly separate issue
3      from somebody who received your discovery requests, responded
4      producing everything that they reasonably could find, and then
5      were served with a new battery of requests and said that these
6      should have been a part of what we looked at when we served
7      originally, which is a concern that Mr. Lewis was raising a
8      while ago.
9           MR. CARTER:  Your Honor, I think it has to do with the
10     stuff that was served a while ago in the prior period.  And to
11     the extent there are follow-up discovery requests, or in
12     certain cases the way that objections have been framed may
13     require us to rephrase some requests for the same subject
14     matter.  But that's all we're really asking for the opportunity
15     to do.
16          THE COURT:  And I think I'll have to deal with it on a
17     case-by-case basis.
18          In terms of the applications that I have received thus
19     far either to compel or for sanctions, I haven't ruled on any
20     of them because I was hoping to deal with them as they grew,
21     much the same way I know Judge Daniels helps the group deal
22     with substantive motions as a group.
23          With respect to Rabita Trust, there was a suggestion
24     in the letter that I was going to -- maybe I was misreading it,
25     but it sounded like there was a belief that I was going to
                        SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

D6STTERC                    Conference

1   undertake some sort of review of the in camera documents that
2   were submitted to me to determine whether they properly were
3   attorney-client material that couldn't be compelled.  Whereas
4   my view was they had been submitted -- I guess not just Rabita
5   Trust, but Jelaidan also, but they had been submitted simply to
6   show that those defendants had been proceeding in good faith
7   for whatever light it shed on the motion rather than something
8   where I was going to direct that potentially some documents be
9   turned over.
10              Is that consistent with plaintiffs' understanding?
11              MR. CARTER:  Your Honor, the scope of the review that
12  you outlined is consistent with our understanding.  I think the
13  one issue is that your Honor had identified in the context of
14  the review a letter to Habib Bank, I believe, and raised with
15  Mr. McMahon that you couldn't identify any reason why that
16  would have been deemed privileged and not turned over, and
17  asked Mr. McMahon to send it to us, and we still don't have it.
18  So that's the one example where the Court sua sponte sort of
19  raised a question about the scope of the asserted privilege.
20              THE COURT:  I remember that.  I will go back and look
21  at the document.  Mr. McMahon, as you all know, sent a letter
22  saying that he wanted to participate in this conference by
23  telephone but didn't phone in.  We tried to reach out to him
24  and weren't able to reach him.
25              There's also the issue of depositions.

D6STTERC                  Conference

```
 1              MS. BERGOFFEN:  Your Honor, if I may, before we move
 2    on to depositions, if I can could respond to a couple of
 3    Mr. Carter's points with regard to follow-up discovery,
 4    document discovery.
 5              THE COURT:  Yes.
 6              MS. BERGOFFEN:  Your Honor, just to be clear, what we
 7    want to avoid is plaintiffs being able to reuse the remand of
 8    the twelve additional jurisdictional discovery defendants to
 9    simply open up the flood gates to a slew of document requests
10    unrelated to the hundreds and hundreds of requests that were
11    served back in 2010.
12              Your Honor, the deadline to serve document requests
13    passed more than two and a half years ago.  While your Honor
14    extended the production deadline several times, including
15    through last August, almost a year ago, there is simply no
16    basis, nor have you extended the document request deadline
17    beyond 2010.
18              Now recognizing that it took a long time and very
19    extensive efforts on behalf of defendants to collect and
20    produce documents, we understand the nature of the need to have
21    extended the rolling production deadline, but that had nothing
22    to do with simply carte blanche allowing plaintiffs to serve
23    document requests whenever they wanted with regard to, quite
24    frankly, topics that were otherwise objectionable for a variety
25    of reasons, including being beyond the scope of Rule 26.  That
```

