# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF ORGANIZATION TO PRODUCE RESPONSIVE DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a)

December 1, 2017

## Table of Contents

Page

I.  FACTUAL BACKGROUND ........................................................................................... 1

II.  DISCUSSION ............................................................................................................... 2

    A.  The 8 Categories of Documents Ordered Produced by Magistrate
        Judge Frank Maas on April 12, 2011 .................................................................... 3

        1.  MWL Constituent Council.......................................................................... 4

        2.  MWL and IIRO Branch Office Records..................................................... 4

        3.  MWL and IIRO Auditing Records ............................................................. 5

    B.  Additional Categories of Documents Ordered Produced by
        Magistrate Judge Frank Maas on April 27, 2011.................................................. 6

    C.  Records Concerning Senior Officials of the MWL and IIRO ............................... 7

        1.  Direct Dealings with Senior Saudi Officials.............................................. 8

        2.  MWL and IIRO Delegations....................................................................... 8

    D.  Records Concerning the MWL and IIRO and the Saudi
        Government............................................................................................................. 9

        1.  MWL and IIRO Annual Budgets.............................................................. 10

        2.  Saudi Government Ministries ................................................................... 10

        3.  Saudi Government Embassies.................................................................... 11

    E.  Records Concerning MWL and IIRO Committees, Boards,
        Councils and Internal Bodies .............................................................................. 12

        1.  MWL Fiqh Council................................................................................... 12

        2.  IIRO's Executive Committee, Board of Directors, Constituent Council,
            and Overseas Offices Committee.............................................................. 13

        3.  IIRO's Sanabel al Kheer Committee ........................................................ 13

        4.  MWL and IIRO Joint Committees............................................................ 14

        5.  Other MWL and IIRO Committees, Councils and Bodies ....................... 15

    F.  Records Concerning Investigations and Arrests of MWL and IIRO
        Personnel and Raids and Closures of MWL and IIRO Branch
        Offices.................................................................................................................. 15

    G.  Records Concerning MWL and IIRO Islamic Centers and Mosques.................. 16

    H.  Records Concerning Rabita Trust ....................................................................... 17

i

I.      Records Concerning Al Haramain Al Masjed Al Aqsa ......................................... 17

J.      Records Concerning the MWL's and IIRO's Support for Jihadist
        Universities ......................................................................................................... 18

K.      Other Categories of Relevant Documents............................................................. 18

L.      Missing Attachments ............................................................................................ 18

M.      Defendants' Failure to Properly Organize the Productions and
        Adequately Identify the Requests to Which They are Responsive....................... 19

III.    CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chemtex, LLC v. St. Anthony Enterprises, Inc.*,
   2004 U.S. Dist. LEXIS 6031 (S.D.N.Y. 2004) ........................................................................19

*Standard Dyeing and Finishing Co. v. Arma Textile Printers Corp.*,
   1987 U.S. Dist. LEXIS 868 (S.D.N.Y. 1987) .........................................................................19

*Wagner v. Dryvit Systems, Inc.*,
   208 F.R.D. 606 (D. Neb. 2001) ...............................................................................................19

**Other Authorities**

Fed. R. Civ. P. 34 ............................................................................................................................19, 20

Fed. R. Civ. P. 37 ..........................................................................................................................1, 2, 20

The Plaintiffs' Executive Committees, on behalf of all plaintiffs, hereby respectfully request that the Court order defendants Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO"), pursuant to Federal Rule of Civil Procedure 37(a), to immediately produce documents responsive to all categories identified herein, including relevant documents and information previously ordered produced by this Court on April 12, 2011 and April 24, 2011.

## I.     FACTUAL BACKGROUND

The history of discovery proceedings as to the MWL and IIRO, and extensive prior motion practice necessitated by both defendants' failure to comply with even the most basic discovery obligations and defiance of this Court's prior orders, is set forth in detail in the separate motion for sanctions filed on this same date, and an earlier sanctions motion submitted as an exhibit in support of the more recent sanctions motion.  Rather than restating those details at length in the present motion, plaintiffs incorporate the discussions in those submissions concerning the procedural history by reference.[1]

Further, plaintiffs engaged in at least half-a-dozen meet and confers and exchanged numerous correspondence between July 2013 and October 2017 with the defendants in an attempt to ensure not only that the MWL and IIRO complied fully with Magistrate Judge Frank Maas's April 12, 2011 and April 24, 2011 Orders requiring the production of fifteen (15) distinct categories of documents., but also to address additional categories of documents the MWL and IIRO had either refused or failed to produce.  *See, e.g.*, Letter from Sean P. Carter to Aisha Bembry, dated March 14, 2014, at Ex. 9 (identifying deficiencies in the MWL's and IIRO's productions); Letter from Sean P. Carter to Aisha Bembry, dated January 25, 2016, at Ex. 10

---

[1] Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to MWL on October 28, 2005, and their consolidated First Set of Requests for Production of Documents Directed to IIRO on December 13, 2005.  *See* Exs. 1 and 2.  Thereafter, plaintiffs served supplemental document requests on MWL in 2006 and 2013 and on IIRO in 2006, 2008, 2012, and 2013.  *See* Exs. 3 - 8 respectively.

