# EXHIBIT 9


COZEN
O'CONNOR

March 14, 2014

**Sean P. Carter**
Direct Phone 215-665-2105
Direct Fax 215-701-2105
scarter1@cozen.com

Aisha Bembry, Esquire
Lewis Baach, PLLC
1899 Pennsylvania Avenue, NW
Washington, DC 20006

Re:   *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (FM)
      Our File No.: 117430

Dear Aisha:

We submit this letter in response to your email request of March 10, 2014, in which you ask that we "identify any discrete issues or perceived deficiencies with the MWL's and IIRO's productions at this stage."

At the outset, we should stress that it would be impossible for plaintiffs to provide a comprehensive catalog of the deficiencies in the productions by the MWL and IIRO at this stage. However, we have attempted through this correspondence to provide examples of responsive documents and categories of documents, relative to which the productions remain incomplete. Again, we emphasize the examples surveyed below should not be viewed as some sort of "shopping list" that would displace plaintiffs' discovery requests.

As you will note, many of the issues surveyed below were previously raised during our lengthy meet and confer on July 16, 2013, and in our view remain largely unaddressed. Given the very specific discussions we had during the July meet and confer regarding particular documents that had not been produced, and key categories of documents for which the productions were incomplete, we are particularly concerned by the continuing gaps in these areas. In addition, the manner in which documents have been produced since our meeting in July, and the indices identifying the request to which those documents are responsive, have given rise to some additional concerns, also addressed below.

We hope this summary proves helpful in your engagements with your clients relating to their searches for responsive documents, and would of course welcome the opportunity to discuss any of these issues in the near future.

1.   <u>Process Issues</u>

Since our meet and confer in July, the MWL and IIRO have produced approximately 91,132 additional pages of documents. In connection with those productions, the MWL and IIRO have provided indices, updated with each production, that purport to identify the discovery request to which the documents being produced are responsive. From our conversations with

Aisha Bembry, Esquire
March 14, 2014
Page 2

---

you, we understand that efforts have been ongoing to collect responsive materials from various offices of the MWL and IIRO, located both within the Kingdom and elsewhere.

In connection with the more recent productions, the MWL and IIRO have not identified the office location in which the responsive materials originated and/or were retrieved. This fact renders it difficult for plaintiffs to fully assess the significance of the documents, and to determine the adequacy of the search of the repository from which the documents were retrieved. We trust you have a thorough record of the locations from which the documents were retrieved, and would ask that you supplement the productions to provide that information for documents previously produced. We would also ask that you identify the location of origin for documents produced in the future.

With regard to the indices provided by the MWL and IIRO, large numbers of irrelevant and unresponsive documents have been identified as responsive to particularized discovery requests. As but one example, the IIRO has designated approximately 14,800 pages as responsive to one or more of the 25 requests in Plaintiffs' Second Supplemental Requests for Production of Documents. Those requests pertain to the designations of IIRO offices and personnel. Of the 14,800 pages identified as responsive, we believe only a fraction are in fact relevant to the referenced requests. The designation of thousands of pages of irrelevant materials as responsive to a particular request wastes valuable time and resources. We would therefore ask that greater care be taken in connection with these designations, and that the IIRO and MWL review the existing indices and revise the designations appropriately.

2.      Financial, Banking and Auditing Records

As you know, the Court issued a series of Orders (following extensive motion practice), directing the MWL and IIRO to produce a broad spectrum of financial, banking and auditing documents. During the meet and confer in July, we noted that there were rather obvious and significant gaps in the productions made with respect to those categories, notwithstanding the Court's very specific orders. By way of example, we noted that documents produced by the IIRO identified numerous banks within Saudi Arabia, where the IIRO held accounts during relevant periods. However, we had not at that time received any records pertaining to the accounts at the majority of those banks. Similarly, the internal documents reflect that each of the branch offices maintained at least one local bank account in the country where it was operating, yet we had not received any local banking records for the majority of the IIRO offices. We further explained that, even where limited production of banking records had been made, the IIRO had simply produced bank statements for relevant accounts, and had not provided any banking records other than statements. Further, even with regard to the accounts for which we had received some bank statements, we noted in July that significant gaps existed in virtually every case.

