# EXHIBIT 15

MUSLIM WORLD LEAGUE
INT'L. ISLAMIC RELIEF ORG.
THE KINGDOM OF SAUDI ARABIA
Member of the Economic & Social Council of the UN
(ECOSOC)

رابطة العالم الإسلامي
هيئة الإغاثة الإسلامية العالمية
بالمملكة العربية السعودية
عضو المجلس الاقتصادي والاجتماعي التابع للأمم المتحدة

Sub: _____ : الموضوع

No: _____ : الرقم
Date: _____ : التاريخ

## Affidavit of Sameer al-Radhi, IIRO

1. IIRO is a non-governmental charitable organization, seeking to help the poor and needy widows, orphans and victims of natural disasters, without any distinction or discrimination. Article 2 of IIRO's constitution specifically states that it is established to "help in alleviating the suffering of distressed and needy people world-wide." It mainly relies on voluntary financing projects.

2. IIRO is a body of humanist principles completely incompatible with any kind of terrorism whether it is physical terrorism, moral or intellectual. This is evident in all their policies and instructions, directives and regulations, and keen to assert that in every occasion.

3. During my work in IIRO for nine years and knowing its inception, I did not find any evidence that IIRO in any period of duration supported terrorism. On the contrary they distance themselves from it in any way. IIRO always and on every occasion denounces and condemns any and all terrorist attacks.

4. With respect to September 11th tragedy, the incident is condemned with the strongest words. Nothing justifies this criminal act. It is a shameful exploitation of Islam in this despicable crime. It is equally unfair to accuse any Muslim organization simply because they are Muslim. But it is most unjust if the aim of these accusations is to disable humanitarian charitable organizations and deprive millions of beneficiaries of the programs offered by these organizations in health, education and welfare of orphans and digging wells.

5. I am Sameer J. A. al-Radhi and I give this affidavit in support of the International Islamic Relief Organization's (IIRO) memorandum in opposition to the Plaintiffs' motion to compel.

6. I had worked at IIRO for 9 years, and one of my major responsibilities was to work with Mr. McMahon on various issues that arose in the 9/11 case.

7. By my estimate I have spent, at least, a total of 7,740 hours on the 9/11 case, and I had three assistants helping me in terms of responding to the Plaintiffs' document production requests. I believe my assistants logged 13,068 hours in the 9/11 case.

1

Please qoute our Ref. No. and date in all correspondence! Pour repondre, priere de citer la date et le numero de cette lettre!
الرجاء عند الرد الإشارة إلى رقم وتاريخ هذه الرسالة

Address: P.O.Box:14843 Jeddah 21434 - Tel.: +966 2 6512333 - 6515411 Fax: +966 2 6518491 - 6512997
E-mail: relief@iirosa.org   البريد الالكتروني

8. I estimate that we have produced more than 6,500 pages that contained various government official letters, recommendations, thank you letter, annual reports, warehouse photos, IIRO's correspondence letters etc.

9. In the course of trying to satisfy that document request, I and my assistants performed a number of tasks, including but not limited to:
   a. Identification.
   b. Categorization and classification.
   c. Indexing and Filing.
   d. Email Correspondence and Communication.
      PS This does not include the travel made to various countries to provide documents for discovery, or/ and meetings.

10. All IIRO documents are in papers in the form of files except those that are frequently required and are archived in the IIRO archiving system.

11. Almost 99% of the documents are in Arabic.

12. There is no electronic financial database of the period of 1992-2002, except the general ledger for each year.

13. For the period of 1992 -1995 we have only a 5% sample entry for each year, according to IIRO's filing system.

14. For the period of 1996 – 2002, we have all the documents.

15. Some of the documents that are usable (required from time to time) are archived in the IIRO archiving system.

16. These printed documents are classified into two groups:
    a. Public documents
    b. Privileged documents which are protected by Saudi Arabia's privileges pursuant to the immunity defense.

17. We came up with approximately 4,000 pages of indexes for the financial files and official documents stored in the warehouse, and those indexes should afford the Plaintiffs' lawyers an opportunity to understand what is in the IIRO database.

18. The reason the indexes are so voluminous due the nature of classification is that:
    a. Each file is a separate entry.
    b. Each year there are between 1,190 – 3,000 entries.
    c. Each entry consists of 300 - 500 pages, in some certain cases the entry may contain more than 1,000 pages.
    d. There are also other documents stored in IIRO's warehouse in a total of 125 boxes consisting of 1,449 files.



2

  e. Each file may contain an average around 300 – 500 pages which are correspondence materials.

19. A major problem is that when you total the subparts of the Plaintiffs' document request, it equals approximately 900 requests. We did our best to match the requests with the IIRO database, and again we hope that the indexes will afford the Plaintiffs' a better handle on IIRO's document database.

20. I spent a considerable amount of time at the IIRO warehouse located at the suburb of Jeddah. I took pictures of the warehouse (see attached) to help educate the Plaintiffs' lawyers about what they are dealing with.

21. Because Mr. McMahon told me the lawyers were afraid to visit the Kingdom, he requested that I secure a bid to scan the IIRO warehouse. I secured that bid, which was approximately $1 million provided it to him, which I assume he provided to the Plaintiffs' lawyers.

22. Because of the sheer volume of documents involved, Mr. McMahon asked me to be deposed by the Plaintiffs' lawyers, in terms of what documentation there was in the headquarters in Jeddah and what documentation there was in the warehouse and what documentation there was in different IIRO offices around the world.

23. I agreed that I would sit for a deposition and try to explain to the 9/11 lawyers the complexity of the matter, and hopefully would be able to reduce the amount of documentation that they required.

24. I understand that Mr. McMahon made this proposal, but the 9/11 lawyers did not embrace it. I remain available to attend such a deposition preferably in Jeddah, but to accommodate the 9/11 lawyers, we could also do it in London.

25. I think it would be very helpful to the Plaintiffs' lawyers to schedule such a deposition in the near future to accommodate their discovery needs and at the same time hold down the massive discovery expenses attendant to their document request.

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE ABOVE FOREGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____        _____
Sameer al-Radhi                Date