# EXHIBIT 1

No. 13-318

# In the Supreme Court of the United States

---

JOHN PATRICK O'NEILL, JR., ET AL., PETITIONERS

*v.*

AL RAJHI BANK, ET AL.

---

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

---

DONALD B. VERRILLI, JR.
  *Solicitor General*
    *Counsel of Record*
STUART F. DELERY
  *Assistant Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
GINGER D. ANDERS
  *Assistant to the Solicitor
  General*
DOUGLAS N. LETTER
SHARON SWINGLE
ABBY C. WRIGHT
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTIONS PRESENTED

Petitioners filed suit under the Antiterrorism Act of 1990 (ATA), 18 U.S.C. 2331 *et seq.*, against hundreds of defendants, including the respondents before this Court, for injuries suffered as a result of the September 11, 2001, terrorist attacks. The district court dismissed the claims against certain defendants for failure to state a claim, and against others for lack of personal jurisdiction. The court of appeals affirmed the dismissals for failure to state a claim and some, but not all, of the dismissals for lack of personal jurisdiction. The questions presented are:

1. Whether the ATA's civil remedy provision establishes a cause of action for aiding and abetting acts of international terrorism, and requires a plaintiff to allege that the defendant's actions proximately caused the plaintiff's injuries.

2. Whether the court of appeals correctly held that the district court lacked personal jurisdiction over certain defendants.

**TABLE OF CONTENTS**

Page

Interest of the United States ........................................................1
Statement.........................................................................................1
Discussion ......................................................................................6
   A.  The court of appeals' holding that the ATA does
       not provide a cause of action for aiding and
       abetting terrorist acts does not warrant review............6
   B.  The court of appeals' holding that the ATA
       requires a showing of proximate causation does
       not warrant review...............................................................12
   C.  The court of appeals' personal-jurisdiction decision
       does not warrant review.....................................................18
Conclusion......................................................................................23

**TABLE OF AUTHORITIES**

Cases:

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) .................11, 12, 17, 20
*Associated Gen. Contractors of Cal., Inc.* v.
  *California State Council of Carpenters*,
  459 U.S. 519 (1983) ..............................................................14
*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007) .................11
*Boim* v. *Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008), cert. denied,
  558 U.S. 981 (2009) .........................................7, 9, 13, 15, 16
*Bridge* v. *Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ..............................................................13
*Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462
  (1985) ......................................................................4, 5, 18
*Calder* v. *Jones*, 465 U.S. 783 (1984) ..........................4, 19, 20
*Central Bank* v. *First Interstate Bank*,
  511 U.S. 164 (1994) ............................................................7, 8
*CSX Transp., Inc.* v. *McBride*, 131 S. Ct. 2630 (2011) .......13

(III)

IV

Cases—Continued:                                                                    Page

    *Halberstam* v. *Welch*, 705 F.2d 472
      (D.C. Cir. 1983) ............................................................7, 8, 15

    *Kingdom of Saudi Arabia* v. *Federal Ins. Co.*,
      741 F.3d 353 (2d Cir. 2013), petition for cert.
      pending, No. 13-1146 (filed Mar. 19, 2014)........................2

    *Meyer* v. *Holley*, 537 U.S. 280 (2003) ..............................7, 14

    *Mwani* v. *bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)..............22

    *Paroline* v. *United States*, 134 S. Ct. 1710 (2014)...13, 14, 16

    *Rothstein* v. *UBS AG*, 708 F.3d 82 (2d Cir. 2013)...........4, 17

    *Staub* v. *Proctor Hosp.*, 131 S. Ct. 1186 (2011)....................7

    *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014)..........................19, 23

    *Washington Shoe Co.* v. *A-Z Sporting Goods Inc.*,
      704 F.3d 668 (9th Cir. 2012) .................................................22

Constitution, statutes and rules:

    U.S. Const. Amend. V (Due Process Clause) ......................18

    Antiterrorism Act of 1990, 18 U.S.C. 2331 *et seq.* .................2

        18 U.S.C. 2331(1)(A) ..............................................................9

        18 U.S.C. 2333(a) .........................................3, 4, 7, 9, 12, 15

    Clayton Act, 15 U.S.C. 15 ....................................................14

    Fair Housing Act, 42 U.S.C 3601 *et seq.* .............................7

    Foreign Sovereign Immunities Act of 1976,
      28 U.S.C. 1602 *et seq.* .......................................................2

    Securities Exchange Act of 1934, ch. 404, § 10(b),
      48 Stat. 891 (15 U.S.C. 78a *et seq.*) ......................................8

    18 U.S.C. 2339A ....................................................................9

    18 U.S.C. 2339A(b)(1)...........................................................9

    Fed. R. Civ. P.:

        Rule 12(b)(6) ...........................................................*passim*

        Rule 54(b) .....................................................................3

V

Miscellaneous:                                        Page

    137 Cong. Rec. 8143 (1991)......................................................7

    4 Restatement (Second) of Torts (1979)................................7

    S. Rep. No. 342, 102d Cong., 2d Sess. (1992) .............8, 10, 14

# In the Supreme Court of the United States

———

No. 13-318

JOHN PATRICK O'NEILL, JR., ET AL., PETITIONERS

*v.*

AL RAJHI BANK, ET AL.

