# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
IN RE:  TERRORIST ATTACKS ON ) **Civil Action No. 03 MDL 1570 (GBD)**
SEPTEMBER 11, 2001 ) **ECF Case**
_____ )

This document relates to:

*Ashton, et al. v. al Qaeda, et al.,* No. 02-cv-6977
*Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-5970
*Cantor Fitzgerald Assocs. v. Akida Inv. Co., et al.*, No. 04-cv-7065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-7279
*McCarthy, et al. v. Kingdom of Saudi Arabia*, No. 16-cv-8884
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9663
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9937
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-117
*DeSimone v. Kingdom of Saudi Arabia*, No. 17-cv-348
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-450
*The Underwriting Members of Lloyd's Syndicate 53 v. Kingdom of Saudi Arabia, et al.*,
     No. 17-cv-2129
*The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al*. No. 17-cv-02651
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-3887
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia, et al*., No. 17-cv-3908
*Abrams, et al. v. Kingdom of Saudi Arabia, et al*., No. 17-cv-4201
*Abtello, et al. v. Kingdom of Saudi Arabia et al*., No. 17-cv-05174
*Aasheim, et al. v. Kingdom of Saudi Arabia, et al*., No. 17-cv-5471
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al*., No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom
     of Saudi Arabia, et al*., No. 17-cv-07914
*Abbate, et al. v. Kingdom of Saudi Arabia, et al*., No. 17-cv-8617

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## RENEWED MOTION TO DISMISS OF THE SAUDI HIGH COMMISSION FOR
## RELIEF OF BOSNIA & HERZEGOVINA

Lawrence S. Robbins (LR8917)
Roy T. Englert, Jr.
ROBBINS, RUSSELL, ENGLERT,
   ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, D.C. 20009
(202) 775-4500
(202) 775-4510 (fax)
*Attorneys for the Saudi High Commission for Relief
of Bosnia & Herzegovina*

January 4, 2018

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.      Plaintiffs Make No Allegation Against The Saudi High Commission To Warrant
        Jurisdiction Under JASTA .............................................................................. 2

        A.      Plaintiffs Present Factual Allegations That Rely On Misrepresented And
                Inadmissible Evidence ........................................................................ 3

        B.      Plaintiffs' Arguments Regarding Causation Do Not Cure Their Deficient
                Allegations ........................................................................................ 6

II.     Plaintiffs Cannot Support Their Request For Jurisdictional Discovery............................ 8

CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Havlish v. Bin Laden*,
   2011 U.S. Dist. LEXIS 155899 (S.D.N.Y. Dec. 22, 2011) ...................................................... 6

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011) ........................................................................................ 4

*In re September 11 Litigation*,
   621 F. Supp. 2d 131 (S.D.N.Y. 2009) ........................................................................................ 4

*In re Terrorist Attacks on September 11, 2001*,
   740 F. Supp.  2d 494 (S.D.N.Y. 2010) ...................................................................................... 8

*In re Terrorist Attacks on September 11, 2011*,
   714 F.3d 118 (2d Cir. 2013) ...................................................................................................... 8

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017) .................................................................................................. 7

**Statutes**

8 U.S.C. § 1189 ............................................................................................................................ 1

18 U.S.C. § 2339B ........................................................................................................................ 1

28 U.S.C. § 1605B(b) .................................................................................................................... 6

**Other Authorities**

Exec. Order No. 13224, 66 FR 49079 (2001) .............................................................................. 1

**Rules**

Fed. R. Evid. 803(8) ...................................................................................................................... 4

## INTRODUCTION

As its name suggests, the Saudi High Commission for Relief of Bosnia and Herzegovina ("SHC") provided humanitarian relief in Bosnia, with funding and some direction from Saudi Arabia.  SHC never had any connection with the United States.  Plaintiffs nevertheless seek to state a claim in a U.S. court against SHC under JASTA on the premise that SHC *caused* the 9/11 terrorist attacks.  To support that hypothesis, Plaintiffs misstate the law, cite inadmissible documents for propositions that they do not support, and draw extravagant conclusions from paper-thin evidence.

Some Islamic charities, the Executive Branch has determined, provide or provided material support to terrorists.  Such a determination leads to designation as a global terrorist entity under 8 U.S.C. § 1189.  For example, Benevolence International Foundation, Global Relief Foundation, Al-Haramayn Islamic Foundation, Rabita Trust, and Al-Haramayn al Masjed al aqsa have been so designated.  *See* Exec. Order No. 13224, 66 FR 49079 (2001), *https://www.treasury.gov/ofac/downloads/sdnlist.pdf*.  Providing material support to an organization so designated is a crime.  18 U.S.C. § 2339B.

