UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

In re: Terrorist Attacks on
September 11, 2001[1]

———————————————————————

)
)
)
)
)

No. 03 MDL 1570 (GBD) (SN)

<br>

### MEMORANDUM OF LAW IN SUPPORT OF
### THE MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF
### ORGANIZATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Eric L. Lewis
Aisha E. Bembry (*pro hac vice*)
Waleed Nassar (*pro hac vice*)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Ave., N.W.
Suite 600
Washington, D.C. 20006
Tel: (202) 833-8900
Fax: (202) 466-5738
eric.lewis@lbkmlaw.com
aisha.bembry@lbkmlaw.com
waleed.nassar@lbkmlaw.com


*Counsel for Defendants Muslim World League and
International Islamic Relief Organization*

January 5, 2018

———————————

[1] This applies to: *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-6977 (GBD) (SN); *Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-cv-9849 (GBD) (SN); *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-7065 (GBD) (SN); *Continental Casualty Co., et al. v. Al Qaeda et al.*, Case No. 04-cv-05970 (GBD) (SN); *Euro Brokers Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-7279 (GBD)(SN); *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-6978 (GBD) (SN); *O'Neill, Sr., et al. v. Al Baraka et al.*, Case No. 04-cv-1923 (GBD) (SN).

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

BACKGROUND ............................................................................................... 1

ARGUMENT ..................................................................................................... 4

I.     Plaintiffs' Claimed Production Deficiencies Lack Merit...................................4

     A.    Alleged Deficiencies in Productions Subject to the April 2011 Court Orders ........5

          1.    MWL Constituent Council Documents ......................................6

          2.    Financial Records.....................................................................6

          3.    MWL and IIRO Auditing Records  ...........................................7

          4.    Additional Categories of Documents Ordered by the Court......................8

     B.    Alleged Deficiencies in Productions Concerning Other Document Requests.......10

          1.    Records Concerning the MWL and IIRO and the Saudi Government ......10

          2.    Records Concerning MWL and IIRO Committees, Boards, Councils and Internal Bodies ................................................................11

          3.    Records Concerning Purported Investigation, Arrests and Raids and Closures of MWL and IIRO Branch Offices .............................12

          4.    Records Concerning Rabita Trust and Al Haramain Al Masjed Al Aqsa ......................................................................................13

          5.    Records Concerning the MWL's and IIRO's Purported Support of "Jihadist Universities" and Islamic Centers and Mosques .......................14

          6.    Records Concerning Senior Officials of the MWL and IIRO  and "Other Categories of Relevant Documents".............................15

          7.    Purported Missing Attachments.................................................16

II.    Defendants' Branch Office Searches Were Extensive and Reasonable ...........................16

III.   The Organization of the Productions is Sufficient...........................................18

i

IV.      Plaintiffs Have Failed to Negotiate in Good Faith Under Rule 37(a)...............................19

CONCLUSION.........................................................................................................................20

TABLE OF AUTHORITIES

**CASES**                                                                          PAGE(S)

*Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.,*
   No. 99 CIV 1330 AGS, 2000 WL 521341 (S.D.N.Y. May 1, 2000) ......................................... 5

*Century Jets Aviation LLC v. Alchemist Jet Air LLC,*
   No. 08 Civ. 9892 (GBD(KNF), 2011 WL 724734 (S.D.N.Y. Feb. 8, 2011) .......................... 20

*In re Terrorist Attacks on Sept. 11,*
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) .................................................................. 5, 6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
   No. 04 Civ. 5316(RMB), 2006 WL 2109472 (S.D.N.Y. July 20, 2006) ................................ 18

*Menard v. Chrysler Grp., LLC,*
   No. 14 CV 6325(VB), 2015 WL 5472724 (S.D.N.Y. July 2, 2015) ....................................... 21

*Morgan v. City of New York,*
   No. 00 Civ. 9172(LMM), 2002 WL 1808233 (S.D.N.Y. Aug. 6, 2002) ................................ 20

*Treppel v. Biovail Corp.,*
   233 F.R.D. 363 (S.D.N.Y. 2006) ......................................................................... 19

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,*
   235 F.R.D. 521 (D.D.C. 2006) ............................................................................. 21

*Vaigasi v. Solow Mgmt. Corp.,*
   No. 11 CIV 5088(RMB) (HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ...................... 18


**RULES AND REGULATIONS**

Fed. R. Civ. P. 26 ........................................................................................... 18

Fed. R. Civ. P. 34(b)(2)(E) .............................................................................. 20

Fed. R. Civ. P. 37(a)(1) ................................................................................... 21


**ADDITIONAL AUTHORITIES**

*AU Section 229A Working Papers*,
   https://pcaobus.org/Standards/Archived/Pages/AU339A.aspx.  (last accessed Jan. 5,
   2018).......................................................................................................... 9

http://minorityrights.org/minorities/biharis/ ........................................................15

The Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO") (collectively referred to herein as "Defendants"), through undersigned counsel, respectfully submit this Memorandum of Law, and the declarations of Ammar Chaouat, Mohamed Fawzi,[2] and Waleed Nassar, together with accompanying exhibits, in opposition to Plaintiffs' Motion to Compel Defendants' production of documents (Dkt. #3827) (hereinafter "Motion to Compel").

