# Exhibit 8

# WITNESS STATEMENT OF JEAN-CHARLES BRISARD

**I, JEAN-CHARLES BRISARD**, of 18, Avenue du Léman, 1025 Saint-Sulpice, Switzerland **WILL SAY** as follows:

### Introduction and biography

1.  I am a consultant in the area of the financing of terrorism, having been involved in this field since 1997. I am Chief Executive Officer of JCB Consulting International SARL, a company registered in Switzerland which is a consulting company working in the field of business intelligence, money laundering and terrorism financing. I was the author of the report on "Osama Bin Laden financial networks" published in 2001 by the French National Assembly. Since 11 September 2001 I have testified in several court proceedings on money laundering and terrorism financing. Since June 2002, I have been the lead investigator and consultant to the lawyers acting for the relatives of many of the victims of the 11 September attacks on the US who have filed an action in the US District Court for the District of Columbia on 15 August 2002. I have also been leading a team conducting investigations into terrorism financing in a number of jurisdictions including the United States, Europe, the Middle East and Africa.

### The publications concerning the Bin Mahfouz family

2.  I am the co-author of the book, along with Guillaume Dasquié, entitled: *"Forbidden Truth: U.S.-Taliban Secret Oil Diplomacy and the Failed Hunt for Bin Laden"*, published by Thunder's Mouth Press/Nation Books in English in about June 2002 (which was originally published in French in about November 2001 under the title *"La Vérité Interdite"*) (the **Book**). In the Book, I dedicated a chapter to Sheikh Khalid Bin Mahfouz entitled: *"Khalid Bin Mahfouz: The Lucrative Business of Terrorism/The Banker of Terror"*. The chapter alleges, amongst other things, that Sheikh Khalid Bin Mahfouz and his family are one of the principal funders of Osama Bin Laden and his Al Qaeda terrorist network and atrocities. I also accused Sheikh Khalid's son, Sheikh Abdulrahman Bin Mahfouz, of being complicit in the attempted assassination of President Hosni Mubarak of Egypt in 1995. The chapter concerning Sheikh Khalid Bin Mahfouz and his family was prepared by me without the assistance of my co-author, Guillaume Dasquié, although we obviously discussed what I was writing for the Book. Mr Dasquié's only involvement in writing this chapter was that he said he would try to contact Sheikh Khalid Bin Mahfouz to obtain his reaction to the allegations that we

- 2 -

were about to publish in the Book. My understanding is that Mr Dasquié contacted the Saudi Embassy in Washington to ask them to put him in touch with Sheikh Khalid Bin Mahfouz. The Saudi Embassy did not respond to him.

3. I am also the author of a report that I submitted to the United Nations Security Council entitled: *"Terrorism Financing: Roots and trends of Saudi terrorism financing"* dated 19 December 2002 (the **Report**). In the Report I referred to, amongst other things, Sheikh Khalid Bin Mahfouz being number one on a list of the *"Main individual Saudi sponsors of al-Qaida"* (page 11) and of being the brother-in-law of Osama Bin Laden.

4. I also provided a witness statement dated 21 May 2003 in support of the Defendants' application to have the case stayed in relation to a libel claim commenced by Sheikh Khalid Bin Mahfouz against Associated Newspapers (owners of the *Mail on Sunday* newspaper that published a defamatory article about Sheikh Khalid Bin Mahfouz on 27 October 2003), Peter Wright (the editor of the *Mail on Sunday*) and Graham Beaton (the author of the defamatory article at the centre of the defamation claim) (the **Mail on Sunday witness statement**). In this witness statement I set out the *"key evidence"* I had gathered as at that date to justify the truth of the allegations that I had made in the Book, being that Sheikh Khalid Bin Mahfouz *"knowingly supported terrorism"*. I understand that this claim was settled and the Mail on Sunday printed an apology in its newspaper on 18 January 2004 and read a Statement out in Open Court acknowledging that there was no truth whatsoever in the allegations made in the article.

