UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re: Terrorist Attacks on
September 11, 2001[1]

)
)
)
)

No. 03 MDL 1570 (GBD) (SN)

_____ )


# MEMORANDUM OF LAW IN SUPPORT OF
# THE MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF
# ORGANIZATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

Eric L. Lewis
Aisha E. Bembry (*pro hac vice*)
Waleed Nassar (*pro hac vice*)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Ave., N.W.
Suite 600
Washington, D.C. 20006
Tel: (202) 833-8900
Fax: (202) 466-5738
eric.lewis@lbkmlaw.com
aisha.bembry@lbkmlaw.com
waleed.nassar@lbkmlaw.com


*Counsel for Defendants Muslim World League and
International Islamic Relief Organization*

January 5, 2018

---

[1] This applies to: *Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-6977 (GBD) (SN); *Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-cv-9849 (GBD) (SN); *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-7065 (GBD) (SN); *Continental Casualty Co., et al. v. Al Qaeda et al.*, Case No. 04-cv-05970 (GBD) (SN); *Euro Brokers Inc., et al. v. Ai Baraka, et al.*, Case No. 04-cv-7279 (GBD)(SN); *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-6978 (GBD) (SN); *O'Neill, Sr., et al. v. Al Baraka et al.*, Case No. 04-cv-1923 (GBD) (SN).

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................... ii

I.      PRELIMINARY STATEMENT ........................................................................1

II.     PROCEDURAL AND FACTUAL HISTORY ...................................................3

III.    ARGUMENT .....................................................................................................6

        A.      Plaintiffs' motion for sanctions is untimely..........................................6

        B.      The relevant factors weigh against an award of sanctions in this case....................8

        C.      Awarding sanctions would not effectuate the three purposes sanctions are intended to serve. ..................................................................14

        D.      Cost shifting is not appropriate where, as here, "the failure was substantially justified or other circumstances made an award of expenses unjust."..................15

        E.      The Court has the discretion to deny cost shifting on a motion to compel where the prevailing part was not entirely successful or neither party has consistently prevailed in discovery disputes..............................17

        F.      If the Court determines that a monetary award should be awarded in this case, it must be compensatory rather than punitive in nature. ...........................................19

IV.     CONCLUSION.................................................................................................20

i

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Brandt v. Vulcan, Inc.,*
   30 F.3d 752 (7th Cir. 1994) ........................................................................................ 7

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,*
   188 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................................... 8

*Diapulse Corp. of America v. Curtis Pub. Co.,*
   374 F.2d 442 (2d Cir. 1967) .................................................................................. 18

*Eikenberry v. Celsteel Ltd.,*
   No. 13 CIV. 4661(AT), 2013 WL 5308028 (S.D.N.Y. Sept. 19, 2013) ................. 14

*Estate of Shaw v. Marcus,*
   No. 14 CIV. 3849(JCM), 2017 WL 825317 (S.D.N.Y. Mar. 1, 2017) ............. 14, 18

*Farmer v. Hyde Your Eyes Optical, Inc.,*
   No. 13-CV-6653(GBD), 2015 WL 2250592 (S.D.N.Y. May 13, 2015) ............... 8, 9

*Goodyear Tire & Rubber Co. v. Haegar,*
   137 S. Ct. 1178 (2017) .......................................................................................... 19

*In re Teligent, Inc.,*
   358 B.R. 45 (Bankr. S.D.N.Y. 2006) ....................................................................... 6

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
   512 U.S. 821 (1994) .......................................................................................... 8, 19

*International Mining Co. v. Allen & Co., Inc.,*
   567 F. Supp. 777 (S.D.N.Y 1983) ......................................................................... 14

*Klein v. Torrey Point Grp., LLC,*
   979 F. Supp. 2d 417 (S.D.N.Y. 2013) ................................................................... 16

*Mackler Prods., Inc. v. Cohen,*
   225 F.3d 136 (2d Cir. 2000) .................................................................................... 8

*Mercy v. County of Suffolk, New York,*
   748 F.2d 52 (2d Cir. 1984) ....................................................................................... 6

*National Hockey League v. Metro. Hockey Club, Inc.,*
   427 U.S. 639 (1976) .............................................................................................. 14

*Schanfield v. Sojitz Corp. of Am.,*
258 F.R.D. 211 (S.D.N.Y. 2009)................................................................ 17

*Securities and Exchange Comm. v. Razmilovic,*
738 F.3d 14 (2d Cir 2013) ........................................................................ 14

*Shamis v. Ambassador Factors Corp.,*
34 F. Supp. 2d 879 (S.D.N.Y.), *on reargument*, 187 F.R.D. 148 (S.D.N.Y. 1999).................. 7

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa,*
482 U.S. 522 (1987) .................................................................................. 14

## RULES AND REGULATIONS

Fed. R. Civ. P. 37(a)(5)(C) ............................................................................ 17

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................... 15, 17

The Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO") (collectively referred to herein as "Defendants"), through undersigned counsel, respectfully submit this Memorandum of Law, and the Declarations of Ammar Chaouat, Mohamed Fawzi and Aisha E. R. Bembry, together with accompanying exhibits, in opposition to Plaintiffs' Motion for Sanctions (Dkt. #3822) (hereinafter "Motion for Sanctions").

