# Exhibit 2

```
                                                                       1
     1bgr911c
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   In Re:  TERRORIST ATTACKS ON
 3           SEPTEMBER 11, 2001            03 MDL 1570 (GBD)
 4
 4   ------------------------------x
 5                                         New York, N.Y.
 5                                         November 16, 2011
 6                                         2:30 p.m.
 6
 7   Before:
 7
 8             HON. FRANK MAAS
 8
 9                                         Magistrate Judge
 9
10
10
11             APPEARANCES
11
12
12   KREINDLER & KREINDLER LLP
13        Attorneys for Ashton Plaintiffs
13   BY:  JAMES KREINDLER
14        ANDREW J. MALONEY, III
14
15
15   COZEN O'CONNOR
16        Attorneys for Plaintiff Federal Insurance
16   BY:  SEAN CARTER
17        J. SCOTT TARBUTTON
17
18
18   MOTLEY RICE LLC
19        Attorneys for Burnett Plaintiffs
19   BY:  ROBERT T. HAEFELE
20
20
21   ANDERSON KILL & OLICK, P.C.
21        Attorneys for O'Neill Plaintiffs
22   BY:  JERRY S. GOLDMAN
22
23
23   BERNABEI & WACHTEL PLLC
24        Attorneys for Defendants Al Haramain Islamic Foundation
24        and Perouz Seda Ghaty
25   BY:  ALAN R. KABAT
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

```
                                                                  7
     1bgr911c
 1   correct, Mr. McMahon, that that is the only affidavit?
 2            MR. McMAHON:  I believe that's the case, your Honor.
 3            THE COURT:  I missed that.  I guess all I'm missing is
 4   the affidavits that relate to your opposition relating to MWL
 5   and IIRO.
 6            MR. McMAHON:  The 9/26 letter exhibits, yes.
 7            THE COURT:  Yes.
 8            MR. McMAHON:  What is the best way, your Honor, to get
 9   you physical possession of those?  FedEx them to your chambers?
10            THE COURT:  Exactly.
11            MR. CARTER:  Your Honor, for clarification on our end,
12   these are the exhibits that were submitted in support of the
13   motion for sanctions as to the Muslim World and IIRO.  Does the
14   Court have something approximating this?
15            THE COURT:  Yes.  Because of its impressive girth, I
16   didn't bring it upstairs today.
17            MR. CARTER:  That's why I made Mr. Tarbutton carry it.
18            THE COURT:  Turning to MWL and IIRO, one of the things
19   Mr. McMahon says in his papers is that he has 12,000 pages of
20   exhibits, possibly more, kicking around his office that you and
21   your colleagues have declined to come look at.
22            MR. CARTER:  Your Honor, we received notification of
23   the existence of those documents on the very day we were filing
24   the motion for sanctions.  We were very reluctant to continue
25   to embrace a moving target relative to what had been produced
```

                                                                      9
        1bgr911c
 1   another one that essentially conceded that all of the branches
 2   are under the control of the parent organizations.  Let me get
 3   from you what your position is to that.
 4           MR. McMAHON:  Yes, your Honor.  I want to get back to
 5   the 12,000 pages.  For your information, your Honor, we took
 6   the time to put those on CD's, and they are ready to go if Mr.
 7   Carter wants those.
 8           With respect to your pertinent question here, they are
 9   separate entities.  There may be certain parts of the globe
10   where there is an MWL office and an IIRO office, but they are
11   separate entities, have separate charters.  We don't deem IIRO
12   to be a subsidiary of the MWL.
13           THE COURT:  I'm asking a slightly different question.
14   For IIRO, for example, to the extent that the plaintiffs are
15   seeking documents from branch offices, what is your position as
16   to the IIRO's ability to secure documents from the Indonesian
17   branch, the London branch, etc.?  Is it branch-specific or do
18   you concede that all of the branches, in terms of document
19   flow, are within the control of the parent?
20           MR. McMAHON:  No, your Honor, we don't concede that.
21   We would look to IIRO for the different office records in terms
22   of a particular branch, like the Philippines, which the
23   plaintiffs are very interested in.  At one point I think the
24   MWL had presence there, but IIRO has whatever records IIRO it
25   has.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

12

1bgr911c

1  of these organizations have a thousand or thousands of
2  employees, how 12,000 pages, even if it's all financial
3  records, would be all the financial records, quarterly, etc.,
4  that relate to all of these branches for a multiyear period.
5  Are you representing that in response to this first category
6  somebody, Mr. al-Radhi or somebody else, on behalf of IIRO
7  queried every branch office to secure the documents that
8  plaintiffs have requested?
9            MR. McMAHON:  Your Honor, I believe that's the case.
10 I will have to go back and check his affidavit.  As I said at
11 page 13 paragraph 5, these documents were apparently sent to
12 counsel's office.
13           THE COURT:  Just to avoid the game of chicken, I'm
14 going to direct that you provide that CD to plaintiffs' counsel
15 and also that plaintiffs' counsel review it.
16           MR. McMAHON:  There are 12 CD's.
17           THE COURT:  Like I said, the 12 CD's.  I don't want to
18 leave anybody in suspense.  It's not my intent at the end of
19 today to grant or recommend -- I think it would be a grant,
20 since this is a discovery issue -- dispositive relief in terms
21 of something like striking the answer of any of these
22 defendants.  But I do think, unless I'm convinced otherwise, we
23 may be heading in that direction.
24           MR. McMAHON:  Does your Honor have a viewpoint on the
25 bank documents we have, which are difficult to read?  I asked

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

