# Exhibit 3

```
84BVTERC1                      Conference
```

```
    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x

    IN RE:  TERRORIST ATTACKS ON

            SEPTEMBER 11, 2001,            03 MD 01570 (GBD)(FM)

    ------------------------------x
                                           New York, N.Y.
                                           April 11, 2008
                                           11:05 a.m.
    Before:

                    HON. FRANK MAAS,

                                           Magistrate Judge

                           APPEARANCES

    ATTORNEYS FOR PLAINTIFFS:

    KREINDLER & KREINDLER
    BY:  ANDREW J. MALONEY, III
         -AND-
    JERRY S. GOLDMAN & ASSOCIATES
    BY:  JERRY S. GOLDMAN
         -AND-
    MOTLEY RICE
    BY:  ROBERT T. HAEFELE
         -AND-
    COZEN O'CONNOR
    BY:  SEAN P. CARTER
         J. SCOTT TARBUTTON


    ATTORNEYS FOR DEFENDANTS:

    MARTIN F. MCMAHON & ASSOCIATES
    BY:  MARTIN F. MCMAHON
         CHRISTINE HILGEMAN
```

```
84BVTERC1                    Conference
```

1    can come into court in good faith and say, You know, this is
2    what they are now pressing, and we have no obligation to do
3    that. We have no intention of doing that at this time, your
4    Honor. As a matter of fact, consulting with learned counsel
5    here, we've maxed out on our interrogatories to 25. I don't
6    think we can now serve 26 and 27 without leave from your Honor.
7            So I don't know why they are bringing this issue
8    before you at this time. There's no real imminent injury to
9    them that I'm aware of.
10           THE COURT: The way Mr. Carter counts, I think you're
11   up to 902 rather than 25.
12           MR. MCMAHON: Well, I don't know if he said that. I
13   think that was about the document request.
14           THE COURT: Oh, okay.
15           MR. MCMAHON: But, in any case, your Honor, I don't
16   know -- you know, again, we're not pressing the issue. These
17   answers came in in August; they did identify individuals; we
18   were happy with their responses in terms of 33.
19           My concern is this, your Honor, having been around the
20   track a little bit: I don't want to be sort of back-doored
21   down the road and be left with a limited time frame to serve
22   contention interrogatories.
23           And where we're going on this case, you know, I've
24   told some of my colleagues I hope I'm still alive when this
25   case ends. But I just want to be in a position to protect our

```
84BVTERC1                   Conference
```

1  clients; that, you know, perhaps there should be something like
2  we would have the right six months prior to the end of
3  discovery to propose contention interrogatories, given this
4  enormous case, your Honor.
5         I think, in part, and there are excellent attorneys, I
6  have a lot of respect for them, they are trying to take away
7  some of your discretion under Rule 33, because I recall on two
8  of those provisions "unless ordered otherwise by the Court."
9         So in one sense, your Honor, I'm glad I showed up; I
10 mean I've learned an awful lot about how awful my clients are.
11 But in terms of the contention interrogatories issue, I don't
12 really see a controversy here.  So that's why I wrote you the
13 letter I did.  Now, if we were pressing on contention answers,
14 I would understand their concern.
15         Your Honor, is there something I did not address that
16 you want to ask me a question on?
17         THE COURT:  No, I think you have addressed the issues.
18 I suppose one question that your statement raises that I need
19 to ask you, Mr. Carter, is why haven't you been to all those
20 places that aren't in Saudi Arabia?
21         MR. CARTER:  Well, your Honor, I think we're getting
22 off of the scope of the issue here.  Let me say this, among
23 other things, for example:  In connection with the pre-1996
24 discovery dispute, one of the arguments that was raised was
25 that they couldn't respond because it would be unduly

```
84BVTERC1                       Conference
```

1  today.

2  　　　　Why has this issue cropped up? Because of a
3  continuing obligation, because a pattern that we saw emerging
4  of these defendants using it.

5  　　　　Now, Mr. McMahon, again, says we've offered lots of
6  things, we've given them lots of documents. Let's go back to
7  the simple example of Mr. Jelaidan. Twenty-two documents. The
8  history of his points of attachment to organizations with known
9  associations through al Qaeda dates back twenty-some years.
10 He's been designated by the international community, his own
11 government, and we don't have anything; we don't have any of
12 his bank records. I've asked very simply for his bank records.
13 Nothing. So we have a concern that we're not getting
14 documents, and that the defendants aren't taking the discovery
15 process particularly seriously.

16 　　　　And we think that the answer to this is to put the
17 focus where it should be: On plaintiffs' discovery as to the
18 defendants, and then move on to the second phase.

19 　　　　There is no prejudice here. Mr. McMahon, the Court
20 can manage this in a way that ensures he has adequate time to
21 do his contention discovery later. We are a long way from
22 summary judgment in that necessity. And, honestly, whether
23 he's apprised of our obligation to supplement discovery
24 responses is relatively irrelevant since we're cognizant of our
25 duties under the rules. So that's why this is ripe; that's why

```
84BVTERC1                    Conference
```

1    it's percolated up.

2             THE COURT: There's also the issue, which I said to my
3    law clerk yesterday that one of the problems of the case is I
4    feel like occasionally I parachute in and have to get the lay
5    of the land again. One of the issues I assume the two
6    committees are discussing are the fact that certain defendants
7    still have jurisdictional motions pending, other folks are up
8    in the Second Circuit. Mr. McMahon, evidently, on behalf of
9    his clients, is engaged in, to some extent, substantive
10   discovery; and that there are disputes about what extent.

11            But presumably when you get to the deposition stage
12   he's not going to want his clients to be deposed by you and
13   then potentially be disposed by Mr. Maloney; there's got to be
14   some coordinated way. I recognize we may be a long way off
15   from that stage, but I assume the committees are at least
16   discussing -- maybe I shouldn't assume, but...

17            MR. CARTER: The differing procedural status of the
18   case as to varying defendants is a problem.

19            THE COURT: Well, then, how you get to some sort of
20   end point collectively.

21            MR. CARTER: Exactly right.

22            THE COURT: Or decide that that's not feasible and
23   come up with plan B.

24            MR. CARTER: And to be honest, we're trying to do it.
25   And the discovery request we sent to these defendants were