UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (GBD)(SN)<br>ECF Case |

*This document relates to*:

> *Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, Civil Action No. 1:16-cv-07853 (S.D.N.Y.);
> *Aguilar et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:16-cv-09663 (S.D.N.Y.);
> *Addesso et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:16-cv-09937 (S.D.N.Y.);
> *Aiken et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:17-cv-00450 (S.D.N.Y.);
> *Hodges et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:17-cv-00117 (S.D.N.Y.);
> *The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, Civil Action No. 1:17-cv-02651 (S.D.N.Y.);
> *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action No. 17-cv-03908 (S.D.N.Y.);
> *Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action No. 17-cv-03887 (S.D.N.Y.);
> *Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-06123 (S.D.N.Y.);
> *Fraser, et al. v. Al Qaeda Islamic Army, et al.*, Civil Action 17-cv-07317 (S.D.N.Y.);
> *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-07914 (S.D.N.Y.); and
> *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-08617 (S.D.N.Y.).

**REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Dated: January 11, 2018
      Washington, D.C.

Mitchell R. Berger (MB-4112)
Alan T. Dickey (admitted *pro hac vice*)
Alexandra E. Chopin (AC-2008)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................iii

I. JASTA COULD NOT CHANGE THE CONSTITUTIONAL DUE PROCESS FRAMEWORK UNDER WHICH NCB WAS DISMISSED FOR LACK OF PERSONAL JURISDICTION ..................................................................................................5

II. *WALDMAN* REQUIRES NCB'S DISMISSAL ON THE SAME GROUNDS AS PREVIOUSLY HELD BY THIS COURT AND THE SECOND CIRCUIT ........................7

III. THE ALLEGATIONS AS TO NCB ARE THE SAME AS THOSE THIS COURT AND THE SECOND CIRCUIT PREVIOUSLY CONSIDERED AND REJECTED AS INSUFFICIENT TO SUPPORT PERSONAL JURISDICTION OVER NCB ..................................................................................................................................9

IV. PLAINTIFFS ARE NOT ENTITLED TO MORE JURISDICTIONAL DISCOVERY ................................................................................................................... 11

V. *STARE DECISIS* PRECLUDES PERSONAL JURISDICTION OVER NCB ................. 12

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**:

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015) ................................................................................... 3

*Am. Surgical Assistants, Inc. v. United Healthcare of Tex., Inc.*,
   2010 U.S. Dist. LEXIS 30878 (S.D.N.Y. Mar. 30, 2010) .................................................... 6

*California v. FERC*,
   495 U.S. 490 (1990) ........................................................................................................... 12

*Cooper v. Aaron*,
   358 U.S. 1 (1958) ................................................................................................................. 5

*Crowell v. Benson*,
   285 U.S. 22 (1932) ............................................................................................................... 5

*FTC v. Compagnie de Saint-Gobain-Point-A-Mousson*,
   636 F.2d 1300 (D.C. Cir. 1980) ........................................................................................... 5

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ............................................................................................................. 5

*Green v. Humana at Home, Inc.*,
   2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017) ............................................... 12

*Hau Yin To v. HSBC Holdings, PLC*,
   2017 U.S. App. LEXIS 21988 (2d Cir. Nov. 3, 2017) ......................................................... 3

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................................................. 6

*Independence Inst. v. Buescher*,
   718 F. Supp. 2d 1257 (D. Col. 2010) ................................................................................... 6

*James B. Beam Distilling Co. v. Georgia*,
   501 U.S. 529 (1991) ..................................................................................................... 12, 13

*Latta v. Otter*,
   2014 U.S. App. LEXIS 19620 (9th Cir. Sept. 8, 2014) .................................................... 5, 6

*Lelchook v. Islamic Republic of Iran*,
   224 F. Supp. 3d 108 (D. Mass. 2016) .................................................................................. 6

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ........................................................................................1

*O'Neill v. Asat Trust Reg.*,
   714 F.3d 659 (2d Cir. 2013) ................................................................................*passim*

*Preston v. Berryhill*,
   254 F. Supp. 3d 379 (N.D.N.Y. 2017) ........................................................................13

*Quill Corp. v. North Dakota*,
   504 U.S. 298 (1992) ......................................................................................................5

*Republic of Argentina v. Weltover*,
   504 U.S. 607 (1992) ...................................................................................................6, 7

*Sable Communications of Cal., Inc. v. F.C.C.*,
   492 U.S. 115 (1989) ......................................................................................................5

*Shi Liang Lin v. U.S. DOJ*,
   494 F.3d 296 (2d Cir. 2007) ........................................................................................13

