# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- )
IN RE: TERRORIST ATTACKS ON          )    Civil Action No. 03 MDL 1570 (GBD) (SN)
SEPTEMBER 11, 2011                  )
                                            )
-------------------------------------------------------- )

This document relates to:

*Underwriting Members of Lloyd's Syndicates 2 v. Al Rajhi Bank*, No. 16-cv-07853 (GBD)
*Abarca v. Kingdom of Saudi Arabia*, No. 17-cv-03887 (GBD)
*Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123 (GBD)
*Addesso v. Kingdom of Saudi Arabia*, No. 16-cv-09937 (GBD)
*Aguilar v. Kingdom of Saudi Arabia*, No. 16-cv-09663 (GBD)
*Aiken v. Kingdom of Saudi Arabia*, No. 17-cv-00450 (GBD)
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia*, No. 17-cv-03908 (GBD)
*Charter Oak Fire Ins. Co. v. Al Rajhi Bank*, No. 17-cv-02651 (GBD)
*Hodges v. Kingdom of Saudi Arabia*, No. 17-cv-00117 (GBD)
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617 (GBD)
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914 (GBD)

# REPLY BRIEF IN SUPPORT OF DEFENDANT SAUDI BINLADIN GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

I.     THERE IS NO BASIS TO FIND PERSONAL JURISDICTION WHERE THIS
COURT AND THE SECOND CIRCUIT HAVE FOUND IT ABSENT ........................ 2

     A.     Plaintiffs Ignore the Fact that this Court and the Second Circuit Have
Previously Rejected the Same Arguments on the Same Allegations .................... 2

     B.     Neither JASTA Nor *Waldman* Alters the Constitutional Standard for
Personal Jurisdiction Recognized by This Court and the Second Circuit ............. 5

     C.     Plaintiffs' Few "New" Allegations Neither Cure the Jurisdictional Defects
in their Pleadings Nor Justify Another Round of Jurisdictional Discovery ........... 7

II.     PLAINTIFFS' CLAIMS ALSO FAIL UNDER RULE 12(B)(6) .................................. 11

     A.     Regardless of the Theory of Liability, Plaintiffs Have Not Alleged Facts to
Support an Inference that SBG's Conduct Proximately Caused Their
Injuries ........................................................................................................... 11

     B.     Plaintiffs Also Fail to Allege Facts That Show SBG Acted Knowingly ............. 11

     C.     The Insurance Company Plaintiffs' Claims Must Be Dismissed Because
Their Insureds Did Not Have Standing to Sue .................................................. 12

CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Arch v. American Tobacco Co.*,
    984 F. Supp. 830 (E.D. Pa. 1997) ..............................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................12

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2016)....................................................................10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................7

*Calder v. Jones*,
    465 U.S. 783 (1984)................................................................................6

*Efstathiadis v. Holder*,
    752 F.3d 591 (2d Cir. 2014)...................................................................12

*Friends of the East Hampton Airport, Inc. v. Town of East Hampton*,
    841 F.3d 133 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2295 (2017).........................14

*In re Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015)..........................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
    538 F.3d 71 (2d Cir. 2008) ("*Terrorist Attacks III*") ........................................3, 5, 7

*In re Terrorist Attacks on Sept. 11, 2001*,
    718 F. Supp. 2d 456 (S.D.N.Y. 2010) ("*Terrorist Attacks IV*") ...........................1, 3

*In re Terrorist Attacks on Sept. 11, 2001*,
    840 F. Supp. 2d 776 (S.D.N.Y. 2012) ("*Terrorist Attacks VI*"), *aff'd,* 714 F.3d
    659 (2d Cir. 2013) ("*Terrorist Attacks VIII*"), *cert. denied sub nom. O'Neill v.
    Al Rajhi Bank*, 134 S. Ct. 2870 (2014) ........................................... passim

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-cv-1570, 2008 WL 8183819 (S.D.N.Y. May 21, 2008) ..............................10

*Lelchook v. Islamic Republic of Iran*,
    224 F. Supp. 3d 108 (D. Mass. 2016) ...................................................................6

*Marquez-Almanzar v. INS*,
    418 F.3d 210 (2d Cir. 2005) ...............................................................................13

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ................................................................................5

*Rothe Dev., Inc. v. United States Dep't of Def.*,
    836 F.3d 57 (D.C. Cir. 2016), *cert. denied*, 138 S. Ct. 354 (2017) ..............6, 15

*Rothstein v. UBS AG*,
    647 F. Supp. 2d 292 (S.D.N.Y. 2009)...............................................................9, 12

