IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 1:03-md-01570-GBD-SN |

*This document relates to:*

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853; *Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663; *Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937; *Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117; *Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450; *Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651; *Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887; *Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908; *Abedhajajreh v. Kingdom of Saudi Arabia*, No. 17-cv-06123; *Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and *Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF AL RAJHI BANK'S MOTION TO DISMISS**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC  20005

January 11, 2018

*Counsel for Al Rajhi Bank*

## TABLE OF CONTENTS

I.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK ......................1

    A.      Prior Decisions Compel Dismissal Of Plaintiffs' Claims Against The Bank..........1

    B.      Plaintiffs Fail To Allege Facts Showing The Bank Had Knowledge Or
        Intent ...................................................................................................................3

    C.      Plaintiffs Fail To Allege Facts Showing The Bank Proximately Caused
        Plaintiffs' Injuries ...............................................................................................7

    D.      Plaintiffs Fail To Plead Primary Liability Against The Bank.................................9

    E.      Plaintiffs Fail To Plead Secondary Liability Against The Bank...........................10

II.     THIS COURT LACKS PERSONAL JURISDICTION OVER AL RAJHI BANK .........12

## TABLE OF AUTHORITIES

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)..................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7, 12

*Boim v. Holy Land Found. for Relief & Dev. ("Boim III")*,
  549 F.3d 685 (7th Cir. 2008) ...............................................................................9, 10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................................................13, 14

*Calder v. Jones*,
  465 U.S. 783 (1984)...........................................................................................13, 14

*Degulis v. LXR Biotechnology*,
  928 F. Supp. 1301 (S.D.N.Y. 1996).......................................................................4

*Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*,
  602 F.2d 478 (2d Cir. 1979)................................................................................ 2, 10-11

*Frontpoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
  2017 U.S. Dist. LEXIS 132759 (S.D.N.Y. Aug. 18, 2017)....................................13

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) .................................................................. 10, 11-12

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983)...........................................................................3, 10, 11, 12

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010)..............................................................................................3

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)...........................................................................................8

*Hussein v. Dahabshiil Transfer Servs.*,
  230 F. Supp. 3d 167 (S.D.N.Y. 2017)...................................................................6

*Jazini v. Nissan Motor Co., Ltd.*,
  184 F.3d 181 (2d Cir. 1998)................................................................................15

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)..................................................................................12

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
  2017 U.S. Dist. LEXIS 38271 (S.D.N.Y. Mar. 10, 2017) ......................................15

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)..........................................................................10

*Linde v. Arab Bank, PLC*,
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) ...............................................................9, 10

*Mastafa v. Australian Wheat Bd. Ltd.*,
  2008 U.S. Dist. LEXIS 73305 (S.D.N.Y. Sep. 25, 2008)..........................................10

*O'Neill v. Al Rajhi Bank ("Terrorist Attacks VII")*,
  714 F.3d 118 (2d Cir. 2013).....................................................................2, 7, 8, 10

*O'Neill v. Asat Trust Reg. ("Terrorist Attacks VIII")*,
  714 F.3d 659 (2d Cir. 2013)..........................................................................14

*Owens v. Republic of Sudan*,
  864 F.3d 751 (D.C. Cir. 2017)........................................................................12

*Strauss v. Credit Lyonnais, S.A.*,
  925 F. Supp. 2d 414 (E.D.N.Y. 2013) ............................................................3-4

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*,
  121 F. Supp. 3d 321 (S.D.N.Y. 2015)...............................................................2, 10

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)...........................................................................8, 9

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks I")*,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005)..........................................................2, 3, 4, 10

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks III")*,
  538 F.3d 71 (2d Cir. 2008)...........................................................................14, 15

*In re Terrorist Attacks on Sept. 11, 2001 ("Terrorist Attacks IV")*,
  718 F. Supp. 2d 456 (S.D.N.Y. 2010)...............................................................14

*Toomer v. Cellco P'ship*,
  2012 U.S. Dist. LEXIS 101265 (S.D.N.Y. July 20, 2012) ......................................12

*Treppel v. Biovail Corp.*,
  2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005).......................................12

*Walden v. Fiore*,
134 S. Ct. 1115 (2014).................................................................................................13, 14

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)...................................................................................... 1, 13-14

*Weshnak v. Bank of Am., N.A.*,
451 F. App'x 61 (2d Cir. 2012)...........................................................................................11

## STATUTES

18 U.S.C. § 2331 (2000)..................................................................................................9, 10

18 U.S.C. § 2333(a) (2000).............................................................................................8, 12

