UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re* Terrorist Attacks on September 11, 2001

03 MDL 1570 (GBD) (SN)
ECF Case

*This document relates to:*

Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al., Case No. 02 Civ. 6977

*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al., No. 03 Civ. 9849*

*Federal Insurance Co., et al. v. Al Qaida, et al., No. 03 Civ. 6978*

*Continental Casualty Co., et al. v. Al Qaeda, et al., No. 04 Civ. 5970*

*Euro Brokers Inc., et al., v. Al Baraka, et al., No. 04 Civ. 7279*

*Estate of John P. O'Neill et. al., v. Al Baraka et. al., No. 04 Civ. 1923*

*World Trade Center Properties, L.L.C. et al. v. Al Baraka Investment and Development Corp., et al., No. 04 Civ. 7280[1]*

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL
AGAINST YASSIN ABDULLAH KADI**

---

[1] In their motion, Plaintiffs do not include the *World Trade Center Properties* case as one to which the motion relates. Mr. Kadi is a party to that case. Conversely, Plaintiffs identify the *Cantor Fitzgerald & Co.* case (actually titled *Cantor Fitzgerald Associates, L.P.*) as one to which the motion relates, but Mr. Kadi is not identified on this Court's docket sheet (04-cv-07065) as a defendant in that case.

## Table of Contents

Preliminary Statement   ……………………………………………………………… 1

The Facts   ………………………………………………………………………..1

    A.     The Discovery to Date   ……………………………………………………1

    B.     Mr. Kadi's Efforts at Compliance   …………………………………….. 3

    C.     Plaintiffs' Allegations of Inadequate Production   ……………………… 4

              Rowad Development & Investment   ……………………………….6

              "Laundering bin Laden's Money out of Sudan"   ……………………. 7

              KSA's Investigation of Yassin Kadi   ……………………………….8

              KA Stan and SHC to al Baraka Bank in Turkey   ………………………. 9

              Maram Travel of Turkey   ………………………………………………..9

              Plaintiffs' Claims Respecting Privilege   ……………………………….10

Argument   ………………………………………………………………………12

    Point I – Mr. Kadi's Document Production is Sufficient   ……………………..……..12

    Point II – Mr. Kadi's Invocation of Privilege is Properly Supported   …………………13

    Point III – Attorneys' Fees Should Be Awarded To Mr. Kadi Pursuant
        To Fed. R. Civ. P. 37(a)(5)   ………………………………………………18

## Table of Authorities

### Cases

*American Banana Co. v. Republic Nat's Bank of N.Y.,* No. 99 Civ. 1330,
    2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) (Schwartz, J.) ............................................. 12

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.* 208 F.R.D. 92, 104 (S.D.N.Y. 2002) ............ 14

*CSC Recovery Corp. v. Daido Steel Co.*, *Ltd*., No. 94 Civ. 9214, 1997 WL 661122 at *3
    (S.D.N.Y. Oct. 22, 1997) .......................................................................................... 16

*ECDC Environmental v. New York Marine and General Ins. Co.*, No. 96 Civ. 6033, 1998 WL 614478 at *4 (S.D.N.Y. June 4, 1998) (Pitman, J.) ............................................................ 13, 15

*F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 25-26 (1983) ........................................................ 14

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08 Civ. 1533, 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011) (Francis, J.) ........................................................ 12, 13

*Granite Partners, L.P., v. Bear, Stearns & Co. Inc.*, 184 F.R.D.49, 52 (S.D.N.Y. 1999)............ 15

*Greater New York Taxi Association v. City of New York*, No. 13 Civ. 3089, 2017 WL 4012051, at *13 (S.D.N.Y. Sept. 11, 2017) (Francis, J.) ...………………….……… 16

*Guillory v. Skelly*, No. 12 Civ. 00847, 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014)..... 20

*In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 217-18 (S.D.N.Y. 2001) .................. 16

*Kadi v. Council and Commission* [Joined cases C-584/10 P, C-593/10 P and C-595/10 P] .......... 5

*Liberty Environmental Systems, Inc. v. County of Westchester,* No. 94 Civ. 7431, 1997 WL 471053, *7-*8 (S.D.N.Y. Aug. 18, 1997) ........................................................................ 14

*TIG Ins. Co. v. Yules & Yules,* No. 99 Civ. 3378, 1999 WL 1029712, n.1 (S.D.N.Y. Nov. 12, 1999) .................................................................................................................... 14

*United States v. Adlman*, 134 F. 3d 1194, 1197 (2d Cir. 1998) .................................................. 15

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975) .............................................................. 15

*Upjohn v. United States*, 449 U.S. 383 (1981).............................................................................. 16

Rules

Fed. R. Civ. P. 11 ........................................................................................................................ 20

Fed. R. Civ. P. 26 (b)(3)............................................................................................................... 15

Fed. R. Civ. P. 37(a)(5)........................................................................................................ 1, 18, 19

Local Rule 26.2 (a)(2)(A) ............................................................................................................. 14

<u>Preliminary Statement</u>

This Memorandum of Law is submitted on behalf of defendant Yassin Abdullah Kadi in opposition to Plaintiffs' motion, dated December 1, 2017, to compel further document production. This Memorandum of Law, the accompanying declarations of Mr. Kadi and two of his attorneys, Peter C. Salerno and Guy Martin, a solicitor at the London solicitors' firm Carter-Ruck, and the exhibits thereto, will demonstrate that Mr. Kadi has more than met his discovery obligations in this case, and that Plaintiffs' motion is utterly without merit and not substantially justified. Mr. Kadi has produced every document in his possession, custody, or control that is responsive to Plaintiffs' voluminous document requests (with exceptions that will be discussed), and Plaintiffs have been so informed. In addition to denial of the motion, Mr. Kadi seeks an award of expenses, including attorneys' fees, pursuant to Fed. R. Civ. P. 37(a)(5).

