# EXHIBIT

# A

Declaration of Peter C. Salerno
In Opposition to Plaintiffs' Motion to Compel
Against Yassin Abdullah Kadi

03 MDL 1570

January 2018

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (FM)<br>ECF Case |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279
*Estate of John P. O'Neill et. al., v. Al Baraka et. al.* No. 04 Civ. 1923


**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF
DOCUMENTS DIRECTED TO YASSIN ABDULLAH AL KADI**


THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
August 22, 2013

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO YASSIN ABDULLAH AL KADI**

Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *Estate of John P. O'Neill et. al., v. Al Baraka et. al.* No. 04 Civ. 1923 propound and serve on Yassin Abdullah al Kadi (hereinafter "Defendant" or "Kadi"), the following Jurisdictional Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.

## INSTRUCTIONS

1.     In producing documents and other things, Defendant is requested to furnish all documents or things in his possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

2.     Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.     In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.     Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.     Documents shall be produced in such fashion as to identify any organization, department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.     Documents attached to each other should not be separated.

7.     If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.     Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.     Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection with respect to any document requested herein, Defendant is required to provide a privilege log that conforms with the requirements set out in the November 19, 2012 Order Governing Identification of Privileged Documents (ECF No. 2644), including providing the following information concerning each document withheld:

      a.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

      b.    The general subject matter of the document;

      c.    The date of the document;

      d.    The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

      e.    If the document is an electronic document, its file size; and

      f.    The basis for the privilege or protection claimed, and if the privilege is governed by state law, the state's privilege rule being invoked.

11.     For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press.  In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.     Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1992 through the present.

14.     Unless otherwise specified, Kadi's responses to Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to Yassin Abdullah Al Kadi, including any production of documents by the defendant, shall be directed to the law offices of Motley Rice at 275 Seventh Ave., 2nd Floor, New York, NY 10001, c/o Robert T. Haefele, Esq.

## DEFINITIONS

1.     All terms used herein that are defined in Local Civil Rule 26.3 have the meaning as defined therein.  To the extent that any term is defined herein in a manner that is inconsistent with Local Civil Rule 26.3, the rule governs.

2.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

3.     The term "identify" when used with reference to an individual person shall mean to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting identification of that person.

4.    The term "identify" when used with reference to a document shall mean to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipients(s).

5.    The term "identify" when used with reference to an oral communication, discussion, conversation or any other oral statement, shall mean to (i) identify the person who made the communication and person(s) to whom the communication was directed; (ii) state the date, time and place of such communication; (iii) describe in detail the substance of each communication and state the contents of the communication in verbatim if possible; (iv) identify any other persons present when the communication was made; and (v) identify any documents relating to the communication.

6.    The term "identify" when used with reference to an organization or business entity, shall mean to (i) state the formal title of the organization or entity and any other names by which it is known; (ii) state the specific section or organizational unit involved; and (iii) state the business address, including the address of any separate or branch offices.

7.    The term "Plaintiffs" shall refer to Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *Estate of John P. O'Neill et. al., v. Al Baraka et. al.* No. 04 Civ. 1923

8.    The terms "Defendant," "You," and "Your" shall refer to Yassin Abdullah Al Kadi, including by any other name by which You are known, and any employee, attorney, accountant, consultant, agent, or representative acting on Yassin Abdullah Al Kadi's behalf and/or at his direction.

9.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

10.     The term "person" is defined as any natural person or any business, legal, or government entity or association.

11.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.     The terms "all" and "each" shall be construed as all and each.

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14.     The use of the singular form of any word includes the plural and vice versa.

15.     The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

16.     The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

17.     The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if

committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18.      The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

19.      The terms "Kingdom of Saudi Arabia," or "KSA," or "Saudi Arabian government" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

20.      The terms "Muwafaq Foundation" or "Muwafaq" shall mean the Muwafaq Foundation (a/k/a Blessed Relief Foundation" or "Blessed Relief") and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Muwafaq Foundation's behalf and/or at its direction.

21.      The terms "International Islamic Relief Organization" or "IIRO" shall mean the International Islamic Relief Organization and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the International Islamic Relief Organization's behalf and/or at its direction.

22.     The terms "Saudi Joint Relief Committee for Kosovo and Chechnya" or "SJRC" shall mean the Saudi Joint Relief Committee for Kosovo and Chechnya and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Saudi Joint Relief Committee for Kosovo and Chechnya's behalf and/or at its direction, as well as all member organizations to the SJRC, including but not limited to, the Muslim World League, the International Islamic Relief Organization, the World Assembly of Muslim Youth, the Saudi Red Crescent Society, and Al Haraman Al Masjed Al Aqsa Charity Foundation.

23.     The terms "Al Haramain Al Masjed Al Aqsa Charity Foundation" or "AHAMAA" shall mean the Al Haramain Al Masjed Al Aqsa Charity Foundation and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Al Haramain Al Masjed Al Aqsa Charity Foundation's behalf and/or at its direction.

24.     The terms "Saudi High Commission" or "SHC" shall mean the Saudi High Commission and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Saudi High Commission's behalf and/or at its direction.

25.     The terms "Al Haramain Islamic Foundation" or "AHIF" shall mean the Al Haramain Islamic Foundation and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the Al Haramain Islamic Foundation's behalf and/or at its direction.

