# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

January 26, 2018

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      We write in response to defendant Jelaidan's "Status Report" filed on the docket as ECF No. 3884 on January 25, 2018, and request that the Court direct Mr. Jelaidan and his counsel, Martin McMahon, to make more formal and documented efforts to secure a license from the Office of Foreign Assets Control (OFAC). It is well over two years since the Court ordered Mr. Jelaidan to pay sanctions (ECF No. 3087, entered Oct. 28, 2015), and over the past several months, the efforts Mr. Jelaidan's counsel have made to comply with the Court's sanctions orders have principally consisted of leaving sporadic telephone messages with OFAC. We ask that the Court reiterate to Mr. Jelaidan that his efforts to satisfy the sanctions orders must by aggressively pursued, and must involve more than having someone leave occasional voicemail messages on OFAC's answering machine.

      The Court previously directed Mr. Jelaidan's counsel that he must be "aggressively pursuing" OFAC's approval of the licenses needed to satisfy the sanctions orders.[1] We understood that the

---

[1] During the May 25, 2017 telephone conference, Your Honor instructed Mr. McMahon as follows:

> I am going to order that you provide detailed status reports to me every 30 days, Mr. McMahon. . . . A detailed status report does not mean nothing has happened in the last 30 days. In every report I expect you to demonstrate to me the ways in which you have made efforts to move this along, even if it means that you are harassing whoever you're in touch with at OFAC. I expect you to be aggressively pursuing this, and I want a detailed report which has dates of contact and the form of communication so that I am satisfied that you are truly focusing on this issue.

Transcript of May 25, 2017 telephone conference, page 7, lines 6-16.

_____

Court intended to reiterate that obligation in each of its orders that directed Mr. Jelaidan to "communicate directly and proactively with OFAC" (*see, e.g.*, ECF No. 3636, 3660, 3728, 3772, 3809, 3846).

In the status report filed on November 27, 2017 (ECF No. 3807), Mr. Jelaidan reasonably expressed that it was unlikely that OFAC would respond to his inquiries in the period surrounding the Thanksgiving holiday. Consistent with that approach, the Court scheduled the due date for Mr. Jelaidan's report after the first of the year specifically "in light of the holiday schedule." *See* ECF No. 3809. Though plaintiffs agree with Mr. Jelaidan and the Court regarding the likelihood of receiving a response from OFAC during the holiday season, we were disappointed to see that his January 25 report mirrored the minimal efforts represented in his last several status reports.

Although Mr. Jelaidan's counsel, Martin McMahon, has indicated that he has made contact with several OFAC officials regarding his request, his efforts since identifying those OFAC contacts are not what we would characterize as "aggressive pursuit" of the indicated objective. In Mr. McMahon's reports from May through August 2017 (ECF Nos. 3594-1, 3635-1, 3651, and 3709-1), he identified two OFAC officials – Heather Epstein and Jae Ahn – with whom he had communicated regarding the long-standing application. But since those initial contacts months ago, Mr. McMahon's status reports reflect that, at least since August 2017, his only efforts have involved periodic telephone calls and voice messages to OFAC. Although the most recent report indicates that Ms. Epstein recently returned one of the calls, the report does not reflect any details about those calls or any aggressive effort during Ms. Epstein's return call to press her for information, or to convey to her the gravity of the present situation.

Plaintiffs suggest that the efforts to date do not come close to the "even if it means that you are harassing whoever you're in touch with at OFAC"-standard suggested during the May 25, 2017 conference. We would prefer Mr. McMahon to demonstrate more aggressive pursuit, including email, correspondence, and even personal visits to OFAC on a persistent basis. In addition to increasing the pressure on OFAC, more frequent formal communications have the additional benefit of creating an objective record of Mr. Jelaidan's and Mr. McMahon's efforts as well.

                                        Respectfully submitted,

MOTLEY RICE LLC                            COZEN O'CONNOR

By: /s/ *Robert T. Haefele*                  By: /s/ *Sean P. Carter*
    ROBERT T. HAEFELE                   SEAN P. CARTER
    For the Plaintiffs Exec. Committees        For the Plaintiffs Exec. Committees

cc:     The Honorable George B. Daniels, via ECF
        All Counsel of Record via ECF