## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br><br> ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978 (GBD) (SN)
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849 (GBD) (SN)
*Kathleen Ashton, et al v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977 (GBD) (SN)
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923 (GBD) (SN)
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970 (GBD) (SN)
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065 (GBD) (SN)
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279 (GBD) (SN)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF ORGANIZATION

Jerry S. Goldman, Esq.
Kanishka Agarwala, Esq.
Bruce Strong, Esq.
Nicholas Maxwell, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000

James P. Kreindler, Esq.
Steven R. Pounian, Esq.
Andrew J. Maloney, III, Esq.
Justin T. Green, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel: (212) 687-8181

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel: (843) 216-9000

*Attorneys for Plaintiffs*

Dated: January 26, 2018

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................ 1

I.     MWL-IIRO Failed to Challenge Plaintiffs' Factual Assertions. ....................................... 1

II.    The Court Should Reject the Excuses MWL-IIRO Have Offered for
       Failing to Comply with Their Discovery Obligations for Over Six Years. ........................ 4

       A.     The Willfulness of MWL-IIRO's Conduct Favors Heavy
              Sanctions. ........................................................................................................... 4

       B.     The Inefficacy of Lesser Sanctions Supports Imposing Severe
              Ones. .................................................................................................................. 6

       C.     MWL-IIRO's Non-Compliance Spanned Years. .................................................. 7

       D.     MWL-IIRO Was Specifically Warned About Sanctions. ..................................... 8

III.   The Court Must Award Cost/Fee-Shifting Sanctions in Favor of Plaintiffs. ..................... 8

IV.    Plaintiffs' Motion for Sanctions Is Timely. .................................................................. 9

CONCLUSION ...................................................................................................... 10

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agiwal v. HSBC Mortg. Corp.*,
    No. 09-cv-4795, 2010 U.S. Dist. LEXIS 118889 (E.D.N.Y. Nov. 4, 2010) ...........................5

*American Cash Card Corp. v. AT&T Corp.*,
    184 F.R.D. 521 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 354 (2d Cir. 2000) ......................................5

*In re Teligent, Inc.*,
    358 B.R. 45 (Bankr. S.D.N.Y. 2006) .........................................................................................9

*Mercy v. County of Suffolk, New York*,
    748 F.2d 52 (2d Cir. 1984) reversed ..........................................................................................9

*Nieves v. City of N.Y.*,
    208 F.R.D. 531 (S.D.N.Y. 2002) ...............................................................................................4

*Shamis v. Ambassador Factors Corp.*,
    34 F. Supp. 2d 879 (S.D.N.Y. 1999).........................................................................................10

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    274 F.R.D. 442 (E.D.N.Y. 2011) ...............................................................................................7

*United States v. Med. Grp. Research Assocs.*,
    586 F. App'x 823 (2d Cir. 2014) ...............................................................................................7

*United States v. $ 9,781.41 Formerly on Deposit at Man Fin., Inc.*,
    No. 07-cv-6224, 2009 U.S. Dist. LEXIS 51910 (S.D.N.Y. June 16, 2009) ..............................4

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(A) .............................................................................................................4, 9

Fed. R. Civ. P. 37(b)(2)(C) .........................................................................................................4, 8, 9

The Plaintiffs' Executive Committees ("PEC") submit this Reply in support of their request that the Court sanction defendants Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO") (collectively, "MWL-IIRO") for discovery misconduct.

MWL-IIRO does not dispute the key facts set forth in plaintiffs' opening brief; they do not challenge plaintiffs' depiction of the standard for imposing sanctions; and the excuses they offer for six years (2005-2011) of non-compliance with their discovery obligations were already rejected by Judge Maas and remain improper today. As such, the Court should award sanctions.

