**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO COMPEL DEFENDANTS MUSLIM WORLD LEAGUE AND INTERNATIONAL ISLAMIC RELIEF ORGANIZATION TO PRODUCE RESPONSIVE DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a)**

January 26, 2018

**TABLE OF CONTENTS**

Page

I. MWL-IIRO EGREGIOUSLY MISCHARACTERIZES PLAINTIFFS' ROLE IN DISCOVERY .................................................................................................. 1

II. MWL-IIRO HIGH-LEVEL STRATEGIC POLICIES AND DECISION-MAKING ............................................................................................................................. 2

III. MWL-IIRO AUDITS AND FINANCIAL RECORDS ....................................................... 4

IV. MWL-IIRO BRANCH OFFICE RECORDS ..................................................................... 6

V. MWL-IIRO BANKING RECORDS .................................................................................. 9

VI. RABITA TRUST AND AL HARAMAIN AL MASJED AL AQSA ............................. 10

VII. EL FATIH HASSANEIN AND SUKARNO HASSANEIN .......................................... 10

VIII. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) .................................................................................................5

*Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*,
   201 F.R.D. 33 (D. Mass. 2001) ....................................................................................................5

*De Vos v. Lee*,
   2008 U.S. Dist. Lexis 58817 (E.D.N.Y. 2008) ............................................................................5

*MPG Ingredients, Inc. v. Mars, Inc.*,
   2007 U.S. Dist. Lexis 83594 (D. Kan. 2007) ..............................................................................5

**Other Authorities**

Fed. R. Civ. P. 37 ........................................................................................................................10

**I.      MWL-IIRO EGREGIOUSLY MISCHARACTERIZES PLAINTIFFS' ROLE IN DISCOVERY**

In their Opposition brief at 2-3 (ECF No. 3875) ("Opp."), MWL-IIRO intimates, wrongly, that plaintiffs have resisted meet and confers. In truth, plaintiffs have engaged in many hours of meet and confers over the course of the drawn-out discovery disputes with MWL-IIRO, and provided numerous written communications aimed at identifying deficiencies and crystalizing the disputes. That extensive meet and confer process was described in plaintiffs' Memorandum of Law in Support of their Motion to Compel at 1-2 (ECF No. 3828), and surveyed during the October 20, 2016 conference with the Court, a description that was not disputed by defendants.[1]

Having sought over many years to bring MWL-IIRO into compliance with their discovery obligations and repeatedly identified areas of non-compliance, plaintiffs reasonably awaited the August 15, 2017 discovery deadline to determine whether MWL-IIRO had finally produced all documents responsive to the pre-existing directions from this Court, plaintiffs' document requests, and the particular areas of focus identified in the multiple meet and confers, and related letters. The multiple meet and confers apparently influenced defendants substantially, as indicated by the fact that they collectively produced over 113,000 pages of documents in the eight months before the August 2017 discovery deadline.[2] But once the final document production deadline passed, plaintiffs had to translate and analyze the documents and file a motion to compel by the deadline set by the Court.

Defendants' arguments suggest an obligation on plaintiffs to reiterate past deficiencies repeatedly despite their failure to be addressed, and ignore the fact that MWL-IIRO had already

---

[1] *See* Tr. of 10/20/2016 conference, 43:15-22.
[2] The MWL produced nearly half of its entire production (over 54,000 pages) in the final three months of document discovery.

been given more than a decade to comply with discovery demands, court orders, and deficiency letters. Even more fundamentally, MWL-IIRO's misguided arguments about the sufficiency of the meet and confer process also ignore that plaintiffs specifically raised the precise deficiencies that are presented in plaintiffs' motion to compel on numerous occasions during that process. After affording defendants a decade of meeting and conferring, to be told that was not sufficient patience is an egregious mischaracterization of the parties' roles in the dispute.

## II.   MWL-IIRO HIGH-LEVEL STRATEGIC POLICIES AND DECISION-MAKING

Plaintiffs have alleged and proffered evidence that MWL-IIRO were key components of a global apparatus established, funded, directed, and controlled by the government of Saudi Arabia to propagate an extremist and pro-jihadist ideology worldwide, and that MWL-IIRO embraced broad partnerships with al Qaeda to advance that agenda. Plaintiffs also alleged that defendants' collaborations with al Qaeda and pro-jihadi activities were programmatic, systematic, and executed under the direction of senior officials of MWL-IIRO (as evidenced by the sheer scope and duration of those collaborations, which extended to branch offices globally).[3] Meanwhile, MWL-IIRO have expressed their intent to argue that wholesale diversions of funds and fabrication of projects to conceal those diversions (such as those described in the Ernst & Young audit of the IIRO's Pakistan office), and other activities in support of terrorism were the product of unauthorized initiatives of rogue employees.

