# EXHIBIT 1

# Treasury Department Letter

# KADI 103660



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

SDGT-4109

Wiley Rein LLP
c/o Serena D. Moe
1776 K Street NW
Washington, D.C. 20006

Re: Request of Yassin Kadi for Delisting from the SDN List

Dear Ms. Moe:

This letter is the final response of the Treasury Department's Office of Foreign Assets Control (OFAC) to your client Yassin Kadi's December 12, 2012, request for administrative reconsideration of his designation as a Specially Designated Global Terrorist (SDGT) pursuant to Executive Order 13224.  As you know, Mr. Kadi was designated as an SDGT on October 12, 2001, and a prior request for administrative reconsideration by Mr. Kadi was denied by OFAC on March 12, 2004.  The U.S. District Court for the District of Columbia upheld the denial of Mr. Kadi's first reconsideration request, holding that "the administrative record as whole amply supports OFAC's findings and its determination to continue Kadi's designation.  OFAC reasonably concluded that Kadi provided financial support – primarily through the Muwafaq Foundation, but also through other means – to many persons who were designated SDGTs." *Kadi v. Geithner*, --- F.Supp.2d ----, 2012 WL 898778 at * 13 (D.D.C. 2012).

OFAC has completed its review of your request.  Based on the information available to OFAC, including the information you have submitted on behalf of Mr. Kadi, OFAC has determined that the circumstances resulting in Mr. Kadi's designation as an SDGT no longer apply.  Accordingly, on November 26, 2014, OFAC removed Mr. Kadi's name from the List of Specially Designated Nationals and Blocked Persons ("SDN List").  Notice of this action will be published in the *Federal Register*.

Please note that OFAC's removal of Mr. Kadi's name from the SDN List is based solely on its consideration of Mr. Kadi's current circumstances and does not represent a determination by OFAC that Mr. Kadi's designation or the denial of his previous request for administrative reconsideration were in error.  Additionally, please be advised that OFAC may consider redesignating Mr. Kadi should it become aware of information indicating that he has resumed the activities that resulted in his designation as an SDGT  or that he has otherwise engaged in activities that would make him subject to designation pursuant to Executive Order 13224 or other authorities administered by OFAC.

Sincerely,

Leila Baheri
Assistant Director
Office of Global Targeting
Office of Foreign Assets Control

# EXHIBIT 2

# OFAC Memo Excerpt

# PEC-KADI 15401-02

TOP SECRET ███████ b1, b5 ████████



██████ b2 ████████████████

**(U) MEMORANDUM FOR R. RICHARD NEWCOMB
DIRECTOR
OFFICE OF FOREIGN ASSETS CONTROL**

**(U) THROUGH:**   Mark D. Roberts
Chief, Foreign Terrorist Programs Division

**(U) FROM:**   Foreign Terrorist Officer

**(U) SUBJECT:**   Designation Pursuant to E.O. 13224

**(U) Yasin AL-QADI**
**(U) a.k.a. Yasin Kadi**
**(U) a.k.a. Yasin Kahdi**
**(U) a.k.a. Shaykh Yassin Abdullah Kadi**

████████ b1, b5 ████████████

(U)   POB: Cairo, Egypt
(U)   DOB: February 23, 1955

████████ b7D, b7E ████████

(U) Current Address: Jeddah, Saudi Arabia

**(U) INTRODUCTION:**

(U) President Bush issued Executive Order 13224 (September 23, 2001) ("E.O. 13224"
or "the E.O."), declaring a national emergency to address grave acts of terrorism and
threats of terrorism committed by foreign terrorists, including the September 11, 2001,
terrorist attacks in New York, Pennsylvania, and at the Pentagon. E.O. 13224 authorizes
the Secretary of the Treasury, in consultation with the Secretaries of State and Homeland
Security and the Attorney General, to designate those persons determined to be:

TOP SECRET ████ b1, b5 ████████

Derived by: ██████ b6, b7c ████████
Derived from: Multiple Sources -
██ b2
Declassify On: ████ b1, b2, b5 ██

**0007681**

PEC-KADI-00015401



TOP SECRET
b1, b5

- owned or controlled by, or to be acting for or on behalf of those persons listed in the Annex to the E.O., or those determined to be subject to subsection 1(b), 1(c) or 1(d)(i) of the E.O.;

- assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to E.O. 13224 or determined to be subject to the E.O.; or

- associated with those persons listed in the Annex, or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of the E.O.

