**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |
|---|---|

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH-SAUDI ARABIA AND**
**WORLD ASSEMBLY OF MUSLIM YOUTH-INTERNATIONAL TO PRODUCE**
**RESPONSIVE DOCUMENTS PURSUANT TO FED. R. CIV. PRO. 37(a)**

February 28, 2018

# TABLE OF CONTENTS

**Page**

I.     FACTUAL BACKGROUND ............................................................................... 1

II.    DISCUSSION ................................................................................................... 3

     A.      The Eight Categories of Requested Documents ...................................... 3

          1.      WAMY's General Secretariat/Board of Trustees ...................... 4

          2.      WAMY Branch Office Records................................................... 5

          3.      WAMY Auditing Reports and Underlying Financial Records.................. 6

          4.      WAMY Annual Reports ............................................................. 6

     B.      Records Concerning Senior Officials of WAMY ..................................... 7

     C.      Records Concerning WAMY and the Saudi Government ...................................... 8

          1.      WAMY's Annual Budget ........................................................... 9

          2.      Saudi Government Ministries ..................................................... 9

          3.      Saudi Government Embassies.................................................... 10

     D.      Records Concerning WAMY's Governing Bodies and Committees ................... 11

          1.      WAMY's General Assembly .................................................... 11

          2.      WAMY Committees and Bodies ............................................. 11

     E.      Records Concerning Benevolence International Foundation ............................. 12

     F.      Records Concerning Abdullah Bin Laden ............................................... 14

     G.      Records Concerning Third World Relief Agency and El Fatih Hassanein .......... 15

     H.      Records Concerning Hamas................................................................... 16

     I.      Records Concerning WAMY's Support for other Terrorist Organizations.......... 17

     J.      Records Concerning Anwar al Aulaqi ................................................... 17

     K.      Records Concerning Other Relevant Categories of Documents.......................... 18

     L.      WAMY's Improper Redaction of Relevant Information.............................. 19

     M.      Missing Attachments ............................................................................ 20

III.    CONCLUSION.................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Durling v. Papa John's Int'l, Inc.*,
  2018 U.S. Dist. LEXIS 11584 (S.D.N.Y. Jan. 24, 2018)..........................................................19

*Jewels v. Casner*,
  2016 U.S. Dist. LEXIS 66405 (E.D.N.Y. May 20, 2016) .......................................................19

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  298 F.R.D. 184 (S.D.N.Y. 2014) ............................................................................................19

*Johnson v. City of New York*,
  2018 U.S. Dist. LEXIS 1046 (E.D.N.Y. Jan. 3, 2018) ...........................................................19

*In re State Street Bank & Trust Co, Fixed Income Funds Invs. Litig.*,
  2009 U.S. Dist. LEXIS 34967 (S.D.N.Y. Apr. 8, 2009).........................................................19

**Other Authorities**

Federal Rule of Civil Procedure 37(a) ......................................................................................1, 20

The Plaintiffs' Executive Committees ("PECs"), on behalf of all plaintiffs, hereby respectfully request that the Court order defendants World Assembly of Muslim Youth-Saudi Arabia ("WAMY-SA") and World Assembly of Muslim Youth-International ("WAMY-INTL" or "WAMY-USA") (collectively "WAMY"), to immediately produce all documents responsive to plaintiffs' document requests pursuant to Federal Rule of Civil Procedure 37(a), including all categories identified herein.

## I.    FACTUAL BACKGROUND

Plaintiffs served their consolidated First Set of Requests for Production of Documents Directed to WAMY-SA and WAMY-INTL on December 10, 2010 at Exs. 1 and 2, and thereafter served supplemental document requests on WAMY-SA in 2011, 2012, and 2013. *See* Exs. 3-5.[1] Plaintiffs raised various concerns with WAMY's responses to those requests and, after several meet and confers, filed two separate discovery motions in 2013 and 2014, seeking to compel the production of several specific categories of documents of particular importance and relevance in this litigation.[2]

Although WAMY has been obligated to produce discovery since 2010, it has requested numerous extensions of time to respond to plaintiffs' document requests, including multiple extension requests in the last calendar year alone.  Despite having had many years to gather and produce documents responsive to plaintiffs' requests, it compressed more than a third of its

---

[1] *See also* Plaintiffs' Executive Committees' April 14, 2017 discovery status report describing plaintiffs' allegations against WAMY and discovery served on the defendant.  ECF No. 3516 at 4-5.
[2] *See* plaintiffs' December 19, 2013 Motion to Compel at Exs. 6 and 7, and plaintiffs' March 14, 2014 Motion to Compel at Exs. 8 and 9.  Magistrate Judge Maas granted plaintiffs' requested relief detailed in the March 2014 motion, but deferred ruling on the December 13 motion in light of an anticipated document production deadline.  *See infra* at 13, n.17.

production into the back-end of discovery, including over 439,000 pages of mostly Arabic documents produced in the final 6 months of 2017.[3]

Plaintiffs have been working diligently with their linguists and subject matter experts to translate and analyze WAMY's extensive productions, despite the complications caused by WAMY's delays,[4] and continue to do so.  That review confirms that WAMY has boosted its raw production numbers by including countless low-level operational documents of marginal relevance,[5] but (like MWL and IIRO) failed to produce scores of responsive materials within categories plaintiffs have identified as more important, including but not limited to, documents concerning the senior leaders and policy making bodies of WAMY and their authority and supervision over WAMY's operations and global activities; documents relating to WAMY's relationship with the Saudi government and relevant Saudi government ministries and embassies; banking and financial records; auditing and accounting records; branch office records; and a number of other relevant categories of documents.  In addition, WAMY has randomly inserted banking records into its productions without any internal logic or order, and unilaterally redacted the identification of financial donors and other relevant information from thousands of documents. Further, the review indicates that WAMY has sought to mislead this Court and plaintiffs concerning its relationship with certain al Qaeda charity fronts and related actors in order to avoid relevant discovery.

