# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(FM)<br>ECF Case |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, No. 04 Civ. 1923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, No. 04 Civ. 7065
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04 Civ. 7280

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – SAUDI ARABIA

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
December 10, 2010

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – SAUDI ARABIA

Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.*, Case No. 04 Civ. 7280, propound and serve on World Assembly of Muslim Youth-Saudi Arabia (hereinafter "Defendant" or "WAMY"), the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.[1]

## INSTRUCTIONS

1.    In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

---

[1] Plaintiffs maintain that the World Assembly of Muslim Youth ("WAMY"), consisting of its headquarters in the Kingdom of Saudi Arabia and numerous branch offices throughout the world, is a single global organization. Counsel has appeared in these proceedings on behalf of WAMY's headquarters in Saudi Arabia, as well as WAMY's United States branch in Virginia ("WAMY International"), and has filed Motions to Dismiss on behalf of each. Because of these separate appearances, Plaintiffs are serving discovery upon both "WAMY" and "WAMY International." In doing so, Plaintiffs do not waive their argument that WAMY and all of its branch offices worldwide constitute a single organization.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.    Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.    Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.    If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

    a.    The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    b.    The date of the document or transaction involving the information;

    c.    The names of each author and any and all participants with respect to the information;

    d.    The names of any and all signatories of the document, if any;

    e.    The name of the document's current custodian;

    f.    The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

    g.    A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.    For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and

Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.     If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.     Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1990 through the present.

14.     Unless otherwise specified, WAMY's responses to Plaintiffs' First Set of Requests for Production of Documents Directed to the World Assembly of Muslim Youth-Saudi, including any production of documents by the defendant, shall be directed to the law offices of Motley Rice at 275 Seventh Ave., 2nd Floor, New York, NY 10001, c/o Robert T. Haefele, Esq.

**DEFINITIONS**

1.     The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "Plaintiffs" shall refer to Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv.*

& *Dev. Corp., et al.,* Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.,* Case No. 03 Civ. 6978, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.,* Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.,* Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.,* Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.,* Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.,* Case No. 04 Civ. 7280.

3.     The terms "Defendant," "You," "Your," and "WAMY" shall refer to the World Assembly of Muslim Youth-Saudi Arabia and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the World Assembly of Muslim Youth-Saudi Arabia's behalf.

4.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.     The term "person" is defined as any natural person or any business, legal or government entity or association.

6.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7.     The terms "all" and "each" shall be construed as all and each.

8.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.     The use of the singular form of any word includes the plural and vice versa.

10.     The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support,

assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

11.    The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

12.    The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

13.    The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

14.     The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

15.     The term "SAAR Network-Related Entities" shall mean any of the following entities and any past or present subsidiaries, affiliates, and/or branches of such organizations, their directors, officers, employees, agents and representatives:  African Muslim Agency, Al-Aqsa Educational Fund, AMC Foundation, Amana Limited, Amana Mutual Funds, American Institute for Islamic Societal Studies, American Muslim Foundation, American Muslim Council, Global Enterprises, LLC, Global Holdings, LLC, Grove Corporate Plaza, Grove Street Corporation, Heritage Education Trust, Inc. (a/k/a Marwa Education Trust), Heritage Holdings, Herndon Grand, Inc., Humana Charitable Trust, International Education Trust, Inc., International Institute of Islamic Thought, Inc., International Islamic Charitable Organization ("IICO"), International Islamic Relief Organization, International Graphics Printing Service, Islamic Relief Organization, Makkah Mukarramah Charity Trust, Inc., Mar-Jac Investments, Mar-Jac Farms, Inc., Mar-Jac Holdings, Inc., Mar-Jac Poultry, Inc., Mena Corporation, Mena Estates, Inc. d/b/a Mena for Development, Mena Investments, Inc., Mirza Family Limited Partnership, Muslim World League, Piedmont Poultry, Reston Investments, Inc., SAAR Foundation Canada, Inc., SAAR Foundation, Inc., SAAR International, Inc., Safa Trust, Safty, LLC, Sanabel Al Kheer, Inc., Sana-Bell, Inc., Sterling Advisors, Inc., Sterling Charitable Gift Fund, Sterling Infogain Fund, LLC, Sterling Investment Group, LLC, Sterling Lynux Works, LLC, Sterling Management Group, Inc., Sterling Packet Stream Fund, LLC, Sterling Ptech Fund, LLC, Sterling Poultry Company, Sterling Stock Investments, LLC, Sterling Technology Fund, LLC (formerly Sterling Malaysian Fund, LLC), The Success Foundation, Inc., Taibah International Aid Association, York Foundation, York International, and 500 Grove Street, LLC.

