# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(FM)<br>ECF Case |

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, No. 04 Civ. 1923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, No. 04 Civ. 7065
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04 Civ. 7280


### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – INTERNATIONAL


THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES
December 10, 2010

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – INTERNATIONAL

Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.*, Case No. 04 Civ. 7280, propound and serve on World Assembly of Muslim Youth-International (hereinafter "Defendant" or "WAMY-INTL"), the following Requests for Production of Documents to be answered fully and under oath, pursuant to Rule 34 of the Federal Rules of Civil Procedure, within 30 days of their receipt.[1]

## INSTRUCTIONS

1.      In producing documents and other things, Defendant is requested to furnish all documents or things in its possession, custody or control, regardless of whether such documents or things are possessed directly by Defendant or by Defendant's employees, agents, attorneys, accountants, auditors, investigators, or other representatives.

---

[1] Plaintiffs maintain that the World Assembly of Muslim Youth ("WAMY"), consisting of its headquarters in the Kingdom of Saudi Arabia and numerous branch offices throughout the world, is a single global organization.  Counsel has appeared in these proceedings on behalf of WAMY's headquarters in Saudi Arabia, as well as WAMY's United States branch in Virginia ("WAMY International"), and has filed Motions to Dismiss on behalf of each.  Because of these separate appearances, Plaintiffs are serving discovery upon both "WAMY" and "WAMY International."  In doing so, Plaintiffs do not waive their argument that WAMY and all of its branch offices worldwide constitute a single organization.

2.      Documents are to be produced in full; redacted documents will not constitute compliance with this request.  If any requested document or thing cannot be produced in full, Defendant is requested to produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

3.      In producing documents, Defendant is requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, an identical copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in this request.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by Defendant.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

5.      Documents shall be produced in such fashion as to identify any organization, department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian.

6.      Documents attached to each other should not be separated.

7.      If any documents requested herein have been lost, discarded, destroyed or are otherwise no longer in Defendant's possession, custody or control, they shall be identified as completely as possible including, without limitations, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

8.     Documents shall be produced in such fashion as to identify which request(s) they are responsive to.

9.     Each of these requests shall be continuing.  If at any time after production of these requests any information becomes available that calls for any supplement to a previous response, provide such documents within a reasonable time period from the time when it becomes available.

10.     If Defendant asserts a privilege or other authorized protection from disclosure with respect to any document requested herein, Defendant is required to provide a privilege log containing the following as to each such document withheld:

  a.     The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

  b.     The date of the document or transaction involving the information;

  c.     The names of each author and any and all participants with respect to the information;

  d.     The names of any and all signatories of the document, if any;

  e.     The name of the document's current custodian;

  f.     The present whereabouts of the document and/or the names of all persons with personal knowledge with respect to the information; and

  g.     A statement of the grounds on which the claim of privilege rests with respect to each such document or piece of information withheld.

11.     For the purpose of these discovery requests, except to the extent specifically indicated in the "Definitions" section of this Set of Requests, the words used herein are considered to have, and should be understood to have, their ordinary, every day meaning and

Plaintiffs refer Defendant to any collegiate dictionary such as *Webster's New World Dictionary,* Second College Edition by Prentice Hall Press. In the event Defendant asserts that the wording which has been used is somehow vague, ambiguous, unintelligible, indecipherable, confusing or such other boiler plate objections to avoid squarely addressing the specific discovery request, Plaintiffs refer Defendant to *Webster's Dictionary* for the plain meaning of the terms defined herein.

12.    If you object to any request for production on the ground that it is overbroad, is unreasonably burdensome, or seeks information which is not relevant to the subject matter of this action, you should state what you contend to be the proper scope of the request for production and respond in accordance with what you contend is the proper scope.

13.    Unless otherwise specified, the relevant scope of discovery will be for the time period from January 1, 1990 through the present.

14.    Unless otherwise specified, WAMY-INTL's responses to Plaintiffs' First Set of Requests for Production of Documents Directed to the World Assembly of Muslim Youth-International, including any production of documents by the defendant, shall be directed to the law offices of Motley Rice at 275 Seventh Ave., 2nd Floor, New York, NY 10001, c/o Robert T. Haefele, Esq.

