# EXHIBIT 6

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Paul J. Hanly, Jr., *Co-Liaison Counsel*<br>HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA HAND DELIVERY**

December 19, 2013

The Honorable Frank Maas
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 740
New York, NY 10007-1312

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

      The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter motion and the accompanying exhibits and respectfully request that the Court enter an Order, pursuant to F.R.C.P. 37(a), compelling defendant World Assembly of Muslim Youth ("WAMY") to immediately produce: (1) all documents and materials in its possession, custody, and control responsive to plaintiffs' requests for production of documents relating to WAMY's Canadian branch office ("WAMY-Canada"); (2) all documents and materials relating to the Canadian government's investigation and audit of WAMY-Canada; and (3) all documents and materials WAMY sent to, and/or received from, U.S. government agencies relating to Freedom of Information Act ("FOIA") requests, pursuant to the Court's June 12, 2013 Memorandum Decision and Order (ECF NO. 2730).

      Since the commencement of merits discovery, WAMY has demonstrated great resistance to making any meaningful production of documents relating to its overseas branch offices, including WAMY-Canada. Despite assuring this Court that it had custody and control over the documents in the possession of WAMY-Canada, and further promising plaintiffs that it was working directly with members of that office to collect and organize responsive documents for production in the United States, WAMY suddenly reversed course in the face of a Canadian government investigation publicly implicating the Canadian branch in the direct support of two designated terrorist entities. Incredulously, WAMY now claims that it has no such control over

The Honorable Frank Maas
December 19, 2013
Page 2

---

the office and its documents, and in support thereof, asserts that WAMY-Canada has been uncommunicative and operating as a separate and distinct entity for years. But this is nothing more than pure fiction, concocted in an effort to suppress the production of relevant documentation that will corroborate the investigation's findings that WAMY's Saudi headquarters was knowingly and intentionally providing material, financial and other support to al Qaeda linked entities via its closely controlled alter ego in Canada. Notwithstanding this recent gamesmanship, plaintiffs submit that WAMY-Saudi Arabia has held continuous and undisturbed control over WAMY-Canada since the branch office opened in or around 1998 through the present, as WAMY-Saudi Arabia itself acknowledged prior to public disclosure of the Canadian government investigation. Thus, WAMY-Saudi Arabia is currently in possession, custody and control of the requested documents.

WAMY's strategy of obstructionist conduct in these proceedings is further impeding the production of highly relevant materials relating to the investigation itself, including without limitation, all documents reflecting WAMY's internal deliberations regarding the investigation and the widely reported terrorism allegations leveled at WAMY-Canada, and all communications with the Saudi government regarding same. WAMY is refusing to produce these important documents, relying once again upon the baseless and misleading assertion that it does not have "custody or control" over the information.

Finally, WAMY is in violation of this Court's June 12, 2013 Memorandum Decision and Order (ECF NO. 2730) directing the parties to produce all FOIA related documents. Certain documentation produced by WAMY suggests WAMY has received, and failed to turn over, a large number of documents produced by the Departments of Justice and Treasury.

Accordingly, plaintiffs submit that judicial intervention is necessitated given WAMY's continued refusal to produce responsive materials and information in this litigation.

## I. WAMY IS DELIBERATELY MISLEADING THIS COURT REGARDING THE NATURE OF ITS RELATIONSHIPS WITH ITS CANADIAN BRANCH OFFICE AND DESIGNATED TERRORIST ENTITY BENEVOLENCE INTERNATIONAL FOUNDATION IN AN EFFORT TO WITHHOLD RESPONSIVE DOCUMENTS

By way of background, WAMY's tactics to conceal the Canadian branch documents began immediately after plaintiffs served the defendant with discovery seeking documents concerning WAMY-Canada's and other overseas offices' operations and finances, including but not limited to, bank account records, auditing documents, financial statements, annual reports, donor lists, and recipients of aid. *See* Plaintiffs' First Set of Requests for Production of Documents at Exhibit A, Request Nos. 59-65; *see also* Plaintiffs' Second Set of Requests for Production of Documents at Exhibit B, Request Nos. 1-10. Plaintiffs' requests also seek the robust and meticulous reporting the Canadian branch office is required to regularly transmit to WAMY's Riyadh headquarters, including banking and financial reports, operations and activity reports, and administrative and employee reports. *Id.*

