# EXHIBIT 7

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, *Co-Chair* <br> MOTLEY RICE LLC <br> James P. Kreindler, *Co-Chair* <br> KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair* <br> Sean Carter, *Co-Chair* <br> COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel* <br> KREINDLER & KREINDLER LLP <br> Paul J. Hanly, Jr., *Co-Liaison Counsel* <br> HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP | J. Scott Tarbutton, *Liaison Counsel* <br> COZEN O'CONNOR |

**VIA HAND DELIVERY**

February 14, 2014

The Honorable Frank Maas
United States District Court for the
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007-1312

  Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (FM)

Dear Judge Maas:

  The Plaintiffs' Executive Committees, on behalf of all plaintiffs, submit this letter brief in reply to the February 4, 2014 letter brief of defendant World Assembly of Muslim Youth-Saudi Arabia ("WAMY") (hereinafter "Opposition"),[1] which was submitted in response to plaintiffs' December 19, 2013 motion to compel the defendant to produce: (1) all documents relating to WAMY's Canadian branch office ("WAMY-Canada"), including all materials relating to the Canadian government's investigation and audit of WAMY-Canada; and (2) all documents WAMY sent to, and/or received from, U.S. government agencies relating to Freedom of Information Act ("FOIA") requests.

  For the reasons set forth below, WAMY's Opposition merely confirms WAMY's failure to undertake vigorous and exhaustive "good faith" efforts to secure documentation responsive to plaintiffs' discovery. The arguments WAMY offers in an effort to explain its failure to produce any meaningful documentation concerning its sanctioned Canadian branch conflict with WAMY's own prior statements and objective facts, and raise further questions concerning the credibility of WAMY's representations concerning the relationship between the Canadian branch and the Saudi headquarters. Further, WAMY's approach to production of its own FOIA documents reveals a clear resistance to this Court's directives and deadlines concerning disclosure of FOIA-related materials. Accordingly, Plaintiffs respectfully submit they are entitled to the relief sought through the December 19, 2013 motion to compel.

---

[1] WAMY's 17-page single spaced letter brief is in violation of this Court's specific instruction that "any moving or opposition paper be limited to 12 pages if the letters are single spaced." *See* Transcript, Mar. 19, 2013 Hearing, p. 4.

The Honorable Frank Maas
February 14, 2014
Page 2

### I. WAMY CONTINUES TO CHANGE ITS STORY CONCERNING ITS RELATIONSHIP WITH WAMY-CANADA

In attempting to explain its sudden inability to obtain any documents from its Canadian branch following the release of the CRA's investigation and audit in March 2012, WAMY asserted that "it never anticipated that WAMY-Canada would not be cooperative" or would show "extreme resistance" to WAMY's requests for documents responsive to plaintiffs' discovery. Opposition, p. 1 (stating that "WAMY was stunned and disturbed" by WAMY-Canada's refusal to cooperate). In a complete contradiction, WAMY would now have the Court believe that it has had a "historically difficult relationship" with the branch office since it opened in 1997. *Id.*, pp. 5-8. According to WAMY: (i) WAMY-Canada failed to submit the requisite financial and activity reports during its years under Mohammed Khatib's leadership of the office (1997-2001) (a time period when WAMY provided material and financial support to designated terrorist entity Benevolence International Foundation ("BIF"), as determined by the Canadian government); and (ii) "WAMY-Canada did not receive funding from WAMY for some time" as a result of the office's purported failure to submit those reports to WAMY headquarters. These new claims simply do not add up.

