# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF AND OVERNIGHT MAIL**

March 1, 2018

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

  RE: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Daniels:

  The Plaintiffs Executive Committees (PECs), on behalf of the signatories to the *Lloyd's* First Amended Complaint as to the non-sovereign defendants and the signatories to the Consolidated Amended Complaint (CAC) as to the Kingdom of Saudi Arabia (Kingdom) and Saudi High Commission for Relief of Bosnia & Herzegovina (SHC)[1], write in regards to Al Rajhi Bank's (ARB) February 23, 2018 notice of supplemental authorities concerning *Linde v. Arab Bank,* No. 16-2119-cv (L) (2d Cir. Feb. 9, 2018), and *Fields v. Twitter,* 881 F.3d 739 (9th Cir. 2018) (ECF No. 3904).

*1.* <u>*Linde* Further Demonstrates That Plaintiffs State Claims Against The Non-Sovereign Defendants Under the ATA.</u>

  ARB urges in its letter that *Linde's* discussion of the scienter requirement for aiding and abetting claims under JASTA is helpful to its bid for dismissal on 12(b)(6) grounds, ARB Letter at 2, but that is incorrect.  To the contrary, *Linde* confirms that aiding and abetting liability requires only a showing that the defendant was "generally aware" of its role in an overall tortious scheme, and expressly does not require any showing of specific intent to make the criminal scheme succeed or that the defendant "knew" of the specific attacks at issue. *Linde* at 31.  *Linde* also confirms that the fact-sensitive and inference-driven inquiry as to a defendant's "general awareness" is the

---

[1] This includes plaintiffs who have adopted or joined in these pleadings.

"function and province of the jury." *Id.* at 33 (quoting *Harrison v. Mo. Pac. R. Co.,* 372 U.S. 248, 249 (1963)). Here, plaintiffs' factual allegations concerning ARB's efforts to conceal unusual transfers in support of terrorists, the CIA's determination that ARB's principals were "aware" that terrorists were using the bank, and U.S. deliberations about conducting covert operations against ARB, are more than sufficient to establish ARB's "general awareness" of its "role" in al Qaeda's terrorist campaign *at the pleading stage*.[2]

ARB's letter conspicuously fails to address *Linde's* discussion of the "substantial assistance" element of aiding and abetting liability under JASTA, which broadly repudiates ARB's (and other defendants') arguments for dismissal for failure to state a claim. In particular, *Linde* directly affirms plaintiffs' arguments that: (1) the substantial assistance inquiry for aiding and abetting claims under JASTA is distinct from the causation standard governing primary liability under the pre-JASTA ATA, *Linde* at 34; (2) the substantial assistance analysis requires the weighing of evidence concerning six factors, including the nature of the act encouraged, the amount of assistance provided, and the duration of the defendant's assistance to the primary wrongdoer, *id.* at 30, 33; and (3) the weight to be afforded to the evidence relating to those six factors "is a matter for argument to the factfinder." *Id.* at 33. *Linde* also confirms that because the September 11th attacks indisputably were both a "but for" and "proximate" cause of plaintiffs' injuries, JASTA imposes "liability on the alternative theory that [ARB] aided and abetted acts of terrorism by [al Qaeda]" and "[t]hus, causation provides no grounds for" dismissal of plaintiffs' claims.[3] *Id.* at 36.

All of these aspects of *Linde* directly undermine ARB's bid for dismissal for failure to state a claim, and underscore that JASTA has dramatically altered the framework for liability determinations under the ATA.

---

[2] It is important to note that the *Linde* decision was rendered *after* summary judgment and *after* a six-week trial on the merits of Arab Bank's liability. Here, the claims as to ARB remain at the Rule 12 stage without the benefit of any discovery or factual development beyond the pleadings.

[3] Even as to primary liability, ARB misstates *Linde* and its import here. ARB claims that *Linde* supports its argument that plaintiffs have failed to allege that ARB's actions satisfy the elements of an act of international terrorism, because the provision of material support in violation of 18 U.S.C. § 2339B is not a "*per se* predicate act of international terrorism." ARB Letter at 1. However, the Court in *Linde* "conclude[d] only that providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to excuse the charging error here and compel a finding that as a matter of law, the services were violent and life-endangering acts that appeared intended to intimidate or coerce civilians or to influence governments." *Linde* at 27. However, and as especially relevant here, the Court held that the fact-sensitive inquiries as to whether the provision of such services is properly considered "routine" and whether the related facts permit a plausible inference that they were violent or life-endangering acts are "questions of fact for a jury to decide." *Id.* The Court thus confirmed that such activities *may* support primary liability under the ATA. In any case, plaintiffs' claims against ARB do not rest on mere conclusory allegations that it provided "routine banking services" to al Qaeda, but instead offer detailed factual allegations that ARB knowingly collaborated with al Qaeda in support of its efforts to attack the United States, as confirmed by U.S. actions targeting ARB for its role in sponsoring al Qaeda.

