# EXHIBIT G

**Kappler, David**

| | |
|---|---|
| **From:** | Haefele, Robert |
| **Sent:** | Monday, February 12, 2018 5:01 PM |
| **To:** | 'Martin McMahon' |
| **Subject:** | RE: EXTERNAL-Re: Sanctions Order Entered Against Defendant Jelaidan |

Dear Martin:

I am sorry that you viewed my email in any manner other than the professional manner in which we intended. What you may be sensing, though, is our increasing frustration about a situation that has consumed far more of the plaintiffs' and the Court's time than it should, and your tendency (in our view) to interject extraneous and impertinent issues, such as those identified below.

We offer the following points in response to your February 8, 2018 email:

I.  **You have injected into the dialogue a false notion that plaintiffs must take action to protect a judgment.**
    (1) As a seasoned litigator with at least thirty-five years of civil and criminal litigation experience, you surely must understand the difference between a judgment and an order sanctioning a defendant to pay a monetary penalty.
    (2) The matter we have been discussing concerns an order imposing sanctions (not a judgment), which requires your client, Wa'el Jelaidan, to make payment to the plaintiffs for fees and costs incurred as a result of his gross discovery violations (or face further sanctions) (*See* ECF No. 2789).
    (3) The obligation to obey the Court's order resides solely with you and Mr. Jelaidan – plaintiffs have no obligation to undertake further efforts or expenses to bring you and Mr. Jelaidan in compliance with the Court's orders. Your suggestion that you and Mr. Jelaidan may simply ignore the order and require plaintiffs to take further action to enforce it, without risking further sanction, defies the Court's clear directions, including its direction to employ efforts not only to obtain the necessary permission to transfer assets to plaintiffs but also to effectuate the transfer of the funds. *See* ECF No. 3380; *see also* Fed. R. Civ. P. 16 (f)(2) (authorizing imposition of sanctions if a party or its attorney fails to obey a pretrial order).

II. **You have injected into the dialogue a false notion that Mr. Jelaidan must pay the judgment from frozen Swiss accounts.**
    (4) Neither the plaintiffs nor the Court ever injected the notion that the funds to satisfy the obligation under the sanction order must be paid from Mr. Jelaidan's frozen Swiss accounts – you injected that idea into the current dialogue. The source of the funds is immaterial to plaintiffs.
    (5) The Court directed Mr. Jelaidan to pay the sanction, with no specification or limitation about the source from which Mr. Jelaidan would make the payment. Anticipating that Mr. Jelaidan would attempt to skirt the obligation by claiming OFAC prohibitions prevented him from making payment, the Court obligated Mr. Jelaidan and his counsel to obtain the necessary license to comply with the Court's order. A necessary obligation inherent in that directive is for Mr. Jelaidan and his counsel to employ any other reasonable means necessary to comply with the Court's order. Any attempt to now claim that Swiss prohibitions provide an excuse for noncompliance with the sanction order (which they do not) is tantamount to willing defiance of the Court's sanction order.

III. **You have injected into the dialogue a false notion that the processes used to designate Mr. Jelaidan (whether OFAC, Swiss, or others) are relevant to this dialogue.**
    (6) The processes that led OFAC, Swiss authorities, or anyone to designate Mr. Jelaidan are wholly irrelevant to the current matter. As you know, Mr. Jelaidan was sanctioned for his "bad faith" "willful[] disregard[ of] his discovery obligation," which the Court described as "intentionally obstructive conduct." ECF No. 2789 at 15. Accordingly, the portions of your email ranting (in our

view inaccurately) against the processes used to designate Mr. Jelaidan are completely beside the point.  He defied discovery orders and he continues to defy the sanction order.

IV. **Your claims that you and Mr. Jelaidan "have no intention of disobeying" the sanction order are inconsistent with the pattern of behavior and your warning that Mr. Jelaidan would oppose efforts to enforce compliance with the order.**

(7) Plaintiffs and the Court have invested considerable time and effort in proceedings relating to the issuance of the license, with the understanding and reasonable expectation that Mr. Jelaidan intended to comply with the Court's order and pay the monetary sanction once OFAC issued a license.  Clearly, the Court intended for Mr. Jelaidan to pay the sanction once OFAC issued a license (which it has).  Indeed, in your April 8, 2016 letter to OFAC, appended to Mr. Jelaidan's October 28, 2016 Status Report, you represented that "Our client [Wa'el Jelaidan] would like to pay for an award of attorney fees which was ordered by Magistrate Judge Frank Maas in the U.S. Southern District of New York."  ECF No. 3378.  Similarly, in your May 19, 2017 Status Report, you said, "I have no intention of frustrating the Court's order."  ECF No. 3594.  And now, in your email to me, you write that you and Mr. Jelaidan "have no intention of disobeying" the sanction order.

