# EXHIBIT Q

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2011 03 MD 1570 (GBD)(SN)

------------------------------x

May 25, 2017
11:00 a.m.

Before:

HON. SARAH NETBURN,

Magistrate Judge

APPEARANCES

COZEN O'CONNOR
Attorneys for Plaintiffs' Executive Committee
BY: SEAN P. CARTER

MARTIN F. McMAHON & ASSOCIATES
Attorneys for Defendant Jelaidan
BY: MARTIN F. McMAHON
NICHOLAS KIPA

THE COURT: Thank you.

So I have the various letters filed over the last few weeks related to Defendant Jelaidan's efforts or not to secure an OFAC license, and my view of the state of affairs is that Mr. McMahon has not acted with alacrity here, and not until these motions were filed, it appears, that now some progress has been made. I reviewed the e-mail string that you printed out and filed suggesting that you now have a point person at the appropriate office at the Department of Treasury to move this forward.

Since filing your submission, Mr. McMahon, is there anything further to report?

MR. McMAHON: Not at this time, your Honor. I will explain something.

We are working now with Heather Epstein. I think she is in the office of general counsel. She fortuitously was in a meeting with her colleagues, and they were discussing all the letters they received from me. So then she returned the call and said, Mr. McMahon, we are sorry we didn't get back to you, but we are now going to try to assist you, and if you have any questions, please feel free to call.

So that, I think, reflects what the problem is over at the agency, your Honor, especially since no new players have come in. We just happened to be being discussed at a meeting nine months after our first submission.

So my goal, your Honor, in all of this was to establish some sort of human being contact at OFAC, because in the past that's been effective for me.

Now, I should explain, your Honor, I have never done one of these before. When we 12 years ago applied for licenses, cited by Mr. Carter, I believe we just sent in a fax and four days later we would get a license. So I did lose an associate who was conversant with that process, and he left for greener pastures. I now have a new associate, Nick Kipa, who is here, and he did the best he could with this electronic license preparation. Again, I have never done a license for a non-client, and there appears to be, according to Nick, no box to check for that situation. But Heather Epstein has assured me that if there are any hiccups on the license application, that she will contact me.

So to answer your question again, we haven't heard from her recently. I told Nick to check in with her -- we have a direct dial number -- and to continue to report to the Court. I tried to reach her today, or I did reach her, and this is where the application stands.

So I apologize on some occasions, your Honor, when I should have informed the Court there was no progress just to make sure, but I have done my best, your Honor, to try to bring about the license application, and again, I apologize. I have had some issues with my personal health, your Honor. I have to

go to dialysis three days a week. I went there today this morning, and that has cut about 20 billable hours out of my schedule. Again, I am working with a new associate who doesn't have the experience that the other one had.

So, again, I apologize, your Honor. I think I adopted the correct strategy to try to get somebody to have a dialogue with, and when they were sitting in the meeting, they were discussing the letters that I sent in, three or four, and somebody finally decided to get back to us.

THE COURT: Mr. McMahon, I am sorry to hear about your health, and I hope that that improves, but what do you say in connection with your failure to file the status reports every 60 days as ordered by the Court?

MR. McMAHON: Your Honor, that is my fault. I think in retrospect, of course, I should have filed something and said, I don't have anything to report, but consistent with the obligation to the Court, this is my report. I am still trying to send in letters, etc. I apologize, your Honor. I messed up on that.

THE COURT: Mr. Carter, I have read the lengthy submissions from the plaintiffs' executive committee. Do you have anything further that you wish to add to be heard by the Court?

MR. CARTER: Only a few minor points, your Honor.

One relates to the procedural status of the

proceedings against Defendant Jelaidan.

As your Honor is aware, there was extensive motion practice which resulted in the sanction award for which the current OFAC license is needed. While our fee petition for that sanction award was pending, we received discovery from another defendant, Yasin al-Qadi, which included information that indicated that Defendant Jelaidan had successfully assisted al-Qadi in obtaining bank records associated with Jelaidan's accounts for purposes of enabling al-Qadi to respond to a Swiss investigation; and, as a result of that, it became clear to us, at least in our mind, that at periods earlier in the case, when Defendant Jelaidan had been representing to the Court that he had no means to obtain his banking records, he was in fact successfully doing so for the benefit of another defendant.

As a result of that, we filed a motion asking Judge Maas to permit us to file an additional application for fees as a sanction for those earlier misrepresentations. Judge Maas authorized us to do so at a hearing on March 22, 2016. We had not filed that additional application for sanctions simply because the original award had not been paid.

So in terms of what we are requesting in the present moment, I think the most efficient means would be simply for us to ask to include this OFAC issue in the sanctions petition Judge Maas previously authorized us to file.

THE COURT: Well, before you file anything, I would like to at least move forward a little bit, given that there has now been contact with OFAC, and see what happens over the next few months.

So what I am inclined to do is to direct Mr. McMahon to continue his efforts. I am going to order that you provide detailed status reports to me every 30 days, Mr. McMahon.

MR. McMAHON: Fine, your Honor.

THE COURT: A detailed status report does not mean nothing has happened in the last 30 days. In every report I expect you to demonstrate to me the ways in which you have made efforts to move this along, even if it means that you are harassing whoever you're in touch with at OFAC. I expect you to be aggressively pursuing this, and I want a detailed report which has dates of contact and the form of communication so that I am satisfied that you are truly focusing on this issue.

I want those reports to be filed every 30 days. I will fine you, Mr. McMahon, as counsel -- because I believe that this is a problem of your making and not of your client's making -- I will fine you $100 for every day after the 30-day period that you fail to submit a status report to me, payable directly to the clerk of court. My hope is that you will not have to pay that fine, but four every day that follows the 30-day mark, I will fine you $100, you personally.

MR. McMAHON: I understand, your Honor. Again, I

apologize for inflicting on the Court this basic clerical problem to get the application going.

THE COURT: Mr. Carter, my request is that you hold off on filing any subsequent sanction motion, at least so we can see what happens in the next coming months with respect to this particular issue.

MR. CARTER: That's fine, your Honor.

THE COURT: Anything further?

MR. McMAHON: Yes, your Honor. I think in terms of the prejudice issue, it is my understanding that the bank account is an interest bearing account, so I don't think they are losing anything, and that's a fortunate situation.

THE COURT: Thank you.

Anything further?

MR. CARTER: Your Honor, I have one unrelated case management order that's probably best to bring to your attention now.

Your Honor had previously issued an order directing the parties to submit a comprehensive protocol for depositions. That is currently due on May 29, which is Memorial Day. The defendants' executive committee had requested the opportunity to take a first shot at drafting the protocol, and we have not yet received it. They expect to provide it to us within the next day. But given that we are only receiving it a few days before the May 29 deadline, we wrote to the defendants'