UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(FM) ECF Case |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-CV-05970
*Federal Insurance Co, et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp.*, et al, No. 04-CV-1923
*Euro Brokers Inc., et al., v. AI Baraka, et al*., Case No. 04 Civ. 7279

**DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' FED. R. CIV. P. 37(a) MOTION TO COMPEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

    I.    Plaintiffs' Premature Motion Fails to Comply with Federal Rules of Civil Procedure 37(a)(1) and This Court's Individual Practice Rule for Discovery Disputes............................. 3

    II.    Plaintiffs' Mistaken Theories of Liability are Not Determinative as to the Existence of Any Documents or Materials. ..................................................................................................... 4

    III.    WAMY Has Complied With Its Discovery Obligations ................................................. 5

        1.    Discovery Period Applicable to Defendants WAMY SA and WAMY International .. 5

        2.    Plaintiffs Untimely Document Requests to WAMY ................................................... 6

        3.    Plaintiffs' Duplicative Document Requests ................................................................ 6

        4.    Records Concerning HAMAS and Other Entities Without Proximate Cause............. 7

        5.    Donor Identity Objected to on Grounds of Relevance ............................................... 8

        6.    Allegations Concerning BIF and LBI.......................................................................... 9

        7.    WAMY Branch Office Financial Records, Annual Reports, Audits and WAMY Canada........................................................................................................................ 11

        8.    Alleged Records Concerning Senior Officials of WAMY ........................................ 15

        9.    Alleged Records Concerning WAMY and Saudi Government.................................. 17

        10.    Alleged Records Concerning WAMY Governing Bodies......................................... 18

        11.    Alleged Documents on WAMY's Relationship with Anwar al Aulaqi ................... 18

        12.    Alleged Documents on WAMY's Support to Terrorist Organizations ..................... 19

        13.    Alleged Missing Reports .......................................................................................... 19

        14.    Alleged Missing Records From Other Categories of Documents ............................ 20

        15.    Alleged Missing Attachments .................................................................................. 20

        16.    Plaintiffs Inadvertently Acknowledge Withholding Discovery Documents ............. 21

CONCLUSION................................................................................................................... 21

i

# TABLE OF AUTHORITIES

CASES

*Barton Grp., Inc. v. NCR Corp.*,
  No. 08 CIV 5679 GEL/FM, 2009 WL 6509348 (S.D.N.Y. July 22, 2009).................. 11, 13, 15

*In re Terrorist Attacks on Sept. 11, 2001,*
  349 F. Supp. 2d 765 (S.D.N.Y. Jan. 2005) ............................................................................... 7

*In re Terrorist Attacks on Sept. 11, 2001,*
  392 F. Supp. 2d 539 (S.D.N.Y. 2005).................................................................................... 16

*In re Terrorist Attacks on September 11, 2001,*
  134 F. Supp. 3d 774, fn 9 (S.D.N.Y. 2015) (DKT # 3046)…………………………………...17

*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
  318 F.R.D. 28 (S.D.N.Y. 2016) ............................................................................................ 15

*Nunez v. City of New York,*
  No. 11 CIV. 5845 LTS/JCF, 2013 WL 2149869 (S.D.N.Y. May 17, 2013) ............................. 6

*Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B.,*
  711 F.2d 348 (D.C. Cir. 1983)................................................................................................ 7

*Surles v. Air France*,
  No. 00 CIV 5004 RMB/FM, 2001 WL 815522 (S.D.N.Y. July 19, 2001) ............................ 17

*Tottenham v. Trans World Gaming Corp.*,
  No. 00 CIV. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002) ................................. 4

RULES

Federal Rules of Civil Procedure
  Fed. R. Civ. P. 34 (a) ............................................................................................................ 6
  Fed. R. Civ. P. 34(a)(1)................................................................................................. 13, 14
  Fed. R. Civ. P. 34(b) ............................................................................................................. 8
  Fed. R. Civ. P. 34 (b)(2)(E)(i)............................................................................................. 12
  Fed. R. Civ. P. 37(a) ........................................................................................................ 1, 3
  Fed. R. Civ. P. 37(a)(1)................................................................................................ i, 3, 4
  Fed. R. Civ. P. 37(a)(3)(B)(iv)............................................................................................ 20

Magistrate Judge Sarah Netburn, Individual Practices in Civil Cases, II Pre-Trial Practice, (c)
Discovery Dispute………………………………………………………………………………...3
NY R USDCTS&ED Civ Rule 37.1………..…………………………………………..…11, 13

OTHER MATERIALS

 Abu Hurairah & collected in Saheeh al-Bukhari (English trans.) vol.1, p.356, no.629 & Saheeh
  Muslim (English trans.) vol.2, p.493, no.2248 ....................................................................... 9

## PRELIMINARY STATEMENT

Defendants World Assembly of Muslim Youth Saudi Arabia (WAMY SA) and World Assembly of Muslim Youth International (WAMY Int'l), referred to as WAMY, respectfully submit this brief and supporting declarations in opposition to Plaintiffs' Executive Committee's (PEC) February 28, 2018 motion to compel. Plaintiffs' arguments to compel production of categories of documents rest on the presupposition that their theories of 9/11 liability as to WAMY are sound and correct. As WAMY will demonstrate, they are not. As discussed *infra* page 7, Plaintiffs' claims that WAMY funded entities which in turn funded al Qaeda are not proximately related to 9/11. Their document requests demanding proof of same are irrelevant and properly objected to. WAMY has diligently searched for relevant documents and produced approximately 1,248,043 responsive pages[1]. WAMY should not be compelled to produce records to support Plaintiffs' mistaken beliefs when the documents do not exist.

In addition, Plaintiffs' motion is procedurally defective. Plaintiffs failed to confer prior to filing the motion and did not detail what specific document requests and responses are at issue. At the direction of the Court, the PEC did confer with WAMY after the motion was filed and, just prior to the meeting, provided WAMY with specific document requests at issue.  Due to Plaintiffs' deficiencies in bringing this motion, WAMY was forced to resolve disputed issues while undertaking further review for documents and concurrently opposing this motion.

