# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-cv-06978
*Thomas Burnett, Sr., at al. v. Al Baraka Inv. & Dev. Corp., et al.*, Case No. 03-cv-09849
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02-cv-06977
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, Case No. 04-cv-01923
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, Case No. 04-cv-05970
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, Case No. 04-cv-07065
*Euro Brokers, Inc., et al. v. Al Baraka, et al.*, Case No. 04-cv-07279

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO COMPEL DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH-SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH-INTERNATIONAL TO PRODUCE RESPONSIVE DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a)**

April 13, 2018

## TABLE OF CONTENTS

**Page**

I.    WAMY HAS FAILED TO ESTABLISH AN ADEQUATE PROCESS TO
IDENTIFY, SECURE, AND PRODUCE RESPONSIVE DOCUMENTS ...................... 1

II.    WAMY RECORDS INVOLVING THE SAUDI GOVERNMENT................................. 5

III.    WAMY GOVERNING BODIES AND COMMITTEES.................................................. 7

IV.    THIRD WORLD RELIEF AGENCY AND EL FATIH HASSANEIN ........................... 8

V.    WAMY'S SUPPORT FOR TERRORIST ORGANIZATONS IS RELEVANT.............. 8

VI.    2004 IS THE APPROPRIATE CUT-OFF FOR THIS DISCOVERY ............................. 9

VII.    PLAINTIFFS' FOURTH SET OF DOCUMENT REQUESTS ARE TIMELY.............. 10

VIII.    CONCLUSION....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Greene v. Netsmart Techs. Inc.*,
  2011 U.S. Dist. LEXIS 59710 (E.D.N.Y. Feb. 28, 2011)..........................................................3

*Kronisch v. U.S.*,
  150 F.3d 112 (2d Cir. 1998)........................................................................................................4

*Markey v. Lapolla Indus.*,
  2015 U.S. Dist. LEXIS 112915 (E.D.N.Y. Aug. 25, 2015)........................................................3

*Pass & Seymour, Inc. v. Hubbell, Inc.*,
  255 F.R.D. 331 (N.D.N.Y. Sept. 12, 2008) ...............................................................................2

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010)........................................................................................4

*In Re Terrorist Attacks on September 11, 2001*
  (Asat Trust Reg.), 714 F.3d 659 (2d Cir. 2013).......................................................................10

**Other Authorities**

Fed. R. Civ. P.
  34.................................................................................................................................................5
  37...............................................................................................................................................10

I.     **WAMY HAS FAILED TO ESTABLISH AN ADEQUATE PROCESS TO IDENTIFY, SECURE, AND PRODUCE RESPONSIVE DOCUMENTS**

Plaintiffs' Motion to Compel as to the WAMY defendants ("MTC") (ECF No. 3911), identified broad categorical gaps in WAMY's document productions, underscored the disordered nature of the entire production, and offered additional facts showing that WAMY's efforts to collect and produce responsive documents have been defective and deficient.  The breadth of the omissions and gaps, together with certain representations by WAMY's counsel during the parties' March 19, 2018 meet-and-confer, indicate that the process WAMY used to collect documents was structurally ineffectual, and devoid of controls necessary to verify that WAMY representatives and offices outside of the Kingdom were in fact collecting all relevant materials or understood WAMY's discovery obligations.  WAMY's approach to document discovery is at odds with the clear directives and admonitions Magistrate Judge Maas issued to Saudi charity defendants in this litigation.

For example, plaintiffs have noted that basic documentation for many of WAMY's branch offices (such as audits and other necessary financial reports) is missing entirely, and that virtually no documentation at all has been provided from the files of several active branch offices.  If each office had been extensively searched as WAMY claims, plaintiffs should have received an organized set of office files and records, including but not limited to the following: office registration documents filed with the host country; communications with WAMY headquarters and the relevant WAMY regional office in Saudi Arabia; bank account records (including documents identifying individuals with signatory authority over the accounts); financial and operations reports; budget records; accounting and auditing reports; activity and project reports; employee records; delegation reports; donor lists; and lists of recipients of aid. To date, plaintiffs have received only a smattering of documents for a number of WAMY's

overseas branch offices,[1] and for some WAMY offices plaintiffs have received few or no responsive records.

