# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

mm@martinmcmahonlaw.com
www.martinmcmahonlaw.com

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

**MARTIN F. MCMAHON**
Managing Partner
Admitted in District of Columbia, New York and
U.S. District Court of Maryland

**MICHAEL GOLDSTEIN**
Litigation Associate
Admitted in Virginia
District of Columbia pending

**CHE' THOMAS**
Legal Clerk
J.D. May 2018

**SALMA ATTIA**
Legal Clerk
J.D. May 2018

**ANGELA ST. PIERRE**
Legal Clerk
J.D. May 2019

April 18, 2018

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

**VIA ECF**

    Re:    *In Re: Terrorist Attacks on September 11, 2001, 03 MDL 1570 (GBD) (SN)*

**Letter re Judge Netburn's Order from April 11, 2018 Teleconference (ECF No. 3960)**

Dear Magistrate Netburn:

In our most recent communication concerning Defendant Jelaidan's ability to pay the sanctions previously levied against him by this Court, Defendant Jelaidan's Saudi attorney, Bassim Alim, expressed the following on behalf of Defendant Jelaidan: "Unfortunately, Mr. Jelaidan will not be able to secure the monies to satisfy the said Judicial Order against him. Mr. Jelaidan can barely make ends meet."

In order to give the Court some context for those statements, undersigned counsel will provide the Court with information that he learned from the prior correspondence he had with Defendant Jelaidan, vis-à-vis attorney Alim, concerning the sanctions issue:

1. Defendant Jelaidan gave no indication that he is averse to paying off the judgment contrary to Attorney Haefele's assertion.
2. The problem in his own words is, "I am broke". The reason—undersigned counsel has learned that the Defendant had incurred huge debts (over several million Saudi Riyals) accumulated over 15 years to sustain himself and his family, which consisted of 15 dependents.

3. Counsel was assured that the debts were incurred before entry of the Court's judgment in 2013. Therefore, according to Saudi laws (at least as represented by Defendant Jelaidan), those debts had priority over the judgment entered in the Southern District of New York.
4. As is the case in the Kingdom, Defendant Jelaidan was faced with a substantial prison sentence if he did not pay off those debts. Unbeknownst to undersigned counsel, he chose to pay off those debts rather than be sent to jail for any number of years. Undersigned counsel recently learned that the only reason he was able to pay off some or all of those debts is because the United Nations lifted the U.S. sanction on Defendant Jelaidan's Swiss bank account.
5. With respect to the transaction whereby the UN lifted the sanction, undersigned counsel did not even know that was possible. Also, I was never asked to participate in that transaction. And lastly, I did not participate in that transaction. Undersigned counsel does not know how much money went to Defendant Jelaidan's creditors. However, he was informed via his most recent correspondence that Defendant Jelaidan did not personally receive any of those funds, i.e., those funds went directly to his creditors.
6. Similarly, with respect to the actual disbursement of funds to Defendant Jelaidan's creditors, undersigned counsel did not know that was even possible, was not asked to participate in that transaction, and did not participate in that transaction.
7. Defendant Jelaidan stressed the fact that he was willing to meet with members of the deposition team in the Kingdom and explain these transactions. He simply requested that the deposition be pre-arranged so that he could make himself available.
8. Undersigned counsel informed Defendant Jelaidan that if he was going to advance an argument that he was indeed broke, that he should start preparing a current, comprehensive financial statement.

For the Court's edification, so that the Court fully understands the situation, at no time did undersigned counsel tell Attorney Haefele that Defendant Jelaidan would not pay the judgment. What I did state was that if Defendant Jelaidan secured new counsel overseas who wanted to fight registration of the U.S. judgment in another country (e.g. Switzerland), new counsel could resort to an argument that OFAC had no basis to designate Defendant Jelaidan because it was based on newspaper clippings, i.e., classic hearsay evidence.

Given Defendant Jelaidan's recently expressed sentiment, and the information he provided in the last couple of months, it should be no surprise to the Court that Defendant Jelaidan does not want, and cannot afford, having another attorney working for him, i.e., undersigned counsel.

Finally, undersigned counsel wants to assure the Court that I have been competent, prompt, and diligent in terms of the issues that Plaintiffs' counsel has raised. I have used the laws' procedures only for legitimate purposes and not to impede justice of any matter and I never intended to interfere with the process whereby OFAC issues a license. I have the utmost respect for the legal system and those who serve it, including judges, other lawyers, and public officials. I have tried to be a zealous advocate on behalf of my client, and I have repeatedly told Defendant Jelaidan that although he does not like the order imposing sanctions, that he must obey that order.

    Respectfully submitted,

/s  *Martin McMahon*
Martin F. McMahon, Esq.
Martin F. McMahon & Associates
1150 Connecticut Ave., Ste. 900
Washington, DC 20036
mm@martinmcmahonlaw.com
Office #: (202) 862 - 4343