# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

May 1, 2018

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

  Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  The Plaintiffs' Executive Committees write to respond to defendant Wa'el Jelaidan's April 18, 2018 letter (ECF No. 3966). We presume the Court's familiarity with Jelaidan's hoary history of noncompliance with this Court's orders. In no less than seven orders (ECF Nos. 2789, 2853, 3073/3087, 3139, 3228, 3372, 3380), the Court has clearly and unambiguously directed Jelaidan to pay monetary sanctions. For nearly two years following the Court's affirmation of the sanction's value, Jelaidan's counsel, Martin McMahon, indicated to the plaintiffs and the Court that OFAC licensure was the sole obstacle to Jelaidan's compliance. But even after OFAC issued a license, Jelaidan made no attempt to comply and has now confirmed that he remains willfully noncompliant.

  In light of the history and circumstances of Jelaidan's continued noncompliance, plaintiffs request that the Court impose the following consequences: (1) find Jelaidan in civil contempt; (2) impose the additional sanction of default; and (3) impose a sanction for the payment of additional attorney's fees and costs associated with the time and effort incurred to enforce the prior sanctions. Furthermore, given the various indicators that Mr. McMahon has aided Jelaidan's willful noncompliance and himself interfered with plaintiffs' and the Court's efforts to address that non-compliance, plaintiffs ask that the Court impose the financial sanctions jointly and severally on Mr. McMahon.[1] Finally, plaintiffs ask that the Court impose interest on the financial obligations associated with all current and past financial sanctions on both Jelaidan and McMahon.

---

[1] At the very least, Mr. McMahon's longstanding representation of multiple defendants that, like Jelaidan, required considerable time and resources to force discovery compliance (often leading to sanctions or defaults) warrants a hearing to inquire into his role and the propriety of his actions and to underscore that conduct aiding in contempt will not be tolerated.

The Honorable Sarah Netburn
May 1, 2018
Page 2

---

Unless the Court has specific questions regarding Mr. McMahon's letter, plaintiffs decline to address the bulk of the various extraneous matters reiterated from Mr. McMahon's previous exchanges, which the PECs have previously addressed in their correspondence of March 2, 2018 (ECF No. 3915) and the attachments thereto. However, we do note the following:

1. Mr. McMahon's communications about Jelaidan, indicating that he has no direct communication with Jelaidan, raise serious concerns about whether Mr. McMahon has contact with his client at all, or whether Jelaidan is cooperating with any counsel representing him in this MDL. Further, this apparent lack of contact suggests that Mr. McMahon has potentially withheld from the Court and plaintiffs key information concerning Jelaidan's participation in the litigation and intent to pay the sanctions imposed on him, and taken it upon himself to interject various intangible arguments designed to derail or complicate the proceedings as to Jelaidan.

2. Jelaidan cannot disregard the Court's orders, evading its authority to impose consequences for Jelaidan's noncompliance with the Court's discovery orders, simply by asserting through multiple intermediaries that he has insufficient funds to comply with the sanctions orders.

3. Given Jelaidan's history of bad faith dealing, to the extent that the sufficiency of funds is at all to be considered, the unconfirmed third-hand assertions about his financial condition (through Mr. Alim, to Mr. McMahon, to the Court), should carry no weight without certification directly from Jelaidan, supported by full disclosure of (a) *each* of Jelaidan's financial accounts and (b) all his current means of income or other sources of financial accretion.

4. As this Court has previously, correctly observed, Mr. McMahon is Jelaidan's counsel in this litigation, and the repeated references and inferences that the Court or plaintiffs must turn to a Saudi attorney, Bassim Alim, are absurd. Mr. Alim has not appeared in the MDL, plaintiffs are unaware if he even could appear, and Mr. Alim is listed as a potential witness in the litigation.[2] Similarly absurd are Mr. McMahon's comments that "it should come as no surprise . . . that [Jelaidan] does not want . . . another attorney working for him, i.e., [Mr. McMahon]." As this Court rightly recognized, Mr. McMahon – and no one else – represents Jelaidan in this litigation.

5. Mr. McMahon's consistent refrain – that Jelaidan's willful refusal to comply with this Court's orders requires plaintiffs to engage in ancillary foreign litigation to enforce a "judgment" – confuses the issue – this is not about enforcing a judgment – and tests the Court's authority to impose consequences for his continued willful noncompliance.

