THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: )
)
TERRORIST ATTACKS ON ) Civil Action No. 03 MDL 1570 (GBD)(SN)
SEPTEMBER 11, 2001 ) ECF Case
)

### DECLARATION OF MARTIN F. MCMAHON

1. My name is Martin F. McMahon. I am over the age of 18. I give this declaration under the penalty of perjury.

2. I have represented Defendant Wael Jelaidan for over 10 years in Civil Action No. 03 MDL 1570 (GBD)(SN). Until the last couple of years, I had little to no issues with representing him, nor working with his local counsel in Jedda, Saudi Arabia, Bassim Alim.

3. Within the last two or so years, however, I have been frustrated in part due to the lack of communication, or sometimes extremely delayed communication, from Mr. Jelaidan and his local counsel on usually urgent questions related to his litigation. For example, in the last couple of months, when I have had to answer Plaintiffs' counsels' questions or concerns about Mr. Jelaidan's ability to pay the sanctions in a hasty manner, I sometimes have had to wait a week or more for a response. This has been the case even though I have suggested to Mr. Jelaidan and his local counsel how urgent answers to some of these questions were, including whether I should remain in this case, do I have any assurance that I will be paid in the future, what our strategy would be moving forward, and was he going to be available for a deposition.

4. In addition, Mr. Jelaidan's payments on our firm's invoices have been overdue at times as well. On a few occasions, it took months for him to pay us the substantial fees he owed us, which as a small firm that typically has somewhere between 20 and 30 clients, this lack of

timely payment significantly impaired the functioning of our firm, since we have spent a lot of time on his case over the years.

5. Moreover, Mr. Jelaidan, through his local counsel on February 28 and most recently on April 18, specifically told me that Mr. Jelaidan would be unwilling to pay attorney's fees in the future, since he is broke. Continuing to work for him on this case then would be tantamount to working on a pro bono case, but one in which I was not aware that I would be taking on, and one that I certainly would never have agreed to take on originally if I knew it would lead to this point.

6. Lastly, it is simply not right for me to continue representing Mr. Jelaidan given the fact that some members of Plantiffs' counsel are trying to pit me against my client, which should be enough on its own to convince the Court about the validity of my withdrawal from Mr. Jelaidan's representation. I have been reminded by my counsel in this matter that as counsel for our clients, we are fiduciaries to them. We are supposed to hold their interests above our own, without violating any ethical considerations of course. Consequently, I cannot in good conscience represent Mr. Jelaidan further when doing so could require that I disclose his privileged communications to me or somehow throw him under the bus in order to satisfy Plaintiffs' counsel's concerns about my work on this case. Moreover, both Mr. Jelaidan and his Saudi representative have been informed of my decision to withdraw as Mr. Jelaidan's counsel and, at this time, neither opposes this decision.

7. In regard to the issue of securing an OFAC license, on March 8, 2016, Judge Daniels issued an Order (ECF No. 3228) (2016 Order) denying Mr. Jelaidan's objections to the October 23, 2015 Order from Judge Maas (ECF No. 3087) (2015 Order) setting the amount of sanctions that he had to pay and finalizing the monetary awards granted to several members

of the Plaintiffs' Executive Committee. In the 2016 Order, Judge Daniels informed Mr. Jelaidan that he had 30 days to apprise the Court of how he intended to pay the awards and suggested applying for an OFAC license as one task that should be completed. On April 8, 2016, I sent a letter to OFAC on behalf of Mr. Jelaidan (ECF No. 3378) in order to secure a license from them so that Mr. Jelaidan could pay the awards.

8. After months of reaching out to them to no avail, I finally received receipt of our application for a license in May of 2017. Then, we tried for months to reach out to their office about actually receiving the license and filing status reports with the Court about our efforts (*see, e.g.*, ECF Nos. 3651, 3724, and 3845). On February 6, 2018, Attorney Haefele emailed me a letter informing me that OFAC had granted Mr. Jelaidan a license the previous week. I had not heard from OFAC up to that point about the license being issued, but a few days after I received Attorney Haefele's letter, I received a copy of the license in the mail. On February 22, 2018, my associate emailed a copy of the license to Attorney Haefele.

9. There was nothing else I could have done that I know of to expedite the process of securing a license from OFAC. I contacted them at least once a month for almost two years from the time before I received notice that they received our application, and between the time we received notice and the time they granted the license.

    Respectfully submitted,

    /s   *Martin McMahon*
    Martin F. McMahon, Esq.

    Executed on: May 3, 2018

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I served the Declaration of Martin F. McMahon through the Court's electronic transmission facilities and emailed to all relevant parties, including Wael Jelaidan, on the 3rd day of May, 2018.

                                                                             */s  Martin McMahon*
                                                                             Martin F. McMahon, Esq.