# EXHIBIT A



WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

**Robert V. Cornish, Jr.**
202.626.7686 (direct)
Robert.Cornish@wilsonelser.com

**Elizabeth B. Sandza**
202.626.9091 (direct)
Elizabeth.Sandza@wilsonelser.com

May 9, 2018

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

Re: *In Re: Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GB) (SN)

Dear Judge Netburn:

We have been retained by Martin McMahon, attorney of record for Wael Jelaidan, a defendant in this action, to advise and defend Mr. McMahon with respect to the requested imposition of sanctions against him personally, after sanctions were levied against his client by Order dated October 28, 2015 (ECF No. 3087). Specifically, we are asked to respond, on behalf of Mr. McMahon, to the Plaintiffs' Executive Committee ("PEC") letter of May 1, 2018 (ECF No. 3988). We do not represent Mr. Jelaidan.

We advised Mr. McMahon that he was obliged to move to withdraw as Mr. Jelaidan's counsel in this case because of several reasons. The PEC's counsel appeared to be attempting to put Mr. McMahon into direct conflict with his client. The PEC confirmed that position when, in its letter of May 1, 2018 (ECF No. 3988) they argued that the sanctions, legal fees to three law firms, imposed four and a half years ago on Mr. Jelaidan, should now be made joint and several as between Mr. Jelaidan and Mr. McMahon. We further advised Mr. McMahon that his recent fee payment and communications difficulties with Mr. Jelaidan also warrant his removal as counsel. Mr. McMahon followed our advice and filed a Motion to Withdraw on May 1, 2018 (ECF No. 3990-92), explaining the reasons warranting his withdrawal. *See also* New York State Bar Ass'n Comm. on Prof'l Ethics, Ethics Opinion 1144 (Jan. 29, 2018) ("If a breakdown occurs in communications between a lawyer and client such that representation cannot be carried out effectively, the lawyer may seek to withdraw from representing the client subject to any applicable rule of court.").

700 11th Street, NW, Suite 400 • Washington, DC 20001 • p 202.626.7660 • f 202.628.3606

Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Indiana • Kentucky
Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • New Jersey • New Orleans • New York • Orlando • Philadelphia • Phoenix • San Diego
San Francisco • Sarasota • Stamford • Virginia • Washington, DC • West Palm Beach • White Plains

**wilsonelser.com**

955425v.1

**Response to May 1, 2018 PEC Letter**

We do not represent Mr. Jelaidan, and therefore we do not offer any defense to the PEC's accusations about Mr. Jelaidan or respond to their request that he be held in default.

As for Mr. McMahon, rather than acting as an obstructionist, he counseled his client to pay the sanctions. He offered what assistance he reasonably believed he could to the PEC attorneys to collect their $134,620.47 fee award, while still maintaining his duty of loyalty to his client.

1. Mr. McMahon always maintained to Mr. Jelaidan that he had to pay the sanctions order even though he disagreed with it.
2. Mr. McMahon was aware that Mr. Jelaidan had funds in a Swiss bank account that had been frozen for over a decade due to his OFAC designation as a Specially Designated National, so Mr. McMahon agreed with the PEC attorneys that he should apply for an OFAC license on Mr. Jelaidan's behalf to unfreeze that account for the single transaction of paying the three firms' legal fees. At the time of filing the license application, Mr. McMahon did not know how much money was in the account, or what interests had been asserted against these funds.
3. When the court was not satisfied that OFAC was moving fast enough on the license application, Mr. McMahon contacted OFAC 21 times over a 9-month period, to check on the application's progress.[1]
4. Finally, OFAC issued the license on January 30, 2018 allowing the single transaction. PEC was made aware of the license by OFAC on January 31, 2018 and by Mr. McMahon when he learned of it from OFAC on February 6, 2018. The PEC was provided a copy of the license by Mr. McMahon on February 22, 2018.
5. During late 2017 and early 2018, Mr. McMahon was under a lot of pressure from the PEC attorneys regarding the sanctions order and personally needing to speak with his

