# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  | |  |
|---|---|---|
| | : | |
| *IN RE* TERRORIST ATTACKS ON | : | No. 03 MDL 1570 (GBD/SN) |
| SEPTEMBER 11, 2001 | : | ECF Case |
| | : | |

*This document relates to:*
All Cases

---

**Plaintiffs' Executive Committees' Opposition
To the Motion of Martin McMahon to
Withdraw as Counsel for Defendant Wa'el Jelaidan**

**Plaintiffs' Executive Committees' Opposition**
**To the Motion of Martin McMahon to**
**Withdraw as Counsel for Defendant Wa'el Jelaidan**

The Plaintiffs' Executive Committees, for all plaintiffs in the multidistrict litigation, oppose the application of attorney Martin McMahon in which Mr. McMahon requests permission to withdraw as counsel for defendant Wa'el Jelaidan.  ECF Nos. 3990-92.  The PECs ask that the Court deny the application without prejudice, or at the very least that the Court impose appropriate conditions that must be met before withdrawal is authorized.

Local Civil Rule 1.4 provides the authority and mechanism for an attorney of record to withdraw from representing a party.  Rule 1.4 provides that an attorney who has appeared for a party may be relieved only by order of the Court, and that such an order "may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar."  *Anderson v. River Greene Constr. Grp., LLC*, Dkt. No. 16-cv-3684 (JMF), 2017 U.S. Dist. LEXIS 112494, *3 (S.D.N.Y. July 19, 2017), quoting Local Civ. R. 1.4.

The decision to grant or deny a request to withdraw, or to impose conditions on withdrawal, is committed to the sound discretion of the trial court.  *Bijan Karimian v. Time Equities, Inc.*, 10 Civ. 3773 (AKH) (JCF), 2011 U.S. Dist. LEXIS 51916, *4 (S.D.N.Y. May 11, 2011); *SEC v. Great Am. Techs., Inc.*, Dkt. No.  07 Civ. 10694 (DC), 2009 U.S. Dist. LEXIS 117589, *12 (S.D.N.Y. Dec. 15, 2009); *Mario Valente Collezioni, Ltd. v. Semeraro*, Dkt. No. 02 Civ. 196 (SHS), 2004 U.S. Dist. LEXIS 8274, *2-3 (S.D.N.Y. May 10, 2004).

When considering whether to grant a motion to withdraw, therefore, a court must analyze *both* of the following two factors: (1) the reason for withdrawal, and (2) the impact of the withdrawal on the timing of the proceeding.  *Anderson*, 2017 U.S. Dist. LEXIS 112494, *3.  The first factor concerns whether the attorney has established "satisfactory reasons" for withdrawal.  *Genao v. City of New York*,

Dkt. No. 14-CV-8122 (AT) (JLC), 2017 U.S. Dist. LEXIS 880, *5 (S.D.N.Y. Jan. 4, 2017).  The second factor concerns "whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel."  *Genao*, 2017 U.S. Dist. LEXIS 880, *7 (internal quotations omitted).  Even if the attorney is able to identify "satisfactory reasons" for withdrawal, that alone is a necessary, but not sufficient, basis for withdrawal.  The Court must also consider whether the counsel's withdrawal will disrupt or delay the proceedings.  *Anderson*, 2017 U.S. Dist. LEXIS 112494, *5.

In his application, Mr. McMahon relies on two "reasons" that he argues, by themselves, suffice to permit Mr. McMahon to withdraw; but he fails to demonstrate any sufficient basis for withdrawal.  Further, he never addresses the second necessary prong of the analysis – namely, whether his withdraw will disrupt or delay the case proceedings.  Because his withdrawal will disrupt or delay the contempt and sanctions enforcement proceedings pending for the Court's consideration, which include potential dispositive ramifications for Jelaidan, the Court should disallow Mr. McMahon's withdrawal to avoid Jelaidan facing a judgment without the benefit of representation.  Finally, Mr. McMahon's withdrawal now is inappropriate in light of the discrepancies in Mr. McMahon's statements.  Before the Court credits any of Mr. McMahon's statements, a hearing is warranted to clarify the discrepancies.

### I.      Mr. McMahon has not Established "Satisfactory Reasons" for Withdrawal

Mr. McMahon contends that two reasons exist to warrant his withdrawal: (1) non-payment of fees, and (2) a conflict with his client.  He has offered little proof of either, and neither circumstance would necessarily provide a satisfactory reason for withdrawal – especially not here.

