# EXHIBIT A

Case 1:03-md-01570-GBD-SN Document 4070-1 Filed 04/05/18 Page 2 of 14
Case 1:03-md-01570-GBD-FM Document 4370 Filed 04/13/18 Page 2 of 56  1
D3JP911C

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  IN RE:

 4
          TERRORIST ATTACKS ON
 5        SEPTEMBER 11, 2001              03 MDL 1570 (GBD)(FM)

 6
    ------------------------------x
 7                                        New York, N.Y.
                                          March 19, 2013
 8                                        11:51 a.m.
    Before:
 9
                         HON. FRANK MAAS,
10                                    Magistrate Judge

11                       APPEARANCES

12  COZEN O'CONNOR
         Attorneys for Plaintiff Federal Insurance
13  BY:  SEAN P. CARTER, ESQ.
         J. SCOTT TARBUTTON, ESQ.
14
    ANDERSON, KILL & OLICK, PC
15       Attorneys for Plaintiffs O'Neill and Plaintiffs' Executive
    Committee
16  BY:  JERRY S. GOLDMAN, ESQ.

17  MOTLEY RICE LLC
         Attorneys for Plaintiffs Burnett and Euro Broker
18  BY:  ROBERT T. HAEFELE, ESQ.
         BRIAN T. FRUTIG, ESQ.
19
    SPEISER, KRAUSE, NOLAN & GRANITO
20       Attorneys for Plaintiffs Ashton, et al.
    BY:  KENNETH P. NOLAN, ESQ.
21
    KREINDLER & KREINDLER, LLP
22       Attorneys for Plaintiffs Ashton
    BY:  ANDREW J. MALONEY, ESQ.
23
    BERNABEI & WACHTEL, PLLC
24       Attorneys for Defendants Al Haramain Islamic Foundation
    BY:  ALAN R. KABAT, ESQ.
25
```

1     judgment against Rabita.
2              THE COURT:  Thank you.
3              MR. CARTER:  Thank you.
4              THE COURT:  Mr. McMahon?
5              MR. McMAHON:  Thank you, your Honor.  I think it would
6     be appropriate if we do separate out Rabita Trust and Wa'el
7     Jelaidan.  Excuse me, your Honor.
8              THE COURT:  Before we separate them out, as to both of
9     them back, in November of 2011 I directed that efforts be made
10    to locate and produce documents.  And when I read your
11    materials, it looks like, basically, nothing happened for two
12    years, and then in February of this year there was an effort to
13    sort of paper that over by having you send letters to some
14    financial institutions.
15             It struck me that if I had retained you to produce
16    documents for me in a litigation where I was the defendant,
17    rather than me going to the bank, where I had a relationship
18    and seeking the documents, if you sent letters akin to the
19    letters that were sent to these foreign banks, even domestic
20    banks would not have produced documents.
21             So it doesn't strike me as anything approaching an
22    adequate effort to seek those documents from those financial
23    institutions.
24             MR. McMAHON:  Your Honor, the reason I'm making the
25    suggestion that we keep them individually looked at is, the

1    status of the Rabita Trust situation, your Honor, is that they
2    are then jurisdictional discovery.  We filed a motion to
3    dismiss.  The judge did not grant it, but he did grant their
4    application for some limited discovery, jurisdictional
5    discovery.
6              So I don't know, your Honor, whether or not you
7    currently have jurisdiction over Rabita Trust because nothing
8    has been decided with respect to that outstanding motion.  And
9    the reason I say that is this --
10             THE COURT:  Well, you haven't filed any motion seeking
11   to narrow the discovery, correct?
12             MR. McMAHON:  No, your Honor, because it was limited,
13   I thought, jurisdictional discovery.  But my point, your
14   Honor --
15             THE COURT:  Let's stick with some narrow questions as
16   to the trust.
17             MR. McMAHON:  Well, I'd like to, your Honor.
18             THE COURT:  Who's running it today?
19             MR. McMAHON:  Well, here is my problem which I was
20   going to convey to you.  I'm not an expert in Pakistani law,
21   nor are these colleagues.  Who can determine, for example, when
22   somebody can direct litigation pursuant to Pakistani law?  That
23   is the Pakistani law governs the attorney-client relationship
24   here.  Who can make a determination as to how you direct
25   somebody in litigation?

|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   | Now, I took a position with Mr. Carter, Sean, that           |
| 2   | many years ago I was mandated to try to dismiss out Rabita   |
| 3   | Trust.  Now --                                               |
| 4   | THE COURT:  Okay.  And when you say were mandated, who       |
| 5   | retained you for that purpose?                               |
| 6   | MR. McMAHON:  Mr. Wa'el Jelaidan, and I have not yet,        |
| 7   | your Honor, been relieved of that directive.                 |
| 8   | THE COURT:  And when was that?                               |
