# EXHIBIT D

# EXHIBIT D

and owes money to IIROSA, an entity having had two offices designated by OFAC as supporting international terrorism. We have concerns that potential charitable donees will continue to rebuff Sanabel's efforts to donate money in the future out of fear that the United States government will investigate them for possible 501(c)(3) violations if they accept money from Sanabel.

We also wish to take this opportunity to explain the significant legal fees expended this past year on behalf of Sanabel. Sanabel has had a lot of 501(c)(3) legal issues to deal with in the past year, including meetings with the IRS regarding the preservation of Sanabel's 501(c)(3) status. We directed our attorneys to had to prepare an extensive questionnaire for donees to complete in order to ensure that we only donate money to legitimate charities. The United States government has placed Muslim charities, like Sanabel, under a microscope, examining every charitable transaction. If Sanabel donates money to an entity, which is later found to have ties to terrorism, then Sanabel can be held criminally liable and/or be sued, like in the 9/11 Litigation. It is imperative that Sanabel exhaustively investigate each donee to ensure the absence of ties to terrorism. Recent case law makes it very risky for charities to donate to entities without having first done their homework.

Other legal issues facing Sanabel this past year include the continued defense of the 9/11 Litigation. Both Sana-Bell, Inc. and Sanabel Al Kheer, Inc. are named defendants in the 9/11 Litigation. We see no end in sight to the 9/11 Litigation and will likely continue to expend significant funds in defense of the 9/11 Litigation.

Sanabel also ran into a problem when Mr. McMahon tried to wire funds to IIROSA to pay off Sanabel's debt. Due to OFAC actions, Mr. McMahon's account was frozen and we had to work with OFAC and the bank to unfreeze Mr. McMahon's account. We are still working with OFAC to obtain authorization to repay IIROSA's debt.

SANA-BELL 000446

Likewise, Sanabel was forced to expend significant funds to successfully close on selling real estate that Sanabel owned in Northern Virginia. Sanabel faced significant closing issues because of alleged terrorism ties and fears on the part of the buyer that OFAC or some other government action would stymie the sale of the property.

One of Sanabel's major legal successes involved a criminal contempt hearing against Sanabel. Sanabel's Board of Directors authorized the payment of $75,000 in legal fees to Mr. McMahon's firm to fight the criminal contempt ruling. Mr. McMahon's firm fought the criminal contempt matter for nine months and saved Sanabel at least $31,000 in potential penalties, not to mention avoiding a criminal indictment.

In closing, the Board of Directors wishes to outline the donees they wish to target in the future. The Board of Directors has completed detailed research on potential donees, reviewing such sources as the American Institute of Philanthropy's A-Z Listings and a Washingtonian Magazine article on how to make the most out of your charitable donations in the local community. As result of this research, the Board of Directors would like donate money to the following entities: 1) JoinPlainUSA.org, a charity sponsoring poor children across the United States; 2) The Clara Mohammed Middle School in the District of Columbia; 3) The Capital Area Food Bank; 4) The Metro Teen AIDS Support Group; 5) Bright Beginnings; 6) Child and Family Network Centers; 7) Redwiggler Community Farm; 8) Spread Learning Center; 9) Doorways for Women and Families; and 10) Arlington FREE clinic.

Prepared and Reported by, *[signature]*
Mr. El-Hillali

SANA-BELL 000447

property without pulling permits. Counsel recommends that Sanabel makes sure that permits issue is resolved prior to buying the building.

The Board voted to approve the payment of $60,000 of its funds to Martin McMahon & Associates for legal fees related to MWL. IIROSA will treat the payment of MWL's legal fees as partial debt repayment of the loan owed by Sanabel to IIROSA. The Board will determine the amount of the remaining IIROSA debt before the next board meeting and notify IIROSA of the remaining debt owed to it.

Mr. Hillali will finish completing the Virginia fundraising application before the next meeting and bring the completed form, along with a registration check.

Mr. Hussien reported on his research into creating a website for Sanabel. The name Sanabel has already been taken as a domain name. Mr Hussien will research the availability of the domain name www.sanabelalkheer.org before the next board meeting. The initial cost of the website appears to be at least $600, depending on how many pages are part of the webpage. Monthly fees will be $130 per month. The Board voted to approve moving forward with purchasing and setting up a webpage. Mr. Hussien will bring a proposed contract from the webmaster to the next board meeting.

The Board is still waiting for a bill from Hassan's Accounting for $12,700. However, the Board approved payment of the bill, pending receipt of the bill.

