THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TERRORIST ATTACKS ON ) | Civil Action No. 03 MDL 1570 (GBD)(SN) |
| SEPTEMBER 11, 2001 ) | ECF Case |
| ) | |

### REPLY IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL

Martin McMahon, Esq., submits this reply in support of his motion to withdraw as counsel for defendant Wael Jelaidan. ECF Nos. 3990-92. Mr. McMahon showed that withdrawal is warranted under Local Civil Rule 1.4. The reason—he is no longer being paid by or able to communicate with his client or his local counsel. And he is also in a conflicting position with his client due to the Plaintiffs' Executive Committees' ("PEC") requesting that sanctions against his client be jointly and severally assessed against him personally. *See* ECF No. 3988.

**I.   Mr. McMahon has Established Sufficient Reasons for Withdrawal**

The PEC's opposition to the motion to withdraw sidesteps or ignores caselaw cited in the motion supporting withdrawal. The PEC's May 11, 2018 opposition entirely ignores Mr. McMahon's May 9, 2018 opposition to their sanctions request, ECF No. 3997, in which Mr. McMahon attaches and relies on an analysis by independent counsel concluding that he was obliged to withdraw from this case. The PEC's opposition offers no response, nor even a mention, of any of the points raised by independent counsel. ECF No. 3997-1.

Independent counsel stated:

> We advised Mr. McMahon that he was obliged to move to withdraw as Mr. Jelaidan's counsel in this case because of several reasons. The PEC's counsel appeared to be attempting to put Mr. McMahon into direct conflict with his client. The PEC confirmed that position when, in its letter of May 1, 2018 (ECF No. 3988) they argued that the sanctions, legal fees to three law firms, imposed four and a half years ago on Mr. Jelaidan, should now be made joint and several as between Mr. Jelaidan and Mr. McMahon. We further advised Mr. McMahon that

1

> his recent fee payment and communications difficulties with Mr. Jelaidan also warrant his removal as counsel. Mr. McMahon followed our advice and filed a Motion to Withdraw on May 1, 2018 (ECF No. 3990-92), explaining the reasons warranting his withdrawal.

ECF No. 3997-1 at 1.

The PEC asserts that Mr. McMahon failed to address "whether his withdrawal will disrupt or delay the case proceedings." Opp. at 2. To the contrary, Mr. McMahon stated that "[h]e has done everything possible to comply with all Court orders, including securing a license from OFAC. He also has not done and will not do anything to delay Plaintiffs' counsel from getting paid pursuant to Judge Maas' 2013 Sanctions Order (ECF No. 2789), nor has he done nor will he do anything to interfere with Plaintiffs' counsel's ability to secure monetary satisfaction of the Sanctions Order." Mot. at 2. Moreover, the case the PEC relies on, *Anderson v. River Greene Constr. Grp., LLC*, No. 16-3684 (JMF), 2017 U.S. Dist. LEXIS 112494, *3 (S.D.N.Y. July 19, 2017), cautioned against withdrawal on the eve of trial. *Id.* The PEC does not, and cannot, make any such assertion against Mr. McMahon because this case is not near that stage of proceedings. Based on his 14 years of experience with this case, Mr. McMahon estimates that trial is at least 4 to 5 years from now.

## II. The PEC Improperly Relies on its Own Sanctions Request as Grounds to Deny Withdrawal

The PEC opposes the motion to withdraw by arguing that Mr. McMahon's withdrawal "will disrupt or delay the contempt and sanctions enforcement proceedings pending for the Court's consideration." Opp. at 2, 6-7. The PEC postures its opposition as if the PEC is a mere third-party observer to the sanctions request instead of the actual party pursuing sanctions against Mr. McMahon as a proxy for Mr. Jelaidan.

