# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Elliot R. Feldman, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

May 21, 2018

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

The Plaintiffs' Executive Committees ("PECs"), on behalf of all plaintiffs asserting claims against the Kingdom of Saudi Arabia ("The Kingdom" or "Saudi Arabia"), submit this letter in compliance with the Court's April 20, 2018 Order (ECF No. 3968) to address the current status of discovery and outline the various discovery disputes that we expect must be decided by the Court.

## I.    DISCOVERY DIRECTED TO SAUDI ARABIA

On April 26, 2018, the PECs served Plaintiffs' First Requests for Production of Documents Regarding Jurisdictional Discovery Directed to the Kingdom of Saudi Arabia ("Plaintiffs' Document Requests") and Plaintiffs' First Set of Interrogatories Regarding Jurisdictional Discovery Directed to Saudi Arabia ("Plaintiffs' Interrogatories"). As set forth in the introductions of Plaintiffs' Document Requests and Interrogatories, the discovery directed to Saudi Arabia seeks documents and evidence relevant to the following nine areas of inquiry for which discovery of the Kingdom was authorized pursuant to the Court's March 28, 2018 Memorandum Decision and Order ("Decision")[1]:

    1.    The Complete Nature and Scope of Fahad al Thumairy's Roles, Functions, and Assignments for the Kingdom of Saudi Arabia in the United States;

    2.    The Complete Nature and Scope of Omar al Bayoumi's Roles, Functions, and Assignments for the Kingdom of Saudi Arabia in the United States;

---

[1] The PECs included in their discovery requests citations to relevant aspects of the Decision for each of the identified areas of inquiry, which are incorporated herein by reference.

The Honorable Sarah Netburn
May 21, 2018
Page 2

    3.      The Identity and Involvement of "more senior Saudi officials" With Authority Over Thumairy and/or Bayoumi in the Support Network for the 9/11 Hijackers;

    4.      The Identity and Involvement of Subagents Enlisted by Thumairy, Bayoumi, and Their Superiors to Support the Hijackers;

    5.      The Acts Undertaken by Persons Associated With the Support Network to Arrange and Provide Support for the Hijackers;

    6.      The Relationships Among the Persons Involved in Orchestrating the Support Network or in Providing Support to the Hijackers;

    7.      The Terrorist Connections of the Persons Involved in Orchestrating the Support Network or in Providing Support to the Hijackers;

    8.      The Travel and Activities of the Hijackers in the United States and Their Contacts and Connections With Persons Involved in Orchestrating the Support Network or in Providing Support to the Hijackers; and

    9.      Government Investigations and Findings.

*See* Plaintiffs' Interrogatories at pp. 2-4; Plaintiffs' Document Requests at pp. 2-4.

The Kingdom served its "Objections" to Plaintiffs' Interrogatories and "Responses and Objections" to Plaintiffs' Document Requests on May 10, 2018. The parties thereafter met and conferred by telephone on May 17, 2018. As of the writing of this letter, the Kingdom has not produced any documents or provided a substantive response to any of Plaintiffs' Interrogatories.

As discussed below, the Kingdom's discovery responses present a complex, technical, and layered matrix of objections and counterproposals. While it would be impossible to address every issue raised by the Kingdom's objections and responses in the context of this ten page letter, the PECs have endeavored below to overview the principal areas of dispute, and look forward to discussing their proposals for presenting the disputes to the Court for resolution in the most efficient manner at the conference on May 24, 2018.

    **A.**      <u>**Issues Relating to the Kingdom's Overall Approach to Discovery**</u>

The record establishes that after the 9/11 attacks the Kingdom collected the available documents and evidence on the relevant issues, including the roles, duties, and functions of Omar al Bayoumi and Fahad al Thumairy on behalf of the Kingdom while in the United States; their interactions with one another, the 9/11 hijackers, their subagents, and other relevant witnesses; and the potential involvement of other Saudi officials in providing support to the hijackers.

