# Exhibit I

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

In Re Terrorist Attacks on Sept. 11, 2001 )
)
Plaintiff )
v. ) Civil Action No. MDL 03-1570
)
)
Defendant )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: The Executive Office, Office of the Legal Advisor, Department of State, Suite 5.600, 600 19th Street, N. W., Washington, DC 20522

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A and Exhibits Thereto

| Place: Cozen O'Connor 1200 19th Street N.W., Washington, DC 20036 | Date and Time: 06/26/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/14/2018

CLERK OF COURT

_____        OR        _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiffs' Executive Committees                    , who issues or requests this subpoena, are:
Sean P. Carter, Cozen O'Connor, 1650 Market St., 28th Fl., Phila., PA 19103; scarter1@cozen.com; 215-665-2105
Robert Haefele, Motley Rice, 28 Bridgeside Blvd., Mt. Pleasant, SC 29464; rhaefele@motleyrice.com; 843-216-9184

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. MDL 03-1570

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

I. **Instructions and Definitions:**

1. This subpoena is issued pursuant to Rule 45 of the Federal Rules of Civil Procedure, and not pursuant to a request for records under the Freedom of Information Act ("FOIA"), and all documents specified below are required to be produced as required by Rule 45.

2. Each document responsive to this subpoena shall be produced in its entirety, with all non-identical copies and drafts, and without abbreviation or redaction, subject only to credible assertions of privileges recognized under the common law.

3. If You assert a privilege or other authorized protection with respect to any document requested herein, You must produce all non-privileged/protected portions of the document with those portions as to which a privilege/protection is claimed redacted, and You must provide a privilege log that conforms with the requirements set out by United States Magistrate Judge Frank Maas in the case captioned *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (S.D.N.Y.), by Order dated November 19, 2012 (ECF No. 2644), including providing the following information concerning each individual document withheld or redacted:

    a. The type of document or information (e.g., letter, notebook, telephone conversation, etc.);

    b. The general subject matter of the document;

    c. The date of the document;

    d. The authors of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the authors, addressees, and recipients to one another;

    e. If the document is an electronic document, its file size; and

    f. Each and every basis for the privilege or protection claimed; and if a privilege or protection asserted is based upon or governed by a law, statute, regulation, or rule, the specific law, statute, regulation, or rule being invoked.

4. No document responsive to this subpoena shall be withheld or redacted pursuant to FOIA exemptions.

5. As used herein, the following terms are defined as follows:

    a) "Document" or "Documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" and "any designated tangible things" as used in Fed. R. Civ. P. 34(a)(1)(A) and

        (B).  A draft or non-identical copy is a separate document within the meaning of this term.

b) "You" and "Your" means the Department of State, including without limitation any official, employee, and representative of the Department of State.

c) "Concerning" means relating to, referring to, describing, evidencing, or constituting.

d) "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

e) "All," "any," and "each" shall each be construed as encompassing any and all.

f) "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

g) "Kingdom of Saudi Arabia," "the Kingdom," or "the Saudi government" shall mean the government of the Kingdom of Saudi Arabia, including without limitation any ministry, council, agency, instrumentality, organ, political subdivision, government committee, Saudi embassy or consulate, or component of the Saudi government, as well as any official or employee of the Saudi government.

h) "Ministry of Islamic Affairs" shall mean the ministry of the Saudi government also known as the "Ministry of Islamic Affairs, Dawah and Guidance" or the "Ministry of Islamic Affairs, Endowments, Dawah and Guidance," including any member, official, employee, representative or office of the Ministry of Islamic Affairs, as well as any Islamic Affairs or Da'awah office of any Saudi diplomatic mission.

i) "Saudi Consulate in Los Angeles" shall mean the Consulate General of the Kingdom of Saudi Arabia in Los Angeles, California.

j) "Saudi Embassy" shall mean the Embassy of the Kingdom of Saudi Arabia in Washington, D.C.

k) "Saudi diplomatic mission" shall mean any embassy or consulate of the Kingdom of Saudi Arabia, including any office or organization located within any such embassy or consulate, as well as any agency engaged in diplomatic, consular, or related activities under the control and direction of the Saudi government.

