UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

In re:                                              :        MEMORANDUM DECISION
                                                    :        AND ORDER
TERRORIST ATTACKS ON SEPTEMBER 11,   :
2001                                                :        03 MDL 1570 (GBD) (SN)
                                                    :
------------------------------------- x

This document relates to: *Continental Casualty Co. v. Al Qaeda Islamic Army*, No. 04 Civ. 5970 (GBD) (SN).

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Continental Casualty Insurance Company, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, National Insurance Company of Hartford, and American Casualty Company of Reading, Pennsylvania are insurance companies who brought an action in this multidistrict litigation against Defendant Islamic Republic of Iran ("Iran") seeking to recover damages in connection with insurance and reinsurance payments on claims arising from the September 11, 2011 terrorist attacks (the "September 11 Attacks"). On January 6, 2017, this Court entered a default judgment against Iran and referred the resolution of all remaining issues, including the calculation of damages, to Magistrate Judge Sarah Netburn. (Order dated Jan. 6, 2017, ECF No. 3415.) On June 19, 2017, Plaintiffs moved for an award of damages in connection with the default judgment. (ECF No. 3628.) Before this Court is Magistrate Judge Netburn's November 27, 2017 Report and Recommendation (the "Report," ECF No. 3808), recommending that Plaintiffs be awarded $221,861,243.69 in damages, in addition to prejudgment interest.[1] (*Id.* at 15.) In her Report, Magistrate Judge Netburn advised the parties

---

[1] The relevant procedural and factual background is set forth in greater detail in the Report, and is incorporated herein.

that failure to file timely objections would constitute waiver of those objections on appeal. (*Id.* at 16.) Plaintiffs and the Plaintiffs' Executive Committee for Commercial Claims (the "PECC") filed timely objections. (*See* Pls. Objs., ECF No. 3885; PECC Objs., ECF No. 3887.)

Plaintiffs' motion for damages, (ECF No. 3628), is GRANTED. Plaintiffs are awarded damages of $527,598,884.69 in addition to prejudgment interest accruing from September 11, 2001 to the date judgment is entered. To the extent Plaintiffs' claims are for damages arising from losses sustained in New York State, Plaintiffs are awarded simple interest at a rate of 9% per annum. To the extent Plaintiffs' claims are for damages arising from losses sustained outside of New York State, Plaintiffs are awarded interest at a rate of 4.96%, compounded annually.

## I.  LEGAL STANDARDS

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

Plaintiffs and the PECC raise two objections to the Report that impact the amount of damages that Plaintiffs are entitled to recover.[2] First, Plaintiffs and the PECC object to the

---

[2] The PECC also objects to the Report's finding that Plaintiffs "can only recover for the losses they expended under the doctrine of subrogation." (Report at 4.) The PECC argues that "the Court should conclude that Section 1605A(d) creates a direct and independent remedy in favor of insurers for 'loss claims under . . . property insurance policies . . . and that an insurer's rights do not arise solely under doctrines of subrogation." (PECC Objs. at 8.) However, neither Plaintiffs nor the PECC identify any damages sought by Plaintiffs recoverable under such direct rights that would not be recoverable under principles of equitable subrogation. Because the PECC has not shown that their objection would impact the amount of Plaintiffs' damages, it is not addressed further herein.

2

Report's finding that Plaintiffs are not entitled to damages for amounts paid under reinsurance contracts, arguing that Plaintiffs' damages should include the reinsurance payments. (Pls. Objs. at 5–10; PECC Objs. at 8–16.) Second, Plaintiffs and the PECC object to the Report's finding that prejudgment interest should accrue from the dates of the payment of each claim for which Plaintiffs seek damages, arguing that prejudgment interest should accrue from September 11, 2001. (Pls. Objs. at 10–15; PECC Objs. at 16–20.) The objections on both points have merit, and are sustained. Having reviewed the remainder of the Report for clear error, and finding none, this Court otherwise adopts the other recommendations in the Report.

## II. PLAINTIFFS ARE ENTITLED TO RECOVER REINSURANCE PAYMENTS

The Report found that because Plaintiffs' "reasonably foreseeable property loss" under the reinsurance contracts "was sustained not by their reinsured clients . . . but by the insured policy holders who had no contractual privity with Plaintiffs," the Plaintiffs "cannot equitably subrogate to . . . these policyholders' claims, and are not entitled to the $305,737,641 sought under their reinsurance contracts." (Report at 10.)

