## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**In re:**

**03-MDL-1570 (GBD)(SN)**

**TERRORIST ATTACKS ON
SEPTEMBER 11, 2001**

### DEFENDANTS ABDULLAH BIN SALEH AL-OBAID, ABDULLAH ABDUL MOHSEN AL-TURKI, ADNAN BASHA, AND ABDULLAH OMAR NASEEF'S MOTION FOR RECONSIDERATION OF THE COURT'S SANCTIONS RULING

Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Abdul Mohsen Al-Turki, Adnan Basha and Abdullah Omar Naseef ("the Charity Officials"), through undersigned counsel, respectfully move this Court to reconsider a portion of its July 6, 2018 Opinion and Order ("Opinion and Order") [ECF No. 4043] granting in part the Plaintiffs' Executive Committee's ("PEC") motion for sanctions.  In particular, the Charity Officials seek reconsideration of the Court's Order granting the sanction of preclusion against the Charity Officials "from offering any testimony or further evidence" to "rebut admissible evidence offered by a party to establish these defendants' whereabouts on a particular date," *see* Op. and Order at 13, to correct a clear error or prevent manifest injustice.

After a thorough investigation with both the parties as well as the government entities tasked with passport control, Saudi government authorities have stated unambiguously that they do not retain or archive expired passports as a matter of policy and did not maintain any passports in the date range.  Saudi nationals may retain or discard expired passports themselves as they choose.  The Saudi government does have a log of entries and exits of Saudi nationals, which specifies the first point of arrival and last point of departure; such a log was not requested

in discovery, but Defendants can seek to obtain that information should the Court find that to be constructive and relevant to resolving issues in this action.

Because this matter has been clarified and the documents that Plaintiffs have been seeking simply do not exist, either with the Saudi Government or with the Charity Officials, they respectfully seek reconsideration of this narrow issue. Although this question could have been answered definitely at an earlier time without the need for motion practice, Defendants' counsel had made earlier inquiries of the Charity Officials and/or their intermediaries, but could not then obtain a direct answer from all of them or from the Saudi government. Therefore, Defendants do not seek reconsideration of the portion of the Court's order imposing reasonable costs of litigating the motion.

## **LEGAL STANDARD**

Rule 54(b) governs reconsideration of orders that do not constitute final judgments. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Unlike a final judgment, order, or proceeding, which allows reconsideration in limited circumstances only, *see* Fed. R. Civ. P. Rule 60, for non-final orders, Rule 54(b) "allows for reconsideration in the district court's equitable discretion." *Kaplan v. City of New York*, No. 14 CIV. 4945 (RJS), 2018 WL 2084955, at *5 (S.D.N.Y. Mar. 22, 2018). "[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982); *see also Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009) (granting motion to reconsider summary judgment order); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 341 (S.D.N.Y. 2012), as amended (Sept. 19, 2012) ("district court

retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal").

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see also Kaplan*, No. 14 CIV. 4945 (RJS), 2018 WL 2084955, at *5; *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (affirming district court's reconsideration upon movant's introduction of "controlling decisions or data . . . that might reasonably be expected to alter the conclusion reached by the court").

## ARGUMENT

The Charity Officials respectfully request reconsideration of the preclusion sanction issued against them on the basis of "the need to correct a clear error or prevent manifest injustice," *see Virgin Atl. Airways, Ltd.,* 956 F.2d at 1255, as the Opinion and Order made a mistake of fact when it assumed that these Defendants had made no effort to obtain their passports from the Saudi government, and issued a preclusion sanction.  *See* Order, at 13.  In particular, the Court concluded that these Defendants "could have contacted their codefendant [Saudi Arabia] and sought assistance in obtaining copies of the passports that the Court ordered them to produce. . . . the Court is not convinced that these defendants have made adequate efforts to obtain them."  *Id.*

In fact, counsel for these Defendants did contact the Embassy of Saudi Arabia not once but twice, making the specific requests that the General Directorate of Passports, Ministry of Interior, provide any information available as to their passports and "any related visa

information" for the time period of 1992 through 2002.  *See* A. Kabat letter to Embassy of Saudi Arabia (Dec. 1, 2017); A. Kabat letter to Embassy of Saudi Arabia (Oct. 10, 2017) (attached hereto as Exhibits 3-4 to Kabat Declaration).  These letters provided the full names, birth dates, and birth places for each of the four defendants.  *Id.*  However, counsel for Defendants received no substantive response to these requests.  *See* Kabat Decl., at ¶ 2.  Further, Defendants previously informed this Court that their counsel had made "a formal written request to the Saudi government" for the passports.  *See* Def. Opp., at 11 (ECF NO. 3763) (Oct. 20, 2017); *see also* Order, at 12-13 (same).  That statement alone, which this Court quoted, made clear that counsel for the Defendants had, in fact, contacted the Saudi government for the defendants' passports, contrary to the Court's mistaken assumption that the Defendants had not done so.  *See* Order, at 13 (stating that Defendants "could have contacted their codefendant…" for the passports). Nonetheless, Defendants are now providing this Court with their formal written requests to the Saudi Arabia government.

As the Court is aware, each of the Charity Officials is an elderly Saudi citizen who primarily speaks Arabic (two speak some English) and has no familiarity with the U.S. legal system.  Additionally, three of the Charity Officials – Drs. Naseef, Basha and Al-Turki – have been dealing with very serious health conditions.  *See* Basha Decl., at ¶ 6, Al-Turki Decl., at ¶ 9 (attached hereto as Exhibits 1-2 to Kabat Declaration), and Kabat Decl., at ¶ 3.  This, predictably, has made effective access to them very challenging, despite their good faith intention to successfully defend themselves in this litigation.  To remedy the language and communication issues that precipitated the Court's Opinion and Order, the Charity Officials have retained the law firm of Lewis Baach Kaufmann Middlemiss ("LBKM"), counsel for MWL and IIRO in this litigation and which employs numerous Arabic speakers and extensive experience with Saudi

clients, to assist them in complying with the Court's orders in this action.  LBKM lawyers have reached out directly to three of the Defendants and the son of one Defendant who is extremely debilitated, as well as to people in Saudi Arabia able to obtain definitive responses about the policies of Saudi Arabia with respect to passports and the position with respect to these Defendants' passports.  They have met in person with three of the Defendants.  They have now obtained responses, albeit at a later time than would have been optimal for dealing with these issues.

Under Rule 37, discovery sanctions must be "just" and "the severity of the sanction must be commensurate with the non-compliance." Fed. R. Civ. P. 37(b)(2)(A); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).  Courts within the Second Circuit consistently hold that inadvertent mistakes made without bad faith do not warrant harsh sanctions. "[E]rroneous representation[s]" or "misstep[s]" "are a far cry from the systematic abuse that serve[ ] as the basis for sanctions." *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169 (S.D.N.Y. 2004), *order clarified*, No. 00 CIV. 5141 (GBD)(JCF), 2005 WL 1514284 (S.D.N.Y. June 24, 2005) (holding that the appropriate remedy for such representations is "merely [to] require[ ] full disclosure of relevant information). "Incomplete or inaccurate discovery" that was "not the result of bad faith" do not warrant harsh sanctions.  *See Monroe v. The Geo Grp., Inc.*, No. 14-CV-3130 (ER)(RLE), 2016 WL 2932167, at *3-4 (S.D.N.Y. May 18, 2016) (awarding only monetary sanction in amount of $500 and declining to award attorneys' fees when failures of discovery was "not done in bad faith"); *see also In re A & M Fla. Properties II, LLC*, No. 09-15173 (AJG), 2010 WL 1418861, at *6 (Bankr. S.D.N.Y. Apr. 7, 2010) (absent evidence of bad faith on the part of counsel, harsh sanctions not appropriate); *Williams v. Saint–Gobain Corp.*, No. 00 Civ. 502, 2002 WL 1477618, at *2 (W.D.N.Y. June 28,

2002) (declining sanctions when there is no evidence of bad faith). Rather, "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

In this case – still in jurisdictional discovery against the Charity Officials where their contact with the United States is an issue in dispute – the sanction of precluding the Charity Officials from presenting evidence to rebut Plaintiffs' assertions as to their whereabouts is a harsh sanction that is incommensurate with their conduct here in the circumstances. As numerous courts in the Second Circuit have held, orders prohibiting a party from making specific claims or introducing certain matters into evidence are harsh sanctions, *see Li v. Ichiro Rest. Inc.*, No. 14-CIV-10242 (AJN)(JCF), 2017 WL 491654, at *1 (S.D.N.Y. Feb. 6, 2017), and such sanctions should be utilized "only in extreme situations." *Ho v. Target Constr. of N.Y. Corp.*, No. 08–CV–4750 (KAM)(RER), 2010 WL 2292202, at *3 (E.D.N.Y. June 3, 2010) ("Although Rule 16(f)—by its reference to Rule 37(b)(2)—permits the court to strike a party's pleadings, preclude it from offering evidence, and enter a default judgment against it, such remedies are 'harsh' and should be utilized 'only in extreme situations'") (quoting *S.E.C. v. Euro Sec. Fund*, No. 98–CV–7347, 2009 WL 2709316 (S.D.N.Y. Aug. 27, 2009)); *see also Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007) (preclusion of evidence is a "drastic remedy" only applicable "in situations where the failure to disclosure represents . . . flagrant bad faith and callous disregard of the rules"); *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988) (oversight in failing to supplement responses to city's discovery did not warrant preclusion of eyewitness testimony because "the extreme sanction of preclusion may be used by the district court, a judge . . . must consider less drastic responses"); *Dragon Yu Bag Mfg. Co. v. Brand Sci., LLC*, 282

F.R.D. 343, 344-45 (S.D.N.Y. 2012) (failure to follow discovery orders warranted monetary sanctions rather than preclusion of evidence because evidence was central to competitor's defenses and counterclaims, such that preclusion "would effectively amount to default judgment" and "a disposition without an adjudication on the merits").

In this case, it is clear that time was expended on ascertaining the whereabouts of the old passports in question and as such defendants are not contesting the award of reasonable fees incurred for the PEC to raise this issue to the court.  Defendants, however, are elderly[1] with no experience of the American legal system and a lack of knowledge of the administrative policies and procedures of the Saudi Interior Ministry, policies and procedures which are generally not published or publicly available.  In addition, communication has been difficult because initial counsel was not able to meet with or communicate with Dr. Al-Turki or Dr. Naseef in recent years, in contrast to the earlier phases of this litigation.  This is unfortunate, but in no way reflected lack of effort or intention on the part of counsel or on the part of defendants who either did not fully understand their obligations or were not able to obtain information from the government.  For these reasons, LBKM was brought into the case and were able to obtain the information relevant to the passport query.  Given the lack of bad faith and the Charity Officials' undertaking of remedial measures to provide Plaintiffs with the information that they seek via third party information from the Kingdom of Saudi Arabia (and the further good faith offer to seek the log information), they request that the preclusion sanction be overturned.

## CONCLUSION

For the foregoing reasons, the Charity Officials respectfully request that the Court reconsider granting to the PEC the preclusion sanction against Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Abdul Mohsen Al-Turki, Adnan Basha, and Abdullah Omar Naseef.

---

[1]Dr. Al-Turki is 78; Dr. Naseef is 79; Dr. Al-Obaid is 77; Dr. Basha is 69.

Respectfully submitted,

*/s/ Alan R. Kabat*

_____

Lynne Bernabei (LB 2489)
Alan R. Kabat (AK 7194)
Bernabei & Kabat, PLLC
1400 – 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
(202) 745-1942


Eric L. Lewis (EL 0038)
Waleed Nassar (*pro hac vice*)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Avenue, N.W, Suite 600
Washington, D.C. 20006
(202) 833-8900 (voice)
(202) 466-5738 (facsimile)

*Attorneys for Defendants Dr. Al-Turki, et al.*

DATED:  July 20, 2018