# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

August 8, 2018

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      The Plaintiffs' Executive Committees oppose the applications for Rule 26(c)(1) protective orders filed by Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Abdul Mohsen Al-Turki, Adnan Basha, and Abdullah Omar Naseef[1] ("the Charity Official Defendants") and by Defendant Soliman al-Buthe (all collectively, "Defendants") [ECF Nos. 4073 and 4074, respectively]. Because no Defendant has demonstrated the good cause essential for a Rule 26(c)(1) protective order to be granted, the Court should deny the Defendants' applications.

      For almost six months, Plaintiffs sought, without success, to schedule depositions of Defendants consistent with the terms of the Court's Order governing deposition protocols (ECF No. 3894, "Deposition Protocol"). On February 6, 2018, Plaintiffs sent defense counsel a list identifying sixteen priority party and nonparty witnesses whose depositions Plaintiffs sought to coordinate in blocks, consistent with Paragraphs 25 and 26. The list included each of the Charity Official Defendants and Al-Buthe. Of the sixteen witnesses, only one witness, Defendant Yassin Kadi, who presently resides outside of Saudi Arabia, complied with the Deposition Protocol and appeared in London pursuant to a notice under the terms of the Deposition Protocol. Notably, none of the Charity Official Defendants nor al-Buthe complied with the Deposition Protocol, and aside from evasive responses from their counsel and unverified claims in counsel's correspondence and in self-serving affidavits, none has supported his request with any verifiable information about the claimed need for a protective order.

---

[1] As explained below, the Plaintiffs will agree to withdraw, without prejudice, the deposition notice as to Defendant Naseef, mooting that defendant's application for a protective order.

The Honorable Sarah Netburn
August 8, 2018

### I. Charity Official Defendants

Defendants' assertion that Plaintiffs acted without consultation (Def'ts' Ltr Mtn at 1) is false. The extensive correspondence exchanged and additional telephone conferences referenced in the correspondence show that Plaintiffs engaged in extensive dialogue over a course of almost six months. *See* Exhibits A-K to Declaration of Robert T. Haefele, submitted with this opposition (hereafter "Exh. __") . But frustrated by being unable to receive basic information, for example, about dates of availability or whether the Charity Official Defendants even intended to participate in discovery, Plaintiffs resorted to noticing the depositions as authorized under ¶ 27 of the Deposition Protocol.

During the entire process, Defendants have ignored core terms of the Deposition Protocol regarding the location of depositions (which presume that depositions will proceed in New York, London, Madrid, or Rome, and find that locations referenced in U.S. State Department "Travel Warnings" may be inappropriate locations for depositions; Deposition Protocol at ¶ 31). Instead, they spend nearly all of the text of their argument rearguing the issue of the propriety of conducting depositions via videoconference – an issue that the Court has already considered and ruled on in the Deposition Protocol. They insist that provisions in ¶¶ 31 and 32, which authorize the parties *to agree* to conduct depositions at locations other than New York, London, Madrid, and Rome, and *to agree* to conduct depositions via videoconference, may be used to *require* another party to do so. Their position turns the Deposition Protocol upside-down, making the "Presumptively Acceptable Locations" provision of ¶ 31 meaningless and ignoring the requirement for *agreement* before deviating from those locales or conducting depositions via videoconference. In short, their approach would cause what was to be limited exceptions to swallow the general rule.

Without verifiable evidence to support the Defendants' alleged need for protection, the necessary good cause and the veracity of their claims cannot be shown. This is especially so here where Defendants' rationales for evading discovery have shifted and they have avoided responding even to the Court's inquiries. For example, as noted in the Sanctions Order, "not one of the Charity Officials ha[d] adequately complied" with the Court's directions at the September 7, 2017 conference. Sanctions Order, ECF No. 4043 at 8. Moreover, in the Sanctions Order, the Court directed Defendants Turki, Basha, and Naseef to produce certifications "describ[ing] the specific medical issues that have prevented them from fulfilling their discovery obligations in a timely manner" or, if incapacitated, "produce a competent sworn or affirmed certification from a qualified treating physician identifying the specific medical issues that have prevented the defendant from fulfilling his discovery obligations." *Id.* at 17. But the certifications that Defendants Turki and Basha ultimately produced [ECF Nos. 4063] fell woefully short by failing to explain what specific medical issues have prevented, or would prevent them, from meeting their discovery obligations – including being deposed at a Presumptively Acceptable Location. Basha claims he has had medical care in the past and has regular check-ups, but nothing indicates his health as an impediment. ECF No. 4063 at 3-5. Likewise, although Turki never raised his health as an impediment until almost six months after the Plaintiffs sought his availability, he now claims to have "cardiac issues" for which he has undergone surgery. However, nothing in his declaration supports his claim that he cannot attend a deposition at a Presumptively Acceptable Location. In fact, although his declaration incudes hearsay commentary and purports to attach unsworn "medical advice," the document (which presumably would still not be sworn evidence) is nonetheless conspicuously missing, both from ECF No. 4063 and when the document is again filed at ECF 4065.

The Honorable Sarah Netburn
August 8, 2018

Defendants' evasiveness and failure to demonstrate good cause are underscored also by their ever-shifting, in some cases contradictory, and equally unsupported and unverified rationales for being unable to attend their depositions at a Presumptively Acceptable Location.

**Naseef** – Under the circumstances as presented to Plaintiffs *for the first time* in Defendants' motion for a protective order, Plaintiffs will agree to withdraw, without prejudice, the deposition notice as to Defendant Naseef. That withdrawal should moot the request for a protective order as to Defendant Naseef. However, Plaintiffs reserve the right to re-notice Naseef's deposition should additional information become known that Naseef is able to participate. Just as other Defendants have done throughout the discovery process, Naseef has long made claims of infirmity unsubstantiated by any medical documentation or other proofs. Plaintiffs are agreeing to withdraw their notice, without prejudice, based primarily on the evidence of the medical certification filed under seal regarding Naseef's inability to participate based on his medical issues. But the fact of Naseef's inability to participate in his defense based on medical issues should have been disclosed to Plaintiffs and the Court long ago.

Moreover, the peculiar circumstances raise additional concerns that must be addressed. First, given Naseef's illness and his apparent longstanding inability to participate in his defense, Plaintiffs request an inquiry as to how representations have been made on Naseef's behalf and why the impact of his illness on his participation was not previously disclosed. Second, Plaintiffs ask that the Court require Naseef to produce to Plaintiffs status reports about his ability to participate on specific intervals to be determined by the Court; and that the Court require Defendant to produce, under seal, medical records regarding Naseef's current medical status and the likelihood of his improvement.

**Turki** – During the almost two months that followed the Plaintiffs' request for Turki's availability, no mention was made of any rationale for his inability to be deposed consistent with the terms of the Deposition Protocol. In fact, in June 8, 2018, Turki's counsel advised Plaintiffs that **Turki was available for deposition in London in September 2018, subject only to his ability to obtain a visa**. Exh. H. Letters from Turki's counsel on February 12 and 26 indicated no health or other obstacle to Turki's participation. Those letters just noted generally that the protocol allows the parties to agree to conduct depositions at other locales and via videoconference, that the witnesses would likely be unavailable during Ramadan, and generally that "one or more" of the Charity Official Defendants would be unable to travel due to "medical issues." Exh. B. No specifics identified which individuals, what medical issues might impede them, or why. On April 16, 2018, although Defendant Turki had not communicated with his counsel since 2016 (ECF No. 4063 at 7), his counsel represented that Turki "would have to be deposed by videoconferencing from Saudi Arabia, and would require an Arabic translator." Exh E. The letter offered no explanation or verifying support. But on June 8, days after Plaintiffs noticed Turki's deposition in London for July, he recanted and advised of Turki's September availability in London. Exh. H; *see also* Exh J (PECs' letter expressing concern that the waffling accounts of Turki's availability evidence that Turki and his counsel have not been in communication). Plaintiffs promptly re-noticed Turki's deposition on July 9, 2018, relying on his own counsel's statement that Turki was available for deposition in London in September. Exh. J. But on July 20, 2018, Turki's counsel flip-flopped again and advised that Turki was again unavailable in London and insisted that his deposition proceed in Saudi Arabia, citing Turki's declaration discussed above and the hearsay account contained therein. Exh. K and ECF No. 4063.

**Basha** – Basha's reasons for asserting his unavailability for deposition in London have been similarly erratic, again suggesting a lack of veracity. On February 26, 2018, Basha claimed with no explanation or verification, that he had to be deposed via videoconference from Saudi Arabia. Exh.

3

The Honorable Sarah Netburn
August 8, 2018

E.  On June 8, 2018, after Plaintiffs noticed his deposition in London, Basha claimed, again without explanation or verification, that "extensive medical treatment" prevented him from being deposed in September, and added that his deposition must be conducted in Saudi Arabia because "he is legitimately concerned about his safety . . . given the allegations against him and the prior designation of several IIRO branch offices. Exh. H.  That letter raised no other impediment to Basha's deposition proceeding in a Presumptively Acceptable Location other than in September.  On July 9, 2018, Plaintiffs responded, explaining that fear-based opposition to complying with the Deposition Protocol "d[id] violence to the language of the Deposition Protocol" and the Court's determination relating to the location of depositions. Exh. J.[2]  On July 20, 2018, almost six months after Plaintiffs inquired of his availability, and after his deposition was notice and re-noticed, Basha for the first time expresses concern that he may be unable to obtain a visa to travel (simply because he has previously been rejected a visa to travel to the United States).  Exh. K.  The comment indicated that he had made no attempt in the preceding months to attempt to get a visa, in defiance of the Court's January 31, 2018 order, which required the parties "to immediately begin making the necessary travel and visa arrangements." ECF No. 3895.  He also contends, again for the first time, that he cannot leave Saudi Arabia both because he, himself, has (unverified) "serious health issues" and is the sole caretaker for an aging parent.  *Id.*  Both of those claims are premised solely on Basha's self-serving statements (which keep changing); neither are accompanied by any verification; and we are offered no information about why, even if the claim about the parent's need for care is true to any degree, other family members cannot provide short term care.

**Obaid** – Defendant Obaid's application for a protective order is devoid of even a pretense of good cause.  His only assertion seems to be that his deposition should be ordered to occur in Saudi Arabia because the other Charity Official Defendants' depositions should proceed in Saudi Arabia, too.  It is telling as to the reliability of the claims on behalf of each of the other Defendants that, on April 16, 2018, counsel for each of the Defendants makes the indiscriminant, blanket statement (without any explanation or verification) that Obaid, along with Turki, Naseef, and Basha, all must be deposed by videoconferencing from Saudi Arabia.  Exh. E.  But then correspondence on June 8, 2018, Obaid's counsel advised that Obaid has a travel visa and is available for deposition in London in September. Exh. H.  On July 20, 2018, Obaid's counsel confirmed that Obaid is physically able and available for deposition in London. Exh. K.

In summary regarding the Charity Official Defendants (setting aside the issue of Naseef), neither Turki, nor Basha, nor Obaid has shown good cause for a protective order.  Particularly in light of their ever-changing stories and evasiveness, their own self-serving, non-expert opinions – which coincides with nearly every other Saudi witness seeking to require that their deposition proceed inside Saudi Arabia – and Turki's phantom, hearsay, presumably-unsworn "medical advice" document that Turki twice references but never produces, are not sufficient to demonstrate good cause.

## II.     Soliman Al-Buthe

Because Al-Buthe has similarly failed to demonstrate the requisite good cause necessary for a Rule 26(c)(1) protective order, his request, premised on his alleged (but verified) inability to travel due to a pending U.S. criminal indictment and his anticipated assertion of his Fifth Amendment privilege against self-incrimination, should be similarly rejected.  Notwithstanding Plaintiffs' February 6, 2018 request for Al-Buthe's availability (Exh. A) and Al-Buthe's counsel's initial response on February 13

---

[2] The ruse of Basha's "apprehension" about traveling outside Saudi Arabia is also questioned by facts uncovered by Plaintiffs' independent investigations that indicate that Basha traveled outside of Saudi Arabia after IIRO's designations, and that he sought to incorporate an IIRO office in Florida after the designations.

The Honorable Sarah Netburn
August 8, 2018

(Exh. C), Al-Buthe first suggests his unavailability two months later, in April 16, 2018 correspondence (Exh. F), but offers no reason or verification for Al-Buthe's alleged inability to travel. Although his counsel referenced in June 8, 2018 correspondence "travel restrictions" on Al-Buthe, he has never (including in support for this application) offered any support to verify any restrictions on Al-Buthe or that the alleged restrictions prevent him from traveling to any of the Presumptively Acceptable Locations identified in the Deposition Protocol. Counsel for al-Buthe has simply asserted throughout the process that – notwithstanding the Deposition Protocol language suggesting that Saudi Arabia may be an inappropriate location for conducting al-Buthe's deposition – Al-Buthe's deposition must be conducted in Saudi Arabia.

Al-Buthe's second reason for refusing to appear for deposition – because he intends to assert his Fifth Amendment privilege against self-incrimination – fails from the start. Set aside whether Al-Buthe (a Saudi citizen and resident who contends to have little connection with the United States) may even assert he is even afforded the Fifth Amendment privilege against self-incrimination; even if he is afforded the privilege, it does not permit him to refuse to appear for his deposition. Circuit courts have held with "great uniformity" that there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. *Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 599 (3d. Cir. 1980); *see also United States v. Carroll*, 567 F.2d 955, 957 (10th Cir. 1977) (stating circuits have held such "with great uniformity"); *Capitol Prods. v. Hernon*, 457 F.2d 541, 542 (8th Cir. 1972) ("There is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings."). Because the privilege is "determined on a question-by-question basis," it cannot be asserted before the questions are propounded. *Tedesco v. Mishkin*, No. 82 Civ. 8753 (DNE), 1986 WL 5633, at *1 (S.D.N.Y. May 8, 1986). Not only does it undermine a party's right to take oral deposition, asserting the objection before the questions are presented prevents a court from being able to determine whether a question ultimately is incriminating. *United States v. Awerkamp*, 497 F.2d 832, 836 (7th Cir. 1974) (requiring the individual to appear for questioning "enables the district judge in any subsequent proceeding to decide the merits of the claim of privilege"). Thus, to assert the privilege, Al-Buthe must appear and respond to all questions. *In Re Turner*, 309 F.2d 69, 70 (2d. Cir. 1962), *abrogated on other grounds by Shulz v. I.R.S.*, 395 F.3d 463 (2d. Cir. 2005) ("[L]ike any other witness, he must obey the process of the authority summoning him to appear and claim the constitutional privilege as particular questions are asked."); *see also Gatoil, Inc. v. Forest Hill State Bank*, 104 F.R.D. 580, 581 (D. Md. 1985) ("It is. . . entirely inappropriate for the privilege to be asserted as a general matter in bar of all discovery. . . [T]he proper procedure is for the deponent to appear for deposition and to assert the privilege in response to specific questions."); *Awerkamp*, 497 F.2d at 836 ("In responding to a summons, the individual summoned must present himself for questioning. . . .").

## Conclusion

Because Defendants have failed to demonstrate the good cause essential to obtaining Rule 26(c)(1) protective orders, their applications should be denied. In implementing Deposition Protocols, the Court carefully weighed the obligation of parties and nonparty witnesses to appear at Presumptively Acceptable Locations, with consideration given to the relative burdens and the risks to counsel. Nothing defendants have offered should disturb that balance to necessitate the requested protective orders.

The Honorable Sarah Netburn
August 8, 2018

                              Respectfully submitted,

COZEN O'CONNOR                  MOTLEY RICE LLC

By: */s/ Sean P. Carter*               By: */s/ Robert T. Haefele*
    SEAN P. CARTER                      ROBERT T. HAEFELE
    For the Plaintiffs Exec. Committees     For the Plaintiffs Exec. Committees

cc:    The Honorable George B. Daniels, via ECF
        All Counsel of Record via ECF