# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD) (FM) |

This document relates to: *All Actions*

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ABDULLAH BIN SALEH AL-OBAID, ABDULLAH ABDUL MOHSEN AL-TURKI, ADNAN BASHA, AND ABDULLAH OMAR NASEEF'S MOTION FOR RECONSIDERATION [ECF No. 4064] OF THE COURT'S SANCTIONS RULING [ECF No. 4031]**

August 8, 2018

Plaintiffs respectfully submit this opposition to Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Abdul Mohsen Al-Turki, Adnan Basha, and Abdullah Omar Naseef's ["the Charity Official Defendants" or "Defendants"] Motion for Reconsideration [ECF No. 4064, filed July 20, 2018] of the Court's Sanctions Ruling [ECF No. 4031, entered July 6, 2018, ("Sanctions Order")]. Defendants have sought reconsideration of only one aspect of that order – namely, the portion that precludes them "from offering any testimony or further evidence" to "rebut admissible evidence offered by a party to establish these defendants' whereabouts on a particular date." Defendants challenge nothing more.

Defendants' sole reasons for requesting discretionary reconsideration of the Court's order were known and considered by Defendants and the Court during the initial proceedings, or are immaterial to the consideration – namely, (1) that (Defendants wrongly contend) the Court incorrectly "assumed" that the Defendants had made no effort to obtain their passports (*see* Def'ts' Memo at 3-4), and (2) that the Defendants are elderly, speak little or no English, are unfamiliar with the U.S. legal system., and some of the Defendants are allegedly ill (*see id.* at 4-5). To the extent that Defendants have sought to comply with their discovery obligations at all, the core of the effort occurred only after the Court had already imposed the sanctions, and that was after the Court had offered the Defendants a generous last-minute admonition and lifeline to avoid sanctions. For the reasons outlined below, the Court should decline to reconsider its previous determination and the Sanctions Order should remain unchanged.

### I. The Charity Official Defendants' Rule 54(b) "Motion for Reconsideration" Is Procedurally Improper and Should be Denied.

The appropriate mechanism to challenge a magistrate judge's ruling on a pre-trial, non-dispositive matter, including discovery sanctions, is Rule 72(a), not Rule 54(b), which applies to judgments on multiple claims or involving multiple parties. *See Mullen v. City of Syracuse*, 582 F. App'x 58, 59-61 (2d Cir. 2014) (applying Rule 72(a) to a magistrate judge's order on a non-dispositive matter); *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 313 (S.D.N.Y. 2003) (Maas, J.) (stating that parties may file objections to a magistrate judge's rulings concerning non-dispositive matters pursuant to Rule 72); *Litton*

1

*Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220, 1224 (S.D.N.Y. 1991) (Rule 72(a) challenge to magistrate's order refusing to compel deposition); *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*, 2013 U.S. Dist. LEXIS 45949, at *14-19 (E.D.N.Y. 2013) (party using Rule 72(a) to challenge magistrate's ruling on non-dispositive discovery matters); *see also* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy."). As the deadline to file Rule 72(a) objections has passed, Defendants' have waived their right to raise objections to the order imposing sanctions and the Court should deny their "motion for reconsideration" in its entirety.[1]

> II. **The Motion Must Be Denied Because The Charity Official Defendants Motion Cannot Meet Even The Standard of Review That They Propose (Where the Court has Discretion to Reconsider a Previous Order Because it is "Consonant with Justice To Do So").**

> A. **The Court made no mistake in finding that the Charity Official Defendants made inadequate efforts to comply with their obligations to produce travel documents – including their passports.** As the Court has observed, discovery requests in the litigation obligated the Charity Official Defendants to produce documents regarding their travel to foreign countries (including specifically their passports). Sanctions Order, ECF No. 4043 at 2. After the Court's March 22, 2016 hearing concerning these Defendants' discovery efforts (*see* ECF No. 3253), the Court ordered the defendants to produce all of the requested documents or identify which were being withheld on the basis of privilege. *See id.*, 85:12-19; *see also* Sanctions Order, ECF No. 4043 at 3-4. In another hearing on September 7, 2017, the Court afforded these Defendants "one last opportunity to cure, to produce these documents," and admonished that "if they aren't produced within the next 30 days, [the Court would] invite a sanctions motion . . . ." Transcript of Sept. 7, 2017 hearing, ECF No. 3725, 11:17-24. Notwithstanding the multiple opportunities from the date the requests were served on August 22, 2013,

---

[1] Pursuant to Local Civil Rule 6.3, governing Motions for Reconsideration or Reargument, "[n]o affidavits shall be filed by any party unless directed by the Court." Because the Charity Official Defendants received no direction (or permission) from the Court to file affidavits, Plaintiffs object to each of the affidavits submitted by the Charity Official Defendants purportedly in support of their "motion for reconsideration" and ask that they each be stricken.

2

until the October 2017 deadline that the Court imposed at the close of the September 2017 hearing, the Charity Official Defendants have never produced the requested documents regarding their travel to foreign countries (including specifically their passports).

The Charity Official Defendants contend, incorrectly, that the Court's Sanctions Order is fundamentally flawed because the Court erred when it "assumed" that the Defendants had made no effort to obtain passports from the Saudi government. Def'ts' Memo at 2. They argue that the Court may, in its discretion, reconsider its previous order because it is "consonant with justice to do so," *id.*, and that, in this instance, reconsideration of the Court's imposition of a narrowly tailored preclusion sanction is warranted based on "the need to correct a clear error or prevent manifest injustice." *Id.* at 3. According to the Defendants, the Court was mistaken when it "assumed that these Defendants had made no effort to obtain their passports from the Saudi government." *Id.*

However, Defendants are wrong to suggest that the Court did not consider their alleged efforts to inquire of the Saudi government. Defendants themselves observed (*see* Def'ts' Memo at 4) that , not only was the Court aware of Defendants' contention that they had made inquiry to the Saudi Embassy in Washington, D.C., about their passports, but the Court quoted that assertion within its Sanctions Order (*see* ECF No. 4043 at 12-13). For good reason, though, the Court viewed the Defendants' efforts with skepticism, explaining that "the Court is highly skeptical of the suggestion that [the Charity Official Defendants] are entirely unable to obtain copies of the passports . . . ." ECF No. 4043 at 13.

In fact, review of the documents that the Charity Official Defendants produced with their motion verify the Defendants' intentional lack of diligence and underscore why the Court's skepticism was well placed. The two letters to the Saudi Embassy, dated October 10, 2017 and December 1, 2017, on which Defendants rely to demonstrate their adequate efforts to obtain the requested travel documents, actually prove their lack of diligent effort – and, in fact, suggest that the Defendants' efforts were calculated to fail. First, the request to the Saudi Embassy in Washington, D.C., was initiated on

October 10, 2017, more than 30 days after the Court's admonition during the September 7, 2017 hearing. Second, review of the two late letters (the only two letters ever sent to obtain documents responsive to the requests for travel documents), indicate that they were designed to receive no response (and they got no response). The letters were from a U.S. person (Alan Kabat), requesting passport information for multiple prominent Saudi citizens. Nowhere in the letters do they indicate the relationship between Mr. Kabat and the passport owners – *i.e.*, the letters do not mention that Mr. Kabat is a U.S. attorney representing the passport owners in U.S. litigation. Nor do the letters explain the purpose of the inquiry – *i.e.*, that a court has ordered that the passports be requested and produced. Nor is there any indication anywhere in any document included with Defendants' motion that the two individuals addressed at the Saudi Embassy were proper authorities to receive or respond to such requests. Even assuming the requests were made to the proper authorities, it is no surprise that letters perceived to be from a random U.S. national asking the Saudi government to produce passport information for multiple prominent Saudi Nationals would go unaddressed.[2]

If requests of this nature were to be calculated to obtain the requested travel documents in a timely manner to avoid sanctions, they should have been made in a timely manner demonstrably calculated to succeed. Assuming that the requests were directed to proper authorities to obtain travel documents, responses would likely have been more forthcoming if each passport owner had made individual requests for their own passports. That is especially true here, where each passport holder, for a significant period of his professional life, enjoyed prominence as a senior government official. In addition to holding officer positions in the Saudi charities, Defendants Obain, Turki, and Naseef all held

---

[2] The approach undertaken by Mr. Kabat on this issue only underscores Plaintiffs' concerns that that his clients were not participating during these periods.

other senior positions in the Saudi government.³  Undoubtedly, requests made by individuals of such distinction within the Saudi government would be unlikely to have gone unaddressed (unless by design).

Likewise, the requests would have been substantially more likely to have received a response (whether requested by the passport holders or Mr. Kabat) if the requests included an explanation of the relationship of the requester to the passport (e.g., if Mr. Kabat explained he was a U.S. lawyer representing the passport holders and included with the request an authorization to release the information), explained the purpose for each request, expressed the urgency, and explained that a court had ordered that the passports must be produced or the parties faced sanctions.

Finally, as the Court observed (*see* Sanctions Order, ECF No. 4043, at 13), counsel for the Charity Official Defendants could have approached counsel for co-defendants in the litigation to obtain the information.  As the Court indicated, they could have asked counsel for the Kingdom of Saudi Arabia to have the Kingdom intervene to satisfying the request.  In addition, the Charity Official Defendants could also have communicated with co-counsel representing the purported charities for which they worked to obtain responsive information about the trips the Charity Official Defendants took on behalf of the charities.  Although limited, documents the charities produced in discovery indicate that they track and report about delegations visiting foreign countries (*see* ECF Nos. 3828 at 11-13; *see also* ECF No. 3829-12 at 3); but the Charity Official Defendants produced no such documents and there is no indication that the Charity Official Defendants sought to obtain the information for production.

Because no effort at all was made to obtain the passports before more than thirty days after the Court's September 7, 2017 admonition, and the only effort after that time was wholly inadequate, the Court was correct to view the Defendant's efforts with skepticism.

---

³ Defendant Obaid has been a member of the Saudi Supreme Counsel of Islamic Affairs, the Saudi Majlis-ash-Shura Council (the legislative body of the Saudi government that advised King Fahd), Assistant Undersecretary for Administrative Affairs in the General Presidency of the Two Holy Mosques, and served as the Saudi Minister of Education. Defendant Turki has been a member of the Saudi Council of Ulema (senior counsel of scholars), the Supreme Council for Islamic Affairs, the Saudi Council of Ministers, and served as Minister of Islamic Affairs and Waqf, Call and Guidance.  Defendant Naseef has been a member of the Saudi Majlis-ash-Shura Council.

**B.     The miscellaneous other reasons that the Defendants offer for their failure to comply with their discovery requests were all long-known to the parties and the Court and/or are immaterial to their efforts to comply.**  The other reasons the Defendants offer for their non-compliance include that they are elderly, speak little or no English, have little familiarity with the U.S. legal system, and some are ill.  Def'ts' Memo at 4-5.  But none of those factors, even if true, warrant the Court's reconsideration.  The parties and the Court have long been aware of the Defendants' age and their lack of familiarity with the English language and our legal system.  Indeed, in a hearing on April 26, 2011, attended by the Charity Official Defendants' counsel, Magistrate Judge Maas admonished the defendants about the need to take great pains to explain to foreign defendants their obligations under the U.S. legal system.[4]  Nothing about those factors, even if true, indicates that the Court's determination was in error, let alone unjust.  Over the span of more than five years from the time Plaintiffs served discovery in August 2013, until the Court's deadline for production after its final lifeline admonition in September 2017, the Charity Official Defendants had more than ample opportunity to produce the discovery at issue, regardless of their age, English proficiency, personal familiarity with their discovery obligations, or even their alleged illnesses (which have not been shown to have affected their ability to participate in discovery over the five year course).

**C.     The Preclusion Sanction was properly and narrowly tailored.**  The only aspect of the order questioned (precluding evidence to rebut admissible evidence to establish these defendants whereabouts), should have no impact on these Defendants unless they have failed to comply with their

---

[4] Judge Maas instructed the defendants, "[t]here were always difficulties when you are dealing with foreign clients, particularly when their judicial systems are very different than ours and the concept of discovery may be somewhat alien, not to mention the language difficulties. . . . I do think this is the type of stage of the case where you or somebody on your behalf needs to sit down with the folks who are responding to these requests and hold their hand to a certain extent and describe in greater detail what needs to be searched for."  Transcript of April 26, 2011 hearing at 19:19-23, 20:4-8; *see also* Transcript of June 23, 2011 at 4:9-12 ("I know at one of the last two conferences, I think it was the April 26 one, I said we are really at the stage where you need to sit down with your clients in Saudi Arabia and hold their hands while they go through [the discovery requests]").

discovery obligations. At present, Defendants have asserted that, though belated, they and "government entities" have engaged in a "thorough investigation" and have uncovered no passport information.[5] If no information exists, then the Defendants have nothing more to rely on to rebut admissible evidence about their whereabouts.

In fact, the preclusion is all the more appropriate because, throughout the discovery process, Defendants have been intentionally unresponsive in offering even testimony about their travel information. As the Court previously observed (*see* Sanctions Order, ECF No. 4043 at 12), although the discovery requests have always sought information about all travels (not just travels to the United States) and the Court's orders have instructed the defendants to produce "all documents responsive to the [PECs'] requests (*id.*, citing ECF No. 3763 at 10), Defendants have consistently offered only limited information about their travels to the United States. Only in their declarations offered in support of their motion for reconsideration, first received by Plaintiffs on July 20, 2018, nine months after the Court's lifeline deadline for Defendants to respond, do two of the Defendants provide any information about their travels other than to the United States – and that information is hardly fulsome or illuminating. Defendant Basha declares simply that "[i]n the years before [his] retirement, [he] traveled to various countries where IIRO has operations." ECF No. 4065 at 4. Defendant Turki declares that [he has] visited a number of countries in Western Europe, including a visit to attend King Abdullah's World Conference on Dialogue in Madrid. [He] also traveled to numerous other countries with substantial Muslim populations where MWL has activities while [he] was Secretary General in connection with [his] duties at MWL . . . ." *Id.* at 9. While even these offerings are nearly a year late, they are nonetheless insufficient to respond to the Plaintiffs' discovery requests.

---

[5] Although Defendants assert in their Memorandum that government authorities have "stated unambiguously that they do not retain or archive expired passports," nothing in the evidence presented for the Court, either previously or belatedly in support of this motion, demonstrates the truth of that statement or that other related information is not available from the Saudi government. Indeed, though Defendant have provided copies of the letters requesting the passports, they have explained unambiguously that they have received *no substantive response* to those inquiries. *See* Def'ts' Memo at 4.

7

While Defendants should be required to produce any additional information responsive to Plaintiffs' discovery requests, their "too little, too late" attempt to justify their longstanding discovery noncompliance underscores the propriety of the Court's Sanction Order and needs no revision. For example, although unsupported by evidence in the record for the motion, Defendants reference in their memorandum that Saudi government authorities have a log of entries and exits of Saudi nationals that specifies the first point of arrival and last point of departure. First, that information should have been produced years (if not at least many months) ago. Second, while the Defendants are obligated to produce the information forthwith, it falls far short of their obligations and cannot be considered a viable substitute for the passports or other travel documentation. While the log entries may indicate information about each Defendant's ingress to and egress from Saudi Arabia, they do not offer complete information about where the Defendants travelled once outside of Saudi Arabia.

### III. The Defendants Systematic Abuse of Discovery Continues to Warrant the Courts' Sanctions.

Notwithstanding the Defendants' argument that their conduct amounts to "missteps" that are "a far cry" from "systematic abuse" (*see* Def'ts' Memo at 5), the Defendants' conduct before, during, and after the sanctions proceedings underscore the systemic nature of their abuse and the propriety of the sanctions imposed. Throughout the discovery period and continuing up to the present, Defendants have engaged in the all-to-familiar pattern of demonstrating a complete lack of regard for their discovery obligations – spanning many years – and showing no degree of seriousness until after extensive motion practice and sanctions have been imposed. Much of the Defendants' misconduct has already been described in Plaintiffs' motions for sanctions, which resulted in sanctions being imposed.

But even more, the Defendants' motion for reconsideration and their submissions in support thereof indicate more so that, even long before February 6, 2018 (when Plaintiffs began conferring with the Charity Official Defendants' counsel to schedule their depositions), at least some of the Defendants had not been participating in discovery – and their counsel continued to make representations on their

8

behalf. On February 6, 2018, the Plaintiffs Executive Committee solicited from counsel for the Charity Official Defendants' their availability for depositions. Although their counsel was pointedly asked on repeated occasions about his ability to communicate with his clients and their commitment to participating in their defense, he consistently evaded responding to the inquiries and never once intimated what Defendants admitted in their motion–namely that their counsel has been completely unable "to meet with or communicate with Dr. Al-Turki or Dr. Naseef in recent years . . . ." Def'ts' Memo at 7. In Defendant Turki's declaration filed in support of the motion (ECF No. 4065, at 7-9), he acknowledges that he has had no communication with his counsel since he left Muslim World League (in 2016) until July 9, 2018 (*the first business day after the Sanction Order*). *Id.* at 7; *see also* declaration dated 26 July 2018, filed under seal, regarding Dr. Naseef. But despite having had no recent contact with those Defendants and without acknowledging the lack of contact, counsel for those Defendants nonetheless continued to make representations on their behalves about their lack of responsive documents and their (un)availability for deposition. *See, e.g.*, ECF Nos. 4089, Exhibits A-E, G, H & J to Haefele Declaration submitted in Opposition to Motions for Protective Orders (series of letters exchanged between PECs and Alan Kabat conferring to schedule depositions of the Charity Official Defendants).

Under the circumstances, Plaintiffs request that the Court hold a hearing at which counsel who has long represented the Charity Official Defendants – Mr. Kabat – be required to attend to answer inquiry about the period of time that he was not in contact with any Charity Official Defendant but nonetheless made representations specifically on their behalf. Though it is not feasible to summarize here the various instances where counsel for the Charity Official Defendants made such representations, in addition to the representations and omissions throughout the negotiations for deposition availability,[6] Plaintiffs note the following several recent examples: on July 2, 2017, counsel for Defendants Turki and

---

[6] *See, e.g.*, ECF No. 4089, Exh. D, Feb. 26, 2018 Correspondence from Alan Kabat on behalf of Defendant Turki during the period Defendant Turki was not in contact with his counsel, in which Mr. Kabat represents that Dr. Al-Turki "would have to be deposed by videoconferencing from Saudi Arabia, and would require an Arabic translator."

Naseef provided supplemental discovery responses, making specific representations on behalf of those Defendants ("We understand that the individual defendants do not themselves have documents relating to their work at the charities, as those documents remained with the charities after their retirement. Further, since they travelled on official passports, which the government retained after each trip, they do not have personal possession of those passports."); on September 26, 2017, counsel for Defendant Turki provided supplemental discovery responses (i.e., another supplemental document indices specific to Defendant Turki).  Given the lack of candor exhibited in his representations regarding those defendants, Plaintiffs ask that the Court ask counsel for the Charity Official Defendants appear to answer inquiries to clarify:  whether each of the Charity Official Defendants are or are not participating in discovery; the periods when he had no contact with each of the Charity Official Defendants; how he was able to respond in discovery on behalf of Charity Official Defendants during any period he was not in contact with the Defendant, including, for example, how he was able to assert that a Defendant did or did not have responsive documents (including passports), if he had no contact with the Defendant; and how he was able to assert, while not in contact with a Defendant, that the Defendant was unable to travel or unavailable for deposition.

## Conclusion

Because the Charity Official Defendants have for years, up to and including the past eight months, continued to exhibit a pattern of systemic abuse of the discovery process, tending to their discovery obligations only after extensive motion practice and sanctions have been imposed, and because no factor identified in their motion demonstrates that the Court's Sanctions Order was unjust, not commensurate, or otherwise erroneous in any manner, the motion should be denied and the Sanctions Order should remain unchanged.

Dated:  August 8, 2018

Respectfully Submitted,

| | |
|---|---|
| /s/ Robert T. Haefele | /s/ Sean P. Carter |
| Jodi Westbrook Flowers, Esq. | Sean P. Carter, Esq. |
| Robert T. Haefele, Esq. | J. Scott Tarbutton, Esq. |
| MOTLEY RICE, LLC | COZEN O'CONNOR |
| 28 Bridgeside Boulevard | 1650 Market Street, Suite 2800 |
| P.O. Box 1792 | Philadelphia, PA 19103 |
| Mount Pleasant, SC 29465 | Tel: (215) 665-2000 |
| Tel: (843) 216-9000 | |
| | |
| /s/ James P. Kreindler | /s/ Jerry S. Goldman |
| James P. Kreindler, Esq. | Jerry S. Goldman, Esq. |
| Andrew J. Maloney, III, Esq. | ANDERSON KILL P.C. |
| KREINDLER & KREINDLER, LLP | 1251 Avenue of the Americas |
| 750 Third Avenue, 32nd Floor | New York, NY 10020 |
| New York, NY 10017 | Tel: (212) 278-1000 |
| Tel: (212) 687-8181 | |

Plaintiffs Executive Committees on behalf of all Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the accompanying document, Plaintiffs' Memorandum of Law in Opposition To Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Abdul Mohsen Al-Turki, Adnan Basha, And Abdullah Omar Naseef's Motion For Reconsideration [ECF No. 4064] Of The Court's Sanctions Ruling [ECF No. 4031], was filed electronically this 8th day of August 2018. Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

*/s/ Robert T. Haefele*
Robert T. Haefele, Esq