# EXHIBIT 2

# HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP

112 MADISON AVENUE
NEW YORK, NEW YORK 10016-7416
www.hanlyconroy.com

ANDREA BIERSTEIN (NY & MA)
 (212) 784-6403
JAYNE CONROY (NY, DC & MA)
 (212) 784-6402
CLINTON B. FISHER (NY & DC)
 (212) 784-6446
PAUL J. HANLY, JR. (NY & TX)
 (212) 784-6401
STEVEN M. HAYES (NY)
 (212) 784-6414
THOMAS I. SHERIDAN, III (NY)
 (212) 784-6404

TELEPHONE (MAIN)
(212) 784-6400

TELECOPIER
(212) 784-6420

EMAIL
abierstein@hanlyconroy.com

May 18, 2006

Hon. Richard Conway Casey
United States District Judge, Southern District of New York
United States Courthouse
500 Pearl Street, Room 1350
New York, New York 10007-1312

Re:   *In re Terrorist Attacks of September 11, 2001*, MDL 1570

Dear Judge Casey:

This letter constitutes the response of the Plaintiffs' Executive Committees to the May 4, 2006, letter motion of Defendants' Executive Committee ("DEC") seeking a protective order with respect to all discovery materials produced by all defendants. The DEC's motion should be denied in all respects, as defendants have failed to make even the most minimal showing of the need for such an order, as required under Rule 26(c).[1]

The law is settled that a party seeking a protective order under Rule 26(c) must demonstrate "good cause." F.R.C.P. 26(c); *see also Gambale v. Deutsche Bank A.G.*, 377 F.3d 133, 142 (2d Cir. 2004) ("The party seeking a protective order has the burden of showing that good cause exists for issuance of that order."), *quoting In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.). Moreover, the Second Circuit has held that "if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Gambale*, 377 F.3d at 142. A showing of good cause requires the DEC to demonstrate that the specific information sought is confidential and that the harm caused by the disclosure outweighs the needs of the parties and the rights of the public. *See* Rule 26(c); *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 364, 354-357 (S.D.N.Y. 1996).

---

[1] Defendants' inability to satisfy the requirements of Rule 26 may explain their insistence on presenting their motion in abbreviated letter brief form, rather than through a formal noticed motion, as envisioned by Rule 26. *See* FRCP 26(c) (the Court may grant a protective order "upon motion by a party or by the person from whom discovery is sought . . . ."). This rule ensures not only full briefing of the issue, but, equally important, a full and open record of the motion. Moreover, because this Court has now designated a Magistrate Judge to handle discovery disputes, plaintiffs respectfully suggest that this matter be referred to Magistrate Judge Maas for full briefing and decision.

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES <sup>LLP</sup>

Hon. Richard Conway Casey
May 18, 2006                                                                                                       Page 2

The DEC makes only the most cursory attempt at demonstrating good cause. Although there are scores of defendants in this case, the DEC makes no attempt to differentiate among banks, charities, and individuals, or between persons and entities that have been designated by the federal government as global terrorists and those who have not been so designated. It should be readily apparent that the need for confidentiality, if any, for a bank is rather different than for a charity or for an individual. Moreover, the public's right (and need) to know may be greater, and the right to confidentiality, if any, less, with respect to designated global terrorists. The DEC not only fails to distinguish among the defendants and to tailor its request for a protective order to the particular circumstances of particular defendants, it provides no justification whatsoever for any category of defendant to designate any document as confidential other than the most generic statement that some documents "may contain sensitive or confidential information." *See* DEC Letter at 1. Such a vague assertion, without more, is plainly insufficient to demonstrate good cause. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15 (2d Cir. 1992) (affirming refusal of district court to enter protective order where party seeking order failed to demonstrate good cause).

Not only has the DEC failed to demonstrate that any defendant has a need for confidentiality, the DEC claims it would be too burdensome for defendants even to identify which of their documents ought to be marked confidential. Thus, the DEC in effect concedes that it cannot meet its burden, but claims it should not have to; it asks, rather, that this Court disregard Rule 26(c) altogether and limit plaintiffs' use of *all* documents produced in this litigation, regardless of whether any credible claim of confidentiality could be made by any defendant as to any document. Even where the parties have *agreed* to such an "umbrella" protective order, such agreements are "disfavored" and the ordinary presumptions against modification do not apply. *See Bayer A.G. v. Barr Laboratories, Inc*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995). There is no basis for this Court to disregard Rule 26 and impose such an order over the objections of the plaintiffs.

The protective order requested by the DEC also fails to distinguish between documents produced in this litigation, but not relied on by the Court in any proceeding or adjudication, and documents made part of the record in this Court. Indeed, the proposed order requires the filing of documents under seal and specifically extends the cloak of secrecy to "testimony, conversations, or presentations by parties or counsel to or in court." This is improper and, indeed, the error may be of constitutional dimension. As the Second Circuit has held: "The public has a common law presumptive right of access to judicial documents, and likely a constitutional one as well." *Gambale*, 377 F.3d at 140. In *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995), the Second Circuit explained the importance of this common law right:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system....As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP

Hon. Richard Conway Casey  
May 18, 2006                                                                                                           Page 3

Moreover, the Second Circuit has further held that "the presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'" *Gambale*, 377 F.3d at 141.  In addition, as the Second Circuit has acknowledged, numerous courts have recognized a First Amendment right of access to documents used in court proceedings.  *Id.* at 140 n.4, *citing Hartford Courant Co. v. Pellegrino*, 371 F.3d 49, 57 (2d Cir.2004); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir.1997); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir.1991); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir.1983); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir.1984).

The DEC relies on *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), but that case does not support its position.  To begin with, *Seattle Times* did not involve an "umbrella protective" issued without any showing of good cause. To the contrary, the protective order in *Seattle Times* applied to a specific category of documents as to which a specific defendant had made a showing of a need for confidentiality.  *See* 467 U.S. at 24-27.  Nothing in the *Seattle Times* case authorizes this Court to dispense with a defendant-specific and document- (or at least category-) specific showing of good cause before limiting plaintiffs' use of materials produced in discovery.  Rather, the holding in *Seattle Times* is specifically predicated on such a showing.  467 U.S. at 37.  Second, to the extent that the DEC's proposed protective order would restrict access to materials submitted to the Court in connection with any adjudication, *Seattle Times* is wholly inapplicable; indeed, in that case, the Supreme Court expressly distinguished material produced in discovery, but not yet admitted, from material used in actual court proceedings. *See* 467 U.S. at 33.

The DEC's proposed protective order would bar the press, the public, and the government from learning of evidence obtained by plaintiffs that may demonstrate defendants' culpability for the worst terrorist attacks in U.S. history.  It is hard to imagine an issue of greater interest to the American public.  The public is surely entitled to examine the evidence submitted to this Court in connection with the determination whether particular defendants are, or are not required, required to answer for their conduct in a United States court of law.  The importance of public access will be even greater when the Court is called upon to adjudicate the merits of plaintiffs' claims, whether by motion for summary judgment or at trial.  Indeed, defendants, who have repeatedly protested their innocence and complained to this Court that plaintiffs have publicly accused them of supporting terrorists without being required to come forward with their evidence, should welcome public scrutiny of this evidence.  Public interest in this case cannot be avoided by hiding the evidence that defendants provide in discovery, still less by precluding plaintiffs from sharing *any* information they obtain with the public while leaving defendants (including those designated by the U.S. government as terrorists or supporters of terrorism) free selectively to make whatever disclosures they choose.  Moreover, the U.S. government and the public, no less than plaintiffs, has an interest in identifying and prosecuting terrorists and their financial sponsors in order to ensure the safety and security of Americans at home and abroad.  The public interest may *require* plaintiffs to turn over to the government information obtained in discovery that can assist in this endeavor.

The Court should be aware that plaintiffs do not suggest, and never have suggested, that no

HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES <sup>LLP</sup>

Hon. Richard Conway Casey
May 18, 2006                                                                                                    Page 4

protective order restricting use of or access to documents produced in discovery would ever be appropriate in this case. On the contrary, plaintiffs have shown their willingness at all times to enter into specific agreements with specific defendants or even specific categories of defendants recognizing the confidentiality of certain types of documents. The DEC, however, refused even to negotiate with us on this point. Similarly, plaintiffs sought to reach a compromise on the scope of a protective order, but again, the DEC refused to negotiate, insisting that nothing less than absolute protection of all documents would suffice. Thus, the only protective order the DEC is willing to entertain is the one submitted to this Court on this motion, for which, as demonstrated above, the DEC has failed utterly to demonstrate good cause.

In the absence of any showing of "good cause," the absence of any showing by any defendant of a need for confidentiality, and the absence of any distinction among different categories of defendants, plaintiffs respectfully suggest that the DEC's request for a protective order should be denied in its entirety.

Sincerely,

Andrea Bierstein
for the Plaintiffs' Executive Committees

cc:     Michael Kellogg, Esq.