```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re:   TERRORIST ATTACKS ON            03 MDL 1570 (GBD)
         SEPTEMBER 11, 2001
                                         Telephone Conference
------------------------------x

                                         New York, N.Y.
                                         April 11, 2018
                                         11:00 a.m.

Before:

         HON. SARAH NETBURN

                                         Magistrate Judge


         APPEARANCES


MOTLEY RICE LLC
     Attorney for Plaintiffs Executive Committee
BY:  ROBERT T. HAEFELE
     JODI W. FLOWERS


KREINDLER & KREINDLER
     Attorneys for Plaintiffs
BY:  JAMES P. KREINDLER


COZEN O'CONNOR
     Attorneys for Plaintiffs
BY:  SEAN P. CARTER
     J. SCOTT TARBUTTON


ANDERSON KILL P.C.
     Attorneys for Plaintiffs
BY:  JERRY S. GOLDMAN


MARTIN F. MCMAHON
MICHAEL GOLDSTEIN
     Attorney for Defendant Wael Jeliadan
```

1           (Case called)

2           THE COURT: Good morning. This is Judge Netburn. I
3  am hopeful that we have Mr. McMahon on the line.

4           MR. McMAHON: Yes, your Honor, you do, with my
5  associate Michael Goldstein.

6           THE COURT: I am here with my law clerk and with a
7  court reporter. I am going to repeat the admonitions that I
8  began with yesterday. I am going to ask whoever intends to be
9  speaking to make an appearance for the record. If there are
10 other people on the line but they don't intend to be speaking,
11 there is no need for them to make an appearance. If at some
12 point during the conference those people decide that they do in
13 fact want to speak, they should state their appearance at that
14 time.

15          In addition, every time you speak, if you can identify
16 yourself so that the court reporter can appropriately attribute
17 your statement to you.

18          Lastly, keep in mind that when I hold these telephone
19 conferences, I do so as a courtesy to the parties. You don't
20 have the benefit of visual cues to know when you should start
21 talking or when somebody is still speaking. So please before
22 you speak take a pause to make sure that the person who spoke
23 before you has completed his or her thought so that the court
24 reporter can take down one person at a time and we can all be
25 heard.

1        With that, let me ask who is here on behalf of the
2    plaintiff's executive committee.
3        MR. HAEFELE:  Good morning, your Honor.  Robert
4    Haefele from Motley Rice for the plaintiffs executive
5    committee.  I also have on the phone with me Sean Carter and
6    Scott Tarbutton, Jim Kreindler, Jerry Goldman, and Jodi
7    Flowers.
8        THE COURT:  Thank you.  Mr. McMahon, you have stated
9    your appearance already.
10       MR. McMAHON:  Yes, your Honor.  My associate is here,
11   Michael Goldstein, but I don't anticipate him being involved in
12   discussing the matter with you.
13       THE COURT:  The purpose of this call is to discuss
14   what the next steps should be in connection with the sanction
15   that was imposed by Judge Maas several years ago.  We now
16   finally have the license from OFAC which allows payments to be
17   made.
18       Let me ask Mr. Haefele in the first instance -- I'm
19   looking at the second page of this license under section 1
20   paragraph (b), right beneath the charts which sets forth the
21   sums that are owed -- what do you interpret that paragraph to
22   provide for and what do you believe in light of that paragraph
23   you think the next steps should be?
24       MR. HAEFELE:  Your Honor, the chart on the second page
25   of the license I think indicates I believe the values that

1   Magistrate Judge Maas awarded in sanctions and also the amounts
2   that Judge Daniels ordered in the order adopting the values.
3   It is a license that allows Mr. Jeliadan to make the payment
4   and allows the various law firms to receive the payment.
5            In light of the history of the litigation and in light
6   of the history of the more recent back-and-forth, our view is
7   that either Mr. Jeliadan makes immediate payment based on the
8   orders of the court or that there should be some sanction
9   imposed, including a sanction of either contempt or default.
10           THE COURT:  Do you have a sense, and it's okay if the
11  answer is no, of from where this money will come?
12           MR. HAEFELE:  Not really, your Honor, other than it
13  will come from Mr. Jelaidan.  Here is the concern we have, your
14  Honor.  This history with Mr. Jelaidan shows a continuing
15  pattern of willful noncompliance with the court's orders,
16  testing the court's authority, robbing the plaintiffs of their
17  time and resources essential to prosecute the case and testing
18  the boundaries of what the defendants can do to evade discovery
19  without meaningful repercussions.
20           Mr. Jelaidan has found, presumably, finances to pay
21  Mr. McMahon.  Regardless of where the money does or doesn't
22  come from, in other words, regardless of where he finds the
23  money to do it, he finds himself in a position where, through
24  no fault of the plaintiffs but all the fault of him, with a
25  sanctions order imposed on him.

1      To evade the court's authority and essentially thumb
2 his nose at the court, it confounds the plaintiffs that he
3 would be permitted to get away with that.  Our concern is with
4 reference to the rest of the defendants, that there are no
5 repercussions if the rest of the defendants were to do the
6 same.
7      Finally, I would say that he has found himself in the
8 past to have willfully disregarded his discovery obligations in
9 bad faith.  He was sanctioned, and he has now for years shown
10 essentially no effort to comply.  When he was finally
11 questioned about it, the last reasonable obstacle for his
12 compliance is gone.  In other words, he has gotten the OFAC
13 license and essentially has confirmed that he never anticipated
14 complying in the first instance.
15      THE COURT:  Mr. McMahon.
16      MR. McMAHON:  Your Honor, I don't know where Mr.
17 Haefele gets the impression that he never wanted to comply with
18 the court order.  This matter has been dormant for a good five
19 or six years.  The 9/11 lawyers were pursuing other matters.  I
20 don't know where Mr. Jelaidan has said, or through me, that he
21 is going to thumb his nose at the Court and not pay this.
22      I suggested that Mr. Haefele, to address this issue,
23 get into dialogue with the Saudi attorney, Bassim Alim, a
24 Georgetown graduate, who is going to be coordinating the taking
25 of Mr. Jelaidan's deposition.  Anything else that transpires

1  overseas, that is not my job, your Honor.  My job is focused on
2  the Southern District of New York.
3          THE COURT:  Sir, you have appeared on his behalf here
4  in this court.  You're the lawyer who is before me.  Your
5  client has been ordered to make payment.  There was a barrier
6  to that payment.  That barrier has now been resolved.  I don't
7  understand why the plaintiffs need to be communicating with
8  some other lawyer who has not filed an appearance in this case.
9  They should be working with you, and you should be making
10 arrangements to have your client satisfy the sanction.
11         MR. McMAHON:  Your Honor, I asked attorney Haefele if
12 he had any authority for that proposition.  I didn't find any,
13 nor did my law clerks.
14         THE COURT:  Authority for what proposition?
15         MR. McMAHON:  That I have some obligation to assist in
16 the collection of the judgment.  I don't see it.
17         THE COURT:  No, but I can hold you in contempt if I
18 think you're taking efforts to make it impossible for your
19 client to satisfy the sanction order.  Look, if this was an
20 ordinary course with everybody based in New York and the party
21 was sanctioned by an amount of money, the prevailing party
22 would not have to seek to uncover the sanction money; the
23 sanctioned party would be ordered to make payment and would
24 make payment.
25         In this case it shouldn't be really all that

1   different.  There was the issue of the OFAC license, but that

2   issue has been resolved.  The plaintiffs here should not have

3   to go through additional hurdles to secure the sanction order.

4   Your client should make payment.  I don't understand why they

5   need to go through another lawyer to satisfy this judgment.

6              MR. McMAHON:  Your Honor, I thought they wanted to

7   take his deposition to find out where his assets are.  Maybe

8   I'm mistaken on that.  In any case, your Honor, I told him, or

9   the paralegal to Mr. Bassim Alim Shaw, that I would convey to

10  them what the opinion of the Court is.  I am certainly willing

11  to send a letter over there which says the Court wants you to

12  pay the order.  I don't know what else I can do I guess is my

13  dilemma, your Honor.

14             THE COURT:  I'm not quite sure why you need another

15  order.  The Court has already ordered your client to make this

16  payment.  That decision was ordered by Judge Maas.  Judge

17  Daniels affirmed that decision.  You don't need another order.

18  Your client has been ordered by this court to make this

19  payment.  Now that the OFAC license has been obtained, he

20  should make the payment.

21             MR. McMAHON:  I told him we were going to have this

22  hearing, your Honor, and I wanted to report to him what the

23  hearing is.  What I'm hearing from you is that I need to tell

24  him to make this payment of attorney fees, which I have no

25  problem with, your Honor.

1    THE COURT:  Do you have any expectation that he is
2 going to pay it?
3    MR. McMAHON:  I don't know their financial condition,
4 your Honor, and I have no expectation in that regard.  I know
5 that he was upset that it all happened, but that's water under
6 the bridge.  If the plaintiffs start to proceed in some manner
7 in a foreign jurisdiction, I'm not going to be involved in that
8 matter.  For example, I don't know what Swiss law is; I'm not
9 entitled to practice there.
10   I assume the plaintiffs will want to go after any
11 assets he has.  That is why I suggested a deposition, and a
12 deposition in Saudi Arabia.  He is not at the moment allowed to
13 leave Saudi Arabia and he doesn't have the finances to pay for
14 me to fly to London or himself.  I thought that would be the
15 logical starting point, to see if he can actually comply with
16 the order because he has assets somewhere, and I don't know I
17 don't know that.
18   MR. HAEFELE:  Your Honor, may I address that for a
19 moment?  Mr. McMahon seems to consistently conflate the merits
20 discovery with the sanction satisfaction.  The place to start
21 right now is satisfying the sanction order.  The plaintiffs
22 don't need to go to any other court.  Your Honor, this Court,
23 has entered an order.
24   By my count there are no less than seven orders that
25 this court has entered making it clear that Mr. Jelaidan is

1  obligated to pay the sanctions that the Court has imposed, no
2  less than seven orders on the issue, several from the
3  magistrate judge and several from the district court judge
4  ordering Mr. Jelaidan to make payment.
5       This will issue has not been dormant over the course
6  of the years.  It's been in a situation where Mr. Jelaidan, and
7  Mr. McMahon on his behalf, was ordered to make aggressive
8  approaches to the OFAC, which, quite frankly, while he has been
9  entering status reports, have essentially indicated that he
10 never took action until the instances where this Court was
11 looking over his shoulder making him take action.
12      If you look back at the records on the docket, you
13 will see, I think, that in each instance when Mr. McMahon was
14 ordered to do a report to the court, it was only days before
15 that that he approached the OFAC, either in leaving a simple
16 telephone message or in a few instances exchanging some emails.
17 In most instances he never took action.
18      In fact, when he actually got the order from OFAC,
19 when he got the license, he didn't even reach out to the
20 plaintiffs.  The plaintiffs reached out to him.  And he didn't
21 notify the Court until a month later, when plaintiffs were
22 insisting that he approach the Court and tell the Court.  It's
23 been a consistent pattern with this particular defendant, quite
24 frankly, with this particular counselor to just not be active
25 in discovery and not engage in his obligations, whether it's an

1  order for discovery or an order for sanctions.

2  MR. McMAHON: Your Honor, if I could respond. I
3  didn't get that order until some period of time after it was
4  issued. I think attorney Haefele was following this process
5  very carefully and got it the same day it was issued. I didn't
6  even know that. He knew that beforehand. When I did get it, I
7  sent it to the plaintiffs and I actually sent it overseas to
8  Saudi Arabia.

9  I have had no intent, your Honor, to slow down the
10  process at OFAC. As I explained to you in reports, OFAC is an
11  agency unit itself. In fact, the lady over there complained to
12  me about how vociferous I was in always calling up and asking
13  for this and that.

14  I tried to do my best, your Honor. But it is an
15  agency without leadership, first of all, because of the Trump
16  administration, and it can do whatever it wants, as an OFAC
17  lady responded to me, or somebody in treasury. That's OFAC.
18  So I didn't do anything to slow that process down at all.

19  THE COURT: Your client owes a significant sum of
20  money, as Mr. Haefele points out, that has been the order of
21  the court on multiple occasions. It is obviously not going to
22  be revisited. Mr. McMahon, you should speak with your client
23  and report back to the Court in one week about your client's
24  intentions. I certainly hope that the letter back to me is
25  that he is going to make payment within 30 days and that this

1  will be the last we will have to deal with this particular
2  issue.
3        If your report back to me is anything other than that,
4  anything other than that he is intending to make payment right
5  away, then I will consider all of the options that are
6  available to me.  Those will include certainly continuing
7  sanctions on your client, which means that the sum of money
8  that is owed will continue, whether based on a theory of an
9  interest rate or a sum of money every day that he fails to make
10 payment.  I will consider all of those options.
11       I will also consider whether or not, as the plaintiffs
12 have alleged, you have taken steps that have made it impossible
13 for the plaintiffs to secure on this judgment and whether or
14 not any sanction should be imposed against you, Mr. McMahon.
15       MR. McMAHON:  I vigorously dispute that, your Honor.
16 Mr. Haefele has been taking personal shots and attacks at me
17 for some seven years, and he continues to do so.  I didn't
18 address those in our conversation today because I don't think
19 they are germane to the resolution of the issue.  But I have no
20 control over what the client is going to tell me to tell you,
21 your Honor, as you should know.  I will simply convey his
22 position.  If he gives me a clear position as of an earlier
23 date, I will alert the Court.
24       THE COURT:  I would like you to alert the Court in any
25 event.  I will ask for a letter from Mr. McMahon to be filed on

1   Wednesday the 18th setting forth what your client's position
2   is. If the position is that he is not intending to satisfy
3   this payment immediately, then I will give Mr. Haefele and the
4   plaintiff's executive committee an additional week to submit a
5   five page letter identifying what it, the plaintiffs' executive
6   committee, believes is the appropriate course of action and
7   further sanctions to be imposed, whether or not that is against
8   the defendant or defense counsel, whether or not that is an
9   interest that accrues, or whether or not that is a per day
10  penalty. Then I will allow Mr. McMahon one week thereafter to
11  file any response by a five page letter.
12              These letters will all be filed on Wednesday starting
13  the 18th from Mr. McMahon regarding his client's position. If
14  the position is he is going to write a check within the next
15  couple of weeks, that's the end of the story. If not, then on
16  the 25th plaintiffs' executive committee can file its letter,
17  and on May 2nd Mr. McMahon can file any opposition to the
18  relief that is requested.
19              MR. HAEFELE: Your Honor, can you repeat that last
20  date? Was it May 2nd?
21              THE COURT: Yes. We are moving on Wednesday.
22  Wednesday the 18th, Wednesday the 25th, and Wednesday the 2nd.
23              MR. HAEFELE: Thank you. Your Honor, if he should
24  hopefully say that he intends to pay, can we set a deadline now
25  by which he would pay?

1    THE COURT: I think 30 days is a reasonable period of
2 time.
3    MR. HAEFELE: 30 days from when?
4    THE COURT: Why don't we make it 30 days from today.
5    MR. HAEFELE: Thank you, your Honor.
6    THE COURT: Let's say Friday the 11th would be the
7 deadline to pay.
8    MR. HAEFELE: To be clear, your Honor, in addition to
9 the potential additional sanctions of interest and perhaps
10 additional fees for all the work that we have had to do to
11 chase this down, we would anticipate an approach of perhaps
12 considering under the circumstances contempt proceedings.
13    I understand that your Honor may not have the
14 authority to impose contempt, but your Honor certainly has the
15 authority either to hold a hearing or to make findings of fact
16 to recommend to the district court imposition of the sanction
17 of contempt either to Mr. Jelaidan and/or to Mr. McMahon.  We
18 would want your Honor to keep that in mind if there is a
19 proceeding, that your Honor would want to consider that as
20 well.
21    THE COURT: All of that can be set forth in your
22 letter of April 25th if it appears that the defendant is not
23 going to comply with the sanctions orders.
24    MR. HAEFELE: Thank you, your Honor.
25    THE COURT: Anything further?

1       MS. FLOWERS:  Your Honor, Jodi Flowers.  For the
2  record, can I please lodge an objection to the characterization
3  of the plaintiffs having somehow abandoned the case and gone on
4  to other matters.  I think that is completely belied by the
5  record.  I'm not going to belabor it, but I want to lodge an
6  objection on the record to Mr. McMahon's characterization.
7       THE COURT:  Very well.
8       MR. HAEFELE:  I do have one housekeeping matter.  At
9  the conference tomorrow, is there any way to have a dial-in
10 number for those who would like to listen in?
11      THE COURT:  I assume there is.  We could dial in and
12 put the phone on speaker, but I can't make any promises about
13 how good the sound will be.
14      MR. HAEFELE:  May I address that with your clerk
15 tomorrow?  I'll be there in person.
16      THE COURT:  Sure.  Speak with my courtroom deputy,
17 Joseph Mendieta.  I'll let him know that you are going to be
18 making that request.
19      MR. HAEFELE:  Thank you, your Honor.
20      MS. FLOWERS:  Thank you, your Honor.
21      THE COURT:  I will see you tomorrow at 4 o'clock.  We
22 are going to be in courtroom 506.
23      (Adjourned)
24
25