UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) ECF Case |
| This document relates to: *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran, et al.* | 15-cv-9903 (GBD)(SN) ECF Case |

## MEMORANDUM OF LAW FOR ENTRY OF PARTIAL FINAL DEFAULT JUDGMENTS ON BEHALF OF BURNETT/IRAN PLAINTIFFS IDENTIFED AT EXHIBIT A

### *(BURNETT / IRAN IV)*

For the reasons set forth below and in the accompanying declaration of Robert T. Haefele ("Haefele Declaration"), the Plaintiffs identified in Exhibit A[1] to the Haefele Declaration filed contemporaneously with this application, by and through their counsel, Motley Rice LLC, respectfully move this Court for an Order entering partial final default judgments against the Iran Defendants[2] and awarding the Plaintiffs identified in Exhibit A (1) solatium damages for the losses they suffered as non-immediate family members (in this instance, a domestic partner and a stepsibling) of their decedents killed on 9/11 (as indicated in Exhibit A) in the same per plaintiff amounts previously awarded by this Court to other similarly situated plaintiffs in this multidistrict litigation; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and (3) permission for the *Burnett/Iran* plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date,

---

[1] The references throughout this document to Exhibits are to Exhibits to the Haefele Declaration dated August 30, 2018, filed contemporaneously with this motion.

[2] Plaintiffs sued The Islamic Republic of Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran (collectively, "the Iran Defendants") in connection with the deaths of plaintiffs' decedents in the 9/11 Attacks.

1

and for all other *Burnett/Iran* Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

This motion is made on behalf of the *Burnett/Iran* claimants listed in Exhibit A *("Burnett/Iran IV* Plaintiffs") in light of this Court's previous orders granting permission to allow *Burnett/Iran* plaintiffs whose damages judgments had not previously been awarded to move for this relief. *See e.g.* 03-md-1570 (S.D.N.Y.) (GBD) (FM), ECF Nos. 3666 and 4023. The solatium claimants for whom relief is presently sought each have the functional equivalence of an "immediate family member" relationship to decedents who died in the September 11, 2001 terrorist attacks, and the intimate nature of their emotional connection with their lost loved ones and the anguish and grief they have suffered as a result of the attacks is detailed in the declarations included as Exhibits B and C. Because these claimants' relationships to their loved ones were functionally equivalent to the biological relationships that this Court has previously found formed the basis of damages awards, the *Burnett/Iran IV* Plaintiffs should be awarded solatium damages under the Foreign Sovereign Immunities Act, applicable case law, and the law of the case.

Plaintiffs sued the Iran Defendants in connection with the deaths of plaintiffs' decedents in the 9/11 Attacks. On December 1, 2016, all plaintiffs in the action *Thomas Burnett, Sr., et al. v. The Islamic Republic of Iran*, et al., Dkt. No. 15-cv-9903 (GBD) ("*Burnett/Iran*"), moved for judgment as to liability only. 15-cv-9903 ECF Nos. 65, 66, amended on December 6, 2016, 15-cv-9903 ECF Nos. 68, 69. On January 31, 2017, the Court granted plaintiffs' application for judgment as to liability only. 15-cv-9903 ECF No. 85. The plaintiffs that are party to this application, as identified in Exhibits A, are a subset of the plaintiffs who have been granted judgment as to liability only, and rely on that judgment as to liability only for their request for default judgment as to the solatium, pain and suffering, or economic damages. Other subsets of plaintiffs in the *Burnett/Iran* case previously requested and were granted similar judgments in the Court's orders dated July 31, 2017 and June 8,

2018 (ECF Nos. 3666 and 4023). The plaintiffs identified in Exhibit A now request entry of partial final default judgment against the Iran Defendants as to their claims in the amounts indicated in Exhibit A.

I. **Procedural Background**

a. **Related Cases**

Relying on evidence and arguments[3] submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the 9/11 Attacks, this Court has in a series of Orders granted Judgment on Liability in favor of the *Havlish, Ashton, O'Neill, Federal Insurance*, and *Hoglan* groups of plaintiffs against Iran Defendants (*See* 03-md-1570, ECF Nos. 2516, 3014, 3016, 3020, 3020-23). After granting the *Havlish* Order of Default Judgment on Liability, this Court considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the submissions of the *Havlish* plaintiffs, on October 3, 2012, this Court found, among other things, that "Plaintiffs may recover for[, inter alia,] solatium . . . in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, . . . family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." 03-md-1570, ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the following solatium awards for family members are appropriate, as an upward departure from the framework in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

---

[3] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, the Court premised its determination '[u]pon consideration of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with the entire record in this case." 03-md-1570, ECF Nos. 2516, 3014, 3016, 3020-22; *see also* 03-md-1570, ECF No. 3023 (substantially similar language).

03-md-1570, ECF No. 2623 at 4. The Court has applied the same solatium values to claims of other solatium plaintiffs in the *Burnett/Iran* case (ECF No. 3666) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation. *See, e.g.,* 03-md-1570, ECF Nos. 3175 at 2; 3300 at 1; 3358 at 9; 3363 at 16; 3399; and 3977 at 7.

As to the availability of solatium damages to non-immediate family members, this Court has previously addressed the criteria necessary to establish that a claimant and a decedent had the "functional equivalent" of an immediate family member relationship. *See* 03-md-1570 ECF Nos. 3363 and 3676 (in the context of the *Hoglan v. Islamic Republic of Iran*, 11-cv-7550 (GBD) (SN)). The factors considered by the Court for determining whether domestic partners and fiancées were functional equivalents of a spouse included duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation, and the presence or absence of a formal engagement. *See id.* at 14-15. The factors considered by the Court for determining whether stepsiblings were functional equivalents of a sibling included the age at which the stepsibling became part of the family, whether the stepsibling cohabited with the decedent, and whether the stepsibling established that he or she otherwise had a close and longstanding relationship. *See id. at* 15-16; *see also* ECF No. 3676 at 13-14 (reaffirming the framework set out in ECF No. 3363 and clarifying that the stepsiblings must have cohabited for a period of time, presumptively at least two years, and must have essentially "[grown] up together"). More specifically for the purpose of this application, for stepsiblings who became part of the same family when both were in their early childhood (roughly birth through age eight), and who lived together for at least two years, the Court deemed them fully functional equivalent to biological siblings and found them entitled to full solatium damages. ECF No 3363 at 15; *see* ECF No. 3676 at 13-14.

In *Havlish*, this Court also found that Plaintiffs are entitled to punitive damages under the FSIA in an amount of 3.44 multiplied by their compensatory damages award. 03-md-1570, ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in the *Ashton* case. *See* 03-md-1570, ECF No. 3175, at 3 (Report and Recommendation to apply 3.44 punitive multiplier); 03-md-1570, ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett/Iran*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. 03-md-1570, ECF Nos. 3358 at 11-16 and 3363 at 28. Judge Daniels adopted Judge Netburn's Reports and Recommendations in their entirety. 03-md-1570, ECF Nos. 3383 at 2 and 3384 at 6.

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. 03-md-1570, ECF No. 2623 at 5. The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (03-md-1570, ECF No. 2619 at 13-14) and Judge Daniels adopted (03-md-1570, ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. 03-md-1570, ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and recommendation and has applied the nine percent interest rate in multiple instances in the *Ashton* and *Bauer* matters. *See* 03-md-1570, ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all of the solatium claims, 03-md-1570, ECF Nos. 3358 at 17-20 and 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. 03-md-1570, ECF Nos. 3383 at 2 and 3384 at 6.

The Court applied that interest rate, 4.96 percent per annum, to the awards of other plaintiffs in *Burnett/Iran*. ECF Nos. 3666 and 4023.

### b. Burnett, et al. v. Iran Defendants

The *Burnett/Iran* plaintiffs filed suit on December 18, 2015, against the Iran Defendants. Service on the Central Bank was effectuated on March 18, 2016, and on Iran and the IRGC on September 14, 2016. 15-cv-9903 ECF No. 67 at ¶¶ 3-4. At Plaintiffs' request, the Clerk of the Court issued a Certificate of Default as to the Iran Defendants on December 5, 2016. 15-cv-9903 ECF No. 67. On December 1, 2016, Plaintiffs requested judgment as to liability against the Iran Defendants, 15-cv-9903 ECF Nos. 65, 66, which application was amended on December 6, 2016 (15-cv-9903 ECF Nos. 68, 69), after the Clerk of the Court issued a Certificate of Default on December 5, 2016. ECF No. 67. The Court granted judgment as to liability against the Iran defendants in favor of all plaintiffs on January 31, 2017. 15-cv-9903 ECF No. 85. On July 26, 2017, and June 8, 2018, different subsets of the plaintiffs in *Burnett/Iran* filed for entry of partial final default judgments (03-md-1570 ECF Nos. 3656-57, and 4021-22), which the Court granted on July 31, 2017, and June 8, 2018 (03-md-1570 ECF Nos. 3666, and 4023). In each of the judgments entered for plaintiffs in the *Burnett/Iran* case, the Court has applied the same dollar values for solatium awards for family members that the Court initially applied in *Havlish*, compare 03-md-1570, ECF No. 2623 at 4 *with* ECF Nos. 3666 and 4023 and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3666 and 4023.

For the reasons below as well as those set forth in the prior motions for judgment for solatium damages made on behalf of other *Burnett/Iran* wrongful death plaintiffs, the *Burnett/Iran* plaintiffs identified in Exhibit A now respectfully request that this Court grant the proposed Order, attached to the Haefele Declaration as Exhibit D, awarding them (1) solatium damages for the losses they suffered as non-immediate family members (in this instance, a domestic partner and a stepsibling) of their decedents killed on 9/11 (as indicated in Exhibit A) in the same per plaintiff amounts previously

awarded by this Court to various similarly situated plaintiffs in this multidistrict litigation; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and (3) permission for the *Burnett/Iran* plaintiffs identified in Exhibit A to seek punitive damages, economic damages, or other damages at a later date, and for all other *Burnett/Iran* Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

## II.     Damages Under § 1605A

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA") creates an exception to sovereign immunity allowing a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages are available under the federal law and include money damages "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(1) and (c)(4). The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). Courts addressing the damages available under the statute have held that, among other damages recoverable, "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." 03-md-1570, ECF No. 2623 at 2-3, quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

Accordingly, Plaintiffs identified in Exhibit A, who are (as indicated below) functional equivalents of family members (in this instance, a domestic partner and a stepsibling) of decedents killed on 9/11, are each entitled to solatium damages based on this Court's previous determinations in the amounts as previously established and applied by this Court in this and other related cases arising from

7

the 9/11 Attacks. Moreover, as indicated below, Plaintiffs identified in Exhibit A are also entitled to prejudgment interest of 4.96% per annum on the solatium awards running from September 11, 2001 until the date of judgment.

### a. Solatium Damages

Section 1605A specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F.Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). In cases brought under this exception to the FSIA, solatium claims have therefore been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Accordingly, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* 03-md-1570 (11-cv-07550) (S.D.N.Y.) (GBD) (SN) ECF. No. 3358; and 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) ECF No. 3300.

### i. Nature of the Relationship — "Functional Equivalent" of Immediate Family Members

8

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived the September 11, 2001 deaths of their loved ones were entitled to recover for their solatium losses, and also set forth a framework for other familial relationships that fell outside of those four categories. *See* 03 -md-1570, ECF Nos. 3363; 3676.

In this Court's October 14, 2016 Report and Recommendation, adopted in pertinent part by the Hon. Judge George B. Daniels, U.S.D.J. (ECF No. 3384), the Court recognized that, in addition to awarding damages to individuals considered traditional "family members," the Court may also award damages to non-immediate family members who meet certain criteria establishing that she or he had the "functional equivalent" of an immediate family member relationship with a September 11, 2001 decedent. These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews, and cousins. *See* 03-md-1570 (11-cv-7550) (S.D.N.Y.) (GBD) (SN), ECF No. 3363. In this application, only the non-immediate family relationships of domestic partner and stepsibling are at issue.

In that Report, the Court identified factors the Court would consider as relevant for determining whether, for awarding damages, a domestic partner would be considered the "functional equivalent" of a spouse and whether a stepsibling would be considered the "functional equivalent" of a sibling. The factors that the Court identified as relevant in the context of domestic partnership are "the duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation and the presence or absence of a formal engagement." *Id.* at 14-15. The framework that the Court adopted in the context of step-relations is this: "… stepsiblings who became part of the family when the decedent was in early childhood (roughly birth through age eight) may be deemed fully functional equivalent to biological parents or siblings and shall be entitled to full solatium damages and stepchildren who were in the same range when the decedent became part of their family shall

be deemed fully equivalent to biological children," ". . . stepsiblings who became part of the family when the decedent had passed early childhood but was still living in the family home and undergoing secondary education (roughly ages 9 through 17) may be entitled to solatium damages reduced by one-half, and stepchildren who were in this age range when the decedent who became part of the family shall receive half damages as well," and ". . . stepsiblings who became part of the decedent's family when the decedent had nearly finished his secondary education (roughly age 18 and above) and/or did not cohabit with the decedent for a significant period of time will likely not be deemed functional equivalents of immediate family members and shall not be illegible for solatium awards, with the same being true for stepchildren who were this age when the decedent became part of their family. In all cases, the Court will recommend solatium awards only for those step-relatives that cohabited with the decedent and establish that they otherwise had a close and longstanding relationship." *Id.* at 15-16.

The information in the accompanying declarations of the individuals for whom solatium damages are sought in this motion confirms that the claimants listed in Exhibit A had the "functional equivalent" of a biological relationship and they are therefore each entitled to an award for solatium damages.

### ii.     Quantum of Damages

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, ... are faced with frequent reminders of the events of that day." *See* 03-md-1570, ECF Nos. 2623 and 2618 at 10-12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," The Court ordered that solatium damages in the following amounts would be awarded to the immediate family members of those individuals killed on September 11, 2001:

10

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 4.

As indicated above, for domestic partners and stepsiblings, the Court concluded that the damages framework above would be used when assessing solatium damages awards for qualifying non-immediate family members, except that the value for stepsiblings would be dependent on the age of the two stepsiblings at the time the relationship began. *See* ECF Nos. 3363 at 16; 3676 at 13-14.

The losses claimed in this motion are legally and factually comparable to those suffered by other claimants previously awarded solatium damages in this litigation. The deaths here were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims — they had intimate relationships with the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Accordingly, the presumptive values for solatium damages previously adopted by the Court for spouses and siblings in the other *Burnett/Iran* cases as well as the other claimants involved in this litigation should apply equally to the *Burnett/Iran IV* Plaintiffs.

The relationships between the decedents and the *Burnett/Iran IV* Plaintiffs are set forth below and in more detail in the statements from the surviving family members submitted as Exhibits B and C. Both of the *Burnett/Iran IV* Plaintiffs identified below have the sort of intimate relationships previously recognized as qualifying for solatium damages; both of the *Burnett/Iran IV* Plaintiffs survived the deaths of their loved ones on September 11; and both of the *Burnett/Iran IV* Plaintiffs have verified under penalty of perjury the nature of the relationships with their deceased loved ones.

Based on the representations in those statements attached as Exhibits B and C and summarized below, the *Burnett/Iran IV* Plaintiffs respectfully request that this Court issue a partial final judgment ordering payment of solatium damages to the *Burnett/Iran IV* Plaintiffs in the amounts set forth below and in Exhibit A:

> iii. *Plaintiff Elba Iris Cedeno*
> *Domestic partner of 9/11 decedent Catherine ("Cathy") Smith*
> **Presumptive Award:** $12.5 million
> **Requested Award:** $12.5 million

Catherine ("Cathy") Smith was killed in the 9/11 Attacks. Cathy and plaintiff Elba Iris Cedeno lived together as life partners, filling the role of spouse in each other's lives. In every way possible for them, Cathy and Elba lived like a married couple. Elba describes Cathy as being her spouse in all ways except name. *See* Exhibit B, Sworn Declaration of Elba Iris Cedeno, dated August 2, 2018. They intended to marry once New Jersey law allowed them to do so. They had resided together as a couple for seven years. Before residing together, they had a relationship that had spanned more than twenty years. Cathy and Elba shared finances, including shared bank accounts. In her will, Cathy named Elba as Executrix to her estate. She also named Elba as a beneficiary of both Cathy's life insurance and workers' compensation plans as her domestic partner. *Id.*

Their lives were completely invested in each other. Before Cathy's death, Cathy and Elba made significant plans for the future including plans to visit Europe together and to take early retirement to spend their days near the beach in New Jersey. They were in the process of building a home together in Manahawkin, New Jersey, where they planned to retire together. *Id.*

Based on the duration of their relationship, the length of their cohabitation, their mutual financial dependence, and the degree of investment in a common life together, claimant should be awarded the full solatium damages award of $12.5 million awarded to spouses, and to fiancées or domestic partners of September 11, 2001 decedents. *See* ECF No. 3363 at 14-15.

> iv. *Claimant Christina L. Kminek*

*Stepsibling of 9/11 decedent Mari-Rae Sopper*
**Presumptive Award: $4.25 million**
**Requested Award: $4.25 million**

Mari-Rae Sopper was killed in the 9/11 Attacks while a passenger aboard American Airlines Flight 77 that crashed into the Pentagon. Mari-Rae and plaintiff Christina L. Kminek were only five months apart in age and lived together as though they were biological sisters in a single family for their entire childhood from age four until age 18. For years during their childhood, the two girls shared a bedroom. Growing up together, they were known by a single family name – *i.e.*, they were known as the "Kminek kids," not the Kminek and Sopper kids. To most people who knew Mari-Rae and Christina, they appeared to be biological siblings. *See* Exhibit C, Sworn Declaration of Christina L. Kminek, dated August 27, 2018.

After they grew up, the two women continued to share a close familiar bond. They both lived in the Washington, D.C.-metro area and spoke at least several times a week, as siblings often do. In the years immediately before Mari-Rae's death, the two women lived in nearby neighborhoods and spoke more frequently. In fact, on September 10, 2001, the night before Mari-Rae was killed, Christina saw her sister and was able to speak to her before Mari-Rae left for the West Coast before being killed. *Id.* The two women were so close that Mari-Rae had appointed Christina as the personal representative of Mari-Rae's estate, a role that she is fulfilling in representing the estate in this litigation. *Id.*

Because Mari-Rae and Christina were the same age; were part of the same family for almost the entirety of their mutual childhood (from both of their ages four to 18); lived together for almost the entirety of their mutual childhood, including sharing a bedroom for almost their entire childhood; interacted with each other as a single family, and continued their close familial relationship until the time of Mari-Rae's death, the framework that the Court established in its earlier decisions has been met and the Court should deem Christina and Mari-Rae to be fully functional equivalent to biological

siblings and find Christina entitled to full solatium damages of $4,250,000 as a full sibling. *See* ECF Nos. 3363 at 15; 3676 at 13-14.

        **b.**    **Punitive Damages**

Under the FSIA plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. §1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." (03-md-1570, ECF No. ECF 2619, at 13, citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory) (03-md-1570, ECF No. 2623). The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, 03-md-1570, ECF No. 3175, at 3 (Magistrate Judge Maas Report and Recommendation to apply 3.44 punitive multiplier); 03-md-1570, ECF No. 3229, at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply 3.44 multiplier); 03-md-1570, ECF No. 3300, at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. 03-md-1570, ECF No. 3363, at 28. Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages. 03-md-1570, ECF No. 3384, at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels order in *Burnett/Iran*, authorizing other plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### c. Prejudgment Interest

As in prior applications, the *Burnett/Iran IV* Plaintiffs ask that this Court direct that prejudgment interest of 4.96% per annum on the solatium awards running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously in the *Burnett/Iran I* and *Burnett/Iran II* judgments, as well as for other plaintiffs in this consolidated litigation.

### III. Conclusion

For all of the reasons set forth herein, as well as those set forth in the previous submissions of the *Burnett/Iran* plaintiffs and other plaintiffs, the *Burnett/Iran IV* Plaintiffs respectfully request that this Court grant the proposed order attached to the Haefele Declaration as Exhibit D: (1) awarding solatium damages as set forth in the attached Exhibit A, (2) awarding prejudgment interest of 4.96% per annum on the solatium awards running from September 11, 2001 until the date of judgment be assessed; and (3) permitting the *Burnett/Iran IV* plaintiffs to seek punitive damages, economic damages, or other damages at a later date, and for all other *Burnett/Iran* Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  August 30, 2018

Respectfully submitted,

MOTLEY RICE LLC

BY: /s/ Robert T. Haefele
     Robert T. Haefele, Esq.
     MOTLEY RICE LLC
     28 Bridgeside Blvd.
     Mount Pleasant, SC 29464
     Tel: 843-216-9184
     Fax: 843-216-9450
     Email: rhaefele@motleyrice.com