UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001**

----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 8/30/2018
```

**03-MD-1570 (GBD)(SN)**

<u>**OPINION AND ORDER**</u>

**SARAH NETBURN, United States Magistrate Judge**:

      On October 6, 2017, the Plaintiffs' Executive Committees ("PECs") filed a motion for sanctions against Defendant Wa'el Hamza Jelaidan. ECF No. 3742. On May 1, 2018, the PECs filed another motion for sanctions against Jelaidan and his counsel, Mr. Martin F. McMahon. ECF No. 3988. On May 3, 2018, McMahon filed a motion to withdraw as counsel for Jelaidan. ECF No. 3990.

## BACKGROUND

      The history of Jelaidan's noncompliance with court orders is long and convoluted. Jelaidan has been designated as a supporter of terrorism by the U.S. Treasury Department, the Kingdom of Saudi Arabia, and the United Nations. ECF No. 2789 at 5. On June 13, 2006, Plaintiffs served their first set of document requests on Jelaidan seeking, among other things, various banking and financial records, including documents relating to Jelaidan's account with Faisal Finance (Switzerland) S.A. ("Faisal Finance"). ECF No. 3746-1. In August 2006, Jelaidan served responses and objections to Plaintiffs' document requests. ECF No. 2789 at 6; ECF No. 3744 at 2–3. He produced only 22 documents (104 pages in total) in response to Plaintiffs' requests, including two documents relating to his account with Faisal Finance. ECF No. 3744 at 3. Jelaidan did not produce any other documents thereafter. ECF No. 2789 at 6.

In October 2011, the PECs filed a motion to compel Jelaidan to produce documents relating to his banking and financial accounts, his relationship with others who had been designated as supporters of terrorism, and any other sanctions imposed on him after 2002. Id. at 6. Jelaidan responded that he was unable to obtain responsive banking records because the banks were purportedly unwilling to cooperate with him due to his designation as a terrorism supporter. Id. During a conference on November 16, 2011, the Court determined that Jelaidan had not satisfactorily demonstrated that he was incapable of obtaining the requested records and ordered Jelaidan to vigorously seek to obtain responsive documents. Id. at 7. Less than a month later, McMahon again informed the PECs that Jelaidan and his counsel in Saudi Arabia, Bassim Alim ("Alim"), had "made a number of attempts to request and obtain responsive documents from governmental and commercial entities" but that the entities had been uncooperative. Id.

On January 30, 2013, the PECs filed a motion requesting that the Court impose sanctions on Jelaidan for failing to respond adequately to the PECs' document requests and failing to make sufficient efforts to obtain and produce relevant documents. Id. at 8. On October 28, 2013, the Court issued a decision stating:

> Jelaidan has not made good faith efforts to satisfy his discovery obligations. Indeed, some of the material submitted for in camera review actually suggests that certain relevant bank records are available to Jelaidan, despite his claims to the contrary. Moreover, although Jelaidan continues to take the position that he has been blocked from obtaining any relevant bank records since being designated in 2002, he apparently was able to produce a 2005 account statement from Faisal Finance. These inconsistencies show that Jelaidan has been less than forthcoming about the documents that he is capable of obtaining and producing.

ECF No. 2789 at 14 (citation omitted). Therefore, the Court imposed "an adverse inference sanction" on Jelaidan (with the precise language to be determined by Judge Daniels) and ordered Jelaidan to "reimburse the Plaintiffs for the fees and costs that they reasonably have incurred in connection with their filing of the present motion." Id. at 16–17.

On October 23, 2015, the Court determined the reasonable value of the attorneys' fees and costs that the PECs had incurred in connection with the motion for sanctions and granted the PECs an award in the amount of $134,620.47. ECF No. 3073. The Court later considered and rejected Jelaidan's motion for reconsideration of the sanctions. ECF No. 3139. On March 9, 2016, the Court declared that the monetary sanctions that had been imposed on Jelaidan were final. ECF No. 3228. But the Court noted that because Jelaidan was a Specially Designated Global Terrorist, Plaintiffs were unable to accept payment from Jelaidan unless the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") granted a license for the transaction. Id. Thus, the Court directed Jelaidan to inform the Court of the actions he had taken "to comply with this Court's order awarding monetary relief to plaintiffs, including but not limited to applying for an OFAC license, within thirty (30) days of the entry of this order." Id.

One month later, on April 8, 2016, Jelaidan filed a letter with OFAC requesting that the agency issue a license that would enable him to pay the monetary sanctions. See ECF No. 3378. But Jelaidan "neither apprised the Court of his attempts to attain the requisite OFAC license[] nor provided any other update as to his compliance with the March 9, 2016 Order." ECF No. 3372. Accordingly, on October 21, 2016, the Court ordered Jelaidan "to provide an update to the Court about the status of any application for an OFAC license and a timeline for payment to plaintiffs." Id. After Jelaidan informed the Court that he had requested a license from OFAC, the Court ordered Jelaidan to file status letters with the Court on December 27, 2016, and every sixty days thereafter "describing the status of the OFAC license application and [his] efforts to transfer the necessary funds to plaintiffs." ECF No. 3380.

In May 2017, the PECs filed another motion for sanctions, arguing that Jelaidan had "made no effort in over a year to comply with the Court's order imposing sanctions" and had

"missed three deadlines to file periodic reports." ECF No. 3542. On May 25, 2017, the Court

concluded that McMahon had "failed to obey the October 31, 2016 pretrial order requiring him

to file status reports on December 27, 2016, and every sixty days thereafter regarding his efforts

to secure an OFAC license." ECF No. 3610. The Court also emphasized that McMahon's

"efforts to secure such license before the PEC's motion for additional sanctions were lackluster."

Id. Thus, the Court ordered McMahon to file status reports every 30 days describing "the date

and nature of contacts with specific individuals at OFAC with sufficient detail for the Court to

evaluate the adequacy of counsel's efforts." Id. The Court also warned that it would impose

sanctions on McMahon directly if he failed to comply. Id. After the Court issued this Order,

McMahon began filing monthly status reports that briefly but adequately described his efforts to

follow up on the request for an OFAC license.

        In September 2017, McMahon submitted one of these status reports and attached an

email that he had sent to OFAC on June 19, 2017. ECF No. 3635-1. McMahon's email to OFAC

transmitted copies of certain banking records that he had obtained from Faisal Finance. Id.

Although the banking records were not included in McMahon's submission to the Court,

McMahon eventually provided the PECs with copies of the records (after the PECs repeatedly

requested that he do so). ECF No. 3744 at 4. The PECs subsequently determined that 15 of the

16 pages that Jelaidan sent to OFAC had not previously been produced in discovery. Id.

Therefore, on October 6, 2017, the PECs filed a motion requesting that the Court impose

sanctions on Jelaidan for knowingly making "false representations to this Court and plaintiffs in

an effort to evade his discovery obligations" and withholding "documents in his possession

despite the Court's specific orders directing him to produce those records." Id. at 6. Jelaidan did

not respond to this motion for sanctions.

On January 30, 2018, OFAC issued Global Terrorism Sanctions Regulations License No. SDGT-2016-330016-1, authorizing Jelaidan to pay the sanctions the Court had previously imposed from an account with Faisal Finance. ECF No. 3915-15. Shortly thereafter, OFAC notified the PECs that OFAC had recently granted Jelaidan the license. ECF No. 3915-1. The PECs then contacted McMahon advising him of this development and requesting that his client pay the PECs the attorneys' fees and costs in accordance with the Court's orders. Id. In response, McMahon wrote that he had "no experience in terms of using that license to secure payment of fees." ECF No. 3915-2. He went on, "I don't see why your firm cannot take over this collection measure at this stage and I assume that it will be a lot of work involving Swiss attorneys if that's where the money is." Id. McMahon also stated, "As you know, I have not billed you for the time my firm has spent to secure that license, and it would appear to me that there would [be] substantial legal fees incurred for anyone who tries to collect on that judgment." Id. McMahon did not indicate that he would direct his client to pay the sanctions. See id.

When the PECs subsequently asserted that it was Jelaidan and McMahon's responsibility to arrange payment, McMahon asked whether the PECs had "any authority for the proposition that an atty in a us case has an affirmative obligation to track down or secure assets that his client owns overseas to satisfy a judgment entered in favor of a judgment creditor." ECF Nos. 3915-3, 3915-4. McMahon also wrote, "I would think that u have to hire local counsek [sic] file a proceeding in Switzerland seeking that kind of relief." ECF No. 3915-4. McMahon later sent another email stating, "I re-read the orders from Magistrate Maas and Judge Daniels, and I don't see any obligation on my part to assist you with obtaining monies located overseas." ECF No. 3915-6.

On March 2, 2018, the PECs filed a letter requesting that the Court initiate contempt proceedings against Jelaidan for failing to pay the sanctions. ECF No. 3915. The Court held a conference to discuss the matter on April 11, 2018. ECF No. 4118. After hearing the parties' arguments, the Court said to McMahon:

> Your client owes a significant sum of money, as Mr. Haefele points out, that has been the order of the court on multiple occasions. It is obviously not going to be revisited. Mr. McMahon, you should speak with your client and report back to the Court in one week about your client's intentions. I certainly hope that the letter back to me is that he is going to make payment within 30 days and that this will be the last we will have to deal with this particular issue.
>
> If your report back to me is anything other than that, anything other than that he is intending to make payment right away, then I will consider all of the options that are available to me. Those will include certainly continuing sanctions on your client, which means that the sum of money that is owed will continue, whether based on a theory of an interest rate or a sum of money every day that he fails to make payment. I will consider all of those options.
>
> I will also consider whether or not, as the plaintiffs have alleged, you have taken steps that have made it impossible for the plaintiffs to secure on this judgment and whether or not any sanction should be imposed against you, Mr. McMahon.

Id. at 10–11. Later that day, the Court issued a written Order directing Jelaidan "to pay the sanctions previously imposed by the Court and listed on the Global Terrorism Sanctions Regulations License, No. SDGT-2016-330016-1, issued by the U.S. Office of Foreign Assets Control no later than May 11, 2018." ECF No. 3960.

On April 18, 2018, McMahon filed a letter stating, "Unfortunately, Mr. Jelaidan will not be able to secure the monies to satisfy the said Judicial Order against him. Mr. Jelaidan can barely make ends meet." ECF No. 3966. McMahon explained that Jelaidan "had incurred huge debts" before the Court imposed the sanctions in 2013 and "was faced with a substantial prison sentence if he did not pay off those debts." Id. Thus, unbeknownst to McMahon, Jelaidan "chose to pay off those debts rather than be sent to jail for any number of years." Id. According to McMahon, "the only reason [Jelaidan] was able to pay off some or all of those debts is because

the United Nations lifted the U.S. sanction on Defendant Jelaidan's Swiss bank account." Id. But after paying those debts, Jelaidan allegedly became financially insolvent and unable to pay the sanctions. Id.

On May 1, 2018, the PECs filed a motion requesting that the Court impose additional sanctions on Jelaidan and McMahon for failing to comply with the Court's prior orders imposing sanctions on Jelaidan. ECF No. 3988. In response, McMahon filed a letter from his own legal counsel stating that McMahon had "counseled his client to pay the sanctions" and "offered what assistance he reasonably believed he could to the PEC attorneys to collect their $134,620.47 fee award." ECF No. 3997-1. McMahon also states that he "is unable to respond to the PEC's letter on behalf of Mr. Jelaidan" because he has a conflict of interest with his client and has lost contact with his client. ECF No. 3991; ECF No. 3997 at 1 n.1. In addition, on May 3, 2018, McMahon filed a motion to withdraw as counsel for Jelaidan. ECF No. 3990. McMahon contends that he should be permitted to withdraw because he is no longer being paid by Jelaidan, is no longer able to communicate with Jelaidan, and is now "in a conflicting position with his client" due to the PECs' motion for sanctions against McMahon. Id. McMahon initially stated that Jelaidan did not oppose the motion to withdraw, ECF No. 3992 ¶ 6, but McMahon later notified the Court that Jelaidan's local counsel in Saudi Arabia had recently informed McMahon that Jelaidan opposes the motion to withdraw, ECF No. 4031.

## DISCUSSION

### I.     October 2017 Motion for Sanctions

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party may serve on any other

party a request" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a).

"The responding party must produce documents sought in each request or 'state an objection to

the request, including the reasons.'" <u>Pegoraro v. Marrero</u>, 281 F.R.D. 122, 132 (S.D.N.Y. 2012)

(quoting Fed. R. Civ. P. 34(b)(2)). "A party seeking discovery may move for an order

compelling an answer, designation, production, or inspection" if "a party fails to produce

documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "If a party or a party's

officer, director, or managing agent . . . fails to obey an order to provide or permit discovery,

including an order under Rule . . . 37(a), the court where the action is pending may issue further

just orders." Fed. R. Civ. P. 37(b)(2)(A). In addition, when a party or its attorney "fails to obey

a . . . pretrial order," "the court may issue any just orders, including those authorized by Rule

37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f)(1).

Throughout discovery, Jelaidan repeatedly stated that Faisal Finance and other banks

were unwilling to provide him with copies of his banking records because he had been

designated as a supporter of terrorism. ECF No. 3062 at 1–3, 6–7; ECF No. 3746-14. In

September 2017, however, Jelaidan submitted a status report to the Court and attached an email

that his counsel sent to OFAC on June 19, 2017, transmitting certain banking records from Faisal

Finance. ECF No. 3635-1. The PECs note that 15 of the 16 pages Jelaidan's counsel sent to

OFAC were not previously produced in discovery. ECF No. 3744 at 4. According to the PECs,

these documents show "that Jelaidan has made knowingly false representations to this Court and

plaintiffs in an effort to evade his discovery obligations, and has withheld production of

documents in his possession despite the Court's specific orders directing him to produce those

records." <u>Id.</u> at 6. Thus, in their October 2017 motion for sanctions, the PECs ask the Court to

impose additional sanctions on Jelaidan. <u>Id.</u> at 8.

But the Court has already imposed sanctions on Jelaidan for his misrepresentations and failure to produce available documents. In 2013, the Court determined that "Jelaidan has not made good faith efforts to satisfy his discovery obligations" and "has been less than forthcoming about the documents that he is capable of obtaining and producing." ECF No. 2789 at 14. Therefore, the Court imposed "an adverse inference sanction" and ordered Jelaidan to pay the reasonable attorneys' fees and costs that the PECs had incurred in connection with their sanctions motion. Id. at 16–17. Although new evidence now confirms the Court's previous findings that Jelaidan acted in bad faith, the Court will not impose additional sanctions for the same misconduct. Moreover, the Court is not convinced that additional sanctions will lead Jelaidan to provide additional responsive documents or new information regarding his discovery efforts. The PECs would be best served by conducting a deposition of Jelaidan in accordance with the Deposition Protocol and seeking to gather as much information as possible through that process. The PECs' October 2017 motion for sanctions is DENIED.

## II.   May 2018 Motion for Sanctions and McMahon's Motion to Withdraw

The Court needs additional information from the parties before deciding whether to impose further sanctions on Jelaidan and McMahon and whether to grant McMahon's motion to withdraw as counsel for Jelaidan. Accordingly, by September 28, 2018, Jelaidan is ORDERED to file a sworn declaration that complies with 28 U.S.C. § 1746 providing detailed responses to the following:

1. List every bank account that Jelaidan has held in the United States, Switzerland, Saudi Arabia, or any other country and that has been open at any point between October 23, 2015, and the present. Attach all bank statements for those accounts from October 23, 2015, to the present if possible.

2. List every debt of $10,000 or more that Jelaidan has owed at any point between October 23, 2015, and the present. For each debt, Jelaidan must indicate (a) the nature of the debt and (b) whether the debt has been paid. For each debt that has been paid, Jelaidan must describe (i) the exact date that the debt was paid;

(ii) which accounts were used to pay the debt; and (iii) how Jelaidan was able to pay the debt given that his accounts have been frozen and that he has been designated as a supporter of terrorism by the U.S. Treasury Department, the Kingdom of Saudi Arabia, and the United Nations. Attach any licenses, decisions, or other documents that authorized or enabled Jelaidan to pay debts from previously frozen accounts.

3.    On what dates between October 23, 2015 and the present did Jelaidan inform Alim that Jelaidan had paid any other debts?

4.    On what dates between October 23, 2015 and the present did Jelaidan (directly or through Alim) inform McMahon that Jelaidan had paid any other debts?

5.    To the extent Jelaidan is claiming that he was obligated to pay prior debts on pain of imprisonment, and therefore elected to pay those debts instead of the Court's sanction, he should explain the basis for that belief.

6.    List every communication that McMahon had with Jelaidan and/or Alim between January 30, 2018 (when the OFAC license was issued), and the present. For each communication, describe (a) the general subject matter of the communication; (b) the exact date of the communication; and (c) whether it was conducted by telephone, email, letter, or some other form of communication.

7.    On what date did McMahon first inform Jelaidan that OFAC had issued a license authorizing him to pay the sanctions that the Court previously imposed? How did McMahon communicate this to Jelaidan?

8.    Did Jelaidan (directly or through Alim) give McMahon any directions after Jelaidan was informed that OFAC had issued a license authorizing him to pay the sanctions that the Court previously imposed? If so, how did Jelaidan communicate those directions to McMahon?

9.    On what date did Jelaidan (directly or through Alim) first inform McMahon that he was unwilling or unable to pay the sanctions that the Court previously imposed? How did Jelaidan communicate this to McMahon?

10.   How has Jelaidan been able to pay attorneys' fees to McMahon and Alim given that his accounts have been frozen and that he has been designated as a supporter of terrorism by the U.S. Treasury Department, the Kingdom of Saudi Arabia, and the United Nations? Attach any licenses, decisions, or other documents that authorized or enabled Jelaidan to pay attorneys' fees from previously frozen accounts.

11.   Does Jelaidan anticipate that he will have the ability to pay the sanctions that the Court previously imposed at any point in the future? If so, when?

12.   Does Jelaidan have any intentions of paying the sanctions that the Court previously imposed at any point in the future?

13.     Why does Jelaidan oppose McMahon's motion to withdraw as counsel? The sworn declaration should be executed by Jelaidan himself (not by his counsel).

In addition, a conference is scheduled for October 12, 2018, at 10:00 a.m. in Courtroom 110, Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. McMahon and the relevant members of the PECs are ORDERED to appear at the conference in person. The parties should be prepared to discuss the PECs' May 2018 motion for sanctions and McMahon's motion to withdraw.

**CONCLUSION**

For the foregoing reasons, the PECs' October 2017 motion for sanctions (ECF No. 3742) is DENIED. By September 28, 2018, Jelaidan is ORDERED to file a sworn declaration with the Court providing detailed responses to the questions listed above. In addition, a conference is scheduled for October 12, 2018, at 10:00 a.m. in Courtroom 110, Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. McMahon and the relevant members of the PECs are ORDERED to appear at the conference in person. The parties should be prepared to discuss the PECs' May 2018 motion for sanctions and McMahon's motion to withdraw. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 3742.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      August 30, 2018
            New York, New York

11