UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(FM)<br>ECF Case |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.,* Case No. 04-cv-07065
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.,* No. 04-CV-05970
*Federal Insurance Co, et al. v. Al Qaida, et al.,* No. 03-CV-6978
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp.,* et al, No. 04-CV-1923
*Euro Brokers Inc., et al., v. AI Baraka, et al.,* Case No. 04 Civ. 7279

**DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH SAUDI ARABIA AND
WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONAL MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF SECTION IV OF
THE COURT'S MOTION TO COMPEL RULING**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 1

LEGAL STANDARD.................................................................................................................. 4

ARGUMENT .............................................................................................................................. 5

    I.    Reconsideration is Justified Here Due to Controlling Law. ................................................. 5

    II.    WAMY's Diligent Search Efforts Warrant Reconsideration and Revision of the August 29, 2018 Order in Order to Prevent Manifest Injustice. ......................................................... 7

        A.    In the Interest of Justice, This Court Should Reconsider Facts Regarding WAMY's Due Diligence Efforts. ..................................................................................................... 8

        B.    WAMY's Diligent Document Search and Production Efforts Justify Revision of Section IV of the August 29, 2018 Order. ......................................................................... 9

        C.    Knowledge of WAMY's Document Search Efforts Might Reasonably Have Altered This Court's Conclusion in its August 29, 2018 Motion to Compel Order. ......................... 12

CONCLUSION.......................................................................................................................... 14

# TABLE OF AUTHORITIES

CASES .................................................................................................................. PAGES

*Bravia Capital Partners, Inc. v. Fike*,
   296 F.R.D. 136 (S.D.N.Y. 2013) ........................................................................... 6
*Ceglia v. Zuckerberg*,
   287 F.R.D. 152 (W.D.N.Y. 2012).......................................................................... 6
*Connecticut Bar Ass'n v. United States*,
   620 F.3d 81 (2d Cir. 2010)................................................................................... 6
*Jacobs v. Citibank, N.A.*,
   No. 01 CIV. 8436 JSRKNF, 2004 WL 2389897 (S.D.N.Y. Oct. 25, 2004)............................ 6
*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
   318 F.R.D. 28 (S.D.N.Y. 2016) ............................................................................ 13
*New York v. Parenteau*,
   382 F. App'x 49 (2d Cir. 2010) ............................................................................. 8
*Nunez v. City of New York*,
   No. 11 CIV. 5845 LTS JCF, 2013 WL 2149869 (S.D.N.Y. May 17, 2013) .......................... 13
*O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist.*,
   127 F. Supp. 2d 342 (E.D.N.Y. 2001) .................................................................... 5
*On-Line Techs., Inc. v. Perkin-Elmer Corp.*,
   448 F. Supp. 2d 365 (D. Conn. 2006)..................................................................... 5
*RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*,
   No. 90 CIV. 4918 (LMM), 1991 WL 136035 (S.D.N.Y. July 18, 1991) ................................ 6
*Ruiz v. Comm'r of Dep't of Transp. of City of New York*,
   858 F.2d 898 (2d Cir. 1988)................................................................................. 6
*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)................................................................................... 5
*Space Hunters, Inc. v. United States*,
   500 F. App'x 76 (2d Cir. 2012) ............................................................................. 5
*T.M. Patents, L.P. v. Sun Microsystems Inc.*,
   No. 06CIV13558SCRLMS, 2009 WL 10694780 (S.D.N.Y. Apr. 16, 2009) ........................... 5
*T.Z. v. City of New York*,
   634 F. Supp. 2d 263 (E.D.N.Y. 2009) .................................................................... 5
*Townsend v. Benjamin Enterprises, Inc.*,
   No. 05 CIV. 9378 (GAY), 2008 WL 1766944 (S.D.N.Y. Apr. 17, 2008) ............................... 5
*USA Certified Merchants, LLC v. Koebel*,
   273 F. Supp. 2d 501 (S.D.N.Y. 2003)..................................................................... 5
*Vega v. Restani Const. Corp.*,
   98 A.D.3d 425, 949 N.Y.S.2d 661 (2012) ................................................................ 8
*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992)................................................................................ 5
*Warner v. Orange Cty. Dep't of*,
   Prob., 115 F.3d 1068 (2d Cir. 1996) ...................................................................... 6

RULES ................................................................................................................ PAGES

Fed. R. Civ. P. 34 (a) ............................................................................................ 13

Southern District of New York Local Civil Rule 6.3……………...…………………..……..4, 5

## PRELIMINARY STATEMENT

Defendants World Assembly of Muslim Youth Saudi Arabia (WAMY SA) and World Assembly of Muslim Youth International (WAMY Int'l), referred to collectively as "WAMY", through undersigned counsel, respectfully move this Court to reconsider a portion of its August 29, 2018 Opinion and Order ("Order") (DKT # 4130) granting in part the Plaintiffs' Executive Committee's ("PEC") motion to compel. Specifically, WAMY seeks reconsideration of Section IV of this Court's Order ("Branch Offices") and the Court's finding that WAMY did not conduct an adequate search for documents located in its branch offices. The Court arrived at its finding based on Plaintiffs' reply brief. *See* Order at 5. PEC challenged WAMY's document collection efforts only in its reply motion; as such, WAMY did not have an opportunity to present all material facts to the Court regarding its document search and collection efforts. These facts set forth herein would have reasonably altered the Court's finding and Order on PEC's motion to compel. WAMY respectfully submits that this Court reconsider and reverse Section IV of the August 29, 2018 Order, as WAMY has adequately searched for documents located in its branch offices.

## BACKGROUND

In its February 28, 2018 motion to compel against WAMY (DKT # 3911), PEC did not once question or challenge WAMY's and its counsel's discovery efforts in gathering documents from WAMY branch offices. Rather, Plaintiffs' motion (DKT # 3911) summarily concluded that WAMY had not produced documents responsive to the eight categories set forth by Magistrate Judge Frank Maas in an April 12, 2001 Order (an Order that applied  to Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") only). *See* DKT # 3828 at 3. WAMY objected in its Opposition (DKT # 3949) to these eight categories, especially given that Plaintiffs admitted in their motion that the categories do not mirror their requests to WAMY.

1

Instead, WAMY detailed in its Opposition that it had responded to PEC's specific document requests. WAMY argued that it should not be required to reproduce and reorganize its production of documents based on what Plaintiffs referred to as the eight categories. On September 10, 2018, PEC submitted a letter to the Court (DKT # 4154) allegedly seeking clarification from the Court of the August 27, 2018 Order (DKT # 4124) and August 29, 2018 Order (DKT # 4130) regarding how to establish concrete evidence as to whether WAMY, MWL, and IIRO have produced documents responsive to categories of Plaintiffs' requests. This request is perplexing and attempts to convolute the issues at bar[1].

In its reply motion to compel (DKT # 3962), PEC, for the first time, alleged that WAMY failed to establish an adequate process to identify, secure, and produce responsive documents. They stated, without any evidentiary basis, that the process WAMY had used to collect documents was structurally ineffective and devoid of the controls necessary to verify that WAMY representatives and branch offices outside of the Kingdom of Saudi Arabia were in fact collecting all relevant materials or that they understood WAMY's discovery obligations. PEC claimed that WAMY's counsel stated during the March 2018 meet-and-confer that WAMY branch offices and their managers had historically ignored directives and requirements from WAMY headquarters and often failed to provide reports to headquarters and that these are the same offices upon whom WAMY's compliance with its discovery obligations rely. PEC further hypothesized that WAMY depended on these branches to exercise diligence in collecting documents without any audit process or review in place. (DKT # 3962 at pg. 2).

---

[1] WAMY responds to PEC's September 10, 2018 letter (DKT # 4154) in greater detail under separate cover.

These allegations could not be further from the truth[2]. PEC's statements mischaracterize the meet-and-confer between WAMY and PEC and blindly assume that branch offices were solely responsible for collecting documents, without any oversight and control by WAMY's counsel. In making their assertions, PEC also relied upon three (3) due diligence letters: (1) a letter by Dr. Abdul Hameed bin Youssef al Mazroo, to more than thirty WAMY branch offices beginning on October 25, 2011, asking office staff to send "reports and information about all projects, programs and activities implemented by your esteemed office during the period from (1992 A.D.) to (2002 A.D.) as soon as possible." (DKT # 3963-1); (2) an April 7, 2012 letter from Dr. Al-Mazroo to the branch offices asking them to complete forms detailing the offices' financial and administrative matters from 1992 to 2002 and asking them to provide account statements for that period (DKT # 3963-2); (3) a May 5, 2012 letter from Dr. Al-Mazroo asking each office to send copies of its bank account statements and audited balance sheets from 1992 to 2002 (DKT # 3963-3). PEC read these isolated letters to imply – and mistakenly led the Court to believe – that these letters were the only steps that WAMY or its counsel took towards document search, preservation, and collection in branch offices. As the annexed Declarations of WAMY's legal team (Omar T. Mohammedi, Esq., Frederick K. Goetz, Esq., and Elizabeth K. Kimundi, Esq.) demonstrate, this is not the case. These letters were minor, residual steps in WAMY's document collection process, not the entirety of the process, as PEC inaccurately and recklessly proffered and as the Court assumed.

Because PEC made their baseless claims in their reply brief and not their moving brief, and the Court issued an Order on this matter, WAMY could not respond. WAMY was, as a

---

[2] The only chapter that has ignored counsel's instructions and directives is the Canada chapter. Even then, the Court excused same because WAMY's counsel have been able to obtain and produce a large number of WAMY Canada related documents. Judge Maas noted that WAMY was not "able to anticipate that things would go sour" or that WAMY Canada would go "rogue" by failing to provide documents to WAMY headquarters. *See* February 19, 2014 hearing transcript at 40:3-5, attached to Plaintiffs' motion to compel as Exhibit 21 (DKT # 3912-21).

result, never able to address the sufficiency of its searches or provide any evidence as to same. To prevent manifest injustice to WAMY and considerable burden in requiring that further litigation resources be expended and the work of document searches and collection be redone, WAMY asks the Court to set aside Section IV of its August 29, 2018 Order as to the branch offices and the adequacy of WAMY's document search efforts.

The Court's August 29th Order rests on incomplete knowledge of WAMY and its counsel's conscientious efforts in the collection and review of documents in this litigation. WAMY offers the annexed Declarations of its legal team to demonstrate WAMY's due diligence to search for, locate, and produce relevant discovery documents responsive to PEC's requests. WAMY has fulfilled its discovery obligations. It has diligently searched for the requested documents and produced approximately 1,248,043 responsive pages of documents[3]. With every production, WAMY submitted the updated responses and attached indices stating which documents were responsive to which requests. Plaintiffs want WAMY to reproduce and analyze the category of documents based on their theories. WAMY has no obligation to do so.

WAMY respectfully requests that the portion of the Order requiring WAMY to visit twenty (20) branch offices to gather documents that have already been produced be deleted from the Order. The Order, as it currently stands, would prejudice WAMY by ignoring these efforts and requiring it to re-do years of work.

## LEGAL STANDARD

The Southern District of New York Local Civil Rule 6.3 governs reconsideration of orders that do not constitute final judgments, such as Magistrate Judges' decisions on non-dispositive discovery matters. Pursuant to this Rule, a party may move for reconsideration based on "matters or controlling decisions which counsel believes the court has overlooked." S.D.N.Y.

---

[3] Total pages for WAMY Int'l production: 15,202.Total pages for WAMY SA document production: 1,232,841.

Local Rule 6.3; *see also Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012). A party seeking to have the Court reconsider a prior Order must identify controlling law or specific facts that were overlooked by the Court that might alter the Court's prior decision. *See Townsend v. Benjamin Enterprises, Inc.*, No. 05 CIV. 9378 (GAY), 2008 WL 1766944, at *1 (S.D.N.Y. Apr. 17, 2008), *aff'd,* 679 F.3d 41 (2d Cir. 2012). A motion for reconsideration is appropriate in the face of clear error, manifest injustice, or new evidence that undermines the Court's prior reasoning. *T.M. Patents, L.P. v. Sun Microsystems Inc.*, No. 06CIV13558SCRLMS, 2009 WL 10694780, at *4 (S.D.N.Y. Apr. 16, 2009) (quoting *USA Certified Merchants, LLC v. Koebel*, 273 F. Supp. 2d 501, 502 (S.D.N.Y. 2003)).

Pursuant to Rule 6.3, a motion for reconsideration may also be granted if the overlooked fact or law "might reasonably be expected to alter the conclusion reached by the court," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or "where a court misinterprets or misapplies relevant case law in its original decision." *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (citing *O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001). *See also On-Line Techs., Inc. v. Perkin-Elmer Corp.*, 448 F. Supp. 2d 365, 367–68 (D. Conn. 2006) (reconsideration granted where moving party "identif[ied] a misreading by the Court of the [relevant expert report]…as well as a potential misapplication of the Federal Circuit's claim construction in assessing invalidity.").

## ARGUMENT

### I.   Reconsideration is Justified Here Due to Controlling Law.

Due to WAMY's inability to address PEC's claims about the adequacy of its search process in its reply motion, this Court did not have key facts available in order to determine that WAMY's document collection efforts were inadequate. PEC's reference to Dr. Al Mazroo's

letters and their unfounded accusations regarding WAMY's failure to search for discovery documents were outside the scope of arguments advanced in PEC's motion to compel and addressed in WAMY's Opposition. These were novel and new issues that WAMY never had a chance to address. Consequently, the Court did not have the full picture in front of it when deciding on the motion to compel.

The controlling law in the Southern District states that parties cannot raise new issues for the first time in their reply motion. *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136 (S.D.N.Y. 2013). "Arguments made for the first time in a reply memorandum of law or reply brief are, generally, not considered by a court because when a party fails to raise an issue(s) or to present an argument(s) in the party's initial brief, the adversary party is deprived of the opportunity to dispute the matter(s). Moreover, the Court is deprived of the benefit of both sides' analysis of the issue(s)." *Jacobs v. Citibank, N.A.*, No. 01 CIV. 8436 JSRKNF, 2004 WL 2389897, at *2 (S.D.N.Y. Oct. 25, 2004) (citing *Warner v. Orange Cty. Dep't of Prob.*, 115 F.3d 1068, 1071 n. 1 (2d Cir. 1996)); *see also RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, No. 90 CIV. 4918 (LMM), 1991 WL 136035, at *4 (S.D.N.Y. July 18, 1991) ("This novel approach to motion practice suggest that an especially crafty movant might save all of its substantive arguments for its reply brief, thereby denying its opponent any opportunity at all to respond. The Court declines to adopt such a pernicious procedure. Defendants' request for sanctions is denied."); *Ceglia v. Zuckerberg*, 287 F.R.D. 152, 162–63 (W.D.N.Y. 2012) ("Second, Plaintiff raises this argument for the first time in his reply in further support of Plaintiff's motion. It is settled, however, that arguments raised for the first time in replying in further support of a motion are generally deemed waived." (citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Ruiz v. Comm'r of Dep't of Transp. of City of New York*, 858 F.2d

898, 902 (2d Cir. 1988) (holding that district court was within its discretion to reject argument first raised in reply to opposition to motion where such argument was "so belatedly advanced and so vaguely supported").

Given that PEC had access to Dr. Al Mazroo's letters well before filing its initial motion to compel against WAMY, it is certainly "crafty" that PEC waited until the reply motion to argue that WAMY had not performed adequate searches; it is suspicious that PEC waited for the reply, knowing that WAMY would not have an opportunity to adequately reply. This Court relied on PEC's statements made for the first time in the reply and took PEC's characterization at face value without affording WAMY an opportunity to challenge their mistaken assertions, which was clear error requiring reconsideration and revision of the August 29th Order. For the foregoing oversight of controlling law, WAMY respectfully requests reconsideration and revision of Section IV of the Court's August 29th motion to compel Order.

## II. WAMY's Diligent Search Efforts Warrant Reconsideration and Revision of the August 29, 2018 Order in Order to Prevent Manifest Injustice.

WAMY has been Ordered to conduct a search of nearly all of its branch offices, preferably in person, which would incur great costs and time. This Court was unable to previously consider the specific facts of WAMY's due diligence in performing searches, identifying relevant documents, and producing same to PEC. As set forth in detail hereafter and in the annexed Declarations, WAMY has already engaged in very exhaustive and extensive document search and collection efforts. This has comprised of over thirty trips by WAMY counsel for the purpose of training a document search team and regularly supervising document collection efforts. The Order, as it stands, requests duplication of WAMY's document gathering efforts and completely disregards WAMY's efforts thus far. Because Section IV of the August 29th Order as to PEC's motion to compel only considered PEC's arguments in their reply motion

as to WAMY's search procedures, without WAMY having a similar opportunity to set forth its document search and collection efforts, a clear error and manifest injustice occurred.

A.  In the Interest of Justice, This Court Should Reconsider Facts Regarding WAMY's Due Diligence Efforts.

Courts have discretion in awarding motions for reconsideration. They have even granted motions when there is no attempt whatsoever to provide a justification for a failure to present evidence previously. *See Vega v. Restani Const. Corp.*, 98 A.D.3d 425, 426, 949 N.Y.S.2d 661 (2012).

Given that WAMY's inability to provide the information in the annexed Declarations arose from the timing of PEC's arguments in their reply, it is in the interest of justice for this Court to consider the additional information contained herein, grant reconsideration, and amend Section IV of the August 29th Order requiring WAMY to conduct further searches. The fact that WAMY was not able to present this information prior to an Order being rendered was a clear error and manifest injustice that can be cured by the present motion for reconsideration. As the Declarations demonstrate, there are several matters regarding WAMY's document collection efforts that the Court did not consider in rendering its decision on the motion to compel. The annexed Declarations are not "new evidence" but rather an explanation of WAMY's counsel's discovery efforts, which WAMY never had an opportunity to present. PEC raised issues of adequate searches only in their reply motion, which was outside of the scope of the Opposition and the motion to compel. In providing this information now to the Court, WAMY is not attempting to "relitigate an issue that already has been decided." *New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010). Rather, WAMY is now providing information that was not available to the Court in rendering its Order as a result of PEC's crafty and belated advancement of these new issues in their reply motion.

B. <u>WAMY's Diligent Document Search and Production Efforts Justify Revision of Section IV of the August 29, 2018 Order.</u>

Because of WAMY's diligent efforts in searching for, identifying, and producing relevant discovery documents to PEC, WAMY respectfully requests that this Court revise Section IV of the August 29, 2018 motion to compel Order requiring further searches of all branch offices. WAMY has, under the constant and direct supervision of undersigned counsel, undertaken timely and systematic efforts to secure and produce all documents responsive to PEC's discovery requests and, in doing so, produced over 1,248,043 pages.

Since the start of litigation, WAMY's counsel has been actively involved in WAMY's document search, identification and responsiveness review, and production efforts. *See* Declaration of Omar T. Mohammedi, Esq. ("Mohammedi Decl.", ¶¶ 3-4); *see also* Declaration of Frederick K. Goetz, Esq. ("Goetz Decl.", ¶¶ 2-3). At the start of discovery, WAMY's counsel traveled to the Kingdom of Saudi Arabia to meet with WAMY Assistant Secretary General Dr. Al Mazroo, WAMY officials, and employees to ensure that a systematic process was established in order to find, identify, secure, review, and produce documents responsive to PEC's requests from WAMY's headquarters, regional offices, and branch chapters. (Mohammedi Decl., ¶¶ 5-6, 8; Goetz Decl., ¶¶ 4-5).

With the oversight of counsel, WAMY established a search team, consisting of over 150 delegates, split into eight teams. (Mohammedi Decl., ¶ 7; Goetz Decl., ¶ 5). These delegates included high-ranking WAMY officials, regional office heads, and the heads of branch offices, as well as employees hired for the express purpose of searching for and locating all documents. *Id.* WAMY's counsel went on more than thirty (30) trips abroad to meet with WAMY regarding discovery. (Mohammedi Decl., ¶ 11). *See also* Declaration of Elizabeth K. Kimundi, Esq. ("Kimundi Decl.", ¶ 3). In these meetings, including the very first discovery meeting with

9

WAMY in Saudi Arabia, counsel extensively trained the search teams, WAMY officers, regional office delegates, and the heads of branch offices on U.S. legal discovery guidelines and obligations, the scope of discovery, how to conduct searches for documents in the branch chapters, and the specific documents requests made by PEC. (Mohammedi Decl., ¶¶ 8, 13; Goetz Decl., ¶¶ 5, 9-10, 13-14; Kimundi Decl., ¶¶ 6-9).WAMY counsel met with the heads of WAMY regional offices and gave clear directions to all involved in the document search and collection process on how to identify responsive documents, preserve them, and collect same for review by the legal team. *Id.*

After being personally taught by counsel regarding how to gather documents outside of the Kingdom (in the regional and branch chapter offices), to ensure that all responsive documents were being recovered and sent, WAMY counsel directed the WAMY search teams to copy and send ALL documents AS stored in the ordinary course of business at the branch chapters to the headquarters' warehouse. (Mohammedi Decl., ¶ 9; Goetz Decl., ¶¶ 6-7, 11-12, 16; Kimundi Decl., ¶ 5). The search teams were sent to branch offices to obtain all records, per Counsel's instruction. *Id.* After the documents were collected and copied from the regional and branch offices, they were stored in WAMY's file rooms and warehouse in Saudi Arabia for counsel's first review. (Mohammedi Decl., ¶¶ 10, 12; Goetz Decl., ¶¶ 8, 11-12).WAMY's legal counsel took numerous trips to supervise the document collection efforts. (Mohammedi Decl., ¶¶ 11, 15, 20-21; Goetz Decl., ¶¶ 3, 8-10, 13-15, 17-18; Kimundi Decl., ¶¶ 8-9, 11). They visited the warehouse storage to personally review for responsiveness the documents collected from the branch offices throughout the discovery production period. (Mohammedi Decl., ¶¶ 12, 14-15; Goetz Decl., ¶ 11-12).

10

WAMY's legal team, the search team delegates, and counsel, including Arabic speaking lawyers, reviewed each document from all branch offices and WAMY headquarters for responsiveness and relevance. (Mohammedi Decl., ¶ 19; Kimundi Decl., ¶¶ 13-14). The search team delegates were trained extensively on how to identify relevant and responsive documents and observed the review of Mr. Mohammedi and Mr. Goetz before searching themselves. (Mohammedi Decl., ¶¶ 12-14). During the first review by WAMY's counsel, responsive documents were identified and scanned. (Mohammedi Decl., ¶¶ 14-15; Goetz Decl., ¶ 12). Scanned documents were sent to New York for a secondary legal review by WAMY's legal team, led by Ms. Elizabeth Kimundi. (Mohammedi Decl., ¶¶ 14, 16-17; Goetz Decl., ¶ 12). These legal review trips occurred throughout the litigation, and they usually lasted upwards of one week in the Saudi desert. (Mohammedi Decl., ¶ 15).

During the second legal review of the documents identified as relevant by counsel, attorneys for WAMY in New York would review the documents in greater detail. (Mohammedi Decl., ¶ 16; Goetz Decl., ¶ 16; Kimundi Decl., ¶ 15). Counsel continued to monitor documents search through regular meetings with the search team in Saudi Arabia and other countries and almost weekly communications. (Mohammedi Decl., ¶¶ 17-18; Kimundi Decl., ¶ 10-12). During the secondary review by WAMY's counsel, if there were any gaps or documents which seemed missing, counsel would directly communicate with the search team, providing specific guidelines for document searches, including how to and where to look for certain documents. (Mohammedi Decl., ¶¶ 16-18; Goetz Decl., ¶ 20; Kimundi Decl., ¶¶ 4-9, 11, 14). Counsel for WAMY also continued visits to the Kingdom and various other countries until 2017 in order to provide further training on PEC's document requests, regulate the document search process, and ensure that document gathering was proceeding efficiently and properly. (Mohammedi Decl., ¶ 20; Kimundi

Decl., ¶¶ 4, 6, 8-9). For example, counsel met with the heads of certain branch offices (i.e. Pakistan) in order to ensure that all branch office records had been handed over to counsel. (Mohammedi Decl., ¶ 21; Goetz Decl., ¶¶ 14, 17-18). Furthermore, though it yielded few documents, WAMY's counsel went so far as to meet with former representatives and employees in various countries to inquire whether they had any missing documents in their personal possession. (Mohammedi Decl., ¶ 21; Goetz Decl., ¶ 17-18; Kimundi Decl., ¶ 12).

C.   <u>Knowledge of WAMY's Document Search Efforts Might Reasonably Have Altered This Court's Conclusion in its August 29, 2018 Motion to Compel Order.</u>

The above description of WAMY's extensive document collection and search efforts demonstrates the magnitude of care and supervision in ensuring that all potentially responsive documents were gathered and produced. These facts, if WAMY had the opportunity to present them prior to a decision being made on the PEC's motion to compel, would reasonably be expected to alter the Court's decision as to the adequacy of WAMY's document search efforts. If PEC had raised their arguments regarding the adequacy of WAMY's document collection efforts in their initial motion to compel, WAMY would have certainly responded with the Declarations annexed hereto. Had the Court been given an opportunity to consider the entirety of WAMY's document collection and search efforts, it reasonably would not have found that WAMY's search efforts were inadequate and mandated a further search for documents in its branch offices.

It is apparent from WAMY's diligent document search efforts and undersigned counsel's supervision that all documents have been reviewed and produced in response. *See, generally,* Declaration of Elizabeth K. Kimundi, ¶ 16-17. No further searches could have produced additional relevant documents that simply do not exist. WAMY has produced nearly 1.25 million pages of documents. Plaintiffs' *carte blanche* statements that they have not received records from branch offices, the subject of Section IV of this Court's August 29, 2018 Order, are

problematic. For example, WAMY has produced nearly 35,000 pages of office records regarding WAMY Pakistan (over 2,150 documents) and 606 annual reports from all of WAMY's offices, including regional offices and branch chapters. If, after such exhaustive search efforts, WAMY avers that no further documents exist, the Court may reasonably have ruled in Section IV that WAMY need not further search for or produce additional branch office records.

"Generally, a party's good faith averment that items sought in discovery simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production, since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28 (S.D.N.Y. 2016). Further, WAMY can only turn over documents that are in its "possession, custody or control." Fed. R. Civ. P. 34 (a). *See also Nunez v. City of New York*, No. 11 CIV. 5845 LTS JCF, 2013 WL 2149869, at *6 (S.D.N.Y. May 17, 2013) ("[A] request for documents does not include the obligation to create information or documents which a party does not control or possess." (internal quotations marks and citation omitted)). Because WAMY's diligent search efforts illustrate that all such documents that exist have been discovered and identified, and because Plaintiffs failed to identify which specific branch office records were missing, this Court would not have found that a further search of branch offices was necessary or that additional documents existed that needed to be produced. The Court's decision on August 29th was premised entirely on PEC's accusations against WAMY and not on any evidence proffered by WAMY as to its document search efforts. Had this information been available to the Court, it would have altered the decision and precluded any Order that would require WAMY to re-do years of work that it has already diligently completed.

**CONCLUSION**

Given the controlling law and material facts regarding WAMY's document searches detailed herein, which were not available to the Court previously, WAMY's Motion for Reconsideration of the Court's Order on PEC's motion to compel is justified and should be granted. In light of same, WAMY respectfully requests that this Court rescind Section IV of its August 29, 2018 Order, requiring WAMY to conduct a renewed search and production of its branch office records.

Dated: September 12, 2018

Respectfully Submitted,

/s/ *Omar Mohammedi*
Omar T. Mohammedi, Esq.
Law Firm of Omar T. Mohammedi, LLC
Woolworth Building
233 Broadway, Suite 820
New York, New York 10279

/s/ *Frederick Goetz*
Frederick Goetz, Esq.
Goetz & Eckland P.A.
Banks Building
615 First Ave. NE, Suite 425
Minneapolis, MN 55413

*Attorneys for World Assembly of Muslim Youth*
*Saudi Arabia and World Assembly of Muslim Youth*
*International*