**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-1570 (GBD)(FM) ECF Case |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-CV-05970
*Federal Insurance Co, et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp.*, et al, No. 04-CV-1923
*Euro Brokers Inc., et al., v. AI Baraka, et al.*, Case No. 04 Civ. 7279

**DECLARATION OF OMAR T. MOHAMMEDI IN SUPPORT OF DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH-SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH-INTERNATIONAL MOTION FOR RECONSIDERATION**

I, Omar T. Mohammedi, affirm under penalty of perjury as follows:

1.      I am an attorney admitted to practice before this Court and the lead counsel representing Defendants World Assembly of Muslim Youth Saudi Arabia (WAMY SA) and World Assembly of Muslim Youth International (WAMY Int'l), jointly referred to as "WAMY".  I am managing partner of the Law Firm of Omar T. Mohammedi, LLC ("OTMLAW"), counsel of record for WAMY.

2.      I submit this Declaration in support of WAMY's Motion for Reconsideration of Magistrate Judge Netburn's August 29, 2018 Order (DKT # 4130) as it relates to WAMY's document search and collection efforts.

## DOCUMENT COLLECTION EFFORTS

3.      Along with Co-Counsel Frederick J. Goetz, Esq., Senior Associate Elizabeth Kimundi, Esq., and other Associates and paralegals, I have been actively involved in the efforts to search for, locate, and produce documents responsive to Plaintiffs' Executive Committee's ("PEC") discovery requests.

4.      I have personally overseen the global efforts to search, locate, and review documents responsive to PEC's requests in WAMY's offices in Saudi Arabia, as well as its regional and branch offices.

5.      Immediately after discovery commenced, the legal team traveled to Saudi Arabia to meet with WAMY officials to discuss the discovery process and WAMY's discovery obligations, including the need to perform extensive searches for relevant documents and to preserve every document.

6.      At the start of discovery, I and other WAMY counsel had many meetings with WAMY. We explained the importance of conducting exhaustive searches of all WAMY documents so that counsel can review and identify which documents are responsive to Plaintiffs' requests.

7.      Under the supervision of counsel, WAMY assembled a team of delegates from WAMY's headquarters, the regional offices, and branch chapters.  WAMY formed search teams for the express purpose of document collection in this litigation. In total, WAMY has had over 150 delegates, divided into eight (8) teams, engaged in document collection efforts for this litigation.

8.      WAMY's counsel travelled on multiple occasions to meet with the heads of the regional offices, the heads of branch offices, and search team delegates in order to explain

WAMY's discovery obligations and the scope of discovery. Counsel explicitly went through every one of PEC's document requests and extensively trained the search team delegates on document search parameters, which included identifying which documents to search for and relevant and responsive documents. Counsel also supervised the document collection and review process.

9.      During discovery, WAMY, under the direction and supervision of counsel, sent search team delegations to its chapters around the world. These search teams, pursuant to counsel's instructions, copied ALL documents, as stored in the ordinary course of business at these chapters, without exceptions, and brought them back to Saudi Arabia. Counsel ascertained that such operations were completed.

10.     When the chapter documents were brought to the storage warehouse in Saudi Arabia, the review of documents started under the direction of counsel. Counsel conducted the preliminary review and identification of responsive documents.

11.     In supervising WAMY's document collection efforts and ensuring that potentially responsive documents were properly identified, members of the legal team took over thirty (30) trips abroad to regulate the collection of records and to review documents for responsiveness.

12.     Counsel visited a warehouse where all documents collected from the regional and branch offices by the search team delegates were being aggregated and copied. Mr. Goetz and I specifically searched through these documents with the team of delegates, demonstrating to the team the method and guidelines for the documents search.

13.     Counsel gave specific directions to WAMY's search team delegates regarding how to continue searching for documents by having the search team watch and participate with counsel in the document search.

14.     The search team delegates and counsel reviewed documents and identified relevant documents for production. *See annexed hereto* as <u>Exhibit 1</u> photographs of Mr. Goetz, the search team, and myself going through WAMY's documents at the headquarters' warehouse during one of our visits. Documents identified by counsel as relevant and responsive to PEC's discovery requests were then scanned and sent back to counsel's offices for further review and production.

15.     Counsel for WAMY visited Saudi Arabia multiple times. On each trip, counsel reviewed new documents for relevance and had the search team scan the identified documents for production.   Many of these trips lasted six to seven days in the middle of the Saudi desert.

16.     Once documents were scanned, a second review was conducted by WAMY's counsel in New York to ascertain that no relevant documents were missing.

17.     During the second review by attorneys back in the United States, if documents seemed missing, the firm's attorneys, led by Ms. Kimundi, would make specific requests and give specific guidelines to the search teams for another around of document search, including how to and where to look for certain types of documents. This process of filling in any gaps in discovery responses continued from the beginning of discovery until the end. It was the reason why WAMY had to request several discovery deadline extensions.

18.     WAMY's counsel, myself included, have directly communicated with and worked side by side throughout the discovery process with the search team, the regional

officers, and the heads of chapters for the purpose of fulfilling WAMY's obligations by searching and producing relevant and responsive documents.

19.     All documents found were reviewed by native Arabic speakers and then reviewed a second time for responsiveness at counsel's offices, thereby ensuring that all responsive documents were found and produced.

20.     Counsel had various follow up meetings and went through documents gathered by WAMY. Counsel reviewed repeatedly Plaintiffs' requests with the search team and requested the search for more documents relevant and responsive to the specific requests when not previously located. The follow up meetings and constant communications lasted until the end of the discovery.

21.     In addition to searching for documents and directing the search team to locate relevant documents, WAMY counsel met with current and former heads of WAMY chapters in various countries. We explained the importance of locating all relevant documents, even if they do not exist at the chapters. We specifically asked the former heads of chapters to search for documents within their personal possession, if any. We wanted to cover all aspects, search for and locate discovery documents, wherever they may exist.

22.     Based on the foregoing, WAMY has conducted exhaustive and thorough searches of documents, whether these documents existed in the chapters, regional offices, the headquarters' warehouse, filing rooms, or any other locations where WAMY counsel suspected they may exist.

23.     I believe that WAMY has met its discovery obligations. WAMY has diligently searched for documents relevant to Plaintiffs' requests and this litigation such that responsive documents have been securely, effectively, and efficiently produced to Plaintiffs.

24.     WAMY has conducted extensive searches for responsive documents from chapters and produced them to PEC. In addition, many of the documents PEC mistakenly claims are missing have been produced. WAMY will follow up on the documents' production per this Court's Order on August 29, 2018 (DKT # 4130).

25.     As a result of these efforts, nearly 1,250,000 pages of responsive records have been produced.

Dated: New York, New York
         September 12, 2018

Respectfully Submitted,

_____
Omar T. Mohammedi, Esq.