UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-1570 (GBD)(SN) ECF Case |
|---|---|

This document relates to:
*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, No. 04-CV-05970
*Federal Insurance Col, et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Euro Brokers v. Al Baraka Investment and Development Corp., et al,* No. 04-CV-7279
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp.*, et al, No. 04-CV-1923
*World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp.*, et al., No. 04-CV-07280

**DECLARATION OF FREDERICK J. GOETZ IN SUPPORT OF DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH-SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH-INTERNATIONAL MOTION FOR RECONSIDERATION**

I, Frederick J. Goetz, declare under penalty of perjury and affirm as follows:

1.   I am one of the attorneys representing the World Assembly of Muslim Youth – Saudi Arabia and World Assembly of Muslim Youth - International (collectively "WAMY"). I am licensed to practice law in Minnesota and have been so licensed since 1987. I am admitted to practice in the United States District Courts for the Districts of Minnesota, Western Wisconsin, and North Dakota; the Eighth Circuit Court of Appeals; and the United States Supreme Court. I make this declaration in support of WAMY's motion for reconsideration of Section IV of the Court's Order of August 29, 2018. (Dkt. No. 4130).

2.   More particularly, the purpose of this declaration is to set forth in some detail the efforts that I have personally been involved in as one of WAMY's counsel to complete WAMY's document production in response to Plaintiffs' numerous requests for production of documents.

3. I have been involved in this case as one of WAMY's counsel since approximately March of 2011. During this period, I and other counsel representing WAMY and WAMY International collectively have spent thousands of hours working on discovery with our clients. Counsel have been deeply involved in discovery and have personally overseen the document collection and production process, including direct communication with WAMY personnel as to document gathering and review for responsiveness. These efforts that I have been involved in have included dozens of overseas trips to meet with WAMY staff and officials – approximately one dozen of which I have personally participated in.

4. The first of these trips that I participated in was in October 2011 to the Kingdom of Saudi Arabia ("KSA") and lasted approximately six days. One of the main purposes of this trip was to ascertain the process WAMY had in place to gather documents and materials in response to Plaintiffs' document requests and put a system in place that would ensure a robust and complete document production.

5. WAMY hired several employees for the express purpose of gathering documents from WAMY's branch offices for production. It had up to 150 individuals involved in the search team and delegates assisting with gathering documents with counsel for review and production. During the October 2011 trip, I, along with co-counsel Omar Mohammedi, personally met with the WAMY Assistant Secretary General Dr. Al-Mazroo and other members of the team that WAMY had assembled to complete the document production, including the heads of regional offices within the Kingdom. We went through each document request which Plaintiffs had propounded up to that point and clarified what it was that needed to be gathered for production.

6. Counsel directed WAMY's search team to turn over every single document from WAMY's headquarters and the regional KSA offices to be sent to counsel for review for relevance and responsiveness to Plaintiffs' document requests.

7. For purposes of the litigation, Counsel also directed all of the regional offices and branch chapters to send ALL chapter documents and records to the Kingdom of Saudi Arabia for counsel and search team review for responsiveness to Plaintiffs' requests.

8. During these meetings, I inspected and reviewed a large file room at WAMY's headquarters in Riyadh, which had been specifically set up for the document production process. WAMY had gathered documents from its headquarters, regional offices, and branch chapters, as maintained the ordinary course of business, in this large file room. These documents had been assembled as part of the document production for duplication and transmission to counsel. Though most of the documents were in Arabic (a language I can neither speak nor read), I did personally review documents in English and was able to confirm that they were indeed within the scope of Plaintiffs' discovery requests.

9. Approximately two months after the October meeting, in early December 2011, I participated in a follow up conference by telephone with some of the members of the WAMY search team that were involved in the document production. We went over the status of the document production and did our best to ensure that they were on task. It certainly seemed that they were.

10. After this initial meeting, I attended eleven other meetings abroad with various WAMY officials and members of the document search team that concerned, in whole or in part, WAMY's fulfillment of its obligations to produce documents in response to Plaintiffs' requests. Many of these meetings would last for several days.

11. On one of these trips to the Kingdom, in approximately October of 2015, counsel personally inspected a warehouse just outside of Riyadh, which contained documents collected by WAMY from chapters all over the world. Included were documents gathered by the search teams, as instructed by WAMY's counsel, from regional and branch offices and then shipped to Riyadh.

12. During the visit to the warehouse, counsel inspected the records. Counsel directed that the WAMY search team scan and forward documents within the relevant discovery time period to WAMY's counsel in New York for a secondary, more detailed review for production.

13. During these meetings, I also met with WAMY officials in both Riyadh and Jeddah concerning the document production.  Outside of the main office in Riyadh, the Jeddah office was the second most important regional office within the KSA and oversaw the review of documents of those chapters under its supervision. While in Jeddah, I met with members of the WAMY search team who were assembling documents in response to the document requests. We reviewed specifically what was needed to be produced from the regional offices and branch chapters, including financial records, bank statements and similar records, auditing and accounting records, annual reports, project reports, and the like.

14. Also, while in Jeddah, I participated in meetings with the head of the Pakistan office.  The meetings concerned document production among other things.  We reviewed with the head of the Pakistan office some of the reports produced and ascertained that all responsive documents within the possession of the Pakistan office had been produced to either WAMY Riyadh or WAMY Jeddah and then produced to counsel.

15. Also, during the October 2015 meetings in Riyadh, at counsel's request, WAMY's counsel again met with the heads of all the regional offices within KSA. At the time, each regional office within the Kingdom was responsible for overseeing the activities of specific chapters around the world, divided by geographic region. The specific purpose and goal of this meeting was to review with these WAMY officials the areas where counsel thought there might be gaps in the document production from the various chapters. WAMY's counsel went through with each regional head what they had done to ensure that they had received all documents from the WAMY offices and chapters which reported to that regional office. We also went through with them what needed to be done, in terms of searching for and producing any missing documents from the chapters to fulfill WAMY's document production obligations.

16. The regional offices participated in the process to procure all documents from the WAMY chapters. The regional offices sent to WAMY headquarters all chapter documents in their possession. The regional office heads also helped the WAMY search teams and delegates obtain documents from the chapters. The WAMY search teams and delegates, following the instruction, direction, and oversight by WAMY counsel, went to WAMY chapters and obtained or copied all chapter documents without exception. The documents were then transferred to WAMY's main office in Riyadh. The documents were first reviewed in Riyadh by WAMY's search team following the instructions by counsel. Counsel had worked directly with the search team in Riyadh on multiple occasions to locate responsive documents and to clarify with the team what documents needed to be produced. Counsel had continuing contact with the search team during this process to verify that all responsive documents were being produced. Pertinent documents were then scanned and transmitted, in

a number of separate tranches, to WAMY's counsel in New York. There, the documents underwent a second review by counsel, and responsive documents and indices were then produced to the PEC.

17.    Counsel met with former and existing WAMY regional officers to gather any documents that may be in their individual possession, custody, and control.

18.    Counsel also met with former and present heads of certain chapters, discussed any missing documents, and supervised the search for such documents.

19.    The undersigned counsel is aware that, because of the efforts of WAMY and its counsel as described above, WAMY produced nearly 1.25 million pages.  While some of these pages of records certainly include such everyday items as receipts, counsel believe it was important to produce all documents that could even arguably be responsive to Plaintiffs' requests, including receipts, as they were pertinent to how chapters spent money on projects and verified where the money went.

20.    Counsel believes that the process created by WAMY and its counsel has resulted in a robust and complete document production.  The system allowed counsel to work closely with WAMY's search team delegates and officials to obtain records from the individual chapters and later checked and rechecked, often through in-person meetings with counsel, for full compliance to clarify exactly what needed to be produced and to check and check again that all responsive documents had been produced. When gaps appeared in the production, counsel went back and directed WAMY officials, members of the search team, heads of regional offices, and chapter officials to supply any missing records if they existed.

Dated: 9/12/2018

_____
FREDERICK J. GOETZ