**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
             :

IN RE:                        :         <u>MEMORANDUM DECISION</u>
                            :            <u>AND ORDER</u>

TERRORIST ATTACKS ON      :          03-MDL-1570 (GBD)
SEPTEMBER 11, 2001        :
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This document relates to:

    *Ashton et al. v. al Qaeda Islamic Army, et al.*, 02 Civ. 6977 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

    On August 31, 2015, this Court granted the *Ashton* plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. *See Ashton et al. v. al Qaeda Islamic Army, et al.*, 02 Civ. 6977 (GBD) (SN), ECF No. 3021. Since then, this Court has issued numerous orders addressing the damages due to certain *Ashton* plaintiffs, including immediate and non-immediate family members of the victims killed in the terrorist attacks on September 11, 2001. Before this Court is a motion brought by twenty-five non-immediate family members of the victims killed in the 9/11 terrorist attacks, seeking solatium damages as the functional equivalents of immediate family members.[1] (*See* Mot. for Default J., ECF No. 4058.)

    Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## I.    LEGAL STANDARDS

    This Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on August 8, 2017, Magistrate Judge Sarah Netburn issued a

---

[1] Although this Court previously referred to the magistrate judge all issues related to damages, considering the availability of certain funds for 9/11 victims who have obtained final judgments before September 14, 2018, this Court issues this Memorandum Decision & Order without recommendation from the magistrate judge. (*See* Letter to this Court from Andrew J. Maloney, III dated Aug. 31, 2018, ECF No. 4139.)

Report and Recommendation that detailed an objective framework to evaluate the availability of solatium damages for non-immediate family members of the victims. (ECF No. 3676, hereinafter "*Hoglan IV*".) This Court adopted that recommendation in full on November 17, 2017. (*See* ECF 3795.) The currently pending motion asks this Court to apply the legal principles set forth in *Hoglan IV* and award solatium damages to twenty-five "functional equivalents" of immediate family members. In addition, in keeping with this Court's prior rulings, plaintiffs seek 4.96 percent per annum from September 11, 2001, until the date of judgment, and permission to file applications for any remaining *Ashton* plaintiffs at a later date.

## II.    PLAINTIFFS' CLAIMS

Consistent with the framework set forth in *Hoglan IV*, this Court analyzes each plaintiff's claim for solatium damages individually using the objective criteria set forth therein. (*See generally Hoglan IV.*)

### A.    Crystal and Kayla Barkow

Crystal and Kayla Barkow are the stepdaughters of 9/11 victim Colleen Barkow. Colleen dated and lived with Crystal's father, Daniel Barkow, beginning in approximately 1994, when Crystal was five years old and Kayla was two. In 2000, when Crystal was eleven years old and Kayla was eight, Colleen and Daniel married. (Decl. of Crystal Barkow, ECF No. 4060, ¶ 2.) Crystal and Kayla lived with their biological mother, except on weekends and holidays during the school year, and full time during the summer, when Crystal and Kayla would stay with Colleen and their father. (*Id.*) Crystal was extremely close with Colleen, and they developed a strong mother-daughter relationship. (*Id.* ¶ 3.)

To recover solatium damages, stepchildren must establish that they continuously cohabited with the decedent for a significant period of time before they reached eighteen years of age. (*Hoglan*

2

*IV* at 13.) In addition, this Court has recognized general principles that should be used to determine who the functional equivalent of an immediate family member is. These considerations take into account the role of the stepparent in the child's development and whether the biological parent was present in the stepchild's life. (*See id.* at 7–8.)

Applying these principles to the present facts, neither Crystal nor Kayla Barkow can establish that they are entitled to solatium damages. Crystal and Kayla's biological mother had shared custody of the girls during their childhoods, and both lived primarily with their biological mother. Moreover, although Colleen lived with Crystal's father since approximately 1994, she was married to him for only one year before she was killed on 9/11.

Although there is no basis to doubt the strength of the relationship formed during these pre-marital years, they cannot be considered for this Court's analysis. Accordingly, neither Crystal nor Kayla Barkow can establish the requisite durational longevity to render Colleen the functional equivalent of their mother. While Crystal and Kayla undoubtedly shared deep personal and emotional connections with their stepmother, this Court must apply the *Hoglan IV* framework strictly to effectuate tort law's inherent need to limit recovery to a readily definable class of individuals.

Accordingly, Crystal and Kayla Barkow's claim for solatium damages is DENIED.

### C.    John Leinung

John Leinung is the stepfather of 9/11 victim Paul Battaglia. John married Paul's mother in 1984 when Paul was only two years old, and he resided with him until Paul was killed in 2001. (Decl. of John M. Leinung, ECF No. 4060, ¶¶ 2–3.) Paul's biological father did not have custody rights, and Paul primarily saw his father only on holidays, at the urging of his paternal grandparents. (*Id.* at ¶ 4.) John provided Paul with all the financial, emotional, and moral support that a father would provide for his child. (*Id.* at ¶ 5.) They ate dinner together as a family, and John often helped Paul

3

with his homework and school projects.  (*Id.* at ¶ 6.)  In light of Paul's young age at the time John joined the family, and their subsequent extended period of cohabitation, John Leinung was the functional equivalent of Paul's father.

Accordingly, this Court awards John Leinung the full amount of solatium damages for a parent, $8,500,000.

### D.     Anthony (DeNiro) Graffino

Anthony (DeNiro) Graffino is the stepson of 9/11 victim Peter ("Pete") Carroll.  Pete started dating Anthony's biological mother in the early 1990s, and he moved into the family home in 1993, when Anthony was twelve years old. (Decl. of Anthony (DeNiro) Graffino, ECF No. 4060, ¶ 2.) Anthony's biological father left when he was three years old, and Anthony never had a relationship with him after that point.  (*Id.* at ¶ 4.)  Pete married Anthony's biological mother in 1999, when Anthony was approximately seventeen or eighteen years old.  (*Id.* at ¶ 3; Decl. of Dana Ann DeNiro, ECF No. 4060, ¶ 3.)  However, stepchildren who have nearly finished their secondary education when the decedent became part of the family are generally ineligible for solatium damages.  (*See Hoglan IV* at 13.)  Although Pete moved into the family home when Anthony was twelve, unmarried opposite-sex couples are ineligible for relief absent overwhelming indicia of an intent to be legally joined, such as decades of cohabitation and a full commingling of finances, neither of which are present here. (*Hoglan IV* at 12.)

This Court does not doubt the strong father-son relationship that Anthony had with his stepfather, especially given that his biological father was not present in his life.  Nevertheless, functional equivalence must be determined based on objective factors, not on the strength or intimacy of a relationship.

Accordingly, Anthony Graffino's claim for solatium damages is DENIED.

4

### E.     Dana Ann DeNiro

Dana Ann DeNiro is Anthony (DeNiro) Graffino's younger sister and the stepdaughter of 9/11

victim Pete Carroll.  Dana Ann was approximately fifteen years old when Pete married her biological

mother. (*See* Decl. of Dana Ann DeNiro ¶¶ 2–3.)  Following the marriage, Dana Ann resided with

Pete continuously for the next several years until his death.  (*Id.*)  Dana Ann never had a relationship

with her biological father, and she considers Pete her "dad."  (*Id.* at ¶ 4.)  Given that she spent more

than two years living with Pete as the husband to her mother, this Court finds that Dana Ann was the

functional equivalent of Paul's daughter.  However, since they did not have a relationship during the

early years of Dana Ann's childhood, this Court awards Dana Ann DeNiro $4,250,000 in solatium

damages.

### F.     Joseph Walsh

Joseph Walsh is the stepson of 9/11 victim Carol Flyzik, the domestic partner of Joseph's

biological mother, Nancy.  When Carol moved in with Nancy in 1988, Joseph was seven years old,

and they resided together in the same house until she was killed thirteen years later on September 11,

2001.  (Decl. of Joseph Walsh ("Joseph Walsh Decl."), ECF No. 4060, ¶ 2.)  Carol formed a strong

relationship with Joseph; she taught him how to play basketball, and she provided him with significant

financial support, including paying for his college tuition.  (*Id.* at ¶¶ 4, 6.)  As Joseph states in his

declaration, "Carol was [his] mother in every sense."  (*Id.* at ¶ 3.)

Technically, Joseph was not Carol's *stepson* because Carol did not marry Joseph's mother.

However, Joseph may still recover because Carol was the functional equivalent of Nancy's spouse,

and thus, the functional equivalent of Joseph's stepmother.  In *Hoglan IV*, Magistrate Judge Netburn

enumerated several factors to consider in determining whether a domestic partner was the functional

equivalent of a spouse, including: (1) the length of the relationship; (2) the degree of mutual financial

5

dependence and investments in a common life together; and (3) the duration of cohabitation. (*Hoglan IV* at 11.) Based on these factors, Carol was the functional equivalent of Nancy's spouse. Carol and Nancy lived together for approximately thirteen years, and they raised Nancy's children together. (Joseph Walsh Decl. ¶¶ 1–2.) In addition, Carol and Nancy had a high degree of mutual financial dependence: Carol supported the family financially, she purchased an old Victorian home for the family, and Carol and Nancy engaged in a decade-long refurbishment project, eventually moving in soon before Carol was killed. (*Id.* at ¶¶ 6, 8.)

Therefore, Joseph is properly viewed as the functional equivalent of Carol's stepchild. Given Joseph's young age when Carol joined the family and their extensive cohabitation, this Court awards Joseph Walsh $8,500,000 in solatium damages.

### G. Kevin and Kristin Walsh

Kevin and Kristin Walsh are Joseph Walsh's older siblings and the stepchildren of 9/11 victim Carol Flyzik. Kevin and Kristin were respectively nine and thirteen years old when Carol became part of their family, and they, too, lived with Carol until she was killed in 2001. (Decl. of Kevin Walsh, ECF No. 4060, ¶ 2; Mem. of Law in Supp. of Mot. for Default J. ("Pl.'s Mem."), ECF No. 4059, at 13.) Their relationships with Carol were indistinguishable from that of their younger brother.

Under the framework set forth in *Hoglan IV*, stepchildren who are in early childhood ages (up until the age of eight) when the decedent became part of the family are eligible for full solatium damages; conversely, stepchildren who have passed early childhood (ages nine and above) are eligible for only one-half solatium damages. (*See Hoglan IV*, at 13.)

Because Kevin and Kristin Walsh did not have a relationship with Carol during their early childhoods under the *Hoglan IV* rubric, they are awarded only $4,250,000 in solatium damages.

6

### I.     Robert Callanan

Robert Callanan is the stepson of 9/11 victim Richard Gabriel.  Robert was two years old when Gabriel married Robert's mother, and Richard lived continuously with Robert until the latter left for college in 1982. (Decl. of Robert Callanan, ECF No. 4060, ¶ 2.)  Robert never had a relationship with his biological father, and the decedent is the only father he has ever known.  As Robert states, Richard "did everything a father does for his son." (*Id.* at ¶ 4.)  Accordingly, based on Robert's young age when his mother married Richard and their subsequent extended period of cohabitation, Robert Callanan is awarded $8,500,000, the full solatium damages for a stepchild.

### J.     J. Linzee Whittaker

J. Linzee Whittaker is the stepfather of 9/11 victim Karen Hagerty.  Whittaker married Karen's mother in 1979, when Karen was nine years old, and he resided with Karen until she left for college. (Decl. of J. Linzee Whittaker, ECF No. 4060, ¶ 2.)  Whittaker supported Karen financially, emotionally, and socially.  She had "very little relationship" with her biological father.  (*Id.* at ¶ 4.) Whittaker taught Karen how to play the piano, and they often rode horses together. (*Id.* at ¶ 7.)  Thus, Whittaker is the functional equivalent of Karen's father.  Nevertheless, because Whittaker did not have a relationship with Karen during her early childhood years, he is awarded only $4,250,000 in solatium damages.

### K.     LaKimmie Smith

LaKimmie Smith is the stepdaughter of 9/11 victim Ronnie Lee Henderson. Ronnie married LaKimmie's mother, Shirley Henderson, in 1981, when LaKimmie was four years old.  LaKimmie resided with Ronnie for the next twenty years, until she was twenty-three or twenty-four years old. (Decl. of LaKimmie Smith, ECF No. 4060, ¶ 2.)  LaKimmie had a loving and supportive relationship with her stepfather; by contrast, she had no relationship with her biological father. (*Id.* at ¶ 4.)  Ronnie

provided for all of LaKimmie's financial needs, and he was always there to encourage her during difficult times. (*Id.* at ¶¶ 7, 12.) LaKimmie was therefore the functional equivalent of Ronnie Lee Henderson's child.

Accordingly, this Court awards LaKimmie Smith $8,500,000 in solatium damages.

## L.   Marshall Lashon Ross

Marshall Lashon Ross is the stepson of 9/11 victim Ronnie Henderson. Following Ronnie and Marshall's mother's marriage, Marshall resided with Ronnie from the time he was six years old until Ronnie was killed on September 11, 2001. (Decl. of Marshall Lashon Ross, ECF No. 4060, ¶ 2.) Marshall did not have a relationship with his biological father. As Marshall states in his declaration, Ronnie was and will always be the only father in Marshall's life. (*Id.* at ¶ 4.) Ronnie and Marshall played basketball together, went to the movies, and developed an intimate father-son relationship. (*Id.* at ¶¶ 6–8.) Because Ronnie became part of Marshall's family when Marshall was six years old and because of their extensive cohabitation, Marshall Lashon Ross is awarded $8,500,000 in solatium damages, the full amount for the functional equivalent of a child.

## M.   Gregory Rakovsky

Gregory Rakovsky is the stepson of 9/11 victim Eugueni Kniazev. After dating Gregory's mother for a few years, Eugueni married her in 1996, when Gregory was twelve years old. (Decl. of Gregory Rakovsky, ECF No. 4060, ¶ 2.) Gregory lived with Eugueni continuously until Eugueni was killed on September 11, 2001. (*Id.*) Gregory talked with Eugueni about everything, and he relied on him for the guidance and love that a son seeks from his father. (*Id.* at ¶ 5.) Thus, Gregory was the functional equivalent of Eugueni's son. However, because they did not have a relationship during Gregory's early childhood, he is awarded only $4,250,000, or one-half the solatium damages owed children of 9/11 victims.

8

### N.     Kjell Youngren

Kjell Youngren is the stepson of 9/11 victim Robert LeBlanc.  Robert married Kjell's mother

in 1973, when Kjell was four years old.  Kjell lived with Robert for the next fourteen years, until Kjell

left for college at age eighteen, and thereafter for a year when they were both in Cambridge, England.

(Decl. of Kjell Youngren, ECF No. 4060, ¶ 2.)  Robert was the primary male caretaker in Kjell's life:

although Kjell saw his biological father occasionally, he spent the majority of his time with Robert.

Indeed, Kjell Youngren considers Robert his "Dad," stating that he spoke to Robert about his

problems, ate dinner with him, and asked him for help with his homework.  (*Id.* at ¶ 3.)  Accordingly,

Kjell was the functional equivalent of Robert's son.  Given the young age when Robert entered Kjell's

life and their extended cohabitation, Kjell Youngren is awarded the full amount of solatium damages

for a child, $8,500,000.

### O.     Nissa Youngren

Nissa Youngren is the stepdaughter of 9/11 victim Robert LeBlanc.  Because this Court has

been unable to locate a signed declaration from Nissa, the following analysis is based on the facts as

articulated in the Plaintiffs' memorandum of law.[2]

Nissa was two years old when Robert married her biological mother, and she resided with

Robert continuously until Nissa moved out for college. Like her brother, Nissa had a very close

relationship with Robert, and she was devastated by his tragic death on September 11, 2001.

Accordingly, this Court finds that Nissa was the functional equivalent of Robert's daughter.  Nissa

Youngren is therefore awarded $8,500,000 in solatium damages, provided that the Plaintiffs submit

to this Court a signed declaration from Nissa within two weeks of the judgment.  If this Court does

not receive Nissa's declaration, her judgment will be vacated.

---

[2] Although Exhibit B-15 was labeled, "Declaration of Nissa Youngren," the document itself was in fact a duplicative declaration signed by Kjell Youngren. (*See* Decl. of Nissa Youngren, ECF No. 4060, at 48–50.)

**P.     Lisa Sloan**

Lisa Sloan is the cousin of 9/11 victim Jeffery Palazzo.  There is overwhelming evidence that Lisa was adopted into Jeffery Palazzo's family.  Lisa's father was never involved in her life, and her mother passed away when Lisa was only four years old. (Decl. of Lisa Sloan, ECF No. 4060, ¶ 2.) Following her mother's death, Lisa moved in with her maternal aunt and uncle and their son Jeffery, who was twenty years old at the time.  Lisa considered Jeffrey to be her big brother.

In 1997, when Lisa was fourteen years old, she moved with Jeffery and his wife to Staten Island, and Jeffery became her guardian.  She was living in Jeffery's home as a first-year college student when Jeffery was killed.  They had a very close relationship, and in all senses treated each other like brother and sister.  Given the absence of Lisa's biological parents, this is the rare case where a family member can recover solatium damages for the death of a cousin.  (*See Hoglan IV* at 10.) Accordingly, Lisa Sloan is awarded $4,250,000, the amount awarded to siblings of 9/11 decedents.

**Q.     Darcie Bailey-Scauso**

Darcie Bailey-Scauso is the stepdaughter of 9/11 victim Dennis Scauso.  Dennis married Darcie's mother in 1993, when Darcie was five years old.  Darcie lived with Dennis from then until he was killed on September 11, 2001. (Decl. of Darcie Bailey-Scauso, ECF No. 4060, ¶¶ 2–3.) Darcie had a very close relationship with Dennis; she called him "Daddy" and adopted his last name, which she retains to this day.  (*Id.*)  Based on the framework outlined in *Hoglan IV*, Darcie was functionally equivalent to Dennis's daughter.

This Court therefore awards Darcie Bailey-Scauso $8,500,000 in solatium damages.

**R.     Nichole Scochemaro**

Nichole Scochemaro is the stepdaughter of 9/11 victim Kevin Smith, who married Nichole's mother in 1993, when Nichole was approximately fourteen years old.  Kevin resided with Nichole

until he was killed, and he provided all of the financial, emotional, and moral support that any loving father would provide for his child.  (Decl. of Nichole Scochemaro, ECF No. 4060, ¶¶ 2–3.)  As Nichole states in her declaration, Kevin was a great man and "did everything a father should do for their kids." (*Id.* at ¶ 5.)  Thus, Nichole's relationship with Kevin was functionally equivalent to that of a daughter.  However, because Nichole Scochemaro did not spend her early childhood with her stepfather, this Court awards her $4,250,000 in solatium damages, one-half the amount awarded to children of 9/11 victims.

### S.    Anthony J. Viola

Anthony Viola is the younger brother of Nichole Scochemaro and the stepson of 9/11 victim Kevin Smith.  Anthony was approximately eleven when his stepfather married his mother, and they lived together until Kevin was killed on September 11, 2001. (Decl. of Anthony Viola, ECF No. 4060, ¶¶ 2–3.) As was the case with his sister, Anthony had a loving and supportive relationship with Kevin. They went to Yankees games together, took family vacations, and developed a strong father-son connection. (*Id.* at ¶ 6.)  Anthony was thus functionally equivalent to Kevin's son.  However, as he did not spend his early childhood years with his stepfather, this Court awards Anthony Viola $4,250,000.

### T.    Vincent Viola, Jr.

Vincent Viola, Jr. is also the stepson of 9/11 victim Kevin Smith.  Vincent was approximately twelve years old when Kevin married his mother and became part of the family.  Vincent continuously resided with Kevin for at least the next six years, until Vincent joined the military. (Decl. of Vincent Viola, ECF No. 4060, ¶¶ 2–3.)  Vincent's relationship with his stepfather is indistinguishable from that of his siblings, Anthony Viola and Nichole Scochemaro.  Thus, for the reasons explained above, Vincent Viola, Jr. is awarded $4,250,000 in solatium damages.

### U.    Jessica (Schoenholtz) Murphy

Jessica (Schoenholtz) Murphy is the stepsister of 9/11 victim Alexander Steinman.  Jessica lived with Alex for several years, from the time she was six years old and Alex was fourteen years old.  (Decl. of Jessica (Schoenholtz) Murphy, ECF No. 4060, ¶¶ 2–3; Decl. of Linda Steinman, ECF No. 4060, ¶ 2.)  Jessica always referred to Alex as a brother, and they remained close after Alex moved out of the family home.  (*Id.* at ¶¶ 4–5.)

When analyzing stepsibling claims, the ages of both siblings are relevant to the inquiry.  (*See Hoglan IV* at 14.)  Because Jessica did not have a relationship with Alex during *his* early childhood, she is awarded $2,125,000, one-half the amount for siblings of 9/11 victims.

### V.    Linda Steinman

Linda Steinman is the biological mother of claimant Jessica (Schoenholtz) Murphy and the stepmother of 9/11 victim Alexander Steinman.  Linda married Alex's father in 1983 when Alex was fourteen years old, and she resided with Alex for the rest of his teenage years.  (Decl. of Linda Steinman ¶¶ 2–3.)  Though they lived together for a relatively short period of time, Linda became Alex's only mother figure because his biological mother died when he was a young teen. (*Id.* at ¶ 4.) Linda provided significant financial and emotional support to her stepson, and she remains close to Alex's wife to this day.  (*Id.* at ¶ 8.)  Accordingly, Linda was the functional equivalent of Alex's mother.  However, as they did not have a relationship during Alex's childhood, Linda Steinman is awarded only $4,250,000 in solatium damages.

### W.    Fern Rosenbaum

Fern Rosenbaum is the stepmother of 9/11 victim Brooke D. Rosenbaum. Fern married Brooke's father when Brooke was nine years old, and she resided with Brooke until after he finished college. (Decl. of Fern Rosenbaum, ECF No. 4060, ¶ 2.)  Brooke's biological mother lived in Florida,

and he saw her only for a few weeks during the summer. (*Id.* at ¶ 3.) Fern did everything a mother would do for her son. She and Brooke developed a strong relationship, and they would talk almost every day when Brooke moved out of the family home. (*Id.* at ¶ 6.) Accordingly, Fern was functionally equivalent to Brooke's mother. However, because she married Brooke's father after Brooke turned nine years old, and because Brooke's mother was not entirely absent in his life, Fern Rosenbaum is awarded one-half solatium damages for a parent, or $4,250,000.

### X.   Esther E. Heymann

Esther Heymann is the stepmother of 9/11 victim Honor Elizabeth Wainio. Esther married Elizabeth's father in 1979, when Elizabeth was approximately six years old. Following the marriage, Esther resided full-time with Elizabeth until she left for college. (Decl. of Esther Heymann, ECF No. 4060, ¶ 4.) Esther was extremely close with Elizabeth, and they developed a strong mother-daughter relationship. Accordingly, this Court finds that Esther was the functional equivalent of Elizabeth's mother. Esther Heymann is therefore awarded $8,500,000 in solatium damages.

### Y.   Jason Tucker

Jason Tucker is the stepbrother of 9/11 victim Brian Warner. Brian's mother started dating Jason's father when Brian was fifteen years old and Jason was ten years old. A year later, their parents married, and Jason moved in with Brian. Jason resided with Brian for the next two to three years, until Brian moved out of the family home upon reaching the age of majority. (Decl. of Jason Tucker, ECF No. 4060, ¶¶ 2–3; Pls.' Mem. at 25.) Although the record is somewhat sparse, this Court finds that Jason continuously cohabitated with Brian for at least two years before the date either individual turned eighteen. Accordingly, Jason was the functional equivalent of Brian's brother. However, because Jason and Brian did not have a relationship during their early childhoods, Jason Tucker is awarded only $2,125,000 in solatium damages, one-half the amount for biological siblings.

### III.   CONCLUSION

For the foregoing reasons, this Court enters judgment against the Islamic Republic of Iran for

a total of $127,500,000 as the sum of the following amounts:

| Claimant | 9/11 Victim | Relationship to Victim | Damages Awarded |
|---|---|---|---|
| John Leinung | Paul Battaglia | Stepparent | $8,500,000 |
| Dana Ann DeNiro | Peter Carroll | Stepchild | $4,250,000 |
| Joseph Walsh | Carol Flyzik | Stepchild | $8,500,000 |
| Kevin Walsh | Carol Flyzik | Stepchild | $4,250,000 |
| Kristin Walsh | Carol Flyzik | Stepchild | $4,250,000 |
| Robert Callanan | Richard Gabriel | Stepchild | $8,500,000 |
| J. Linzee Whittaker | Karen Hagerty | Stepparent | $4,250,000 |
| LaKimmie Smith | Ronnie Lee Henderson | Stepchild | $8,500,000 |
| Marshall Lashon Ross | Ronnie Henderson | Stepchild | $8,500,000 |
| Gregory Rakovsky | Eugueni Kniazev | Stepchild | $4,250,000 |
| Kjell Youngren | Robert LeBlanc | Stepchild | $8,500,000 |
| Nissa Youngren | Robert LeBlanc | Stepchild | $8,500,000 |
| Lisa Sloan | Jeffery Palazzo | Stepsibling | $4,250,000 |
| Darcie Bailey-Scauso | Dennis Scauso | Stepchild | $8,500,000 |
| Nichole Scochemaro | Kevin Smith | Stepchild | $4,250,000 |
| Anthony J. Viola | Kevin Smith | Stepchild | $4,250,000 |
| Vincent Viola | Kevin Smith | Stepchild | $4,250,000 |
| Jessica (Schoenholtz) Murphy | Alexander Steinman | Stepsibling | $2,125,000 |

14

| Claimant | 9/11 Victim | Relationship to Victim | Damages Awarded |
|---|---|---|---|
| Linda Steinman | Alexander Steinman | Stepparent | $4,250,000 |
| Fern Rosenbaum | Brooke D. Rosenbaum | Stepparent | $4,250,000 |
| Esther E. Heymann | Honor Elizabeth Wainio | Stepparent | $8,500,000 |
| Jason Tucker | Brian Warner | Stepsibling | $2,125,000 |
| | | **TOTAL:** | **$127,500,000.00** |

Plaintiffs' counsel shall provide this Court with a signed declaration from Nissa Youngren within two weeks of the judgment. If this Court does not receive Nissa Youngren's declaration, her judgment will be vacated.

Plaintiffs who receive solatium awards shall be awarded prejudgment interest on those damages from September 11, 2001, to the date of judgment at the rate of 4.96 percent per annum, compounded annually.

The solatium claims for Crystal Barkow, Kayla Barkow, and Anthony (DeNiro) Graffino are DENIED under the principles established in *Hoglan IV*.

Finally, Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

Dated: September 13, 2018
New York, New York

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

15