USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 1 3 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

TERRORIST ATTACKS ON SEPTEMBER 11, 2001

MEMORANDUM DECISION AND ORDER

03-MDL-1570 (GBD)

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02 Civ. 6977 (GBD) (SN)
*Burlingame v. Bin Laden, et al.*, 02 Civ. 7230 (GBD) (SN)
*Thomas Burnett, Sr. et al. v. The Islamic Republic of Iran, et al.*, 15 Civ. 9903 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

On August 31, 2015, this Court granted the *Ashton* plaintiffs—including the *Burlingame* subset of the *Ashton* Plaintiffs—an Order of Judgment by default against the Islamic Republic of Iran. *See Ashton et al. v. al Qaeda Islamic Army, et al.*, 02 Civ. 6977 (GBD) (SN), ECF No. 3021. Similarly, on January 31, 2017, this Court granted the *Burnett* plaintiffs an Order of Judgment by default against Iran, the Islamic Revolutionary Guard Corps, and the Central Bank of the Islamic Republic of Iran. *See Thomas Burnett, Sr. et al. v. The Islamic Republic of Iran, et al.*, 15-cv-9903, ECF No. 85. Since then, this Court has issued numerous orders addressing the damages due in these cases, including for immediate and non-immediate family members of the victims killed in the terrorist attacks on September 11, 2001. Before this Court are separate motions brought by non-immediate family members of the victims killed in the 9/11 terrorist attacks, seeking solatium

damages as the functional equivalents of immediate family members.[1, 2] (*See* 02-cv-7230, ECF No. 31; 03-mdl-1570, ECF No. 4131; 15-cv-9903, ECF Nos. 115.)

The *Burnett* plaintiffs' motion is GRANTED. The *Burlingame* plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## I. LEGAL STANDARDS

This Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on August 8, 2017, Magistrate Judge Sarah Netburn issued a Report and Recommendation that detailed an objective framework to evaluate the availability of solatium damages for non-immediate family members of the victims. (ECF No. 3676, hereinafter "*Hoglan IV*".) This Court adopted that recommendation in full on November 17, 2017. (*See* ECF 3795.) The currently pending motion asks this Court to apply the legal principles set forth in *Hoglan IV* and award solatium damages to twenty-five "functional equivalents" of immediate family members. In addition, in keeping with this Court's prior rulings, plaintiffs seek 4.96 percent per annum from September 11, 2001, until the date of judgment, and permission to file applications for any remaining *Ashton* plaintiffs at a later date.

## II. THE *BURLINGAME* PLAINTIFFS' CLAIMS

Consistent with the framework set forth in *Hoglan IV*, this Court analyzes each plaintiff's claim for solatium damages individually using the objective criteria set forth therein. (*See generally Hoglan IV*.)

---

[1] Although this Court previously referred to the magistrate judge all issues related to damages, considering the availability of certain funds for 9/11 victims who have obtained final judgments before September 14, 2018, this Court issues this Memorandum Decision & Order without recommendation from the magistrate judge. (*See* Letter to this Court from Andrew J. Maloney, III dated Aug. 31, 2018, ECF No. 4139.)

[2] The *Burlingame* plaintiffs also sought solatium damages on behalf of two *immediate* family members. This Court resolved these claims in a separate order. (*See* 02-cv-7230, ECF No. 42.)

### A. Kerby Laurent

Kerby Laurent is the stepson of 9/11 victim Francois Jean-Pierre. In 1991, Francois moved in with Kerby when Kerby was fourteen years old. (Decl. of Kerby Laurent, 02-cv-7230, ECF No. 32, ¶ 3.) In 1994, when Kerby was seventeen years old, Francois married Kerby's biological mother, Christine. (*Id.* at ¶ 2.) From 1991 until he was killed, Francois was the only father figure in Kerby's daily life. (*Id.* at ¶ 4.)

Stepchildren who have nearly finished their secondary education when the decedent became part of the family are generally ineligible for solatium damages. (*See Hoglan IV* at 13.) Here, although Francois moved into the family home when Kerby was fourteen, Francois only became part of the family when he married Kerby's mother three years later, when he was seventeen years old. Unmarried opposite-sex couples are generally ineligible for relief absent overwhelming indicia of an intent to be legally joined, such as decades of cohabitation and full commingling of finances, neither of which are present here. (*Hoglan IV* at 12.)

This Court does not doubt the strong father-son relationship that Kerby had with his stepfather, especially given that his biological father was not present in his life. However, this Court must determine functional equivalence based on objective factors, not on the strength or intimacy of a relationship. Accordingly, Kerby Laurent's claim for solatium damages is DENIED.

### B. Frank Kminek, Sr.

Frank Kminek, Sr. is the stepfather of 9/11 victim Mari-Rae Sopper. Frank, Sr. married Mari-Rae's mother in 1971, when Mari-Rae was only four years old, and he lived with her for the next fifteen years, until Mari-Rae left for college in 1986. (Decl. of Frank Kminek, Sr., 02-cv-7230, ECF No. 32, ¶¶ 2–3.) Frank, Sr. was the primary male caretaker in Mari-Rae's life: although Mari-Rae spent most weekends with her biological father, she spent the rest of the year, including her summers,

with Frank, Sr. and her mother. (*Id.*) Moreover, Frank, Sr. supported Mari-Rae financially, emotionally, and socially. He taught her how to drive, bought her a car, and was highly supportive of her pursuits in gymnastics. (*Id.* at ¶¶ 6–7.) Because Frank, Sr. became part of the family when Mari-Rae was four years old and because of the subsequent period of their extended cohabitation, this Court awards Frank, Sr. $8,500,000 in solatium damages, the full amount paid to parents of 9/11 victims.

### C. Frank Kminek, Jr.

Frank Kminek, Jr. is the son of Frank Kminek, Sr., and the stepbrother of 9/11 victim Mari-Rae Sopper. As stated above, Frank, Sr. married Mari-Rae's mother in 1971 when Mari-Rae was four years old. (Decl. of Frank Kminek, Jr., 02-cv-7230, ECF No. 32, ¶ 2.) Frank, Jr. was six years old at the time of the marriage. (*Id.*) Frank, Jr. lived with Mari-Rae for the next twelve years, until he reached the age of majority and left home for college. (*Id.* at ¶ 3.) Although Mari-Rae spent most weekends with her biological father, she spent the rest of the year with Frank, Jr. Indeed, Frank, Jr. had a very close relationship with his stepsister, and they always referred to each other as brother and sister. (*Id.* at ¶¶ 4, 10–11.) Accordingly, this Court finds that Frank Kminek, Jr. was the functional equivalent of Mari-Rae's brother, and awards him $4,250,000 in solatium damages, the full amount paid to siblings of 9/11 victims.

### D. Christopher Kminek

Christopher Kminek—the son of Frank Kminek, Sr., and brother of Frank Kminek, Jr.—is also the stepbrother of 9/11 victim Mari-Rae Sopper. When their parents were married in 1971, Christopher was five years old and Mari-Rae was four years old. (Decl. of Christopher Kminek, 02-cv-07230, ECF No. 32 ¶ 2.) Although Christopher's declaration does not state how long he resided with Mari-Rae, the declarations of Frank, Sr. and Frank, Jr. make plain that the family lived together

until each of the children left for college. (*See* Decl. of Frank Kminek, Sr. ¶ 3; Decl. of Frank Kminek, Jr. ¶ 3.)

Thus, it seems that Christopher and Mari-Rae lived together for nearly fifteen years, until Mari-Rae left for college in 1986. In addition, Christopher had a loving relationship with his stepsister that this Court finds indistinguishable from that of his brother's. Accordingly, Christopher Kminek was functionally equivalent to Mari-Rae's brother and he is awarded $4,250,000 in solatium damages.

**E. Andrew Petisce**

Andrew Petisce is the stepson of 9/11 victim Kenneth Waldie. Andrew was three years old when Kenneth married Andrew's mother. Kenneth lived continuously with Andrew until the latter left for college. (Decl. of Andrew Petisce, 02-cv-7230, ECF No. 32, ¶ 3.) Although Andrew briefly mentions his biological father in his declaration, they do not seem to have had a significant relationship; indeed, Kenneth apparently petitioned to adopt Andrew, albeit unsuccessfully. (*Id.* at ¶ 4.) Andrew states that Kenneth was his father "in all respects other than biology." (*Id.* at ¶¶ 4–5.) Given Andrew's young age at the time Kenneth became part of the family, as well as the period of their extended cohabitation, this Court finds that Andrew Petisce was functionally equivalent to Kenneth's son and awards him the full amount of solatium damages owed a child of a 9/11 victim.

## III. THE *BURNETT* PLAINTIFFS' CLAIMS

**A. Christina L. Kminek**

Christina Kminek is the stepsister of 9/11 victim Mari-Rae Sopper. Christina's father married Mari-Rae mother in 1971, when both Christina and Mari-Rae were four years old. (*See* Decl. of Christina L. Kminek, 03-md-01570, ECF No. 4134 ¶ 3; Decl. Frank Kminek, Sr. ¶ 2.) Christina and Mari-Rae resided with each other—often times sharing a room—for the next fourteen years. (Decl. of Christina L. Kminek, 03-md-01570, ECF No. 4134 ¶¶ 4, 7.) Although Mari-Rae spent most

weekends with her biological father, she spent the rest of the year, including her summers, with Christina and her mother. (Decl. Frank J. Kminek, Sr. ¶ 3.) Moreover, Christina had a strong relationship with her stepsister as they entered adulthood. They lived in nearby neighborhoods in Washington, D.C., and they would speak with each other often. (Decl. of Christina L. Kminek ¶¶ 4, 7.) The two women were so close that Mari-Rae appointed Christina as the personal representative of Mari-Rae's estate, a role that Christina is fulfilling in representing the estate in this litigation. (*Id.* at ¶ 11.) Given the age when they became stepsisters and their extended cohabitation, this Court finds that Christina and Mari-Rae were the functional equivalents of sisters. Accordingly, Christina Kminek is awarded $4,250,000 in solatium damages.

**B. Elba Iris Cedeno**

Elba Iris Cedeno is the domestic partner of 9/11 victim Catherine ("Cathy") Smith. In *Hoglan IV*, Magistrate Judge Netburn recognized several factors used to determine whether a domestic partner was the functional equivalent of a spouse, including (1) the length of the relationship; (2) the degree of mutual financial dependence and investments in a common life together; and (3) the duration of cohabitation. (*See Hoglan IV* at 11.) Based on these factors, this Court finds that Elba was the functional equivalent of Cathy's spouse.

Elba and Cathy lived together as a couple for seven years, although they had a relationship that spanned more than twenty years. (Decl. of Elba Iris Cedeno, 03-md-01570, ECF No. 4134, ¶ 2; Mem. of Law in Supp. of Pls.' Mot. for Default J., ECF No. 4132, at 12.) In addition, Elba had a high degree of mutual financial dependence with her domestic partner: she was the executrix of Cathy's will, and also the beneficiary of Cathy's life insurance and workers' compensation plans. (Decl. of Elba Iris Cedeno ¶¶ 8, 10.) To the extent Elba survived Cathy, Cathy's will devised the entire estate to her. (*Id.* at ¶ 9.) Finally, Elba and Cathy were completely committed to each other both financially

and emotionally. They had shared bank accounts, were in the process of building a home together, and had plans to travel to Europe to celebrate Elba's 50th birthday. (*Id.* at ¶¶ 5, 7, 11.)

For these reasons, it is overwhelmingly likely that Elba and Cathy would have been married had they been permitted by law to do so. Accordingly, this Court finds that Elba Iris Cedeno was functionally equivalent to Cathy's spouse and awards her $12,500,000 in solatium damages.

## IV. CONCLUSION

For the foregoing reasons, this Court enters judgment against the Islamic Republic of Iran for a total of $42,250,000 as the sum of the following amounts:

| Claimant | 9/11 Victim | Relationship to Victim | Damages Awarded |
|---|---|---|---|
| Frank Kminek, Sr. | Mari-Rae Sopper | Stepparent | $8,500,000 |
| Frank Kminek, Jr. | Mari-Rae Sopper | Stepsibling | $4,250,000 |
| Christopher Kminek | Mari-Rae Sopper | Stepsibling | $4,250,000 |
| Christina L. Kminek | Mari-Rae Sopper | Stepsibling | $4,250,000 |
| Andrew Petisce | Kenneth Waldie | Stepchild | $8,500,000 |
| Elba Iris Cedeno | Catherine Smith | Domestic Partner | $12,500,000 |
| | | **TOTAL:** | **$42,250,000** |

This Court denies the *Burlingame* Plaintiffs' claim on behalf of Kerby Laurent under the principles established in *Hoglan IV*.

Both the *Burnett* and *Burlingame* Plaintiffs who receive solatium awards shall be awarded prejudgment interest on those damages from September 11, 2001, to the date of judgment at the rate of 4.96 percent per annum, compounded annually.

Both the *Burnett* and *Burlingame* Plaintiffs may submit an application for punitive damages, economic damages, or other damages (to the extent such awards have not previously been ordered) at a later date consistent with any future rulings made by this Court on this issue.

Finally, the remaining *Burnett* and *Burlingame* Plaintiffs not appearing in these motions and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

Dated: September 13, 2018
New York, New York

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
United States District Judge