UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03-MD-01570 (GBD)(SN)<br>ECF Case |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.,* Case No. 04-cv-07065
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.,* No. 04-CV-05970
*Federal Insurance Co, et al. v. Al Qaida, et al.,* No. 03-CV-6978
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp.,* et al, No. 04-CV-1923
*Euro Brokers Inc., et al., v. Al Baraka, et al.,* Case No. 04 Civ. 7279

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, WORLD ASSEMBLY OF MUSLIM YOUTH SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH INTERNATIONALS' MOTION FOR RECONSIDERATION OF SECTION IV OF THE COURT'S OPINION AND ORDER COMPELLING DISCOVERY DATED AUGUST 29, 2018**

| | |
|---|---|
| Jerry S. Goldman, Esq.<br>ANDERSON KILL P.C.<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel:  (212) 278-1000 | James P. Kreindler, Esq.<br>Steven R. Pounian, Esq.<br>Andrew J. Maloney, III, Esq.<br>Justin T. Green, Esq.<br>KREINDLER & KREINDLER, LLP<br>750 Third Avenue, 32nd Floor<br>New York, NY 10017<br>Tel:  (212) 687-8181 |
| Sean P. Carter, Esq.<br>Stephen A. Cozen, Esq.<br>J. Scott Tarbutton, Esq.<br>COZEN O'CONNOR<br>1650 Market Street, Suite 2800<br>Philadelphia, PA 19103<br>Tel:  (215) 665-2000 | Jodi Westbrook Flowers, Esq.<br>Robert T. Haefele, Esq.<br>MOTLEY RICE, LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, SC 29465<br>Tel:  (843) 216-9000 |

*Attorneys for Plaintiffs' Executive Committees*

Dated:    October 11, 2018

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................................1

BACKGROUND ................................................................................................................................2

LEGAL STANDARD REGARDING MOTIONS FOR RECONSIDERATION OR
        RECONSIDERATION ...................................................................................................4

ARGUMENT ......................................................................................................................................5

I.      Defendants Identify No Intervening Change In Controlling Law .......................................5

II.     No New Evidence Has Become Available So As to Warrant a Change in the
        Order .....................................................................................................................................5

III.    There is No Clear Error or Manifest Injustice Which Needs to Be Corrected ....................8

        A.      No Relevant New Facts are Presented in the MFR..................................................9

CONCLUSION .................................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*,
    888 F. Supp. 2d 478 (S.D.N.Y. 2012).........................................................................................7

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012).........................................................................................................5

*Davidson v. Scully*,
    172 F. Supp. 2d 458 (S.D.N.Y. 2001).........................................................................................5

*Fernandez v. Windmill Distrib. Co.*,
    No. 12-cv-1968, 2016 WL 4399325 (S.D.N.Y. Aug. 17, 2016)............................................5, 6

*Forsyth v. Fed'n Empl. & Guidance Serv.*,
    No. 97-cv-3399, 2003 U.S. Dist. LEXIS 3314 (S.D.N.Y. Mar. 6. 2003)................................11

*Hines v. Overstock.com, Inc.*,
    380 Fed. App'x 22 (2d Cir. 2010)..............................................................................................7

*Lima LS PLC v. Nassau Reinsurance Group Holdings LP*,
    160 F. Supp. 3d 574 (S.D.N.Y. 2015).................................................................................4, 10

*McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    727 F. Supp. 833 (S.D.N.Y. 1989) ..........................................................................................11

*Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*,
    00-cv-3613, 2004 U.S. Dist. LEXIS 17093 (S.D.N.Y. Aug. 27, 2004)...................................11

*NEM Re Receivables, LLC v. Fortress Re, Inc.*,
    187 F. Supp. 3d 390 (S.D.N.Y. 2016)...............................................................................3, 4, 8

*Oocl (USA) Inc. v. Transco Shipping Corp.*,
    No. 13-cv-5418, 2016 WL 4481153 (S.D.N.Y. Aug. 23, 2016)................................................5

*R.F.MA.S., Inc. v. Mimi So*,
    640 F. Supp. 2d 506 (S.D.N.Y. 2009)...................................................................................6, 8

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).........................................................................................................4

*Space Hunters, Inc. v. U.S.*,
    500 Fed. Appx. 76 (2d Cir. 1995)...............................................................................................5

# TABLE OF AUTHORITIES
*(Continued)*

**Page**

*In re Terrorist Attacks on September 11, 2001*,
   No. 03-MD-1570, 2018 U.S. Dist. LEXIS 148598 (S.D.N.Y. Aug. 30, 2018) ...................... 4, 5

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) .......................................................................................... 4

**Statutes**

U.S. Code § 1746 ............................................................................................................... 8

**Other Authorities**

Local Civil Rule 6.3 ..................................................................................................... 3, 4, 8

**INTRODUCTION**

This brief, along with the Declaration of Jerry S. Goldman, Esq., are submitted by the Plaintiffs' Executive Committees ("PECs") in opposition to Defendant WAMY's[1] Motion for Reconsideration of Section IV of the Court's Decision and Order (ECF Nos. 4164-4169), dated September 12, 2018 (the "MFR"). In its Order, the Court permitted Plaintiffs to designate "no more than 20 branch offices (including offices in Saudi Arabia) that the PECs believe are most relevant to their claims" and directed WAMY's counsel, within 60 days, to "conduct a more thorough search for documents located in those 20 branch offices and produce any additional relevant documents." Opinion and Order, dated August 29, 2018, at p. 7 (ECF No. 4130). This Court further ordered WAMY's counsel to observe certain procedural requirements to ensure compliance. *Id.* The MFR seeks reconsideration of only so much of the Court's Order as relates to the search of the files of WAMY's branch offices. *Id.*

WAMY claims that it was denied the opportunity to respond to Plaintiffs' complaints regarding the search of the branch offices because Plaintiffs impermissibly raised the issue for the first time in a reply brief. But WAMY's claim is unsupported. Further, WAMY does not set forth a proper basis under the standards for reconsideration, and instead merely regurgitates arguments it previously offered, that were considered and rejected, without presenting any new factual information. This motion is no more than an invitation to the Court to issue a duplicative ruling and, as such, should be denied.

The Court properly rejected the myriad excuses WAMY has proffered for its nearly eight years of non-compliance with its discovery obligations. The Court should likewise reject WAMY's most recent attempt to avoid compliance with the Court's Order.

---

[1] Here, WAMY refers to the World Assembly of Muslim Youth Saudi Arabia and World Assembly of Muslim Youth International, collectively.

**BACKGROUND**

After attempting unsuccessfully for more than seven years to obtain document discovery from WAMY, Plaintiffs filed a Motion to Compel on February 28, 2018. ECF Nos. 3910-12 (collectively, the "MTC").[2] WAMY claims that Plaintiffs' Reply Brief was the first time Plaintiffs raised concerns about the complete lack of process of WAMY and its counsel to identify, secure, and produce responsive documents from the branch offices, or to verify that WAMY was executing its discovery obligations with fidelity to the rules attendant to U.S. civil litigation. MFR, ECF No. 4164, p. 2. But Plaintiffs' Motion to Compel expressly argues that WAMY failed to meaningfully respond to Plaintiffs' discovery and ignored their obligation to secure and produce a full, complete, and organized set of documents for each and every one of WAMY's offices in the Kingdom and overseas, including operations and financial reports, bank account records, audits, and other relevant documents.[3] *See* MTC, ECF No. 3911, pp. 5-6; *id.*, p. 2 ("branch office records"). Plaintiffs also made clear that WAMY failed to produce a complete and organized set of banking records for each and every one of WAMY's offices in the Kingdom and overseas, citing the WAMY-Canada branch as an example.

On March 19, 2018, the parties held a meet-and-confer telephone conference in advance of WAMY's submission of its response. *See* Plaintiffs' Reply Memorandum of Law in Support of Motion to Compel, dated April 13, 2018, ECF No. 3962 (the "Reply"), at pp. 2-3. During that meet and confer, the parties discussed the inadequacy of WAMY's production due to its failure to properly search its branch offices for responsive information. So, even if WAMY had not

---

[2] A more detailed description of the prior procedural history, including the prior motions, arguments and orders is discussed in the MTC, pp. 1-3.

[3] Plaintiffs identified 22 specific WAMY overseas branch offices at footnote 7 (Argentina, Australia, Bangladesh, Belgium, Brazil, Chechnya, Czech Republic, Germany, Greece, Hong Kong, India, Kenya, Kosovo, Malawi, Malaysia, Nigeria, Romania, Russia, Senegal, Thailand, Uganda, and Yemen), and further identified 4 WAMY branch offices in the Kingdom at footnote 9 (Mecca Province Office, the Medina Province Office, the Eastern Province Office, and the Southern Province Office).

understood the need to verify fidelity to its obligations either before the Plaintiffs filed a response or from Plaintiffs' initial filing that addressed the issue, WAMY knew from the parties' meet and confer that the issue of verifying proper search and production from the branch offices was critical and WAMY had every opportunity to address that issue through its Opposition, dated March 30, 2018 (ECF No. 3949) (the "Opp.").

In its Opposition, WAMY broadly argued that Plaintiffs had failed to identify which reports or types of documents Plaintiffs believed were missing from the productions from WAMY's offices in the Kingdom and overseas, but otherwise declined to address the specific examples of problematic domestic and overseas branch offices cited in Plaintiffs' Motion to Compel. Opp., pp. 11-15. WAMY briefly mentions its branches in Argentina and Brazil, but fails to address Plaintiffs' claim that WAMY produced very limited, if any, documents from the other 24 offices.[4]  *Id.*

In their Reply, Plaintiffs again discussed the blatant deficiencies regarding the preservation, collection and production of documents from the branch offices. ECF No. 3962, pp. 1-5. The conflicting positions addressed by WAMY's counsel as set forth in the meet and confer were discussed, along with a series of communications produced by WAMY in discovery, by a senior official of that organization. These were not "novel and new issues that WAMY never had a chance to address." MFR at p. 6.

---

[4] While avoiding directly answering whether it produced documents from these 24 offices, WAMY continues to boast that it has produced approximately 1,248,043 pages of responsive documents (MFR at p. 4). As noted in the Reply, this is immaterial to the dispute and ignores that many pages are duplicative and unresponsive to Plaintiffs' demands. What is material is whether WAMY undertook timely and systematic efforts to secure and produce all documents responsive to plaintiffs' discovery requests. WAMY repeatedly failed to do so over almost eight years of discovery, and the Court's Order directing compliance was entirely proper.

## LEGAL STANDARD REGARDING MOTIONS FOR RECONSIDERATION OR RECONSIDERATION

The standard for granting a motion for reconsideration or re-argument under Local Rule 6.3 is strict and difficult to satisfy. *See NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 395 (S.D.N.Y. 2016) (citing *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000) ("Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.")). Likewise, "[t]he provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered[,] and decided." *Id.* (citing *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y. 1990)). Rather, the major grounds justifying reconsideration are "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 at 790 (2d ed.)). Therefore, a motion for reconsideration made pursuant to Local Rule 6.3 must identify controlling law or factual matters put before the court that were overlooked, and which might reasonably be expect to alter the court's conclusion. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

"Rule 6.3 is intended to ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters." *NEM Re Receivables,* 187 F. Supp. 3d at 395 (citing *S.E.C. v. Ashbury Capital Partners,* No. 00-cv-7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute

for appealing a final judgment." *Id. (*citing *Montanile v. Nat'l Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y. 2002)); *see also In re Terrorist Attacks on September 11, 2001*, No. 03-MD-1570, 2018 U.S. Dist. LEXIS 148598, at *253 (S.D.N.Y. Aug. 30, 2018).

## ARGUMENT

### I. WAMY Identifies No Intervening Change In Controlling Law

WAMY does not, and cannot, argue that the Court overlooked "controlling law" or that there has been a change in the controlling law. As such, no relief is justified on this basis. *Lima LS PLC v. Nassau Reinsurance Group Holdings LP,* 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015) (failure to argue that there has been an intervening change in the law waives consideration of this ground for a motion for reconsideration). WAMY simply views the MTR as an opportunity to improperly re-litigate what has already been litigated. But a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012); *see also Oocl (USA) Inc. v. Transco Shipping Corp.,* No. 13-cv-5418, 2016 WL 4481153, at *1 (S.D.N.Y. Aug. 23, 2016); *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001); *In re Terrorist Attacks*, 2018 U.S. Dist. LEXIS 148598, at *253.

### II. No New Evidence Has Become Available So As to Warrant a Change in the Order

WAMY has tendered, in connection with the MFR, three (3) declarations by counsel. The declarations cannot be considered because: (i) there is no valid reason why they were not produced in due course during the Court's original adjudication of the motion, and (ii) the Local Rules preclude their submission in connection with a motion to reconsider or reargue.

5

First, WAMY has not proffered any legitimate rationale as to why the declarations, or the allegations contained therein, were not presented to the Court in the first instance as there can be no reasonable dispute that Plaintiffs challenged the sufficiency of WAMY's search efforts with respect to the branch locations.  Therefore, nothing in these improperly submitted declarations constitutes "new information" supporting reconsideration.  *Space Hunters, Inc. v. U.S.*, 500 Fed. Appx. 76, 81 (2d Cir. 1995) (district court not obligated to consider untimely declaration where there was no explanation as to why it could not have been procured earlier nor an explanation that it was newly discovered); *see also Fernandez v. Windmill Distrib. Co.*, No. 12-cv-1968, 2016 WL 4399325, at *2 (S.D.N.Y. Aug. 17, 2016); *R.F.MA.S., Inc. v. Mimi So,* 640 F. Supp. 2d 506, 509-10 (S.D.N.Y. 2009).

WAMY's claim that this issue was first raised in the course of Plaintiffs' Reply, is belied by the fact that the branch office issue was raised in Plaintiffs' opening brief (ECF No. 3911, pp. 2, 5-6)**,** at the meet and confer (See Reply, ECF No. 3962, pp. 2-3), and briefly discussed in WAMY's Opposition (ECF No. 3949, pp. 11-15).  Moreover, the issue as to searches of branch offices was subject to exhaustive discussions throughout the course of this litigation relating to WAMY and other charities.  *See, e.g.*, Feb. 19, 2014 Hearing before J. Maas (Exhibit 1), p. 15 ("we initially raised our concerns about WAMY's objection to production of documents in the physical possession of its branch offices way back in May of 2011 when we had a lengthy meet and confer by telephone."); *id.*  ("All of that ultimately led to an agreement that was formalized in a letter to the Court explaining that WAMY . . . did, in fact, have custody and control over the documents in all of its branch offices."); *id.*, p. 29 ("Before you go on, there were statements made to this Court by WAMY, I guess WAMY Saudi Arabia, saying that you had control of the documents at all of the branches.") (J. Maas); *id.*, p. 39 ("WAMY withdrew its objection about

obtaining documents from the branch offices"); *id.*, p. 30 ("You have an admission by WAMY Saudi Arabia that it has control over the branches, including presumably or maybe just specifically the Canadian branch, and then suddenly that statement turns out not to be correct?") (J. Maas); *id.*, p. 30 ("WAMY has 66 chapters around the world.  Some of them they were able to work with them, some of them they don't work with them very well.  They [WAMY-Saudi Arabia] don't know what is going on, but they try to get as much information from them and ask them to please give us a report if we give you the money.  If you don't give us the report we don't give you the money.  Simple.") (O. Mohammedi); Nov. 16, 2011 Hearing before J. Maas (Exhibit 2), p. 16 ("Except to the extent that the two sides can agree that some branch office is not relevant, if each branch office is not queried and the documents from that branch produced, as far as I'm concerned that will have been an inadequate search and may lead to dispositive sanctions") (IIRO/MWL); Opinion and Order on PECs' Motion for Sanctions to MWL and IIRO, dated Aug. 27, 2018, ECF No. 4124 ("MWL and IIRO are ORDERED to search all of the branch offices . . . and produce any banking records from those offices").[5]

Only after this Court rendered its decision on the MTC, granting most of the relief sought by Plaintiffs, including directing WAMY to conduct additional searches of its branch offices, did WAMY complain that it was deprived of the opportunity to address this issue.

Importantly, during the four months between the receipt of the Reply and the entry of the Order, WAMY did not move to strike the portions of the filing which it erroneously believes to be improper.  Similarly, WAMY failed to request leave to file a sur-reply, despite opportunity to do so.  *See* Individual Rules of Practice –Magistrate Judge Sarah Netburn- III(b) ("Sur-reply memoranda will not be accepted without prior permission of the Court"), at p. 4.

---

[5]  Copies of these transcripts are attached to the Declaration of Jerry S. Goldman as Exhibits 1 - 2.

Having made the strategic choices not to address at length the issue of branch offices in its Opposition, not to challenge in a timely fashion what it contends to be an improper reply (which Plaintiffs do not concede to be the case), or to seek leave for a sur-reply (which Plaintiffs do not concede would have been proper), WAMY now improperly seeks to re-litigate the issue by way of a motion for reconsideration. *Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 486-87 (S.D.N.Y. 2012); *Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 25 (2d Cir. 2010).

Further, Local Civil Rule 6.3 states that with regard to motions for reconsideration "[n]o affidavits shall be filed by any party unless directed by the court." As WAMY never sought permission to file declarations[6] in connection with the Motion, and this Court never directed WAMY to file such affidavits, this Court must disregard WAMY's declarations and the information they contain. *R.F.M.A.S.,* 640 F. Supp. 2d at 509-10.

WAMY's Motion is procedurally improper, substantively deficient and finds no equitable support in the record. WAMY has failed to meet the high standard to justify the "extraordinary remedy" of reconsideration of a court order. *NEM Re Receivables,* 187 F. Supp. 3d at 395.

### III. There is No Clear Error or Manifest Injustice Which Needs to Be Corrected

The third possible ground for relief on a motion for reconsideration is where the movant identifies a "manifest injustice" that must be prevented by reconsideration or a "clear error" by the Court that must be corrected. WAMY claims that there is a manifest injustice associated with the Court's Order directing it to search for responsive branch office documents, but there is nothing in the Motion for Reconsideration that remotely supports this contention. WAMY paints with a broad brush, but offers few relevant details concerning the specific issues raised by

---

[6] Pursuant to 28 U.S. Code § 1746 declarations and affidavits may be used interchangeably.

8

Plaintiffs' Motion as already determined by this Court. Accordingly, WAMY cannot meet the high standard required to demonstrate either manifest injustice or clear error.

### A. No Relevant New Facts are Presented in the MFR

In the MFR, WAMY's counsel goes to great lengths to describe: (1) more than 30 trips by WAMY's counsel to Saudi Arabia; (2) search teams consisting of over 150 delegates; (3) meeting with WAMY officials and heads of regional offices and branch offices in various countries; (4) WAMY efforts to copy ALL documents as stored in the ordinary course of business at its chapters/offices around the world; etc. The issue, however, is not what WAMY contends it *has* done; rather it is what WAMY *has not* done.

Notwithstanding what WAMY contends it has done, there are several important omissions that WAMY has never addressed: (1) despite having additional time to do so, WAMY has not addressed plaintiffs' claims concerning the 22 specific WAMY overseas branch offices identified in the MTC, nor the 4 WAMY branch offices in the Kingdom; (2) WAMY still has not addressed its failure to produce responsive banking records, particularly the 86 accounts identified in Plaintiffs' Reply; (3) WAMY has not identified the regional offices or branch offices it allegedly traveled to for meetings with office/chapter managers; (4) WAMY has not identified the heads of the regional offices within the Kingdom with whom counsel met; and (5) though the affidavits on file are improper for the reasons explained above, none of those affidavits are from the officers or officials of WAMY or those Arabic speakers who actually performed the searches and have personal knowledge of the procedure employed.

Further, as described at length in Plaintiffs' Reply, WAMY's procedure for gathering documents from the branch offices were grossly inadequate in that branch offices apparently failed to follow the directives of headquarters and there was very little if any oversight to ensure branch managers were exercising diligence in gathering all responsive documents or producing

9

them.  In short, neither WAMY nor its counsel employed any protocols to ensure that WAMY complied with the Federal Rules of Civil Procedure in searching, collecting, or producing responsive documents.  *See* Reply, ECF No. 3962, pp. 1-5.  Indeed, if efforts to collect and produce were in fact properly coordinated and thorough, the requirements imposed by the Court's Order would not impose a material burden on WAMY.  WAMY's own reaction to the Order, and desperate attempts to avoid the reasonable search requirements imposed by the Court, provide a strong indication that WAMY knows the original searches were inadequate.

WAMY's claims merely reiterate points previously raised in opposing the MTC and do not demonstrate that the Court failed to adequately consider this information when it rendered its decision.  Thus, WAMY's arguments are precisely the type of claims that the local rules seek to avoid.

"A motion to reconsider is not supposed to treat the Court's initial decision as the opening of a dialogue in which the party making the motion may then use such a motion to advance new theories or adduce new evidence in response to the Court's ruling." *Lima*, 160 F. Supp. 3d at 578.  These "new" facts are not new.  WAMY simply did not search all of the locations which may have held responsive documents; locations which they were obligated to and knew that they had a responsibility to properly search.  And neither WAMY nor its counsel took any action to ensure that the people engaged in the searches met WAMY's obligation to do so.

## CONCLUSION

As set forth above, contrary to WAMY's claim that Plaintiffs' Reply was the first time they were put on notice about the sufficiency of the process to identify, secure and produce responsive documents from the branch offices (MFR at p. 2), the MTC made it abundantly clear that WAMY has for years failed to meaningfully respond to plaintiffs' discovery and ignored its

10

obligation to secure and produce a full, complete, and organized set of documents (including banking records) for *each and every one* of WAMY's offices in the Kingdom and overseas, including operations and financial reports, bank account records, audits, etc.  MTC, ECF No. 3911, pp. 2, 5-6.  *WAMY even acknowledged this in its Opposition*.  *See* ECF No. 3949, pp. 11-15. The issue of the searches of the branch offices of the charities, such as WAMY, has been repeatedly discussed in prior hearings during the course of litigation.

Contrary to WAMY's assertion that "WAMY did not have an opportunity to present all material facts to the Court about its document search and collection efforts" (MFR at p. 1), WAMY had every opportunity in its Opposition brief to address each of the 26 offices and explain why WAMY believed it had produced all responsive documents for each of those offices.  Indeed, WAMY could have used its Opposition to make the very same arguments it advances in the MFR concerning the sufficiency of its searches, including the three declarations.  WAMY declined to do so.

WAMY similarly had every opportunity in its Opposition to provide a detailed response refuting plaintiffs' claim that WAMY has failed to produce a complete and organized set of banking records for each of its offices (both domestic and abroad).  But WAMY failed to make any attempt to describe its efforts to request and obtain a full and complete set of banking records for those accounts, or any other branch office account(s).[7]  Importantly, despite having the opportunity to do so, WAMY could not provide the Court with a single example of a WAMY bank account for which it has produced a complete set of banking records.

While WAMY apparently does not agree with the Court's ruling, it has presented no legal arguments or evidence that could not have been presented through motion practice *before*

---

[7]  Their Opposition contained a passing reference to five WAMY-Canada accounts.

11

the Court issued its ruling. WAMY has identified nothing in the record that the Court overlooked in its initial and thorough consideration of the issues before it or that even suggests the Court erred in its determinations. WAMY's Motion must fail.

The Court's decision is not a starting point for ever-continuing litigation and re-litigation, or a start of a new dialogue over the scope of discovery obligations. Rather, now is the time for WAMY to comply with its obligations under the clear law and in accordance with the Court's Order. *See Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 00-cv-3613, 2004 U.S. Dist. LEXIS 17093, at *4-6 (S.D.N.Y. Aug. 27, 2004); *Forsyth v. Fed'n Empl. & Guidance Serv.*, No. 97-cv-3399, 2003 U.S. Dist. LEXIS 3314, at *1-2 (S.D.N.Y. Mar. 6. 2003); *McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F. Supp. 833, 833 (S.D.N.Y. 1989).

For the foregoing reasons, those set forth in Plaintiffs' original filings along with prior proceedings in this matter, and for the reasons set forth in the Court's August 29, 2018 Order, WAMY's Motion for Reconsideration of the Order compelling the production of documents should be denied.

If, however, the Court believes that WAMY's Motion raises factual issues that should be explored, Plaintiffs request permission to depose WAMY's declarants followed by an evidentiary hearing before the Court.

Dated: October 10, 2018

                                        Respectfully submitted,

                                        */s/ Jerry S. Goldman*

                                    Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000

Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel:  (215) 665-2000

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
Steven R. Pounian, Esq.
Justin T. Green, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel:  (212) 687-8181

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel:  (843) 216-9000

*Attorneys for Plaintiffs' Executive Committee*

**CONSOLIDATED CERTIFICATE OF SERVICE**

I hereby certify that a true copy of Plaintiffs' Memorandum of Law in Opposition to Defendant World Assembly of Muslim Youth's Motion for Reconsideration and Reargument, along with the Declaration of Jerry S. Goldman, Esquire, were filed electronically this 10th day of October, 2018.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system, which all parties may access.

New York, NY
October 10, 2018

*/s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.