UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re* Terrorist Attacks on September 11, 2001

03 MDL 1570 (GBD) (SN)
ECF Case

*This document relates to:*

*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 02 Civ. 6977
*Thomas Burnett, Sr., et al. v. Al Baraka Inv. & Dev. Corp., et al.*, No. 03 Civ. 9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978
*Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279
*Estate of John P. O'Neill et. al., v. Al Baraka et. al.*, No. 04 Civ. 1923

## DECLARATION OF GUY FREDERICK NOEL MARTIN
## IN RESPONSE TO AUGUST 27, 2018 ORDER

Guy Frederick Noel Martin declares that the following statement is true:

1. I am a solicitor of the Senior Courts of England and Wales. I am a senior partner and Head of International Law in the solicitors' firm of Carter-Ruck in London, United Kingdom. I have represented Yassin Abdullah Kadi ("Mr. Kadi"), who is a defendant in this action, since October 2001.

2. I make this Declaration to explain to the Court the efforts that Mr. Kadi's legal team have undertaken in order to comply with the Court's August 27, 2018 Opinion and Order ("the Order") (ECF No. 4123), directing that Mr. Kadi "search for and produce" thirteen documents sought by plaintiffs. These thirteen documents are: two reports prepared in anticipation of the liquidation of a Sudanese company named Rowad Development and Investment Company ("Rowad documents") and eleven documents regarding the Kingdom of Saudi Arabia's investigation of Mr. Kadi ("KSA documents").

3. In response to the Order, Mr. Kadi instructed me to work with his son, Mr. Muaz Kadi, who now oversees Mr. Kadi's Jeddah office, and Essam Al Khatib, the Kadi office's office manager. I, along with others in my office working at my direction, have had numerous email and telephone communications with Muaz Kadi and with Essam Al Khatib about the work necessary to comply with the Order. As described in more detail in the Declarations of Muaz Kadi and Essam Al Khatib, submitted herewith, Mr. Al Khatib undertook searches of Mr. Kadi's files in an attempt to locate the Rowad documents and the KSA documents. These attempts did not yield any of the thirteen documents in issue. This was not surprising to me in view of the thorough document search and production that Mr. Kadi, his staff and attorneys conducted for several years in response to Plaintiffs' document requests.

4. Pursuant to the Order, I myself have had email communications and telephone conversations with Siraj Abdul Bari, a Sudanese individual who from 1993 until 1996 was the director of the Muwafaq Foundation's ("Muwafaq") office in Sudan. Mr. Bari resides in Khartoum, Sudan. I asked Mr. Bari to work with my staff in searching for the two Rowad documents mentioned in the Order. Although Mr. Bari does communicate very well in English, he is more fluent in Arabic and for this reason I asked my Arabic-speaking Trainee Solicitor, Noura Abughris, to have additional communications with Mr. Bari by telephone so that she could engage with him in more depth about possible ways to search for the documents sought. As demonstrated by the Declaration of Mr. Bari ("Bari Dec."), submitted herewith, his attempts to locate people who might possibly possess these documents were not successful.

5. Yousef Abu Ali is another individual of Sudanese origin, and is a long-standing employee of the Kadi family's commercial interests. Yousef Abu Ali attempted to locate Yassin Ahmet Ali, a former business associate of Mr. Kadi in Sudan and also, on

information and belief, a member of Rowad's Board of Directors, to see if he might possibly possess or be able to locate the two Rowad documents in issue. As demonstrated in Mr. Ali's Declaration submitted herewith, all efforts to locate Yassin Ahmet Ali were unsuccessful.

6. With respect to our efforts to obtain the eleven KSA documents, a renewed search of the Kadi offices, and telephone and email contact with the office of Dr. Saad Al-Beraik, the Saudi Arabian lawyer who represented Mr. Kadi during the KSA investigation, were similarly unsuccessful, with one exception described in paragraph 9 below. See Declaration of Essam Al Khatib ("Khatib Dec.") ¶¶ 3-4. While Dr. Al-Beraik was entirely responsible for dealing with the KSA investigation matter, he from time to time forwarded to me copies of material in his possession relating to the KSA investigation. After Mr. Kadi became subject to discovery obligations in this case in 2013, I pressed Dr Al-Beraik several times in correspondence to send me copies of all responsive documents in his possession. Mr. Kadi has produced in response to Plaintiffs' requests all responsive and non-privileged documents pertaining to the KSA investigation within his custody or control within the 1992-2004 discovery date range (see Salerno Declaration in opposition to Plaintiffs' motion to compel (ECF No. 3877) at ¶ 13 n. 7).

7. With respect to the KSA documents, as I stated in my Declaration in Opposition to Plaintiffs' Motion to Compel ("Declaration in Opposition") (ECF No. 3879) at ¶ 19, we had been hindered by the KSA's overarching insistence on secrecy applying to all documents relating to its investigation. We had been repeatedly told by Dr Al-Beraik that the Kingdom would never permit disclosure of these documents on national security grounds. Indeed, KSA Foreign Ministry counsel had advised a KSA court that it could submit documents related to the KSA's efforts to persuade the United Nations to de-list Mr. Kadi only *in camera*

because all such documents "are confidential and relevant, in one way or another, to the requirements of Saudi national security and the international relations of the Kingdom. For this reason, the Foreign Ministry could not attach copies or the originals of these supporting documents to this memorandum." (Ex. 6 to Plaintiffs' Motion to Compel, ECF No. 3831-6, at p. 40). While it is unclear to which if any of the 11 KSA documents listed in the Order this statement referred, that statement to a KSA court evidences the extent to which the Kingdom was secretive about such documents. The fact remains that we have searched every available location, and made every feasible inquiry, to obtain these documents.

8. It now appears that as a result of the KSA's current presence in this case and the direction in the Order that Mr. Kadi's counsel attempt to secure documents through the good offices of KSA counsel, a substantial number of possibly relevant and responsive documents have been located by the KSA, and they were produced to us on 22 October 2018. They will be produced to Plaintiffs.

9. As I also explained in my Declaration in Opposition, Dr. Al-Beraik had informed me, in repeated communications by letter and email between 2007 and 2015, that he has provided me with all documents in his possession related to the KSA investigation. (ECF No. 3879, ¶ 22). Subsequent to the issuance of the Order, my office and Mr. Al Khatib strenuously renewed our efforts to obtain documents from Dr. Al-Beraik's office. Although Dr. Al-Beraik's whereabouts have apparently not been known for up to a year (see Khatib Dec.), it nevertheless appears that these communications with Dr. Al-Beraik's office have borne some fruit: On 15 October 2018 Dr. Al-Beraik's brother, Abdul Raheem Bin Abdullah Al-Beraik, sent me the Statement of Claim that was filed on Mr. Kadi's behalf against the Kingdom, which is item 2 of the KSA documents listed at page 6 of the Order. That document will be produced to Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24th, 2018.

_____
GUY FREDERICK NOEL MARTIN