# MDL 1570 Plaintiffs' Executive Committees

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

October 26, 2018

Hon. Sarah Netburn
United States Magistrate Judge
 for the Southern District of New York
500 Pearl Street
New York, NY 10011

   Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  Pursuant to the Court's August 27, 2018 Order (ECF No. 4125), the existing October 3, 2006 Protective Order (ECF. No. 1900) and this Court's Individual Practices, the Plaintiffs' Executive Committees ("PECs") request an order that (1) consistent with the existing Protective Order (*see* ECF No. 1900 at 6, 16), reaffirms that they may publicly file with the Court the discovery documents produced by the Kingdom of Saudi Arabia ("Kingdom" or "Saudi Arabia") identified in this letter;[1] and (2) permits them to share with non-parties discovery documents that have been designated as "confidential" for purposes of non-party discovery, so long as the non-party enters into a confidentiality agreement.  While the Kingdom's wholesale designation of two-thirds of its

---

[1] Following the process set out in this Court's Aug. 27, 2018 Protective Order (ECF No. 4125 at 2), the Plaintiffs' Executive Committees conferred with the Kingdom of Saudi Arabia on the issue during an Oct. 24, 2018 telephonic meeting and provided the numbers of the documents they intend to file with the Court.  As of the writing of this letter-motion, the Kingdom has not agreed that those documents may be filed publicly.  Because information from the documents designated as confidential is inextricably interwoven with the Plaintiffs' Executive Committees' supplemental letter update (submitted separately today) and because that letter is supported by exhibits that bear the confidential designation, the PECs have submitted those materials under seal, as well as those exhibits to the instant application bearing the confidential designation, until this Court reaches a determination on the issues raised herein.

1

document production as "confidential" raises serious questions about its compliance with the spirit of the existing confidentiality protocol, the PECs are not challenging those designations in this letter-request, though they intend to do so at the appropriate time.[2]

The contents and custodians of the materials produced to date cannot justify sealing on the Court's docket. As discussed below, the recitation of certain terms – Embassy or Consulate, diplomatic or consular, "very sensitive topics" – or the specious invocation of the Vienna Convention on Consular Relations (which does not provide a mechanism for sealing materials) do not and cannot demonstrate the "good cause" for confidentiality designations that was the basis for the protocol in the existing Protective Order, let alone the "most compelling reasons" standard that Order described as necessary to seal judicial filings. *See* ECF No. 1900 at 6, 3–4.

As a procedural matter, this Court can and should resolve this issue now. The existing Protective Order contemplated allowing a defendant to designate as confidential *only* discovery documents (*i.e.,* only documents that have not been filed), but specifically rejected a request to impose a blanket rule requiring that "confidential" items be filed under seal. ECF No. 1900 at 6, 16. Requiring the PECs to negotiate confidentiality disputes with the Kingdom on a document-by-document basis before filing materials with the Court would therefore be directly contrary to the existing Protective Order. *See* ECF No. 1900 at 6 ("the Court will not permit [confidential-designation discovery] documents to be filed under seal pursuant to the … current application."). Indeed, if the existing confidentiality protocol is interpreted to impose an *ex ante* prohibition on public filing of "confidential" documents, the PECs will be forced to pre-litigate each discovery or legal dispute as a confidentiality dispute, multiplying the number of motions this Court will need to address, expanding the time necessary to resolve the substantive issues and improperly shifting the burden on this issue to the party that is seeking to file documents publicly, instead of keeping it on the party that hopes to shield those documents from public scrutiny.

1. **Discovery Background**

Saudi Arabia has produced just under 3,900 documents (totaling about 6,900 pages) to the PECs. Of those, the Kingdom has designated 2,575 documents – nearly two-thirds of the total production – as confidential. Saudi Arabia has provided no support for any of its designations, instead only identifying the custodian of the underlying documents. *See* Exhibit A hereto, Discovery Log Excerpts. For example, the largest set of "confidential" documents – 1,421 items – are labeled as such with the notation that the custodian was "the Saudi Arabia Ministry of Islamic Affairs ("MoIA"). *Id.* Others are labeled "confidential" with notations that the custodian was the General Authority of Civil Aviation (606 documents), the Saudi Arabia Embassy (412 documents), the Los Angeles Consulate (22 documents), the Saudi Arabian Cultural Ministry (18 documents), the Presidency of State Security (12 documents) and the Ministry of the Interior (4 documents.) *Id.*

---

[2] The PECs have separately embarked on the process of seeking removal of confidentiality designations pursuant to the terms of the original Protective Order by providing Saudi Arabia with written objections to specific confidentiality designations, and are awaiting a response. *See* Exhibit C hereto, 10/23/2018 Letter Identifying Documents (filed under seal).

After reviewing Saudi Arabia's initial production and discovery from non-parties, the PECs served a supplemental jurisdictional discovery demand. Despite conferring on Oct. 24, 2018, the Kingdom has not agreed to produce additional materials and the PECs are providing a letter to the Court that discusses information from documents designated as "confidential" and appends some of those documents themselves. *See* Exhibit B hereto, "Confidential" Documents Submitted in Support of PECs Supplemental Discovery Letter (filed under seal). The PECs have also identified approximately 530 pages of discovery documents that Saudi Arabia has (improperly) designated as confidential that they anticipate filing with the Court in future motions practice, and raised this issue with the Kingdom, as well. *See* Exh. C; Exhibit D hereto, Subset of English Language "Confidential" Documents Identified in 10/23/2018 Letter.

Additionally, several documents the Kingdom has produced are relevant to non-party discovery and must be shared with those non-parties to facilitate further document exchange and depositions, which the PECs are limited in doing under the existing Protective Order.[3] In response to the PECs request to the Kingdom to share materials with non-parties, Saudi Arabia has demanded that the PECs reveal work-product regarding the PECs' investigations before it will decide whether to permit the PECs to provide "confidential" documents to non-parties (which prevents the PECs from, for example, sharing documents with educational institutions even if those institutions originated the "confidential" document that Saudi Arabia produced. *See* Exh. D, KSA 696, 724-26, 734-37, 740, 792, 840, 854, 856, 897-98, 903, 905-06, 1822-23, 1825-32, 1834-41.[4])

2. **Under the Existing Protective Order and Well-Settled Law, Saudi Arabia Has Failed to Meet its Burden to Seal Documents and the PECs Are Permitted to Publicly File Documents that Saudi Arabia has Produced, Even Those Marked as "Confidential"**

In two prior orders, the Court addressed the process governing the public filing of materials that a party had designated as confidential during discovery. *See* ECF Nos. 1900, 4125. In its Aug. 27, 2018, order, this Court directed parties to "comply with the existing protective order, ECF No. 1900, and the Court's Individual Practices when they wish to file any information with the Court that has been designated as confidential." ECF No. 4125. The existing Protective Order, however, had a protocol that pertained only to discovery materials. While it allowed "parties to designate particular discovery material as confidential and subject to heightened protections," the Protective Order also clearly stated that it would "not permit such materials to be filed under seal pursuant to

---

[3] The existing Protective Order allows a receiving party to provide documents marked as confidential to deposition witnesses so long as the witnesses "agree[] to be bound by the terms and restrictions of" the Protective Order but does not address the sharing of such materials with non-parties outside the context of a deposition. *See* ECF No. 1900, §§ 3.d, 5. Permitting the PECs to share the documents to further facilitate discovery would allow the PECs to ensure the integrity of discovery without materially increasing the number of persons with access to purportedly confidential information.

[4] That documents created by non-parties bear the "confidentiality" stamp is yet further evidence of the startling reach of the Kingdom's designations.

the … current application" and expressly declined to apply the confidentiality protocol to any "exhibit or other attachment to any motion[.]" ECF No. 1900 at 6, 16.[5]

Denying the earlier general application to seal judicial filings of documents that a defendant had designated as confidential, the Court fashioned the existing Protective Order relying on both the First Amendment rights of litigants and the public's right of access to judicial proceedings, observing that these rights are at their "'apogee' with respect to" those "'items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process.'" ECF No. 1900 at 6 (quoting *Gambele v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004)) and 3 (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001)). Accordingly, "motions and accompanying exhibits filed with the court" should not be filed under seal unless the party seeking to keep them sealed can satisfy "a more demanding standard of good cause" showing the most compelling reasons for keeping such materials from public view. ECF No. 1900 at 3–4 (*citing Gambele*, 377 F.3d at 140) ("documents used by parties for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.") Discovery documents designated as "confidential" are therefore not presumptively entitled to be sealed as part of a court filing.

In support of their letter regarding the supplemental discovery demand, the PECs are filing certain "confidential" documents. *See* Exh. B. Nothing in those documents could reasonably be considered sufficiently sensitive or private to justify a confidentiality designation (under ECF No. 1900's "good cause" standard) let alone require that they be filed under seal. Nor does the only information that Saudi Arabia has offered about the documents – the identity of the records custodian – afford a basis for the confidentiality designations or sealing. Because Saudi Arabia has not satisfied the "more demanding standard of good cause" required for judicial filings that ECF No. 1900 and the relevant case law require, the PECs should be permitted to file the Exhibit B documents publicly.

The PECs have also identified a subset of the Kingdom's discovery documents consisting of about 530 pages that the PECs anticipate filing with the Court in connection with future discovery motions practice as well as in response to Saudi Arabia's renewed motion to dismiss. *See* Exh. C at 3. They have sought Saudi Arabia's consent to filing those materials publicly, but have not received a response. These documents include internal memos from more than a decade ago about employment decisions that contain no information that could reasonably be considered sensitive or private. *See e.g.* Exh. D, KSA 553, 556 – 561. Others are aged telegrams about budgetary issues at the King Fahd Mosque. *See, e.g.*, Exh. B, KSA 1213-14. Saudi Arabia has designated those specific documents as confidential again only, it appears, because of the documents' original custodians. *See* Exh. A. But they contain no sensitive or private information – no discussions that could fairly be characterized as diplomatic, no communications having to do with mission-related business, no

---

[5] Nor do the applicable Individual Practices permit presumptive sealing of judicial filings. *See* Individual Practice Rule III.d (requiring the party seeking to withhold information from the public to "make a specific request to the Court by letter explaining the reasons for seeking to file that submission under seal and addressing the request in light of … *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2nd Cir. 2006.)"). Saudi Arabia had made no such request, offered no such explanation, nor articulated "the most compelling reasons" necessary to satisfy the "more demanding standard of good cause" essential to meet its burden to seal the documents. *See* ECF No. 1900 at 3–4.

health or medical records of private individuals. The mere reference to the document custodian does not satisfy Saudi Arabia's demanding burden to make a "specific, clearly defined demonstration of good cause" warranting sealing the documents when they are judicially filed. ECF No. 1900 at 6.

The Kingdom previously took the apparent position that some (if not all) of its purportedly "confidential" discovery documents would have to be filed with the Court under seal. For example, three of the documents that the PECs are filing with their supplemental discovery letter today include items that Saudi Arabia has asserted "merit permanent sealing." ECF No. 4117 at 3; Exh. B, KSA 1199, 1204. According to Saudi Arabia, those are "confidential communications between Saudi Arabia's Embassy and its Ministry of Foreign Affairs concerning the legal status of a Saudi Arabian national in the United States" that should remain confidential because of their nature as "diplomatic and consular communications." ECF No. 4117 at 3.

To the extent that this assertion can be interpreted as a request to seal material under the Vienna Convention on Consular Relations ("Convention"), the protection of official correspondence afforded by the Convention allows a nation-state to withhold materials, but does not provide a basis for sealing materials once the nation-state has waived the protection and produced materials. *See* Vienna Convention on Consular Affairs, arts. 33, 35, 63 Stat. 1031, 500 U.N.T.S. 95 ("Convention"). Had Saudi Arabia believed the Convention provided protection from disclosure of those communications, the only proper procedure would have been to object to the discovery demand and decline to produce the documents. Instead, Saudi Arabia waived any protection that *may* have existed and voluntarily disclosed documents from the Embassy and Los Angeles Consulate in an attempt to further its own interests in this case. Having done so, it cannot now retroactively cloak that production in any treaty protections. Doing so would permit the Kingdom to selectively and simultaneously waive and assert protections under the Convention.

Moreover, even if Saudi Arabia had objected to production under the Convention, such an objection would have been unavailing. Under the Convention, "[o]fficial correspondence means all correspondence relating to the consular post and its functions." *Id.*, art. 35(2). The documents that the PECs intend to publicly file are unrelated to any protected diplomatic consular activities of the mission. While directly relevant to questions of agency, control, and knowledge – critical issues in this litigation – the materials that Saudi Arabia has produced do not fall within any reasonable definition of "correspondence relating to the consular post and its functions." Having produced responsive materials to the PECs with no articulable argument that the documents relate to the consular posts or their function, Saudi Arabia should not be permitted to seal the materials from public view merely by the incantation of talismanic terms such as Embassy or Consulate.

In short, none of the subset of additional discovery documents that the PECs have to date identified as related to anticipated judicial filings contain the hallmarks of high sensitivity that warrant departure from the presumption of public access to court filings. Because Saudi Arabia has woefully failed to make the necessary showing that there is a "most compelling reason" for sealing any judicial filings, it has not met its burden to prevent the PECs from filing on the Court's public docket those discovery materials relevant to judicial filings (set forth at Exh. C, p. 3). *Gambele*, 377 F.3d at 140; *see also* ECF No. 1900 at 16.

Judge Casey rightly denied the request by defendants (including Saudi Arabia) to force the PECs to file under seal any documents bearing a confidential designation, as it was contrary to well-settled law establishing the presumption of public access to judicial documents. Consistent with the existing protocol, the common law presumption against sealing of judicial documents absent the most compelling reasons and the absence of any such reason warranting protection for the documents produced to date, the PECs should not be prevented from publicly filing those discovery materials it has identified as relevant to motions practice.

For all of these reasons, the PECs respectfully request that the Court authorize them to file publicly the documents included as Exhibits B and set forth on page 3 of Exhibit C regardless of the confidentiality designations asserted by the Kingdom of Saudi Arabia.

3. **The PECs Must be Permitted to Share "Confidential" Discovery Documents with Non-Parties who Enter Into a Confidentiality Agreement**

In the course of reviewing Saudi Arabia's discovery materials, the PECs learned that some of the materials produced by the Kingdom relate directly to non-party discovery. For example, the Kingdom's production includes documents it received from the King Fahd Mosque that mention various dealings between the Kingdom and the Mosque. To facilitate discovery with the Mosque, the PECs must be able to share with the Mosque's lawyers the documents produced by the Kingdom that indicate inconsistencies or gaps in the production by one or the other in order to ensure that the Mosque has properly complied with the PEC's subpoena and/or that the Kingdom has fully complied. Similarly, in connection with the academic pursuits allegedly undertaken by Omar al Bayoumi in the United States, the PECs must be able to share Kingdom records relating to Bayoumi's purported enrollments or studies at George Washington University with representatives of George Washington University and those from San Diego State University with representatives of San Diego State University. *See, e.g.,* Exh. D, KSA 726, 734-37, 903, 905-06, 1828-30.

Although the existing order authorizes the PECs to question non-parties about confidential materials while at a deposition (and authorizes the non-party and its counsel to access confidential materials in preparation) (*see* ECF No. 1900, § H.3.d), it does not specifically authorize the PECs to permit non-party access to confidential information to facilitate the dialogue with non-parties contemplated in instances like those described here. The PECs have asked the Kingdom for a modification of the protective practices that would allow them to share "confidential" documents with non-parties who enter into a confidentiality agreement, but the Kingdom has rejected that request. Instead, during the Oct. 24, 2018 meet and confer, counsel for the Kingdom proposed that the PECs present each document on a case-by-case basis, identifying the non-party with which it sought to share each document. This exceptionally inefficient proposal, if adopted, would unduly lengthen the discovery process, improperly allow Saudi Arabia access to the PEC's work-product decision-making on litigation strategy and impose other substantial burdens on the PECs (and the Court). The PECs therefore ask that they be permitted to share discovery documents that the Kingdom has designated as "confidential" with non-parties for purposes of non-party discovery, so long as those non-parties agree to be bound by the terms and conditions of the existing Protective Order.

4. **Conclusion**

In this application, the PECs address two issues: (1) whether Saudi Arabia has met its burden to require that documents the PECs are filing in connection with motions the Court is being asked to consider be filed under seal; and (2) whether the PECs may share documents designated as "confidential" with non-parties to facilitate discovery related to the non-parties.[6]

Because the "confidentiality" designations on Saudi Arabia's discovery do not satisfy the high burden that applies under the existing Protective Order to justify sealing judicial filings and because no reason exists to prevent the PECs from sharing documents with non-parties to facilitate the discovery as articulated in this application; the Court should enter an order that

(1)     consistent with the existing Protective Order (ECF No. 1900), authorizes the PECs to publicly file the documents attached as Exhibits B and D (and identified in Exhibit C, p. 3); and

(2)     authorizes the PECs to share with non-parties those documents that have been designated as "confidential" for purposes of non-party discovery so long as the non-party agrees to maintain confidentiality.

---

[6] Although the PECs raise only these two issue herein, questions about Saudi Arabia's over-designation and the filing of judicial documents will undoubtedly arise again in the near future. When the Court implemented the existing Protective Order more than a decade ago, it emphasized that "broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." ECF No. 1900 at 2 (quoting *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987)). But in affording that initial broad protection, the Court also recognized that protective orders based on "a general showing of good cause" – such as ECF No. 1900 – could be "modif[ied] at a later time if more specific grounds for its continuance remain indiscernible." *Id.* at 4. In April 2015, the Court addressed concerns about the indiscriminant use of confidentiality designation employed by defendants in this litigation and sternly responded to those concerns by directing all parties to review their designations and admonishing that if "documents have been designated as confidential without justification, it is likely that I will impose sanctions not only on the party that acted improperly, but on its counsel as well." ECF No. 2946 at 2. Setting aside whether sanctions may be warranted, Saudi Arabia's wholesale designation of major swaths of discovery documents as confidential, despite the absence of any classic markers justifying such designation and with no explanation other than a description of the record custodian, may constitute a ground for modifying the existing order if the parties cannot reach an agreement on de-designations.

7

Respectfully submitted,

| | |
|---|---|
| COZEN O'CONNOR | MOTLEY RICE LLC |
| By: /s/ *Sean P. Carter*<br>    SEAN P. CARTER<br>    For the Plaintiffs Exec. Committees | By: /s/ *Robert T. Haefele*<br>    ROBERT T. HAEFELE<br>    For the Plaintiffs Exec. Committees |

KREINDLER & KREINDLER LLP

By: /s/ *James P. Kreindler*
　　JAMES P. KREINDLER
　　For the Plaintiffs Exec. Committees

cc:　　The Honorable George B. Daniels via ECF
　　　　All Counsel of Record via ECF