KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

November 2, 2018

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      I write in response to Plaintiffs' letter of October 26, 2018, addressing the confidentiality of documents and related procedures (the "Confidentiality Motion," ECF No. 4235).

      The Confidentiality Motion states (at 1) that it is made "[p]ursuant to" the Court's August 27, 2018 Order (ECF No. 4125) and the Protective Order (ECF No. 1900), but it does not comply with the procedures in either Order.  The Motion concerns two separate topics.  *First*, it asks the Court to unseal 14 documents produced by Saudi Arabia that Plaintiffs filed with the Court in support of their letter-motion concerning their supplemental discovery requests.  ECF No. 4235, at 4.  *Second*, it seeks permission to share confidential documents generally with third parties.  *Id.* at 6.  The Motion also seeks pre-approval "to publicly file" hundreds of other documents designated as confidential.  *Id.* at 7.  But, as Plaintiffs acknowledge, they "are not challenging those designations in this letter-request." *Id.* at 2.  Their request to publicly file those documents at some time in the future is premature under the procedures established by this Court.

      The Court's August 27, 2018 Order sets forth the procedure to follow when a party "wishes to file" confidential documents with the Court.  ECF No. 4125, at 2.  That Order directs the parties to: (1) "meet and confer to discuss whether the information should be filed under seal," (2) "submit a request for redactions" if "any party believes the information should be filed under seal," and (3) "present both parties' arguments" regarding sealing "in the application" if "the parties disagree on whether the information should be sealed." *Id.*  Plaintiffs have not complied with any aspect of that procedure.  They also have not sought reconsideration of the Court's August 27, 2018 Order or complied with the procedures of Local Rule 6.3.

      The present dispute arose as follows.  On October 23, 2018, Plaintiffs sent Saudi Arabia a letter objecting to Saudi Arabia's confidentiality designations as to 94 Bates ranges, which

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
November 2, 2018
Page 2

Plaintiffs "anticipate[d] filing" with motions at some point in the future. ECF No. 4235-3, at 1 & Ex. A. After reviewing the Bates ranges, we determined that they corresponded to 368 documents (541 pages). On October 24, Plaintiffs and Saudi Arabia had a meet-and-confer call during which we explained that we would take the objections back to our client but could not reasonably respond to all objections before Plaintiffs' filing on October 26. On that same call, we discussed Plaintiffs' request to share documents that had been designated as confidential with third parties whom they had subpoenaed. We responded that we would discuss that request as well with our client. Later that day, at 5:39 pm, Plaintiffs sent Saudi Arabia a list of 12 Bates ranges, corresponding to 14 specific documents to be filed on October 26. *See* Ex. A at 1. The morning of October 26, we advised Plaintiffs that we did not expect to be able to respond concerning the 14 documents before Plaintiffs' filing deadline. *See id*. Plaintiffs then filed the 14 documents under seal and submitted their present request to unseal the 14 documents. In addition, although the parties had not completed their meet and confer, Plaintiffs requested permission to show confidential documents to third parties who agree to the Protective Order.

Plaintiffs' last-minute communications provided no opportunity for a meaningful meet-and-confer process. Saudi Arabia had no reasonable chance to formulate a position on whether confidential documents may be shared with third parties that Plaintiffs had subpoenaed or whether the 14 documents identified by Plaintiffs should be filed under seal. Plaintiffs also did not comply with this Court's directives that the parties should "jointly submit [a] request" to file confidential documents that "present[s] both parties' arguments" as to whether those documents should remain sealed. ECF No. 4125, at 2.

Saudi Arabia now sets forth its arguments relating to the sealing of the 14 confidential documents filed with the Court on October 26. At the outset, Saudi Arabia does not object to the public filing of 1 of the 14 documents (bearing Bates number KSA0000000570). The other 13 should remain sealed because "higher values" of international comity, diplomatic and intra-governmental confidentiality, and privacy "necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).

*First*, 9 of the 13 documents fall within the protections of the Vienna Convention on Diplomatic Relations of 1961 ("VCDR") and the Vienna Convention on Consular Relations of 1963 ("VCCR" and, with the VCDR, the "Vienna Conventions").[1] In particular, the Vienna Conventions provide that "archives and documents" of a mission or consular post "shall be inviolable" at any time and "wherever they may be." VCDR art. 24; VCCR art. 33. They similarly provide that all "official correspondence" of the mission or consular post "shall be inviolable." VCDR art. 27(2); VCCR art. 35(2). The Second Circuit has construed these "inviolability" protections to be "broad," "advisedly categorical," and "strong." *767 Third Ave.*

---

[1] Those nine documents bear the following Bates numbers: KSA0000001230-31, KSA0000001247, KSA0000001256, KSA0000001257, KSA0000001277, KSA0000001291, KSA0000001618, KSA0000005719, KSA0000005720-21.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
November 2, 2018
Page 3

*Assocs. v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295, 298-99 (2d Cir. 1993). Indeed, the protections afforded to the premises of a diplomatic mission (including its archives and documents) are so compelling that they override even core judicial functions, such as enforcing a property owner's "right to obtain possession of its property." *Id*. at 296. If American courts were to "upset[] existing treaty relationships" by publicly disclosing the contents of a foreign sovereign's mission, American missions may well become subject to similar intrusions upon otherwise "untouchable" diplomatic papers. *Id*. at 296, 303.

The nine Vienna Convention documents that Plaintiffs seek to unseal are properly shielded from public view. Five documents are correspondence to or from a Saudi diplomatic mission or consulate regarding Saudi interests within the United States, many of which are communications directly to or from Saudi Arabia's Ambassador to the United States or Consul General in Los Angeles.[2] In addition to being "archives and documents" of a mission, those documents are "official correspondence" because they "relat[e] to the mission and its functions," such as "[r]epresenting [Saudi Arabia] in the [United States]," "[p]rotecting in the [United States] the interests of [Saudi Arabia] and of its nationals," and "[p]romoting friendly relations between [Saudi Arabia] and the [United States]." VCDR arts. 3, 27(2). The other four documents were from Saudi Arabia's mission to the United States and therefore are "archives and documents" that are categorically "inviolable." VCDR art. 24; VCCR art. 33.

The important interests protected by the Vienna Conventions are as compelling as the other "higher values" that have been found to justify sealing judicial documents. *See United States v. Aref*, 533 F.3d 72, 82-83 (2d Cir. 2008) (national security); *Lugosch*, 435 F.3d at 125 (attorney-client privilege); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143-44 (2d Cir. 2004) (settlement communications); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of innocent third parties); *In re Check Point Software Techs., Ltd. Sec. Litig.*, 2007 WL 1827113, at *1 (S.D.N.Y. June 20, 2007) (attorney work product). Nor does Saudi Arabia's voluntary production of Vienna Convention materials dilute Saudi Arabia's compelling interests in not having its diplomatic papers placed on the Court's public docket for all to see. *See, e.g.*, *United States v. $61,900*, 2010 WL 4689442, at *1 (E.D.N.Y. Nov. 10, 2010) ("even if [claimant] could defeat the privilege, the Court must still weigh the public interest of nondisclosure against his need for access"). Saudi Arabia's voluntary production of diplomatic papers was an extraordinary act for the limited purpose of facilitating discovery in this litigation in an effort to expedite its final resolution. Respect for Saudi Arabia's sovereignty and values of international comity weigh heavily in favor of keeping all Vienna Convention materials under permanent seal. *Cf. Strauss v. Credit Lyonnais, S.A.*, 2011 WL 4736359, at *5 (E.D.N.Y. Oct. 6, 2011) (sealing bank records that would be confidential under French law because doing so would "promote interests under the doctrine of international comity").

---

[2] Those five documents bear the following Bates numbers: KSA0000001230-31, KSA0000001247, KSA0000001256, KSA0000001257, KSA0000001277.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
November 2, 2018
Page 4

Plaintiffs are wrong to contend that Saudi Arabia is attempting "to selectively and simultaneously waive and assert protections under the [Vienna] Convention[s]." ECF No. 4235, at 5.  To move this litigation forward, Saudi Arabia has produced Vienna Convention materials to respond to *Plaintiffs'* discovery requests, and Plaintiffs have sought to put those materials in issue.  Saudi Arabia has not withheld any responsive materials on Vienna Convention grounds and therefore has made no "selective[]" assertion of privilege.  It merely seeks to seal Vienna Convention materials because the interests underlying those treaties outweigh the general public's right to access diplomatic and consular papers.  By way of comparison, we understand that the FBI plans to produce in this litigation documents generally protected from disclosure under the Privacy Act of 1974, subject to a proposed protective order (being filed today) that requires such documents be filed only under seal.  So, too, Saudi Arabia's extraordinary production of diplomatic papers does not detract from the case for maintaining those documents under seal.

*Second*, two of the documents (bearing Bates numbers KSA0000006861-62) are a report assessing the activities of Saudi nationals in the United States and a highly confidential telegram between high-ranking Saudi government officials discussing the report.  The telegram is marked "very confidential," and the source of the report was redacted at the request of the United States government.  Sealing such sensitive documents is warranted by the same principles of international comity and deference to the interests of a foreign sovereign that support the continued sealing of Vienna Convention materials.  Sealing the communications of high-level foreign government officials also is warranted by the compelling interest in ensuring the confidentiality of pre-decisional, deliberative communications, which facilitates "open and frank discussion" among officials about how to make governmental decisions.  *E.g.*, *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001); *see id.* ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news . . . .").  Other documents fall within this same deliberative-process protection, including the document bearing Bates numbers KSA0000000556-61, which is an intra-ministry memorandum making recommendations about Saudi preachers working abroad.

*Third*, several documents refer to individuals who are not subjects of discovery and who are not implicated by Plaintiffs' allegations.  For example, the documents bearing Bates numbers KSA0000000553-54 and KSA0000000556-61 discuss the identities and activities of Saudi preachers working abroad who are not subjects of Plaintiffs' discovery requests.  There is no public interest in viewing such information about "innocent third parties" because such information will have no bearing on the judicial process.  *See*, *e.g.*, *Amodeo*, 71 F.3d at 1050-51; *see also Lugosch*, 435 F.3d at 119 (document "must be relevant to the performance of the judicial function and useful in the judicial process" for presumption of public access).

If the Court grants Saudi Arabia's request to maintain the documents described above under seal, it also should authorize public filing of redacted versions of Plaintiffs' October 26, 2018 letter concerning their supplemental document requests; the Declaration of Catherine Mannherz Hunt, Appendix 2 to that letter; and Saudi Arabia's letter response today.  As contemplated by ¶ III(d) of this Court's Individual Practices in Civil Cases, we are today

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
November 2, 2018
Page 5

submitting to chambers by electronic mail highlighted copies of all documents Saudi Arabia proposes to redact and clean copies of all pages Saudi Arabia proposes to file under seal. We are available to meet and confer with Plaintiffs concerning appropriate redactions to their reply.

Plaintiffs also request authority to show confidential documents to subpoenaed third parties if those documents relate directly to those third parties. As Plaintiffs acknowledge, under the Protective Order currently in place, Plaintiffs may show such materials to third parties only during a deposition. As noted earlier, Plaintiffs did not complete the meet-and-confer process as to this request. On review, Saudi Arabia does not object to Plaintiffs showing such material to outside counsel for third parties for their eyes only, as long as those counsel agree in writing to be bound by the Protective Order. *See, e.g.*, *In re City of New York*, 607 F.3d 923, 935 & n.12 (2d Cir. 2010) (observing that "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets" and "is occasionally a feature of *criminal* cases in which the government is required to disclose classified national security information"). But Plaintiffs have not explained why they would need to show such documents to officials or employees of a third party (outside an authorized deposition). Permitting them to do so freely would invite excessive disclosure of confidential information.

To the extent Plaintiffs request "authoriz[ation] . . . to publicly file" 368 other confidential documents, ECF No. 4235, at 7, that request is premature. Because Plaintiffs have not yet filed or sought to file any of these documents with the Court, the procedures in the Court's August 27, 2018 Order have not yet been triggered. Rather, at this point, those hundreds of documents are merely "materials produced during the initial stages of discovery" as to which "no public right of access exists." ECF No. 1900, at 3 (citing *Amodeo*, 71 F.3d at 1050). Plaintiffs' statement that they "anticipate filing" these documents at some unspecified future time, ECF No. 4235, at 3, should not permit them to accelerate the process. The Court's Individual Practices contemplate concrete requests to file specific documents under seal; it would be inefficient and unduly burdensome to require Saudi Arabia to justify the hypothetical sealing of voluminous materials that may not ever become "judicial documents." *See, e.g.*, *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (document must be filed with the court, "relevant to the performance of the judicial function," and "useful in the judicial process" to be a "judicial document"); *see also Lugosch*, 435 F.3d at 124 (justification required only for "continued sealing" of documents).

Plaintiffs' request that Saudi Arabia consider whether to remove the confidentiality designations on the 368 confidential documents is not yet before the Court (and Plaintiffs do not appear to contend otherwise). Under the Protective Order, Saudi Arabia has "twenty (20) calendar days following the receipt of such written notice" to reconsider its designation of those documents before Plaintiffs "may make a motion" seeking to de-designate any of them. ECF No. 1900, at 15. Accordingly, Saudi Arabia respectfully suggests that it consider Plaintiffs' objections and continue to confer with Plaintiffs. Any motions practice about the 368 documents should occur only after the 20-day period set aside for "effort[s] to resolve [confidentiality] dispute[s] without court intervention." *Id.*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
November 2, 2018
Page 6

        Respectfully submitted,

        */s/ Michael K. Kellogg*

        Michael K. Kellogg
        *Counsel for the Kingdom of Saudi Arabia*

cc:    Chambers of the Honorable George B. Daniels (via facsimile)
       All MDL Counsel of Record (via ECF)