

Robert K. Kry
MoloLamken LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
T: 202.556.2011
F: 202.556.2001
rkry@mololamken.com
www.mololamken.com

November 2, 2018

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY  10007

BY ECF

Re:   *In re Terrorist Attacks on September 11, 2001*, No. 1:03-md-01570 (S.D.N.Y.)

Dear Judge Netburn:

We write on behalf of defendant Dallah Avco in opposition to the proposed protective order that the United States and plaintiffs have submitted to govern the forthcoming productions from the FBI.  Plaintiffs seek to hold Dallah Avco liable based on alleged actions that Omar Al Bayoumi took to assist the 9/11 hijackers in Southern California.  We understand that the FBI's productions will contain documents bearing directly on that issue.

The proposed protective order would make those documents available to Dallah Avco's counsel of record in the United States.  But it would deny access to (1) Dallah Avco's longtime foreign attorney, Abdelgader Hashim, who is crucial to our firm's ability to represent our client; (2) Dallah Avco's in-house counsel responsible for the case; and (3) Dallah Avco's Saudi law expert who has been retained in this matter for well over a year.  Those restrictions are not warranted.  The protective order should be modified as indicated in the redline attached.

1.      **The Proposed Protective Order Would Seriously Undermine Our Firm's Ability To Represent Dallah Avco in This Litigation**

The United States's proposed order would seriously impair our firm's ability to represent Dallah Avco in this case.  Highly restrictive protective orders like this one are a "drastic remedy" because they "limit[ ] the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions."  *Prometheus Sols., Inc. v. Coker*, No. 14-cv-0349, 2015 WL 13662596, at *3 (D.N.M. Apr. 1, 2015); *see also id.* at *2 (cautioning against the "indiscriminate use" of such orders, "especially in the absence of a strong showing of probable . . . harm"); *Commissariat à l'Energie Atomique v. Samsung Elecs. Co.*, 430 F. Supp. 2d 366, 370 (D. Del. 2006) (explaining that "open communication between attorneys and their clients is a bedrock principle upon which the rules of professional conduct depend"); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (order would "greatly impair [the party's] ability to defend himself"); *Frees, Inc. v. McMillian*, Civ. A. No. 05-1979, 2007 WL 184889, at *5 (W.D. La. Jan. 22, 2007)

(similar). Those concerns are greatly magnified here, where the proposed order would exclude not only non-attorney party personnel but also foreign attorneys, in-house counsel, and foreign consultants and experts.

The impact of excluding Dallah Avco's foreign attorney, Abdelgader Hashim, would be particularly severe. Mr. Hashim formerly served as general counsel for Dallah Al Baraka, Dallah Avco's parent company. He has advised the company concerning this litigation since its inception. After Mr. Hashim reached the age of retirement, a new general counsel was appointed, but Mr. Hashim continued to act as the company's legal advisor with respect to this litigation. Mr. Hashim is our firm's primary point of contact for communications with our client and with former employees in the Kingdom. He is involved in every strategic decision we make and nearly every internal discussion of any significance. (By way of illustration, my email records show that I corresponded with Mr. Hashim nearly 100 times during October 2018 alone.) This past September, Mr. Hashim attended the deposition of former Dallah employee Jaber Khalifa in London (the only Dallah witness deposed so far) and consulted with me throughout; we expect him to attend future Dallah Avco depositions as well. Mr. Hashim's role is particularly important given that attorneys at our firm do not speak Arabic and thus rely on Mr. Hashim to communicate with many client staff and third parties and to translate documents. In short, Mr. Hashim is a longstanding and indispensable member of our litigation team.

Denying Mr. Hashim access to protected FBI material would seriously impair our ability to litigate this case. The FBI's production will include documents bearing directly on plaintiffs' claims against Dallah Avco. We need to communicate with Mr. Hashim about those documents to make effective strategic decisions and to provide advice and recommendations to our client. We cannot do that effectively if Mr. Hashim is denied access. Given our client's longstanding relationship with Mr. Hashim, our client places unique trust in his guidance and advice. Our attorney-client relationship would be fundamentally altered if we could not advise our client jointly with Mr. Hashim, informed by the same body of evidence.

Denying Mr. Hashim access to protected FBI material would impair our representation in other ways as well. Because Mr. Hashim has advised Dallah Avco in connection with this matter far longer than our firm has, he has unique knowledge about a number of topics relevant to the case. Those topics include the significance of certain persons or entities whose names have shown up in FBI documents in the past. For that reason, we have previously discussed and shared publicly available FBI documents with Mr. Hashim to obtain his feedback and input. Our ability to represent our client would be negatively affected if we could not do the same thing with the forthcoming confidential FBI documents. Plaintiffs will surely use those documents as exhibits at depositions or in support of dispositive motion briefs. We need to be able to consult with Mr. Hashim to address those documents effectively.

The impact on our communications with experts and consultants would be similarly severe. The proposed order would permit Dallah Avco to share materials with consultants or experts in the United States, but not those abroad. That limitation would exclude the only expert Dallah Avco has retained so far. Well over a year ago, Dallah Avco retained a partner at a well-respected Jeddah law firm to provide expert testimony on Saudi legal issues relevant to the case, including the nature of the relationship between Omar Al Bayoumi and Dallah Avco under Saudi

law and whether Al Bayoumi's activities in the United States would be a basis for vicarious liability under Saudi law. *See Restatement (Second) of Conflict of Laws* § 174 cmt. c (1971) (noting circumstances in which foreign law governs vicarious liability). We have worked extensively with that expert over the past year. Given that the expert was retained to opine on Saudi law, it is not surprising that he is based in the Kingdom rather than the United States. It is doubtful that Dallah Avco could locate a similarly qualified expert in the United States, and even if it could, it is unreasonable to require Dallah Avco to replace its existing expert after spending so much time working with this one.

The exclusion of our client's in-house counsel is also inappropriate. Those in-house counsel are ultimately responsible for making decisions on behalf of the client and are accountable to our client for those decisions. The Court is already familiar with the current general counsel, Abdullah Yamani, from the lengthy declaration he submitted in opposition to plaintiffs' motion to compel. Dkt. 3285. Our firm has frequently consulted with Mr. Yamani and with other attorneys in the Dallah Al Baraka legal department to provide advice and recommendations concerning this litigation. We could not do that as effectively if we were prohibited from discussing or sharing key documents with them. Plaintiffs are suing Dallah Avco for hundreds of billions of dollars. It is fundamentally unfair to deny Dallah Avco's in-house lawyers access to the evidence on which its liability may turn.

Finally, by limiting access to attorneys, experts, and consultants in the United States, the proposed order has a serious disparate impact. Plaintiffs reside in the United States and thus unsurprisingly are represented by United States attorneys and experts. By contrast, defendants are based in the Middle East and thus are represented in part by foreign attorneys and foreign experts and consultants. The proposed order's territorial limitations thus impose significant restrictions on defendants' ability to communicate with their attorneys and experts of choice, with no corresponding impact on plaintiffs. That is unfair and unwarranted.

**2.     The United States Has Not Justified the Extreme Restrictions It Proposes**

The only rationale the United States has offered for its draconian restrictions is that this Court may have difficulty enforcing the protective order if a foreign attorney or expert violates its terms. That concern is misplaced for a number of reasons.

As an initial matter, the government offers no reason whatsoever to believe that any of the foreign individuals at issue will actually violate the order. Dallah Avco is not seeking to give out documents to random scofflaws. These are ***attorneys*** who owe ethical duties under foreign law. There is no reason to suspect they will violate those duties, any more than a United States attorney would. That is particularly true given their seniority and experience. (Mr. Hashim, as noted, was formerly general counsel of a major multinational conglomerate. *See generally* Dallah Albaraka Holding Co., http://www.dallah.com.)

In any event, Dallah Avco's proposed revisions to the order require that, as a condition of obtaining access, foreign attorneys, experts, or consultants must agree in writing to comply with the protective order and to submit to this Court's jurisdiction for any violations. There is thus no question that this Court may issue an order to show cause against a foreign attorney or other

person granted access to protected material and order sanctions against that person for any violation. Courts have deemed such provisions sufficient. *See, e.g.*, *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798, 2015 WL 5522166, at *9 (N.D. Cal. Sept. 18, 2015) (rejecting concern about enforcing protective order against foreign entity by noting that signatories "expressly agree[ ] 'to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order' ").

This Court also has ample practical means to enforce any sanctions. For example, if the Court found that professional discipline were appropriate, it could refer its order to the relevant foreign professional authority along with its recommendation. That is not fundamentally different from something this Court might do in sanctioning an out-of-state attorney admitted *pro hac vice*. Of course, this Court could also revoke a foreign party's access to protected material going forward. Those are both strong deterrents to violations. Finally, since Dallah Avco's foreign attorneys and in-house counsel act as agents for Dallah Avco, the Court could presumably require Dallah Avco itself to agree to be responsible for any monetary sanctions. Given that the foreign attorneys at issue have longstanding relationships with Dallah Avco, that condition would surely be a powerful deterrent against misconduct by those individuals, and also a strong incentive for Dallah Avco to ensure that its agents comply.

This Court thus has ample means to enforce the protective order against foreign parties. There is no justification for a categorical discriminatory exclusion based on nationality.

### 3. These Issues Cannot Be Adequately Addressed on a Document-by-Document Basis

The United States suggests that Dallah Avco's concerns can be adequately addressed on a document-by-document basis. It proposes that Dallah Avco's U.S. counsel seek its permission for any specific document they want to share with Dallah Avco's foreign attorney or expert. For several reasons, that approach is not workable or realistic.

For one thing, although the United States has proposed a specific schedule by which it will respond to any requests, there will still be substantial delays. Even under the United States's proposed schedule, it would take nearly a month or more to negotiate, brief, and obtain a ruling on every dispute. Those delays would impose real harm. If plaintiffs submit protected materials with their dispositive motion briefs, Dallah Avco cannot wait weeks or months to find out whether it may share those submissions with its foreign attorneys or in-house counsel. If plaintiffs use protected materials during a deposition, there is no way Dallah Avco could obtain permission to share the documents with its foreign attorneys before the deposition ends.

Finally, there will inevitably be disputes over whether particular documents may be shared with Dallah Avco's foreign attorneys or expert. This Court's time would not be well spent ruling on an endless stream of confidentiality disputes involving individual documents. The Court already has enough to do.

      For all those reasons, the United States has not adequately justified the highly restrictive protective order it seeks. Dallah Avco's proposal strikes a better balance between the government's legitimate confidentiality interests and Dallah Avco's interests in effective representation and being able to see the evidence against it. The protective order should be modified in the respects Dallah Avco proposes.

                                                      Respectfully submitted,

                                                      Robert Kry

cc:    All counsel by ECF