# MDL 1570 Plaintiffs' Executive Committees

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>Motley Rice LLC<br>James P. Kreindler, *Co-Chair*<br>Kreindler & Kreindler LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>Cozen O'Connor |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>Kreindler & Kreindler llp<br>Robert T. Haefele, *Co-Liaison Counsel*<br>Motley Rice LLC | J. Scott Tarbutton, *Liaison Counsel*<br>Cozen O'Connor |

**VIA ECF**

November 7, 2018

Hon. Sarah Netburn
United States Magistrate Judge
 for the Southern District of New York
500 Pearl Street
New York, NY 10011

  Re: *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

  The Plaintiffs' Executive Committees ("PECs") file this reply in further support of their October 26, 2018 Letter- Motion: (1) reaffirming the authority of omnibus Protective Order ¶M.3 (ECF No. 1900 at 16), applicable to party discovery, which authorizes the PECs to publicly file documents that the Kingdom of Saudi Arabia ("Kingdom" or "Saudi Arabia") unilaterally marked as "confidential" (identified in Exhibits B and D to the PECs' letter-motion); and (2) requesting an Order permitting the PECs to share the Kingdom's "confidential" documents with non-parties who agree to be bound by the terms of the omnibus Protective Order governing party discovery.[1]

  While the de-designation issue will be further addressed after the 20-day period for the Kingdom to respond has expired, that should not impede the PECs from immediately being allowed to publicly file any of the "confidential" documents that they have identified (in Exhs. B and D to the Letter-Motion, a subset of which appear in the appendix to the PECs' letter-brief regarding supplemental discovery). Holding this issue "in abeyance" would constitute "a delay that [is] effectively a denial of any right to contemporaneous access – where 'each passing day may constitute a separate and cognizable infringement of the First Amendment.'" *Lugosch v. Pyramid Co. of Ononduga*, 453 F.3d 110, 126 (2d Cir. 2006), quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).

---

[1] The issues raised here are distinct from the protective order addressing documents the FBI will be producing

Contrary to the Kingdom's arguments, prior orders establishing confidentiality designation protocols for party discovery documents in this litigation do not prohibit filing judicial documents on the public docket. While previously the Court established a procedure for maintaining the confidentiality of *discovery* documents, it established no analogous procedure for the *judicial filing* of any materials, even those marked "confidential" during discovery. *See* ECF Nos. 1900, 4125. Indeed, Judge Casey expressly rejected just such a request. After the defendants sought to require all materials designated as confidential to be filed under seal, Judge Casey allowed them to unilaterally designate discovery documents as "confidential," but refused to require judicially filed documents to be sealed, stating "[n]othing in this [Protective] Order shall be construed to apply to any Disclosure or Discovery Material filed with the Court in connection with any trial, other hearing, or an exhibit or other attachment to any motion … ." ECF No. 1900 at 16. That was so because the defendants' "broad assertions" in favor of confidentiality of discovery materials – that production would "encompass 'an enormous number of documents,' and '[a] substantial portion of those documents may contain sensitive information or confidential information, such as details about defendants' finances, the public disclosure of which would intrude on defendants' privacy'" – was "not sufficient … to warrant a protective order covering all 'judicial documents,' particularly those submitted to the Court in connection with … hearings[] and motions.'" ECF No. 1900 at 4, 6.

Saudi Arabia recognized as much when, in July of this year, it moved to "supplement" the omnibus Protective Order to provide for an automatic "seal[ing] for two weeks" of any judicial filing of a document that it had marked as "confidential." ECF No. 4077 at 1-2. As with the Kingdom's previous request to prospectively seal judicial filings absent a specific, on-the-record demonstration of "good cause" (ECF No. 1900 at 6), in its Aug. 27, 2018 Order this Court denied the motion and held that the "existing protective order, ECF No. 1900" continued to apply. ECF. No. 4125 at 3.

To the extent that this Court's Individual Rules diverge from the omnibus Protective Order with respect to judicial filings, it nevertheless remains the Kingdom's burden to overcome the "presumption of immediate public access" that attaches to judicial filings "under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 126; *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 826 (2d Cir. 1997) ("The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action.") It has failed to do so.

The Kingdom's generalized objections to the Exh. B documents and the Exh. D documents included with its supplemental letter-brief appendix, and its refusal to provide any objection to the other Exh. D documents, do not overcome the burden that both the common law and the First Amendment place on the party seeking to prevent disclosure. *See Lugosch*, 435 F.3d at 124 ("the First Amendment … secure[s] to the public … a right of access to civil proceedings," which extends to "'documents filed in connection with pretrial motions'"), quoting *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987).[2]

---

[2] Because subject matter jurisdiction is dispositive in this case and the discovery disputes relate directly to the Court's subject matter jurisdiction under the Justice Against Sponsors of Terrorism Act, the documents "should not remain under seal *absent the most compelling reasons.*" *Lugosch*, 435 F.3d at 123, internal quotation marks and citation omitted (emphasis in original); *see also United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (the weight given to the presumption of access is

November 7, 2018
Page 3

     To meet its heavy burden, the party seeking to seal information from public view "must offer specific facts demonstrating that closure [or sealing of the record] is essential to preserve higher values and is narrowly tailored to serve that interest." *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F.Supp.2d 409, 413 (S.D.N.Y. 2014) (denying motion to file exhibit under seal because movant's declaration provided "only boilerplate statements" that offered "no insight into" the specific harm or prejudice public filing would cause).  Accordingly, courts routinely require specific, verified factual allegations—set forth in declarations or affidavits—detailing not only the *type* of injury that public filing allegedly presents, but *specific examples of the harm itself*.[3]  So, for example, when an affidavit in support of an application to seal makes only "the broad allegation that '[p]ublic disclosure … would raise a substantial risk of harm … since competitors would have access to … confidential sales information,'" that is insufficient to satisfy the "burden of demonstrating that higher values overcome the presumption of public access." *Tropical Sales Corp. v. Yext, Inc.*, 2016 WL 2733427, at * 1 (S.D.N.Y. May 10, 2016) (absent specific examples or articulated reasons why public access would harm movant, sealing application denied). "Broad and general findings"—such as those "broad assertions of good cause" underlying the omnibus Protective Order (*see* ECF No. 1900, p. 5)—"are not sufficient to justify closure [or sealing.]" *Lugosch*, 435 F.3d at 120.

     Here, the Kingdom has provided no averment describing a specific harm that public filing of any of the documents the PECs have identified would present.  Instead, the Kingdom's counsel provided boilerplate objections such as:

| Document Number | Kingdom's Objection |
|---|---|
| KSA 553-54, 556-61 | "refer to individuals who are not subjects of discovery" |
| KSA 1230-31, 1247, 1256-57, 1277, 1291, 1618, 5719-21 | correspondence to or from a diplomatic mission or consulate regarding Saudi interests in the United States |
| KSA 6861 | "report assessing the activities of Saudi nationals in the United States" |
| KSA 6862 | "highly confidential telegram between high-ranking Saudi government officials discussing [KSA 6861]" |

None of its objections were supported by a sworn statement from a Kingdom representative, nor did any objection provide a description of the specific harm that public filing would present.  Saudi Arabia's boilerplate recitations cannot satisfy the heavy burden it bears when seeking to overcome the presumption of public access to judicial filings.

     As to KSA 553-561, that a non-party's name appears in the discovery document cannot overcome the strong presumption of public access secured by the First Amendment and the common law.  Documents containing information from personnel files and financial records are, for

---

"governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.")

[3] This is analogous to what the government agencies must present when moving to maintain records under seal. *See, e.g., United States v. Apperson*, 642 Fed. App'x 892, 904 (10th Cir. 2016) (in holding that *Vaughn* index alone was insufficient "we underscore that the asserted interests for sealing cannot be generic interests that would apply with equal force to every case. The government must articulate specific interests that apply in the context of *this* case.") (emphasis in original.)

3

example, presumptively public without a specific showing of potential injury. *See Collado v. City of New York*, 193 F. Supp. 3d 286, 290 (S.D.N.Y. 2016) (where "defendants characterize the documents as confidential personnel records in conclusory fashion without specifying either the 'higher values' served by secrecy or the nature of any personal or tactical information those documents contain" they failed to "overcome the 'strong presumption' in favor of public access to documents."); *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 631 (S.D.N.Y. 2011) (defendant did not contend that employee would suffer any injury if the information is made public, and because [employee]" did not oppose unsealing, "any privacy interest that [employee] may have in protecting the information is outweighed by the presumption of access to it.")  "Absent such a showing" of a specific harm—as as opposed to a nebulous privacy interest—a moving party "has not met its burden" and the public right of access outweighs any "privacy interest." *Tropical Sails Corp. v. Yext, Inc.,* 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016).

Nor do the Kingdom's objections to the public filing of materials maintained in a consulate or embassy overcome the strong presumption in favor of public access to judicial documents.

Saudi Arabia's claim that it is entitled to judicial sealing of documents subject to the Vienna Convention is dubious.  First, the Vienna Convention only allows a party to withhold production.  Saudi Arabia waived any such argument when it produced the documents.  The Kingdom has cited no law to the contrary.  Second, the Vienna Convention does not apply to the documents the Kingdom has produced.  Under Article 35(2), only "official correspondence…relating to the consular post and its functions" falls within the Convention.  Several of the documents that the Kingdom seeks to have filed under seal are communications with the Ministry of Islamic Affairs. *See* KSA 1246, 1256-57, 1277, 1291.  But many Ministry of Islamic Affairs staff members who were accredited as "diplomats" had their diplomatic visas revoked by the United States in 2003 and 2004, because those individuals, though stationed in the Kingdom's embassy and consulates "were not engaged in the conduct of administrative or other duties within the Embassy, and were therefore not entitled to diplomatic status." *See* Exhibit E hereto, Jan. 28, 2004 Department of State Press Release.[4]  Simply because an individual to whom a letter is addressed held a staff position does not transform the document itself into one relating to consular functions. KSA 1618.  Indeed, we know that Saudi Arabia arranged for Fahad Thumairy to be provided status as a diplomat, though his activities certainly fell outside the scope of diplomacy.  And billing statements for utility services cannot reasonably be construed to fall within the Convention, as they do not constitute "official correspondence." KSA 5719-21.  Yet the Kingdom invokes the Vienna Convention to try to protect such quotidian materials, even though clearly not relating to the consular function of the post.

Likewise, that the Kingdom has summarily classified certain communications as "highly confidential" or stated that a report "concern[s] a Saudi national" (KSA 6861-62) – a national, as it happens, who features prominently in the PECs allegations against the Kingdom – also utterly fail to satisfy the requirement for a specific, fact-based averment of the "higher values" that would warrant a "narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.

---

[4] As recent events have demonstrated, consular posts of Saudi Arabia have been used for non-consular purposes. *See, e.g.,* "Saudi Arabia, in Reversal, Suggests Khashoggi's Killing was Premeditated," NYTimes, Oct. 25, 2018.

Concerning the Exh. D documents, the parties are engaged in motion practice addressing the role of Saudi Arabia government officials in providing support to the 9/11 hijackers, including a motion to compel document production due Nov. 30, 2018.  The PECs identified "confidential" documents they will file with the Court (*see* Exh. D); the Kingdom provided no description let alone verification of what, if any, harm would ensue from public filing; this Court should not sanction the Kingdom's effort to circumvent the presumption of public access to judicial documents.

Last, as to sharing documents with non-parties, the omnibus Protective Order allows the PECs to provide "confidential" documents not only at a deposition, but also when "reasonably necessary in the preparation of [a] witness for … deposition … ." ECF No 1900 at 12.  The PECs' current proposal is a reasonable and limited corollary to the omnibus Protective Order, simply allowing them to share "confidential" documents when such are related to non-party discovery, but only if the non-party agrees to be bound by the terms of the omnibus Protective Order.  The risk that the Kingdom conjures of widespread dissemination of "confidential" materials is no greater if the PECs are allowed to share materials when pursuing non-party discovery with those non-parties themselves than it will be when sharing the materials with counsel for the non-parties.

The Kingdom continues to conceal information of substantial public interest, relying on designations of "confidentiality" by fiat, with no sworn statement from a Kingdom representative specifically describing the harm that public filing would present.  The Kingdom's counsel's objections to the Exh. B and supplemental discovery letter-brief appendix documents—and its refusal to offer any objection to the remaining Exh. D documents—do not establish that sealing is "essential" to preserve any "higher value," nor that sealing each document "is narrowly tailored" to serve any identified interests and do not overcome the strong common law and constitutional presumption in favor of immediate public access to judicial documents. *In re New York Times Co.*, 828 F.2d at 116.  This Court should reaffirm that the PECs may publicly file Exhs. B and D documents and should allow sharing of "confidential" documents with non-parties agreeing to be bound by the omnibus Protective Order.

Respectfully submitted,

| | |
|---|---|
| COZEN O'CONNOR | MOTLEY RICE LLC |
| By: /s/ *Sean P. Carter* <br> SEAN P. CARTER <br> For the Plaintiffs Exec. Committees | By: /s/ *Robert T. Haefele* <br> ROBERT T. HAEFELE <br> For the Plaintiffs Exec. Committees |

KREINDLER & KREINDLER LLP

By: /s/ *James P. Kreindler*
    JAMES P. KREINDLER
    For the Plaintiffs Exec. Committees

cc:   The Honorable George B. Daniels via ECF
      All Counsel of Record via ECF