

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

November 7, 2018

**By ECF**
Hon. Sarah Netburn
U.S. Magistrate Judge
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *In re Terrorist Attacks*, 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      We write on behalf of the Federal Bureau of Investigation ("FBI") in response to defendant Dallah Avco's letter of November 2, 2018 ("Ltr."). Dallah Avco objects to certain terms of the proposed protective order that was negotiated between the FBI, the Plaintiffs' Executive Committees ("PECs"), and the Kingdom of Saudi Arabia ("KSA"), and submitted to the Court for approval on November 2, 2018. (ECF No. 4242). The proposed protective order would allow the FBI to produce sensitive information from the files of an ongoing law enforcement investigation, including information pertaining to numerous third parties, while still maintaining to the greatest extent possible protections against the public disclosure of this information. Dallah Avco proposes that the protective order be modified to allow this sensitive FBI information to be accessed by foreign nationals who are not subject to the jurisdiction of this Court. The Court should decline to grant this relief, and should instead enter the protective order agreed upon by the other parties in interest.

## BACKGROUND

### 1. Allegations Regarding Dallah Avco

      Plaintiffs allege that Dallah Avco "provided a 'ghost' job to Omar al Bayoumi" while Bayoumi was living in the United States and providing support to two of the September 11 hijackers. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 671, 679 (2d Cir. 2013). The Second Circuit held that these allegations "suggest that Dallah Avco may have directed its activities, related to Bayoumi's cover employment, toward the United States," and thus that there may be a "nexus between [Dallah Avco's] alleged support of al Qaeda and the September 11, 2001 attacks." *Id.* The Second Circuit remanded for discovery regarding personal jurisdiction.

*In re Terrorist Attacks*, 03 MDL 1570
Page 2

Dallah Avco contends that Bayoumi was an employee of the KSA's Presidency of Civil Aviation ("PCA") who was seconded to an Air Navigation System Support project for which Dallah Avco was contracted with PCA to provide services. (ECF. No. 3284). Dallah Avco alleges that it did not hire, direct, or supervise the work of Bayoumi. (*Id.*).

## 2. The FBI Subpoena and Contemplated Document Production

Plaintiffs' subpoena and Touhy request to the FBI seeks, among other things, records "referring or relating to" Omar al Bayoumi and Fahad al Thumairy, as well as records from the "subfile" investigation referenced in the 9/11 Review Commission Report issued in March 2015. As the FBI previously explained in greater detail in its letter of September 13, 2018 (ECF No. 4176), the documents that are the subject of the PECs' Touhy request and subpoena are currently classified and/or were compiled in the course of an ongoing law enforcement and counterterrorism investigation. Omar al Bayoumi and Fahad al Thumairy are, along with others, the subjects of that investigation.

Notwithstanding the sensitive nature of these documents, as the government informed the court at the October 12, 2018 conference, the FBI has determined that it will, in the exercise of its discretion, produce documents to the PECs that are responsive to their discovery demands. The FBI has made clear to the litigants, however, that it is making a discretionary determination to release information with the understanding that the disclosed information would be subject to a restrictive protective order that would provide, to the greatest extent possible, that the information disclosed would be closely held, to minimize the risk (and the attendant harms) of public disclosure of the information.

## 3. The Terms of the Proposed Protective Order

The proposed protective order provides that information designated as confidential by the FBI may only be disclosed to (i) members of the PECs, as well as support staff and other attorneys working in the same law firm as a member of the PECs, to the extent those attorneys are licenced to practice in the United States, have filed a notice of appearance in this case, and have offices in the United States; (ii) attorneys representing KSA and Dallah Avco, as well as support staff of such attorneys, to the extent those attorneys have offices in the United States and have filed a notice of appearance; (iii) witnesses being deposed in this action who agree to be bound by the terms of the Protective Order; (iv) experts or consultants whose offices are in the United States; and (v) court reporters, stenographers, videographers and translators assisting with depositions. Proposed Protective Order ¶ 6.

The proposed protective order provides a mechanism by which selected confidential documents could be shared with additional persons if there is a litigation need to do so. Paragraph 7 states that any party may seek the consent of the FBI to share a particular confidential document or portion thereof with an individual not listed in paragraph 6, upon a showing of good cause. To the extent the FBI does not consent, a party can seek leave from the Court to share such documents.

## ARGUMENT

Rule 26(c) provides that "any person from whom discovery is sought may move for a protective order in the court where the action is pending." The court may "for good cause" issue an order that "specif[ies] terms" for the disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(B). The FBI has demonstrated good cause for the Court to enter an attorney's eyes only protective order that would minimize the risk of public disclosure of this sensitive information.

The documents at issue were compiled as part of an ongoing law enforcement and counterterrorism investigation. They are replete with detailed personal information regarding third parties, most of whom have some association with Bayoumi and/or Thumairy. Indeed, witness statements are among the primary documents that the FBI intends to release in the first and second tranches. These third parties have not been charged with a crime, and yet having their names and personal information associated with individuals being investigated in connection with the most heinous terrorist attack in United States history would undeniably subject them to embarrassment and harassment. *See, e.g.*, *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation"); *United States v. Smith*, 776 F.2d 1104, 1113-14 (3d Cir. 1985) (disclosure of identities of uncharged subjects of criminal investigation could result in "clearly predictable injuries to [their] reputations").

Unauthorized disclosure of these sensitive documents would also raise significant law enforcement concerns. Among other things, public disclosure of interview reports and other third-party information would undermine the FBI's ability to obtain the cooperation of witnesses in this and other investigations. *See, e.g.*, *United States v. Tucker*, 380 F.2d 206, 213 (2d Cir. 1967). Such cooperation "is a requisite of effective law enforcement." *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977). And courts have long recognized the particular harms implicated by a release of information from the files of an ongoing criminal investigation. *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) (holding, under FOIA, that "disclosure would reveal the scope and direction of the investigation and could allow the target to destroy or alter evidence, fabricate fraudulent alibis, and intimidate witnesses"); *see also W. Journalism Ctr. v. Office of Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C. 1996) (noting that witnesses with premature access to investigative records "could easily alter, conform or construct their testimony depending upon the information disclosed").

Courts routinely enter protective orders to protect the types of information at issue here. *See, e.g.*, *United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013). Indeed, the Court has entered a protective order governing pre-trial discovery in this case, noting that the "numerous defendants to these consolidated actions are accused of either committing the terrorist acts of September 11, 2001 or providing material support to those who did," thereby subjecting their confidential and private information to "widespread public scrutiny with prejudicial effects in the absence of a protective order." *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 223 (S.D.N.Y. 2006).

The Second Circuit has affirmed that it is particularly appropriate for documents containing law enforcement sensitivities to be subject to an attorney's eyes only protective order,

even if the information contained therein is not protected by the law enforcement privilege. *In re City of New York*, 607 F.3d 923, 949 (2d Cir. 2010). While even restrictive protective orders can be "fallible," they nonetheless "minimize the effects of disclosure." *Id.*; *see also Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) (attorney's eyes only protective order "can mitigate many if not all of the oft-alleged injuries to the police and law enforcement").

Dallah Avco asserts that attorney's eyes only orders are disfavored, Ltr. at 1, but the cases it cites do not support that broad proposition. *See Prometheus Solutions, Inc. v. Coker*, No. 14-cv-0349 GBW/SMV, 2015 WL 13662596, at *3 (D.N.M. Apr. 1, 2015) (noting that attorney's eyes only provisions "are not unusual in litigation involving trade secrets," but declining to approve an order on the specific facts of that case); *Commissariat A L'Energie Atomique v. Samsung Elec. Co.*, 430 F. Supp. 2d 366, 370 (D. Del. 2006) (holding that, in patent case in which attorney's eyes only protective order had been entered, counsel could share a particular document with its client because the designating party had made a "weak showing" as to why that document contained confidential information). In any event, those cases arose in the distinguishable context of trade secrets and patent litigation. As the Second Circuit has explained, commercial information is not analogous to law enforcement information. *In re City of New York*, 607 F.3d at 936. The Second Circuit has found that even the types of attorney's eyes only protective orders that are common in trade secrets litigation may not provide sufficient protection of law enforcement information, both because the "injury [from disclosure is] more severe," and because "it is far more difficult to remedy." *Id.* A commercial injury can "usually be remedied by an injunction or money damages," but the same is not true of the harms from disclosure of law enforcement information. *Id.* Moreover, the compromise of law enforcement sensitive information is much harder to detect than a disclosure of trade secrets. *Id.*

The concerns highlighted by the Second Circuit apply with particular force in this case. Dallah Avco proposes that the Court grant access to foreign nationals who are not present in the United States, who do not appear to have any ties to the United States, and over whom the Court cannot exercise any effective jurisdiction. As justification, Dallah Avco asserts that these individuals are attorneys who owe unspecified ethical duties under unspecified foreign law. Ltr. at 3. But given that the Second Circuit has found that an attorney's eyes only protective order is an imperfect protection even when applied to counsel licensed in the United States, *In re City of New York*, 607 F.3d at 935 n.12 (citing examples of leaks of confidential information by members of the bar), such an order would provide even less protection against disclosures by individuals who are not subject to the Court's jurisdiction. That these individuals nominally consent to the Court's exercise of jurisdiction over them is of no moment if they are not present in the United States and hold no property or assets in the United States.

Dallah Avco further argues that any potential violation of the protective order could be addressed through a monetary sanction levied upon it. Ltr. at 4. But the FBI is not a party to this litigation, and a monetary sanction would not provide it, or the third parties whose information is at issue, with any effective remedy if sensitive information were to be publicly disclosed. Nor is there reason to believe that a potential monetary penalty against Dallah Avco would serve as an effective deterrent against disclosure by the individuals with whom Dallah Avco proposes to share these documents.

*In re Terrorist Attacks*, 03 MDL 1570
Page 5

While the harm to the FBI and the third parties whose information is at stake from public disclosure would be substantial and irremediable, any prejudice to Dallah Avco from the entry of the protective order is at best speculative.  Dallah Avco claims that it would not be able to litigate this case effectively if it could not share "key documents" with its foreign counsel, its foreign expert, and in-house counsel.  Ltr. at 3.  As an initial matter, it is not at all clear that any of the FBI documents would be of more than marginal significance to the litigation between the PECs and Dallah Avco.  The FBI can represent that the vast majority of the documents that will be produced do not even mention Dallah Avco.  Moreover, Dallah Avco has made no showing as to why these individuals would be "'uniquely qualified' to assess the documents," part of the balancing test laid out in the very trade secrets cases upon which Dallah Avco relies for assessing whether a client should be allowed access to confidential material.  *See Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (entering attorney's eyes only protective order to protect financial and marketing data, where defendant would not be "uniquely qualified" to interpret the data, and thus had not established a litigation "need . . . to personally examine" these records); *Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 184889, at *5 (W.D. La. Jan 22, 2007) (declining to enter attorney's eyes only protective order where plaintiff had "unique" knowledge of the technology at issue and counsel would not be able to interpret the documents without the client's assistance).  Dallah Avco's U.S.-based counsel should be equally capable of reviewing and assessing the strategic importance of any documents produced by the FBI.

In any event, Dallah Avco's argument attacks a strawman.  The protective order contains a mechanism by which Dallah Avco can obtain leave from either the FBI or the Court to share "key documents" with these individuals.  Thus, this is not a situation in which a document that is essential to Dallah Avco's defense would be kept from the client or foreign counsel.  Rather, the issue before the Court at the present time is whether these individuals should be provided access to the entirety of the confidential FBI production, regardless of whether there is any litigation need for those individuals to have access to such sensitive information.  The answer to this question is plainly no.

Dallah Avco has offered no good reason why these individuals need access to the entirety of the FBI production.  Dallah Avco merely contends that the procedure that has been proposed for granting access to specific documents could result in "delays."  Ltr. at 4.  Vague assertions of potential inconvenience cannot serve as the basis for providing foreign counsel and Dallah Avco employees with wholesale access to the FBI production.  The Court is well-equipped to deal with any disputes on an expedited basis if a time-sensitive issue were to arise.  And if a document is of central relevance to Dallah Avco's interests, it need not wait until a motion is filed or a deposition is in progress before availing itself of the proposed procedures for obtaining leave for additional access.  The mechanisms in the proposed protective order appropriately balance the FBI's need to keep its sensitive information confidential with the parties' need to effectively litigate this case.

Accordingly, the FBI respectfully requests that the Court enter the proposed protective order without modifications.

*In re Terrorist Attacks*, 03 MDL 1570
Page 6

                        Very truly yours,

                        GEOFFREY S. BERMAN
                        United States Attorney for the
                        Southern District of New York

            By:    */s/ Jeannette A. Vargas*
                        SARAH S. NORMAND
                        JEANNETTE A. VARGAS
                        Assistant United States Attorneys
                        86 Chambers Street, 3rd Floor
                        New York, New York 10007
                        Tel.  (212) 637-2709/2678
                        Fax  (212) 637-2730
                        sarah.normand@usdoj.gov
                        jeannette.vargas@usdoj.gov