# Exhibit 1

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001** | **03-MD-1570 (GBD)(SN) ECF Case** |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.* No. 02-CV-6977
*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.,* No. 04-CV-05970
*Euro Brokers v. Al Baraka Investment and Development Corp., et al,* No. 04-CV-7279
*Estate of O'Neill, et al. v. Al Baraka Investment and Development Corp., et al,* No. 04-CV-1923
*Federal Insurance Col, et al. v. Al Qaida, et al.,* No. 03-CV-6978


**DECLARATION OF DR. ABDULHAMEED BEN YOUSOF AL-MAZROO IN RESPONSE TO THE COURT'S AUGUST 29, 2018 ORDER (DKT # 4130) REGARDING DEFENDANTS WORLD ASSEMBLY OF MUSLIM YOUTH-SAUDI ARABIA AND WORLD ASSEMBLY OF MUSLIM YOUTH-INTERNATIONAL DISCOVERY OBLIGATION COMPLIANCE**


I, Dr. Abdulhameed Ben Yousof Al-Mazroo, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following statements are true and correct:

1. I am not a party in the above captioned matter.

2. I am a citizen of Saudi Arabia.

3. I currently serve as the Assistant Secretary General for Offices and International Relations of World Assembly of Muslim Youth ("WAMY") in Riyadh, Saudi Arabia. I submit this Declaration in response to Magistrate Judge Sarah Netburn's August 29, 2018 Order (DKT # 4130) as it relates to Defendants World Assembly of Muslim Youth Saudi Arabia (WAMY SA) and World Assembly of Muslim Youth

1

International (WAMY Int'l), jointly referred to as "WAMY," compliance with its discovery obligations.

4. I first became involved with WAMY in 2000 as a volunteer serving as the chair of the Kashmir Committee as a volunteer.

5. My current title is Assistant Secretary General of WAMY for Offices and International Relations; hence, I am familiar with WAMY's global operations and projects.

6. In my capacity as Assistant Secretary General, among the matters under my portfolio is this multi-district litigation ("MDL").

7. I oversee WAMY's discovery documents search efforts. My team and I have direct contact with our counsel in the United States ("U.S. Counsel") and we work with counsel in searching for and locating relevant discovery documents for production to Plaintiffs in this litigation.

8. Our US counsel and I, work with a team referred to as the discovery search delegation, which assists us with all matters related to WAMY records and documents.

9. The August 29, 2018 Order (DKT # 4130) instructed WAMY to provide a sworn declaration in accordance with 28 U.S.C. § 1746 describing in details its efforts to locate additional and/or all documents related to reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees; documents relating to WAMY's relationship with the Saudi government; documents relating to the Benevolence International Foundation; and documents regarding WAMY's

relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad.

10. This declaration provides the requested response.

## WAMY's DOCUMENT COLLECTION EFFORTS AND PRODUCTION PRE AUGUST 29, 2018 ORDER

11. WAMY did not delete, throw away, destroy, or otherwise dispose of any documents after it was made aware that there was a litigation pending against it before the federal court for the Southern District Court of New York.

12. When discovery commenced, our U.S. Counsel contacted me to begin the process of gathering relevant and responsive discovery documents.

13. U.S. counsel conducted in-person meetings with WAMY officials, heads of branch and regional offices, as well as the search team, including myself. We went through each request in Plaintiffs' separate requests for the production of documents with U.S. counsel, who explained in detail the type of documents to search for and produce. They explained the relevance of those documents and how all-responsive documents within the possession of any WAMY branch office, regional office or WAMY headquarters must be located, preserved and produced.

14. To complete a thorough search, U.S. counsel directed WAMY to send representatives to WAMY regional offices and branches that existed between 1992 and 2002 and to bring all documents without exception to the warehouse at WAMY's headquarters for search and review of documents relevant to the Plaintiffs' requests.

15. With the supervision of U.S. Counsel, WAMY formed search teams for the purpose of document collection for the litigation. These search teams included regional officer delegates, the heads of branch offices, myself, and key WAMY officials. In total,

WAMY has had over 150 delegates, divided into eight (8) teams, engaged in the document collection efforts for this litigation.

16. In addition to the delegations, WAMY also sent letters to all its branch offices and various country representatives, instructing them to request bank records from their respective banking institutions for the period between 1992 through 2002.

17. Most of the offices/representatives received back the requisite statements from the bank, where available and the same were turned over to our U.S. Counsel for production: A few of the banks did not have the requested records due to the banks' retention period.

18. Unlike the banking system in the United States, in many developing countries where WAMY offices are located bank statements are not sent on a monthly or regular basis. Bank statements are usually made available upon request and restricted in time.

19. After various meetings with counsel and at the direction of our counsel in 2012, 2013 and 2014, WAMY sent representatives to collect additional documents from WAMY's branch and regional offices. The representatives copied and brought to the Kingdom of Saudi Arabia all remaining documents for the period 1992 to 2002, without exception. This was done so that all documents are reviewed for responsiveness and relevance.

20. Once all documents were brought to the warehouse located in Riyadh, the search team along with U.S. counsel conducted searches to cull from the vast total amount of documents those that would be responsive and relevant to Plaintiffs' requests. These documents were then scanned, transmitted to counsel and then re-reviewed by counsel before production.

21. When any gaps were apparent in the production, U.S. counsel traveled to the Kingdom to meet again with the search team, conducted additional searches and directed the search team to locate specific categories or types of documents that seemed to be missing in the search. This exercise was continuous until the closure of the paper discovery period.

22. U.S. counsel also met with regional heads and branch representatives either in the Kingdom of Saudi Arabia or, in certain instances, other countries of WAMY operations to ascertain that all documents have been reviewed and responsive discovery documents have thoroughly been searched for. U.S. counsel, the search team delegates and the heads of regional and branch offices worked together to search for the documents many times over which resulted in over 1.2 million pages of responsive documents being produced.

## WAMY's DOCUMENT COLLECTION EFFORTS AND PRODUCTION FOLLOWING THE AUGUST 29, 2018 ORDER

23. Following the Court's August 29, 2018 Order (DKT # 4130), as relates to Plaintiffs' motion to compel against WAMY, U.S. Counsel contacted us and informed us of the Court's decision. U.S. Counsel held various meetings with WAMY and painstakingly explained what the Court had Ordered WAMY to do.

24. U.S. Counsel has been in constant meetings with WAMY and has generated written instructions on the specific documents WAMY was Ordered to produce or verify production of.

25. At the U.S. Counsel's direction and oversight, WAMY reconstituted its discovery documents search team, this time with a team of five (5) people. The reconstituted

5

search team was tasked with the duty to undertake additional document searches for (a) discovery documents responsive to Plaintiffs' requests and (b) specific documents identified in the Court's Order (DKT # 4130). I am in charge of and directly supervising this reconstituted WAMY search team in Saudi Arabia. I am also in constant and direct communication with U.S. counsel during this search.

26. The reconstituted search team works out of WAMY's warehouse in Saudi Arabia, where all WAMY documents are stored, and systematically follows U.S. Counsel's document collection instructions.

27. WAMY has exhaustively gone through its archives for the requested documents.

28. A few previously undiscovered documents were found during this reconstituted search effort. However, a good majority of the documents had already been produced.

29. DKT # 4130 directed WAMY to provide a declaration on its search efforts for the below four types of documents.

A. Reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees.

42. DKT # 4130 Ordered WAMY "to search for and produce all reports, meeting minutes, and other documents from WAMY's governing bodies, boards, and committees that have not previously been produced. If WAMY has previously produced a document that the PECs have specifically identified in connection with their motion to compel, WAMY must inform the PECs of the document's Bates number. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate all reports, meeting minutes, and other documents from its governing

6

bodies, boards, and committees." (DKT # 4130 at 9). WAMY hereby responds as follows:

43. WAMY seeks to clarify for the Court the structure of its governing body and the meetings held by various governing bodies.

44. WAMY's General Assembly is comprised of representatives from active members of WAMY[1]. The General Assembly meets once every four years. For the discovery period applicable to WAMY, meetings of the General Assembly were held in 1993, 1998 and 2002. A meeting was not held in 1997 (the fourth year after 1993), but the meeting was held the next year, 1998. All three General Assembly meeting minutes have been produced to Plaintiffs as bates numbers WAMYSA051079-WAMYSA051083, WAMYSA051084-WAMYSA051088 and WAMYSA062500-WAMYSA062505.

45. WAMY General Secretariat is the umbrella name given all committees and boards of WAMY. The main head of the General Secretariat is the Secretary General of WAMY. The General Secretariat meetings are held by the Board of Trustees. Pursuant to Article XIII of the Statute of WAMY, the Board of Trustees shall meet at least once a year at the invitation of the Secretary General. The decisions of the Board of Trustees shall be taken by a majority vote of those members present. In the event of a tie, the President of the meeting has veto power. Additionally, the President of WAMY may invite the Board of Trustees to an emergency meeting to discuss certain issues; in such emergency meeting, the President of WAMY then chairs such a

---

[1] There are different categories of membership of WAMY. Among them are (1) Active members, which comprise of Islamic Organizations and Institutions, which take care of Muslim Youth and Students. (2) Supportive members comprising of Islamic organizations/associations whose main activities are not Muslim student and youth specific. (3) Honorary members, which are Islamic officials and leaders in the field of advocacy, science and service to Muslim youth.

meeting. (*See e.g.* WAMYSA063783-WAMYSA063691). Therefore, the meetings of the General Secretariat are the same as those of the Board of Trustees.

46. In addition to the Board of Trustees meetings, WAMY also holds meetings of the Partial Board of Trustees. The Partial Board of Trustees is comprised of the Board of Trustees members residing in the Kingdom of Saudi Arabia, and not the entire Board members. There is no provision in WAMY's statute governing the frequency of meetings of the Partial Board of Trustees. These meetings are ad hoc and held on an as-needed basis.

47. Usually, the Board of Trustee meetings do not overlap with those of the Partial Board of Trustees; however, in isolated incidences, they have. When such overlaps have happened, the meetings are convened as meetings of the Board of Trustees of the Headquarters Country. For the period applicable to WAMY in this litigation, this happened during WAMY's Seventh Session, which ran for a duration of five years from 1993 to 1998.

48. WAMY has produced meeting minutes of its Board of Trustees meetings for the years within the discovery period applicable to WAMY (1992-2002) with the exception of those for the years 1999 and 2001. For both 1999 and 2001, no Board of Trustees meetings were convened. Following the Court's August 29, 2018 Order (DKT # 4130); WAMY has searched its archives and verified the same.[2]

49. WAMY has produced the minutes of all convened Board of Trustees meetings. The minutes for 1992 are produced as WAMYSA051637-WAMYSA051640; 1993 as

---

[2] There was no Board of Trustees meeting held in 1999. 1998 held eighth and last meeting of the Seventh WAMY Session; thereafter the first meeting of the Eighth WAMY Session was held in 2000.
Likewise, for 2001, there was no meeting of the Board of Trustees because, in 2000, the first and second meetings of the Eighth WAMY Session were held and the third meeting of the Eighth WAMY Session was held in 2002.

WAMYSA016458-WAMYSA016459;   1994   as   WAMYSA051643-
WAMYSA051654,   &   WAMYSA016471-WAMYSA016480;   1995   as
WAMYSA051665-WAMYSA051671;   1996   as   WAMYSA032007-
WAMYSA032013;   1997 as   WAMYSA037230-WAMYSA037236;   1998   as
WAMYSA051686-WAMYSA051691,   &   WAMYSA016481-WAMYSA016487;
2000   as   WAMYSA015998-WAMYSA016008,   WAMYSA051707-
WAMYSA051718   &   WAMYSA051719-WAMYSA051730,   and   2002   as
WAMYSA015983-WAMYSA015997 & WAMYSA016453-WAMYSA016454.

50. WAMY has produced all copies of the various meetings held by the Partial Board of
Trustees. These have been produced as bates WAMYSA051637-WAMYSA051640,
(1992);   WAMYSA051665-WAMYSA051671   (1995);   WAMYSA032007-
WAMYSA032013   (1996);   WAMYSA051699-WAMYSA051706   &
WAMYSA037230-WAMYSA037236 (1997); WAMYSA051686-WAMYSA051691
&   WAMYSA016481-WAMYSA016487   (1998);   and   WAMYSA016453-
WAMYSA016454 (2002).

51. Following our 2018 document gathering efforts, WAMY was able to identify a few
Partial Board of Trustees meeting minutes inadvertently not previously gathered.
These   have   now   been   produced   to   Plaintiffs   as   WAMYSA1235429-
WAMYSA1235454.

52. WAMY also functions through entities referred to as WAMY Committees. It has two
main categories of these committees, namely (1) Youth Activity Committees and (2)
Advisory Committees. Over the years, various committees have been formed under

these two main categories. The committees are formed on an as-needed basis or for specific projects. Not all committees hold meetings; however, a good majority do.

53. Following our 2018 document gathering efforts, WAMY has been able to identify some committee meeting minutes. These have been produced to Plaintiffs as WAMYSA1235619-WAMYSA1235886.

54. WAMY had an entity referred to as Lajnat al Birr al Islamiyya ("LBI") (the English translation is Benevolence Islamic Committee). LBI provided social welfare assistance and support programs for the needy, including support for orphans, the construction and running of orphanages, construction of schools and vocational training facilities, and the construction of hospitals and provision of medical assistance.

55. While functioning as a subsidiary of WAMY, LBI functioned under a Board of Supervisors. This Board held meetings on an *ad hoc* basis to address various issues as they arose. WAMY has produced meeting minutes of the LBI Board of Supervisors. They have been produced as WAMYSA029757-WAMYSA029760 (1993); WAMYSA028019-WAMYSA028025 (1994) and WAMYSA028014-WAMYSA028017 (1995).

56. Following our 2018 document gathering efforts, WAMY was able to identify an additional LBI Board of Supervisor meeting minute. The same has now been produced to Plaintiffs as WAMYSA1235455-WAMYSA1235459.

57. In addition to the LBI Board of Supervisors meeting, some of the LBI offices held internal meetings to address various issues. Some of those meetings were recorded via minutes and the minutes for the same have been produced to Plaintiffs as

WAMYSA028009-WAMYSA028013;     WAMYSA061330;     WAMYSA016455-WAMYSA016457 and WAMYSA032014-WAMYSA032020.

B.  Documents relating to WAMY's relationship with the Saudi government

54. DKT # 4130 Ordered WAMY "to search for and produce all documents relating to WAMY's relationship with the Saudi government, including but not limited to all records concerning the Saudi government's contributions to WAMY and its budget; communications between WAMY and Saudi ministries regarding WAMY's budget; documents relating to the Saudi government's oversight of WAMY's finances, operations, and global activities; and records regarding Saudi embassies' involvement in WAMY's funding, operations, and global activities. In addition, within 60 days of this Opinion and Order, WAMY is ORDERED to produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate all documents relating to WAMY's relationship with the Saudi government." (DKT # 4130 at 10). WAMY hereby responds as follows:

55. WAMY, as a Saudi charity, receives funding from the Kingdom. This funding is received annually. WAMY has extensively and specifically searched for records relating to the Kingdom's funding of WAMY's budget, which are stored at WAMY headquarters and warehouse. WAMY has been able to gather some responsive documents, and the same have been produced to Plaintiffs as WAMYSA1235392-WAMYSA1235394; WAMYSA1235419-WAMYSA1235422 and WAMYSA1235986-WAMYSA1235990.

56. WAMY communicates with the Kingdom and various ministries on a host of different subjects. As specifically relates to communication with Saudi ministries about WAMY's

budget, this only happens on an as-needed basis. Most of such communications are sent, for instance, where the Kingdom has delayed transmitting funds to WAMY. In these instances, WAMY typically sends a letter to the Ministry of Islamic Affairs to that effect. There are a few instances where the Kingdom will give WAMY funds to undertake specific projects and request a report back. Upon completion of that project, WAMY reports back to the appropriate ministry or government agency.

57. As Ordered by the Court, WAMY has also produced documents about its communication with Saudi Ministries related to WAMY's budget. These have been produced to Plaintiffs as WAMYSA16204, with additional documents produced as WAMYSA1235395 -WAMYSA1235418.

58. The Court also Ordered WAMY to produce documents relating to the Saudi government's oversight of WAMY's finances, operations and global activities. WAMY has already produced a great deal of documents to this effect.

59. Not all of the produced documents are oversight-specific. They do, however, evince WAMY's correspondence with the Saudi government about various projects and activities including WAMY's global activities. The correspondence are also about funding and WAMY's operations or operations the Kingdom nominates WAMY to supervise.

60. Already produced documents responsive to the Court's Order as relates to the Kingdom's oversight of WAMY's finances, operations and global activities for the period between 1992 to 2002, included documents bates stamp WAMYSA031073 - WAMYSA031074;     WAMYSA016207;     WAMYSA031137-WAMYSA031139; WAMYSA031140-WAMYSA031141; WAMY SA 2618- WAMY SA 2619; WAMY

SA 2973; WAMY SA 3243; WAMY SA 2785–2787; WAMYSA033190-WAMYSA033192; WAMYSA061423; WAMYSA029903; WAMYSA029938; WAMYSA189637-WAMYSA189827; WAMYSA030839; WAMYSA031120-WAMYSA031123; WAMYSA060875-WAMYSA060877; WAMYSA031124-WAMYSA031134; WAMYSA031135-WAMYSA031136; WAMYSA060881-WAMYSA060893; WAMYSA065671-WAMYSA065672; WAMYSA060895-WAMYSA060896; WAMYSA030736; WAMYSA030797-WAMYSA030801; WAMYSA060894; WAMY SA 15800; WAMYSA060861-WAMYSA060874; WAMYSA 16208; WAMYSA 16210- WAMYSA 16212; WAMYSA341511-WAMYSA341648; WAMYSA349914-WAMYSA350202; WAMYSA529623-WAMYSA529682; WAMYSA058443-WAMYSA058444 and WAMYSA352205.

61. However, following our 2018 document gathering efforts, WAMY was able to identify additional documents related to the Kingdom's oversight of WAMY's finances, operations and global activities. The same have now been produced to Plaintiffs as WAMYSA1235423-WAMYSA1235428.

62. WAMY's main purpose is to serve Muslim youth worldwide. Additionally, however, WAMY also has a large charitable component, which serves Muslims in general. WAMY's charitable component is also a worldwide service. As such, WAMY is in constant contact with various Saudi embassies in different countries. Embassies of their own volition have also reached out to WAMY and still do, requesting WAMY's engagement in various causes pertinent to WAMY's mission.

63. WAMY has produced all documents regarding its correspondence with various Saudi embassies and the embassies' involvement in WAMY's operations. Examples of these

documents include document bates number WAMYSA031076-WAMYSA031077; WAMYSA031078-WAMYSA031084; WAMYSA031085-WAMYSA031088; WAMYSA031093-WAMYSA031100; WAMYSA031109; WAMYSA031112-WAMYSA031113; WAMYSA031119; WAMY SA 2439; WAMY SA 2683; WAMY SA 3305 – 3310; WAMY SA 3041 -3043; WAMYSA031112-WAMYSA031113; WAMYSA031075; WAMYSA031089-WAMYSA031092; WAMYSA031101-WAMYSA031103; WAMYSA031104-WAMYSA031108; WAMYSA060851-WAMYSA060853; WAMYSA030819; WAMYSA031110-WAMYSA031111; WAMYSA060854-WAMYSA060855; WAMYSA060856-WAMYSA060859; WAMYSA030820-WAMYSA030829; WAMYSA031114-WAMYSA031118; WAMYSA060860; WAMYSA063623-WAMYSA063624; WAMYSA030749-WAMYSA030751; WAMYSA030252-WAMYSA030254; WAMYSA061269-WAMYSA061272; WAMYSA031144; WAMYSA031069-WAMYSA031071; WAMYSA060846-WAMYSA060850; WAMYSA9842; WAMYSA9885-WAMYSA 9887; WAMYSA037216-WAMYSA037217; WAMYSA047727; WAMYSA030746-WAMYSA030747 and WAMYSA058434-WAMYSA058435.

C.  Documents relating to the Benevolence International Foundation

64. DKT # 4130 Ordered WAMY "to search for and produce any documents in its possession, custody or control relating to the Benevolence International Foundation and produce those documents to the PECs. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746

describing in detail its efforts to locate any documents relating to the Benevolence International Foundation." (DKT # 4130 at 12-13). WAMY hereby responds as follows:

65. Manathamat El Birr Doualia, known as Benevolence International Foundation ("BIF"), is/was an organization created by Adel Batterjee. **BIF has never been a WAMY entity or had any relationship with WAMY whatsoever.** Lajnat al Birr al Islamiyya ("LBI") (Benevolence Islamic Committee), as explained above, was at one time a WAMY entity. Adel Batterjee was involved in LBI in its initial years, in LBI's offices in Pakistan and Saudi Arabia.

66. However, once WAMY found out that Adel Baterjee had created BIF, WAMY's then Secretary General sent a letter to Adel Batterjee asking him to cease and desist from using his organization (BIF) to confuse people who thought it was LBI due to the similarity in the name and logo (WAMYSA05778). In essence, Batterjee sought to steal the identity of LBI when he formed BIF.

67. WAMY wrote to Adel Baterjee and instructed him to inform people that BIF is not LBI and that the two entities were different (WAMYSA027856).

68. WAMY soon thereafter dismissed Baterjee due to dissatisfaction with him, his creation of BIF, and the use of WAMY to facilitate his agenda and his failure to report back on LBI Projects (WAMYSA061345-WAMYSA061346).

69. WAMY has already produced all documents in its possession, custody and control as related to BIF. These have been produced as bates number WAMYSA064048; WAMYSA057723-WAMYSA057744;     WAMYSA034224-WAMYSA034248; WAMYSA14699-WAMYSA14775;     WAMYSA057553;     WAMYSA570829-

WAMYSA570855;     WAMYSA570927-WAMYSA570933;     WAMYSA570943-WAMYSA570952.

70. Additionally, related to this, I am aware as a result of information learned during this litigation that an official of BIF, Enaam Arnaout, was charged and convicted of crimes in violation of the laws of the United States as a result of other similar fraudulent activities conducted by BIF. See *United States v. Enaam M. Arnaout,* 02-CR- 892 (2) (SBC), United States District Court for the Northern District of Illinois.

D.  Documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad

71. DKT # 4130 Ordered WAMY "to search for and produce all documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad. In addition, within 60 days of this Opinion and Order, WAMY must produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail its efforts to locate documents regarding WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad." (DKT # 4130 at 14). WAMY hereby responds as follows:

72. After a thorough search, I can state and swear under penalty of perjury that WAMY does not have any documents about Hamas, Fatah and the Palestinian Islamic Jihad, including documents evincing financial support to these three entities.

73. Additionally, following our 2018 document gathering efforts, as Ordered by the Court, the search team has verified that WAMY does not have any documents related these entities.

74. Following the Court's August 29, 2018 Order (DKT # 4130), WAMY has produced documents responsive to Plaintiffs' first, second and third document request as applicable to WAMY's work in Palestine and WAMY's relation with Palestine based charities and entities. However, U.S. counsel, on behalf of WAMY, maintains the objections to the request on grounds of relevancy.

74. Based on the foregoing, WAMY and its counsel diligently searched for and gathered documents relevant to Plaintiffs' requests and this litigation such that responsive documents could be securely and effectively produced. These have included over 1.2 million pages of documents related to governance of WAMY and its relation with the Kingdom of Saudi Arabia; WAMY projects, operations and budget for the same; and WAMY financial documents which have included banking documents, financial reports and audits.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: Nov, 11 2018

Dr. Abdulhameed Ben Yousof Al-Mazroo

17