*IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001* **(03-MDL-1570) (GBD) (SN)**

**The Plaintiffs' Executive Committees' Jurisdictional and Merits Discovery Chart
Pursuant to the Court's October 26, 2018 and November 9, 2018 Orders (ECF Nos. 4230 and 4250)**

| JURISDICTIONAL DISCOVERY DEFENDANTS | | | |
|---|---|---|---|
| **DEFENDANT** | **INTERIM DISCOVERY DEADLINES** | **CLOSE OF DISCOVERY** | **REMAINING DISCOVERY TO BE CONDUCTED** |
| Kingdom of Saudi Arabia (Jurisdictional Discovery) | During the most recent conference held on October 12, 2018 concerning the status of jurisdictional discovery with the Kingdom of Saudi Arabia, the Department of Justice ("DOJ") provided the Court with an overview of the Federal Bureau of Investigation's ("FBI") efforts to identify documentation and information responsive to the Plaintiffs' Executive Committees' ("PECs") April 6, 2018 subpoena, conduct a declassification and privilege review of those records, and begin producing those documents in separate tranches on a rolling basis to the PECs starting in mid-November, subject to the Court's endorsement of a proposed protective order jointly submitted by the DOJ and PECs on November 2, 2018.  *See* ECF No. 4242.  The Court requested a further update concerning the status of the FBI's document productions and set the following deadline:<br><br>• <u>November 20, 2018</u> – The PECs and DOJ shall file a joint status letter "updat[ing] the Court regarding the status of the government's declassification and privilege review." *See* Order at ECF No. 4213 at 1.<br><br>In addition, the Court set the following briefing schedule for the PECs' motion to compel discovery from the Kingdom: | | <u>FBI Document Production and Protective Order</u> – Pursuant to the Court's Order at the October 12, 2018 conference that the DOJ and PECs confer on the terms of a protective order that would govern the production of FBI records in this litigation, the DOJ provided the PECs with a draft of the protective order on October 30, 2018.  The PECs promptly held meet and confers with the DOJ on October 31, November 1, and November 2.  As a result of those discussions, the DOJ and PECs reached agreement on the terms of the proposed protective order, which they submitted jointly to the Court on November 2, 2018 (ECF No. 4242).  Defendant Dallah Avco submitted an opposition to the proposed protective order that same day (ECF No. 4244), and the PECs and DOJ each submitted a response on November 7, 2018 (ECF Nos. 4246 and 4248).  The issue is fully briefed and awaits the Court's resolution.  The PECs understand the FBI is presently preparing the production of three tranches of documents relating to the FBI's PENTTBOM subfile investigation of Fahad al Thumairy, Omar al Bayoumi, their subagents, and other Saudi government officials who tasked them with assisting the 9/11 hijackers.  The FBI's first tranche is expected in the next week or so, subject to resolution of Dallah Avco's objection to the protective order, with the final tranche to be produced in January 2019.<br><br><u>Saudi Arabia's Document Production Deficiencies</u> – Pursuant to its Order of May 24, 2018 (ECF No. 4009), the Court directed the Kingdom of Saudi Arabia to produce documents on a rolling basis, and to complete its production on July 31, 2018.  The Kingdom did not produce documents on a rolling basis, instead serving the entirety of its production on the July 31, 2018 deadline.  The PECs promptly engaged a translation firm to translate the documents, a process that was not completed until last week.  While the translation and analysis of the documents was ongoing, the PECs began |

| | | |
|---|---|---|
| | • <u>November 30, 2018</u> – The PECs may file a motion to compel. *See* Order at ECF No. 4213 at 2.<br><br>• <u>December 21, 2018</u> – The Kingdom may file a response to the PECs' motion to compel. *Id.*<br><br>• <u>January 4, 2018</u> – The PECs may file a reply in further support of their motion to compel. *Id.* | sending written communications on a rolling basis to counsel for the Kingdom identifying these gaps and other deficiencies in the production and searches conducted by the Kingdom: October 10, 2018 (raising a variety of issues including gaps relating to Thumairy, Sowailem, and Bayoumi); October 24, 2018 (raising issues relating to Thumairy); October 30, 2018 (raising a variety of issues including gaps relating to King Fahad Mosque and Thumairy); November 8, 2018 (raising issues relating to Thumairy, Sowailem, and Bayoumi); and November 13, 2018 (raising issues relating to the scope of the Kingdom's document searches, additional repositories to be searched, the time period for searches, and additional issues).  The parties conducted a meet and confer on November 13, 2018 to discuss a number of these issues in advance of the PECs' motion to compel due on November 30.<br><br>Supplemental Requests for the Production of Documents – On October 10, 2018, the PECs served supplemental document requests seeking records concerning seven Saudi government officials involved in the terror support network operated by Fahad al Thumairy and Omar al Bayoumi to assist the 9/11 hijackers.  Counsel for the parties held a meet and confer to discuss the Kingdom's objections to the supplemental requests, but were unable to reach agreement.  Consequently, the parties have filed a series of letters with the Court under seal detailing their respective positions concerning the PECs' supplemental discovery.<br><br>Third Party Discovery – The PECs issued a number of subpoenas to third party organizations in possession of relevant information concerning the issues discussed in the Court's March 28, 2018 decision authorizing jurisdictional discovery as to the Kingdom.  In addition to the FBI subpoena, the PECs served subpoenas earlier this year on the Department of State and Central Intelligence Agency.  The PECs and the DOJ have conducted several meet and confers concerning the agencies' efforts to respond to the subpoenas and produce responsive documents.  That dialogue is ongoing.<br><br>Additionally, the PECs served subpoenas on several non-governmental entities, including the King Fahad Mosque ("KFM"), where Fahad al Thumairy served as Imam while simultaneously holding diplomatic credentials at the Saudi Consulate in Los Angeles, CA.  The PECs have conducted meet and confer sessions with the KFM's counsel and are awaiting the production of additional documents and answers to outstanding inquiries, which will determine whether a motion to compel production is necessary.  The PECs have further issued subpoenas to eight academic institutions in the United States where, during interviews with |

| | | | |
|---|---|---|---|
| | | | members of the 9/11 Commission, Omar al Bayoumi claimed to have enrolled.<br><br>For purposes of facilitating the third parties' responses to the subpoenas, the PECs have requested that the omnibus Protective Order be amended to permit the sharing of discovery materials marked as confidential by the Kingdom with third parties (like the KFM and academic institutions), subject to the third parties' agreement to be bound by the terms of the omnibus Protective Order.  The Kingdom seeks to limit the PECs' ability to conduct this critical follow up with third parties concerning relevant documentation and information.  This issue has been fully briefed and awaits this Court's decision. *See* ECF No. 4235, 4243, and 4247.<br><br>Plaintiffs anticipate that some further follow up document discovery may be warranted based on the materials received from the Kingdom, the FBI, and other third parties.<br><br>Plaintiffs also anticipate additional motion practice regarding the Kingdom's designation of documents as confidential.<br><br><u>Depositions</u> – As discussed during the October 12 conference, the PECs intend to provide a preliminary list of proposed deponents to the Kingdom at the same time the PECs file their motion to compel on November 30, 2018. |
| Dallah Avco<br><br>(Jurisdictional Discovery) | There are no interim discovery deadlines. | January 31, 2019<br><br>(Fact Deposition Deadline) | <u>Depositions</u> – Members of the PECs deposed Jabir Khalifa, a former Dallah Avco employee, on September 20, 2018 in London, United Kingdom, a "Presumptively Acceptable Location" pursuant to the Deposition Protocol Order at ¶ 31 (ECF No. 3894).  Riaz Khan, another former Dallah Avco employee, was also scheduled to appear for a deposition in London the day before Mr. Khalifa.  However, just two days prior to his scheduled deposition, the PECs were informed that Mr. Khan would not be appearing due to his inability to obtain a travel visa.  Plaintiffs are conferring with counsel for Dallah Avco to reschedule Mr. Khan's deposition, and schedule additional depositions of individuals associated with Dallah Avco, including Alawi Saeed Kamel and Rule 30(b)(6) witness(es) designated by the defendant.<br><br>The PECs further intend to pursue Rule 30(b)(6) depositions of a limited number of U.S. officials and representatives and anticipate conferring with members of the Defendants' Executive Committee ("DEC") regarding the process for conducting those depositions in the near future.<br><br>The PECs anticipate that additional motion practice (motions to compel and/or sanctions) may be warranted following those depositions. |

| | | | |
|---|---|---|---|
| Abdullah Omar Naseef, Abdullah Muhsen al Turki, Abdullah bin Saleh al Obaid, Adnan Basha, and Soliman al Buthe (a/k/a the "Charity Official Defendants") (Jurisdictional Discovery) | There are no interim discovery deadlines. | April 1, 2019 (Fact Deposition Deadline) | PECs' Fee Application – On July 6, 2018, this Court issued an Opinion and Order granting in part the PECs' motion for sanctions (ECF Nos. 3748-3750, 3770-3771) for the Charity Official Defendants' failure to comply with the Court's September 7, 2017 Order directing them to produce: (1) any other documents responsive to the PECs' document requests, including certified copies of passports; (2) a sworn certification from each Charity Official stating that they had produced all documents responsive to the PECs' document requests; and (3) a privilege log identifying any documents that were being withheld as privileged. *See* ECF No. 4043. Among the sanctions imposed, the Court ordered the Charity Official Defendants to pay the reasonable attorneys' fees and costs incurred by the PECs in bringing their motion for sanctions. *Id.* at 18. On November 9, 2018, the PECs, with the approval of the Charity Official Defendants, submitted a letter to the Court advising of the parties' agreement and proposal that the Court impose a flat rate sanction of $25,000.00 jointly and severally on the five Charity Official Defendants. *See* ECF No. 4249. By Order dated November 12, 2018 (ECF No. 4252), the Court directed the Charity Official Defendants to "pay the agreed upon flat rate value of $25,000.00, jointly and severally, in satisfaction of the financial sanction imposed in the Court's July 6, 2018 sanctions order (ECF No. 4043)."<br><br>Depositions – Members of the PECs deposed defendant Abdullah Muhsen al Turki on September 14-15, 2018, and defendant Abdullah bin Saleh al Obaid on September 17-18, 2018. Both depositions took place in London.<br><br>The PECs are presently conferring with counsel for defendant Adnan Basha to schedule his deposition, and continue to monitor the status letters submitted to the Court on behalf of defendant Abdullah Omar Naseef concerning his health. In the event Naseef's condition improves and he is able to participate in this litigation, the PECs will confer with Naseef's counsel to schedule his deposition.<br><br>The PECs noticed the deposition of Soliman al-Buthe to occur in London in September 2018. Al-Buthe filed a motion for a protective order seeking to prevent his deposition from proceeding in London. The Court denied that application. However, counsel for defendant Soliman al Buthe has indicated that al Buthe does not intend to appear for his deposition, notwithstanding this Court's denial of his motion for a protective order. *See* ECF No. 4074 at 2-3.<br><br>The PECs anticipate that additional motion practice (motions to compel and/or sanctions) may be warranted following those depositions. |

| | | | |
|---|---|---|---|
| Yassin al Kadi (Jurisdictional Discovery) | There are no interim discovery deadlines. | April 1, 2019 (Fact Deposition Deadline) | <u>Yassin Kadi Document Production</u> – On August 27, 2017, the Court issued an Opinion and Order directing Kadi to search for and produce (1) two reports relating to Rowad Development, and (2) 11 documents concerning a Saudi government investigation relating to Kadi. *See* ECF No. 4123. By letter dated October 26, 2018, Kadi's counsel advised the Court that documents had been located and would be produced to the PECs. ECF No. 4234. The PECs received eleven documents on November 12, 2018.<br><br><u>Depositions</u> – Members of the PECs deposed defendant Yassin al Kadi on July 10, 2018 in London. Upon completion of additional motion practice and the PECs' ongoing review of Kadi's document productions, the PECs anticipate conferring with Kadi's counsel concerning the availability of Wa'el Hamza Jelaidan and other potential deponents. The PECs anticipate that additional motion practice (motions to compel and/or sanctions) may be warranted following those depositions. |

| **MERITS DISCOVERY DEFENDANTS** |

| DEFENDANT | INTERIM DISCOVERY DEADLINES | CLOSE OF DISCOVERY | REMAINING DISCOVERY TO BE CONDUCTED |
|---|---|---|---|
| Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") (Merits Discovery) | During a lengthy meet and confer process in October 2007, the PECs identified eight categories of documents responsive to the PECs' discovery requests. The Muslim World League ("MWL") and the International Islamic Relief Organization ("IIRO") agreed to prioritize and expedite production of documents in those eight categories. After multiple delays in meeting their obligation, the MWL and the IIRO ultimately failed to perform as agreed and the PECs filed a motion to compel on March 16, 2011.<br><br>After a hearing on the motion to compel on April 12, 2011, without relieving the defendants of their obligation to respond to the PECs' remaining discovery demands, the Court ordered the MWL and IIRO to expedite production, within three weeks of the date of that order, of all documents responsive to eight identified categories (Tr. of Apr. 12, 2011; *see* ECF No. 3828 at 7, listing the eight categories).[1] | April 1, 2019<br><br>(Fact Deposition Deadline) | In the recent meet and confer proceedings, MWL and IIRO conceded that they had not fully searched numerous MWL and IIRO branch offices, *including branch offices within the Kingdom of Saudi Arabia itself*, for documents responsive to the eight identified categories, a violation of Magistrate Judge Frank Maas's April 12, 2011 Order. *See also* Tr. of Nov. 16, 2011 at 14-16 (ECF No. 3826-86) (Judge Maas stating that "*if each branch office is not queried and the documents from that branch produced, as far as I'm concerned that will have been an inadequate search and may lead to dispositive sanctions.*").<br><br>The Court's October 26, 2018 order (ECF No 4230), granted the MWL and IIRO until December 26, 2018 to come into compliance with the Court's April 12, 2011 order to search its foreign and domestic offices and produce all documents responsive to the eight indicated categories. The defendants are currently engaged in those searches.<br><br>On November 1, 2018, the IIRO produced over a thousand new pages of documents (IIRO341995-343085), and the PECs anticipate that the MWL and IIRO will make additional supplemental productions leading up to the December 26, 2018 deadline. Because the bulk of the documents have been and are anticipated to be foreign language documents, the PECs will need sufficient time to translate the defendants' supplemental document |

---

[1] The eight categories included: (1) Annual, semi-annual, and other periodic financial reports of the MWL and IIRO (including the branch offices), such as annual reports, balance sheets, financial statements, bank account summaries, audits, etc; (2) Lists of recipients of aid from the MWL or IIRO offices, to include lists which can be generated through any computer or electronic data storage systems of those organizations; (3) All documents related to the annual Constituent Council ("Council") of the MWL, including without limitation, reports submitted by internal and external offices of the MWL and IIRO, studies and research papers considered during the annual Council meetings, records relating to the activities of Special Committees of the MWL and/or IIRO, transcripts or records of speeches and discussions during the Council meetings, resolutions and recommendations of the Council, agendas, etc.; (4) Annual or periodic reports concerning the objectives and activities of the MWL and/or IIRO; (5) Reports authored by delegations or groups sent by the MWL and/or IIRO to assess conditions and needs in regions outside of Saudi Arabia; (6) Reports submitted by the field offices of the MWL and/or IIRO concerning their operations and finances; (7) Summaries of disbursements by the MWL and IIRO; and (8) Documents describing the organizational structure of the MWL and IIRO, including documents relating to the relationship between the various offices of those organizations and the relationship between the MWL and IIRO more generally.

In a hearing on Nov. 16, 2011, Judge Maas made clear to the MWL and IIRO that they were obligated to search all of their offices for documents responsive to the eight categories. *See* Nov. 16, 2011 Hearing Transcript at 14-16 (ECF No. 3826-86) (Judge Maas stating that "if each branch office is not queried and the documents from that branch produced, as far as I'm concerned that will have been an inadequate search and may lead to dispositive sanctions.").

By January 2013, MWL and IIRO had not completed their production. At that point, they hired new counsel (*see* ECF No. 2650) and offered assurances that new counsel would work diligently to bring the defendants into compliance with the Court's order to produce.

On June 19, 2017, the Court set a new deadline of August 15, 2017, for MWL and IIRO to conclude their rolling document productions (ECF No. 3627). On October 12, 2017, the Court set a deadline of December 1, 2017, by which the PECs were to have translated and reviewed the documents and filed any motions to compel MWL and IIRO based on the documents produced (ECF No. 3762). On December 1, 2017, the PECs filed a renewed motion to compel as to the MWL and IIRO (ECF No. 3827). On August 27, 2018, the Court decided the PECs' motion (ECF No. 4124) and ordered MWL and IIRO to "search every branch office that has not already been searched (unless the parties can agree that a branch is not relevant) and produce any banking records from those offices and any documents that fall within the categories identified in the Court's April 12, 2011 Order," *see* ECF No. 4124 at 6, *see also id.* at 8, by October 27, 2018. *Id.*

After that Order issued, the parties entered into a dialogue to determine whether—notwithstanding the Court's order that the MWL and IIRO must search all of their offices—they could agree to

productions, confer with their linguists, and confer with subject matter experts concerning their analysis of the new MWL and IIRO documents.

Particularly given the multi-year process necessary to secure complete production of the documents from the defendants, the PECs anticipate that supplemental document discovery tied to materials received from MWL and IIRO, and additional motion practice (motions to compel and/or sanctions), may be necessary following the PECs' review of the defendants' pending productions pursuant to ECF Nos. 4214 and 4230.

Depositions – During the meet and confer process, the PECs advised the MWL and IIRO that, in addition to Rule 30(b)(6) witnesses of each defendant, the PECs intend to depose the following individuals: Rahmatullah Nazir Khan Gari (MWL/IIRO); Abdelhadi Daguit (MWL/IIRO); Fahad bin Sanad al Harbi (MWL/IIRO); Saleh al Dhibani (IIRO); Abdulrauf Khalaf al Sharman (IIRO); and Saad al Obaidi (IIRO). The PECs have also expressed an interest in deposing Abd al Hamid Sulaiman al Mujil (IIRO), Turki bin Jalawi (IIRO), Muayyad al Butayri (MWL/IIRO), Samir Jameel al Radhi (MWL/IIRO), and Ghanam al Harbi,

The PECs further intend to pursue Rule 30(b)(6) depositions of a limited number of U.S. officials and representatives and anticipate conferring with members of the DEC regarding the process for conducting those depositions in the near future.

From the start of the litigation, the structure that the Court adopted for discovery has contemplated that parties would commence depositions in earnest only after the defendants had completed their document productions. Indeed, the parties on both sides have been reluctant to commence depositions while productions are ongoing, particularly given the potential that witnesses' premature deposition may necessitate recalling a witness for a second deposition. However, the PECs continue to await productions from numerous offices and regarding many of the eight categories. The delay continues to be exacerbated by the foreign language aspects of the productions and the need to consult with linguistic and subject matter experts in analyzing the documents. In short, defendants' decade-long efforts to produce documents should not result in the PECs being forced to translate, analyze, conduct follow up discovery, and prepare for depositions is an inequitably compressed time period.

| | | |
|---|---|---|
| refine the scope of searches to "a more targeted group of branch offices." *Id.* To facilitate the decision of which offices might be eliminated from the searches, the PECs asked MWL and IIRO to identify all branch offices in operation between 1992 and 2004 (the relevant time period) that had not already been fully searched. In correspondence on September 24 and 28, 2018, IIRO and MWL, respectively, each responded with a chart identifying 42 IIRO (23 of which remain operational) and 18 MWL *foreign* branch offices in operation between 1992 and 2004 that had not been searched. The charts did not identify offices within Saudi Arabia that had not been fully searched. Ultimately, the PECs agreed to limit the IIRO's searches to 7 foreign offices, the offices in the Kingdom that had not been fully searched, and records from two hospital facilities. As to MWL, the PECs agreed to limit the searches to 11 foreign offices and the offices in the Kingdom that had not been fully searched.<br><br>During the meet and confer process, the MWL and IIRO acknowledged that they had not fully searched all offices. For offices within the Kingdom, the only offices they searched regarding all eight categories were the offices in Riyadh and the Eastern Province. As to the remaining offices within the Kingdom, they collected only banking records and did not search for documents responsive to the remainder of the eight categories. Similarly, the PECs raised concerns that, where multiple offices existed in a foreign jurisdiction, documents from all of the offices in the foreign jurisdiction were search. Finally, the PECs sought assurance that the defendants were adequately searching documents from "closed" offices and informal offices (e.g., offices in hospitals run by the defendants).<br><br>At the conclusion of the extended series of meet and confers, on October 23, 2018, the parties agreed to a targeted subset of MWL and IIRO | | |

| | offices (both within the Kingdom and abroad) to be searched to bring the defendants in compliance with the Court's August 27, 2018 Opinion and Order. *See* ECF No. 4216. The MWL and IIRO agreed to conduct searches for all documents (in all eight categories): (1) maintained by any branch offices that have not previously been fully searched and that were operational inside the Kingdom during the relevant time period (including the branch offices inside the Kingdom that were recently closed); (2) from the MWL foreign offices in Australia, Belgium, Denmark, France, Italy, Malaysia, Mauritania, Nigeria, Russia, Spain, and Switzerland; (3) from the IIRO foreign offices in Bangladesh, Egypt, Mali, Nigeria, Romania, Somalia, and Thailand; and (4) from the UHUD Hospital in Quetta, Pakistan and the Fatima Al-Zahra Hospital in Jalalabad, Afghanistan. On October 24, 2018, the MWL and IIRO requested a 60-day extension to the October 27, 2018 deadline to complete their production of documents from the additional locations that had not been fully searched (ECF No. 4216). The PECs consented to the extension, subject to the Court also granting an extension of the January 31, 2019 deadline to complete fact depositions.<br><br>In an October 26, 2018 Order (ECF No 4230), the Court granted the request of MWL and IIRO to extend their document production deadline from October 27, 2018 to December 26, 2018, and extend the January 31 deadline to complete fact depositions to April 1, 2019. | | |

| | | | |
|---|---|---|---|
| World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International ("WAMY")<br><br>(Merits Discovery) | Pursuant to the Court's August 29, 2018 Opinion and Order, WAMY was ordered to produce various categories of responsive documents by October 29, 2018, including but not limited to the following: (1) records concerning WAMY's branch offices; (2) records concerning WAMY's governing bodies, boards, and committees, including WAMY's General Assembly; (3) WAMY annual reports; (4) records concerning WAMY's relationship with the Saudi government; (5) records concerning the Benevolence International Foundation ("BIF"); and (6) records concerning WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad. *See* ECF No. 4130. The Court further directed WAMY to submit declarations describing in detail WAMY's renewed efforts to search for and produce these relevant categories of documents by October 29, 2018. *Id.*<br><br>WAMY has requested extensions to the October 29, 2018 deadline to search for and produce responsive records, which this Court has granted:<br><br>• <u>November 12, 2018</u> – WAMY must submit all declarations ordered by the Court and any responsive new documents not previously produced. *See* Order at ECF No. 4230 at 1.<br><br>• <u>November 26, 2018</u> – WAMY must reproduce documents initially redacted for donor names. *See* Order at ECF No. 4230 at 1.<br><br>• <u>Suspended</u> – Pursuant to the September 6, 2018 Endorsed Order (ECF No. 4151), the deadlines in Section IV of the Court's August 29, 2018 Order concerning WAMY's branch offices remain suspended pending the Court's determination of WAMY's Motion for Reconsideration. *See* Order at ECF No. 4230 at 1. WAMY's Motion for Reconsideration was fully briefed as of October | April 1, 2019<br><br>(Fact Deposition Deadline) | <u>WAMY Document Productions</u> – Pursuant to the Court's Order at ECF No. 4230, WAMY produced over 15,690 pages of documents on November 12, 2018 (WAMYSA01232842-1248535). Because the bulk of the documents produced by WAMY have been and are anticipated to be foreign language documents, the PECs will need sufficient time to translate WAMY's supplemental document production, confer with their linguists, and confer with subject matter experts concerning their analysis of the new WAMY documents. Plaintiffs further anticipate they will need additional time to review the thousands of documents WAMY has been directed to reproduce in unredacted form as contemplated by the Order at ECF No. 4230. Additional motion practice (motions to compel and/or sanctions) may be necessary following the PECs' review.<br><br><u>Depositions</u> – Although the PECs fully intend to depose individuals associated with WAMY, no depositions have been scheduled at this time. Discovery in these proceedings has been structured to allow for the completion of document productions before moving on to the deposition phase. Indeed, the parties on both sides have been reluctant to commence depositions while productions are ongoing, particularly given the potential that witnesses may have to be recalled. Nevertheless, at present, the PECs anticipate conferring with WAMY's counsel concerning the availability of the following witnesses to appear for depositions: Dr. Saleh al Wohaibi; Dr. Abdul Wahab A. Noorwali; Abdullah bin Laden; Mohammed al Khatib; Talhah al Jarad; Ibrahim Sulayman Abdullah; Ibrahim Anwar Ibrahim; Mohammed Moustafa Mohammed; Ibrahim Faruq al Zayyat; Enaam Arnaout; Dr. Anwar Hajjaj; Dr. Ahmad Muhammad Totonji; and Rule 30(b)(6) witness(es) designated by WAMY. The PECs expect to supplement this list of witnesses following their review of WAMY's new document productions pursuant to the Court's Order at ECF No. 4230, and additional meet and confers with counsel for WAMY.<br><br>The PECs further intend to pursue Rule 30(b)(6) depositions of a limited number of U.S. officials and representatives and anticipate conferring with members of the DEC regarding the process for conducting those depositions in the near future.<br><br>The PECs anticipate that additional motion practice (motions to compel and/or sanctions) may be necessary following those depositions. |

| | | | |
|---|---|---|---|
| | 31, 2018. *See* ECF Nos. 4164-4168, 4209, 4210, 4239, and 4240. | | |
| Wa'el Hamza Jelaidan (Merits Discovery) | On August 30, 2018, the Court issued an Opinion and Order directing Wa'el Jelaidan to submit a sworn declaration providing detailed responses to thirteen questions posed by the Court concerning *inter alia* Jelaidan's ability to pay outstanding monetary sanctions awarded to plaintiffs, *see* ECF Nos. 3070 and 3228, and his communications with Mr. Martin McMahon (U.S. counsel) and Mr. Bassim Alim (Saudi counsel) regarding same. *See* ECF No. 418 at 9-11 ("The Court needs additional information from the parties before deciding whether to impose further sanctions on Jelaidan and McMahon and whether to grant McMahon's motion to withdraw as counsel for Jelaidan."). Following an October 12, 2018 conference to address the PECs' May 2018 motion for sanctions and Mr. McMahon's motion to withdraw, the Court issued an Order on October 24, 2018 directing Jelaidan and Mr. McMahon to meet the following deadlines:<br><br>• November 23, 2018 – Mr. McMahon is ordered to provide the Court, *ex parte* and for *in camera* review: (1) any retainer agreement between Jelaidan (or his agents) and Mr. McMahon; (2) copies of any invoices submitted to Jelaidan, and any proof of payment; and (3) any evidence that tends to prove the alleged breakdown in relationship between Jelaidan and Mr. McMahon. *See* Order at ECF No. 4215.<br><br>• November 23, 2018 – Jelaidan may submit evidence regarding the above facts, or any other relevant evidence, in opposition to Mr. McMahon's motion to withdraw. *See id.* | April 1, 2019<br><br>(Fact Deposition Deadline) | Depositions – The PECs intend to seek Jelaidan's appearance for a special deposition concerning the efforts undertaken by Jelaidan and his legal team to (i) search for and secure documentation and information responsive to the PECs' discovery; and (2) secure an OFAC license and pay outstanding monetary sanctions awarded to plaintiffs. The PECs do so without prejudice to their rights to depose Jelaidan at a later date as to the full scope of claims asserted against him in this litigation.<br><br>The PECs anticipate that additional motion practice (motions to compel and/or sanctions) may be necessary following those depositions. |

| | | | |
|---|---|---|---|
| Dubai Islamic Bank ("DIB")<br><br>(Merits Discovery) | There are no interim discovery deadlines. | April 1, 2019<br><br>(Fact Deposition Deadline) | The Court's Discovery Order (ECF No. 4046) – On July 11, 2018, the Court issued its Opinion and Order (ECF No. 4046) directing DIB to: (1) search for 629 terms and produce opening and closing statements, periodic statements, and other electronic information for any of the accounts that are located using those searches; and (2) search for and produce any documents relating to any internal investigations DIB may have conducted to determine whether any accounts were used in connection with the 1998 U.S. Embassy bombings. By letters dated September 10, 2018, DIB represented that (1) DIB searched for the 629 search terms in the Court's Order but did not identify any responsive documents for production; and (2) DIB is not aware of any documents within its possession, custody, or control concerning internal investigations relating to the 1998 U.S. Embassy bombings.<br><br>Depositions – Members of the PECs deposed Dr. Hussein Hamid Hassan, Chairman of DIB's Fatwa and Shariah Advisory Board, on August 1-3, 2017 in London.<br><br>At present, the PECs anticipate conferring with DIB's counsel concerning the availability of the following witnesses to appear for depositions: Mohammed al Sharif; Saeed Ahmed Lootah; Bader Ibrahim Abdullah Ahmed al Maazmi; Abdulrahman al Ansari; Butti Khalifa bin Darwish al Falasi; Zuhair Saeed al Rabi; Alan Fine; Ebrahim Fayez; and Rule 30(b)(6) witness(es) designated by DIB.<br><br>The PECs further intend to pursue Rule 30(b)(6) depositions of a limited number of U.S. officials and representatives and anticipate conferring with members of the DEC regarding the process for conducting those depositions in the near future. |
| Perouz Sedaghaty<br><br>(Merits Discovery) | There are no interim discovery deadlines. | April 1, 2019<br><br>(Fact Deposition Deadline) | Depositions – On April 26, 2017, defendant Sedaghaty filed a petition for relief under Title 7 of the United States Bankruptcy Code, in the U.S. Bankruptcy Court for the District of Oregon (Case No. 17-31541-tmb7). See ECF No. 3531. Pursuant to the provisions of 11 U.S.C. § 362, this litigation was automatically stayed with respect to Mr. Sedaghaty pending resolution of his bankruptcy proceedings.<br><br>By Order dated June 20, 2017 (ECF No. 3632), the Court granted Lynne Bernabei and Alan Kabat's April 28, 2017 motion to withdraw as counsel for Sedaghaty.<br><br>On September 25, 2017, the U.S. Bankruptcy Court issued an Order granting Sedaghaty a discharge pursuant to 11 U.S.C. § 727, and the proceedings were closed. |

| | | | |
|---|---|---|---|
| | | | Upon information and belief, Sedaghaty resides in the United States. The PECs intend to seek Sedaghaty's appearance for a deposition. |