KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

December 14, 2018

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of Defendant Kingdom of Saudi Arabia ("Saudi Arabia") concerning Plaintiffs' first set of supplemental document requests ("Requests"), attached as Exhibit A. On November 29, 2018, the Court ordered document discovery concerning three of the seven individuals named in the Requests: Musaed Al Jarrah, Smail Mana, and Mohamed Al Muhanna. ECF No. 4261 ("November 29 Order"). The Court also granted Saudi Arabia's request for "an opportunity to meet and confer with the PECs regarding the scope of the document demands" as to those three individuals, and provided that "[a]ny application to modify the demands must be filed by December 14." *Id.* at 2. As "guidance to the parties," the Court noted the "potential broad sweep in categories (g) and (h)." *Id.*

      On December 7, 2018, Saudi Arabia served objections and responses ("Objections") to Plaintiffs' requests, attached as Exhibit B. On December 13, Saudi Arabia and Plaintiffs met and conferred by phone to attempt to resolve Saudi Arabia's objections by agreement. The parties did not reach agreement, and Saudi Arabia therefore submits this letter to ask that the Court to modify the Requests as set forth below.

      **1.**    **Places to search.** In its Objections, Saudi Arabia identified specific places that it proposes to search for documents responsive to the Requests. Reasonable constraints on the scope of the search are important in order to comply with Judge Daniels' mandate for "'limited and targeted jurisdictional discovery critical to answering [the] question . . . whether and to what extent Thumairy, Bayoumi and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to Hazmi, Mihdhar, and other 9/11 hijackers.'" November 29 Order at 1 (quoting ECF No. 3946, at 23 ("March 28 Order")) (alterations added in November 29 Order). This Court approved that approach in May 2018, in an order identifying specific locations that Saudi Arabia should search in respect to jurisdictional discovery. ECF No. 4009, at 1 ("May 24 Order").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
December 14, 2018
Page 2

Plaintiffs have argued that Saudi Arabia should not be permitted to place such limits on its search, asking in their recent sealed motion to compel that Saudi Arabia be compelled to search all documents and information in its possession wherever located. They have indicated that their position is the same regarding Al Jarrah, Mana, and Al Muhanna. As Saudi Arabia will explain more fully in its forthcoming opposition to that motion to compel, such reasonable limits on the scope of searches are justified by the principle that jurisdictional discovery against a foreign sovereign "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination," *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176-77 (2d Cir. 1998). Such limits are also supported by the practical problems of trying to identify the relevant places to look for 20-year-old files from a sovereign nation. It should be in everyone's interest to establish the proper scope of the search in advance. The specific places Saudi Arabia has identified are, moreover, reasonable for the reasons that follow.

a. **Al Jarrah.** Based on its reasonable investigation so far (not yet including an interview of Al Jarrah, who we understand is in Morocco), Saudi Arabia understands that during the relevant period Al Jarrah was an employee of the Ministry of Education working in the Islamic Affairs office of Saudi Arabia's Washington, D.C. Embassy. Accordingly, Al Jarrah's personnel file, which would likely contain documents about his job and general responsibilities, would likely be in the possession of the Ministry of Education, and documents about his work in the United States would likely be in the possession of the Embassy. Specific documents related to any work he did in California might be at Saudi Arabia's Consulate in Los Angeles. Saudi Arabia accordingly proposes to conduct a reasonable search of the Embassy and the L.A. Consulate, as appropriate to particular requests, as well as searching for Al Jarrah's personnel file at the Ministry of Education. *See* Ex. B at 4-8.

b. **Mana.** Based on its reasonable investigation so far (not yet including an interview of Mana, who is not a Saudi Arabian national and no longer works for Saudi Arabia), Saudi Arabia understands that during the relevant period Mana was a locally hired and non-senior employee in the L.A. Consulate. Accordingly, documents concerning Mana's employment and work would likely be at the Embassy or at the L.A. Consulate. Saudi Arabia proposes to conduct a reasonable search of those two locations, as well as of the Ministry of Islamic Affairs ("MOIA"), as appropriate to particular requests, *see* Ex. B at 4-8, although preliminary inquiries suggest MOIA may not have responsive documents.

c. **Al Muhanna.** Based on its reasonable investigation so far, including an in-person interview of Al Muhanna, Saudi Arabia understands that during the relevant period Al Muhanna was an employee of MOIA working in the United States (in the vicinity of the Consulate) and paid through the Embassy. Accordingly, documents concerning Al Muhanna's employment would likely be at MOIA, the Embassy, or the Consulate. Saudi Arabia proposes to conduct a reasonable search of the Embassy and the L.A. Consulate, as well as of MOIA, as appropriate to particular requests. *See* Ex. B at 4-8.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
December 14, 2018
Page 3

  2. **Date range for searches.**  The Requests state a date range from "January 1, 1998 through and including September 11, 2001," Ex. A at 1, and Saudi Arabia has not objected to that range.  The Requests further state that the 1998 to 2001 date range applies "[u]nless the nature or subject of the request indicates otherwise."  *Id.*[1]  Saudi Arabia objected to that language as vague and indicated that it would apply the 1998 to 2001 date range.  Ex. B at 2.  On a meet-and-confer call, Plaintiffs stated that they would seek documents beyond the 2001 date range set forth in their requests, and even beyond the December 31, 2002 date range set forth in the Court's May 24 Order.  Any such date range is inconsistent with this Court's prior order, May 24 Order at 1, and with the limited scope of jurisdictional discovery relating to whether Al Thumairy and Al Bayoumi were directed to assist the hijackers prior to September 11, 2001.  Moreover, as Saudi Arabia has previously argued, any post-9/11 investigation conducted by Saudi Arabia should not be discoverable.  *See* May 21, 2018 Letter Brief at 7 (ECF No. 4005).

  3. **Specific scope objections or narrowing interpretations.**  Saudi Arabia has adopted a narrowing interpretation of Request 1(a) and has made objections to the scope of Requests 1(e), 1(g), 1(h), and 1(j).  It has also proposed searching the Embassy and the L.A. Consulate for documents responsive to Requests 1(c) and 1(d), while Plaintiffs have demanded searches of various ministries.  Each of Saudi Arabia's positions is reasonable.

  a. **Personnel files (Request 1(a)).**  Plaintiffs ask for "documents concerning" each individual's "hiring[,] . . . job title(s), duties, responsibilities, functions, authorities, and any secondments."  Ex. A at 1.  As was the case with the previous individuals about whom Plaintiffs sought discovery (Al Sowailem, Al Thumairy, and Al Bayoumi), most, if not all, such documents for a Saudi government employee are likely to be found in that employee's personnel file.  Saudi Arabia therefore proposes to search for and (if located) produce the three named individuals' personnel files in response to Request 1(a).  *See* Ex. B at 4.

  Plaintiffs disagree that producing personnel files would be sufficient.  They have incorrectly argued that the personnel files Saudi Arabia has produced to date contain only mundane administrative material and do not contain "substantive" documents.  To the contrary, Saudi Arabia's production to date shows that personnel files contain information about the topics listed in Request 1(a), including job titles, job, duties, and secondment dates.  Examples include KSA0000000649, KSA0000000679, KSA0000000705, KSA0000002689-97, and KSA0000002404.  Saudi Arabia is not attaching those documents to avoid an unnecessary sealed filing, but can provide copies to the Court on request.

  b. **Diplomatic Status (Request 1(c)).**  Plaintiffs ask for records of each individual's "diplomatic status and/or credentials in the United States."  Ex. A at 2.  Saudi Arabia proposes conducting a reasonable search of the Embassy and the L.A. Consulate for such documents because similar documents were located there for Al Bayoumi, Al Thumairy, and Al Sowailem.  Plaintiffs have argued that Saudi Arabia should also search its Ministry of Foreign Affairs for

---

[1] Requests 1(d) and 1(*i*) state a narrower period:  January 1, 1999, to September 11, 2001.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
December 14, 2018
Page 4

such documents, but there is no reason to believe that additional relevant documents would be found there.  As the two relevant Saudi Arabian diplomatic missions in the United States, the Embassy and the L.A. Consulate are the logical locations to search for documents concerning any Saudi Arabian national's diplomatic status while in the United States.[2]

        **c.**      **Residences in California (Request 1(d)).**  Plaintiffs ask for documents concerning "each location . . . within the State of California where" each individual "resided or stayed."  Ex. A at 2.  Saudi Arabia proposes conducting a reasonable search of the Embassy and the L.A. Consulate for such documents because those are the only two locations likely to have documents concerning any residence or lodging that these individuals had in the United States.  Plaintiffs insist that Saudi Arabia should also search ministries in Saudi Araba for such documents, but doing so would be unreasonable because there is no reason to believe that U.S. residence or lodging information would be kept in Saudi Arabia.

        **d.**      **Tasks and Activities in California (Request 1(e)).**  Plaintiffs ask for documents concerning each individual's "assignment to, tasks, and activities within the State of California."  Ex. A at 2.  That would cover a broad range of irrelevant tasks and activities, especially for Mana (who worked at the L.A. Consulate in California) and Al Muhanna (who was assigned to the King Fahad Mosque, also in California).  Plaintiffs' only proper basis for seeking discovery into these three individuals, however, is limited to determining whether they either were the "more senior Saudi officials" at whose "direction" Al Thumairy and Al Bayoumi allegedly acted, or were "subagents" acting at the direction of Al Thumairy and Al Bayoumi.  March 28 Order at 23.  Saudi Arabia therefore proposes to search for assignment-, task-, and activity-related documents only so far as those assignments, tasks, or activities relate not only to California but also to Al Thumairy or Al Bayoumi.  *See* Ex. B at 6.

        **e.**      **Supervisors and Supervisees (Requests 1(g) and 1(h)).**  Plaintiffs ask for documents concerning "the name(s), job titles, and responsibilities" of anyone who any of the three individuals supervised or reported to, or who supervised or reported to any of them.  The Court noted the "potential broad sweep" of this request in its November 29 Order (at 2).  Plaintiffs contend that this request should extend to any supervisor or supervisees of the three named individuals.  But that position is inconsistent not only with the directives of both Judge Daniels and this Court that jurisdictional discovery in this case is about the alleged actions of Al Thumairy and Al Bayoumi, but also with the Second Circuit's guidance that jurisdictional discovery under the Foreign Sovereign Immunities Act of 1976 ("FSIA") requires a "non-speculative basis for believing that th[e] details" a plaintiff seeks "would establish jurisdiction."  *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 207 (2d Cir. 2016).  Here, Plaintiffs have no basis but speculation to suggest that additional supervisors or supervisees of the three named individuals are in any way relevant.  Saudi Arabia therefore proposes to search for

---

        [2] As noted above, Mana is not a Saudi Arabian national.  Saudi Arabia is unlikely to possess any records concerning his diplomatic or immigration status beyond any such documents that may have been kept at the L.A. Consulate in connection with his employment there.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
December 14, 2018
Page 5

documents related to those individuals' supervisor or supervisee relationships only so far as those relationships involved Al Thumairy or Al Bayoumi.  *See* Ex. B at 7.

      **f.**     **Meetings and Contacts (Request 1(j)).**  Plaintiffs ask for documents concerning "any meeting, communication, contact, transaction, or relationship" between any of the three named individuals and seven different individuals or categories of individuals, including "any officer or employee of the King Fahad Mosque" and "any of the 9/11 Hijackers." Ex. A at 2.  The list is not tailored to the three individuals or Plaintiffs' theory of how each individual is relevant to this case, but appears to include anyone whom Plaintiffs might have thought was of interest.  There is no apparent way to design reasonable searches that would fulfill Plaintiffs' sweeping requests.

      Saudi Arabia therefore proposes to proceed by conducting reasonable searches of the Ministry of Education, MOIA, the Embassy, and the L.A. Consulate as necessary to respond to Requests 1(a) through 1(*i*).  With respect to the Embassy and the L.A. Consulate, Saudi Arabia will attempt to review all documents referencing the three individuals from the relevant time period – which is the same process that Saudi Arabia undertook to locate responsive documents pertaining to Al Sowailem, Al Thumairy, and Al Bayoumi.  If such searches reveal documents responsive to Request 1(j), Saudi Arabia will produce them.  *See* Ex. B at 8.  With respect to MOIA (and, to the limited extent relevant, the Ministry of Education), Saudi Arabia will make reasonable attempts to locate and search for documents likely to be responsive to Requests 1(a) through 1(*i*), and, if such searches reveal documents responsive to Request 1(j), Saudi Arabia will produce them.  *See id*.  But Saudi Arabia does not agree to undertake a search for all documents that could possibly be responsive to Request 1(j), and this Court – consistent with the limits on jurisdictional discovery imposed by the FSIA, Judge Daniels, and this Court's own orders – should not order it to do so.

      **4.**     **Timing of searches of the Embassy and the Consulate.**  As will be set forth in its opposition to Plaintiffs' motion to compel, Saudi Arabia has already conducted thorough searches for documents from the Embassy and the L.A. Consulate.  Performing the additional searches set forth above will require an additional round of searches of those facilities, including a manual page-by-page review of thousands of pages of hard copy documents from the relevant time period.  Some parts of the relief requested by Plaintiffs in their motion to compel, if granted, would also require similar additional searches.  To minimize the burden and disruption created by such searches, Saudi Arabia proposes to conduct one further round of searches of the Embassy and the L.A. Consulate, to include both searches in response the Requests discussed here, and any further searches ordered by the Court in its resolution of Plaintiffs' motion to compel.  Plaintiffs have not yet taken a position regarding the timing of searches.

      Saudi Arabia respectfully asks that the Court enter an order finding the proposals in Exhibit B to comply with Saudi Arabia's discovery obligations as to the Requests.  Saudi Arabia is filing a proposed order contemporaneous with this letter-motion.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
December 14, 2018
Page 6

                                                    Respectfully submitted,

                                                    /s/ *Michael K. Kellogg*

                                                    Michael K. Kellogg
                                                    *Counsel for the Kingdom of Saudi Arabia*

cc:     Chambers of the Honorable George B. Daniels (via facsimile)
         All MDL counsel of record (via ECF)