**HAVLISH PLAINTIFFS' RENEWED MOTION
FOR AN ORDER CREATING A COMMON BENEFIT FUND AND
AUTHORIZING CERTAIN DISBURSEMENTS THEREFROM**

# EXHIBIT 4

```
                                                                  1
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    In re: Terrorist Attacks on
 3    September 11, 2001
 4                                        03 MDL 1570(GDB)(FM)
 4    ------------------------------x
 5                                        New York, N.Y.
 5                                        April 15, 2010
 6                                        11:30 a.m.
 6
 7    Before:
 8
 9                      HON. GEORGE B. DANIELS,
10                                        District Judge
11                      HON. FRANK MAAS,
11
12                                        Magistrate Judge
12
13                          APPEARANCES
13
14    COZEN O'CONNOR
14         Attorneys for Plaintiff Federal Insurance
15    BY:  SEAN P. CARTER
15
16    KREINDLER & KREINDLER LLP
16         Attorneys for Plaintiff Ashton
17    BY:  JAMES P. KREINDLER
17         ANDREW J. MALONEY, III
18
18    MOTLEY RICE
19         Attorneys for Plaintiff Burnett
19    BY:  ROBERT T. HAEFELE
20         JODI FLOWERS
21    ANDERSON KILL & OLICK, P.C.
21         Attorneys for Plaintiff Cantor-Port
22    BY:  JERRY S. GOLDMAN
22
23    HANLY CONROY
23         Attorneys for Plaintiffs
24    BY:  ANDREA BIERSTEIN
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

2

```
 1
 2    (Appearances cont'd)
 3    MELLON WEBSTER & SHELLY
 3         Attorneys for Defendants
 4    BY:  THOMAS E. MELLON, JR.
 4
 5    KELLOGG, HUBER, HANSEN, TODD &  EVANS, P.L.L.C.
 5         Attorneys for Defendants Executive Committee
 6             BY:  MICHAEL K. KELLOGG
 6
 7    PATTON BOGGS, LLP
 7         Attorneys for Defendants
 8    BY:  MITCHELL R. BERGER
 8
 9    JONES DAY
 9       Attorneys for Defendants
10    BY:  MARY ELLEN POWERS
10         TIMOTHY FINN
11
11    JOSHUA L. DRATEL, P.C.
12         Attorney for Defendant
12    BY:  STUART WHITE
13
13    LAURO LAW
14         Attorneys for Defendant
14    BY:  JOHN LAURO
15
15    STEVEN K. BARENTZEN, ESQ.
16         Attorneys for Defendant
16
17    SONNENSCHEIN NATH & ROTHENTHAL, LLP
17         Attorneys for Defendants
18    BY:  MARTIN SCHWARTZ
18
19    WILLIAMS & CONNOLLY
19         Attorneys for Defendants
20    BY:  ED REDDINGTON
20
21    COBURN & COFFMAN, PLLC
21         Attorneys for Defendants
22    BY:  JEFFREY COFFMAN
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

3

```
 1   04F6MDLC
 2              (In open court; case called)
 3              LAW CLERK:  All parties please stand and state your
 4   name, starting with plaintiff.
 5              THE COURT:  We don't need to go through everybody.
 6   The court reporter I think has everyone's appearance.
 7              Let me, along with Magistrate Judge Maas, first
 8   indicate where I think we are and talk about a schedule moving
 9   forward.  I have consulted with Magistrate Judge Maas and this
10   is what is going to happen and this is what I propose:  First
11   of all, I will be issuing within weeks a decision or decisions,
12   and I am still finalizing how that is going to go, with regard
13   to 90 percent of the outstanding motions.  Some of the motions
14   have separate issues and they are pretty much dealt with by
15   issues opposed to by individual defendant.  You will be getting
16   that in the next few weeks.
17              In anticipation of that, this is what I would like the
18   parties to do:  I am going to ask you to revise your proposed
19   scheduling order once you see my decision.  You can start
20   talking about that now.  I want you to revise it on a schedule
21   that will begin full-blown discovery as of the July 15th
22   conference that we will schedule from here.  I am going to ask
23   you to submit that to Magistrate Judge Maas.
24              To the extent you agree on the schedule and to the
25   extent that you disagree, I want you to submit that to
```

```
 1    Magistrate Judge Maas by June the 14th.  So I anticipate that
 2    in several weeks you will get the decision, digest that, and
 3    you will have time to see who is here, who is not here, and
 4    figure out whether or not the disagreements you have about
 5    scheduling, work out what you can, and propose it to Magistrate
 6    Judge Maas and give it to him by June 14th.  So that I
 7    anticipate the schedule will begin after July 15 and, we will
 8    schedule the next conference for July 15th.
 9           What I am going to you also to consider once you see
10    that, the plaintiffs can consider whether or not you can file a
11    consolidated or some consolidated complaints.  I think we may
12    still have 12, 13 outstanding complaints.  Let's see as the
13    smoke clears what the landscape is after you get the decision.
14    Look and see whether you can do this in one complaint or
15    consolidate it in one complaint or you can consolidate it in
16    two or three complaints or something in that realm.  If
17    necessary, you can discuss that further with Magistrate Judge
18    Maas or myself in the first instance.  I think Magistrate Judge
19    Maas will help on that issue.
20           See if that can be done given the committees that we
21    have and the nature of the issues and maybe that can be done in
22    one, maybe it can be done by different types of plaintiffs,
23    different types of claims.  You can evaluate what you think and
24    it might be useful and efficient and even consult the defense
25    with regard to that.  It is really simply just a consolidation,
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

1    not an amendment.  So we don't have to raise any new issues
2    that will slow us down.
3              As soon as you get the decision, start taking about
4    that, thinking about that and see if you can have some idea by
5    June 14th of what you think might happen.  If you need to go
6    before Magistrate Judge Maas, he is going to set a conference
7    before that time or after that time then you can address these
8    issues with Judge Maas and get some assistance from him on that
9    issue.
10             Then obviously given the decision on the motion there
11   will be a lot of defendants that need answers.  Try to make as
12   early decision as you can whether there will be consolidated
13   complaints.  Get that to the parties and they can go ahead and
14   answer.  Obviously what I would like to see is that by
15   July 15th the next scheduled conference that most of the
16   decisions are done, we have a schedule to move forward with
17   discovery, the complaints are consolidated that are to be
18   consolidated, and the answers are in and you are moving
19   forward.  We're working on that and we'll be trying to work
20   out.
21             MAGISTRATE JUDGE MAAS:  In light of what Judge Daniels
22   has said and since none of us know when date the decision will
23   come down, what I suggest is that within 10 days after that
24   decision is issued the parties communicate with me in writing
25   both as to any revisions they suggest with respect to

6

1    discovery.  I have the letters that were sent in November.  If
2    everybody's position is essentially the same as it was, two
3    lines saying that is fine.  If there is some modifications, let
4    me know.  What I would suggest is that within 10 days of the
5    decision, you communicate to me in writing both as to any
6    tweaks of the discovery schedule and as to plaintiffs' thoughts
7    regarding the consolidated complaint or complaints.
8           THE COURT:  The June 14th date is basically what I
9    determined where I think we are and where I think we will be.
10   I think that is the latest date that we will be in a position
11   to be able to get that done and have that all before Magistrate
12   Judge Maas.  In terms of a realistic schedule from my end, I
13   think that is the outside date.
14          As Magistrate Judge Maas as indicated, I think we will
15   be in a position to address those issues and resolve those
16   issues before that date and have plenty of time before
17   July 15th to resolve any issues that might be necessary to
18   resolve in conjunction with or before we start moving forward
19   with full-blown discovery.  So the bottom line is so that
20   everybody can gear up, both plaintiffs and defendants.  That is
21   when you should prepare to put aside some time and effort and
22   for folks for start dealing substantively with discovery, fact
23   discovery with regard to these cases.
24          That is the basic framework that I think that is going
25   to guide us all.  I think that over the next two months

7

```
 1   substantial progress hopefully should be made.
 2           Let me first hear from the plaintiffs and then I will
 3   hear from the defense whether or not with regard to those
 4   issues or whether they have other new issues that you want to
 5   address right now.
 6           MR. KREINDER:  Your Honor, I think that is fine with
 7   the plaintiffs.  We look forward to the decision and we'll get
 8   to work as soon as we see it.
 9           MR. KELLOGG:  Your Honor, Michael Kellogg on behalf of
10   the defense executive committee.
11           One question I would have is whether the Court
12   contemplates that those parties be dismissed under the FSIA or
13   personal jurisdiction or otherwise are going to receive partial
14   judgments of dismissal so that any appeals can take place and
15   they can be out of the case and not feel obliged to monitor
16   discovery going on for a period of time?
17           THE COURT:  That is my intent.  I haven't made a final
18   decision about that, but I have discussed that and I have
19   considered that.  My leaning at this point is that that will be
20   done and that for those defendants who were dismissed out of
21   the case I will probably enter judgment and or certified so
22   that if the plaintiffs want to appeal they can on a different
23   track, and the defendants can go ahead and dismissed out of the
24   case can go ahead and get some finality within the Circuit with
25   regard to those issues.
```

8

```
 1              I can tell you at this point that I have considered
 2      that and that is my inclination.  The more I consider it and
 3      the more I look at what the landscape looks like that I
 4      anticipates after the decisions that is probably -- that is
 5      probably the way I am going on this.  If I hear some objection,
 6      valid objections doing that, I think that it is most efficient
 7      and in everyone's interest to go ahead and resolve that as
 8      quickly as possible.
 9              MR. CARTER:  Your Honor, just briefly speaking to that
10      issue, at the last conference we had dialogue with the court
11      whether the plaintiffs would be permitted to amend their
12      pleadings to cure any pleading deficiencies which may
13      precipitate a dismissal in a particular case, and your Honor
14      indicated that the plaintiffs would be allowed that
15      opportunity.
16              So with regard to any potential final judgments or
17      54(b) judgments, I think we would just simply ask for the
18      opportunity to let the Court know whether or not we want to
19      pursue that with respect to a particular defendant.
20              THE COURT:  Let me give some thought and some
21      discussion over the next few weeks about what would be an
22      efficient process for that.  I think that I may set out a
23      process that once you see the decision if you think that it is
24      curable, then you at least give me some indication.  I am not
25      going to put you through the task of giving many a full-blown
```

9

```
 1    proposal amendment complaint in those regards, but at least
 2    some fairly specific indication in what way it can be cured.
 3            For example, there are certain issues we know are not
 4    curable.  If you have sovereign immunity, you have sovereign
 5    immunity.  It is not curable.  I guess it is possible there may
 6    be some allegations that could be made that might cure some of
 7    the other issues if that evidence or at least those facts can
 8    be raised in good faith.
 9            I think what is appropriate is that I would say within
10    30 days of receiving decision, you should indicate to me and
11    the other side in writing which defendants and on which issues
12    you would seek to cure and at least some basis for me to
13    understand the nature of what you say would cure the deficiency
14    to whatever extent that you think it is appropriate for me to
15    review.  So if you do that within 30 days of getting the
16    decision, I will give them an opportunity to quickly respond
17    and either before or at the latest by July 15th, you will have
18    permission to do that and/or I will deny it as futile and then
19    I will enter judgment by July 15th also that we can decide
20    whether or not we're in that posture still here or whether or
21    not that you will appeal to the Second Circuit.
22            So I think that that could still work within that
23    schedule and not delay progress to either party
24            MR. CARTER:  Thank you, your Honor.
25            THE COURT:  So anything else from the defendants?
```

10

```
 1              I am confident that Magistrate Judge Maas and I are up
 2     to speed and did a significant amount of work to get us where
 3     we are now.  I am confident that we can move forward
 4     efficiently on that schedule.  I just want to make sure that
 5     everyone gears up.  If there are any issues that you think that
 6     need to be addressed within that schedule to keep us on that
 7     schedule, bring them to my attention or Magistrate Judge Maas's
 8     attention in writing so we can resolve any issues.
 9              My attitude moving forward is always particularly as
10     to the next scheduled conference is always the same, my intent
11     is that the conference is there to keep us on track and resolve
12     any issues that need to be resolved to move us forward.  And I
13     think the most useful and the best thing that will give us both
14     confidence is that if as we get close to July 15th, everything
15     is done, geared up, ready to go and the parties say, Judge,
16     there is no reason to waste our time bring to us in July 15th,
17     we're ready to go, and after July 15th we're moving forward and
18     then we'll schedule the next conference, as I said the standard
19     six-month conference, and any other issues that need to be
20     addressed regarding discovery with Judge Maas or any issues
21     addressed with me directly can be address.
22              There are other related motions out there.  I know
23     there is at least, I believe, the National Commerce Bank motion
24     that is still being renewed and will be submitted until June 18
25     or somewhere around there.  There are some other minor issues
```

1    or motions -- I will not call them minor -- other motions,
2    default motions and those kinds of things.
3           Let me just say this and I will volunteer this at this
4    point just as guideance about the default:  Given the nature of
5    the issues with some of the defendants, I put off granting
6    default motions for awhile until we gear it up.  Think about
7    what default means and what may have to be done following a
8    default motion with regard to establishing the basis for
9    recovery and establishing the damages and those kinds of
10   things.  Default motions may be a significant amount of work
11   and attention by you.
12          It may not even be appropriate to move forward with
13   any hearings or other related activity with regard to the
14   defaults until some substantial discovery has been accomplished
15   because it may be very well what the final determinations and
16   the final default judgments to be issued.  As you move forward
17   think in terms of how what might will be an efficient process
18   to deal with that, when might be an appropriate time to deal
19   with that, and what would be necessary in order to really
20   effect the judgment in support of default motion.
21          So put that to the side thinking about some issues how
22   to handle that, but I think that I've been convinced that it is
23   more appropriate for the opposite in most cases to let the
24   default issues at least consider what is going to be relevant
25   in the discovery process after some extent there are certain

```
 1    defendants that it is appropriate to issue a default judgment
 2    without any further hearing or any further activity.  That is
 3    the case.
 4            I still haven't resolved whether or not if there are
 5    other issues that arise with regard to the defendants that
 6    particularly, the jurisdictional issues and how I have to
 7    address that and whether I need to address that sua sponte or
 8    raise those issues with the parties to convince me separately
 9    that it is otherwise appropriate to enter a default judgment
10    against a particular defendant.
11            I just raise that issue now so as you think about this
12    process, think about what you want to do with that.  I don't
13    want as I say to have the tail to be wagging the dog here.  So
14    we may find out that we have to submit activity on the default
15    and it will complicate the discovery process as you go forward.
16    So think about those things.
17            Rest assured we've been all working diligently to get
18    this moving up to speed.  Hopefully we can all work
19    cooperatively, professionally to move this efficiently along.
20    So I will anticipate that this is the schedule and it should be
21    major activities as we go toward the end of the year into the
22    next year.
23            Any other things that arise, if something we need that
24    this raises that you think you should be thinking about or
25    issues, bring them to my attention or Magistrate Judge Maas's
```

13

1    attention as early a possible so we can keep this moving along.
2          What I will do is otherwise see you July 15th.  And
3    unless you tell me. Judge, we don't need to see you July 15,
4    everything is done, let's move forward.  Again, it is always
5    helpful for us if as we get closer to July 15th conference,
6    indicate what issues if we have issues that you want resolve at
7    that time or before that time, my attitude is try to resolve it
8    before that time so if it can be done otherwise we can be
9    prepared to discuss it further or resolve it at that time.
10          MR. MELLON:  Your Honor, on an unrelated matter but on
11    the subject of not needing discovery but on the subject of
12    ready-to-go, on July 15th one the Hanly lawyers Mr. Richard
13    Haily addresses the Court and Mr. Haily advised the Court that
14    the Hanly lawyers were ready to file their proofs against the
15    Islamic State of Iraq.  However, the Court directed us to give
16    the Court status report regarding our service of process.
17          I would like to advise the Court that on October 27th
18    Mr. Richard Haily and the other Hanly lawyers did in fact send
19    a very, very lengthy letter to the Court which is not on the
20    docket because on December 27th, 2007, we do have the exhibits
21    in great detailed showing the clerk certification of service as
22    it pertains to Iran and all the instrumentalities.  Again, we
23    apologize for sending such a long letter, but essentially it
24    was a repeat of the December 27th, 2000 clerk certification.
25          I mention this, your Honor, because we have a bump in

14

1    the road.  As we were getting ready to file our proofs, which
2    are affidavits, videotape, testimony from Europe, etc., etc.,
3    Judge Royce Lamberth, Chief Judge of the District Court in
4    Washington D.C., issued what we regarded as a landmark opinion
5    regarding Iraq.  In that landmark opinion the Judge said that
6    under 1605(a), the amendment to FSIA that that was the way to
7    proceed.  It is a burden of proof matter.
8         SO accordingly, your Honor, we went back to the
9    drawing board and on March 1st of this year we had filed a
10   motion for leave to file our amended complaint under 1605(a).
11   I believe Judge Lamberth made clear THAT this is not a new
12   service issue.  Not new defendants.  It is just a burden of
13   proof issue.  So we would ask the Court to please consider our
14   March 1st motion, motion to leave to file a complaint, our
15   third amended compliant under the amendments of the FSIA.
16        Here is why:  As soon as your Honor gives us the green
17   light, we are in fact filing our proofs.  I think at the last
18   conference the Court said maybe there be a hearing, maybe there
19   won't.  The Court wanted to see the proofs.  If you will
20   entertain that motion, we will file our proofs immediately
21   thereafter, which gets me to the second reason I would like to
22   address the Court.
23        When whether Richard Haily addressed the Court
24   March 15th announced that he was hoping to file the proofs but
25   for this September 30th opinion that we didn't know about, one

```
 1    counsel objected, which we weren't expecting.  The objection
 2    was that all our proofs against Iran, which are videotapes,
 3    testimony, expert affidavits, should be filed under seal.  We
 4    never heard of that.  Since time of talk, we investigated 35
 5    cases against the Sovereign State of Iran in federal court here
 6    in New York and Washington D.C.  There has been no case ever
 7    filed under seal.  We have looked at local rules under federal
 8    law regarding filing something under seal and we frankly don't
 9    understand and can't conceive of it.
10         So I would ask the Court, since the Court ruled from
11    the bench, to consider that now or permit me to file a motion
12    to address that issue because it just doesn't seem appropriate
13    given the subject matter, the nature of American courts to file
14    any evidence under seal unless it is a matter of utmost
15    concern, criminal case or something of that sort.
16         So that is a request for clarification about the
17    under-seal issue that was raised and a request that our
18    March 1st motion be considered.
19         THE COURT:  This is what I am going to ask you to do:
20    I would like you to, one, consult with the other plaintiffs,
21    appropriate plaintiffs attorneys about what you want to do now
22    that everyone has considered the full-blown discovery and we're
23    going on this schedule.  I would like you to give me a letter
24    as early as possible before against the June 14th date that I
25    have given everybody else indicating that you consulted
```

```
 1    appropriately with other plaintiffs so I know whether or not
 2    you are in agreement what you want to do.  If you are not in
 3    agreement, say you are not in agreement and they can respond to
 4    the letter separately.
 5             Then send me that letter so that the defense can
 6    respond to that letter.  So if anybody has any objections with
 7    regard to sealing and unsealing or anything else, defense or
 8    plaintiff, then I will know that, although they are not
 9    technically the parties being represented here, we can consider
10    whether or not any name that we might contemplate might
11    adversely affect the conduct of the proceedings for others and.
12             Then you can either specifically reaffirm your
13    position with regard to moving forward and how to move forward
14    with your motion and/or modify it in whatever way you want to
15    modify it or tell me what your position is.
16             MR. MELLON:  Thank you.
17             THE COURT:  That is one of the things on my list right
18    in front of me.  I usually don't like to give you a question, I
19    like to give an answer.  I know that we have to address that
20    and that was one of the things I had in mind and had its own
21    separate issues when I raised the issue in January of defaults
22    and what is the appropriate way to proceed.
23             MR. MELLON:  Thank you, your Honor.
24             MR. KREINDER:  Your Honor, this is an issue I have
25    been involved in.  I think I can save everyone a little time.
```

```
 1    First of all, the plaintiffs committee has no objection to
 2    Mr. Mellon filing an amendment to his complaint.  The
 3    plaintiffs committee that represents the families of 3,000
 4    people who were murdered, thousands of people who were injured,
 5    and billions of dollar in property damage does oppose any
 6    lawyer who represents less than 1 percent of the plaintiffs
 7    group doing something that disadvantages all of the plaintiffs
 8    in our opinion for reasons I can spell out at greater length.
 9            The issue of actually recovering money from any of the
10    seven state sponsors of terrorism, involves litigation in
11    federal courts.  It involves litigation such as we saw Libyan
12    Claims Resolution Act and involves diplomatic concerns.
13            All I will say on that topic now in open court is for
14    the reasons your Honor mentioned we oppose any single plaintiff
15    doing something that 99 percent of the plaintiffs disagree with
16    for really very well thought out reasons.  I agree with
17    Mr. Mellon completely, Judge Lamberth's opinion is an
18    absolutely just reading.  The thrust of it, and he is handling
19    all the litigation against Iran other than this case, is when
20    he surveys the $7 billion in judgments that have been rendered
21    against Iran and takes account of the legislative changes that
22    were designed to facilitate recoveries and particularly to
23    facilitate punitive damages recoveries, he laments the
24    litigation posture of this case because none of the people who
25    have preceded to judgments against Iran have in fact gotten
```

18

```
 1   paid.
 2          Of the seven sponsors of terrorism, the only
 3   plaintiffs who have been paid are the plaintiffs I've been
 4   representing for 21 years in the litigation against Libya.  I
 5   just thought it saves the time of letter exchange, we
 6   vigorously oppose the hair on the tail of the dog doing
 7   something that we think could kill the dog.
 8          MR. MELLON:  Your Honor, may I respond?
 9          THE COURT:  Sure.
10          MR. MELLON:  Thank you.
11          Mr. Victor Saracini was the captain of the United
12   Flight 175, that is the second plain, the South Tower, his wife
13   and 60 or 70 other decedent families representing hundreds of
14   claims have been vigorously, persistently, intensely looking
15   not at Saudi Arabia, Saudi Arabia, not at airplanes, not at
16   skyscrapers, not all the other plaintiffs, not all the other
17   concerns, none of that.  They have had one objective in 10
18   years and they are now ready to show this Court the results of
19   their extraordinary effort.
20          This is not a matter of 1 percent versus 99 percent.
21   This is a matter of the truth coming out.  This is not a matter
22   of diplomacy, or whatever Mr. Kreindler has in mind.  This is a
23   matter of a Court looking at evidence and making an appropriate
24   determination.  Because counsel may not be ready because they
25   have a bigger fish to fry should not prejudice Mr. Victor
```

19

```
 1    Saracini or his family.  We're only asking this Court to look
 2    at evidence, to render an opinion, and perhaps have Magistrate
 3    Mass render the final judgment in terms of damages.
 4              Anything else frankly in my view, with all due
 5    respect, is a subterfuge.  The evidence is in hand.  We want to
 6    give it to you, your Honor.  We want you to look at it.  We
 7    need your opinion.
 8              THE COURT:  I understand your position.  The one
 9    additional thing that I would ask you to do, though, is with
10    regard to the amended complaint, I would ask you to share that
11    with the plaintiffs committee first.
12              MR. MELLON:  I shall.
13              THE COURT:  So the best case scenario they might have
14    some helpful suggestions that might make it useful for both
15    sides in terms of particularly with my view that it would be
16    helpful if we had a last consolidated complaint.  This is one
17    of the issues that I wanted to address in that way.
18              So I would like if you have some idea and they can
19    discuss with you what they think if they have some suggestions
20    one way or other or objections one way or another about your
21    opinion which is either consistent or inconsistent with the
22    claims here that might be awkward for you or for them.
23              MR. MELLON:  Thank you.
24              THE COURT:  Share that with them first before you do
25    and once at least you consulted on that, you don't have to
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

```
 1    agree on that, after I know you have consulted them then you
 2    can submit it to me.
 3              MR. MELLON:  Thank you.
 4              THE COURT:  I would rather have them see it before I
 5    see it as opposed to submitting it to me and then sharing.
 6              MR. MELLON:  Thank you.
 7              THE COURT:  I understand everyone's legitimate
 8    positions and concerns and I will do my best and Magistrate
 9    Judge Maas has been doing his best to accommodate.  Our intent
10    at this point having picked this case in the posture we picked
11    it up in is to give everyone a fair and reasonable effective
12    forum to resolve these disputes.  And although we have a lot of
13    lawyers here, we recognize that these are individual disputes
14    between individual plaintiffs and individual defendants.  We're
15    mindful of that.
16              I think that most of the issues that you have raised
17    we've given consideration to.  We don't have all the answers
18    yet either, but I think that we're in a process that we will be
19    able to move forward and resolve these issues efficiently step
20    by step and with regard to the ultiamate issues that are
21    involved in these cases.
22              We will gear up and be ready to go.  We'll see you on
23    July 15th.
24              Is afternoon a better time than the mornings?
25              MS. BIERSTEIN:  Your Honor, at least for me I know
```

```
 1    morning would be better.  I am going to be traveling later that
 2    day so morning would be preferable.
 3              MR. KREINDER:  Your Honor, the only thing I would say
 4    is a couple people fly into town so starting at 10:30 or so.
 5              THE COURT:  Let's say 10:30 on July 15th.
 6              As I say, let's try to resolve as many issues, if not
 7    all issues, before that time so we can know that confidently we
 8    are ready to move forward on this schedule.  I think that we
 9    should be on track by that date.
10              Again, if you have any issues that we haven't
11    contemplated, let us know and we'll factor those in in the
12    meantime.
13              Anything else?
14              MR. MELLON:  Thank you, your Honor.
15              THE COURT:  See you on the 15th.
16                              o0o
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300