# EXHIBIT B

# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES

In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

January 4, 2019

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court for the S.D.N.Y.
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      The Plaintiffs' Executive Committees[1] ("PECs") write pursuant to the Court's direction at ECF No. 4303,[2] to provide the Court with a proposed briefing schedule in connection with the application filed at ECF No. 4290-92 by lawyers representing plaintiffs in the *Havlish v. Iran* matter (*Havlish* counsel) seeking to collect 12% of monies that are to be paid to plaintiffs in MDL 1570 based on judgments against Iran. This request represents a 50% increase over *Havlish* counsel's March 2016

---

[1] *Havlish* counsel diverted from the PECs' efforts to build liability cases against all named defendants, including Iran, to conduct *Havlish*-only default proceedings versus Iran. They did so without providing the PECs with any information related to those proceedings and without consultation to determine whether their work was duplicative of work already completed by the PECs. The concept that "tens of thousands of hours" were expended for a "common benefit" to unilaterally pursue a default proceeding without coordinating efforts with the PECs is dubious, at best. However, the PECs will reserve opposition to the merits of *Havlish* counsel's request for their merits briefing.

[2] The PECs recently were apprised that Chief Judge Colleen McMahon issued a standing order on December 27, 2018, staying "all civil cases (other than civil forfeiture cases) in which the United States Attorney's Office for the Southern District of New York has appeared as counsel of record for the United States, its agencies, or its employees" until "the business day after the President signs into law a budget appropriation that restores Department of Justice funding." Standing Order M10-468 ("the Standing Order"). As the Court is aware, the United States Attorney's Office for the Southern District of New York ("the DOJ") has appeared in these proceedings as counsel of record for the United States and several agencies. The PECs are seeking to work through the implications of the Standing Order with the DOJ and believe a modification of the Standing Order in the MDL is appropriate, subject to input of all impacted stakeholders. In the interim, the PECs are filing the present letter in an abundance of caution, and based on their understanding that the issues raised here do not require the attention of the DOJ or any of the agencies on whose behalf it has appeared.

The Honorable Sarah Netburn
January 4, 2019
Page 2

request, which the Court previously denied at ECF Nos. 3309, 3322. Although the PECs and *Havlish* counsel have conferred, we have been unable to agree on a briefing schedule.

For the reasons expressed herein, the PECs ask that the Court again strike *Havlish* counsel's application or, in the alternative, set a response time for February 15, 2019. *Havlish* counsel have indicated that they will not agree with the PECs' proposed response date unless the Court effectively enters a restraining order prohibiting the disbursement of 12% of each plaintiff's recovery until their motion is resolved. This prior restraint is improper–both in the quantum of fees sought (which appear to be pegged on gross recovery and not as a percentage of attorney's fees awarded) and in the failure of *Havlish* counsel to establish grounds for such prior restraint–and the PECs have declined to agree to *Havlish* counsel's demand.

## I. The Court Should Strike *Havlish* Counsel's Application

The Court should strike *Havlish* counsel's application for three reasons.

*First*, the full relief *Havlish* counsel seeks—an across-the-board fee assessment of 12% for each case in MDL 1570 with an Iran claim (a 50% increase since the same *Havlish* application in 2016) — is just as improper today as it was when this Court denied the same application in July 2016 (ECF No. 3309). *Havlish* counsel's application implicates a wide range of cases in differing postures as to the status of their claims and judgments against Iran defendants.[3] In those cases where Iran was sued but final judgments have not issued, *Havlish* counsel's application is essentially identical to the one that the Court denied in 2016, making the application wholly improper for precisely the reasons articulated in 2016. Moreover, in all cases, *Havlish* counsel has done nothing to address issues the Court identified in the previous decision denying their motion (*e.g.*, the MDL remains unresolved, the quantum of damages to be collected from Iran remains undetermined, the full value of the common benefit conferred by all counsel remains undeterminable, *Havlish* counsel have still not provided supporting information or documentation from which the Court may assess the reasonableness and necessity of the efforts expended, etc.). Accordingly, the Court has no record to consider to assess whether a percentage assessment is proper, and if so, what that percentage might be. *See* ECF No. 3309 at 5-6 ("The court usually will defer setting the precise percentage of settlement proceeds that will fund the common benefit fund until the MDL is resolved or settled when the value of the common benefit work is known;" "[T]he quantum of damages to be collected from Iran has yet to be determined"). *Havlish* counsel did not recover money from Iran on behalf of all plaintiffs and did not create a common benefit fund. Despite these realities, *Havlish* counsel would have the Court prevent 9/11 Families from receiving compensation from the USVSST.

*Second*, although *Havlish* counsel express a sense of urgency for the Court to address their application because some of the claimants in some of the cases may soon be paid from the Congressionally-created USVSST Fund, this alleged urgency was created by *Havlish* counsel themselves. The USVSST Fund published the date for the second anticipated authorization of

---

[3] In some cases, plaintiffs have Iran claims but no defaults, in other cases, some plaintiffs have defaults without liquidated judgments, while others have full default judgments. In some cases, the USVSST Fund has accepted judgments for payment, while it has rejected others for payment. In a more limited number of the cases, the USVSST Fund has accepted and already paid a portion of the Iran judgments.

The Honorable Sarah Netburn
January 4, 2019
Page 3

payments from the Fund on the USVSST Fund's website since at least April 27, 2017.[4] *Havlish* counsel's decision to wait to file their application until the holiday period only days before a deadline set more than a year and a half ago demonstrates the hollowness of their claim of urgency.

*Havlish* counsel's urging that their application must be addressed on an expedited basis elevates the lawyers' own interests above the interests of their clients and the Court. As the PECs explained to *Havlish* counsel during their recent conference, their demands that the Court address the application on an emergency basis would require the PECs to divert valuable resources from multiple other matters affecting the rights of *all* plaintiffs, including the *Havlish* plaintiffs (for example, multiple ongoing international depositions, scheduled in January and February; ongoing document review and discovery proceedings regarding the Kingdom of Saudi Arabia; and review of documents to be produced in response to subpoenas served on U.S. government agencies and other third-parties). Similarly, *Havlish* counsel's insistence that the Court address the application on an expedited basis suggests that the Court divert its resources at a time when the Court is reviewing multiple other issues of pressing need affecting the rights of *all* of the plaintiffs. In response, *Havlish* counsel argues that, if the PECs need more time to address the application, all counsel with claims versus Iran need to agree to terms restraining the distribution of a percentage of any gross recovery arising from judgments obtained against Iran including, but not limited to, payments to plaintiffs from the USVSST Fund.

*Third*, from a purely procedural standpoint, *Havlish* counsel have not complied with Section III.B. of the Individual Practices in Civil Cases of the Honorable Sarah Netburn by filing an over-length brief without the Court's prior authorization. *Havlish* counsel's brief is 29 pages long, or four pages over the Court's 25-page limit. Given the potential prejudice to the PECs and the affected plaintiffs caused by *Havlish* counsel taking many months to write a 29-page brief and leaving the PECs with little time over a holiday, with substantial other more pressing issues to be addressed, the PECs ask that the overly long brief be stricken and that *Havlish* counsel be granted leave to refile a brief that meets the Court's page length requirements.

## II.   In the Alternative, The Court Should Permit the PECs Until February 15, 2019 to Submit Any Response(s) to *Havlish* Counsel's Motion

In the event that the Court is not inclined to strike *Havlish* counsel's application, the PECs ask that the Court schedule the response date for the PECs to oppose the application for February 15, 2019. The reasons for needing more time include the following:

*First*, as alluded to above and explained to *Havlish* counsel, responding to *Havlish* counsel's application on their expedited schedule would divert critical resources of the PECs necessary to address multiple other matters affecting all plaintiffs. For example, during the same period, the PECs have been preparing a brief regarding Supplemental Discovery requested from the Kingdom of Saudi Arabia (filed 12/28); will prepare a reply brief regarding plaintiffs' motion to compel discovery from the Kingdom of Saudi Arabia (due 1/8), and another brief regarding plaintiffs' motion to unseal documents of the Kingdom of Saudi Arabia. Resources of the PECs will also be committed to preparing for and conducting depositions of defendants Dallah Avco and MWL/IIRO in Madrid,

---

[4] The internet archive for the USVSST Fund website lists the January 1, 2019 date as far back as April 27, 2017. Further, the statute creating the USVSST Fund, enacted in December 2015, provided that if there were a threshold balance in the Fund, payments would be issued two years after the initial payments. *See* 34 U.S.C. § 20144(d)(4). That is, *Havlish* counsel was on notice over three years ago that a second round of payments would likely be made on or before January 1, 2019.

Spain (scheduled for the week of 1/21) and preparing for additional depositions of defendants MWL/IIRO (scheduled for the week of 2/11). Also, during that period, the PECs continue ongoing dialogue and review of documents produced by the Kingdom of Saudi Arabia, the U.S. Department of Justice (including recent productions from the FBI), and other defendants.

*Second*, also as indicated above and explained to *Havlish* counsel, their insistence that the Court address the application on an expedited basis is unreasonable given the multiple other significant MDL issues currently pressing for the Court's consideration. During the meet and confer process, *Havlish* counsel recognized the problem that would result if the Court were to divert its own resources to their application rather than using the time and resources to consider and address other issues of more pressing need impacting the rights of all MDL plaintiffs and proposed a due date of February 1.

*Third*, the breadth of *Havlish* counsel's request stretches across nearly the entirety of the MDL and implicates both counsel on the PECs and non-PEC counsel. To respond, the PECs must coordinate among themselves to ensure that the differing postures of the claims of the various plaintiffs represented by the firms comprising PECs' membership are considered. Given the differing postures of other plaintiffs' claims, preparation of any response will necessitate conferring and broader consideration of the positions of other (non-PECs) plaintiffs' counsel, in an effort to diminish the overlap of positions and reduce to the extent possible the number of briefs.

*Fourth*, on an even broader level, *Havlish* counsel's application must be considered in light of the entirety of the MDL, not just how it could benefit *Havlish* counsel. While *Havlish* counsel have focused solely on the efforts they claim to have expended on behalf of their own clients, they have overlooked the vast efforts the PECs have expended for the common benefit of *all* plaintiffs in the MDL, including those plaintiffs in the *Havlish* case. The PECs anticipate that a response may need to address the broader impact of the application.

### III. *Havlish* Counsel Have Not Demonstrated Cause for Restraining All Plaintiffs' Counsel From Distributing the Full Value of the Plaintiffs' Gross Recoveries.

The PECs have asked whether *Havlish* counsel would agree to a response date of February 15. Although *Havlish* counsel would agree to set the date to February 1 without any condition attached, they insisted that, for any date after February 1, the PECs must agree, for *all* plaintiffs in the MDL with claims against Iran, to set aside a percentage of gross recoveries until the issue is again resolved, including through an appeal. The PECs assert that the conditions the *Havlish* counsel asserts are not reasonable.

The PECs declined to refrain from distributing a portion of the plaintiffs' recovery because: *first*, the time constraints do not permit us to coordinate such commitment on behalf of all plaintiffs or their counsel; *second*, the time constraints are of *Havlish* counsel's own making; *third*, the proposal essentially seeks imposition of a restraining order and *Havlish* counsel have shown no reason (let alone good cause) why all of the plaintiffs in the litigation should be essentially taxed for work *Havlish* counsel performed on a default judgment to recover for their own clients in a non-adversarial setting when they were not performing any of the many other, more taxing, obligations of the PECs under the Court's Case Management Orders; *fourth*, *Havlish* counsel have shown no reason (let alone good cause) to restrain the distribution of any value of any 9/11 plaintiff's gross recovery arising from judgments obtained against Iran, including payments from the USVSST Fund (a fund that was neither

---

recovered from nor created by work performed by *Havlish* counsel);[5] *fifth*, *Havlish* counsel have shown no reason why, if successful in any degree, they would be unable to be obtain relief in the absence of a restraining order; and *sixth*, in at least some instances, restraints on distribution could prevent 9/11 plaintiffs from receiving a portion of their recovery on Iran judgments after more than 18 years of waiting.

For all of these reasons, the PECs ask that the Court either strike *Havlish* counsel's application in its entirety or set a response date of February 15, 2019 for the PECs to oppose (without restraining the distribution of any portion of a plaintiff's recovery).

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
    ROBERT T. HAEFELE
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29465
    Tel.: (843) 216-9184
    Email: rhaefele@motleyrice.com

*For the Plaintiffs' Exec. Committees*

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
    SEAN P. CARTER
    COZEN O'CONNOR
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, Pennsylvania 19103
    Tel.: (215) 665-2105
    Email: scarter@cozen.com

*For the Plaintiffs' Exec. Committees*

KREINDLER & KREINDLER LLP

By: /s/ *James P. Kreindler*
    JAMES P. KREINDLER
    KREINDLER & KREINDLER LLP
    750 Third Avenue
    New York, New York 10017
    Tel.: 212-687-8181
    Email: jkreindler@kreindler.com

*For the Plaintiffs' Exec. Committees*

cc:    The Honorable George B. Daniels, via ECF
       All Counsel of Record via ECF

---

[5] The compensation provided from the USVSST does not emanate from the Islamic Republic of Iran. Its funding was created through statute and regulations issued by the Department of Justice which oversees the USVSST. The Islamic Republic of Iran has not deposited money into this Fund to pay the judgments entered by this Court. Importantly, *Havlish* counsel's work has not contributed toward the creation of any common benefit fund from which they apparently seek to recover.