KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

January 15, 2019

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of the Kingdom of Saudi Arabia ("Saudi Arabia"), concerning documents filed under seal in connection with the motion to compel filed by the Plaintiffs' Executive Committees ("Plaintiffs") on November 30, 2018, and under the briefing schedule for confidentiality issues ordered by this Court on December 20, 2018 (ECF No. 4293). This letter also addresses documents filed under seal in connection with Plaintiffs' December 28, 2018 opposition to Saudi Arabia's letter-motion to modify the scope of supplemental discovery. It does not address confidential information produced by the Federal Bureau of Investigation, which is protected by a separate order of this Court (ECF No. 4255).

      **1.**      **Documents at issue**

      Plaintiffs' November 30, 2018 motion to compel had 101 exhibits (counting Exhibits 7A through 7L and 66A through 66X separately). Saudi Arabia's December 21 opposition had 66 exhibits. Plaintiffs' January 8, 2019 reply had 21 exhibits. In addition, Plaintiffs' December 28, 2018 opposition to the motion to modify had six exhibits. In some instances, multiple documents have been combined into single exhibits; single documents have been spread across multiple exhibits; or the same document has been filed as an exhibit more than once. By our count, there are 218 documents now under seal as exhibits to the motion papers above.

      Of those 218 documents, Saudi Arabia has identified 145 documents that it produced in this litigation and designated confidential. Upon further review, Saudi Arabia seeks to maintain 73 Bates-numbered documents wholly under seal (65 unique documents and 8 duplicates), and to redact 13 more Bates-numbered documents to remove personal or financial information. Saudi Arabia also seeks to redact certain motion papers and discovery communications that were filed as exhibits to avoid revealing confidential information from Bates-numbered documents.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
January 15, 2019
Page 2

Exhibit A to this letter is a table of documents Saudi Arabia seeks to maintain under seal or to redact, identified by Bates number (if any) and exhibit number, with a brief description of each and reference to the legal justification for its proposed treatment. Saudi Arabia is submitting Exhibit A to chambers with proposed redactions. Exhibit B is a proposed order.[1]

**2.    Justifications for sealing or redaction**

Under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), documents submitted to a court in connection with a summary judgment motion are subject to a "presumption of immediate public access" stemming from "the common law and the First Amendment." *Id.* at 126.[2] That presumption may, however, be "overcome . . . by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.* The Second Circuit has recognized qualifying values such as national security, *United States v. Aref*, 533 F.3d 72, 82-83 (2d Cir. 2008); attorney-client confidentiality, *Lugosch*, 435 F.3d at 125; the confidentiality of dispute settlements, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143-44 (2d Cir. 2004); and the privacy interests of innocent third parties, *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995). Courts in this District have further recognized that concerns of "international comity" can justify sealing. *El Omari v. Ras Al Khaima Free Trade Zone Auth.*, 2017 WL 3896399, at *14 (S.D.N.Y. 2017) (sealing a "report . . . commissioned by . . . the ruler of a political subdivision of a foreign nation" that "contain[ed] highly sensitive, 'traditionally nonpublic information[ ]' . . . of a foreign government") (quoting *N.Y. Times v. Department of Justice*, 806 F.3d 682, 688 (2d Cir. 2015)); *Strauss v. Credit Lyonnais S.A.*, 2011 WL 4736359, at *5 (S.D.N.Y. 2011) (sealing bank records protected by French law).

a.    **Vienna Convention documents.**  Most of the documents Saudi Arabia seeks to maintain under seal are protected by the Vienna Convention on Diplomatic Relations of 1961 ("VCDR") or the Vienna Convention on Consular Relations of 1963 ("VCCR" and, with the VCDR, the "Vienna Conventions"). The VCDR protects the "archives and documents of [a] mission [as] inviolable at any time and wherever they may be," art. 24; and the VCCR does the same for "consular archives and documents," art. 33. Similarly "inviolable" is the "official correspondence" of a "mission" or a "consular post," which includes "all correspondence relating to the mission [or post] and its functions." VCDR art. 27(2); VCCR art. 35(2).[3] The

---

[1] Exhibits A and B supersede Saudi Arabia's previous requests in its December 21, 2018 letter to the Court (ECF No. 4304).

[2] This letter repeats some legal points made in Saudi Arabia's letter of November 2, 2018 (ECF No. 4243), which requested that a smaller group of documents be maintained under seal.

[3] The functions of a diplomatic mission are set forth in Article 3(1) of the VCDR, and the functions of a consular post are set forth in Article 5 of the VCCR. Diplomatic functions broadly include, among others, "representing the sending State in the receiving State," VCDR art. 3(1)(a); "protecting in the receiving State the interests of the sending State and of its nationals,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
January 15, 2019
Page 3

Second Circuit has described the term "inviolable" in the Vienna Conventions as an "advisedly categorical, strong word" and has held that the protection of mission inviolability in the VCDR "make[s] no provision for exceptions other than those set out" in the text of the VCDR itself. *767 Third Ave. Assocs. v. Permanent Mission*, 988 F. 2d 295, 298 (2d Cir. 1993).

  Saudi Arabia's request that this Court preserve the confidentiality of diplomatic correspondence and documents is further supported by the higher values that the Vienna Conventions serve. As the VCDR explains in its preamble, its protections stem from the practice among "peoples of all nations from ancient times" of "recogniz[ing] the status of diplomatic agents"; from "principles . . . [of] the sovereign equality of States, the maintenance of international peace and security, and the promotion of friendly relations among nations"; and from the purpose of "contribut[ing] to the development of friendly relations among nations, irrespective of their differing constitutional and social systems." The confidentiality of Vienna Convention documents is a "sovereign interest expressed by a foreign state" to which this Court "should . . . take care to demonstrate due respect." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 546 (1987) (explaining the need to "recognize[ ] the demands of comity in suits involving foreign states").

  Vienna Convention interests are at their strongest concerning diplomatic and consular correspondence, especially those by or to an ambassador, a consul, or another member of the diplomatic or consular staff. But VCDR article 24 and VCCR article 33 also protect the "archives and documents" of a mission or consular post "wherever they may be." Thus, documents originating from Saudi Arabia's Embassy or L.A. Consulate are also protected regardless of their content – even if they concern ministerial matters such as payments and expenses of Saudi Arabian employees in the United States – and regardless of where they were collected. Further, the only reason such documents are even arguably relevant here is that Plaintiffs seek to use them to reconstruct the activities and movements of Saudi Arabia's employees and nationals in the United States. Saudi Arabia has a legitimate interest in limiting any such reconstruction attempts to the parties to this case.

  In this case, Saudi Arabia has taken the extraordinary step of voluntarily searching for and producing Vienna-Convention-protected documents, and has not withheld any responsive documents on the grounds of Vienna Convention protection. Plaintiffs have argued that doing so waived Vienna Convention protection. *E.g.*, ECF No. 4247 at 4. That argument appears to raise a question of first impression – our research has not found a case addressing a foreign sovereign's continuing confidentiality interest in Vienna Convention documents after voluntarily producing them subject to a protective order. Principle and logic, however, strongly favor Saudi Arabia's position. Making documents available for use solely in this litigation is fully consistent with objecting to Plaintiffs' desire to spread them indiscriminately on the public record. *See*

---

within the limits permitted by international law," *id.* art 3(1)(b); and "ascertaining by all lawful means conditions and developments in the receiving State," *id.* art 3(1)(d).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
January 15, 2019
Page 4

*Gambale*, 377 F.3d at 143 (parties retained interest in confidentiality of settlement amount even after disclosing it on the record in a sealed hearing at the court's request); *see also Lugosch*, 435 F.3d at 125 (remanding for district court assessment of potential "compelling reason" to preserve confidentiality of attorney-client communications, despite argument of waiver).

      **b.**    **Sensitive internal communications.**  This Court should also maintain under seal a smaller number of documents involving communications to or from high-level Saudi Arabian officials, whether or not those officials had diplomatic or consular status.  Saudi Arabia has requested sealing on this basis only for communications involving officials at the rank of Deputy Minister or higher and, in most cases, for documents designated as "Confidential" or "Secret" at the time they were created.  As set forth on a document-by-document basis in Exhibit A, many of the documents at issue discuss sensitive topics such as investigations of Saudi Arabia's employees and nationals.  Such discussions are "highly sensitive, 'traditionally nonpublic information[ ]' . . . of a foreign government," *El Omari*, 2017 WL 3896399, at *14, akin to information classified "Confidential" or "Secret" by the U.S. government, *see* Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), that should be kept confidential as a matter of comity.

      **c.**    **Pre-decisional deliberative documents.**  A number of communications involving high-level officials (and a few involving lower-level ones) are also pre-decisional documents that, under United States law, would be protected from discovery by the deliberative process privilege in order to protect "open and frank discussion" among officials about how to make governmental decisions.  *E.g.*, *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("[O]fficials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news . . . ."). As with the Vienna Convention documents, Saudi Arabia has voluntarily produced those documents subject to a protective order rather than withhold them entirely.  Nevertheless, it has a continuing interest in limiting their disclosure to this litigation rather than revealing them to the world.

      **d.**    **Privacy of innocent third parties.**  Some of the documents at issue contain discussions of individuals who are not subjects of discovery and who are not implicated by Plaintiffs' allegations – such as Saudi preachers or other employees working abroad who are not alleged to have supported the 9/11 hijackers, and in some cases were not in the United States at the relevant time.  *See Amodeo*, 71 F.3d at 1050-51 (recognizing "'[t]he privacy interests of innocent third parties'" as a "venerable common law exception to the presumption of access"). Information concerning individuals in this category is of no apparent relevance to any decision this Court will be called to make, and the documents containing it are "judicial documents" only because of the chance inclusion of individuals of interest to this case.  As set forth in Exhibit A, the documents in this category all happen to be appropriate for sealing in their entirety based on one of the other justifications.  At a minimum, however, they should be redacted to remove information about individuals who are not the subject of discovery.

      **e.**    **Limited redactions for personal or financial information.**  Some of the documents at issue disclose personal information such as individuals' Saudi national

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
January 15, 2019
Page 5

identification numbers (equivalent to a United States Social Security Number), birth dates, passport numbers, or financial information including salaries and bank account numbers. That information should be redacted pursuant to Federal Rule of Civil Procedure 5.2(a) or, to the extent not directly covered by Rule 5.2(a), by order of the Court under Rule 5.2(e)(1). There is no public interest in disclosure of such information.[4]

### 3. Future proceedings involving sealed information

The parties have an ongoing dispute about the procedures for presenting a dispute about sealing to this Court. As Saudi Arabia stated in its December 14, 2018 letter (ECF No. 4282), this Court has directed that any party seeking to file a document containing another party's confidential information to (1) "meet and confer to discuss whether the information should be filed under seal," (2) "submit a request for redactions" if "any party believes the information should be filed under seal," and (3) "present both parties' arguments" regarding sealing "in the application" if "the parties disagree on whether the information should be sealed." ECF No. 4125, at 2 ("August 27 Order"). Saudi Arabia has followed that procedure when it has sought to file confidential information by meeting and conferring in advance with the FBI and others. Plaintiffs have filed everything under seal and waited for Saudi Arabia to justify sealing or redaction of its confidential information, which Saudi Arabia does not believe is consistent with the August 27 Order.[5] Plaintiffs have also declined to discuss any individual documents, asserting that Saudi Arabia has no legitimate interest in sealing or redacting any documents whatsoever. Further guidance from the Court may help ensure future filings go more smoothly.

---

[4] Saudi Arabia is also proposing to seal certain educational transcripts as protected from disclosure under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g.

[5] Plaintiffs have incorrectly argued that they satisfied their meet-and-confer obligations by sending Saudi Arabia a letter on October 23, 2018, requesting that Saudi Arabia withdraw confidentiality designations from 94 Bates ranges, corresponding to 368 documents (541 pages), all of which Plaintiffs stated they "anticipate[d] filing" at some point in the future. ECF No. 4243, at 1-2 (quoting ECF No. 4235-3, at 1 & Ex. A); *see also* ECF No. 4286, at 3 (Plaintiffs' inaccurate description of their October 23 letter as referring to "94 documents," rather than 94 Bates ranges). Plaintiffs' actions complied with neither the letter nor the spirit of the August 27 Order – especially considering that their October 23 letter omitted 16 of Saudi Arabia's confidential documents that Plaintiffs later sought to file publicly. *Compare* Ex. A (listing, among others PX10 (KSA0000006679), PX30 (KSA0000001555 and 1556), PX36 (KSA0000001534, 1535, and 1720), PX39 (KSA0000004623), PX41 (KSA0000006868), PX53 (KSA0000001824 and 1833), PX60 (KSA0000001180 and 6645), PX65 (KSA0000005769), PX73 (KSA0000006882), SX4 (KSA0000002689), and SX6 (KSA0000002404)) *with* ECF No. 4235-3, Ex. A (not including any of those documents). Saudi Arabia responded to Plaintiffs' October 23 letter on November 12 by withdrawing confidentiality designations from 208 documents, three of which Plaintiffs later nevertheless filed under seal.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
January 15, 2019
Page 6

                                        Respectfully submitted,

                                        /s/ *Michael K. Kellogg*

                                        Michael K. Kellogg
                                        *Counsel for the Kingdom of Saudi Arabia*

cc:      Chambers of the Honorable George B. Daniels (via facsimile)
           All MDL counsel of record (via ECF)