**MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES**
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

<u>**VIA ECF**</u>

January 22, 2019

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

    RE:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn,

    The public interest in these proceedings is extraordinary. Saudi government officials provided critical support for the September 11 terrorist attacks that murdered thousands and injured countless others on U.S. soil. Those attacks necessitated U.S. military operations abroad that remain ongoing 17 years later and have claimed thousands more lives. The attacks have also fundamentally reshaped American security in the modern era.

    Yet the Kingdom of Saudi Arabia demands that its documents filed before this Court be shrouded in secrecy. This cannot stand.

    Every effort must be made to keep this Court's records freely available. The 9/11 families have a right to an open hearing. *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 1, 13 (1986)(*Press-Enterprise II*)("Criminal acts, especially certain violent crimes, provoke public concern, outrage and hostility..." and open courts provide "an outlet for these understandable reactions and emotions."). As the Supreme Court has observed: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id*. Any restrictions on the public's access to judicial documents should only occur for the "most compelling reasons." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006). Plaintiffs therefore request that all documents unilaterally

marked as confidential by Saudi Arabia and filed before this Court, together with the portions of court filings citing those documents, be unsealed.[1]

Plaintiffs' Exhibit A-1 is submitted together with this letter.  Exhibit A-1 copies Saudi Arabia's Exhibit A, and adds (in italics) Plaintiffs comments and citations for each document.  Because of Saudi Arabia's confidentiality designations, Exhibit A-1 is filed under seal.

### A. Public information cannot be sealed

The Kingdom's application has a fatal defect: most of the information that it asks this Court to seal is already in the public record.  Kingdom documents that contain information that is already public cannot be deemed confidential and sealed from public view. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004).

As set forth in Plaintiffs' Exhibit A-1, most if not all of the documents that Saudi Arabia asks to seal include information that has already been made public in Plaintiffs' Complaints and other filings before this Court; the 9/11 Commission Report and its associated documents (including publically released FBI documents); the Congressional Joint Inquiry Report; and, published press accounts.  Plaintiffs respectfully refer the Court to the citations to those public documents in Exhibit A-1.

The Kingdom documents at issue contain additional evidence that corroborates such public information, or furnishes greater detail and background for the information.  The Kingdom has made no showing why such additional evidence should be kept under seal, particularly given the fact that the key information is already public.  As the Second Circuit observed, "[w]e simply do not have the power, even were we of the mind to use it if we had, to make what has...become public private again." *Id.*; *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F.Supp.2d 197, 205–06 (S.D.N.Y. 2007)(documents could not be sealed where information had already been the subject of press accounts).

For example, it is public information that Saudi Arabia named Thumairy as its "accredited diplomat" and "administrative officer" at its Los Angeles Consulate; and, that the Kingdom presented him to the United States as an Embassy employee.  In fact, the Kingdom's counsel Michael Kellogg told this Court in 2015 that Thumairy was "an employee of the Saudi embassy."  PEC Motion to Compel Exh. 9 at 21.  The Kingdom has no basis to redact Plaintiffs Memorandum in Support of its Motion to Compel and seal numerous exhibits. Plaintiffs' Memo. at 3; Exh. A-1 ¶¶4, 6, 23, 24, 60.

Likewise, public materials disclose that Thumairy was: (a) the leader of an "extremist faction" at the King Fahad Mosque with "radical followers" who were "supportive of the events of September 11, 2001"; (b) a Saudi government Propagator assigned by the Kingdom, along

---

[1] The only exception, as set forth in the accompanying Plaintiffs' Exhibit A-1 and Section C., *infra,* is Plaintiffs' proposal that the parties meet and confer regarding appropriate redactions based on privacy interests that bear no relationship to the issues herein.  The Kingdom did not meet and confer with the Plaintiffs regarding such redactions before filing its application.

with Mohammed al-Muhanna, to work at the Mosque through 2003; (c) scrutinized by the Mosque and Saudi Arabia in 2002-2003 for "espousing extremist views"; (d) detained and denied entry by U.S. authorities at Los Angeles International Airport in May 2003; and (e) authorized by the Kingdom to be interviewed by the 9/11 Commission. Despite these public details, the Kingdom improperly asks to redact Plaintiffs' Memorandum and seal numerous exhibits. Plaintiffs' Memo. at 8, 10; Exh. A-1 ¶¶5, 6, 7, 9, 12-16, 24, 31, 32. Moreover, Saudi Arabia's own documents seized in a 2004 FBI raid show that the Kingdom held a conference for its U.S. Propagator employees at the King Fahad Mosque in July 1999. Yet the Kingdom asks to redact Plaintiffs' Memorandum and seal exhibits. Plaintiffs' Memo. at 10; Exh. A-1 ¶¶10-11.

Many additional examples of public information in the documents that the Kingdom asks this Court to seal in their entirety are set forth in Exhibit A-1. Those documents address such subjects as Saudi government employee Omar al-Bayoumi's pay, Exh. A-1 ¶¶80-82, education, Exh. A-1 ¶¶33-39, 42-43, 85-87, and visits to the Saudi Consulate, Exh. A-1 ¶20; the funding of the King Fahad Mosque, Exh. A-1 ¶¶ 8, 18-19, 50, 65, 75-76; and, the appointment of one of Thumairy's superiors, Musaed al-Jarrah, to his position at the Saudi Embassy, Exh. A-1 ¶52.

### B. The Kingdom does not meet its heavy burden to justify the sealing of judicial documents

The Kingdom has the heavy burden of showing the "exceptional circumstances" and "higher values" necessary to overcome the presumption of public access to judicial documents under the First Amendment and common law. *Lugosch,* 435 F.3d at 120-21, 124. Contrary to the Second Circuit rule, the Kingdom advances broad and conclusory arguments for sealing, and fails to explain why entire documents must be shielded from public view. No effort is made to comply with the Second Circuit's requirement of "narrowly tailored" redactions tied to specific findings. *Lugosch,* 435 F.3d at 120; *see Press-Enterprise II*, 478 U.S. at 13-14 ("the proceedings cannot be closed unless specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

#### 1. The Vienna Convention

Saudi Arabia's argument under the Vienna Convention that judicial documents must be sealed in their entirety simply because they were allegedly found inside its Embassy or Consulate cannot circumvent the right of public access under Second Circuit case law. As discussed in the prior section, the Kingdom's argument leads to the illogical result that numerous documents containing public information would be sealed.

The Vienna Convention protects diplomatic premises from search, but does not imbue documents with the essential values that the Kingdom must establish to overcome the presumption of public access. The Kingdom must meet its burden to show the specific reasons – for example, national security, attorney-client privilege, or privacy – that justify sealing portions of the documents. The Kingdom poses its argument as one of "first impression," KSA January 15 letter at 3, but the Second Circuit has already clearly declared that judicial documents cannot be given blanket sealing as advocated by the Kingdom. *Lugosch,* 435 F.3d at 120.

The Kingdom's argument is further belied by the fact that Article 44 of the Vienna Convention of Consular Relations itself contemplates discovery, including document production, in cases that do not involve consular "functions" or where the foreign state agrees to furnish the requested evidence.[2]  *See U.S. v. Wilburn*, 497 F.2d 946 (5th Cir. 1974)(reversing district court injunction against service by state court officer of a subpoena on a Mexican Consulate official).

Here, Kingdom agreed to produce documents allegedly found at its Consulate and Embassy.  Moreover, the Kingdom now contends that Thumairy never worked at its Consulate or Embassy, PEC Motion to Compel Exh. 7-E at 2, meaning that Saudi Arabia had no basis in the first place to argue for diplomatic protections under the treaty.

Indeed, the Kingdom has boxed itself in by manipulating the facts regarding Thumairy's employment status to suit its litigation purposes.  At the July 2015 hearing on a motion to dismiss, Saudi Arabia unequivocally told this Court that Thumairy "was an employee of the Saudi embassy" as support for its argument (which this Court adopted at the time) that Thumairy was not acting within the scope of employment.  PEC Motion to Compel Exh. 9 at 21.  But when faced with its discovery obligations last year, Saudi Arabia reversed course, stated that Thumairy did not work at its Consulate or Embassy, and made the remarkable assertion that aside from nominal supervision, "Saudi Arabia is not currently aware of the identity of any person who supervised, oversaw, provided direction to, or received reports from Al Thumairy, during the stated period."  PEC Motion to Compel Exh. 5 at 13.  And now, Saudi Arabia's current application comes full circle and asks this Court to conceal its representations to U.S. authorities that Thumairy was a Consulate and Embassy employee.  A-1 ¶¶4, 6, 23, 24, 60.

Finally, another fatal infirmity of the Kingdom's application is that it offers no proof that the relevant documents were actually found inside its Consulate or Embassy, and that those same documents could not also have been found in the Kingdom's non-diplomatic offices.

### 2. "Sensitive" communications" or "deliberative" documents

The Kingdom makes broad claims that certain documents should be sealed because they contain "sensitive allegations" or internal deliberations.  But no detailed discussion of such allegations or deliberations is actually presented.  *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)(where "the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.").

Once again, most of the proof at issue is already public.  There is no doubt that many documents in this litigation could be "sensitive" because they show that Saudi government officials provided support for an al Qaeda terror plot inside the U.S.  But the fact that a judicial

---

[2] The Vienna Convention on Consular Relations provides that members of a consulate post may be called as witnesses in judicial proceedings, and that "consulate employees shall not…decline to give evidence…," with the exception that there is "no obligation to give evidence concerning matters connected with the exercise of their [consular] functions or to produce official correspondence and documents relating thereto."  Article 44(1), (3).

document provides additional evidence that supports Plaintiffs' case, corroborates existing government reports, is embarrassing, or leads to adverse publicity, is not a proper basis to deny public access.  *U.S. v. Martoma*, 2014 WL 164181 *5 (S.D.N.Y. 2014)("The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access...."); *Prescient Acquisition Group, Inc. v. MJ Pub. Trust,* 487 F.Supp.2d 374, 376 (S.D.N.Y. 2007)("I reject the notion that a generalized concern of adverse publicity concerning a public figure is a sufficiently compelling reason that outweighs the presumption of access.").

Indeed, by enacting JASTA, Congress withdrew foreign state immunity and established a substantive cause of action to hold foreign states liable for their decisions to support international terrorism inside the U.S.  Saudi Arabia has no basis to assert a privilege or seal its "sensitive" or "deliberative" communications, since the Kingdom's intent is part of the jurisdictional inquiry that JASTA contemplated.  *See In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C.Cir. 1998)(the "deliberative process privilege is not appropriately asserted...when a plaintiff's cause of action turns on the government's intent."); *Children First Foundation, Inc. v. Martinez*, 2007 WL 4344915 *7 (N.D.N.Y. 2007)("if the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'").  Moreover, purely factual material contained in any deliberative documents is not subject to any privilege.  *Id.* at *6.  The public is entitled to see the information in judicial documents regarding the Kingdom's acts to establish Thumairy and Bayoumi as Saudi government agents inside the United States, and provide them with cover jobs, pay, protection, assistance, and direction.[3]

### C.    Redactions for privacy information

As detailed in Plaintiffs' Exhibit A-1, the PECs are willing to meet and confer with Saudi Arabia's counsel to consider limited redactions for privacy information that do not bear on the issues before the Court.

### CONCLUSION

Saudi Arabia's application to seal documents should be denied in its entirety.  The parties should be ordered to meet and confer to reach agreement on redactions for privacy information.

---

[3] The only case cited by the Kingdom that actually placed a "sensitive" or "deliberative" document under seal, *El Omari v. Ras Al Khaima Free Trade Zone Auth.*, 2017 WL 3896399 (S.D.N.Y. 2017), is plainly distinguishable.  Not only did the court in *El Omari* dismiss the plaintiff's action, but it reviewed the document at issue *in camera* and determined that it contained "highly sensitive" and "nonpublic" information, *citing New York Times Co. v. U.S. Dept. of Justice*, 806 F.3d 682, 688 (2d Cir. 2015), a case which involved classified U.S. government files about drone strikes.  *El Omari* at *14.

KREINDLER & KREINDLER LLP

By: */s/ Steven R. Pounian*
James P. Kreindler, Esq.
Steven R. Pounian, Esq.
750 Third Avenue
New York, NY 10017
212-687-8181
For the Plaintiffs Exec. Committees

COZEN O'CONNOR

By: */s/ Sean P. Carter*
Sean P. Carter, Esq.
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-2105
For the Plaintiffs Exec. Committees

MOTLEY RICE LLC

By: */s/ Robert T. Haefele*
Robert T. Haefele, Esq.
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
843-216-9184
For the Plaintiffs Exec. Committees