MANDATE

17-4035
Hoglan v. Rafsanjani

N.Y.S.D. Case #
03-md-1570(GBD)
11-cv-7550(GBD)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of January, two thousand nineteen.

PRESENT:   REENA RAGGI,
                GERARD E. LYNCH,
                CHRISTOPHER F. DRONEY,
                     *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 01 2019

_____

ALICE HOGLAN, named in her own right as a personal representative of the estate of Mark Kendall Bingham and executrix of the estate of Herbert K. Hoglan, deceased, A/K/A Alice Hoagland, *et al.*,

                *Plaintiffs-Appellants*,

HERBERT HOGLAN, *et al.*,

                *Plaintiffs*,

        v.                                No. 17-4035-cv

ALI AKBAR HASHEMI RAFSANJANI, *et al.*,

                *Defendants-Appellees*,

1

MANDATE ISSUED ON 02/01/2019

ISLAMIC REPUBLIC OF IRAN, *et al.*,

        *Defendants*.

_____

  FOR PLAINTIFFS-APPELLANTS:    Timothy B. Fleming, Wiggins Childs Pantazis Fisher & Goldfarb PLLC, Washington, D.C.

  Appeal from the June 20, 2017 and November 17, 2017 orders entered by the United States District Court for the Southern District of New York (Daniels, *J.*).

  **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 20, 2017 and November 17, 2017 orders are **AFFIRMED.**

  This appeal arises from an action brought against the Islamic Republic of Iran ("Iran") and its agents and instrumentalities (together, "the Iranian Defendants") by the estates and family members of victims of the September 11, 2001 terrorist attacks. *See Hoglan v. Islamic Republic of Iran*, 11-cv-7550-GBD (S.D.N.Y.). This action seeks to hold the Iranian Defendants liable for their role in the September 11 attacks pursuant to the "terrorism exception" to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1605A. After the district court entered judgment as to liability against the Iranian Defendants, the plaintiffs sought individual awards of damages. Plaintiffs-Appellants appeal the district court's rulings that they were ineligible to recover damages under the FSIA terrorism exception because each Plaintiff-Appellant's deceased family member was (1) not a national of the United States, or (2) not the claimant's immediate family member.

## I.  Background

  The plaintiffs in the underlying action include fifteen estates of individuals who died in the September 11 attacks and their 278 individual family members (together, the "Hoglan Plaintiffs"). Plaintiffs-Appellants comprise two subsets of this group: individuals who claim to be the "functional equivalent" of immediate family members of various decedents (the "Non-Immediate Family Plaintiffs") and the estates and immediate family members of two decedents, Nicholas Rowe and Hagay Shefi, who were not citizens of the United States when they died (the "Shefi and Rowe Plaintiffs").

2

The Hoglan Plaintiffs sued the Iranian Defendants pursuant to the terrorism exception to the FSIA, 28 U.S.C. § 1605A, alleging that the Iranian Defendants provided material support to the Al Qaeda terrorist network for the September 11 attacks and were thus liable for the decedents' deaths. As in other similar actions, the Iranian Defendants failed to appear and defend this action. In a related action by different plaintiffs against the same defendants, *Havlish v. Bin Laden*, No. 03-cv-9848-GBD (S.D.N.Y.), the district court held an evidentiary hearing and concluded that the Iranian Defendants had furnished material support to Al Qaeda and that their support was reasonably connected to the September 11 attacks. The record from that hearing was fully incorporated into the present case, and on that basis, on August 31, 2015, the district court entered default judgment against the Iranian Defendants for their liability to the Hoglan Plaintiffs.

Thereafter, the Hoglan Plaintiffs moved for an award of damages. The district court referred that motion to United States Magistrate Judge Sarah Netburn for a calculation of damages. Magistrate Judge Netburn issued four Reports and Recommendations ("R&Rs") discussing the two issues now on appeal: the eligibility of various non-immediate family members of decedents to recover solatium damages, and the eligibility of Shefi's and Rowe's estates and family members to recover damages even though Shefi and Rowe were not citizens of the United States.

A. R&Rs Regarding the Non-Immediate Family Members

Magistrate Judge Netburn issued an R&R on October 12, 2016 (the "October 12 R&R"). This R&R established a framework for awarding solatium damages, that is, damages for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent's society and comfort." App'x at 12 (quoting *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)). The R&R provided for monetary awards to the spouses, parents, children, and siblings of the September 11 decedents. The district court adopted the October 12 R&R in its entirety, and that order is not on appeal.

Magistrate Judge Netburn issued a second R&R on October 14, 2016 (the "October 14 R&R"). This R&R adjudicated the claims for solatium damages of the seventy-nine family members of decedents who were not the decedents' "immediate family members," that is, their spouses, parents, children, or siblings. The magistrate judge limited recovery to those plaintiffs whose relationships with the decedents were the "functional equivalent" of immediate family members, based, in most cases, on the following factors: (1) "long-term residence or co-habitation in the [family member's] household;" (2) whether the

3

claimant ever played "a guardian or custodian-like role in the decedent's life" or vice-versa; and (3) the presence or absence of the biological family member in the claimant's life, for whom the decedent was a functional equivalent. App'x at 36–38. Regarding fiancé(e)s and same-sex domestic partners, the magistrate judge evaluated their functional equivalence based on "the duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation and the presence or absence of a formal engagement." App'x at 40–41.

Applying this framework to the particular individuals, the magistrate judge recommended awarding solatium damages to thirteen claimants who had been the stepchildren, stepparents, stepsiblings, grandparents, domestic partners, and fiancées of various decedents. The magistrate judge recommended denying solatium claims to the other sixty-six plaintiffs because they had not proven that their relationships to the decedents were the functional equivalent of relationships to immediate family members. This latter group comprises the Non-Immediate Family Plaintiffs.

On August 8, 2017, Magistrate Judge Netburn issued another R&R (the "August 8 R&R") considering the Non-Immediate Family Plaintiffs' objections to the October 14 R&R. The magistrate judge reiterated and clarified the factors by which she would determine functional equivalency, and applied those factors to each of the Non-Immediate Family Plaintiffs who articulated substantial objections to the October 14 R&R's denial of their claims. The magistrate judge again recommended denying solatium damages to each objector and to all plaintiffs who had not articulated specific objections.

The district court adopted the August 8 R&R in its entirety on November 17, 2017, denying solatium damages to all of the Non-Immediate Family Plaintiffs. Plaintiffs-Appellants appeal this order.

    B.    <u>R&R Regarding Shefi and Rowe</u>

Magistrate Judge Netburn also issued an R&R on October 24, 2016 (the "October 24 R&R"), considering, among other things, whether Shefi's and Rowe's estates and family members were eligible for damages under the FSIA under the theory that Shefi and Rowe, who were not citizens of the United States, were nevertheless "national[s] of the United States" under 8 U.S.C. § 1101(a)(22)(B) and 28 U.S.C. § 1605A(a)(2)(A)(ii). Shefi and Rowe Plaintiffs had argued that Shefi and Rowe were nationals of the United States because they had manifested permanent allegiance to the United States by intending to become United States citizens, and in Shefi's case, by completing much of the

4

naturalization process.[1] The R&R rejected the Shefi and Rowe Plaintiffs' argument, concluding that "national of the United States" refers only to "individuals born or 'found' in an 'outlying possession' of the United States or who were the children of such individuals." App'x at 95 (quoting *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210, 217 (2d Cir. 2005)).

The district court adopted the October 24 R&R in full on June 21, 2017. Plaintiffs-Appellants also appeal the district court's ruling that Shefi and Rowe were not nationals of the United States.

**II.    Discussion**

Under the FSIA, in general, "a foreign state shall be immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604. However, the FSIA contains certain exceptions. *See* 28 U.S.C. §§ 1605, 1607. If an exception applies, the foreign state "shall be liable in the same manner and to the same extent as a private individual under like circumstances," except with respect to punitive damages. 28 U.S.C. § 1606. As relevant here, the terrorism exception to the FSIA provides that United States courts have jurisdiction over actions "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1).

"The standard of review applicable to district court decisions regarding subject matter jurisdiction under the FSIA is clear error for factual findings and *de novo* for legal conclusions." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001) (internal quotation marks omitted).

    A.    <u>The Non-Immediate Family Plaintiffs' Claims</u>

---

[1] According to Plaintiffs-Appellants, Shefi, an Israeli citizen and lawful permanent resident of the United States, had "already submitted a successful application for citizenship" and was undergoing a background check when he was killed in the September 11 attacks. Appellants' Br. at 7. Rowe, a South African citizen and lawful permanent resident of the United States, wished to marry his U.S. citizen girlfriend and live in the United States permanently, and intended to apply for citizenship when he became eligible, but had not yet applied when he was killed in the attacks.

5

First, we consider Plaintiffs-Appellants' argument that the Non-Immediate Family Members were wrongfully denied solatium damages.

The FSIA's terrorism exception explicitly provides certain plaintiffs with a private right of action "for personal injury or death caused by" the terrorist acts listed in 28 U.S.C. § 1605A(a)(1). 28 U.S.C. § 1605A(c). The statute creating the right of action specifically provides that solatium damages are available. *Id*.

In setting forth its suggested framework for solatium damages, the October 14 R&R relied on precedent from the United States Court of Appeals for the District of Columbia Circuit to determine that solatium damages are available only to the decedents' immediate family members and the functional equivalent of immediate family members. App'x at 30–32 (citing *Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003)). In *Bettis*, the D.C. Circuit found that courts should look to state common law to define the class of plaintiffs for whom solatium damages are available, reasoning that the FSIA terrorism exception provides for the foreign state sponsor of terrorism to be "liable in the same manner and to the same extent as a private individual under like circumstances," and thus instructs courts to "find the relevant law, not to make" federal common law. *Bettis*, 315 F.3d at 333 (quoting 28 U.S.C. § 1606). The court in *Bettis* relied on the discussion of common law intentional infliction of emotional distress in the Restatement (Second) of Torts to determine which classes of family members may recover solatium damages in an FSIA terrorism case. *Id.* at 333–38.

We need not decide whether the analytical framework employed in the D.C. Circuit is correct, because Plaintiffs-Appellants do not challenge the district court's determination that recovery for solatium damages in FSIA terrorism cases is limited to immediate family members or their functional equivalents. Nor do they appear to challenge the factors the district court applied to determine that none of the Non-Immediate Family Plaintiffs were not functionally equivalent to immediate family members.[2] Thus, we assume for

---

[2] Plaintiffs-Appellants do advocate for a broad interpretation of "immediate family member," citing a number of sources in which "immediate family member" was defined to include more than spouses, parents, children, and siblings. However, their cited sources are largely irrelevant to the availability of solatium damages for intentional infliction of emotional distress at common law, or indeed to common law at all. Rather, Plaintiffs-Appellants cite statutes and regulations that expressly define the term "immediate family," *see, e.g.*, 18 U.S.C. § 115 (prohibiting threatening a federal official's immediate family, including *in loco parentis* relationships and persons living in the household and related to the official by blood or marriage), or cases interpreting statutes with express definitions, *see, e.g.*, *611 E. 179th St. Realty Corp. v. Gonzalez*, 55 Misc.3d 1225(A), 61 N.Y.S.3d 193 (N.Y. Civ. Ct. Bronx Cty. 2017) (discussing definition of "family member" under Section 2520.6(o)(1) of the Rent Stabilization Code, which includes grand- and

6

purposes of this appeal that, under the FSIA terrorism exception's private cause of action, solatium damages are available only to a terrorism victim's immediate family members or their functional equivalents.

Rather, the Plaintiffs-Appellants claim "the district court err[ed] in determining that, *under the test employed by the district court*, certain non-immediate family members were not functional equivalents of immediate family members to U.S. citizens." Appellants' Br. at 2 (emphasis added); *see also id.* at 10 ("Plaintiffs-Appellants do not disagree [with the district court's recognition that a claim-by-claim, family-by-family determination was required] but contend the court did not fully embrace such an analysis.").

We disagree. Plaintiffs-Appellants identify only a few of the Non-Immediate Family Plaintiffs whom they claim the district court erroneously determined were not the functional equivalent of immediate family members. In the August 8 R&R, Magistrate Judge Netburn conducted a claimant-by-claimant, fact-driven analysis applying the factors listed in the October 14 R&R to determine that each of these claimants was not functionally equivalent to an immediate family member, and the district court adopted this determination. Plaintiffs-Appellants do not explain why this analysis was clearly erroneous as to any claimant, and having reviewed the August 8 R&R and the court's order adopting it, we find no clear error in any of these factual determinations.

B.   The Shefi and Rowe Plaintiffs' Claims

Next, we consider Plaintiffs-Appellants' argument that Shefi and Rowe were "nationals of the United States" for purposes of the FSIA.

The FSIA's terrorism exception extends only to cases in which "the claimant or the victim was, at the time" of the terrorist act either "(I) a national of the United States; (II) a member of the armed forces; or" (III) a U.S. government employee or contractor acting within the scope of his or her employment. 28 U.S.C. § 1605A(a)(2)(A)(ii). In § 1605A(h)(5), the FSIA expressly provides that "the term 'national of the United States' has the meaning given that term in section 1101(a)(22) of the Immigration and Nationality Act," to wit: "(A) a citizen of the United States or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States," 8 U.S.C. § 1101(a)(22).

---

step-parents and children, and in-laws). Thus, we are unpersuaded that a more expansive definition of "immediate family member" is evident at common law or warranted under the *Bettis* framework that the district court applied.

7

Plaintiffs-Appellants argue that Rowe's desire to become a United States citizen and Shefi's affirmative steps toward that goal evinced "permanent allegiance," § 1101(a)(22), to the United States. Our decision in *Marquez-Almanzar v. I.N.S.*, 418 F.3d 210 (2d Cir. 2005), forecloses this argument. In *Marquez-Almanzar*, a non-citizen sought to avoid removal from the United States by contending he was a national of the United States within the meaning of 8 U.S.C. § 1101(a)(22) because his military service, application for naturalization, and other connections to American society evinced permanent allegiance to the United States. *Id.* We rejected this argument, holding that "one cannot qualify as a U.S. national under 8 U.S.C. § 1101(a)(22)(B) by a manifestation of 'permanent allegiance' to the United States." *Id.* at 218–19. We reasoned that "permanent allegiance" is used in § 1101(a)(22) to describe "the nature of the relationship between non-citizen nationals and the United States . . . created by another statutory provision" in the United States Code, not to provide "a means by which one may obtain that status."[3] *Id.* at 217–18. The language of § 1101(a)(22) makes this point plain: it refers not to one who subjectively "feels" or objectively "manifests" his allegiance to the United States, but rather to one who "owes" such allegiance—it is a matter of legal status rather than of felt or manifested loyalty.

Thus, Shefi and Rowe could not have become nationals of the United States, as defined in 8 U.S.C. § 1101(a)(22), by manifesting permanent allegiance to the United States through their efforts to become citizens. Because the FSIA terrorism exception defines "national of the United States" by reference to § 1101(a)(22), *see* 28 U.S.C. § 1605A(h)(5), they are not nationals of the United States so as to allow their estates and non-citizen family members to avail themselves of the FSIA terrorism exception. Thus, the district court properly denied the Shefi and Rowe Plaintiffs' claims.[4]

---

[3] As an example of a statutory provision, we cited 8 U.S.C. § 1408, *see Marquez-Almanzar*, 418 F.3d at 217, which provides several ways by which one becomes a non-citizen national at birth, all involving being born or "found" in an "outlying possession" of the United States or having non-citizen national parents. 8 U.S.C. § 1408. Outlying possessions of the United States include American Samoa and Swains Island. 8 U.S.C. § 1101(a)(29).

[4] Plaintiffs-Appellants argue primarily that *Marquez-Almanzar* was incorrectly decided, or else should not be extended to the FSIA context. We are bound by our ruling in *Marquez-Almanzar*, "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*." *See Nicholas v. Goord,* 430 F.3d 652, 659 (2d Cir. 2005) (internal quotation marks omitted). Moreover, we see no reason why our interpretation of 8 U.S.C. § 1101(a)(22) would not apply equally in the FSIA context. *See Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 14–15 (D.C. Cir. 2015) (holding that non-citizens could not become "nationals of the United States" for the purposes of the FSIA terrorism exception by manifesting permanent allegiance through their actions).

\* \* \*

We have considered Plaintiffs-Appellants' remaining arguments and conclude that they lack merit.   Accordingly, we **AFFIRM** the orders of the district court.

                            FOR THE COURT:
                            Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit