**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 3/31/2019

**03-MDL-01570 (GBD)(SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

    For the reasons set forth below, Plaintiffs' request to impose sanctions jointly and severely on Martin F. McMahon, counsel for Defendant Wa'el Hamza Jelaidan, is DENIED. In addition, McMahon's request to withdraw as counsel from Jelaidan is DENIED without prejudice.

**BACKGROUND**

    On October 6, 2017, the Plaintiffs' Executive Committees ("Plaintiffs" or "PECs") filed a motion for sanctions against Jelaidan. ECF No. 3742. Plaintiffs contended that Jelaidan withheld documents in his possession "despite the Court's specific orders directing him to produce those records." Id. at 6. Separately, on May 1, 2018, Plaintiffs filed another motion for sanctions against Jelaidan and his counsel, Martin McMahon. ECF No. 3988. In that request, Plaintiffs argued that the Court should, among other things, find Jelaidan in civil contempt and impose the additional sanction of default. Id. at 3–4. Plaintiffs also asserted that Jelaidan's previously-imposed financial sanctions should be issued jointly and severely against McMahon. Id. at 4–5.

    Two days later, on May 3, 2018, McMahon filed a motion to withdraw as counsel from Jelaidan. ECF No. 3990. McMahon raised three justifications for his withdrawal: (1) he is no longer being paid by Jelaidan; (2) he is no longer able to communicate with Jelaidan effectively;

and (3) he is in an "irreconcilable conflict" with Jelaidan due to Plaintiffs' request to impose sanctions upon McMahon personally. Id. at 1, 3. A week later, on May 9, 2018, McMahon filed a letter from his own legal counsel regarding Plaintiffs' May 2018 motion for sanctions. ECF No. 3997-1. That letter dealt only with Plaintiffs' request to impose sanctions on McMahon; it did not address Plaintiffs' request to impose additional sanctions against Jelaidan. Id. at 2.

On August 30, 2018, the Court issued an order regarding the parties' outstanding motions. ECF No. 4138. The Court denied Plaintiffs' October 2017 motion for sanctions, reasoning that Jelaidan had already been sanctioned for his failure to produce available documents. Id. at 9. For the remaining motions, however, the Court concluded that it needed additional information before it could reach a decision. Id. Accordingly, the Court directed Jelaidan to provide detailed responses to a list of 13 questions. Id. at 9–10.

Jelaidan, through McMahon, filed a sworn declaration on September 28, 2018. ECF No. 4197. As part of his declaration, Jelaidan stated that he is unable to pay the monetary sanctions previously imposed by the Court. ECF No. 4197-1, at 3. He further stated that he had signed a fixed-fee retainer agreement with McMahon. Id. at 2. Jelaidan argued that, because he had already paid the required fee, McMahon's motion to withdraw should be denied. Id. at 3.

The Court held a conference to discuss these issues on October 12, 2018. Regarding his motion to withdraw, McMahon acknowledged that he had signed a fixed-fee agreement with Jelaidan and that Jelaidan had "substantially complied" with his financial obligations. ECF No. 4222, at 6, 10. Nevertheless, McMahon argued that the parties had agreed to modify the terms of the original agreement. Id. at 7. Specifically, he claimed that the parties did not contemplate "ancillary proceeding[s] regarding sanctions," and therefore McMahon and Jelaidan's Saudi counsel, Bassim Alim, agreed to change the retainer into a fee-for-service contract. Id. at 7–8. As

evidence for his claim, McMahon emphasized that he had submitted several invoices to Jelaidan, all of which were paid. Id. at 8. If the parties had a flat-fee contract, McMahon argued, Jelaidan would have refused to pay the invoices. Id. at 12.

After hearing argument from Plaintiffs, the Court again concluded that it needed additional information. Id. at 34. On October 24, 2018, the Court ordered McMahon to provide the Court, *ex parte* and for *in camera* review, (1) any retainer agreement between Jelaidan and McMahon; (2) copies of any invoices submitted to Jelaidan, and any proof of payment; and (3) any evidence that tended to prove the alleged breakdown in relationship between Jelaidan and McMahon. ECF No. 4215. The Court also directed Jelaidan to submit evidence regarding the above facts, or any other relevant evidence, in opposition to McMahon's motion to withdraw. Id. McMahon submitted a packet of relevant materials on November 23, 2018; Jelaidan did not file a submission.

## DISCUSSION

There are three issues before the Court: (1) whether to impose Jelaidan's financial sanctions jointly and severely against McMahon; (2) whether to permit McMahon to withdraw as counsel for Jelaidan; and (3) whether to find Jelaidan in contempt and impose default. The Court addresses these arguments in turn.

## I.    Sanctions Against McMahon

In their May 2018 motion for sanctions, Plaintiffs contend that the Court should impose Jelaidan's financial sanctions jointly and severely on McMahon. ECF No. 3988, at 4–5. They argue that McMahon "interjected extraneous issues" in order to delay discovery and facilitate Jelaidan's evasive conduct. Id. at 5. As a result, Plaintiffs conclude, McMahon should be held

accountable for his role in Jelaidan's noncompliance. Id. Although not without merit, Plaintiffs' arguments are ultimately unavailing.

Based on the present record, the Court finds that McMahon has not facilitated Jelaidan's noncompliance with the Court's discovery orders. To be sure, McMahon has not always satisfied his obligations to the Court. On May 25, 2017, the Court concluded that McMahon had "failed to obey the October 31, 2016 pretrial order requiring him to file status reports . . . regarding his efforts to secure an OFAC license." ECF No. 3610, at 1. The Court warned that it would impose sanctions on McMahon directly if his noncompliance continued. Id. at 2. Since that Order, however, McMahon has satisfied his obligations to the Court. As detailed in his opposition papers, McMahon contacted OFAC 21 times over a nine-month period to check on the application's progress. ECF No. 3997-1, at 2. The Court noted McMahon's compliance in its August 30 Opinion and Order, concluding that McMahon had filed monthly status reports that "briefly but adequately" described his efforts to secure the OFAC license. ECF No. 4138, at 4.

McMahon's subsequent conduct does not alter the Court's analysis. On January 30, 2018, OFAC issued a Global Terrorism Sanctions Regulations License to Jelaidan, authorizing him to pay the monetary sanctions previously imposed by the Court. See ECF No. 3915-15. Plaintiffs argue that McMahon "deviated from reasonable arguments to avoid Jelaidan's obligations." ECF No. 3990, at 5. The Court disagrees. Somewhat confusingly, McMahon initially asserted that Plaintiffs were required to initiate foreign collection proceedings to enforce the Court's sanctions order against Jelaidan. See ECF No. 3915-2 (email exchange between McMahon and Plaintiffs); ECF No. 4118, at 6–8 (transcript of April 2018 telephone conference). But there is no evidence that McMahon made this argument to delay proceedings; indeed, privileged emails between McMahon and Jelaidan, submitted to the Court in camera, suggest that McMahon's beliefs were

genuine. For these reasons, Plaintiffs have not demonstrated that McMahon facilitated Jelaidan's noncompliance with the Court's discovery orders. The Court imposed the relevant sanctions in October 2013. ECF No. 2789, at 16–17. That decision did not impose sanctions on McMahon directly, and the Court sees no reason to do so retroactively. Plaintiffs' motion to impose Jelaidan's financial sanctions jointly and severally on McMahon is DENIED.

## II.    McMahon's Motion to Withdraw

On May 3, 2018, McMahon filed a motion to withdraw as counsel from Jelaidan. ECF No. 3990. McMahon argues that he should be permitted to withdraw because (1) he is no longer being paid by Jelaidan; (2) he is no longer able to communicate with Jelaidan effectively; and (3) he is in an "irreconcilable conflict" with Jelaidan due to Plaintiffs' May 2018 motion for sanctions. Id. at 1, 3. For the reasons that follow, McMahon's motion is DENIED without prejudice.

Whether to grant an attorney's motion to withdraw is within the sound discretion of the trial court. Karimian v. Time Equities, Inc., No. 10-CV-3773 (AKH) (JCF), 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011) (quoting Stair v. Calhoun, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010)). Under Local Civil Rule 1.4, an attorney will be granted leave to withdraw if he demonstrates "satisfactory reasons for withdrawal or displacement," as well as "the posture of the case, including its position, if any, on the calendar." Local Civ. R. 1.4. Accordingly, when evaluating a motion to withdraw, courts consider two factors: "the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." S.E.C. v. Gibraltar Global Sec., Inc., No. 13-CV-2575 (GBD) (JCF), 2015 WL 2258173, at *1 (S.D.N.Y. May 8, 2015).

Primarily, McMahon argues that he should be permitted to withdraw because he is no longer being paid by Jelaidan. Although non-payment of fees is a "satisfactory reason" under

Local Rule 1.4,[1] McMahon's argument is unavailing. Jelaidan — who opposes McMahon's motion — asserts that he does not owe McMahon any legal fees. See ECF No. 4197-1, at 2–3. This argument is supported by the record. Jelaidan signed a fixed-fee retainer agreement in July 2003. In exchange for a capped fee, McMahon agreed to perform "any and all legal work" in connection with the 9/11 litigation, except for work at the Court of Appeals for the District of Columbia or the United States Supreme Court. Later, in an undated addendum signed only by McMahon, the parties reiterated that McMahon would represent Jelaidan in "any and every legal proceeding that arises out of the 9/11 tragedy." Although Jelaidan agreed to make certain additional payments, the addendum provided that there would be no "extra fees in the future."[2] Jelaidan's claim is further supported by the October 12 conference. There, McMahon acknowledged that he signed a flat-fee retainer with Jelaidan and that Jelaidan had "substantially complied" with his financial obligations under the agreement. ECF No. 4222, at 6, 10. Thus, because McMahon has been fully compensated, he cannot rely on non-payment of fees to justify his withdrawal from the case.

    In response, McMahon contends that the parties agreed to modify their original agreement. New York courts view these types of claims with particular scrutiny. See Naiman v. N.Y. Univ. Hosps. Ctr., 351 F. Supp. 2d 257, 263 (S.D.N.Y. 2005) (quoting Baye v. Grindlinger, 432 N.Y.S.2d 624, 625 (2d Dep't 1989) ("[For] contracts made between an attorney and his client subsequent to employment which are beneficial to the attorney, it is incumbent on the attorney to show that the terms are fair and reasonable and fully known and understood by the

---

[1] Genao v. City of New York, No. 14-CV-8122 (AT) (JLC), 2017 WL 57886, at *2 (S.D.N.Y. Jan. 4, 2017) (quoting Taub v. Arrayit Corp., No. 15-CV-1366 (ALC) (JLC), 2016 WL 4146675, at *1 (S.D.N.Y. Aug. 4, 2016) ("[I]t is firmly established that non-payment of legal fees is [a 'satisfactory reason'] under Local Civil Rule 1.4.")).
[2] Based on the context of this Addendum, it was likely signed by McMahon in early 2006.

client.")). As a result, to prove a modification of an attorney-client agreement, the attorney must establish that (1) "the client acquiesced in the agreement with full knowledge of all the material circumstances known to the attorney;" and (2) "such acquiescence was not brought about by fraud on the attorney's part, or misconception on the part of the client." Moreno-Godoy v. Gallet Dreyer & Berkey, LLP, No. 14-CV-7082 (PAE), 2015 WL 5737565, at *12 (S.D.N.Y. Sept. 30, 2015) (quoting King v. Fox, 7 N.Y.3d 181, 190 (2006)). In the District of Columbia — where McMahon is located and at least some of the legal services were performed — attorneys face a similar burden. See Chase v. Gilbert, 499 A.2d 1203, 1209 (D.C. Ct. of Apps. 1985) (stating that modifications to an attorney-client contract are "presumptively invalid" and that the burden is on the attorney "to demonstrate the fairness of the contract").

To be sure, some evidence suggests that McMahon and Jelaidan modified their retainer. In November 2013, Bassim Alim, Jelaidan's local counsel, asked why McMahon had submitted an invoice for various legal services.[3] McMahon replied that the invoice was necessary because he had performed "appellate work" that was outside the scope of the retainer. At the same time, however, McMahon affirmed that the original agreement was still in effect and that "there would be no extra billing" for worked performed in response to Plaintiffs' discovery efforts.  Although Alim did not respond to McMahon's email, Jelaidan paid five invoices over the following five years. Based on this evidence, McMahon argues that the parties agreed to modify their retainer.

This argument is not persuasive. In the November 2013 email, McMahon stated that the original retainer was still in effect, but, at the same time, that an ambiguous category of "appellate work" would need to be paid on an hourly basis. The email did not define this term,

---

[3] At the Court's direction, McMahon submitted confidential communications among himself, Alim, and Jelaidan. See ECF No. 4215. To preserve any privilege claims, the Court will describe these documents generally and will avoid reference to any legal advice.

and it is particularly confusing given that the relevant invoice was for work performed *in the district court*. As a result, McMahon cannot show that Jelaidan acquiesced in an agreement "with full knowledge of the material circumstances." See <u>Moreno-Godoy</u>, 2015 WL 5737565, at *12. In any event, even if a modification occurred (or was later ratified), it would be limited in scope, and it would not require Jelaidan to make substantial payments moving forward.[4] Accordingly, the Court rejects McMahon's argument that he will be unfairly deprived of legal feels during the remainder of the litigation.

McMahon's alternative justifications are equally unavailing. First, McMahon argues that he is in a "conflicting position" with Jelaidan due to Plaintiffs' request to impose sanctions on McMahon personally. ECF No. 3990, at 3. Because the Court has denied Plaintiffs' request, however, McMahon's argument is moot. Second, McMahon asserts that he is no longer able to communicate effectively with his client. <u>Id.</u> at 1. Although Jelaidan and his local counsel have, at times, taken multiple weeks to respond to McMahon's emails, there is no evidence of a "severe breakdown of trust" between the two sides. See <u>Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.</u>, No. 01-CV-2950 (DAB), 2005 WL 1963945, at *2 (S.D.N.Y. Aug. 15, 2005).

Exercising its discretion, the Court finds that the litigation is better served if Jelaidan is represented by counsel. This is particularly so given that Jelaidan opposes McMahon's motion to withdraw and has fully complied with their initial retainer agreement. See N.Y. Rules of Prof'l Conduct 1.16(d) (2018) ("When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation). Accordingly,

---

[4] Jelaidan has already paid McMahon for the "appellate work" that McMahon performed in connection with the Court's October 2013 discovery decision. Pursuant to the November 2013 email, any work for discovery, summary judgment, or trial would be covered by the original fixed-fee retainer agreement.

absent further evidence of a breakdown in relationship or a change in the parties' retainer agreement, McMahon's motion to withdraw is DENIED without prejudice.

### III.      Sanctions Against Jelaidan

In their May 2018 motion for sanctions, Plaintiffs request that the Court find Jelaidan in contempt and impose the additional sanction of default. ECF No. 3988, at 3–4. The Court is not in a position to evaluate Plaintiffs' request at this time.

First, Plaintiffs have not had an opportunity to supplement their motion following Jelaidan's sworn declaration. This is important, as the attached bank records indicate that Jelaidan (1) has limited funds and is unlikely to be able to pay the monetary sanctions imposed by the Court; and (2) paid other debtors in May 2015, *before* the decision setting the amount of Plaintiffs' reasonable attorneys' fees. ECF No. 4197-2, Attachments 1 & 2. Second, after submitting their motion, Plaintiffs expressed an intent to depose Jelaidan regarding his efforts to secure an OFAC license and pay the outstanding sanctions. ECF No. 4253-1, at 11. The Court is unaware if this deposition has occurred, and if so, what information it produced. Finally, because of McMahon's motion to withdraw, Jelaidan never responded to Plaintiffs' request for additional sanctions. See ECF No. 3997-1, at 2. Given that Plaintiffs seek dispositive relief, the Court is unwilling to proceed without giving Jelaidan an opportunity to respond.

Accordingly, Plaintiffs are directed to meet-and-confer with Jelaidan regarding any remaining discovery and whether Plaintiffs intend to renew their motion for dispositive sanctions when the case proceeds to summary judgment. This letter shall be filed no later than 45 days from the date of this Order.

**CONCLUSION**

Plaintiffs' request to impose sanctions jointly and severely on Martin F. McMahon, counsel for Defendant Wa'el Hamza Jelaidan, is DENIED. In addition, McMahon's request to withdraw as counsel for Jelaidan is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 3990.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     March 31, 2019
           New York, New York