# MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

April 23, 2019

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

RE:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

Pursuant to Your Honor's April 11, 2019 Order (ECF No. 4484), the Plaintiffs' Executive Committees ("PECs"), in consultation with the Defendants' Executive Committee ("DEC"), write to provide the Court with a joint status report as to the progress of merits and jurisdictional discovery for the thirteen defendants identified in the Court's Order.[1]

## I. MERITS DISCOVERY DEFENDANTS

### A. Muslim World League and International Islamic Relief Organization

In accordance with the protocols for conducting depositions as authorized by this Court (Deposition Protocol Order at ECF No. 3894), the PECs have to date deposed the following former and current Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO") officials and employees: Abdullah Muhsen al Turki (September 14-15, 2018 – London, U.K.), Abdullah bin Saleh al Obaid (September 17-18, 2018 – London, U.K.), Adnan Basha (February 20-21, 2019 – videoconference from Jeddah, Saudi Arabia), Saad al Obaidi (January 21, 2019 – Madrid, Spain), and Fahad bin Sanad al Harbi (March 26-27, 2019 – Madrid, Spain).[2] The PECs' position is

---

[1] This status report does not address the ongoing jurisdictional discovery presently taking place with defendants Kingdom of Saudi Arabia and Dallah Avco.

[2] The PECs also expressed an interest in deposing other former MWL and IIRO employees, including Abd al Hamid Sulaiman al Mujil, Prince Turki bin Fahd bin Jalawi al Saud, Moayed al Buteyri, Ghanim al Harbi, Sameer Jameel al Radhi,

The Honorable Sarah Netburn
April 23, 2019
Page 2

that testimony from certain of the aforementioned individuals indicates that the MWL and IIRO have not yet produced relevant documentation responsive to plaintiffs' document requests. MWL and IIRO's position is that these matters have been fully litigated and decided previously by the Court. MWL and IIRO note that this is the first time that the PECs' belief of production deficiencies has been raised to the organizations since the inception of the deposition period. As such, because the PECs have not provided particularity on what they believe has not been produced, MWL and IIRO cannot take positions on the specific documents that the PECs believe remain to be produced. The PECs anticipate conferring with the MWL and IIRO concerning the production of those outstanding materials indicated during the depositions, but respectfully submit that additional motion practice relating to those outstanding materials (motion to compel and/or motion for sanctions) may be necessary.

For a number of months, the PECs have also sought to schedule the depositions of the following three individuals currently or formerly employed by the MWL and IIRO, but the scheduling of those depositions has been significantly delayed due to ongoing visa and health issues associated with the proposed deponents.

- <u>Abdulrauf Khalaf al Sharman</u> – Mr. Sharman, currently assigned to the IIRO's branch office in Bosnia-Herzegovina, was paired with the deposition of Fahad bin Sanad al Harbi, to occur during the same trip to Madrid, Spain, the week of March 25, 2019, subject to his obtaining a Schengen visa. Counsel for IIRO regularly updated the PECs on the status of Mr. Sharman's visa up to the week prior to the scheduled deposition. In those reports, counsel for IIRO indicated that they anticipated Mr. Sharman would be available in Madrid, but that it was possible he would not be available if his visa did not come through in time. On March 26, during the start of Mr. Harbi's deposition, counsel for the MWL and IIRO alerted the PECs that because the Spanish government had, on that day, denied Mr. Sharman's visa application, he would not be available for his deposition as planned. Mr. Sharman immediately re-submitted his visa application to the Spanish government and a decision is expected soon. In the event Mr. Sharman's visa application is denied again, Mr. Sharman has indicated he can be deposed in Sarajevo, Bosnia-Herzegovina in person or via videoconference.

- <u>Abdelhadi Daguit and Rahmatullah Nazir Khan Gari</u> – During a meet and confer held on October 17, 2018, between the PECs and counsel for MWL and IIRO, the PECs expressed their intention to depose a number of individuals, including former MWL/IIRO employees Messrs. Daguit and Gari. On November 13, 2018, the PECs submitted a chart to the Court at ECF No. 4253-1, identifying for Your Honor the individuals the PECs intended to depose, including Messrs. Daguit and Gari.[3] During a meet and confer with the MWL and IIRO on December 19, 2018, the PECs inquired as to the status of Messrs. Daguit and Gari, and counsel for MWL and IIRO advised that they were working with those individuals to secure

---

and Saleh al Dhibani. However, the PECs were told those former employees were not represented by counsel for the MWL and IIRO and were provided their last known contact information as required by the deposition protocol.

[3] The MWL and IIRO contend the PECs' November 13, 2018 chart was the first time the PECs named all individuals whom they intended to depose. The PECs' position is that each of the witnesses identified in the November 13 submission was discussed during the October 2018 meet and confer. Plaintiffs requested available dates to conduct those depositions at that time.

their appearances at one of the Presumptively Acceptable Locations. During the depositions in Madrid in January 2019, the PECs again requested available deposition dates for Messrs. Daguit and Gari, and counsel for MWL and IIRO advised that they were working through serious health and visa issues relating to the two former employees and would work to have dates soon. During a conference call on January 30, 2019, when the PECs requested an update regarding the efforts to secure deposition dates, counsel for the MWL and IIRO advised that they would make inquiries and revert back to the PECs.

Counsel for the MWL and IIRO recently advised that Mr. Daguit, a former MWL/IIRO employee who has agreed to testify in this litigation, had still not applied for a visa to testify at a presumptively acceptable location, despite repeated requests from counsel of MWL and IIRO. Mr. Daguit is a Filipino national, currently residing in Manila, Philippines. In addition, counsel informed the PECs that Mr. Daguit was involved in an accident requiring femoral hip replacement surgery and that Mr. Daguit's condition prevents his travel at this time. In the event Mr. Daguit is unable or unwilling to travel to one of the Presumptive Acceptable Locations, counsel has indicated that Mr. Daguit is nonetheless willing to appear for his deposition in Manila, either in person or via videoconference.

Counsel also recently informed the PECs that Mr. Gari, a former MWL/IIRO employee who has also agreed to sit for his deposition, underwent extensive knee surgery in early 2019. Mr. Gari's health is reportedly improving, but he is unable to travel or sit for a deposition at the present time. Counsel has advised that, although Mr. Gari has a valid Schengen visa which will allow him to travel to Madrid, that visa expires at the end of June and so we will attempt to facilitate the deposition prior to that time.

In light of the parties' jointly unsuccessful efforts to schedule and finalize deposition dates for these three prospective witnesses, the PECs and the defendants respectfully request that the April 1, 2019 fact deposition deadline (ECF No. 4230) as to defendants MWL and IIRO be extended to July 31, 2019 to conduct these three remaining depositions.[4] The parties are presently conferring on potential dates and locations to depose Messrs. Sharman, Daguit, and Gari.

**B.  World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International**

The parties further respectfully request that the extension of the fact deposition deadline to July 31, 2019, also apply to defendants World Assembly of Muslim Youth-Saudi Arabia and World Assembly of Muslim Youth-International (collectively "WAMY"), to allow the PECs to conduct four depositions.

When the discovery deadline was established, the parties and the Court envisioned that all of the defendants would have simultaneously completed their document productions and the PECs

---

[4] The requested deadline accounts for the religious observance of the Ramadan holiday (May 5, 2019 through June 4, 2019), directly followed by Eid al Fitr (June 6-12, 2019). Counsel for the MWL and IIRO advise that the prospective witnesses will be unavailable to participate in depositions during this period. Counsel for WAMY, *see below* at I.B., have indicated the same regarding the indicated WAMY witnesses.

would have sufficient time to translate the large volume of Arabic materials in their productions, confer with their linguists, and confer with subject matter experts concerning their analysis of WAMY's documents before noticing depositions. WAMY made its last production of documents on April 1, 2019. Now that WAMY has indicated that it has completed its document production, plaintiffs are conferring with WAMY's counsel concerning the availability of the following four witnesses to appear for depositions: Saleh al Wohaibi, Abdul Wahab Noorwali, Ibrahim Anwar,[5] and a Rule 30(b)(6) witness. WAMY has agreed to produce these witnesses for deposition and, in light of the witnesses' unavailability during Ramadan (May 5, 2019 through June 4, 2019) and Eid al Fitr (June 6-12, 2019), has proposed July 31, 2019 as a reasonable extension of the fact deposition deadline to conduct these four depositions.

In addition, the PECs are reviewing WAMY's April 1, 2019 submission to the Court at ECF Nos. 4465 and 4466. The PECs anticipate conferring with WAMY's counsel on the production of banking records. Additional motion practice may be necessary.

### C.  Dubai Islamic Bank

The PECs conducted the deposition of Dr. Hussein Hamid Hassan, Chairman of Dubai Islamic Bank's Fatwa and Shariah Advisory Board, on August 1-3, 2017 in London, U.K., and intend to pursue Rule 30(b)(6) depositions of a limited number of United States officials and representatives relative to plaintiffs' claims against DIB. *See* below, section III,C., regarding third-party discovery.

### D.  Wa'el Hamza Jelaidan

On March 31, 2019, the Court issued its Opinion and Order denying attorney Martin McMahon's request to withdraw as counsel from defendant Wa'el Hamza Jelaidan, and further denying the PECs' request to impose financial sanctions jointly and severally on Mr. McMahon. *See* ECF No. 4464. Pursuant to that Order, the PECs have been directed to meet-and-confer with Mr. Jelaidan's counsel concerning any remaining discovery, and provide the Court with a letter concerning the outcome of those discussions by May 15, 2019. *Id.* at 9. Although the dialogue with Mr. McMahon continues, the current status is indicated here.

The PECs contacted Mr. McMahon on April 15, 2019 to schedule a meet-and-confer. On April 16, 2019, Mr. McMahon informed the PECs that he had communicated with his co-counsel in Saudi Arabia, Mr. Bassim Alim. Messrs. Alim and Jelaidan have proposed the PECs conduct Mr. Jelaidan's deposition in Jeddah, Saudi Arabia "sometime in December prior to Christmas, or alternatively sometime after the New Year holiday." The PECs promptly advised Mr. McMahon that the plaintiffs will not agree to Mr. Jelaidan's proposal and requested that his deposition take place much sooner and at one of the Presumptively Acceptable Locations. The PECs will continue to confer with Mr. Jelaidan's counsel concerning the proposed deposition and intend to submit a more comprehensive update for the Court on May 15, 2019, pursuant to the Court's Orders at ECF Nos. 4464 and 4484.

---

[5] The PECs previously inquired into the availability of the former head of WAMY's branch office in the United States, Abdullah bin Laden, to sit for a deposition as a fact witness. However, WAMY's counsel informed the PECs that it could not produce Mr. bin Laden for a deposition.

### E. Perouz Sedaghaty

Mr. Sedaghaty is no longer represented in the litigation as of April 2017. Bankruptcy proceedings were adjudicated and closed in September 2017.

## II. JURISDICTIONAL DISCOVERY DEFENDANTS

### A. Charity Official Defendants

As previously mentioned, the PECs have deposed Charity Official defendants Abdullah Muhsen al Turki (September 14-15, 2018 – London, U.K.), Abdullah bin Saleh al Obaid (September 17-18. 2018 – London, U.K.), and Adnan Basha (February 20-21, 2019 – videoconference in Jeddah, Saudi Arabia). Defendant Abdullah Omar Naseef remains in poor health and unable to participate in these proceedings, as indicated by the status letters submitted to the Court on his behalf by his counsel. *See e.g.*, ECF No. 4477 (explaining that "there has been no improvement in his medical condition and no change in his ability to participate in this litigation"). In the event Mr. Naseef's condition improves and he is able to appear for a deposition, the parties will advise the Court and confer concerning the scheduling of his deposition.

The PECs noticed the deposition of defendant Soliman al Buthe to occur in London, U.K. in September 2018 at the same time members of the PECs would be in London to depose Charity Official defendants Abdullah Muhsen al Turki and Abdullah bin Saleh al Obaid. Mr. al Buthe indicated that he would decline to appear for his deposition, notwithstanding the Court's denial of his motion for a protective order. *See* ECF No. 4074. Although plaintiffs' counsel were present and available in London as scheduled, Mr. al Buthe failed to appear.

### B. Yassin al Kadi

Members of the PECs deposed defendant Yassin Kadi on July 10, 2018 in London, U.K. Based on connections the PECs have identified between Mr. Kadi and co-defendant Wa'el Hamza Jelaidan, plaintiffs intend to depose co-defendant Jelaidan concerning the claims versus Mr. Kadi. Although the PECs and Mr. Kadi have been in dispute regarding documents Mr. Kadi withheld based on privilege, following the court-ordered meet-and-confers the parties were able to substantially narrow the areas of dispute, and the PECs have elected to forgo additional challenges to the Kadi privilege log.

## III. ADDITIONAL DISCOVERY ISSUES

### A. Expert Discovery

The PECs and Merits Defendants have conferred and agree that expert witness disclosures and depositions should take place following the close of fact witness discovery on liability and before the filing of dispositive motions. The parties request that, before the Court determines a schedule for expert disclosures and depositions, the parties be permitted to meet-and-confer and make recommendations to the Court regarding that schedule.

The Honorable Sarah Netburn
April 23, 2019
Page 6

The Jurisdictional Defendants' position is that the Court's April 11, 2019 Order does not appear to contemplate expert discovery with respect to the Jurisdictional Defendants. However, Plaintiffs have now stated that they intend to use one or more experts in response to the Jurisdictional Defendants' renewed dispositive motions on jurisdiction. Therefore, the Jurisdictional Defendants should be entitled to the discovery allowable under the rules, *i.e.* the identification of the experts, the experts' reports, and an opportunity to depose the experts. Fed. R. Civ. P. 26(a)(2), (b)(4). The Jurisdictional Defendants believe that interrogatories that some Jurisdictional Defendants served in 2013 sought this information. Plaintiffs should be required within a reasonable time to disclose the identities and reports of any experts they intend to use. The Jurisdictional Defendants have indicated that any expert(s) the Jurisdictional Defendants use will be only to rebut Plaintiffs' expert(s), and therefore, their position is that any expert identification and reports by them should follow their receipt of Plaintiffs' report(s). Fed. R. Civ. P. 26(a)(2). This expert witness discovery should be completed before the Jurisdictional Defendants file their dispositive motions on jurisdiction. It should not await the conclusion of fact discovery with respect to the Merits Defendants, KSA, and Dallah Avco. See further discussion in subsection E below. With respect to Mr. Kadi, Plaintiffs contend that they should not be required to provide expert disclosures until they have taken the deposition of Wa'el Jelaidan. Mr. Kadi contends that he should not be required to await these disclosures for an undetermined period of time. He contends that Plaintiffs should be required to provide expert disclosure by September 1, 2019, regardless of whether the Jelaidan deposition has occurred, and it should not be contingent on the conclusion of any other discovery.

The PECs position as to expert discovery regarding the Jurisdictional Defendants is the same as it is as for the Merits Defendants; the PECs contend that the merits and jurisdictional discovery is to be coextensive for the Jurisdictional Discovery defendants (and understood that the Jurisdictional Defendants had agreed to that approach). Expert discovery regarding the Jurisdictional Discovery defendants does not warrant a different preferred discovery track in the MDL. Finally, if expert disclosures are not simultaneous but sequenced, the schedule needs to provide for rebuttal reports to the defendants' initial disclosures. Jurisdictional Defendants do not agree with the PECs that jurisdictional and merits discovery was to be coextensive.

### B.     Class Discovery

The parties in the case captioned as *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Invest. et al.*, Case No. 04-1923, are in agreement that there should be a period of class certification discovery in that putative class action case. The parties propose that such discovery commence 60 days prior to any deadline that the Court may set for third party deposition discovery. *See* below, section III,C., regarding third-party discovery. The parties further agree that they should brief class certification during the expert witness discovery period so that the Court can decide issues of class certification prior to ruling on dispositive motions. The parties will meet and confer on the bounds of that putative class discovery. The parties request that, before the Court determines a schedule for class certification briefing, the parties be permitted to meet and confer and make recommendations to the Court regarding that schedule.

The Honorable Sarah Netburn
April 23, 2019
Page 7

### C. Depositions of Third Party Witnesses

Counsel for the parties have conferred and agree to the following concerning outstanding depositions from third-party witnesses. Pursuant to the Depositional Protocol Order, the PECs and the Merits Defendants—MWL, IIRO, WAMY, and Dubai Islamic Bank—exchanged amended Witness Disclosures in March 2018, which listed witnesses from whom parties have the intention to secure a declaration, affidavit, or testimony (*see* ECF No. 3894 ¶ 6). In those disclosures, the parties listed 64 third party witnesses, a list of whom the parties exchanged last week. On June 25, 2018, the parties exchanged lists of third party witnesses from whom each side was interested in seeking a deposition. The parties agree that they all have an interest in avoiding depositions that no party intends to use in the litigation, and all desire to reduce the burdens of discovery if possible.

Therefore, to reduce the number of depositions to be taken in this litigation, the PECs and Merits Defendants agree to exchange simultaneously on Friday, May 10, 2019 at 3 p.m., amended Witness Disclosures in which parties will make a good faith effort to reduce the list of third party witnesses that were named by each in their March 2018 Witness Disclosures. This new exchange is referred to herein as an "Updated Third Party Witness Disclosure Exchange". In this updated exchange, the PEC and Merits Defendants agree that each side will remove third party witnesses from its March 2018 Witness Disclosures (a complete list of which is attached as Exhibit A) that it no longer has the intention to rely upon for an affidavit, a declaration, or testimony. Nothing in this agreement prohibits a side from obtaining an affidavit, a declaration, or testimony from a person who is listed in the other side's Updated Third Party Witness Disclosure Exchange.[6] Following the Updated Third Party Witness Disclosure Exchange, the parties will promptly meet and confer to schedule the depositions of third party witnesses.

### D. WAMY and Kadi Interrogatories

Defendants WAMY and Mr. Kadi served interrogatories on plaintiffs – Mr. Kadi in 2013, WAMY in 2011. The PECs' position is that those interrogatories were contention interrogatories, that Plaintiffs' have responded to those interrogatories, and that—to the extent any further responses are necessary—responses to those interrogatories are premature and should not be necessary, if at all, until after the additional WAMY depositiions are concluded and expert discovery has concluded. *See, e.g.* Local Rule 33.3 ("*At the conclusion of other discovery*, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise." (Emphasis added)).

Mr. Kadi's position is that only some, not all, of the interrogatories he served are contention interrogatories. Furthermore, Plaintiffs' responses consisted solely of objections and references to the pleadings. Mr. Kadi agrees that Plaintiffs may defer complete and particularized responses to his interrogatories, except for those that seek the identities of experts, until the close of expert discovery. Contrary to Plaintiffs' suggestion that responses may not be necessary at all, Mr. Kadi contends that

---

[6] This agreement is not intended to alter, modify, or replace the June 25, 2018 exchange relating to numerical limitations on depositions.

The Honorable Sarah Netburn
April 23, 2019
Page 8

unless the claims against him are voluntarily dismissed in their entirety, responses to the interrogatories will definitely be necessary in light of the vagueness and age of the allegations against him.

WAMY's position is that none of WAMY's interrogatories are contention interrogatories, and that plaintiffs' responses consisted of objections and references to documents. On February 28, 2019, Plaintiffs responded to WAMY's renewed attempt to compel responses to interrogatories by arguing that WAMY's interrogatories remain premature. On March 1, 2019, WAMY disputed Plaintiffs' claim that the remaining fact witness deposition schedule constituted a reasonable basis for Plaintiffs' further delay in responding to WAMY's interrogatories because, with limited consensual extensions, the deadline for the completion of fact discovery was April 1, 2019. Plaintiffs did not respond to WAMY's March 1, 2019 letter. Next, WAMY raised the issue of Plaintiff's outstanding responses to interrogatories on April 11, 2019 in connection with its agreement to extend the fact witness deposition deadline. However, Plaintiffs ignored WAMY's attempt to reach a resolution on the outstanding responses to interrogatories.

WAMY contends that, as fact discovery is over, Plaintiffs have no basis for refusing to provide responses to WAMY's interrogatories seeking to know the factual basis for Plaintiffs' claims against WAMY. Plaintiffs' suggestion that their responses should not be due, "if at all," until the close of expert discovery is contrary to Judge Maas' order which indicated that such responses would wait until the end of fact discovery, i.e., April 1, 2019. See April 12, 2011 Hearing Tr. at pp. 58-59 (interrogatories are limited to the local rules; Local Rule 33.3 provides for interrogatories prior to the end of discovery). Contrary to Plaintiffs' suggestion that responses may not be necessary at all, WAMY contends that unless the claims against them are voluntarily dismissed in their entirety, further responses to the interrogatories will be necessary in light of the vagueness and age of the allegations.

### E. Motions Practice for the Jurisdictional Defendants

The Jurisdictional Defendants respectfully submit that they should be able to decide whether to file their dispositive motions on jurisdiction without having to wait for completion of jurisdictional discovery as to the Kingdom of Saudi Arabia and Dallah Avco. There is no evidence to suggest that further discovery as to those two defendants will relate to the Jurisdictional Defendants, or be probative of their personal jurisdiction defenses as articulated by the Second Circuit in its remand decision—defenses that are factually and legally separate from those applicable to the Kingdom and Dallah Avco. The Jurisdictional Defendants have now been in jurisdictional discovery for almost six years. There is no reason to keep these individual defendants—most of whom are elderly—waiting any longer for resolution of their dispositive motions. Four of these Jurisdictional Defendants have been deposed, while two of the charity officer defendants are unable to participate in the litigation due to health and travel issues. We do not believe that any efficiencies in judicial administration will be accomplished by requiring that the Jurisdictional Defendants postpone proceeding to motion practice until discovery with respect to unrelated defendants is completed. Thus, the Jurisdictional Defendants respectfully request that this Court reconsider its preliminary determination (ECF 4484) that their motions practice await completion of jurisdictional discovery as to the other two defendants, and instead allow them to file their dispositive motions sooner, if they deem it suitable. The timing of their dispositive motions will be contingent upon the completion of expert witness discovery (all the Jurisdictional Defendants) and the responses to the interrogatories (Mr. Kadi).

The Honorable Sarah Netburn
April 23, 2019
Page 9

The parties thank the Court for its attention to this matter.

Respectfully submitted,

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
 ROBERT T. HAEFELE
 MOTLEY RICE LLC
 28 Bridgeside Boulevard
 Mount Pleasant, SC 29465
 Tel.: (843) 216-9184
 Email: rhaefele@motleyrice.com

 *For the Plaintiffs' Exec. Committees*

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
 SEAN P. CARTER
 COZEN O'CONNOR
 One Liberty Place
 1650 Market Street, Suite 2800
 Philadelphia, Pennsylvania 19103
 Tel.: (215) 665-2105
 Email: scarter@cozen.com

 *For the Plaintiffs' Exec. Committees*

KREINDLER & KREINDLER LLP

By: /s/ *Andrew J. Maloney*
 ANDREW J. MALONEY
 STEVEN R. POUNIAN
 KREINDLER & KREINDLER LLP
 750 Third Avenue
 New York, New York 10017
 Tel.: 212-687-8181
 Email: amaloney@kreindler.com

 *For the Plaintiffs' Exec. Committees*

cc:  The Honorable George B. Daniels, via ECF
  All Counsel of Record via ECF