# BERNABEI & KABAT, PLLC
ATTORNEYS AT LAW
1400 16th STREET, N.W., SUITE 500
WASHINGTON, D.C. 20036-2223

| | | |
|---|---|---|
| LYNNE BERNABEI | 202.745.1942 | MICHAEL ELLEMENT |
| ALAN R. KABAT | FAX: 202.745.2627 | DEVIN WRIGLEY |
| PETER M. WHELAN | WWW.BERNABEIPLLC.COM | KAIYA LYONS* |
| KRISTEN SINISI | | |

*ADMITTED IN MN ONLY

May 31, 2019

**Via ECF**

The Honorable Sarah Netburn
Magistrate Judge, United States District Court
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  *In re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (GBD)(SN)

Dear Judge Netburn:

  Pursuant to Your Honor's Order on May 22, 2019 (ECF No. 4532), Plaintiffs' Executive Committees ("PECs"), in consultation with the Defendants' Executive Committee ("DEC"), respectfully submit this joint status letter regarding third party discovery, class certification, and expert discovery.[1]

## I. Third Party Witness Depositions

  On May 10, 2019, the PECs and World Assembly of Muslim Youth ("WAMY"), Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), and Dubai Islamic Bank ("DIB") (hereinafter "Merits Defendants") exchanged lists of third party witnesses upon which each side planned to rely upon for an affidavit, declaration, or testimony in the litigation. The PECs named 25 witnesses, and Merits Defendants named seven witnesses. One witness was named by both sides. As a result, the parties collectively listed a total of 31 third party fact witnesses.

---

[1] The Court also has ordered the fact deposition deadline for the Merits and Jurisdictional Defendants to close on Wednesday, July 31, 2019. ECF No. 4532. Parties understand this extension pertains to the seven witnesses that PECs and DEC agreed were the remaining party witnesses in their joint status letter on April 23, 2019. ECF No. 4495. Counsel for Wa'el Hamza Jelaidan was not a party to the April joint status letter, therefore parties do not understand the deposition of Wa'el Hamza Jelaidan to be affected by this limitation.

These 31 fact witnesses fall into three categories: (1) current and former U.S. government officials potentially subject to Touhy regulations; (2) individuals in the custody or protection of the U.S. government; and (3) third party witnesses neither potentially subject to Touhy regulations nor within the custody or protection of the U.S. government.

First, fifteen of the third party witnesses are current or former U.S. government officials that may be subject to Touhy regulations and thus require the U.S. government's permission before submitting to a deposition ("Touhy witnesses").[2] The parties met and conferred with Assistant U.S. Attorney Sarah Normand on May 29, 2019, regarding a process for seeking authorization under the respective agencies' Touhy regulations to depose these witnesses. Ms. Normand stated that the parties could submit Touhy requests to her (or an agency representative to be designated by her) and that the respective agencies would attempt to provide responses to those requests within 90 days of receiving the requests.[3] The parties have agreed to promptly draft and serve Touhy requests for these witnesses within four weeks from the submission of this letter. *See* Dep. Protocol (ECF No. 3894) ¶ 39 ("The sides shall meet and confer on the subjects to be included in a Touhy request so that the request includes all topics desired by both sides."). In agreeing to this procedure, the Merits Defendants are not suggesting that any Touhy request, or any of the topics to be requested by Plaintiffs in such a request, are appropriate. Likewise, Plaintiffs are not suggesting that any Touhy request by the Merits Defendants, or any of the topics to be requested by the Merits Defendants in such a request, are appropriate. Nor is the U.S. government suggesting that any deposition of any agency or current or former agency official would be appropriate. The parties have agreed that once the respective U.S. government agencies respond to the Touhy requests, the parties will meet and confer with the AUSA to discuss next steps, including attempting to resolve any outstanding issues or to schedule any depositions for which permission has been granted, if any.

Second, the parties believe that six third party witnesses are either in the custody or protection of the U.S. government.[4] The two witnesses in the custody of the Federal Bureau of

---

[2] Specifically, the PECs have listed Stuart A. Levy; R. Richard Newcomb; Adam J. Szubin; Matthew A. Levitt; Juan Carlos Zarate; John Roth; Douglas N. Greenburg; Serena B. Wille; Mark Rossini; and Rule 30(b)(6) representatives for the U.S. Federal Bureau of Investigation, Department of Treasury, Department of State, Central Intelligence Agency, and Department of Defense. The Merits Defendants listed Lawrence Wilkerson.

[3] Ms. Normand has advised the parties that because the names of requested witnesses were provided on May 28, and discussed in a meet and confer telephone call on May 29, Ms. Normand has not had sufficient time to identify and confer with the relevant officials at the respective agencies regarding the anticipated Touhy requests.

[4] The PECs listed two witnesses who appear to be incarcerated in the custody of the Federal Bureau of Prisons (Mamdouh Mahmoud Salim and Wadih el Hage), three witness who appear to be detained in Guantanamo (Khalid Sheikh Mohamed, Ali Abdul Aziz Ali, and Mustafa Ahmed al Hawsawi), and one witness who the PECs believe may be in the Federal Witness Protection Program or an equivalent program.

The Honorable Sarah Netburn
May 31, 2019
Page 3 of 7

Prisons require leave of court to seek their depositions pursuant to Federal Rule of Civil Procedure 30(a)(2)(B). Ms. Normand was provided with the names of these six witnesses on May 28, 2019, and has agreed to determine the U.S. government's position on the availability of these witnesses for depositions. To the extent that the U.S. government requires leave of court before making a witness available, the parties and the AUSA will meet and confer before seeking a request from this Court. In the event that the U.S. government does not object to the request to depose any of these witnesses, the parties agreed to coordinate with the U.S. government to promptly schedule these depositions. In the event that the government objects, the parties and the AUSA will meet and confer before any party seeks relief from this or any other Court.

Third, ten third party witness are neither potentially subject to Touhy regulations nor in the custody or protection of the U.S. government.[5] The parties have agreed that any parties wishing to depose these witnesses will commence attempts to serve any of these witnesses who are located within the United States with subpoenas or deposition notices within 30 days, and to seek any letter rogatory or similar request necessary for conducting depositions of any of those witnesses residing outside of the United States within 30 days.

## II.     Class Certification Discovery

The defendants and plaintiffs in *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Invest. et al.*, Case No. 04-1923 anticipate limited class certification discovery. This discovery will include the depositions of the three named class representatives and possibly some limited interrogatories aimed at determining whether the requirements for class certification are met.[6]

## III.    Expert Discovery

Plaintiffs' Position on Section 3(c)

The plaintiffs understand the Court's inquiry at section 3(c) of the May 22, 2019 Scheduling Order (ECF No. 5432) to be asking whether plaintiffs contemplate expert affidavits or testimony in connection with any anticipated motions for summary judgment by the merits defendants or renewed motions to dismiss by the personal jurisdiction defendants, and whether there may be overlap with respect to any such expert declarations or testimony between the merits and personal jurisdiction defendants.

---

[5] These witnesses are Cathy Hawara; Enaam Arnaout; Randall Todd Royer; Ahmed Ali Lootah; Alan S. Fine, Esq.; Mohammad Al-Juhani; Muhammad Abdul-Hamid; Mustafa Osman Ismail; Rustam Shah Mahmand; and Ziaul Haq Amarkhil.

[6] The parties continue to agree that the O'Neill plaintiffs will move for class certification thereafter so that the Court can decide class certification issues prior to ruling on dispositive motions. The parties further continue to request that, before the Court determines a schedule for class certification briefing, the parties be permitted to meet and confer and make recommendations to the Court regarding that schedule.

The Honorable Sarah Netburn
May 31, 2019
Page 4 of 7

Initially, the PECs do not know whether any of the merits or personal jurisdiction defendants (aside from Dallah Avco, which is addressed below) intend to rely on experts or present expert testimony in support of any renewed motions to dismiss or motions for summary judgment they may file at the conclusion of discovery.  To the extent that any defendant will rely on any expert testimony or opinions in support of any future motion practice, the PECs do intend to depose such experts, and anticipate that they will likely need to offer their own rebuttal experts to respond.

On behalf of the plaintiffs, the PECs do anticipate presenting expert testimony in opposition to any motion for summary judgment by a merits discovery defendant or renewed motion to dismiss by any of the personal jurisdiction defendants.

In the case of merits discovery defendants Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO"), and the individual personal jurisdiction defendants who headed those organizations (Abdullah Omar Naseef, Abdullah bin Saleh al Obaid, Abdullah bin Mohsen al Turki, and Adnan Basha) ("the charity official defendants"), the PECs do expect that the expert opinions and testimony that plaintiffs will proffer will substantially overlap.  In this regard, plaintiffs note that the Second Circuit's decision remanding the charity official defendants for jurisdictional discovery recognized that the theories of jurisdiction advanced as to the charity official defendants were inextricably intertwined with the claims that the charities they headed provided material support and resources to al Qaeda. *O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on September 11, 2001*), 714 F.3d 659, 678-679 (2d Cir. 2013).  The relationships between those charities and al Qaeda, and the nature and timing of the support they provided to al Qaeda, are therefore directly relevant to the jurisdictional inquiries as to those charity official defendants.  For that reason, the PECs respectfully submit that expert affidavits or testimony they will offer with respect to the charities will also be relevant to any further motion practice by the charity official defendants.  Relatedly, the PECs anticipate that the charity official defendants will argue, in support of any renewed motions to dismiss, that the charities they headed did not knowingly provide material support and resources to al Qaeda during the period the charity officials headed those organizations, as a predicate for seeking to avoid the jurisdiction of this court.  The expert affidavits and testimony the PECs anticipate offering with respect to the MWL and IIRO will be directly responsive and relevant to any such arguments.  For these reasons, the PECs do believe that any schedule relating to expert proceedings for the MWL, IIRO, and the charity official defendants should coincide.

<u>Merits Defendants' Position on Section 3(c)</u>

The PECs and Merits Defendants have conferred and agree that expert witness disclosures and depositions should take place following the close of third party witness depositions on liability and before the filing of dispositive motions.  The PECs and Merits Defendants request that, before the Court determines a schedule for expert disclosures and depositions, the PECs and Merits Defendants be permitted to meet-and-confer and make recommendations to the Court regarding that schedule.

The Honorable Sarah Netburn
May 31, 2019
Page 5 of 7

### Jurisdictional Defendants' Position on Section 3(c)

To the extent that the Court is inclined to permit the use of experts in response to the Jurisdictional Defendants' renewed dispositive motions on jurisdiction, the Jurisdictional Defendants should be entitled to the discovery allowable under the rules, *i.e.* the identification of the experts, the experts' reports, and an opportunity to depose the experts. Fed. R. Civ. P. 26(a)(2), (b)(4). Plaintiffs should be required within a reasonable time to disclose the identities and reports of any experts they intend to use. Any expert(s) the Jurisdictional Defendants use on renewed dispositive motions will be only to rebut Plaintiffs' expert(s), and therefore any expert identification and reports by them will follow their receipt of Plaintiffs' report(s). Fed. R. Civ. P. 26(a)(2). For the reasons articulated in the parties' joint status letter dated April 23, 2019 (ECF No. 4495), this expert witness discovery should not await the conclusion of fact discovery with respect to the Merits Defendants, KSA, and Dallah Avco.

### Plaintiffs' Position on Section 3(d)

The PECs understand the inquiry at section 3(d) of the Scheduling Order to merely request that the PECs, Kingdom of Saudi Arabia, and Dallah Avco state whether they anticipate seeking to offer expert testimony in the jurisdictional proceedings as to the Kingdom or Dallah Avco and, if so, to identify whether such testimony is likely to overlap. The PECs do not understand the Court's Order to have requested substantive briefing on the admissibility of such expert testimony, as it would be premature to address such issues at this time. However, insofar as the PECs anticipate the Kingdom may nonetheless seek to interject premature and unsolicited argument on the point, the PECs simply note that the courts have recognized that expert testimony is both appropriate and often critical as to both jurisdiction and liability in terrorism cases under the Foreign Sovereign Immunities Act. *See Owens v. Republic of Sudan,* 864 F.3d 751 (D.C. Cir. 2017).

On the straightforward points the Court asked the parties to address, the PECs do anticipate that plaintiffs will offer expert affidavits and testimony in support of their theories of jurisdiction as to Saudi Arabia and Dallah Avco, and also anticipate that expert testimony relating to the Kingdom and Dallah Avco will partially overlap.

Given that document discovery remains ongoing in the proceedings as to the Kingdom, and depositions of Kingdom officials have not yet begun, the PECs are not yet certain as to the scope and nature of expert testimony that may be appropriate and necessary with respect to the jurisdictional inquiry as to Saudi Arabia. However, plaintiffs already have offered several affidavits from experts with specialized knowledge in the fields of counterintelligence, counterespionage, and counterterrorism, and expect that similar testimony will be proffered in the future. *See* Affidavit of Michael T. Rochford (ECF No. 3783-6); Affidavit of David Mitchell (ECF No. 3783-7); Declaration of Stephen K. Moore (ECF 3780-4); Declaration of Catherine Mannherz Hunt (filed under seal on October 26, 2018); and Supplemental Affidavit of Michael T. Rochford (filed under seal on January 8, 2019).

Because the jurisdictional inquiry relating to Dallah Avco focuses on whether it provided

The Honorable Sarah Netburn
May 31, 2019
Page 6 of 7

a "ghost job" or "cover employment" to obscure Omar al Bayoumi's role as a covert agent for the Saudi government, *O'Neill*, 714 F.3d at 678-679, certain of the expert opinion and testimony relevant to the claims against the Kingdom will also be relevant to the jurisdictional inquiry as Dallah Avco.

The Court already has ordered that discovery proceedings as to the Kingdom and Dallah Avco proceed on a common schedule. *See* Order at ECF No. 4389. While it is premature at this time to set any schedule for expert discovery in relation to those defendants, the PECs do believe that the common schedule should be maintained during the expert phases.

Finally, the PECs do not believe that the expert proceedings as to the Kingdom and Dallah Avco need to be linked to the schedule for any of the other defendants.

Kingdom of Saudi Arabia and Dallah Avco's Position on Section 3(d)

The Kingdom of Saudi Arabia ("Saudi Arabia") takes the position that expert testimony is neither necessary nor appropriate before the parties proceed to brief a renewed motion to dismiss. In his March 28, 2018, decision, Judge Daniels permitted Plaintiffs only "to conduct limited and targeted jurisdictional discovery critical to answering" a single factual question: "whether and to what extent Thumairy, Bayoumi, and their agents took actions in 2000, at the direction of more senior Saudi officials, to provide assistance to [Nawaf Al] Hazmi, [Khalid Al] Mihdhar, and other 9/11 hijackers." ECF No. 3946 at 23. In ordering this "limited and targeted" factual discovery, Judge Daniels never cited or relied upon any of Plaintiffs' so-called "expert" testimony, including the declaration of Michael Rochford, who purported to be able to say that "Thumairy and Bayoumi provided support to Hazmi and Mihdhar pursuant to a highly coordinated, state-run and initiated covert operation." ECF No. 3783-6 ¶ 23. Indeed, on the central question of "the nature and scope of [Al Bayoumi's and Al Thumairy's] agency," Judge Daniels observed that "the party in the best position to shed light on that inquiry is Saudi Arabia." ECF No. 3946 at 23.

The jurisdictional inquiry ordered by the Court is limited to answering the narrow factual question of whether two Saudi nationals or their agents (1) assisted two 9/11 hijackers; and (2) did so at the direction of senior Saudi officials. *See* ECF No. 3948 at 1 (acknowledging "limited" scope of "jurisdictional discovery on specific factual allegations critical to the immunity determination"). That inquiry requires the Plaintiffs to produce actual evidence in support of their claims, and Plaintiffs should not be permitted to make up for the lack of such evidence with conclusory speculation by a so-called "expert." Expert testimony is not appropriate in a case like this where the finder of fact is faced with a "simple question for which [it] need[s] no help," and where expert testimony "would only complicate, not assist, the [fact-finder's] decision." *United States v. One Parcel of Property Located at 31-33 York Street, Hartford, Conn.*, 930 F.2d 139, 141 (2d Cir. 1991); *see also* Fed. R. Evid. 702 (expert testimony must "help the trier of fact"). In this case, any "expert" testimony would simply be "a vehicle for factual narration," which is not "traceable to a reliable methodology" and "easily invade[s] the province of the [fact-finder]." *SEC v. Tourre*, 950 F. Supp. 2d 666, 676 (S.D.N.Y. 2013).

The Honorable Sarah Netburn
May 31, 2019
Page 7 of 7

Accordingly, Saudi Arabia respectfully requests that the Court preclude Plaintiffs from using any affirmative expert testimony to support their opposition to Saudi Arabia's upcoming renewed motion to dismiss.

If, however, the Court does permit Plaintiffs to use affirmative expert testimony, that testimony should be disclosed prior to the filing of the renewed motion to dismiss, and Saudi Arabia reserves the right to disclose its own expert testimony and to take the deposition of any expert witness that may be used against Saudi Arabia. To the extent there is any overlap between expert discovery conducted in the case against Saudi Arabia and expert discovery conducted in the cases against other defendants, Saudi Arabia respectfully requests that any such expert discovery not unduly delay the briefing schedule for Saudi Arabia's renewed motion to dismiss.

Dallah Avco takes no position on Saudi Arabia's position that expert submissions should not be permitted at all on the renewed motions to dismiss. In the event the Court decides to allow expert submissions, Dallah Avco would expect to submit a declaration from its Saudi employment law expert. Dallah Avco does not believe that this expert's opinion would be relevant to the claims against the Merits Defendants or the six Jurisdictional Defendants identified in footnote 1 of this Court's order. If the Court decides to allow expert submissions, Dallah Avco's position is that the Court should set a schedule for reports and depositions.

Separately, both Saudi Arabia and Dallah Avco take the position that the PECs, Saudi Arabia, and Dallah Avco should each be required to identify any fact witness from whom they intend to submit a declaration or affidavit in connection with the renewed motion to dismiss by a date certain within the fact discovery period sufficient to permit that person to be deposed.

Respectfully submitted,

/s/ Alan R. Kabat

Alan R. Kabat
Steven T. Cottreau
*Defendants' Executive Committee*

/s/ Sean P. Carter

Sean P. Carter
Jerry S. Goldman
James P. Kreindler
Robert T. Haefele
*Plaintiffs' Executive Committees*

cc:   Chambers of the Honorable George B. Daniels
      All MDL Counsel of Record (via ECF)