J5DJTERC                        Teleconference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS ON              03 MD 01570 GBD SN
    SEPTEMBER 11, 2001
4

5   ------------------------------x
                                              May 13, 2019
6                                             11:00 a.m.

7   Before:

8                           HON. SARAH NETBURN,

9                                          U.S. Magistrate Judge

10

11  APPEARANCES:

12  PLAINTIFF EXECUTIVE COMMITTEE
    BY:  STEVEN R. POUNIAN, Esq.
13       SEAN P. CARTER, Esq.
         ROBERT T. HAEFELE, Esq.
14       ANDREW J. MALONEY, Esq.
         JERRY S. GOLDMAN, Esq.
15       JAMES P. KREINDLER, Esq.
         MEGAN BENNET, Esq.
16       BRUCE STRONG, Esq.
         ARTHUR ARMSTRONG, Esq.
17       WILLIAM N. CLARK, Esq.
         JEANNE O'GRADY, Esq.
18       CAITLYN VIDASOLO, Esq.

19

20  GEOFFREY S. BERMAN,
         United States Attorney for the
         Southern District of New York
21  SARA NORMAND,
    JEANNETTE VARGAS,
22       Assistant United States Attorneys

23  Also Present Telephonically
         ROBERT KRY, Esq.

24

25

J5DJTERC                    Teleconference

1              (Teleconference in Open Court)

2              THE COURT:  Good morning, everybody.  Please be

3     seated.

4              (Case called)

5              THE COURT:  I believe we have Mr. Kry from MoLoLamken

6     on the phone.  Is that correct?

7              MR. KRY:  Yes, your Honor.

8              THE COURT:  Welcome.  Welcome to all of the people who

9     are here in the gallery.  I am always happy to have you in the

10    courthouse and the courtroom, so welcome.

11             The purpose of today's conference is one of

12    scheduling.  So I have a letter from April 16th that was

13    updating me on the status of the FBI production, and I believe

14    that the FBI and the plaintiffs' executive committee have

15    differing views how we should proceed.  I understand from this

16    letter that the plaintiffs' executive committee intends to file

17    one or more motions in connection with Department of Justice's

18    production.

19             Mr. Pounian, you will be taking the heat on this?

20             MR. POUNIAN:  Yes, your Honor, at this point.  Mr.

21             Carter is also going to have some things to say.

22             THE COURT:  Make sure the microphone is close enough

23    so everyone in the room can hear.

24             MR. POUNIAN:  We asked for this hearing because we

25    reached an impasse for the first time with the FBI regarding

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

J5DJTERC                          Teleconference

1    four witnesses that we requested documents regarding four Saudi

2    government employees who had ties to al-Bayoumi and al-Thumairy

3    in Southern California in the Year 2000.

4         We must bring this motion to compel with regard to

5    those four Saudi government employees as to whom we requested

6    documents, but there is also another question, your Honor, that

7    has been raised that seems to be percolating in the case now.

8    There is a serious question that we have as to whether the FBI

9    intends to produce any documents regarding the Saudi government

10   employees who worked with al-Bayoumi and al-Thumairy to provide

11   assistance to the 911 hijackers.

12        I wanted to raise with your Honor the various issues

13   that we see that are now coming to the fore in the case because

14   we reached a point where there are potential impasses that are

15   about to happen, and we need to hear from the FBI regarding

16   those.  We feel like there has been a lot of delay in the case,

17   delay in terms of a response on certain key issues in the case,

18   first and foremost of which is the 2012 FBI report.

19        If I may, your Honor, if I could pass this up to the

20   court?

21        THE COURT:  This is the report that was referenced

22   when we appeared together and there was a question whether it

23   was going to be produced in an unredacted form?

24        MR. POUNIAN:  That's correct, your Honor.  It is on

25   the third tab, the tab of this group of documents.  Your

J5DJTERC                         Teleconference

1    Honor's familiar with this report.  We had discussed it before,

2    and if we go to the third tab, there is a document, it is a

3    four-page document, and on the third page is a synopsis of the

4    subfile investigation, your Honor.  The name of that subfile

5    investigation is blank.  It is classified, and on this page it

6    refers to that subfile investigation name three times.

7            We're not interested in the name, your Honor, but we

8    are interested in the particular information regarding this

9    investigation, and it says the main subjects of this

10   investigation, which is any individuals known to have provided

11   substantial assistance to the hijackers.  The name of the

12   individuals is al-Thumairy, al-Bayoumi, who your Honor is

13   already familiar with, and a third and possibly fourth person,

14   so there is a third man there that is listed that is the

15   subject of our discovery.  We have been asking for over a year

16   for an unredacted copy of this report.

17           On the final page of the document and in the very

18   final paragraph, it has the information regarding this third

19   man as to whom the information is still being withheld from

20   production.

21           It says that this third person had some contacts with

22   al-Bayoumi, and also there is evidence that this person tasked

23   al-Thumairy to meet with assisting the hijackers.  We believe,

24   your Honor, this third person is a Saudi government official,

25   superior to al-Thumairy and al-Bayoumi, and we have been asking

J5DJTERC                    Teleconference

1    for this document for over a year, as I said.

2              THE COURT:  May I stop you for a second.  You said,

3    "We're not interested in the name."  What name is it you're not

4    interested in?

5              MR. POUNIAN:  The name of the investigation.  They

6    classified, on Page 3 it says synopsis of -- blank.  That is

7    the name of whatever the FBI has assigned to this particular

8    investigation of Saudi government officials who provided

9    assistance to the hijackers.  That is the code name, but we are

10   not asking for the code name.  We're asking for the

11   information.

12             THE COURT:  Thank you.

13             MR. POUNIAN:  In the final paragraph I said we have

14   got the new copy of this document just a week ago from the FBI.

15   They produced an interim version of this to us, and in the

16   interim version there are essentially no changes from the

17   document that is before your Honor right now.

18             They have made on this final page, on the final key

19   page which provides the information regarding this third man,

20   there is no additional information that has been provided by

21   the FBI.

22             Now they have told us that this is an interim decision

23   that they've made and that they're waiting to make a final

24   decision, but the things they're citing that they need to make

25   a final decision on are approvals from a foreign government,

J5DJTERC                        Teleconference

1    and the only things that require approval in this document from

2    a foreign government have nothing to do with the final page of

3    the document.  There are no approvals necessary.  We know from

4    the codes on this document there are no approvals necessary

5    from a foreign government to release any of this information.

6            The decision is solely the decision of the FBI's, and

7    they have had over a year to make the decision, and we're still

8    waiting for that decision, and if the decision is no, we're not

9    going to release the information, we want to know that as soon

10   as possible so we can file a motion on this in addition to

11   those four other employees that I mentioned, your Honor, as to

12   whom they will not release any documents.

13           If I could turn, your Honor, to those four employees,

14   they were all Ministry of Islamic Affairs officials who worked,

15   who were in California and worked, one of whom was a superior

16   to al-Thumairy, three of whom worked under al-Thumairy and all

17   four of them had specific ties to al-Bayoumi during the key

18   period of time in late 1999 and 2000.

19           One of them was a superior of al-Thumairy named

20   al-Jraithen, who your Honor has heard about.  He is the

21   gentleman who checked into a hotel with al-Bayoumi.  He met up

22   with al-Bayoumi and checked into a hotel in December 1999,

23   three weeks before the hijackers arrived, and that was a hotel

24   a block away from the King Fahad Mosque where al-Thumairy

25   installed by Saudi Arabia as the Imam.

J5DJTERC                       Teleconference

1          We are interested in getting the documents the FBI has

2     as to al-Jraithen.  There are two other gentlemen part of this

3     group of four.  There is al-Sudairy and al-Sadhan, who your

4     Honor has already heard about before, and they worked under

5     al-Thumairy and they also had moved to San Diego during the

6     time of the relevant events where they were assisted by

7     al-Bayoumi and they moved into the same rooming house that the

8     hijackers lived in in San Diego.

9          So we have requested this information.  The FBI has

10    completely refused to produce any documents regarding the four

11    individuals.  Your Honor, there are other questions that we

12    have in addition to these four.  We have asked for documents

13    regarding two officials at the embassy.  One is Mussaed

14    al-Jarrah, and the other is Kalid al-Sowailem, and we have

15    questions.  We have not seen any documents.  They don't seem to

16    have any objection as to those two officials, who both had

17    contacts with al-Thumairy and al-Bayoumi.  We haven't heard any

18    objection yet.

19         However, we haven't seen any of the key documents that

20    we would expect to find from the FBI in this case and we're

21    waiting.  So we need to know are they going to produce those

22    documents regarding government officials?

23         In addition, there are other documents.  This is an

24    investigation.  The code name investigation is about Saudi

25    government officials, about al-Thumairy and this third man.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J5DJTERC                          Teleconference

1   This is a 1912 document.  There are documents from each year

2   after that, not exactly like this document, but they're reports

3   that are prepared.  There are trip reports and other

4   analytic-type documents that are ordinarily prepared by the FBI

5   in an investigation such as this.  None of them have yet been

6   provided, and we don't even know whether they're in the

7   pipeline coming out from the FBI, whether they're reviewing

8   them.

9           So we need to make a motion about this, need a

10   straight answer from the FBI on the to 2012 report, whether

11   they'll going to release it or not, the final page, the key

12   information, and what is going on with the other embassy

13   employees and what is also going on with these other analytic

14   documents, other reports that the FBI is holding.  That is the

15   basic point, your Honor.  Thank you.

16           THE COURT:  Thank you.

17           MR. CARTER:  Just a few points.

18           Mr. Pounian has given you a lot of the specifics of

19   where we are now.  I certainly want to take a step back because

20   I think this is dropped in the court's lap without a whole lot

21   of context.  The background of this, the original FBI

22   investigation was the Pentagon Twin Towers bombing

23   investigation.  Within the course of that investigation, the

24   FBI began in the first instance looking at al-Bayoumi,

25   al-Thumairy and others.

J5DJTERC                      Teleconference

1          Now, we would expect, based on normal FBI procedures,

2     that sub-files would have been created within the Penttbom

3     Investigation for subjects such as al-Bayoumi and al-Thumairy.

4     Fast forward to 2007.  The FBI opened a special subfile

5     investigation to focus on whether or not the circle of

6     conspirators who provided support to al-Hazmi and al-Mihdhar,

7     the 911 hijackers, may have been broader than originally

8     suspected.

9          We know about the subfile investigation, or first

10    learned about it from a report called the 911 Review Commission

11    Report that was issued in 2015.  It explains specifically that

12    this was an investigation focused on the circle of conspirators

13    who helped al-Hazmi and al-Mihdhar in New York, and it

14    identifies a number of people who are of high relevance to that

15    investigation, specifically al-Bayoumi, al-Thumairy and others.

16         And to the point that Mr. Pounian just made in

17    describing why Mr. al-Bayoumi is significant in the context of

18    the subfile investigation, it specifically notes he assisted

19    al-Hazmi and al-Mihdari as well as al-Sadhan and al-Sudairy

20    during respective times in San Diego.  From this report -- and

21    you have this at Tab 2, your Honor -- from this report we know

22    that al-Sadhan and al-Sudairy are relevant actors within the

23    context of this subfile investigation based on their

24    engagements with al-Bayoumi.

25         The 911 Review Commission Report, in turn, included a

J5DJTERC                    Teleconference

1   footnote referencing the 2012 summary report that your Honor

2   has before you, and at that time all we knew about the summary

3   report was that it included a specific quote that al-Thumairy

4   had immediately assigned a person to take care of al-Hazmi and

5   al-Mihdhar when they arrived in the United States, which was a

6   significant data point, advancement of the investigation now

7   having al-Thumairy identified in that way.

8           The 2012 summary report was then, your Honor, released

9   in 2016 in redacted form in response to a Touhy FOIA request

10  from a journalist.  It then included the details Mr. Pounian

11  has described of both al-Bayoumi, al-Thumairy and an individual

12  who tasked the hijackers are known to have provided substantial

13  assistance.

14          That all leads us and led up to the issuance of the

15  five plaintiffs of the subpoena.  We issued the subpoena within

16  a handful of days within the court's March 28, 2018 decision.

17  The subpoena included 10 demands.  Four of those demands were

18  for specifically identified documents, individual documents.

19  One was the 2012 summary report.  Six of the remaining demands

20  sought categories of documents, mostly documents from either

21  the Penttbom file, the subfile or other FBI investigative files

22  relating to al-Bayoumi, al-Thumairy, the King Fahad Mosque

23  where the hijackers received the assistance, al-Sowailem and a

24  few other folks.

25          In response, the FBI told us that this is far too

J5DJTERC                    Teleconference

1   broad, we could never possibly respond to this, and we entered

2   into a series of negotiations where we attempted to modify the

3   subpoena down.  All of the modifications we offered were

4   essentially unsatisfactory to the FBI and Department of

5   Justice.  What the FBI instead proposed, they would engage in a

6   search for a subset of core documents relevant to the inquiry

7   described in Pages 18 to 23 of the Court's March 28, 2018

8   decision.

9           We had considerable apprehension about that at the

10  time till last summer when we were last discussing it because

11  it is murky to us what exactly was happening.  We don't know

12  the criteria they are using to conduct the searches.  We are

13  not entirely clear what repositories are being searched.  We

14  are not really clear on the criteria that are being used to

15  assess whether or not documents are relevant to the inquiry and

16  the court's decision.  We don't believe our discovery on the

17  FBI is limited to the scope of discovery authorized of the

18  kingdom under the Foreign Sovereign Immunities Act, a very

19  different consideration.

20          We reached an impasse with regard to some specific

21  documents and people that we know of we asked the FBI for.  We

22  likely also are going to be seeking some clarification about a

23  few other issues.

24          One, we need some clarity about the methodology that

25  the FBI is using to conduct these searches so we can understand

J5DJTERC                         Teleconference

1    a little bit better what it is using for search terms, how it

2    is going about identifying documents they produce so us, so we

3    have some capacity to challenge any deficiencies in

4    methodologies being employed.

5              We need to know whether or not all of the relevant

6    records related to al-Bayoumi, al-Thumairy and other principals

7    were migrated over from the original Penttbom file to the

8    subfile.  We understand the FBI is looking essentially in the

9    subfile.  If a lot of stuff was left behind in the Penttbom

10   investigation, there is potential that highly relevant

11   information is being excluded.

12             We know need to know where the FBI stands in this

13   process with some particularity.  They have identified an

14   approach that they were willing to undertake.  We just need to

15   know are searches still ongoing?  How many documents are still

16   slated for review?  And we need to have some sense of a

17   timeline for the FBI to complete its process because at the

18   end, the likelihood is that we're going to have some

19   disagreements potentially about objections the FBI has asserted

20   as basis for withholding documents, and we need to get to a

21   point in the process to litigate those as well.

22             We have the specific issues we reached impasse on now,

23   and also in the backdrop we have some of these questions about

24   methodology, timeline on those related issues we need to get

25   before the court.  Thank your Honor.

1           THE COURT:  Thank you, Mr. Carter.

2           MS. NORMAND:  Good morning, your Honor.

3           I think I would also like to start by stepping back a

4   bit, and I appreciate that counsel pointed the court to the

5   subpoena itself.  It did seek basically 10 categories of

6   records, one of which was any and all records referring or

7   related to the work and investigation of the subfile team.

8           So while they did seek some specific records, they

9   sought an extraordinarily broad amount of records.  As we had

10  indicated to the court and to the plaintiffs previously, the

11  subfile investigation is one that involves multiple subjects

12  and over a thousand serials, which is a term used to describe a

13  file which may, in turn, contain attachments.  So we're talking

14  about an extraordinarily broad request.

15          As counsel also indicated, the investigation is a

16  classified investigation.  Not only the name of the

17  investigation, but many of the subjects and the FBI's

18  activities in relation to that investigation are classified.

19  This really is an extraordinary request, that it is not an

20  ordinary civil discovery demand.

21          In response to the subpoena in May, we identified in a

22  lengthy document our objections to the subpoena and to the

23  Touhy request and provided an interim response.  We did have

24  some discussions in which we asked for plaintiffs to

25  significantly narrow their request.  They largely declined to

J5DJTERC                          Teleconference

1    narrow the request, and so what the FBI proceeded to do was to

2    identify a subset of records that the FBI believed to be

3    potentially relevant to the narrow issues on which the court

4    has authorized limited jurisdictional discovery of the Kingdom.

5          Those core records, as we sometimes call them,

6    included the 2012 report, it included portions of other

7    identified reports in the subpoena that pertain to al-Bayoumi

8    and al-Thumairy.  It identified, it included various interview

9    reports, other kinds of records of a more analytical nature,

10   all of which were tied to the specific questions on which the

11   court had authorized limited jurisdictional discovery, and we

12   have been clear about that to the plaintiffs throughout.

13         The United States Attorney asked the FBI to conduct a

14   privileged and declassification review of those four records,

15   which has been ongoing since the fall.  We have a team of

16   individuals from FBI headquarters as well as field personnel,

17   assisted by the U.S. Attorney's Office, that has been reviewing

18   documents line-by-line.

19         Most if not all of the records are classified records,

20   and so the materials that have been produced have had to be

21   reviewed line-by-line and produced through a process that

22   requires multiple layers of review to ultimately sign off by

23   through the declassification review procedures of the FBI.

24         We have now produced four tranches of records.  The

25   first began in I believe it was November, and the most recent

J5DJTERC                    Teleconference

1    tranche of records was produced on May 1st.  So far we have

2    produced 364 pages of records in redacted form.  We withheld --

3    we, the FBI -- has withheld eight records in full.  We provided

4    a privilege log with regard to the records that are withheld in

5    full, and the records that have been produced in redacted form

6    are coded with an accompanying heat that identifies the basis

7    for the redactions.

8              As for timing, we expect at least two further tranches

9    of records.  It may be more than two, but there are essentially

10   two categories of records that remain to be processed.  The

11   first is the remaining of the core records.  Those include

12   certain evidentiary materials that the plaintiffs have sought.

13   They include portions of a joint intelligence report, an OIG

14   report, the portions of those reports that pertain to the

15   matters on which the court has authorized jurisdictional

16   discovery and some other records of a more analytical nature.

17             We don't have a firm time-frame to finish production,

18   but the FBI is going to do its best to complete review of those

19   records within 60 days.  That is our firm goal.  Sometimes

20   things come up that make it more difficult to do that.  We have

21   learned that throughout this process.

22             I should add that some of the records involve equities

23   of other government agencies or foreign governments where

24   coordination is required for those outside of the FBI, and that

25   can take time.  That said, the FBI is really hoping to complete

J5DJTERC                          Teleconference

1   its review of the core records, the subset of records, within

2   60 days.

3          The second category of records remain to be processed

4   are banking and phone records.  With the court's permission, I

5   am going to let Ms. Vargas address that category of records and

6   our plan for those.

7          MS. VARGAS:  Good morning, your Honor.

8          Plaintiffs have also requested, as Ms. Normand alluded

9   to, phone and banking records for certain individuals.  We are

10  close to the end of our collection process for those records.

11  To date, we have gathered approximately 2500 pages of

12  responsive phone and banking records which we believe represent

13  the bulk of the records.  We are still conducting some limited

14  supplemental searches in a few locations, but once we have done

15  that, then our search will at that point be complete.

16          It appears that many of these records have been

17  obtained by grand jury subpoena, which raises some

18  complications.  Because these are grand jury records, they're

19  subject to the protections of Rule 6(e), and so we're unable to

20  turn those records over without obtaining a Rule 6(e) court

21  order.

22          Rule 6(e) requires that a petition for such an order

23  be filed in the court that originally issued the grand jury

24  subpoena.  Because these records were obtained many years ago,

25  it has proven to be a little tricky to determine which courts

J5DJTERC                    Teleconference

1    issued which subpoenas for which records.  We have been doing

2    that analysis, and we have located at least three jurisdictions

3    that have issued grand jury subpoenas with respect to these

4    relevant records, and we are attempting to determine if there

5    are other subpoenas issued, and we hope we will be able to

6    identify all such subpoenas, although ultimately we may not be

7    able to do so.

8            THE COURT:  Would it be satisfactory, once you have

9    exhausted your efforts, to get a blanket order from me to

10   protect the FBI in the process more broadly?

11           MS. VARGAS:  Yes, your Honor, that is our plan for

12   those records, for which we can't link a particular subpoena to

13   a particular set of records.  Then we would hope we could come

14   to your Honor with those records and obtain a Rule 6(e) order

15   even if it's perhaps not exactly the procedure envisioned by

16   Rule 6(e) itself, but at this point that may be the only option

17   available.

18           With respect to the courts that we are are able to

19   identify the issuing jurisdiction, our current plan, if your

20   Honor approves, is to submit motions to transfer the venue of

21   those petitions to this Court pursuant -- and there is a

22   provision in Rule 6 that provides for that, it is Rule

23   6(e)(3)(G).

24           For example, if a grand jury subpoena was issued in

25   the Southern District of California, we can file a petition and

J5DJTERC                       Teleconference

1    a motion to transfer that petition to this Court, since the

2    records are sought for use in this judicial proceeding, and

3    that court can then transfer the petition here for your Honor

4    to issue the relevant Rule 6(e) order.

5          We assume at that point the PECs could support such a

6    motion and file papers in support of why those documents were

7    needed with respect to this litigation, which is a showing

8    obviously the FBI is not in the best position and the

9    plaintiffs are better.

10         THE COURT:  Is that the most expeditious way to file a

11   motion for a transfer of the issue and then have this Court

12   rule on the merits rather than just file a motion in the first

13   instance in the issuing court?

14         MS. VARGAS:  This is what their Rule 6(e) procedures

15   envision.  There is a provision in Rule 6(e) that allows for a

16   court to authorize disclosure if the records are needed in aid

17   of a judicial proceeding, but there is a subpart that says if

18   the judicial proceeding is in another jurisdiction, in another

19   court, the court shall transfer the petition to the court which

20   has the judicial proceeding.

21         I think there are provisions that allow for the

22   originating court to have perhaps an advisory opinion if

23   needed, if there were some issues with the confidentiality that

24   one court wanted to advise the other court, but that is the

25   procedure that is set forth in the rules.  That is why we were

J5DJTERC                       Teleconference

1   contemplating proceeding in that fashion.

2             THE COURT:  Thank you.  Ms. Vargas, how quickly, if

3   you identified at least three of the core issues, can we get

4   those motions to transfer up and running?

5             MS. VARGAS:  Yes, your Honor, we are working on that

6   now, and so we hope to have motion papers fairly shortly, but

7   we are working on that in the short term.

8             THE COURT:  They say beauty is in the eye of the

9   beholder.  What is your, "fairly shortly"?

10            MS. VARGAS:  In the next two weeks we hope to have

11  papers filed.

12            THE COURT:  Yes, Ms. Normand.

13            MS. NORMAND:  I would like to return to some of the

14  specific matters that Mr. Pounian raised.

15            I guess, first of all, I would begin with the four

16  individuals or perhaps five individuals he has identified.  I

17  think it is important to make the point that three of those

18  individuals, as we understand them, Mr. al-Jraithen, Mr.

19  al-Sadham and Mr. al-Sudairy, are individuals as to whom this

20  Court has ruled are not a proper subject of jurisdictional

21  discovery.  That was the basis for the FBI's position and is

22  the basis for the FBI's position that further searches for

23  documents related to those individuals are not warranted.

24            From the efficiency's response to the subpoena to the

25  request, we have made it clear that the court's limitations on

1   jurisdictional discovery have guided the FBI's searches, and in

2   our view it is not proper to ask the FBI or any government

3   agency to search more broadly than the limits of jurisdictional

4   discovery authorized by Judge Daniels and this Court, and that

5   is the basis for the FBI's position that it would not conduct

6   additional searches beyond the core records that it gathered

7   last summer for those individuals.

8           As to the other two, search of those two individuals

9   we understand are among those individuals as to whom the court

10  has permitted discovery or at least there is no dispute as to

11  that, and records concerning those individuals were part of the

12  FBI's search, so the FBI has searched for records concerning

13  those individuals.  I will add, I believe the FBI has produced

14  at least one record that refers to one of those individuals,

15  although I don't want to go into detail in court because the

16  documents themselves are subject to a protective order.

17          So that is the government's position, that the scope

18  of discovery from the FBI which, of course, the United States

19  is a sovereign as well, in addition to the foreign sovereigns

20  and the state sovereigns, of course, but that discovery of the

21  FBI should not be broader than discovery of the Kingdom itself.

22          The other piece is the 2012 summary report.  As Mr.

23  Pounian indicated, the FBI, at plaintiffs' request, has

24  produced an interim version of that document.  It has not yet

25  made a final determination as to the document in part because

J5DJTERC                     Teleconference

1       there is information in the document that has to be coordinated

2       with a foreign government.  Therefore, we don't believe

3       litigation is appropriate at this time with regard to that

4       document, but I would add, Mr. Pounian pointed you to the last

5       page of the document, and I believe the version he has

6       identified is the version that was produced under FOIA.

7               If you look, your Honor, there are codes on this

8       document that reflect the FOIA markings in the litigation per

9       the FOIA matter.  They refer to B-1 and B-3.  Now I am looking

10      at Page 3 and 4 of this document, and you'll see there are

11      redactions there, B-1 and B-3, on both pages.  I believe these

12      are redactions Mr. Pounian has pointed out to the court.  Those

13      redactions were litigated in a Freedom of Information Act

14      litigation that followed this FOIA request, and the court in

15      that case upheld the classification and the withholding of that

16      information as properly and currently -- as well as protected

17      from disclosure by the National Security Act, which is a

18      separate statutory protection in addition to classification.

19              That District Court decision is reported at 2017

20      WestLaw 746410, a 2017 decision from the Southern District of

21      Florida.  There is currently an appeal pending on various

22      issues in that case, including I believe this document before

23      the 11th Circuit.

24              This is information that another court has previously

25      determined to be properly classified as protected from

J5DJTERC                          Teleconference

1    disclosure by statute.  The FBI, nevertheless, reviewed this

2    document and at least at this time has determined the

3    information is not being declassified.  However, I will add

4    that there are additional documents remaining in the last group

5    of core records that pertain to issues that overlap with the

6    2012 report, and our view is that the FBI should be permitted

7    to complete its review of those records, and then to the extent

8    that there is going to be litigation over withholdings

9    potentially to include this information in the 2012 report,

10   that it will be most efficient and most appropriate to wait

11   until the FBI has issued a final determination both as to the

12   2012 report and as to other documents, including the later

13   documents that remain to be reviewed, as I said, the FBI is

14   going to do its best to complete that review within 60 days.

15           Obviously, if there are roadblocks along the way, we

16   can advise the court, but that is the schedule that we envision

17   and we will try our best to articulate.

18           THE COURT:  I think everybody is eager to get these

19   issues resolved, everybody in the courtroom.

20           Why would it not be efficient to work on parallel

21   tracks and so that the plaintiffs' executive committee can file

22   their motion?  That will be on the assumption that they're not

23   going to be doing anything else.  That will give the FBI the

24   benefit of their thinking as well why those documents are

25   necessary.  We can schedule a briefing so that their brief is

J5DJTERC                    Teleconference

1    filed before your 60-day deadline, I'll call it, to produce

2    your final tranche of documents.

3           And then you'll have the opportunity to make a final

4    decision as to what you're producing, and to the extent you're

5    not producing all or some of the documents, you will then file

6    your opposition to the motion.  It seems to me rather than wait

7    60 days, then have you say we're not producing everything, and

8    then set a schedule for the PECs, I would rather have them

9    working on this now, under the assumption they have all they're

10   going to get and maybe some of the issues will be mooted by

11   your conduct, but otherwise we'll move forward.

12           MS. NORMAND:  I would say two reasons, your Honor:

13           First of all, we haven't yet had any opportunity to

14   meet-and-confer with the plaintiffs regarding -- they haven't

15   met and conferred with us regarding specific withholdings.  We

16   obviously understand they're interested in this information

17   from the 2012 report, and certainly we understand why they're

18   interested in that, but as to any other documents that they are

19   interested in, we have not yet had those meet-and-confer

20   sessions.  We don't know which documents they intend to

21   challenge the withholding of, which redactions they're

22   concerned with.  These are things ordinarily parties would

23   meet-and-confer about before motion practice is filed.

24           Number two, the FBI needs to complete its review, and

25   if the plaintiffs make a motion to compel, we understand that

J5DJTERC                    Teleconference

1    the plaintiffs take the position that the United States would

2    need to assert the State Secrets Privilege in order to withhold

3    these documents in litigation.  We don't necessarily agree with

4    that position.  We believe that Touhy regulations and the

5    existing privileges and protections permit the government to

6    withhold the materials pursuant to Touhy regulations.

7            However, if ultimately the government needs to go

8    through that state secrets process, that is a lengthy process.

9    As the court may be aware, the State Secrets Privilege can only

10   be asserted by the head of the agency, which in this case would

11   be the Attorney General is the head of the Department of

12   Justice, of which the FBI is a component.

13           The privilege can only be asserted upon personal

14   consideration by the head of the agency of the documents or

15   information in question.  There are procedures in place at the

16   Department of Justice that require, before the Attorney General

17   is to review a state secrets assertion, for a committee to

18   review and sign off on it.

19           Those procedures need to be followed in order to

20   assert the State Secrets Privilege in response to any motion to

21   compel, and those procedures should only be invoked once and

22   not piecemeal.  The Attorney General should have an opportunity

23   to review all of the records that are potentially implicated

24   before making a final determination as to any privilege

25   assertion rather than doing it piecemeal.

J5DJTERC                    Teleconference

1           The FBI will not have completed its review until 60

2    days.  That's certainly our goal.  We wouldn't be in a position

3    to trigger the State Secrets process with regard to entirety of

4    the records until that review is completed.  For those reasons,

5    we think it makes sense to put off a motion to compel until the

6    FBI has completed its process.

7           That said, I do think that there are issues that are

8    probably ripe for the court's consideration now.  We believe,

9    for example, that the issues regarding the three individuals

10   who are mentioned, Mr. al-Jraithen and al-Sadham, Mr.

11   al-Sudairy, those are questions of the scope of discovery that

12   has been authorized by the court and its application to the

13   FBI.  There the parties have reached an impasse, and to the

14   extent the plaintiffs PEC wish the FBI to conduct additional

15   searches, and the FBI has declined to do that given the court's

16   prior rulings on those individuals, those are issues that we

17   think make sense to brief now.

18           THE COURT:  Thank you.  Yes, Mr. Pounian.

19           MR. POUNIAN:  Your Honor, I believe we got an answer,

20   I figure, if we would piece through that.  I think they're not

21   going to produce the final page of the 2012 report.  If that is

22   correct, your Honor, we should bring a motion to compel the

23   production of the final page of the 2012 report.

24           THE COURT:  I thought I heard her say they were still

25   undergoing that review.  It may ultimately be they're not going

J5DJTERC                        Teleconference

1     to --

2                 MR. POUNIAN:  They're undergoing a review because

3     they're getting approvals from a foreign government.

4                 THE COURT:  Correct.

5                 MR. POUNIAN:  The codes from the document that relate

6     to a foreign government don't have anything to do with the

7     final page of the document, and I may have -- I think I heard,

8     perhaps we could get an answer right now, are they going to

9     produce the final page unredacted of the 2012 report?  That is

10    the question.

11                MS. NORMAND:  Your Honor, that information has not

12    been declassified as of now.  However, the report has not yet

13    been finally reviewed by the FBI, and so I am not in a position

14    to say the final determination has been made as to any portion

15    of the report that has not been released.

16                THE COURT:  Can you answer whether or not the last

17    paragraph on Page 4 of the report, whether or not that, the

18    current status of that that you're awaiting a final, a final

19    decision by the FBI or whether or not you are awaiting a

20    decision by a foreign government?

21                MS. NORMAND:  That portion is not related to the

22    foreign government coordination I discussed earlier.  The

23    document as a whole has only been released in interim form at

24    plaintiffs' request.  Among other things, we are waiting for

25    coordination of the foreign government.

J5DJTERC                    Teleconference

1          THE COURT:  But just because the foreign government
2     hypothetically would say we are fine with you releasing
3     everything, that would not answer the question whether or not
4     you will release the last paragraph, is what Mr. Pounian is
5     most --
6          MS. NORMAND:  That's right, that's right.
7          THE COURT:  Is it fair to say that you are not
8     intending to release that final paragraph or that it is still
9     an issue for consideration?
10         MS. NORMAND:  Your Honor, I cannot say today that a
11    final determination has been made as to that, and the reason
12    is, as I mentioned earlier, there are additional materials that
13    require approval, documents that overlap some of this
14    information, and so I expect that a final determination will be
15    made as to not only this document, but those other materials at
16    the same time.  I am not in a position to say that a final
17    determination has been made even as to the last page of the
18    document.  That said, I want to be clear, there has been no
19    decision to declassify that information at this time.
20         It may very well be ultimately the information is not
21    produced.  I don't want to be unclear about that.  I am not in
22    a position to tell the court or the plaintiffs that a final
23    determination has been made as to the document.
24         THE COURT:  Is it your understanding -- what you just
25    said to me -- part of the determination whether or not to

J5DJTERC                    Teleconference

1    declassify this report will be informed by decisions about

2    other documents that are in the final tranche?

3            MS. NORMAND:  I believe that is a fair

4    characterization, your Honor, because there are documents in

5    the final tranche that overlap reasonably some of the same

6    issues as this one.

7            THE COURT:  Thank you.

8            MR. POUNIAN:  Your Honor --

9            THE COURT:  You have as much clarity as we can get.

10           MR. POUNIAN:  -- I have to note we asked specifically

11   for this document over a year ago.  I believe at the first

12   conference with your Honor last May, Mr. Carter spoke about

13   this report.  There has been discussions about it for a year,

14   and yet we are now here with an interim version of it and still

15   wanting more detail on an issue that is critical and key and

16   goes right to the heart of the jurisdictional discovery in the

17   case.  I don't think we're getting a straight answer at this

18   point, your Honor, but I'll move on to the next issue.

19           Last September after the subpoena, we gave the FBI a

20   list of eight witnesses, eight Saudi government employees as to

21   whom we wanted them to zero in and produce discovery.  We gave

22   them certain facts regarding those witnesses, and they started

23   doing that process.  They had two tranches in which they

24   provided some information, and then we learned just last month

25   that as to three of the people, we would get nothing.  We hear

J5DJTERC                    Teleconference

1     now it is because of your Honor's ruling last November

2     regarding discovery with regard to the Kingdom.

3             Now, the question is, is there relevant information in

4     the FBI files relevant to this case?  The plaintiffs don't have

5     the information.  We are seeking discovery from the FBI.  The

6     FBI investigated all these individuals.  Each one of them has

7     ties to al-Thumairy and al-Bayoumi in California at the key

8     time of the key events.  Two of them stayed in the same rooming

9     house with the hijackers.

10            So we believe it is critical to get this discovery,

11    and I understand there is a prior ruling of this Court with

12    regard to the Kingdom that we may seek to reconsider with your

13    Honor, but we need the information from the FBI in part to do

14    that.  We don't have any other source of the information other

15    than from the FBI.

16            There is no reason for them to be holding back on a

17    subpoena from the plaintiffs in this case if they have the

18    information and it is relevant to the process here.  I can't

19    tell you what is in the files there, but I know that the FBI

20    investigated each one of these three people, al-Jraithen,

21    al-Sadhan and al-Sudairy, because they had ties at the critical

22    time.  Al-Jraithen came from Saudi Arabia to visit with

23    al-Bayoumi and with al-Thumairy and I believe to make the

24    arrangements for the hijackers to arrive three weeks later in

25    California.

J5DJTERC                      Teleconference

1            I believe it is critical information, and if they have

2     documents about it, we ask them to be produced via a protective

3     order to protect the information.  I don't understand what

4     prejudice there is to the FBI at this point.

5            Also with regard to the documents in this case, Ms.

6     Normand said they're all classified.  From what we understand,

7     any document that mentions the name of the code name of the

8     operation is classified automatically.  It could be a document

9     about a routine interview of a witness at a hotel.  Every

10    document that mentions the code name of the operation is

11    classified automatically.  Every document in this subfile

12    investigation of Saudi government officials is necessarily

13    classified simply because of that one title on the top of the

14    document that has the name of the operation on it.

15           Now, the government says they produced 364 pages to

16    date, and it has been over a year, your Honor.  The production

17    started, it was delayed and it started in November.  We are

18    aware from our own research that the government routinely

19    produces in other litigation 500 pages a month up to 10,000

20    pages a month they can process, the FBI can process in response

21    to other litigation.  In the Hillary Clinton email litigation,

22    they produced 500 pages a month, the same for the David

23    Petraeus litigation.

24           Other cases, up to 10,000 per month when there has

25    been a court order imposing that.  We still don't know what is

J5DJTERC                          Teleconference

1    in the pipeline, your Honor, and that is what Mr. Carter

2    pointed out earlier that gives us pause because we don't know

3    exactly what they're going to produce, what they plan, what is

4    on the list.

5          So we have a lot of uncertainty and we're trying to

6    nail down as many things as we can because we don't want the

7    process to keep going and get rolled over into a situation

8    where we are left several months from now and there is a lot of

9    pressure to get things wrapped up when we don't yet have the

10   information and we have got to go to the Attorney General of

11   the United States to have him review documents.  We would like

12   to get that done now.

13         THE COURT:  It seems to me there are at least two ways

14   to proceed.  One way would be to have a short briefing schedule

15   on the question of these three individuals and potentially on

16   the 2012 report.  I understand the government hasn't made a

17   final determination, but we can proceed on the assumption that

18   its final determination is the same as its interim

19   determination and seek a ruling on that.

20         Or I think we can do "and/or," we can brief all of the

21   issues in an entire motion to compel.  I am talking and

22   thinking at the same time.  I guess based on what you just said

23   to me, my proposed schedule that I threw out to Ms. Normand

24   probably doesn't work for you.

25         What I had suggested was you file your motion in 45

1    days, and that will give the government an opportunity to both

2    complete its final tranche and to get the benefit of your

3    authorities on some of the legal questions, and then they can

4    respond to the motion.  Some issues might be mooted by the

5    production and otherwise they'll just respond to the motion.

6              I guess the question for you, notwithstanding your

7    desire to move as quickly as possible, which I share, is does

8    it make sense for you to file your full motion to compel until

9    you've received the final production, and if the final

10   production isn't coming for 60 days, then would you rather have

11   this preliminary motion on these individuals and potentially

12   the 2012 report and then set a deadline for production and then

13   turn around for your motion to compel?

14             MR. POUNIAN:  A preliminary motion makes the most

15   sense, your Honor, because if we bring a broad motion to compel

16   now, we're going to be dealing with things we don't know, we

17   are not going to know the range of the production until it is

18   over, so I think there is going to have to be a motion at the

19   end of the production in any event if it is not satisfactory

20   because we don't know, we don't know what documents are in the

21   pipeline.

22             With regard to these individuals and with regard to

23   the 2012 report, I think we can file a motion, if that's your

24   Honor's decision?

25             MR. CARTER:  Could I add one thing?

J5DJTERC                        Teleconference

1              I think Mr. Pounian is right, and I think it largely

2      aligns with what Ms. Normand said.  There are a range of

3      objections that the FBI has indicated may be invoked with

4      regard to documents.  One is relevancy, which is the basis, as

5      we understand it, for declining to respond to these three

6      individuals.  There are potential objections based on

7      invocation of the Law Enforcement Privilege, the burden, and I

8      don't think that we necessarily will have all the architecture

9      around this to address these issues until we get towards the

10     end of the process.

11             What I would believe would be the best course is for

12     us to focus on the specific areas of impasse.  We may seek

13     leave to address the core methodology issue.  One of the

14     reasons we can't file an omnibus motion is we don't understand

15     how they're going about deciding what is a core document that

16     is going to be incorporated into the searches.  So I think if

17     we focused on those issues, we will advance the process

18     considerably.

19             THE COURT:  How quickly can you file a motion with

20     respect to the three individuals and the report?

21             (Off-the-record discussion)

22             MR. CARTER:  I am trying to figure out when we have

23     agreed to be out of the country or a number of us out of the

24     country on depositions.  I think right about 30 days from now a

25     number of us will be out of the country.

J5DJTERC                    Teleconference

1           THE COURT:  Send a letter to us in the next two days.

2           MR. CARTER:  In the 30, 45 days range when we would be

3    ready from then, your Honor?

4           THE COURT:  Okay.  I will take my leave from you on

5    that.  I expected you to say more like 10 days from now is what

6    I expected you were going to say, so maybe that is not

7    possible, but I think you should be working on these motions

8    now.  Who knows what is going to be produced in the final

9    tranche, but you have some sense, I think.  You may not be

10   getting everything you want.

11          So we are going to do this in two phases, but I think

12   you're a team of lawyers.  People should be working on these

13   motions now so that once the second tranche has been produced

14   and the parties have had an efficient meet-and-confer on that,

15   you can get that motion filed within a matter of weeks as

16   opposed to a matter of months.  I think that should be

17   everybody's goal here.

18          So why don't we do the following:  If you all can

19   meet-and-confer in the next 24 hours and get me a letter in the

20   next day or two with a proposed schedule for the first motion

21   to compel, which is going to be with respect to the three

22   individuals and the 2012 report, and you all should discuss a

23   briefing schedule.  Again my thinking is it should be something

24   like a couple of weeks, a couple of weeks to oppose, and a few

25   days to file any reply, but I'll let you all try and work

J5DJTERC                    Teleconference

1    out -- the summer is coming.

2            MS. NORMAND:  Your Honor, we have no objection,

3    obviously, to the plaintiffs filing on their schedule and the

4    court's schedule, but the government would, if the court is

5    anticipating the government would be potentially serving the

6    State Secrets Privilege in response to the motion to compel the

7    2012 report, that would require significant procedural work for

8    the Department of Justice.

9            It would be difficult and it would really be

10   impossible for us to respond on that two week time-frame if

11   that is what the court is envisioning.  We can certainly

12   respond more quickly on the scope questions that the plaintiffs

13   have raised here with regard to the three individuals.

14           THE COURT:  Can we do the following, because it sounds

15   like a States Secrets issue may be hung up in the larger

16   tranche and will need to be addressed then.  Again I am talking

17   and thinking at the same time, which is never a great idea, but

18   can we hold off on the State Secrets argument, I can rule on

19   the other argument, and then if there is a States Secrets

20   objection, we can deal with that on a later today.  It may be

21   they're not entitled to those documents for the reasons I

22   stated, the government is not required to produce them.

23           Is there any efficiency to that?

24           MR. CARTER:  Your Honor, information would be provided

25   to us in the context of the State Secrets assertion that would

J5DJTERC                        Teleconference

1    inform our arguments in response to other positions, that would

2    be affidavits coming in that context that provide a certain

3    level of procedural protection that might inform the overall

4    arguments.

5         We do have some concern about segregating the State

6    Secrets from the other argument.  One of the difficulties and

7    frustrations after we served the subpoena in April of last

8    year, we emphasized the 2012 report was the highest order of

9    priority in this process.

10         When we were before your Honor last year in October,

11    we were told that it was expected that it would be processed to

12    whatever determination in the second tranche before the end of

13    the year.  It has slipped repeatedly, and mostly what we have

14    heard is there is a policy determination that needs to be made

15    with regard to that document.  That has been true for a year,

16    and it has also been true for the related documents that

17    concern the same issues.

18         We would like to get to the point and have the

19    government go through its process to assert whatever grounds it

20    intends to invoke to withhold the document.  We think that this

21    issue needs to be elevated up to the ultimate decision-maker

22    sooner rather than later.

23         THE COURT:  All right.  If you can't agree on the

24    process, send me your competing proposals with respect to these

25    four areas of discovery in that first motion to compel, and

J5DJTERC                    Teleconference

I'll issue a ruling.  I will wait and see whether you all can

work out a proposed schedule.  I would rather not wait.

            MR. POUNIAN:  May I add one more thing.

            I had a chance to talk with co-counsel, and I think

three weeks would be sufficient for us to file the motion.

            THE COURT:  Okay.  Let me give you guys an opportunity

to speak outside with the government and see if you can come up

with a schedule that works for everybody, but I think if we can

do it in three weeks, that will be certainly my preference.

            MS. NORMAND:  I ask for clarification.  You referred

to four areas of discovery.  Are you referring to the three

individuals and the 2012 report?

            THE COURT:  I am.  I am going to order that the

government produce that final tranche within 60 days from

today.  Hopefully, a court order will urge you.  I agree the

plaintiffs' executive committee that we need to move that

process further along.

            So today is May 13th, so that production will be due

on Friday, July 12th.  Hopefully that will also help you all in

your effort with respect to the second motion that is

anticipated.  So the plaintiffs' executive committee, to the

extent the government feels there has not been adequate

meet-and-confer with respect to the other documents that you're

seeking, this is also an opportunity to have that conversation

as well.  It seems you have been speaking, and maybe not with

J5DJTERC                    Teleconference

1   specificity to the government's liking, so you can engage in

2   that process and I'll appreciate that as well.

3          Anything further?

4          MR. CARTER:  No, your Honor.

5          THE COURT:  For the public who is here, I want to

6   point this out to you.  Behind you is a portrait of Louis

7   Freeh, who has served in many roles.  He was a District Judge

8   in this Courthouse and this was his courtroom.

9          He was also the Director of the FBI during that period

10  of time, and so he no longer serves in either capacity.  He is

11  a private citizen now doing legal work, but he was an FBI agent

12  and the Director of the FBI and a District Judge, and he was

13  also a former Assistant United States Attorney.

14         I was speaking with somebody about today's conference

15  just generally, and they pointed this out to me and noted that,

16  or told me the story that when Mr. Freeh was a young Assistant

17  United States Attorney, his first trial was in this courtroom.

18  The first person who testified was an FBI agent, it was in this

19  courtroom, and this was his courtroom when he was a District

20  Judge.

21         So he sat at the lawyers' table, he sat at the Judge's

22  Bench, and he sat in the witness box, wherever it is, all in

23  this courtroom.  I thought it was appropriate, though it was

24  just coincidental we are having today's conference to talk

25  about FBI's productions in a courtroom where Mr. Freeh spent a

J5DJTERC                          Teleconference

1    lot of his professional career.

2              So I thought I would share all of that with you

3    because this courthouse has amazing history, and I hope you

4    take advantage of some of the public flyers and other spaces.

5    I know on the 5th floor there is a lot of information you can

6    learn a little bit more about the courthouse, but I thought I

7    would mention it because I was staring at Mr. Freeh and he was

8    staring at me, through that portrait.  I thought you would

9    appreciate that story.  With that, I will get a letter from the

10   parties in the next 24 to 48 hours and we'll get scheduled

11   going for this.  Thank you.

12             (Court adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25