KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

June 6, 2019

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN)
             (All Actions)

             Emergency Motion To Compel Production of Documents and
             To Reschedule the Depositions of Khalil Al Khalil and Osman Kaldirim

Dear Judge Netburn:

      I write on behalf of the Kingdom of Saudi Arabia ("Saudi Arabia") seeking an order requiring the Plaintiffs' Executive Committees ("Plaintiffs") to produce documents they received pursuant to a Rule 45 subpoena to the King Fahad Mosque a/k/a Islamic Foundation of Sheikh Ibn Tayymiyah (the "Mosque") in advance of the depositions of two Mosque employees that are currently scheduled to occur on June 12 and June 14, 2019. Saudi Arabia also requests that this motion be considered on an emergency basis and that the June 12 and June 14 depositions be postponed so that Saudi Arabia can receive, translate, and review the disputed documents.

      **1.**      On May 25, 2018, as part of their jurisdictional discovery directed at Saudi Arabia, Plaintiffs issued their first third-party subpoena to the Mosque under Rule 45 of the Federal Rules of Civil Procedure, seeking various documents. Shen Decl. ¶ 4; Ex. 1 ("May 25 Subpoena").[1] Plaintiffs gave notice of the May 25 Subpoena to Saudi Arabia and provided a copy. Shen Decl. ¶¶ 4, 16. The Mosque produced documents in response to the May 25 Subpoena on July 30, 2018, and on August 31, 2018, bearing Bates numbers KFM0001-0114. Counsel for the Mosque copied counsel for Saudi Arabia on the Mosque's responses. *Id.* ¶ 5.

---

[1] A declaration of Saudi Arabia's counsel Andrew C. Shen is being filed simultaneously with this letter and is cited as "Shen Decl." Exhibits 1 through 9 to the Shen Declaration are cited as "Ex. __."

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 6, 2019
Page 2

On December 6, 2018, Plaintiffs issued a second subpoena to the Mosque under Rule 45, seeking additional documents. Shen Decl. ¶ 15; Ex. 7 ("December 6 Subpoena"). The December 6 Subpoena is signed by Plaintiffs' counsel, *see* Ex. 7, at 3, and instructs the Mosque to respond by January 7, 2019. It was sent with a cover letter asking the Mosque to "confirm that you will accept service of the subpoena on behalf of the Mosque." *Id.* at 1. Plaintiffs did not give Saudi Arabia notice of the December 6 Subpoena or provide a copy. Shen Decl. ¶ 16.

On January 14, 2019, the Mosque produced additional documents to Plaintiffs and sent a copy of that production to counsel for Saudi Arabia. These additional documents bear Bates numbers KFM0115-0122. *See* Ex. 4 ("January 14 Letter"). Apparently, and unbeknownst to counsel for Saudi Arabia, Plaintiffs and the Mosque also reached an agreement under which Plaintiffs would withdraw the December 6 Subpoena and not serve any additional subpoenas, and the Mosque would produce additional documents solely to Plaintiffs. The January 14 Letter made a cryptic reference to that agreement:

> We understand from your email correspondence that you intend to serve additional subpoenas on the mosque. As we discussed during our telephone conversation, we would greatly appreciate the opportunity to discuss any potential future subpoenas with you beforehand, which could perhaps streamline the process.

*Id.* at 1. The January 14 Letter did not suggest that any such documents, if produced, would be withheld from Saudi Arabia. Between January 14 and May 10, 2019, Saudi Arabia was not aware that the Mosque intended to produce or had produced additional documents to Plaintiffs. Shen Decl. ¶ 7.

On May 10, 2019, counsel for Saudi Arabia had a telephone conversation with counsel for the Mosque, who stated that the Mosque had produced to Plaintiffs 242 additional pages of documents, bearing Bates numbers KFM0123-0364. *Id.* ¶ 8. Saudi Arabia contacted Plaintiffs the same day to request production of the additional documents. *Id.* ¶ 9. On May 15, 2019, Plaintiffs responded with an email stating that "most of the documents were produced by the Mosque for review purposes only" and that Plaintiffs would "prefer that you ask [the Mosque's counsel] for a copy." Ex. 5, at 3; Shen Decl. ¶ 10. Saudi Arabia contacted the Mosque the same day to request production of the additional documents. Shen Decl. ¶ 11; Ex. 6. Counsel for the Mosque responded that he would seek authorization from his client to produce the documents. *See* Ex. 6, at 1.

On June 3, 2019, Saudi Arabia sent another email to Plaintiffs, observing that the dates for the Al Khalil and Kaldirim depositions were approaching and renewing its request for production of all documents produced to Plaintiffs by the Mosque. Shen Decl. ¶ 12; Ex. 5, at 2. Plaintiffs responded the same day by stating that "these documents were produced by the Mosque under an agreement that we reached with them, and not pursuant to our subpoena."

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 6, 2019
Page 3

Ex. 5, at 2.  Plaintiffs further stated that they would agree to produce the documents, but only if there was "no objection from the Mosque."  *Id.*

On June 4, 2019, Plaintiffs sent a further email indicating that the Mosque had stated that Plaintiffs should not produce the documents until further authorization.  *See id.* at 1; Shen Decl. ¶ 13.  Later the same day, counsel for Saudi Arabia spoke again with counsel for the Mosque, who stated that the documents had been produced as a result of an agreement reached with Plaintiffs in the course of negotiating a subpoena, and provided Saudi Arabia (for the first time) with a copy of the December 6 Subpoena.  Shen Decl. ¶ 15.  Saudi Arabia also met and conferred with Plaintiffs, and Plaintiffs confirmed that they were refusing to produce the documents unless authorized to do so by the Mosque.  *Id.* ¶ 17.

On June 5, 2019, counsel for the Mosque further confirmed by email that his client would not agree to the release of the documents to Saudi Arabia and stated that he understood Saudi Arabia would seek relief from the Court if it desired to obtain the documents.  *Id.* ¶ 18; Ex. 8.  He further stated in a follow-up phone call that the Mosque would produce an additional 42 Arabic language documents to Plaintiffs on June 5 and would not authorize the release of those documents to Saudi Arabia.  Shen Decl. ¶ 18.

**2.**     Plaintiffs should be compelled to produce to Saudi Arabia all documents they have received from the Mosque in advance of the Al Khalil and Kaldirim depositions, which are now less than a week away.  In April 2018, at the beginning of jurisdictional discovery, Saudi Arabia served a request for production of documents on Plaintiffs including "[a]ll documents you have obtained pursuant to . . . subpoena, or any other U.S. . . . judicial process, relating to any matters discussed on pages 19-23 of the March 28, 2018 Order."  Ex. 9, at 18.  In response, Plaintiffs "agree[d] to produce to Saudi Arabia, to the extent not already part of the record, responsive documents produced to plaintiffs' counsel as responsive to third-party subpoenas."  *Id.* at 20.  At a subsequent hearing, counsel for Saudi Arabia advised the Court of this agreement, and the Court indicated its approval.[2]

Here, Plaintiffs have obtained 242 pages of documents (plus, as of yesterday, an additional 42 documents) from a third-party subpoena recipient in exchange for an agreement to withdraw a subpoena, or under threat of a further additional subpoena, or both.  Their apparent justification for withholding the documents is that, because the December 6 Subpoena was withdrawn, the documents were not formally responsive to a subpoena at the time the Mosque produced them.  That argument is absurdly technical on its face and falls within the Federal Rules' prohibition on "evasive or incomplete disclosure[s], answer[s], or response[s]," Fed. R.

---

[2] ECF No. 4015, at 40:9-15 ("MR. KELLOGG: . . . [P]laintiffs[] responded last night to our discovery request, and in [their response] they said they would provide us copies of all materials that they obtained through third-party subpoenas, which I think it is appropriate for us to be able to see [and is] going to be important.  THE COURT:  Okay.  Good.").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 6, 2019
Page 4

Civ. P. 37(a)(4).  It also fails even as a technical matter.  The documents in question here were obtained "pursuant to . . . subpoena" in the ordinary meaning of that phrase.  Plaintiffs' withdrawal of the subpoena in exchange for the documents thus does not take the documents outside even the literal terms of Saudi Arabia's original April 2018 document request – which the Court can and should now enforce under Federal Rule of Civil Procedure 37(a)(3)(B)(iv).  Further, documents obtained under threat of additional subpoenas unquestionably fall within the purpose of the parties' agreement:  to enable Saudi Arabia to access information received by Plaintiffs through their extensive third-party discovery efforts and to avoid unfair surprise.

Plaintiffs' apparent agreement with the Mosque to withhold the documents from Saudi Arabia provides no basis for their refusal to produce.  It is well settled that " '[t]here is no privilege for documents merely because they are subject to a confidentiality agreement.' " *In re Oxycontin Antitrust Litig.*, No. 04 MD 1603 (SHS), 2013 WL 1701009, at *2 (S.D.N.Y. Apr. 15, 2013) (quoting *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007)).  The protective order currently in place protects any legitimate confidentiality interest by the Mosque in these documents – and, if it somehow did not, the Mosque's proper remedy would be to apply to the Court for modification of that order.  Plaintiffs have not suggested that any other privilege or protection applies to the documents, and there is no basis on which they could.

Saudi Arabia also has a clear, legitimate interest in obtaining these particular documents with a reasonable amount of time to review them before the Al Khalil and Kaldirim depositions.  Plaintiffs' only interest in obtaining the Mosque's documents and deposing the Mosque's witnesses is to advance their jurisdictional allegations against Saudi Arabia.  They have not disputed that fact, and it is illustrated by their focus on Saudi Arabia in the December 6 Subpoena[3] – a subpoena that, in violation of the Federal Rules, they failed to serve on Saudi Arabia before sending it to the Mosque with a request that the Mosque's counsel accept service.[4]

Whether the Mosque has produced documents that support or contradict Plaintiffs' allegations, counsel for Saudi Arabia will need to review those documents in order to prepare properly for the Al Khalil and Kaldirim depositions, to introduce those documents as exhibits if necessary, and to develop appropriate lines of cross-examination.  Accordingly, Saudi Arabia respectfully requests that the Court order Plaintiffs to produce all documents produced to

---

[3] Ex. 7, Attach. A at 2 (seeking, *e.g.*, "Documents concerning the involvement of the Kingdom of Saudi Arabia in the establishment, organization, staffing, funding, management, construction, or oversight of the King Fahad Mosque" and "Communications between the Islamic Foundation of Shaikh Ibn Taimmiyyah and the Kingdom of Saudi Arabia between 1994-1998").

[4] *See* Fed. R . Civ. P. 45(a)(4) ("*Notice to Other Parties Before Service.*  If the subpoena commands the production of documents, . . . then *before* it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.") (emphasis added).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 6, 2019
Page 5

Plaintiffs by the Mosque.  Saudi Arabia also respectfully requests that, going forward, the Court order Plaintiffs to provide Saudi Arabia with prior notice and copies under Rule 45(a)(4) of all Rule 45 subpoenas issued to any third party, regardless of whether those subpoenas are served formally, sent with an informal request to accept service, or otherwise negotiated.

If the Court does not order Plaintiffs themselves to provide copies of the documents to Saudi Arabia, as they undertook to do last May, then Saudi Arabia will need to serve its own document subpoena for those documents.  Either way, the depositions should be adjourned until the documents are received by Saudi Arabia.  In addition, because it appears that a substantial number of the documents are in Arabic, counsel for Saudi Arabia will need time to obtain translations of them.  Accordingly, Saudi Arabia respectfully requests that the Court order the Al Khalil and Kaldirim depositions to occur no earlier than 14 days after the production to Saudi Arabia of all documents previously produced by the Mosque to Plaintiffs.[5]

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for the Kingdom of Saudi Arabia*

cc: The Honorable George B. Daniels (via facsimile)
All MDL Counsel of Record (via ECF)
Mr. Eugene P. Ramirez and Mr. Michael R. Watts, Counsel for the
    Mosque (via email)

---

[5] In addition to its meet-and-confer efforts described earlier in this letter, Saudi Arabia asked on June 5 whether Plaintiffs would agree to adjourn the Al Khalil and Kaldirim depositions pending the Court's resolution of this dispute, to avoid the need to file this motion on an emergency basis.  Plaintiffs declined to do so.