# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON           Civil Action No.
SEPTEMBER 11, 2001                   03 MDL 1570 (GBD) (SN)

------------------------------------------------------------x
This document relates to:  All Cases

## NOTICE OF ORAL DEPOSITION OF
## DEFENDANT WORLD ASSEMBLY OF MUSLIM YOUTH
## PURSUANT TO FED. R. CIV. P. 30(b)(6)

To:   Defendants World Assembly of Muslim Youth-Saudi Arabia ("WAMY-SA") and World Assembly of Muslim Youth-International ("WAMY-Intl") (collectively "WAMY"), through its attorney of record, Omar Mohammedi, 233 Broadway, Suite 820, Woolworth Building, New York, NY 10279.

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and pursuant to the protocols for conducting depositions as authorized by the Court in the above-captioned matter (ECF No. 3894 on the docket in the above-captioned multidistrict litigation and attached hereto as Exhibit A), the Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, will take the deposition upon oral examination of defendant WAMY beginning at 9:30 a.m. on the 11th day of July, 2019, and continuing on the 13th day of July, 2019, and from day to day on adjourned dates until completed with such adjournments as to time and place as may be necessary.

1. The deposition shall be taken before a notary public or other person authorized by law to administer oaths, at a location to be determined in Madrid, Spain, or such other time and place agreed upon by counsel.

2. The deposition will be recorded by stenographic, sound, and video means.

3. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, WAMY is directed to designate a person or persons knowledgeable and prepared to testify on behalf of WAMY concerning all information known or reasonably available to WAMY regarding the matters for examination described below.

4. The Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, request that WAMY provide the names and titles of the person or persons it will designate to give testimony and summaries of the areas in which each designated person will give testimony no later than 10 business days before the date of the deposition. (*See* ABA, Civil Discovery Standards, at 37.)

5. The Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, request that WAMY produce at each deposition a copy of the designated representative's current curriculum vitae or résumé for the purposes of inspection and/or photocopying.

6. By designating a representative, WAMY indicates its representative has authority to speak on its behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

7. If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, WAMY must immediately provide a substitute knowledgeable witness, even if the initial designation was made in good faith.

8. The testimony elicited in the deposition from the designated witness represents WAMY's knowledge, not the individual deponent's knowledge. WAMY must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if WAMY's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers. "Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

9. This deposition shall be used for any purpose permitted under the Federal Rules of Civil Procedure.

## Areas of Inquiry

1. All information concerning the relationship between WAMY and the Kingdom of Saudi Arabia (including but not limited to the Supreme Council for Islamic Affairs, Ministry of Islamic Affairs, the Ministry of Foreign Affairs, Ministry of Interior, Saudi embassies and consulates, or any other ministry or entity of the Kingdom of Saudi Arabia), including but not limited to:

    a. Communications between WAMY and the Kingdom of Saudi Arabia;

    b. the Kingdom of Saudi Arabia's funding of WAMY's annual budget;

    c. the Kingdom of Saudi Arabia's control, oversight, supervision, and management over WAMY's operations, finances, activities, and fundraising (both within the Kingdom and abroad);

    d. Saudi Royal Decrees relating to WAMY's activities and funding; and

    e. the Kingdom of Saudi Arabia's relationship with WAMY senior officials, including the appointment of WAMY's senior leadership.

2. All information concerning financial support provided to WAMY by officials of the Saudi government or members of the Saudi Royal family, regardless of whether WAMY claims such contributions were provided in a personal or official capacity.

3. All information concerning WAMY's ties to Prince Abdul Aziz bin Fahd.

4. All information concerning WAMY's ties to Sheikh Sa'ad bin Abdullah al Buraik.

5. All information concerning WAMY's General Assembly, General Secretariat, and Board of Trustees ("WAMY Governing Bodies"), including but not limited to:

    a. The WAMY Governing Bodies' oversight, supervision, and management over WAMY's operations, finances, activities, and fundraising (both within the Kingdom and abroad).

    b. meetings of the WAMY Governing Bodies;

    c. reporting submitted to, and reviewed by, the WAMY Governing Bodies concerning WAMY's operations, finances, activities, and fundraising;

    d. the WAMY Governing Bodies' relationship with the Kingdom of Saudi Arabia; and

    e. communications with the Kingdom of Saudi Arabia.

6. All information concerning the relationship between WAMY and its branch offices (both within the Kingdom and abroad), including but not limited to:

    a. The role of WAMY's Governing Bodies in setting the policies and procedures for each of the WAMY branch offices, and the appointment of officials to run the branch offices;

    b. the role and responsibilities of WAMY's Department of Overseas Offices;

    c. the annual budget for WAMY's branch offices;

    d. annual and periodic reports and other documentation submitted to WAMY headquarters by the branch offices concerning their operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plans, and employees;

    e. auditing of the WAMY branch offices by internal WAMY auditors and accountants, and external auditors and accountants;

    f. delegations of high-ranking WAMY officials sent to conduct periodic inspections of the WAMY branch offices; and

    g. actions taken to secure and produce all documents responsive to Plaintiffs' requests for production of documents concerning WAMY's branch offices, including but not limited to all actions taken by WAMY to verify that all branch offices (both within the Kingdom and abroad) complied with WAMY's directives to search for, collect, and organize responsive documents for production in the MDL litigation.

7. All information concerning the relationship between WAMY and its branch office in the United States ("WAMY-International"), including but not limited to:

    a. WAMY's relationship with WAMY-International leadership, including but not limited to Abdullah bin Laden and his appointment to serve as president of WAMY-International as approved by the Ministry of Islamic Affairs;

    b. Abdullah bin Laden's role and responsibilities as president of WAMY-International;

    c. the annual budget for WAMY-International;

    d. annual and periodic reports and other documentation submitted to WAMY headquarters

       by WAMY-International concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;

    e. WAMY-International's relationship with Anwar Aulaqi;

    f. WAMY-International's relationship with Said Rageah and/or the Ayad Islamic Center of Laurel, MD;

    g. WAMY-International's relationship with the Institute of Islamic and Arabic Sciences in America;

    h. WAMY-International's relationship with Khalid al-Sowailem; and

    i. WAMY-International's relationship with the Global Relief Foundation.

8. All information concerning the relationship between WAMY and its branch office in Canada ("WAMY-Canada"), including but not limited to:

    a. WAMY's relationship with WAMY-Canada leadership, including but not limited to Mohammed Khatib, Talhah al Jarrard, and Ayman al Taher;

    b. annual and periodic reports and other documentation submitted to WAMY headquarters by WAMY-Canada concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;

    c. the annual budget for WAMY-Canada, and the role of WAMY-International in authorizing and distributing WAMY-Canada's budget;

    d. actions taken to obtain and produce all documents responsive to Plaintiffs' requests for production of documents concerning WAMY-Canada, including but not limited to WAMY-Canada's banking records from Bank of Montreal and TD Canada Trust;

    e. all information concerning the Canadian government's investigation and audit of WAMY-Canada, conducted by the Canada Revenue Agency, finding that "WAMY maintained close relationships with and provided funding to organizations that were engaged in providing resources to entities engaged in terrorist activities;"

    f. all information concerning any internal investigation conducted by WAMY concerning the Canadian government's investigation and findings, including but not limited to any communications between WAMY and WAMY-Canada; and

    g. communications with the Canadian government concerning the Canadian government's investigation and audit.

9. All information concerning the relationship between WAMY and its branch office in Kashmir ("WAMY-Kashmir"), including but not limited to:

    a. Annual and periodic reports and other documentation submitted to WAMY headquarters by WAMY-Kashmir concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;;

    b. the annual budget for WAMY-Kashmir; and

    c. WAMY's Kashmir Youth Committee.

10. All information concerning the relationship between WAMY and the Benevolence International Foundation (BIF"), including but not limited to:

    a. WAMY's relationship with BIF's predecessor, Lajnat al Birr al Islamiyya;

    b. WAMY's relationship with Executive Order 13224 Designee Adel Batterjee;

    c. all information concerning the Canadian government's investigation and audit of WAMY-Canada, conducted by the Canada Revenue Agency, concluding that WAMY-Canada shared common officers, office space, contact information, and bank accounts with Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Fund-Canada ("BIF-Canada");

    d. all information concerning the Canadian government's investigation and audit, conducted by the Canada Revenue Agency, concluding that WAMY-Canada provided direct funding to Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Foundation ("BIF-USA"); and

    e. all information concerning any internal investigation conducted by WAMY concerning the Canadian government's investigation and findings, including but not limited to any communications between WAMY and WAMY-Canada.

11. All information concerning the relationship(s) between WAMY and the Saudi-based da'wah organizations, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Al Haramain Islamic Foundation; Saudi Joint Relief Committee ("SJRC"), Saudi Red Crescent ("SRC"), and Al Haramain Al Masjed Al Aqsa.

12. All information concerning the relationship(s) between WAMY and Abdullah al Naseef and Abdullah Mohsen al Turki, including but not limited to the positions those individuals held or hold within WAMY, and their roles and responsibilities.

13. The substance, content, and authenticity of the documents produced by WAMY in the course of this multidistrict litigation.

14. All information concerning the actions taken to locate and produce documents required to be produced in this litigation, including but not limited to:

    a. WAMY's document productions;

    b. Magistrate Judge Sarah Netburn's August 29, 2018 Opinion and Order (ECF No. 4130) directing WAMY to search for and produce various categories of documents, including but not limited to: (i) documents responsive to Plaintiffs' Fourth Set of Requests for Production of Documents, dated August 22, 2013; (ii) reports, meeting minutes, and other records relating to WAMY's governing bodies, boards, and committees; (iii) documents relating to WAMY's relationship with the Saudi government; (iv) documents relating to WAMY's relationship with the Benevolence International Foundation ("BIF"); (v) documents relating to

        WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad; and

    c.    Magistrate Judge Sarah Netburn's January 15, 2019 Opinion and Order (ECF No. 4350) directing WAMY to search for and produce relevant banking records.

15. All information concerning WAMY's relationship(s) with, and financial support for, designated terrorists and terrorist organizations, including but not limited to Osama bin Laden, al Qaeda, Hamas, Fatah, Palestinian Islamic Jihad, and Taibah International.

16. All information concerning the allegation that WAMY financially supported jihadist activities in Bosnia.

17. All information concerning the allegation that WAMY financially supported jihadist activities in Chechnya, including senior al Qaeda member Amir Khattab who was deployed to Chechnya by Osama bin Laden to organize al Qaeda's operations in that region.

18. All information concerning the allegation that WAMY Secretary-General Maneh al Johani called on Muslims to donate funds to WAMY to buy "arms and ammunition" for the "mujahideen" in Chechnya.

19. All information concerning the allegation that WAMY financially supported the Moro Islamic Liberation Front ("MILF"), a terrorist group associated with al Qaeda.

20. All information concerning the allegation that WAMY financially supported violent jihadist groups operating in Kashmir under the al Qaeda umbrella, including but not limited to Lashkar-e-Taibah, Hizb-ul-Mujahideen, and the Students' Islamic Movement of India ("SIMI").

21. All information concerning the allegation that Nazir Qureshi, a WAMY Assistant Secretary General, provided money and other assets to al Qaeda associated terrorist groups in Kashmir.

22. All information concerning the allegation that WAMY official Mohammed Ayyub Thukar was a principal financier of al Qaeda affiliated Hizb-ul-Mujahideen.

23. All information concerning the allegation that Pakistani intelligence officials, operating in conjunction with the Federal Bureau of Investigation ("FBI"), raided WAMY's offices in Peshawar in November 2001, based on its ties to al Qaeda.

24. All information concerning the allegation that during the 1993 World Trade Center bombing investigation, U.S. officials discovered that WAMY had distributed an al Qaeda training manual, *Military Lessons in the Jihad Against the Tyrants*, to Ahmed Ajaj who was convicted for his role in the attack.

25. All information concerning the 2004 raid of WAMY-International by the FBI and other federal authorities in connection with the investigation of the SAAR Network's role in sponsoring al Qaeda.

26. All information concerning the allegation that WAMY was implicated in an al Qaeda plot to hijack a plane departing from Romania and crash it into Heathrow Airport in London.

27. All information concerning the allegation that WAMY supported al Qaeda affiliated extremists through its participation in the Islamic Coordination Council, an umbrella organization

established in Peshawar, Pakistan in 1985 to coordinate and maximize the funding of the foreign jihadists in Afghanistan who later joined Osama bin Laden's al Qaeda.

28. All information concerning WAMY's role with respect to the content, editing, and distribution of publications that promote anti-American, anti-Semitic and pro-jihadist messages, including but not limited to: *Islamic Views*; *Islamic Camps: Objectives, Program Outlines, and Preparatory Steps*; and *A Handy Encyclopedia of Contemporary Religions and Sects*.

29. All information concerning the educational content of WAMY's summer camps.

30. All information provided by WAMY in connection with any investigation regarding the potential connection between WAMY and support for al Qaeda, associated terrorist groups, and Islamic extremists, including information provided to representatives of the United States authorities, by Kingdom of Saudi Arabian authorities, or others.

Dated:  May 22, 2019 Respectfully,

/s/ J. Scott Tarbutton
J. Scott Tarbutton
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2000
starbutton@cozen.com
*Attorneys for the Plaintiffs' Exec. Committees*

7

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of May, 2019, I caused a copy of the foregoing Notice of Oral Deposition of Defendant World Assembly of Muslim Youth Pursuant to Federal Rule of Civil Procedure 30(b)(6) to be served by email upon the following for further distribution to counsel for all parties in this action:

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel: (843) 216-9000
Fax: (843) 216-9450
jflowers@motleyrice.com
rhaefele@motleyrice.com

Omar T. Mohammedi, Esq.
Frederick J. Goetz, Esq.
LAW FIRM OF
OMAR T. MOHAMMEDI, LLC
233 Broadway
Suite 820
Woolworth Building
New York, NY 10279
Tel: (212) 725-3826
Fax: (212) 202-7621
omohammedi@otmlaw.com
fgoetz@goetzeckland.com

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
Steven R. Pounian, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue
New York, NY 10017
Tel: (212) 687-8181
Fax: (212) 972-9432
jkreindler@kreindler.com
amaloney@kreindler.com
spounian@kreindler.com

Michael K. Kellogg, Esq.
Mark C. Hansen, Esq.
Gregory G. Rapawy, Esq.
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, PLLC
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
mkellogg@kellogghansen.com
mhansen@kellogghansen.com
grapawy@kellogghansen.com

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
jgoldman@andersonkill.com

Alan Kabat, Esq.
BERNABEI & KABAT, PLLC
1400 16th Street, N.W., Suite 500
Washington, D.C. 20036
Tel: (202) 745-1942
Fax: (202) 745-2627
kabat@bernabeipllc.com

/s/_____
J. Scott Tarbutton, Esq.