## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

### VIA ECF

June 7, 2019

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re: *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD)(SN)

**Plaintiffs' Emergency Motion for Reconsideration of this
Court's June 6 Order Adjourning the Depositions of Khalil and Kaldirim,
Including an Order Directing that those Depositions Proceed as Scheduled
on June 12 and 14 in Los Angeles, and Opposition to the Kingdom's Emergency Motion**

Dear Judge Netburn:

Plaintiffs, by the Plaintiffs Executive Committees, respectfully file this Emergency Motion for Reconsideration of this Court's June 6 Order, ECF 4574, that the "depositions of Khalil Al Khalil and Osman Kaldirim are adjourned sine die" and in support of an Order that those depositions proceed on June 12 and June 14 in Los Angeles, as scheduled by plaintiffs, and Opposition to the Kingdom of Saudi Arabia's Emergency Motion filed yesterday morning.

The Kingdom's Emergency Motion failed to inform this Court of critical facts, and presented misleading arguments regarding the Mosque's document production. There was and is no reason to delay the depositions, and they should proceed as scheduled.

Based on the facts presented below and the accompanying Declaration, the PECs respectfully request a phone conference with the Court today to resolve the motions, so that the depositions can go forward as scheduled, and counsel can proceed with their necessary travel arrangements and other planning to attend the depositions.

June 7, 2019
Page 2

Yesterday afternoon at 5:43pm, Michael Watts, Esq., of the Manning Kass firm in Los Angeles, counsel for the King Fahad Mosque, advised Plaintiffs and counsel for the Kingdom that he "just received permission from my client to permit the release of all materials previously produced to plaintiff's counsel to counsel for the Kingdom of Saudi Arabia." Declaration of Steven R. Pounian ("Pounian Decl."), attached hereto, ¶ 3 & Exhibit 1. At 5:59pm, Plaintiffs sent the Kingdom's counsel a link containing the Mosque's prior production, KFM123-364, and the production first made yesterday afternoon, KFM365-454. *Id.*

Mr. Watts also stated "I would request, given the short time frame and the travel logistics, that the Court be informed and a joint request made for the depositions to continue as previously noticed." *Id.* & Exhibit 1.

After Mr. Watts' email, the PECs asked the Kingdom to immediately withdraw its pending motion, and allow the depositions to proceed next week as previously scheduled. *Id.* at ¶ 4 & Exhibit 2. The Kingdom said it would consider that request and respond promptly. Given the timing of the depositions, Plaintiffs cannot wait any longer and must file this motion now.

**As the Kingdom knew, there is a substantial risk that the witnesses will be unavailable for deposition after next week.** The Kingdom knew that if the depositions were adjourned, there was a substantial risk that the witnesses would not be available for their depositions in the United States - and that Plaintiffs strenuously objected to any adjournment. Pounian Decl. ¶¶ 6-7 & Exhibit 3.

Both witnesses live outside the United States: Dr. Khalil resides in Saudi Arabia, while Mr. Kaldirim lives in Turkey. *Id.* They are currently visiting in the United States for a short window of time and both are available for their long-scheduled depositions next week in Los Angeles. After waiting for several months to get dates from the Mosque, Plaintiffs first noticed their depositions on March 27, 2019, and on April 16, the deposition dates were set to proceed on June 12 and June 14, because of the witnesses' schedules and availability in the United States. *Id.*

The Kingdom failed to inform this Court of those facts in its letter motion, and attached nine exhibits – but none of the key information from our meet and confer call and email. The urgency of the matter is confirmed by the request of the Mosque's counsel, Mr. Watts, yesterday afternoon for "the depositions to continue as previously noticed." Exhibit 1. There is simply no just reason for delay. If the depositions are postponed, Plaintiffs may be denied outright the ability to obtain the testimony, or will be forced to deal with unnecessary motion practice and expense, such as Letters Rogatory to obtain the testimony overseas, which may or may not ultimately be successful.

**Saudi Arabia's claims about Plaintiffs' "second subpoena" are highly misleading.** In early December 2018, Plaintiffs contemplated serving a second document subpoena on the Mosque, and Plaintiffs asked the Mosque's counsel, Mr. Watts, if he would accept service of the subpoena, and provided him with a proposed subpoena. Mr. Watts, however, refused to accept service. *Id.* at ¶ 9.

Contrary to the completely unsupported argument of Saudi Arabia, Kellogg June 6, 2019 letter at 2, Plaintiffs never attempted service of the subpoena on the Mosque. *Id. See United*

*States v. Brennerman*, 2017 WL 4513563, *1 (S.D.N.Y. Sept. 1, 2017) (interpreting identical language in Federal Rules of Criminal Procedure, court concludes that "[s]ervice on a party's lawyer is not sufficient."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 293, 304 (S.D.N.Y. 2009) ("Unlike service of most litigation papers, service on an individual's lawyer will not suffice."). Instead, Plaintiffs entered into negotiations with Mr. Watts in the hopes of avoiding a dispute that would require Court intervention. In doing so, Plaintiffs were mindful of the complexity of the MDL and importance of trying to avoid disputes, where possible. Those discussions resulted in an agreement for the Mosque to search for a limited group of additional documents, and avoided additional costs and motion practice. Pounian Decl. ¶ 11.

**Plaintiffs reasonably believed that Saudi Arabia had already received the additional documents from the Mosque.** Before yesterday, the Mosque voluntarily produced 242 pages to Plaintiffs on Feb 19, 2019 (KFM 123-134), Mar 22, 2019 (KFM 135-162) and April 5, 2019 (KFM 163-364). *Id.*, ¶¶ 11, 18. As Plaintiffs advised the Kingdom during our meet and confer, we reasonably believed that copies of those documents, all of which are in English, had already been provided to Saudi Arabia at or prior to the time they were produced to Plaintiffs, as the KFM had done in the past productions. *Id.* at ¶¶ 11, 17.

This belief was based on the facts that the Kingdom's counsel was independently in contact with the Mosque's attorneys, and that Saudi Arabia had previously arranged on its own to get copies of the production of the originally-produced Mosque documents (KFM001-122). *Id.* Moreover, the Kingdom has close ties to the Mosque, which as the record shows, was created, funded and run by Saudi Arabia from 1998 through at least, the September 11, 2001 terrorist attacks. Dr. Khalil himself had served as a Saudi diplomat at its Washington Embassy prior to 9/11 and was appointed by the King to serve as a member of the Kingdom's Shura Council from 2005-2009. *Id.* In short, Plaintiffs believed a cooperation agreement was in place between the Mosque and the Kingdom.

The Kingdom clearly has access to relevant documents involving its own role with the KFM and its claims of prejudice regarding a handful of documents that the KFM is now producing is disingenuous at best. Moreover, the Kingdom itself refused to produce documents to Plaintiffs regarding its role in operating the Mosque, including funding, personnel, and its deployment of Fahad al Thumairy, among other subjects. That refusal is currently raised in the pending Motion to Compel against Saudi Arabia. Indeed, the Kingdom's motion only serves to confirm the relevance of its own KFM documents, as to which it has opposed production before this Court.

**Plaintiffs repeatedly stated that they had no objection to the Kingdom receiving the documents, including, if necessary, by the entry of an Order of this Court.** The PECs only first learned there was an issue when Mr. Shen sent us an email message on May 10, stating that he had learned that Plaintiffs had obtained documents from the KFM and asking for a copy. *Id.* at ¶ 12. After hearing that the Kingdom had not received the documents, Plaintiffs repeatedly advised the Kingdom's counsel that Plaintiffs had no objection to the Kingdom receiving the documents. *Id.* at ¶¶ 13, 14, 17. The Kingdom's suggestion that the Plaintiffs had an "apparent agreement with the Mosque to withhold the documents from Saudi Arabia," Kellogg June 6, 2019 letter at 4, is false.

June 7, 2019
Page 4

On May 15, the PECs advised Mr. Shen by email that since the documents were produced by the Mosque to the Plaintiffs, and many of the documents were initially produced for review purposes only,[1] that he should contact the Mosque's counsel directly to obtain the documents. That same day, Mr. Watts advised Mr. Shen by email that, regarding production of the documents provided to the Plaintiffs, "I don't anticipate that will be a problem" but that he needed to first get in touch with his clients. Pounian Decl. ¶ 15. The Kingdom has been in contact with the Mosque's counsel since last year and Plaintiffs had every reason to believe, given the Saudi relationship between the witnesses and the Mosque, and the KFM's past production practices, that the documents had been or would promptly be provided. *Id.* at ¶ 11.

When the documents were not produced by the Mosque in May, the Kingdom could have served a subpoena on the Mosque, or brought the matter to this Court's attention sooner, knowing that the two depositions that were noticed in March, and were scheduled for June 12 and 14. Instead, the Kingdom waited three weeks to raise the issue until the week before the depositions, on this past Monday, June 3. Plaintiffs were surprised to hear there was still an issue. *Id.* at ¶ 17. We again stated that we would not object, and told the KFM and Saudi Arabia that Plaintiffs would not oppose the entry of an Order by this Court for production of the documents. *Id.* & Exhibit 3.

The Kingdom's motion failed to mention those facts, or that the PECs informed the Kingdom that they had no intention to use any of the documents marked as KFM 123-364 at the upcoming depositions. *Id.* at ¶ 18. In any event, all of those documents have now been produced to the Kingdom. Plaintiffs still do not know why the Mosque refused to allow Plaintiffs to release the documents until late yesterday afternoon.

Moreover, the Kingdom's letter falsely states that Plaintiffs received "an additional 42 documents" from the KFM "yesterday," *i.e.*, Wednesday. Kellogg June 6, 2019 letter at 3. But Plaintiffs expressly told the Kingdom on Wednesday evening that they had not yet received any additional documents from the Mosque. Pounian decl., ¶ 19 & Exhibit 3. Plaintiffs did not receive the additional documents until 1:40pm Thursday afternoon, when the KFM produced via email link 89 more pages, most (but not all) in Arabic, which were stamped KFM365-454. *Id.* at ¶ 19. The Kingdom's counsel then received those same documents just before 6pm, several hours after Plaintiffs. *Id.* at ¶ 20.

**The Kingdom has no basis to claim any unfair prejudice.** The Kingdom has been in contact with the Mosque's attorneys directly since last year and has never made any attempt to subpoena documents from the Mosque itself. As of yesterday, the Kingdom has all of the documents received by the Plaintiffs. Unlike the Plaintiffs, the Arabic documents can be easily read and understood by the Kingdom. Rather, it is the Plaintiffs, who must translate those

---

[1] The bulk of the additional documents consist of phone records. During discussions about the possible production of those documents, Mr. Watts cited the likelihood that many of the phone records may not be relevant but could include information implicating privacy interests of individuals, for instance by reflecting phone calls to physicians. Given those concerns, the Mosque agreed to produce the phone records on a review basis only, with the understanding that Plaintiffs would return any that were not necessary to the litigation. That process is not complete, but Plaintiffs do not expect to use any of the phone records at the depositions of these witnesses.

documents from the Arabic into English, who would be at a disadvantage, but nevertheless want to proceed with the scheduled depositions next week.

      The Kingdom already has superior access to the information regarding the Mosque during the relevant time period. Indeed, it appears that many of the documents produced by the Mosque involve Saudi government communications with the KFM during the relevant time period that should have been produced to the Plaintiffs by the Kingdom as part of its production. *Id.* at ¶ 19. Moreover, Plaintiffs are still waiting for the Kingdom to produce documents regarding Saudi government officials with direct involvement at the Mosque - including Smail Mana, Mohammed al Muhanna, and Musaed al Jarrah - that this Court expressly ordered seven months ago in November 2018. In sum, Saudi Arabia sat on its rights and now brings an eleventh hour, misleading "emergency" motion to deprive Plaintiffs, yet again, from obtaining critical discovery.

      Respectfully submitted,

KREINDLER & KREINDLER LLP

By: /s/ *Steven R. Pounian*
    STEVEN R. POUNIAN
    ANDREW J. MALONEY
    KREINDLER & KREINDLER LLP
    750 Third Avenue
    New York, New York 10017
    Tel.: 212-687-8181
    Email: amaloney@kreindler.com

*For the Plaintiffs' Exec. Committees*

COZEN O'CONNOR

By: /s/ *Sean P. Carter*
    SEAN P. CARTER
    COZEN O'CONNOR
    One Liberty Place
    1650 Market Street, Suite 2800
    Philadelphia, Pennsylvania 19103
    Tel.: (215) 665-2105
    Email: scarter@cozen.com

*For the Plaintiffs' Exec. Committees*

MOTLEY RICE LLC

By: /s/ *Robert T. Haefele*
    ROBERT T. HAEFELE
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29465
    Tel.: (843) 216-9184
    Email: rhaefele@motleyrice.com

*For the Plaintiffs' Exec. Committees*

cc:    The Honorable George B. Daniels (via First Class Mail)
        All Counsel of Record (via ECF)
        Michael Watts, Esq. (counsel to KFM and Khalil & Kaldirim)