UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to: *All Actions*

## DECLARATION OF STEVEN POUNIAN

I, Steven R. Pounian, do hereby declare:

1. I am an attorney duly admitted before this Court, and practice at the firm of Kreindler & Kreindler LLP, attorneys for Plaintiffs and members of the PEC, and am familiar with the prior proceedings relevant to the subject motion.

2. I respectfully submit this Declaration on behalf of the Plaintiffs' Executive Committees in support of Plaintiffs' motion for Emergency Reconsideration of this Court's June 6 Order that the "depositions of Khalil Al Khalil and Osman Kaldirim are adjourned *sine die*" and in support of an Order that those depositions proceed on June 12 and June 14 in Los Angeles, as scheduled by plaintiffs, and in Opposition to the Kingdom of Saudi Arabia's Emergency Motion filed yesterday.

3. Yesterday afternoon at 5:43pm, Michael Watts, Esq., of the Manning Kass firm in Los Angeles, counsel for the King Fahad Mosque, advised Plaintiffs and counsel for the Kingdom by email that he "just received permission from my client to permit the release of all materials previously produced to plaintiff's counsel to counsel for the Kingdom of Saudi Arabia." Exhibit 1. At 5:59pm Plaintiffs sent the Kingdom's counsel, a link containing the entire Mosque production to the Kingdom, including KFM123-364, and the production first made yesterday, KFM365-454.

1

4. Mr. Watts also stated "I would request, given the short time frame and the travel logistics, that the Court be informed and a joint request made for the depositions to continue as previously noticed." Exhibit 1. I then asked the Kingdom to withdraw its pending motion, and allow the depositions to proceed next week as previously scheduled. Exhibit 2. Mr. Kellogg responded that they would consider and get back to the Plaintiffs. Given the need to confirm travel and other arrangements for the depositions today, Plaintiffs have no option but to file this motion now.

5. In its motion, the Kingdom failed to inform this Court of critical facts, and presented misleading arguments regarding the Mosque's document production.

6. First, the Kingdom's counsel was told in our meet and confer sessions - but failed to mention to the Court - that the depositions could not be rescheduled because the two Mosque officials do not live in the United States and would likely be unavailable after next week. Dr. Khalil resides in Saudi Arabia, while Mr. Kaldirim lives in Turkey. They are currently in the United States for a short window of time and both are available for their long-scheduled depositions next week in Los Angeles. After waiting for several months to get dates from the Mosque, Plaintiffs first noticed their depositions on March 27, 2019, and on April 16, the deposition dates were set to proceed on June 12 and June 14, because of the witnesses' schedules and availability in the United States.

7. Any delay in those depositions would severely prejudice the Plaintiffs and could deny their right to the testimony of the two witnesses. I specifically asked the Mosque's counsel about the possibility of a postponement and if he would commit to producing the witnesses on another date certain in the United States. He advised me that Mr. Kaldirim is leaving the country on the weekend of June 15. He said he could check again with the witnesses, but was unaware of any current plans for them to return here. Given those circumstances, I emailed Saudi Arabia's counsel on Wednesday night that we could not

agree to any postponement. Exhibit 3. The Kingdom failed to inform this Court of those facts in its letter motion, and attached nine exhibits – but none of the key information from our meet and confer call and email. That information is further confirmed by Mr. Watts' urgent request yesterday afternoon for "the depositions to continue as previously noticed." Exhibit 1.

8. Second, Saudi Arabia's claims regarding Plaintiffs' second subpoena are very misleading. Plaintiffs did prepare a proposed second subpoena for the Mosque, but it was never served. On December 6, 2018, I sent a copy of that second subpoena to the Mosque's counsel, Mr. Watts, and asked if he would accept service on behalf of the Mosque.

9. The Mosque's counsel, however, refused to accept service of the subpoena, and Plaintiffs never attempted to serve it. Instead, Plaintiffs negotiated with Mr. Watts about an alternative method of obtaining the documents, in an effort to avoid needless costs, litigation and motion practice.

10. The Mosque agreed to voluntarily produce a limited group of documents, and Plaintiffs reserved their rights to actually serve a second subpoena and bring a motion to compel production.

11. Third, we advised the Kingdom that at the time of the production, Plaintiffs believed that copies of the same Mosque documents were also provided to Saudi Arabia. We knew that the Kingdom's counsel was independently in contact with the Mosque's attorneys, and had directly arranged last year to get copies of the documents KFM001-122, produced in response to the subpoena that was served in May 2018 (a copy of which was sent to the Kingdom's attorneys). Also, the Kingdom has intimate ties to the Mosque, since it paid substantial amounts to construct and fund the Mosque; staffed the Mosque with the Kingdom's employees; and, Dr. Khalil himself has long service as a Saudi diplomat at its Washington Embassy and also as a member of the Kingdom's Shura Council from 2005-

2009, appointed by the King. The Kingdom itself never served a subpoena for documents from the Mosque.

12. We first learned there was an issue when counsel for Saudi Arabia, Mr. Andrew Shen, Esq., sent us an email message on May 10, stating that he had learned that Plaintiffs had obtained documents from the KFM and asking for a copy.

13. Fourth, upon learning that the Kingdom had not received the documents, I repeatedly advised the Kingdom's counsel that Plaintiffs had no objection to the Kingdom receiving the documents.

14. On May 15, I advised Mr. Shen by email that Plaintiffs had no objection to providing the documents, but that he should contact the Mosque's counsel directly to obtain the documents.

15. That same day, Mr. Watts advised Mr. Shen by email that, regarding production of the documents provided to the Plaintiffs, "I don't anticipate that will be a problem" but that he needed to first get in touch with his clients.

16. Most of the documents were phone records that the Mosque produced on a confidential, review only basis. Plaintiffs agreed to review the documents, and then request formal production of any documents that were relevant to the litigation. After their review, Plaintiffs never identified any such relevant documents.

17. Again, I believed based on Mr. Watts' May 15 message ("I don't anticipate that will be a problem") that Mr. Shen had already obtained the documents from the Mosque, and was surprised to learn earlier this week from Mr. Shen, on June 3, that the Mosque had refused to release the documents. I then immediately contacted Mr. Watts myself, and he then asked Plaintiffs on June 3 to "hold off" on sending any documents to the Kingdom and that he needed to consult with his client. The next day, June 4, Mr. Watts instructed "please do not release any of those documents…," and I told him on the phone that Plaintiffs not only

4

did not oppose production of the documents to the Kingdom, but would not object to the entry of a Court order for their production. Plaintiffs also had a meet and confer call that day with Mr. Shen, counsel for Saudi Arabia, and advised him that Plaintiffs had no objection to production of the documents to the Kingdom - or entry of a Court order. On June 5, Mr. Kellogg then sent the PECs an email requesting that the depositions be postponed, and we advised him of the again that we could not agree because any delay could deny the Plaintiffs' right to obtain the testimony. Exhibit 3. Then yesterday, June 6, Mr. Watts told me that that Plaintiffs could produce the documents to the Kingdom, which we immediately did.

18. Fifth, the Kingdom again fails to mention to this Court that Plaintiffs informed the Kingdom that they had no intention to use any of the documents marked as KFM 123-364 at the upcoming depositions. Those documents were produced on Feb 19, 2019 (stamped by the Mosque as KFM 123-134); Mar 22, 2019 (KFM 135-162); and, April 5, 2019 (KFM 163-364). All of those documents are in English - and have now been produced to the Kingdom.

19. Finally, the Kingdom's letter falsely states that Plaintiffs received "an additional 42 documents" from the KFM "yesterday" *i.e.* Wednesday. But Plaintiffs expressly told the Kingdom late on Wednesday evening that "we have not received" any additional documents from the Mosque. Exhibit 3. The documents were not sent to us until 1:40pm Thursday afternoon, when the KFM produced via email link 89 pages of additional documents, which were stamped KFM365-454. Most, but not all, of these new documents are in Arabic. From our initial review of the documents with our experts, it appears that many of the documents produced by the Mosque involve Saudi government communications with the KFM during the relevant time period that should have been produced to the Plaintiffs by the Kingdom as part of its document production.

20. The Kingdom's counsel were then sent those same documents just before 6pm, several hours after Plaintiffs, following Mr. Watts' email. Plaintiffs never had any

objection to the production of those documents to the Kingdom, and agreed to the entry of an Order by this Court for their production. The Mosque, for reasons still unknown to Plaintiffs, refused to allow Plaintiffs to release the documents until late yesterday afternoon.

21.     In sum, the Kingdom has no basis to claim any unfair prejudice. It could have served a subpoena on the Mosque, but chose not to do so. As of today, the Kingdom has all of the documents and can, unlike the Plaintiffs, quickly and easily review the ones in Arabic. Moreover, the Kingdom has refused to produce its documents regarding its role in funding the Mosque and its deployment of Thumairy to the Mosque. That issue is currently before the Court on the pending Motion to Compel. Saudi Arabia has superior access to the information regarding the Mosque during the relevant time period, and by making this motion the Kingdom demonstrates the relevance of that information. While there is a disadvantage for the Plaintiffs to proceed with the depositions before discovery of the Kingdom is complete, we must proceed because the witnesses live outside the United States and there is a substantial risk of losing their testimony.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: New York, New York
       June 7, 2019

                                                    /s/ Steven Pounian
                                                    Steven R. Pounian