KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
───
(202) 326-7900

FACSIMILE:
(202) 326-7999

June 7, 2019

*Via ECF*

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re:    *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN) (All Actions)

            Reply Concerning Emergency Motion To Compel Production of Documents and To Reschedule the Depositions of Khalil Al Khalil and Osman Kaldirim

Dear Judge Netburn:

      I write on behalf of Saudi Arabia ("Saudi Arabia") concerning its emergency letter-motion filed yesterday, ECF No. 4572; and in response to the emergency letter-motion and opposition filed by the Plaintiffs' Executive Committees ("Plaintiffs") today, ECF No. 4576.

      **1.**     Yesterday evening, shortly after the Court set a hearing on Saudi Arabia's motion and adjourned the Al Khalil and Kaldirim depositions, ECF No. 4574, counsel for the King Fahad Mosque (the "Mosque") told counsel for Plaintiffs and for Saudi Arabia that his client would permit production of the documents at issue. Plaintiffs subsequently produced those documents, including 72 pages in Arabic. We immediately forwarded those documents to our translators with a request that the documents be reviewed and translated on a rush basis, and with a further request for an immediate estimate of timing. This morning, shortly after Plaintiffs' filing, our translators confirmed that the documents could be ready for the depositions. We accordingly informed Plaintiffs and the Mosque (and now confirm) that Saudi Arabia withdraws its objections to the depositions proceeding as originally scheduled. Saudi Arabia also withdraws its request for consideration of its motion on an emergency basis and defers to the Court as to whether a telephone conference on Monday remains useful.

      **2.**     Saudi Arabia maintains its request that, "going forward, the Court order Plaintiffs to provide Saudi Arabia with prior notice and copies under Rule 45(a)(4) of all Rule 45 subpoenas issued to any third party, regardless of whether those subpoenas are served formally,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 7, 2019
Page 2

sent with an informal request to accept service, or otherwise negotiated." ECF No. 4572, at 5.[1] Plaintiffs' letter attempts to justify their undisputed failure to notify Saudi Arabia of the December 6 Subpoena by incorrectly stating (at 2-3) that they "never attempted service of the subpoena on the Mosque." But in the previous paragraph (at 2) they concede (as they must) that they "asked the Mosque's counsel . . . if he would accept service of the subpoena." *See also* ECF No. 4573-7, at 1 ("[p]lease confirm that you will accept service"). That was an attempt to make service, and service would have been effected if counsel agreed. Compliance with Rule 45(a)(4) – which mandates notice "before [a subpoena] is served on the person to whom it is directed" – required advance notice.[2] So did minimal good faith.

The need for action by the Court is further underscored because Plaintiffs denied the existence of the December 6 Subpoena even during meet-and-confer negotiations with Saudi Arabia leading up to this motion. Saudi Arabia learned about and obtained a copy of that subpoena only after specifically asking counsel for the Mosque. *See* ECF No. 4573, ¶¶ 10, 14-15. Saudi Arabia does not know whether Plaintiffs have used the device of issuing a subpoena but stopping short of technical service with other third parties, or may do so in the future. Nor will Saudi Arabia necessarily learn of such efforts in time to seek relief from the Court, unless (as here) the third parties disclose them.

3.  Although Saudi Arabia's request to reschedule the depositions is now withdrawn, a response is justified to Plaintiffs' false statement that Saudi Arabia "failed to inform this Court of critical facts" or made "misleading arguments." ECF No. 4576, at 1. *First*, their claim that there was a "substantial risk that the witnesses would not be available for their depositions in the United States," *id.* at 2, is unsupported. Plaintiffs' meet-and-confer email stated only that the Mosque's counsel was "unaware of any current plans" for the witnesses to return to the United States. ECF No. 4577-3, at 1. Plaintiffs offer nothing but speculation to suggest that another

---

[1] In recent communications to Saudi Arabia and a last-minute letter to the Court, Plaintiffs indicate that they are planning "to revert back to the Kingdom on th[is] issue shortly." ECF No. 4578, at 1. If the parties reach agreement, it is possible that a Court order may not be required. Nevertheless, Plaintiffs also indicate that they believe their letter "remains relevant" because of its statements concerning the "record and circumstances," *id.*, by which they presumably mean their accusations directed at Saudi Arabia and attempts to defend their conduct. Accordingly, Saudi Arabia respectfully asks that this Court consider this reply.

[2] The cases on which Plaintiffs rely stand for the proposition that a subpoena does not bind a third party when merely sent to that party's attorney. *See United States v. Brennerman*, 2017 WL 4513563, at *1 (S.D.N.Y. Sept. 1, 2017) (refusing to enforce subpoena for lack of personal service); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 304 (S.D.N.Y. 2009) (describing general requirement for personal service). None approves what Plaintiffs did here – issuing a subpoena, sending it to a third-party recipient with a request to accept service, and then negotiating an agreement to produce under threat of subpoena without notifying the other parties to the litigation.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 7, 2019
Page 3

time could not be found, whether in the United States or at some other convenient location. There is also substantial time remaining in jurisdictional discovery – Plaintiffs have not noticed any depositions of Saudi Arabia's own witnesses, and none has taken place. And, in any event, any difficulty is of Plaintiffs' own making based on their unjustified failure to produce the documents at issue.

*Second*, Plaintiffs' statement that they "reasonably believed that copies of th[e] documents" at issue "had already been provided to Saudi Arabia," ECF No. 4576, at 3, is not true. As the email correspondence shows, and as Plaintiffs' declarant admits, Saudi Arabia told Plaintiffs on May 10, 2019, that the documents had not been produced. ECF No. 4573-5, at 5; ECF No. 4577, ¶ 12. Nowhere in Plaintiffs' letter do they dispute that they had an obligation to produce the documents to Saudi Arabia at the time they received them. Nor do they dispute that they had an obligation to produce those documents when Saudi Arabia requested them on May 10 and again on June 3. To be sure, Saudi Arabia sought the documents from the Mosque directly in an attempt to avoid an unnecessary dispute – as courts in this District generally expect counsel to do. But those good-faith efforts (which did not succeed) do not alter Plaintiffs' own failures to comply with their undisputed duty to produce the documents or even to disclose that they had been produced until after Saudi Arabia had learned of them from another source.

*Third*, Plaintiffs' denial that they had an "agreement with the Mosque to withhold the documents from Saudi Arabia," ECF No. 4576, at 3, cannot be squared with their other statements. Plaintiffs repeatedly told Saudi Arabia that they could not produce the disputed documents to Saudi Arabia without the Mosque's consent or a court order.[3] Even in their letter, they state that "the Mosque refused *to allow* Plaintiffs to release the documents until late yesterday afternoon." *Id.* at 4 (emphasis added). If Plaintiffs had no agreement requiring the Mosque's consent or a court order to release the documents to Saudi Arabia, their failures to produce or even disclose the documents are inexplicable. If they had such an agreement, those failures are still unjustified because a private confidentiality agreement creates no discovery privilege, *see* ECF No. 4572, at 4; and their denial in their letter is a misrepresentation to the Court.[4]

---

[3] *See* ECF No. 4577-3, at 1 ("Given the Mosque's position, a Court order would be necessary for us to release the documents to you."); ECF No. 4573-5, at 2 ("We have no problem giving you a copy now, as long as there is no objection from the Mosque."); *id.* at 1 ("We were told yesterday . . . to 'hold off' on sending a copy of the documents to you").

[4] Plaintiffs also accuse Saudi Arabia of "falsely stat[ing]" that Plaintiffs received 42 additional documents on Wednesday. ECF No. 4576, at 4. That statement was based on a communication from the Mosque's counsel in a meet-and-confer call that the Mosque intended to produce those documents on that day. *See* ECF No. 4573, ¶ 18. Further, Plaintiffs themselves acknowledged on Wednesday evening that they too believed "documents [were] about to be produced to [them] today." ECF No. 4577-3, at 1. If the production was ultimately larger and arrived on Thursday rather than Wednesday, *see* ECF No. 4577, ¶ 19, that difference is not material and was not known to Saudi Arabia at the time of its Thursday-morning filing.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable Sarah Netburn
June 7, 2019
Page 4

        Respectfully submitted,

        /s/ *Michael K. Kellogg*

        Michael K. Kellogg
        *Counsel for the Kingdom of Saudi Arabia*

cc:   The Honorable George B. Daniels (via facsimile)
       All MDL Counsel of Record (via ECF)
       Mr. Eugene P. Ramirez and Mr. Michael R. Watts, Counsel for the
          Mosque (via email)