# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

IN RE TERRORIST ATTACKS ON                Civil Action No.
SEPTEMBER 11, 2001                        03 MDL 1570 (GBD) (SN)


--------------------------------------------------------x
**This document relates to:  All Cases**

## NOTICE OF ORAL DEPOSITION OF
## DEFENDANT WORLD ASSEMBLY OF MUSLIM YOUTH
## <u>PURSUANT TO FED. R. CIV. P. 30(b)(6)</u>

To:    Defendants World Assembly of Muslim Youth-Saudi Arabia ("WAMY-SA") and World Assembly of Muslim Youth-International ("WAMY-Intl") (collectively "WAMY"), through its attorney of record, Omar Mohammedi, 233 Broadway, Suite 820, Woolworth Building, New York, NY 10279.

   **PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and pursuant to the protocols for conducting depositions as authorized by the Court in the above-captioned matter (ECF No. 3894 on the docket in the above-captioned multidistrict litigation and attached hereto as Exhibit A), the Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, will take the deposition upon oral examination of defendant WAMY beginning at 9:30 a.m. on the 11th day of July, 2019, and continuing on the 13th day of July, 2019, and from day to day on adjourned dates until completed with such adjournments as to time and place as may be necessary.

   1. The deposition shall be taken before a notary public or other person authorized by law to administer oaths, at a location to be determined in Madrid, Spain, or such other time and place agreed upon by counsel.

   2. The deposition will be recorded by stenographic, sound, and video means.

   3. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, WAMY is directed to designate a person or persons knowledgeable and prepared to testify on behalf of WAMY concerning all information known or reasonably available to WAMY regarding the matters for examination described below.

   4. The Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, request that WAMY provide the names and titles of the person or persons it will designate to give testimony and summaries of the areas in which each designated person will give testimony no later than 10 business days before the date of the deposition. (*See* ABA, Civil Discovery Standards, at 37.)

   5. The Plaintiffs' Executive Committees, on behalf of the plaintiffs in the above-captioned multidistrict litigation, request that WAMY produce at each deposition a copy of the designated representative's current curriculum vitae or résumé for the purposes of inspection and/or photocopying.

6. By designating a representative, WAMY indicates its representative has authority to speak on its behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

7. If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, WAMY must immediately provide a substitute knowledgeable witness, even if the initial designation was made in good faith.

8. The testimony elicited in the deposition from the designated witness represents WAMY's knowledge, not the individual deponent's knowledge. WAMY must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if WAMY's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers. "Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

9. This deposition shall be used for any purpose permitted under the Federal Rules of Civil Procedure.

## Areas of Inquiry

1. All information concerning the relationship between WAMY and the Kingdom of Saudi Arabia (including but not limited to the Supreme Council for Islamic Affairs, Ministry of Islamic Affairs, the Ministry of Foreign Affairs, Ministry of Interior, Saudi embassies and consulates, or any other ministry or entity of the Kingdom of Saudi Arabia), including but not limited to:

   a. Communications between WAMY and the Kingdom of Saudi Arabia;

   b. the Kingdom of Saudi Arabia's funding of WAMY's annual budget;

   c. the Kingdom of Saudi Arabia's control, oversight, supervision, and management over WAMY's operations, finances, activities, and fundraising (both within the Kingdom and abroad);

   d. Saudi Royal Decrees relating to WAMY's activities and funding; and

   e. the Kingdom of Saudi Arabia's relationship with WAMY senior officials, including the appointment of WAMY's senior leadership.

2. All information concerning financial support provided to WAMY by officials of the Saudi government or members of the Saudi Royal family, regardless of whether WAMY claims such contributions were provided in a personal or official capacity.

3. All information concerning WAMY's ties to Prince Abdul Aziz bin Fahd.

4. All information concerning WAMY's ties to Sheikh Sa'ad bin Abdullah al Buraik.

2

5. All information concerning WAMY's General Assembly, General Secretariat, and Board of Trustees ("WAMY Governing Bodies"), including but not limited to:

   a. The WAMY Governing Bodies' oversight, supervision, and management over WAMY's operations, finances, activities, and fundraising (both within the Kingdom and abroad).

   b. meetings of the WAMY Governing Bodies;

   c. reporting submitted to, and reviewed by, the WAMY Governing Bodies concerning WAMY's operations, finances, activities, and fundraising;

   d. the WAMY Governing Bodies' relationship with the Kingdom of Saudi Arabia; and

   e. communications with the Kingdom of Saudi Arabia.

6. All information concerning the relationship between WAMY and its branch offices (both within the Kingdom and abroad), including but not limited to:

   a. The role of WAMY's Governing Bodies in setting the policies and procedures for each of the WAMY branch offices, and the appointment of officials to run the branch offices;

   b. the role and responsibilities of WAMY's Department of Overseas Offices;

   c. the annual budget for WAMY's branch offices;

   d. annual and periodic reports and other documentation submitted to WAMY headquarters by the branch offices concerning their operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plans, and employees;

   e. auditing of the WAMY branch offices by internal WAMY auditors and accountants, and external auditors and accountants;

   f. delegations of high-ranking WAMY officials sent to conduct periodic inspections of the WAMY branch offices; and

   g. actions taken to secure and produce all documents responsive to Plaintiffs' requests for production of documents concerning WAMY's branch offices, including but not limited to all actions taken by WAMY to verify that all branch offices (both within the Kingdom and abroad) complied with WAMY's directives to search for, collect, and organize responsive documents for production in the MDL litigation.

7. All information concerning the relationship between WAMY and its branch office in the United States ("WAMY-International"), including but not limited to:

   a. WAMY's relationship with WAMY-International leadership, including but not limited to Abdullah bin Laden and his appointment to serve as president of WAMY-International as approved by the Ministry of Islamic Affairs;

   b. Abdullah bin Laden's role and responsibilities as president of WAMY-International;

   c. the annual budget for WAMY-International;

   d. annual and periodic reports and other documentation submitted to WAMY headquarters

by WAMY-International concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;

e.  WAMY-International's relationship with Anwar Aulaqi;

f.  WAMY-International's relationship with Said Rageah and/or the Ayad Islamic Center of Laurel, MD;

g.  WAMY-International's relationship with the Institute of Islamic and Arabic Sciences in America;

h.  WAMY-International's relationship with Khalid al-Sowailem; and

i.  WAMY-International's relationship with the Global Relief Foundation.

8.  All information concerning the relationship between WAMY and its branch office in Canada ("WAMY-Canada"), including but not limited to:

a.  WAMY's relationship with WAMY-Canada leadership, including but not limited to Mohammed Khatib, Talhah al Jarrard, and Ayman al Taher;

b.  annual and periodic reports and other documentation submitted to WAMY headquarters by WAMY-Canada concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;

c.  the annual budget for WAMY-Canada, and the role of WAMY-International in authorizing and distributing WAMY-Canada's budget;

d.  actions taken to obtain and produce all documents responsive to Plaintiffs' requests for production of documents concerning WAMY-Canada, including but not limited to WAMY-Canada's banking records from Bank of Montreal and TD Canada Trust;

e.  all information concerning the Canadian government's investigation and audit of WAMY-Canada, conducted by the Canada Revenue Agency, finding that "WAMY maintained close relationships with and provided funding to organizations that were engaged in providing resources to entities engaged in terrorist activities;"

f.  all information concerning any internal investigation conducted by WAMY concerning the Canadian government's investigation and findings, including but not limited to any communications between WAMY and WAMY-Canada; and

g.  communications with the Canadian government concerning the Canadian government's investigation and audit.

9.  All information concerning the relationship between WAMY and its branch office in Kashmir ("WAMY-Kashmir"), including but not limited to:

a.  Annual and periodic reports and other documentation submitted to WAMY headquarters by WAMY-Kashmir concerning its operations and activities, budget and finances, revenues and expenses, banking records, fundraising, work plan, and employees;;

b.  the annual budget for WAMY-Kashmir; and

4

    c.  WAMY's Kashmir Youth Committee.

10. All information concerning the relationship between WAMY and the Benevolence International Foundation (BIF"), including but not limited to:

    a.  WAMY's relationship with BIF's predecessor, Lajnat al Birr al Islamiyya;

    b.  WAMY's relationship with Executive Order 13224 Designee Adel Batterjee;

    c.  all information concerning the Canadian government's investigation and audit of WAMY-Canada, conducted by the Canada Revenue Agency, concluding that WAMY-Canada shared common officers, office space, contact information, and bank accounts with Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Fund-Canada ("BIF-Canada");

    d.  all information concerning the Canadian government's investigation and audit, conducted by the Canada Revenue Agency, concluding that WAMY-Canada provided direct funding to Executive Order 13224 Specially Designated Global Terrorist entity Benevolence International Foundation ("BIF-USA"); and

    e.  all information concerning any internal investigation conducted by WAMY concerning the Canadian government's investigation and findings, including but not limited to any communications between WAMY and WAMY-Canada.

11. All information concerning the relationship(s) between WAMY and the Saudi-based da'wah organizations, including but not limited to the Muslim World League ("MWL"), International Islamic Relief Organization ("IIRO"), Al Haramain Islamic Foundation; Saudi Joint Relief Committee ("SJRC"), Saudi Red Crescent ("SRC"), and Al Haramain Al Masjed Al Aqsa.

12. All information concerning the relationship(s) between WAMY and Abdullah al Naseef and Abdullah Mohsen al Turki, including but not limited to the positions those individuals held or hold within WAMY, and their roles and responsibilities.

13. The substance, content, and authenticity of the documents produced by WAMY in the course of this multidistrict litigation.

14. All information concerning the actions taken to locate and produce documents required to be produced in this litigation, including but not limited to:

    a.  WAMY's document productions;

    b.  Magistrate Judge Sarah Netburn's August 29, 2018 Opinion and Order (ECF No. 4130) directing WAMY to search for and produce various categories of documents, including but not limited to:  (i) documents responsive to Plaintiffs' Fourth Set of Requests for Production of Documents, dated August 22, 2013; (ii) reports, meeting minutes, and other records relating to WAMY's governing bodies, boards, and committees; (iii) documents relating to WAMY's relationship with the Saudi government; (iv) documents relating to WAMY's relationship with the Benevolence International Foundation ("BIF"); (v) documents relating to

WAMY's relationship with or financial support for Hamas, Fatah, and the Palestinian Islamic Jihad; and

c.   Magistrate Judge Sarah Netburn's January 15, 2019 Opinion and Order (ECF No. 4350) directing WAMY to search for and produce relevant banking records.

15.   All information concerning WAMY's relationship(s) with, and financial support for, designated terrorists and terrorist organizations, including but not limited to Osama bin Laden, al Qaeda, Hamas, Fatah, Palestinian Islamic Jihad, and Taibah International.

16.   All information concerning the allegation that WAMY financially supported jihadist activities in Bosnia.

17.   All information concerning the allegation that WAMY financially supported jihadist activities in Chechnya, including senior al Qaeda member Amir Khattab who was deployed to Chechnya by Osama bin Laden to organize al Qaeda's operations in that region.

18.   All information concerning the allegation that WAMY Secretary-General Maneh al Johani called on Muslims to donate funds to WAMY to buy "arms and ammunition" for the "mujahideen" in Chechnya.

19.   All information concerning the allegation that WAMY financially supported the Moro Islamic Liberation Front ("MILF"), a terrorist group associated with al Qaeda.

20.   All information concerning the allegation that WAMY financially supported violent jihadist groups operating in Kashmir under the al Qaeda umbrella, including but not limited to Lashkar-e-Taibah, Hizb-ul-Mujahideen, and the Students' Islamic Movement of India ("SIMI").

21.   All information concerning the allegation that Nazir Qureshi, a WAMY Assistant Secretary General, provided money and other assets to al Qaeda associated terrorist groups in Kashmir.

22.   All information concerning the allegation that WAMY official Mohammed Ayyub Thukar was a principal financier of al Qaeda affiliated Hizb-ul-Mujahideen.

23.   All information concerning the allegation that Pakistani intelligence officials, operating in conjunction with the Federal Bureau of Investigation ("FBI"), raided WAMY's offices in Peshawar in November 2001, based on its ties to al Qaeda.

24.   All information concerning the allegation that during the 1993 World Trade Center bombing investigation, U.S. officials discovered that WAMY had distributed an al Qaeda training manual, *Military Lessons in the Jihad Against the Tyrants*, to Ahmed Ajaj who was convicted for his role in the attack.

25.   All information concerning the 2004 raid of WAMY-International by the FBI and other federal authorities in connection with the investigation of the SAAR Network's role in sponsoring al Qaeda.

26.   All information concerning the allegation that WAMY was implicated in an al Qaeda plot to hijack a plane departing from Romania and crash it into Heathrow Airport in London.

27.   All information concerning the allegation that WAMY supported al Qaeda affiliated extremists through its participation in the Islamic Coordination Council, an umbrella organization

established in Peshawar, Pakistan in 1985 to coordinate and maximize the funding of the foreign jihadists in Afghanistan who later joined Osama bin Laden's al Qaeda.

28. All information concerning WAMY's role with respect to the content, editing, and distribution of publications that promote anti-American, anti-Semitic and pro-jihadist messages, including but not limited to: *Islamic Views*; *Islamic Camps: Objectives, Program Outlines, and Preparatory Steps*; and *A Handy Encyclopedia of Contemporary Religions and Sects*.

29. All information concerning the educational content of WAMY's summer camps.

30. All information provided by WAMY in connection with any investigation regarding the potential connection between WAMY and support for al Qaeda, associated terrorist groups, and Islamic extremists, including information provided to representatives of the United States authorities, by Kingdom of Saudi Arabian authorities, or others.


Dated:  May 22, 2019                                    Respectfully,


                                                        /s/ J. Scott Tarbutton
                                                        J.  Scott Tarbutton
                                                        COZEN O'CONNOR
                                                        1650 Market Street
                                                        Philadelphia, PA 19103
                                                        Tel: (215) 665-2000
                                                        starbutton@cozen.com
                                                        *Attorneys for the Plaintiffs' Exec. Committees*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2019, I caused a copy of the foregoing Notice of Oral Deposition of Defendant World Assembly of Muslim Youth Pursuant to Federal Rule of Civil Procedure 30(b)(6) to be served by email upon the following for further distribution to counsel for all parties in this action:

Jodi Westbrook Flowers, Esq.
Robert T. Haefele, Esq.
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel: (843) 216-9000
Fax: (843) 216-9450
jflowers@motleyrice.com
rhaefele@motleyrice.com

Omar T. Mohammedi, Esq.
Frederick J. Goetz, Esq.
LAW FIRM OF
OMAR T. MOHAMMEDI, LLC
233 Broadway
Suite 820
Woolworth Building
New York, NY 10279
Tel: (212) 725-3826
Fax: (212) 202-7621
omohammedi@otmlaw.com
fgoetz@goetzeckland.com

James P. Kreindler, Esq.
Andrew J. Maloney, III, Esq.
Steven R. Pounian, Esq.
KREINDLER & KREINDLER, LLP
750 Third Avenue
New York, NY 10017
Tel: (212) 687-8181
Fax: (212) 972-9432
jkreindler@kreindler.com
amaloney@kreindler.com
spounian@kreindler.com

Michael K. Kellogg, Esq.
Mark C. Hansen, Esq.
Gregory G. Rapawy, Esq.
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, PLLC
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
mkellogg@kellogghansen.com
mhansen@kellogghansen.com
grapawy@kellogghansen.com

Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
jgoldman@andersonkill.com

Alan Kabat, Esq.
BERNABEI & KABAT, PLLC
1400 16th Street, N.W., Suite 500
Washington, D.C. 20036
Tel: (202) 745-1942
Fax: (202) 745-2627
kabat@bernabeipllc.com

/s/_____
J. Scott Tarbutton, Esq.

# **Exhibit A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:

   **TERRORIST ATTACKS ON**
   **SEPTEMBER 11, 2001**

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/31/2018

**03-MDL-1570 (GBD)(SN)**

**DEPOSITION PROTOCOL**
**ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

1.  The United States Judicial Panel on Multidistrict Litigation ("JPML") established *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, and began transferring cases related to the 9/11 terrorist attacks from various judicial districts to this Court ("the MDL Court") for coordinated or consolidated pretrial proceedings. In addition to cases transferred into the MDL by the JPML, other cases related to the 9/11 terrorist attacks have been consolidated with this multidistrict proceeding (collectively, "MDL Proceeding").

2.  A fundamental purpose of multidistrict litigation under 28 U.S.C. § 1407 is to facilitate the conduct of efficient and non-duplicative discovery relating to questions of fact common to transferred and coordinated actions.

3.  The Parties have expressed an intention to conduct deposition discovery in the MDL Proceeding. Although several prior orders (*see, e.g.*, ECF Nos. 247, 248, 1547, and 1900) contain provisions relating to depositions in the MDL Proceeding, the Court directed the Parties to meet and confer (*see* ECF No. 3541) to develop more specific protocols.

## I.  General Provisions

4.  Prior pretrial Orders entered in the MDL Proceeding, including the Protective Order this Court entered on October 3, 2006 (ECF No. 1900), remain in effect to the extent that they are not in conflict with the provisions of this Order. To the extent that this Order conflicts, or is alleged to conflict, with rights or protections afforded by the national laws, rules, or regulations of any foreign country or by international treaty, the witness or party claiming those rights and protections shall meet and confer with the Parties regarding a resolution of the alleged conflicts. If the Parties cannot reach agreement, the issue(s) shall be submitted promptly for judicial resolution.

5.  Federal Rule of Civil Procedure 6(a) shall govern the computation of time periods set forth in this Order. Unless specifically modified herein, nothing in this order shall be construed to abrogate the Federal Rules of Civil Procedure.

6.  By March 2, 2018, each Party in merits discovery must amend its Witness Disclosure or state that it has no supplementation of its prior Witness Disclosure. Thereafter, each Party

in merits discovery remains under a continuing duty to supplement its Witness Disclosure. Parties will begin to take fact witness depositions in April 2018.

7.   Parties will conclude all depositions of fact witnesses related to Plaintiffs' claims against Defendants in merits and jurisdictional discovery by January 31, 2019.

## II.   Scope

8.   The MDL Court has considered the Parties' positions and now issues the following protocols to apply to all Parties in the MDL Proceeding.

9.   This Order provides the protocols applicable to depositions of all fact witnesses (including non-party witnesses and witnesses under Federal Rule of Civil Procedure 30(b)(6)) in liability discovery and in jurisdictional discovery in the MDL Proceeding.

10.   This Order does not provide protocols applicable to depositions in damages discovery or of expert witnesses. The Parties will meet and confer regarding protocols to apply to those depositions at a later date.

11.   Nothing in this Order shall preclude any Party or witness to which or whom this Order applies from seeking to modify it later for good cause shown; prior to doing so, however, counsel shall meet and confer among themselves in a good-faith effort to reach agreement as to the appropriate scope of any modifications or revisions to this Order.

## III.   Definitions

12.   The term "Party" refers to each plaintiff or defendant in the MDL Proceeding.

13.   The term "side" refers to either all defendants collectively or all plaintiffs collectively in the MDL Proceeding.

14.   The term "Fact Witness" refers to a fact witness (including a party) whom one or more Parties seek to depose in the MDL.

15.   The term "Witness Disclosure" means the operative list of persons disclosed by a Party or side as required by the Court. See, e.g., Tr. of Record 13–14, 03-MDL-1570 (Apr. 12, 2011).

16.   The term "Deposition Point Persons" refers collectively to the MDL Plaintiffs' Executive Committees co-chairs and MDL Plaintiffs' Liaison counsel (or their designees), the MDL Defendants' Executive Committee co-chairs (or their designees), and (where known) counsel for the deponent.

## IV.   Stipulations

17.   The sides may stipulate to different arrangements or rules other than those specified in this Order, except as to the deadlines in paragraph 7.

## V.   Deposition Notices, Scheduling, and Logistics

18.   All depositions in the MDL Proceeding shall be noticed and conducted pursuant to the Federal Rules of Civil Procedure and this Order.

19.   Each deposition notice in the MDL Proceeding shall comply with Federal Rule of Civil Procedure 30(b) and shall include:

- The name of the proposed witness (except for a Rule 30(b)(6) deposition notice);

- The date, time, and location of the deposition; and

- The name, address, telephone number, and email contact information of an attorney point of contact designated by the Party noticing the deposition so that interested counsel may obtain information regarding the deposition.

20.   Each deposition notice shall clearly state whether the deposition will be videotaped in addition to being recorded by stenographic means.

21.   This Order, in its entirety, shall be attached to any subpoena or deposition notice for a non-party's deposition.

22.   Notices for Depositions in the MDL Proceeding shall be served by e-mail, facsimile, or other electronic means on the MDL Plaintiffs' Executive Committees co-chairs and MDL Plaintiffs' Liaison Counsel (or their designees), the MDL Defendants' Executive Committee co-chairs (or their designees), and (where known) counsel for the deponent (collectively, "Deposition Point Persons").

23.   Each MDL Plaintiffs' and Defendants' Liaison Counsel, or his or her designee, shall be responsible for distributing Notices for Depositions to other counsel for plaintiffs and defendants, respectively.

24.   A deposition notice may be served at any time, provided that it is served sufficiently in advance of the close of fact discovery so that the deposition takes place before the close of fact discovery.

25.   Deposition Point Persons shall confer before noticing a deposition in an effort to schedule depositions for mutually convenient dates, times and locations. To the extent that a proposed witness is unable to be deposed on the noticed date of his or her deposition, Deposition Point Persons shall promptly confer to discuss alternative dates.

26.   Deposition Point Persons are expected to cooperate and coordinate the scheduling of depositions in an effort to accommodate all counsel and Parties and to schedule the depositions in the most efficient manner feasible regarding date, time, and location. Toward that goal, the Deposition Point Persons shall periodically meet and confer to

Case 1:03-md-01570-GBD-SN Document 4585-1 Filed 06/10/19 Page 14 of 25

develop a plan for scheduling depositions that will maximize efficiency and control costs by attempting to schedule witnesses to be deposed in blocks of time, especially where the depositions are scheduled to occur outside of the United States.

27. To ensure the expeditious progress of the MDL Proceeding, in the event that the Deposition Point Persons are unable to reach agreements—either advance agreement on dates, times and location, or agreement as to blocks of depositions to be scheduled—the noticing Party may notice the deposition in accordance with this Order; should any other Party or the witness maintain a need for relief thereon, such request for relief shall be submitted promptly for judicial resolution.

28. To allow for planning, preparation, and coordination, fact depositions of witnesses residing in the United States must be noticed at least fourteen (14) days before they are scheduled to occur. Because additional planning, preparation, coordination, and travel is attendant to depositions conducted outside the United States, depositions outside of the United States must be noticed at least twenty-one (21) days before they are scheduled to occur.

29. Expedited depositions may be scheduled by agreement of the Deposition Point Persons in writing or as ordered by the MDL Court, and in which event the time limitations for notice may be lessened, as well as the time limitation for production of any documents sought by third-party subpoena in conjunction with such a deposition.

30. In the absence of agreement, for witnesses who reside or work in the United States, a deposition may take place within (a) the county in which the deponent resides, (b) the county in which the deponent is employed, (c) the judicial district of the MDL Court, or (d) a mutually agreeable location.

31. For those witnesses who reside outside of the United States, a deposition shall take place in New York, New York; London, United Kingdom; Madrid, Spain; and Rome, Italy (collectively, "Presumptively Acceptable Locations"). Notwithstanding the preceding sentence, upon agreement of the Parties, a deposition may take place in some location other than those four Presumptively Acceptable Locations. Locations covered by a "Travel Warning" by the U.S. State Department may be inappropriate locations for conducting depositions and the Parties should meet and confer to ensure a safe location. The Parties should also discuss any applicable local laws that may affect the taking of the deposition.

32. If the Parties and deponent agree, the deposition may be taken by videoconference.

33. The costs of the deposition venue and, if applicable, the costs of securing a court reporter shall be borne by the Party or Parties noticing the deposition.

34. For any notice of deposition where there is an accompanying request for the production of documents, the producing Party shall, within seven (7) days of receipt of such notice, alert counsel for the noticing Party and the Deposition Point Persons of any reason that the requested documents cannot be produced a minimum of seven (7) days prior to the date noticed for the deposition.

## VI.    Number of depositions allowed

35.    Fact witness depositions shall be limited to the depositions of witnesses on the Parties' applicable Witness Disclosures.  Depositions of Fact Witnesses in this case will be limited to seventy five (75) depositions per side.

36.    Absent agreement of the Parties or as otherwise ordered by the MDL Court for good cause shown, no more than five (5) days of depositions shall take place in any calendar week and no more than twenty (20) days of depositions shall take place in any calendar month.  This provision does not limit the ability of the Parties to establish a reasonable schedule for the multi-tracking of depositions, and the Parties are to meet and confer within sixty (60) days of the entry of this Order regarding a schedule for an initial grouping of depositions, and to present a proposal to the MDL Court within ninety (90) days of the entry of this Order.  To the extent that the Parties cannot agree on a schedule, the Parties shall file with the MDL Court separate proposed schedules.  The Parties shall routinely meet and confer in order to select the persons or entities to be deposed thereafter.  Unless otherwise agreed by the Parties or ordered by the MDL Court, depositions shall not be taken on days that would interfere with a deponent's religious observances.  In addition, counsel and Parties shall also use their best efforts to accommodate any conflict due to religious observance of counsel whose participation in the deposition is necessary.

37.    The Parties and the MDL Court desire to minimize the expense and inconvenience of this litigation by providing for a single deposition of any Fact Witness.  A Fact Witness may be deposed only once in the MDL Proceeding unless (i) otherwise agreed to by the sides in writing, or (ii) authorized by an order of the MDL Court upon a showing of good cause by the Party seeking the additional deposition. This limitation of one deposition per Fact Witness shall not apply to a Rule 30(b)(6) deposition where the entity designates a deponent that has previously been deposed in his individual capacity as a Fact Witness.

38.    Each Fact Witness will only be deposed once, whether the testimony is for jurisdictional or merits discovery.

## VII.    Touhy Requests

39.    Access to the testimony of a current or former government employee is often restricted by U.S. or state law or regulation and may only proceed with government permission upon request (a "Touhy request").  The sides shall meet and confer on the subjects to be included in a Touhy request so that the request includes all topics desired by both sides.

## VIII.    Rescheduling and Resolution of Deposition Disputes

40.    Any Party or witness receiving notice of a deposition that disputes the timing or scheduling of the deposition or that otherwise objects to the deposition shall send the Party seeking the deposition a written objection to the deposition and, if the deposition has been noticed, such written objection shall be sent no more than five (5) days after the objecting Party receives notice of the deposition.  Before bringing to the MDL Court's attention the dispute(s) raised in the objection, the Parties must first attempt to resolve the dispute(s) in

good faith. If counsel are unable to resolve the dispute(s) identified in the objection after good faith efforts to do so, the dispute(s) may be presented to the MDL Court for resolution no more than fourteen (14) days after the deposition notice was served. The Parties may agree to shorten the time periods to expedite the MDL Court's attention to the dispute(s). A deposition notice is not suspended until such time as the Party opposing the deposition notice serves and files a written motion bringing the dispute(s) to the MDL Court's attention. In the event of such a motion, the deposition shall not go forward unless (a) the Parties and the deponent reach an agreement in writing to resolve the objection or (b) the MDL Court resolves the objection and permits the deposition to take place. Pursuant to Federal Rule of Civil Procedure 26, the burden shall be on the Party or witness seeking to quash or otherwise limit the notice to demonstrate why an order should issue protecting the Party or witness from the discovery sought.

41.  A Party shall make a motion regarding a deposition by submitting a letter of not more than three (3) single-spaced pages setting forth its position and the Parties' efforts to resolve the dispute. The other side may then submit a responding letter of no more than three (3) single-spaced pages within five (5) days of the filing of a letter motion.

42.  Once a deposition has been scheduled and no timely motion is made concerning the deposition within fourteen (14) days before the scheduled date for the deposition, the deposition shall proceed as scheduled, except upon written agreement by both sides or for good cause.

43.  Disputes regarding any matters arising under this Order, pertaining to a deposition in the MDL Proceeding shall, in the first instance, be brought before the MDL Court rather than the district court in the district in which the deposition is being conducted.

44.  Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule, require rescheduling of the deposition, or possibly result in a request to conduct a supplemental deposition, shall be presented to MDL Court by telephone. In the event the presiding Judge or Magistrate Judge are not available, all efforts will be made to continue the deposition as to matters not in dispute with full reservation of rights for a ruling at the earliest possible time.

45.  If the nature of the dispute would not stop the deposition from going forward, the Parties may agree among themselves either to present the matter to the MDL Court by telephone or to present the dispute in writing.

46.  The court reporter shall make a transcript of any telephonic proceeding with the MDL Court, which shall be transcribed immediately and bound separately. Nothing in this Order shall deny counsel the right to (1) suspend a deposition pursuant to Federal Rule of Civil Procedure 30(d)(3); or (2) file an appropriate motion with the MDL Court after the deposition and appear personally before the MDL Court.

## IX.   Recording

47.    A court reporter who qualifies as such consistent with Federal Rules of Civil Procedure 28 and 30(b)(5)(A) shall stenographically record all deposition proceedings and testimony and provide a "real time" transcription feed to devices such as tablets and computers, including computers not located at the deposition venue.  The court reporter shall administer the oath or affirmation to the deponent. The written transcript prepared by the court reporter shall constitute the official record of the deposition for purposes of Federal Rule of Civil Procedure 30's requirements concerning filing, retention, certification, and the like.

48.    A Party may cause a deposition to be videotaped by so indicating in its Notice of Deposition or by providing written notice no less than ten (10) days before the deposition, by email to the witness and Plaintiffs' and Defendants' Executive Committees that the deposition will be videotaped.  The Party causing a deposition to be videotaped shall be responsible for arranging a videographer and bearing the costs of that videographer's attendance.

49.    Services or products offered or provided by the operator of the videotape equipment must be offered to counsel for all Parties, regardless of which Party is financing the videotaping of the deposition.  Further, any video operator is subject to the orders of this Court, including but not limited to the Protective Order (ECF No. 1900).  The video operator shall be given a copy of all applicable orders at least five (5) days before the deposition.

50.    The operator of the videotape recording equipment is subject to the provisions of Federal Rule of Civil Procedure 28(c). The video operator shall record the proceedings fairly and accurately.

51.    Each witness, attorney, and other person attending the deposition (in person, electronically, or telephonically) shall be identified on the record at the commencement of the deposition. The videotape recording shall include the court reporter administering the oath or affirmation to the witness. Thereafter, the deponent and, if necessary, exhibits and any demonstratives will be videotaped.

52.    The videotaping of the deposition will be conducted in a manner to replicate, to the extent feasible, the presentation at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted with the witness seated in front of a solid background with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as might be reasonably necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.

53.    Video recording will be suspended during all "off the record" discussions and the video operator shall note such suspensions. The deposition will remain "on the record" absent agreement of counsel.

54.    At the conclusion of the deposition, a statement shall be made on the videotape, on the audio recording, and in the stenographic record that the deposition has concluded and will set forth any stipulations between the Parties that have not already been placed on the record.

55.    The videotape operator shall use recording equipment with an appropriate timer and, unless otherwise agreed to by the Parties, shall prepare and provide counsel with a log, cross-referenced with timestamps, that identifies the portion of the recording at which examination by different counsel begins and ends and when there is any interruption of continuous tape recording, whether for recess, "off the record" discussions by counsel, mechanical failure, or other interruption.

56.    The video operator shall maintain custody of the original video medium in its original condition, without editing in any fashion.

57.    The video and audio recordings shall be treated the same as the transcript pursuant to both this Order and the prior protective order (ECF No. 1900) and any modifications of those orders.

58.    The Parties shall meet and confer to determine whether an agreement can be reached to limit the number of independent court reporting and videography firms involved in recording the deposition proceedings covered by this Order and to develop a cost-sharing agreement between the various Parties or Party groups for the associated fees, including the cost of the facilities where depositions are conducted.

59.    Absent agreement, each side shall bear its own costs in securing copies of the deposition transcript and exhibits, or recording.

## X.    **Attendance**

60.    Unless otherwise agreed to by the Parties or ordered under Federal Rule of Civil Procedure 26(c) and subject to the terms of this Court's Order at ECF No. 1900 ("Protective Order"), depositions may be attended (either in person or remotely) only by the witness, and counsel for the witness; attorneys of record in the MDL Proceeding, court reporters, videographers, and any person who is assisting in the litigation, and the Parties, their in-house counsel, and corporate officers. All persons in attendance (either in person or remotely) must be noted on the deposition record.

61.    Upon motion, and for good cause shown, the MDL Court may permit attendance by a person who does not fall within any of the categories above or prohibit attendance by a person who does fall within any of the categories.

62.    While a deponent is being examined about any information subject to the Protective Order entered in this litigation, persons to whom disclosure is not authorized shall be excluded.

63.    To ensure adequate facilities, not fewer than fifteen (15) days prior to the deposition, whenever feasible, counsel intending to attend in person a deposition noticed in the MDL Proceeding should advise the Deposition Point Persons how many permitted persons

counsel expects to bring to the deposition. The Deposition Point Persons will then confer regarding the expected attendance and make a final determination not fewer than five (5) business days prior to the scheduled date as to who is likely to attend the deposition in person and remotely.

64.   A witness (other than a Party) who appears on any Party's operative Witness Disclosure is prohibited from attending other depositions in the MDL Proceeding prior to the taking of that witness' own deposition.  If an individual who is a Party intends to attend a deposition prior to the deposition of that individual, counsel for that individual shall give the other side notice at least fourteen (14) days in advance of the deposition so that the other side may object and, if necessary, seek resolution of the dispute from the MDL Court after the Parties meet and confer.

65.   Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to a court.

66.   The Plaintiffs' Executive Committees shall designate an attorney to serve as the lead examiner to conduct the principal examination of each deponent on behalf of the MDL Plaintiffs.  The MDL Defendants shall designate an attorney to serve as the lead examiner to conduct the principal examination of each deponent on behalf of the MDL Defendants.

67.   Given deposition time limits and in the interest of efficiency, the Plaintiffs' Executive Committees shall designate the attorneys to examine each witness, and the Court encourages the Committees to designate no more than three attorneys to serve as the examiners of each deponent on behalf of all Plaintiffs.

68.   Plaintiffs' Counsel shall diligently work together to ensure that questioning on behalf of Plaintiffs in the MDL proceeds in the most efficient manner possible.

69.   Given deposition time limits and in the interest of efficiency, the MDL Defendants shall designate the attorneys to examine each witness, and the Court encourages the MDL Defendants to designate no more than three attorneys to serve as the principal examiners of each deponent on behalf of defendants.

70.   All counsel shall use reasonable efforts not to ask duplicative questions of a witness.

## XI.   Remote Participation

71.   If a person permitted to attend the deposition requests to participate remotely by telephone or video conference at least ten (10) days before a deposition, telephone and/or video conference facilities shall be provided so that Parties wishing to participate in the deposition by telephone or video conference may do so at their own expense.  Any party attending remotely must be identified on the deposition record.

72.   By indicating in a deposition notice that it wishes to examine a witness over the telephone or by video conference, a noticing Party shall be deemed to have moved for such an order under Federal Rule of Civil Procedure 30(b)(4).  Unless an objection is filed and served within five (5) days after such notice is received, the MDL Court shall be deemed to have

granted the motion. Other Parties may examine the deponent telephonically or in person. However, all persons present in the location with the deponent shall be identified on the deposition record and shall not by word, sign, or other means coach or suggest answers to the deponent and shall act in accordance with applicable Federal Rules of Civil Procedure and rules of professional conduct governing interaction with the deponent. In addition, the court reporter stenographically recording the deposition shall be located in the same room as the deponent.

73. Technical difficulties with telephonic participation shall not constitute grounds for postponing the deposition or for rendering inadmissible a deposition that otherwise would be admissible in evidence. If technical problems with the telephonic facilities create disruptions in the deposition, counsel attending a deposition in person may discontinue telephonic participation for such periods of time as necessary.

74. To the extent economically feasible, Parties may seek to participate in the deposition at locations that are remote from the deposition venue through the use of video streaming over secure Internet connections. The Parties shall use their best efforts to provide for remote real-time participation by interested counsel, such as through the use of a private group chat system that enables remote counsel to observe the witness through video and audio broadcast. The viewing of or participation in any deposition via the Internet is expressly subject to the Court's Protective Order (ECF No. 1900). No party may record the deposition by video or audio means. Parties participating in the video stream shall bear its costs and be responsible for making arrangements to create the video stream, are responsible for providing his or her own Internet connection, and shall be identified on the deposition record.

## XII.   <u>Duration of Depositions</u>

75. Whenever feasible, depositions of fact witnesses should be completed in a single day. All questioning by the noticing side shall be limited to seven (7) hours. During the scheduling of a deposition, prior to noticing a deposition, if a side believes there is an exception to the 7-hour limitation on the taking of a deposition, then the parties shall meet and confer to reach an agreement.

76. The non-noticing side of the deposition will also be permitted to question the witness for up to seven (7) hours. To the extent the non-noticing side for a deposition reasonably anticipates that its questioning of the witness will exceed ninety minutes, it will provide notice at least ten (10) days before the scheduled deposition, so arrangements can be made for the deposition to continue into an additional day, if necessary; provided, however, that this provision shall not be interpreted to preclude any Party on the non-noticing side from questioning a witness for the time that Party may deem necessary up to its limit of seven (7) hours. The Parties may, by agreement, modify this provision in the context of a particular deposition as may be appropriate to facilitate to enhance coordination.

77. Upon consent of counsel in the MDL Proceeding, the Parties may agree to consecutive depositions of an individual who is both a fact witness and a corporate representative designee under Federal Rule of Civil Procedure 30(b)(6). One deposition will be taken in

his or her individual capacity (as a fact witness) and a separate deposition will be taken in his or her capacity as a corporate representative. If such a witness is later designated as an expert witness, then the witness may be required to submit to additional deposition questioning.

78. Absent agreement of the Parties or as otherwise ordered by the MDL Court for good cause shown, a deposition day shall commence at 8:30 a.m. in the time zone in which the deposition is taking place and terminate for the day no later than at the conclusion of eight and a half (8.5) hours of examination time.

79. The time limits for a deposition set forth above shall be based on the actual time spent in examining the witness. Time spent on attorney colloquy and breaks (including for lunch) shall not be counted toward the time limit.

80. All time limits for depositions shall be increased by half in the event that the witness requires a translator.

81. The Parties are encouraged to make full and efficient use of each deposition day so as not to waste valuable time and incur unnecessary expenses. Not every witness will require an examination that lasts as long as the presumptive time limits set forth above. To the extent the Parties can anticipate such, they will attempt to agree to lesser time limits and, for planning purposes, will provide other deposition attendees with advance notice of any agreement to lessen the examination time. This procedure may be particularly useful in the event that more than one deposition is scheduled on a given day.

## XIII.   Examination, Objections, Confidentiality, Consultation

82. If the deposition was noticed by counsel for Plaintiffs, the questioning of the witness will be conducted in the following sequence: (1) the lead examiner for Plaintiffs' Executive Committees; (2) the other designated Plaintiffs' examiners, (3) the lead examiner selected by Defendants, (4) non-repetitive questioning by counsel for other Defendants, if any; (5) individual counsel for the witness, if any, other than counsel above; and (6) any re-cross by the Parties identified in this paragraph above (1)-(4) (in that order) to the extent the examiners have not exceeded the time limitations set forth in this Order.

83. If the deposition was noticed by a Defendant, the questioning of the witness will be conducted in the following sequence: (1) counsel for the noticing Defendant, (2) counsel of the other Defendants, (3) the lead examiner for Plaintiffs' Executive Committees; (4) the other designated Plaintiffs' examiners; and (5) any re-cross by the parties identified above in this paragraph (1)-(4) (in that order) to the extent the examiners have not exceeded the time limitations set forth in this Order.

84. The Parties may, by agreement, modify this sequence in the context of a particular deposition as may be appropriate to facilitate or enhance coordination and participation by other litigants.

85. Notwithstanding the number of examiners, the time limits per side set forth above shall still apply. Counsel should cooperate so examinations by multiple attorneys do not result in a deposition exceeding the allotted time.

86. All objections, except those as to form, foundation, manner of taking the deposition, and privilege, are reserved until trial or other use of the depositions.

87. Counsel shall state all objections in a concise, nonargumentative, and nonsuggestive manner—i.e., counsel shall not make objections or statements in order to suggest an answer to a witness. Counsel shall not engage in colloquy in objecting to a question or responding to an objection. The phrases "objection as to form," "objection as to foundation," or similar language are sufficient and shall preserve all objections as to form and foundation until a Party seeks to use a deposition.

88. Any objection raised by one Party is preserved as to all other Parties on that side. Counsel for other Parties should avoid repeating the objection.

89. To determine whether there is a need to cure a defect in a question, counsel conducting the examination may ask the attorney lodging the form or foundation objection to identify the specific defect. If an explanation for the basis of the objection is requested, objecting counsel shall explain the basis for the objection.

90. Nothing herein shall prohibit counsel for a Party or for the deponent from objecting to preserve a privilege or confidentiality, to identify an ostensible mistranslation, or to enforce a limitation imposed by court order, law, or rule.

91. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the MDL Court, or to present a motion under Rule 30(d)(3).

92. When a question is pending, the witness must first answer the question before consulting with counsel, except that a witness may consult with counsel at any time for the purpose of (a) determining whether a privilege exists, (b) determining whether disclosure of information may violate an order of the MDL Court or another court or may violate any other law, rule, or restriction, or (c) addressing an issue regarding confidentiality or whether the information sought is subject to an applicable protective order. Such consultations are attorney-client privileged and work product protected. Attorney witness conferences should be kept to a minimum and should not be employed to coach the witness or otherwise improperly shape the witness's testimony.

93. Unless otherwise specified, (a) an instruction not to answer by one defendant shall not be deemed an instruction not to answer by all defendants and (b) an instruction not to answer by one plaintiff shall not be deemed an instruction not to answer by all plaintiffs.

94. When a privilege or protection is claimed, to the extent a witness is able to answer questions relevant to the existence, extent, or waiver of the privilege (such as the date of a communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and

such other information as may be necessary to determine the nature of the purportedly privileged communication), without waiving the privilege or protection, the witness should do so.

95.   Treatment of Confidential Information in depositions is governed by section G of this Court's Protective Order (ECF No. 1900).

## XIV.   Interpreters

96.   The Parties shall meet and confer concerning the circumstances warranting, and protocols governing, the use of Party-selected or neutral interpreters at depositions, including the appropriate notice period and the number of interpreters.

97.   The noticing Party bears the cost of securing a qualified and official translator for the deposition.  In addition, counsel for any Party may bring its own translator to the deposition for the purpose of assisting that counsel.  If a Party insists on use of a certain interpreter at a deposition, then that Party shall bear the cost of that interpreter.

98.   Absent the Parties' agreement, for any witness who, at least fourteen (14) days before the deposition, states that he or she lacks sufficient familiarity with English to understand questions asked in English or to respond to questions in English, the Parties will secure a neutral interpreter.  Counsel for the witness or defending Party shall promptly, but in any event no less than fourteen (14) days before the deposition, notify the Deposition Point Persons if a witness will require the use of an interpreter during a deposition.

99.   If a Fact Witness does not indicate the need for an interpreter but then demonstrates an inability or unwillingness to respond to questions due to alleged language difficulty, any Party may bring the issue to the attention of the MDL Court so that a proper remedy may be fashioned.

100.   In the event that a Party or witness objects to a translation of the translator, the objecting Party has the right to raise its objection on the record to the translator, affording the opportunity for correction, and may file an errata sheet within forty-five (45) days after the date that the transcript is received by counsel for Party or the witness.

101.   Any objection to the translation must be mindful of the requirements of Federal Rule of Civil Procedure 30(c)(2).  Counsel shall refrain from argumentative or suggestive objections and colloquy in the witness's presence shall be kept to a minimum.  If repeated or lengthy objections are raised concerning translations, the time to address them shall not count against the questioning side's time.

102.   In the event that a Party or witness objects to repeated mistranslations at a deposition, that Party or witness may, after meeting and conferring with the other Parties attending the deposition, stop the deposition and seek relief from the MDL Court and a continuation of the deposition with another translator.

## XV.    Provision of Documents

103.    All documents marked as exhibits will be attached to the original transcript and will be retained with the original transcript. The court reporter for each deposition will include in each deposition transcript a list of the exhibits referenced in the deposition.

104.    During a deposition, copies of documents about which counsel plan to examine the deponent shall be provided to counsel for the deponent and counsel for the other Party participants. As a general rule, hard copies of the documents should be made available to the deponent, the deponent's attorney, and the principal examiners of the deponent. The documents may be provided to other attendees on electronic media such as CDs, DVDs, or USB drives. To the extent possible, all exhibits should have printed Bates or other document control numbers affixed before distribution, which shall remain constant throughout the litigation.

105.    Counsel shall use best efforts to mark exhibits sequentially and shall attempt to use previously marked exhibits in subsequent depositions rather than re-marking the same documents with different exhibit numbers.

106.    Objections to the relevance or admissibility of documents used as deposition exhibits are not waived, and are reserved for later ruling by the MDL Court.

107.    If a Party chooses to use a document that is a translation of a foreign language document by showing it to the witness or by quoting from the translation at the deposition, the Party must also provide to the witness and other counsel a copy of the original foreign language document.  Counsel will meet and confer to discuss any further protocols regarding the sharing of foreign language documents and translations in advance of the deposition.

## XVI.    Transcript and Time to Review Transcript

108.    All confidentiality designations of deposition testimony shall be made as authorized by ECF No. 1900.  Notwithstanding the terms of ECF No. 1900, the following shall apply to confidentiality designation of deposition testimony.  The deposition transcript and video recording will be treated as confidential under ECF No. 1900 for ninety (90) days following the deposition and such confidentiality shall continue as to those portions of the deposition designated confidential by a Party or witness within ninety (90) days after the deposition. Notice of such confidentiality designations shall be made in writing to the court reporter, with copies to the Deposition Point Persons, specifying the portion(s) of the transcript and exhibits that constitute or contain Confidential Information or Material and are to be marked as Confidential. Each MDL Plaintiffs' and Defendants' Liaison Counsel, or his or her designee, shall be responsible for distributing confidentiality designations to other counsel for plaintiffs and defendants, respectively.

109.    Unless waived by the deponent, the deposition transcript shall be submitted to the deponent for correction and signature, and shall be corrected and signed before any notary or certified under penalty of perjury within sixty (60) days after the date that the transcript is received by counsel for the witness. The Parties may agree to reasonable extensions of this deadline.

110. Corrections to a deposition shall be listed on an errata sheet signed by the deponent and the court reporter shall serve copies of the errata sheet on all Parties and counsel for the deponent if the deponent is not a party purchasing the transcript. Should the deponent fail to submit corrections within sixty (60) days, the transcript will be presumed accurate, and all Parties shall have the right to use the copy sent to the deponent as if it were final and signed with no corrections needed. Parties in jurisdictions where rules do not provide for correction and signing of a deposition transcript reserve their objections to corrections made pursuant to this procedure.

## XVII.   Use of Depositions

111. Depositions may, to the extent authorized by the Federal Rules of Civil Procedure or the Federal Rules of Evidence, be used by or against any Party.

112. Depositions may, under the conditions prescribed in Federal Rule of Civil Procedure 32(a)(1)-(4) or as otherwise permitted by the Federal Rules of Evidence, be used by or against any Party (including parties later added and parties in cases subsequently filed in or transferred or removed to this Court that become part of this MDL) who (a) was present or  represented at the deposition; (b) had reasonable notice of the deposition; or (c) within thirty (30) days after the filing of the deposition (or within sixty (60) days after becoming a party in this Court to an action that is part of this MDL), fails to show just cause why such deposition should not be usable against such party.

## XVIII.   Witness Claim to Alternate Procedures

113. To the extent that any Party anticipates a witness asserting that applicable law requires a procedure other than that set forth herein or under the Federal Rules of Civil Procedure, the Party aware of the issue shall promptly notify all other Parties in writing. The Parties shall thereafter meet and confer in an effort to timely resolve the matter among the Parties so as to minimize any disruption to the scheduling of the deposition. To the extent the Parties are unable to resolve the issue, the matter shall be promptly presented for judicial resolution.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:        January 31, 2018
              New York, New York