UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Betru et al. v. Islamic Republic of Iran,* 18-cv-8297 (GBD)(SN) (member case to *Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN))

### The *Betru II (Ashton XI)* Wrongful Death Plaintiffs' Motion for Final Judgments

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and accompanying exhibits, the *Betru / Ashton* plaintiffs, by and through their counsel Kreindler & Kreindler LLP, respectfully move this Court to issue final judgments against the Islamic Republic of Iran ("Iran") and award solatium damages for the losses suffered by certain non-immediate family members of victims killed in the September 11, 2001 terrorist attacks in the amounts set forth herein; and award prejudgment interest on those damages as set forth below in the amount of 4.96% per year, compounded annually.

This motion is made on behalf of the *Betru* claimants listed in Exhibit A to the Kreindler Declaration ("*Betru II (Ashton XI)* Plaintiffs") in light of this Court's previous orders granting permission to allow remaining *Betru / Ashton* plaintiffs to move for this relief. *See e.g.* 03-md-1570 (S.D.N.Y.) (GBD) (FM), ECF No. 3300, Filed 06/16/2016; 03-md-1570 (S.D.N.Y.) (GBD) (SN), ECF No. 4170, Filed 08/13/2018.  The solatium claimants for whom relief is presently sought have the functional equivalent of an "immediate family member" relationship to decedents who died in the September 11, 2001 terrorist attacks, and the intimate nature of their emotional connection with their lost loved ones and the anguish and grief they have suffered as a result of

1

the attacks is detailed in the declarations included as Exhibit B to the Kreindler Declaration. Because these claimants' relationships to their loved ones were functionally equivalent to the biological relationships that this Court has previously found formed the basis of damages awards, the *Betru II* Plaintiffs should be awarded solatium damages under the Foreign Sovereign Immunities Act.

As the awards set forth in the attached proposed order represent the only direct recovery against Iran on behalf of the *Betru II* Plaintiffs listed in Exhibit A to the Kreindler Declaration, any award issued to those individuals will constitute final awards and judgments against the Islamic Republic of Iran for the *Betru II* Plaintiffs.

I.      **Procedural Background**

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* plaintiffs for claims arising out of the deaths of the plaintiffs' decedents (the "*Ashton* plaintiffs"). *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Filed 08/26/2015.  Thereafter, the *Ashton* plaintiffs moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which this Court granted, and certain *Ashton* plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3229, Filed 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and 3356, Filed 10/11/2016 (awarding damages for economic loss).

In addition, certain *Ashton* plaintiffs previously moved for solatium damages suffered by those family members non-immediate family members who were the "functional equivalent" of immediate family members who were eligible to recover under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA.") *See* 03-md-1570 (02-cv-6977) ECF Nos. 3295, Filed 06/08/2016 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 3356, Filed 10/11/2016 (Motion for Final Judgment for *Ashton II* claimants including claims for solatium damages); 3686, Filed 8/16/2017 (Motion for Final Judgment for *Ashton III* claimants solely for solatium damages); 3977, Filed 4/24/2018 (Motion for Final Judgment for *Ashton IV* claimants solely for solatium damages); 4058, Filed 07/19/2018 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 4100, Filed 8/14/2018 (Motion for Final Judgment for *Ashton VI* claimants solely for solatium damages); 4120, Filed 8/23/2018 (Motion for Final Judgment for *Ashton VII* claimants solely for solatium damages); 4149, Filed 9/6/2018 (Motion for Final Judgment for *Ashton VIII* claimants solely for solatium damages); 4258 (Motion for Final Judgment for *Betru (Ashton IX)* claimants solely for solatium damages); 4478 (Motion for Final Judgment for *Ashton X* claimants solely for solatium damages).  This Court granted these motions, finding that an award to the immediate family members of each decedent was proper and that prejudgment interest on the solatium loss amounts was warranted. *See* 03-md-1570 (02-cv- 6977) (S.D.N.Y.) (GBD) (SN), ECF Nos. 3300, Entered 06/16/16; 3387, Entered 10/31/2016; 3706, Entered 8/17/2017; 3979, Entered 4/25/2018; 4106, Entered 8/16/2018; 4127, Entered 8/28/2018; 4152, Entered 9/7/2018; 4173 (granting in part and denying in part motion for "functional equivalent" of immediate family members), Entered 09/13/2018; 4170, Entered 09/13/2018; and 4497, Entered 04/29/2019.

As to the availability of solatium damages to non-immediate family members, this Court has previously addressed the criteria necessary to establish that a claimant and a decedent had the "functional equivalent" of an immediate family member relationship. See 03-md-1570 (S.D.N.Y.) (11-cv-7550) (GBD) (SN), ECF No. 3363, Filed 10/14/16.  The test established by the Court considers several factors, including long-term residence or cohabitation of the decedent and the claimant, the guardian or custodian-like role between the decedent and the claimant and the absence of the biological relative from the claimant's or decedent's life. *See id*., pp. 10 – 12.

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered and to the extent the injuries arose elsewhere 4.96 percent interest per annum compounded annually was appropriate.  *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), ECF No. 3175, Filed 12/28/2015, pp. 1 – 2.  A subsequent Report and Recommendation issued on October 12, 2016, also adopted by this Court, however, concluded that the rate of prejudgment interest of 4.96 percent for all pain and suffering and solatium claims was more appropriate. *See* 03-md-1570(11 cv 7750) (S.D.N.Y. (GBD) (SN), ECF Nos. 3358, Filed 10/14/2016; 3383, Filed 10/31/2016.  Accordingly, the *Ashton I – X* plaintiffs were awarded prejudgment interest at the rate of 4.96 percent per annum.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for solatium damages made on behalf of other *Ashton* wrongful death plaintiffs, the *Betru II (Ashton XI)* Plaintiffs listed in Exhibit A to the Kreindler Declaration now move this Court to grant the proposed Order, attached to the Kreindler Declaration as Exhibit C, awarding them compensatory damages for their solatium losses in a

4

manner consistent with Magistrate Judge Netburn's October 14, 2016 Report and Recommendation, and directing that pre-judgment interest be assessed at 4.96 percent per annum, which is the rate that this Court previously approved in connection with the *Ashton I – X* plaintiffs' motions for final judgments on solatium damages. All *Ashton* plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the attached exhibit.

## II. Damages

Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran, damages are available under the federal law and include money damages "for personal injury or death." *See* 28 U.S.C. § 1605A(a)(1) and (c)(4). The damages available to plaintiffs in a Section 1605A action include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010). Plaintiffs who are considered "family members" for purposes of the statute are therefore entitled to compensation under Section 1605A for the solatium losses suffered as a result of the wrongful death of each of their decedents.

### A. Solatium Damages

Section 1605A specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F.Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F.Supp. 2d 261

(D.D.C. 2005).  Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  Given that, in FSIA cases solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims.  *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

Accordingly, this Court has previously awarded solatium damages to "immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See e.g.* 03-md-1570 (11-cv-07550) (S.D.N.Y.) (GBD) (SN) ECF Nos. 3358, Filed 10/12/2016; 3300 Filed 06/16/16.  It has also previously awarded solatium damages to those individuals who had the "functional equivalent" of an immediate family member relationship with a victim killed in the September 11, 2001 terrorist attacks. *See e.g.* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN) ECF No. 4173, Filed 03/13/18.

### i. Immediate Family Members

In identifying those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived a 9/11 decedent were entitled to recover for their losses, and set forth a framework for other family relationships that fell outside of those four categories, such as intimate partners, aunts and uncles and step-relationships. *See* 03-md01570 (S.D.N.Y.) (GBD) (SN), Doc. No. 3363, Entered

10/14/2016. The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship.

To fashion a solatium award adequately compensating the surviving family members in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lamberth in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.*[1]

Magistrate Judge Frank Maas previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (SN), Doc. No. 2618, Entered 07/30/12, pp. 10 – 12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas in his Report and Recommendation concluded that an upward departure from the *Heiser* framework was appropriate and recommended solatium damages in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |

---

[1] This formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

| Sibling | $4,250,000 |
|---|---|

Subsequently, Magistrate Judge Maas and then Magistrate Judge Sarah Netburn issued orders awarding solatium damages in the amounts set forth above to various groups of plaintiffs.

The losses claimed in this motion are legally and factually comparable to those suffered by the *Ashton I-X* and *Betru I* claimants, and the other claimants involved in this litigation. Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims but the immediate family members of the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Many family members can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might otherwise be expected after the death of an immediate family member. The amount of solatium damages previously adopted by the District Court in the other *Ashton* cases as well as the other claimants involved in this litigation should apply equally to the immediate family members who are included as the *Betru II (Ashton XI)* Plaintiffs (identified as such in Exhibit A to the Kreindler Declaration).

The relationships between the decedent and the *Betru II (Ashton XI)* Plaintiffs are set forth in the accompanying Kreindler Declaration. As described in the Kreindler Declaration, the relationship between the *Betru II (Ashton XI)* Plaintiffs identified as having one of the presumptive immediate family member relationships with the September 11th victims have been verified; all of the *Betru II (Ashton XI)* Plaintiffs survived the deaths of their loved ones on September 11th; and none of the *Betru II (Ashton XI)* Plaintiffs has another claim pending before

this Court for compensation against Iran.  The plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Betru II (Ashton XI)* Plaintiffs with an immediate family member who was murdered on September 11th, as identified in Exhibit A to the Kreindler Declaration, in the same amounts set forth above, based on their relationship with their decedents and as described in the Kreindler Declaration.

### ii. Nature of the Relationship – "Functional Equivalent" of Immediate Family Members

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived the September 11, 2001 deaths of their loved ones were entitled to recover for their solatium losses, and set forth a framework for other family relationships that fell outside of those four categories.  *See* 03-md-1570 (11-cv-7550) (S.D.N.Y.) (GBD) (SN), ECF No. 3363, Filed 10/14/2016.

The October 14, 2016 Report and Recommendation recommended that in addition to those individuals who are considered traditional "family members," damages could also be awarded to non-immediate family members who met certain criteria establishing that she or he had the "functional equivalent" of an immediate family member relationship with the September 11, 2001 decedent.  These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews and cousins. *See* 03-md-1570 (11-cv-7550) (S.D.N.Y.) (GBD) (SN), ECF No. 3300, Filed 10/14/16.

In that October 2016 Report and Recommendation, three factors were identified as especially relevant to the determination of whether a close non-immediate family member was the "functional equivalent" of a traditional immediate family member.  Those factors are: 1) long-term residence or co-habitation in the decedent's household; 2) whether the non-immediate family member ever played a guardian or custodian-like role in the decedent's life or vice versa; and 3)

whether the biological family member whose role the "functional equivalent" individual played was absent from the family life (*i.e.* did the non-immediate family member step in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member). *Id.*, pp. 10-12.  In weighing these different factors, the Court stated it would consider whether the non-immediate family member supported the decedent financially and emotionally, or vice versa, and whether the decedent and claimant shared in typical family activities like doing homework, eating dinner and vacationing together. *Id*.  In previous cases, the Court relied on the statements from the claimant about the nature and quality of the relationship with decedents. *Id*., pp. 17-28.

The information in the declarations of the individuals for whom solatium damages are sought in this motion confirms that those claimants listed in Exhibit A to the Kreindler Declaration who were not immediate family members had the "functional equivalent" of a biological relationship and are therefore entitled to an award for solatium damages.

As for the quantum of damages to be awarded to non-immediate family members, the Court previously concluded that the damages framework above would be used when assessing solatium damages awards for qualifying non-immediate family members. *See* Doc. No. 3363, p. 16.  For step-parents, step-children and step-siblings, the Court noted that

> Stepparents and stepsiblings who became part of the family when the decedent was in early childhood (roughly birth through age eight) may be deemed fully functional equivalent to biological parents or siblings and shall be entitled to full solatium damages and stepchildren who were in the same range when the decedent became part of the family shall be deemed fully equivalent to biological children. Stepparents and stepsiblings who became part of the family when the decedent had passed early childhood but was still living in the family home and undergoing secondary education (roughly ages 9 through 17) may be entitled to solatium damages reduced by one-half and stepchildren who were in this age range when the decedent [omit] became part of the family shall receive half damages as well.

*See* Doc. No. 3300, Filed 10/14/16, pp. 15-16.

The losses claimed in this motion on behalf of non-immediate family members are legally and factually comparable to those suffered by other claimants previously awarded solatium damages in this litigation. Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. The decedents were civilians whose deaths were intended to create an environment of fear and terror. The claimants here were not attenuated victims – they had intimate relationships with the decedents and were directly and irrevocably harmed by the terrorist acts and consequences. Many of the claimants can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might otherwise be expected. The presumptive amount of solatium damages previously adopted by the Court in the other *Ashton* cases as well as the other claimants involved in this litigation should apply equally to the *Betru II (Ashton XI)* Plaintiffs with deviations based on the previously established criteria for non-immediate family as noted below.

The relationships between the decedents and the *Betru II (Ashton XI)* Plaintiffs are set forth below and in more detail in the statements from the surviving family members submitted as Exhibit B to the Kreindler Declaration. The *Betru II (Ashton XI)* Plaintiffs identified below have the sort of intimate relationships previously recognized as qualifying for solatium damages; the *Betru II (Ashton XI)* Plaintiffs survived the deaths of their loved ones on September 11; and the *Betru II (Ashton XI)* Plaintiffs have provided information (including, for example, documentation submitted in other judicial or quasi-judicial proceedings) and have verified under penalty of perjury the nature of the relationships with their deceased loved ones.

Based on the representations in those statements attached as Exhibit B to the Kreindler Declaration and summarized below, the *Betru II (Ashton XI)* Plaintiffs respectfully request that

this Court issue a final judgment ordering payment of solatium damages to them in the amounts set forth below:

> ### a. *Claimant Vicki L. Burford, stepmother of 9/11 Victim Christopher Burford.*
> **Presumptive Award: $8.5 million**
> **Requested Award: $8.5 million**

On July 25, 1991, David Burford was granted custody of his then-13-year-old son Christopher ("Chris") Burford. Under the terms of the custody order, Chris was with his father full-time with the exception of two weekday evenings each month (from 6 to 9 pm), one 24-hour weekend period two times per month, every other spring school holiday, every other Thanksgiving school holiday, one month each year in the summer, one week during the winter holidays each and every mother's day.

Thereafter, in September 1991, Claimant Vicki L. Burford and her biological son Jeremy moved in with David and Chris and Chris's biological sister. Vicki and David were married on September 24, 1992. Vicki resided with Chris full-time and acted as any biological mother might have been expected to function. Vicki (and David) housed, fed and supported Chris materially. Vicki would cook Chris meals, would help him with homework and would offer him guidance and advice, just as a biological parent would be expected to do. Vicki took care of Chris when he was sick; she drove him before he had his license and taught him how to drive once he was old enough to do so. Vicki took family vacations with Chris, Chris's sister, Jeremy and David. Chris's biological mother, on the other hand, saw Chris inconsistently and did not provide him with financial support. When Chris was 22 years old, he joined the United States Navy. Up until that time, he lived at home with David and Vicki. Chris was killed while working at the Pentagon on September 11, 2001. Even at the time of his death, his legal residence was with Vicki and David.

For the duration of the time that Vicki met David Burford until Chris's death, she acted as a mother to Chris. Vicki fulfilled Chris's financial, emotional and social needs. Following Chris's death, Vicki and her family were devastated and the family was left asunder.

Based on Chris's age at the time that Vicki took over a mothering role in his life and Vicki's extremely close relationship to Chris, as well as the absence of his biological mother in his life, Vicki L. Burford should be awarded the full solatium damages award of $8.5 million otherwise awarded to the biological or adopted children of September 11, 2001 decedents, notwithstanding that when Vicki entered Chris's life he was older than the presumptive age established for full solatium damages.

### b. *Claimant Jeremy M. Krist, stepbrother of 9/11 Victim Christopher Burford.*
**Presumptive Award: $4.25 million**
**Requested Award: $4.25 million**

Claimant Jeremy M. Krist was about nine years old when his mother Vicki moved in with David Burford and his children Christopher ("Chris") and Ashley. When Jeremy and Vicki moved in with the Burford family, David had full custody of Chris, who was then about 13-years old, and Ashley, while their biological mother, who was in the United States Marine Corps, having only periodic visitation rights. The following year, when Jeremy was ten years old, his mother married David and Jeremy and Chris officially became step-siblings.

The two boys treated each other as siblings. Though they fought, they were also very close. They would play games in the front yard, would both join neighborhood football and baseball games and, when Jeremy became a teenager, would find places that would let the boys into play pool.

When Jeremy was around 19 years old, Chris joined the United States Navy. Even then, though, the two remained in close contact. They would talk by phone and visit in person as much

13

as possible. Shortly before September 11, 2001, Jeremy went to visit Chris while Chris was working at the Pentagon, staying with Chris in the barracks. Chris clearly shared the feelings of closeness and affection, as he designated both his biological sister and Jeremy as equal beneficiaries of his life insurance policy.

Following Chris's death, the family was torn apart and continues to be strained by their loss. Jeremy regularly visits Chris's grave site and deeply feels the loss of a person who was, for all intents and purposes, his brother. Based on Jeremy's tender age at the time that he and Chris became part of the same family and began to live together full-time, as well as the close nature of their relationship, Jeremy M. Krist, should be awarded the full solatium damages award of $4.25 million otherwise awarded to the biological or adopted siblings of September 11, 2001 victims.

### B. Prejudgment Interest

As in prior applications, the *Betru II (Ashton XI)* Plaintiffs ask that this Court direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously in the prior *Ashton* applications, as well as for other plaintiffs in this consolidated litigation.

### C. Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* plaintiffs and other plaintiffs, the *Betru II (Ashton XI)* Plaintiffs respectfully request that this Court grant the proposed order attached to the Kreindler Declaration as Exhibit B and (1) award them solatium damages as set forth in the attached Exhibit A, (2) direct that prejudgment interest of 4.96% on the solatium awards running from September 11, 2001 until the date of

judgment be assessed; and (3) permit remaining *Ashton* claimants to submit motions for final judgment in future stages.

Dated: New York, New York
       June 26, 2019

Respectfully submitted,

KREINDLER & KREINDLER LLP

BY:   /s/ James P. Kreindler
James P. Kreindler, Esq.
Andrew J. Maloney III, Esq.
750 Third Avenue, 32nd Floor
New York, New York 10017
Tel: (212) 687-8181
*Attorneys for Ashton Plaintiffs*