## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley, (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

July 8, 2019

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

      RE:    *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

      I write on behalf of the Plaintiffs' Executive Committees ("PECs") to respond to issues raised by defendants World Assembly of Muslim Youth-Saudi Arabia ("WAMY-SA") and World Assembly of Muslim Youth-International ("WAMY-INTL") (collectively "WAMY") in their July 3, 2019 Opposition to the PECs' July 1, 2019 Request for International Judicial Assistance (Letter Rogatory) at ECF No. 4632, seeking testimony of Canadian government official Cathy Hawara. Although, in the end, WAMY does not object to the issuance of the Letter Rogatory, WAMY insists that the Court engage in substantial wordsmithing of language from a nearly identical letter rogatory this MDL Court previously adjudicated as to documents sought from the same third-party. In fact, this Court previously rejected the precise argument WAMY raises now when, in 2012, WAMY argued it in the context of nearly identical letters rogatory for documents from the Canada Review Agency ("CRA"), the Canadian agency where Ms. Hawara was then employed. *See* Tr. of Apr. 12, 2012 at pp. 17-18,[1] attached hereto as Exhibit 1. Seven years later, the result of WAMY's argument should be the same, WAMY's proposed wordsmithing should be rejected, and the language of the Letter Rogatory should remain unchanged.

      Briefly, by way of background, Your Honor's June 10, 2019 Order directed that any letters rogatory seeking third party witness testimony be filed with the Court by July 1, 2019. *See* ECF No. 4582 at 1. On July 1, 2019, the PECs complied with that order by serving WAMY with plaintiffs'

---

[1] In 2012, Magistrate Judge Frank Maas overruled WAMY counsel's objections to use of the term WAMY in the letter rogatory to the CRA, explaining "I think that draws . . . too fine a line because some of the conclusions of the [CRA] report certainly relate to WAMY Saudi Arabia, and I think it would be confusing, at a minimum, to restrict each paragraph to WAMY Canada, because that might in some way be seen as limiting the scope of requests that, as I said a little while ago, are really intended to get . . . the entire investigative file. So that request is denied."

proposed Letter Rogatory, seeking the deposition testimony of CRA official Cathy Hawara. The text of the Letter Rogatory is essentially identical to the text of the letter rogatory that the PECs negotiated with WAMY, and that the Court authorized in 2012, seeking documentary evidence from the CRA.

Although the text of the Letter Rogatory is essentially identical to what the Court approved for the 2012 letter rogatory, on the evening of July 1, 2019, WAMY nonetheless responded with the same objections from 2012 as to almost every one of the PECs' eleven topics for Ms. Hawara's testimony, and sought to include an additional ten topics to the Letter Rogatory.[2] *See* Opposition at pp. 5-7 (ECF No. 4661) ("WAMY's Request for Amendment") (objecting to nine topics, arguing that plaintiffs must distinguish between WAMY's headquarters in Saudi Arabia and WAMY's branch office in Canada). The PECs promptly declined to include the objections within the body of the application, explaining that (for the same reasons as in 2012) the PECs disagreed with WAMY's objections, and that inclusion of objections within the PECs' request would render the application incomprehensible as inherently contradictory and could hinder the PECs' opportunity to respond to those objections. *See* Robert Haefele's July 1, 2019 email, attached hereto as Exhibit 2. Given the July 1, 2019 deadline to file the application, the PECs explained that they would file the application as a stand-alone document that night, and recommended that WAMY file its opposition (which it has done), and the PECs would respond accordingly. *Id.*[3]

Resurrecting the argument that the Court rejected in 2012, WAMY's Objections argue that the PECs should be directed to distinguish between WAMY-Canada and WAMY-Saudi Arabia in Topics 1, 2, 3, 4, 7, 8, 9. 10, and 11.[4] *Compare* Opposition at pp. 5-7 ("WAMY's Request for Amendment") at ECF No. 4661 *with* Opposition Exhibit C at ECF No. 4661 *and* Tr. of Apr. 12, 2012 at pp. 17-18. Although WAMY raised that identical objection in 2012, the Court specifically rejected that argument and the parties then worked together to finalize the language included in the Topics section of the 2012 letter rogatory, which the parties jointly presented to Magistrate Judge Maas for the Court's approval. That 2012 letter rogatory did not require the same name distinction WAMY insists must be made in this instance.

All of the language used in the Letter Rogatory filed with the Court by the PECs on July 1, 2019 (ECF No. 4632), is essentially identical to the language of the 2012 letter rogatory endorsed by Magistrate Judge Frank Maas on May 2, 2012 (as authorized by WAMY). *See* Opposition Exhibit D at pp. 6-8 (Topics 1, 2, 3, 4, 7, 8, 9, 10, and 11 identifying "WAMY"); *see id.* at p. 5 (stating that the Canadian government "conducted an *extensive investigation* into the operations and activities of the

---

[2] The PECs do not oppose the inclusion of WAMY's proposed additional ten topics in the Letter Rogatory, so long as the additional topics are not identified as being asserted by the PECs.

[3] WAMY's Opposition also declined to acknowledge that the PECs invited WAMY's counsel to work through the requested "Additional Topics of Inquiry" on Tuesday, July 2, with the possibility of filing an amended application with the Court before the July 4 holiday. *See* Exhibit 2. As WAMY's counsel had done previously in the context of the PECs' offer to meet and confer regarding plaintiffs' Rule 30(b)(6) deposition notice, *see* ECF No. 4581 at pp. 1-2, WAMY's counsel ignored the PECs' invitation to meet and confer and has simply submitted those Additional Topics of Inquiry with its Opposition.

[4] The CRA concluded the following based on its review of WAMY's own records during the audit: "The audit findings did not reveal any apparent separation between the activities of WAMY (Saudi Arabia) and WAMY [Canada], with all related financial and operating positions being made by WAMY (Saudi Arabia). This leads to a reasonable inference that WAMY [Canada] has little or no independent function." *See* PECs' Exhibit A, CRA's August 23, 2011 letter to Mr. Ayman al Taher, at p. 7/22 (ECF No. 4632).

World Assembly of Muslim Youth ("WAMY"), a defendant in this litigation.") (emphasis added). Because the language of the current Letter Rogatory is a direct result of WAMY's negotiation and approval in 2012, WAMY's objections to Topics 1, 2, 3, 4, 7, 8, 9. 10, and 11 are without merit and should be denied.

Finally, WAMY tries once again to distance itself from the findings of the Canadian government's investigation and audit linking WAMY to Executive Order 13224 Specially Designated Global Terrorists ("SDGT) Benevolence International Fund-Canada ("BIF-Canada") and Benevolence International Foundation ("BIF-USA"), claiming that the CRA's findings focused on "the ministerial failure of WAMY Canada to file proper paperwork." Opposition at p. 2. On the contrary, the CRA was clear that its "analysis of the information gathered from the documents acquired during the audit of WAMY," including documents filed in relation to BIF-Canada, indicated that "WAMY maintained close relationships with and provided funding to organizations that were engaged in providing resources to entities engaged in terrorist activities." *See* PECs' Exhibit A, CRA's August 23, 2011 letter to Mr. Ayman al Taher, at pp. 12/22-14/22 (ECF No. 4632).

For the aforementioned reasons, the PECs respectfully ask the Court to deny WAMY's objections and endorse the Letter Rogatory at ECF No. 4632.

Respectfully submitted,

COZEN O'CONNOR

By:    J. Scott Tarbutton

cc:    The Honorable George B. Daniels (via Overnight Mail)
        MDL Counsel of Record (via ECF)

# Exhibit 1

```
                                                          1
         C4CUTERC
 1       UNITED STATES DISTRICT COURT
 1       SOUTHERN DISTRICT OF NEW YORK
 2       ------------------------------x
 2
 3       IN RE TERRORIST ATTACKS ON
 3       SEPTEMBER 11, 2001
 4
 4
 5                                      03 MD 1570 (GBD)
 5
 6
 6       ------------------------------x
 7                                      New York, N.Y.
 7                                      April 12, 2012
 8                                      2:15 p.m.
 8
 9       Before:
 9
10
10
11                       HON. FRANK MAAS
11
12                                      Magistrate Judge
12
13                       APPEARANCES
13
14       COZEN O'CONNOR
14            Attorneys for Plaintiff Federal Insurance Co.
15       BY:  SEAN P. CARTER
15            J. SCOTT TARBUTTON
16
16       SPEISER, KRAUSE, NOLAN & GRANITO
17            Attorneys for Ashton Plaintiffs, et al.
17       BY:  CHRISTINA M. FRY
18
18       KREINDLER & KREINDLER  (Via Telephone)
19            Attorneys for Ashton Plaintiffs
19       BY:  JAMES P. KREINDLER
20
20       ANDREW MALONEY (Via Telephone)
21            Attorney for Ashton Plaintiffs
21
22       ANDERSON KILL & OLICK, P.C.
22            Attorneys for O'Neill Plaintiffs and Plaintiffs' Executive
23             Committee
23       BY:  JERRY S. GOLDMAN
24            RENE HERTZOG
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

```
     C4CUTERC
1    APPEARANCES (Continued)
2    MOTLEY RICE
2         Attorneys for Burnett, Euro Broker Plaintiffs
3    BY:  ROBERT T. HAEFELE
3
4    TOM MELLON (Via Telephone)
4         Attorney for Havlish Plaintiffs
5
5    JAMES P. McCOREY (Via Telephone)
6         Attorney for Havlish Plaintiffs
6
7    CLIFFORD CHANCE US LLP (Via Telephone)
7         Attorneys for Dubai Islamic Bank
8    BY:  RONI E. BERGOFFEN
8
9    GOETZ & ECKLAND P.A.  (Via Telephone)
9         Attorneys for WAMY
10   BY:  FREDERICK J. GOETZ
11   BERNABEI & WACHTEL (Via Telephone)
11        Attorney for Al Haramain USA
12   BY:  ALAN KABAT
12
13   MARTIN McMAHON (Via Telephone)
13        Attorney for Islamic Relief Organization,
14            Muslim World League
15
16
17
18
19
20
21
22
23
24
25
```

3

C4CUTERC

```
 1                (Case called)
 2                THE COURT:  I have the joint letter raising topics.
 3                The first one that the plaintiffs propose is to talk
 4   about the status of document productions.  The defendants
 5   oppose that as premature because there are a couple of weeks
 6   left for document production, but I don't think that there is
 7   any harm in being brought up-to-date on whatever is happening
 8   or isn't happening.
 9                MR. CARTER:  Your Honor, I think that we will begin
10   with the production on the plaintiffs' side and then allow the
11   defendants to speak where they stand with regard to their
12   respective productions.
13                The different plaintiffs groups have been
14   independently producing documents within their evidence
15   databases and that process has been ongoing for quite a while.
16   I think we would probably say that, as to what we would call
17   the primary level of evidence, we are all probably 90 percent
18   done.  There are secondary and tertiary levels of evidence that
19   we are still in the process of moving through.
20                One of the complications has been that there is a fair
21   amount of information in the possession of each of the
22   plaintiffs that is in foreign languages and it is simply taking
23   us time to get through them; it is not only Arabic, some of it
24   is in Serbo-Croatian.  So it is going a little slower than we
25   would like, although we are getting through it.
```

4

C4CUTERC

```
 1              THE COURT:  When you mention primary, secondary and
 2    tertiary productions, is there something thematically that
 3    distinguishes them or is it just because of rolling requests?
 4              MR. CARTER:  No, your Honor.  I think, thematically,
 5    the way we would probably explain it is, if there is a request,
 6    for instance, for any information or evidence you may use as to
 7    a certain defendant, it is not merely an exercise of finding
 8    everything relating or naming that defendant but, also, parties
 9    to which we believe it has ties and connections.
10              MR. McMAHON:  Your Honor, I am having a problem
11    hearing Sean.
12              THE COURT:  Move the microphone closer, and it may be
13    even better if you sit so that you are closer to it.
14              MR. CARTER:  I don't object to being comfortable at
15    all, your Honor.
16              THE COURT:  Is that better?
17              MR. McMAHON:  Yes.  That sounds a lot better, your
18    Honor.  Thank you.
19              MR. CARTER:  So we are going through that process,
20    your Honor.  I think, although we will be substantially
21    complete our productions by April 30th, we may need a bit of a
22    window after that to wrap up the process.
23              An additional factor that we would like to have the
24    Court to consider is, when we approached this discovery
25    schedule and created the window following the productions for
```

5

C4CUTERC

1   the parties to do follow-up and motion practice, I don't think
2   we fully appreciated that that was going to coincide exactly
3   with all of our reply briefing in the Second Circuit and the 44
4   appeals that are pending.
5           The defendants are filing their briefs on April 20th.
6   The structure of the briefing is, at this point, a little
7   unclear to us.  There is going to be a brief that is jointly
8   filed on behalf of a large group, but they have reserved the
9   right of every defendant to file a brief as well.  In theory
10  there could be as many as 45 briefs.  I think it will be
11  substantially fewer, but within the month after that we are
12  going to be sort of besieged with appeal briefing, and we
13  prefer to avoid a situation where that deprives from the
14  opportunity to deal with the follow-up discovery and the motion
15  practice.
16          I think what we had in mind was just a brief extension
17  of the production period so that the productions would complete
18  around the same time as the Second Circuit briefing which is
19  early June.
20          THE COURT:  On the defense side is there any objection
21  to that?
22          (Pause)
23          Well, the silence is deafening.
24          MR. GOETZ:  Frederick Goetz on behalf of WAMY
25  International.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

C4CUTERC

```
 1               No objection on behalf of WAMY, your Honor.
 2               THE COURT:  Rather than going through everybody that
 3      is on the phone, if I don't hear anything in the next few
 4      seconds, I will assume that is unobjectionable and I will so
 5      order that.
 6               (Pause)
 7               THE COURT:  It is so ordered.
 8               MR. CARTER:  Thank you, your Honor.
 9               THE COURT:  On the defense side, is there anything --
10      defendants indicated that they didn't much want to talk about
11      the status of discovery in general, in any event, but if there
12      is anything that anybody wants to share with the group, feel
13      free.
14               MR. GOETZ:  Your Honor, Frederick Goetz for WAMY, if I
15      might.
16               THE COURT:  Keep your voice up.
17               MR. GOETZ:  Certainly, your Honor.
18               Unfortunately, Mr. Mohammedi is detained on another
19      matter today, but he just returned recently from Saudi Arabia
20      where he apprised the plaintiffs, I guess, of the number of
21      documents --
22               THE COURT:  You need to keep your voice up again
23      because the reporter is having difficulty, as am I.
24               MR. GOETZ:   I apologize, your Honor.  The challenges
25      of doing it the teleconference way -- I apologize.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

C4CUTERC

1          Mr. Mohammedi estimates about 120,000 pages of
2  documents he reviewed in his last -- or was there in his last
3  trip to Saudi Arabia.  I think he came back about a week or so
4  ago.
5          We believe we have supplied most of the documents to
6  the plaintiffs.  We have about another 15 pages of indexes yet
7  to be produced.  Similar to the plaintiffs' preparation of
8  those indices which are in Arabic, will require some time for
9  translation as well.  So while we certainly join in the request
10 for an extension of the time to complete the written discovery,
11 Mr. Mohammedi and I discussed a period of 90 days, actually, if
12 that would be appropriate with everybody.
13         So, in other words, rather than April 30th, that would
14 push that out to August 30th -- I'm sorry -- July 30th.
15         THE COURT:  I am time challenged, but August 30 didn't
16 seem right.
17         And your proposal was to put it out until when, Mr.
18 Carter?
19         MR. CARTER:  We had suggested just essentially a
20 month, to May 30th.
21         THE COURT:  I am going to say June 29th.
22         Anything else before we turn to the letters rogatory?
23         MR. McMAHON:  Yes, your Honor.
24         This is Mr. McMahon again for IRO and WL.
25         I am assuming that you got my letter dated, I guess,
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

8

```
     C4CUTERC
 1   yesterday?
 2              THE COURT:  I did.
 3              Is there anything further to report about the time
 4   schedule for the substitution?
 5              MR. McMAHON:  No, your Honor.
 6              I just wanted to opine that I believe we have complied
 7   with all the discovery requests.  There were some documents in
 8   my office that I have shared with Mr. Carter in terms of some
 9   documents -- some documents have spindles.  Other than those --
10   and we just received a new box in, your Honor.  And I made a
11   specific inquiry which has not been responded yet about whether
12   or not we are going to get some more documents.
13              If your Honor is not aware, we have been served with a
14   third document production from the 9/11 plaintiff and I have
15   corresponded with Mr. Carter about that.
16              Basically, your Honor, I think the law firm is
17   waiting, obviously, to be retained and may ask me to remain in
18   the case for some capacity, I don't know.  But it is my
19   understanding, your Honor, we are in pretty good shape with
20   respect to document production.  But I felt it might be better,
21   though, if you heard representations from new counsel about
22   where we are in document production rather than representations
23   from me.  So that was my only concern.
24              And as soon as the retainer gets signed, I guess I
25   will be moving to withdraw and they will enter their
```

C4CUTERC
```
 1   appearance.
 2              THE COURT:  Unless you are sort of riding along with
 3   them for awhile as you indicated you might --
 4              MR. McMAHON:  That might happen.
 5              THE COURT:  -- failing that, you probably not only
 6   want me to substitute counsel but you also probably want me to
 7   get you -- and it requires a specific order -- off the ECF
 8   mailing list or you will continue to get notices for the rest
 9   of your life every time somebody hiccups in this case.
10              MR. McMAHON:  Can you also get me paid, your Honor?
11              THE COURT:  Would that I could.
12              MR. McMAHON:  So I think I will report to your Honor
13   as soon as I hear something from new counsel about the fact
14   that they have actually been retained and we will certainly let
15   Mr. Carter know as soon as that happens as well.
16              By the way, your Honor, I forgot to mention the new
17   law firm is called Lewis Baach.
18              THE COURT:  Where are they located?
19              MR. McMAHON:  All over the globe, your Honor.  They do
20   a lot of work in the kingdom.  They have an office address here
21   in Washington, D.C.  I think it is 601 F Street, but they are
22   kind of all over the globe.
23              THE COURT:  Thanks for letting us know that.
24              MR. HAEFELE:  Just one quick note on that.
25              THE COURT:  Yes.
```

C4CUTERC

1    MR. HAEFELE:  If we could please have Mr. McMahon, the
2  correspondence that he is having with Mr. Carter is nice,
3  except it ends up resulting in Mr. Carter having to forward it
4  to us, including the letter that went to the Court yesterday,
5  he didn't circulate to all counsel.  And I would appreciate the
6  direction that he would continue -- or start including the rest
7  of the lawyers in it.
8    THE COURT:  Yes.  All correspondence, certainly with
9  the Court, should be circulated to all counsel by the sender.
10  Frankly, I didn't look at the fax so I didn't notice that that
11  hadn't been done.
12    MR. HAEFELE:  Just to be fair to Mr. Kabat, he
13  circulated it to me.
14    THE COURT:  OK.  Until you bail out of the case, if
15  you do, Mr. McMahon, you need to copy everybody on your
16  communications with the Court.
17    MR. McMAHON:  Got you.  Thank you, your Honor.
18    THE COURT:  Why don't we turn to the letters rogatory,
19  which I reviewed both in draft and in proposed revised form.
20  And I guess you can tell me what your concerns are, or Mr.
21  Mohammedi's.
22    MR. McMAHON:  Your Honor, this is Mr. McMahon again.
23    I have tickets to the opening game today in Washington
24  D.C. and I was wondering, do I have to sit through this, I have
25  no dog in the fight?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4CUTERC

```
 1              THE COURT:  Enjoy the game.
 2              MR. GOETZ:  I think that the issue is really quite
 3  narrow and is simply one of language rather than substance.
 4              THE COURT:  Except for some of the language you
 5  proposed -- no, I guess the last letter said you are not or Mr.
 6  Mohammedi is not objecting to the time period, is that right?
 7              MR. GOETZ:  That is correct, your Honor.
 8              THE COURT:  In which case I have gone through the
 9  proposed changes, and maybe it would be quicker if I just tell
10  you my tentative thinking with respect to the proposed wording
11  changes and then if anybody wants to argue about any of them, I
12  will certainly entertain that.
13              Bear with me while I find the modifications that were
14  suggested.
15              The first two related to whether WAMY's counsel was
16  going to be one of the attorneys to whom the executed request
17  is to be returned.  And based on the case management orders
18  which provide that materials must be turned over by the
19  requesting party to all other parties in the case, I think that
20  just overly complicates questions, so I am inclined not to
21  require those modifications.
22              As to who the materials are to be delivered to, I was
23  curious why you put Judge Daniels in there rather than me.
24              That is addressed to the plaintiffs, obviously.
25              MR. CARTER:  Your Honor, I know that it has been the
```

C4CUTERC

1  practice throughout the course of the litigation that the
2  letters rogatory typically issue from Judge Daniels.  I don't
3  know if that is a requirement.  I think we just followed the
4  traditional practice.
5          THE COURT:  I, frankly, had never really focused on
6  that before.  I don't much care.  I was just curious.
7          Then there is the sentence, "All documents and
8  materials deposited with the Court will be available to all
9  parties."
10         Plaintiffs have any objection to that?
11         MR. CARTER:  No, your Honor.
12         THE COURT:  So that change will be made.
13         On page 5 where the defendants were crossing out time
14  periods, it seems to me that is consistent with the plaintiffs'
15  position.
16         MR. CARTER:  Your Honor, the time periods on page 5
17  were taken directly out of the letter that Canadian Review
18  Agency sent to the WAMY office in Canada.  We just copied their
19  date periods.
20         THE COURT:  I don't know that you need it.  I'm not
21  sure it matters one way or the other.
22         MR. CARTER:  I don't think so.
23         THE COURT:  So I am inclined to take it out if it
24  really is surplusage.  What you are looking for is the kitchen
25  sink if they will give it to you in terms of the investigation.

13

C4CUTERC

1        In the next paragraph, as to the report's conclusion,
2   the CRA investigative conclusions, number 2, the defendants
3   propose to take out the notion that their shared office space
4   and substitute contact information, it seems to me both are
5   potentially accurate and that it should be "office space,
6   contact information and bank accounts."
7        MR. GOETZ:  WAMY would have no objection to that, your
8   Honor.
9        THE COURT:  In paragraph 3 or clause 4, I don't think
10  it much matters other than for atmospherics to add "the CRA's
11  views appears to," so I am inclined to put that in.
12       I think it is accurate to say that the notice
13  indicated that the Canadian government intended to revoke
14  rather than was revoking, but I also think it is accurate to
15  add a sentence saying that the letter provided that the
16  revocation would take effect after 30 days, and 30 days has
17  come and gone and, therefore, I assume, by operation of that
18  clause, in fact, WAMY's designation as a Canadian tax-exempt
19  registered charity has been revoked.
20       And then the modifications that were proposed under 3,
21  I gather the defendants are no longer seeking those insertions
22  of narrow time periods.
23       Is that correct?
24       MR. GOETZ:  That is correct, your Honor, but I would
25  state that Mr. Mohammedi's letter of April 10, 2012, there is a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4CUTERC

 1  copy to counsel, there is a slight additional modification or
 2  clarification that we are requesting as to the specific request
 3  of the letter rogatory.
 4          THE COURT:  Let me get through my rendition of this.
 5          So all of those time period changes or narrowings drop
 6  out.  And then the only other changes that I see in paragraphs
 7  9 and 10, you are proposing to take out the letters SDGT before
 8  the Netherlands International Fund, and I'm not sure I
 9  understand why that is or what difference it makes.
10          Mr. Carter, what is your view on that?
11          MR. CARTER:  I think it is an accurate description of
12  the entity.
13          THE COURT:  What does this SDGT mean?
14          MR. CARTER:  Specially designated global terrorist.
15          THE COURT:  It seems to me it is not necessary so,
16  again, we will take that out.
17          Shared office space, and probably you should add the
18  change that conforms to the earlier one about contact
19  information in paragraph 9.
20          And I think except to the extent that Mr. Goetz is
21  drawing my attention to the April 10th letter again, that's all
22  I had.
23          What else was it that you thought should be done, Mr.
24  Goetz?
25          MR. GOETZ:  Your Honor, if I could just respond to the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

C4CUTERC

1   Court's thoughts on the person to whom the executed requests
2   are to be returned, the thinking there, your Honor, is
3   basically consistent with the case management order from
4   December 9, 2005.  I guess it was our understanding that if
5   both parties, the plaintiff and the defendant, or the defendant
6   wanted records from a foreign government entity, that that
7   would become a joint request and, therefore, both parties would
8   be requesting parties.
9            Looking at the Court's language, "within 20 days of
10   receipt of such notice, any other party interested in obtaining
11   documents from the same nonparty foreign government or official
12   should submit its proposed request to the initiating party and
13   all parties together shall submit an agreed form of request to
14   be sent to the foreign government or official."
15            So we certainly don't intend to make it any more
16   difficult for the Canadian authorities but to the extent, I
17   thought that the spirit of that would be that all parties would
18   be requesting parties if they wanted documents from these
19   foreign entities.
20            THE COURT:  That is probably helpful, actually, to the
21   plaintiffs.
22            Any objection to that?
23            MR. CARTER:  Your Honor, the only concern we have is
24   that in dealings with foreign governments, our experience has
25   been that, to the extent you make it more difficult for them

16

C4CUTERC
```
 1   and create additional layers of communication that they have to
 2   go through, it becomes a much longer process and the results
 3   tend to be less productive.  And so we were just trying to
 4   create a scenario under which there was at least a clean line
 5   of communication to allow the CRA to respond.
 6             THE COURT:  Perhaps we can tweak the language to
 7   accomplish that, such that the request is by the following
 8   attorneys for plaintiff and for WAMY -- Mr. Mohammedi is on
 9   what I will call the service list, although that is not fully
10   accurate -- "I request that all copy documents and materials be
11   delivered to the custody and control of" -- you were not
12   planning to have them mail it to, in your version, four or five
13   different addresses, right?
14             MR. CARTER:  No, your Honor.
15             THE COURT:  So I guess, are you the designee?
16             MR. CARTER:  I suppose, yes, I am, your Honor.
17             THE COURT:  So there, modify it to say that it will be
18   delivered to you to be provided to the Court, and instead of
19   "will be available" in the underlying language, why don't you
20   change that to "shall be made available forthwith to all
21   parties."  I am adding a "shall" and a "forthwith."
22             Is that sufficient, Mr. Goetz.
23             MR. GOETZ:  Yes, it is, your Honor.  Thank you.
24             THE COURT:  So we have dealt with the letters
25   rogatory.  We have dealt with the discovery schedule.
```

17

C4CUTERC
```
 1              MR. GOETZ:  Your Honor, I apologize.
 2              Fred Goetz with one last point about the
 3     interrogatory, getting back to Mr. Mohammedi, about that letter
 4     of April 10 --
 5              THE COURT:  Yes.
 6              MR. GOETZ:  This is a clarification as to, I guess,
 7     the entity that the documents in the CRA's possession pertains
 8     to it, and it is WAMY Canada.  And at some point the letters
 9     rogatory that is made clear and at other points it is not,
10     particularly, requests 1, 2, 3, 4, 7, 8, 9, 10, 11 and 12.  And
11     the only change that we are proposing there is just a
12     clarification that it is World Assembly of Muslim, Jews or
13     WAMY-Canada.
14              THE COURT:  Mr. Carter.
15              MR. CARTER:  Your Honor, that is problematic from our
16     perspective on a number of levels.
17              If you look at the actual audit, it is clear that the
18     CRA looked at the activities not only of the Canadian branch
19     office, but also of the Saudi entity and the UK, and it is
20     unclear whether there may have been investigations of other
21     offices that may not be fully reflected in the report.
22              THE COURT:  I think that draws, Mr. Goetz, too fine a
23     line because some of the conclusions of the report certainly
24     relate to WAMY Saudi Arabia, and I think it would be confusing,
25     at a minimum, to restrict each paragraph to WAMY Canada,
```

18

C4CUTERC
```
 1  because that might in some way be seen as limiting the scope of
 2  requests that, as I said a little while ago, are really
 3  intended to get, to the extent that the Canadians will provide
 4  it, the entire investigative file.
 5          So that request is denied.
 6          MR. GOETZ:  Understood, your Honor.
 7  That's all that I have.
 8          THE COURT:  Anything else from anyone for today?
 9          Do we have another date scheduled?
10          MR. CARTER:  We do, your Honor.  Off the top of my
11  head, I don't know it.
12          THE COURT:  Apparently, I am not in the country the
13  date that we have it scheduled for so I needed to move it.
14          Bear with me a second.
15          Off the record.
16          (Discussion off the record)
17          THE COURT:  Do we need the session in or around May
18  17th, given what I have done to the discovery schedule?
19          MR. CARTER:  Your Honor, I think early June would
20  work.  I am hesitant to push it out too far because we do have,
21  frankly, some concerns about the transition that is happening
22  with counsel for the MWL and the IRO, and we may need to come
23  back to discuss that and how it impacts on what we have been
24  doing for the last several months.
25          MR. GOETZ:  Frederick Goetz for WAMY.
```

C4CUTERC

```
 1              We anticipate having one issue related to these
 2     production of the documents from the SAR defendants.
 3              THE COURT:  How about June 6th at 2 p.m.?  That is a
 4     Wednesday.
 5              MR. CARTER:  I think that works for us, your Honor.
 6              THE COURT:  If it doesn't, I could, at the moment,
 7     make it June 13th at 2 p.m. also.
 8              So I will assume it is June 6 unless I hear from you
 9     folks otherwise.
10              MR. CARTER:  That's fine, your Honor.
11              MR. GOETZ:  Yes, your Honor.
12              THE COURT:  Thank you all.
13
14                              o   0   o
15
16
17
18
19
20
21
22
23
24
25
```

# Exhibit 2

**Tarbutton, J. Scott**

| | |
|---|---|
| **From:** | Haefele, Robert <rhaefele@motleyrice.com> |
| **Sent:** | Monday, July 1, 2019 7:27 PM |
| **To:** | WTC[omohammedi@otmlaw.com] |
| **Cc:** | Tarbutton, J. Scott; fgoetz@goetzeckland.com; Carter, Sean; WTC[jflowers@motleyrice.com]; Eubanks, John; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce; WTC[kabat@bernabeipllc.com]; Linda Shili |
| **Subject:** | Re: EXTERNAL-RE: 03 MDL 1570 - Letters Rogatory |

**\*\*EXTERNAL SENDER\*\***

Omar - we are our Inclined to go ahead and file our requests as a stand-alone document and allow you respond to them afterward, with the possibility referenced below of amending the areas tomorrow. We are not inclined to file a request for LR that includes your objections to our request for LR. At this point, it makes better sense that we go ahead and file our request, you go ahead and file your objections, and we will respond. Otherwise, our request gets a bit incoherent.

As for your areas to add, we might be able to work with you over the next day or so to iron out you proposed areas of additional inquiry. But that will take more time than we have tonight. Let's plan to discuss tomorrow to see if that is possible.

We would not, however, that the areas we proposed mirrored what was included in the LR for documents from the CRA, with your approval. So we were surprised that you had opposition to this offering.

Regardless, we will plan to file the LR today as required by the order. We will try to work out revisions to the areas of inquiry with you tomorrow. And if you are still incline, you can do your objections, to which we will respond.

Sent from my iPhone

On Jul 1, 2019, at 6:10 PM, Omar Mohammedi, Esq. <OMohammedi@otmlaw.com> wrote:

> Counsel:
>
> Please see attached. Thank you.
>
>
>
> Omar Mohammedi, Esq.
>
> Adjunct Professor, Fordham Law School

1

Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
New York, NY 10279
Phone: 212.725.3846
Facsimile: 212.202.7621
www.otmlaw.com
Follow us on Twitter @OTMLAW





_____
_____

PLEASE NOTE: The information contained in this message is privileged and confidential and is intended only for the use of the individual named above and who have been specifically authorized to receive it. If you are not the intended recipient you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, or if any problem occur with transmission please contact sender or call 212. 725.3846.

**From:** Omar Mohammedi, Esq.
**Sent:** Monday, July 01, 2019 5:04 PM
**To:** 'Tarbutton, J. Scott'; fgoetz@goetzeckland.com
**Cc:** Carter, Sean; 'Haefele, Robert' (rhaefele@motleyrice.com); WTC[jflowers@motleyrice.com]; 'jeubanks@motleyrice.com'; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce; 'Kabat@BernabeiPLLC.com'
**Subject:** RE: 03 MDL 1570 - Letters Rogatory

Scott:

I wish we received this earlier. Today is the deadline for submission as per the court's order.  Anyway, we are preparing something and you should receive our objections and additions in an hour. Thanks.

**From:** Tarbutton, J. Scott [mailto:STarbutton@cozen.com]
**Sent:** Monday, July 01, 2019 12:55 PM
**To:** Omar Mohammedi, Esq.; fgoetz@goetzeckland.com
**Cc:** Carter, Sean; 'Haefele, Robert' (rhaefele@motleyrice.com); WTC[jflowers@motleyrice.com]; 'jeubanks@motleyrice.com'; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce
**Subject:** 03 MDL 1570 - Letters Rogatory
**Importance:** High

Omar and Fred – Consistent with the Court's June 10, 2019 Order (ECF No. 4582), the PECs intend to submit the attached Request for International Judicial Assistance (Letters Rogatory) to the Court later today, seeking the third-party deposition of Cathy Hawara from the Canada Revenue Agency.  Please let the PECs know whether WAMY has any additions to the areas of inquiry at pp. 6-7.

Regards,

Scott



**J. Scott Tarbutton**
**Member | Cozen O'Connor**
One Liberty Place, 1650 Market Street Suite 2800 | Philadelphia, PA 19103
P: 215-665-7255 F: 215-701-2467
Email | Bio | LinkedIn | Map | cozen.com

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***

<07-01-2019 Letter to PEC re. Letters Rogatory.pdf>

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.