LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

233 BROADWAY, SUITE 820
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 X101
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT, ALGERIAN BAR
US COURT ON INTERNATIONAL TRADE

July 9, 2019

**VIA ECF**
The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

<u>**RE: In re Terrorist Attacks of September 11, 2001, 03 MDL 1570**</u>

Dear Judge Netburn:

  Defendants World Assembly of Muslim Youth-International and World Assembly of Muslim Youth Saudi Arabia (collectively as "**WAMY**") respectfully submit this letter in brief reply to the Plaintiffs' Executive Committees' ("**PECs**") July 8, 2019 opposition (the "**Opposition**") to WAMY's July 3, 2019 Cover Letter wherein WAMY objected to PECs' July 1, 2019 Letters Rogatory (ECF No. 4666)[1].

  WAMY does not ask the Court to engage in "wordsmithing," but rather to require PECs to simply clarify the obvious, and perhaps deliberate, confusion in its proposed Letters Rogatory. PECs' Letters Rogatory completely fail to differentiate between WAMY-Saudi Arabia and WAMY Canada. The use of the term "WAMY" is imprecise. Unlike the issue before Judge Maas in 2012 when the requested modification was that reference be made to WAMY Canada only, we now request that PECs clarify in any given stated matter which "WAMY" they are referencing: WAMY Canada, WAMY Saudi Arabia, or both, so as to avoid confusion by the CRA (by Cathy Hawara) in testifying about these separate and distinct entities.

  PECs' Opposition makes much ado about this Court "previously reject[ing] th[is] precise argument . . . in 2012 . . . in the context of nearly identical letters rogatory *for documents* from the [CRA]" (emphasis added). PECs are comparing apples (*documents*) to oranges (*testimony*). In 2012, the PECs' Letters Rogatory sought ***documents*** from the CRA. In 2019, PECs are seeking ***testimony under oath*** from the CRA. Inasmuch as documents speak for themselves, while testimony under oath can only be provided by live witnesses with personal knowledge, it is crucial that PECs clarify to which of the WAMY entities each of its current topics of inquiry pertain. This is necessary in order to facilitate preparation and avoid confusion by the witness (again, a danger not present

---

[1] Capitalized terms not defined herein shall be ascribed the meanings set forth in WAMY's July 3, 2019 letter (ECF No. 4661). For the sake of brevity, WAMY is not responding to all issues raised by PECs in their Opposition, but reserves the right to do so at the appropriate time.

when working with documents). Indeed, the CRA report itself distinguishes and clarifies between WAMY Canada, identified therein as "WAMY", and WAMY Saudi Arabia, and PECs should be directed to do the same. Moreover, obviously, the CRA has jurisdiction over WAMY Canada as a Canadian organization, separate from many foreign organizations, including WAMY Saudi Arabia. Inasmuch as Ms. Hawara does not have personal knowledge of WAMY Saudi Arabia, she is not even qualified to attest to facts related to WAMY Saudi Arabia in the first place.

Additionally, PECs take issue with WAMY's description of the CRA findings as being *inter alia* "the ministerial failure of WAMY Canada to file proper paperwork", and continue to present the CRA's report incorrectly as substantive findings on the merits. So as not to belabor the point, WAMY directs the Court's attention to the CRA's own January 22, 2016 clarification of its report:

> It is important to appreciate that the process to review an organization's continued eligibility for charitable registration ***does not require the CRA to provide undisputable evidence of wrongdoing*** as a basis for revocation. Rather, the revocation of a charitable organization's registered status under the Act is ***an administrative decision***. [emphasis added] [Cover Letter, Exhibit "A"]

Thus, by the CRA's own admission, its "analysis" must be restricted to its particular administrative context, and cannot and must not replace the level of scrutiny required by a court of law.

Finally, it is disingenuous for PECs to accuse "WAMY's counsel [of] ignor[ing] the PECs' invitation to meet and confer". PECs acknowledge the multiple written communications between counsel prior to filing. WAMY became aware of the issue at 1:00 pm of the same day that the PECs' letter had to be filed. In good faith, despite the short notice, WAMY engaged in a meet-and-confer in writing, to address these issues before seeking Court intervention. (The referenced correspondences are annexed hereto as **Exhibit "A".**) PECs thus effectively concede that a meet-and-confer ***did*** take place, albeit in writing. That it was done in writing rather than by telephone makes it no less of a meet-and-confer.

Respectfully Submitted,

*/s/ Omar Mohammedi*
Omar T. Mohammedi, Esq.

*/s/ Fredrick Goetz*
Frederick J. Goetz, Esq.

cc:     The Honorable George B. Daniels (via Hand Delivery)