# Exhibit A

**LAW FIRM OF**
**OMAR T. MOHAMMEDI, LLC**

233 BROADWAY, SUITE 801
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 x101
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT, ALGERIAN BAR
US COURT ON INTERNATIONAL TRADE

July 1, 2019

**VIA ELECTRONIC AND REGULAR MAIL**

Scott Tarbutton, Esq.
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
E-mail: SCarter1@cozen.com
   starbutton@cozen.com

**RE: In re Terrorist Attacks of September 11, 2001, 03 MDL 1570**

Dear Scott:

As to the topics at pages 6-7, WAMY-Saudi Arabia objects to topics 1,2,3,4,7,8, 9, 10 and 11 as vague as they fail to distinguish between WAMY-Canada and WAMY-Saudi Arabia. WAMY-Saudi Arabia asks that plaintiffs either amend these requests to clarify what entity they are referring to, WAMY-Canada or WAMY-Saudi Arabia, or, in the alternative, add the following language:

> WAMY-Saudi Arabia objects to topics 1, 2, 3, 4, 7, 8, 9, 10 and 11 as vague as they fail to distinguish between WAMY-Canada and WAMY-Saudi Arabia.

Without waving this objection, WAMY-Saudi Arabia requests that Cathy Hawara provide oral testimony on the following additional topics:

1. Any investigation or audit conducted by the CRA concerning WAMY-Saudi Arabia.
2. Any and all correspondence or communications between and among the CRA and WAMY-Saudi Arabia or any representative thereof.
3. WAMY-Saudi Arabia's compliance or non-compliance with Canada's Income Tax Act (the "**Act**").
4. WAMY-Saudi Arabia's lack of links to terrorism, extremism or criminal activity.
5. Any and all documents, evidence, or other materials provided to, and/or received from, the Financial Task Force from any representative of the plaintiffs.
6. Any and all documents, evidence, or other materials provided to, and/or received from, the Financial Task Force from any other source whatsoever that at all relates to WAMY-Canada or WAMY-Saudi Arabia.

7. WAMY-Saudi Arabia's relationship with Benevolence International Fund or the lack thereof.
8. WAMY-Saudi Arabia literature or other materials that were obtained or at all considered by the CRA.
9. WAMY-Saudi Arabia's and WAMY-International's September 3, 2015 letter seeking a retraction of certain false and defamatory allegations that WAMY-Saudi Arabia supports terrorism (a copy of which, along with the January 22, 2016 response of the Canada Revenue Agency, is enclosed herewith as **Exhibit "A"**).
10. Any and all documents, evidence, or other materials in connection with the CRA's August 23, 2011 "*Audit of the World Assembly of Muslim Youth*" (the "**Audit**"), including but not limited to the following allegations and subject matters:

    a. WAMY-Canada purportedly failed to comply with or contravened any of sections 230 to 231.5 of the Act, including but not limited to the purported failure to maintain books and records in accordance with the Act.
    b. WAMY-Canada purportedly ceased to comply with the requirements of the Act for its continued registration, including but not limited to the following subtopics:
        1. Charitable Purposes and Activities;
        2. Activities Contrary to Public Policy - Links to Terrorism; and
        3. Gifting to Non-Qualified Donees/Lack of Direction and Control Over Resources;
        4. Lack of Public Benefit/Promotion of Intolerance; and
    c. WAMY-Canada purportedly failed to file an information return as and when required under the Act or a Regulation.

(A copy of the Audit is enclosed herewith as **Exhibit "B"**.)

                Sincerely,

                */s/ Omar Mohammedi*
                Omar T. Mohammedi, Esq.

                */s/ Fredrick Goetz*
                Frederick J. Goetz, Esq.



Canada Revenue Agency       Agence du revenu du Canada

JAN 2 2 2016

Mr. Omar T. Mohammedi, LLC
233 Broadway, Suite 801
Woolworth Building
New York NY  10279
USA

SUBJECT:     **World Assembly of Muslim Youth**

Dear Mr. Mohammedi:

We acknowledge receipt of your letter dated September 3, 2015, submitted on behalf of your client, World Assembly of Muslim Youth in Saudi Arabia (WAMY Saudi Arabia), wherein you demand that the Canada Revenue Agency (CRA) retract *"any statement from our letters dated January 5, 2012 and August 23, 2011 to Mr. Ayaman Al-Taher that WAMY Saudi Arabia has any links to terrorism."*

As you are aware, effective January 5, 2012, the CRA revoked the charitable registration of the World Assembly of Muslim Youth in Canada (WAMY Canada) following an audit of WAMY Canada's books and records. The CRA letters referenced above are the Administrative Fairness Letter (AFL) dated August 23, 2011 and the Notice of Intention to Revoke dated January 5, 2012 which were issued to WAMY Canada as a result of our audit.[1]

The CRA has a responsibility as a regulator to ensure that organizations which have been granted the tax privileges of a registered charity are operating in a manner that complies with the requirements for such registration. The provisions of the *Income Tax Act* (the Act) dealing with the registration and revocation of charities relate solely to the tax treatment of Canadian charities and their donors. It is important to appreciate that the process to review an organization's continued eligibility for charitable registration does not require the CRA to provide undisputable evidence of wrongdoing as a basis for

---

[1] The confidentiality provisions of the Act generally prohibit a government official from disclosing taxpayer information to third parties except in expressly permitted circumstances. However, paragraph 241(3.2)(e) of the Act permits the disclosure of "a *copy of the entirety of or any part of any letter sent by or on behalf of the Minister to the registrant relating to the grounds for the revocation or annulment*".

A copy of the AFL and Notice of Intention to Revoke issued to WAMY Canada are attached for your reference.



1

R350 E (08)

revocation. Rather, the revocation of a charitable organization's registered status under the Act is an administrative decision.

In making an administrative decision as to whether a charity continues to qualify for registered status, we take into account, and draw reasonable inferences from, all relevant information that is generally available to the public. We review and weigh all of the information collected during the audit to determine whether the charity has demonstrated that it continues to meet the common law and statutory requirements for registration.

When the CRA concludes an audit of a registered charity and the preliminary results indicate that the organization may not be adhering to its ongoing registration requirements, the CRA will issue an AFL. The purpose of the AFL is two-fold:

1. to describe, and fully disclose to the charity the evidentiary basis for, our findings related to the identified areas of non-compliance; and
2. provide the charity with an opportunity to respond to our concerns, to make available to the CRA any additional information, and to submit written representations and any relevant documentation as to why its charitable status should not be revoked.

As confirmed by the Federal Court of Appeal in Canada, the onus is on the registered charity to demonstrate that we have erred or that the audit findings should not result in revocation.[2]

The CRA will fully consider the charity's representations, if any are made, and the Director General of the Charities Directorate will decide on the appropriate course of action. At issue is whether the evidence provided by the charity, together with information otherwise available to the CRA, satisfies us that the charity is devoting its resources to charitable activities and otherwise continues to meet the requirements for registration. If the Director General determines that our concerns were not alleviated by the response and that revocation of the charity's registration is the appropriate compliance action, the charity will be issued a Notice of Intention to Revoke by registered mail outlining the rationale for that decision.

Upon receipt of a Notice of Intention to Revoke, due process allows an organization to appeal that decision if the organization believes that the CRA may have misinterpreted the facts or applied the law incorrectly. In this regard, a charity that has had its registration revoked can file an objection with the Appeals Branch of the CRA within 90 days of the Notice of Intention to Revoke. If the CRA upholds that decision, an organization can further appeal the decision to the Federal Court of Appeal and that Court's decision can, in turn, be challenged before the Supreme Court of Canada, with that Court's permission.

---

[2] See *Public Television Association of Quebec v. Canada (National Revenue)*, 2015 FCA 170 and *Canadian Committee for the Tel Aviv Foundation v Canada* 2002 FCA 72.

We trust that the foregoing fully explains our position as it relates to your letter of September 3, 2015.

Yours sincerely,

Cathy Hawara
Director General
Charities Directorate
Canada Revenue Agency
Place de Ville, Tower A, 5th floor
320 Queen Street
Ottawa ON  K1A 0L5

3



LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

233 BROADWAY, SUITE 801
WOOLWORTH BUILDING
NEW YORK, NY 10279
PHONE (212) 725-3846
FACSIMILE (212) 202-7621
WWW.OTMLAW.COM

OMAR T. MOHAMMEDI, ESQ.
DIRECT DIAL: (212) 725-3846 x102
EMAIL: OMOHAMMEDI@OTMLAW.COM

ADMITTED: NEW YORK, EIGHTH CIRCUIT
SECOND CIRCUIT, ALGERIAN BAR
US COURT ON INTERNATIONAL TRADE

September 3, 2015

**VIA FEDEX DELIVERY**
Cathy Hawara
Director General
Charities Directorate
Canada Revenue Agency
320 Queen Street
Place de Ville
13th Floor, Tower A
Ottawa, ON K1A 0L5

Re:   **Allegations made by the Canada Revenue Agency against World Assembly of Muslim Youth**

Dear Ms. Hawara:

As counsel for the World Assembly of Muslim Youth ("WAMY"), we write to refute and challenge the Canada Revenue Agency ("CRA") statements against our client, WAMY. While our client has no standing to challenge CRA revocation of WAMY Canada which is a separate entity from WAMY, we take issue with and seek a retraction of the false and defamatory statement that WAMY Saudi Arabia supports terrorism. WAMY has not been involved in any illegal activities let alone terrorist ones.

On January 5, 2012, the CRA revoked the registration of WAMY in Canada (registered as business number 871966040RR0001). The revocation was based on non-compliance and irregularities described in the CRA's letter dated August 23, 2011. CRA inexplicably and with no independent justification incorporated wildly inaccurate and false claims that WAMY Saudi Arabia supported terrorism.

LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

    WAMY is a charitable organization established in 1972, operating worldwide with 66 chapters, with the head office in Riyadh, Kingdom of Saudi Arabia. As stated above, we hereby demand a retraction of any statement within the letters of January 5, 2012 or August 23, 2011 to Mr. Ayman Al-Taher that WAMY Saudi Arabia has any links to terrorism. As a governmental agency, the CRA has an obligation to ascertain the facts and offer enough evidence to support its claims. The statements the CRA made are nothing more than restatements of false, defamatory and unsubstantiated statements from media sources with demonstrated bias and lack of credibility. Additionally, the CRA incorporates extensively unproven and sharply contested allegations against WAMY Saudi Arabia made by lawyers and parties with a clear and substantial monetary interest and motive.

    WAMY Saudi Arabia specifically takes issue with and demands retraction of the following false and defamatory statements.

<u>WAMY's Alleged Support for Terrorism</u>

    Among the grounds provided in the January 5, 2012 and August 23, 2011 letters concluding to revoke WAMY Canada's charitable status, is that WAMY Canada was established to support the goals and operations of its parent organization located in Saudi Arabia, <u>which has been alleged to support terrorism</u>. Such statements are conclusory and provide no basis to warrant such a conclusion. (<u>See</u> January 5, 2012 letter at page 1 and August 23, 2011 letter at pages 5, 7, and 9-12).

    The CRA's allegations and statements against WAMY are without basis. The CRA has neither shown nor cited any official information such as state/country or international designation of WAMY as a terrorist organization, or as being associated or linked to terrorism. The CRA makes further egregious allegations without any basis that WAMY and its branches have provided support to terrorist organizations. The CRA attempts to justify its false allegations by citing to newspapers articles and editorials that lack credibility, as a basis for their statement. Some of the articles and editorials don't even mention WAMY but the CRA inexplicably managed to connect WAMY to illegal activities.

    The CRA cited to the following in support of their statements:

> *"The July 29, 2006, edition of the Indian Express reported that WAMY (Saudi Arabia) has been providing funding to, the Students Islamic Movement of India (SIMI), an organization that has been banned by the Indian*

LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

> *Government for its, anti-government activities. We note that SIMI's Secretary-General, Mr. Safiar Nagori, who has been identified in media reports as an important figure in the global jihadist movement, was arrested in connection with July 11, 2006, bombings in Mumbai, India; SIMI is also believed to have links to Lashkar-e-Tayyiba. Laskhar-e-Tayyiba (LeT) was listed as terrorist entity pursuant to s. 83.05 of the Criminal Code (Canada) on July 18, 2003.* (August 23, 2011 letter at pages 9-10).

Such dubious and slanted media editorials have no legal value. It is astounding to say the least that a governmental organization such as the CRA would refer to and incorporate such meritless sources as supporting any connection of WAMY Saudi Arabia to terrorism. In many of the statements WAMY's name was not even mentioned, yet the CRA managed to somehow connect WAMY to other organizations and terrorism. CRA has not demonstrated how WAMY provided funding to SIMI, if any. Or what connection WAMY has or had with the alleged secretary general of SIMI, Mr. Safiar Nagori. The CRA clusters WAMY along with other organizations that have been designated by the United Nations without providing evidence to support their statements.

> - *A report in the October 2005 issue of the Jamestown Foundation's Terrorism Monitor alleges that WAMY (Saudi Arabia) is providing funds to Islamic militants in the Nigerian state of Yobe through a British organization affiliated with WAMY (Saudi Arabia), the Muslim World League (MWL) and the International Islamic Relief Organization (IIRO). On November 9, 2006 the United Nations Security Council approved the addition of the IIRO Indonesia branch office (a.k.a., The Human Relief Committee of the Muslim World League) to the list of entities belonging to or associated with the Al-Qaida organization. The Philippine and Indonesian branch offices of the IIRO, a.k.a., The Human Relief Committee of the Muslim World League have been closed for ties to terrorist financing.* (August 23, 2011 letter at page 10).

This report did not say the funds were from WAMY. Yet, the CRA attempts to connect WAMY. This report said the funds were from al-Muntada al-Islamic. Further Jamestown Foundation is an extreme rightwing

3

foundation with a clear anti-Islamist agenda. The CRA by quoting reports from such ideologically driven foundations and not verifying the truth or accuracy of the reporting can be tantamount to CRA endorsing the views of such organizations.

- *The April 12, 2002, edition of the Arab News reported that WAMY (Saudi Arabia) was increasing its monthly contribution to the Palestinian intifada to $2.7 million (USD). This increase was in addition to another $70. Million (USD) that had been collected through WAMY offices abroad; (August 23, 2011 letter at page 10).*

Even assuming this report is true, which is not, it does not mean that WAMY supports terrorism. The <u>CRA seems to use the complicated, religiously and politically charged Israeli-Palestinian conflict which has endured for decades to connect WAMY to terrorism.</u>

- *Jamaluddin B. Hoffman's report, <u>Guide to Wahhabi Organizations in North America</u>, identifies WAMY as the sister organization to the MWL, which he categorizes as " ... the most important and influential Wahhabi organization in the work, effectively serving as the ideological headquarters for Islamic extremists worldwide. The MWL conducts its work through branch offices and affiliate organizations established in countries. All over the world ... Many of those groups have, direct links to the al-Qaeda terrorist network and other terrorist organizations. Hoffman also describes WAMY (Saudi Arabia) as "... the youth [wing] of the transnational extremist movement...."* (August 23, 2011 letter at page 10).

WAMY is not MWL. WAMY will not judge or discuss MWL's operations and principles. However, if MWL is alleged to support Wahhabism, does not mean WAMY supports the same. In addition, the CRA attempts to convolute the Wahabism, a political theory and somehow connects Saudi charitable organization to terrorism. Such statements are not only egregious but demonstrate either the lack of knowledge and understanding of these matters or the CRA did not bother to ascertain the sources it reviewed. Collecting information from blogs and editorials and using that to issue a governmental report is concerning and highly prejudicial to WAMY. In its report the CRA went on to state:

4

LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

> - *A BBC Worldwide Monitoring Report, dated November 23, 2006, indicates that the Egyptian Government refused to issue an entry visa to Qazi Hussain Ahmad, chief of the Jamaai-i-Islami; Mr. Ahmad had been invited by WAMY (Saudi Arabia) to its 10th Annual General Convention. Jamaat-i-Islami is a Pakistani based political party founded by Syed Abul Ala Maududi. The Jamaat-i-Islami's militant wing Hizbul Mujahideen is a listed entity in the European Union.*
>
> *According to the Hudson Institute, Jamaat-i-Islami provided funds and military training to various Islamist liberation movements from places such as Chechnya and Bosnia. During the Soviet occupation of Afghanistan, Jamaat-i-Islami provided direct support to the Afghan mujahideen based in Pakistan. It also hosted many of the Arab mujahideen who had come to participate in the insurgency. During the Soviet occupation of Afghanistan, JI also maintained close links to Gulbeddin Hikmatyar's Hizbe Islami, a listed terrorist entity in Canada. (August 23, 2011 letter at page 11).*

In the above two examples, again the CRA relies on media institutions' writings, which lack legal ground or basis and do not even connect WAMY to anything except for an alleged invitation. Even if there was allegation that WAMY invited Qazi Hussain Ahmad, that does not mean WAMY was involved or has been involved in terrorist activities. In addition, the CRA seems to use the same recycled information used by the Plaintiffs in *Re: Terrorist Attack on September 11, 2001*, 03 MDL 1570 (GBD) (FM), to connect invitations, seminars or other forms of remote and non-existing connection to state that WAMY has been connected to terrorist activities. While these reports, editorials and newspapers articles do not have to offer any legal basis for expressing their opinions, the CRA as a governmental agency has the duty and an obligation to independently ascertain the facts and provide verifiable evidence before it claims WAMY Saudi Arabia has ever had anything to do with terrorism.

The CR's letters also state:

- *Testimony by terrorism consultants and analysts Matthew Epstein and Evan Kohlmann before the United States Senate Committee alleges that WAMY supports terrorism: In approximately 1993, in conversations with former senior al-Qaida lieutenant Jamal Ahmed Al-Fadl, Usama Bin Laden identified three Muslim charities [including the World, Assembly of Muslim Youth] as the primary sources of Al-Qaeda financial and fund raising activity.*

  *These three organizations served a critical role in the Arab-Afghan terrorist infrastructure by laundering money originating from bank accounts belonging to Bin Laden and his sympathetic patrons in the Arabian Gulf, providing employment and travel documents to Al Qaida personnel worldwide, and helping 'to move funds to areas where Al-Qaeda was carrying out operations.'*

  *According to a U.S. Justice Department brief on the subject:*
  *'[Al-Fadl] understood from conversations with Bin Laden and others in al Qaeda that the charities would receive funds that could be withdrawn in cash and a portion of the money used for legitimate relief purposes and another portion diverted for al Qaeda operations. The money for al Qaeda operations would nevertheless be listed in the charities' 'books as expenses for building mosques or schools or feeding the poor and needy.'"* (August 23, 2011 letter at pages 11 - 12).

These statements by CRA are not only baseless but assume facts that have not been established and treat them as true statement of facts. The testimonies of Matthew Epstein and Evan Kohlmann before the United States Senate Committee are simply their opinions and have no legal basis or supporting evidence. The CRA report contains no direct evidence showing that WAMY intentionally funneled money for terrorist activities. The CRA is using the same recycled information to connect WAMY to illegal activities without foundation, merit or supporting evidence. The CRA does not demonstrate how WAMY allegedly supported terrorism.

WAMY is not a sister organization of any other charity or organization. The CRA should have done its due diligence before perpetuating unfounded allegations that WAMY is a sister organization of the MWL. Similarly simple research would

have shown the CRA that WAMY has no relation whatsoever with any Pakistani based political party or any wing of the Mujahideen. The CRA as a governmental agency should verify its facts before painting an organization in false light, and associating it with terrorism.

Working in Kashmir and the Philippines (August 23, 2011 letter at page 9 – reference to WAMY funding SIMI), does not make WAMY connected to terrorist activities. If the CRA has any evidence to show to the contrary, we would like to receive it.

<u>WAMY's Alleged Support for Extremism and Intolerance</u>

While the CRA cited that WAMY Canada did not serve its role as a not for profit organization under Canadian law such as of public benefit/promotion, they accused WAMY without any basis or evidence of intolerance and equated it with terrorism. The CRA stated "material produced by WAMY (Saudi Arabia)" in our view appears to promote intolerance, and/or advocate violence against non-Muslims and/or the use of violence as a means to bring about political or societal change." CRA then listed the following.

- *The MWL pamphlet, A Dialogue on the Internet, distributed by WAMY (Canada), states that "Christians living with Muslims in the east...have always enjoyed the tolerance and good treatment of Islam ... unfortunately Western Christians preferred and still prefer to he the enemies of Islam and Muslims (August 23, 2011 letter at page 18).*

The CRA correctly identities this pamphlet as MWL. Without addressing the issue of intolerance, WAMY questions the rationale that the publication is WAMY's.

- *An affidavit filed in U.S. District Court in Virginia by David Kane, a Senior Special Agent with the U.S. Department of Homeland Security, quotes excerpts from WAMY publications that appear to promote hatred arid intolerance:*

    o *a WAMY publication entitled "A Handy Encyclopedia of Contemporary Religions and Sects" states that "[t]he Jews are humanity's enemies; they foment*

7

LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

> *immorality in this world; the Jews are deceitful, they say something but mean the exact opposite."* [sic]; and

- o *a 1991 WAMY (Saudi Arabia) publication entitled "Twajihat lslamiya" (Islamic Views) states "[t]each our children to love taking revenge on the Jews and the oppressors, and teach them that our youngsters will liberate Palestine and Al-Quds [Jerusalem] when they go back to Islam and make Jihad for the sake of Allah."* (August 23, 2011 letter at page 18).

As an initial matter, Kane gives absolutely no context for these isolated statements. Viewing such statements out of context is dangerous and misleading. One could certainly accuse people of other faiths of intolerance based upon quotes from the Bible that "he that sacrificeth unto any god, save unto the Lord only, he shall be utterly destroyed," (Exodus 22:20). Indeed, the Bible contains many "text of terror." See *"Dark Passages: Does the harsh language in the Koran explain Islamic violence? Don't answer till you've taken a look inside the Bible."* Boston Globe, March 8, 2009.

Mr. Kane does not provide any evidence to show his personal or direct experience with WAMY. All he does is attempt to interpret a camp song, and ends up making a far-fetched connection that WAMY supports the youth to become violent. Mr. Kane's interpretations demonstrate his lack of understanding of Arabic. For instance he makes reference to an interpretation to arm the youth. This has a different meaning in Arabic. Arming people with knowledge does not mean arming them with weapons. Further, Mr. Kane's information is derived from an article published in a website (National Review Online). A little research by CRA would have informed the CRA that nationalreviewonline.com (cited in Kane affidavit as www.nationalreviewonline..com) is invalid URL. Also that the article which claims Islamic Views is a book by WAMY is by Jonathan Levin. Johnathan Levin is a blogger, who has described himself as "Boston-raised, midwest-educated attorney disgusted by government cronyism, nepotism, nihilism and narcissism. Amateur foreign policy wonk." CRA's repeating these statements without any independent fact checking is sloppy to say the least. The CRA must subject to greater scrutiny such biased and unsupported claims by right wing bloggers and activists.

Further, the CRA refers to Kane's affidavit to allege that a section in the Encyclopedia is entitled: "Heroes from Palestine." The section allegedly list individuals who attacked Israeli citizens, including the hijacking of a bus that killed 14 people. There is no such section in the encyclopedia. The encyclopedia

8

LAW FIRM OF
OMAR T. MOHAMMEDI, LLC

talks about the foundations and history, the belief systems, and practices of 58 different religions. No such section exists in the Encyclopedia.

A simple review of the Kane affidavit and the CRA would have found that he was relying on hearsay with incorrect information. For Instance the Kane affidavit claims that Ahmad Totonji was the first secretary of WAMY (referring to WAMY Secretary General). Ahmad Totonji has never been a Secretary General of WAMY.

> - *WAMY (Saudi Arabia) has published and distributed Mawlana Syed Abul Ala Maududi's book "Towards Understanding Islam," a copy of which was obtained from WAMY, (Canada) during the March 2004 audit. This book contains several paragraphs that appear to present an extremist, militant interpretation of the concept of jihad. In addition, Syed Maududi is also the author of "Jihad for the Sake of God," a work that is considered to be one of the more influential treatises on the subject of jihad. Syed Maududi is also the founder of the extremist Jamaat-e-Islami political party, an organization that is believed to have links to the Kashmiri based militant group, Hizbul Mujahideen.* (August 23, 2011 letter at page 18).

Simply because a book was part of the documents handed over to the CRA during the March 2004 audit, does not mean, WAMY was distributing the book. Without even going into the veracity of the statements made on the book, the CRA offers no evidence demonstrating that WAMY endorse the views expressed by the author of the book, supported those views or distributed copies of the book.

All the above allegations against WAMY by the CRA, were borrowed from the Plaintiffs in the civil multidistrict litigation currently going in New York (the *Re: Terrorist Attack on September 11, 2001*, 03 MDL 1570 (GBD) (FM)). The CRA cited to same newspaper articles, journals, blog entries, and unfounded testimony, as cited to by the Plaintiffs in MDL 1570.

In so far as the letters at issue discuss WAMY Saudi Arabia, the CRA relies on newspaper articles, editorials, false information from testimonies and discussions rather than official documents to make allegations against WAMY. While the CRA presented findings on WAMY Canada's irregularities, not related to terrorism, it ties WAMY Saudi Arabia to terrorism without any official documents or true and

LAW FIRM OF
**OMAR T. MOHAMMEDI, LLC**

verifiable facts. The CRA did not produce any independent evidence to support its claims against WAMY.

WAMY has never been charged, indicted or convicted of any wrong doing in any country. WAMY is not listed on any lists of designated terrorist organizations or even suspicious lists such as the United States Office of Foreign Asset Control ("OFAC"), or by the United Nations. If the CRA has any information to show otherwise we will be happy to receive it. Otherwise, WAMY Saudi Arabia demands that the CRA issue a retraction disavowing any allegation or statement that WAMY Saudi Arabia has any connection with or has ever supported terrorism or any terrorist organization including, but not limited to, Al Qaeda.

Sincerely,

_____
Omar Mohammedi, Esq.

_____
Frederick Goetz, Esq.

# Linda Shili

| | |
|---|---|
| **From:** | Haefele, Robert <rhaefele@motleyrice.com> |
| **Sent:** | Monday, July 1, 2019 7:27 PM |
| **To:** | Omar Mohammedi, Esq. |
| **Cc:** | Tarbutton, J. Scott; fgoetz@goetzeckland.com; Carter, Sean; Flowers, Jodi; Eubanks, John; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce; Kabat@BernabeiPLLC.com; Linda Shili |
| **Subject:** | Re: EXTERNAL-RE: 03 MDL 1570 - Letters Rogatory |

Omar - we are our Inclined to go ahead and file our requests as a stand-alone document and allow you respond to them afterward, with the possibility referenced below of amending the areas tomorrow. We are not inclined to file a request for LR that includes your objections to our request for LR. At this point, it makes better sense that we go ahead and file our request, you go ahead and file your objections, and we will respond. Otherwise, our request gets a bit incoherent.

As for your areas to add, we might be able to work with you over the next day or so to iron out you proposed areas of additional inquiry. But that will take more time than we have tonight. Let's plan to discuss tomorrow to see if that is possible.

We would not, however, that the areas we proposed mirrored what was included in the LR for documents from the CRA, with your approval. So we were surprised that you had opposition to this offering.

Regardless, we will plan to file the LR today as required by the order. We will try to work out revisions to the areas of inquiry with you tomorrow. And if you are still incline, you can do your objections, to which we will respond.

Sent from my iPhone

On Jul 1, 2019, at 6:10 PM, Omar Mohammedi, Esq. <OMohammedi@otmlaw.com> wrote:

> Counsel:
>
> Please see attached. Thank you.
>
>
>
> Omar Mohammedi, Esq.
>
> Adjunct Professor, Fordham Law School
>
>
>
>    Law Firm of Omar T. Mohammedi, LLC
>    233 Broadway, Suite 820
>    New York, NY 10279

1

Phone: 212.725.3846
Facsimile: 212.202.7621
www.otmlaw.com
Follow us on Twitter @OTMLAW

_____
_____

PLEASE NOTE: The information contained in this message is privileged and confidential and is intended only for the use of the individual named above and who have been specifically authorized to receive it. If you are not the intended recipient you are hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, or if any problem occur with transmission please contact sender or call 212. 725.3846.

**From:** Omar Mohammedi, Esq.
**Sent:** Monday, July 01, 2019 5:04 PM
**To:** 'Tarbutton, J. Scott'; fgoetz@goetzeckland.com
**Cc:** Carter, Sean; 'Haefele, Robert' (rhaefele@motleyrice.com); WTC[jflowers@motleyrice.com]; 'jeubanks@motleyrice.com'; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce; 'Kabat@BernabeiPLLC.com'
**Subject:** RE: 03 MDL 1570 - Letters Rogatory

Scott:

I wish we received this earlier. Today is the deadline for submission as per the court's order. Anyway, we are preparing something and you should receive our objections and additions in an hour. Thanks.

**From:** Tarbutton, J. Scott [mailto:STarbutton@cozen.com]
**Sent:** Monday, July 01, 2019 12:55 PM
**To:** Omar Mohammedi, Esq.; fgoetz@goetzeckland.com
**Cc:** Carter, Sean; 'Haefele, Robert' (rhaefele@motleyrice.com); WTC[jflowers@motleyrice.com]; 'jeubanks@motleyrice.com'; WTC[jkreindler@kreindler.com]; WTC[amaloney@kreindler.com]; Steven R. Pounian; WTC[jgoldman@andersonkill.com]; Armstrong, Arthur; Strong, Bruce
**Subject:** 03 MDL 1570 - Letters Rogatory
**Importance:** High

Omar and Fred – Consistent with the Court's June 10, 2019 Order (ECF No. 4582), the PECs intend to submit the attached Request for International Judicial Assistance (Letters Rogatory) to the Court later today, seeking the third-party deposition of Cathy Hawara from the Canada Revenue Agency. Please let the PECs know whether WAMY has any additions to the areas of inquiry at pp. 6-7.

Regards,

Scott



**J. Scott Tarbutton**
**Member | Cozen O'Connor**
One Liberty Place, 1650 Market Street Suite 2800 | Philadelphia, PA 19103
P: 215-665-7255 F: 215-701-2467
Email | Bio | LinkedIn | Map | cozen.com

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***

<07-01-2019 Letter to PEC re. Letters Rogatory.pdf>

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.