USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/22/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**In re:**

**TERRORIST ATTACKS ON**
**SEPTEMBER 11, 2001**

03-MDL-01570 (GBD)(SN)

**OPINION & ORDER**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

On January 15, 2019, the Kingdom of Saudi Arabia ("Saudi Arabia") filed a motion to seal and/or redact certain documents it had produced during discovery. ECF No. 4361 ("Def's Br."). Those documents were submitted to the Court in connection with (1) the Plaintiffs' Executive Committees ("PECs" or "Plaintiffs") November 30, 2018 motion to compel; and (2) Plaintiffs' December 28, 2018 opposition to Saudi Arabia's motion to modify the scope of supplemental discovery. Id. at 1. Plaintiffs filed a response on January 22, 2019, and Saudi Arabia filed a reply on January 25, 2019. ECF Nos. 4373 ("Pl's Br."), 4385 ("Def's Reply Br."). In addition, although it did not move to intervene, the New York Times Company submitted a letter opposing Saudi Arabia's request on February 19, 2019. The Court heard oral argument on February 26, 2019. ECF No. 4398. For the reasons that follow, Saudi Arabia's motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Determining whether sealing is appropriate is a multi-step process. First, the Court must determine whether the document is a "judicial document." See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016). "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document." Brown v.

Maxwell, No. 18-2868-CV, 2019 WL 2814839, at *3 (2d Cir. July 3, 2019) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). Rather, the filed document must be "relevant to the performance of the judicial function and useful in the judicial process." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (citing Amodeo I, 44 F.3d at 145).

A finding that a document is a "judicial document" triggers a presumption of public access. Bernstein, 814 F.3d at 141 (citing Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 167 n.15 (2d Cir. 2013)). This presumption is secured by two independent sources: the First Amendment and the common law. Id. (citing Lugosch, 435 F.3d at 121). The First Amendment right of access is "stronger and can only be overcome under more stringent circumstances than the common law presumption." United States v. Erie Cty., 763 F.3d 235, 241 (2d Cir. 2014). Accordingly, where, as here, the First Amendment is applicable, the Court "need not . . . engage in . . . a common law analysis." Accent Delight Int'l Ltd. v. Sotheby's, No. 18-CV-9011 (JMF), 2019 WL 2602862, at *7 (S.D.N.Y. June 25, 2019) (citing Erie County, 763 F.3d at 241).

The Court of Appeals has articulated two different approaches to determine whether judicial documents receive First Amendment protection. Bernstein, 814 F.3d at 141. The first approach considers "experience and logic": that is, "whether the documents have historically been open to the press and general public," and "whether public access plays a significant positive role in the functioning of the particular process in question." Id. The second approach asks whether the documents "are derived from or a necessary corollary of the capacity to attend the relevant proceedings." Newsday LLC, 730 F.3d at 164 (citing Lugosch, 435 F.3d at 120). This approach applies only when the judicial proceedings themselves are covered by the First Amendment. Id.

To overcome a First Amendment right of access, the moving party must demonstrate that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest." Bernstein, 814 F.3d at 144 (citing In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). The Court must "review the documents individually and produce specific, on-the-record findings that sealing is necessary." Brown, 2019 WL 2814839, at *4 (internal citations and quotation marks omitted). "Broad . . . findings" and "conclusory assertion[s]" are insufficient to overcome the public's right to access the record. Bernstein, 814 F.3d at 144–45.

**DISCUSSION**

The parties filed approximately 218 documents in connection with Plaintiffs' motion to compel and Saudi Arabia's motion to limit the scope of supplemental discovery. Of those documents, 145 were produced by Saudi Arabia and designated as confidential under the Court's October 2006 Protective Order. See ECF No. 1900. Saudi Arabia — apparently conceding that the relevant materials are "judicial documents" subject to the First Amendment presumption of public access — contends that "higher values" require the Court to seal 73 documents (65 unique documents and 8 duplicates). Def's Br., at 1. Saudi Arabia also contends that, under Rule 5.2(a) of the Federal Rules, the Court should redact personal or financial information from an additional 13 documents. Id. The Court addresses these issues in turn.

**I.    Sealing**

   **A.    The Vienna Conventions**

During jurisdictional discovery, Saudi Arabia produced documents from its Consulate in Los Angeles, California (the "Consulate"), and its Embassy in Washington, D.C. (the "Embassy"). Both the Consulate and the Embassy receive certain immunities under federal law. Consular immunity is governed by the Vienna Convention on Consular Relations (the "VCCR"),

and diplomatic immunity is governed by the Vienna Convention on Diplomatic Relations (the "VCDR," together with the VCCR, the "Conventions").

Saudi Arabia argues that the "inviolability" provisions of the Conventions constitute "higher values" that justify sealing. The parties did not provide — and the Court was unable to locate — any caselaw that discusses whether either Convention can overcome the First Amendment presumption of public access. The Court concludes that, where applicable, both Conventions can justify sealing judicial documents under the First Amendment.

### 1. Inviolability as a Higher Interest

The VCCR governs consular immunity. Rana v. Islam, 305 F.R.D. 53, 60 (S.D.N.Y. 2015) (citing United States v. Kostadinov, 734 F.2d 905, 910 (2d Cir. 1984)). Among other things, the VCCR provides that "consular archives and documents shall be inviolable at all times and wherever they may be." VCCR, art. 33, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. "Consular archives" is defined broadly, comprising "all the papers, documents, correspondence, books, films, tapes, and registers" of the consulate. Id., art. 1(1)(k). In addition, the VCCR also provides that "official correspondence of the consular post shall be inviolable." Id., art. 35(2). Official correspondence refers to "all correspondence relating to the consular post and its functions." Id.

The VCDR, which governs diplomatic immunity, provides similar protections. Article 24 states that a diplomatic mission's "archives and documents" shall be "inviolable at any time and wherever they may be." VCDR, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. Likewise, Article 27 states that the mission's "official correspondence . . . shall be inviolable." Id., art. 27(2). Although the VCDR does not define "archives and documents," the extensive definition used in the VCCR is often applied by analogy. Eileen Denza, Diplomatic Law:

Commentary on the Vienna Convention on Diplomatic Relations, 160 (4th ed. 2016) (hereinafter, "Denza, "Diplomatic Law"). Given the wider immunities generally given to diplomatic missions, "it would be absurd for a narrower construction of the term 'archives' to be applied to diplomatic archives than to consular archives." Id.; see also Rana, 305 F.R.D. at 60 (citing United States v. Khobragade, 15 F. Supp. 3d 383, 385 (S.D.N.Y. 2014)) ("The degree of immunity that consular officers receive is more restricted than that enjoyed by diplomats.").

These provisions represent "higher values" that can overcome the First Amendment presumption of public access. The Court reaches this conclusion for three reasons. First, the Conventions' plain language indicates that consulates and diplomatic missions have a strong interest in maintaining the confidentiality of their records. "Archives and documents," for example, are "inviolable," "at any time," "wherever they may be." VCCR, art. 33; VCDR, art. 24. Similar protection is afforded to "official correspondence," and there are no exceptions identified in either Convention. VCCR, art. 35; VCDR, art. 27. Indeed, even in the case of "armed conflict," the receiving State must "respect and protect" the sending State's archives. VCCR, art. 27(1)(a); VCDR, art. 45(a). This type of categorical protection cautions against any intrusion into the majority of documents found in a consulate or an embassy. See Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982) ("Interpretation of [the Treaty] must, of course, begin with the language of the Treaty itself [, and] [t]he clear import of Treaty language controls.").

Second, the history of the VCDR emphasizes the broad protection afforded to a mission's "archives and documents." The International Law Commission, for example, rejected an attempt to narrow the scope of Article 24 by removing the phrase, "and documents." Int'l Law Comm'n, Report of the Commission to the General Assembly, at 96, U.N. Doc. A/3859, *reprinted in* 2

Y.B. INT'L L. COMMISSION 78, 96 (1958), U.N. Doc. A/CN.4/SER.A/1958/Add.1 [hereinafter "1958 ILC Yearbook"]. Similarly, an amendment introduced by the United States to define "archives" as "official records . . . belonging to or in possession of the mission" was withdrawn for lack of support. Denza, Diplomatic Law, at 159 & n.13. This confirms what was already clear from the plain language of the text: the inviolability of an embassy's papers is broad and far-reaching. Indeed, the Commission emphasized the need for a "special provision" for archives and documents because of their "importance . . . to the functions of the mission." 1958 ILC Yearbook, at 96.

  Finally, the limited caselaw in this area is consistent with a broad reading of the Conventions. Interpreting Article 22 of the VCDR, the Court of Appeals described the inviolability protections as "broad," "strong," and "advisedly categorical." 767 Third Avenue Assocs. v. Permanent Mission of Republic of Zaire, 988 F.2d 295, 298 (2d Cir. 1993). Although the Circuit has not addressed the inviolability of archives and documents, its guidance on other inviolability provisions is informative. In Third Avenue Associates, for example, the court held that the "inviolability of mission premises" prevented the district court from evicting a mission from its residence, even upon non-payment of rent. Id. at 296, 302. Similarly, in Tachiona v. United States, the court held that the "inviolability of the person" precluded service of process on persons entitled to diplomatic immunity, even when served on behalf of a non-immune entity. 386 F.3d 205, 223–24 (2d Cir. 2004). The mandate from these cases is clear: federal courts should not interfere with objects imbibed with inviolability by the Conventions. See 1958 ILC Yearbook, at 96 ("The receiving State is obliged to respect the inviolability itself and to prevent its infringement by other parties.").

The Court sees no reason to separate "archives and documents," or "official correspondence," from other types of inviolability under the Conventions. Nor does the Court see reason to distinguish between the VCCR and the VCDR, which use identical language for the relevant provisions.

Plaintiffs' arguments to the contrary are unavailing. Article 44 of the VCCR — the only provision of either Convention mentioned in Plaintiffs' opposition — provides that "members of a consular post" can be called to *testify* in judicial or administrative proceedings.[1] VCCR, art. 44(1). This provision does not mention the dissemination of documents and therefore does not alter the Court's analysis. Indeed, just two paragraphs later, the VCCR reiterates that members of a consular post are "under no obligation" to produce "official correspondence or documents relating thereto." The VCDR, on which the Court primarily relies, contains no similar provision. See VCDR art. 31(2) ("A diplomatic agent is not obliged to give evidence as a witness."). Nor does it matter that Thumairy may not have worked at either the Consulate or the Embassy — the Conventions protect a mission's "archives and documents" regardless of whether the individual described therein worked at the particular mission.

Accordingly, given the plain language of the Conventions — and given the broad interpretation of "inviolability" adopted by the Court of Appeals — the Court concludes that the inviolability protections articulated in Articles 24 and 27 of the VCDR, and Articles 33 and 35 of the VCCR, are "higher interests" that can justify a narrowly-tailored sealing under the First Amendment.

---

[1] Article 1 defines "members of the consular post" as "consular officers, consular employees, and members of the service staff." VCCR, art. 1(g).

**2.     Application**

The Court finds that the following exhibits are "archives or documents" under Article 24 of the VCDR.[2] Most of the exhibits show, on their face, that they were received by a member of the Embassy or that they are otherwise Embassy documents. In addition, each of the exhibits was collected and produced from either the Embassy's files, or the files of the Saudi Arabia Cultural Mission in Washington, D.C., which is part of the Embassy. See Def's Br., Exhibit A. Although four exhibits (KSA 1618, 1623, 6643, and 1179) seem to be consular documents, they were produced from the Embassy and therefore are better characterized as part of the Embassy's "archives." Because of the higher interest in protecting their inviolability, the Court grants Saudi Arabia's request to file these documents under seal.

| Exhibit | Bates Number | Exhibit | Bates Number | Exhibit | Bates Number | Exhibit | Bates Number | Exhibit | Bates Number |
|---|---|---|---|---|---|---|---|---|---|
| PX10 | KSA6679 | PX36 | KSA1720 | PX53 | KSA1830 | DX4 | KSA6673 | DX64 | KSA6644 |
| PX22 | KSA1277 | PX41 PX84 DX7 | KSA6868 KSA6861 KSA6861 | PX53 | KSA1831 | DX6 | KSA6810 | PX18 | KSA1618 |
| PX24 | KSA1268 | PX53 | KSA1822 | PX53 DX63 | KSA1833 | DX11 DX28 | KSA1223 KSA1226 | PX26 | KSA1623 |
| PX24 | KSA1269 | PX53 | KSA1823 | PX53 | KSA1835 | DX14 | KSA1557 | PX28 DX62 | KSA6643 |
| PX30 | KSA1555 | PX53 | KSA1824 | PX53 DX47 | KSA1837 KSA6796 | DX50 | KSA6660 | DX31 | KSA1179 |
| PX30 | KSA1556 | PX53 PX53 DX49 | KSA1826 KSA1832 KSA908 | PX65 | KSA5769 | DX60 | KSA6647 | | |
| PX36 | KSA1535 | PX53 | KSA1829 | PX85 | KSA1291 | DX61 | KSA6661 | | |

In addition, the Court finds that the following exhibits are "official correspondence" under Article 27 of the VCDR. The exhibits demonstrate that they were sent by a member of the

---

[2] "PX" refers to exhibits attached to Plaintiffs' motion to compel and the reply in further support thereof; "DX" refers to the exhibits attached to Defendants' opposition to Plaintiffs' motion to compel; and "SX" refers to the exhibits attached to Plaintiffs' opposition to Defendant's motion to limit supplemental discovery.

Embassy and that they "relat[e] to the mission and its functions."[3] Again, because of the higher interest in protecting their inviolability, the Court grants Saudi Arabia's request to file these documents under seal.

| Exhibit | Bates Number | Exhibit | Bates Number | Exhibit | Bates Number |
|---|---|---|---|---|---|
| PX15 | KSA1253 | PX36 | KSA1534 | DX10 | KSA1213 |
| PX15 | KSA1256 | PX68 DX27 | KSA1274 | DX13 | KSA1227 |
| PX26 | KSA1250 | PX74 | KSA1249 | DX16 | KSA1207 |
| PX26 | KSA1258 | PX77 | KSA583 | DX17 | KSA591 |
| PX33 | KSA1234 | PX84 | KSA6863 | | |
| PX35 DX2 | KSA6667 | DX3 | KSA589 | | |

The Court makes similar findings under the VCCR. The following exhibit demonstrates that it is a consular document, and Saudi Arabia represents that it was collected and produced from the Consulate. Accordingly, to protect its inviolability under Article 33, it may be filed under seal.

| Exhibit | Bates Number |
|---|---|
| DX9 | KSA1375 |

The Courts finds that the following exhibits are "official correspondence" under Article 35 of the VCCR. The exhibits demonstrate that they were sent by a member of the Consulate and that they "relat[e] to the mission and its functions." Because of the higher interest in protecting their inviolability, the Court grants Saudi Arabia's request to file these documents under seal.

---

[3] The drafting history of Article 27 suggests that "official correspondence" may apply "only to mail emanating from the mission." Diplomatic Law, at 189. That said, some of these exhibits, as well as other exhibits categorized under the VCCR, were also *received* by an Embassy representative. For that reason — and because they were collected and produced from the Embassy — the exhibits could also be fairly characterized as the Embassy's "archives or documents."

| Exhibit | Bates Number | Exhibit | Bates Number |
|---|---|---|---|
| PX34 | KSA1236 | DX24 | KSA1620 |
| DX8 | KSA1349 | DX25 | KSA1624 |
| DX12 | KSA1230 | | |
| DX19 | KSA2802 | | |
| DX20 | KSA2783 | | |

**B. International Comity**

Saudi Arabia seeks to maintain an additional 12 exhibits under seal. Because the exhibits do not involve either the Embassy or the Consulate, their sealing cannot be justified with reference to the Vienna Conventions. Rather, Saudi Arabia claims that international comity, the deliberative process privilege, and the privacy interests of innocent third parties warrant keeping the documents under seal. Def's Br., at 4. The Court agrees, but only to a limited extent.

International comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Gucci Am. Inc. v. Weixing Li, 768 F.3d 122, 139 (2d Cir. 2014) (citing Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. Of Iowa, 482 U.S. 522, 543 n.27 (1987)). The Court of Appeals has not addressed whether comity concerns can overcome the First Amendment presumption of public access. Those courts that have considered the issue, however, have generally found that international comity can support a sealing order. See Strauss v. Credit Lyonnais, S.A., No. 06-CV-702 (DLI) (MDG), 2011 WL 4736359, at *5–6 (E.D.N.Y. Oct. 6, 2011) (sealing a non-party's banking records because, among other things, French law prohibited the documents' disclosure); Omari v. Ras Al Khaimah Free Trade Zone Auth., No. 16-CV-3895 (NRB), 2017 WL 3896399, at *14 (S.D.N.Y. Aug. 18, 2017) (sealing a report,

commissioned by the ruler of political subdivision of a foreign state, because it contained "highly sensitive, traditionally nonpublic . . . information . . . of a foreign government").[4]

Here, international comity requires 8 of the 12 exhibits to be filed under seal. These exhibits share three primary characteristics. First, the participants (except in one instance, for one exhibit) are senior Saudi Arabian officials i.e., at least the head of a Saudi ministry. Second, in most cases, the exhibits were designated "Confidential, "Very Confidential," or "Top Secret" at the time of their creation. Third — and most importantly — all of the communications detail Saudi Arabia's response to investigations of Saudi employees performed by another country. In this regard, the exhibits are similar to the report in Omari, which contained an analysis of a foreign state's potential liability under international law. Considering these characteristics as a whole, the Court finds that the exhibits are "highly sensitive" documents that contain "traditionally nonpublic information" of a foreign government. Accordingly, in the interest of international comity, they should be filed under seal. These exhibits are:

| Exhibit | Bates Number | Exhibit | Bates Number |
|---------|--------------|---------|--------------|
| PX25    | KSA606       | PX25    | KSA1194      |
| PX25    | KSA612       | PX84    | KSA6862      |
| PX25    | KSA605       | PX84    | KSA6860      |
| DX5     | KSA566       |         |              |
| PX25    | KSA1193      |         |              |

---

[4] In Omari, the ruler of Ras Al Khaimah ("RAK"), one of the seven emirates of the United Arab Emirates, directed a third party to produce a report regarding the Ras Al Kaimah Free Trade Zone ("RAKFTZ"), one of the RAK's political subdivisions. 2017 WL 3896399, at *1. Relying on interviews and other Internet research, the report made various legal conclusions regarding RAKFTZ and its operations, including a "heavy emphasis on alleged Iranian businesses operating within the RAKFTZ in suggested violation of United States and United Nations sanctions law." Id. at *2.

The Court finds inapplicable the reasoning adopted in Redeemer Comm. of Highland Credit Strategies Funds v. Highland Capital Mgmt., L.P., 182 F. Supp. 3d 128 (S.D.N.Y. 2016). In that case, the court concluded that international comity did not justify sealing a petition to enforce an arbitration award. Id. at 130, 133. The court emphasized that "the fact that the courts of another country would . . . require sealing," could not, in and of itself, override the presumption of public access. Id. at 133–34. In this case, however, there are considerations *other than* foreign law that justify sealing. Unlike a petition to enforce an arbitration award, the exhibits at issue are highly sensitive documents drafted by a foreign sovereign's most senior officials. Because the Court does not rely on Saudi Arabian law to justify sealing, the concerns in Redeemer do not affect the Court's analysis. See Accent Delight Int'l Ltd. v. Sotheby's, 2019 WL 2602862, at *9 (finding that the reasoning in Redeemer was inapplicable because the court was not adopting foreign law).

The remaining four exhibits should be filed on the public docket. They involve lower-level Saudi officials, and, more importantly, do not detail Saudi Arabia's response to another sovereign's investigation of Saudi nationals. In its moving papers, Saudi Arabia argues that three of these exhibits should be sealed because they are "pre-decisional documents" subject to the deliberative process privilege. Def's Br., at 4. This argument is meritless. Even if the deliberative process privilege could constitute a "higher value" under the First Amendment — and Saudi Arabia provides no caselaw that it could — the privilege must be invoked "by the head of the governmental agency which has control over the information to be protected." Automobile Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., No. 11-CV-6746 (RKE) (HBP), 2014 WL 2518959, at *4 (S.D.N.Y. June 4, 2014) (collecting cases); accord Schomburg v. N.Y.C. Police Dep't, 298 F.R.D. 138, 144 (S.D.N.Y. 2014) ("To invoke the deliberative process privilege, the claim . . .

12

must be lodged by the head of the agency . . . The assertion of the privilege by an attorney is therefore improper.") (citations and internal quotation marks omitted). Saudi Arabia has submitted no affidavits whatsoever, asserting instead that the documents show "on their face" that the privilege applies. See ECF No. 4456, Transcript of February 26, 2019 Oral Argument, at 78. This is insufficient to overcome the presumption of public access under the First Amendment. Accordingly, Saudi Arabia's request to file the following exhibits entirely under seal is DENIED.

| Exhibit | Bates Number |
|---|---|
| PX16 | KSA564 |
| PX40 | KSA556 |
| PX63 | KSA553 |
| DX15 SX4 SX5 | KSA2689 |

That said, Saudi Arabia correctly points out that these exhibits discuss individuals who are not subjects of discovery. Protecting the privacy of innocent third parties is a legitimate concern in determining whether "higher values" outweigh the public's right of access. See Lown v. Salvation Army, Inc., No. 04-CV-01562 (SHS), 2012 WL 4888534, at *1 (S.D.N.Y. Oct. 12, 2012) (citing E.E.O.C. v. Kelley Drye & Warren LLP, No. 10-CV-655, 2012 WL 691545, at *2 (S.D.N.Y. (Mar. 2, 2012)). Recognizing this, Plaintiffs have agreed to meet-and-confer regarding potential redactions for "third parties that do not bear on the case." Pl's Br., Exhibit A-1, ¶¶ 7, 31, 48, 70. The parties should engage in that process and provide proposed redactions for the Court's review.

### C. Public Disclosure

Plaintiffs contend that most of the information contained in Saudi Arabia's exhibits (the "Sealed Materials") is already in the public record. Pl's Br., at 2. This argument is unavailing.

To be sure, the Sealed Materials contain *some* information that is publicly available. It is public knowledge, for example, that Thumairy was an accredited diplomat at the Saudi Consulate in Los Angeles, California, and an imam at the King Fahad Mosque. See PX 56, at 8. But the overwhelming majority of information contained in the Sealed Materials is not in the public realm. The documents concern communications between various Saudi officials about Thumairy, Bayoumi, and their activities in the United States. Saudi Arabia has detailed — and the Court has confirmed — the significant nonpublic information contained in each exhibit to be filed under seal. See Def's Reply Br., Exhibit C. This information has not been discussed in any litigation filing, government report, or newspaper article cited by Plaintiffs. Thus, unlike cases where "[t]he genie is out of the bottle," see Gambale v. Deutsche Bank AG, 377 F.3d 133, 144 (2d Cir. 2004), the higher interests that justify sealing the exhibits are not diluted by public knowledge of the documents' contents.

Moreover, filing a redacted version of the Sealed Materials is not a possibility. The already-public information is minimal, and more often than not, inextricably entangled with nonpublic matter. As a result, redaction is not only "cumbersome and largely impractical," it would require "wholesale redaction of many pages" that would "undermine significantly the value of disclosure." In re Grand Jury Subpoenas Dated Mar. 2, 2015, No. 15-MC-71 (VEC), 2016 WL 6126392, at *5 (S.D.N.Y. Oct. 19, 2016). Releasing heavily redacted materials could also produce undesirable results. One concern, for example, is the inadvertent disclosure of nonpublic information. Id. More worryingly, extensive redactions could mislead the public and

engender unfounded speculation about the documents' contents. See United States v. Amodeo, 71 F.3d 1044, 1052 (2d Cir. 1995) ("Amodeo II") ("Release of [a heavily redacted report] is . . . more likely to mislead than to inform the public . . . [and] [w]ould circulate accusations that cannot be tested."). Given the minimal public information contained in the Sealed Materials, the Court sees no reason to risk these concerns.

Finally, Plaintiffs contend that Saudi Arabia has waived any "higher interest" embodied in the Vienna Conventions by producing the relevant documents during discovery. Pl's Br., a 4; ECF No. 4235, at 5. This argument misses the mark. Because the Sealed Materials were produced under a protective order, Saudi Arabia has maintained its interest in keeping these documents confidential.

## II. Redactions for Personal and Financial Information

After oral argument, the parties held a meet-and-confer regarding Saudi Arabia's request to redact personal and financial information from 11 exhibits. ECF No. 4437. The parties have agreed to redact: (1) all but the final four digits (or, where the entire number is four digits, the final two digits) of passport numbers, Saudi national identification numbers, or financial-account numbers; and (2) the month and date, but not the year, of an individual's date of birth. Id. at 2. This agreement is consistent with the parties' obligations under Rule 5.2 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 5.2(a). Accordingly, the Court grants Saudi Arabia's request to file redacted versions of the following exhibits:

| Exhibit | Bates Number | Exhibit | Bates Number |
|---|---|---|---|
| PX34 | KSA1237–39. | DX66 | KSA6464 |
| PX39 | KSA4623 | SX6 | KSA2404 |
| PX60 DX65 | KSA1180 | | |
| PX60 DX64 | KSA6645 | | |
| PX61 | KSA6461 | | |
| PX73 DX23 | KSA6882 | | |
| DX32 | KSA2332 | | |

Saudi Arabia also contends that Bayoumi's salary information should be redacted from DX42 and DX43. Employment history, including compensation amounts, "may arguably be traditionally considered private rather than public." Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 631 (S.D.N.Y. 2011) (collecting cases). As a result, in some instances, an individual's privacy interest in his salary information can outweigh the public's interest in disclosure, even when that amount is relevant to the litigation. See, e.g., Oliver Wyman, Inc. v. Eielson, 282 F. Supp. 3d 684, 700–01, 706 (S.D.N.Y. 2017). Nevertheless, to overcome the First Amendment presumption of public access, Saudi Arabia must show that disclosure "would result in an injury sufficiently serious to warrant protection." Tropical Sails Corp. v. Yext, Inc., No. 14-CV-7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016) (citations omitted). That has not occurred.

Specifically, Saudi Arabia claims that redaction is warranted because "individual salary figures are not relevant to the issues before the Court on Plaintiffs' motion to compel." ECF No. 4437, at 2. But whether Bayoumi received compensation from Saudi Arabia — and in what amounts — is relevant to whether Saudi Arabia should perform additional searches of its ministries. Further, because the documents concern salary information from over twenty years ago, Bayoumi's privacy interest is minimal. See Barrett v. Forest Labs, Inc., No. 12-CV-5224,

16

2015 WL 3851860, at *3 (S.D.N.Y. June 11, 2015) (declining to seal employees' salary information from six years ago). Accordingly, Saudi Arabia's request to redact DX42 and DX43 is DENIED.

## III. Other Documents Filed Conditionally Under Seal

On October 26, 2018, Plaintiffs filed a motion for supplemental discovery against Saudi Arabia. Plaintiffs' declaration included 14 documents that Saudi Arabia had designated as "confidential" under the October 3, 2006 Protective Order. In a separate motion filed the same day, Plaintiffs requested permission to file these documents on the public docket. ECF No. 4235, at 4. Saudi Arabia filed an opposition on November 2, 2018, ECF No. 4243, and Plaintiffs filed a reply on November 7, 2018. ECF No. 4247. Once again, Saudi Arabia contends that "higher values," such as the Vienna Conventions and international comity, justify maintaining the documents under seal. ECF No. 4243, at 2. The Court uses the same legal standards articulated above to resolve the parties' dispute.

At the outset, Saudi Arabia has withdrawn its request to maintain Exhibit 7 (KSA 570) under seal. Id. That document should be filed on the public docket.

Similarly, nine of the documents were analyzed above as part of Saudi Arabia's January 15, 2019 motion to seal. The parties do not raise any new arguments that affect the Court's analysis. Accordingly, for the reasons stated above, Exhibit 10 (KSA 1256 only), Exhibit 11 (KSA 1291), Exhibit 12 (KSA 1230–31), Exhibit 13 (KSA 6861), Exhibit 15 (KSA 1618), Exhibit 19 (KSA 1277), and Exhibit 21 (KSA 6862) may be filed under seal, but Exhibit 16 (KSA 553–54) and Exhibit 17 (KSA 556–61) must be filed on the public docket.

The Court has yet to address the remaining four documents. Exhibit 6 (KSA 1247) is a letter received by an Embassy official, and Exhibit 8 contains two documents (KSA 5719 and

5720–21) that were collected and produced from the Embassy. See ECF No. 4243, at 3. Similarly, Exhibit 10 (KSA 1257 only) is a letter sent by an Embassy official regarding the Embassy and its functions. Because of the higher interest in protecting their inviolability under Articles 24 and 27 of the VCDR, the Court grants Saudi Arabia's request to file these documents under seal.

## CONCLUSION

For the foregoing reasons, Saudi Arabia's motion to seal, and Plaintiffs' related motion to file confidential documents on the public docket, are GRANTED in part and DENIED in part.

Simultaneous with this Order, the Court is filing two decisions under seal regarding: (1) Plaintiffs' motion to compel Saudi Arabia to produce documents; and (2) Saudi Arabia's motion to limit the scope of supplemental discovery. By Monday, August 12, 2019, the parties are directed to meet-and-confer regarding proposed redactions for both decisions, including the parties' briefing, declarations, exhibits, and supplemental letters. Those redactions should include quotations or descriptions of sealed exhibits, and as described above, references to innocent third parties who are not subjects of discovery.[5] Information subject to the FBI Protective Order (ECF No. 4255) should also be redacted from any public filings. To the extent either party submits objections pursuant to Rule 72 of the Federal Rules of Civil Procedure, the deadline to meet-and-confer will be stayed pending the resolution of those objections.

---

[5] Plaintiffs attached the parties' entire meet-and-confer process to their motion to compel. See PX7(c)–(j). The letters contain references to documents that the Court has determined should be filed under seal. Those references should be redacted in any public filing. In addition, however, the letters also contain references to documents that Saudi Arabia seeks to maintain under seal, but have not been filed with the Court in connection with a specific motion. The Court cannot rule on this request without seeing the documents themselves. Consistent with the conclusions of this Order regarding the Vienna Conventions and international comity, the parties should meet-and-confer regarding appropriate redactions for these references.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 4235 and 4361.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED: July 22, 2019
New York, New York