USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS**

This document relates to:

    Betru et al. v. Islamic Republic of Iran, No. 18-CV-8297 (GBD) (SN) (S.D.N.Y.)
    Ashton et al. v. al Qaeda Islamic Army, et al., No. 02-CV-6977 (GBD) (SN) (S.D.N.Y.)

On August 31, 2015, the Honorable George B. Daniels granted the Ashton Plaintiffs, including the Betru subset of the Ashton Plaintiffs (collectively, "Plaintiffs"), an Order of Judgment by default against the Islamic Republic of Iran. See Order of Judgment, ECF No. 3021. The Court has issued numerous orders addressing the Ashton Plaintiffs' requests for damages. Here, pursuant to § 1605A of the Foreign Sovereign Immunities Act, Plaintiffs seek an award of solatium damages on behalf of fifteen immediate family members and two non-immediate family members of victims of the terrorist attacks on September 11, 2001. ECF No. 4601. Plaintiffs' motion should be GRANTED in part and DENIED in part.

**DISCUSSION**

**I.    Immediate Family Members**

The Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on July 30, 2012, the Honorable Frank Maas set forth a framework to award solatium damages to immediate family members. ECF No. 2618, adopted

by, ECF No. 2623. Under this framework, spouses, parents, children, and siblings are eligible for solatium awards in the following amounts:

| Relationship to Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Id. at 11.

Here, Plaintiffs seek an award of solatium damages on behalf of fifteen immediate family members. ECF No. 4602, Declaration of James P. Kriendler ("Kriendler Decl."), Exhibit A. This request should be granted. As described in Plaintiffs' submission, each of these Plaintiffs (1) was either a child or a spouse of a victim of the September 11 attacks; (2) survived the death of their loved ones; and (3) does not have another claim pending before the Court for compensation against Iran. Id. ¶¶ 3–4. The Court has granted numerous requests for damages based on identical evidence. See, e.g., ECF Nos. 4106, 4127, 4152. Accordingly, the fifteen immediate family-member Plaintiffs should receive full solatium damages.

## II.     Non-Immediate Family Members

Given that the trauma of a terrorist attack transcends the bounds of a nuclear family, courts have expanded eligibility for solatium damages beyond immediate family members. In this vein, on October 14, 2016, the Court detailed a framework to evaluate damages requests by non-immediate family members of the victims of the September 11 attacks. ECF No. 3363, adopted by, ECF No. 3384 ("Hoglan II"). The Court clarified this framework in a subsequent decision issued on August 8, 2017. ECF No. 3676, adopted by, ECF No. 3795 ("Hoglan IV").

The framework allows individuals to recover solatium damages when they are "functional equivalents" of immediate family members. Hoglan IV, at 3. Three general factors

2

guide the Court's analysis, though none is dispositive. First, the Court determines whether the individual resided in the decedent's household long-term. Id. at 7. Intermittent or sporadic cohabitation — for example, brief periods of help in times of need, instead of a long-standing, semi-permanent arrangement — is generally insufficient to satisfy this requirement. Id.

Second, for individuals in the parent or child role, the Court determines whether the individual played a guardian or custodian-like role in the decedent's life (or vice versa, whether the decedent played such a role in the life of the family member). Hoglan IV, at 7–8. The length of the alleged relationship, and the number of years the child was a minor while the relationship existed, are important considerations in this analysis. Id. at 8.

Third, in the case of a parent or child, the Court determines whether the biological family member in question was absent in the decedent's life. Hoglan IV, at 8. For example, a stepmother is less likely to be considered a "functional equivalent" of a (biological) parent if the decedent maintained close contact with and/or received support from his or her (biological) mother, *even if* they lived in the custody of their stepmother and received significant support from her. Id. (emphasis added). On the other hand, if the non-immediate family member was stepping in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member, an award of solatium damages would be more likely. Id.

Further, in Hoglan II, the Court established additional guidelines for specific classes of individual plaintiffs. Relevant here, stepparents and stepsiblings who became part of the family when the decedent was in early childhood (roughly until the age of eight) may be deemed fully functional equivalent to biological parents or siblings and would be entitled to full solatium damages, and stepchildren who were in the same range when the decedent became part of their family would be deemed fully equivalent to biological children. Stepparents and stepsiblings

3

who became part of the family when the decedent had passed early childhood but was still living in the family home (ages nine and above) may be entitled to solatium damages reduced by one-half, and stepchildren who were in this age range when the decedent became part of the family would receive half damages as well. Stepparents and stepsiblings who became part of the decedent's family when the decedent had nearly finished his secondary education would likely not be deemed functional equivalents of immediate family members and would not be illegible for solatium awards, with the same being true for stepchildren who were this age when the decedent became part of their family. See Hoglan II, at 15–16.

The Court affirmed this framework in Hoglan IV with one clarification — any step-relative receiving solatium damages must demonstrate that they continuously cohabited with the decedent for a significant period of time before the date the claimant (for stepchild claims) or decedent (for stepparent claims) turned 18 and attained the age of majority. This period of time is presumptively at least two years. Hoglan IV, at 13.

Stepsibling claims carry an additional caveat. As discussed below, the ages of both the decedent and the claimant are relevant to the inquiry, which is fundamentally targeted at determining the degree to which the claimant and the decedent "grew up together" as brothers or sisters. Therefore, a stepsibling who enters the family at a young age will not be eligible for solatium damages if the decedent was already at or approaching the age of majority (18) at the time; by the same token, a stepsibling who was at or near the age of majority when the decedent entered the family would be similarly ineligible. See Hoglan IV, at 14.

Here, Plaintiffs seek an award of solatium damages for two non-immediate family members: Vicki L. Burford and Jeremy M. Krist, stepmother and stepbrother of 9/11 decedent Christopher Burford. The Court recommends awarding solatium damages reduced by one-half.

Vicki and her son, Jeremy, moved in with Christopher, his father, and his sister in 1991. ECF No. 4602-2, Declaration of Vicki L. Burford ("Burford Decl."), ¶ 2. Vicki married Christopher's father in 1992 when Christopher was 13 years old. Id. Vicki resided with Christopher until he moved out for boot camp nearly a decade later. Id. During that time, Vicki provided Christopher with financial, emotional, and moral support, much like a biological mother would, and she continued to do so after Christopher moved out of the family home. Id., ¶¶ 3–4. But because Vicki did not have a relationship with Christopher during his early childhood, the Court should award $4,250,000 in solatium damages, one-half the amount for biological parents.

A similar analysis applies to Jeremy, Vicki's son. Jeremy became Christopher's stepbrother when Vicky married Christopher's father in 1992. ECF No. 4602-2, Declaration of Jeremy M. Krist ("Krist Decl."), ¶ 2. At the time, Jeremy was 10 years old, and Christopher was 13. Id. They resided in the same home for nine years, until Christopher left to join the Navy. Id. Christopher and Jeremy were very close: they played basketball in the front yard, and when they grew older, often visited a local pool hall to play pool. Id., ¶¶ 3–4. Nevertheless, because they did not have a relationship during their early childhoods, the Court should award Jeremy $2,125,000 in solatium damages, one-half the amount for biological siblings.

The Court notes that Christopher's biological mother was not absent in his life. Under a 1991 custody order, Christopher lived intermittently with his mother on:

> two weekday evenings each month (from 6 to 9 p.m.), one 24-hour weekend period two times per month, every other spring school holiday, every other Thanksgiving school holiday, one month each year in the summer, one week during the winter holidays, and every Mother's Day.

Kriendler, Decl., ¶ 6. A biological parent's custody or visitation rights can defeat a step-relative's claim for solatium damages. This is because, under Hoglan IV, step-relatives must demonstrate that they "continuously cohabited" with the decedent for a significant period of time. Id. at 13. The Court has, however, awarded solatium damages to a step-parent even when the biological parent was not absent so long as the decedent lived substantially with the step-parent and there were other indicia that the step-parent fulfilled the custodial role in the decedent's life.

In this case, the 1991 custody arrangement does not alter the Court's conclusion. For nine consecutive years, Vicky and Jeremy lived with Christopher for approximately 80 percent of the year. This is the type of "longstanding, semi-permanent relationship" that mirrors that of an immediate family member. See Hoglan IV, at 7. Moreover, it seems that Christopher did not receive significant financial support from his biological mother, which further strengthens Vicki's claim for damages. Burford Decl., ¶ 3. Although a close call — indeed, the Court does not see much room beyond these circumstances — both Vicki and Jeremy have satisfied the continuous-cohabitation requirement.[1]

Plaintiffs admit that, under Hoglan IV, Vicki and Jeremy should receive solatium damages reduced by one half. Kriendler Decl., ¶ 8. They insist, however, that "exceptional circumstances" warrant departing from the Court's prior precedent. Id. Specifically, they contend that Vicki was Christopher's mother "in all but title," and that "for all intents and purposes" Jeremy and Christopher were "true siblings." Id. The Court, however, recognizes this bond by deeming Vicki and Jeremy to be functional equivalents of immediate family members. While

---

[1] The Court distinguishes Vicki and Jeremy's claims from those of two other Ashton Plaintiffs, Crystal and Kayla Barkow. See ECF No. 4173. Crystal and Kayla primarily lived with their biological mother, except during the summer, and on weekends and holidays during the school year. In this regard, they spent more than double the amount of time with their biological parent as Christopher. Further, and perhaps more importantly, Crystal and Kayla's stepmother was married to their biological father for only one year before she was killed on 9/11.

Vicky and Jeremy undoubtedly shared deep personal connections with Christopher, the Court must apply the age-based standard in Hoglan IV dispassionately. This is necessary to avoid arbitrary inequities among different plaintiffs, and to effectuate tort law's inherent need to limit recovery to a readily definable class of individuals. Hoglan IV, at 3, 6. Here, Vicki and Jeremy did not have a relationship with Christopher during his early childhood. As a result, and as Plaintiffs recognize, they cannot receive full solatium damages.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive solatium damages as follows:

| Number | Decedent | Plaintiff | Relationship | Solatium Damages |
|---|---|---|---|---|
| 1 | Burford, Christopher | Burford, Vicki L. | Stepparent | $4,250,000 |
| 2 | Burford, Christopher | Krist, Jeremy M. | Stepsibling | $2,125,000 |
| 3 | Diaz, Nancy | Martinez Diaz, Amanda | Child | $8,500,000.00 |
| 4 | Fredericks, Andrew | Fredericks, Andrew J. | Child | $8,500,000.00 |
| 5 | Fredericks, Andrew | Fredericks, Hayley | Child | $8,500,000.00 |
| 6 | Fredericks, Andrew | Fredericks, Michelle | Spouse | $12,500,000.00 |
| 7 | Harrell, Stephen G. | Harrell, Holly Rae | Child | $8,500,000.00 |
| 8 | Harrell, Stephen G. | Harrell, Margaret | Spouse | $12,500,000.00 |
| 9 | O'Shea, Robert W. | Lynch, Barbara | Spouse | $12,500,000.00 |
| 10 | Maldonado, Debora | Maldonado, Chris | Child | $8,500,000.00 |
| 11 | Maldonado, Debora | Maldonado, Jr., Otelio | Spouse | $12,500,000.00 |
| 12 | Maldonado, Debora | Maldonado, Krystal | Child | $8,500,000.00 |
| 13 | Skinner, Toyena C. | Sherman, Matthew | Child | $8,500,000.00 |
| 14 | Weinberg, Steven | Weinberg, Jason | Child | $8,500,000.00 |
| 15 | Weinberg, Steven | Weinberg, Laurie | Spouse | $12,500,000.00 |
| 16 | Weinberg, Steven | Weinberg, Lindsay | Child | $8,500,000.00 |
| 17 | Weinberg, Steven | Weinberg, Samuel | Child | $8,500,000.00 |

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Finally, any <u>Ashton</u> Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   August 5, 2019
         New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).