# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN) |
|---|---|

This document relates to:

*Jessica DeRubbio, et al. v. Islamic Republic of Iran, Case Number:  1:18-cv-05306 (GBD) (SN)*

## **DECLARATION OF FAMILIAL RELATIONSHIP**

I, George Cuellar, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true and correct:

1.      My name is George A. Cuellar, and I am the Personal Representative of the Estate of Luke Dudek, who died on September 11, 2001 when the North Tower of the World Trade Center collapsed.

2.      I was the life partner of Luke Dudek.  While same-sex marriage was not permitted under the law during our time together, for the reasons set forth below, I should be deemed a spousal equivalent.

3.      On the night of September 10, 2001, I said goodnight to my life partner of 19 years, Luke Dudek, full of anticipation for the next day when our business was to open its new location.

4.      After 18 years in business together, we had found, bought and renovated our own building for our florist shop.  However, September 11, 2001 ended up being like no other day before.

5.      For nearly 20 years Luke and I started our days at our home in Livingston, New Jersey – I was the manager of Coqui Designs in Cedar Grove, and Luke was a food and beverage controller for Windows on the World at the top of Tower One of the World Trade Center.

6.      Later that morning the world changed for many, including myself.

7.      A mutual friend from Bermuda called and told me to turn on the television.  I frantically tried to reach Luke and left many messages but the sound of Luke's voice on the answering machine was the last I heard.

8.      In the aftermath of the attack, I was joined by a friend to go to the train station to get Luke's car.  When Luke hadn't called home, I knew it was likely he would not be found alive.

9.      I traveled to the Victim's Family Assistance Center in Jersey City to fill out an official missing person's report, where I filed all the necessary forms and provided material for DNA analysis.  At this point, I came to realize that my life partner of nearly 20 years would not be coming home.  *See* Exhibit 1.

10.      Luke and I shared a life together for nearly 20 years, a business for 18 and a home together for 15 years.  We devoted our free time to each other.  Luke was an only child and his parents had died over a decade before.

11.      After the death of Luke's parents, he and I created wills leaving our Estates to each other, and designating the other as their Executor.  Luke's Will describes me as his "Friend and Partner."  *See* Exhibit 2.

12.      I was Luke's family, and having been born in El Salvador where my parents and siblings remained, Luke was my only family in the United States.  *See* Exhibit 3.

2

13.     I was the beneficiary of Luke's Workers' Compensation benefits, (Exhibit 4); his life insurance policy, (Exhibit 5); and received compensation through the New York Crime Victims Board. *See* Exhibit 6.

14.     After losing my companion, (Exhibit 7), I was almost unable to function. For months, I could not sleep – the needs of the business forced me to leave the house, and I hoped for the day when Luke would walk through the door.

15.     In sum, Luke Dudek and I shared our lives as only two people with the deepest kind of love for one another can. At 35 years old, I had lost my life-long love and the security of the partner I had been with for my entire adult life.

Executed on: _____

Name (Signature): _____

Name (Print):   George Cuellar   _____

3

# EXHIBIT 1

Date: 10/9/01
Time: 11:50 am                    **INTAKE SHEET**

P# P3408
Employer:
Windows on the World, One
W. T.C., 107th Floor,
New York, New York 10048-
0202

I.    Information Concerning the Missing Person

Name of Missing Person: Luke A. Dudek

[ ]  Airline Passenger or Crew Member
[ ]  Rescue Worker
[x ] Person regularly employed at an office in the Word Trade
     Center
[ ]  Other

Date of Birth: November 20, 1950   Social Security #: ████████

II.   Information Concerning The Affiant

Name of Affiant: George A. Cuellar A/k/a Jorge Cuellar
Address of Affiant:
                    20 Sunset Road
                    Livingston, NJ 07309


Telephone Number of Affiant:  home 973-783-2545
                              work 973-857-5695

Cell Phone Number of Affiant: 973-632-0230

Social Security #: ████████

Passport #:

III.  Information Concerning the Intake Attorney

Name of Intake Attorney: Maureen Bull, Deputy Attorney General
                    Telephone: 609-292-5214

Employer Name and Address:
New Jersey Family Assistance Center
Liberty State Park
Jersey City, NJ
Attn:  AAG John Bender

212-003017-0403

Telephone Number:  201 433-3229

IV.  <u>Address Where Death Certificate should be sent:</u>

Check if same as address in Section II __

515 Pompton Avenue
Cedar Grove, NJ 07009
Att: George A. Cuellar


V.  <u>Issue</u>

According to Mr. Cuellar, Luke Dudek was an only child, who
never married or had children.  Both of his parents are dead.  The
only relatives Mr. Cuellar is aware of are cousins, Mike Sallett,
and Richard Josephs and a maternal aunt, name unknown, who resides
in California.  Mr. Cuellar is Mr. Dudek's life partner of twenty
years and the beneficiary of his will, dated May 26, 1989.

212-003017-0404

## AFFIDAVIT BY PERSON WITH PERSONAL KNOWLEDGE
## FOR ISSUANCE OF DEATH CERTIFICATE

STATE OF NEW JERSEY )
                           ss.:
COUNTY OF HUDSON      )

I, George A. Cuellar A/k/a Jorge A. Cuellar, being duly sworn, state as follows:

1.   I reside at 20 Sunset Road, Livingston, Essex County, New Jersey 07309.

2.   I understand that this affidavit is made to assist in a determination that Luke A. Dudek died as a result of the disaster at the World Trade Center.

3.   I was the Life Partner to the decedent, Luke A. Dudek, for over nineteen (19) years and have personal knowledge of the whereabouts of the missing person on September 11, 2001. I last saw or heard from the decedent on Monday, September 10, 2001. Luke A. Dudek, myself and our employee, Fred Lange, had dinner together at 20 Sunset Road, Livingston, New Jersey 07309. Both the decedent and myself lived together at 20 Sunset Road, Livingston, New Jersey 07309. A true copy of a Mortgage Statement for the 20 Sunset Road Property is attached and incorporated by reference. After dinner, Fred Lange left our home and the decedent and I went to sleep at approximately 10:00 pm.

To the best of my knowledge, the decedent has no living close relatives. Both his parents, Adalburt Jacob Dudek and Genevieve Japkiewicz Dudek, are deceased. The decedent had no children or siblings. The only living family members that I am currently aware

of are: Roxanne Collins, a cousin, who resides at 600 N.E. 2nd Street, Dania, Florida 33004, phone unlisted; Richard Josephs, a cousin, who resides at 25 Hobart Gap Road, Short Hills, New Jersey 07078, ████████████ (unlisted); Mike Sallett, a cousin who resides at 200 Central Park South, Apt. 8N, New York, New York, (212) 765-6844; Alfred Sallett a cousin who resides at 6940 Claywood Way, San Jose, California 91520, (408) 323-1517; and Bronisalawa Salawa Sallett, an aunt, who currently resides in a nursing home in California. Ms. Sallett's mail can be directed to her son Alfred Sallett, at the above address. To the best of my knowledge, Ms. Sallett is currently suffering from Alzheimer and dementia.

I am the beneficiary and named executor of Luke A. Dudek's Last Will and Testament dated May 26, 1989. A true copy of this Last Will and Testament is attached and incorporated by reference.

I am also the beneficiary of an life insurance policy which was provided by Windows on the World. A true copy of a letter dated September 26, 2001 from Windows on the World is attached and incorporated by reference. A copy of the Guardian Life Insurance Company of America Enrollment Form dated July 19, 1999 is attached and incorporated by reference. A true copy of the State of New Jersey Firearms Purchaser Identification Card for Luke A. Dudek issued on October 30, 1998 containing a Mr. Dudek's signature and his right thumb print is attached and incorportated by reference.

2

4.   The basis of my belief that the missing person was at the World Trade Center, or in its vicinity, on September 11, 2001, is as follows:

The decedent, Luke A. Dudek, worked at Windows on the World on the 107th Floor of One World Trade Center, New York, New York, for approximately two (2) years before September 11, 2001 as the Food and Beverage Controller.   September 11, 2001 was the decedent's first day back at work following a week long vacation.   It was the decedent's normal habit to awake before me and leave our home to proceed to work at approximately 7:00 am in the morning.

The decedent's normal practice was to drive his car to the Harrison PATH Station and take the PATH train into the World Trade Center Building.   I personally retrieved his car from the parking lot of the Harrison PATH Train station on the afternoon of September 11, 2001.   According to a letter dated September 26, 2001 from Windows on the World, the decedent, Luke Dudek, reported to work on September 11, 2001 and has been missing since that day.   A true copy of this letter is attached and incorporated by reference.

5.   To the best of my knowledge, Luke A. Dudek has not been seen or heard of or from since September 11, 2001.

6.   The following efforts have been made to locate Luke A. Dudek, without success:

A)   On September 11, 2001 and in the days immediately following I called the decedent's cell phone number on numerous

3

212-003017-0407

occasions.  However, I never spoke to him and was unable to make any contact with him.

B)   I personally listed the decedent, Luke A. Dudek, on several Internet sites, including the New York Times Web Site, relating to Victims of the World Trade Center Bombing.  I have not heard any information about his whereabouts from any of these sites.

C)   I personally generated and circulated a Missing Person Poster with a picture and general physical information regarding Luke A. Dudek throughout New York City.  I received no information regarding the whereabouts of the decedent from this Poster.  A copy of the Missing Person Poster is attached and incorporated by reference.

D)   I called several hospitals in both New York and New Jersey where victims of the World Trade Center Bombing were being treated and inquired about anyone fitting the description of Luke A. Dudek.  None of the hospitals listed Luke Dudek or anyone fitting his description as a patient.

E)   An obituary for Luke A. Dudek was published in the Verona/Ceder Grove Times and the Bergen Record at or around October 5, 2001 and there was a Memorial Service held for the decedent at Our Lady of the Lake, Roman Catholic Church in Verona, New Jersey on Monday, October 8, 2001.  A true copy of the Memorial Pamphlet for Luke A. Dudek is attached and incorporated by reference.  To

4

212-003017-0408

the best of my knowledge none of the friends, relatives, or business associates of either myself or the decedent have seen or heard from him since September 11, 2001.

       F)   On or about September 15, 2001, a Missing Person's Report #P3408 was filed with the Livingston Police Department in Livingston, New Jersey regarding Luke A. Dudek.

       7.   The personal particulars of the missing person will be used to complete the death certificate.  They are as follows:

(a)   The missing person's usual residence:

20 Sunset Road, Livingston, Essex County, New Jersey 07039

(b)   Is this address inside the city limits of the city or town above?

{x } Yes { } No.

(c)   Did the missing person serve in the U.S. armed forces? { } Yes {x} No.

If yes, specify the dates of such service:  From:   To:   .

(d)   Marital status:   {x} Never married { } Widowed { } Married or separated { } Divorced.

(e)   Name of surviving spouse or domestic partner:

George A. Cuellar a/k/a Jorge A. Cuellar

(f)   Date of birth − November 20, 1950

(g)   Age at last birthday −50.

(h)   Social security number:  ███████

5

(i)  Usual occupation: Food and Beverage Controller for Windows on the World.

(j)  Kind of business or industry: Food Service.

(k)  Birthplace: New York City, New York.

(l)  Education (check highest grade completed):

Elementary/Secondary (0-12) ____ or College (1-4 or 5+) 5+.

(m)  Other names by which the missing person was known: N/A.

(n)  Name of the missing person's father: Adalburt Jacob Dudek.

(o)  Maiden name of the missing person's mother: Genevieve Japkiewicz Dudek

(p)  The missing person's race:

{x } White { } Black { } Asian or { } Other:  Specify:  (Asian Indian, Chinese, American Indian, etc.).

(q)  Ancestry (e.g., African American, Chinese, Cuban, German, Italian, Puerto Rican): Polish American.

(r)  Was the missing person at work on September 11, 2001?

{x} Yes { } No

8.  Nearest next of kin:

To the best of my knowledge, the decedent has no living close relatives.  Both his parents, Adalburt Jacob Dudek and Genevieve Japkiewicz Dudek, are deceased.  The decedent had no children or siblings.  The only living family members that I am currently aware of are: Roxanne Collins, a cousin, who resides at 600 N.E. 2nd

6

212-003017-0410

Street, Dania, Florida 33004, phone unlisted; Richard Josephs, a cousin, who resides at 25 Hobart Gap Road, Short Hills, New Jersey 07078, ███████████ (unlisted); Mike Sallett, a cousin who resides at 200 Central Park South, Apt. 8N, New York, New York, (212) 765-6844; Alfred Sallett a cousin who resides at 6940 Claywood Way, San Jose, California 91520, (408) 323-1517; and Bronisalawa Salawa Sallett, an aunt, who currently resides in a nursing home in California. Ms. Sallett's mail can be directed to her son Alfred Sallett, at the above address. To the best of my knowledge, Ms. Sallett is currently suffering from Alzheimer and dementia.

9. Current address of nearest next of kin:
   George A. Cuellar a/k/a Jorge A. Cuellar
   20 Sunset Road
   Livingston, New Jersey 07309

_George Cuellar_
Signature

George A. Cuellar a/k/a Jorge Cuellar
Print name

20 Sunset Road
Address

Livinston, New Jersey 07309

Telephone (include area code):
Day:      (973) 857-5695
Evening:  (973)-992-0142

Sworn to before me on the
10th day of October , 2001.

_Carol B. Novinson_
Carol B. Novinson
Attorney at Law of New Jersey

7

212-003017-0411

# EXHIBIT 2

Docket No.: 2001-3286

# State of New Jersey
# Essex County Surrogate's Court

**JOSEPH P. BRENNAN, JR.**
**SURROGATE**

Hall of Records, Room 206
Newark, New Jersey 07102
Phone: 973-621-4900
Fax: 973-621-2514

**PATRICIA A. TRABUCCO**
**DEPUTY SURROGATE**

In the matter of the Estate of:

**Luke A. Dudek, Deceased**

**AKA:**

## EXECUTOR
## SHORT CERTIFICATE

I, Joseph P. Brennan, Jr. Surrogate, do hereby certify that the last Will and/or Codicil(s) of the above named Decedent, late of the County of Essex and State of NJ, was admitted to Probate by the Surrogate of the County of Essex on November 2, 2001 and that Letters Testamentary were issued to George A. Cuellar, the Executor(s) named there in, who is (are) duly authorized to take upon himself/herself/ themselves/itself the administration of the estate of said testator agreeably to the said Will and said Letters Testamentary have never been revoked and still remain in full force and effect.

**DO NOT ACCEPT WITHOUT RAISED SEAL**



WITNESS my hand and seal of office on
November 2, 2001

**Joseph P. Brennan, Jr. Surrogate**

**212-003017-0054**

CASE 6339762

212-003017-0055

LAST WILL AND TESTAMENT

OF

LUKE A. DUDEK

Dated:

BENJAMIN I. KREITZBERG
Attorney At Law
349 E. Northfield Road
Livingston, NJ 07039

1731

## LAST WILL AND TESTAMENT

I, LUKE A. DUDEK, presently residing at 275 Prospect Street, East Orange, New Jersey, do hereby make, publish and declare this to be my Last Will and Testament, revoking any and all prior Wills and any Codicils thereto previously made by me.

FIRST: I direct that my just debts, funeral expenses and expenses in connection with the administration of my estate be paid as soon as practicable after my death.

SECOND: I give the rest of my estate, whether real or personal, tangible or intangible or mixed, to my Friend and Partner, GEORGE A. CUELLAR also known as JORGE A. CUELLAR, if he shall survive me.

THIRD: If GEORGE A. CUELLAR shall not survive me, I give my estate to his Sister, whose maiden name was ANA MERCEDES BELTRAN-CUELLAR.

FOURTH: I appoint GEORGE A. CUELLAR, as Executor of this Will. If he should be dead, die or cease or fail or refuse to act as such Executor, I appoint my Attorney, BENJAMIN I. KREITZBERG, as his successor. The executors named herein shall have all powers granted to executors under the Laws of the State of New Jersey. Specifically, and not by way of limitation, the executors shall have the power to sell any real estate or business I may own at the time of my death without the need for any court order. My executors shall not be required to post bond or give other security for the faithful performance of their duties in this or any other jurisdiction.

IN WITNESS WHEREOF, I have hereunto set my hand and seal

212-003017-0056

this _20th_ day of _MAY_, 1989.

_Luke A. Dudek_ L.S.
LUKE A. DUDEK

SIGNED, SEALED, PUBLISHED AND DECLARED by LUKE
A. DUDEK, as his Last Will and Testament, in the presence of
us, who at his request and in his presence and in the presence
of each other, have hereunto subscribed our names as witnesses,
this _26_ day of _May_, 1989.

_____   349 E. Northfield Ave Livingston, N.J 07039
_____   _____

STATE OF NEW JERSEY :
                      :ss.
COUNTY OF ESSEX       :

LUKE A. DUDEK, _Lisa M. Ricken_                       and
_GLENN KAPLAN_, the Testator and the witnesses respec-
tively, whose names are signed to the attached instrument,
being first duly sworn, do hereby declare to the undersigned
authority that the Testator signed and executed the instrument
as his Last Will and that he had signed willingly and that he
executed it as his free and voluntary act for the purposes
therein expressed and that each witness states that he or she
signed the Will as witness in the presence and hearing of the
Testator, and that to the best of his or her knowledge, the
Testator was at that time 18 or more years of age, of sound
mind and under no constraint or undue influence.

_Luke A. Dudek_
Testator

_Lisa M. Ricken_
Witness

_____
Witness

**212-003017-0057**

-2-

_CASE 6339762_

Subscribed, sworn to and acknowledged before me by LUKE A. DUDEK, the Testator, and subscribed and sworn to before me by LISA M. Ricken and G. LENN Kaplan , witnesses, this 26th day of May , 1989.

*Joan M. Steinberg*

JOAN M. STEINBERG
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 21, 1989

-3-

212-003017-0058

CASE 633976

# EXHIBIT 3

## Luke Albert Dudek
### November 20, 1950
### September 11, 2001

Luke A. Dudek, of Livingston, New Jersey died on Tuesday, September 11 at the World Trade Center.

Born in New York, NY, and raised in Livingston, New Jersey, he graduated from Livingston H.S. in 1968 with the hopes of owning his own business. Luke's dream came true in the fall of 1985 with his life long mate George Cuellar.

For 15 years Luke was devoted to their exquisite flower shop, Coqui Designs, Inc. While working diligently at Coqui, Luke managed to share his expertise with many corporations in the United States, United Kingdom, Mexico, Italy, Canada, and Spain, and New York restaurants, including The Typhoon Brewery, JO JO, Vong, Lipstick Café. Most recently Luke was the food and beverage controller at Windows on The World, 1 World Trade Center in New York City.

Mr. Dudek graduated from Fairleigh Dickinson University in 1973 with a degree in Psychology, majoring in Organizational Management and Quantitative Analysis. Luke did post-graduate study in accounting and computer technology.

Mr. Dudek was famous for knowing just about everything from A to Z. He loved his dogs Barney and Gypsy, cigars, food, and an occasional bottle of wine. After finishing his glass of wine Luke would say "my tide is out." And now his tide is out, but his spirit lives on at Coqui Designs.

Luke dedicated his summer of 2001 to the renovation of his new shop. This took endless days and nights of ripping, sawing, and hammering away to meet building codes. Luke previously rented an office space in Verona, New Jersey. He relocated twice, expanding their business each time. Finally, this past spring they purchased a piece of property suitable for Coqui. September 11, 2001 was Luke's first day back at Windows on The World, having taken his last week of vacation to complete the remodeling. This month Coqui Designs celebrates 16 years of success.

His beloved life long mate, best friend, and business partner George Cuellar remains as his only immediate family. Besides George, Mr. Dudek considered his close friends as part of his extended family.

A mass of resurrection will be offered in Our Lady of The Lake Church, 32 Lakeside Avenue in Verona on Monday, Oct. 8, 2001 at 10:00 am. For directions call 973-239-5696.

*Instead of flowers, please make donations to the charity of your choice.*



# EXHIBIT 4

Specialty Operations
Griffin Center North
1 Waterside Crossing
Windsor, CT 06095
PO Box 719
Hartford, CT 06142-0719
860.683.4700 ph



GREATAMERICAN.
INSURANCE COMPANIES

March 18, 2002

George Cuellar
20 Sunset Road
Livingston, NJ 07309

RE:   File #:          595-512446
      Claimant:        Luke Dudek
      Insured:         B E Windows
      Date of Loss:    9/11/01

Dear Mr. George Cuellar

Enclosed please find your lump sum WC benefit check in the amount of $50,000. Included with
the check are two forms, the C-669 and C-8, which we are required to file with the State of New
York upon commencement and payment of benefit entitlement. This will be a first and final
payment to you.

Based upon our investigation, and your completion of the death benefits affidavit this is the full
benefit due and payable to your under the NY workers' compensation statute.

Should have any questions, please feel free to contact me at 1-800-531-9010 extension 4809.

Sincerely,

Theresa Sutton

Theresa Sutton
Senior Claim Representative
Specialty Operations

Great American Insurance Company          American Dynasty Surplus Lines Insurance Company     Contemporary American Insurance Company     Great American Lloyd's Insurance Company
Agricultural Insurance Company             American National Fire Insurance Company             Eagle American Insurance Company            Great Texas County Mutual Insurance Company
Agricultural Excess and Surplus Insurance Company   American Spirit Insurance Company           Eden Park Insurance Company                 Seven Hills Insurance Company
American Alliance Insurance Company

Part of Great American Property & Casualty Insurance Group

212-003017-0242

# EXHIBIT 5

OCT-09-2001 17:08   FROM-DAVID BERDON CO LLP       16464870899       T-580  P.002/002  F-811

**GUARDIAN®** The Guardian Life Insurance Company of America

Form No. GG-011364-NY
Group Insurance Enrollment and
Record Form

| Northeast Regional Office | Midwest Regional Office | Western Regional Office | Norwalt Regional Office |
|---|---|---|---|
| PO Box 25040 | PO Box 8013 | PO Box 2454 | PO Box 3121 |
| Lehigh Valley PA 18002-6040 | Appleton WI 54913-8012 | Spokane WA 99210-2454 | Norwalt MA 02061-3121 |

Before completing this application, please read the IMPORTANT notice on the reverse side of this form concerning special enrollment rights and preexisting condition limitations. (Please Print Clearly)   Group Plan # 33361    Branch La*GIND

Planholder Name (Company Name) B.E. Windows Corp.    Class= 0001

Planholders Street Address (City, State, Zip) One World Trade Center, 106th, NY NY 10048

Employee's Name (Last, First, M.I.)  ☐Mr. ☐Mrs. ☒Miss  DUPEK  LUKE  A.

Social Security Number [redacted]    Birth Date 11-29-50    Sex ☒Male ☐Female

Employee's Address (City, State, Zip) 20 SUNSET RD.  LIVINGSTON  NJ  07039

Telephone (30?) 594  7047    Occupation/Job Title F&B (Bartender)    Date of Full Time Emp. 4-12-99

Hrs Worked Wk 40+   Annual Salary $ 55,000    Marital Status S    Dependent Child(ren) ☐Yes ☒No

**ENROLLMENT FOR INSURANCE**  (Complete ONLY for any Guardian coverages desired.)

Employee Coverage Requested:  ☒Life/AD&D *Seacp Life (only)  ☐Optional Life Amount $

Major Medical (choose one) ☐PPO or ☐Guardian Major Med.  ☐Buy Down Major Medical Deductible $

☐Dental  ☐Vision  ☐Short Term Disability  ☐Long Term Disability  ☐Rx Card Only (No Major Med.)

Dependent Coverage Requested (Dependents cannot be enrolled for coverages declined by the employee):

☐Dependent Life  ☐Optional Life Amount: spouse $    child $

☐Major Medical (choose one) ☐PPO or ☐Guardian Major Med.  ☐Dental  ☐Vision  ☐Rx Card Only (No Major Med.)

I Elect Dependent Coverage For: ☐Spouse  ☐Spouse & Child(ren)  ☐Child(ren) Only

Give the following information for each dependent to be insured:

| Name (Last, First, M.I.) | Sex | Relationship | Soc. Sec. No. | Birth Date | Student |
|---|---|---|---|---|---|
|  | ☐M ☐F |  |  |  | ☐Y ☐N |
|  | ☐M ☐F |  |  |  | ☐Y ☐N |
|  | ☐M ☐F |  |  |  | ☐Y ☐N |
|  | ☐M ☐F |  |  |  | ☐Y ☐N |

Are any dependent child(ren) adopted? ☐Yes ☐No  If "Yes," indicate name and date of adoption:

Have you included stepchildren as dependents? ☐Yes ☐No  If "Yes," indicate name/s:

Do your stepchildren reside with you? ☐Yes ☐No  Are they dependent upon you for support and maintenance? ☐Yes ☐No

**EMPLOYEE BENEFICIARY DESIGNATION** (Complete ONLY if enrolling for Life Insurance. Include full proper name and relationship; i.e.: Mary A. Jones, wife.)

Name GEORGE A. CVELLAR    Relationship BUSINESS PARTNER

**ALTERNATIVE COVERAGE** (Complete ONLY if enrolling in a Health Maintenance Organization [HMO] or Pre-Paid Dental type plan)

I Elect  ☐Medical coverage for myself and dependents under the following HMO plan:

☐Dental coverage for myself and dependents under the following Pre-Paid Dental plan:

**REFUSAL OF INSURANCE** (Complete ONLY if not enrolling for all available Guardian coverages.)

If the plan requires contributions, and I have refused the insurance, I understand that if I request coverage for myself and/or my eligible dependents at a later date, I will be required to furnish, at my own expense, proof of each person's insurability, and Guardian reserves the right to reject my request. Proof of insurability does not apply to major medical, dental or vision coverages. However, late entrant penalties may apply to major medical and dental enrollment delays may apply to vision. Refer to Special Enrollment Rights on the reverse for additional information.

I decline the following employee coverages available to me:  ☐Life/AD&D  ☐Life (only)  ☐Optional Life
☐PPO  ☐Guardian Major Med.  ☐Dental  ☐Vision  ☐Short Term Dis.  ☐Long Term Dis.  ☐Rx Card (no Major Med.)  ☐All Coverage
because:  ☐I am insured under another policy or group plan (please indicate information below)  ☐Other Reasons

Employer's Name    Carrier Name

I decline the following coverage/s available to my  ☐spouse only  ☐spouse & child(ren)  ☐child(ren) only
☐Dependent Life  ☐Optional Life  ☐PPO  ☐Guardian Major Med.  ☐Dental  ☐Vision  ☐Rx Card only (no Major Med.)  ☐All Coverage
because:  ☐My dependents are insured under another policy or group plan (please indicate information below)  ☐Other Reasons

Employer's Name    Carrier Name

I hereby (1) request coverage for Group Insurance for which I am or may become eligible; (2) authorize my employer to make the necessary deductions for the contributions, if any, required for the insurance, or agree that the contributions be added to my dues; (3) state that I became an employee on this date stated above, and do currently work the number of hours per week stated above; and (4) designate the beneficiary named on this form to receive the proceeds, if any, payable in the event of my death.

Applicable to Accident and Health coverages:

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

I have reviewed the statements on this application and they are true and complete.

Signature of Employee [signature]    Date 7-19-99

Signature of Witness (only required if employee signature is X)    ID No.    Class    Branch

**FOR GUARDIAN USE ONLY** (Indicate coverages and amounts)

| EMPLOYEE: | Eff. Date | ☐Life (w/AD&D) | ☐Life (only) | ☐Optional Life |  |
|---|---|---|---|---|---|
| ☐PPO | ☐Major Med. | ☐Dental | ☐Vision | ☐WLT | ☐SLT | ☐Rx Card |
| DEPENDENT: | ☐Life | ☐Optional Life | ☐PPO | ☐Major Med. | ☐Dental | ☐Vision | ☐Rx Card |

Please submit the original and first copy to Guardian, maintain the second copy for your records.  CODED 9/9/99

GG-011364-NY (2/99)

212-003017-0238

OCT-09-2001  17:08    FROM-DAVID BERDON CO LLP                    18464870899        T-580  P.002/002  F-811

**GUARDIAN®**   The Guardian Life Insurance Company of America

Form No. GG-011364-NY
**Group Insurance Enrollment and Record Form**

| Northeast Regional Office | Midwest Regional Office | Western Regional Office | Norwell Regional Office |
|---|---|---|---|
| PO Box 26040 | PO Box 6612 | PO Box 2454 | PO Box 9121 |
| Lehigh Valley PA 18002-6040 | Appleton WI 54912-8012 | Spokane WA 99210-2454 | Norwell MA 02061-9121 |

*Before completing this application, please read the IMPORTANT notice on the reverse side of this form concerning special enrollment rights and preexisting condition limitations.    (Please Print Clearly)*

Planholder Name (Company Name) B.E. Windows Corp.      Group Plan # 339361    Branch Lo ° WIND

Planholder's Street Address (City, State, Zip) One World Trade Center, 106 th  NY NY  10048      Class - 0001

Employee's Name (Last, First, M.I.) ☒ Mr. ☐ Mrs. ☐ Miss ☐ Ms.  DUDEK  LUKE  A

Social Security Number [redacted]      Birth Date  11-20-50      Sex ☒ Male ☐ Female

Employee's Address (City, State, Zip) 21 SUNSET RD  LIVINGSTON  NJ  07039

Telephone (201) 524 [redacted]      Occupation/Job Title Est B (Install)/e/P  Date of Full Time Emp. 9 - 12 - 99

Hrs Worked Wk 40+  Annual Salary $ 5) 000      Marital Status  S      Dependent Child(ren) ☐ Yes ☒ No

**ENROLLMENT FOR INSURANCE** *(Complete ONLY for any Guardian coverages desired):*

Employee Coverage Requested: ☒ Life/AD&D ☐ Spouse Life (only)    ☐ Optional Life Amount $

Major Medical (choose one) ☐ PPO or ☐ Guardian Major Med.  ☐ Buy Down Major Medical Deductible $

☐ Dental  ☐ Vision  ☐ Short Term Disability  ☐ Long Term Disability  ☐ Rx Card Only (No Major Med.)

Dependent Coverage Requested (Dependents cannot be enrolled for coverages declined by the employee):

☐ Dependent Life  ☐ Optional Life Amount  spouse $          child $

☐ Major Medical (choose one) ☐ PPO or ☐ Guardian Major Med.  ☐ Dental  ☐ Vision  ☐ Rx Card Only (No Major Med.)

I Elect Dependent Coverage For:  ☐ Spouse  ☐ Spouse & Child(ren)  ☐ Child(ren) Only

*Give the following information for each dependent to be insured:*

| Name (Last, First, M.I.) | Sex | Relationship | Soc. Sec. No. | Birth Date | Student |
|---|---|---|---|---|---|
|  | ☐ M ☐ F |  |  |  | ☐ Y ☐ N |
|  | ☐ M ☐ F |  |  |  | ☐ Y ☐ N |
|  | ☐ M ☐ F |  |  |  | ☐ Y ☐ N |
|  | ☐ M ☐ F |  |  |  | ☐ Y ☐ N |

Are any dependent child(ren) adopted? ☐ Yes ☐ No   If "Yes," indicate name and date of adoption:

Have you included stepchildren as dependents? ☐ Yes ☐ No   If "Yes," indicate name/s:

Do your stepchildren reside with you? ☐ Yes ☐ No   Are they dependent upon you for support and maintenance? ☐ Yes ☐ No

**EMPLOYEE BENEFICIARY DESIGNATION** *(Complete ONLY if enrolling for Life Insurance. Include full proper name and relationship; i.e.: Mary A. Jones, wife.)*

Name  GEORGE A. CUELLAR      Relationship BUSINESS PARTNER

**ALTERNATIVE COVERAGE** *(Complete ONLY if enrolling in a Health Maintenance Organization [HMO] or Pre-Paid Dental type plan)*

I Elect  ☐ Medical coverage for myself and dependents under the following HMO plan:

☐ Dental coverage for myself and dependents under the following Pre-Paid Dental plan:

**REFUSAL OF INSURANCE** *(Complete ONLY if not enrolling for all available Guardian coverages.)*

If the plan requires contributions, and I have refused the insurance, I understand that if I request coverage for myself and/or my eligible dependents at a later date, I will be required to furnish, at my own expense, proof of each person's insurability, and Guardian reserves the right to reject my request. Proof of insurability does not apply to vision coverage. However, late entrant penalties may apply to major medical and dental and enrollment delays may apply to vision. Refer to Special Enrollment Rights on the reverse for additional information.

I decline the following employee coverage/s available to me:  ☐ Life/AD&D  ☐ Life (only)  ☐ Optional Life

☐ PPO  ☐ Guardian Major Med.  ☐ Dental  ☐ Vision  ☐ Short Term Dis.  ☐ Long Term Dis.  ☐ Rx Card (no Major Med.)  ☐ All Coverage

because:  ☐ I am insured under another policy or group plan (please indicate information below)  ☐ Other Reasons

Employer's Name _____  Carrier Name _____

I decline the following coverage/s available to my:  ☐ spouse only  ☐ spouse & child(ren)  ☐ child(ren) only

☐ Dependent Life  ☐ Optional Life  ☐ PPO  ☐ Guardian Major Med.  ☐ Dental  ☐ Vision  ☐ Rx Card only (no Major Med.)  ☐ All Coverage

because:  ☐ My dependents are insured under another policy or group plan (please indicate information below)  ☐ Other Reasons

Employer's Name _____  Carrier Name _____

I hereby (1) request coverage for Group Insurance for which I am or may become eligible; (2) authorize my employer to make the necessary deductions for the contributions, if any, required for the insurance, or agree that the contributions be added to my dues; (3) state that I became an employee on this date stated above, and do currently work the number of hours per week stated above; and (4) designate the beneficiary named on this form to receive the proceeds, if any, payable in the event of my death.

*Applicable to Accident and Health coverages:*

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

I have reviewed the statements on this application and they are true and complete.

Signature of Employee _____

Signature of Witness (only required if employee signature is X) _____      Date  7 / 19 / 99

| **FOR GUARDIAN USE ONLY** *(Indicate coverages and amounts)* | | ID No. | | Class | Branch |
|---|---|---|---|---|---|
| EMPLOYEE:  Eff. Date | | | | | |
| ☐ PPO  ☐ Major Med. | ☐ Dental | ☐ Life (w/AD&D) | ☐ Life (only) | ☐ Optional Life | |
| | | ☐ WLT | ☐ SLT | ☐ Rx Card | |
| DEPENDENT:  ☐ Life | ☐ Optional Life | ☐ PPO | ☐ Major Med. | ☐ Dental  ☐ Vision | ☐ Rx Card |

GG-011364-NY (2/99)      Please submit the original and first copy to Guardian, maintain the second copy for your records.   coded 9/9/99

212-003017-0239



# GUARDIAN

November 01, 2001

Mr. George Cuellar
20 Sunset Road
Livingston, NJ 07039

Employee       : Luke Dudek
Claim Number : Z00027075
Plan Number   : G-239261
Claimant       : George Cuellar
Benefit Amount : $100,780.00

Dear Mr. George Cuellar:

We are sorry to learn of the death of Luke Dudek.

The Guardian will deposit the above benefit amount in a Retained Asset Account established in your name. The amount represents the following payable benefits:

| Coverage Type | Amount Payable |
| --- | --- |
| Basic Life | $50,000.00 |
| AD&D | $50,000.00 |
| + Interest | $780.00 |
| Amount of Deposit | $100,780.00 |

Shortly you will receive an account kit from the State Street Bank. The kit will contain a confirmation certificate, a check book with 15 checks and a detailed explanation on how the Retained Asset Account works. You will have complete control of the account and can withdraw the funds as you choose. The Guardian guarantees the entire amount, including the interest, at a competitive market rate.

If you should have any questions about your Guardian Asset Account, please call one of our service representatives, toll free, at 1-800-331-4631. They will be more than willing to assist you.

Sincerely

Michelle Nikles
Group Life Benefit Analyst

CC: Ms. Elizabeth Ortiz
c/o David & Berdon & Company
415 Madison Avenue
New York, NY 10017

The Guardian Life Insurance Company of America, New York, NY

Northeast Regional Office  Group Life Claims  P.O. Box 26035  Lehigh Valley, PA 18002-6035
tel: 800.525.4342  fax: 610.807.8266  e-mail: group_life_claims@glic.com

212-003017-0240

# EXHIBIT 6

- 2 -

CLAIM NO. 432564          WTC                VICTIM: LUKE DUDEK
                                             CLAIMANT: GEORGE CUELLAR

1. Statutory Requirements:        YES
2. Financial Difficulty:          N/A

Reason for Decision:

Claimant is mutually interdependent upon a fifty-one year old male, who was a victim of a terrorist act at the World Trade Center on September 11, 2001 in New York, New York.

After reviewing the file and the evidence submitted, I find that eligibility and jurisdiction have been established; and that the provisions of Article 22, Section 631, of the Executive Law have been complied with. The victim was an innocent victim of a crime.

Accordingly, an award is herein made and payable, pursuant to claimant's authorization dated October 30, 2001 as follows:

To:
GEORGE CUELLAR                                          $29,170.08
20 SUNSET ROAD
LIVINGSTON, NEW JERSEY 07309
SS#: 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
(for loss of support)

**EMERGENCY AWARD HERETOFORE PAID ON 10/30/01**          $829.92
**TO THE CLAIMANT FOR MEMORIAL EXPENSES AS**
**ABOVE MENTIONED FOR WHICH NO CHECK**
**SHALL BE ISSUED**

                              **TOTAL AWARD**     **$30,000.00**

Claimant will be permitted to submit to the Board for consideration of payment evidence of any causally related unreimbursed counseling expense, if incurred as a direct result of the crime, after submission to any applicable health insurance coverage. The Crime Victims Board is payer of last resort.

AUG 1 4 2002

Dated: _____          Signed: _____
Dated at Brooklyn, New York                    Charles F. Marotta
                                               Commissioner

CFM:sa

## NOTICE TO CLAIMANT OR ATTORNEY

If you are dissatisfied with the decision of the Board Member who decided your claim, you may, within thirty days after receipt of the decision, make an application in writing to the Chairperson of the Board for reconsideration of the decision.

212-003017-0366

Claimant is mutually interdependent upon a fifty-one year old male, who was a victim of a terrorist act at the World Trade Center on September 11, 2001 in New York, New York.

After reviewing the file and the evidence submitted, I find that eligibility and jurisdiction have been established; and that the provisions of Article 22, Section 631, of the Executive Law have been complied with. The victim was an innocent victim of a crime.

Accordingly, an award is herein made and payable, pursuant to claimant's authorization dated October 30, 2001 as follows:

To:
GEORGE CUELLAR
20 SUNSET ROAD                                      $29,170.08
LIVINGSTON, NEW JERSEY 07309
SS#: 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
(for loss of support)

**EMERGENCY AWARD HERETOFORE PAID ON 10/30/01**      $829.92
**TO THE CLAIMANT FOR MEMORIAL EXPENSES AS**
**ABOVE MENTIONED FOR WHICH NO CHECK**
**SHALL BE ISSUED**

                          **TOTAL AWARD     $30,000.00**

Claimant will be permitted to submit to the Board for consideration of payment evidence of any causally related unreimbursed counseling expense, if incurred as a direct result of the crime, after submission to any applicable health insurance coverage. The Crime Victims Board is payer of last resort.

**AUG 1 4 2002**

Dated: _____     Signed: _____
Dated at Brooklyn, New York                     Charles F. Marotta
                                                Commissioner
CFM:sa

---

### NOTICE TO CLAIMANT OR ATTORNEY

If you are dissatisfied with the decision of the Board Member who decided your claim, you may, within thirty days after receipt of the decision, make an application in writing to the Chairperson of the Board for consideration of the decision by the Board. Your application should specify the grounds thereof, and should be sent to the Board at its principal office at Albany, New York.

### CRIME VICTIMS BOARD
**845 Central Avenue**
**Albany, New York   12206-1588**

If an award has been granted, the decision must then be reviewed by the Office of the State Comptroller whose approval must be received prior to the award payment. You should receive payment within eight to ten weeks from the date of the decision.

## MEDICAL AND FUNERAL EXPENSES

| PROVIDER | TOTAL | ALLOWED | RECEIVED | BALANCE |
|---|---|---|---|---|
| MEMORIAL SERVICE | $829.92 | PENDING WORKER'S COMPENSATION | | |

COUNSELING: YES

## EMPLOYMENT

Occupation  Windows on the World          Monthly Salary    $4,812.47

| | |
|---|---|
| Federal Income Tax | $254.93 |
| State Income Tax | $191.49 |
| City Income Tax | -0- |
| Social Security | $349.61 |
| Personal Expenses | -0- |
| TOTAL | $796.03 |
| Net Income | $4,016.44 |

Present Income:

| | |
|---|---|
| Pension | -0- |
| Social Security | -0- |
| Workers' Compensation | -0- |
| TOTAL | -0- |

| Loss of Support | Fro | 9/11/01 | thru | 8/31/02 | | |
|---|---|---|---|---|---|---|
| Months | | 11 | at | $4,016.44 | = | $44,180.80 |
| Weeks | | 2.8 | at | $926.87 | = | $ 2,595.24 |
| | | | | TOTAL | | $46,776.04 |

Reimbursements:
(Soc. Sec., WC, etc.) _____   at _____   = -0-

Actual Loss of Support  =  $46,776.04

Attorney's Fees        $

| | |
|---|---|
| Total Funeral Expenses | -0- |
| Total Medical Expenses | -0- |
| Total Loss of Support | $30,000.00* |
| TOTAL AWARD | $30,000.00 |
| Less Emergency Award (s) | -$  829.92 |
| Attorney Fee | -0- |
| TOTAL AWARD  DUE | $29,170.08 |

**\*REDUCED TO MAXIMUM ALLOWED AMOUNT
OF $30,000 BY NYS LAW**

# EXHIBIT 7

# CALCULATION OF ECONOMIC LOSS

in the matter of

## LUKE DUDEK



212-003017-0534

# LUKE DUDEK
## SUMMARY OF FACTS AND RESULTS
### REGARDING THE CALCULATION OF ECONOMIC LOSS

| | |
|---|---|
| Date of Birth | November 20, 1950 |
| Date of Death | September 11, 2001 |
| Age on Date of Death | 50.81 years |
| Projected Remaining Life Expectancy on Date of Death | 27.94 years |
| Weighted Average Tax Rate | 13.00% |
| Effective Date of Loss Calculation | June 30, 2003 |

The following is a summary of the results contained in the report:

| REPORT SECTION | ITEM | EXHIBIT | LOSS |
|---|---|---|---|
| B. | LOST INCOME: INCLUDING SALARY, PERQUISITES, NET OF TAXES, AND PERSONAL CONSUMPTION | D | 511,333 |
| C. | LOST MEDICAL BENEFITS | | 50,707 |
| D. | LOSS OF COMPANIONSHIP | | 435,864 |
| E. | LOSS OF REPLACEMENT SERVICES | | 1,271,270 |
| TOTAL LOSS | | | 2,269,174 |

The detailed narrative contained in the following pages describes the basis and methods utilized in computing the above information.

THE CHALFIN GROUP INC.

1

Luke Dudek

212-003017-0535

Re: Luke Dudek

The following pages contain an evaluation of the present value of the pecuniary loss resulting from the death of Luke Dudek, which occurred on September 11, 2001 at the World Trade Center in New York, New York. We have relied upon the guidelines presented by the September 11th Victims Compensation Fund to calculate the loss.

## A.   BIOGRAPHICAL OVERVIEW

A brief biographical overview of Luke Dudek reveals that he was born on November 20, 1950. Mr. Dudek earned a Bachelors of Arts degree in Psychology from Farleigh Dickinson University in 1973.

At the time of his death, Luke Dudek resided at 20 Sunset Road in Livingston, New Jersey with his life partner George Cuellar.

At the time of his death, Luke Dudek was employed as a food and beverage controller at Windows on the World in New York, New York.

1.   Definition of Loss

As will be discussed in the detailed narrative section which follows, the pecuniary loss resulting from the death or disability of an individual is an amount equal to the present value of the net future earnings of the individual. The components of the net future earnings include the sum total of the earnings and benefits that the person could reasonably expect to receive. The figure will be reduced by amounts that the individual would have spent on himself for work-related items.

The September 11th Victim Compensation Fund has developed a formula for calculating the income loss of a qualifying individual. The first step of the formula requires the determination of compensable income and benefits after a reduction for income taxes and the consumption expenditures of Mr. Dudek. These items will be projected over the remaining work-life expectancy of Luke Dudek and adjusted for an unemployment factor of 3 percent.

In addition, other components including the Loss of Companionship; Loss of Guidance Advice and Counsel; and Loss of Future Services will also be addressed in this report.

2.    Period of Earnings Loss

The period for which the earnings loss will be computed is the expected working life of Luke Dudek.  The length of time that one works is dependent on a variety of factors and events including:

    a.    The health of the individual.

    b.    The financial resources of the individual.  The category includes the person's outside income and net worth, including the extent and size of his or her retirement and pension plans.

    c.    The enjoyment, gratification and satisfaction that the person receives from his or her employment.

Certainly none of these factors should be addressed in a vacuum since the particular circumstances and needs of each individual vary.

In past years, as a result of numerous sociological, demographic and economic factors, individuals have been working longer and retiring later in life.  Further, Congress enacted legislation prohibiting mandatory retirement at age 65, and Social Security changed the normal retirement age to above 65.

Based on the work life expectancy tables prepared by the Victims Compensation Fund we have estimated Mr. Dudek would have remained in the workforce for an additional 11.91 years.

B.    INCOME LOSS

1.    Compensable Income

At the time of his death, Luke Dudek was employed as a food and beverage controller for Windows on the World in New York, New York. His earnings for the three calendar years prior to his death are as follows:

| 2000 | 1999 | 1998 |
|------|------|------|
| $54,560 | $51,467 | $57,740 |

At the time of his death, Mr. Dudek received a base salary of approximately $57,750. The bonus he received from his employment in 2001 was $1,000. The total of his projected compensation for 2001 was $58,750 ($57,750 + $1,000). In light of his past earnings, we have determined Mr. Dudek's compensable income to be $58,750. Mr. Dudek's earnings will be projected based on the earnings growth rates defined by the Victim's Compensation Fund.

2.    Income Tax Liability

The income that Luke Dudek would have received would be subject to Federal, New York and New Jersey income taxes. Accordingly, the tax liability will be deducted when the pecuniary loss is determined.

Under 2001 Federal tax laws, a single individual filing a tax return would pay approximately $5,200 in Federal taxes on a gross income of $58,750. New York and New Jersey income taxes would be approximately $2,100 on this amount. As a result, an allowance of 13.00% will be taken for income taxes at this level.

The calculation of income tax liability assumes the same itemized deductions as reported on Luke Dudek's 2000 tax return and one exemption. Any additional deductions would serve to reduce the potential tax liability.

3.    Employer Provided Benefits

As a result of his employment with Windows on the World, Mr. Dudek participated in various employer-sponsored benefits including health insurance.

Included in Section C of this report is a projection of lost medical and dental benefits.

Based on the information provided, Windows on the World matched 50% of the first 6% of an employee's contribution to the 401(k) Plan. Since Mr. Dudek chose not to participate in his company's 401(k) plan, no calculation of lost employer contributions is included in this report.

THE
CHALFIN
GROUP
INC.

4

Luke Dudek

212-003017-0538

4.      Consumption Expenditures

In determining the economic loss to the family of Luke Dudek, his future earnings should be reduced by the amount of personal expenditures that he would have spent on himself had he continued to live.

The consumption percentage for an individual with a life partner earning $58,750 per year as provided by the Victim Compensation Fund was 17.8 percent.  This figure will be deducted from the net lost salary of Luke Dudek in calculating the economic loss.

THE
CHALFIN
GROUP
INC.

Luke Dudek

212-003017-0539

C.    LOST MEDICAL BENEFITS

Luke Dudek participated in the medical and dental benefits plans offered by
Windows on the World.  We have estimated that the annual contribution made on
behalf of Mr. Dudek by Windows on the World was $3,210.  Based on the projected
annual increase of medical expenses of 6.8 percent per year, the present value of
lost medical benefits would be $50,717.  The calculation of present value has been
based on a pretax discount rate of 4.8 percent based on the information provided by
the September 11th Victims Compensation Fund.

THE CHALFIN
GROUP
INC.

Luke Dudek

212-003017-0540

D.    LOSS OF COMPANIONSHIP

The loss of the companionship of a life partner is being conservatively calculated as the cost of hiring a homemaker for twenty hours per week through the remaining life expectancy of Luke Dudek. At current rates, unskilled homemakers charge from $10.00 to $20.00 per hour. This office has utilized a rate of $15.00 per hour. On an annual basis, the loss of companionship, through the remaining life expectancy of Luke Dudek, has been estimated to be $15,600 (20 hours per week x $15.00 per hour x 52 weeks).

The calculation of future loss of companionship is as follows.

| LOSS OF COMPANIONSHIP | |
| --- | --- |
| Remaining Life Expectancy of Luke Dudek as of September 11, 2001 | 27.94 |
| Annual Loss of Companionship | 15,600 |
| Total Loss of Companionship | 435,864 |

212-003017-0541

E.    LOSS OF REPLACEMENT SERVICES

Luke Dudek performed a range of services for his household.  His services
included both household chores such as cooking, home maintenance, and
grocery shopping for approximately 10 hours per week and services provided in
connection with Coqui Design, a business owned jointly by Luke Dudek and
George Cuellar.  The services provided by Mr. Dudek for Coqui design including
bookkeeping and other administrative roles and accounted for approximately 25
hours of his week.  These various services are by no means an exhaustive list of
the various roles assumed by Luke Dudek.  However, for purposes of this report
we are conservatively valuing his services at an overall hourly rate of $25.00.

Based on the information conveyed to this firm, it will be assumed that Mr. Dudek
performed these tasks or would have performed these tasks for an average of 35
hours per week (10 hours of household services+ 25 hours of business
services).  This results in a loss of $45,500 per year ($25.00 per hour x 52 weeks
x 35 hours per week).  This figure will be projected through the remaining life
expectancy of Luke Dudek.

Exhibit A indicates some of the wage rates for workers who perform services
similar to those listed above.

The calculation of the loss of replacement services is as follows:

| LOSS OF REPLACEMENT SERVICES | |
|---|---|
| Remaining Life Expectancy of Luke Dudek as of September 11, 2001 | 27.94 |
| Annual Loss of Replacement Services | 45,500 |
| Total Loss of Replacement Services | 1,271,270 |

THE CHALFIN
GROUP
INC.

Luke Dudek

212-003017-0542

F.   PRESENT VALUE DETERMINATION

In this report a value is placed at a point in time on the receipt of a series of payments over many years into the future.  This pecuniary loss is a lump sum, which with the interest earned, will be equal in value to the future payments. This calculation is referred to as the present value.

Ignoring inflation, a dollar received today is worth more than a dollar received in the future.  For example, at eight percent interest a dollar that is received today would be worth $1.08 a year from now; or, if ninety-two and one-half cents ($.925) was received today it would be worth a dollar one year from today. There is a range of relevant interest rates that could be used for this calculation. United States Government Securities offer investors the most security, in terms of payment of interest and eventual repayment of capital.  However, on government securities with durations longer than one year, there is the constant threat that the individual security holders will incur capital losses should they decide or be forced to sell the securities prior to their maturity dates.  As a result, the only investment which is somewhat free of short-term capital fluctuations and provides security, are U.S. Treasury Obligations which have short durations.

In determining the appropriate discount rate that should be used in a calculation such as this, the rate is based upon the interest rates that are currently available for the requisite time periods that would comply with the requirements of liquidity and safety.  The Victim's compensation fund presents various discount rates according to the age of the decedent.  Based on Mr. Dudek's age, an after tax discount rate of 3.9% will be utilized for the calculation of income loss.

The increases in one's salary, wages and bonus from one year to the next are subject to a variety of macroeconomic, microeconomic, demographic, societal and geographic factors.  There are numerous projections that are prepared regarding future wage increases.

However, for purposes of this report, the calculation of loss of companionship; loss of guidance advice and counsel; and loss of future services assume the increase in salary and wage rates will be offset by the discounting for present value.

THE CHALFIN GROUP INC.

Luke Dudek

212-003017-0543

## G.    COMPUTATION

Based on the information contained in the report, the calculations regarding the
Economic Loss of Luke Dudek would be as follows:

| REPORT SECTION | ITEM | EXHIBIT | LOSS |
|---|---|---|---|
| B. | LOST INCOME: INCLUDING SALARY, PERQUISITES, NET OF TAXES, AND PERSONAL CONSUMPTION | D | 511,333 |
| C. | LOST MEDICAL BENEFITS | | 50,707 |
| D. | LOSS OF COMPANIONSHIP | | 435,864 |
| E. | LOSS OF REPLACEMENT SERVICES | | 1,271,270 |
| TOTAL LOSS | | | 2,269,174 |

Respectfully submitted,

THE CHALFIN GROUP INC.

Robert J. Chalfin

Paul M. Gazaleh

Dated: 7/8/03

THE CHALFIN GROUP INC.

Luke Dudek

212-003017-0544

EXHIBIT A - HOURLY EARNINGS

MEDIAN HOURLY EARNINGS OF
PRODUCTION OR NON SUPERVISORY WORKERS'
ON PRIVATE NONFARM PAYROLLS
AS OF DECEMBER 2000

| Industry | Average Hourly Earnings |
|---|---|
| Residential Building Construction | $18.10 |
| Plumbers | 18.20 |
| Heating and Air Conditioning | 17.26 |
| Painting and Paperhanging | 13.03 |
| Electricians | 19.22 |
| Masonry and Stonework | 19.55 |
| Plastering | 16.00 |
| Carpentry and Floor Work | 15.51 |
| Roofing and Siding | 13.95 |
| Sheet Metal and Duct Work | 15.37 |
| Restaurant Cooks | 8.72 |
| Landscape and Grounds Keeping | 8.80 |
| Janitors, Cleaners, and Housekeepers | 8.26 |
| Automobile Repair Services | 15.05 |
| Human Services Workers | 10.74 |
| Child Day Care Services | 7.43 |
| Accounting, Auditing and Bookkeeping | 20.91 |

Source: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Outlook
Handbook, 2002-2003 Edition

THE CHALFIN
GROUP
INC.

Luke Dudek

212-003017-0545

EXHIBIT B - HOURLY EARNINGS BY INDUSTRY

## AVERAGE HOURLY EARNINGS OF PRODUCTION
## OR NON SUPERVISORY WORKERS'
## PAYROLLS BY INDUSTRY

| Year | Average Hourly Earnings Construction | Average Hourly Earnings Services |
|------|------|------|
| 1970 | $5.24 | $2.81 |
| 1971 | 5.68 | 3.04 |
| 1972 | 6.06 | 3.27 |
| 1973 | 6.40 | 3.47 |
| 1974 | 6.81 | 3.75 |
| 1975 | 7.31 | 4.02 |
| 1976 | 7.69 | 4.32 |
| 1977 | 8.09 | 4.65 |
| 1978 | 8.63 | 4.99 |
| 1979 | 9.25 | 5.36 |
| 1980 | 9.92 | 5.85 |
| 1981 | 10.80 | 6.41 |
| 1982 | 11.62 | 6.92 |
| 1983 | 11.94 | 7.31 |
| 1984 | 12.13 | 7.59 |
| 1985 | 12.32 | 7.90 |
| 1986 | 12.48 | 8.17 |
| 1987 | 12.70 | 8.49 |
| 1988 | 13.06 | 8.88 |
| 1989 | 13.53 | 9.39 |
| 1990 | 13.76 | 9.84 |
| 1991 | 13.99 | 10.24 |
| 1992 | 14.15 | 10.55 |
| 1993 | 14.37 | 10.79 |
| 1994 | 14.71 | 11.04 |
| 1995 | 15.07 | 11.39 |
| 1996 | 15.45 | 11.79 |
| 1997 | 16.02 | 12.27 |
| 1998 | 16.58 | 12.84 |
| 1999 | 17.15 | 13.37 |
| 2000 | 17.85 | 13.87 |
| 2001 | 18.33 | 14.60 |

212-003017-0546

Source: U.S. Department of Labor, Bureau of Labor Statistics, May, 2002

THE CHALFIN GROUP INC.

Luke Dudek



AVERAGE HOURLY EARNINGS OF PRODUCTION OR NON SUPERVISORY WORKERS' PAYROLLS BY INDUSTRY YEAR

Luke Dudek

13

EXHIBIT C - CONSUMER PRICE INDEX

---

### ANNUAL PERCENTAGE CHANGE IN
### CONSUMER PRICE INDEX
### FOR ALL ITEMS

| Year | Change |
|------|--------|
| 1975 | 9.1% |
| 1976 | 5.8% |
| 1977 | 6.5% |
| 1978 | 7.6% |
| 1979 | 11.3% |
| 1980 | 13.5% |
| 1981 | 10.3% |
| 1982 | 6.2% |
| 1983 | 3.2% |
| 1984 | 4.3% |
| 1985 | 3.6% |
| 1986 | 1.9% |
| 1987 | 3.6% |
| 1988 | 4.1% |
| 1989 | 4.8% |
| 1990 | 5.4% |
| 1991 | 4.2% |
| 1992 | 3.0% |
| 1993 | 3.0% |
| 1994 | 2.6% |
| 1995 | 2.8% |
| 1996 | 3.0% |
| 1997 | 2.3% |
| 1998 | 1.6% |
| 1999 | 2.2% |
| 2000 | 3.4% |
| 2001 | 2.8% |

**212-003017-0548**

| | |
|---|---|
| 10 Year Average 1982 to 1991 | 4.1% |
| 10 Year Average 1992 to 2001 | 2.7% |

Source:  U.S. Department of Labor, Bureau of Labor Statistics, <u>May, 2002</u>

---

14

FIN
:OUP
INC.

Luke Dudek



ANNUAL PERCENTAGE CHANGE IN CONSUMER PRICE INDEX
FOR ALL ITEMS

Luke Dudek

15

THE CHALFIN
GROUP INC.

212-003017-0549

EXHIBIT D - CALCULATION OF INCOME LOSS

For purposes of this analysis, it has been assumed that all payments are made at the beginning of each period.

All figures have been discounted to September 30, 2003.

The calculations are included on the following pages.

THE CHALFIN
GROUP
INC.

Luke Dudek

212-003017-0550

| | 9/12/01 12/31/01 | 1/1/02 12/31/02 | 1/1/03 12/31/03 | 1/1/04 12/31/04 | 1/1/05 12/31/05 | 1/1/06 12/31/06 | 1/1/07 12/31/07 | 1/1/08 12/31/08 | 1/1/09 12/31/09 | 1/1/10 12/31/10 | 1/1/11 12/31/11 | 1/1/12 12/31/12 | 1/1/13 8/7/13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age at End of Period | 51.11 | 52.11 | 53.11 | 54.11 | 55.11 | 56.11 | 57.11 | 58.11 | 59.11 | 60.11 | 61.11 | 62.11 | 62.71 |
| Earning's Growth | 0.00% | 3.194% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% | 3.000% |
| Expected Earnings (See Section B.1.) | 17,705 | 60,626 | 62,445 | 64,318 | 66,248 | 68,235 | 70,282 | 72,391 | 74,562 | 76,799 | 79,103 | 81,476 | 50,088 |
| Taxes (See Section B.2.) | (2,302) | (7,881) | (8,118) | (8,361) | (8,612) | (8,871) | (9,137) | (9,411) | (9,693) | (9,984) | (10,283) | (10,592) | (6,511) |
| Expected Earnings After Taxes | 15,404 | 52,745 | 54,327 | 55,957 | 57,636 | 59,365 | 61,146 | 62,980 | 64,869 | 66,815 | 68,820 | 70,884 | 43,577 |
| Subtotal | 15,404 | 52,745 | 54,327 | 55,957 | 57,636 | 59,365 | 61,146 | 62,980 | 64,869 | 66,815 | 68,820 | 70,884 | 43,577 |
| Unemployment Risk Factor | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% | 3.00% |
| Subtotal | 14,942 | 51,182 | 52,697 | 54,278 | 55,907 | 57,584 | 59,311 | 61,091 | 62,923 | 64,611 | 66,755 | 68,758 | 42,269 |
| Personal Consumption (See Section B.4.) | (2,660) | (9,107) | (9,380) | (9,662) | (9,951) | (10,250) | (10,557) | (10,874) | (11,200) | (11,536) | (11,882) | (12,239) | (7,524) |
| Total Lost Income | 12,282 | 42,055 | 43,317 | 44,617 | 45,955 | 47,334 | 48,754 | 50,216 | 51,723 | 53,275 | 54,873 | 56,519 | 34,745 |
| Present Value Factor | 1.0815 | 1.0690 | 1.0289 | 0.9903 | 0.9531 | 0.9173 | 0.8829 | 0.8498 | 0.8178 | 0.7871 | 0.7576 | 0.7292 | 0.7018 |
| Present Value of Lost Income | 13,283 | 44,957 | 44,569 | 44,184 | 43,798 | 43,420 | 43,045 | 42,673 | 42,300 | 41,935 | 41,573 | 41,214 | 24,383 |
| Total Present Value of Future Lost Salary | 511,333 | | | | | | | | | | | | |

212-003017-0551

17

212-003017-0552