**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Matthew Rowenhorst, et al. v. Islamic Republic of Iran (1:18-cv-12387) (GBD) (SN)*

## THE *ROWENHORST* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT II

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Jeffrey E. Glen, Esq.
Vianny M. Pichardo, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel:    212-278-1000
Fax:   212-278-1733
Email:  jgoldman@andersonkill.com
            bstrong@andersonkill.com
            jglen@andersonkill.com
            vpichardo@andersonkill.com

Arthur R. Armstrong, Esq.
*(pro hac vice)*
1760 Market Street, Suite 600
Philadelphia, PA  19103
Tel:    267-216-2711
Fax:   215-568-4573
Email:  aarmstrong@andersonkill.com

Dated:  August 20, 2019
            New York, New York

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

I.   Procedural Background ........................................................................................... 2

II.  Damages .................................................................................................................. 2

  A.  Solatium Damages ............................................................................................ 3

  1.   Individuals Not Named in the Complaint Entitled to Solatium Damages ...................... 6

    **(a)**  *Marie Sikorsky, spouse of Edward F. Geraghty* ....................................... 6

    **(b)**  *Steven Sikorsky, child of Edward F. Geraghty* ......................................... 7

  2.   Functional Equivalents of Immediate Family Members ................................................ 7

    **(a)**  *John Proodian, child equivalent of Richard T. Muldowney* ..................................... 9

  B.  Punitive Damages ............................................................................................. 13

  C.  Prejudgment Interest ........................................................................................ 14

Conclusion ........................................................................................................................ 16

docs-100191968.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   775 F. Supp. 2d 48 (D.D.C. 2011) ........................................................................14

*Belkin v. Islamic Republic of Iran*,
   667 F. Supp. 2d 8 (D.D.C. 2009) ............................................................................4

*Estate of Bland v. Islamic Republic of Iran*,
   831 F. Supp. 2d 1 50, 156 (D.D.C. 2011) ..........................................................4, 13

*Dammarell v. Islamic Republic of Iran*,
   281 F. Supp. 2d 105 (D.D.C. 2003), vacated on other grounds, 404 F. Supp.
   2d 261 (D.D.C. 2005) ..............................................................................................3

*Estate of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006) ........................................................................4

*Surette v. Islamic Republic of Iran*,
   231 F. Supp. 2d 260 (D.D.C. 2002) ........................................................................4

*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) ......................................................................3, 4

*World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September
   11th Litigation*),
   2015 U.S. App. LEXIS 16619 (2d Cir. Sept. 17, 2015) ........................................14

**Statutes**

28 U.S.C. § 1605A(a)(1) ................................................................................................2

28 U.S.C. § 1605A(c)(4) ............................................................................................2, 13

Federal Air Transportation Safety and System Stabilization Act ("ATSSSA")
   Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. §
   40101) ..................................................................................................................14

docs-100191968.1

## INTRODUCTION

For the reasons set forth below, and the statements contained in the declaration of Jerry S. Goldman, Esq., which is filed contemporaneously with this memorandum of law, along with the exhibits appended thereto (the "Goldman Declaration"), certain plaintiffs in the above-referenced matter who are identified on Exhibit A to the Goldman Declaration (collectively, the "*Rowenhorst II* Plaintiffs") by and through their counsel, Anderson Kill, P.C., respectfully move this Court to award solatium damages for the losses suffered by the relatives[1], or functional equivalents thereof, of an individual killed as a result of the terrorist attacks on September 11, 2001 ("9/11 decedent"), in the same amounts previously awarded by this Court to other similarly situated plaintiffs against the Islamic Republic of Iran ("Iran"); award prejudgment interest on those damages; and permit the *Rowenhorst II* Plaintiffs to seek punitive damages and economic and other appropriate damages at a later date, for the reasons set forth below. This motion is made only on behalf of the *Rowenhorst II* Plaintiffs listed in Exhibit A attached to the Goldman Declaration,[2] which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent.

As the awards set forth in the attached proposed order represent the only direct recovery against Iran on behalf of the *Rowenhorst II* Plaintiffs, any award issued to those individuals will

---

[1] The plaintiffs listed on Exhibit A are the relatives, or functional equivalents of a relative, of a 9/11 decedent. In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate. As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative. Goldman Decl. at ¶ 5.

[2] Exhibit A only includes plaintiffs who intend to submit US VSST applications in 2019. The *Rowenhorst* plaintiffs who are not included on Exhibit A have either already filed a motion for liability and damages (*In Re Terrorist Attacks on September 11, 2001*, No. 03-md-1570, ECF Nos. 4860-4863) or intend to file a motion seeking damages at a later date.

constitute final awards and judgments against the Islamic Republic of Iran for those solatium claimants listed in Exhibit A to the Goldman Declaration.

## I.   Procedural Background

On August 14, 2019, certain *Rowenhorst* Plaintiffs filed a Motion for Default Judgment Against the Islamic Republic of Iran for Liability and Damages. *In Re Terrorist Attacks on September 11, 2001*, No. 03-md-1570, ECF Nos. 4860-4863 (hereinafter "*MDL*").

The moving *Rowenhorst II* Plaintiffs listed on Exhibit A[3] now seek: (1) judgment as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, and other cases; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; and (3) permission for such plaintiffs to seek punitive damages and economic and other appropriate damages at a later date.

## II.   Damages

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), permits a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death," § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c)(4).  Courts addressing the damages available under the statute have held that, among other damages recoverable, "family members can recover solatium for their emotional injury; and all plaintiffs

---

[3] Where a plaintiff's name is the subject of a pending Motion to Amend to Correct Errors, the corrected plaintiff's name is listed on Exhibit A.

can recover punitive damages. *MDL*, ECF No. 2623 at 2-3 (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010)).

Plaintiffs identified in Exhibit A are comprised of immediate family members or functional equivalents of such family members of those killed on 9/11, as demonstrated by documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage certificates, sworn affidavits, official documents or other documents signed under penalty of perjury, which attest to a family relationship eligible for recovery, and, in the case of a subsequently deceased family member, a death certificate or sworn affidavit which reflects that the claimant did not predecease the 9/11 victim.[4] *See* Goldman Decl. at ¶¶ 3-7.

Once liability has been established in this matter, each such family member will be entitled to solatium damages in the amounts previously established and applied by this Court in this and other related cases arising from the terrorists attacks on September 11, 2001 (the "9/11 Attacks").  In accordance with the terms of the FSIA, the Plaintiffs identified in Exhibit A are entitled to compensation under Section 1605A for their solatium damages and are also entitled to prejudgment interest.

**A.  Solatium Damages**

As set forth above, the FSIA specifically provides for an award of solatium damages. Under § 1605A, family members of a decedent may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of a decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).  Other courts have previously

---

[4] Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF No. 4045.

3

noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for the intentional infliction of emotional distress.  *See, e.g.*, *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "indistinguishable from the claim of intentional infliction of emotional distress" (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

When previously awarding solatium damages in other cases related to the 9/11 Attacks, such as those noted above, this Court looked at the framework established by District Court Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id.*  This formula, however, may be adjusted upward or downward when circumstances warrant.  *See, e.g.*, *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 1 50, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lambert's framework in *Heiser* was appropriate.  In *Havlish*, Judge Maas explained that an upward departure was warranted because the decedents' immediate family members suffered, and continue to suffer, "profound agony and grief" and "[w]orse yet, . . . are faced with frequent reminders of the events of that day." *MDL*, ECF No. 2618, at 10-12.  Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances

4

surrounding the September 11th attacks, and their indelible impact on the lives of the victims'
families . . . ." *Id.* at 11.  In that Report, with which this Court later agreed, Magistrate Judge
Maas recommended that solatium damages be awarded to the immediate family members of the
victims of the 9/11 Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, *MDL*, ECF
No. 2623, and were replicated in this Court's June 16, 2016 Order relating to the claims of
certain of the *Ashton* Plaintiffs, *MDL*, ECF No. 3300, and in the September 12, 2016 Order
pertaining to plaintiffs in the *Bauer* case, *MDL*, ECF No. 3341, and in the October 14, 2016
Report and Recommendation and October 31, 2016 Order in the *Hoglan* case, *MDL*, ECF Nos.
3363, 3384.  These amounts were, again, adopted by this Court in its April 24, 2018 Order
relating to the claims of additional *Ashton* Plaintiffs, *MDL*, ECF No. 3977 at 6–7.  The same
amounts were recently adopted in the Court's June 8, 2018 (Corrected) Order of Partial Final
Default Judgment in the matter known as "Burnett/Iran II,"[5] No. 15-cv-09903, ECF No. 101.

The solatium losses suffered by the *Rowenhorst II* Plaintiffs before the Court in this
application are legally and factually comparable to those suffered by the plaintiffs in the *Havlish*,

---

[5] The same values were applied to the claims of other plaintiffs in the earlier *Burnett* case in this
Court's order of July 31, 2017. *MDL*, ECF No. 3666.

*Ashton*, *Bauer*, *Hoglan* and *Burnett* cases. As such, Plaintiffs identified on Exhibit A respectfully request that the Court grant awards of solatium to the immediate family members and functional equivalents as identified on Exhibit A in the same amounts indicated herein, consistent with this Court's application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan* and *Burnett* cases.

## 1.  Individuals Not Named in the Complaint Entitled to Solatium Damages

Pursuant to paragraph 5 of Section ii(d) of the Plaintiff's Executive Committee Letter, dated January 23, 2017, MDL, ECF No. 3433, which was adopted by the Court through Order, dated January 25, 2017, MDL, ECF No. 3435, individuals who are not named in the complaint, but are otherwise a member of the 9/11 decedent's family, are entitled to receive a judgment for solatium based upon their relationship to the 9/11 decedent and where there is a pending claim by the personal representative of that decedent's estate.  The letter provides "[i]n instances where a default judgment is sought by a personal representative in favor of a solatium claimant who is not a named plaintiff in the action in which the award is sought, counsel requesting the judgment will be asked to confirm that: (1) the personal representative has requested that a judgment be sought in favor of the solatium claimant; (2) the solatium claimant has been contacted and affirmed that he or she authorized the personal representative to seek the judgment in his or her favor; and (3) counsel has confirmed that the solatium claimant in favor of whom the judgment is being sought has not retained other counsel or been named in any other action or, if he or she has, that counsel has communicated with the claimant's counsel and received authorization to seek the judgment via the estate's representative."  MDL, ECF No. 3433.

### (a)  *Marie Sikorsky, spouse of Edward F. Geraghty*

Marie Sikorsky is an individual who is not named in the complaint but is otherwise a member of the 9/11 decedent's, Gregory Sikorsky, family entitled to receive a judgment for

6

solatium based upon his family relationship, as the 9/11 decedent's spouse.  The personal

representative of the relevant 9/11 decedent is a named party in this litigation and has complied

with the Court's requirements pursuant to its January 25, 2017 Order.  *See* MDL, ECF No. 3435.

Goldman Declaration at ¶ 13.

Accordingly, judgment should be entered in favor of Marie Sikorsky's favor as if they

were named plaintiffs, in the same amounts indicated herein, consistent with this Court's

application of those values established and applied in *Havlish*, and subsequently adopted and

applied to plaintiffs in the *Ashton, Bauer, Hoglan* and *Burnett* cases.

      **(b)**    ***Steven Sikorsky, child of Edward F. Geraghty***

Steven Sikorsky is an individual who is not named in the complaint but is otherwise a

member of the 9/11 decedent's, Gregory Sikorsky, family entitled to receive a judgment for

solatium based upon his family relationship, as the 9/11 decedent's child.  The personal

representative of the relevant 9/11 decedent is a named party in this litigation and has complied

with the Court's requirements pursuant to its January 25, 2017 Order.  *See* MDL, ECF No. 3435.

Goldman Declaration at ¶ 14.

Accordingly, judgment should be entered in favor of Steven Sikorsky's favor as if they

were named plaintiffs, in the same amounts indicated herein, consistent with this Court's

application of those values established and applied in *Havlish*, and subsequently adopted and

applied to plaintiffs in the *Ashton, Bauer, Hoglan* and *Burnett* cases.

    **2. Functional Equivalents of Immediate Family Members**

The October 14, 2016 Report and Recommendation recommended that in addition to

those individuals who are considered traditional "family members," damages could also be

awarded to non-immediate family members who met certain criteria establishing that she or he

had a relationship with the 9/11 decedent that was the "functional equivalent" to that of an

7

immediate family member.  These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews and cousins.  *See MDL*, ECF No. 3363.

In that report, three factors were identified as relevant to the determination of whether a close non-immediate family member was the "functional equivalent" of an immediate family member.  Those factors are: 1) long-term residence or co-habitation in the decedent's household; 2) whether the non-immediate family member ever played a guardian or custodian-like role in the 9/11 decedent's life or vice versa; and 3) whether the biological family member whose role the "functional equivalent" individual played was absent from the family life (i.e. did the non-immediate family member step in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member).  *Id*. at 10-12. In weighing these different factors, the Court stated it would consider whether the non-immediate family member supported the decedent financially and emotionally, or vice versa, and whether the decedent and claimant shared in typical family activities like doing homework, eating dinner and vacationing together. *Id*.  With respect to same-sex domestic partners, the Court noted that "[i]n determining which partners qualify as being functionally equivalent to a spouse, the Court has considered the duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation and the presence or absence of a formal engagement as important factors."  *Id*., pp. 14-15.  In previous cases, the Court relied on the statements from the claimant about the nature and quality of the relationship with decedents.  *Id*., pp. 17-28.

The information in the declarations of the individuals for whom solatium damages are sought in this motion confirms that all functional equivalent plaintiffs, as reflected on Exhibit A

to the Goldman Declaration, had the "functional equivalent" of a biological or spousal relationship and they are therefore entitled to an award for solatium damages.

> **(a)**   ***John Proodian, child equivalent of Richard T. Muldowney***
> **Presumptive Award: $8.5 Million**
> **Requested Award: $8.5 Million**

Richard T. Muldowney, Jr. was a firefighter who died on September 11, 2001 when the World Trade Center collapsed.  John Proodian was the stepson of Richard T. Muldowney, Jr., and for the reasons set forth below, and in the accompanying Declaration of John Proodian ("Proodian Decl.") and the Declaration of Constance Muldowney ("Muldowney Decl.") annexed as Exhibits B and C to the Goldman Declaration, respectively, Plaintiffs submit John Proodian should be deemed a child equivalent.

John Proodian's biological parents separated in 1992 when he was about 2 years old.  In 1994, when John was only 4 years old, his biological parents were divorced.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 3; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 3.

The same year, Richard came into John's life when he started dating his mother, Constance Muldowney.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 4; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 4.

Before Richard was married to John's mother, Richard would travel significantly between Florida where John lived with his sister and mother and New York where Richard worked as a firefighter with Ladder Co. 7 in Manhattan.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 5; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 5.  Richard would come to Florida about every six weeks or so until they all relocated from Florida to New York to live together in 1998. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 5; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 5.  He would always stay with John Proodian and his mother and sister when he visited Florida.

<div align="center">9</div>

On June 28, 1998, Richard and John's mother were married and, along with John's sister Kathryn Emma Proodian, they became a family.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 6 and Exhibit 2; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 6 and Exhibit 2.

The same year Richard and John's mother were married, John's biological father passed away. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 7; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 7.

John always considered Richard as a bona fide in his life, especially after his biological father passed away.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 8; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 8.

As a firefighter, Richard worked hard to provide for John, his mother, and his sister. Richard was the financial support in his family, particularly since they did not receive any child support from John's biological father.  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 9; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 9. Also, while John's mother worked, Richard primarily supported John's family.  Both John's mom and Richard would jointly claim John and his sister on their taxes.  *See* Goldman Decl., Ex. C: Muldowney Decl. at ¶ 9.

In addition to this financial support, Richard treated John like his son, emotionally and socially.  He would give John advice (and, of course, discipline) like any loving father and as to the outside world, there was no question that "John was his son."  *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 10; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 10.

Richard's whole side of the family treated John that way as well.  To this day, John is considered a "grandson" by Richard's mother who he affectionately calls "Mamma" along with her other grandchildren.  John's children and his sister's daughter, along with Mamma's other

great-grandchildren, call her "Gigi." *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 11; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 11.

Richard taught John how to play baseball.  One of John's fondest memories is the summer Richard and him drove from Florida to New York for the move ahead of his mother and sister after his mother and Richard were married.  They watched baseball games on the road and Richard showed John his love for the Mets.  John is a Mets fan to this day because of Richard. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 12; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 12.

John also remembers fondly the day of his first communion in 1998 and how Richard was there for him.  With the recent passing of his biological father, Richard stepped in as he told me he was "becoming a man."  In fact, because of Richard, John stopped using his nickname and starting going by his given name, John. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 13.

Other favorite memories include Richard taking John to go fishing and crabbing near their house in Long Island, being out on the fishing boats from the Captree fleet or friends' boats, taking family vacations, taking long bike rides, and Richard coaching his Little League games.  Richard was always very active in John's life.  John really enjoyed having bonding time with him every year for the drill tournaments Richard helped set up as a Volunteer firefighter in Freeport, Long Island. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 14 and Ex. 3; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 13 and Ex. 3.

On September 11, 2001, the Muldowney/Proodian family was forever changed. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 15; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 14.

11

John was 11 years old and living in New York with Richard and the rest of his family on September 11, 2001. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 16; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 15.

After finding out that Richard was one of the missing victims, John remembers hoping for a long time that he would be found. John even offered to help find him. When reality set in that Richard was never coming back, John took it very hard. To this day, John misses having Richard's fatherly voice and knows Richard would have guided him through his childhood and now. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 17; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 16.

John was fortunate to be involved in the FDNY's America's Camp for children of 9/11 victims. John went to the camp every summer for 10 years, including as a counselor. For John, it was good to spend time with other children of 9/11 victims who were going through the same loss as him. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 18; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 17.

In sum, Richard was very much a father in John's life and they considered each-other to be father and son in every way. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 19 and Ex. 4; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 18 and Ex. 4.

Richard was in John's life for 7 of his 11 years on this earth when Richard passed away and John will always miss him with fond memories. *See* Goldman Decl., Ex. B: Proodian Decl., at ¶ 20 and Ex. 5; and Goldman Decl., Ex. C: Muldowney Decl. at ¶ 19 and Ex. 5.

Based on John Proodian's extremely traumatic experience in losing his stepfather and the only father in his life at the time of Richard T. Muldowney's death, John Proodian should be

awarded the full solatium damages award of $8.5 Million otherwise awarded to the children of September 11, 2001 decedents.

**B. Punitive Damages**

Under the FSIA, plaintiffs are also entitled to punitive damages. 28 U.S.C. § 1605A(c)(4). In the *Havlish* Report and Recommendation on Damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." *MDL*, ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)). This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). *MDL*, ECF No. 2623 at 2. The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, *MDL*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); *MDL*, ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); *MDL*, ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying a 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. *MDL*, ECF No. 3363 at 28. Judge Daniels adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages. *MDL*, ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date. *See, e.g.*, *MDL*, ECF No. 3666 (Judge Daniels'

13

order in *Burnett*, authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### C. Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment.  *MDL*, ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See MDL*, ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *World Trade Ctr. Props. LLC v. Am. Airlines, Inc.* (*In re September 11th Litig.*), 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the

14

Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest. *Id.* Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks. *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. *MDL*, ECF No. 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. *MDL*, ECF No. 3384 at 6. Thereafter, in *Burnett II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in the *Hoglan* and *Burnett* matters, applying the 4.96 percent rate to prejudgment interest, the *Rowenhorst II* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

**Conclusion**

For all of the reasons herein, plaintiffs respectfully request: (1) judgment as to damages on behalf of the *Rowenhorst II* Plaintiffs identified on Exhibit A only, which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent, in the same per plaintiff amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, and other cases; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages; and (3) permission for such plaintiffs to seek punitive damages and economic and other appropriate damages at a later date.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Jerry S. Goldman, Esq.
ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Jeffrey E. Glen, Esq.
Vianny M. Pichardo, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel:    212-278-1000
Fax:    212-278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        jglen@andersonkill.com
        vpichardo@andersonkill.com

Arthur R. Armstrong, Esq.
*(pro hac vice)*
1760 Market Street, Suite 600
Philadelphia, PA  19103
Tel:    267-216-2711
Fax:    215-568-4573
Email:  aarmstrong@andersonkill.com
*Attorneys for Plaintiffs*

</div>

Dated:  August 20, 2019
        New York, New York

16