# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Chang Dom Kim et al. v. Islamic Republic of Iran, 1:18-cv-11870 (GBD) (SN)*

## <u>THE *KIM* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL FINAL JUDGMENT II</u>

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Jeffrey E. Glen, Esq.
Vianny M. Pichardo, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel:    212-278-1000
Fax:    212-278-1733
Email:  jgoldman@andersonkill.com
           bstrong@andersonkill.com
           jglen@andersonkill.com
           vpichardo@andersonkill.com

Arthur R. Armstrong, Esq.
*(pro hac vice)*
1760 Market Street, Suite 600
Philadelphia, PA  19103
Tel:    267-216-2711
Fax:    215-568-4573
Email:  aarmstrong@andersonkill.com

Dated:  August 20, 2019
          New York, New York

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   Procedural Background ................................................................................................ 4

II.  Damages ...................................................................................................................... 4

    A.  Solatium Damages ................................................................................................ 5

    1.  Individuals Not Named in the Complaint Entitled to Solatium Damages ...................... 8

        **(a)**  *Elizabeth Ann Kiel, sibling of John Joseph Florio* ................................................ 9

        **(b)**  *John Florio, parent of John Joseph Florio* ............................................................ 9

    2.  Functional Equivalents of Immediate Family Members ................................................ 10

        **(a)**  *Margaret Williams, sibling equivalent of Peggie Maxine Hurt* ............................ 11

        **(b)**  *Christine Wilson, Katherine Wynn, Edith Harris, Estate Of Lelia Wynn, And Estate Of Dorothy Coles* .................................................................................................... 13

    B.  Punitive Damages .................................................................................................. 18

    C.  Prejudgment Interest ............................................................................................. 19

Conclusion ......................................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baker v. Socialist People's Libyan Arab Jamahirya*,
  775 F. Supp. 2d 48 (D.D.C. 2011) .......................................................................19

*Belkin v. Islamic Republic of Iran*,
  667 F. Supp. 2d 8 (D.D.C. 2009) ...........................................................................6

*Estate of Bland v. Islamic Republic of Iran*,
  831 F. Supp. 2d 1 50, 156 (D.D.C. 2011) ..........................................................6, 18

*Dammarell v. Islamic Republic of Iran*,
  281 F. Supp. 2d 105 (D.D.C. 2003), vacated on other grounds, 404 F. Supp.
  2d 261 (D.D.C. 2005) ............................................................................................6

*Estate of Heiser v. Islamic Republic of Iran*,
  466 F. Supp. 2d 229 (D.D.C. 2006) .......................................................................6

*Sullivan v. Ford Motor Co.*, No. 97-CV-0593 (RCC), 2000 WL 343777 (S.D.N.Y.
  Mar. 31, 2000)......................................................................................................17

*Surette v. Islamic Republic of Iran*,
  231 F. Supp. 2d 260 (D.D.C. 2002) .......................................................................6

*Valore v. Islamic Republic of Iran*,
  700 F. Supp. 2d 52 (D.D.C. 2010) ......................................................................5, 6

*World Trade Farmers Market, Inc. v. American Airlines, Inc.* (*In Re: September
  11th Litigation*),
  2015 U.S. App. LEXIS 16619 (2d Cir. Sept. 17, 2015) .........................................9

**Statutes**

28 U.S.C. § 1605A(a)(1)................................................................................................4

28 U.S.C. § 1605A(c)(4)...........................................................................................4, 18

Federal Air Transportation Safety and System Stabilization Act ("ATSSSA")
  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. §
  40101) ..............................................................................................................19, 20

N.Y. Surr. Ct. Proc. Act Law § 1414 (Consol., Lexis Advance through 2019
  released Chapters 1-147, except for 96 and 106)....................................................3

# INTRODUCTION

For the reasons set forth below, and the statements contained in the declaration of Jerry S. Goldman, Esq., which is filed contemporaneously with this memorandum of law, along with the exhibits appended thereto (the "Goldman Declaration"), certain plaintiffs in the above-referenced matter who are identified on Exhibit A to the Goldman Declaration (collectively, the "*Kim II* Plaintiffs") by and through their counsel, Anderson Kill, P.C., respectfully move this Court to award solatium damages for the losses suffered by the relatives[1], or functional equivalents thereof, of an individual killed as a result of the terrorist attacks on September 11, 2001 ("9/11 decedent"), in the same amounts previously awarded by this Court to other similarly situated plaintiffs against the Islamic Republic of Iran ("Iran"); award prejudgment interest on those damages; and permit the *Kim II* Plaintiffs to seek punitive damages and economic and other appropriate damages at a later date, for the reasons set forth below.  This motion is made only on behalf of the *Kim II* Plaintiffs listed in Exhibit A attached to the Goldman Declaration,[2] which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent.

---

[1] The plaintiffs listed on Exhibit A are the relatives, or functional equivalents of a relative, of a 9/11 decedent.  In the case of a relative who died subsequent to the 9/11 decedent, the claim is brought by the personal representative of the relative's estate.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative, except in the following cases: (1) the deceased relative Cecil Mohammed Ishmael Hafiz where Bebe Hafiz has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not yet been granted; and (2) the deceased relative Herman W. Hall where Douglas Hall has filed a petition to be so appointed, which petition, on information and belief, is unopposed, but has not been granted.  Goldman Decl. at ¶ 5.  N.Y. Surr. Ct. Proc. Act Law § 1414 (Consol., Lexis Advance through 2019 released Chapters 1-147, except for 96 and 106).

[2] Exhibit A only includes plaintiffs who intend to submit US VSST applications in 2019.  The *Kim* plaintiffs who are not included on Exhibit A have either already filed a motion for liability and damages (*In Re Terrorist Attacks on September 11, 2001*, No. 03-md-1570, ECF Nos. 4841-4844) or intend to file a motion seeking damages at a later date.

As the awards set forth in the attached proposed order represent the only direct recovery against Iran on behalf of the *Kim II* Plaintiffs, any award issued to those individuals will constitute final awards and judgments against the Islamic Republic of Iran for those solatium claimants listed in Exhibit A to the Goldman Declaration.

## I. Procedural Background

On August 14, 2019, certain *Kim* Plaintiffs filed a Motion for Default Judgment Against the Islamic Republic of Iran for Liability and Damages. *In Re Terrorist Attacks on September 11, 2001*, No. 03-md-1570, ECF Nos. 4841-4844 (hereinafter "*MDL*").

The moving *Kim II* Plaintiffs listed on Exhibit A[3] now seek: (1) judgment as to damages in the same amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, and other cases; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; and (3) permission for such plaintiffs to seek punitive damages and economic and other appropriate damages at a later date.

## II. Damages

Section 1605A of the Foreign Sovereign Immunities Act ("FSIA"), permits a foreign state to be held accountable for acts of terrorism or the provision of material support or resources for acts of terrorism where the acts or provision of support or resources were engaged in by an official, employee, or agent of the foreign state while acting within the scope of his or her office, employment, or agency. 28 U.S.C. § 1605A(a)(1). The statute specifies that damages are available "for personal injury or death," § 1605A(a)(1) and (c)(4), and include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c)(4).  Courts

---

[3] Where a plaintiff's name is the subject of a pending Motion to Amend to Correct Errors, the corrected plaintiff's name is listed on Exhibit A.

addressing the damages available under the statute have held that, among other damages

recoverable, "family members can recover solatium for their emotional injury; and all plaintiffs

can recover punitive damages. *MDL*, ECF No. 2623 at 2-3 (quoting *Valore v. Islamic Republic of*

*Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010)).

Plaintiffs identified in Exhibit A are comprised of immediate family members or

functional equivalents of such family members of those killed on 9/11, as demonstrated by

documentary evidence of their familial relationship to a 9/11 decedent, such as birth or marriage

certificates, sworn affidavits, official documents or other documents signed under penalty of

perjury, which attest to a family relationship eligible for recovery, and, in the case of a

subsequently deceased family member, a death certificate or sworn affidavit which reflects that

the claimant did not predecease the 9/11 victim.[4]  *See* Goldman Decl. at ¶¶ 3-7.

Once liability has been established in this matter, each such family member will be

entitled to solatium damages in the amounts previously established and applied by this Court in

this and other related cases arising from the terrorists attacks on September 11, 2001 (the "9/11

Attacks").  In accordance with the terms of the FSIA, the Plaintiffs identified in Exhibit A are

entitled to compensation under Section 1605A for their solatium damages and are also entitled to

prejudgment interest.

## A.  Solatium Damages

As set forth above, the FSIA specifically provides for an award of solatium damages.

Under § 1605A, family members of a decedent may recover for "the mental anguish,

bereavement, and grief that those with a close relationship to the decedent experience as a result

of the decedent's death, as well as the harm caused by the loss of a decedent's society and

---

[4] Such evidence is consistent with that contemplated in the Court's July 10, 2018 Order, ECF
No. 4045.

comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).  Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  In cases brought under this exception to the FSIA, solatium claims have been treated as analogous to claims for the intentional infliction of emotional distress.  *See, e.g.*, *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "indistinguishable from the claim of intentional infliction of emotional distress" (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

When previously awarding solatium damages in other cases related to the 9/11 Attacks, such as those noted above, this Court looked at the framework established by District Court Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id.*  This formula, however, may be adjusted upward or downward when circumstances warrant.  *See, e.g.*, *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 1 50, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lambert's framework in *Heiser* was appropriate.  In *Havlish*, Judge Maas explained that an upward departure was warranted because the decedents' immediate family members suffered, and continue to suffer, "profound agony and grief" and "[w]orse yet, . . . are faced with frequent

6

reminders of the events of that day." *MDL*, ECF No. 2618, at 10-12.  Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families . . . ." *Id.* at 11.  In that Report, with which this Court later agreed, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the 9/11 Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

*Id.* at 11.

These exact amounts were adopted by this Court in its October 3, 2012 Order, *MDL*, ECF No. 2623, and were replicated in this Court's June 16, 2016 Order relating to the claims of certain of the *Ashton* Plaintiffs, *MDL*, ECF No. 3300, and in the September 12, 2016 Order pertaining to plaintiffs in the *Bauer* case, *MDL*, ECF No. 3341, and in the October 14, 2016 Report and Recommendation and October 31, 2016 Order in the *Hoglan* case, *MDL*, ECF Nos. 3363, 3384.  These amounts were, again, adopted by this Court in its April 24, 2018 Order relating to the claims of additional *Ashton* Plaintiffs, *MDL*, ECF No. 3977 at 6–7.  The same amounts were recently adopted in the Court's June 8, 2018 (Corrected) Order of Partial Final Default Judgment in the matter known as "Burnett/Iran II,"[5] No. 15-cv-09903, ECF No. 101.

---

[5] The same values were applied to the claims of other plaintiffs in the earlier *Burnett* case in this Court's order of July 31, 2017. *MDL*, ECF No. 3666.

The solatium losses suffered by the *Kim II* Plaintiffs before the Court in this application are legally and factually comparable to those suffered by the plaintiffs in the *Havlish*, *Ashton*, *Bauer*, *Hoglan* and *Burnett* cases. As such, Plaintiffs identified on Exhibit A respectfully request that the Court grant awards of solatium to the immediate family members and functional equivalents as identified on Exhibit A in the same amounts indicated herein, consistent with this Court's application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton*, *Bauer*, *Hoglan* and *Burnett* cases.

## 1.   Individuals Not Named in the Complaint Entitled to Solatium Damages

Pursuant to paragraph 5 of Section ii(d) of the Plaintiff's Executive Committee Letter, dated January 23, 2017, MDL, ECF No. 3433, which was adopted by the Court through Order, dated January 25, 2017, MDL, ECF No. 3435, individuals who are not named in the complaint, but are otherwise a member of the 9/11 decedent's family, are entitled to receive a judgment for solatium based upon their relationship to the 9/11 decedent and where there is a pending claim by the personal representative of that decedent's estate.  The letter provides "[i]n instances where a default judgment is sought by a personal representative in favor of a solatium claimant who is not a named plaintiff in the action in which the award is sought, counsel requesting the judgment will be asked to confirm that: (1) the personal representative has requested that a judgment be sought in favor of the solatium claimant; (2) the solatium claimant has been contacted and affirmed that he or she authorized the personal representative to seek the judgment in his or her favor; and (3) counsel has confirmed that the solatium claimant in favor of whom the judgment is being sought has not retained other counsel or been named in any other action or, if he or she has, that counsel has communicated with the claimant's counsel and received authorization to seek the judgment via the estate's representative."  MDL, ECF No. 3433.

8

      (a)     *Elizabeth Ann Kiel, sibling of John Joseph Florio*

Elizabeth Ann Kiel is an individual who is not named in the complaint but is otherwise a member of the 9/11 decedent's, John Joseph Florio, family entitled to receive a judgment for solatium based upon his family relationship, as the 9/11 decedent's sibling.  The personal representative of the relevant 9/11 decedent is a named party in this litigation and has complied with the Court's requirements pursuant to its January 25, 2017 Order.  *See* MDL, ECF No. 3435. Goldman Declaration at ¶ 24.

Accordingly, judgment should be entered in favor of Elizabeth Ann Kiel's favor as if they were named plaintiffs, in the same amounts indicated herein, consistent with this Court's application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton, Bauer, Hoglan* and *Burnett* cases.

      (b)     *John Florio, parent of John Joseph Florio*

John Florio is an individual who is not named in the complaint but is otherwise a member of the 9/11 decedent's, John Joseph Florio, family entitled to receive a judgment for solatium based upon his family relationship, as the 9/11 decedent's sibling.  The personal representative of the relevant 9/11 decedent is a named party in this litigation and has complied with the Court's requirements pursuant to its January 25, 2017 Order.  *See* MDL, ECF No. 3435.  Goldman Declaration at ¶ 25.

Accordingly, judgment should be entered in favor of John Florio's favor as if they were named plaintiffs, in the same amounts indicated herein, consistent with this Court's application of those values established and applied in *Havlish*, and subsequently adopted and applied to plaintiffs in the *Ashton, Bauer, Hoglan* and *Burnett* cases.

### 2.   Functional Equivalents of Immediate Family Members

The October 14, 2016 Report and Recommendation recommended that in addition to those individuals who are considered traditional "family members," damages could also be awarded to non-immediate family members who met certain criteria establishing that she or he had a relationship with the 9/11 decedent that was the "functional equivalent" to that of an immediate family member.  These categories of non-immediate family members included fiancées and domestic partners, step-relatives, aunts, uncles, nieces, nephews and cousins.  *See MDL*, ECF No. 3363.

In that report, three factors were identified as relevant to the determination of whether a close non-immediate family member was the "functional equivalent" of an immediate family member.  Those factors are: 1) long-term residence or co-habitation in the decedent's household; 2) whether the non-immediate family member ever played a guardian or custodian-like role in the 9/11 decedent's life or vice versa; and 3) whether the biological family member whose role the "functional equivalent" individual played was absent from the family life (i.e. did the non-immediate family member step in to play a "functionally equivalent" role because of the death or long-term absence of the biological family member).  *Id*. at 10-12. In weighing these different factors, the Court stated it would consider whether the non-immediate family member supported the decedent financially and emotionally, or vice versa, and whether the decedent and claimant shared in typical family activities like doing homework, eating dinner and vacationing together. *Id*.  With respect to same-sex domestic partners, the Court noted that "[i]n determining which partners qualify as being functionally equivalent to a spouse, the Court has considered the duration of the relationship, the degree of mutual financial dependence and investments in a common life together, the duration of cohabitation and the presence or absence of a formal engagement as important factors."  *Id*., pp. 14-15.  In previous cases, the Court relied on the

statements from the claimant about the nature and quality of the relationship with decedents. *Id.*, pp. 17-28.

The information in the declarations of the individuals for whom solatium damages are sought in this motion confirms that all functional equivalent plaintiffs, as reflected on Exhibit A to the Goldman Declaration, had the "functional equivalent" of a biological or spousal relationship and they are therefore entitled to an award for solatium damages.

        **(a)**    ***Margaret Williams, sibling equivalent of Peggie Maxine Hurt***
                    **Presumptive Award: $4.25 Million**
                    **Requested Award: $2.125 Million**

Peggie Maxine Hurt was an African-American United States Army employee who died on September 11, 2001 at the Pentagon, a mere two weeks after she had started their job there. Margaret Williams was the aunt of Peggie Maxine Hurt, and for the reasons set forth below, and in the accompanying Declaration of Margaret Williams ("Williams Decl.") annexed as Exhibit B to the Goldman Declaration, Plaintiffs submit Margaret Williams should be deemed a sibling equivalent.

Peggie Maxine Hurt was raised in an extended family in rural Virginia in which her six aunts, including Margaret Williams, raised her along with her biological mother until her mother died a few days before Peggie graduated from college.

In particular, Margaret Williams was raised in the same house as Peggie, by Peggie's grandparents – Margaret's mother and father – and by Peggie's mother until she passed away in 1987. As Margaret demonstrates in her Declaration of Familial Relationship, attached as Exhibit B to the Goldman Declaration, she and Peggie grew up as, essentially, sisters. Margaret therefore meets the first criterion for an award of solatium damages as a functional equivalent: co-residence from the time of Peggie's birth until her legal majority. *See* opinion of this Court

issued August 8, 2017, ECF No. 3676, adopted by, ECF No. 3795 ("*Hoglan IV*"), at 7, and

opinion of this Court issued August 5, 2019, ECF No. 4735 ("*Betru*""), at 2.

This Court has already determined that "stepsiblings who became part of the family when

the decedent was in early childhood (roughly until the age of eight) may be deemed fully

functional equivalent to biological … siblings and would be entitled to full solatium damages…"

*Betru,* at 3. The Court differentiated between instances in which the decedent and the stepsibling

were within the same household for their mutual minorities, and instances in which the

stepsibling entered the family when the decedent was age nine or above, allocating a "half

damages" award in such cases. *Betru*, at 4. And by citing to pages 15-16 of *Hoglan IV* in its

discussion of stepsiblings, it appears that the Court incorporated into its analysis the Court's

earlier statement that "The Court now clarifies that the ages of both 'functional equivalents of'

siblings are relevant in the inquiry, which is targeted at determining the degree to which the

claimant and the decedent 'grew up together' as brothers of sisters." *Id.*

The discussions in *Betru* and *Hoglan IV* are in the context of stepsiblings. Margaret did

not enter Peggie's life through a second marriage, as would a stepsister. Rather Margaret was in

Peggie's life from the time of Peggie's birth, in the role of an elder sister. *See* Margaret's

Declaration. That Margaret happened to be a blood aunt of Peggie, as well as her functional

sister, strengthens her claim for an award of solatium damages; they were family, not merely

functional equivalents of family.

Based on this Court's rulings, the appropriate award to Margaret would be one-half of the

damage award to a blood sister. In *Betru*, this Court awarded one-half of a sibling recovery to

Jeremy Krist, who was the stepbrother of decedent Christopher Burford. The award was one-

half of the scheduled sibling award because Jeremy and Christopher resided in the same home

for nine years; Christopher from age 13 – 22, Jeremy from age 10 – 19.[6]  In the instant case, while Peggie and Margaret resided in the same home for a full 21 years – from Peggie's birth in 1965 until she graduated college in 1987[7] – Margaret was 13 years old when Peggie was born. Thus, since the solatium award depends on both the decedent and the sibling to be sharing an upbringing while both are children, the relevant co-residence period should be considered to be six to eight years, ending when Margaret reached full adulthood.  *See* Goldman Decl., Ex. B: Williams Decl.

Based on Margaret Williams' extremely traumatic experience in losing her niece and more of a sister at the time of Peggy Maxine Hurt's death, Margaret Williams should be awarded one-half of the full solatium damages award otherwise awarded to the siblings of September 11, 2001 decedents ($2.125 Million).

> **(b)** ***Christine Wilson, Katherine Wynn, Edith Harris, Estate Of Lelia Wynn, And Estate Of Dorothy Coles, each parent equivalent of Peggie Maxine Hurt***
> **Presumptive Award: $8.5 Million**
> **Requested Award: <u>each</u> $8.5 Million**

In addition to Maggie Williams discussed above, Peggie Maxine Hurt also lived with five other aunts:  Christine Wilson, Katherine Wynn, Edith Harris, Lelia Wynn, and Dorothy Coles. For the reasons set forth below, and in the accompanying Declaration of Familial Relationship of Christine Wilson ("Wilson Decl."), Declaration of Familial Relationship of Katherine Wynn ("K. Wynn Decl."), Declaration of Familial Relationship of Edith Harris ("Harris Decl."), Declaration of Familial Relationship of Lelia Wynn ("L. Wynn Decl."), and Declaration of Familial

---

[6] While in *Hoglan IV* this court referred to the age of majority, age 18, in its discussion of siblings, the calculation of nine years of co-residence for Jeremy with Christopher includes Jeremy's 19th year.

[7] In her Declaration, Margaret quite properly notes that co-residency was no longer daily once Peggie left for college.  However, it is indisputable that Peggie's residence remained her grandparents' house where Margaret continued to live.

Relationship of Dorothy Coles ("Coles Decl.") annexed as Exhibits C-G to the Goldman

Declaration, respectively, Plaintiffs submit Christine Wilson, Katherine Wynn, Edith Harris,

Lelia Wynn, and Dorothy Coles each should be deemed a parent equivalent.

The Hurt family, like many extended families, raised their children communally.  As

stated by the pioneering Professor Elmer P. Martin in the Introduction to his seminal work,

> "[Extended families have been responsible for providing many black
> Americans over the generations with basic economic and emotional
> security.  Because it has generally been difficult for black Americans to
> participate fully in the dominant American society, they have had to rely
> heavily, although not exclusively, on the psychological and material support
> of relatives."[8]

Other than Margaret Williams, with whom Peggie lived and whose claim is analyzed

above, her five other aunts shared the "intense bonds of affection" demonstrating "almost

parental bonds" with Peggie.  That, according to this Court's *Hoglan IV* decision, is not enough

to enable them to obtain a judgment against the defendants.  While the determining concept is

that "immediate family" members can suffer severe emotional distress from outrageous conduct,

Restatement (Second) of Torts, section 46, this Court refused to allow aunt and uncles to claim

immediate fairly status unless, inter alia, they co-habited with the decedent.  *Hoglan IV*, at 5.

Counsel is well aware of this Court's admonition "to use the utmost discretion in bringing

future solatium damages claims on behalf of non-immediate family members."  *Hoglan IV*, at 22.

However, we respectfully urge that there is one critical fact which differentiates the five aunts of

Peggie Hurt from, as far as we know, and other plaintiffs in this litigation.

The Victim Compensation Fund ("VCF"), in the period 2002 – 2004, not only accepted

claims from the five aunts (as well as to aunt Margaret Williams) as immediate family members,

---

[8]The Introduction, The Black Extended Family, University of Chicago Press 1978, which is
Exhibit H to the Goldman Declaration is not paginated.  The quotation is from the first page
thereof.

but granted economic damages to the six aunts in the sum of $580,422.15.[9]  In October of 2002,

Peggie's father, Arthur Harris, had applied to the VCF for full compensation as the surviving

biologic parent.  His claim was given number 212-000904.  At least four of Peggie's aunts

opposed the claim.

A document obtained in the last few weeks from the VCF by way of a year old FOIA

request reads as follows:

"Notable issues for Claim 212-000904

Issue:        An objection/statement of interest was received from the
maternal Aunt of the claimant.  According to the Aunt, the victim was
raised by her mother who lived with her parents.  The victim's biological
father played a minimal role in her life.  In fact, the aunt claims that 'Peggie
[the victim] saw Mr. Harris [the biological father] less than fifteen times in
her life.'

Suggested Resolution: The objector (the Aunt of the victim) asks the
following: 'I ask the Special Master to exercise his discretion to deviate
from Virginia's intestacy statue [sic] and ensure that the family Peggie [the
victim] knew and loved receives the award."  Goldman Declaration, at
Exhibit J.

Regrettably, the materials received from the VCF, which are not Bates stamped, do not

include the "objective/statement of interest" referred to in the quoted document, nor does the

document indicate by whom it was written.  However, another document from the VCF, headed

"Claim Action Report for Claim 212-000904" contains the following statement:

"Action: call from claimant.

Created date:  02/05/2003.

Comments:  Claimant called for status.  Told him SM [presumably Special
Master?] reviewing claim, told him four parties objected.  He was upset he
says he has the court order and the other people the aunts and cousins want
money…."  Goldman Declaration, at Ex. K.

---

[9] The award letters from the VCF are, collectively, Exhibit I to the Goldman Declaration.

Shortly thereafter, apparently two hearings were held by Deputy Special Master

Jacqueline Zins.  On April 30, 2003, she wrote a "Hearing Decision", which we reproduce here

in its entirety:

**HEARING DECISION**:  HURT, PEGGIE (212-000904A)

**Hearing Date**:  April 30, 2003

**Presiding**:  Jacqueline Zins

**Decision**:  Two separate hearings were held to determine the appropriate
allocation for the claim, filed by Arthur Harris, the Personal Representative
of the decedent, Peggie Hurt.  In the first hearing the decedent's maternal
aunts testified that they were entitled to the award.  In the second hearing
the decedent's father testified that he was entitled to the award.  The Federal
Regulations governing the September 11 Victim Compensations Fund
provide that:

> *Notwithstanding any other provision of these regulations or any
> other provision of state law*, in the event that the Special Master
> concludes that the Personal Representative's plan for distribution
> does not appropriately compensate the victim's spouse, children or
> other relatives, the Special master may direct the Personal
> Representative to distribute all or part of the award to such spouse,
> children or other relatives.  (28 C.F.R. § 104.52, emphasis
> supplied)

Based on testimony elicited at the hearings, the award is allocated as
follows:  non-economic damages of $250,000 are awarded to Arthur Harris,
the biological father of the decedent; economic damages of $580,422.15 are
awarded to the decedent's maternal aunts.
Goldman Declaration, at Exhibit L, emphasis in original.

The five aunts respectfully submit that the criteria apparently used by the Special Master

at the Victims' Compensation Fund, allocating damages to "other relatives" who evidently

persuaded the Special Master that they, and not an absent biological parent, were entitled to

16

share a full damage award, ought to be applied by the Court here.[10]  Just as this Court divided a stepsibling's share to reflect the particularities of Burford family in *Betru*, such a division, modeled on the VCF division of a full share amongst Peggie's aunts, would appear to be appropriate here.

The five aunts recognize the reasonableness of the Court's determination that to open the claims process to family member other than spouses, parents, children, and siblings in all but the rarest cases would both present a nearly insurmountable case management problem and would encourage relatives who can show no more than intense love and affection to engage in ultimately fruitless re-living of the horror of losing a relative on 9/11.

But their claim here rests on the additional fact that their entitlement to an award was recognized by the initial tribunal which addressed this precise issue, the Victims Compensation Fund.  This is an independently verifiable limiting qualification for consideration for an award, just as the existence of a Court Order granting custodian rights and responsibilities was an independently verifiable limiting qualification in *Sullivan v. Ford Motor Co.*, No. 97-CV-0593 (RCC), 2000 WL 343777 (S.D.N.Y. Mar. 31, 2000), analyzed and applied in *Hoglan IV*, at 9. As far as counsel is aware, there is no other examples of plaintiffs who were members of a decedent's extended family and as such obtained the economic loss portion of a VCF award,

---

[10] Mr. Harris apparently received $250,000 from the VCF because of a VCF rule that the indicated sum was to be awarded to any party which took under a will or under the laws of intestacy of the jurisdiction of which the decedent was a citizen.  "In our fund, of this particular award, $250,000 flows through the estate, and the remainder of it is economic damages." Statement of Deputy Special Master Zins at a telephonic hearing at which she took the testimony of Mr. Harris and his attorney.  Harris' attorney argued to the Deputy Special Master that economic damages should be awarded to his client, apparently without success. The relevant section from the transcript of that hearing is Exhibit M to the Goldman Declaration.  Regrettably, the hearing at which the aunts testified, according to the Zins decision, does not seem to have been recorded.  At least only the transcript of the Harris hearing was provided by the VCF in its FOIA response.

over the objection of an absent biological parent.  To make an award to the five aunts here would

not open a sluice, let alone a floodgate, to additional analogous applications.

Based on each of the aunts' (Christine Wilson, Katherine Wynn, Edith Harris, Lelia

Wynn, and Dorothy Coles) extremely traumatic experience in losing their niece and more of a

daughter at the time of Peggy Maxine Hurt's death, each of these aunts should be awarded the

full solatium damages award otherwise awarded to a parent of September 11, 2001 decedents.

### B.  Punitive Damages

Under the FSIA, plaintiffs are also entitled to punitive damages.  28 U.S.C.

§ 1605A(c)(4).  In the *Havlish* Report and Recommendation on Damages, the magistrate judge

explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising

out of' terrorist attacks."  *MDL*, ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic

of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and

awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive)

to 1 (compensatory).  *MDL*, ECF No. 2623 at 2.  The Court has applied that ratio to awards for

plaintiffs in other related cases.  *See, e.g.*, *MDL*, ECF No. 3175 at 3 (Magistrate Judge Maas

Report and Recommendation to apply a 3.44 punitive multiplier); *MDL*, ECF No. 3229 at 1

(Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a

3.44 multiplier); *MDL*, ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying a 3.44 punitive

multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for

punitive damages be denied without prejudice.  *MDL*, ECF No. 3363 at 28.  Judge Daniels

adopted Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request

for punitive damages.  *MDL*, ECF No. 3384 at 6.

18

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date.  *See, e.g.*, *MDL*, ECF No. 3666 (Judge Daniels' order in *Burnett*, authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

## C. Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001 until the date of judgment.  *MDL*, ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as this case, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See MDL*, ECF Nos. 3229 at 2; 3300 at 1; 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air

Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *World Trade Ctr. Props. LLC v. Am. Airlines, Inc.* (*In re September 11th Litig.*), 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id.*  Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims.  *MDL*, ECF No. 3363 at 28-29.  Judge Daniels adopted Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims.  *MDL*, ECF No. 3384 at 6.  Thereafter, in *Burnett II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

In light of the Court's decisions in the *Hoglan* and *Burnett* matters, applying the 4.96 percent rate to prejudgment interest, the *Kim II* Plaintiffs identified in Exhibit A respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

**Conclusion**

For all of the reasons herein, plaintiffs respectfully request: (1) judgment as to damages on behalf of the *Kim II* Plaintiffs identified on Exhibit A only, which includes individuals who are not named in the complaint but are entitled to receive judgments for solatium based on their relationship to the 9/11 decedent, in the same per plaintiff amounts previously awarded by this Court to various similarly situated plaintiffs in *Burnett*, *Havlish*, *Ashton*, *Bauer*, and other cases; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages; and (3) permission for such plaintiffs to seek punitive damages and economic and other appropriate damages at a later date.

Respectfully submitted,

/s/ Jerry S. Goldman, Esq.

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Jeffrey E. Glen, Esq.
Vianny M. Pichardo, Esq.
1251 Avenue of the Americas
New York, NY  10020
Tel:    212-278-1000
Fax:    212-278-1733
Email:  jgoldman@andersonkill.com
        bstrong@andersonkill.com
        jglen@andersonkill.com
        vpichardo@andersonkill.com

Arthur R. Armstrong, Esq.
*(pro hac vice)*
1760 Market Street, Suite 600
Philadelphia, PA  19103
Tel:    267-216-2711
Fax:    215-568-4573
Email:  aarmstrong@andersonkill.com
*Attorneys for Plaintiffs*

Dated:  August 20, 2019
        New York, New York