UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |
|---|---|

This document relates to: All Cases

**REPLY MEMORANDUM TO THE KINGDOM OF SAUDI ARABIA'S OPPOSITION TO PLAINTIFFS' OBJECTIONS TO ORDER & OPINION SEALING JUDICIAL FILINGS**

**PLAINTIFFS EXECUTIVE COMMITTEES**

COZEN O'CONNOR
Sean P. Carter, Esquire
1650 Market Street, Suite 2800
Philadelphia, PA 19103

On behalf of the MDL 1570 Plaintiffs'
Exec. Committee for Commercial Claims

KREINDLER & KREINDLER
Steven R. Pounian, Esquire
Andrew J. Maloney, III, Esquire
Megan W. Benett, Esquire
750 Third Avenue, 32nd Floor
New York, NY 10017

On behalf of the MDL 1570 Plaintiffs'
Exec. Committee for Personal Injury and
Death Claims

MOTLEY RICE
Robert T. Haefele, Esquire
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

On behalf of the MDL 1570 Plaintiffs'
Exec. Committee for Personal Injury and
Death Claims

**TABLE OF CONTENTS**

**1. Plaintiffs' Objections to the Magistrate Judge's Sealing Order are Timely** ...................... 1

**2. Invocation of International Treaties Does Not Establish the Necessary "Higher Values" to Warrant Sealing Judicial Filings in this Case of Extraordinary Public Interest** ........... 6

**3. Nor Does "International Comity" Warrant Sealing Here** ................................................. 7

**4. The Magistrate Judge Did Not Make the Necessary Individualized Findings** .............. 9

**5. Conclusion** ............................................................................................................................. 10

**1. Plaintiffs' Objections to the Magistrate Judge's Sealing Order are Timely**

Plaintiffs' objections to the Magistrate Judge's procedure for sealing judicial filings as adopted in her July 22, 2019 Opinion & Order (ECF No. 4696) are timely.  Since August 2018, Plaintiffs have repeatedly challenged the Kingdom's proposal for presumptively sealing judicial filings of materials that a party had unilaterally designated as "confidential" during discovery, as it was in conflict with the existing Protective Order (ECF No. 1900).

On July 31, 2018 the Kingdom requested that:

> this Court order that judicial filings containing or discussing documents designated as confidential by Saudi Arabia (or information derived from such documents) must be temporarily sealed for two weeks. During those two weeks, Saudi Arabia will have an opportunity to move to maintain any portion of the filing under permanent seal. If it makes such a motion, Saudi Arabia will (as required by ¶ III(d) of Your Honor's Individual Practices) endeavor to make the specific showing required by *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), as to the material at issue. If Saudi Arabia does not make such a motion within two weeks, or if the motion is denied, the Clerk will place the sealed filing on the public docket.

ECF No. 4077, Filed 07/31/18.  Plaintiffs promptly objected to the proposed modification of the existing Protective Order, raising the same points as raised in their current objections to the Magistrate Judge's Opinion & Order. ECF No. 4116, Filed 08/21/18.

On August 27, 2018 the Magistrate Judge denied the Kingdom's "motion to supplement the [existing] protective order." ECF No. 4125, Filed 08/27/18.  The August 27, 2018 Order directed parties to comply with the existing Protective Order and the Magistrate Judge's Individual Practices. ECF No. 4125 at 3.  The existing Protective Order allows a party to designate *only* discovery documents as "confidential" and specifically rejects a defense request to impose a blanket rule requiring that any document marked "confidential" by a defendant be filed with the Court under seal. *See* ECF No. 1900 at 6, 16.  This was because the existing Protective Order recognized that while it was allowing producing parties to unilaterally designate materials as "confidential" merely upon "general assertions of good cause" – a lower standard than would apply to judicial filings –

1

that showing was "not sufficient … to warrant a protective order covering all 'judicial documents,' particularly those submitted to the Court in connection with … motions." ECF No. 1900 at 5 – 6.

Accordingly, over the course of this litigation, Plaintiffs have filed judicial documents on the public docket notwithstanding that various defendants had marked those items as "confidential" when produced in discovery.[1] As doing so was consistent with the existing Protective Order, the defendants who produced those "confidential" materials never objected to this practice.

The Magistrate Judge's Individual Rules direct a party that "wishes to file a document containing information that has been designated as confidential" during discovery to "meet and confer to discuss whether the information should be filed under seal" and even if the filing party disagrees about the need to keep information under seal, that party must "file the information on the docket" with redactions. ECF 4125 at 2. That rule, however, does not account for the loosened "good cause" in the existing Protective Order for designating discovery materials as "confidential" (as opposed to the heightened, specific showing of harm that a party ordinarily would have been required to establish prior to designating a document as confidential in any other case.)

According to the August 27, 2018 Order, the existing Protective Order remained in place and the Kingdom's request for a two-week presumptive sealing period for judicial filings was

---

[1] For example, the following public filings included documents that had previously been marked "confidential" by defendants Yassin Kadi, Dubai Islamic Bank, Dallah Avco, Muslim World League, International Islamic Relief Organization and World Assembly of Muslim Youth. Plaintiffs' August 10, 2015 Motion to Compel as to Defendant Wa'el Hamza Jelaidan (ECF No. 2989), attaching documents marked "confidential" at Exhibits E (KADI 52039-40), T (WAMYSA 63930-31), HH (KADI 39556-660); and OO (KADI 73784); Plaintiffs' December 11, 2015 Reply Motion to Compel as to Defendant Dubai Islamic Bank (ECF No. 3164), attaching documents marked "confidential" at Exhibits A (DIB 3242-44); B (DIB 3245-3249); C (DIB 3251-3258); D (DIB 3467-90); E (DIB 3508); F (DIB 3414-16); G (DIB 3435-38); and H (DIB 3393); Plaintiffs' February 6, 2016 Reply Motion to Compel as to Defendant Dallah Avco (ECF No. 3211), attaching documents marked "confidential" at Exhibits P (DA 1104); R (DA 1116); S (DA 1104); T (DA 1116); and U (DA 1345); Plaintiffs' January 26, 2018 Reply Motion to Compel as to Defendants MWL and IIRO (ECF Nos. 3892-93), attaching documents marked "confidential" at Exhibits 3 (IIRO 149637); 5 (IIRO 130888-890); and 6 (IIRO 149642-644); Plaintiffs' February 28, 2018 Motion to Compel as to Defendant WAMY (ECF Nos. 3911-12), attaching documents marked "confidential" at Exhibits 11 (WAMY 51692-98); 12 (WAMY SA E 1124-33); 14 (WAMY SA 4443); 18 (WAMYSA 51643-54); 22 (WAMYSA 29462, 57745-51, 9713); 28 (WAMYSA 2444, 2973); 29 (WAMY INTL E 1405); 30 (WAMY INTL E 1366-70).

rejected. Plaintiffs had no objection to the existing Protective Order, which the August 27, 2018 Order proclaimed to reaffirm. Only upon seeking to file materials that the Kingdom had designated as "confidential" during discovery based on "general assertions of good cause," however, were Plaintiffs required to abandon the process in the existing Protective Order.

To the extent that the August 27, 2018 Order could be interpreted as deviating from the existing Protective Order, Plaintiffs promptly raised objections in an October 26, 2018 letter-motion requesting that the Magistrate Judge "reaffirm[] that they may publicly file with the Court the discovery documents produced by the Kingdom of Saudi Arabia … ." ECF No. 4235 at 1, Filed 10/26/18. While that letter-motion specifically concerned certain materials that would be part of forthcoming discovery motion practice, Plaintiffs also expressly identified the potential conflict between the existing Protective Order and the Magistrate Judge's Individual Practices. ECF No. 4235 at 1 – 2. The Magistrate Judge never ruled on that portion of the Plaintiffs' October 26, 2018 letter-motion.

Two more times Plaintiffs objected to a sealing procedure that would rely on the Kingdom's unilateral designation of nearly two-thirds of the material it produced in discovery as "confidential" and require that those items remain presumptively sealed. *See* ECF Nos. 4286 at 2, Filed 12/17/18; and 4373, Filed 01/22/19. On February 26, 2019, the Magistrate Judge heard argument on the sealing dispute. ECF No. 4398. On July 22, 2019, the Magistrate Judge issued its ruling. ECF No. 4696, Filed 07/22/19. That ruling still does not respond to Plaintiffs' objections to the sealing process but only addresses the sealing of specific items.

The Kingdom maintains that the Magistrate Judge's procedure is "perfectly consistent" with the existing Protective Order, because the existing Protective Order "prohibits parties from disclosing to the general public documents that have been designated confidential and requires parties to 'make an appropriate application to the Court' if they wish to disclose such material more

3

broadly." Kingdom of Saudi Arabia Opposition at 8. That, however, incorrectly conflates "disclosing to the general public" documents that are exchanged during discovery and judicial filings. The existing Protective Order expressly does "not apply to any Disclosure or Discovery Material filed with the Court … as an exhibit or other attachment to a motion … ." ECF No. 1900 at 16. Indeed, because the existing Protective Order allows producing parties to designate discovery materials as "confidential" merely upon the loosened "good cause" showing, that designation was "not sufficient … to warrant a protective order covering all 'judicial documents,' particularly those submitted to the Court in connection with … motions." ECF No. 1900 at 5 – 6. This was so because "[t]he public's right of access to the court and judicial process is at its 'apogee' with respect to such documents … ." *Id.* at 5, citing *Gambale v. Deutsche Bank AG*, 377 G.3d 133, 140 (2d Cir. 2004). "Thus, although the Court … permit[ted] the parties to designate particular discovery material as confidential and subject to heightened protections, the Court [did] not permit such materials to be filed under seal pursuant to the Defendant's Committee's current application." ECF No. 1900 at 6. Other than the July 31, 2018 request, which the Magistrate Judge denied, the Kingdom has never made any other application for modifying the sealing procedure set forth in the existing Protective Order.

Yet the effect of the July 22, 2019 Opinion & Order is to undo the existing Protective Order and to allow defendants to rely on the "confidential" designations made during discovery as the basis for forcing Plaintiffs to file information relating to motions under seal, with judicial documents remaining foreclosed from public scrutiny for months on end based only on unilateral "confidentiality" designation made during discovery. This is wholly inconsistent with the existing Protective Order.

Nor is the Magistrate Judge's process consistent with governing Supreme Court law. When discovery materials filed with a court, the common law right of the public "to inspect and copy …

4

judicial records and documents" is implicated and gives rise to a presumption of access to judicial documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). As the Second Circuit has held, this "presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Recognizing the critical value of being able to contemporaneously discuss the subject matter of the judicial filings with their clients and the public and seeking to preserve those values served by prompt public access to judicial filings, Plaintiffs in their August 2018, October 2018, December 2018 and January 2019 filings objected to any interpretation of the Protective Order that would require them to make a pre-filing showing that judicial documents need not be sealed. They argued that the procedure that the Kingdom proposed – and that the Magistrate Judge now has implicitly adopted, notwithstanding the language of the August 27, 2018 Order –would keep documents sealed while the parties waited for a ruling on any disputes and would thus inevitably violate the public's right to immediate access to judicial documents. And, indeed, this concern has proven true. It took eight months between filing the specific materials at issue in the discovery dispute to obtain a ruling on them being sealed. Such a long delay violates the Second Circuit's command that sealing disputes must be addressed "quickly" as "to delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Lugosch*, 435 F.3d at 127.

For nearly a year, Plaintiffs have raised and re-raised their objections to a process that requires them to defer to the Kingdom's unilateral confidentiality designations when filing judicial documents. The practice that the Magistrate Judge has adopted improperly shifts the burden of establishing what higher values outweigh the presumption of immediate public access to judicial filings to Plaintiffs. As the existing Protective Order contemplated, if the Kingdom believes that a

5

document produced during discovery must be sealed if filed with the Court, then the Kingdom must demonstrate why such sealing is necessary, and should do so contemporaneous with its document production – not in a way that thwarts the public's right to review the materials at the time the issues those materials bear on are being litigated.

### 2. Invocation of International Treaties Does Not Establish the Necessary "Higher Values" to Warrant Sealing Judicial Filings in this Case of Extraordinary Public Interest

Again, the Kingdom invokes diplomatic and consular treaties as, alone, sufficient to override the presumption of public access to judicial filings.[2] This cannot, however, warrant sealing for two reasons. First, the Magistrate Judge did not engage in the individualized assessment necessary to determine whether each document should remain under seal and why. Second, the diplomatic and consular protections at most only (1) justify maintaining premises or archives beyond the reach of judicial process and once the Kingdom produced materials they cannot invoke the treaties in support of sealing;[3] and (2) concern archives relating to the diplomatic or consular "mission," which the Kingdom's discovery materials do not.

Saudi Arabia heavily relies on the Second Circuit's decision in *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to United Nations*, 988 F.2d 295 (2d Cir. 1993). That case involved a non-payment and physical eviction proceeding brought by a private landlord following the Zairian mission's repeated failure to pay rent. *Id.* Reversing the district court's order that the

---

[2] As to docketing, it is unclear whether the Kingdom is submitting unredacted filings to the Southern District of New York's Records Management Office as the court's rules require. *See* http://nysd.uscourts.gov/cases_records.php?records=sealed_records. Doing so is necessary to maintain a complete record and to the extent that any party or non-party's unredacted filings have not been filed with the Records Management Office, this Court should order filers to correct that error and to submit unredacted copies of under seal filings to the Records Management Office going forward.

[3] Had it chosen to, the Kingdom could either have refused to produce discovery or could have provisionally produced discovery materials subject to assurances that the items would have been sealed. It opted not to do so, willingly produced the items – presumably to argue that it was proceeding with the discovery process in good faith – and should not now be able to retrospectively cloak freely produced discovery materials in the "inviolability" of the Vienna Conventions on Diplomatic or Consular Relations.

mission be forcibly evicted, the appeals court recognized the "inviolability" of a mission property as it related to "diplomatic relations." *Id.* at 300. In addition to holding that foreign missions were a core part of "diplomatic relations," the Second Circuit also explained that the sovereignty of mission premises protected against their physical intrusion "through blanket immunities and privileges without exception." *Id.*

Here, however, there is no prospective physical intrusion into embassy or consular premises. Further, the Kingdom is not arguing that the documents it found at various diplomatic, consular or mission premises be held "inviolable" and immune from judicial reach but, instead, that the documents it freely produced be hidden from public inspection. This effort to graft the inviolability protections, which provide "blanket immunities," into an argument in favor of maintaining judicial filings under seal is wholly unprecedented. Indeed, all of the cases that the Kingdom cites in support of its argument that the Conventions justify maintaining judicial filings under seal concern the refusal to produce materials or the protection of physical premises – not sealing requests. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1060 (2019) (service by mail to embassy potentially in tension with Vienna Convention on Diplomatic Relations inviolability of premises provision); *767 Third Ave.*, 988 F.2d 295 (marshalls cannot enter mission premises to effect forcible eviction); *Ewald v. Royal Norwegian Embassy*, 2013 WL 6094600 (D. Minn. Nov. 20, 2013) (Vienna Convention on Consular Relations provided basis for consulate's refusal to produce requested discovery).

This Court should reject the Kingdom of Saudi Arabia's extraordinary effort to use the Vienna Conventions on Diplomatic and Consular Relations as cover for their wholesale sealing of documents upon which Plaintiffs are relying in a case of exceptional public importance.

### 3. Nor Does "International Comity" Warrant Sealing Here

As for international comity, the cases that Saudi Arabia cites support Plaintiffs' objections. In *El Omari v Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399 at * 14 (S.D.N.Y. Aug. 18,

2017), the court issued a ruling concerning a single document – a White Paper – and made extensive findings about why that particular document bore the indicia of being "highly sensitive, 'traditionally nonpublic government information[.]'" *Id.*  In support of its ruling, the court relied not only on "international comity" but also its findings that "the White Paper reflects "critical self-analysis" by the [Ras Al Khaimah Free Trade Zone Auth.] and is therefore privileged … , plaintiff already has the White Paper … and … no other person has sought to unseal the document." *Id.*  Here, however, the Magistrate Judge made general conclusions unsupported by individualized findings on a document-by-document basis, the Plaintiffs (as opposed to counsel) do not have access to the information in the sealed materials and the New York Times has filed a letter of interest in the sealed materials and *El Omari* is thus inapplicable.

This is true as well for the two other cases upon which the Kingdom relies in making the "international comity" argument.  In *Strauss v. Credit Lyonnais*, 2011 WL 4736359 at * 5 (E.D.N.Y. Oct. 6, 2011), the court relied not only on "international comity" but also "bank secrecy, privacy interests … and the marginal importance of access to the bank records to understanding the motions to be filed" in sealing a limited number of materials.  In *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 893 F.Supp. 2d 715, 745 n 26 (D. Md. 2012), *rev'd and remanded on other grounds*, 744 F.3d 279 (4th Cir. 2014), the court relied in part on the fact that there was "apparently minimal interest in full public disclosure of the documents at interest" because no party opposed the sealing effort.  Additionally, in *Millennium Inorganic,* the materials under seal "were taken in the court of a foreign nation pursuant to letters rogatory" and that process could only proceed in a "spirt of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Id.,* quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa,* 482 U.S. 522, 543 n. 27 (1987).  Here, in contrast, Plaintiffs have long contested efforts to seal materials and so the "apparently minimal interest in full public disclosure"

cannot support a sealing order. Further, the Kingdom of Saudi Arabia is hardly appearing in the instant lawsuit because of the "spirit of cooperation" that justified the *Millennium Inorganic* court's decision to seal certain materials. Rather, the Kingdom is a most reluctant defendant, having failed in its costly efforts to get Congress or the White House to defeat the Justice Against Sponsors of Terrorism Act. *See* Voice of America News, "Report Says Saudi-hired Lobbyists Give Millions to Influence US Congress," Oct. 30, 2018 (reporting that Saudi Arabia's U.S. lobbyists gave more than $2.3 million to U.S. lawmakers in 2016 and 2017, with opposition to JASTA being the most frequent lobbying message); Politico, "Saudi lobbyists plot new push against 9/11 bill," Sept. 26, 2016. There is no reason to extend the "courtesy" of sealing on the basis of "international comity and foreign relations" in this case.

### 4. The Magistrate Judge Did Not Make the Necessary Individualized Findings

Even if the Vienna Conventions could justify sealing, the Magistrate Judge would have had to have engaged in an individualized assessment of each document's relationship to the diplomatic or consular mission in order to decide if the document had to be sealed.

However, as Plaintiffs set forth in their opposition – and as the Kingdom seems to concede, relying primarily on the fact that materials were produced from a diplomatic or consular office (even if not generated there, and even without meaningful discussion of each document's contents) – the Magistrate Judge based her sealing order on the location of a document's retrieval. To the extent that the treaties can justify sealing judicial filings, which Plaintiffs contest, the mere fact that a document was found at an embassy or consulate does not, *ipso facto*, render the item a diplomatic or consular communication. As the Vienna Conventions on Diplomatic and Consular Relations recognize, not every document located within a mission is inviolable – it is only "official correspondence" that is protected. Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23

9

U.S.T. 3227, 500 U.N.T.S. 95, art. 27; Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, art. 35.

"Official correspondence means all correspondence relating to the mission and its functions." VCDR art. 27(2); VCCR art. 35(2). If presence within a mission were, alone, enough to classify a document as "inviolable," there would be no need for the Conventions to define "official correspondence." Without a particularized showing as to how each individual document relates "to the mission and its functions," even if the treaties could justify sealing, the Magistrate Judge did not make the required individualized findings that "higher values" warranted withholding the information in each document from public inspection.

**5. Conclusion**

For all of the reasons set forth herein, as well as in Plaintiffs' Objections and prior filings concerning sealing of judicial documents, this Court should modify the July 22, 2019 Order & Opinion (ECF No. 4696), unseal those documents at issue in the underlying discovery dispute and reaffirm that the existing Protective Order is still in effect, and requires a party asking that a document produced in discovery be filed under seal with the Court make the requisite showing of higher values warranting such sealing contemporaneous with the document's production in discovery. This would require only that a small number of the team of lawyers representing the Kingdom of Saudi Arabia review the modest discovery it has produced and identify those materials that it believes would have to be filed under seal and would simultaneously protect the substantial interest the public has in learning the truth about of the role that Saudi officials played in perpetrating the worst terrorist attacks ever committed on United States soil.

COZEN O'CONNOR                               MOTLEY RICE

| | |
|---|---|
| */s/ Sean P. Carter, Esquire* | */s/ Robert T. Haefele, Esquire* |
| Sean P. Carter, Esquire | Robert T. Haefele, Esquire |
| 1650 Market Street, Suite 2800 | 28 Bridgeside Boulevard |
| Philadelphia, PA 19103 | Mt. Pleasant, SC 29464 |
| | |
| On behalf of the MDL 1570 Plaintiffs' Exec. Committee for Commercial Claims | On behalf of the MDL 1570 Plaintiffs' Exec. Committee for Personal Injury and Death Claims |

KREINDLER & KREINDLER

*/s/ Steven R. Pounian, Esquire*
Steven R. Pounian, Esquire
Andrew J. Maloney, III, Esq.
Megan W. Benett, Esq.
750 Third Avenue, 32nd Floor
New York, NY 10017

On behalf of the MDL 1570 Plaintiffs'
Exec. Committee for Personal Injury and
Death Claims