# EXHIBIT D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |
| --- | --- |

*This document relates to:*

*Burnett, et al. v. Islamic Republic of Iran*, No. 15-cv-9903 (GBD)(SN)

## DECLARATION OF SUSANN CAROL BRADY

I, SUSANN CAROL BRADY, hereby declare under penalty of perjury:

1.     I am 61 years old and reside in Hoboken, New Jersey.

2.     I was the fiancée of Gavin Cushny who was killed in the September 11, 2001 terrorist attack on the World Trade Center buildings in New York, where he worked as a computer analyst for Cantor Fitzgerald.

3.     At the time of his death, Gavin Cushny and I had been living together as husband and wife for approximately 2 years. Our relationship began approximately four years before his death.

4.     At the time of his death, Gavin Cushny and I were engaged to be married. Our wedding ceremony was scheduled to take place on October 26, 2001, on the Isle of Lewis, Scotland, UK. (See attached Scottish Episcopal Church Application for Marriage Service.)

5.     Less than one year before he died, Gavis Cushny purchased an engagement bracelet as well as a diamond ring as symbols of his commitment to our relationship. (See attached Fine Jewelry Certificate.) I had also purchased a wedding dress to be worn at our wedding.

6.      At the time of his death, I was the named beneficiary of a retirement account provided to Gavin Cushny by his previous employer, Merrill Lynch, and I received those benefits after his death.

7.      At the time of his death, I was the named beneficiary of a life insurance policy provided to Gavin Cushny by his employer, Cantor Fitzgerald. However, because the records were destroyed in the carnage of the terrorist attack, I did not receive those benefits after his death.

8.      On September 11, 2001, Gavin Cushny died intestate. I was granted Letters of Administration to settle his estate. (See attached Letters of Administration.) I made all arrangements for his funeral and accompanied his body back to Scotland where he is buried.

9.      Following his death, a three-member panel of the State of New York Workers' Compensation Board affirmed the single Workers' Compensation Law Judge's finding that I was the domestic partner of Gavin Cushny at the time of his death, and I was awarded benefits. (See attached Memorandum of Board Panel Decision.)

10.     At the time of his death, Gavin Cushny and I had been looking for a new home to purchase together to move into upon our return from our wedding ceremony.

11.     Gavin Cushny and I were very much in love and had plans for the future. We had plans to travel to Scotland where Gavin grew up. Since our relationship began, Gavin Cushny and I had travelled to Scotland together on three occasions. On each of these occasions, I was fully accepted by Gavin Cushny's family as his spouse.

12.     At the time of his death on September 11, 2001, Gavin Cushny and I had been engaged in family planning and had been exploring our suitability for *in vitro* fertilization.

13.     Approximately one year before his death, Gavin began exploring the possibility of undergoing a procedure to reverse a vasectomy he had previously, as part of our ongoing family planning.

14.     At the time of his death, Gavin Cushny and I depended on each other for financial, spiritual and emotional support.

15.     Since Gavin's death on September 11, 2001, I have remained single and childless because of the terrorist attacks that killed him.  The terrorist attacks destroyed the life Gavin and I built together, and my life will never be the same after losing him.

16.     At the time of his death, Gavin Cushny was my spouse in all ways except in name.


I declare under penalty of perjury that the foregoing is true and correct.


Date: ___8/14/19___                         _Susann Carol Brady_
                                            SUSANN CAROL BRADY

Date of Birth ......VRESKURGER...16 1953

Condition - Batchelor or Widower ...BATCHELOR

Occupation ...COMPUTER...APPLICATIONS...DEVELOPER

Church attended and Place of Residence at the time of Marriage

ST. CASSIAN'S CHURCH...MONTCLAIR...N.J....USA

615 MONTAGE STREET...#6-B,...HOBOKEN...N.J....0703 0      USA

Father's Name and Surname ...O.VRESKJ....FALES...WHITE

## BRIDE:-

Name and Surname ...SUSANN...BRADY

Date of Birth ...10/14/58

Spinster or Widow ...SPINSTER

Occupation ...NURSE PRACTITIONER

Church attended and Place of Residence at the time of Marriage

ST. CASSIAN'S CHURCH...MONTCLAIR...N.J., USA

135 BELLEVUE AVENUE #3-F, MONTCLAIR, NJ

Father's Name and Surname ...FRANK...BRADY

Has each of you been baptized?     Where? ...OUR BRADY...WHITE...

Bridegroom YES... When? ...95...

....INDIAN...OCEAN...When? .........NEAT CHURCH

# macy's



## FINE JEWELRY CERTIFICATE

THIS CERTIFICATE SETS FORTH THE DESCRIPTION AND RETAIL PRICE
PAID BY THE CUSTOMER FOR THE ARTICLE LISTED BELOW.
THIS RETAIL PRICE MAY NOT BE THE AMOUNT THAT WOULD BE
OBTAINED IF THE ARTICLE WERE OFFERED FOR RESALE.

| CUSTOMER NAME | ITEM AND DESCRIPTION |
|---|---|
| _Saint Cosmy_ | _Lion's Shorkan & Dr. Bracelet 14k_ |
| **ADDRESS** | _Nathan Blue Topaz 4-4/Ket Tow_ |
| _533 Monroe St. #46_ | **TRACER / SALESCHECK NO.** |
| _Harrison NJ 07030-1765_ | _TCN 58 /110_ |
| | **SKU NO.** _4000 1700998_ | **STYLE** _tw/19 /115/568/26-90_ |

| DATE OF PURCHASE | RETAIL PRICE PAID | FINE JEWELRY MANAGER | STORE WHERE PURCHASED |
|---|---|---|---|
| _1-15-00_ | _$1,000.00_ | _J Cosmi_ | _the short hills_ |

71S00975 (12/98)

36453

# Surrogate's Court of Hudson County
# Donald W. De Leo, Surrogate/JUDGE

DOCKET NO. 283416

I, Donald W. De Leo, Surrogate/JUDGE of the County of Hudson,

State of New Jersey, do certify that on the _____5TH_____ day of

_____MARCH_____, in the Year of Our Lord, /TWO THOUSAND TWO ~~One Thousand Nine~~

~~Hundred and Ninety~~- _____, Administration of the goods, chattels,

rights and credits, which were of _____GAVIN CUSHNY_____,

late of the County of Hudson, who died intestate, was granted by

_____

me to _____SUSAN BRADY_____, of the County of /ESSEX, ~~Hudson~~

MONTCLAIR, NEW JERSEY _____,

who is duly authorized to administer the same agreeably to law. I further

certify that said Letters have not been revoked and are still in full force

and effect.

I further Certify that said letters have not been
revoked and are still in full force and effect

Witness my hand and seal of Office this

_____7TH_____ day of _____MARCH_____,

in the Year of Our Lord, ~~One Thousand~~

~~Nine Hundred and Ninety~~- TWO THOUSAND TWO

Donald W. De Leo,                    Surrogate/JUDGE

CHIEF PROBATE CLERK

FORM SUR - 73

212-001161B-0082

13767310



Jeffrey R. Sweet
Acting Chairman

LEGAL APPEALS UNIT
WORKERS' COMPENSATION BOARD
20 PARK ST
ALBANY, NY  12207
*www.wcb.state.ny.us*

### State of New York - Workers' Compensation Board

### In regard to Gavin Cushny(Dec'd), WCB Case #0015 0187

# MEMORANDUM OF BOARD PANEL DECISION

*keep for your records*

Opinion By:  Carol G. McManus
Robert M. Zinck
Scott C. Firestone

The carrier's attorneys, in a review application received August 20, 2003, request review of the July 21, 2003 Workers' Compensation Law Judge (hereinafter "WCLJ") decision which found that Susann Brady was the decedent's domestic partner.  The carrier's attorneys contend that Worker's Compensation Law (hereinafter "WCL") §4 is unconstitutional, as it is vague and over-broad, is an ex post facto law, is a bill of attainder, violates the contracts and takings clauses of the Federal Constitution, and denies due process and equal protection to the decedent's mother and the employer/carrier herein.  The carrier's attorneys assert, in the alternative, that Ms. Brady failed to submit evidence that she was the decedent's domestic partner.  The carrier's attorneys further assert that the decedent was previously married, and no proof of divorce has been submitted, such that the decedent may have a surviving spouse.  Should the domestic partner finding be upheld, the carrier's attorneys request that the Board Panel direct the decedent's mother to repay the carrier for the WCL §16(4-a) dependency award made to her by administrative decision dated January 11, 2002, which became final on February 11, 2002.

Ms. Brady's attorneys filed a rebuttal dated September 22, 2003, and supplemented on October 1, 2003, wherein they argue that Ms. Brady was properly found to be the decedent's domestic partner, because she proved mutual interdependence as required.  Ms. Brady's attorneys contend that the decedent's prior marriage was validly dissolved, and attached the March 2, 1989 divorce decree to their rebuttal.

The employer submitted a September 27, 2001 C-2 (Employer's Report of Work Related Accident) form, in which the employer noted that the decedent worked on the 105th floor of 1 World Trade Center, was at work on September 11, 2001, during the terrorist attack, and perished on that tragic date.

The decedent's mother submitted an October 4, 2001 C-62 (Claim for Compensation in a Death Case) form, wherein she specified that the decedent was survived by her.  A copy of the decedent's birth certificate is contained within the Board file.

#### *** *Continued on next page* ***

| | | |
|---|---|---|
| Claimant - | Gavin Cushny(Dec'd) | Employer - | Cantor Fitzgerald |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | | Carrier ID No. - | |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | |
| District Office - | NYC | Date of Filing of this Decision - 12/15/2003 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

13767310

The carrier subsequently filed an October 12, 2001 C-669 (Notice To Chair Of Carrier's Action On Claim For Benefits) form, wherein the carrier accepted this claim.

The carrier filed a December 17, 2001 C-8 (Notice that Payment of Compensation has been Stopped or Modified) form, in which the carrier noted that the decedent's mother was paid $50,000.00.

This case was established for causally related death by administrative decision dated January 11, 2001, and filed February 11, 2002. The WCLJ awarded the decedent's mother death benefits in accordance with WCL §16(4-b) in that same decision.

Subsequently, WCL §4 came into effect on August 20, 2002, and was deemed effective on September 11, 2001. This section allows a "domestic partner" (as defined in that section, and as discussed below) of a worker killed in the September 11, 2001 World Trade Center terrorist attack to collect death benefits as if the domestic partner was a "surviving spouse" (as defined in WCL §16(1-a)).

Thereafter, Ms. Brady submitted a November 7, 2002 affidavit, and November 18, 2002 C-62 (Claim for Compensation in a Death Case) form and affidavit, in which she alleged that she and the decedent were domestic partners.

Ms. Brady testified on March 12, 2003 and June 4, 2003, as follows: that she and the decedent met in December, 1997, were engaged in December, 2000, and began living together shortly thereafter. The couple planned on marrying on October 26, 2001. The couple decided to live together at Ms. Brady's apartment, as the decedent's condominium was being renovated for the couple. She explained that the couple planned on living in the decedent's condominium until they could find a home to purchase. The rent and utilities were paid by Ms. Brady, and the decedent paid for all other living expenses (food, clothing, trips, etc.). They each earned roughly the same amount of money. They had no joint bank accounts. Ms. Brady was the beneficiary of the decedent's retirement account. She was appointed the administrator of the decedent's estate.

Ms. Brady explained that while the couple looked for an engagement ring in December, 2000, they could not find one they liked. Therefore, the decedent purchased Ms. Brady a bracelet, as a sign of their engagement. The bracelet receipt is contained within the Board file. In April, 2001, the decedent purchased Ms. Brady an engagement ring. Copies of the receipt and certificate of authenticity are contained within the Board file. The couple registered with the church in which they planned to marry in Scotland, and she purchased a dress (a copy of the receipt for which is found in the Board file). The decedent's mother helped plan the wedding in Scotland. The decedent's father was previously deceased.

Ms. Brady stated that the decedent was married once, in 1983. That marriage ended in divorce in 1992. A copy of the divorce decree was submitted to the Board.

The Board Panel declines to entertain the contention made by the carrier's attorneys that WCL §4 is unconstitutional. Initially considering the WCL, an examination of this body of law reflects the position that constitutional issues are matters for the courts, rather than issues for resolution by the Board. WCL §128, entitled "Unconstitutional provisions", states:

*** *Continued on next page* ***

| | | | |
|---|---|---|---|
| Claimant - | Gavin Cushny(Dec'd) | Employer - | Cantor Fitzgerald |
| Social Security No. - | | Carrier - | Pacific Indemnity Company |
| WCB Case No. - | | Carrier ID No. - | |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | |
| District Office - | NYC | Date of Filing of this Decision - | 12/15/2003 |

ATENCION:
Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)                                                                                              Page 2 of 4

13767310

"If any section or provision of this chapter be *decided by the courts* to be unconstitutional or invalid, the same shall not affect the validity of the chapter as a whole or any part thereof other than the part so decided to be unconstitutional or invalid." (emphasis added)

Additionally, WCL §156 states:

"If any clause, sentence, paragraph, or part of this article or the application thereof to any person or circumstances, shall, for any reason, be *adjudged by a court* of competent jurisdiction to be invalid, such judgments shall not affect, impair, or invalidate the remainder of this article..." (emphasis added)

WCL §141 states, in relevant part:  "The chairman, in the name of the board, shall enforce all the provisions of this chapter..."

Furthermore, looking beyond the WCL, the courts have upheld the Board's position that constitutional issues are matters properly addressed to the courts. The Workers' Compensation Board is an administrative agency.  "It is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law." *Watergate II Apartments v. Buffalo Sewer Auth.*, 46 N.Y.2d 52, 412 N.Y.S.2d 821, 824 (1978).  At the administrative level, statutes passed by the legislature are presumed constitutional.  This is a strong presumption, and will only be overcome where legislation is proven beyond a reasonable doubt to be in conflict with the Constitution. *City of New York v. State*, 168 Misc.2d 750, 640 N.Y.S.2d 951 (N.Y. Sup. 1995).  Thus, administrative agencies are required to resolve disputes based upon the legislative enactments before them.  Based upon the foregoing, the Board Panel hereby declines to entertain the constitutional argument.

Having so found, the Board Panel will consider whether the finding that Ms. Brady and the decedent were domestic partners was proper.  WCL §4 states, in relevant part:

"Domestic partner[1] means a person at least eighteen years of age who:  (a) is dependent upon the employee for support as shown by either unilateral dependence or mutual interdependence, as evidenced by a nexus of facts including, but not limited to, common ownership of real or personal property, common householding, children in common, signs of intent to marry, shared budgeting, and the length of the personal relationship with the employee or, if the employee is deceased, was so dependent upon the employee immediately prior to the employee's death; or (b) has registered as the domestic partner of the employee with any registry..."

This section further states that the domestic partner "shall, if such employee had no spouse at the time of his or her death, be deemed to be the surviving spouse of such employee for the purposes of any death benefit, including but not limited to funeral expenses, to which a surviving spouse would be entitled upon the death of such employee, and any and all such benefits shall be paid to such domestic partner."

Ms. Brady's credible testimony is sufficient to support the finding that she and the decedent were domestic partners.  Ms. Brady testified that she and the decedent resided together for almost two years.  The couple shared the household expenses.  Ms. Brady was the decedent's retirement account beneficiary.  The couple was engaged, and had applied for a marriage license in Scotland.  While they never registered as domestic partners, that fact is not dispositive, as WCL §4 lists registering as an alternative to submitting proof of interdependence, which the claimant herein has done.  The Board Panel finds, based upon Ms. Brady's credible testimony and the documentary evidence

*** *Continued on next page* ***

| | | | |
|---|---|---|---|
| Claimant - | Gavin Cushny (Dec'd) | Employer – | Cantor Fitzgerald |
| Social Security No. - | | Carrier – | Pacific Indemnity Company |
| WCB Case No. - | | Carrier ID No. - | |
| Date of Accident - | 09/11/2001 | Carrier Case No. - | |
| District Office - | NYC | Date of Filing of this Decision – | 12/15/2003 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

13767310

contained within the Board file, that Ms. Brady and the decedent were domestic partners.

The Board Panel is constrained to deny the carrier's attorneys' alternative request that the Board Panel direct the decedent's mother to repay the carrier for the no dependency award made to her by administrative decision filed February 11, 2002. The Board's jurisdiction over each case is continuing, and it may make such modification or change with respect to former findings, awards, decisions and orders as in its opinion may be just. WCL §123. The no dependency award made to the decedent's mother, and the finding that Ms. Brady was the decedent's domestic partner (and, therefore, mutually dependent upon the decedent) are mutually exclusive, such that one must be rescinded. Here, the award made to the decedent's mother must be rescinded, because clearly the decedent was survived by a domestic partner, who has the same rights as a surviving spouse, such that the decedent's mother is not entitled to the WCL §16(4-b) no dependency award. Pursuant to the continuing jurisdiction conferred by WCL §123, the Board hereby modifies the February 11, 2002 administrative decision, as the no dependency award is rescinded, and the awards to the Uninsured Employer's Fund [in accordance with WCL §25-a(3)] and to the Vocational Rehabilitation Fund [in accordance with WCL §15(9)], are rescinded, as such awards are only appropriate in cases of no dependency death. However, the Board Panel is cognizant of the fact that the dependency award made to the decedent's mother was valid when made, because it pre-dated Ms. Brady's claim and pre-dated the effective date of WCL §4. Inasmuch as Ms. Brady had not yet filed her claim at the time of the making of the award to the decedent's mother, there were no dependents. The Board Panel declines to direct the decedent's mother to repay the award.

However, the Board Panel finds that an alternative remedy for reimbursement is available to the carrier. WCL §151 ("Administrative expenses") created a fund available to the Board for the payment of administrative expenses, relative to any and all "direct or indirect costs" incurred by the Board. Thus, the carrier may apply for reimbursement for the payment made to the decedent's mother through the Board's WCL §151 fund. As the Board has reversed a decision it previously rendered due to the finding that the deceased was survived by a domestic partner pursuant to WCL §4, the carrier is invited to submit a request for reimbursement of the awards previously paid on form RB-8. If approved, reimbursement will be paid from federal funds through the administrative fund set forth in WCL §151.

In addition, the carrier should file an RB-8 (Request for Reimbursement and Certificate of Accuracy) seeking reimbursement for the $3,000.00 paid in accordance with WCL §25-a(3) and the $2,000.00 paid in accordance with WCL §15(9).

The Board Panel finds, upon review of the entire record, that Ms. Brady and the decedent were domestic partners. Accordingly, the WCLJ decision filed July 21, 2003 is AFFIRMED. The case is closed.

All concur.


Carol G. McManus                Robert M. Zinck                Scott C. Firestone

Claimant -                      Gavin Cushny(Dec'd)        Employer -          Cantor Fitzgerald
Social Security No. -                                      Carrier -           Pacific Indemnity Company
WCB Case No. -                                            Carrier ID No. -
Date of Accident -              09/11/2001                Carrier Case No. -
District Office -               NYC                        Date of Filing of this Decision –  12/15/2003

ATENCION:
Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)                                                                       Page 4 of 4