18

D6STTERC                      Conference

1    also, by the way, is this FOIA request that Mr. Carter alluded
2    to fall under the scope of things that wouldn't be covered
3    under the scope of Rule 26 that would be producible.  That
4    issue is not ripe for your Honor at this point anyway.
5             Nor, your Honor, is the reference that Mr. Carter made
6    to the supplemental requests that were validly objected to not
7    only on the basis of timeliness but for other reasons,
8    including being beyond the scope of Rule 26, which by the way,
9    your Honor, those were served almost a year ago, validly
10   objected to almost a year ago, and we never heard, before the
11   context of preparing for this hearing, any word from plaintiff
12   making any mention -- we simply never heard from them after
13   sending a letter upon receipt of their supplemental requests
14   and following up with formal objections, we never heard a
15   single word if them back on those, which, with all due respect,
16   indicates to me Dubai Bank and the other defendants completed
17   their production in August of 2012.  It's simply more of a
18   fishing expedition.  They're not pleased at this point with
19   what they found within the production, they're simply wanting
20   to reopen the possibility to go for more and more and getting
21   increasingly further away from the actual substance or relevant
22   issues in this case.
23            So we ask that any order that you issue today clarify
24   that following discovery for those merits defendants who have
25   been actively engaged in discovery be limited to things that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

19

D6STTERC                      Conference

1  are tied to valid motions to compel, follow up in connection
2  with motions to compel, and not simply opening it up for new
3  avenues of inquiry ten years into this case.
4             THE COURT:  Mr. Carter.
5             MR. CARTER:  Your Honor, it's a bit of an abstraction.
6  There's an idea of Pandora's box that is completely invented
7  for the purposes of making the argument.  The fact of the
8  matter is that we don't have documents from many of the
9  defendants.  They acknowledged that we don't have their
10  documents.  And it's really impossible to do a follow-up
11  discovery until we get the documents from really everyone
12  because there's interrelationships here.
13             So this has to be a two-way street.  There has to be
14  complete productions that we can go through making an
15  assessment of what is missing, maybe what has been withheld
16  from one party and we suddenly get a signal about from another
17  party.  We're not trying to prejudge the motion to compel as to
18  Dubai Islamic Bank.  The fact of the matter is that we have
19  been very active in targeting defendants sequentially in a way
20  that we thought made sense and wouldn't overburden the Court
21  all the once with 6,000 motions to compel.  And we're moving
22  through that process and we'll continue to do so.  But I think
23  the follow-up discovery order has always been there and we're
24  just intending to comply with it.
25             THE COURT:  I don't think this is something I can deal

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D6STTERC                    Conference
1    with in the abstract in the way that you've suggested.  I think
2    there have to be concrete examples.  And the discussion that
3    there may be an issue that becomes a non-issue or may become an
4    issue, that takes a lot of my time.  But beyond what I said
5    previously, I don't know that I can provide greater guidance to
6    either side at this point in time.
7              MS. BERGOFFEN:  Your Honor, one thing, recognizing
8    that I think there are two separate issues, and clearly we have
9    to deal with motions to compel regarding standing discovery
10   requests, what I'm trying to avoid is receiving in the next
11   couple of weeks a hundred more document requests dealing with
12   all sorts of new avenues that we would have to put in
13   objections and burden the Court with.  I think there might be
14   some sort of middle ground where they would be tied to valid
15   motions to compel.
16             THE COURT:  Unless I missed something in what
17   Mr. Carter is saying, it doesn't sound like you're going to be
18   getting a slew of requests in the next few weeks, because in
19   part he was saying it's contingent upon receiving documents
20   from the defendants so he can have a greater understanding of
21   what else he should be asking for.
22             And am I misunderstanding what you were saying?
23             MR. CARTER:  You're not.  And the other possibility
24   that we know we're likely to get information in response to
25   FOIA soon that could be relevant, but there's not some grand

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D6STTERC                    Conference

 1  set of document requests in the works on our end at all.
 2          THE COURT:  Let's move on to the issue of depositions.
 3  I have read both sides' submissions.  My view is that if a
 4  defendant wants to take a deposition before document discovery
 5  is complete, I don't see a reason why that shouldn't be
 6  allowed.  But they proceed at their own peril and are unlikely
 7  to get a second bite at the apple if, at the end of the
 8  document discovery period, there are additional documents they
 9  wish they had earlier and would like to question about.
10          MR. CARTER:  Your Honor, I think a good bit of our
11  concern relates to, for instance, third-party witnesses, former
12  government officials, if subpoenas suddenly go out to people --
13          THE COURT:  I thought we were focusing on parties.
14  Are there third parties that defendants contemplate deposing at
15  this point?
16          MS. BERGOFFEN:  There are, your Honor.
17          THE COURT:  Tell me why and who.
18          MS. BERGOFFEN:  Your Honor, plaintiffs have listed in
19  their 26(a) disclosures dozens of individuals, including
20  several current and former government officials from various
21  agencies, including the State Department, the CIA and the like.
22          Your Honor, if I may note, the process of taking these
23  depositions will -- we anticipate that there's a potential for
24  those agencies to try to pose (2)(a) type of requirements, and
25  it will be a long and drawn-out process, potentially.  We need

D6STTERC                    Conference

1   to be in a position, once we get through plaintiffs' most
2   recent production, to move forward in taking those depositions.
3          THE COURT:  Given the nature of what you're inquiring
4   about, I would be flabbergasted if there weren't objections as
5   to the present and former government officials.  I would be
6   somewhat surprised if there were areas that you're allowed to
7   inquire at the end of the process in any event.  But since
8   there's likely to be a convoluted process of getting to the
9   government saying what it is that can be inquired about, I'm
10  not sure I see a harm in allowing that process to go forward at
11  the same time as document discovery.
12         MR. CARTER:  Your Honor, if I may, part of the problem
13  and part of the reason we ended up in our position is because
14  when we had our meet and confer and the deposition issue was
15  raised, we asked:  Who do you intend to depose?  What's the
16  plan? And were told we're not going to disclose our deposition
17  strategy at this point.  So we were left in a complete vacuum
18  without an ability to appreciate whether this is a problem or
19  not.  Personally, I haven't conferred with everyone about this
20  because we're just hearing who is it now.  I don't think it's a
21  problem to initiate that process.  However, we do know that for
22  certain of these witnesses, the very agencies where they worked
23  are set in the relatively near future to release information in
24  response to FOIA.  So this a perfect example of where a
25  dialogue might be helpful with regard to a specific individuals

D6STTERC                    Conference
1    to try and make sure we have the documents when we go in there.
2              THE COURT:  Well, the start of the process is a notice
3    of deposition being served.  So as the process unfolds, you'll
4    certainly know which government officials or former officials
5    they're seeking to depose.  And if it impacts on FOIA requests,
6    you can have that discussion as you move forward.  But as just
7    in broad brush strokes I'm not going to say that depositions
8    cannot be taken as to party witnesses, understanding that there
9    may be not a second bite at the apple, and in particular to
10   these non-party present and former government officials where
11   there's likely to be a long road to go down before anybody can
12   actually take such deposition.
13             Is there something that you wanted to add?
14             MR. HAEFELE:  I'm unclear, your Honor.  When you say
15   the depositions of the party witnesses, I wasn't clear about
16   what your ruling was with regard to that.
17             THE COURT:  Well, in the broadest terms I'm not going
18   to say that at any point from now forward either side cannot
19   notice the deposition of the other side either as to an
20   organizational witness or as to an individual.  But what I said
21   earlier was if those depositions are taken before the document
22   discovery period is over, I will not look kindly upon a request
23   to continue the deposition, because if on the penultimate day
24   of the document discovery period you got some juicy documents
25   from the plaintiffs that you wished you had asked about, that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

D6STTERC                    Conference

1  would be too bad, I would not allow a second deposition.  That
2  obviously runs both ways.
3           MR. HAEFELE:  That raises two concerns on my part,
4  your Honor, number one is just recalling that we're still --
5  recalling and emphasizing we're still in liability phase only,
6  not damages.  And I just wanted make sure that's clear.
7           THE COURT:  Sure.
8           MR. HAEFELE:  Because I imagine that will be something
9  that defendants would be interested in deposing at least the
10 Burnett plaintiffs and the other individual plaintiffs.
11          And the other issue, your Honor, is it still seems to
12 touch on the fact that many of the documents have not been
13 produced, and when a witness is deposed there very well may be
14 a number of documents in the defendants' possession relative to
15 those witnesses, and that witness's deposition has been done
16 already.
17          THE COURT:  Well, they're not going to be able use a
18 document that they haven't produced to you.  And I understand
19 the concern that the witness might be sandbagged, but the
20 witness presumably is only capable of testifying about that
21 which he or she recalls, and so it's hard to see how that
22 prejudices truly an individual being deposed.
23          As to the extent that it applies, to the extent that
24 there are organizational witnesses being deposed pursuant to
25 Rule 30(b)(6), I suppose that is more of a concern.  But again,

25

```
D6STTERC                    Conference
 1   I think we'll have to deal with that in concrete examples
 2   rather than an abstraction
 3          MR. HAEFELE:  What's running through my mind is that
 4   the abstract and concrete is not something that I'm able to
 5   give good examples about when I say this.  The circumstance I'm
 6   contemplating is something where the defendants, for example,
 7   notice a deposition of a third-party witness, have documents in
 8   their possession that they haven't produced, do the deposition,
 9   and then we get the documents and the plaintiffs want to ask
10   more questions based on those documents of that particular
11   witness.
12          THE COURT:  Well, that would not have been you jumping
13   the gun, it would have been them jumping the gun.  And were
14   that circumstance to arise, I think I would be sympathetic to
15   your concern.  I think it really would be more where the person
16   noticing the deposition then seeks a second bite at the apple.
17   That's all I was talking about.
18          MR. HAEFELE:  Thank you.
19          THE COURT:  As to the schedule of sovereign immunity
20   defense motions and the issue of who ought to be setting the
21   schedule, when I first read the letters my impression was that
22   that certainly falls within the scope of my general pretrial
23   referral from Judge Daniels.  Frankly, to see whether I was
24   missing anything in that regard, I spoke to him this morning,
25   and I think it's safe to say we're both on the same page as to
```

26

D6STTERC                    Conference
1    that.
2            But in terms of the procedural context, I think both
3    of us are a little confused.  Judge Daniels had set a schedule
4    along the way for motions to dismiss.  It's not clear to him or
5    me why there are additional motions potentially coming before
6    him now not in the context of summary judgment down the road.
7    I understand somebody who is claiming sovereign immunity would
8    not want to go through discovery before filing a motion, but
9    it's not clear which defendants we're talking about or why the
10   motions are being filed now rather than some time ago.
11           Mr. Kabat.
12           MR. KABAT:  I'll speak to that.  When we represented
13   sovereign individuals and we filed our motions to dismiss, we
14   had both 12(b)(1) sovereign immunity and personal jurisdiction
15   claims.  Now moving forward here in 2010, shortly before Judge
16   Daniels issued his decision in the summer of 2010, the Supreme
17   Court came out with a decision called Samantar,
18   S-A-M-A-N-T-A-R, and the Supreme Court held that the Foreign
19   Sovereign Immunities Act did not apply to individual defendants
20   who instead would have to revert to the old common law
21   immunity.  And both we and the plaintiffs submitted
22   supplemental letters to Judge Daniels about that decision, but
23   within a month Judge Daniels issued his two decisions and he
24   only decided the personal jurisdiction defense against those
25   individual who also had the lack of subject matter

27

D6STTERC                    Conference

1    jurisdiction.
2               In our Second Circuit brief we pointed out that our
3    clients also have subject matter jurisdiction for failure to
4    state a claim, and the Second Circuit did not address those
5    other defenses.  And under Rule 12, I believe it's 12(h), a
6    jurisdictional defense can always be renewed, it is not waived,
7    it is not lost by the fact that part of the case was remanded.
8    And so we submit that those defendants have the right under
9    12(h) to renew their motion to dismiss for lack of subject
10   matter jurisdiction invoking the common law sovereign immunity.
11   And the contours of that are somewhat similar to the procedure
12   for sovereign immunity.  And I would note that there are
13   already two decisions out of this Court after Samantar that
14   applied the common law, so we already have fairly recent case
15   law on point.
16               A final observation I want to make is that the
17   government of Saudi Arabia ultimately makes the call to who
18   will be invoking sovereign immunity, and we are in discussions
19   with Michael Kellogg, the attorney for the kingdom, and we hope
20   to have a proposal ready to share with plaintiffs and Judge
21   Daniels at the July 16 conference as to exactly who will be
22   going forward with the renewed Rule 12(b)(1) motion.
23               MR. CARTER:  Your Honor, I guess a couple of problems.
24   We're not conceding that these defendants have preserved common
25   law immunity defenses at this time.  They raised FSIA defenses.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

D6STTERC                       Conference

1   They didn't have any right to remedies available under that
2   statute.  The Supreme Court made that clear.  Some courts have
3   since questioned whether a defendant who fails to raise a
4   common law claim maybe has in fact waived it.
5           But putting that aside for a moment, I think the issue
6   here is sort of twofold, what the track should be for any
7   potential common law immunity and the process should be, and
8   then second, whether or not the jurisdictional discovery that
9   was clearly directed to go forward by the Second Circuit should
10  happen along a parallel track.  With regard to that latter
11  issue, it seems to us quite clear the Second Circuit issued a
12  directive that the discovery proceed.  It was aware from the
13  briefing that these defendants had an intention of raising
14  common law immunity defenses.  The Second Circuit didn't pause
15  as a result of that indication in directing that discovery go
16  forward.  Were we to go down a path of litigating common law
17  immunity while discovery was stayed, we risk having ourselves
18  up on appeal, two, three times, potentially, and that doesn't
19  make sense.
20          In addition, it's quite likely that certain of the
21  discovery for personal jurisdiction would inform the common law
22  immunity issues.  I don't want to sort of litigate the
23  substance of those at this point, but it may very well save us
24  quite a bit of time to do that.
25          With regard to the process, it's quite clear that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

D6STTERC                    Conference

1    State Department should be afforded an opportunity to weigh in
2    with regard to these common law immunity doctrines.  We're
3    returning essentially to the regime that was in place under the
4    pre-FSIA era.  The normal course would be either for the
5    defendants themselves to seek a statement of interest from the
6    State Department, if they were so inclined, or for the Court --
7    either to ask for it from the Court or to direct the defendants
8    to ask for it.
9              And so before we talk about a briefing schedule, we
10   should really be talking about going to the State Department.
11   I have been involved in one case already where the State
12   Department's response to a request for a statement of interest
13   was to say that we think there are areas of discovery that need
14   to be conducted before we can weigh in and give you the view.
15   So it seems that that should happen first so we make sure that
16   we do everything efficiently and whatever record may later go
17   up is complete.
18             MR. KABAT:  Your Honor, I note that Rule 12(b)(1)
19   motions cannot be waived, and we have the absolute right to
20   bring them.  And whole purpose of immunity is not to give
21   immunity from lawsuits but also immunity from discovery.
22             THE COURT:  Well, I understand the theory, but even
23   though the defendants were relying on the FSIA and now has to
24   resort to common law immunity, there is the argument that that
25   defense has been waived.

D6STTERC                    Conference

```
 1              Without judging the merits of that, it seems to me we
 2   can't have this go on forever.  So my ruling with respect to
 3   what Mr. Carter raises is going to be that discovery in those
 4   narrow areas can go forward pending the motion practice.  If
 5   you want to take that up with Judge Daniels by way of
 6   objection, you certainly can.  I understand why you might, but
 7   that's going to be my ruling.
 8              In terms of the schedule for the motions, what are you
 9   proposing?
10              MR. KABAT:  We haven't actually discussed it.  Maybe
11   one month for the motion and one month for the opposition and
12   two or three weeks for the reply.
13              THE COURT:  Well, maybe what I simply ought to do -- I
14   understand plaintiffs take the view that this is something that
15   Judge Daniels should deal with, and I think it's safe to say
16   that he has a different view.  But why don't I simply say that
17   the two sides should confer because there are a number of
18   issues, as you understand, Mr. Carter, and submit a proposal to
19   me, either a single proposal, or like the letter that I
20   received before this conference, something that sets out each
21   side's position.  And while we're coming up on the holidays,
22   say within two weeks.  OK?
23              MR. CARTER:  That's fine, your Honor.
24              THE COURT:  As to the FOIA documents that initially
25   were listed on the privilege log and now have been withdrawn
```

31

D6STTERC                    Conference

1   because the plaintiffs conclude that they are not relevant, I'm
2   not sure why the mere fact that they were listed on the
3   privilege log suggests somehow that they're fair game if after
4   listing them the plaintiffs conclude otherwise.  Which is not
5   to say that at a deposition there couldn't be inquiry into the
6   reasoning behind that, and if need be, an application to the
7   Court.  But if somebody mistakenly lists something on a
8   privilege log, and it's not -- I will use the word "relevant,"
9   but it's not responsive to a request, then it seems to me
10  there's no particular reason why it should be produced.
11          Does anybody have anything they want to say in that
12  regard?
13          MS. BERGOFFEN:  The Dubai Islamic Bank doesn't have
14  any position.
15          MR. MOHAMMEDI:  As long as it's there by mistake it's
16  fine.  If they just decide they're not relevant, then that's an
17  issue.
18          MR. HAEFELE:  Your Honor, they shouldn't have been put
19  on the privilege log in the first place.  That's why we
20  withdrew them from on the privilege log.  And them not being on
21  the privilege log now, it seems to me that they don't need to
22  be produced.  The same way as the bank documents, they have
23  been withdrawn from the privilege log and they're not being
24  produced.  Honestly, I think if we produced them they would be
25  like:  Why are you flooding us with this stuff?  It means

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

32

```
      D6STTERC                  Conference
 1    nothing.
 2             THE COURT:  There's the Hoglan and maybe the Havlish
 3    plaintiffs' request to amend the complaint.
 4             MR. FLEMING:  Yes, your Honor.
 5             THE COURT:  You're Mr. Fleming?
 6             MR. FLEMING:  Yes, your Honor.  We're here today with
 7    respect to the Harlan case simply to -- we filed two motions
 8    that are pending.  The first is a motion for leave to amend,
 9    which added a number of plaintiffs, and then we filed a second
10    motion simply to supplement that because there was a slight
11    error in how one of the plaintiffs was described in terms of
12    both the claims themselves and -- her claim herself as well as
13    the estate that she was representing.  And so we filed those
14    and just seeking to -- hoping for an order to be able to amend
15    it.  And we also --
16             THE COURT:  Your letter describes this as a
17    technicality failing which you would simply institute a new
18    action.  But would we have statute of limitations problems?
19             MR. FLEMING:  We would, and because of that we did
20    file -- actually on the 60th day after the Havlish judgment was
21    entered we did go ahead and file the complaint in sort of an
22    abundance of caution trying to cover all our bases.  So there
23    is that concern, yes.  Because the National Defense
24    Authorization Act explicitly authorized filing cases that are
25    related to a timely case, which Havlish was, we think there is
```

33

D6STTERC                        Conference
1   no statute of limitations issue on that basis.  Of course, if
2   the defendants were to raise that as a statutory -- as an
3   affirmative defense, they might make an argument, but we think
4   it's pretty clear that the National Defense Authorization Act
5   authorizes filing of the case within 60 days after the final
6   judgment in Havlish.
7         THE COURT:  And I take it by virtue of who it is that
8   you're seeking to sue, I think there's no opposition to the
9   motion, is that correct?
10        MR. FLEMING:  There is no opposition to the motion, to
11  either motion, I should say.  As I say, the second motion is
12  only a technicality, really just a very --
13        THE COURT:  So both relate to Hoglan, the second
14  motion corrects an error in the first motion.
15        MR. FLEMING:  Yes, your Honor.
16        THE COURT:  And since there's no opposition, I see no
17  reason not to grant those, both of those motions.
18        MR. FLEMING:  When the Court does enter those, we will
19  be moving directly to the service phase.  We've got that ready
20  to go, the translations are done, and we will then be filing
21  also a lis pendens motion to follow that.
22        THE COURT:  You've got two separate orders.  Does it
23  make sense for this to be combined into one order?
24        MR. FLEMING:  We certainly could do that and deliver
25  it to your chambers.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

D6STTERC                    Conference
1              THE COURT:  Why don't do you that.  And as soon as I
2      receive it, I will sign it.
3              MR. FLEMING:  Thank you.  Your Honor, just want to
4      point out with respect to Havlish, a couple of small matters,
5      one is that we just wanted -- we have a lis pendens motion
6      pending there since March 30, 2012.  We supplemented that in
7      November of 2012.
8              THE COURT:  That's pending before Judge Daniels?
9              MR. FLEMING:  That's correct.  We are anticipating a
10     notification from the State Department of the final service,
11     completion of service through the diplomatic process.  When
12     that happens, which we are really hoping that will happen
13     within 10 to 20 days from now, based on what we understand has
14     already occurred, we will immediately be filing our motion for
15     a 1610(c) order.  And we are respectfully requesting as
16     expeditious consideration of that as possible because
17     enforcement proceedings are also commenced and are well
18     advanced.  So it would be very helpful for us to get the
19     1610(c) order rapidly and appreciate that.
20             THE COURT:  I will let Judge Daniels know that that's
21     an issue.
22             MR. FLEMING:  One last thing, very minor, I didn't
23     think I would bring it up, but I realized Mr. McCoy here who is
24     admitted in the Hoglan case pro hac vice and receiving
25     everything in Havlish as well.  Apparently you have not
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

```
                                                              35
        D6STTERC                   Conference
1    received the pro hac vice order in Havlish, and since he had
2    his shoulder to the wheel on the 1610(c) matter, I was hoping
3    we could get that signed so he could put his name on it.
4              THE COURT:  Every time I try to open the docket sheet
5    in this case my computer overheats, so if you let my chambers
6    know the ECF number we'll deal with that.
7              MR. FLEMING:  Thank you, your Honor.
8              MR. McCOY:  Thank you, your Honor.
9              MR. FLEMING:  That's all we had.
10             THE COURT:  OK.  There was also the plaintiffs'
11   request that defendants should be required to certify the
12   completeness of their productions and that they have undertaken
13   comprehensive searches, and the defendants' opposition to that,
14   but request that if I do order it, it run both ways.  Obviously
15   if I were to order it I would require that it run both ways,
16   but since the federal rules require that there be reasonable
17   searches undertaken, I'm not sure why I'm ordering something
18   that is an obligation to begin with.
19             MR. CARTER:  Your Honor, I think given the history,
20   and there have been a number of occasions in which a defendant
21   came to the Court and affirmatively stated all the responsive
22   documents had been produced and that it was done, and it
23   subsequently turned out that was retracted as a statement.  So
24   we're looking for some bench mark when some defendant would say
25   we're done, we produced everything and that's the end of it and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
     D6STTERC                    Conference
 1   we completed our search.
 2              MR. KABAT:  Your Honor, under Rule 26, any party,
 3   plaintiff or defendant, always has the right to supplement the
 4   production with discovery of evidence or evidence relating to
 5   expert witness issues.
 6              THE COURT:  Well, Rule 26(g)(1) says every discovery
 7   request, response, et cetera, must be signed by one attorney of
 8   record who then is certifying that to the best of that person's
 9   knowledge, information and belief, after a reasonable inquiry,
10   disclosure that issue is complete as of the time made, with
11   respect to a discovery request, response, objection consistent
12   with the rules or non-frivolous argument to extend them.  I'm
13   paraphrasing, obviously.  It really doesn't speak directly to
14   the issue that Mr. Carter was raising.
15              There's another section.
16              MS. BERGOFFEN:  Rule 26(e).
17              THE COURT:  I knew there were two.  That deals with
18   supplementation.
19              MS. BERGOFFEN:  That's what we're trying to avoid,
20   your Honor, is some certification that plaintiffs want to us
21   sign that defendants have searched and we don't have any more
22   documents that we could ever produce, and it's simply at odds
23   for the rule that allows for supplementation.
24              THE COURT:  I think I'm not going to require that at
25   the present time.  As we get closer to the end of the six-month
```

D6STTERC                    Conference

1    period I'm willing to reconsider that, but for the moment I'm
2    not going to require that.
3             Any other issues that we ought to be taking up today?
4             MR. KABAT:  We have a status conference with Judge
5    Daniels on July 16, and I wonder whether it makes sense to set
6    a discovery conference, just a place holder, maybe in early
7    August.  Maybe we can do that as part of our two-week report
8    that Mr. Carter and I will be making, maybe we could include
9    our available proposed dates.
10            MR. CARTER:  I think that makes sense, your Honor.
11            THE COURT:  Yeah, I agree.
12            Anything further?
13            I do note that Judge Daniels' chambers I think will,
14   as he has in the past, be reaching out to both sides shortly to
15   get some sort of heads up as to what issues might be raised
16   with him on July 16 conference, if it's held.
17            MR. CARTER:  Correct, your Honor.  There was one other
18   issue that we had intended to raise.  It related to some
19   concerns we had about the supplemental information that
20   defendant Jelaidan submitted related to the Bank of Austria,
21   but given that Mr. McMahon is not on the line, I will send your
22   Honor a letter.
23            THE COURT:  Fair enough.
24            Thank you all.  Have a good holiday.
25                            o0o

                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300