(providing "detailed summary" of plaintiffs' "principal concerns" relating to the charities' productions); Letter from J. Scott Tarbutton to Aisha Bembry, dated April 22, 2016, Ex. 11 (identifying sixty-six (66) bank associated with the MWL and IIRO branch offices in Pakistan); Letter from J. Scott Tarbutton to Aisha Bembry, dated April 28, 2016, Ex. 12 (explaining several of plaintiffs' "principal concerns with the document productions").  Despite those efforts, plaintiffs maintain that the MWL and IIRO refuse to produce significant numbers of documents responsive to plaintiffs' discovery.  Accordingly, pursuant to Federal Rule of Civil Procedure 37(a), plaintiffs respectfully request that the Court order the MWL and IIRO to produce all documents discussed below.

## II.   DISCUSSION

At the outset, plaintiffs note that it would be impossible to identify every document that is missing from the defendants' productions, both because of the scale of the omissions and gaps, and due to the fact that it is impossible for plaintiffs to know information that is in the defendants' exclusive possession.  Nevertheless, plaintiffs' analysis of the documents that have been produced and independent investigations readily establish that the defendants have failed to produce scores of documents that are responsive to plaintiffs' document requests and, in many cases, fall within the scope of prior orders issued by this Court compelling production of documents in specified categories.  For purposes of the present motion, plaintiffs identify below several categories of documents of particular significance, and offer facts and evidence demonstrating that responsive documents in those categories still have not been produced.  These deficiencies warrant an order from this Court directing the immediate production of all documents in the identified categories and, to the extent the documents that remain missing and were the subject of prior orders of this Court directing the defendants to produce such

documents, the imposition of additional sanctions as well.  *See* Transcript of Sept. 7, 2017

Hearing at 9-10.

> **A.**    **The 8 Categories of Documents Ordered Produced by Magistrate Judge Frank Maas on April 12, 2011**

On April 12, 2011, Magistrate Judge Frank Maas ordered the MWL and IIRO to produce

responsive documents relating to the following 8 categories of documents:

1.    Annual, semi-annual, and other periodic financial reports of the MWL and IIRO (including the branch offices), such as annual reports, balance sheets, financial statements, bank account summaries, audits, etc;

2.    Lists of recipients of aid from the MWL or IIRO offices, to include lists which can be generated through any computer or electronic data storage systems of those organizations;

3.    All documents related to the annual Constituent Council ("Council") of the MWL, including without limitation, reports submitted by internal and external offices of the MWL and IIRO, studies and research papers considered during the annual Council meetings, records relating to the activities of Special Committees of the MWL and/or IIRO, transcripts or records of speeches and discussions during the Council meetings, resolutions and recommendations of the Council, agendas, etc.;

4.    Annual or periodic reports concerning the objectives and activities of the MWL and/or IIRO;

5.    Reports authored by delegations or groups sent by the MWL and/or IIRO to assess conditions and needs in regions outside of Saudi Arabia;

6.    Reports submitted by the field offices of the MWL and/or IIRO concerning their operations and finances;

7.    Summaries of disbursements by the MWL and IIRO; and

8.    Documents describing the organizational structure of the MWL and IIRO, including documents relating to the relationship between the various offices of those organizations and the relationship between the MWL and IIRO more generally.[2]

---

[2] During a lengthy meet and confer in October 2007, the MWL and IIRO originally agreed to produce these categories of documents on an expedited basis.  Plaintiffs were forced to file a motion to compel on March 16, 2011 after significant delays and continuing obstructionist behavior by the defendants.

Plaintiffs have raised Judge Maas's Order with the MWL and IIRO during several meet and confers, advising that there are significant and glaring omissions in the defendants' productions with respect to *each* of the 8 categories more than six years later.  Plaintiffs offer the following examples:

### 1.     MWL Constituent Council

Although the defendants have produced a limited number of documents relating to the MWL Constituent Council, the productions as to the Council remain woefully incomplete.  For example, it is well-documented that the Council receives and reviews numerous extensive reporting in connection with its annual conference, including without limitation, reports regarding the activities of all of the MWL offices (both in the Kingdom and abroad); reports detailing the financial activities of the MWL and IIRO, including reports concerning MWL and IIRO bank accounts; reports regarding MWL delegations to foreign countries, including trips by the MWL Secretary General; reports submitted by special committees of the Council; and reports relative to the IIRO's achievements and activities.  *See* Ex. 12 at 2-3 (describing the extensive reporting submitted to the 35th, 36th, and 37th Conferences of the MWL Constituent Council).  The MWL still has not produced the full spectrum of these and other documents relating to the Council, despite the Court's April 12, 2011 Order.

### 2.     MWL and IIRO Branch Office Records

For a majority of their overseas offices, the MWL and IIRO still have not produced a full, complete, and organized set of documents for the categories identified in the April 12, 2011 Order, including but not limited to financial and operations reports, bank account records, delegation records, donor lists, recipients of aid, and audits.  Moreover, there are numerous overseas offices for which plaintiffs have received very few, if any, responsive documents.[3]

---

[3] A few examples include MWL and IIRO branch offices in Afghanistan, Argentina, Austria, Brazil, Bosnia, Croatia, Dagestan, Kuwait, Lebanon, Pakistan, Romania, Russia, Somalia, Turkey, United Arab Emirates, and Yemen.

For instance, plaintiffs have submitted extensive evidence to the Court detailing the elaborate control systems implemented by the MWL and IIRO headquarters which allow for constant supervision over every aspect of the financial, administrative, and operational activities of each of the branch offices and their employees.  *See* Ex. 13 at 2-6.  As part of that oversight, *all* of the MWL and IIRO branch offices are required to regularly transmit reports to headquarters concerning their bank accounts, revenues and expenses, employees, donors, recipients of aid, projects undertaken by the branches in foreign countries, and a multitude of other issues.  *Id.*  While the MWL and IIRO have produced some reports for several of the offices, those productions are substantially incomplete for many of the charities' offices.

Even more troubling, the MWL and IIRO have failed to produce a complete and organized set of banking records for many of their offices in the Kingdom and overseas as directed by Judge Maas.  Plaintiffs provided the MWL and IIRO with several examples of these deficiencies, Ex. 10 at 5-6, and further identified another 66 bank accounts associated with the MWL and IIRO offices in Pakistan.  *See* Ex. 11.  To date, plaintiffs have not received a single document for most of those accounts.

### 3.    MWL and IIRO Auditing Records

Plaintiffs also do not have a full and complete production of documents relating to audits of the MWL and IIRO and their branch offices, including all underlying working papers and financial records supporting those audits as ordered by Judge Maas.  *See* Ex. 14 at 30-31. Plaintiffs raised this specific concern with the MWL and IIRO on multiple occasions during the meet and confer process, noting that the internal records of the MWL and IIRO indicate that audits of the branch offices are regularly conducted.  *See* Ex. 9 at 2-3 (discussing audits relating to the IIRO Pakistan and Indonesia offices); Ex. 10 at 1-2 (describing an audit of the IIRO Jordan branch).  Notwithstanding the parties' extensive discussions on this issue, the MWL and IIRO

still have not complied with the Court's April 12, 2011 Order and have failed to produce all responsive documents relating to the organizations' audits.

The MWL and IIRO productions are similarly deficient with respect to the other categories of documents identified above.  Accordingly, plaintiffs again respectfully request that the Court direct the MWL and IIRO to immediately comply with the Court's April 12, 2011 Order and produce all responsive documents for each of the aforementioned 8 categories.

### B.   Additional Categories of Documents Ordered Produced by Magistrate Judge Frank Maas on April 27, 2011

On April 27, 2011, Magistrate Judge Frank Maas further ordered the MWL and IIRO to produce responsive documents relating to the following categories of documents:

1.   The IIRO's relationship with, and employment of, al Qaeda co-founder Wa'el Hamza Jelaidan, including all transfers of money between the IIRO and Jelaidan;

2.   The IIRO's relationship with, and employment of, al Qaeda member Mohammed Jamal Khalifa, including Khalifa's role in heading the IIRO's office in the Philippines;

3.   The U.S. Department of the Treasury's Executive Order 13224 designations of the IIRO's branch offices in the Philippines and Indonesia "for facilitating fundraising for al Qaida and affiliated terrorist groups;"

4.   All operations of the Philippines and Indonesia branch offices, including but not limited to, bank account records, investment records, identification of employees, and contributions received and disbursements made by the offices;

5.   The U.S. Department of the Treasury's Executive Order 13224 designation of Abd al Hamid Sulaiman al Mujil, the IIRO's Executive Director of the Eastern Province branch, for using "his position to bankroll the al Qaida network in Southeast Asia," including all documents relating to al Mujil's tenure with the IIRO and the transfer of IIRO funds authorized by him and/or the Eastern Province Branch;

6.   Statements for all bank accounts held by the IIRO within the Kingdom of Saudi Arabia and abroad; and

7.     The expulsion of IIRO personnel from Pakistan following the September 11, 2001 attacks for their links to al Qaeda.[4]

The MWL and IIRO productions have significant gaps of missing documents for *each* of these categories as well.  For example, while the defendants have produced a handful of communications concerning Jelaidan and Khalifa, plaintiffs still do not have their complete personnel files, and there is almost a complete absence of documents relating to Jelaidan's role as head of the MWL and IIRO offices in Islamabad, Pakistan.  Responsive materials relating to the U.S designations of the IIRO branch offices and senior official are similarly absent, including relevant documents relating to internal investigations conducted by the MWL and IIRO in response to the designations.  Plaintiffs respectfully request that the Court order the charities to immediately comply with the Court's April 27, 2011 Order and produce all responsive documents for all categories.

**C.     Records Concerning Senior Officials of the MWL and IIRO**

Another significant omission of documents includes responsive materials relating to the senior leaders of the MWL and IIRO and their authority and supervision over the charities' operations and global activities.  *See* Ex. 1 (Req. Nos. 43, 49); Ex.2 (Req. Nos. 26, 68); Ex. 4 (Req. Nos. 1-8); Ex. 8 (Req. Nos. 1-8).  As this Court is aware, the individual charity official defendants have stated that they are relying on the productions of the MWL and IIRO to satisfy their discovery obligations.  However, the productions by the MWL and IIRO as to those senior officials is limited and spotty, at best.  There is no excuse for the defendants' failure to produce comprehensive records relating to the functions, activities, and roles of these officials.  Indeed, the limited documents produced thus far, and plaintiffs' independent investigation, demonstrate that the officials were prominent figures in the Kingdom and Muslim world, who in at least some cases were designated as Ministers of the Saudi government in their capacities heading the

---

[4] Plaintiffs filed an additional motion to compel on March 24, 2011 seeking targeted categories of documents directly relevant to the activities and relationships that prompted the U.S. government to designate two IIRO branch offices as terror support entities pursuant to Executive Order 13224 in 2006.

charities.  The officials had regular dealings with the most senior officials of the Saudi government, including the King, and numerous foreign officials.  The nature of their roles and dealings, and prominence of their status, make clear that the MWL and IIRO have highly organized files relating to every activity of these officials, but the productions include nothing of the sort.  The following examples are illustrative.

### 1.      Direct Dealings with Senior Saudi Officials

Limited documentation produced by the MWL and IIRO demonstrates that the Saudi King and members of the King's Royal Court personally engage in the oversight and management of the charities, including without limitation:  (i) regularly consulting with MWL and IIRO senior officials and policy making bodies regarding the charities' operations and activities; (ii) appointing high-ranking MWL and IIRO officials; and (iii) approving budgetary requests and other financial assistance administered by the charities.  *See* Ex. 12 at 3-4 (citing MWL and IIRO documents); *see also id.* at 4 (April 2016 letter) (detailing communications between the MWL and IIRO and Prince Sultan bin Abdul Aziz al Saud, Deputy Prime Minister and head of the Supreme Council for Islamic Affairs, including coordination with the Prince Sultan bin Abdul Aziz Committee for Relief).  These limited records indicate that the senior officials of the MWL and IIRO had regular and extensive contact with senior Saudi officials relating to the organizations' activities, but only isolated documents have been produced relating to those dealings.

### 2.      MWL and IIRO Delegations

Other materials further indicate that MWL and IIRO senior leadership regularly seek approval from the Saudi King to establish delegations to visit foreign countries; routinely receive instructions and orders from the King concerning the composition, objectives, goals, and messaging of the delegation; and present reports regarding the delegation's activities to the King

and other high-ranking members of the Saudi royal family at the conclusion of their mission.  It is clear that plaintiffs have yet to receive a full and complete production of responsive documents concerning delegations as directed by Judge Maas's April 12, 2011 Order.

Plaintiffs respectfully ask the Court to direct the MWL and IIRO to promptly produce all responsive documents relating to the senior officials of the MWL and IIRO as detailed above.

### D.      Records Concerning the MWL and IIRO and the Saudi Government

Early in the litigation, the MWL and IIRO submitted affidavit testimony in opposition to plaintiffs' March 2011 motion to compel, asserting that the IIRO was withholding an entire class of documents from production under the theory that they were records of the Saudi government, and therefore protected from discovery by virtue of the Kingdom's sovereign immunity defenses. *See* Affidavit of Sameer al-Radhi at <u>Ex. 15</u> at ¶ 16 (grouping IIRO's documents into (a) public documents and (b) privileged documents "which are protected by Saudi Arabia's privileges pursuant to the immunity defense").  Although MWL and IIRO eventually withdrew that position when challenged by the plaintiffs, the affidavit made clear that the MWL and IIRO possessed extensive records relating to the involvement of the Saudi government in their activities, and that the MWL and IIRO had a reluctance to produce those records.  Against this backdrop, it is particularly troubling that the MWL and IIRO have continued to withhold extensive records detailing the relationships between the MWL and IIRO and the Saudi government.[5]  Indeed, an analysis of the documents produced to date shows that the MWL and IIRO continue to withhold a trove of responsive documents that directly implicate high-ranking Saudi government officials and relevant Saudi government ministries in the supervision, management, funding, and decision-making of the MWL and IIRO.  For example:

---

[5] *See* <u>Ex. 1</u> (Req. Nos. 16-21, 23, 24, 28); <u>Ex.2</u> (Req. Nos. 27-32, 34, 35, 39).

### 1.   MWL and IIRO Annual Budgets

The annual budgets of the MWL and IIRO are established and funded by the Saudi government.[6]  Although the defendants have produced budget records for certain branch offices, financial records and communications between the charities and relevant government ministries relating to the overall budgets of the MWL and IIRO have not been produced.

### 2.   Saudi Government Ministries

The MWL and IIRO also have failed to produce responsive documents concerning the significant oversight and regulation of the charities' operations by a number of the Saudi government ministries, including the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs.  *See* Ex. 12 at 3.  As plaintiffs have demonstrated through expert testimony and supporting documents, the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs were established by the Kingdom to fulfill the state's obligation to spread Wahhabi doctrine globally.  *See* ECF No. 3403 ¶¶ 115-119.  The Supreme Council for Islamic Affairs and Ministry of Islamic Affairs planned and implemented the Kingdom's policies through their funding, supervision, and direction of the individual charities, including the MWL and IIRO.  *Id.*  Indeed, plaintiffs' evidence and the limited number of documents received from the charities directly relevant to this issue, show close cooperation and coordination between the MWL and IIRO and the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs on a broad range of policy and strategic considerations, as well as with other government ministries such as the Council of Ministers, Ministry of Foreign Affairs, Ministry of Finance, and others.  *See* Ex. 12 at 3, n.1.  In fact, the royal decree establishing the Supreme Council for Islamic Affairs directed that the membership of the Council would include the Secretary General of the MWL.  Despite

---

[6] *See* Affirmation of Evan Francois Kohlmann at Ex. 16 at ¶ 46 (stating that the Kingdom funded the MWL with annual subsidies between 80 million and 1 billion Saudi riyals); ¶ 49 (describing that funds "are paid from government bank accounts with government funds"); ¶ 73 (stating that the IIRO has received annual grants of several million Saudi riyals from the Saudi government).

these facts, plaintiffs have received only limited information from the MWL and IIRO relating to its dealings with these government bodies.

### 3.     Saudi Government Embassies

Available information also establishes that the Saudi embassies play a critical role in implementing the policies and decisions of the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs by closely supervising, directing, and participating in the activities of the MWL and IIRO overseas branch offices.  *See* Ex. 16 at ¶¶ 59, 89.  Indeed, the operations of the MWL and IIRO outside of the Kingdom are regularly executed under the direction of a joint committee consisting of the Saudi ambassador, other Saudi embassy personnel, and employees of the MWL and IIRO branch offices.  *Id.* at ¶ 89 ("IIRO Secretary General Adnan Basha explained that, when IIRO cooperates as part of a joint committee with the Saudi embassy, it operates under the supervision of the Saudi embassy.").  As an example, the Saudi embassies in Afghanistan and Pakistan exerted tight control and oversight over the operations of the MWL and IIRO branch offices in those countries by formulating their work plans, controlling their access to the media, establishing delegations to include MWL and IIRO personnel, and directing the MWL and IIRO to carry out Saudi government projects in aid of the Taliban.

Despite these documented relationships, the production of responsive documents relating to the role of the Saudi government embassies in the funding, operations, and global activities of the MWL and IIRO, remains substantially incomplete.  Plaintiffs respectfully ask the Court to order the MWL and IIRO to promptly produce all responsive documents as requested by the plaintiffs.

### E.     Records Concerning MWL and IIRO Committees, Boards, Councils and Internal Bodies

Plaintiffs have on numerous occasions also emphasized the need for the MWL and IIRO to produce responsive documents identifying all committees, boards, councils, and other internal bodies within those organizations, and all individuals holding positions within those committees and internal bodies.  *See* Ex. 1 and 2 (Req. Nos. 3-4).   Moreover, with respect to the senior policy making bodies of the MWL and IIRO, plaintiffs expressed an urgent need for a complete and organized production of all documents relating to the meetings and decisions of those bodies.  *Id.* (Req. No. 5).   Notwithstanding those repeated requests, the MWL and IIRO continue to withhold responsive materials relating to the charities' committees and councils, including the numerous reports routinely submitted to those policy making bodies as previously ordered by Judge Maas in 2011.  The following examples are illustrative:

### 1.     MWL Fiqh Council

Plaintiffs recently discovered the existence of the MWL's Fiqh Council as a result of their independent investigations.  The Fiqh Council, established by resolution of the MWL Constituent Council in 1977 and co-chaired by the MWL Secretary General, is comprised of Islamic scholars who debate issues concerning the Muslim community and thereafter publish resolutions and recommendations based on the Quran and Islamic Shariah.[7]  The Fiqh Council has issued a resolution encouraging "armed *Jihad*" against the "ideological and intellectual onslaught by atheists, Jews, Christians and other enemies of [Islam]," stating that "it is the duty of Muslims as well to confront them with the same arms and equipments that are used against Islam."  *See* Ex. 17 at 220-221.  This example underscores the paramount relevance of the records relating to the Fiqh Council's activities, studies, meetings, and fatwas, yet plaintiffs learned about it only as a result of their independent investigations.

---

[7] *See* http://en.themwl.org/content/islamic-fiqh-council-0.

### 2.    IIRO's Executive Committee, Board of Directors, Constituent Council, and Overseas Offices Committee

The MWL and IIRO have produced a number of meeting minutes for the IIRO Executive Committee, IIRO Board of Directors, IIRO Constituent Council, and IIRO Overseas Offices Committee, but significant gaps in the minutes remain outstanding as identified in Exs. 18, 19, 20, and 21.  As but one example, the IIRO Executive Committee and IIRO Board of Directors have both failed to produce meeting minutes for a one-year window surrounding the September 11th attacks, inferring an intent to withhold damaging information.  Plaintiffs respectfully submit that any meeting minutes or summaries detailing discussions by senior MWL or IIRO officials concerning the attacks, and/or the public accusations immediately following the attacks that the MWL and IIRO provided material support to Osama bin Laden and al Qaeda, is highly relevant and should be produced.

Additionally, the meeting minutes for the aforementioned committees identify numerous reports that were submitted for review and discussion by senior IIRO officials, but do not appear to have been produced.  *See* Ex. 12 at 5-6 (citing a few examples).

### 3.    IIRO's Sanabel al Kheer Committee

The IIRO Executive Committee minutes contain numerous references to Sanabel al Kheer (IIRO's own internal investment arm) (a/k/a Sanabel al Khair), and the establishment of a special committee to review financial irregularities relating to investments maintained by Sanabel al Kheer.  The membership of that committee included prominent al Qaeda financiers Sulaiman al Rajhi, Saleh Kamel, Ibrahim Afandi, and Abd al Rahman Abd al Kader Faqih.  Despite multiple requests for the production of documents relating to Sanabel al Kheer[8] and the Sanabel al Kheer Committee,[9] plaintiffs to date have only limited documentation relating to both entities.  The egregious nature of the absence of any document regarding the Sanabel entity is

---

[8] *See* Req. Nos. 22, 23, 46, 47 51 at Ex. 2.
[9] *See* Ex. 9 at 5; Ex. 10 at 3-4 (January 2016 letter).

magnified by the fact that the person the defendants engaged to aid counsel in producing the documents, Sameer al Radhi, was at least for some relevant period, the Deputy Director of Sanabel al Kheer. *Compare* Ex. 22 (IIRO 112079) (Letter dated July 3, 2001, from IIRO Secretary General Adnan Basha to Samir Radi), and Ex. 23 (Transcript of April 12, 2011 hearing at 28, 33, 36, 38 (MWL/IIRO counsel explains that Sameer al-Radhi has been deeply engaged in facilitating defendants' productions)).  Plaintiffs respectfully submit that all documents relating to the Sanabel al Kheer Committee and its review of the organization's investments, and all other documents relating to the IIRO's relationship to Sanabel al Khair should be immediately produced.

### 4.      MWL and IIRO Joint Committees

Operations of the MWL and IIRO overseas branch offices are carried out under the direction of a joint committee consisting of Saudi embassy personnel and employees of the MWL and IIRO branch offices.  *See supra* at 11.  For example, the Saudi Coordination Committee in Kenya is headed and supervised by the Saudi Ambassador in Kenya who oversees and directs the activities of the charities in that country.  Members of the committee include the religious affairs attaché at the embassy and representatives from the MWL, IIRO, Al Haramain Islamic Foundation, and World Assembly of Muslim Youth ("WAMY").[10]  MWL and IIRO productions relating to these committees remain substantially incomplete.

---

[10] MWL062668-62669, MWL063317-63322, MWL062575.  *See also* Ex. __ (IIRO120169) (December 25, 2002 letter from the IIRO Secretary General to the Saudi Ambassador to the Philippines stating that the IIRO's relief operations in that country are carried out with the cooperation of the Saudi Embassy, typically through a joint committee consisting of the IIRO office and embassy personnel.  "Accordingly, I would like to inform you that the relief campaigns of immediate relief programme, when executed under the supervision of Saudi Embassies in the countries are made by a joint committee between the office of the [International Islamic Relief] organization and the embassy, under the supervision of his Excellency the Ambassador."

### 5.     Other MWL and IIRO Committees, Councils and Bodies

Notwithstanding the defendants' resistance to identifying all committees, councils and

other internal bodies within those organizations, plaintiffs have identified a number of relevant

MWL and IIRO committees through their independent investigations, or which were briefly

mentioned in the IIRO meeting minutes, including but not limited to:  IIRO Investment

Committee, IIRO Women's Committee,[11] IIRO Mosques Committee, IIRO Communications

Committee, IIRO Administrative and Finance Committee, IIRO Liability Committee, IIRO

Da'awa and Education Committee, IIRO Da'awa and Preachers Committee, IIRO Social

Committee, MWL/IIRO Shariah Advisory Committee, MWL/IIRO Kashmir Committee, MWL

Political Committee, MWL Overseas Islamic Centers Administration, MWL Da'awa Affairs

Administration, MWL Supreme Commission for Islamic Media, MWL Supreme Commission for

Human Development, and World Supreme Council for Mosques.  Plaintiffs again request that

the Court order the MWL and IIRO to produce responsive documents identifying all committees,

boards, councils, and other internal bodies within those organizations.

### F.     Records Concerning Investigations and Arrests of MWL and IIRO
####        Personnel and Raids and Closures of MWL and IIRO Branch Offices

The defendants' productions also remain woefully incomplete regarding investigations

and raids of MWL and IIRO offices, and related arrests of MWL and IIRO personnel, for the

alleged sponsorship of terrorist, extremist, or criminal activities.  For example, a partial audit

conducted by a Pakistani affiliate of Ernst & Young of funds distributed by IIRO's Saudi

headquarters through its branch office in Pakistan, completed just before the September 11th

attacks and covering the period between January 1996 through February 2001, found that over

half of the funds distributed through the office – totaling millions of dollars – could not be

---

[11] The IIRO Women's Committee was populated with several members of the bin Laden and bin Mahfouz (al Qaeda charity front Muwafaq Foundation) families and transferred money to families of Shaheeds (Muslim martyrs). Plaintiffs specifically requested a complete production documents relating to this committee but have so far not discovered any such documentation per their review of the recent productions from the defendants.  *See* Ex. 9 at 5.

accounted for, and that senior officials of the IIRO had engaged the wholesale fabrication of invoices, receipts and entire projects to conceal that activity. Plaintiffs provided numerous examples of these investigations and arrests during the meet and confers but have yet to receive any meaningful production of documents relating to those events. *See* Ex. 9 at 4; Ex. 10 at 4-5. There can be little doubt that given the defendants' global activities and their interests in protecting the organizations' international reputations, MWL and IIRO leadership treat these incidents very seriously and maintain internal files and records relating to those events, including documentation detailing their own internal inquiries of those investigations, raids, and arrests.

The defendants' productions also make clear that various IIRO personnel, including high-level branch office officials, were removed from their positions as a result of internal inquiries and investigations conducted by MWL and IIRO headquarters. *See* Ex. 10 at 4-5 (citing example of Abdel Aziz Zaher, IIRO's Regional Director in the Balkans who has multiple links to al Qaeda, was removed from his position by his IIRO superiors in 1996). The MWL and IIRO productions continue to lack any materials relating to these internal investigations of their own personnel.

### G.     Records Concerning MWL and IIRO Islamic Centers and Mosques

MWL and IIRO productions have included documents evidencing the charities' direct involvement in the establishment, funding, management, and oversight of dozens of Islamic centers and mosques around the world. As plaintiffs have alleged, the construction of Islamic centers and mosques outside the Kingdom and the deployment of thousands of radical Wahhabi clerics to teach at those Islamic centers and mosques, was a critical goal and function of the Ministry of Islamic Affairs in support of its mission to propagate Wahhabi Islam globally. According to the documents, the MWL and IIRO were responsible for funding and managing Islamic centers and mosques in Brussels, Belgium; Madrid, Spain; Rome, Italy; Edinburgh,

Scotland; Vienna, Austria; Geneva, Switzerland; Gennevilliers, France; Hamburg, Germany; Tucson, Arizona; Warsaw, Poland; and others.  To date, plaintiffs have not received a full and complete production of documents concerning the MWL and IIRO's relationship with those Islamic centers and mosques.

### H.  Records Concerning Rabita Trust

Rabita Trust, a Saudi da'awa organization co-founded by the MWL, was designated by the U.S. government as a Specially Designated Global Terrorist ("SDGT") on October 12, 2001 "for its close ties to senior al Qaida leadership and for providing logistical and financial support to al Qaida.'  *See* Ex. 25 at 1 (stating that Wa'el Hamza Jelaidan, "a close associate of Usama bin Laden," served as Rabita Trust's Director General).  As evidenced in certain documents produced in the litigation, the MWL held a significant role in appointing officials to Rabita Trust (including Jelaidan), and in the oversight of that entity's financial and operational activities.  Nevertheless, despite the intimacy of the relationship between the MWL, IIRO and Rabita Trust, including evidence that the IIRO took possession of all documents relating to Rabita Trust in Pakistan, the defendants have produced only a very limited number of records concerning Rabita Trust.

### I.  Records Concerning Al Haramain Al Masjed Al Aqsa

Al Haramain Al Masjed Al Aqsa was also designated by the U.S. government as a SDGT on May 6, 2004 for having significant ties to al Qaeda financier Wa'el Jelaidan.  *See* Ex. 26 at 2.  According to documentation produced in discovery by the MWL, Al Haramain Al Masjed Al Aqsa was formally incorporated into the MWL in 1998.  Notwithstanding a handful of documents referencing the incorporation of that entity into the MWL, plaintiffs have received very few records pertaining to Al Haramain Al Masjed Al Aqsa, or the relationship between Al Haramain Al Masjed Al Aqsa and the MWL.

### J.      Records Concerning the MWL's and IIRO's Support for Jihadist Universities

Various documents produced by the MWL and IIRO point to the charities' relationships

with certain Islamic universities and colleges that are linked to Islamic extremism and terrorism,

including evidence of financial support from the MWL and IIRO to those universities.  Some of

those universities include Da'awa al Jihad University, Madrasatul Hejrat al Jihad, International

Islamic University, Islamic University for Sciences and Technology, Athari University, Al Ansar

Institute, and Yala Islamic College.  Only a very limited number of documents records

concerning these organizations has been produced.

### K.      Other Categories of Relevant Documents

The MWL and IIRO have additionally not produced full, complete, and organized sets of

documents for other relevant categories:

- Records concerning the IIRO's relationship with the Third World Relief Agency ("TWRA"), Dr. El Fatih Hassenein, and Sukarno Hassanein.  *See* Ex. 7 (Req. Nos. 1-11).

- Records or lists identifying IIRO employees in Afghanistan, Bosnia, Chechnya, Croatia, Indonesia, Kosovo, Macedonia, Pakistan, Philippines, Slovenia, or elsewhere.  *See* Ex. 7 (Req. No. 17).

- Records concerning the MWL's and IIRO's relationship with the Saudi Joint Relief Committee ("SJRC"), Saudi High Commission ("SHC"), Saudi Red Crescent Society ("SRC"), Al Haramain Islamic Foundation, World Assembly of Muslim Youth ("WAMY"), and da'awa organizations.  *See* Ex. 1 (Req. Nos. 30-33); Ex. 2 (Req. Nos. 46-47, 93).

### L.      Missing Attachments

Plaintiffs' review of the defendants' document productions discovered countless

circumstances where attachments and enclosures to MWL and IIRO communications were not

found within the bates range immediately following the document.  *See* Ex. 10 at 2 (advising that

that an enclosure to a letter to the IIRO Secretary General – a collection of documents complied

by the IIRO concerning financial diversions from the Pakistan office, and assembled for potential submission to Pakistani police – was not produced).

### M. Defendants' Failure to Properly Organize the Productions and Adequately Identify the Requests to Which They are Responsive

In connection with the discussions with counsel for MWL and IIRO, the PECs have on a number of occasions raised significant concerns regarding the lack of organization of the defendants' productions, and the relative uselessness of the Indices the MWL and IIRO have provided, which purport to identify the requests to which documents are responsive.  Plaintiffs have asked the MWL and IIRO to cure these deficiencies on numerous occasions, but they have failed to do so.  They should be compelled to do so at this time.

During the meet and confer process, plaintiffs noted that there was no internal order to the documents as produced by the MWL and IIRO, and that documents related to a particular incident or subject are often separated by thousands of records relating to entirely different matters.  Counsel for the MWL and IIRO acknowledged the disorganization of their clients' records, but it asserted that there was no impropriety to the productions, based on the representation that the records were maintained in such a disorganized manner by the MWL and IIRO in their own offices.  On that basis, counsel for the MWL and IIRO claimed that the defendants had complied with their discovery obligations by producing the documents "as they are kept in the usual course of business."  Fed. R. Civ. P. 34(b)(2)(E)(ii).  The defendants' efforts to seek solace in that provision of Rule 34 is misplaced.[12]

---

[12] *See Standard Dyeing and Finishing Co. v. Arma Textile Printers Corp.*, 1987 U.S. Dist. LEXIS 868 at *5 (S.D.N.Y. 1987) (holding that when the responding party has failed to maintain its records in a reasonable manner, it must bear the burden of searching the available records for documents responsive to plaintiffs' document requests); *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 2004 U.S. Dist. LEXIS 6031 at *2 (S.D.N.Y. 2004) (holding that a party is not permitted to avoid its discovery obligations simply because it has failed to maintain its records in a manner that makes them easily retrievable); *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information.").

In this regard, counsel for the MWL and IIRO acknowledged during the parties' discussions that the MWL and IIRO had removed scores of records from the files in which they were maintained during initial efforts to segregate potentially responsive records. By virtue of this removal of the records from the files in which they were stored and the segregation of those records from other related documents, there can be no dispute that the records have not been produced in the manner in which they were kept in the ordinary course of business. As a result, the MWL and IIRO were obligated to "organize and label (the responsive documents) to correspond to categories in the request." *Id.* The MWL and IIRO have not done so.[13]

### III.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court enter an order pursuant to Federal Rule of Civil Procedure 37(a), directing defendants Muslim World League and International Islamic Relief Organization to immediately produce documents responsive to all categories identified herein, including relevant documents and information previously ordered produced by this Court on April 12, 2011 and April 24, 2011.

Dated:  December 1, 2017                  Respectfully Submitted,

                                          /s/ J. Scott Tarbutton
                                          Sean P. Carter, Esq.
                                          J. Scott Tarbutton, Esq.
                                          COZEN O'CONNOR
                                          1650 Market Street, Suite 2800
                                          Philadelphia, PA 19103
                                          Tel:  (215) 665-2000

---

[13] Even if the MWL and IIRO had produced the records in the manner in which they were stored, it would not be able to allow the chaotic and disorganized nature of its own filing systems to frustrate plaintiffs' efforts to conduct discovery. The MWL and IIRO's reliance on the Indices they have produced in connection with their document productions, in an effort to create the appearance of compliance with the requirements of Rule 34(b)(2)(e)(i), is likewise misplaced. Indeed, the Indices do nothing to organize the documents themselves, as required by the Rule.

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050
New York, New York 10165
Tel:  (212) 944-2200

Christopher T. Leonardo, Esq.
ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South
Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendants Muslim World League and International Islamic Relief Organization to Produce Responsive Documents Pursuant to Federal Rule of Civil Procedure 37(a), was filed electronically this 1st day of December 2017.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.


           /s/ _____

           J. Scott Tarbutton, Esq.

LEGAL\33478680\1 00000.0000.000/117430.000