Turning to auditing and accounting records, we noted similar concerns. By way of example, we explained that the 2001 audit of the Pakistan branch of the IIRO referenced numerous documents exchanged between the auditors and the home IIRO office, concerning the commencement and scope of the audit, as well as the nature of the documents provided to the auditors for purposes of their work. Despite specific requests for this very information, it had not been produced. We also noted that minutes of several meetings of the IIRO Executive Committee referenced extensive discussions between the IIRO Executive Committee and outside auditors concerning audits of the global organization, and materials exchanged by the auditors and the Executive Committee in relation to those activities, but that we had also not

Aisha Bembry, Esquire
March 14, 2014
Page 3

---

received full production of those materials. We also indicated that documents supporting the audits had not been produced, despite the Court's very clear directive ordering production of those underlying documents. In addition, we noted that the defendants' internal records indicated that audits would exist for each of the branch offices, to include audits conducted for purposes of attempting to verify appropriate receipts for amounts dispersed in the field offices. With very limited exceptions, those audits and the underlying work papers for those audits had not been produced. In this context, we also pointed out that the Court had already ruled that documents in the possession of defendants' accountants, auditors and banks are within the care, custody and control of defendants themselves, and needed to be secured and produced.

Based on a review of the documents produced since our meeting in July, we believe that the issues raised during that meeting concerning the financial, auditing and banking records of the IIRO and MWL remain largely unaddressed. While the more recent productions do include some additional banking, financial and auditing documents, the productions in these critical areas remained woefully incomplete. For instance, despite our very focused discussions concerning the additional records pertaining to the audit of the IIRO Pakistan office, and even though plaintiffs served supplemental discovery requests pertaining to those precise materials, we still have not received those documents. Similarly, although the IIRO Indonesian office was established in 1989, the production pertaining to that office relates almost entirely to the period between 2002 and 2004, and no auditing reports were produced for periods between 1992 and 2002. Similarly, IIRO35096-97 references an audit agreement between the IIRO Indonesia office and the Mucharam Public Accounting firm in 2002, but no auditing reports were produced within the discovery documents. Although a budget for the Indonesia office for calendar year 1999 was produced, no similar budget documents were provided for any other years during the relevant discovery period (1992-2004). In many instances, correspondence produced by the defendants makes reference to auditing or other relevant financial documents, but the referenced attachments and underlying materials have not been included.

Along similar lines, the productions by the IIRO and MWL have failed to address the significant concerns raised relating to the defendants' banking records during our meeting in July. As a primary matter, the further productions of banking records continue to focus almost entirely on bank statements, and do not include a full range of relevant records relating the defendants' banking activities. Further, we still have not received any records for many of the defendants' bank accounts, and even the statements that have been provided for relevant accounts are incomplete. For example, the MWL produced 72 monthly statements relating to two Kenyan bank accounts, representing less than half of the monthly statements that should have been provided for relevant periods.

Finally, even to the extent that certain financial, banking and auditing documents have been produced, they have for the most part been provided in a haphazard fashion. The documents reflect that both the home office and field offices were required to maintain detailed internal financial records, but we have not received any comprehensive "packages" of these materials, as one would expect them to have been stored and produced.

In sum, the additional productions have not addressed the very specific concerns we raised during the meet and confer in July pertaining to the production of banking, auditing and financial records.

Aisha Bembry, Esquire
March 14, 2014
Page 4

3. <u>Records Pertaining to the Closure of IIRO Offices or Investigations of IIRO Offices or Personnel</u>

Also during our meet and confer in July, we offered that numerous data points, including a host of media articles containing statements from the IIRO's own personnel, confirmed that various offices of the IIRO and MWL had been targeted in investigations relating to the alleged sponsorship of extremists or other criminal activities. Similarly, a number of IIRO and MWL personnel have been arrested or targeted in investigations for similar conduct. The productions since July have verified the accuracy of those facts, but also confirm that the defendants still have not made complete productions of documents relating to such incidents. For example, certain of the documents produced by the IIRO reference: (i) the 1995 closure of the IIRO branch office in Macedonia and the expulsion of its employees from that country; (ii) the raid of the IIRO branch office in Albania by local authorities; (iii) the 1994 arrest of IIRO-Albania employee Muhammad al Zawahiri; and (iv) the 1995 arrest of the IIRO's regional accountant in Zagreb, Muhammad Hussein Hali, for conspiring with terror organizations. However, we do not have anything approximating a complete production of documents relating to those activities.

The documents also reflect the removal of various IIRO personnel as a result of internal investigative processes, as in the case of several officials who headed the IIRO Indonesia office. While we in some cases have copies of correspondence relating to the ultimate decision to remove the relevant officials, the productions are for the most part devoid of any of the internal investigative documents leading up to the relevant decision. In many cases, it is apparent that the decision to remove the relevant employee was predicated upon evidence of financial irregularities within the relevant office, but we also do not have complete production of the documents pertaining to those financial irregularities (although in some cases we have some of those materials).

Again, the continuing gaps in these areas are frustrating, given the degree to which we focused on these issues during our meet and confer in July. As indicated at that time, it is entirely plausible to suggest that the MWL and IIRO, organizations that are quite protective of their international representations, would maintain comprehensive internal records pertaining to the circumstances surrounding the closure of their offices, or investigations of their offices and employees for criminal activities. In fact, certain of the documents that we have received confirm that the IIRO maintains a media monitoring department, responsible for monitoring all media reporting pertaining to any of the branch offices. That office would necessarily maintain records pertaining to the public reporting concerning the investigations of the rest of IIRO offices and employees, yet we have not received any of those materials.

4. <u>Documents Pertaining to Key Related Parties</u>

During the meet and confer in July, we also emphasized our interest in obtaining full records relating to key parties with close relationships to the MWL and IIRO. We indicated in particular our interest in receiving documents relating to the Sanabel entities, Rabita Trust, Al Haramain Islamic Foundation, Al Haramain al Masjed al Aqsa, Suleiman al Rajhi, Wa'el Jelaidan, Saudi Joint Relief Committee for Kosovo and Chechnya, Saudi High Commission for Relief of Bosnia & Herzegovina, Muhammad Jamal Khalifa, Abd al Hamid Sulaiman al Mujil, El Fathi Hassanein and Sukarno Hassanein, Saleh Kamel, and the Third World Relief Agency.[1]

---

[1] In addition to the "key parties" mentioned above, plaintiffs' document requests identify other important individuals and entities that are similarly affiliated with the MWL and IIRO. Any and all searches conducted by the MWL and

Footnote continued on next page

Aisha Bembry, Esquire
March 14, 2014
Page 5

---

Here again, certain of the documents produced since our meet and confer in July verify that extensive relationships existed between the MWL and these critical parties (among others), but also confirm that we have not received complete productions of the documents relating to those third parties. As but one example, documentation produced by the MWL confirms that Al Haramain Al Masjed Al Aqsa was formally brought under the umbrella of the MWL in or around 1999. However, aside from a handful of documents referencing the incorporation of that entity into the MWL, we have no further records pertaining to Al Haramain Al Masjed al Aqsa or the relationship between al Haramain al Masjed al Aqsa and the MWL. Similarly, some of the recent productions indicate that the IIRO shared an office in Pristina, Kosovo with the Saudi Joint Relief Committee and collaborated extensively with the SJRC on projects, but we do not have any significant production relating to the SJRC or the relationship between the IIRO and SJRC. Likewise, the internal minutes of executive committee meetings of the IIRO contain extensive references to Sanabel, and the appointment of special committees to review the Sanabel investments. The membership of that committee apparently included several additional key persons of interest, among them Sulaiman al Rajhi, Saleh Kamel, Ibrahim Afandi and Abd al Rahman Abd al Kader Faqih. Despite numerous requests for production of the documents relating to Sanabel, and specific discovery requests pertaining to the aforementioned individuals, we have only limited documentation pertaining to those persons and issues.

5. <u>Committees and Councils of the MWL and IIRO</u>

Very early on in discovery, we emphasized the need for the MWL and IIRO to produce documents identifying all committees operating within those organizations during relevant periods, and identifying persons holding positions within those committees. With respect to the senior policy making bodies of the MWL and IIRO, such as the Constituent Council and Executive Committee, we expressed the urgent need for complete production of all documents pertaining to meetings and decisions of those committees as directed by the Court. At the meet and confer in July, we again emphasized these issues and noted that we had only received a sampling of documents and incomplete minutes for a handful of meetings.

To this date, we still have not received documents identifying all committees within the MWL and IIRO. To this point, one of the recent productions included limited documentation pertaining to the IIRO Women's Committee, a body for which no prior documentation had been provided. The membership of that Committee apparently included several members of the bin Laden and bin Mahfouz families, and for that reason we would have expected to receive documentation pertaining to the committee much earlier. In any case, we would again urge that the MWL and IIRO must undertake prompt steps to provide documentation identifying all committees, and provide complete documentation relating to the functions of policymaking bodies as previous directed by the Court.

6. <u>Documents Relating to the Saudi Government Officials in the Operations of the MWL and IIRO</u>

Also at the meet and confer in July, we explained that a broad range of publicly available documentation evidenced extensive involvement on the part of Saudi officials and Saudi

---

Footnote continued from previous page
IIRO for responsive documents should not be limited to this smaller group referenced herein, but should encompass all such individuals and entities identified in plaintiffs' discovery.

Aisha Bembry, Esquire
March 14, 2014
Page 6

government in the operations of the MWL and IIRO, but that we had received essentially no records making reference to any governmental official or exchanges with Saudi governmental agencies. We noted that the IIRO had previously asserted that certain categories of documents within its possession were immune from disclosure, based upon the sovereign immunity of the government of Saudi Arabia. In essence, the IIRO maintained that certain of its records were governmental documents.

We challenged that defense to production in proceedings before Judge Maas on June 23, 2011, and the IIRO formally withdrew that objection on July 7, 2011. We thereafter requested that the IIRO produce any documents withheld on the basis of that objection and were advised by the IIRO's then counsel that no such documents actually existed. In essence, then counsel for the IIRO advised that, although it had raised an objection on the grounds that certain of its documents were governmental records, no responsive documents falling within that category existed.

During our telephonic conference several weeks ago, Eric Lewis advised us that you had encountered delays in securing certain documents responsive to our discovery requests from the MWL and IIRO, due to the fact that certain documents within the possession of those entities were regarded as governmental records, and that their disclosure required the formal consent of the government of Saudi Arabia. Eric indicated that a dialogue was ongoing to secure the government's approval to disclose those materials, but that approval had not yet been formally obtained.

The information provided during the most recent telephonic conference stands at odds with the prior withdrawal of any objection based on the purported governmental character of documents in the possession of the IIRO or MWL, and in conflict with prior representations that no responsive documents falling within such a category even existed. Given that any objection on the basis of the alleged character of the documents has been withdrawn, we would expect immediate production of those materials. The conflict between the most recent positions being asserted by the MWL and IIRO on the subject and their prior position, raises significant concerns about the integrity of the discovery process relating to documents referencing or relating to governmental agencies or their officials.

At this juncture, we would ask you to clarify whether effective control over any responsive documents has been surrendered to the government of Saudi Arabia or any agency of the government of Saudi Arabia.

7.   Other Issues

During the meet and confer in July, we also identified significant gaps in the productions relating to branch office reporting, the evaluation of needs in conflict regions, records pertaining to delegations of the MWL and IIRO and similar materials. We do not believe these issues have been cured in any material way by the more recent productions. In addition, we do not believe the MWL and IIRO have provided relevant documentation concerning engagements between their branch offices and authorities in the regions where they operated, including law enforcement and regulatory authorities (among others). Finally, we also have not received records pertaining to the roles and activities of the remanded officials and former officials of the MWL and IIRO. We would ask that you clarify whether the MWL and IIRO are objecting to production of such documents, a position we do not believe tenable, especially in light of the Second Circuit decision remanding those individual defendants.

---

      Again, the examples offered above are merely illustrative, and are in no way an exhaustive review of our areas of concern. Further, in highlighting particular categories of documents or issues, plaintiffs are not in any way limiting the scope of the searches required, which should encompass all documents and materials sought through plaintiffs' discovery requests. We do, however, hope that these deficiencies can be addressed during your associate's upcoming trip.

Sincerely,

COZEN O'CONNOR

By: Sean P. Carter /SPT.

SPC/bdw

cc:    Eric Lewis, Esquire
        Robert Haefele, Esquire
        Jerry Goldman, Esquire
        J. Scott Tarbutton, Esquire
        James Kreindler, Esquire

LEGAL\18458951\1