———

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT*

———

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

———

### INTEREST OF THE UNITED STATES

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

### STATEMENT

Petitioners are persons and entities that suffered injuries and losses as a result of the September 11, 2001, terrorist attacks against the United States. Pet. App. 2a. Petitioners filed multiple lawsuits asserting various claims against hundreds of defendants, including foreign states, financial institutions, other organizations, and private individuals. *Id.* at 20a. The lawsuits were consolidated in the United States District Court for the Southern District of New York. *Id.* at 32a. The respondents before this Court consist of

(1)

2

certain defendants who were dismissed from the case on the ground that petitioners failed to state a claim against them (the Rule 12(b)(6) respondents) and certain defendants who were dismissed on the ground that the district court lacked personal jurisdiction over them (the personal-jurisdiction respondents).

1.  Petitioners filed their complaints between 2002 and 2005.  Pet. 5.  In 2005, the district court dismissed several foreign sovereigns and foreign sovereign entity defendants, including the Kingdom of Saudi Arabia and members of the Saudi royal family acting in their official capacities, under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. 1602 *et seq.*  The court also held that it lacked personal jurisdiction over members of the Saudi royal family for their personal actions.  Pet. 6.  In 2008, the Second Circuit affirmed in a decision referred to by the parties as *Terrorist Attacks III.*  Pet. App. 38a, 185a-231a; see Pet. 6.

Petitioners sought this Court's review of the FSIA and personal-jurisdiction questions.  The Court invited the views of the Solicitor General.  See 08-640 U.S. Amicus Br. (filed May 29, 2009).  The government recommended that the Court deny certiorari, and the Court did so.[1]

2.  a.  Between 2005 and 2010, the district court dismissed claims against certain other defendants for failure to state a claim under the Antiterrorism Act of 1990 (ATA), 18 U.S.C. 2331 *et seq.*, which creates a

_____

[1]  The Second Circuit recently held that the judgments in favor of the Kingdom of Saudi Arabia and another entity should be reopened.  741 F.3d 353 (2013).  Those parties have filed a petition for certiorari.  See *Kingdom of Saudi Arabia* v. *Federal Ins. Co.,* petition for cert. pending, No. 13-1146 (filed Mar. 19, 2014).

3

damages action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C. 2333(a); see Pet. App. 1a n.*, 116a n.12; Pet. 8 n.5; 11-3294 Docket entry No. (Docket No.) 299, at 12-21 (2d Cir. Apr. 20, 2012) (Pet. C.A. Br.). Petitioners alleged that the defendants in question provided funds to purported charities that channeled money to al Qaeda and provided financial services to organizations and individuals allegedly affiliated with al Qaeda. Pet. App. 8a. The court entered final judgments in the defendants' favor pursuant to Federal Rule of Civil Procedure 54(b). Pet. C.A. Br. 21. Petitioners appealed the dismissal of five of the defendants. Pet. App. 1a n.*.

b. Between 2006 and 2012, the district court dismissed various other defendants for lack of personal jurisdiction and entered Rule 54(b) judgments in their favor. Pet. App. 32a-34a. Petitioners appealed with respect to 37 defendants. *Id*. at 17a n.*.

3. As relevant here, the court of appeals resolved the appeals in two separate opinions issued on the same day.

a. The court of appeals affirmed the district court's dismissal of the claims against five defendants—the Rule 12(b)(6) respondents before this Court—for failure to state a claim under the ATA. Pet. App. 1a-15a. The court explained that petitioners alleged that respondents were "both primarily and secondarily liable" under the ATA based on their alleged provision of financial support to charities that funneled money to al Qaeda. *Id*. at 5a-9a. With respect to petitioners' secondary-liability claims, the court noted that it had recently held that "a defendant cannot be liable under

4

the ATA on an aiding-and-abetting theory of liability" because the ATA does not expressly mention secondary actors. *Id*. at 6a (citing *Rothstein* v. *UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)).

Turning to the standard of causation on the claims of primary liability, the court of appeals invoked its holding in *Rothstein* that the ATA's requirement that a plaintiff must demonstrate her injuries occurred "by reason of" an act of terrorism, 18 U.S.C. 2333(a), encompasses a showing of proximate cause.  Pet. App. 7a; see *Rothstein*, 708 F.3d at 95.  The court concluded that petitioners' allegations that their injuries were the reasonably foreseeable consequence of respondents' indirect support of al Qaeda through intermediaries were conclusory and therefore insufficient.  Pet. App. 8a-9a.  The court further observed that it was "not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda  *  *  *  proximately caused the September 11, 2001 attacks."  *Id*. at 8a.

b. The court of appeals affirmed the district court's dismissal of the claims against 25 defendants for lack of personal jurisdiction, and remanded for jurisdictional discovery with respect to 12 others.  Pet. App. 16a-54a.  The court first explained that a court has "specific" personal jurisdiction over a defendant when the defendant has "'purposefully directed' his activities at residents of the forum" and the injuries "arise out of" those activities.  *Id*. at 37a (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472-473 (1985)).  The court further explained that under *Calder* v. *Jones*, 465 U.S. 783 (1984), a defendant must have taken "'intentional, and allegedly tortious, actions  .  .  .  expressly aimed' at the forum."  Pet.

5

App. 37a (quoting 471 U.S. at 789). In addition, "the fact that harm in the forum is foreseeable * * * is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *Ibid.*

Applying that standard, the court of appeals held that petitioners' allegations against several sets of defendants were insufficient to establish personal jurisdiction. First, allegations that certain defendants knowingly maintained bank accounts and provided routine financial services to individuals and charities associated with al Qaeda were insufficient to establish that the provider institutions had expressly aimed their conduct at the United States. Pet. App. 40a-42a. Second, allegations that other defendants provided support to Osama bin Laden and al Qaeda prior to 1993, in the form of shareholder distributions and government contracts, were also insufficient, given the lack of any connection between the defendants' conduct and al Qaeda's attack on the United States. *Id.* at 42a-43a. Third, allegations that certain defendants served as officials in organizations that allegedly supported terrorist groups were insufficient because petitioners failed to allege that those defendants personally "played any role in directing any support to benefit al Qaeda." *Id.* at 44a (emphasis omitted).

The court of appeals held, however, that jurisdictional discovery was warranted with respect to 12 defendants. Pet. App. 45a. The court observed that those "defendants' alleged support of al Qaeda is more direct," *ibid.*, because it included direct support for al Qaeda and aid to the September 11 hijackers. *Id.* at 46a-48a. Petitioners' allegations, the court stated, suggested that the defendants may have aided al

6

Qaeda knowing that al Qaeda was targeting the United States. *Id.* at 47a-48a.

## DISCUSSION

Petitioners challenge the court of appeals' holdings concerning the substantive scope of liability under the ATA, as well as its holding that the district court lacked personal jurisdiction over the personal-jurisdiction respondents. Further review is not warranted. None of the challenged rulings conflicts with any decision of this Court or another court of appeals.

Private actions under the ATA can be an important means of fighting terrorism because they may disrupt and deter the provision of financing and other support to terrorist organizations. But the Second Circuit's decision does not foreclose plaintiffs from relying on the ATA to obtain redress from those who fund or otherwise provide substantial assistance to terrorists, and the court correctly construed the ATA to require that a defendant's actions have proximately caused the plaintiff's injuries. In its personal-jurisdiction decision, the court of appeals applied settled standards, and petitioners' disagreement with aspects of the court's fact-specific analysis of the sufficiency of the allegations does not warrant review.

### A. The Court Of Appeals' Holding That The ATA Does Not Provide A Cause Of Action For Aiding And Abetting Terrorist Acts Does Not Warrant Review

Petitioners challenge (Pet. 11-16) the court of appeals' holding that the ATA does not impose secondary liability for aiding and abetting acts of international terrorism. Although, in the government's view, the ATA is more appropriately construed to impose aiding-and-abetting liability, further review is not

7

warranted.  The Second Circuit appears to have assumed that the ATA imposes *primary* liability on those who provide material support to terrorists.  The decision is therefore consistent with the Seventh Circuit's holding in *Boim* v. *Holy Land Foundation for Relief & Dev.*, 549 F.3d 685 (2008), cert. denied, 558 U.S. 981 (2009), that the ATA imposes material-support liability on individuals and entities who fund or otherwise support terrorists.  *Id.* at 690.

1.  a.  Section 2333(a) creates a tort action for individuals injured "by reason of an act of international terrorism."  18 U.S.C. 2333(a).  The scope of liability imposed by Section 2333(a) should therefore generally be determined in light of the principle that "when Congress creates a federal tort it adopts the background of general tort law."  *Staub* v. *Proctor Hosp.*, 131 S. Ct. 1186, 1191 (2011); see 137 Cong. Rec. 8143 (1991) (the ATA "accords victims of terrorism the remedies of American tort law"); cf. *Meyer* v. *Holley*, 537 U.S. 280, 285 (2003) (construing Fair Housing Act to impose vicarious liability in accord with tort principles, despite statute's silence on the question).

Under background tort principles, a defendant may in certain circumstances be secondarily liable when he has knowingly given substantial assistance to a primary actor's tortious conduct and the primary actor causes injury.  See 4 Restatement (Second) of Torts § 876, at 315 (1979); *Central Bank* v. *First Interstate Bank*, 511 U.S. 164, 181-182 (1994); *Halberstam* v. *Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  The government accordingly argued in *Boim* that the ATA is properly construed to incorporate background tort-

8

law principles of aiding-and-abetting liability.[2]  See Gov't Amicus Br., *Boim* v. *Quranic Literacy Inst.* (Nos. 01-1969, 01-1970) (7th Cir. 2001); Gov't Amicus Br., *Boim* v. *Holy Land Found.* (Nos. 05-1815, 05-1816, 05-1821, 05-1822) (7th Cir. 2008) (Gov't 2008 *Boim* Br.).  That construction furthers the statute's purpose of permitting the "imposition of liability at any point along the causal chain of terrorism," thereby "interrupt[ing], or at least imperil[ing], the flow of money."  S. Rep. No. 342, 102d Cong., 2d Sess. 22 (1992) (Senate Report).

Under that construction, the ATA imposes secondary liability on defendants who provide substantial assistance to terrorist organizations (or their front groups) by contributing funds, knowing that the entities have been so designated or that they engage in terrorism as part of their broader activities.  The plaintiff would have to show, however, that the "act of international terrorism" that injured the victim was a reasonably foreseeable consequence of the defendant's contribution.  See generally Gov't 2008 *Boim* Br. at 19-20; pp. 12-16, *infra*; cf. *Halberstam*, 705 F.2d at 477.

b.  In *Boim*, the Seventh Circuit held that the ATA does not impose aiding-and-abetting liability as such.

---

[2]  Contrary to the Second Circuit's reasoning (see Pet. App. 6a-7a), *Central Bank* did not hold that "statutory silence" on secondary liability invariably precludes construing a statute to impose aiding-and-abetting liability.  *Central Bank* held that in the context of the implied private right of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.*, permitting aiding-and-abetting claims would be inconsistent with Section 10(b)'s focus on direct acts of fraud and Congress's establishment of "some forms of secondary liability" in other provisions of the securities laws.  511 U.S. at 174-178, 184.

9

549 F.3d at 689.  The court adopted a construction of primary liability under the ATA, however, that appears to reach much of the conduct that would constitute aiding and abetting of terrorism.  The court explained that Section 2333(a), which permits private actions based on "act[s] of international terrorism," defines that term to include "acts dangerous to human life that are a violation of the criminal laws of the United States."  18 U.S.C. 2331(1)(A).  Giving money to terrorist groups, the Seventh Circuit reasoned, is "dangerous to human life," and it may violate 18 U.S.C. 2339A, which makes it a criminal offense to provide "material support or resources" to terrorists, "knowing or intending that they are to be used" in committing or preparing to commit one or more of a list of enumerated criminal offenses.  549 F.3d at 690.

Applying the material-support framework to terrorism funding, the Seventh Circuit held that an individual could be liable under the ATA for providing material support to a terrorist organization if he donated money to the group, knowing that the organization used some of its funds "in preparation for or in carrying out the killing or attempted killing of, conspiring to kill, or inflicting bodily injury on, an American citizen."  *Boim*, 549 F.3d at 691.  Thus, the court observed, the ATA "expressly impose[s] liability on a class of aiders and abettors," and "[p]rimary liability in the form of material support to terrorism has the character of secondary liability."[3]  *Id.* at 691-692.

---

[3]  A material-support claim may not be completely coextensive with an aiding-and-abetting claim.  For instance, Section 2339A(b)(1) exempts provision of "medicine or religious materials" from the definition of "material support or resources," 18 U.S.C.

10

2.  Contrary to petitioners' argument (Pet. 12-13), the decision below does not conflict with *Boim*.  Like the Seventh Circuit, the Second Circuit concluded that the ATA does not impose liability for aiding and abetting terrorist acts.  Pet. App. 6a-7a.  Although the Second Circuit did not explicitly address material-support liability, the court appears to have assumed that it is a valid basis for liability under the ATA.  The court acknowledged (*id.* at 5a) that petitioners asserted not only that the Rule 12(b)(6) respondents aided and abetted terrorism, but also that their contributions to ostensible charities rendered them primarily liable under the material-support theory outlined in *Boim*.  See Pet. C.A. Br. 68-69.  Given that petitioners' claims against the Rule 12(b)(6) respondents rested solely on their alleged provision of aid to terrorists, rather than alleged personal commission of terrorist attacks, the court of appeals would not have needed to address the sufficiency of petitioners' allegations of proximate cause if it had rejected petitioners' material-support theory as well as their aiding-and-abetting theory.  In addition, the court recognized that "Congress clearly intended to create impediments to terrorism by the 'imposition of liability at any point along the causal chain of terrorism.'"  Pet. App. 9a (quoting Senate Report 22).  The import of that statement is that ATA liability should extend to those who provide funding or other assistance to terrorists, even if they do not commit terrorist attacks themselves.  The decision below is thus best read as assuming that an individual may be primarily liable under the ATA for

_____

2339A(b)(1), but an aiding-and-abetting claim could in theory be premised on such assistance.

11

knowingly providing material support in the form of funding.

3. In addition, this case would be a poor vehicle for considering whether the ATA is properly construed to impose aiding-and-abetting liability, because there is significant question whether petitioners' allegations would be sufficient to state claims under an aiding-and-abetting theory. See *Ashcroft* v. *Iqbal*, 556 U.S. 662, 677-680 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-556 (2007).

Petitioners allege that the Rule 12(b)(6) respondents aided and abetted terrorist acts by providing donations and financial services to charities that in turn provided funding to al Qaeda and other terrorist organizations. Pet. C.A. Br. 66-69; Pet. App. 8a. To state a claim based on aiding and abetting, petitioners were required to allege, as relevant here, that the Rule 12(b)(6) respondents provided substantial funds to the charities with knowledge that the charities were funneling money to terrorist groups. See p. 8, *supra*. The district court held, however, that petitioners had not alleged facts supporting an inference that respondents knew, or were deliberately indifferent to the possibility, that purported charities were supporting terrorist groups. See Pet. App. 108a-110a; Pet. C.A. Br. 20 (Rule 12(b)(6) dismissals were primarily based on insufficiency of knowledge allegations); see also 462 F. Supp. 2d 561, 563-564; 349 F. Supp. 2d 765, 831-834. The court's fact-bound conclusions are not obviously incorrect and do not warrant review.[4] Be-

---

[4] For example, petitioners' most detailed allegations concern respondent Al Rajhi Bank, which allegedly donated to certain charities that were al Qaeda front organizations. Pet. C.A. Reply Br. 57-58 (Docket No. 580) (June 25, 2012). Petitioners' allegations

12

cause petitioners' allegations are thus likely insufficient in any event to state a claim for aiding and abetting terrorist acts, this case would not be a suitable vehicle to consider the availability of such secondary liability under the ATA.

**B. The Court Of Appeals' Holding That The ATA Requires A Showing Of Proximate Causation Does Not Warrant Review**

In the context of petitioners' claim that the Rule 12(b)(6) respondents are directly liable for providing material support to terrorist groups, the court of appeals correctly held that the ATA requires petitioners to allege that respondents' material support for terrorism proximately caused their injuries. Contrary to petitioners' argument (Pet. 16-17), that ruling does not conflict with *Boim*.

1. a. The ATA provides that a United States citizen may obtain redress when injured "by reason of an act of international terrorism." 18 U.S.C. 2333(a). The phrase "by reason of" indicates that the ATA

---

that the charities held themselves out as bona fide organizations that conducted government-sanctioned activities, however, undercut any inference that the Bank was aware of the charities' alleged support for terrorism. Al Rajhi Bank C.A. Br. 18-19 (Docket No. 429) (Apr. 20, 2012). Petitioners allege that the charities were publicly known to fund al Qaeda (Pet. C.A. Reply Br. 68), but that assertion is in tension with petitioners' description of the charities' ostensibly legitimate appearance. The district court also concluded that petitioners' allegations about the Bank's provision of routine banking services to the charities, the private activities of the Al Rajhi family, and a United States warning that the Bank's financial services could be manipulated by al Qaeda itself, were insufficient to raise a plausible inference that the Bank knew that the specific charities at issue were supporting terrorism. See 349 F. Supp. 2d at 831-833; *Iqbal*, 556 U.S. at 678-680.

13

requires a plaintiff to demonstrate some degree of causal connection between the "act of international terrorism" and her injuries. *Paroline* v. *United States*, 134 S. Ct. 1710, 1720 (2014) ("The words 'as a result of' plainly suggest causation."); *Bridge* v. *Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653-654 (2008) (holding that "by reason of" connotes causation).

As this Court has explained, there are two "separate but related" types of causation: cause in fact and proximate cause. *Paroline*, 134 S. Ct. at 1719. "Cause in fact" refers to the actual cause of an injury, while "proximate cause" is "shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes." *CSX Transp., Inc.* v. *McBride*, 131 S. Ct. 2630, 2642 (2011). Although no "consensus" exists "on any one definition of 'proximate cause,'" *ibid.*, "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline*, 134 S. Ct. at 1719.

The court of appeals correctly construed Section 2333(a) to impose a requirement of proximate causation.[5] "Proximate cause is a standard aspect of causa-

---

[5] The ATA's "by reason of" language also requires factual causation. The court of appeals did not address the proper standard of factual causation, and so that issue is not presented here. Although "but for" causation is the "traditional" test of factual causation, courts have deviated from that standard "where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome." *Paroline*, 134 S. Ct. at 1723. In the context of terrorist financing, it may be impossible to prove that any one donation was the but-for cause of an attack, and thus an alternative casual standard may be more appropriate in such cases. See *Boim*, 549 F.3d at 695-698 (but-for causation is not the appropriate test in the ATA context).

14

tion in criminal law and the law of torts." *Paroline*, 134 S. Ct. at 1720. In light of "proximate cause's traditional role" in tort actions, this Court has "more than once found a proximate-cause requirement built into a statute that did not expressly impose one," when the text and context did not suggest otherwise. *Ibid.*; see *Associated Gen. Contractors of Cal., Inc.* v. *California State Council of Carpenters*, 459 U.S. 519, 529-536 (1983) (holding that the "by reason of" language in the Clayton Act, 15 U.S.C. 15, incorporated a proximate-cause requirement). It is most consistent with Congress's expectation that tort-law principles would govern ATA actions, see p. 7, *supra*, to construe the ATA to impose the usual tort-law requirement of proximate causation. Cf. *Meyer*, 537 U.S. at 285.

That construction also best effectuates the balance of competing concerns reflected in the ATA. By extending liability to persons who provide financing to terrorist organizations, the ATA enables terrorism victims to obtain redress from those who play an important role in facilitating terrorist activities and who are most likely to have assets. Senate Report 22. At the same time, a proximate cause requirement ensures that liability is limited to defendants whose conduct has a significant causal relationship to the plaintiff's injuries. Absent such a requirement, ATA liability might extend to individuals and entities whose activities have only an attenuated relationship to the plaintiff's injuries: for instance, entities that are only alleged to have provided routine banking services or other assistance to a charity with terrorist ties, considerably before the terrorists themselves carried out the attack in question. Permitting liability to sweep so broadly could reach and inhibit routine activities

15

and, given the ATA's extraterritorial reach, could
adversely affect the United States' relationships with
foreign Nations.

b.    Petitioners claim that the Rule 12(b)(6) re-
spondents directly committed an "act of international
terrorism," 18 U.S.C. 2333(a), by providing material
support to terrorism.  To state a claim that petition-
ers' injuries occurred "by reason of" that "act of in-
ternational terrorism," petitioners were required to
allege that their injuries were proximately caused by
respondents' provision of material support.[6]  It is
therefore insufficient to allege that a defendant pro-
vided funds to a group with terrorist connections and
terrorists later attacked and injured United States
citizens.  At the same time, given that money is fungi-
ble, it is not necessary to allege that the specific funds
provided by the defendants were used for terrorist
acts.  See *Boim*, 549 F.3d at 723.  Rather, the ultimate
terrorist act must be a reasonably foreseeable conse-
quence of the defendant's contributions—for instance,
because the defendant provided substantial funding
directly to a terrorist group known to be targeting the
United States.  Cf. Gov't 2008 *Boim* Br. at 20.  Given
the variety of circumstances in which proximate-
causation issues may arise in ATA suits, courts will

---

[6] A similar nexus requirement would have applied had the Sec-
ond Circuit permitted petitioners to proceed with their aiding-and-
abetting theory.  As the government explained in *Boim*, Gov't 2008
*Boim* Br. at 20-21, traditional tort-law aiding-and-abetting princi-
ples require that the primary tortfeasor's injurious acts be the
foreseeable consequence of the secondary defendant's provision of
assistance.  See, *e.g.*, *Halberstam*, 705 F.2d at 488 (holding that
where defendant aided the primary actor's course of conduct, the
injury-causing tort must have been reasonably foreseeable to the
defendant).

16

further refine the standard by applying it to specific factual scenarios.

2. Contrary to petitioners' contention (Pet. 16-17), the court of appeals' proximate-cause holding does not conflict with *Boim*. There, the Seventh Circuit considered the "proof of causation" necessary to state a claim based on alleged material support. 549 F.3d at 695. The court analogized the causation issues raised by a terrorist organization's receipt of multiple donations, only some of which fund terrorist activity, to those raised by scenarios in which multiple causes— such as two sources of pollution—contribute to a single injury. *Id.* at 696-697. The court concluded that in such situations, demonstrating "'but for' causation" is not necessary, *id.* at 696, and the "requirement of proving causation is relaxed because otherwise there would be a wrong and an injury but no remedy because the court would be unable to determine which wrongdoer inflicted the injury." *Id.* at 697. That discussion appears to address causation in fact, rather than proximate cause. See *Paroline*, 134 S. Ct. at 1722-1724 (discussing similar aggregate-causation scenarios under the framework of factual causation). *Boim* thus did not expressly reject a proximate-cause requirement. See 549 F.3d at 692 (suggesting that "the ordinary tort requirement[]" of "foreseeability must be satisfied"); cf. *id.* at 700 (declining to consider whether "temporal remoteness" might bar liability in some cases).

3. Petitioners also challenge (Pet. 20-22) the court of appeals' application of the proximate-cause requirement to the allegations in this case. Contrary to petitioners' assertion (Pet. 20), the Second Circuit did not impose a rigorous standard of proximate causation

17

that would require a plaintiff to demonstrate that the defendant's specific contribution was used for an attack on the United States. Although the court stated that petitioners had not alleged that the "money allegedly donated by the Rule 12(b)(6) defendants to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks," Pet. App. 8a, that statement is best read in context as one of the court's critiques of petitioners' specific allegations, rather than an announcement of a generally applicable standard. Indeed, in *Rothstein* v. *UBS AG*, 708 F.3d 82 (2013), the ATA decision on which the court relied in this case, the Second Circuit described proximate cause as requiring only that the injury be the reasonably foreseeable consequence of the defendant's conduct. *Id*. at 91, 96.

In this case, the court of appeals appropriately focused on the adequacy of petitioners' allegations as a whole, and reasonably concluded that petitioners failed to plausibly allege that the Rule 12(b)(6) respondents' alleged contributions to purported charities foreseeably caused their injuries. Pet. App. 8a-9a. As the court explained, petitioners' allegation that the September 11, 2001 attack was "a direct, intended and foreseeable product" of the Rule 12(b)(6) respondents' contributions is simply a legal conclusion. *Id*. at 9a (citation omitted); see *Iqbal*, 556 U.S. at 678. In addition, the district court held that petitioners failed to allege that the Rule 12(b)(6) respondents knew that the charities to which they donated supported terrorism, see pp. 11-12, *supra*, and thus petitioners cannot use respondents' alleged knowledge to suggest that the attacks were the foreseeable result of respondents' indirect assistance. See Pet. App. 9a. Petition-

18

ers' allegations that the *charities* played an important role in facilitating al Qaeda's operations (Pet. 21), without more, do not indicate that petitioners' injuries were the foreseeable result of *respondents'* provision of assistance and services to those charities.  And as the court of appeals observed, petitioners provided no reason to conclude that merely "providing routine banking services to organizations and individuals said to be affiliated with al Qaeda * * * proximately caused the September 11, 2001 attacks."  Pet. App. 8a.

In sum, the Second Circuit did not impose a heightened standard of proximate causation, but instead reasonably concluded that petitioners failed to sufficiently allege that their injuries were the foreseeable consequence of the Rule 12(b)(6) respondents' indirect assistance to ostensible charities.  Petitioners' case-specific disagreement with the court's analysis of the allegations does not warrant further review.

### C. The Court Of Appeals' Personal-Jurisdiction Decision Does Not Warrant Review

The court of appeals applied settled standards in holding that petitioners' allegations were insufficient to establish personal jurisdiction with respect to certain defendants and sufficient to warrant jurisdictional discovery with respect to others.  Further review is unwarranted.

1. The touchstone under the Due Process Clause for exercising personal jurisdiction in a civil case is the "requir[ement] that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (second pair of brackets in original; citation and internal quotation marks omitted).  It is not sufficient that a de-

19

fendant can "foresee" that his conduct will "have an effect" in the foreign jurisdiction; he must take intentionally tortious actions that are "expressly aimed" at the forum. *Calder* v. *Jones*, 465 U.S. 783, 789 (1984). In *Calder*, the Court held that the defendants had "expressly aimed" their conduct at California by committing an intentional tort knowing that the plaintiff would feel the injury there. *Id.* at 789-790; see *Walden* v. *Fiore*, 134 S. Ct. 1115, 1124 n.7 (2014). Thus, a defendant may be subject to jurisdiction in a foreign forum if she purposefully directed her conduct at the forum by committing a tortious act with "kn[owledge] that the brunt of th[e] injury would be felt" in the forum.[7] *Calder*, 465 U.S. at 789-790.

2. Petitioners contend (Pet. 23) that the Second Circuit, by citing as authority its previous personal-jurisdiction decision in *Terrorist Attacks III* (see p. 2, *supra*), effectively required petitioners to allege that each respondent "specifically intended to harm the United States." As the government explained in its previous amicus brief in this case, had the Second Circuit held in *Terrorist Attacks III* that personal jurisdiction requires allegations of specific intent, that would be incorrect. 08-640 U.S. Br. 18-19. Rather, one means of establishing that a defendant expressly aimed conduct at a foreign forum is to allege that the defendant took intentionally tortious actions and

---

[7] Contrary to petitioners' argument (Pet. 23-24), this Court has not suggested that in intentional tort cases, due process requires only that the defendant have committed a tort that violates the forum's laws. The Court recently confirmed in *Walden* that "when intentional torts are involved," *Calder* requires not only that the defendant committed a tort, but that the defendant "expressly aimed" his conduct at the forum. 134 S. Ct. at 1120, 1123.

20

"knew that the brunt of th[e] injury would be felt" in the foreign forum. *Calder*, 465 U.S. at 789-790. As the government explained, however, *Terrorist Attacks III* could also be read to hold only that petitioners' allegations concerning indirect funding were insufficient to support the conclusion that the defendants acted with the requisite knowledge. 08-640 U.S. Amicus Br. 19-20.

Contrary to petitioners' contention (Pet. 30), the decision below does not "confirm[]" that the Second Circuit requires a showing of specific intent to harm the United States. Although the court of appeals used some language in discussing a particular defendant that could suggest that the court focused on specific intent to cause injury to individuals in the United States, see Pet. App. 47a-48a, the decision as a whole is best construed as focusing on the inadequacy of petitioners' particular allegations. In considering whether each defendant "expressly aimed" his or its conduct at the United States, *id.* at 37a-38a, the court emphasized that petitioners' claims were largely based on *indirect* funding of al Qaeda through purported charities. Because the connection between the personal-jurisdiction respondents and the direct tortfeasors is separated by intervening actors, petitioners must allege facts supporting the conclusion that, despite the intervening actors and actions, respondents acted with the requisite knowledge that their contributions would result in an injury that would be felt in the United States. See *Iqbal*, 556 U.S. at 678.

The court of appeals therefore appropriately focused on the adequacy of petitioners' allegations to raise an inference that, despite the indirect nature of each defendant's conduct, each knew that the brunt of

21

the injury would be felt in the United States, or otherwise "expressly aimed" their conduct at the United States. The allegations that the court held to be insufficient included allegations that certain defendants knowingly provided routine banking services to individuals associated with al Qaeda, Pet. App. 25a-26a, 41a-42a; that others provided support to Osama bin Laden exclusively before 1993, including through shareholder distributions, *id.* at 42a-43a; and that others "served in various positions of authority within organizations that are alleged to have supported terrorist organizations" but did not "play[] any role in directing any support to benefit al Qaeda," *id.* at 44a-45a (emphasis omitted). The court of appeals reasonably found that alleged conduct too remote from al Qaeda's targeting of the United States to give rise to an inference that respondents knew that the brunt of any injury from their conduct would be felt in the United States, or that they otherwise directed their conduct at the United States.

By contrast, the court of appeals reversed the district court's dismissal with respect to certain defendants alleged to have aimed their conduct at the United States. Those defendants allegedly provided direct support to al Qaeda knowing that al Qaeda was targeting the United States, Pet. App. 46a-47a; traveled to the United States shortly before the 2001 attacks and chose to stay at the same hotel as some of the hijackers, *id.* at 47a; and provided "cover employment" for an individual who provided funding for two of the hijackers in the United States, *id.* at 32a, 48a. The allegations concerning these defendants, the court concluded, "suggest[ed] a closer nexus between their

22

alleged support of al Qaeda" and the 2001 attacks. *Id.* at 48a.

In short, the court of appeals closely parsed petitioners' allegations to determine whether they raised an inference that the defendants expressly aimed their conduct at the United States. Petitioners' fact-specific disagreement with the court of appeals' application of the *Calder* standard to the allegations in this case (Pet. 29-33) does not warrant this Court's review.

3. Contrary to petitioners' argument, the court of appeals' decision does not conflict with the decision of any other court of appeals. Because the Second Circuit did not require specific intent to cause injury to people in the United States, the decision does not conflict with those decisions requiring only knowledge that the brunt of the injury would occur in the forum. See, *e.g.*, *Washington Shoe Co.* v. *A-Z Sporting Goods Inc.*, 704 F.3d 668, 674-676 (9th Cir. 2012). And because petitioners' allegations concern indirect assistance, the decision does not conflict with *Mwani* v. *bin Laden*, 417 F.3d 1, 4 (D.C. Cir. 2005), which considered the existence of personal jurisdiction over primary wrongdoers—Osama bin Laden and al Qaeda—who directly orchestrated attacks against the United States.[8]

Petitioners also identify (Pet. 26-28) a circuit split concerning whether, when a plaintiff has alleged that the defendant intentionally targeted him, courts in the forum where the plaintiff resides may exercise personal jurisdiction simply because the defendant knows that the plaintiff resides in that forum, or whether the forum must have been the focal point of the defend-

---

[8] The district-court decisions on which petitioners rely (Pet. 29) are distinguishable for the same reason.

23

ant's tort.  This Court resolved that conflict in *Walden*, holding that a defendant is not subject to personal jurisdiction in a forum "simply because he allegedly directed his conduct at plaintiffs whom he knew had * * * connections" to the forum.  134 S. Ct. at 1125.  This case does not implicate *Walden*'s resolution of that issue, however, because the Second Circuit's discussion of the inadequacy of petitioners' allegations indicates that petitioners' allegations were insufficient under either standard.  Petitioners did not allege that respondents directed their conduct either at individuals known to be United States residents, or at the United States itself.  See Pet. App. 41a-49a.

### CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

DONALD B. VERRILLI, JR.
  *Solicitor General*
STUART F. DELERY
  *Assistant Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
GINGER D. ANDERS
  *Assistant to the Solicitor General*
DOUGLAS N. LETTER
SHARON SWINGLE
ABBY C. WRIGHT
  *Attorneys*

MAY 2014