**The United States government has *never* designated SHC as any kind of terrorism supporter.**  Yet Plaintiffs' arguments in opposition to dismissal of their complaints contain such extravagant assertions as "the U.S. government *determined* that the SHC had been a longstanding supporter of terrorism against the U.S." *Ashton* Mem. 42 (emphasis added); *see also* CAC Mem. 63.  What Plaintiffs cite in support of that claim is *not* an official designation, and not even a governmental *report*, but an unauthenticated internal memorandum from the U.S. Embassy in Sarajevo to officials in Washington.  *See Ashton* Mem., Exh. 243; CAC Mem., Exh. 16.  The document makes no mention whatsoever that any of the Islamic charities listed was

1

suspected of providing support *to al Qaeda*; nor is al Qaeda even mentioned anywhere in the document. Such is the kind of misrepresented, inadmissible, unreliable evidence on which Plaintiffs base their extravagant factual assertions about SHC, which the uncontested Al-Roshood Declaration shows was a legitimate humanitarian organization before it ceased all operations several years ago.

Plaintiffs' fantastical effort to paint this legitimate humanitarian organization as responsible for the 9/11 terrorist attacks depends on allegations that either lump SHC indiscriminately with other Islamic charities; are remote in place and time from the 9/11 attacks; or are wholly conclusory and unsupported by the mountain of paper that Plaintiffs have inflicted on the Court. It flunks *all* of the requirements of JASTA.

Because Plaintiffs say nothing to warrant this Court's assertion of jurisdiction over SHC, SHC remains immune from the claims alleged in this matter, and all of the complaints against it should be dismissed in their entirety, with prejudice.

## ARGUMENT

### I.   Plaintiffs Make No Allegation Against The Saudi High Commission To Warrant Jurisdiction Under JASTA

Rather than attempt to rehabilitate any of the allegations SHC showed to be deficient in its motion to dismiss, Plaintiffs present *different* allegations. Some of those allegations, after fourteen years of litigation, are raised for the first time. Others change or supplement factual allegations made in the *Ashton* or the Consolidated Amended Complaint.

Moreover, Plaintiffs ground these allegations on misrepresented or inadmissible evidence. *All* of Plaintiffs' new allegations fall into three familiar categories – guilt-by-association allegations that lump SHC with other Islamic charities; outdated and immaterial

allegations that are remote in place and time from the 9/11 terrorist attacks; and conclusory and unsupported allegations about SHC's support for al Qaeda.

A.    **Plaintiffs Present Factual Allegations That Rely On Misrepresented And Inadmissible Evidence**

The Consolidated Amended Complaint Plaintiffs ("CAC Plaintiffs") claim that "[m]aterials discovered during a raid on SHC's offices one month after the September 11th attacks *confirm* that SHC served as an operational hub for al Qaeda activities, both prior to and after the September 11th attacks."   CAC Mem. 62 (emphasis added).   Embroidering the allegation made in the Consolidated Amended Complaint, CAC ¶ 94, Plaintiffs claim that, following the raid, "the Financial Police of the Federation of Bosnia Herzegovina Ministry of Finance described SHC as a front for radical and terrorism-related activities."   CAC Mem. 62-63.   The materials discovered during the raid were "computer hard drives with photographs of the World Trade Center before and after its collapse."   CAC Plaintiffs' Averment of Facts and Evidence ("Aver.") ¶ 533.

The deficiency of this allegation is manifold:  it does not allege any tortious act by SHC; it does not allege that any such act was done within the scope of office, employment, or agency; and it certainly does not allege that SHC engaged in any act – let alone a tortious act – that caused the 9/11 attacks.  Rather, Plaintiffs allege that because SHC had photographs of one of the world's most iconic landmarks before the 9/11 attacks, and because it had photographs of the landmark after one of the world's greatest atrocities, this "confirm[s]" SHC's direct involvement in the 9/11 attacks.[1]  CAC Mem. 62.

---

[1] Given the dramatic nature and historic importance of the destruction of the World Trade Center, it is a fair guess that before and after pictures could be found on the hard drives of many computers all around the world.  The attitude of the person who stored the photos undoubtedly fell somewhere along a spectrum between abject horror at the loss and destruction to support for the 9/11 attacks.  To draw a conclusion about the attitude (let alone the actions) of the person who stored the images on a hard drive

As to the Bosnian Ministry of Finance, what it actually said was that it "confiscated some documentation [on the premises of SHC] . . . that . . . does not belong in the scope of work of a humanitarian organization."   Aver. ¶ 534 (internal quotation marks omitted).   The Bosnian Ministry of Finance has *never* described SHC as a "front for radical and terrorism-related activities," *id.*; it has never found that SHC provided any support whatsoever to al Qaeda; and it has never sought to link SHC with the commission of the 9/11 attacks.

Plaintiffs' misrepresentation does not end there.   Both the CAC and the *Ashton* Plaintiffs claim that "[d]eclassified State Department cables identify SHC as a member of a 'dirty dozen' of charities in Bosnia supporting al Qaeda."   CAC Mem. 63; *see also Ashton* Mem. 42. Embellishing still further, Plaintiffs represent that the "State Department" (as opposed to counter-terrorism officials) "identif[ied]" SHC on a list of charities that "support[ed] al Qaeda" (which is not alleged in the Complaints).   *Compare* CAC ¶ 82 *with* CAC Mem. 63.   Not only have Plaintiffs altered critical elements of their factual allegation, but also they now state that the list "identif[ied] . . . charities in Bosnia supporting al Qaeda."   CAC Mem. 63.   As addressed in the introduction to this reply, Plaintiffs' evidence says nothing of the kind.

The document, *id.*, Exh. 16; *Ashton* Mem., Exh. 243, is not even admissible.   Contrary to Plaintiffs' representation, because this document is a preliminary investigative memorandum, it does not reflect the "findings" of a "public office." Fed. R. Evid. 803(8); *see In re September 11 Litigation*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009).   Therefore, it is not within an exception to the rule against hearsay.   "As courts in this Circuit have found repeatedly, [precedent] teaches 'that references to preliminary steps in . . . administrative proceedings that did not result in an adjudication on the merits . . . are, as a matter of law, immaterial.'"   *In re Platinum & Palladium*

---

(let alone about that person's employer) is to engage in rank speculation.  Plaintiffs' contention that this allegation is "[f]ar from 'conclusory' or 'boilerplate'" is disingenuous.  CAC Mem. 63 (quoting SHC Mem. at 1, 11, 15, 25 n.14).

*Commodities Litig.*, 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011); *see also* KSA Reply Mem. 17-18.

Moreover, the completed investigations ultimately found *no evidence* to support the preliminary suspicion on which Plaintiffs rely. SHC has submitted the results of an audit conducted in 2002, *after* the date of the document on which Plaintiffs rely, by the Bosnian Ministry of Finance. The audit covered disbursements of funds by SHC from 1998 to 2001. The audit revealed in detail many categories of humanitarian aid, such as the "improvement of mosques" and the provision of "scholarships [to] students in Jordan." It expressed not one word of concern about diversion of funds from SHC's humanitarian aid to al Qaeda or any other non-humanitarian purpose. Decl. of Saud bin Mohammad Al-Roshood, Exh. 3. No wonder SHC has never been designated by any Bosnian or U.S. agency as a supporter of terrorism. The very fact that SHC has been placed under the scrutiny reflected in Plaintiffs' exhibits, and never so designated, speaks volumes.

The *Ashton* Plaintiffs' opposition also raises new factual allegations – many of which were not raised in *any* of their six amended complaints or the Consolidated Amended Complaint – and support those allegations with a series of *arguments* and *additional allegations* that Plaintiffs refer to as an affidavit. *See* ECF No. 3780 ("Kreindler-Pounian Affidavit"). Once again, Plaintiffs misrepresent the evidence presented in support of their new allegations.

The most egregious of the newly raised allegations attempts to tie SHC with two of the 9/11 hijackers. *See Ashton* Mem. 43 (stating that "[h]ijackers Hazmi and Midhdar [*sic*] fought in Bosnia as members of a mujahidin force that was funded by the SHC"). There is no support for that allegation. The evidence provided in support is a CIA report that provides a brief biographical profile on 9/11 hijacker Khalid al-Mihdhar. *See* Kreindler-Pounian Affidavit ¶ 202 (citing

5

Exh. 67 at 49).  Mihdhar's biography makes *no* mention of SHC and simply states that he fought in "Bosnia."  It does nothing to support the claim that "[the] mujahidin force [Mihdhar fought with] was *funded by the SHC*."  *Ashton* Mem. 43 (emphasis added).  In fact, the entire document does not mention SHC; nor does it present anything that even begins to suggest a link between any of the 9/11 hijackers and SHC.

That Plaintiffs have raised (in their opposition) new factual contentions that in fourteen years of litigation were never alleged, and that they have chosen to ground those allegations on patent misrepresentations of their *own* evidence, underscores what has always been true of Plaintiffs' case: They have none.  In a legal regime in which Plaintiffs are supposed to come forward with evidence to make a prima facie case that an exception to sovereign immunity applies, *see* KSA Reply Mem. 12-14, they have failed utterly in meeting their burden.

**B.    Plaintiffs' Arguments Regarding Causation Do Not Cure Their Deficient Allegations**

Even if Plaintiffs had established a tortious act by either SHC, or its official, employee, or agent that was committed within the scope of the office, employment, or agency – which they have not done, for the reasons stated in the memorandum in support of SHC's motion to dismiss – they have failed to meet their burden to plead and prove that the 9/11 attacks were "caused by" any tortious act of SHC.  28 U.S.C. § 1605B(b).  Plaintiffs argue that JASTA establishes only a "broad causation standard of 'some reasonable connection'" between the alleged tortious acts of SHC and the 9/11 attacks.  CAC Mem. 18.  However as Plaintiffs concede, *id.* at 19, and as this Court has held, even that standard – which, as Saudi Arabia shows, KSA Reply Mem. 9-10, is far too low – requires Plaintiffs to show that the alleged tortious acts of SHC were a proximate cause of the injuries Plaintiffs sustained as a result of the 9/11 attacks.  *See Havlish v. Bin Laden*, 2011 U.S. Dist. LEXIS 155899, at *202 (S.D.N.Y. Dec. 22, 2011) (Daniels, J).

Plaintiffs have not alleged – let alone shown – any connection between the alleged material support provided to terrorist groups and the 9/11 attacks.  Instead, Plaintiffs *argue* that SHC materially supported al Qaeda in "carry[ing] out the September 11th attacks" (CAC Mem. 62), and allege only that SHC money *may* have supported terrorist groups – not that the money actually supported attacks on the United States, not that the money supported the 9/11 attacks, and most certainly not that the money was diverted knowingly or with deliberate indifference.

Plaintiffs' factual allegations against SHC are nothing if not attenuated.  As described above, Plaintiffs' allegations consist of three types of assertions:   (1) guilt-by-association allegations that lump SHC with other Islamic charities – some of which, unlike SHC, have been designated as global terrorist organizations; (2) allegations that are remote in place and time from the 9/11 attacks; and (3) wholly conclusory and fatally vague allegations – some of which are grounded on inadmissible or misrepresented evidence.  These indirect allegations do not suffice to show causation under even the standards espoused by the authorities on which Plaintiffs rely. *See* CAC Mem. 6 n.4 (citing *Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) (stating that proximate cause "preclude[s] liability in situations where the causal link between conduct and the result is so attenuated that the consequence is more aptly described as mere fortuity") (citation and internal quotation marks omitted)).  In fact, Plaintiffs have cited no case, and we have found none, in which the type of attenuated causal link they allege here – that SHC money spent in Bosnia many years before the 9/11 attacks made its way into the hands of those who support terrorism and specifically those who carried out the 9/11 attacks – is sufficient to confer liability.  The law is clear, and every case cited in the papers reiterates it:  When "plaintiffs do not allege that . . . defendants participated in the September 11, 2001 attacks"; when they do not allege "that [defendants] provided money directly to al Qaeda"; and when they do not allege

"that the money allegedly donated . . . actually was transferred to al Qaeda and aided in the September 11, 2001 attacks," "[the] allegations are insufficient for proximate causation purposes." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 118, 124 (2d Cir. 2013) ("*Terrorist Attacks VI*").

Nor do Plaintiffs' civil conspiracy and aiding-and-abetting claims fare any better. Those theories require Plaintiffs to show that SHC acted with "deliberate indifference" or "knowledge" of the "terrorist acts." *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 517 (S.D.N.Y. 2010) ("*Terrorist Attacks V*"). Plaintiffs have not alleged, and cannot plausibly allege, that SHC acted knowingly or with deliberate indifference in supporting any terrorist group, let alone in supporting al Qaeda to carry out the 9/11 attacks.

## II.     Plaintiffs Cannot Support Their Request For Jurisdictional Discovery

Plaintiffs have never supported their request for jurisdictional discovery from SHC on any adequate ground, nor have they identified any relevant topics for discovery. Fourteen years and six amended complaints later, the *Ashton* Plaintiffs, for the first time, argue that Plaintiffs are entitled to jurisdictional discovery because of SHC's purported funding of KA STAN, a construction company that Plaintiffs say was controlled by al Qaeda affiliates. *Ashton* Mem. 42. This allegation was not raised in any of the *Ashton* Plaintiffs' six amended complaints; it was not raised in the Consolidated Amended Complaint; nor did Plaintiffs seek to amend their complaint to include this allegation. Thus, the *Ashton* Plaintiffs' *sole* support for jurisdictional discovery is based on a factual allegation this Court should not even consider.

Moreover, the allegation is entirely conclusory. Plaintiffs assert that "a significant portion of the funds [SHC sent to KA STAN for its humanitarian construction projects] were used to fund al Qaeda." *Id.* at 43. To support that assertion, Plaintiffs present KA STAN's financial documents from 1996 to 1998, which show that KA STAN made profits on SHC's

humanitarian construction projects.  *See id.*; Exh. 246 at 6.  Shortly thereafter, one of the founders of KA STAN stated that the company was no longer "financially viable."  *Ashton* Mem. 43 (citation omitted).  Based on this set of facts (and nothing more), Plaintiffs leap to the conclusion that, because KA STAN ceased to be financially viable, the profits from SHC's construction project must have been diverted to al Qaeda to perpetrate the 9/11 attacks.  *Id.*

When fully parsed, Plaintiffs' sole support for jurisdictional discovery is as follows: Because KA STAN made profits from SHC humanitarian construction projects, it must have been profitable *overall*; and, because it was profitable overall, the reason it was no longer financially viable was because it diverted those profits (presumably at the behest of SHC) to support al Qaeda's commission of the 9/11 attacks.

That bizarre allegation would make even Mrs. Palsgraf blush.  As Plaintiffs' own evidence shows, from 1996 to 1998, on *every* single project KA STAN contracted to build (not just SHC's projects), KA STAN did *not* incur a financial loss.  In fact, with the exception of two construction projects – on which KA STAN broke even – the project's contract amount exceeded its expenses.  *Id.*, Exh. 246 at 6.  Accordingly, per Plaintiffs' logic, the vast majority of the organizations that contracted with KA STAN also intended their funds to be diverted to al Qaeda to carry out the 9/11 attacks.  This kind of "evidence," which would prove that scores of organizations were the proximate cause of the largest terrorist attack ever on U.S. soil, refutes itself.

There is no basis on which this Court could find that Plaintiffs have come forward with allegations of specific and crucial facts so as to warrant jurisdictional discovery.  The Court accordingly should deny any jurisdictional discovery.

## CONCLUSION

This Court should dismiss Plaintiffs' claims in their entirety, with prejudice.

January 4, 2018                                   Respectfully submitted,

                                                  /s/ Lawrence S. Robbins
                                                  Lawrence S. Robbins (LR8917)
                                                  Roy T. Englert, Jr.
                                                  ROBBINS, RUSSELL, ENGLERT,
                                                     ORSECK, UNTEREINER & SAUBER LLP
                                                  1801 K Street, N.W.
                                                  Suite 411
                                                  Washington, D.C. 20009
                                                  (202) 775-4500
                                                  (202) 775-4510 (fax)

                                                  *Attorneys for the Saudi High Commission for Relief
                                                  of Bosnia & Herzegovina*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 4th day of January 2018, I caused a copy of the foregoing document to be served electronically pursuant to the Court's ECF system on the consolidated MDL docket, and the individual dockets for the following cases, which I understand to include all but three[*] of the consolidated MDL cases in which the Saudi High Commission for Relief of Bosnia & Herzegovina is named as a defendant.

*Ashton, et al. v. al Qaeda, et al.,* No. 02-cv-6977
*Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03-cv-9849
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04-cv-5970
*Cantor Fitzgerald Assocs. v. Akida Inv. Co., et al.*, No. 04-cv-7065
*Euro Brokers Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 04-cv-7279
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9663
*Addesso et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-9937
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-117
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-450
*The Underwriting Members of Lloyd's Syndicate 53 v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-2129
*The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.* No. 17-cv-02651
*Abarca, et .al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-3887
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-3908
*Abrams, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-4201
*Abtello, et al. v. Kingdom of Saudi Arabia et al.*, No. 17-cv-05174
*Aasheim, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-5471
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-8617

/s/ Lawrence S. Robbins
Lawrence S. Robbins

---

[*] The remaining three individual cases in which the Saudi High Commission for Relief of Bosnia & Herzegovina is named as a Defendant are *McCarthy, et al. v. Kingdom of Saudi Arabia*, No. 16-cv-8884, *DeSimone v. Kingdom of Saudi Arabia*, No. 17-cv-348, and *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914. The Saudi High Commission for Relief of Bosnia & Herzegovina is presently unable to file in those dockets and is serving counsel in those cases via the MDL docket and electronic mail.