## BACKGROUND

Plaintiffs' Motion to Compel is the latest in a continuous stream of vague, recurring complaints relating to perceived gaps in Defendants' document productions.  As detailed below, not only is it replete with inaccuracies – many of which could have been resolved had Plaintiffs fulfilled their obligation to meet and confer prior to filing the instant motion – it is also at odds with the record substantiating Defendants' exhaustive efforts and comprehensive productions.

As Plaintiffs have acknowledged, until late 2012, MWL and IIRO were represented by former counsel, McMahon and Associates.   In 2011, various issues arose concerning the completeness of Defendants' document productions and Plaintiffs filed two motions to compel. Conferences were conducted, culminating in the issuance of the April 2011 Orders granting in part Plaintiffs' motions to compel, while also recognizing the myriad challenges facing MWL and IIRO in dealing with the scope of discovery sought in this complex, multi-district litigation.[3]

In a clear demonstration of their commitment to comply with their discovery obligations, in late 2012, Defendants retained Lewis Baach Kaufmann Middlemiss PLLC (then, Lewis Baach

---

[2] Both Mr. Chaouat and Mr. Fawzi's declarations were made in their native Arabic, however, English translations have been provided for the court and all citations herein are to the English translations.

[3] MWL and IIRO are two foreign nonprofit organizations that conduct their business principally in Arabic.  Judge Frank Maas recognized the challenges this posed, stating "[w]hat's needed is recognition of the fact that there are language and cultural problems."  Nassar Decl. Ex. 1 at 29:16-17.

PLLC) as counsel,[4] who commenced a massive global exercise to locate documents responsive to Plaintiffs' hundreds of requests.  At a great expenditure of effort and resources, dozens of overseas trips were taken by a team of U.S. attorneys fluent in Arabic to review and gather records from 17 offices[5] scattered across 14 countries[6] and over 300 days have been spent reviewing an estimated 2 million pages of documents, predominately in Arabic.  Nassar Decl. at ¶¶2-3.  This has culminated in the production of nearly 500,000 pages of responsive records, organized by comprehensive indices, within the deadlines set by this Court.  *Id.*

The task of searching for documents potentially responsive to Plaintiffs' hundreds of document requests also required significant assistance over the years from numerous representatives of MWL and IIRO.  To date, tens of thousands of hours of time from Defendants' full-time and contract staff has been expended to conduct searches for potentially responsive documents.  IIRO Decl. at ¶11, 13, 17, and 33; MWL Decl. at ¶24.  Defendants also coordinated efforts to obtain numerous travel visas for counsel and secured access to branch or regional offices that had been closed for years, as was the case in the Philippines and the Eastern Province of Saudi Arabia.  Nassar Decl. at ¶4; IIRO Decl. at ¶28.

Since 2013, undersigned counsel has sought to work with Plaintiffs' counsel to address concerns relating to Defendants' productions.  On at least a half dozen occasions, undersigned counsel have undertaken to engage Plaintiffs in meet and confer discussions in an attempt to

---

[4] As detailed in the declarations of Mohamed Fawzi and Ammar Chaouat (submitted herewith), MWL and IIRO believed a change in counsel – to a firm with experience in Saudi Arabia and Arabic language capabilities – would address the communication issues they faced while working with former counsel.  Declaration of Ammar Chaout ("IIRO Decl.") at ¶22 and Declaration of Mohamed Fawzi ("MWL Decl.") at ¶17.

[5] These offices are located in London, Philippines, Indonesia, Pakistan, Bosnia, Kosovo, Macedonia, Albania, Jordan, Sudan, Kenya, Tanzania and Vienna, as well as Jeddah, Mecca, the Eastern Province, and Riyadh in Saudi Arabia.  IIRO Decl. at ¶24; MWL Decl. at ¶19.

[6] The majority of the countries visited by LBKM attorneys to search for records are subject to the same State Department travel safety advisories that Plaintiffs cited to recently as a basis for their refusal to conduct day-long depositions.  *See* Nassar Decl. Ex.2 at p. 2-5.

2

resolve disagreements over the scope of Plaintiffs' hundreds of document requests without the need for court intervention.[7]  Over the years, however, Plaintiffs proved largely resistant to engaging meaningfully on the issues and also unwilling to narrow the scope of their most burdensome requests, instead choosing to pile on additional requests.[8]  Defendants made clear their commitment to comprehensive production on the merits and to make good faith reasonable efforts to comply with all reasonable requests, even if outside the original Orders.

Perhaps the starkest example of Plaintiffs' general unwillingness to engage with MWL and IIRO has been their wholesale lack of communication for more than a year, in violation of Rule 37, regarding concerns raised in the instant Motion to Compel despite the fact that discovery was still ongoing.  Nassar Decl. at ¶11.  This course of conduct is all the more perplexing given that Plaintiffs' Motion to Compel includes numerous complaints never before raised, as discussed below.

As detailed herein, what Plaintiffs seek are documents that have already been produced, documents that were never requested, or documents that Plaintiffs believe "must" exist, but diligent searches in the farthest reaches of the globe have not located.  But Plaintiffs' beliefs are not evidence of any failure to search for or to withhold documents, despite their contentions otherwise.  Put simply, enough is enough.  The record demonstrates that MWL and IIRO have complied with the requirements of the Federal Rules and court orders to fulfill their discovery obligations and, therefore, Plaintiffs' Motion to Compel should be denied in its entirety.

---

[7] *See*, *for example*, Nassar Decl. Exs. 3, 4, and 5.

[8] For instance, days after the first meet and confer was conducted between undersigned counsel and Plaintiffs' counsel on July 16, 2013, rather than working with counsel to focus their requests, Plaintiffs instead took it as an opportunity to inundate Defendants with a list of over 80 names and entities to search for – the vast majority of which were raised for the first time.  *See* Nassar Decl. Ex. 6.  Plaintiffs continued this pattern as late as 2016, when they added tens of additional entities and names to their already voluminous document requests.  *See* Nassar Decl. Ex. 7 at p. 4.

**ARGUMENT**

I.     **Plaintiffs' Claimed Production Deficiencies Lack Merit**

In their Motion to Compel, Plaintiffs continue in their long pattern of making unsubstantiated claims that have led Defendants over the years down numerous rabbit holes in far-flung locations to search for nonexistent documents. As courts have observed, however, "the Court cannot compel production of what does not exist." *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, N.A., No. 99 CIV 1330 AGS, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000).

Compounding matters, Plaintiffs have repeatedly relied upon numerous highly questionable bases in support of their purported beliefs, including:

(1)     citing discredited experts regarding the existence of documents, including their "lead investigator and consultant," who admitted to making "entirely and manifestly false" statements in support of their allegations in this very litigation;[9]

(2)     relying on unauthenticated documents that have been discredited by this court;[10]

(3)     submitting documents with heavy indicia of forgeries that were struck by Judge Maas who found reason "to question the authenticity of the documents" when Plaintiffs repeatedly refused to provide any information as to the provenance of the documents in violation of a Court Order.[11]

As discussed in more detail below, Plaintiffs repeatedly have demanded production of documents relating to phantom employee expulsions, despite the lack of evidence in the record and a contravention of common sense that such expulsions occurred. Plaintiffs also claim robust records *should* exist for employees that ceased any relationship with IIRO or MWL nearly a

---

[9] *See* Nassar Decl. Ex. 8 at 1, 3.

[10] *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 817-818 (S.D.N.Y. 2005) (Judge Casey discredited the so called Golden Chain document due to its "serious foundational flaws," stating that it "does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office. It does not establish [a defendant's] involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the United States").

[11] *See* Nassar Decl. Ex 9 at 1-2.

decade before the 9/11 attacks.[12]  Each of these speculative allegations has required undersigned counsel to travel to the locations in question, interview witnesses who may have some knowledge related to the allegations, and search hundreds of thousands of pages of hard copy records to attempt to locate records which simply do not exist.  Nassar Decl. at ¶5.

Setting aside these broad issues in dealing with Plaintiffs' questionable discovery practices, over the years Defendants have searched for each category of documents complained of in Plaintiffs' motion, which generally fall into two groups: (A) alleged deficiencies in productions concerning the April 2011 Orders; and (B) alleged deficiencies in productions concerning their hundreds of other document requests.  The short answer is that thorough searches have been conducted and if responsive documents exist, they have been produced. Each is discussed in turn, however, below.

### A.  Alleged Deficiencies in Productions Subject to the April 2011 Court Orders

While Plaintiffs generically complain of deficiencies in productions of "every category" ordered in the April 2011 Orders, they provide the court with few specific examples of the claimed deficiencies.  Their pattern of simultaneously levying overbroad complaints while also playing coy with specifics continues even in their motion, when specificity is required for Defendants to fashion a response and to allow for the Court to make a reasoned ruling on the issues.  Because we cannot address that which has not been identified with sufficient specificity, we address herein only the complaints specifically enumerated in Plaintiffs' Motion to Compel, particularly deficiencies related to (1) documents relating to the MWL Constituent Council, (2) certain financial records, (3) certain auditing records, and (4) "additional categories" purportedly ordered by the Court, as Plaintiffs have broadly presented in their motion.

---

[12]*See* Nassar Decl. Ex. 10 (indicating that El Fatih Hassanein's tenure with IIRO ended in September 1992) and Ex. 11(indicating that Mohamed Jamal Khalifa's tenure with IIRO ended in October 1993).

1.     MWL Constituent Council Documents

Plaintiffs assert that the productions relating to this Council are incomplete, including perceived deficiencies in reports submitted to the Council.  See Memorandum of Law in Support of Plaintiffs' Motion to Compel ("Memo") at 4.  Not only are Plaintiffs' complaints misguided, this matter could have been discussed and resolved had Plaintiffs approached Defendants in advance of filing the instant motion.  MWL has produced over 1,500 pages of reports and Resolutions and Recommendations of the Council, including the production of the full set of Resolutions and Recommendations of the Constituent Council for the 1992-2004 date range, as well as the accompanying reports considered by the Council.[13]  Nassar Decl. at ¶15.  While Plaintiffs assert that that there are missing "reports," reviewed by the Council referenced in the Resolutions and Recommendations, those reports are contained within the larger report submitted to the Council by the Secretary General that have been produced which include, among other things, reports on delegation visits of senior officials, activities of the MWL departments, offices, and centers, activities of affiliated organizations, such as IIRO and the Fiqh Council, and conferences held or attended by MWL.  Had Plaintiffs reviewed the production or asked undersigned counsel, they would not have wasted the Court's time, as well as that of the parties, litigating this non-issue.  *Id*. at ¶14.

2.     Financial Records

Plaintiffs' claims of deficiencies in the production of financial records is contradicted by the hundreds of thousands of pages of documents that have been produced that detail the finances of MWL and IIRO in both broad outline and granular detail, including financial reports, internal financial records, balance sheets, budgets, banking records, and donors and recipients of aid, as well as audits and underlying documents.  *Id*. at ¶16.  Additionally, over 64,000 pages of

---

[13] *See* IIRO 016769-IIRO 018382.

MWL and IIRO bank records have been produced, including records received at the request of Defendants to branch and regional offices both inside the Kingdom and abroad, as well as directly to banks.  *Id*. at ¶17.

In a March 2016 meet and confer, Plaintiffs indicated for the first time their belief about the existence of an additional 66 MWL and IIRO bank accounts in Pakistan.  *See* Nassar Decl. Ex. 12 at p.2-3.  Once the suspected bank accounts were identified, an investigation into the existence of these accounts and associated records was conducted.  IIRO Decl. at ¶54.  An inquiry was made with the current Pakistan office director who contacted the banks in Pakistan to request statements for any of these accounts belonging to MWL or IIRO.  *Id*.  The banks responded that the accounts were either (i) opened by individuals in their personal capacities and no longer affiliated with the Defendants (i.e., did not belong to either organization) and, as such, the organizations have no authority to receive account information; or (ii) the bank was unable to furnish any account information due to the long dormancy of the accounts and the absence of currently maintained records with respect to such accounts.  *Id*.  Here again, had Plaintiffs met and conferred, this non-issue could have been addressed without troubling the Court.  Nassar Decl. at ¶14.

### 3.   MWL and IIRO Auditing Records

Plaintiffs complain that audits and underlying audit records[14] have not been fully produced.  Memo at 5-6.  However, audits at both organizations have been searched for exhaustively and over fifty audits during the 1992-2004 time period have been produced, as have

---

[14] Plaintiffs misstate the scope of the April 2011 Orders, asserting that Judge Maas ordered the production of all underlying working papers and financial records supporting those audits.  As was made clear to Plaintiffs during the parties' March 31, 2016 Meet and Confer, there is no basis in the record for the assertion that Judge Maas ordered the production of all underlying work papers; the 2011 Order compelled production of audits only and Judge Maas only discussed the production of underlying records in relation to a specific audit conducted of Indonesia operations that was initiated *after litigation*.  *See* Nassar Decl. Ex. 1 at p. 29-30.

responsive underlying financial records.   Nassar Decl. at ¶18.   Additionally, in 2011 the
Secretary General of IIRO wrote directly to external auditors who had conducted audits that he
believed to have occurred and sought copies of the working papers relied upon in issuing their
reports.   IIRO Decl. at ¶55.   In addition, on December 4, 2013, undersigned counsel contacted
Sidat Hyder, the external auditor of the Pakistan office, requesting transmission of the underlying
records.   Nassar Dec. at ¶19; *also see*, Nassar Decl. Ex. 13.   In all instances the auditors declined
to turn over working papers in their possession.[15]   *See*, *e.g.*, Nassar Decl. Ex. 14.

Despite Plaintiffs' complaint that the Pakistan, Indonesia, and Jordan audits are missing,
Memo at 5-6, they in fact have all been produced.[16]   This is yet another instance where a simple
review of the production by Plaintiffs or discussions between counsel in advance of Plaintiffs
filing the instant motion would have resolved the dispute, as Plaintiffs could have been directed
to the specific Bates Ranges of those audits without wasting the Court's attention.   Nassar Decl.
at ¶14.   In all, MWL and IIRO have produced over 100,000 pages of audit records collectively,
including those relating to the Indonesia audit at issue before Judge Maas in the 2011 conference,
as well as underlying records that were also  responsive to Plaintiffs' other document requests
seeking financial documents.   *Id*. at ¶21.

### 4.        Additional Categories of Documents Ordered by the Court

While Plaintiffs complain of "significant gaps" in the productions relating to the seven
categories ordered by the Court on April 27, 2011, (Memo at 7) their complaints here, too, are
unavailing.   All operational documents of the Philippines and Indonesia offices and bank
accounts held by IIRO have been searched and tens of thousands of pages of responsive

---

[15] This not surprising; the general rule is that audit working papers are the property of the auditor, not of the client.
AU Section 339A Working Papers, https://pcaobus.org/Standards/Archived/Pages/AU339A.aspx. (last accessed Jan.
5, 2018).

[16] The Bates Ranges of those audits are IIRO 287559-86 (Jordan); IIRO 150857-1009, IIRO 151720-39, and IIRO
158082-91 (Indonesia); and IIRO 027192-208 and IIRO 026468-506 (Pakistan).

documents have been produced.  Nassar Decl. at ¶22.  Plaintiffs' complaints concerning deficiencies in productions relating to Wael Jelaidan, Mohamed Jamal Khalifa and Abdul Hamid al-Mojil are also unfounded as exhaustive searches of head office records of both MWL and IIRO relating to these individuals have been conducted, as well as searches at all of the specific offices with which these individuals had contact during their respective tenures, including the Philippines, Indonesia, Pakistan, Kosovo, and the Eastern Province and Riyadh offices in Saudi Arabia.  *Id*. at ¶23.  In all, approximately 9,500 pages of al-Mojil documents and 5,000 pages of Jelaidan and Khalifa documents have been produced, including employment records, financial activities, and correspondences.  *Id*.

Plaintiffs' claims of alleged deficiencies of documents relating to Khalifa and Jelaidan are particularly ill-taken given that their tenures within the organizations ended in 1993 and 1995, respectively.  IIRO Decl. at 64; MWL Decl. at 38.   Documents produced in this litigation, and available to Plaintiffs, reflect that Khalifa resigned in 1993 from his work in the Philippines office, *see* Nassar Decl. Ex. 11, after which time he had no further affiliation.  Similarly, Jelaidan resigned from MWL on November 1, 1995, *see* Nassar Decl. Ex. 15, after which time any contact would have been sporadic and based solely on his work with other organizations.  It would be unusual for the records of such a brief period – nearly a quarter century ago – to be plentiful and Plaintiffs' claims of deficiency are without basis.

The designations by OFAC of IIRO's Indonesia and Philippines branch offices occurred in 2006 and were later removed in 2016.  *See* Nassar Decl. Ex. 16.  All potentially responsive documents pertaining to the designations were reviewed in the branch offices and in Saudi Arabia and responsive documents have been produced.  Nassar Decl. at ¶24.

Additionally, based on little more than a news clipping pulled from the internet and in defiance of common sense,[17] Plaintiffs insist that an expulsion of IIRO personnel from Pakistan occurred following the 9/11 attacks.  This expulsion has no basis in fact.[18]  Nevertheless, as with the other hundreds of other requests, searches for records relating to this purported expulsion were made in all relevant offices and, not surprisingly, none were located.  *Id*. at ¶25.

**B.      Alleged Deficiencies in Productions Concerning Other Document Requests**

Plaintiffs also complain of deficiencies in the productions of categories of documents not subject to the April 2011 Orders, claiming that documents *should* exist.  These categories include MWL and IIRO documents relating to (1) the KSA Government, (2) Committees, Boards, Councils and Internal Bodies, (3) Alleged Investigations, Arrests, Raids and Closures of Offices, (4) Rabita Trust and Al Haramain Al Masjid Al Aqsa, (5) Universities, Islamic Centers, and Mosques, (6) Senior Officials and "Other Categories of Relevant Documents," and (7) Missing Attachments.  A brief discussion of each follows below.

**1.      Records Concerning the MWL and IIRO and the Saudi Government**

Prior to 2012, documents relating to the KSA government were initially segregated for privilege analysis.  IIRO Decl. at ¶60-61; MWL Decl. at 40-41.  That analysis was conducted and all segregated documents as well as other responsive documents relating to the KSA government were produced.  *Id*.  In total, over 21,000 pages[19] of documents relating to the KSA

---

[17] MWL and IIRO worked closely with the Karzai government, the Pakistani government, and the UN in Pakistan in the immediate years *after* the removal of the Taliban.  *See, for examples,* Nassar Decl. Exs. 17, 18, 19, and 20.  Their offices were never shut down or investigated by local authorities or US forces in charge of counter-terrorism efforts in the region.

[18] *See* Nassar Decl. Exs. 21 and 22 (letters from Pakistan Director Gari to Adnan Basha dated October 10, 2001 and September 11, 2003 stating that IIRO employees have not been subject to the alleged deportations of aid workers in Pakistan, and IIRO has not been targeted by the government in anyway).

[19] Notably, while Plaintiffs claim that an affidavit submitted in this matter claimed that MWL/IIRO possess "extensive records" relating to the KSA (Memo at 9), this too has no basis in fact as no such representation regarding volume was made there.  *See* Nassar Decl. Ex. 23.

government were produced, including records relating to ministries, embassies, funding, meetings, committees, communications, as well as documents relating to budgets and KSA funding. Nassar Decl. at ¶26.

2. <u>Records Concerning MWL and IIRO Committees, Boards, Councils and Internal Bodies</u>

Plaintiffs complain that documents relating to committees, councils, and internal bodies, including meeting minutes and reports submitted to policy making bodies, have not been produced. Memo at 12-15. As an initial matter, Plaintiffs' understanding of these committees and the records they were likely to generate over time is inaccurate as temporary "committees" were regularly created for ad hoc activities, such as the collection and destruction of old checkbooks for a closed account, or to inventory items stored in warehouses relating to a specific charitable project, and regular records relating to these temporary "committees" were not maintained. IIRO Decl. at ¶¶56-57.

For more permanent committees, IIRO has produced a complete set of meeting minutes,[20] as well as thousands of pages of reports referenced in those minutes, for the 1992-2004 time period for the Executive Committee,[21] the Constituency Council, and the Board of Directors. Nassar Decl. at ¶27. Contrary to Plaintiffs' assertion that IIRO failed to produce minutes of the Executive Committee and Board of Directors "for a one-year window surrounding the September 11th attacks," inferring without basis "an intent to withhold damaging information" (Memo at 13), IIRO did produce all meeting minutes for those two bodies in the stated time period.[22]

---

[20] *See* IIRO 15485-641, IIRO 286998-7068, IIRO 287078-187, IIRO 340141-49, and IIRO 341982-94.

[21] It was recently discovery that two documents, dated in 2003, were inadvertently not included in Defendants' August 15, 2017 production. A supplemental production of these records was made on December 19, 2017. *See* Nassar Decl. Ex. 24.

[22] *See* IIRO 15534-38, IIRO 287058-64, and IIRO 287135-44.

Nassar Decl. at ¶14.   Again, if Plaintiffs had looked at what they had, they would not have bothered the Court with inaccurate speculation.  *Id*.

Additionally, all potentially responsive records relating to Sanabel al Khair and its associated committees were searched for in both IIRO and Sanabel's document repositories and thousands of pages of responsive materials have been produced.   *Id.* at ¶36.   Similarly, responsive documents relating to the IIRO Women's committee were searched for in the proper document repositories and whatever was located has been produced.  *Id*. at ¶28.

Oddly, Plaintiffs also cite to a "recently discovered" Fiqh Council as a "result of their independent investigations."  Memo at 12.  No such independent investigation was necessary, however, as this council was repeatedly listed in reports produced in this litigation over five years ago.[23]   In any event, all documents relating to this council, as well as other councils, committees, boards, and internal bodies, were searched for and all responsive documents were produced.  Nassar Decl. at ¶28.

3.   Records Concerning Purported Investigation, Arrests and Raids and Closures of MWL and IIRO Branch Offices

Plaintiffs also assert that Defendants' productions concerning investigations and arrests of employees as well as raids and closures of offices are deficient, Memo at 15-16, despite the fact that exhaustive searches for such records have been made, including in the relevant branch offices, and productions of responsive documents have been made.  Nassar Decl. at ¶29.  As noted above, all responsive documents relating to the designations of the Indonesia and Philippines branch offices have been produced, and no evidence of an expulsion of IIRO employees in Pakistan was found.  *Id*. at ¶¶24-25.

---

[23] *See, e.g.,* IIRO 017415-720, IIRO 017721-944, IIRO 017945-18162.

The specific examples cited in Plaintiffs' Memorandum reflect lack of knowledge of or attention to the documents produced.  For instance, they cite to the Pakistan Ernst & Young report concerning embezzlement from the Pakistan office and assert that they have "yet to receive any meaningful production of documents relating to these events[,]"  Memo at 16, despite having received the precise Bates Range of those documents, totaling over 90,000 pages. *See* Nassar Decl. Ex. 25.

Plaintiffs also allege that Zaher Abdelaziz, who was employed by IIRO in the Balkans for a short time, was removed from his position in 1996 allegedly due to his links to al Qaeda. Memo at 16.  Documents produced in this litigation reflect that Abdelaziz worked for IIRO for a little over two and a half years and that he resigned in 1996,[24] so whatever documents existed pertaining to him would be minimal.  Nevertheless, all responsive documents were searched for in the Balkans offices and at the IIRO head office and produced.  Nassar Decl. at ¶30.

### 4.   Records Concerning Rabita Trust and Al Haramain Al Masjed Al Aqsa

As documents produced in this litigation reflect, Rabita Trust was an independent organization jointly established by the Government of Pakistan and MWL to facilitate the repatriation of Biharis[25] (back to their original home country of Pakistan).  Nassar Decl. Ex.28. At all times, Rabita Trust independently maintained its own separate facilities and document management systems and Defendants have no access to Rabita Trust's own files.  MWL Decl. at ¶36.  Defendants' own document repositories in Saudi Arabia and Pakistan, however, were searched and all responsive documents relating to Rabita Trust have been produced.  Nassar Decl. at ¶31.  Plaintiffs claim – without citation to the record – that "IIRO took possession of all

---

[24] *See* Nassar Decl. Exs. 26 and 27.

[25] The Biharis are Urdu-speaking Muslims who went to East Pakistan and were stranded in Bangladesh after it declared independence.  http://minorityrights.org/minorities/biharis/ (last accessed on Jan. 5, 2018).

documents relating to Rabita Trust in Pakistan." Memo at 17. During the parties' March 31, 2016 meet and confer, Plaintiffs made a similar claim and were informed that while a document produced reflected that IIRO-Pakistan took possession of certain furniture, *see* Nassar Decl. Ex. 29, Defendants had no information that documents had been transferred to IIRO's possession. Nassar Decl. at ¶13. Nevertheless, the former Pakistan director, Rahmatullah Nazir Khan Gari, was contacted and recalled no such transfer, but stated that if any documents were transferred they would have been in the Pakistan office which was searched by undersigned counsel and all responsive documents have been produced. *Id.*

Plaintiffs also complain that very few documents relating to Al Haramain Al Masjed Al Aqsa have been produced, Memo at 17, ignoring the fact that this was an independent entity.[26] Defendants have also searched for documents relating to the Al Haramain Al Masjed Al Aqsa in their own files and responsive documents have been produced. *Id.* at ¶32.

5.   Records Concerning the MWL's and IIRO's Purported Support of "Jihadist Universities" and Islamic Centers and Mosques

Plaintiffs also make the unsubstantiated claim that documents produced in this litigation reflect MWL and IIRO's relationships with "certain Islamic universities and colleges that are linked to Islamic extremism and terrorism" and their support of Islamic centers and mosques where "thousands of radical Wahhabi clerics" taught, Memo at 18, seeking to create improper prejudice against these Defendants without basis. Notably, for the first time, Plaintiffs also name several universities that had previously not been the subject of any of their hundreds of document requests and voluminous exhibit lists.[27] Setting aside the inappropriate and inaccurate

---

[26] The organization had an association with MWL from 1998 – 2004 but maintained its own independent existence and records.

[27] Such as, Madrasatul Hejrat al Jihad, Athari University, and Al Ansar Institute. Memo at 17.

commentary concerning these entities, MWL and IIRO have searched for and produced all responsive records relating to universities, Islamic centers, and mosques.  Nassar Decl. at ¶33.

> 6.   Records Concerning Senior Officials of the MWL and IIRO  and "Other Categories of Relevant Documents"

Plaintiffs state that MWL and IRO have failed to produce "comprehensive records relating to the functions, activities, and roles" of senior officials, including dealings with senior KSA officials.  Memo at 7. Again, had they reviewed the productions, they would have discovered that tens of thousands of pages of documents have been produced relating to the Secretaries General of each organization after extensive searches were conducted by LBKM attorneys.  Nassar Decl. at ¶34.

Plaintiffs also generally complain that MWL and IIRO have "not produced full, complete, and organized sets of documents" concerning TWRA and the Hassanein brothers, lists of IIRO employees in select countries, and records regarding relationships with SJRC, SHC, SRC, Al Haramain, WAMY, and so called "da'awa organizations."  Memo at 18.  However, all responsive documents collected relating to these categories have been produced as well, including tens of thousands of pages identifying IIRO employees.  Nassar Decl. at ¶35.

Plaintiffs' complaints regarding the lack of El Fatih Hassanein documents are particularly unfounded as documents produced in this litigation reflect that his employment ended in September of 1992.[28]  All responsive documents relating to El Fatih Hassanein, however, have been produced, including documents relating to transfers of funds.  *Id*. at ¶35.  Furthermore, in response to Plaintiffs' claim that Sukarno Hassanein was also an IIRO employee, a search was conducted and no such relationship was found to exist.  *Id*.

---

[28] *See* Nassar Decl. Exs. 31, 32, and 33.

7.      Purported Missing Attachments

Plaintiffs complain that attachments and enclosures to MWL and IIRO communications were sometimes not found within the Bates Ranges immediately following the documents.  As previously noted, Defendants records were maintained in hard copy and lacked uniformity in their organization. Nassar Decl. at ¶5.  Defendants searched for all documents potentially responsive to the document requests and all responsive documents that were located were produced as they were maintained.  *Id*. at ¶6.

## II.    Defendants' Branch Office Searches Were Extensive and Reasonable

Plaintiffs list "MWL and IIRO Branch Office Records" as one of the categories of documents for which the Court ordered production in 2011.  Memo at 4. Not only is this assertion a misrepresentation of the plain language of the April 2011 Orders, neither of which speak to the issue at all, *see* Nassar Decl. Ex. 30, it is also belied by any reasonable reading of Judge Maas's 2011 discussion on the matter.

From the date of the parties' meet and confer in July of 2013 through the last meeting in October 2016, undersigned counsel has again and again articulated Defendants' position regarding the scope of searches that would reasonably be conducted of foreign branch office records outside of Saudi Arabia:  Defendants agreed to facilitate attorney reviews of branch offices with reasonable connections to allegations made in Plaintiffs' complaint, Nassar Decl. at ¶8, consistent with the proportionality standard of the Federal Rules.  *See* Fed. R. Civ. P. 26; *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc*., No. 04 Civ. 5316 (RMB)(MHD), 2006 WL 2109472, at *2 (S.D.N.Y. July 20, 2006) ("reasonable efforts must be made to search those locations in which responsive documents are likely to be found").

IIRO and MWL operate in over 50 countries, *see* IIRO Decl. at ¶5 and MWL Decl. at ¶6, the great majority of which have had nothing to do whatsoever with Plaintiffs' allegations in this

16

case.  A search of every office, including offices with no connection to Plaintiffs' allegations –

Argentina and Brazil, for instance – would be unduly burdensome,[29] unlikely to yield useful

information and not proportional to the needs of this case. *See Vaigasi v. Solow Mgmt. Corp.*,

No. 11CIV5088 (RMB) (HBP), 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016) (plaintiff's

discovery request "far out of proportion to his claims" when plaintiff seeks access to a wide array

of documents that have very little, if anything, to do with plaintiff's claims).

Beginning in July of 2013, Defendants identified offices with any arguable connection to

the allegations of Plaintiffs' complaint, including: the Philippines, Indonesia, Pakistan, the

Eastern Province of Saudi Arabia, as well as the Balkans IIRO offices of Bosnia, Kosovo,

Albania and Macedonia.  Nassar Decl. at ¶9.  Later, in 2016, following discussions between

counsel and in a good faith effort to resolve the dispute concerning the scope of the search of

branch offices, offices in the following locations were added and later searched: Jordan, Kenya,

Tanzania, Sudan and Vienna.  *Id*. at ¶10.  That is 14 offices in 13 countries in addition to the

massive searches at head offices in Jeddah and Mecca.  Defendants were clear that while it was

their view that the initial searches of offices was more than adequate, the five additional offices

would be searched as a measure of good faith.  *Id*.  Plaintiffs never suggested any additional

office that they contended had some connection to the case despite their having the opportunity

to do so; instead, they waited until the close of document discovery when the case is headed to

deposition discovery to raise an unreasonable request for a search of all of Defendants' over 75

branch offices and centers that would take years to complete. IIRO Decl. at ¶27; MWL Decl. at

¶22.

Plaintiffs' continuous moving of the bar is an attempt to cause more expense and burden

to Defendants and should not be sanctioned by this Court.  It is unreasonable per se for Plaintiffs

---

[29] IIRO Decl. at ¶27; MWL Decl. at ¶22.

to ask MWL and IIRO to send representatives to visit every branch office to search for the unlikely odd piece of paper that has, at best, a tangential relationship to this case. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations"). In all events, any objection they had to Defendants' approach, which was first stated in July 2013, has been waived due to Plaintiffs' years of silence on this issue, their failure to ever work cooperatively to designate particular individual branches with real connections and the prejudice to Defendants that would result if the Court were to now order such an unreasonable search.

## III.    The Organization of the Productions is Sufficient

Plaintiffs' complaints concerning the organization of the productions are also unavailing. Memo at 19. At great effort and cost, Defendants have created and provided Plaintiffs with extensive detailed indices that organize the responsive documents by specific categories of document requests, satisfying Defendants' obligations under Rule 34. Nassar Decl. at ¶6. Plaintiffs served over 275 requests on MWL and IIRO – some of which include sub-requests listing over 260 individuals and entities, essentially multiplying the number of requests to over 500. IIRO Decl. at ¶10; MWL Decl. at ¶10. In such circumstances, Defendants had no choice but to group the document requests in categories to facilitate the responsiveness review of millions of documents. Nassar Decl. at ¶6. The indices link the responsive documents with corresponding groupings of document requests, also providing the source of the documents. *Id.*

Since 2013, however, when issues were raised by Plaintiffs in relation to the indices and the organization of the produced documents, counsel for Defendants have provided Plaintiffs with additional information to facilitate review. *Id.* at ¶12. This has included providing

18

Plaintiffs with detailed breakdowns on the provenance of the documents produced as well as other information in over 60 productions.  *See*, *e.g.*, Nassar Decl. Ex. 34.  Additionally, the specific Bates Ranges of certain documents have been provided at request, including the Pakistan investigation documents as discussed above.  Nassar Decl. Ex. 25.

Under the FRCP 34(b)(2)(E), the responding party has the option either to produce the documents in the manner they are usually kept or produce them in the categories sought.  The producing party must disclose "at least some information" concerning the organization of the records as they were obtained, which may include points of origin and the general manner in which the documents were maintained.  *Century Jets Aviation LLC v. Alchemist Jet Air LLC,* No. 08 Civ. 9892 (GBD)(KNF), 2011 WL 724734, at *3 (S.D.N.Y. Feb. 8, 2011).  This requirement has been amply satisfied.   In similar cases where hundreds of document requests were propounded, the court has allowed the responding parties to group documents by subject matter and category.  *See, e.g., Morgan v. City of New York*, No. 00 Civ. 9172(LMM)(DFE), 2002 WL 1808233, at *4 (S.D.N.Y. Aug. 6, 2002).  This and more was provided by the voluminous indices provided to Plaintiffs.  *See Menard v. Chrysler Grp., LLC*, No. 14 CV 6325 (VB), 2015 WL 5472724, at *2 (S.D.N.Y. July 2, 2015) (index accompanying productions held sufficient).

## IV.     Plaintiffs Have Failed to Negotiate in Good Faith Under Rule 37(a)

In violation of Rule 37, Plaintiffs have evaded any discussion with defense counsel over the past year since the parties' last meet and confer in 2016.  Nassar Decl. at ¶11; Memo at 1.[30] As detailed throughout this Opposition, numerous issues raised in Plaintiffs' Motion to Compel could have been resolved had Plaintiffs taken any steps to fulfil their obligation to resolve issues without court intervention.  *See U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) ("[i]t is a waste of this Court's time and resources to adjudicate a

---

[30] Plaintiffs incorrectly state that last meet and confer occurred in 2017, however it occurred in 2016.

dispute that could have been resolved by the parties themselves").  Prior to filing a motion to compel, the movant must first make a good faith effort to confer with the other party to secure the disclosure, information, or material without court involvement.  Fed. R. Civ. P. 37(a)(1). Any later motion must include a certification setting forth those efforts.  *Id.; see also Prescient Partners*, No. 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672, at *4 (S.D.N.Y. Feb. 18, 1998) (a movant "ha[s] to provide an account of a 'live exchange of ideas and opinions").  Here there were no such efforts or certification.

Plaintiffs have failed in their obligations under Rule 37.  They made no attempts in the year before filing the instant motion to resolve the parties' disputes, which is contrary to both the spirit and plain language of Rule 37.  Plaintiffs Motion to Compel should, therefore, be denied.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Compel should be denied in its entirety.

Respectfully submitted,

_____/s/_____
Eric L. Lewis
Aisha E. Bembry (*pro hac vice*)
Waleed Nassar (*pro hac vice*)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Ave., N.W.
Suite 600
Washington, D.C. 20006
Tel: (202) 833-8900
Fax: (202) 466-5738
eric.lewis@lbkmlaw.com
aisha.bembry@lbkmlaw.com
waleed.nassar@lbkmlaw.com
*Counsel for Defendants Muslim World League and
International Islamic Relief Organization*