## Proceedings brought against me by Sheikh Khalid Bin Mahfouz and Sheikh Abdulrahman Bin Mahfouz in England, France and Switzerland

5. Sheikh Khalid Bin Mahfouz and Sheikh Abdulrahman Bin Mahfouz (the **Mahfouz Parties**) commenced proceedings against me and Guillaume Dasquié in England in relation to the allegations about them contained in the Book on 16 May 2003 (the **Book action**). I defended the claim on the basis that I did not authorise publication of the English version of the Book in England. This Defence was not accepted by the English courts and on 25 May 2006 Mr Justice Gray ordered myself and Guillaume Dasquié to pay Sheikh Khalid and Sheikh Abdulrahman £10,000 damages each (the maximum permitted under the relevant provision of the UK Defamation Act 1996) and also ordered me to pay interim costs of £150,000. In addition, Mr Justice Gray ordered us to print an apology in relation to the allegations

- 3 -

made in the Book, granted an injunction against me, and continued an injunction already made against Guillaume Dasquié to prevent us from repeating the libels contained in the Book.

6. On 9 October 2003, Sheikh Khalid Bin Mahfouz commenced proceedings for defamation in the High Court in London against myself and my two companies, JCB Consulting (which was based in France and is now liquidated) and JCB Consulting International Sarl (located in Switzerland), in relation to the publication of the Report and other similar defamatory documents published on my website www.jcbconsulting.com (the **Report action**). On 30 January 2004 the High Court in England ordered Judgment to be entered against us after we failed to defend the proceedings. The High Court ordered us to print an apology and also granted an injunction against us preventing further publication in England of the defamatory allegations made in the Report about Sheikh Khalid Bin Mahfouz.

7. Proceedings were also commenced against me and my company, JCB Consulting International Sarl, in Switzerland on 18 October 2004 in relation to the Report (the **Swiss Report action**). The claim has yet to reach trial.

8. Sheikh Khalid Bin Mahfouz has sought to enforce against me and my companies in France and Switzerland his costs and damages from the Report action (which have been assessed at £70,841.17 together with interest) and the costs of the Book action (the costs of which the Mahfouz Parties estimate to be at about £391,404.64).

**Purpose of this witness statement**

9. Having found that the allegations against the Mahfouz Parties that I made in the Book, the Report, and Mail on Sunday witness statement were based on information that has been largely withdrawn or refuted by its sources in the intervening years, and notwithstanding research into terrorism financing, having no further evidence to support the allegations against the Mahfouz Parties in the intervening years, I now wish to accept and acknowledge that all of the allegations in the Book, in the Report, and the Mail on Sunday witness statement regarding support of terrorism by the Mahfouz Parties are entirely and manifestly false. As a result, I wish to resolve all claims by the Mahfouz Parties against me and my companies arising out of all of the litigation against us in England, France and Switzerland.

PCL2/1268381/1

- 4 -

10. As part of the settlement of these aforementioned actions against me and my companies, I am producing this witness statement to explain why I made allegations about the Mahfouz Parties being involved in the funding of terrorism, the sources upon which I relied on to make these accusations, and why I now accept that these accusations are manifestly false. I set out this information below. I have been legally advised before signing this witness statement and make it willingly as part of the settlement in order to set the record straight.

**The 'Golden Chain' document**

11. In the Mail on Sunday witness statement I stated that "*the Golden Chain list is a 1988 Al-Qaeda internal handwritten memorandum listing the people referred to within Al-Qaeda as "the Golden Chain", namely the twenty main donors to the terrorist organization.*" My basis for this understanding was from the Government's Evidentiary Proffer filed in the case of USA v Arnaout in the US District Court for the Northern District of Illinois, Eastern Division.

12. In the Mail on Sunday witness statement I exhibited the original translation produced in the USA v Arnaout claim which refers to a list of individuals and one called "*Bin Mahfoodh*". I also exhibited an amended translation of the 'Golden Chain' document from Arabic into English carried out by two certified translators used by the US District Court for the District of Columbia for the purposes of the Burnett Complaint because I believed that the original translation was inaccurate. In the amended translation I listed the aforementioned individual as "*Khalid Bin Mahfouz*" (emphasis added). I inserted the forename "*Khalid*" before "*Bin Mahfouz*" in the amended translation, but I accept that the reality is that the name "*Khalid*" is not contained within the original Arabic document.

13. I am now aware that Sheikh Khalid Bin Mahfouz provided a donation of 1,000,000 SAR (approximately $270,000) to support the Afghan resistance against the Soviet invasion. I have been informed that Sheikh Khalid Bin Mahfouz provided this donation at the request of Salem Bin Laden before Salem's death (he died on 29 May 1988) for that purpose. In light of this information, the fact that all the other sources that I have relied upon to support my accusations about Sheikh Khalid Bin Mahfouz have been retracted and the fact that I have no evidence to suggest that Sheikh Khalid Bin Mahfouz has ever funded Al Qaeda, I confirm that I accept that the 'Golden Chain' document does not itself constitute evidence that Sheikh Khalid funded Al Qaeda.

- 5 -

### The brother-in-law allegation

14. In the Book (at pages 111 and 125), the Report (at page 22) and at paragraphs 8 and 9 of the Mail on Sunday witness statement, I state that Sheikh Khalid Bin Mahfouz is Osama Bin Laden's brother-in-law by virtue of the fact that Sheikh Khalid's sister is married to Osama Bin Laden. I accept that this allegation is incorrect and that I have no evidence to support that assertion for the reasons set out below.

15. In the Mail on Sunday witness statement and in the Book I relied on a statement made by James Woolsey, the former director of the CIA, to support this allegation. In a statement he made to the Senate Judiciary Committee on 3 September 1998 he stated that "...*a Mr. Hafous (ph), the chairman of the National Commercial Bank of Saudi Arabia, Mr. Hafous' (ph) sister is married, I understand, to Mr. bin Laden.*" I understood the reference to "*Mr. Hafous*" to be an error and Mr Woolsey to have meant to refer to Sheikh Khalid Bin Mahfouz, as Sheikh Khalid was the Chairman of the National Commercial Bank (the **NCB**). Mr Woolsey has subsequently confirmed that he did not mean to allege that Sheikh Khalid Bin Mahfouz was Osama Bin Laden's brother-in-law:

    15.1 In a Los Angeles Times article of 26 February 2003 by Ken Silverstein, entitled "*Top Investigator in 9/11 Victims' Lawsuit Faces Libel Action*", Mr Woolsey characterised remarks he had made to a Senate Judiciary Committee hearing of 3 September 1998 about "*Mr. Hafous*" as confused. He told the Los Angeles Times: "*I don't know what to say other than there was some confusion, but I never meant to refer to Bin Mahfouz's sister*".

    15.2 Cross-examined on 15 December 2003 in the English libel trial between *Mohamed Abdul Latif Jameel et al. v. Wall Street Journal Europe*, Mr Woolsey stated that Khalid Bin Mahfouz had been "*misindentified*" in his evidence to the Senate Judiciary Committee and that the individual he was referring to "*was not Mr (Khalid Bin) Mahfouz*".

16. In the Mail on Sunday witness statement I also referred to other sources that supported this allegation: (1) "*a secret witness source, who is a former employee of the claimant*"; and (2) Joel Soler, an investigative journalist. The "*secret witness source*" proved not to be credible and it became evident that he was simply after

- 6 -

money. I distanced myself from him over two years ago once I realised this. Joel Soler also proved to be unreliable as he made a number of assertions to me which were subsequently not shown to be accurate.

17. In light of the information I have set out at paragraphs 15 and 16 above, I confirm that I have no evidence to suggest that Sheikh Khalid Bin Mahfouz is Osama Bin Laden's brother-in-law. In fact, I have no evidence to show that there is any family relationship between Osama Bin Laden and Sheikh Khalid Bin Mahfouz. The sources upon which I relied to make this allegation have been retracted and as a result I also withdraw my erroneous accusation.

**Bank of Credit and Commerce International (the BCCI)**

18. In the Book (at pages 117 to 124) and in the Mail on Sunday witness statement (at paragraphs 10 to 14) I alleged that Sheikh Khalid Bin Mahfouz as Chief Operating Officer of the BCCI was involved and complicit in the arms and drug trafficking and support of terrorism associated with the BCCI.

19. I accept that I was wrong to say that Sheikh Khalid Bin Mahfouz was the Chief Operating Officer of the BCCI. I am now aware that he was a shareholder and only a non-executive director of the BCCI. I have no evidence whatsoever to suggest that Sheikh Khalid Bin Mahfouz was involved in the improper activities associated with the bank (i.e. terrorist financing or arms/drugs trafficking).

20. In the Mail on Sunday witness statement I also stated at paragraph 10 that Sheikh Khalid Bin Mahfouz was born in 1928. I attached copies of an extract from the ICC Company Directory and Companies House database on the BCCI SA which showed him to be born on that date. I accept that this extract I exhibited to my witness statement was wrong and that Sheikh Khalid Bin Mahfouz was actually born in 1949.

**Audit of the National Commercial Bank (the NCB)**

21. In the Book at page 124 I stated the following:

*"American authorities discovered suspicious transfers of "tens of millions of dollars" made after April 1999 from NCB to charity organizations associated with Osama bin Laden, some of which were controlled by Khalid bin Mahfouz's own family.*



- 7 -

> *Normally hesitant to cooperate with American authorities, Saudi Arabia was faced with a moral dilemma, as well as a major attack on its own interests, because the bank was also "its bank". The Kingdom finally ordered an audit the same year in order to verify the allegations. The audit uncovered massive transfers made to charity organizations with ties to Osama bin Laden, some of which were controlled by members of the bin Mahfouz family. Shortly thereafter, Saudi authorities placed Khalid bin Mahfouz under house arrest in a hospital in Taif. According to our information, he is still there as of mid-2002."*

I made a similar allegation in the Mail on Sunday witness statement (at paragraphs 15 to 19) and in the JCB Report (at page 22).

22. My main source for this allegation was an article published in *USA Today* on 29 October 1999 written by Jack Kelley, although I also relied upon an article published in the *Irish Independent* dated 30 September 2001. The *USA Today* article was retracted on 12 April 2004 by *USA Today* after I had written the Book, the Report and submitted my witness statement in the Mail on Sunday action. I no longer regard the *Irish Independent* article as reliable in the light of the retraction by USA Today. I have no other evidence to support the allegations to which I refer in the previous paragraph.

23. In the Mail on Sunday witness statement I exhibited what I claimed to be *"extracts from the Saudi Government's audit of NCB"*. On reflection I should have said that this document was a summary of what I believed to be an audit document of the NCB. I received this document from the French intelligence services already translated into English. I have never seen the original Arabic (or French) version of this document. I also acknowledge that the document appears to be a summary of a regular audit of the NCB that all banks carry out on a yearly basis. Whilst the document refers to payments to charities, it in no way links those payments and charities to Osama Bin Laden.

24. In the Mail on Sunday witness statement at paragraph 18, I also stated that the existence of an audit of the NCB ordered by the Saudi Government that *"uncovered massive transfers to charity organisations with ties to Osama bin Laden"* was confirmed to me by an *"NCB source"*. On reflection the phrasing in my witness statement was misleading. I should have stated that nobody at NCB confirmed to me

PCL2/1269381/1

- 8 -

directly that the aforementioned audit existed. By "*NCB source*" I meant that I had read an interview with Sheikh Abdulrahman Bin Mahfouz in which he said that an audit was carried out at the NCB. However, I now understand this to mean that this was a standard audit of the NCB that was carried out on a yearly basis as with all banks.

25. In light of the retraction of the *USA Today* article and the fact that I have no evidence to support the assertions about the NCB made in the Book, the Report and the Mail on Sunday witness statement, I confirm the following:

   25.1 I have no evidence to support the allegation that the American authorities discovered that tens of millions of dollars had been transferred from the NCB to charity organisations associated with Osama Bin Laden after April 1999;

   25.2 I have no evidence to suggest that the Saudi Arabian Government ordered a special audit of the NCB to address the concerns of the American authorities that "*uncovered massive transfers made to charity organizations with ties to Osama bin Laden, some of which were controlled by members of the bin Mahfouz family*";

   25.3 I have no evidence to support the allegation that Sheikh Khalid Bin Mahfouz was placed under house arrest in a military hospital in Taif as a result of the Saudi audit; and

   25.4 I have no evidence to suggest that Sheikh Khalid Bin Mahfouz authorised or had any knowledge of any transfers from the NCB to charities linked with Osama Bin Laden.

**Muwafaq**

26. In the Book (at pages 127 and 128) and in the Mail on Sunday witness statement (at paragraph 20) I implied that Sheikh Khalid Bin Mahfouz knowingly financed Al Qaeda because he donated large sums of money to Muwafaq, which a document originating in the US Treasury Department described as an Al Qaeda front.

27. I am aware that Sheikh Khalid Bin Mahfouz has publicly admitted that he was a principal donor to Muwafaq at its inception in 1991 donating between US$20 to

- 9 -

30 million. I have no evidence to suggest that Sheikh Khalid Bin Mahfouz was involved in the running or management of Muwafaq or to indicate that Sheikh Khalid donated this money for anything other than humanitarian and charitable purposes. I know from a case in Switzerland to which I am a witness and which involves Yassin Al Qadi, who was responsible for running Muwafaq, that Mr Qadi has also said that Sheikh Khalid had no involvement in the running of Muwafaq.

**Attempt on President Hosni Mubarak's life**

28. At page 127 of the Book I stated that Sheikh Abdulrahman Bin Mahfouz was the manager of the Sudanese branch of Muwafaq which was suspected of helping to organise the assassination attempt against Egyptian President Hosni Mubarak in 1995. I again relied on the *Irish Independent* article dated 30 September 2001 to support this accusation, which as I have explained earlier, I no longer regard as reliable.

29. At the time of writing the Book I was not aware that Sheikh Abdulrahman Bin Mahfouz and others had brought proceedings in England against a publication called Africa Confidential with respect to an article it published on 7 July 1995 that contained the same allegations as detailed at paragraph 28 above. Sheikh Abdulrahman and the other claimants were successful in this action and obtained an apology from *Africa Confidential* which acknowledged that there was no evidence to suggest that either the claimants (including Sheikh Abdulrahman) or Muwafaq was involved in the assassination attempt on President Mubarak.

30. I accept that I have no evidence to suggest that Sheikh Abdulrahman Bin Mahfouz was involved in an assassination attempt on President Hosni Mubarak nor that he was ever manager of the Sudanese branch of Muwafaq.

**The Saudi Economic and Development Company (SEDCO) and the International Development Foundation (the IDF)**

31. In the Book (at pages 126 to 127) and in the Mail on Sunday witness statement (at paragraphs 21 to 22) I claimed that the Bin Mahfouz family owned the company SEDCO which founded the charity organization the IDF which I alleged was involved in the financing of Al Qaeda in Bosnia and the recruitment of Al Qaeda members.

PCL2/1268381/1

32. I have no evidence to suggest that Sheikh Khalid Bin Mahfouz had anything to do with IDF. I accept that it was set up by his brothers. Furthermore, I am aware that the Charity Commission for England and Wales carried out an investigation into the IDF and its activities and that it found no evidence linking the charity with Al Qaeda. In addition, the *"confidential source"* that I relied upon in the Mail on Sunday witness statement (at paragraph 22) who told me that the IDF had been involved in the financing of Al Qaeda operations in Bosnia subsequently could not himself corroborate this allegation.

33. In light of the above I have no evidence to suggest that the IDF (and as a result nor Sheikh Khalid Bin Mahfouz through the IDF) had any involvement with Al Qaeda.

**SAAR Foundation**

34. In the Mail on Sunday witness statement (at paragraph 23) I stated that Sheikh Khalid Bin Mahfouz's Chief Legal Officer, Cherif Sedky, helped set up the SAAR Foundation charity, which I claimed was believed to have links to Al Qaeda and other terrorist groups. The suggestion I was making was that Sheikh Khalid Bin Mahfouz was linked to that charity through Cherif Sedky. I was told by a *"consultant"* specialising in terrorist financing that in 2002 the US Government was considering commencing proceedings against Mr Sedky and the SAAR Foundation. I accept that Sheikh Khalid had nothing to do with the SAAR Foundation and that Mr Sedky's involvement as a Trustee of the SAAR Foundation (at the request of his then client, Abdullah Al Rajhi) between 1996 and 2000 was solely for the purpose of the winding down and dissolution of the foundation. I also note that as of 2006 the US Government has not commenced proceedings against either Mr Sedky or the SAAR Foundation and my understanding is that the investigation into the SAAR Foundation has been dropped.

35. I accept that I have no evidence to suggest that Sheikh Khalid Bin Mahfouz was personally involved with the SAAR Foundation.

**Mossad List of Terrorists**

36. In the Mail on Sunday witness statement I exhibited a copy of what I characterised as a Mossad list of terrorists that was provided to me by a former director of Israeli intelligence who was working as a consultant for me. Sheikh Khalid Bin Mahfouz was listed at page 8 of this document.

37. On further consideration of this document, there is a question as to whether it is a genuine Mossad list of suspected terrorists or financiers of terrorism. At the time I received the document from my contact, it was obvious to me that it could be a number of things. I accept that the list may not be a list of known terrorists and financiers of terrorism, but an internal Mossad document of individuals that needed to be investigated further. I also accept that the list may well have been created taking the names of individuals referred to in the Book. This would explain the reference to Waleed bin Salem Bin Mahfouz in the Mossad list who I claimed in the Book (at page 126) was one of Sheikh Khalid Bin Mahfouz's brothers and suspected by the US of making donations to charities linked to Osama Bin Laden. In actual fact Sheikh Khalid Bin Mahfouz has no brother called Waleed and I have no evidence to suggest this individual exists.

38. I have no evidence to suggest that this document provides evidence suggesting that Sheikh Khalid Bin Mahfouz is a funder of terrorism.

**US Indictment**

39. In the Mail on Sunday witness statement at paragraph 25 I stated that I had been informed by Luxembourg's Chief General Prosecutor Carlos Zeyen and the Chief of Judicial Police in Luxembourg, Pierre Kohnen, that Jimmy Gurulé, the Under-Secretary for Enforcement at the US Treasury Department had requested that Sheikh Khalid Bin Mahfouz be investigated for association with a criminal organisation (being Al Qaeda). I was also told that a sealed indictment had been issued by the US Treasury Department against Sheikh Khalid Bin Mahfouz for terrorism financing.

40. Since I signed the Mail on Sunday witness statement on 21 May 2003 no charges have been brought by the US Government against Sheikh Khalid Bin Mahfouz and he has not been added to any list of terrorists in the US. I have also learned that the US Treasury Department does not have the power to issue criminal indictments. Although what I said in my witness statement was what I was told, I did not independently verify this information so I have no way of knowing whether it is true. Furthermore, I have no evidence to suggest that the US Government has any intention of commencing any proceedings against Sheikh Khalid Bin Mahfouz.

## Payment for the Report

41. I confirm that I did not receive any payment from any third party for producing the Report.

42. I believe that the facts contained in this Witness Statement are true. I understand that this Witness Statement may be submitted to courts conducting legal proceedings in England and Wales, France, Switzerland or the United States and I certify under penalty of perjury under the laws of each of those forums that this Witness Statement is true and correct.

........................
JEAN-CHARLES BRISARD

4 October 2006
DATE