## I.    PRELIMINARY STATEMENT

Plaintiffs' Motion for Sanctions presents an inaccurate snapshot of discovery disputes between the parties and seeks compensation for "millions of dollars" purportedly incurred for actions that took place between six and twelve years ago.  Without a valid explanation for waiting five years to file their motion, Plaintiffs invite this Court to expend resources to delve into the long and complicated history of a document discovery process that has now spanned more than a decade and entailed hundreds of document requests propounded upon foreign defendants with no prior experience with U.S. document discovery.  In the five years that Plaintiffs waited to file their motion, Defendants have changed counsel to address the communication issues that hampered their initial discovery efforts and they have undertaken under the supervision of undersigned counsel a massive, multi-country document search to comply fully with the Court's 2011 discovery orders.  Additionally, in the five years that Plaintiffs waited to file their motion, Judge Frank Maas – who heard and resolved the parties' various discovery disputes and issued the Orders at issue here – has retired, making it significantly more difficult for the Court to consider and fairly analyze the issues presented in Plaintiffs' motion.  In these circumstances, Plaintiffs' opportunistic attempt to revisit ancient history and prejudice the Court against these Defendants should be denied as untimely.

In all events, the monetary sanctions sought are wholly inappropriate here because numerous factors warranting leniency are present and would render such an award unjust. MWL and IIRO are not-for-profit organizations based in Saudi Arabia with tiny or nonexistent in-house legal departments. Their corporate representatives have never been involved in U.S. litigation, let alone a massive, multi-district litigation like this one. Most of their personnel, including their limited legal personnel, speak very little English. Their documents are predominantly in Arabic, while their initial counsel was an attorney who did not read or speak any Arabic. Despite significant efforts, Defendants' initial efforts to comply with their discovery obligations were hindered by communication issues that were recognized by Judge Maas on multiple occasions in contemporaneous conferences and reflected a lack of sophistication, experience or guidance in understanding the unique scope and range of U.S. discovery.

In addition, without engaging in extended archaeology here, the record concerning the history of the parties' discovery disputes demonstrate that there was, in fact, a genuine dispute through November 2011 concerning what additional efforts would be necessary to comply with the Court's discovery orders, whether Defendants' production of additional documents resolved certain aspects of the parties' dispute, and whether further discussions between the parties would shed light on these disputes. These disputes were complicated by lack of knowledge on the part of counsel for both parties as to what these Arabic language documents contained. On this record, any initial non-compliance was substantially justified and, in any event, Defendants have since provided a comprehensive and massive response within the deadlines set by the Court.

Sanctions at this stage would not effectuate in any way the purposes they are intended to serve. Even if the Court credits all of Plaintiffs' claims in their pleading, sanctions are not

necessary to alter the conduct complained of because it radically changed half a decade ago.  For all of these reasons, Plaintiffs' Motion for Sanctions should be denied.

## II.    PROCEDURAL AND FACTUAL HISTORY

Since document discovery began in this matter some twelve years ago, Plaintiffs have served over 275 requests on MWL and IIRO, some of which include sub-parts listing a combined total of over 260 names of individuals and entities, essentially multiplying the number of requests to over 500.  *See* Declaration of Aisha E. R. Bembry ("Bembry Decl."), at ¶3.  Beyond their sheer volume, many of Plaintiffs' document requests have little temporal[2] or geographical limitation,[3] adding to the enormity of the task facing MWL and IIRO, two charities based in Saudi Arabia, with no significant internal legal function thrust into the complexities of U.S. discovery in a massive, controversial, multi-party, multi-district litigation.[4]

Although less than clear about the chronology, Plaintiffs' Motion for Sanctions looks long into the past,  to the period between 2005 and 2011, when Defendants were represented by Martin McMahon, who does not read or speak any Arabic.[5]  Mr. McMahon relied heavily on MWL and IIRO staff to review the Arabic language documents, and that staff had no experience and little understanding of the tasks they were being asked to perform due to the complexities of the document requests.  *See* MWL Decl. at ¶¶12, 14; IIRO Decl. at ¶¶9, 19.  As a result, the initial document review and collection process was hampered by confusion, limited resources

---

[2] Plaintiffs initially sought documents spanning back to the 1980s; however, Judge Maas denied this request, holding that "[D]efendants are directed to respond to plaintiffs' requests for discovery relating back to the period beginning in 1992." Bembry Decl. Ex. 1 at 2.

[3] *See* Bembry Decl. at ¶10 (describing Defendants' objection to the geographic scope of Plaintiffs' requests).

[4] IIRO maintains a legal department of no more than three attorneys, none of whom speak English with proficiency. MWL has no legal department.  *See* Bembry Decl. at 2; Declaration of Ammar Chaouat ("IIRO Decl.") at ¶11, ¶19; Declaration of Mohamed Fawzi ("MWL Decl.") at ¶14.  The declarations of Mr. Chaouat and Mr. Fawzi are in Arabic, their native language.  English translations are provided and all citations herein are to those translations.

[5] *See* Bembry Decl. Ex. 4 at 4:20- 25.

3

and miscommunication.  *See* MWL Decl. at ¶14; IIRO Decl. at ¶19.[6]  Despite these challenges,

the record demonstrates that numerous good faith efforts were made during this time period to

cope practically with this novel and enormous challenge, including:

- Between 2006 and 2011, a minimum of 10,000 hours was expended by an IIRO team of six IIRO employees and four contractors, working to review and collect documents potentially responsive to Plaintiffs' document requests.  *See* IIRO Decl. at ¶¶11, 13.

- Multiple offers were made for Plaintiffs to be given access to document repositories in the Kingdom as well as in certain foreign branch offices.  *See* IIRO Decl. at ¶14; MWL Decl. at ¶15; *see also* Bembry Decl. Ex. 2 at 26:5-10.   These offers were uniformly declined.  Indeed, these offers caused Judge Maas to repeatedly question why Plaintiffs had not visited any offices.  *See* Bembry Decl. Ex. 3 at 23:17-20; Ex. 5 at 25:11-15; Ex. 6 at 39:3-5; Ex. 2 at 26:23-25.   Far from any indication of reluctance to cooperate, Defendants made a bona fide offer to provide open file access to Plaintiffs.

- MWL representatives worked with previous counsel to locate documents potentially responsive to the voluminous document requests, including the categories of documents identified in the Court's April 2011 Orders.  *See* MWL Decl. at ¶11.

- Defendants catalogued all documents stored in a principal warehouse into two indices containing detailed information about each document and comprising more than 6,500 pages and approximately 180,000 entries.  *See* IIRO Decl. at ¶16.   This effort demonstrates that Defendants were trying to be proactive and cooperative within their frame of reference.

These offers and efforts were summarily rejected, even though they would greatly have

advanced the process had Plaintiffs sincerely wanted to collaborate on obtaining documents.

Although these efforts were ultimately deemed insufficient to meet Defendants' discovery

obligations, in 2011, Judge Maas credited the efforts and recognized the challenges facing these

foreign organizations:

> Putting aside the obvious strength of views on both sides in this case, it's been my experience that when you are dealing with foreign discovery in any case, even it's

---

[6] As set forth in the accompanying declarations of Mohammed Fawzi and Ammar Chaouat, numerous issues contributed to communication issues in the period between 2006 and 2011, including: (1) the language barrier between former counsel, Mr. McMahon, who does not speak Arabic, and members of the Defendants' organizations, who do not have a strong control over the English language; (2) the fact that the vast majority of the documents are in Arabic and Mr. McMahon could not read Arabic; and (3) the technical and voluminous nature of the Plaintiffs' document requests, which were written in English and contained many subparts.  MWL Decl. ¶14; IIRO Decl. ¶19.

the manufacturer of widgets, getting the very sorts of information that you seek is difficult just because of cultural differences.

Bembry Decl. Ex. 5 at 30:10-20; *see also* Bembry Decl. Ex. 6 at 29:16-17 ("What's needed is recognition of the fact that there are language and cultural problems . . . ."). Judge Maas also questioned why Plaintiffs had not accepted Defendants' offers to explain their efforts and to tour certain facilities to see how the records were maintained.[7]

In the first half of 2011, Plaintiffs filed motions to compel. In April 2011, Plaintiffs' motions were granted in part and denied in part. Bembry Decl. ¶¶4-5. Just four months later, in August 2011, Plaintiffs filed their first motion for sanctions arguing that Defendants had not complied with the Court's April 2011 orders. *Id.* at 6. After considering the parties' briefing on the 2011 motion for sanctions and the unique circumstances of this case, Judge Maas in November 2011 denied Plaintiffs' request for sanctions and directed that additional efforts be taken that might serve to narrow the scope of the parties' disputes.[8] *Id.* at 7. In so doing, he made the characteristically astute and understanding comment that "it sounds like folks don't understand what their duties are." *Id.*, Ex. 2 at 19:6-7.

As Plaintiffs acknowledge, not long after the November 2011 conference, it was announced that Defendants intended to engage new counsel. *See* Memo at 4. Defendants' decision to make a significant change was specifically intended to address the very issues highlighted by Judge Maas that hindered Defendants' initial discovery effort. *See* MWL Decl. at ¶¶14, 17; IIRO Decl. at ¶¶19, 22. As Defendants' earlier efforts in inviting Plaintiffs to tour

---

[7] *See* Bembry Decl. Ex. 5 at 25:11-15; 26:8-10 ("They have proffered a sacrificial lamb in terms of somebody who they say is knowledgeable about recordkeeping, it sounded like, worldwide for one of the entities. Why wouldn't you want to talk to that person? . . . I thought Mr. McMahon was saying come talk to the person, tour an office and see how the records are kept."); *see also* Bembry Decl. Ex. 2 at 26:23-27:2.

[8] At the November 2011 conference, Judge Maas directed Plaintiffs to review the additional 12,000 pages of material Defendants had identified in August 2011 and further directed that the parties' meet and confer, for a second time, about the voluminous index that had been prepared concerning documents stored in a warehouse in Jeddah. Bembry Decl. Ex. 2 at 12:13-15; 20:19-25.

document repositories and their production of a massive index make clear, Defendants were not trying to evade or hinder discovery.  They were trying to cooperate but initially did not have the necessary guidance, internal skill sets or supervision.  For that reason, they decided they needed to change counsel and turn their good intentions into comprehensive compliance.  *Id.*  And over the last five-plus years, they have done precisely that.

Since retaining new counsel in 2012, as detailed in Defendants' Opposition to Plaintiffs' Motion to Compel (filed on this date and incorporated herein by reference), Defendants have embarked on a herculean global effort to locate and produce documents responsive to Plaintiffs' hundreds of requests at great expenditure of effort and resources.  Dozens of cross-Atlantic trips have been conducted by a team of attorneys fluent in Arabic to review and collect records in 17 offices located in 14 different countries across the farthest flung corners of the world.  *See* MWL Decl. ¶19; IIRO Decl. ¶24; Bembry Decl. at ¶11.  An estimated 2 million pages of documents have been reviewed and nearly 500,000 pages of additional documents have been timely produced in full compliance with the Court's April 2011 orders.  *See* Bembry Decl. ¶11.  Indeed, Plaintiffs' Motion for Sanctions makes no accusation of "discovery misconduct" that occurred after 2011.  Plaintiffs instead use Defendants' comprehensive compliance as a cudgel to criticize the earlier false starts that Defendants have remedied.

## III.   ARGUMENT

### A.   *Plaintiffs' motion for sanctions is untimely.*

As the Second Circuit has held, "a motion for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter when it is still fresh in his [or her] mind." *Mercy v. County of Suffolk, New York*, 748 F.2d 52, 55 (2d Cir. 1984); *see also In re Teligent, Inc.*, 358 B.R. 45, 59 (Bankr. S.D.N.Y. 2006) (same).  Although Rule 37 sets forth no time limit

within which a motion for sanctions must be filed, it is well established that "unreasonable delay may render such motions untimely."  *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y.), *on reargument*, 187 F.R.D. 148 (S.D.N.Y. 1999); *see also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 757 (7th Cir. 1994) (delay of approximately four years unreasonable and rendered motion untimely).  Here, not only is the matter not "fresh in [the Court's mind]," the Judge who dealt with the matter over a long period of time has retired and now Plaintiffs ask a new Judge with no prior history of the disputes to make nuanced judgment calls on the tortured history of long ago events.

Plaintiffs seek monetary sanctions on account of alleged "discovery misconduct" that they assert took place **between 2005 and 2011**.  *See* Memorandum of Law in Support of Plaintiffs' Motion for Sanctions ("Memo") at pp. 7-14.  However, Plaintiffs' motion makes perfectly clear that they could have filed this motion as early as 2012.  Plaintiffs assert that, in 2011, "immediately before plaintiffs' motion for sanctions was due, MWL-IIRO told plaintiffs that over 13,000 pages of new documents were going to be produced, making clear that no meaningful effort had previously been invested in searching for records until the Court threatened them with case-dispositive sanctions."  Memo at 3.[9]  Plaintiffs appear to argue that the passage of time was necessary to their current claim for monetary sanctions in that it strengthened the record against MWL and IIRO.  Plaintiffs assert:

> While this motion could rely on the existing record to obtain such sanctions, **the record now is far stronger than the record was before Judge Maas because later MWL-IIRO productions further demonstrate these defendants' misrepresentations**.

Memo at 1 (emphasis added).  But this statement is not only an admission of inexcusable delay, it is contrary to established case law that a movant may recover only those costs that would not

---

[9] Plaintiffs' motion includes no explanation of why a review of documents produced in late 2011 could not have been completed by 2012.

have been incurred except for the alleged misconduct; the "pattern" of the alleged misconduct is not relevant to this analysis. *See e.g., Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829–30 (1994) (distinguishing compensatory from punitive sanctions and specifying that punitive sanctions require greater procedural protections); *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 341 (S.D.N.Y. 2016) ("consideration of the alleged 'pattern' of misconduct unnecessary in determining an appropriate sanction").

By making a tactical decision to wait for discovery to be complete so that they can point to all the additional documents that were later produced as "further" evidence of an alleged pattern of misconduct, Plaintiffs have engineered a situation where neither undersigned counsel nor the Judge was present six to twelve years ago when the relevant events transpired. Plaintiffs' delay has made it significantly more difficult for the Court to consider and fairly analyze the issues at play here. There is no justification for Plaintiffs' five-year delay.[10] For that reason alone, the motion should be denied.

### B.      The relevant factors weigh against an award of sanctions in this case.

Plaintiffs' motion should also be denied because the relevant factors weigh against an award of sanctions. *See e.g. Farmer v. Hyde Your Eyes Optical, Inc*., No. 13-CV-6653 (GBD)

---

[10] Plaintiffs' half-hearted attempt (buried in a single footnote) at explaining the "reasons" they brought this motion five years late are unavailing. *See* Memo at 5, n. 5. First, as discussed above, Plaintiffs claim that over the last five years the "scope of Defendants' prior misconduct and misrepresentations became even clearer*"* must be disregarded. Second, the notion that Plaintiffs "did not want to take any action that would chill the production of additional documents" is absurd on its face and Plaintiffs have presented no evidence to suggest that a timely filed motion would have "chilled" the rolling productions that began after Defendants proactively changed their counsel. Third, Plaintiffs' claim that they "believed they had a claim that the amount of the sanctions was to be based on how grievous the error" is equally without merit. As demonstrated above, the law was clear in 2012 that the sanction of imposing legal fees is compensatory, not punitive. Fourth, contrary to Plaintiffs' assertion, the prejudice to Defendants is clear, as the passage of time makes it significantly more difficult for Defendants to meaningfully respond to Plaintiffs' claims of misconduct taking place between six and twelve years ago.

(JLC), 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (citations omitted).[11]   Plaintiffs

present an incomplete and deliberately misleading picture of Defendants' discovery efforts and

make unsubstantiated claims of discovery misconduct and bad faith.  Defendants may have not

understood how things are normally done, but they made significant efforts and offered access to

their files. These are not the actions of parties trying to evade discovery.

   ***Willfulness and Reason for Non-Compliance***.  Plaintiffs' Motion for Sanctions makes

numerous unsubstantiated accusations that Defendants willfully engaged in discovery

misconduct or otherwise acted in "bad faith."  *See generally* Memo at 8-14.   The record,

however, does not support Plaintiffs' contentions of willful misconduct or bad faith.[12]   In fact,

some of the examples cited by Plaintiffs only serve to highlight the extent of the confusion and

communication issues that plagued Defendants' initial discovery efforts.

   For example, Plaintiffs claim that MWL and IIRO have "consistently attempted to hide

behind their alleged unfamiliarity with the American judicial system." Memo at 10.   Yet

Plaintiffs' only support for this contention is the fact that former counsel, Martin McMahon, had

Skype calls with a Mr. Sameer Radhi, a former employee of IIRO who happened to speak some

English.  *Id.*  However, as detailed in the declarations of Defendants' representatives, the initial

process of locating and reviewing documents potentially responsive to Plaintiffs' complex and

voluminous document requests was fraught with confusion and miscommunication.  MWL Decl.

at ¶14; IIRO Decl. at ¶19.  The fact that one client representative had "ongoing contact" with Mr.

---

[11] Several factors guide the court's exercise of discretion, including: (1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on notice of possible sanctions.  *Farmer,* 2015 WL 2250592, at *7.

[12] Plaintiffs claim that Defendants' recycled documents in "a bad faith effort to obscure their discovery malfeasance" (Memo at 9), but offer no evidence to suggest bad faith.  Indeed, there are innocuous reasons why documents would have been "re-produced" that do not lead to an inference of bad faith.  For example, Defendants re-produced documents when it was discovered that earlier productions of the same documents did not include Bates numbers. Bembry Decl. Ex. 2 at 19:10-20.  In addition, there is evidence in the record to suggest that "re-productions" were likely the result of communications issues between Mr. McMahon and the Saudi staff on the ground.

McMahon via Skype does not establish that any earlier statement concerning Defendants' documents or their initial discovery efforts was knowingly false.

Plaintiffs also claim that Defendants falsely blamed their discovery failings on the "allegedly non-digital, non-searchable document management system," thereby purportedly misrepresenting their "extensive and sophisticated" computer system.  Memo at 8.  Here again, Plaintiffs obscure the truth.  As detailed in the attached declarations, MWL's documents from the relevant time period were *not* maintained electronically and, although the organization sought for many years to develop electronic management capabilities, MWL only began to develop its computer capacity in the last seven years.  MWL Decl. at ¶7.  Additionally, IIRO's accounting system, which contained raw data from which single searches could be performed and reports generated, was, putting it kindly, "archaic" and the process of searching this database for the hundreds of individuals and entities identified by Plaintiffs took significant direction from present counsel and a dedicated team of IIRO staff months to complete.  IIRO Decl. ¶¶36-37.  Those are the facts, not the self-serving speculation that try to convert the document management systems of these low-tech charitable operations into those of Fortune 50 multinationals.  Having spent years navigating these primitive systems to complete this exercise, undersigned counsel can speak with authority as to their capabilities, while Plaintiffs, who have rejected every overture to collaborate, try to suggest capacities that simply do not exist.

Plaintiffs' remaining claims of willful misconduct are similarly unavailing.  *See* Memo at 10-14.[13]  The essence of Plaintiffs' argument is that production of documents within the last five years – documents obtained as a result of the substantial efforts of a team of attorneys fluent in Arabic, who personally traveled to 17 offices in 14 countries – demonstrates that earlier representations by former counsel (with no Arabic language capabilities) about the existence of documents predominantly in Arabic must have been intentionally misrepresented or knowingly false.  That is the essence of Plaintiffs' arguments and it is as illogical as it is without basis. Moreover, the declarations present concrete evidence of substantial communication issues during Mr. McMahon's involvement as counsel. *See* MWL Decl. ¶14; IIRO Decl. ¶19.   These Defendants were trying hard under difficult circumstances, and ultimately remedied whatever issues there may have been.

Furthermore, Plaintiffs' contention that Defendants "knowingly obscured" documents (Memo at 18) is belied by the fact that multiple offers were made more than six years ago to give Plaintiffs open file access to locations that housed many of the half a million pages of responsive documents produced to Plaintiffs as a result of the last five years of efforts undertaken by present counsel.  Judge Maas acknowledged Defendants' offers of access to documents when he denied Plaintiffs' 2011 motion for sanctions:

---

[13]   Plaintiffs assert that Defendants' supplemental productions of financial records, documents relating to their relationship with certain individuals and entities, including the KSA government, and documents relating to branch office records, among others, establish that earlier representations about the existence of these documents were intentionally false.   Memo at 10-11.  However, Plaintiffs provide no support for these conclusory allegations.  In fact, Plaintiffs' claim that Defendants' productions contained "documents related to Osama bin Laden" is patently false.  Plaintiffs misleadingly cite to Defendants' production indices generally, which identify a document request that seeks documents relating to the employment of approximately twenty individuals, including Osama bin Laden.  The production index identifies documents as responsive to this request because the documents produced relate to one or more of the other twenty individuals, *but not Osama bin Laden.*  As Plaintiffs are well aware (or should be aware), not a single document referenced in the cited indices evidences any relationship to Osama bin Laden.  Plaintiffs' suggestion otherwise is either grossly misleading or demonstrates a lack of familiarity with the documents and careless drafting.

> I've said in the past that if I were the plaintiffs, I'd take you up on the offer to
> visit these offices.  But if they want to proceed the way they are and on the record
> they have, I'm not going to require that they go to London or the Philippines or
> anyplace else.

Bembry Decl. Ex. 2 at 26:23–27:2.  But Plaintiffs make no mention of these offers in their motion, presumably because they contradict Plaintiffs' false narrative that Defendants "knowingly obscured" documents. [14]

**_Efficacy of lesser sanctions_**.  While seeming to acknowledge _sub silentio_ that significant changes were made following Defendants' change in counsel (Memo at 4-5), Plaintiffs ignore the impact of the substantial efforts undertaken by MWL and IIRO since then to comply fully with the Court's April 2011 Orders specifically and their discovery obligations more generally,[15] arguing that "[n]o lesser sanction would be effective, as anything other than a significant shifting of costs would incentivize MWL-IIRO to continue pursuing the same subterfuge."  Memo at 17. This argument is plainly disingenuous.  When Defendants became aware in 2011 of the extent of the communication issues in the discovery process, that alone was entirely "effective," as evidenced by the announcement shortly after the November 2011 conference that Defendants intended to change their counsel and approach the problem with a massive commitment to remedy these problems with a large multi-lingual, multi-jurisdictional production effort.  Indeed, there is no need for any further incentives, as the last six years have shown.  And there was no "subterfuge," then or now.

---

[14] Significantly, Plaintiffs' motion contains no allegations of purported "willful misconduct" or "bad faith" occurring _after 2011_, when Defendants' intention to replace their counsel was announced.  The fact that the discovery misconduct complained of did not continue after a change in counsel is further evidence supporting Defendants' contention that the initial non-compliance was not willful; rather, it was the result of communications issues corrected with a change in counsel.  And for more than six years, things have been proceeding without any suggestion of misconduct.

[15] As reflected in Defendants' Opposition to Plaintiffs' Motion to Compel (filed on this date and incorporated herein by reference), as a result of the efforts over the last 5 years, Defendants have complied fully with the Court's April 2011 Orders and their discovery obligations more generally.

   ***Duration of non-compliance***. Plaintiffs' assertion that Defendants' non-compliance "spanned years" (Memo at 15) is yet another distortion of the facts. Briefing on Plaintiffs' motions to compel did not begin until 2011. Bembry Decl. at ¶4. In April 2011, the Court issued the Orders that form the bases for Plaintiffs' claims of entitlement to expenses under Rule 37. *Id.* at ¶5. Approximately four months after the Court issued its April 2011 Orders, Plaintiffs filed their 2011 motion for sanctions asserting that Defendants failed to comply with the April 2011 Orders. *Id.* at ¶5. Shortly after the Court denied Plaintiffs' 2011 motion for sanctions, Defendants announced that they would be replacing their counsel. Obviously, millions of documents could not be reviewed and produced overnight and Plaintiffs were informed of ongoing efforts during meet-and-confer discussions with undersigned counsel, all while the document discovery period remained ongoing. *Id.* at ¶¶9-11. Significantly, Plaintiffs' Motion for Sanctions alleges no discovery misconduct after 2011. In fact, in their Memorandum, Plaintiffs concede that "MWL-IIRO re-commenced document productions in September 2013 and has continued to produce documents, from time to time, through August 2017," when document discovery in this case ended. Memo at 5. Thus, the period of non-compliance spanned at most a period of a few months in a twelve-year-old case where document discovery has just ended – from the dates of the Court's April 2011 Orders to late 2011 – not the "span of years" suggested by Plaintiffs, after which time no discovery misconduct is alleged.

   ***Whether the non-compliant party had been warned of the possibility of sanctions***. This factor should be given little weight in the Court's analysis because of the unique circumstances of this case where foreign defendants fully complied with discovery orders prior to the close of document discovery and well in advance of deposition discovery. Judge Maas, who warned of the possibility of sanctions for non-compliance with his 2011 Orders, did so while repeatedly

acknowledging the significant challenges, including what he described as "language and cultural problems" that these foreign defendants faced in the discovery process.[16]   In fact, it was the warnings and suggestions provided by Judge Maas that ultimately led Defendants to announce, shortly after the November 2011 conference, that they would be replacing their counsel with a much larger team with on-the-ground experience in the region and the ability to read Arabic language documents.   Under the circumstances presented here, the mere fact that a warning of the possibility of sanctions was given should be given little, if any, weight in the analysis. [17]

### C.   Awarding sanctions would not effectuate the three purposes sanctions are intended to serve.

In addition to giving consideration to the factors relevant to determining the appropriateness of sanctions, the Supreme Court has held that "an award of sanctions under Rule 37 should effectuate its three purposes:  (i) obtaining compliance with discovery orders; (ii) ensuring the disobedient party does not benefit from non-compliance; and (iii) providing a general deterrent in the particular case and litigation in general."  *See Estate of Shaw v. Marcus*, No. 14 CIV. 3849 (NSR)(JCM), 2017 WL 825317, at *4 (S.D.N.Y. Mar. 1, 2017) (*citing National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); *see also International Mining Co. v. Allen & Co., Inc.*, 567 F. Supp. 777, 788 (S.D.N.Y 1983).

Here, awarding sanctions would do nothing to effectuate any of the three purposes.  First, over the past five years, Defendants have undertaken exhaustive searches and produced all responsive documents in full compliance with the Court's April 2011 Orders.   An award of

---

[16] The Supreme Court has highlighted the importance of recognizing the foreign nature of a defendant in discovery disputes.  *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (instructing courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place" on them); *Eikenberry v. Celsteel Ltd.*, No. 13 CIV. 4661 (AT), 2013 WL 5308028, at *5 (S.D.N.Y. Sept. 19, 2013) (potential for abusive discovery of a foreign litigant as outlined in *Societe Nationale* is a "legitimate concern").

[17] As the Second Circuit recognized, "these factors are not exclusive, and they need not each be resolved against the party." *Securities and Exchange Comm. v. Razmilovic*, 738 F.3d 14 (2d Cir 2013).

sanctions will not change that fact; compliance has already occurred without an award of monetary sanctions.  Second, issuing sanctions at this stage in the discovery process – years after issues that led to claims of purported "discovery misconduct" have been addressed and corrected – would not serve the intended purpose of "ensuring the disobedient party does not benefit from non-compliance."  MWL and IIRO did not benefit from any period of non-compliance.  To the contrary, Defendants' change of approach years into a complicated, multi-district litigation was a costly but necessary step to address the issues that plagued the discovery efforts undertaken under the supervision of Defendants' former counsel.  That Defendants sought to – and did – change course illustrates that they sought to correct and did not seek to benefit from the various issues that hampered their earlier discovery efforts.

Finally, in light of the unique circumstances of this case and the fact that document discovery has ended with complete compliance, sanctions at this stage would not serve the purpose of deterring others, whether in this case or litigation more generally.  Documents in this case were produced by many parties over many years; that some documents came later rather than earlier in the discovery process (but within deadlines) does not present an object lesson for deterrence, either specifically in this case or more generally.  For all of these reasons, an award of sanctions against Defendants at this stage – after compliance has been obtained and in the wake of the close of document discovery – would not serve the purposes sanctions are intended to serve.

### D.    *Cost shifting is not appropriate where, as here, "the failure was substantially justified or other circumstances made an award of expenses unjust."*

As Plaintiffs acknowledge, an award of cost-shifting is not appropriate where "the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  A party's conduct is substantially justified "if there was a genuine dispute

15

or if reasonable people could differ as to the appropriateness of the contested action." *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (internal citations omitted).

Here, Plaintiffs seek costs pursuant to Rule 37(b)(C) for purported "discovery misconduct" *prior to 2012*, which they assert included Defendants' failure to comply with the Court's April 2011 Order. Memo at 7-14. In order to evaluate the appropriateness of Defendants' actions or whether there was in fact a "genuine dispute" that substantially justifies the non-compliance complained of here, the Court must revisit the state of play as it existed in 2011. Through November 2011, there was miscommunication between Defendants and their counsel, a genuine dispute about whether documents identified in August 2011 addressed issues raised concerning Defendants' compliance with the Court's April 2011 Orders, and a genuine dispute about what additional efforts could be taken to narrow the areas in dispute. At a conference before Judge Mass held on November 16, 2011, there was discussion about the existence of approximately 12,000 pages of documents identified by Defendants' counsel in August 2011 and the extent to which those documents addressed some of the concerns raised by Plaintiffs. *See* Bembry Decl. Ex. 2 at 7:18-8:8, 9:4-7; 12:13-16; 16:25-17:3. Defendants' former counsel, Mr. McMahon, also questioned why Plaintiffs could not utilize the voluminous index of documents stored in a warehouse, comprising more than 6,500 pages and approximately 180,000 entries (*see* IIRO Decl. at ¶16), as a tool to narrow the focus on particular documents requested. *Id.* at 20:15-18.

During the November 2011 conference, Judge Maas denied Plaintiffs' request for sanctions and directed that additional efforts be undertaken to try and narrow the parties' dispute concerning Defendants' document productions. In particular, Judge Maas directed Plaintiffs to review the additional 12,000 pages of documents that Defendants identified in August 2011. *Id.*

at 12:13-15; 24:13-25:1.  Judge Maas also directed the parties to meet and confer about the voluminous index, noting a concern that Plaintiffs may not "have really looked through the indices to see whether there are categories of documents that can be excluded or focused on or prioritized or whatever."  *Id.* at 20:5-10, 20:19-25; 27:23-25.  These facts demonstrate, at a minimum, the existence of a "genuine dispute."

Additionally, as discussed above, a number of other circumstances would make an award of expenses unjust.  Defendants faced significant communication issues in their initial discovery efforts as they tried to navigate their way through unfamiliar territory guided by an attorney with no Arabic language capabilities.  MWL Decl. ¶14; IIRO Decl. ¶19.  Having changed course and retained new counsel, and after years of collection and review efforts across the globe, Defendants complied fully with the Court's April 2011 Orders within the document discovery period.  Under these circumstances, an award of expenses against Defendants would be unjust.

### E.    The Court has the discretion to deny cost shifting on a motion to compel where the prevailing party was not entirely successful or neither party has consistently prevailed in discovery disputes.

Plaintiffs' Motion for Sanctions, although ostensibly brought pursuant to Rule 37(b)(2)(C), seeks "millions of dollars," including costs associated with two motions to compel filed in 2011, making Rule 37(a)(5)(C) applicable as well.  *See* Memo at 19.  On a motion for recovery of fees associated with a partially successful motion to compel where neither side in a discovery dispute wins completely, the court is authorized to apportion and shift expenses, including attorney's fees, in whatever manner the court deems just, including a determination that partial success confers no entitlement to fees. *See* Fed. R. Civ. P. 37(a)(5)(C); *See also Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 217 (S.D.N.Y. 2009) (denying request for costs and fees, holding that "no apportionment is appropriate given the mixed results of the motion and the history of discovery disputes in which neither side has consistently prevailed").

17

As an initial matter, Plaintiffs did not prevail on all issues raised in their 2011 motions to compel.  In the Court's order dated April 26, 2011, Judge Maas ordered responses to some, but not all, of the disputed discovery requests.[18]  In addition, consideration of the entire record of discovery disputes between Plaintiffs and these Defendants makes clear that neither side has consistently prevailed over the course of their disputes.[19]  In 2016, following a lengthy and contentious discovery dispute concerning several highly inflammatory documents produced by Plaintiffs and about which MWL and IIRO had serious questions concerning their authenticity, Judge Maas ruled in favor of MWL and IIRO and refused to permit Plaintiffs from relying on the questioned documents:

> I also am convinced, however, that there is reason to question the authenticity of the documents.  As a consequence, if MWL/IIRO cannot explore the provenance of the documents at this time, fairness dictates that the Plaintiffs not be permitted to rely further on the documents for any purpose related to this multi-district litigation.

Bembry Decl. Ex. 8 at 1.  The efforts undertaken by Defendants to investigate the authenticity of these highly suspicious documents, which included two pre-motion letters seeking to compel critical discovery on the provenance of the suspected forgeries (*see*, *id.* at Ex. 9, Ex. 10), were substantial and costly.  As detailed in the January 21, 2016 letter to Judge Maas (*id.* at Ex. 10), Plaintiffs repeatedly refused to comply with an order of the Court, requiring unnecessary and costly motions practice.  However, in his 2016 Order, Judge Mass declined "to entertain any application by MWL/IIRO to recover any additional costs that they may have incurred to date in connection with this discovery contretemps" because "the documents have not yet been shown to be forgeries."  Bembry Decl. Ex.8 at 2. Yet despite the rather more serious concern that Plaintiffs

---

[18] Judge Maas ruled that "Plaintiff's request number 57, which seeks documents relating to the Soviet occupation of, and expulsion from, Afghanistan, is denied as overbroad."  Bembry Decl. Ex. 7.

[19] It is well within the Court's discretion to consider the full record of this case in order to determine whether the sanctions sought by Plaintiffs are appropriate.  *See Estate of Shaw*, 2017 WL 825317, at *4 (*citing Diapulse Corp. of America v. Curtis Pub. Co.*, 374 F.2d 442, 447 (2d Cir. 1967)).

were relying upon falsified documents, no sanctions were awarded and the instant motion should be viewed within the broad context of bilateral discovery. This record demonstrates that no apportionment is appropriate because Plaintiffs were not entirely successful on their motion to compel and given the history of discovery disputes in which neither side has consistently prevailed.

**F.** **If the Court determines that a monetary award should be awarded in this case, it must be compensatory rather than punitive in nature.**

Plaintiffs concede that the standard recently articulated by the Supreme Court in *Goodyear Tire & Rubber Co. v. Haegar*, 137 S. Ct. 1178 (2017) is applicable here. Memo. at 5, n. 5. In *Goodyear*, the Court made clear that "a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. . . . In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* at 1186. The Supreme Court went on to hold that:

> [A] sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.

*Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 834 (1994).

Thus, if the Court were to determine, notwithstanding the arguments presented herein, that Plaintiffs should be awarded a monetary sanction in this case, any such award would have to be narrowly tailored so as to compensate Plaintiffs for reasonable amounts incurred as a result of the purported "discovery misconduct" Plaintiffs admitted ceased in 2011. Memo at 7-14. Any such award could not, as Plaintiffs argue in their Memorandum, include "punitive monetary

sanctions." Memo at 20. At most, Plaintiffs might be entitled to the cost of their motions, not "millions of dollars," but as set forth above, there is no justification for such an award in the circumstances presented here.

## IV.  CONCLUSION

For all of these reasons, Plaintiffs' Motion for Sanctions should be denied in its entirety.

Respectfully submitted,

_____/s/_____

Eric L. Lewis
Aisha E. Bembry (*pro hac vice*)
Waleed Nassar (*pro hac vice*)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Ave., N.W.
Suite 600
Washington, D.C. 20006
Tel: (202) 833-8900
Fax: (202) 466-5738
eric.lewis@lbkmlaw.com
aisha.bembry@lbkmlaw.com
waleed.nassar@lbkmlaw.com

*Counsel for Defendants Muslim World League and International Islamic Relief Organization*