```
                                                                        16
     1bgr911c
 1   going to grant dispositive sanctions, at some point Mr.
 2   al-Radhi or somebody else, as a 30(b)(6) witness, is going to
 3   testify as to the efforts that these defendants made in
 4   response to these requests.
 5            Except to the extent that the two sides can agree that
 6   some branch office is not relevant, if each branch office is
 7   not queried and the documents from that branch produced, as far
 8   as I'm concerned that will have been an inadequate search and
 9   may lead to dispositive sanctions.
10            MR. McMAHON:  I hear and appreciate that, your Honor.
11            MR. CARTER:  Your Honor, we focused a lot during the
12   discussion today on the financial records and bank statements,
13   but there were a number of other categories.
14            THE COURT:  I had written down, just on the April 12th
15   order, I was going to focus on 1, 3, 4, 6, and 8.  We don't
16   have time to go through each one.  I know 2 is important to
17   you, but you seemed to get a list of orphans, so I skipped that
18   one.
19            3 relates to the annual constituent council meetings
20   where it would appear that there should be centrally located
21   files.  To the extent that there is something from the
22   Philippines' office, as an example, that the main office
23   doesn't have, if the Philippines office has it, it needs to be
24   produced from that office.
25            I guess 4 is similar, although I would imagine Mr.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                  17
     1bgr911c
 1    McMahon is going to tell me that some of this is among the
 2    12,000 documents that he has for your review.
 3              MR. McMAHON:  Yes, your Honor.
 4              MR. CARTER:  Your Honor, with regard to category 2,
 5    for instance, I know that it's been the defendants' response to
 6    that to produce orphan records.
 7              THE COURT:  I thought we had agreed that it's
 8    everything but orphans.
 9              MR. KREINDLER:  It is everything but orphans.  One of
10    the reasons that we want clarification on this issue is because
11    it is about the identity of the parties to whom they
12    transferred money.  The orphans aren't of interest, but some of
13    the organizations that received money are.
14              MR. McMAHON:  As I'm sure you read, your Honor, 50
15    percent of IIRO's annual expenses go to these orphans.
16              THE COURT:  You don't have to segregate out orphans.
17    That's the plaintiffs' problem.  But telling me about widows
18    and orphans doesn't really resolve the problem of producing
19    complete records that relate to who received aid during the
20    years we're talking about from either of the two defendants.
21              MR. McMAHON:  Every entity that receives any kind of
22    aid has to be identified?
23              THE COURT:  Correct.
24              Talk for a moment about audits.  It seems to me the
25    defendants will not have done their job as to audits unless
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                          19
    1bgr911c
 1              MR. McMAHON:  I understand, your Honor.  Thank you.
 2              THE COURT:  I know you understand.  I thought I was
 3   reasonably clear about this in our prior conferences.  We don't
 4   seem to be moving forward.  Perhaps it is that we never will
 5   and that the plaintiffs' motion ultimately will be granted.
 6   Even though you have been to Saudi Arabia, it sounds like folks
 7   don't understand what their duties are.
 8              For example, saying that somebody has contracted to
 9   have a further audit of records to my mind is somewhat
10   inexplicable in that the plaintiffs don't want audit documents
11   created now, they want preexisting financial records and
12   audits.  It's interesting, I suppose, that perhaps as part of
13   your defense somebody is doing an audit, but it really doesn't
14   relate at all, as far as I'm concerned, to document discovery
15   in this case.
16              Let me jump ahead a little.  At some point Mr. McMahon
17   will tell me that these organizations have produced all of the
18   records they have and I have indicated that I think it is going
19   to be appropriate to test that through a deposition of one or
20   more 30(b)(6) witnesses.  Where will a deposition like that
21   take place?
22              MR. McMAHON:  Your Honor, perhaps we can answer that.
23   We can very easily arrange to have that done in London.
24              THE COURT:  That may be the answer.
25              MR. McMAHON:  I think they even have a London office,
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                        20
      1bgr911c
 1    one of these law firms.
 2             THE COURT:  Looking at the number of people in the
 3    courtroom, I'm sure one of these law firms has a London office
 4    or can find a room at Heathrow.
 5             In terms of the indices, I agree that the
 6    responsibility of producing documents can't be shifted from the
 7    defendants to the plaintiffs, but I'm not sure that the
 8    plaintiffs have really looked through the indices to see
 9    whether there are categories of documents that can be excluded
10    or focused on or prioritized or whatever.
11             MR. CARTER:  Your Honor, as I've said, we have had
12    people go through the hundred or so thousand cells within the
13    spreadsheet.  There really is not enough in a descriptive sense
14    to allow us to use them.  So, they have limited value.
15             MR. McMAHON:  Maybe Mr. Carter can send me a brief
16    email on one of those categories, your Honor, to point out why
17    that particular characterization is too limited to afford the
18    9/11 lawyers to say that's the document I want.
19             THE COURT:  I'll go further than that.  You said that
20    there was an attempted meet-and-confer but that plaintiffs'
21    counsel, it appeared to you, didn't have the indices with them.
22             MR. McMAHON:  Right.
23             THE COURT:  I'm going to direct that there be a
24    meet-and-confer where both sides have the indices and you can
25    have a discussion about what they do or don't shed light on.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

1bgr911c

1  opportunity to litigate this case on the merits.
2             Where we are now is that we are going to have another
3  meet-and-confer, Mr. McMahon and his clients are going to
4  peruse droves of additional documents, and we are going to go
5  back to the beginning with Arabic translators and consultants
6  and everyone else combing through them in considerable detail
7  to try and demonstrate that stuff has been withheld again.
8             I just don't know, given where we have come thus far,
9  that there is much basis to think that there is going to be
10 true compliance going forward or that there will be a
11 reasonably obtainable methodology for demonstrating
12 noncompliance once we have already sort of showed our hand.
13            MR. McMAHON:  Your Honor my short response to that is
14 Mr. Carter should take a look at the 12 disks, the CD's, the
15 12,000 pages, and maybe comment on that.
16            THE COURT:  I have already directed that he do that.
17 I recognize that the defendants, and perhaps not just these
18 defendants, are a bit of a moving target, but I don't think it
19 is appropriate to say, well, if they didn't give it to us by
20 the date we filed our motion, we're not going to look at it.
21            Part of what I need to consider is prejudice, and it's
22 hard to demonstrate prejudice if Mr. McMahon can say, well, if
23 they'd opened the file or come to my office, all of the records
24 they want are there, admittedly late, but they are there.  I
25 suspect if it's 12,000 documents, it may make a dent in what

25

1bgr911c

1  you are seeking, but it probably makes a fairly small dent.
2             MR. CARTER:  Your Honor, part of the prejudice I think
3  we would identify is that, for instance, the 12,000 documents
4  can include branch office reporting that in one of the early
5  filings we were told didn't exist.  We then invested all the
6  time and resources to have investigators go out and collect
7  information and comb through documents to prove that they did
8  exist.  The prejudice we have suffered so far, is the
9  incredible investment of money, time, and resources simply to
10 get to the point where the defendants acknowledge effectively,
11 yes, there's a whole bunch of stuff that we never looked for.
12            THE COURT:  The alternative, I suppose, is to proceed
13 directly to the 30(b)(6) deposition.  That might put a finer
14 point on what you are telling me and what seems to be correct
15 in terms of what was and wasn't done.  But I'm not sure that at
16 the end of the day I wouldn't have to provide some relief short
17 of throwing out the defendants' answer before taking that step.
18            I guess I understand your frustration.  I'm prepared
19 to move forward on the basis of the motion papers I already
20 have, supplemented as is appropriate so that you are not
21 starting from scratch again.  But I do think we need to take
22 this a step at a time.
23            MR. CARTER:  Your Honor, could we reserve at a minimum
24 that if we get to the end of that process, the Court would
25 entertain an application, if we fall short at the end of an

26

```
    1bgr911c
 1  actual dispositive motion, for a motion for sanctions to
 2  recover some of the costs and expense we have incurred over
 3  nine months of simply proving that these documents exist?
 4           THE COURT:  Oh, sure.  Yes.
 5           MR. McMAHON:  Your Honor, you should be aware that Mr.
 6  al-Radhi has invited these lawyers to come to London at his own
 7  expense or at the charity's expense to go to an overseas office
 8  and actually learn how the office operates.  It would be a
 9  wonderful education for them.  I wrote them and said WML would
10  pay for that trip.
11           It is extraordinary, I think, the affirmative response
12  from these charities to accommodate these attorneys.  Keep in
13  mind, your Honor, we have been sued for a trillion dollars.  I
14  have never been involved in one of these trillion-dollar
15  lawsuits before.  Now, with these 12,000 pages, we are up to
16  35,000 pages of discovery.  But you have heard my speech
17  before.  I'm sorry.
18           THE COURT:  The trillion-dollar ad damnum and the
19  seriousness that you view it with is hard to square with an
20  earlier stage where I think you were having trouble getting
21  advanced sufficient funds to go to Saudi Arabia.
22           Putting that aside, I think there has to be greater
23  focus here.  I've said in the past that if I were the
24  plaintiffs, I'd take you up on the offer to visit these
25  offices.  But if they want to proceed the way they are and on
```

                                                                        27
     1bgr911c
 1   the record they have, I'm not going to require that they go to
 2   London or the Philippines or anyplace else.
 3            MR. McMAHON:  Your Honor, we should forget about,
 4   then, the vendor proposals that we brought to your attention?
 5            THE COURT:  Yes.  Getting a bid to copy every scrap of
 6   paper, if that's what the offer is, in Saudi Arabia is a
 7   nonstarter.  The duty of identifying responsive documents
 8   really belongs to the defendants.  There are also other issues.
 9   Once you move documents, for example, from Mecca to another
10   city, I don't know that you can say we're producing them as
11   they are maintained in the ordinary course and therefore the
12   plaintiffs have to come inspect them.
13            MR. McMAHON:  I think in United LEXIS, your Honor --
14   I'll have to go back and double-check -- there would be an
15   analysis of all the documents to say these documents are
16   responsive to number 1 or number 4 or number 6 or number 3.
17            THE COURT:  I'm sorry, I didn't get that.
18            MR. McMAHON:  I think in United LEXIS, your Honor,
19   there certainly was, for instance 2 to 6,000 MWL folders.  That
20   would be an attempt to narrow that down in the sense that these
21   are the documents that are necessarily responsive to X, go
22   through the use of classic work, discovery work.
23            THE COURT:  I have directed that the two sides meet
24   and confer with regard to the indices that either will or won't
25   shed light on this process.  Given the track records so far, I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300