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
   2017 U.S. Dist. LEXIS 156425 (S.D.N.Y. Sept. 25, 2017) .................................. 11, 12

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010) ("*Terrorist Attacks IV*") ............................ 4, 7, 11

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ...............................................................................................2, 9

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016) ................................................................................*passim*

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ..................................................................................................5

**STATUTES:**

Justice Against Sponsors of Terrorism Act,
   130 Stat. 852 (2016) ("JASTA") ............................................................................*passim*

## REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs concede the central premise of NCB's motion to dismiss—that their core allegations against NCB are the <u>same ones</u> on which this Court previously dismissed NCB for lack of personal jurisdiction, the Second Circuit affirmed, and the Supreme Court denied review.[1]  Plaintiffs nonetheless seek to <u>evade that same outcome</u> here with four absurd and easily refuted propositions:

1. That JASTA, a statute,[2] altered the Constitutional due process framework under which the Second Circuit in *O'Neill*[3] upheld this Court's dismissal of NCB for lack of personal jurisdiction.

2. That the Second Circuit's *Waldman*[4] decision undermined *O'Neill*.

3. That the addition of (mischaracterized) testimony by Zacarias Moussaoui changed the nature of the jurisdictionally-deficient claims against NCB made by the first-round 9/11 plaintiffs.

4. That the years of jurisdictional discovery taken with respect to look-alike claims by the similarly-situated first-round 9/11 plaintiffs is irrelevant here.

Plaintiffs' four pillars crumble quickly and completely:

1. "[F]ederal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed by the due process clause of the Constitution." *Waldman v. PLO*, 835 F.3d 317, 344 (2d Cir. 2016). Courts uniformly turn aside plaintiffs' assertions that "applying due-process protections to limit personal jurisdiction in Antiterrorism Act cases would thwart Congress's intent to provide redress in U.S. courts for terrorism abroad." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017). "Congress cannot wish away a constitutional provision." *Id.* Whether through the ATA itself, or through JASTA's amendments to the ATA, Congress cannot direct this Court to find jurisdiction

---

[1] Consolidated Mem. of Law in Opp. to the Mots. to Dismiss of Defendants Al Rajhi Bank ("ARB"), Saudi Binladin Group ("SBG"), and The National Commercial Bank ("NCB") (Dec. 5, 2017) (MDL Dkt. #3835) ("Opp.") at 27; *see* NCB's Memorandum of Law in Support of its Motion to Dismiss (MDL Dkt. #3692) ( "MTD Memo") at 11-28.

[2] Justice Against Sponsors of Terrorism Act, 130 Stat. 852 (2016) ("JASTA").

[3] *O'Neill v. Asat Trust Reg.*, 714 F.3d 659 (2d Cir. 2013).

[4] *Waldman v. PLO*, 835 F.3d 317, 344 (2d Cir. 2016).

1

over NCB (or any other defendant) when—as this Court and the Second Circuit previously held on a look-alike record—the Constitution forbids it.

2.  *Waldman* expressly ratified both the due-process standards of *O'Neill* and its case-specific dismissal "for lack of personal jurisdiction claims against charities, financial institutions, and other individuals who are alleged to have provided support to Osama Bin Laden and al Qaeda." *Waldman*, 835 F.3d at 329 (citing *O'Neill*, 714 F.3d at 681-82). NCB, of course, was one of those financial institutions dismissed in *O'Neill* for lack of personal jurisdiction. *Waldman* further made clear that the road to personal jurisdiction (when assessing the same "expressly aimed" specific jurisdiction theory that Plaintiffs advance here) has only narrowed since *O'Neill* due to the Supreme Court's *Walden* decision. *Id.* That is because *Walden* emphasized that "'the defendant's suit-related conduct must create a substantial connection with the forum State,'" and "'[t]he relationship between the defendant and the forum must arise out of contacts that the defendant himself creates with the forum.'" *Id.* at 355 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis added; internal quotations omitted). Both in this round of lawsuits and in the earlier one, the plaintiffs have alleged only two types of acts by NCB: (i) financial services to NCB customers outside the United States, who in turn allegedly supported al Qaeda; and (ii) donations or other support to charities outside the United States that NCB supposedly knew were conduits to al Qaeda. *See* MTD Memo at 12-21. As this Court and the Second Circuit in *O'Neill* held, neither of those two types of alleged acts by NCB forges the requisite substantial connection between NCB and the forum. Still further, alleged acts by third parties like Yassin Kadi, cannot support jurisdiction over NCB—as this Court and the Second Circuit previously held—because those acts are not connections that NCB itself "create[d] with the forum." In short, because *Waldman* shrank the parameters of the *O'Neill* specific-jurisdiction framework under which NCB was dismissed, any alleged conduct by NCB that did not support personal jurisdiction under *O'Neill a fortiori* cannot support personal jurisdiction after *Waldman*.

2

3.     Plaintiffs concede away any meaningful basis for opposing a *stare decisis*-mandated dismissal of NCB when they acknowledge that "[t]he allegations in the FAC relative to NCB admittedly share more similarities with prior claims than do Plaintiffs' claims against ARB and SBG." Opp. at 27.  Plaintiffs are too modest.  The "similar[]" allegations of these second-round lawsuits against NCB are verbatim or substantively identical to those in the first-round lawsuits, as confirmed by the detailed chart (Exhibit 1) supporting NCB's motion to dismiss, save for one throwaway addition: the deposition testimony of Zacarias Moussaoui.  However, the Moussaoui testimony is so uninformative as to NCB that Plaintiffs chose to mischaracterize it as "confirm[ing]" the "use of NCB by wealthy Saudi businessmen to transfer large sums of money to al Qaeda." *Lloyd's* First Amended Complaint, 1:16-cv-07853 (S.D.N.Y.) at Dkt. #56 ("1AC") at ¶ 202.  To the contrary, Moussaoui stated only that some company, "[t]he name of which I don't recall," had an account at NCB and sent money "from Jeddah to Karachi" that Moussaoui's cohort used to "buy material." MDL Dkt. #2927-5, at pp. 27-28.  First, in making jurisdictional determinations, the Court cannot be bound by Plaintiffs' imaginative characterization of Moussaoui's testimony when it is completely contradicted by the testimony it references.[5]  Regardless, even as mischaracterized, the Moussaoui testimony adds nothing to the jurisdictionally-barren set of allegations as to NCB in the first-round 9/11 cases; it posits nothing more than the failed jurisdictional theory that NCB provided overseas financial services to customers who aided al Qaeda.

4.     Additional jurisdictional discovery as to NCB is inappropriate because Plaintiffs have failed to make out a *prima facie* case of personal jurisdiction over NCB.[6]  No guesswork is required to

---

[5] *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) ("Although the Court generally accepts plaintiffs' allegations as true, the Court need not accept as true an allegation that is contradicted by documents on which the complaint relies." (quotation omitted)).

[6] *See Hau Yin To v. HSBC Holdings, PLC*, 2017 U.S. App. LEXIS 21988, at *4 (2d Cir. Nov. 3, 2017) ("[B]ecause plaintiffs did not make a prima facie case for personal jurisdiction …, the District Court acted well within its discretion in declining to permit jurisdictional discovery.").

3

conclude that Plaintiffs have not made out a *prima facie* case of personal jurisdiction as to NCB. After several years of jurisdictional discovery to explore substantively identical allegations against NCB in the first-round 9/11 cases, this Court (as affirmed by the Second Circuit) held that "plaintiffs have not even made an arguable showing of jurisdiction [over NCB] or identified a genuine issue of jurisdictional fact, so as to warrant the granting of additional jurisdictional discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 488 (S.D.N.Y. 2010) ("*Terrorist Attacks IV*"). Nothing has changed since that time to alter that determination. Plaintiffs' suggestion that they need a deposition of Yassin Kadi to hunt their way into a jurisdictional theory as to NCB (Opp. at 33) is unavailing because: (i) both this Court and the Second Circuit previously considered identical allegations as to Kadi's ostensible relationship with NCB when they rejected jurisdiction over NCB; and (ii) since that time, *Waldman* reemphasized that jurisdiction must rest on a defendant's own actions, not on those of third-parties like Kadi. *See supra* at 2.

Plaintiffs' recycled claims present nothing that materially alters the factual allegations that this Court and the Second Circuit previously rejected as a basis for jurisdiction over NCB. *See* NCB's Exh. 1 (MDL Dkt. #3692-1). Further, Congress could not, through JASTA or otherwise, change the Constitutional due process framework for jurisdiction over NCB. Only courts can interpret due process requirements, and the Second Circuit made clear in *Waldman* that any gateway to specific jurisdiction has only narrowed since *O'Neill*. As a result, and precisely as the Judicial Panel on Multidistrict Litigation anticipated in transferring the *Lloyd's* case here over Plaintiffs' objections, this Court can make short work of Plaintiffs' recycled claims and, honoring the doctrine of *stare decisis*, NCB can be dismissed from these look-alike lawsuits, this time forever.

4

**I.    JASTA COULD NOT CHANGE THE CONSTITUTIONAL DUE PROCESS FRAMEWORK UNDER WHICH NCB WAS DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

Through legislation like JASTA, Congress cannot alter due process limits on personal jurisdiction (*see* Opp. at 4) because Congress "does not … have the power to authorize violations of the Due Process Clause." *Quill Corp. v. North Dakota*, 504 U.S. 298, 305 (1992) (emphasis added). Plaintiffs concede that JASTA must be interpreted and applied "'consistent with the Constitution of the United States.'" Opp. at 4 (quoting JASTA); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) ("There are limitations, of course, on the … powers authorized by congressional enactments, even with respect to matters of national security"); *FTC v. Compagnie de Saint-Gobain-Point-A-Mousson*, 636 F.2d 1300, 1318-19 (D.C. Cir. 1980) (distinguishing between the "congressional implementation of a constitutional grant of subject matter jurisdiction" and "limits of personal jurisdiction," which are "circumscribed by the Due Process Clause of the Constitution.").

JASTA's legislative objectives and related legislative "findings" cannot supplant this Court's role as sole arbiter of Constitutional due process. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (a "permanent and indispensable feature of our constitutional system" is that "the federal judiciary is supreme in the exposition of the law of the Constitution."). The Supreme Court further has emphasized that courts cannot "place dispositive weight on Congress' findings" on any constitutional issue because courts have "an independent constitutional duty to review factual findings where constitutional rights are at stake." *Gonzales v. Carhart*, 550 U.S. 124, 165-66 (2007) ("Uncritical deference to Congress' factual findings … is inappropriate.") (citing *Crowell v. Benson*, 285 U.S. 22, 60 (1932)).[7]

---

[7] *See also Sable Communications of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 129 (1989) ("To the extent that the federal parties suggest that we should defer to Congress' conclusion about an issue of constitutional law, our answer is that while we do not ignore it, it is our task in the end to decide whether Congress has violated the Constitution."); *Latta v. Otter*, 2014 U.S. App. LEXIS 19620, at *31-*32 (9th Cir. Sept. 8, 2014) ("Unsupported legislative conclusions as to whether particular policies will have societal effects of the sort at issue in this case—determinations which often, as here, implicate

5

Consistent with that precedent, legislative findings like those in JASTA cannot be taken as findings of <u>adjudicative facts</u>, and thus cannot compel any outcome in a lawsuit, let alone an outcome that fails to enforce the Constitutional limits of personal jurisdiction. *See Republic of Argentina v. Weltover*, 504 U.S. 607, 617-619 (1992) (distinguishing between "jurisdiction to legislate" subject matter jurisdiction, over which Congress has authority, and "jurisdiction to adjudicate" (*i.e.*, personal jurisdiction), which courts alone determine pursuant to due process principles).[8] Implementing that principle, another court, in adopting the *Waldman* jurisdictional due process framework, held that JASTA did "not change the constitutional analysis" governing personal jurisdiction in an ATA case, and further, that JASTA's "findings" are "non-binding" because they are in the nature of a statutory preamble. *Lelchook v. Islamic Republic of Iran*, 224 F. Supp. 3d 108, 113 & n.1 (D. Mass. 2016) (citing JASTA, §2(a)(6)). Unsurprisingly, moreover, JASTA's findings do not mention NCB. Accordingly, JASTA's findings are irrelevant to the adjudication of any issue concerning NCB, and cannot change the constitutional limits on personal jurisdiction that mandate NCB's dismissal.

Nothing in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-36 (2010) (cited Opp. at 6) undermines these conclusions. There, the Supreme Court considered only whether Congress had constitutional authority to enact the "material support" provision of the ATA. *Id.* at 10, 14. *Holder* addressed Congressional <u>jurisdiction to legislate</u> (as that term was used in *Weltover*) a ban on "material support"—not personal jurisdiction, or <u>jurisdiction to adjudicate</u> a "material support" claim against a specific defendant under case-specific circumstances. As the Court in *Weltover* explained, <u>jurisdiction

---

constitutional rights—have not been afforded deference by the Court.").

[8] *See also Am. Surgical Assistants, Inc. v. United Healthcare of Tex., Inc.,* 2010 U.S. Dist. LEXIS 30878, at *18 (S.D.N.Y. Mar. 30, 2010) ("[Plaintiff] does not establish that the findings in the Senate Report cannot reasonably be questioned ... The Court does not believe it appropriate to take notice of the contents of a report that pass on the very questions at play in this litigation."); *Independence Inst. v. Buescher*, 718 F. Supp. 2d 1257, 1276 (D. Col. 2010) (finding that legislative findings made "an intuitive leap from the fact" that a payment method existed to find "that the payment method caused" an alleged injury despite "no evidence of such a causal connection. In the absence of such a connection, the Court is not required to pay deference to the legislative findings.").

to adjudicate (personal jurisdiction) is a Constitutional question that only courts can resolve. *See supra* at 6.

This Court and the Second Circuit previously determined that, as a matter of Constitutional due process, there is no jurisdiction to adjudicate ATA claims against NCB based on the same set of allegations that Plaintiffs recycle in these cases. *See Terrorist Attacks IV*, 718 F. Supp. 2d at 480 ("[t]he due process rights of a foreign defendant protects him from being subject to the jurisdiction of the American courts based solely on allegations that he provided material support to al Qaeda through either contributions to Muslim charities or provision of financial services to entities with al Qaeda ties" (emphasis added)).[9] Nothing in JASTA could or did change the due process-based dismissal of NCB for lack of personal jurisdiction.

## II.   *WALDMAN* REQUIRES NCB'S DISMISSAL ON THE SAME GROUNDS AS PREVIOUSLY HELD BY THIS COURT AND THE SECOND CIRCUIT.

*Waldman* compels adherence to *O'Neill*, which affirmed this Court's dismissal of NCB from the first-round 9/11 cases against NCB for lack of personal jurisdiction. Plaintiffs' contrary argument about *Waldman* (Opp. at 27) does not withstand even the slightest scrutiny. The Second Circuit in *Waldman* expressly ratified the *O'Neill* due process principles and simply applied them to a different set of facts. *See Waldman v. PLO*, 835 F.3d 317, 329-43 (2d Cir. 2016). For example, in *Waldman* the Second Circuit reaffirmed the due process principles previously applied in *O'Neill* to dismiss NCB for lack of personal jurisdiction by:

(i)   citing with approval the affirmance by *O'Neill* of the dismissal "for lack of personal jurisdiction claims against charities, financial institutions, and other individuals who are alleged to have

---

[9] Both this Court and the Second Circuit focused on the nature of the first-round plaintiffs' factual allegations, rather than on the legal label applied to their claims, in finding that personal jurisdiction could not be exercised over NCB.  *Terrorist Attacks IV*, 718 F. Supp. 2d at 476-78, 487-88; *O'Neill*, 714 F.3d at 669-70, 675-77 (dismissing, and affirming dismissal of, eleven federal and common law causes of action against NCB). Thus, it is irrelevant that Plaintiffs here have applied new legal labels to the same factual allegations. Both now and previously, the underlying factual allegations do not provide a constitutionally sufficient basis for personal jurisdiction over NCB.

7

provided support to Osama Bin Laden and al Qaeda" (*id*. at 329);

(ii) relying on the application in *O'Neill* of "Fourteenth Amendment due process cases to terrorism claims brought pursuant to the ATA in federal court" (*id*. at 330);

(iii) holding that, in *O'Neill*, "this Court first clarified that specific personal jurisdiction properly exists where the defendant took intentional, and allegedly tortious, actions … <u>expressly aimed at the forum</u>" (*id*. at 339 (emphasis added; quotations omitted));

(iv) holding that, "[i]n *O'Neill*, this Court emphasized that the mere 'fact that harm in the forum is foreseeable' was 'insufficient for the purpose of establishing specific personal jurisdiction over a defendant'" (*id*. at 339);

(v) holding that *O'Neill* "affirms … that [the] due process analysis—considerations of minimum contacts and reasonableness—applies even when federal service-of-process statutes are satisfied" (*id*. at 343);

(vi) emphasizing that due process requires that "the defendant's suit-related conduct must create a <u>substantial connection</u> with the forum State," and "[t]he relationship between the defendant and the forum must arise out of contacts that the defendant himself creates with the forum" (*id*. at 335 (emphasis added; quotations omitted));

(vii) holding that specific jurisdiction in ATA cases cannot be based on "activities that are not proscribed by the ATA and [that] are not connected to the wrongs for which the plaintiffs … seek redress" (*id*. at 342); and

(viii) emphasizing that "federal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed by the due process clause of the Constitution." *Id*. at 344.

All of these principles from *Waldman* reinforce the *O'Neill* ruling that personal jurisdiction cannot be exercised over NCB based on the same set of allegations that Plaintiffs here have recycled. Further, *Waldman* emphasized that the Constitutionally-authorized bases for specific jurisdiction—the

theory that Plaintiffs here pursue exclusively—have only narrowed following *O'Neill* because of the Supreme Court's decision in *Walden*. *Waldman*, 835 F.3d at 337-38 (holding that "*Walden* forecloses the plaintiffs' arguments" for specific jurisdiction over a foreign defendant whose overseas acts "were not expressly aimed at the United States" and because "the facts of *Walden* also suggest that a defendant's mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with that tort in that jurisdiction."). *Waldman* thus makes clear that, following the Supreme Court's decision in *Walden*, the test for specific jurisdiction over foreign defendants became even more exacting than it was when the *O'Neill* court affirmed NCB's dismissal for lack of personal jurisdiction. *See* MTD Memo at 3, 9-10.[10]

### III. THE ALLEGATIONS AS TO NCB ARE THE SAME AS THOSE THIS COURT AND THE SECOND CIRCUIT PREVIOUSLY CONSIDERED AND REJECTED AS INSUFFICIENT TO SUPPORT PERSONAL JURISDICTION OVER NCB.

Plaintiffs make no effort to grapple with NCB's detailed side-by-side chart (MDL Dkt. #3692-1) demonstrating that Plaintiffs' allegations against NCB are identical to the allegations that the earlier 9/11 plaintiffs made against NCB, which this Court and the Second Circuit found insufficient to support personal jurisdiction over NCB. *See also* MTD Memo at 11-28. In conceding that their "allegations … relative to NCB admittedly share more similarities with prior claims than do Plaintiffs' claims" against other defendants (Opp. at 27), Plaintiffs point only to one new allegation, supposedly

---

[10] Plaintiffs' arguments concerning the U.S. government amicus brief in *O'Neill* (Opp. at 10) are unavailing because the government's position was consistent with, and opposed further review of, the decision in *O'Neill*. *Compare O'Neill*, 714 F.3d at 665 (affirming NCB's dismissal "because plaintiffs have failed to plead facts sufficient to show that [NCB] expressly aimed [its] allegedly tortious conduct at the United States") *with* amicus brief, Dkt. #3836-1, at 19 n.7, 20 ("The Court recently confirmed in *Walden* that 'when intentional torts are involved,' *Calder* requires not only that the defendant committed a tort, but that the defendant 'expressly aimed' his conduct at the forum. … [Plaintiffs] must allege facts supporting the conclusion that, despite the intervening actors and actions, [defendants] acted with the requisite knowledge that their contributions would result in an injury that would be felt in the United States."). In any event, the amicus brief cannot modify or overrule the Second Circuit's holdings. In any event, the Second Circuit's decision in *Waldman* is the authoritative interpretation of *O'Neill* and, as shown, *Waldman* expressly ratifies every aspect of *O'Neill* that compelled NCB's dismissal.

9

based on deposition testimony of Zacarias Moussaoui (Opp. at 28 (citing 1AC ¶ 202)). The ostensible Moussaoui testimony does not change the jurisdictional equation that previously compelled NCB's dismissal.

NCB demonstrated in its opening papers that the *Lloyd's* 1AC mischaracterizes Moussaoui's testimony. *See* MTD Memo at 14-15. Because they have no effective response, Plaintiffs try again to reimagine Moussaoui's testimony as showing "financial transactions benefiting al Qaeda and involving NCB." Opp. at 28. That opaque phrase cannot enhance Moussaoui's actual testimony, which was simply that some company, "[t]he name I don't recall," had an account at NCB and sent money "from Jeddah to Karachi" that Moussaoui's compatriots used to "buy material." MDL Dkt. # 2927-5, at pp. 27-28.[11]

The plain meaning of Moussaoui's testimony as to NCB, even if credited fully, is that some NCB customer transferred money from its own account to the account of some person or entity in Pakistan that was used in some unknown fashion to "buy material that we send to … Quetta and Kandahar" in Pakistan and Afghanistan. *Id.* This testimony has nothing whatsoever to do with the 9/11 attacks. Even under the most generous interpretation, moreover, this testimony simply echoes past allegations that NCB provided financial services to customers outside the United States that allegedly were conduits to al Qaeda outside the United States. *See* MTD Memo at 12-18. This Court and the Second Circuit already have held that such financial-services allegations cannot support

---

[11] The text of Moussaoui's testimony discussing NCB is as follows:

    Q  (By Mr. Carter) Do you recall any of the transfers that you worked on involving National Commercial Bank?
    A  Definitely I recall very -- from -- from Jeddah to Karachi opening amount, line of credit, send money, and never send good, okay, then after we receive the money it will buy material that we send to -- to -- to Quetta and to Kandahar.
    Q  And do you recall whose account at National Commercial Bank was used to make those transfers?
    A  The name I don't recall. I don't recall, you know. It was a different name, a different company, I don't recall the name.

MDL Dkt. # 2927-5, at pp. 27-28.

personal jurisdiction over NCB. *Id.*; *O'Neill*, 714 F.3d at 676 (holding that it is "not enough for personal jurisdiction purposes" to allege that "NCB ... knowingly maintained bank accounts … for purported front charities that aided al Qaeda.").[12]

### IV.   PLAINTIFFS ARE NOT ENTITLED TO MORE JURISDICTIONAL DISCOVERY.

Following years of "limited" jurisdictional discovery as to NCB in the first round of 9/11 cases, the Court concluded that additional discovery "would not be of any evidentiary value in establishing specific jurisdiction over NCB because the underlying legal theory, upon which the plaintiffs seek to premise jurisdiction, is untenable." *Terrorist Attacks IV*, 718 F. Supp. 2d at 487; *see also* MTD Memo at 32-34. Nothing has changed since then. The material allegations as to NCB remain the same in these second-round cases, and the law on personal jurisdiction has only narrowed in NCB's favor since the dismissal of NCB that was affirmed in *O'Neill*. Just like their first-round MDL 1570 predecessors, Plaintiffs here have not made out a *prima facie* case of jurisdiction over NCB, and thus are not entitled to additional jurisdictional discovery from NCB beyond the discovery that was taken in those first-round cases. *Id.* at 488 (holding that "plaintiffs have not even made an arguable showing of jurisdiction [over NCB] or identified a genuine issue of jurisdictional fact, so as to warrant the granting of additional jurisdictional discovery."); *see also Sonterra Capital Master Fund Ltd. v. Credit*

---

[12] Plaintiffs likewise mischaracterize their own Complaint and misstate prior holdings in asserting that they newly allege that charity-customers "made their extremist character well known to NCB." Opp. at 30-31 (citing 1AC ¶ 124). First, the cited paragraph of the 1AC says no such thing. Rather, it makes only generic allegations about unnamed "Saudi-based so-called charities" and does not mention NCB at all. Further, Plaintiffs' imaginative spin on that allegation is in any event no different than the jurisdictionally-deficient allegations by the first-round 9/11 plaintiffs that NCB "knowingly" aided al Qaeda through charity fronts. *See, e.g., Fed. Ins.* First Amended Complaint, MDL Dkt. #111 (Mar. 10, 2004), ¶ 293 (dismissed complaint alleging in conclusory fashion that NCB "<u>has long known</u> that the accounts it maintains for many ostensible charities were being used to solicit and transfer funds to terrorist organizations" (emphasis added)); *see also Terrorist Attacks IV*, 718 F. Supp. 2d at 464, 476-78, 487-88 ("Plaintiffs contend that, <u>because it was publicly known</u> since at least the mid-1990's that Osama bin Laden and al Qaeda had targeted the United States (including more specifically the World Trade Center) and its citizens, those who directly or indirectly provided material support to them, during that period of time, <u>plainly knew they were assisting</u> al Qaeda with its terrorist agenda," and dismissing the same claims against NCB (emphasis added)); *O'Neill*, 714 F.3d at 666, 669-70, 675-77 (quoting the same language of this Court and affirming NCB's dismissal).

*Suisse Grp. AG*, 2017 U.S. Dist. LEXIS 156425, at *172 (S.D.N.Y. Sept. 25, 2017) ("[D]istrict courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction.").

Plaintiffs cannot evade this clear outcome by proposing to take a deposition of Yassin Kadi, a separately-represented defendant who, Plaintiffs say, "features prominently in the claims against NCB." Opp. at 33 (footnote omitted). As NCB demonstrated in the Chart accompanying its motion to dismiss, Plaintiffs' allegations concerning Kadi's ostensible connections with NCB are no different today than the allegations on that same subject made by the first-round 9/11 plaintiffs. *See* MDL Dkt. #3692-1 at 9-21 (comparing the materially-identical current and past plaintiffs' allegations concerning Kadi). This Court and the Second Circuit fully considered those allegations in denying additional jurisdictional discovery as to NCB and dismissing NCB for lack of jurisdiction. *O'Neill*, 714 F.3d at 669-671, 675-76; *see also* MTD Memo at 24-26. With the benefit of the extensive discovery record developed in the first-round cases against NCB, and armed with its own prior rulings as affirmed by the Second Circuit, this Court should enforce the doctrine of *stare decisis* and dismiss NCB without additional jurisdictional discovery.

**V.     *STARE DECISIS* PRECLUDES PERSONAL JURISDICTION OVER NCB.**

Because the 1AC's allegations against NCB all are substantively identical to those made in the first round of lawsuits that were dismissed as against NCB for lack of personal jurisdiction (*see supra* at 9-11), and because there has been no intervening change in Constitutional law (*see supra* at 5-9), *stare decisis* compels dismissal of these copycat claims against NCB. *See California v. FERC*, 495 U.S. 490, 499 (1990) ("There has been no sufficient intervening change in the law … that warrants our departure from established precedent."); *Green v. Humana at Home, Inc.*, 2017 U.S. Dist. LEXIS 162961, at *13 (S.D.N.Y. Sept. 29, 2017) (noting that the Supreme Court warned against rulings that "'breach[] the principle that litigants in similar situations should be treated the same, a fundamental component of

12

*stare decisis* and the rule of law generally'" (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537 (1991)); *see also* MTD Memo at 29-31. Indeed, understanding that the *Lloyd's* case simply recycled old allegations against NCB, the Judicial Panel on Multidistrict Litigation transferred that case to this Court precisely so that it could apply its earlier rulings to look-alike claims. MDL No. 1570 (J.P.M.L. Oct. 3, 2016), Dkt. #77 at 1, 2 (finding that transfer to this Court will "promote the just and efficient conduct of the litigation" because "highly similar claims against [NCB] previously have been adjudicated during the course of the MDL proceedings, and [its] rulings dismissing [NCB] were affirmed on appeal"). All of the other Plaintiffs' Complaints in this new round of lawsuits against NCB expressly adopt the *Lloyd's* 1AC, and thus must fall along with it based on the prior rulings of this Court and the Second Circuit.

Plaintiffs' effort to evade *stare decisis* is not advanced by *Shi Liang Lin v. U.S. DOJ*, 494 F.3d 296, 310 (2d Cir. 2007). *See* Opp. at 31. There, the Second Circuit did not license a departure from the rule of *stare decisis* when, as here, a later case presents the same issue that a court decided in an earlier case. Rather, the Second Circuit there simply declined itself to follow a decision by another tribunal (the Board of Immigration Appeals) that misapplied plain statutory language. *Shi Liang Lin*, 494 F.3d at 310. The *stare decisis* rule in this Circuit remains clear: the same issue presented in a later case in the same court should lead to the same result. *See* MTD Memo at 28-31 (citing cases); *see also Preston v. Berryhill*, 254 F. Supp. 3d 379, 384-85 (N.D.N.Y. 2017) ("This Court must follow binding precedent from the Second Circuit."). *Stare decisis* thus compels the dismissal of the 1AC for lack of personal jurisdiction over NCB without the need for additional jurisdictional discovery, as the Second Circuit previously held in the first-round of 9/11 cases against NCB when confronted with the same set of alleged operative facts. *O'Neill*, 714 F.3d at 669-70, 675-77.

## **CONCLUSION**

For the foregoing reasons, and those set out in NCB's opening papers, the Court should grant NCB's Motion to Dismiss for Lack of Personal Jurisdiction and dismiss NCB from these actions with prejudice.

Dated: January 11, 2018  
Washington, D.C.

Respectfully submitted,

/s/ Mitchell R. Berger
Mitchell R. Berger (MB-4112)
Alan T. Dickey (admitted *pro hac vice*)
Alexandra E. Chopin (AC-2008)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315
*Attorneys for The National Commercial Bank*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this 11th day of January 2018, I caused a true and correct copy of the Defendant's Reply Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction to be served through the Court's CM/ECF System on the consolidated MDL docket to all counsel for the parties to the cases consolidated in this MDL, including counsel for all of the parties to the following cases in which The National Commercial Bank is named as a Defendant:

*Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, Civil Action No. 1:16-cv-07853 (S.D.N.Y.);
*Aguilar et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:16-cv-09663 (S.D.N.Y.);
*Addesso et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:16-cv-09937 (S.D.N.Y.);
*Aiken et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:17-cv-00450 (S.D.N.Y.);
*Hodges et al. v. Kingdom of Saudi Arabia et al.*, Civil Action No. 1:17-cv-00117 (S.D.N.Y.);
*The Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, Civil Action No. 1:17-cv-02651 (S.D.N.Y.);
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action No. 17-cv-03908 (S.D.N.Y.);
*Abarca, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action No. 17-cv-03887 (S.D.N.Y.);
*Abedhajajreh, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-06123 (S.D.N.Y.);
*Fraser, et al. v. Al Qaeda Islamic Army, et al.*, Civil Action 17-cv-07317 (S.D.N.Y.);
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-07914 (S.D.N.Y.); and
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, Civil Action 17-cv-08617 (S.D.N.Y.).

      /s/ Mitchell R. Berger
      Mitchell R. Berger