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex
    Centrala Navala*,
    989 F.2d 572 (2d Cir. 1993)................................................................................5, 6

*Smith v. Pennsylvania R. Co.*,
    239 F. 103 (2d Cir. 1917) ....................................................................................12

*Stutts v. De Dietrich Grp.*,
    465 F. Supp. 2d 156 (E.D.N.Y. 2006) .................................................................10

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001).................................................................................................14

*Waldman v. Palestinian Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016), *petition for cert. docketed, Sokolow v. Palestine
    Liberation Org.*, No. 16-1071 (U.S. Mar. 7, 2017)........................................5, 6, 7

*Webster v. Fall*,
    266 U.S. 507 (1925)...............................................................................................14

**STATUTES**

8 U.S.C. § 1101(a)(22)........................................................................................12, 13

8 U.S.C. §§ 1401-08 ................................................................................................13

18 U.S.C. § 2332i(b)(3), (b)(2)(A) ...........................................................................13

18 U.S.C. § 2333 ................................................................................................11, 13

28 U.S.C. § 1332(c) ...............................................................................................................14

## INTRODUCTION

It was six years ago today that this Court, after nearly four years of jurisdictional discovery, granted Saudi Binladin Group's ("SBG") motion to dismiss all of the claims against it in the September 11 litigation.  Plaintiffs do not dispute that the overwhelming bulk of their allegations against SBG are substantively identical to those this Court rejected that day and the Second Circuit considered and rejected on appeal.  Plaintiffs' arguments, no matter how they are dressed up, are also essentially the same.  Those plaintiffs argued then, as these do now, that "SBG provided significant support to Bin Laden before he was removed as a shareholder in 1993 with knowledge that he was targeting the United States."  *In re Terrorist Attacks on Sept. 11, 2001*, 840 F. Supp. 2d 776, 782 (S.D.N.Y. 2012) ("*Terrorist Attacks VI*"), *aff'd,* 714 F.3d 659 (2d Cir. 2013) ("*Terrorist Attacks VIII*"), *cert. denied sub nom. O'Neill v. Al Rajhi Bank*, 134 S. Ct. 2870 (2014); *compare* Opp. Br. 20-22.  Those also argued then, as these do now, that "given 'the strong direct familial ties between SBG's principals and their half-brother Osama [Bin Laden ("OBL")], they were put on notice as early as 1988 and absolutely no later than 1990 that any funds going to Osama were supporting a growing anti-American terrorist organization."  *Terrorist Attacks VI*, 840 F. Supp. 2d at 782 (quoting plaintiffs' brief); *compare* Opp. Br. 21.  That, Plaintiffs argue, is all they need to show to establish personal jurisdiction.

This Court, however, previously explained that, in the terrorism context, specific jurisdiction requires conduct "intended to directly aid in the commission of a terrorist act, with knowledge that the brunt of the injuries will be felt in the United States."  *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 480 (S.D.N.Y. 2010) ("*Terrorist Attacks IV*").  And it concluded, with respect to SBG, that the conduct alleged was too remote to establish specific jurisdiction.  *Terrorist Attacks VI*, 840 F. Supp. 2d at 782.  The Second Circuit, over the plaintiffs' arguments to the contrary, affirmed:  "[W]e agree with the District Court that nothing

in the record supports the notion that these actions were 'expressly aimed' at the United States or are connected in any meaningful way, for the purpose of establishing personal jurisdiction, to the September 11, 2001 attacks." *Terrorist Attacks VIII*, 714 F.3d at 676.  In asking this Court to ignore those holdings, Plaintiffs inexplicably offer up the brief of the Solicitor General as Exhibit 1, even though he too agreed.  Specifically citing the allegations against SBG but echoing this Court's expression of the legal standard, the Solicitor General concluded that "[t]he court of appeals reasonably found that alleged conduct too remote from al Qaeda's targeting of the United States to give rise to an inference that respondents knew that the brunt of any injury from their conduct would be felt in the United States, or that they otherwise directed their conduct at the United States."  Opp. Br. Ex. 1, at 21.

That is the crux of the matter.  Plaintiffs' case against SBG is not about newly discovered evidence that supplies the missing conduct directed at the United States – there is none – but rather reflects their continuing attempts to create a new, more permissive standard of personal jurisdiction.  The applicable standards are clear, however, from the opinions of this Court, Judge Casey and the Second Circuit, and neither the Justice Against Sponsors of Terrorism Act ("JASTA") nor unrelated Second Circuit caselaw has changed the applicable constitutional standards.  Those standards, applied again to these allegations, require that SBG be again dismissed for lack of personal jurisdiction.

## I.    THERE IS NO BASIS TO FIND PERSONAL JURISDICTION WHERE THIS COURT AND THE SECOND CIRCUIT HAVE FOUND IT ABSENT.

### A.    Plaintiffs Ignore the Fact that this Court and the Second Circuit Have Previously Rejected the Same Arguments on the Same Allegations.

Plaintiffs do not contest that nearly all of Plaintiffs' allegations are either conclusory or repeat, often verbatim, the same substantive allegations that were considered and rejected in the dismissed case, as the chart attached to SBG's memorandum illustrated.  *See* Opening Br. Ex. A.

The other allegations regarding al Qaeda's anti-U.S. aims, knowledge of which Plaintiffs' brief also attributes to SBG, have also mostly been before this Court before.  *Compare, e.g.*, First Am. Compl. ¶¶ 105-07, 140-41, 144-51 *with* Pls.' Summary of Allegations ¶¶ 11, 21-22, 31, 46-47 (MDL Dkt. No. 2386-1), *Ashton* Sixth Am. Compl. ¶¶ 113-14, 119, 122, 125-26, 138, 225-26, 371 (MDL Dkt. No. 1463), *Burnett* Third Am. Compl. ¶¶ 257-59, 575, *Fed. Ins.* First Am. Comp. ¶¶ 135-36, 398-99 (MDL Dkt. No. 1380).  Plaintiffs also, as noted *supra* 1-2, make the same arguments from those facts.  In relying on SBG's supposed pre-1993 support of OBL, Plaintiffs' counsel continue to argue, as they did previously to this Court and the Second Circuit, that any support to OBL, regardless of its purpose, anywhere in the world and anywhere in time, is necessarily a tortious act directed at the United States.[1]  But no court has accepted that view.

For specific jurisdiction in this context, due process requires (1) that the defendant must "expressly aim" intentional tortious acts at the forum state, and (2) that plaintiff's injuries must arise out of those activities.  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93, 95 (2d Cir. 2008) ("*Terrorist Attacks III*").  As this Court put it, "in the context of a terrorism-related litigation, a defendant's alleged intentional tortious conduct aimed at the United States is *conduct that is intended to directly aid in the commission of a terrorist act*, with knowledge that the brunt of the injuries will be felt in the United States." *Terrorist Attacks IV*, 718 F. Supp. 2d at 480 (emphasis added).  This Court and the Second Circuit have both already applied that standard to these allegations.  *See id.*; *Terrorist Attacks VIII*, 714 F.3d at 674-77; *Terrorist Attacks VI*, 840 F. Supp. 2d at 780.  Plaintiffs' discussion of the "Standards Governing the Personal Jurisdiction Analysis" (Opp. Br. 8-13) makes only passing reference to that standard.  Indeed, they all but

---

[1] The alleged payment to OBL of lawful shareholder distributions and his inheritance from his father in the 1980's and early 1990's, and the alleged construction of roads or an airport in the Sudan in the early 1990's, are not, under any standard, tortious acts expressly directed at the United States, much less acts that relate to the 9/11 attacks.

ignore this Court's prior rulings over the past seven years, as well as two Second Circuit decisions addressing exactly that issue, in one case with respect to SBG itself. The only substantive mention they make of the prior decision rejecting jurisdiction over SBG is when citing the Solicitor General for the proposition that it should be read "narrowly" not to require specific intent – something no one except Plaintiffs' counsel ever thought the Second Circuit required. *See* Br. in Opp. by Personal Jurisdiction Defendants at 13, *O'Neill v. Al Rajhi Bank*, No. 13-318 (S. Ct. Nov. 12, 2013), *available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2013/11/13-318-BIO.pdf. Tellingly, Plaintiffs omit that the Solicitor General expressed the legal standard in virtually the same terms this Court did, as quoted above, *supra* 2, and embraced the Second Circuit's conclusion that this Court lacked jurisdiction over SBG.

Therefore, while Plaintiffs point to numerous allegations they claim establish that SBG supported OBL and knew of his aims well before the rest of the world (allegations that they incorrectly claim SBG "admits"),[2] this Court has examined those claims and weighed and rejected those arguments before. As this Court acknowledged at the time, prior plaintiffs (through the same counsel) argued that SBG was "put on notice as early as 1988 and absolutely no later than 1990 that any funds going to Osama were supporting a growing anti-American terrorist organization." *Terrorist Attacks VI*, 840 F. Supp. 2d at 782 (quoting plaintiffs' brief in opposition to SBG's motion to dismiss). Plaintiffs' assertion now that those allegations "draw a clear connection between SBG's material support of al Qaeda during this period and the September 11th attacks," Opp. Br. 19-20, does not make it so. Both this Court and the Second Circuit determined – "reasonably" so, in the Solicitor General's words – that such conduct, even

---

[2] Plaintiffs absurdly contend that SBG has "conceded" or "admitted" certain allegations in its motion to dismiss. On a motion to dismiss, however, SBG has no opportunity to contest the veracity of factual allegations Plaintiffs make. The history of the prior case against SBG demonstrates, however, the lack of evidentiary support for the allegations against it.

if the allegations are taken to be true, is "too temporally remote to establish specific jurisdiction," *Terrorist Attacks VI*, 840 F. Supp. 2d at 782, and is not "'expressly aimed' at the United States or . . . connected in any meaningful way, for the purpose of establishing personal jurisdiction, to the September 11, 2001 attacks." *Terrorist Attacks VIII*, 714 F.3d at 676.  That remains true today.

### B.   Neither JASTA Nor *Waldman* Alters the Constitutional Standard for Personal Jurisdiction Recognized by This Court and the Second Circuit.

Instead of applying these established principles to the facts alleged for the second time here, Plaintiffs urge that a "straightforward application of the standards set forth in [*Waldman*], as informed by JASTA," would produce the opposite result.  Opp. Br. 3-4.  That is wrong.

First, JASTA's congressional findings do nothing to change the due process analysis. Under the Anti-Terrorism Act ("ATA"), personal jurisdiction reaches to the full extent of the Due Process Clause.  *See Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016), *petition for cert. docketed, Sokolow v. Palestine Liberation Org.*, No. 16-1071 (U.S. Mar. 7, 2017).[3]  The previous determination that this Court did not have personal jurisdiction over SBG therefore rested on constitutional principles, rather than a statute.  And "it is well-settled that 'a statute cannot grant personal jurisdiction where the Constitution forbids it.'"  *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (quoting *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C. Cir. 1982)); *accord Terrorist Attacks III*, 538 F.3d at 80 ("Of course, the Act cannot create personal jurisdiction where the Constitution forbids it.") (quotation marks omitted); *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.*

---

[3] Although Plaintiffs suggest that Fourteenth Amendment due process standards "do not apply with equal force" to the analysis of due process under the Fifth Amendment for claims arising under the ATA, the Second Circuit, as they admit (Opp. Br. 12 n.4), has held that they do.  *See Waldman*, 835 F.3d at 330 ("our precedents settle the issue," citing cases including *Terrorist Attacks VIII*, 714 F.3d at 673-74, and *Terrorist Attacks III*, 538 F.3d at 93).  That Plaintiffs, while relying on *Waldman*, nevertheless argue that it too was "wrongly decided," Opp. Br. 12 n.4, illustrates how far their theories stray from established circuit law.

*v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).  Therefore, Congress cannot by fiat declare what contacts are sufficient to pass muster under the Due Process Clause, nor what type of conduct is "expressly aimed" at the United States under *Calder v. Jones* and its progeny. That is exclusively the courts' role.  JASTA's findings are also irrelevant to the personal jurisdiction inquiry for a second reason:  Congress's factual findings "are not an operative part of the statute."  *Rothe Dev., Inc. v. United States Dep't of Def.*, 836 F.3d 57, 66 (D.C. Cir. 2016) (quotation marks omitted), *cert. denied*, 138 S. Ct. 354 (2017).  Indeed, another district court rejected a plaintiff's argument, citing the same congressional finding Plaintiffs do, that "JASTA . . . broadened the reach of a federal court's exercise of personal jurisdiction" because JASTA's findings are "non-binding" and so "do not change the constitutional analysis in this case." *Lelchook v. Islamic Republic of Iran*, 224 F. Supp. 3d 108, 113 n.1 (D. Mass. 2016) (citing JASTA, Pub. L. No. 114-22, § 2(a)(6)).

Second, nothing in the Second Circuit's finding of no personal jurisdiction in *Waldman* suggests that it disagreed with its earlier decision finding no such jurisdiction over SBG in *Terrorist Attacks VIII*.  Indeed, the *Waldman* court <u>followed</u> *Terrorist Attacks VIII* (a.k.a. *O'Neill*) and criticized the *Waldman* plaintiffs for misreading it.  The plaintiffs had argued for jurisdiction "because the defendants' 'direct, knowing provision of material support to designated [foreign terrorist organizations]'" meant "they knowingly aimed their conduct at U.S. interests." 835 F.3d at 339 (quoting plaintiffs' brief).  But "[t]hat argument," the *Waldman* court held, "misreads *O'Neill*.  In *O'Neill,* this Court emphasized that the mere 'fact that harm in the forum is foreseeable' was 'insufficient for the purpose of establishing specific personal jurisdiction over a defendant.'"  *Id.* (quoting *Terrorist Attacks VIII*, 714 F.3d at 674).  To suggest

- 6 -

that *Waldman* thus overturned or limited *Terrorist Attacks VIII* and established a more permissive standard for personal jurisdiction defies imagination.

Similarly unavailing are Plaintiffs' attempts to use negative implications from the Second Circuit's analysis of much different facts in *Waldman* to suggest a different result here and in *Terrorist Attacks VIII*.  For example, the fact that the terrorist attacks in that case occurred in Israel rather than the United States was important to the court's analysis of whether the defendants there had directed their conduct at the United States, but that does not mean that personal jurisdiction exists for allegedly aiding any attack in the United States itself.  The Second Circuit has twice examined that exact scenario, in *Terrorist Attacks III* and in *Terrorist Attacks VIII*, and both times it found no personal jurisdiction over numerous defendants, even those alleged to have knowingly supported al Qaeda, if not accompanied by specific alleged facts to show "'intentional, and allegedly tortious, actions . . . expressly aimed' at residents of the United States."  *Terrorist Attacks III*, 538 F.3d at 95 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *accord Terrorist Attacks VIII*, 714 F.3d at 674, 676-77; *see also Terrorist Attacks VI*, 840 F. Supp. 2d at 782.  Nothing in the *Waldman* court's decision rejecting jurisdiction there casts doubt on that.  Moreover, it is "essential" that it be the defendant "himself" whose conduct is directed at the United States, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 475 (1985), a point *Waldman* did not question but instead reiterated*.  See Waldman*, 835 F.3d at 335.

C.     **Plaintiffs' Few "New" Allegations Neither Cure the Jurisdictional Defects in their Pleadings Nor Justify Another Round of Jurisdictional Discovery.**

Plaintiffs offer two documents as "new" evidence to embellish their previously rejected jurisdictional allegations.[4]  Neither document supports the missing inference that SBG expressly

---

[4] In a footnote, Plaintiffs also refer to the "28 Pages" document as providing "circumstantial support for the specific factual allegations that SBG continued to deliver support to [OBL] throughout the 1990s."  Opp. Br. 24 n.9.  Yet Plaintiffs still have not identified the family members who purportedly remained in contact with OBL nor

aimed tortious conduct at the United States nor makes a prima facie showing sufficient to justify
another round of jurisdictional discovery.

First, Plaintiffs assert that a document retrieved during the raid of OBL's compound in
Pakistan, described by some as OBL's will, supposedly "indicate[s] that SBG established a
continuing funding mechanism for al Qaeda." Opp. Br. 23. The document itself, however, says
no such thing, *see* Opening Br. 18-19, and Plaintiffs' mischaracterization of it is not a well-pled
fact entitled to any deference. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F.
Supp. 3d 219, 231 (S.D.N.Y. 2015) ("Although the Court generally accepts plaintiffs' allegations
as true, the Court need not accept as true an allegation that is contradicted by documents on
which the complaint relies.") (quotation marks omitted). The document makes no reference to
continued funding but instead speaks of money that OBL left behind when he left the Sudan in
1996. Even construing that allegation most favorably to Plaintiffs, this Court has already held
that financial support allegedly provided to al Qaeda in Sudan that enabled it to expand its base
of operations is "too remote to the terrorist attacks of September 11, 2001, to confer specific
jurisdiction." *Terrorist Attacks VI*, 840 F. Supp. 2d at 782 (quoting *Terrorist Attacks IV*, 718 F.
Supp. 2d at 486). Moreover, the document's statement that the funds were provided "for . . .
investment in Sudan" undermines any inference that they were provided to support attacks on the
United States. Moreover, OBL's expressed "hope" that his relatives would "obey [his] will" and
spend that money on "jihad" certainly does not suggest they were supportive in the first place.
Plaintiffs' argument that this analysis improperly goes to the "ultimate merits of the underlying

---

connected any of them to SBG or its management. Nor have Plaintiffs shown a connection between those contacts
and any terrorist attacks. These speculative allegations, even if true, thus fall short of supporting an inference that
SBG directed tortious conduct at the United States. Likewise, Plaintiffs argue their allegations "demonstrat[e] that
al Qaeda was applying resources provided by SBG . . . during that time period to evaluate vulnerabilities in the civil
aviation system." Opp. Br. 20. Their complaint, however, offers only a few general allegations about that, none of
which specify SBG in any way. *See* First Am. Compl. ¶¶ 104, 108, 111-12.

evidence" (Opp. Br. 22) misunderstands the Court's role.  Requiring that inferences be based in well-pled fact rather than improperly on an "extended chain of inferences" is a key part of the pleading standard for personal jurisdiction.  *Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 294 (S.D.N.Y. 2009).

Second, Plaintiffs' reliance on Zacarias Moussaoui's *ex parte* statements fails for similar reasons.  Tellingly, Plaintiffs essentially acknowledge that Moussaoui's actual statement provides no support for the complaint's allegation that SBG helped al Qaeda build the camps where the 9/11 hijackers received training because they offer no response to SBG's detailed comparison of their allegation to Moussaoui's testimony.  *Compare* First Am. Compl. ¶ 306 *with* Moussaoui Stmt. 21:4-12 (MDL Dkt. No. 2927-5).  Plaintiffs do not dispute, but merely seek to excuse, Moussaoui's rambling and undifferentiated references to OBL's immediate family (who were not connected to SBG in any way), other family members, and "the bin Laden group," which Plaintiffs assume is a reference to SBG and not to the various family he otherwise discussed.  *See* Opening Br. 19-23.  Plaintiffs fault SBG for supposedly ignoring the "broader context" of Moussaoui's testimony, Opp. Br. 25, yet it is they who rely on snippets of testimony – such as reference to "a financial document of money of – of account of the bin Laden group with[in] Saudi Arabia" – without any context from which the Court could draw a reasonable inference from it.  Opp. Br. 26 (quoting Moussaoui Stmt. 21:4-12).  Plaintiffs' counsel had the opportunity to clarify Moussaoui's *ex parte* statement when they took it but chose not to do so, and now they instead ask this Court to fill in the gaps with imagination rather than inference.

Given the near identity of Plaintiffs' allegations and the vagueness of the few new allegations they present, there is no reason for this Court to require another round of jurisdictional discovery.  This Court acts well within its discretion in denying jurisdictional

discovery where a plaintiff has failed to establish a *prima facie* case for jurisdiction.  *See, e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2016).  Indeed, "[d]istrict courts in this [C]ircuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction."  *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (collecting cases).

Plaintiffs attempt to minimize their lack of a *prima facie* case by asserting that jurisdictional discovery is appropriate where the information establishing jurisdiction is uniquely within the knowledge and control of defendants.  Opp. Br. 32.  Yet Plaintiffs' counsel had *four years* of jurisdictional discovery into facts within SBG's knowledge and control, including on topics related to Sudan and the process by which SBG removed OBL as a shareholder, before Judge Maas cut off discovery that was "continuing to go over old ground."  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-cv-1570, 2008 WL 8183819, at *1, 3 (S.D.N.Y. May 21, 2008); *see also Arch v. American Tobacco Co.*, 984 F. Supp. 830, 841 (E.D. Pa. 1997).  And documents relating to OBL's activities are most certainly not within SBG's control; Plaintiffs have already had the same access as anyone else to the nearly 470,000 additional files recovered from the raid on the Abbottabad compound.  *See* Opp. Br. 23 n.7.  When Plaintiffs' counsel took Moussaoui's *ex parte* statement, on the other hand, they made a conscious decision not to explore the incomprehensibly vague statements which they now claim related to SBG.  Plaintiffs should not now benefit from their manipulation of that record.  In any event, lacking any specificity as to who, what, when or how, SBG is and will be in no position to shed any light on his statements.  Because Plaintiffs have identified no disputes of material jurisdictional fact and in light of the substantial discovery that has already occurred regarding these allegations, this Court should deny a further fishing expedition.

## II.     PLAINTIFFS' CLAIMS ALSO FAIL UNDER RULE 12(B)(6).

### A.     Regardless of the Theory of Liability, Plaintiffs Have Not Alleged Facts to Support an Inference that SBG's Conduct Proximately Caused Their Injuries.

Further seeking to rewrite circuit law, Plaintiffs contend that *Rothstein*'s proximate cause requirement has been replaced by a "flexible" causation standard because "*Rothstein*'s analysis of causation was predicated on the Second Circuit's determination that aiding and abetting liability did not exist under the ATA." Opp. Br. 49-50.  Once again, however, one need look no further than the Solicitor General's brief upon which they rely to see why this is wrong.  As he explained, a "nexus requirement would have applied had the Second Circuit permitted [plaintiffs] to proceed with their aiding-and-abetting theory," and that would have required plaintiffs to "allege that their injuries were proximately caused by [defendants'] provision of material support." Opp. Br. Ex. 1, at 15 & n.6.  That settled requirement is grounded in "traditional tort-law aiding-and-abetting principles," which "require that the primary tortfeasor's injurious acts be the foreseeable consequence of the secondary defendant's provision of assistance."  *Id.* (citing *Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983)). Consequently, Plaintiffs must allege facts showing that the September 11 attacks were a reasonably foreseeable consequence of SBG's conduct, regardless of the theory of liability.  As shown above, they have not done so.

### B.     Plaintiffs Also Fail to Allege Facts That Show SBG Acted Knowingly.

Plaintiffs further accuse SBG of imposing a "heightened scienter requirement" and contend that they merely need to plausibly allege that "SBG provided material support to al Qaeda recklessly." Opp. Br. 50.  New § 2333(d), however, plainly states that an aiding and abetting claim requires a defendant to act "knowingly." 18 U.S.C. § 2333(d)(2).  The Second Circuit has noted that "knowledge" and "recklessness" are distinct mental states for analyzing

- 11 -

culpability.  *See Efstathiadis v. Holder*, 752 F.3d 591, 596 (2d Cir. 2014).  Plaintiffs' assertions

regarding SBG's mental state rest on the same allegations addressed in Section I.A. above, and

fail for the same reason.  The assertions about SBG's supposed "continuing relationship" with

OBL and its asserted "unique position to know" his intentions have been heard and rejected

before.  Moreover, Plaintiffs' creative embellishment of Moussaoui's actual testimony – that

"SBG knowingly provided a system through which al Qaeda obtained construction parts that

were used in training camps" – twists Moussaoui's statement beyond recognition and improperly

piles one unsupported inference on top of another.  Plaintiffs do not dispute, and indeed do not

even respond to, the argument that their allegations fail to establish a plausible – as opposed to a

merely possible – inference of knowledge, as required by *Iqbal.  See* Opening Br. 29-30 (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009)).  Even on a motion to dismiss, the court should

not indulge an "extended chain of inferences" that amounts to speculation.  *Rothstein*, 647 F.

Supp. 2d at 294; *see also Smith v. Pennsylvania R. Co.*, 239 F. 103, 104-05 (2d Cir. 1917)

(citation omitted) ("[O]ne presumption cannot be built on another.").

### C.   The Insurance Company Plaintiffs' Claims Must Be Dismissed Because Their Insureds Did Not Have Standing to Sue.

In disputing that the ATA permits claims only by natural persons, the insurance company

Plaintiffs concede that they are pursuing subrogation claims relating to losses sustained by "U.S.

corporate citizens and business interests," not by natural persons.  Opp. Br. 56 n.21.  Because

such entities are not "nationals of the United States" and could not bring claims in their own

names, however, the insurance company Plaintiffs' § 2333 claims must be dismissed regardless

whether or not subrogation is available.

As shown in the Opening Brief (30-33), § 2333 restricts causes of action to "any national

of the United States" as that term is defined in § 101(a)(22) of the Immigration & Naturalization

Act ("INA").  Section 101(a)(22) in turn defines the term to mean "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States," 8 U.S.C. § 1101(a)(22), and the INA further details the persons who fall into those categories, all of whom are individuals.  *See* 8 U.S.C. §§ 1401-08; *see also Marquez-Almanzar v. INS*, 418 F.3d 210, 218 (2d Cir. 2005).  The implication that a national of the United States under § 2333 must be a natural person is inescapable.  Plaintiffs' arguments to the contrary cannot withstand scrutiny.[5]

First, Plaintiffs acknowledge the incorporated INA definition, but then oddly attempt to reinterpret that definition in light of the ATA's definition of "person" to include entities.  But § 2333 does not allow all injured "persons" to sue, but only "national[s] of the United States" (as that term is defined in the INA).  Had Congress intended to give corporate entities standing to pursue § 2333 claims, surely it would not have chosen to define eligible plaintiffs by reference to an immigration statute that, by its very nature, applies only to natural persons.[6]

Second, the ATA's other uses of the term "national of the United States" reinforce this construction.  For example, § 2332i(b) provides criminal penalties for conduct that occurs outside the United States in circumstances where either the perpetrator or the intended victim is "a national of the United States *or* a United States corporation or legal entity."  18 U.S.C. § 2332i(b)(3), (b)(2)(A) (emphasis added).  These provisions, enacted in 2015 (just one year before JASTA), definitively prove that Congress considers "U.S. nationals" as separate and

---

[5] It is irrelevant (and ironic for Plaintiffs to argue, given that they assert this is a new case) that SBG did not raise this defense in the prior litigation.  SBG's original motion to dismiss was filed only with respect to the *Ashton* and *Burnett* complaints, which asserted only individual claims.  After jurisdictional discovery, a consolidated renewed motion was filed which again focused on personal jurisdiction issues relevant to all plaintiffs, the vast majority of whom were individuals.

[6] It is also indicative that § 2333 refers to claims by "any national of the United States injured in *his or her* person, property or business" and "*his or her* estate, survivors or heirs" – terms that have no application to corporations and entities.  18 U.S.C. § 2333(a) (emphasis added).

distinct from "U.S. corporations and legal entities."  It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotations omitted).

Third, while Plaintiffs argue that corporations are considered nationals of the United States because they are "deemed" citizens of states for purposes of diversity jurisdiction and removal under 28 U.S.C. § 1332, that provision has no application here.  The diversity statute explicitly applies this "deemed citizenship" standard *only* "for purposes of this section and section 1441 of [the removal statute]."  *Id.* § 1332(c).  Plaintiffs cite no support for their argument that corporations are "citizens" under the INA – which would make no sense.

Plaintiffs ask the Court to ignore this plain statutory language and instead to give precedential weight to a single decision previously entered on a motion for default judgment where the standing issue was never raised.  But as should be obvious, a court decision that did not address an issue which was not presented cannot have precedential weight.  *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 153 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2295 (2017) (similar).

Plaintiffs are thus left only with policy arguments about why corporate entities should be able to pursue claims.  But those arguments are for Congress, not for a court that is presented with an unambiguous statute limiting § 2333 claims to natural persons.  The passing reference in a JASTA "finding" to the "interest in providing persons and entities injured as a result of terrorist attacks committed within the United States with full access to the court system in order to pursue

- 14 -

civil claims" cannot override clear statutory language.  *See, e.g.*, *Rothe Dev., Inc.*, 836 F.3d at 66.
JASTA made neither reference nor substantive change either to use of the term "national of the
United States" in § 2333 or to its definition.  Nor is there anything in JASTA or its legislative
history that suggests Congress intended to broaden the category of plaintiffs who have standing
to bring § 2333 claims.

Furthermore, even if the insurance company Plaintiffs' insureds were individuals with
standing to sue, the statute precludes direct claims by insurance companies and, as Plaintiffs
concede (Opp. Br. 56), it is silent on subrogation.  Silence does not help Plaintiffs here because
the statutory scheme is inconsistent with congressional intent to permit insurance companies
– alone among corporate entities – to collect windfall treble damages after paying only "single"
damages to the injured persons whom the statute is designed to protect.  Accordingly, the
insurance company Plaintiffs have no right to subrogation under § 2333.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against SBG should be dismissed with
prejudice.

Dated: January 11, 2018

Fahad A. Habib
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  415-626-3939
Facsimile:  415-875-5700
Email:  fahabib@jonesday.com

Respectfully submitted,

 S/ James E. Gauch
Mary Ellen Powers
James E. Gauch
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Telephone:  202-879-3939
Facsimile:  202-626-1700
Email: jegauch@jonesday.com
Email:  mepowers@jonesday.com

*Attorneys for Defendant Saudi Binladin
Group*

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a copy of the foregoing upon all counsel of record via ECF

on January 11, 2018, including counsel for all of the parties to the following cases:

*Underwriting Members of Lloyd's Syndicates 2 v. Al Rajhi Bank*, No. 16-cv-07853 (GBD)
*Abarca v. Kingdom of Saudi Arabia*, No. 17-cv-03887 (GBD)
*Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123 (GBD)
*Addesso v. Kingdom of Saudi Arabia*, No. 16-cv-09937 (GBD)
*Aguilar v. Kingdom of Saudi Arabia*, No. 16-cv-09663 (GBD)
*Aiken v. Kingdom of Saudi Arabia*, No. 17-cv-00450 (GBD)
*Arrowood Indemnity Co. v. Kingdom of Saudi Arabia*, No. 17-cv-03908 (GBD)
*Charter Oak Fire Ins. Co. v. Al Rajhi Bank*, No. 17-cv-02651 (GBD)
*Hodges v. Kingdom of Saudi Arabia*, No. 17-cv-00117 (GBD)
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617 (GBD)
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914 (GBD)

Dated: January 11, 2018

Respectfully submitted,

 S/ James E. Gauch
James E. Gauch
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Telephone:  202-879-3939
Facsimile:  202-626-1700
Email:  jegauch@jonesday.com

- 16 -