18 U.S.C. § 2333(d) (2016).................................................................................................10

18 U.S.C. § 2339A (2000).....................................................................................................9

18 U.S.C. § 2339B (2000).....................................................................................................9

Pub. L. 114-222, 130 Stat. 852 (2016) ("JASTA")....................................................2, 3, 12

Plaintiffs provide no sound basis for this Court to depart from the prior dismissals of Al Rajhi Bank by this Court and the Second Circuit:

- Plaintiffs are demonstrably incorrect in asserting that they have added material allegations of fact against the Bank;

- JASTA's creation of aiding-and-abetting and conspiracy claims does not cure Plaintiffs' failure to allege sufficient facts against the Bank; and

- *Waldman* and other recent cases only confirm that Plaintiffs have not alleged a *prima facie* case of specific personal jurisdiction against the Bank.

All told, Plaintiffs' claims against Al Rajhi Bank must be dismissed on the same grounds as those in the prior dismissals by this Court and the Second Circuit.

## I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST AL RAJHI BANK

### A.     Prior Decisions Compel Dismissal Of Plaintiffs' Claims Against The Bank

Plaintiffs' supposed "critical new evidence" and "materially different" allegations are taken primarily from a 2007 newspaper article.  Opp'n 3, 16 (citing Am. Compl. ¶¶ 155-66 (excerpting Glenn Simpson, *U.S. Tracks Saudi Bank Favored by Extremists*, Wall Street Journal, at 3 (July 27, 2007), https://www.wsj.com/articles/SB118530038250476405)).  But in 2013 counsel for Plaintiffs here, then acting for other plaintiffs, expressly informed the Second Circuit in this MDL (i.e., in *Burnett* and related cases) that the factual allegations in the article were already reflected in the pleadings against Al Rajhi Bank: "the facts reflected in the [article] were of record from the outset, as reflected in plaintiffs' pleadings as to Al Rajhi Bank."  Appellants' Br. 102 & n.114, *Terrorist Attacks VIII*, 714 F.3d 659 (2d Cir. 2013) (No. 11-3294), ECF No. 299 at 121 (quoting identical article excerpt reproduced in the Amended Complaint (¶ 156)).  Plaintiffs' counsel informed the Second Circuit that the article simply "corroborated" plaintiffs' pre-existing allegations.  *Id.*  As such, the allegations in the article are not "new" allegations that "differentiate" this case from the previously dismissed cases.  Opp'n 3; *see* Mem. 11-12 & Ex. 1.

As for the only other supposedly "new" allegation — based on the testimony of Zacarias Moussaoui (Opp'n 16) — Moussaoui merely stated in response to a question about Al Rajhi Bank: "[T]hey were like a good brother, I mean, they were -- they were one -- one of the main support with the Haramain and the High Commission, and -- and the -- the -- the -- and national commission of the financial support and moving -- moving money around."  Statement of Zacarias Moussaoui at 17:13-24, ECF No. 2927-5.  Plaintiffs' contention that Moussaoui's statement implies direct support of Al Qaeda (Opp'n 16, 38) is an implausible speculative leap. Moussaoui's barely intelligible testimony plausibly refers, at most, to charitable donations and routine banking services, at some unspecified time, for Al Haramain and SHC.  This Court and the Second Circuit already considered allegations of charitable donations and routine banking services in the prior dismissals of Al Rajhi Bank.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 831-32; *Terrorist Attacks VII*, 714 F.3d at 124-25.

Plaintiffs also maintain that the law has changed since the prior dismissals by this Court and the Second Circuit, such that after JASTA this Court need show "no deference to the prior decisions."  Opp'n 37.  But JASTA does not overturn the Second Circuit's conclusion — based on substantively identical allegations — that prior plaintiffs failed to allege facts that the Bank proximately caused their injuries.  *Terrorist Attacks VII*, 714 F.3d at 124-25; *see also* Mem. 9-11. JASTA says nothing at all about proximate causation, let alone dispenses with this longstanding element of tort law.  Nor does JASTA support Plaintiffs' assertion that proximate cause "has no bearing" (Opp'n 47 n.18) on secondary liability claims.  *See, e.g.*, *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484-85 (2d Cir. 1979) (holding proximate cause required for aiding and abetting); *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 338 (S.D.N.Y. 2015) (same).  JASTA also does not change this Court's detailed

assessment that prior plaintiffs' aiding-and-abetting and conspiracy claims against Al Rajhi Bank — based on the same conclusory and attenuated allegations advanced here — were insufficient under *Halberstam*.   *Terrorist Attacks I*, 349 F. Supp. 2d at 800-01, 831-33.   Indeed, by embracing *Halberstam* as the proper governing standard (JASTA § 2(a)(5)), JASTA effectively endorses this Court's prior analysis dismissing Al Rajhi Bank under *Halberstam*.

##### B.   Plaintiffs Fail To Allege Facts Showing The Bank Had Knowledge Or Intent

Plaintiffs cannot avoid (Opp'n 3) this Court's previous determination that allegations substantively identical to the allegations here "do not offer facts to support [plaintiffs'] conclusions that Al Rajhi Bank had to know that Defendant charities . . . were supporting terrorism." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (dismissing claims against the Bank).

Plaintiffs fail to identify a single factual allegation that the charities "made their extremist character well known."  Opp'n 30-31.  Instead, the Amended Complaint quotes a U.N. Security Council report stating that the funds that the charities allegedly provided to Al Qaeda were "merged with and *hidden* among funds used for other *legitimate* humanitarian or social programs." Am. Compl. ¶ 119 (emphases added); *see also* Mem. 14-15 (listing allegations that charities held themselves out as legitimate).  Moreover, Plaintiffs' repeated characterization of the charities as Al Qaeda "fronts" underscores that their purported support for Al Qaeda was covert.  Opp'n 47 ("'[T]errorist groups systematically conceal their activities behind charitable . . . fronts.'") (quoting *Humanitarian Law Project*, 561 U.S. at 30-31); *id.* at 16, 37-39, 44, 47 (describing charities as "fronts"); Am. Compl. ¶¶ 118, 124, 126, 139, 158, 173-74, 180 (same).

Moreover, *Strauss*, cited by Plaintiffs (Opp'n 39), does not detract from the key point that the Bank's alleged charity customers were not designated before the September 11 attacks.  As reported in the 9/11 Staff Report (incorporated into the Amended Complaint at ¶ 120), U.S. officials concluded that any potential ties between the Saudi charities and terrorists before the

September 11 attacks "did not rise to the level of being actionable against any specific charity." 9/11 Staff Report at 116-17.  In any event, the Amended Complaint fails to allege facts like those at issue in *Strauss*.  925 F. Supp. 2d at 420-24, 429-30 (stating defendant bank repeatedly raised suspicions about charity customer and continued to process charity's transactions even after its designation).  And Plaintiffs' vague assertion that the Bank learned of unspecified charities' purported support for Al Qaeda "through the media" (Opp'n 39) lacks "sufficient factual matter" to show knowledge.  *Iqbal*, 556 U.S. at 678.

Critically, Plaintiffs have not alleged facts plausibly showing that the Bank knew of the purported conduct of *foreign* affiliates of Saudi charities, let alone facts showing that such conduct can be plausibly attributed to the Saudi charities allegedly supported by the Bank.  *See, e.g.*, Am. Compl., Ex. A, ¶¶ 31-94, 131-68, 170-88 (alleging conduct by IIRO affiliates in Philippines, Pakistan, Bosnia, etc.; by Al Haramain affiliates in Kenya, Indonesia, Bangladesh, etc.; and by SHC affiliate in Bosnia); *see also id.* ¶¶ 158, 175-79, 182-83 (alleging Bank support for IIRO, Al Haramain, and SHC in Saudi Arabia).

Plaintiffs' recycled allegations, untethered in time, regarding Suleiman Al Rajhi (Opp'n 39-40; Am. Compl. ¶¶ 180-81) again fail to show the Bank's knowledge of any charity's purported support for Al Qaeda.  Plaintiffs, relying on out-dated, pre-*Twombly*/*Iqbal* authority, are incorrect that the Court cannot decide on this motion to dismiss, as it did previously, whether allegations of Suleiman Al Rajhi's purported knowledge may be imputed to the Bank.  Opp'n 40 (citing *Degulis*, 928 F. Supp. at 1312); *see Terrorist Attacks I*, 349 F. Supp. 2d at 833 (granting motion to dismiss allegations that "the knowledge of [Al Rajhi] family members," including Suleiman Al Rajhi, should be imputed to the Bank (Opp'n Ex. 5 (*Burnett* 12(e) Resp. ¶ 87)), "because there is no allegation that the family members were acting in furtherance of Al Rajhi

Bank business").  Imputing to the Bank Suleiman Al Rajhi's purported knowledge of IIRO's purported support for Al Qaeda would impermissibly pile inference upon inference: the Amended Complaint does not allege facts showing that IIRO in Saudi Arabia supported Al Qaeda *or* that Suleiman Al Rajhi learned of any such support in a Bank capacity or shared it with others at the Bank.  *See Iqbal*, 556 U.S. at 681-83 (rejecting implausible state-of-mind inferences).

Further, Plaintiffs' allegation (Opp'n 16, 38; Am. Compl. ¶ 160) that one year *after* the September 11 attacks Suleiman Al Rajhi purportedly directed the Bank's board to "explore" financial instruments not subject to Saudi government scrutiny for the Bank's "charitable contributions" is too vague and attenuated to support a plausible inference that the Bank knowingly supported Al Qaeda *before* the attacks (or ever).  In any event, neither the Amended Complaint nor the *WSJ* article alleges facts showing the Bank ever used such instruments.

Plaintiffs' characterization that the Bank provided "direct" support to Al Qaeda (Opp'n 38) is not supported by factual allegations describing direct activity at all, let alone providing a basis for a plausible inference that the Bank knowingly supported Al Qaeda.  In particular, Plaintiffs mischaracterize the Amended Complaint's allegation that an unnamed "money courier" (Am. Compl. ¶ 166) — *not* Zawahiri himself (Opp'n 38) — "traveled on a visa that Al Rajhi Bank had obtained for him" (Am. Compl. ¶ 166).  Plaintiffs also selectively omit (Opp'n 38) the purported CIA report's conclusion, as reported in the news article (Simpson at 7): "'Reporting does not indicate whether bank management was witting' of the courier's terrorist connections."  The Amended Complaint fails to allege any facts plausibly showing that the Bank knew of the unidentified traveler's purported connection to Zawahiri, who in any event was not designated until *after* the September 11 attacks (*see* U.S. Dept. of Treasury, Recent OFAC

Actions (Sept. 24, 2001), https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20010924.aspx), or whether the purported visa was obtained before the September 11 attacks. Similarly, regarding the purported "deliver[y]" by Bank "couriers" of funds to "Kompak" (Opp'n 38; Am. Compl. ¶ 165), the Amended Complaint does not allege facts plausibly showing that the Bank knew of any connection between Kompak, which has never been designated, and Al Qaeda, or even that Kompak was an "insurgent group" (Am. Compl. ¶ 165), let alone an "Al Qaeda affiliate" (Opp'n 38).

Plaintiffs' remaining allegations of purported "direct engagements in support of terrorists" (Opp'n 17) are also conclusory. Plaintiffs' allegation (based on the same *WSJ* article) that unnamed Al Rajhi family members "probably know" (presumably in 2003, the date of the purported CIA report) that terrorists "use their bank" (Opp'n 16, 38; Am. Compl. ¶ 156) makes no reference to Al Qaeda. And Plaintiffs do not allege facts showing that any Al Rajhi family member had, or shared with the Bank, any relevant knowledge about Al Qaeda before the September 11 attacks or that the Bank ever could, or did, detect when the Bank might have been "used," or misused, by any of its millions of customers — let alone Al Qaeda. *See Dahabshiil Transfer Servs.*, 230 F. Supp. 3d at 176 (holding allegation that defendant was "aware of the risk that their network could be used to transfer funds to" terrorists insufficient to allege knowledge).

Plaintiffs' similar conclusory allegation that "extremists" "ordered operatives" in various Islamic countries to "use" the Bank (Opp'n 16; Am. Compl. ¶ 162) says nothing about the Bank's knowledge, and is undermined by allegations in the Amended Complaint (¶ 156) that "Islamic extremists" used the Bank because of the Bank's "adherence to Islamic principles." Indeed, Plaintiffs' selective quotation (Opp'n 16) from the article omits this key caveat:

> U.S. law-enforcement and intelligence agencies acknowledge it is possible that extremists use [Al Rajhi Bank's] far-flung branches and money-transfer services

> *without bank officials' knowledge*.  The U.S. has *never obtained proof that the bank or its owners knowingly facilitate terrorism*, according to documents and former officials, despite what they describe as extensive circumstantial evidence that some executives are aware the bank is used by extremists.

Simpson at 3 (emphases added).  Regrettably, no financial institution can discount the possibility that its services may be misused by criminals.

Finally, the decision of U.S. authorities *not* to designate Al Rajhi Bank (Opp'n 16, 38) does not support a plausible inference that the Bank knowingly supported Al Qaeda.  The "obvious alternative explanation" (*Twombly*, 550 U.S. at 567), given the omitted caveat in the *WSJ* article, is that "the totality of the evidence collected by the United States government" (Opp'n 16) simply did not support finding that Al Rajhi Bank knowingly supported Al Qaeda.

### C.   Plaintiffs Fail To Allege Facts Showing The Bank Proximately Caused Plaintiffs' Injuries

None of Plaintiffs' arguments (Opp'n 47-49) cures the extreme attenuation between the Bank's purported conduct and the September 11 attacks.  The Second Circuit has already conclusively established in this MDL that substantively identical allegations "are insufficient for proximate causation purposes."  *Terrorist Attacks VII*, 714 F.3d at 124 (affirming dismissal of claims against Al Rajhi Bank).  Notwithstanding Plaintiffs' logical leaps to characterize certain allegations as "direct[]" support for Al Qaeda (Opp'n 38), Plaintiffs do not allege facts plausibly showing the Bank provided funds directly to Al Qaeda or connecting any purported Bank support to the September 11 attacks.  Plaintiffs cannot dispute that the Bank's only alleged charitable donations — solely to the Kingdom-sponsored charity SHC, "for Bosnia" in 1994-1996 — occurred years before Al Qaeda decided to undertake the September 11 attacks or was even designated an FTO.  Mem. 17, 21.  And, devastating to any suggestion of proximate causation, the Amended Complaint also fails to allege any facts showing that any Saudi charities purportedly supported by the Bank ever passed on such support to Al Qaeda — not a single

transfer, donation, or service — let alone for the September 11 attacks.  Plaintiffs' claims against Al Rajhi Bank here suffer from the same dispositive deficiencies as those found by the Second Circuit in *Terrorist Attacks VII*:  failure to sufficiently plead proximate causation.

In light of the proximate-cause standard articulated by the Second Circuit in *Rothstein*, 708 F.3d at 91, and followed in *Terrorist Attacks VII*, 714 F.3d at 124, Plaintiffs resort to arguing that a "'relaxed' causation standard is necessary."  Opp'n 48.  This Circuit, however, requires a showing of proximate cause "as the term is ordinarily used," based on Congress's use of traditional language that for a century has required not only "but-for" cause but proximate cause. *Rothstein*, 708 F.3d at 95 (holding "proximate cause" under § 2333(a) requires that conduct was "a substantial factor in the sequence of responsible causation" and "the alleged violation led directly" to plaintiffs' injury, which was "reasonably foreseeable or anticipated as a natural consequence") (citations omitted)) (quoting *Holmes*, 503 U.S. at 268 (stating "we can only assume [Congress] intended [the words 'by reason of'] to have the same meaning that courts had already given them" in the Sherman Act and the Clayton Act, and requiring that "defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause")).  JASTA does not amend § 2333(a)'s "by reason of" language and, contrary to Plaintiffs' suggestion (Opp'n 48), has no bearing on the application of proximate cause here.

*Rothstein* forecloses Plaintiffs' desperate assertion that the Bank's mere state of mind "creates causation."  Opp'n 49.  Plaintiffs would effectively read out of the ATA the "by reason of" language in § 2333(a) and impose liability based on knowledge alone.  *See* Opp'n 47-48, 18 (overstating views of "U.S. congressional and executive branches, as well as counter-terrorism experts" as suggesting *any* material support to Al Qaeda "constitutes a direct cause of the September 11th attacks").  But *Rothstein* held that the ATA does not "impose strict liability,"

and rejected claims predicated solely on transacting with a designated sponsor of terror while "knowing or having reasonable cause to know" of that designation. 708 F.3d at 86-87, 96.

Neither *Boim III* nor *Linde* (Opp'n 48-49) stands for liability based on knowledge without causation. *See Boim III*, 549 F.3d at 692 (requiring satisfaction of "ordinary tort requirements relating to . . . causation, and foreseeability"); *Linde*, 97 F. Supp. 3d at 328 (requiring that "defendant's acts were a substantial factor in causing plaintiffs' injuries, and [that] such injuries were a foreseeable result of those acts"). And the United States has warned that a relaxed causation requirement "could adversely affect the United States' relationships with foreign Nations." Opp'n Ex. 1 (Br. for the United States at 14-15, *O'Neill*, 134 S. Ct. 2870).

In short, Plaintiffs "do not allege that the [Bank] participated in the September 11, 2001 attacks or that [it] provided money directly to al Qaeda; nor are there factual allegations that the money allegedly donated by the [Bank] to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks." *Terrorist Attacks VII*, 714 F.3d at 124.

### D.     Plaintiffs Fail To Plead Primary Liability Against The Bank

Notwithstanding Plaintiffs' deficient allegations of knowledge and proximate causation, the Amended Complaint also fails to plead other requirements of material support under the ATA. Plaintiffs ignore (Opp'n 44-45) that §§ 2339A(a) and 2339B(a)(1) (2000) both expressly require that the covered conduct *must* occur "within the United States." Although § 2331(1)(A) defines "international terrorism" as potentially covering any crime, including those committed overseas, that "would be a criminal violation if committed within" the United States, it does not read out the independent requirements of domestic conduct in §§ 2339A(a) and 2339B(a)(1). The Bank's purported conduct, allegedly in Saudi Arabia, could not violate either provision. Further, the Bank's donations to, and routine banking services for, *undesignated* charities were not "dangerous to human life" (§ 2331(1)(A) (defining "international terrorism")) under either

*Boim III* or *Goldberg*.  Opp'n 44-45 (citing *Boim III*, 549 F.3d at 690 (analyzing support for Hamas, an FTO), and *Goldberg*, 660 F. Supp. 2d at 415-16, 433 (analyzing support for an SDGT).   And JASTA does not amend or, as Plaintiffs erroneously contend, contain a congressional "conclusion" (Opp'n 45) modifying "international terrorism" under § 2331(1)(A).

### E.      Plaintiffs Fail To Plead Secondary Liability Against The Bank

Plaintiffs incorrectly suggest (Opp'n 36-37) that JASTA compels a different result on their secondary liability claims.  As courts have recognized, "[p]rimary liability [under the ATA] in the form of material support to terrorism has the character of secondary liability." *Linde*, 97 F. Supp. 3d at 324 (quoting *Boim III*, 549 F.3d at 691-92).  Thus the prior decisions of this Court and the Second Circuit dismissing material support claims against Al Rajhi Bank apply to Plaintiffs' secondary liability claims. *Terrorist Attacks I*, 349 F. Supp. 2d at 832-33; *Terrorist Attacks VII*, 714 F.3d at 124-25.  In any event, this Court's prior application of *Halberstam* and dismissal of "concerted action" theories against the Bank, including "aiding and abetting," are dispositive here. *Terrorist Attacks I*, 349 F. Supp. 2d at 800-01, 832-33.

None of Plaintiffs' cited authorities (Opp'n 37-38) addresses JASTA's express knowledge requirement for aiding and abetting.   18 U.S.C. § 2333(d)(2) (requiring  that defendant "knowingly provid[ed] substantial assistance").  This Court requires that the aider and abettor have "'actual knowledge' that it is assisting in the tortious conduct." *Mastafa*, 2008 U.S. Dist. LEXIS 73305, at *13, 18 (applying *Halberstam*) (quoting *Lerner*, 459 F.3d at 292).  In addition, contrary to Plaintiffs' assertion (Opp'n 47 n.18), "substantial assistance" requires proximate causation. *Ritchie*, 121 F. Supp. 3d at 338 (assessing substantial assistance "by whether 'the action of the aider and abettor *proximately caused* the harm on which the primary liability is predicated.'") (citation omitted); *Edwards & Hanly*, 602 F.2d at 484-85 (holding

"substantial assistance" requires "proximate cause"). Thus, Plaintiffs' failure to plead actual knowledge and proximate causation defeats their aiding-and-abetting claims.

Moreover, the Bank *did* address *Halberstam* in its opening brief (Mem. 28-29; Opp'n 41), but any extended application of the *Halberstam* factors" is pointless here because the Amended Complaint fails to allege a single fact showing that any purported Bank support ever "assist[ed]" Al Qaeda directly or indirectly — much less "*substantially* assist[ed] *the principal violation*," i.e., the September 11 attacks. *Halberstam*, 705 F.2d at 488 (emphases added).

In any event, Plaintiffs fail to allege facts that would plausibly show "substantial assistance" under *Halberstam*: (1) the "nature of the act assisted" (not one factual allegation that the Bank assisted Al Qaeda or the September 11 attacks); (2) "the amount of assistance" (donations to one Saudi government-sponsored charity in the mid-1990s (Am. Compl. ¶ 183) but not one allegation that Bank donations were transferred to Al Qaeda or aided in the September 11 attacks); (3) the defendant's "presen[ce] at the time" of the tort (not one allegation that anyone from the Bank was present at the September 11 attacks); (4) the defendant's "relation to the tortious actor" (allegations that certain Saudi charities were among the Bank's millions of customers but not one factual allegation that the Bank was involved with "Al Qaeda itself" (Opp'n 41)); (5) the defendant's "state of mind" (not one factual allegation of Bank knowledge that any of its charitable donations or banking services were intended for, or transferred to, Al Qaeda or aided in the September 11 attacks); and (6) the "duration of the assistance" (not one allegation of Bank assistance to Al Qaeda at any relevant time).

Indeed, it is well settled that "[a] bank's provision of its usual banking services to a customer does not in and of itself rise to the level of substantial assistance." *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 62 (2d Cir. 2012) (quotation omitted); *Goldberg*, 660 F. Supp. 2d at

425 (stating "'substantial assistance' means more than just a little aid" and finding allegations that "defendant UBS transferred funds to institutions that were part of Hamas's financial infrastructure" insufficient to show alleged assistance to suicide bombers was "substantial").

Plaintiffs' conspiracy claims fail because Plaintiffs do not identify any "alleged co-conspirators" or point to any allegations or "indirect evidence" (Opp'n 42) of "specific times, facts, and circumstances" plausibly showing an agreement by the Bank to assist Al Qaeda. *Toomer v. Cellco P'ship*, No. 11-cv-7515, 2012 U.S. Dist. LEXIS 101265, at *23-24 (S.D.N.Y. July 20, 2012); *Treppel v. Biovail Corp.*, No. 03-cv-3002, 2005 U.S. Dist. LEXIS 18511, at *36 (S.D.N.Y. Aug. 30, 2005); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184, 187-89 (2d Cir. 2012) ("[A] complaint claiming conspiracy, to be plausible, must plead . . . 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement.") (quoting *Twombly*, 550 U.S. at 549, 557).  Even the hopelessly vague "good brother" allegation (Am. Compl. ¶ 167; Opp'n 43) does not refer to an agreement.  And Plaintiffs ignore that to allege "tacit aid" (Opp'n 42), the charities' support for Al Qaeda must have been well known to the Bank.  *See Halberstam*, 705 F.2d at 487.  As shown above, Plaintiffs fail to allege facts plausibly showing such knowledge.

Finally, regarding punitive damages (Opp'n 43 n.14), JASTA's retroactive effective date applies only to "the amendments made by this Act."  JASTA § 7.  JASTA does *not* amend § 2333(a)'s pre-existing treble damages provision.  Thus, JASTA contains no "express command" to retroactively apply § 2333(a)'s treble damages to secondary liability claims. *Owens*, 864 F. 3d at 814 (quoting *Landgraf*, 511 U.S. at 280).

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER AL RAJHI BANK

Disclaiming any reliance upon *general* personal jurisdiction, Plaintiffs assert only *specific* personal jurisdiction over Al Rajhi Bank.  *See* Opp'n 9.  But Plaintiffs fail to show

(Opp'n 13-18) that their Amended Complaint contains factual allegations setting forth the constitutional predicates for specific jurisdiction: (1) that *the Bank* engaged in "intentional" conduct, "calculated to cause injury" (*Calder*, 465 U.S. at 791); (2) that the Bank "expressly aimed" its conduct *at the United States* and "knew" that the "brunt of the harm" would be suffered *in the United States* (*id.* at 788-90); and (3) that the Bank's "suit-related conduct . . . create[d] a substantial connection with" the United States (*Walden*, 134 S. Ct. at 1121).

First, no factual allegations support a plausible inference that the Bank provided material support directly to Al Qaeda or that any purported Bank support for charities was passed on to Al Qaeda or aided in the September 11 attacks.  Moreover, Plaintiffs do not allege facts plausibly suggesting that the Bank acted knowingly, much less "intentional[ly]."  *Calder*, 465 U.S. at 789.

Second, Plaintiffs fail to allege facts plausibly showing that the Bank "expressly aimed" its routine banking services and charitable donations at the United States or even knew they would cause harm in the United States.  *Calder*, 465 U.S. at 789-90.  Al Qaeda's alleged "targeting" of the United States (Opp'n 17) cannot be imputed to the Bank through its charitable donations or otherwise.  *See Walden*, 134 S. Ct. at 1123 (holding due process requires a defendant's "own affiliation with the State," not the "'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State") (quoting *Burger King*, 471 U.S. at 475).  And, Plaintiffs fail to allege facts plausibly showing that the Bank, or even the charities, "singled out the United States as their target."  *Frontpoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263, 2017 U.S. Dist. LEXIS 132759, at *24 (S.D.N.Y. Aug. 18, 2017) (dismissing for lack of personal jurisdiction under effects test).

Plaintiffs' reliance on *Waldman* (Opp'n 10-12) is misplaced, because that case reiterates the Second Circuit's holding in this MDL that "providing indirect funding to an organization that

[is] openly hostile to the United States d[oes] not constitute the type of intentional conduct necessary to constitute purposeful direction of activities at the forum." 835 F.3d at 339 (citing *Terrorist Attacks III*, 538 F.3d at 95-96). For the reasons stated, the Amended Complaint fails to allege facts supporting a plausible inference of direct support for Al Qaeda at any relevant time.

Plaintiffs' other allegations of personal jurisdiction — that "ARB knew terrorists were using ARB," that "principals of ARB sought to circumvent counter-terrorism measures," and that "U.S. officials considered" designating the Bank (Opp'n 17) — say nothing about conduct of (or on behalf of) the Bank and cannot support a plausible inference that the Bank expressly aimed its own intentional, tortious acts at the United States. *Walden*, 134 S. Ct. at 1123.

Third, Plaintiffs fail to allege facts plausibly suggesting that the Bank's purported donations or routine banking services were "substantial[ly] connect[ed]" to the September 11 attacks. *Walden*, 134 S. Ct. at 1121; *Terrorist Attacks IV*, 718 F. Supp. 2d at 482 (holding "[g]eneralized allegations" of "financial or other material support to al Qaeda, without the reasonable inference of the temporal, geographical or causal connection, or proximity to the 9/11 attacks," insufficient to sustain jurisdiction over a foreign defendant).

In sum, JASTA cannot override (Opp'n 4) the constitutionally grounded, binding authority in this Circuit barring the exercise of specific personal jurisdiction over a defendant based on allegations substantively identical to Plaintiffs' allegations here. *Terrorist Attacks VIII*, 714 F.3d at 675-76 (citing, *inter alia*, *Calder*, 465 U.S. at 789, and *Burger King*, 471 U.S. at 472); *see generally* Reply Memorandum of NCB. As the U.S. government concluded (which Plaintiffs ignore (Opp'n 10)), "[t]he court of appeals reasonably found [the] alleged conduct too remote from al Qaeda's targeting of the United States . . . ." U.S. Amicus Br. 21 (Opp'n Ex. 1).

–14–

Nor are Plaintiffs entitled to jurisdictional discovery. As shown above, the allegations in the Amended Complaint are not "substantially different" (Opp'n 32) from the previously dismissed complaints and fail to plausibly support a *prima facie* case of personal jurisdiction. *Terrorist Attacks III*, 538 F.3d at 96 (quoting *Jazini v. Nissan Motor Co., Ltd.*, 184 F.3d 181, 186 (2d Cir. 1998)); *see Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12-cv-3419, 2017 U.S. Dist. LEXIS 38271, at *27 (S.D.N.Y. Mar. 10, 2017) ("District courts in this Circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction.").

*      *      *

Al Rajhi Bank hereby incorporates by reference the arguments that apply to it in the motions to dismiss and accompanying memoranda of National Commercial Bank and Saudi Binladin Group.

Dated: January 11, 2018
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Matthew S. Leddicotte (*pro hac vice*)
Reuben J. Sequeira (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
mleddicotte@whitecase.com
rsequeira@whitecase.com

*Counsel for Al Rajhi Bank*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 11, 2018, I caused an electronic copy of the foregoing Reply Memorandum Of Law In Support Of Al Rajhi Bank's Motion To Dismiss to be served electronically by the Court's Electronic Case Filing (ECF) System.  I caused the foregoing to be filed on the MDL docket and the dockets for the following consolidated cases:

*The Underwriting Members of Lloyd's Syndicate 2, et al. v. Al Rajhi Bank, et al.*, No. 16-cv-7853;
*Aguilar, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09663;
*Addesso, et al. v. Kingdom of Saudi Arabia, et al.*, No. 16-cv-09937;
*Hodges, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-0117;
*Aiken, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-00450;
*Charter Oak Fire Insurance Co., et al. v. Al Rajhi Bank, et al.*, No. 17-cv-02651;
*Abarca, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03887;
*Arrowood Indemnity Co., et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-03908;
*Abedhajajreh, et al., v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-06123
*Muenchener Rueckversicherungs-Gesellschaft Aktiengesellschaft in Muenchen, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-07914; and
*Abbate, et al. v. Kingdom of Saudi Arabia, et al.*, No. 17-cv-08617

Dated: January 11, 2018

 /s/ *Christopher M. Curran*
Christopher M. Curran