<u>The Facts</u>

The principal, if not entire, theme of Plaintiffs' motion is that there "must be more documents" because of a combination of events that occurred in discovery and underlying alleged facts relating to Mr. Kadi's activities. The Argument portion of this Memorandum will address the legal inadequacy of this argument. Its factual basis is also fallacious.

A.      <u>The Discovery to Date</u>

To support their contention that Mr. Kadi's document production to date has been inadequate, Plaintiffs materially misstate the record of this case and omit material facts. The facts relating to Plaintiffs' document requests and Mr. Kadi's responses are stated more accurately and completely in the accompanying declarations of Yassin Abdullah Kadi ("Kadi Dec."), Guy Frederick Noel Martin ("Martin Dec."), and Peter C. Salerno ("Salerno Dec.").

In brief, after the claims against Mr. Kadi were remanded to this Court by the Second Circuit in April 2013 (714 F.3d 659), Plaintiffs served their first set of jurisdictional document requests which, with attachments, effectively contains 337 requests. (Salerno Dec. ¶¶ 3-4 and Ex. A thereto). In November 2013 Mr. Kadi through counsel served a formal response which objected to many of them. (Salerno Dec. Ex. B). Between November 2013 and December 2014 Mr. Kadi made five rolling productions totaling 104,302 pages. (Salerno Dec. ¶ 5).

In December 2014, when Mr. Kadi's counsel believed his document production was complete, counsel informed Plaintiffs of the requests as to which Mr. Kadi had withheld documents pursuant to non-privilege-based objections. (Salerno Dec. ¶ 8 and Ex. C thereto). Five months later, on May 6, 2015, Plaintiffs served a 12-page letter alleging various inadequacies in Mr. Kadi's production, as well as a second set of document requests that effectively contained 59 items, though some were duplicative of the first set of requests. (Plaintiffs' Memorandum of Law ("Plaintiffs' MOL") Ex. 2 (letter) and Salerno Dec. Ex. D (requests)). After informing Plaintiffs' counsel of our intentions, Mr. Kadi and his counsel made a number of additional document productions through April 2017 in which *no* documents were withheld pursuant to objections other than privilege (and two other categories, comprising a small number of documents, of which Plaintiffs were informed in a letter dated December 15, 2014 from Peter C. Salerno (Plaintiffs' Ex. 1), the withholding of which they do not challenge). Mr. Kadi has produced almost 140,000 documents, comprising more than 275,000 pages. (Salerno Dec. ¶¶ 9-14 and Exs. E, F).

In Plaintiffs' version of these events, after December 2014 "… Kadi, with prodding, … produced an additional 171,061 pages, in other words approximately 62% of his overall production of documents came after he stated he had given us everything he had, minus privileged material." (Plaintiffs' MOL at 2). The truth is that in December 2014 Mr. Kadi's counsel never said this. He fully disclosed that documents were being withheld pursuant to non-privilege-based objections. These objections were asserted in good faith. We do not withdraw them, waive them, or abandon them. Our decision subsequently to produce all documents in Mr. Kadi's possession, custody or control without regard to these objections was an effort to avoid litigation about them, perhaps an example of the maxim that no good deed goes unpunished.

B.     Mr. Kadi's Efforts at Compliance

Although we do not concede that anything in Plaintiffs' motion justifies an inquiry into the efforts Mr. Kadi made to fulfill his discovery obligations, we set out a summary of those efforts. After Mr. Kadi was listed by the U.S. Treasury Office of Foreign Assets Control ("OFAC") as a Specially Designated Global Terrorist ("SDGT"), two of Mr. Kadi's counsel, Guy Martin and Maître Saad Djebbar, visited Mr. Kadi's offices in Jeddah, Saudi Arabia on four occasions. (Martin Dec. ¶¶ 5, 7). There they gathered documents thought to relate in any way to allegations that Mr. Kadi was involved in financing terrorism or terrorist organizations. Copies of these documents were sent to Mr. Martin's office in London.[2]

Mr. Martin's firm also collected documents from Mr. Kadi's accountant, from various banks in which he had accounts during the relevant time period, from a U.S. law firm

---

[2] Mr. Martin's efforts to obtain relevant documents prior to December 2014 are set forth in more detail in paragraphs 2-7 and 9-13 of his Declaration.

that represented Mr. Kadi in an action in federal district court in Chicago, and from other

sources.  (Martin Dec. ¶¶ 10-13).

This universe, as well as certain documents gathered for a defamation action in

the mid-1990s, was the basis for Mr. Kadi's document production up through December 2014.[3]

After the receipt of Plaintiffs' "deficiency" letter and second set of document requests in May

2015, counsel Guy Martin visited Mr. Kadi in Jeddah for a fifth time and reviewed many more

documents, which were scanned and uploaded to our litigation support vendor.  (Martin Dec.

¶ 16). The review of these documents, plus a re-review of withheld documents from the first

universe of documents, resulted in Mr. Kadi's productions between 2015 and 2017.

C.      Plaintiffs' Allegations of Inadequate Production

While the merits of the claims in this case that Mr. Kadi has some causal

relationship to the attacks of September 11, 2001 ought to be irrelevant to a motion alleging that

he possesses unproduced responsive documents, Plaintiffs' MOL, unsupported by any affidavit

or affirmation, is so riddled with discussion of this topic, with innuendo and guilt by association,

and with misstatements of the evidence that, regrettably, some discussion is warranted here.  Our

failure to discuss any particular allegation is not an admission that it has any merit or accuracy; it

is motivated by respect for the Court's time.

Plaintiffs begin their discussion of the "factual background" (Plaintiffs' MOL at 2

*et seq.*) by citing to the OFAC listing of Mr. Kadi as an SDGT.  Completeness would seem to

---

[3] After jurisdictional discovery against Mr. Kadi commenced in this case, all arguably responsive documents in this universe were uploaded to a U.S. litigation support vendor. (Martin Dec. ¶ 7).

dictate mentioning that he was subsequently de-listed.  (Salerno Dec. ¶ 26 and Ex. V).  If the listing is thought to have any significance, in fairness so too should the de-listing.

In fact, Mr. Kadi has been de-listed by every entity that listed him: The United Nations, the United Kingdom, and the European Union, as well as the United States. (*See* Salerno Dec. ¶ 26 and Ex. V; Martin Dec. ¶ 3 and Exs. W, X, and Y).[4]  It seems unlikely that any of these entities, including the United States, would have de-listed him if they actually possessed credible information that he had anything to do with terrorist financing, let alone the September 11 attacks.

In its judgment of July 18, 2013, the European Court of Justice (the highest court in the European Union), in *Kadi v. Council and Commission* [Joined cases C-584/10 P, C-593/10 P and C-595/10 P], confirmed the General Court's annulment of the EU sanctions imposed upon Mr. Kadi in November 2008.  The Court said it was "clear that no information or evidence has been produced to substantiate the allegations of the Muwafaq Foundation's involvement in international terrorism in the form of links with … Al Qaeda.  In such circumstances, the indications of the role and duties of Mr. Kadi in relation to that foundation are not such as to justify the adoption, at European Union level, of restrictive measures against him." *Id.* ¶ 153. (Copy annexed to the Martin Declaration as Exhibit W).

---

[4] Exhibits to the Martin Declaration begin with the letter W. We have used letters for Mr. Kadi's exhibits to distinguish them from Plaintiffs' exhibits. The exhibits to the Salerno Declaration are from A to V.

Rowad Development & Investment

The first "discrete and narrow topic[]" as to which Plaintiffs contend Mr. Kadi's production is inadequate is Rowad Development & Investment.  (MOL at 3).  At the outset, it is worth noting that Rowad is nowhere mentioned in Plaintiffs' 396 document requests.

Plaintiffs' discussion begins with the false statement, "Rowad Development & Investment ("Rowad") was a joint venture in the Sudan between Kadi and al Qaeda." (MOL at 3).  Plaintiffs' evidence does not support this statement in any way.  What it shows is that Wadi al-Aqiq , a company with which Osama bin Laden ("OBL") was allegedly associated, and two entities affiliated with Mr. Kadi, Muwafaq Foundation ("Muwafaq") and Loxhall Company, along with six other entities, were shareholders in Rowad.  (KADI0089843, Plaintiffs' Ex. 5 at 112-13).[5]  Being one or two of nine shareholders along with another entity is not a joint venture.

Plaintiffs try to link Mr. Kadi to OBL with another false statement: that al Shamal Islamic Bank was "a Sudanese bank in which both OBL and Kadi held shares." (MOL at 4).  No document supports the assertion that Mr. Kadi was a shareholder in this bank, and he was not. (*See* Martin Dec. ¶ 17).  The cited document (KADI0020327-41, Plaintiffs' Ex. 5 at 51-55 – not all the Bates numbers within the range Plaintiffs cite are included in their exhibit) shows merely that Mr. Kadi had investment accounts at that bank.[6]

Although it seems a trivial and irrelevant fact, the cited document (KADI0020341, Plaintiffs' Ex. 5 at 55) does *not* say that "[s]everal other wealthy Saudis invested with Kadi in Al Shamal Islamic Bank, including Prince Mohamed bin Faisal." (MOL at

---

[5] Page references to Plaintiffs' Exhibits 5 and 6 are to the ECF header pages.
[6] *See also* Martin Dec. ¶ 17.

4-5).  It says they attended a convention in Khartoum (in 1991) at the invitation of the Sudanese Government.  Similarly, contrary to Plaintiffs' assertion (MOL at 5), the document they cite does *not* say that OBL attended the same meeting.  (KADI0027127, Plaintiffs' Ex. 5 at 57).  The document (a record of an FBI interview in 2004 with a "Cooperating Witness" believed to be Jamal al Fadl), states that "Al-Qaida did attend – although he does not recall who."[7] We raise these misstatements to demonstrate the unreliability of Plaintiffs' assertions.

From the facts, including the fact, accurately cited by Plaintiffs, that Rowad was liquidated in 1996-97 (Plaintiffs' MOL at 5), it is entirely credible, notwithstanding Plaintiffs' contrary assertion (MOL at 6), that Mr. Kadi would not be in possession of the kinds of documents Plaintiffs cite. (*Id*.)

<u>"Laundering bin Laden's Money out of Sudan"</u>[8]

Plaintiffs attempt to link Mr. Kadi to OBL through the syllogism that Mr. Kadi, through an investment account, traded in "sesame"; according to the U.S. Department of State, in 1996 sesame was a "near monopoly" of Al Qaeda; a Kadi company founded in 1999, Solano Ltd., also traded in sesame; therefore Mr. Kadi was involved in "Laundering bin Laden's Money out of Sudan." (MOL at 6-7).

The documents Plaintiffs cite do not support the allegation that Mr. Kadi was "laundering bin Laden's money" with transactions in sesame or anything else, and neither do any other documents of which we are aware.  They also do not establish that Mr. Kadi ought to possess the three categories of documents Plaintiffs say are missing.  (MOL at 7).  Mr. Kadi has

---

[7] In this interview, in response to a direct question, "[t]he source advised that he is not aware of Al-Kadi having shares in businesses linked to Al-Qaida." (KADI0027129, Plaintiffs' Ex. 5 at 59).
[8] The inflammatory text of this heading is Plaintiffs'.

produced everything in his possession that is responsive, and more than Plaintiffs assert,

including a substantial number of bank documents reflecting Solano Ltd.'s trading activities,

including companies affiliated with Dan Fodio (raised by Plaintiffs' MOL at 7, last bullet point)

and others. (*See* Martin Dec. ¶ 18).[9]

> ### KSA's Investigation of Yassin Kadi

We have repeatedly explained to Plaintiffs' counsel that the Kingdom of Saudi

Arabia is not forthcoming with documents.  (Salerno Dec. Exs. F at 3, L at 2; Martin Dec. ¶ 19).

Plaintiffs list a number of documents in their memorandum of law (at 8-11) as if the mere listing

of them was evidence that Mr. Kadi should have them.  It is not.  We have produced what Mr.

Kadi has, and logically enough, despite Plaintiffs' claim that it is a deficiency, "nearly all [the

documents we produced] were generated by Kadi or his attorneys" (MOL at 8), a fact consistent

with the KSA's policy of refusing to release its investigative or diplomatic documents.  (*See*

Martin Dec. ¶ 19; Plaintiffs' Ex. 6 at ECF p. 40; *See* Martin Dec. ¶¶ 19-22 for a description of

what Mr. Kadi was able to obtain and produce to Plaintiffs). Mr. Martin further explains that

most of Mr. Kadi's interactions with the KSA were through a Saudi lawyer, not Mr. Martin's

firm, which explains why copies of many documents were not in Carter-Ruck's files, and Mr.

Kadi's Saudi lawyer was not able to supply any more than we have produced. (Martin Dec. ¶

22).

Moreover, Mr. Kadi has in fact produced at least two of the items Plaintiffs allege

we did not: the "[t]wo files in English" (MOL at 9, 10th bullet point), produced at

---

[9] Plaintiffs' references to Kadi Bates numbers with six figures beginning with "101" (MOL at 7, first full paragraph, last three lines, and pp. 9-11), are in fact to Plaintiffs' translations of documents produced by Mr. Kadi with Bates numbers beginning with "103." And they are not in Exhibit 5, but in Exhibit 6, at ECF pp. 26-40.

KADI0005568-5921, and "Malaysian Report on Kadi" (MOL at 10, 7th bullet point), produced at KADI0105513-14. (*See* Martin Dec. ¶¶ 21-22 for more detailed discussion of these items).

### KA Stan and SHC to al Baraka Bank in Turkey

The Martin Declaration (¶ 23) explains that we have produced what Mr. Kadi has on this topic (*see* Plaintiffs' MOL at 11-12), and that there are a large number of such documents. Indeed, Plaintiffs' own discussion demonstrates that we have produced a number of responsive documents. Furthermore, in their discussion, they tell the Court what documents they would like to see, but do not provide any evidence that Mr. Kadi does or should possess them. Their inflammatory modifiers ("ostensibly for those construction projects"; "exorbitant after-cost profits" (MOL at 11)) are not evidence. The irrelevance of their reference to Mr. Kadi's having been designated as an SDGT (MOL at 12) has already been discussed. (*See* p. 5 *supra*). The thrust of their "argument" is guilt by association with the Saudi High Commission, Chafiq Ayadi, and Wa'el Jelaidan, all defendants in this case.

### Maram Travel of Turkey

Plaintiffs purport to support their contention that "[t]here had to be more records from Maram" (MOL at 14) by referring to quite a large number of documents that were produced. They point out that Mr. Kadi's attorneys were able to obtain a number of Maram documents as a result of authorizations from Mr. Jelaidan. (MOL at 13, citing KADI0004272, Pltfs' Ex. 5 at ECF p. 2).[10] That same page notes that in July 2003 the Turkish government seized a number of Maram

---

[10] See also Plaintiffs' Motions to compel and for sanctions against Mr. Jelaidan (ECF Nos. 2988, 3744, described in more detail at Martin Dec. ¶ 25), where Plaintiffs refer extensively to documents received from Mr. Kadi.

documents. (*See also* Martin Dec. ¶¶ 24-25). In addition to the passage of time, this is another

obvious explanation for why Mr. Kadi cannot produce more Maram documents.

In short, Plaintiffs offer no evidence (the suggestion that documents were withheld "perhaps

intentionally" (MOL at 14) is simply an insult, not evidence) that Mr. Kadi has possession,

custody, or control of any more documents than he has produced.

<u>Plaintiffs' Claims Respecting Privilege</u>

As Plaintiffs note at p.14 of their MOL, Mr. Kadi served a privilege log listing

277 documents created before September 11, 2001, withheld pursuant to the attorney-client

privilege and work product protection, and 429 redactions created before September 11, 2001 on

other pre-9/11 documents. [11]  Although Plaintiffs state that "dozens of documents listed on the

privilege log . . . also appear to have been disclosed to third parties[,]" they identify only eleven

such documents (Log Items 9, 11, 14-17, 34-35, 50, 100 and 175).  (*Id*. at 15-16).  Of these

eleven documents, plaintiffs identify six (Log Items 9, 34-35, 50, 100 and 175) that "appea[r] to

be regarding business affairs" as well as shared with third parties.  (*Id*. at 15).

Plaintiffs state that these eleven documents "are only a few of the suspect

communications listed on the log" and that approximately one-third of the logged items either do

not appear to be privileged or do not provide information adequate to assess the validity of the

privilege asserted.  *Id*. at 16.  Plaintiffs do not, however, identify the other documents as to

which they harbor suspicions.

Not only does Plaintiffs' motion fail to challenge specifically more than the

eleven documents discussed in their Memorandum of Law, but prior to filing the instant motion,

---

[11] By order dated November 19, 2012 (ECF No. 2644), Judge Maas ruled that communications created after
September 10, 2001 need not be logged.

Plaintiffs never engaged with Mr. Kadi's counsel in any meaningful meet-and-confer process regarding their concerns about documents withheld on the basis of attorney-client privilege or work product immunity.[12]  Plaintiffs' 2017 "deficiency" letter (Ex. K to Salerno Dec.) made no mention whatever of privilege or work product.

Plaintiffs' August 31, 2017 status letter to the Court (ECF 3713, Salerno Dec. Ex. M) said only "Plaintiffs takes [*sic*] issue with the over broad privilege log objections Kadi has served.…  Plaintiffs anticipate a motion to compel will be necessary to address … several documents listed on the privilege log."  (*Id*. at 9, 10).  Mr. Kadi's counsel the next day asked, "What are your issues regarding our privilege log? (Letter, p. 9, l0). Your August 31 status report is the first we have heard that you have any concerns regarding it."  (Salerno Dec. Ex. N, at 1).  Plaintiffs' response (Salerno Dec. Ex. O) gave only a short general discourse on work product immunity law, and was silent as to specifics, the attorney-client privilege, or its purported waiver. In a September 20 email, Mr. Maloney stated that Plaintiffs had "lots of work to do to review the Kadi production regarding gaps and the privilege log. . . . [W]e would prefer to finish a thorough review and confer with you on all issues by Nov." (Salerno Dec. Ex. S).  In a September 29 email (Salerno Dec. Ex. T), he wrote, "We will plan to meet and confer some more with you before Dec. 1., hopefully in early to mid-November."  These emails echoed what Mr. Maloney told the Court during the September 7 conference: "[T]here was an extensive

---

[12] In their May 6, 2015 "deficiency" letter , Plaintiffs questioned redactions on three documents. (*See* Plaintiffs' Ex. 2 at 12). Mr. Kadi's counsel answered their questions. (Salerno Dec. Ex F at 7). These redactions are not discussed in the instant motion. For a more detailed discussion of the chronology of the meet-and-confer discussions between Plaintiffs' and Mr. Kadi's counsel. *see* Salerno Dec. ¶¶ 16-24.

privilege log that was given to us that I want to discuss with Mr. Salerno in the next week or two

….” (Transcript, Salerno Dec. Ex. R at 15).[13]

That was the last we heard from Plaintiffs until they filed their motion on

December 1.

Argument

Point I

Mr. Kadi’s Document Production Is Sufficient

Plaintiffs’ contention that Mr. Kadi has failed to produce responsive documents in

his possession, custody, or control, is just that: a contention unsupported by any factual

affirmation. (Plaintiffs’ MOL at 2). Plaintiffs also complain, “Nor does Kadi detail his efforts to

comply with his production obligations,” (*id.*), without providing authority for the proposition

that he is obligated to do so. Nevertheless, Mr. Kadi in fact previously informed Plaintiffs of

some of his efforts to obtain documents (Salerno Dec. Ex. F at 2), and does so now with more

detail in the accompanying declarations and this Memorandum of Law. (*See* pp. 3-4 *supra*).

Plaintiffs have the burden of “cast[ing]doubt” on Mr. Kadi’s assertion that he has

produced all responsive documents in his possession, custody, or control, and has conducted

reasonable searches to locate such documents. *Cf. Gary Friedrich Enterprises, LLC v. Marvel

Enterprises, Inc.*, No. 08 Civ. 1533, 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011)

(Francis, J.). “[T]he Court cannot compel production of what does not exist.” *American Banana

Co. v. Republic Nat’s Bank of N.Y.,* No. 99 Civ. 1330, 2000 WL 521341, at *3 (S.D.N.Y. May

---

[13] *See also* Mr. Maloney’s letter to the Court dated September 29, 2017 (Salerno Dec. Ex. U): “We have had several
meet and confer exchanges and anticipate more to follow in November.”

1, 2000) (Schwartz, J.). "[W]hen counsel represent that they have conducted a reasonable search and have not uncovered all requested documents, it is up to the requesting party to show that the search was inadequate." *Gary Friedrich Enterprises,* 2011 WL 2623458, at *1.

Mr. Kadi and his counsel have repeatedly explained that they have searched for and attempted to produce every responsive document in Mr. Kadi's possession, custody, or control. (*See* Martin Dec., *passim*; Salerno Dec. ¶¶ 12-15 and Exhibits referred to therein). Plaintiffs have made no persuasive showing that our searches were inadequate. Indeed, the fact that they rely on outright misstatements of the record to support their attack on our efforts underscores the hollowness of their assertions. The detail provided in Mr. Martin's Declaration demonstrates beyond cavil that Mr. Kadi and his counsel have been diligent in their efforts to produce everything in Mr. Kadi's possession, custody or control that is arguably responsive to Plaintiffs' far-reaching 396 document requests.

<u>Point II</u>

<u>Mr. Kadi's Invocation of Privilege Is Properly Supported</u>

While "[t]he party asserting the attorney-client privilege has the burden of establishing that the privilege applies and that it has not been waived," Plaintiffs' MOL at 15, the party challenging an assertion of privilege has the burden of identifying the documents challenged. *See ECDC Environmental v. New York Marine and General Ins. Co*., No. 96 Civ. 6033, 1998 WL 614478 at *4 (S.D.N.Y. June 4, 1998) (Pitman, J.) ("…there is no logic or efficiency in requiring the proponent of a privilege or the Court to address matters which are not contested by the challenger…. Accordingly, I limit my analysis here to the specific challenges made by defendant and the specific responses made by plaintiff.").

-13-

Although Plaintiffs assert that "there are dozens of documents listed on the privilege log that also appear to have been disclosed to third parties [,]" (MOL at 15), and that "approximately one third of all those identified to not appear to be privileged or at a minimum do not provide sufficient information to determine if the privilege is valid and not waived[,]" (*id*. at 16), they identify only eleven such documents (Privilege Log Items 9, 11, 14-17, 34-35, 50, 100 and 175) which they characterize as disclosed to third parties or possibly containing business rather than legal advice.[14]

We cannot guess which claims of privilege Plaintiffs may believe are invalid; we address the eleven documents Plaintiffs explicitly challenge. Each of these documents is discussed in the accompanying Martin Declaration (¶¶ 26-32). Mr. Kadi also submits a declaration describing his relationship with those authors or recipients who were his attorneys and agents. ("Kadi Dec.").

Items 11 and 14-17 – These documents were incorrectly designated in our Privilege Log as attorney-client communications – they are in fact work product.[15]  As Mr. Martin explains in his Declaration, these documents, identified in Mr. Kadi's privilege log as draft funds transfer orders, actually are translations of such orders from Arabic to English done by Maître Saad Djebbar, an Arabic-speaker who is one of Mr. Kadi's attorneys. Maître Djebbar worked with Mr. Martin's law firm on Mr. Kadi's prosecution of his lawsuit in the London High

---

[14] Mr. Kadi's privilege log, Plaintiffs' Ex. 19 (not 18) meets the requirements of Local Rule 26.2 (a)(2)(A). It describes the document type, date, author, addressee, other recipients, subject matter and privilege type asserted.

[15] Although not raised by Plaintiffs in their MOL, in his September 6 email Mr. Maloney asserted that a document's work product immunity does not apply to litigation different from the litigation for which the document at issue was created. (Salerno Dec. Ex. O). In fact, most courts reject that view. *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 25-26 (1983) (dictum); *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.* 208 F.R.D. 92, 104 (S.D.N.Y. 2002) (Jones, J.); *TIG Ins. Co. v. Yules & Yules*, No. 99 Civ. 3378, 1999 WL 1029712, n.1 (S.D.N.Y. Nov. 12, 1999) (Dolinger, J.) (dictum); *Liberty Environmental Systems, Inc. v. County of Westchester*, No. 94 Civ. 7431, 1997 WL 471053, *7-*8 (S.D.N.Y. Aug. 18, 1997) (Dolinger, J.).

Court against Her Majesty's Treasury, challenging the UK government's decision to instruct all financial institutions to freeze Mr. Kadi's assets.  Maître Djebbar's translations were made because of the documents' significance in that UK litigation and are entitled to work product immunity.  (Martin Dec. ¶ 26; Fed. R. Civ. P. 26 (b)(3)).  "It is universally agreed that a document whose purpose is to assist in preparation for litigation is within the scope of the Rule and thus eligible to receive protection if the other conditions of protections prescribed by the Rule are met." *United States v. Adlman*, 134 F. 3d 1194, 1197 (2d Cir. 1998).  Work product immunity applies to documents created to assist in ongoing or expected litigation, *id.* at 1198, as were these translations (Martin Dec. ¶ 26).[16]

Item 9 – Both Mr. Kadi and Mr. Martin identify author "Muhammad" as Muhammad bin Mahfouz, a business associate of Mr. Kadi's who acted on Mr. Kadi's behalf with respect to his successful defamation lawsuit against the publisher and editor of the UK publication *Africa Confidential*. (Kadi Dec. ¶ 10; Martin Dec. ¶ 27).  The recipients of the letter are Maître Djebbar and Carter-Ruck, both attorneys for Mr. Kadi in that lawsuit.  (Kadi Dec. ¶ 7; Martin Dec. ¶ 27).  Mr. Martin states further that the letter from Mr. bin Mahfouz responded to Maître Djebbar's request for information needed to prosecute Mr. Kadi's lawsuit against *Africa Confidential*.  (Martin Dec. ¶ 27). The attorney-client privilege applies to a communication from the agent of a client who, acting for the client, communicates confidentially with the client's attorney.  *ECDC Environmental v. New York Marine and General Ins. Co., supra* at *5; *CSC*

---

[16] Even if Maître Djebbar had been acting only as an agent for Carter-Ruck rather than as an attorney in creating these translations for use in Mr. Kadi's lawsuit against the UK Treasury, his work nevertheless would have been protected.  *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *Granite Partners, L.P., v. Bear, Stearns & Co. Inc.*, 184 F.R.D.49, 52 (S.D.N.Y. 1999) (Sweet, J.) ("The doctrine extends to notes, memoranda, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney.")

*Recovery Corp. v. Daido Steel Co., Ltd.*, No. 94 Civ. 9214, 1997 WL 661122 at *3 (S.D.N.Y. Oct. 22, 1997) (Katz, J.).  And, since Mr. Mahfouz's letter to Maître Djebbar (copied to Carter-Ruck) served to provide Maître Djebbar with information he sought for Mr. Kadi's *Africa Confidential* lawsuit, the privilege applies to this letter.  As stated by the Supreme Court in *Upjohn v. United States*, 449 U.S. 383 (1981), the purpose of the attorney-client privilege is "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  449 U.S. at 390.  *See also, In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 217-18 (S.D.N.Y. 2001) (Swain, J.).[17]

   Items 34 and 35 – Mr. Martin explains that both these letters were from Ajmal Ebrahim Hameed, a lawyer representing Mr. Kadi, to Ahmed Basodan, who worked for Mr. Kadi and was authorized to act for him with respect to his investment in the Abrar Group (as well as other investment projects).  (Martin Dec. ¶¶ 28-29; Kadi Dec. ¶ 8, 11).  Both letters provided legal advice with respect to Mr. Kadi's investment in the Abrar Group.  (*Id.*)  Since Mr. Basodan was Mr. Kadi's agent and the letters provided legal advice, both documents properly were logged as privileged.

   Item 50 – Mr. Martin explains in his Declaration that this document, a list of real estate transactions, was in Mr. Kadi's files next to a letter to Mr. Basodan from the law firm Albar & Partners providing legal advice pertaining to real estate transactions, some of which are

---

[17] Although not designated as such on the privilege log, Item 9 can be considered work product as well as attorney-client privileged because the information Muhammad bin Mahfouz related to Maître Djebbar responded to Maître Djebbar's request for litigation-related information and therefore reflected his thought processes.  See, *Greater New York Taxi Association v. City of New York*, No. 13 Civ. 3089, 2017 WL 4012051, at *13 (S.D.N.Y. Sept. 11, 2017) (Francis, J.).

listed in Item 50.  (Martin Dec. ¶ 30). The obvious inference is that this list was part of the privileged communication between Albar & Partners, Mr. Kadi's attorneys, and Mr. Basodan, Mr. Kadi's employee.  (Kadi Dec., ¶¶ 9, 11).

Item 100 – We have determined that this inter-office memo is only partially privileged and have produced it to Plaintiffs with a redaction of the privileged material.  (Martin Dec. ¶ 31).

Item 175 – Mr. Martin explains that he recognizes the handwriting in this letter fragment to be Maître Djebbar's and that he took the additional step of confirming this with Maître Djebbar. (Martin Dec. ¶ 32). The letter seeks information from Siraj El Din Abdul Bari, Muwafaq's manager in Sudan (Kadi Dec. ¶ 12), concerning Muwafaq's relationship with the Sudanese government and is aimed at obtaining information pertaining to Mr. Kadi's UK defamation suit against the editor and publisher of *Africa Confidential*.  (Martin Dec. ¶ 32).  This document is, therefore, an attorney-client communication about then-ongoing or anticipated litigation and is protected by both the attorney-client privilege and the work product doctrine.

In sum, Plaintiffs' challenges to ten of the eleven documents they discuss fail because either the attorney-client privilege, the work product protection or both apply to those ten documents.  As to the eleventh, we have corrected an error and produced a redacted copy of the document. Had Plaintiffs followed through on their stated intention to engage in the meet and confer process (pp. 10-12 *supra*), (a) we might have noticed this error and produced the document before the instant motion was filed; and (b) the entire argument regarding privilege might have been obviated.

-17-

<u>Point III</u>

Attorneys' Fees Should Be Awarded
<u>To Mr. Kadi Pursuant to Fed. R. Civ. P. 37(a)(5)</u>

This Memorandum and the accompanying declarations and exhibits demonstrate not only that Plaintiffs' motion to compel should be denied, but that Mr. Kadi's expenses, including attorneys' fees, should be awarded to him.  We submit that the requirements of the Rule (Fed. R. Civ. P. 37(a)(5)(B)) will have been met:

> "If the motion is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

Mr. Kadi's papers demonstrate that Plaintiffs' unsupported memorandum of law is materially misleading, and that there is no basis for any contention that Mr. Kadi has not met his discovery obligations in this case. Thus, Plaintiffs cannot reasonably contend that the motion was substantially justified. Their failure to provide justification is exacerbated by their repeated misstatements of fact and mischaracterizations of the documents submitted.

Plaintiffs' conduct in filing this frivolous motion is particularly egregious in light of the information they had received from Mr. Kadi's counsel.  In his August 7, 2015 letter, Mr. Salerno advised Plaintiffs that Mr. Kadi's London counsel had made several visits to Mr. Kadi's office to gather any documents pertaining to accusations of terrorist financing but that, prior to his October 2001 OFAC listing, Mr. Kadi had no reason to retain records from the 1990s. (Salerno Dec. Ex. F at 2).

In his July 26, 2017 letter, Mr. Salerno repeated what we had told Plaintiffs in three separate documents when Mr. Kadi made his final production in April 2017: "Our client and his defense team have conducted every reasonable search for documents responsive to all of your discovery requests.  We have not knowingly withheld <u>any</u> responsive documents that are not privileged, despite the overbreadth of those requests."  (Salerno Dec. Ex. L; *see also id.* Exs. H (Salerno Letter to Plaintiffs' Counsel dated April 27, 2017); I (Mr. Kadi's Amended Responses to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents); and J (Mr.  Kadi's Response to Plaintiffs' Second Set of Jurisdictional Requests for Production of Documents)).

Mr. Salerno's July 26, 2017 letter stated further that:

> The defense of this meritless litigation has imposed enormous expense on our client, not to mention the injustice of being falsely accused of heinous crimes. We will pursue every option available to recover this expense.  Furthermore, if you make a motion to compel discovery that is denied (as we believe it well be), we will seek recovery of our client's expenses, including attorneys' fees, incurred in opposing the motion, pursuant to Fed. R. Civ. P. 37(a)(5)(B).

Exhibit L at 4.

Plaintiffs' motion, in the face of counsel's repeated assertions that Mr. Kadi had produced all non-privileged responsive material in his possession, custody or control, is at odds with the view expressed by this Court during the conference it held on September 7, 2017 when it stated that an attorney's representation that production is complete should be accepted as such,

since attorneys are officers of the court. (Transcript of September 7, 2017 conference, Salerno Dec. Ex. R at 19-20).[18]

Heedless of both the Court's view and counsel's repeated assertions, Plaintiffs filed their motion.  This motion is not in any way justified, let alone "substantially justified."

There are no other circumstances that would make an award of expenses unjust. We are mindful that many of the Plaintiffs in this case have suffered unimaginable personal non-monetary losses, and no doubt many do not have significant financial means. No reasonable court would award attorneys' fees against such plaintiffs. The Plaintiffs include a number of insurance companies, however. Their losses are only financial, and they presumably have the wherewithal to compensate Mr. Kadi for their mistake in filing this motion, as do Plaintiffs' counsel, who in any event are responsible for that mistake. Fed. R. Civ. P. 11.

Conclusion

Plaintiffs' motion to compel against Mr. Kadi should be denied, and he should be awarded his expenses of defending against this motion, including attorneys' fees.

Dated: January 19, 2018

      s/                    

Peter C. Salerno
Amy Rothstein
Salerno & Rothstein
Attorneys for Defendant Kadi
221 Schultz Hill Road
Pine Plains, NY 12567
Tel. No. 518 771 3050
Email: peter.salerno.law@gmail.com

---

[18] Exhibit R contains pages 1-2 (for identification purposes) and 16-20 (the entire colloquy concerning Mr. Kadi) of the September 7, 2017 transcript.  *See also Guillory v. Skelly*, No. 12 Civ. 00847, 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) ("An attorney's statement in response to discovery that the requested document does not exist is sufficient to avoid producing the document").

Exhibits to Mr. Kadi's Opposition to Plaintiffs'
Motion to Compel dated December 1, 2017

Exhibits to Salerno Declaration

A.  Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to
    Yassin Abdullah Al Kadi, dated August 22, 2013
B.  Defendant Yassin Abdullah Kadi's First Responses to Plaintiffs' First Set of
    Jurisdictional Requests for Production Of Documents, dated November 11, 2013
C.  Salerno Letter to Plaintiffs' Counsel dated December 19, 2014
D.  Plaintiffs' Second Set of Jurisdictional Requests for Production of Documents Directed to
    Defendant Yassin Abdullah Kadi, dated May 6, 2015
E.  Salerno Email to Plaintiffs' Counsel dated June 10, 2015
F.  Salerno Letter to Plaintiffs' Counsel dated August 7, 2015
G.  Salerno Email to Plaintiffs' Counsel dated April 18, 2017
H.  Salerno Letter to Plaintiffs' Counsel dated April 27, 2017
I.  Defendant Yassin Abdullah Kadi's Amended Responses to Plaintiffs' First Set of
    Jurisdictional Requests For Production Of Documents dated April 27, 2017
J.  Defendant Yassin Abdullah Kadi's Response to Plaintiffs' Second Set of Jurisdictional
    Requests for Production Of Documents dated April 27, 2017
K.  Andrew Maloney Letter to Mr. Kadi's Counsel dated July 20, 2017
L.  Salerno Letter to Plaintiffs' Counsel dated July 26, 2017
M.  Plaintiffs' Discovery Status Letter dated August 31, 2017
N.  Salerno Letter to Plaintiffs' Counsel dated September 1, 2017
O.  Maloney Email to Salerno dated September 6, 2017
P.  Salerno Letter to Maloney dated September 6, 2017
Q.  Salerno Email to Maloney dated September 16, 2017
R.  Excerpts from Court Transcript of Conference on September 7, 2017 (pages 1-2, 16-20)
S.  Maloney Email to Salerno dated September 20, 2017
T.  Maloney Email to Salerno dated September 29, 2017
U.  Maloney Letter to Court dated September 29, 2017
V.  *Federal Register* dated November 26, 2014, 79 Fed. Reg. 72248 (OFAC de-listing of Mr.
    Kadi)

Exhibits to Martin Declaration

W.  Court of Justice of the European Union judgment upholding de-listing of Mr. Kadi, dated
    July 18, 2013
X.  Part 1 - U.K. Treasury notice dated December 22, 2008 announcing that Mr. Kadi is no
    longer subject to the Terrorism (United Nations Measures) Order 2001; Part 2 – U.K.
    Treasury notice dated October 15, 2012 announcing that Mr. Kadi is no longer subject to
    the asset freeze imposed by E.U. 2002 regulation, as a result of the U.N. de-listing.
Y.  U.N. press release dated October 5, 2012 announcing de-listing of Mr. Kadi
Z.  Excerpts of statement of Mr. Kadi to OFAC