26.     The term "Designated" refers to any designation pursuant to the U.N.'s, the E.U.'s, or any nation's counter-terrorism sanctions regime, unless stated otherwise.  When used in relation to the U.S. government, "Designated" refers to any designation by the United States as a Specially Designated Terrorist ("SDT") pursuant to E.O. 12947; as a Specially Designated Global Terrorist ("SDGT") pursuant to E.O. 13224; as a Foreign Terrorist Organization ("FTO") pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189); or as a State Sponsor of Terrorism pursuant to section 6(j) of the Export Administration Act, section 40 of the Arms Export Control Act, or section 620A of the Foreign Assistance Act.  When used in relation to the U.N., "Designated" refers to any inclusion on the list established and maintained by the U.N. Security Council Committee pursuant to resolutions 1267 (1999) and 1989 (2011) concerning Al-Qaida and associated individuals and entities.

27.     The term "deviant activity" shall mean and refer to any activity related to or associated with deviant ideologies, deviant thinking or deviant interpretations of Islam.  The terms "deviant ideologies," "deviant thinking," and "deviant interpretations of Islam" shall have the same meanings as when used by authorities of the government of the Kingdom of Saudi Arabia and/or Saudi religious authorities.  See *Interior Minister Urges Imams to Confront Deviant Ideologies*, June 21, 2007, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2007News/News/NewsDetail.asp?cIndex+7240; *Mosque Council Urges Confrontation of Deviant Thinking*, September 1, 2003, Website of the Royal Embassy of Saudi Arabia, Washington, D.C., http://www.saudiembassy.net/2003News/News/IslDetail.asp?cIndex=762.

**PLAINTIFFS' FIRST SET OF JURISDICTIONAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO YASSIN ABDULLAH AL KADI**

1.      Please provide all documents governing, describing, detailing, or otherwise relating to Your employment from 1980 to the present, including without limitation, any and all resumes, curriculum vitaes, biographies, abstracts, media reports, digests, summaries, employment contracts, and/or outlines.

**ANSWER:**


2.      Please provide all documents relating to all accounts at Faisal Finance (Switzerland) S.A. established or held in the name of, on behalf of, and/or for the benefit of You, any account for any entity in which You held any beneficial interest, and/or any account over which You had signatory authority or had any actual or potential beneficial interest, including without limitation, the following accounts:

- •      Account No. 10361.
- •      Account No. 10321.
- •      Account No. 10451.
- •      Account No. 10741.
- •      Account No. 10738.
- •      Account No. 10736.
- •      Account No. 10372.
- •      Account No. 10329.
- •      Account No. 10004.
- •      Account No. 10172.

- Account No. 10257.
- Account No. 10441.
- Account No. 10442.
- Account No. 10443.
- Account No. 10444.
- Account No. 10445.
- Account No. 10446.
- Account No. 10470.
- Account No. 10019.
- Account No. 10020.
- Account No. 10021.
- Account No. 10022.
- Account No. 10023.
- Account No. 10024.

Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You and Faisal Finance (Switzerland) S.A., documents detailing the establishment, freezing, and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

3.      Please provide all documents relating to all accounts in the Islamic Investment Company of the Gulf established or held in the name of, on behalf of, and/or for the benefit of You, any account for any entity in which You held any beneficial interest, and/or any account over which You had signatory authority or had any actual or potential beneficial interest, including without limitation, Account No. 6700029.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You and the Islamic Investment Company of the Gulf, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

4.      Please provide all documents relating to all accounts in the National Commercial Bank (NCB) established or held in the name of, on behalf of, and/or for the benefit of You, any account for any entity in which You held any beneficial interest, and/or any account over which You had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You and

NCB, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

5.     Please provide all documents relating to all accounts in UBS established or held in the name of, on behalf of, and/or for the benefit of You, any account for any entity in which You held any beneficial interest, and/or any account over which You had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among You and UBS, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

6.      Please provide all documents relating to any investigations or inquiries conducted by any United States state or federal governmental entity or any United States-based regulatory body, bank, financial institution, accountant, or auditor ("United States Investigator"), any foreign government or any foreign-based regulatory body, bank, financial institution, accountant, or auditor ("Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi-based regulatory body, bank, financial institution, accountant, or auditor ("Saudi Investigator"), into financial transactions linked to accounts held by You, including without limitation, any and all accounts at Faisal Finance (Switzerland) S.A., Islamic Investment Company of the Gulf, NCB, and UBS.

**ANSWER:**

7.      Please provide all documents governing, describing, detailing, or otherwise relating to any business, employment, financial, charitable, religious, or other relationship between You and Khalid bin Mahfouz.

**ANSWER:**

8.      Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and NCB, including without limitation, any and all documents relating to all positions You held or hold within NCB.

**ANSWER:**

9.      Please provide all documents relating to Your role in the organization, funding, oversight, supervision, management, and/or control over NCB's operations, including without limitation, selection of committee/board members or other officers, establishment and maintenance of correspondent banking relationships, internal and external auditing or due diligence, budgeting, credit and loan activities, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and distribution of NCB financial and non-monetary support to charitable designees.

**ANSWER:**


10.     Please provide all documents relating to Your role in the oversight, supervision, management, and/or control over NCB's various committees, including without limitation, NCB's Zakat, Audit, and Shariah Committees.

**ANSWER:**


11.     Please provide all documents relating to Your supervision, management, control of, or distribution of NCB's funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from NCB and the purpose for such disbursements.

**ANSWER:**

12.     Please provide all documents relating to Your role in establishing and implementing an Islamic Banking Division within NCB, including without limitation, developing Islamic banking products for NCB, and designing and implementing training programs for NCB.

**ANSWER:**


13.     Please provide all documents relating to Your involvement in determining and/or recommending which charities, humanitarian organizations, or dawah organizations should receive financial and/or non-monetary support from NCB and the purpose for such disbursements.

**ANSWER:**


14.     Please provide all documents relating, in whole or in part, to Your involvement in the distribution of any funds through NCB to the Muwafaq Foundation, the International Islamic Relief Organization ("IIRO"), or the Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC").

**ANSWER:**


15.     Please provide all documents regarding the transfer of funds from any account in which You held a direct or beneficial interest, or over which You held signatory authority, to the Muwafaq Foundation, the IIRO, or the SJRC.

**ANSWER:**

16.     Please provide all documents relating, in whole or in part, to any audit, due diligence, analysis, examination, or review of any of NCB's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by You, the employees of NCB and/or NCB's Audit, Zakat and Shariah Committees, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.   Such documents shall include any audit, due diligence, analysis, examination, or review ordered, conducted, supervised, or overseen by You, the Kingdom of Saudi Arabia, and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**


17.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Muwafaq Foundation, including without limitation, all documents relating to all positions You held or hold within the Muwafaq Foundation.

**ANSWER:**


18.     Please provide all documents illustrating, describing, or otherwise relating to the Muwafaq Foundation's formation and organizational structure, the date of incorporation, the state of incorporation, the duration of its existence, any documents relating to its initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office).

**ANSWER:**

19.    Please provide all documents relating to Your role in the establishment, organization, funding, oversight, supervision, management, and/or control of the Muwafaq Foundation, including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

20.    Please provide all documents relating to Your supervision, management, control of, or distribution of the Muwafaq Foundation's funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from the Muwafaq Foundation and the purpose for such disbursements.

**ANSWER:**

21.    Please provide all documents relating to the administration, governance, and long-term strategic decision-making of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office), including but not limited to, articles of incorporation, by-laws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

**ANSWER:**

22.     Please provide all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards, and/or internal bodies of the Muwafaq Foundation.

**ANSWER:**

23.     Please provide all documents identifying each officer, director, trustee, shareholder, board member, and/or committee member of the Muwafaq Foundation (including any subsidiary, affiliate, or branch office).

**ANSWER:**

24.     Please provide all documents relating to any meetings of officers, directors, trustees, shareholders, managers, boards, committees, and/or internal bodies of the Muwafaq Foundation, including without limitation, any agendas or meeting minutes.

**ANSWER:**

25.     Please provide all documents relating to all accounts established or held in the name of, on behalf of, and/or for the benefit of the Muwafaq Foundation, any account for any entity in which the Muwafaq Foundation held any beneficial interest, and/or any account over

which the Muwafaq Foundation and/or its representatives (including but not limited to You, Chafiq Ayadi Bin Muhammad, Abdul Salam el Talla, and Abderrazak Arroum) had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Muwafaq Foundation and/or its representatives and the banking or financial institutions, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

26.     Please provide all documents relating to all accounts at Munich (Sparkasse) established or held in the name of, on behalf of, and/or for the benefit of the Muwafaq Foundation, including without limitation, Account Nos. 90-196185 and 90-198177. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Muwafaq Foundation and/or its representatives and Munich (Sparkasse), documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports,

21

account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

27.     Please provide all documents relating to all accounts at National Commercial Bank (NCB) established or held in the name of, on behalf of, and/or for the benefit of the Muwafaq Foundation, any account for any entity in which the Muwafaq Foundation held any beneficial interest, and/or any account over which the Muwafaq Foundation and/or its representatives had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Muwafaq Foundation and/or its representatives and NCB, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any

documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

28.     Please provide all documents relating to all accounts at Deutsche Bank established or held in the name of, on behalf of, and/or for the benefit of the Muwafaq Foundation, any account for any entity in which the Muwafaq Foundation held any beneficial interest, and/or any account over which the Muwafaq Foundation and/or its representatives had signatory authority or had any actual or potential beneficial interest. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among Muwafaq Foundation and/or its representatives and Deutsche Bank, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

29.     Please provide all documents relating to any accounts in any banking or financial institution You hold or held jointly with, or on behalf of the Muwafaq Foundation, and/or any Muwafaq Foundation accounts over which You hold or have held signatory authority.

**ANSWER:**

30.     Please provide all documents relating to any and all transfers from NCB accounts to the Muwafaq Foundation.

**ANSWER:**

31.     Please provide all documents relating, in whole or in part, to any audit, due diligence, analysis, examination, survey, or review of the Muwafaq Foundation's financial accounts, investments, assets, capital, and/or financial affairs, conducted either by You, the employees and/or representatives of the Muwafaq Foundation, NCB and/or NCB's Audit, Zakat and Shariah Committees, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, due diligence, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by You, the Kingdom of Saudi Arabia, and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

32.     Please provide all documents relating to any investigation, inquiry, review, audit, due diligence or analysis conducted by any United States Investigator, any Foreign Investigator, and/or any Saudi Investigator, which references or addresses any of the Muwafaq Foundation's banking and financial accounts, including any accounts held at NCB.

**ANSWER:**


33.     Please provide all documents relating to any transactions, financial or otherwise, between You and the Muwafaq Foundation, including without limitation, any such transactions between companies owned by You, and/or in which You hold or held an equity interest, and the Muwafaq Foundation.

**ANSWER:**


34.     Please provide all documents relating to the transfer of funds from any of Your accounts to the Muwafaq Foundation.  Such accounts shall include, but are not limited to, any banking and financial accounts You hold or have held at NCB (i.e., personal account, business account, or otherwise), any NCB accounts in which You hold or have held a beneficial interest, and/or any NCB accounts over which You hold or have held signatory authority.

**ANSWER:**

35.     Please provide all documents relating to any investigation, inquiry, review, audit, due diligence or analysis conducted by any United States Investigator, any Foreign Investigator, and/or any Saudi Investigator which references or addresses any alleged improprieties relating to the transfer of funds from any of Your accounts identified in Request Nos. 33-34 above.

**ANSWER:**

36.     Please provide all documents relating to the Pakistan government's investigation and March 21, 1995 raid of the Muwafaq Foundation's Islamabad branch office, including without limitation, all documents relating to the subsequent closure of that office.

**ANSWER:**

37.     Please provide all documents relating to the March 29, 1995 arrest of Amir Mehdi, Director of the Muwafaq Foundation's Islamabad, Pakistan branch office, by officials of the Federal Investigation Agency (FIA). Responsive documents shall include Mehdi's personnel or employment file and any records detailing or describing Mehdi's management or control over Muwafaq's operations, finances, and bank accounts.

**ANSWER:**

38.     Please provide all documents relating to the Albanian government's investigation and determination to expel Abdul Latif Saleh, Director of the Muwafaq Foundation's Albanian

branch office, on or about November 12, 1999. Responsive documents shall include Saleh's personnel or employment file and any records detailing or describing Saleh's management or control over Muwafaq's operations, finances, and bank accounts.

**ANSWER:**

39.     Please provide all documents relating to the Ethiopia government's investigation and determination to shut down the Muwafaq's Ethiopia branch office in or around 1995.

**ANSWER:**

40.     Please provide all documents relating to the Kingdom of Saudi Arabia's request that the Muwafaq Foundation cease operations, including without limitation, any documents regarding any related investigation conducted by the Kingdom of Saudi Arabia and/or members of the Saudi royal family.

**ANSWER:**

41.     Please provide all documents relating to the closure of all of the Muwafaq Foundation branch offices, including without limitation, any documents regarding any related investigation of those branch offices.

**ANSWER:**

42.     Please provide all documents relating to the disposition of all of the Muwafaq Foundation's accounts and assets held at any banking or financial institution following the Muwafaq Foundation's closure, including all branch offices.

**ANSWER:**

43.     Please provide all documents relating to any information or notification You and/or the Muwafaq Foundation received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal, corrupt or deviant activities; or (iii) any military or terrorist activity, plot, or attack.

**ANSWER:**

44.     Please provide all documents relating to any information or notification You and/or the Muwafaq Foundation received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation may have been or was engaging in conduct unrelated to the Muwafaq Foundation's ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists, persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaeda, other terrorist organizations, and/or individuals sympathetic to al Qaeda or other terrorist organizations, regardless of whether you believe such individual(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

45.     Please provide all documents relating to any information or notification You and/or the Muwafaq Foundation received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with the Muwafaq Foundation was associated with or involved in: (i) providing funds, services, assets, medical assistance, or any other form of support to mujahideen in any part of the World; or (ii) providing financial, logistical, religious, political, or any other form of assistance in relation to any armed jihad, regardless of whether such jihad was declared legitimate by competent religious authorities.

**ANSWER:**

46.     Please provide all documents You and/or the Muwafaq Foundation sent to, and/or received from, any third party relating to any accusation that the Muwafaq Foundation, including any individual or entity employed by and/or affiliated with the Muwafaq Foundation, was associated with or involved in any criminal, corrupt, deviant, or extremist activity, including without limitation any terrorist or radical religious, political, or social activities.

**ANSWER:**

47.     Please provide all documents You and/or the Muwafaq Foundation sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that the Muwafaq Foundation, including any individual or entity employed by and/or affiliated with the Muwafaq

Foundation, was associated with or involved in any criminal, corrupt, deviant, or extremist activity, including without limitation any terrorist or radical religious, political, or social activities.

**ANSWER:**


48.     Please provide all documents relating to any internal investigation conducted by You and/or the Muwafaq Foundation, relating to any accusation that the Muwafaq Foundation, including any individual or entity employed by and/or affiliated with the Muwafaq Foundation, was associated with or involved in any criminal, corrupt, deviant, or extremist activity, including without limitation any terrorist or radical religious, political, or social activities.

**ANSWER:**


49.     Please provide all documents relating to any action taken by You and/or the Muwafaq Foundation to prevent criminal activities, including the sponsorship of terrorists or radicals, by any individual or entity employed by and/or affiliated with the Muwafaq Foundation or any of its branch offices.

**ANSWER:**

50.     Please provide all documents relating to any action taken by You and/or the Muwafaq Foundation to remove or purge radical or corrupt elements or individuals from the Muwafaq Foundation's branch offices.

**ANSWER:**

51.     Please provide all documents relating to any disciplinary action taken by You and/or the Muwafaq Foundation, or any decision to terminate any relationship with any of the Muwafaq Foundation's subsidiaries, affiliates, branch offices, officers, directors, trustees, board members, committee members, managers, agents, employees, volunteers, and/or representatives, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

52.     Please provide all documents relating to any disciplinary action taken by You and/or the Muwafaq Foundation, or any decision to terminate any relationship with any of the Muwafaq Foundation's supporters, donors, contributors, facilitators, speakers, foreign government supporters, business supporters, or banks as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

53.     Please provide copies of all documents that have been seized by, or produced by You and/or the Muwafaq Foundation to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses the Muwafaq Foundation's alleged support for, or connections to, alleged terrorist organizations, groups, individuals, or activities.

**ANSWER:**


54.     Please provide all documents, statements, interviews, press releases, internal memos, or other materials relating to any accusation that the Muwafaq Foundation, or any individual or entity employed by and/or associated with the Muwafaq Foundation, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**


55.     Please provide all documents relating to any and all sanctions imposed upon the Muwafaq Foundation by the United States, Kingdom of Saudi Arabia, United Nations, or any other nation or international body.

**ANSWER:**

56.     Please produce all documents relating to any meetings, conferences, or gatherings You attended relating to any accusation that the Muwafaq Foundation, or any individual or entity employed by and/or associated with the Muwafaq Foundation, was misusing or misappropriating funds, engaging in criminal, corrupt, deviant, or extremist activities, sponsoring terrorist activities, and/or providing material support or resources to Osama bin Laden, al Qaeda and/or affiliated terrorist organizations.  Responsive documents shall include, but are not limited to, any materials relating to meetings with representatives of the Kingdom of Saudi Arabia, the Saudi royal family, the Muwafaq Foundation, and/or representatives from other foreign countries or international bodies.

**ANSWER:**

57.     Please provide all documents relating to any investigation or inquiry conducted by any United States Investigator, any Foreign Investigator, or any KSA Investigator, relating to You.

**ANSWER:**

58.     Please provide copies of all documents that have been seized by, or produced by You to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, concerning any investigation or inquiry relating to You.

**ANSWER:**

59.     Please provide all documents relating to the United States Treasury Department's investigation and October 12, 2001 Designation of You as a Specially Designated Global Terrorist ("SDGT") for providing financial, material, and other support to Osama bin Laden and al Qaeda.

**ANSWER:**


60.     Please provide all documents relating to the United Nations Security Council's al Qaida Sanctions Committee's investigation and determination to place You on the United Nations 1267 Sanctions List, including without limitation, all documents relating to the Kingdom of Saudi Arabia's approval of the actions undertaken by the United Nations Security Council.

**ANSWER:**


61.     Please provide all documents relating to the British government's investigation and determination to seize and/or freeze Your assets following the September 11, 2001 terrorist attacks.   Responsive materials shall include all documents identifying all of Your assets that were seized and/or frozen, including but not limited to, banking and financial accounts, businesses, properties, homes, vehicles, or otherwise.

**ANSWER:**


62.     Please provide all documents relating to the European Union's investigation and determination to seize and/or freeze Your assets following the September 11, 2001 terrorist

attacks.  Responsive materials shall include all documents identifying all of Your assets that were seized and/or frozen, including but not limited to, banking and financial accounts, businesses, properties, homes, vehicles, or otherwise.

**ANSWER:**

63.     Please provide all documents relating to the Swiss government's investigation and determination to seize and/or freeze Your assets following the September 11, 2001 terrorist attacks.  Responsive materials shall include all documents identifying all of Your assets that were seized and/or frozen, including but not limited to, banking and financial accounts, businesses, properties, homes, vehicles, or otherwise.

**ANSWER:**

64.     Please provide all documents relating to the government of Turkey's investigation and determination to seize and/or freeze Your assets following the September 11, 2001 terrorist attacks.  Responsive materials shall include all documents identifying all of Your assets that were seized and/or frozen, including but not limited to, banking and financial accounts, businesses, properties, homes, vehicles, or otherwise.

**ANSWER:**

65.     Please  provide  all  documents  relating  to  the  government  of  Albania's investigation and determination to seize and/or freeze Your assets following the September 11,

2001 terrorist attacks.  Responsive materials shall include all documents identifying all of Your assets that were seized and/or frozen, including but not limited to, banking and financial accounts, businesses, properties, homes, vehicles, or otherwise.

**ANSWER:**

66.    Please provide all documents relating to any investigation of You conducted by the Kingdom of Saudi Arabia, United States, United Nations, and/or any other nation or international body, including without limitation, any and all sanctions imposed upon You.

**ANSWER:**

67.    Please provide all documents to relating to the seizure and/or freezing of any and all accounts established or held in the name of, on behalf of, and/or for the benefit of You, any account for any entity in which You held any beneficial interest, and/or any account over which You had signatory authority or had any actual or potential beneficial, either by the Kingdom of Saudi Arabia and/or SAMA.   Responsive documents shall include all banking and financial records for those accounts, including bank statements.

**ANSWER:**

68.    Please provide all documents relating to any communication between You and the Kingdom of Saudi Arabia and/or any member of the Saudi royal family concerning the investigations identified in Request Nos. 57-67.

**ANSWER:**

69.     Please provide all documents or other information You gathered, reviewed, relied upon, used as evidence, submitted, or provided to and/or received from the United States Government relating to Your request for reconsideration of Your Designation as a Specially Designated Global Terrorist pursuant to the International Emergency Powers Act (50 U.S.C. § 1701 et seq.) and Executive Order 13224 (66 Fed. Reg. 49, 079 (September 23, 2001)), including, but not limited to, any and all information that formed the basis for Your December 21, 2001 petition to the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC").

**ANSWER:**


70.     Please provide all documents or other information You gathered, reviewed, relied upon, used as evidence, submitted, or provided to and/or received from the United States government, Timothy Geithner (in his capacity as the Secretary of the U.S. Department of the Treasury), Adam J. Szubin (in his capacity as Director of OFAC, the U.S. Department of the Treasury), OFAC, and/or any other party to the case captioned *Yassin Abdullah Kadi vs. Timothy Geithner, et al.*, Case No. 09-0108-JBD (U.S. District Court for the District of Columbia).

**ANSWER:**


71.     Please provide all documents or other information You gathered, reviewed, relied upon, used as evidence, submitted, or provided to and/or received from any foreign government or international body – including but not limited to the United Nations, European Union, United

Kingdom, Switzerland, Turkey, and Albania – relating to any investigation, legal proceeding, and/or sanctions against You for allegedly diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaeda, other terrorist organizations and/or individuals sympathetic to al Qaeda or other terrorist organizations.

**ANSWER:**

72.     From the period beginning January 1, 1988 through 1997, please provide all documents relating to any trips you took to Sudan.

**ANSWER:**

73.     From the period beginning January 1, 1988 through 2002, please provide all documents relating to any trips you took to Afghanistan.

**ANSWER:**

74.     From the period beginning January 1, 1988 through 2002, please provide all documents relating to any trips you took to Pakistan.

**ANSWER:**

75.     From the period beginning January 1, 1988 through 2002, please provide all documents relating to any trips you took to Turkey.

**ANSWER:**

76.     From the period beginning January 1, 1988 through 2002, please provide all documents relating to any trips you took to Albania.

**ANSWER:**

77.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Al Haramain Al Masjed Al Aqsa Charity Foundation ("AHAMAA"), including without limitation, any and all documents relating to all positions You held or hold within AHAMAA.

**ANSWER:**

78.     Please provide all document You sent to, and/or received from, AHAMAA, including without limitation, all documents relating to the transfer of funds between You and AHAMAA.

**ANSWER:**

79.     Please provide all documents relating to Your role in the establishment, organization, funding, oversight, supervision, management, and/or control of the AHAMAA,

including without limitation, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, and actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**


80.     Please provide all documents relating to Your supervision, management, control of, or distribution of the AHAMAA's funds, including without limitation, any and all documents relating to Your duties and responsibilities to determine and/or make recommendations as to which charities, individuals, or entities should receive financial and/or non-monetary support from the AHAMAA and the purpose for such disbursements.

**ANSWER:**


81.     Please provide all documents relating to the May 6, 2004 and June 28, 2004 Designations of the AHAMAA by the United States Treasury Department and United Nations respectively, for having significant financial ties to al Qaeda.

**ANSWER:**


82.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and Depozitna Banka D.D. and Vakufska Banka D.D. (collectively referred to hereinafter as the "Bosnian Banks").

**ANSWER:**

83.     Please provide all documents governing, describing, detailing, or otherwise relating to any business, employment, financial, charitable, religious, or other relationship between You and Chafiq Ayadi Bin Muhammad, including without limitation, all documents governing, describing, detailing, or otherwise relating to Chafiq Ayadi Bin Muhammad's relationship with the Muwafaq Foundation and the Bosnian Banks.

**ANSWER:**


84.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between the Bosnian Banks and the Muwafaq Foundation, the Al Haramain Al Masjed Al Aqsa Charity Foundation ("AHAMAA"), the Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"), the International Islamic Relief Organization ("IIRO"), the Saudi High Commission ("SHC"), and the Al Haramain Islamic Foundation, including any subsidiary, affiliate, or branch office thereof, (collectively referred to hereinafter as "Charity" or "Charities").

**ANSWER:**


85.     Please provide all documents relating to all accounts at the Bosnian Banks established or held in the name of, on behalf of, and/or for the benefit of the Charities, any account for any entity in which the Charities held any beneficial interest, and/or any account over which the Charities and/or their representatives had signatory authority or had any actual or potential beneficial interest.   Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect

communications between or among the Charities and/or their representatives and the Bosnian Banks, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

86.     Please provide all documents relating to any contributions by the Bosnian Banks to the Charities, including but not limited to, monetary donations (including any monetary donations of funds originating from haram investments or activities), zakat, gifts, grants, and/or other charitable contributions.  If the contribution was made by wire transfer, please provide records identifying the name of the individual who sent the money, the bank from which the money was sent, the wire transfer number, the recipient of the funds, the bank which received the wire transfer and the bank account numbers of the sender and receiver.

**ANSWER:**

87.     Please provide all documents relating to any form of non-monetary support or contribution provided by the Bosnian Banks to the Charities, including but not limited to, any

administrative assistance, any assistance in obtaining identification and credentials to facilitate international travel, and any physical and logistical assets.

**ANSWER:**

88.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between You and the Charities, including without limitation, any relationship between companies owned by You, and/or in which You hold or held an equity interest, and the Charities.

**ANSWER:**

89.     Please provide all documents relating to any transactions, financial or otherwise, between You and the Charities, including without limitation, any such transactions between companies owned by You, and/or in which You hold or held an equity interest, and the Charities.

**ANSWER:**

90.     Please provide all documents governing, describing, detailing, or otherwise relating to any business, employment, financial, charitable, religious, or other relationship between You and/or the Muwafaq Foundation and Osama Bin Laden (including any member of the Bin Laden family).

**ANSWER:**

91.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between and among You, any member of the Bin Laden family, and Global Diamond Resources.

**ANSWER:**

92.     Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You and/or the Muwafaq Foundation and the following entities:   Wadi al Aqiq Company, Ltd.; Al Hijrah Construction and Development, Ltd.; Taba Investment Company, Ltd.; Al Timar al Mubarikah; Gum Arabic Company; Bin Ladin International; Al Qudarat Transport Company; Blessed Fruits Company; Al Ikhlas International Company; Al Samal al Mubaraka Company; Dahabshil Hawala Company (collectively referred to hereinafter as the "Bin Laden Businesses").

**ANSWER:**

93.     Please provide all documents You and/or the Muwafaq Foundation sent to and/or received from Osama Bin Laden, any member of the Bin Laden family, and/or the Bin Laden Businesses, including without limitation, all documents relating to the transfer of funds between You and/or the Muwafaq Foundation and Osama Bin Laden, any member of the Bin Laden family, and/or the Sudan-based businesses.

**ANSWER:**

94.     Please provide all documents relating to any transactions, financial or otherwise, between You and the Bin Laden Businesses, including without limitation, any such transactions between any companies owned by You and/or in which You hold or held an equity interest, and the Bin Laden Businesses.

**ANSWER:**


95.     Please provide all documents governing, describing, detailing, or otherwise relating to any business, employment, financial, charitable, religious, or other relationship between You and/or the Muwafaq Foundation and Wa'el Hamza Jelaidan.

**ANSWER:**


96.     Please provide all documents You and/or the Muwafaq Foundation sent to and/or received from Wa'el Hamza Jelaidan, including without limitation, all documents relating to the transfer of funds between You and/or the Muwafaq Foundation and Wa'el Hamza Jelaidan.

**ANSWER:**


97.     Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You and/or the Muwafaq Foundation and the entities identified in Attachment A.  For any entities identified in Attachment A owned by You, and/or in which You hold or held an equity interest, please provide all ownership and financial records.

**ANSWER:**

98.     Please provide all documents You and/or the Muwafaq Foundation sent to, and/or received from, the entities identified in Attachment A, including without limitation, all documents relating to the transfer of funds between You and/or the Muwafaq Foundation and those entities.

**ANSWER:**


99.     Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You and/or the Muwafaq Foundation and the individuals identified in Attachment B.

**ANSWER:**


100.    Please provide all documents You and/or the Muwafaq Foundation sent to, and/or received from, the individuals identified in Attachment B, including without limitation, all documents relating to the transfer of funds between You and/or the Muwafaq Foundation and those individuals.

**ANSWER:**


101.    Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You and/or the Muwafaq Foundation and the organizations identified in Attachment C.

**ANSWER:**

102.    Please provide all documents You and/or the Muwafaq Foundation sent to, and/or received from, the organizations identified in Attachment C, including without limitation, all documents relating to the transfer of funds between You and/or the Muwafaq Foundation and those organizations.

**ANSWER:**


103.    Please provide all documents or other information You gathered, reviewed, relied upon, used as evidence, submitted, or provided to and/or received from any party to the case captioned *United States of America vs. One 1997 E35 Ford Van, et al.*, Case No. 98-3548-WRA (U.S. District Court for the Northern District of Illinois, Eastern Division).

**ANSWER:**


104.    Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You and BMI, Inc.

**ANSWER:**


105.    Please provide all documents relating to any transactions, financial or otherwise, between and among You, Kadi International, and BMI, Inc.

**ANSWER:**


106.    Please provide all documents governing, describing, detailing, or otherwise relating to any relationship between You, including any companies owned by You and/or in which You hold or held an equity interest, and Abdul Rahman al Swailem and the SJRC.

**ANSWER:**


107.    Please provide all documents You sent to, and/or received from, Abdul Rahman al Swailem and the SJRC, including without limitation, all documents relating to the transfer of funds between You and Abdul Rahman al Swailem and the SJRC.

**ANSWER:**


108.    Please provide all documents relating to any transactions, financial or otherwise, between You and Abdul Rahman al Swailem and the SJRC, including without limitation, any such transactions between any companies owned by You and/or in which You hold or held an equity interest, and Abdul Rahman al Swailem and the SJRC.

**ANSWER:**

109.    Please provide all documents relating to any non-monetary support or assistance You, including any companies owned by You and/or in which You hold or held an equity interest, provided to Abdul Rahman al Swailem and the SJRC.

**ANSWER:**


110.    Please provide all documents relating to any understanding or agreement with any defendant named in the consolidated civil action, 03 MDL 1570, whereby You have agreed to pay, indemnify, or reimburse any of their costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against such defendant.  Responsive documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**


111.    Please provide all documents relating to any understanding or agreement between You and any individual, entity, and/or government, whereby such party has agreed to pay, indemnify, or reimburse You for any of the costs associated with defending this lawsuit, including legal fees and/or payments to satisfy part or all of a judgment that may be entered in this action against You.  Responsive documents shall include, but are not limited to, contracts, agreements, insurance policies, term sheets, or other records.

**ANSWER:**

Dated: August 22, 2013                    Respectfully submitted,

_____

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Jurisdictional Requests for Production of Documents Directed to Yassin Abdullah al Kadi was served via electronic mail and U.S. first-class mail, postage prepaid, this 22nd day of August 2013, upon:

Amy Rothstein, Esq.
Doar Rieck Kaley & Mack
217 Broadway – Suite 707
New York, NY 10007-2911

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7102
(Defendants' Executive Committee's appointed representative to receive discovery requests and responses in 03-MDL-1570)

J. Scott Tarbutton, Esq.

51

## ATTACHMENT A

Abrar Global Asset Management
Abrar Group International SDN BHD
Abrar Investments, Inc.
Albanian International Investment and Development Co. (ALINTID)
Alintid
Al Shamal Islamic Bank
Arab Albanian Islamic Bank
Arkday, Ltd.
Bective, Ltd.
BIM Birlesik Magazalar AS
BMI, Inc. (a/k/a BMI Construction Fund Limited Partnership; BMI Finance & Investment; BMI
Leasing; BMI Limited Partnership; BMI Leasing Limited Partnership II, BMI Real Estate
Development, Inc.; and BMI Trade and Investment, Inc.)
Cavallo, Ltd.
Dar al Walidan School
Euroinvest (a/k/a Europe Invest)
Fourfinch, Ltd.
Foxhall, Ltd.
Global Diamond Resources, Inc.
Golden Marble
Grayson Group, Ltd.
Ilana Ltd.
Jeddah Holding Co. for Development
KA Stan
Kadi International, Inc.
Karavan (a/k/a Caravan Development Corporation, Ltd.; Caravan Company; Caravan Company
Limited; Caravan Construction and Development Company; Karavan/Caravan Development
Group, Ltd.; Caravan Foreign Trade and Construction, Ltd.; Caravan Foreign Trade Company;
Caravan Foreign Trade, Ltd.)
Leemount, Ltd.
Loks-Holl Co. (a/k/a Loxall; Lox Hall; Loxall SH PK)
M.M. Badkook Co. for Catering & Trading
Mahmal Investment Co.
Maram Co.
Medicare SH PK
Mercy International
Mohammed Bin Laden Co.
Muwafaq, Ltd.
Nash Developments, Ltd.
National Management Consultancy Center (NMCC)
New Diamond Holdings, Ltd.
Packetstream, Inc.
Perdana Investments
Ptech, Inc.

Quranic Literacy Institute (QLI)
Radnor Properties
Samel International
Sara Co., Ltd.
Sarmany, Ltd.
Saudi Bin Laden Group
Saudi National Consulting Center
Shifa International Hospitals, Ltd.
Solano, Ltd. (a/k/a Trident)
Sterling Packetstream Fund, LLC
Sterling Ptech Fund, LLC
Sub-Saharan International Development Organization
Worldwide Ltd.
Yasin al Kadi Establishment
Zarqa Educational Trust
Zarqa National University

**ATTACHMENT B**

Abdelatif Saleh
Abderrazak Arroume
Abdul Ghani Abdallah Al-Khariji
Abdulrahman Bin Mahfouz
Abdul Salam el Talla
Abu Ayman al Sudani
Abu Fadl al Makki
Abu Hammam al Saudi
Abu Unaith
Ahmad Zaki Hammad
Amir Mehdi
Amjad Awad
Amr Abd' al Wahab Selem al Zaini
Ansari Abdelahi
Aqeel al Aqeel
Dr. Ahmad Zaki Hammad
El Fatih Hassanein
Eman Shuha
Jamal al Fadl
M. Nedalghanim
Mahmoud A. Taiba
Mahmoud Mehdi
Mamdouh Mohammed Salim (a/k/a Abu Hajer)
Mohamed Ahmed bin Mahfouz
Mohamed Ali El Gari Bin Eid
Mohamed Loay Bayazid
Mohamed Mubayyid
Mohamed Salah (a/k/a Muhammad Salah; Abu Ahmed)
Mousa Mohamed Abu Marzook
Muhammad Ali Harrath
O.H. Jiffry
Osman el Haidar (a/k/a Abu Adel)
Rais Bin Mahfouz
Sahi Q. Qabbani
Saleh Sulafaldin Mohamed (a/k/a Tahir)
Sheikh Abdul Majid al Zindani
Siraj el Din Bari
Soliman al Buthe
Soliman Biheiri
Suheil Laher
Sulaiman al Ali
Talad Fuad Kassem
Talal M.M. Badkook
Tariq M. Swaidan
Walid Hafiz Mohamed Sheikh

# ATTACHMENT C

Abu Sayyaf Group (ASG)
Al Gama'at Al Islamiya
Al Iman University
Al Qaeda
Albanian Islamic Jihad (AIJ)
Asbat Al Ansar
HAMAS
Maktab al Khidmat (a/k/a the "Office of Services")
Muwafaq Brigade (Bosnia)
Revival of Islamic Heritage Society
Tunisian Islamic Front