## ARGUMENT

### I.    MWL-IIRO Failed to Challenge Plaintiffs' Factual Assertions.

MWL-IIRO do not dispute the material facts set forth in plaintiffs' opening brief, that MWL-IIRO: (1) first received targeted document requests in 2005; (2) repeatedly misrepresented to plaintiffs and the Court starting in 2006 that they possessed "no" documents responsive to numerous categories of document requests but then produced documents in 2013-2017 responsive to those same requests; (3) "recycled" documents on numerous occasions; (4) misrepresented to the Court and plaintiffs about not having a computer system to search for responsive documents; (5) misrepresented to the Court and plaintiffs about having produced all responsive documents in 2011 when at least half-a-million pages of documents had not been produced; and (6) disregarded multiple Court orders.

Instead, they submit two declarations from MWL-IIRO employees, Ammar Chaouat (IIRO) and Mohamed Fawzi (MWL), to justify their non-compliance. But these affidavits actually support plaintiffs' allegations either because they directly contradict statements previously made to plaintiffs and the Court between 2006 and 2011, or because they omit key pieces of information that would have logically been included if they helped MWL-IIRO's case.

As to contradictions, Mr. Chaouat first confirms that IIRO had not one, but two ways of electronically storing information.  Chaouat Decl. at ¶¶ 1, 36, 38.  But as discussed in ST Ex. 3, at p. 13, Mr. McMahon previously represented to the Court and to plaintiffs that they had none.[1] Second, both declarations admit that certain MWL-IIRO branch offices exist, Chaouat Decl. at pp. 11-13, Fawzi Decl. at pp. 7-8, whereas MWL-IIRO had previously represented that these branch offices did not exist and no documents would be produced from them.  Third, the declarations concede that after 2004 (*i.e.* before the start of discovery) there was a "uniform global document storage and organization protocol applicable to the branch offices."  Fawzi Decl., at ¶ 26; Chaouat Decl. at ¶ 41; JSG Ex. 2 at pp. 11-20.  Yet, Mr. McMahon previously represented that no such organization existed.  JSG Ex. 3, at p. 11, 12, 14 (Mr. McMahon denying that branch offices reported back to headquarters and contending that producing documents from branch offices "is an unduly burdensome task" and "would require an overwhelming effort").  Fourth Ms. Bembry admits that IIRO had an internal legal department employing three (3) foreign attorneys, which directly contradicts IIRO's purported ignorance of the requirements of international litigation.[2]  Bembry Decl. at ¶ 2.

The material omissions from Mr. Chaouat's and Mr. Fawzi's declarations are even more telling.  For example, MWL-IIRO contend that there can be no inference of bad faith in MWL-IIRO recycling thousands of pages of documents from previous productions right before

---

[1] Further, Plaintiffs already presented to the Court evidence detailing the computer systems that both MWL and IIRO possessed from as far back as the 1980s. *See* ST Ex. 2, at pp. 16-19.

[2] With regard to MWL, an organization with about 30 international offices, one has to wonder how MWL, with a purportedly ancient document storage system and no internal legal team, hired the same counsel as IIRO and other Saudi defendants, coordinated discovery with IIRO, recognized simultaneously with IIRO that Mr. McMahon could not manage this litigation, but that Lewis Baach "would be capable of representing MWL's interest due to their history in the Kingdom."  Fawzi Decl., at ¶ 17.  If the Court finds that IIRO has experience with litigation, it should reach the same conclusion about MWL.

discovery conferences, but Mr. Chaouat's and Mr. Fawzi's declarations fail to provide an alternative explanation even though this would be a logical defense to plaintiffs' allegations.

Second, MWL-IIRO failed to supply an affidavit from their *still-current* attorney, Mr. McMahon, about the efforts taken to ensure discovery compliance between 2005 and 2011, including an explanation as to why he could not visit MWL headquarters. *See* Fawzi Decl. ¶ 14.

Third, both Mr. Chaouat and Mr. Fawzi state that "since the inception of the litigation" they "have worked with defense counsel to locate documents." Fawzi Decl., at ¶¶ 9, 11; Chaouat Decl., at ¶¶ 6, 8. Missing from this vague, self-serving statement is precisely *when* and *how* these individuals and others helped facilitate the collection of documents between 2006 and 2011. What did these individuals do to "manage the process of locating responsive documents"? Fawzi Decl., at ¶ 15; Chaouat Decl., at ¶ 20. Their declarations are glaringly silent on this point. In contrast, both declarations are much more specific after 2012 when new counsel was retained and detail that letters were sent to branch offices, banks, and auditors.

One would think that in the face of a sanctions motion regarding the conduct that took place between 2005 and 2011, with the potential for an award of substantial costs and attorneys' fees, MWL-IIRO would have done more to demonstrate the supposedly good-faith efforts they took during that time to comply with their discovery obligations. Mr. Chaouat makes one passing attempt to do this, claiming IIRO spent about 10,000 hours between 2005 and 2011 gathering documents.[3] Chaouat Decl., at ¶ 13. Even assuming this number is accurate, over six (6) years, 10,000 hours amounts to less than one full-time employee attempting to gather documents from 45 offices. Further, Mr. Chaouat admits that "no less than 5,000 hours" (over

---

[3] Mr. Fawzi does not estimate the amount of time MWL spent gathering documents despite the likelihood that Lewis Baach asked MWL and IIRO representatives this same question. Presumably Lewis Baach did not like the answer MWL's representative gave and therefore chose to include only IIRO's time estimate.

half the time) was spent creating two indices, with no input from plaintiffs (and his declaration obscures *who* instructed Mr. Chaouat to create the indices and *why*).  Chaouat Decl., at ¶ 15.  As previously discussed in JSG Ex. 3, at p. 21, plaintiffs did not request these indices, which were produced just prior to a discovery hearing to give the false appearance of discovery compliance.

In short, MWL-IIRO has failed to rebut Plaintiffs' factual allegations.  Rather, MWL-IIRO's new declarations further support a sanctions award.

## II.     The Court Should Reject the Excuses MWL-IIRO Have Offered for Failing to Comply with Their Discovery Obligations for Over Six Years.

The Court may award sanctions under Fed. R. Civ. P. 37(b)(2)(A) based on "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his non-compliance."  *Nieves v. City of N.Y.*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002).  In addition, "the court <u>must</u> order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure" to comply with discovery obligations, unless the failure was substantially justified or other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  Under either of these standards, sanctions are warranted.

### A.     The Willfulness of MWL-IIRO's Conduct Favors Heavy Sanctions.

MWL-IIRO claim their failure to comply with their discovery obligations is excusable because it was the result of "miscommunications" with counsel and "unfamiliarity" with U.S. litigation.  They are wrong.

First, alleged "miscommunications" and "unfamiliarity" are not valid excuses for ignoring discovery obligations.  *United States v. $ 9,781.41 Formerly on Deposit at Man Fin., Inc.*, No. 07-cv-6224, 2009 U.S. Dist. LEXIS 51910, at *13 & n.3 (S.D.N.Y. June 16, 2009)

4

(lack of familiarity with U.S. courts or English language not a valid excuse); *Agiwal v. HSBC Mortg. Corp.*, No. 09-cv-4795, 2010 U.S. Dist. LEXIS 118889, at *20 (E.D.N.Y. Nov. 4, 2010) (imposing sanctions notwithstanding party's purported unfamiliarity with English language).

Second, even if these excuses were valid, courts still regularly sanction parties for misconduct that is not "willful" but merely grossly negligent. *E.g.*, *American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999) (party's "failure to comply with the Court's numerous discovery orders was at least grossly negligent, and gross negligence may provide a basis for holding a noncompliant party in default."), *aff'd*, 210 F.3d 354 (2d Cir. 2000).

Third, even if these were valid excuses, it is not factually what happened. Specifically, MWL-IIRO have English-speakers on staff as evidenced by their many English publications and plaintiffs' own dialogue in 2011 (in English) with Sameer al Radhi, MWL-IIRO's designee to assist in discovery; they knowingly chose to hire a U.S. attorney who spoke no Arabic and failed to hire Arabic-speaking staff even though they could not effectively communicate; and they have familiarity with the U.S. legal system as evidenced by their attempts to get de-listed from the designated terrorism sponsor list, their involvement in multiple Federal litigations in connection with 9/11 and other incidents, and the sheer unlikelihood of two organizations that have over 75 offices worldwide know nothing about foreign litigation.[4] Indeed, IIRO has an internal legal department with three (3) foreign attorneys (and perhaps other non-foreign attorneys). Bembry Decl. at ¶ 2. The notion that MWL-IIRO are unfamiliar with litigation or English is just absurd.[5]

---

[4] *See* Muhammad Ibrahim, *IIRO wants UN to remove it from terror list*, Arab News, dated Jan. 9, 2010, *available at* http://www.arabnews.com/node/332441; *see also* JSG Ex. 2; JSG Ex. 3.

[5] MWL-IIRO urge the Court to credit them with complying with their discovery obligations by allowing plaintiffs' counsel to come to Saudi Arabia to view documents. As discussed in JSG Ex. 3, at pp. 14-15, ST Ex. 1 at Ex. B, ST Ex. 2 at p. 5, ST Ex. 2, Ex. C, at p.11 and elsewhere, MWL-IIRO cannot unilaterally transfer their discovery obligations onto plaintiffs, especially under these circumstances.

Finally, "miscommunication" and "unfamiliarity" with litigation do not explain recycling thousands of documents and including them in multiple productions, nor does it explain lying to plaintiffs about possessing electronic storage systems; nor does it explain lying to the Court or to plaintiffs that their document productions were complete when in fact they still had over 500K additional pages of documents responsive to plaintiffs' requests.

### B.   The Inefficacy of Lesser Sanctions Supports Imposing Severe Ones.

MWL-IIRO make the quizzical argument that because they started meaningfully engaging in the discovery process *after* Judge Maas ruled that sanctions were "appropriate" but before any such sanctions were imposed, that obviates the need to actually impose sanctions for six years of discovery malfeasance.  As an initial matter, Judge Maas already ruled that sanctions were appropriate in 2011.  At that time, he specifically stated that plaintiffs could seek costs and fees incurred as a result of MWL-IIRO's non-compliance but did not want to impose case-dispositive sanctions at least until plaintiffs had deposed a document custodian for MWL-IIRO. In an effort to persuade plaintiffs to refrain from undertaking the few additional steps necessary to secure case dispositive sanctions, MWL-IIRO hired new counsel and committed to bringing themselves into scrupulous compliance.  While this reduces the possibility of *case-dispositive* sanctions going forward, it does not change the fact that MWL-IIRO should still be severely sanctioned for their subterfuge that caused plaintiffs to incur substantial costs and fees.  Indeed, when plaintiffs agreed to allow new counsel to work to bring MWL-IIRO into compliance, plaintiffs expressly reserved the right to seek sanctions for prior misconduct. JSG Ex. 15, at p. 5.

Second, MWL-IIRO's argument ignores that this case is ongoing.  The Court will likely issue orders regarding depositions or in response to motions to compel.  If the Court rules now that the "threat" of sanctions without actually imposing them is enough of a deterrent, that will

encourage future discovery violations and otherwise thwart the orderly resolution of this case. *See State Farm Mut. Auto. Ins. Co. v. Grafman*, 274 F.R.D. 442, 450 & n.13 (E.D.N.Y. 2011) (default sanction, not just threat of sanctions or minor sanction necessary where party "failed to abide by the orders of this court at every stage of the nearly seven years of litigation").

Third, plaintiffs incurred massive costs in (1) seeking Court intervention, multiple times, to remedy MWL-IIRO's discovery violations; (2) hiring consultants to prove that MWL-IIRO were lying about the completeness of their document productions; (3) translating recycled Arabic documents; (4) translating irrelevant documents plaintiffs did not request; and (5) meeting and conferring by phone and in person, multiple times, to address ongoing discovery non-compliance.  Any sanction imposed against MWL-IIRO must, at least, compensate plaintiffs for these costs and expenses incurred directly as a result of MWL-IIRO's misconduct.  Any lesser sanctions would not be efficacious.

### C.    MWL-IIRO's Non-Compliance Spanned Years.

For purposes of imposing sanctions, the period of non-compliance starts from when discovery requests are first served and a party fails to meaningfully respond.  *E.g.*, *United States v. Med. Grp. Research Assocs.*, 586 F. App'x 823, 825 (2d Cir. 2014).  Nevertheless MWL-IIRO wrongly argue that their "period of non-compliance spanned at most a period of a few months." Opp. at p. 13.  But this argument ignores that the clock started in 2006 when MWL-IIRO's initial responses contained numerous misrepresentations that "no" documents existed for categories of documents when subsequent productions revealed that thousands of documents in fact existed.[6]

---

[6] MWL-IIRO claim that plaintiffs "misleadingly cite to Defendants' production indices" with regard to documents about Osama bin Laden.  *See* Opp. at p. 11 n.13.  MWL-IIRO's document responses stated that **no documents exist** regarding the Taliban, Osama bin Laden, or his family.  *See* Opening Brief, at pp. 11-12.  But the MWL-IIRO production indices include documents responsive to these requests.

7

### D.      MWL-IIRO Was Specifically Warned About Sanctions.

MWL-IIRO concede that Judge Maas warned them about case-dispositive and cost/fee-shifting sanctions.  *See* Opp. at p. 13.  But then MWL-IIRO argue, without citation, that this factor "should be given little weight" because MWL-IIRO ultimately started trying to comply with their discovery obligations.  But that is precisely why the Court should award sanctions.  It was not until the Court ruled that sanctions were appropriate but deferred imposing *case-dispositive* sanctions that MWL-IIRO began taking their obligations seriously.  Accordingly, a substantial monetary sanction for their prior malfeasance is appropriate here.[7]

## III.    The Court **Must** Award Cost/Fee-Shifting Sanctions in Favor of Plaintiffs.

MWL-IIRO concede that cost shifting under Fed. R. Civ. P. 37(b)(2)(C) is mandatory.  *See* Opp. at pp. 15-16.  MWL-IIRO nevertheless argue that their six-year non-compliance was "substantially justified" because (1) a "genuine dispute" existed in 2011 to narrow areas of disagreement, including whether 12,000 pages of additional documents could remedy MWL-IIRO's severe discovery violations and the efficacy of the initial indices IIRO had provided and (2) plaintiffs' motions to compel were only granted "in part."  These arguments lack merit.

First, no "genuine dispute" existed about MWL-IIRO's discovery compliance between 2005 and 2011.  For example, in 2011, Mr. McMahon represented to the Court multiple times that "we have produced everything that was called for in terms of the 8 categories for both MWL

---

[7] Sanctions would also serve a purpose. First, MWL-IIRO ignored their discovery obligations and numerous Court orders until Judge Maas found that sanctions were appropriate. Second, MWL-IIRO have withheld documents vital to plaintiffs' claims, and in doing so, compelled plaintiffs and the Court to waste time and resources and prejudiced plaintiffs' case against other defendants. MWL-IIRO's claim that they eventually had to spend money to comply with their discovery obligations ignores that they should have incurred these costs from day one. Third, sanctions will deter future non-compliance. The parties are still engaged in discovery and expensive foreign depositions will begin soon. Imposing meaningful sanctions here could materially improve and expedite discovery going forward.

and IIRO-SA … that is our position that we have complied"; that "[i]t's our position that we produced everything now, albeit late."; and that "Yes, Your Honor.  To reiterate, we believe we have produced everything."  JSG Ex. 9, at p. 10, 11, 13.  But MWL-IIRO's later production of over 500K additional pages of documents demonstrates that no "genuine" dispute existed in 2011.  Similarly, the 12,000 pages of documents produced in 2011 on the eve of a discovery conference (along with Mr. McMahon's assurances that all documents had been produced) mislead plaintiffs and the Court into believing there was discovery compliance when in fact MWL-IIRO had at least half-a-million pages of documents they failed to produce.

Second, plaintiffs substantially prevailed in their motions to compel.  The Court ordered MWL-IIRO to produce multiple categories of documents and the Court endorsed plaintiffs' request to seek sanctions.  *See* JSG Ex. 7; ST Ex. 6; JSG Ex. 8; ST Ex. 7.  MWL-IIRO have not met their burden that their actions were substantially justified.

## IV.     Plaintiffs' Motion for Sanctions Is Timely.

MWL-IIRO concede that Rule 37 contains no time limit for a party to seek sanctions. Further, the Court expressly authorized plaintiffs to seek sanctions.  *See* JSG Ex. 10, at p. 31; ST Ex. 9; JSG Ex. 11, at pp. 25-26.  Throughout the meet and confer process with current counsel, plaintiffs made clear that they would seek sanctions for prior discovery violations and MWL-IIRO never conditioned further productions on any waiver of that right.  JSG Ex. 15, at p. 5.  As such, MWL-IIRO cannot meet their burden that plaintiffs waived the right to pursue sanctions.

The cases MWL-IIRO cite are easily distinguishable.  First, *Mercy v. County of Suffolk, New York*, 748 F.2d 52, 55 (2d Cir. 1984) reversed the district court's denial of sanctions, specifically finding they were not waived notwithstanding the passage of time.  In *In re Teligent, Inc.*, 358 B.R. 45, 59 (Bankr. S.D.N.Y. 2006), the court disallowed sanctions as untimely when

the full extent of the other party's violations were known three years earlier, discovery had closed two years earlier, and the plaintiff had sat in silence for years before bringing the sanctions motion. *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999) actually helps plaintiffs.  There, the court held that a sanctions motion was timely even though the issues had never before been raised because the motion was not brought "well after the close of discovery . . . nor after the start of trial . . . but soon after the close of discovery." *Id.* Here, discovery has not ended, and MWL-IIRO just recently completed their document productions that confirmed the scope of their prior misrepresentations.  Further, plaintiffs put MWL-IIRO on notice that they would seek sanctions and the Court expressly authorized plaintiffs to do so.

Buried in a footnote, MWL-IIRO wrongly dismiss plaintiffs' explanations for waiting to move for sanctions.  Opp. at p. 8.  First, the Court should not "disregard" MWL-IIRO's recent document productions as evidence that their prior representations to the Court about the completeness of their productions were false.  Second, plaintiffs used the indices that MWL-IIRO provided in recent productions to support their sanctions motion, so an early sanctions motion may have "chilled" defendants from providing them.  Third, MWL-IIRO's discovery non-compliance had lingering long-term effects on this case that have affected the compensation plaintiffs intend to seek.  Fourth, MWL-IIRO were not prejudiced by the delay, and cannot offer a single example of how they were prejudiced.  Indeed, MWL-IIRO were on notice that plaintiffs would seek sanctions.

## CONCLUSION

For all of the forgoing reasons, plaintiffs request that the Court sanction MWL-IIRO.

Dated:  January 26, 2018

Respectfully submitted,

10

*/s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.
Kanishka Agarwala, Esq.
Bruce Strong, Esq.
Nicholas Maxwell, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
Steven R. Pounian, Esq.
Justin T. Green, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

*Attorneys for Plaintiffs*

11

## <u>CONSOLIDATED CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of plaintiffs' Reply Memorandum of Law in Support of plaintiffs' Motion for Sanctions Against Defendants Muslim World League and International Islamic Relief Organization, was filed electronically this 26th day of January, 2018.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

*/s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.