Given the nature of plaintiffs' claims against MWL-IIRO and the defenses MWL-IIRO intend to advance to respond to those claims, the discovery documents about the high-level strategic policies and decision-making of MWL-IIRO, and the relationship with (and role of) the Saudi government in setting and directing those policies, are singularly relevant to the claims and

---

[3] U.S. Department of State diplomatic cables identify the IIRO as "the principal sponsor of terrorism training camps in Afghanistan during the Taliban regime" and indicate that "Usama bin Ladin used the entire IIRO network for his terrorist activities." *See* Exs. 1 and 2.

2

defenses in issue. Among other matters, these documents are directly relevant to establishing MWL-IIRO's ideological alignment with al Qaeda; the policies and strategic objectives that motivated and produced the organizations' collaborations with al Qaeda; the involvement of senior officials in directing those activities; the organizations' specific awareness of the terrorist activities occurring in branch offices throughout the world; and the implausibility of the defendants' "rogue employee" defense.

Given the singular importance of these documents, Judge Maas long ago directed MWL-IIRO to produce <u>all</u> documents relating to the MWL Constituent Council and any other Special Committees of MWL-IIRO; documents describing the organizational structure of the MWL and IIRO (so that plaintiffs could identify all relevant policymaking components); any reports describing the "objectives" of MWL-IIRO; and documents pertaining to any level delegations sent by MWL-IIRO to assess conditions and needs outside of Saudi Arabia. Further, when new counsel entered the case for MWL-IIRO, plaintiffs emphasized that the production of documents relating to the relationships between MWL-IIRO and the Saudi government, and pertaining to the activities of high level decision-making and policy bodies of MWL-IIRO, needed to be a priority in any effort to bring MWL-IIRO into compliance with their discovery obligations. And when the Second Circuit remanded the charity officials for discovery concerning their roles in directing the activities of MWL-IIRO, plaintiffs served supplemental discovery requests for records relating to their roles in the organizations.

Defendants have produced remarkably few responsive documents in these areas.[4] Most of the documents received from MWL-IIRO deal with low-level events and activities on the ground and in certain offices. However, a smattering of documents reflect that MWL-IIRO senior officials engage in extensive and systematic contacts with senior Saudi government

---

[4] *See* Ex. 3 (detailing contacts between MWL-IIRO and Saudi Arabia's embassies in Pakistan and Afghanistan).

officials concerning the organizations' activities, including the Saudi King and his advisors.[5] This has been the exact focus of the jurisdictional discovery with the charity officials,[6] but they have similarly refused to turn over relevant records.[7] By way of further example, MWL-IIRO continues to resist producing responsive documentation concerning the MWL Fiqh Council, a body comprised of the MWL Secretary General and other senior members of the MWL that has issued fatwas encouraging "armed Jihad" against the "enemies of [Islam]." Documents relating to the Fiqh Council's membership, meetings, policies and strategic objectives, and fatwas are highly relevant and should be immediately produced in their entirety, just as other documents of this nature should be produced.

### III.   MWL-IIRO AUDITS AND FINANCIAL RECORDS

The defendants' try to avoid the production of relevant financial records by mischaracterizing Judge Maas' 2011 orders relating to the production of auditing materials in the possession of the MWL and IIRO. *Compare* Opp. at 7, n.14 (mischaracterizing Judge Maas's earlier orders as compelling production of only audits, not the underlying working papers and financial documents supporting those audits) *with* Plt's Ex. 11 at 17-19 (ECF No. 3826-86) (MWL/IIRO counsel acknowledging the Court's direction to produce the audits *all documents underlying the audits*) and Plts' Ex. 10 at 30 (ECF No. 3826-85) (Judge Maas explained to counsel for the MWL and IIRO that plaintiffs "want the underlying documents."). Judge Maas

---

[5] *See e.g.*, MWL056784, MWL051698, MWLIIRO016233-16237, MWLIIRO016243-16246, MWLIIRO016277-16290, IIRO0338581-338588, IIRO0278760, MWL039323-39324, MWL069959-699630, MWL069970, MWL069984, MWL069986, IIRO280522, and MWL059176.

[6] Contrary to the defendants' assertion that their document archives lack uniform organization, Fawzi Decl. at 2, the cataloguing, archiving, storage, and retrieval of files are an essential aspect of their operations. Plts' Ex. 2 at 16 (ECF No. 3826-77). Indeed, the MWL Secretary General has a "special" or "private" office (MWL005500) that is located within his chambers and contains a separate filing system managed by a separate office manager. There is also a "secret" office (MWL002501) under the supervision of the Secretary General. Producing relevant records from these depositories that relate to the activities of the senior officials and high level decision-making and policy bodies of the MWL-IIRO should not be a difficult task.

[7] Plaintiffs filed a Motion for Sanctions against the charity officials for their failure to comply with the Court's discovery orders of March 22, 2016 and September 8, 2017 directing them to produce certain documents (ECF Nos. 3748-3750). That motion has been fully briefed as of October 27, 2017 (ECF Nos. 3770-371).

4

could not have been more explicit at the November 16, 2011 discovery conference when he ordered MWL/IIRO to produce *both* audits and the underlying financial data:

> The Court:  Talk for a moment about audits.  It seems to me the *defendants will not have done their job as to audits unless they have searched their own records to make sure that if they have retained copies of audit reports and the documents that underlie the audit reports* – I guess the first of those is more likely than the second – *that that be produced*.  Saying, well, we'll contact the auditor and see whether they will give it to us if a copy of the audit report is sitting in IIRO's office doesn't cut it, as far as I'm concerned.
>
> Mr. McMahon:  I hear your Honor.  *You want any and all records produced that are still in the possession or control of the charities that in any way supported the audit*.
>
> The Court:  *Or that are the audit, yes*.
>
> Mr. McMahon:  Ok.

*See* Plt's Ex. 11 at 17-19 (ECF No. 3826-86).  (Emphasis added).  *See also* Plts' Ex. 10 at 30 (ECF No. 3826-85) (Judge Maas explained to counsel for MWL-IIRO that plaintiffs "want the underlying documents.").

Just as troubling, MWL-IIRO's claim that they are unable to obtain the underlying financial records (their own documents) from their auditors, Opp. at 8, is the same recycled, disingenuous argument they attempted to advance in 2011, but that was soundly rejected by Judge Maas.  Indeed, the defendants' claim cannot be reconciled with well-established case law holding that a party has control over financial documents in the possession of his or her accountant,[8] or with this Court's previous directions, for example, to defendant Wa'el Jelaidan, to produce documents in the custody of his banks and his accountants.[9]

---

[8] *See The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 154 (S.D.N.Y. 1997) (citing *Winston v. Alhadeff*, 1986 U.S. Dist. Lexis 27167 (N.D. Ill. April 7, 1986) ("Documents of a client given to an accountant are within the custody and control of the client since he has a right to demand their return.")); *De Vos v. Lee*, 2008 U.S. Dist. Lexis 58817, *3 (E.D.N.Y. 2008) (holding that documents in the possession of party's accountant are deemed within that party's control for purposes of Rule 34 discovery); *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass. 2001) (corporate defendant's tax-related documents in possession of its accountant found to be within defendant's control because it had "the legal right and practical ability to obtain the documents from the accountant"); *MPG Ingredients, Inc. v. Mars, Inc.*, 2007 U.S. Dist. Lexis

Moreover, the defendants' contention that their exhaustive searches produced approximately 50 audits is simply not compelling when compared to the evidence plaintiffs have detailed in their prior pleadings demonstrating MWL-IIRO's reliance on extensive accounting practices that demand a massive amount of auditing and reporting concerning the organizations' financial activities. *See e.g.*, Plts' Ex. 2 at 16, 21-23 (ECF No. 3826-77). Indeed, the defendants' own documents confirm: (i) MWL-IIRO's internal auditing departments at their respective headquarters conduct regular audits of all MWL and IIRO branch offices (both within the Kingdom and abroad) (*see e.g.*, IIRO000142-170; IIRO000560; IIRO001645); (ii) every MWL and IIRO branch office outside the Kingdom is additionally required to retain an external auditor to conduct an annual audit of the branches' financial activities (*see e.g.*, MWL005150; IIRO001576-1577, IIRO001816, IIRO001818-1838); and (iii) MWL-IIRO's auditing departments are required to generate numerous high-level financial and audit reports for senior officials of the MWL and IIRO (*see e.g.*, IIRO000560, IIRO001810, Constitution of the International Islamic Relief Organization of Saudi Arabia). *See* Ex. 4. Fifty reports does not even scratch the surface of the volume of responsive documentation in the possession, custody and control of MWL-IIRO, nor does it even remotely comply with Judge Maas' discovery orders.

## IV.  MWL-IIRO BRANCH OFFICE RECORDS

MWL-IIRO's mischaracterization of Judge Maas' order directing the production of responsive records from each branch office of the MWL and IIRO is equally egregious. *See*

---

83594 (D. Kan. 2007) ("A party is also deemed to have control over financial records of the party that are in the possession of the party's accountant.").

[9] *See* November 16, 2011 Transcript of Record, Plts' Ex. 11 at 33 (ECF No. 3826-77) (Judge Maas ordering defense counsel to undertake vigorous and expeditious efforts to obtain requested banking materials and to document those good faith efforts: "I guess, Mr. McMahon, it comes down to the same thing I said with respect to your two other clients [MWL and IIRO], namely, that there has to be a full-court press. And, as Mr. Carter indicated and I've said it before, it has to be documented. If you're not sufficiently able to document a vigorous effort to obtain those documents, it may be that sanctions are imposed.").

Opp. at 16-18 (asserting that the Court never issued such an order and further arguing that it would be incredibly burdensome to conduct a search of every office). On that point, Judge Maas was not only clear that the defendants' obligations included every branch office, but he also was clear that defendants' failure on that point alone could lead to dispositive sanctions:

> The Court: It also seems to me that the request, unless Mr. Carter tells me otherwise, *extends to each branch of the organization*. And to the extent that there are nonduplicative files in the branches, those have to be produced, whether it's burdensome or not.
>
> This whole case is about money being diverted toward terrorist goals. As I understand it, the lion's share of the effort is to see where money went. So the notion that this is a lot of paper or bytes of information and therefore burdensome, Mr. McMahon, doesn't really resonate to me.
>
> *\*\*\**
>
> Except to the extent that the two sides can agree that some branch office is not relevant, *if each branch office is not queried and the documents from that branch produced, as far as I'm concerned that will have been an inadequate search and may lead to dispositive sanctions*.
>
> Mr. McMahon: I hear and appreciate that, your Honor.

*See* Plt's Ex. 11 at 14-16 (ECF No. 3826-86). (Emphasis added).

The defendants' statement that "plaintiffs never suggested any additional office that they contended had some connection to the case," Opp. at 17, ostensibly asserted as justification for their position that it was more than adequate to conduct searches of only 13 branch offices outside the Kingdom, is just as deceptive. Plaintiffs made it very clear to the defendants' new counsel during the initial meet and confer in 2013 that the issue of the branch offices was one of the key categories of documents for which the productions remained significantly incomplete.[10] Although plaintiffs were under no obligation to do so in light of Judge Maas' order to produce relevant materials from *all* offices, plaintiffs did identify the IIRO branch offices in Egypt,

---

[10] Plaintiffs reiterated continued to raise that very concern with MWL-IIRO in later meet and confers and correspondence. *See* Plts' Exs. 9 (ECF No. 3829-9), 10 (ECF No. 3829-10), and 12 (ECF No. 3829).

7

Nigeria, Somalia, United Arab Emirates, and Yemen as *examples* of gaps in the production, and further reminded the defendants of a number of IIRO regional offices within the Kingdom they were obligated to search (other than Jeddah, Mecca, Eastern Province, and Riyadh), but for which no documents had been produced.[11]  *See* Plts' Exs. 10 at 5-6 (ECF No. 3829-10). Nevertheless, it does not appear the defendants have undertaken any efforts to secure responsive records from those offices.

In a further attempt to evade their obligation to produce responsive documents, MWL-IIRO try (for a second time) to convince this Court that their branch offices do not regularly send financial and operations reports to their Saudi headquarters.  *See* Fawzi Decl. at 7, Chaouat Decl. at 11 (contending that "regular transmissions of documents were not made by the various branch offices to Head Office during the 1992-2004 time period").  This is the same misleading argument advanced by the defendants in 2011 which Judge Maas rejected.  In an April 7, 2011 letter brief to the Court, plaintiffs provided detailed descriptions of the IIRO's own documents clearly showing that the branch offices are required to regularly transmit reports back to the office of the Secretary General regarding their bank accounts, revenues and expenses, employees, loan activities, donations, and various projects undertaken in the name of the charities.[12]  The defendants' continuing refusal to produce these records is clear evidence of their bad faith and unwillingness to comply with this Court's orders.  Plaintiffs respectfully ask the Court to compel MWL-IIRO to immediately produce all responsive documents or face appropriate sanctions.

---

[11] The IIRO's 2001-2002 Annual Report identifies IIRO branch offices in the Al Baha, Gizan, Al Jouf, Asir, Al Qasim, Madina, Yanbu, Taif, Najran regions of Saudi Arabia.

[12] *See* Plts' Ex. 13 at 2-6 (ECF No. 3829-13) (citing IIRO00017, 209-213, 219, 222-223, 230, 241-246, 383, 384-385, 676, 687-688, 969-985, 1219-1223).

## V. MWL-IIRO BANKING RECORDS

MWL-IIRO also continue to evade their duty to comply with Judge Maas's orders directing the defendants to produce all relevant banking records. For instance, on April 22, 2016, plaintiffs sent a letter to defense counsel identifying 66 bank accounts belonging to MWL-IIRO in Pakistan and requesting all relevant documents relating to those accounts. *See* Plts' Ex. 11 (ECF No. 3829-11). That listing of accounts was compiled almost exclusively as a result of plaintiffs' review of MWL-IIRO's own documents produced in discovery.[13] When pressed to finally come forward with all responsive banking records, MWL-IIRO respond with unsubstantiated assertions that an unnamed individual in Pakistan allegedly investigated each of the 66 accounts and was advised by each and every bank that (i) the accounts did not belong to the MWL or IIRO; and/or (ii) the banks no longer maintained records relating to these accounts.[14] Opp. at 7. Importantly, MWL-IIRO do not produce a single piece of evidence to support these questionable claims. Rather, the defendants would have this Court and the parties take them at their undocumented word that an extensive inquiry was undertaken that ultimately did not produce one single responsive document. *Id.* (describing the remarkable absence of a wealth or documents related to financial dealings in a terror financing case as a "non-issue").[15]

Despite the defendants' assertions to the contrary, the MWL and IIRO headquarters have copies of all of the requested banking records which can be easily retrieved by their finance departments. As detailed at length in plaintiffs' August 26, 2011 Motion for Sanctions against MWL-IIRO, Plts' Ex. 2 at 24-26 (ECF No. 3826-77), the defendants' own documents make clear

---

[13] *See e.g.*, IIRO025784, IIRO025785, IIRO093327, IIRO130888-130890, and IIRO0265511-26512 at Ex. 5.

[14] This explanation indicates that the banks did at one point in time have responsive records, but that, as a result of the failure of MWL-IIRO to secure and preserve those records at the outset of this litigation, they were destroyed. The explanation thus indicates spoliation of highly relevant records by MWL-IIRO. Consistent with Judge Maas's prior directives, the Court should require MWL-IIRO to produce all records relating to their efforts to secure the responsive banking records.

[15] *See supra* n. 8.

9

that MWL and IIRO branch offices are required to regularly send bank account statements and other banking records to their Saudi headquarters.[16] MWL-IIRO can no longer avoid their obligation to produce relevant banking records in their possession, custody and control. Accordingly, the defendants should be ordered to immediately produce all responsive banking records.

## VI. RABITA TRUST AND AL HARAMAIN AL MASJED AL AQSA

The defendants' contentions that they are not in possession, custody, or control of relevant documentation relating to Rabita Trust and Al Haramain Al Masjed Al Aqsa are unconvincing and MWL-IIRO should be directed by this Court to produce all responsive records. *See* Exs. 6, 7.

## VII. EL FATIH HASSANEIN AND SUKARNO HASSANEIN

MWL-IIRO's argument that there are minimal responsive documents relating to El Fatih Hassanein's tenure with the IIRO because his employment ended in 1992 is not factually supportable. As several IIRO documents at Ex. 8 describe, Hassanein was the subject of an investigation (1998-2001) conducted by the IIRO concerning the disappearance of a significant sum of money. Moreover, contrary to the IIRO's assertion, Sukarno Hassanein was in fact an employee of the IIRO. *See* Ex. 9 at 4 (Excerpt of Interview of Sukarno Hassanein).

## VIII. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court enter an order pursuant to Fed. R. Civ. P. 37(a), directing defendants MWL and IIRO to immediately produce all responsive documents, including all relevant documents and information previously ordered produced by this Court.

---

[16] *See* Ex. 5 (citing IIRO000983, IIRO000163, MWL005323, MWL005150, MWL005324, IIRO000209-213, IIRO00969-985).

Dated:  January 26, 2018          Respectfully Submitted,

/s/ J. Scott Tarbutton
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050
New York, New York 10165
Tel:  (212) 944-2200

Christopher T. Leonardo, Esq.
ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South
Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of Plaintiffs' Reply Memorandum of Law in Support of the Motion to Compel Defendants Muslim World League and International Islamic Relief Organization to Produce Responsive Documents Pursuant to Federal Rule of Civil Procedure 37(a), was filed electronically this 26th day of January 2018. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

                                            /s/
                                       J. Scott Tarbutton, Esq.

LEGAL\34246289\1 00000.0000.000/117430.000