(U) The following is a summary of the evidence in the files of the Office of Foreign Assets Control which supports a determination that **Yassin AL-QADI [AL-QADI]** satisfies the standards for designation under Executive Order 13224 "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," and is subject to its provisions and prohibitions.

(U) OFAC has reviewed evidence from many sources involving numerous activities taking place over a significant length of time. OFAC finds that this evidence is credible, particularly when taken as a whole. The evidence includes both publicly available material and classified evidence that is not appropriately releasable to the public for several reasons, including preventing harm to the national security of the United States. The evidence clearly supports the determination that **AL-QADI** is subject to Executive Order 13224.

(U) Summary

(U) b1 **AL-QADI**, a Saudi businessman whose companies span the Middle East, Europe, North America and South Asia, has been consistently identified as a financial supporter of Usama bin Laden and other known Islamic extremists for nearly a decade. This identification has been made by [b1, b7D] as well as by open source press reports, spanning **AL-QADI's** associations with businesses, charities and direct relations with individuals aligned with terrorism. It is also supported by federal money-laundering investigations.

(U) **AL-QADI** was initially designated as subject to E.O. 13224 on October 12, 2001. He is also on the United Nations' Consolidated List of All Entities/Individuals Whose Accounts Should be Frozen in Accordance with the United Nations Security Council Resolutions Relating to Afghanistan (Taliban & Usama Bin Laden) or Terrorism, pursuant to paragraph 8(C) of Resolution 1333. The European Union has also frozen his assets, pursuant to Council Regulation (EC) No. 467/2001 "imposing certain specific restrictive measures directed against certain persons and entities associated with Usama bin Laden, the Al-Qaida network and the Taliban." He now seeks reconsideration of his designation under E.O. 13224.

TOP SECRET
2
b1, b5



PEC-KADI-00015402

# EXHIBIT 3

# Swiss Federal Police Report Excerpt

# KADI 18553-57

## Supplementary report.

**Re**:         Proceedings against Yassin-Abdullah KADI

**Place**:      CH - 3000 Bern BE

**Date/Time**:  Monday, 5th November 2007, 10:39.

| Acccused | Name | **KADI** |
|---|---|---|
| | Christian Name | **Yassin Abdullah** |
| | Date of Birth | 23.02.1955 |
| | Place of Birth | Egypt, Cairo |
| | Origin/Nationality | Saudi Arabia |
| | Parents | Abdullah AZIZ UD DIN KADI and Salah OMAR ZUBAR |
| | Marital Status | Married |
| | Domicile | SA-2141 Jeddah |
| | Address | Wale Al-Ahad Street, Al-Farsi Center, West Tower, 11th Floor, Suite 1&2 |
| | Communication | Private tel: +96626502255 Fax: +96626502188 |
| | Language | Arabic, English |
| | Identity established with certainty | Yes |

## 1.    Preliminary account

The present report is based upon a financial analysis carried out by the Office of Investigating Magistrates regarding the investigation of Yassin Abdullah KADI, referred to here above.

At the request of the Federal instructing magistrate, the Federal judicial police was instructed to carry out investigations regarding the individuals and companies appearing in the context of the financial analysis carried out on the accounts of Yassin Abdullah KADI, in Switzerland.

---

Decision dated 12.11.2007

Original to : 12.11.2007/J BINO
[signed]
FEDERAL JUDICIAL POLICE

KADI0018553

This report is strictly limited to the initial results of said financial analysis and to the different names of the individuals and companies selected by the financial analyst according to the criteria defined by the latter. In our view, there are a certain number of other relations linking Yassin Abdullah KADI to entities recognized as terrorist.

The methodology used for drafting this report consisted in cross referring the names from the financial analysis with those known to various police sources. The result is a series of names analysed here below.

## 2.    Introduction

From all the entities identified by the financial analysis as being particularly suspect, a certain number appear in the police database. At this stage of the investigations, several enquiries made with foreign authorities are still ongoing with regard to the totality of Yassin Abdullah KADI's business relations.

According to the first results of the investigation, the list of names set out here below appear in the documentation held by the Federal judicial police:

**The Companies:**

**Leemount Ltd**

On the 15th June 1994, Yassin Abdullah KADI ordered by telephone the transfer of 200.000 dollars to Amir Mehdi, director of the Muwafaq foundation in Pakistan. The bank transfer was from the Leemount Ltd account to the Muwafaq foundation at the Emirates Bank International Ltd in Karachi. The documents relating to this transfer order are provided by way of annexe, and we shall refer thereto in detail[1].

On the 23rd July 2003 the Confederation Prosecution Office received a document from Mr. Carlo Lombardini, consisting of a response from Yassin Abdullah KADI and which explains, inter alia, that which is developed here below. Regarding the detail relating thereto, we refer to said document, which is also annexed to this report in the file labelled OFAC.

According to the statements made by Yassin Abdullah KADI contained in said document, more specifically at page 27, the Muwafaq foundation Pakistan is under the control of a regional director, Amir Mehdi Saleh, who according to Yassin Abdullah KADI has a good knowledge of the area[2].

Still at page 27 of the document, Amir Mehdi Saleh is selected as the director of the Muwafaq in Pakistan after several meetings with Yassin Abdullah KADI. Amir

---

[1] Account No 10172, File No 3, Yellow
[2] Yassin Al Kadi Response to OFAC, p. 27

KADI0018554

Mehdi Saleh is recommended by the his brother Saleh Hassan Mehdi, who is domiciled at Jeddah, Saudi Arabia[3].

It shall further be noted that the office of Muwafaq Pakistan is also the Muwafaq office for all of Asia.  It shall also be noted that in 1992 the Pakistan Muwafaq foundation granted a loan of 3'589 dollars to Amir Mehdi Saleh, its regional director[4].

Returning to the transfer of 200'000 dollars dated 15th June 1994 made by Yassin Abdullah KADI to Amir Mehdi, it is appropriate to consider the final recipient of these funds.

An ex-teacher, Amir Mehdi Saleh is in particular one of the directors of Pakistani terrorist group entitled Harkatul Mujahideen (allied to Harakat-al-Ansar since 1993). This organisation also appears on the SECO list of terrorist organisations[5]. Furthermore, the Pakistani terrorist group Harkatul Mujahideen is formally listed by the UN sanctions committee on the 3rd October 2001.

Following the arrest of Ramzi Youssef in 1995 for the first attempted attack on the World Trade Center in New York, the Pakistani police searched the premises of Muwafaq Pakistan and imprisoned Amir Mehdi Saleh for several months.  Amir Mehdi Saleh would have been in contact with Ramzi Youssef, the designer behind the first attack on the World Trade Center.  After two years during which Amir Mehdi Saleh managed the funds of the Muwafaq Pakistan organisation, *"on the 21[st] March 1995, the Pakistani government searched the offices of the foundation at Islamabad. As a result of said search, the officers of the FIA (Pakistani security service) arrested Amir Mehdi on the 29[th] March 1995"*[6].

On the 15th November 1993 six bearer cheques were issued by the National Commercial Bank, the main shareholder of which at the period was Khalid Mahfouz, who according to Yassin Abdullah KADI was the "driving force behind the Muwafaq foundation".  These cheques were immediately cashed by Yassin Abdullah KADI into the account of his company Leemount.  The sum of 30 million dollars was deposited in the Leemount Ltd account, said company being managed by Yassin Abdullah KADI.  Considering the above, we are entitled to believe that Leemount is one of the main effective Muwafaq foundation donors [7].  Following the hearing by the PJF (Federal Judicial Police) on the 9th February 2007 of Mr. Rachid TEYMOUR, the main administrator of the funds belonging to Yassin Abdullah KADI, Mr. TEYMOUR stated: "I do not know where the thirty million come from, maybe it was inherited, the result of a commission payment or the sale of land (...) no one told me of the origins of the money from the NCB".  For full details, we refer to the transcript prepared during the hearing of Mr. TEYMOUR, document sent to the OJIF.

---

[3] Yassin Al Kadi Response to OFAC, p. 27

[4] OFAC, Attachments to answers to questions concerning the petition to delist Yassin Abdullah KADI, foundation Muwafaq, Pakistan.

[5] SECO list of terrorist organizations update of the 13th November 2006 in application of the order of the United Nations concerning Al Qaida and the Taliban.

[6] Summary document regarding Yassin Abdullah KADI forwarded by the American Treasury Department of the 26/05/04.

[7] Account No 10172, second yellow folder, cheques numbers 028351/018352/028353/02854/028355/ 028356

KADI0018555

Still regarding the Faisal Finance account No 10172 belonging to Leemount Ltd, itself owned by Yassin Abdullah KADI, it is appropriate to underline the fact that on the 18th September 1992, the National Commercial Bank in Jeddah transferred some 10 million dollars to Leemount Ltd. Following an analysis of the financial movements, it would appear that the deposit of this sum does not have a justification.

Still regarding the Leemount account at Faisal Finance (Switzerland) SA in Geneva, it is appropriate to recall that on the 20th January 1993, Yassin Abdullah KADI issued an order to transfer 2 million dollars to Leemount Ltd in favour of the Al Shamal Islamic Bank, account No 14263-8-002-001 at the Credit Lyonnais Suisse SA[8].

One must remember that a similar transfer made by Yassin Abdullah KADI via the Al Shamal bank is anything but harmless. Indeed, according to a document from the American State Department and issued by said entity, in 1996 the Sudanese Islamic bank Al Shamal was named by the American State Department as a financial platform for the terrorist operations of Osama Bin Laden[9]. A full and precise judicial documentation demonstrates the involvement of the Al Shamal bank in supporting the terrorist group Al-Qaida during the nineteen nineties, more specifically between 1991 and 1996, whilst Osama Bin Laden was still in the Sudan with the members of his organisation. In this respect, the detailed testimony of Jamal Ahmed Al Fadi during the in absentia trial of Osama Bin Laden is unambiguous regarding the role of the Sudanese Islamic bank Al Shamal in supporting the Al-Qaida organisation. For example said witness explains that the members of Al-Qaida in Sudan received their salary from said bank, and they had bank accounts at the same bank[10].

The General Director of the Al Shamal Islamic Bank, Mohammed S. Mohammad who was summoned to give testimony shortly after the attacks of the 11th September, admitted in a press release in September 2001 that Osama Bin Laden owned two accounts at the bank, both opened on the 30th March 1992 in favour of the Al-Hijrah for Construction and Development Ltd, and in 1993 in the name of Wadi Al Aqiq, Osama Bin Laden's holding company[11].

Thus the transfer of the sum of 2 million dollars on the 20th January 1993 by Yassin Abdullah KADI from the Leemount account, corresponds precisely with the period during which said bank was supporting the Al-Qaida terrorist group. During meetings with the American treasury department, Yassin Abdullah KADI admitted that he was both a shareholder and a client of Al Shamal Islamic Bank. Thus Yassin Abdullah KADI stated to the OFAC on the 19th December 2002, "*I decided to make investments with the Al Shamal bank, [...], it was my intention that all the funds transferred to Al Shamal would be in accordance with Islamic precepts*"[12].

In order to form a precise picture of the Al Shamal bank at the beginning of the nineties, it is appropriate to read the statements of Mutasim Abdul-Rahim, a shareholder representing the Al Shamal Islamic Bank. The latter incited in public in

---

[8] File No 32, IFA Account no 10172
[9] State Department Factsheet on Bin Laden, August 14, 1996
[10] USA v. UBL, Trial Transcript, February 20, 2001, Testimony of Jamal Al-Fadl
[11] Al Shamal Islamic Bank, Declaration of the Director General Mohammad S Mohammad, September 2001
[12] Yassin Abdullah KADI and OFAC, Index to Statement of Yassin Abdullah Kadi, 19 December 2002

KADI0018556

June 1998, "*all those who are able to carry a gun to join the (military training) camps and to head for the operation zones to defend the gains made by the nation*", whilst adding that the "*djihad has now become an obligation above any other duty*"[13]. Moreover, the American State Department publicly declared in 1996 that "*Bin Laden and wealthy members of the NIF (National Islamic Front) capitalised the Al-Shamal Islamic Bank at Khartoum. Bin Laden invested 50 million dollars in the bank*"[14]. This interest of Osama Bin Laden in the Al-Shamal bank is further confirmed by Bin Laden himself during an interview granted in 1995[15].

## Al Haramain Masjid Al Aqsa (Al Haramain)

Regarding this organisation, it is first appropriate to recall that there are two homonymous charitable organisations: the first is called Al Haramain and the second Al Haramain Masjid Al Aqsa. During the various hearings with the American or Swiss authorities, Yassin Abdullah KADI, who does not deny his ongoing relations with the two organisations, relied upon the fact that only the Al Haramain organisation had been the object of a listing as a terrorist organisation, and the two organisations were consecutively also the object of such a listing.

Indeed, it is appropriate to point at that each of these two organisations, Al Haramain and Al Haramain Masjid Al Aqsa, were the subject of two distinct listings, Al Haramain on the 11th March 2002, and Al Haramain Masjid Al Aqsa on the 6th May 2004[16]. The latter Islamic association is also the object of sanctions by the United Nations[17].

Two years after the banning of the office of the Al Haramain Islamic foundation on grounds of terrorist activities, the Bosnian government closed the Al Haramain Masjid Al Aqsa, certainly for the same reasons[18]. As proof we refer to the entire SECO document (page 67) which lists those entities named as terrorist, cited by way of annexe.

Following an analysis and study of the two organisations, it is now established that the two Al-Haramain foundations, Al Haramain Islamic foundation (listed as terrorist on the 11th March 2002), and Al Haramain Al Masjed Al Aqsa (listed as terrorist on the 6th May 2004), and shut down by the Bosnian authorities within a period of two years, in fact shared the same purpose and the same terrorist projects in Bosnia-Herzegovina.

During his testimony before the OFAC, Yassin Abdullah KADI stated that he had no relations with other charitable radical organisations which would be subject to

---

[13] "Sudanese students enrol for controversial military service", AP News, June 6, 1998; AP News August 4, 1998
[14] State Department Factsheet on Bin Laden, August 14, 1996
[15] Osama Bin Laden Interview, Rose-Al-Yusuf, 17 June 1996
[16] SECO list of terrorist organizations, sanctions against Al Qaida and the Taliban, list update the 13th November 2006
[17] United Nations Sanctions Office, Sanctions list 1267
[18] SECO list of terrorist organizations, sanctions against Al Qaida and the Taliban, list update the 13th November 2006

KADI0018557

**EXHIBIT 4**

**Kadi Responses to OFAC Questions**

**KADI 2943-45**

**5a**    **Has Mr Kadi ever managed money, or any business enterprises, for Usama bin Laden, or for the benefit of Bin Laden?**

No, Mr Kadi has never managed money, or any business enterprises, for Usama bin Laden, or for the benefit of Usama Bin Laden.

**5b**    **Was Mr Kadi ever aware of any allegation that any company which he was invested in or otherwise associated with funded by, controlled by or sponsored by Bin Laden?**

Mr Kadi was never aware of any allegation that any company, which he was an investor in or otherwise associated with, was funded by, controlled by or sponsored by Usama Bin Laden.

As described in paragraph 168 of Mr Kadi's 19 December 2002 witness statement, in 1999 - some years after the cessation of operations of the Foundation - he invested in Global Diamond Resources Inc., a US company. Mr Kadi was appointed to the board of directors of Global Diamond Resources as a nominee of New Diamond Holdings Limited, incorporated in the British Virgin Islands, a family company owned by Mr Kadi and his wife on behalf of their children. The Bin Laden Group is also a shareholder in Global Diamond Resources. As Mr Kadi has clearly pointed out, and as is well known, the Bin Laden family, who own the Bin Laden Group, have publicly disowned Usama bin Laden. Mr Kadi has provided OFAC with details of his investment in Global Diamond Resources, which was completely visible and apparent from publicly available records. His investment in Global Diamond Resources should not, therefore, be understood in any manner as implying any form of link or support or sympathy for Usama bin Laden or Al-Qaeda. To the best of Mr Kadi's knowledge Usama bin Laden has no shares or interest in Global Diamond Resources.

**5c**    **What actions, if any, did Mr Kadi take in response to any information or allegations that Bin Laden had a financial interest in any of Mr Kadi's enterprises?**

Mr Kadi certainly had no information and was not aware of any allegation that Bin Laden had any financial interest in any of Mr Kadi's enterprises

KADI0002943

and, accordingly, the question of what actions Mr Kadi took does not arise.

5d **Has Mr Kadi ever met Usama Bin Laden?   If so, please provide details.**

Yes.

**In Chicago, USA, in 1980 - 1981:** Mashoor Al Maduri is Mr Kadi's brother-in-law.   Mr Al Maduri's wife and Mr Kadi's wife are sisters.   In about 1980 - 1981 Mashoor Al Maduri was working for the Saudi Bin Laden Group.   At that time he called Mr Kadi, who was working in Chicago as a trainee for Skidmore Owings & Merrill, the international architectural firm based in Chicago, USA. Mr Al Maduri requested Mr Kadi's help in recruiting engineers trained in the USA to work for the Saudi Bin Laden Group.   Mr Kadi found and short-listed about 4 or 5 engineers. Mashoor Al Maduri and Usama bin Laden then visited Chicago and saw Mr Kadi who introduced them to the short-listed candidates.   Mr Kadi believes this contact took place at the Hyatt Regency Hotel. Mr Kadi believes that perhaps 2 of these engineers were eventually recruited to work for the Saudi Bin Laden Group.

**In Pakistan in 1988-1989:** Mr Kadi's uncle is Dr. Omar Zubair who is a prominent and respected figure in the Kingdom and is the former President of King Abdulaziz University. Dr Zubair led a high profile delegation to Pakistan in order to mediate between rival factions in Afghanistan. Dr Zubair was accompanied by leading Islamic scholars with the aim of preventing the Afghani resistance fighters from turning against each other. During this period the delegation led by Dr Zubair met various leaders of the Afghanistan resistance fighters in Pakistan including Burhanuddin Rabbani, who later became President after the fall of the pro-Soviet government. Mr Kadi believes he may have accompanied his uncle to a meeting of many people, which possibly included Usama Bin Laden. Mr Kadi also believes that this meeting was also attended by senior officials from the Pakistan government.

**In Sudan 1992 - 1993:** Mr Kadi believes there may have been one or possibly two instances when he attended a business or governmental

KADI0002944

function in Sudan at which Usama Bin Laden may also have been present. These encounters, if indeed any occurred, were purely incidental and had nothing to do with terrorism or support for terrorism of any kind.

Mr Kadi believes he has neither seen nor communicated with Usama Bin Laden since 1993.

For the avoidance of doubt none of Mr Kadi's encounters with Usama Bin Laden at any time has concerned or involved terrorism or support for terrorism of any kind.

**6.     Chafiq Ayadi**

**6a     The circumstances of Mr Kadi's hiring of Chafiq Ayadi to run Muwafaq:**

**(i)   Prior to the hiring of Chafiq Ayadi, were any background checks done of Ayadi concerning any associations with, or support of, any terrorist or extremist causes?**

As Mr Kadi has explained in his 19 December 2002 witness statement (paragraph 70), Waa'el Julaidan had from 1986 to 1989 been head of the Saudi Red Crescent, an organization equivalent to the Red Cross. In 1989 Waa'el Julaidan joined the Muslim World League. He became director of the Pakistan office of that organization, working in the areas of relief and education, a post he held until 1994.   In 1992 Waa'el Julaidan was additionally assigned by the Muslim World League to work in the humanitarian field assisting refugees in Croatia.

In 1992 Waa'el Julaidan recommended Chafiq Ayadi to Mr Kadi for the management of the Foundation in Croatia. Waa'el Julaidan introduced Mr Kadi to Chafiq Ayadi in Zagreb, Croatia, in about 1992 for this purpose.   This was the first time Mr Kadi ever met Chafiq Ayadi. At that time, in 1992, Mr Kadi had no reason or indication to suspect either Waa'el Julaidan or Chafiq Ayadi of supporting any terrorist or extremist causes.

18

KADI0002945

# EXHIBIT 5

# Solano Ltd Corporate Resolution

# KADI 12126-27



# INITIAL CONSENT ACTIONS OF THE BOARD OF DIRECTORS

## OF

## SOLANO LIMITED

**THE UNDERSIGNED,** being the Director of SOLANO LIMITED ("the Company"), a company incorporated and operating as an International Business Company under the laws of the Commonwealth of the Bahamas, hereby consents to the adoption of the following resolutions:

**WHEREAS,** the Company has been incorporated in the Commonwealth of the Bahamas under the International Business Companies Act 1989 on 19th May, 1999 and

**WHEREAS,** the Subscribers to the Memorandum of Association of the Company have appointed

**Yassin Ahmed Mohammed Ali**
**Business/Trader**
**Sudanese**

**Mohammed Ahmed Obaid Bin Mahfooz**
**Engineer**
**Saudi Arabian**
**P.O. Box 214**
**Jeddah 21411**
**Kingdom of Saudi Arabia**

as First Directors of the Company.

**NOW, THEREFORE,** it is:

**HEREBY RESOLVED,** that the Company's Registered Office will be at Kings Court, Bay Street, P.O. Box N-3944, Nassau, Bahamas;

and further

**RESOLVED,** that the Company's Registered Agent will be Trident Corporate Services (Bahamas) Limited, Kings Court, Bay Street, P.O. Box N-3944, Nassau, Bahamas;

and further

**RESOLVED,** that the Company will have a corporate seal, an imprint of which is affixed hereto.

KADI0012126

2/...

and further

**RESOLVED**, that the following share certificates be issued:

Share Certificate No. 1 for 12,500 shares issued to Yassin Ahmed Mohammed Ali.
Share Certificate No. 2 for 12,500 shares issued to Mohammed Ahmed Obaid Bin Mahfooz.
Share Certificate No. 3 for 12,500 shares issued to Ahmed Mohammed Omer Ba Sudan.
Share Certificate No. 4 for 12,500 shares issued to Yassin Abdullan Aziz du Din Kadi.

and that such issuance be recorded in the Register of Members of the Company.

and further

This Consent was issued and shall be effective as of the 19th day of May, 1999.

**SOLANO LIMITED**

**Yassin Ahmed Mohammed Ali**
Director

**Mohammed Ahmed Obaid Bin Mahfooz**
Director

KADI0012127

# EXHIBIT 6

# 2017 9-6 Email Maloney to Salerno

| **From:** | Andrew J. Maloney |
|---|---|
| **Sent:** | Wednesday, September 6, 2017 3:58 PM |
| **To:** | 'Peter Salerno' |
| **Cc:** | Jim Kreindler; Sean P. Carter - Cozen O'Connor (scarter1@cozen.com); zRobert Haefele |
| **Subject:** | Kadi production questions |
| **Attachments:** | SKM_C654e17090614540_00000000_20170906_15554862170.pdf |

Dear Peter,

I am responding to your September 1, 2017 letter concerning the Kadi production and plaintiffs' status report to the Court made August 31.

With regard to the Kadi production, we saw, and you confirmed in your July 26, 2017 letter, that your production "did not identify every one of [our] requests to which a particular document was responsive." The rules contemplate doing so, and we noticed that you did this in some of the responses but not in others. You lodged a similar complaint against the PEC on this. Perhaps we can find a way to resolve this.

On contention interrogatories, attached are two partial transcripts of conferences before Judge Maas where he tabled the demand for contention interrogatories for the time being until all discovery, including depositions, was complete, at which time the parties could re-visit the issue with the Court. It is our position that we have not yet completed discovery and that the request is therefore premature.

Finally, on the privilege log, all the documents identified were created before September 11, 2001 and were therefore not created in contemplation of the 9/11 terror litigation. The rules protect disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Even were you to claim that the privilege protects documents created for other unrelated litigation (which we believe would not be protected in the 9/11 terror litigation) we note that a large number of documents do not appear to be created in anticipation of *any* litigation. Many of the documents were not created by or for an attorney and appear to be created in the regular course and scope of business. Those documents are not afforded the work product privilege.

We anticipate at least as to the privilege log, that a motion will be required unless you would like to re-consider some of them if we identify each of the numerous documents. This will take some time and would not be ready before Thursday's conference. With regard to the other items, is it your position that Mr. Kadi does not have in his possession, custody or control, any more documents outside those produced and those identified in the privilege log, and that he cannot readily obtain them?

**Andrew J. Maloney**
Partner

**◆▶ KREINDLER & KREINDLER LLP**
**TRADITION OF EXCELLENCE**

Kreindler & Kreindler LLP
750 Third Avenue          T:  212.973.3438   ·   E-mail:  amaloney@kreindler.com
New York, NY 10017-2703   F:  212.972.9432   ·   Web:    www.kreindler.com

🌎 Please consider the environment before printing this e-mail.

# EXHIBIT 7

# Kadi Attorney-Client Privilege Log

# Identified Documents

## KADI Attorney-Client Privilege Log Identified Documents

The documents identified below should be subject to disclosure or in the alternative, *in camera* review for the reasons described:

1. **The following documents as identified by Kadi are not subject to attorney-client privilege because there has been a waiver of the privilege through disclosure to a third-party:**

   5, 11, 14, 15, 16, 17, 26, 51, 91, 100, 115, 116, 134, 163, 164, 165, 167, 173, 190, 218, 241, 242

2. **The following documents as identified by Kadi are not subject to attorney-client privilege because the defendant has not shown that the purpose of the communications was to render legal advice or services, rather than to develop or further a business strategy** *See Upjohn Co. v. United States*, **449 U.S. 383, 393 (1981);** *see also U.S. v. Kovel*, **296 F. 2d 918 (2d Cir. 1961)(privilege only extends to consultation with financial advisor if his help is necessary for the effective consultation between the client and lawyer):**

   21, 23, 26, 27, 34, 35, 36, 41, 45, 46, 50, 51, 57, 58, 63, 64, 65, 79, 80, 81, 92, 93, 94, 95, 102-106, 117, 126, 127, 132, 133, 136, 137, 138, 141, 142, 150-160, 275, 276, 277

3. **The following documents as identified by Kadi are not subject to attorney-client privilege because the sender or recipient is claimed to be a protected person but is not identified with certainty (identifiers used are "inferred," "estimated," "presumed," "believed to be," "unknown," etc.).**

   8,9, 28, 166, 167, 170, 171, 172, 174-180, 183, 184, 185, 191, 194, 195, 196, 212, 230, 231

4. **The following documents as identified by Kadi are not subject to work-product privilege because the defendant has not shown that the documents were prepared in anticipation of litigation:**

   29-33, 68, 69, 173, 181-253, 255-274