---

[3] WAMY produced over 125,000 pages of documents in the final weeks of the year: (i) 65,795 pages of documents on November 30, 2017 (WAMYSA1107665-1173459), the final production deadline agreed to by the Court (ECF No. 3754); and (ii) another 59,383 pages on December 18, 2017 (WAMYSA1173460-1232841).  To date, WAMY-SA has produced over 1 million pages of documents (WAMYSA0000001-1232841), and WAMY-INTL has produced over 15,000 pages of documents (WAMYINTLE000001-15202).

[4] *See* ECF No. 3732.

[5] WAMY has produced tens of thousands of invoices and receipts for office furniture, car maintenance and car washing services, paints and other building materials, telecommunications services, limousine and rent-a-car services, fuel expenses, telephone and office utility expenses, office supplies, computer and electronic services, Fed Ex and other delivery services, food supplies, perfumes and cosmetics, clothing, and medical services.

After seven years, there is little evidence that WAMY intends to fulfill its most basic discovery obligations and produce documents directly relevant to the claims at issue in this litigation.  Plaintiffs are entitled to a full, complete and organized production of responsive documents.  Judicial intervention is therefore necessary.

## II.    DISCUSSION

Plaintiffs cannot reasonably identify for the Court every document missing from WAMY's productions, both because of the scale of the omissions and gaps, and due to the fact that it is impossible for plaintiffs to know information that is in WAMY's exclusive possession. Nevertheless, plaintiffs' analysis of the documents that WAMY has produced, along with our independent investigations, establish that WAMY has failed to produce numerous records and categories of documents that are responsive to plaintiffs' document requests.  For purposes of the present motion, plaintiffs identify below several categories of documents of particular significance, and offer facts and evidence demonstrating that WAMY has not produced responsive documents in those categories.  These deficiencies warrant an order from this Court directing WAMY to fully comply with its discovery obligations by producing all responsive documents, including those in the following categories.

### A.    The Eight Categories of Requested Documents

On October 28, 2011, plaintiffs served WAMY with document requests at Ex. 3, seeking *inter alia* the following eight categories of documents:[6]

1.    Annual, semi-annual, and other periodic financial reports of WAMY (including the branch offices), such as annual reports, balance sheets, financial statements, bank account summaries, audits, etc;

---

[6] These requests mirror the eight categories of documents Magistrate Judge Frank Maas ordered the Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") to produce on April 12, 2011.  *See* ECF No. 3828 at 3.

2.      Lists of recipients of aid from the WAMY offices, to include lists which can be generated through any computer or electronic data storage systems of those organizations;

3.      All documents related to WAMY's General Secretariat or Board of Trustees, including without limitation, reports submitted by internal and external offices of WAMY, studies and research papers considered during such meetings, records relating to the activities of special committees of WAMY, transcripts or recordings of speeches and discussions during the meetings, resolutions and recommendations of the General Secretariat or Board of Trustees, agendas, etc.;

4.      Annual or periodic reports concerning the objectives and activities of WAMY;

5.      Reports authored by delegations or groups sent by WAMY to assess conditions and needs in regions outside of Saudi Arabia;

6.      Reports submitted by the field offices of WAMY concerning their operations and finances;

7.      Summaries of disbursements by WAMY; and

8.      Documents describing the organizational structure of WAMY, including documents relating to the relationship between the various offices of WAMY.

More than six years after receiving plaintiffs' requests, WAMY's productions continue to omit documents in *each* of the eight categories.  Plaintiffs offer the following examples:

**1.      WAMY's General Secretariat/Board of Trustees**

WAMY's productions include a collection of meeting minutes for the General Secretariat and Board of Trustees that confirm that WAMY's productions remain woefully incomplete.  For example, the minutes detail the extensive reporting consistently submitted, reviewed, and discussed by members at each meeting, including without limitation, reports submitted by WAMY's Secretary General concerning WAMY's operations and activities, reports from WAMY's domestic and overseas branch offices concerning their activities and finances, reports of various committees of the General Secretariat (including the overseas office committee), financial reports, and accounting reports.  *See* Ex. 10 (chart identifying numerous reports presented

4

at meetings of the General Secretariat/Board of Trustees).  To date, WAMY has failed to produce most of those reports.  In addition, meeting minutes from the 2003-2004 timeframe are missing.

### 2.     WAMY Branch Office Records

WAMY has also resisted production of full, complete, and organized sets of documents for each of WAMY's branch offices (both within the Kingdom of Saudi Arabia ("Kingdom") and abroad), including but not limited to operations and financial reports, bank account records, delegation records, donor lists, recipients of aid, and audits.  Indeed, there are numerous overseas offices for which plaintiffs have received a limited number of responsive documents, if any.[7]

Documents WAMY has produced detail sophisticated control systems WAMY senior leadership implemented to afford WAMY constant supervision over every aspect of the financial, administrative, and operational activities of each of the branch offices and their employees.  As part of that oversight, *all* WAMY branch offices were required to regularly transmit reports to headquarters concerning their operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plans, employees, and a number of other issues.[8]  While WAMY has produced some reports for a handful of offices, those productions are substantially incomplete for many of the domestic and overseas offices.[9]

WAMY has further failed to produce a complete and organized set of banking records for each of their offices (both within the Kingdom and abroad).  For example, there are at least five

---

[7] Examples include the WAMY overseas offices in Argentina, Australia, Bangladesh, Belgium, Brazil, Chechnya, Czech Republic, Germany, Greece, Hong Kong, India, Kenya, Kosovo, Malawi, Malaysia, Nigeria, Romania, Russia, Senegal, Thailand, Uganda, and Yemen.

[8] *See e.g.*, WAMYSA051692-98 at Ex. 11 (requiring WAMY offices to submit: (i) reports on the office's activities each month; (ii) detailed reports, including videos and photos, every three months; and (iii) financial reports, separate from the activity reports, which must be accompanied by receipts and supporting documents); WAMYSAE001124-33 at Ex. 12 (WAMY's Secretary General distributing office regulations requiring WAMY offices to prepare annual detailed work plans and provide quarterly reports concerning financial and administrative issues).

[9] WAMY has not produced a full and complete set of responsive documents for each of its offices in the Kingdom, including the Mecca Province Office based in Jeddah, the Medina Province Office based in Medina, the Eastern Province Office based in Dammam, and the Southern Province Office based in Abha.

accounts linked to WAMY's branch office in Canada – Bank of Montreal Acct. No. xxx-xxx6-611; Bank of Montreal Acct. No. xxxx-xxx3-221; Bank of Montreal Acct. No. xxxx-xxx4-951; Bank of Montreal Acct. No. xxxx-xxx0-543; and TD Canada Trust Acct. No. xxxxx-x1827.  As discussed *infra* at 12-14, an investigation by the Canadian government concluded that WAMY-Canada maintained a joint bank account at Bank of Montreal with Benevolence International Foundation ("BIF")-Canada, an Executive Order 13224 Specially Designated Global Terrorist ("SDGT") entity, and transferred funds to SDGT BIF-USA.  *See* Ex. 13 at 5 ($50,246 transfer from WAMY to BIF-USA).  WAMY has so far produced only a small number of account statements and other records for these accounts.  *See* Ex. 14.

### 3.    WAMY Auditing Reports and Underlying Financial Records

Plaintiffs also do not have a full and complete production of documents relating to audits of WAMY and its branch offices (both within the Kingdom and abroad), including all underlying working papers and financial records supporting those audits.[10]  WAMY has produced audits for its offices in Riyadh and Pakistan, but has otherwise failed to produce all responsive auditing records.

### 4.    WAMY Annual Reports

WAMY has further failed to produce all annual or periodic reports concerning the objectives and activities of WAMY.  Although WAMY has produced its Arabic annual reports for a number of years, several gaps remain in that production (missing Arabic reports for 1992, 1993, 1995, and 2003).  Furthermore, WAMY has failed to produce many of the organization's English annual reports it routinely publishes and disseminates (missing English reports for 1992-1997, 1999, and 2001-2003).

---

[10] *See* WAMYSA051692-51698 (requiring all offices to transmit to headquarters all financial reports accompanied by receipts and supporting documents).

WAMY's overseas branch offices also prepare and send their own annual reports to WAMY headquarters. While WAMY has produced a handful of annual reports for some of the branch offices (approximately 18 reports in total), with due consideration for the number of offices and the number of years, it appears WAMY has not produced all annual reports for each WAMY domestic and overseas branch office. *See* Ex. 15 (chart identifying the limited number of branch office annual reports produced to date).

WAMY's productions are similarly deficient with respect to the other categories of documents identified above. Accordingly, plaintiffs respectfully request that the Court direct WAMY to immediately produce all responsive documents for each of the aforementioned eight categories.

### B.    Records Concerning Senior Officials of WAMY

WAMY's production has also omitted responsive materials relating to the senior leadership of WAMY and their authority and supervision over WAMY's operations and global activities. *See* Ex. 1 (Req. Nos. 52, 53, 60, 65); Ex. 2 (Req. Nos. 24, 25); Ex. 5 (Req. Nos. 1-8). The limited documents produced to date, and information obtained via plaintiffs' independent investigations, demonstrate that WAMY senior officials were prominent figures in the Kingdom and Muslim world who engaged in extensive and systematic contacts with senior Saudi government officials concerning the organization's activities, as well as with foreign government officials and international bodies. For example, Dr. Maneh el Johani simultaneously served as both the Secretary General of WAMY[11] and a member of the Kingdom's Shura Council.[12] In addition, the

---

[11] Prior to, and after, his appointment was WAMY's Secretary General, Johani served as a member of WAMY's General Secretariat and Board of Trustees.

[12] The Shura Council (a/k/a Majlis Ash Shura or Consultative Council) is the formal advisory body of the Kingdom of Saudi Arabia. Members of the Council are appointed by the King and advise him on Saudi policies, propose new laws, and review the Kingdom's annual budget. Members also routinely participate in official delegations to meet with foreign government leaders and dignitaries. Shura Council Vice-Chairman Abdullah al Naseef also served as the Vice-President of WAMY. *See* ECF No. 2927-9 ¶ 96. In a meeting with Osama bin Laden, Naseef, in his capacity

president of WAMY is also the Kingdom's Minister of Islamic Affairs.  *See* Ex. 16, Declaration of Mutaz Saleh Abu Unuq, Financial Director of WAMY, at ¶ 2.

Given the nature of their leadership roles, their personal involvement in WAMY's high-level strategic policy and decision-making bodies, their dealings with the highest authorities in the Saudi government, and their prominence in the Muslim world, it is clear that plaintiffs have yet to receive a full and complete production of responsive documents concerning WAMY's senior officials.  The production of these materials is particularly relevant in light of public statements by WAMY senior officials urging financial and material aid for terrorist groups and their activities. *See* Ex. 17 (chart detailing statements describing and soliciting support for jihadists in Chechnya and Kashmir).  Accordingly, plaintiffs respectfully ask the Court to direct WAMY to produce all responsive documents relating to WAMY's senior officials.

### C.     Records Concerning WAMY and the Saudi Government

WAMY similarly has failed to produce extensive records detailing its relationship with the Saudi government.  *See* Ex. 1 (Req. Nos. 7-9, 55, 71-81, 88, 96); Ex. 2 (Req. Nos. 4-6, 28, 41, 71); Ex. 3 (Req. No. 15); Ex. 5 (Req. No. 7).  An analysis of documents WAMY has produced indicates that WAMY is withholding a trove of responsive documents that directly implicate high-ranking Saudi government officials and relevant Saudi government ministries in the supervision, management, funding, and decision-making of WAMY.[13]  For example:

---

as the Secretary General of the Muslim World League ("MWL"), agreed that al Qaeda attacks would be launched from MWL offices.

[13] *See* MWL Journal, Issue No. 1759 (August 30, 2002) – *Saudi Charities Deny Funding Terrorism*:  "Assistant Secretary General of the Riyadh-based World Assembly of Muslim Youth, Abdul Wahab Noorwali … said the Saudi government regularly monitors WAMY's accounts and its fund-raising operations."

### 1. WAMY's Annual Budget

The Saudi government establishes and funds much of WAMY's annual budget. *See* Affirmation of Evan Francois Kohlmann at ¶ 100 (WAMY Secretary General Maneh al Johani states that WAMY's main source of funding for its activities is the annual budget of the Saudi government) (ECF No. 2927-9); Ex. 16 at ¶ 2 (confirming that the "Government of Saudi Arabia funds a large portion of WAMY's budget").[14]  Although WAMY appears to have produced some budget records, it has not produced financial records and communications between WAMY and relevant Saudi government ministries relating to its overall budget.

### 2. Saudi Government Ministries

WAMY also has failed to produce responsive documents concerning the significant oversight and regulation of its operations by a number of the Saudi government ministries, including the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs.  As plaintiffs have demonstrated through expert testimony and supporting documents, the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs were established by the Kingdom to fulfill the state's obligation to spread Wahhabi doctrine globally.  *See* ECF No. 3403 at ¶¶ 115-119.  The Supreme Council for Islamic Affairs and Ministry of Islamic Affairs planned and implemented the Kingdom's policies through their funding, supervision, and direction of the individual charities, including WAMY.  *Id.*  Indeed, plaintiffs' evidence and the limited number of documents received from WAMY (and the MWL and IIRO) directly relevant to this issue, show close coordination between WAMY and the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs on

---

[14] *See* Ex. 18 (WAMY Secretary General Johani noted that "despite the enormity of the work, there are significant financial resources," and WAMY "relies on the support of the following:  The government of the Custodian of the Two Holy Mosques, King Fahd Bin Abdulaziz, His Highness Crown Prince Abdullah Bin Abdulaziz, Second Deputy His Highness Prince Sultan Bin Abdulaziz, His Highness the Prince of the Riyadh Province, Prince Salman Bin Abdulaziz, and His Excellency the Minister of Islamic Affairs, Dr. Abdullah Al-Torki.").  *See also* WAMYSA030193, 67790, 67799.

a broad range of policy and strategic considerations, as well as with other government ministries such as the Ministry of Foreign Affairs, Ministry of Interior, and others. *See e.g.*, WAMYSA002408, 2439, 2444, 2664-65, 2683, 2894, 2973, 3145-51, 14999, 16204, 16208, 176278, 177007, 19193-203, 22995-23398, 29621, 29763, 29902, 29970, 30225, 30330, MWL052935, IIRO285002, 285013, IIRO341224-227.  Despite these facts, WAMY has produced only limited information relating to its dealings with these government bodies.

### 3.      Saudi Government Embassies

Available information also establishes that the Saudi embassies play a critical role in implementing the policies and decisions of the Supreme Council for Islamic Affairs and Ministry of Islamic Affairs by closely supervising, directing, and participating in the activities of WAMY's overseas branch offices.[15] *See e.g.*, WAMYSA002884-85, 3305, 3592-93, 14983, 106090, 181256-57.  Indeed, WAMY's operations outside of the Kingdom are often executed under the direction of a joint committee consisting of the Saudi ambassador, other Saudi embassy personnel, and employees of the WAMY branch offices.  *See e.g.*, MWL062428, 62575, 62668-69, 63317-22.  Despite these documented relationships, the production of responsive records relating to the role of the Saudi government embassies in the funding, operations, and global activities of WAMY remains substantially incomplete.  Plaintiffs respectfully ask the Court to order WAMY to promptly produce all responsive documents as requested by the plaintiffs.

---

[15] *See* Testimony of Matthew Epstein, *Saudi Support for Islamic Extremism in the United States*, U.S. Senate Judiciary Committee, September 10, 2003 at 19 (quoting Dr. Abdul Wahab Noorwali, Assistant Secretary General of WAMY: "Saudi Arabia's support has been enormous since the establishment of WAMY in 1963.  The Kingdom provides us with … protection abroad through Saudi embassies and consulates, in addition to financial support.").  Available at https://www.investigativeproject.org/documents/testimony/340.pdf.

### D.     Records Concerning WAMY's Governing Bodies and Committees

Plaintiffs' discovery also requests production of responsive documents identifying all committees, boards, and other policymaking bodies within WAMY, and all individuals holding positions within those committees and internal bodies.  *See* Ex. 1 (Req. Nos. 51, 52).  Moreover, plaintiffs seek a complete and organized production of all documents relating to the meetings and decisions of those bodies.  *Id.* (Req. No. 53).  Notwithstanding those unambiguous requests, WAMY has failed to produce responsive materials relating to its committees and policymaking bodies, including the numerous reports routinely submitted to those internal bodies.  The following examples are illustrative:

### 1.     WAMY's General Assembly

The General Assembly is WAMY's leading governing body, responsible for overseeing and directing the policies, operations, and activities of the organization.  *See* Ex. 16 at ¶ 2 (stating that "WAMY was established by Royal Decree in 1972" and that "WAMY is governed principally by its General Assembly and President, who was appointed by the Saudi Government"); Ex. 19 (Constitution of the World Assembly of Muslim Youth, Articles 6-11).  To date, responsive documents relating to the General Assembly, including meeting minutes, remain noticeably absent from WAMY's document productions and should be ordered immediately produced.  Moreover, to the extent that reports, memoranda and other documents concerning the operations and activities of WAMY were submitted to the General Assembly for review and discussion, those documents should also be produced.

### 2.     WAMY Committees and Bodies

Plaintiffs have identified a number of WAMY committees through their independent investigations, or based on passing references in WAMY meeting minutes or other materials,

including but not limited to: Department of Overseas Offices, Islamic Republics Youth Committee, East Europe Youth Committee, Islamic Medical Committee, China Committee, Domestic Committee, Legal Committee, Sri Lanka Committee, Turkistan Committee, Burma Committee, Kashmir Youth Committee, Palestine Youth Committee, North and South America Committee, Yemen Committee, Women's Committee, Thailand Committee, Nepal Committee, Korea and Japan Committee, and Kurdistan Committee. Plaintiffs have received very few, if any, documents relating to these bodies and request that the Court order WAMY to produce all responsive documents concerning these internal bodies.

### E.     Records Concerning Benevolence International Foundation

Plaintiffs have consistently emphasized the importance of records relating to WAMY's relationship with the Benevolence International Foundation ("BIF"), a Specially Designated Global Terrorist ("SDGT"). Despite compelling evidence demonstrating intimate ties between the two organizations, WAMY has represented to this Court on two separate occasions that WAMY has never had any relationship with BIF.[16] *See* Declaration of Saleh al Wohaibi at Ex. 20 ("WAMY has never had any connection with Benevolence International Foundation (BIF)"); *see also* February 19, 2014 Transcript of Record at 43 at Ex. 21 (counsel for WAMY representing to the Court that "from our perspective the facts are crystal clear, that there is not and has never been any relationship between WAMY and BIF").

Contrary to those statements, the available evidence indicates that WAMY conducted joint operations with BIF around the globe in the years preceding and after the attacks of September 11,

---

[16] By way of background, Lajnat al Birr al Islamiyya ("LBI"), the precursor to BIF, was founded as a subsidiary organization of WAMY in 1987 in Pakistan and Saudi Arabia, and promoted by WAMY leadership as "the welfare arm of WAMY." *See* WAMYSA09713, 29462, and 57745-51at Ex. 22; *see also* Affirmation of Evan Francois Kohlmann at ¶¶ 189-212 (ECF No. 3829-16); WAMYSA029406 and 29920. In fact, WAMY's Pakistan branch office was initially registered as LBI. *See* WAMYSA09713. Adel Batterjee, an Executive Order 13224 SDGT, served as the Executive Director of LBI. In the early 1990s, LBI was renamed "Benevolence International Foundation" and Batterjee continued to remain as the head of BIF until 1993. *See* Ex. 23 at 3-4.

2001.  For example, an extensive investigation and audit of WAMY's branch office in Canada conducted by the Canadian government revealed that:  (i) "WAMY maintained close relationships with and provided funding to organizations that were engaged in providing resources to entities engaged in terrorist activities;" (ii) *WAMY-Canada shared common officers, office space, contact information, and bank accounts with Executive Order 13224 SDGT Benevolence International Fund-Canada ("BIF-Canada")*; and (iii) *WAMY-Canada provided direct funding to Executive Order 13224 SDGT Benevolence International Foundation ("BIF-USA").  See* Ex. 24.[17]

Bank of Montreal account statements further confirm WAMY was operating as BIF.  *See* WAMYSA001865-69, 1871, 1885 at Ex. 14 (statements for Acct. No. xxx-xxx6-611 identify account holder "World Assembly of Muslim Youth o/a BIF").

Moreover, the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") lists a number of mailing addresses for designated BIF at Ex. 25 (identifying P.O. Box 10845, Riyadh, Saudi Arabia; P.O. Box 7600, Jeddah, Saudi Arabia; P.O. Box 1055, Peshawar, Pakistan; P.O. Box 1937, Khartoum, Sudan).  Importantly, these are the same addresses for WAMY's offices in the Kingdom, Pakistan, and Sudan.  *See id.*

It is impossible to reconcile WAMY's representations that it has had no relationship with BIF with WAMY's own documents and the findings of at least two government investigations.

---

[17] Plaintiffs filed a motion to compel in 2013 asking the Court to order WAMY to produce all documents relating to WAMY-Canada, including all documents concerning the Canadian government's investigation and audit of WAMY-Canada.  *See* Exs. 6 and 7.  Despite earlier representations by WAMY's counsel confirming WAMY-Saudi Arabia's control over WAMY-Canada, and that WAMY's headquarters was collecting documents from that office in response to plaintiffs' discovery, WAMY abruptly reversed its position after reports surfaced in the media in 2012 detailing the Canadian government's investigation and findings.  Claiming that WAMY-Saudi Arabia did not in fact have control over WAMY-Canada, WAMY advanced an implausible story of a "rogue" office that ceased communicating with its headquarters. Ex. 6 at 3-4.  Judge Maas deferred ruling on plaintiffs' motion, instead noting the impending June 2014 document production deadline and warning that if "there is an indication that documents that should have been produced have not been produced, somebody will have a fair amount of explaining to do." Ex. 21 at 37.  Despite multiple extensions to the deadline at the defendant's request, WAMY has failed to produce a full and complete production relating to WAMY-Canada, including banking records.  Plaintiffs renew their request that WAMY immediately produce all responsive documents relating to WAMY-Canada.  *See* Ex. 4 (Req. Nos. 37-51).

The obvious discrepancy suggests an effort by WAMY to obscure its links to other al Qaeda charity fronts, al Qaeda members, and related terrorist groups, in order to avoid the production of damaging records.  Accordingly, WAMY should be ordered to produce all responsive documents relating to its relationship with BIF.  *See* Ex. 1 (Req. Nos. 85-89, 91-92); Ex. 2 (Req. Nos. 54-57); Ex. 4 (Req. Nos. 45-48).

### F.      Records Concerning Abdullah Bin Laden

WAMY has taken a similarly troubling approach with regard to plaintiffs' efforts to obtain discovery concerning Abdullah bin Laden's ("ABL") role with WAMY.[18]  For years WAMY has represented that ABL was merely a volunteer for WAMY-USA with "no knowledge of or involvement in the activities of WAMY's offices in Pakistan, the Balkans, Australia or Asia."  *See* Ex. 26, November 2005 Affidavit of Abdullah Awad Binladin at ¶¶ 6-7.  More recently, in connection with the PECs' efforts to coordinate the start of depositions in the MDL, WAMY advised plaintiffs that it cannot produce ABL for a deposition in this litigation because he "was never a WAMY employee" and "was only a volunteer with WAMY."  *See* Ex. 27.

Contrary to those assertions, however, WAMY's own documents make clear that ABL held numerous high level positions with WAMY and was a Saudi government employee.  *See* Ex. 28 (the Ministry of Islamic Affairs directly intervened to guarantee ABL's appointment to serve as WAMY's representative in the U.S.); Ex. 29 (ABL served as "president" of WAMY-USA); Ex. 30 (ABL entered into legally binding contracts on behalf of WAMY-USA); Ex. 31 (ABL had control and/or signatory authority over WAMY-USA's bank accounts); Exs. 32-34 (ABL was

---

[18] *See* Plaintiffs' Averment of Facts and Evidence at ¶ 462 (ECF No. 3463-1) (WAMY's U.S. offices were established in Falls Church, VA in 1992 by Abdullah bin Laden and Omar bin Laden, blood nephews of al Qaeda leader Osama bin Laden.  Under Abdullah bin Laden's leadership, WAMY's U.S. branch was deeply involved in the terrorist activities of the SAAR Network of businesses and charities.  Federal authorities raided WAMY's U.S. offices in 2004, in connection with an ongoing investigation of the SAAR Network's role in sponsoring al Qaeda.  Abdullah bin Laden was specifically selected by the Saudi Ministry of Islamic Affairs to head WAMY's branch office in the United States and maintained an office at the Saudi Embassy in Washington, D.C.).

identified as an officer of WAMY in federal and state filings and even signed filings on behalf of WAMY); and Ex. 35 (ABL and his family received health insurance from WAMY). *See also* WAMYSA051641-42, 51643-54, 51707-18 (ABL served as a member of WAMY's General Secretariat/Board of Trustees in Saudi Arabia). Plaintiffs have yet to receive a full and complete production relating to ABL's tenure with WAMY, including without limitation, his personnel or employment file. *See* Ex. 1 (Req. Nos. 23-25); Ex. 2 (Req. Nos. 9-12). Accordingly, plaintiffs respectfully ask the Court to direct WAMY to produce all responsive documents relating to ABL.

### G.   Records Concerning Third World Relief Agency and El Fatih Hassanein

WAMY also has failed to produce documentation concerning its relationship with the Third World Relief Agency ("TWRA") and El Fatih Hassanein.[19] Hassanein simultaneously served as the Director of WAMY's branch office in Vienna, Austria while leading the TWRA,[20] *see* Ex. 36 (excerpts of WAMY's March 23, 2012 indices identifying Hassanein as the "Director of the Office of WAMY office [sic] in Austria and Eastern Europe"), and WAMY and TWRA shared the same office space in Vienna. *See* Ex. 37 (same address at Prinz Eugen Str., 36/4/2, 1040 Wien, Austria). Moreover, WAMY has made significant financial transfers to the TWRA. *See* Ex. 38 at 58 (German government criminal investigation report of the TWRA identifying transfer of ATC 399,067.15 from WAMY to TWRA); Ex. 39 (transfer of $3,733.00 to TWRA's branch office in Nigeria).

WAMY has produced only a limited number of documents relating to Hassanein and the TWRA and should be directed to immediately produce all relevant materials, including but not

---

[19] In 1987, Hassanein founded the TWRA, a purported charitable organization that became an integral component of al Qaeda's support infrastructure. U.S. intelligence has described Hassanein as a well-connected leader of the Sudanese National Islamic Front ("NIF") and fervent supporter of Osama bin Laden. Under Hassanein's leadership, the TWRA was a primary conduit for channeling financial, logistical, and operational support for al Qaeda's global jihad. The 9/11 Commission concluded that bin Laden used the TWRA to "covertly provide financial and other support for terrorist activities." *See* 9/11 Commission Final Report at 58.

[20] Hassanein was also serving as the head of the IIRO's branch office in Vienna at this time. *See* ECF No. 3893-8.

limited to:  (i) documents detailing all transfers of funds between WAMY and TWRA; (ii) Hassanein's personnel file, resume, curriculum vitae, and/or employment contract; (iii) documents relating to Hassanein's oversight and control over the operations and finances of WAMY's branch office in Vienna, including the transfer of WAMY funds authorized by Hassanein; (iv) banking records for all bank accounts associated with WAMY-Vienna, including accounts over which Hassanein had control and/or signatory authority, and/or any account WAMY held jointly with TWRA; and (v) all correspondence, reports, memoranda, or other communications between Hassanein and WAMY's headquarters.  *See* Ex. 4 (Req. Nos. 2-13).

### H.    Records Concerning Hamas

Plaintiffs additionally ask the Court to order WAMY to produce all responsive documents relating to its relationship with, and financial support for, the Hamas terrorist organization.  *See* Ex. 1 (Req. Nos. 26-28); Ex. 2 (Req. Nos. 16-18); Ex. 4 (Req. Nos. 16-19).  Documents seized by Israeli Defense Forces in the West Bank, including materials captured during Operation Defensive Shield in April 2002, confirm that WAMY has for years played a critical role in financially supporting Hamas, Fatah, and Palestinian Islamic Jihad ("PIJ"), including providing money to the families of shaheeds (martyrs) who died during violent Israeli-Palestinian confrontations.[21]  *See* Ex. 40.

The limited documentation produced by WAMY affirms that WAMY was sending significant sums of money to Hamas.  *See* Ex. 41: WAMYSA190249 ($141,000 donation from WAMY to Union of Good, a known Hamas entity); WAMYSA167861 (75,000 Saudi riyals from WAMY to Hamas entity, Islamic Society); WAMYSA189391 ($10,000 transfer from WAMY to

---

[21] Hamas and PIJ were designated as Foreign Terrorist Organizations ("FTO") by the U.S. Department of State on October 8, 1997, and further designated as Specially Designated Global Terrorist ("SDGT") entities by the U.S. Department of the Treasury.

Mujama al Islamiya). *See also* financial transfers from WAMY's Palestinian Youth Committee to Hamas entities at Ex. 42: WAMYSA341490-92 (transfer of 41,000 Saudi riyals to Hamas-affiliated Dar al Quran al Karim wal Sunnah); WAMYSA341503-05 (transfer of 6,000 Saudi riyals to Al Salah Islamic Society, a Hamas charitable organization designated as a SDGT by the U.S. Treasury Department on August 7, 2007); WAMYSA341500-02 (transfer of 2,400 Saudi riyals to Mabarrat al Rahmah Charitable Society); WAMYSA341489 (transfer of 3,750 Saudi riyals to the Islamic Society of Nuseirat).

Other than these few documents, WAMY refuses to produce relevant materials concerning its relationship with Hamas and associated entities, despite the obvious relevance of such records to plaintiffs' claims that WAMY served as front for al Qaeda and like-minded terrorist organizations (and WAMY's defenses to those claims). Accordingly, WAMY should be ordered to produce all materials in its possession, custody, and control relating to Hamas.

## I.     Records Concerning WAMY's Support for other Terrorist Organizations

Documents produced by WAMY and other materials point to the charity's relationships with other terrorist organizations, including but not limited to: Hizbul Mujahideen (designated by the U.S. government as a Foreign Terrorist Organization ("FTO") and Specially Designated Global Terrorist ("SDGT")); Harakat ul Mujahideen (designated as a FTO and SDGT); Lashkar e Tayyiba (designated as a FTO and SDGT); and Taibah International (designated as a SDGT). WAMY has produced only a very limited number of records concerning its relationship with these organizations.

## J.     Records Concerning Anwar al Aulaqi

WAMY is closely connected to Anwar al Aulaqi, a senior al Qaeda recruiter who was involved in planning terrorist operations for al Qaeda and served as a trusted confidant and spiritual

mentor to 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar while they plotted and planned the attacks from San Diego, California in early 2000.  *See* Consolidated Amended Complaint ("CAC") ¶¶ 174-181 (ECF No. 3463).  By January 2001, Aulaqi relocated to the east coast where we was employed as the Imam at Dar al Hijrah Mosque in Falls Church, VA.  *Id.* ¶ 181.  While at Dar al Hijrah, Aulaqi provided critical assistance to 9/11 hijackers Hazmi, Hani Hanjour, Ahmed al Ghamdi, and Majed Moqed in advance of the attacks.  *Id.* ¶ 182.

Contemporaneous with his tenure at Dar al Hijrah and his support for the 9/11 hijackers, Aulaqi had a relationship with WAMY INTL and its officers.  *See* Ex. 43: WAMYSA01519 (letter from WAMY INTL's Deputy Supervisor Ibrahim Abdullah inviting Aulaqi to a lecture of a visiting Saudi scholar from King Khalid University); WAMYSA030079-81 (proposed lecturers for WAMY summer camps include Aulaqi); WAMYINTLE00249 (distributing Aulaqi's audio tapes); WAMYINTLE015165 (employment contract between Aulaqi and Dar al Hijrah); and December 18, 2001 FBI Surveillance Log detailing Aulaqi's meeting with an individual linked to WAMY.

WAMY has to date produced very little concerning its relationship with Aulaqi and should be ordered to immediately produce all relevant materials, including but not limited to: (i) all communications between WAMY and Aulaqi; (ii) all documents relating to Aulaqi's involvement in WAMY's operations, activities and projects; (iii) all videotapes or texts of speeches given by Aulaqi at youth camps run by WAMY; (iv) all audiotapes or other materials of Aulaqi distributed by WAMY; and (v) all financial transfers between WAMY and Aulaqi.

## K.   Records Concerning Other Relevant Categories of Documents

WAMY has additionally not produced full, complete, and organized sets of documents for other relevant categories:

- Records concerning investigations and arrests of WAMY personnel and raids and closures of WAMY branch offices.  *See* Ex. 1 (Req. Nos. 13-19, 29, 31, 35, 89, 97, 102, 103); Ex. 2 (Req. Nos. 7-8); Ex. 3 (Req. Nos. 12-13); Ex. 4 (Req. Nos. 14-15).

- Records or lists identifying WAMY employees in Bosnia, the Philippines, Pakistan, Sudan, and Kashmir.  *See* Ex. 3 (Req. No. 11).

- Records concerning WAMY's application to the U.N.'s Committee on Non-Governmental Organizations.  *See* Ex. 4 (Req. Nos. 33-36).

- Records concerning WAMY's publications, including Al Mustaqbal Al Islami ("Islamic Future").  *See* Ex. 1 (Req. No. 48).

- Records concerning WAMY's relationship with Guantanamo Bay detainees Mammar Ameur and Adel Hassan Hamed.  See Ex. 3 (Req. Nos. 12-13).

## L.     WAMY's Improper Redaction of Relevant Information

WAMY's resistance to fulfilling its discovery obligations is further exemplified by the defendant's unilateral redaction of donor lists, banking records, financial data, invoices, and other relevant information from *tens of thousands of documents* produced in discovery.  Plaintiffs objected to these redactions early in discovery, emphasizing the highly relevant nature of the information (particularly in a terrorism financing case),[22] and the protections afforded by the Confidentiality and Protective Order at ECF No. 1900.  *See* Ex. 44.[23]

---

[22] *See* Plts' Ex. 11 at 15 (ECF No. 3826-86) (Magistrate Judge Maas stating: "This whole case is about money being diverted towards terrorist goals.  As I understand it, the lion's share of the effort is to see where money went.").

[23] The courts disfavor the practice of one party redacting information from otherwise responsive documents, specifically when there is a confidentiality or protective order in place.  *See Durling v. Papa John's Int'l, Inc.*, 2018 U.S. Dist. LEXIS 11584 at *25-26 (S.D.N.Y. Jan. 24, 2018) ("[R]edactions on grounds of non-responsiveness or irrelevance are generally impermissible, especially where, as here, a confidentiality and stipulation order, is in place"); *In re State Street Bank & Trust Co, Fixed Income Funds Invs. Litig.*, 2009 U.S. Dist. LEXIS 34967 at *5-6 (S.D.N.Y. Apr. 8, 2009) (finding it unnecessary in light of the privilege order to redact any portion of a document on the grounds that it is non-responsive or irrelevant); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 185-86 (S.D.N.Y. 2014) ("[R]edactions of portions of documents are normally impermissible unless the redactions are based on a legal privilege"); *Jewels v. Casner*, 2016 U.S. Dist. LEXIS 66405 at *14-16 (E.D.N.Y. May 20, 2016) (holding that a party had no right to make unilateral redactions, particularly where concerns about privacy of non-parties was addressed by a confidentiality order); *Johnson v. City of New York*, 2018 U.S. Dist. LEXIS 1046 (E.D.N.Y. Jan. 3, 2018) ("New York federal courts generally frown upon the practice of redacting unresponsive or irrelevant information.").

Notwithstanding plaintiffs' objections, WAMY maintains (unilaterally and without having sought the Court's protection) that sources of donations are irrelevant in this litigation, Ex. 45, and continues to excise not only donor lists at Exs. 46-47, but has also more broadly redacted bank statements, deposit slips, payment orders, correspondence, and other relevant documents. *See* Exs. 48-53 respectively. Plaintiffs respectfully submit that, because nothing in the existing discovery procedures authorized by the Court permits WAMY's unilateral redactions from discovery, WAMY should be ordered to re-produce all documents without redactions.

### M. Missing Attachments

Plaintiffs' review of WAMY's document productions discovered countless circumstances where attachments and enclosures to WAMY communications were not found within the bates-range immediately following the document. *See* Ex. 54 (chart identifying multiple instances of missing attachments).

## III. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court order defendants World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International to immediately produce all documents responsive to plaintiffs' document requests pursuant to Federal Rule of Civil Procedure 37(a), including all categories identified herein.

Dated: February 28, 2018                     Respectfully submitted,

/s/ J. Scott Tarbutton
Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: (215) 665-2000

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Robert M. Kaplan, Esq.
FERBER CHAN ESSNER & COLLER, LLP
60 East 42nd Street, Suite 2050 New York, New
York 10165 Tel:  (212) 944-2200
Christopher T. Leonardo, Esq.

ADAMS HOLCOMB LLP
1001 Pennsylvania Ave., N.W.
Suite 740-South Washington, D.C. 20004
Tel: (202) 580-8820

*Attorneys for Plaintiffs*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendants World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International to Produce Responsive Documents Pursuant to Federal Rule of Civil Procedure 37(a), was filed electronically this 28th day of February 2018.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

/s/
J. Scott Tarbutton, Esq.

34671513\1

22