16.     The term "SAAR Network-Related Individuals" shall mean any of the following individuals: Abdulrahman Alamoudi, Taha Jaber Al Alwani, Abdullah M. Al Mahdi, Abdullah Bin Saleh Al Obaid, Abdullah Sulaiman Al Rajhi, Sulaiman Abdul Aziz Al Rajhi, Hisham Altalib, M. Omar Ashraf, Muhammad Ashraf, Hassan A.A. Bahafzallah, Jamal Barzinji, Ibrahim Hassabellah, Mohammad Jaghlit, M. Yaqub Mirza, Khaled Nouri, Mohamed S. Omeish, Samir I. Salah, Cherif Sedky, Ahmad Totonji, Iqbal J. Unus, and Tarik Hamdi.

17.     The term "WAMY Personnel" shall refer to any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or other representative employed by WAMY and/or acting on WAMY's behalf.

18.     The term "jihad" (جهاد) shall refer to, but is not limited to, al jihad bi-al-lisan ("jihad of the tongue"), al jihad bi-al-qalam ("jihad of the pen"), al jihad al nafs ("jihad of the soul"), al jihad bi-al-nafs ("self–sacrificing jihad"), and al jihad bi-al-mal ("financial jihad").

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – SAUDI ARABIA

1.      Please provide all documents relating to all accounts in United States banking institutions ("U.S. Bank Accounts") established or held in the name of, on behalf of and/or for the benefit of WAMY, any account for any entity in which WAMY held any beneficial interest, and/or any account over which WAMY and its representatives had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY and the United States banking institutions, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

2.      Please provide all documents relating to all accounts at the Habib Bank in Peshawar, Pakistan, established or held in the name of, on behalf of and/or for the benefit of the WAMY.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY and Habib Bank, documents detailing the establishment of and/or closing of the

account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

3.      Please provide all documents relating to all accounts at the Emirate Bank International in Islamabad, Pakistan, established or held in the name of, on behalf of and/or for the benefit of the WAMY, including without limitation, Account No. 1155-701647 and/or any such accounts associated with Alifuddin Turabi. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY, Alifuddin Turabi and the Emirate Bank International, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

4.      Please provide all documents relating to all accounts at the Al Rajhi Banking and Investment Corp. established or held in the name of, on behalf of and/or for the benefit of the WAMY, including without limitation, Account Nos. 110608010425160 and 279608010024887. Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY and Al Rajhi Banking and Investment Corp., documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**


5.      Please provide all documents relating to all other accounts in foreign banking institutions ("Foreign Bank Accounts") established or held in the name of, on behalf of and/or for the benefit of WAMY, any account for any entity in which WAMY held any beneficial interest, and/or any account over which WAMY had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY and the foreign banking institutions, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements,

account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

6.      Please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity, agency and/or department, or any United States-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "United States Investigator"), any foreign government or any foreign-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi Arabian-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "KSA Investigator"), which references or addresses any of the WAMY accounts identified in, and/or in response to, Requests Nos. 1-5 above.

**ANSWER:**

7.      Please provide copies of all documents that have been seized by, or produced by WAMY to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses any of the WAMY accounts identified in, and/or in response to, Requests Nos. 1-5 above.

**ANSWER:**

8.      Please provide all documents relating to any investigation, audit, analysis, examination, survey, or review of the WAMY accounts identified in, and/or in response to, Requests Nos. 1-5 above, conducted either by WAMY, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the KSA and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

9.      Please provide all documents relating to any written or oral communication between WAMY and the KSA and/or SAMA, which references or addresses any of the WAMY accounts identified in, and/or in response to, Requests Nos. 1-5 above.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

10.    Please provide all documents relating to any investigation or inquiries conducted by the Islamic Republic of Pakistan concerning WAMY's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities, including without limitation, Pakistan's investigation and decision to deport WAMY personnel from that country in or around October 2001.

**ANSWER:**

11.    Please provide all documents relating to the 2002 raid on WAMY's Pakistan office, conducted by authorities of the Islamic Republic of Pakistan, including without limitation, copies of all documents and things which were seized by Pakistani authorities between September 11, 2001 and the present.

**ANSWER:**

12.    Please provide all documents relating to the 2002 detainment of a WAMY employee by authorities of the Islamic Republic of Pakistan for delivering a tape-recorded message from Osama Bin Laden to an Arab television network.

**ANSWER:**

13.    Please provide all documents relating to any investigation or inquiries conducted by the Republic of India concerning WAMY's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities, including without limitation,

allegations that WAMY was financing or otherwise supporting Islamic terror groups in the Kashmir region such as Students Islamic Movement of India ("SIMI"), Lashkar-e-Taibah, and Hizbul Mujahideen.

**ANSWER:**


14.     Please provide all documents relating to the 2002 arrests of two men attempting to transfer money, given to them by WAMY official Nazir Qureshi, to Kashmiri terrorist groups.

**ANSWER:**


15.     Please provide all documents relating to any investigation or inquiries conducted by Romanian authorities concerning WAMY's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities, including without limitation, the alleged involvement of WAMY in an al Qaida plot to hijack a plane and crash it into London's Heathrow Airport.

**ANSWER:**


16.     Please provide all documents relating to any investigation or inquiries conducted by the Russian Federation concerning WAMY's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities, including without limitation, allegations that WAMY was financing and otherwise supporting Islamic terrorists and separatists in Chechnya.

**ANSWER:**

17.     Please provide all documents relating to any investigation or inquiries conducted by the Republic of the Philippines concerning WAMY's alleged support for, or connections to, alleged terrorist or criminal organizations, groups, individuals, or activities, including without limitation, accusations by the Philippines Government that WAMY was financing the Moro Islamic Liberation Front ("MILF") terrorist organization.

**ANSWER:**

18.     Please provide all documents relating to any investigation or inquiries conducted by the Federal Republic of Germany concerning Ibrahim El Zayat (formerly the Western European Head of WAMY), including without limitation, any investigation regarding the transfer of money by El Zayat and Ayman Sayed Ahmed Aly on behalf of WAMY to the Albanian branch of Taibah International, an Islamic charity whose Bosnian branch was designated as a Specially Designated Global Terrorist Entity in 2004 by the United States and United Nations.

**ANSWER:**

19.     Please provide all documents relating to the 2002 raid of WAMY's offices in Virginia, conducted by U.S. authorities, including without limitation, copies of all documents and things which were seized by U.S. authorities between September 11, 2001 and the present.

**ANSWER:**

20.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the persons and entities identified in Attachment A ("Kashmir Terror Groups and Leaders").

**ANSWER:**


21.     Please provide all documents WAMY sent to, and/or received from the persons and entities identified in Attachment A ("Kashmir Terror Groups and Leaders"), including without limitation, all documents relating to the transfer of funds between WAMY and those persons and entities.

**ANSWER:**


22.     Please provide all documents relating to any accounts in any banking or financial institution WAMY currently holds, or has held, jointly with or on behalf of the persons and entities identified in Attachment A ("Kashmir Terror Groups and Leaders"), and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**


23.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the persons identified in Attachment B.  For

those persons who currently hold, or have held, positions within WAMY, responsive documents shall include, but are not limited to, their personnel files.

**ANSWER:**

24.     Please provide all documents WAMY sent to, and/or received from the persons identified in Attachment B, including without limitation, all documents relating to the transfer of funds between WAMY and those persons.

**ANSWER:**

25.     Please provide all documents relating to any accounts in any banking or financial institution WAMY currently holds, or has held, jointly with or on behalf of the persons identified in Attachment B, and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**

26.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the entities identified in Attachment C.

**ANSWER:**

27.     Please provide all documents WAMY sent to, and/or received from the entities identified in Attachment C, including without limitation, all documents relating to the transfer of funds between WAMY and those entities.

**ANSWER:**

28.     Please provide all documents relating to any accounts in any banking or financial institution WAMY currently holds, or has held, jointly with or on behalf of the entities identified in Attachment C, and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**

29.     Please provide all documents relating to any investigation or inquiry conducted by any United States Investigator, Foreign Investigator, or any KSA Investigator, which references or addresses WAMY's association to, and/or relationship with, the events, persons, or entities identified in Requests Nos. 10-28 above.

**ANSWER:**

30.     Please provide copies of all documents that have been seized by, or produced by WAMY to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses WAMY's association to, and/or relationship with, the events, persons, or entities identified in Requests Nos. 10-28 above.

**ANSWER:**

31.     Please provide all documents relating to any internal investigation or inquiry conducted by WAMY and/or WAMY Personnel which references or addresses WAMY's association to, and/or relationship with, the events, persons, or entities identified in Requests Nos. 10-28 above.   Such documents shall include any investigation or inquiry ordered, conducted, supervised, overseen, or reviewed by the KSA and/or SAMA.

**ANSWER:**

32.     Please provide all documents relating to any written or oral communication between WAMY and the KSA and/or SAMA, which references or addresses WAMY's association to, and/or relationship with, the events, persons, or entities identified in Requests Nos. 10-28 above.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

33.     Please provide copies of all documents that have been seized by, or produced by WAMY to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses WAMY's alleged support for, or connections to, alleged terrorist organizations, groups, individuals, or activities.

**ANSWER:**

34.     Please provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that WAMY, WAMY Personnel, or any other individual or entity employed by and/or associated with WAMY, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**


35.     Please provide any and all documents relating to any sanctions imposed upon WAMY and/or WAMY Personnel by the United States, Kingdom of Saudi Arabia, United Nations, or any other nation or international body.

**ANSWER:**


36.     Please provide all documents relating to the struggle against the Soviet occupation of Afghanistan during the 1980s, including without limitation, WAMY's involvement.

**ANSWER:**


37.     Please provide all documents relating to WAMY's role in providing material support or resources, directly or indirectly, to the mujihadeen forces in Afghanistan in their struggle against the Soviet occupation during the 1980s.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**

38.     Please provide all documents relating to WAMY's role in providing material support or resources to the mujihadeen forces or other Islamic fighters in Afghanistan, Albania, Algeria, Bosnia, Chechnya, Egypt, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Somalia, Sudan, Tanzania, Turkey, Yemen, or elsewhere, including without limitation, the support of camps in and/or around those areas, recruitment, training, transportation, lodging, the acquisition, trafficking, and/or smuggling of weapons and arms such as rockets, mortars, rifles, dynamite and other bombs, and the provision of boots, tents, and uniforms.

**ANSWER:**

39.     Please provide all documents authored, published, or disseminated by WAMY relating to the conflicts, crises, or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

40.     Please provide all documents relating to fundraising activities conducted by WAMY in relation to relief or humanitarian efforts, or other operations, in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir,

Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

41.    Please provide all interviews, statements, or speeches by WAMY Personnel regarding the conflicts, crises, or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

42.    Please provide all documents authored, published, or disseminated by WAMY discussing the legitimacy of any armed jihad or resistance by Muslims in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

43.    Please provide all documents authored, published, or disseminated by WAMY discussing the provision of support to mujahideen forces in any part of the World.  For purposes of this request, the term "support" includes any form of financial, medical, logistical,

administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**

44.     Please provide all documents authored, published, or disseminated by WAMY discussing the provision of support to any armed jihad in any part of the World, regardless of whether such jihad was declared legitimate by competent religious authorities.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**

45.     Please provide all interviews, statements, or speeches by WAMY Personnel which mention "jihad" (جهاد) (*see* Definition No. 18), regardless of whether you believe such individual(s) was or was not acting within the scope of his employment at WAMY in relation to such activity.

**ANSWER:**

46.     Please provide all documents authored, published, or disseminated by WAMY which mention "jihad" (جهاد) (*see* Definition No. 18), including without limitation: *Islamic Views*; *Islamic Camps: Objectives, Program Outlines, Preparatory Steps*; *Military Lessons in the*

*Jihad Against the Tyrants*; *A Handy Encyclopedia Of Contemporary Religions & Sects*; and *Al Ansar al Arab fi Afghanistan* ("The Arab Volunteers in Afghanistan").

**ANSWER:**


47.     Please provide all WAMY documents mentioning "jihad" (جهاد) (*see* Definition No. 18), which can be generated via an electronic search of WAMY's computers or electronic data storage systems.

**ANSWER:**


48.     Please provide a list of all publications, newspapers, newsletters, books, reports, pamphlets, videotapes, audiotapes, and/or websites published, authored, and/or financed in whole or in part, by the WAMY.

**ANSWER:**


49.     Please provide all documents illustrating, describing or otherwise relating to WAMY's formation and organizational structure, the date of incorporation, the state of incorporation, the duration of WAMY's existence, any documents relating to WAMY's initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of WAMY (including any subsidiary, affiliate, or branch office).

**ANSWER:**

50.     Please provide all documents relating to the administration, governance, and long-term strategic decision-making of WAMY (including any subsidiary, affiliate, or branch office), including without limitation, articles of incorporation, by-laws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

**ANSWER:**


51.     Please provide all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of WAMY, including without limitation, the Kashmir Muslim Youth Committee and the Camps and Conference Committee.

**ANSWER:**


52.     Please provide all documents identifying each officer, director, trustee, board member, and/or committee member of WAMY (including any subsidiary, affiliate, or branch office).

**ANSWER:**


53.     Please provide all documents relating to any meetings of officers, directors, trustees, managers, boards, committees, and/or internal bodies of WAMY, including without limitation, any agendas or meeting minutes.

**ANSWER:**

54.     Please provide all financial statements, balance sheets, income statements, and annual reports for WAMY.

**ANSWER:**


55.     Please provide all documents relating to any audit, analysis, examination, survey, or review of WAMY's bank accounts, investments, assets, capital, and/or financial affairs, conducted either by employees of WAMY or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or SAMA.

**ANSWER:**


56.     From the period beginning January 1, 1990 through September 11, 2001, please provide all documents identifying projects undertaken or financed by WAMY.

**ANSWER:**


57.     From the period beginning January 1, 1990 through September 11, 2001, please provide all documents summarizing the funds allocated by WAMY to projects undertaken or financed by WAMY.

**ANSWER:**

58.     Please provide all documents relating to any fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by WAMY.  Such documents shall include, but are not limited to, advertisements, promotional materials, invitations to the event, press releases issued in connection with the event, lists of sponsors and attendees, documents identifying the purpose of the fundraiser or conference, materials distributed at the event, written receipts and/or records of the monies collected, written receipts and/or records of how those monies were used and/or distributed, lists of donors, lists of speakers, videos or slides shown at the event, and transcripts, broadcasts, audiotape and/or videotapes of the event.

**ANSWER:**

59.     Please provide all documents relating to the relationship between WAMY's Saudi headquarters and WAMY's branch offices worldwide, including but not limited to the WAMY offices in the United States, Afghanistan, Australia, Austria, Argentina, Bangladesh, Brazil, Canada, Comoro Islands, Congo, Iraq, Italy, Indonesia, France, Jordan, Kenya, Malaysia, Pakistan, New Zealand, Nigeria, Philippines, United Kingdom, Russia, Saudi Arabia, Senegal, Somalia, Sudan, Syria, Tanzania, Thailand, and Uganda.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

60.     Please provide all documents relating to the role of any official, trustee, committee, or board associated with WAMY's headquarters in Saudi Arabia in the fundraising efforts of WAMY's offices outside of Saudi Arabia.

**ANSWER:**

61.     Please provide all documents relating to the relationships between and among WAMY's branch offices worldwide, including but not limited to the WAMY's offices in the United States, Afghanistan, Australia, Austria, Argentina, Bangladesh, Brazil, Canada, Comoro Islands, Congo, Iraq, Italy, Indonesia, France, Jordan, Kenya, Malaysia, Pakistan, New Zealand, Nigeria, Philippines, United Kingdom, Russia, Saudi Arabia, Senegal, Somalia, Sudan, Syria, Tanzania, Thailand, and Uganda.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

62.     Please provide all directives, instructions, and/or communications sent by any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of any WAMY office worldwide to the WAMY offices in the United States.

**ANSWER:**

63.     Please provide all annual, semi-annual and periodic reports submitted by the WAMY branch offices to WAMY headquarters in Saudi Arabia concerning their finances and operations, including without limitation, annual reports, balance sheets, financial statements, bank account summaries, and audits.

**ANSWER:**


64.     Please provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted and followed by WAMY by which charitable contributions are either made to and/or raised by You, how those contributions are collected and accounted for, how it is determined to which charitable designees financial or other forms of support should be distributed, the means by which financial or other forms of support are subsequently disbursed to charitable designees, and the means to ensure that such distributions are being used for charitable purposes.

**ANSWER:**


65.     Please provide all documents relating to the involvement of any official, trustee, committee, or board associated with WAMY's headquarters in Saudi Arabia in determining how funds collected by WAMY's branch offices outside of Saudi Arabia should be allocated and/or in the distribution of funds collected by the offices outside of Saudi Arabia.

**ANSWER:**

66.     Please provide all documents relating to any written or oral communications between WAMY and the KSA and/or SAMA regarding anti-terrorism policies, practices or procedures.   Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

67.     Please provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted by WAMY concerning the acceptance and distribution of monetary donations, which were implemented and used, or are currently being used, to prevent or deter financial crimes such as money laundering or the facilitation of terrorism financing.

**ANSWER:**

68.     Please provide all documents in relating in any way to WAMY meetings, correspondence, statements, or other communications concerning terrorist financing.

**ANSWER:**

69.     Please provide all summaries of contributions received and/or disbursements made by WAMY.

**ANSWER:**

70.     Please provide all information contained in any database maintained by You, identifying or relating to the sources of funds contributed to WAMY, and/or the destination of funds distributed by WAMY.

**ANSWER:**


71.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the Kingdom of Saudi Arabia, including without limitation, the following agencies of the KSA:  the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura Council); the Ministry of Education; and any embassy or consulate of the KSA, including the Islamic Affairs Division of the embassy or consulate.

**ANSWER:**


72.     Please provide all documents WAMY sent to and/or received from the Kingdom of Saudi Arabia, including without limitation, the following agencies of the KSA:  the Supreme Council for Islamic Affairs; the Ministry of Islamic Affairs, Endowments, Dawa and Guidance; the Ministry of Foreign Affairs, Endowments, Dawa and Guidance; the Ministry of Defense and Aviation, Endowments, Dawa and Guidance; the Majlis al Shura (a/k/a the Shura Council); the Ministry of Education; and any embassy or consulate of the KSA, including the Islamic Affairs Division of the embassy or consulate.

**ANSWER:**

73.     Please provide all documents governing, describing, detailing, or otherwise relating to WAMY's role in spreading, propagating, or proselytizing Islam outside of the Kingdom of Saudi Arabia, including without limitation any long term strategy, studies, or papers.

**ANSWER:**

74.     Please provide all documents governing, describing, detailing, or otherwise relating to WAMY's role in advancing the foreign policy objectives of the KSA.

**ANSWER:**

75.     Please provide all documents relating to all accounts in any United States, Saudi Arabian, or foreign banking or financial institution You currently hold, or have held, jointly with the KSA, any members of the Saudi royal family, or any Saudi official acting on behalf of the KSA ("KSA Joint Bank Accounts"), and/or any KSA Joint Bank Accounts over which You currently hold or have held signatory authority.

**ANSWER:**

76.     Please provide all documents relating to the role of the KSA and/or members of the Saudi royal family, in the creation, organization, funding, oversight, supervision, operation, and/or management of WAMY, including any subsidiary, affiliate, and/or branch office.

**ANSWER:**


77.     Please provide all documents relating to WAMY's initial capitalization and any subsequent funding provided by the KSA, members of the Saudi royal family, and/or any other individuals or entities.

**ANSWER:**


78.     Please provide all documents defining, establishing, or relating to WAMY's privileges, obligations, activities, and/or rights under the laws of the KSA.

**ANSWER:**


79.     Please provide all documents relating to any and all laws, statutes, regulations, ordinances, royal decrees, or directives issued by the KSA relating to WAMY, including but not limited to, documents relating to the organization, funding, oversight, supervision, management, and/or control over WAMY's operations, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, determination of which charitable designees should receive support, and/or actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**

80.    Please provide all documents relating to any fundraising events and/or conferences that were held for the benefit of WAMY and were promoted, sponsored, organized, funded, managed, attended, or supervised by the KSA, any member of the Saudi family, and/or any Saudi official acting on behalf of the KSA.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

81.    Please provide all documents relating to any meeting between officers or representatives of WAMY and any official or agency of the KSA.

**ANSWER:**

82.    Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and each of the Charities identified in Attachment D.  In the event that WAMY, including any subsidiary, affiliate, and/or branch office shared office space with any of the Charities identified in Attachment D, please provide such documents.

**ANSWER:**

83.     Please provide all documents WAMY sent to, and/or received from the Charities identified in Attachment D, including without limitation, all documents relating to the transfer of funds between WAMY and those Charities.

**ANSWER:**

84.     Please provide all documents relating to any joint fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by WAMY and any of the Charities identified in Attachment D.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

85.     Please provide all documents relating to any accounts in any banking or financial institution WAMY currently holds, or has held, jointly with or on behalf of the Charities identified in Attachment D, and/or any accounts over which WAMY currently holds or has held signatory authority.

**ANSWER:**

86.     Please provide all documents relating to all information or notification WAMY received prior to September 11, 2001 that any of the Charities identified in Attachment D, or any individual or entity employed by and/or affiliated with those Charities, was associated with or

involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

87.     Please provide all documents relating to all information or notification You received prior to September 11, 2001 that any of the Charities identified in Attachment D, or any individual or entity employed by and/or affiliated with those Charities, may have been or was engaging in conduct unrelated to the Charities' ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

88.     Please provide all documents sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that any of the Charities identified in Attachment D, or any individual or entity employed by and/or affiliated with those Charities, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

89.     Provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any of the Charities identified in Attachment D, or any individual or entity employed by and/or affiliated with those Charities, as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

90.     Provide copies of any and all laws, statutes, regulations, ordinances, or royal decrees which would have prohibited any Islamic charity or benevolent association from: (i) engaging in conduct unrelated to their ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) providing material support or resources to al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations.

**ANSWER:**

91.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and the Benevolence International Foundation ("BIF"), including but not limited to, documents relating to shared office space or common employees of WAMY and BIF, including the branch offices of WAMY and BIF.

**ANSWER:**

92.     Please provide all documents governing, describing, detailing, or otherwise relating to WAMY's and BIF's joint publication and distribution of the book titled *Al Ansar al Arab fi Afghanistan* ("The Arab Volunteers in Afghanistan").

**ANSWER:**

93.     Please provide all documents relating to all information or notification You received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with WAMY was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

94.     Please provide all documents relating to all information or notification You received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with WAMY may have been or was engaging in conduct unrelated to the Charities' ostensible charitable or humanitarian purposes, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist

organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

95.     Please provide all documents You sent to, and/or received from any third party relating to the alleged involvement of WAMY, WAMY Personnel, or any other individual or entity employed by and/or affiliated with WAMY, in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

96.     Please provide all documents You sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that WAMY, WAMY Personnel, or any other individual or entity employed by and/or affiliated with WAMY, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

97.     Please provide all documents relating to any internal investigations conducted by WAMY and/or WAMY Personnel into any alleged criminal, corrupt, or extremist activities of any individual or entity employed by and/or affiliated with WAMY, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

98.     Please provide all documents relating to any action taken by WAMY and/or WAMY Personnel to prevent criminal activities, including the sponsorship of terrorists or radicals, by any individual or entity employed by and/or affiliated with WAMY or any of its branch offices.

**ANSWER:**

99.     Please provide all documents relating to any action undertaken by WAMY and/or WAMY Personnel to remove or purge radical or corrupt elements or individuals from WAMY's branch offices.

**ANSWER:**

100.    Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any WAMY subsidiary, affiliate, branch office, officer, director, trustee, board member, committee member, manager, agent, employee, volunteer, and/or representative as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

101.   Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any WAMY supporter, donor, supplier, contributor, facilitator, speakers, foreign government supporters, business supporters, or banks as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**


102.   Please provide all documents relating to any individual currently detained or incarcerated in Cuba, Afghanistan, or elsewhere in connection with the global war on terrorism, including without limitation, all documents relating to any meetings, interviews, or dialogue WAMY and/or WAMY Personnel have had with individuals held at Guantanamo Bay.

**ANSWER:**


103.   Please provide all documents relating to any WAMY Personnel who have been arrested, detained, or incarcerated in connection with the global war on terrorism, including without limitation, any and all employment records for such individuals.

**ANSWER:**


104.   Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY and any Saar Network-Related Entity and/or any

Saar Network-Related Individual, including without limitation, any and all documents relating to any positions such individuals currently hold, or have held, within WAMY.

**ANSWER:**


105.    Please provide any and all documents WAMY sent to, and/or received from any Saar Network-Related Entity and/or any Saar Network-Related Individual, including without limitation, all documents relating to the transfer of funds between WAMY and such entities and/or individuals.

**ANSWER:**


106.    Please provide all documents relating to any accounts in any banking or financial institution WAMY currently holds, or has held, jointly with or on behalf of any Saar Network-Related Entity and/or any Saar Network-Related Individual, and/or any accounts over which WAMY holds or has held signatory authority.

**ANSWER:**


107.    Please provide all documents relating to any formal or informal record keeping and document retention policies, practices, or procedures maintained by WAMY, any WAMY branch, or any WAMY subsidiary or affiliate.

**ANSWER:**

108.    Please provide all documents relating to any formal or informal document destruction policies, practices, or procedures maintained by WAMY, any WAMY branch, or any WAMY subsidiary or affiliate, including without limitation, descriptions of all documents destroyed by WAMY.

**ANSWER:**

Dated: December 10, 2010                    Respectfully submitted,

*MDL 1570 Plaintiffs' Exec. Committees*

THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Requests for Production of

Documents Directed to the World Assembly of Muslim Youth-Saudi Arabia was served via

electronic mail and U.S. first-class mail, postage prepaid, this 10th day of December 2010, upon:

Omar T. Mohammedi, Esq.
Law Firm of Omar T. Mohammedi, LLC
Woolworth Building
233 Broadway, Suite 801
New York, New York 10279

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C.  20009-7124
(Defendants' Executive Committee's appointed representative to receive discovery requests and
responses in 03-MDL-1570)


J. Scott Tarbutton, Esq.

## ATTACHMENT A

Students Islamic Movement of India ("SIMI")
Dr. Shahid Badar Falah
Safdar Nagori
Mohammad Aamir
Abul Bashar Qasmi
Lashkar-e-Taibah (a/k/a Lashkar-i-Tayyaba; Lashkar-e-Tayyaba; Lashkar-e-Tayyiba; Lashkar-i-Taiba; Lashkar Taiba; LeT)
Hafiz Muhammad Saeed
Zaki ur Rehman Lakhvi
Yusuf Muzammil
Zarrar Shah
Muhammad Ashraf
Mahmoud Mohamed Ahmed Bahaziq
Nasr Javed
Jamaat-e-Islami (a/k/a Jamaat-i-Islami)
Hizbul Mujahideen (a/k/a Hizb al Mujahideen)
Jamiat Taleba Arabia
Syed Ali Shah Geelani
Syed Salahuddin
Dr. Mohammed Ayub Thukar
Sardar Ija Afzal Ohan
Jaish-e-Mohammed (a/k/a Jaish-e-Muhammed; Jaish-e-Mohammad; Jaish-e-Muhammad; JeM)
Maulana Masood Azhar

## ATTACHMENT B

Abdullah Bin Laden
Omar Bin Laden
Abdullah Hassan
Adel Batterjee
Ahmed Musa Shahshani
Ahmed Totonji
Ali Bin Shafi Shehri
Anwar Hajjaj
Anwar Ibrahim
Bandar al Ghamedi
Dr. Abd Alwahab Nurulli
Dr. Abdul Hameed Abu Soliman
Dr. Ahmad Abdul Qadir Bahafzallah
Dr. Manih ibn Hammad al Junahi
Dr. Tawfeeq ibn Ahmed al Qusayyer
Fadel Soliman
Hassan Bahafzallah
Ibrahim S. Abdullah
Ibrahim Awaji
Ibrahim El Zayat
Jamal Barzinji
M. Mohamed Mustafa
Mansour Matboli
Mohamed Abbas Afesh
Mohamed Bin Faris
Mohamed Maghazil
Moutaz Saleh Abu Unaiq
Nazir Qureshi
Omar Humaidi
Saleh al Wohaibi
Salih bin Hussain Abdelrahman
Samir Moabbir
Taha Jabar Alwani
Tawfiq Qasir
Osama Bin Laden
Ahmed Ajaj
Ali Bapir
Alifuddin Turabi
Amir Khattab
Dr. Al Badr al Hamzi
Khalid al Fawwaz
Khalid Mishal
Sheikh Yousef al Qaradawi
Sulaiman Abdul Aziz al Rajhi

## ATTACHMENT C

HAMAS (a/k/a Harakat al Muqawamat al Islamiyyah; a/k/a Islamic Resistance Movement)
Al Aqsa Foundation
Organization for the Care of Orphans
Islamic Charitable Organization-Hebron
Charity Coalition
Interpal (a/k/a Palestinian Relief and Development Fund)
Palestinian Intifada
Council on American-Islamic Relations
Maktab al Khidmat
Moro Islamic Liberation Front
Muslim Brotherhood
Taliban

**ATTACHMENT D**

Al Haramain Islamic Foundation
Al Haramain & Al Masjed Al Aqsa Charity Foundation
Benevolence International Foundation
International Islamic Relief Organization
Muslim World League
Muwafaq Foundation (a/k/a "Blessed Relief")
Rabita Trust
Saudi High Commission
Saudi Joint Relief Committee for Kosovo and Chechnya
Saudi Red Crescent Society
Third World Relief Agency