## **DEFINITIONS**

1.    The terms "document" or "documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "Plaintiffs" shall refer to Plaintiffs in *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977, *Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03 Civ. 9849, *Federal Insurance Co., et al. v. al Qaida, et al.*, Case No. 03 Civ. 6978, *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, Case No. 04 Civ. 1923, *Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04 Civ. 5970, *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd, et al.*, Case No. 04 Civ. 7065, *Euro Brokers Inc., et al., v. Al Baraka, et al.*, Case No. 04 Civ. 7279, and *WTC Properties LLC, et al. v. Al Baraka, et al.*, Case No. 04 Civ. 7280.

3.      The terms "Defendant," "You," "Your," and "WAMY-INTL" shall refer to the World Assembly of Muslim Youth-International and any officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the World Assembly of Muslim Youth-International's behalf.

4.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.      The term "person" is defined as any natural person or any business, legal or government entity or association.

6.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7.      The terms "all" and "each" shall be construed as all and each.

8.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      The use of the singular form of any word includes the plural and vice versa.

10.     The term "Contribution" shall mean the giving, bestowing, granting, awarding, bequeathing, and/or providing of money, checks, services, logistical or administrative support, assets, rights, securities, real estate or any goods, tangible or intangible, including the giving of any "zakat."

11.     The term "material support or resources," as defined by 18 U.S.C.S. § 2339A, shall mean currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

12.     The term "international terrorism," as defined by 18 U.S.C.S. § 2331(1), shall mean activities that -- (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

13.     The term "domestic terrorism," as defined by 18 U.S.C.S. § 2331(5), shall mean activities that -- (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended – (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

14.     The terms "Kingdom of Saudi Arabia" or "KSA" shall mean the Kingdom of Saudi Arabia, including any agency, instrumentality, organ, political subdivision, official, or agent of the Kingdom of Saudi Arabia.

15.     The term "WAMY-SA" shall refer to the World Assembly of Muslim Youth-Saudi Arabia and any branch office, officer, director, trustee, employee, attorney, consultant, accountant, agent, alter ego, volunteer, or representative acting on the World Assembly of Muslim Youth-Saudi Arabia's behalf.

16.     The term "SAAR Network-Related Entities" shall mean any of the following entities and any past or present subsidiaries, affiliates, and/or branches of such organizations, their directors, officers, employees, agents and representatives:  African Muslim Agency, Al-Aqsa Educational Fund, AMC Foundation, Amana Limited, Amana Mutual Funds, American Institute for Islamic Societal Studies, American Muslim Foundation, American Muslim Council, Global Enterprises, LLC, Global Holdings, LLC, Grove Corporate Plaza, Grove Street Corporation, Heritage Education Trust, Inc. (a/k/a Marwa Education Trust), Heritage Holdings, Herndon Grand, Inc., Humana Charitable Trust, International Education Trust, Inc., International Institute of Islamic Thought, Inc., International Islamic Charitable Organization ("IICO"), International Islamic Relief Organization, International Graphics Printing Service, Islamic Relief Organization, Makkah Mukarramah Charity Trust, Inc., Mar-Jac Investments, Mar-Jac Farms, Inc., Mar-Jac Holdings, Inc., Mar-Jac Poultry, Inc., Mena Corporation, Mena Estates, Inc. d/b/a Mena for Development, Mena Investments, Inc., Mirza Family Limited Partnership, Muslim World League, Piedmont Poultry, Reston Investments, Inc., SAAR Foundation Canada, Inc., SAAR Foundation, Inc., SAAR International, Inc., Safa Trust, Safty, LLC, Sanabel Al Kheer,

Inc., Sana-Bell, Inc., Sterling Advisors, Inc., Sterling Charitable Gift Fund, Sterling Infogain Fund, LLC, Sterling Investment Group, LLC, Sterling Lynux Works, LLC, Sterling Management Group, Inc., Sterling Packet Stream Fund, LLC, Sterling Ptech Fund, LLC, Sterling Poultry Company, Sterling Stock Investments, LLC, Sterling Technology Fund, LLC (formerly Sterling Malaysian Fund, LLC), The Success Foundation, Inc., Taibah International Aid Association, York Foundation, York International, and 500 Grove Street, LLC.

17.    The term "SAAR Network-Related Individuals" shall mean any of the following individuals: Abdulrahman Alamoudi, Taha Jaber Al Alwani, Abdullah M. Al Mahdi, Abdullah Bin Saleh Al Obaid, Abdullah Sulaiman Al Rajhi, Sulaiman Abdul Aziz Al Rajhi, Hisham Altalib, M. Omar Ashraf, Muhammad Ashraf, Hassan A.A. Bahafzallah, Jamal Barzinji, Ibrahim Hassabellah, Mohammad Jaghlit, M. Yaqub Mirza, Khaled Nouri, Mohamed S. Omeish, Samir I. Salah, Cherif Sedky, Ahmad Totonji, Iqbal J. Unus, and Tarik Hamdi.

18.    The term "jihad" (جهاد) shall refer to, but is not limited to, al jihad bi-al-lisan ("jihad of the tongue"), al jihad bi-al-qalam ("jihad of the pen"), al jihad al nafs ("jihad of the soul"), al jihad bi-al-nafs ("self–sacrificing jihad"), and al jihad bi-al-mal ("financial jihad").

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO THE WORLD ASSEMBLY OF MUSLIM YOUTH – INTERNATIONAL**

1.      Please provide all documents relating to all accounts in United States banking institutions ("U.S. Bank Accounts") established or held in the name of, on behalf of and/or for the benefit of WAMY-INTL, any account for any entity in which WAMY-INTL held any beneficial interest, and/or any account over which WAMY-INTL and its representatives had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY-INTL and the United States banking institutions, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**


2.      Please provide all documents relating to all accounts in foreign banking institutions ("Foreign Bank Accounts") established or held in the name of, on behalf of and/or for the benefit of WAMY-INTL, any account for any entity in which WAMY-INTL held any beneficial interest, and/or any account over which WAMY-INTL and its representatives had signatory authority or had any actual or potential beneficial interest.  Responsive documents shall

include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY-INTL and the foreign banking institutions, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records, audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

3.    Please provide all documents relating to any investigation, inquiry, review, audit, or analysis conducted by any United States state or federal governmental entity, agency and/or department, or any United States-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "United States Investigator"), any foreign government or any foreign-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "Foreign Investigator"), or by the Kingdom of Saudi Arabia or any Saudi Arabian-based regulatory body, law enforcement agency, grand jury, bank, financial institution, accountant, or auditor (collectively "KSA Investigator"), which references or addresses any of the WAMY-INTL accounts identified in, and/or in response to, Requests Nos. 1-2 above.

**ANSWER:**

4.      Please provide copies of all documents that have been seized by, or produced by WAMY-INTL and/or WAMY-SA to, any United States Investigator, any Foreign Investigator, or any KSA Investigator, which references or addresses any of the WAMY-INTL accounts identified in, and/or in response to, Requests Nos. 1-2 above.

**ANSWER:**

5.      Please provide all documents relating to any investigation, audit, analysis, examination, survey, or review of the WAMY-INTL accounts identified in, and/or in response to, Requests Nos. 1-2 above, conducted either by WAMY-INTL, WAMY-SA, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor.  Such documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or the Saudi Arabian Monetary Agency ("SAMA").

**ANSWER:**

6.      Please provide all documents relating to any written or oral communication between or among WAMY-INTL, WAMY-SA, the KSA and/or SAMA, which references or addresses any of the WAMY-INTL accounts identified in, and/or in response to, Requests Nos. 1-2 above.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

ANSWER:

7.      Please provide all documents relating to the 2004 raid of WAMY INTL's offices in Virginia, or any investigation by any governmental authority relating to WAMY INTL and/or WAMY-SA, including without limitation, the arrest of a WAMY official and/or representative during the 2004 raid.

**ANSWER:**


8.      Please provide copies of all documents and things that were in Your possession and which were seized by the U.S. Government between September 11, 2001 and the present.

**ANSWER:**


9.      Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and Abdullah bin Laden and Omar bin Laden. Responsive documents shall include, but are not limited to, their personnel files.

**ANSWER:**


10.     Please provide all documents relating to Abdullah bin Laden's employment with the Saudi Arabian Embassy in Washington, D.C., including without limitation, all documents detailing, describing, or summarizing any and all positions he held at the Embassy.

**ANSWER:**

11.     Please provide all documents relating to any written or oral communication involving Abdullah bin Laden, including without limitation: (i) all communications sent to and/or originating from Abdullah bin Laden while in his capacity as an official, employee, or representative of WAMY-INTL and/or WAMY-SA; and (ii) all communications sent to and/or originating from Abdullah bin Laden while in his capacity as an official, employee, or representative of the Saudi Arabian Embassy in Washington, D.C.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**


12.     Please provide all documents relating to all WAMY INTL and/or WAMY-SA banking or financial accounts for which Abdullah bin Laden and/or Omar bin Laden had signatory authority.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, and/or e-mails, that refer to, relate to, or reflect communications between or among WAMY-INTL, WAMY-SA, Abdullah bin Laden and/or Omar bin Laden and the banking or financial institution, documents detailing the establishment of and/or closing of the account(s), suspicious activity and/or transaction reports, account numbers, monthly account statements, annual account statements, account notices, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, cashier checks, money orders, debit/credit memos, financial ledgers, journals, investment records, real estate records, records of assets, loan records,

audit work papers, audit reports, wire transfers, and any documentation showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from those accounts.

**ANSWER:**

13.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and any Saar Network-Related Entity and/or any Saar Network-Related Individual, including without limitation, any and all documents relating to any positions such individuals currently hold, or have held, within WAMY INTL and/or WAMY-SA.

**ANSWER:**

14.     Please provide any and all documents WAMY INTL sent to, and/or received from any Saar Network-Related Entity and/or any Saar Network-Related Individual, including without limitation, all documents relating to the transfer of funds between WAMY INTL and such entities and/or individuals.

**ANSWER:**

15.     Please provide all documents relating to any accounts in any banking or financial institution WAMY INTL currently holds, or has held, jointly with or on behalf of any Saar Network-Related Entity and/or any Saar Network-Related Individual, and/or any accounts over which WAMY INTL and its representatives holds or has held signatory authority.

**ANSWER:**


16.    Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and HAMAS (a/k/a Harakat al Muqawamat al Islamiyyah; a/k/a Islamic Resistance Movement), including without limitation, the following HAMAS-related entities: the Organization for the Care of Orphans, the Islamic Charitable Organization-Hebron, and the Charity Coalition.

**ANSWER:**


17.    Please provide all documents WAMY INTL sent to and/or received from HAMAS, including without limitation, any HAMAS-related entities such as: the Organization for the Care of Orphans, the Islamic Charitable Organization-Hebron, and the Charity Coalition. Such documents shall include, but are not limited to, all documents relating to the transfer of funds between WAMY INTL and those entities.

**ANSWER:**


18.    Please provide all documents relating to any written or oral communication between or among WAMY-INTL, WAMY-SA, the KSA and/or SAMA, which references or addresses HAMAS and/or any HAMAS-related entities, including but not limited to:  the Organization for the Care of Orphans, the Islamic Charitable Organization-Hebron, and the Charity Coalition.  Responsive documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

19.     Please provide all copies of any and all documents and things that have been seized by, or produced by WAMY INTL to any United States Investigator, any Foreign Investigator, or any KSA Investigator concerning WAMY INLT's and/or WAMY-SA's alleged support for, or connections to, alleged terrorist organizations, groups, individuals, or activities.

**ANSWER:**

20.     Please provide all documents, statements, interviews, press releases, internal memos or other materials relating to any accusation that WAMY INTL and/or WAMY-SA, or any individual or entity employed by and/or associated with WAMY INTL and/or WAMY-SA, was associated with or involved in any military or terrorist activity, plot or attack, indicating an intention to direct conduct against or target conduct toward the United States of America.

**ANSWER:**

21.     Please provide all documents illustrating, describing or otherwise relating to WAMY INTL's formation and organizational structure, the date of incorporation, the state of incorporation, the duration of WAMY INTL's existence, any documents relating to WAMY INTL's initial capitalization and subsequent funding, and/or any other writing relating to the creation or purpose of WAMY INTL.

**ANSWER:**

22.    Please provide all documents relating to the administration, governance, and long-term strategic decision-making of WAMY INTL, including but not limited to, articles of incorporation, by-laws, corporate charters, mission statements, constitutions, documents relating to the duties and powers of any boards and/or committees, statements of purpose, and/or any other related writing.

**ANSWER:**

23.    Please provide all documents relating to the establishment, duties, obligations, objectives, membership, composition and/or authority of any committees, boards and/or internal bodies of WAMY INTL.

**ANSWER:**

24.    Please provide all documents identifying each officer, director, trustee, board member, committee member, employee, and/or volunteer of WAMY INTL. Responsive documents shall include, but are not limited to, their personnel files.

**ANSWER:**

25.    Please provide all documents relating to any and all meetings of officers, directors, trustees, managers, boards, committees, and/or internal bodies of WAMY INTL, including without limitation, any agendas or meeting minutes.

**ANSWER:**

26.     Please provide all financial statements, balance sheets, income statements and annual reports for WAMY INTL.

**ANSWER:**


27.     Please provide all documents relating to all filings submitted to any local, state, or federal agency by WAMY INTL, including without limitation, the Internal Revenue Service or the Securities Exchange Commission.  Responsive documents shall include, but are not limited to, tax returns, tax records, Form 990's, Form 1023's, CMIR's, UCC filings, liens, judgments, and any correspondence concerning WAMY INTL's tax-exempt status.

**ANSWER:**


28.     Please provide all documents relating to any audit, analysis, examination, survey, or review of WAMY INTL's bank accounts, investments, assets, capital, and/or financial affairs, conducted either by employees of WAMY INTL, WAMY-SA, or any third party, including but not limited to, any bank, financial institution, government agency, accountant, or auditor. Responsive documents shall include any audit, analysis, examination, survey, or review ordered, conducted, supervised, overseen, or reviewed by the Kingdom of Saudi Arabia and/or SAMA.

**ANSWER:**

29.      From the period beginning January 1, 1990 through September 11, 2001, please provide all documents identifying projects undertaken or financed by WAMY INTL.

**ANSWER:**


30.      From the period beginning January 1, 1990 through September 11, 2001, please provide all documents summarizing the funds allocated by WAMY INTL to projects undertaken or financed by WAMY INTL.

**ANSWER:**


31.      Please provide all documents relating to any fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by WAMY INTL. Responsive documents shall include, but are not limited to, advertisements, promotional materials, invitations to the event, press releases issued in connection with the event, lists of sponsors and attendees, documents identifying the purpose of the fundraiser or conference, materials distributed at the event, written receipts and/or records of the monies collected, written receipts and/or records of how those monies were used and/or distributed, lists of donors, lists of speakers, videos or slides shown at the event, and transcripts, broadcasts, audiotape and/or videotapes of the event.

**ANSWER:**

32.     Please provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted and followed by WAMY INTL by which charitable contributions are either made to and/or raised by WAMY INTL, how those contributions are collected and accounted for, how it is determined to which charitable designees financial or other forms of support should be distributed, the means by which financial or other forms of support are subsequently disbursed to charitable designees, and the means to ensure that such distributions are being used for charitable purposes.

**ANSWER:**

33.     Please provide all documents relating to the involvement of any official, trustee, committee, or board associated with WAMY's headquarters in Saudi Arabia in determining how funds collected by WAMY INTL should be allocated and/or in the distribution of funds.

**ANSWER:**

34.     Please provide all summaries of contributions received and/or disbursements made by WAMY INTL.

**ANSWER:**

35.     Please provide all information contained in any database maintained by WAMY INTL and/or WAMY-SA, identifying or relating to the sources of funds contributed to WAMY INTL, and/or the destination of funds distributed by WAMY INTL.

**ANSWER:**

36.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and WAMY-SA.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

37.     Please provide all documents WAMY INTL sent to, and/or received from WAMY-SA, including without limitation, all documents relating to the transfer of funds between WAMY INTL and WAMY-SA.

**ANSWER:**

38.     Please provide all directives, instructions, and/or communications sent by any officer, director, trustee, board member, committee member, manager, agent, employee, or representative of WAMY-SA to WAMY INTL.

**ANSWER:**

39.     Please provide all annual, semi-annual and periodic reports submitted by WAMY INTL to WAMY headquarters in Saudi Arabia concerning its finances and operations, including without limitation, annual reports, balance sheets, financial statements, bank account summaries, and audits.

**ANSWER:**


40.     Please provide all documents relating to the role of any official, trustee, committee, or board associated with WAMY's headquarters in Saudi Arabia in the fundraising efforts of WAMY INTL.

ANSWER:


41.     Please provide all documents relating to any written or oral communications between WAMY INTL and WAMY-SA and/or the KSA regarding anti-terrorism policies, practices or procedures.  Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**


42.     Please provide all documents relating to any standards, procedures, protocols, and/or guidelines adopted by WAMY INTL concerning the acceptance and distribution of monetary donations, which were implemented and used, or are currently being used, to prevent or deter financial crimes such as money laundering or the facilitation of terrorism financing.

**ANSWER:**

43.     Please provide all documents in relating in any way to WAMY INTL meetings, correspondence, statements, or other communications concerning terrorist financing.

**ANSWER:**


44.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and WAMY's branch offices worldwide, including but not limited to the WAMY offices in Afghanistan, Australia, Austria, Argentina, Bangladesh, Brazil, Canada, Comoro Islands, Congo, Iraq, Italy, Indonesia, France, Jordan, Kenya, Malaysia, Pakistan, New Zealand, Nigeria, Philippines, United Kingdom, Russia, Saudi Arabia, Senegal, Somalia, Sudan, Syria, Tanzania, Thailand, and Uganda.   Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**


45.     Please provide all documents WAMY INTL sent to and/or received from WAMY's branch offices worldwide.  Responsive documents shall include, but are not limited to, the transfer of funds between WAMY INTL and those branch offices.

**ANSWER:**

46.     Please provide all documents relating to WAMY INTL's organization, funding, oversight, supervision, management, and/or control over WAMY Canada's operations, including but not limited to, appointment and termination of personnel, accounting, banking and financial transactions, fundraising, determination of which charitable designees should receive support, and/or actual distribution of financial and non-monetary support to charitable designees.

**ANSWER:**


47.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY-INTL and the Saudi Arabian Embassy in Washington, D.C., including without limitation, the Islamic Affairs Division of the Embassy.

**ANSWER:**


48.     Please provide all documents WAMY-INTL sent to and/or received from the Saudi Arabian Embassy and/or the Islamic Affairs Division of the Embassy.   Responsive documents shall include, but are not limited to, the transfer of funds between WAMY-INTL and the Saudi Arabian Embassy and/or Islamic Affairs Division.

**ANSWER:**


49.     Please provide all documents relating to the role of the Saudi Arabian Embassy and/or the Islamic Affairs Division in the creation, organization, funding, oversight, supervision, operation, and/or management of WAMY INTL.

**ANSWER:**

50.     Please provide all documents relating to WAMY INTL's initial capitalization and any subsequent funding provided by the Saudi Arabian Embassy and/or the Islamic Affairs Division, and/or any other individuals or entities.

**ANSWER:**

51.     Please provide all documents relating to any fundraising events and/or conferences that were held for the benefit of WAMY INTL and/or WAMY-SA and were promoted, sponsored, organized, funded, managed, attended, or supervised by the Saudi Arabian Embassy and/or the Islamic Affairs Division.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

52.     Please provide all documents relating to any meeting between officials or representatives of WAMY INTL and/or WAMY-SA and any official or representative of the Saudi Arabian Embassy and/or the Islamic Affairs Division.

**ANSWER:**

53.     Please provide all documents relating to any written or oral communications between WAMY INTL and/or WAMY-SA and the Saudi Arabian Embassy and/or the Islamic Affairs Division regarding anti-terrorism policies, practices or procedures. Such documents shall include, but are not limited to, correspondence, letters, memoranda, notes, emails, facsimiles or otherwise.

**ANSWER:**

54.     Please provide all documents governing, describing, detailing, or otherwise relating to the relationship between WAMY INTL and each of the Charities identified in Attachment A. In the event that WAMY INTL shared office space with any of the Charities identified in Attachment A, please provide such documents.

**ANSWER:**

55.     Please provide all documents WAMY INTL sent to, and/or received from the Charities identified in Attachment A, including without limitation, all documents relating to the transfer of funds between WAMY INTL and those Charities.

**ANSWER:**

56.     Please provide all documents relating to any joint fundraising event and/or conference promoted, sponsored, attended, organized, managed, or supervised by WAMY-INTL and any of the Charities identified in Attachment A.  Responsive documents shall include, but are not limited to, correspondence, meeting minutes, notes, conference materials, educational materials, organizational diagrams and charts, manuals, e-mails, and web-based messages.

**ANSWER:**

57.     Please provide all documents relating to any accounts in any banking or financial institution WAMY INTL currently holds, or has held, jointly with or on behalf of the Charities identified in Attachment A, and/or any accounts over which WAMY INTL currently holds or has held signatory authority.

**ANSWER:**

58.     Please provide all documents authored, published, or disseminated by WAMY INTL and/or WAMY-SA relating to the conflicts, crises, or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

59.    Please provide all documents relating to fundraising activities conducted by WAMY INTL and/or WAMY-SA in relation to relief or humanitarian efforts, or other operations, in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

60.    Please provide all interviews, statements, or speeches by officials or representatives of WAMY INTL and/or WAMY-SA regarding the conflicts, crises, or conditions facing Muslim communities in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

61.    Please provide all documents authored, published, or disseminated by WAMY INTL and/or WAMY-SA discussing the legitimacy of any armed jihad or resistance by Muslims in Afghanistan, Albania, Algeria, Bosnia & Herzegovina, Chechnya, Egypt, Ethiopia, Europe, Indonesia, Kashmir, Kenya, Kosovo, Malaysia, Pakistan, Palestine, the Philippines, Sudan, Somalia, Tanzania, Turkey, and Yemen.

**ANSWER:**

62.     Please provide all documents authored, published, or disseminated by WAMY INTL and/or WAMY-SA discussing the provision of support to mujahideen forces in any part of the World.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**


63.     Please provide all documents authored, published, or disseminated by WAMY INTL and/or WAMY-SA discussing the provision of support to any armed jihad in any part of the World, regardless of whether such jihad was declared legitimate by competent religious authorities.  For purposes of this request, the term "support" includes any form of financial, medical, logistical, administrative, religious, political or any other form of assistance, whether provided directly or indirectly.

**ANSWER:**


64.     Please provide all interviews, statements, or speeches by officials or representatives of WAMY INTL and/or WAMY-SA which mention "jihad" (جهاد) (*see* Definition No. 18), regardless of whether you believe such individual(s) was or was not acting within the scope of his employment at WAMY in relation to such activity.

**ANSWER:**

65.     Please provide all documents authored, published, or disseminated by WAMY INTL and/or WAMY-SA which mention "jihad" (جهاد) (*see* Definition No. 18), including without limitation: *Islamic Views*; *Islamic Camps: Objectives, Program Outlines, Preparatory Steps*; *Military Lessons in the Jihad Against the Tyrants*; *A Handy Encyclopedia Of Contemporary Religions & Sects*; and *Al Ansar al Arab fi Afghanistan* ("The Arab Volunteers in Afghanistan").

**ANSWER:**

66.     Please provide all WAMY documents mentioning "jihad" (جهاد) (*see* Definition No. 18), which can be generated via an electronic search of WAMY INTL's computers or electronic data storage systems.

**ANSWER:**

67.     Please provide a list of all publications, newspapers, newsletters, books, reports, pamphlets, videotapes, audiotapes, and/or websites published, authored, and/or financed in whole or in part, by WAMY INTL and/or WAMY-SA.

**ANSWER:**

68.     Please provide all documents relating to all information or notification WAMY INTL received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA was associated with or involved in: (i) the sponsorship of any radical, extremist, or terrorist organization; (ii) criminal or corrupt activities; or (iii) any military, radical or terrorist activity, plot, or attack.

**ANSWER:**

69.     Please provide all documents relating to all information or notification WAMY INTL received prior to September 11, 2001 that any individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA may have been or was engaging in conduct unrelated to WAMY's ostensible charitable or humanitarian purpose, including without limitation, diverting funds or otherwise providing material support or resources to: (i) Islamic radicals, fundamentalists, extremists or persons or organizations associated with international terrorism or domestic terrorism; and/or (ii) al Qaida, other terrorist organizations and/or individuals sympathetic to al Qaida or other terrorist organizations, regardless of whether you believe such person(s) or entity(s) was acting within the scope of his employment in relation to any such activities.

**ANSWER:**

70.    Please provide all documents sent to, and/or received from any third party relating to the alleged involvement of WAMY INTL and/or WAMY-SA, or any other individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA, in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

71.    Please provide all documents sent to, and/or received from, the Kingdom of Saudi Arabia, relating to any accusation that WAMY INTL and/or WAMY-SA, or any other individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA, was associated with or involved in any criminal, corrupt, or extremist activity, including without limitation any terrorist or radical religious, political or social activities.  Responsive documents shall include, but are not limited to, all documents sent to, and/or received from, the Saudi Arabian Embassy in Washington, D.C. and the Islamic Affairs Division of the Embassy.

**ANSWER:**

72.    Please provide all documents relating to any internal investigations conducted by WAMY INTL into any alleged criminal, corrupt, or extremist activities of any individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA, including without limitation any terrorist or radical religious, political or social activities.

**ANSWER:**

73.     Please provide all documents relating to any action taken by WAMY INTL to prevent criminal activities, including the sponsorship of terrorist or radicals, by any individual or entity employed by and/or affiliated with WAMY INTL and/or WAMY-SA.

**ANSWER:**

74.     Please provide all documents relating to any action undertaken by WAMY INTL to remove or purge radical or corrupt elements or individuals from WAMY INTL and/or WAMY-SA.

**ANSWER:**

75.     Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any WAMY subsidiary, affiliate, branch office, officer, director, trustee, board member, committee member, manager, agent, employee, and/or representative as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

76.     Please provide all documents relating to any disciplinary action taken, or any decision to terminate any relationship with any WAMY supporter, donor, supplier, contributor, facilitator, speakers, foreign government supporters, business supporters, or banks as a result of financial irregularities, suspicious activities, investigations into possible links to the financing of terrorist organizations, and/or the support of violence or jihad.

**ANSWER:**

77.     Please provide all documents relating to any formal or informal record keeping and document retention policies, practices, or procedures maintained by WAMY-INTL.

**ANSWER:**

78.     Please provide all documents relating to any formal or informal document destruction policies, practices, or procedures maintained by WAMY-INTL, including without limitation, descriptions of all documents destroyed by WAMY-INTL.

**ANSWER:**

Dated: December 10, 2010                          Respectfully submitted,

_MDL 1570 Plaintiffs' Exec. Committees_
THE MDL 1570 PLAINTIFFS'
EXECUTIVE COMMITTEES

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiffs' First Set of Requests for Production of

Documents Directed to the World Assembly of Muslim Youth-International was served via

electronic mail and U.S. first-class mail, postage prepaid, this 10th day of December 2010, upon:

Omar T. Mohammedi, Esq.
Law Firm of Omar T. Mohammedi, LLC
Woolworth Building
233 Broadway, Suite 801
New York, New York 10279

Alan R. Kabat, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(Defendants' Executive Committee's appointed representative to receive discovery requests and
responses in 03-MDL-1570)

_____
J. Scott Tarbutton, Esq.

# ATTACHMENT A

Al Haramain Islamic Foundation
Al Haramain & Al Masjed Al Aqsa Charity Foundation
Benevolence International Foundation
International Islamic Relief Organization
Muslim World League
Muwafaq Foundation (a/k/a "Blessed Relief")
Rabita Trust
Saudi High Commission
Saudi Joint Relief Committee for Kosovo and Chechnya
Saudi Red Crescent Society
Third World Relief Agency

PHILADELPHIA\2962586\1  117430.000