The Honorable Frank Maas
December 19, 2013
Page 3

WAMY objected to plaintiffs' initial discovery relating to WAMY-Canada and the defendant's other branch offices, arguing that it did not have the requisite control over WAMY branches outside the Kingdom, and thus could not produce documents in the physical possession of those offices.[1] However, WAMY eventually withdrew its objection to the production of documents in the possession of the branch offices, but only after plaintiffs provided the defendant with press releases generated by several of WAMY's own overseas offices acknowledging that they operate under the direct supervision and control of WAMY's Saudi headquarters. *See* November 11, 2011 letter to the Honorable Frank Maas submitted jointly by the Plaintiffs' Executive Committees and the Defendants' Executive Committee, Exhibit D, at p. 10 (counsel for WAMY withdrawing its objection and representing to this Court that "WAMY does have custody and control over such documents.").

During a March 8, 2012 meet-and-confer with plaintiffs, counsel for the defendant reiterated that WAMY-Saudi Arabia continued to have custody and control over the documents in all of its branches. During that discussion, counsel for plaintiffs specifically asked WAMY's counsel to confirm WAMY-Saudi Arabia's control over the Canadian branch office, and that WAMY-Saudi Arabia was collecting documents from that office. In response, WAMY's counsel unambiguously stated that he and his client were working with employees of the Canadian branch office to collect and transport responsive documents to WAMY's New York office for production to plaintiffs.

Not more than a month later, however, WAMY changed its position yet again, asserting that it does not have custody or control over WAMY-Canada or the documents stored within that office. The veracity, integrity, and timing of that reversal could not have been more suspicious, coming only after reports surfaced in the media on or about March 6, 2012 that the Canadian government conducted an extensive investigation and audit of WAMY-Canada and revoked its designation as a tax exempt registered charitable organization, and after plaintiffs notified all MDL counsel on March 26, 2012 of their proposed Request for International Judicial Assistance (Letters Rogatory) directed to the Canada Revenue Agency ("CRA"), the government authority responsible for conducting the audit. As the Court will recall, in addition to finding that WAMY-Canada violated certain tax laws, the CRA concluded that: (i) "WAMY maintained close relationships with and provided funding to organizations that were engaged in providing resources to entities engaged in terrorist activities;" (ii) *WAMY-Canada shared common officers, office space, contact information, and bank accounts with Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Fund-Canada ("BIF-Canada")*; and (iii) *WAMY-Canada provided direct funding to Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Foundation ("BIF-USA")*.[2] *See* Exhibit E.

---

[1] *See* WAMY's Responses to Plaintiffs' First Set of Requests for Production of Documents at Exhibit C, at pp. 3, 24, 29, 35, 37, 41-45, 48 ("Defendant is not in custody or control of documents in the possession of other WAMY subsidiaries, affiliates or branch offices.").

[2] In addition to the designations by the United States, both BIF-Canada and BIF-USA were added to the United Nations Security Council's Consolidated Sanctions List in November 2002 for having specific ties to al Qaeda.

The Honorable Frank Maas
December 19, 2013
Page 4

---

To substantiate this sudden reversal, WAMY advanced an implausible and elaborate story of a "rogue" office that had ceased communicating with its Saudi headquarters and was conducting its affairs, illicit or otherwise, as a separate and distinct entity from WAMY-Saudi Arabia. *See* Omar Mohammedi's April 10, 2012 letter to the Honorable Frank Maas at Exhibit F (representing to this Court that "WAMY Canada does not consider itself affiliated with WAMY Saudi Arabia" and "has not been cooperative with WAMY it its efforts to obtain documents in the possession of WAMY Canada."); *see also* Mr. Mohammedi's April 9, 2012 letter to the director of WAMY-Canada, Dr. Ayman Taher (describing him as uncooperative, hostile, "unwilling to work with WAMY Saudi Arabia," refusing "to provide us with any documents in your possession," and further expressing concerns regarding "your lack of communications with WAMY Saudi Arabia for the past several years."), also at Exhibit F (*see* Exhibit 3 to the April 10, 2012 submission).

But the defendant's assertion that "there is no functional relationship between WAMY and WAMY Canada"[3] is pure fantasy as evidenced not only by the CRA's findings,[4] but by WAMY's assurances just weeks earlier that it was working directly with the Canadian branch to collect documents responsive to plaintiffs' discovery and transport them to the United States.

Assuming, *arguendo*, that there was some validity to WAMY's characterization of the Canadian branch and its director as "rogue" elements of the organization, Canadian law surely provides WAMY with legal remedies to regain rightful ownership, custody, and control over WAMY-Canada's assets, monies, property, and documents. After almost two years, however, there is no evidence that WAMY has undertaken a "full-court press" to obtain the requested materials, including but not limited to, making official requests to the Bank of Montreal and TD Canada Trust to obtain all relevant banking records for the following accounts used by WAMY-Canada – Bank of Montreal Acct. No. xxxx-xxx6-611; Bank of Montreal Acct. No. xxxx-xxx3-221; Bank of Montreal Acct. No. xxxx-xxx4-951; Bank of Montreal Acct. No. xxxx-xxx0-543; and TD Canada Trust Acct. No. xxxxx-x1827.[5] Notably, the CRA's audit determined that WAMY-Canada maintained a joint bank account at Bank of Montreal with designated BIF-Canada. *See* Exhibit E, at p. 13/22.

Assuming even further that WAMY has been unable to successfully obtain documents in the possession of WAMY-Canada via available legal means or other channels, plaintiffs contend

---

[3] Exhibit F (*see* Exhibit 3 to the April 10, 2012 submission, at p. 3).

[4] The CRA concluded that WAMY's Saudi headquarters maintains "substantial control" over WAMY-Canada's finances and "uses this control to carry out its objectives in Canada" – a determination supported by the CRA's review of WAMY-Canada's *own* documents. *See* Exhibit E, at p. 6/22. According to Canadian authorities: (i) "WAMY (Saudi Arabia) provides substantially all of WAMY's operations funds;" (ii) "WAMY representatives advised the CRA during the audit that WAMY (Saudi Arabia) exercised a significant amount of control over their expenses;" and (3) "WAMY provides annual reports to WAMY (Saudi Arabia) regarding the organizations that it funds and the amounts it disburses to these organizations." *Id.* at pp. 5/22-7/22.

[5] As far as plaintiffs can discern from their review of the defendant's limited document production, WAMY has produced only 10 pages of bank statements relating to Acct. No. xxxx-xxx6-611 (WAMY-SA01865-1872, 1885-1886), a Bank of Montreal receipt (WAMY-SA01887), and copies of blank checks issued to WAMY by Bank of Montreal (WAMY-SA01785, 1889).

The Honorable Frank Maas
December 19, 2013
Page 5

---

that a large majority of the requested documents regarding that branch (and all other overseas offices) are currently in the possession, custody, and control of WAMY-Saudi Arabia and can be easily collected and produced by the defendant. As WAMY's own documents make clear, WAMY-Saudi Arabia closely monitors the financial, administrative, and operational activities of its domestic and overseas offices. Indeed, the very limited documentation WAMY has produced to date confirms the Saudi headquarters' rigid control and supervision over its Canadian branch.[6] Per the directives of WAMY's Secretary General and Board of Trustees, the branch offices must regularly transmit reports back to the Secretary General's office regarding their bank accounts, administrative functions and activities, revenues and expenses, and various projects undertaken in the name of WAMY.[7]

It therefore logically follows that many of the requested documents which the defendant claims it cannot obtain from its "rogue" Canadian office – bank account records, financial and auditing reports, operations reports, delegation reports, personnel files, communications with WAMY-SA and other offices, and other relevant materials – are currently stored in WAMY's Saudi headquarters, particularly documents generated during the 1998-2001 time period when WAMY-Canada is alleged to have engaged in this nefarious relationship with designated terrorist entity Benevolence International Foundation – *a relationship WAMY's Secretary General unequivocally represented to this Court never existed.* See Declaration of Saleh Al-Wohaibi, ECF No. 1502-2, at ¶ 11, attached hereto as Exhibit G ("WAMY has never had any connection with Benevolence International Foundation (BIF).").[8]

---

[6] The documents WAMY has produced consist largely of correspondence (primarily from the 1999-2002 timeframe) transmitted between WAMY-Canada, WAMY's Secretary General, and WAMY's Deputy Secretary General for Overseas Offices. The letters discuss a variety of issues relating to the activities of WAMY-Canada, including but not limited to, the resignation and appointment of WAMY-Canada office managers, the office budget, expenses, the office's registration as a tax exempt organization in Canada, status of bank accounts, educational camps, requests for financial aid for Canadian Islamic schools, the provision of meals for Eid al Fitr, and WAMY's representation at certain Islamic conferences and ceremonies held in Canada. Other documents produced by the defendant include required disclosure forms submitted by the Canadian branch to the Canadian government, a few balance sheets and financial statements, correspondence between WAMY-Canada and WAMY's U.S. branch regarding budgetary issues, and other transactional documents.

[7] A February 2000 memorandum authored by WAMY's Secretary General details the various mechanisms used by the Saudi headquarters to maintain the desired level of control and supervision over the domestic and overseas offices, including the periodic reporting required of those offices. According to the rules and regulations approved by the WAMY Board of Trustees, the Secretary General is directly responsible for the supervision of WAMY offices in the North American region (which includes the Canadian branch) and has the authority to open branch offices where needed, appoint the regional and branch office managers, and set their salaries. The memorandum further states that the Secretary General shall receive copies of all financial, administrative, and activity reports generated by the regional and branch offices. *See* WAMY-SA001124-1133. During an earlier meeting of WAMY's Board of Trustees held in September 1998, the Board similarly recommended that all overseas branch offices should be required to send periodic reporting to WAMY's Saudi headquarters and the office of the Secretary General, including: (1) monthly reports identifying the activities of the branch; (2) detailed activity reports, accompanied by photographs and videos (if possible), every three months; and (3) regular financial reports accompanied by invoices and receipts. *See* WAMY INTL E005275-5282.

[8] WAMY submitted the Secretary General's affidavit in connection with its November 2005 motion to dismiss, specifically in support of the defendant's contention that plaintiffs' allegations set forth in their complaints, RICO Statements, and other pleadings regarding WAMY's relationship with BIF are "plain factual misrepresentations."

The Honorable Frank Maas
December 19, 2013
Page 6

---

The deliberate attempt on the part of WAMY to mislead this Court and the parties regarding the true nature of its relationships with the Canadian branch office and BIF is not only disturbing but emblematic of a defendant that has grown increasingly dismissive of these proceedings and has strategically chosen to engage in obstructionist behavior to frustrate discovery. The defendant's failure to produce the requested documents continues to prejudice plaintiffs' ability to obtain information critical to the claims asserted against the defendant. Plaintiffs submit that judicial intervention is necessary and respectfully request that the Court order WAMY to immediately produce all responsive documents in its possession, custody, and control relating to WAMY-Canada.

Just as egregious, WAMY has failed to produce documents in response to plaintiffs' supplemental discovery specifically seeking materials relating to the Canadian government's investigation and audit of WAMY-Canada. Those requests seek *inter alia*: (i) all documents relating to the investigation and audit conducted by the Canadian government; (ii) all communications and meetings between or among WAMY headquarters, WAMY-Canada, Dr. Ayman Taher and/or other WAMY personnel concerning the investigation and audit; (iii) all communications between the Canadian government and WAMY concerning the investigation and audit; (iv) all documents relating to WAMY's relationship with BIF-Canada, including records for all shared bank accounts; (v) all documents relating to the transfer of funds between WAMY's Saudi headquarters and WAMY-Canada; and (vi) all documents relating to the transfer of funds between WAMY and BIF-USA. *See* Plaintiffs' Third Set of Requests for Production of Documents at Exhibit H, Request Nos. 37-51.

WAMY has simply refused to turn over any responsive documents since objecting to those requests, asserting once again that "WAMY does not have custody or control over WAMY Canada." *See* WAMY's Supplemental Responses to Plaintiffs' Third Set of Requests for Production of Documents at Exhibit I, at pp. 25-35. For the reasons set forth above, the defendant's reliance on that objection to withhold responsive materials is baseless and without merit. Further, given the public reporting of the CRA's investigation and terrorism allegations directed at WAMY, it is inconceivable that WAMY officials did not immediately engage in internal meetings and communications to address those accusations and develop a comprehensive response strategy. Nor is it plausible to believe that WAMY did not confer with senior representatives of the Saudi government to discuss the CRA's investigation and subsequent unfavorable reporting in the media. The defendant's ensuing narrative of a "rogue" office confirms this in fact occurred, yet the defendant has failed to produce any such documentation as requested above. Accordingly, plaintiffs respectfully request that this Court

---

*See* ECF No. 1502, at pp. 12-13. Certain of the allegations WAMY argued were factually incorrect include the following: *Continental* Compl. ¶ 436 ("The WORLD ASSEMBLY OF MUSLIM YOUTH (or "WAMY") and BIF are tightly connected organizations that share the same leadership and work together on a number of joint projects."); *Federal* Compl. ¶ 90 ("BIF worked closely with several other purported charities, including the World Assembly of Muslim Youth … in connection with its efforts to sponsor al Qaida's activities."); *Federal* Compl. ¶ 164 ("WAMY is closely affiliated with defendant BIF. In fact, WAMY and BIF shared a common address in Peshawar, Pakistan and frequently shared common officers and directors."). *Id.* at p. 13, n. 19. It is impossible to reconcile the statements in al Wohaibi's affidavit with the CRA's findings that WAMY shared officers, office space, and bank accounts with BIF.

The Honorable Frank Maas
December 19, 2013
Page 7

order WAMY to immediately produce all responsive documents relating to the CRA's investigation and audit, including without limitation, any and all communications (both internally within the organization and with the Saudi government), memoranda, reports, meeting minutes, and other relevant documents regarding same.

In the event WAMY will not comply with the Court's directives and promptly produce all requested documents relating to the Canadian branch office and the CRA's investigation and audit, plaintiffs respectfully submit that severe sanctions are warranted given the egregious and continuing conduct the defendant has engaged in to purposely withhold the production of responsive (and likely damaging) documents from plaintiffs.

## II.  WAMY HAS FAILED TO PRODUCE ALL FOIA DOCUMENTS AND CORRESPONDENCE AS DIRECTED BY THE COURT

Defendant WAMY has failed to comply with the Court's Order of earlier this year, prompted by WAMY and the other defendants, directing both plaintiffs and defendants to produce all Freedom of Information Act ("FOIA") documents and correspondence with U.S. government agencies by June 24, 2013. *See* Memorandum Decision and Order, ECF NO. 2730 (June 12, 2013). Indeed, correspondence produced by WAMY suggests the defendant may be in possession of a large number of documents produced to WAMY by the Departments of Justice and Treasury.[9]

For instance, WAMY submitted a FOIA request to the Department of Justice on March 16, 2012 seeking documents relating to the FBI's investigation and raid on WAMY's Virginia office in 2004. The DOJ responded on May 15, 2012 acknowledging receipt of the request which was referred to the FBI for processing (Case No. 1190147-000). Thereafter, by letter dated October 2, 2012, the FBI advised Mr. Mohammedi that they "have located approximately 3,982 pages and 3 CD's of media which are potentially responsive to the FOIA." The letter further states that each CD contains approximately 500 pages per release and that "if all of the pages that are potentially responsive to your request are released, you will owe $433.20 in duplication fees to receive a paper copy and 3 CD's of media or $155.00." By letter dated October 11, 2012, Mr. Mohammedi agreed to pay the $155.00 fee for all documents to be released in CD format. Counsel corresponded again on December 13, 2012, asking the FBI to produce "the requested documents as soon as possible."[10] No further correspondence relating to the March 2012 request has been produced.

---

[9] Plaintiffs received a CD with WAMY's FOIA production on or about June 24, 2013 (WAMY SA 6538-6855). A number of those documents contained redacted information, including the names of certain individuals and entities, addresses, and dates. *See* Plaintiffs' November 14, 2013 letter response in opposition to WAMY's October 24, 2013 motion to compel, at pp. 3-4 (discussing WAMY's redaction of critical pieces of information). In response to plaintiffs' objections, WAMY provided a supplemental production of FOIA related documents on November 20, 2013 (WAMY SA 6856-6925), which consists primarily of documents originally produced on June 24 but without those same redactions.

[10] All of the correspondence referenced above relating to WAMY's March 16, 2012 FOIA request is attached hereto as Exhibit J.

The Honorable Frank Maas
December 19, 2013
Page 8

---

Based on plaintiffs' prior FOIA experiences during the course of this litigation, U.S. government FOIA offices typically do not provide copy and/or electronic scanning cost estimates unless they are certain that all documents located and collected in response to a FOIA request, or at least a smaller segment of the initial collection, will be produced to the requestor. The FBI's October 2012 letter, coupled with WAMY's consent to pay applicable fees, plausibly suggests that a potentially large number of FOIA documents has been produced to the defendant. If so, WAMY is not in compliance with this Court's Order and should be compelled to promptly produce those documents received from the FBI.

WAMY also submitted a FOIA request to the Treasury Department on November 14, 2012 seeking *inter alia* all documents relating to WAMY which were relied upon by R. Richard Newcomb, former Director of the Office of Foreign Assets Control, and Stuart A. Levey, former Under Secretary of Terrorism and Financial Intelligence, in preparation for their testimony before members of Congress in 2003 and 2005 respectively. By letter dated December 13, 2012, Mr. Mohammedi's office responded to a December 4, 2012 letter from Treasury, stating that he consents to pay the fee associated with the production of documents responsive to his request "which is estimated at $828.00" – similarly suggesting that Treasury located documents responsive to WAMY's FOIA request and was preparing to produce them to the defendant.

As far as plaintiffs can tell from the random nature of WAMY's FOIA production,[11] thereafter on March 4, 2013, Mr. Mohammedi responded to a February 22, 2013 letter from Treasury which allegedly states that certain documents are being withheld from disclosure pursuant to Title 5 U.S.C. §552, Exemptions (b)(7)(A) and (b)(7)(C). Treasury subsequently denied Mr. Mohammedi's appeal to release the exempted documents in an April 18, 2013 letter.

---

[11] WAMY submitted a motion to compel on October 24, 2013 concerning alleged deficiencies in plaintiffs' production of FOIA related correspondence, arguing primarily that the correspondence was produced in an "incomprehensible, seemingly random order," and further asserting that letters and accompanying attachments were not produced together but separated throughout the production. Ironically, WAMY's FOIA production suffers from the very same criticisms it directs at plaintiffs' FOIA production. For example, WAMY produced a March 4, 2013 letter to the Department of Treasury, OFAC (WAMY SA 6538-39), which identifies three attachments – letters dated June 23, 2011, November 14, 2012, and February 22, 2013. None of the attachments directly follow the March 4 letter. While the November 14 letter can be found several pages later in the production at WAMY SA 6545-46, the June 23 letter is located approximately 239 pages away near the conclusion of the production (WAMY SA 6778-79).

WAMY has also produced several pieces of correspondence regarding a FOIA request submitted and received by the FBI, which is referenced as Case No. 1190147-000. Rather than packaging and producing those related documents together as WAMY admonishes plaintiffs for allegedly not doing, the defendant has produced those letters randomly throughout the FOIA production. *See* WAMY SA 6541-42, 6597, and 6628.

As a final example, WAMY produced a July 2, 2012 letter (WAMY SA 6833-34) it sent to the Department of Homeland Security ("DHS") in response to an April 26, 2012 letter received from DHS advising that WAMY's FOIA request was not sufficiently detailed for processing. Again, rather than produce all of the related correspondence in a successive sequence as the defendant argues plaintiffs must do, the April 26 letter from DHS was separated by approximately 221 pages of unrelated correspondence at WAMY SA 6611-12. The July 2 letter further states that it is attaching a March 16, 2012 letter, but that correspondence is not attached and was found nearly 233 pages earlier in the FOIA production. *See* WAMY SA 6599-6600.

The Honorable Frank Maas
December 19, 2013
Page 9

---

Mr. Mohammedi then sent another letter, dated May 1, 2013, in response to a "letter dated April 19, 2013 from Marshall H. Fields Jr., Assistant Director of Information Disclosure at OFAC" regarding the original FOIA request. No further correspondence has been identified in connection with the defendant's November 14, 2012 request.[12]

Plaintiffs are entitled to a full and complete production of FOIA documents pursuant to the Court's June 12, 2013 Memorandum Decision and Order and respectfully ask the Court to direct WAMY to produce all such documents.

Respectfully submitted,

*Jerry S. C./in*
For THE MDL 1570 PLAINTIFFS' EXECUTIVE
COMMITTEES

cc:  The Honorable George B. Daniels, U.S.D.J. (Via Hand Delivery)
     Members of Plaintiffs' Executive Committees (Via Email)
     Omar T. Mohammedi, Esq. (Via Email)
     Frederick Goetz, Esq. (Via Email)
     Alan R. Kabat, Esq. (Via Email)

17599285\1

---

[12] All of the correspondence referenced above relating to WAMY's November 14, 2012 FOIA request is attached hereto as Exhibit K.