First, the assertion of a historically contentious relationship does not harmonize with the limited documentation produced by WAMY regarding its branch office. On the contrary, the documents show an open line of professional and friendly communications between Khatib and high-level WAMY officials at headquarters, including former WAMY Secretary General Dr. Maneh al Johani, regarding a range of issues – bank accounts, office activities, and WAMY youth camps.[2] In fact, at the end of his tenure as head of WAMY-Canada in May 2001, WAMY headquarters sent a letter to Khatib thanking him for his service on behalf of the branch office and requesting that he stay in contact with the new office director, Talhah al Jarrad.[3] WAMY was apparently so pleased with his leadership of the branch that Khatib remained a WAMY-Canada board member through at least the end of 2003.[4]

WAMY's claim that it did not fund WAMY-Canada for an extended period of time is also belied by WAMY's own documents. Indeed, several communications show WAMY-Canada regularly received a yearly budget while Khatib headed that office. As the correspondence makes clear, WAMY-Canada's budget was historically included in the North American region's budget which headquarters routinely sent to WAMY's Washington D.C. office (headed by Abdullah bin Laden). Once received, the D.C. office would then distribute WAMY-Canada's share of the budget

---

[2] WAMY SA 4441-43 (Khatib sending information regarding new bank account no. xxx xxxx xx xxx x4302 in November 2000); 4479-80 (Khatib providing information regarding new bank account no. xxx8272 in December 1999); 4399-4401 (Khatib sends Johani a table summarizing the office's activities for 1998); 4352-55, 4356-60, 4361-64, 4444-48, 4449-53 (Khatib transmitting reports regarding Islamic conferences, ceremonies at the Saudi Embassy in Ottowa, WAMY youth camps and field visits); 4454-56 (1998 letter from Johani thanking Khatib for his efforts in relation to a WAMY camp in Canada).

[3] WAMY SA 4516-17.

[4] WAMY SA 1877. Had the Canadian branch in fact been uncooperative and habitually in violation of reporting requirements, there would be extensive documents reflecting those problems and seeking to obtain compliance in the possession of the Saudi headquarter. The absence of any such documentation is glaring.

The Honorable Frank Maas
February 14, 2014
Page 3

to Khatib.[5] The documents further show that WAMY-Canada, under Jarrad's subsequent directorship, was also receiving monetary transfers in 2002-2003 from WAMY's D.C. office for budgetary purposes. *See* Exhibit A.

In further support of its present contention that the Canadian office has long operated as a separate and distinct entity, WAMY has submitted a 2004 memorandum authored by WAMY's legal department. *See* WAMY Exhibit 6. Responding to an inquiry from WAMY officials regarding the legal status of WAMY-Canada under Canadian law, WAMY's counsel advises that Canada's regulatory laws view the branch as an independent, national Canadian organization. Not mentioned in WAMY's brief is counsel's warning that Canadian law will not recognize WAMY-Canada as an independent entity where it is "subject to the supervisions and management of [WAMY] in the way of appointing some officials," "directing their programs," and "supervising and controlling its activities." *Id.* Indeed, any notion that WAMY-Canada operated as an independent organization was rendered moot by the CRA's investigation which concluded that there was no "separation between the activities of" WAMY-Canada and WAMY Saudi Arabia. *See* December 19 Motion, Exhibit E, p. 7/22 (stating that WAMY-Canada "has little or no independent function").

Moreover, this narrative of a "historically difficult relationship" does not square with statements by WAMY Secretary General Dr. Saleh al Wohaibi who boasted to the media in 2006 that WAMY's branch office in Canada was "was doing very well" in terms of donation collection. *See* Exhibit B.[6]

Finally, WAMY objects to the production of documents relating to any and all communications and meetings (both internally within WAMY and with the Saudi government) regarding the CRA's investigation and report, suggesting that "such meetings did not occur between WAMY officials in Saudi Arabia." Opposition, p. 10. But that statement is evasive. Indeed, in the next paragraph, WAMY asserts that it "made efforts to challenge the report and retrieve the documents from the CRA." *Id.* Furthermore, WAMY has submitted several letters from Dr. Wohaibi who appears to be a central figure in WAMY's purported attempts to secure responsive documents. This obvious contradiction affirms that WAMY officials at the highest levels deliberated over the news of the CRA's report and developed a strategy to respond to those allegations. Documents relating to those meetings and communications should be immediately produced.

---

[5] WAMY SA4578-80 (April 1999 letter from Khatib to Johani requesting an increase in the WAMY-Canada budget); 4483-84 (April 1999 letter from WAMY to Abdullah bin Laden advising that WAMY-Canada's budget is included in the North America budget); 4406-07 (April 2000 letter from WAMY to Khatib advising that WAMY-Canada's budget was sent to the DC office and to coordinate with them); 4537-38 (April 2000 letter from Khatib to D.C. office requesting WAMY-Canada's share of the North American region's budget); *see also* 1748 (WAMY balance sheet for 2000 showing a wire transfer of $127,534.80 from WAMY headquarters to WAMY-Canada).

[6] Interestingly, WAMY does not offer any evidence to refute plaintiffs' argument that Dr. Wohaibi intentionally misled this Court regarding WAMY's relationship with BIF. December 19 Motion, p. 5. Rather, WAMY describes it as a baseless attack on Dr. Wohaibi "without any ascertainment of the facts in this case" and "will save the opportunity" to address it another day. Opposition, p. 2. Plaintiffs respectfully submit the facts are crystal clear.

The Honorable Frank Maas
February 14, 2014
Page 4

Plaintiffs respectfully submit that WAMY's Opposition merely evidences an effort on WAMY's part to develop a new narrative concerning its relationship with WAMY-Canada to serve its present interests. Indeed, that WAMY's story changed so drastically after the release of the CRA report is all too convenient. WAMY represented during discovery proceedings that it has control over WAMY-Canada and the documents in that office, and should not be permitted to alter its story now. Further, extensive documents pertaining to the Canadian branch certainly exist in the headquarter office. The Court should direct WAMY to produce all such materials promptly.

## II. WAMY HAS FAILED TO UNDERTAKE GOOD FAITH EFFORTS TO SECURE RESPONSIVE DOCUMENTATION RELATING TO WAMY-CANADA

Even if the Court were to accept WAMY's representations regarding its alleged contentious relationship with the Canadian branch as true, there is simply no credible evidence corroborating WAMY's claims that it has "gone above and beyond its duty" to secure and produce WAMY-Canada documents.[7] Rather, WAMY's Opposition makes clear that it did *nothing* to pursue responsive documents for the past year and a half, and only recently has undertaken nominal and largely hollow efforts to do so when confronted with plaintiffs' present motion seeking Court intervention – a disturbing and on-going pattern of conduct exhibited by several of the Saudi charity and individual defendants during this discovery process. A chart summarizing the limited and reactionary efforts undertaken by WAMY to obtain documentation since the public reporting of the CRA's investigation in March 2012 is attached at Exhibit C.

Remarkably, WAMY admits that it has not communicated with, and/or attempted to follow up with, Dr. Al-Taher and/or his Canadian lawyers regarding WAMY-Canada documents since April 2012.[8] Although WAMY sent letters to Dr. Al-Taher and his counsel (only after receipt of plaintiffs' December 19, 2013 Motion), requesting that Dr. Al-Taher immediately sign an authorization form permitting the CRA to release documents relating to the audit, it is noteworthy to mention that plaintiffs originally requested the signed authorization from WAMY in August 2012. WAMY's unwillingness to secure that authorization until just a few weeks ago does not in any way support its repeated claims that "WAMY wants the documents as much, if not more, than the Plaintiffs."[9] Nor does WAMY's ability to obtain the signed authorization with relative speed and ease after service of plaintiffs' motion, without any overt objection from Dr. Al-Taher, credibly reflect this purported difficult relationship.

Importantly, WAMY has expressed on numerous occasions how the public reporting of the CRA's investigation and findings is adversely impacting WAMY's name and reputation.[10] Despite these grave concerns over the organization's image, WAMY's Opposition confirms that it has done nothing in the past 2 years to challenge the CRA's revocation of its tax exempt status. Although a

---

[7] Opposition, p. 9; WAMY Ex. 12, p. 1 ("We have been doing everything in our power to get these documents.").

[8] WAMY Ex. 9, p. 1 (corresponding with Dr. Al-Taher's Canadian counsel and stating "[w]e were last in contact with you in April of 2012 on behalf of our client….").

[9] Opposition, p.1.

[10] WAMY Ex. 8, p. 1 (claiming Dr. Al-Taher "soiled the WAMY name due to the allegations raised by the CRA"); Ex. 11, p. 1 (stating that the "CRA report is damaging to WAMY's reputation"); Ex. 13, p. 2 ("Our organization's name is at stake.").

The Honorable Frank Maas
February 14, 2014
Page 5

formal appeal was drafted and undergoing revisions in early April 2012,[11] the appeal was never filed. WAMY contends that it was precluded from submitting the appeal on behalf of its branch office, but has offered no evidence to substantiate that claim. Instead, WAMY attempts to direct blame to everyone but itself for not filing the appeal.[12] Nor is there any evidence that the defendant has pursued and/or initiated any legal action to remove Dr. Al-Taher from his position as director of WAMY-Canada and regain rightful ownership and possession of WAMY-Canada's assets, monies, property, and documents, despite threatening Dr. Al-Taher and his counsel that it would do so two years ago.[13] Today, WAMY merely continues to issue those same hollow threats.[14]

Finally, WAMY's response confirms that WAMY has done nothing in the past two years to obtain relevant banking records for at least 5 accounts WAMY-Canada held at Bank of Montreal and TD Canada Trust. December 19 Motion, p. 4. As the Court will recall, the CRA's audit concluded that WAMY-Canada jointly held an account at Bank of Montreal with BIF. *Id.* The Opposition makes no mention of those accounts and/or any attempts to formally request and obtain those records directly from the banks.

### III.   FREEDOM OF INFORMATION ACT ("FOIA") REQUESTS

Following submission of the December 19 Motion, plaintiffs received a January 31, 2014 supplemental FOIA production from WAMY totaling 327 pages (WAMY SA 6926-7252). Thereafter, by letter dated February 7, 2014, plaintiffs received another supplemental production on 12 CDs (WAMY SA 7253-8436). Described as "an exhaustive set of up to date FOIA to FOIA documents," the CDs consist of approximately 4,343 pages of documents. An initial review of these productions raises two important issues. First, there are a handful of FOIA requests and communications which predate the Court's June 14, 2013 Memorandum Decision and Order, and the Court-ordered June 24, 2013 production deadline. Given the limited number of FOIA documents in WAMY's possession at the time of the Order and WAMY's requirement to produce those documents by the deadline, it is difficult to understand why these earlier documents were not produced until after receipt of plaintiffs' motion to compel. There are likewise a number of FOIA requests and communications which were generated after the June 24 deadline (some in recent months), but not produced in a timely manner, raising concerns that WAMY delayed production for some perceived strategic advantage and only produced those materials at this time due to plaintiffs' motion. To the extent WAMY delayed either of these categories of documents for some strategic value, it shows a lack of good faith on WAMY's part.

---

[11] WAMY Ex. 19.

[12] Opposition, pp. 10-11 (stating that "WAMY made efforts to challenge the report and retrieve the documents from the CRA," but that Dr. Al-Taher and his Canadian lawyer "took on an adversarial approach towards WAMY" and "obstructed WAMY's efforts"); Ex. 9, p. 1 ("It was unfortunate that you did not do anything to help WAMY Canada and file an appeal on its behalf … you obstructed our ability to do so.").

[13] WAMY Ex. 7, p. 3 ("We will also issue a subpoena to depose you and other directors of WAMY Canada."); Ex. 8, p. 3 ("For the foregoing reasons, we ask that you cease and desist from using WAMY's name and causing further damage to WAMY's name.").

[14] WAMY Ex. 9, p. 2 (stating that "we will have no choice but to pursue all available legal recourse available to our client to gain possession of these documents and materials"); Ex. 11, p. 2 ("Thereafter, we will have no choice but to take the necessary legal actions against you for abusing WAMY's name and refusing to cooperate in clearing WAMY's name.").

The Honorable Frank Maas
February 14, 2014
Page 6

Respectfully submitted,

*Jerry S. Goldman*

for THE MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

cc: The Honorable George B. Daniels (Via Hand Delivery)
    Members of Plaintiffs' Executive Committees (Via Email)
    Omar T. Mohammedi, Esq. (Via Email)
    Fred Goetz, Esq. (Via Email)
    Alan Kabat, Esq. (Via Email)

LEGAL\18193695\1 00000.0000.000/117430.000