The Honorable George B. Daniels
March 1, 2018
P a g e 3

_____

2. *Linde* Further Demonstrates That the Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims Against the Kingdom and SHC.

Although *Linde* concerns only the standards of substantive liability under the ATA, and does not address the separate question of subject matter jurisdiction under JASTA's exception to sovereign immunity for terrorist attacks on U.S. soil, it broadly undermines the arguments the Kingdom and SHC have advanced concerning the adequacy of plaintiffs' showings of tortious conduct and causation (which are directed to the wrong standards in any case).

Initially, plaintiffs reiterate that the analysis of jurisdictional causation under JASTA is distinct from the standard of causation applicable to plaintiffs' substantive causes of action at the merits stage, and merely requires a showing of "some reasonable connection" between the defendant's actions and plaintiff's injuries. This lower standard for jurisdiction is necessary to ensure that the jurisdictional inquiry accommodates any substantive causes of action that could be brought against foreign sovereigns (including statutory and common law aiding and abetting theories). CAC Opp. at 8. Consistent with this principle, *Linde's* discussion of the scope and operation of aiding and abetting liability underscores why the Kingdom and SHC's arguments suggesting that JASTA's immunity provision should be construed to require "but for" or "traditional proximate"[4] causation, KSA Br. at 10-14, are incorrect (although plaintiffs have satisfied those standards as well).

Further, even assuming the Kingdom and SHC were correct in arguing that the jurisdictional inquiry under JASTA in some way implicates the standards applicable to plaintiffs' substantive causes of action, which it does not, *Linde* confirms that the defendants' arguments concerning the sufficiency of plaintiffs' showings of "tortious conduct" as to their substantive claims are misguided and incorrect. For example, *Linde's* holding that aiding and abetting liability requires only a showing that the defendant was "generally aware" of its role in an overall tortious endeavor refutes the heightened scienter standards the Kingdom and SHC suggest at various times in their briefs.

Plaintiffs' detailed factual allegations and evidence[5] concerning the involvement of Saudi agents and employees in directly aiding the September 11th hijackers and plot, and the Kingdom's own massive funding and material support of al Qaeda (provided *directly* to al Qaeda by the Saudi

_____

[4] Of course, proximate cause is an infamously nebulous concept, itself subject to many formulations. As this Court has held in the closely related context of claims arising under the State Sponsor exception, 28 U.S.C. § 1605A, the "reasonable connection" standard is itself a formulation of "proximate causation." *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001)*, 2011 U.S. Dist. LEXIS 155899, at *202 (S.D.N.Y. Dec. 22, 2011) (Daniels, J.) ("Proximate causation may be established by a showing of a 'reasonable connection' between the material support provided and the ultimate act of terrorism.").

[5] While admissible evidence is not required, plaintiffs have provided such admissible evidence in the form of their expert affidavits, and the FBI and government reports (admissible under Fed. R. Evid. 803(6) and 803(8)) and charity business records (admissible under Fed. R. Evid. 803(6)), previously submitted of record.

The Honorable George B. Daniels
March 1, 2018
P a g e 4

---

government officials who headed the so-called charities), plainly meet these standards,[6] and readily satisfy the less demanding requirements of JASTA's immunity exception.

To the extent the Kingdom and SHC seek to avoid the standards of substantive aiding and abetting liability by arguing that JASTA does not authorize aiding and abetting claims against foreign sovereigns (a theory it raised for the first time in its reply brief), the Kingdom's arguments to that affect are untimely, irrelevant to the jurisdictional inquiry, and wrong as a substantive matter for at least three reasons. First, as the Kingdom conceded in its opening brief (KSA Br. at 13), plaintiffs have asserted claims pursuant to *state common law* aiding and abetting and conspiracy theories. Second, the text, structure, and purpose of JASTA confirm that the Act's aiding and abetting cause of action is available in cases against foreign states, where JASTA's immunity exception provides jurisdiction.[7] Third, JASTA's jurisdictional provision and broader structure plainly provide for attribution of the conduct of agents and employees. CAC Opp. at 10-14. Those agents and employees are "persons" who plainly are subject to JASTA's aiding and abetting provision, 18 U.S.C. § 2333(d), and whose liability-producing conduct is attributable to the Kingdom under JASTA (as the Kingdom concedes).

3.   *Fields* Has no Meaningful Relevance to the Present Disputes

Finally, ARB's reliance on the Ninth Circuit's decision in *Fields v. Twitter, Inc.*, is misplaced. Most significantly, *Fields* solely concerned claims for primary liability under the ATA, and the decision's discussion of causation for such primary liability claims has no bearing whatsoever on Plaintiffs' claims for aiding and abetting liability under JASTA.

---

[6] Although not implicated by the immunity analysis, these claims satisfy the Second Circuit's causation standard for ATA primary liability claims as well. In this regard, the *Linde* Court made clear the narrow scope of the Second Circuit's earlier holding in *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118 (2d Cir. 2013) ("*Terrorist Attacks VI*"), holding that it stood only for the proposition "that the ***mere*** provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not ***necessarily*** establish causation." Op. at 27 (emphasis added). In other words, the Court made clear that even claims based on the mere provision of financial services to terrorists ***can*** lead to civil liability under the ATA. Most obviously, the detailed factual allegations and evidence relating to the material support provided by the Kingdom and SHC go well beyond "mere financial services."

[7] Section 3(c) of JASTA expressly authorizes plaintiffs to bring a claim "against a foreign state in accordance with §2333," and the aiding and abetting cause of action established by JASTA falls within that provision. In addition, the statement of JASTA's purpose at §2(b) makes clear that the "purpose of this Act is to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting or wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorists activities against the United States." These provisions of JASTA trump any limitation that might flow from the definition of the word "person" in the Dictionary Act, and confirm that JASTA's aiding and abetting cause of action is available in suits against foreign states. *See Rowland v. California Men's Colony,* 506 U.S. 194 (1993). This conclusion is reinforced by the mandate of 28 U.S.C. § 1606, providing that where a foreign state is not entitled to immunity, "it shall be liable in the same manner and to the same extent as a private individual under like circumstances."

Further, as to ATA primary liability claims, the Ninth Circuit merely held that a showing of "proximate causation" is necessary, which in the Ninth Circuit's view requires allegations showing "some direct relation" between the defendant's conduct and the plaintiff's injury.[8]  Fields, 881 F.3d at *19-20.  In the context of a claim against Twitter, arising from two murders committed by a single alleged ISIS member during a rifle attack, the Ninth Circuit found this requirement lacking because "There are no facts indicating that [alleged ISIS member] Abu Zaid's attack was in any way impacted, helped by, or the result of ISIS's presence on the [Twitter] social network." Id. at *25.

In stark contrast to the amorphous claims in Fields arising from Twitter's alleged failure to take steps to prevent ISIS from accessing social media platforms, plaintiffs' primary liability claims against ARB and other defendants arise from their years–long and witting collaborations with al Qaeda, in support of that terrorist organization's campaign to carry out sophisticated international terrorist attacks against the United States.  Plaintiffs have offered detailed factual allegations demonstrating how the September 11th attacks were "impacted, helped by, or the result of" ARB's (and other defendants') support.  Thus, to the extent the holding in Fields even applies, it supports plaintiffs' position, not defendants'.

In sum, Plaintiffs' prior briefing and argument on these issues is only strengthened by the Second Circuit's decision in Linde, and the Ninth Circuit's decision in Fields does not alter that conclusion in any way.

MOTLEY RICE LLC

By: /s/ Robert T. Haefele
    ROBERT T. HAEFELE
    For the Plaintiffs' Exec. Committees

COZEN O'CONNOR

By: /s/ Sean P. Carter
    SEAN P. CARTER
    For the Plaintiffs' Exec. Committees

ANDERSON KILL P.C.

By: /s/ Jerry S. Goldman
    JERRY S. GOLDMAN
    For the Plaintiffs' Exec. Committees

cc:    All Counsel of Record via ECF
       The Honorable Sarah Netburn (Via ECF & Federal Express)

---

[8] To the extent ARB argues that Fields applied and followed the Second Circuit's decision in Rothstein v. UBS AG, 708 F.3d 82 (2d Cir. 2013), that is incorrect.  In fact, the Fields Court found that the Second Circuit in Rothstein never "defin[ed] precisely its understanding of [proximate causation]." Fields, 831 F.3d at 746-47.  The Fields Court also did not address JASTA at all, the enactment of which casts doubt on limiting judicial interpretations of the ATA.  CAC Opp. Br. at 5-6.  For its part, the Second Circuit did not cite or reference Fields in Linde.