(8) But now that OFAC has issued a license, you have suggested for the first time that neither you nor Mr. Jelaidan have any obligation to take action toward compliance, and asserted alleged obstacles to satisfying the Court's orders that were never previously raised to plaintiffs or the Court.  Again, both you and Mr. Jelaidan are obliged to take all reasonable actions to comply with the Court's order.

(9) To the extent Mr. Jelaidan did not intend to pay the monetary sanction upon issuance of the license, you and he were obliged to inform plaintiffs and the Court of that fact before the Court and plaintiffs wasted time and effort in obtaining the license, most especially given the Court's findings and admonitions to you and Mr. Jelaidan concerning the obstructionist behavior that had punctuated discovery as to Mr. Jelaidan to date and resulting imposition on the time and resources of plaintiffs and the Court.

V. **Your suggestion that Mr. Jelaidan does not have funds available to pay the sanction is unsubstantiated, belied by the available evidence, raises the legitimate question as to who is paying you to represent him, and reeks of bad faith.**

(10) Nothing in the record indicates that Mr. Jelaidan has no funds available to pay the sanction.

(11) Similarly, the unsupported statement that Mr. Jelaidan has no funds available to pay the sanction but may "borrow funds" to thwart any attempts by plaintiffs to attach assets belonging to Mr. Jelaidan or other actions to bring Mr. Jelaidan in compliance with the sanction order, not only show Mr. Jelaidan's intention to defy the Court's order but also suggest problematic financial arrangements in financing Mr. Jelaidan's defense in this litigation.  The suggestion that Mr. Jelaidan may have a benefactor who has been funding his litigation activities would be especially problematic given his designation, the nature of the claims in issue and their potential impact on other related parties, and the pattern of obstructionist behavior Mr. Jelaidan has pursued.

(12) More fundamentally, if you and Mr. Jelaidan have "no intention of frustrating the Court's order," why would you and Mr. Jelaidan threaten to take action to prevent plaintiffs from satisfying the sanction imposed upon him from the frozen Swiss accounts?

VI. **Your own involvement in the present dispute is deeply concerning.**

(13) While we have made every effort to focus these disputes on *Mr. Jelaidan's* failure to obey the Court's discovery and sanctions orders, we are compelled to note that we find deeply concerning your role in these and other disputes that have vastly complicated discovery proceedings and needlessly consumed resources of both the plaintiffs and the Court.  Factors informing our views on the matter include, but are not limited to, your level of experience and sophistication, the history of the proceedings to date, your failure to alert plaintiffs and the Court previously that Jelaidan (apparently) had no intention to pay the sanction upon issuance of the OFAC license (despite representations to the contrary), and your attempts to interject into the dialogue blatantly irrelevant concepts (such as the notions that the dispute involves a "judgment," that this is about Swiss accounts, or that the underlying processes of Mr. Jelaidan's designations matter).  The concern is further compounded by your demand that plaintiffs continue to waste even another minute to

2

  explain Mr. Jelaidan's obligation to comply with a valid court order by demanding that plaintiffs provide you with case law on irrelevant issues.

Contrary to your efforts to suggest otherwise, this is a simple matter. Mr. Jelaidan has been directed to pay a monetary sanction to plaintiffs, or face further sanctions for defying yet another court order. OFAC has now issued a license authorizing Mr. Jelaidan to pay the three plaintiffs' firms in favor of which sanctions were awarded, and authorizing those firms to accept the specified payment from Mr. Jelaidan. All that is left is for Mr. Jelaidan to comply with the Court's order.

Please advise us within 5 days whether you and Mr. Jelaidan intend to pay the sanction and whether Mr. Jelaidan intends to make himself available for deposition. If not, we will commence contempt proceedings in connection with the sanction order.

**Robert Haefele** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9184 | f. 843.216.9450 | rhaefele@motleyrice.com


**From:** Martin McMahon [mailto:mm@martinmcmahonlaw.com]
**Sent:** Thursday, February 8, 2018 2:22 PM
**To:** Haefele, Robert <rhaefele@motleyrice.com>
**Subject:** EXTERNAL-Re: Sanctions Order Entered Against Defendant Jelaidan

Dear Bob:

I was hoping we could continue this dialogue on a civil basis, but you have chosen to insult me and Mr. Jelaidan and make factual misrepresentations. I guess this is all designed to educate Magistrate Netburn that Mr. McMahon is a bad attorney who can't be trusted and Wael Jelaidan is a terrorist. I don't think that's going to get you very far because neither of those baseless characterizations have anything to do with the matter at hand.

For some thirteen years or so, attorneys on different sides of the aisle have been getting together with one purpose in mind: how can we make sure that we narrow our differences and exchange caselaw and other authority backing up our prospective propositions? The goal is to simplify the matter for the magistrate, and provide the magistrate with all relevant caselaw authority and let her decide the matter. That is why I find your refusal to share caselaw authority backing up your position to be so unusual.

As I recall, and I'm sure you'll correct me if I'm wrong, there were two defendants in the same boat, i.e. al Haramain and Wael Jelaidan. Each had an outstanding sanctions order entered against them. Apparently, al Haramain had assets on hand on U.S. soil and/or available cash to simply write a check to you guys and be done with it. That of course is not the situation with Wael Jelaidan. As you know, his bank accounts are located in Switzerland and at this time, they are subject to a special Swiss government edict, i.e. the accounts were not merely frozen by the authorities.

In an effort to educate myself, I re-read the orders from Magistrate Maas and Judge Daniels, and I don't see any obligation on my part to assist you with obtaining monies located overseas. And that's why I ask you if you have caselaw for the proposition that an attorney representing a defendant on US soil has an affirmative obligation to trace and locate assets located overseas in order to satisfy the Plaintiffs' judgment. Your position, in any case, troubles me for a number of reasons.

First, the accounts are subject to a very special order issued by the Swiss government. I remember in one of our submissions to the Magistrate, we described what the situation was and translated the French language involved. Unless I'm mistaken, or things have changed, it is going to be very difficult to convince the Swiss government to undue their seizure of those bank accounts. Second, I think what this will entail is your firm hiring a Swiss attorney who can convince the Swiss government to revoke its order seizing these accounts.

Third, the Swiss attorney you hire will have to start a proceeding and name the bank holding these accounts as a defendant. Counsel can inform the bank that if OFAC agrees of course, the license that Jelaidan received from OFAC could be assigned to you guys. And the bank, of course, would be put on notice of the relief you would seek and could take any position it desired.

Please keep in mind that Mr. Jelaidan may try to borrow some funds to fight whatever proceeding that your Swiss attorney files in Switzerland and may actually intervene in that litigation. Both he and I have always maintained that the designation was wrongful and based on classic hearsay evidence, i.e. newspaper clippings. I don't know if Magistrate Netburn knows that this is how OFAC officials designate people as terrorists--very flimsy evidence. In any case, an argument could be made to the Swiss authorities that the designation was illegal because it was based on hearsay evidence, much like the golden chain. If I recall, your law firm was a proponent of the golden chain document, which 5 separate judges rejected as classic hearsay.

The bottom line is that Wael Jelaidan is not in a position to simply write a check and pay off those judgments. Again, we reiterate that we don't dispute the fact that an order was entered by Magistrate Maas and affirmed by Judge Daniels and we have no intention of disobeying that order. What we do dispute is that either I or Mr. Jelaidan have an obligation to collect these funds for you. That is why I have asked you for the caselaw authority that you have relied upon. Mr. Jelaidan had no due process rights when it came to his designation. It was a fate accompli. I don't believe that will be the situation in Switzerland, and he has every right to dispute OFAC's conclusion that he's a terrorist.

As you probably know, there is some evidence of a double standard practiced by OFAC, i.e. the Pakistani President headed up Rabita Trust, but resigned two weeks before the terrorist designation because he received a head's up from OFAC officials that the entity was to be designated. Why hasn't President Musharraf been designated as a terrorist since he had more substantial links to Rabita Trust than Wael Jelaidan?

Finally, I hope this email serves to educate you about what our position is, but I reiterate that I will not address all of the nonsense you mention in your email. We do not intend to engage in ad hominem attacks.

Martin

--
**Martin F. McMahon, Esq.**
**Martin McMahon & Associates**
**1150 Connecticut Ave., N.W., Suite 900**
**Washington, D.C. 20036**
**Tel: (202) 862-4343**
**Fax: (202) 828-4130**

**This electronic mail transmission may contain privileged, confidential and/or proprietary information intended only for the person(s) named. Any use, distribution, copying or disclosure to another person is strictly prohibited. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed therein.**