WAMY has diligently complied with its discovery obligations. Plaintiffs cannot in good faith show that WAMY has failed to adequately search for and produce the requested documents at issue. Plaintiffs, instead of diligently reviewing WAMY's production, seek to compel WAMY to do their jobs for them – to identify with specificity WAMY's responses to their requests. This

---

[1] Total pages for WAMY Int'l production: 15,202.Total pages for WAMY SA document production: 1,232,841.

is a waste of WAMY's and the Court's time. WAMY respectfully submits that Plaintiffs' premature motion to compel should therefore be stricken.

## FACTUAL BACKGROUND

Plaintiffs have served one request for production to WAMY Int'l, to which WAMY has responded.[2] Plaintiffs have served four requests for production to WAMY SA. The first two requests, dated December 10, 2010 and October 28, 2011 respectively, were both timely. WAMY has adequately responded to both with responsive documents.[3] Plaintiffs' third request was served on July 31, 2012. WAMY had initially objected to the third set of requests as untimely but nonetheless produced responsive documents where same existed.[4] In an effort to advance discovery, WAMY withdrew its objection to Plaintiffs' third request at the March 19, 2018 meet-and-confer. WAMY will supplement its response to this request, to the extent additional documents exist. Plaintiffs served their fourth requests on August 22, 2013. This request was untimely and properly objected at the time of late service.[5] Plaintiffs never, in five years, disputed WAMY's objection to the fourth request as untimely or addressed it in prior motions to compel.

By letter dated January 5, 2018, PEC advised the Court of Plaintiffs' intention to file a motion to compel as to WAMY.[6] By responsive letter dated January 10, 2018, WAMY's counsel expressed hope that Plaintiffs would fulfill their obligations to meet and confer prior to filing the

---

[2] See WAMY Int'l response and three supplemental responses to Plaintiffs' document requests, attached as <u>Exhibit A</u>. See supporting declaration of Omar T. Mohammedi.

[3] See WAMY SA response and six supplemental responses to Plaintiffs' first document request attached hereto as <u>Exhibit B</u>. See also WAMY SA response to Plaintiff second document request attached hereto as <u>Exhibit C</u>. Lastly see all WAMY SA supplemental production indices, attached as <u>Exhibit D</u>.

[4] See WAMY SA September 4, 2012 response to Plaintiffs' third document request attached hereto as <u>Exhibit E</u>.

[5] See WAMY SA September 19, 2013 response to Plaintiffs' fourth document request attached hereto as <u>Exhibit F</u>.

[6] Plaintiffs' January 5, 2018 letter (DKT # 3856) attached hereto as <u>Exhibit G</u>.

motion.[7] Plaintiffs ignored their obligations to meet and confer and WAMY's request to discuss discovery disputes and instead filed the motion on February 28, 2018. (DKT # 3911).

After filing the motion and being ordered by the Court, Plaintiffs reached out to WAMY to schedule a meeting regarding the pending discovery disputes. Prior to the meeting, WAMY asked that Plaintiffs narrow the issues in their motion and specify by document request number those responses they contend have been incomplete or otherwise deficient.[8] Plaintiffs' response letter[9] was more detailed than the motion and attempted to identify specific requests at issue, to which WAMY accordingly responded.[10] At parties' March 19, 2018 meet-and-confer, WAMY further clarified all issues identified in Plaintiffs' March 16, 2018 response. WAMY confirmed that it had diligently searched for and produced all relevant and responsive documents within its possession, custody and control. WAMY also maintained several objections, which will be addressed in this motion. For the Court's ease of reference and identification, WAMY has attached as Exhibit M an index listing the alleged requests at issue and WAMY's responses.[11]

## ARGUMENTS

I.   **Plaintiffs' Premature Motion Fails to Comply with Federal Rules of Civil Procedure 37(a)(1) and This Court's Individual Practice Rule for Discovery Disputes**

Rule 37(a), governing motions to compel, requires that "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). This Court's individual practice rules require that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party,

---

[7] WAMY's January 10, 2018 response (DKT # 3862), attached hereto as Exhibit H.
[8] *See* WAMY's March 14, 2018 pre-meet-and-confer demand letter to Plaintiffs, attached hereto as Exhibit I.
[9] *See* Plaintiffs' March 16, 2018 response to WAMY's pre-meet-and-confer demand, attached hereto as Exhibit J.
[10] *See* WAMY's March 19, 2018 reply letter to Plaintiffs attached hereto as Exhibit K.
[11] A couple hours' before filing the present Opposition, Plaintiffs sent a six-page letter, addressing several discovery issues from the meet-and-confer. WAMY has not been able to respond to the new information in the letter but will continue to confer with Plaintiffs in good faith.

in person or by telephone, in an effort to resolve the dispute." Magistrate Judge Sarah Netburn, Individual Practices in Civil Cases, II Pre-Trial Practice, (c) Discovery Dispute.

Plaintiffs fail to fulfill their meet-and-confer obligations before filing the motion to compel. It was only after an Order by this Court that they contacted WAMY's counsel. At the meet-and-confer, parties were able to narrow the issues raised broadly in the motion and identified in Plaintiffs' March 16, 2018 pre-meet-and-confer letter. Holding the meet-and-confer mid-stream, however, certainly is not what the drafters of the Rules contemplated when they enacted Rule 37(a)(1) to reduce the time and effort parties and the Court spend in litigating issues that, with timely and good-faith discussions, could be resolved without court action.

## II.   Plaintiffs' Mistaken Theories of Liability are Not Determinative as to the Existence of Any Documents or Materials

Instead of pointing to actual deficiencies in production, Plaintiffs essentially argue that WAMY must be withholding documents because the production does not align with Plaintiffs' unsupported allegations. This is not adequate grounds to sustain a motion to compel. A review of Plaintiffs' motion reveals that they are on a fishing expedition. "Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002).

All documents Plaintiffs seek have been provided or appropriately objected to. As stated at the meet-and-confer, if any documents are outstanding, the number is *de minimis*. WAMY, in good faith, is conducting another robust search.

Plaintiffs, without a modicum of objective support, disingenuously argue that "WAMY has boosted its raw production numbers by including countless low-level operational documents

4

of marginal relevance" (referencing WAMY's production of invoices and receipts for various expenditures).[12] Among Plaintiffs' requests to WAMY were requests for financial statements, balance sheets, income statements and annual reports[13], including those from WAMY branch offices,[14] requests for summaries of disbursements made by WAMY,[15] reports concerning objectives and activities of WAMY,[16] and reports by WAMY offices concerning their operations and finances.[17] The invoices and receipts were provided in response to Plaintiffs' request for WAMY disbursements. They were provided as part of branch offices' reports to WAMY HQ. They were also provided as part of financial statements and reports from offices regarding operations. The documents Plaintiffs bemoan as having "marginal relevance" are not irrelevant. They are the consequence of Plaintiffs' own requests and are responsive to same.

## III.     WAMY Has Complied With Its Discovery Obligations

1.  <u>Discovery Period Applicable to Defendants WAMY SA and WAMY International</u>

Plaintiffs demand reports discussed at WAMY General Secretariat and Board of Trustees meetings between 2003 and 2004.[18] WAMY does not have to produce documents for this period because they are outside discovery. On April 25, 2014, Magistrate Judge Frank Maas ordered that "WAMY Defendants must produce all responsive documents from 1992 through the end of 2002." *See* DKT # 2852, <u>Exhibit N</u>. The discovery period applicable to WAMY is 1992-2002. WAMY has produced all meeting minutes for this timeframe. Plaintiffs' motion should therefore be denied as to any request outside the relevant time period.

---

[12] Footnote 5 of Plaintiffs' motion to compel.
[13] Request #54 in Plaintiffs' first document request to WAMY SA.
[14] Request #63 in Plaintiffs' first document request to WAMY SA.
[15] Request #69 in Plaintiffs' first request to WAMY SA and Request # 7 in Plaintiffs' second request to WAMY SA.
[16] Request #4 in Plaintiffs' second document request to WAMY SA.
[17] Request #6 in Plaintiffs' second document request to WAMY SA.
[18] Plaintiffs' motion to compel at 4-5.

2. <u>Plaintiffs' Untimely Document Requests to WAMY</u>

WAMY maintains its objection to all requests in Plaintiffs' fourth request for production, They were served a year after the deadline for serving discovery requests had expired and are thus untimely.[19] Plaintiffs served their fourth request to WAMY on August 22, 2013. The discovery request deadline of August 30, 2012 had passed, and WAMY objected to the request in its entirety as untimely. *See* <u>Exhibit F</u>.[20] Plaintiffs knew of WAMY's untimeliness objection as of WAMY's response in 2013.  Rather than challenging the objection, Plaintiffs waited four and a half years to compel documents under this request. Plaintiffs' motion to compel WAMY to produce any documents in response to this request should be denied.

3. <u>Plaintiffs' Duplicative Document Requests</u>

WAMY has responded to Plaintiffs' request related to WAMY's association with Third World Relief Agency ("TWRA")[21] in Plaintiff's first[22] and third requests.[23] Other than the produced documents, WAMY does not have any responsive documents. WAMY can only turn over documents that are in its "possession, custody or control." Fed. R. Civ. P. 34 (a).  *See also Nunez v. City of New York*, No. 11 CIV. 5845 LTS JCF, 2013 WL 2149869, at *6 (S.D.N.Y. May 17, 2013) ("[A] request for documents does not include the obligation to create information or documents which a party does not control or possess." (internal quotations marks and citation omitted)).

---

[19] See June 1, 2012 Endorsed Order from Magistrate Judge Frank Maas, setting August 30, 2012 document request deadline (DKT # 2614), attached hereto as <u>Exhibit O</u>.

[20] WAMY also objected to Plaintiffs' third requests, served on July 31, 2012, as untimely. However, in the interest of good faith, WAMY withdrew its timeliness objection as to this request, having already produced responsive documents. WAMY will supplement its responses to Plaintiffs' third request and identify all relevant and responsive documents, to the extent further documents remain to be produced.

[21] Plaintiffs' motion at 15 alleges that WAMY has not produced records concerning TWRA and El Fatih Hassanein, whom Plaintiffs claim served as the Director of WAMY Austria. This is false; he was Director of the "Office of the Seminar," as is clear from Plaintiff's own Exhibit 36. WAMY has no Austria office.

[22] Requests #82-89 in Plaintiffs' first request. *See* WAMY index of requests and responses at issue, <u>Exhibit M</u>.

[23] Requests #2-5 in Plaintiffs' third request. *See* WAMY index of requests and responses at issue, <u>Exhibit M.</u>

[23] Plaintiffs' motion to compel at 16.

4.   <u>Records Concerning HAMAS and Other Entities Without Proximate Cause</u>

Plaintiffs seek the production of documents to support their contention that WAMY has financially supported Hamas, Fatah, and Palestinian Islamic Jihad ("PIJ"), including supporting families of martyrs who died during the Israeli-Palestinian conflict.[24] WAMY objects to the production of any records that may exist on the grounds of relevance.

Within the context of discovery in a civil litigation, "relevant evidence" encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B.*, 711 F.2d 348, 360 (D.C. Cir. 1983). Ever since the commencement of this litigation, Plaintiffs have tirelessly tried to link the attacks of September 11th to the Israeli-Palestinian conflict as part of Plaintiffs' baseless attempts to politicize this litigation. The two issues have no connection whatsoever; the Palestinian conflict has nothing to do with 9/11.

Plaintiffs' logic was rebuffed on January 18, 2005, when the Honorable Richard Conway Casey found that "Plaintiffs have not alleged any relationship between Hamas and Al Qaeda or the terrorist attacks of September 11." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 833 (S.D.N.Y.), *on reconsideration in part,* 392 F. Supp. 2d 539 (S.D.N.Y. 2005), and *aff'd,* 538 F.3d 71 (2d Cir. 2008), and *aff'd,* 538 F.3d 71 (2d Cir. 2008), and *aff'd,* 714 F.3d 118 (2d Cir. 2013). Judge George B. Daniels recently cited this decision in his March 28, 2018 Order on the Kingdom of Saudi Arabia's motion to dismiss (DKT. # 3946). Regarding Plaintiffs' allegation that charities provided support to other entities known to support terrorism or to entities who in turn funded al Qaeda, Judge Daniels stated that this conduct is "too temporally and geographically remote from the 9/11 attacks to have proximately caused Plaintiffs' injuries". *Id.* Given this, it is apparent that Plaintiffs' demands for documents concerning entities not

---

[24] Plaintiffs' motion to compel at 16.

related to al Qaeda and the 9/11 attacks are irrelevant. Judge Casey's and Daniels' rulings on this issue are controlling. Consequently, WAMY has properly objected to requests for production related to work in Palestine on grounds of relevance.[25] Fed. R. Civ. P. 34(b). Plaintiffs' motion to compel such irrelevant documents should be denied.

5. <u>Donor Identity Objected to on Grounds of Relevance</u>

The scope of discovery allows parties to "obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case, considering the *importance of the issues at stake* in the action." Fed. R. Civ. P. 34 (b) (emphasis added). Plaintiffs have cited to M.J. Maas's statement that "this case is about money being diverted towards terrorist goals. As I understand it, *the lion's share of the effort is to see where money went.*"[26] (emphasis added). However, Plaintiffs do not need disclosure of the recipient(s)' identity "to see where the money went." A donor's identity is *not relevant* to Plaintiffs' claims, nor is it important to the issues at stake in this litigation, which is *where money went* and whether any funds were diverted to al Qaeda in support of the 9/11 attacks. Consequently, the case law Plaintiffs rely upon is not instructive[27]. What is instructive is M.J. Maas' observation that the lion's share of effort in this case should be focused on tracking where the money went,[28] not where it came from. WAMY has rightfully redacted the identity[29] of donors due to relevance.[30]

Further, compelling WAMY to produce the names of its donors goes against the commitment WAMY made to donors that, in accepting their donations, WAMY would not

---

[25] A few documents related to Palestine were produced. Pursuant to the October 3, 2006 umbrella protective order (attached hereto as <u>Exhibit P</u>), WAMY will be seeking return of those documents as not relevant to this litigation.
[26] Plaintiffs' motion to compel at 19.
[27] Plaintiffs' motion to compel at fn. 23.
[28] *See* November 16, 2011, MDL 1570 hearing before M.J. Maas, hearing transcript at 15:7-9. Pertinent except attached hereto as <u>Exhibit Q</u>.
[29] WAMY has redacted donor names and any identifying information such as address, phone number, ID number, and social security number, where applicable. This information has been redacted on checks, bank deposit slips, payment orders, correspondence, and WAMY internal reports.
[30] Plaintiffs raised the issue in November 2011, and WAMY rightfully objected. *See* Plaintiffs' Exhibit 44 and 45.

violate their religious beliefs. The act of charity is deemed to be one of the most favorable acts in Islam. God and his Prophet Mohammed mentioned time and again that the act of charity is paramount and should be performed on a regular basis. However, when giving charity, discretion is advised - hence the saying that the left hand should not know what the right hand is doing.[31]

Compelling WAMY to disclose donor identity, even under a protective order, will violate the donors' religious belief and expose WAMY to potential liability. Such disclosure is bound to harm WAMY, as donors will stop contributing to WAMY activities out of fear of disclosure of their personal information. Plaintiffs' insistence on recovering confidential donor information is emblematic of their overreaching in their discovery requests[32]. Plaintiffs' motion to compel WAMY to disclose donor identity should be denied.

6. Allegations Concerning BIF and LBI

Manathamat El Birr Doualia, known as Benevolence International Foundation ("BIF"), is/was an organization created by Adel Batterjee. It has never has been a WAMY entity or had any relationship with WAMY whatsoever. Lajnat al Birr al Islamiyya ("LBI"), known as Benevolence Islamic Committee, was a WAMY entity. It provided social welfare assistance and support programs for the needy, including support for orphans, the construction and running of orphanages, construction of schools and vocational training facilities, and the construction of hospitals and provision of medical assistance. Adel Batterjee was involved in LBI in its initial years. LBI had offices in Saudi Arabia and Pakistan. *See* declaration of Dr. Abdul Wahab Noorwali, ("Noorwali Decl.") WAMY Assistant Secretary General, attached hereto as Exhibit Y

---

[31]  Abu Hurairah & collected in Saheeh al-Bukhari (English trans.) vol.1, p.356, no.629 & Saheeh Muslim (English trans.) vol.2, p.493, no.2248). Available here, https://www.muslimaid.org/media-centre/blog/the-left-hand-shouldnt-know-what-the-right-is-doing, last visited March 24, 2018.

[32]  The existence of a protective order still violates donors' religious beliefs and puts WAMY at risk of same. Religious beliefs aside, this Court has found that Kreindler & Kreindler has disseminated confidential information in violation of the protective order during the May 8, 2017 hearing.

at ¶¶ 21, 24-25, 28, 32. WAMY has maintained that it had no relationship with BIF.[33] Plaintiffs, however, adamantly insist that WAMY is liable by association[34] with BIF. In support of their misplaced argument, Plaintiffs rely on the affirmation of a discredited expert, Evan Kohlmann, and augment their argument by erroneously claiming that there was a relationship between WAMY and BIF because of certain common addresses.[35]

WAMY has produced documents to Plaintiffs demonstrating that LBI was not BIF, and that BIF is/was a separate entity created by Adel Batterjee without WAMY's knowledge or involvement.[36] WAMY has produced documents indicating that, once WAMY became aware of Adel Batterjee's new organization, BIF, WAMY's then Secretary General sent a letter to Adel Batterjee asking him to cease and desist from using his organization (BIF) to confuse people who thought it was LBI due to the similarity in the name and logo.[37] The letter urged Batterjee to inform people that BIF is not LBI and that the two entities were different.[38] WAMY has also produced a letter severing Adel Batterjee's relationship with LBI due to dissatisfaction with him, his creation of BIF, and the use of WAMY to facilitate his agenda.[39] WAMY also dismissed Batterjee due to lack of complete reporting on LBI operations. *See* Noorwali Decl. at ¶¶ 34-45. WAMY has not had any relationship with Adel Batterjee following his release in May 1993.

---

[33] *See* Plaintiffs' Exhibits 20 and 21.
[34] Adel Batterjee was among the founding members of LBI.
[35] Plaintiffs' motion to compel at 13.
[36] WAMYSA029936 (February 25, 1993 LBI flyer, attached to a WAMY letterhead. Flyer seeking donation for LBI orphan projects, provides LBI bank account number and contact information. *Compared with* WAMYSA057782, February 24, 1993 BIF flyer attached to a WAMY letterhead demonstrating the difference between the two organizations. WAMY attached this flyer to its letterhead for internal circulation after it became aware of Batterjee's BIF. BIF bank account number and contact information is different from LBI's, attached hereto as Exhibit Z.
[37] See LBI logo in WAMYSA029936 and BIF logo in WAMYSA057782, attached hereto as Exhibit Z.
[38] WAMYSA027856 (Feb 26, 1993 Letter from Dr. al Johani to Adel Batterjee re: his organization BIF, stating that the Arabic name is very similar to LBI's Arabic name, and this is causing confusion. WAMY warned Batterjee that it will not be liable for any of his acts), attached hereto as Exhibit AA.
[39] WAMYSA061345-WAMYSA061346 (letter dated May 11, 1993 expressing dissatisfaction with and dismissal of Adel Batterjee after WAMY discovered Batterjee's work in creation of BIF), attached hereto as Exhibit AB.

Noorwali Decl. at ¶¶ 47. Additionally, to avoid any confusion between WAMY's LBI and Batterjee's BIF, in May 1996, WAMY closed LBI and rolled all LBI projects into WAMY.[40]

The three addresses to which Plaintiffs refer in their motion all have one person in common, Adel Batterjee, who had represented WAMY in all those locations. As demonstrated above, and through WAMY's document production, once WAMY learned of Batterjee's BIF, it severed ties with him and, to diligently avoid confusion, rolled its LBI operations into WAMY.

Plaintiffs should not be allowed to use a discovery motion as a tool to present claims that are not true and not supported by facts. *Barton Grp., Inc. v. NCR Corp.*, No. 08CIV.5679GELFM, 2009 WL 6509348, at *1 (S.D.N.Y. July 22, 2009). Except for newspaper articles and blog entries in Plaintiffs' production, Plaintiffs cannot show this Court how WAMY, LBI, and BIF are one organization. Indeed, because WAMY has never had anything to do with BIF, it does not have custody or control over any BIF documents or materials. Plaintiffs' motion to compel should be denied as to any BIF-related request.

7.  WAMY Branch Office Financial Records, Annual Reports, Audits and WAMY Canada

    a.  WAMY Branch Office Financial Records and Annual Reports

Plaintiffs claim, without sufficient factual support, that WAMY has failed to produce complete sets of documents for each of its branch offices.[41] Local Rule 37.1 requires Plaintiffs to "specify and quote or set forth verbatim…each discovery request and response to which the motion or application is addressed" and "set forth the grounds upon which [they are] entitled to prevail as to each request or response." NY R USDCTS&ED Civ Rule 37.1. Plaintiffs have not identified which specific report(s) is/are missing from a given chapter. They simple list broad

---

[40] WAMYSA065181- WAMYSA065185, report clarifying the work of LBI; it provides a background on formation of LBI, its organizational structure, and a detailed description of LBI projects. It discusses WAMY's dismissal of Adel Batterjee and the dissolution of LBI on May 23, 1996, attached hereto as <u>Exhibit AC</u>.
[41] Plaintiffs' motion to compel at 5-6.

types of documents they allege are missing and, in footnote 7, give examples of WAMY offices which are allegedly missing reports without providing details. WAMY cannot respond in the abstract to broad complaints of alleged missing documents. Plaintiffs, for instance, do not identify which report they are missing from which country and for which year in order for WAMY to adequately respond. The same applies for the offices in the Kingdom of Saudi Arabia. Hence, Plaintiffs' requests should be denied.

WAMY asked Plaintiffs to specifically identify alleged missing documents for each WAMY chapter. WAMY told Plaintiffs that, for some of the countries listed in fn 7, no chapter exists, and hence, there would be no reports from that country. For example, Argentina is not an office but rather one of the countries serviced by WAMY South America, whose office is located in Brazil. This chapter has only been in existence since 2000; therefore, any reports or records between 2000 to 2002, the end of the applicable discovery window, would be limited. Also, as a Saudi charity, WAMY's official language is Arabic. Most of its documents are in Arabic, including its annual, financial and statistical reports, and WAMY has no duty to translate and produce English versions of its documents, as Plaintiffs demand in their motion.

In addition, WAMY stated that chapters at times refer to annual reports as "Statistical Reports" or "Financial Reports" and are not in uniform format. WAMY has produced all annual reports in its possession, custody and control, including the alleged missing ones listed in Plaintiffs' Exhibit 15.[42] The Federal Rules demand that documents be produced "as they are kept in the regular course of business." Fed. R. Civ. P. 34 (b)(2)(E)(i). Consequently, WAMY did not rename the documents to align with Plaintiffs' preference or theories but rather produced them as they are maintained.

---

[42] *See* chart with WAMY's response to Plaintiffs' alleged missing annual reports (Plaintiffs' Exhibit 15), <u>Exhibit R</u>.

b.  <u>WAMY Audits</u>

Plaintiffs claim they do not have a complete production of WAMY audits.[43] Once more, Plaintiffs fail to identify with specificity what is missing. Local Rule 37.1. WAMY has produced all audits in its possession, custody and control. Fed. R. Civ. P. 34(a)(1). At the meet-and-confer, Plaintiffs demanded that WAMY confirm that it has produced all audits, without identifying which audits were allegedly missing. Plaintiffs' continued opacity is tantamount to harassment. It is also an indication that Plaintiffs are dissatisfied with WAMY's document production merely because it disproves Plaintiffs' allegations that WAMY materially supported al Qaeda.

Plaintiffs want this Court to compel WAMY to produce documents and materials to support their allegations. This is not a basis for a motion to compel. *See Barton Group, Inc.*, 2009 WL 6509348, at *1. The Court stated "If, on the basis of those records, Plaintiff cannot figure out what claims it is owed, or cannot otherwise prove its case, that is not Defendant's fault." In *Barton Grp*, the Court denied Plaintiff's motion to compel because the *Barton* Plaintiff did what Plaintiffs are doing here. By "[c]onfusing the merits of the case with the discovery process, Plaintiff seeks to have Defendant produce documents which Defendant represents do not exist, and to have Defendant create documents to clarify Plaintiff's claims." *Id.* The *Barton Grp* Court found the *Barton* Plaintiff's "position unsustainable," *Id.* which is what this Court should find here.

c.  <u>WAMY Canada</u>

Plaintiffs' mistaken argument that WAMY is withholding bank statements and bank records related to WAMY Canada accounts associated with designated organization Benevolence International Foundation[44] ("BIF")[45] was the subject of their 2013 motion to

---

[43] Plaintiffs' motion to compel at 6.
[44] Plaintiffs' motion to compel at 6.

compel against WAMY and addressed at a February 19, 2014 hearing before M.J. Maas.[46] Plaintiffs, therefore, should be barred from re-litigating the issue in a further motion to compel. WAMY maintains that BIF is not a WAMY organization. *See* attached declaration of Mohammed Al Khatib, ("Khatib Decl.") a former volunteer of WAMY Canada, attached hereto as <u>Exhibit S</u>, at ¶¶ 26, 34-35.

WAMY has produced documents demonstrating how it released Al Khatib from his role with WAMY Canada once WAMY became aware of the fact that Al Khatib was wearing multiple hats.[47] *See* February 19, 2014 hearing transcript at 26:8-17. *See also* declaration of Ibrahim Abdullah, ("Abdullah Decl.") former volunteer of WAMY Int'l, attached hereto as <u>Exhibit U</u>, at ¶¶ 31-34 WAMY has also produced documents indicating that Talhah al Jarad replaced Al Khatib as WAMY Canada director upon Al Khatib's forced resignation.[48] (Abdullah declaration at ¶¶ 37). WAMY has produced all relevant documents in its possession, custody and control (Fed. R. Civ. P. 34(a) (1)) related to WAMY Canada. Plaintiffs have not adequately shown that documents exist and that WAMY is withholding them. WAMY therefore cannot be compelled to produce additional documents that do not exist.

Furthermore, following the February 19, 2014 hearing, the Canadian Revenue Authority (CRA) responded to parties' joint Letters Rogatory and, in August 2014, delivered all WAMY Canada documents to Plaintiffs.  Plaintiffs then produced those documents to WAMY. Contrary to Plaintiffs' claims,[49] WAMY, through its own production and that of the CRA, has met its discovery obligations set by M.J. Maas for WAMY Canada. Hence, it is disingenuous of Plaintiffs to ask this Court to compel documents that WAMY has already produced.

---

[45] The Arabic name for BIF is Manathamat El Birr Doualia, discussed in greater details *infra* page 18.
[46] *See* February 19, 2014 hearing transcript attached to Plaintiffs' motion to compel as Exhibit 21.
[47] WAMYSA9972-WAMYSA9973, attached hereto as <u>Exhibit T.</u>
[48] WAMYSA9976 - WAMYSA9978 and WAMYSA9795 - WAMYSA9797, attached hereto as <u>Exhibit V.</u>
[49] Plaintiffs' motion to compel at footnote 17.

In September 2015, WAMY wrote to the CRA seeking retraction of the CRA's baseless statements, which were generated through newspaper clippings and unreliable sources, including the allegations filed in this case. WAMY asked CRA to produce evidence upon which it relied in its report[50]. The CRA responded indicating that WAMY Canada's status as a charity was revoked due to its failure to comply with requirements for registration as a charity[51] and not for terrorist activities. Plaintiffs have copies of all these documents. The only reason for them to bring up this settled issue is their displeasure with M.J. Maas's decision that WAMY cannot be compelled to produce documents to which it does not have access[52] or which simply do not exist. *See Barton Group, Inc.*, 2009 WL 6509348, at *1. *See generally* Khatib Decl., at ¶¶ 16-18., and Abdullah Decl., at ¶¶ 27-29.

"Generally, a party's good faith averment that items sought in discovery simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production, since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28 (S.D.N.Y. 2016). As such, Plaintiffs' motion must be denied.

8. <u>Alleged Records Concerning Senior Officials of WAMY</u>

Plaintiffs misguidedly claim that the Saudi government was involved in WAMY activities simply because a few WAMY senior officials held honorary positions with various government entities. Specifically, Plaintiffs refer to the late Dr. Maneh al Johani, who served as WAMY Secretary General,[53] and Abdullah Bin Laden, who served as a WAMY Int'l

---

[50] *See* September 3, 2015 letter to CRA, (WAMYSA065457 - WAMYSA065466) attached hereto as <u>Exhibit W.</u>
[51] *See* CRA January 22, 2016 response (WAMYSA190838 - WAMYSA190840), attached hereto as <u>Exhibit X</u>.
[52] February 19, 2014 hearing transcript (Plaintiffs' Exhibit 21) at 18:24-25; 19:9-12.
[53] Plaintiffs' motion to compel at 7-8.

volunteer.[54] Again, Plaintiffs are looking for something that does not exist. WAMY is not in possession of documents showing relationships between WAMY senior officials and the Saudi government that have not already been produced. As demonstrated, WAMY has no obligation to produce documents it does not have just because Plaintiffs have claims to that effect.

As clarified at the meet-and-confer, WAMY has produced all its documents relevant to WAMY Int'l, including but not limited to documents relating to Abdullah bin Laden. WAMY has no personnel or employment files for Abdullah bin Laden, as he was only a WAMY volunteer/officer and never a WAMY employee. *See* Abdullah bin Laden declaration at ¶ 7, attached hereto as Exhibit AD.[55] The mere fact that WAMY provided health insurance to him and his family does not make him a WAMY employee.

Plaintiffs claiming WAMY Int'l was raided and falsely linking it to the SAAR Network are not evidence of WAMY failing to comply with its discovery obligations. First, Plaintiffs disingenuously keep espousing their SAAR network allegations. Judge Casey rejected this fabricated theory in September 2005. *See In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 571 (S.D.N.Y. 2005), *aff'd,* 538 F.3d 71 (2d Cir. 2008). Second, WAMY Int'l was raided as part of the raids on Islamic charities after the September 11 attacks. Raids do not amount to guilt. WAMY Int'l is still registered and functioning in the United States as a religious charity. More to the point, the execution of a search warrant on one of WAMY's offices has nothing to do with WAMY's claimed relationship with Saudi government officials. To the extent that any such records exist within WAMY's custody and control, WAMY believes it has produced them.

---

[54] Plaintiffs' motion to compel at 14.
[55] This declaration was initially submitted on November 22, 2005, by counsel for Abdullah bin Laden (Jones Day) in support of his 2005 motion to be dismissed from MDL 1570. Abdullah bin Laden is dismissed from this litigation.

Plaintiffs also claim that WAMY's Secretary General made statements urging financial and material aid to terrorist groups in Chechnya.[56] Such statements are speculative and not authenticated. Further, they are not evidence of Plaintiffs' allegation that WAMY offered any material support to such groups or al Qaeda. Plaintiffs cannot build their theories on newspaper articles and assume documents exist that support their fallacious claims. Plaintiffs will have to adduce evidence to this Court as to why they think WAMY is withholding documents, and such beliefs cannot be based on "speculation or conjecture". *See Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001), *aff'd,* No. 00CIV5004(RMBFM), 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001). Plaintiffs cannot support their allegations that WAMY is withholding documents. All documents related to WAMY officials were produced, including documents relevant to this litigation that were part of the raid.

9. Alleged Records Concerning WAMY and Saudi Government

Plaintiffs claim that WAMY is withholding a "trove" of documents allegedly concerning its relationship with the Saudi government, including ministries and embassies.[57] In support of their claims, Plaintiffs rely on productions from other Defendants[58] and on discredited expert Evan Kohlmann. Plaintiffs use the Kohlmann Affirmation of February 3, 2015 to support their claim that WAMY received funds for its budget from the Kingdom. Judge Daniels has found that the Kohlmann Affirmation was "not sufficient for this Court to even reasonably infer that Saudi Arabia controls each of the charities at issue." *In re Terrorist Attacks on September 11, 2001*, 134 F. Supp. 3d 774, fn 9 (S.D.N.Y. 2015) (DKT # 3046). It therefore should not be relied upon in the present motion.

---

[56] Plaintiffs' motion to compel at 8 and Plaintiffs' Exhibit 17.
[57] Plaintiffs' motion to compel at 8-10.
[58] See Plaintiffs motion to compel fn. 13, referring to MWL production.

WAMY has produced all relevant documents in its possession dealing with its relationship with various ministries and embassies (some cited in Plaintiffs' motion). These documents indicate there is no close coordination between ministries/embassies and WAMY. Any coordination with ministries, for instance, is limited to very specific areas, such as the Saudi Joint Relief Commission, while WAMY's chapters' relationship with embassies is limited to simple facilitation or introduction letters from embassy officials.[59] The documents Plaintiffs are looking for do not exist, and Plaintiffs' motion should therefore be denied.

10. Alleged Records Concerning WAMY Governing Bodies

Plaintiffs' claim that WAMY has not produced documents relating to its governing bodies is incorrect.[60] The alleged missing General Assembly meeting minutes have all been produced. They are the General Secretariat and Board of Trustee meeting minutes.[61] Plaintiffs have copies of all the minutes for the period 1992-2002. Plaintiffs also claim that WAMY has not produced meeting minutes for some of its committees and internal bodies.[62] However, Plaintiffs do not identify what documents they allege are missing for WAMY to respond. Referring to general categories, as they have done thus far, is inadequate to support a motion to compel. WAMY has produced responsive documents related to activities undertaken by various WAMY committees, to the extent such documents exist.

11. Alleged Documents on WAMY's Relationship with Anwar al Aulaqi

Plaintiffs claim that WAMY has produced very little concerning its relationship with al Aulaqi.[63] Plaintiffs' speculative claims[64] are misplaced. WAMY Int'l had very limited relations

---

[59] Plaintiffs' claim that WAMY receives protection abroad through Saudi embassies and consulates (motion to compel fn. 15) is factually incorrect and refer to unauthenticated reports.
[60] Plaintiffs' motion to compel at 11.
[61] These are the same reports Plaintiffs' motion at 4 (Plaintiffs' Exhibit 10) claim are allegedly missing.
[62] Plaintiffs' motion to compel at 11-12.
[63] Plaintiffs' motion to compel at 18.

with Aulaqi, all of it before he was designated, while he was an Imam at Dar Al Hijrah Mosque. *See* Abdullah Declaration at ¶¶16-17. The employment contract WAMY produced is a contract between Aulaqi and Dar Al-Hijrah Mosque, which is not related to WAMY.[65]  WAMY has produced what few documents it has regarding Aulaqi in good faith and in compliance with its obligations.[66] WAMY is not withholding any documents. Plaintiffs have not made a showing that such documents exist and have been withheld. As such, Plaintiffs' motion should be denied.

### 12. Alleged Documents on WAMY's Support to Terrorist Organizations

Plaintiffs categorize WAMY's cooperation and joint projects with other Islamic charities as the cause of 9/11. This is an unfounded and misplaced theory. Plaintiffs essentially imply that, because WAMY worked with other organizations for charitable activities, documents must exist showing support to terrorist organizations. Contrary to Plaintiffs' claims,[67] WAMY has produced all documents related to its joint activities with other Islamic charities. Plaintiffs' fallacious claim that WAMY gave material support to al Qaeda or any other terrorist organization does not somehow create documents that never existed. Hence, Plaintiffs' motion should be denied.

### 13. Alleged Missing Reports

During the parties' belated meet-and-confer, WAMY clarified for Plaintiffs the record retention and storage of the General Secretariat and Board of Trustees meeting minutes and reports discussed at the meetings. WAMY informed Plaintiffs that any report tabled at the meetings[68] are not stored with the meeting minutes. Rather, they are stored as part of the records gathered from the respective chapter. *See* Noorwali Decl. at ¶¶ 18-19. WAMY has produced all

---

[64] Plaintiffs' unfounded speculation is based on their misconstrued interpretation of an FBI surveillance log of an unidentified person, allegedly observed speaking to Aulaqi outside a bank drive-through and the same unidentified person's vehicle parked outside WAMY Int'l office. This does not establish a link with WAMY.
[65] WAMY acquired this employment contract as part of its due diligences before its interaction with al Aulaqi.
[66] See Plaintiffs' Exhibit 43.
[67] Plaintiffs' motion to compel at 17.
[68] Plaintiffs' motion to compel Exhibit 10.

these reports in response to Plaintiffs' First request numbers 50, 54, 56, 57, 59, 61, 63 and in response to Plaintiffs' Second request numbers 1, 4, 6, 7, 8 and 9.[69] At the meeting, WAMY also corrected Plaintiffs' faulty translation of the minutes that a report existed when it did not.[70]

### 14. Alleged Missing Records From Other Categories of Documents

Plaintiffs randomly list categories of documents they claim WAMY has not produced.[71] WAMY cannot respond to claims that general categories of documents were not produced. Plaintiffs have an obligation to give guidance to WAMY and this Court as to the document request at issue and Plaintiffs' grounds for their belief that responses are deficient. Fed. R. Civ. P. 37(a)(3)(B)(iv). All responsive documents in WAMY's possession, custody and control have been produced. For instance, WAMY provided administrative files from different offices indicating salaries to different employees.[72] Plaintiffs' blanket request for a list of employees in Bosnia, Philippines, Pakistan, Sudan, and Kashmir, without any more indication of what is allegedly missing, should be denied. WAMY has also produced indices[73] listing its publications and refers Plaintiffs to same. WAMY has produced documents related to Guantanamo detainees with any connection with WAMY,[74] an issue resolved after the meet-and-confer.

### 15. Alleged Missing Attachments

Plaintiffs claim that WAMY's production is missing some attachments.[75] WAMY documents were produced as stored in the regular course of business. In good faith, WAMY is

---

[69] WAMY has provided Plaintiffs' with an index identifying which document request every single document is responsive to. All of these indices are attached hereto as Exhibit D.
[70] See WAMY's March 19, 2018 pre-meet-and-confer letter to Plaintiffs attached here in as Exhibit K. *See also* WAMY's chart with responses to Plaintiffs' Exhibit 10, attached hereto as Exhibit AE.
[71] Plaintiffs' motion to compel at 18-19.
[72] *See* Exhibit D.
[73] WAMY produced indices to Plaintiffs listing WAMY publications, attached here as Exhibit AF.
[74] *See* WAMY's chart of requests at issue, Exhibit M and WAMY's document production indices, Exhibit D.
[75] Plaintiffs' motion to compel at 20, and Plaintiffs' Exhibit 54.

re-searching for the alleged missing attachments to which Plaintiffs refer in order to ensure that same were produced or to supplement production if missing and existing.[76]

   16. <u>Plaintiffs Inadvertently Acknowledge Withholding Discovery Documents</u>

   Plaintiffs claim they have conducted independent investigations,[77] which have led them to believe that WAMY has failed to produce documents. First, WAMY will not respond to Plaintiffs' arguments made in the abstract. If Plaintiffs have within their possession the documents to which they refer, then WAMY is entitled to these documents. Plaintiffs' statements should be taken as admissions of their willful withholding of discovery documents. If Plaintiffs fail to produce those documents to WAMY, the same cannot be used as evidence in this case.

<b>CONCLUSION</b>

   For the foregoing reasons, Plaintiffs' motion to compel against WAMY should be stricken as improper and denied in its entirety.

Dated: March 30, 2018

        Respectfully Submitted

        <u>/s/ *Omar Mohammedi*</u>
        Omar T. Mohammedi, Esq.
        Law Firm of Omar T. Mohammedi, LLC
        Woolworth Building
        233 Broadway, Suite 820
        New York, New York 10279

        <u>/s/ *Frederick Goetz*</u>
        Goetz & Eckland P.A.
        Banks Building
        615 First Ave. NE, Suite 425
        Minneapolis, MN 55413

        *Attorneys for World Assembly of Muslim Youth Saudi Arabia and World Assembly of Muslim Youth International*

---

[76] See WAMY's chart with responses to Plaintiffs' Exhibit 54, attached hereto as <u>Exhibit AG.</u>
[77] Plaintiffs' motion to compel at 3; 7; 11.

21