During the meet-and-confer, although WAMY's counsel repeatedly asserted, in generalized terms, that WAMY had expended substantial effort resulting in the production of voluminous documents, he was nonetheless unable to articulate any coherent explanation for these wholesale gaps.  In fact, the generalized arguments counsel offered in an attempt to excuse the broad gaps actually validate plaintiffs' concerns that WAMY's overall approach to collecting and producing documents was neither effectual nor sufficient.  For example, trying to justify the absence of basic financial and other documents for numerous field offices, counsel indicated that many WAMY branch offices and branch office managers had historically ignored the directives and requirements of WAMY headquarters, often failed to provide required reports to WAMY headquarters and ignored requests from the headquarters for reports and information, and likely failed to maintain records required by WAMY's own rules.  But immediately after relying on that explanation, WAMY's counsel explained that WAMY's compliance with its discovery obligations depended almost entirely on those same branch offices and branch office managers exercising diligence in collecting documents in response to a request from the headquarters, without any audit or review procedure in place to ensure that the incoming documents were complete or to identify and follow up on obvious omissions.  Given that the WAMY branch offices and their managers had a known history of ignoring the headquarters, coupled with the certain unfamiliarity of those foreign (presumably non-lawyer) officials with U.S. legal

---

[1] It is difficult to determine whether WAMY's production included documents that were actually collected directly from WAMY's branch offices.  Despite WAMY's claim that WAMY personnel were sent to the branch offices to obtain responsive office records, it appears that a majority of the branch office documents plaintiffs have received came from WAMY's headquarters, including in particular WAMY's Finance Department.  Under the Federal Rules, WAMY was required to identify the location from which the documents were obtained, and its failure to do so represents an additional violation of the Rules.  *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331 (N.D.N.Y. Sept. 12, 2008).

procedures and obligations, WAMY had no reasonable basis to expect them to exercise diligence, and the content of the production indicates that they did not.

Documents produced by WAMY further illustrate the inadequacy of the defendant's efforts to respond to plaintiffs' document requests. A series of communications from WAMY's Deputy Secretary General for Overseas Office and International Relations, Dr. Abdul Hameed bin Youssef al Mazrou, to more than thirty WAMY branch offices beginning on October 25, 2011, appear to represent WAMY's collection efforts directed at its branch offices. In the letters to the branch offices, Dr. Mazrou asked the branch office managers to begin sending reports concerning the offices' projects, programs, and activities for 1992-2002 (the period WAMY contends is the applicable timeframe for merits discovery).[2] Several months later, on April 7, 2012, the office managers are asked to complete forms detailing the offices' financial and administrative matters between 1992-2002, and to provide an account statement for the office.[3] Finally, on May 5, 2012, Dr. Mazrou asked for each office's bank account statements and audited balance sheets for the 1992-2002 timeframe.[4]

The approach reflected in the letters falls far short of anything approximating an adequate effort or process to secure relevant documents.[5] As an initial matter, the letters reveal that

---

[2] *See, e.g.*, Exh. 1 - WAMYSA001486 (Kashmir); WAMYSA005295 (Yemen); WAMYSA005281 (Bosnia).

[3] *See, e.g.*, Exh. 2 - WAMYSA005767 (Kashmir); WAMYSA005439-49 (Yemen); WAMYSA005667-77 (Bosnia).

[4] *See, e.g.*, Exh. 3 - WAMYSA005791 (Kashmir); WAMYSA005787 (Yemen); WAMYSA005802 (Bosnia).

[5] Pursuant to Magistrate Judge Maas' clear instruction, WAMY's counsel has a duty to ensure that WAMY fulfills its obligation to properly respond to plaintiffs' discovery. *See* Exh. 4, April 26, 2011 Transcript of Record ("Tr.") at 20 ("I do think this is the type of stage of the case where you or somebody on your behalf needs to sit down with the folks who are responding to these requests and hold their hand to a certain extent and describe in greater detail what needs to be searched for."). *See also Greene v. Netsmart Techs. Inc.*, 2011 U.S. Dist. LEXIS 59710, *24 (E.D.N.Y. Feb. 28, 2011) ("While, of course, it is true that counsel need not supervise every step of the document production process and may rely on their clients in some respects, counsel is responsible for coordinating her client's discovery efforts[,] both in terms of the client's duty to locate relevant information and the client's duty to preserve and timely produce that information."); *Markey v. Lapolla Indus.*, 2015 U.S. Dist. LEXIS 112915 (E.D.N.Y. Aug. 25, 2015) (Court determined it was appropriate to sanction plaintiffs' attorneys for failing to disclose certain documents and

WAMY only initiated the collection of branch office records in late 2011 after years of indifference and disregard for the litigation since its commencement in 2002.[6]  Furthermore, far from explaining WAMY's obligations to comply with applicable discovery rules, the communications convey no gravity of the circumstance surrounding the communications and do not even so much as suggest that the directions carry any legal consequence for anything less than full compliance.  The letters also do not include copies of the actual document requests (or otherwise convey what has been requested), and they strongly indicate that WAMY never issued a formal litigation hold at any time, either before or since the outset of this litigation.  The duty to preserve relevant evidence not only applies during litigation, but also applies to the period before litigation when a party knows or reasonably should know that the evidence may be relevant to anticipated litigation.  *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998).  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (internal citations omitted) (holding duty to preserve was triggered by filing of complaint).  WAMY's failure to implement a litigation hold raises legitimate concerns that important evidence relevant to plaintiffs' claims has likely been lost, destroyed, or altered.  Moreover, to the extent the branch offices did in fact produce the relevant documents to

---

where the attorneys failed to sit down with plaintiffs to review specific discovery requests or explain what kinds of documents or information would be responsive to the requests.).

[6] At the same time that WAMY was transmitting the October 2011 letters, the Court was considering case dispositive sanctions against the Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") for their failure to comply with the Court's orders directing the charities to produce various categories of documents, including branch office records.  Plaintiffs contend that the threat of sanctions against a similarly situated charity defendant compelled WAMY to finally initiate some efforts to obtain relevant branch office records.

WAMY's headquarters in response to Dr. Mazrou's letter requests, including bank statements, plaintiffs have not found those records in WAMY's production.[7] [8]

Finally, WAMY's oft-repeated pronouncement that it has produced over a million pages of documents in this litigation is immaterial to this dispute. What is material is whether WAMY has undertaken timely and systematic efforts to secure and produce all documents responsive to plaintiffs' discovery requests. Our analysis of WAMY's document production concludes that it has not yet occurred in the almost eight years since plaintiffs served WAMY with their first set of document requests on December 10, 2010.

## II.   WAMY RECORDS INVOLVING THE SAUDI GOVERNMENT

WAMY continues to resist production of documents relating to key matters (such as its budget, global strategies and priorities), in apparent deference to the interests of the Saudi government. WAMY chiefly argues that no such "trove" of responsive documents exists because "there is no close coordination" between WAMY and the Saudi government ministries and embassies, and any relationship between WAMY's branch offices and the embassies "is

---

[7] As detailed in plaintiffs' MTC at 5-6, WAMY has failed to produce a complete and organized set of banking records for each of its offices (both within the Kingdom and abroad). Plaintiffs have to date identified 86 bank accounts belonging to WAMY at Exh. 5.

[8] Complicating the matter further, WAMY's productions are out of sequence and otherwise largely in a state of disarray without any internal logic or order. Indeed, documents relating to a particular subject, region, or incident are often separated by thousands of records relating to entirely different matters. Plaintiffs raised these concerns regarding the lack of organization of WAMY's productions during the meet-and-confer process. Although counsel for WAMY asserted in general terms that WAMY had complied with its discovery obligation to produce documents "as they are kept in the ordinary course of business" pursuant to Fed. R. Civ. P. 34, nothing in the production suggests that (*e.g.*, nothing to indicate the location from which each file was pulled). Moreover, counsel also acknowledged during the parties' discussion that WAMY had removed numerous records from the files in which they were maintained as part of its effort to segregate potentially responsive records. In particular, counsel explained that documents originating in WAMY's overseas branch offices were collected and sent to WAMY's office in Riyadh, subsequently transported to a central warehouse for storage and relevancy review, and then documents deemed responsive to plaintiffs' requests were further extracted and produced. By acknowledging that WAMY had removed the records from their original location and segregating those records from other related documents in collections with other documents for production (and without identifying from where they originated), there is no dispute that WAMY's records have not been produced in the manner in which they were kept in the ordinary course of business. As a result, WAMY was obligated to "organize and label (the responsive documents) to correspond to categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). WAMY clearly has not done so.

limited to simple facilitation or introduction letters from embassy officials." Opp. at 17-18. However, these representations are in direct conflict with WAMY's own documents produced to date, public statements by WAMY senior officials, and other evidence demonstrating the extensive involvement of the Saudi government (through its ministries, embassies, and senior officials) in funding and closely supervising, directing, managing, and participating in WAMY's global operations and activities since its establishment by Royal Decree in 1972, as reflected in plaintiffs' chart at Exh. 6, and evidenced by the following:

(a)     WAMY's annual budget is funded almost entirely by the government of Saudi Arabia.

(b)     WAMY's bank accounts and fundraising operations are regularly monitored by the Saudi government.

(c)     WAMY participates in committees established by the Saudi King and comprised of representatives of various Saudi ministries, including but not limited to, the Ministry of Islamic Affairs, Ministry of Foreign Affairs, Ministry of the Interior, Ministry of Education, and others. These committees are formed to oversee da'awa projects and activities outside the Kingdom.

(d)     The Saudi government has issued diplomatic plates for vehicles belonging to WAMY branch offices in foreign countries.

(e)     WAMY reports to senior Saudi officials concerning their domestic and global operations and activities.

(f)     The Ministry of Islamic Affairs has primary responsibility for supervising and directing WAMY's operations and activities within the Kingdom and abroad. Indeed, WAMY Secretary General Maneh al Johani has confirmed that WAMY is subordinate to the Ministry of Islamic Affairs.

(g)     The Minister of Education was the President of WAMY until 1994 when it was placed under the umbrella of the Ministry of Islamic Affairs. The Minister of Islamic Affairs became the president of WAMY.

(h)     WAMY senior officials participate in formal delegation visits to foreign countries which are organized and supervised by the Ministry of Islamic Affairs.

(i)     Representatives of the Ministry of Islamic Affairs directly intervened in WAMY personnel decisions, such as the appointment of Abdullah bin Laden to serve as WAMY's representative in the United States.

6

(j)     WAMY and the Ministry of Islamic Affairs jointly publish and distribute literature concerning da'awa and other activities.

(k)     The Saudi government provides WAMY's overseas branch offices with protection through its Saudi embassies and consulates.

(l)     The operations of WAMY's overseas branch offices are directly and closely supervised by the local Saudi embassies in the region, under the supervision of the embassy's Islamic Affairs Division.

(m)     WAMY's operations outside of the Kingdom are commonly carried out under the direction and supervision of a joint committee consisting of the Saudi Ambassador, other embassy personnel, a representative of the Ministry of Islamic Affairs, and WAMY personnel.

(n)     The Saudi government often purchases or leases buildings to house the operations of WAMY. For example, the purchase of WAMY's office in Washington, D.C. was coordinated by the Ministry of Islamic Affairs, and handled by the local Saudi embassy.

These categories of documents relating to WAMY's budget, finances, and high-level policymaking functions and activities are critical to the claims against WAMY. Notwithstanding these documented examples of direct ties between WAMY and the Saudi government, the Ministry of Islamic Affairs, and Saudi embassies on such critical issues, the production of responsive documents remains substantially incomplete. WAMY's assertion that the "documents Plaintiffs are looking for do not exist" is pure fiction when compared to the evidence demonstrating the Saudi government's years-long support for, and control over, WAMY and its branch offices across the globe. Accordingly, plaintiffs respectfully ask the Court to order WAMY to promptly produce all responsive documents as requested by the plaintiffs.

## III.     WAMY GOVERNING BODIES AND COMMITTEES

WAMY's assertion that it has produced all responsive documents relating to the activities undertaken by WAMY's committees is demonstrably incorrect. Opp. at 18. For instance, the limited number of documents produced to date by WAMY concerning its committees clearly demonstrate that those committees regularly hold meetings and maintain extensive meeting

minutes.  *See* WAMYSA343448-49 at Exh. 7 (discussing the minutes of the 78th meeting of the Kashmir Committee); WAMYSA052078-80 at Exh. 8 (discussing the minutes of the 37th meeting of the Eastern Europe Committee).  WAMY has not only failed to produce a full and complete set of meeting minutes for each of its committees, but continues to resist producing other relevant records associated with the committees, including but not limited to, communications, reports, bank account records, and other administrative records.[9]

## IV.    THIRD WORLD RELIEF AGENCY AND EL FATIH HASSANEIN

WAMY's contention that it did not have a branch office in Vienna, Austria, and that El Fatih Hassanein never served as the director of that office, Opp. at 6, n.21, is belied by WAMY's own documents.  *See* WAMYSA01665-1666 at Exh. 9 (excerpt of report discussing WAMY-Jeddah's supervision over WAMY's overseas branch offices in 1993, including WAMY's "Eastern Europe Office – Austria"); Plts' Exh. 36 at 3 (ECF No. 3912-36) (WAMY's chart identifying "Mr. Fateh Ali Hussein, Director of the Office of WAMY office in Austria and Eastern Europe").  WAMY's attempt to mislead this Court reflects a fundamental unwillingness to comply with its discovery obligation in this litigation.

## V.    WAMY'S SUPPORT FOR TERRORIST ORGANIZATONS IS RELEVANT

Responsive documents relating to WAMY's relationship with, and financial support for, designated terrorist organizations Hamas, Palestinian Islamic Jihad ("PIJ"), Hizbul Mujahideen,[10] Lashkar e Tayyiba,[11] Taibah International,[12] and others are relevant not only to

---

[9] Contrary to WAMY's suggestion at p. 18 of its Opposition, WAMY's General Assembly is an entirely separate body from the General Secretariat and Board of Trustees with its own distinct duties and responsibilities.  *See* Articles 5-11 of WAMY's Constitution at Plts' Exh. 19 (ECF No. 3912-19).  The General Assembly conducts its own meetings and maintains minutes.  *See* Exh. 10 (minutes of the General Assembly's seventh meeting).

[10] *See* WAMYSA016068 at Exh. 11 (December 16, 1999 letter from WAMY Secretary-General Dr. Maneh al Johani to Prince Turki al Faisal, Director General of Saudi Intelligence, requesting that Prince Turki meet with the head of Hizbul Mujahideen, Sayed Seif el Din, concerning recent developments in Kashmir).

plaintiffs' claims that WAMY knew and intended to support radical terrorist groups like al Qaeda, but also equally relevant to WAMY's defenses in this litigation, particularly where WAMY has represented to the Court and the plaintiffs that it is a reputable and peaceful benevolent organization that would never be involved with supporting terrorism.  *See* Plts' Exh. 20 (ECF No. 3912-20), October 30, 2005 Declaration of WAMY Secretary-General Saleh al Wohaibi (describing WAMY as a "peaceful," "well respected charitable and humanitarian organization" that "strives for world peace and the betterment of mankind" and "has never supported any person or organization known to participate in terrorist activities").  Evidence that WAMY supported known Hamas fronts and other related terrorist organizations is clearly relevant to a defense that WAMY has itself introduced into the litigation.  Accordingly, plaintiffs respectfully ask the Court to direct WAMY to immediately produce all responsive documents relating to its relationships with Hamas, Palestinian Islamic Jihad ("PIJ"), Hizbul Mujahideen, Lashkar e Tayyiba, Taibah International, and other terror groups.

## VI.    2004 IS THE APPROPRIATE CUT-OFF FOR THIS DISCOVERY

Contrary to WAMY's assertion, Opp. at 5, the Court reserved decision as to whether the 2004 discovery cut-off date should apply to WAMY and further warned the defendant that it had a "continuing obligation to preserve documents from [the 2002-2004] period that are responsive."  *See* Exh. 14, April 24, 2014 Tr. at 37, 40.  Plaintiffs incorporate by reference their March 14, 2014 Motion to Compel addressing this very issue, *see* Plts' Exh. 8 and 9 (ECF Nos. 3912-8 and 3912-9), and respectfully request that WAMY be compelled to produce responsive

---

[11] *See* WAMYSA052381 at Exh. 12 (July 11, 2001 letter from WAMY Secretary-General Dr. Maneh al Johani to the head of Lashkar e Tayyiba, Zaki al Rahman Lakhavi, inviting him to attend the inauguration of WAMY's sixth proselytization and educational camp held by WAMY's Kashmir Youth Committee).

[12] *See* WAMYSA058431 at Exh. 13 (November 27, 2000 transfer of $185,325.00 from WAMY to Taibah International).

documents for the 1992-2004 timeframe consistent with the Court's prior discovery rulings, which have been followed by all parties in discovery.

## VII.   PLAINTIFFS' FOURTH SET OF DOCUMENT REQUESTS ARE TIMELY

WAMY's timeliness objections to plaintiffs' fourth set of document requests, served on the defendant on August 22, 2013,[13] is without merit and is yet another example of WAMY's efforts to intentionally obstruct the production of meaningful and responsive documentation in these proceedings. Opp. at 6. As WAMY is well-aware, Magistrate Judge Maas originally set an April 29, 2011 deadline for WAMY to complete its rolling document production. *See* ECF No. 2381. WAMY subsequently sought and received numerous extensions of that deadline during the course of this litigation, through no fault of the plaintiffs. Within the past year alone, WAMY requested an extension of the March 31, 2017 deadline, and then a further extension of the revised September 29, 2017 document production deadline. After years of delay, due solely to WAMY's years of indifference and disregard for the litigation, *supra* at 3-4, and the inadequacy of WAMY's efforts to respond to plaintiffs' document requests, *supra* at 1-5, WAMY cannot credibly argue that plaintiffs' requests are untimely. Plaintiffs are entitled to discovery relating to all of the topics sought in their fourth set of requests and respectfully request that this Court compel WAMY to produce all requested documents.

## VIII.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court enter an order pursuant to Fed. R. Civ. P. 37(a), directing defendant WAMY to immediately produce all responsive documents.

---

[13] On April 16, 2013, the Second Circuit Court of Appeals remanded defendants Abdullah Naseef, Abdullah al Obaid, Abdullah Mohsin al Turki, and Adnan Basha (the "Charity Officials") for jurisdictional discovery. *In Re Terrorist Attacks on September 11, 2001* (Asat Trust Reg.), 714 F.3d 659 (2d Cir. 2013). Plaintiffs subsequently served supplemental document requests on WAMY, MWL, and IIRO seeking documents specifically relating to the Charity Officials.

Dated:  April 13, 2018                          Respectfully submitted,

                                          /s/ J. Scott Tarbutton
                                          Sean P. Carter, Esq.
                                          J. Scott Tarbutton, Esq.
                                          COZEN O'CONNOR
                                          1650 Market Street, Suite 2800
                                          Philadelphia, PA 19103
                                          Tel:  (215) 665-2000

                                          Jodi Westbrook Flowers, Esq.
                                          Robert T. Haefele, Esq.
                                          MOTLEY RICE, LLC
                                          28 Bridgeside Boulevard
                                          P.O. Box 1792
                                          Mount Pleasant, SC 29465
                                          Tel:  (843) 216-9000

                                          James P. Kreindler, Esq.
                                          Andrew J. Maloney, III, Esq.
                                          KREINDLER & KREINDLER, LLP
                                          750 Third Avenue, 32nd Floor
                                          New York, NY 10017
                                          Tel:  (212) 687-8181

                                          Jerry S. Goldman, Esq.
                                          ANDERSON KILL P.C.
                                          1251 Avenue of the Americas
                                          New York, NY 10020
                                          Tel:  (212) 278-1000

                                          Robert M. Kaplan, Esq.
                                        FERBER CHAN ESSNER & COLLER, LLP
                                          60 East 42nd Street, Suite 2050
                                          New York, New York 10165
                                          Tel:  (212) 944-2200


                                          Christopher T. Leonardo, Esq.
                                        ADAMS HOLCOMB LLP
                                          1001 Pennsylvania Ave., N.W.
                                          Suite 740-South
                                          Washington, D.C. 20004
                                          Tel: (202) 580-8820

                                          *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of Plaintiffs' Reply Memorandum of Law in Support of the Motion to Compel Defendants World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International to Produce Responsive Documents Pursuant to Federal Rule of Civil Procedure 37(a), was filed electronically this 13th day of April 2018.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

           /s/ _____
           J. Scott Tarbutton, Esq.

LEGAL\35190039\1 00000.0000.000/117430.000