6. Mr. McMahon's claim that he never told the PECs that Jelaidan would not comply with the order is characteristically both obtuse and obfuscating. One the one hand, Mr. McMahon previously intimated that Jelaidan *would* make payment once an OFAC license was obtained. But after the license was obtained (and after years of legal proceedings), all of Mr. McMahon's comments necessarily indicate that Jelaidan will not voluntarily comply and that (despite claiming Jelaidan has insufficient monies) Jelaidan would likely hire counsel to oppose payment if foreign proceedings were instituted. Again, given the suggestions that Mr. McMahon has not been in direct contact with Jelaidan, it is unclear whether Mr. McMahon had a valid basis to make any of these representations.

---

[2] Bassam Alim was identified on Plaintiffs' most recent witness list in light of his service as the Director of defendant MWL's branch office in the United States.

7. Finally, Jelaidan should never have placed himself in a position to be sanctioned; and given the willful nature of his noncompliance with the discovery orders underlying the sanctions, any argument that he should not be required to comply is insulting to the plaintiffs and should be considered insolent to the Court.

**The Court Should Find Jelaidan in Civil Contempt.** A party may be held in civil contempt for failure to comply with a court order if: (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Although the proofs need not show that the violation was willful, *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984), the proofs here demonstrate willfulness.

Here, the exchanges between the PECs and Mr. McMahon (exhibits A-M of ECF No. 3915) and Mr. McMahon's April 18, 2018 letter to the Court (ECF No. 3966) make perfectly clear that each of the elements for contempt are met. The orders imposing sanctions, obligating Jelaidan to comply and requiring McMahon to report efforts to comply and to communicate a timeline for compliance (ECF Nos. 2289, 3073, 3087, 3139, 3228, 3372 and 3380), are clear and unambiguous that the Court required Jelaidan to pay the value imposed in the order, required McMahon to report on all efforts toward that end, and required McMahon to report a timeline for compliance. The exchanges and the letter to the Court also evidence that, in addition to having no intention of complying with the orders, Jelaidan would likely actively resist compliance (if, for example, plaintiffs were to take the necessary step of filing foreign litigation to force compliance). In other words, the evidence demonstrates clearly and convincingly not only that he is noncompliant, but also that his noncompliance is willful. Finally, inasmuch as it is clear that Jelaidan has made a willful decision to remain noncompliant, despite the Court's and plaintiffs' patient efforts to allow him to come into compliance, Jelaidan has made no diligent attempts to comply.

Although the Federal Magistrate Act limits a magistrate judge's authority to impose contempt sanctions, 28 U.S.C. § 636, Plaintiffs ask Your Honor to certify the facts that meet the requirements for contempt. The facts here are sufficiently clear to permit a magistrate judge to "certify the facts to a district judge and . . . serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. 28 U.S.C. § 636 (e)(6)(3).

**The Court Should Impose The Additional Sanction of Default.** At the time the Court imposed the initial sanctions on Jelaidan, it observed that Jelaidan's willfulness and bad faith, which in October 2013 spanned more than seven years (and now span an additional four and a half years), justified severe sanctions. ECF No. 2789 at 16. As a result, the Court imposed sanctions on Jelaidan, which included a financial component with which Jelaidan has now indicated that he will not comply. In short, Jelaidan is in willful noncompliance of discovery orders that resulted in sanctions, and is now in willful noncompliance of at least seven orders directing him to comply with the sanctions imposed.

Though default is the most severe sanction that the court may apply, and its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited, the facts here warrant its use. The Second Circuit has recognized that "where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of

justice, the application of even so stringent a sanction is fully justified and should not be disturbed." *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir. 1964). All six factors that courts generally consider in determining whether to impose default are present here. Those factors include: (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party. Courts must also consider competing policy considerations: the need for general deterrence and docket control versus the preference for resolving cases on their merits. *American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999).

The circumstances here warrant imposition of the extreme measure where Jelaidan has repeatedly tested this Court's authority – willfully violating order after order, in a course of conduct that spans well over a decade. *See American Cash*, 184 F.R.D. at 524 (imposing default judgment where party fails to comply with five orders). He was initially sanctioned for willfully violating discovery orders. Now he has shown his contempt for the Court in willfully violating the Court's sanctions orders. Moreover, his recent communications indicate that he has every intention of continuing his evasive conduct by refusing to comply with this Court's order governing deposition protocols.[3] The long and persistent history of willful noncompliance, coupled with the unsuccessful application of lesser sanctions, and Jelaidan's refusal to reimburse plaintiffs for the costs and fees associated with the earlier sanctions motion, all coalesce to make this a circumstance especially ripe for default judgment. No lesser sanction will suffice given Jelaidan's unyielding noncompliance.

**The Court Should Impose Additional Fees and Costs Associated with the Time and Effort to Impose These Added Sanctions and Impose Interest on all Past and Present Financial Sanctions Awarded**. For all the reasons that allowed imposition of the initial fee and expense sanctions, plaintiffs are entitled to the imposition of added financial sanctions. *See* ECF No. 2789 (explaining that Rule 37 requires an award of expenses reasonably incurred in making a motion unless the noncompliant party's noncompliance was substantially justified or the award would be unjust) (quoting *Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, No. 11 Civ. 1237 (LGS) (JCF), 2013 WL 3056805, at *3 (S.D.N.Y. June 19, 2013)). Moreover, given the continued delay, plaintiffs request that the Court require Jelaidan to pay interest on the amounts owed. The interest on the initial values ordered should run from the date the Court set the value, October 23, 2015 (*See* ECF No. 3073; the same values were also ordered in ECF No. 3087, dated October 28, 2015).

**Due to Mr. McMahon's Apparent Role in Intentionally Facilitating Jelaidan's Willful Noncompliance, the Court Should Impose the Financial Sanctions Jointly and Severally on Mr. McMahon.** Rule 16(f)(2) authorizes the Court to impose fees and costs on Jelaidan, Mr McMahon, or both. Here, Mr. McMahon has long been well positioned to see Jelaidan's lack of

---

[3] During the Court's hearing concerning deposition protocols, this Court explicitly rejected defendants' insistence that the defendants' depositions take place in the Kingdom of Saudi Arabia, and ordered that it would recognize four appropriate locations for the parties to notice depositions – namely, New York, London, Rome, and Madrid. Transcript of Nov. 7, 2017 at 23 (After noting the difficulties with requiring depositions in Saudi Arabia, the Court stated, "I reject the proposal from the [DEC] that depositions occur in any nation, including where a deponent lives or works. I am going to authorize the depositions to take place either in the forum jurisdiction or London, Paris, and Rome as acceptable locations"); ECF No. 3894 at ¶ 31 (Deposition Protocol recognizing New York, London, Madrid, and Rome as the four presumptively acceptable locations for depositions, absent agreement of the parties).

respect for the Court's authority and understand that Jelaidan always intended to waste the plaintiffs' and the Court's time and resources before eventually doing what he has consistently done – namely, ignore the Court's authority and refuse to comply with its orders. With that knowledge and understanding, Mr. McMahon has consistently, for years, facilitated Jelaidan's time/resource wasting and evasive conduct – initially interjecting extraneous and impertinent issues to delay discovery and obfuscate failures to comply with discovery obligations, and more recently doing the same to delay compliance with the sanctions orders and obfuscate Jelaidan's noncompliance.

Though Mr. McMahon may advocate for Jelaidan, he is not free to assert baseless positions to facilitate evasion of the Court's plain orders. The more recent exchanges, some reiterated in Mr. McMahon's letters to this Court, demonstrate the extent to which he has deviated from reasonable arguments to avoid Jelaidan's obligations. For example, he has argued: (1) that, rather than Jelaidan complying with the sanctions orders, plaintiffs must take affirmative action in foreign collection proceedings (to collect from accounts that Jelaidan's most recent letter seems to indicate no longer exist); (2) that the Court's sanctions orders are somehow invalidated because (Jelaidan claims) the processes used to designate Jelaidan were flawed;, and (3) that the PECs should appreciate that Mr. McMahon did not bill them for securing Jelaidan's OFAC license to comply with the Court's orders.

Mr. McMahon's familiarity with Jelaidan's evasive and obfuscating tactics is even more apparent given that this is not the first of his clients in this MDL that has interjected evasive delay tactics only to later disappear after absorbing enormous time and resources from the plaintiffs and the Court. *See* ECF No. 3915 fns. 2-4, summarizing similar issues with Mr. McMahon's former clients Rabita Trust, Sanabel al Kheer, Muslim World League, and International Islamic Relief Organization.

For the reasons set forth herein and in plaintiffs' previous correspondence regarding Jelaidan and his counsel, Plaintiffs ask that the Court: (1) find Jelaidan in civil contempt; (2) impose the additional sanction of default; (3) impose additional attorney's fees and costs associated with the time and effort incurred to enforce the prior sanctions; (4) impose the financial sanctions jointly and severally on Mr. McMahon; and (5) impose interest on the financial obligations associated with all current and past financial sanctions imposed on both Jelaidan and Mr. McMahon.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel. – (843) 216-9184
*rhaefele@motleyrice.com*

Co-Liaison Counsel for the Plaintiffs' Exec. Committees

cc:   The Honorable George B. Daniels, via ECF
      All Counsel of Record via ECF