[1] Below is a table referencing all of the documented times that Mr. McMahon reached out to OFAC to inquire about the license. SR represents "Status Report".

| OFAC Contact | Proof | OFAC Contact | Proof |
|---|---|---|---|
| LETTER 4/8/17 | 10/20/16 SR | CALL 9/27/17 | 9/27/17 SR |
| LETTER 5/5/17 | 5/9/17 SR | CALL 10/11/17 | 10/27/17 SR |
| CALL 7/14/17 | 7/26/17 SR | CALL 10/22/17 | 10/27/17 SR |
| CALL 7/20/17 | 7/26/17 SR | CALL 10/27/17 | 10/27/17 SR |
| LETTER 7/25/17 | 7/26/17 SR | 11/21/17 | 11/27/17 SR |
| CALL 8/11/17 | 8/26/17 SR | 11/27/17 | 11/27/17 SR |
| CALL 8/23/17 | 8/26/17 SR | TWO CALLS FOR DEC | 12/26/17 SR |
| CALL 9/19/17 | 9/27/17 SR | THREE CALLS FOR JAN; 1 RECEIVED CALL | 1/26/18 SR |
| CALL 9/26/17 | 9/27/17 SR | | |

client about several matters, including this and other financial matters, so he had made several attempts to reach his client.

6. Although Mr. McMahon was not aware of Mr. Jelaidan's other debts, he urged the PEC attorneys to protect their interest in Mr. Jelaidan's bank account by filing their judgment in Switzerland to give their judgment a potential preference over possible other creditors or just to facilitate progress toward collection. To this day, the PEC attorneys have not responded to Mr. McMahon's questions about whether they took any such steps.
7. Finally, in a letter dated February 27, 2018, Mr. Jelaidan answered Mr. McMahon's several inquiries about the sanctions order, his legal fees and case strategy in a letter. Among other things, Mr. Jelaidan disclosed that he was "broke". Mr. Jelaidan also disclosed that, without Mr. McMahon's knowledge, he had somehow previously directed all of the funds in his Swiss account to pay other creditors who were likely in Saudi Arabia. He claimed that he would have been imprisoned in Saudi Arabia if he had not done so. Mr. McMahon informed the court of these circumstances.
8. Mr. McMahon has no knowledge as to why or when the Swiss bank authorized the payment of other creditors. Nor does he know whether those creditors were paid this year or several years ago.
9. Mr. McMahon had no knowledge of the Swiss bank sending Mr. Jelaidan's funds to other creditors until he was so informed in a letter dated February 27, 2018.
10. Three months ago, when Mr. McMahon still had contact with his client, he arranged for a local Saudi counsel to defend Mr. Jelaidan and offered to the PEC (in emails dated February 15 and 21, 2018, *see* Exhibits 1 and 2, attached) taking Mr. Jelaidan's deposition by Skype so he could disclose all of his assets and their availability to satisfy this judgment, but the PEC never accepted that offer.
11. Mr. McMahon also instructed his client to prepare a financial statement to be turned over to the PEC detailing his financial condition, but Mr. Jelaidan failed to do so.

Mr. McMahon is counsel for his client, not a proxy for his client, and should not face sanctions because his client did not pay discovery sanctions. For example, Rule 1.2(b) of the New York Rules of Professional Conduct ("Scope of Representation and Allocation of Authority Between Client and Lawyer") provides that "[a] lawyer's representation of a client, including representation by appointment, **does not constitute an endorsement** of the client's political**, economic**, social or moral views or **activities**." (emphasis added). Rules 3.3 ("Conduct Before a Tribunal") and 3.4 ("Fairness to Opposing Party and Counsel") nowhere contemplate that a lawyer is obligated to ensure or guarantee that his client pays a sanctions order. Indeed, Rule 1.8 ("Current Clients: Specific Conflict of Interest Rules") provides that "[w]hile representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to the client, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter…." Mr. McMahon ethically could not guarantee payment by his client or be compelled to pay sanctions owed by his client.

To obtain sanctions against an attorney whose client does not cooperate adequately with its discovery obligations, a litigant must provide notice to the attorney of what sanctions are sought and why. The attorney is entitled to a full notice and record of all the evidence regarding his

performance of his duties - not his client's performance of his duties - and only if it is shown to the court that the attorney acted improperly will sanctions be granted.

The Second Circuit has noted that someone against whom sanctions are sought should receive "a proper opportunity to oppose the motion for sanctions and to augment the record with appropriate countervailing evidence." *Healey v. Chelsea Resources*, 947 F.2d 611, 623 (2d Cir. 1991). The Second Circuit further observed that, prior to imposing monetary sanctions under Rule 37, courts must consider the willfulness of the non-compliant party or the reason for noncompliance, the efficacy of lesser sanctions, the duration of period of noncompliance, and whether the non-compliant party had been warned of the consequences of noncompliance. *Charette v. Dep't of Soc. Servs.*, 333 Fed. Appx. 591, 592 (2d Cir. 2009). A court order awarding monetary sanctions against a party's attorney must set forth its findings "with reasonable specificity in terms of the perceived misconduct and the sanctioning authority." *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996).

In its May 1, 2018 letter to the Court, the PEC suggests for the first time that the Sanction Order sought by plaintiffs only against Mr. Jelaidan and two other defendants, and ordered, after a full factual hearing, only against those defendants, now be made *ex post facto* joint and several with equal force against their counsel, Mr. McMahon. The PEC's request is not in the proper procedural position to now be expanded to a sanctions order against Mr. McMahon, and is violative of Mr. McMahon's due process rights. In addition, in arguing that sanctions are now warranted against Mr. McMahon, the PEC relies not on facts and evidence but on their own misinterpretation of statements made, innuendo and erroneous facts about Mr. McMahon. For example:

1. The PEC accuses Mr. McMahon of withholding key information from the Court or the plaintiffs. However, the PEC never identifies what information they claim Mr. McMahon actually withheld or failed to disclose.
2. The PEC argues that Mr. McMahon "indicated" that the OFAC license was the last step required before getting paid. Mr. McMahon never so stated, and the PEC's counsel offers no proof of such a communication by Mr. McMahon.
3. The PEC argues that Mr. McMahon has had "no contact" with Mr. Jelaidan, when, in fact, in his April 18, 2018 letter to the court, Mr. McMahon referred to a February 27, 2018 letter from his client.
4. The PEC erroneously conflates a statement by Mr. McMahon that Mr. Jelaidan had the right to appeal his designation as a SDN with a claimed right to appeal the sanctions order – which he does not have.
5. Apparently referring to Mr. McMahon's suggestion that the PEC take his client's deposition or at least perfect the sanctions order in Switzerland, the PEC claims that Mr. McMahon has "proffered extraneous and impertinent issues to delay discovery." Far from purported delay, Mr. McMahon has made relevant efforts to assist. It is improper for the PEC to either outsource its responsibility for its own inertia or conflate Mr. McMahon's responsibilities with those of his client.

Most importantly, these are not the actions of an attorney who has willfully disregarded his obligations to this Court. Quite the contrary, they are offers and suggestions of a cooperating

attorney. Even if the PEC attorneys were to now file a proper motion for sanctions against Mr. McMahon, they would not prevail because his actions do not rise to the standard required by the Second Circuit. Therefore, the PEC's request that Mr. McMahon be held liable under the sanctions order, never even raised against him before this date, should be denied.

Respectfully submitted,

*Robert V. Cornish, Jr.*

Robert V. Cornish, Jr., Esq.
NY Bar # 4755104

Elizabeth B. Sandza, Esq.