While Mr. McMahon's application rests largely on his contention that Jelaidan has not paid his legal fees, the Second Circuit has found that nonpayment of legal fees is typically an insufficient basis to permit an attorney to withdraw from representation.  *United States v. Parker,* 439 F.3d 81, 104 (2d Cir. 2006).  Where courts *have* allowed counsel to withdraw for lack of payment, the client has either "deliberately disregarded" financial obligations or failed to cooperate with counsel.  *Id.*  New York

courts interpreting the Code of Professional Responsibility have interpreted the disciplinary rules to permit a lawyer to withdraw from representing a client for non-payment of fees *only* if the client "deliberately disregards an agreement or obligation to the lawyer as to expenses or fees."  *Id*, quoting N.Y. Code of Prof'l Responsibility D.R. 2-110(C)(1)(f).

Here, instead of offering any evidence of a history of non-payment for legal services rendered to Jelaidan in this case, Mr. McMahon's affidavit states simply that payments for work performed for Jelaidan have "at times" been overdue (ECF No. 3993, ¶ 4).  The only other comments reflect second-hand references indirectly passed to Mr. McMahon indicating that Jelaidan is not inclined to pay Mr. McMahon for future services.  If Mr. McMahon is to offer evidence on this point, something more than self-serving second-hand statements should be required of him.

Mr. McMahon's reliance on his secondary argument – that conflict with his client is another reason for withdrawal – is similarly unsupported.  While client conflict may, under appropriate circumstances, be a satisfactory reason to authorize withdrawal, the circumstances here are entirely inapposite.  While the conflict that Mr. McMahon alleges is not entirely clear, it appears to be tied to Jelaidan's untimely or incorrect communications with Mr. McMahon.  Absent clarification of how this creates a conflict, Mr. McMahon's statements are insufficient to explain why Jelaidan should be left unrepresented or the proceedings against him stalled.  Plaintiffs' argument that Mr. McMahon should be held accountable stems from his own alleged contempt.  If he played no such role, there is no conflict.  If he did play a role, he is accountable for his own conduct.

The facts and circumstances here suggest that Mr. McMahon, Jelaidan, or both, have manufactured circumstances and acted to disrupt and foster delayed proceedings.  Courts have cautioned against condoning just such manipulation.  *See Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064, 1996 U.S. Dist. LEXIS 7796, at *6 (S.D.N.Y. June 7, 1996) (denying motion to withdraw over concern with litigation delay because it would be "too easy for a defendant to stall proceedings by

3

inducing the withdrawal of its attorney by non-payment of fees"). Convenient to Mr. McMahon's current argument, he contends only that, two days after he told the Court that OFAC issued a license (*see* ECF No 3907) and again on the day that he told the Court that Jelaidan would not pay the sanctions (*see* ECF No. 3966), Jelaidan (through intermediaries) told Mr. McMahon that Jelaidan was unwilling to pay Mr. McMahon additional fees. The circumstances are all that much more suspect given that Mr. McMahon has a history of engaging in this precise delay tactic in two previous instances for three other clients he has represented in this MDL.[1]

Before the Court credits Mr. McMahon's commentary about whether Jelaidan will pay for services going forward, the Court should consider whether, how much, and by whom Mr. McMahon has been paid for his services to Jelaidan in the past. Mr. McMahon has a long history in this MDL of representing defendants as to whom he claimed that he was not receiving payment but he nonetheless continued representing them. In at least one instance, he received substantial payment for services through indirect remuneration, a mechanism that may have avoided reporting requirements for payments from certain of the involved parties.

Rabita Trust was a defendant that Mr. McMahon represented for a significant period of time, with neither payment nor communication from the client. During a hearing before this Court in the context of proceedings to compel or sanction Rabita Trust, Mr. McMahon advised that, to his knowledge, the entity no longer had any representatives and he had long since ceased communicating with anyone on behalf of the entity. Nonetheless, without payment nor client authority, Mr.

---

[1] *See* ECF No. 3915, footnotes 3 and 4, explaining Mr. McMahon's prior representation of Sanabel al Kheer, Muslim World League, and International Islamic Relief Organization. After plaintiffs filed applications for sanctions against those defendants for discovery abuses, Mr. McMahon withdrew thus disrupting the sanctions proceedings while new counsel replaced McMahon.

McMahon continued for years to oppose the plaintiffs' efforts to acquire discovery from the defendant. *See* Exhibit A, Transcript of March 19, 2013 Hearing, at 32-43.[2]

Similarly, while representing the Muslim World League and the International Islamic Relief Organization (MWL/IIRO), Mr. McMahon often recounted to the Court that there was no money available from the defendant to defend the litigation, inhibiting him from appearing at hearings in person or traveling overseas to meet with his clients. But when MWL/IIRO shifted its representation to new counsel, the new counsel often have multiple lawyers present at hearings and have claimed to have visited multiple offices of their clients for extended periods. *Compare* ECF# 3857-3 (MWL/IIRO characterized their efforts as "global efforts," including "dozens of overseas trips" by teams of lawyers) *with* Exhibit B, Transcript of June 23, 2011 Hearing, at 7-8 and Exhibit C, Transcript of July 13, 2011 Hearing, at 24-25. MWL/IIRO has also recently advised that multiple lawyers plan to attend another defendant's deposition in Europe on MWL/IIRO's behalf.

Sanabel al Kheer (Sanabel) is another defendant that Mr. McMahon represented for a period of time, which also faced an application by plaintiffs alleging sanctionable discovery violations. Documents that Sanabel produced in discovery revealed that, after the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) froze financial accounts of Mr. McMahon when he tried to wire Sanabel funds to IIRO (*see* Exhibit D, Sana-Bell 000446), Mr. McMahon participated in a series of transactions wherein Sanabel paid Mr. McMahon the legal fees owed by another 9/11 defendant that McMahon represented, the Muslim World League.[3] According to documents produced by

---

[2] Exhibits A through D refer to exhibits attached to the Declaration of Robert T. Haefele, accompanying this memorandum of law.

[3] Because the Treasury Department had designated other IIRO offices, OFAC froze McMahon's accounts when he tried to transfer to IIRO proceeds from the sale of Sanabel property, as repayment of a debt that Sanabel allegedly owed to IIRO. *See* Exhibit D, Sana-Bell 000660. McMahon later avoided OFAC involvement by receiving payment from Sanabel for legal fees owed by the Muslim World League, as partial repayment of Sanabel's debt to IIRO. *See* Exhibit D, Sana-Bell 000659, -446-47, -54.

Sanabel, by late 2009 Sanabel had also paid Mr. McMahon $385,635.38 on behalf of IIRO.  Exhibit D, Sana-Bell 000659.

In short, much about this MDL has proved *sui generis*, and the impulse to approach issues as though they fit a standard mold should be resisted.  Mr. McMahon recounting hearsay evidence from a third party that Jelaidan is not inclined to pay for his work going forward should not be taken as proof that he will go unremunerated.  The Court should carefully consider whether Jelaidan ever refused to pay in the past; whether any other party ever paid McMahon in the past for work for Jelaidan; whether there is any reason to believe that neither Jelaidan nor another party will pay going forward; and finally, whether there is reason to believe that the refusal to pay in the future is a manipulation tactic designed to foster withdrawal, disruption, and delay.

## II.   Mr. McMahon's Withdrawal Will Disrupt and Delay the Proceedings

Although the local civil rule and the case law setting out the considerations for withdrawal require the Court to consider whether withdrawal will disrupt or delay the proceedings, nothing in Mr. McMahon's submission addresses that essential consideration.  The failure to address this prong is especially concerning because a withdrawal now would almost certainly disrupt or delay the proceedings regarding the sanctions sought against Jelaidan and Mr. McMahon, including case dispositive sanctions against Jelaidan.  Indeed, Mr. McMahon's proposed withdrawal would leave Jelaidan unrepresented while facing dispositive sanctions and would remove Mr. McMahon from the litigation, even though he faces imposition of sanctions himself.

If, as his actions suggest, Jelaidan has no interest in defending himself here, then there is no reason to delay the inevitable.  Mr. McMahon's comments suggest that Jelaidan will no longer pay for representation, and he does not intend to appear for a deposition.  If he continues to refuse to defend himself in the MDL, the inevitable result will be entry of a default (whether for the current issue of his refusal to comply with the Court's sanctions orders, or some other reason).  There is no

6

reason to delay the inevitable by granting Mr. McMahon's motion to withdraw and waiting to see if Jelaidan retains new counsel, somehow appears pro se, or continues to refuse to defend himself. *See Anderson*, 2017 U.S. Dist. LEXIS 112494, *5-6 (the court denied an application to withdraw where the attorney's client indicated an intent not to participate in the proceedings). In *Anderson*, the court denied the withdrawal application, commenting that the party's counsel was in a better position than the court to take steps to communicate with the client to ensure that the party understood the consequences of not defending. The *Anderson* court observed that, if it were to grant the withdrawal, the court would be left to communicate with the party, using the more limited options at its disposal. *Id.* at 6. Here, notwithstanding his comments about his difficulties communicating with Jelaidan, Mr. McMahon is much better positioned to communicate with Jelaidan than the Court is.

In lieu of denying Mr. McMahon's withdrawal outright, the Court may consider conditioning his withdrawal on representation of Mr. Jelaidan at least through the resolution of the sanctions issues, including through entry of judgment, if that is a sanction the Court determines to be appropriate. *See Mario Valente Collezioni, Ltd. v. Semeraro*, Dkt. No. 02 Civ. 196 (SHS), 2004 U.S. Dist. LEXIS 8274, *3 (S.D.N.Y. May 10, 2004); *see also Oscar de la Renta, Ltd. v. Strelitz, Ltd.*, Dkt. No. 92 Civ. 3907, 1993 U.S. Dist. LEXIS 7572, at *1 (S.D.N.Y. June 7, 1993) ("[A] court may establish conditions before permitting withdrawal.").

### III.   Consideration of the Posture of the Case also Includes Other Facts that Weigh Against Permitting Mr. McMahon to Withdraw Now

Because Local Civil Rule 1.4 requires consideration of "the posture of the case," the Court should also consider other aspects of the applications concerning Jelaidan and Mr. McMahon that remain pending before the Court. Specifically, aspects of Mr. McMahon's submission raise a number of questions relevant to the plaintiffs' application for contempt regarding Mr. McMahon's own conduct, including for example, the degree to which Mr. McMahon knew that Jelaidan had ceased participating and refused to pay sanctions but McMahon continued to waste the plaintiffs'

and the Court's resources in defending with futility. For example, when Mr. McMahon learned that OFAC had issued a license, he responded promptly to advise plaintiffs that Jelaidan would oppose any effort to collect the "judgment". *See* ECF 3915-8 at 5, Email dated February 8, 2018 from Mr. McMahon to Robert Haefele. But Mr. McMahon's response and the timing of it suggests only three possibilities, none of which are helpful to Mr. McMahon's situation. Either (1) Mr. McMahon knew all along that Jelaidan would not pay, or (2) Jelaidan was immediately responsive (which belies Mr. McMahon's contention that Jelaidan has been slow to respond or unresponsive), or (3) Mr. McMahon made the representations to the Court and plaintiffs without any basis.

In short, the posture of the proceedings concerning Jelaidan and his counsel, Mr. McMahon, are best addressed if Mr. McMahon is called to address a variety of apparent holes or discrepancies in the record. Plaintiffs propose the following issues as areas to be addressed to Mr. McMahon, for him to respond with specificity:

1. Who has paid for Jelaidan's defense? Specifically, has anyone else paid any fees or expenses for Mr. Jelaidan other than Mr. Jelaidan personally?

2. Has Jelaidan ever previously stopped paying legal fees owed? If so, when and for how long?

3. Has Mr. McMahon ever had direct communication with Jelaidan? When?

4. When was the last direct communication between Mr. McMahon and Jelaidan?

5. When did Mr. McMahon become aware that Jelaidan would not pay the sanctions imposed on him by the Court or that Mr. Jelaidan's alleged financial circumstance might present an impediment to him doing so? How did he become aware of the relevant facts – through intermediaries, from Mr. Jelaidan himself, or some other source?

6. Is Mr. McMahon aware that Jelaidan is not inclined to participate personally in discovery? If so, when did he become aware of that fact?

## Conclusion

For the reasons expressed herein, the Plaintiffs' Executive Committees, for all plaintiffs, oppose the application of Martin McMahon, wherein Mr. McMahon requests permission to withdraw from representing defendant Wa'el Jelaidan. The PECs ask that the Court deny the application without prejudice, or at the very least that the Court impose appropriate conditions that must be met

before withdrawal is authorized.  Specifically, plaintiffs ask that no withdrawal be authorized until after additional sanctions against Mr. Jelaidan have been assessed, adjudged, and imposed by the Court.

Dated:  May 11, 2018                    Respectfully Submitted,

/s/ Robert T. Haefele
Jodi W. Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC  29465
(843) 216-9000

Sean P. Carter, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA  19103
(215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue
New York, NY  10017
(212) 687-8181

Jerry S. Goldman, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

*For the Plaintiffs' Executive Committees*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the Plaintiffs' Executive Committees' Opposition To the Motion of Martin McMahon to Withdraw as Counsel for Defendant Wa'el Jelaidan, was filed electronically this 11th day of May, 2018.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

_/s/_____

Robert T. Haefele, Esq.