| 9   | MR. McMAHON:  Well, that was approximately eight, nine       |
| 10  | years ago.                                                   |
| 11  | THE COURT:  Okay.                                            |
| 12  | MR. McMAHON:  No one knows, under Pakistani law, can         |
| 13  | you fire an attorney.  As far as I'm concerned, I'm still the|
| 14  | attorney because, to the extent Mr. Carter has articulated this |
| 15  | view, that at least the Pakistani government is in part      |
| 16  | controlling the show, if you will.  The Pakistani government |
| 17  | has not indicated to me that I can no longer represent them. |
| 18  | In fact, when I was at the Pakistani -- not embassy,         |
| 19  | I'm sorry -- attache in Washington, D.C., it was made clear  |
| 20  | they were very happy that somebody is trying to do something |
| 21  | here.  But my point is that under Pakistani law, can he tell |
| 22  | me, for example, when you can revoke a directive?            |
| 23  | THE COURT:  Well, I'm not sure that Pakistani law much       |
| 24  | matters.  We're not in a Pakistani court.                    |
| 25  | MR. McMAHON:  But there's an attorney-client                 |

1  relationship, your Honor, that was started under Pakistani law
2  with respect to representing this Trust, and I can't just walk
3  away from a client.  And he talks about the fact that Wa'el
4  Jelaidan has been in charge of this organization, or that it's
5  dormant.  The situation your Honor --
6          THE COURT:  But wait, wait.  Part of representing a
7  client or part of participating in an action in the United
8  States is to play an active role in the case, and I gather your
9  position is, correct me if I'm wrong, but Mr. Jelaidan has not,
10 for a number of years, had any role in the trust; is that
11 correct?
12         MR. McMAHON:  Well, your Honor, here's the facts.  He
13 submitted a letter of resignation about, I don't know, four
14 years ago or so.  Nothing was ever done with that letter, to
15 the best of my knowledge.  I communicated with Mr. Wa'el
16 Jelaidan's attorney about that particular issue.  In other
17 words, under Pakistani law, or under any law, was that letter
18 of resignation accepted, in other words, he's no longer
19 secretary general.  Well, as far as I know --
20         THE COURT:  Well, forget whether it was accepted or
21 not.  He, to your understanding, is not acting as secretary
22 general on a day-to-day basis, correct?
23         MR. McMAHON:  Up to a certain number of years ago,
24 that's correct, your Honor.
25         THE COURT:  Well, you say up to.  He didn't resume

1   that role.  As of several years ago, he's no longer acting as
2   secretary general?  Whether he should be or not is a different
3   question, but --
4           MR. McMAHON:  The problem is, your Honor, is nobody is
5   acting.  Musharraf was on this board of directors when we
6   learned --
7           THE COURT:  So wait, wait, wait.  The answer to my
8   question is, Mr. Jelaidan is not acting as the secretary
9   general and hasn't been for at least several years, correct?
10          MR. McMAHON:  That's correct, your Honor.
11          THE COURT:  Okay.  So then we get to the question of
12  who is acting on behalf of the trust today; do you know?
13          MR. McMAHON:  I'm sorry, your Honor?
14          THE COURT:  Who is acting today on behalf of the trust
15  in terms of such issues as producing documents and directing
16  what you should or shouldn't do?
17          MR. McMAHON:  Well, your Honor, the communication that
18  I had solely, and I still have, is with Wa'el Jelaidan and with
19  his counsel in Saudi Arabia, in Jeddah, and those were the
20  folks that originally had, I think, some documents and some
21  communications about the Rabita Trust, and I continue to deal
22  with them, but --
23          THE COURT:  But we just established that Mr. Jelaidan
24  is not actually operating as the second general of the trust.
25  So I understand he has some lingering interest in seeing that

1    it's adequately represented, but in point of fact, he doesn't

2    speak for the trust today, correct?

3             MR. McMAHON:  That's correct, Judge.  And the problem

4    is that there is no trust.  There is no activity.  It's been

5    dormant since 1994.  It was set up specifically -- and if they

6    would consult their usual research sources, the media, they

7    would find out that that entity was set up specifically to

8    bring back Pakistanis from Bangladesh.  It has nothing to do

9    with directing activities toward Americans, consistent with the

10   Second Circuit, your Honor.  My point is the Second Circuit

11   hasn't yet to rule on this issue.

12            THE COURT:  Well, one thing both sides keep talking

13   about in their papers, which strikes me as almost entirely, if

14   not entirely, irrelevant in this case is the merits.  So

15   whether Mr. Jelaidan is, you know, somebody running a harmless

16   charitable organization, or one of the world's leading

17   terrorists, is largely irrelevant to the issues before me.

18            What I'm left with is a defendant who, at some point,

19   may have retained you, but who, it appears, has abandoned this

20   lawsuit in terms of defending it because there is no nobody who

21   can direct your actions with respect to the trust today who

22   you've been able to identify.

23            MR. McMAHON:  That is correct, your Honor.  To the

24   extent the Pakistani government and the Muslim World League

25   direct the activities -- or could direct the activities and are

1  empowered to do so, those are the two entities that could call
2  the shots about whether or not, I guess, I would continue as
3  counsel, now, among other issues.
4        But I'm telling you, your Honor, there's nothing going
5  on with that entity. I don't know what you do. Musharraf
6  resigned. Everybody that was on the board of directors was
7  with the Pakistani government. The Pakistani government takes
8  the position that, indeed, if you want documents, Mr. McMahon,
9  we can't help you. They're in storage someplace. My question
10 is, why can't the 9-11 attorneys pursue our allies Saudi
11 Arabia, our ally Pakistan.
12       THE COURT: Wait. The documents, and that seems to be
13 reflected in the papers, are in storage someplace. Has --
14       MR. McMAHON: What happened was --
15       THE COURT: Wait, wait.
16       MR. McMAHON: -- the Pakistani government officials
17 locked up those premises. Someone took the files, we don't
18 know who. They believe they ended up in some Pakistani
19 ministry. That's the bottom line, your Honor.
20       THE COURT: And what efforts have you or Mr. Jelaidan
21 or Mr. Jelaidan's Saudi counsel undertaken to find out where --
22       MR. McMAHON: I've sent letters to the last-known
23 address of the custodian for the records for that entity.
24       THE COURT: In English, I presume?
25       MR. McMAHON: Yes, your Honor. Well, in Pakistan, a

1   lot of --
2           THE COURT: Let me rephrase the question. What
3   efforts have Mr. Jelaidan or his Saudi counsel undertaken to
4   determine where those documents are?
5           MR. McMAHON: Well, I think, your Honor, at my behest,
6   they have done everything they possibly --
7           THE COURT: Well, you say "I think."
8           MR. McMAHON: Well, I know they have, your Honor, but
9   it's been a futile gesture in terms of the Pakistani government
10  takes the position those records are in storage someplace.
11          THE COURT: You told me it was a futile gesture.
12  That's not telling me what exactly they did.
13          MR. McMAHON: Well, I'd have to go back and chronicle
14  it specifically, your Honor. To be candid with you, I just
15  know that efforts were made to try to get whatever documents
16  the Pakistani government had, and I said at some stage, listen,
17  I'll take this over and I'll do it because I want to find out
18  what the story is. I'll go to the embassy, and we'll find out
19  where these records are, and we'll see what we can do.
20          I've been staying in the case on this issue, I think
21  as a courtesy to my brethren. I don't need this. Those
22  documents are somewhere in the Pakistani government. No one's
23  trying to hide them. We have agreed, your Honor, to an
24  in-camera inspection. If somebody thinks that we're trying to
25  hide the ball with respect to the Rabita Trust or even Wa'el

1    Jelaidan, but I've done what I can --
2             THE COURT: I appreciate that, but it sounds like
3    Mr. Jelaidan has instructed you to do what you can, not only
4    for himself but for the trust, and that you've made some
5    efforts in that direction. But that, in point of fact,
6    particularly if the trust, in Mr. Jelaidan's view, doesn't
7    exist anymore, there's no entity to participate in this
8    litigation and nobody who can speak for the trust in terms of
9    seeking documents, who you represent; and that, therefore, at
10   least as to the trust, a default judgment should be entered.
11   Am I missing something?
12            MR. McMAHON: Well, your Honor, I don't know what a
13   default judgment, first of all, is going to accomplish.
14            THE COURT: Probably nothing, but rather than playing
15   sort of a shell game here in terms of saying I represent an
16   entity that I haven't been in contact with -- I appreciate
17   you're trying to do what you can, but I think it just muddies
18   the waters.
19            In point of fact, you're purporting to represent a
20   defunct organization, where the organization, as opposed to you
21   or Mr. Jelaidan, who has no continuing role he says in the
22   organization, have tried to do some things to try and help.
23   But the organization itself, either through the Pakistani
24   government or through Muslim World League, has taken no steps
25   to determine where the documents are, much less produce them.

1		MR. McMAHON:  I don't know what else it can do.  If
2	the Pakistani government takes the position it does, what do
3	you do, your Honor?
4		THE COURT:  It may be that there's nothing to do, but
5	I think the inexorable result of that conclusion that flows
6	from that is that a default is appropriate.  You know, I'm
7	willing to be convinced otherwise, but I haven't heard anything
8	yet that tells me, as to the trust, that that's not the result
9	that should obtain.
10		MR. McMAHON:  You don't think that the 9-11 lawyers
11	should make an attempt to contact the Pakistani government and
12	see what they can get through their subpoena power that I can't
13	get?
14		THE COURT:  Sure.  I think they should do that if
15	they're interested in getting the universe of documents, but
16	that begs the question of whether a defendant, who nominally is
17	in this case, is participating in the case and going to produce
18	documents.  There's nobody here who --
19		MR. McMAHON:  We've produced everything we have, your
20	Honor.
21		THE COURT:  No, you've produced everything
22	Mr. Jelaidan has.  You haven't produced everything that the
23	trust potentially could get because you've just told me, in
24	several different ways, that the trust or the people who
25	potentially might speak for the trust, haven't done anything as

1    opposed to you or Mr. Jelaidan around the edges trying to do
2    some things.
3             MR. McMAHON:  Well, your Honor, the trust has been
4    dormant since 1994; that's 13 years ago.
5             THE COURT:  So why are you fighting me on the notion
6    of a default being entered against the trust?  Correct me if
7    I'm wrong, I presume the trust hasn't been paying you legal
8    fees --
9             MR. McMAHON:  That's correct, your Honor.
10            THE COURT:  -- for a number of years.
11            MR. McMAHON:  That's correct, your Honor.
12            THE COURT:  So I'm not quite sure why we're having
13   this -- I was going to say argument; I'm not sure it rises to
14   the level of an argument, but why we're having a dispute here
15   when --
16            MR. McMAHON:  Well, to the extent the trust cannot
17   access any more documents that it already has, or Wa'el
18   Jelaidan can't produce any more documents than he already has,
19   or Wa'el Jelaidan's attorney can't produce any more documents
20   than he already has, what are they supposed to do?
21            THE COURT:  Well, you said that we're in
22   jurisdictional discovery as to the trust; so if I wanted to
23   hold a hearing, say, tomorrow on the issue of whether there's
24   jurisdiction to proceed against the trust, what are you in a
25   position to put on at that hearing?

|     |                                                                 |
| --- | --------------------------------------------------------------- |
| 1   | MR. McMAHON:  That we've complied in a reasonable               |
| 2   | fashion with everything that the plaintiffs have served us with |
| 3   | in terms of jurisdictional discovery.                           |
| 4   | THE COURT:  But that speaks to discovery.  As to the            |
| 5   | issue of jurisdiction, it sounds like you'd have no witnesses,  |
| 6   | and except for 22 pieces of paper, you'd have no documents,     |
| 7   | correct?                                                        |
| 8   | MR. McMAHON:  Well, there's a complete history of what          |
| 9   | this organization is all about, your Honor.  It was set up by   |
| 10  | the Pakistani government in 1992.  '94 they stopped funding it  |
| 11  | because of politics.  They bring back Pakistanis from           |
| 12  | Bangladesh.  What in God's name does that have to do with       |
| 13  | attacking or purposeful activity towards America?  I'm just     |
| 14  | astounded by the fact that it's still in this case.             |
| 15  | THE COURT:  Well, I've indicated what I'm likely to do          |
| 16  | with respect to the trust.  Let's talk about Mr. Jelaidan       |
| 17  | himself.  One thing that appears, although I haven't seen what  |
| 18  | you've offered to produce in-camera, but just taking what is    |
| 19  | part of the record on this motion, it looks like Mr. Jelaidan   |
| 20  | did nothing between November 16th of 2011 and February 21st of  |
| 21  | 2013, more than two years.                                      |
| 22  | MR. McMAHON:  That may be a result, your Honor, of              |
| 23  | some --                                                         |
| 24  | THE COURT:  Start again.                                        |
| 25  | MR. McMAHON:  I'm sorry.  It may be the result of some          |