The next meeting will be Sanabel's Annual Meeting.

SANA-BELL 000454

November 24, 2009

IIROSA
P.O. Box 14843
Jeddah
Saudi Arabia

Dear Mr. Sameer Al-Raddi,

We hope this letter finds you well.

We would like to bring to your attention Sanabel Al Kheer, Inc.'s activities in 2008 and 2009 as of October 31, 2009. After the sale of the property in Falls Church, outstanding balances from various contractors, salaries, payroll taxes and loans were paid as well as reimbursements were made. With the funds received from the sale, Sanabel is able to make charitable contributions in 2008 and 2009.

Sanabel Al Kheer, Inc.'s total charitable contribution for 2008 is $17,400.00 and for 2009, as of October 31, 2009 is $71,000.00. We hope to assist several more organizations particularly those focused on providing for the needs of unfortunate women and children.

Attached are Sanabel's 2008 financial statements and 2009 interim draft financial statements and general ledger ending October 31, 2009. Also attached are supporting documents for office operating and management expense reimbursements and legal fees from Martin F. McMahon and Associates.

The legal fees paid to McMahon and Associates for 2008 is $135,840.22 plus $75,000.00 for contract to represent Sanabel in 2007 and for 2009, as of October 31, 2009 is $200, 259.89. **The total amount disbursed to McMahon and Associates is $411,100.11. This amount do not include the money they received at the closing as Sanabel's settlement agent. In addition, a total of $385,635.38 for IIROSA's fees and expenses were paid to McMahon and Associates.**

**Please also note that on November 6, 2009, $62,748.20 was issued to McMahon and Associates for Muslim World League legal fees and NYC coop fees from July 2009 to October 2009.**

According to Sanabel's records, a total of $385,635.38 was paid to McMahon and Associates on behalf of IIROSA. Therefore, **Sanabel has a loan balance of $399,364.62**. A board decision was made in July 2009, immediately after an approval was received from OFAC to pay the outstanding balance. Please know that for several months, McMahon and Associates has delayed the process in sending IIROSA Sanabel's dept payment. The board has decided to act without the assistance of McMahon and Associates.

**Please provide IIROSA's bank name, address, account number, and routing number so that we may wire the loan balance**. It is Sanabel's intention to pay off all debts - your response in providing the above information will be greatly appreciated.

Sincerely,


Sanabel Al Kheer, Inc. Board Members

SANA-BELL 000659



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

**CASE No. SDGT-1051**

Martin F. McMahon, Esq.
Martin F. McMahon & Associates
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036

Dear Mr. McMahon:

This responds to your August 22, 2008 letter to the Office of Foreign Assets Control ("OFAC"), on behalf of the International Islamic Relief Organization of Saudi Arabia ("IIRO-SA"), requesting OFAC's assistance in avoiding the blocking of a $785,000 wire funds transfer related to the February 21, 2008 sale of Virginia property to be sent by your client, Sanabel Al Kheer ("Sanabel"), to IIRO-SA.

As you know, on August 3, 2006, both the Indonesia and Philippines branches of the International Islamic Relief Organization were designated as Specially Designated Global Terrorists pursuant to section 594.201 of the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594, for facilitating fundraising for al Qaida and affiliated terrorist groups.

Although the International Islamic Relief Organization, as a whole, and its headquarters in Saudi Arabia were not designated at that time, funds transfers involving IIRO-SA might be questioned or blocked by financial institutions due to the similarity between IIRO-SA's name and the names of the designated entities. OFAC often receives calls from banks before blocking a transfer if the name of a designee or a name similar to a designee is indicated in the transfer instructions. Sanabel may wish to indicate, when it initiates the funds transfer, that IIRO-SA is neither the Indonesian nor the Philippines branch office of the International Islamic Relief Organization, and make IIRO-SA's address and verifying information available.

Although no license is needed at this time in order for IIRO-SA to send or receive wire funds transfers, please note that as of April 2, 2009, the webpage for IIRO-SA lists the designated Indonesia branch of IIRO as one of its international offices. See <http://www.iirosa.org/en/international_office.php>. Please be advised that neither you nor Sanabel may send or receive payments, directly or indirectly, to or from any entity or individual whose property or interests in property are blocked, including any entity or individual named or designated as an SDGT pursuant to Executive Order 13224 or the Global Terrorism Regulations, 31 C.F.R. Part 594.

Sincerely,

*[signature]*    4/29/09

Jodi L. Kouts                Date
Assistant Director for Licensing
Office of Foreign Assets Control

SANA-BELL 000660