2

956563v.1

Through its opposition, the PEC is asking to have Mr. McMahon coerced to continue representing Mr. Jelaidan throughout a sanctions process that the PEC itself requested and despite the inherent conflict the PEC itself created in requesting joint and several liability among Mr. McMahon and Mr. Jelaidan. The PEC does not cite any caselaw endorsing the idea that a party seeking similar sanctions against another party's attorney, triggering clear Professional Conduct standards that warrant withdrawal due to an ethical conflict, *see* ECF Nos. 3900-92, 3997-1, can then use that sanctions request to override the Professional Conduct standards and preclude withdrawal despite the conflict. Yet the PEC asks this Court to establish such a troubling precedent, to the ultimate detriment of the legal profession and the clarity and utility of ethical conflicts standards that attorneys, at least until now, have relied on for decades. The PEC should not be permitted to use the sword of seeking sanctions against Mr. McMahon personally, and then using that same sanctions request as a shield to negate ethical withdrawal standards and deny the motion to withdraw.

### III. Non-Payment of Legal Fees Provides Grounds to Withdraw

The PEC asserts that Mr. McMahon merely asserts that at times his legal fees have not been paid and relies on an "unsupported" "self-serving second-hand statement" for the non-payment of future services. Opp. at 3. In actuality, the motion and accompanying declaration by Mr. McMahon make clear that Mr. Jelaidan is not communicating with or paying Mr. McMahon. Mot. at 1-3; Dec. at ¶¶ 3-5. The only source of potential communication with Mr. Jelaidan is through his local counsel in Saudi Arabia, and counsel informed Mr. McMahon in no uncertain terms that no future payments would be made because Mr. Jelaidan is broke. *Id.* As Mr. McMahon pointed out in the motion, "[a]lthough there is no clear standard for what may be considered a 'satisfactory reason' for allowing a withdrawal, it seems evident that the non-

payment of legal fees constitutes such a reason." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08-6469, 2011 U.S. Dist. LEXIS 16674, at *7-8 (S.D.N.Y. Feb. 17, 2011).

### IV. The Absence of Client Communications Supports Withdrawal

The PEC argues that Mr. McMahon is "unclear" regarding his allegation of a conflict with his client. Opp. at 3. In actuality, Mr. McMahon made clear that, in addition to the conflict caused by the PEC's sanctions request, the absence of communication with Mr. Jelaidan provides grounds to withdraw. Mot. at 1-2; Dec. at ¶¶3-5; *see also* New York State Bar Ass'n Comm. on Prof'l Ethics, Ethics Opinion 1144 (Jan. 29, 2018) ("If a breakdown occurs in communications between a lawyer and client such that representation cannot be carried out effectively, the lawyer may seek to withdraw from representing the client subject to any applicable rule of court.").

The PEC's decrying the fact that Mr. Jelaidan would be left unrepresented or that Mr. McMahon is best situated to communicate with him, Opp. at 3, 6-7, is not a reason to deny the motion. Mr. Jelaidan has chosen not to communicate with Mr. McMahon, and has in essence constructively discharged Mr. McMahon by failing to communicate or pay Mr. McMahon. Conversely, forcing Mr. McMahon to remain as Mr. Jelaidan's lawyer, despite the absence of communication or payment, is unfair to both Mr. McMahon and Mr. Jelaidan.

### V. The PEC's Innuendo and Personal Attacks on Mr. McMahon Provide No Grounds to Deny the Motion to Withdraw

The PEC includes in its opposition a series of innuendo and personal attacks against Mr. McMahon, such as alleging Mr. McMahon "manufactured circumstances" and withdrew from representing other defendants. Opp. at 3-6. Ironically, the PEC asks this Court to accept the PEC's speculation that Mr. McMahon will somehow be paid by someone at some point, rather than the direct evidence provided with the motion to withdraw that Mr. Jelaidan is not

4

communicating with or paying Mr. McMahon. Mot. at 1-3. Mr. McMahon has presented this Court with clear and well-established grounds to support his withdrawal.

### VI. The PEC Does not Raise "Other Facts" that Justify Denial of the Motion to Withdraw

The PEC concludes their opposition with their supposed list of "other facts" that are necessary to obtain from Mr. McMahon before granting the motion to withdraw. Opp. at 8. The PEC cites no authority that requires such additional questions to be answered by an attorney before a Court grants a motion to withdraw. Notably, in listing these "other facts questions," the PEC completely ignores the facts provided in Mr. McMahon's May 9, 2018 submission in opposition to their sanctions request. ECF No. 3997.

Regardless, and to demonstrate the invalidity of the PEC's opposition to the motion to withdraw and their request for sanctions against Mr. McMahon personally as a proxy for his client, Mr. McMahon responds to each question:

> 1. Who has paid for Jelaidan's defense? Specifically, has anyone else paid any fees or expenses for Mr. Jelaidan other than Mr. Jelaidan personally?

Response: The only payments I have ever received in connection with representing Mr. Jelaidan consisted of wire transfers from the account of the local counsel, Bassim Alim, who always stated that this wire transfer covers your professional statement that was sent prior to the wire transfer. As best as I recall from approximately 14 years ago, the original retainer was paid by Mr. Jelaidan, as his name appeared on the check. No one else has paid any of Mr. Jelaidan's legal fees.

> 2. Has Jelaidan ever previously stopped paying legal fees owed? If so, when and for how long?

Response: In 2016 and 2017, I would receive statements to the effect that they received the statement of fees but that they were not in a position to pay it for another 4 to 5 months. As best as I recall, this occurred 2 or 3 times during that time period.

> 3. Has Mr. McMahon ever had direct communication with Jelaidan? When?

Response: The last direct communication I had with him was on or about February 28, 2018, when I received a letter sent by him through his local counsel. I reported the contents of that

letter to the Court, including the fact that Mr. Jelaidan said he is broke. Prior to receipt of that letter, and up to and including the year 2015, I did not experience problems communicating with the paralegal in the office or local counsel, who would in turn communicate directly with Mr. Jelaidan regarding the issue involved. Then, I would promptly receive a response to the issue I inquired about.

> 4. When was the last direct communication between Mr. McMahon and Jelaidan?

Response: As I mentioned, on or about February 28, 2018. Despite repeated attempts to communicate with Mr. Jelaidan since then, I have not been able to communicate with him. Under the current circumstances, where there is a total lack of communication from the paralegal, local counsel, and the client himself, I do not see how I can be of any further assistance to the Plaintiffs in terms of satisfying the sanctions order, nor do I see how I can adequately represent my client if I cannot receive answers to vital questions.

> 5. When did Mr. McMahon become aware that Jelaidan would not pay the sanctions imposed on him by the Court or that Mr. Jelaidan's alleged financial circumstance might present an impediment to him doing so? How did he become aware of the relevant facts – through intermediaries, from Mr. Jelaidan himself, or some other source?

Response: I was never told by Mr. Jelaidan or his local counsel that he would not pay the attorney's fees called for in the sanctions order. It was not until the February 28th letter when I received a notification that Mr. Jelaidan was broke. I interpreted that to mean that Mr. Jelaidan was not in a position to satisfy the sanctions order. At no point during my representation of Mr. Jelaidan did he inform me that he had no intention of paying that judgment. The February 28th letter referenced above came from the legal office of local counsel, Bassim Alim.

> 6. Is Mr. McMahon aware that Jelaidan is not inclined to participate personally in discovery? If so, when did he become aware of that fact?

Response: As I have repeatedly informed PEC counsel Robert Haefele, Mr. Jelaidan had agreed to sit for a deposition. All Mr. Jelaidan needed was a "head's up" as to when that would take place. He indicated he was more than willing to do a Skype deposition. Apparently, Mr. Haefele never contacted local counsel to schedule that deposition, even though we expressly gave him authority to do so and the contact information for Mr. Jelaidan's local counsel.

With these responses now provided, this Court should have additional reasons to grant the motion to withdraw, in addition to denying the PEC's request for sanctions against Mr. McMahon personally.

6

## CONCLUSION

For the reasons set forth in his opening motion and above, Mr. McMahon respectfully request that this Court grant the motion to withdraw as counsel.

>Respectfully submitted,
>
>*/s     Martin McMahon*
>Martin F. McMahon, Esq.
>Martin F. McMahon & Associates
>1150 Connecticut Avenue, N.W., Suite 900
>Washington, D.C. 20036
>(202) 862 - 4343

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Reply in Support of Motion to Withdraw as Counsel has been made through the Court's electronic transmission facilities and emailed to all relevant parties on the 18th day of May, 2018.

>Respectfully Submitted,
>
>*/s  Martin McMahon*
>Martin F. McMahon, Esq.

956563v.1