The PECs believe the most efficient approach to discovery of the Kingdom is to take advantage of the work that has already been done by having the Kingdom produce in the first instance the relevant and responsive records and information it already assembled or identified during its prior collection and investigative efforts, and by having Saudi Arabia fully respond at the

The Honorable Sarah Netburn
May 21, 2018
Page 3

outset of discovery to Plaintiffs' Interrogatories based on information and insights gleaned through the inquiries and internal investigations the Kingdom already has conducted.

Unfortunately, the Kingdom appears intent on resisting that straightforward and practical approach. Its objections and responses instead suggest an effort to design an artificial process that would improperly limit or avoid the production of relevant evidence and information. The Kingdom proposes to initiate a new search for documents and information, limited to a few select repositories and focusing (with a few exceptions) solely on documents from and information acquired during the period January 1, 1998 through September 11, 2001. The Kingdom further proposes to provide plaintiffs and the Court with documents and information secured only through that limited review, and further subject to broad and undefined privileges as discussed below.

Contrary to what the Kingdom proposes, plaintiffs are entitled to discovery of relevant documents and information in the possession of the Kingdom consistent with Fed. R. Civ. P. 26(b)(1), rather than merely the documents and information learned by its counsel based on a new inquiry, conducted years after the relevant events and transactions, and with blinders on.

### B.   Saudi Arabia's Objections Based on "privilege, protection or immunity"

In response to all of plaintiffs' requests, Saudi Arabia has invoked a broad range of potential privileges and immunities, including the attorney-client privilege, work product doctrine, protections arising under the Vienna Convention on Diplomatic Relations ("VCDR") and the Vienna Convention on Consular Relations ("VCCR"), and an undefined claim to "any privilege, protection, or immunity applicable under the law of Saudi Arabia." The actual nature and extent of the privileges being asserted with regard to each request, however, remains uncertain at this time.

Plaintiffs expect that once Saudi Arabia makes its position clear that motion practice will be necessary. One notable issue that remains outstanding after our meet and confer is whether Saudi Arabia will commit to provide a privilege log for any documents withheld from production based on the VCDR or VCCR.

The parties briefly discussed whether the privilege log should adhere to the form endorsed by Judge Maas earlier in the proceedings (ECF No. 2644), or the provisions of the local rules. After further analysis, plaintiffs believe there is little difference between Judge Maas' privilege log order in the MDL and the requirements of the local rules, and that Judge Maas' Order should adhere.

### C.   The Kingdom's Efforts to Artificially Limit the Repositories to be Searched

Plaintiffs expect that motion practice will be necessary to challenge the Kingdom's claim that it can limit its searches for responsive documents and information to a few select repositories. The Kingdom proposes to limit its searches for documents and information to (1) the Los Angeles Consulate; (2) the Saudi Embassy in Washington, D.C.; (3) the Presidency of Civil Aviation ("PCA"); (4) the Ministry of Islamic Affairs; and (in a few cases) (5) the Cultural Mission in Fairfax, VA. The Kingdom's effort to artificially limit its searches for documents and information to these few locations is improper for several obvious reasons.

First, Saudi Arabia certainly knows already where most, if not all, relevant and responsive documents and information are located, and almost certainly has assembled, organized, tagged, and/or collected the relevant documents and information already. Despite its objection, Saudi Arabia should be directed to answer in full plaintiffs' interrogatory requesting that the Kingdom "List the name of each repository, archive, or file where Documents relating to Bayoumi or Thumairy have been located since September 11, 2001…" Interrogatory No. 2.

Second, three of the five repositories the Kingdom has offered to search for documents and information fall within its assertions of privilege under the VCDR and VCCR and the Kingdom has not yet revealed whether and to what extent it will provide anything, whether in the form of documents or information, from those three locations.[2]

Third, the Kingdom has excluded several key repositories that unquestionably house highly relevant records and information. These include:

> <u>Investigative and similar files relating to the September 11th attacks</u>. Available documents and information establish that the Kingdom collected relevant documents in connection with inquiries and investigations prompted by the 9/11 attacks, including investigations and inquiries focused on Bayoumi, Thumairy, and their associates in particular.
>
> <u>The Saudi Cultural Mission in Washington D.C.</u> The Kingdom includes the Fairfax, VA office but omits the D.C. headquarters to which Bayoumi made numerous calls. The D.C. office is also responsible for the Saudi Students Club, an entity to which Thumairy and Bayoumi were members and had contact.
>
> <u>The Ministry of Defense and Aviation ("MODA")</u>. MODA is the Ministry to which the PCA, Bayoumi's nominal "employer," belongs. Senior MODA officials were involved in Bayoumi's secondment. Undisclosed agents working under Thumairy's supervision received "bonuses" for their work from MODA.
>
> <u>The Saudi Arabian Education Mission</u>. In March of 2000, Bayoumi was in contact with the Education Mission at 600 New Hampshire Ave., N.W., Washington, D.C.
>
> <u>The Saudi Arabian National Guard</u>. Bayoumi made several telephone calls to the Saudi National Guard at 3050 K Street, N.W., Washington, D.C., in 1998 and 2000.
>
> <u>The Ministry of Higher Education</u>. This is the ministry responsible for funding and supervising Saudi citizens studying in U.S. universities and colleges.

---

[2] While Saudi Arabia nominally indicates in its responses that it will undertake investigations to identify certain relevant and responsive documents and information from the Kingdom's Los Angeles Consulate, Embassy in Washington, D.C., and Cultural Mission, any such inquiries are expressly made subject to the Kingdom's broad claims of privileges under the VCDR and VCCR. In the way that those objections are currently framed, the Kingdom appears to be asserting the right to withhold from production and disclosure virtually any document or information uncovered during reviews or inquiries of the Consulate, Embassy, or Cultural Mission, or obtained from persons associated with those missions.

<u>The Ministry of Finance</u>.  The FBI learned that Bayoumi was being financially supported by this ministry.

<u>The Ministry of Interior</u>.  Bayoumi had contact with two entities belonging to this ministry, the Ministerial Agency of Civil Affairs and Internal Security ("Mabahith"). The Kingdom's responses to inquiries and requests from the 9/11 Commission, including as to Bayoumi, Thumairy and related individuals, were coordinated by the Mahabith.

<u>General Intelligence Directorate aka the Mukhabarat</u>.  The FBI had strong suspicions that Bayoumi was a Mukhabarat agent.

<u>The General Investigations Directorate aka the Mahabith</u>.  The Mahabith led the Kingdom's investigations concerning possible Saudi government involvement in 9/11, including the Kingdom's responses to inquiries and requests from the 9/11 Commission as to Bayoumi, Thumairy and related individuals.  Mahabith officials participated in the Commission's interviews of Thumairy and Bayoumi.

<u>The Presidency of State Security</u>.  This entity has taken over the supervision of the internal security, the Mahabith and external security, the Mukhabarat.  The Kingdom itself stated in its reply in support of its motion to dismiss that plaintiffs' proposed discovery implicated its intelligence activities.

<u>The Ministry of Foreign Affairs</u>.  This ministry is responsible for the embassies and consulates, including the consulate that employed Thumairy, and dealt with the U.S. State Department regarding the diplomatic status of Thumairy as well as handled inquiries from the U.S. regarding Thumairy and Bayoumi.

<u>The Ministry of Civil Service</u>.  This ministry dealt with the secondment of Saudi government employees, including Bayoumi.

<u>The Kingdom's Embassy and Consulates in the United Kingdom</u>.  Bayoumi moved from the U.S. to the U.K. in July 2001 and had contacts with the U.K. Embassy following his post 9/11 arrest.

**D.    The Kingdom's Efforts to Exclude Relevant Information and Documentation by Limiting the Time Period to be Searched**

Plaintiffs also expect that motion practice will be necessary to address the claim of the Kingdom that it would search only for documents authored, created, or sent between January 1, 1998 and September 11, 2001, and seek information only from witnesses "with personal knowledge from that period."[3]  During the meet and confer, the PECs stated that the Kingdom's proposed temporal limitation on the scope of its searches for documents and information was inappropriate in certain cases, and should be reconsidered.

---

[3] Plaintiffs designated that same period as the presumptive time period applicable to their Document Requests, but in certain cases where appropriate, requested that the Kingdom produce documents from earlier or later periods.

The Honorable Sarah Netburn
May 21, 2018
Page 6

      For example, the PECs indicated that records describing Thumairy's roles and functions would most likely have been created when he was initially hired by the MOIA in 1995, and when he was assigned to the Los Angeles Consulate in 1996, but would be excluded from the Kingdom's search based on the temporal limitation it proposed to apply.  The PECs also noted that the Kingdom's refusal to search for records and information after September 11, 2001 would insulate key records relating to the inquiries into the involvement of Bayoumi and Thumairy in providing support to the hijackers, and prevent plaintiffs from learning information known to the Kingdom and its officials based on such post 9/11 inquiries.

      On Sunday May 20, 2018, counsel for the Kingdom indicated that Saudi Arabia would consent to search for documents pre-dating January 1, 1998 in response to Request for Production Nos. 4, 5, 27, 28, 30, 33, 61, 62, and 68.  It is the PECs' understanding that the Kingdom is adhering to its refusal to search for any records post-dating September 11, 2001.[4]

      On the basis of its refusal to search for documents or information post-dating September 11, 2001, the Kingdom improperly seeks to avoid producing (among others):

    a)    Documents concerning Thumairy's and Bayoumi's interviews by the 9/11 Commission, potentially to include videos or transcripts of those interviews (Request Nos. 25 and 56);

    b)    Documents concerning investigations, reprimands, or disciplinary actions concerning Thumairy or Bayoumi, and also related to the 9/11 attacks or the 9/11 hijackers (Request Nos. 19 and 55);

    c)    Documents concerning Thumairy, Bayoumi, or Sowailem that were provided or shared with the United States in connection with the 9/11 investigation or other investigations (Request Nos. 26, 57, and 80);

    d)    Documents concerning the United States' decision to bar Thumairy from entering the United States in 2003 based on the determination that he may be connected to terrorism, as discussed in the 9/11 Commission Report (Request No. 20);

    e)    Documents concerning the attempt by the Saudi government and leadership of the King Fahad Mosque to discipline Thumairy in 2002 and 2003 "for espousing extremist views," as discussed in the 9/11 Commission Report (Request No. 18);

    f)    Documents concerning Thumairy's conduct that was the subject of internal debate among Saudi officials in the aftermath of the 9/11 attacks, as discussed in the 9/11 Commission Report (Request No. 19); and

    g)    Documents concerning the role of the Ministry of Islamic Affairs in the United States and the review of the status of the Ministry's "diplomats" including Thumairy

---

[4] The Kingdom's remaining improper temporal objections impact Document Request Nos. 1-5, 7, 8, 11, 20, 23, 27, 29, 31-44, 48-53, 55, 58, 59, 61, 62, 64, 65, 68, 75, and 77, and Interrogatory Nos. 1, 2, 5-7, 10, 12-16, and 19.

The Honorable Sarah Netburn
May 21, 2018
Page 7

and Sowailem after 9/11 and violations of the Foreign Agent Registration Act by Saudi agents, including Bayoumi (Requests Nos. 84, 85, and 86).

There is no valid ground for the Kingdom to resist searching for these records. Its objections to these requests based on the fact that they seek documents post-dating September 11, 2001 or on other grounds should be stricken.

It also is improper for the Kingdom to withhold information in its possession and responsive to Plaintiffs' Interrogatories by limiting its responses to information from witnesses with personal knowledge from the period between January 1, 1998 through September 11, 2001. If, for example, the Kingdom determined the identity of the person who tasked Thumairy and Bayoumi to assist the hijackers through investigations conducted after September 11, 2001, it should not be permitted to hide that information from plaintiffs and the Court based on the fact that Saudi officials acquired that knowledge after September 11, 2001. If a Saudi official who was involved in the post 9/11 investigations of Bayoumi knows the precise nature of all duties and functions Bayoumi was performing for the Saudi government in the United States, the Kingdom is required to provide the information known to that official, and it is irrelevant that it was obtained by him after September 11, 2001. In sum, the Kingdom should respond to Plaintiffs' Interrogatories by providing all responsive information in its possession, regardless of when it was acquired.

E. **The Kingdom's Efforts to Limit Subagents and Subagent Organizations Subject to Discovery**

Another area that needs to be addressed in a motion are the "subagents" defined by plaintiffs as the subject of various discovery requests. Saudi Arabia refuses to search for documents and information regarding six of the twelve subagents listed by plaintiffs.

Saudi Arabia claims that it need not produce anything concerning the role of Osama Basnan and Omar Abdi Mohamed under Bayoumi and/or Thumairy because the Court found the allegations relating to them, standing alone, insufficient to establish jurisdiction. Those findings, however, did not address their role as subagents providing support to the hijackers. For example, the Court found there were insufficient allegations that Basnan was an employee or agent of the Saudi government. This did not affect the facts relevant to Basnan's status as a subagent, namely that he was a close friend of Bayoumi, lived across the street from the hijackers and gave them support and resources, including putting them in contact with a flight instructor. The Court's rulings as to Abdi Mohamed are based on similar grounds and plaintiffs are entitled to discovery concerning whether this undercover Saudi government employee illegally working under Thumairy in San Diego had any contact with the hijackers.[5]

In addition, Saudi Arabia claims that four subagents are not "mentioned in the March 28 order or in any allegation cited in pages 19 through 23 of that Order." But the Order did not include a comprehensive list of all of the subagents utilized by Bayoumi and Thumairy to assist the hijackers. Indeed, Saudi Arabia itself has agreed to produce documents for various subagents that

---

[5] More fundamentally, the relationships between these additional subagents and Thumairy and Bayoumi are relevant to the ultimate inquiry concerning the nature and scope of Thumairy's and Bayoumi's agency for Saudi Arabia.

are not mentioned in the Order.  Saudi Arabia is not entitled to pick and choose which persons related to Bayoumi, Thumairy and the hijackers can be excluded from its production.

Finally, the purpose of discovery is to learn the nature and extent of the support provided by Thumairy and Bayoumi to the hijackers, including the subagents they utilized to provide that support.  Plaintiffs are seeking discovery not only from Saudi Arabia but from third parties, including the FBI to learn the names of the subagents as well as the persons who tasked Bayoumi and Thumairy.  That information was redacted from the 2012 FBI report that is currently the subject of plaintiffs' subpoena to the FBI.

### F. Additional Requests and Interrogatories that Saudi Arabia Rejects Outright

Further motion practice will be necessary to address a range of topics that the Kingdom will not agree to produce documents.  These include requests on the following topics:

a) Saudi Arabia's funding of the King Fahad Mosque where the Kingdom had Thumairy appointed as imam and where Thumairy managed the finances and recruited key subagents who provided support to the hijackers (Request No. 93);

b) various information concerning al Qaeda and its hijackers, including payments, passport and travel records, communications with the Saudi Embassy and surveillance of their activities in the United States (Request Nos. 54, 81, 82, 95, 96, 98, 99 and 100); and

c) the secondment practices used by Saudi Arabia in the United States at the time of Bayoumi's secondment (Request No. 94).

### G. Undue Burden, Scope and other Objections

The Kingdom has objected to virtually all of Plaintiffs' Interrogatories under the theory that they exceed the scope authorized by Local Rule 33.3.  That objection is in conflict with the Court's ruling authorizing Plaintiffs' to serve interrogatories and should be stricken.

The Kingdom has objected to numerous discovery requests based on claims of undue burden.  These burden objections are unsubstantiated, and belied by the evidence establishing that the Kingdom has already investigated these issues extensively.  Those should be stricken as well.

The Kingdom has objected to a number of interrogatories and document requests on the grounds that they allegedly are vague, including several that seek information about specific incidents discussed in the 9/11 Commission Report, based on information provided to the Commission by the Kingdom itself (such as the debate about Thumairy's activities and efforts to reprimand him).  *See* Document Request Nos. 18 and 19; Interrogatory Nos. 11 and 12.  The objections to these and others as vague and refusal to answer on that basis are baseless.

The Kingdom has raised a number of additional scope objections in response to specific discovery requests that require consideration of applicable legal standards and factual context.

The Honorable Sarah Netburn
May 21, 2018
Page 9

In relation to its proposed searches of the Los Angeles Consulate, Embassy, and Cultural Mission, the Kingdom has also sought to limit the types of documents it will search for, indicating that it will search only for certain records concerning "communications," personnel files or similar records, travel records, call or visitor logs, and certain phone records. Responses to Document Requests at p. 10. The purpose and reason for this confusing objection is unclear, but the Kingdom should be directed to search for and produce all "documents" responsive to the requests.

## II. DEPOSITIONS

During the April 12, 2018 conference, Your Honor declined to set a limit on the number of depositions until the parties and Court had an opportunity to "at least look at the documents and see what we are talking about." Transcript of April 12, 2018 Hearing at p. 24. At this point, the Kingdom still has not produced any documents or provided a substantive answer to any of Plaintiffs' Interrogatories, including those seeking identification of witnesses. Accordingly, the PECs believe it would be premature to set a limit on the number of depositions at this time. During the parties' meet and confer, counsel for the Kingdom expressed agreement with that view.

The PECs also inquired during the meet and confer whether the Kingdom had made any further progress in confirming that Thumairy, Bayoumi, and Sowailem would be made available for depositions, and whether the Kingdom would be willing to produce them at a neutral location outside Saudi Arabia. Counsel for the Kingdom indicated that it did anticipate producing Thumairy and Sowailem, and would be willing to discuss producing them in a neutral location at a later date. As to Bayoumi, counsel for the Kingdom indicated that they had spoken with him but not yet raised the issue of his appearance for a deposition, and suggested that the Kingdom would have no means available to compel him to appear for a deposition. The PECs find that position dubious, given the scope of authority the Saudi Monarchy exercises over its citizens, and expect to challenge the position should the Kingdom decline to make Bayoumi available for deposition.

## III. THIRD PARTY DISCOVERY

Since the Court denied the Kingdom's motion to dismiss, the PECs have served nine subpoenas to third parties seeking relevant documents and information. More specifically, plaintiffs have served subpoenas on the Federal Bureau of Investigation ("FBI") and the Department of State, both of which are being represented in relation to the subpoenas by attorneys from the United States Attorney's Office for the Southern District of New York ("OUSA"). In addition, plaintiffs have served subpoenas upon several U.S.-based education institutions, referenced in the summary of the 9/11 Commission staff's interview of Omar al Bayoumi. As the Court is aware, the FBI has concluded that Bayoumi was residing in the United States at the time he provided assistance to the hijackers on a student visa, despite attending no classes. Plaintiffs are also serving a subpoena on the King Fahad Mosque, where Thumairy was working as an Imam at the time he provided assistance to the 9/11 hijackers, and where the hijackers themselves are known to have spent time during their first critical days in the United States. The PECs are engaged in an ongoing dialogue with the OUSA concerning the subpoenas to the FBI and State Department, and are hopeful that those discussions will result in amicable resolutions of any concerns the government may have.

The Honorable Sarah Netburn
May 21, 2018
Page 10

During the parties' recent meet and confer, counsel for the Kingdom advised that Saudi Arabia may raise objections to the scope of the subpoena to the FBI, and potentially other of the third party subpoenas as well. The Kingdom need not and should not be heard on such matters for several reasons. To begin with, the third party subpoenas do not implicate or infringe on Saudi Arabia's alleged immunity in any way. The Court was thus correct in the view expressed at the April 12, 2018 conference that Saudi Arabia has no legitimate grounds to "object to your efforts to uncover discovery from the FBI." Further, the FBI and State Department are being represented by the Department of Justice in regards to the subpoenas. The OUSA has already indicated that the FBI and State Department will object to being required to search for records that are beyond the scope of permissible discovery under the Federal Rules. The PECs are confident the OUSA will represent the FBI and State Department effectively and appropriately in relation to any such issues.

### IV. THE KINGDOM'S UNAUTHORIZED DISCOVERY TO PLAINTIFFS

Although the PECs' deadline to respond to interrogatories and document requests that the Kingdom served on plaintiffs is 30 days from their service on April 26, 2018 (and the PECs' will do so), the PECs have told the Kingdom that they will oppose the requests. The PECs' reasons for opposing include that (1) the Kingdom waived any right to request jurisdictional discovery, (2) the Court has not authorized the discovery the Kingdom served, (3) the discovery it served contravenes the Court's orders and directives, and (4) the discovery sought is beyond the scope of discovery as described by Rule 26(b)(1), because the Kingdom already has the benefit of the thousands of pages of evidence plaintiffs submitted in support of their theories of jurisdiction and Judge Daniels has found that the Kingdom has far superior access to relevant information. March 28 Order, ECF No. 3946, at p. 23 ("the party in the best position to shed light on th[e] inquiry is Saudi Arabia").

The Court authorized discovery by only plaintiffs. March 28 Order at 5 ("[T]his Court will exercise its discretion to allow *Plaintiffs* limited jurisdictional discovery) (emphasis added); Tr. of Conference (Apr. 12, 2018), ECF No. 3964, at 21:23-25 (making clear that the Court is allowing "*plaintiffs* to probe within each of those areas . . . that Judge Daniels identified.") (emphasis added). Even before the Court authorized plaintiffs to serve jurisdictional discovery, the Kingdom waived any right to discovery it may have had. Initially, the Kingdom asserted that discovery was unnecessary and permitted only as authorized (*see* Correspondence from Michael K. Kellogg to Robert T. Haefele, July 18, 2017); after the decision, the Kingdom asserted that discovery was limited to what the Court had authorized. In its discovery responses, the Kingdom recognized that "Judge Daniels' March 28 Order directs that 'Plaintiffs shall be permitted to conduct limited and targeted jurisdictional discovery.'" Responses & Objections at 2, quoting March 28 Order at 23 (emphasis added). Consistent with Judge Daniel's March 28 Order, Judge Netburn's April 20 Order authorized only *plaintiffs* to serve discovery demands. April 20 Order.

Finally, the Court ordered the parties to meet and confer before the April 12, 2018 conference to discuss the jurisdictional proceedings (ECF No. 3948). If the Kingdom intended to request authority for jurisdictional discovery of plaintiffs, it was obligated by the Court's Order to raise the issue in the mandated meet and confer, but failed to do so.

The Honorable Sarah Netburn
May 21, 2018
Page 11

Respectfully submitted,

| COZEN O'CONNOR | MOTLEY RICE |
|---|---|
| _/s/ Sean P. Carter_ | _/s/ Jodi Westbrook Flowers_ |
| Sean P. Carter, Esquire | Jodi Westbrook Flowers, Esquire |
| 1650 Market Street, Suite 2800 | 28 Bridgeside Boulevard |
| Philadelphia, PA 19103 | Mt. Pleasant, SC 29464 |
| MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims | MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

KREINDLER & KREINDLER

_/s/ James P. Kreindler_
James P. Kreindler, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

MDL 1570 Plaintiffs' Exec. Committee for
Personal Injury and Death Claims

cc:   The Honorable George B. Daniels (via ECF and Federal Express)
      All MDL Counsel of Record (via ECF)

LEGAL\36335824\1