l) "King Fahad Mosque" is also known as the Islamic Foundation of Sheikh Ibn Tayymiah and is and at all relevant times was located on Washington Boulevard in Culver City, California.  King Fahad Mosque included affiliated institutes, corporations and commercial enterprises.

m) "9/11 Hijackers" shall mean any of the 19 men who hijacked aircraft on September 11, 2001, and crashed the aircraft into the World Trade Center buildings in New York, the Pentagon in Virginia, and a field in Shanksville, Pennsylvania, including:

| | |
|---|---|
| Abdulaziz Mohamed al Omari; | Mohamed Atta; |
| Ahmed Abdullah al Nami; | Mohand al Shehri; |
| Ahmed Ibrahim al Haznawi; | Nawaf Mohamed al Hazmi; |
| Ahmed Saleh al Ghamdi; | Salem Mohamed al Hazmi; |
| Hamzeh Saleh al Ghamdi; | Satam al Suqami; |
| Hani Saleh Hanjour; | Saeed Abdullah al Ghamdi; |
| Fayez Banihammad; | Wail Mohamed al Shehri; |
| Khalid Mohamed al Mihdhar; | Walid Mohamed al Shehri; and |
| Majed al Moqed; | Ziad Jarrah. |
| Marwan al Shehhi; | |

3

## II.     **Documents to be Produced:**

1.     Any and all documents concerning Fahad al Thumairy,[1] including without limitation:

   a)     Department of State Memo, Karl Hoffman to the National Commission on Terrorist Attacks Upon the United States, June 8, 2004, and all attached materials. *See* Final Report of the National Commission on Terrorist Attacks on the United States ("9/11 Commission Final Report") at 514, n.12.

   b)     Any and all documents concerning any request of the Federal Bureau of Investigation ("FBI") to the Department of State for a "No Foreign Policy Objection" ("NFPO") for Thumairy and any determination of the Department of State regarding such a NFPO, including but not limited to the request for such a NFPO made by the FBI on or about August 26, 2002 and the approval by the Department of State of that NFPO on or about September 3, 2002.

   c)     Any and all documents concerning Thumairy's attempt to enter the United States in 2003, the denial of his entry by United States authorities, and any reasons for that denial. *See* 9/11 Commission Final Report at 217, 514, n.12.

   d)     Any and all documents concerning any consideration and/or determination by the Department of State that Thumairy "might be connected with terrorist activity." *See* 9/11 Commission Final Report at 217.

   e)     Any and all documents concerning any consideration and/or determination by the Department of State that Thumairy had committed a serious offense, including a felony or crime of violence.

   f)     Any and all documents concerning any request for a waiver of immunity for Thumairy made by the Department of State to the Kingdom of Saudi Arabia, the Kingdom's response, and any actions taken as a result.

   g)     Any and all documents concerning the consideration and determination by the Department of State that Thumairy should be subjected to an expulsion procedure.

   h)     Any and all documents concerning the diplomatic status and/or credentials of Thumairy, including but not limited to any request that Thumairy be afforded

---

[1] Fahad al Thumairy is an accredited diplomat who served with the Islamic Affairs Department of the Saudi Consulate in Los Angeles from 1996-2003, by appointment of the Kingdom of Saudi Arabia's Ministry of Islamic Affairs. *See* 9/11 Commission Final Report at 216. Thumairy additionally served as the imam at the Saudi government funded King Fahad Mosque near Los Angeles, also by appointment of the Kingdom's Ministry of Islamic Affairs, where he "associated with a particularly radical faction within the community of local worshippers," including persons "supportive of the events of September 11, 2001." *Id.* According to a declassified 2012 Summary Report concerning the status of an ongoing criminal investigation by the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") into sources of support for the 9/11 Hijackers, Thumairy provided "substantial assistance" to hijackers Nawaf al Hazmi and Khalid al Mihdhar upon their arrival in the United States in January 2000. *See* 2012 Summary Report at 3. On May 6, 2003, Thumairy attempted to reenter the United States from Saudi Arabia but was refused entry, based on a determination by the Department of State that he was connected to terrorism. *See* 9/11 Commission Final Report at 217, 514, n.12

      diplomatic status or credentials; any request that Thumairy's diplomatic status or credentials be renewed or extended; or any evaluation or review of Thumairy's diplomatic credentials or status, including without limitation any review or determination as to whether Thumairy's diplomatic status or credentials should be revoked or terminated, or that he should be expelled.

    i)    Any and all documents concerning Thumairy's entry(ies) into, exit(s) from, and stay(s) in the United States, including any passport papers or visas.

    j)    Any and all documents concerning the entry(ies) into, exit(s) from, and stay(s) in the United States of any personal employee, attendants, or domestic workers of Fahad al Thumairy.

    k)    Any and all document concerning any investigation or inquiry relating to Thumairy arising from or concerning the September 11th attacks.

2.    Any and all documents concerning Omar al Bayoumi,[2] including without limitation:

    a)    Any and all documents concerning Bayoumi's entry(ies) into, exit(s) from, and stay(s) in the United States, including any passport papers or visas.

    b)    Any and all documents concerning any investigation or inquiry concerning any possible violation of United States immigration and/or visa laws by Bayoumi.

    c)    Any and all documents concerning any investigation or inquiry concerning any possible violation of the Foreign Agents Registration Act ("FARA") or Anti-Terrorism Act ("ATA") by Bayoumi.

    d)    Any and all documents concerning any investigation or inquiry relating to Bayoumi arising from or concerning the September 11th attacks.

---

[2] Omar al Bayoumi, an employee of the Saudi government, was tasked by Fahad al Thumairy to assist 9/11 hijackers Nawaf al Hazmi and Khalid al Mihdhar shortly after they arrived in the United States in January 2000. According to the declassified FBI/DOJ 2012 Summary Report, Bayoumi provided "substantial assistance" to Hazmi and Mihdhar by, among other things, providing "(or direct[ing] others to provide) the hijackers with assistance in daily activities, including procuring living quarters, financial assistance, and assistance in obtaining flight lessons and driver's licenses." *See* 2012 Summary Report at 3-4; *see also* 9/11 Commission Final Report at 219. U.S. investigations have determined that on February 4, 2000, the same day that Hazmi and Mihdhar arrived in San Diego at Bayoumi's invitation, four telephone calls were placed from Bayoumi's cell phone to Anwar Aulaqi, a senior recruiter for al Qaeda who served as the imam of the Al Ribat Al Islami Mosque in La Mesa, CA. *See* 9/11 Commission Final Report at 517, n.33. According to FBI sources, Aulaqi served as a religious mentor to the hijackers and "met consistently and privately with Alhazmi and Almidhdir for prayers." *Id.*

3.  Any and all documents concerning the following persons who entered the United States as an officer or employee of the Kingdom of Saudi Arabia: (a) Khalid al Sowailem; (b) Musaed al Jarrah; (c) Majed al Ghesheyan; (d) Ismail Mana; (e) Abdelrahman Balihi; (f) Abdullah Jraithen; (g) Sami M. Sadhan; (h) Mutalib al Sudairy; and (i) Mohamed al Muhanna.[3]  These documents should include without limitation any and all documents concerning their diplomatic status and/or credentials, including but not limited to any request that the person be afforded diplomatic status or credentials; any request that the person's diplomatic status or credentials be renewed or extended; or any evaluation or review of the person's diplomatic credentials or status, including without limitation any review or determination as to whether the person's diplomatic status or credentials should be revoked or terminated, or that he should be expelled.  Responsive documentation shall also include their passport and visa records, including without limitation visa applications, passports, and supporting documentation.

4.  Any and all documents concerning any investigation or inquiry relating to Sowailem, Jarrah, Ghesheyan, Mana, Balihi, Jraithen, Sadhan, Sudairy, and/or Muhanna arising from or concerning the September 11th attacks.

5.  Any and all documents concerning Omar Abdi Mohamed,[4] including without limitation:

    a)  Any and all documents concerning Mohamed's entry(ies) into, exit(s) from, and stay(s) in the United States, including any passport papers or visas.

    b)  Any and all documents concerning any investigation or inquiry concerning any possible violation of United States immigration and/or visa laws by Mohamed.

    c)  Any and all documents concerning any investigation or inquiry concerning any possible violation of the Foreign Agents Registration Act ("FARA") or Anti-Terrorism Act ("ATA") by Mohamed.

    d)  Any and all documents concerning any investigation or inquiry relating to Mohamed arising from or concerning the September 11th attacks.

6.  Any and all documents containing a list of all persons with diplomatic and consular privileges for the Kingdom of Saudi Arabia from January 1, 1998 through and including

---

[3] Khalid al Sowailem, Musaed al Jarrah, Majed al Ghesheyan, Ismail Mana, Abdelrahman Balihi, Abdullah Jraithen, Sami M. Sadhan, Mutalib al Sudairy, and Mohamed al Muhanna are personnel of the Ministry of Islamic Affairs who worked in contact with Fahad al Thumairy, the Saudi Consulate in Los Angeles, and other Saudi diplomatic offices in the United States.

[4] Omar Abdi Mohamed is an employee of the Kingdom of Saudi Arabia's Ministry of Islamic Affairs who fraudulently obtained a visa to enter the United States and operated in San Diego, CA.  The U.S. investigations of Mohamed implicated Fahad al Thumairy in performing undisclosed activities and roles for the Saudi government in the United States.  *See In the Matter of: Omar Abdi Mohamed*, File No. A44917640, In Bond Proceedings before Immigration Judge Ragusa, United States Department of Justice, Executive Office for Immigration Review, Immigration Court, Government Response to Respondent's Brief in Support of Bond at 4-5 (April 22, 2004); *see also* Department of the Treasury, United States Customs Service, Report of Investigation, Case No. SD32CI04SD0015 (April 13, 2004).

6

September 11, 2001.   For each such person, produce documents containing their title, position, and job in the United States.

7. Any and all documents concerning any review and/or determination of the Department of State that any person with diplomatic or consular privileges of the Kingdom of Saudi Arabia had committed a serious offense, including a felony or crime of violence, between February 1, 1998 and December 31, 2004.

8. Any and all documents concerning any review of the diplomatic status of any person(s) holding Saudi diplomatic credentials in the United States between September 11, 2001 and December 31, 2004, including any documents concerning:  the revocation or non-renewal of the diplomatic credentials of any such person; the expulsion of any such person from the United States; any request made by the Department of State for a waiver of immunity for any such person; the departure of any such person from the United States; and/or any and all documents concerning the Department of State's determination to revoke diplomatic visas of any person employed by, and/or associated with, Saudi diplomatic missions and the Institute for Arab and Islamic Sciences ("IIASA").  *See* Washington Post, *U.S. Revokes Visas of 16 at Islamic Institute*, Caryle Murphy and Susan Schmidt, January 29, 2004 (reporting that the Department of State forced approximately 70 people with Saudi diplomatic credentials to leave the United States as part of "an ongoing effort to protect the homeland"), attached hereto as Exhibit 1.

9. Any and all documents concerning any inquiry, investigation, or remedial action, between September 11, 2001 and December 31, 2005, concerning the activities of the Ministry of Islamic Affairs in the United States; any offices of the Ministry of Islamic Affairs in the United States; or any representatives, agents, employees, or officials of the Ministry of Islamic Affairs in the United States, including any undisclosed representatives, agents, employees, or officials of the Ministry of Islamic Affairs in the United States.

10. Any and all documents concerning the King Fahad Mosque, including without limitation any investigation or inquiry concerning the King Fahad Mosque arising from or concerning the September 11th attacks.

11. Any and all passport and visa records of the 9/11 Hijackers, including without limitation visa applications, passports, and supporting documentation.  Responsive documentation shall also include individual pages of the passports for any of the 9/11 Hijackers.

7

# Exhibit 1 Omitted