Plaintiffs and the PECC object to this finding, arguing that Plaintiffs should be able to recover damages for amounts paid under their reinsurance contracts. (*See* Pl. Objs. at 5–10; PECC Objs. at 12–13.) Plaintiffs note that in *Federal Insurance Co. v. Al Qaeda* ("*Federal Insurance*"), another case in this multidistrict litigation, "[t]his Court . . . entered judgments awarding those plaintiff-insurers reimbursements for amounts they paid as reinsurers," and argue that "[u]nder the doctrine of the law of the case, the legal principles set forth in th[e] two judgments in *Federal Insurance* should govern here as well." (Pls. Objs. at 7.) Plaintiffs further argue that, even if the law of the case doctrine does not apply, they are still entitled to reimbursement on the reinsurance claims, because their "rights of equitable subrogation do not depend upon contractual privity but

3

instead 'arise independently of any agreement.'"[3] (*Id.* at 8 n.3 (quoting *Fed. Ins. Co. v. Arthur Andersen & Co.*, 522 N.E.2d 870, 872 (N.Y. 1990)); *see also* PECC Objs. at 9–13 (discussing the doctrine of equitable subrogation).)

Plaintiffs' objection on this point has merit. Under New York law, "[t]he doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999) (citing *Winkelmann v. Excelsior Ins. Co.*, 85 N.E.2d 841, 843 (N.Y. 1995)). As support for its finding that Plaintiffs cannot recover for their reinsurance claims under principles of subrogation, the Report cites cases standing for the principle that a reinsurance contract creates no *contractual* relationship—and, thus, no privity—between the reinsurer and the original insured. (*See* Report at 9–10.) However, "[b]ecause equitable subrogation is a doctrine founded in equity and not in contract, it is long-established under New York law that privity is not required." *Nobel Ins. Co. v. City of New York*, No. 00 Civ. 1328 (RJS), 2008 WL 4185738, at *4 (S.D.N.Y. Sept. 3, 2008); *see also Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 105–06 (2d Cir. 1992) ("As a creature of equity, the right of subrogation does not arise from, nor is it dependent upon, statute or the terms of the contract of insurance.") (citation omitted); *Lord Day Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 563 n.12 (S.D.N.Y. 2001) ("Although *no privity existed* between the Reinsurers and Vietnam, preventing an express contractual recovery under the reinsurance contract, an equitable claim for reimbursement or 'legal' subrogation directly against Vietnam also

---

[3] The PECC raises the possibility that Plaintiffs may also possess contractual subrogation rights, but admits that it is "not privy to the terms of" Plaintiffs' insurance or reinsurance contracts, and acknowledges that "any ruling as to the [contractual] subrogation rights" of Plaintiffs is "limited to . . . the showing [Plaintiffs] have made in this context." (PECC Objs. at 13, 16.) Because Plaintiffs have made no showing regarding any contractual subrogation rights, this Court need not consider whether Plaintiffs have such rights.

4

accrued in favor of the Reinsurers.") (emphasis added). Plaintiffs can recover for the payments made on their reinsurance contracts under general principles of equitable subrogation, regardless of whether they are in privity with the insureds.

In light of its finding, this Court need not decide whether any specific "law of the case" provides a further basis upon which Plaintiffs may recover. However, this Court does note that allowing Plaintiffs to recover on their reinsurance claims is consistent with this Court's prior orders in *Federal Insurance*, and the Report does not articulate any basis for distinguishing the claims allowed in *Federal Insurance* from those at issue here.[4] (*See* Report and Recommendation dated Oct. 14, 2011, ECF No. 2479, *adopted by* Memorandum Decision and Order dated Dec. 16, 2011, ECF No. 2502; Report and Recommendation dated Dec. 28, 2015 ("*Federal Insurance II* Report"), ECF No. 3175, *adopted by* Memorandum Opinion and Order dated Mar. 9, 2016 ("*Federal Insurance II* Order"), ECF No. 3229.) Allowing Plaintiffs to recover for their reinsurance payments is also consistent with *Certain Underwriters at Lloyd's London v. Great Socialist People's Arab Jamahiriya*, in which a district court in the District of Columbia found that reinsurers could recover for payments made pursuant to a reinsurance contract in connection with the destruction of an airplane in a terrorist attack.[5] 811 F. Supp. 2d at 74–75 (D.D.C. 2011).

---

[4] The Report states that the Report and Recommendations issued by Magistrate Judge Frank Maas in *Federal Insurance* did not "consider the distinction between insurance and reinsurance contracts." (Report at 10.) But the sole distinction identified in the Report is the lack of privity between a reinsurer and the insured. (*Id.*) For reasons explained above, that distinction is not relevant for purposes of equitable subrogation.

[5] The Report correctly notes that the court in *Certain Underwriters* "did not conduct a subrogation analysis at all." (Report at 10.) However, while it did not expressly mention subrogation, the court in *Certain Underwriters* clearly applied principles of equitable subrogation. In that case, "EgyptAir, the owner of the [destroyed] aircraft, contracted with an Egyptian insurance company, MISR . . . , which then sought to reinsure its risk by contracting with several insurance underwriters," *i.e.*, the plaintiffs in that action. 811 F. Supp. 2d at 66. Because the plaintiffs' claims arose out of a "payment to [an] insured," their "recovery [wa]s premised . . . upon subrogation." *Great Am. Ins. Co. v. United States*, 575 F.2d 1031, 1033 (2d Cir. 1978).

5

## III. PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST CALCULATED FROM SEPTEMBER 11, 2001

The Report found that the date at which prejudgment interest begins to accrue should be the date of payment on each of the claims for which Plaintiffs seek damages. (Report at 15.) Plaintiffs and the PECC object to this finding, arguing that prejudgment interest should be calculated from the date of the September 11 Attacks. (*See* Pls. Objs. at 10–15; PECC Objs. at 16–19.)

As part of the basis for its calculation of the date from which prejudgment interest begins to accrue, the Report found that, because Plaintiffs seek damages for claims arising from losses in New York State at New York's statutory interest rate of 9%, New York law determines the date from which prejudgment interest accrues. (Report at 13); *see also* N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."). Plaintiffs object to this finding, arguing that they do "not assert that the rate of interest was controlled by New York law; instead, Plaintiffs contend[] that, since [under federal law] the Court has discretion to apply the interest rate it deems appropriate, a nine percent rate of interest [i]s appropriate." (Pls. Objs. at 14.) Plaintiffs made no such argument in their memorandum in support of their request for damages.[6] However, this Court finds that, under both New York and federal law, the date of the September 11 Attacks is an appropriate date to begin the accrual of prejudgment interest.

---

[6] In response to Magistrate Judge Netburn's subsequent order directing Plaintiffs to submit a letter brief "addressing the appropriate date from which prejudgment interest should be computed pursuant to § 5001(b) of the New York Civil Practice Law and Rules and any other applicable law," (Order dated Nov. 6, 2017, ECF No. 3778), Plaintiffs asserted that "Plaintiffs' judgment against Iran is based upon [f]ederal law," suggesting that federal law should determine the calculation of prejudgment interest, but did not address the issue of what rate of interest should apply. (Letter from Plaintiffs to Magistrate Judge Netburn dated Nov. 21, 2017, *Continental Cas. Co. v. Al Qaeda Islamic Army*, No. 04 Civ. 5970 (GBD) (SN), ECF No. 596, at 1.)

6

As to Plaintiffs' claims for damages arising from losses in New York State, CPLR § 5001 provides, generally, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). If that general rule controlled, Plaintiffs would be entitled to damages only from the dates that they paid each claim, because "[a]n insurer's right of subrogation attaches, by operation of law, upon its payment of an insured's loss." *Mazzola*, 175 F.3d at 258; *see also, e.g., St. Paul Fire & Marine Ins. Co. v. Ayn Enters. Inc.*, No. 08 Civ. 465 (BSJ), 2010 WL 1645091, at *2 (S.D.N.Y. Apr. 22, 2010).[7] But CPLR § 5001 further provides that where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred *or upon all of the damages from a single reasonable intermediate date*." N.Y. C.P.L.R. § 5001(b) (emphasis added). "District courts are afforded 'wide discretion' in determining a reasonable intermediate date from which to calculate prejudgment interest." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 F. App'x 58, 61 (2d Cir. 2014) (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Here, Plaintiffs' damages were incurred at various times, because payments were made on multiple dates. (*See* PECC Objs. at 18 ("[T]he property damage claims in this litigation encompass literally thousands of individual claims and, for the majority of those claims, the insurers would have issued multiple payments to their insureds."); *see also* Pls. Objs. at 13 & n.8 (noting that some of the claims Plaintiffs paid were for losses sustained during the September 11 Attacks, while others were for losses sustained during the cleanup after the September 11 Attacks).) In *Federal Insurance*, this Court adopted Magistrate Judge Maas's recommendation that September 11, 2001 is a reasonable date for the calculation of prejudgment interest on the plaintiff insurers' damages arising from

---

[7] Though Plaintiffs and the PECC argue that cases applying this principle were wrongly decided, and that the "earliest possible date the cause of action existed" should be the date of the property damage, that aspect of their argument is without merit. (Pls. Objs. at 15; PECC Objs. at 17–18.)

7

losses in New York State. To ensure consistency in this multidistrict litigation and to avoid the potentially complicated calculations that could be required if interest were calculated based upon the dates of individual payments, this Court finds that September 11, 2001 is a reasonable date from which to calculate prejudgment interest on Plaintiffs' claims arising from losses in New York State.

As to Plaintiffs' claims arising for losses outside of New York State, the Report correctly found that the date at which prejudgment interest accrues is determined by federal law. (Report at 10.) Under federal law, "[d]istrict courts have broad discretion to fix both the rate of prejudgment interest and the date when such interest begins." *Man Ferrostaal, Inc. v. M/V Akili*, 763 F. Supp. 2d 599, 614 (S.D.N.Y. 2011) (citing *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 520 (2d Cir. 1993); *Indep. Bulk Transport, Inc. v. Vessel*, 676 F.2d 23, 25 (2d Cir. 1982)). Where, as here, a plaintiff insurer has subrogation rights, "[s]ince [the insured] would no doubt be entitled to prejudgment interest from the date of [the insured's loss], it stands to reason that the plaintiff should have the same rights as to the full amount of that payment." *Atl. Mut. Ins. Co. v. Napa Transp., Inc.*, 399 F. Supp. 2d 523, 526 (S.D.N.Y. 2005).

In *Federal Insurance*, this Court adopted Magistrate Judge Maas's recommendation that the plaintiff insurers' damages arising from losses outside of New York State should be calculated from September 11, 2001. (*See Federal Insurance II* Report at 9–10; *Federal Insurance II* Order at 2–3.) This method of calculation is also consistent with the decision in *Certain Underwriters*, in which the court award9000ed the plaintiff reinsurers "prejudgment interest from the date of the [terrorist] attack." 811 F. Supp. 2d. at 75.

As the Report notes, neither Magistrate Judge Maas nor the court in *Certain Underwriters* conducted an analysis of when prejudgment interest should begin to accrue. (Report at 14–15.)

However, the Report does not articulate any factual basis for distinguishing either *Federal Insurance* from this case, and suggests that the calculations of Plaintiffs' damages for losses arising in and outside of New York State should be calculated in a consistent manner. (*Id.* at 14.) Accordingly, consistent with its calculation of prejudgment interest on Plaintiff's damages for losses arising in New York State, prejudgment interest on Plaintiffs' claims arising from losses outside of New York State should be calculated from September 11, 2001.

## IV.   CONCLUSION

Plaintiffs' motion for damages, (ECF No. 3628), is GRANTED. Plaintiffs are awarded damages of $527,598,884.69, in addition to prejudgment interest accruing from September 11, 2001 to the date judgment is entered. To the extent Plaintiffs' claims are for damages arising from losses in New York State, Plaintiffs are awarded simple interest at a rate of nine percent per annum. To the extent Plaintiffs' claims are for damages arising from losses sustained outside of New York State, Plaintiffs are awarded interest at a rate of 4.96 percent, compounded annually.

Dated: New York, New York
       June 25, 2018

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge